EXHIBIT D

<u>Proposed Solicitation Procedures Order</u>
<u>(Marked To Show Changes Against Version Filed On September 6, 2007)</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                        :
     In re                         :      Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :      Case No. 05-44481 (RDD)
                                        :
                    Debtors.    :      (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER APPROVING (I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING
DEADLINE, AND PROCEDURES FOR TEMPORARY ALLOWANCE
OF CERTAIN CLAIMS, (III) HEARING DATE TO CONSIDER CONFIRMATION
OF PLAN, (IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN,
(V) SOLICITATION PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM
PROCEDURES, (VII) PROCEDURES FOR RESOLVING DISPUTES RELATING TO
POSTPETITION INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES

("SOLICITATION PROCEDURES ORDER")

Upon the motion, dated September 6, 2007 (the "Motion"),[1] of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (each, a "Debtor"), for entry of an order approving (i) the Disclosure

Statement filed on September 6, 2007, as amended (the "Disclosure Statement"), (ii) a voting

record date, voting deadline, and procedures for temporary allowance of certain claims for voting

purposes, (iii) procedures for filing objections to the Plan of Reorganization filed on September 6,

2007, as amended (the "Plan"), (iv) procedures for soliciting and tabulating votes on the Plan, (v) a

hearing date to consider confirmation of the Plan, (vi) cure claim procedures, (vii) procedures for

resolving disputes relating to postpetition interest, and (viii) reclamation claim procedures; and the

Court having reviewed the Disclosure Statement and the Motion; and athe Court having received

---

[1]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

and reviewed various objections and responses to the Motion filed by various parties in advance of the October 3, 2007 hearing (the "Initial Objectors");[2] and upon the Debtors' Omnibus Response to Disclosure Statement Objections, dated October 2, 2007 (Docket No. 10418); and the Court having commenced the hearing on the Motion on October 3, 2007 (the "Hearing") in accordance with the Order Scheduling Non-Omnibus Hearing on the Debtors' Motion To Approve Solicitation Procedures And Disclosure Statement, dated August 6, 2007 (Docket No. 8898); and upon the admission into evidence of Debtor's hearing exhibits nos. 1 through 20 at the Hearing without objection from any party; and, on October 9, 2007, the Court having entered its Order (A) Disposing of Certain Objections to Debtors' Disclosure Statement and Solicitation Procedures Motion and (B) Setting Further Non-Omnibus Hearing Date and Related Procedures (the "First Disclosure Statement and Solicitations Procedures Order") (Docket No. 10497) pursuant to which this Court (i) found that notice of the Hearing was properly and timely given and was sufficient and no further notice being necessary or required with respect to the Court's consideration of the Motion or the Disclosure Statement including any Potential Amendments (as defined in the First Disclosure Statement and Solicitation Procedures Order) and (ii) overruled the objections filed by the Initial Objectors to the extent such objections were not otherwise resolved or withdrawn, and (iii) and continued the Hearing to October 25, 2007; and on October 19, 2007, in its Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitations Procedure Motion and (B) Setting Hearing Date and Related Procedures for Potential Motions Amending Investment Agreement and Approving Certain Exit Financing Agreements ("Supplemental Disclosure Statement, Investment Agreement, and Exit Financing

---

[2]    The Initial Objectors filed the objections found at docket numbers 9513, 9668, 9669, 9670, 9674, 9677, 9680, 10398 10413, 10414, and 10417.

Procedures Order") (Docket No. 10662) the Court having further continued the Hearing to

November 8, 2007; and upon the filing of the Debtors' Notice of Potential Amendments To

Debtors' Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Of Its Affiliates, Debtors And Debtors-In-Possession And Certain

Appendices And Exhibits Related Thereto (Docket No. 10759), dated October 29, 2007; and a

meet and confer having taken place on October 23, 2007; and the Court having received on

November 2, 2007 further objections to the Disclosure Statement Approval Motion;[3] and upon the

Emergency Motion Of The Official Committee of Equity Security Holders Of Delphi Corporation

To Adjourn The Hearing On, And Fix A New Time To Object To, (A) The Disclosure Statement

Approval Motion And (B) The Amended Investment Agreement Approval Motion (Docket No.

10795), dated November 2, 2007 (the "Adjournment Motion");[4] and upon the Debtors' request to

the Court on November 5, 2007 to adjourn the Hearing on these matters from November 8, 2007 to

10:00 a.m. (prevailing Eastern time) on November 29, 2007 pursuant to the Second Supplemental

Disclosure Statement And Investment Agreement Procedures Order (Docket No. 10864); and a

second meet and confer having taken place on November 6, 2007; and the Debtors having filed

further proposed amendments to the Plan and Disclosure Statement on November 14, 2007; and on

November 16, 2007 the Potential Objectors[5] having filed further objections to the Disclosure

---

[3]    Further objections and responses filed on November 2, 2007 to the Disclosure Statement Approval Motion may
be found at docket numbers 10794, 10802, 10803, 10804, and 10810.

[4]    Brandes Investment Partners, L.P. filed a statement in support of the Adjournment Motion at docket number
10807 and Law Debenture Trust Company of New York, as indenture trustee, filed a joinder to the Adjournment
Motion at docket number 11161.

[5]    "Potential Objectors" was defined in the Supplemental Disclosure Statement, Investment Agreement, And Exit
Financing Procedures Order as "the Official Committee of Unsecured Creditors, the Official Committee of Equity
Security Holders, A-D Acquisition Holdings, LLC (an affiliate of Appaloosa Management L.P.) as lead plan
investor under the Plan, General Motors Corporation, the Ad Hoc Committee of Trade Creditors, Wilmington
Trust Company, as indenture trustee, and a group of bondholders represented by common counsel consisting of
DK Acquisition Co., Silverpoint Capital, Sandell Management Co., Elliott Management Company, and CR

*(cont'd)*

Statement Approval Motion; and upon the objections filed by the Potential Objectors (the "November Objections");[6] and a third meet and confer conference having taken place on November 27, 2007; and upon the Debtors' request to the Court on November 28, 2007 to adjourn the Hearing on these matters from November 29, 2007 to 10:00 a.m. (prevailing Eastern time) on December 6, 2007 pursuant to the Third Supplemental Order (A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitations Procedure Motion and (B) Setting Hearing Date and Related Procedures for Motion To Amend Investment Agreement (Docket No. 11198); and the Debtors having filed their Debtors' (I) Omnibus Reply To Objections To Disclosure Statement And Potential Disclosure Statement Amendments And (II) Response To Equity Committee's Emergency Motion To Adjourn Hearing And Fix New Objection Deadline (Docket No. _____), on December 5, 2007; and the Debtors having filed (i) blacklined changed pages to certain documents, (ii) proposed changes in response to certain objections, (iii) a cumulative blackline of each document for which additional changed pages were filed marked against the documents originally filed on September 6, 2007, and (iv) a proposed blacklined approval order and revised Plan solicitation timeline, which timeline provides for a Plan exhibit filing date no later than ten days prior to the proposed Plan voting and objection deadline; and the second day of the hearing on the Motion and the adequacy of the Disclosure Statement having been held on ~~October 3, 2007 (the "Disclosure Statement Hearing");~~December 6, 2008, at which time all ~~interested parties~~remaining objectors, including the Potential Objectors, were offered an

_____

*(cont'd from previous page)*

Intrinsic, as well as the Lead Plaintiffs (but only to the extent of matters raised in the Lead Plaintiffs Response or any Potential Amendments)." All parties reserve all rights with respect to whether the bondholders constitute "an entity or committee representing more than one creditor or equity security holder" subject to the requirements of Bankruptcy Rule 2019.

[6]   The November Objections can be found at docket numbers 10794, 10795, 10802, 10803, 10804, 10810, 11017, 11022, 11028, 11034, 11045, 11048, and 11049.

4

opportunity to be heard with respect to the Disclosure Statement and Motion; and the Court having reviewed and considered (i) the Disclosure Statement, the objections thereto, and the Debtors' response to such objections, (ii) the Motion and the objections thereto, (iii) the arguments of counsel made at the Disclosure Statement Hearing, and (iv) the evidence proffered or adduced at the Disclosure Statement Hearing; and after due deliberation thereon and good cause appearing therefor, the Court hereby finds as follows:

A.     The Disclosure Statement complies with the requirements of 11 U.S.C. §§ 101-1330, as amended on October 8, 2005 (the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and contains adequate information as that term is defined in section 1125 of the Bankruptcy Code. Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions.

B.     Nothing has come to the attention of the Court to suggest that (i) all material information regarding the Debtors and their subsidiaries, their respective assets, affairs, and financial condition, and the reorganization and restructuring provided for under the Plan has not been set forth in the Disclosure Statement and the Debtors' public filings with the Securities and Exchange Commission before the date hereof (or the exhibits or appendices thereto), or that all such material information has not been disclosed fully and adequately thereby, or (ii) there is material nonpublic information regarding the Debtors or their subsidiaries, their respective assets, affairs, or financial conditions, or the reorganization and restructuring provided for under the Plan that has not been disclosed.

5

C.    The Debtors' notice to all parties-in-interest of the hearing on the Motion, the Disclosure Statement Hearing, and the time fixed for filing objections to the Disclosure Statement was good and sufficient under the particular circumstances and no other or further notice need be given.

D.    The Debtors' proposed solicitation procedures, as described more fully in the Motion, are fair and reasonable.

E.    The Debtors' proposed procedures for transmitting the Disclosure Statement, the Plan, the Ballots (as defined below), and the voting instructions are adequate and comply with the requirements of Bankruptcy Rule 3017(d) and (e).

F.    Good and sufficient cause exists under Bankruptcy Rule 3017(d)(4) for the establishment of the Record Date as a date other than the date this Order is entered.

G.    The Debtors' proposed cure claim procedures, as described more fully in the Motion, are fair and reasonable.

H.    The Debtors' proposed procedures for resolving disputes relating to postpetition interest, as described more fully in the Motion, are fair and reasonable.

I.    ~~The Debtors' proposed reclamation claim procedures, as described more fully in the Motion, are fair and reasonable.~~

I.    ~~J.~~Upon the record of the Disclosure Statement Hearing and these cases, the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is GRANTED.

6

2.      Notice of the Disclosure Statement Hearing was properly and timely given and was sufficient.  No further notice is necessary or required with respect to the Court's consideration of the Motion or the Disclosure Statement including any Potential Amendments.

3.      2. Approval Of Disclosure Statement.  Pursuant to Bankruptcy Rule 3017(b), (i) the Disclosure Statement is approved as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code and (ii) to the extent not withdrawn, settled, or otherwise resolved, all objections to the Disclosure Statement are overruled on the merits.

4.      3. The Debtors are authorized to (i) make non-material changes to the Disclosure Statement and related documents (including the exhibits thereto and to the Motion) and (ii) revise the Disclosure Statement and related documents (including the exhibits thereto) to add further disclosure concerning events occurring at or after the Disclosure Statement Hearing, before distributing it to each person and entity in accordance with the terms of this Order; provided, however, that the Debtors shall file copies with the Court of any changed pages blacklined to show such changes.

5.      4. Confirmation Hearing Date; Objection Deadline.  The hearing (the "Confirmation Hearing") to consider confirmation of the Plan, as the same may be further modified or amended, shall commence on November 19, 2007 January 17, 2008 (the "Confirmation Hearing Date"), at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel can be heard, before the undersigned United States Bankruptcy Judge, in the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.  The Confirmation Hearing may be adjourned from time to time by announcing such adjournment in open court or otherwise, all without further notice to parties-in-interest.

6.     5. November 9, 2007January 11, 2008 at 4:00 p.m. (prevailing Eastern time)

(the "Objection Deadline") is fixed as the last date and time for filing and serving objections to

confirmation of the Plan.  Objections, if any, must (i) be in writing, (ii) comply with the

Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, (iii) set

forth the name of the objector and the nature and amount of any claim or interest asserted by the

objector against or in the Debtors, their estates, or their property, (iv) state with particularity the

legal and factual bases for the objection, and (v) be filed with the Court together with proof of

service, and served by personal service, overnight delivery, or first-class mail, with a hard copy

delivered to the chambers of the Honorable Robert D. Drain, and served so that they are

RECEIVED no later than the Objection Deadline by:

> Counsel For The Debtors
>
> Skadden, Arps, Slate, Meagher & Flom LLP
> 333 West Wacker Drive, Suite 2100
> Chicago, Illinois 60606
>
> (312) 407-0700800) 718-5305
> Att'n: John Wm. Butler, Jr.
> Att'n: George N. Panagakis
> Att'n: Ron E. Meisler
> Att'n: Nathan L. Stuart
>
>              and
>
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, New York 10036
> (212) 735-3000
> Att'n: Kayalyn A. Marafioti
> Att'n: Thomas J. Matz
>
> United States Trustee
>
> The Office of the United States Trustee
> 33 Whitehall Street, Suite 2100
> New York, New York 10004

Att'n: Alicia M. Leonard

Counsel For The Creditors' Committee

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Att'n: Robert J. Rosenberg
Att'n: Mitchell A. Seider
Att'n: Mark A. Broude

Counsel For The Equity Committee

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Att'n: Brad E. Scheler
Att'n: Bonnie K. Steingart
Att'n: Vivek Melwani

Counsel For The Postpetition Lenders

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York  10022
Att'n:  Donald S. Bernstein
Att'n:  Brian M. Resnick

Counsel For A-D Acquisition Holdings, LLC

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900, Miami, Florida 33131
Att'n: Thomas E. Lauria
Att'n:  Michael C. Shepherd

        and
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Att'n:  Gerard H. Uzzi
Att'n:  Glenn M. Kurtz
Att'n:  ~~Gregory Pryor~~Douglas P. Baumstein

Counsel for General Motors Corporation

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Att'n:   Jeffrey L Tanenbaum
Att'n:   Michael P. Kessler
Att'n:   Robert J. Lemons

**Objections not timely filed and served in the manner set forth above will not be considered by the Court and will be deemed overruled.**

7.    6. Record Date.  Notwithstanding anything to the contrary in Bankruptcy Rule 3017(d), September 28, November 26, 2007 shall be the record date (the "Record Date") for purposes of determining the members of Classes C, D, E, G-1, G-2, and H[7] (the "Voting Classes") that are entitled to receive a Solicitation Package and to vote on the Plan.  The Record Date for a docketed proof of claim or scheduled claim shall be determined by reference to KCC's (as defined below) claims register as may be modified by Notices of Transfer filed and reflected on the Court's official docket (ECF) at **11:59 p.m.** (prevailing Eastern time) on **September 28, November 26, 2007**, and only those registered holders of claims as reflected on the docket together with KCC's database on the Record Date shall be entitled to vote.  The holders of any claims filed after the Record Date shall not be entitled to vote.

8.    7. Content And Transmittal Of Solicitation Packages.  On or before October 12, December 15, 2007 (the "Solicitation Date"), the Debtors shall cause Kurtzman Carson Consultants LLC (the "Creditor Voting Agent" or "KCC") and Financial Balloting Group, LLC (the "Securities Voting Agent," and together with the Creditor Voting Agent and the Securities

---

[7]    Class C consists of all General Unsecured Claims against the applicable Debtor or consolidated group of Debtors, Class D consists of the GM Claim against the applicable Debtor or consolidated group of Debtors, Class E consists of all Section 510(b) Note Claims against Delphi Corporation, Class G-1 consists of all Existing Common Stock of Delphi Corporation, Class G-2 consists of all Section 510(b) Equity Claims against Delphi Corporation, and Class H consists of all Section 510(b) ERISA Claims against the applicable Debtors.

Voting Agent, the "Voting Agents") or their agents to transmit by first class mail (or in the case of non-US holders of Class I claims or interests, the Debtors shall, in certain cases, have local plant managers transmit) to the holders of claims against and interests in the Debtors as of the Record Date a solicitation package containing a copy or conformed version of:

      A.     the Confirmation Hearing Notice,

      B.     this order (without exhibits attached),

      B.     C. to the extent applicable, the appropriate ballot and/or notice as set forth below for the specific creditor or equity holder, with appropriate voting instructions, such ballots in substantially the forms attached hereto as Exhibit A (as may be modified for particular classes and with instructions attached thereto), and a pre-addressed postage pre-paid return envelope,

      C.     D. a CD-ROM  containing this order (without exhibits attached), the Disclosure Statement, the Plan, and the publicly filed materials appended thereto,

      D.     E. to the extent appropriate, and at the Debtors' discretion, an Internal Revenue Service form W-9 (Request for Taxpayer Identification Number and Certification) or form W-8BEN to be returned with a party's ballot,

      E.     F. solicitation letters, if any, from the Creditors' Committee and Equity Committee,

      F.     informational letters, if any, from a union to its members who will receive a ballot, and

      G.     Postpetition Interest Rate Determination Notice for all holders of General Unsecured Claims, other than Senior Note Claims or and TOPrS Claims.

      9.     8. The Voting Agents shall transmit the Solicitation Package to the following creditors, interest holders, and other parties-in-interest (with exclusions as noted herein): (i) the United States Trustee, (ii) all non-voting unimpaired creditors, (iii) equity holders, (iv) holders of claims or interests in non-voting Class I under the Plan, (v) persons or entities which timely filed a proof of claim reflecting a claim or portion of a claim that is unliquidated, and (vi) creditors holding claims in a class designated as impaired and entitled to vote on the Plan (A) who have filed timely proofs of claim (or untimely proofs of claim which have been allowed as timely

by the Court under applicable law on or before the Record Date) that have not been disallowed by an order of the Court entered on or before the Record Date or (B) whose claims are scheduled in the Debtors' schedules of assets and liabilities dated April 18, 2006, or any amendment thereof (the "Schedules") other than those scheduled as (x) unliquidated, contingent, or disputed or (y) zero or unknown in amount and for which no proof of claim was timely filed. Creditors, if any, who have filed duplicate claims in a given class shall be entitled to receive only one Solicitation Package with respect to that class.

10.     With respect to non-US holders of claims or interests in non-voting class I, the Debtors are authorized but not directed to include in (or provide in conjunction with) the Solicitation Package a translated Confirmation Hearing Notice and a translated notice of non-voting status. The Debtors shall not be required to cause to be translated any other documents contained in the Solicitation Package.

11.     9. Not later than the Solicitation Date, the Debtors shall transmit, through the Voting Agents, the Solicitation Packages to all holders of the Debtors' Securities, or of claims based on those Securities where appropriate, including Class C General Unsecured Claims (Senior Note Claims), Class C General Unsecured Claims (TOPrS Claims), and Class G-1 Existing Common Stock Claims, by mailing or delivering the Solicitation Packages to (i) each registered holder of Securities as of the Record Date (collectively, the "Record Owners") and (ii) to each bank or brokerage firm, or the agent therefor, identified by the Debtors or the Voting Agents as an entity through which beneficial owners (the "Beneficial Owners") hold the Securities (collectively, the "Intermediary Record Owners"). In addition, the Debtors shall distribute master ballots to the Intermediary Record Owners in accordance with customary procedures in the publicly traded securities industry. Further, the Debtors shall distribute a ballot directly to registered record

holders of common stock who hold the stock in their own name (and not in street name). Claims in Class E (Section 510(b) Note Claims), Class G-2 (Section 510(b) Equity Claims), and Class H (Section 510(b) ERISA Claim) shall be voted by their respective class action representatives and the persons and entities who filed Claims other than those, as approved by the Order Preliminarily Approving Multidistrict Litigation and Insurance Settlement entered on October 29, 2007 (Docket No. 10746) (the "Preliminary MDL Settlement Approval Order"), or putative members of the classes represented by the class action representatives who filed Claims and opted out of the class and whose Claims have not been expunged by Court order.

12.    10. Labels For Record Holders. To facilitate the distribution described in the immediately preceding paragraph, each of the indenture trustees and transfer agents for the Securities, including, without limitation, Wilmington Trust Company (as Indenture Trustee for the Senior Notes), Law Debenture Trust Company of New York (as Indenture Trustee for the Subordinated Notes), and Computershare Shareholder Services (as Transfer Agent of Existing Common Stock) or any successors thereto, shall, if and to the extent they have not done so previously, provide to the Securities Voting Agent an electronic file containing the names, addresses, and holdings of the respective Record Owners of the Securities as of the Record Date or, if unable to provide an electronic file, two sets of adhesive labels and a list containing the same information no later than October 5, December 10, 2007.

13.    11. Within five business days after an Intermediary Record Owner's receipt of the Solicitation Packages, the Intermediary Record Owner shall distribute the Solicitation Packages to the respective Beneficial Owners for which they hold Securities.

14.    12. Voting By Beneficial Owners. Intermediary Record Owners are hereby authorized and directed to use the appropriate procedure set forth below for obtaining the votes of

13

Beneficial Owners.  First, the Intermediary Record Owners may forward the Solicitation Package to the Beneficial Owners of the Securities for voting, which package shall include a beneficial owner ballot substantially in the form of the beneficial owner ballots attached as part of <u>Exhibit A</u> to this order (the "Beneficial Owner Ballot") and a return envelope provided by, and addressed to, the Intermediary Record Owner.  Upon receipt of the Beneficial Owner Ballots, the Intermediary Record Owner shall summarize the individual votes of its Beneficial Owners, as reflected on the Beneficial Owner Ballots, on a master ballot in substantially the form of the master ballots attached as part of <u>Exhibit A</u> to this order (<u>each </u>a "Master Ballot").  The Intermediary Record Owners shall then return the Master Ballot to the Securities Voting Agent prior to the Voting Deadline.

<u>15.</u>    ~~13.~~ Alternatively, if an Intermediary Record Owner is unable to use the option above, it may prevalidate a Beneficial Owner Ballot (a "Prevalidated Ballot") by signing that ballot and by indicating on that ballot the identity of the Intermediary Record Owner, the principal amount or number of shares, as applicable, of Securities owned by the Beneficial Owner, and the appropriate account numbers through which the Beneficial Owner's holdings are derived. The Intermediary Record Owner shall then forward a Solicitation Package, including the Prevalidated Ballot and a return envelope addressed to the appropriate Securities Voting Agent, for voting by the Beneficial Owner.

<u>16.</u>    ~~14.~~ The Debtors are hereby authorized to reimburse Intermediary Record Owners for their reasonable and customary out-of-pocket expenses incurred in performing the tasks described above upon written request of the Intermediary Record Owner (subject to the Court's jurisdiction to resolve any disputes over any such request for reimbursement).

14

17.    ~~15.~~ The Debtors shall serve a copy of this order on each indenture trustee, transfer agent, and each Intermediary Record Owner identified by the Debtors and the Securities Voting Agent as an entity through which Beneficial Owners hold Securities.

18.    ~~16.~~ Confirmation Hearing Notice.  The form of notice of the Confirmation Hearing and the Confirmation Objection Deadline (the "Confirmation Hearing Notice") annexed hereto as Exhibit B is approved and shall be included in the Solicitation Packages distributed to all creditors and interest holders and all persons or entities on the Debtors' master service list. The Confirmation Hearing Notice complies with the requirements of Bankruptcy Rules 2002(c)(3) and 3017(f) by including in conspicuous bold language a statement that the Plan proposes releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code, describing briefly the nature of the releases and injunctions, identifying the persons and entities that are subject to the releases and injunctions, and providing those persons and entities that are not creditors or equity security holders with contact information to obtain a copy of the Plan and Disclosure Statement. As to those persons and entities subject to the releases and injunctions, and not receiving a copy of Exhibit B as provided herein, notice by publication as set forth above is sufficient notice as permitted by Bankruptcy Rule 2002(l).  To supplement notice of the Confirmation Hearing, and to ensure proper notice of any releases and injunctions contained in the Plan, the Debtors shall transmit the Confirmation Hearing Notice to parties to executory contracts and unexpired leases, which parties are not currently "creditors" as defined in section 101(10) of the Bankruptcy Code. In addition, the Debtors shall give supplemental publication notice of the Confirmation Hearing by causing the Confirmation Hearing Notice to be published not fewer than 25 days before the Confirmation Hearing in the ~~global~~ New York Times (national edition ~~of the Wall Street Journal, the national edition of the~~ New York Times, the ~~Detroit Free Press, the Detroit News~~), the Wall

Street Journal (national, European, and Asian editions), USA Today (worldwide), the Automotive News (national edition), and in local editions of the following: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Cleveland Plain Dealer, the Toledo Blade, the Indianapolis Star, and the Kokomo Tribune.Clinton News, the Columbus Dispatch, the Daily Leader, the Dayton Daily News, the Detroit Free Press, the Detroit News , the El Paso Times, the Fitzgerald Herald Leader, The Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greensville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, The Mobile Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky Register, the Toledo Blade, the Tribune Chronicle, the Tulsa World, The Tuscaloosa News, and The Vindicator.

19. 17. Ballots.  The Debtors' proposed forms of ballots, in substantially the forms annexed to this order as Exhibit A (as may be specifically modified for particular classes of claims or interests), are hereby approved for use in connection with the Debtors' solicitation of votes to accept or reject the Plan.

20. 18. The Unimpaired Creditors in Classes A, B, and J are conclusively presumed to have accepted the Plan and solicitation of votes from those Creditors is not required. In lieu of a ballot and in accordance with Bankruptcy Rule 3017(d), the Solicitation Packages mailed to the Unimpaired Creditors shall contain a notice of non-voting status substantially in the form of Exhibit C to this order.

21. 19. The holders of claims and interests in Class I are conclusively presumed to have rejected the Plan and solicitation of votes from those creditors and interest holders shall not

16

be required.  In lieu of a ballot, the Solicitation Packages mailed to those creditors and interest

holders, as well as holders of contingent and disputed claims, shall contain a notice of non-voting

status substantially in the form of Exhibit D to this order.  In addition, recipients of an objection to

expunge their claim or interest shall receive a notice of non-voting status.

22.    20. The deadline for the filing and serving of motions requesting temporary

allowance of a movant's claim or interest for purposes of voting pursuant to Bankruptcy Rule

3018(a) ("Rule 3018(a) Motion(s)") shall be 4:00 p.m. (prevailing Eastern time) on November 5,

2007 January 2, 2008 (the "Rule 3018(a) Motion Deadline"); provided, however, that if the Debtors

object to a claim or interest on or after October 29, December 27, 2007, the Rule 3018(a) Motion

Deadline shall be extended for that claim or interest such that the deadline shall be seven days

following the filing of the Debtors' objection.  Rule 3018(a) Motions shall be filed with the Clerk

of the Court and served on the Notice Parties in the manner set forth for objections to the

confirmation of the Debtors' Plan.  Any party timely filing and serving a Rule 3018(a) Motion shall

be provided a provisional ballot and be permitted to cast a provisional vote to accept or reject the

Plan.  If, and to extent that, the Debtors and such party are unable to resolve the issues raised by the

Rule 3018(a) Motion, then at the Confirmation Hearing, the Court shall determine whether the

provisional ballot should be counted as a vote on the Plan.

23.    21. Any holder of a claim or interest to which the Debtors filed objections

requesting the Court to modify claims either in (a) amount, (b) Debtor or Debtor group, or (c) Plan

class shall be allowed to vote in the amount and class set forth in the modification request Debtors'

objection.  Solicitation Packages shall be transmitted to the appropriate parties based upon the

Debtors' records as of the Record Date.  To provide notice to any holders of claims or interests of a

change in voting status on account of an objection filed after the Solicitation Date and to provide

17

notice of a claimant's right to file a Rule 3018(a) Motion, the Debtors shall provide such holders with the Notice To Parties Subject To A Post-Solicitation Date Objection, the form of which is attached hereto as Exhibit E and hereby approved as being in compliance with Rule 3018-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.  Any holder whose claim or interest has been estimated pursuant to the Estimation Order (Docket No. 9685), however, shall be allowed to vote in the amount set forth for that claim or interest therein, notwithstanding that this claim or interest is subject to a pending objection, subject to any intervening orders of the Court.

24.    22. The filing of an avoidance action by the Debtor which includes no objection to a claim held by the defendant shall not, by itself, cause the defendant's claim to lose the benefit of deemed allowance under section 502(a) with respect to voting on the Plan. Alternatively, under Rule 3018(a), such claims shall be allowed temporarily for voting purposes, and not for the purposes of distribution or otherwise, but only if the claim would have been deemed allowed under section 502(a) but for the filing of the avoidance action.

25.    23. When No Notice or Transmittal Necessary; Voting Deadline; Procedures For Vote Tabulation.  Solicitation Packages shall not be sent to creditors whose claims are based solely on amounts scheduled by the Debtors and whose claims already have been paid in the full scheduled amount; provided, however, that if, and to the extent that, any such creditor would be entitled to receive a Solicitation Package for any reason other than by virtue of the fact that its claim had been scheduled by the Debtors, the creditor shall be sent a Solicitation Package in accordance with the procedures set forth above.  In addition, the Debtors shall not be required to send a Solicitation Package to any creditorparty who filed a proof of claim if the amount asserted in the proof of claim has already been paid.  The Debtors, however, shall send the Confirmation

Hearing Notice to any such party, who, for the foregoing reasons, will not be sent a Solicitation Package.

26.    ~~24.~~ The Debtors shall not be required to give notice or effectuate service of any kind upon any person or entity to which the Debtors mailed a Disclosure Statement Hearing Notice and received any of these notices returned by the U.S. Postal Service marked "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or a similar reason for return of the notice, unless the Debtors have been informed in writing by that person or entity of the person's or entity's new address.

27.    ~~25.~~ To be counted, ballots (including Master Ballots) for accepting or rejecting the Plan must be received by the appropriate Voting Agent not later than ~~November 9, 2007,~~ January 11, 2008, at 8~~7~~:00 p.m. (prevailing Eastern time) (the "Voting Deadline").  Ballots must be returned to the appropriate Voting Agent on or before the Voting Deadline by (a) mail, in the return envelope provided with each ballot, (b) overnight delivery, or (c) hand delivery.  Any ballot submitted by facsimile or other electronic means of transmission shall not be counted.

28.    ~~26.~~ Any ballot timely received that contains sufficient information to permit the identification of the claimant or interest holder and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.  Each Record Owner or Beneficial Owner of a Security shall be deemed to have voted the full amount of its claims or interest relating to the Security, notwithstanding anything to the contrary on any ballot.  The foregoing general procedures shall be subject to the following:

> (i)    If a claim is deemed allowed in accordance with the Plan, that claim would be allowed for voting purposes in the deemed allowed amount set forth in the Plan,

(ii)    If a claim for which a proof of claim has been filed is marked as unliquidated or partially unliquidated, the claim, ~~or the~~if fully unliquidated ~~portion of the claim~~, would be temporarily allowed for voting purposes only, and not for purposes of allowance or distribution, in the amount of $1.00, ~~with~~and if the claim is partially unliquidated, the liquidated portion ~~of partially unliquidated claim~~will be similarly temporarily allowed at its liquidated amount for voting purposes and no amount shall be allocated for voting purposes on account of the unliquidated portion,

(iii)    If a claim is subject to a potential avoidance action, the action would not, by itself, cause the claim to lose the benefit of deemed allowance under section 502(a) of the Bankruptcy Code with respect to voting on the Plan,

(iv)    If a claim has been estimated or otherwise allowed for voting purposes by order of the Court, the claim would be temporarily allowed in the amount so estimated or allowed by the Court for voting purposes only, and not for purposes of allowance or distribution, and

(v)    If the Debtors have served and filed an objection to a claim at least ten calendar days before the Confirmation Hearing, the claim would be temporarily disallowed for voting purposes only and not for the purposes of the allowance or distribution, except to the extent and in the manner as may be set forth in the objection.

29.    ~~27.~~The following ballots shall not be counted or considered for any purpose in determining whether the Plan has been accepted or rejected:

(i)    Any ballot received after the Voting Deadline unless the Debtors have granted an extension in writing of the Voting Deadline with respect to that ballot,

(ii)    Any ballot that is illegible or contains insufficient information to permit the identification of the claimant or interest holder, as the case may be,

(iii)    Any ballot cast by a person or entity which does not hold a claim or interest in a class that is entitled to vote to accept or reject the Plan,

(iv)    Any ballot cast on account of a proof of claim filed, or a Security purchased or otherwise obtained, after the Record Date,

(v)    Any ballot cast for a claim listed in the Schedules as unliquidated, contingent, or disputed and for which (i) no superseding proof of claim was timely filed and (ii) no Rule 3018(a) Motion has been filed by the Rule 3018(a) Motion Deadline,

20

(vi)    Any ballot cast in a manner that neither indicates an acceptance nor rejection of the Plan or that indicates both an acceptance and rejection of the Plan,

(vii)    Any ballot submitted by facsimile transmission or other electronic means of transmission, and

(viii)    Any unsigned ballot.

30.    28. Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots are cast voting the same claim or interest before the Voting Deadline, the last ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior ballots; provided, however, that where an ambiguity exists as to which ballot was the latest transmitted, the appropriate Voting Agent is permitted to contact the voting party and calculate the vote according to the party's stated intent.  The foregoing shall be without prejudice to the Debtors' right to object to the validity of the second ballot on any basis permitted by law and, if the objection is sustained, to count the first ballot for all purposes.

31.    29. Vote splitting shall not be permitted (except as it may relate to the procedures with respect to Master Ballots) and creditors and interest holders who vote must vote all their claims or interests within a particular class to either accept or reject the Plan.

32.    30. For all persons or entities which timely filed a proof of claim reflecting a claim or portion of a claim that is unliquidated, the claim shall be allowed temporarily for voting purposes only, and not for purposes of allowance or distribution, for that portion of the claim that is not unliquidated, and the. Fully unliquidated portion of the claimclaims shall be counted for purposes of determining whether a sufficient number of the allowed claims in the applicable class has voted to accept the Plan, but the allowed amount of the fully unliquidated portion of the claim shall be $1.00 for voting purposes, subject to the right of the holder to file a Rule 3018(a) Motion,

21

Unliquidated claims shall also include any claims that were the subject of prepetition litigation between the Debtors and the claimant as of the Petition Date.

