**HODGSON RUSS LLP**
Attorneys for Conestoga-Rovers & Associates, Inc.
60 East 42nd Street, 37th floor
New York, New York 10165
(212) 661-3535                                         Hearing Date and Time:
Gary I. Selinger (GIS-3555)                            January 10, 2008 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT          Deadline for Objections:
SOUTHERN DISTRICT OF NEW YORK           January 3, 2008 at 5:00 p.m. Eastern Time
----------------------------------------------------------x

In re:

                                                        Chapter 11

DELPHI CORPORATION, et al.,                             Case No. 05-44481 (RDD)

                              Debtors.                  Jointly Administered
----------------------------------------------------------x

### CONSOLIDATED APPLICATION AND MEMORANDUM IN SUPPORT OF MOTION OF CONESTOGA-ROVERS & ASSOCIATES, INC. (i) TO ALLOW AMENDED CLAIM, FILED AFTER BAR DATE, AS RELATION BACK TO ORIGINAL CLAIM, OR (ii) ALTERNATIVELY, FOR LEAVE TO FILE LATE PROOF OF CLAIM

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Conestoga-Rovers & Associates, Inc. ("CRA"), by its attorneys Hodgson Russ LLP,

hereby moves for an order (i) pursuant to Federal Rule of Civil Procedure 15(c) and Federal Rule

of Bankruptcy Procedure 7015, deeming CRA's amended proof of claim no. 16604, filed May

21, 2007, in the sum of $140,195.09 (the "Amended Claim"), to relate back to CRA's previous

proof of claim no. 2339, filed March 14, 2006, in the sum of $63,642.38 (the "Original Claim"),

or, alternatively, (ii) pursuant to Federal Rule of Bankruptcy Procedure 9006(b)(1), extending the

time for CRA to file the Amended Claim, and allowing such claim against the Debtors as if CRA

had filed the Amended Claim before the bar date, as CRA's untimeliness is due to "excusable

neglect," and respectfully represents and shows this Court as follows:

**Preliminary Statement**

1.        This Court should allow CRA's Amended Claim against the Debtors for the stated

sum of $140,195.09.  CRA filed its Original Claim before the bar date of July 31, 2006 (the "Bar

Date"), but after the Bar Date, amended that Claim to incorporate additional invoices for CRA's

services rendered to the Debtors before the petition date of October 8, 2005 (the "Petition Date").

2.        Thus this Court should deem the Amended Claim to relate back to the Original

Claim (filed on March 14, 2006), pursuant to Federal Rule of Civil Procedure 15(c) and Federal

Rule of Bankruptcy Procedure 7015, as it simply increases the amounts due to CRA under the

parties' ongoing business relationship.  The Amended Claim is ***not*** an impermissible "attempt to

file a new claim under the guise of amendment," *In re Integrated Resources, Inc.*, 157 B.R. 66,

70 (S.D.N.Y. 1993), and, as this motion shows, a balancing of the equities favors CRA.

3.        Alternatively, the Court should extend the Bar Date, and CRA's time to file its

Amended Claim, under Federal Rule of Bankruptcy Procedure 9006(b)(1).  In early May 2007,

after the Bar Date had passed, CRA discovered that certain of its invoices billed to the Debtors

for pre-petition services -- but bearing dates in 2006 suggesting that they represented **post**-

petition services -- had not been included in CRA's Original Claim.  CRA promptly filed the

Amended Claim, which included the additional invoices for pre-petition services.

4.        By either legal standard, there is good cause to allow CRA's Amended Claim.  It

is not disproportionate to the amount of the Original Claim ($140,195.09, compared with

$63,642.38).  The Original Claim placed the Debtors on notice that CRA intended to hold them

liable for its pre-petition services.  Thus the Amended Claim is not a new claim filed after the

Bar Date; rather, it is sufficiently similar in nature and amount to the Original Claim that this

Court should allow it in full, and deem it timely filed, as it relates back to the Original Claim.

- 2 -

**Factual Background**

5.        CRA is an environmental consulting firm.  Since the mid-to-late 1990's, CRA has

performed services for several of the various Debtor entities.  Indeed, it has continued providing

services to the Debtors to this day, and has received payment from the Debtors on account of

these post-petition services.  Moreover, and as further evidence of the solid business relationship

between the Debtors and CRA, the Debtors asked CRA to be one of its Ordinary Course

Professionals.  CRA appears in the most recent Eighth Revised List of Debtors' Ordinary Course

Professionals, dated October 31, 2007; a copy of the Debtors' Notice, together with the Eighth

Revised List, is annexed as Exhibit A.  (See page 5 of the List itself.)

