UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :
      In re                         :     Chapter 11
                          :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                          :
                Debtors.    :     (Jointly Administered)
                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P.
2002 AND 9014 (I) APPROVING BIDDING PROCEDURES,
(II) GRANTING CERTAIN BID PROTECTIONS,
(III) APPROVING FORM AND MANNER OF SALE NOTICES,
AND (IV) SETTING SALE HEARING DATE IN CONNECTION WITH
<u>SALE OF STEERING AND HALFSHAFT BUSINESS</u>

("STEERING BIDDING PROCEDURES ORDER")

        Upon the expedited motion, dated December 10, 2007 (the "Motion"), of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for

orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004,

6006, and 9014 (a)(i) approving the bidding procedures set forth herein and attached

hereto as <u>Exhibit 1</u> (the "Bidding Procedures"), (ii) granting certain bid protections, (iii)

approving the form and manner of sale notices, and (iv) setting a sale hearing date (the

"Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of

the Debtors' assets comprising substantially all of the assets of Delphi's steering and

halfshaft Business,[1] free and clear of liens, Claims, and Encumbrances (the "Acquired

Assets") and the Sale Securities (together with the Acquired Assets, the "Purchased

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

Assets") to Steering Solutions Corporation and certain of its affiliates (the "Buyers"), pursuant to the Master Sale And Purchase Agreement dated December 10, 2007 by and between Delphi and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities")[2] and the Buyers, including Exhibits and Schedules thereto, the Ancillary Agreements, and other related documents (the "Agreement"), or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid pursuant to the Bidding Procedures, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases as defined in the Agreement (the "Pre-Petition Contracts") and the assignment of certain postpetition executory contracts and unexpired leases as defined in the Agreement (the "Post-Petition Contracts" and collectively with the Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Buyers or the Successful Bidder, and (iii) the assumption of certain liabilities as defined in the Agreement (the "Assumed Liabilities") by the Buyers or the Successful Bidder; and upon the record of the hearing held on December 20, 2007 (the "Bidding Procedures Hearing"); and after due deliberation thereon, and sufficient cause appearing therefor,

---

[2]     Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC, Delphi China LLC, Delphi Technologies, Inc., and Delphi Automotive Systems (Holding), Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion and granted herein is in the best interests of the Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

D.      The notice of the Motion and the Bidding Procedures Hearing given by the Selling Debtor Entities constitutes due and sufficient notice thereof.

E.      The Selling Debtor Entities have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement and this order, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Pre-Petition Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to creditors, stakeholders, and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the assumption and assignment of the Pre-Petition Contracts to be filed with the Court and served on the non-Debtor counter-parties thereto, and (vi) set the Sale Hearing.

F.      The Break-Up Fee and the Expense Reimbursement may be

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

payable in accordance with the terms, conditions, and limitations of the Agreement

(together, the "Bid Protections"), (i) if triggered, shall be deemed an actual and necessary

cost and expense of preserving the Selling Debtor Entities' estates, within the meaning of

sections 503 and 507(b) of the Bankruptcy Code, (ii) are of substantial benefit to the

Selling Debtor Entities' estates, (iii) are reasonable and appropriate, including in light of

the size and nature of the Sale and the efforts that have been and will be expended by the

Buyers notwithstanding that the proposed Sale is subject to higher or better offers for the

Purchased Assets, (iv) were negotiated by the parties at arms' length and in good faith,

and (v) are necessary to ensure that the Buyers will continue to pursue the proposed

acquisition of the Purchased Assets.  The Bid Protections were a material inducement for,

and condition of, the Buyers' entry into the Agreement.  The Buyers are unwilling to

commit to hold open their offer to purchase the Purchased Assets under the terms of the

Agreement unless they are assured of payment of the Bid Protections. Thus, assurance to

the Buyers of payment of the Bid Protections promoted more competitive bidding by

inducing the Buyers to hold their bid open.  Without the bid protections, other bidding

would have been limited.  Further, because the Bid Protections induced the Buyers to

submit a bid that will serve as a minimum or floor bid on which other bidders can rely,

the Buyers have provided a benefit to the Selling Debtor Entities' estates by increasing

the likelihood that the price at which the Purchased Assets are sold will reflect their true

worth.  Finally, absent authorization of the Bid Protections, the Selling Debtor Entities

may lose the opportunity to obtain the highest or otherwise best available offer for the

Purchased Assets.

       G.     The Bidding Procedures are reasonable and appropriate and

represent the best method for maximizing the realizable value of the Purchased Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1.      The Bidding Procedures, substantially in the form as set forth on

Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth herein,

are hereby approved and shall govern all proceedings relating to the Agreement, any

subsequent bids for the Purchased Assets in these cases, and the Auction, if applicable.

2.      The Selling Debtor Entities may: (i) determine, in their business

judgment, which Qualified Bid is the highest or otherwise best offer, (ii) consult with the

representative of any official committee or significant constituent in connection with the

Bidding Procedures, and (iii) reject at any time before entry of an order of the Court

approving a Qualified Bid, any bid (other than the Buyers' bid) which, in the Selling

Debtor Entities' sole discretion, is (a) inadequate or insufficient, (b) not in conformity

with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary

to the best interests of the Selling Debtor Entities, their estates, and their stakeholders.

