UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 (A) AUTHORIZING AND APPROVING (I) SALE OF
CERTAIN OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL OF
ASSETS OF STEERING AND HALFSHAFT BUSINESS FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES AND (B) AUTHORIZING
AND APPROVING TRANSACTION FACILITATION AGREEMENT

("STEERING SALE APPROVAL ORDER")

Upon the motion, dated December 10, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11

U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving

the Bidding Procedures,[1] (ii) granting certain Bid Protections, (iii) approving the form and

manner of sale notices, and (iv) setting a sale hearing date (the "Sale Hearing"), (b) authorizing

and approving (i) the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets")

comprising substantially all the assets of the steering and halfshaft Business (the "Steering

Business"), free and clear of liens, Claims, and Encumbrances to Steering Solutions Corporation

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Agreement.

and certain of its affiliates (the "Buyers") pursuant to the Master Sale And Purchase Agreement

dated December 10, 2007 (a copy of which is attached hereto as Exhibit A, and together with all

Exhibits, Schedules, and related Ancillary Agreements, the "Agreement"), by and between

Delphi and certain of its affiliates, including certain affiliated Debtors as set forth in the

Agreement (the "Selling Debtors Entities")[2] and the Buyers, or to the party submitting the

highest or otherwise best bid (the "Successful Bidder"), (ii) the assumption and assignment of

certain prepetition executory contracts and unexpired leases as defined in the Agreement (the

"Pre-Petition Contracts") and the assignment of certain postpetition executory contracts and

unexpired leases as defined in the Agreement (the "Post-Petition Contracts" and collectively with

the Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Buyers or the

Successful Bidder, and (iii) the assumption of certain liabilities as defined in the Agreement (the

"Assumed Liabilities") by the Buyers or the Successful Bidder, and (c) authorizing and

approving the Transaction Facilitation Agreement with General Motors Corporation; and the

Court having entered an order on [•], 2007 (the "Bidding Procedures Order") (Docket No. [•])(a)

approving Bidding Procedures, (b) granting certain Bid Protections, (c) approving the form and

manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held

on February 21, 2008, at which time all interested parties were offered an opportunity to be heard

with respect to the Motion; and the Court having reviewed and considered the Motion and the

arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it

appearing that the relief requested in the Motion is in the best interests of the Selling Debtor

---

[2]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi China LLC, Delphi Technologies, Inc., and Delphi Automotive Systems (Holding) Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

Entities, their estates, creditors, stakeholders, and all other parties-in-interest; and after due

deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections

363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and

sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline and Auction, the

assumption and assignment of the Assumed and Assigned Contracts, and the Cure Amounts has

been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002,

6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the

circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the

Bid Deadline, the Auction, or the assumption and/or assignment of the Assumed and Assigned

Contracts is or shall be required.

D.    In accordance with the provisions of the Bidding Procedures Order, the

Debtors have served notice of the Cure Amounts (the "Cure Notice") upon each non-Debtor

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

counterparty to a Pre-Petition Contract that the Selling Debtor Entities seek to assume and assign to the Buyers and each non-Debtor counter-party to the Post-Petition Contracts.  The service of such Cure Notice was good, sufficient, and appropriate under the circumstances and no further notice need be given in respect of establishing a Cure Amount for the respective Pre-Petition Contract.  Non-Debtor counter-parties to the Pre-Petition Contracts have had a reasonable opportunity to object to the Cure Amount and assumption and assignment of the Pre-Petition Contracts set forth in the Cure Notice.

E.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale and bidding process in compliance with the Bidding Procedures Order and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner.

F.    The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other applicable documents contemplated thereby, and the transfer and conveyance of the Purchased Assets by the Selling Debtor Entities has been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Selling Debtor Entities to consummate such transactions.

G.    The Selling Debtor Entities have demonstrated (i) good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Selling

4

Debtor Entities and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Purchased Assets and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Buyers of the Purchased Assets pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Purchased Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) prior to, and outside of, a plan of reorganization exist because, among other things, absent the Sale the value of the Purchased Assets will be substantially diminished.

