**Hearing Date: December 20, 2007**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :
    In re                           :         Chapter 11
                                  :
DELPHI CORPORATION, et al.,     :         Case No. 05-44481 (RDD)
                                  :
                Debtors.    :         (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO MOTION OF AUTOMODULAR ASSEMBLIES INC., TEC-MAR
DISTRIBUTION SERVICES, INC., AND AUTOMODULAR ASSEMBLIES (OHIO) INC. TO
COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND ALLOW
<u>AND DIRECT PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM</u>

("OBJECTION TO AUTOMODULAR MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this objection (the "Objection") to the Motion Of Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc. And Automodular Assemblies (Ohio) Inc. (collectively, "Automodular") To Compel Assumption Or Rejection Of Executory Contracts And Allow And Direct Payment Of Administrative Expense Claim (the "Motion"), and respectfully represent as follows:

Preliminary Statement

1.  Automodular seeks to compel the Debtors to make an immediate decision regarding the assumption or rejection of their contracts, arguing that Automodular will be seriously harmed if this relief is not granted. As the Debtors have told Automodular, pursuant to the order governing the solicitation of votes[1] on the Debtors' proposed plan of reorganization (the "Plan"), the Debtors will be mailing notices of cure amount, reflecting the Debtors' intention to assume certain contracts, on December 21, 2007 – one day after the scheduled hearing date on the Motion. In addition, pursuant to the Solicitation Procedures Order, on December 28, 2007, the Debtors will file a list of all contracts to be rejected in these cases a mere eight days after the return date of the Motion.[2] Thus, the remedy that Automodular principally seeks – notification in "a reasonable amount of time under the facts and circumstances of the case" of the Debtors' decision to assume or reject the subject contracts (Motion ¶¶ 14–15) – is in effect already available to Automodular.

---

[1] See Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, And Procedures For Temporary Allowance Of Certain Claims, (III) Hearing Date To Consider Confirmation Of Plan, (IV) Procedures For Filing Objections To Plan, (V) Solicitation Procedures For Voting On Plan, (VI) Cure Claim Procedures, (VII) Procedures For Resolving Disputes Relating To Postpetition Interest, And (VIII) Reclamation Claim Procedures, entered December 10, 2007 (Docket No. 11389) (the "Solicitation Procedures Order").

[2] Furthermore, Article 8.1(c) of the Plan specifies that the Debtors reserve the right, subject to notice, to amend, modify, supplement, or otherwise change Exhibit 8.1(a) of the Plan, which is the list of contracts to be rejected, on or before the Confirmation Date. (Plan Art. 8.1(c).)

    2.  Automodular further alleges that it has "sustained large economic losses due to Debtors' failure to pay for the services provided" under the contracts at issue in the Motion. (Id. ¶ 15.) This argument similarly is disingenuous. As a preliminary matter, the Debtors continue to make payments for undisputed postpetition obligations under their contracts with Automodular (the "Contracts"). The dispute that forms the basis of the Motion, however, involves a question of contract interpretation: whether a contractual provision that permits price adjustments based on "changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing, or quality control" entitles Automodular to a per-piece price increase based only on reduced volumes.[3] (Motion, Ex. C, General Terms And Conditions ¶ 3.)

    3.  Automodular also seeks allowance and payment of an administrative expense claim. Automodular asserts that it has been harmed by the Debtors' refusal to pay the increased prices that Automodular has demanded under the Contracts, notwithstanding the Debtors' continued payment in the ordinary course of all outstanding and undisputed invoices for goods and services in accordance with the terms of the Contracts. Automodular's claims of serious and impending harm are belied by Automodular's delay of more than a year and a half to bring this issue before the Court.

---

[3]  Automodular contends that the Debtors should be accountable for the per-piece price increase to which Automodular believes it is entitled under the terms of the Contracts since July 19, 2006. The Debtors assert that price increases based only on volume reductions in a requirements contract are not contemplated by the terms of the Contracts, and at any rate are excessive and unsupportable, based on prior bid documentation submitted by Automodular to the Debtors in connection with the negotiations that led to the Contracts.

 Automodular also asserts that the Debtors have failed to comply with a foreign exchange adjustment clause of the Contracts and failed to pay termination costs, but Automodular provides no evidence or information with respect to these allegations.

 Finally, Automodular asserts the existence of a prepetition claim, which is already scheduled for a hearing before this Court on January 31, 2008, and with respect to which Automodular has advanced a setoff claim in the amount of $549,918.39.

3

4. The Motion is simply a thinly-veiled effort to litigate a potential contract cure (or rejection damage) claim on a track that is different from that set forth in this Court's order governing the solicitation of votes on the Plan. For the reasons described more fully below, therefore, the Motion lacks merit and should be denied.

