Darryl S. Laddin (DL-5130)
Frank N. White (Ga. Bar No. 753377)
ARNALL GOLDEN GREGORY LLP
171 17th Street NW, Suite 2100
Atlanta, Georgia  30363-1031
(404) 873-8500

Return Date: January 25, 2008
Time:  10:00 a.m.
Objection Deadline: January 18, 2008
Time:  4:00 p.m.

Attorneys for Verizon Services Corp.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
In re                                                       :        Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :        Case No. 05-44481 (rdd)
                                                            :
                              Debtors.                      :        (Jointly Administered)
------------------------------------------------------------X

## AMENDED MOTION OF VERIZON SERVICES CORP. FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO MOBILEARIA SALE ORDER

COMES NOW Verizon Services Corp. ("Verizon") and, pursuant to that certain MobileAria Sale Order entered by this Court on July 21, 2006 and the Court's direction at the hearing held on November 29, 2007, files this Amended Motion seeking an Order directing Debtor MobileAria, Inc. ("MobileAria") to pay to Verizon immediately the sum of $497,532.61 (the "Motion").  This Motion is accompanied by the attached Exhibits and the Declaration of Margaret L. Sheppard, Manager-Operations for Verizon, which is being filed contemporaneously with this Motion (the "Sheppard Decl.").  In support of its Motion, Verizon respectfully shows the Court as follows:

## BACKGROUND

1.      MobileAria was a provider of mobile resource management solutions.  (Sheppard Decl. ¶ 6.)  On October 14, 2005, MobileAria filed its voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      Prior to MobileAria's bankruptcy filing, Verizon and MobileAria entered into that certain Agreement for GPS System and Services dated May 15, 2005, and identified as Agreement Number C0505851 (the "GPS Agreement").   A copy of the GPS Agreement is attached hereto as Exhibit A.  (Sheppard Decl. ¶ 7.)

3.      Verizon is one of the largest vehicle fleet operators in the United States and, on information and belief, was MobileAria's largest customer.  By July of 2006, and pursuant to the GPS Agreement, MobileAria had installed approximately 10,600 "Integrated In Vehicle Device" global positioning units (GPS units) compatible with the Verizon Wireless EvDO Network in Verizon fleet vehicles.  These GPS units were intended to permit the Verizon dispatchers to track the company's vehicles and efficiently schedule, dispatch and communicate with the drivers, and for the drivers to obtain and update job and facilities-related information in real time.  (Sheppard Decl. ¶ 8.)

4.      The GPS Agreement contains performance criteria and obligations that MobileAria, as the supplier, was required to meet.  These criteria and obligations include those relating to provisioning, de-provisioning, installation, maintenance, support, features, functionality, innovation, specific personnel who must be employed by MobileAria, record keeping and reporting, billing and other matters.  Because of the critical nature of the product and the need for quality performance in all of these areas, MobileAria specifically acknowledged in the GPS Agreement that "it recognizes that the Product and Services which are to be provided

under this Agreement are vital to [Verizon] and must be delivered and installed without interruption, delay, cessation or limitation and in full compliance with the scheduled developmental dates, and requirements set forth in the Order(s), and perform in full compliance with the Specifications…."  (GPS Agreement, § 18(1); see also, e.g., GPS Agreement, Exh. H, entitled "Quality Standards, Procedures and Complaints.")  (Sheppard Decl. ¶ 9.)

5.      The GPS Agreement also contains a section that requires Verizon only to pay the undisputed portion of any invoice, expressly permits Verizon to set off any amount MobileAria owes it against amounts payable by Verizon, and provides that Verizon is not obligated to pay for any services "that are not invoiced as required by this Agreement."  (GPS Agreement, § 9(b).)  (Sheppard Decl. ¶ 10.)

6.      On or about June 6, 2006, the Debtors filed their Motion for approval of the sale of MobileAria's assets and assumption and assignment of various contracts, including the GPS Agreement (the "MobileAria Sale Motion").

7.      On or about July 7, 2006, the Debtors held an auction for MobileAria's assets. Ultimately, Wireless Matrix USA, Inc. was the successful bidder for MobileAria's assets and, in the MobileAria Sale Order dated July 21, 2006, this Court approved the sale of MobileAria's assets to Wireless Matrix USA, Inc.

8.      Prior to the hearing on the Sale Motion, Verizon filed an Objection.  Verizon filed its Objection in part because of numerous substantial defaults under the GPS Agreement. Briefly, the problems included, among other things, (i) significant failures in the product installation process (resulting in prolonged unavailability), (ii) inaccurate and inconsistent reporting of installed units, (iii) the failure to timely repair defective units (causing extended service outages), (iv) the failure to provide sufficiently trained support personnel, (v) activation

of units on the wrong data plans, or on plans that were inappropriate for the amount of data that MobileAria was transmitting (resulting in substantial charges to Verizon that would not have been incurred but for the errors), (vi) the failure to deactivate uninstalled units (again, resulting in substantial charges that would not have been incurred but for the errors), and (vii) the failure to implement accurate and required billing software (resulting in inaccurate bills, including double-billing). (Sheppard Decl. ¶ 13.)

9.    As a consequence of Verizon's Objection, the MobileAria Sale Order included specific provisions designed to provide for payment to Verizon of unpaid amounts due and owing from MobileAria to Verizon as administrative expenses of MobileAria's estate under 11 U.S.C. §§ 503(b) and 507(a)(1), with priority over claims of MobileAria's affiliates. (MobileAria Sale Order, ¶ 42.) Specifically, the Sale Order provides in paragraph 42(a) that, if Verizon and MobileAria fail to resolve the matters consensually, Verizon may recover up to the sum of $700,000 for errors by MobileAria that resulted in damages to Verizon and that were known as of the date of the Sale Order (the "Schedule 3 Disputes"). (MobileAria Sale Order, ¶ 42(a).)[1]

10.   The MobileAria Sale Order also provides that any payments by MobileAria to Verizon for Schedule 3 Disputes will correspondingly reduce the sum remaining under the $700,000 cap. To date, MobileAria has paid Verizon the sum of $202,467.39 for the Schedule 3 Disputes. However, Verizon has been unable to resolve the matters set forth in this Motion consensually with MobileAria and, therefore, brings this Motion to recover the remaining $497,532.61.

---

[1]    The Sale Order also provides that Verizon may seek to recover damages of up to an additional $1 million for items not known as of the date of the Sale Order. (MobileAria Sale Order, ¶ 42(b).) This Motion does not seek to recover under paragraph 42(b) of the Sale Order.

**RELIEF REQUESTED**

11.    Verizon brings this Motion to enforce MobileAria's liability under the MobileAria Sale Order for the reimbursement to Verizon of certain charges incurred by Verizon that resulted from three types of errors that MobileAria made in connection with the GPS Agreement.

**Overage Charges**

12.    Verizon incurred a total of $549,929.69 in additional charges as a result of MobileAria's failure to follow Verizon's written instructions in Service Order Activation Forms ("SOAFs") to activate GPS units on the correct data usage plan (the "Overage Charges"). (Sheppard Decl. ¶ 16.)

13.    The data to and from each GPS unit was transmitted, via wireless network, to and from MobileAria's servers.  At all relevant times, the wireless provider, Verizon Wireless, offered two types of data plans.  The first data plan was an unlimited usage plan and had a fixed cost per month, per unit (the "Unlimited Plan").  The second data plan was a plan that allowed up to two megabytes of usage per month and had a lesser fixed cost, but imposed additional fees if the volume of monthly usage exceeded two megabytes of usage (the "2 Meg Plan").  Each GPS Unit, therefore, was activated under either the Unlimited Plan or the 2 Meg Plan.  (Sheppard Decl. ¶ 17.)

14.    For GPS units located in trucks for which Verizon only needed to monitor the location of the vehicle, review driving routes and patterns and/or accumulate vehicle mileage, MobileAria was aware at all relevant times that the GPS units would be activated under the 2 Meg Plan.  For GPS units located in trucks for which Verizon also needed to use the GPS units in a tactical mode to enhance the dispatch of field service personnel and/or in a strategic mode to

allow for review of routes, stops and related information as required – which modes require the transmissions of larger volumes of data -- MobileAria was aware at all relevant times that the GPS units would be activated under the Unlimited Plan.  This was also the same methodology with respect to the choice of data plans that Verizon used with its prior supplier of GPS units, @Road.  (Sheppard Decl. ¶ 18.)

15.    Verizon completed and submitted to MobileAria a SOAF listing all trucks in which GPS units were to be installed.  Each SOAF identified, among other things, the wireless plan that should be used for the unit.  MobileAria then forwarded the data from the SOAF to Verizon Wireless with instructions to activate an account and data plan for the unit that was to be installed in the truck, in accordance with the specification given by Verizon in the SOAF.  In other words, at all relevant times, MobileAria itself was responsible for contacting the wireless carrier to set up the data plan for each GPS unit being installed in each truck.  (Sheppard Decl. ¶ 19.)

16.    The Overage Charges resulted from two types of errors by MobileAria. (Sheppard Decl. ¶ 20.)

17.    First, Verizon incurred $142,701.33 of the Overage Charges as a result of MobileAria initially failing to activate GPS units on the correct data usage plan.  In each instance in the Southeast, MobileAria activated a GPS unit on a 2 Meg Plan when the unit had been designated by Verizon in the corresponding SOAF to be activated on an Unlimited Plan.  In each instance in Texas and New York, MobileAria activated a GPS unit on an Unlimited Plan when the unit had been designated by Verizon in the corresponding SOAF to be activated on a 2 Meg Plan.  This occurred with respect to 62 units in the Southeast, 84 units in Texas and 71 units in New York.  Set forth on Exhibit B-1 to this Motion is a list of all telephone numbers at issue for

these units, showing among other things: (i) the original price plan requested by Verizon for each misactivated unit, (ii) the telephone number associated with each misactivated unit, (iii) the actual plan activated for each misactivated unit, and (iv) the additional charges incurred for each misactivated unit because of the failure of MobileAria to activate the unit on the selected plan. Attached as Exhibit B-2 to this Motion are the SOAFs associated with Exhibit B-1, showing that (i) in the Southeast Verizon requested the Unlimited Plan for the affected units, and (ii) in Texas and New York Verizon requested the 2 Meg Plan for the affected units.   As set forth on Exhibit B, the Overage Charges for this type of error total $115,688.18 for the Southeast, $19,346.57 for Texas and $7,666 for New York, for a total of $142,701.33.  To date, MobileAria has failed to reimburse Verizon for any of these Overage Charges.   Therefore, the sum of $142,701.33 remains due and owing by MobileAria to Verizon for these Overage Charges.  (Sheppard Decl. ¶ 21.)

18.    Second, Verizon incurred at least $407,228.36 of Overage Charges as a result of MobileAria failing to change the data usage plan of a unit that was previously activated on a 2 Meg Plan.  In each such instance, MobileAria initially had activated the GPS unit on a 2 Meg Plan, but the unit was subsequently transferred to an area in which Verizon required its GPS units to operate with enhanced functionality, and thus under the Unlimited Plan.  Moreover, and in each such case, Verizon had selected the Unlimited Plan on the SOAF submitted to MobileAria for the vehicle in which the unit was to be installed.  Nonetheless, MobileAria never upgraded the wireless service provided to these units from the 2 Meg Plan to the Unlimited Plan. (Sheppard Decl. ¶ 22.)

19.    For example, in many circumstances, MobileAria initially activated a GPS unit on a 2 Meg Plan in Pennsylvania.  Verizon later submitted a SOAF for a GPS unit to be installed in

a vehicle located in the Midwest (where the GPS units operate with enhanced functionality, and thus transmit larger volumes of data) and accordingly selected the Unlimited Plan on the SOAF submitted to MobileAria for that unit.  But MobileAria then programmed the Pennsylvania Mobile Telephone Number (originally activated under the 2 Meg Plan) into a unit located in the Midwest, without upgrading the wireless plan from a 2 Meg Plan to an Unlimited Plan, as Verizon had specified for the unit installed in that truck in its SOAF submitted to MobileAria. (Sheppard Decl. ¶ 23.)

20.    This problem occurred with respect to 215 units.  Set forth on Exhibit C-1 to this Motion is a summary of the charges associated with each of the affected accounts, including each of the invoices at issue, the number of lines and the total charges for each account.  Attached as Exhibit C-2 to this Motion are SOAFs representing all of these identified Overage Charges, showing that Verizon requested the Unlimited Plan for each relevant unit.  To date, MobileAria has failed to reimburse Verizon for any of these Overage Charges.  Therefore, the sum of $407,228.36 remains due and owing by MobileAria to Verizon for these Overage Charges. (Sheppard Decl. ¶ 24.)[2]

21.    Collectively, the sum of $549,929.69 remains due and owing by MobileAria to Verizon for the Overage Charges.  (Sheppard Decl. ¶ 26.)

---

[2]    With respect to this second type of Overage Charge, Verizon's original Motion, filed on September 25, 2007, had an Exhibit B that included some of the units listed in Exhibit C-1 to this amended Motion.  At the time Verizon filed the original Motion, Verizon knew that these units had exceeded the usage allowance under the 2 Meg Plans.  Because the units had account numbers associated with regions in which Verizon typically required less functionality and therefore requested activation of units for trucks on 2 Meg Plans, Verizon did not have reason to believe that the units in fact were associated with trucks for which Verizon had requested units with Unlimited Plans.  In connection with a further review of the overage issue subsequent to November 29, 2007, and prompted in part by the Court's questions concerning the SOAFs during the November 29, 2007 hearing, Verizon reviewed the SOAFs attached as Exhibit C-2 to this amended Motion and was able to determine what actually and specifically had happened with respect to these units, as described in paragraphs 18-20 above.  There still are a limited number of units from Exhibit B to the original Motion for which Verizon selected the 2 Meg Plan, for which MobileAria properly activated on the 2 Meg Plan and for which the usage then impermissibly exceeded 2 megs.  Based on the Court's comments at the November 29, 2007 hearing, however, Verizon has elected not to seek to recover its damages associated with those units in the amended Motion.  (Sheppard Decl. ¶ 25.)

**Overactivation Charges**

22.      Verizon also incurred additional expenses as a result of GPS units that were activated at MobileAria's request, but were never installed, in the total amount of $133,945.20 (the "Overactivation Charges").   More specifically, based on anticipated installation schedules and prior to installation, MobileAria would activate GPS units with Verizon Wireless.   In certain instances, the scheduled number of units actually to be installed was less than the anticipated number of units to be installed.   (The difference between the anticipated installation schedule and the actual installation scheduled resulted from, in many instances, weather conditions that posed a safety hazard to the installers.)   In lieu of exhausting previously activated units, MobileAria would continue to activate new GPS units for nightly scheduled installs, resulting in a surplus of activated but uninstalled GPS units billed to the Verizon accounts.   (Sheppard Decl. ¶ 27.)

23.      MobileAria easily could have avoided the overactivations by using proper tracking methods.   Merely because a unit had been activated for a particular truck did not mean that the unit could not be used in another truck if the installation for the first truck had been missed.   Therefore, instead of activating additional account numbers each night that installations occurred that were equivalent to the number of units to be installed that night, MobileAria simply could have exhausted any unused account numbers from the previous night or nights and requested new account numbers sufficient to meet only the deficit needed for the specific installations on the particular night.   MobileAria's practice of continuing to activate new account numbers each night without keeping track of and using unused account numbers resulted in the overactivation of accounts and, therefore, in the Overactivation Charges that accrued on the Verizon accounts.   (Sheppard Decl. ¶ 28.)

24.     As more particularly described on Exhibit D to this Motion, at issue are 1151 account numbers that MobileAria activated, but that were not used for installed units.   The Overage Charges associated with these 1151 account numbers total $133,945.20, as set forth on Exhibit D.  (Sheppard Decl. ¶ 29.)

25.     To date, MobileAria has acknowledged its liability for Overactivation Charges by reimbursing Verizon for $39,300.00 of the Overactivation Charges.   Therefore, the sum of $94,645.20 remains due and owing by MobileAria to Verizon for the Overactivation Charges. (Sheppard Decl. ¶ 30.)

### Summary of Amount Owed by MobileAria to Verizon

26.     In sum, after deduction of the $39,300 with respect to the Overactivation Charges, MobileAria owes to Verizon the sum of $644,574.89 with respect to the Overage Charges and Overactivation Charges.  Because paragraph 42(a) of the Sale Order limits MobileAria's liability to a total of $700,000 for any type of dispute on Schedule 3 of the MobileAria Sale Order, and because MobileAria already has paid to Verizon the sum of $202,467.39 (including $39,300 with respect to the Overactivation Charges), MobileAria is liable to Verizon for the balance of $497,532.61.  (Sheppard Decl. ¶ 31.)

### MEMORANDUM OF LAW

27.     Verizon respectfully submits that this Motion does not present a novel issue of law, and is supported by citations to authority.  Therefore, Verizon respectfully requests that the Court waive the requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules requiring that a motion be accompanied by a memorandum of law.

WHEREFORE, for the foregoing reasons, Verizon respectfully requests that its Motion be granted, that the Court order MobileAria to pay to Verizon the sum of $497,532.61 immediately, together with pre-judgment interest allowable under applicable law, and that the Court grant Verizon such other and further relief as may be just and proper.

This 18th day of December, 2007.


Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

By: /s/Darryl S. Laddin
     Darryl S. Laddin (DL-5130)
     Frank N. White (Ga. Bar. No. 753377)
     171 17th Street, NW, Suite 2100
     Atlanta, Georgia  30363
     (404) 873-8500

     Attorneys for Verizon

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing document by causing a true and correct copy

to be sent by Federal Express overnight delivery service, addressed as follows:


Delphi Corporation
Attn: General Counsel
5725 Delphi Drive
Troy, Michigan  48098

Albert Togut
Neil Berger
Togut, Segal & Segal LLP
One Penn Plaza
New York, New York  10119


Donald Bernstein, Esq.
Brian Resnick, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York  10017

Robert J. Rosenberg, Esq.
Mark A. Broude
Latham & Watkins LLP
885 Third Avenue
New York, New York  10022


Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver
   & Jacobson LLP
One New York Plaza
New York, New York  10004

Alicia M. Leonhard, Esq.
Office of the U.S. Trustee for the
   Southern District of New York
33 Whitehall Street, Suite 2100
New York, New York  10004


Dated:  December 18, 2007


/s/Darryl S. Laddin
Darryl S. Laddin