**Bidding Procedures Hearing Date And Time: December 20, 2007 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
    In re                                        :        Chapter 11
:
DELPHI CORPORATION, et al.,            :       Case No. 05-44481 (RDD)
:
                   Debtor.          :       (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' REPLY IN SUPPORT OF DEBTORS' EXPEDITED MOTION FOR ORDERS UNDER 11
U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (A) (I)
APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN BID PROTECTIONS, (III)
APPROVING FORM AND MANNER OF SALE NOTICES AND (IV) SETTING SALE HEARING
DATE, (B) AUTHORIZING AND APPROVING (I) SALE OF CERTAIN DEBTORS' ASSETS
COMPRISING SUBSTANTIALLY ALL ASSETS PRIMARILY USED IN DEBTORS' STEERING
AND HALFSHAFT BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES,
(II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES, AND (C)
<u>AUTHORIZING AND APPROVING TRANSACTION FACILITATION AGREEMENT</u>

("DEBTORS' REPLY – STEERING SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), submit this reply (the "Reply") in support of the Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, and 9014 (a) (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner of Sale notices, And (iv) Setting Sale Hearing Date, (b) Authorizing And Approving (i) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Businesses Free And Clear Of Liens, Claims, And Encumbrances, (ii) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii) Assumption Of Certain Liabilities, And (c) Authorizing And Approving Transaction Facilitation Agreement (the "Motion") (Docket No. 11390).[1]  The Debtors filed the Motion on December 10, 2007. Although the Debtors received no objections to the Motion, an affiliate of Sun Capital Partners, Inc. ("Sun Capital"), Steering Holding LLC, filed a "Limited Response" to the Motion (Docket No. 11480).  This Reply addresses the Sun Capital Limited Response to the Motion.

## Introduction

1.    The sale process that the Debtors have followed to date with respect to the Steering Business is entirely consistent with the requirements of the Bankruptcy Code and with generally accepted best practices for divestitures in the chapter 11 context.  As discussed in the Motion, the Debtors and their advisors have actively marketed the Steering Business for more than eighteen months.  They approached approximately ninety potential purchasers.  Of these, approximately thirty executed confidentiality agreements and conducted extensive due diligence. The Debtors provided these potential purchasers offering memoranda, supporting materials, and

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

2

management presentations. These parties had access to a regularly updated electronic data room, and they had opportunities to meet with key personnel. All of them had an opportunity to make proposals concerning the Steering Business at the conclusion of this process. A number of them did so. Sun Capital was one of them.

2. The Debtors thoroughly evaluated the proposals they received, including the one from Sun Capital. For the reasons set forth in the Motion, the Debtors determined, in the exercise of their business judgment, that the proposal submitted by the Buyers offered the most advantageous terms. In its Limited Response, Sun Capital requests that the Court summarily replace the Buyers as stalking horse bidder with Sun Capital's affiliate. In the documents filed together with the Limited Response, Sun Capital claims to have submitted to the Court a proposal that is "far superior" to the Buyers' proposal "from an economic perspective" but that is "identical from all other perspectives." Limited Response ¶ 8. Sun Capital also asserts that "changing stalking horses [now] will not delay or alter in any manner the process for the auction and sale of the [S]teering [B]usiness." Id.

3. Sun Capital's continued interest in the Steering Business is gratifying to the Debtors. The Debtors have evaluated Sun Capital's new proposal carefully, comparing its terms and conditions to those set forth in the Agreement with the Buyers and giving due consideration to the totality of the circumstances. Based on that review, the Debtors have concluded that, on balance, supplanting the Buyers with Sun Capital would give rise to more risks than benefits. At this point, a change of stalking horse bidders would not enhance the sale prospects for the Steering Business and therefore would not serve the best interests of the Debtors' estates. By contrast, Sun Capital will suffer no harm if the Court denies the relief requested in the Limited Response. If Sun Capital maintains its interest in acquiring the Steering

3

Business, it may participate, and is encouraged to participate, in the auction to be scheduled by this Court.

### Debtors' Reply To Limited Response

A.    Sun Capital Lacks Standing To Challenge The Debtors' Business Judgment

      4.    As a threshold matter, in considering the merits of the relief requested in the Limited Response, the Court should consider whether Sun Capital has standing even to seek what it is requesting of this Court.  See, e.g., In re Caldor, Inc., 193 B.R. 182, 185 (Bankr. S.D.N.Y. 1996) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)) ("the issue of standing 'is a threshold question in every federal case'").  "The concept of standing subsumes a blend of constitutional requirements and prudential considerations."  In re Caldor, Inc., 193 B.R. at 185.  In principle, the business of federal courts is limited to resolving "'questions presented in an adversary context.'"  Id. (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980).  When raising such a question before a federal court, "the allegedly aggrieved party [must] demonstrate actual or threatened injury as a result of wrongful conduct, that the injury [may] be traced to the challenged action and that it is likely to be redressed by a favorable decision."  Caldor, 193 B.R. at 186.

      5.    Likewise, an entity that is neither a creditor nor a shareholder of a debtor lacks standing under Bankruptcy Code section 363(b) to challenge a debtor's proposed disposition of assets outside the ordinary course of business.  Id.; cf. In re McLean Indus., Inc., 96 B.R. 440, 445-47 (Bankr. S.D.N.Y. 1989).  It is "important that only parties with standing be able to object to bankruptcy sales, for few things could more thoroughly undermine the sale process in bankruptcy than the prospect of strangers to the transaction having the ability to file papers to interfere or frustrate the sales process."  In re Quanalyze Oil & Gas Corp., 250 B.R. 83 (Bankr. W.D. Tex. 2000).

6. Although Sun Capital has styled its pleading as a "response," in substance, it is an objection the Debtors' exercise of their business judgment under Bankruptcy Code section 363. But Sun Capital appears to hold no claim against or interest in any of the Debtors (or, if it does hold such a claim or interest, Sun Capital has not asserted it). As a consequence, Sun Capital does not have standing to challenge the Debtors' business judgment in this context. Sun Capital has suffered no redressable injury as a result of the Debtors' selection of the Buyers as stalking horse bidder. Cf. Kabro Assocs. v. Colony Hill Assocs. (In re Colony Hill Assocs.), 111 F.3d 269, 273 (2d Cir. 1997) ("[A]n unsuccessful bidder – whose only pecuniary loss is the speculative profit it might have made had it succeeded in purchasing property at an auction [conducted under Bankruptcy Code section 363] – usually lacks standing to challenge a bankruptcy court's approval of a sale transaction."). Given that the auction here has yet to occur and that Sun Capital still has the opportunity to acquire the Steering Business, it is difficult to see how Sun Capital is an aggrieved party that is "directly and adversely affected pecuniarily" by the Debtors' selection of the Buyers as stalking horse bidder. Id.

B.  Proceeding With The Buyers As Stalking Horse Bidder Reflects Sound Business Judgment

7. The Limited Response suggests that, with the exception of a few terms, the proposed transaction with Sun Capital would be "identical" to that which the Debtors have proposed and "'apples to apples' on all terms." Limited Objection ¶ 5. Although the words on the page might be the same, the deal that Sun Capital is proposing is different from that which the Debtors have proposed and carries risks that ultimately could affect, among other things, the

5

timing of the sale, the realizable value of Steering Business, and the likelihood of successfully closing the transaction.[2]

8.  As an example of the execution risk, Sun Capital does not yet have an executed supply agreement with General Motors, as the Buyers do.  Although Sun Capital appears to have agreed to the substantive terms of the Agreement, there are other parties with which Sun Capital still needs to negotiate.  Negotiating and documenting these agreements is not a task that can be completed overnight.  In light of the Debtors' current timeline for emergence from chapter 11, if the sale process is delayed, the Debtors will risk losing their ability to complete the divestiture under the protections afforded by Bankruptcy Code section 363.[3]

9.  Accordingly, based on the totality of the circumstances, the Debtors have determined to maintain their support for the Buyers as the stalking horse bidder.  Thus, the relief requested in the Limited Response should be denied.  Nevertheless, the Debtors appreciate Sun Capital's continued interest in the Steering Business.  The Debtors encourage Sun Capital to bid for the Steering Business at the auction, and they will endeavor to facilitate Sun Capital's participation to the extent practicable and appropriate.

---

[2]  Although Sun Capital asserts that it "will adopt, in full, without change, all of the relief sought in the Debtors' bid procedures order," that assurance is contingent upon the Debtors' fulfillment of an obligation to "cooperate" and to provide Sun Capital with "reasonable access."  Limited Objection ¶ 6 n. 2.  These are broad terms which, when used in similar contexts, can often give rise to disputes.  Any such dispute here would divert the Debtors' resources and likely delay the sale.  In any case, the Agreement expressly requires the Debtors to provide the Buyers reasonable access "to the employees, facilities, and books of the [Steering] Business."  Agreement § 6.7.

[3]  See First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors'-in-Possession § 7.29, "Consummation of Divestiture Transactions" ("In the event that the Bankruptcy Court enters an order on or prior to the Effective Date authorizing a Debtor(s) to sell assets free and clear of liens, claims, and encumbrances, such Debtor(s) shall be permitted to close on the sale of such assets subsequent to the Effective Date free and clear of liens, claims, and encumbrances pursuant to sections 363 and 1123 of the Bankruptcy Code.").

Conclusion

WHEREFORE the Debtors respectfully request that the Court (a) deny the relief requested in the Limited Response (b) enter an order (i) approving the Bidding Procedures, (ii) granting the Bid Protections, (iii) approving the Notice Procedures, and (iv) setting the Sale Hearing, and (c) granting them such other and further relief as is just.

Dated:   New York, New York
         December 19, 2007

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      George N. Panagakis (GP 0770)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

7