**Hearing Date: December 20, 2007**
                **Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,

Debtors and Debtors-in-Possession
Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
    In re                                 :        Chapter 11
                                            :
DELPHI CORPORATION, et al.,      :        Case No. 05-44481 (RDD)
                                            :
                      Debtors.   :        (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO (A) NOTICES OF
ASSUMPTION AND/OR ASSIGNMENT AND (B) CURE NOTICES IN CONNECTION
WITH INTERIORS AND CLOSURES BUSINESSES SALE

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this omnibus reply (the "Reply") in support of the Debtors' Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Cockpits And Interior Systems And Integrated Closure Systems Businesses Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No. 10606) (the "Sale Motion").[1]  The Debtors respectfully request that the Court approve the Sale Motion, except with respect to the outstanding objections and issues related to assumption and/or assignment of executory contracts, and that any such outstanding objections be adjourned to the January 25, 2008 omnibus hearing, as set forth below.

Preliminary Statement

1. As part of the Debtors' transformation plan, the Debtors identified the cockpits and interior systems business (the "Interiors Business") and the integrated closure systems business (the "Closure Business," and together with the Interiors Business, the "Interiors and Closures Businesses") as non-core businesses subject to disposition.  Accordingly, following extensive marketing efforts, on October 15, 2007, the Selling Debtor Entities entered into a Master Sale and Purchase Agreement (the "Agreement") with Inteva Products, LLC ("Inteva")

---

[1] Unless otherwise defined herein, capitalized terms used herein have the meanings ascribed to them in the Sale Motion.

2

(together with certain of its affiliates, the "Buyers") for the sale of the Interiors and Closures Businesses.[2] The Agreement contemplates a global divesture of the Interiors and Closures Businesses to the Buyers for the Purchase Price of $106 million, which is comprised of the preliminary purchase price of approximately $80 million, subject to certain adjustments, and the Post-Closing Payments of approximately $26 million.[3]

2.    On October 26, 2007, the Court entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (i) Approving Bidding Procedures, (ii) Granting Certain Bid Protections, (iii) Approving Form And Manner Of Sale Notices, And (iv) Setting Sale Hearing In Connection With Sale Of Interiors And Closures Businesses (Docket No. 10732) (the "Bidding Procedures Order").  Under the Bidding Procedures Order, the Debtors established November 26, 2007 as the deadline to submit higher or otherwise better offers for the Interior and Closure Businesses (the "Bid Deadline") and scheduled the Sale Hearing for December 20, 2007.

3.    The Selling Debtor Entities did not receive any higher or otherwise better bids (i.e., no Qualified Bids) by the Bid Deadline.  In addition, other than certain objections to

---

[2]  Contemporaneously therewith, the Debtors filed the Sale Motion (Docket No. 10606).  The Sale Motion sets forth the Debtors' sound business justifications for pursuing a sale of the Interiors and Closures Businesses at this time.

[3]  The Post-Closing Payment is comprised of two components.  First, in addition to the Preliminary Purchase Price, on each of the first five anniversaries of the closing date, Inteva would pay $1 million to DAS LLC.  Second, on the first business day following the earlier of (i) the business day immediately following the fifth anniversary of the closing date and (ii) the date when the Buyers sell substantially all of the ownership interests in the Interiors and Closures Businesses and the joint ventures being sold under the Agreement (a sale to an unrelated third party of 80% or more of the equity of Inteva would be deemed to be a sale of such assets), Inteva would pay $21 million to DAS LLC.

the assumption and assignment of certain executory contracts reflected on <u>Exhibit A</u> hereto, there are no substantive objections to the sale of the Interiors and Closures Business to the Buyers.[4]

Assumption And Assignment Of Executory Contracts

4.　　In accordance with the Bidding Procedures Order, on November 16, 2007 and November 30, 2007, the Debtors served (i) notices of assumption and assignment of certain executory contracts (collectively, the "Notices of Assumption/Assignment"), and (ii) notices of cure of executory contracts (the "Cure Notices" and, collectively with the Notices of Assumption/Assignment, the "Initial Notices"). The Debtors served approximately 1,835 Notices of Assumption/Assignment and 1,203 Cure Notices.[5]

5.　　The Debtors received 27 objections (the "Objections") to the Initial Notices. As of Wednesday, December 19 at 10:00 a.m. (prevailing Eastern time), 13 of the Objections have been withdrawn or otherwise resolved. A chart summarizing the Objections,

---

[4] On December 13, 2007, Siemens VDO Automotive, Siemens VDO Automotive Corp., Siemens Electric LTD and Siemens VDO Automotive Inc. n/k/a VDO Automotive Canada Inc. (collectively, "Siemens") filed a limited objection to the Sale Motion (Docket No. 1146). Specifically, Siemens objects to the Sale Motion to the extent that (a) any contemplated transfer of interest and/or assumption and/or assignment affects the terms and conditions regarding the sale of any Siemens Parts (as defined therein) or (b) Delphi asserts that the terms and conditions of certain purchase orders govern the sale of Siemens Parts. Siemens' objection does not appear to constitute an actual objection to the terms and conditions of the Selling Debtor Entities' Agreement with the Buyers, but instead constitutes an objection to the Debtors' proposed assumption or assignment of certain executory contracts. Chrysler LLC filed a similar protective objection to the Sale Motion, which has been resolved, as set forth below (Docket No. 11062).

[5] After filing the Initial Notices, the Debtors learned that certain executory contracts had expired and certain executory contracts were inadvertently characterized as prepetition agreements, when in fact they are postpetition agreements. Accordingly, on December 18, 2007, the Debtors filed and served (i) supplemental notices to counterparties to the expired contracts indicating that such contracts will not be assumed or assigned (the "Notices of Non-Assumption/Assignment") and (ii) supplemental notices to counterparties to certain postpetition agreements indicating that such contracts are not subject to assumption or cure under section 365 of the Bankruptcy Code (the "Supplemental Postpetition Contract Notices"). The Debtors served approximately 3 Notices of Non-Assumption/Assignment and 42 Supplemental Postpetition Contract Notices.

4

including resolution of the withdrawn or otherwise resolved Objections, is attached hereto as Exhibit A.[6]

      6.    The primary issues asserted with respect to the outstanding Objections include adequate assurance of performance, contract integration, and inadvertent noticing. With respect to adequate assurance of performance, the Agreement includes a representation that the Buyers are required to provide such assurance at or prior to Closing.[7] The Debtors understand that the Buyers are in the process of resolving these Objectors in accordance with the Buyers' contractual obligation. With respect to the integration issue, Sabic has objected to the proposed assumption and/or assignment of certain purchase orders on the grounds, inter alia, that a debtor must assume or reject an executory contract in its entirety rather than assuming or rejecting particular purchase orders. The Debtors are in the process of working with Sabic to resolve this Objection, if possible. Finally, several Objections relate to the Initial Notices, some of which inadvertently characterized certain postpetition agreements as prepetition agreements. As set forth in footnote 5 herein, the Debtors filed and served the Supplemental Postpetition Contract Notices, which state that the contracts listed on Exhibit 1 thereto are postpetition contracts and accordingly are not subject to assumption or cure under section 365 of the Bankruptcy Code (Docket No. 11515). Any prepetition amounts owed to the counterparties with respect to such

---

[6]    Objections filed by the following parties are outstanding: Akzo Nobel Coatings, Inc. and Akzo Novel Industrial Coatings Mexico, S.A. (Docket No. 11363); Cooper-Standard Automotive Inc. (Docket No. 11380); Goldman Sachs Credit Partners, L.P. (Docket No. 11092); Lear Corporation (Docket No. 11378); Nova Chemicals Inc. and Nova Chemicals Canada Ltd. (Docket No. 11357); PPG Industries (Docket No. 11332); Sabic Innovative Plastics US LLC (Docket Nos. 11010, 11011, and 11368); Siemens (Docket Nos. 11085, 11086, and 11087); Spartech Corporation and Spartech Polycom (Docket No. 11381); Valeo Climate Control Corporation (Docket No. 11026); and WESCO Distribution, Inc. (Docket No. 11385).

[7]    Section 5.10 of the Agreement provides:

    Adequate Assurance of Future Performance. Buyer has provided or will be able to provide, at or prior to Closing, adequate assurance of its future performance under each Assumed U.S. Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code.

5

contracts should be treated as general unsecured claims, which would be subject to the Debtors' Claim Reconciliation Procedures (Docket No. 6089).

7. The Debtors believe that resolution of the outstanding Objections is possible prior to the next omnibus hearing. To provide reasonable opportunity for resolution of these outstanding Objections and issues, the Debtors respectfully request that the Court adjourn the Sale Hearing from December 20, to 2007 to January 25, 2008 at 10:00 a.m. (prevailing Eastern time) solely with respect to the outstanding Objections and issues with respect to assumption and/or assignment of executory contracts.

8. Attached hereto as <u>Exhibit B</u> is the revised proposed order (the "Revised Proposed Order"), which approves the Sale and reflects the adjournment of the Sale Hearing only with respect to the outstanding Objections and issues regarding assumption and/or assignment of executory contracts.[8] The Debtors submit that the Revised Proposed Order should be approved for all of the reasons set forth in the Sale Motion. Accordingly, the Debtors request that the Court grant the relief requested by the Debtors and enter the Revised Proposed Order.

<u>Resolved, Withdrawn, Or Otherwise Moot Objections</u>

9. As set forth above, a chart summarizing the resolution of all of the withdrawn or otherwise resolved Objections is attached hereto as <u>Exhibit A</u>.[9] Certain Objectors,

---

[8] Such adjournment will be without prejudice to the Debtors' right to assert that any such Objection was untimely or otherwise deficient, and without prejudice to the Debtors' right to submit a response to any Objection or issue with respect to assumption and/or assignment of executory contracts prior to the next scheduled hearing in accordance with the Court's Supplemental Order Under 11 U.S.C. Sections 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures (Docket No. 2883).

[9] Objections filed by the following entities have been resolved: Armada Rubber Manufacturing Company (Docket Nos. 11065 and 11375); Casco Products Corp. (Docket No. 11356); Cherry GmbH (Docket No. 11093); Chrysler LLC (Docket No. 11062); Contrarian Funds LLC (Docket No. 11091); Decatur Plastics Products, Inc. (Docket No. 11060); Johnson Controls Interiors LLC (Docket No. 11070); Lorentson Manufacturing Company (Docket Nos. 11061 and 11353); Macarthur Corporation (Docket No. 11377); May and Scofield, LLC (Docket No. 11373); and Mercedes-Benz U.S. International, Inc. (Docket No. 11018).

however, conditioned resolution and/or withdrawal of their respective Objections on the inclusion of specific statements in this Reply.  A brief description of these Objections, including the specific statements, is set forth below.

    10.  <u>Mercedes</u>.  Mercedes-Benz U.S. International, Inc. and Mercedes-Benz AG ("Mercedes") filed a Limited Objection To Assumption/Assignment of Contract And Motion To Sell (Docket No. 11018).  The Mercedes Objection sought clarification regarding whether the parties' entire contractual relationship would be assumed and/or assigned, including warranty obligations for products shipped both before and after the Closing.  This portion of the Mercedes Objection was resolved based on the mutual understanding of the parties as follows:

> (A) There is no contractual relationship with Mercedes-Benz AG being assumed and assigned as part of the Sale.
>
> (B) The contractual relationship with Mercedes-Benz U.S. International, Inc. being assumed and assigned by DAS LLC and assumed by Inteva as part of the Sale is more particularly described in subparagraphs C and D below and the limitation on warranty claims contained in sections 2.2 and 2.3 of the Agreement shall not limit the said contractual obligations to Mercedes-Benz U.S. International, Inc. being assumed by either DAS LLC or Inteva but rather shall govern the relationship between DAS LLC and Inteva under the indemnification provisions of the Agreement.

In addition, the Mercedes Objection requested an additional description of the parties' contractual relationships.  Delphi, Mercedes and Inteva agreed that the following description adequately describes the contractual relationship that will be assumed and assigned and resolves the remaining portion of the Mercedes Objection:

> (C) Supply Agreement dated December 22, 1997 between Mercedes-Benz U.S. International, Inc. and DAS LLC including all appendices thereto and all purchase orders issued thereunder, including but not limited to the purchase orders described in the Debtors' original notice, but only with respect to the rights and obligations relating to the 163 model cockpitmodule contained in the foregoing, it being understood that the 163 model is no longer in production and that there is no obligation to continue to supply cockpitmodules other than the obligation to

continue to provide service parts for cockpitmodules contained in the foregoing under the Master Terms dated July 7, 1997 in connection with such agreement.

(D)     Master Terms Direct Purchasing Mercedes-Benz U.S. International, Inc. dated June 15, 2000 including all appendices thereto as adopted by Letter of Intent Mercedes-Benz BR164/251 dated December 22, 2000 for supply of cockpitmodule between Daimler AG f/k/a DaimlerChrysler AG and its affiliates including Mercedes-Benz U.S. International, Inc. and Delphi Automotive Systems LLC as amended by Amendment Agreement dated April 4, 2006 and Commercial Agreement dated September 17, 2006 both between Mercedes-Benz U.S. International, Inc. and Delphi Automotive Systems LLC and all purchase orders issued thereunder including but not limited to those purchase orders described in the Debtors' Initial Notice.

11.     Chrysler.  Chrysler LLC ("Chrysler) filed an Objection To Assumption And/Or Assignment Of Contracts In Connection With The Sale Of Debtors' Interiors And Closures Business (Docket No. 11062).  In the Objection, Chrysler seeks clarification regarding the agreements governing its relationship with Delphi with respect to the Interiors and Closures Businesses.  Chrysler's Objection has been resolved based on the mutual agreement of the parties that the following purchase orders would be assumed and assigned by the Selling Debtor Entities upon consummation of the Interiors and Closures Businesses Sale: MP377303; MP378932; M0318142; MP413068; M7328520; M8328444; M7316024; M9328361; M8328459; MP386428; O3115011; O2155159; O2153051; O2153057; O3115009; O7206011; O2206068; O2206069; and O3206061.

12.     Decatur.  Decatur Plastic Products, Inc. ("Decatur Plastic") filed an objection (Docket No. 11060) to the Initial Notices.  In its Objection, Decatur Plastic argued that a certain long term contract (the "Decatur Long Term Contract") and related Purchase Orders 501799177, 550194157, and 550164782 should be assumed and/or assigned, and requested assurance of payment of outstanding post-petition obligations.  In addition, Decatur Plastics asserted that certain Purchase Orders had expired.  The Decatur Plastics Objection has been

resolved. Subsequent to the filing of the Decatur Plastics Objection, the Debtors filed an additional Notice of Assumption and/or Assignment Notice seeking to assume and/or assign the Decatur Long Term Contract. The Debtors confirmed that Purchase Orders 550049066, 550055334, 550056063, 550056154, 550059575, and 550070434 will not be assumed and/or assigned.[10] In addition, the Debtors and Decatur Plastics agreed that Purchase Orders 550199177, 550194157, 550164782, 550127304, 550127305, and 50127310, issued to implement the Decatur Long Term Contract, will be assumed and/or assigned and that amounts outstanding thereunder will be paid at Closing or thereafter in the ordinary course of business.

13.    May and Scofield. May and Scofield, LLC ("May and Scofield") filed an Objection To Notice Of Cure Amount With Respect to Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With The Sale Of Interiors And Closures Businesses (Docket No. 11373). After sending out the Initial Notices, the Debtors learned that May and Scofield was one of the counterparties described in footnote 5 to which they inadvertently sent Initial Notices regarding certain purchase orders. Accordingly, the Debtors informed counsel to May and Scofield that the relevant purchase orders contained a clause which provide, among other things, that

> Each of the Buyer and the Seller acknowledges and agrees that any prior purchase orders or other agreements between the Buyer and Seller, which are superseded and replaced by this purchase order as of its effective date shall no longer be subject to assumption or rejection under the United States Bankruptcy Code and the Seller hereunder waives any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure with respect to any such prior purchase orders and other agreements.[11]

---

[10]    Specifically, the Debtors confirmed that these purchase orders are expired or do not relate to the Interiors and Closures Businesses.

[11]    The Debtors included this clause in purchase orders in order to advise suppliers regarding the effect of entering a new postpetition agreement with the Debtors.

9

Because the purchase orders were entered into after the Petition Date, the Debtors believe that the purchase orders constitute postpetition agreements, and, therefore, cannot not be assumed or rejected. Based on these facts, and the Debtors' confirmation in this Reply that May and Scofield retains the right to continue to assert a general unsecured claim with respect to these purchase orders, May and Scofield has agreed to withdraw the Objection.

14. <u>Lorentson</u>. Lorentson Manufacturing Company ("Lorentson") filed two Objections To Notice Of Cure Amount With Respect to Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With The Sale Of Interiors And Closures Businesses (Docket No. 11061 and 11353). After sending out the Initial Notices, the Debtors learned that Lorentson was another one of the counterparties described in footnote 5 to which they inadvertently sent Initial Notices regarding certain purchase orders. Accordingly, the Debtors informed counsel to Lorentson that one of its purchase orders had expired, and thus could not be assumed or rejected. In addition, the Debtors informed counsel that Lorentson's other two purchase orders with the Debtors each contained a clause which provides, similar to May and Scofield's purchase order, that

> Each of the Buyer and the Seller acknowledges and agrees that any prior purchase orders or other agreements between the Buyer and Seller, which are superseded and replaced by this purchase order as of its effective date shall no longer be subject to assumption or rejection under the United States Bankruptcy Code and the Seller hereunder waives any right to assert any of the rights incident to assumption or rejection, including, but not limited to, the payment of cure with respect to any such prior purchase orders and other agreements.

Also like May and Scofield's purchase order, these purchase orders were entered into after the Petition Date, and thus the Debtors believe that the purchase orders constitute postpetition agreements which cannot be assumed or rejected. Based on these facts, and the Debtors'

10

confirmation in this Reply that Lorentson retains the right to assert a general unsecured claim with respect to these purchase orders, Lorentson has agreed to withdraw the Objections.

   WHEREFORE the Debtors respectfully request that the Court enter the Revised Proposed Order (i) granting the Sale Motion except with respect to the outstanding Objections and issues related to assumption and/or assignment of executory contracts, (ii) adjourning the Sale Hearing with respect to the outstanding Objections and issues regarding assumption and/or assignment of executory contracts, and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
   December 19, 2007

             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

             By:  /s/ John Wm. Butler, Jr.
               John Wm. Butler, Jr. (JB 4711)
               John K. Lyons (JL 4951)
               Ron E. Meisler (RM 3026)
             333 West Wacker Drive, Suite 2100
             Chicago, Illinois 60606
             (312) 407-0700

                 –and –

             By:  /s/ Kayalyn A. Marafioti
               Kayalyn A. Marafioti (KM 9632)
               Thomas J. Matz (TM 5986)
             Four Times Square
             New York, New York 10036
             (212) 735-3000

             Attorneys for Delphi Corporation, et al.,
              Debtors and Debtors-in-Possession