**Hearing Date: January 10, 2008**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOFS OF CLAIM NUMBERS 6354, 6383, 9272, AND 16633 <u>(STATE OF MICHIGAN, DEPARTMENT OF TREASURY)</u>

("SUPPLEMENTAL REPLY –
STATE OF MICHIGAN, DEPARTMENT OF TREASURY")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Supplemental Reply With Respect To Proofs Of Claim Numbers 6354, 6383, 9272, And 16633[1] (State Of Michigan, Department Of Treasury) (this "Supplemental Reply") and respectfully represent as follows:

Preliminary Statement

1.  For their tax years 2002 through 2004, the Debtors took the seemingly unusual step of deferring significant deductions for research and experimental expenditures ("R&E Expenses") when computing federal taxable income for federal income tax reporting, which all things being equal would have increased the amount of their federal income tax liability.  By deferring the deduction of R&E Expenses, the Debtors were able to decrease the amount of their federal taxable loss and thereby reduce their federal net operating loss carry-forwards for tax years 2002 through 2004.  By reducing their net operating loss carry-forwards, the Debtors were able to (i) use certain foreign tax credits to offset the Debtors' federal tax liability in future years and (ii) preserve additional R&E Expense deductions for future tax years. Because the foreign tax credits would have expired within ten years, much more quickly than any net operating losses carry-forwards arising from R&E Expense deductions, and because

---

[1] As set forth in the Debtors' Statement of Disputed Issues With Respect To Proofs of Claim Numbers 6354, 6383, 9272, and 16633 (State of Michigan, Department of Treasury) (Docket No. 10884), on October 17, 2007 the State of Michigan, Department of Treasury ("Michigan") filed proof of claim number 16724, which amended and superseded proof of claim 16633.  In fact, in Michigan's Supplemental Response To Debtors' Statement Of Disputed Issues With Respect To Proofs Of Claim Numbers 6354, 6383, 9272 And 16633 (State Of Michigan, Department Of Treasury) (Docket No. 11296), Michigan claims that proof of claim number 16724 is the only surviving priority claim against Delphi.  The Debtors have previously objected to the proof of claim 16724 and Michigan filed a response to the objection and therefore the claim has been adjourned to a later time.  Because the issues relating to proofs of claim 9272 and 16633 are identical to the issues raised by proof of claim 16724, however, the Debtors request that any determination with respect to proofs of claim 9272 and 16633 apply to proof of claim 16724 as well.

foreign tax credits can offset only tax on foreign source income while net operating losses can offset both domestic and foreign source income, the Debtors opted to maximize the application of the foreign tax credits. Taxpayers are able to defer R&E Expense deductions because under section 59(e) of the Internal Revenue Code ("I.R.C.") taxpayers may either deduct the full current amount of R&E Expenses or capitalize some or all of such expenses and amortize the deduction over ten years.

2.     In contrast, the Michigan Single Business Tax ("Michigan SBT" or "SBT") does not contain or provide for use of foreign tax credits to offset SBT liability. Thus, the Debtors had no reason to defer their R&E Expenses with respect to their SBT return and thereby increase their SBT liability. Accordingly, for SBT purposes the Debtors deducted the full amount of R&E Expenses when calculating their "federal taxable income," which under the SBT Act is "business income," the starting point for calculating their tax base under the SBT Act. As explained below, the Michigan SBT Act permits and contemplates that taxpayers may calculate their federal taxable income for SBT purposes in a manner beneficial to the taxpayer, so long as the calculation is done in accordance with one of two permitted versions of the I.R.C.

3.     Michigan's position is essentially that a taxpayer may not use one of the statutorily permitted methods for calculating federal taxable income to determine its business income for SBT purposes, but instead must transpose to its SBT return the actual dollar amount found on the "taxable income" line of the taxpayer's as-filed federal return, federal income tax Form 1120 or Form 1120A. This position is inconsistent with the Michigan SBT Act, which does not require mere transposition of "taxable income" from a federal return to the SBT return. To the contrary, the SBT Act permits calculation of "federal taxable income" in accordance with one of two versions of the I.R.C., one of which would not have any corresponding actual federal

3

return filed with the IRS (thus undermining Michigan's position that a taxpayer must merely transpose the taxable income from a federal return onto an SBT return).  The Debtors have therefore properly calculated their SBT liability for 2002 through 2004 and Michigan's proofs of claim, to the extent they assert SBT liability, should be disallowed in their entirety.

    4. As noted below, Michigan has recently issued an audit determination that the Debtors have no SBT liability for 2001.  Therefore, for the reasons described herein, the Debtors request that this Court find that the Debtors have no liability for SBT taxes for tax years 2001, 2002, 2003, and 2004.

Background

    5. During each of their tax years 2002, 2003, and 2004, the Debtors incurred substantial expenditures that constituted R&E Expenses under section 174 of the I.R.C.  As noted above, when the Debtors computed their federal taxable income for federal income tax reporting for tax years 2002, 2003, and 2004, the Debtors elected to capitalize certain of these R&E Expenses and to amortize them over ten years.  This was done to reduce the federal net operating loss carry-forwards from those tax years.  This allowed the Debtors to use certain foreign tax credits to offset federal tax liability in future tax years which otherwise would have expired if not used within ten years.  In contrast, federal net operating losses arising from R&E Expenses or otherwise can be carried forward as long as 20 years.  Accordingly, the Debtors elected under I.R.C. § 59(e) to amortize the R&E Expenses over ten years and thereby reduce their net operating losses for tax years 2002, 2003, and 2004.  (See Declaration of James P. Whitson executed on December 19, 2007 (the "Whitson Decl."), attached hereto as Exhibit A, ¶ 4).

4

6. When calculating their "business income" under the SBT for tax years 2002, 2003, and 2004, however, the Debtors chose to calculate their federal taxable income for SBT purposes by deducting the full amount of R&E Expenses for each tax year.[2] The Debtors included a schedule with each applicable SBT return or amended SBT return showing the calculation for SBT purposes of federal taxable income, which under the SBT Act is "business income." (Whitson Decl. ¶ 5.) Redacted versions of these schedules are attached hereto as Exhibits B.

7. Michigan has filed proofs of claim asserting that the Debtors' SBT liability for 2002 through 2004 is as follows:

| Year | Tax | Prepetition Interest |
|---|---|---|
| 2002 | $3,985,924 | $516,342.37 |
| 2003 | $3,184,581 | $242,327.56 |
| 2004 | $2,269,304 | $ 57,931.21 |

8. The Debtors do not dispute that if they were required to calculate their SBT liability as Michigan contends, these amounts from Michigan's proofs of claims would be allowed with respect to the Debtors' SBT liability for tax years 2002 through 2004. Conversely, Michigan has not disputed that if the SBT Act permits the Debtors to prepare SBT returns as they have done, the Debtors have no SBT liability for tax years 2002 through 2004.

---

[2] As noted below, the group of Delphi entities filing the consolidated federal return was different than the group of Delphi entities filing the consolidated SBT return.

5

Argument

A.  The Final Audit Letter Indicates No Liability For 2001 SBT Taxes

9. The Debtors' records reflect that they have no unpaid SBT tax liability for tax year 2001. A Final Audit Determination Letter dated June 21, 2007 indicates that Delphi is owed an $88 refund for 2001 SBT taxes and no amounts are due or owing. (Whitson Decl. ¶ 10.) A redacted copy of the Final Audit Determination Letter is attached hereto as Exhibit C. Claim 6354 should therefore be disallowed with respect to SBT taxes.

B.  The Debtors Properly Computed Their 2002 Through 2004 SBT Taxes

10. The Debtors' liability for the SBT tax claims asserted by Michigan for 2002 through 2004 hinges on a single issue: the Debtors' treatment of R&E Expenses in their Michigan SBT returns. For federal income tax purposes, I.R.C. § 59(e) permits the Debtors to choose to amortize their R&E Expenses over a period of ten years using a straight-line method rather than deducting all such expenses in the year incurred. Because the Debtors sought to reduce certain federal net operating loss carry-forwards for tax years 2002 through 2004, the Debtors elected to amortize R&E Expenses for 2002 through 2004, and thereby both defer the tax deductions to future tax years and permit the Debtors to use certain foreign tax credits to reduce their federal tax liability in future years.

　　　　　　　　(a)  The Debtors' Deductions Of R&E Expenses Were Appropriate In Computing Federal Taxable Income Used To Determine SBT Business Income

11. With respect to Michigan SBT liability for tax years 2002 through 2004, the Debtors chose to compute their business income (as defined in Mich. Comp. Laws

6

§ 208.3(3)[3]) by deducting all R&E Expenses in the year incurred. For each of those tax years, the Debtors included a schedule that reconciled the difference between their treatment of R&E Expenses when calculating their federal taxable income for federal purposes and when calculating their federal taxable income for SBT purposes. See Exhibits B. During audit, however, Michigan adjusted the Debtors' treatment of R&E Expenses. Michigan's auditors determined that the Debtors must compute their business income exactly the same way they computed their federal taxable income for federal income tax reporting for each year, resulting in a much higher SBT liability.[4] (Whitson Decl. ¶ 7.)

12.    Michigan admits that Delphi is "allowed to elect to compute its federal taxable income with either the 10-year amortization of its R&E or by taking the full R&E expenditure for the tax year it incurred the expense." See Supp. Response at 7-8. But Michigan contends that "what is reported as federal income federally is what is required to be utilized for SBT . . . [because] Michigan's policy is that the taxable income listed on the federal US-1120

---

[3]    "'Business income' means federal taxable income . . . ."

[4]    Michigan alleges that the Debtors prepared two sets of federal Forms US-1120: one for their federal return and one that was attached to the Michigan SBT returns. See Supp. Response at 9. This is not quite accurate. For tax years 2002 and 2003, the Debtors filed their federal Form US-1120 taking the full deduction for R&E Expenses under I.R.C. § 59(e). While the federal audit for 2002 and 2003 was in progress, the Debtors chose to amortize the R&E Expenses under I.R.C. § 59(e). This adjustment was reflected in the federal Revenue Agent Report ("RAR") along with other adjustments that resulted in an amended amount of taxable income for tax years 2002 and 2003. The Debtors did not file an amended federal Form US-1120 for 2002 or 2003. As required by Mich. Comp. Laws § 208.75(2), however, the Debtors filed amended Michigan SBT returns to reflect the federal RAR adjustments for those tax years. When filing the amended Michigan SBT returns for tax years 2002 and 2003, the Debtors chose not to amortize the R&E Expenses on their amended SBT returns, even though the Debtors made a federal election to amortize R&E Expenses as part of the federal RAR adjustments. To clarify the difference between the I.R.C. § 59(e) election used to compute the Debtors' federal taxable income and the R&E accounting method used to compute business income for Michigan SBT purposes, the Debtors' amended Michigan SBT returns included a schedule reconciling the difference between currently expensing R&E expenses versus amortizing them under I.R.C. § 59(e). Thus, for tax years 2002 and 2003, the Debtors filed only one federal Form US 1120 for each tax year, but changes from the federal RAR adjustments required the Debtors to file amended SBT returns in accordance with Mich. Comp. Laws § 208.75(2). (Whitson Decl. ¶ 6.)

form for a specified tax year must be identical to the business income reported in the Michigan SBT." Supp. Response at 8-9.  These statements are not only conclusory and without any backup or support, but they also do not follow from the plain language of the Michigan SBT statute.  Indeed, Michigan has not provided any statutory, regulatory, or formal support for its conclusory policy statement.

      13.  Michigan claims that SBT taxpayers must take the number from line 30 of federal Form US-1120 (taxable income) and report the same number on line 11 of the SBT form (business income).[5]  The instructions for the SBT return state that for business income for corporations, "[e]nter federal taxable income from U.S. 1120 or 1120A."  See Exhibit E at 16.  As explained below, this instruction does not follow from the language of the SBT Act.  Nor does it carry the force of law.  The Michigan Supreme Court has stated that "[i]n order for an agency regulation, statement, standard, policy, ruling, or instruction of general applicability to have the force of law, it must fall under the definition of a properly promulgated rule.  If it does not it is merely explanatory."  Danse Corp. v. City of Madison Heights, 644 N.W.2d 721, 725 (Mich. 2002).  With respect to instructions relating to the SBT return, one court has noted that there is "no evidence that the [SBT] instruction pamphlet was properly promulgated under the Administrative Procedures Act."  ADAC Plastics, Inc. v. Dep't. of Treasury, Case No. 00-307524, 2006 WL 2085040, at *3 (Mich. App. Ct. July 27, 2006).  Thus, the instructions on the SBT form are merely explanatory and are not binding law.  And as explained immediately below, they are contrary to the plain language of the SBT Act.

---

[5]   For illustrative purposes, the 2004 version of federal Form-US 1120 is attached hereto as Exhibit D and the 2004 version of the SBT Annual Tax Return form is attached hereto as Exhibit E.

        (b)        The Plain Language Of The SBT Act Allows For Different Calculations Of Federal Taxable Income Used To Determine SBT Business Income

        14.        The Michigan SBT Act does not require the Debtors to compute their business income each year exactly the same as their federal taxable income reported on their Form US-1120.  As long as the Debtors determine their business income as federal taxable income in accordance with the I.R.C. (as required by Mich. Comp. Laws § 208.5(3)-(4)), that business income is acceptable as the starting point in determining its SBT liability even if not the same as the federal taxable income reported on the Debtors' federal return, Form US-1120.  In addition, if the Debtors were required to calculate "federal taxable income" for SBT purposes using the identical calculations employed for federal purposes, Michigan would be penalizing the taxpayer for making strategic decisions at the federal level based on certain tax credit benefits offered only at the federal level and which do not apply and are unavailable for Michigan SBT purposes.

        15.        A corporation computes its SBT tax base starting with its "business income." Mich. Comp. Laws § 208.9(1).  "Business income" is defined as the corporation's federal taxable income.  Mich. Comp. Laws § 208.3(3).  "'Federal taxable income' means taxable income as defined in section 63 of the internal revenue code."  Mich. Comp. Laws § 208.5(3).  Notably, and contrary to Michigan's assertion otherwise, the definition does not mandate the use of, or even refer to, the federal taxable income that appears on the taxpayer's Form US-1120 federal return, but rather it refers solely to the Internal Revenue Code definition of taxable income.  "'Internal revenue code' means the United States internal revenue code of 1986 in effect

9

on January 1, 1999 <u>or, at the option of the taxpayer, in effect for the tax year</u>" for which the return is filed.  Mich. Comp. Laws § 208.5(4) (emphasis added).[6]

16.    Thus, the SBT Act does not require that a corporation's business income for a tax year must be identical to its Form US-1120 taxable income.  Such a statutory construction would be inconsistent with Mich. Comp. Laws § 208.5(4), which gives a taxpayer the option to choose annually for SBT purposes the version of the I.R.C. in effect for that year rather than the default version of the I.R.C. in effect as of January 1, 1999.  The two available versions of the I.R.C. may result in different computations of federal taxable income.  Obviously, a taxpayer would choose to use the version of the I.R.C. in effect for the year for which the return was filed only if it were more beneficial to the taxpayer than using the I.R.C. in effect on January 1, 1999.  Therefore, for any year other than 1999, the SBT Act is premised on the notion that there can be a difference between federal taxable income as reported on a taxpayer's Form US-1120 and the computation of federal taxable income used to determine its business income under the SBT Act.  Thus, a corporation such as Delphi can compute its SBT business income differently than its federal taxable income as reported on its federal Form US-1120, provided it uses the SBT-mandated definition of federal taxable income under one of the permitted versions of the I.R.C.

17.    Furthermore, in another definitional section of the Michigan SBT Act, the statute, as part of its definition of "compensation," provides:  "Compensation also includes, on a cash or accrual basis <u>consistent with the taxpayer's method of accounting for federal income tax</u>

---

[6]    The default I.R.C. under the Michigan SBT Act for computing "business income" is the I.R.C. in effect on January 1, 1999, rather than the I.R.C. in effect for the year for which the return was filed.  Thus, the default I.R.C. for SBT purposes would be different than the current year version of the I.R.C. required to be used for Form US-1120 filed with the Internal Revenue Service.

purposes . . . ." Mich. Comp. Laws § 208.4(3) (emphasis added).  Therefore, when the SBT Act requires that a taxpayer report any items on its SBT return in the exact same manner that it reports those items on its federal income tax return, the statute expressly set outs that requirement as the SBT Act did with respect to cash or accrual accounting within its definition of "compensation."  No similar requirement with respect to reporting business income appears within the definition of "business income" or any other provision of the SBT Act.  See Mich. Comp. Laws § 208.3(3).  Had the drafters of the SBT Act intended for "business income" to be "consistent with the taxpayer's method [used] for federal income tax purposes," they could have so provided in the statute.  The lack of this explicit language in the definition of "business income," together with the notion that a taxpayer may choose which version of the I.R.C. to apply when computing "business income," indicate that the taxpayer's federal taxable income as set forth on its federal Form US-1120 need not be identical to its "business income" for SBT purposes.[7]

    18.  Moreover, the federal Form US-1120 filed by the Debtors was for a consolidated group of several Delphi entities, many of which were not subject to the Michigan SBT.  The consolidated Michigan SBT return permitted under Michigan law included only a subset of the entities that were included in the federal consolidated Form US-1120.  Putting aside the issue of an accounting election under I.R.C. § 59(e), applying Michigan's self-proclaimed "policy" of requiring that a taxpayer's SBT business income be exactly the same as its taxable

---

[7] To the extent that Michigan argues or this Court finds that the Michigan SBT Act is ambiguous in any way, the SBT Act must be construed in favor of the taxpayer and against the state of Michigan.  See In re Dodge Bros., Inc., 217 N.W. 777, 779 (Mich. 1928) ("The scope of tax laws may not be extended by implication or forced construction.  Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer.").

11

income on its Form US-1120 would be illogical where the subset of entities included on the SBT return is smaller than the group of entities included on the federal consolidated Form US-1120. Therefore, applying Michigan's "policy" would be impractical and would lead to an absurd result.[8]

---

[8] A predecessor-in-interest to Debtor Delphi Automotive Systems LLC was a member of a corporate group that in certain years during the 1990s similarly accounted for R&E expenses on its consolidated SBT returns by deducting them in the year incurred while amortizing those expenses on its consolidated federal return. Michigan auditors specifically reviewed that SBT accounting for R&E Expenses and did not adjust it during more than one audit. (Whitson Decl. ¶ 9.)

In Michigan, all taxpayers must be treated similarly and fairly. The Debtors understand, based on information provided to them, that Michigan has allowed other taxpayers who elect to amortize R&E Expenses under I.R.C. § 59(e) when computing federal taxable income for federal tax reporting purposes to calculate taxable income for SBT purposes without the I.R.C. § 59(e) election. The Debtors understand that Michigan accepted that accounting treatment during previous audits. To the extent that Michigan is taking a contrary position now with respect to Delphi, Michigan may be in violation of the Equal Protection Clauses of the United States Constitution and the Michigan Constitution, as well as the Uniformity of Taxation Clause of the Michigan Constitution. The Debtors are conducting discovery with respect to these issues and reserve their right to supplement their pleadings in accordance with this Court's order governing these proceedings.

Conclusion

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging proofs of claim numbers 6383, 9272, and 16633, (b) disallowing proofs of claim numbers 6354 and 16724 to the extent that they assert SBT liability, and (c) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        December 19, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                          & FLOM LLP

                                        By:  /s/ John Wm. Butler, Jr.
                                            John Wm. Butler, Jr. (JB 4711)
                                            John K. Lyons (JL 9331)
                                            Albert L. Hogan, III (AH 8807)
                                            Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606

                                            - and -

                                        By:  /s/ Kayalyn A. Marafioti
                                            Kayalyn A. Marafioti (KM 9632)
                                            Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession