DRINKER BIDDLE & REATH LLP         Hearing Date: January 31, 2008
One Logan Square                                Hearing Time: 10:00 a.m. (EST)
18th & Cherry Streets
Philadelphia, PA 19103
(215) 988-2700
David B. Aaronson (DA-8387)

Attorneys for Henkel Corporation

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------X
In re:                                              :        Chapter 11
                                                  :
DELPHI CORPORATION, et al.,       :        Case No. 05-44481 (RDD)
                                                  :
       Debtors.                               :        (Jointly Administered)
---------------------------------------------------------X

**SUPPLEMENTAL RESPONSE OF HENKEL
CORPORATION IN SUPPORT OF CLAIMS**

       Henkel Corporation ("Henkel"), by and through its undersigned counsel, hereby submits its Supplemental Response in Support of Claims 10681 and 10656 (the "Claims") and respectfully represents as follows:

       1.      On or about September 21, 2007, the Debtors filed their claims objection, objecting, inter alia, to the Claims. Henkel timely filed its response to the objection.

       2.      On or about December 4, 2007, the Debtors filed their Statement of Disputed Issues with respect to the Claims.

       3.      The Claims were filed with adequate information, listing each account and the damages suffered.[1]

---

[1] Although the Debtors already possess the support for the Claims, upon the Debtors execution of an appropriate protective order or upon an agreement reached by the parties, Henkel will again provide documents in support of the Claims. Due to the voluminous nature of the documents, copies are not attached to this Supplemental Response.

WM\7766\2

**THE HENKEL/DELPHI RELATIONSHIP**

4. Henkel Corporation has been a long time supplier to the Debtors for specialty materials used in various automotive electronics applications. See Declaration of Michael DeSalvio In Support of Henkel Claims (the "DeSalvio Declaration") attached hereto at ¶ 2.

5. Supplying materials to Delphi was generally managed under 3 year supply agreements. The supply agreements were heavily negotiated and contained Henkel's terms and conditions, not the Debtors standard terms and conditions. Henkel never agreed to be bound by the Debtors terms and conditions and the Debtors conduct was contrary to their standard terms and conditions. See DeSalvio Declaration at ¶ 3.

6. The Debtors' Procurement Group was US based and was divided into two divisions ("E&C" and "E&S"), each managed separately. The particular supply agreement would define materials and pricing. In order to obtain product from Henkel, Debtors would begin the process by issuing purchase orders ("POs") to Henkel for the materials. Debtors would next submit releases against these PO's for specific materials and quantities. Henkel would manufacture and ship product accordingly. As was customary in the parties relationship, invoices were never used in connection with this process. See DeSalvio Declaration at ¶ 4.

7. In connection with the shipment process, delivery notes (Shippers) are generated at the time of shipment. This paperwork is used to authorize the Shipping Department to ship the product according to the instructions provided on the shipper. This is a critical document to Delphi because it must include Delphi's ASN barcode. The product is then prepared for physical shipment and the delivery note serves as the shipping paperwork and goes to the customer and Delphi's carrier per Delphi requirements. It is also used for Henkel's

Shipping personnel to enter the shipment into SAP.  This transaction causes the inventory to be reduced and is also the trigger for the invoicing program, a nightly batch process, to generate and print related invoices and to record all necessary G/L transactions.  Accordingly, the fact that invoices reside on Henkel's computer system means that the product was shipped to Delphi.  In addition, Henkel's systems and processes are continually monitored and audited for accuracy and completeness  from both internal and external auditors.  Further, inventory accuracy (i.e., on-hand quantities) is confirmed through regular cycle counts.  Physical shipments are also validated against customer complaints and internal and external audits.  It is my understanding that Henkel's external auditors performed full-scope audits during the years of 1998-2006, including shipping processes with no exceptions noted.  Henkel's accounting practice within SAP of delivery note to physical shipment to invoice generation proved to be a very accurate process as evidenced by Delphi on a prior account reconciliation of a similar nature, where Delphi had disputed many product receipts.  See DeSalvio Declaration at ¶ 5.

    8.  In connection with this process, Debtors used their own freight carriers so materials always shipped title transferring at Henkel's dock.  Generally materials shipped followed a three point shipping pattern.  For example, from Henkel's Olean NY facility, product would go to a Delphi Freight Consolidator in New York.  From there, materials were generally shipped to locations in Texas, generally El Paso or Brownsville, pending further consolidation efforts by Delphi.  Finally, materials were shipped into Mexico to the Debtors' production facilities in Torrreon.  See DeSalvio Declaration at ¶ 6.

**THE PREVIOUS RECONCILIATION**

    9.  In early 2005, Henkel entered into contract negotiations with Delphi concerning the next three year supply agreement.  It was at this time that Henkel and Delphi

decided to undertake a reconciliation with respect to delinquent receivables due and owing Henkel.  Matt Glover, Head of NA Procurement, assigned a team headed by Sylvia Jones from the E&C Division to work through the reconciliation of Henkel's receivable.  The Delphi team responsible for the reconciliation included, Larry Gavin, Matthew Glover, Sylvia Jones, Larry Sears, Colin Stedevan, Marilyn Trappe, Dave Kronoshek, Amy Mikiciuk, Anel Zuniga, and Jeff Schaepen and was under the overall management direction of Darrell Blackburn.  See DeSalvio Declaration at ¶ 7.

        10.     The reconciliation process was a very detailed four month process which involved both Henkel and the Debtors researching transactions, on a transaction by transaction basis.  Several hundred transactions were closely scrutinized, particularly where the Delphi production facility had not entered any material receipts into Delphi's system.  During the process it was discovered that many shipments had, in fact been received and consumed in Mexico, without the production facility showing any receipts.  This can only be accomplished with inventory adjustments, essentially showing found materials on-hand.  See DeSalvio Declaration at ¶ 8.

        11.     In connection with this reconciliation, Henkel initially asserted that the receivables due and owing Henkel was approximately $530,000.00.  At the conclusion of the four month reconciliation process, the Debtors agreed with Henkel that the net receivable due and owing Henkel was approximately $514,000.00.  See DeSalvio Declaration at ¶ 9.

        11.     In connection with the Claims, the Debtors failed to dispute receipt of Henkel's product as was required under the parties agreement.  Significantly, throughout the entire time that Henkel supplied product to the Debtors, Henkel is not aware of any customer complaints that alleged Henkel failed to ship materials to Delphi locations.  This would be a high

profile event since Henkel is a sole-source supplier and the potential for customer line down situations could occur. See DeSalvio Declaration at ¶ 10.

**SUPPLEMENTAL RESPONSE**

12. The Claims Objection Procedures Order specifically provides that the Debtors must, set forth the factual and legal bases upon which the Debtors will rely in prosecuting the claims objection. Further, the Debtors, in connection with their Statement of Disputed Issues, were required to include documentation supporting their position. Contrary to the requirements, the Debtors have failed to properly assert with the necessary detail the factual basis upon which they rely upon in objecting to the Claims. Additionally, the Debtors have failed to include any documentary evidence in support of their position.

13. In contrast to the Debtors' position, Henkel timely filed its Claims and such Claims are prima facie evidence of their validity and amounts. The self-serving statements contained in the Debtors' claims objection and Statement of Disputed Issues have failed to rebut the validity of the Claims.

14. As set forth above and in the DeSalvio Declaration, Henkel and the Debtors have previously undertaken a claims reconciliation process. This four month process only served to confirm the validity of Henkel's claim. While Henkel wanted to continue the reconciliation process with respect to the claims, the parties were unable to complete the entire reconciliation process due to the commencement of the Debtors' bankruptcy cases. Henkel asserts that had the parties completed the reconciliation process with respect to the claims, Henkel's claims would have been allowed at a similar percentage as the prior reconciliation.

15. To the extent the Debtors' position is based upon the Debtors' standard terms and conditions, such position is misplaced. Henkel's agreement with the Debtors modified

the Debtors' standard terms and conditions, and the Debtors failed to provide the required notice to Henkel concerning alleged failure to deliver product. Assuming arguendo that Henkel accepted the Debtors' standard terms and conditions, which it did not, the Debtors' course of conduct was contrary to the standard terms and conditions. Accordingly, Henkel is not bound by the Debtors' standard terms and conditions and such terms and conditions cannot serve as a basis to disallow the Claims.

15.     Finally, the Debtors failed to dispute receipt of Henkel's product as was required under the parties agreement. Significantly, throughout the entire time that Henkel supplied product to the Debtors, Henkel is not aware of any complaints regarding delivery of product to Delphi that went unresolved, including measures involving applying to the U.S. Department of Commerce on an emergency basis to expedite shipments into Mexico from the United States. Any delivery failure, if left unresolved, would have led to catastrophic line shutdown of several GM plants, GM being Delphi's sole customer. No shutdowns ever occurred, were threatened, or were ever seriously a possibility given the steadfast resolve Henkel has always shown to satisfying the needs of GM and Delphi. These facts serve to reinforce that the position taken by the Debtors is absurd, baseless, and, in light of Henkel's loyalty to GM and Delphi, utterly galling. Further, the fact that Henkel (i) has invoices on its system and (ii) had its books and records audited and confirmed accurate clearly demonstrates that the Debtors' position is misplaced.

## IDENTIFICATION OF WITNESSES

16.     In connection with the discovery process and a hearing concerning the Claims, Henkel may seek to depose and/or elicit testimony from the following representatives of the Debtors: Darrell Blackburn, Larry Gavin, Matthew Glover, Sylvia Jones, Larry Sears, Colin

Stedevan, Marilyn Trappe, Dave Kronoshek, Amy Mikiciuk, Anel Zuniga, and Jeff Schaepen. These individuals have direct knowledge concerning the parties relationship and prior reconciliations. Henkel also seeks the right to take discovery and elicit testimony from the various shippers utilized by the Debtors to ship Henkel product. Henkel reserves the right to seek to depose and or elicit testimony from additional representatives of the Debtors and/or former representatives of the Debtors, including, but not limited to the Debtors' employees and representatives that have knowledge concerning the Claims.

17. In addition to Michael DeSalvio, Henkel might rely upon the following individuals at a hearing on this matter: Melanie Pfeil, Cary Vocelka, Rob Eccles, Don Hickson (former employee of Henkel), George Collin (former employee of Henkel), certain representatives from KPMG (Henkel's outside auditor). These individuals have knowledge and background information concerning the validity of the Claims.

## **RESERVATION OF RIGHTS**

Henkel reserves its rights (a) to later identify and assert legal and factual bases in support of its Claims, (b) to later identify additional documents supporting its Claims, (c) to later identify additional witnesses in support of its Claims, and (d) to supplement this Supplemental Response.

WHEREFORE, Henkel respectfully requests that this Court enter an order (i) denying the Objection, or (ii) severing the issues concerning the Henkel Claims from the other claims objections, and (iii) granting such other relief as is just and appropriate.

Dated: December 20, 2007

Respectfully submitted,

DRINKER BIDDLE & REATH LLP

By: /s/ David B. Aaronson
David B. Aaronson (DA-8387)
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

Attorneys for Henkel Corporation