UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING SALE HEARING DATE IN CONNECTION WITH SALE OF STEERING AND HALFSHAFT BUSINESS

("STEERING BIDDING PROCEDURES ORDER")

Upon the expedited motion, dated December 10, 2007 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving the bidding procedures set forth herein and attached hereto as Exhibit 1 (the "Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv) setting a sale hearing date (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of the Debtors' assets comprising substantially all of the assets of Delphi's steering and halfshaft Business,[1] free and clear of liens, Claims, and Encumbrances (the "Acquired Assets") and the Sale Securities (together with the Acquired Assets, the "Purchased

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

Assets") to Steering Solutions Corporation and certain of its affiliates (the "Buyers"), pursuant to the Master Sale And Purchase Agreement dated December 10, 2007 by and between Delphi and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities")[2] and the Buyers, including Exhibits and Schedules thereto, the Ancillary Agreements, and other related documents (the "Agreement"), or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid pursuant to the Bidding Procedures, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases as defined in the Agreement (the "Pre-Petition Contracts") and the assignment of certain postpetition executory contracts and unexpired leases as defined in the Agreement (the "Post-Petition Contracts" and collectively with the Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Buyers or the Successful Bidder, and (iii) the assumption of certain liabilities as defined in the Agreement (the "Assumed Liabilities") by the Buyers or the Successful Bidder; and upon the record of the hearing held on December 20, 2007 (the "Bidding Procedures Hearing"); and after due deliberation thereon, and sufficient cause appearing therefor,

---

2 Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC, Delphi China LLC, Delphi Technologies, Inc., and Delphi Automotive Systems (Holding), Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A. The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C. The relief requested in the Motion and granted herein is in the best interests of the Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

D. The notice of the Motion and the Bidding Procedures Hearing given by the Selling Debtor Entities constitutes due and sufficient notice thereof.

E. The Selling Debtor Entities have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement and this order, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Pre-Petition Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to creditors, stakeholders, and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the assumption and assignment of the Pre-Petition Contracts to be filed with the Court and served on the non-Debtor counter-parties thereto, and (vi) set the Sale Hearing.

F. The Break-Up Fee and the Expense Reimbursement may be

---

3 Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

payable in accordance with the terms, conditions, and limitations of the Agreement, as modified by this order (together, the "Bid Protections"), (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Selling Debtor Entities' estates, within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) are of substantial benefit to the Selling Debtor Entities' estates, (iii) are reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Buyers notwithstanding that the proposed Sale is subject to higher or better offers for the Purchased Assets, (iv) were negotiated by the parties at arms' length and in good faith, and (v) are necessary to ensure that the Buyers will continue to pursue the proposed acquisition of the Purchased Assets. The Bid Protections were a material inducement for, and condition of, the Buyers' entry into the Agreement. The Buyers are unwilling to commit to hold open their offer to purchase the Purchased Assets under the terms of the Agreement unless they are assured of payment of the Bid Protections. Thus, assurance to the Buyers of payment of the Bid Protections promoted more competitive bidding by inducing the Buyers to hold their bid open. Without the bid protections, other bidding would have been limited. Further, because the Bid Protections induced the Buyers to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Buyers have provided a benefit to the Selling Debtor Entities' estates by increasing the likelihood that the price at which the Purchased Assets are sold will reflect their true worth. Finally, absent authorization of the Bid Protections, the Selling Debtor Entities may lose the opportunity to obtain the highest or otherwise best available offer for the Purchased Assets.

G. The Bidding Procedures are reasonable and appropriate and

represent the best method for maximizing the realizable value of the Purchased Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1. The Bidding Procedures, substantially in the form as set forth on Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern all proceedings relating to the Agreement, any subsequent bids for the Purchased Assets in these cases, and the Auction, if applicable.

2. The Limited Response of Steering Holding, LLC (Docket No. 11480) is hereby denied.

3. The Selling Debtor Entities may: (i) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (ii) consult with the representative of any official committee or significant constituent in connection with the Bidding Procedures, and (iii) reject at any time before entry of an order of the Court approving a Qualified Bid, any bid (other than the Buyers' bid) which, in the Selling Debtor Entities' sole discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Selling Debtor Entities, their estates, and their stakeholders. The Selling Debtor Entities are authorized (x) to terminate the Bidding Process or the Auction at any time if they determine, in their business judgment, that the Bidding Process will not maximize the value of the Purchased Assets to be realized by the Selling Debtor Entities' estates and (y) to seek Bankruptcy Court approval of the Agreement with the Buyers.

4. Notice of the Bid Deadline and Auction as set forth herein constitutes good and sufficient to all potential bidders for the Purchased Assets, and no further notice shall be required if given pursuant to this order and the Bidding Procedures.

Sale Hearing

5. The Court shall hold a Sale Hearing on February 21, 2008 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at which time the Court shall consider the remainder of the Motion not approved by this order, approve the Successful Bidder, and confirm the results of the Auction, if any. Objections to the Motion, if any, shall be filed and served no later than 4:00 p.m. (prevailing Eastern time) on February 14, 2008 (the "Objection Deadline").

6. To the extent that the Selling Debtor Entities do not receive additional Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of this order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing.

7. The failure of any objecting person or entity to timely file and serve its objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, or the Selling Debtor

Entities' consummation and performance of the Agreement (including the transfer of the Purchased Assets and the Assumed and Assigned Contracts free and clear of liens, Claims, and Encumbrances), with the exception of any objection to the conduct of the Auction or the Selling Debtor Entities' selection of the Successful Bidder, which may be made at the Sale Hearing.

8. If a non-Debtor party to any Pre-Petition Contract that is proposed to be an Assumed and Assigned Contract fails to file and serve an objection to the Cure Notice and/or the Buyer Assumption/Assignment Notice or the Qualified Bidder Assumption/Assignment Notice, as the case may be, in accordance with the instructions therein, (a) the Court will authorize the assumption and assignment of the applicable Pre-Petition Contract at the Sale Hearing and (b) the non-Debtor party to such Pre-Petition Contract shall be entitled to recover only its Cure Amounts listed in the Cure Notice and shall be barred and enjoined from asserting at the Sale Haring or otherwise that any other amounts are owing.

9. The Sale Hearing, or any portion thereof, such as with respect to the proposed assumption and assignment of a particular executory contract, may be adjourned by the Debtors from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date, subject to the limitations set forth in Section 10.10 of the Agreement regarding the adjournment of the Sale Hearing.

Bid Protections

10. The Bid Protections, as modified by this order, are hereby approved. Notwithstanding anything to the contrary in section 9.2 of the Agreement, by agreement of the Selling Debtor Entities, the Buyers, and the official committee of unsecured creditors: (i) the Break-Up Fee shall be reduced from $6 million to $5.5 million and (ii) if the Agreement is terminated pursuant to any provision of section 9 of the Agreement other than section 9.1.4, the Buyers retain the right under section 9.2 of the Agreement to seek an Expense Reimbursement in an amount up to $6 million if a Break-Up Fee is not paid.

11. The Selling Debtor Entities' obligation to pay the Bid Protections pursuant to the terms of the Agreement shall survive termination of the Agreement and, until paid in accordance with the Agreement, shall constitute a superpriority administrative expense claim in favor of the Buyers pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code. The Selling Debtor Entities shall be authorized to pay the Bid Protections to the Buyers in accordance with the terms of the Agreement without further order of the Court.

12. The following provisions of the Agreement, as modified by this order, regarding payments to the Buyers are approved and the Selling Debtor Entities are authorized, but not directed, to perform thereunder as applicable: (i) Section 9.2, the "Break-Up Fee; Expense Reimbursement" and (ii) Article 10, the "Bidding Procedures."

13. The Selling Debtor Entities' obligations to pay the Bid Protections pursuant to the terms of the Agreement, as modified by this order, shall survive

termination of the Agreement and, until paid, shall constitute a superpriority administrative expense claim in favor of the Buyers pursuant to section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

Notice

14. Notice of (i) the Motion, including the proposed Sale of the Purchased Assets to the Buyers, (ii) the Sale Hearing, and (iii) the proposed assumption and assignment of the Pre-Petition Contracts to the Buyers pursuant to the Agreement or to a Successful Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

(a) Notice Of Sale Hearing. Within seven days after entry of this order (the "Mailing Date"), the Debtors (or their agent) shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) counsel for the agent under the Debtors' postpetition credit facility, (vi) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past 12 months, (vii) all entities known to have asserted any lien, claim, interest, or Encumbrance in or upon the Purchased Assets, (viii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (ix) all counter-parties to the Assumed and Assigned Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice, (xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883), as amended from time to time (collectively, the "Case Management Orders")), (xv) counsel to General Motors Corporation, (xvi) counsel to the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number 2195 (Athens), (xvii) all other labor unions representing the Steering Business's hourly

employees, and (xviii) any pension fund or multiemployer pension plan to which the Debtors have made contributions on account of employees of the Steering Business.

(b) Cure Notice. At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on each non-Debtor party to the Pre-Petition Contracts a cure notice substantially in the form attached hereto as Exhibit 2 (the "Cure Notice"). The Cure Notice shall state the cure amount that the Selling Debtor Entities believe is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's lease or contract will be assumed and assigned to the Buyers or a Successful Bidder (as appropriate) to be identified at the conclusion of the Auction. In addition, such Cure Amounts shall be listed on a schedule to the Sale Approval Order. Each non-Debtor party to the Pre-Petition Contracts shall have ten days from the date of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof). If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any the Pre-Petition Contract or any other document, and the non-Debtor party to the Pre-Petition Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Pre-Petition Contract against the Selling Debtor Entities, the Buyers, or the Successful Bidder (as appropriate), or the property of any of them.

(c) Assumption/Assignment Notice For Buyers. At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on all non-Debtor parties to the Assumed and Assigned Contracts a notice (the "Buyer Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 3, identifying the Buyers as the parties which will be assigned all of the Selling Debtor Entities' right, title, and interest in the Assumed and Assigned Contracts, subject to completion of the Bidding Process provided under the Bidding Procedures. The non-Debtor party to a Pre-Petition Contract shall have ten days from the service of the Buyer Assumption/Assignment Notice to object to the proposed assumption and assignment to the Buyers and must state in its objection, with specificity, the legal and factual basis of its objection. If no objection is timely received, the non-Debtor party to the Pre-Petition Contract shall be deemed to have consented to the assumption and assignment of the Pre-Petition Contract to the Buyers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d) Assumption/Assignment Notice For A Qualified Bidder. At least 20 days prior to the Sale Hearing or on the business day following the Bid Deadline, whichever is later, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 4, to be sent to each non-Debtor party to an Assumed and Assigned Contract identifying all Qualified Bidders (except the Buyers, which notice shall be governed by the Buyer Assumption/Assignment Notice set forth above). The non-Debtor party to the Pre-Petition Contract shall have ten days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual

basis of its objection. If no objection is timely received, the non-Debtor party to the Pre-Petition Contract shall be deemed to have consented to the assumption and assignment of the Pre-Petition Contract to the Buyers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(e) Publication Notice. On or before the Mailing Date, or as soon therafter as is practicable, the Debtors shall cause notice substantially in the form of the notice attached hereto as Exhibit 5, to be published in the Wall Street Journal (International Edition), the New York Times, and the Detroit Free Press.

15. Notwithstanding rules 6004(h), 6006(d), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other Bankruptcy Rule or rule 62(a) of the Federal Rules of Civil Procedure, this order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this order.

16. To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or in any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this order, the provisions of this order shall control. The Debtors' obligations under this order and the portions of the Agreement pertaining to the Bid Protections shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon Debtors, and the reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed plan or plans in the Debtors' cases.

17. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

18. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
December 20, 2007

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE