**Hearing Date And Time: January 25, 2008 at 10:00 a.m.**
**Response Date And Time: January 18, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                  :
       In re                          :     Chapter 11
                                  :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                  :
                                  :     (Jointly Administered)
                Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' TWENTY-FOURTH OMNIBUS OBJECTION PURSUANT TO 11 U.S.C.
§ 502(b) AND FED. R. BANKR. P. 3007 TO (A) DUPLICATE OR AMENDED CLAIMS, (B)
CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C) UNTIMELY
CLAIMS, AND (D) CLAIMS SUBJECT TO MODIFICATION, MODIFIED CLAIMS
ASSERTING RECLAMATION, AND CLAIM SUBJECT TO MODIFICATION THAT IS
<u>SUBJECT TO PRIOR ORDER</u>

("TWENTY-FOURTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Twenty-Fourth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To (A) Duplicate Or Amended Claims, (B) Claims Not Reflected On Debtors'

Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification, Modified

Claims Asserting Reclamation, And Claim Subject To Modification That Is Subject To Prior

Order (the "Twenty-Fourth Omnibus Claims Objection"), and respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S.

Trustee appointed an official committee of equity holders (the "Equity Committee," and together

with the Creditors' Committee, the "Statutory Committees").

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264).

2

Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession (the "Plan") (Docket No. 11386) and the First Amended Disclosure Statement with

respect to the Plan (the "Disclosure Statement") (Docket No. 11388).  The Court entered an order

approving the adequacy of the Disclosure Statement and granting the related solicitation

procedures motion on December 10, 2007 (Docket No. 11389).

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and have continued their business operations without supervision from the Court.[2]

---

[1]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
2007.

[2]     On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso

*(cont'd)*

3

7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.      Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

9.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

_____
*(cont'd from previous page)*
    receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of
    which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31,
    2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing
    footprint and to lower its overall cost structure.

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

          10.     The Debtors believe that the Company's financial performance

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

          11.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

          12.     On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

---

[3]   Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in
calendar year 2004 was $482 million.

operations.  The Debtors stated that they needed to focus on five key areas:[4] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[5] second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company;[6] third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors and a plan framework
support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally
terminated the equity purchase and commitment agreement and related plan framework support agreement.  On
July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment
agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan
investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill
Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate
of Pardus Capital Management, L.P.  Under the Delphi-Appaloosa EPCA, the new plan investors agreed to
invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's
transformation plan and plan of reorganization.  This Court approved the Delphi-Appaloosa EPCA on August 2,
2007.  On October 29, 2007, the Debtors filed a motion requesting this Court's approval of certain proposed
amendments to the Delphi-Appaloosa EPCA (Docket No. 10760).  In addition, on November 14, 2007,
December 3, 2007, and December 5, 2007,  the Debtors filed certain additional proposed amendments to the
Delphi-Appaloosa EPCA.  On December 10, 2007, this Court entered an order granting the motion and
approving the proposed amendments (Docket No. 11382).

[5]    As of August 29, 2007, this Court had entered the following orders approving settlements between Delphi and
each of its U.S. labor unions:
•    International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America
(Docket No. 8693);
•    International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication
Workers of America (Docket No. 9106);
•    International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die
Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals
832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
•    United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers
International Union and USW Local 87L (Docket No. 9169).
On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's
motion for an order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of
collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

[6]    On September 6, 2007, Delphi announced that it had entered into agreements with GM consisting of a Global
Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA").  Delphi's
comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM.  The GSA and
MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively.  See Docket No. 9263.  On October
29, November 14, December 3, December 5, and December 10, 2007, the Debtors filed certain proposed
amendments to the GSA and MRA.  The approval of such amendments will be considered in connection with
the confirmation of the Plan.

make the necessary manufacturing alignment with their new focus;[7] fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint;[8] and fifth, devising a

workable solution to their current pension situation.[9]

E.    The Debtors' Plan Of Reorganization

           13.    By filing the Plan and related Disclosure Statement, the Debtors reached

another key milestone in their chapter 11 cases.  The Plan is based upon a series of global

settlements and compromises that involve nearly every major constituency in the Debtors'

---

[7]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants.  The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders.  During the 2006 and 2007 calendar years, for example, the Debtors have sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, their brake hose and catalyst businesses, and their Saltillo, Mexico brake plant business, as well as their manufacturing equipment and test development equipment at the chassis facility in Saginaw, Michigan.  The Debtors also received court approval to sell substantially all of the assets used in their interiors and closures businesses (subject to certain cure disputes) and for bid procedures related to the upcoming sale of substantially all assets used in their steering and halfshaft business.

[8]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments , which will be transitioned as part of the Company's transformation plan: Steering (for which bidding procedures were approved on December 20, 2007) and Automotive Holdings Group.  To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Pension Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively.  On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees Plan for the September 30, 2007 pension plan year.  On October 25, 2007, this Court granted the Debtors' motion for authority to perform under the terms of that waiver.  On October 4, 2007, the IRS, at Delphi's request, further modified the conditions to the initial waivers so that they are generally consistent with the conditions to the most recent waiver.

reorganization cases, including GM.  Attached as exhibits to the Plan are two agreements, the

GSA and the MRA, which provide for a comprehensive settlement with GM.  Both agreements

are subject to this Court's approval as part of the confirmation process.  This Court has scheduled

a hearing to consider confirmation of the Plan to commence on January 17, 2008.  Currently, the

Debtors continue to expect that they will emerge from chapter 11 during the first quarter of 2008.

14.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

15.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

16.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

17.    In addition, the Debtors published the Bar Date Notice in the <u>New York</u>

<u>Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions),

<u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions

of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo</u>

<u>News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>,

<u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the

<u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis</u>

<u>Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>,

the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile</u>

<u>Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester Democrat and Chronicle</u>, the

<u>Saginaw News</u>, the <u>Sandusky</u>, the <u>Tribune Chronicle</u>, the <u>Tulsa World</u>, the <u>Tuscaloosa News</u>,

and the <u>Vindicator</u>, and electronically through posting on the Delphi Legal Information Website,

www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,700 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 23 omnibus Claims[10] objections,

---

[10]    The Debtors filed objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451
and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585),
February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27,
2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos.
8270 and 8271), and July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151),

*(cont'd)*

pursuant to which this Court has disallowed and expunged 9,400 Claims and modified

approximately 3,300 Claims.  In addition, the hearings with respect to approximately 880 Claims

have been adjourned to future claims hearings pursuant to the Claims Objection Procedures

Order (as defined below).

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

20.    On November 30, 2007, the Debtors filed the Motion Under New

Bankruptcy Rule 3007(c) And 11 U.S.C. Section 105(a) For Order Authorizing Debtors To

Continue Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11

U.S.C. Section 502(b) And Fed. R. Bankr. P. 2002(M), 3007, 7016, 7026, 9006, 9007, And 9014

Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices

And Procedures Governing Objections To Claims (Docket No. 11187), in which the Debtors

requested this Court, among other things, to allow the Debtors to continue to implement the

_____

*(cont'd from previous page)*
September 21, 2007 (Docket No. 9535),  October 26, 2007 (Docket No. 10738); November 19, 2007 (Docket
No. 10982).

10

claims objection procedures established in the Claims Objection Procedures Order,

notwithstanding the recent amendments to Bankruptcy Rule 3007, which became effective

December 1, 2007.  On December 20, 2007, the Court entered the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

      21.    In this Twenty-Fourth Omnibus Claims Objection, the Debtors are

objecting to 136 Proofs of Claim, all of which are set forth on <u>Exhibit F</u> hereto in alphabetical

order by claimant and cross-referenced by proof of claim number and basis of objection.

Relief Requested

      22.    By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, as amended December 1, 2007,

disallowing and expunging (a) those Claims set forth on <u>Exhibit A</u> hereto as "Claims To Be

Expunged" because they are duplicative of other Claims or have been amended or superseded by

later-filed Claims, (b) those Claims set forth on <u>Exhibit B</u> hereto because they assert liabilities or

dollar amounts that are not reflected on the Debtors' books and records, and (c) those Claims set

forth on <u>Exhibit C</u> hereto because they were untimely filed pursuant to the Bar Date Order.

      23.    In addition, by this Twenty-Fourth Omnibus Claims Objection the Debtors

seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule

3007, as amended December 1, 2007, (a) revising the asserted amount or classification, and/or

changing the identity of the alleged Debtor, with respect to the Claims set forth on <u>Exhibit D-1</u>

11

hereto, (b) revising the asserted amount and/or classification, and/or changing the identity of the

alleged Debtor, with respect to the Claims set forth on Exhibit D-2 hereto, some of which are

subject to a letter agreement pursuant to which the Debtors and the Claimant agreed upon the

valid amount of such Claimant's reclamation demand, subject to certain reserved defenses, and

others of which are held by Claimants who are deemed to have consented to the Debtors'

determination of the valid amount of the reclamation demand, subject to certain reserved

defenses, and (c) the asserted amount of the Claim set forth on Exhibit D-3 hereto, which has

been modified pursuant to a prior order.

Objections To Claims

G.    Duplicate Or Amended Claims

24.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain of the Proofs of Claim in fact assert duplicate Claims (each, a "Duplicate Claim") for

a single liability.  In some instances, Duplicate Claims arose when a Claimant filed Proofs of

Claim against multiple Debtor entities for the same liability.  In an effort to eliminate the

Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation

provided in those Proofs of Claim, and the Debtors' Schedules and Statements to determine

which duplicate claim should be the surviving claim.

25.    Additionally, the Debtors determined that many Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities (the "Amended Claims").  For instance, many

Amended Claims were filed to amend an amount previously claimed in an earlier Proof of Claim

(the "Original Claim").  Other Amended Claims were filed to amend the classification of part or

all of an earlier Original Claim.

12

26.    It is axiomatic that creditors are not entitled to multiple recoveries for a single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register Original Claims for which Amended Claims were subsequently filed (collectively, the "Duplicate Or Amended Claims").

27.    Set forth on Exhibit A hereto is a list of Claims that the Debtors have identified as Duplicate Or Amended Claims.  For each Duplicate Or Amended Claim, Exhibit A classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a "Surviving Claim" (the "Surviving Claim").  Generally, the Surviving Claims reflect the classifications of the liabilities as reflected on the Debtors' Schedules and Statements.[11]  The Debtors request that the Claims marked as Expunged Claims on Exhibit A be disallowed and expunged.  With respect to the Claims on Exhibit A marked as Surviving Claims, the Debtors do not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibit A, however, does not reflect any view by the Debtors as to the ultimate validity of any such Claims.  The Debtors therefore expressly reserve all of their rights to further object to any or all of the

---

[11]    As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors' Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

> Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the "Catalyst Entities")] are maintained in this manner.  The financial information for these entities has been consolidated for purposes of the Schedules and Statements and such consolidated financial information has been included in the Schedules and Statements of each of [the Catalyst Entities].

> Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of the books and records of the Catalyst Entities, claimants should not retain more than one Claim for a single liability.  Nonetheless, the Debtors expressly reserve all of their rights to seek to re-classify these obligations as obligations of another Debtor entity at a later date.

13

Surviving Claims at a later date on any basis whatsoever, except as expressly provided in paragraph 54 below.

28.    Accordingly, the Debtors (a) object to the Duplicate Or Amended Claims and (b) seek entry of an order disallowing and expunging the Duplicate Or Amended Claims in their entirety.

H.    Claims Not Reflected On The Debtors' Books And Records

29.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records (the "Books And Records Claims").  The Debtors believe that the parties asserting the Books And Records Claims are not creditors of the Debtors.

30.    The basis for determining that the Debtors are not liable for the asserted Claim is that the Debtors' books and records reflect that the asserted Claim was properly paid prior to the commencement of the Debtors' cases.

31.    A claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. 2005) (quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992)).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

32.    Attached hereto as Exhibit B is a list of the Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books And Records Claims at a later date on any basis whatsoever.

14

33.     Accordingly, the Debtors (a) object to the Books And Records Claims and (b) seek entry of an order disallowing and expunging the Books And Records Claims in their entirety.

I.     Untimely Claims

34.     During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim were received by the Debtors after the Bar Date (the "Untimely Claim").  The Debtors object to the Untimely Claims on the basis that they were not timely filed pursuant to the Bar Date Order.  The Untimely Claims are identified on Exhibit C hereto. Accordingly, the Debtors (a) object to the Untimely Claims[12] and (b) seek entry of an order disallowing and expunging the Untimely Claims in their entirety.

J.     Claims Subject To Modification

35.     During the Debtors' review of the Proofs of Claim, the Debtors have determined that certain Claims (a) state the incorrect amount or are overstated and/or (b) were filed and docketed against the wrong Debtors, and/or (c) incorrectly assert secured or priority status (collectively, the "Claims Subject To Modification").

36.     Although in this Twenty-Fourth Omnibus Claims Objection the Debtors do not seek to disallow and expunge the Claims Subject To Modification, based on an initial review, the Debtors have determined that their liability with respect to each such Claim does not exceed the dollar amount set forth on Exhibit D-1 hereto.  Moreover, in some cases, the Debtors have determined that such Claims should be reclassified in the manner set forth on Exhibit D-1 hereto.  Finally, in some cases, the Debtors have determined that such Claims should be asserted against a different Debtor entity, as indicated on Exhibit D-1 hereto by a change in the applicable

---

[12]    The Untimely Claims listed on Exhibit C hereto were not included as part of the Claims Timeliness Motion.

case number.  The bases for placing a Claim in the Claims Subject To Modification category of

objection include, but are not limited to, the following: the asserted Claim (a) does not account

for amounts that may have been paid or credited against such Claim prior to the commencement

of these cases, (b) may include postpetition liabilities, (c) does not account for amounts that may

have been paid or credited against such Claim following the commencement of these cases, (d)

was docketed and filed against the wrong Debtor entity, and/or (e) is misclassified as a priority

or secured claim.  Thus, the Debtors seek to (i) convert the amount of each Claim Subject To

Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors'

books and records and/or the liquidated amount requested by the Claimant (thus eliminating the

unliquidated component), as appropriate, (ii) change the identity of the Debtor against which the

Claim is asserted, and/or (iii) appropriately reclassify the Claim.

        37.     As stated above, a Claimant's Proof of Claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims,

the Debtors' books and records refute that the claims asserted in each Claims Subject To

Modification are actually owed by any of the Debtors in the amount asserted.

        38.     Set forth on Exhibit D-1 hereto is a list of Claims Subject To Modification

that the Debtors believe should be modified solely to assert a properly classified, fully liquidated

claim amount against a different Debtor than the one identified by the Claimant.  For each Claim

Subject To Modification, Exhibit D-1 reflects the amount, classification, and Debtor asserted in

the Claimant's Proof of Claim in a column titled "Claim As Docketed"[13] and the proposed

modified dollar amount and classification for the Claim and the Debtor against which the Claim

should be asserted in a column titled "Claim As Modified."

39.    The Debtors object to the amount, classification, and/or identity of the

Debtor for each Claim Subject To Modification listed on Exhibit D-1 and request that each such

Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As

Modified" column of Exhibit D-1.  Thus, no Claimant listed on Exhibit D-1 would be entitled to

(a) recover for any Claim Subject To Modification in an amount exceeding the dollar value listed

as the "Modified Total" for such Claim on Exhibit D-1, (b) assert a classification that is

inconsistent with that listed in the "Claim As Modified" column, and/or (c) assert a Claim against

a Debtor other than that whose case number is listed in the "Claim As Modified" column on

Exhibit D-1, subject to the Debtors' right to further object to each such Claim Subject To

Modification.  For clarity, Exhibit D-1 refers to the Debtor entities by case number and Exhibit E

displays the formal name of four Debtor entities and their associated bankruptcy case numbers

referenced in Exhibit D-1.

40.    The inclusion of the Claims Subject To Modification on Exhibit D-1,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims

Subject To Modification at a later date on any basis whatsoever.

41.    Accordingly, the Debtors (a) object to the asserted amount, classification,

and/or identity of the Debtor for each Claim Subject To Modification and (b) seek an order

modifying the Claims Subject To Modification to reflect the Modified Total, classification for

---

[13]    The Asserted Claim Amount on Exhibits D-1, D-2, and D-3 reflects only asserted liquidated claims.

the Claim, and/or the Debtor against which such Claim should be asserted, as set forth on <u>Exhibit</u>
<u>D-1</u>.

K.        <u>Modified Claims Asserting Reclamation</u>

42.        In addition, the Debtors have also determined that certain Claims (the
"Modified Claims Asserting Reclamation") (a)(i) state the incorrect amount or are overstated,
including as a result of the assertion of invalid unliquidated claims, and/or (ii) were filed and
docketed against the wrong Debtor, and/or (iii) incorrectly assert secured or priority status and (b)
assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter
agreement whereby the Debtors and the Claimant agreed upon the valid amount of the
reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors'
determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each,
a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and
notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation
Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses")
with respect to the reclamation demand are valid.

43.        Set forth on <u>Exhibit D-2</u> hereto is a list of Modified Claims Asserting
Reclamation that the Debtors believe should be modified solely to assert a properly classified,
fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim
Asserting Reclamation, <u>Exhibit D-2</u> reflects the amount, classification, and Debtor asserted in
the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar
amount and classification for the Modified Claim Asserting Reclamation, and the Debtor against
which such Claim should be asserted, in a column titled "Claim As Modified."

44.        The Debtors object to the amount, classification, and/or identity of the
Debtor for each Modified Claim Asserting Reclamation listed on <u>Exhibit D-2</u> and request that

18

each such Claim be revised to reflect the amount, classification, and Debtor identity listed in the "Claim As Modified" column of Exhibit D-2.  Thus, no Claimant listed on Exhibit D-2 would be entitled to (a) recover for any Modified Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit D-2, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand, or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit D-2, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  For clarity, Exhibit D-2 refers to the Debtor entities by case number and Exhibit E displays the formal name of four Debtor entities and their associated bankruptcy case numbers referenced in Exhibit D-2.

45.    Accordingly, the Debtors (a) object to the amount, classification, and/or identity of the Debtor for the Modified Claims Asserting Reclamation and (b) seek an order modifying the Modified Claims Asserting Reclamation to reflect the Modified Total, classification, and/or identity of the Debtor against which such Claim should be asserted, as set forth on Exhibit D-2.

L.    Claim Subject To Modification That Is Subject To Prior Order

46.    In addition, the Debtors have also determined that a certain Claim, which was modified pursuant to a prior order (the "Claim Subject To Modification That Is Subject To Prior Order"), states the incorrect amount.  Although in this Twenty-Fourth Omnibus Claims Objection the Debtors do not seek to disallow and expunge the Claim Subject To Modification That Is Subject To Prior Order, the Debtors have determined, based on an initial review, that their liability with respect to such Claim does not exceed the dollar amount set forth on Exhibit D-3 hereto.  The bases for placing a Claim in the Claim Subject To Modification That Is Subject

19

To Prior Order category of objection is the asserted Claim does not account for amounts that may have been paid or credited against such Claim following the commencement of these cases. Thus, the Debtors seek to convert the amount of such Claim Subject To Modification That Is Subject To Prior Order to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors' books and records.

47.    As stated above, a Claimant's Proof of Claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'" WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims, the Debtors' books and records refute that the Claim asserted in such Claim Subject To Modification That Is Subject To Prior Order is owed by any of the Debtors in the amount asserted.

48.    Set forth on Exhibit D-3 hereto is the Claim Subject To Modification That Is Subject To Prior Order that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount different from the amount asserted by the Claimant.  For such Claim Subject To Modification That Is Subject To Prior Order, Exhibit D-3 reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed," and the proposed modified dollar amount and classification for the Claim and the Debtor against which the Claim should be asserted, in a column titled "Claim As Modified."

49.    The Debtors object to the amount of such Claim Subject To Modification And Subject To Prior Order listed on Exhibit D-3 and request that such Claim be revised to reflect the amount, classification, and Debtor listed in the "Claim As Modified" column of

Exhibit D-3.  Thus, the Claimant listed on Exhibit D-3 would be not be entitled to (a) recover for

the Claim Subject To Modification That Is Subject To Prior Order in an amount exceeding the

dollar value listed as the "Modified Total" for such Claim on Exhibit D-3, (b) assert a

classification that is inconsistent with that listed in the "Claim As Modified" column, and/or (c)

assert the Claim against a Debtor other than that whose case number is listed in the "Claim As

Modified" column on Exhibit D-3, subject to the Debtors' right to further object to such Claim

Subject To Modification That Is Subject To Prior Order.  For clarity, Exhibit D-3 refers to the

Debtor entities by case number and Exhibit E displays the formal name of the two Debtor entities

and their associated bankruptcy case numbers referenced in Exhibit D-3.

        50.     The inclusion of the Claim Subject To Modification That Is Subject To

Prior Order on Exhibit D-3, however, does not reflect the Debtors' view as to the ultimate

validity of the Claim.  The Debtors therefore expressly reserve all of their rights to further object

to the Claim Subject To Modification That Is Subject To Prior Order at a later date on any basis

whatsoever.

        51.     Accordingly, the Debtors (a) object to the asserted amount and the Debtor

entity for such Claim Subject To Modification That Is Subject To Prior Order and (b) seek an

order modifying the Claim Subject To Modification That Is Subject To Prior Order to reflect the

Modified Total as set forth on Exhibit D-3.

Separate Contested Matters

        52.     Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Twenty-Fourth Omnibus Claims

Objection, each such Claim and the objection to such Claim asserted in this Twenty-Fourth

Omnibus Claims Objection will be deemed to constitute a separate contested matter as

21

contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order,

any order entered by the Court with respect to an objection asserted in this Twenty-Fourth

Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

### Reservation Of Rights

53.    The Debtors expressly reserve the right to amend, modify, or supplement

this Twenty-Fourth Omnibus Claims Objection and to file additional objections to the Proofs of

Claim or any other Claims (filed or not) which may be asserted against the Debtors, including

without limitation the right to object to any Claim on the basis that it has been asserted against

the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twenty-

Fourth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on

other stated grounds or on any other grounds that the Debtors discover during the pendency of

these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to

the extent that such Claim has been paid.

### Responses To Objections

54.    Responses to the Twenty-Fourth Omnibus Claims Objection are governed

by the provisions of the Claims Objection Procedures Order.  The following summarizes the

provisions of that Order, but is qualified in all respects by the express terms thereof.

M.    Filing And Service Of Responses

55.    To contest an objection, responses (each, a "Response"), if any, to the

Twenty-Fourth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal

Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New

York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's

case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch

disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on January 18, 2008.**

N.     Contents Of Responses

        56.     Every Response to this Twenty-Fourth Omnibus Claims Objection must

contain at a minimum the following:

        (a)     the title of the claims objection to which the Response is directed;

        (b)     the name of the Claimant and a brief description of the basis for
the amount of the Claim;

        (c)     a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

        (d)     unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

        (e)     to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

        (f)     the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

O.    Timely Response Required

57.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on January 25, 2008 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Twenty-Fourth Omnibus Claims Objection.

58.    Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Twenty-Fourth Omnibus Claims Objection and who is served with the Twenty-Fourth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Twenty-Fourth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

59.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or

24

partially unliquidated and (b) provides the amount that the Claimant believes would be the

allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,

as appropriate (the "Claimant's Asserted Estimated Amount"), <u>pursuant to the Claims Objection</u>

<u>Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted</u>

<u>Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the</u>

<u>Bankruptcy Code for all purposes other than allowance, but including voting and establishing</u>

<u>reserves for purposes of distribution, subject to further objection and reduction as appropriate</u>

<u>and section 502(j) of the Bankruptcy Code</u>, by providing notice as described more fully in the

Claims Objection Procedures Order.

Replies To Responses

60.    Replies to any Responses will be governed by the Claims Objection

Procedures Order.

Service Of Twenty-Fourth Omnibus Claims Objection Order

61.    Service of any order with regard to this Twenty-Fourth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

62.    Questions about this Twenty-Fourth Omnibus Claims Objection or

requests for additional information about the proposed disposition of Claims hereunder should be

directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-

5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive,

Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N.

Wharton).  Questions regarding the amount of a Claim or the filing of a Claim should be directed

25

to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not

contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

63.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered October 19, 2007 (Docket No. 10661).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

64.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twenty-

Fourth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A, B, and C, is

attached hereto as Exhibit G.  A form of the Notice Of Objection To Claim to be sent to the

Claimants listed on Exhibits D-1, D-2, and D-3 is attached hereto as Exhibit H.  Claimants will

receive a copy of this Twenty-Fourth Omnibus Claims Objection without Exhibits A through H

hereto.  Claimants will nonetheless be able to review Exhibits A through H hereto free of charge

by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

26

<u>Memorandum Of Law</u>

65.    Because the legal points and authorities upon which this objection relies
are incorporated herein, the Debtors respectfully request that the requirement of the service and
filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy
Rules for the United States Bankruptcy Court for the Southern District of New York be deemed
satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          December 21, 2007

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                           & FLOM LLP

                                        By:   /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              John K. Lyons (JL 9331)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606

                                              - and -

                                        By:   /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036

                                        Attorneys for Delphi Corporation, et al.,
                                           Debtors and Debtors-in-Possession