**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
                                        )
In re                                   ) Chapter 11
                                        )
DELPHI CORPORATION, et al               ) Case No. 05-44481 (RDD)
                                        )
Debtors.                                ) Jointly Administered
                                        )
---------------------------------------------------------

**FIFTH INTERIM FEE APPLICATION FOR COMPENSATION OF SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED BY**
**PRICEWATERHOUSECOOPERS LLP TO PROVIDE CERTAIN SARBANES-OXLEY**
**COMPLIANCE, TAX AND FINANCIAL PLANNING, AND OTHER GENERAL TAX**
**CONSULTING SERVICES TO DELPHI CORPORATION, et al.,**
**FOR THE PERIOD JUNE 1, 2007 THROUGH SEPTEMBER 30, 2007**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANRUPTCY JUDGE:

PricewaterhouseCoopers LLP ("PwC"), certain Sarbanes-Oxley compliance, tax and

financial planning, and other general tax consulting services for the above-captioned debtors and

debtors in possession (the "Debtors"), submit this Fifth Interim Fee Application (the "Fifth

Interim Fee Application") pursuant to sections 330 and 331 of Title 11 of the United States

Bankruptcy Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy

Procedures (the "Bankruptcy Rules"), General Order M-151, Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local

Guidelines") and the United States Trustee Guidelines for Reviewing Interim Fee Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 effective

January 30, 1996 (the "UST Guidelines", collectively with the Local Guidelines, the

"Guidelines"), for allowance and approval of interim compensation for professionals services

rendered by PwC to provide certain Sarbanes-Oxley compliance, tax and financial planning, and

other general tax consulting services to the Debtors and for reimbursement of actual and
necessary expenses incurred in connection with such services from June 1, 2007 through and
including September 30, 2007 (the Sixth Interim Fee Application period, the "Compensation
Period").

In support of this Fifth Interim Fee Application, PwC respectfully represents as follows:

## JURISDICTION

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This
matter is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2).

2.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory predicates for the relief requested herein are sections 330 and 331 of
the Bankruptcy Code, the Bankruptcy Rules and the Local Guidelines.  Pursuant to the Local
Guidelines, a certification of compliance is attached hereto as **Exhibit A**.

## BACKGROUND

4.        On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S.
subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief
under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the
"Bankruptcy Code").  On October 14, 2005 (the "Secondary Filing Date" and, together with the
Initial Filing Date, the "Petition Dates"), three additional U.S. subsidiaries of Delphi (together
with the Initial Filers, collectively, the "Debtors") also sought reorganization relief.  The Debtors
continue to operate their businesses and manage their properties as debtors-in-possession
pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing
the joint administration of the Debtor's chapter 11 cases (Docket Nos. 28 and 404).

5.      On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

7.      The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

### *PricewaterhouseCoopers' Retention*

8.      By this Court's order dated June 21, 2006, the Debtors were authorized to retain PwC to provide certain Sarbanes-Oxley Compliance, Tax and Financial Planning and Other General Tax Consulting Services to the Debtors with regard to the filing and prosecution of the Chapter 11 Cases and all related matters (the "Retention Order", Docket No. 4310).  By this Court's order January 17, 2007, the Debtors expanded PwC's services to include due diligence services by filing a supplemental application nunc pro tunc to December 15, 2006 (the "Supplemental Retention Order", Docket No. 6677). A copy of the Retention Order and the Supplemental Retention Order are attached hereto as **Exhibit B**[1].

9.      PwC has also reported additional relationships related to the Court: On April 24, 2007, Brian Decker filed a supplemental declaration relating to services offered in Spain

---

[1]  Currently, the Debtors and PwC are defining the objections, deliverables and fee structure for services subsequent to the original estimated completion date of March 31, 2007, as well as other identified projects.  These services represent a continuation of the approved services and will be finalized within new statement of work  ("Expanded SOW Services") documents and filed with the Court upon completion. PwC and the Debtors are  currently negotiating the revised  billing rate structure, effective April 1, 2007. PwC will submit rate adjustments in a future fee statement period once finalized.

associated with the petition of Delphi Automotive Systems Espana S.L. ("DASE") filed for

"Concurso," or bankruptcy, under Spanish law, exclusively for this legal entity. On April 13,

2007 the judge overseeing the Concurso proceeding accepted DASE's application for Concurso

and proceeded sua sponte to appoint the Spanish member firm of the PwC global network of

firms, PwC Auditores S.L. ("PwC Spain"), to act as one of three insolvency administrators for

DASE in the Concurso proceeding (the "Second Supplemental Declaration", Docket No. 7783),

attached hereto as **Exhibit B**.


## COMPENSATION REQUESTED

10.    This is PwC's Fifth Interim Fee Application.  PwC submits this Fifth Interim Fee

Application for approval and allowance of interim compensation of $3,912,929.40 for actual,

reasonable and necessary professional services rendered, and reimbursement of $457,257.37 for

actual, reasonable and necessary expenses incurred during the Compensation Period[2] pursuant to

Sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule

2016 of the Federal Rules of Bankruptcy (the "Bankruptcy Rules"), in accordance with all

applicable orders of this Court, for a total request of $4,370,176.77  (the "Total Compensation

Amount").

11.    For the Compensation Period, PwC made pre-billing adjustments totalling

$156,646.73 in fees and expenses.[3]  In addition, PwC reduced its travel time by fifty (50)

percent.

---

[2]    PwC reserves its right to seek at a later date compensation for services rendered and expenses incurred during the Compensation Period that are not otherwise included in this Fifth Interim Fee Application, due to internal billing delays.

[3]    These adjustments are fees and expenses not billed by PwC in their monthly fee applications.  The amounts are provided for informational purposes only, indicating additional fees and expenses not billed to the Debtors.

_Fees And Expenses Requested In Prior Interim Fee Applications_

12.    On March 15, 2007, PwC submitted its First Interim Fee Application for Compensation of Services Rendered, totalling $2,344,167.75, and Reimbursement of Actual and Necessary Expenses Incurred, totalling $298,544.27, for the Period February 1, 2006 through May 31, 2006 (the "First Interim Fee Application"), Docket No. 7351), representing the cumulative fees and expenses for the previously filed interim fee requests less agreed concessions discussed with the Debtors.  On June 27, 2007, the court awarded PwC $2,222,167.75 in fees and $298,544.27 in expenses, representing total compensation requested less voluntary reduction of $122,000.00 as agreed to with the Joint Fee Review Committee (Docket No. 8422_)._

13.    On March 21, 2007, PwC submitted its Second Interim Fee Application for Compensation of Services Rendered, totalling $7,929,282.75, and Reimbursement of Actual and Necessary Expenses Incurred, totalling $906,500.55, for the Period June 1, 2006 through September 30, 2006 (the "Second Interim Fee Application"), Docket No. 7402, representing the cumulative fees and expenses for the previously filed interim fee requests less agreed concessions discussed with the Debtors.  On June 27, 2007, the court awarded PwC $7,807,282.75 in fees and $906,500.55 in expenses, representing total compensation requested less voluntary reduction of $122,000.00 as agreed to with the Joint Fee Review Committee (Docket No. 8423, filed June 28, 2007_)._

14.    On April 27, 2007, PwC submitted its Third Interim Fee Application for Compensation of Services Rendered, totalling $8,557,454.00, and Reimbursement of Actual and Necessary Expenses Incurred, totalling $542,801.10, for the Period October 1, 2006 through January 31, 2007 (the "Third Interim Fee Application"), Docket No. 7815, representing the

cumulative fees and expenses for the previously filed interim fee requests less agreed

concessions discussed with the Debtors.  On June 27, 2007, the court awarded PwC

$8,435,454.00 in fees and $542,801.10 in expenses, representing total compensation requested

less voluntary reduction of $122,000.00 as agreed to with the Joint Fee Review Committee

(Docket No. 8450, filed July 2, 2007*).

15.    On August 9, 2007, PwC submitted its Fourth Interim Fee Application for

Compensation of Services Rendered, totalling $11,580,442.20, and Reimbursement of Actual

and Necessary Expenses Incurred, totalling $909,799.69, for the Period February 1, 2007

through May 31, 2007 (the "Fourth Interim Fee Application"), Docket No. 8962, representing the

cumulative fees and expenses for the previously filed interim fee requests less agreed

concessions discussed with the Debtors.  On October 29, 2007, the court awarded PwC

$11,472,671.00 in fees and $890,243.69 in expenses, representing total compensation requested

less voluntary reduction of $217,229.00 as agreed to with the Joint Fee Review Committee

(Docket No. 10751, filed October 29, 2007).

16.    Prior to the filing of this Fifth Interim Fee Application, PwC has filed four

monthly fee invoices (cumulatively, the "5IFA Fee Statements") with the Debtors and notice

parties pursuant to the Order Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals (the "Fee Order").  These 5IFA Fee Statements, as

set forth below, as well as any adjustments deemed necessary upon completion of this Fifth

Interim Fee Application, represent the Total Compensation Amount requested in this Fifth

Interim Fee Application:

16.1.    On August 31, 2007, PwC distributed its monthly fee statement for PwC

fees for the period of June 1, 2007 through June 30, 2007 (the "June Fee Statement"). The June

Fee Statement sought an allowance of $733,268.00 as compensation for services rendered and

$70,849.01 for expenditures incurred. The time for submitting objections to the June Fee

Statement expired on September 20, 2007.  PwC has received interim payment associated with

the June Fee Statement of $657,463.41 (80% of fees and 100% of expenses).

      16.2.    On September 5, 2007, PwC distributed its monthly fee statement for PwC

fees for the period of July 1, 2007 through July 31, 2007 (the "July Fee Statement"). The July

Fee Statement sought an allowance of $537,362 as compensation for services rendered and

$71,945.16 for expenditures incurred. The time for submitting objections to the July Fee

Statement expired on September 25, 2007.  PwC has received interim payment associated with

the July Fee Statement Fee Statement of $501,834.76 (80% of fees and 100% of expenses).

      16.3.    On October 3, 2007, PwC distributed its monthly fee statement for PwC

fees for the period of August 1, 2007 through August 31, 2007 (the "August Fee Statement").

The August Fee Statement sought an allowance of $624,620.90 as compensation for services

rendered and $141,884.86 for expenditures incurred. The time for submitting objections to the

August Fee Statement expired on or about October 23, 2007. PwC has received interim payment

associated with the August Fee Statement of $641,581.58 (80% of fees and 100% of expenses).

      16.4.    On or about December 20, 2007, PwC distributed its monthly fee

statement for PwC fees for the period of September 1, 2007 through September 31, 2007 (the

"September Fee Statement"). The September Fee Statement sought an allowance of

$2,017,678.50 as compensation for services rendered and $172,568.34 for expenditures incurred.

The time for submitting objections to the September Fee Statement expires on or about January

9, 2008. PwC is pending receipt of the interim payment associated with the September Fee

Statement of $1,786,711.14 (80% of fees and 100% of expenses).

17.     The fees sought by this Fifth Interim Fee Application reflect an aggregate of 25,405.50 hours of hourly professional time spent and recorded in performing services for the Debtors and their estates during the Compensation Period at a blended average hourly rate of $152.72.  PwC is only seeking compensation for services rendered to the Debtors and their estates in connection with these Reorganization Cases.

18.     There is no agreement or understanding between PwC and any other person, other than members of the firm, for sharing of compensation to be received for services rendered in these cases.

**TIME AND EXPENSE RECORDS**

19.     This Fifth Interim Fee Application is made by PwC in accordance with the United States Trustee's Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under U.S.C. §330 ("UST Guidelines") and with the amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, dated April 19, 1995 ("SDNY Guidelines").  Pursuant to the UST Guidelines and SDNY Guidelines, PwC has attached the following exhibits:

19.1.   Exhibit A - Affidavit of Brian D. Decker in accordance with the Bankruptcy Rule 2016.

19.2.   Exhibit B - Retention Order dated June 21, 2006 authorizing the employment and retention of PricewaterhouseCoopers LLP to provide certain Sarbanes-Oxley Compliance, Tax and Financial Planning and Other General Tax Consulting Services to the Debtors; Supplemental Retention Order dated January 17, 2007 expanding the scope of retention for the due diligence project; and Second Supplemental Declaration dated April 24, 2007 disclosing insolvency administrator services in Spain.

**Fixed Fee Services**

19.3.    Exhibit C - Invoices for the Executive Personal Financial Planning Services.

19.4.    Exhibit D - Invoices for the WNTS Advisory Services.

**Hourly Fee Services**

19.5.    Exhibit E - A summary schedule showing the professionals who performed the services, the number of hours spent, each professional's billing rate, and the total fees for such services.

19.6.    Exhibit F - A summary schedule depicting the total hours and fees for each Project Category detailing the various subcategories and task codes.

19.7.    Exhibit G - Itemized time records, in chronological order, of each specific service for which an award of compensation is sought.  The itemized record includes: (1) the date each service was rendered, (2) the professional(s) who performed the service, (3) a description of the services rendered, and (4) the time spent performing the service in increments of one-quarter of an hour.

19.8.    Exhibit H - Summary and Expense Detail reports by individual and itemized total expenses for which reimbursement is sought.  All expenses for which reimbursements are sought are disclosed in detail by individual.  PwC has not requested reimbursement for certain out-of-pocket expenses when it would not be possible to assemble the billing details for reimbursement under the Guidelines.  These unbilled out-of-pocket expenses typically include telephone charges for calls placed in its offices, postage costs including Federal Express charges and copying and facsimile charges incurred at the Applicant's offices in connection with these cases.

19.9.    Exhibit I - Rate schedule for hourly services.

19.10.  Exhibit J - Statement of Work for new projects (Delphi SALT Loan Staff;

Tax Provision Services, Tax Basis Services).


## SERVICES RENDERED BY PRICEWATERHOUSECOOPERS

20.    PwC professionals categorized their time devoted to this matter on behalf of the

Debtors' estates to various project categories (the "Project Categories").

| Project | Hours | Fees |
|---|---|---|
| Sarbanes-Oxley 404 Services | 22,183.7 | $3,186,593.50 |
| Tax Compliance - Foreign Affiliate Reporting | 412.1 | $50,907.50 |
| Project Giant | 183.0 | $52,811.50 |
| Project Rock | 185.7 | $61,379.00 |
| Project Zip | 229.1 | $78,471.50 |
| Other Tax Consulting Services | 24.0 | $12,274.40 |
| Delphi Divestiture Assistance | 674.0 | $176,964.00 |
| Delphi Customs Review Assistance | 57.9 | $29,133.00 |
| Delphi SALT Loan Staff | 1,290.2 | $174,774.00 |
| Tax Provision Services | 58.1 | $21,234.50 |
| Tax Basis Services | 107.7 | $35,386.50 |
| Executive Financial Planning Services | | $9,000.00 |
| WNTS Advisory Services | | $24,000.00 |
| **Grand Total** | **25,405.5** | **$3,912,929.40** |


## FIXED FEE SERVICES - $33,000.00

## EXECUTIVE FINANCIAL PLANNING STATEMENT OF WORK, $9,000.00

35.    PwC provides (i) tax planning services to Debtors' senior executives, such as

assistance with income tax projections, modelling tax impact of provided benefits, modelling tax

impact of life events, withholding tax analysis, and estimated tax payment sufficiency analysis

and (ii) personal financial planning services to Debtors' senior executives, such as cash flow and

debt management, stock option analysis, education funding planning, retirement funding

planning, retirement distributions, investment strategies, estate tax minimization, and wealth distribution.  As stated in PwC retention application, these services are Fixed Fee by Delphi Executive.  Listed below are the total fees for the Third Quarter of 2007.  The quarterly invoice is annexed hereto as **Exhibit C**.

| Participant | | Total Fees |
|---|---|---|
| **2007 3rd Quarter Fees** | | |
| Mark Weber | $ | 2,000 |
| Karen Healy | $ | 2,000 |
| John Sheehan | $ | 2,000 |
| David Knill | $ | 1,500 |
| William Lloyd | $ | 1,500 |
| **Total Fees for the 3rd Quarter** | **$** | **9,000** |

## WNTS (WASHINGTON NATIONAL TAX SERVICES) ADVISORY SERVICES - $24,000.00

36.        As stated in PwC's retention application, these services are Fixed Fee advisory services billed to the Debtors through a monthly fixed fee, $6,000 per month, and the monthly invoices are annexed hereto as **Exhibit D**.  PwC services included:  Membership, activities or materials with respect to the Tax Study Group (TSG), the Coalition for Analysis and Study of Territorial Taxation (CASTT), the Washington Tax Service (WTS), and the International Tax Policy Forum (ITPF).

| Project Category | Fees |
|---|---|
| WNTS Advisory Services | $24,000.00 |
| **Grand Total** | **$24,000.00** |

## HOURLY FEE SERVICES - 25,405.50 HOURS - $3,879,929.40

21.    During the Compensation Period, PwC performed a wide variety of services for the Debtors which are set forth in the detailed time records, as attached within **Exhibit G**. Below is a summary of the most significant professional services performed by PwC during the Compensation Period:

| Project | Hours | Fees |
|---|---|---|
| Sarbanes-Oxley 404 Services | 22,183.7 | $3,186,593.50 |
| Tax Compliance - Foreign Affiliate Reporting | 412.1 | $50,907.50 |
| Project Giant | 183.0 | $52,811.50 |
| Project Rock | 185.7 | $61,379.00 |
| Project Zip | 229.1 | $78,471.50 |
| Other Tax Consulting Services | 24.0 | $12,274.40 |
| Delphi Divestiture Assistance | 674.0 | $176,964.00 |
| Delphi Customs Review Assistance | 57.9 | $29,133.00 |
| Delphi SALT Loan Staff | 1,290.2 | $174,774.00 |
| Tax Provision Services | 58.1 | $21,234.50 |
| Tax Basis Services | 107.7 | $35,386.50 |
| **Grand Total** | **25,405.5** | **$3,879,929.40** |

## SARBANES-OXLEY 404 SERVICES - 22,183.70 HOURS - $3,186,593.50

22.    During the Compensation Period, PwC performed a wide variety of services for the Debtors associated with the Sarbanes-Oxley 404 Services.

| Project | Hours | Fees |
|---|---|---|
| Monthly and Interim Fee Applications | 1,285.4 | $300,718.50 |
| Non-Working Travel Time | 632.0 | $95,181.75 |
| Validation and Remediation Services | 13,330.5 | $1,808,382.75 |
| Process Walkthroughs | 1,207.6 | $142,337.00 |
| IT Validation and Remediation Services | 4,624.6 | $716,957.00 |
| Material Weakness Remediation | 432.0 | $53,159.00 |
| HR/Pension Assistance | 671.6 | $69,857.50 |
| **Grand Total** | 22,183.7 | $3,186,593.50 |

**Monthly and Interim Fee Applications – 1,285.40 hours - $300,718.50**

23.     During the Compensation Period, PwC continued to devote time to educating the client-service team regarding the fee application process and examples of the respective fee applications and best practices for preparing time descriptions for the Bankruptcy Court.  PwC's billing team devoted time to the review and preparation of the required billing submissions to the Bankruptcy Court including five monthly fee statements (April 2007, May 2007, June 2007, July 2007 and August 2007) and one interim fee application (Fourth), as well as the maintenance of an interim billing program (i.e. Time Tracker) for the professionals to submit their time by project and task code, as required by the Bankruptcy Court.  PwC professionals also continued to work with the foreign affiliates to ensure compliance with the bankruptcy requirements and agreement with the hours, fees and expenses incurred on the Sarbanes-Oxley 404 project overseas, as requested by the Debtors.

**Non-Working Travel Time – 632.00 hours - $95,181.75**

24.     PwC professionals incurred non-working travel time between its respective PwC offices and the various Delphi office locations.  Pursuant to the Local Rules, non-working travel time shall be separately described and may be billed at no more than 50% of regular hourly rates.  PwC reports each professional's non-working travel time billed to Delphi at 50% of the travel time; as such, PwC is complying with the 50% reduction requirement.

**Validation and Remediation Services – 13,330.50 hours - $1,808,382.75**

25.     PwC provided project assistance under the direction of Mr. David A. Bayles, related to Client's requirements under Section 404 of the Sarbanes Oxley Act of 2002 (SOX 404) and pertaining to Delphi's overall SOX 404 management certification testing and remediation

plans.  The majority of our efforts fall into this category.  During the Compensation Period, PwC'

activities included:

(a)    Review and update of the 2007 SOX Compliance Manual;

(b)    Review and update of the validation programs;

(c)    Coordination of the first round of validation testing;

(d)    Execution of the first round validation testing; and

(e)    Review and update of the tooling framework.

26.    PwC assisted Delphi by providing all of the services in the manner, at the locations

and within the times as set forth in Delphi's RFQ: RED-001-06 of January 13, 2006 and as

amended by an Addition dated January 23, 2006, Sections 2.2 and 3.1 through 3.15.

27.    During the Compensation Period, PwC prepared for and began to execute the

following activities:

(a)    Performed validation testing at locations selected by Delphi management;

(b)    Performed validation testing of SAP application controls on select instances of

SAP modules;

(c)    In order to facilitate external audit reliance as contemplated in our SOW, at each

testing location specifically identified by management, PwC provided a binder or binders

that contain the following:

(i)    A summary report of the test results;

(ii)    The testing templates and work papers;

(iii)    Copies of all samples and or items tested;

(iv)    Any narratives of control activities;

(v)    Any deficiencies found, copies of remediation plans as approved by

Client, remediation testing templates, work papers, copies of test samples, and

summary results; and

(vi)    Anything else which PwC deems useful in order to assist management to achieve its objectives for compliance with Section 404; and

(d)    Where requested, assisted testing location management with identification of possible remediation activities.  In addition, as requested, PwC provided advice to management's regarding its implementation of the remediation activities.

**Process Walkthroughs – 1,207.60 hours - $142,337.00**

28.    PwC US received the time descriptions and invoices associated with the PwC Brazil walkthrough processes and services during this Compensation Period.  These services were provided by PwC during the Second Interim Fee Period and Third Interim Fee Period but not submitted to PwC US until mid 2007. Due to the submission of these services after the other foreign entities, PwC specifically discussed these hours and services with the Debtors, who have agreed to reimburse PwC for these services.

*Background Descriptions of Process Walkthrough performed during 2006*

28.1.    During the 2005 validation testing, Delphi had a number of exceptions which were attributed to the use of "generic" key controls which didn't represent the actual key controls in place at individual manufacturing locations.  In order to increase testing efficiency for operating management, the SOX team (including PwC) and Delphi IAS in 2006, Delphi management requested that PwC perform limited process walkthroughs through discussions with local management.  The goal of the walkthroughs was to identify the specific key controls that are in place at each trial balance (the "TB") in scope, discuss them with local management to make sure that they agree that those are the appropriate controls and then to tailor the validation plans to test the specific controls that are in place.  Process walkthroughs started during the Second Interim Fee Period and primarily completed during the Third Interim Fee Period.

28.2.    PwC performed limited process walkthroughs for each trial balance and documented the results.  The walkthroughs consisted of meetings with process owners to understand processes and suggest key financial reporting controls to local management for their approval.  For each trial balance, PwC provided completed walkthrough templates for each business cycle in the planned scope and a responsibility matrix.  These documents will be used by local management to update the site-specific controls in the control frameworks in preparation for validation testing.

**IT Validation and Remediation Services – 4,624.60 hours - $716,957.00**

29.    PwC provided IT validation and remediation assistance under the direction of Mr. David A. Bayles and Delphi IT management, related to Delphi's SOX compliance requirements. These activities were specifically related to providing management testing and guidance on application and infrastructure controls that support and complement the business process controls.  During the Compensation Period, PwC's activities included continuation of application control testing and beginning execution of round two validation testing.  During the Compensation Period, PwC continued to provide the following services:

(a)    Assistance with Information Technology General Computer Controls as follows:

(i)    Review and input on the ITGC control framework;

(ii)    Review and input on testing scope and procedures; and

(iii)    Management testing of ITGC controls;

(b)    Assistance with segregation of duties as follows:

(i)    Performed a review of Delphi's segregation of duties tool (SODA) and validated results;

(ii)    Ran reports with PwC's segregation of duties tool (ACE) for comparison with SODA;

(iii)    Defined segregation of duties conflict rules to prepare for the annual segregation of duties review; and

(c)    Validate SAP application controls.

**Material Weakness Remediation – 432.00 hours - $53,159.00**

30.    During 2005, Delphi identified nine material weaknesses and two significant deficiencies in the company's system of internal control over financial reporting.  One of management's goals for 2006 was to remediate as many of those material weaknesses and significant deficiencies as possible.  Delphi Management requested PwC to assist management in this endeavor in a number of specific ways.

31.    During this Compensation Period, one of Delphi's material weaknesses related to account reconciliations.  Part of Delphi's remediation plan for this material weakness was to implement an account reconciliation monitoring tool.  Delphi asked PwC to provide an experienced associate on a full-time basis to do a variety of tasks to support the implementation of the new account reconciliation tool.

**HR/Pension Assistance – 671.60 hours - $69,857.50**

32.    As mentioned in paragraph 30 above, Delphi identified 9 material weaknesses in internal controls over financial reporting in 2005.  One of these material weaknesses related to the reconciliation of demographic data transferred between Delphi, Fidelity (as Delphi's recordkeeper) and Watson Wyatt (as Delphi's actuary).  Management requested PwC assistance with a number of workstreams associated with the demographic data material weakness. These workstreams have included the following:

(a)    Assistance with the executive team leading the material weakness remediation efforts including the development of test plans and the assistance with the reconciliations

of the demographic headcount data for the periods 9/30/2005 and 9/30/2006. This also

included the review and consultation of the actuarial valuation census data report

compiled by Watson Wyatt; and

(b)    Assistance with Delphi's reporting under the Employee Retirement Income and

Security Act of 1974 ("ERISA") for pension plan audits including consultation with their

external auditors, Grant Thornton on testing approach, financial statement review and

review of testing performed by management on behalf of the external auditors.

## TAX COMPLIANCE - FOREIGN AFFILIATE REPORTING - 412.10 HOURS - $50,907.50

33.    PwC provides tax compliance assistance in connection with the foreign affiliate

tax reporting requirements included in the 2006 Delphi consolidated U.S. tax return, including,

but not limited to, analysis and computations of U.S. earnings and profits and related creditable

income tax pools, analysis of potential subpart F inclusions, analysis of the U.S. tax implications

of dividend distributions and related section 902 credits, and computation of intercompany

transaction flow information for use in transfer pricing analysis.

## PROJECT GIANT - 183.00 HOURS - $52,811.50

34.    Delphi was presented with an offer from a group of planned investors to execute a

planned transformation which requires among other matters, due diligence procedures be

executed.  Delphi retained PwC to execute these due diligence procedures (referred to as "Project

Giant") to assist in execution of the transformation.   PwC has completed this due diligence

procedures for each operating division and the corporate office as appropriate using separate

teams, all coordinated via a central team located at Delphi Headquarters in Troy, Michigan.

During this Compensation Period, the fees primarily relate to the wrap-up of the project and final monthly billings associated with the project. Total fees for Project Giant, including this Compensation Period, $7,371.506.50.

| Project | Hours | Fees |
|---|---|---|
| Bankruptcy Employment Application and Other Court Filings | 32.2 | $6,601.00 |
| Monthly and Interim Fee Applications | 114.3 | $27,185.50 |
| Tax Due Diligence | 4.0 | $3,100.00 |
| Financial Due Diligence | 32.5 | $15,925.00 |
| **Grand Total** | 183.0 | $52,811.50 |

## PROJECT ROCK  - 185.70 HOURS - $61,379.00 AND PROJECT ZIP - 229.10 HOURS, $78,471.50

35.     During the Compensation Period, PwC performed a review and analysis of the financial and operational condition of two of Delphi's suppliers (the "Troubled Supplier").  This work was performed for Delphi's Financially Troubled Suppliers Group.  This work included the following:

(a)     A high level report including initial observations of the Troubled Supplier was prepared.  Preparation of this report included:

(i)     Providing an operational & management performance appraisal of Troubled Supplier.   PwC identified strengths and weaknesses that were material to the Troubled Supplier's stability (both current and future) and to the Delphi business relationship.

(ii)     Appraised the Troubled Supplier's historical financial performance including an assessment of: projected financial performance for 2007; projected cash flow forecast for 2007; ability to repay Delphi debt (including suggestions for an appropriate repayment plan); margin / costing / pricing analysis of Delphi business at the Troubled Supplier; and inventory levels, including comment on excess/obsolete inventory.

(iii)    Reviewed the Troubled Supplier's Credit Agreement(s), status with lender(s) and provided preliminary observations on the Troubled Supplier's ability to obtain new financing.

(iv)    Reviewed business relationship with the Troubled Supplier's start-up affiliate; including an assessment of the extent to which the start-up affiliate taxed the existing management and financial resources of the Troubled Supplier.

(v)    Provided Delphi with any cost improvement ideas identified in all areas under review.

(b)    Subsequent to the issuance of PwC's high level report to Delphi, PwC provided additional analysis to help Delphi address specific concerns as the Troubled Supplier's situation evolved.  This analysis included: Reviewed and commented on 13-week cash flow forecasts developed by the Troubled Supplier's management (and updated on a weekly basis); and provided ongoing monitoring of the Troubled Supplier's cash disbursements and receipts without assuming responsibility for disbursements and receipts, and provided Delphi with brief, written commentary on weekly reporting prepared by the Troubled Supplier and its advisors.  Provided feedback to the Troubled Supplier and its advisors on the content and format of the information provided for weekly reporting to Delphi.

## OTHER TAX CONSULTING - 24.00 HOURS - $12,274.40

36.    During the Compensation Period, PwC provided miscellaneous general tax consulting services which included consulting with PwC's U.S. and foreign offices for accounting and miscellaneous needs, including several consultations with Dan Berberich (Delphi Canada) regarding drop shipment scenarios, returning capital distributions and state and local income tax issues.

## DELPHI DIVESTITURE ASSISTANCE - 674.00 HOURS - $176,964.00

37.     During the Compensation Period, PwC provided project assistance under the direction of Mr. Lynn Eady, related to the divestiture of two of Delphi's divisions.  PwC was asked to help refine the business and system requirements to divest the business lines; determine the full-time workload requirement on Delphi finance and other functional resources; and identify the internal controls necessary to ensure Delphi's assets and intellectual property are safeguarded during the transition period.

## DELPHI CUSTOMS REVIEW ASSISTANCE - 57.90 HOURS - $29,133.00

38.     During the Compensation Period, PwC provided miscellaneous customs review assistance to Delphi within Mexico and the United States.  PwC reviewed the new business operations custom function assistance, including reviewing emails/documents from Delphi, planning for onsite meeting, onsite meeting at Delphi to discuss customs risk issues, preparation of Recommendations document based on discussions and materials from Delphi, and coordination of Mexican and European pieces of review.

## DELPHI SALT LOAN STAFF - 1,290.20 HOURS - $174,774.00

39.     During the Compensation Period, PwC professionals began to provide state and local tax compliance services for Delphi's 2006 state and local income tax returns.   PwC assigned a tax associate and other professionals, as necessary, to assist the Debtors in preparation of Delphi's 2006 state and local income tax returns.

## TAX PROVISION SERVICES - 58.10 HOURS - $21,234.50

40.     During the Compensation Period, PwC professionals began to provide tax

accounting assistance related to the computation of Delphi's 2007 tax provision to the Debtors,

including providing a tax associate, tax director and/or other tax professionals, if required, to

assist the Debtors.  This assistance is directly provided under the direction and supervision of

Delphi's Director, Income Tax Accounting.  This project began in mid-September 2007 and will

continue into the next Compensation Period.


## INSIDE TAX BASIS SERVICES - 107.70 HOURS - $35,386.50

41.     During the Compensation Period, PwC professionals began the computation of

the Debtor's inside tax basis for certain assets and liabilities at December 31, 2006.  PwC began

to calculate inside tax basis of all assets and pre-petition liabilities of the significant US

subsidiaries of Delphi Corporation as of December 31, 2006, for U.S. federal income tax

purposes.  PwC will identify cumulative temporary differences through SFAS 109 workpapers

(if available for the entity), by analyzing historic tax returns, amended returns, IRS adjustments,

provision to return adjustments and post closing adjustments to the US balance sheet.

Additionally, PwC will identify entities with book goodwill for which there is no tax basis.  PwC

will discuss our preliminary findings with Delphi Tax Staff and Income Tax Accounting Group

personnel. This project began in mid-September 2007 and will continue into the next

Compensation Period.

# EXPENDITURES

42.    The disbursements of PwC for the Compensation Period are as follows:

## SARBANES-OXLEY 404 SERVICES - EXPENDITURES

| Disbursement | Amount |
|---|---|
| Airfare | $117,094.01 |
| Lodging | $146,603.27 |
| Meals while Traveling | $46,501.71 |
| Mileage Allowance | $30,919.29 |
| Parking | $4,180.33 |
| Photocopy | $434.86 |
| Public/Ground Transportation | $28,463.33 |
| Rental Car | $28,562.22 |
| Sundry - Other *(e.g. computer equipment while at client location, telecommunications, copies)* | $27,297.44 |
| Telephone Tolls | $1,207.55 |
| **TOTAL** | **$431,264.01** |

## PROJECT GIANT - EXPENDITURES

| Disbursement | Amount |
|---|---|
| Airfare | $1,108.24 |
| Lodging | $10,163.79 |
| Meals while Traveling | $456.90 |
| Public/Ground Transportation | $134.36 |
| Rental Car | $614.25 |
| **TOTAL** | **$12,477.54** |

## PROJECT ROCK - EXPENDITURES

| Disbursement | Amount |
|---|---|
| Airfare | $1,416.17 |
| Lodging | $975.10 |
| Meals while Traveling | $417.39 |
| Public/Ground Transportation | $259.20 |

| Disbursement | Amount |
|---|---|
| Rental Car | $1,514.48 |
| **TOTAL** | **$4,582.34** |

## PROJECT ZIP - EXPENDITURES

| Disbursement | Amount |
|---|---|
| Airfare | $2,985.59 |
| Lodging | $1,419.22 |
| Meals while Traveling | $279.17 |
| Parking | $146.25 |
| Public/Ground Transportation | $546.15 |
| Rental Car | $412.44 |
| Sundry - Other *(e.g. computer equipment while at client location, telecommunications, copies)* | $20.51 |
| **TOTAL** | **$5,809.33** |

## OTHER TAX CONSULTING SERVICES - EXPENDITURES

| Disbursement | Amount |
|---|---|
| Photocopy | $59.97 |
| Sundry - Other *(e.g. computer equipment while at client location, telecommunications, copies)* | $65.13 |
| **TOTAL** | **$ 125.10** |

## DELPHI DIVESTITURE ASSISTANCE - EXPENDITURES

| Disbursement | Amount |
|---|---|
| Airfare | $405.99 |
| Lodging | $572.91 |
| Meals while Traveling | $157.29 |
| Public/Ground  Transportation | $70.00 |
| **TOTAL** | **$1,206.19** |

**DELPHI SALT LOAN STAFF - EXPENDITURES**

| Disbursement | Amount |
|---|---|
| Mileage Allowance | $1,782.86 |
| **TOTAL** | **$1,782.86** |

43.     Although every effort has been made to include all fees and expenses incurred in the Fifth Interim Fee Application, some fees and expenses might not be included in this Fifth Interim Fee Application due to delays caused by accounting and processing procedures. PwC reserves the right to make further application to this Court for allowance of such fees and expenses not included herein. Subsequent fee applications will be filed in accordance with the Bankruptcy Code, the Bankruptcy Rules, Local Bankruptcy Rules and the Fee Order.

44.     The services detailed above were reasonable and necessary in order for PwC to perform its duties and obligations to the Debtors and this Court, applying PwC's usual and customary billing rates for the types of services performed, except where, as noted, discounts were applied in accordance with the engagement letters.  Billing rates are subject to change and are reviewed and adjusted periodically.

45.     In rendering these services, PwC made every effort to maximize the benefit to the Estate and to work with other professionals employed in the case to avoid duplication of effort. PwC believes that the level of services rendered to achieve the results obtained for the benefit of the Estate was reasonable in light of the number and complexity of the issues involved in this case.  PwC judiciously allocated responsibilities to minimize possible duplication of effort.

46.     Other than as provided in Section 504(b) of the Bankruptcy Code, PwC has not shared, or agreed to share, any compensation received with respect to the Compensation Period as a result of this case with any person, firm or entity.  No promises concerning compensation

have been made to PwC by any firm, person or entity.  The sole and exclusive source of compensation shall be funds of the Estate.

## CONCLUSION

47.    PwC respectfully submits that the interim compensation requested herein is reasonable compensation for the actual and necessary services rendered based upon the time, nature and value of such services. PwC further asserts that the costs of services rendered and expenses incurred are comparable to the cost of similar services and expenses in matters other than under the Bankruptcy Code and consistent with PwC's Retention Application

WHEREFORE, for all of the foregoing reasons, PwC respectfully requests that this Court enter an order: (a) awarding PwC allowance of compensation in the amount of $3,912,929.40 and reimbursement of out-of-pocket expenses in the amount of $457,247.37 for the Compensation Period and directing payment of the foregoing sums to the extent not previously paid; (b) authorizing and directing the Debtors to pay the unpaid balance for said fees and expenses; and (c) granting PwC such other and further relief as this Court deems just and proper.

Dated: December 28, 2007
     Detroit, Michigan

              *Brian D. Decker*

              Brian D. Decker
              Partner

              PricewaterhouseCoopers LLP
              1900 St Antoine Street
              Detroit, Michigan 48226-2263
              Telephone:  (313) 394-6000
              Facsimile:  (313) 394-6555