**Hearing Date and Time: January 10, 2008 at 10:00 a.m.**
**Supplemental Response Date and Time: January 8, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

DEBTORS' SUPPLEMENTAL REPLY TO THE RESPONSES OF
LIGHTSOURCE PARENT CORPORATION AND GUIDE CORPORATION TO
THE DEBTORS' OBJECTIONS TO PROOFS OF CLAIM NOS. 14070 AND 14245

("SUPPLEMENTAL REPLY – LIGHTSOURCE PARENT CORPORATION
AND GUIDE CORPORATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit their Supplemental Reply To The Responses Of Lightsource Parent Corporation And Guide Corporation To The Debtors' Objections To Proofs Of Claim Nos. 14070 And 14245, and respectfully represent as follows:

Preliminary Statement

1.  Effective January 1, 1999, the assets and liabilities of various divisions and subsidiaries of General Motors Corporation ("GM") were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of the Master Separation Agreement dated as of December 22, 1998 Among General Motors Corporation, Delphi Automotive Systems Corporation, Delphi Automotive Systems LLC, Delphi Technologies, Inc. And Delphi Automotive Systems (Holding), Inc. (the "MSA").  Although in the MSA Delphi assumed certain of GM's obligations and responsibilities, the MSA specifically provides that:

> [The MSA] shall be binding upon and inure solely to the benefit of each party hereto . . . and nothing in [the MSA], <u>express or implied</u>, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of [the MSA] . . .

MSA, § 9.05 (emphasis added).  This provision expressly precludes any third party from seeking to enforce any provision of the MSA.

2.  Despite this clear and unambiguous language in the MSA, Guide Corporation ("Guide") and Lightsource Parent Corporation ("Lightsource," and together with Guide, the "Claimants") nevertheless argue that they have standing to assert proofs of claim numbers 14070 and 14245 (the "Proofs of Claim") against Delphi for obligations addressed in the MSA (the "Claims").

2

3.  The Debtors respectfully submit that Lightsource and Guide do not have standing to assert claims against Delphi for obligations addressed in the MSA. Accordingly, the Proofs of Claim should be disallowed and expunged.

Argument

4.  The Claimants have failed to establish that they have standing to bring claims against Delphi. The MSA, upon which the Claims are based, unambiguously disclaims all liability to third parties. When a document is unambiguous, as is the MSA, the court should not rewrite the terms of the agreement. See Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992) ("A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case."); Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co., 616 A.2d 1192, 1195 (Del. 1992) ("Clear and unambiguous language . . . should be given its ordinary and usual meaning.").[1] Furthermore, a contract term is not rendered ambiguous simply because the parties disagree on its proper interpretation. See Rhone-Poulenc, 616 A.2d at 1196 (contract "ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings"); Lee v. BSB Greenwich Mortg. Ltd. Partnership, 267 F.3d 172, 178 (2d Cir. 2001) ("A party cannot create an ambiguity in an otherwise plain agreement merely by 'urging different interpretations in the litigation.'" (citation omitted)); Authentic Hansom Cabs, Ltd. v. Fayolle, 300 B.R. 843, 850 (Bankr. S.D.N.Y. 2003) ("Unambiguous contract language is not

---

[1] Both the MSA and Lightsource Formation Agreement ("LFA") contain choice of law provisions designating Delaware's as the governing law.

made ambiguous simply because the parties urge different interpretations." (citation omitted)). Unambiguous contract language must be enforced as written.

5. Courts and commentators have frequently observed that "no third party beneficiary" clauses should be enforced. See Liberty Mutual Ins. Co. v. Household International, Inc., 136 F. Supp. 2d 5, 8 (D. Mass. 2001) (applying Delaware law, holding party specifically referenced in contract could not be intended third party beneficiary when contract contained "no third party beneficiary" clause); India.com, Inc. v. Dalal, 412 F.3d 315, 321 (2d Cir. 2005) (holding "no third party beneficiary" clause effective despite specific identification of third party in contract); Nationwide Mutual Ins. Co. v. Home Ins. Co., 150 F.3d 545,549 (6th Cir. 1998) ("whether or not there was a direct assumption," "disclaimer barring third parties from enforcing rights under the contract applies"); 4 Corbin on Contracts, § 777 at 25 (1951) ("[I]f two contracting parties expressly provide that some third party who will be benefited by performance shall have no legally enforceable right, the courts should effectuate the express intent by denying the third party any direct remedy." (cited by In re Gulf Oil/Cities Service Tender Offer Litigation, 725 F.Supp. 712, 733 (S.D.N.Y., 1989)).

6. The Claimants' position that express "no third-party beneficiary" clauses are unenforceable if there is an express assumption of a particular obligation which benefits a third party is mistaken.[2] The contract giving rise to the obligation must be read as a whole when determining whether that third party has the right to enforce an obligation. See JPMorgan Chase

---

[2] Neither of the cases cited by the Claimants for the proposition that "no third-party beneficiary" clauses are not enforceable if there is an express assumption of a particular obligation appear to actually involve specific language providing that nothing in the agreement, express or implied, is intended to confer third-party beneficiary rights. The Claimants note that other courts have said that a general "no third-party beneficiary" clause "is designed to cut off potential third-party beneficiary claims of those not specifically identified by the agreement." Supplemental Response, 9. The MSA, however, specifically states that the "no third-party beneficiary clause" does apply despite any other express or implied provisions.

4

& Co. v. Pierce, No. 05-CV-74455, 2007 W.L. 2781711 (E.D. Mich. 2007) ("must examine the entire agreement and determine whether the contractual intent may be discerned from the express words of the contract" (applying Delaware law)).

   7. Here, the MSA unambiguously disclaims all rights of third parties to enforce the MSA, despite any other provisions of the MSA. Section 9.05 of the MSA provides:

> [The MSA] shall be binding upon and inure solely to the benefit of each party hereto . . . and nothing in [the MSA], express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of [the MSA] . . .

MSA, § 9.05 (emphasis added). GM and Delphi could have drafted the "no third party beneficiary" clause to apply only "except as otherwise provided" in the MSA, but they did not. GM and Delphi specifically stated that nothing else in the MSA, "express or implied," was intended to confer any benefit or right on any other entity. GM and Delphi are sophisticated parties represented by counsel and capable of carefully drafting the MSA to give full effect to their intent. See Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co., 1 N.Y. 3d 470, 475 (N.Y. 2004). Where, as here, that intent is clear from the language of the agreement, it must be enforced.

   8. Moreover, the Claimants' reliance on "a well-established canon of contract construction . . . that contracts should be construed, whenever possible, to harmonize and give effect to all of their provisions" is misguided (Supplemental Response at 9, citing Minnesota Invco of RSA #7, Inc. v. Midwest Wireless Holdings LLC, 903 A.2d 786, 794 (Del. Ch. 2006)). It is Lightsource's interpretation of the MSA – not the Debtors' – that would violate this canon of contract interpretation. Lightsource argues that Section 9.05 of the MSA should be "interpreted as limiting third party beneficiary claims based on liabilities or obligations not specifically assigned to and assumed by Delphi in the MSA." (Supplemental Response at 9). This

5

interpretation of Section 9.05 directly contradicts the clause in Section 9.05 that states that nothing "express or implied" in the MSA should be interpreted as giving rights to third parties. The plain language of Sections 2.02(b) and 9.05 of the MSA are in harmony.  The limitation on the rights of third parties in Section 9.05 takes nothing away from the obligation expressly created in Section 2.02, which distributes responsibility between Delphi and GM.

        9.    Giving force to the unambiguous terms of the MSA does not leave the Claimants without a remedy.  Although they do not have standing to bring a claim against Delphi, nothing in the MSA prevents the Claimants from seeking recovery from GM.

        10.    The Claimants have not provided, and cannot provide, any set of facts that would support a right to payment from the Debtors.  The burden of proof to establish a claim against the Debtors rests on the Claimants and, if their Proofs of Claim do not include sufficient factual support, such Proofs of Claim are not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f) . In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d 167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make prima facie case).

11.    For purposes of sufficiency, this Court determined that the standard of whether the claimant has met its initial burden of proof to establish a claim should be similar to the standard employed by courts in deciding a motion to dismiss under Federal Rules of Bankruptcy Procedure 7012 and 9014.  (January 12, 2007 Transcript at 52).  Pursuant to that standard, a motion to dismiss should be granted "if it plainly appears that the non-movant 'can prove no set of facts in support of his claim which would entitle him to relief.'"  In re Lopes, 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006) (quoting  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Essentially, the claimant must provide facts that sufficiently support a legal liability against the Debtors.  (January 12, 2007 Transcript at 52, 53 ).  In this case, the Claimants have not proved, and cannot prove, any set of facts that support a right to payment from the Debtors because they are precluded by the terms of the MSA from asserting such right to payment.  Accordingly, the Third and Twentieth Omnibus Claims Objections should be sustained as to the Proofs of Claim, and the Claims should be disallowed and expunged.

### Memorandum of Law

12.    Because the legal points and authorities upon which this Reply relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request the Court enter an order (i) sustaining the Third and Twentieth Omnibus Claims Objections as to the Claims, (ii) disallowing and expunging the Proofs of Claim, and (iii) granting such further and other relief the Court deems just and proper.

Dated: New York, New York
       January 2, 2008

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ John Wm. Butler, Jr.*
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: */s/ Kayalyn A. Marafioti*
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession