**Hearing Date: February 20, 2008**
                           **Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

  - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :
   In re               :   Chapter 11
                     :
DELPHI CORPORATION, et al.,    :   Case No. 05-44481 (RDD)
                     :
         Debtors.     :   (Jointly Administered)
                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT TO PROOFS OF
CLAIM NUMBERS 2420, 2422, 4536, 5761, 5762, 6354, 9272, 16633, AND 16724
<u>(STATE OF MICHIGAN, DEPARTMENT OF TREASURY)</u>**

("STATEMENT OF DISPUTED ISSUES –
STATE OF MICHIGAN, DEPARTMENT OF TREASURY (USE TAXES)")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), Delphi Automotive Systems Services LLC ("DASS LLC"), and Delphi Technologies, Inc. ("DTI"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Statement Of Disputed Issues With Respect To Proofs Of Claim Numbers 2420, 2422, 4536, 5761, 5762, 6354, 9272, 16633, And 16724 (State Of Michigan, Department Of Treasury) (this "Statement of Disputed Issues") and respectfully represent as follows:

Background

1.      On March 27, 2006, the State of Michigan Department of Revenue ("Michigan") filed proof of claim number 2420 ("Claim 2420") against DAS LLC. Claim 2420 asserts an unsecured non-priority claim in the amount of $10,790,199.00 arising from certain use taxes and interest allegedly owed by DAS LLC to Michigan for tax years 1999, 2000, and 2001.

2.      On March 27, 2006, Michigan filed proof of claim number 2422 ("Claim 2422") against DAS LLC. Claim 2422 asserts an unsecured priority claim in the amount of $6,386,401.82 arising from certain taxes and interest allegedly owed by DAS LLC to Michigan for tax years, or portions thereof, 2002, 2003, 2004, and 2005. Of the total amount asserted in Claim 2422, $6,386,243.50 (comprising both taxes and interest) is on account of use taxes, and the remainder ($158.32) relates to a Michigan Diesel Floor Tax.

3.      On May 2, 2006, Michigan filed proof of claim number 4536 ("Claim 4536") against DASS LLC. Claim 4536 asserts an unsecured non-priority claim in the amount of $20,048.53 arising from certain use taxes and interest allegedly owed by DASS LLC to Michigan for certain periods in 2000 and 2001.

4. On May 12, 2006, Michigan filed proof of claim number 5761 ("Claim 5761") against DTI. Claim 5761 asserts an unsecured non-priority claim in the amount of $1,250,306.00 arising from certain use taxes and interest allegedly owed by DTI to Michigan for tax years 1999, 2000, and 2001.

5. On May 12, 2006, Michigan filed proof of claim number 5762 ("Claim 5762") against DTI. Claim 5762 asserts an unsecured priority claim in the amount of $1,276,165.80 arising from certain use taxes and interest allegedly owed by DTI to Michigan for tax years, or portions thereof, 2002, 2003, 2004, and 2005.

6. On May 19, 2006, Michigan filed proof of claim number 6354 ("Claim 6354") against Delphi. Claim 6354 asserts an unsecured non-priority claim in the amount of $666,927.27 arising from certain taxes and interest allegedly owed by Delphi to Michigan for tax years 1999, 2000, and 2001. Of the total amount asserted in Claim 6354, $368,923.52 (comprising both taxes and interest) is on account of use tax, and the remainder relates to the Michigan Single Business Tax ("SBT").[1]

7. On July 19, 2006, Michigan filed proof of claim number 9272 ("Claim 9272") against Delphi. Claim 9272 asserts an unsecured priority claim in the amount of $5,731,238.42 arising from certain taxes and interest allegedly owed by Delphi to Michigan for tax years, or portions thereof, 1999, 2000, 2002, 2003, 2004, and 2005. Of the total amount asserted in Claim 9272, $202,883.36 (comprising both taxes and interest) is on account of use taxes, and the remainder relates to SBT tax.

---

[1] See Mich. Comp. Laws §§ 208.1-145. The claims asserted on account of SBT taxes in Claim 6354, Claim 9272, and Claim 16633 are not subject to the evidentiary hearing for which this Statement of Disputed Issues is being filed. Rather, the claims asserted on account of SBT taxes were previously noticed on November 2, 2007 for an evidentiary hearing scheduled for January 10, 2008 (the "SBT Claim Hearing").

3

8. On July 30, 2007, Michigan filed proof of claim number 16633 ("Claim 16633") against Delphi amending Claim 9272. Claim 16633 asserts an unsecured priority claim in the amount of $12,954,363.21 arising from certain taxes and interest allegedly owed by Delphi to Michigan for tax years, or portions thereof, 1999, 2000, 2002, 2003, 2004, and 2005. Of the total amount asserted in Claim 16633, $202,883.36 (comprising both taxes and interest) is on account of use taxes, and the remainder relates to SBT tax.

9. On October 17, 2007, Michigan filed proof of claim number 16724 ("Claim 16724," together with Claim 2420, Claim 2422, Claim 4536, Claim 5761, Claim 5762, Claim 6354, Claim 9272, and Claim 16633, the "Claims") against Delphi amending Claim 16633. Claim 16724 asserts an unsecured priority claim in the amount of $10,459,293.50 arising from certain taxes and interest allegedly owed by Delphi to Michigan for tax years, or portions thereof, 1999, 2000, 2002, 2003, 2004, and 2005. Of the total amount asserted in Claim 16724, $202,883.36 (comprising both taxes and interest) is on account of use taxes, and the remainder relates to SBT tax.[2]

10. On August 24, 2007, the Debtors objected to Claims 2420, 2422, 4536, 5761, 5762, 6354, and 9272, among others, pursuant to the Debtors' Twentieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Duplicate And Amended Claims, (b) Insufficiently Documented Claims, (c) Claims Not Reflected On

---

[2] Michigan has explained that proof of claim number 16724 supersedes Claim 16633, which superseded Claim 9272. Therefore, the Debtors have previously requested that any claim asserted on account of SBT taxes in proof of claim number 16724 be included in the notice and supplemental pleadings filed in connection with the SBT Hearing scheduled for January 10, 2008. As Michigan stated with respect to both Claim 9272 and Claim 16633, "[t]his claim is no longer a valid claim and has been superseded and amended by Claim #16724, in the amount of $10,459,293.50." State Of Michigan, Department Of Treasury' Supplemental Response To Debtors' Statement Of Disputed Issues With Respect To Proofs Of Claim Numbers 6354, 6383, 9272 And 16633 (State Of Michigan, Department Of Treasury) (Docket No. 11296) (the "SBT Supp. Response"), at 5.

Debtors' Books And Records, (d) Untimely Claim, And (e) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Consensually Modified And Reduced Tort Claims, And Lift Stay Procedures Claims Subject To Modification (Docket No. 9151).

11.    On September 11, 2007, Michigan filed its Response Of The State Of Michigan, Department Of Treasury To Debtor's 20th Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (C) Claims Not Reflected On The Debtor's Books And Records, And (E) Tax Claims Subject To Modification (Docket No. 9337) (the "20th Objection Response"). In accordance with the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"), Claims 2420, 2422, 4536, 5761, 5762, 6354, and 9272, among others, were adjourned until a date to be decided by the Debtors.

12.    On September 21, 2007, the Debtors objected to Claim 16633, among others, pursuant to the Debtors' Twenty-First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Equity Claim, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claim Subject To Modification, And Modified Claims Asserting Reclamation (Docket No. 9535).

13.    On October 4, 2007, Michigan filed its Response Of The State Of Michigan, Department Of Treasury to Debtor's Twenty-First Omnibus Objection Pursuant To 11 U.S.C. § 502(B) And Fed. R. Bankr. P. 3007 To Certain (E) Untimely Claims (Docket No.

5

10445). In accordance with the Claims Objection Procedures Order, Claim 16633 was adjourned until a date to be decided by the Debtors.

14.     On October 26, 2007 the Debtors objected to Claim 16724, among others, pursuant to the Debtors' Twenty-Second Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That Are Subject To Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To Prior Orders (Docket No. 10738).

15.     On November 15, 2007, Michigan filed its Response Of The State Of Michigan, Department Of Treasury To Debtors' Twenty-Second Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (E) Untimely Claims (Docket No. 10945).

16.     On December 17, 2007, the Debtors filed the Notice Of Claims Objection Hearing With Respect To Debtors' Objection To Proofs Of Claim Nos. 2420, 2422, 4536, 5761, 5762, 6354, 9272, 16633, And 16724 (State Of Michigan Department Of Treasury) (Docket No. 11486) (the "Notice of Evidentiary Hearing").

17.     Although Claim 2422, Claim 6354, Claim 9272, Claim 16633, and Claim 16724 assert amounts on account of use taxes and other taxes (including SBT taxes and Diesel Floor Taxes), the Debtors intend with respect to the Notice of Evidentiary Hearing to seek a determination for all taxes other than SBT taxes. The proofs of claim asserting SBT taxes are subject to the SBT Hearing and not subject to this proceeding.

Disputed Issues

18.   As of the filing of this Statement of Disputed Issues, Michigan is currently auditing the use taxes for DAS LLC for the period of January 1, 1999 through October 7, 2005. The Debtors anticipate that this audit will be concluded before the commencement of the evidentiary hearing with respect to the Claims. In addition, the Debtors understand that Michigan anticipates commencing an audit against DTI for the period of January 1, 1999 through October 7, 2005. Such audit against DTI, however, has not yet commenced, but the Debtors anticipate that the DTI use tax audit will also be concluded before the commencement of the evidentiary hearing with respect to the Claims.

19.   When Michigan commenced the use tax audit against DAS LLC, Michigan requested information regarding various categories of purchases that may be subject to use taxes. As of the filing of this Statement of Disputed Issues, the Debtors and Michigan have reached an agreement on all but two of the categories of purchases that were being audited.[3] The two categories of purchases that remain unresolved are: (a) purchases and capital expenses related to information technology and (b) purchases of utility services. The Debtors are currently working with the auditors to resolve these remaining matters.

20.   By way of background, the State of Michigan imposes a use tax "for the privilege of using, storing, or consuming tangible personal property in [the] state." Mich. Comp.

---

[3]   This Statement of Disputed Issues describes those issues that remain unresolved in the ongoing audit. The Debtors expressly reserve all rights to amend this Statement of Disputed Issues or to more fully explain those matters in subsequent filings in connection with this proceeding to the extent that (a) the Debtors and Michigan are unable to resolve the outstanding matters, (b) any matter that the parties believe was resolved becomes the subject of dispute, or (c) a new matter that arises.

Laws § 205.93 (1).[4] If sales taxes are paid at the point of sale, then such purchases are exempt from use taxes. See Mich. Comp. Law § 205.94(1)(a).[5] Because DAS LLC is a direct permit taxpayer with respect to sales and use taxes, DAS LLC does not pay sales tax at the time of purchase of tangible personal property in the state of Michigan. Instead, DAS LLC pays use taxes "based on the privilege of using, storing, or consuming personal property" in the state of Michigan. Mich. Comp. Laws § 205.93(1).

21.    The Michigan use tax laws contain many exemptions, one of which is an exemption for goods purchased by "[a]n industrial processor for use or consumption in industrial processing." Mich. Comp. Laws § 205.94o(1)(a). Industrial processing includes, among other things, "[p]roduction or assembly," "[r]esearch or experimental activities," and "[e]ngineering related to industrial processing." See Mich. Comp. Laws § 205.54t(3).[6] Therefore, although the

---

[4] "There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of the property . . . ."

[5] "Property sold in this state on which transaction a tax is paid under the general sales tax act, 1933 PA 167, MCL 205.51 to 205.78, if the tax was due and paid on the retail sale to a consumer."

[6] Industrial processing includes the following activities:
  (a) Production or assembly.
  (b) Research or experimental activities.
  (c) Engineering related to industrial processing.
  (d) Inspection, quality control, or testing to determine whether particular units of materials or products or processes to conform to specific parameters at any time before materials or products first come to rest in finished goods inventory storage.
  (e) Planning, scheduling, supervision, or control of production or other exempt activities.
  (f) Design, construction, or maintenance of production or other exempt machinery, equipment, and tooling.
  (g) Remanufacturing.
  (h) Processing of production scrap and waste up to the point it is stored for removal from the plant origin.
  (i) Recycling of used materials for ultimate sale at retail or reuse.
  (j) Production of material handling.
  (k) Storage of in-process materials.

Mich. Comp. Law § 205.54t(3).

8

Claims assert that substantial amounts are owed on account of use taxes, a substantial portion of the amounts asserted are exempt from use taxes because they qualify for the industrial processing exemption.

22.     The Debtors dispute Claim 2420, Claim 2422, Claim 4536, Claim 5761, Claim 5762, Claim 6354, Claim 9272, Claim 16633, and Claim 16724 on at least six grounds: (1) Claim 9272 and Claim 16633 are superseded by Claim 16724, (2) the Debtors are not liable for use taxes for information-technology purchases allocated outside of Michigan, (3) the Debtors are not required to pay Michigan use taxes for utility consumption that falls within the industrial-processing exception, (4) Delphi is not liable for use taxes incurred, if at all, by a predecessor in interest to DAS LLC, (5) DASS LLC, an employee leasing company, has no use tax liability, and (6) DTI has limited use tax liability, if any.  A more detailed description of these issues follows.

A.     Proofs Of Claim Superseded By Claim 16724

23.     As reflected in Michigan's SBT Supp. Response, the most recent filing in connection with its proofs of claims, Michigan admits that Claim 9272 and Claim 16633 are "no longer a valid claim[s] and [have] been superseded and amended by Claim #16724, in the amount of $10,459,293.50." SBT Supp. Response at 5.  Therefore, Claim 9272 and Claim 16633 should be disallowed and expunged, as they have been superseded by Claim 16724.

B.     Delphi Is Not Liable For Use Taxes For Information-Technology Purchases Allocated Outside Of Michigan

24.     Computer software generally constitutes tangible personal property that is subject to Michigan use taxes.  To determine the amount of use taxes due, certain allocation rules must be applied.  The allocation rules changed during the audit period because Michigan adopted

9

the Streamlined Sales and Use Tax Agreement on September 1, 2004. The Debtors purchase software and that software is housed on a particular server in a specific location. The software is then accessed and used by the Debtors at various locations of the Debtors. The main servers are located outside the State of Michigan, but the software is accessed by employees in Michigan and other states as well.

25. Because DAS LLC is a direct pay permit holder, DAS LLC does not pay sales tax upon the purchase of the software. Rather, DAS LLC pays use taxes based on the usage and consumption of the property. Before September 1, 2004, Michigan taxed the property based on the location of the software. Thus, if the software was located on a server in Michigan, the usage of the software was taxed regardless of whether the usage took place inside or outside the State of Michigan. Similarly, if the software was located on a server outside of Michigan, the software was not taxed in Michigan, even if the software was used in Michigan. After September 1, 2004, however, under the allocation rules of the Streamlined Sales and Use Tax Agreement, the usage of software is taxed based on the point of use, rather than the place where the software resides. Therefore, even if software resides on a server outside of Michigan, the taxpayer would still be obligated to pay Michigan use taxes based on the amount of use of the software from within Michigan. Similarly, if software were housed on a server in Michigan, but the software were used from outside of Michigan, the taxpayer would only be liable for usage from within the State of Michigan.

26. The Claims must be reduced to the extent that they assert amounts for software that are not subject to use taxes in Michigan. The Debtors reserve their rights to further object to the Claims with respect to this allocation of use should the Debtors be unable to reach an agreement with the auditors to resolve this issue.

C.  The Industrial-Processing Exception Limits The Debtors' Liability For Use Taxes On Account Of Utility Services

27.  Utility services are tangible personal property that are subject to Michigan use tax based on consumption or use, unless otherwise excepted from the Michigan use tax statute. Because a large portion of the utilities consumed by the Debtors are used in the manufacturing process, this consumption of utility services are exempt from Michigan use taxes under the industrial processing exception as more fully described above. Utility services used in connection with general administrative functions, however, are subject to Michigan use taxes. Accordingly, the Claims must be reduced to the extent that they assert a claim on account of utilities consumption without accounting for the industrial-processing exception. The Debtors reserve their rights to further object to Claims with respect to utility services.

D.  Delphi Corporation Has No Use Tax Liability

28.  Claim 6354, Claim 9272, Claim 16633, and Claim 16724 each assert claims against Delphi for use taxes owed. Delphi is a holding company for other operating entities such as DAS LLC, among others. Thus, most, if not all, of the transactions that might be subject to Michigan use taxes would have been conducted by DAS LLC, rather than Delphi. Moreover, all of the amounts asserted on the proofs of claim against Delphi for use taxes relate to FME0106296. This identification number relates to a predecessor-in-interest to DAS LLC that is no longer in existence. Therefore, any potential liability relating to the entity with the identification number of FME0106296 would lie with DAS LLC, not Delphi. Accordingly, Claim 6354 should, therefore, be reduced by $91,798.96, Claim 9272 should be reduced by

$202,883.36, Claim 16633 should be reduced by $202,883.36, and Claim 16724 should be reduced by $202,883.36.[7]

E.    Delphi Automotive Systems Services LLC Has No Liability For Use Taxes

29.    Claim 4536 asserts a claim on account of Michigan use tax allegedly owed by DASS LLC. DASS LLC is an employee leasing entity, and by its very nature, does not engage in transactions that would give rise to use tax liability. Because DASS LLC has no use tax liability, Claim 4536 should, therefore, be disallowed and expunged in its entirety.

F.    Most Purchases By DTI Should Be Exempt From Michigan Use Taxes

30.    As noted above, Michigan has not formally commenced a use tax audit with respect to DTI. The Debtors have never filed a sales and use tax return for DTI and no documents have been formally requested by the auditors to undertake the audit. Therefore, the basis for the DTI claims is unknown.

31.    DTI holds various intellectual property owned by the Debtors and also conducts operations at one facility for research and development purposes. Therefore, most of the consumption of tangible property by the Debtors in connection with DTI will be exempt from use taxes under the industrial processing exception. Accordingly, the Debtors request that the claims asserted against DTI be reduced or disallowed completely, and the Debtors reserve their rights to further object to Claim 5761 and Claim 5762 with respect to any issue that remains unresolved in connection with these claims.

---

[7]    As discussed above, because Claim 9272 and Claim 16633 have been superseded by Claim 16724, Claim 9272 and Claim 16633 should be disallowed and expunged in their entirety. If this Court determines that Claim 9272 and Claim 16633 should not be disallowed and expunged, Claim 9272 and Claim 16633 should each be reduced by $202,883.36 for the reasons described herein.

Reservation Of Rights

32.    This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) the Claims Objection Procedures Order.  Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of Claim 2420, Claim 2422, Claim 4536, Claim 5761, Claim 5762, Claim 6354, Claim 9272, Claim 16633, or Claim 16724; (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of Claim 2420, Claim 2422, Claim 4536, Claim 5761, Claim 5762, Claim 6354, Claim 9272, Claim 16633, or Claim 16724; (c) the Debtors' right to seek a determination of tax liability under section 505 of the Bankruptcy Code with respect to Claim 2420, Claim 2422, Claim 4536, Claim 5761, Claim 5762, Claim 6354, Claim 9272, Claim 16633, or Claim 16724; and (d) the Debtors' right to identify later additional claims asserted by Michigan and schedule a hearing under the Claims Objection Procedures Order.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging with prejudice Claim 4536, Claim 9272, and Claim 16633, (b) reducing Claim 16724 by an amount of $202,883.36, (c) reducing the remainder of the Claims in accordance with the amounts of use tax actually owed by the Debtors, and (d) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         January 2, 2008

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 9331)
      Albert L. Hogan, III (AH 8807)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

       - and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

14