Michael A. Isaacs, CSBN 99782
Diana L. Donabedian, CSBN 191384
LUCE, FORWARD,
HAMILTON & SCRIPPS, LLP
121 Spear Street, Suite 200
San Francisco, CA 94105
Telephone: 415.356.4600
Fax: 415.356.3895
E-mail: misaacs@luce.com
E-mail: ddonabedian@luce.com
Attorneys for The Brix Group Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, et. al., | Chapter 11 |
| Debtors | (Jointly Administered) |
| | **SUPPLEMENTAL RESPONSE TO DEBTORS' FIFTEENTH OMNIBUS CLAIMS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN (A) INSUFFICIENTLY DOCUMENTED CLAIMS, (B) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS AND RECORDS, (C) UNTIMELY CLAIMS AND UNTIMELY TAX CLAIM, AND (D) CLAIMS SUBJECT TO MODIFICATION, TAX CLAIMS SUBJECT TO MODIFICATION, AND MODIFIED CLAIMS ASSERTING RECLAMATION**  |
| | **Claimant: The Brix Group, Inc.**<br>**Claim Number 8229** |
| | Hearing Date: February 8, 2008<br>Hearing Time: 10:00 a.m. (Prevailing Eastern Time) |

The Brix Group, Inc. ("Claimant") hereby submits this Supplemental Response to Fifteenth Omnibus Claims Objection filed by Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession ("Delphi") in support of Claim Number 8229 in the amount of $2,896,591.72.

On June 19, 2006, The Brix Group, Inc. filed Claim Number 8229 in the amount of $2,896,591.72. On May 22, 2007, Delphi objected to Claim Number 8229 requesting that Claim Number 8229 be modified. On June 18, 2007, Claimant filed its Response to Debtors' Fifteenth Omnibus Claims Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books and Records, (C) Untimely Claims and Untimely Tax Claim, and (D) Claims Subject to Modification, Tax Claims Subject to Modification, and Modified Claims Asserting Reclamation ("Response"). This Supplemental Response incorporates the Response in its entirety.

## I.    Statement of Facts

In March 2002 at the Mid American Truck show in Louisville, Kentucky, John Trenberth, President of Pana-Pacific, a division of The Brix Group, Inc. met Steve Hartwood, division president of Delphi about potential business ventures between Claimant and Delphi. As a result of these discussions, Delphi invited Harry Brix, Chairman of Claimant, and John Trenberth to Delphi's offices in Kokomo, Indiana. At this initial meeting in the summer of 2002, Steve Hartwood and Beth Swarting of Delphi and Satchel Gidwani of MobileAria, a wholly owned subsidiary of Delphi, discussed potential business opportunities with Harry Brix and John Trenberth and presented to Claimant the project known as the "Truck PC" project. The Truck PC project was a project Delphi and MobileAria were working on to provide a system to be installed in trucks which would perform a number of functions including monitoring speed, location, fuel consumption, engine performance etc. and relay that information to the truck's operations/dispatch office via wireless communication. Delphi informed Claimant that the underlying product was complete and ready for market and that 4,400 units of the product had already been sold. Delphi further informed Claimant that the software integrated with existing fleet management systems

1  that were already being used by fleets in the industry to manage their trucks. The result of these
2  discussions lead to Claimant becoming the supplier of the product to the trucking channel. As the
3  supplier of the product, Claimant provided the components required for installation in trucks
4  including wire harnesses and modems. Thereafter, Claimant entered into a Distribution
5  Agreement in which Claimant was the exclusive distributor of certain Delphi Electronics
6  Corporation's products in specified markets. Claimant also entered into a Representative
7  Agreement for the market and support of MobileAria's services.
8        Claimant began performing under the Distribution Agreement in 2003. Immediately upon
9  signing the Distribution Agreement, Claimant, relying upon the representations made by Delphi,
10 began performing engineering services to support the installation of the TruckPC in various
11 models of trucks and began hiring a sales staff early in 2003 dedicated to selling the Truck PC unit
12 to OEMs and fleets. Claimant incurred a total cost of at least $750,000 in direct costs for this sales
13 team and sales program development over the three year period under the Distribution Agreement.
14 In addition, Claimant incurred additional engineering costs to develop all of the installation
15 applications and hardware for the TruckPC. Claimant has not included theses costs as a
16 component of its claim in these bankruptcy proceedings.
17       The Distribution Agreement also contained a Sales Incentive bonus to Claimant for "new
18 business" plus an incentive on the sale of Truck PC units. Under the Distribution Agreement, the
19 sales incentive would be earned by Claimant if "new business" sales exceed $30,000,000 and at
20 least 6,500 Truck PC units were sold in 2003. However, Claimant was not able to meet the sales
21 incentive associated with selling 6,500 TruckPCs since the Truck PC was unavailable for sale.
22       In September 2004, another meeting occurred between Claimant, Delphi and MobileAria.
23 Beth Swarting, Vice President of Sales and Marketing for Delphi, Dan Salmons, Director of North
24 American Sales for Delphi, Sachael Gidwani, President of MobileAria, Adam Wegee and Dan
25 Jester of Mobile Aria and Harry Brix, John Trenberth, Derik Toy and Debbie Cameron were
26 present. During this meeting, Delphi represented to Claimant that they received a commitment
27 from Airgas, Inc. to test the TruckPC in 3,000 trucks and that Claimant was required to purchase
28

all of the peripherals to support the installation of the 3,000 trucks. During this meeting, Delphi directed Claimant to contract a Delphi approved company to perform installations. Further, Delphi made a threat to perform which impacted millions of dollars of viable business for Claimant.

## II. Disputed Issues

**A. Delphi's false representations to The Brix Group concerning the Truck PC Program caused damages to Claimant.**

As discussed above, at the initial meeting between Claimant and Delphi concerning the Truck PC project, Delphi informed Claimant that the underlying product for the Truck PC project was complete and ready for market and that in fact 4,400 units of the product had already been sold. As set forth in the Declaration of Harry Brix in Support of Supplemental Response ("Brix Declaration"), Mr. Brix specifically asked Delphi if the software developed by MobileAria for the Truck PC integrated with existing fleet management systems that were already being used by fleets to manage their trucks. In response, Delphi and MobileAria officials informed Mr. Brix that the software integrated with existing systems currently used by fleets to manage their trucks. See Brix Declaration, ¶ 6. Upon later discovery, Claimant learned that this was not in fact true. See Brix Declaration, ¶ 12. As a result, Claimant had to send back to Delphi the TruckPC units in order to have Delphi install updated software into the units. See Brix Declaration, ¶ 12. Moreover, Claimant was not able to meet the sales incentive bonus under the Distribution Agreement since the TruckPC was unavailable to sale. See Brix Declaration, ¶ 13.

As a result of these barriers, delays and misrepresentations by Delphi in releasing products for sale, Claimant incurred a gross loss in sales in the amount of $2,500,000 and gross profit loss in the amount of $350,000. See Brix Declaration, ¶ 14.

**B. Delphi fraudulently induced The Brix Group to purchase peripheral inventory to be used to complete the equipping of trucks for the Truck PC Program and to contract for the installation with certain vendors.**

In September 2004, during a meeting Claimant attended at MobileAria, Delphi directed Claimant to contract a Delphi approved company to perform installations in 3,000 trucks. See

Brix Declaration, ¶ 15. At all times, Claimant understood that Delphi would be responsible for the purchase of all of the peripherals to support any installations performed. See Brix Declaration, ¶ 15. As a result of the instructions Claimant received from Delphi, Claimant contacted Velociti (a Delphi approved vendor) to perform the installations. Delphi told Claimant that the sales would be paid for by GreatAmerica Leasing Corporaiton under a lease between Airgas, Inc. and GreatAmerica Leasing Corporation. See Brix Declaration, ¶ 15. Delphi further told Claimant that Delphi guaranteed the lease between Airgas, Inc. and GreatAmerica Leasing Corporation. See Brix Declaration, ¶ 15.

Finally, during the meeting in September 2004, Beth Swarting told Claimant that The Brix Group was required to purchase all of the peripherals needed to complete the installations for Airgas and that the 3,000 installations must be completed by December 31, 2004. See Brix Declaration, ¶ 17. Ms. Swarting told Claimant that if Claimant failed to perform, Delphi would terminate the Distribution Agreement. See Brix Declaration, ¶ 17. Because of the threat made by Ms. Swaring and the potential impact of a loss of millions of dollars in viable business, Claimant continued to work on the installations resulting in a lost to Claimant in excess of $3M. See Brix Declaration, ¶ 17.

In May, 2005, GreatAmerica Leasing sent a letter to Airgas, Inc. advising Airgas that based upon material changes in the credit profile of Delphi, GreatAmerica Leasing would no longer accept Equipment Schedules under the Master Lease for the TruckPC unless the right to assign the lease to Delphi was removed. See Brix Declaration, ¶ 20. At the time Claimant received a copy of the letter from GreatAmerica Leasing, Claimant was in the process of installing the TruckPC in numerous locations around the country. See Brix Declaration, ¶ 21. The installations were billed by Claimant to GreatAmerica Leasing but were not paid. The total of the billings unpaid by GreatAmerica Leasing is $180,144.34. See Brix Declaration, ¶ 21. In addition, there are unpaid bills of $138,219.23 in installation costs paid to Velociti, the company specified by Delphi to install the TruckPCs in Airgas Trucks. See Brix Declaration, ¶ 21.

The peripheral inventory purchased by Claimant totaled approximately $2,169,824.39. The peripheral equipment inventory has no value in the open market and is only functional as a component of the TruckPC installation process. See Declaration of John Trenberth in Support of Supplemental Response, ¶ 5. Furthermore, the only reason Claimant purchased this equipment was as part of the installation process and based on representations made by Delphi that the product was in good marketable condition and that Delphi would be responsible for the associated charges. See Brix Declaration, ¶ 23.

### III. Additional Witnesses

Claimant hereby submits the Declaration of Harry Brix in Support of Supplemental Response and the Declaration of John Trenberth in Support of Supplemental Response. In addition, the following witnesses are witnesses Claimant intends to call as witnesses at the hearing which are not under the control of Claimant.[1]

| Person | Basis for Calling Such Person As Witness | Reason Claimant Did Not File a Declaration or Affidavit of Such Person |
|---|---|---|
| Beth Swarting of Delphi | Ms. Swarting has information, including but not limited to the following: the Truck PC Program; the underlying product for the TruckPC Program; representations made by Delphi to Claimant; discussions between Delphi and Claimant; the Distribution Agreement, the Representative Agreement; the sales incentives under the Distribution Agreement and/or the Representative Agreement; problems associated with the Truck PC system; threats made by Delphi to Claimant concerning performance; Delphi's overall business relationship with Claimant; information concerning GreatAmerica Leasing; installations in Airgas | Witness is a hostile witness not in the Claimant's control |

---

[1] Claimant has asked whether Delphi will agree to certain revisions to the Claims Procedures Order, including Claimant's request that it be permitted to present 9 witnesses at the evidentiary hearing. As of the date of this Supplemental Response, Claimant has not received a response from Delphi. To the extent Delphi does not agree to amend the Claims Procedures Order to allow for additional witnesses and the requested discovery modifications and evidentiary hearing parameters, Claimant reserves all rights to bring this matter before the Court.

| | | | |
|---|---|---|---|
| | | trucks; and Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi. | |
| | Dan Salmons of Delphi | Mr. Salmons has information including but not limited to the following: the Truck PC Program; the underlying product for the TruckPC Program; representations made by Delphi to Claimant; discussions between Delphi and Claimant; the Distribution Agreement; the Representative Agreement; the sales incentives under the Distribution Agreement and/or the Representative Agreement; problems associated with the Truck PC system; threats made by Delphi to Claimant concerning performance; Delphi's overall business relationship with Claimant; information concerning GreatAmerica Leasing; installations in Airgas trucks; and Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi. | Witness is a hostile witness not in the Claimant's control |
| | Bob Schumaker of Delphi | Mr. Schumaker has information including but not limited to the following: the Truck PC Program; the underlying product for the TruckPC Program; representations made by Delphi to Claimant; discussions between Delphi and Claimant the Distribution Agreement; the Representative Agreement; the sales incentives under the Distribution Agreement and/or the Representative Agreement; problems associated with the Truck PC system; threats made by Delphi to Claimant concerning performance; Delphi's overall business relationship with Claimant; information concerning GreatAmerica Leasing; installations in Airgas trucks; and Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi. | Witness is a hostile witness not in the Claimant's control |
| | Sachael Gidwani, formerly of MobileAria | Mr. Gidwani has information including but not limited to the following: the Truck PC Program; the underlying product for the TruckPC Program; representations made by Delphi to Claimant; discussions between Delphi and Claimant; the Distribution Agreement; the Representative Agreement; the sales incentives under the Distribution Agreement and/or the Representative Agreement; problems associated with the Truck PC system; threats made by | Witness is a hostile witness not in the Claimant's control |

7

| | | |
|---|---|---|
| | Delphi to Claimant concerning performance; Delphi's overall business relationship with Claimant; information concerning GreatAmerica Leasing; installations in Airgas trucks; Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi | |
| CIO of Airgas or the person most knowledgeable about the lease and Airgas/MobileAria agreement | information concerning GreatAmerica Leasing, installations in Airgas trucks, Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi | Witness is a hostile witness not in the Claimant's control |
| CFO of Airgas or the person most knowledgeable about the lease and Airgas/MobileAria agreement | information concerning GreatAmerica Leasing, installations in Airgas trucks, Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi | Witness is a hostile witness not in the Claimant's control |
| CEO of GreatAmerica Leasing, or the person most knowledgeable about the GreatAmerica lease | information concerning GreatAmerica Leasing, installations in Airgas trucks, Delphi's agreement to give Airgas the right to assign the GreatAmerica lease to Delphi | Witness is a hostile witness not in the Claimant's control |

### IV.    Reservation of Rights

This Supplemental Response is submitted by the Claimant pursuant to paragraph 9(e) of the Order Pursuant to 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order"). Consistent with the provisions of the Claims Objection Procedures Order, the Claimant's submission of this Supplemental Response is without prejudice to (a) the Claimant's right to latter identify documents produced through discovery and/or include additional witnesses' deposition transcripts, as set forth above.

///

///

///

WHEREFORE, the Claimant respectfully requests that this Court enter an order (a) allowing Claim No. 8229 in the amount of $2,896,591.72 and (b) granting the Claimant such other and further relief as is just.

DATED: January 2, 2008

Respectfully submitted,
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ Diana L. Donabedian
DIANA L. DONABEDIAN
Attorneys for The Brix Group, Inc.

301025617.1

9