**Hearing Date And Time: January 10, 2008 at 2:00 p.m.**
**Objection Deadline: January 9, 2008 at 5:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :
    In re                         :      Chapter 11
                                  :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                  :
                     Debtors.   :      (Jointly Administered)
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EXPEDITED MOTION TO PERMIT OPPORTUNITY
FOR STATUTORY COMMITTEE MEMBERS
<u>TO PARTICIPATE IN EXIT FINANCING SYNDICATION</u>

("EXIT FINANCING PARTICIPATION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order permitting members of the official committee of unsecured creditors and the official committee of equity security holders to participate in the syndication of the Debtors' exit financing. In support of this Motion, the Debtors respectfully represent as follows:

Background

A.  The Chapter 11 Filings

1.  On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

2.  No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee," and together with the Creditors' Committee, the "Statutory Committees").

3.  On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors

2

filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan") (Docket No. 11386) and the First Amended Disclosure Statement with respect to the Plan (the "Disclosure Statement") (Docket No. 11388).  The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389).

    4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

    5. The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code.

B. <u>Current Business Operations Of The Debtors</u>

    6. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

---

[1] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2] On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a
*(cont'd)*

3

7.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.  Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.  Events Leading To The Chapter 11 Filing

9.  In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in

---

*(cont'd from previous page)*
social plan, the funding of which was approved by this Court on July 19, 2007. The Spanish court approved the social plan on July 31, 2007. The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

    10. The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

    11. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D. The Debtors' Transformation Plan

    12. On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business

---

[3] Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

5

operations. The Debtors stated that they needed to focus on five key areas:[4] first, modifying the Company's labor agreements to create a competitive arena in which to conduct business;[5] second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[6] third, streamlining their product portfolio to capitalize on

---

[4] In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with certain investors and a plan framework support agreement with those investors and GM. On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and commitment agreement and related plan framework support agreement. On July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate of Pardus Capital Management, L.P. Under the Delphi-Appaloosa EPCA, the new plan investors agreed to invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's transformation plan and plan of reorganization. This Court approved the Delphi-Appaloosa EPCA on August 2, 2007. On October 29, 2007, the Debtors filed a motion requesting this Court's approval of certain proposed amendments to the Delphi-Appaloosa EPCA (Docket No. 10760). In addition, on November 14, 2007, December 3, 2007, and December 5, 2007, the Debtors filed certain additional proposed amendments to the Delphi-Appaloosa EPCA. On December 10, 2007, this Court entered an order granting the motion and approving the proposed amendments (Docket No. 11382).

[5] As of August 29, 2007, this Court had entered the following orders approving settlements between Delphi and each of its U.S. labor unions:
- International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (Docket No. 8693);
- International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America (Docket No. 9106);
- International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
- United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW Local 87L (Docket No. 9169).

On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's motion for an order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

[6] On September 6, 2007, Delphi announced that it had entered into agreements with GM consisting of a Global Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA"). Delphi's comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM. The GSA and MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively. See Docket No. 9263. On October 29, November 14, December 3, December 5, and December 10, 2007, the Debtors filed certain proposed amendments to the GSA and MRA. The approval of such amendments will be considered in connection with the confirmation of the Plan.

6

their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus;[7] fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint;[8] and fifth, devising a workable solution to their current pension situation.[9]

---

[7] In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders. During the 2006 and 2007 calendar years, for example, the Debtors have sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, their brake hose and catalyst businesses, and their Saltillo, Mexico brake plant business, as well as their manufacturing equipment and test development equipment at the chassis facility in Saginaw, Michigan. The Debtors also received court approval to sell substantially all of the assets used in their interiors and closures businesses (subject to certain cure disputes) and for bid procedures related to the upcoming sale of substantially all assets used in their steering and halfshaft business.

[8] As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture. The Company also has two additional segments, which will be transitioned as part of the Company's transformation plan: Steering (for which bidding procedures were approved on December 20, 2007) and Automotive Holdings Group. To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order"). The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9] To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Pension Plans"). On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively. On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees Plan for the September 30, 2007 pension plan year. On October 25, 2007, this Court granted the Debtors' motion for authority to perform under the terms of that waiver. On October 4, 2007, the IRS, at Delphi's request, further modified the conditions to the initial waivers so that they are generally consistent with the conditions to the most recent waiver.

E.   The Debtors' Plan Of Reorganization

13. By filing the Plan and related Disclosure Statement, the Debtors reached another key milestone in their chapter 11 cases. The Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases, including GM. Attached as exhibits to the Plan are two agreements, the GSA and the MRA, which provide for a comprehensive settlement with GM. Both agreements are subject to this Court's approval as part of the confirmation process. This Court has scheduled a hearing to consider confirmation of the Plan to commence on January 17, 2008. Currently, the Debtors continue to expect that they will emerge from chapter 11 during the first quarter of 2008.

14. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15. By this Motion, the Debtors respectfully request that this Court enter an order that permits members of the Statutory Committees to participate in the syndication of the exit financing that is necessary for the Debtors to emerge from chapter 11.

Basis For Relief

16.     On November 16, 2007, this Court authorized the Debtors to enter into an engagement letter and related fee letters with certain parties ("Engagement Parties") who agreed "to use commercially reasonable best efforts" to assemble a syndicate of lenders to provide the "Exit Financing Arrangements" required by the Debtors' proposed plan of reorganization (the "Plan").  At this stage of their chapter 11 cases, other than achieving the necessary votes on their proposed Plan and putting forward the necessary confirmation case, including defending against objections that are lodged, the chief remaining step that the Debtors must take before emerging from chapter 11 is that of obtaining exit financing in what is a very turbulent financing marketplace.  Thus, the Debtors believe that they and the Engagement Parties should continue their aggressive pursuit of exit financing from a number of sources, including certain members of the Statutory Committees.

17.     To that end, it is the Debtors' view that at this late juncture in the reorganization cases, and given Delphi's critical need to obtain exit financing, there should be no impediment to the participation of Statutory Committee members in the syndication of exit financing.  This is especially true in light of the fact that the Court-approved disclosure statement, which contains approximately 3,000 pages of financial and other information about the Debtors, is in the hands of all parties-in-interest and is readily available in the public domain.  The amount and nature of current financial and other information available to Statutory Committee members and to those who have not previously been privy to material nonpublic information during the cases is now largely the same as a result of the distribution of this disclosure to the public.  Thus, with the

9

Disclosure Statement now in the public domain, the Debtors do not believe there is any conflict if Statutory Committee members were to participate in the syndication of exit financing for Delphi's chapter 11 cases.  Nor is there any reason why a Statutory Committee member should required to resign from either of the Statutory Committees on account of participation in the exit financing syndication.  The Debtors believe, however, that any Statutory Committee member that desires to participate in the exit financing syndication should be required, in advance of its participation, to make written disclosure of any proposed participation to the Debtors, counsel to each of the Statutory Committees, and the United States Trustee.

Notice Of Motion

18.   Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 19, 2007 (Docket No. 10661), and will also be provided in accordance with any order to show cause that this Court enters in respect of this Motion.  The Statutory Committees do not object to holding an expedited hearing on this Motion.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

19.     Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter (a) an order granting this Motion and (b) granting such other further relief as is just.

Dated:  New York, New York
        December 28, 2007

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:    */s/ John Wm. Butler, Jr.*
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

   - and -

By:    */s/ Kayalyn A. Marafioti*
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, <u>et</u> <u>al.</u>,
    Debtors and Debtors-in-Possession