**Hearing Date: January 31, 2008**
                                              **Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                   :
    In re                                               :     Chapter 11
                                                   :
DELPHI CORPORATION, et al.,          :     Case No. 05-44481 (RDD)
                                                   :
                                                   :     (Jointly Administered)
                  Debtors.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DECLARATION OF DEAN UNRUE IN SUPPORT OF DEBTORS' SUPPLEMENTAL
REPLY WITH RESPECT TO PROOF OF CLAIM NUMBER 16612
<u>(METALFORMING TECHNOLOGIES, INC.)</u>

("UNRUE DECLARATION—METALFORMING TECHNOLOGIES, INC.")

Dean Unrue declares as follows:

1.    Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), (collectively, the "Debtors" or "Delphi") are debtors and debtors-in-possession in these Chapter 11 cases. I submit this declaration in support of the Debtors' Supplemental Reply With Respect To Proof Of Claim Number 16612 (Metalforming Technologies, Inc.) (the "Supplemental Reply"). Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply and the Statement of Disputed Issues With Respect To Proof Of Claim Number 16612 (Metalforming Technologies, Inc.) (Docket No. 11261).

2.    Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and data, my opinion, and my experience with and knowledge of Delphi's relationship with Metalforming Technologies, Inc. ("MTI"). If I were called upon to testify, I could and would testify to the facts set forth herein.

3.    Since 2006, I have served as the senior Delphi Claims Administrator, responsible for overseeing the reconciliation and settlement of all 16,700 proofs of claim filed against the Debtors in these Chapter 11 cases. I am responsible for, among other things, overseeing the investigation into and reconciliation of MTI's proof of claim (the "Claim"). I have drawn the following conclusions relevant to the Claim:

Initial Review Of The Claim

4.    My staff routinely begins the investigation into a claim by reviewing the exhibits supporting the claim that are attached to the proof of claim, the response, and any supplemental response that has been filed.

2

Elimination Of Previously Paid Invoices

        5.     My team began the reconciliation process by comparing each individual invoice referenced in the proof of claim and supporting documentation against DAS LLC's main accounts payable system, which is called the DACOR System (Disbursement Analysis Control and Online Reporting System). The DACOR System is used to pay all DAS LLC's vendors as well as maintain all payable records. Additionally, the DACOR System distributes approvals to users, generates checks, prepares payment vouchers that are sent to vendors, automates journal entries and inputs those entries into the general ledger, and automates account distributions. The DACOR System is updated daily and contains twelve months worth of data. Data is archived after twelve months.

        6.     The main DACOR (Accounts Payable) System feeds a web-based program called E-DACOR, a data repository program. E-DACOR is a flat file that is updated nightly and lists all account payable information that is included on the DACOR System. Information may be viewed online or downloaded to a personal computer for sorting and further analysis. A user may search E-DACOR for both paid and unpaid invoices using the purchase order number, bill of lading (i.e., shipper) number, or invoice number. Since 2003, all vendors who request access may view online their own records related to Delphi's accounts payable system. E-DACOR maintains a rolling 36 months of information available online.

        7.     It is standard business practice that each time DAS LLC receives a shipment from a vendor, the receiving department enters the shipment into the DACOR System.[1]

---

[1] Obviously, services are not receipted in this manner. Rather, suppliers send invoices for services directly to the DAS LLC buyer who requested the services. It is the buyer's responsibility to confirm that the supplier completed the service, sign off on the invoice, and direct the invoice to the accounting department for entry into DACOR and supplier payment. If the supplier did not complete the service adequately, the buyer must wait until the service is completed prior to signing off on the invoice.

3

The receiving department will either enter the shipment under the bill of lading or shipping manifest number (collectively, "shipper numbers") or under the invoice number.[2] Due to the documentation accompanying shipments (which may not include all relevant reference numbers), the large volume of shipments received, and the number of employees charged with shipment intake, the receiving departments are not always able to uniformly input the same information for each shipment.  In other words, on certain occasions the receiving department may use the invoice numbers to catalogue the shipments it receives.  On other occasions the receiving department may use the shipper numbers to catalogue shipments, without inputting the corresponding invoice numbers (even if such invoice numbers are available).  These alternate practices are followed because the DACOR System only allows entry of one number – either the shipper number or the invoice number – to avoid duplication of payment.  Although these discrepancies do not affect the reliability of the DACOR System, such practices hinder the invoice reconciliation process in cases where the invoice at issue does not reflect all identifying numbers, i.e., where an invoice reflects only the invoice number and not the shipper numbers.

        8.      To reconcile the invoices, we first entered each individual invoice number into the DACOR System to determine whether the DACOR System reflected that the invoice had been paid.  A spreadsheet reflecting a summary of these previously paid invoices is attached as Exhibit A hereto.

        9.      We then reviewed all the remaining open invoices attached to MTI's Claim against DAS LLC's archived payable system.  None of the invoices were reflected in the archived system.

---

[2] In many cases, shipments do not include invoices.  In such circumstances, the receiving department's only option is to enter the shipper number.  If DAS LLC later receives an invoice for products it previously received, such invoice would neither be entered into DACOR nor maintained in any filing system.  This is because DAS LLC pays upon receipt of goods – not upon invoice – as is noted on all purchase orders.

4

10. My team's next step was to determine whether any of the remaining open invoices were inputted into the DACOR System under a number other than the invoice number, i.e., under a shipper number. None of the invoices were so inputted.

Invoices For Which MTI Provided Inadequate Information.

11. After completion of the above steps, the remaining open invoices total $238,819.00. Invoices relating to steel surcharges lack necessary documentation for proper reconciliation. Claimant also lists short paid invoices which reflect unresolved pricing issues. Although the Debtors searched the DACOR System and the archived payable system for these invoice numbers, the Debtors was unable to find any record of these invoices. Based on my experience, we concluded that the invoices are likely catalogued under the associated shipper numbers. Thus, we asked MTI to provide the proof of delivery associated with these invoices.[3] On December 10, 2007, MTI's counsel provided Delphi's counsel copies of certain invoices and also what MTI alleges are proofs of delivery for certain of these invoices.[4] To date, however, the Debtors have been unable to verify that such documents evidence that MTI shipped the goods MTI claims.

12. Following the above analysis of the invoices for which MTI provided inadequate information, the Debtors concluded that the Claim must be reduced by $238,819.00.

---

[3] In the ordinary course of business, Delphi routinely requests shipper numbers to reconcile invoices that were potentially paid in installments. It is Delphi's standard practice to refuse to pay such invoices until the supplier provides the shipper numbers so that Delphi may avoid double paying the supplier.

[4] Although Delphi maintains files of all shipments it receives, it is impossible to locate the shipments relevant to the Claim. Delphi files shipping documents by the date of receipt (and they are not cross-referenced by supplier name, purchase order number or invoice number). Additionally, shipping documents are filed at the location where the goods were received. Thus, to locate a particular shipping document, one would need to know both the arrival date and place of the associated shipment. Even if one knew this information, finding the shipping document would entail sifting through hundreds, if not thousands, of documents because each Delphi receiving location may receive up to 1,000 or more shipments per day.

5

DAS LLC's Books And Records.

13. Although we could not verify that the Debtors owe the amounts set forth in any of the invoices attached to MTI's Claim, the Debtors' books and records reflect a prepetition liability owed to MTI.

14. First, the Debtors' books and records reflect that DAS LLC is the Debtor entity that did business with, and is liable to, MTI. Thus, DAS LLC, not Delphi Corporation, is the proper entity against which MTI's Claim should be asserted.

15. Second, Delphi's books and records reflect a prepetition liability in the total amount of $55,620.35. Accordingly, although the Debtors could not match this liability to specific invoices included on MTI's Claim, I believe, based on the Debtors' books and records, this amount was due and owing to MTI as of the Petition Date.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on January 2, 2008 in Troy, Michigan.

                                                     /s/ Dean Unrue
                                                     Dean Unrue