**Hearing Date:  January 31, 2008**
**Hearing Time:  10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  X
                                                              :
    In re                                                     :    Chapter 11
                                                              :
DELPHI CORPORATION, et al.,                                   :    Case No. 05-44481 (RDD)
                                                              :
                                                              :    (Jointly Administered)
                    Debtors.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

DECLARATION OF DEAN UNRUE IN SUPPORT OF
DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF
OF CLAIM NUMBER 10770 (INTESYS TECHNOLOGIES, INC.)

("UNRUE DECLARATION—INTESYS TECHNOLOGIES INC.)")

Dean Unrue declares as follows:

1.      Delphi Corporation and certain of its subsidiaries and affiliates (the "Debtors") are debtors and debtors-in-possession in these Chapter 11 cases.  I submit this declaration in support of the Debtors' Supplemental Reply With Respect To Proof Of Claim Number 10770 (InteSys Technologies, Inc.) ("InteSys") (the "Supplemental Reply").  Capitalized terms not otherwise defined in this declaration have the meanings ascribed to them in the Supplemental Reply and the Statement of Disputed Issues.

2.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents and data, my opinion, and my experience with and knowledge of Delphi's relationship with InteSys.  If I were called upon to testify, I could and would testify to the facts set forth herein.

3.      Since 2006, I have served as the senior Delphi Claims Administrator, responsible for overseeing the reconciliation and settlement of all proofs of claim filed against Delphi in these Chapter 11 cases. I am responsible for, among other things, overseeing the investigation into and reconciliation of InteSys' proof of claim (the "Claim").  I have drawn the following conclusions relevant to the Claim:

Initial Review Of The Claim

4.      My staff routinely begins the investigation into a claim by reviewing the exhibits supporting the claim that are attached to the proof of claim, the response, and any supplemental response that has been filed.

Elimination of Previously Paid Invoices

5.    My team began the reconciliation process by comparing each individual invoice referenced in the proof of claim and supporting documentation against Delphi's main accounts payable system, which is called the DACOR System (Disbursement Analysis Control and Online Reporting System).  The DACOR System is used to pay all of Delphi's vendors as well as maintain all payable records.  Additionally, the DACOR System distributes approvals to users, generates checks, prepares payment vouchers that are sent to vendors, automates journal entries and inputs those entries into the general ledger, and automates account distributions.  The DACOR System is updated daily and contains twelve months worth of data.  Data is archived after twelve months.

6.    The main DACOR (Accounts Payable) System feeds a web-based program called E-DACOR, a data repository program.  E-DACOR is a flat file that is updated nightly and lists all account payable information that is included on the DACOR System. Information may be viewed online or downloaded to a personal computer for sorting and further analysis.  A user may search E-DACOR for both paid and unpaid invoices using the purchase order number, bill of lading (i.e., shipper) number, or invoice number.  Since the year 2003, all vendors who request access may view online their own records related to Delphi's accounts payable system.  E-DACOR maintains a rolling 36 months of information available online.

7.    It is standard business practice that each time Delphi receives a shipment from a vendor, the receiving department enters the shipment into the DACOR System.[1]  The

---

[1]    Obviously services are not receipted in this manner.  Rather, suppliers send invoices for services directly to the Buyer who requested the services.  It is the Buyer's responsibility to confirm that the supplier completed the service, sign off on the invoice, and direct the invoice to the accounting department for entry into DACOR and supplier payment.  If the supplier did not complete the service adequately, the Buyer must wait until the service is completed prior to signing off on the invoice.

receiving department will either enter the shipment under the bill of lading or shipping manifest number (collectively, "shipper numbers") or under the invoice number.[2] Due to the documentation accompanying shipments (which may not include all relevant reference numbers), the large volume of shipments received, and the number of employees charged with shipment intake, the receiving departments are not always able to uniformly input the same information for each shipment. In other words, on certain occasions the receiving department may use the invoice numbers to catalogue the shipments it receives. On other occasions the receiving department may use the shipper numbers to catalogue shipments, without inputting the corresponding invoice numbers (even if such invoice numbers are available). These alternate practices are followed because the DACOR System only allows entry of one number – either the shipper number or the invoices number – to avoid duplication of payment. Although these discrepancies do not affect the reliability of the DACOR System, such practices hinder the invoice reconciliation process in cases where the invoice at issue does not reflect all identifying numbers, i.e., where an invoice reflects only the invoice number and not the shipper numbers.

8.      To reconcile the invoices, my staff first entered each individual invoice number into the DACOR System to determine whether the DACOR System reflected that the invoice had been paid. None of the invoice numbers were found in the DACOR System or in the Delphi archived payable system.

9.      My staff then reviewed all the bill of lading numbers found on the invoices. None of the invoices were reflected in the archived system.

---

[2]      In many cases, shipments do not include invoices. In such circumstances, the receiving department's only option is to enter the shipper number. If DAS LLC later receives an invoice for products it previously received, such invoice would neither be entered into DACOR nor maintained in any filing system. This is because DAS LLC pays upon receipt of goods – not upon invoice – as is noted on all purchase orders.

10.     The next step was to determine whether any of the remaining open invoices were inputted into the DACOR System under a number other than the invoice number, i.e., under a shipper number.  By entering the shipper numbers associated with these invoices into the DACOR System, my staff was able to determine that these invoices were previously paid to InteSys in installments as the goods were received.  The payments were inputted in the DACOR System and catalogued under the shipper numbers, rather than the associated invoice numbers.

Reconciliation of Remaining Invoices.

11.     DAS LLC has no record  of receiving the goods associated with the particular purchase orders that are referenced in the InteSys proof of claim.  As part of DAS LLC's ordinary course business practices, goods are recorded in the accounts payable system when they are received.  In the absence of such an entry, a signed proof of delivery is required to verify that the goods were shipped to DAS LLC.  Intesys has not provided signed proofs of delivery with respect to the goods associated with the claimed items. Rather, InteSys has only provided invoices to support its Claim.  An invoice is only an itemized list of goods shipped to a buyer, stating facts such as quantities, prices, and shipping charges and thus is not sufficient to constitute proof of delivery.  A proof of delivery is the receipt signed by the buyer upon delivery and is of greater probative value as to whether goods were actually received by the Debtors.  The Debtors are unable to reconcile the claim with respect to the invoices found in the Claim.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on January 3, 2008 in Troy, Michigan.

_____

5

Dean Unrue