UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

In re:

**DELPHI CORPORATION, <u>et</u> <u>al.</u>,**

           **Debtors.**

_____/

Chapter 11

Case No. 05-44481

### SUPPLEMENTAL RESPONSE TO DEBTORS' THIRTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) PURSUANT TO 11 U.S.C. § 502(b) AND FED.R.BANKR.P. 3006 TO PROOF OF CLAIM NO. 11129 FILED BY CROWN ENTERPRISES, INC.

Crown Enterprises, Inc. ("Crown"), by its counsel, Steinberg Shapiro & Clark, files this Supplemental Response to Debtors' Thirteenth Omnibus Objection to Proof of Claim No. 11129 Filed by Crown Enterprises, Inc. (the "Objection"), and states as follows:

Introduction

On December 6, 2006, the Court entered the Order Pursuant to 11 U.S.C. § 502(b) and Fed.R.Bankr.P. 2002(m), 3007, 7016, 7026, 9006, 9007 and 9014 Establishing (I) Dates for Hearing Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims (the "Procedures Order"). The Procedures Order affirmatively requires the Debtor to file a Notice of Disputed Issues containing a ". . . a concise statement summarily setting forth the primary reasons why the claim should be disallowed . . . including, but not limited to the material factual and legal bases upon which Debtor will rely in prosecuting the claims objection . . ." *Procedures Order* at p. 8 (emphasis added). The Procedure Order further requires the Debtor to ". . . include documentation supporting the disallowance . . ." of the claim. *Id.*

Beyond a simple denial, Debtor's Statement of Disputed Issues contains little or no material facts or legal basis for objecting to Crown's claim. Nor has Debtor attached any documents supporting its objection to Crown's claim. Debtor's apparent hide and seek strategy, leaves Crown at a distinct procedural and substantive due process disadvantage that could not have been contemplated or endorsed by the Court when the Procedures Order was entered.

Beyond mere denial, Debtor has not presented sufficient evidence to over come the presumption of *prima facie* validity of Crown's Proof of Claim pursuant to Fed.R.Bank.P. 3001(f) or to meet its obligation under the Court's Procedure Order. The full basis and documentary support for Crown's claim was previously set forth in the Claim and in Crown's Response to Debtors' Thirteenth Omnibus Objection to Proof of Claim No. 11129 Filed by Crown (the "Objection"). Crown's current claim asserts a claim for unpaid property taxes and utilities – each of which is required to be paid pursuant to the parties' lease.

Discussion

As set forth in detail in Crown's Response, Crown and Delphi Automotive Systems LLC ("Delphi"), successor in interest to GM, entered into a lease and a series of extensions and amendments for certain real property located at 3801 Holland Road, Buena Vista Township, Michigan (the "Real Property"). Debtor's liability for the utilities was initially set forth in the original lease – Delphi agreed to pay a pro rata share of all charges for water, gas, heat and electricity. *See,* the "*Buena Vista Lease*", attached as Exhibit A. Delphi's liability for 100% of the taxes is set forth in the May 24, 2000 Lease Amendment, wherein Delphi agreed that "[t]enants proportionate share of the taxes, services&utilities, insurance, and maintenance shall be one hundred percent (100%)." *See, May 24, 2000 Lease Amendment* attached as Exhibit B.

I. Utilities

Debtor does not dispute that it owes for unpaid utilities. Rather, without citing to any material fact, or presentation of any document, Debtor summarily assets that the bills submitted with the Crown's Claim are "invalid" and do not relate to areas of the facility used by the Debtor. The Utility Bills attached as Exhibit M to the Response are the bills for the Real Property and were unpaid at the time Debtor vacated the lease. *See, Affidavit of Todd White* attached as Exhibit C.

Debtor's argument that these unpaid Utility Bills are for portions of the Real Property not used by it is directly contrary to the plain language of the May 24, 2000 Lease Amendment, in which Delphi agreed that "[t]enants proportionate share of the taxes, services&utilities, insurance, and maintenance shall be one hundred percent (100%)." Debtor agreed in May of 2000 to be responsible for all utilities at the Real Property. There is no contrary clause in the lease or any amendments excusing payment for ". . . areas of the facility which were not in use by the Debtors."

II. Property Taxes

Debtor does not dispute the amount of the property taxes asserted in Crown's Claim. Rather, relying on a superceded portion of the lease, Delphi claims it has no liability whatsoever on the claim. Pursuant to the original lease, Delphi, successor in interest to GM, agreed to pay a pro rata share of all ". . . increases in real estate taxes . . . over an above those levied and paid for [in] the year 1979. . ." *See Ex. A* at § 24. Debtor correctly asserts that pursuant to a certain lease amendment executed in 1988, the parties amended the base year of 1979 to 1986. Debtor

3

concludes that because the unpaid taxes do not exceed the 1986 taxes it therefore has no liability.[1]  Debtor's argument, however, neglects the parties' later amendments.

On May 24, 2000, the parties negotiated an Amendment to the Lease.  The May 24, 2000 Amendment unequivocally stated that Delphi's ". . . proportionate share of **taxes**, services & utilities, insurance, and maintenance shall be one hundred percent (100%)."  The May 24, 2000 Amendment does not contain any restriction regarding base year.  ". . . [A] court must construe and apply unambiguous contract provisions as written. *Rory v. Cont'l Ins. Co.*, 703 N.W.2d 23 (Mich. 2005).   As such, pursuant to the May 24, 2000 Amendment, Delphi became 100% responsible for the taxes.  Additionally, the parties agreed that the amendment shall control over the any contrary terms in the lease:

> In the event of a conflict between the terms of this Amendment and
> the terms of the Lease, the terms of this amendment shall control.

Ex. B.  Delphi's reliance on the superceded 1988 amendment changing the base year to 1986 is misplaced and not relevant to the determination of its liability under the May 24, 2000 Amendment.

---

[1] Crown does not dispute that the unpaid property taxes do not exceed the property taxes owed in 1986.

WHEREFORE, for the reasons set forth above, Crown Enterprises, Inc., by its counsel, Steinberg Shapiro & Clark, requests the Court deny the Debtors' Thirteenth Omnibus Objection to Proof of Claim No. 11129 Filed by Crown and allow Crown's Proof of Claim as a general unsecured claim in the amount of $84,135.33.

STEINBERG SHAPIRO & CLARK

/s/ Mark H. Shapiro
Mark H. Shapiro Michigan Bar No. (P43134)
Geoffrey T. Pavlic Michigan Bar No. (P53770)
Attorney for Crown Enterprises, Inc.
24901 Northwestern Highway
Suite 611
Southfield, MI 48075
(248) 352-4700

Date: January 4, 2008

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

**In re:**

**DELPHI CORPORATION, et al.,**

        **Debtors.**

_____/

Chapter 11

Case No. 05-44481

Exhibit List

| Exhibit | Description |
|---|---|
| A | Buena Vista Lease |
| B | May 24, 2000 Lease Amendment |
| C | Affidavit of Todd White |

General Form
GM 23S—Revised 6-72

**This Lease,** dated _____ November 1, _____ 19 79 , between

WINGS-FOUR, a Michigan Partnership, whose address is 515 Lakeshore Drive,

Grosse Pointe Shores, Michigan 48236,

hereinafter called the Lessor, and _____ GENERAL MOTORS CORPORATION, a Delaware Corporation,

with principal offices at 3044 West Grand Boulevard, Detroit, Michigan 48202,

_____ hereinafter called the Lessee,

**PREMISES**

**Witnesseth:**

The Lessor hereby lets to the Lessee, and the Lessee hires from the Lessor:

100,000 square feet of warehouse space,
fenced in areas and common driveways at
3801 Holland Road, Buena Vista Township,
Michigan, as more particularly outlined
in red on the print attached hereto and
made a part hereof,

**USE OF PREMISES**

with the appurtenances, to be used for ~~an automobile showroom, service station,~~ warehouse ~~or garage, or for general automobile, tractor, implement, airplane or truck business, or accessories thereto, or any line of business allied to or connected with any of the foregoing, or any type of business conducted or controlled by General Motors Corporation,~~ or any other lawful purpose not inconsistent with the character of the premises, for a term commencing _____ June 1, 1979,

and expiring _____ May 31, 1982,

**TERM**

[PLEASE INITIAL]

**RENT**

at the yearly rent of _____ SEE CLAUSE TWENTY-SEVENTH

payable in installments of $_____ in advance on the first business day of each and every month during the term.

The parties hereto covenant and agree with each other as follows:

FIRST: That the Lessee shall pay the rent at the times and in the manner aforesaid.

**REPAIRS**

SECOND: That the Lessee shall keep and not misuse the premises so that they may be returned to the Lessor in as good order and condition as when delivered to Lessee, excepting ordinary wear and tear, damage by fire, vandalism, the elements and casualty, and damage due to any cause or happening not occasioned by the negligence of the Lessee. The Lessor shall maintain, repair and replace as necessary the plumbing, heating, ventilating and air conditioning equipment, lighting and other electrical and mechanical equipment, sprinkler system, elevators, glass (unless broken or damaged due to the negligence of Lessee), damage by vandals, and make all other repairs or replacements which the Lessee is not hereby required to make. The Lessor shall maintain (including painting as necessary), repair and replace as necessary, the exterior of the building including the roof, exterior walls, drains, eaves troughs, downspouts, gutters, and provide lateral support and make all structural repairs to the building. The Lessor shall also maintain, repair and replace as necessary, the improvements and the lands which are a part of and used in connection with the premises, including but not limited to ditches, drains, sewers, utility lines, driveways, sidewalks, parking areas, landscaping and fencing. In the event the Lessor fails to make any repairs or replacements which it is required to make hereunder within a reasonable time specified in a written notice by Lessee, then in that event the Lessee may make such repairs or replacements and deduct the cost and expense thereof from the rent reserved hereunder, or the Lessee may, at its option, cancel this Lease. If ~~by reason of emergency, repairs or replacements become necessary which by the terms hereof are the~~

[PLEASE INITIAL]

~~responsibility of~~ ~~Lessor, Lessee may make such repairs or~~ ~~replacements which in the opinion of Lessor~~ are necessary for the preservation of the premises or of the Lessee's property, and Lessor shall at the option of the Lessee either reimburse Lessee or ~~Lessee may deduct~~ the cost and expense thereof from the rent reserved hereunder. Provided, ~~however~~, that in such event Lessee agrees to make reasonable effort to inform ~~Lessor before proceeding with such repairs or replacements.~~

**EASEMENTS**

THIRD: That the enjoyment and use of all entrances, exits, approaches and means of entrance and approach, and of light and air now existing in favor of the premises shall not be interfered with or interrupted by any act or assent of the Lessor during the term of this Lease.

**ASSIGNMENT**

FOURTH: That the Lessee will not assign this Lease without the written consent of the Lessor, except such assignment be to a corporation then owned or controlled by GENERAL MOTORS CORPORATION. The Lessor agrees that such consent will not be unreasonably withheld.

**NEGATIVE COVENANTS**

FIFTH: That the Lessee will not consent to any use of the premises which shall be contrary to any valid law of the State or to any valid ordinance or bylaw of the Municipality for the time being in force.

**COVENANTS BY LESSOR**

~~SIXTH: That the Lessor covenants and agrees that the possession of the premises will be delivered~~ to the Lessee upon the commencement of the term of this Lease in as good condition as the same now are, or as required to be altered pursuant to the provisions of Paragraph Twenty-Second, free from all tenancies and occupancies, and free from all orders, notices and violations filed or entered by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority. If any such orders, notices or violations be filed during the term of this Lease, the Lessor will comply therewith, or will cause such orders, notices or violations to be vacated unless they are occasioned by a use of the premises not authorized herein. In the event of Lessor's failure to comply with such orders, notices, or violations, or to cause such orders, notices or violations to be vacated within a reasonable time after written notice, Lessee may comply therewith and deduct the cost and expense of such compliance from the rent reserved hereunder, ~~or Lessee may cancel this Lease.~~



The Lessor further covenants and agrees that at the commencement of the term ~~the elevator or elevators~~, the boiler or boilers, ~~air conditioning~~ and heating equipment will all be in good mechanical, operating and insurable condition, acceptable to Lessee's insurance companies, and that the boiler or boilers, ~~air conditioning~~ and heating equipment will be of sufficient capacity to heat ~~and cool~~ the demised premises ~~comfortably~~. If said equipment is not in the condition specified and Lessor fails to promptly place it in said condition, then Lessee may have the ~~elevator or elevators~~, boiler or boilers and heating equipment put in the condition above provided and deduct the cost and expense thereof from any installment or installments of rent thereafter becoming due, or at Lessee's option, Lessee may cancel this Lease upon giving thirty (30) days notice in the manner herein provided. In any event, the fact that the Lessee does not have said work done shall not render Lessee in any way liable nor relieve Lessor from any liability. The acceptance of possession by Lessee shall ~~not~~ be deemed to be a waiver of any of the aforesaid covenants.

**VIEWING PREMISES**

SEVENTH: That the Lessor may during the term at reasonable times enter to view the premises and may at any time within three (3) months next before the expiration of the said term, show the said premises and building or buildings to others, and affix to any suitable part of the said premises a notice for letting or selling the premises, or building or buildings, and keep the same affixed without hindrance or molestation.

**FIRE CLAUSE**

EIGHTH: (a) That if the premises shall be so damaged by fire, the elements, casualty, war, insurrection, riot, public disorder, act, authorized or unauthorized, on the part of any governmental authority or any cause or happening as to be substantially destroyed, then this Lease shall cease and come to an end, and any unearned rent paid in advance by the Lessee shall be refunded to it; (b) In case of only partial damage or destruction of the premises or of other portions of the building or buildings containing the premises, then said premises or other portions of said building or buildings shall be restored promptly by the Lessor to their previous condition and a just proportion of the rent herein reserved, according to the extent to which they have been rendered untenantable, shall abate until the said premises shall have been so restored and put in proper condition for use and occupancy, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. If Lessor shall for any reason fail to restore the premises or other portions of said building or buildings within a reasonable time, Lessee may cancel and terminate this Lease upon giving thirty (30) days notice in the manner herein provided and be relieved of all liability hereunder arising subsequent to the aforesaid damage to the said premises or other portions of said building or buildings, and a just proportion of any rent paid in advance by the Lessee shall be refunded to it. The Lessor shall maintain fire and supplemental perils insurance coverage in an amount sufficient to comply with the aforementioned provisions of this clause; (c) In the event that the building or buildings containing the premises shall become unsafe, said building or buildings shall be repaired and restored forthwith by the Lessor, and a just proportion of the rent hereinbefore reserved shall abate until said building or buildings shall have been put in safe and proper condition for use and occupancy, and any unearned rent paid in advance by the Lessee shall be refunded to it, and if the Lessor fails for any reason to restore the premises forthwith to safe and proper condition for use and occupancy, Lessee may at its option cancel this Lease upon giving thirty (30) days notice in the manner herein provided; (d) If any authority having jurisdiction shall decide that the said building or buildings should be demolished and removed, then forthwith upon such decision being made and upon the Lessee vacating the premises, this Lease shall cease and come to an end and any unearned rent paid in advance by the Lessee shall be refunded to it.

**UNSAFE BUILDING CLAUSE**

**UNLAWFUL OCCUPATION**

NINTH: That the Lessor represents that the premises may be used for the purposes for which they are hereby leased and in the event of the enactment or existence of any law, ordinance, rule, ruling, regulation, covenant or restriction prohibiting or limiting the use of said premises for any one or more of the purposes for which they are hereby leased, then in that event at the option of the Lessee, this Lease shall terminate and all liability hereunder shall cease from and after the date such prohibition becomes effective, and any unearned rent paid in advance by the Lessee shall be refunded to it.

**RIGHTS UPON DEFAULT**

TENTH: That if the Lessee shall neglect or fail to perform or observe any of the covenants contained herein on its part to be observed and performed for thirty (30) days after written notice by the Lessor, or if the Lessee shall be adjudicated bankrupt or insolvent according to law, or shall make an assignment for the benefit of creditors, then and in any of said cases the Lessor may lawfully enter into

and upon the said premises or any part thereof in the name of the whole, and repossess the same as of the former estate of the Lessor and expell the Lessee and those claiming under and through it and remove its effects (forcibly if necessary), without being deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant and upon entry as aforesaid this Lease shall terminate and the Lessee covenants, that in case of such termination it will indemnify the Lessor against all unavoidable loss of rent/ damages and expenses which the Lessor may incur by reason of such termination during the residue of the term above specified.

**TERMINATION**

ELEVENTH: That notwithstanding any provision of law or any judicial decision to the contrary, (a) no notice shall be required to terminate the term of this Lease on the date herein specified and the term hereof shall expire on the date herein mentioned without notice being required from either party;

**HOLD OVER**

(b) in the event that the Lessee, any assignee or sublessee, remains beyond the expiration date of the term herein, it is the intention of the parties and it is hereby agreed that a tenancy from month to month shall arise upon all the same terms and conditions contained herein, including the monthly rental rate. If Lessee holds over more than sixty (60) days without signing a new Lease, the monthly rental will be 250% of the then current monthly rental rate.

**QUIET POSSESSION**

TWELFTH: Lessor herein represents that it is the fee owner of the premises hereby leased and hereby covenants that Lessee, on paying the rent and performing all and singular the covenants and conditions of this Lease on its part to be performed, shall and may peaceably and quietly have, hold and enjoy the premises for the term and for the uses aforesaid, and for the term of any renewal or renewals hereof, free from molestation, eviction or destruction by the Lessor, or by any other person or persons lawfully claiming the same, and that the Lessor has good right to make this Lease for the full term hereby granted, including the period for which the Lessee has the right to effect a renewal hereof. Should Lessee be dispossessed from the premises by reason of a superior title, the payment of rent shall cease from and after the date of such dispossession and all rent that may have been prepaid for any period of time Lessee is deprived of its peaceful possession by reason of said dispossession, shall be returned to Lessee forthwith, but the Lessor shall not hereby be relieved of liability to the Lessee for damages sustained by Lessee due to such dispossession. Lessor further agrees that in the event the premises are sold during the term of this Lease or any extension thereof, a certified copy of the Deed of Conveyance or an executed copy of the Assignment of this Lease shall be furnished to Lessee, it being understood that the consideration for such conveyance may be deleted from such instruments.

**SERVICES BY LESSOR**

THIRTEENTH: That the Lessor shall for the rent reserved furnish ~~electric current for all purposes required by the Lessee, janitor service, including snow removal, water and elevator service during ordinary business hours, sufficient heat and air-conditioning whenever necessary to make the premises comfortable for occupancy, window and glass partition washing at regular intervals,~~ toilet facilities, *and fluorescent ~~tubes or electric bulbs for lamps for lighting the premises, and the Lessor shall renew all such lamps, fluorescent tubes or bulbs when necessary. Lessor covenants and agrees that the lighting fixtures in the office portion of the premises shall be of sufficient capacity at all times to produce not less than 100 foot-candles lighting at desk level.~~ *exclusive of supplies.

**ALTERATIONS BY LESSEE**

FOURTEENTH: That with the prior written consent of Lessor, which shall not be unreasonably withheld, the Lessee shall have the right at any time during the term or any extension thereof, at its own expense, to make alterations, changes, improvements and remodeling to the premises, provided the same shall be in conformity with the Building Laws of the Municipality, County and State, and the Lessor covenants and agrees upon demand at any time after the execution of this Lease to obtain and deliver to the Lessee/at no cost or expense to Lessor all permits, consents and other instruments which may be necessary or required by any public or quasi-public authority, permitting and authorizing such alterations, changes, improvements and remodeling. In case of said alterations, changes, improvements and remodeling, the Lessee shall not be required upon the termination of the Lease or any extension thereof to restore the premises to their original condition, unless this was a condition when Lessor gave its written consent to make alterations, changes, improvements or to remodel premises.

**FIXTURES AND SO FORTH**

FIFTEENTH: That all movable partitions, fixtures, floor covering, or equipment installed in the premises at the Lessee's expense shall remain the property of the Lessee and may be removed by the Lessee by such installation or The Lessee shall, however, repair any damage caused directly and exclusively by said removal.

**SIGNS AND SO FORTH**

SIXTEENTH: That the Lessee shall have the right to install or place signs or posters anywhere on with Lessor's written consent or about the premises and upon removal of said signs and posters at the termination of this Lease shall repair any damage caused by such installation and removal.

**CONDEMNATION**

SEVENTEENTH: That in the event the premises or any part thereof are taken or condemned by a temporary or permanent public or quasi-public use so as to interfere with Lessee's use, Lessee permanent may at its option terminate this Lease and, in such event, any unearned rent paid in advance shall be returned to Lessee, but nothing herein contained shall prevent Lessee from recovering any damages sustained by Lessee due to such taking.

**MORTGAGE SUBORDINATION**

EIGHTEENTH: That this Lease shall be subject and subordinate to the lien of any mortgages hereafter placed on the premises and Lessee agrees to execute and deliver upon demand, in confirmation of such subordination, such further instruments as shall be required by any mortgagees or proposed mortgagees. Provided, that if and when such mortgage or mortgages are placed, the mortgagee shall agree for itself and for every subsequent holder or owner of the mortgage and for any receiver or purchaser of the premises in the event of foreclosure, Lessee's quiet possession of the premises will not be disturbed on account of said mortgage or by reason of anything done thereunder so long as Lessee pays the rent and keeps the other covenants on its part to be performed. Lessor agrees that in the event a mortgage is placed on the premises and a collateral assignment is given as security for the loan, Lessee will be furnished with a copy of such collateral assignment.

**WAIVER OF SUBROGATION**

NINETEENTH: The Lessor and the Lessee waive all rights, each against the other, and against those holding under or through the Lessor and Lessee, for damages caused by fire or other perils covered by insurance where such damages are sustained in connection with the normal occupancy of the leased premises.

**NOTICES**     TWENTIETH: That all notices to be given hereunder shall be in writing and given by personal delivery to the Lessor or to one of the executive officers of the Lessee or shall be sent by telegram or by registered mail addressed to the party intended to be notified at the post office address of such party last known to the party giving such notice and notice given as aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date when deposited in any post office, or in any post office box regularly maintained by the Federal Government or, in the case of a telegram, when given to an employe of the telegraph company for transmission. Provided, however, that it is mutually agreed that the Lessee appoints the President, the Executive Vice Presidents and the Vice President in Charge of Real Estate, General Motors Corporation, and the Executive in Charge of Real Estate, the Manager and the Director, Real Estate Department of Argonaut Realty Division, General Motors Corporation, Argonaut Building, 485 West Milwaukee Avenue, Detroit, Michigan 48202, as its agents, and that any one of them may give all notices and receive all notices to be given hereunder, and may pay the rent, and notices shall be sent to any one of said agents and not otherwise. The right is hereby reserved by the Lessee to countermand such appointments and make others consistent herewith, due notice of which shall be given by the Lessee to the Lessor.

**EXTENSION**     ~~TWENTY-FIRST: That the Lessee may at its option extend the term of this Lease for~~ further period(s) of _____ upon all the same terms and conditions contained herein, or as hereafter ~~amended, by giving Lessor~~ written notice.

**ALTERATIONS BY LESSOR**     ~~TWENTY-SECOND: That the Lessor, at the Lessor's own expense, shall make the alterations,~~ changes and improvements, according to the plan annexed hereto and made a part hereof, ~~and shall fully~~ complete the same, in a good workmanlike manner and shall have the premises ready for lawful occupancy by the Lessee in the condition herein provided on or before _____ 19___. In the event said work is not completed as above provided, the Lessee may, at its option, (a) enter and complete said work and deduct the cost and expense thereof from the rent reserved hereunder, or (b) cancel this Lease. In no event, however, shall rent accrue until the above alterations, changes and improvements have been ~~completed and the premises have been made ready for lawful occupancy by the Lessee as herein provided.~~

**CANCELLATION**     ~~TWENTY-THIRD: That the Lessee may cancel this Lease effective_____~~ or at any time thereafter by giving Lessor _____ days' written notice prior ~~to such cancellation.~~

SEE RIDER ATTACHED HERETO AND MADE A PART HEREOF.

The covenants and agreements contained in the foregoing Lease are binding upon the parties hereto and their respective heirs, executors, administrators, successors, legal representatives and assigns.

**In Witness Whereof,** Lessor has signed and sealed this instrument this 28th day of July A.D. 19 80, and Lessee has signed and sealed this instrument this ~~28th~~ 13th day of ~~July~~ August A.D. 19 80.

In the presence of:

WINGS-FOUR
A Michigan Partnership

BY _____
R. W. LECH
Attorney-in-Fact

Constance M. Lukas

In the presence of:

GENERAL MOTORS CORPORATION

D. J. FOURNIER

BY _____
T. O. Mathues
Vice-President

P. NYDAM

ATTEST _____
Marguerite Paulick Assistant Secretary

RIDER ATTACHED TO AND MADE A PART OF LEASE AGREEMENT DATED
NOVEMBER 1, 1979, BETWEEN WINGS-FOUR, A MICHIGAN PARTNERSHIP,
AS LESSOR, AND GENERAL MOTORS CORPORATION, A DELAWARE CORPORATION,
AS LESSEE, COVERING PREMISES LOCATED AT 3801 HOLLAND ROAD, BUENA
VISTA TOWNSHIP, MICHIGAN

TWENTY-FIRST - COVENANTS BY LESSOR: That the Lessor covenants and agrees that the possession of the premises will be delivered to the Lessee upon the commencement of the term of this Lease in as good condition as the same now are and free from all orders, notices and violations filed or entered by any public or quasi-public authority, and free from complaints or reports of violations, noted or existing in or filed with any Federal, State, County, Municipal, Borough, or any other local authority. If any such orders, notices, or violations be filed during the terms of this Lease which materially affect the use of the premises by Lessee and if Lessee shall notify Lessor of such orders, notices or violations in writing, then Lessor shall have the option to (i) comply therewith and the rent herein provided shall abate entirely in the event the entire premises are rendered completely untenantable. In the event, however, that a portion of the premises are rendered untenantable, the rental shall abate in proportion to the percentage of such space rendered untenantable until the premises are restored to a condition suitable for occupancy, or (ii) cause such orders, notices or violations to be vacated unless they are occasioned by a use of the premises not authorized herein, or (iii) terminate this Lease by written notice to Lessee without further duties, obligations, damages, or liabilities to Lessee, except Lessee shall be entitled to have any prepaid rent returned to them.

TWENTY-SECOND - UTILITIES: If the Lessor decides that the installation of any utility meters is not economically feasible, Lessee agrees to pay Lessor its pro rata share of all charges (not separately metered to Lessee) for water, gas, heat and electricity. Lessee's pro rata share of said charges shall be that proportion which the total number of square feet in the leased premises bears to the total number of square feet in Lessor's building. Lessee's pro rata share shall be paid monthly within ten (10) days of receipt of Lessor's statement.

TWENTY-THIRD - RAIL SPUR: The Lessor agrees to provide a rail spur *to* the leased premises. Lessee thereafter agrees to maintain and repair said spur track as is necessary for Lessee's use and in compliance with any required railroad sidetrack agreement.

TWENTY-FOURTH - TAX ESCALATION: The Lessor shall pay all real estate taxes levied against the land and building of which the demised premises are a part. In the event, however, that such taxes increase over and above those levied and paid for the year 1979, or the first year for which the completed building is fully assessed, whichever occurs later, then the Lessee agrees to reimburse Lessor for Lessee's proportionate share of such increase. The Lessee's proportionate share of any such increase shall be determined by the ratio that the gross rentable area of

* which now abuts

the demised premises bears to the gross rentable area of the entire building. Determination of tax increases shall not include assessments for local improvements nor local betterment taxes. Lessee shall reimburse Lessor for its share of such tax increases once each year during the term hereof, or any extension thereof, upon receipt of the Lessor's written request for reimbursement, accompanied by paid tax receipts establishing such increase to the Lessee's satisfaction. If such increase in real estate taxes covers a period prior to or extending beyond the initial term or any extension thereof, such increase shall be prorated.

TWENTY-FIFTH - INDEMNIFICATION: The Lessee agrees to indemnify and hold harmless the Lessor from and against any and all liabilities, fines, suits, demands, claims, litigation, actions, costs and expense due to or arising solely out of any negligent act, violation or intentional non-performance of any covenant, condition or agreement in this Lease set forth and contained on the part of the Lessee to be fulfilled, kept, observed and performed, excepting loss by fire or other ~~insurable~~ insured casualty.

TWENTY-SIXTH - FIRE INSURANCE PREMIUM: Lessor shall pay all insurance premiums for fire and extended coverage insurance (including without limitation, sprinkler leakage, vandalism, and malicious mischief) charged only against the premises and not for Lessee's personal property. In the event, however, that such premiums increase over and above those charged during 1979, then the Lessee agrees to reimburse Lessor for Lessee's proportionate share of such increase. The Lessee's proportionate share of any such increase shall be determined by the ratio that the gross area of the demised premises bears to the gross area of the entire building.

TWENTY-SEVENTH - RENTAL: Rental for Lessee's occupancy shall be paid as follows: $21,083.33 per month for the period commencing June 1, 1979, and expiring October 31, 1979, and $21,916.67 per month for the period commencing November 1, 1979, and expiring May 31, 1982.

TWENTY-EIGHTH - RENEWAL OPTIONS: That Lessee may at its option obtain three (3) successive three (3) year renewals by providing Lessor with six (6) months' written notice prior to the expiration of the then current term. Rental for each renewal period shall be as follows:

| Renewal Period | Rental Per Year | Rental Per Month |
|---|---|---|
| 6-1-82 to 5-31-85 | $250,000 | $20,833.33 |
| 6-1-85 to 5-31-88 | $297,000 | $24,750.00 |
| 6-1-88 to 5-31-91 | $354,000 | $29,500.00 |

TWENTY-NINTH - REPAIRS: That the Lessee shall keep and not misuse the premises so that they may be returned to the Lessor in as good order and condition as when delivered to



PAGE 2 OF RIDER

Lessee, excepting ordinary wear and tear, damage by fire, vandalism, the elements and casualty. The Lessee shall maintain, repair and replace as necessary the plumbing, heating, ventilating and air conditioning equipment, lighting and other electrical and mechanical equipment (unless broken or damaged due to the negligence of Lessor), and make all other repairs or replacements as necessary which the Lessor is not hereby required to make. The Lessor shall maintain, repair and replace as necessary, the exterior of the building including the roof, exterior walls, drains, eaves troughs, downspouts, gutters, and provide lateral support and make all necessary structural repairs to the building. The Lessor shall also maintain, repair and replace as necessary, the improvements and the lands which are a part of and used in connection with the premises, including but not limited to ditches, drains, sewers, utility lines, driveways, parking areas, and fencing. * In the event the Lessor fails to make any repairs or replacements which it is required to make hereunder within a reasonable time specified in a written notice by Lessee, then in that event the Lessee may make such repairs or replacements and deduct the cost and expense thereof from the rent reserved hereunder, or the Lessee may, at its option, cancel this Lease. If by reason of emergency, repairs or replacements become necessary which by the terms hereof are the responsibility of the Lessor, Lessee may make such repairs or replacements, by reason of emergency only, necessary for the preservation of the premises or of the Lessee's property, and Lessor shall, at the option of the Lessee, either reimburse Lessee or Lessee may deduct the cost and expense thereof from the rent reserved hereunder. Provided, however, that in such event Lessee agrees to make all reasonable effort to inform Lessor before proceeding with such repairs or replacements. Lessee agrees to reimburse the Lessor for one-half of the cost of any minor maintenance and snow removal cost of the two common driveways shown on the attached print. Such "minor maintenance" shall include driveway patching but not the replacement of said driveway.

THIRTIETH: It is understood and agreed that the Lessor may, upon thirty (30) days prior written notice to Lessee, obtain an exchange of that portion of our present parking area shown in red on the attached print and measuring approximately 60' x 204', for contiguous area shown in green on said print and measuring approximately 50' x 235'. Said exchange will not occur until said substituted area has been improved by Lessor, at its expense, to equal the improvements then existing in the area shown in red.

THIRTY-FIRST: Lessor shall have the right at any time to assign any and all rights it has in this Lease.

THIRTY-SECOND: It is understood and agreed between the

---

* Anything to the contrary notwithstanding, Lessee shall be responsible for all maintenance, repairs, and replacements to the premises arising out of the negligent acts or improper use of Lessee, its officers, employees, agents, guests or invitees, excepting loss by fire or other insured casualty

PAGE 3 OF RIDER

parties hereto that the Lease Agreement dated December 11, 1978, is hereby terminated and of no further force and effect.

WITNESS the signatures and seals of the above parties.

In the presence of:    WINGS-FOUR
                       A Michigan Partnership

_[signature]_          BY _[signature]_
                          R. W. LECH
                          Attorney-in-Fact

_Constance M. Lubas_

In the presence of:    GENERAL MOTORS CORPORATION

_[signature]_          BY _[signature]_
D. J. FOURN---            T. O. Mathues
                          Vice President

_[signature]_          ATTEST _[signature]_
P. NYDAM                  Marguerite Romzick
                          Assistant Secretary

PAGE 4 OF RIDER

# AMENDMENT TO LEASE AGREEMENT

THIS AMENDMENT made and entered into as of this 24th day of May, 2000, by and between Crown Enterprises, Inc. (hereinafter referred to as "Landlord"), and Delphi Automotive Systems LLC, (hereinafter referred to as "Tenant").

WITNESSETH: WINGS-FOUR, AS PREDECESSOR-IN-INTEREST TO CENTRAL TRANSPORT, INC., WHOSE INTEREST IS NOW VESTED IN LANDLORD, AND GENERAL MOTORS CORPORATION, AS PREDECESSOR-IN-INTEREST TO TENANT.

WHEREAS, ~~the parties hereto~~ entered into a Lease Agreement on November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, December 1, 1994, and June 23, 1997, under which Landlord leased to Tenant 120,348 square feet of premises described in the Lease located in the City of Saginaw, State of Michigan, commonly known as 3801 Holland Avenue.

WHEREAS, the parties hereto desire to amend said Lease Agreement for the purpose of extending the term of the Lease and increasing the monthly rent;

NOW THEREFORE, in consideration of the mutual promises, covenants, and agreements hereinafter contained, it is mutually understood by and between the parties hereto that the Lease is hereby amended as follows:

1. The term of the Lease shall be extended for a period of three (3) years from and after the 1st day of June, 2000, and expiring the 31st day of May, 2003.

2. Tenant's proportionate share of taxes, services & utilities, insurance, and maintenance shall be one hundred percent (100%).

3. In addition to the Tenant's obligation for taxes, utilities, insurance, and maintenance as specified herein, the rent is hereby increased to the sum of one-million two-hundred sixty-three thousand six-hundred fifty-four and 00/100 dollars ($1,263,654.00) in lawful money of the United States of America, payable in advance on the first day of each month throughout the term of this Amendment to Lease Agreement in equal consecutive monthly installments of thirty-five thousand one-hundred one and 50/100 dollars ($35,101.50).

4. In the event of a conflict between the terms of this Amendment and the terms of the Lease, the terms of this Amendment shall control. All of the defined terms in the Lease shall have the same definitions as this Amendment, unless otherwise defined herein. Except as set forth in this Amendment, the terms and conditions of the Lease shall remain unmodified and in full force and effect.

5. Provided that Tenant is not in default hereunder, and provided that Landlord or its affiliated companies do not require the Leased Premises for their own operations, Tenant shall have the right and option to renew this Lease for one (1) additional term of three (3) years. The renewal option shall be subject to the same terms and conditions as contained herein excepting the monthly rental which shall be based upon the prevailing market rate to be agreed upon by Landlord and Tenant, provided that the rental for the renewal period is not less than the current rental rate. To exercise said renewal option; Tenant must provide Landlord with a written notice of its intent to renew at least six (6) months prior

to the expiration of the term hereof. Failure of Tenant to notify Landlord as provided herein will waive Tenant's option to renew.

Except as hereinabove specifically provided to the contrary, all of the remaining terms, covenants, conditions, and agreements in the Lease Agreement remain in full force and effect, and the Lease Agreement dated November 1, 1979, as amended January 20, 1981, July 19, 1988, July 1, 1991, June 1, 1994, December 1, 1994, and June 23, 1997, is hereby acknowledged, ratified, and confirmed by the parties thereto.

**IN WITNESS WHEREOF,** the undersigned have hereunto set their hands as of the day and year first above written.

WITNESSES:                                              LANDLORD: Crown Enterprises, Inc.

_Todd White_                                            BY: _Arnold M. Mistura_
                                                              Arnold M. Mistura

_____                                 ITS:    President


WITNESSES:                                              TENANT: Delphi Automotive Systems LLC

_D. Laird_                                              BY:    DELPHI AUTOMOTIVE SYSTEMS   INC.

_____                                 ITS:   MANAGING MEMBER

ref:   saginaw -delphi amendment.doc                    BY:    _Edward O'Neill_
                                                               EDWARD J. O'NEILL

                                                        ITS:   AUTHORIZED REPRESENTATIVE


                                                        EDWARD J. O'NEILL
                                                        MANAGER, REAL ESTATE SERVICES

(stamps: EXECUTION RECOMMENDED DELPHI REAL ESTATE; APPROVED / LEGAL MIRO WEINER & KRAMER)

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

**In re:**

**DELPHI CORPORATION, et al.,**

        **Debtors.**

_____/

Chapter 11

Case No. 05-44481

### AFFIDAVIT OF TODD WHITE

Todd White, after being first duly sworn, states:

1. This Affidavit is made from my personal knowledge and from the books of account of Central Transport International, Inc. in my possession, custody and control.

2. If called as a witness, I could testify competently to the facts stated in this Affidavit.

2. I hold the position of Real Estate Portfolio Manager with Crown Enterprises, Inc.

3. I have held the position of Real Estate Portfolio Manager for approximately 12 years.

4. I administer and am familiar with the lease of certain real property located at 3801 Holland Road, Buena Vista Township, Michigan (the "Real Property") for Crown Enterprises, Inc.

5. I am familiar with Crown Enterprises, Inc.'s Proof of Claim filed on July 26, 2006.

6. I am familiar with the unpaid utility bills attached to the Proof of Claim.

7. The unpaid utility bills are for utilities provided to the Real Property and were

unpaid as of October 5, 2005.

8. I am familiar with the property tax bills attached to the Proof Claim.

9. The property tax bills attached to the Proof of Claim were for property taxes related to the Real Property owed prior to October 5, 2005.

10. Crown Enterprises, Inc. paid the property taxes evidenced in the property tax bills attached to the Proof of Claim.

11. Pursuant to the May 24, 2000 Lease Amendment, Delphi is responsible for a property taxes.

I swear or affirm that the above statements are true and correct to the best of my knowledge, information and belief.

_____
Todd White

State of Michigan
County of Macomb

Subscribed and sworn to before me this 4th day of January, 2008 by Todd White

_____
Melissa Anne Raikes, Notary Public
Wayne ~~Oakland~~ County, Michigan
My commission expires: 9-30-2012

MELISSA ANNE RAIKES
Notary Public - Michigan
Wayne County
My Commission Expires Sep 30, 2012
Acting in the County of Macomb