1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DELPHI CORPORATION,

9

10          Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                  United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  December 20, 2007

19                  10:06 AM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1

2  HEARING re Automodular Motion to Compel Assumption or Rejection

3  of Executory Contracts And To Allow Payment of Administrative

4  Claim

5

6  HEARING re Motion for Authority to Continue Claims Objection

7  Procedures

8

9  HEARING re Fifth Section 1121(d) Exclusivity Extension Motion

10

11  HEARING re Interiors and Closures Businesses Sale Motion

12

13  HEARING re Twenty-Third Omnibus Claims Objection

14

15  HEARING re Steering Sale Motion

16

17  HEARING re Debtors' Motion for Default Judgment Against

18  Furukawa

19

20

21

22

23

24  Transcribed by: Clara Rubin

25

3

1

2  A P P E A R A N C E S :

3  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

4          Attorneys for the Debtor

5          4 Times Square

6          New York, NY 10036

7

8  BY:   JOHN WILLIAM BUTLER JR., ESQ.

9          KAYALYN A. MARAFIOTI, ESQ.

10

11  WEIL, GOTSHAL & MANGES LLP

12          Attorneys for GM Corporation

13          767 Fifth Avenue

14          New York, NY 10153

15

16  BY:   ROBERT LEMONS, ESQ.

17

18  COHEN, WEISS AND SIMON LLP

19          Attorneys for UAW

20          330 West 42nd Street, 25th Floor

21          New York, NY 10036

22

23  BY:   BABETTE CECCOTTI, ESQ.

24

25

4

1    MORGAN, LEWIS & BOCKIUS LLP

2          Attorneys for Sun Capital

3          101 Park Avenue

4          New York, NY 100178

5

6    BY:   NEIL E. H ERMAN, ESQ.

7

8    WARNER STEVENS L.L.P.

9          1700 City Center Tower II

10          301 Commerce Street

11          Fort Worth, TX 76102

12

13    BY:   MICHAEL D. WARNER, ESQ.

14

15    TOGUT, SEGAL & SEGAL

16          One Penn Plaza

17          New York, NY 10119

18

19    BY:   NEIL BERGER, ESQ.

20

21    ALSO APPEARING:

22    DENNIS CONNOLLY

23

24

25

5

P R O C E E D I N G S

1

2       THE COURT:  Please be seated.  Okay.  Delphi

3  Corporation.

4       MR. BUTLER:  Your Honor, good morning.  Jack Butler

5  and Kayalyn Marafioti from Skadden on behalf of Delphi

6  Corporation for our twenty-sixth time at this hearing.  We're

7  in the month of December, 2007.  Your Honor, we filed the

8  proposed hearing agenda and we propose to take the matters in

9  the order on the agenda.

10       THE COURT:  Okay.

11       MR. BUTLER:  The first matter on the agenda is the

12  Automodular motion to compel assumption or rejection at docket

13  number 11180.  The movant has asked -- they weren't prepared to

14  go forward and asked to move this forward to the January 25th

15  omnibus hearing, seeing as this is a motion against the debtors

16  for assumption or assignment.  We had no issue with that and

17  would agree to adjourn.

18       THE COURT:  Okay.

19       MR. BUTLER:  Your Honor, matter number 2 on the

20  agenda is our motion seeking authority to continue the claims

21  objection procedures that we've had in this case,

22  notwithstanding the effectiveness of new bankruptcy rule

23  3007(c) as amended effective December 1 of this year.  This is

24  docket number 11187.  As I mentioned, there have been no

25  objections filed.

6

1        In summary, Your Honor, what we're asking the Court

2    to do is to, in consideration of the claimant's procedures

3    we've had in this case, Your Honor, as previously approved,

4    including specifically the particularized notice that we give

5    to each objector -- excuse me, each claimant that we're

6    objecting to, we're asking Your Honor to, notwithstanding 3007,

7    to grant us certain relief and allow us to continue essentially

8    the claims procedures that have been in this case throughout

9    the course of the case.

10        The one additional exhibit that we would create for

11   the omnibus claims objections would be an alphabetical list of

12   all claimants' names and related proof of claim numbers

13   contained in the omnibus claims objection.  We would add

14   that -- in addition to the individualized, particularized

15   notice, we would add that to the objection.  But, otherwise, we

16   would continue the notice that Your Honor has approved

17   previously.

18        We have sought relief in this motion to continue to

19   put more than one hundred claims on a single omnibus claims

20   objections to continue to make books and records objections and

21   to continue to modify security or priority status as part of

22   these objections, and would ask Your Honor, in the absence of

23   any objections from any party, to grant the relief requested.

24        THE COURT:  Okay.  I'll do that.  You highlighted the

25   three potential divergences from the rule.  The first one's

7

1   dealt with by the particularized notice.  I think the other two

2   are dealt with by the claimant's procedures order which

3   provides for adjournment and a combined reconciliation and

4   discovery process for books and records and priority unsecured

5   claim objections.  So it seems to me that this is what the

6   drafters of the rule meant by giving the courts the authority

7   to modify the rule under 3007(c), so I'll do that.

8          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

9   matter number 3 on the agenda is the company's fifth

10  exclusivity extension motion filed with docket number 11188.

11  Currently, the debtors had the exclusive right to file a plan

12  of reorganization through and including December 31, 2007 and

13  to solicit acceptances through and including February 29, 2008.

14  In our motion, we've asked to extend those dates to

15  March 31, 2008 and May 31, 2008, respectively.  No objections

16  have been filed by any party, Your Honor, to the relief

17  requested.

18          THE COURT:  Okay.  In light of that fact, as well as

19  the statements in the motion and the current status of the

20  case, I'll grant the motion.

21          MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

22  next matter on the agenda is the Interiors and Closures

23  business sale motion filed with docket number 10606.  This is,

24  Your Honor, the sale hearing with respect to that motion.

25  Previously, Your Honor, I had heard a bidding procedures order

8

1    at docket number 10732, and pursuant to that order any

2    competing bids were due at 11 a.m. on November 26, 2007.  The

3    selling debtor entities did not receive any bids and

4    consequently no auction was conducted on December 6 that had

5    been tentatively scheduled.

6            Your Honor, this sale is for an aggregate purchase

7    price of 106 million dollars, including a preliminary purchase

8    price of 80 million dollars, subject to certain adjustments and

9    postclosing payments totaling 26 million.

10           Today, Your Honor, we seek to have an order

11   authorizing and approving the sale to the stalking horse as

12   described in the motion, as well as approval of the assumption

13   assignment of the assumed contracts and the assumption of

14   assumed liabilities.

15           There was an objection to the sale motion filed by

16   Siemens at docket number -- and it was actually withdrawn.

17   It's been resolved, rather.  Docket number 11446.  There was

18   also, and it received some publicity at one point in time, an

19   objection filed by Chrysler, docket number 11062.  I would note

20   on the record that they withdrew that objection at docket

21   number 11518.

22           There have been, Your Honor, a series of other

23   objections filed but they're basically cure objections,

24   objections to cure objections of assumptions and assignment.

25   There were twenty-eight of those objections filed.  The debtors

9

1    have resolved thirteen of those objections and would propose to

2    have fifteen of -- the other remaining fifteen of those

3    objections adjourned as a procedure to provide to the January

4    omnibus hearing as we continue to try to work through those.

5    On the extent there's an issue, we would then ask the Court to

6    resolve them.

7           With respect to the settled objections, those

8    settlements were based on the various statements we put in our

9    omnibus reply, which I'll not repeat here on the record.  I'll

10   simply incorporate that by reference here in the record.  There

11   was an additional statement in connection with the objection

12   resolving the objection filed by Mercedes.  That was to make it

13   clear that the resolution set forth in the reply was agreed to

14   among the debtors, Mercedes and the purchasers.  Thus, I agreed

15   to state on the record here that the resolution recited in the

16   reply does represent an understanding reached among the

17   debtors, Mercedes and the buyer, just so that is clear as we

18   would move forward here.

19          Your Honor, I also, in connection with this matter,

20   so the record -- we have a full record here, there is -- has

21   been a exhibit book put together that has forty-two exhibits in

22   it that evidence all the matters for this sale hearing.

23   Exhibit 1 would be the declaration.  Exhibits 2 through 5 are

24   the basic motion documents.  Exhibits 6 through 11 are all the

25   notices with respect to executory contracts.  Exhibits 12

10

1  through 38 represent the various objections that have been

2  filed.  Exhibit 39 is the objection of the sale motion that was

3  resolved with Siemens.  And then exhibits 40 to 42 are the

4  affidavits relating to service of all the matters in connection

5  with the hearing.  Your Honor, I'd like to move admission of

6  Exhibits 1 through 42 into the record.

7        THE COURT:  Okay.  Does anyone object to the

8  admission of those documents into evidence?

9        MR. BUTLER:  And, Your Honor, that would include

10 Exhibit number 1, the declaration of Mr. Sheehan in support of

11 this, which is marked highly confidential and which we've

12 also -- would also move into the record and make available if

13 the Court has any questions or anyone wants to examine.

14 (Highly confidential declaration of Mr. Sheehan was hereby

15 received as Debtor's Exhibit 1 for identification, as of this

16 date.)

17 (Basic motion documents were hereby received as Debtor's

18 Exhibits 2 through 5 for identification, as of this date.)

19 (Notices with respect to executory contracts were hereby

20 received as Debtor's Exhibits 6 through 11 for identification,

21 as of this date.)

22 (Various objections filed were hereby received as Debtor's

23 Exhibits 12 through 38 for identification, as of this date.)

24 (Objection of sale motion resolved with Siemens was hereby

25 received as Debtor's Exhibit 39 for identification, as of this

11

1    date.)

2    (Affidavits relating to service of all matters in connection

3    with hearing were hereby received as Debtor's Exhibit 40

4    through 42 for identification, as of this date.)

5              THE COURT:  Okay.  Does anyone want to cross-examine

6    Mr. Sheehan on his declaration in support of the sale?  All

7    right.

8              MR. BUTLER:  Your Honor, I think we had previously

9    described Entebbe to the Court as a wholly owned subsidiary of

10   the Renco Group, Inc., and unless the Court has any specific

11   questions about our papers or about the proposed treatment of

12   the objectors, we would rely on the record that is now in

13   evidence and our prior papers.

14             THE COURT:  Well, I had this question about the

15   adjournment of the assumption and assignment, objections that

16   remain.  Does that have any effect on the sale itself, that

17   adjournment?

18             MR. BUTLER:  No, I'm advised that we're -- there are

19   some conditions to close -- there are, I believe, some

20   conditions to close but I don't know if there's any issue with

21   having those determined in January, so everyone has told me.

22             THE COURT:  Everyone's agreeing with that?  Okay.

23   Does anyone want to be heard on this motion?  All right.  I

24   made it a little clearer in the order in the findings section

25   that the findings with regard to the assigned contracts in this

12

1  order don't pertain to the contracts covered by the objections

2  because that'll be decided in January or on a consensual basis.

3         And then there was one provision in here, I think

4  it's a typo, I just -- although, you know, sometimes these

5  orders are negotiated.  If you go to page 13 of the proposed

6  order, which was attached to the response --

7         MR. BUTLER:  Yes.

8         THE COURT:  -- right before the heading assumption

9  and assignment it says, "Notwithstanding the above, nothing

10  herein shall be construed to permit a governmental agency to

11  obtain penalties from the buyers."  And it says "for days

12  violation of environmental laws and regulations prior to

13  closing."  Should that be, instead of "days", the selling

14  debtor entities violation?

15         MR. BUTLER:  Let me just simply ask --

16         THE COURT:  I just didn't understand why the word was

17  in --

18         MR. BUTLER:  There clearly is a typo there.  Let me

19  simply check that with --

20         THE COURT:  Okay.

21         MR. BUTLER:  I want to make sure it's appropriate

22  with the purchaser.  Let me just check that.

23         THE COURT:  All right.  I mean, maybe there was some

24  information omitted, like, past days or, you know, twenty, but

25  my sense was probably someone wrote in shorthand debtors'

13

1   violation and it came as "days".

2          MR. BUTLER:  Let me just check that, Your Honor, and

3   we'll submit it to chambers.

4          THE COURT:  Okay.  But otherwise, the order seemed

5   fine, and in light of the resolution of the objections, the

6   motions, statements in support of the sale, the lengthy sale

7   process, which culminated in this agreement, I'll approve the

8   motion.

9          MR. BUTLER:  Thank you, Your Honor.

10      (Pause in proceedings)

11         MR. BUTLER:  Your Honor, the next matter on the

12  agenda is matter number 5.  This is our twenty-third omnibus

13  claims objection filed at docket 10982.  Your Honor, this

14  motion is an omnibus objection that dealt with sixty-three

15  proofs of claim to which we had various suggestions lodged.

16  There were sixteen proofs of claim that we received responses

17  with respect to -- therefore, there are forty-seven proofs of

18  claim that there was no response filed that we're seeking

19  relief here today.  With respect to the sixty-three claims in

20  the aggregate on the twenty-third omnibus claims objections,

21  those involved claims totaling approximately twenty-six million

22  dollars.  As of last evening, we had received twelve formal

23  responses covering the sixteen proofs of claim I indicated.

24  Those involved liquidated claims of about 15.4 million, and

25  therefore as to those proofs of claim, we will, as we have in

14

1    the past, adjourn those to the claims track process and deal

2    with them in the claims track.

3            With respect to the remaining claims, the 47 proofs

4    of claim, they cover claims involving about 10.6 million.

5    Well, there's only three million dollars of relief in the

6    aggregate we're really seeking today; that's in two forms,

7    Your Honor.  First, we're asking the Court to expunge 17 of

8    these claims with an asserted claim amount of about 1.9

9    million, and with the remaining 30 claims that assert claims of

10   about 8.7 million, we're asking the Court to reduce that from

11   8.7 in the aggregate to 7.6, which would involve a reduction of

12   about 1.1 million.  And there is other relief being sought that

13   would modify the identity of the debtor against which the proof

14   of claim was asserted, the class, the amount of the claim and

15   similar relief.

16           So, Your Honor, with respect to this matter, we ask

17   you to enter relief today with respect to the forty-seven

18   claims.  They did receive the particularized notice that is the

19   custom in these cases and they will receive particularized

20   notice of any decision Your Honor makes today with respect to

21   these claims.

22           THE COURT:  Okay.  Does anyone want to be heard on

23   this motion?  All right.  I'll grant the motion as modified in

24   light of the lack of an objection to the relief that's being

25   sought.

15

1          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

2    matter number 6 on the agenda today is the steering sale

3    motion.  This is filed at docket number 11390.  The only

4    response filed to this is filed by another bidder at docket

5    number at docket number 11480 involving Sun Capital.  That

6    entity is neither a -- as I understand is neither a creditor

7    nor equity holder of the debtors, and we're here today to deal

8    with the two-step sale process that we'd ask Your Honor to

9    consider in connection with the sale of the global steering

10   business.

11          Your Honor, this is a transaction that is at the core

12   of one of the three -- or the five principal transformation

13   objections we've had in this case, which is to rationalize our

14   product portfolio and footprint globally.  And this was a

15   business that the company determined was not strategic to our

16   future and that was announced back on March 31st of 2006.

17   Having said that, the steering business is an important

18   business.  It employs thousands of employees, including a very

19   significant number of employees represented by the UAW.

20          And the treatment of the steering business was one of

21   the principal elements negotiated in both the GM settlement and

22   in the memorandum of understanding between General Motors, UAW

23   and the debtors, which was previously approved by the Court.

24          Your Honor, this particular transaction today, or

25   we're asking the Court to consider today, are the bidding

16

1    procedures and approval of the bidding protection with respect

2    to the proposed purchaser.  You know, the proposed purchaser,

3    Your Honor, is an entity called Steering Solutions Corporation,

4    and certain of its affiliates, which is an affiliate related to

5    Platinum, which has been the stalking horse bidder selected by

6    the company after a very lengthy process in which the company,

7    with Rothchild's assistance, had gone out and contacted over

8    ninety potential buyers and executed confidentiality agreements

9    with about thirty of those potential buyers over a very

10   extended period of time.  It involved both an initial marketing

11   and a remarketing process as the company went through to

12   evaluate what would be an appropriate stalking horse to deal

13   with this transaction going forward.  That involved both

14   socializing a prospective purchaser with the UAW, principally

15   as well as with General Motors, who is very much involved in

16   this transaction because of the supply agreement they needed to

17   work out with the purchaser and because, under the GM

18   settlement, a significant portion of the value that comes --

19   direct consideration that comes to Delphi in connection with

20   the sale of the steering business is through consideration that

21   is funded in part by General Motors in terms of some of the

22   working capital, about two-thirds of the working capital, that

23   will go with the business.

24          As I indicated, Your Honor, the proposed purchaser is

25   an affiliate of Platinum Equity, LLC.  The transaction value in

17

1    the papers is 447 million dollars.  That's comprised of 190

2    million dollars of assumed liabilities and restructuring costs

3    being borne by Steering Solutions and a transaction

4    facilitation agreement with General Motors, in which they're

5    paying 257 million dollars plus additional expenses and costs

6    that would otherwise be Delphi's obligations under the proposed

7    transaction agreement.

8         The breakup fee we're asking Your Honor to approve

9    today is 5.5 million dollars.  This was reduced from six

10   million in negotiations between the creditors committee and the

11   purchaser which will obtain the committee's support of this

12   transaction.  There's an alternative expense reimbursement

13   provision, which would be six million dollars if the breakup

14   fee is not paid or two million if the breakup fee is paid.

15        The series of events that give rise to the breakup

16   fee are fairly ordinary and customary and they're set forth in

17   the papers.  There are some termination rights that would give

18   right to the expense reimbursement, and that would be if

19   closing hasn't occurred within 180 days of the sale approval

20   order or the sale approval order is not entered within ninety

21   days of the agreement.

22        I would point out, Your Honor, ninety days seems like

23   a long time under the proposed schedule here.  Ninety days

24   actually occurs in early March and the sale hearing here is

25   currently schedule for February 21st.  So while it seems like a

18

1   long time, in reality the order has to be entered within about

2   twenty days or so of the time that the sale hearing was

3   currently scheduled, and I just want the Court to be aware of

4   that.

5          The proposed schedule for the auction would be that

6   the bid deadline would be January 18th, 2008.  The auction will

7   be held on January 28, 2008 and the sale hearing would be at

8   the February 21st omnibus.  We do have, in these papers,

9   reserved our right that if there is no bid submitted --

10  qualified bid submitted by the bid deadline, we would have the

11  right to come to the court and ask Your Honor to schedule an

12  earlier off omnibus hearing provided we gave twenty days'

13  notice of that earlier hearing date and gave parties seven days

14  to object to the sale relief and an additional notice, which

15  may be necessary.

16         One of the things we need to -- we're trying to

17  coordinate is the timing of the completion of this transaction

18  along with the activities that the company would then, I

19  imagine -- they'd be involved in as we move forward to moving

20  towards the effective date of a plan should the plan that we

21  have filed be confirmed by the Court at the confirmation

22  hearing which begins on January 17th.

23         Your Honor, as I indicated, we have reviewed this

24  transaction with both our statutory committees.  I believe the

25  transaction is supported by both committees.  We had also

19

1    reviewed these matters clearly with the UAW and with General

2    Motors, who have reaffirmed to the debtors as recently as

3    yesterday that they are supportive of moving forward with a

4    Platinum entity as the stalking horse and with these bidding

5    procedures.

6         I think all four of those parties, the two statutory

7    committees, General Motors and the UAW -- I won't speak for the

8    UAW because -- and that's in a specific question but at least

9    the other three entities -- I think all of us would like to see

10   a robust auction process here, and if there's more value to be

11   obtained, then that is certainly value that we'd like to, for

12   the estate.

13        I would note the way in which this particular

14   transaction is structured.  The first sixty million or so of

15   additional value would go exclusively to General Motors in

16   reduction of its obligations it's agreed to fund on behalf of

17   the debtors, and therefore we have paid particular attention to

18   General Motors' views on these issues.  Given the amount of

19   financial support they are lending to this transaction, there

20   wouldn't be anything available for the estate generally other

21   than General Motors, and I'm not in any way diminishing the

22   opportunity to reduce the amount of payments GM has proposed to

23   make here.  But there wouldn't be value to anyone else unless

24   the competing bids were well in excess of the sixty million

25   dollars.

20

1          As I indicated, Your Honor, the only --

2          THE COURT:  Well, but there is a -- the breakup fee

3    gets paid, though.

4          MR. BUTLER:  Yes, that's right, so it's 65, so it'd

5    need to be actually in excess of 65.5 million dollars.

6          THE COURT:  Okay.

7          MR. BUTLER:  So I had said in excess of sixty

8    million.

9          THE COURT:  Okay.

10         MR. BUTLER:  Your Honor, the only response we have

11   filed to this is a response of Steering Holding, LLC, an

12   unsuccessful stalking horse bidder who filed a response at

13   docket number 11480.  In that response, they included an offer

14   that they had not previously made to the company.  When the

15   company saw the filing, the company evaluated the offer, as it

16   indicated, in connection with various of the factors it took

17   into consideration.  It consulted with both the UAW and General

18   Motors who, after reviewing the filing made by Steering

19   Holding, LLC, reaffirmed their support of moving forward with

20   the Steering Solutions stalking horse bid.  And based on the

21   direct feedback from the UAW and General Motors and the

22   debtors' consideration of all the other factors, we concluded

23   that we would, in the exercise of our fiduciary

24   responsibilities, continue to move forward and support this

25   transaction, which we do here today, as we indicated we did in

21

1   our omnibus reply that we filed yesterday afternoon.

2         THE COURT:  Let me make sure I understand what you

3   just said about GM's response.  In the TFA, GM says that --

4   they confirm that they would consent to the Platinum agreement,

5   and they also say that they also consent to the bidding

6   process.  However, the ultimate buyer other than Platinum, they

7   reserve their rights whether to consent to or not.  And I take

8   it from what you just said that that's their position today as

9   well, that they haven't added, for example, Sun to the list

10  that they have already consented to.

11        MR. BUTLER:  That's correct.  Mr. Lemons is here on

12  behalf of GM.

13        THE COURT:  Okay.

14        MR. LEMONS:  Good morning, Your Honor.  Robert Lemons

15  from Weil Gotshal on behalf of General Motors.  That's correct,

16  Your Honor.  At this point, GM has only consented to Platinum,

17  and as Mr. Butler correctly stated, supports moving forward

18  with Platinum as the stalking horse bidder.  GM is, however,

19  you know, desirous of having a robust auction process and will

20  speak with Sun or any other potential or interested bidder

21  leading up to the auction to determine whether GM would consent

22  to them as a substitute purchaser.

23        THE COURT:  Okay.  Thank you.  All right.

24        MR. BUTLER:  So, Your Honor, that would be our

25  presentation.  There are -- in connection and in support of

22

1    this motion, there are ten exhibits that we have prepared.  One

2    is Mr. Sheehan's highly confidential declaration, Exhibit 1.

3    Exhibits 2 and 3 are the agreements.  Exhibits 4 through 9 are

4    the court documents.  And Exhibit 10 is the affidavit of

5    service in connection with this matter.  I'd move the admission

6    of those documents.

7    (Mr. Sheehan's highly confidential declaration was hereby

8    received as Debtor's Exhibit 1 for identification, as of this

9    date.)

10   (Agreements were hereby received as Debtor's Exhibits 2 and 3

11   for identification, as of this date.)

12   (Court documents were hereby received as Debtor's Exhibits 4

13   through 9 for identification, as of this date.)

14   (Affidavit of service was hereby received as Debtor's Exhibit

15   10 for identification, as of this date.)

16             THE COURT:  Okay.  Does anyone their admission?  Does

17   anyone want to cross-examine Mr. Sheehan on his affidavit?

18   Okay.

19             MR. BUTLER:  Your Honor, that would be our

20   presentation subject to any comments Sun's counsel wants to

21   make on the record.

22             THE COURT:  There was also an affidavit submitted by

23   a representative of Platinum but I didn't hear that in your

24   list.

25             MR. BUTLER:  Oh, I'm sorry.  There was a separate

23

1  affidavit by Platinum.  I think they submitted -- they filed

2  that separately, Your Honor --

3           THE COURT:  Separately.  Okay.

4           MR. BUTLER:  -- and I should -- as a matter of the

5  record, and I appreciate that, they did file that separate and

6  I would move that affidavit into evidence as well subject to

7  cross-examination.

8  (Affidavit by Platinum was hereby received as Debtor's Exhibit

9  11 for identification, as of this date.)

10          THE COURT:  All right.  Does anyone want to cross-

11 examine Platinum's representative on that?  All right.  So

12 that'll be admitted too.

13          MR. BUTLER:  And that would be Exhibit number 11,

14 Your Honor.

15          THE COURT:  Okay.  Ms. Ceccotti, do you have --

16          MS. CECCOTTI:  Yes.  Good morning, Your Honor.

17 Babette Ceccotti for the UAW.  Just to follow up and confirm

18 Mr. Butler's statements for the record, I would like the -- UAW

19 would like the Court to know that the Platinum group has

20 invested considerable time in talking to the union about the

21 future of the facilities, something that they view very

22 favorably.  They have become very comfortable with Platinum as

23 a prospective purchaser and wishes to register their full

24 support for proceeding with Platinum as the stalking horse

25 bidder.

24

1          THE COURT:  Okay.  But the auction process going

2   forward is not an empty exercise.  The union's still willing to

3   speak with qualified bidders?

4          MS. CECCOTTI:  Union -- I'm sorry.  The UAW certainly

5   understands that there's an auction process.  They've been down

6   this road before and I believe the bidding procedures

7   appropriately reflect that there are matters that certainly

8   would have to be discussed with the union.

9          THE COURT:  Okay.

10          MR. HERMAN:  Good morning, Your Honor.

11          THE COURT:  Good morning.

12          MR. HERMAN:  Neil Herman from Morgan Lewis and

13   Bockius on behalf of Sun Capital.  Your Honor, Sun Capital is a

14   large private equity fund.  It's familiar with the business,

15   familiar with the documents, familiar with the issues and, of

16   course, familiar with the auto business.  Sun, in fact, owns

17   numerous auto suppliers.  Sun also signed a confidentiality

18   agreement over a year ago and spent over a year working on this

19   matter.  You have an affidavit that was submitted by Platinum

20   showing how much time and effort they spent on the case.  I

21   think it's undisputed that my client also spent a significant

22   amount of time and effort on the case.  We've spoken and met

23   with management, spoken and met with GM, spoken with the

24   unions.  We also filed a prior bid and we also filed a bid

25   attached to our exhibit.

25

1        So, in terms of time and effort that people have put

2   in, I think we're on a fairly even playing field, but most

3   importantly, Your Honor, my client has filed a piece of paper

4   that attached the same asset purchase agreement as Platinum,

5   blacklined to show changes.  The only changes that were made

6   were ten million dollars more in cash to the estate at the

7   closing, a reduction in the breakup fee by three million and a

8   reduction in the expense reimbursement by a million.  When I

9   add that up, that's a fourteen million dollar swing in the

10  bids; everything else is exactly apples to apples.  We also

11  filed yesterday bidding procedures that were blacklined and a

12  bidding procedures order that was blacklined.  The sole change

13  was the name of the stalking horse.

14       We are adopting the identical timeline, the identical

15  process, the identical documents, so the only thing that's

16  different is the cash.  In our view, the debtors' business

17  judgment, which normally is the test for today, should not be

18  given much weight because the only thing that's different is

19  the purchase price, and Your Honor is in a position to evaluate

20  the purchase price just as much as the debtors' management is.

21       Your Honor, if I could just address the standing

22  issue.  I know that that's a key issue for the debtor; they've

23  mentioned it in their papers and they've mentioned it today.

24  On the standing issue, I have several responses.  The first is

25  that, on page 47 of the debtors' emergency motion, it says that

26

1   the debtors have served the master service list, everyone who

2   filed the notice of appearance, and quote, "all entities known

3   to have expressed an interest in a transaction with respect to

4   the purchase assets during the past fourteen months" unquote.

5   In fact, they served Morgan Lewis, counsel for Sun, and they

6   served Sun.

7        Your Honor, I got invited to this party by the

8   debtor; Jack Butler sent me an invitation.  I'm here to speak

9   at their invitation; they served us.  They boast about it in

10  their papers.  So, under the doctrines of waiver, estoppel and

11  issue preclusion, I find it hard to believe that, after saying

12  they've served all known parties with the motion to talk about

13  the bid procedures, we can't even be heard.

14       On the second point, Your Honor, the debtors' case

15  law is easily distinguishable.  All of the cases they cite are

16  disgruntled bidders after an auction and after voluntarily

17  participating and they lose, then they complain about the

18  debtors' business judgment or the process.  Here, this is the

19  bid procedures hearing.  We're here to talk about what

20  protections to give the stalking horse and what procedures to

21  use.  Those directly affect me as a bidder at the auction.  I

22  am clearly in what Judge Walsh has called the zone of interest

23  to be protected.  At a bidding procedures hearing, in fact,

24  Judge Walsh has said that it's the Court's duty to listen to

25  bidders and to protect bidders and their interest so that the

27

1  rules of the game are fair and there's an appearance of

2  fairness.

3  So I can certainly be here today to be heard on the

4  issue of what the rules are that are going to affect me at the

5  action.  Yes, after the auction, if I lose, I voluntarily

6  participate, I can't come in here and complain about it.  But

7  the auction hasn't happened yet.  We're talking about how much

8  money the stalking horse is going to have to get as a breakup

9  fee and expense reimbursement, which comes ahead of my client

10  at the auction.  We're talking about the rules that are going

11  to be imposed on me as a bidder.  I clearly have standing; I'm

12  within the zone of interests.

13  Third, Your Honor, this is bankruptcy; there's no

14  jury here.  You can easily weigh my arguments and ultimately

15  decide to give them whatever weight you decide or to reject

16  them out of hand.  But I can at least speak today, in my view,

17  and you shouldn't attempt to just close the door in our face.

18  With respect to the actual merits, Your Honor, what I

19  have heard are really only two arguments on the merits.  It

20  seems to me the debtors' entire argument comes out to standing,

21  but they have two other minor arguments that they suggest; the

22  first is the risk.  The risk they mention is that GM has not

23  consented to my client.  Well, my client spoke yesterday with

24  GM's businesspeople.  I'm glad that their lawyer is here today

25  but their businesspeople asked us point-blank would we adopt

28

1   the identical supply agreement as Platinum.  That was the only

2   issue of concern and we affirmatively said Sun Capital will

3   adopt the identical supply agreement as Platinum.

4            So it is my understanding that GM is comfortable with

5   both Platinum and Sun Capital, and the attempt to spin it that

6   they are not, I believe, is incorrect.

7            THE COURT:  Well, but their lawyer just said that

8   they haven't confirmed that --

9            MR. HERMAN:  Yeah, Your Honor, if they have a

10  businessperson here, we'd be more than happy to put them on the

11  stand for five minutes.

12           THE COURT:  The lawyer is authorized to speak for his

13  client.  There's a difference between your report about what

14  was said in a meeting as evidence and what a lawyer's been

15  instructed to say by his client.

16           MR. HERMAN:  Your Honor, I also have with me today

17  representatives of Sun Capital who spoke with GM and were told

18  that GM -- by GM that they were comfortable with Sun Capital.

19  So I have witnesses here if you'd like to hear that evidence.

20           MR. LEMONS:  Your Honor, I'll --

21           THE COURT:  But that's hearsay too.  I mean, I don't

22  think that would be --

23           MR. LEMONS:  I don't know if you need to hear a

24  reply, Your Honor, but I would just reaffirm what I was

25  instructed by my client to report to the Court earlier today,

29

1    which is not that my client has consented but that my client

2    will continue to work with Sun or any other interested bidder

3    to see if my client would consent leading up to the auction.

4         THE COURT:  Okay.

5         MR. HERMAN:  And finally, Your Honor, my client has a

6    direct pecuniary interest in what happens here today.  If we

7    give Platinum a 5.5 breakup fee and a 2 million dollar expense

8    reimbursement, that means that at every single round of the

9    auction --

10        THE COURT:  No, I understand.

11        MR. HERMAN:  -- my client is 7.5 million behind.

12   Now, normally that would not be a problem but they are getting

13   that huge multimillion dollar windfall in exchange for a one

14   dollar cash purchase price.  My client is willing to do the

15   same thing for half that cost and for a ten million dollar

16   purchase price.  We think the debtors' business judgment is

17   just simply wrong here.

18        Also, Your Honor, if we're going to just say that

19   this all about comfort level with Platinum, then we should stop

20   pretending that this is some sort of public auction and call it

21   what it is; it's a private sale to Platinum and no one else, no

22   matter what the bid (sic) is going to be entitled to bid.

23        So if comfort is such a valuable asset, they should

24   tell us what it's worth or just call it a private sale, but if

25   it's going to be a public auction and our bid is exactly the

30

1    same as theirs but it's fourteen million dollars different when

2    you add up all the cash and finish their expenses, then that

3    such carry the day.  Now, Platinum is not prejudiced --

4         THE COURT:  But don't the bidding procedures

5    expressly recognize the role of GM and the unions?  It's not

6    just a cash bid bidding procedure.

7         MR. HERMAN:  Your Honor, I'm telling you that my

8    client has told me that they have the support of GM; that's all

9    I can tell you.

10        THE COURT:  Okay.

11        MR. BUTLER:  Your Honor, our response to the

12   argument -- just let me go to the substance of the argument.  I

13   find these discussions at this point in the process kind of

14   awkward because we, in standing up and opposing Sun's objection

15   today, don't intend, first of all, to denigrate Sun Capital,

16   and second, we hope that they will participate in the auction

17   process.  So this is not, from the debtors' perspective,

18   construed as an attack against Sun.

19        Having said that, the facts are that the debtors have

20   a business judgment to exercise here and we've done it in two

21   respects.  We considered a variety of factors when we got their

22   offer and evaluated very carefully the current views of both

23   General Motors and the UAW.  You've heard them in the room

24   today represented by their counsel.  They're totally consistent

25   with what the debtors were told and were considered by debtors'

31

1   management as we evaluated, as our fiduciary duties required

2   when unsolicited bids are submitted to the company, whether

3   submitted at any time, including in a response filed to the

4   Court.  And we have done that and we believe that it's in the

5   debtors' interest and the estate's interest to move forward

6   with the process and with the Platinum entity as the stalking

7   horse.

8           I would point out to Your Honor that there is no

9   creditor in this case and no equity holder in this case who

10  objects to that business determination by the debtors, and it

11  has the affirmative support of General Motors and the UAW, the

12  two folks who are most directly implicated in the bidding

13  procedures, as Your Honor has outlined.

14          Second, I also would just point out, and it's covered

15  in the declaration, and that is that Sun is not new to the

16  scene here, as has been acknowledged.  They have been involved

17  during this process, and at the end of the day, they had issues

18  that caused them to put their pens down and not complete the

19  transaction, and it is what it is.  I mean, they ultimately --

20  you know, my view is from sort of an integrity of the bidding

21  procedures process.  There was a robust marketing process here;

22  it involved over ninety entities.

23          At the end of the day, the process that reached a

24  transaction in which we had a comfort from UAW and comfort from

25  GM at the stalking horse level, I point that out, at the

32

1    stalking horse level to move forward, is with these entities.

2    Our hope is that Sun, if they have a better transaction, will

3    bid it and will be able to obtain the support of the UAW and

4    General Motors during the auction process.  We also hope if

5    there's anyone else among the other ninety entities that they

6    will do the same.

7           But here today, the debtors are firmly resolved,

8    Your Honor, that based on our review of all of the applicable

9    factors, that the appropriate business judgment here is to move

10   forward with the disposition of this transaction as we

11   proposed.

12          And I would say one last thing.  There's a lot more

13   at stake here than a dollar.  This is a very complex

14   transaction for the most significant important asset the

15   company is not continuing with as part of its strategic plan.

16   Steering is a strategic asset for others.  It is not a

17   strategic asset for Delphi but it's a good asset, and

18   ultimately we want to see that asset go forward.  We want to

19   see employees continue to be employed.  We want it to have the

20   support of the union and of General Motors, who needs to

21   provide a long term supply agreement, and there is an enormous

22   value to the company's reorganization in having this

23   transaction completed and having Steering, with its thousands

24   of employees, in a new home with a new owner that is supported

25   by the UAW and General Motors.

33

1        So there's a whole lot more at stake here in the

2   debtors' reorganization than a dollar, and the company believes

3   that we are on the right course here to move forward to a

4   bidding procedures -- or to an auction process.  We'd ask

5   Your Honor that you deny the request by Sun and that you enter

6   the relief that the debtors are seeking here so we can move

7   forward with the auction process at which we hope Sun will

8   participate.

9        THE COURT:  Okay.

10       MR. HERMAN:  Your Honor, if I could just be given a

11  thirty second reply.  It seems to me that most of the argument

12  that we have just heard is sale hearing arguments.  The limited

13  issue today is that the debtor has the burden of proof.

14  Regardless of whether anybody objects, the debtor has the

15  burden of proof of showing that a seven and a half million

16  dollar breakup fee and expense reimbursement is reasonable

17  under the circumstances in exchange for the commitment of a one

18  million dollar cash purchase price plus the assumption of debt.

19  I have not heard any evidence on that point and, in our view,

20  that tips the scales too high in their favor, and the breakup

21  fee and expense reimbursements should be reduced substantially.

22       MR. WARNER:  Your Honor, if I can just be heard.  I'm

23  Michael Warner with Warner Stevens.  I'm conflicts counsel to

24  the committee -- the creditors committee.  Committee supports

25  the debtors' motion and supports the proposed bidding

34

1   procedures.  We're pleased with the results that the debtor has

2   obtained and we'd like to see it go forward.  With respect to

3   Sun, we hope they show up at the auction.

4        THE COURT:  Okay.  All right.  I have before me the

5   first phase of the debtors' motion for approval of a proposed

6   transaction involving the sale of its steering and halfshaft

7   business in a related entry into a transaction facilitation

8   agreement with General Motors, the primary customer of that

9   business.

10       This aspect of the motion seeks approval of bidding

11  procedures and related notices as well as granting certain bid

12  protections to the entity that the debtors, after a lengthy

13  investment banking process, have chosen as their stalking horse

14  for the transaction, Platinum.

15       The relief sought today is unopposed by any creditor

16  or shareholder.  It is objected to, however, by a competing

17  bidder, Sun.  The debtor has responded to that objection on two

18  grounds and I'll discuss them in order.  The first is that as a

19  mere competing bidder, Sun lacks standing to object to the

20  relief sought today.  The second is that as an objective,

21  qualitative matter, the basis for Sun's objection lacks merit,

22  i.e., that it's a good exercise of the business judgment of the

23  debtors to proceed with the relief sought today to lock in

24  Platinum as a stalking horse for the relatively modest price of

25  the bidding protections rather than accept Sun's alternative

35

1    proposal, which was made in its objection.

2          As far as the standing objection is concerned, the

3    legal standing of a competing bidder to object to bidding

4    procedures and bid protections is somewhat ambiguous.  Clearly,

5    when a debtor seeks relief out of the ordinary course in this

6    context, even though it is anticipating an auction down the

7    road, the motion for approval of bidding procedures and breakup

8    fees may turn itself into an auction because the Court needs to

9    approve the request, the request needs to meet the business

10   judgment standard and, if there is truly a higher and better

11   proposal that comes to light at the hearing on bidding

12   procedures, the debtors' business judgment needs to be

13   reevaluated.

14         So in that sense, obviously the Court and the parties

15   in interest listen to a competing bidder when it makes a

16   proposal that it contends is higher and better.  And we'll

17   permit that bidder, obviously, to speak, and that's reflected

18   by the fact that the debtors and the committees have considered

19   the proposal that was made by Sun.

20         In addition, it's clear to me that, where bidding

21   procedures adversely affect the ability of another bidder, an

22   outside bidder, not the stalking horse, to compete and/or are

23   unfair or perceived to be unfair, the competing bidders have

24   legal standing to be heard as well as serving as a potential

25   data point.  Thus, for example, if the bidding procedures

36

1    required prospective bidders to post a substantially higher

2    deposit than the current bidder or limited their ability to

3    conduct due diligence so that it set up an uneven playing

4    field, I believe that a prospective bidder would have standing

5    to object to proposed bidding procedures.

6              This proposal is -- or this objection, however, is

7    somewhat different than that.  It questions the debtors'

8    business judgment about whether to accept one proposal over

9    another.  Ultimately, that business judgment is something

10   that's exercised first by the debtor, then by those who have an

11   economic stake in the debtors' reorganization, i.e., the

12   creditors and shareholders, and ultimately by the Court.

13             I have serious questions whether, in that context, a

14   bidder has legal standing, and that goes not only for the

15   hearing before me but more importantly in respect of any appeal

16   to question the debtors' business judgment, as opposed to

17   serving as a data point for those who properly exercise

18   business judgment to consider in whether they want to proceed

19   with what they had noticed for approval.

20             So I believe as a legal matter, as opposed to as a

21   matter of informing the Court's judgment, Sun actually lacks

22   standing to make this type of objection.  However, having heard

23   their proposal, I need to evaluate, as have the debtors and the

24   committees, whether in light of that proposal the debtors are

25   properly exercising their business judgment in connection with

37

1    the relief that's sought today.

2          So I've concluded that they have and the reason is, I

3    believe, fairly simple.  It's argued by Sun that there is no

4    difference between its proposal and Platinum's, except that

5    Sun's proposal provides for more cash to the debtors' estate.

6    That is, it increases the amount of cash that the buyer is

7    providing and, in addition, reduces the amount of the bidding

8    protections so that more of a higher and better bid at an

9    auction, if one would ensue, would go to the debtors' estate in

10   the first instance, as opposed to the losing stalking horse.

11         However, I do not believe that is a fair comparison

12   of the two proposals.  That is because it's clear that the vast

13   bulk of consideration in this transaction is coming through the

14   transaction facilitation agreement with GM.  In addition, the

15   debtors acknowledge that the UAW has a significant say over

16   their ability, the debtors' ability, to transfer these assets

17   in the transaction.

18         It is clear from today's record that Platinum has the

19   support as a buyer here of GM and the UAW; that's made clear in

20   writing in the transaction facilitation agreement pursuant to

21   which GM consents to Steering Solutions and its affiliates,

22   i.e., Platinum, as the purchaser in connection with the

23   transaction, and GM's reservation of rights in the same

24   paragraph, paragraph 2, with regard to its consent to any other

25   bidder.

38

1      GM's counsel, clearly aware of the importance of this

2   issue, and I'll note that after a certain level GM is the prime

3   beneficiary of an auction, has, after speaking with his client,

4   confirmed to the Court that that is the state of play today as

5   well, i.e., GM is not prepared today to include not only

6   Platinum in paragraph 2 but also Sun.  Rather, it's reserving

7   its rights as to Sun, although it encourages Sun to reach out

8   to it and to be in position to bid.

9      The value of the GM TFA is set forth in detail in

10  paragraph 34 of the motion, and in my view it's far superior to

11  the increased value that Sun has put on the table in its offer.

12  And while I hope that GM will become as comfortable with Sun as

13  it is currently with Platinum, the fact that it is not prepared

14  to say so today outweighs the additional consideration that Sun

15  has put in its offer.

16      Consequently, given the importance of this

17  transaction and the value ascribed to it in total, which

18  includes the value brought to it by GM, I believe the debtors

19  are properly exercising their business judgment to agree to the

20  bid protections in the form of a breakup fee and expense

21  reimbursement as set forth in the amended order that was

22  proposed.

23      As a percentage of the total transaction value, those

24  protections are reasonable and customary in this district and

25  elsewhere, and in light of the certainty that the Platinum

39

1   transaction has as compared to the remaining uncertainty that

2   the Sun proposal has, it's a valid exercise of the debtors'

3   business judgment to lock in Platinum as its stalking horse.

4           Clearly, any well advised buyer here, and I certainly

5   include Sun within that category, will have done, in addition

6   to their due diligence on their business, their due diligence

7   with GM and the unions.  And I trust that, consistent with the

8   representations made to me today by both the union and GM, they

9   will be receptive to a good faith proposal by not only Sun but

10  other prospective bidders as well, and that by the time of the

11  auction this will be indeed an apples to apples auction where

12  the other conditions that I think are critical here, i.e., GM

13  and union support, will have already been nailed down.  But

14  that's not the case today and that's why the debtors' motion

15  should be granted.

16          MR. BUTLER:  Thank you, Your Honor.  Your Honor, item

17  number 7 on the agenda, which is the last item on today's

18  agenda --

19          MR. HERMAN:  Your Honor, if I could just ask that Sun

20  be excused.  We're not involved in any of the remaining matter.

21          THE COURT:  Oh, that's fine.  Sure.

22          MR. HERMAN:  Thank you.

23          THE COURT:  Sure.

24          MR. BUTLER:  Your Honor, item number 7 on today's

25  agenda is the debtors' motion for default judgment against

40

1    Furukawa.  This is on status.  Mr. Berger's handling this

2    matter for the debtors.

3            THE COURT:  Okay.

4            MR. BERGER:  Good morning, Judge.

5            THE COURT:  Good morning.

6            MR. BERGER:  Neil Berger, Togut Segal & Segal.  On

7    Your Honor's agenda is the default application by the debtors,

8    Furukawa, and all the Furukawa matters, including that

9    application, Furukawa's response, a motion for a status

10   conference and the motion to dismiss, all related, in our view.

11   I neglected to add to the agenda letter, although Your Honor

12   ordered it -- is a status conference we confirmed and assured

13   counsel from Furukawa that this would serve also as a status

14   conference, and Furukawa is represented here today.

15           Your Honor did just so order our stipulation which

16   provides that the proceeding on the claim objection in the

17   affirmative claim for relief would proceed in this court.

18   There is a month by month discovery schedule for document

19   production, depositions and so on.  Furukawa has witnesses that

20   it's going to bring stateside from Japan.  There are some

21   translation issues that we're going to work through, both as to

22   testimony and to document production.  Delphi is eager to get

23   to the substance of this and I think Furukawa now is at the

24   table and will be able to do that.

25           Your Honor scheduled an April 4 final pretrial

41

1    conference.  Along the way, we will continue to explore ways to

2    try to resolve this.  Beyond that, I don't know that there's

3    much more to report other than we are moving forward.

4            THE COURT:  The stipulation resolved the default

5    issue?

6            MR. BERGER:  In my view, it did.  Mr. Connolly is

7    standing behind me.  I hope it also resolved the dismissal

8    application as well.  I'm waiting to hear from his client.

9            THE COURT:  Okay.  All right.  So really there's not

10   much to -- I mean, there's nothing really to report today.  Was

11   this just scheduled in case I didn't sign the stipulation?

12           MR. BERGER:  The stipulation was so ordered when I

13   was out of the office, Your Honor.

14           THE COURT:  Okay.  All right.

15           MR. BERGER:  Here I am today.

16           THE COURT:  Okay.

17           MR. CONNOLLY:  And, Your Honor, we had had a

18   conver -- Your Honor, Dennis Connolly here on behalf of the

19   Furukawa entities.  Good morning.

20           THE COURT:  Good morning.

21           MR. CONNOLLY:  We had had conversations with

22   Mr. Berger about the stipulation and an attempt to try and get

23   past some of the procedural wrangling that I think has been

24   evident in the case, and obviously Furukawa's interest is in

25   moving the matter forward.  I did want to report to the Court

42

1   that we are engaging in discovery now.  It is a fairly

2   aggressive schedule.  We intend on keeping that as best we can.

3   In our third party document, production request in particular

4   to GM that we may have to deal with, and in particular we

5   wanted to highlight for the Court that we do have Japanese

6   witnesses, so there will be some complexity, as Berger noted,

7   relative to translation issues, document translation and

8   witness issues, as well as the experts.

9         So what we wanted to do was to report to the Court.

10  I think the debtor wanted to have a status conference on this

11  matter as we began this process and we were happy to do that

12  and report to the Court where we are going forward.  And

13  obviously, if there are problems, we will bring them to the

14  Court's attention, or if we believe that there is any issue

15  with respect to moving the case forward, we will bring that to

16  the Court's attention as well.

17        THE COURT:  Okay.  This matter isn't specifically

18  governed by the claims procedures but I think it may be useful,

19  particularly if you have your clients coming here, to consider

20  the mediation aspect of those procedures.  That's been pretty

21  successful with other parties and I, you know, I'd recommend

22  you all consider that carefully.

23        MR. CONNOLLY:  Your Honor, I'll pass that along to my

24  clients.  I'm confident that they will be inclined to engage in

25  conversations to see if we cannot narrow the issues or resolve

43

1    the issues.

2            THE COURT:  My experience is that, particularly in

3    this context, particularly with clients such as yours, they may

4    well not like the US litigation system --

5            MR. CONNOLLY:  Indeed.

6            THE COURT:  -- and they prefer mediation so --

7            MR. CONNOLLY:  Indeed.  I think that's correct,

8    Your Honor.

9            THE COURT:  Okay.

10           MR. BERGER:  Your Honor, you mentioned mediation once

11   before, before Mr. Connolly's involvement.

12           THE COURT:  But that was when you guys were fighting

13   over withdrawal of the reference and everything else, so --

14           MR. BERGER:  I stand, if only to reiterate our desire

15   to --

16           THE COURT:  Okay.  Good.  Thank you.

17           MR. CONNOLLY:  Thank you, Your Honor.

18           MR. BERGER:  Thank you, Judge.

19           MR. BUTLER:  Your Honor, that completes the matters

20   on today's agenda.  Certain of the parties had asked for a

21   chambers conference with Your Honor to deal with some

22   confirmation matters.  So that we could consult with the

23   parties, would it please the Court if we could do that around

24   11:30 if the Court has an opportunity to do that at that time

25   or --

44

1          THE COURT:  Sure.  That's fine or sooner, if you

2    wish.

3          MR. BUTLER:  That's why I have a chance to consult

4    with the folks first.

5          THE COURT:  Okay.  That's fine.  Why don't you just

6    come down to my chambers, then, when you're ready?

7          MR. BUTLER:  Okay.  Thank you, Your Honor.

8          THE COURT:  Okay.

9        (Proceedings concluded: 11:06 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

45

# I N D E X

## E X H I B I T S

| DEBTOR'S | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Highly confidential declaration of Mr. Sheehan | 10 |
| 10 | Affidavit of service | 22 |
| 11 | Affidavit by Platinum | 23 |
| 2 through 5 | Basic motion documents | 10 |
| 6 through 11 | Notices with respect to executory contracts | 10 |
| 12 through 38 | Various objections | 10 |
| 39 | Objection of sale motion resolved with Siemens | 10 |

46

| | | |
|---|---|---|
| 40 through 42 | Affidavits | 11 |
| | relating to | |
| | service of all | |
| | matters in | |
| | connection with | |
| | hearing | |
| 1 | Mr. Sheehan's | 22 |
| | highly | |
| | confidential | |
| | declaration | |
| 2 and 3 | Agreement | 22 |
| 4 through 9 | Court documents | 22 |

RULINGS

| | Page | Line |
|---|---|---|
| Relief granted to debtor | 6 | 24 |
| to continue to add more | | |
| than one hundred claims | | |
| on a single omnibus | | |
| claims objection | | |
| Debtor's motion granted | 7 | 18 |
| to extend dates to file | | |
| plan of reorganization | | |
| and solicit acceptances | | |

47

1

2  Relief granted to debtor  14      22

3  as to forty-seven claims

4  Denial of request by Sun  39      3

5  granted and relief

6  sought by debtors granted

7  Debtor's previous          13      4

8  description of Entebbe

9  as a wholly owned

10  subsidiary of Renco

11  Group accepted

12

13

14

15

16

17

18

19

20

21

22

23

24

25

48

C E R T I F I C A T I O N


I, Clara Rubin, court approved transcriber, certify that the

foregoing is a correct transcript from the official electronic

sound recording of the proceedings in the above-entitled

matter.


_____  __December 21, 2007____

Signature of Transcriber          Date


___CLARA RUBIN  _____

typed or printed name