# EXHIBIT G

# MEMORANDUM AND AGREEMENT
# REGARDING PURCHASE AND SALE OF ASSETS

THIS AGREEMENT is made effective on December 1, 1999 (the "Effective Date"), between:

Seller: **NUTECH PLASTICS ENGINEERING, INC.**
Grand Blanc, Michigan ("Seller")

Lessor: **ABX LEASING, LTD.**, a Michigan Corporation ("Lessor")

Landlord: **JOHN COOPER**, with respect to Lennon Road Facility and Embury Road Facility; and **JOHNNY GLEN COOPER**, with respect to the Baldwin Road Facility (collectively, the "Landlord")

and

Purchaser: **RAPID PRODUCT TECHNOLOGIES, L.L.C.**
3511 Auburn Road, Auburn Hills, MI 48326 ("Purchaser").

## RECITALS

This agreement is made with reference to the following facts and circumstances, all of which are true and are incorporated into the agreement of the parties:

    A.    Seller owns and operates a certain plastic injecting molding business ("Business") with three leased facilities (all as described on Schedule A) situated in or around Grand Blanc, Michigan (the "Locations"), operated under the name of Nutech Plastics Engineering, Inc. at the Location.

    B.    Lessor owns all right, title and interest in certain Injection Molding Machines and CNC Machines with appraised value at $2,800,000, all as more particularly described on Schedule B (the "ABX Machines"). Lessor currently leases the ABX Machines to Seller, but has agreed to sell them to Purchaser pursuant to this Agreement and the Definitive Agreement.

    C.    Landlord owns the real estate and Buildings which comprise the Locations. Landlord currently leases the Locations to Seller, but has agreed to lease the

X:\JD\CLIENTS\STRATECH\NUTECH\MEMO2-AGR

1

030047-000552

Locations to Purchaser upon the terms and conditions contained in Schedule A attached hereto.

D. The parties have entered into preliminary discussions regarding the purchase by Purchaser and the sale by Seller of a part or all of the assets used in connection with the Business. Further, as a part of the sale, Seller agrees it shall assign to Purchaser all of its rights, but not obligations, associated with the ABX Machines and the Locations; and Lessor and Landlord have agreed to sell the ABX Machines and lease the Locations, respectively, to Purchaser.

E. The parties have agreed that this agreement will memorialize some of the more significant points that the parties intend to include in a "Definitive Agreement". Except as specifically provided otherwise in this agreement, the parties intend that this Agreement shall create binding obligations.

F. The parties contemplate that Purchaser shall take over operation of the Seller's Business effective December 1, 1999, despite the fact that the Definitive Agreements have not been signed.

## AGREEMENT OF THE PARTIES

The parties, based on the above recitals, agree to enter into one or more definitive purchase agreements (the "Definitive Agreements") containing the following provisions:

1. <u>Purchase and Sale of Assets.</u>

    1.1 <u>Purchased Assets.</u> Purchaser shall purchase all of Seller's assets, except the "Excluded Assets" (defined in paragraph 1.4), existing or used in connection with the Business, including, but not limited to, all of Seller's machinery and equipment, inventory, tools, supplies, the name "Nutech Plastics Engineering" Seller's designs, logos, artwork, trademarks, business records (excepting those records required by law to be retained by Seller), customer list, telephone listings, stationery, Seller owned removable trade fixtures, and goodwill pertaining to the Business (collectively referred to as the "Purchased Assets").

    1.2 <u>Additional Assets.</u> Seller, if requested by Purchaser, shall assign to Purchaser all of its right to, title to, and interest in all leases, licenses, permits, purchase orders, commitments, agreements, and other understandings or arrangements to which Seller is a party specifically including, without limitation, all of Seller's rights under or to the ABX

Machines and the Locations' leases; provided, however, that Purchaser shall assume all future liabilities and shall hold Seller free from any obligation due thereon arising after the Closing Date, excepting any liabilities existing on the Closing Date.

1.3 **Merchandise Inventory.** The purchase and sale includes the inventory of (a) salable merchandise, (b) raw materials; and (c) packaging and boxing materials (the "Inventory"). The purchase price of such Inventory (which price is not included in the purchase price for the Purchased Assets), shall be based on Seller's costs, shall be determined on a mutually agreeable date, and shall be paid by Purchaser to Seller at the Closing or on such terms as Seller and Purchaser approve. The purchase price for the Inventory as of November 20, 1999 is set forth on Schedule 1.3. Price adjustments shall be made at Closing to reconcile any additions or deletions of Inventory.

1.4 **Excluded Assets.** "Excluded Assets" means all of Seller's books of account (although copies of such books and records shall, on reasonable request made by representatives of Purchaser, be provided to Purchaser), claims for refunds of federal and state income taxes, cash, cash equivalents, any prepaid item, and trade, intercompany, and other accounts receivable.

1.5 **Covenant Not to Compete.** In connection with the purchase and sale of the Purchased Assets, Seller, its Directors, officers and shareholders and, if applicable, other specified individuals (the "Restricted Parties") shall enter into a covenant-not-to-compete agreement for a term of 24 months and within a radius of 100 miles from the Location. The Restricted Parties shall further agree to non-solicitation of Seller's employees and customers.

1.6 **Liabilities.** Unless otherwise agreed, the purchase and sale specifically excludes all liabilities of Seller ("Excluded Liabilities"). Any liabilities that are to be assumed by Purchaser shall be specifically set forth within the Purchase Agreement and shall be referred to as "Assumed Liabilities", as specified in Schedule 1.6.

2. **Assignment and Purchase and Sale of Leaseholds.**

2.1 **ABX Machines.** Purchaser shall purchase and Lessor shall sell, transfer and convey to Purchaser all right, title and interest to the ABX Machines free and clear of all claims, liabilities, liens and encumbrances of any nature whatsoever. At the Closing, Lessor and Purchaser shall enter into a six month lease in recordable form which further provides for the right to purchase the ABX Machines as stated herein. Lessor shall convey the ABX Machines pursuant to a Warranty Bill of Sale which contains appropriate covenants, representations and warranties as to lessor's ownership; ability to transfer the

X:\J:D\CLIENTS\STRATECH\NUTECH\NUBM02J.GR                3

030047-000554

ABX Machines; and the maintenance and performance history of the ABX Machines. Further, Lessor shall indemnify Purchaser for all liabilities arising on or prior to the Signing Date with respect to the ABX Machines as defined above. Purchaser shall pay Lessor the sum of $2,800,000 for the ABX Machines, which amount shall be due no later than six months from the Closing Date. Finally, in the event Purchaser does not pay Lessor the full $2,800,000 on the Closing Date, Purchaser shall make monthly payments to Lessor to cover Lessor's actual monthly obligation on the ABX Machines not to exceed $76,133 per month.

    2.2    **Locations.** Purchaser and Landlord agree that Purchaser shall lease the Locations from the Landlord pursuant to the terms outlined on Schedule A, which is attached hereto and hereby made a part of this Agreement. Purchaser acknowledges that certain leasehold improvements of the Locations are and shall remain the property of Landlord.

3.    **Purchase Price and Payment of Purchase Price.** The purchase price for the assets to be paid by Purchaser to Seller is the fair market value which has been determined by Purchaser and Seller to be $825,000 plus the Inventory Price. The purchase price, to be allocated as mutually agreed on by the parties, shall be paid as follows:

    3.1    **Payment at Signing/Down Payment.** Purchaser shall pay Three Hundred Thousand Dollars ($300,000.00) as a Down Payment with One Hundred Fifty Thousand ($150,000.00) Dollars to be held in escrow for a six month period to serve as an indemnity reserve in the event of a breach of Seller's covenants, representations and warranties contained in this Agreement or the Definitive Agreement, unless John Cooper has delivered a personal guaranty as specified in Section 4.1(c), in which case there shall be no escrow. Michigan National Bank - Corporate Trust Division or an agreeable third-party shall serve as escrow agent.

    3.2    **Payment to Michigan National Bank.** Purchaser shall pay Five Hundred Twenty-Five Thousand ($525,000.00) Dollars by wire transfer or certified funds to Michigan national Bank at the signing of this Agreement (the "Bank Payment"). The Bank Payment shall be made for the benefit of Seller, applied toward the Purchase Price and in exchange for UCC lien releases to be delivered at the signing.

    3.3    **Inventory Payment.** Purchaser shall pay the Inventory Payment at the Closing with appropriate adjustments for fluctuations.

X:\LJD\CLIENTS\STRATECH\NUTECH\MEMO2.AGR        4

4. **Representations and Conditions.**

   4.1 **Representations.** The parties shall make representations and warranties to each other as agreed by Purchaser and Seller, including appropriate representations and warranties regarding taxes, liens, title, and compliance with all notice requirements. Seller shall not change its normal course of doing business without notice to Purchaser. In addition, the other parties represent as follows:

   (a) John W. Mailey and Seller represent and agree that as a Material part of the asset sale and <u>included</u> in the purchase price they shall individually and jointly and severally transfer, assign and convey all right, title and interest in and to any and all intellectual property held in the name of, or in any manner owned by either John W. Mailey or Nu-Tech, or utilized in connection with the Business operations of Nu-Tech, or related to the existing Business (including, without limitation, all patents, improvements or derivative works of any nature, copyrights, trade marks and any trade secrets or similar property) to Purchaser upon signing (the "Intellectual Property").

   (b) John Cooper, individually and jointly and severally, on behalf of any of his companies (meaning any company in which he or any family members own collectively or individually more than 25%), represent and agree that as a material part of the asset sale and sale of the ABX Machines, and included in the purchase price thereof, they hereby waive any and all interest, claim or right whatsoever in and to the Intellectual Property described in this Agreement. They further agree to assign, convey and transfer any and all right, title or interest which may be discovered in their name associated in any way with the Intellectual Property.

   (c) Notwithstanding any other provision of this Agreement, John Cooper hereby agrees to personally and unconditionally guaranty any amounts claimed by Purchaser with respect to any indemnity obligations of Seller pursuant to this Agreement and/or the Definitive Agreement, related to the Purchased Assets (the "Guaranty"). John Cooper further agrees to deliver a document evidencing the Guaranty here made, on or prior to the Closing Date.

   4.2 **Conditions.** The parties shall agree to appropriate conditions, including approval of title and appraisals financing, as applicable, but in any event including the following material conditions:

X:\WDK\CLIENTS\STRATECH\NUTECH\MEMO2.AGR            5

030047-000556

(a) As of the Signing Date, Seller shall have maintained all current accounts, customers, contracts, purchase orders, requests for quotes and any other oral or written business opportunities;

(b) Seller shall have used its best efforts to secure the Stone Shield Business;

(c) Purchaser shall have negotiated and consummated a strategic growth plan with GM/Delphi satisfactory to Purchaser;

(d) Approval and/or consent for the deal shall have been obtained by Seller from John W. Malley; and

(e) 4 - 1500 Ton Machines would be relinquished by Delphi to Purchaser.

(f) All Assets shall be free and clear of all encumbrances of any nature.

4.3 <u>Broker</u>. Seller shall be responsible for payment of any broker commission relating to this agreement.

5. <u>Binding Contractual Obligations</u>. Notwithstanding any provisions to the contrary, the provisions of this paragraph shall be binding on each of the parties and are intended to cause contractual liability to arise.

5.1 <u>Confidentiality; Use of Information</u>.

A. As used in this agreement, *Information* includes information furnished to Purchaser and its agents or representatives (collectively, the "Representatives"), including attorneys and accountants, by Seller or any representatives of Seller or any party to this Agreement. The information Seller furnishes to Purchaser may include information that is nonpublic, confidential, or proprietary in nature.

B. The parties agree to use the Information solely in connection with the consummation of the transaction contemplated by this agreement and to transmit the Information only to its Representatives who need to know it. The parties shall at all times during the term of this agreement and thereafter hold any Information in strictest confidence. If the transactions contemplated by this agreement do not occur, the parties will return the Information to the appropriate party, without retaining any copies, except for any portion that consists of analysis, compilation, data, studies, or other documents prepared by Purchaser or its Representatives.

X:\JD\CLIENTS\STRATECH\NUTECH\MEMO2.AGR    6

030047-000557

5.2 **Access to Books and Records.** During the term of this Agreement, Seller shall afford Purchaser's officers, attorneys, accountants, and other authorized representatives free and full access, on reasonable notice and during normal business hours, to all management personnel, offices, properties, books, and records of Seller so that Purchaser may have a reasonable opportunity to make such investigation as it desires into the management, business, properties, and affairs of Seller. Seller shall furnish to Purchaser financial and operating data and other information, including legal documents, regarding Seller's business, that Purchaser reasonably requests.

5.3 **Nonsolicitation.** During the thirty (30) days after the effective date of this agreement, Seller will not (1) solicit from any outside sources acquisition proposals relating to Seller's assets or stock; (2) entertain or discuss any acquisition proposals from any unsolicited outside sources relating to Seller's assets or stock; or (3) disclose to any outside sources (other than in the ordinary course of business and other than to its attorneys, accountants, and investment advisers, or to Purchaser) any nonpublished information concerning Seller, its Business, and its financial condition.

6. **Closing Date.** This agreement shall begin on the Effective Date noted above. The parties agree to close the transactions contemplated by this Agreement no later than 5:00 p.m. on December 31, 1999 (the "Closing Date").

7. **Miscellaneous.**

    7.1 **Release of Additional Information.** Except as expressly set forth in this agreement, this agreement shall not be construed as an agreement by Seller to provide continuous information to Purchaser or to continue the release of information for any specific period.

    7.2 **Amendment.** This agreement cannot be modified except by a writing that is signed by the parties.

    7.3 **Benefit.** This agreement shall inure to the benefit of the parties and shall be binding on their heirs, legal representatives, and assigns.

    7.4 **Survival of Terms.** This agreement shall survive the Termination Date.

    7.5 **Governing Law.** This agreement shall be governed by the laws of the State of Michigan.

X:\JD\CLIENTS\STRATECH\NUTECH\MEMO2.AGR       7

030047-000558

The parties have signed this agreement with the "Effective Date" set forth on the first page.

**Seller:**

**NUTECH PLASTICS ENGINEERING, INC.**

Dated: _12-01-99_     By: _[signature]_
                        John W. Mailey
                        Its: President

**Purchaser:**

**RAPID PRODUCT TECHNOLOGIES, L.L.C.**

Dated: _____     By: _[signature]_
                        Manu Bhatia
                        Its: CEO

                        And
Dated: _12-01-99_    By: _[signature]_
                        Miguel A. Linares
                        Its: President

**Lessor:**

**ABX LEASING, LTD., a Michigan Corporation**

_[signature]_                By: _[signature]_
John W. Mailey, Individually and   John Cooper
on behalf of any affiliated individual   Its: President
or entity

                                **Landlord:**

_[signature]_                _[signature]_
John Cooper, Individually and on    John Cooper, Individually as Landlord
behalf of any affiliated Individual
or entity

                             _[signature]_
                             Johnny Glen Cooper, Individually as Landlord

X:\JD\CLIENTS\STRATECH\NUTECH\MEMO2.AGR          8

030047-000559

12/07/99 TUE 12:38 [TX/RX NO 7185]

## SCHEDULE A

| Facility Location | Description of Cost | Amount |
|---|---|---|
| Lennon Road, Flint<br>Sq. Ft. = 38,000 | Property Tax<br>Common Costs<br>Allocated Cost / Snow Removal<br>Lease Payment @ $6.84 per Sq. Ft.<br>per year ÷ 12 months | $ 2,363.35<br>$ 122.50<br>$ 37.50<br>$21,666.67 |
| | Total Monthly Payment | $24,190.02 |
| | Duration of Lease | Month to Month |

| Facility Location | Description of Cost | Amount |
|---|---|---|
| Embury Road<br>Sq. Ft = 24,947 | Property Tax<br>Common Costs<br>Allocated Cost / Snow Removal<br>Lease Payment @ $7.00 per Sq. Ft.<br>per year ÷ 12 months | $ 1,993.91<br>$ 296.00<br>$ 37.50<br>$14,552.42 |
| | Total Monthly Payment | $16,879.83 |
| | Duration of Lease | One year |

| Facility Location | Description of Cost | Amount |
|---|---|---|
| Baldwin Road | Payment | $ 4,500.00 |
| | Total Monthly Payment | $ 4,500.00 |
| | Duration of Lease | Month to Month |

X:\LJD\CLIENTS\STRATECH\AUTECH\MEMO2.AGR    9

030047-000560

## SCHEDULE B

## ABX MACHINES

\* See attached

# SHEFFERLY, SILVERMAN & MORRIS

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Joe DeVino | Phillip J. Shefferly, Esq. |
| COMPANY/FIRM: | DATE: |
| Rapid Products | December 1, 1999 |
| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
| 248-852-2660 | |
| TELEPHONE NUMBER: | |
| RE: | |
| John Cooper | |

☐ URGENT ☐ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY

THIS TRANSMISSION MAY INCLUDE CONFIDENTIAL AND/OR LEGALLY PRIVILEGED INFORMATION INTENDED FOR THE PERSON(S) NAMED ON THIS COVERSHEET. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE NOTIFY US IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETURN OF THE DOCUMENTS AT NO COST TO YOU. IF YOU DO NOT RECEIVE ALL PAGES OR HAVE A PROBLEM RECEIVING THIS TRANSMISSION, PLEASE CALL (248) 539-1330 AS SOON AS POSSIBLE. THANK YOU.

### NOTES/COMMENTS:

7115 ORCHARD LAKE ROAD, SUITE 500
WEST BLOOMFIELD, MICHIGAN 48322
TELEPHONE (248) 539-1330    FACSIMILE (248) 539-1355

030047-000562

## ABX LEASING

| Quantity | Machine | | Description/Serial Number | Location | Value |
|---|---|---|---|---|---|
| 1 | CMTT-50 Chilling System | | 3942A02/98-4 | 1 | |
| | | | 10hp Upgrade | | |
| | | | Cylinder Unloading Single Stage | | |
| 1 | CM185-11 | 1 | W12A029015 | 1 | |
| 1 | | | CM DD202 Dryer | | |
| 1 | | | CM CM-TT-1500 Tilt Table | | |
| 1 | | | CM MWC75 Water Temperature Controller | | |
| 1 | | | CM CML-LS-45 Loader | | |
| 1 | | | CM EOTC-100C Oil Temperature Controller | | |
| 1 | | | CM CMG912 Granulator | | |
| 1 | CM300-29 | 2 | W14A0195005 | 1 | |
| 1 | | | CM DD303 Dryer | | |
| 1 | | | CM CM-TT-1500 Tilt Table | | |
| 1 | | | CM MWC75 Water Temperature Controller | | |
| 1 | | | CM CML-LS-45 Loader | | |
| 1 | | | CM EOTC-100C Oil Temperature Controller | | |
| 1 | | | CM CMG912 Granulator | | |
| 1 | CM250-21 | 3 | H02A0497004 | 1 | |
| 1 | | | CAMAC 495-- Control | | |
| 1 | | | Nozzle Std | | |
| 1 | | | Short Stroke Slider Ring | | |
| 1 | | | Barrier Mixing Screw | | |
| 1 | | | Material Hopper | | |
| 1 | | | Sprue Break | | |
| 1 | | | Hydraulic Core Pull | | |
| 1 | | | PECI | | |
| 1 | | | Robot Interface | | |
| 1 | | | Power Factor Correction Capacitor | | |
| 1 | | | Two zone water manifold | | |
| 1 | | | Leveling Pads | | |
| 1 | | | Machine Voltage 480/3/60 | | |
| 1 | | | Closed Loop Feedthroat Control | | |
| 1 | | | Floppy Disk Drive | | |
| 1 | | | RJG Interface | | |
| 1 | | | Weigh Scale Interface | | |
| 2 | | | 480/3/60 Volt, 15 amp Receptacles w/plugs & breakers | | |
| 2 | | | Oil ports | | |
| 2 | | | MWC200 Water Temperature Controllers | 1 | |
| 1 | | | CML GT8 Loader | | |
| 1 | | | CM-TT-1500-600 Tilt Table | | |
| 1 | CMVSX 120-85.8 | 4 | S90A0387001 | 1 | |
| 1 | | | CAMAC VSX Control | | |
| 1 | | | Nozzle Std | | |
| 1 | | | Slider Ring | | |
| 1 | | | High Compression Nylon Screw | | |
| 1 | | | Material Hopper | | |
| 1 | | | Hydraulic Core Pull | | |
| 1 | | | Leveling Pads | | |
| 1 | | | Machine Voltage 460/3/60 | | |
| 1 | | | CML GT8 Loader | | |
| 2 | | | MFCH 75 Temperature Flow Controls | | |

030047-000563

## ABX LEASING

| Quantity | Machine | | Description/Serial Number | Location | Value |
|---|---|---|---|---|---|
| 1 | MH300-35 | S | H03A0498007 | 7 | |
| 1 | | | CAMAC 486+ Control | | |
| 1 | | | Nozzle: Std | | |
| 1 | | | Short Stroke Ejector Ring | | |
| 1 | | | High Compression Nylon Screw | | |
| 1 | | | Material Hopper | | |
| 1 | — | | Hydraulic Core Pull | | |
| 1 | | | Leveling Pad | | |
| 1 | | | Clamp & Ejector Motion Keylock Switch | | |
| 1 | | | Machine Voltage 460/3/60 | | |
| 1 | | | Robot Interface | | |
| 1 | | | One Stage Air Eject | | |
| 1 | | | 35 oz. Ultramax Barrel | | |
| 1 | | | 35 oz. LW1N30 Screw | | |
| 1 | | | 35 oz. Mallard Carbide Tip Assembly | | |
| 1 | | | 21 oz. Ultramax Barrel | | |
| 1 | | | 21 oz. LW1N30 Screw | | |
| 1 | | | 21 oz. Mallard Carbide Tip Assembly | | |
| 1 | | | 4" Nozzle Concentricity Alignment tool | | |
| 1 | | | MFCH100 Temperature Flow Controls | | |
| 2 | | | CM-TT-1500-900 Tilt Table | | |
| 1 | | | CML GT8 Loader | | |
| 1 | | | DD110 Dryer 3933A02/97-0 | | |
| 1 | | | DD110 Dryer voltage 460/1/60 & Floor Mtg Pkg 3933A02/97-144 | | |
| 1 | | | DD110 Dryer voltage 460/1/60 & Floor Mtg Pkg 3933A02/97-145 | | |
| 1 | E550-80 | 6 | W15A0197001 | 1 | |
| 1 | | | CAMAC 486+ Control | | |
| 1 | | | General Purpose Screw | | |
| 1 | | | 66lb. Material Hopper | | |
| 1 | | | Manual Mold Purge | | |
| 1 | | | Hydraulic Core Pull 15 | | |
| 1 | | | Hydraulic Mold Gate | | |
| 1 | | | Leveling Pads | | |
| 1 | | | Machine Voltage 460/3/60 | | |
| 1 | | | 60 oz. Ultramax Barrel | | |
| 1 | | | 60 oz. LW1N30 Feedrew | | |
| 1 | | | 60 oz. Mallard Ultrawear Screw Tip | | |
| 1 | | | 10" Nozzle | | |
| 1 | | | Tilt Table | | |
| 2 | | | MFCH-800 | | |
| 1 | | | GT-8 Loader | | |
| 1 | E550-80 | 7 | W15A0197002 | 1 | |
| 1 | | | CAMAC 486+ Control | | |
| 1 | | | Nozzle: Std | | |
| 1 | | | General Purpose Screw | | |
| 1 | | | 66lb. Material Hopper | | |
| 1 | | | Manual Mold Purge | | |
| 1 | | | Hydraulic Core Pull 15 | | |
| 1 | | | Hydraulic Mold Gate | | |
| 1 | | | Leveling Pads | | |
| 1 | | | 10 inch nozzle (2 piece Design) | | |
| 1 | | | Ultramax Barrel | | |

030047-000564

## ABX LEASING

| Quantity | Machine | Description/Serial Number | Location | Value |
|---|---|---|---|---|
| 1 | | 4 piece Zeiger 4-piece carbide ultra screw | | |
| | | Screw to be LW1N30 in place of standard | | |
| 2 | | MFCH300 Temperature Flow Controllers | | |
| 1 | | CM-TT-1500-900 Tilt Table | | |
| 1 | | CML GT8 Loader | | |
| 1 | Battenfeld BA4500/2800 | Serial #52,523 | 1 | |
| | | Leveling Pads | | |
| 2 | | Hydraulic Manifold speed & pressure setting analog controls | | |
| 1 | | Hydraulic valve gate circuit | | |
| 1 | | 2 piece Nickerson Nozzles | | |
| 1 | | Bimetallic barrel & Stellite Flighted Screw | | |
| 1 | Swap Cooler | | 1 | |
| 1 | | CM-PTS-1200 | | |
| 1 | | TC-178 Cooling Tower | | |
| 1 | | Air Vibrator Pkg | | |
| 1 | | CM-TT-1500-900 Floor Level Tilter Foot Control | | |
| 1 | | CM-TT-1500-900 Floor Level Tilter Foot Control | | |
| 1 | | Air Vibrator Pkg | | |
| 1 | 9 Okuma Crown-E - S/N 1099 | Includes: | 2 | |
| | | Cycle Time Reduction Function | | |
| | | Animation Simulation | | |
| | | Tool Life Management | | |
| | | Chuck Open/Close during Spindle Rotation | | |
| | | Tape Storage Capabilities (160M) | | |
| | | LAP 4 | | |
| 1 | 10 Okuma Crown-E - S/N 1020 | | 2 | |
| | | With OSP700L Control and the following: | | |
| | | Cycle Time Reduction | | |
| | | Animated Simulation | | |
| | | Tool Life Management | | |
| | Novatec Dryers | | 2 | |
| 5 | | DCS-25M 480V Hygro SSVL3 100# HPR | | |
| 1 | | DCS-50M 480V Hygro SS VL3 200# HPR | | |
| 1 | 11 EL85-2.97 | W10A0296008 | 2 | |
| 1 | | CAMAC 485+ Control | | |
| 1 | | Nozzle: STD | | |
| 1 | | Slider Ring | | |
| 1 | | General Purpose Screw | | |
| 1 | | Material Hopper | | |
| 1 | | Leveling Pad | | |
| 1 | | Machine Voltage 480/3/60 | | |
| 1 | 12 EL110-5 | W17A0291015 | 2 | |
| 1 | | CAMAC 485+ Control | | |
| 1 | | Nozzle: Std | | |
| 1 | | Slider Ring | | |
| 1 | | General Purpose Screw | | |
| 1 | | Material Hopper | | |
| 1 | | Two Stage Air Eject | | |
| 1 | | PECI | | |
| 1 | | Robot Interface | | |
| 1 | | Leveling Pad | | |
| 1 | | Machine Voltage 480/3/60 | | |

030047-000565

## ABX LEASING

| Quantity | Machine | Description/Serial Number | Location | Value |
|---|---|---|---|---|
| 1 | | Spring Mold | | |
| 1 | | CPM8V Screw in place of standard | | |
| 1 | | XALOY 800 Barrel in place of standard | | |
| 1 | | Enlarged Center Hole in Platen | | |
| 1 | | Melt Temperature Monitor with Setpoint | | |
| 1 | | Software Interface | | |
| 4 | | 460/3/60 Volt 30 amp Receptacles | | |
| 1 | | Manual Mold Purge | | |
| 1 | | Additional Detail Timer | | |
| 1 | | Offline Mold Data Storage | | |
| 5 | | DU50 Dryers, 100# hoppers | | |
| 5 | | MFC175 Temperature Flow Controls | | |
| 5 | | CM-TT-1500-900 Tilt Tables | | |
| 1 | EL110-S | W11A0194001 | 2 | |
| 1 | | CAMAC 486+ Control | | |
| 1 | | Nozzle: STD | | |
| 1 | | Slider Ring | | |
| 1 | | General Purpose Screw | | |
| 1 | | Material Hopper | | |
| 1 | | Leveling Pads | | |
| 1 | | Machine Voltage 460/3/60 | | |
| 1 | EL110-2.27 | W11A0188005 | 2 | |
| 1 | | CAMAC 486+ Control | | |
| 1 | | Nozzle: STD | | |
| 1 | | Slider Ring | | |
| 1 | | General Purpose Screw | | |
| 1 | | Material Hopper | | |
| 1 | | Leveling Pads | | |
| 1 | | Machine Voltage 460/3/60 | | |
| 1 | EL300 | W14A0195007 | 2 | |
| 1 | | CAMAC 486+ Control | | |
| 1 | | Nozzle: STD | | |
| 1 | | Slider Ring | | |
| 1 | | General Purpose Screw | | |
| 1 | | Material Hopper | | |
| 1 | | Screw Break | | |
| 1 | | PECI | | |
| 1 | | Robot Interface | | |
| 1 | | Leveling Pads | | |
| 1 | | Machine Voltage 460/3/60 | | |
| | | Spare Parts Order | | |
| 2 | | 2.87 oz Ultramax Barrels | | |
| 2 | | 7oz Ultramax Barrels | | |
| 1 | | 15oz Ultramax Barrel | | |
| 2 | | 7oz LW1N90 Feedscrews | | |
| 2 | | 2.87 oz LW1N90 Feedscrews | | |
| 1 | | 15oz LW1N90 Feedscrew | | |
| 2 | | 2.87 oz Mallard Carbide Screw Tips | | |
| 2 | | 7 oz Mallard Carbide Screw Tips | | |
| 1 | | 13 oz Mallard Carbide Screw Tips | | |
| 1 | | Core Pull (Signals Only) | | |
| 1 | | Closed Loop Control of Feed/Inject | | |

030047-000566

12/14/99 18:10 FAX @019/022
05-44481-rdd Doc 11756-7 Filed 01/07/08 Entered 01/07/08 19:26:42 Exhibit 21
Pg 17 of 20
DEC-07-1999 12:54
DEC.-01'99(WED) 15:25   SHEFFERLY, SILVERMAN           TEL:248 559 1355           P. 006
11/29/99  18:46   ☎810 257 2287      FAB ENG - EST                               ☒005

## ABX LEASING

| Quantity | Machine | Description/Serial Number | Location | Value |
|---|---|---|---|---|
| 1 | TC-175 Cooling Tower | 3941A02/98-13 | 3 | |
| 1 | | CM-PTS-1250 Serial #3941A01/98-14 | | |
| 1 | | Voltage 460/3/60 | | |
| 1 | | MFCF-75 Temp Control Unit | 3 | |
| 1 | | TT-1500-500 Tilt Table | 3 | |
| 1 | | DD-80 Dryer w/1000# Hopper, MC Blower | 1 | |
| 1 | | Mallard 3 pc tip assembly | 2 | |
| 1 | | Inquictemetric Ultramax 2.97 | 2 | |
| 1 | | LW1N302.97 oz Feedscrew | 2 | |
| 2 | | DD 110 Dryers | 2 | |
| 1 | 1/6 MM1600-292 | H34A0198001 | 3 | |

Location:
1 = Embury Rd
2 = Baldwin Rd
3 = Lonnon Rd

030047-000567

## SCHEDULE 1.3

## INVENTORY

1. Finished Inventory: $ 231,021.56
2. Raw Inventory: $ 138,556.77
3. Reground Inventory: $ 20,146.70
4. Non-Production/Packaging Materials: $ 122,274.66
5. Dunnage: $ 21,196.37

\* TBD at Closing.

X:\WDIGCLIENTS\STRATEC\MRJTECH\MEMO2.JGR        11

030047-000568

12/07/99  TUE 12:38  [TX/RX NO 7185]

DEC 14 '99 16:19                                                            PAGE.20

## SCHEDULE 1.6

## ASSUMED LIABILITIES

Only liabilities arising after December 1, 1999, arising out of the operation of the Business.

X:\LID\CLIENTS\STRATECHNU\TECH\MEMO2.AGR    12

030047-000569

| | |
|---|---|
| **RAPID PRODUCTS**<br>3511 AUBURN ROAD<br>AUBURN HILLS, MI 48326<br>(248) 852-1735 | **FRANKLIN BANK, N.A.**<br>SOUTHFIELD, MI 48034<br>74-7183/2724 |

12/1/99

PAY TO THE ORDER OF  Nu Tech Plastics Engineering, Inc.                $ **300,000.00

Three Hundred Thousand and 00/100***************************************

Nu Tech Plastics Engineering, Inc.
3018 Embury Road
Grand Blanc, MI 48439

MEMO  Purchase of Assets for NuTech

⑈009188⑈ ⑉272471836⑉ 055500421325⑈

---

| | |
|---|---|
| Cash in bank - Franklin | 300,000.00 |

| | | | |
|---|---|---|---|
| **RAPID PRODUCTS** | | | 91 |
| Nu Tech Plastics Engineering, Inc. | | 12/1/99 | |
| | | | 300,000.00 |

PAID RECORD

030047-000570

| | |
|---|---|
| Cash in bank - Franklin | 300,000.00 |