# EXHIBIT L

```
 1                  UNITED STATES BANKRUPTCY COURT
 2                   SOUTHERN DISTRICT OF NEW YORK
 3   In re:                          Chapter 11
 4   DELPHI CORPORATION, et al,      Case No. 05-44481 (RDD)
                                     (Jointly Administered)
 5                 Debtors.
                                   /
 6
 7
                        DEPOSITION OF TINA WEBER
 8
         Taken by Nu-Tech Plastics Engineering on the 14th day of
 9
         December, 2007, at 5725 Delphi Drive, Troy, Michigan, at
10
         1:00 p.m.
11
12
     APPEARANCES:
13
     For Nu-Tech Plastics      MS. SUSAN LEIGH BROWN (P41128)
14   Engineering:              Schwartz Law Firm
                               37887 West Twelve Mile Road, Suite A
15                             Farmington Hills, Michigan 48331
                               (248) 553-9400
16
     For the Debtor:           MR. NICK D. CAMPANARIO, ESQ.
17                             Skadden, Arps, Slate, Meagher
                               & Flom, LLP
18                             333 West Wacker Drive, Suite 2100
                               Chicago, Illinois 60606
19                             (312) 407-0700
20
     RECORDED BY:              Debbie J. Williams, CER 7981
21                             Certified Electronic Recorder
                               Network Reporting Corporation
22                             1-800-632-2720
23
24
25
```



05-44481-rdd    Doc 11757-12    Filed 01/07/08    Entered 01/07/08 20:33:17    Exhibit L
- Deposition Transcript of Tina Weber    Pg 3 of 15

IN RE: DELPHI CORPORATION, ET AL                                  DEPOSITION OF TINA WEBER

```
 1   Q      You know Trenia Patrick formerly known as Trenia Turner;
 2          correct?
 3   A      She was an employee, yes.
 4   Q      Did she report directly to you in 1998?
 5   A      Yes, she did.
 6   Q      And looking again at Exhibit B to your declaration, the
 7          purchase order?
 8   A      Uh-huh; yes.
 9   Q      Is this the type of purchase order that would have fallen
10          under your purview as a chemical commodities manager in
11          1998?
12   A      It looks like a standard requirements contract so it would
13          not come to me for any special exception.
14   Q      If there had been an exception is this the type of purchase
15          order that would have been within your bailiwick?  In other
16          words, does it fall within the chemical commodities section
17          as opposed to metallic or electrical?
18   A      Yes, it falls in chemical.
19   Q      Can you tell looking at this document -- again, I'm
20          referring to Exhibit B to your declaration -- who the buyer
21          for General Motors was for this PO?
22   A      Trenia Turner.
23   Q      And you mentioned that and as it says on the document itself
24          it's a requirements contract?
25   A      Correct.
```

```
 1   Q      Can you please tell me what your understanding of the
 2          meaning of the term "requirements contract" is?
 3   A      A requirement contract is a contract that's put into place
 4          to purchase outside material from a supplier based on our
 5          required needs for outside material.
 6   Q      Looking at that same purchase order again, can you tell me
 7          from the terms of the document itself what percentage if any
 8          of the customer's requirements were covered by this
 9          particular purchase order?
10   A      I believe that you're asking me the customer requirements.
11          I think that we would say the purchase material
12          requirements -- that approximately 100 percent and that
13          would be denoted on the 9 of 10 page.
14   Q      Okay. And we're here specifically about part number
15          25160694. That I believe appears -- is the last entry on
16          the page you've just referenced; correct?
17   A      Correct.
18   Q      Am I reading this purchase order correctly that -- at least
19          while this purchase order was in effect -- 100 percent of
20          the customer need for that part could be ordered from
21          Nu-Tech?
22   A      I would correct it's not the customer need, it is the
23          division's need. The purchaser -- 100 percent of the
24          purchaser's need would be bought.
25   Q      And who was the purchaser for purposes of this PO?
```

Page 11

05-44481-rdd    Doc 11757-12    Filed 01/07/08    Entered 01/07/08 20:33:17    Exhibit L
- Deposition Transcript of Tina Weber    Pg 5 of 15

IN RE: DELPHI CORPORATION, ET AL                                   DEPOSITION OF TINA WEBER

```
 1   A      It would have been Delphi -- or Automotive Components Group
 2          Worldwide General Motors.
 3   Q      Okay. And where do you see that on the document? Just at
 4          the top of the --
 5   A      Top of the page.
 6   Q      Okay.
 7   A      And I referenced 8 of 10 as an example.
 8   Q      I see. Was Automotive Components Group Worldwide part of
 9          the Delphi division of General Motors in June of '98?
10   A      No, I believe that it was called "Automotive Components
11          Group of General Motors" and the name was changed in late
12          '98 to "Delphi."
13   Q      To "Delphi Automotive Systems"?
14   A      I'd have to check. I don't know for certain.
15   Q      Do you know whether the purchase order that we're looking
16          at, 9C941, indicates that only Nu-Tech will be asked to
17          produce the Automotive Components Group Worldwide need for
18          the part we were just discussing, 0694?
19   A      I believe how I would state that is that Nu-Tech would be
20          the sole supplier of purchased required material.
21   Q      In other words, if it were purchased outside from an outside
22          vendor as opposed to made in-house?
23   A      Correct.
24   Q      Nu-Tech would be the exclusive provider?
25   A      Correct.
```

Page 12

05-44481-rdd   Doc 11757-12   Filed 01/07/08   Entered 01/07/08 20:33:17   Exhibit L
- Deposition Transcript of Tina Weber    Pg 6 of 15

IN RE: DELPHI CORPORATION, ET AL                                    DEPOSITION OF TINA WEBER

| | | |
|---|---|---|
| 1 | Q | And am I reading the column on page 9 of 10 that says "Daily |
| 2 | | capacity/hours" correctly in stating that with regard to |
| 3 | | part 60694 Nu-Tech was required to have the capability to |
| 4 | | produce 14,000 parts per day in a 16 hour day? |
| 5 | A | Correct. |
| 6 | Q | So the daily capacity/hours column is intended to notify the |
| 7 | | supplier of the maximum quantity that they may be called |
| 8 | | upon to produce? |
| 9 | A | Yes. |
| 10 | Q | You were aware of the fact that Nu-Tech was part of the |
| 11 | | mentorship program; correct? |
| 12 | A | Correct. |
| 13 | Q | Do you know as we sit here today whether or not because of |
| 14 | | Nu-Tech's position as a mentee, for lack of a better word, |
| 15 | | at least with regard to part 0694 the material cost was |
| 16 | | covered by GM or Delphi? |
| 17 | A | I have no knowledge of that specific part number nor the |
| 18 | | material breakdown or agreement on cost. |
| 19 | Q | Okay. Do you have any knowledge of whether Delphi or |
| 20 | | General Motors paid the material cost or covered the |
| 21 | | material cost for any of the parts that were produced by Nu- |
| 22 | | Tech? |
| 23 | A | No, I do not. |
| 24 | Q | I think we should probably make the record clear -- and I'm |
| 25 | | just going to swap with you so that you have the one that's |

Page 13

| | | |
|---|---|---|
| 1 | | marked. |
| 2 | | (Deposition Exhibit 1 marked) |
| 3 | | MS. BROWN: I've marked as Exhibit 1 a document |
| 4 | | entitled, "Declaration of Tina Weber in Support of Debtor's |
| 5 | | Objection to Proof of Claim No. 1279 Nu-Tech Plastics |
| 6 | | Engineering, Inc." |
| 7 | Q | And, Ms. Weber, I presume that you've seen that document |
| 8 | | before? |
| 9 | A | Yes, I have. |
| 10 | Q | And in fact you have signed this document in its original |
| 11 | | form; correct? |
| 12 | A | Yes, I have. |
| 13 | Q | Therefore I can safely assume, can I not, that you have |
| 14 | | reviewed the exhibits attached to that declaration? |
| 15 | A | Yes, I have. |
| 16 | Q | Just so I can be clear, were you directly involved with the |
| 17 | | issuance of any of the documents attached to your |
| 18 | | declaration? |
| 19 | A | No. |
| 20 | Q | Did you have any reason to review these documents prior to |
| 21 | | your involvement with the litigation that brings us here |
| 22 | | today? |
| 23 | A | No. |
| 24 | Q | Do you recall precisely when General Motors began using the |
| 25 | | name "Delphi Automotive Systems" for any reason? |

Page 14

```
 1   A      Not precisely, no.
 2   Q      At any point were you employed by General Motors under the
 3          heading of "Delphi Automotive Systems"?
 4   A      I don't have any recollection of that. I don't remember.
 5   Q      And I don't mean this to be condescending but I imagine from
 6          the descriptions of the jobs that you've had there you are
 7          not nor have you been in the position of determining the
 8          corporate setup of any of General Motors' divisions or
 9          Delphi's divisions; is that accurate?
10   A      That's accurate.
11   Q      Is it also safe then to assume that you do not have any
12          personal knowledge of the corporate history of any of the
13          Delphi entities?
14                 MR. CAMPANARIO:  Objection to form.
15                 MS. BROWN:  Okay.
16                 MR. CAMPANARIO:  Go ahead.
17   Q      Do you understand the question?
18   A      No, but I'll let you repeat it again.
19   Q      Okay. I'll back up. Are you aware of the fact that there
20          are a number of distinct corporate entities which
21          incorporate the name "Delphi"?
22   A      Yes, I'm aware there's entities that incorporate the name
23          "Delphi."
24   Q      Do you know the corporate history -- and by that I mean
25          inception date, corporate form, states of incorporation --
```

Page 15

05-44481-rdd   Doc 11757-12   Filed 01/07/08   Entered 01/07/08 20:33:17   Exhibit L - Deposition Transcript of Tina Weber   Pg 9 of 15

IN RE: DELPHI CORPORATION, ET AL                                    DEPOSITION OF TINA WEBER

| | | |
|---|---|---|
| 1 | | for any of those specific entities using the Delphi name? |
| 2 | A | I do not have any direct knowledge. The only knowledge that |
| 3 | | I have is of the commemorative magnet they gave us of the |
| 4 | | day that they became Delphi as a corporation and that was |
| 5 | | May of '99. So that's the only date that I remember. |
| 6 | Q | So you wouldn't be able to tell me the dates of |
| 7 | | incorporation of any Delphi company? |
| 8 | A | No, I would not. |
| 9 | Q | Okay. Okay. And would you also then not be familiar with |
| 10 | | any of the SEC filings by Delphi Automotive? |
| 11 | A | That is out of my scope of responsibility. |
| 12 | Q | I thought perhaps it might be. Okay. At some point did |
| 13 | | your paycheck start saying "Delphi" something as opposed to |
| 14 | | "General Motors"? |
| 15 | A | I'm sure it did but I have no awareness of what exact date |
| 16 | | that was or when. |
| 17 | Q | Did you have a written employment contract with General |
| 18 | | Motors before the spinoff? |
| 19 | A | I had -- in 1977 when I hired in I signed a card but that's |
| 20 | | about it. |
| 21 | Q | Did you ever have a written employment contract with Delphi? |
| 22 | A | No, not that I'm aware of. |
| 23 | Q | Do you know whether any entity bearing as part of its name |
| 24 | | the words "Delphi Automotive Systems" entered into any |
| 25 | | contracts of any kind prior to May of 1999? |

Page 16

05-44481-rdd   Doc 11757-12   Filed 01/07/08   Entered 01/07/08 20:33:17   Exhibit L
- Deposition Transcript of Tina Weber   Pg 10 of 15

IN RE: DELPHI CORPORATION, ET AL                                    DEPOSITION OF TINA WEBER

```
 1  A    Only the documents that I see here that reference -- the
 2       document that is Exhibit C where it says, "Delphi Automotive
 3       Systems General Motors Corporation." That's the only time
 4       that -- reference that I have.
 5  Q    Okay. So you don't know whether -- in taking it just
 6       outside the scope of the Nu-Tech's contract, do you know
 7       whether Delphi Automotive Systems entered into any other
 8       contracts before May of '99?
 9  A    I would have no awareness of that other than I see so many
10       contracts I wouldn't notice the name change. We've changed
11       our names a lot.
12  Q    Your declaration indicates that at some point in 1998
13       General Motors changed its billing procedures. Do you
14       recall that?
15  A    We did not change our billing, we changed our purchasing
16       system. Are you referencing item number five?
17  Q    Yes.
18  A    Okay. Right.
19  Q    When you say, "Purchasing system," what do you mean? Do you
20       mean computer system? Do you mean --
21  A    The actual computer system that we use to create contracts.
22  Q    Okay.
23  A    We used a system prior which was PPS and we went to GPS.
24  Q    Okay. So it was a whole new --
25  A    A whole new system change.
```

Page 17

05-44481-rdd    Doc 11757-12    Filed 01/07/08    Entered 01/07/08 20:33:17    Exhibit L
- Deposition Transcript of Tina Weber    Pg 11 of 15

IN RE: DELPHI CORPORATION, ET AL                                          DEPOSITION OF TINA WEBER

| | | |
|---|---|---|
| 1 | | you know that? |
| 2 | A | I know by looking at the document with General Motors in the |
| 3 | | main header. |
| 4 | Q | Okay.  And that -- the main header means what to you? |
| 5 | A | About center of the page at the top.  As I said earlier the |
| 6 | | divisions are on the left-hand side. |
| 7 | Q | Do you know in August of '98 when this Exhibit C was issued, |
| 8 | | who paid invoices generated by Nu-Tech?  In other words, |
| 9 | | when Nu-Tech was paid for supplying any of the parts |
| 10 | | referenced on PO 9C941, who paid Nu-Tech?  What entity? |
| 11 | A | I would not have knowledge of that. |
| 12 | Q | When invoices are sent by suppliers do they come through -- |
| 13 | | or did they come, back in '98, through your department? |
| 14 | A | No, they went to a central disbursement type of area. |
| 15 | Q | Okay.  So purchasing literally was only in charge of the |
| 16 | | actual purchase but not the bill? |
| 17 | A | Exceptions.  If there was a problem with the billing or |
| 18 | | there was an issue then purchasing became involved but it |
| 19 | | was on an exception basis. |
| 20 | Q | Do you know whether any suppliers were paid with checks or |
| 21 | | wires indicating that the payer was Delphi Automotive? |
| 22 | A | I would have no knowledge of that. |
| 23 | Q | Looking at Exhibit D to your declaration which is amendment |
| 24 | | 001 to blanket contract number N580000B? |
| 25 | A | Correct. |

Page 23

05-44481-rdd  Doc 11757-12  Filed 01/07/08  Entered 01/07/08 20:33:17  Exhibit L - Deposition Transcript of Tina Weber  Pg 12 of 15

IN RE: DELPHI CORPORATION, ET AL                                                    DEPOSITION OF TINA WEBER

```
 1   Q       That's a purchase order; correct?
 2   A       Correct.
 3   Q       And this one your acknowledge the buyer was Delphi
 4           Automotive Systems; correct?
 5   A       Correct.
 6   Q       Its issue date is May 3, 1999; correct?
 7   A       Correct.
 8   Q       Understanding that the payment terms at the bottom of this
 9           document vary from the payment terms of the August 17th, '98
10           document --
11                   MR. CAMPANARIO:  Is that a question?
12                   MS. BROWN:  No, I'm just letting her look at it
13           for a second so she can see the --
14   A       Yes.
15   Q       And there's a difference in the delivery terms.  The earlier
16           document was Free On Board USA; the later document is Free
17           On Board-USA/Canada/Mexico?
18   A       Yes.
19   Q       Are there any other terms between Exhibit D to your
20           declaration and Exhibit C to your declaration that are
21           different?
22   A       25th Prox and MNS-2, those two.
23   Q       Those reference what?
24   A       Payment cycles.
25   Q       -- would all of the other terms and conditions of the August
```

Page 24

```
 1           17th, '98 line item detail then also be applicable to the
 2           May 3rd, '99 contract?
 3    A      Could you ask me that one more time?
 4    Q      Sure.  With the exception of the ones we've just noted --
 5    A      Correct.
 6    Q      Would all of the other terms and conditions that were
 7           applicable to the August 17th, '98 contract also apply in
 8           the May 3, '99 contract?
 9    A      Unless there was a change in terms and conditions that were
10           corporate change.
11    Q      And you don't know whether they were or not?
12    A      I have no knowledge of that.
13    Q      Okay.  If the general terms and conditions -- the Exhibit 4
14           to the Patrick declaration -- had not been changed by that
15           point, would you assume that those would have carried over
16           to the May 3rd, '99 contract?
17    A      If there was not a change they would have carried over;
18           correct.
19    Q      If there was a change would there be any record at Delphi
20           that the general terms and conditions not only had changed
21           but had been mailed out to suppliers?
22    A      There should be a record on it.  I'm not aware of it.
23    Q      That's not something you would have handled anyway; correct?
24    A      It would have went through legal.
25    Q      We said earlier that the terms and conditions of PO 9C941
```
Page 25

|    |   |                                                                      |
|----|---|----------------------------------------------------------------------|
| 1  |   | carried through to amendment number 000 of the blanket               |
| 2  |   | contract number other than as noted on the document?                 |
| 3  | A | And if there was a change.                                           |
| 4  | Q | And if there was a change in the general terms. Is it then           |
| 5  |   | fair to say that the terms and conditions of purchase order          |
| 6  |   | 9C941 also carried over to the amendment 001 with the same           |
| 7  |   | disclaimers?                                                         |
| 8  | A | Same disclaimers.                                                    |
| 9  | Q | The portion of both Exhibits C and D that's titled                   |
| 10 |   | "Amendment Reason" -- do you see that?                               |
| 11 | A | Correct.                                                             |
| 12 | Q | Was it the practice of Delphi to put any and all amendment           |
| 13 |   | reasons in that field? In other words, if there was more             |
| 14 |   | than one reason to amend would they all be noted in that             |
| 15 |   | field or just one?                                                   |
| 16 | A | It would be dependent on the buyer and their practice.               |
| 17 | Q | Okay.                                                                |
| 18 | A | So you'd have them -- I think this one is Lynn Arens' as             |
| 19 |   | compared to Trenia. I mean it depends on that buyer's work           |
| 20 |   | and how they manage their desk.                                      |
| 21 | Q | Okay. And the earlier one, the August 17th, '98 document,            |
| 22 |   | the buyer was Trenia Turner; right?                                  |
| 23 | A | Correct.                                                             |
| 24 | Q | And then the later one was Lynn Arens?                               |
| 25 | A | Correct.                                                             |

Page 26

1

2

3

4

5      I certify that this transcript, consisting of 36 pages, is a

6   complete, true and correct record of the testimony of Tina Weber

7   held in this case on December 14, 2007.

8      I also certify that prior to taking this deposition, Tina

9   Weber was duly sworn to tell the truth.

10

11

12

13

14

15

16

17

18   December 18, 2007

19                                          _____

20                                          Debbie Williams, CER 7981
                                            Network Reporting Corporation
21                                          2604 Sunnyside Drive
                                            Cadillac, Michigan  49601-8749
22

23

24

25                              Page 37

NetworkReporting
1-800-632-2720