# EXHIBIT Q

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| DELPHI CORPORATION, et al., | : Case No. 05-44481 (RDD) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' ANSWERS, RESPONSES, AND OBJECTIONS TO NU-TECH'S
INTERROGATORIES, DOCUMENT REQUESTS, AND REQUESTS FOR ADMISSION TO
DELPHI CORPORATION WITH RESPECT TO PROOF OF CLAIM NO. 1279

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby serve upon Nu-Tech Plastics Engineering, Inc. ("Nu-Tech") these answers, responses, and objections to Nu-Tech's Interrogatories, Document Requests, And Requests For Admission To Delphi Corporation With Respect To Proof Of Claim No. 1279, dated November 7, 2007 (the "Discovery Requests"), in accordance with paragraph 9(h)(ii) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089), dated December 6, 2006 (the "Claim Objection Procedures Order"), as supplemented by the Supplemental Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 10701), dated October 23, 2007 (the "Supplemental Claim Objection Procedures Order"), and the Second Supplemental Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 10994), dated November 20, 2007 (the "Second Supplemental Claim Objection Procedures Order").

Definitions

1.    Capitalized terms used and not otherwise defined in these answers, responses, and objections have the meanings given to them in the Discovery Requests.

2.    "Debtors' Supplemental Reply" means the Debtors' Supplemental Reply With Respect To Proof Of Claim No. 1279 (Nu-Tech Plastics Engineering, Inc.) (Docket No. 10777), dated October 31, 2007.

3. "Local Rule" means a Local Rule of the United States Bankruptcy Court for the Southern District of New York.

4. "Nu-Tech's Claim" means proof of claim number 1279, dated November 22, 2005, filed by Nu-Tech in the above-captioned cases.

5. "Tina Weber Declaration" means the Declaration Of Tina Weber In Support Of Debtors' Objection To Proof Of Claim No. 1279 (Nu-Tech Plastics Engineering, Inc.), dated September 5, 2007, a copy of which is attached to the Debtors' Supplemental Reply as Exhibit R.

General Objections And Limitations

6. The Debtors object to the Discovery Requests to the extent they call for information or documents that (1) are protected by any privilege, including, without limitation, the attorney-client privilege, (2) constitute attorney work product, and/or (3) qualify as trial preparation material within the meaning of Fed. R. Civ. P. 26(b)(3), as made applicable here by Fed. R. Bankr. P. 7026 and 9014(c) (the "Protected Information/Documents"). Although the Debtors are providing information and intend to produce documents in response to the Discovery Requests, they will not provide or produce any Protected Information/Documents. The Debtors' specific answers and responses to the Discovery Requests are qualified in their entirety by this general objection and limitation.

7. The Debtors intend to produce documents in response to the Discovery Requests that contain information that is considered sensitive, confidential, personal, and/or proprietary in nature (the "Confidential Documents"). The Debtors will produce the Confidential Documents to Nu-Tech provided that Nu-Tech executes an appropriate stipulation and agreed protective order governing the disclosure and use of the Confidential Documents.

3

Answers And Objections To Interrogatories

Interrogatory No. 1: Please set forth the date upon which the Delphi "spin-off" from General Motors began, as such date is referenced in paragraph 6 of the Declaration of Tina Weber in Support of Debtors' Objection to Proof of Claim No. 1279.

The Debtors object to this interrogatory on the grounds that (1) it violates the restrictions on interrogatories set forth in Local Rule 7033-1(a), as made applicable here by Local Rule 9014-1, (2) an interrogatory is not a more practical method of obtaining the information sought than a request for production of documents or a deposition, (3) the Tina Weber Declaration states that the spin-off occurred in 1999 but does not, as this interrogatory suggests, reference "the date upon which the Delphi 'spin-off' from General Motors began," and (4) it is vague. Subject to these objections, the Debtors state that Delphi (formerly known as Delphi Automotive Systems Corporation) became an independent company during 1999 through a series of transactions (the "Separation"). The Separation occurred in two stages, the first of which involved an offering to the public of 100 million shares of Delphi's $0.01 par value common stock in February 1999. The second stage involved the distribution of Delphi's remaining shares owned by GM to holders of record of GM $1⅔ par value common stock in May 1999. The dividend resulted in a distribution of approximately 452.6 million shares, or 80.1%, of Delphi's outstanding common stock. The remaining 12.4 million shares owned by GM were contributed on May 28, 1999 to a voluntary employees' beneficiary association trust for GM's U.S. hourly employees.

Interrogatory No. 2: Please set forth the identity of each and every Part covered by Amendment No. 1 to Standard Blanket Contract N580000B (the "Purchase Order") as such Purchase Order is referenced in paragraph 8 of the Declaration of Tina Weber in Support of Debtors' Objection to Proof of Claim No. 1279.

The Debtors object to this interrogatory on the grounds that (1) it violates the restrictions on interrogatories set forth in Local Rule 7033-1(a), as made applicable here by

4

Local Rule 9014-1, and (2) an interrogatory is not a more practical method of obtaining the information sought than a request for production of documents or a deposition. Subject to these objections, the Debtors state that the answer to this interrogatory can be derived or ascertained from Standard Blanket Contract No. N580000B, Amendment No. 001, a copy of which is attached to the Debtors' Supplemental Reply as <u>Exhibit C</u>.

<u>Interrogatory No. 3</u>: Please set forth every reason that the Purchase Order (Standard Blanket Contract N580000B) was extended in May, 1999 by way of the Amendment No. 1 to Standard Blanket Contract N580000B issued by DAS.

The Debtors object to this interrogatory on the grounds that (1) it violates the restrictions on interrogatories set forth in Local Rule 7033-1(a), as made applicable here by Local Rule 9014-1, and (2) an interrogatory is not a more practical method of obtaining the information sought than a request for production of documents or a deposition. Subject to these objections, the Debtors state that they have been unable to determine the reasons for the issuance of Standard Blanket Contract No. N580000B, Amendment No. 001, given the passage of time and the fact that Trenia Patrick, the person who issued Standard Blanket Contract No. N580000B, Amendment No. 001, is no longer an employee of DAS and instead is assisting Nu-Tech in connection with Nu-Tech's Claim.

<u>Interrogatory No. 4</u>: Please set forth the legal basis for denying that DAS is obligated under Standard Blanket Contract N580000B, in light of its issuance of Amendment No. 1 to Standard Blanket Contract N580000B; include the date(s), if any, between which DAS alleges it was obligated in any way under any Purchase Order with Nu-Tech.

The Debtors object to this interrogatory on the grounds that (1) it violates the restrictions on interrogatories set forth in Local Rule 7033-1(a), as made applicable here by Local Rule 9014-1, (2) an interrogatory is not a more practical method of obtaining the information sought than a request for production of documents or a deposition, and (3) insofar as the interrogatory seeks information concerning purchase orders other than the purchase orders

that are the subject of Nu-Tech's Claim, it seeks information concerning matters not relevant to the claim or defense of any party. Subject to these objections, the Debtors answer that DAS is not liable to Nu-Tech for any alleged breach of Standard Blanket Contract No. N580000B because it was not a party to that agreement. Indeed, DAS did not exist on August 17, 1998, when Standard Blanket Contract No. N580000B was issued. DAS's contractual relationship with Nu-Tech with respect to part number 25160694 began in May 1999 and ended in January 2000, and Nu-Tech sold to Rapid Product Technologies, L.L.C. ("RPT") Nu-Tech's purchase orders for part number 25160694 and any cause of action for breach of such purchase orders, effective December 1, 1999.

Interrogatory No. 5: Please identify the documents and the source of any such documents containing any and all data relied upon by Keith R. Francis in the preparation of his Declaration in Support of Debtor's Objection to Proof of Claim No. 1279.

The Debtors state that the answer to this interrogatory may be derived or ascertained from the documents the Debtors will produce in response to Document Request Nos. 1 and 6.

Interrogatory No. 6: Please identify any and all distinctions between "Factory Assist" and "Requirements Contract" as such terms are used in any purchase orders issued by DAS to any supplier in 1999.

The Debtors object to this interrogatory on the grounds that (1) it violates the restrictions on interrogatories set forth in Local Rule 7033-1(a), as made applicable here by Local Rule 9014-1, (2) an interrogatory is not a more practical method of obtaining the information sought than a request for production of documents or a deposition, (3) it seeks information concerning matters not relevant to the claim or defense of any party, and (4) it calls for legal conclusions. Subject to these objections, the Debtors state that, under a factory assist contract, DAS generally agrees to purchase certain goods from the seller to the extent that DAS does not produce the goods itself, and that, under a requirements contract, DAS generally agrees

6

to purchase a certain percentage of its requirements for certain goods from the seller, in both cases pursuant to releases issued by DAS.

Interrogatory No. 7: Please identify any manufacturer of part no. 25160694 used in any GM fuel tank assembly and purchased by GM for such during calendar years 1999 and 2000.

The Debtors state that DAS was such a manufacturer, and that, after conducting a reasonable search for documents that would enable the Debtors to identify other such manufacturers, the Debtors are unable to identify any other such manufacturer.

Interrogatory No. 8: Please identify any and all terms and conditions upon which the Debtor relies in avoidance of liability under any purchase order at issue in Nu-Tech's Proof of Claim.

The Debtors state that the answer to this interrogatory may be derived or ascertained from the terms and conditions that the Debtors will produce in response to this interrogatory.

Answers And Objections To Requests For Admission

Request For Admission No. 1: Admit that DAS conducted no investigation into the number of parts produced internally by DAS which were parts covered by Standard Blanket Contract N580000B between the date that Nu-Tech commenced its lawsuit in the Genessee County Circuit Court and July, 2007.

The Debtors specifically deny the matter in this request.

Request For Admission No. 2: Admit that DAS issued Amendment No. 1 to Standard Blanket Contract N580000B with knowledge that Nu-Tech did not have the tools needed to product the Part and GM was under an obligation to produce the Part itself as part of the labor agreement ending the strike in the summer of 1998, as set forth in paragraph 8 of the Declaration of Tina Weber in Support of Debtors' Objection to Proof of Claim No. 1279.

The Debtors admit that, when DAS issued Standard Blanket Contract No. N580000B, Amendment No. 001, DAS knew that Nu-Tech did not have at least one of the GM tools needed to produce the Part and that GM had agreed not to order the Part from Nu-Tech as part of the labor agreement ending the strike in the summer of 1998.

7

Request For Admission No. 3: Admit that the May 1999 DAS PO was a requirements contract.

The Debtors admit that Standard Blanket Contract No. N580000B, Amendment No. 001, was a requirements contract.

Request For Admission No. 4: Admit that DAS never provided written notice of termination of any purchase order between GM and Nu-Tech from 1998 through 2002.

The Debtors object to this request on the ground that it seeks an admission concerning matters not relevant to the claim or defense of any party. Subject to this objection, the Debtors admit that DAS did not provide a written notice of termination of any purchase orders that were between GM and Nu-Tech and are the subject of Nu-Tech's Claim.

Request For Admission No. 5: Admit that DAS never provided written notice of termination of any purchase order between DAS and Nu-Tech from 1998 through 2002.

The Debtors object to this request insofar as it addresses purchase orders other than the purchase orders that are the subject of Nu-Tech's Claim on the ground that it seeks an admission concerning matters not relevant to the claim or defense of any party. As for the purchase orders that are the subject of Nu-Tech's Claim, the Debtors neither admit nor deny the matter in this request because they have been unable to determine whether DAS provided to Nu-Tech a written notice of termination of Standard Blanket Contract No. N580000B, Amendment No. 001.

## Responses And Objections To Document Requests

Document Request No. 1: Any and all documents containing any and all data reviewed by Keith R. Francis in the preparation of his Declaration in Support of Debtor's Objection to Proof of Claim No. 1279.

The documents responsive to this request include the documents attached to the Declaration Of James Weber, dated September 10, 2007, as Exhibit A and Exhibit B, which are

8

already in Nu-Tech's possession. Subject to the general objections and limitations set forth in paragraphs 6 and 7, the Debtors will produce responsive documents.

Document Request No. 2: Any and all agreements between GM and any of its labor unions which affected the performance of either Debtor or Nu-Tech under PO 8C934, PO 9C941, Standard Blanket Contract No. N580000B, and/or Amendment No. 1 to Standard Blanket Contract No. N580000B, as those documents are defined in Debtors' Discovery Requests to Nu-Tech.

The Debtors object to this request on the grounds that (1) it seeks documents concerning matters not relevant to the claim or defense of any party and (2) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Furthermore, the Debtors state that they conducted a reasonable search for the strike settlement agreement referenced in paragraphs 1 and 19 of the Debtors' Supplemental Reply and were unable to locate that agreement.

Document Request No. 3: Any written notices from DAS to Nu-Tech terminating PO 8C934, PO 9C941, Standard Blanket Contract No. N580000B, and/or Amendment No. 1 to Standard Blanket Contract No. N580000B.

The Debtors object to this request insofar as it seeks written termination notices from DAS with respect to agreements between Nu-Tech and GM on the ground that it seeks documents concerning matters not relevant to the claim or defense of any party. The Debtors identify Standard Blanket Contract No. N580000B, Amendment No. 003, a copy of which is attached to the Debtors' Supplemental Reply as <u>Exhibit D</u>, as a potentially responsive document. Furthermore, the Debtors state that they conducted a reasonable search for other documents responsive to this request and were unable to locate any such documents.

9

Document Request No. 4: Any and all documents provided by BBK to DAS constituting the "analysis undertaken by BBK in 1999 as part of BBK's assistance to Nu-Tech under Delphi's troubled supplier program" as set forth in paragraph 41 of Debtors' Supplemental Reply with respect to Proof of Claim No. 1279.

The documents responsive to this request include the building and equipment leases referenced in paragraph 41 of the Debtors' Supplemental Reply, which are attached to the Debtors' Supplemental Reply as <u>Exhibit I</u>, <u>Exhibit J</u>, <u>Exhibit K</u>, <u>Exhibit L</u>, and <u>Exhibit M</u>. All other leases used in connection with the analysis referenced in paragraph 41 of the Debtors' Supplemental Reply were made available to Nu-Tech's damages witness, Gary Leeman, by BBK, Ltd. Furthermore, subject to the general objections and limitations set forth in paragraphs 6 and 7, the Debtors will produce other documents responsive to this request.

Document Request No. 5: Any and all purchase orders issued to any manufacturer of part no. 25160694 used in any GM fuel tank assembly and purchased by GM for such during calendar years 1999 and 2000.

The Debtors object to this request on the grounds that (1) it is vague because it does not identify the issuer, (2) it seeks documents concerning matters not relevant to the claim or defense of any party, and (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Furthermore, the Debtors state that they conducted a reasonable search for responsive purchase orders issued by the Debtors and were unable to locate any such purchase orders.

Document Request No. 6: Any and all documents containing any and all data relied upon by Keith R. Francis in the preparation of his Declaration in Support of Debtor's Objection to Proof of Claim No. 1279.

The documents responsive to this request include the documents attached to the Declaration Of James Weber, dated September 10, 2007, as <u>Exhibit A</u> and <u>Exhibit B</u>, which are

10

already in Nu-Tech's possession. Subject to the general objection and limitation set forth in paragraphs 6 and 7, the Debtors will produce other responsive documents.

Document Request No. 7: All documents detailing the "spinoff" of Delphi by GM in 1999.

The Debtors object to this request on the grounds that (1) it seeks documents concerning matters not relevant to the claim or defense of any party and (2) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Subject to these objections and the general objections and limitations set forth in paragraphs 6 and 7, the Debtors will produce documents filed with the United States Securities and Exchange Commission that will enable Nu-Tech to determine the timing of events concerning the spin-off.

Document Request No. 8: All documents evidencing any communication between Delphi, DAS and GM concerning the subject matter of Nu-Tech's Proof of Claim No. 1279.

The Debtors object to this request on the grounds that (1) it is unreasonably cumulative and duplicative of the discovery between Nu-Tech and the Debtors in their state-court litigation and (2) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Subject to these objections and the general objections and limitations set forth in paragraphs 6 and 7, the Debtors will conduct a reasonable search for documents prepared or received on or after November 22, 2005, that contain communications between the Debtors and GM concerning Nu-Tech's Claim, and will produce such documents found as a result of that search.

11

Document Request No. 9: All documents upon which Debtor relies in support of its claim that Nu-Tech's claim(s) is/are time-barred.

The documents that support the Debtors' position that Nu-Tech's claims are time-barred include (1) the Memorandum and Agreement Regarding Purchase and Sale of Assets among Nu-Tech, ABX Leasing, Ltd. ("ABX"), John Cooper, Johnny Glen Cooper, and RPT, dated December 1, 1999; (2) the Agreement: Purchase and Sale of Business Assets among Nu-Tech, ABX, John Cooper, Johnny Glen Cooper, and RPT, dated January 13 and 14, 2000; (3) Standard Blanket Contract No. N580000B, Amendment No. 003, issued January 15, 2000; and (4) the Acknowledgement and Assignment Agreement between Nu-Tech and RPT, dated March 8, 2005. Those documents are attached to the Debtors' Supplemental Reply as Exhibit F, Exhibit G, Exhibit D, and Exhibit H, respectively.

Document Request No. 10: All documents upon which the Debtor intends to rely at the Claims Objection Hearing regarding the Claim.

All documents upon which the Debtors presently intend to rely at the Claims Objection Hearing regarding Nu-Tech's Claim were attached to the Debtors' Supplemental Reply. The Debtors reserve their right to rely upon other documents based on further developments regarding Nu-Tech's Claim, including, without limitation, further developments arising from discovery. The Debtors will work with Nu-Tech to develop a joint list of exhibits for use at the Claims Objection Hearing regarding Nu-Tech's Claim in accordance with paragraph 9(i) of the Claim Objection Procedures Order, as supplemented by the Supplemental Claim Objection Procedures Order and the Second Supplemental Claim Objection Procedures Order.

Dated: Chicago, Illinois
     December 21, 2007

                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                              By: s/ Albert L. Hogan, III
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 4951)
                                  Albert L. Hogan, III (AH 8807)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606
                              (312) 407-0700

                              Attorneys for Delphi Corporation, et al.,
                              Debtors and Debtors-in-Possession

# VERIFICATION

STATE OF MICHIGAN  )
                                  ) SS.
COUNTY OF OAKLAND)

      **Barbara K. Frantangelo**, being first duly sworn upon her oath at law, deposes and says:

1. I am employed by Delphi Automotive Systems. I am authorized to sign the foregoing Debtors' Answers, Responses, and Objections to Nu-Tech's Interrogatories, Document Requests, and Requests for Admission to Delphi Corporation with Respect to Proof of Claim No. 1279 on behalf of Delphi Automotive Systems.

2. While I do not have personal knowledge of the facts recited in the responses, I declare that the statements are true to the best of my information, knowledge and belief.

_____
**Barbara K. Frantangelo**

Subscribed and sworn to before me
this 20th day of December, 2007.

_____
Notary Public

PATRICE A. HARLAN
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Jan 10, 2012
ACTING IN COUNTY OF Oakland