HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
Lawrence J. Murphy (P47129)
Gregory R. Schermerhorn (P44016)
E. Todd Sable (P54956)

Attorneys for Lightsource Parent Corporation and Guide Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                                  :   Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :   Case No. 05-44481 (RDD)
                                                        :
    Debtors.                                            :   (Jointly Administered)
------------------------------------------------------- x

**SUPPLEMENTAL RESPONSE OF GUIDE CORPORATION AND LIGHTSOURCE PARENT CORPORATION TO DEBTORS' SUPPLEMENTAL REPLY TO THE RESPONSES OF LIGHTSOURCE AND GUIDE TO THE DEBTORS' OBJECTIONS TO PROOFS OF CLAIM NOS. 14070 AND 14245**

Lightsource Parent Corporation and Guide Corporation (collectively "Guide") submit this Supplemental Response to the Debtors' Supplemental Reply to Responses of Lightsource and Guide to Debtors' Objections To Proofs of Claims Nos. 14070 and 14245 (the Debtor's "Supplemental Reply").

**RESPONSE SUMMARY**

The Debtors' Supplemental Reply regarding Proofs of Claims Nos. 14070 and 14245 ("the Claims") fails to overcome the *prime facie* presumption of validity held by the Claims. There clearly exists a sufficient factual basis for the Claims because:

1.  Guide has a direct right to enforce a contractual claim for payment against Debtor Delphi Corporation because Delphi is by written agreement an assignee of General Motors Corporation's contractual liability to reimburse Guide for a portion of Guide's retiree health and life insurance benefits. The Debtors' initial Objection and now their Supplemental Reply do not address this plain result.

2.  The Debtors' Supplemental Reply offers no meritorious argument to counter Guide's assertion that the Debtors' "no third party beneficiary" defense is misplaced and wrong.

Guide has met its burden to establish the prima facie validity of its Claims, and it is not the case here that Guide can prove no set of facts in support of its Claims that would entitle it to relief. Debtors' request for relief should be denied.

## BACKGROUND

As detailed in Guide's previous pleadings concerning Debtors' Objections to Guide's Claims,[1] General Motors Corporation ("GM"), Lightsource Parent Corporation ("Lightsource"), and another party, PEP Guide, LLC, entered into an agreement – the Lightsource Formation Agreement (the "LFA") – effective September 29, 1998. (Attached hereto as Exhibit A.) GM agreed at Section 6.7.1E of the LFA to reimburse Guide annually for a portion of the cost of certain post-employment benefits provided by Lightsource to its retirees (the "OPEB Reimbursement Liability"). Guide and GM also agreed at Section 14.3 of the LFA to allow GM to unilaterally assign its OPEB Reimbursement Liability to Delphi.

GM assigned the OPEB Reimbursement Liability to Debtor Delphi Corporation, then known as Delphi Automotive Systems Corporation, pursuant to an agreement between GM and Delphi – the Master Separation Agreement ("MSA"), dated on or about December 22, 1998, and an ancillary Employee Matters Agreement ("EMA"), dated as of December 22, 1998 (a copy of which is attached hereto as Exhibit B). The MSA plainly sets forth this assignment; Section 2.02(b) of the MSA provides:

> *Divested Business*.    Delphi shall, with respect to the business and

---

[1] See, e.g., Supplemental Response of Lightsource Parent Corporation and Guide Corporation to Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated by Debtors' Books and Records, and (C) Claims Subject to Modification and (II) Motion to Estimate Contingent and Unliquidated Claims Pursuant to 11 U.S.C. § 502(c).

2

<u>operations divested by the Delphi Automotive Systems Business, assume all of the Liabilities of GM related thereto</u>; *provided, however*, that Delphi shall not assume those Liabilities relating to the operations divested by the Delphi Automotive Systems Business to the extent such Liabilities are expressly retained by GM pursuant to the terms of this Agreement or the Ancillary Agreements (including without limitation, the Employee Matters Agreement, the Environmental Matters Agreements and the Real Estate Matters Agreement) <u>and the Liabilities assumed by Delphi shall include, without limitation, the obligations to satisfy all of the obligations of GM under the various agreements pursuant to which the Delphi Automotive Systems Business effected such divestitures</u> (the Divestiture Agreements); *provided, further, however*, that notwithstanding the foregoing or any other provision of this Agreement or the Ancillary Agreement, responsibility for certain obligations relating to certain divestitures shall be allocated between the parties as set forth on Schedule I hereto. [Emphasis added.]

Section 1.01 of the MSA defines the term "Liabilities" as:

[A]ny and all debts, liabilities, guarantees, assurances, commitments and obligations whether fixed, contingent or absolute, asserted or unasserted, matured or unmatured, liquidated or unliquidated, accrued or not accrued, known or unknown, due or to become due, whenever or however arising (including, without limitation, whether arising out of any Contract or tort based on negligence or strict liability) and whether or not the same would be required by generally accepted accounting principles to be reflected in financial statements or disclosed in the notes thereto.

Also, paragraph 3(a) of the EMA[2] contains a parallel assignment to Delphi of the OPEB Reimbursement Liability, providing:

For Employees who are or become Delphi Employees or Delphi Terminated Employees as of the Effective Time, Delphi (except as set forth in Schedule I of the MSA) and/or Delphi benefit plans shall assume all employment related responsibility, obligation, or liability of GM regardless of when incurred, except as expressly stated in this paragraph 3(a).

Neither Schedule I to the MSA, nor any other provision of the MSA, nor any ancillary agreement to the MSA provide that GM will retain the OPEB Reimbursement Liability.

---

[2] Guide's retired employees with OPEB fall within the EMA's "Delphi Terminated Employee" definition under paragraph 1 of the EMA.

3

The Debtors do not dispute that an obligee, such as Guide, generally has rights to enforce an obligation against an assignee of the obligor of those obligations, but claims only that Guide is divested of standing to assert such rights based on the following "no third-party beneficiary" provision, which appears at Section 9.05 of the MSA:

> [The MSA] shall be binding upon and inure solely to the benefit of each party hereto . . . and nothing in [the MSA], express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of [the MSA] . . . .

(Debtors' Supplemental Reply at ¶ 1). The Debtors make two arguments in support of their assertion that Guide lacks standing: first, that the MSA unambiguously disclaims the rights of all third parties; and, second, even if Sections 2.02 and 9.05 of the MSA are shown to create an ambiguity, that no third-party beneficiary clauses containing the language of Section 9.05 cut off any third-party rights that might be established elsewhere, regardless of other evidence of the parties' intentions.

## DISCUSSION

**1.    The Debtors' no third-party beneficiary argument does not address Delphi's direct liability to Guide by reason of Delphi's status as the assignee of GM's OPEB Reimbursement Liability.**

In their Supplemental Reply, the Debtors' fail to acknowledge or address the fact that GM assigned to Delphi all aspects of GM's OPEB Reimbursement Liability. Guide's Claims against Delphi are based on this assignment and do not, as Debtors argue, depend on Guide's alleged status as a "third-party beneficiary" under the MSA. Based on this assignment, the Debtors' objections to the Claims fail. Delphi's assumption of the OPEB Reimbursement Liability under the facts outlined above compels it to honor that liability as a matter of law.

When an obligation or liability under a contract is assigned and the assignee agrees to assume that obligation or liability, a **direct obligation** on the part of the assignee to the obligee

4

under the original contract arises.[3]  *See Chrysler Corp. v. Airtemp Corp.*, 426 A.2d 845, 852 (Del. Super. 1980) (citing 4 *Corbin on Contracts* § 906); *Hursey Porter & Assocs. v. Edward Bounds, Jr., Maureen Bounds & Bank of Delaware*, No. 93C-01-091, 1994 Lexis 583, *52 (Del. Super. 1994) (citing 6 Am. Jur. 2d *Assignments* § 109) (an assignee of a contract who assumes the obligations which the contract imposes on the assignor becomes directly liable on the contract to the other contracting party); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F. 3d 529, 532 (3rd. Cir. 2005) (an assignee of rights under a bilateral contract is bound to perform the assignor's duties under the contract where he expressly assumes that obligation) (a decision under New York law).  Moreover, where an obligation or liability under a contract has been assumed, the beneficiary under the original contract has a right of action against the assignee to enforce the contract.  *John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 33 (citing *Wilmington Housing Authority v. Fidelity & Deposit Co.*, 47 A.2d 524 (Del. Supr. 1946) and *Royal Indemnity Co. v. Alexander Indus., Inc.*, 211 A.2d 919 (1965)).  Accordingly, as a result of GM's assignment of its OPEB Reimbursement Liability to Delphi and Delphi's acceptance of that assignment, Guide is authorized to enforce payment of the Reimbursement Liability from Delphi, a Debtor in this case.

Delphi's clear responsibility, as an assignee, for the OPEB Reimbursement Liability obviates the Debtors' "no third-party beneficiary" arguments raised for purposes of the Sufficiency Hearing.  Guide's Claims do not rest on a third-party beneficiary theory under the MSA and/or EMA.  Rather, the validity of Guide's Claims are established by GM's assignment to Delphi of the OPEB Reimbursement Liability.  That liability is assignable by GM under the LFA and it was assigned pursuant to an agreement Delphi entered into with GM as such an

---

[3] The MSA is interpreted according to Delaware law.  MSA at § 9.02.

5

assignor.

Because GM assigned the OPEB Reimbursement Liability to Delphi, Delphi, by its own agreement, is an assignee under the LFA. Section 14.3 of the LFA gives Guide a direct contractual claim against Delphi. That section provides: "This Agreement shall be binding upon and inure to the benefit of the Parties **and their respective successors and assigns**, … [emphasis added]. Guide's Claims against the Debtors therefore do not rely on any third-party beneficiary theory under the MSA (or EMA). They are predicated on Delphi's status as an assignee under the LFA. For this simple reason alone, the Debtors' arguments as to the sufficiency of Guide's Claims must fail.

### 2. The Debtors' arguments improperly create inconsistency in the Master Separation Agreement.

Contrary to the Debtors' arguments, Sections 9.05 and 2.02 of the MSA are not inconsistent. It is the Debtors' arguments that create an ambiguity. Delphi does not dispute that it accepted the assignment of the OPEB Reimbursement Liability to Guide. Yet, Delphi inconsistently argues that the MSA's provisions will "inure solely" to the benefit of GM. Nonetheless, the Debtors' Supplemental Reply claims that the MSA is "clear and unambiguous," and that the cited provisions are "in harmony." (Debtors' Supplemental Reply at ¶¶ 4, 10.)

The authority cited in the Debtors' Supplemental Reply sets forth well-recognized canons of contract construction, such as: (i) clear and unambiguous contracts should be interpreted by their plain language; (ii) contracts should be read as a whole if possible; and (iii) that a party cannot create ambiguity in otherwise unambiguous language. (Debtors' Supplemental Reply at ¶¶ 4, 5, 6, and 8.) Those canons, however, actually apply here against the Debtors' inconsistent reading of Sections 9.05 and 2.02 of the MSA. Those two provisions can and must be read to apply on a consistent basis, and they do. Section 2.02 of the MSA provides for GM's explicit

6

assignment of its OPEB Reimbursement Liability to Delphi (and Delphi's acceptance of that assignment). Section 9.05 of the MSA applies to other matters set forth in the MSA that are not otherwise assigned, apportioned, or otherwise dealt with under other provisions of the MSA. This construction harmonizes the provision of the MSA, and such consistent result is mandated by the well-accepted principles of contract construction.[4] The authority cited by the Debtors, and common sense, instead dictate that the MSA's provisions should be construed as a whole to work together, giving each logical application by interpreting Section 9.05 of the MSA to apply only to third-parties not explicitly dealt with elsewhere in the MSA.

> **3.  The authority cited in support of the Debtors' assertion that a contract containing a no third-party beneficiary clause cannot also expressly confer justicable rights on third parties is not persuasive.**

The Debtors only apparent argument in support of its Objection is that, as a matter of law, under no circumstances can a contract contain both a no third-party beneficiaries clause *and* nonetheless confer directly enforceable rights on a third party. The Debtors do not provide any case law that stands for the proposition that a "no third-party beneficiary" provision in a contract trumps that contract's separate assignment of a pre-existing obligation.

The Debtors mischaracterize the facts and holdings of the few cases they cite. First, the Debtors cite to *Liberty Mutual Ins. Co. v. Household Int'l, Inc.,* 136 F. Supp.2d 5, 8 (D. Mass. 2001) as "holding" that a "party specifically referenced in contract could not be intended third-party beneficiary when contract 'contained no third party beneficiary clause.'" But the *Liberty Mutual* court's opinion reveals no evidence of a specific reference to the third party, just a generic assumption of all liabilities, some of which may be owed to the third party. *Id.* Also, the

---

[4] At the very least, for purposes of the present matter, the application of these contract construction principles require that the Debtors' request be denied. That is because, at worst, Guide's construction of the MSA is plausible and therefore two different interpretations of the MSA are at issue. It would, therefore, not be appropriate to dismiss Guide's Claims at a Sufficiency Hearing.

7

*Liberty Mutual* court did not hold that the third party *could not* be an intended third-party beneficiary, but rather that it lacked facts sufficient to decide the third party had such rights as a matter of law. *Id.* Unlike the *Liberty Mutual* third party, the OPEB Reimbursement Liability is specifically referenced in the subject contract. Guide has provided significant evidence, furthermore, that GM and Delphi (and, indeed, Guide also) intended that the OPEB Reimbursement Liability be assigned to Delphi. Section 14.3 of the LFA, Section 2.02 of the MSA, and paragraph 3(a) of the EMA make clear that intent and assignment.

The Debtors cite *India.com v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) as holding that a "no third party beneficiary clause [is] effective despite specific identification of third-party in contract." That decision was premised on the fact that the contract at issue, while referring to the third party, did not create any obligation in the third party's favor. Per the court:

> The SPA also contained two interrelated provisions pertaining to [the third party] Dalal's compensation, which the District Court found to be in tension with the [no third-party beneficiaries clause .] The first, Section 3.16, identified Dalal as the broker for the sale and indicated that he would be paid **under a separate agreement** in a Disclosure Schedule of the SPA. … The second provision, Disclosure Schedule 3.16 of the SPA, further indicated that EasyLink[, the seller,] had an agreement with Sandeep Dalal pursuant to which he is entitled to fees payable upon the terms and conditions set forth herein.

*Id.* at 318 (emphasis added). The language of the contract at issue in the case, thus made mere reference to another agreement that granted rights to the third party; even without the presence of a no third-party beneficiary clause, the third party in *India.com* would have obtained no rights under the contract. The case is distinguishable from the facts presented here, as Delphi expressly assumed contractual obligations to Guide in the MSA.

The Debtors' final cited case, *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 150 F.3d 545, 549 (6th Cir. 1998), is similarly unavailing. Once again, the third party was not explicitly

8

mentioned in the agreement. And, no evidence was presented that the parties intended the third party to obtain rights. In fact, the evidence was to the contrary. The agreement in *Nationwide* was between an insurer and a reinsurance company under which the latter would pay claims of the former's insureds directly, but the agreement specifically stated that it conferred no legally enforceable rights on third parties. *Id.* The court concluded that the intentions of the parties, given the context and the presence of a no third-party rights clause, were not to allow third parties to assert direct claims. *Id.* The facts of *Nationwide* are not applicable here. In *Nationwide*, the primary insurer wanted the safety of knowing it would not be fully liable on claims of its insureds. The primary insurer, therefore, entered into the agreement for the purpose of protecting itself, not the insureds. Here, as to GM's and Delphi's dealings, the parties were in a commonly controlled group of companies prior to the execution of the MSA. The MSA was designed to sort out which entity would be responsible for existing and future obligations. In the case of the OPEB Reimbursement Liability, the parties chose Delphi and, accordingly specifically assigned to Delphi the OPEB Reimbursement Liability to Guide. Thus, unlike the situation in *Nationwide*, GM did not create a right of reimbursement from Delphi, instead it assigned entirely the liability directly to Delphi, which in turn expressly assumed direct liability.

Finally, the Debtors quote 4 Corbin on Contracts § 777 at 25 (1951):

> [I]f two contracting parties expressly provide that some third party who will be benefited by performance shall have no legally enforceable right, the courts should effectuate the express intent by denying the third party any direct remedy.

Corbin is merely restating, in context, the principal that the specific should govern the general: if a contract by its general terms confers rights on third parties, but such third parties are specifically excluded, then no rights should attach. *See Caldwell Trucking PRP v. Rexon Technology Corp.*, 421 F.3d 234 (3d Cir. 2005) ("[G]eneral, boilerplate language, . . . must yield

9

to the specific . . . ."). If, on the other hand, the terms of the contract specifically confer rights on a third party, as does the MSA on Guide, then a general clause purporting to divest any third party of any rights must yield to the specific. Guide's rights are explicitly mentioned in the MSA's provision conferring rights, but not in the provision that Debtors argue purportedly takes them away.

> 4. **Established precedent supports Guide's assertion that a contract containing a no third-party beneficiary clause can nonetheless expressly confer justiciable rights on third parties.**

The foregoing establishes that the Debtors have failed to find any support for the proposition they must prove to prevail on their Objections, i.e., that under no circumstances can a contract confer rights on a third party when it contains a no third-party beneficiaries clause. The dearth of case law supporting Debtors' Objections stands in contrast to *Caldwell*, *supra*, and *Ladish Co., Inc. v. Armco, Inc.*, 179 Wis.2d 850, 514 N.W.2d 724 (Wis. Ct. App. 1993) (unpublished opinion), that directly support Guide's Claims.

In the Third Circuit Court of Appeal's decision in *Caldwell*, the plaintiff, Caldwell, sued its former customer, Rexon, and its parent entity, Pullman, for contribution as to damages paid by plaintiffs to the government for environmental cleanup related to waste disposed of by Caldwell on behalf of Rexon. 421 F.3d at 240-41. Some of the costs were related to damage incurred prior to Pullman's acquisition of Rexon, and Pullman contended that it had not assumed Rexon's liabilities in the relevant stock-purchase agreement. *Id*. at 241. The relevant portion of that agreement, paragraph 1.05, stated that Pullman "agrees to assume and become liable for, and pay, and perform and discharge and to indemnify…" Rexon for a wide range of liabilities. *Id.* at 242.

Pullman argued in response that Caldwell lacked standing to recover on account of a no third-party beneficiaries clause which read as follows:

10

> Successors and Assigns. The terms and conditions of this agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties hereto, provided that no person, firm, or entity … other than the parties hereto, their respective successors and assigns, shall be deemed a beneficiary of any of the representations, warranties or covenants contained herein.

*Id.* at 245. The court rejected Pullman's argument, and upheld the right of Caldwell to sue as a third-party beneficiary, because:

> The general, boilerplate language, however, must yield to the specific direction of Paragraph 1.05 that "[a]nything contained herein . . . to the contrary notwithstanding, [Pullman] agrees to assume . . . all liabilities . . . with respect to . . . [those] arising out of or relating to . . . alleged violation[s] of . . . Environmental Laws . . . including Superfund liability. . . . .
>
> * * *
>
> Whatever doubt may exist after review of the language in the contract was resolved by the extrinsic evidence that made clear the parties' intention to have Pullman assume all of Rexon's environmental liabilities.

*Id.*

A similar result was reached in *Ladish Co., Inc. v. Armco, Inc.,* 179 Wis.2d 850, 514 N.W.2d 724 (Wis. Ct. App. 1993) (unpublished opinion). There, the defendant, Owens-Corning, had purchased the plaintiff Ladish from Armco, but "refused to accept any risk whatsoever" in connection with certain criminal activities of Ladish's former president. Ladish was later involved in and settled a class-action lawsuit related to the excluded liabilities, and accordingly sought reimbursement from Armco. *Id.* at *1-*2. The court first held that Ladish was properly considered an intended third-party beneficiary by the trial court:

> The trial court … correctly ruled that Ladish is a proper party plaintiff even though it was not a party to the acquisition agreement. Armco's specific obligations under the acquisition agreement to defend and indemnify 'the surviving companies' make the surviving companies, and under the express terms of the acquisition agreement 'their respective successors and assigns,' intended third-party beneficiaries of those obligations.

*Id.* at 4. Armco contended, in response, that Ladish was divested of any third-party standing to

11

enforce the contract because of agreement stated it was "not intended to and does not create any third-party beneficiary rights whatsoever." *Id*. at *4 n. 6. The court rejected this argument:

> [T]he clause does not defeat the express grant of enforceable indemnification rights to the 'surviving companies' and their 'successors and assigns.' Rather, as recognized by the trial court, the clause … was designed to cut off potential third-party beneficiary claims of those not 'specifically identified' by the agreement, such as suppliers and contractors.

*Id.*

In the same manner as in these cases, Section 9.05 of the MSA is properly interpreted as limiting only claims of third parties that are based on liabilities or obligations not specifically assumed by Delphi in the MSA. Because it is clear that Delphi assumed the OPEB Reimbursement Liability in the MSA, Section 9.05 of the MSA does not trump that explicit assumption. Accordingly, Debtors' no third-party beneficiary argument fails.

### 5. The Debtors' Supplemental Reply fails to distinguish *Caldwell* and *Armco*

The Debtors' Supplemental Reply, in a footnote, points out that the no third-party beneficiary clauses in each of *Caldwell Trucking* and *Armco* do not contain the phrase "express or implied," and are therefore distinguishable from the MSA's provision. (Debtors' Supplemental Reply at ¶ 6 n. 2.) Such semantic differences are immaterial because the phrase is mere surplusage.

First, note that the clause in *Caldwell* stated in relevant part:

> [N]o person, firm, or entity … other than the parties hereto, their respective successors and assigns shall be deemed a beneficiary of any of the representations, warranties or covenants contained herein.

421 F.3d at 245. This language is in no way distinguishable, in any material sense, from the relevant language in then MSA:

> [N]othing in [the MSA], express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of [the MSA] . . . .

The phrase "representation, warranties or covenants contained herein," is equivalent to the word "express" in the MSA. And "implied" rights adds nothing because such rights are by definition derived from "express" terms.

While the no third-party beneficiaries clause in *Armco* was slightly less verbose than that of *Caldwell* and the MSA, its mere presence leads to the logical conclusion that it must apply to the express and implied terms of the contract. The inclusion of the phrase "express or implied" in the MSA is simply irrelevant to the scope of the no third-party beneficiaries clause and to the parties' intention. The Debtors have not cited a single case holding that inclusion of this phrase could somehow render specific provisions to the contrary moot.

**6.    The EMA's no third party beneficiaries provision does not apply to the OPEB Reimbursement Liability claims.**

As detailed above, paragraph 3(a) of the EMA assigns to Delphi the OPEB Reimbursement Liability. To the extent that Guide's Claims are made under a third-party beneficiary theory, the EMA's "no third-party beneficiaries" provisions does not apply to the Claim. Paragraph 14 of the EMA state's the agreement's no-third party beneficiary understanding as follows:

> No provision in this EM Agreement or in any Schedule, including any Attachment thereto, shall confer upon any person, other than the signatories hereto, any rights or remedies with respect to the employment, compensation, benefits, or other terms and conditions of employment of any persons, provided that any rights to be provided under the Delphi Employee Benefit Plans or their successors, pursuant to this EM Agreement and the attached Schedules, shall be enforceable by the participants thereunder.

Guide's Claims do not relate to "employment, compensation, benefits, or other terms and conditions of employment." Guide's claims do not alter the nature or amount of any of these

13

employee obligations. Guide's Claims merely relate to a contractual reimbursement claim for monies owed by Delphi as an assignee. Under the EMA, Guide's Claims are proper.

## CONCLUSION

GM assigned the OPEB Reimbursement Liability to Delphi. As a result of that assignment, Guide has a direct right of action against Delphi to recover – via Guide's Claims – amounts owed pursuant to the OPEB Reimbursement Liability, and that right of action is independent of Guide's alternative ability to recover as a third-party beneficiary under the MSA and EMA. Even under a third-party beneficiary rubric, Guide's Claims are proper, because the "no third-party beneficiary" clause in Section 9.05 of the MSA, and Delphi's express assumption of the OPEB Reimbursement Liability via the assignment in Section 2.02 of the MSA must be interpreted in a consistent manner. They can be so interpreted here, i.e., those two provisions can and must be read to apply on a consistent basis, and they do. Section 2.02 of the MSA provides for GM's explicit assignment of its OPEB Reimbursement Liability to Delphi (and Delphi's acceptance of that assignment). Section 9.05 of the MSA applies to other matters set forth in the MSA that are not otherwise assigned, apportioned, or otherwise dealt with under other provisions of the MSA. The Court should recognize that construing the MSA in the way the Debtors request would give them carte blanche to ignore any specific obligation they choose; this is contrary to the clear intent of the parties which was to have Delphi assume, as an assignee, all aspects of the OPEB Reimbursement Liability.

Guide has provided ample sufficient factual and legal bases to state and support its Claims and, therefore, the Debtor's request seeking dismissal of the Claims should be denied.

14

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Attorneys for Lightsource Parent Corporation and Guide Corporation

Dated: January 8, 2008            By: /s/ E. Todd Sable
                                      Lawrence J. Murphy (P47129)
                                      Gregory R. Schermerhorn (P44016)
                                      E. Todd Sable (P54956)
                                  2290 First National Building
                                  660 Woodward Ave.
                                  Detroit, MI  48226-3506
                                  Telephone:  (313) 465-7488
                                  Facsimile:  (313) 465-7489
                                  E-Mail:  lmurphy@honigman.com

DETROIT.2930874.3

15