Objection Deadline: TBD
Hearing Date / Time: TBD

David S. Rosner (DR-4214)
Adam L. Shiff (AS-7571)
Daniel N. Zinman (DZ-7562)
Daniel A. Fliman (DF-2236)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to Argo Partners, Inc., ASM Capital,*
*Avenue Capital Management, LLC,*
*Contrarian Capital Management, LLC,*
*Hain Capital Group, Longacre Master Fund, Ltd.,*
*and Sierra Liquidity Fund, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re                                              :      Chapter 11
                                                   :
DELPHI CORPORATION, et al.,                        :      Case No. 05-44481 (RDD)
                                                   :
                            Debtors.               :      (Jointly Administered)
--------------------------------------------------------------x

## MOTION FOR ORDER (I) EXTENDING DEADLINE FOR SUBMISSION OF CURE NOTICES, (II) APPROVING THE CURE NOTICES EXECUTED BY MOVANTS WITH RESPECT TO THEIR CLAIMS, AND (III) DIRECTING THE DEBTORS (A) TO RECONCILE CURE CLAIMS WITH CORRESPONDING CLAIMS, AND (B) TO MAKE CURE CLAIM DISTRIBUTIONS DIRECTLY TO MOVANTS

Argo Partners, Inc., ASM Capital, Avenue Capital Management, LLC, Contrarian Capital

Management, LLC, Hain Capital Group, Longacre Master Fund, Ltd., and Sierra Liquidity Fund,

LLC (collectively, the "Movants") hereby file this motion (the "Motion") for an order (a)

extending the deadline for submission of the Cure Notices (as defined below) from January 11,

2008 through January 16, 2008, (b) approving the Cure Notices executed by the Movants with

respect to their claims, and (c) directing the Debtors (i) to reconcile the Cure Amounts (as

defined below) with corresponding claims, and (ii) to make any distributions on account of the

Cure Amounts directly to the Movants.  In support of this Motion, the Movants respectfully

represent as follows:

## Preliminary Statement

The Movants (which comprise the Delphi Trade Committee, as defined below) support

the Debtors' proposed plan of reorganization and are not seeking to derail its confirmation in any

way.  This Motion is borne out of pure necessity.  The Movants are the undisputed holders of

numerous claims filed against the Debtors and such claims are the subject of properly filed

notices of transfer pursuant to Bankruptcy Rule 3001(e).

In connection with resolution of certain objections the Movants had to the Debtors'

proposed plan of reorganization, Disclosure Statement (as defined below) and EPCA

Amendment Motion (as defined below), the Debtors agreed to "to use commercially reasonable

efforts to reconcile, and if agreed, allow on or before the confirmation date trade claims held by"

the Movants.  (See Exhibit A, Excerpt of December 6, 2007 Hearing, at 10:9-13:5).  While the

Debtors have seemingly technically complied with the obligations under the Solicitation Order

(as defined below), this has had the result (intended or not) of disenfranchising Movants and

undermining the agreement put on the record before this Court just 3 weeks ago.  The Debtors

attempted to take away the Movants' rights to elect treatment for the cure claims which they

own.  The Movants have expended tremendous time and resources to comply with a technical

reading of the Solicitation Order by attempting to contact each and every one of their transferors;

having them locate the forms received from the Debtors; and having them complete such forms

and send them to the Debtors' claims agent.  Such efforts have been stymied due to the Debtors'

claims agent's delay in responding to requests for additional notices, inherent delays from the

2

contract counterparties, the intervening holidays, and by the Debtors' failure to provide the very information that they committed to provide before the Court.

The fix here is simple. The deadline for responding to Cure Notices should be extended briefly to permit the Movants an opportunity to contact all contract counterparties and ensure proper election through Cure Notices and to recognize Cure Notices executed by the Movants. The Debtors must also provide all necessary information and undertake all efforts to ensure that the Movants, as rightful claimholders, will be able to elect treatment of their claims. That is what is necessary for the Debtors to honor their commitment to use "commercially reasonable efforts to reconcile" all claims including cure claims and to protect the Movants' due process rights.

## Background

1.    The Movants comprise the Committee of Delphi Trade Claim Holders (the "Delphi Trade Committee").

2.    The Movants each hold trade claims against the Debtors obtained through post-petition transfers (the "Claims Transfers"). Each Claims Transfer is governed by a transfer agreement between a Movant, as transferee, and the prior claimholder, as transferor (collectively, the "Transfer Agreements"). The Movants each filed notices of the Claims Transfers pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure.

3.    On November 21, 2007, the Delphi Trade Committee filed objections to the Debtors' First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (the "Disclosure Statement") and to the Debtors' Expedited Motion for Order Under 11 U.S.C.

3

§§ 105(a), 363(b), 503(b), and 507(a) Authorizing and Approving Amendment to Delphi-

Appaloosa Equity Purchase and Commitment Agreement (the "EPCA Amendment Motion").

     4.      Thereafter, the Delphi Trade Committee and the Debtors negotiated a global

resolution of the Delphi Trade Committee's objections to the Disclosure Statement and the

EPCA Amendment Motion.  On December 6, 2007, at the hearings on the Disclosure Statement

and the EPCA Amendment Motion, Debtors' counsel read into the record the agreement between

the Delphi Trade Committee and the Debtors (and approved by the Official Committee of

Unsecured Creditors).  That agreement, in pertinent part, was described by counsel to the

Debtors as follows:

> The two things we have agreed to do with respect to the ad hoc trade committee,
> is first **we've agreed to use commercially reasonable efforts to reconcile, and
> if agreed, allow on or before the confirmation date trade claims held by
> members of the ad hoc trade committee.** They're identified by both, holder and
> claim number, conforming to the official claims register in these Chapter 11
> cases, in writing to the debtors by no later than December 10, 2007." And given
> where we are, Your Honor, in the claims administration process we don't view
> that to be an undue burden on the estates.
>
>                              \*\*\*\*
>
> As Your Honor knows, from the claims protract process 1 [sic], we have
> reconciled substantially all of the trade claims of this case at this point. They want
> to make sure that to the extent that we haven't reconciled their claims they want
> them reconciled.

(See Exhibit A, Excerpt of December 6, 2007 Hearing, at 10:9-13:5) (emphasis added).

     5.      On December 10, 2007, the Court entered an Order Approving (I) Disclosure

Statement, (II) Record Date, Voting Deadline, and Procedures For Temporary Allowance of

Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing

Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures,

4

(VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII)

Reclamation Claim Procedures (the "Solicitation Order"). [Docket No. 11389]

6.       The Solicitation Order approved two forms of notice with respect to cure claims.

See Solicitation Order at ¶¶ 43-44; Exhibits O & P. First, it approved a form Notice of Cure

Amount With Respect to Executory Contract to be Assumed or Assumed and Assigned Under

Plan of Reorganization (the "Transferor Notice") to be sent to each contract counterparty (the

"Cure Transferors") and containing a schedule identifying the specific contract being assumed

and the Debtors' proposed cure amount for that contract (the "Cure Amount"). See Solicitation

Order at ¶ 43; Exhibit O. The Transferor Notice provides an opportunity to accept or reject the

Debtors' proposed Cure Amount and, if accepting that amount, to elect whether to receive cash

payment or stock distribution. The Transferor Notice further provides that any form not timely

submitted to the Debtors' claims agent, will be deemed an acceptance of the Debtors' proposed

Cure Amount and an election for stock distribution.

7.       Second, the Solicitation Order approved a form Notice to Holders, Assignees,

Transferees, and Purchasers of Claims of Cure Procedures Established Under Solicitation

Procedures Order (the "Transferee Notice") to be sent to each assignee, transferee, or purchaser

of a claim from a Cure Transferor (the "Cure Transferees"). See Solicitation Order at ¶ 44;

Exhibit P. Unlike the Transferee Notice, the Transferor Notice is a generic form that does not

identify the contract counterparty, the contract itself, or the proposed cure claim, but rather

simply states:

> you are receiving this notice as a courtesy because the claims register of
> Kurtzman Carson Consultants, LLC, the claims agent approved by the
> Bankruptcy Court, indicates that you may hold or may have purchased a claim
> from one or more of the Counterparties to whom the Cure Notice and election was
> sent.

5

<u>See</u> Solicitation Order, Exhibit P.  The Transferee Notice provides no information that would enable a Cure Transferee to identify the relevant Cure Transferor, contract being assumed, or Debtors' proposed cure amount for that contract.

8.      With respect to making cure payments, the Solicitation Order provides that "[t]he Debtors are authorized, but not directed, to remit resolved, uncontested, or adjudicated distributions on account of cure directly to the contract party whose contract is being assumed or assumed and assigned." <u>See</u> Solicitation Order at ¶ 43.

9.      Upon information and belief, on or about December 21, 2007, the Debtors attempted to send Transferor Notices to the Cure Transferors that transferred claims to the Movants (the "Cure Notices") and the Transferee Notices to the Movants.

10.     On December 28, 2007, counsel for the Delphi Trade Committee informed Debtors' counsel that the Transferee Notices lacked the information necessary for the Movants to track-down Cure Notices and to match-up proposed Cure Amounts with proofs of claim because they "did not reference the claim numbers, the original claimant or the cure amount." <u>See</u> Exhibit B.  And counsel for the Delphi Trade Committee explained:  "As it stands, it is nearly impossible for my clients to determine which of their claims the Debtors are proposing to assume and cure and the amounts of those cures." <u>Id.</u>

11.     On telephone calls held January 2 and 3, 2008, counsel for the Debtors and counsel for the Delphi Trade Committee discussed various issues affecting claims reconciliation. Counsel for the Delphi Trade Committee again explained the urgent need for a list reconciling Cure Amounts with specific proofs of claim.

12.     Late in the evening on Friday, January 4, 2008, (less than a week before the Cure Notices need to be sent to the Debtors' claims agent) counsel for the Debtors provided the Delphi

6

Trade Committee with lists of contracts, cure amounts, and contract counterparties. Those lists did not correlate Cure Amounts with proofs of claim or scheduled claims. Thus, there is no effective means for a Movant to ascertain whether a proposed Cure Amount will impact its claims. As an illustration, if a Cure Notice lists a proposed Cure Amount of $0.00 with respect to purchase order no. 123 with counterparty X, a Movant must determine whether the $0.00 Cure Amount would reduce any portion of that Movants' claims. To do so, the Movant must search every claim it holds acquired from counterparty X and then determine whether purchase order no. 123 is a subset of those claims. The difficulty with this is that proofs of claim often reference invoice numbers (from the counterparty to the Debtors) rather than purchase orders (from the Debtors to the counterparty) and, even where the information is available, proofs of claim often involve hundreds of purchase orders. As such, without information correlating proofs of claim with Cure Amounts, there is no expedient and efficient way for the Movants to protect their claims.

13.    In the related email transmittal, Debtors' counsel stated: "Because cure payments are to cure section 365 defaults of assumed contracts, the cure notices were sent to the contract counterparties. For this reason, the file does not reference proof of claim numbers. The committee members should, however, be able to readily sort the cure file by supplier name and match those supplier names with their lists of claims that they hold." See Exhibit C. However, they cannot. In the same email, Debtors' counsel denied the Delphi Trade Committee's request for additional time to respond to Cure Notices saying: "We are on a very tight deadline with the upcoming confirmation hearing scheduled to commence on January 17, 2008. The attached file should provide you with sufficient information to determine which of their claims are affected by Delphi's cure notices." Id.

7

14.    On January 7, 2008, counsel for the Delphi Trade Committee contacted Debtors'

counsel, yet again, asking for a list reconciling proofs of claim with Cure Amounts.  Despite

their agreement to reconcile claims, the Debtors refused arguing it was the Movants' burden to

sift through the list of more than 3,000 contract counterparties and to contact each relevant Cure

Transferor to ensure proper treatment election.  On that call, the Delphi Trade Committee again

requested an extension of the January 11, 2008 Cure Notice deadline.  The Debtors rejected that

request.  In an effort to reach a consensual resolution, counsel for the Delphi Trade Committee

then proposed a stipulation whereby the Debtors would consent to the Movants directly electing

treatment under the Cure Notices and the Movants would agree to resolve (at their expense) any

disputes with Cure Transferors arising from such election.  The Debtors rejected that proposal as

well.

15.    The Movants have been taking every reasonable measure to contact Cure

Transferors to ensure proper treatment election in the Cure Notices.  They have contacted each

Cure Transferor believed to be party to a contract covered by a Cure Notice and advised of the

impending deadline and the procedures for electing treatment.  Due those efforts, Movants

believe that a majority of the Cure Notices have been or will be submitted in strict compliance

with the Solicitation Order.  However, because of the lack of information necessary to tie Cure

Amounts to proofs of claim or scheduled claims and the short timeframe including the

intervening holiday season (and a two week shutdown in the automotive industry), that task has

proven impossible.  Moreover, due to the numerous addresses used by many of the contract

counterparties, in many instances Cure Notices were never received by the office of the Cure

Transferors responsible for handling the claims and it has been difficult to obtain replacement

8

forms from the Debtors' claims agent. As such, the Movants stand to lose the opportunity to elect treatment of their claims.

## Relief Requested

16.     By this Motion, the Movants request an Order (a) extending the deadline for submission of the Cure Notices from January 11, 2008 through January 16, 2008, (b) approving the Cure Notices executed by the Movants with respect to their claims, and (c) directing the Debtors (i) to reconcile the Cure Amounts (as defined below) with corresponding claims, and (ii) to make any distributions on account of the Cure Amounts directly to the Movants.[1]

**A.     The Court Should Extend The Deadline
For Movants To Submit Cure Notices.**

17.     Bankruptcy Rule 9006(b)(1) authorizes this Court to extend the Cure Notice deadline "for cause shown". Fed. R. Bank. P. 9006(b)(1). Where, as here, the procedures approved by this Court have the effect of depriving parties of proper notice and render them unable to exercise all their rights, an enlargement of time is appropriate.

18.     Moreover, the Debtors would suffer no prejudice if the Cure Notice deadline were extended. Pursuant to the Debtors' plan, no distributions of cash, on account of administrative claims, or of stock, on account of general unsecured claims, will be made until after the Plan effective date. See Plan §§ 2.1 and 5.3. Indeed, under the Solicitation Order, any disputes regarding the amount of a Cure Amount will be resolved well after the Plan effective date. See Solicitation Order ¶ 43 (requiring creditors objections to cure amounts to be filed "on or before

---

[1]     Because the January 11, 2008 Cure Notice deadline has not yet expired, the Court is authorized to grant such extension *ex parte* pursuant to Bankruptcy Rule 9006(b)(1) which permits extension of a deadline that has not yet passed "with or without motion or notice." See Fed. R. Bankr. P. 9006.

9

the date that is 30 days following the effective date of the Plan."). Thus, there is no rush on this issues that would be impacted by a brief extension.

19.     The upcoming confirmation hearing poses no meaningful time constraint. The only relevant date triggered by commencement of the confirmation hearing is the record date for the discounted rights offering, but that poses no real urgency. First, the confirmation hearing is set to begin on January 17, 2008 which could easily accommodate at least a six (6) day extension of the Cure Notice submission deadline. Second, the Debtors can easily reserve distributions pending treatment election, so that the record date does not pose a limitation. Third, the Solicitation Order already contemplates that Cure Amounts will not be determined until well after the Plan effective date, so any delay in the Cure Notice submission deadline would have no realistic impact on the Debtors, their estates, or a feasibility analysis.

20.     Finally, while the issue of sources and uses of cash will undoubtfully be an issue at the confirmation hearing, the Cure Notices impacted by the extension aggregate to a de minimis amount in context of these cases.

21.     The Debtors have not articulated any valid basis for opposing the requested extension. And, indeed, they cannot do so. Moreover, had the Debtors provided information sufficient for the Movants to correlate Cure Amounts with proofs of claim or scheduled claims as first requested on December 28, 2007, the need for an extension might have been avoided. While the Movants would suffer real and immediate harm if they cannot exercise all their rights with respect to the cure claims, the Debtors would suffer no harm from such extension.

22.     The Debtors appear to be acting solely with the goal of minimizing the amount of Cure Notices submitted thereby maximizing the amount of cure claims paid through stock (the

10

Debtors' preferred currency for treating cure claims).[2] Given the Debtors' fiduciary duties to all

constituencies including the Movants, such motivation is impermissible.

**B.      The Court Should Approve The Cure Notices
        Executed By The Movants With Respect To Their Claims.**

23.      Pursuant to the Transfer Agreements, the Movants, not the Cure Transferors are

entitled to elect treatment of the Cure Amounts.  That is a matter of public record of which the

Debtors received notice pursuant to Bankruptcy Rule 3001(e) whereby each Movant was

"substituted for the transferor."  See Rule 3001(e)(2).  The Movants seek authority to use their

powers of attorney and other rights under the Transfer Agreements, consistent with Bankruptcy

Rule 3001(e), to submit the Cure Notices.

24.      Although the underlying Transfer Agreements give the Movants the right to elect

treatment of their claims, the Movants would resolve any disputes that may arise with Cure

Transferors with respect to treatment election, just as they would with any other claim dispute.[3]

Any such issues could be addressed after confirmation contemporaneously with the Debtors'

process to resolve any disputes with respect to Cure Amounts.  That would mitigate any of the

Debtors' concerns arising from Movants electing cure claim treatment.

25.      Moreover, this is entirely consistent with the process used for soliciting votes in

this and in virtually every other case.  The Solicitation Order provides that the ballots to vote

claims are sent to the Cure Transferees, meaning the current claimholders, for execution.  Indeed,

---

[2]      Bankruptcy Code section 365(b)(1) and the Debtors' proposed plan require the Debtors to
        provide cash payment to cure claim holders, unless they agree otherwise.  Denying
        Movants the opportunity to elect treatment is in clear derogation of the intent of section
        365(b)(1).

[3]      Movants believe that pursuant to the Transfer Agreements in the event a Cure Transferor
        elects a treatment different from the treatment elected by the applicable Movant, the
        Movant's election governs.  To the extent that this occurs, Movants submit that such
        inconsistent Cure Notices executed by Cure Transferors be invalidated.

11

the irony here is that for the claims that are subject to the Cure Notices, the Cure Notices were

addressed to the Cure Transferees, but the ballots on the same exact claims were addressed to

Cure Transferors.

26.    The logical, simple, and fair solution is to permit the Movants to elect cure claim

treatment consistent with their rights under the Transfer Agreements and Bankruptcy Rule

3001(e).

**C.    The Court Should Authorize And Direct
       The Debtors To Reconcile Cure Amounts
       With Corresponding Claims Held By Movants.**

27.    Tying Cure Amounts to proofs of claim and scheduled claims is critical for the

Movants to determine which claims will be affected, the correctness of the Debtors' proposed

Cure Amount, and to track down the relevant Cure Notice to ensure proper election of treatment.

28.    The Debtors are best positioned to provide that information. They have, at their

fingertips, information regarding each claim and the underlying obligations including purchase

orders and invoices. That is clearly demonstrated by the Debtors' various omnibus "books and

records" claims objections. In fact, even if they have not done so already, the Debtors eventually

will have to perform this analysis anyway if they plan to reduce claims based on cure payments

made; otherwise, the Debtors would pay cure claims twice. So, there is no concern of added

administrative expense. The Movants respectfully request that the Court direct the Debtors,

consist with their commitment to "use commercially reasonable efforts to reconcile" Movants'

claims, to perform this reconciliation immediately, if they have not done so already, and if they

have, that they share it with Movants immediately.

29.    Moreover, the Debtors clearly are able to track claims transfers. The ballots sent

to the Movants, as well as the Transferee Notices, clearly demonstrate that the Debtors can track

claims transfers of underlying claims from the Cure Transferors to the Cure Transferees. The

Debtors' clear ability, but stubborn refusal, to perform this analysis is highly problematic.

30.     Given what is at stake -- the prevention of claimholders from exercising their

rights to elect cure claim treatment -- the Court should direct the Debtors to perform immediately

the analysis they will eventually have to conduct anyway.

**D.     The Court Should Authorize And Direct The
Debtors To Make Any Distributions On Account
Of Cure Claims Directly To Movants.**

31.     Pursuant to the Transfer Agreements, the Movants and not the Cure Transferors

are entitled to distributions on account of claims transferred to the Movants. Moreover, in

accordance with Bankruptcy Rule 3001(e), the Movants and not the Cure Transferors are the

record holders of those claims. Thus, the Movants are entitled to receive all cure claim

distributions.

32.     The Solicitation Order authorizes, but does not direct, the Debtors to remit cure

payments to the Cure Transferors. See Solicitation Order at ¶ 43. The Movants respectfully

request that the Court direct the Debtors to deliver all distributions on account of Cure Amounts

directly to the applicable Movants. If such amounts are given directly to the Cure Transferors

there will once again need to be a massive effort to locate the funds and arrange for their transfer

to the applicable Movants. The Movants will work with the Debtors in good faith to agree on a

mechanism for delivering Cure Amount distributions that is mutually acceptable to the Movants

and the Debtors in those few instances where there may be questions as to delivery (e.g., escrow

mechanism).

13

## Waiver of Memorandum of Law

33.    Pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern

District of New York, because there are no novel issues of law presented herein, the Movants

respectfully request that the Court waive the requirement that the Movants file a memorandum of

law in support of this Motion.

## CONCLUSION

For the foregoing reasons, the Movants respectfully request that the Court enter an Order

substantially in the form attached hereto as Exhibit D granting the relief requested herein and

grant such other and further relief as is just and proper.

Dated: January 9, 2008
        New York, New York

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

/s/ Adam L. Shiff
David S. Rosner (DR-4214)
Adam L. Shiff (AS-7571)
Daniel N. Zinman (DZ-7562)
Daniel A. Fliman (DF-2236)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile:  (212) 506-1800
Counsel to *Argo Partners, Inc., ASM
Capital, Avenue Capital Management, LLC,
Contrarian Capital Management, LLC,
Hain Capital Group, Longacre Master
Fund, Ltd., and Sierra Liquidity Fund, LLC*