BODMAN LLP
Ralph E. McDowell (P39235) (Admitted Pro Hac Vice)
*rmcdowell@bodmanllp.com*
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592

Attorneys for Lear Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____/

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

_____/

**OBJECTION OF LEAR CORPORATION (ON BEHALF OF ITSELF AND ITS AFFILIATES AND SUBSIDIARIES) TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) ESTIMATING OR PROVISIONALLY ALLOWING CERTAIN UNRECONCILED CLAIMS SOLELY FOR PURPOSES OF <u>ADMINISTRATION OF DISCOUNT RIGHTS OFFERING</u>**

Lear Corporation (on behalf of itself and the Lear Entities listed below[1] (collectively, "<u>Claimant</u>") states the following in support of its objection to Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) Estimating or Provisionally Allowing Certain Unreconciled Claims Solely for Purposes of Administration of Discount Rights Offering ("<u>Rights Offering Estimation Motion</u>"):

---

[1] Lear Corporation, Lear Operations Corporation, Lear Electrical Systems de Mexico, S de RL de CV/Lear Corporation EEDS and Interiors, Lear Corporation Silao, Lear Corporation Mexico, SA de CV, Lear Corporation Mendon, Lear Corporation Electrical & Electronics, Lear Corp EEDS and Interiors, Lear Canada (Partnership), Lear Automotive EEDS Spain SL, Integrated Manufacturing and Assembly, LLC, Industrias Lear de Argentina Srl.

1.      On October 8, 2005, Delphi and various affiliates and/or subsidiaries (collectively "Debtors") filed a petition for relief under chapter 11 of the United States Bankruptcy Code.

2.      On October 28, 2005 the Court entered the Final Order under 11 U.S.C. §§ 105, 361, 362, 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), and 364(e) and Fed.R.Bankr.P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Postpetition Financing, (II) To Utilize Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Parties entered October 28, 2005 ("Final Financing Order").  The Final Financing Order defines "Setoff Right" to include both setoff and recoupment rights arising in the ordinary course of business.  Claimant sought to exercise its recoupment rights against certain Debtors (defined below).

3.      Paragraph 18 of the Final Financing Order provides a procedure for parties to identify Setoff Rights and, upon approval under that procedure, for the lifting of the automatic stay to allow exercise of those Setoff Rights.

4.      Debtors and Claimant supply each other with component parts.

5.      Claimant purchases component parts from Debtors under certain purchase orders ("Claimant Purchase Orders").  Prior to the Petition Date, under the Claimant Purchase Orders, Debtors provided component parts to Claimant for which Debtors remain unpaid.  Based on the reconciliation performed to date and on payments made by Claimant, and before consideration of Claimant's Setoff Rights, the prepetition amount owing to Debtors from Claimant ("Claimant Prepetition Payable") exceeds the Debtor Prepetition Payable (defined below).  Claimant has placed a temporary, administrative hold on the Claimant Prepetition Payable.

6. Debtors also purchase various component parts from Claimant under certain purchase orders ("Delphi Purchase Orders"). Prior to the Petition Date, under the Delphi Purchase Orders, Claimant provided component parts to Debtors for which Claimant remains unpaid. To date, the prepetition amount identified as owing to Claimant from Debtors is approximately $1,932,000 ("Debtor Prepetition Payable").

7. Each Claimant Purchase Order is subject to Claimant's Terms and Conditions. They provide that all amounts due to the applicable Debtor, as Seller, shall be considered net of indebtedness or obligations of Seller and its respective affiliates and subsidiaries to Claimant, as Purchaser.

> "24.  Setoff – In addition to any right or setoff or recoupment provided by law, all amounts due Seller [one of the Debtors], or its subsidiaries or affiliates shall be considered net of indebtedness or obligations of Seller, or its subsidiaries or affiliates to Purchaser [Claimant] or its subsidiaries or affiliates, and Purchaser or its subsidiaries or affiliates may setoff against or recoup from any amounts due or to become due from Seller, or its subsidiaries or affiliates to Purchaser or its subsidiaries or affiliates however and whenever arising."
>
> *    *    *
>
> "If an obligation of Seller or its subsidiaries or affiliates to Purchaser is disputed, contingent or unliquidated, Purchaser may defer payment of the amount due until such obligation is resolved."

8. Claimant's Purchase Order Terms and Conditions applicable to all Claimant Purchase Orders.

9. This provision applies to all Claimant Purchase Orders at issue here. At the time Debtors entered into and began performing under the Claimant Purchase Orders and Delphi Purchase Orders, Debtors knew of this term regarding recoupment.

10. Claimant has not taken a recoupment, nor have Debtors in any way compensated Claimant for the Debtor Prepetition Payable. The entire amount of the Debtor Prepetition Payable was incurred by Debtors prepetition. The entire amount of the Claimant Prepetition Payable was incurred by Claimant prepetition. Claimant has a right to recoup the Claimant Prepetition Payable against the Debtor Prepetition Payable.

11. Based on the Setoff Rights described above, on July 28, 2006, Claimant filed its secured proof of claim against Debtor Delphi Automotive Systems, LLC [Claim No. 14015] ("Claim").

12. To date, Debtors have not objected to the Claim. During the course of the past two years, Debtors and Claimant have been working toward resolving the Claim.

13. In the Rights Offering Estimation Motion, Debtors seek to estimate the Claim in the amount of $0 for purposes of the Discount Rights Offering (as defined in the Rights Offering Estimation Motion).

14. The relief requested in the Rights Offering Estimation Motion is objectionable and should not be granted because it allows Debtors both to reduce, under the guise of mere estimation, the distribution that Claimant might receive on account of the Claim and to circumvent the Claim Objection Procedures that are already in place. More specifically, the Rights Offering Estimation Motion should be denied because (a) §502(c) of the bankruptcy code does not allow for estimation of disputed claims; (b) it is an attempt to circumvent the Claims Objection Procedures already in place; (c) the Rights Offering Estimation Motion does not provide for any reserve in the event that the Claim is allowed in an amount greater than the Discounted Rights Participation Amounts (as defined in the Rights Offering Estimation Motion),

i.e., zero; and (d) Debtors unfairly propose that Claimant pay Debtors if the Claim is allowed in an amount less than the Discounted Rights Participation Amounts at an undetermined "value".

### (A) The Bankruptcy Code does not allow for Estimation of Disputed Claims

15. Section 502(c) of the Bankruptcy Code provides, in relevant part:

> "[t]here shall be estimated for purposes of allowance under this section (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case".

Section 502(c) allows courts to estimate only contingent and unliquidated claims, but not claims that are merely disputed. *In re Comdisco, Inc.*, 271 B.R. 273 (Bankr. N.D. Ill. 2002). *See also In re Keenan,* 201 B.R. 263 (Bankr. S.D. Cal. 1996).

16. The Claim, though disputed, is neither contingent nor unliquidated. Debtors have not asserted that the Claim is contingent and the mere fact that Debtors have contested the Claim does not make the Claim contingent. *Mazzeo v. United States (In re Mazzeo),* 131 F3d 295, 303 (2nd Cir. 1997) (debts are not contingent merely because a debtor disputes a claim because definition of "Claim" in the bankruptcy code includes the word "contingent"). Also, Debtors have not asserted that the Claim is unliquidated because the Claim is, in fact, liquidated because it is subject to ready determination and precision in computation of the amount due. *Mazzeo* 131 F3d at 304. Because the Claim is neither contingent nor unliquidated, Debtors should not be allowed to estimate it for purposes of the Discount Rights Offering.

### (B) The Rights Offering Estimation Motion is an Attempt by Debtors to Circumvent the Claims Objection Procedures Already in Place

17.     Any objection by Debtors to the Claim would proceed under the procedures outlined in the Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007 and 9014 Establishing (I) Dates for Hearing Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims (the "Claim Objection Procedures Order") [Docket No. 6089] crafted by Debtors.  As stated above, the Claim is not currently subject to an Objection.

18.     The procedures proposed in the Claims Estimation Motion conflict with those of the Debtors' Claim Objection Procedures Order.  The Claims Estimation Motion is an improper attempt to circumvent the Claim Objection Procedures Order.  As noted above, Claimant and Debtors have been attempting to settle the Claim.  If these negotiations cease and Debtors object to the Claim, Claimant does not wish to forego the protections offered it under the Claims Objection Procedures Order.  Debtors are requesting that the Court override the Debtors' own procedures under the Claims Objection Procedures Order by allowing the Debtors to reduce partially the Claim by means of estimation.  Debtors should not be allowed to do so.

19.     Further, though this Court has the discretion to establish procedures to estimate the value of contingent or unliquidated claims, for purposes of allowance when a full adjudication of such claims would unduly delay case administration, this Court should also evaluate whether the procedures meet general due process requirements.  *See In re Adelphi Bus. Solutions, Inc.*, 341 BR 415 (Bankr SDNY 2003).  Because the Rights Offering Estimation Motion would allow Debtors to reduce the Claim, not merely to estimate the Claim, the relief requested in the Rights Offering Estimation Motion violates Claimant's due process rights.  Furthermore, any delay in the adjudication of the Claim rests solely with Debtors and Claimant

should not have the Claim reduced unjustly because of Debtors' dilatory administration of the Claim.

### (C) The Rights Offering Estimation Motion does not provide for the possibility that the Claim might be allowed in an amount greater than the Discount Rights Offering Participation Amount and a Reserve

20. The Rights Offering Estimation Motion does not contemplate the possibility that Debtors' estimate of the Claim (zero) is too low. While Paragraph 17 of the Rights Offering Estimation Motion address the procedure for a given claimant to return Excess Discount Rights (as defined in the Rights Offering Estimation Motion) to Debtors in the event that Debtors estimate a given claim in an amount greater than the eventual allowed amount of such claim, Debtors do not provide any procedures for the converse possibility in which Debtors estimate is less than the eventual allowed amount of such claim. If the Claim is eventually allowed in an amount greater than the $0 estimate provided in the Rights Offering Estimation Motion, Claimant will have no recourse under the proposed Rights Offering Estimation Order to regain the Discount Rights it would have had if the Discount Rights Offering Participation Amount was equal to the allowed amount of the Claim. Debtors need to revise the proposed order so as to deal with this contingency and establish a reserve of Discount Rights.

### (D) The Rights Offering Estimation Motion does not provide for the possibility that the Claim might be reclassified as unsecured

21. The Rights Offering Estimation Motion also does not contemplate the possibility that the Claim, or a portion of it, may be reclassified as unsecured. Under the Plan, secured claims are not entitled to participate in the Discount Rights Offering. If Debtors agreed that the Claim was secured, there would be no issue. In fact, Debtors disagree that the claim is secured. Debtors do not provide for the possibility that the Claim might be reclassified as unsecured. If

the Claim was thus reclassified, Claimant would not be able to regain any Discount Rights it would otherwise have had.  Debtors need to revise the proposed order so as to deal with this contingency or agree that the Claim is secured. The Debtor should not be able to, on one hand, object to the secured status of a claim, and then, on the other hand, estimate the resulting unsecured claim at zero.

**(E)     The Rights Offering Estimation Motion unfairly seeks payment from a claimant in the event a disputed claim is allowed in an amount less than the estimated amount**

22.    Paragraph 17 of the Rights Offering Estimation Motion provides that if the estimation of a claim results in a claimant receiving Excess Discount Rights (as defined in the Rights Offering Estimation Motion) than, in Debtors' discretion, either (a) Debtors will withhold an amount of New Common Stock equal to the value of the Excess Discount Rights from the ultimate distribution to such claimant or "(b) such claimant will be required to remit payment to the Reorganized Debtors in an amount equal to <u>the value</u> of the Excess Discount Rights."  Emphasis added.  Claimant does not have any objection to the withholding of New Common Stock from the ultimate distribution on the Claim.  However, Claimant objects to the requirement that it be required to pay Debtors cash in exchange for the ability to purchase discounted shares of New Common Stock at a "value" not determined.

23.    Any reply to this Objection should be addressed to the following:

-8-

        Ralph E. McDowell
        Bodman LLP
        6th Floor at Ford Field
        1901 St. Antoine Street
        Detroit, Michigan 48226
        (313) 393-7592
        (313) 393-7579 (fax)
        rmcdowell@bodmanllp.com

24. Because the legal points and authorities upon which this objection relies are incorporated and do not represent novel theories of law, Claimant requests that the requirement of the filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied

### RELIEF REQUESTED

Claimant requests that the Court deny the relief requested under the Rights Offering Estimation Motion as to the Claim.

Dated: January 10, 2008        BODMAN LLP


        By:   /s/   Ralph E. McDowell
        Ralph E. McDowell (P39235)
        (Admitted Pro Hac Vice)
        Attorneys for Lear Corporation
        6th Floor at Ford Field
        1901 St. Antoine Street
        Detroit, Michigan 48226
        (313) 393-7592
        *rmcdowell@bodmanllp.com*

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing *Objection of Lear Corporation to Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) Estimating or Provisionally Allowing Certain Unreconciled Claims Solely for Purposes of Administration of Discount Rights Offering* was electronically filed using the Court's CM/ECF filing system, and that a true and correct copy of the same was served via Federal Express to the parties identified below:

Delphi Corp.
5725 Delphi Drive
(Attn: General Counsel)
Troy, Michigan 48098

Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
(Attn: John Wm. Butler, Jr.; John K. Lyons, Joseph N. Wharton)
Chicago, Illinois 60606

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Attn: Donald Bernstein and Brian Resnick

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Robert Rosenberg and Mark A. Broude

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attn: Bonnie Steingart

A-D Acquisition Holdings, LLC
c/o Appaloosa Management L.P.
White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
(Attn: Thomas E. Lauria)

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036

(Attn: John M. Reiss and Gregory Pryor)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
(Attn: Jeffery L. Tanenbaum, Michael P. Kessler, and Robert J. Lemons)

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street
Suite 2100
New York, New York 10004
(Attn: Alicia M. Leonhard)

and

The Honorable Robert D. Drain
United States Bankruptcy Judge
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
Room 610
New York, New York 10004

|  |  |
|---|---|
|  | /s/ Ralph E. McDowell |
| Dated: January 10, 2008 | Ralph E. McDowell |

Detroit_818137_3