Hearing Date and Time: January 17, 2008 at 10:00 a.m.
Objection Deadline: January 11, 2008 at 4:00 p.m.

**DAVID N. GOLDSWEIG, ESQ. (7439)**
**(Member of the New York Bar and Admitted to**
**The United States District Court for**
**The Southern District of New York)**
**37599 Eagle Trace**
**Farmington Hills, Michigan 48331-4820**
**248-770-7853**
**248-721-4147 (fax)**
**david@goldsweig.com**

**Attorney for David N. Goldsweig,**
      **Creditor**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                                        :
    **In re**                                :        **Chapter 11**
                                        :
**DELPHI CORPORATION, et al.,**    :        **Case No. 05-44481 (RDD)**
                                        :
                   **Debtors.**      :        **(Jointly Administered)**
                                        :
---------------------------------------------------------x

**OBJECTION TO DISCOUNT RIGHTS PARTICIPATION AMOUNT**

                           **AND**

**OBJECTION TO MOTION OF DELPHI CORPORATION, et al., FOR ORDER PURSUANT TO 11 U.S.C. SECTIONS 105(a) AND 502(c) ESTIMATING OR PROVISIONALLY ALLOWING CERTAIN UNRECONCILED CLAIMS SOLELY FOR PURPOSES OF ADMINISTRATION OF DISCOUNT RIGHTS OFFERING ("OBJECTION TO RIGHTS OFFERING ESTIMATION MOTION")**

<u>I.</u>

**David N. Goldsweig (the "Creditor) hereby submits this Objection to the Discount Rights Offering Participation Amount set out in the Notice of Motion for Order Pursuant to 11 U.S.C. Sections 105(a) and 502(c) Estimating or Provisionally Allowing Claim Solely for Purposes of Administration of Discount Rights Offering (the "Notice"), and respectfully represents as follows:**

1.      The Discount Rights Offering Participation Amount, $494,594.60, set forth in the Notice is wrong for any and every purpose.  It should be $1,233,634.80, which is set forth in Creditor's Proof of Claim, attached as Exhibit A (2 pages).

2.      Not until January 2, 2008 did Creditor first receive from Debtors (via the U.S. mail) the Debtors' provisional estimate (or any estimate or statement whatsoever) of the Discount Rights Offering Participation Amount, the award to be made to Creditor to make him whole for loss of his future pension and other post-employment benefits.  Creditor received from Debtors only a bare bones statement of the dollar amount, with absolutely no explanation of what it covered (except for referring to it on page 10 of the Rights Offering Estimation Memo as being "an actuarially determined SERP claim") or on what basis it was calculated.  Therefore, Creditor has no way to evaluate Debtors' provisional estimate against Creditor's far higher Claim in his Proof of Claim.

<u>Relief Requested</u>

**Creditor requests that this Court order that the Discount Rights Offering Participation Amount be changed to $1,233,634.80 for any and every purpose.**

2

II.

**David N. Goldsweig (the "Creditor) hereby submits this objection (the "Objection") to the Rights Offering Estimation Motion made by Delphi Corporation, et al. (the "Debtors"), and respectfully represents as follows:**

Background and Argument

1. Creditor has timely filed a Class C claim (the "Claim") (on the basis of future pension and other post-employment benefits, including, without limitation, retiree health care and life insurance) against Debtors for an amount far in excess of the amount Debtors propose to award Creditor provisionally for the purposes of administering the Discount Rights Offering. (Capitalized terms not otherwise defined in this Objection have the meanings ascribed to them in the Rights Offering Estimation Motion.)

2. Apparently there are many creditors, including Creditor, whose claims are still unreconciled and for whom the Debtors are proposing provisional allowances for the purpose of administering the Discount Rights Offering (see Rights Offering Estimation Motion, Exhibit 1).

3. At all relevant times Debtors have had, or should have had, in their possession or under their control all of the documents on which Creditor's rights to future pension and other post-employment benefits are based, and which could have been used by Debtors many months ago to undertake settlement of Creditor's future pension and other post-employment benefits. Unlike in the cases of many (perhaps most, or all) other types of claims, many creditors (such as Creditor), with future pension and other post-employment benefits claims, rely on their past employer, the Debtors, to facilitate the claims resolution process by making an offer, including specific information about what

the offer includes and how it was calculated, e.g., actuarial assumptions made, any interest rate applied, insurance values, and the like.  Perhaps that is why the claims bar date for future pension and other post-employment benefits was set far later than the general bar date for claims, and still has not passed [see Bar Date Order, April 12, 2006, paragraph 5(d)].

4.    Not until January 2, 2008 did Creditor first receive from Debtors (via the U.S. mail) the Debtors' provisional estimate (or any estimate or statement whatsoever) of the dollar amount of the award to be made to Creditor to make him whole for loss of his future pension and other post-employment benefits. Creditor received from Debtors only a bare bones statement of the dollar amount, with absolutely no explanation of what it covered (except for referring to it on page 10 of the Rights Offering Estimation Memo as being "an actuarially determined SERP claim") or on what basis it was calculated. Therefore, Creditor has no way to evaluate Debtors' provisional estimate against Creditor's far higher Claim.

5.    Debtors' Rights Offering Estimation Motion asks the Court to order that the rights of Class C creditors, including Creditor, to purchase at a significant discount, within a to-be-designated approximately 20 day period, a pro rata quantity of a finite allocation of Delphi's New Common Stock, be based in part on Debtors' provisional estimates of the values of the many Unreconciled Claims of Class C creditors.  Because the quantity of discounted shares available for purchase is fixed and the rights to purchase shares are pro rata based on the value of each Class C claim, any incorrect provisional estimates will distort the allocations.

4

6. There is no adequate mechanism set out, or referenced, in the Rights Offering Estimation Motion, to correct potential misallocation of the rights of Class C creditors, including Creditor, to purchase at a significant discount shares of New Common Stock, caused by any too large or too small estimates by Debtors of the value of certain unreconciled Class C claims.

The Rights Offering Estimation Motion does not deal at all with correcting the consequences of too small estimates on Discount Rights. Nor does it deal with correction of distortions to the quantity of New Common Stock available under the Discount Oversubscription Rights program as the result of too small or too large estimates. Only a single aspect of the consequences on Discount Rights of too large estimates is discussed in the Rights Offering Estimation Motion (paragraph 21, page 13):

> "The Debtors also request that, to the extent that such provisional allowance or estimation results in a particular claimant receiving Excess Discount Rights, then, in the reorganized Debtors' sole discretion, (a) an amount of New Common Stock (at Plan value) equivalent to the Discount Rights Value will be withheld from the ultimate distribution to such claimant or (b) such claimant will be required to remit payment to the Reorganized Debtors in an amount equal to the value of the Excess Discount Rights. Because the Discount Rights will be allocated to holders of Unreconciled Claims before these claims can be finally reconciled, <u>this procedure is necessary to ensure that the Debtors and other creditors are not harmed in the event that a holder of an Unreconciled Claim receives more value through the Discount Rights Offering [than] it is ultimately entitled to once the claim is reconciled [emphasis added]</u>."

5

The emphasized portion of the above quotation is probably correct respecting the Debtor, but it may well result in excessive charge-back to innocent creditors who, to give one example, sell their Excess Discount Rights for less than the Discount Rights Value, and it does nothing for other creditors, including Creditor.

7.     It follows from the above points that Debtors' use of provisional estimates for the Unreconciled Claims of the Class C creditors, including Creditor, as proposed in the Rights Offering Estimation Motion, will likely distort the allocation of Discount Rights, and Excess Discount Rights, among the Class C creditors, and there are no provisions in that motion, or incorporated into that motion by reference, that protect the Class C creditors, including Creditor, from such distortions.

Relief Requested

**Creditor requests that this Court condition granting Debtors' <u>Rights Offering Estimation Motion</u> as follows**:

8.     Order Debtors to use every bit of available time to reconcile in good faith all Class C Unreconciled Claims at least 5 business days prior to the start of the approximately 20 day period during which creditors can exercise their Discount Rights (the "Discount Rights Exercise Period").  Include in the order that Debtors' presentation to Creditor must include what the Debtors' valuation of Creditor's Claim covers, e.g., SERP (including survivor's benefits), life insurance, health insurance, umbrella liability insurance, etc., and how the valuation was calculated, e.g., actuarial assumptions made, any interest rate applied, any net present valuation, insurance values, etc.  Further, the order should assure, if not already covered by Paragraph 9.8 or Article XIII (e) of the Plan of Reorganization of Debtors, that Creditor will have adequate opportunity to seek

6

assistance from this Court in the Claim reconciliation process, as part of the present case both before and after the confirmation by this Court of the Plan of Reorganization of Debtors and/or the Effective Date.

9. As a precaution, in the event essentially all Class C claims are not reconciled at least 5 business days prior to the Discount Rights Exercise Period, order the Debtors to develop a self-executing plan, to be submitted to the Court in the form of a motion with notice to Creditor, to make Creditor financially whole (including, without limitation) any negative tax consequences or stock trading losses) in the event of misallocation of Discount Rights, and Excess Discount Rights, among the Class C creditors as the result of too high or too low estimates.  Such order should include the requirement that Debtors, at the time essentially all Class C creditors have had their claims reconciled, prepare and provide to the Court and to Creditor a detailed reconstruction of the pro rata allocation to Class C creditors, based on the reconciled claims, of the allocation of Discount Rights, and Excess Discount Rights.  Without such detailed reconstruction prepared at Debtors' expense, it might well be prohibitively expensive for Creditor to obtain and analyze the necessary data, and attempt to obtain payment from the reserves provided for in Paragraph 9.8 of the Plan of Reorganization of Debtors.

Dated: Farmington Hills, Michigan
       January 9, 2008

                                David N. Goldsweig, Esq.

                                _____
                                37599 Eagle Trace
                                Farmington Hills, Michigan 48331-4820
                                248-770-7853
                                248-721-4147 (fax)
                                david@goldsweig.com

                                Attorney for David N. Goldsweig, Creditor

CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **I. OBJECTION TO DISCOUNT RIGHTS PARTICIPATION AMOUNT** and **II. OBJECTION TO RIGHTS OFFERING ESTIMATION MOTION** was filed with (i) the Court (both hard copy and on a 3.5 inch disk), Attention Clerk's Department, Mary Lopez, For Filing, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 534, New York, New York 10004 via Federal Express, and that a true and correct copy (both hard copy and on a 3.5 inch disk) was submitted by Federal Express directly to (ii) the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, and that hard copies were served upon each of the following via Federal Express:

(iii) Delphi Automotive Systems LLC
5725 Delphi Drive
Troy, Michigan 48098
Attention: Legal Staff

(iv) Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098
Attention: General Counsel

(v) Skadden, Arps, Slate, Meagher & Flom LLP
Counsel to Debtors
333 West Wacker Drive
Suite 2100
Chicago, Illinois 60606
Attention: John Wm. Butler Jr. and John K. Lyons

(vi) Davis, Polk & Wardwell
Counsel for the Agent Under the
Postpetition Credit Facility
450 Lexington Avenue
New York, New York 10017
Attention: Donald Bernstein and Brian Resnick

(vii) Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attention: Robert J. Rosenberg and Mark A. Broude

(viii) Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, New York 10004
Attention: Bonnie Steingart

(ix) Office of the United States Trustee for the
Southern District of New York
33 Whitehall Street
Suite 2100
New York, New York 10004
Attention: Alicia M. Leonhard

Dated: January 9, 2008

                                                                _____
David N. Goldsweig

# EXHIBIT A

Exhibit A follows.  It consists of Creditors Proof of Claim form (Form B 10) and an explanatory page.