BODMAN LLP
Ralph E. McDowell (P39235) (Admitted Pro Hac Vice)
*rmcdowell@bodmanllp.com*
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592

Attorneys for Comerica Leasing Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**AMENDED AND RESTATED OBJECTION OF COMERICA LEASING
CORPORATION TO DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C.
§§ 105(a) AND 502(c) ESTIMATING OR PROVISIONALLY ALLOWING CERTAIN
UNRECONCILED CLAIMS SOLELY FOR PURPOSES OF ADMINISTRATION OF
<u>DISCOUNT RIGHTS OFFERING</u>**

Comerica Leasing Corporation ("<u>Claimant</u>") states the following in support of its amended and restated objection[1] to Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) Estimating or Provisionally Allowing Certain Unreconciled Claims Solely for Purposes of Administration of Discount Rights Offering ("<u>Rights Offering Estimation Motion</u>"):

1. On either October 8 or October 14, 2005 ("Petition Date"), Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

---

[1] This objection amends and restates in its entirety Comerica's Objection to Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) Estimating or Provisionally Allowing Certain Unreconciled Claims Solely for Purposes of Administration of Discount Rights Offering filed on January 9, 2007 at Docket #11793.

Detroit_818719_1

2.      Claimant and General Motors Corporation ("GM") entered into a lease for equipment located at three facilities, on September 27, 1991.  In May 1999, GM and Claimant agreed to the assignment of the lease for the Buffalo, NY and Saginaw, MI equipment to Delphi Automotive Systems, LLC ("Delphi"), provided that GM guaranteed the transaction.  The Toledo, OH equipment remained under lease with GM directly.  The lease expiration date was in March 2004.

3.      In March 2004, GM notified Claimant that it had previously scrapped four pieces of equipment in the Toledo facility with an original cost of $2,330,000.  As a result, GM paid the stipulated loss value of $447,472 for that scrapped equipment.  The total original cost was $10,940,000.  As per the Settlement Agreement, GM paid an additional $850,000 which represented approximately 9.9% of adjusted original cost of ($10,940,000 - $2,330,000 = $8,610,000).

4.      Since that time, Claimant has been attempting to negotiate with Delphi regarding the resolution of the purchase of the equipment in the Buffalo and Saginaw facilities.  In March 2004, Delphi provided a notice of its intent to purchase all of the equipment under lease with Claimant at the Buffalo and Saginaw facilities.  The notice was untimely under the documents and Claimant reserves all of its rights and remedies as to that issue.  Notwithstanding that fact, and without waiving any rights, under the lease documents, Claimant and Delphi each ordered an equipment appraisal.  Delphi's appraisal indicated a FMV of $576,000 or 3.99% for the combined equipment.  Delphi paid that amount to Comerica in 2004.  Claimant indicated that it disagreed with the appraised FMV, but applied the $576,000 on account of Delphi's ultimate obligations to Claimant.  Claimant's appraisal indicated a FMV of approximately 15% for the combined equipment.  Per the appraisal procedure in the documents, the two parties should

engage a third appraiser to complete the appraisal process. Unfortunately, after well over three years of negotiating, the parties have not reached agreement on the language in the joint engagement letter for the third appraiser.

    5.    The following documents are relevant to Claimant's claims, and are available for review from the undersigned:

    (A)    Lease Agreement (GM 91A-5) dated September 27, 1991

    (B)    Definitions

    (C)    Lease Supplement No. GM 91A-5A (Buffalo, NY)

    (D)    Lease Supplement No. GM 9lA-5B (Toledo, OH)

    (E)    Lease Supplement No. GM 91A-5C (Saginaw, Ml)

    (F)    Lease Assignment (GM 91A-5) dated May 28, 1999

    (G)    Legal Opinion — General Motors Legal Staff

    (H)    Legal Opinion — Kirkland & Ellis

    (I)    Guaranty of Lease Assignment (GM 91A-5)

    (J)    Settlement Agreement (Toledo, OH) dated June 10, 2004

    (K)    Letter from GM regarding payment of SLV dated March 16, 2004 (scrapped equipment)

    (L)    Letter from GM regarding cash payment of SLV dated March 26, 2004 (scrapped equipment).

    6.    On July 28, 2006, Claimant filed its proof of claim against Delphi in an amount of not less than $2,314,557, plus interest, fees and costs as provided in the Lease Documents. [Claim No. 12177] ("Claim"). In the Claim, Claimant asserted that Delphi was in default under the documents listed above. As noted above, Claimant and Delphi have been working to resolve that dispute.

7. On September 28, 2007, Debtors estimated the Claim in the amount of $3,464,557 under the Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) (A) Estimating and Setting Maximum Cap on Certain Contingent or Unliquidated Claims and (B) Approving Expedited Claims Estimation Procedures ("Claims Estimation Order").

8. In the Rights Offering Estimation Motion, Debtors again seek to estimate the Claim in the amount of $375,000 for purposes of the Discount Rights Offering (as defined in the Rights Offering Estimation Motion). Debtors have given no reason why the proposed estimation in the Rights Offering Estimation Motion differs from the estimation of the Claim in the Claims Estimation Order.

9. The relief requested in the Rights Offering Estimation Motion is objectionable and should not be granted because it allows Debtors both to reduce, under the guise of mere estimation, the distribution that Claimant might receive on account of the Claim and to circumvent the Claim Objection Procedures that are already in place. More specifically, the Rights Offering Estimation Motion should be denied because (a) §502(c) of the bankruptcy code does not allow for estimation of disputed claims; (b) it is an attempt to circumvent the Claims Objection Procedures already in place; (c) the Rights Offering Estimation Motion does not provide for any reserve in the event that the Claim is allowed in an amount greater than the Discounted Rights Participation Amounts (as defined in the Rights Offering Estimation Motion), i.e., zero; and (d) Debtors unfairly propose that Claimant pay Debtors if the Claim is allowed in an amount less than the Discounted Rights Participation Amounts at an undetermined "value".

    (A)    **The Bankruptcy Code does not allow for Estimation of Disputed Claims**

10. Section 502(c) of the Bankruptcy Code provides, in relevant part:

-4-

> "[t]here shall be estimated for purposes of allowance under this section (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case".

Section 502(c) allows courts to estimate only contingent and unliquidated claims, but not claims that are merely disputed. *In re Comdisco, Inc.*, 271 B.R. 273 (Bankr. N.D. Ill. 2002). *See also In re Keenan,* 201 B.R. 263 (Bankr. S.D. Cal. 1996).

11.    The Claim, though disputed, is neither contingent nor unliquidated. Debtors have not asserted that the Claim is contingent and the mere fact that Debtors have contested the Claim does not make the Claim contingent. *Mazzeo v. United States (In re Mazzeo),* 131 F3d 295, 303 (2nd Cir. 1997) (debts are not contingent merely because a debtor disputes a claim because definition of "Claim" in the bankruptcy code includes the word "contingent"). Also, Debtors have not asserted that the Claim is unliquidated because the Claim is, in fact, liquidated because it is subject to ready determination and precision in computation of the amount due. *Mazzeo* 131 F3d at 304. Because the Claim is neither contingent nor unliquidated, Debtors should not be allowed to estimate it for purposes of the Discount Rights Offering.

(B)    **The Rights Offering Estimation Motion is an Attempt by Debtors to Circumvent the Claims Objection Procedures Already in Place**

12.    Any objection by Debtors to the Claim would proceed under the procedures outlined in the Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007 and 9014 Establishing (I) Dates for Hearing Regarding Objections to Claims and (II) Certain Notices and Procedures Governing Objections to Claims (the "<u>Claim Objection Procedures Order</u> ") [Docket No. 6089] crafted by Debtors. As stated above, the Claim is not currently subject to an Objection.

13. The procedures proposed in the Claims Estimation Motion conflict with those of the Debtors' Claim Objection Procedures Order. The Claims Estimation Motion is an improper attempt to circumvent the Claim Objection Procedures Order. As noted above, Claimant and Debtors have been attempting to settle the Claim. If these negotiations cease and Debtors object to the Claim, Claimant does not wish to forego the protections offered it under the Claims Objection Procedures Order. Debtors are requesting that the Court override the Debtors' own procedures under the Claims Objection Procedures Order by allowing the Debtors to reduce partially the Claim by means of estimation. Debtors should not be allowed to do so.

14. Further, though this Court has the discretion to establish procedures to estimate the value of contingent or unliquidated claims, for purposes of allowance when a full adjudication of such claims would unduly delay case administration, this Court should also evaluate whether the procedures meet general due process requirements. *See In re Adelphi Bus. Solutions, Inc.*, 341 BR 415 (Bankr SDNY 2003). Because the Rights Offering Estimation Motion would allow Debtors to reduce the Claim, not merely to estimate the Claim, the relief requested in the Rights Offering Estimation Motion violates Claimant's due process rights. Furthermore, any delay in the adjudication of the Claim rests solely with Debtors and Claimant should not have the Claim reduced unjustly because of Debtors' dilatory administration of the Claim.

(C) **The Rights Offering Estimation Motion does not provide for the possibility that the Claim might be allowed in an amount greater than the Discount Rights Offering Participation Amount and a Reserve**

15. The Rights Offering Estimation Motion does not contemplate the possibility that Debtors' estimate of the Claim ($375,000) is too low. While Paragraph 17 of the Rights Offering Estimation Motion address the procedure for a given claimant to return Excess

-6-

Discount Rights (as defined in the Rights Offering Estimation Motion) to Debtors in the event that Debtors estimate a given claim in an amount greater than the eventual allowed amount of such claim, Debtors do not provide any procedures for the converse possibility in which Debtors estimate is less than the eventual allowed amount of such claim. If the Claim is eventually allowed in an amount greater than the $375,000 estimate provided in the Rights Offering Estimation Motion, Claimant will have no recourse under the proposed Rights Offering Estimation Order to regain the Discount Rights it would have had if the Discount Rights Offering Participation Amount was equal to the allowed amount of the Claim. Debtors need to revise the proposed order so as to deal with this contingency and establish a reserve of Discount Rights.

(D)   **The Rights Offering Estimation Motion does not provide for the possibility that the Claim might be reclassified as unsecured**

16.   The Rights Offering Estimation Motion also does not contemplate the possibility that the Claim, or a portion of it, may be reclassified as unsecured. Under the Plan, secured or administrative claims are not entitled to participate in the Discount Rights Offering. If Debtors agreed that the Claim was secured or administrative, there would be no issue. In fact, Debtors disagree that the claim is secured. Debtors do not provide for the possibility that the Claim might be reclassified as unsecured. If the Claim was thus reclassified, Claimant would not be able to regain any Discount Rights it would otherwise have had. Debtors need to revise the proposed order so as to deal with this contingency or agree that the Claim is secured or administrative. The Debtor should not be able to, on one hand, object to the secured or administrative status of a claim, and then, on the other hand, estimate the resulting unsecured claim at zero.

(E)     **The Rights Offering Estimation Motion unfairly seeks payment from a claimant in the event a disputed claim is allowed in an amount less than the estimated amount**

17.     Paragraph 17 of the Rights Offering Estimation Motion provides that if the estimation of a claim results in a claimant receiving Excess Discount Rights (as defined in the Rights Offering Estimation Motion) than, in Debtors' discretion, either (a) Debtors will withhold an amount of New Common Stock equal to the value of the Excess Discount Rights from the ultimate distribution to such claimant or "(b) such claimant will be required to remit payment to the Reorganized Debtors in an amount equal to <u>the value</u> of the Excess Discount Rights." Emphasis added.  Claimant does not have any objection to the withholding of New Common Stock from the ultimate distribution on the Claim.  However, Claimant objects to the requirement that it be required to pay Debtors cash in exchange for the ability to purchase discounted shares of New Common Stock at a "value" not determined.

18.     Any reply to this Objection should be addressed to the following:

> Ralph E. McDowell
> Bodman LLP
> 6th Floor at Ford Field
> 1901 St. Antoine Street
> Detroit, Michigan 48226
> (313) 393-7592
> (313) 393-7579 (fax)
> rmcdowell@bodmanllp.com

19.     Because the legal points and authorities upon which this objection relies are incorporated and do not represent novel theories of law, Claimant requests that the requirement of the filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied

**RELIEF REQUESTED**

Claimant requests that the Court deny the relief requested under the Rights Offering Estimation Motion as to the Claim.

Dated: January 10, 2008               BODMAN LLP


By:    /s/      Ralph E. McDowell
Ralph E. McDowell (P39235)
(Admitted Pro Hac Vice)
Attorneys for Comerica Leasing  Corporation
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592
*rmcdowell@bodmanllp.com*

-9-

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing *Amended and Restated Objection of Comerica Leasing Corporation to Debtors' Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 502(c) Estimating or Provisionally Allowing Certain Unreconciled Claims Solely for Purposes of Administration of Discount Rights Offering* was electronically filed using the Court's CM/ECF filing system, and that a true and correct copy of the same was served via Federal Express to the parties identified below:

Delphi Corp.
5725 Delphi Drive
(Attn: General Counsel)
Troy, Michigan 48098

Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
(Attn: John Wm. Butler, Jr.; John K. Lyons, Joseph N. Wharton)
Chicago, Illinois 60606

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
Attn: Donald Bernstein and Brian Resnick

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Robert Rosenberg and Mark A. Broude

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Attn: Bonnie Steingart

A-D Acquisition Holdings, LLC
c/o Appaloosa Management L.P.
White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
(Attn: Thomas E. Lauria)

White & Case LLP

-10-

1155 Avenue of the Americas
New York, New York 10036
(Attn: John M. Reiss and Gregory Pryor)

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
(Attn: Jeffery L. Tanenbaum, Michael P. Kessler, and Robert J. Lemons)

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street
Suite 2100
New York, New York 10004
(Attn: Alicia M. Leonhard)
and

The Honorable Robert D. Drain
United States Bankruptcy Judge
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green
Room 610
New York, New York 10004

|  |  |
|---|---|
| Dated: January 10, 2008 | /s/ Ralph E. McDowell<br>Ralph E. McDowell |

Detroit_818719_1