**Hearing Date And Time: January 10, 2008 at 2:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' RESPONSE TO
AD HOC TRADE COMMITTEE'S MOTION FOR ORDER (I) EXTENDING DEADLINE
FOR SUBMISSION OF CURE NOTICES, (II) APPROVING CURE NOTICES EXECUTED
BY MOVANTS WITH RESPECT TO THEIR CLAIMS, AND (III) DIRECTING DEBTORS
(A) TO RECONCILE CURE CLAIMS WITH CORRESPONDING CLAIMS,
<u>AND (B) TO MAKE CURE CLAIM DISTRIBUTIONS DIRECTLY TO MOVANTS</u>

("DEBTORS' RESPONSE TO AD HOC TRADE COMMITTEE'S
CURE NOTICE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this response (the "Response") to the Motion For Order (I) Extending Deadline For Submission Of Cure Notices, (II) Approving Cure Notices Executed By Movants With Respect To Their Claims, And (III) Directing Debtors (A) To Reconcile Cure Claims With Corresponding Claims, And (B) To Make Cure Claim Distributions Directly To Movant (the "Motion") filed by Argo Partners, Inc., ASM Capital, Avenue Capital Management, LLC, Contrarian Capital Management, LLC, Hain Capital Group, Longacre Master Funds, Ltd., and Sierra Liquidity Fund, LLC (collectively the "Ad Hoc Trade Committee"), and respectfully represent as follows:

## Preliminary Statement

1.  On January 9, 2008, the Ad Hoc Trade Committee procured an order to show cause from this Court setting an emergency hearing for the next day, January 10, 2008, to seek extraordinary relief from this Court that would, among other matters, impermissibly rewrite and/or abrogate the Solicitation Procedures Order[1] – a final order of this Court which followed a contested hearing at which these movants affirmatively objected to and then <u>settled</u> all matters related to the Debtors' disclosure statement, solicitation, and plan confirmation process. This Court should not countenance the prosecution of any motion by a party-in-interest who has previously appeared before this Court and conclusively settled its grievances.

---

[1] Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures (the "Solicitation Procedures Order") (Docket No. 11389).

2

        2.      Moreover, even if this Court-approved comprehensive settlement between the movants and the Debtors that precludes the prosecution of the instant motion had not occurred, the relief sought in the Motion is entirely improper because these movants are alleged claims purchasers and not counterparties to the underlying supply agreements with the Debtors that give rise to potential rights under section 365 of the Bankruptcy Code.  Paragraph 43 of the Solicitation Procedures Order clearly and unambiguously determines that the <u>counterparties</u> to supply contracts with the Debtors shall be the parties in these chapter 11 cases with whom the Debtors exclusively administer the executory contract assumption and cure process under section 365 of the Bankruptcy Code.  This Court also approved the <u>specific</u> form of notice to be sent to those contract counterparties including the <u>specific</u> information items to be provided by the Debtors to each contract counterparty.  (<u>See</u> <u>Exhibit A</u> hereto which is an extract of paragraphs 43 and 45 and Exhibits O and Q (the approved forms of notice of the Solicitation Procedures Order for supply contract counterparties) (together, the "Cure Notices")).

        3.      In order to avoid any potential for confusion or misunderstanding as to this fundamental determination by this Court, the Solicitation Procedures Order also authorized the Debtors to send a generic notice to alleged claims purchasers of accounts receivable related to prepetition supply contracts with the Debtors so that the claims purchasers could sort out what rights and obligations existed as between the assignor and assignee of such accounts.  The Solicitation Procedures Order clearly provides that the generic notice "is the only notice the Debtors shall be required to provide to these claims purchasers with respect to the cure and these claims purchasers shall have no rights or recourse against the Debtors with respect to the cure." (<u>See</u> <u>Exhibit B</u> hereto which is an extract of paragraph 44 and Exhibit P (the approved form of

3

the Solicitation Procedures Order for claims purchasers) (the "Claims Purchaser Notice" and, together with the Cure Notices, the "Notices")).

Background

4.     On September 6, 2007, the Debtors filed the Plan, the Disclosure Statement, and the Solicitation Procedures Motion[2] pursuant to which, among other things, the Debtors sought express authority from this Court to serve the Cure Notices upon contract counterparties and pay cure to the counterparties as required under section 365 of the Bankruptcy Code. See Solicitation Procedures Motion ¶¶ 86-87. In the Debtors' omnibus reply to objections filed to the Solicitation Procedures Motion[3], because many of the cure payments would ultimately reduce and/or extinguish prepetition claims that have been subsequently sold to claims traders (including current members of the Ad Hoc Trade Committee), the Debtors also proposed to send the Claims Purchaser Notice to claims purchasers informing them that Cure Notices had been sent to the contract counterparties and that the contract counterparties would be making cure elections and receiving cure payments. See Solicitation Motion Omnibus Reply ¶¶ 76-77.

5.     On November 21, 2007, the Ad Hoc Trade Committee filed an objection to the Solicitation Procedures Motion asserting that the Disclosure Statement and Solicitation

---

[2]    Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (the "Plan") (Docket No. 9263); the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (the "Disclosure Statement") (Docket No. 9264); and the Motion For Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, And Procedures For Temporary Allowance Of Certain Claims, (III) Hearing Date To Consider Confirmation Of Plan, (IV) Procedures For Filing Objections To Plan, (V) Solicitation Procedures For Voting On Plan, (VI) Cure Claim Procedures, (VII) Procedures For Resolving Disputes Relating To Postpetition Interest, And (VIII) Reclamation Claim Procedures (the "Solicitation Procedures Motion," and together with the Plan and the Disclosure Statement, the "Plan Documents") (Docket No. 9266).

[3]    Debtors' (I) Omnibus Reply To Objections To Disclosure Statement And Potential Disclosure Statement Amendments And (II) Response To Emergency Motion To Adjourn Hearing And Fix New Objection Deadline (the "Solicitation Motion Omnibus Reply") (Docket No. 11291).

4

Procedures should not be approved on a number of grounds.[4] Never once did the Ad Hoc Committee take issue with the form of Cure Notices first described in the Solicitation Procedure Motion filed on September 6, 2007 or the Claims Purchaser Notice first described in the Solicitation Motion Omnibus Reply filed on December 5, 2007. Indeed, these movants never objected to any of the Notices to be sent out to contract counterparties and claims purchasers, nor with the fact that cure elections would be made, and cure payments received, by the contract counterparties, and not the claims purchasers.

6.    At the Disclosure Statement hearing on December 6, 2007, the Debtors and the Ad Hoc Trade Committee reached an agreement (the "Settlement") in "full and final settlement of any and all objections of the [Ad Hoc Trade Committee] to the disclosure and plan confirmation process, including without limitation, the disclosure statement, the plan of reorganization, including plan confirmation matters." Transcript at 10 (See Exhibit C hereto which is a copy of the relevant portion of the transcript describing the terms of the agreement between the Debtors and the Ad Hoc Trade Committee). In exchange for the full resolution of "any and all" plan confirmation process objections, the Debtors agreed "to use commercially reasonable efforts to reconcile, and if agreed, allow on or before the confirmation date trade claims held by the [Ad Hoc Trade Committee]." Transcript at 11. The Debtors also agreed to reimburse reasonable professional fees and expenses of the Ad Hoc Committee up to a specified cap following a review by the Delphi Fee Committee and approval by this Court of a substantial contribution fee application.

---

[4]    Objection Of The Delphi Trade Committee To The First Amended Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors In Possession (Docket No. 11049). The Ad Hoc Trade Committee also filed, on November 21, 2007, the Objection Of The Delphi Trade Committee To The Debtors' Expedited Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), And 507(a) Authorizing And Approving Amendment To Delphi-Appaloosa Equity Purchase And Commitment Agreement (Docket No. 11042).

7.     On December 10, 2007, the Settlement was approved by this Court in connection with the approval of the Disclosure Statement and Solicitation Procedures Motion. On or before December 15, 2007, Kurtzman Carson Consultants LLC ("KCC"), the Debtors' Notice Agent, mailed the Disclosure Statement and other Plan Documents to creditors and other constituents. Furthermore, as required by the Solicitation Procedures Order, KCC mailed the Cure Notices on December 21, 2007 to contract counterparties and the Claims Purchaser Notice to claims purchasers. See Affidavit Of Service (Docket No. 11773).

8.     Pursuant to the Settlement, the Debtors have examined 1,137 claims purportedly owned by the members of Ad Hoc Trade Committee. On December 31, 2007, counsel for the Debtors sent a comprehensive reconciliation to counsel for the Ad Hoc Trade Committee containing (i) a summary of the reconciliation/resolution status of the 1,187 claims including a stratification of the remaining claims and (ii) various charts sorted by individual members that lists the status of each member's claims.[5] The Debtors noted that they had reconciled and/or resolved by prior Court order 982 of the 1,187 claims (or 82.7% of the claims). Of the remaining 205 claims, Debtors noted that 64 of the claims were subject to settlements in principle. The Debtors also made a settlement proposal to resolve a number of "low variance" claims, that is, any claim that had a variance of less than $50,000 between the claimant's asserted amount and the Debtors' adjusted reconciled amount. For the 69 remaining claims, the Debtors offered to continue their reconciliation and negotiation efforts and suggested a weekly call to monitor progress. Since that time, the Debtors have worked closely with the members of the Ad

---

[5]   The Debtors will offer to introduce at the hearing on the Motion a 'highly confidential" e-mail dated December 31, 2007 from Debtors' counsel to the Ad Hoc Trade Committee's counsel confirming the assertions in this paragraph.

6

Hoc Trade Committee to resolve members' individual claims and are on the verge of settling all of the claims of four of the seven Ad Hoc Trade Committee members.

9. On January 2 and 3, 2008, counsel for the Ad Hoc Trade Committee and the Debtors engaged in settlement discussions regarding reconciliation of the remaining open claims. During those discussions, for the first time, counsel for the Ad Hoc Trade Committee asserted – improperly – that the reconciliation process agreed to by the Debtors in the Settlement should also encompass resolution of his clients' alleged ownership of, and desire to control, cure claims under section 365 of the Bankruptcy Code related to prepetition supply agreements as to which his clients purportedly purchased accounts receivable. As part of the discussions – and notwithstanding the clear and unambiguous language in paragraphs 43 through 45 of the Solicitation Procedures Order – counsel also raised difficulties that the Ad Hoc Trade Committee members were encountering in linking cure amounts to claim numbers and demanded additional information from the Debtors. Even though all issues relating to the purported purchase of prepetition trade claims (including the relative rights and obligations of the "assignor" supplier and the "assignee" claims purchaser under any private transfer agreement) are a matter of contract law and interpretation as between the two non-debtor entities that cannot prejudice the Debtors, on January 4, 2008, solely as an accommodation, the Debtors provided to the Ad Hoc Trade Committee a comprehensive cure list that would enable Committee members to sort claimants by name to reconciled proof of claim numbers that the Debtors had previously provided. Not satisfied even with this additional information, the Ad Hoc Trade Committee filed the Motion yesterday, January 9, 2008.

7

Response

10.    By the Motion, the Ad Hoc Trade Committee seeks an order from this Court (i) extending the deadline to submit Cure Notices from January 11, 2008 to January 16, 2008, (ii) approving certain Cure Notices with respect to their claims, and (iii) directing the Debtors to (a) reconcile the cure amounts with their corresponding claims and (b) make distributions of the cure amounts to the Ad Hoc Trade Committee and not the counterparties to the contracts. For the reasons set forth in the Response, the Debtors respectfully request this Court to deny the Motion.

A.    The Relief Is Barred By The Settlement And Is Contrary To The Solicitation Procedures Order

11.    As stated above, the Settlement fully and finally settled "any and all objections . . . to the plan confirmation process including, without limitation, the disclosure statement, the plan of reorganization, including plan confirmation matters" in exchange for, in relevant part, the Debtors' undertaking to exercise "commercially reasonable efforts" to reconcile outstanding claims. The Ad Hoc Trade Committee does not really take issue with whether the Debtors have lived up to their end of bargain, nor could it. The Debtors have reconciled well over 90% of Ad Hoc Trade Member Claims and are on the verge of settling all of the claims held by four of seven Ad Hoc Trade Committee members. By seeking the relief requested in the Motion, however the Ad Hoc Trade Committee has flatly violated its agreement to not object to the Plan, the Disclosure Statement, and the Solicitation Procedures, which terms were clearly set forth in the Plan Documents that this Court approved for solicitation at the Disclosure Statement hearing. Accordingly, the Debtors respectfully request this Court to enforce the Settlement and deny the Motion in its entirety.

8

12.     In the event that this Court should determine that the Settlement does not dispose of the Motion in the Debtors' favor, then this Court should dismiss the Motion because it seeks relief that is contrary to the Solicitation Procedures Order and/or violates bankruptcy and non-bankruptcy law.  In its Motion, the Ad Hoc Trade Committee asks this Court to (i) authorize claims traders (as opposed to contract counterparties whose contracts are actually being assumed) to sign cure election forms, (ii) direct the Debtors to pay cure amounts directly to claims traders and not the contract counterparties themselves, (iii) move the cure election deadline affecting nearly $200 million in cure payments to the day before the hearing on confirmation of the Plan is scheduled to occur, and (iv) direct the Debtors immediately to reconcile cure claims against individual proof of claim numbers.  For the reasons set forth below, the relief requested would violate section 365 of the Bankruptcy Code, inappropriately abrogate a prior final order of this Court (i.e., the Solicitation Procedures Order), run roughshod over the rights of contract counterparties, and impermissibly interject this Court into disputes between contract counterparties and claims traders over state law rights under claims transfer agreements.  Finally, the proposed extension of the cure election deadline to the day before the confirmation hearing would frustrate, prejudice and hinder the Debtors' ability to prosecute its confirmation case. Accordingly, the Motion should be denied.

B.     <u>The Relief Requested Is Contrary To Section 365 Of The Bankruptcy Code</u>

13.     The Ad Hoc Trade Committee members do not contend that they are assignees of the prepetition executory contracts with the Debtors.  Nor could they.  Given the rigorous validation and safety requirements for parts purchased by the Debtors, paragraph 24 of the Debtors' standard terms and conditions, not surprisingly, prevents suppliers from assigning contractual rights and obligations to other parties without Debtors' consent.  (A copy of the Debtors' Standard Terms and Conditions are attached hereto as <u>Exhibit D</u>.)  Because of Debtors'

9

general contractual prohibition against assignment of rights and obligations (and unless a specific contract was negotiated to provide otherwise as an exception to the Debtors' Standard Terms and Conditions), the Ad Hoc Trade Committee members purchased, at most, accounts receivable from contract counterparties when they entered into the alleged Transfer Agreements under applicable Michigan law[6].  See MICH. COMP. LAWS ANN. § 44.2210 (2008); Ferndale Laboratories, Inc. v. Schwarz Pharma, Inc., 123 F.App'x 641, 647-48 (6th Cir. 2005) (Uniform Commercial Code provision adopted by Michigan favoring assignability of contract rights is inapplicable if parties include anti-assignment provision in contract).  However, prohibitions on the assignment of a contract may be overridden if a party wants to assign account receivables:

> (4) Except as otherwise provided in subsection (5) and sections 2A303 and 9407, and subject to subsection (8), **a term in an agreement between an account debtor and an assignor** or in a promissory note **is ineffective to the extent that it does 1 or more of the following**:
>
> (a) Prohibits, restricts, or **requires the consent of the account debtor** or person obligated on the promissory note **to the assignment or transfer of**, or the creation, attachment, perfection, or enforcement of a security interest in, **the account**, chattel paper, payment intangible, or promissory note.

MICH. COMP. LAWS ANN. § 440.9406 (2008) (emphasis added).

        14.    The right to collect on an account receivable <u>claim</u> however is not the same as a right to cure of a contractual <u>default</u> under section 365 of the Bankruptcy Code.  It is

---

[6] Michigan law applies because the cure amount relates to contracts, specifically purchase orders, integrating Delphi's standard Terms and Conditions.  Article 26 of the Terms and Conditions provides that the law of the Buyer's state (Michigan) controls.  See General Terms And Conditions § 26 attached hereto as Exhibit D.  The Michigan Supreme Court has repeatedly emphasized that "a fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." Rory v. Continental Insurance Company, 473 Mich. 457, 468, 703 N.W. 2d 23 (2005) (emphasis in original) (citations omitted).  Secondly, Michigan law applies because the contracts underlying the cure payments were executed and substantially performed in Michigan.  Under the "center of gravity theory" for conflicts of laws, it is well established that New York courts apply the law of the state that has the most significant contacts with the contracts execution and performance.  See, e.g. Royce Chemical Co. v. Sharples Crop., 285 F.2d 183, 188 (2d Cir. 1960).  Accordingly, restrictions on the assignability of contracts as enforceable under Michigan law is applicable to the Debtors and the Ad Hoc Trade Committee.

10

well settled that under section 365 of the Bankruptcy Code, a debtor must cure outstanding defaults prior to assumption of a prepetition executory contract. 11 U.S.C. § 365(b)(1)(A). At least one commentator has written precisely on point concluding that absent some arrangement among the parties (debtor, claimant and claims purchaser), the debtor will pay the cure amount to the contract party, not to the claims purchaser:

> Parties to executory contracts and unexpired leases often file "protective" rejection-damages claims, anticipating that the debtor may reject the contract. Claims traders who buy these protective rejection damage claims may have a rude awakening if the debtor assumes the contract or lease under the reorganization plan. Pursuant to § 365(b)(1)(A) of the Code, a debtor must cure pre-petition defaults before it can assume a contract or lease. **A cure is not a payment on account of a rejection-damages claim; it is a payment to a contract counterparty to facilitate the debtor's ongoing performance under the contract. Under those circumstances, there is no rejection-damages claim, and the debtor can successfully move to disallow any rejection-damage claim. Thus, absent some arrangement among the three parties, the debtor will pay the cure amount to the contract counterparty, not the purchaser of the rejection-damages claim.** The problem becomes even stickier if the plan provides for full satisfaction of unsecured claims, with pre-petition interest. Naturally, the purchaser would hope to receive a distribution on account of the rejection-damages claim in accordance with the plan treatment. It is incumbent upon the purchaser to contract around this potential problem. To the extent possible, purchasers should identify and avoid buying protective claims. If the claimant believes that the debtor will likely reject a contract, creating a rejection-damages claim, the purchaser may require the claimant to compel the debtor to assume or reject the executory contract or lease. In connection with any agreed rejection, the parties could fix the rejection-damages claim and agree to releases of chapter 5 actions.

Carrianne Basler and Michelle Campbell, *Savvy Claims Purchasers Must Avoid Pitfalls*, 25-5 ABIJ 26 (June 2006) (emphasis added). The Ad Hoc Trade Committee has offered no evidentiary support that the claims purchasers have acquired any rights or influence on cure matters through their transfer agreements. Even if they could demonstrate that the transfer agreements addressed that issue, the claims purchasers failed to obtain the Debtors' acknowledgment and agreement. Accordingly, the Debtors' obligation to cure a monetary

default through a cure payment runs to the party to the executory contract and, likewise, any decision with respect to such cure appropriately resides with the contract counterparty.

15. This conclusion is further buttressed by the treatment of a right to cure under section 1126 of the Bankruptcy Code. Under section 1126 of the Bankruptcy Code, a right to a cure payment is not a "claim" entitling a creditor to vote on a plan of reorganization. See Phoenix Mutual Life Insurance Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture), 995 F.2d 1274, 1281 (5th Cir. 1991) (when debtor expressly assumes lease, lessee has no claim under Section 1126 and is not entitled to vote on plan); see also Boston Post Road L.P. v. Federal Deposit Insurance Corp. (In re Boston Post Road L.P.), 21 F.3d 477, 484 (2d Cir. 1994) (citing Greystone III for same proposition).

16. Moreover, the Ad Hoc Trade Committee's request to have this Court decide who has the ultimate right to proceeds from cure payments is a thinly veiled attempt to undo the prior Solicitation Procedures Order and interject this Court into refereeing the rights and obligations between claims traders and the contract counterparties under transfer agreements. This is clearly not the job of this Court but rather is a matter best to be resolved by state courts. This Court should not be used as a vehicle to improve the Ad Hoc Trade Committee's position vis a vis contract counterparties under the transfer agreements. Nor should this Court condone the Ad Hoc Trade Committee's attempt to improperly interfere with the Debtors' contractual relationships with its vendors. Section 365 of the Bankruptcy Code, and not the whim of an assignee of an account receivable, dictates to whom cure payments under an executory contract should be made. This Court's Solicitation Procedures Order appropriately so held and should not be revisited based upon the Ad Hoc Trade Committee's eleventh hour request to usurp the rights of contract counterparties (which parties are likely relying on the Court-approved notices

distributed to them under the Solicitation Procedures Order and which have not received notice of the Ad Hoc Trade Committee's efforts to rewrite the solicitation procedures in these chapter 11 cases evidenced by the instant Motion).

      C.    <u>The Relief Will Have A Deleterious Effect Of The Debtors' Confirmation Case</u>

      17.    To prepare for confirmation, the Debtors must understand the amount and configuration of nearly $200 million in cure obligations that must be satisfied after emergence. This information is necessary, among other things, to prepare for and obtain confirmation of the Plan and thereafter to move expeditiously to meet the conditions precedent to the effectiveness of the Plan including administration of several rights offerings and preparing for distributions to various classes under the Plan entitled thereto. The Debtors' ability to fully comprehend all of the issues surrounding assumption and cure of supply agreements is directly relevant to the Debtors' compliance with the provision of Title 11, feasibility and other key confirmation requirements. The Ad Hoc Trade Committee's suggestions that the cure election deadline be delayed until the day before the confirmation hearing is completely disingenuous and inappropriate.

      D.    <u>The Ad Hoc Trade Committee Members Will Suffer No Prejudice</u>

      18.    Finally, denial of the relief sought in the Motion will result in no undue prejudice to the Ad Hoc Trade Committee. First, the Ad Hoc Trade Committee was aware of the contents of the Cure Notice as early as September, 2007 and the contents of the Claims Purchaser Notice in early December 2007 and, apparently, elected to do nothing until very recently. Its attempt to blame the Debtors for their current predicament is unfounded. If members of the Ad Hoc Trade Committee wanted to protect their rights under their transfer agreements (whatever they may be), they should have contacted the original claimholders immediately after the Disclosure Statement was approved, reconciled any cure issues directly

13

with the original claimholder, and issued cure election instructions to the assignors (assuming their transfer agreements permitted them to do so and such obligations are legally enforceable). Instead, they waited before focusing on their new found concerns about the cure procedures in these chapter 11 cases. If the Ad Hoc Trade Committee suffered prejudice, it was self-inflicted.

19. Accordingly, the Debtors believe that the relief the Ad Hoc Trade Committee is seeking in its Motion is unwarranted and the Motion should be denied.

Notice

20. Notice of this Response has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 19, 2007 (Docket No. 10661). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) denying the Motion filed by the Ad Hoc Trade Committee and (b) granting them such other and further relief as is just.

Dated:   New York, New York
         January 10, 2008

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession