ARENT FOX LLP
Mary Joanne Dowd (MD-0743)
1050 Connecticut Avenue, NW
Washington, DC  20036-5339
Telephone:  (202) 857-6000
Facsimile:  (202) 857-6395
    and
1675 Broadway
New York, NY 10019
Telephone:  (212) 484-3900
Facsimile:  (212) 484-3990

Hearing Date: January 17, 2008
Hearing Time: 10:00 a.m.

*Attorneys for Audio MPEG, Inc. and S.I.SV.EL, S.p.A.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, *et al*., | Case No.: 05-44481 (RDD) |
| Debtors. | Jointly Administered |

**OBJECTION OF AUDIO MPEG, INC. AND
S.I.SV.EL., S.p.A. TO (i) CONFIRMATION OF FIRST
AMENDED PLAN OF REORGANIZATION OF DELPHI
CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND
DEBTORS-IN-POSSESSION AND (ii) ASSUMPTION OF LICENSE AGREEMENT**

Audio MPEG, Inc. ("Audio MPEG") and Societa' Italiana per lo Sviluppo dell'Elettronica, S.I.SV.EL., S.p.A. ("SISVEL," together with Audio MPEG, "Licensors"), by counsel, object to (i) the confirmation of the First Amended Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Plan") and (ii) the assumption of the License Agreement (defined below).  In support, Licensors state as follows:

**PRELIMINARY STATEMENT**

1.      As proposed, the Plan does not satisfy all the requirements of 11 U.S.C. § 1129. First, the Debtors' proposed treatment for the assumption of executory contracts does not comply with 11 U.S.C. § 365: defaults under Licensors' executory contract with the Debtors will not be properly cured and the Debtors have not provided adequate assurance of their future performance. Second, the Debtors' proposed disparate treatment of creditors holding cure claims is impermissible because the Debtors artificially divide parties to executory contracts into separate classes and provide differing treatment to each class without any rational justification. Third, the Plan impermissibly treats administrative claims under executory contracts less favorably than other administrative claims and proposes a treatment that is contrary to that required under 11 U.S.C. § 1129(a)(9).

**BACKGROUND**

**A.      The License Agreement**

2.      On August 7, 2003, Licensors and Delco Electronics Corporation ("Delco")[1] executed a license agreement (the "License Agreement") whereby Licensors granted Delco and its controlled companies, non-transferable, non-assignable, non-exclusive licenses under certain U.S. and non-U.S. patents (the "Licenses") and the Debtors agreed to submit statements of uses (the "Royalty Statements") and pay royalties. On or about April 4, 2005, Licensors and the Debtors executed the 2005 Addendum to the License Agreement (the "2005 Addendum," collectively with the License Agreement, the "License Agreement"), which, *inter alia*, required the Debtors to submit Royalty Statements and pay royalties on a quarterly rather than an annual basis.

---

[1] Delco reportedly transferred its interest in the License Agreement and 2005 Addendum (defined below) to Debtor Delphi Automotive Systems, LLC. Delco and successor entities and controlled companies using the Licensed Products are collectively referred to as the "Debtors."

2

3.      Contrary to their obligations under the License Agreement, the Debtors failed to submit Royalty Statements for the second and third quarters of 2007 to Audio MPEG and failed to submit Royalty Statements to SISVEL for 2006 and 2007.  In addition, it appears that the uses that were reported may have been understated.

**B.      The Bankruptcy Case**

4.      On October 8 and 14, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their assets as debtors-in-possession pursuant to sections 1107 and 1008 of the Bankruptcy Code.

5.      The License Agreement is an executory contract within the meaning of section 365.  As far as Licensors have been able to determine, the Debtors failed to list the License Agreement in their schedules of executory contracts and unexpired leases.

6.      The Debtors scheduled Audio MPEG as owed $147,747.00 for unpaid royalties as of the Petition Date.  *See* Schedule F for Delphi Automotive Systems, LLC.  The Debtors do not appear to have scheduled SISVEL.  The cure amounts under the License Agreement are the scheduled amount plus any additional amounts determined to be due and owing after completion of the audit performed in accordance with the License Agreement.  *See* Motion of Audio MPEG, Inc. and SISVEL to Modify Automatic Stay to Perform Audit Under License Agreement, Docket No. 11820.

**C.      The Plan**

7.      On December 10, 2007, the Court entered the Order Approving (i) Disclosure Statement, (ii) Record Date, Voting Deadline, and Procedure for Temporary Allowance of Certain Claims, (iii) Hearing Date to Consider Confirmation of Plan, (iv) Procedures for Filing

3

Objections to Plan, (v) Solicitation Procedures for Voting on Plan, (vi) Cure Claim Procedures, (vii) Procedures for Resolving Disputes Relating to Postpetition Interest, and (viii) Reclamation Claim Procedures (the "Solicitation Order"), which, *inter alia*, approved the Debtors' amended disclosure statement and authorized the Debtors to solicit votes on the Plan. The Solicitation Order also established procedures by which the Debtors or non-debtor parties to unexpired leases or executory contracts could assert cure claims with respect to the proposed assumption thereof.

8. Section 8.1 of the Plan provides that the Debtors will assume all executory contracts and unexpired leases upon the Effective Date.[2] Plan at § 8.1. The Plan divides the treatment of executory contracts into two classes – (i) Material Supply Agreements and (ii) all other executory contracts. *See* Plan at § 8.2. If the Plan is confirmed, the division into these two separate classes will dictate the manner in which the Debtors propose to satisfy the requirements of section 365(b).

9. If an executory contract is deemed a Material Supply Agreement, then the Debtors were to serve a notice of assumption on the non-debtor party by December 21, 2007. This notice was to contain the amount that the Debtors believe necessary to cure the monetary defaults under said contract. The non-debtor party then would have the option of electing to receive this cure payment in cash or by the payment method provided to unsecured creditors in the Plan.[3] The non-debtor party would have the affirmative duty to object to the amount specified as the cure payment; however, the non-debtor party would not have the affirmative duty to request the Debtors cure all monetary and non-monetary default. Plan at § 8.2(a) (the "Material Supply Agreement Treatment").

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.
[3] Section 5.3 of the Plan provides that unsecured creditors will receive a distribution of New Common Stock, a pro rata share of transferable Discount Rights and a pro rata portion of Discount Oversubscription Rights (the "Unsecured Stock Distribution"). Plan at § 5.3.

4

10.    Contrary to the treatment provided for Material Supply Agreements, under the Plan, as proposed, a non-debtor party to any other executory contract would need to affirmatively file a demand for the Debtors to cure all monetary and non-monetary defaults within forty-five days after the entry of the Confirmation Order.  Thereafter, the Debtors would have forty-five additional days to respond to the proposed cure claim.  If the non-debtor party failed to affirmatively seek to require the Debtors to cure, then the non-debtor party would be forever prohibited from demanding the Debtors' cure of all pre-confirmation defaults under the executory contract and it would be deemed that the Debtors had satisfied the requirements of section 365(b).  Plan at § 8.2(b) (the "Other Executory Contract Treatment").

11.    The Licensors did not receive notice that the License Agreement is considered a Material Supply Agreement; therefore, by default, the License Agreement would appear to be afforded the Other Executory Contract Treatment under the Plan.  For the reasons discussed below, however, the proposed Other Executory Contract Treatment prohibits the Debtors' assumption of the License Agreement.

## LEGAL STANDARD

12.    In order for the Plan to be confirmed, the Debtors must demonstrate by a preponderance of the evidence that the Plan satisfies all the requirements of section 1129 of the Bankruptcy Code.  11 U.S.C. § 1129; *In the Matter of Johns-Manville Corp.*, 687 B.R. 618, 629 (Bankr. S.D.N.Y. 1986); *In re Toy & Sports Warehouse, Inc., et al.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).

## OBJECTION

13.    Sections 1129(a)(1) and (2) require that the Plan and the Debtors[4] comply with all applicable provisions of the Bankruptcy Code.  11 U.S.C. §§ 1129(a)(1) and (2).  The Debtors

---
[4] The Debtors are the plan proponents.

5

and the Plan, however, do not meet these requirements. Specifically, the Debtors cannot assume the License Agreement because it is non-assignable as a matter of applicable non-bankruptcy law and the Other Executory Contract Treatment does not satisfy the requirements of section 365(b). *See* 11 U.S.C. §§ 365(b) and 1123(b)(2). Further, the Debtors' disparate treatment of the cure claims resulting from the assumption of Material Supply Agreements as compared to that for other executory contracts is impermissible under sections 1122 and 1123(a)(4). *See* 11 U.S.C. §§ 1122 and 1123(a)(4). Furthermore, the Plan violates section 1129(a)(9) because the Debtors do not provide for the prompt payment in cash of all administrative expenses, including those owing under the License Agreement. For these reasons, the Plan cannot be confirmed as proposed.

## ARGUMENT

### I. THE DEBTORS DO NOT SATISFY THE REQUIREMENTS OF SECTIONS 1129(a)(1) AND (2)

#### A. The Debtors Do Not Satisfy Their Burden To Assume The License Agreement

14. Section 1123(b)(2) provides that, subject to satisfaction of the requirements of section 365, an executory contract can be assumed pursuant to the terms of a plan of reorganization. 11 U.S.C. § 1123(b)(2); *In re Exide Tech., et al.*, __ B.R. __, 2007 WL 4268763 at *2, No. 02-11125 (Bankr. D. Del. Dec. 5, 2007) (stating that notwithstanding section 1123(b), "whether an agreement may be assumed or rejected as an executory contract remains subject to the requirements of Bankruptcy Code § 365." (citations omitted)). Such assumption must occur by no later than plan confirmation. *See*, *e.g.*, *In re Adelphia Communications Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003). The provisions of section 365(b)(2) require, *inter alia*, a debtor to cure all defaults under the executory contract and to provide adequate assurance of future performance. 11 U.S.C. § 365(b); *Eastern Air Lines, Inc. v. Ins. Co. of the St. of Penn. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 999 (2d Cir. 1996); *In re Genuity Inc., et al.,* 323 B.R.

79, 84 (Bankr. S.D.N.Y. 2005). Under section 365(b), the Debtors bear the burden of proof on these issues. *See In re F.W. Restaurant Associates, Inc.*, 190 B.R. 143, 147 (Bankr. D. Conn. 1995) (finding that the debtor bears the burden of proof on the issues of prompt cure and adequate assurance of future performance). The Debtors fail to meet this standard.

15.    As a threshold matter, the License Agreement cannot be assumed by the Debtors because it is not assignable under non-bankruptcy law as it pertains to rights to the use of patents. *See* 11 U.S.C. § 365(c)(1); *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F3d 257 (4th Cir. 2004); *In re Catapult Inc.*, 165 F.3d 747 (9th Cir. 1999). Moreover, the proposed assumption is so contingent and speculative, in that the Debtors may ultimately reject, as to make it impermissible. *See* Plan at § 8.2.

16.    As proposed in the Plan, the Debtors place the burden of asserting the requirement for cure of all defaults under the License Agreement on Licensors and provide no adequate assurance of future performance. *See* Plan at § 8.2(b). The Debtors have not performed their obligations under the License Agreement. Specifically, the Debtors have failed to file all of the required Royalty Statements post-petition. And, Licensors believe, the Debtors' reported uses may be inaccurate and understated. The Debtors do not affirmatively provide for the cure of these defaults. Rather, under the Other Executory Contract Treatment, the Debtors are impermissibly attempting to avoid their burdens under section 365 by requiring Licensors to request payment of its cure claim and demand demonstrative evidence of adequate assurance of future performance. Accordingly, the Debtors have not satisfied their burden of demonstrating compliance with section 365 and, thus, the Plan and the Debtors do not comply with the requirements of sections 1129(a)(1) and (2).

**B.    The Debtors Cannot Cure Or Provide Adequate Assurance Of Future Performance**

17.    The Debtors' proposed assumption of the License Agreement is not permissible and cannot be accomplished as part of confirmation of the Plan. The cure proposed by the Debtors is insufficient and the Debtors cannot provide adequate assurance of future performance.

*i.    The Proposed Cure Is Insufficient*

18.    With respect to cure under section 365, the Second Circuit has stated that "Congress' intent in imposing cure and adequate assurance conditions on ability of bankruptcy debtor to assume executory contract was to insure that contracting parties receive full benefit of their bargain if they are forced to continue performance." *In re Ionosphere*, 85 F.3d at 999. Under the Plan, the Debtors' proposed cure is either cash payment or the Unsecured Stock Distribution. *See* Plan at § 1.36. Further, the Other Executory Contract Treatment will not provide for payment of any cure amounts for at least ninety days after the Effective Date.[5] The Debtors' proposed treatment will not place Licensors in the position of receiving the full benefit of their bargain. Prompt filing of the Royalty Statements, completion of the audit and cash payment of all royalties due and owing are the only means by which the Debtors can cure and give the Licensors the benefit of their bargain. The Plan does not propose such treatment.

19.    Payment of cure amounts in stock does not equate to payment of cash. This is reinforced by the fact that the actual issuance of the stock to Licensors may not occur for several months after the Effective Date and the value thereof could drastically decline. The Plan only provides a value for shares of New Common Stock as of the Effective Date. The Plan does not contain contingencies to increase the shares issued for subsequent distributions to account for fluctuations in the value thereof. There is no guarantee that the amount of New Common Stock

---

[5] This time period is comprised of the 45 day period after the Effective Date for non-debtor parties to other executory contracts to file cure claims and the Debtors' subsequent 45 day response period.

8

issued by the Debtors to cure the monetary defaults under the Plan will provide Licensors with the full benefit of the bargain.

        *ii.*       *The Debtors Cannot Provide Adequate Assurance Of Future Performance*

20.    Furthermore, the Debtors cannot provide adequate assurance of future performance under the License Agreement as required by section 365. Adequate assurance of future performance has been given a "practical, pragmatic construction" and whether a debtor has satisfied this requirement is a fact-specific inquiry. *In re Sapolin Paints, Inc.*, 5 B.R. 412, 420 (Bankr. E.D.N.Y. 1980).

21.    The Plan provides no assurances that the Debtors can perform under the License Agreement. To the contrary, the Debtors' performance over the past year is an indication that the Debtors cannot assure future performance. The Debtors have failed to file a number of Royalty Statements required by the terms of the License Agreement and its appears that the uses that were reported may have been understated. There is nothing in the Disclosure Statement or Plan that assures this will not continue in the future. Therefore, the Debtors have not satisfied this requirement.

22.    Since the Debtors' proposed assumption of the License Agreement does not satisfy the requirements of section 365, the Debtors cannot establish compliance with all the requirements of 1129(a), and the Plan cannot be confirmed insofar as it seeks to encompass assumption of the License Agreement.

**C.**    **The Plan Impermissibly Classifies Similar Claimants Separately And Provides Disparate Treatment Of Non-Debtor Executory Contract Claimants**

23.    While a debtor is not required to classify parties to executory contracts that hold cure claims as a separate class of creditors, a debtor cannot provide disparate treatment to parties holding such similar claims. The Bankruptcy Code has several protections to avoid disparate

9

treatment to similarly situated creditors; these same provisions should be applied when analyzing the treatment provided to parties holding cure claims.

24. Section 1122 of the Bankruptcy Code requires that all similarly situated creditors be classified together and afforded similar treatment. If similar creditors are treated differently, the debtor must have a reasonable justification. *In re Chateaugay Corp., et al.,* 155 B.R. 625, 632 (Bankr. S.D.N.Y. 1993) (finding that separate classification is permissible if the interests are distinct and in a different posture). Here, the Debtors' proposed treatment of non-debtor parties to executory contracts is not supported by a reasonable justification. Indeed, the non-debtor parties to Material Supply Agreements and the non-debtor parties to all other executory contracts are similar. *See* Plan at §§ 8.2(a) and (b). This impermissible "classification" should not be allowed.

25. As a result of this impermissible separate classification, the Debtors violate the provisions of section 1123(a)(4). That section requires the Debtors to provide similar treatment to each claim or interest of similarly situated creditors. 11 U.S.C. § 1123(a)(4). To provide equality of treatment, "all members of the class must receive equal value . . . [and] must pay the same consideration for its distribution." *In re Quigley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007). The Debtors do not propose to provide all executory contract parties with equal value. Specifically, non-debtor parties to other executory contracts, such as Licensors, would be required to wait substantially longer to receive any payment on their claims than non-debtor parties to Material Supply Agreements and may, depending on the choice made by the Debtors, receive the Unsecured Stock Distribution rather than cash. This disparate treatment is impermissible and violates section 1123(b)(4).

10

26.     Also, the two classes of non-debtor parties to executory contracts may receive disparate treatment because the non-debtor parties to other executory contracts would be required to take affirmative action to protect their rights and enforce the Debtors' obligations under section 365.  In addition to improperly shifting the Debtors' burden under section 365, placing these additional burdens on these similarly situated parties violates section 1123(a)(4) because non-debtor parties to other executory contracts are forced to take additional steps.

## II.    THE DEBTORS FAIL TO COMPLY WITH SECTION 1129(a)(9)

27.     Section 1129(a)(9)(A) requires that on the effective date of a plan of reorganization, the holder of an administrative claim under section 507(a)(1) receive "cash equal to the allowed amount of such claim . . . ."  11 U.S.C. § 1129(a)(9)(A).  The Debtors fail to satisfy this requirement.

28.     Amounts necessary to satisfy the Debtors' obligations under section 365 are entitled to administrative priority, yet the Plan does not provide for their payment on the Effective Date.  *See* Plan at § 8.2(b).  Rather, as discussed above, the Plan provides for payment weeks or months after the Effective Date.

29.     Moreover, whether the License Agreement is assumed or rejected, amounts due as royalties for the use of the Licensed Products after the Petition Date are entitled to administrative priority.  Again, however, the Plan does not provide for the prompt payment of such amounts on the Effective Date.  *See* Plan at §§ 2.1 and 8.3.  Rather, the Licensors would be required to wait until after filing a claim for administrative expense or rejection damages and the resolution thereof, and then, may only receive payment of their administrative claim on the next Periodic Distribution Date.  Such treatment does not comply with section 1129(a)(9)(A).

11

### III. THE THIRD PARTY RELEASES ARE IMPERMISSIBLE

30. Licensors object to the third party releases and exculpation provisions contained in Article XI of the Plan. *See*, *e.g.*, Plan at §§ 11.5 and 11.8. As a general matter, third party releases, except by express agreement of a party in interest, are not appropriate plan provisions. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005). Licensors may have rights under the License Agreement against third parties. None of those rights should be waived in connection with the third party releases or exculpation provisions contained in Article XI of the Plan. Licensors should be excluded from these proposed provisions.

### CONCLUSION

31. For the reasons set forth above, the Debtors have failed to satisfy *all* the requirements of section 1129(a) and the Plan as proposed is not confirmable.

### OBJECTION TO ASSUMPTION OF LICENSE AGREEMENT

32. For the reasons discussed above and pursuant to section 365, including that defaults have not been cured and no, much less adequate, assurances of future performance have been made, Licensors object to the assumption of the License Agreement.

### RESERVATION OF RIGHTS

33. Licensors expressly reserve their rights to amend, supplement or modify this Objection by written pleading filed with this Court or at oral argument before this Court. Nothing in this Objection shall be construed as a waiver of any of Licensors' rights, claims, interests or argument with respect to confirmation of the Plan or any other issue in these chapter 11 cases.

## NOTICE

34. Notice of this Objection has been provided in accordance with the Solicitation Order and the case management order entered by this Court in these jointly administered chapter 11 cases. Licensors submit that this notice is adequate and that no further notice is necessary.

## WAIVER OF MEMORANDUM OF LAW

35. Pursuant to Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, Licensors respectfully request that the Court waive the requirement that it file a separate memorandum of law in support of this Objection because the Objection does not appear to present a new or novel issue of law and this Objection sets forth the relevant points and authority.

WHEREFORE, for the reasons stated above, Licensors respectfully request that the Court enter an order denying confirmation of the Plan as proposed and denying assumption of the License Agreement and granting such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated: January 10, 2008

*/s/ Mary Joanne Dowd*
Mary Joanne Dowd (MD-0743)
Jeffrey N. Rothleder
ARENT FOX LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: (202) 857-6000
Fax: (202) 857-6395
Email: dowd.mary@arentfox.com
        and
1675 Broadway
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Counsel to Audio MPEG and SISVEL*