CELESTE R. GILL
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT, NATURAL RESOURCES AND AGRICULTURE DIVISION
525 W. Ottawa, 6th Floor, Williams
P.O. Box 30755
Lansing, MI  48909
Telephone:  517-373-7540
Facsimile:  517-373-1610
E-mail:  gillcr@michigan.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
IN RE:                                                       :
                                                             :   Chapter 11
        DELPHI CORPORATION, et al,                           :   Case No. 05-44481 (RDD)
                                                             :   (Jointly Administered)
                Debtors.                                     :
-------------------------------------------------------------x

## MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY'S OBJECTION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

The Michigan Department of Environmental Quality (MDEQ), by and through its attorneys, Michael A. Cox, Attorney General and Celeste R. Gill, Assistant Attorney General, files this objection to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession. MDEQ states the following in support of its objection:

### Background

1.      Delphi Corporation (hereinafter Delphi or Debtors) was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation (GM). Prior to January 1,

1999, GM conducted the Company's business through various divisions and subsidiaries which resulted in environmental contamination.

2. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi, in particular a subsidiary, Delphi Automotive Systems, LLC (DAS) in accordance with the terms of a Master Separation Agreement (Agreement) between Delphi and GM. As part of the Agreement, DAS assumed primary responsibility for environmental investigation and remediation at the former GM divisions and subsidiaries. (Attached as Exhibit 1 is a partial list of Delphi Facilities previously owned by GM).

3. Section 20126 of the Michigan's Natural Resources and Environmental Protection Act (NRPEA), 1994 PA 451, as amended, provides in part:

> (1) Notwithstanding any other provision or rule of law and except as provided in subsection (2), (3), (4), and (5) and section 20128, the following persons are liable under this part:
>
>> (a) The owner[1] or operator[2] of a facility[3] at the time of disposal of a hazardous substance if the owner is responsible for an activity causing a release or threat of release.
>> * * *
>> (c) An owner or operator of a facility who becomes an owner or operator on or after June 5, 1995, unless the owner or operator complies with both of the following:
>>> (i) A baseline environmental assessment is conducted prior to or within 45 days after the earlier of the date of purchase, occupancy, or foreclosure. For purpose of this section, assessing property to

---

[1] Owner means a person who owns a facility. MCL 324.20101(1)(z).
[2] Operator means a person who is in control of or responsible for the operation of the facility [with some exceptions]. MCL 324.20101(y).
[3] Facility means any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of section 20120a(1)(a) or (17) or the cleanup criteria for unrestricted residential use under Part 213 has been released, deposited, disposed of, or other wise comes to be located. Facility does not include any area, place, or property at which response activities have been completed which satisfy the cleanup criteria for the residential category provided for in section 20120a(1)(a) and (17) or at which corrective action has been completed under Part 213 which satisfies the cleanup criteria for unrestricted residential use. MCL 324.20101(1)(o).

2

       conduct a baseline environmental assessment does not constitute occupancy.

       (ii) The owner discloses the results of a baseline environmental assessment to the department and subsequent purchaser or transferee if the baseline environmental assessment confirms that the property is a facility.

4.     Delphi became the owner and operator of the former GM division and subsidiaries in 1999 and contamination has been confirmed at many of these facilities above Part 201 cleanup criteria.

5.     To the extent Delphi was responsible for an activity causing a release at each of these facilities, Delphi is liable under Section 20126(1)(a) of the NREPA. Further, Delphi became the owner and operator of the facilities, as defined by Part 201 of the NREPA after 1995 and did not conduct nor disclose a BEA for each facility and therefore is a liable person under Section 20126(1)(c) of the NREPA for the contamination at these facilities and has ongoing obligations under Part 201.

6.     Delphi also has ongoing obligations at its facilities under Part 213 of NREPA related to corrective actions for releases from underground storage tanks; under Part 111 of NREPA as a number of its properties are considered hazardous waste facilities; and under Part 31 of NREPA related to water quality.[4]

7.     In addition, GM remains directly liable under Section 20126(1)(a) of the NREPA to the extent that GM was responsible for an activity causing a release at each of the Delphi facilities prior to Delphi's separation from GM, and also maintains liability under Part 213 of NREPA, Part 111 of NREPA, and Part 31 of NREPA as well for its own facilities.

8.     Further, under Section 20126a of the NREPA, a liable person is *jointly and severally* liable for all costs of response activity lawfully incurred by the state of Michigan

---

[4] MCL 324.21301 *et seq.*, MCL 324.11101 *et seq.* and MCL 324.3101 *et seq.*, respectively.

relating to the selection and implementation of response activity or corrective action under Part 201.

9.  In October, 2005, Delphi filed for bankruptcy under Chapter 11 of the Bankruptcy Code 11 USC 101 *et seq.*

10.  The MDEQ filed a general unsecured claim for $64,329.64 for its liquidated past environmental response activity costs.

### Debtors' Plan of Reorganization

11.  Article 11.7 of the Debtors' Plan of Reorganization provides the following release language:

> Release of GM by Debtors and Third Parties. On the Effective Date, GM shall receive all releases provided for in Article IV of the Delphi-GM Global Settlement Agreement (GSA), which provisions are incorporated by reference herein in their entirety.

12.  Section 4.01(c) of the GSA provides the following broad and ambiguous language:

> (c) The Plan shall provide that effective as of the Effective Date, *the GM-Related Parties shall be forever released by the Additional Releasing Parties from any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, which the Additional Releasing Parties ever had, now have, or hereafter may have, whether known or unknown, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, or otherwise, that are directly or indirectly related to any of the Delphi-Related Parties, including without limitation claims based in whole* or in part upon any act or omission, transaction, agreement, event, action, or other occurrence taking place or failing to take place on or before the Effective Date *related to (i) the Separation*, (ii) any collective bargaining agreements to which any Delphi-Related Party is now or has been a party, (iii) any agreement or obligation related to any employees or former employees of the Delphi-Related Parties, (iv) *the Chapter 11 Cases*, or (v) the formulation, preparation, negotiation, dissemination, confirmation, or consummation (but not performance) of the Plan, the Disclosure Statement, this Agreement, the Restructuring Agreement, the Labor MOUs, the Non-Represented Employees Term Sheet, the UAW SAP, the IUE-CWA SAP, the IP License, the Warranty Settlement Agreement, *or any contract, instrument,*

4

*or other agreement or document created, modified, amended, or entered into in connection with any of the foregoing. The releases provided for in this section 4.01(c) shall include any and all claims that any of the Additional Releasing Parties have or would have been legally entitled to assert in its own right (whether individually or collectively) and shall be effective against any person or entity that would have been legally entitled to assert such claim derivatively or otherwise on behalf of any of the Additional Releasing Parties.* (emphasis added)

13.    "Additional Releasing Parties" as defined in the GSA includes but is not limited to (i) creditors of any of the Debtors and current and former holders of equity interests in Delphi. The Michigan Department of Environmental Quality is a creditor of the Debtors and based upon the broad definition provided in the GSA would be considered an "Additional Releasing Party."

14.    Although MDEQ is not a party to the GSA, a private agreement between the Debtors and GM, the GSA as incorporated into the Plan appears to provide releases of any and all claims it had or may have against GM, which is not a debtor in this case.

**Objection**

15.    Debtors' proposed plan does not meet all of the requirements of 11 USC 1129 and it cannot be confirmed.

16.    The Debtors' Plan does not comply with applicable provisions of the Bankruptcy Code as required by 11 USC 1129(a)(1) because Article 11.7 of the Debtors' Plan provides for the releases included in section 4.01(c) of the GSA for the benefit of GM, a nondebtor. With a limited exception, the Bankruptcy Code does not explicitly provide for nondebtor releases.[5] In fact, 11 USC 524(e) provides that "[e]xcept as provided in subsection (a)(3) of this section, discharge of the debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." And while it is true that 11 USC 105(a) gives the this Court authority "to issue any order, process, or judgment that is necessary or appropriate to

---

[5] See, 11 USC 524(g).

5

carry out the provisions of the [Code], it does not allow the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law."[6]

17. Nondebtor releases are "proper only in rare cases."[7] And while the courts have looked at several factors in determining whether to grant nondebtor releases, this bankruptcy case does not present a situation in which the Court should use its equitable powers to grant releases to this nondebtor.[8] In addition to the fact that no other provision of the Code provides for such a release, GM is separately and directly liable for contamination at various Delphi facilities and under applicable federal and state environmental laws, it may not contract away that liability. Further, considering the broad release language that Debtors propose to incorporate in the Plan, MDEQ is concerned that claims it has now or may have in the future against GM unrelated to Delphi facilities may also be released. The Court has no authority to grant such releases to GM as provided in Article 11.7 of the Plan.

18. Even if the Court has authority to provide such relief, the release provided in Article 11.7 of the Plan is not consensual nor is it supported by consideration to support such extraordinary relief.[9] "A nondebtor release is not adequately supported by consideration simply because the nondebtor contributed something to the reorganization and the enjoined creditor took something out."[10] If the Plan is approved with the proposed GM release language, the MDEQ may be enjoined from pursuing any claims or actions it has against GM although it received no consideration. Therefore, the Plan should not be confirmed unless the Debtors' make it clear that

---

[6] *In re Metromedia Fiber Network, Inc.*, 416 F3d 136, 142 (2d Cir 2005) *citing New England Diaries, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)* 351 F3d 86, 92 (2d Cir 2003) (internal quotations omitted).
[7] In re Metromedia Fiber Network, 416 F3d at 141.
[8] See generally, *In re Dow Corning Corporation*, 280 F3d 648 (6th Cir, 2002); *In re Metromedia Fiber*, 416 F3d 136; *In re Spiegel, Inc.*, 46 Bankr Ct Dec 272 (Bankr SDNY 2006).
[9] See, *In re Metromedia Fiber Network, Inc.*, 416 F3d 136 (2nd Cir, 2005).
[10] In re Metromedia Fiber Network, 416 2d Cir at 143.

the release provided to GM in section 4.01(c) of the GSA does not release the GM affiliated Parties from any Cause of Action held by a governmental entity based on the environmental laws of the United States or any domestic state, city, or municipality.

19. The MDEQ is also filing a protective objection to the method of payment for its general unsecured claim.[11] Article 5.3 of the Plan provides that holders of Allowed General Unsecured Claims shall receive New Common Stock and Discount Rights equal to 100% of the Face Amount of such holders Allowed General Unsecured Claim. However, the MDEQ is not authorized under the laws of the State of Michigan to accept and hold stock and thus this provision violates the requirement of 11 USC 1123(a)(4), that each claim or interest in a particular class be treated the same because MDEQ (along with similarly situated entities), will be unable to receive payment for its general unsecured claim. And for the same reason, the Plan is not fair and equitable as required by Section 1129(b) of Code.

20. The Plan also fails to properly classify the claims of some general unsecured creditors as required by Section 1122(a) of the Code. As discussed above, certain holders of Allowed General Unsecured Claims are not able to receive stock or stock rights as payment for their claims and as a result their claims are not substantially similar to the other general unsecured claims and should be placed in a separate class which provides a separate method of payment.

21. The Plan should not be confirmed unless the Debtors' agree to revise the Plan to ensure that holders of claims that are legally prohibited from accepting and holding stock receive an equivalent amount of cash for their allowed general unsecured claim.

---

[11] The MDEQ and the Debtors continue to discuss this issue and believe that a resolution may be reached.

7

22. MDEQ reserves the right to assert further objections to the Debtors' Plan.

<u>Memorandum of Law</u>

23. Because the relevant authorities in support of the requested relief are cited in this Objection, the MDEQ requests that the requirement of a separate memorandum of law under Local Bankruptcy Rule 9013-1 (b) be deemed satisfied.

WHEREFORE, the MDEQ respectfully requests that this Court deny confirmation of the Plan unless the proposed changes herein are incorporated into the Plan, and grant such other and further relief as is just had appropriate.

Respectfully submitted,

Michael A. Cox
Attorney General

/s/   Celeste R. Gill
Celeste R. Gill (admitted Pro Hac Vice)
Assistant Attorney General
Environment, Natural Resources and
Agriculture Division
525 W. Ottawa, 6th Floor, Williams
P.O. Box 30755
Lansing, MI   48909
E-mail: gillcr@michigan.gov

Dated: January 10, 2008
s: NR/cases/2006/Delphi/objection to first amended plan
LF:Delphi/Objection to first amended plan

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY'S OBJECTION TO THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION has been served by electronic and/or overnight mail on the parties listed below on this 10th day of January, 2008.

Honorable Robert D. Drain
US Bankruptcy Judge
One Bowling Green
Room 632
New York, NY 10004
US BANKRUPTCY JUDGE

Delphi Corporation, et al
Attn: General Counsel
5725 Delphi Drive
Troy, MI 48098
DEBTOR

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: John Wm. Butler, Jr.; George N. Panagakis; Ron E. Meisler; Nathan L. Stuart
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: Kayalyn A. Marafioti; Thomas J. Matz
Four Times Square, #41
New York, NY 10036-6518
COUNSEL FOR THE DEBTORS

Davis Polk & Wardwell
Attn: Donald Bernstein & Brian Resnick
450 Lexington Avenue
New York, NY 10017
COUNSEL FOR THE POSTPETITION LENDERS

Latham & Watkins LLP
Attn: Robert J. Rosenberg & Mark A. Broude
885 Third Avenue
New York, NY 10022
COUNSEL FOR THE CREDITORS' COMMITTEE

Fried, Frank, Harris, Shriver & Jacobson LLP
Attn: Bonnie K. Steingart, Brad E. Scheler, Vivek Melwani
One New York Plaza
New York, NY 10004
COUNSEL FOR THE EQUITY COMMITTEE

White & Case LLP
Attn: Thomas E. Lauria & Michael C. Shepherd
Wachovia Financial Center
200 South Biscayne Blvd
Suite 4900
Miami, FL 33131

and

White & Case LLP
Attn: Gerard H. Uzzi, Glenn M. Kurtz, Douglas P. Baumstein
1155 Avenue of the Americas
New York, Y 10036
COUNSEL FOR A-D ACQUISITION HOLDINGS LLC

Weil, Gotshal & Manges LLP
Attn: Jeffrey L. Tanenbaum, Michael P. Kessler, Robert J. Lemons
767 Fifth Avenue
New York, NY 10153
COUNSEL FOR GENERAL MOTORS CORPORATION

The Office of the United States Trustee
Attn: Alicia M. Leonhard
33 Whitehall Street, Suite 2100
New York, NY 10004
US TRUSTEE

/s/    Celeste R. Gill
Celeste R. Gill
Assistant Attorney General
Environment, Natural Resources and
Agriculture Division
525 W. Ottawa, 6th Floor, Williams
P.O. Box 30755
Lansing, MI 48909
E-mail: gillcr@michigan.gov