Dana P. Kane, Esq. (DK-3909)
Liquidity Solutions, Inc.
One University Plaza, Suite 312
Hackensack, New Jersey 07601
Phone: (201) 968-0001
Fax: (201) 968-0010

Counsel to Liquidity Solutions, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re:                                                         :    Chapter 11
                                                               :
DELPHI CORPORATION, et al.,                                    :    Case No. 05-44481 (RDD)
                                                               :
                                              Debtors.         :    (Jointly Administered)
---------------------------------------------------------------x

### OBJECTION OF LIQUIDITY SOLUTIONS, INC., AS ASSIGNEE, TO NOTICES OF CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS TO BE ASSUMED OR ASSUMED AND ASSIGNED UNDER PLAN OF REORGANIZATION

Liquidity Solutions, Inc. d/b/a Revenue Management ("LSI"), for its Objection to Notices of Cure Amount With Respect to Executory Contracts to Be Assumed or Assumed and Assigned Under Plan of Reorganization (each, a "Cure Notice" and collectively, the "Cure Notices"),[1] hereby respectfully states as follows (the "Objection"):

### BACKGROUND

1.  On October 8, 2005 and October 14, 2005, Delphi Corporation ("Delphi") and certain of Delphi's U.S. subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Cure Notices.

"Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

        2. On or about December 10, 2007, the Court entered an Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Procedures Order (the "Solicitation Procedures Order") [Docket No. 11389]. Among other things, the Solicitation Procedures Order established procedures for filing objections to assumption (or assumption and assignment) of executory contracts under the Plan of Reorganization filed on September 6, 2007, as amended and filed on December 10, 2007 (as may be further amended or supplemented, the "Plan") and/or for objecting to the Debtors' proposed Cure Amounts in connection therewith.

        3. LSI is the holder of numerous unsecured claims against the Debtors that arise out of executory contracts or unexpired leases between the respective original creditors and one or more of the Debtors (collectively, the "Assigned Claims").[2] The Assigned Claims were transferred in accordance with Rule 3001(e) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

        4. In connection with the transaction documents between LSI and the respective Original Claimants underlying the transfer of the Assigned Claims to LSI (each, an "Agreement"), each Original Claimant transferred and assigned to LSI all right, title and interest in and to its Assigned Claim against the Debtors and any distributions thereon to LSI, expressly

---

[2] A list of certain Assigned Claims is attached hereto as <u>Exhibit A</u>. The list identifies, among other things, the respective original holders of the Assigned Claims (each, an "Original Claimant") and the claim numbers associated therewith.

2

including, but not limited to, "cure" amounts within the meaning of section 365 of the Bankruptcy Code – to the extent that contracts or leases giving rise to such Assigned Claim are assumed (or assumed and assigned) by the Debtors – and the right to receive any and all distributions on account of any such "cure" amounts.

5. Additionally, pursuant to each Agreement, each Original Claimant also authorized and appointed LSI as its true and lawful attorney with respect to all matters concerning the Assigned Claim – including, but not limited to, expressly conferring upon LSI the power to exercise all rights to make elections that affect the particular Assigned Claim.

6. Notwithstanding the valid transfer to LSI of the Assigned Claims and the rights associated therewith, the Solicitation Procedures Order appears to permit the Debtors to deal directly with the Original Claimants in connection with assumption matters, including establishment of the appropriate Cure Amount and the election of the preferred currency for payment of such cure amounts (i.e., cash or stock in the Reorganized Debtors). Additionally, to the extent that the Original Claimants fail to execute and return a Cure Notice to the Debtors on a timely basis, the Solicitation Procedures Order provides as a default that the Cure Amount will be established at the amount asserted by the Debtors, and an election to be paid in stock on account of cure will be deemed to have been made.

7. Upon information and belief, each of the Original Claimants may have received a Cure Notice purportedly issued to it by the Debtors in accordance with the Solicitation Procedures Order. Although the Original Claimants contractually lack the power to do so, the elections that are made (or fail to be made) by these Original Claimants will affect the distributions that belong to LSI.

8.    Although LSI has made every effort to track down these Original Claimants, in order to (i) ascertain whether LSI is in agreement with the Debtors' proposed cure amount (the "Proposed Cure Amount") and (ii) to ensure that the Original Claimant elects LSI's preferred form of payment on account of cure, i.e., the election to receive cash on account of cure (at whatever Cure Amount is ultimately established by this Court) (the "Cash Election"), it is not possible for LSI to accomplish this objective for one of two reasons: (a) LSI could not make contact with certain Original Claimants despite diligent efforts (or if contact was made, the Original Claimant could not locate the relevant Cure Notice); or (b) the Cure Notice does not contain sufficient information for LSI and/or the Original Claimant to definitively determine whether the Proposed Cure Amount relates in whole or in part to the Assigned Claim. Finally, in other cases, LSI and the Original Claimant understand the relationship between the contracts at issue relate to the Assigned Claims, and upon review of the relevant Cure Notice, the parties have determined that they are in disagreement with the Proposed Cure Amount.[3]

9.    At a minimum, the Debtors should be required to identify whether the proposed assumptions relate in whole or in part to a contract or lease underlying the Claim assigned to LSI. If there is such a relationship, in each case where the Proposed Cure Amount differs from the amount of the related Claim as set forth in LSI's records, LSI respectfully requests that this Court direct the Debtors to pay the amount listed in the "Actual Cure Amount" column set forth on Exhibit A hereto. Further, any elections that are made (or fail to be made) by each Original Claimant as to form of payment of the cure amount should be deemed null and

---

[3] Out of an abundance of caution, LSI has asked each Original Claimant that LSI has been able to contact to file its own objection to the Cure Notice if appropriate. Many Original Claimants may do so under separate cover. However, as set forth herein, LSI is the proper party with standing to object to the Proposed Cure Amount and make payment elections. Accordingly, whether or not an Original Claimant has filed an objection to the Proposed Cure Amount, the cure amount with respect to every contract between the Debtors and an Original Claimant set forth on Exhibit A should be deemed in dispute unless and until resolved with LSI's consent.

4

void due to the Original Claimant's lack of contractual authority to make any such election, unless the Original Claimant timely selected the Cash Election.

10. LSI reserves the right to supplement this Objection in advance of any hearing thereon.

## CONCLUSION

WHEREFORE, LSI respectfully requests that the Court enter an order (i) establishing the Cure Amount for each Assigned Claim at the respective Actual Cure Amounts set forth on Exhibit A hereto, (ii) permitting LSI to make a Cash Election irrespective of any election (or deemed election) made to the contrary by an Original Claimant via the Cure Notice and (iii) granting such other and further relief as is just and proper under the circumstances.

Dated: January 11, 2008

Respectfully submitted,
LIQUIDITY SOLUTIONS, INC.

By: _____
Dana P. Kane, Esq. (DK-3909)
Liquidity Solutions, Inc.
One University Plaza, Suite 312
Hackensack, New Jersey 07601
Phone: (201) 968-0001
Fax: (201) 968-0010

5