33. ~~31.~~ For all persons or entities which filed a proof of claim reflecting a claim or portion of a claim that is contingent, the claim shall be disallowed in its entirety for voting purposes, subject to the right of such holder to file a Rule 3018(a) Motion. Contingent claims shall include any claim that has been explicitly designated as contingent on the proof of claim form. ~~Contingent claims shall also include any claims that were the subject of prepetition litigation between the Debtors and the claimant as of the Petition Date.~~ Finally, contingent claims shall include any claims that were not the subject of prepetition litigation, but that otherwise involved an allegation of liability against the Debtors that was contested or otherwise was the subject of continuing, unresolved investigations as of the Petition Date.

34. ~~32.~~ The following procedures shall be used by the Debtors and the Securities Voting Agent for tabulating votes cast by holders of Securities:

(i)     Intermediary Record Owners required to use the Master Ballot voting process shall be required to retain for inspection by the Court the Beneficial Owner Ballots cast by Beneficial Owners for one year following the Voting Deadline, and Intermediary Record Owners required to send Prevalidated Ballots to Beneficial Owners for direct return to the respective Voting Agent shall be required to retain for inspection by the Court a list of those Beneficial Owners to whom the Prevalidated Ballots were sent for one year following the Voting Deadline.

(ii)    Votes cast by Beneficial Owners holding Securities through Intermediary Record Owners and transmitted by means of a Master Ballot or Prevalidated Ballot shall be applied against the positions held by the Intermediary Record Owners with respect to the Securities. Votes submitted by an Intermediary Record Owner on a Master Ballot or Prevalidated Ballot must not be counted to the extent they are in excess of the position maintained by the respective Intermediary Record Owner in the Securities on the Record Date.

(iii)   The following assumptions apply to Prevalidated Ballots: (i) each Prevalidated Ballot shall be for a single account and (ii) each vote shall be a separate vote and not duplicative of any other vote cast by other customers

of the Intermediary Record Owner (unless specific evidence exists that
indicates that one vote is for the identical account number and amount of
another vote).

(iv)    To the extent that conflicting votes or overvotes are submitted on a timely
received Master Ballot or Prevalidated Ballot, the Securities Voting Agent
shall attempt to resolve the conflict or overvote before the preparation of the
vote certification.

(v)    To the extent that overvotes on a timely received Master Ballot or
Prevalidated Ballot are not reconcilable before the preparation of the vote
certification, the Securities Voting Agent shall count votes in respect of the
Master Ballot or Prevalidated Ballot in the same proportion as the votes to
accept and reject the Plan submitted on the Master Ballot or Prevalidated
Ballot that contained the overvote, but only to the extent of the applicable
Intermediary Record Owners' position on the Record Date in the applicable
Securities.

(vi)    Intermediary Record Owners shall be authorized to complete multiple
Master Ballots, and the votes reflected by the multiple Master Ballots shall
be counted except to the extent that they are duplicative of other Master
Ballots.  If two or more duplicative Master Ballots submitted are
inconsistent in whole or in part, the latest Master Ballot received before the
Voting Deadline, to the extent of such inconsistency, shall supersede and
revoke any prior Master Ballot, subject to the Debtors' right to object to the
validity of the second Master Ballot on any basis permitted by law,
including under Bankruptcy Rule 3018(a).

(vii)    Each Intermediary Record Owner or Beneficial Owner of the Securities will
be deemed to have voted the full principal amount (and with respect to the
TOPrS, number of TOPrS), or number of shares held, notwithstanding
anything to the contrary on the Ballot.  Therefore, with respect to the Senior
Notes and the TOPrS, the Securities Voting Agent may adjust any
principal amount or number of TOPrS voted to reflect the corresponding
claim amount, including prepetition interest.

35.    The requirement under Rule 3018-1 of the Local Bankruptcy Rules for the
United States Bankruptcy Court for the Southern District of New York for the certification of
acceptance and rejections of the plan is modified to require the Voting Agents to file their
certifications no later than 4:00 p.m. (prevailing Eastern time) on January 16, 2007.

36.    33. Service of all notices and documents described herein in the time and
manner as set forth herein, including the service and publication of the Confirmation Hearing

Notice and the Confirmation Hearing Publication Notice, as described in the Motion, shall be adequate and sufficient and no other or further notice will be necessary.

37.    34. Plan Exhibits And Disclosure Statement Appendices Filing Deadline. The Debtors shall file all exhibits and schedules to the Plan and appendices to the Disclosure Statement with the Court on or before November 5,December 28, 2007 (the "Exhibit Filing Date"). After the Exhibit Filing Date, copies of exhibits to the Plan and appendices to the Disclosure Statement shall be available by accessing the Delphi Legal Information Website at www.delphidocket.com.  In addition, copies of exhibits to the Plan and appendices to the Disclosure Statement may also be obtained, upon reasonable written request, from the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Corporation, et al.  The Debtors shall not be required to serve the exhibits and schedules to the Plan and appendices to the Disclosure Statement upon any of the parties-in-interest in these cases.

38.    35. Notices To Union-Represented Employees And Former Employees. The Debtors are authorized to provide the current and former employees represented by the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), the United Steel Workers (the "USW"), the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America (the "IUE-CWA"), the International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78 (the "IAM"), the International Brotherhood of Electrical Workers and its Local 663 (the "IBEW"), the International Union of Operating Engineers Locals 832S, 18S, and 101S (the "IUOE"), and certain non-represented employees and former employees with the Confirmation Hearing Notice and the appropriate specialized notice.  The forms of UAW, USW,

24

IUE-CWA, IAM, IBEW, and  IUOE Notices are attached hereto as Exhibits ~~E,~~ F, G, H, I, ~~and~~ J,
and  K respectively, and the forms of notice to be sent to certain non-represented employees and
former employees is attached hereto as Exhibit ~~K~~L, each of which are hereby approved.

39.    Notice To Employees Receiving Multiple Solicitation Documents.  For
those current and former employees who may receive multiple documents as part of the
solicitation process, the Debtors shall be authorized, in their sole discretion, to make available by
either normal internal communications channels or posting on the Delphi intranet and to
www.delphidocket.com a notice, the form of which is attached hereto as Exhibit R and hereby
approved.

40.    ~~36.~~Cure Claim Procedures.  The Debtors shall be authorized to provide
counterparties to supply contracts that the Debtors intend to assume with the Cure Amount Notice,
the form of which is attached hereto as Exhibit ~~L~~M and hereby approved, by mailing such notice
on or before ~~October 29,~~December 21, 2007.  Parties wishing to object to the assumption of their
contracts under the terms set forth in the Cure Amount Notice shall be required to return the Cure
Amount Notice in accordance with the instructions provided therein so as to be received ~~on or
before November 9, 2007, and such~~by the undersigned counsel to the Debtors and such other
notice parties as required in the instructions on or before January 11, 2008.  Such objecting party is
also required to subsequently file a substantive objection to the Cure Claim Amount (in
accordance with the procedures outlined in the Cure Amount Notice) on or before the date that is
30 days following the effective date of the Plan.  The Cure dispute shall then be resolved following
the effective date of the Plan.  Parties which either agree with the cure of their supply contracts as
set forth in the Cure Amount Notice or do not timely return the Cure Amount Notice shall be given
plan currency ~~with~~(as provided to allowed general unsecured creditors including any postpetition

25

interest) on account of their Cure Claim Amount as set forth in the Cure Amount Notice and in the amount set forth in such notice.  The Debtors are authorized, but not directed, to remit resolved or, uncontested, or adjudicated distributions on account of cure directly to the contract party whose contract is being assumed or assumed and assigned.

41.    The Debtors shall be authorized to provide a notice titled Notice To Holders, Assignees, Transferees, And Purchasers Of Claims Of Cure Procedures Established Under Solicitation Procedures Order, the form of which is attached hereto as Exhibit N and hereby approved, to parties that may have purchased claims from certain of the Debtors' Material Supply Agreement counterparties who have been provided with a cure payment election pursuant to the Cure Amount Notice.  This will be the only notice the Debtors will provide to these purchasers with respect to the cure and these purchasers will have no rights or recourse against the Debtors with respect to the cure.

42.    For those counterparties who will receive a Cure Amount Notice for whom the Debtors have multiple addresses for a single contract, the Debtors shall be authorized to transmit, on or before December 21, 2007, a notice, the form of which is attached hereto as Exhibit O and hereby approved.  This notice shall communicate to the counterparty that a Cure Amount Notice has been sent to multiple addresses, which addresses shall be set forth on an exhibit to the notice.  Transmission of this proposed notice, as applicable, together with the Cure Amount Notice to addresses in the Debtors' current books and records shall satisfy the Debtors' noticing obligations.

43.    37. Postpetition Interest Rate Dispute Procedures.  The Debtors shall be authorized to provide creditors holding General Unsecured Claims, other than Senior Note Claims or and TOPrsS Claims, with the Postpetition Interest Rate Determination Notice, the form of which

is attached hereto as Exhibit ~~M~~P and hereby approved, by mailing such notice on or before ~~October 12,~~December 15, 2007.  Any party wishing to contest the proper rate of interest to be paid on account of their claims under the terms set forth in the Postpetition Interest Rate Determination Notice shall be required to return the Postpetition Interest Rate Determination Notice in accordance with the instructions provided therein so as to be received on or before ~~November 9, 2007.~~January 11, 2008.  If the Debtors disagree with the interest rate asserted in a returned Postpetition Interest Rate Determination Notice, they shall file an objection no later than 30 days after the effective date of the Plan.  To the extent that the Postpetition Interest Rate Determination Notice is returned and contests the rate of interest and relates to a claim that would otherwise be allowed, such claim shall no longer be deemed an allowed claim for purposes of distribution until the interest rate issue is resolved consensually or by Court order.

44.    ~~38.~~ Reclamation Claim Procedures.  The Debtors shall be authorized to provide ~~sellers of goods with a statutory or common law right~~ to a party asserting a reclamation ~~("Sellers") with~~claim the Reclamation Election Notice (as defined in the Second Amended And Restated Final Order Under 11 U.S.C. §§ 362, 503, And 546 And Fed. R. Bankr. P. 9019 Establishing Procedures For Treatment Of Reclamation Claims entered by this Court on October 2, 2007 (Docket No. 10409) (the "Reclamation Order")), the form of which is attached hereto as Exhibit ~~N and hereby approved, by mailing such notice on or before October 29, 2007.  The Reclamation Election Notice shall allow each Seller to elect to (i) receive a distribution on account of its reclamation claim, to the extent Allowed (as defined in the Plan) in the currency afforded holders of general unsecured claims under the Plan and such Seller shall be deemed to have waived any right to seek administrative priority status for its Reclamation Claim (but not receive any accompanying voting rights on the Plan), or (ii) assert administrative priority treatment for its~~

reclamation claim.  If a Seller elects to decline the treatment afforded to Allowed general unsecured claims, the Seller shall be required to so mark and return the Reclamation Election Notice so as to be received by November 9, 2007 in accordance with the Reclamation Election Notice, and Seller's reclamation claim shall be automatically adjourned to a contested hearing to be held after the Debtors' emergence from chapter 11.  Q and which was approved pursuant to the Reclamation Order.

39.    With respect to contested Reclamation Claims, the Debtors shall retain all reserved defenses with respect to the reclamation claims, including but not limited to the Debtors' reserved defense that reclamation claims are not entitled to administrative priority status on the grounds that the goods and/or the proceeds from the sale of the goods for which Sellers are seeking a reclamation claim are or were subject to a valid security interest.  If a Seller makes no election and does not dispute the amount of its reclamation claim, it shall be given plan currency with postpetition interest on account of the Allowed amount of its reclamation claim.

45.    Trading In Delphi Securities.  To the extent Delphi opens a trading window for insiders to trade in Delphi securities, members of the Creditors' Committee and Equity Committee will have the same opportunity to trade.

46.    40. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       [•], 2007

_____
UNITED STATES BANKRUPTCY JUDGE

Document comparison done by DeltaView on Wednesday, December 05, 2007 12:13:29 PM

| Input: | |
|---|---|
| Document 1 | pcdocs://chisr01a/559219/8 |
| Document 2 | pcdocs://chisr01a/559219/24 |
| Rendering set | Option 3a strikethrough double score no moves |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| <Moved from> | |
| >Moved to < | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 116 |
| Deletions | 100 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 216 |

30    DeltaView comparison of pcdocs://chisr01a/559219/8 and pcdocs://chisr01a/559219/24. Performed on 12/5/2007.

# Exhibit A -- Ballots

| | | |
|---|---|---|
| Class C | General Unsecured Claims Ballot | |
| | 6.55% Notes due 2006 | Beneficial Owner Ballot |
| | | Master Ballot |
| | 6 1/2 % Notes due 2009 | Beneficial Owner Ballot |
| | | Master Ballot |
| | 6.50% Notes due 2013 | Beneficial Owner Ballot |
| | | Master Ballot |
| | 7 1/8% Notes due 2029 | Beneficial Owner Ballot |
| | | Master Ballot |
| | 8 1/4% Adjustable TOPrS Claims (due 2033) | Beneficial Owner Ballot |
| | | Master Ballot |
| | 6.197% TOPrS Claims (due 2033) | Beneficial Owner Ballot |
| | | Master Ballot |
| Class D | General Motors Corporation Claim Ballot | |
| Class E | Section 510(b) Note Claims Ballot | |
| Class G-1 | Existing Common Stock | Beneficial Owner Ballot |
| | | Master Ballot |
| | | Registered Owner Ballot |
| Class G-2 | Section 510(b) Equity Claims Ballot | |
| Class H | Section 510(b) ERISA Claims Ballot | |

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
<u>DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION</u>

(Class C General Unsecured Claims)

On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This ballot (the "Ballot") is being sent to holders of Class C General Unsecured Claims for their use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claims have been placed in Class C under the Plan.  If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.**

**Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on_ ~~_November 9, 2007_~~_January 11, 2008_ or your ballot will _not_ be counted.  If you have any questions please call Kurtzman Carson Consultants LLC (the "Creditor Voting Agent") at ~~[          ]~~(888) 249-2691.**

---

**The Creditor Voting Agent Will Not Accept Ballots By Electronic Or Facsimile Transmission**

**CLASS C GENERAL UNSECURED CLAIMS**

You may receive multiple mailings containing Ballots.  You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1.  Vote On Plan. (Please check one.)**  The undersigned, the holder of a Class C General Unsecured Claim against the Debtors in the unpaid amount of $_____,

☐        ACCEPTS (votes FOR) the Plan.        ☐        REJECTS (votes AGAINST) the Plan.

**Item 2.  Certification.**  By signing this Ballot, the undersigned hereby certifies that: (a) on ~~September 28~~November 26, 2007 it was the holder of a Class C General Unsecured Claim to which this Ballot pertains (or an authorized signatory therefor), (b) it has full power and authority to vote to accept or reject the Plan, (c) it has received a copy of the Disclosure Statement (including the appendices and exhibits thereto), (d) it understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement, and (e) either (i) it has not submitted any other Ballots for Class C General Unsecured Claims or (ii) it has provided the information specified in the following table for all other Class C General Unsecured Claims for which it has submitted additional Ballots (please use additional sheets of paper if necessary):

**Complete This Table Only If You Have Voted Class C General
Unsecured Claim Ballots Other Than This Ballot**

| Name Of Holder | Account Number (If Applicable) | Amount Of Claim |
|---|---|---|
| 1._____ | _____ | $_____ |
| 2._____ | _____ | $_____ |
| 3._____ | _____ | $_____ |

Name Of Voter:_____

(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____

(Optional)

Signature:_____

Name Of Signatory:_____

(If Other Than Voter)

~~Title:~~_____

Title:_____

Address:_____

Date Signed:_____

If your address or contact information has changed, please note the new information here:

**CLASS C GENERAL UNSECURED CLAIMS**

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

If your claim against the Debtors has been paid, do not return this Ballot or vote on the paid claim.

You may not split your vote.  You must vote the entire claim that you hold to accept or to reject the Plan.  You will be deemed to have voted the full amount of your claim in your vote.  **A Ballot that partially rejects and partially accept the Plan will not be counted.**  You must vote all your claims within a single class to either accept or reject that Plan.

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots must be received by the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Creditor Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Creditor Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a) Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot.

(b) Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c) Read Item 2 carefully.

(d) Sign and date your Ballot.

(e) If you believe that you have received the wrong Ballot, please immediately contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, at ~~[phone number]~~(888) 249-2691.

(f) If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing in the signature block on the Ballot.

(g) Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h) Return your Ballot using the enclosed return envelope.

**<u>Please Mail Your Ballot Promptly!</u>**

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, promptly
at ~~[phone number]~~(888) 249-2691 or Kurtzman Carson Consultants LLC,
2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation

**CLASS C GENERAL UNSECURED CLAIMS**

No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What IsContained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
   In re                                      :     Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :     Case No. 05-44481 (RDD)
                                              :
                      Debtors.                :     (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims — 6.55% Notes due 2006, dated May 31, 2001)

On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the 6.55% Notes due 2006, dated May 31, 2001, of Delphi Corporation (the "Notes"), Class C General Unsecured Claims under the Plan, for their use in voting to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote
To Be Processed By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claims have been placed in Class C under the Plan. If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.

Please read carefully and follow the attached instructions on returning your Ballot. The voting deadline by which your vote must be *received* by the voting agent is *7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008* or your ballot will *not* be counted. If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at ~~[phone number]~~(866) 486-1727. If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote. Do not return any Notes with this Ballot. This Ballot is not a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.

---

CLASS C GENERAL UNSECURED CLAIMS
6.55% NOTES DUE 2006,
DATED MAY 31, 2001

**You must vote all of the Notes and any other Class C securities you may hold to accept or reject the Plan.  You may not split your vote.  If you are submitting a vote with respect to any Class C securities that you own, you must vote all your Class C securities in the same way (i.e., all "Accepts" or all "Rejects").  ~~An~~ If you are an authorized signatory of an eligible Beneficial Owner you may execute this Ballot, but ~~you~~ must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating ~~the signatory's~~ your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your Notes or other Class C securities through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee").  You should vote each Ballot that you receive for all of the Notes and Class C securities that you beneficially own.

You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**Item 1.  Principal Amount Of Notes.**  The undersigned hereby certifies that as of ~~September 28~~November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of Notes in the following amount (insert amount in box below).  **(If your Notes are held by a Nominee on your behalf and you do not know the amount of Notes held, please contact your Nominee immediately.)**

$$\boxed{\$ \qquad\qquad\qquad\qquad\qquad\qquad}$$

**Item 2.  Vote On Plan. (Please check one.)**

The undersigned:    ☐        ACCEPTS (votes FOR) the Plan.

☐        REJECTS (votes AGAINST) the Plan.

**Item 3.  Certification As To Notes And Other Class C Securities Held In Additional Accounts.**  By completing and returning this Ballot, the Beneficial Owner certifies that either (a) it has not submitted any other Ballots for Notes or other Class C securities held in other accounts or other record names or (b) it has provided the information specified in the following table for all other Notes and Class C securities for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

**Complete This Table Only If You Have Voted Class C
Securities Ballots Other Than This Ballot**

| Name Of Holder[1] | Account Number (If Applicable) | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted[2] |
|---|---|---|---|
| 1._____ | _____ | $_____ | _____ |
| 2._____ | _____ | $_____ | _____ |
| 3._____ | _____ | $_____ | _____ |

---

[1] Insert your name if the Class C securities are held by you in record name or, if held in street name, insert name of Nominee.
[2] Insert name or cusip number of other Class C securities.

**CLASS C GENERAL UNSECURED CLAIMS
6.55% NOTES DUE 2006,
DATED MAY 31, 2001**

**Item 4. Authorization.** By returning this Ballot, the Beneficial Owner hereby certifies that ~~(a) it was~~ on ~~September 28~~November 26, 2007 (a) it was the registered or record holder and the Beneficial Owner of the Notes to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was ~~on September 28, 2007~~ the Beneficial Owner of the Notes, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was ~~on September 28, 2007~~ the Beneficial Owner of the Notes, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the Notes to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent. The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)


Signature:_____

Name Of Signatory:_____
(If Other Than Holder)

~~Tile:_____~~

Title:_____

Address:_____

Date Signed :_____

**CLASS C GENERAL UNSECURED CLAIMS**
**6.55% NOTES DUE 2006,**
**DATED MAY 31, 2001**

### INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender, at this time, certificates representing their Notes, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.  Surrender of Notes for exchange may only be made by you or your Nominee pursuant to a letter of transmittal, which will be furnished by the Debtors following confirmation of the Plan.

**Do not submit Notes with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballots completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017,  Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the principal amount of your Notes, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Provide the information required by Item 3, if applicable to you.

(d)  Read Item 4 carefully.

(e)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(f)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with the person or entity and the capacity in which you are signing in the signature block on the Ballot.

(h)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(i)  Return your Ballot using the enclosed return envelope.

## Please Mail Your Ballot Promptly!

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~at (866) 486-1727.

**CLASS C GENERAL UNSECURED CLAIMS
6.55% NOTES DUE 2006,
DATED MAY 31, 2001**

No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims — 6.55% Notes due 2006, dated May 31, 2001)

> **The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008.**
> **For the votes of your Beneficial Owners to be counted, your Master Ballot**
> **must be *received* by the Securities Voting Agent before the Voting Deadline.**

On ~~October 3~~December ____, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee or beneficial owner—for beneficial owners (the "Beneficial Owners") of the 6.55% Notes due 2006, dated May 31, 2001 (the "Notes") of Delphi Corporation, Class C General Unsecured Claims under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Master Ballot. Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold Notes, and take any action required to enable the Beneficial Owner to timely vote its Notes to accept or reject the Plan. With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the Notes and (2) forward the Master Ballots to the Securities Voting Agent. If you are both the registered or record holder and Beneficial Owner of any Notes and you wish to vote the Notes, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully. Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation. If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS C GENERAL UNSECURED CLAIMS**
**6.55% NOTES DUE 2006,**
**DATED MAY 31, 2001**

**Item 1.  Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐        Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of Notes listed in Item 2 below, and is the registered or record holder of the securities, or

☐        Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below, or

☐        Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Notes described in Item 2.

**Item 2.  Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class C General Unsecured Claims—6.55% Notes due 2006, dated May 31, 2001, and certifies that the following Beneficial Owners of the Class C Notes, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting such votes.  Indicate, in the appropriate column, the aggregate principal amount voted for each account, or attach such information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its Notes and other Class C securities to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of Notes | Principal Amount Of Notes[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | $ | $ |
| 2. | $ | $ |
| 3. | $ | $ |
| 4. | $ | $ |
| 5. | $ | $ |
| 6. | $ | $ |
| 7. | $ | $ |
| 8. | $ | $ |
| 9. | $ | $ |
| 10. | $ | $ |
| **TOTALS:** | $ | $ |

---

[1]        To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS C GENERAL UNSECURED CLAIMS**
**6.55% NOTES DUE 2006,**
**DATED MAY 31, 2001**

Please note that each Beneficial Owner of Notes who votes must vote all the Notes owned by such Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of Notes owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted By Beneficial Owners.**  The undersigned certifies that it has transcribed below the information, if any, provided in Item 3 of each Beneficial Owner Ballot received from a Beneficial Owner:

| Your Customer Name Or Account Number For Each Beneficial Owner | TRANSCRIBE FROM ITEM 3 OF BENEFICIAL OWNER BALLOT | | | |
| --- | --- | --- | --- | --- |
| | Name Of Holder | Account Number | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**Item 4.**  By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept

**CLASS C GENERAL UNSECURED CLAIMS
6.55% NOTES DUE 2006,
DATED MAY 31, 2001**

or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number: _____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Tile:_____~~

Title:_____

Address:_____

_____

_____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~ **January 11, 2008.**  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

---

**CLASS C GENERAL UNSECURED CLAIMS
6.55% NOTES DUE 2006,
DATED MAY 31, 2001**

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot.  Please review the Disclosure Statement and Plan carefully before you return this Master Ballot.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

**1.  If you are both the registered or record holder and Beneficial Owner of** *any* **Notes and you wish to vote the Notes,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

**2.  If you are transmitting the votes of any Beneficial Owners of Notes other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold Notes, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package"), and take any action required to enable each Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(b) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the Notes voted, the principal amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the Notes for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold Notes and (z) forward the Master Ballots to the Securities Voting Agent.

**3.  To complete the Master Ballot properly, take the following steps:**

(a)  Provide appropriate information for each of the items on the Master Ballot.  Vote to accept (vote for) or reject (vote against) the Plan in Item 2 for the Notes held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners.  Please provide information for each individual Beneficial Owner for whom you are voting Notes.  If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to each Beneficial Owner or, if no such customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b)  Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner in each completed Beneficial Owner Ballot relating to other Class C securities voted.

(c)  Read Item 4 carefully.

(d)  Sign and date your Master Ballot.

(e)  Provide your name and mailing address.

(f)  Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.

<div align="right">

**CLASS C GENERAL UNSECURED CLAIMS**
**6.55% NOTES DUE 2006,**
**DATED MAY 31, 2001**

</div>

**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.

---

**Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

---

**CLASS C GENERAL UNSECURED CLAIMS**
**6.55% NOTES DUE 2006,**
**DATED MAY 31, 2001**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re : Chapter 11
:
DELPHI CORPORATION, et al., : Case No. 05-44481 (RDD)
:
Debtors. : (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION**

(Class C General Unsecured Claims — 6 1/2% Notes due 2009, dated April 28, 1999)

On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the _6 1/2% Notes due 2009, dated April 28, 1999, of Delphi Corporation (the "Notes"), Class C General Unsecured Claims under the Plan, for their use in voting to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote
To Be Processed By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claims have been placed in Class C under the Plan. If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.**

**Please read carefully and follow the attached instructions on returning your Ballot. The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on ~~November~~January 9, ~~2007~~2008_ or your ballot will _not_ be counted. If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at ~~[phone number]~~.(866) 486-1727. If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote. Do not return any Notes with this Ballot. This Ballot is not a letter of transmittal and may _not_ be used for any purpose other than to cast votes to accept or reject the Plan.**

---

**CLASS C GENERAL UNSECURED CLAIMS
6 1/2% NOTES DUE 2009,
DATED APRIL 28, 1999**

**You must vote all of the Notes and any other Class C securities you may hold to accept or reject the Plan.  You may not split your vote.  If you are submitting a vote with respect to any Class C securities that you own, you must vote all your Class C securities in the same way (i.e., all "Accepts" or all "Rejects").  ~~An~~ If you are an authorized signatory of an eligible Beneficial Owner you may execute this Ballot, but you must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating ~~the signatory's~~ your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your Notes or other Class C securities through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee").  You should vote each Ballot that you receive for all of the Notes and Class C securities that you beneficially own.

You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**Item 1.  Principal Amount Of Notes.**  The undersigned hereby certifies that as of ~~September 28~~November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of Notes in the following amount (insert amount in box below).  **(If your Notes are held by a Nominee on your behalf and you do not know the amount of Notes held, please contact your Nominee immediately.)**

$$\boxed{\$\phantom{xxxxxxxxxxxxxxxxxxxx}}$$

**Item 2.  Vote On Plan. (Please check one.)**

The undersigned:    ☐        <u>ACCEPTS</u> (votes FOR) the Plan.

                    ☐        <u>REJECTS</u> (votes AGAINST) the Plan.

**Item 3.  Certification As To Notes And Other Class C Securities Held In Additional Accounts.**  By completing and returning this Ballot, the Beneficial Owner certifies that either (a) it has not submitted any other Ballots for Notes or other Class C securities held in other accounts or other record names or (b) it has provided the information specified in the following table for all other Notes and other Class C securities for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

**Complete This Table Only If You Have Voted Class C
Securities Ballots Other Than This Ballot**

| Name Of Holder[1] | Account Number (If Applicable) | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted[2] |
|---|---|---|---|
| 1._____ | _____ | $_____ | _____ |
| 2._____ | _____ | $_____ | _____ |
| 3._____ | _____ | $_____ | _____ |

---

[1] Insert your name if the Class C securities are held by you in record name or, if held in street name, insert name of Nominee.
[2] Insert name or cusip number of other Class C securities.

**CLASS C GENERAL UNSECURED CLAIMS
6 1/2% NOTES DUE 2009,
DATED APRIL 28, 1999**

**Item 4.  Authorization.**  By returning this Ballot, the Beneficial Owner hereby certifies that ~~(a) it was~~ on ~~September 28~~November 26, 2007 (a) it was the registered or record holder and the Beneficial Owner of the Notes to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was ~~on September 28, 2007~~ the Beneficial Owner of the Notes, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was ~~on September 28, 2007~~ the Beneficial Owner of the Notes, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the Notes to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent.  The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

Name Of Signatory:_____
(If Other Than Holder)

~~Tile:_____~~

Title:_____

Address:_____

Date Signed :_____

**CLASS C GENERAL UNSECURED CLAIMS
6 1/2% NOTES DUE 2009,
DATED APRIL 28, 1999**

### INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does** *not* **constitute and** *will not* **be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is** *not* **a letter of transmittal and may** *not* **be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender, at this time, certificates representing their Notes, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.  Surrender of Notes for exchange may only be made by you or your Nominee pursuant to a letter of transmittal, which will be furnished by the Debtors following confirmation of the Plan.

**Do not submit Notes with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballots completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017,  Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the principal amount of your Notes, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Provide the information required by Item 3, if applicable to you.

(d)  Read Item 4 carefully.

(e)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(f)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with the person or entity and the capacity in which you are signing in the signature block on the Ballot.

(h)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(i)  Return your Ballot using the enclosed return envelope.

### Please Mail Your Ballot Promptly!

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~
at (866) 486-1727.

**CLASS C GENERAL UNSECURED CLAIMS
6 1/2% NOTES DUE 2009,
DATED APRIL 28, 1999**

**CLASS C GENERAL UNSECURED CLAIMS**
**6 1/2% NOTES DUE 2009,**
**DATED APRIL 28, 1999**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims — 6 1/2% Notes due 2009, dated April 28, 1999)

> **The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008.
> For the votes of your Beneficial Owners to be counted, your Master Ballot
> must be *received* by the Securities Voting Agent before the Voting Deadline.**

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"; or as the proxy holder of a Nominee or beneficial owner—for beneficial owners (the "Beneficial Owners") of the 6 1/2% Notes due 2009, dated April 28, 1999 (the "Notes") of Delphi Corporation, Class C General Unsecured Claims under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Master Ballot. Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold Notes, and take any action required to enable the Beneficial Owner to timely vote its Notes to accept or reject the Plan. With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the Notes and (2) forward the Master Ballots to the Securities Voting Agent. If you are both the registered or record holder and Beneficial Owner of any Notes and you wish to vote the Notes, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully. Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation. If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS C GENERAL UNSECURED CLAIMS
6 1/2% NOTES DUE 2009,
DATED APRIL 28, 1999**

**Item 1.  Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐      Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of Notes listed in Item 2 below, and is the registered or record holder of the securities, or

☐      Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below, or

☐      Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Notes described in Item 2.

**Item 2.  Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class C General Unsecured Claims—6 1/2% Notes due 2009, dated April 28, 1999, and certifies that the following Beneficial Owners of the Class C Notes, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting such votes.  Indicate, in the appropriate column, the aggregate principal amount voted for each account, or attach such information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its Notes and other Class C securities to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of Notes | Principal Amount Of Notes[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | $ | $ |
| 2. | $ | $ |
| 3. | $ | $ |
| 4. | $ | $ |
| 5. | $ | $ |
| 6. | $ | $ |
| 7. | $ | $ |
| 8. | $ | $ |
| 9. | $ | $ |
| 10. | $ | $ |
| **TOTALS:** | $ | $ |

---

[1]      To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS C GENERAL UNSECURED CLAIMS**
**6 1/2% NOTES DUE 2009,**
**DATED APRIL 28, 1999**

Please note that each Beneficial Owner of Notes who votes must vote all the Notes owned by such Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of Notes owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted By Beneficial Owners.**  The undersigned certifies that it has transcribed below the information, if any, provided in Item 3 of each Beneficial Owner Ballot received from a Beneficial Owner:

| Your Customer Name Or Account Number For Each Beneficial Owner | TRANSCRIBE FROM ITEM 3 OF BENEFICIAL OWNER BALLOT | | | |
| --- | --- | --- | --- | --- |
| | Name Of Holder | Account Number | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**Item 4.**  By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept

**CLASS C GENERAL UNSECURED CLAIMS**
**6 1/2% NOTES DUE 2009,**
**DATED APRIL 28, 1999**

or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number: _____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Tile:_____~~

Title:_____

Address:_____

_____

_____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~ **January 11, 2008.**  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

---

**CLASS C GENERAL UNSECURED CLAIMS**
**6 1/2% NOTES DUE 2009,**
**DATED APRIL 28, 1999**

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot.  Please review the Disclosure Statement and Plan carefully before you return this Master Ballot.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

**1.  If you are both the registered or record holder and Beneficial Owner of** *any* **Notes and you wish to vote the Notes,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

**2.  If you are transmitting the votes of any Beneficial Owners of Notes other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold Notes, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package"), and take any action required to enable each Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(b) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the Notes voted, the principal amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the Notes for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold Notes and (z) forward the Master Ballots to the Securities Voting Agent.

**3.  To complete the Master Ballot properly, take the following steps:**

(a)  Provide appropriate information for each of the items on the Master Ballot.  Vote to accept (vote for) or reject (vote against) the Plan in Item 2 for the Notes held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners.  Please provide information for each individual Beneficial Owner for whom you are voting Notes.  If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to each Beneficial Owner or, if no such customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b)  Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner in each completed Beneficial Owner Ballot relating to other Class C securities voted.

(c)  Read Item 4 carefully.

(d)  Sign and date your Master Ballot.

(e)  Provide your name and mailing address.

(f)  Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.

**CLASS C GENERAL UNSECURED CLAIMS**
**6 1/2% NOTES DUE 2009,**
**DATED APRIL 28, 1999**

**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.

> **Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

**CLASS C GENERAL UNSECURED CLAIMS**
**6 1/2% NOTES DUE 2009,**
**DATED APRIL 28, 1999**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims -- 6.50% Notes due 2013, dated July 22, 2003)

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the ~~Disclosure Statement~~disclosure statement (the "Disclosure Statement") with ~~Respect~~respect to the First Amended Joint Plan Of Reorganization ~~Plan of~~Of Delphi Corporation and~~And~~ Certain Affiliates, Debtors and~~And~~ Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners"~~),~~ ) (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code~~,~~) of the 6.50% Notes due 2013, dated July 22, 2003, of Delphi Corporation (the "Notes"), Class C General Unsecured Claims under the Plan, for their use in voting to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On** ~~November 9, 2007~~January 11, 2008

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote
To Be Processed By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claims have been placed in Class C under the Plan. If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.

Please read carefully and follow the attached instructions on returning your ballot. The voting deadline by which your vote must be *received* by the voting agent is *7:00 p.m. (prevailing Eastern time) on* ~~November 9, 2007~~ January 11, 2008 or your ballot will *not* be counted. If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at [————] (866) 486-1727. If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote. Do not return any Notes with this Ballot. This Ballot is not a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.

---

**CLASS C**          **GENERAL UNSECURED CLAIMS -- 6.50% NOTES DUE 2013, DATED JULY 22, 2003**

You must vote all of the Notes and any other Class C securities you may hold to accept or reject the Plan.  You may not split your vote.  If you are submitting a vote with respect to any Notes Class C securities that you own, you must vote all of your Notes Class C securities in the same way (i.e., all "Accepts" or all "Rejects").  An authorized signatory of If you are an authorized signatory of an eligible Beneficial Owner you may execute this Ballot, but you must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating such signatory's your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.

You may receive multiple mailings containing Ballots, especially if you own your Notes through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee").  You should vote each Ballot that you receive for all of the Notes that you beneficially own.

You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

You must vote all of the Notes and any other Class C securities you may hold to accept or reject the Plan.  You may not split your vote.  If you are submitting a vote with respect to any Class C securities that you own, you must vote all your Class C securities in the same way (i.e., all "Accepts" or all "Rejects").  An authorized signatory of an eligible Beneficial Owner may execute this Ballot, but must provide the name and address of the Beneficial Owner on this Ballot and may be required to submit evidence to the Bankruptcy Court demonstrating the signatory's authorization to vote on behalf of the Beneficial Owner.  Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.

You may receive multiple mailings containing Ballots, especially if you own your Notes or other Class C securities through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee").  You should vote each Ballot that you receive for all of the Notes and Class C securities that you beneficially own.

You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**Item 1.  Principal Amount of Of Notes.**  The undersigned hereby certifies that as of September 28 November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of Notes in the following amount (insert amount in box below).  **(If your Notes are held by a Nominee on your behalf and you do not know the amount of Notes held, please contact your Nominee immediately.)**

$

**Item 2.  Vote On Plan. (Please check one.)**

The undersigned:   ☐   <u>ACCEPTS</u> (votes FOR) the Plan.

☐   <u>REJECTS</u> (votes AGAINST) the Plan.

**Item 3.  Certification As To Notes And Other Class C Securities Held In Additional Accounts.**  By completing and returning this Ballot, the Beneficial Owner certifies that either (1 a) it has not submitted any other Ballots for Notes or other Class C securities held in other accounts or other record names or (2 b) it has provided the information specified in the following table for all other Notes and other Class C securities for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

**Complete This Table Only If You Have Voted Class C Securities Ballots Other Than This Ballot**

**CLASS C**                              **GENERAL UNSECURED CLAIMS --  6.50% NOTES DUE 2013, DATED JULY 22, 2003**

2

| Name Of Holder[1] | Account Number (If Applicable) | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted[2] |
|---|---|---|---|
| 1._____ | _____ | $_____ | _____ |
| 2._____ | _____ | $_____ | _____ |
| 3._____ | _____ | $_____ | _____ |

---

[1] Insert your name if the Class C securities are held by you in record name or, if held in street name, insert name of Nominee.
[2] Insert name or cusip number of other Class C securities.

**CLASS C**        **GENERAL UNSECURED CLAIMS -- 6.50% NOTES DUE 2013, DATED JULY 22, 2003**

3

**Item 4.** **Authorization.** By returning this Ballot, the Beneficial Owner hereby certifies ~~under penalty of perjury under the laws of the United States of America~~ that ~~it (a) was~~ on ~~September 28~~November 26, 2007 ~~,~~ (a) it was the registered or record holder and the Beneficial Owner of the Notes to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was ~~on September 28, 2007,~~ the Beneficial Owner of the Notes, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was ~~on September 28, 2007,~~ the Beneficial Owner of the Notes, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the Notes to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent.  The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____

(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____

(Optional)

Signature:_____

Name ~~of~~Of
Signatory:_____

(If Other Than Holder)

~~Tile:_____~~

Title:_____

Address:_____

Date Signed :_____

**CLASS C**                    **GENERAL UNSECURED CLAIMS --  6.50% NOTES DUE 2013, DATED JULY 22, 2003**

4

## INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender, at this time, certificates representing their Notes, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.  Surrender of Notes for exchange may only be made by you or your Nominee pursuant to a letter of transmittal, which will be furnished by the Debtors following confirmation of the Plan.

**Do not submit Notes with this ~~ballot~~Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballots completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, ~~NY~~New York 10017, Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the principal amount of your Notes, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Provide the information required by Item 3, if applicable to you.

(d)  Read Item 4 carefully.

(e)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(f)  If you believe that you have received the wrong ~~ballot~~Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with the person or entity and the capacity in which you are signing in the signature block on the Ballot.

(h)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(i)  Return your Ballot using the enclosed return envelope.

## **Please Mail Your Ballot Promptly!**

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~
at (866) 486-1727.

**CLASS C**              **GENERAL UNSECURED CLAIMS --  6.50% NOTES DUE 2013, DATED JULY 22, 2003**

5

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |   |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims — 6.50% Notes due 2013, dated July 22, 2003)

---

**The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008.
For the votes of your Beneficial Owners to be counted, your Master Ballot
must be *received* by the Securities Voting Agent before the Voting Deadline.**

---

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"; or as the proxy holder of a Nominee or beneficial owner—for beneficial owners (the "Beneficial Owners") of the 6.50% Notes due 2013, dated July 22, 2003 (the "Notes") of Delphi Corporation, Class C General Unsecured Claims under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Master Ballot. Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold Notes, and take any action required to enable the Beneficial Owner to timely vote its Notes to accept or reject the Plan. With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the Notes and (2) forward the Master Ballots to the Securities Voting Agent. If you are both the registered or record holder and Beneficial Owner of any Notes and you wish to vote the Notes, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully. Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation. If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS C GENERAL UNSECURED CLAIMS
6.50% NOTES DUE 2013,
DATED JULY 22, 2003**

**Item 1.  Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐      Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of Notes listed in Item 2 below, and is the registered or record holder of the securities, or

☐      Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below, or

☐      Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Notes described in Item 2.

**Item 2.  Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class C General Unsecured Claims—6.50% Notes due 2013, dated July 22, 2003, and certifies that the following Beneficial Owners of the Class C Notes, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting such votes.  Indicate, in the appropriate column, the aggregate principal amount voted for each account, or attach such information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its Notes and other Class C securities to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of Notes | Principal Amount Of Notes[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | $ | $ |
| 2. | $ | $ |
| 3. | $ | $ |
| 4. | $ | $ |
| 5. | $ | $ |
| 6. | $ | $ |
| 7. | $ | $ |
| 8. | $ | $ |
| 9. | $ | $ |
| 10. | $ | $ |
| **TOTALS:** | $ | $ |

---

[1]      To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS C GENERAL UNSECURED CLAIMS
6.50% NOTES DUE 2013,
DATED JULY 22, 2003**

Please note that each Beneficial Owner of Notes who votes must vote all the Notes owned by such Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of Notes owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted By Beneficial Owners.**  The undersigned certifies that it has transcribed below the information, if any, provided in Item 3 of each Beneficial Owner Ballot received from a Beneficial Owner:

| Your Customer Name Or Account Number For Each Beneficial Owner | TRANSCRIBE FROM ITEM 3 OF BENEFICIAL OWNER BALLOT | | | |
| --- | --- | --- | --- | --- |
| | Name Of Holder | Account Number | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**Item 4.**  By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept

**CLASS C GENERAL UNSECURED CLAIMS**
**6.50% NOTES DUE 2013,**
**DATED JULY 22, 2003**

or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number: _____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Title:_____~~

Title:_____

Address:_____

        _____

        _____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~ January 11, 2008.  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

---

**CLASS C GENERAL UNSECURED CLAIMS**
**6.50% NOTES DUE 2013,**
**DATED JULY 22, 2003**

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot.  Please review the Disclosure Statement and Plan carefully before you return this Master Ballot.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

**1.  If you are both the registered or record holder and Beneficial Owner of *any* Notes and you wish to vote the Notes,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

**2.  If you are transmitting the votes of any Beneficial Owners of Notes other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold Notes, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package"), and take any action required to enable each Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(b) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the Notes voted, the principal amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the Notes for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold Notes and (z) forward the Master Ballots to the Securities Voting Agent.

**3.  To complete the Master Ballot properly, take the following steps:**

(a)  Provide appropriate information for each of the items on the Master Ballot.  Vote to accept (vote for) or reject (vote against) the Plan in Item 2 for the Notes held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners.  Please provide information for each individual Beneficial Owner for whom you are voting Notes.  If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to each Beneficial Owner or, if no such customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b)  Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner in each completed Beneficial Owner Ballot relating to other Class C securities voted.

(c)  Read Item 4 carefully.

(d)  Sign and date your Master Ballot.

(e)  Provide your name and mailing address.

(f)  Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.

**CLASS C GENERAL UNSECURED CLAIMS**
**6.50% NOTES DUE 2013,**
**DATED JULY 22, 2003**

**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.

**Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

**CLASS C GENERAL UNSECURED CLAIMS**
**6.50% NOTES DUE 2013,**
**DATED JULY 22, 2003**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re                        :     Chapter 11
                             :

DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                             :

           Debtors.      :     (Jointly Administered)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims — 7 1/8% Notes due May 1, 2029, dated April 28, 1999)

     On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan Of~~ Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the 7 1/8% Notes due May 1, 2029, dated April 28, 1999, of Delphi Corporation (the "Notes"), Class C General Unsecured Claims under the Plan, for their use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement that accompanies this Ballot.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote
To Be Processed By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claims have been placed in Class C under the Plan.  If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.**

**Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on_ ~~November 9, 2007~~January 11, 2008 or your ballot will _not_ be counted.  If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at ~~[phone number].~~(866) 486-1727.  If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote.  Do not return any Notes with this Ballot.  This Ballot is not a letter of transmittal and may _not_ be used for any purpose other than to cast votes to accept or reject the Plan.**

---

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**

**You must vote all of the Notes and any other Class C securities you may hold to accept or reject the Plan.  You may not split your vote.  If you are submitting a vote with respect to any Class C securities that you own, you must vote all your Class C securities in the same way (i.e., all "Accepts" or all "Rejects").  An If you are an authorized signatory of an eligible Beneficial Owner you may execute this Ballot, but you must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating the signatory'syour authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your Notes or other Class C securities through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee").  You should vote each Ballot that you receive for all of the Notes and Class C securities that you beneficially own.

You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**Item 1.  Principal Amount Of Notes.**  The undersigned hereby certifies that as of September 28November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of Notes in the following amount (insert amount in box below).  **(If your Notes are held by a Nominee on your behalf and you do not know the amount of Notes held, please contact your Nominee immediately.)**

$

**Item 2.  Vote On Plan. (Please check one.)**

The undersigned:    ☐    <u>ACCEPTS</u> (votes FOR) the Plan.

☐    <u>REJECTS</u> (votes AGAINST) the Plan.

**Item 3.  Certification As To Notes And Other Class C Securities Held In Additional Accounts.**  By completing and returning this Ballot, the Beneficial Owner certifies that either (a) it has not submitted any other Ballots for Notes or other Class C securities held in other accounts or other record names or (b) it has provided the information specified in the following table for all other Notes and other Class C securities for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

<div align="center">

**Complete This Table Only If You Have Voted Class C
Securities Ballots Other Than This Ballot**
</div>

| Name Of Holder[1] | Account Number (If Applicable) | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted[2] |
|---|---|---|---|
| 1._____ | _____ | $_____ | _____ |
| 2._____ | _____ | $_____ | _____ |
| 3._____ | _____ | $_____ | _____ |

---

[1] Insert your name if the Class C securities are held by you in record name or, if held in street name, insert name of Nominee.
[2] Insert name or cusip number of other Class C securities.

<div align="right">

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**
</div>

**Item 4.  Authorization.**  By returning this Ballot, the Beneficial Owner hereby certifies that ~~(a) it was~~ on ~~September 28~~November 26, 2007 (a) it was the registered or record holder and the Beneficial Owner of the Notes to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was ~~on September 28, 2007~~ the Beneficial Owner of the Notes, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was ~~on September 28, 2007~~ the Beneficial Owner of the Notes, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the Notes to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent.  The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

Name Of Signatory:_____
(If Other Than Holder)

~~Title:_____~~

Title:_____

Address:_____

Date Signed :_____

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**

### INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender, at this time, certificates representing their Notes, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.  Surrender of Notes for exchange may only be made by you or your Nominee pursuant to a letter of transmittal, which will be furnished by the Debtors following confirmation of the Plan.

**Do not submit Notes with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballots completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017,  Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the principal amount of your Notes, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Provide the information required by Item 3, if applicable to you.

(d)  Read Item 4 carefully.

(e)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(f)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with the person or entity and the capacity in which you are signing in the signature block on the Ballot.

(h)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(i)  Return your Ballot using the enclosed return envelope.

### <u>Please Mail Your Ballot Promptly!</u>

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~at (866) 486-1727.

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
    In re                              :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                 Debtors.              :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C General Unsecured Claims — 7 1/8% Notes due 2029, dated April 28, 1999)

---

**The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008.
For the votes of your Beneficial Owners to be counted, your Master Ballot
must be *received* by the Securities Voting Agent before the Voting Deadline.**

---

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan Of~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee or beneficial owner—for  beneficial owners (the "Beneficial Owners") of the 7 1/8% Notes due 2029, dated April 28, 1999 (the "Notes") of Delphi Corporation, Class C General Unsecured Claims under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Master Ballot.  Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold Notes, and take any action required to enable the Beneficial Owner to timely vote its Notes to accept or reject the Plan.  With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the Notes and (2) forward the Master Ballots to the Securities Voting Agent.  If you are both the registered or record holder and Beneficial Owner of any Notes and you wish to vote the Notes, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully.  Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation.  If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**

**Item 1.  Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐ Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of Notes listed in Item 2 below, and is the registered or record holder of the securities, or

☐ Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below, or

☐ Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of Notes listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Notes described in Item 2.

**Item 2.  Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class C General Unsecured Claims—7 1/8% Notes due 2029, dated April 28, 1999, and certifies that the following Beneficial Owners of the Class C Notes, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting such votes.  Indicate, in the appropriate column, the aggregate principal amount voted for each account, or attach such information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its Notes and other Class C securities to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of Notes | Principal Amount Of Notes[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | $ | $ |
| 2. | $ | $ |
| 3. | $ | $ |
| 4. | $ | $ |
| 5. | $ | $ |
| 6. | $ | $ |
| 7. | $ | $ |
| 8. | $ | $ |
| 9. | $ | $ |
| 10. | $ | $ |
| **TOTALS:** | $ | $ |

---

[1]     To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**

Please note that each Beneficial Owner of Notes who votes must vote all the Notes owned by such Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of Notes owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted By Beneficial Owners.**  The undersigned certifies that it has transcribed below the information, if any, provided in Item 3 of each Beneficial Owner Ballot received from a Beneficial Owner:

| Your Customer Name Or Account Number For Each Beneficial Owner | TRANSCRIBE FROM ITEM 3 OF BENEFICIAL OWNER BALLOT | | | |
| --- | --- | --- | --- | --- |
| | Name Of Holder | Account Number | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**CLASS C GENERAL UNSECURED CLAIMS
7 1/8% NOTES DUE 2029,
DATED APRIL 28, 1999**

**Item 4.**  By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number: _____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Tile:_____~~

Title:_____

Address:_____

_____

_____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007.~~January 11, 2008.  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

---

**CLASS C GENERAL UNSECURED CLAIMS**
**7 1/8% NOTES DUE 2029,**
**DATED APRIL 28, 1999**

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot. Please review the Disclosure Statement and Plan carefully before you return this Master Ballot. Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"). **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

1. **If you are both the registered or record holder and Beneficial Owner of** *any* **Notes and you wish to vote the Notes,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

2. **If you are transmitting the votes of any Beneficial Owners of Notes other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold Notes, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package"), and take any action required to enable each Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(b) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the Notes voted, the principal amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the Notes for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold Notes and (z) forward the Master Ballots to the Securities Voting Agent.

3. **To complete the Master Ballot properly, take the following steps:**

(a) Provide appropriate information for each of the items on the Master Ballot. Vote to accept (vote for) or reject (vote against) the Plan in Item 2 for the Notes held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners. Please provide information for each individual Beneficial Owner for whom you are voting Notes. If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to each Beneficial Owner or, if no such customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b) Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner in each completed Beneficial Owner Ballot relating to other Class C securities voted.

(c) Read Item 4 carefully.

(d) Sign and date your Master Ballot.

(e) Provide your name and mailing address.

<div align="right">

**CLASS C GENERAL UNSECURED CLAIMS**
**7 1/8% NOTES DUE 2029,**
**DATED APRIL 28, 1999**

</div>

(f)  Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.


**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.

---

**Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

---

**CLASS C GENERAL UNSECURED CLAIMS**
**7 1/8% NOTES DUE 2029,**
**DATED APRIL 28, 1999**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
    In re                              :    Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :    Case No. 05-44481 (RDD)
                                                            :
            Debtors.        :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C TOPrS Claims -- 8 1/4% Adjustable Rate Junior Subordinated Note, Due 2033)

     On October 3December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization Plan Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the  8 1/4% Adjustable Rate Junior Subordinated Notes, Due 2033 (the "TOPrS"), Class C TOPrS Claims under the Plan, for their use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement, which accompanies this Ballot.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On November 9, 2007January 11, 2008**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote To Be Processed
By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claims have been placed in Class C under the Plan.  If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.**

**Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on November 9, 2007January 11, 2008_ or your ballot will _not_ be counted.  If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at [phone number].(866) 486-1727.  If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote.  Do not return any TOPrS with this Ballot.  This Ballot is not a letter of transmittal and may _not_ be used for any purpose other than to cast votes to**

---

**You must vote all of the TOPrS and any other Class C securities you may hold to accept or reject the Plan.  You may not split your vote.  If you are submitting a vote with respect to any Class C securities that you own, you must vote all of your Class C securities in the same way (i.e., all "Accepts" or all "Rejects").  ~~An~~ If you are an authorized signatory of an eligible Beneficial Owner you may execute this Ballot, but you must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating ~~such signatory's~~ your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your TOPrS or other Class C securities through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee").  You should vote each Ballot that you receive for all of the TOPrS or other Class C securities that you beneficially own.

You must provide all of the information requested by this Ballot.  Failure to do so may result in the disqualification of your vote.

**Item 1. Amount Of TOPrS.**   The undersigned hereby certifies that as of ~~September 28~~ November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of TOPrS in the following amount  (insert amount in box below).  **(If your TOPrS are held by a Nominee on your behalf and you do not know the amount of TOPrS held, please contact your Nominee immediately.)**

| |
|---|
| |

**Item 2.  Vote On Plan. (Please check one.)**

The undersigned:   ☐       ACCEPTS (votes FOR) the Plan.

☐       REJECTS (votes AGAINST) the Plan.

**Item 3.  Certification As To TOPrS And Other Class C Securities Held In Additional Accounts.**  By completing and returning this Ballot, the Beneficial Owner certifies that either (a) it has not submitted any other Ballots for TOPrS or other Class C securities held in other accounts or other record names or (b) it has provided the information specified in the following table for all other TOPrS and other Class C securities for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

**Complete This Table Only If You Have Voted Class C
Securities Ballots Other Than This Ballot**

| Name Of Holder[1] | Account Number (If Applicable) | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted[2] |
|---|---|---|---|
| 1._____ | _____ | _____ | _____ |
| 2._____ | _____ | _____ | _____ |
| 3._____ | _____ | _____ | _____ |

---

[1] Insert your name if the Class C securities are held by you in record name or, if held in street name, insert name of Nominee.
[2] Insert name or cusip number of other Class C securities.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**Item 4.  Authorization.**  By returning this Ballot, the Beneficial Owner hereby certifies that (a) it was on September 28November 26, 2007 (a) it was the registered or record holder and the Beneficial Owner of the TOPrS to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was on September 28, 2007 the Beneficial Owner of the TOPrS, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was on September 28, 2007 the Beneficial Owner of the TOPrS, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the TOPrS to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent.  The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____

(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____

(Optional)

Signature:_____

Name Of
Signatory:_____

(If Other Than Holder)

Tile:_____

Title:_____

Address:_____

Date Signed :_____

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does** *not* **constitute and** *will not* **be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is** *not* **a letter of transmittal and may** *not* **be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender, at this time, certificates representing their TOPrS, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.  Surrender of TOPrS for exchange may only be made by you or your Nominee pursuant to a letter of transmittal, which will be furnished by the Debtors following confirmation of the Plan.

**Do not submit TOPrS with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballots completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017,  Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.** Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the amount of your TOPrS, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Provide the information required by Item 3, if applicable to you.

(d)  Read Item 4 carefully.

(e)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(f)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with the person or entity and the capacity in which you are signing in the signature block on the Ballot.

(h)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(i)  Return your Ballot using the enclosed return envelope.

**<u>Please Mail Your Ballot Promptly!</u>**

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~
at (866) 486-1727.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C TOPrS Claim — 8 1/4% Adjustable Rate Junior Subordinated Note, Due 2033)

---

**The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~ January 11, 2008.
For the votes of your Beneficial Owners to be counted, your Master Ballot
must be *received* by the Securities Voting Agent before the Voting Deadline.**

---

On ~~October 3~~ December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee or beneficial owner—for  beneficial owners (the "Beneficial Owners") of the 8 1/4% Adjustable Rate Junior Subordinated Notes, Due 2033 (the "TOPrS") of Delphi Corporation, Class C TOPrS Claims under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Master Ballot.  Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold TOPrS, and take any action required to enable the Beneficial Owner to timely vote its TOPrS to accept or reject the Plan.  With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the TOPrS and (2) forward the Master Ballots to the Securities Voting Agent.  If you are both the registered or record holder and Beneficial Owner of any TOPrS and you wish to vote the TOPrS, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully.  Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~ January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation.  If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**Item 1.  Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐        Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of TOPrS listed in Item 2 below, and is the registered or record holder of the securities, or

☐        Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of TOPrS listed in Item 2 below, or

☐        Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of TOPrS listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the TOPrS described in Item 2.

**Item 2.  Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class C TOPrS Claim—8 1/4% Adjustable Rate Junior Subordinated Note, Due 2033, and certifies that the following Beneficial Owners of the Class C TOPrS, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting such votes.  Indicate, in the appropriate column, the aggregate amount voted for each account, or attach such information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its TOPrS to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of TOPrS | Amount Of TOPrS[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| **TOTALS:** | | |

---

[1]        To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS C TOPrS CLAIMS**
**ADJUSTABLE RATE JUNIOR**
**SUBORDINATED NOTE, DUE 2033**

Please note that each Beneficial Owner of TOPrS who votes must vote all the TOPrS owned by such Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of TOPrS owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted By Beneficial Owners.**  The undersigned certifies that it has transcribed below the information, if any, provided in Item 3 of each Beneficial Owner Ballot received from a Beneficial Owner:

| Your Customer Name Or Account Number For Each Beneficial Owner | TRANSCRIBE FROM ITEM 3 OF BENEFICIAL OWNER BALLOT | | | |
| --- | --- | --- | --- | --- |
| | Name Of Holder | Account Number | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

**CLASS C TOPrS CLAIMS**
**ADJUSTABLE RATE JUNIOR**
**SUBORDINATED NOTE, DUE 2033**

**Item 4.** By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement. The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number:_____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Tile:_____~~

Title:_____

Address:_____

_____

_____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~ January 11, 2008.  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

<div align="right">

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

</div>

## INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

**1.  If you are both the registered or record holder and Beneficial Owner of *any* TOPrS and you wish to vote such TOPrS,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

**2.  If you are transmitting the votes of any Beneficial Owners of TOPrS other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold TOPrS, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package") and take any action required to enable each Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(ii) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the TOPrS voted, the amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the TOPrS for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold TOPrS and (z) forward the Master Ballots to the Securities Voting Agent.

**3.  To complete the Master Ballot properly, take the following steps:**

(a)  Provide appropriate information for each of the items on the Master Ballot.  Vote to accept (vote for) or reject (vote against) the Plan in Item 2 for the TOPrS held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners.  Please provide information for each individual Beneficial Owner for whom you are voting TOPrS.  If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to each Beneficial Owner or, if no customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b)  Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner in each completed Beneficial Owner Ballot relating to other Class C securities voted.

(c)  Read Item 4 carefully.

(d)  Sign and date your Master Ballot.

(e)  Provide your name and mailing address.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

(f) Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.

**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.

---

**Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

---

**CLASS C TOPrS CLAIMS**
**ADJUSTABLE RATE JUNIOR**
**SUBORDINATED NOTE, DUE 2033**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C TOPrS Claims -- ~~Adjustable Rate~~6.197% Junior Subordinated Note, Due 2033)

On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the ~~Adjustable Rate~~6.197% Junior Subordinated Notes, Due 2033 (the "TOPrS"), Class C TOPrS Claims under the Plan, for their use in voting to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement, which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote To Be Processed
By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claims have been placed in Class C under the Plan. If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.

Please read carefully and follow the attached instructions on returning your Ballot. The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008_ or your ballot will _not_ be counted. If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at ~~[phone number]~~(866) 486-1727. If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote. Do not return any TOPrS with this Ballot. This Ballot is not a letter of transmittal and may _not_ be used for any purpose other than to cast votes to

---

CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033

**You must vote all of the TOPrS and any other Class C securities you may hold to accept or reject the Plan. You may not split your vote. If you are submitting a vote with respect to any Class C securities that you own, you must vote all of your Class C securities in the same way (i.e., all "Accepts" or all "Rejects"). An If you are an authorized signatory of an eligible Beneficial Owner you may execute this Ballot, but you must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating such signatory's your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your TOPrS or other Class C securities through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee"). You should vote each Ballot that you receive for all of the TOPrS or other Class C securities that you beneficially own.

You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**Item 1.   Amount Of TOPrS.**   The undersigned hereby certifies that as of September 28 November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of TOPrS in the following amount  (insert amount in box below).  **(If your TOPrS are held by a Nominee on your behalf and you do not know the amount of TOPrS held, please contact your Nominee immediately.)**

|  |
|---|

**Item 2.  Vote On Plan. (Please check one.)**

The undersigned:   ☐       <u>ACCEPTS</u> (votes FOR) the Plan.

☐       <u>REJECTS</u> (votes AGAINST) the Plan.

**Item 3.  Certification As To TOPrS And Other Class C Securities Held In Additional Accounts.**  By completing and returning this Ballot, the Beneficial Owner certifies that either (a) it has not submitted any other Ballots for TOPrS or other Class C securities held in other accounts or other record names or (b) it has provided the information specified in the following table for all other TOPrS and other Class C securities for which it has submitted additional Ballots, each of which indicates the same vote to accept or reject the Plan (please use additional sheets of paper if necessary):

<div align="center">

**Complete This Table Only If You Have Voted Class C
Securities Ballots Other Than This Ballot**

</div>

| Name Of Holder[1] | Account Number (If Applicable) | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted[2] |
|---|---|---|---|
| 1._____ | _____ | _____ | _____ |
| 2._____ | _____ | _____ | _____ |
| 3._____ | _____ | _____ | _____ |

---

[1] Insert your name if the Class C securities are held by you in record name or, if held in street name, insert name of Nominee.
[2] Insert name or cusip number of other Class C securities.

<div align="right">

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

</div>

**Item 4. Authorization.** By returning this Ballot, the Beneficial Owner hereby certifies that (a) it was on September 28November 26, 2007 (a) it was the registered or record holder and the Beneficial Owner of the TOPrS to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was on September 28, 2007 the Beneficial Owner of the TOPrS, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was on September 28, 2007 the Beneficial Owner of the TOPrS, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the TOPrS to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent. The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

Name Of
Signatory:_____
(If Other Than Holder)

Tile:_____

Title:_____

Address:_____

Date Signed :_____

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

## INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does** *not* **constitute and** *will not* **be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is** *not* **a letter of transmittal and may** *not* **be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender, at this time, certificates representing their TOPrS, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.  Surrender of TOPrS for exchange may only be made by you or your Nominee pursuant to a letter of transmittal, which will be furnished by the Debtors following confirmation of the Plan.

**Do not submit TOPrS with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballots completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017,  Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the amount of your TOPrS, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Provide the information required by Item 3, if applicable to you.

(d)  Read Item 4 carefully.

(e)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(f)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(g)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with the person or entity and the capacity in which you are signing in the signature block of the Ballot.

(h)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(i)  Return your Ballot using the enclosed return envelope.

## <u>Please Mail Your Ballot Promptly!</u>

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~
at (866) 486-1727.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                               :     Chapter 11
:
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
:
           Debtors.     :     (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class C TOPrS Claim — ~~Adjustable Rate~~ 6.197% Junior Subordinated Note, Due 2033)

---

**The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008.
For the votes of your Beneficial Owners to be counted, your Master Ballot
must be *received* by the Securities Voting Agent before the Voting Deadline.**

---

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"; or as the proxy holder of a Nominee or beneficial owner—for  beneficial owners (the "Beneficial Owners") of the ~~Adjustable Rate~~6.197% Junior Subordinated Notes, Due 2033 (the "TOPrS") of Delphi Corporation, Class C TOPrS Claims under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Master Ballot.  Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold TOPrS, and take any action required to enable the Beneficial Owner to timely vote its TOPrS to accept or reject the Plan.  With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the TOPrS and (2) forward the Master Ballots to the Securities Voting Agent.  If you are both the registered or record holder and Beneficial Owner of any TOPrS and you wish to vote the TOPrS, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully.  Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation.  If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**Item 1.  Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐  Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of TOPrS listed in Item 2 below, and is the registered or record holder of the securities, or

☐  Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of TOPrS listed in Item 2 below, or

☐  Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of TOPrS listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the TOPrS described in Item 2.

**Item 2.  Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class C TOPrS Claim ~~Adjustable Rate~~6.197% Junior Subordinated Note, Due 2033, and certifies that the following Beneficial Owners of the Class C TOPrS, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting such votes.  Indicate, in the appropriate column, the aggregate amount voted for each account, or attach such information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its TOPrS to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of TOPrS | Amount Of TOPrS[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| **TOTALS:** | | |

---

[1]    To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

Please note that each Beneficial Owner of TOPrS who votes must vote all the TOPrS owned by such Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of TOPrS owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.  Additional Ballots Submitted By Beneficial Owners.**  The undersigned certifies that it has transcribed below the information, if any, provided in Item 3 of each Beneficial Owner Ballot received from a Beneficial Owner:

| Your Customer Name Or Account Number For Each Beneficial Owner | TRANSCRIBE FROM ITEM 3 OF BENEFICIAL OWNER BALLOT | | | |
| --- | --- | --- | --- | --- |
| | Name Of Holder | Account Number | Amount Of Other Class C Securities Voted | Type Of Other Class C Securities Voted |
| 1. | | | | |
| 2. | | | | |
| 3. | | | | |
| 4. | | | | |
| 5. | | | | |
| 6. | | | | |
| 7. | | | | |
| 8. | | | | |
| 9. | | | | |
| 10. | | | | |

CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033

**Item 4.** By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number:_____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Tile:_____~~

Title:_____

Address:_____

_____

_____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~January 11, 2008.  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~ January 11, 2008 (the "Voting Deadline").  **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

**1. If you are both the registered or record holder and Beneficial Owner of** *any* **TOPrS and you wish to vote such TOPrS,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

**2. If you are transmitting the votes of any Beneficial Owners of TOPrS other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold TOPrS, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package") and take any action required to enable each Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(ii) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the TOPrS voted, the amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the TOPrS for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold TOPrS and (z) forward the Master Ballots to the Securities Voting Agent.

**3. To complete the Master Ballot properly, take the following steps:**

(a)  Provide appropriate information for each of the items on the Master Ballot.  Vote to accept (vote for) or reject (vote against) the Plan in Item 2 for the TOPrS held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners.  Please provide information for each individual Beneficial Owner for whom you are voting TOPrS.  If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to each Beneficial Owner or, if no customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b)  Please note that Item 3 of this Master Ballot requests that you transcribe the information provided by each Beneficial Owner in each completed Beneficial Owner Ballot relating to other Class C securities voted.

(c)  Read Item 4 carefully.

(d)  Sign and date your Master Ballot.

(e)  Provide your name and mailing address.

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

(f)  Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.

**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any other purpose than to cast votes to accept or reject the Plan.

---

**Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

---

**CLASS C TOPrS CLAIMS
ADJUSTABLE RATE JUNIOR
SUBORDINATED NOTE, DUE 2033**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class D General Motors Corporation Claims)

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan Of~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This ballot (the "Ballot") is being sent to ~~holders~~General Motors Corporation as the holder of the Class D General Motors Corporation Claims for ~~their~~its use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan with counsel before you vote.  ~~You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claims have been placed in Class D under the Plan~~

Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be *received* by the voting agent is *7:00 p.m. (prevailing Eastern time) on* ~~November 9, 2007~~*January 11, 2008* or your ballot will *not* be counted.  If you have any questions please call Kurtzman Carson Consultants LLC (the "Creditor Voting Agent") at ~~[          ]~~. **(888) 249-2691.**

---

**The Creditor Voting Agent Will Not Accept Ballots By Electronic Or Facsimile Transmission**

**CLASS D GENERAL MOTORS CORPORATION CLAIMS**

**Item 1.** **Vote On Plan. (Please check one.)**  The undersigned, on behalf of the holder of a Class D General Motors Corporation Claim against the Debtors in the unpaid amount of $_____,

☐    ACCEPTS (votes FOR) the Plan.          ☐    REJECTS (votes AGAINST) the Plan.

**Item 2.** **Certification.**  By signing this Ballot, the undersigned certifies that: (a) on ~~September 28~~ November 26, 2007 ~~it~~ General Motors Corporation was the sole holder of a Class D General Motors Corporation Claim to which this Ballot pertains (or an authorized signatory therefor), (b) he/she/it has full power and authority to vote on behalf of General Motors Corporation to accept or reject the Plan, (c) ~~it~~ General Motors Corporation has received a copy of the Disclosure Statement (including the appendices and exhibits thereto), (d) ~~it~~ General Motors Corporation understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement, and (e) either General Motors Corporation (i) ~~it~~ has not submitted any other Ballots for the Class D General Motors Corporation Claim~~s~~ or (ii) ~~it~~ has provided the information specified in the following table for all other Class D General Motors Corporation Claims for which it has submitted additional Ballots (please use additional sheets of paper if necessary):

**Complete This Table Only If You Have Voted Class D General Motors
Corporation Claim Ballots Other Than This Ballot**

| Name Of Holder | Account Number (If Applicable) | Amount Of Claim |
|---|---|---|
| 1._____ | _____ | $_____ |
| 2._____ | _____ | $_____ |
| 3._____ | _____ | $_____ |

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

Name Of Signatory:_____
(If Other Than Voter)

~~Tile:_____~~

Title:_____

Address:_____

Date Signed:_____

**CLASS D GENERAL MOTORS CORPORATION CLAIMS**
2

### INSTRUCTIONS FOR COMPLETING THE BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders creditors, shareholders, and certain other creditors and interest holders on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

You may not split your vote.  You must vote the entire claim that you hold to accept or to reject the Plan.  You will be deemed to have voted the full amount of your claim in your vote.  **A Ballot that partially rejects and partially accept the Plan will not be counted.**  You must vote all your claims within a single class to either accept or reject that Plan.

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots must be received by the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on November 9, 2007 January 11, 2008 (the "Voting Deadline").  **If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Creditor Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Creditor Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Read Item 2 carefully.

(d)  Sign and date your Ballot.

(e)  If you believe that you have received the wrong Ballot, please immediately contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, at [phone number](888) 249-2691.

(f)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing in the signature block of the Ballot.

(g)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h)  Return your Ballot using the enclosed return envelope.

## Please Mail Your Ballot Promptly!

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, promptly
at [phone number](888) 249-2691 or Kurtzman Carson Consultants LLC,
2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation

**CLASS D GENERAL MOTORS CORPORATION CLAIMS**

3

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
    In re                           :    Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                        :
          Debtors.    :    (Jointly Administered)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class E Section 510(b) Note Claims)

On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Of~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. ~~This~~Pursuant to the terms of the Order Preliminarily Approving Multidistrict Litigation and Insurance Settlement  entered on October 29, 2007 (Docket No. 10746) (the "Preliminary MDL Settlement Approval Order"), this ballot (the "Ballot") is being sent to the Lead Plaintiffs (as defined in the Preliminary MDL Settlement Approval Order) representing the holders of Class E Section 510(b) Note Claims for their use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote.  ~~You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.~~  Your claims have been placed in Class E under the Plan.  ~~If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.~~

Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be *received* by the voting agent is *7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008* or your ballot will *not* be counted.  If you have any questions please call Kurtzman Carson Consultants LLC (the "Creditor Voting Agent") at ~~[          ]~~(888) 249-2691.

---

**The Creditor Voting Agent Will Not Accept Ballots By Electronic Or Facsimile Transmission**

**CLASS E SECTION 510(b) NOTE CLAIMS**

~~You may receive multiple mailings containing Ballots.  You should vote each Ballot that you receive for all of the claims that you hold.~~

**Item 1.** **Vote On Plan. (Please check one.)**  The undersigned, the ~~holder~~representative of holders of ~~a~~ Class E Section 510(b) Note ~~Claim~~Claims against the Debtors in the unpaid amount of $_____,

☐     ACCEPTS (votes FOR) the Plan.          ☐     REJECTS (votes AGAINST) the Plan.

**Item 2.** **Certification.**  By signing this Ballot, the undersigned hereby certifies that: ~~(a) on September 28, 2007~~ it ~~was~~ is the ~~holder of a Class E Section 510(b) Note Claim~~ party authorized to ~~which~~submit this Ballot ~~pertains (or an authorized signatory therefor), (b) it has full power and authority to vote to accept or reject~~in accordance with the Plan~~, (c) it has received a copy of the Disclosure Statement (including the appendices and exhibits thereto), (d) it understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement, and (e) either (i) it has not submitted any other Ballots for Class E Section 510(b) Note Claims or (ii) it has provided the information specified in the following table for all other Class E Section 510(b) Note Claims for which it has submitted additional Ballots (please use additional sheets of paper if necessary)~~Preliminary MDL Settlement Approval Order:

~~Complete This Table Only If You Have Voted Class E Section 510(b) Note Claim Ballots Other Than This Ballot~~

| ~~Name Of Holder~~ | ~~Account Number (If Applicable)~~ | ~~Amount Of Claim~~ |
|---|---|---|
| ~~1.~~ | | ~~$~~ |
| ~~2.~~ | | ~~$~~ |
| ~~3.~~ | | ~~$~~ |

Name Of Voter:_____
(Print Or Type)

~~Social Security Or Federal Tax I.D. No.:_____~~
~~(Optional)~~

Signature:_____

Name Of Signatory:_____
(If Other Than Voter)

~~Tile:~~_____

Title:_____

Address:_____

Date Signed:_____

If your address or contact information has changed, please note the new information here:

**CLASS E SECTION 510(b) NOTE CLAIMS**

2

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot. Please review the Disclosure Statement and Plan carefully before you vote. Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim. This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

If your claim against the Debtors has been paid, do not return this Ballot or vote on the paid claim.

~~You may not split your vote. You must vote the entire claim that you hold to accept or to reject the Plan. You will be deemed to have voted the full amount of your claim in your vote. **A Ballot that partially rejects and partially accept the Plan will not be counted.** You must vote all your claims within a single class to either accept or reject that Plan.~~

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope. **Unsigned Ballots will not be counted.** Ballots must be received by the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"). **If a Ballot is received after the Voting Deadline, it will not be counted.** Except as otherwise provided herein, delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Creditor Voting Agent. In all cases, sufficient time should be allowed to assure timely delivery. **Delivery of a Ballot to the Creditor Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.** No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a) Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot.

(b) Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1. Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted. A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c) Read Item 2 carefully.

(d) Sign and date your Ballot.

(e) If you believe that you have received the wrong Ballot, please immediately contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, at ~~[phone number]~~(888) 249-2691.

(f) If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing in the signature block on the Ballot.

(g) Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h) Return your Ballot using the enclosed return envelope.

## Please Mail Your Ballot Promptly!

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, promptly
at ~~[phone number]~~(888) 249-2691 or Kurtzman Carson Consultants LLC,
2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation

**CLASS E SECTION 510(b) NOTE CLAIMS**

3

CLASS E SECTION 510(b) NOTE CLAIMS

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                                     :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                      Debtors.            :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/ENTITLEMENT HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class G-1 Existing Common Stock)

On ~~October 3~~December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan Of~~ Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the existing common stock of Delphi Corporation (the "Existing Common Stock"), Class G-1 under the Plan, for their use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

**If Your Return Envelope Is Addressed To Your Nominee, Please Allow Additional Time For Your Vote To Be Processed
By The Nominee And Voted On A Master Ballot Before The Voting Deadline**

| IMPORTANT |
| --- |
| **You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claims have been placed in Class G-1 under the Plan.  If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.**<br><br>**Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008_ or your ballot will _not_ be counted.  If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at ~~[phone number]~~(866) 486-1727.  If you received a return envelope addressed to your Nominee, please allow sufficient time for your Nominee to process your vote.  Do not return any Existing Common Stock with this Ballot.  This Ballot is not a letter of transmittal and may _not_ be used for any purpose other than to cast votes to accept or reject the Plan.** |

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION**

**You must vote all of the Existing Common Stock you hold to accept or reject the Plan. You may not split your vote. If you are submitting a vote with respect to any Existing Common Stock that you own, you must vote all of your Existing Common Stock in the same way (i.e., all "Accepts" or all "Rejects"). An If you are an authorized signatory of an eligible Beneficial Owner, then you may execute this Ballot, but you must provide the name and address of the Beneficial Owner on this Ballot and you may be required to submit evidence to the Bankruptcy Court demonstrating the signatory's your authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your Existing Common Stock through more than one bank, broker, other intermediary, or agent thereof (each, a "Nominee"). You should vote each Ballot that you receive for all of the Existing Common Stock that you beneficially own.

You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**Item 1. Number of Shares Of Existing Common Stock.** The undersigned hereby certifies that as of September 28 November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner), or the Nominee of a Beneficial Owner, of Existing Common Stock in the following amount (insert amount in box below). **(If your Existing Common Stock is held by a Nominee on your behalf and you do not know the number of shares held, please contact your Nominee immediately.)**

```
┌─────────────────────────────────┐
│                                 │
└─────────────────────────────────┘
```

**Item 2. Vote On Plan. (Please check one.)**

The undersigned:    ☐    <u>ACCEPTS</u> (votes FOR) the Plan.

☐    <u>REJECTS</u> (votes AGAINST) the Plan.

**Item 3. Authorization.** By returning this Ballot, the Beneficial Owner hereby certifies that (a) it was on September 28 November 26, 2007 (a) it was the registered or record holder and the Beneficial Owner of the Existing Common Stock to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent, (b) if the Ballot was prevalidated by the Nominee holder, it was the Beneficial Owner of the Existing Common Stock, but not the registered or record holder to which this prevalidated Ballot pertains and is sending this prevalidated Ballot directly to the Securities Voting Agent, or (c) it was on September 28, 2007 the Beneficial Owner of the Existing Common Stock, but not the registered or record holder, to which this Ballot pertains and is sending this Ballot to the registered or record holder of, or other Nominee of the undersigned with respect to, the Existing Common Stock to which this Ballot pertains, whom the undersigned hereby authorizes and instructs to (i) execute a Master Ballot reflecting this Ballot and (ii) deliver the Master Ballot to the Securities Voting Agent. The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____

(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____

(Optional)

Signature:_____

Name Of Signatory:_____

(If Other Than Holder)

Tile:_____

Title:_____

Address:_____

Date Signed :_____

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION**

## INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of interest or (b) an admission by the Debtors of the nature, validity, or amount of any interest.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender certificates representing their Existing Common Stock, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.

**Do not submit Existing Common Stock with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots (or the Master Ballot completed on your behalf by your Nominee) must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017,  Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **If you received a return envelope addressed to your Nominee, be sure to return your Ballot early enough for your vote to be processed and then forwarded and received by the Securities Voting Agent by the Voting Deadline.  If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the number of shares of your Existing Common Stock, please contact your Nominee immediately.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Read Item 3 carefully.

(d)  Sign and date your Ballot (unless your Ballot has already been signed or "prevalidated" by your Nominee).

(e)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at ~~[phone number]~~(866) 486-1727, or your broker or Nominee.

(f)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing in the signature block of the Ballot.

(g)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h)  Return your Ballot using the enclosed return envelope.

## Please Mail Your Ballot Promptly!

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent, Financial Balloting Group, promptly
~~at [phone number].~~
at (866) 486-1727.

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
In re                               :        Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :        Case No. 05-44481 (RDD)
                                    :
            Debtors.                :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASTER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class G-1 Existing Common Stock)

---

**The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008.
For the votes of your Beneficial Owners to be counted, your Master Ballot
must be *received* by the Securities Voting Agent before the Voting Deadline.**

---

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan.  This master ballot (the "Master Ballot") is to be used by you—as a bank, broker, or other nominee; or as the agent of a bank, broker, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee or beneficial owner—for beneficial owners (the "Beneficial Owners") of the common stock of Delphi Corporation (the "Existing Common Stock"), Class G-1 Existing Common Stock under the Plan, to transmit to the Securities Voting Agent the votes of the Beneficial Owners to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement, which accompanies this Master Ballot.  Before you transmit the votes of your Beneficial Owners, please review the Disclosure Statement carefully, particularly the voting procedures described in Section XVI—Voting Requirements.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).

You are required to deliver Beneficial Owner ballots (each a "Beneficial Owner Ballot") to each Beneficial Owner for whom you hold Existing Common Stock, and take any action required to enable the Beneficial Owner to timely vote its Existing Common Stock to accept or reject the Plan.  With regard to any Beneficial Owner Ballots returned to you, you must (1) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold the Existing Common Stock and (2) forward the Master Ballots to the Securities Voting Agent.  If you are both the registered or record holder and Beneficial Owner of any Existing Common Stock and you wish to vote the Existing Common Stock, you may return a Beneficial Owner Ballot or a Master Ballot.

**Please read and follow the attached instructions carefully.  Complete, sign, and date this Master Ballot and return it so that it is received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"), by Financial Balloting Group (the "Securities Voting Agent"), 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation.  If this Master Ballot is not completed, signed, and timely received by the Voting Deadline, the votes transmitted hereby will *not* be counted.**

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION**

**Item 1.** **Certification Of Authority To Vote.**  The undersigned certifies that as of the ~~September 28~~November 26, 2007 voting record date, the undersigned (please check applicable box):

☐    Was a bank, broker, or other nominee for the Beneficial Owners of the aggregate amount of Existing Common Stock listed in Item 2 below, and is the registered or record holder of the securities, or

☐    Was acting under a power of attorney and agency (a copy of which will be provided upon request) granted by a bank, broker, or other nominee that is the registered or record holder of the aggregate amount of Existing Common Stock listed in Item 2 below, or

☐    Had been granted a proxy (an original of which is annexed hereto) from a bank, broker, or other nominee, or a Beneficial Owner, that is the registered or record holder of the aggregate amount of Existing Common Stock listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Owners of the Existing Common Stock described in Item 2.

**Item 2.** **Vote.**  The undersigned transmits the following votes of Beneficial Owners in respect of their Class G-1 Existing Common Stock, and certifies that the following Beneficial Owners of the Class G-1 Existing Common Stock, as identified by their respective customer account numbers set forth below, are Beneficial Owners of those securities as of the ~~September 28~~November 26, 2007 record date and have delivered to the undersigned, as Nominee, Ballots casting those votes.  Indicate, in the appropriate column, the aggregate number of shares voted for each account, or attach the information to this Master Ballot, in the form of the following table.  Please note that each Beneficial Owner must vote all of his, her, or its Class G-1 Existing Common Stock to accept or reject the Plan and may not split the vote.  In addition, this Master Ballot must be received by Financial Balloting Group, the Securities Voting Agent, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 or the votes listed below will not be counted:

| Customer Name Or Account Number For Each Beneficial Owner Of Class G-1 Existing Common Stock | Number Of Shares Of Existing Common Stock[1] | |
|---|---|---|
| | **To Accept (Vote For) The Plan** | **To Reject (Vote Against) The Plan** |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| **TOTALS:** | | |

Please note that each Beneficial Owner of Existing Common Stock who votes must vote all the Existing Common Stock owned by the Beneficial Owner.  For purposes of tabulating the vote, each Beneficial Owner who votes should be deemed to have voted the full amount of Existing

---

[1]    To vote on the Plan, the Beneficial Owner must have checked a box in Item 2 to ACCEPT or REJECT the Plan on the Beneficial Owner Ballot.  Accordingly, if the Beneficial Owner did not check a box in Item 2 on the Beneficial Owner Ballot, do not enter any vote in this column.

**CLASS G-1 EXISTING COMMON STOCK**
**OF DELPHI CORPORATION**

2

Common Stock owned by the Beneficial Owner according to your records.  A Beneficial Owner may not split the vote and, accordingly, a Beneficial Owner Ballot received from a Beneficial Owner that partially accepts and partially rejects the Plan may not be counted.

**Item 3.**  By signing this Master Ballot, the undersigned certifies that each Beneficial Owner of Notes whose votes are being transmitted by this Master Ballot has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.  The undersigned also acknowledges that the solicitation of votes to accept or reject the Plan is subject to all the terms and conditions set forth in the Disclosure Statement.

Name Of Bank, Broker, Or Other Nominee:

_____
(Print Or Type)

Participant Number:_____

Name Of Proxy Holder Or Agent For Bank,
Broker, Or Other Nominee (if applicable):

_____
(Print Or Type)

Name Of Voter:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

~~Title:~~_____

Title:_____

Address:_____

_____

_____

Phone Number:_____

Date Completed:_____

---

**VOTING DEADLINE**

The Voting Deadline is 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~ January 11, 2008.  For the votes of your Beneficial Owners to be counted, your Master Ballot must be *received* by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, before the Voting Deadline or your customers' votes will not be counted.

---

**ADDITIONAL INFORMATION**

If you have any questions regarding this Master Ballot or the voting procedures, or if you need additional copies of the Master Ballot, the Beneficial Owner Ballot, or the other enclosed materials, please call the Securities Voting Agent, Financial Balloting Group, at (646) 282-1800.

---

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION**

3

**INSTRUCTIONS FOR COMPLETING THE MASTER BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Master Ballot.  Please review the Disclosure Statement and Plan carefully before you return this Master Ballot.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**VOTING DEADLINE:**

To have the votes of your customers count, you must complete, sign, and return this Master Ballot so that it is RECEIVED by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue—3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline").  **Unsigned Master Ballots will not be counted.**

**HOW TO VOTE:**

**1.  If you are both the registered or record holder and Beneficial Owner of** *any* **Existing Common Stock and you wish to vote the Existing Common Stock,** you may complete, execute, and return to the Securities Voting Agent a Beneficial Owner Ballot or a Master Ballot.

**2.  If you are transmitting the votes of any Beneficial Owners of Existing Common Stock other than yourself, you may either:**

(a) deliver the Beneficial Owner Ballot to each Beneficial Owner for whom you hold Existing Common Stock, along with the Disclosure Statement and other materials requested to be forwarded (collectively, the "Solicitation Package") and take any action required to enable the Beneficial Owner to (i) complete and execute that Ballot voting to accept or reject the Plan and (ii) return the completed, executed Ballot to you in sufficient time to enable you to complete the Master Ballot and deliver it to the Securities Voting Agent before the Voting Deadline;

*OR*

(b) prevalidate the Beneficial Owner Ballot contained in the Solicitation Package (by signing that Ballot and by indicating on that Ballot the record holder of the Existing Common Stock voted, the principal amount, and the appropriate account numbers through which the Beneficial Owner's holdings are derived) and then forward the Solicitation Package to the Beneficial Owner of the Existing Common Stock for voting so that the Beneficial Owner may return the completed Ballot directly to the Securities Voting Agent in the return envelope provided in the Solicitation Package.

**The Solicitation Package Must Not Be Forwarded To Any Person Or Entity Other Than The Beneficial Owners Or Their Intermediaries**

With regard to any Beneficial Owner Ballots returned to you, you must (y) execute the Master Ballot so as to reflect the voting instructions given to you in the Beneficial Owner Ballots by the Beneficial Owners for whom you hold Existing Common Stock and (z) forward the Master Ballots to the Securities Voting Agent.

**3.  To complete the Master Ballot properly, take the following steps:**

(a)  Provide appropriate information for each of the items on the Master Ballot.  Vote to accept (vote for) or reject (vote against) the Plan in Item 3 for the Existing Common Stock held by you as the Nominee or proxy holder on behalf of the Nominee or the Beneficial Owners.  Please provide information for each individual Beneficial Owner for whom you are voting Existing Common Stock.  If you are unable to disclose the identity of the Beneficial Owners, please use the customer account number assigned by you to the Beneficial Owner or, if no such customer account number exists, please use the sequential numbers provided (making sure to retain a separate list of each Beneficial Owner and its, his, or her assigned sequential number).

(b)  Read Item 3 carefully.

(c)  Sign and date your Master Ballot.

(d)  Provide your name and mailing address.

(e)  Deliver your Master Ballot to the Securities Voting Agent before the Voting Deadline.

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION**

4

**PLEASE NOTE:**

No Ballot or Master Ballot constitutes or will be deemed to constitute (a) a proof of claim or equity interest or (b) an admission by the Debtors of the nature, validity, or amount of any claim or equity interest.

This Master Ballot is not a letter of transmittal and may not be used for any other purpose than to cast votes to accept or reject the Plan.

**Nothing contained herein or in the enclosed documents constitutes you or any other person an agent of the Debtors or the Securities Voting Agent, or authorizes you or any other person to use any document or make any statements on behalf of any of them with respect to the Plan, except for the statements contained in the documents enclosed herewith.**

**CLASS G-1 EXISTING COMMON STOCK OF DELPHI CORPORATION**

No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENEFICIAL OWNER/REGISTERED HOLDER BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class G-1 Existing Common Stock)

On December __, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorized the Debtors to solicit votes on the Plan. This ballot (the "Ballot") is being sent to beneficial owners (the "Beneficial Owners") (which, for purposes of completing this Ballot, also includes entitlement holders under Article 8 of the Uniform Commercial Code) of the existing common stock of Delphi Corporation (the "Existing Common Stock"), Class G-1 under the Plan, for their use in voting to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided
So That It Is Received By
The Voting Deadline Of 7:00 P.M. (Prevailing Eastern Time) On January 11, 2008**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Your claims have been placed in Class G-1 under the Plan. If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.

Please read carefully and follow the attached instructions on returning your Ballot. The voting deadline by which your vote must be _received_ by the voting agent is _7:00 p.m. (prevailing Eastern time) on January 11, 2008_ or your ballot will _not_ be counted. If you have any questions please call Financial Balloting Group (the "Securities Voting Agent") at (866) 486-1727. Do not return any Existing Common Stock with this Ballot. This Ballot is not a letter of transmittal and may _not_ be used for any purpose other than to cast votes to accept or reject the Plan.

---

CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION
REGISTERED HOLDER

[REGI CODE]

**You must vote all of the Existing Common Stock you hold to accept or reject the Plan. You may not split your vote. If you are submitting a vote with respect to any Existing Common Stock that you own, you must vote all of your Existing Common Stock in the same way (i.e., all "Accepts" or all "Rejects"). An authorized signatory of an eligible Beneficial Owner may execute this Ballot, but must provide the name and address of the Beneficial Owner on this Ballot and may be required to submit evidence to the Bankruptcy Court demonstrating the signatory's authorization to vote on behalf of the Beneficial Owner. Authorized signatories voting on behalf of more than one Beneficial Owner must complete a separate Ballot for each Beneficial Owner.**

You may receive multiple mailings containing Ballots, especially if you own your Existing Common Stock through more than one account. You should vote each Ballot that you receive for all of the Existing Common Stock that you beneficially own.

You must provide all of the information requested by this Ballot. Failure to do so may result in the disqualification of your vote.

**Item 1. Number of Shares Of Existing Common Stock.** The undersigned hereby certifies that as of November 26, 2007, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner) of Existing Common Stock in the following amount (insert amount in box below).

**Item 2. Vote On Plan. (Please check one.)**

The undersigned:    ☐    <u>ACCEPTS</u> (votes FOR) the Plan.

☐    <u>REJECTS</u> (votes AGAINST) the Plan.

**Item 3. Authorization.** By returning this Ballot, the Beneficial Owner hereby certifies (or the authorized signatory hereby certifies on behalf of the Beneficial Owner, as applicable) that it was on November 26, 2007 the registered or record holder and the Beneficial Owner of the Existing Common Stock to which this Ballot pertains and is sending this Ballot directly to the Securities Voting Agent. The Beneficial Owner further certifies that it has received copies of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth therein.

Name Of Holder:_____
(Print Or Type)

Social Security Or Federal Tax I.D. No.:_____
(Optional)

Signature:_____

Name Of Signatory:_____
(If Other Than Holder)

Title:_____

Address:_____

Date Signed :_____

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION
REGISTERED HOLDER**

## INSTRUCTIONS FOR COMPLETING THE BENEFICIAL OWNER BALLOT

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan, described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot.  Please review the Disclosure Statement and Plan carefully before you vote.  Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of interest or (b) an admission by the Debtors of the nature, validity, or amount of any interest.  This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**  Holders should *not* surrender certificates representing their Existing Common Stock, and neither the Debtors nor the Securities Voting Agent will accept delivery of any certificates surrendered with this Ballot.

**Do not submit Existing Common Stock with this Ballot.**

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope.  **Unsigned Ballots will not be counted.**  Ballots must be received by the Securities Voting Agent, Financial Balloting Group, 757 Third Avenue–3rd Floor, New York, New York 10017, Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on January 11, 2008 (the "Voting Deadline").  **If a Ballot is received after the Voting Deadline, it will not be counted.**  Except as otherwise provided herein, the delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Securities Voting Agent.  In all cases, sufficient time should be allowed to assure timely delivery.  **Delivery of a Ballot to the Securities Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.**  No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a)  Make sure that the information required by Item 1 has been inserted.  If you do not know the number of shares of your Existing Common Stock, please refer to the back page of the Ballot for the number of shares.

(b)  Cast your vote either to accept or to reject the Plan by checking the proper box in Item 2.  Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted.  A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c)  Read Item 3 carefully.

(d)  Sign and date your Ballot.

(e)  If you believe that you have received the wrong Ballot, please contact immediately the Securities Voting Agent, Financial Balloting Group, at (866) 486 1727.

(f)  If you are completing this Ballot on behalf of another person or entity, indicate your relationship in the signature block on the Ballot with that person or entity and the capacity in which you are signing.

(g)  Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h)  Return your Ballot using the enclosed return envelope.

## Please Mail Your Ballot Promptly!

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Securities Voting Agent promptly:

Financial Balloting Group
757 Third Avenue, 3rd Floor
New York, NY  10017
**(866) 486-1727**

**CLASS G-1 EXISTING COMMON STOCK
OF DELPHI CORPORATION
REGISTERED HOLDER**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make**
**Any Representation, Other Than What Is Contained In The Materials Mailed With**
**This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
<u>DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION</u>

(Class G-2 Section 510(b) Equity Claims)

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the <u>First Amended</u> Joint <u>Plan Of</u> Reorganization ~~Plan~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) <u>)</u> authorized the Debtors to solicit votes on the Plan. ~~This~~<u>Pursuant to the terms of the Order Preliminarily Approving Multidistrict Litigation and Insurance Settlement entered on October 29, 2007 (Docket No. 10746) (the "Preliminary MDL Settlement Approval Order"), this</u> ballot (the "Ballot") is being sent to <u>the Lead Plaintiffs (as defined in the Preliminary MDL Settlement Approval Order) representing the</u> holders of <u>Class G-2 Section 510(b) Equity Claims</u> for their use in voting to accept or reject the Plan.  The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan.  If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b).  To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully**
**And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On** ~~November 9, 2007~~**January 11, 2008**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote.  ~~You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.~~  Your claims have been placed in Class G-2 under the Plan.  ~~If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.~~

Please read carefully and follow the attached instructions on returning your Ballot.  The voting deadline by which your vote must be _received_ by the voting agent is _**7:00 p.m. (prevailing Eastern time) on**_ ~~_November 9, 2007_~~_**January 11, 2008**_ or your ballot will _not_ be counted.  If you have any questions please call Kurtzman Carson Consultants LLC (the "Creditor Voting Agent") at ~~[_____]~~**(888) 249-2691.**

---

**The Creditor Voting Agent Will Not Accept Ballots By Electronic Or Facsimile Transmission**

**CLASS G-2 SECTION 510(b) EQUITY CLAIMS**

~~You may receive multiple mailings containing Ballots.  You should vote each Ballot that you receive for all of the claims that you hold.~~

**Item 1.  Vote On Plan. (Please check one.)**   The undersigned, the ~~holder~~representative of holders of ~~a~~ Class G-2 Section 510(b) Equity ~~Claim~~Claims against the Debtors in the unpaid amount of $_____.

☐     ACCEPTS (votes FOR) the Plan.          ☐     REJECTS (votes AGAINST) the Plan.

**Item 2.  Certification.**  By signing this Ballot, the undersigned hereby certifies that: ~~(a) on September 28, 2007~~ it ~~was~~is the ~~holder of a Class G-2 Section 510(b) Equity Claim~~ party authorized to ~~which~~submit this Ballot ~~pertains (or an authorized signatory therefor), (b) it has full power and authority to vote to accept or reject~~in accordance with the ~~Plan, (c) it has received a copy of the Disclosure Statement (including the appendices and exhibits thereto), (d) it understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement, and (e) either (i) it has not submitted any other Ballots for Class G-2 Section 510(b) Equity Claims or (ii) it has provided the information specified in the following table for all other Class G-2 Section 510(b) Equity Claims for which it has submitted additional Ballots (please use additional sheets of paper if necessary)~~Preliminary MDL Settlement Approval Order:

~~**Complete This Table Only If You Have Voted Class G-2 Section 510(b) Equity Claim Ballots Other Than This Ballot**~~

| ~~Name Of Holder~~ | ~~Account Number (If Applicable)~~ | ~~Amount Of Claim~~ |
|---|---|---|
| ~~1.~~ | | ~~$~~ |
| ~~2.~~ | | ~~$~~ |
| ~~3.~~ | | ~~$~~ |

Name Of Voter:_____
(Print Or Type)

~~Social Security Or Federal Tax I.D. No.:_____~~
~~(Optional)~~

Signature:_____

Name Of Signatory:_____
(If Other Than Voter)

~~Tile:_____~~

Title:_____

Address:_____

Date Signed:_____

If your address or contact information has changed, please note the new information here:

**CLASS G-2 SECTION 510(b) EQUITY CLAIMS**

2

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot. Please review the Disclosure Statement and Plan carefully before you vote. Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim. This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

If your claim against the Debtors has been paid, do not return this Ballot or vote on the paid claim.

~~You may not split your vote. You must vote the entire claim that you hold to accept or to reject the Plan. You will be deemed to have voted the full amount of your claim in your vote. **A Ballot that partially rejects and partially accept the Plan will not be counted.** You must vote all your claims within a single class to either accept or reject that Plan.~~

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope. **Unsigned Ballots will not be counted.** Ballots must be received by the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"). **If a Ballot is received after the Voting Deadline, it will not be counted.** Except as otherwise provided herein, delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Creditor Voting Agent. In all cases, sufficient time should be allowed to assure timely delivery. **Delivery of a Ballot to the Creditor Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.** No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a) Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot.

(b) Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1. Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted. A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c) Read Item 2 carefully.

(d) Sign and date your Ballot.

(e) If you believe that you have received the wrong Ballot, please immediately contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, at ~~[phone number]~~(888) 249-2691.

(f) If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing in the signature block of the Ballot.

(g) Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h) Return your Ballot using the enclosed return envelope.

**<u>Please Mail Your Ballot Promptly!</u>**

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, promptly
at ~~[phone number]~~(888) 249-2691 or Kurtzman Carson Consultants LLC,
2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation

**CLASS G-2 SECTION 510(b) EQUITY CLAIMS**

**No Person Has Been Authorized To Give Any Information Or Advice, Or To Make
Any Representation, Other Than What Is Contained In The Materials Mailed With
This Ballot Or Other Materials Authorized By The Court**



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
In re                               :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                    Debtors.        :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BALLOT FOR ACCEPTING OR REJECTING JOINT PLAN OF REORGANIZATION OF
DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

(Class H Section 510(b) ERISA Claims)

On ~~October 3~~December ___, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (i) approved the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Of Reorganization ~~Plan Of~~ Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii~~)~~) authorized the Debtors to solicit votes on the Plan. ~~This~~Pursuant to the terms of the Order Preliminarily Approving Multidistrict Litigation and Insurance Settlement entered on October 29, 2007 (Docket No. 10746) (the "Preliminary MDL Settlement Approval Order"), this ballot (the "Ballot") is being sent to the Lead Plaintiffs (as defined in the Preliminary MDL Settlement Approval Order) representing the holders of Class H Section 510(b) ERISA Claims for their use in voting to accept or reject the Plan. The Plan is described in, and annexed as Exhibit A to, the Disclosure Statement which accompanies this Ballot. The Plan can be confirmed by the Bankruptcy Court and thereby made binding on creditors and interest holders if it is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the allowed claims in each class of claims entitled to vote on the Plan that actually vote on the Plan and if it is accepted by the holders of at least two-thirds in number of shares in each class of interests entitled to vote on the Plan that actually vote on the Plan. If any class of claims or interests rejects the Plan or is deemed to reject the Plan, the Bankruptcy Court may nevertheless confirm the Plan if the Bankruptcy Court finds that the Plan accords fair and equitable treatment to, and does not discriminate unfairly against, the class or classes rejecting it, and otherwise satisfies the requirements of 11 U.S.C. § 1129(b). To have your vote count, you must complete and return this Ballot.

**Please Read And Follow The Attached Instructions Carefully
And Return Your Ballot In The Envelope Provided**

**The Voting Deadline Is 7:00 P.M. (Prevailing Eastern Time) On ~~November 9, 2007~~January 11, 2008**

---

**IMPORTANT**

You should review the Disclosure Statement and the Plan before you vote. ~~You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.~~ Your claims have been placed in Class H under the Plan. ~~If you hold claims or interests in another class, you will receive a ballot for each class in which you are entitled to vote.~~

Please read carefully and follow the attached instructions on returning your Ballot. The voting deadline by which your vote must be *received* by the voting agent is *7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008* or your ballot will *not* be counted. If you have any questions please call Kurtzman Carson Consultants LLC (the "Creditor Voting Agent") at ~~[_____]~~. (888) 249-2691.

---

**CLASS H SECTION 510(b) ERISA CLAIMS**

**The Creditor Voting Agent Will Not Accept Ballots By Electronic Or Facsimile Transmission**

**CLASS H SECTION 510(b) ERISA CLAIMS**

You may receive multiple mailings containing Ballots.  You should vote each Ballot that you receive for all of the claims that you hold.

**Item 1.  Vote On Plan. (Please check one.)**  The undersigned, the ~~holder~~representative of holders of ~~a~~ Class H Section 510(b) ERISA ~~Claim~~Claims against the Debtors in the unpaid amount of $_____,

☐    ACCEPTS (votes FOR) the Plan.          ☐    REJECTS (votes AGAINST) the Plan.

**Item 2.  Certification.**  By signing this Ballot, the undersigned hereby certifies that: ~~(a) on September 28, 2007~~ it ~~was~~is the ~~holder of a Class H Section 510(b) ERISA Claim~~ party authorized to ~~which~~submit this Ballot ~~pertains (or an authorized signatory therefor), (b) it has full power and authority to vote to accept or reject~~in accordance with the Plan, ~~(c) it has received a copy of the Disclosure Statement (including the appendices and exhibits thereto), (d) it understands that the solicitation of votes for the Plan is subject to all the terms and conditions set forth in the Disclosure Statement, and (e) either (i) it has not submitted any other Ballots for Class H Section 510(b) ERISA Claims or (ii) it has provided the information specified in the following table for all other Class H Section 510(b) ERISA Claims for which it has submitted additional Ballots (please use additional sheets of paper if necessary)~~Preliminary MDL Settlement Approval Order:

**~~Complete This Table Only If You Have Voted Class H Section 510(b) ERISA Claim Ballots Other Than This Ballot~~**

| ~~Name Of Holder~~ | ~~Account Number (If Applicable)~~ | ~~Amount Of Claim~~ |
|---|---|---|
| 1. | | $ |
| 2. | | $ |
| 3. | | $ |

Name Of Voter:_____
(Print Or Type)

~~Social Security Or Federal Tax I.D. No.:_____~~
~~(Optional)~~

Signature:_____

Name Of Signatory:_____
(If Other Than Voter)

~~Tile:_____~~

Title: _____

Address:_____

Date Signed:_____

If your address or contact information has changed, please note the new information here:

**CLASS H SECTION 510(b) ERISA CLAIMS**

3

**INSTRUCTIONS FOR COMPLETING THE BALLOT**

Delphi Corporation and certain of its subsidiaries (collectively, the "Debtors") are soliciting the votes of their respective noteholders, shareholders, and certain other creditors on their proposed Plan described in and annexed as Exhibit A to the Disclosure Statement accompanying this Ballot. Please review the Disclosure Statement and Plan carefully before you vote. Unless otherwise defined, capitalized terms used herein and in the Ballot have the meanings ascribed to them in the Plan.

**This Ballot does *not* constitute and *will not* be deemed to constitute (a) a proof of claim or (b) an admission by the Debtors of the nature, validity, or amount of any claim. This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than to cast votes to accept or reject the Plan.**

If your claim against the Debtors has been paid, do not return this Ballot or vote on the paid claim.

~~You may not split your vote. You must vote the entire claim that you hold to accept or to reject the Plan. You will be deemed to have voted the full amount of your claim in your vote. **A Ballot that partially rejects and partially accept the Plan will not be counted.** You must vote all your claims within a single class to either accept or reject that Plan.~~

To ensure your vote is counted, you must complete, sign, and return this Ballot to the address set forth on the enclosed pre-addressed postage-paid envelope. **Unsigned Ballots will not be counted.** Ballots must be received by the Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation, by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~January 11, 2008 (the "Voting Deadline"). **If a Ballot is received after the Voting Deadline, it will not be counted.** Except as otherwise provided herein, delivery of a Ballot will be deemed made only when the original executed Ballot is actually received by the Creditor Voting Agent. In all cases, sufficient time should be allowed to assure timely delivery. **Delivery of a Ballot to the Creditor Voting Agent by facsimile, e-mail, or any other electronic means will not be valid.** No Ballot should be sent to the Debtors, any indenture trustee, transfer agent, or financial or legal advisor of the Debtors.

**A vote to accept the Plan constitutes your consent to the release of the parties specified in Article 11.5 of the Plan.**

To complete the Ballot properly, take the following steps:

(a) Insert the amount of your claim in Item 1, unless an amount already appears on your Ballot.

(b) Cast your vote either to accept or to reject the Plan by checking the proper box in Item 1. Ballots that are signed and returned, but not expressly voted to accept or reject the Plan, will not be counted. A Ballot accepting or rejecting the Plan may not be revoked after the Voting Deadline.

(c) Read Item 2 carefully.

(d) Sign and date your Ballot.

(e) If you believe that you have received the wrong Ballot, please immediately contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, at ~~[phone number]~~(888) 249-2691.

(f) If you are completing this Ballot on behalf of another person or entity, indicate your relationship with that person or entity and the capacity in which you are signing in the signature block of the Ballot.

(g) Provide your name and mailing address if (i) different from the printed address that appears on the Ballot or (ii) no pre-printed address appears on the Ballot.

(h) Return your Ballot using the enclosed return envelope.

## **Please Mail Your Ballot Promptly!**

If you have any questions regarding this Ballot or the voting procedures,
Please contact the Creditor Voting Agent, Kurtzman Carson Consultants LLC, promptly
at ~~[phone number]~~(888) 249-2691 or Kurtzman Carson Consultants LLC,
2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Ballot Tabulation

**CLASS H SECTION 510(b) ERISA CLAIMS**

4

Exhibit B -- Confirmation Hearing Notice

Hearing Date And Time: ~~November 19, 2007~~January 17, 2008 At 10:00 a.m.
Objection Deadline: ~~November 9, 2007~~January 11, 2008 At 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
    In re                                 :        Chapter 11
                                                              :
DELPHI CORPORATION, et al.,                                   :        Case No. 05-44481 (RDD)
                                                              :
            Debtors.            :        (Jointly Administered)
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF~~:~~

(1) APPROVAL OF DISCLOSURE STATEMENT;
(2) HEARING ON CONFIRMATION OF PLAN;
(3) DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO CONFIRMATION OF PLAN;
(4) DEADLINE AND PROCEDURES FOR TEMPORARY ALLOWANCE OF CERTAIN CLAIMS FOR VOTING PURPOSES;
(5) DEADLINE FOR ASSERTING CURE CLAIMS FOR ASSUMED CONTRACTS;
(6) TREATMENT OF CERTAIN UNLIQUIDATED, CONTINGENT, OR DISPUTED CLAIMS FOR NOTICE, VOTING, AND DISTRIBUTION PURPOSES;
(7) RECORD DATE;
(8) VOTING DEADLINE FOR RECEIPT OF BALLOTS; AND
(9) PROPOSED RELEASES, EXCULPATION, AND INJUNCTION IN PLAN

TO ALL CREDITORS AND INTEREST HOLDERS, INCLUDING EQUITY SECURITY HOLDERS OF DELPHI CORPORATION AND ITS AFFILIATED DEBTORS-IN-POSSESSION:

       PLEASE TAKE NOTICE that Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), are soliciting acceptances of the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (as may be further amended or modified, the "Plan") from holders of impaired claims and interests who are (or may be) entitled to receive distributions under the Plan.

       PLEASE TAKE FURTHER NOTICE that if the Plan is confirmed by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") the terms of the Plan will be binding on all holders of claims against, and all ~~present~~current and former holders of equity security and other interests in, the respective Debtors.

       PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court has ~~signed~~entered an order on December __, ~~dated October 3,~~ 2007 (the "Solicitation Procedures Order") (Docket No. _____)~~,~~ approving the disclosure statement (the "Disclosure Statement") with respect to the Plan and providing, among other things, that:

       1. Confirmation Hearing Date. The hearing to consider confirmation of the Plan (the "Confirmation Hearing"), will commence on ~~November 19, 2007~~January 17, 2008 at 10:00 a.m. (prevailing Eastern time) or as soon thereafter as counsel can be heard, before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Confirmation Hearing may be adjourned from time to time by

announcing the adjournment in open court, and the ~~Court has reserved **November 20, 2007 at 10:00 a.m.** (prevailing Eastern time) should further time be required, and the~~ Plan may be further modified, if necessary, under 11 U.S.C. § 1127 before, during, or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

2.  Objections To Confirmation.  ~~**November 9, 2007**~~**January 11, 2008** at 4:00 p.m. (prevailing Eastern time) (the "Objection Deadline") is fixed as the last date and time for filing and serving objections to confirmation of the Plan.  To be considered, objections, if any, to confirmation of the Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Solicitation Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vi) counsel for A-D Acquisition Holdings, LLC c/o Appaloosa Management L.P., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n:  Glenn M. Kurtz and Gregory Pryor), (vii) counsel for Harbinger Del-Auto Investment Company, Ltd., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n:  John M. Reiss and Gregory Pryor) ~~and Kaye Scholer LLP, 425 Park,~~ (viii) Counsel for General Motors Corporation, Weil, Gotshal & Manges LLP, 767 Fifth Avenue New York, New York, ~~New York 10022 (Att'n: Benjamin Mintz and Lyn Toby Fisher), and (viii)~~ 10153 (Att'n: Jeffrey L Tanenbaum, Michael P. Kessler, and Robert J. Lemons), and (ix) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received no later than the Objection Deadline.  Objections not timely filed and served in the manner set forth above will not be considered and will be deemed overruled.**

3.  Temporary Allowance Of Claims.  The following persons or entities, among others, are not entitled to vote on the Plan and, therefore, will not receive a ballot: holders of (a) unimpaired claims, (b) claims and interests who will receive no distribution under the Plan, (c) claims and interests that have been scheduled as contingent, unliquidated, or disputed and for which (i) no proof of claim was timely filed and (ii) no Rule 3018(a) Motion (as defined below) has been filed by the Rule 3018(a) Motion Deadline (as defined below), and (d) claims and interests that are the subject of an objection filed by the Debtors (except to the extent and in the manner as may be set forth in the objection).  If you disagree with the Debtors' classification of, or objection to, your claim or interest and believe that you should be entitled to vote on the Plan, then you must (x) have timely filed a proof of claim by the applicable bar date or your proof of claim must be deemed timely filed by an order of the Bankruptcy Code before the Voting Deadline, (y) contact the Creditor Voting Agent (as set forth below) to obtain a ballot and file the ballot by the Voting Deadline, and (z) timely file and serve a motion for order under Fed. R. Bankr. P. 3018(a) (a "Rule 3018(a) Motion") seeking temporary allowance of your claim for the purpose of accepting or rejecting the Plan.  The Rule

3018(a) Motion must be filed with the Clerk of the Court on or before **January 2, 2008 at 4:00 p.m.** (prevailing Eastern time) ~~November 5, 2007~~ (the "Rule 3018(a) Motion Deadline") and served so as to be received by the Notice Parties (as defined in the Solicitation Procedures Order) by the Rule 3018(a) Motion Deadline in accordance with the procedures set forth in the Solicitation Procedures Order.

4. <u>Provisional Votes</u>.  Any party who has (a) timely filed a proof of claim (as stated above) and (b) files and serves a Rule 3018(a) Motion in accordance with the paragraph above shall be permitted to cast a provisional vote to accept or reject the Plan.  If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion before the Voting Deadline, then at the Confirmation Hearing the Court will determine whether the provisional ballot is to be counted as a vote on the Plan and, if so, in what amount.  Rule 3018(a) Motions that are not timely filed and served in the manner ~~as~~ set forth above will not be considered, and the claims or interests referred to therein will not be counted in determining whether the Plan has been accepted or rejected.

5. <u>Cure Claim Submission Deadline</u>.  The Plan provides that any contracts not specifically identified as rejected contracts in Exhibit 8.1(a) to the Plan (to be filed on ~~November 5,~~ December 28, 2007, and available at no charge as set forth in paragraph 10 below) will be assumed under the Plan.  Any party to an executory contract or unexpired lease that is not rejected and ~~who~~ to whom the Debtor did not ~~receive~~ send a Cure Amount Notice, and who wishes to assert that cure is required as a condition of assumption of its contract, must file a proposed cure claim ("Cure Claim") in accordance with Article 8.2(b) of the Plan within 45 days after entry of an order confirming the Plan (the "Cure Claim Submission Deadline"), after which the Debtors or Reorganized Debtors, as the case may be, will have 45 days to file any objections thereto.  Should a party to an executory contract or unexpired lease not file a proposed Cure Claim by the Cure Claim Submission Deadline in accordance with the procedures set forth in Article 8.2(b) of the Plan, then any default then existing will be deemed cured as of the day following the Cure Claim Submission Deadline and such party will forever be barred from asserting against the Debtors or the Reorganized Debtors, as applicable, a claim that arose on or prior to the confirmation date of the Plan.  If there is a dispute regarding (i) the nature or amount of any Cure Amount, (ii) the ability of any Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, the matter shall be set for hearing in the Bankruptcy Court on the next available hearing date, or such other date as may be agreed upon, and cure, if any,  shall occur following the entry of a final order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that if there is a dispute as to the amount of cure that cannot be resolved consensually among the parties, the Debtors shall have the right to reject the contract or lease for a period of five days after entry of a final order establishing a cure amount in excess of that asserted by the Debtors.

6. <u>Treatment Of Certain Claims</u>.  Any holder of a claim that (a) is scheduled in the Debtors' schedules of assets and liabilities, dated April 18, 2006, or any amendment thereof (the "Schedules"), at zero or in an unknown amount or as disputed, contingent, or unliquidated and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Bankruptcy Court under either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (b) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Bankruptcy Court under either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, will not be treated as a creditor with respect to the claim for purposes of (i) receiving notices regarding, or distributions under, the Plan or (ii) voting on the Plan.  Unless otherwise provided in the Plan, any holder of a claim ~~that~~ who is otherwise entitled to vote on the Plan and ~~who~~ filed against the Debtors a proof of claim ~~in an~~ reflecting a claim or portion of a claim that is unliquidated ~~amount, in whole or in part,~~ will have such claim ~~be~~ allowed temporarily ~~allowed~~ for voting purposes only, and not for purposes of allowance or distribution, ~~at $1.00.~~ for that portion of the claim that is not unliquidated and no amount shall be allocated for voting purposes on account of the unliquidated portion. Fully unliquidated claims shall be counted for purposes of determining whether a sufficient

number of the allowed claims in the applicable class has voted to accept the Plan, but the allowed amount of the fully unliquidated claim shall be $1.00 for voting purposes, subject to the right of the holder to file a Rule 3018(a) Motion. Unless otherwise provided in the Plan, any holder of a claim that is contingent will have such claim temporarily disallowed for voting purposes, subject to the right of such holder to file a Rule 3018(a) Motion.

7.  Record Date.  September 28,November 26, 2007 is the record date for determining (a) the holders of Debtors' publicly traded debt and equity securities (the "Securities") entitled to receive solicitation packages and (b) the creditors entitled to vote to accept or reject the Plan.

8.  Voting Deadline.  If you hold a claim against or an equity interest or other interest in one of the Debtors as of September 28,November 26, 2007, the Record Date as established in the Solicitation Procedures Order, and are entitled to vote to accept or reject the Plan, you have received this Notice with a ballot form and voting instructions appropriate for your claim or interest.  For your vote to be counted, ballots to accept or reject the Plan must be executed, completed, and RECEIVED by **7:00 p.m.** (prevailing Eastern time) on November 9, 2007January 11, 2008 (the "Voting Deadline") by the appropriate voting agent, Financial Balloting Group (the "Securities Voting Agent"), for holders of Securities, or Kurtzman Carson Consultants LLC (the "Creditor Voting Agent"), for all other creditors, at:

| Securities Voting Agent | Creditor Voting Agent |
|---|---|
| Delphi Corporation, et al. | Delphi Corporation, et al. |
| c/o Financial Balloting Group | c/o Kurtzman Carson Consultants LLC |
| 757 Third Avenue—3rd Floor | 2335 Alaska Avenue |
| New York, New York  10017 | El Segundo, California  90245 |
| [Phone number] (866) 486-1727 | (888) 249-2691 |

Ballots may **NOT** be cast by facsimile transmission or other electronic means.  **Ballots that are not received by the Voting Deadline will not be counted.**

9.  Injunction To Enforce Releases And Exculpation In The Plan.  **The Plan proposes to release and exculpate various parties and to enjoin the pursuit of any claims subject to the releases and exculpation.  The releases generally provide that the Debtors, certain of the Debtors' present and certain former officers and directors, the official committee of unsecured creditors, the official committee of equity security holders, the DIP agent, the DIP lenders, all professionals retained in these cases, the plan investors, the unions representing the Debtors' employees and former employees, General Motors Corporation, and certain related persons and entities, will receive releases from holders of claims and interestthe Debtors' present and former creditors and equity security holders, certain hourly employees and former employees of the Debtors, and certain related persons and entities, with respect to any claims or causes of actions existing as of the effective date of the Plan that relate to the Debtors or the Chapter Debtors' chapter 11 cases.  These released parties will also be exculpated generally from Debtor-related liability by all parties.**

> **You Are Advised To Carefully Review And Consider The Plan, Including The Release, Exculpation, And Injunction Provisions, As Your Rights Might Be Affected.**

10.  Information And Documents.  Copies of the Disclosure Statement, the Plan, and any exhibits thereto are publicly available along with the docket and other case information by accessing the Delphi Legal Information Website at www.delphidocket.comset forth below and may also be obtained, upon reasonable written request, from the Creditor Voting Agent at the address set forth above.

4

Dated:  New York, New York
October 12, 2007

SKADDEN, ARPS, SLATE, MEAGHER  & FLOM LLP

John Wm. Butler, Jr. (JB 4711)          Kayalyn A. Marafioti (KM 9632)
George N. Panagakis (GP 0770)           Thomas J. Matz (TM 5986)
Ron E. Meisler (RM 3026)                Four Times Square
Nathan L. Stuart (NS 7872)              New York, New York 10036
333 West Wacker Drive, Suite 2100       (212) 735-3000
Chicago, Illinois 60606
 (312) 407-0700

 Attorneys for Delphi Corporation, et al.,  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:                Delphi Legal Information Website:
Toll Free:  (800) 718-5305                       http://www.delphidocket.com
International:  (248) 813-2698

Dated:        New York, New York
              December ___, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP
                                        _____ John Wm. Butler, Jr. (JB 4711)
                                        _____ George N. Panagakis (GP 0770)
                                        _____ Ron E. Meisler (RM 3026)
                                        _____ Nathan L. Stuart (NS 7872)
                                         333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606
                                                   - and -
                                        _____ Kayalyn A. Marafioti (KM 9632)
                                        _____ Thomas J. Matz (TM 5986)
                                         Four Times Square
                                         New York, New York 10036

                                         Attorneys for Delphi Corporation, et al.,
                                        _____ Debtors and Debtors-in-Possession

5

Exhibit C -- Unimpaired Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :

In re                               :       Chapter 11
                                              :

DELPHI CORPORATION, et al.,        :       Case No. 05-44481 (RDD)
                                            :

                          Debtors.     :       (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## NOTICE TO UNIMPAIRED CREDITORS OF (I) FILING OF JOINT PLAN OF REORGANIZATION, (II) TREATMENT OF CLAIMS UNDER PLAN, (III) HEARING ON CONFIRMATION OF PLAN, AND (IV) DEADLINE AND PROCEDURES FOR FILING OBJECTIONS THERETO

       PLEASE TAKE NOTICE that on ~~September 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed their Joint Plan of Reorganization dated September 6, 2007 (as subsequently amended, supplemented, or otherwise modified, the "Plan") and their disclosure statement with respect to the Plan (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement") with~~December __, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). ~~The Bankruptcy Court~~ entered an order ~~on October __, 2007~~ (the "Solicitation Procedures Order") (Docket No. ____) ~~approving the adequacy of the Disclosure Statement and certain procedures in connection with solicitation of votes on the Plan.~~(i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

       PLEASE TAKE FURTHER NOTICE that holders of certain claims under the Plan are unimpaired as defined in section 1124 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"). Specifically, holders of Secured Claims,[1] Flow-Through Claims, and Interests in Affiliate Debtors are unimpaired under the Plan. Such claims are identified in the Plan as Class A (Secured Claims), Class B (Flow-Through Claims), and Class J (Interests in Affiliate Debtors). These claims are referred to in the Plan as "Unimpaired Claims."

       PLEASE TAKE FURTHER NOTICE that the Plan provides that:

       <u>Section 5.1—Class A Claims</u>. Except as otherwise provided in and subject to Article 9.8 of the Plan, at the sole option of the Debtors or Reorganized Debtors, each Allowed Secured Claim, shall be satisfied in full in Cash or Reinstated. Notwithstanding section 1141(c) or any other provision of the Bankruptcy Code, all valid, enforceable, and perfected prepetition liens on property of the Debtors held by or on behalf of holders of Secured Claims with respect to such Claims shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such holders of such Secured Claims and/or applicable law until, as to each such holder of an Allowed Secured Claim, such Secured Claim is satisfied. Notwithstanding the foregoing, any Claim arising as a result of a tax lien that would otherwise be a Secured Claim shall be paid in accordance with Article 2.2 of the Plan.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Plan.

Section 5.2—Class B Claims. The legal, equitable, and contractual rights of each holder of a Flow-Through Claim,[2] if any, shall be unaltered by the Plan and shall be satisfied in the ordinary course of business at such time and in such manner as the applicable Reorganized Debtor is obligated to satisfy each Flow-Through Claim (subject to the preservation and flow-through of all Estate Causes of Action and defenses with respect thereto, which shall be fully preserved). The Debtors' failure to object to a Flow-Through Claim in their Chapter 11 Cases shall be without prejudice to the Reorganized Debtors' right to contest or otherwise object to the classification of such Claim in the Bankruptcy Court.

Section 5.11—Class J Interests. On the Effective Date, except as otherwise contemplated by the Restructuring Transactions, the holders of Interests in the Affiliate Debtors shall retain such Interests in the Affiliate Debtors under the Plan.

PLEASE TAKE FURTHER NOTICE that you have been identified as the holder of an Unimpaired Claim under the Plan. In accordance with section 1126(f) of the Bankruptcy Code, with respect to your Unimpaired Claim, you will (a) be deemed to have accepted the Plan and (b) not be entitled to vote on the Plan. The Debtors therefore will not solicit your vote, and you will not receive a ballot with respect to your Unimpaired Claim. Accordingly, this may be the final notice you receive with respect to the Plan and with respect to your Unimpaired Claim. Although you will not be entitled to vote on the Plan with respect to your Unimpaired Claim, you are a party-in-interest in the Debtors' Chapter 11 Cases. Accordingly, you are entitled to participate in the Chapter 11 Cases, including by filing objections to confirmation of the Plan.

PLEASE TAKE FURTHER NOTICE that copies of the Disclosure Statement, the Plan, and any exhibits thereto are publicly available along with the docket and other case information by accessing the Delphi Legal Information Website at www.delphidocket.com and may also be obtained, upon reasonable written request, from the Creditor Voting Agent at the following address: Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, (888) 249-2691.

PLEASE TAKE FURTHER NOTICE THAT the hearing (the "Confirmation Hearing") to consider confirmation of the Plan, will commence on ~~November 19, 2007~~**January 17, 2008** at **10:00 a.m.** (prevailing Eastern time) or as soon thereafter as counsel can be heard, before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Confirmation Hearing may be adjourned from time to time by announcing the adjournment in open court, and the Plan may be further modified, if necessary, under 11 U.S.C. § 1127 before, during, or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

PLEASE TAKE FURTHER NOTICE THAT ~~November 9, 2007~~**January 11, 2008** at **4:00 p.m.** (prevailing Eastern time) (the "Objection Deadline") is fixed as the last date and time for filing and serving objections to confirmation of the Plan. To be considered, objections, if any, to confirmation of the Plan

---

[2] "Flow-Through Claims" are defined under Article 1.85 of the Plan as a "claim arising from (a) an Ordinary Course Customer Obligation to a customer of Delphi as of the date of the commencement of the hearing on the Disclosure Statement, (b) an Environmental Obligation (excluding those environmental obligations that were settled or capped during the Chapter 11 Cases (to the extent in excess of the capped amount)), (c) an Employee Related Obligation (including worker compensation and unemployment compensation claims) asserted by an hourly employee that is not otherwise waived pursuant to the Union Settlement Agreements, (d) any Employee Related Obligation asserted by a salaried, non-executive employee who was employed by Delphi as of the date of the commencement of the hearing on the Disclosure Statement, (e) any Employee Related Obligation asserted by a salaried executive employee who was employed by Delphi as of the date of the commencement of the hearing on the Disclosure Statement and has entered into a new employment agreement as described in Article 7.8 of the Plan, and (f) litigation exposures and other liabilities arising from litigation that are covered by insurance, but only in the event that the party asserting the litigation ultimately agrees to limit its recovery to available insurance proceeds; provided, however, that all Estate Causes of Action and defenses to any Flow-Through Claim shall be fully preserved."

2

must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Solicitation Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vi) counsel for A-D Acquisition Holdings, LLC c/o Appaloosa Management L.P., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n:  Glenn M. Kurtz and Gregory Pryor), (vii) counsel for Harbinger Del-Auto Investment Company, Ltd., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n:  John M. Reiss and Gregory Pryor), ~~and~~ (vii)i) Counsel for General Motors Corporation, Weil, Gotshal & Manges LLP, 767 Fifth Avenue New York, New York 10153 (Att'n: Jeffrey L Tanenbaum, Michael P. Kessler, and Robert J. Lemons), and (ix) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), **in each case so as to be received no later than the Objection Deadline.**  Objections not timely filed and served in the manner set forth above will not be considered and will be deemed overruled.

Delphi Legal Information Hotline:          Delphi Legal Information Website:
Toll Free:  (800) 718-5305                 http://www.delphidocket.com
International:  (248) 813-2698


  Dated:            New York, New York
                   ~~October 12,~~December __,
                   2007
                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP
                                 John Wm. Butler, Jr. (JB 4711)
                                 George N. Panagakis (GP 0770)
                                 Ron E. Meisler (RM 3026)
                                 _____ Nathan Stuart (NS 7872)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                     - and -
                                 Kayalyn A. Marafioti (KM 9632)
                                 Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

4

Exhibit D -- Non-Voting Status Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

In re                           :       Chapter 11

                                   :

DELPHI CORPORATION, et al.,   :       Case No. 05-44481 (RDD)

                                   :

                   Debtors.     :       (Jointly Administered)

                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF NON-VOTING STATUS WITH RESPECT TO
### CERTAIN CLAIMS AND INTERESTS

PLEASE TAKE NOTICE that on ~~September 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed their Joint Plan of Reorganization, dated September 6, 2007 (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and their Disclosure Statement with respect to the Plan (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement") with~~ December __, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). ~~The Bankruptcy Court~~ entered an order ~~on October 3, 2007~~ (the "Solicitation Procedures Order") (Docket No. _____) (i) approving the ~~adequacy of the Disclosure Statement and certain procedures in connection with solicitation of votes on the Plan.~~ disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

PLEASE TAKE FURTHER NOTICE that under the Solicitation Procedures Order, the provisions of chapter 11 of ~~title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "~~ the Bankruptcy Code~~")[1]~~, and the Plan, holders of certain claims or interests under the Plan are not entitled to vote. Specifically, the Plan provides that ~~holders of~~ Class I Claims ~~(, also known as "~~ Other Interests ~~—i.e.,~~" are comprised of options, warrants, call rights, puts, awards, or other agreements to acquire Existing Common Stock~~)~~. Holders of Other Interests shall not receive or retain any property on account of such Other Interests under the Plan and are therefore deemed to have rejected the Plan. Moreover, holders of claims to which the Debtors filed an objection to expunge ~~the claim~~ such claims, which objection is still pending ("Disputed Claims"), and holders of claims which were scheduled or filed as contingent ("Contingent Claims"), are not entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE **that your claim or interest is either a Class I Claim, a Disputed Claim, or a Contingent Claim, and you are accordingly not entitled to vote on the Plan.**

PLEASE TAKE FURTHER NOTICE that if your claim is a Disputed Claim or a Contingent Claim and you disagree with the Debtors' objection to your claim or interest and wish

---

[1] Title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005.

to vote on the Plan, or if you otherwise believe that you should be entitled to vote on the Plan, then you must (a) have timely filed a proof of claim by the applicable bar date or your proof of claim must be deemed timely filed by an order of the Bankruptcy Code before **7:00 p.m.** (prevailing Eastern time) on ~~November 9, 2007~~January 1, 2008 (the "Voting Deadline"), (b) contact Kurtzman Carson Consultants LLC at 2335 Alaska Avenue, El Segundo, California 90245, (888) 249-2691 (the "Creditor Voting Agent") to obtain a ballot and return the ballot by the Voting Deadline, and (c) timely file and serve a motion ("Rule 3018(a) Motion") under Bankruptcy Rule 3018(a) for temporary allowance of your claim or interest for purposes of voting. The deadline for filing and serving Rule 3018 Motions is ~~November 5, 2007~~January 2, 2008 **at 4:00 p.m.** (prevailing Eastern time) (the "Rule 3018(a) Motion Deadline"); provided, however, that if the Debtors object to a claim or interest on or after ~~October 29,~~December 27, 2007, the Rule 3018(a) Motion Deadline would be extended for that claim or interest such that the deadline would be seven days following the filing of the Debtors' objection. Rule 3018(a) Motions must be filed with the Clerk of the Court on or before the Rule 3018(a) Motion Deadline and served so as to be received by the Notice Parties (as defined in the Solicitation Procedures Order) by the Rule 3018(a) Motion Deadline in accordance with the procedures set forth in the Solicitation Procedures Order.

PLEASE TAKE FURTHER NOTICE that copies of the Disclosure Statement, the Plan, and any exhibits thereto are publicly available, along with the docket and other case information ~~by accessing the Delphi Legal Information Website,~~ at www.delphidocket.com ~~and~~. This information may also be obtained, upon reasonable written request, from the Creditor Voting Agent at its address set forth above.

PLEASE TAKE FURTHER NOTICE THAT the hearing to consider confirmation of the Plan (the "Confirmation Hearing") will commence on ~~November 19, 2007~~January 17, 2008 **at 10:00 a.m.** (prevailing Eastern time) or as soon thereafter as counsel can be heard, before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Confirmation Hearing may be adjourned from time to time by announcing the adjournment in open court, and the Plan may be further modified, if necessary, under 11 U.S.C. § 1127 before, during, or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

PLEASE TAKE FURTHER NOTICE THAT ~~November 9, 2007~~January 11, 2008 **at 4:00 p.m.** (prevailing Eastern time) is fixed as the last date and time for filing and serving objections to confirmation of the Plan (the "Objection Deadline"). To be considered, objections, if any, to confirmation of the Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Solicitation Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

2

the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vi) counsel for A-D Acquisition Holdings, LLC c/o Appaloosa Management L.P., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n: Glenn M. Kurtz and Gregory Pryor), (vii) Counsel for Harbinger Del-Auto Investment Company, Ltd., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n: John M. Reiss and Gregory Pryor), ~~and~~ (viii) Counsel for General Motors Corporation, Weil, Gotshal & Manges LLP, 767 Fifth Avenue New York, New York 10153 (Att'n: Jeffrey L. Tanenbaum, Michael P. Kessler, and Robert J. Lemons), and (ix) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be **received no later than Objection Deadline**. Objections not timely filed and served in the manner set forth above will not be considered and will be deemed overruled.

Delphi Legal Information Hotline:     Delphi Legal Information Website:
Toll Free: (800) 718-5305          http://www.delphidocket.com
International: (248) 813-2698

Dated:  New York, New York
      ~~October 12,~~December ___, 2007

          SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP
              John Wm. Butler, Jr. (JB 4711)
              George N. Panagakis (GP 0770)
              Ron E. Meisler (RM 3026)
              Nathan Stuart (NS 7872)
          333 West Wacker Drive, Suite 2100
          Chicago, Illinois 60606
              - and -
              Kayalyn A. Marafioti (KM 9632)
              Thomas J. Matz (TM 5986)
          Four Times Square
          New York, New York 10036

           Attorneys for Delphi Corporation, et al.,
            Debtors and Debtors-in-Possession

Exhibit E -- Notice To Parties Subject To A Post-Solicitation Date
Objection

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE TO PARTIES SUBJECT TO A POST-SOLICITATION DATE OBJECTION

       PLEASE TAKE NOTICE that on December __, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Solicitation Procedures Order") (Docket No. ____) (i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

       PLEASE TAKE FURTHER NOTICE that on December 15, 2007, the Debtors mailed a solicitation package to you, which included a ballot that was populated with data that is based upon the claims register as of November 26, 2007, the record date established by the Bankruptcy Court.

       PLEASE TAKE FURTHER NOTICE that the Debtors have recently filed an objection to your claim or interest.  In accordance with the Solicitation Procedures Order, your vote will now be tabulated in an amount and classification consistent with the modifications requested in the current objection (or, if the objection seeks to disallow and expunge your claim, your vote will not be tabulated).

       PLEASE TAKE FURTHER NOTICE that, to the extent that you wish to vote your claim or interest in an amount and classification other than that in the Debtors' objection, you must file a motion requesting temporary allowance of your claim or interest for purposes of voting pursuant to Bankruptcy Rule 3018(a) ("Rule 3018(a) Motion").  If you timely file and serve a Rule 3018(a) Motion, you will receive a provisional ballot and will be permitted to cast this provisional ballot to accept or reject the Plan.  If you and the Debtors are unable to resolve the issues raised by the Rule 3018(a) Motion, the Bankruptcy Court will determine at the Confirmation Hearing whether the provisional ballot should be counted as a vote on the Plan.

       PLEASE TAKE FURTHER NOTICE that the deadline for filing and serving a Rule 3018(a) Motion is **4:00 p.m. (prevailing Eastern time) on January 2, 2008** (unless the Debtors object to your claim or interest on or after December 27, 2007, in which case the deadline for filing and serving a Rule 3018(a) Motion for that claim or interest will be seven days following the filing of the Debtors' objection).

Delphi Legal Information Hotline:                    Delphi Legal Information Website:
Toll Free:  (800) 718-5305                               http://www.delphidocket.com
International:  (248) 813-2698


Dated:    New York, New York
                December __, 2007

                                                SKADDEN, ARPS, SLATE, MEAGHER
                                                 & FLOM LLP
                                                        John Wm. Butler, Jr. (JB 4711)
                                                        George N. Panagakis (GP 0770)
                                                        Ron E. Meisler (RM 3026)
                                                        Nathan Stuart (NS 7872)
                                                333 West Wacker Drive, Suite 2100
                                                Chicago, Illinois 60606

                                                            - and -
                                                        Kayalyn A. Marafioti (KM 9632)
                                                        Thomas J. Matz (TM 5986)
                                                Four Times Square
                                                New York, New York 10036

                                                Attorneys for Delphi Corporation, et al.,
                                                 Debtors and Debtors-in-Possession

Exhibit F -- UAW Notice

**A Complete Copy Of Delphi's ~~Court Papers, Including The~~ Disclosure Statement~~,~~ and Plan ~~And Memorandum Of Understanding,~~ of Reorganization Can Be Obtained At www.Delphidocket.com Or By Calling 1-888-249-2691**

~~This is a notice which may affect you as a present or former employee of Delphi:~~

This is a notice which may affect you as a current or former employee of Delphi:

**The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page 4.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                                     :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                            Debtors.      :    (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MEMORANDUM OF UNDERSTANDING AMONG UAW, DELPHI, AND GENERAL MOTORS CORPORATION, INCLUDING MODIFICATION OF UAW COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN UAW-REPRESENTED RETIREES~~

NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN

**Information For UAW-Represented
Employees And Retirees Of Delphi Corporation**

~~On June 29, 2007, Delphi Corporation and certain of its affiliated debtors and debtors-in-possession ("Delphi"), filed a Motion For Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among UAW, Delphi, and General Motors Corporation, Including Modification of UAW Collective Bargaining Agreements and Retiree Welfare Benefits For Certain UAW-Represented Retirees, which sought approval from the United States Bankruptcy Court for the Southern District of New York (the "Court") of a memorandum of understanding dated June 22, 2007 (the "Agreement" or~~

"Memorandum of Understanding") among Delphi, GM,[1] and the UAW regarding Delphi's restructuring.

On July 19, 2007, the Court approved the Agreement, which was ratified by the UAW as of June 28, 2007.

On September 6, 2007, Delphi filed with the Court (a) the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement").

**The Agreement provides that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan proposes, that Delphi and GM will receive releases from the UAW and all employees and former employees of Delphi represented or formerly represented by the UAW as described more fully below.**

**Article 11.13 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person to collect or recover any claim or interest released under the Plan.**

The Agreement as approved by the Court provides, among other terms, that:

- The terms of the UAW collective bargaining agreements ("CBAs") are extended until September 14, 2011;

- A site plan will be implemented with respect to each of 21 UAW-Delphi plants which includes specific revenue, production, and job commitments from Delphi and/or GM and pursuant to which Delphi will retain ownership and operations in four facilities, seven facilities will be sold or transferred to a third party so that Delphi will have no further operational or employment responsibilities after certain specified sunset dates, and ten facilities will be closed;

- A workforce transformation program will be implemented for traditional UAW-represented employees that provides eligible employees with transformation plan options including (1) attrition options similar to the previously-approved UAW attrition programs, (2) flowback rights to eligible Delphi employees as of the date of the filing of Delphi's bankruptcy petition who do not elect the attrition options, including relocation allowances of up to $67,000 in certain circumstances when plants cease production, (3) provision of lump sum "buy-down" payments totaling $105,000 for traditional production employees who do not elect the attrition option or flowback and continue to work for Delphi under the terms of the 2004 UAW-Delphi

---

[1]  Capitalized terms used and not defined in this informational notice have the meanings set forth in the Agreement.

Supplemental Agreement applicable to employees hired after 2004, transferring those employees to Supplemental Employee Status as of October 1, 2007, (4) conversion of temporary employees in UAW Delphi plants to permanent employee status, and (5) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of the 2004 UAW Delphi Supplemental Agreement with respect to wages, individual retirement and savings plans, and post-retirement health care accounts will be modified;

- Certain terms of the UAW CBAs will be modified with respect to provisions covering hiring requirements, existing CHR/Legal Services, holiday schedule, Appendix L, GIS, AOL, and other matters described in Attachment E to the Memorandum of Understanding;

- Local negotiations subject to mutual agreement regarding work rules and other local agreement issues will be conducted on an expedited basis;

- Delphi's commitment in the 2004 UAW Delphi Supplemental Agreement to the principle of "equivalence of sacrifice" when establishing compensation and benefit levels for salaried employees and management is reaffirmed;

- There will be provisions for resolution of claims, including waivers and releases to be effective as part of Delphi's plan of reorganization; and

- The UAW will receive an allowed prepetition claim, to be paid pursuant to the plan of reorganization in the amount of $140 million on account of the CHR and Legal Services claims as of April 1, 2007 (to be adjusted for accruals through October 1, 2007 and adjusted for expenditures by Delphi until the effective date of a plan of reorganization) of which $30 million will be paid to the UAW-GM Center for Human Resources and the balance will be paid directly to the DC VEBA established pursuant to a settlement agreement approved by the court in the case of International Union, UAW, et al. v. General Motors Corp., Civil Action No. 05-73991.

Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by the Court which incorporates, approves, and is consistent with all of the terms of the Agreement and Delphi-GM settlement:

On July 19, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved a Memorandum Of Understanding Among The UAW,[2] Delphi Corporation And Certain Of Its Affiliated Debtors And Debtors-in-Possession ("Delphi"), and General Motors Corporation ("GM"), Including Modification Of UAW Collective Bargaining

---

[2]    Capitalized terms used and not defined in this informational notice have the meanings set forth in the Agreement.

Agreements And Retiree Welfare Benefits For Certain UAW-Represented Retirees, dated June 22, 2007 (the "Agreement" or "Memorandum of Understanding").  The UAW ratified the Agreement on June 28, 2007.  On or about July 2, 2007, you received an informational notice that summarized certain terms of the Agreement.

On December __, 2007 the Court approved Delphi's disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan").  **The Disclosure Statement and Plan filed by Delphi are consistent in all respects with the Memorandum of Understanding that was negotiated between Delphi, UAW and GM, ratified by UAW membership, and approved by the Court.**  The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time).  January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

Several terms of the Memorandum of Understanding have gone into effect based on the Court's approval and the UAW's ratification of the Memorandum of Understanding.  The terms already in effect include, among others, an extension of the UAW collective bargaining agreements until September 14, 2011; implementation of site plans with respect to each of 21 UAW-Delphi plants; implementation of a workforce transformation program for traditional UAW-represented employees; modification of certain terms of the 2004 UAW-Delphi Supplemental Agreement; expedited local competitive operating negotiations; reaffirmation of Delphi's commitment in the 2004 UAW-Delphi Supplemental Agreement to the principle of "equivalence of sacrifice" when establishing compensation and benefit levels for salaried employees and management; provisions for resolution of claims, including waivers and releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for rights, if any, to vested pension benefits, workers' compensation benefits, unemployment compensation benefits, and pending ordinary course grievances of employees remaining in the workforce); and establishment of the UAW's allowed prepetition claim.

**The Agreement provides that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan provides, that Delphi and GM will be released by the UAW and all employees and former employees of Delphi represented or formerly represented by the UAW.**

**Article 11.14 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person commencing or continuing any action or act to collect or recover any claim or interest released under the Plan.**

Other terms of the Memorandum of Understanding have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization which incorporates, approves, and is consistent with, among other things, all the terms of the Memorandum of Understanding as approved by the Court and the comprehensive settlement agreements between Delphi and GM.  The Plan, if approved by the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the Memorandum of Understanding that was reached and ratified last summer.  Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits will be eliminated and GM will be obligated to provide certain retiree welfare benefits for certain UAW-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans will be effectuated pursuant to Internal Revenue Code Section 414(l) in exchange for certain consideration to be paid by Delphi to GM;

- Delphi's existing pension plan will be frozen in certain respects ~~effective upon emergence from chapter 11~~ and GM ~~is~~will be obligated to pay certain benefits for certain UAW-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- The amount of $450 million will be funded by GM, which the UAW has directed to be paid directly to the DC VEBA established pursuant to a settlement agreement approved by the court in the case of International Union, UAW, et al. v. General Motors Corp., Civil Action No. 05-73991.

~~In addition, under the~~ Under Delphi's Plan, and consistent with the Memorandum of Understanding reached and ratified last summer :

- The Memorandum of Understanding (including the UAW ~~CBAs~~collective bargaining agreements) will be assumed pursuant to 11 U.S.C. § 365;

- **As set forth above, Delphi and GM will** ~~**receive releases from**~~**be released by the UAW, all employees and former employees of Delphi represented or formerly represented by the UAW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the Memorandum of Understanding, including, but not limited to, claims for workers' compensation benefits against Delphi, its subsidiaries, or affiliates).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, and Memorandum of Understanding and is qualified entirely by and is subject to the actual terms and conditions of those documents.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, and Memorandum of Understanding, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:        New York, New York
              ~~October 12~~December --,
              2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                          By:  _____
                                _____John Wm. Butler, Jr. (JB 4711)
                                _____George N. Panagakis (GP 0770)
                                _____Ron E. Meisler (RM 3026)
                                _____Nathan Stuart (NS 7872)
                          -333 West Wacker Drive, Suite 2100
                          -Chicago, Illinois 60606

                                - and -

                          By:  _____
                                Kayalyn A. Marafioti (KM 9632)
                                Thomas J. Matz (TM 5986)
                          -Four Times Square
                          -New York, New York 10036

                                - and-

                          O'MELVENY & MYERS LLP

                          By:  -_____
                                Tom A. Jerman (TJ 1129)
                                Jessica Kastin (JK 2288)
                          1625 Eye Street, NW
                          Washington, DC 20006

                          Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession

Exhibit G -- USW Notice

A Complete Copy Of Delphi's ~~Court Papers, Including The~~ Disclosure Statement, and Plan ~~And Memoranda Of Understanding,~~ of Reorganization Can Be Obtained At www.Delphidocket.com Or By Calling 1-888-249-2691

---

~~This is a notice which may affect you as a present or former employee of Delphi:~~

~~For A Summary Of The Relief Sought Regarding Members Of:~~
~~USW At Home Avenue: See Pages 3 - 4~~
~~USW At Vandalia: See Pages 5 - 6~~

This is a notice which may affect you as a current or former employee of Delphi:

For A Summary Of The Relief Sought Regarding Members Of:
USW At Home Avenue: See Pages 3 & 4
USW At Vandalia: See Pages 5 & 6

The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page 7.

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re                                   :     Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :     Case No. 05-44481 (RDD)
                                        :
                            Debtors.    :     (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MEMORANDA OF UNDERSTANDING AMONG USW, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF USW COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN USW REPRESENTED RETIREES~~

NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN

**Information For USW-Represented**
**Employees And Retirees Of Delphi Corporation**

~~On August 17, 2007, Delphi Corporation and certain of its affiliated debtors and debtors-in-possession (~~On August 29, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved two Memoranda of Understanding Among The USW,[1] Delphi Corporation and Certain Of Its Affiliated Debtors And Debtors-in-Possession ("Delphi"), ~~filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memoranda of Understanding Among USW, Delphi,~~ and General Motors Corporation ("GM"), Including Modification ~~of~~ Of USW Collective Bargaining Agreements ~~and~~And Retiree Welfare Benefits For Certain USW-Represented Retirees~~, which sought approval from the United States Bankruptcy Court for the Southern District of New York (the "Court") of two memoranda of understanding~~ dated August 16, 2007 ~~among Delphi, GM,[2] and the USW regarding Delphi's restructuring~~.  The first memorandum relates to Delphi's operations at Home Avenue (the "USW Home Avenue Settlement Agreement" or the "USW Home Avenue Memorandum of Understanding") and the second memorandum relates to Delphi's operations at Vandalia (the "USW Vandalia Settlement Agreement" or the "USW Vandalia Memorandum of Understanding").

~~On August 29, 2007, the Court approved~~ The USW ratified the USW Home Avenue Settlement Agreement ~~and~~as of August 30, 2007 and ratified the USW Vandalia Settlement Agreement~~, which were ratified by the USW as of August 30, 2007 for the USW Home Avenue Settlement Agreement and~~ as of August 31, 2007 ~~for the USW Vandalia Settlement Agreement~~.  On or about August 20, 2007, you received an informational notice that summarized certain terms of these agreements.

On ~~September 6~~December ___, 2007~~, Delphi filed with the Court (a) the~~ the Court approved Delphi's disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan ~~Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the Disclosure Statement with respect to the Plan~~ of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-~~in~~In-Possession (~~as subsequently amended, supplemented, or otherwise modified, the "~~the "Plan").  **The** Disclosure Statement~~")~~.

 **and Plan filed by Delphi are consistent in all respects with the Memorandum of Understanding that was negotiated between Delphi, USW and GM, ratified by the USW membership, and approved by the Court.**  The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time).  January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

---

[1]  Capitalized terms used and not defined in this informational notice have the meanings set forth in the USW Home Avenue Settlement Agreement or the USW Vandalia Settlement Agreement, as the case may be.

~~[2]  Capitalized terms used and not defined in this informational notice have the meanings set forth in the USW Home Avenue Settlement Agreement or the USW Vandalia Settlement Agreement, as the case may be.~~

**The USW Home Avenue Settlement Agreement and the USW Vandalia Settlement Agreement provide that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan ~~proposes~~<u>provides</u>, that Delphi and GM will ~~receive releases from~~<u>be released by</u> the USW and all employees and former employees of Delphi represented or formerly represented by the USW~~ as described more fully below.~~**

<u>.</u>

**Article 11.~~13~~<u>14</u> of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person <u>commencing or continuing any action or act </u>to collect or recover any claim or interest released under the Plan.**

A summary of certain terms of the USW Home Avenue Settlement Agreement and the USW Vandalia Settlement Agreement follows:

**USW Home Avenue Settlement Agreement**

~~The~~Several terms of the USW Home Avenue Settlement Agreement ~~provides, among other terms,~~ have gone into effect based on the Court's approval of that~~:~~

- ~~—~~ agreement and the USW's ratification of that agreement.  The terms already in effect include, among others, an extension of the USW collective bargaining agreements ("CBAs ~~are extended~~") until September 14, 2011;

- ~~Delphi and the USW agree~~ an agreement that the businesses at the Home Avenue Operations will be sold or closed;

- ~~A~~ implementation of a workforce transition program~~, excluding buy-downs, is implemented~~ for eligible USW-represented employees ~~that provides eligible employees with transformation plan options~~; modification of certain terms of the USW CBAs; and provisions for resolution of claims, including ~~attrition options similar to the previously-approved UAW and IUE-CWA attrition programs (see USW Home Avenue Settlement Agreement Attachment C, USW-Delphi-GM Special Attrition Program-Transformation);~~

- ~~Certain terms of the USW CBAs are modified with respect to provisions covering Plant Closing~~waivers ~~and Sale Moratorium, Sourcing, Job Security (Job Opportunity Bank (JOBS) Program), AOL, COLA, Independence Week Pay, Vacation Entitlement, Joint Activities funding, tuition assistance, Guaranteed Income Stream, benefits, temporary employees, and holidays; and~~

~~All~~ releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for rights, if any, to vested pension benefits, workers' compensation benefits, unemployment compensation benefits, future claims arising out of the modified USW CBAs, and pending ordinary course grievances of employees remaining in the workforce).  ~~Effective upon the execution~~

Other terms of the USW Home Avenue Settlement Agreement have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization which incorporates, approves, and is consistent with, among other things, all the terms of the USW Home Avenue Settlement Agreement as approved by ~~Delphi and GM of a~~the Court and the comprehensive settlement ~~agreement resolving certain financial, commercial, and other matters~~agreements between Delphi and GM ~~and substantial consummation of a plan of reorganization proposed~~.  The Plan, if approved by ~~Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the USW Home Avenue Settlement Agreement and Delphi-GM settlement~~the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the USW Home Avenue Settlement Agreement that was reached and ratified last summer.  Among other terms, those terms include:

-4-

- Delphi's obligation to provide certain retiree welfare benefits ~~is~~will be eliminated and GM ~~is~~will be obligated to provide certain retiree welfare benefits for certain USW-represented employees covered as provided in the Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans ~~is~~will be effectuated pursuant to Internal Revenue Code Section 414(l);

- Delphi's existing pension plan ~~is~~will be frozen in certain respects ~~effective upon emergence from chapter 11~~ and GM ~~is~~will be obligated to pay certain benefits for certain USW-represented employees covered as provided in Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee;

- The USW will receive an allowed general unsecured prepetition claim in the amount of $3 million against Delphi in complete settlement of all asserted and unasserted USW claims, including without limitation asserted and unasserted claims of current and former Vandalia Operations bargaining unit members.  The proceeds realized by the USW and/or the voluntary employees' beneficiary association ("VEBA") trust, to be established by an entity other than GM, Delphi, or their respective benefit plans, will be contributed directly to the VEBA trust to provide certain retiree welfare benefits to certain eligible employees and retirees, including certain current or future participants in the Delphi Hourly Rate Employee Pension Plan or the GM Hourly Rate Employee Pension Plan, and their dependents;

- The amount of $9 million will be paid by GM to the VEBA in resolution of certain claims asserted by the USW, including in connection with the modification of retiree benefit programs, and without any acknowledgment by either GM or Delphi of those claims;

- The USW Home Avenue Memorandum of Understanding (including the USW CBAs) ~~is~~will be assumed pursuant to 11 U.S.C. § 365;

- The USW released parties ~~are~~will be exculpated and released in connection with the USW Home Avenue Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above,** Delphi and GM ~~receive releases from the USW,~~ **will be released by the USW,** all employees and former

employees of Delphi represented or formerly represented by the USW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the USW and between GM and the USW (except for claims for benefits provided for or explicitly not waived under the USW Home Avenue Memorandum of Understanding, including, but not limited to, workers' compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).

### USW Vandalia Settlement Agreement

~~The~~Several terms of the USW Vandalia Settlement Agreement ~~provides, among other terms,~~ have gone into effect based on the Court's approval of ~~that~~:

- ~~agreement and the USW's ratification of that agreement.~~ The terms already in effect include, among others, an extension of the USW collective bargaining agreements ("CBAs ~~are extended~~") until September 14, 2011;

- ~~A~~ implementation of a site plan ~~is implemented~~ with respect to the Vandalia Thermal Operation ~~for which it is necessary to achieve an all-in blended labor wage and benefit rate of $19.57 per hour as soon as possible~~; implementation of a workforce transition program for eligible USW-represented employees; modification of certain terms of the USW CBAs; and ~~maintain that rate~~ provisions for ~~the life of the Vandalia local agreement; otherwise failure to accomplish~~ resolution of claims, including waivers and ~~maintain this all-in blended wage and benefit rate will result in the Vandalia Thermal Operations being closed during the term of the Vandalia local agreements;~~

- ~~A workforce transition program is implemented for eligible USW-represented employees~~ releases such that ~~provides eligible employees with transformation plan buy out options, similar to the previously-approved UAW and IUE-CWA attrition programs (see USW Vandalia Settlement Agreement, Section C, Special Attrition Program);~~

- ~~Certain terms of the USW CBAs are modified with respect to provisions covering Guaranteed Income Stream, benefits, vacation accrual, holidays, Income Security Plan, Joint Activities funding, Independence Week Pay, COLA, Shift Premium, AOL, and overtime; and~~

~~All~~all employee, retiree, and union asserted and unasserted claims are settled (except for rights, if any, to vested pension benefits, workers' compensation benefits, unemployment compensation benefits, future claims arising out of the modified USW CBAs, and pending ordinary course grievances of employees remaining in the workforce).

~~Effective upon~~
Other terms of the USW Vandalia Settlement Agreement have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization which incorporates, approves, and is consistent with, among other things, all the terms of the USW Vandalia Settlement Agreement as approved by the ~~execution by Delphi~~Court and ~~GM of a~~ the comprehensive settlement ~~agreement resolving certain financial, commercial, and other matters~~agreements between Delphi and GM ~~and substantial~~

-7-

consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed. The Plan, if approved by this the Court which incorporates, approves, at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and is consistent with all triggers the effectiveness of the remaining terms of the USW Vandalia Settlement Agreement that was reached and Delphi-GM settlement: ratified last summer.  Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits is will be eliminated and GM is will be obligated to provide certain retiree welfare benefits for certain USW-represented employees covered as provided in the Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans is will be effectuated pursuant to Internal Revenue Code Section 414(l);

- Delphi's existing pension plan is will be frozen in certain respects effective upon emergence from chapter 11 and GM is will be obligated to pay certain benefits for certain USW-represented employees covered as provided in Term Sheet – Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee;

- The USW asserted and unasserted claims are will be resolved pursuant to Section F.2 and F.3 of the USW Home Avenue Settlement Agreement;

- The USW Vandalia Memorandum of Understanding (including the USW CBAs) is will be assumed pursuant to 11 U.S.C. § 365;

- The USW released parties are will be exculpated and released in connection with the USW Vandalia Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above,** Delphi and GM receive releases from **will be released by the USW, all employees and former employees of Delphi represented or formerly represented by the USW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements between Delphi and the USW and between GM and the USW (except for claims for benefits provided for or explicitly not waived under the USW Vandalia Memorandum of Understanding).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, USW Home Avenue Settlement Agreement, and USW Vandalia Settlement Agreement and is qualified entirely by and is subject to the actual terms and conditions of those documents.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, USW Home Avenue Settlement Agreement, and USW Vandalia Settlement Agreement, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:        New York, New York
              ~~October 12~~December --,
              2007

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                        By:    _____
                               John Wm. Butler, Jr. (JB 4711)
                               George N. Panagakis (GP 0770)
                               Ron E. Meisler (RM 3026)
                               Nathan Stuart (NS 7872)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois 60606

                                - and -

                        By:    _____
                               Kayalyn A. Marafioti (KM 9632)
                               Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036

                                - and-

                        O'MELVENY & MYERS LLP

                        ~~By:~~   _____
                        By:    _____
                               Tom A. Jerman (TJ 1129)
                               Jessica Kastin (JK 2288)
                        1625 Eye Street, NW
                        Washington, DC 20006

                        Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession

-9-

Exhibit H -- IUE-CWA Notice

**A Complete Copy Of Delphi's ~~Court Papers, Including The~~ Disclosure Statement~~, and~~ Plan ~~And Memorandum Of Understanding~~,of Reorganization Can Be Obtained At www.Delphidocket.com Or By Calling 1--888--249--2691**

---

**This is a notice which may affect you as a ~~present~~current or former employee of Delphi:**

**The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page ~~5.~~4.**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                                        :        Chapter 11
:
DELPHI CORPORATION, et al.,                                  :        Case No. 05-44481 (RDD)
:
Debtors.             :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MEMORANDUM OF UNDERSTANDING AMONG IUE-CWA, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF IUE-CWA COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IUE-CWA-REPRESENTED RETIREES~~

**NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN**

**Information For IUE-CWA-Represented
Employees And Retirees Of Delphi Corporation**

~~On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and debtors in possession ("Delphi"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among IUE-CWA, Delphi, and General Motors Corporation, Including Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits For Certain IUE-CWA-Represented Retirees, which sought approval from the United States Bankruptcy Court for the Southern District of New York (the "Court") of a memorandum of understanding dated August 5, 2007 (the "Agreement"~~

or "Memorandum of Understanding") among Delphi, GM,[1] and the IUE-CWA regarding Delphi's restructuring.

On August 16, 2007, the Court approved the Agreement, which was ratified by the IUE-CWA as of August 20, 2007.

On September 6, 2007, Delphi filed with the Court (a) the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement").

**The Agreement provides that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan proposes, that Delphi and GM will receive releases from the IUE-CWA and all employees and former employees of Delphi represented or formerly represented by the IUE-CWA as described more fully below.**

**Article 11.13 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person to collect or recover any claim or interest released under the Plan.**

The Agreement provides, among other terms, that:

- The terms of the IUE-CWA CBAs are extended until October 12, 2011;

- A site plan is implemented with respect to each of 7 IUE-CWA Delphi plants which includes, at certain sites, certain revenue program and production commitments from Delphi and/or GM and pursuant to which Delphi will retain ownership and operations in three facilities, two facilities will be sold or transferred to a third party, and two facilities will be closed;

- A workforce transition program is implemented for certain IUE-CWA represented employees that provides eligible employees with transformation plan options including  (1) attrition options, similar to the previously approved IUE-CWA attrition program, (2) special employee placement opportunities at General Motors Corporation for eligible Delphi employees who do not elect the attrition options, including relocation allowances of up to $67,000 in certain circumstances when specific plants cease production, (3) provision of various lump sum "buy-down" payment options totaling up to $105,000 for certain eligible production employees who do not elect an attrition option or become employed by GM and continue to work

---

[1]   Capitalized terms used and not defined in this informational notice have the meanings set forth in the Agreement.

for Delphi under the terms of the Agreement, and (4) severance payments which can total up to $40,000 to certain eligible employees at specified sites who are permanently laid off prior to October 12, 2011;

- Certain terms of the IUE-CWA CBAs are modified with respect to wages and benefits for certain employees including vacation entitlement, life insurance, extended disability benefits, supplemental unemployment benefits, paid holidays, and healthcare;

- Certain terms of the IUE-CWA CBAs are modified with respect to provisions covering hiring requirements, existing JAC/Legal Services, temporary employees, Appendix F, GIS, AOL, LJISA, and other matters described in Attachment E to the Memorandum of Understanding;

- Local negotiations for all Keep and Footprint sites conducted concurrently with the negotiations resulting in the Agreement are final and binding upon ratification of the Agreement;

- All employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and pending ordinary course grievances of employees remaining in the workforce); and

- The IUE GM National Joint Skill Development and Training Committee will quitclaim any rights to the JAC Building to the IUE-CWA International or to an agreed upon not-for-profit entity.

Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the Agreement and Delphi-GM settlement:

- Delphi's obligation to provide certain retiree welfare benefits is eliminated and GM is obligated to provide certain retiree welfare benefits for certain IUE-CWA represented employees covered as provided in the Benefit Guarantee Term Sheet;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans is effectuated pursuant to Internal Revenue Code Section 414(l);

- Delphi's existing pension plan is frozen in certain respects effective upon emergence from chapter 11 and GM is obligated to pay certain benefits for certain IUE-CWA represented employees covered as provided in the Benefit Guarantee Term Sheet;

On August 16, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved a Memorandum Of Understanding Among The IUE-CWA,[2] Delphi Corporation And Certain Of Its Affiliated Debtors And Debtors-in-Possession ("Delphi"), and General Motors Corporation ("GM"), Including Modification Of IUE-CWA Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUE-CWA-Represented Retirees, dated August 5, 2007 (the "Agreement" or "Memorandum of Understanding"). The IUE-CWA ratified the Agreement as of August 20, 2007.  On or about August 7, 2007, you received an informational notice that summarized certain terms of the Agreement.

On December __, 2007 the Court approved Delphi's disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan").  **The Disclosure Statement and Plan filed by Delphi are consistent in all respects with the Memorandum of Understanding that was negotiated between Delphi, the IUE-CWA and GM, ratified by the IUE-CWA membership, and approved by the Court.**  The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time).  January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

Several terms of the Memorandum of Understanding have gone into effect based on the Court's approval of the Agreement and the IUE-CWA's ratification of the Agreement. The terms already in effect include, among others, an extension of the IUE-CWA collective bargaining agreements ("CBAs") until October 12, 2011; implementation of site plans with respect to each of 7 IUE-CWA-Delphi plants; implementation of a workforce transition program for certain IUE-CWA-represented employees; modification of certain terms of the IUE-CWA CBAs; concurrent local negotiations for all Keep and Footprint sites; provisions for resolution of claims, including waivers and releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and pending ordinary course grievances of employees remaining in the workforce); and establishment that the IUE-GM National Joint Skill Development and Training Committee will quitclaim any rights to the JAC Building to the IUE-CWA International or to an agreed upon not-for-profit entity.

**The Agreement provides that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan provides, that Delphi and GM will be released by the IUE-CWA and all employees and former employees of Delphi represented or formerly represented by the IUE-CWA.**

**Article 11.14 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person commencing or continuing any action or act to collect or recover any claim or interest released under the Plan.**

---

[2]  Capitalized terms used and not defined in this informational notice have the meanings set forth in the Agreement.

Other terms of the Memorandum of Understanding have not yet gone into effect. Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization which incorporates, approves, and is consistent with, among other things, all the terms of the Memorandum of Understanding as approved by the Court and the comprehensive settlement agreements between Delphi and GM. The Plan, if approved by the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the Memorandum of Understanding that was reached and ratified last summer. Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits will be eliminated and GM will be obligated to provide certain retiree welfare benefits for certain IUE-CWA-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- A transfer of certain pension assets and liabilities from Delphi's pension plans to GM's pension plans will be effectuated pursuant to Internal Revenue Code Section 414(l);

- Delphi's existing pension plan will be frozen in certain respects and GM will be obligated to pay certain benefits for certain IUE-CWA-represented employees covered as provided in the Benefit Guarantee Term Sheet;

- The IUE-CWA will receive an allowed general unsecured prepetition claim against Delphi in the amount of $126 million in complete settlement of all asserted and unasserted IUE-CWA claims, including, but not limited, to IUE-CWA/Delphi Joint Activities Center (the "JAC") asserted and unasserted claims ("the Allowed Claim"). The proceeds realized by the IUE-CWA and/or the voluntary employees' beneficiary association ("VEBA") trust, from a $26 million dollar portion of the Allowed Claim, will be paid directly to the VEBA trust to be established and sponsored by the IUE-CWA to provide supplemental retiree health insurance to certain eligible Delphi employees and their dependents; the proceeds realized by the IUE-CWA and/or the VEBA trust, from a $90 million dollar portion of the Allowed Claim, will be paid directly to a VEBA trust to be established and sponsored by the IUE-CWA for the purpose of funding employee benefits for active and retired employees and their dependents; and the proceeds realized by the IUE-CWA and/or a VEBA trust, from a $10 million dollar portion of the Allowed Claim, will be paid directly to the successor to the JAC entity which will be established and administered by the IUE-CWA;

- The Memorandum of Understanding (including the IUE-CWA CBAs) iswill be assumed pursuant to 11 U.S.C. § 365;

- The IUE-CWA released parties ~~are~~will be exculpated and released in connection with the Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above, Delphi and GM ~~receive releases from~~will be released by the IUE-CWA, all employees and former employees of Delphi represented or formerly represented by the IUE-CWA, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the Memorandum of Understanding, including, but not limited to, workers' compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, and Memorandum of Understanding and is qualified entirely by and is subject to the actual terms and conditions of those documents.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, and Memorandum of Understanding, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:          New York, New York
                October 12December --,
                2007

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP

                          By:    _____
                                 ——John Wm. Butler, Jr. (JB 4711)
                                 ——George N. Panagakis (GP 0770)
                                 ——Ron E. Meisler (RM 3026)
                                 ——Nathan Stuart (NS 7872)
                          -333 West Wacker Drive, Suite 2100
                          -Chicago, Illinois 60606

                                        - and -

                          By:    _____
                                 Kayalyn A. Marafioti (KM 9632)
                                 Thomas J. Matz (TM 5986)
                          -Four Times Square
                          -New York, New York 10036

                                        - and-

                          O'MELVENY & MYERS LLP

                          By: _____
                          -By: _____

                                 Tom A. Jerman (TJ 1129)
                          -      Jessica Kastin (JK 2288)
                          1625 Eye Street, NW
                          Washington, DC 20006

                          Attorneys for Delphi Corporation, et al.,
                            Debtors and Debtors-in-Possession

Exhibit I -- IAM Notice

A Complete Copy Of Delphi's ~~Court Papers, Including The~~ Disclosure Statement~~,~~ **, and** Plan ~~And Memorandum Of Understanding,~~ **of Reorganization** Can Be Obtained At www.Delphidocket.com Or By Calling 1~~-~~-888~~-~~-249~~-~~-2691

~~This is a notice which may affect you as a present or former employee of Delphi:~~

**This is a notice which may affect you as a current or former employee of Delphi:**

The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page 4.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MEMORANDUM OF UNDERSTANDING AMONG IAM, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF IAM COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IAM-REPRESENTED RETIREES~~

**NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN**

Information For IAM-Represented
Employees And Retirees Of Delphi Corporation

~~On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and debtors-in-possession ("Delphi"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I)~~ **On August 16, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved six** Memoranda Of Understanding Among ~~IUOE, IBEW, IAM~~ **the international union and/or certain local unions affiliated with the International Association of Machinists and Aerospace Workers, the International Brotherhood of Electrical Workers, and the International Union of Operating Engineers, respectively,** Delphi~~,~~ **Corporation And** **Certain Of Its Affiliated Debtors And Debtors-in-Possession ("Delphi"), and** General Motors Corporation **("GM"),** Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree

Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees ~~And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees, which sought approval from the United States Bankruptcy Court for the Southern District of New York (the "Court") of six memoranda of understanding~~ dated July 31 and August 1, 2007 (the "Settlement Agreements"~~) among Delphi, GM, [1] and the international union and/or certain local unions affiliated with the International Association~~"). One ~~of Machinists and Aerospace Workers, the International Brotherhood of Electrical Workers, and the International Union of Operating Engineers, respectively, regarding Delphi's restructuring as well as Court approval of modification of retiree welfare benefits for certain non-represented hourly active employees and retirees and a term sheet between GM and Delphi regarding such modification.~~

~~On August 16, 2007, the Court approved~~ the Settlement Agreements~~, including the IAM Settlement Agreement~~ dated July 31, 2007, ~~which~~ pertains to the IAM (the "IAM Settlement Agreement"),[2] and was ratified by the IAM as of August 4, 2007. On or about August 7, 2007, you received an informational notice that summarized certain terms of that agreement.

~~The IAM Settlement Agreement provides that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan proposes, that Delphi and GM will receive releases from the IAM and all employees and former employees of Delphi represented or formerly represented by the IAM as described more fully below.~~

~~Article 11.13 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person to collect or recover any claim or interest released under the Plan.~~

On ~~September 6~~December ___, 2007, ~~Delphi filed with the Court (a) the~~ the Court approved Delphi's disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan ~~Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the Disclosure Statement with respect to the Plan~~ of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-~~in~~In-Possession (~~as subsequently amended, supplemented, or otherwise modified, the "~~the "Plan"). **The** Disclosure Statement~~").~~

**and Plan filed by Delphi are consistent in all respects with the Memorandum of Understanding that was negotiated between Delphi, IAM and GM, ratified by the IAM membership, and approved by the Court.** The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time). January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

---

[1] ~~Capitalized terms used and not defined in this informational notice have the meanings set forth in the Settlement Agreements.~~

[2] Capitalized terms used and not defined in this informational notice have the meanings set forth in the IAM Settlement Agreement.

Several terms of the IAM Settlement Agreement have gone into effect based on the Court's approval of that agreement and the IAM's ratification of the IAM Settlement Agreement, among other subject matters, provides that:

- .  The IAM, Delphi, and GM acknowledge terms already in effect include, among others, an acknowledgement that the Delphi Electronics & Safety – Milwaukee operation is scheduled to be closed;

- The term an extension of the 2003 IAM – Delphi Electronics & Safety – Milwaukee Operations Agreements and all related agreements and understandings are extended (the "IAM CBAs") until September 14, 2011, subject to their termination provisions;

- A implementation of a workforce transition program is implemented for eligible IAM-represented employees; modification of certain terms of the IAM CBAs; and provisions for resolution of claims, including waivers and releases such that provides eligible employees with transformation plan options including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program for eligible IAM employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of the IAM CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, Plant Closing and Sale Moratorium, GIS, job security and/or guaranteed employment levels, tuition assistance, subsidized discount programs, strikes, and stoppages; and

All all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed **The IAM Settlement Agreement provides that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan provides, that Delphi and GM will be released** by this Court **the IAM and all employees and former employees of Delphi represented or formerly represented by the IAM.**

**Article 11.14 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person commencing or continuing any action or act to collect or recover any claim or interest released under the Plan.**

-3-

Other terms of the IAM Settlement Agreement have not yet gone into effect. Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization which incorporates, approves, and is consistent with, among other things, all of the terms of the IAM Settlement Agreement as approved by the Court and Delphi GMthe comprehensive settlement agreements between Delphi and GM. The Plan, if approved by the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the IAM Settlement Agreement that was reached and ratified last summer. Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits iswill be eliminated and GM iswill be obligated to provide certain retiree welfare benefits for certain IAM-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan iswill be frozen in certain respects effective upon emergence from chapter 11 for certain covered IAM-represented employees as provided in Section D.2 of the IAM Settlement Agreement;

- The IAM Memorandum of Understanding (including certain IAM CBAs) iswill be assumed pursuant to 11 U.S.C. § 365;

- The IAM released parties arewill be exculpated and released in connection with the IAM Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above,** **Delphi and GM** receive releases fromwill be released by **the IAM, all employees and former employees of Delphi represented or formerly represented by the IAM, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IAM Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IAM Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, and IAM Settlement Agreement and is qualified entirely by and is subject to the actual terms and conditions of those documents.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, and IAM Settlement Agreement, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:          New York, New York
                ~~October 12~~December --,
                2007

                          SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                By:    _____
                          ~~John Wm. Butler, Jr. (JB 4711)~~
                          ~~George N. Panagakis (GP 0770)~~
                          ~~Ron E. Meisler (RM 3026)~~
                          ~~Nathan Stuart (NS 7872)~~
                       333 West Wacker Drive, Suite 2100
                       Chicago, Illinois 60606

                                - and -

                By:    _____
                          Kayalyn A. Marafioti (KM 9632)
                          Thomas J. Matz (TM 5986)
                       Four Times Square
                       New York, New York 10036

                                - and-

                       O'MELVENY & MYERS LLP

                By:    _____
                          Tom A. Jerman (TJ 1129)
                          Jessica Kastin (JK 2288)
                       1625 Eye Street, NW
                       Washington, DC 20006

                       Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession

-5-

Exhibit J -- IBEW Notice

A Complete Copy Of Delphi's ~~Court Papers, Including The~~ Disclosure Statement, and Plan ~~And Memoranda Of Understanding,~~ of Reorganization Can Be Obtained At www.Delphidocket.com Or By Calling 1- 888- 249- 2691

---

~~This is a notice which may affect you as a present or former employee of Delphi:~~

**This is a notice which may affect you as a current or former employee of Delphi:**

**For A Summary Of The Relief Sought Regarding Members Of:**
**IBEW (Electronics & Safety): See Pages 3 & 4**
**IBEW (Powertrain): See Pages 5 & 6**

**The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page 7.**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MEMORANDA OF UNDERSTANDING AMONG IBEW, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF IBEW COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IBEW-REPRESENTED RETIREES~~

**NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN**

**Information For IBEW-Represented**
**Employees And Retirees Of Delphi Corporation**

~~On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and debtors-in-possession ("Delphi"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I)~~ On August 16, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved six Memoranda Of Understanding Among ~~IUOE, IBEW, IAM~~ the international union and/or

certain local unions affiliated with the International Association of Machinists and Aerospace Workers, the International Brotherhood of Electrical Workers, and the International Union of Operating Engineers, respectively, Delphi, Corporation And Certain Of Its Affiliated Debtors And Debtors-in-Possession ("Delphi"), and General Motors Corporation ("GM"), Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees, which sought approval from the United States Bankruptcy Court for the Southern District of New York (the "Court") of six memoranda of understanding dated July 31 and August 1, 2007 (the "Settlement Agreements") among "). Two of the Settlement Agreements pertain to the IBEW,[1] the first relates to Delphi Electronics and Safety (the "IBEW E&S Settlement Agreement" or the "IBEW E&S Memorandum of Understanding") and the second relates to Delphi, GM,[2] and the international union and/or certain local unions affiliated with the International Association of Machinists and Aerospace Workers, the International Brotherhood of Electrical Workers, and the International Union of Operating Engineers, respectively, regarding Powertrain (the "IBEW Powertrain Settlement Agreement" or the "IBEW Powertrain Memorandum of Understanding"). These IBEW Settlement Agreements were ratified by the IBEW as of August 4, 2007. On or about August 7, 2007, you received an informational notice that summarized certain terms of these agreements.

On December ___, 2007 the Court approved Delphi's restructuring as well as Court approval of modification of retiree welfare benefits for certain non-represented hourly active employees and retirees and a term sheet between GMdisclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"). **The Disclosure Statement** and Delphi regarding such modification.

On August 16, 2007, the **Plan filed by Delphi are consistent in all respects with the Memorandum of Understanding that was negotiated between Delphi, the IBEW and GM, ratified by IBEW membership, and approved by the** Court approved the Settlement Agreements, including the IBEW Settlement Agreements dated July 31, 2007, which were ratified by the IBEW as of August 4, 2007. The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time). January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

The IBEW **E&S** Settlement Agreements**Agreement and the IBEW Powertrain Settlement Agreement** provide that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan proposes**provides**, that Delphi and GM will receive releases from**be released by** the IBEW and all employees and former employees of Delphi represented or formerly represented by the IBEW as described more fully below**.**

_____

[1]    Capitalized terms used and not defined in this informational notice have the meanings set forth in the IBEW Settlement Agreements.

[2]    Capitalized terms used and not defined in this informational notice have the meanings set forth in the Settlement Agreements.

——————————Article 11.14 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person **commencing or continuing any action or act** to collect or recover any claim or interest released under the Plan.

On September 6, 2007, Delphi filed with the Court (a) the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement").

A summary of certain terms of the IBEW E&S Settlement AgreementsAgreement and the IBEW Powertrain Settlement Agreement follows:

## IBEW (Electronics & Safety)

~~The~~ Several terms of the IBEW E&S Settlement Agreement~~, among other subject matters, provides~~ have gone into effect based on the Court's approval of that~~:~~

- ~~The IBEW, Delphi,~~ agreement ~~and GM acknowledge~~the IBEW's ratification of that agreement.  The terms already in effect include, among others, an acknowledgement that the Delphi Electronics & Safety – Milwaukee operation is scheduled to be closed;

- ~~The term~~ an extension of the 2003 IBEW – Delphi E&S Agreements and all related agreements and understandings ~~are extended~~(the "IBEW CBAs") until September 14, 2011, subject to their termination provisions;

- ~~A~~ implementation of a workforce transition program ~~is implemented~~ for eligible IBEW-represented employees ~~that provides eligible employees with transformation plan options, including (i) attrition options similar to the previously-approved UAW and IUE-CWA attrition program~~; modification of certain terms of the IBEW CBAs; and provisions for ~~eligible IBEW employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;~~

- ~~Certain terms of the IBEW CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, Plant Closing and Sale Moratorium, GIS, job security~~resolution of claims, including waivers and ~~/or guaranteed employment levels, tuition assistance, subsidized discount programs, strikes, and stoppages; and~~

~~All employee~~ releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims). ~~Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of a~~ Other terms of the IBEW E&S Settlement Agreement have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization ~~proposed by Delphi in its chapter 11 cases and confirmed by this Court~~ which incorporates, approves, and is consistent with, among other things, all ~~of~~ the terms of the IBEW E&S Settlement Agreement as approved by the Court and ~~Delphi GM~~the comprehensive settlement agreements between Delphi and GM.  The Plan, if approved by the

Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the IBEW E&S Settlement Agreement that was reached and ratified last summer. Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits ~~is~~will be eliminated and GM ~~is~~will be obligated to provide certain retiree welfare benefits for certain IBEW-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan ~~is~~will be frozen in certain respects effective upon emergence from chapter 11 for certain covered IBEW-represented employees as provided in Section D.2 of the IBEW E&S Settlement Agreement;

- The IBEW E&S Memorandum of Understanding (including certain IBEW CBAs) ~~is~~will be assumed pursuant to 11 U.S.C. § 365;

- The IBEW released parties ~~are~~will be exculpated and released in connection with the IBEW E&S Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above, Delphi and GM ~~receive releases from~~will be released by the IBEW, all employees and former employees of Delphi represented or formerly represented by the IBEW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IBEW E&S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IBEW E&S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

## IBEW (Powertrain)

~~The~~Several terms of the IBEW Powertrain Settlement Agreement~~, among other subject matters, provides~~ have gone into effect based on the Court's approval of ~~that~~:

- ~~The IBEW, Delphi,~~ agreement and ~~GM acknowledge~~the IBEW's ratification of that agreement.  The terms already in effect include, among others, an acknowledgement that the Delphi Powertrain – Milwaukee operation is scheduled to be closed;

- ~~The term~~ an extension of the 2003 IBEW – Delphi Powertrain (formerly Delphi E&C) – Milwaukee Operations Agreements and all related agreements and understandings ~~are extended~~(the "IBEW CBAs") until September 14, 2011, subject to their termination provisions;

- ~~A~~ implementation of a workforce transition program ~~is implemented~~ for eligible IBEW-represented employees ~~that provides eligible employees with transformation plan options~~; modification of certain terms of the IBEW CBAs; and provisions for resolution of claims, including ~~(i) attrition options similar to the previously approved UAW and IUE-CWA attrition program for eligible IBEW employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees,~~waivers and ~~(iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;~~

- ~~Certain terms of the IBEW CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, Plant Closing Restrictions, GIS, job security and/or guaranteed employment levels, tuition assistance, subsidized discount programs, strikes, and stoppages; and~~

~~All~~ releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

~~Effective upon the execution~~

 Other terms of the IBEW Powertrain Settlement Agreement have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization which incorporates, approves, and is consistent with, among other things, all the terms of the IBEW Powertrain Settlement Agreement as approved by ~~Delphi and GM of a~~the Court and the comprehensive settlement ~~agreement resolving certain financial, commercial, and other matters~~ agreements between Delphi and GM ~~and substantial consummation of a plan of reorganization proposed by Delphi in its chapter 11 cases and confirmed by this Court which incorporates, approves, and is consistent with all of the terms of the IBEW Powertrain Settlement Agreement and Delphi-GM settlement~~.  The Plan, if approved by the Court at the

Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the IBEW Powertrain Settlement Agreement that was reached and ratified last summer.  Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits ~~is~~will be eliminated and GM ~~is~~will be obligated to provide certain retiree welfare benefits for certain IBEW-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan ~~is~~will be frozen in certain respects effective upon emergence from chapter 11 for certain covered IBEW-represented employees as provided in Section D.2 of the IBEW Powertrain Settlement Agreement;

- The Memorandum of Understanding (including certain IBEW CBAs) ~~is~~will be assumed pursuant to 11 U.S.C. § 365;

- The IBEW released parties ~~are~~will be exculpated and released in connection with the IBEW Powertrain Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above, Delphi and GM ~~receive releases from~~will be released by the IBEW, all employees and former employees of Delphi represented or formerly represented by the IBEW, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IBEW Powertrain Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IBEW Powertrain Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, and IBEW Settlement Agreements and is qualified entirely by and is subject to the actual terms and conditions of those documents.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, and IBEW Settlement Agreements, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:          New York, New York
                December ——,—- 2007

                                SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM LLP

                                By:    _____
                                         ——— John Wm. Butler, Jr. (JB 4711)
                                         ——— George N. Panagakis (GP 0770)
                                         ——— Ron E. Meisler (RM 3026)
                                         ——— Nathan Stuart (NS 7872)
                                -333 West Wacker Drive, Suite 2100
                                -Chicago, Illinois 60606

                                        - and -

                                By:    _____
                                         Kayalyn A. Marafioti (KM 9632)
                                         Thomas J. Matz (TM 5986)
                                -Four Times Square
                                -New York, New York 10036

                                        - and-

                                O'MELVENY & MYERS LLP

                                By:    _____
                                -      Tom A. Jerman (TJ 1129)
                                -      Jessica Kastin (JK 2288)
                                1625 Eye Street, NW
                                Washington, DC 20006

                                Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

—8—

Exhibit K -- IUOE Notice

**A Complete Copy Of Delphi's** ~~Court Papers, Including The~~ **Disclosure Statement**, and **Plan** ~~And Memoranda Of Understanding~~, of Reorganization **Can Be Obtained At www.Delphidocket.com Or By Calling 1**-- **888**- -**249**- -**2691**

~~This is a notice which may affect you as a present or former employee of Delphi:~~

This is a notice which may affect you as a current or former employee of Delphi:

**For A Summary Of The Relief Sought Regarding Members Of:**
**IUOE Local 18S: See Pages 3 & 4**
**IUOE Local 101S: See Pages 5 & 6**
**IUOE Local 832S: See Pages 7 & 8**

**The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page 9.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re                                         :        Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :        Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MEMORANDA OF UNDERSTANDING AMONG IUOE, DELPHI, AND GENERAL MOTORS CORPORATION INCLUDING MODIFICATION OF IUOE COLLECTIVE BARGAINING AGREEMENTS AND RETIREE WELFARE BENEFITS FOR CERTAIN IUOE-REPRESENTED RETIREES~~

NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN

**Information For IUOE-Represented**
**Employees And Retirees Of Delphi Corporation**

~~On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and debtors-in-possession ("Delphi"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of~~

IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees, which sought approval from the United States Bankruptcy Court for the Southern District of New York (the "Court") of six memoranda of understanding dated July 31 and August 1, 2007 (the "Settlement Agreements") among Delphi, GM,[+] and the international union and/or certain local unions affiliated with the International Association of Machinists and Aerospace Workers, the International Brotherhood of Electrical Workers, and the International Union of Operating Engineers, respectively, regarding Delphi's restructuring as well as Court approval of modification of retiree welfare benefits for certain non-represented hourly active employees and retirees and a term sheet between GM and Delphi regarding such modification.

On August 16, 2007, the Court approved the Settlement Agreements, including those relating to the International Union of Operating Engineers Local 18S, dated August 1, 2007, the International Union of Operating Engineers Local 101S, dated August 1, 2007, and the International Union of Operating Engineers Local 832S (collectively, with the International Union of Operating Engineers Local 18S and the International Union of Operating Engineers Local 101S, the "IUOE"), dated August 1, 2007.   The Settlement Agreements relating to Local 832S and Local 18S were ratified, respectively, as of August 9 and August 10, 2007, and the Settlement Agreement relating to Local 101S did not require ratification because there were no active bargaining unit members at the Olathe International Union of Operating Engineers Local 101S site.

**The IUOE Settlement Agreements provide that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan proposes, that Delphi and GM will receive releases from the IUOE and all employees and former employees of Delphi represented or formerly represented by the IUOE as described more fully below.**

**Article 11.13 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person to collect or recover any claim or interest released under the Plan.**

On September 6, 2007, Delphi filed with the Court (a) the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the Disclosure Statement with respect to the Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement").

On August 16, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Court") approved six Memoranda Of Understanding Among the international union and/or certain local unions affiliated with the International Association of Machinists and Aerospace Workers, the International Brotherhood of Electrical Workers, and the International Union of Operating Engineers, respectively, Delphi Corporation And Certain Of Its Affiliated Debtors And Debtors-in-Possession ("Delphi"), and General Motors Corporation ("GM"), Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And

---

[+]   Capitalized terms used and not defined in this informational notice have the meanings set forth in the Settlement Agreements.

Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees dated July 31 and August 1, 2007 (the "Settlement Agreements").  Three of the Settlement Agreements pertain to the International Union of Operating Engineers Local 18S, the International Union of Operating Engineers Local 101S, and the International Union of Operating Engineers Local 832S (collectively, with the International Union of Operating Engineers Local 18S and the International Union of Operating Engineers Local 101S, the "IUOE"), each dated August 1, 2007 (the "IUOE Settlement Agreements").[2]  The IUOE Settlement Agreements relating to Local 832S and Local 18S were ratified, respectively, as of August 9 and August 10, 2007, and the IUOE Settlement Agreement relating to Local 101S did not require ratification because there were no active bargaining unit members at the Olathe International Union of Operating Engineers Local 101S site.  On or about August 7, 2007, you received an informational notice that summarized certain terms of these agreements.

On December __, 2007 the Court approved Delphi's disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan").  **The Disclosure Statement and Plan filed by Delphi are consistent in all respects with the Memorandum of Understanding that was negotiated between Delphi, IUOE and GM, ratified by applicable IUOE membership, and approved by the Court.**  The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time).  January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

**The IUOE Settlement Agreements provide that upon confirmation of the Plan by the Court, and Article 11.6 of the Plan provides, that Delphi and GM will be released by the IUOE and all employees and former employees of Delphi represented or formerly represented by the IUOE.**

**Article 11.14 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person commencing or continuing any action or act to collect or recover any claim or interest released under the Plan.**

A summary of certain terms of the IUOE Settlement Agreements follows:

---

[2]    Capitalized terms used and not defined in this informational notice have the meanings set forth in the IUOE Settlement Agreements.

## IUOE Local 18S

The Several terms of the IUOE Local 18S Settlement Agreement, among other subject matters, provides have gone into effect based on the Court's approval of that:

- The IUOE Local 18S, Delphi, agreement and GM acknowledge the IUOE's ratification of that agreement.  The terms already in effect include, among others, an acknowledgement that the Delphi Thermal & Interior – Columbus operation is scheduled to be closed;

- The term an extension of the 2003 IUOE Local 18S – Delphi Agreements and all related agreements and understandings are extended (the "IUOE CBAs") until September 14, 2011, subject to their termination provisions;

- A implementation of a workforce transition program is implemented for eligible IUOE Local 18S-represented employees that provides eligible employees with transformation plan options including (i) attrition options similar to the previously approved UAW and IUE-CWA attrition program; modification of certain terms of the IUOE CBAs; potential eligibility for eligible IUOE Local 18S employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 a relocation allowance based on actual expenses incurred, up to a maximum of $10,000; and provisions for eligible employees, resolution of claims, including waivers and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;

- Certain terms of certain IUOE CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, GIS, job security and/or guaranteed employment levels, Plant Closing and Sale Moratorium, subsidized discount programs, tuition assistance, and representation;

- On a case-by-case basis, Delphi employees transferring from a Delphi plant to another Delphi plant may be eligible for a Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000; and

All releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).

~~Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of~~ Other terms of the IUOE Local 18S Settlement Agreement have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization ~~proposed by Delphi in its chapter 11 cases and confirmed by this Court~~ which incorporates, approves, and is consistent with, among other things, all ~~of~~ the terms of the IUOE Local 18S Settlement Agreement as approved by the Court and ~~Delphi-GM~~ the comprehensive settlement agreements between Delphi and GM.  The Plan, if approved by the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the IUOE Local 18S Settlement Agreement that was reached and ratified last summer.  Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits ~~is~~ will be eliminated and GM ~~is~~ will be obligated to provide certain retiree welfare benefits for certain IUOE Local 18S-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan ~~is~~ will be frozen in certain respects effective upon emergence from chapter 11 for certain covered IUOE Local 18S-represented employees as provided in Section D.2 of the IUOE Local 18S Settlement Agreement;

- The IUOE Local 18S Memorandum of Understanding (including certain IUOE CBAs) ~~is~~ will be assumed pursuant to 11 U.S.C. § 365;

- The IUOE Local 18S released parties ~~are~~ will be exculpated and released in connection with the IUOE Local 18S Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above, Delphi and GM ~~receive releases from~~ will be released by the IUOE Local 18S, all employees and former employees of Delphi represented or formerly represented by the IUOE Local 18S, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IUOE Local 18S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IUOE Local 18S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

**IUOE Local 101S**

Several terms of the IUOE Local 101S Settlement Agreement have gone into effect based on the Court's approval of that agreement.  The ~~IUOE Local 101S Settlement Agreement, among other subject matters, provides that:~~

- ~~The International Union of Operating Engineers Local 101S ("IUOE Local 101S"), Delphi, and GM acknowledge~~terms already in effect include, among others, an acknowledgement that the Delphi Automotive Holdings Group – Olathe operations are closed, and that Delphi no longer employs any Olathe bargaining unit employees;

- ~~The~~ an agreement that the IUOE Local 101S Settlement Agreement terminates and supersedes the 2003 IUOE Local 101S – Delphi Agreements and all related agreements and understandings and the IUOE Local 101S Settlement Agreement expires on September 14, 2011; and

~~All~~ provisions for resolution of claims, including waivers and releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims).
~~Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of~~

Other terms of the IUOE Local 101S Settlement Agreement have not yet gone into effect.  Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization ~~proposed by Delphi in its chapter 11 cases and confirmed by this Court~~ which incorporates, approves, and is consistent with, among other things, all ~~of~~ the terms of the IUOE Local 101S Settlement Agreement as approved by the Court and ~~Delphi-GM~~the comprehensive settlement agreements between Delphi and GM.  The Plan, if approved by the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the IUOE Local 101S Settlement Agreement that was reached and ratified last summer.  Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits ~~is~~will be eliminated and GM ~~is~~will be obligated to provide certain retiree welfare benefits for certain IUOE Local 101S-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan ~~is~~will be frozen in certain respects effective upon emergence from chapter 11 for certain covered IUOE Local 101S-represented employees as provided in Section C of the IUOE Local 101S Settlement Agreement;

- The IUOE Local 101S Memorandum of Understanding (including certain IUOE agreements) ~~is~~will be assumed pursuant to 11 U.S.C. § 365;

- The IUOE Local 101S released parties ~~are~~will be exculpated and released in connection with the IUOE Local 101S Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above,** **Delphi and GM** ~~receive releases from~~ **will be released by** **the IUOE Local 101S, all employees and former employees of Delphi represented or formerly represented by the IUOE Local 101S, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IUOE Local 101S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IUOE Local 101S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

## IUOE Local 832S

~~The~~ Several terms of the IUOE Local 832S Settlement Agreement~~, among other subject matters, provides~~ have gone into effect based on the Court's approval of ~~that:~~

- ~~●~~ agreement and the IUOE's ratification of that agreement. The terms already in effect include, among others, an extension of the 2003 IUOE Local 832S – Delphi Powertrain – Rochester Agreements and all related agreements and understandings ~~are extended~~(the "IUOE CBAs") until September 14, 2011, subject to their termination provisions;

- ~~●~~ ~~A~~ implementation of a workforce transition program ~~is implemented~~ for eligible IUOE Local 832S-represented employees ~~that provides eligible employees with transformation plan options~~; modification of certain terms of the IUOE CBAs; and provisions for resolution of claims, including ~~(i) attrition options similar to the previously approved UAW and IUE-CWA attrition program for eligible IUOE Local 832S employees who are participants in the Delphi Hourly-Rate Employees Pension Plan, (ii) provision of a lump sum "buy-down" payment totaling $10,000 for eligible employees, and (iii) severance payments up to $40,000 to eligible employees who are permanently laid off prior to September 14, 2011;~~

- ~~●~~ ~~Certain terms of certain IUOE CBAs are modified with respect to wages, personal savings plans, Independence Week Pay, holidays, vacation accrual, GIS, job security~~waivers ~~and/or guaranteed employment levels, subsidized discount programs, tuition assistance, attendance, representation, and dispute resolution; and~~

~~All~~ releases such that all employee, retiree, and union asserted and unasserted claims are settled (except for waiver of rights to vested pension benefits, workers compensation benefits, unemployment compensation benefits, and the right to pursue pending ordinary course grievance except for employees who have signed individual releases of claims). ~~Effective upon the execution by Delphi and GM of a comprehensive settlement agreement resolving certain financial, commercial, and other matters between Delphi and GM and substantial consummation of~~

Other terms of the IUOE Local 832S Settlement Agreement have not yet gone into effect. Those terms will become effective as part of Delphi's emergence from bankruptcy pursuant to a plan of reorganization ~~proposed by Delphi in its chapter 11 cases and confirmed by this Court~~ which incorporates, approves, and is consistent with, among other things, all ~~of~~ the terms of the IUOE Local 832S Settlement Agreement as approved by the Court and ~~Delphi-GM~~the comprehensive settlement agreements between Delphi and GM. The Plan, if approved by the Court at the Confirmation Hearing, allows Delphi to emerge from bankruptcy and triggers the effectiveness of the remaining terms of the IUOE Local 832S Settlement Agreement that was reached and ratified last summer. Among other terms, those terms include:

- Delphi's obligation to provide certain retiree welfare benefits ~~is~~will be eliminated and GM ~~is~~will be obligated to provide certain retiree welfare benefits for certain IUOE Local 832S-represented retirees and eligible employees covered as provided in the Term Sheet – Delphi Cessation and GM Provision of OPEB;

- Delphi's existing pension plan ~~is~~will be frozen in certain respects effective upon emergence from chapter 11 for certain covered IUOE Local 832S-represented employees as provided in Section D.2 of the IUOE Local 832S Settlement Agreement;

- The IUOE Local 832S Memorandum of Understanding (including certain IUOE CBAs) ~~is~~will be assumed pursuant to 11 U.S.C. § 365;

- The IUOE Local 832S released parties ~~are~~will be exculpated and released in connection with the IUOE Local 832S Memorandum of Understanding and Delphi's chapter 11 cases; and

- **As set forth above, Delphi and GM ~~receive releases from~~ will be released by the IUOE Local 832S, all employees and former employees of Delphi represented or formerly represented by the IUOE Local 832S, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising directly or indirectly from or in any way related to any obligations under the collective bargaining agreements or the IUOE Local 832S Memorandum of Understanding (except for claims for benefits provided for or explicitly not waived under the IUOE Local 832S Memorandum of Understanding, including, but not limited to, workers' compensation benefits and unemployment compensation benefits against Delphi, its subsidiaries, or affiliates that are otherwise assertable under applicable law).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, and IUOE Settlement Agreements and is qualified entirely by and is subject to the actual terms and conditions of those documents.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, and IUOE Settlement Agreements, can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:          New York, New York
                October 12December --,
                2007

                               SKADDEN, ARPS, SLATE, MEAGHER
                               & FLOM LLP

                               By:    _____
                                      _____John Wm. Butler, Jr. (JB 4711)
                                      _____George N. Panagakis (GP 0770)
                                      _____Ron E. Meisler (RM 3026)
                                      _____Nathan Stuart (NS 7872)
                               -333 West Wacker Drive, Suite 2100
                               -Chicago, Illinois 60606

                                          - and -

                               By:    _____
                                      Kayalyn A. Marafioti (KM 9632)
                                      Thomas J. Matz (TM 5986)
                               -Four Times Square
                               -New York, New York 10036

                                          - and-

                               O'MELVENY & MYERS LLP

                               By:    _____
                                      -    Tom A. Jerman (TJ 1129)
                                      -    Jessica Kastin (JK 2288)
                               1625 Eye Street, NW
                               Washington, DC 20006

                               Attorneys for Delphi Corporation, et al.,
                                   Debtors and Debtors-in-Possession

Exhibit L -- Non-represented Employees Notice

**A Complete Copy Of Delphi's** ~~Court Papers, Including The~~ **Disclosure Statement, and Plan** ~~And The Non-Represented Term Sheet,~~ <span style="color:blue">of Reorganization</span> **Can Be Obtained At www.Delphidocket.com Or By Calling 1-888-249-2691**

---

**This is a notice which may affect you as a** ~~present~~<span style="color:blue">current</span> **or former employee of Delphi:**

**The information in this notice is only a summary and you can obtain complete papers as set forth above this box and on page** ~~3.~~<span style="color:blue">4.</span>

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
    In re                               :        Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :        Case No. 05-44481 (RDD)
                                        :
               Debtors.            :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INFORMATIONAL NOTICE WITH RESPECT TO (I) RELEASES UNDER PROPOSED PLAN OF REORGANIZATION AND (II) MODIFICATION OF, AND TERM SHEET REGARDING, RETIREE WELFARE BENEFITS FOR CERTAIN NON-REPRESENTED HOURLY ACTIVE EMPLOYEES AND RETIREES~~

<span style="color:blue">**NOTICE OF APPROVAL OF DELPHI'S DISCLOSURE STATEMENT, HEARING ON CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION AND PROPOSED RELEASES UNDER THE PLAN**</span>

**Information For Certain Non-Represented Hourly Active Employees And Retirees of Delphi Corporation**

      On August 6, 2007, Delphi Corporation and certain of its affiliated debtors and debtors-in-possession ("Delphi"), filed an Expedited Motion For Order Under 11 U.S.C. §§ 363, 1113, And 1114 And Fed. R. Bankr. P. 6004 And 9019 Approving (I) Memoranda Of Understanding Among IUOE, IBEW, IAM, Delphi, And General Motors Corporation Including Modification Of IUOE, IBEW, And IAM Collective Bargaining Agreements And Retiree Welfare Benefits For Certain IUOE, IBEW, And IAM-Represented Retirees And (II) Modification Of, And Term Sheet Regarding, Retiree Welfare Benefits For Certain Non-Represented Hourly Active Employees And Retirees, regarding Delphi's restructuring, which sought approval from the United States Bankruptcy Court for the Southern District of New York

(the "Court") of modification of retiree welfare benefits for certain non-represented hourly active employees and retirees (the "Modification") and a term sheet between GM[1] and Delphi regarding the Modification named the Term Sheet – Delphi Cessation and GM Provision of OPEB For Certain Non-Represented Delphi Employees and Retirees (the "Non-Represented Term Sheet"). On or about August 7, 2007, you received an informational notice that summarized certain terms of the Non-Represented Term Sheet.

On August 16, 2007, the Court approved the Modification and the Non-Represented Term Sheet.

On September 6December __, 2007, Delphi filed with the Court (a)approved Delphi's disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan Ofof Reorganization Ofof Delphi Corporation Andand Certain Affiliates, Debtors Andand Debtors-inIn-Possession (as subsequently amended, supplemented, or otherwise modified, the "Plan"), and (b) the"). The Disclosure Statement with respect to the and Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as subsequently amended, supplemented, or otherwise modified.filed by Delphi are consistent in all respects with the Non-Represented Term Sheet that was negotiated between Delphi and GM and approved by the "Disclosure Statement")Court.  The hearing to consider confirmation of the Plan (the "Confirmation Hearing") is scheduled to commence on January 17, 2008 at 10:00 a.m. (prevailing Eastern time).  January 9, 2008 at 4:00 p.m. (prevailing Eastern time) is the deadline for filing and serving objections to confirmation of the Plan.

**Article 11.6 of the Plan proposesprovides that Delphi and GM will receive releases frombe released by all employees and former employees of Delphi represented or formerly represented by its unions.**

**Article 11.1314 of the Plan proposes that the releases under Article 11.6 of the Plan will act as an injunction against any person commencing or continuing any action or act to collect or recover any claim or interest released under the Plan.**

A summary of the Modification and Non-Represented Term Sheet follows:

On August 3, 2007, Delphi and GM agreed to the treatment of certain **non-represented hourly active employees and retirees** in the Non-Represented Term Sheet.  The Non-Represented Term Sheet and the Modification relating to modification of retiree welfare benefits for certain non-represented hourly active employees and retirees was submitted to the Court on August 6, 2007.  On August 16, 2007, the Court approved the Non-Represented Term Sheet and the Modification pursuant to 11 U.S.C. § 363, allowing Delphi's cessation and GM's provision of certain benefits for such employees.

Upon the Effective Date of the Non-Represented Term Sheet, GM will provide post-retirement medical benefits to certain of the non-represented hourly active employees and retirees in accordance with all the ongoing terms, conditions and eligibility requirements of the

---

[1]   Capitalized terms used and not defined in this informational notice have the meanings set forth in the Non-Represented Term Sheet.

GM Health Care Program for Hourly Employees and GM will provide the applicable level of post-retirement medical benefits to certain of the non-represented hourly active employees and retirees consistent with the terms of the Modified Plan, as defined in the settlement agreement approved by the court in the case IUE, et al. v. General Motors Corporation (case number 2:06-cv-12151), on the same basis as such benefits are provided to GM-IUE-CWA hourly employees who retired from GM with eligibility to participate in the GM Health Care Program.

Further, GM will provide all employer-paid post-retirement Basic Life Insurance benefits to certain of the non-represented hourly active employees and retirees in accordance with all the ongoing terms, conditions, and eligibility requirements of the GM Life and Disability Benefits Program for Hourly Employees and at the level provided for non-represented hourly retirees on the date immediately preceding the GM's provision of such benefits, provided, however, that GM will not be required to provide life insurance benefits at a level and scope that exceeds that being provided for similarly situated IBEW- or IAM-represented hourly retirees of GM.

**Delphi and GM will also receive releases from all non-represented hourly employees and former hourly employees of Delphi, and all persons or entities with claims derived from or related to any relationship with such employees of Delphi arising from or related to any obligations of Delphi, GM and/or such employee benefits plans to provide OPEB or pension benefits, or related in any way to the amendment and freeze of the Delphi HRP or the cessation of Delphi OPEB (except for claims for benefits provided for or explicitly not waived under the Non-Represented Term Sheet).**

This information is only a summary of some of the terms of the Disclosure Statement, Plan, Modification, and the Non-Represented Term Sheet and is qualified entirely by and is subject to the actual terms and conditions of those documents, or in the case of the Modification, the Court's order allowing the Modification.  Complete copies of Delphi's Court papers, including the Disclosure Statement, Plan, the Non-Represented Term Sheet, and the Court's order allowing the Modification can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

Dated:          New York, New York
                October 12December --, 2007

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                        & FLOM LLP

                        By:   _____
                                    John Wm. Butler, Jr. (JB 4711)
                                    George N. Panagakis (GP 0770)
                                    Ron E. Meisler (RM 3026)
                                    Nathan Stuart (NS 7872)
                        -333 West Wacker Drive, Suite 2100
                                -Chicago, Illinois 60606


                                    - and --

                        By:   _____
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                        -Four Times Square
                                -New York, New York 10036


                                    - and-

                                    O'MELVENY & MYERS LLP

                                    -4-

By: _____

- Tom A. Jerman (TJ 1129)
- Jessica Kastin (JK 2288)

1625 Eye Street, NW
Washington, DC 20006

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Exhibit M -- Cure Amount Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

In re                               :     Chapter 11

                                        :

DELPHI CORPORATION, et al.,         :     Case No. 05-44481 (RDD)

                                        :

                    Debtors.     :     (Jointly Administered)

                                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACT
TO BE ASSUMED OR ASSUMED AND ASSIGNED UNDER PLAN OF REORGANIZATION

PLEASE TAKE NOTICE that on ~~September 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed their Joint Plan of Reorganization dated September 6, 2007 (as subsequently amended, supplemented, or otherwise modified, the "Plan") and their disclosure statement with respect to the Plan (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement") with~~ December __, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). ~~The Bankruptcy Court signed~~ entered an order ~~dated October 3, 2007~~ (the "Solicitation Procedures Order") (Docket No. _____) ~~approving the adequacy of the Disclosure Statement and certain procedures in connection with solicitation of votes on the Plan.~~ (i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

In accordance with the Solicitation Procedures Order, the Debtors hereby provide notice of their intent to cure ("Cure") and assume or assume and assign the contract(s) listed on <u>Schedule 1</u> attached hereto as provided in the Plan and the Disclosure Statement.

> **~~This form~~You must ~~be returned~~return this form in the envelope provided to Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Cure Claims, so as to be received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~January 11, 2008.  If you fail to timely return this form, your contract~~(s) or lease~~(s) will be assumed, or assumed and assigned, and you will be paid the cure amount listed on <u>Schedule 1</u> in ~~cash and~~ new common stock of reorganized Delphi and rights to participate in the discount rights offering in the proportions set forth in the Plan for holders of allowed general unsecured claims.**

The Debtors' records reflect the amounts owing for prepetition arrearages as set forth on <u>Schedule 1</u> (the "Cure Amount").  **Please follow the four steps below and sign this notice to ensure that you receive the Cure to which you are entitled.**

**<u>Step 1</u>**

**Please check one of the boxes below:**

☐     Yes, I agree with the Cure Amount listed on <u>Schedule 1</u> (**complete Step 2 below**)

☐     No, I disagree with the Cure Amount listed on <u>Schedule 1</u> (**skip Step 2 and go to Step 3 below**)

**Step 2**

   **Review the Plan in its entirety, including Article 5.3 of the Plan governing treatment of general unsecured claims, and check one of the boxes below:**

☐   I request payment of my Cure Amount in cash ~~on the effective date of the plan (skip Step 3 and complete Step 4 below)~~(without postpetition interest) as soon as reasonably practicable after the Effective Date, but in any event no later than 30 days after the Effective Date  (the "Distribution Date")

☐   I request payment of my Cure Amount on the Distribution Date in the ~~p~~Plan currency afforded General                              Unsecured         Claims,         including postpetition interest from the Petition                    Date through  ~~December 31, 2007~~the earlier of the Confirmation Date or January 31, 2008 at the Michigan                    Statutory   Rate   (all   as defined in the ~~p~~Plan)                              (**skip Step 3 and complete Step 4 below**)

**Step 3**

   **If you checked the box in Step 1 indicating that you disagree with the Cure Amount, ~~you~~or if you checked the box in Step 2 indicating that you want to be paid in cash, you must sign and return this notice so as to be received on or prior to 7:00 p.m. (prevailing Eastern time) on January 11, 2008. You must also file an objection that states with specificity your asserted Cure amount ~~and include~~, including appropriate documentation thereof, on or before the 30th day following the effective date of the Plan. If you fail to return this form by January 11, 2008 but timely file and serve an objection in accordance with the procedures outlined below, your objection will not be considered, the Cure Amount asserted by the Debtors will be controlling, you will be paid the Cure Amount in Plan currency in exchange for, among other things, the releases set forth in Article 11 of the Plan, and your contract(s) will be assumed, or assumed and assigned. (continue with Step 3 and also complete Step 4 below)**

   **Objection Procedures**.  Objections to the proposed Cure Amount must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Solicitation Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons and Ron E. Meisler), (iii) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vi) counsel for A-D Acquisition Holdings, LLC c/o Appaloosa Management L.P., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n:  Glenn M. Kurtz and Gregory Pryor),

2

(vii) counsel for Harbinger Del-Auto Investment Company, Ltd., White & Case LLP, Wachovia Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131 (Att'n: Thomas E. Lauria) and White & Case LLP, 1155 Avenue of the Americas, New York, New York 10036 (Att'n: John M. Reiss and Gregory Pryor) ~~and Kaye Scholer LLP, 425 Park Avenue, New York, New York 10022 (Att'n: Benjamin Mintz and Lyn Toby Fisher)~~, and (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received no later than 4:00 p.m.** (prevailing Eastern time) on **the 30th day following the effective date of the Plan** (the "Cure Objection Deadline").  Objections not timely filed and served in the manner set forth above will not be considered and will be deemed overruled.

If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption , or assumption and assignment, of the contract(s) or lease(s), the Bankruptcy Court will conduct a hearing before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at such date and time as the Court may schedule, and Cure will occur following the entry of a final order of the Bankruptcy Court resolving the dispute and approving the assumption or assumption and assignment, as the case may be; provided, however, that if there is a dispute as to the amount of Cure that cannot be resolved consensually among the parties, the Debtors shall have the right to reject the contract or lease for a period of five days after entry of a final order establishing a Cure amount in excess of that provided by the Debtors.

**Step 4**

**~~Return~~Sign and return this form in the envelope provided to Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Cure Claims, so as to be received by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007,~~January 11, 2008.  If you fail to timely return this form, your contract(s) or lease(s) will be assumed, or assumed and assigned, and you will be paid the ~~c~~Cure amount listed on Schedule 1 in ~~cash and~~ new common stock of reorganized Delphi and rights to participate in the discount rights offering in the proportions set forth in Article 5.3 of the Plan.**

Company Name:_____

By: _____

Print Name:____

Title: ____

Delphi Legal Information Hotline:          Delphi Legal Information Website:
Toll Free:  (800) 718-5305                 http://www.delphidocket.com
International:  (248) 813-2698

Dated:    ~~New York, New York~~    New York, New York
          ~~October 29, 2007~~    December ___, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
    John Wm. Butler, Jr. (JB 4711)
    George N. Panagakis (GP 0770)
    Ron E. Meisler (RM 3026)
    Nathan Stuart (NS 7872)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
~~(312) 407-0700~~

- and -

    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
~~(212) 735-3000~~

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

4

Exhibit N -- Notice To Assignees, Transferees, And Purchasers Of
Claims Of Cure Procedures Established Under Solicitation Procedures
Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     x
                                                          :
    In re                                          :       Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :       Case No. 05-44481 (RDD)
                                                          :
                   Debtors.              :       (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     x

### NOTICE TO HOLDERS, ASSIGNEES, TRANSFEREES, AND PURCHASERS OF CLAIMS OF CURE PROCEDURES ESTABLISHED UNDER SOLICITATION PROCEDURES ORDER

       PLEASE TAKE NOTICE that on December __, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Solicitation Procedures Order") (Docket No. ____) (i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

       PLEASE TAKE FURTHER NOTICE that pursuant to Section 8.2 of the Plan, the Debtors will cure defaults, as required under 11 U.S.C. § 365, related to certain contracts (the "Material Supply Agreements") which the Debtors intend to assume or assume and assign under the Plan.

       PLEASE TAKE FURTHER NOTICE that, pursuant to the Solicitation Procedures Order, the Debtors have sent a Notice Of Cure Amount With Respect To Executory Contract To Be Assumed Or Assumed And Assigned Under Plan Of Reorganization (the "Cure Notice") to the Material Supply Agreement counterparties for those Material Supply Agreements the Debtors seek to assume or assume and assign under the Plan (the "Counterparties").

       PLEASE TAKE FURTHER NOTICE that the Cure Notice provides the Counterparties with, among other things, the right to elect to be paid the cure amount to which the party receiving cure is entitled in cash or the plan currency being offered to holders of general unsecured claims under Article 5.3 of Plan.

       PLEASE TAKE FURTHER NOTICE that you are receiving this notice as a courtesy because the claims register of Kurtzman Carson Consultants, LLC, the claims agent approved by the Bankruptcy Court, indicates that you may hold or may have purchased a claim from one or more of the Counterparties to whom the Cure Notice and election was sent.  This election might impact the currency to be distributed to such Counterparty which in turn might affect the claim that you hold or have purchased.  Pursuant to the Solicitation Procedures Order, the Debtors are authorized, but not directed, to remit resolved or uncontested distributions on account of cure directly to the contract party whose contract is being assumed or assumed and assigned. This is the only notice that you will be sent in this regard.

---

**Your rights with regard to a claim you hold or purchased might be affected by the election right described in the Cure Notice as summarized above.**

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

Dated:    New York, New York
          December ___, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
        John Wm. Butler, Jr. (JB 4711)
        George N. Panagakis (GP 0770)
        Ron E. Meisler (RM 3026)
        Nathan Stuart (NS 7872)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

              - and -
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

     Attorneys for Delphi Corporation, et al.,
        Debtors and Debtors-in-Possession

Exhibit O -- Notice to Contract Counterparty With Multiple Addresses
Of Transmittal Of Cure Amount Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                    :
        In re                                       :        Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :        Case No. 05-44481 (RDD)
                                                    :
                        Debtors.                    :        (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

NOTICE TO CONTRACT COUNTERPARTY WITH MULTIPLE ADDRESSES
OF TRANSMITTAL OF CURE AMOUNT NOTICE


        PLEASE TAKE NOTICE that Delphi Corporation, together with certain of its U.S. affiliates
(collectively, the "Debtors") have sent an original Notice Of Cure Amount With Respect to
Executory Contract To Be Assumed Or Assumed And Assigned Under Plan Of Reorganization (the
"Cure Notice"), a copy of which is attached hereto as Exhibit A, to the address listed on Exhibit B
hereto.

---

**There are substantive rights affected by the Cure Notice such as the right to
object to the proposed cure amount and the right to be paid any cure amount
in cash or the plan currency offered to holders of allowed general unsecured
claims under Article 5.3 of the Debtors' plan of reorganization (the "Plan").
If you are the person in your company who should review and respond to this
notice, you should immediately inquire at your company as to its whereabouts.**


**As explained on Exhibit A, the original Cure Notice must be completed,
executed, and returned so as to be received by Kurtzman Carson Consultants
at the address set forth below by 7:00 p.m. (prevailing Eastern time) on
January 11, 2008.  Failure to timely respond will result in your contract(s) or
lease(s) being assumed or assumed and assigned, and you will be paid the cure
amount listed on Schedule 1 to the Cure Notice in the currency offered to
holders of allowed general unsecured claims under the Plan.**

---

        Please note, however, that only original forms will be accepted for purposes of exercising
your right to contest the cure amount or make a Cure Election.  To obtain a duplicate original Cure
Notice, you must contact Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo,
California 90245, Att'n: Delphi Cure Notice Replacement or at (888) 249-2691 to be sent another
original Cure Notice. The original Cure Notice sent to the address on Exhibit B will subsequently be
voided.

Delphi Legal Information Hotline:               Delphi Legal Information Website:
Toll Free:  (800) 718-5305                        http://www.delphidocket.com
International:  (248) 813-2698


Dated:    New York, New York
              December ___, 2007

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP
                                          John Wm. Butler, Jr. (JB 4711)
                                          George N. Panagakis (GP 0770)
                                          Ron E. Meisler (RM 3026)
                                          Nathan Stuart (NS 7872)
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois 60606

                                                - and -
                                          Kayalyn A. Marafioti (KM 9632)
                                          Thomas J. Matz (TM 5986)
                                    Four Times Square
                                    New York, New York 10036

                                    Attorneys for Delphi Corporation, et al.,
                                       Debtors and Debtors-in-Possession

**[Copy of Form of Cure Notice to be attached with a watermarked "COPY" across the form]**

Exhibit P -- Postpetition Interest Rate Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re                         :     Chapter 11
                             :

DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                             :

              Debtors.       :     (Jointly Administered)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## POSTPETITION INTEREST RATE DETERMINATION NOTICE

PLEASE TAKE NOTICE that on ~~September 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed their Joint Plan of Reorganization dated September 6, 2007 (as subsequently amended, supplemented, or otherwise modified, the "Plan") and their disclosure statement with respect to the Plan (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement") with~~ December ___, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")~~. The Bankruptcy Court~~ entered an order ~~on October 3, 2007~~ (the "Solicitation Procedures Order") (Docket No. _____) ~~approving the adequacy of the Disclosure Statement and certain procedures in connection with solicitation of votes on the Plan.~~ (i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.

Under the Solicitation Procedures Order, the Debtors hereby provide notice of their intent to pay postpetition interest on your claim from October 8 or 14, 2005, as applicable (the "Petition Date"), through ~~December 31, 2007~~ the earlier of the date on which the Plan is confirmed or January 31, 2008 at the Michigan Statutory Rate in effect as of the Petition Date (4.845%) (the "Interest Rate") as provided in the Plan.

> **If you disagree with the application of the Interest Rate, you must return this form in the envelope provided to Kurtzman Carson Consultants, LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Interest Rate, so as to be received by ~~November 9, 2007~~ January 11, 2008 at 7:00 p.m. (prevailing Eastern time). If you fail to return this form timely, you will receive postpetition interest on account of your claim at the interest rate set forth above.  If you disagree with the application of the Interest Rate and you return an executed copy of this form, then your claim will be deemed disputed and you will not be eligible to receive a distribution until your claim is allowed.**

Please follow the three steps below and sign this notice to ensure that you receive the postpetition interest rate to which you are entitled.

**<u>Step 1</u>**

**Please check one of the boxes below:**

☐    Yes, I agree with the application of the Interest Rate (**skip Step 2 and complete Step 3  below**)

☐    No, I disagree with the application of the Interest Rate (**complete Step 2 and Step 3 below**)

Company Name:_____

By: _____

Name:                                    Title:

**Step 2**

If you checked the box indicating that you disagree with the Interest Rate, you must supply the information requested in the form attached hereto and underline complete step 3 below. If you fail to timely complete step 3 below, you will receive postpetition interest on account of your claim at the Interest Rate.

If the Debtors disagree with the interest rate you assert, your claim will automatically be deemed disputed and the Debtors will file an objection to your asserted interest claim no later than 30 days after the confirmation date of the Plan. Following such an objection, the Bankruptcy Court will conduct a hearing before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at such date and time as the Court may schedule, and payment. A distribution on account of your claim, to the extent allowed with accrued interest through the earlier of January 31, 2008 or the date of confirmation of the Plan, at the rate decided by the Bankruptcy Court, will only occur following the entry of a final order of the Bankruptcy Court resolving the dispute.

**Step 3**

Sign and return this form in the envelope provided to Kurtzman Carson Consultants, LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi, so as to be received by **January 11, 2008 at** 7:00 p.m. (prevailing Eastern time) on November 9, 2007. If you fail to timely return this form, you will receive postpetition interest on account of your claim at the Interest Rate set forth above.

Delphi Legal Information Hotline:           Delphi Legal Information Website:
Toll Free: (800) 718-5305                    http://www.delphidocket.com
International: (248) 813-2698


Dated:    New York, New York
          October 12, December ___, 2007
                                             SKADDEN, ARPS, SLATE, MEAGHER
                                              & FLOM LLP
                                                  John Wm. Butler, Jr. (JB 4711)
                                                  George N. Panagakis (GP 0770)
                                                  Ron E. Meisler (RM 3026)
                                                  Nathan Stuart (NS 7872)
                                             333 West Wacker Drive, Suite 2100
                                             Chicago, Illinois 60606

- and -

Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

<u>Postpetition Interest Rate Information</u>

_____

Name Of Claimant


_____

Description Of Contract(s)


_____

Interest Rate Asserted


_____

_____

_____

_____

_____

Basis For Asserted Interest Rate (attach supporting documentation and ensure that you have affixed adequate postage to assure that this completed Postpetition Interest Rate Determination Notice is delivered to Kurtzman Carlson Consultants, LLC so that it is **received** before <span style="color:red">~~November 9, 2007~~</span><span style="color:blue">**January 11, 2008**</span> at **7:00 p.m.** (prevailing Eastern time)).

Document comparison done by DeltaView on Wednesday, December 05, 2007 9:41:39 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://chisr01a/562280/6 |
| Document 2 | pcdocs://chisr01a/562280/10 |
| Rendering set | Option 3a strikethrough double score no moves |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| <Moved from> | |
| >Moved to< | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 15 |
| Deletions | 11 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 26 |

Exhibit Q -- Reclamation Election Notice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :
In re                         :     Chapter 11
                          :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                          :
                Debtors.     :     (Jointly Administered)
                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>NOTICE OF TREATMENT OF RECLAMATION CLAIM UNDER PLAN OF REORGANIZATION</u>

PLEASE TAKE NOTICE that on ~~September 6, 2007, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed their Joint Plan of Reorganization dated September 6, 2007 (as subsequently amended, supplemented, or otherwise modified, the "Plan") and their disclosure statement with respect to the Plan (as subsequently amended, supplemented, or otherwise modified, the "Disclosure Statement") with~~<u>December __, 2007</u> the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). ~~The Bankruptcy Court~~ entered an order ~~on October 3, 2007~~ (the "Solicitation Procedures Order") (Docket No. ____) ~~approving the adequacy of the Disclosure Statement and certain procedures in connection with solicitation of votes on the Plan.~~<u>(i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan.</u>

In accordance with <u>the Second Amended and Restated Final Reclamation Order and</u> the Solicitation Procedures Order, the Debtors hereby provide notice of the proposed treatment of the reclamation claim listed on <u>Schedule 1</u> attached hereto ~~as provided in the Plan~~.

<div style="border:1px solid black; padding:8px">

**You must return this form in the envelope provided to Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Reclamation Claims, <u>so as to be received</u> by 7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007~~<u>January 11, 2008.</u>[1] If you fail to return this form timely, you will receive a distribution for your reclamation claim ~~in cash and new common stock of reorganized Delphi in the proportions~~<u>, to the extent allowed, in the currency afforded to allowed general unsecured claims as</u> set forth in the Plan and <u>you shall</u> be deemed to have waived any right to seek administrative priority status for your reclamation claim.**

</div>

The Debtors' records reflect that you are the holder of the reclamation claim identified on <u>Schedule 1</u> (the "Reclamation Claim "). **Please follow the three steps below and sign this notice to ensure that you receive the <u>desired</u> treatment for your ~~reclamation claim that you want to receive~~<u>Reclamation Claim</u>.**

<u>**Step 1**</u>

**Review the Plan in its entirety, including Article 5.3 of the Plan governing treatment of general unsecured claims ("General Unsecured Claims"), and check one of the boxes below:**

☐       I request that my <u>R</u>eclamation <u>C</u>laim, to the extent ~~that the Debtors agree it is a valid reclamation claim, be~~ <u>Allowed (as defined in the Plan), be</u> _____ given administrative priority status pursuant to section 503(b) of      the Bankruptcy Code<u>.</u>

☐    I request distribution on account of~~that~~ my Reclamation Claim be treated, to the extent ~~that Debtors agree it is a valid reclamation claim, in the plan currency afforded~~Allowed and for purposes of _____ of distribution, as a General Unsecured ~~Claims~~Claim, including postpetition interest ~~from the Petition Date through December 31, 2007    at the Michigan Statutory Rate in effect as of the Petition Date (4.845%) (the "Interest    Rate") as provided in the Plan.~~ as set forth _____ more fully below and in the Plan. I acknowledge and agree that I have no _____ accompanying voting rights on account of this election or any Reclamation Claim.


**Step 2**

**If you checked the box indicating that you request that your ~~reclamation claim~~Reclamation Claim, to the extent Allowed, be given administrative priority status pursuant to section 503(b) of the Bankruptcy Code, the treatment of your ~~r~~Reclamation ~~c~~Claim will be determined at a contested hearing before the Bankruptcy Court on a date following the effective date of the Plan. At this hearing, the Debtors will assert that your claim is not entitled to administrative priority status on the grounds that, among other things, the goods and/or the proceeds from the sale of the goods for which you are seeking a reclamation claim are, or were, subject to a valid and perfected security interest. The Debtors will retain all other reserved defenses (the "Reserved Defenses") regarding your Reclamation Claim, as set forth in the Second Amended and Restated Final Reclamation Order. If the Debtors prevail at this hearing, then ~~you will receive a distribution on account of of your Reclamation Claim in the plan currency afforded General Unsecured Claims, including postpetition interest from the Petition Date through December 31, 2007 at the Interest Rate~~, subject to the Bankruptcy Court's ruling, your Reclamation Claim will be disallowed. The underlying claim will then be subject to further reconciliation to determine the amount in which you may still have a valid General Unsecured Claim.**

**If you checked the box indicating that you request your Reclamation Claim be treated for purposes of distribution ~~on account of your reclamation claim~~, to the extent ~~that the Debtors agree it is a valid reclamation claim, in the plan currency afforded~~Allowed, as a General Unsecured Claims, including postpetition interest from the Petition Date through ~~December 31, 2007 at the Interest Rate as provided in the Plan,~~the effective date of the Plan at the Michigan Statutory Rate in effect as of the Petition Date (4.845%) (the "Interest Rate") as set forth in the Plan, then you will be deemed to have waived any right to seek administrative priority status for your ~~reclamation claim~~Reclamation Claim; provided however that to the extent that the Debtors resolicit acceptances or rejections of the Plan (or any alternative plan of reorganization), such resolicitation shall include a provision allowing any holder of a reclamation claim that made any election pursuant to this notice to amend such election by filing a duly executed copy of a rescission notice (which shall be in a form reasonably acceptable to the Creditors' Committee) on or before the deadline for voting on such amended plan. The Debtors will retain all ~~r~~Reserved ~~d~~Defenses regarding your Reclamation Claim.**

In either event, you must return this form in accordance with Step 3 below.

**Step 3**

Sign and return this form in the envelope provided to Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Delphi Cure Claims, so that it is received by ~~4~~7:00 p.m. (prevailing Eastern time) on ~~November 9, 2007.~~January 11, 2008. If you fail to return ~~this~~a signed and completed form timely, you will receive a distribution on account of your Reclamation Claim, to the extent ~~that the Debtors agree it is a valid reclamation claim~~Allowed, in the plan currency afforded General Unsecured Claims, including postpetition interest from the Petition Date through ~~December 31, 2007~~the effective date of the Plan at the Interest Rate set forth in the Plan and you will be deemed to have waived

2

any right to seek administrative priority for your rReclamation cClaim.  The Debtors will retain all rReserved dDefenses regarding your Reclamation Claim.

Company Name: _____

By: _____

Print Name:

Title:


Delphi Legal Information Hotline:                    Delphi Legal Information Website:
Toll Free:  (800) 718-5305                              http://www.delphidocket.com
International:  (248) 813-2698


Dated:      New York, New York
            October 29,December ___, 2007

                                                SKADDEN, ARPS, SLATE, MEAGHER
                                                  & FLOM LLP
                                                        John Wm. Butler, Jr. (JB 4711)
                                                        George N. Panagakis (GP 0770)
                                                        Ron E. Meisler (RM 3026)
                                                _____ Nathan Stuart (NS 7872)
                                                333 West Wacker Drive, Suite 2100
                                                Chicago, Illinois 60606
                                                (312) 407-0700

                                                        - and -
                                                        Kayalyn A. Marafioti (KM 9632)
                                                        Thomas J. Matz (TM 5986)
                                                Four Times Square
                                                New York, New York 10036
                                                (212) 735-3000
                                                  Attorneys for Delphi Corporation, et al.,
                                                  Debtors and Debtors-in-Possession

3

# SCHEDULE 1

**[Reclamation Claimant]**
**[Contact Information of Reclamation Claimant]**
**[Reclamation Claim Number]**
**[Reclamation Claim Amount]**

Exhibit R -- Notice to Employees Regarding Multiple Solicitation Documents

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
:
In re                                                          :        Chapter 11
                                                               :
DELPHI CORPORATION, et al.,                                    :        Case No. 05-44481 (RDD)
                                                               :
                                  Debtors.                     :        (Jointly Administered)
                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### NOTICE TO CURRENT AND FORMER EMPLOYEES REGARDING
### <u>MULTIPLE SOLICITATION DOCUMENTS</u>

This Notice is to explain why you may be receiving various documents in the Delphi bankruptcy case.

PLEASE TAKE NOTICE that on December __, 2007 the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order (the "Solicitation Procedures Order") (Docket No. ____) (i) approving the disclosure statement (the "Disclosure Statement") with respect to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (the "Plan"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") and (ii) authorizing the Debtors to solicit votes on the Plan. As a part of this process of soliciting votes on the Plan, the Debtors have sent numerous documents to various parties in interest. ("Parties in interest" include people who have or assert claims against the Debtors.) Capitalized terms used and not defined in this notice have the meanings set forth in the Plan.

As an employee or former employee of the Debtors, you may be one of these parties in interest and may have a number of different interests or claims, as defined by the Plan. As such, you may be receiving a variety of documents from the Debtors, depending on the nature of your interests or claims. The information below explains why you may be receiving various documents based upon the types of claims or interests you may have.

If you are or were represented by a labor union while employed at Delphi, you may wish to contact your union about any notices that you receive.

Please note that this information is only a summary of some of the terms of the Disclosure Statement and the Plan and is qualified entirely by and is subject to the actual terms and conditions of the Plan and Disclosure Statement. In the event of any conflict between this notice and another document, the applicable document, and not this notice, will control. Complete copies of Delphi's Court papers, including the Plan and Disclosure Statement can be obtained at www.delphidocket.com or by calling 1-888-249-2691.

---

**The Information Below Merely Attempts To Explain The Reason That Certain Parties**

**Are Receiving Particular Documents As A Part Of The Solicitation Process And Is
Not Intended As A Substitute For Careful Review Of The Plan And Disclosure Statement
And The Other Notices And Documents You May Receive In Your Solicitation Package.**

**No Action Is Required Of You In Connection With *This* Notice. However, Please
Read Carefully Each Of The Documents That You Have Received To Determine
If Any Action Is Required In Connection With Any Of These Other Documents.**

**Please Carefully Review The Plan And Disclosure Statement. You May Wish To Seek Legal
Advice Concerning The Plan And Your Classification And Treatment Under The Plan.**

## Documents You May Have Received

Certain parties in interest will receive a "solicitation package" containing:

- the Confirmation Hearing Notice,
- a CD-ROM containing the Solicitation Procedures Order, the Disclosure Statement, the Plan, and the publicly filed materials appended thereto,

Additionally you may have received the following documents:

**Notice of Non-Voting Status**:  If you received a Notice of Non-Voting Status, you may have one or more of the claims or interests described below, in which case, you will not receive or retain any property on account of such claim or interest.  You are therefore deemed to reject the Plan and you will not vote on the Plan *on account of such claims* (although you may still be allowed to vote because of other claims or interests that you may have).

| Examples Of Interests/Claims That May Trigger A Notice Of Non-Voting Status | Plan Class | Proposed Plan Treatment |
|---|---|---|
| • Stock Appreciation Rights (SARs)<br>• Stock options<br>• Unvested Restricted Stock Units (RSUs)<br>• Stock option grants commonly known as Founder's Grants | <u>Other Interests</u>: consist of all options, warrants, call rights, puts, awards, or other agreements to acquire existing Delphi common stock. | Under the Plan, all Other Interests will be cancelled and holders of Other Interests will not receive a distribution under the Plan on account of such Other Interests. |

**Unimpaired Notice**:  If you received an Unimpaired Notice, you may have one or more of the claims described below which are unimpaired under the Plan.  Holders of unimpaired claims are deemed to accept to Plan and so do not vote on the Plan *on account of such claims* (although you may still be allowed to vote because of other claims or interests that you may have).

| Examples Of Interests/Claims That May Trigger An Unimpaired Notice | Plan Class | Proposed Plan Treatment |
|---|---|---|
| • Unpaid healthcare and insurance-related benefit claims for active employees<br>• Unpaid wages for active employees<br>• Workers Compensation claims | <u>Flow Through Claims</u>: include claims arising from, among other things, (i) an Employee-Related Obligation asserted by an hourly employee that is not otherwise waived pursuant to the Union Settlement Agreements (workers compensation and unemployment compensation claims are "flow-through claims"), or (ii) any Employee-Related Obligation asserted by a salaried, non- | Flow-Through Claims will be unimpaired by the Plan and will be satisfied in the ordinary course of Delphi's business (subject to the preservation and flow-through of all Estate rights, claims, and defenses with respect to the Flow-Through Claims). |

| | |
|---|---|
| executive employee who was employed by Delphi as of the date of the commencement of the hearing on the Disclosure Statement, (iii) any Employee-Related Obligation asserted by a salaried executive employee who was employed by Delphi as of the date of the commencement of the hearing on the Disclosure Statement to the extent such claims have not been released. | |

**Ballot**:  Some claims result in a right to vote on the Plan.  If you received a Ballot, please review the plan class title on the Ballot and the corresponding description of such class in the Plan and Disclosure Statement and read and follow the instructions on the Ballot carefully in order for your vote on the Plan to be counted. Your receipt of a Ballot or Ballots indicates your claim(s) is currently listed on Delphi's claims docket.

| Examples Of Interests/Claims That May Trigger A Ballot | Plan Class | Proposed Plan Treatment |
|---|---|---|
| <ul><li>Allowed SERP claims from current retirees</li><li>Unpaid base compensation, incentive compensation, and retention grant claims for which a timely, valid proof of claim was filed and to the extent such claims were not released</li><li>Claims for unpaid cash compensation for which retirees or a non-current employee for which a timely proof of claim has been filed, to the extent required by the Bar Date Order</li></ul> | General Unsecured Claims, other than Senior Note Claims or TOPrS Claims | Under the Plan, general unsecured creditors will receive the number of shares of New Common Stock in Reorganized Delphi equal to 75.5% of their claims and the value of discount rights equal to 24.5% of their claims, subject to certain rounding provisions in the Plan. The TOPrS subordination provision will be deemed satisfied pursuant to the Plan, which will provide a recovery of 100% of the principal and accrued prepetition interest to holders of TOPrS claims. |

If you have any questions not answered by the chart above, please contact Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245, Att'n: Employee Multiple Notice or at (888) 249-2691.  If applicable, you may also contact your union.

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

Dated:    New York, New York
          December __, 2007

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
          John Wm. Butler, Jr. (JB 4711)
          George N. Panagakis (GP 0770)
          Ron E. Meisler (RM 3026)
          Nathan Stuart (NS 7872)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

             - and -
          Kayalyn A. Marafioti (KM 9632)
          Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

     Attorneys for Delphi Corporation, et al.,
        Debtors and Debtors-in-Possession