6.        Under this Court's order dated April 12, 2006 (the "Bar Order"), the last day for

creditors to file their proofs of claim was July 31, 2006 (the "Bar Date").  On March 14, 2006,

before the Bar Date, CRA filed the Original Claim, attaching the pre-petition invoices for which

CRA then sought payment.  (A copy of the Original Claim is annexed as Exhibit B.)

7.        In early May 2007, CRA discovered that certain of its invoices to the Debtors --

although bearing dates in 2006 suggesting that they reflected post-petition services -- were

actually for pre-petition services, and should have been included in the Original Claim.  It

appears that some of CRA's project managers may not have promptly billed the work for their

projects related to the Debtors.  This delay, while prejudicing no one but CRA -- the Debtors did

***not*** pay CRA, post-petition, for pre-petition services -- prevented these invoices, which indicated

that they were "For Professional Services Rendered through" various dates in 2006 (i.e., post-

petition services), from being incorporated in the Original Claim.

8.        Accordingly, CRA filed the Amended Claim on or about May 18, 2007, in the

sum of $140,195.09.  The Amended Claim clearly indicated on its face that it amended the

- 3 -

Original Claim of March 14, 2006 (a copy of which CRA attached to the Amended Claim).  A

copy of the Amended Claim is annexed as Exhibit C, together with the additional invoices for

pre-petition services that were not attached to the Original Claim.

9.    On or about June 15, 2007, the Debtors filed and served their Seventeenth

Omnibus Claims Objection (the "Claims Objection"), asserting that CRA's Amended Claim

should be disallowed and expunged, with the stated basis for objection being "Untimely Claim."

A copy of the Debtors' "Notice of Objection to Claim" is annexed hereto as Exhibit D.

10.    On July 12, 2007, CRA opposed the Claims Objection, filing the "Response and

Opposition of Conestoga-Rovers & Associates, Inc. to Debtors' Objection to Claim, made within

Debtors' Seventeenth Omnibus Claims Objection," dated July 12, 2007 (the "CRA Claim

Objection Response").  A copy of the CRA Claim Objection Response (without exhibits) is

annexed hereto as Exhibit E.[1]  As that Response pointed out, the Amended Claim was not

untimely.  Rather, the Amended Claim is simply an amendment of the Original Claim, and for

the following reasons, this Court should allow the Amended Claim in its entirety.

---

[1] After CRA filed its Claim Objection Response, the Debtors' Seventeenth Omnibus Claims Objection was adjourned *sine die* with respect to CRA's Amended Claim.  Roughly four and one-half months passed, during which time neither the Debtors nor their bankruptcy counsel at Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") contacted CRA or its counsel about either (i) proceeding with the Claims Objection, and CRA's defense that the Amended Claim was a proper amendment of the Original Claim, and should be allowed under Rule 15(c), or (ii) reaching some consensual settlement or other resolution of the Claims Objection without litigation.  Suddenly, on the evening of Monday, November 26, 2007, Skadden filed a "Notice of Deadline to file Motion for Leave to File Late Claim with respect to Late Claim Filed by Conestoga-Rovers & Associates, Inc. (Proof of Claim 16604)" (the "Notice of Deadline") (docket no. 11090, a copy of which is annexed as Exhibit F).  The Notice of Deadline, filed without so much as a hint of advance notice, provides that unless CRA files a motion for leave to file a late proof of claim by December 6, 2007, i.e.**, within ten days after the date of the Notice of Deadline**, CRA's Amended Claim may be disallowed and expunged at a hearing before the Court on December 7, 2007.  While CRA believes that its Amended Claim should properly be allowed as an amendment that relates back to the timely-filed Original Claim, pursuant to Federal Rule of Civil Procedure 15(c) and Federal Rule of Bankruptcy Procedure 7015, out of an abundance of caution, and to avoid any suggestion that it has waived any legal argument for allowance of the Amended Claim, it is moving here in the alternative under Federal Rule of Bankruptcy Procedure 9006(b)(1) and the doctrine of "excusable neglect."

- 4 -

## The Legal Standard for Allowing Post-Bar Date Amendments to Proofs of Claim

11.     In this District, the standard for allowing post-bar date amendments to proofs of

claim in bankruptcy (where the original claim was timely filed) is found in *In re Integrated*

*Resources, Inc.*, 157 B.R. 66, 70-71 (S.D.N.Y. 1993):

> [A]mendment to a claim is freely allowed where the purpose is to cure a defect in
> the claim as originally filed, to describe the claim with greater particularity, or to
> plead a new theory of recovery on the facts set forth in the original claim.
> However, the court must subject post bar date amendments to careful scrutiny to
> assure that there was no attempt to file a new claim under the guise of
> amendment.  [Citations omitted.]
>
> When making this decision courts are guided by a two-pronged test espoused in
> *Black & Geddes* [58 B.R. 547 (Bankr. S.D.N.Y. 1983)].  A court must "first look
> to whether there was a timely assertion of a similar claim or demand evidencing
> an intention to hold the estate liable." *Black & Geddes, Inc.*, *supra*, at 553
> (citations omitted).  The court should then examine each fact within the case and
> determine whether it would be equitable to allow the amendment.  *Id.*
>
> When balancing the equities, important factors include:
>
>> (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on
>> part of the claimant; (3) whether other creditors would receive a windfall
>> were the amendment not allowed; (4) whether other claimants might be
>> harmed or prejudiced; and (5) the justification for the inability to file the
>> amended claim at the time the original claim was filed.
>
> See *McLean Industries [In re McLean Industries, Inc.,* 121 B.R. 704 (Bankr.
> S.D.N.Y. 1990), *supra*, at 708.
>
> While Federal Rule 15, which governs amendment to pleadings, is not directly
> applicable to claims proceedings under Bankruptcy Rule 9014, the determination
> regarding amendment parallels considerations under that rule.  "The critical
> consideration is whether the opposing party will be unduly prejudiced by the
> amendment.  "Ordinarily, to be within the scope of a permissible amendment, the
> second claim should not only be of the same nature as the first but also reasonably
> within the amount to which the first claim provided notice."  "The test under Rule
> 15 is basically the same as that developed in the case law for amending claims in
> bankruptcy; the original pleadings must give notice of the transaction or
> occurrence giving rise to the plaintiff's cause of action in the amended pleading
> and the amendment must not substantially prejudice the opposing party."
> [Citations omitted.]

12.    In *Midland Cogeneration Venture Limited Partnership v. Official Committee of Unsecured Creditors (In re Enron Corp.)*, 419 F.3d 115, 133 (2d Cir. 2005), the Second Circuit Court of Appeals restated the *Integrated Resources* standard, noting that if an amendment meets the initial threshold such that there was previously "a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable," and that the amendment is obviously intended to "relate back" to the timely-filed claim,

> courts will "examine each fact within the case and determine whether it would be equitable to allow the amendment." *Integrated Resources*, 157 B.R. at 70. Multiple factors play a role in this analysis, including whether the debtor, or other creditors, would be unduly prejudiced by the amendment, or whether, instead, other creditors would "receive a windfall" from the disallowance of the amendment, and whether the late claimant acted in good faith and the delay was justified. *See id.*; *see also* McLean Industries, 121 B.R. at 708. Of these, however, "the critical consideration is whether the opposing party will be unduly prejudiced by the amendment." *Integrated Resources*, 157 B.R. at 70.

*Enron Corp.*, 419 F.3d at 133. Moreover, "[a] claim relates back to a timely filed claim if it `(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim.'" *Aristeia Capital, L.L.C., et al. v. Calpine Corporation*, 2007 U.S. Dist. LEXIS 86514 at *12 (S.D.N.Y. November 21, 2007) (citing *Enron Corp.*, 419 F.3d at 133 [quoting *In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr.S.D.N.Y. 1990)]).

13.    Claims such as the Amended Claim are properly treated as amendments, rather than as new claims. "[A]s a general rule, amendments intended merely to increase the amount of a claim grounded in the same right to payment are not considered `new' claims under the Code." *In re Hemingway Transport, Inc.*, 954 F.2d 1, 10 (1st Cir. 1992); *accord In re Northeast Office and Commercial Properties, Inc.*, 178 B.R. 915, 923 (Bankr. D.Mass. 1995):

- 6 -

Numerous decisions involving proofs of claims for taxes illustrate this point. Courts permit late amendments increasing the amount of a tax claim so long as the increased claim is for the same type of tax, even though the amendment relates to different tax periods. Bankruptcy Rule 7015(c) is merely a more specific statement of these same principles.

14.    Amended claims must also be "reasonably within the amount to which the first claim provided notice." *In re AM International, Inc.*, 67 B.R. 79, 82 (N.D.Ill. 1986). While "the fact that a subsequent proof of claim is for a larger sum than the earlier proof does not prevent the latter from amending the former," *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr. E.D.Pa. 1988), an amended claim must bear some reasonable relation in amount to the claim it amends. *See*, e.g., *Praedium II Broadstone, LLC v. Wall Street Strategies, Inc.*, 2004 U.S. Dist. LEXIS 23308 at *18-19 (S.D.N.Y. 2004) (denying landlord leave to amend its original claim for $91,417 with an amended lease rejection claim of over $1 million); *In re Stavriotis*, 977 F.2d 1202 (affirming two lower courts in denying the IRS the right to amend a claim for about $11,000 with an amendment asserting a claim of more than $2 million, citing prejudice to other creditors, who "had no reason to believe that the debt might be so extensive").

## CRA's Amended Claim is a Proper and Permissible Amendment of its Original Claim

15.    By these standards, CRA's Amended Claim is clearly a permissible amendment of its timely Original Claim. First, the Original Claim put the Debtors on notice that CRA was asserting a claim based upon its right to payment for its pre-petition services rendered to the Debtors. Thus the Debtors cannot plausibly assert surprise or prejudice on account of the Amended Claim, which asserts no new basis for relief, no novel theory of recovery, but seeks only to include additional pre-petition invoices not incorporated in the Original Claim. (Recall the First Circuit's statement in *Hemingway Transport*, 954 F.2d at 10, that "as a general rule,

- 7 -

amendments intended merely to increase the amount of a claim grounded in the same right to payment are not considered `new' claims under the Code.")

16.     Secondly, the equities favor CRA: the Debtors, who include CRA on their current list of Ordinary Course Professionals, and who continue to employ it as of the date of this response, should not receive a windfall (in the form of services CRA rendered to the Debtors before the Petition Date, but for which CRA remains unpaid) at CRA's expense.  Nor should the Debtor's other creditors profit from a disallowance of CRA's Amended Claim.

17.     Moreover, given the size of this case -- the Debtors initially estimated their assets at more than $17 billion, with debts estimated at more than $22 billion; recent amendments to the Debtors' disclosure statement provide that by agreement with the Creditors' Committee, General Motors Corporation and the "Plan Investors," the Reorganized Debtors' total enterprise value is assumed to be $13.3 billion -- there is no prejudice to the Debtors, or to the creditor body, in allowing the Amended Claim, for a sum about $77,000 above the Original Claim.  *Compare*, e.g., *Aristeia Capital, L.L.C. v. Calpine Corp.*, *supra*, at \*17-18 (denying unsecured convertible noteholders post-bar date claims for conversion rights and damages for Calpine's breach of the indentures, and finding that the size of the newly-asserted claims supported a finding of prejudice: where noteholders "stated that their portion of the Conversion Right Claims could potentially reach $500 million[, m]uch smaller claims have been found to be prejudicial in other bankruptcies," citing *Enron Corp.*, 419 F.3d at 131).

18.     Finally, CRA has not acted inequitably or in bad faith.  It did not, for example, bill the previously unbilled pre-petition services under the rubric of post-petition services, and seek 100% payment from the Debtors -- notwithstanding CRA's status as one of the Debtor's Ordinary Course Professionals.  Rather, CRA filed its Amended Claim, seeking to supplement

the Original Claim, as soon as it realized that some of its project managers had not yet billed the

Debtors for certain pre-petition services on their projects.  Where CRA has unquestionably acted

in good faith, it would be inequitable to penalize it by disallowing its Amended Claim as

untimely.  The Court should allow the Amended Claim, as it merely amends the Original Claim,

and does not state an impermissible new claim.

### The Amended Claim should be allowed under Bankruptcy Rule 9006(b)(1)

19.    Alternatively, this Court should allow the Amended Claim under Federal Rule of

Bankruptcy Procedure 9006(b)(1), which authorizes a bankruptcy court to extend a bar date,

after the date has lapsed, by reason of excusable neglect.  That rule provides in relevant part:

> (1) *In General.*   Except as provided in paragraphs (2) and (3) of this subdivision,
> when an act is required or allowed to be done at or within a specified period by
> these rules or by a notice given thereunder or by order of court, the court for cause
> shown may at any time in its discretion. . . . (2) on motion made after the
> expiration of the specified period permit the act to be done where the failure to act
> was the result of excusable neglect.

20.    In *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*,

507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74, the Supreme Court provided a judicial gloss on

what constitutes "excusable neglect":

> Because Congress has provided no other guideposts for determining what sorts of
> neglect will be considered "excusable," we conclude that the determination is at
> bottom an equitable one, taking account of all relevant circumstances surrounding
> the party's omission.  These include, as the Court of Appeals [for the Sixth Circuit
> in *Pioneer Investment*] found, **the danger of prejudice to the debtor, the length
> of the delay and its potential impact on judicial proceedings, the reason for
> the delay, including whether it was within the reasonable control of the
> movant, and whether the movant acted in good faith.**

*Id.*, 507 U.S. at 395, 113 S.Ct. at 1498 (emphasis supplied).

21.    In interpreting *Pioneer Investment* to determine when neglect is "excusable," the

Second Circuit Court of Appeals has "taken a hard line."  *Silivanch v. Celebrity Cruises, Inc.,*

333 F.3d 355, 368 (2d Cir. 2003), *cert. denied sub nom. Essef Corp. v. Silivanch*, 540 U.S. 1105,

124 S.Ct. 1047 (2004).  In *Silivanch*, the Second Circuit noted that "despite the flexibility of

`excusable neglect' and the existence of the four-factor test in which three of the factors usually

weigh in favor of the party seeking the extension, we and other circuits have focused on the third

factor: `the reason for the delay, including whether it was within the reasonable control of the

movant.'"  *Silivanch*, 333 F.3d at 366, citing *Pioneer Investment*, 507 U.S. at 395.

22.     Nonetheless, CRA satisfies even this standard, and the Court should permit

CRA's late filing of its Amended Claim.  First, as discussed above, a $140,000 claim (itself

amending the Original Claim for just under $64,000) will not prejudice the Debtors or their other

creditors, particularly in a case the size of this one, in which the key parties have agreed that the

Debtors' total enterprise value will be assumed to be $13.3 billion.  And because the proposed

distributions to creditors are in the forms of (1) equity in the reorganized Debtors, and (2) the

right to purchase additional equity in the future -- and not in cash -- the Debtors cannot plausibly

claim that allowing CRA's Amended Claim will affect the case in any meaningful way.

23.     Moreover, CRA has acted in good faith in this matter.  Even though it was under

the mistaken impression that certain invoices bearing dates in 2006 (i.e., post-petition) were for

post-petition services, rather than pre-petition services, CRA did not send these invoices to the

Debtors, requesting post-petition payment for what were in fact pre-petition services.  Despite its

standing as one of the Debtors' Ordinary Course Professionals, CRA has been forthright in all of

its dealings with the Debtors, both before and after the Petition Date.  Within two weeks or so of

discovering that some of its invoices with 2006 were actually for pre-bankruptcy services, CRA

filed the Amended Claim to incorporate those invoices in its Original Claim.  Where, as here,

CRA has consistently shown good faith in its actions, it would be inequitable to penalize it by refusing to allow the Amended Claim as untimely.

**Waiver of separate memorandum of law; reservation of right to file additional papers**

24.    As CRA has set forth the relevant legal authorities in the body of this consolidated application and memorandum, it respectfully requests that this Court waive and dispense with the requirement of a separate memorandum of law, as provided in Local Bankruptcy Rule 9013-1(b).

25.    CRA reserves the right to file additional papers in support of this motion.

**Conclusion**

**WHEREFORE,** for all of the foregoing reasons, Conestoga-Rovers & Associates, Inc., respectfully requests that this Court allow the CRA Amended Claim against the Debtors in its entirety, for the sum of $140,195.09, together with such other and further relief as the Court may find just, proper and equitable.

Dated: New York, New York
        December 5, 2007

                                    **HODGSON RUSS LLP**
                                    Attorneys for Conestoga-Rovers & Associates, Inc.


                                    By:    /s/    Gary I. Selinger
                                           Gary I. Selinger (GIS-3555)
                                           60 East 42nd Street, 37th floor
                                           New York, New York 10165
                                           (212) 661-3535


003783/00009 NYCDOCS2 445001v1