The Selling Debtor Entities are authorized (x) to terminate the Bidding Process or the

Auction at any time if they determine, in their business judgment, that the Bidding

Process will not maximize the value of the Purchased Assets to be realized by the Selling

Debtor Entities' estates and (y) to seek Bankruptcy Court approval of the Agreement with

the Buyers.

3.      Notice of the Bid Deadline and Auction as set forth herein

constitutes good and sufficient to all potential bidders for the Purchased Assets, and no

further notice shall be required if given pursuant to this order and the Bidding

Procedures.

Sale Hearing

4.      The Court shall hold a Sale Hearing on February 21, 2008 at 10:00

a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, Room 610, New York, New York 10004, at

which time the Court shall consider the remainder of the Motion not approved by this

order, approve the Successful Bidder, and confirm the results of the Auction, if any.

Objections to the Motion, if any, shall be filed and served no later than 4:00 p.m.

(prevailing Eastern time) on February 14, 2008 (the "Objection Deadline").

5.      To the extent that the Selling Debtor Entities do not receive

additional Qualified Bids, the Selling Debtor Entities shall have the right, at their

election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however,

that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing,

the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs

12(a) and (d) of this order with a notice of the Earlier Sale Hearing on or before 20 days

prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale

no later than seven days prior to the Earlier Sale Hearing.

6.      The failure of any objecting person or entity to timely file and

serve its objection by the Objection Deadline shall be a bar to the assertion, at the Sale

Hearing or thereafter, of any objection to the Motion, the Sale, or the Selling Debtor

Entities' consummation and performance of the Agreement (including the transfer of the

Purchased Assets and the Assumed and Assigned Contracts free and clear of liens,

6

Claims, and Encumbrances), with the exception of any objection to the conduct of the Auction or the Selling Debtor Entities' selection of the Successful Bidder, which may be made at the Sale Hearing.

7.      If a non-Debtor party to any Pre-Petition Contract that is proposed to be an Assumed and Assigned Contract fails to file and serve an objection to the Cure Notice in accordance with the instructions in the Cure Notice, (a) the Court will authorize the assumption and assignment of the applicable Pre-Petition Contract at the Sale Hearing and (b) the non-Debtor party to such Pre-Petition Contract shall be entitled to recover only its Cure Amounts listed in the Cure Notice and shall be barred and enjoined from asserting at the Sale Haring or otherwise that any other amounts are owing.

8.      The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date, subject to the limitations set forth in Section 10.10 of the Agreement regarding the adjournment of the Sale Hearing.

Bid Protections

9.      The Bid Protections are hereby approved.  The Selling Debtor Entities' obligation to pay the Bid Protections pursuant to the terms of the Agreement shall survive termination of the Agreement and, until paid in accordance with the Agreement, shall constitute a superpriority administrative expense claim in favor of the Buyers pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code.  The Selling Debtor Entities shall be authorized to pay the Bid

Protections to the Buyers in accordance with the terms of the Agreement without further

order of the Court.

10.    The following provisions of the Agreement regarding payments to

the Buyers are approved and the Selling Debtor Entities are authorized, but not directed,

to perform thereunder as applicable:  (i) Section 9.2, the "Break-Up Fee; Expense

Reimbursement" and (ii) Article 10, the "Bidding Procedures."

11.    The Selling Debtor Entities' obligations to pay the Bid Protections

pursuant to the terms of the Agreement shall survive termination of the Agreement and,

until paid, shall constitute a superpriority administrative expense claim in favor of the

Buyers pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and

all administrative expenses of the kind specified in sections 503(b) and 507(b) of the

Bankruptcy Code.

<u>Notice</u>

12.    Notice of (i) the Motion, including the proposed Sale of the

Purchased Assets to the Buyers, (ii) the Sale Hearing, and (iii) the proposed assumption

and assignment of the Pre-Petition Contracts to the Buyers pursuant to the Agreement or

to a Successful Bidder shall be good and sufficient, and no other or further notice shall be

required, if given as follows:

(a)    <u>Notice Of Sale Hearing</u>.  Within seven days after entry of this
order (the "Mailing Date"), the Debtors (or their agent) shall serve the Motion, the
Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the
Bidding Procedures Order by first-class mail, postage prepaid, upon (i) the Office of the
United States Trustee for the Southern District of New York, (ii) counsel for the Buyers,
(iii) counsel for the official committee of unsecured creditors appointed in these chapter
11 cases, (iv) counsel for the official committee of equity security holders appointed in
these chapter 11 cases, (v) counsel for the agent under the Debtors' postpetition credit

facility, (vi) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past 12 months, (vii) all entities known to have asserted any lien, claim, interest, or Encumbrance in or upon the Purchased Assets, (viii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (ix) all counter-parties to the Assumed and Assigned Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice, (xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883), as amended from time to time (collectively, the "Case Management Orders")), (xv) counsel to General Motors Corporation, (xvi) counsel to the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number 2195 (Athens), (xvii) all other labor unions representing the Steering Business's hourly employees, and (xviii) any pension fund or multiemployer pension plan to which the Debtors have made contributions on account of employees of the Steering Business.

(b)     Cure Notice.  At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on each non-Debtor party to the Pre-Petition Contracts a cure notice substantially in the form attached hereto as Exhibit 2 (the "Cure Notice").  The Cure Notice shall state the cure amount that the Selling Debtor Entities believe is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's lease or contract will be assumed and assigned to the Buyers or a Successful Bidder (as appropriate) to be identified at the conclusion of the Auction.  In addition, such Cure Amounts shall be listed on a schedule to the Sale Approval Order.  Each non-Debtor party to the Pre-Petition Contracts shall have ten days from the date of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof).  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any the Pre-Petition Contract or any other document, and the non-Debtor party to the Pre-Petition Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Pre-Petition Contract against the Selling Debtor Entities, the Buyers, or the Successful Bidder (as appropriate), or the property of any of them.

(c)     Assumption/Assignment Notice For Buyers.  At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on all non-Debtor parties to the Assumed and Assigned Contracts a notice (the "Buyer Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 3, identifying the Buyers as the parties which will be assigned all of the Selling Debtor Entities' right, title, and interest in the Assumed and Assigned Contracts, subject to completion of the Bidding Process provided under the Bidding Procedures.  The non-Debtor party to a Pre-Petition Contract shall have ten days from the service of the Buyer Assumption/Assignment Notice to object to the proposed assumption and assignment to

9

the Buyers and must state in its objection, with specificity, the legal and factual basis of
its objection.  If no objection is timely received, the non-Debtor party to the Pre-Petition
Contract shall be deemed to have consented to the assumption and assignment of the Pre-
Petition Contract to the Buyers and shall be forever barred from asserting any objection
with regard to the assumption and assignment.

(d)    Assumption/Assignment Notice For A Qualified Bidder.  At
least 20 days prior to the Sale Hearing or on the business day following the Bid Deadline,
whichever is later, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder
Assumption/Assignment Notice"), substantially in the form of the notice attached hereto
as Exhibit 4, to be sent to each non-Debtor party to an Assumed and Assigned Contract
identifying all Qualified Bidders (except the Buyers, which notice shall be governed by
the Buyer Assumption/Assignment Notice set forth above).  The non-Debtor party to the
Pre-Petition Contract shall have ten days from the service of the Qualified Bidder
Assumption/Assignment Notice to object to the proposed assumption and assignment to
any Qualified Bidder and must state in its objection, with specificity, the legal and factual
basis of its objection.  If no objection is timely received, the non-Debtor party to the Pre-
Petition Contract shall be deemed to have consented to the assumption and assignment of
the Pre-Petition Contract to the Buyers or any Qualified Bidder and shall be forever
barred from asserting any objection with regard to the assumption and assignment.

(e)    Publication Notice.  On or before the Mailing Date, or as
soon therafter as is practicable, the Debtors shall cause notice substantially in the form of
the notice attached hereto as Exhibit 5, to be published in the Wall Street Journal
(International Edition), the New York Times, and the Detroit Free Press.

13.    Notwithstanding rules 6004(h), 6006(d), 7062, or 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other

Bankruptcy Rule or rule 62(a) of the Federal Rules of Civil Procedure, this order shall be

immediately effective and enforceable upon its entry and there shall be no stay of

execution of this order.

14.    To the extent that any chapter 11 plan confirmed in these cases or

any order confirming any such plan or in any other order in these cases (including any

order entered after any conversion of these cases to cases under chapter 7 of the

Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this order,

the provisions of this order shall control.  The Debtors' obligations under this order and

the portions of the Agreement pertaining to the Bid Protections shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon Debtors, and the reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed plan or plans in the Debtors' cases.

15.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

16.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          _____, 2007


_____
UNITED STATES BANKRUPTCY JUDGE

## DELPHI CORPORATION
## STEERING BUSINESS BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets that comprise the Steering and Halfshaft Business (the "Steering Business") of Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities").[1]  On December 10, 2007, the Sellers executed that certain Master Sale And Purchase Agreement (the "Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On December 10, 2007, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices,  And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement (the "Sale Motion").  On _____, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Steering Business (the "Bidding Procedures Order").  The Bidding Procedures Order set February 21, 2008 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement.  All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Bids, respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof.  The following overbid provisions and related Bidding Procedures are designed to compensate the

---

[1]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi Automotive Systems (Holding) Inc., Delphi China LLC, and Delphi Technologies, Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

Buyers for their efforts and agreements to date and to facilitate a full and fair process (the
"Bidding Process") designed to maximize the value of the Purchased Assets for the benefit of the
Selling Debtor Entities' creditors, stakeholders, and estates.  The Debtors intend to consult with,
among others, the official committee of unsecured creditors (the "Creditors' Committee")
throughout the Bidding Process.  In the event that the Debtors and any party disagree as to the
interpretation or application of these Bidding Procedures, the Bankruptcy Court will have
jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the
Steering Business (the "Assets").

## "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without representations or
warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with
respect to the Buyers, to the extent set forth in the Agreement and, with respect to a Successful
Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder
approved by the Bankruptcy Court.

## Free Of Any And All Claims And Interests

Except, with respect to the Buyers, to the extent otherwise set forth in the Agreement and,
with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase
agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the
Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens,
security interests, Encumbrances, Claims, charges, options, and interests thereon and there
against (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net
proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the bidding process (a "Potential Bidder") must
become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder,
other than the Buyers must deliver (unless previously delivered) to the Selling Debtor Entities
and their counsel at the addresses provided below, unless otherwise ordered by the Bankruptcy
Court or as otherwise determined by the Sellers in their discretion:

(a)      An executed confidentiality agreement in form and substance satisfactory to
Delphi;

(b)      Current audited financial statements of the Potential Bidder, or, if the Potential
Bidder is an entity formed for the purpose of acquiring the Purchased Assets and the
Steering Business, current audited financial statements of the equity holders of the
Potential Bidder who must guarantee the obligations of the Potential Bidder, or such

other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Sellers and their financial advisors; and

(c)      A preliminary (non-binding) proposal regarding:  (i) the purchase price range, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale if selected as a Successful Bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement will be deemed a "Qualified Bidder." Notwithstanding the foregoing, the Buyers will be deemed a Qualified Bidder for purposes of the Bidding Process.  As promptly as reasonably practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to commence due diligence with respect to the Purchased Assets and the Steering Business as described below.

## Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Purchased Assets and the Steering Business.  Due diligence access may include such management presentations as may be scheduled by the Sellers, access to data rooms, on site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree.  The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence will not continue after the Bid Deadline.  The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither the Sellers nor any of their Affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Purchased Assets and the Steering Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

## Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention:

Steven Daniels, Director, Mergers & Acquisitions, with copies to:  (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Ron E. Meisler, (ii) Delphi's in-house counsel, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Attention: Deputy General Counsel – Transactional & Restructuring; (iii) Sellers' financial advisor, Rothschild, Inc., 1251 Avenue of the Americas, New York, New York 10020, Attention: William Shaw, (iv) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude, and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received not later than 11:00 a.m. (prevailing Eastern time) by January 18, 2008 (the "Bid Deadline").  Delphi may extend the Bid Deadline once or successively, but is not obligated to do so, provided, however, for any such extension beyond February 1, 2008, Delphi shall have obtained the written consent of the Buyers, which consent shall not be unreasonably withheld.  If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the official committee of equity security holders (the "Equity Committee").  The Sellers also will provide the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (the "UAW") with notice of all Qualified Bidders and their contact information.

Qualified Bidders should note that Section 6.6 of the Agreement addresses, among other things, the terms and conditions of employment of  UAW-represented employees, and these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

### Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)     A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Purchased Assets.

(b)     An executed copy of the Agreement, together with all schedules marked (a "Marked Agreement") to show those amendments and modifications to such Agreement and schedules that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

(c)     A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Sellers in their sole discretion) payable to the order of Delphi (or such other party as the Sellers may determine) in an amount equal to $9.5 million.

(d)     Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that is satisfactory to the Sellers and their advisors.

## **Qualified Bids**

A bid will be considered only if the bid:

(a)      Is on terms and conditions (other than the amount of the consideration and the particular Liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than, those contained in the Agreement.

(b)      Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(c)      Proposes a transaction that the Sellers determine, in the good faith opinion of their senior management, after consultation with their financial advisors, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the (i) Preliminary Purchase Price plus (ii) the Assumed Liabilities plus (iii) the amount of the Break-Up Fee plus (iv) the Expense Reimbursement plus (v) $1 million.

(d)      Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment.

(e)      Includes an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement, and (iv) agrees that any non disclosure agreement or confidentiality agreement entered into with Delphi shall be enforceable by the Successful Bidder.

(f)      Include a commitment to consummate the purchase of the Purchased Assets immediately upon completion of all closing conditions within the Sellers' reasonable control, which may as early as 15 days after entry of the Sale Approval Order, or in the case of any governmental approvals, 60 days after entry of such order.

(g)      Is on terms acceptable to General Motors Corporation ("GM"), as provided in any agreement between GM and Delphi which facilitates the transactions contemplated in the Agreement.

(h)      Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, the Sellers will have the right, in their sole discretion, to entertain bids for the Purchased Assets that do not conform to one or more of the requirements specified herein and

may deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Buyers will be
deemed Qualified Bidders, and the Agreement will be deemed a Qualified Bid, for all purposes
in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be
valued based upon factors such as the net value provided by such bid and the likelihood and
timing of consummating such transaction.  Each Qualified Bid other than that of the Buyers is
referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from
the Buyers, the Selling Debtor Entities will report the same to the Bankruptcy Court and will
proceed with the Sale pursuant to the terms of the Agreement.  If Delphi receives a bid that does
not conform to one or more of the requirements specified in sections (a) –(h) above, but
determines that such bid is to be treated as a Qualified Bid with a higher value as defined in
section (c) above, then any Qualified Bidder (including the Buyer) will have the opportunity to
submit a bid at the Auction on the same basis, so long as such bid has a value of at least
$1,000,000 more than the non-conforming bid.  Delphi will notify the Buyer and all Qualified
Bidders in writing as to whether or not any bids constitute Qualified Bids no later than five days
following the expiration of the Bid Deadline.

## Bid Protection

Recognizing the Buyers' expenditure of time, energy, and resources, the Selling Debtor
Entities have agreed to provide certain bidding protections to the Buyers.  Specifically, the
Selling Debtor Entities have determined that the Agreement furthers the goals of the Bidding
Procedures by setting a floor which all other Qualified Bids must exceed.  As a result, the Selling
Debtor Entities have agreed that if the Buyers are not the Successful Bidder, the Selling Debtor
Entities will, in certain circumstances, pay to the Buyers a Break-Up Fee and/or Expense
Reimbursement.  The payment of the Break-Up Fee or the Expense Reimbursement (as
applicable) will be governed by the provisions of the Agreement and the Bidding Procedures
Order.

## Auction

If the Sellers receive one or more Qualified Bids in addition to the Agreement, the Sellers
will conduct an auction (the "Auction") of the Purchased Assets and the Steering Business upon
notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing
Eastern time) on January 28, 2008 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP,
Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois
60606 (at the Sellers' election) or such later time or other place as the Sellers notify (after
obtaining the Buyers' consent, which shall not to be unreasonably withheld) all Qualified Bidders
who have submitted Qualified Bids (but in no event later than the second Business Day prior to
the Sale Hearing), in accordance with the following procedures:

(a)     Only the Sellers, the Buyers, any representative of the Creditors' Committee and
the Equity Committee, any representative of the Sellers' secured lenders under their
postpetition credit facility (and the legal and financial advisers to each of the foregoing),
any representative of GM, any representative of the UAW, and any Qualified Bidder who
has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the

Buyers and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.  At the Auction, each Qualified Bidder shall confirm on the record that it has not engaged in any collusion with respect to the bidding process or the Sale.

(b)    At least three Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to participate in the Auction and at least two Business Days prior to the Auction, the Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe is the highest or otherwise best offer to GM, the UAW, and all Qualified Bidders who have informed the Sellers of their intent to participate in the Auction.

(c)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction and put on the record.

(d)    The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, the Bankruptcy Code, General Order M-331 issued by the United States Bankruptcy Court for the Southern District of New York, or any order of the Bankruptcy Court entered in connection herewith.

(e)    Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $1 million  higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each Qualified Bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Buyers), the Sellers will give effect to any Break-Up Fee or Expense Reimbursement that may be payable to Buyers under the Agreement as well as any assets and/or equity interests to be retained by any Seller or any Liabilities to be assumed by the Bidder.

## <u>Selection Of Successful Bid</u>

The concluding date and time of the Auction shall be stated on the record.  At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)"), as well as identifying the Alternate Bidder.  No further bids shall be considered by Delphi or the Bankruptcy Court following the conclusion of the Auction.

The Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. If, after an Auction in which the Buyers: (i) have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) are the Successful Bidder, they must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Break-Up Fee, Expense Reimbursement, and Deposit Amount.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Court for approval does not constitute the Sellers' acceptance of the bid. The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing will be held before the Honorable Judge Robert Drain on February 21, 2008 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing only if (a) notwithstanding such adjournment or extension, the Sellers would be able to comply with the time requirements of Section 9.1.2.D of the Agreement after consultation with the Buyers or (b) the Buyers are not the Successful Bidder at the Auction. In all other instances, the Sale Hearing may be adjourned only upon written consent of the Buyers, which consent shall not be unreasonably withheld. To the extent that the Selling Debtor Entities do not receive additional Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing. If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Buyers), the Selling Debtor Entities will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to the Buyers following entry of the Sale Order. If the Sellers do receive additional Qualified Bids, then, at the Sale Hearing, the Selling Debtor Entities will seek approval of the Successful Bid(s), and, at the Sellers' election, one or more next highest or best Qualified Bid(s) (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)"). The Selling Debtor Entities' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either or any such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either the Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Sellers will be authorized,

8

but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

## Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the Closing of the Sale (the "Return Date").  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit, and such Good Faith Deposit will irrevocably become property of the Sellers in full and final satisfaction of any and all Liabilities of the defaulting Successful Bidder to the Sellers with respect to the Sale.  On the Return Date, the Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

## Reservations Of Rights

The Sellers, after consultation with the agents for their secured lenders and the Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time any bid (other than the Buyers' bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in their sole discretion.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtor. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO BE ASSUMED AND ASSIGNED
IN CONNECTION WITH SALE OF STEERING AND HALFSHAFT BUSINESS

PLEASE TAKE NOTICE THAT:

           1.     Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections,

(III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In

Connection With Sale Of Steering And Halfshaft Business (the "Bidding Procedures Order")

entered by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") on _____, Delphi Corporation ("Delphi") and certain of its

affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] have entered into a Master Sale And Purchase Agreement

("Agreement") with Steering Solutions Corporation  and certain of its affiliates (the

"Buyers") for the sale of substantially all of the assets primarily used in the steering and

halfshaft Business of Delphi.  The Selling Debtor Entities hereby provide notice (the

"Notice") of their intent to assume and assign the prepetition executory contracts or unexpired

leases (the "Pre-Petition Contracts") listed on Exhibit 1 hereto to the Buyers or the Successful

Bidder, as the case may be.  Capitalized terms used but not otherwise defined in this notice

have the meanings ascribed to them in the Bidding Procedures Order or the Agreement.

　　　　2.　　On the date of the closing of the transactions contemplated by the

Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the Selling

Debtor Entities will pay the amount the Selling Debtor Entities' records reflect is owing for

prepetition arrearages, if any, as set forth on Exhibit 1 hereto (the "Cure Amount").  The

Selling Debtor Entities' records reflect that all postpetition amounts owing under the Pre-

Petition Contracts have been paid and will continue to be paid until the assumption and

assignment of the Pre-Petition Contracts and that, other than the Cure Amount, there are no

other defaults under the Pre-Petition Contracts.

　　　　3.　　Objections, if any, to the proposed Cure Amount must (a) be in

writing, (b) state with specificity the cure asserted to be required, (c) include appropriate

---

[1]　　Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC,
Delphi Technologies, Inc., Delphi China LLC, and Delphi Automotive Systems (Holding), Inc.
Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities
listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor
affiliates are collectively referred to as the "Sellers."

2

documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under

11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and

Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case

Management, and Administrative Procedures, entered October 19, 2007 (Docket No. 10661),

(e) be filed with the Bankruptcy Court in accordance with General Order M-242 (as

amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (f) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, and (g) be served in hard-copy form so that they are actually received within ten

days of service of this Notice by (i) Delphi Automotive Systems LLC, 5725 Delphi Drive,

Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: Deputy General Counsel, Transactional & Restructuring), (iii)

counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Ron E. Meisler, and Brian

M. Fern), (iv) counsel for the agent under the postpetition credit facility, Davis Polk &

Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and

Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham &

Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg

and Mark A. Broude), (vi) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii) counsel for the Buyers, Kirkland & Ellis LLP, 777 South Figueroa Street, Los Angeles, California 90017 (Att'n: Richard L. Wynne), and (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

4.    If an objection to the Cure Amount is timely filed and received, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at such date and time as the Court may schedule.  A hearing regarding the Cure Amount, if any, may at the sole discretion of the Selling Debtor Entities take place after the Closing Date.

5.    If no objection is timely received, the Cure Amount set forth in Exhibit 1 hereto will be controlling, notwithstanding anything to the contrary in any Pre-Petition Contract or any other document, and the non-Debtor party to the Pre-Petition Contract will be deemed to have consented to the Cure Amount and will be forever barred from asserting any other claims respecting such Pre-Petition Contract against the Selling Debtor Entities, the Buyers, or the Successful Bidder (as appropriate), or the property of any of them.  The failure of any objecting person or entity to timely file its objection will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Sale, or the Selling Debtor Entities' consummation of and performance under the Agreement (including the transfer of the Purchased Assets and the Pre-Petition Contracts free and clear of all Claims and Interests), if authorized by the Court.

6.    In the event, however, that the Selling Debtor Entities emerge from these chapter 11 cases (the "Emergence Date") prior to the Closing Date, then the Selling

4

Debtor entities will assume the Pre-Petition Contracts pursuant to the Debtors' plan of reorganization.  The Debtors will serve a cure notice in connection with contracts being assumed under their plan of reorganization (the "Plan Cure Notice").  The Debtors will serve the Plan Cure Notice in a time and manner specified under their proposed plan of reorganization.  The Plan Cure Notice will allow the counterparties to the Pre-Petition Contracts affirmatively to elect to receive a cash payment of the Cure Amount or to receive plan currency in satisfaction of the Cure Amount as contemplated under the Debtors' proposed plan (the "Plan Cure Election Notice").  If the closing of the Sale occurs before the Emergence Date, then the Cure Amount will be paid in cash at the closing of the Sale or as soon thereafter as practicable.  If the closing of the Sale occurs after the Emergence Date, then the payment option selected under the Plan Cure Election Notice will control.

7.      Prior to the date of the Closing Date, the Selling Debtor Entities may amend their decision with respect to the assumption and assignment of any Pre-Petition Contract and provide a new notice amending the information provided in this notice.

Dated:  New York, New York
_____, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:_____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :
    In re                         :    Chapter 11
                       :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                       :
               Debtor.    :    (Jointly Administered)
                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE  TO BUYERS IN CONNECTION
WITH SALE OF STEERING AND HALFSHAFT BUSINESS

PLEASE TAKE NOTICE THAT:

        1.    Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections,

(III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In

Connection With Sale Of Steering And Halfshaft Business (the "Bidding Procedures Order")

entered by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") on _____, 2007, Delphi Corporation ("Delphi") and certain of its

affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] have entered into a Master Sale And Purchase Agreement (the

"Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers")

for the purchase of substantially all of the assets primarily used in the steering and halfshaft

business of Delphi (the "Steering Business").

2.    Pursuant to the terms of the Agreement and subject to completion of a

competitive bidding process described in the Bidding Procedures Order and the attachments

thereto, the Selling Debtor Entities will seek to assume and assign the prepetition contracts

(the "Pre-Petition Contracts") and assign the postpetition contracts (the "Post-Petition

Contracts") listed on Exhibit 1 hereto to the Buyers at the hearing to be held at 10:00 a.m.

(prevailing Eastern time) on February 21, 2008 (the "Sale Hearing") before the Honorable

Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York

10004.

3.    To the extent that the Selling Debtor Entities do not receive additional

Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an

earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling

Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall

serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding

---

[1]    Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC, Delphi Technologies, Inc., Delphi China LLC, and Delphi Automotive Systems (Holdings), Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

2

Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing.

                4.     Objections, if any, to the assumption and assignment of a Pre-Petition Contract must (a) be in writing, (b) state with specificity the reasons for such objection, (c) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered October 19, 2007 (Docket No. 10661) (together with the Supplemental Case Management Order, the "Case Management Orders"), (d) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (e) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy form so that it is actually received within ten days after the date of this notice by (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy General Counsel, Transactional & Restructuring), (iii)

3

counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Ron E. Meisler, and Brian M. Fern), (iv) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vii) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (viii) counsel for the Buyers, Kirkland & Ellis LLP, 777 South Figueroa Street, Los Angeles, California 90017 (Att'n: Richard L. Wynne), and (ix) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

5.      If an objection to the assumption and assignment of a Pre-Petition Contract is timely filed and received, a hearing with respect to the objection will be held before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at the Sale Hearing or such date and time as the Court may schedule.  If no objection is timely received, the non-Debtor party to the Pre-Petition Contract will be deemed to have consented to the assumption and assignment of the Pre-Petition Contract to the Buyers and will be forever barred from asserting any other claims, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Pre-Petition Contract, against the Selling Debtor Entities or the Buyers, or the property of either of them.

6.      Pursuant to 11 U.S.C. § 365, there is adequate assurance of future performance that the Cure Amount set forth in the Cure Notice will be paid in accordance

4

with the terms of the Sale Approval Order.  Further, there is adequate assurance of the

Buyers' future performance under the executory contract or unexpired lease to be assumed

and assigned because of the significant resources of the Buyers.

7.    In the event that the Selling Debtor Entities emerge from these chapter 11

cases prior to the closing of the Sale, then the Pre-Petition Contracts listed on Exhibit 1 would

not be assumed under the Sale Approval Order.  Instead, the Pre-Petition Contracts listed on

Exhibit 1 would be assumed pursuant to the Debtors' plan of reorganization (the "Plan"), and any

cure amounts would be paid in accordance with the confirmed Plan.  Even if the Pre-Petition

Contracts listed on Exhibit 1 are assumed pursuant to the Debtors' Plan, the Selling Debtor

Entities would assign such contracts to the Buyers under the terms of the order approving the

sale of the Steering Business.

8.    Prior to the Closing Date, the Selling Debtor Entities may revise their

decision with respect to the assumption and/or assignment of any Pre-Petition Contract or

Post-Petition Contract and provide a new notice amending the information provided in this

notice.

5

Dated:  New York, New York

      _____, \_\_\_\_

                  SKADDEN, ARPS, SLATE, MEAGHER
                    & FLOM LLP

          By: _____

             John Wm. Butler, Jr. (JB 4711)
             John K. Lyons (JL 4951)
             Ron E. Meisler (RM 3026)
          333 West Wacker Drive, Suite 2100
          Chicago, Illinois  60606
          (312) 407-0700

                  - and -

          By: _____

             Kayalyn A. Marafioti (KM 9632)
             Thomas J. Matz (TM 5986)
          Four Times Square
          New York, New York 10036
          (212) 735-3000

          Attorneys for Delphi Corporation, et al.,
           Debtors and Debtors-in-Possession

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                             :

      In re                          :     Chapter 11
                             :

DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                             :

               Debtor.     :     (Jointly Administered)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

### NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY CONTRACT OR UNEXPIRED LEASE TO QUALIFIED BIDDERS IN CONNECTION WITH SALE OF STEERING AND HALFHSAFT BUSINESS

PLEASE TAKE NOTICE THAT:

          1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections,

(III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In

Connection With Sale Of Steering And Halfshaft Business (the "Bidding Procedures Order")

entered by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") on _____, 2007, Delphi Corporation ("Delphi") and certain of its

affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities")[1] have entered into a Master Sale And Purchase Agreement (the

"Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers")

for the purchase of substantially all of the assets (the "Purchased Assets") primarily used in

the steering and halfshaft business of Delphi (the "Steering Business").

       2.      Pursuant to the Bidding Procedures set forth in the Bidding Procedures

Order, the following parties, in addition to the Buyers, have submitted Qualified Bids for the

Purchased Assets and will participate in an Auction to be held on January 28, 2008 at the

offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New

York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other

place as the Selling Debtor Entities will notify all Qualified Bidders who have submitted

Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing).

| Qualified Bidders |
| --- |
|  |
|  |

       3.      Pursuant to the terms of the Agreement (or any asset sale and purchase

agreement that the Selling Debtor Entities may enter into with the Successful Bidder), the

Selling Debtor Entities will seek to assume and assign the prepetition contracts (the "Pre-

Petition Contracts") and assign the postpetition contracts (the "Post-Petition Contracts") listed

on Exhibit 1 hereto to the Buyers or the Successful Bidder, as case may be, subject to

---

[1]      Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC, Delphi Technologies, Inc., Delphi China LLC, and Delphi Automotive Systems (Holding), Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

approval at the hearing to be held at 10:00 a.m. (prevailing Eastern time) on February 21,

2008 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy

Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, Room 610, New York, New York 10004.

    4.  To the extent that the Selling Debtor Entities do not receive additional

Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an

earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling

Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall

serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding

Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the

Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than

seven days prior to the Earlier Sale Hearing.

    5.  Objections, if any, to the assumption and assignment of a Pre-Petition

Contract to a Qualified Bidder, who may ultimately become the Successful Bidder, must (a)

be in writing, (b) state with specificity the reasons for such objection, (c) conform to the

Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District

of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates, Certain

Notice, Case Management, And Administrative Procedures, entered by this Court on March

20, 2006 (Docket No. 2883) and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1)

And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures,

entered by this Court on October 19, 2007 (Docket No. 10661), (d) be filed with the

Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users

of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-

interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format), (e) be submitted in hard-

copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy

form so that they are actually received within ten days after the date of this notice by (i)

Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigen 48098 (Att'n: Legal

Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy

General Counsel, Transactional & Restructuring), (iii) counsel to the Debtors, Skadden, Arps,

Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John K. Lyons, Ron E. Meisler, and Brian M. Fern), (iv) counsel for the agent under

the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York,

New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official

committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York,

New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for the

official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP,

One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii) counsel

for the Purchasers, Kirkland & Ellis, LLP, 777 South Figueroa Street, Los Angeles,

California 90017 (Att'n: Richard L. Wynne), and (viii) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004 (Att'n:  Alicia M. Leonhard).

    6.  If an objection to the assumption and assignment of a Pre-Petition

Contract is timely filed and received, a hearing with respect to the objection will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, at the Sale Hearing or such other date and time as the Court

may schedule.  If no objection is timely filed and received, the non-Debtor party to the Pre-

Petition Contract will be deemed to have consented to the assumption and assignment of the

Pre-Petition Contract and will be forever barred from asserting any other claims as to such

Pre-Petition Contract, including, but not limited to, the propriety or effectiveness of the

assumption and assignment of the Pre-Petition Contract, against the Selling Debtor Entities or

the Buyers, or the property of either of them.

7.      Pursuant to 11 U.S.C. § 365, there is adequate assurance that the Cure

Amount set forth in the Cure Notice will be paid in accordance with the terms of the Sale

Approval Order.  Further, there is adequate assurance of the Qualified Bidders' future

performance under the executory contract or unexpired lease to be assumed and assigned

because of the significant resources of the Qualified Bidders.

8.      In the event that the Selling Debtor Entities emerge from these chapter 11

cases prior to the closing of the Sale, then the Pre-Petition Contracts listed on Exhibit 1 would

not be assumed under the Sale Approval Order.  Instead, the Pre-Petition Contracts listed on

Exhibit 1 would be assumed pursuant to the Debtors' plan of reorganization (the "Plan"), and any

cure amounts would be paid in accordance with the confirmed Plan.  Even if the Pre-Petition

Contracts listed on Exhibit 1 are assumed pursuant to the Debtors' Plan, the Selling Debtor

Entities would assign such contracts to the Buyers under the terms of the order approving the

sale of the Steering Business.

9.      Prior to the Closing Date, the Selling Debtor Entities may revise their

decision with respect to the assumption and/or assignment of any Pre-Petition Contract or

Post-Petition Contract and provide a new notice amending the information provided in this

notice.

Dated:  New York, New York
      _____, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: _____

    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

        - and -

By:_____

    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

6

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :        Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :        Case No. 05-44481 (RDD)
                                                          :
                              Debtor.                     :        (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

        1.        Pursuant to the **Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.
2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid
Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale
Hearing Date In Connection With Sale Of Steering And Halfshaft Business** (the
"Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern
District of New York (the "Bankruptcy Court") on _____, ____, Delphi Corporation
("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set
forth in the Agreement (the "Selling Debtor Entities") have entered into a Master Sale And
Purchase Agreement (the "Agreement") with Steering Solutions Corporation and certain of its
affiliates (the "Buyers") for the purchase of substantially all of the Debtors' assets (the
"Purchased Assects") primarily used in the steering and halfshaft business of Delphi.
Capitalized terms used but not otherwise defined in this notice have the meanings ascribed to
them in the Bidding Procedures Order.

        2.        All interested parties are invited to make an offer to purchase the
Purchased Assets in accordance with the terms and conditions approved by the Bankruptcy
Court (the "Bidding Procedures") by **11:00 a.m.** (prevailing Eastern time) on **January 18,
2008**.  Pursuant to the Bidding Procedures, the Sellers may conduct an auction for the
Purchased Assets (the "Auction") beginning at **10:00 a.m.** (prevailing Eastern time) on
**January 28, 2008** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times
Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606.

        3.        Participation at the Auction is subject to the Bidding Procedures and
the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting
the undersigned counsel to the Sellers or by accessing Delphi's Legal Information Website,
www.delphidocket.com.

4.      A hearing to approve the Sale of the Purchased Assets to the highest and best bidder will be held on **February 21, 2008** at 10:00 a.m. (prevailing Eastern time) at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, before the Honorable Robert D. Drain, United States Bankruptcy Judge.  The hearing on the Sale may be adjourned without notice other than an adjournment in open court.

5.      Objections, if any, to the proposed Sale must be filed and served in accordance with the Bidding Procedures Order and **actually received** no later than **4:00 p.m.** (prevailing Eastern time) on **February 14, 2008**.

6.      To the extent that the Selling Debtor Entities do not receive additional Qualified Bids (as defined in the Bidding Procedures Order), the Selling Debtor Entities shall have the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing.

7.      This notice is qualified in its entirety by the Bidding Procedures Order.


Dated:  _____
        New York, New York

                    BY ORDER OF THE COURT

                    John Wm. Butler, Jr. (JB 4711)
                    John K. Lyons (JL 4951)
                    Ron E. Meisler (RM 3026)
                    SKADDEN, ARPS, SLATE, MEAGHER
                         & FLOM LLP
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                         - and -

                    Kayalyn A. Marafioti (KM 9632)
                    Thomas J. Matz (TM 5986)
                    SKADDEN, ARPS, SLATE, MEAGHER
                         & FLOM LLP
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                         Debtors and Debtors-in-Possession