H.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past 12 months, (vi) all entities known to have asserted any Interests and/or Claims (as defined below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, including all taxing authorities having jurisdiction over any of the Purchased Assets, (viii) all parties to the Assumed and Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

5

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883), as amended from time to time (collectively, the "Case Management Orders")), (xiv) counsel to General Motors Corporation; (xv) counsel to the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number 2195 (Athens); (xvi) all other labor unions representing the Business' hourly employees; and (xvii) any pension fund or multiemployer pension plan to which the Debtors have made contributions on account of employees of the Business.

I.    The Buyers are not "insiders" of any of the Debtors as that term is defined in 11 U.S.C. § 101(31).

J.    The Agreement was negotiated, proposed, and entered into by the Selling Debtor Entities and the Buyers without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Selling Debtor Entities nor the Buyers have engaged in any conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

K.    The Buyers are good-faith purchasers under 11 U.S.C. § 363(m) and, as such, are entitled to all of the protections afforded thereby.  The Buyers will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Agreement at all times after the entry of this order.  In particular, (i) the Buyers recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyers complied with the terms of the Bidding Procedures Order; (iii) the Buyers agreed to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) the Buyers in no way induced or caused the chapter 11 filing by the Debtors; (v) all payments to be made by the Buyers and other agreements or arrangements entered into by the

6

Buyers in connection with the Sale have been disclosed; (vi) the Buyers have not violated section

363(n) of the Bankruptcy Code by any action or inaction; (vii) no common identity of directors

or controlling stockholders exists between the Buyers and any of the Debtors; and (viii) the

negotiation and execution of the Agreement was at arms' length and in good faith.

L.    The Buyers are not a continuation of the Debtors or their respective estates

and there is no continuity of enterprise between the Buyers and the Debtors.  The Buyers are not

holding themselves out to the public as a continuation of the Debtors.  The Buyers are not

successors to the Debtors or their respective estates and the Sale does not amount to a

consolidation, merger, or de facto merger of the Buyers and the Debtors.  The transactions

contemplated by the Agreement are not being entered into fraudulently or to escape liability for

the Debtors' debts.

M.    The consideration provided by the Buyers for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

creditors and stakeholders than would be provided by any other practical available alternative,

and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code and under the laws of the United States, any state, territory, or possession thereof, or the

District of Columbia.

N.    The transfer of the Purchased Assets to the Buyers will be a legal, valid,

and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the

Selling Debtor Entities, shall vest the Buyers with all right, title, and interest of the Selling

Debtor Entities to the Purchased Assets free and clear of any and all liens, claims, interests, and

Encumbrances of any type whatsoever, whenever and however arising (whether known or

7

unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11

cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including

claims otherwise arising under doctrines of successor liability), including, but not limited to

those (i) that purport to give to any party a right or option to effect any forfeiture, modification,

right of first refusal, or termination of the Selling Debtor Entities' or the Buyers' interest in the

Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in

connection with, or in any way relating to the operation of the Steering Business prior  to the

Closing Date, including the transfer of the Purchased Assets to the Buyers (collectively, the

"Interests and/or Claims").

   O.  If the Sale of the Purchased Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this order, or if the Buyers would, or in the future could, be liable for any of the Interests and/or

Claims, the Buyers would not have entered into the Agreement and would not consummate the

Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling

Debtor Entities, their estates, their creditors, and their stakeholders.

   P.  The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale, pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

8

fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Interests

and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to

the cash proceeds of the Sale ultimately attributable to the property against or in which they

claim an Interest or Claim with the same priority, validity, force, and effect as they attached to

such property immediately before the closing of the Sale.

Q.      The Sale must be approved and consummated promptly in order to

preserve the viability of the Steering Businesses subject to the Sale as a going concern, to

maximize the value of the Debtors' estates and to protect the interests of the customers of the

non-Debtor Sellers.  The Sale is in contemplation of, and a necessary condition precedent to, a

reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section

1146(c) of the Bankruptcy Code applies.

R.      The Selling Debtor Entities have demonstrated that it is an exercise of

their sound business judgment to assume and/or assign the Assumed and Assigned Contracts as

applicable to the Buyers in connection with the Closing of the Sale, and the assumption and/or

assignment of the Assumed and Assigned Contracts is in the best interests of the Selling Debtor

Entities, their estates, their creditors, and their stakeholders.  The Assumed and Assigned

Contracts being assigned to, and the liabilities being assumed by, the Buyers are an integral part

of the Purchased Assets being purchased by the Buyers and, accordingly, such assumption and/or

assignment of the Assumed and Assigned Contracts and is reasonable and enhances the value of

the Selling Debtor Entities' estates.

S.      The Selling Debtor Entities have (i) cured, or have provided adequate

assurance of cure of, any default existing prior to the Closing of the Sale under any of the Pre-

Petition Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the Cure

Amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance

of compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Pre-Petition Contracts, within the meaning of 11 U.S.C.

§ 365(b)(1)(B).  The Buyers have provided adequate assurance of their future performance of

and under the Pre-Petition Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and

365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Pre-Petition Contracts to be assumed and

assigned under the Agreement shall be assigned and transferred to, and remain in full force and

effect for the benefit of, the Buyers notwithstanding any provision in the contracts or other

restrictions prohibiting their assignment or transfer.

T.      Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assumed and Assigned Contracts at this time are in the

best interests of the Selling Debtor Entities, their estates, their creditors, their stakeholders, and

other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

<u>General Provisions</u>

1.      The Motion is GRANTED.

<u>Approval Of The Agreement</u>

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

3.      Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized,

but not directed, to perform their obligations under the Agreement and comply with the terms

thereof and consummate the Sale in accordance with and subject to the terms and conditions of
the Agreement.

4.      Each of the signatories to the Agreement is authorized, but not directed, to
take all actions necessary or appropriate to effectuate the terms of this order.

5.      The Selling Debtor Entities are authorized, but not directed, to execute and
deliver, and empowered to perform under, consummate, and implement, the Agreement, together
with all additional instruments and documents as may be reasonably necessary or desirable to
implement the Agreement, and to take all further actions as may be requested by the Buyers for
the purpose of assigning, transferring, granting, conveying, and conferring to the Buyers or
reducing to possession the Purchased Assets and the Assumed and Assigned Contracts, or as
may be necessary or appropriate to the performance of the obligations as contemplated by the
Agreement.

6.      This order and the Agreement shall be binding in all respects upon all
creditors and stakeholders (whether known or unknown) of the Debtors, the Buyers, all
successors and assigns of the Buyers and the Selling Debtor Entities, all affiliates and
subsidiaries of the Buyers and the Selling Debtor Entities, and any subsequent trustees appointed
in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code,
and the Agreement shall not be subject to rejection.  To the extent that any provision of this order
is inconsistent with the terms of the Agreement, this order shall govern.

7.      The Agreement and any related agreements, documents, or other
instruments may be modified, amended, or supplemented by the parties thereto in accordance
with the terms thereof without further order of the Court; <u>provided</u> that any such modification,

11

amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'

estates in the good faith business judgment of the Selling Debtor Entities.

Sale And Transfer Of The Purchased Assets

8.      Except as expressly permitted or otherwise specifically provided for in the

Agreement or this order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of

the Agreement, the Selling Debtor Entities' right, title, and interest in the Purchased Assets shall

be transferred to the Buyers free and clear of all Interests and/or Claims, with all such Interests

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they had as against the Purchased Assets immediately

before such transfer, subject to any claims and defenses the Selling Debtor Entities may possess

with respect thereto.

9.      The transfer of the Purchased Assets to the Buyers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest

the Buyers with all right, title, and interest of the Selling Debtor Entities in and to the Purchased

Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets shall not have delivered to the Selling Debtor Entities

prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfactions, releases of all Interests and/or Claims that

the person or entity has with respect to the Purchased Assets, or otherwise, then (i) the Selling

Debtor Entities are hereby authorized to execute and file such statements, instruments, releases,

and other documents on behalf of the person or entity with respect to the Purchased Assets and

(ii) the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this

order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature

whatsoever.

11.    This order (i) shall be effective as a determination that, upon the Closing

of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling

Debtor Entities or the Purchased Assets being sold by the Selling Debtor Entities prior to the

Closing of the Sale have been unconditionally released, discharged, and terminated (other than

any surviving obligations), and that the conveyances described herein have been effected, and (ii)

shall be binding upon and shall govern the acts of all entities including, without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register, or otherwise

record or release any documents or instruments, or who may be required to report or insure any

title or state of title in or to any of the Purchased Assets.

12.    All persons and entities, including, but not limited to, all debt security

holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade

creditors, and other stakeholders, holding Interests and/or Claims of any kind or nature

whatsoever against or in the Selling Debtor Entities or the Purchased Assets being sold by the

Selling Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Steering Business, the Purchased Assets being sold by the Selling

13

Debtor Entities, the operation of the Steering Business by the Selling Debtor Entities prior to the

Closing of the Sale, or the transfer of the Purchased Assets to the Buyers, hereby are forever

barred, estopped, and permanently enjoined from asserting against the Buyers, their successors

or assigns, their property, or the Purchased Assets, such persons' or entities' Interests and/or

Claims.  Nothing in this order or the Agreement releases or nullifies any Liability to a

governmental agency under any environmental laws and regulations that any entity would be

subject to as owner or operator of any Purchased Assets after the date of entry of this order.

Nothing in this order or the Agreement bars, estops, or enjoins any governmental agency from

asserting or enforcing, outside the Court, any Liability described in the preceding sentence.

Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to

obtain penalties from the Buyers for days of violation of environmental laws and regulations

prior to Closing.

13.    All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with the ability of the Selling Debtor

Entities to sell and transfer the Purchased Assets to the Buyers, in each case in accordance with

the terms of the Agreement and this order.

Assumption And Assignment To The Buyers Of The Pre-Petition Contracts

14.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Buyers, and the Buyers' assumption on the terms set forth in the Agreement, of the Pre-Petition

Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with

respect thereto are hereby deemed satisfied.

14

15.    The Selling Debtor Entities are hereby authorized in accordance with 11
U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Buyers, effective upon the
Closing of the Sale, the Assumed and Assigned Contracts free and clear of all Interests and/or
Claims of any kind or nature whatsoever and (b) execute and deliver to the Buyers such
documents or other instruments as may be necessary to assign and transfer the Assumed and
Assigned Contracts and Assumed Liabilities to the Buyers.

16.    The Pre-Petition Contracts shall be transferred to, and remain in full force
and effect for the benefit of, the Buyers in accordance with their respective terms,
notwithstanding any provision in any such Pre-Petition Contract (including those of the type
described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or
conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor
Entities shall be relieved from any further liability with respect to the Pre-Petition Contract after
such assignment to and assumption of such contracts by the Buyers.

17.    All defaults or other obligations of the Selling Debtor Entities under the
Pre-Petition Contracts arising or accruing prior to the Closing of the Sale (without giving effect
to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of
the Bankruptcy Code) shall be cured by the Selling Debtor Entities at the Closing of the Sale or
as soon thereafter as practicable, or absent an agreement as to the Cure Amount between the
Selling Debtor Entities and the non-Debtor party to a Pre-Petition Contract, by order of this
Court, and the Buyers shall have no liability or obligation arising or accruing prior to the date of
the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-
debtor party to any Pre-Petition Contract shall be deemed to have consented to the assumption
and assignment of the Pre-Petition Contracts to the Buyers and shall be forever barred, estopped,

15

and permanently enjoined from asserting against the Selling Debtor Entities or the Buyers, or the

property of any of them, any default, breach, claim, pecuniary loss, or condition to assignment

that exists, arises, or accrues as of the date of the Closing or any purported written or oral

modification to the Pre-Petition Contracts.  The failure of the Debtors or the Buyers to enforce

prior to the Closing of the Sale one or more terms or conditions of any Pre-Petition Contracts

shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyers' rights to

enforce every term and condition of any such Pre-Petition Contracts.  There shall be no rent

accelerations, assignment fees, increases (including advertising rates), or any other fees charged

to the Buyers as a result of the assumption and assignment of the Pre-Petition Contracts.

18.    Each non-Debtor party to a Pre-Petition Contract hereby is forever barred,

estopped, and permanently enjoined from asserting against Sellers or the Buyers, or the property

of either of them, any default, breach, claim, pecuniary loss, or condition to assignment existing,

arising or accruing as of the Closing of the Sale.

<u>Additional Provisions</u>

19.    The transactions contemplated by the Agreement, and the execution,

delivery and/or recordation of any and all documents or instruments necessary or desirable to

consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt

from the imposition and payment of all stamp taxes, or any other similar taxes pursuant to

section 1146 of the Bankruptcy Code.

20.    The consideration provided by the Buyers for the Purchased Assets under

the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

Transfer Act, and under the laws of the United States, and any state, territory, or possession
thereof, or the District of Columbia.

21.    Upon the Closing of the Sale, this order shall be construed as and shall
constitute for any and all purposes a full and complete general assignment, conveyance, and
transfer of all of the Purchased Assets and the Assumed and Assigned Contracts or a bill of sale
transferring good and marketable title in such Purchased Assets and the Assumed and Assigned
Contracts to the Buyers pursuant to the terms of the Agreement.

22.    Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors
is authorized and directed to execute such documents and take all other such actions as may be
necessary to release their respective Interests and/or Claims against the Purchased Assets, if any,
as such Interest and/or Claims may have been recorded or may otherwise exist.

23.    Each and every federal, state, and governmental agency or department,
and any other person or entity, is hereby directed to accept any and all documents and
instruments necessary and appropriate to consummate the transactions contemplated by the
Agreement.

24.    All entities which are currently, or as of the Closing of the Sale may be, in
possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to
the Agreement are hereby directed to surrender possession of the Purchased Assets to the Buyers
upon the Closing of the Sale.

25.    All persons holding Interests and/or Claims against or in the Selling
Debtor Entities or the Purchased Assets of any kind or nature whatsoever shall be, and hereby
are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise
pursuing such Interests and/or Claims of any kind or nature whatsoever against the Buyers, their

17

property, their successors and assigns, or the Purchased Assets with respect to any Interest or

Claim of any kind or nature whatsoever which such person or entity had, has, or may have

against or in the Selling Debtor Entities, their estates, their officers, their directors, their

shareholders, or the Purchased Assets, including, without limitation, the following actions: (i)

commencing or continuing in any manner any action or other Proceeding against the Buyers,

their successors, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any

manner any judgment, award, decree, or order against the Buyers, their successors, assets, or

properties; (ii) creating, perfecting, or enforcing any lien or other Encumbrance against the

Buyers, their successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or

recoupment of any kind against any obligation due the Buyers or their successors; (v)

commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this order or other orders of the Court, or the agreements or

actions contemplated or taken in respect thereof; (vi) asserting that the Buyers are successors of

the Selling Debtor Entities or the Business or have liability under any theory of successor

liability for any Interest and/or Claim against or in the Business or the Purchased Assets of the

Selling Debtor Entities; or (vi) revoking, terminating, or failing or refusing to renew any license,

permit, or authorization to operate any of the Purchased Assets of the Selling Debtor Entities or

conduct any of the businesses operated by the Purchased Assets of the Selling Debtor Entities.

Following the Closing of the Sale, no holder of an Interest or Claim in or against the Selling

Debtor Entities shall interfere with the Buyers' title to or use and enjoyment of the Purchased

Assets based on or related to such Interest or Claim, or any actions that the Selling Debtor

Entities may take, or have taken, in their chapter 11 cases.

26.    The transactions contemplated by the Agreement are undertaken by the
Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and
accordingly, the reversal or modification on appeal of the authorization provided herein to
consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the
Buyers, unless such authorization is duly stayed pending such appeal.  The Buyers are purchasers
in good faith of the Purchased Assets, and are entitled to all of the protections afforded by
section 363(m) of the Bankruptcy Code.

27.    The consideration provided by the Buyers for the Purchased Assets under
the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of
the Bankruptcy Code.

28.    The Selling Debtor Entities, including, but not limited to, their officers,
employees, and agents, are hereby authorized to execute such documents and do such acts as are
necessary or desirable to carry out the transactions contemplated by the terms and conditions of
the Agreement and this order.  The Selling Debtor Entities shall be, and they hereby are,
authorized to take all such actions as may be necessary to effectuate the terms of this order.

29.    The terms and provisions of the Agreement and this order shall be binding
in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their estates,
their creditors, and their stakeholders, the Buyers, and their respective affiliates, successors, and
assigns, and any affected third parties, including, but not limited to, all persons asserting an
Interest or Claim against or in the Purchased Assets to be sold to the Buyers pursuant to the
Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under
any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such
terms and provisions likewise shall be binding.

19

30.    Notwithstanding anything contained herein to the contrary, the term
"Purchased Assets" as defined herein does not include property that is not property of the Selling
Debtor Entities' estates, such as funds that are trust funds under any applicable state lien laws.

31.    To the extent permitted by section 525 of the Bankruptcy Code, no
governmental unit may revoke or suspend any permit or license relating to the operation of the
Purchased Assets sold, transferred, or conveyed to the Buyers on account of the filing or
pendency of these chapter 11 cases or the consummation of the Sale.

32.    Sellers' payment obligations to Buyers under the Agreement (including all
Exhibits, Schedules, and Ancillary Agreements) shall survive termination of the Agreement and
shall constitute an administrative expense of the Sellers pursuant to sections 503(b) or 507(b) of
the Bankruptcy Code (except that the Sellers' obligation to pay the Break-Up Fee and Expense
Reimbursement shall have the administrative claim status set forth in the Bidding Procedures
Order and Section 9.2 Agreement as specified therein).

33.    To the extent that any chapter 11 plan confirmed in these cases or any
order confirming any such plan or in any other order in these cases (including any order entered
after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters,
conflicts with, or derogates from the provisions of the Agreement and this order, the provisions
of this order shall control.  The Debtors' obligations under this order and Agreement (including
all Exhibits, Schedules, and Ancillary Agreements) shall survive confirmation of any plan of
reorganization or discharge of claims thereunder and shall be binding upon the Debtors and the
reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed
plan or plans in the Debtors' cases.

20

34.     The failure specifically to include or to reference any particular provision of the Agreement in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

35.     This Court retains exclusive jurisdiction to interpret, construe, enforce and implement the terms and provisions of this order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Buyers, (ii) compel delivery of the Purchase Price or performance of other obligations owed to the Selling Debtor Entities  pursuant to the Agreement, (iii) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (iv) interpret, implement, and enforce the provisions of this order, (v) protect the Buyers against any Interests and/or Claims against or in the Selling Debtor Entities or the Purchased Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (vi) determine all disputes among the Selling Debtor Entities, the Buyers, and any non-Debtor parties to any Assumed and Assigned Contracts concerning, inter alia, the Selling Debtor Entities' assumption and/or assignment of any Assumed and Assigned Contract to the Buyers under the Agreement.

36.     The Selling Debtor Entities are authorized, but not directed, to enter into and perform under the Transaction Facilitation Agreement among Delphi and General Motors Corporation, dated December 10, 2007.

37.     All material provisions of this order are nonseverable and mutually dependent.

21

38.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
_____, 2007


_____
UNITED STATES BANKRUPTCY JUDGE