Argument

A. <u>Automodular Has Not Established Cause To Compel Immediate Assumption Or Rejection</u>

5. As a general proposition, the Bankruptcy Code does not require a debtor to decide whether to assume or reject an executory contract until the time of plan confirmation. <u>See</u> 11 U.S.C. § 365(d)(2). For good cause shown, a non-debtor party to an executory contract may seek an order from the court compelling the debtor to assume or reject a contract before plan confirmation. <u>See id</u>. In considering such a motion, however, courts must balance the interests of the debtor against those of the non-debtor party. <u>See, e.g.</u>, <u>In re Midtown Skating Corp.</u>, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980) When a party seeks to shorten the Debtor's statutory period to assume or reject a contract, the burden is on the movant to demonstrate good cause to do so. <u>In re Dana Corp.</u>, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006).

6. Courts considering such demands rarely force a debtor to prematurely assume or reject a contract, because the "interests of the creditors collectively and the bankrupt estate as a whole will not yield easily to the convenience or advantage of one creditor." <u>Public Svc. Co. of N.H. v. N.H. Elec. Coop., Inc.</u> (In re Public Svc. Co. of New Hampshire), 884 F.2d 11, 14-15 (1st Cir. 1989). It is clear that the Bankruptcy Code policy of providing the debtor with breathing space in which to decide whether to assume or reject an executory contract continues until the confirmation of a reorganization plan. <u>See, e.g.</u>, <u>In re Enron Corp.</u>, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002) (citation omitted).

4

7. Here, the Solicitation Procedures Order provides a mechanism for addressing the assumption or rejection of the Debtors' executory contracts and unexpired leases. Only eight days after the hearing on the Motion, the Debtors will identify the status of all executory contracts by filing a list of all such agreements to be rejected in these chapter 11 cases.[4] Moreover, the default rule under the Plan specifies that contracts that are not rejected will be assumed. (Plan, Art. 8.1(a).) Accordingly, the relief that Automodular seeks is entirely unnecessary.

8. At bottom, Automodular is attempting to expedite litigation over pricing disputes arising from differences of opinion about contract language. Even if Automodular were entitled under the terms of the Contracts to the recovery it now seeks, however, a bona fide business dispute provides no justification for compelling the Debtors to deviate from the assumption and rejection litigation procedures detailed in the Solicitation Procedures Order. If the Debtors determine to assume the Contracts, the Debtors will mail a notice of the cure amount to Automodular on December 21, 2007, a mere day after the Motion is heard. Automodular will then have the opportunity to object to that cure amount and have its arguments heard before this Court (Solicitation Procedures Order ¶¶ 43-45.) On the other hand, if the Debtors determine to reject the Contracts, Automodular will have 30 days in which to file a proof of claim for rejection damages. (See Plan Art. 8.3.) Whether Automodular is concerned with the amount of its potential cure or rejection damages claim or the fact of assumption or rejection of the Contracts themselves, the Solicitation Procedures Order and the Plan provide Automodular with ample means to air its grievances.

---

[4] In addition, the parties are engaged in ongoing negotiations with respect to at least one of the Contracts, which may bring significant developments in the coming weeks. It would therefore be inappropriate to force the Debtors to act to assume or reject the Contracts before required to do so by the Solicitation Procedures Order.

5

B.      Automodular Will Not Suffer Any Cognizable Harm If The Motion Is Denied

9.      Notwithstanding Automodular's contention that it has "sustained large economic losses due to Debtors' failure to pay for the services provided" (Motion ¶ 15), Automodular will suffer no cognizable harm if the Motion is denied and the Debtors wait several days after the hearing to announce their decision to assume or reject the Contracts in accordance with the Solicitation Procedures Order.  Although Automodular implies that the Debtors have not paid their postpetition bills in the ordinary course, this suggestion is incorrect.  In fact, the Debtors are honoring all of their undisputed postpetition obligations under the Contracts.  The Debtors have routinely paid their creditors' postpetition invoices in the ordinary course of business since the filing of the chapter 11 petitions more than two years ago.  Moreover, the Debtors' access to significant resources, including a substantial DIP credit facility, provides adequate assurance that the Debtors will continue to honor their postpetition obligations timely.

10.     Automodular also is adequately protected with respect to the Debtors' alleged prepetition "defaults" by its right of setoff, which it expressly invoked in its Response of Automodular Assemblies Inc, Tec-Mar Distribution Services, Inc and Automodular Assemblies (Ohio) Inc. To The Debtors' Third Omnibus Objection To Proof Of Claim 15108, filed with this Court on November 22, 2006 (the "Proof of Claim Response") (Docket No. 5688).  Specifically, in its Proof of Claim 15108 (attached as an exhibit to the Proof of Claim Response), Automodular asserts that it is entitled to offset certain prepetition accounts receivable due from Delphi totaling approximately $548,278 against other prepetition accounts payable due to Delphi totaling

6

approximately $549,918.  Automodular thus retains no significant exposure with respect to the Debtors' alleged prepetition "defaults," if any.[5]

C.  Automodular Is Not Entitled To Payment Of An Administrative Expense Claim

11.   Automodular asserts in its Motion that the Debtors have a "contractual obligation" to address price changes incurred as a result of a "change in scope of work."  (Motion ¶ 10; see id. at ¶ 4 (discussing "Delphi's obligations under the U.S. Contract").)  Automodular further contends that certain Delphi-directed volume reductions for goods and services provided by Automodular constitute a "change in scope of work" that permits it to renegotiate the per-piece price of those goods and services.  (Motion ¶¶ 4–5, 9–10.)  Even if this Court were to agree that the subject Contract provisions support Automodular's interpretation, Automodular has not provided any evidence that it is entitled to a price adjustment.

12.   Although it does not identify expressly the contract provisions that form the basis of its arguments, it would appear that Automodular is relying on paragraph 3 of the Debtors' General Terms And Conditions, which are "incorporated in, and a part of, [every] contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, . . . relating to the goods and/or services to be provided by Seller."  (E.g., Motion Ex. A, Requirements Contract, dated Apr. 3, 2007, at 2; see also Motion Ex. C, Delphi Corp. General Terms and Conditions ¶ 1 (same).)

13.   In relevant part, Paragraph 3 of the General Terms and Provisions provides:

> Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. . . .

---

[5]   Indeed, Automodular may be attempting to circumvent this Court's setoff procedures by seeking to recover cash through a Contract assumption cure payment.  Such an end run around this Court's established setoff protocols does not constitute a valid reason to grant the Motion.

7

> Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyer's payment of reasonable costs of modifications to Seller's Equipment necessary to implement such changes . . . .

(Id. ¶ 3.) Automodular contends that this provision entitles it to a per-piece price increase based only on reduced volumes of goods and services provided. This provision applies only to changes in specification, design, or scope, and that the term "scope" refers to and includes such additional tasks as "inspection," "testing," "quality control," or other incremental obligations that require <u>additional</u> work to complete, and not (as Automodular claims) for simple reductions in the volume of goods or services provided.

        14.    Even within the four corners of the General Terms And Conditions, there is additional support for the Debtors' understanding of Paragraph 3. Section 2.7 is entitled "Volume Forecasts."  It provides, in relevant part:

> Buyer may provide Seller with estimates, forecasts or projections of its future anticipated volume or quantity requirements for goods. Seller acknowledges that any such forecasts are provided for informational purposes only and, like any other forward looking projections, are based on a number of economic and business factors, variables and assumptions, some or all of which may change over time. Buyer makes no representation, warranty, guaranty or commitment of any kind or nature, express or implied, regarding any such forecasts provided to Seller, including with respect to the accuracy or completeness of such forecasts.

(Motion Ex. C, Delphi Corp. General Terms and Conditions ¶ 2.7.) That the Debtors made no representations, warranties, guaranties, or commitments of any kind with respect to volume levels under the Contracts, and that volume fluctuations are addressed in a provision completely separate from the "Specification, Design, and Scope Changes" provision apparently relied on by Automodular in connection with the Motion, further undermines its contention that the phrase "change in scope of work" refers to or includes simple volume reductions. Indeed, because the Contracts are requirements contracts, the very nature of these agreements contemplates fluctuating volumes, and thus fluctuating volume "requirements," on the part of the Debtors.

15.     The Delphi Automotive Systems Long Term Contract (the "Long Term Contract") included as Exhibit C to the Motion also expressly provides, "No price increases . . . will be made on account of (i) Seller's failure to achieve any expected cost savings or productivity improvements, or (ii) any increases in Seller's labor, materials, overhead, or other costs." (Motion, Ex. C, Long Term Contract ¶ 3.)[6]  In sum, the Contracts themselves provide no basis for Automodular's unilateral efforts to renegotiate the arm's-length agreements at issue here.

16.     There is no contractual basis to support a price increase.  Moreover, because Automodular failed to support its request for such an increase, the Debtors did not agree to the request.  As a result, the Debtors have continued to pay the existing piece contract price for goods and services provided by Automodular, without regard for the unilateral "adjustments" that Automodular now seeks.

## Conclusion

17.     For all of the reasons set forth above, the Motion should be denied in its entirety.

## Memorandum Of Law

18.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

---

[6]  Because the Long Term Contract specifically provides that Automodular will adjust prices on account of savings initiatives, the Debtors reserve all of their rights to seek a decrease in the per-piece contract price due to Automodular's cost savings realized by switching from three shifts to two shifts. (Motion, Ex. C, Long Term Contract, ¶ 3; id. ¶ 5 ("Seller agrees to reduce the per unit price of each Product on account of any savings in accordance with the Creative Improvement Plan.").)

9

WHEREFORE, the Debtors respectfully request that the court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         December 13, 2007

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP

                                By: /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 4951)
                                    Ron E. Meisler (RM 3026)
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois  60606
                         (312) 407-0700

                                   - and -

                                By: /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                         Four Times Square
                         New York, New York  10036
                         (212) 735-3000

                         Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession