# EXHIBIT A – PART 1

FORM B10 (Official Form 10) (04/04)

| UNITED STATES BANKRUPTCY COURT __Southern__ DISTRICT OF __New York__ | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Delphi Automotive Systems, LLC | Case Number: 05-44640 (RDD) | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Claim #08391
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):

Motorola, Inc.

**Name and address where notices should be sent:**
Peter A. Clark, McDermott Will & Emery LLP
227 W. Monroe Street, Chicago IL 60606

Telephone number: (312) 984-7504

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check box if you have never received any notices from the bankruptcy court in this case.
☑ Check box if the address differs from the address on the envelope sent to you by the court.

**Received**
JUN 23 2006
Kurtzman Carson

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:
See Addendum

Check here ☐ replaces     ☐ amends     a previously filed claim, dated: _____
if this claim

**1. Basis for Claim**
☑ Goods sold
☑ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other ___See Addendum___

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
    Last four digits of SS #: _____
    Unpaid compensation for services performed
    from _____ to _____
    (date)           (date)

**2. Date debt was incurred:** 11/01/2002

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ __8385154__ _____ _____ __8385154__
(unsecured)  (secured)  (priority)  (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim** $8,385,154

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,925),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date June 20, 2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Thomas J. Augspurger, Atty. for Motorola, Inc. |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.


0544640060622000000000003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| Delphi Corp., ) | Case No. 05-44481 (RDD) |
|           Debtor. ) | |
| ) | Jointly Administered |
| _____) | |

## ADDENDUM TO PROOF OF CLAIM OF MOTOROLA, INC.

Motorola, Inc. ("**Motorola**"), by its attorneys, hereby submits this addendum (the "**Addendum**") to its proof of claim (the "**Proof of Claim**") against Delphi Corp. and Delphi Automotive Systems, LLC (collectively, "**Delphi**") and in support thereof states as follows:

### Background

1. On October 8, 2005, Delphi filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York.

2. Delphi remains in possession of its property and continues to operate its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

### Basis for Claim

3. Motorola's claim arises from Delphi's prepetition breach of a long-term contract for the development, manufacture, sale and purchase of automobile parts for use in the Delphi "2006 GMT-900 Quadrasteer" program.

4. On or about November 1, 2002, Delphi and Motorola executed the "Additional Purchase Order Provisions Long Term Contract," attached hereto as Exhibit 1 (the "**Agreement**"), by which Delphi agreed to purchase from Motorola 100% of its production and service requirements for the Products (as defined in the Agreement) related to the Quadrasteer program.

5.  The term of the Agreement was "thru calendar year 2011 for OEM production thru calendar year 2027 for 15-year service requirement." Agreement, §2. The Agreement states that "[Motorola] will sell to Buyer all Product necessary to fulfill Buyer's service and replacement part obligations during the applicable OEM Production Purchaser Prior (sic) at the then current production pricing under the contract plus any cost differential for packaging." Agreement, §4. Additionally, "[a]fter the applicable OEM production purchase period ends, Seller will sell Product to Buyer to fulfill Buyer's past model service and replacement requirements for a minimum of 15 years." Agreement, §4. Further, paragraph (4)(c) of the "Conditions of Sale" incorporated and made part of the Agreement provides that "[i]f Motorola terminates this Agreement for default, or if Buyer terminates this Agreement for convenience, Buyer will pay to Motorola a cancellation charge consisting of Motorola's incurred costs, committed costs and a reasonable contract profit."

6.  Motorola performed under the Agreement beginning in 2002 by, among other things, preparing engineering specifications for the Products, manufacture of a sample delivery of the Products, software design, tooling of equipment, and making other significant capital investments required for the manufacture and sale of the Products to Delphi.

7.  Despite repeated requests for performance by, and notice to, Delphi of its obligations under the Agreement, Delphi failed to purchase the Products and otherwise perform as required. Delphi's omissions and failures constitute a default and material breach of the Agreement that has caused damage to Motorola for which Delphi is liable at law and in equity.

8.  Motorola's damages total not less than $8,385,154, comprising (a) engineering costs of $4,152,864, (b) capital costs of $708,088 and (c) lost profits of $3,524,201 (collectively, the "**Claim Amount**"). Based on the foregoing, and without prejudice to its other rights and remedies, Motorola hereby demands allowance and payment of the Claim Amount as an unsecured non-priority claim.

### Reservation of Other Claims and Rights

9. Motorola reserves the right to amend and supplement the Proof of Claim and this Addendum and to file additional claims against Delphi for any reason. Additionally, Motorola reserves all other rights, remedies, interests, priorities, protections, claims, counterclaims, defenses, setoffs, and recoupments, including, without limitation, claims against Delphi under sections 503, 507, 510, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code. Motorola further reserves any and all rights against all entities other than Delphi based on the foregoing facts and circumstances.

10. The filing of this Proof of Claim is not and should not be construed as (i) an election of remedy, (ii) a waiver of jury trial rights or (iii) a waiver or limitation of any right, interest, or cause of action held by Motorola, all of which are expressly reserved.

Dated: June 20, 2006
      Chicago, Illinois

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

*Attorneys for Motorola, Inc.*

_/s/ Peter A. Clark_

Peter A. Clark
Thomas J. Augspurger
227 West Monroe Street
Chicago, Illinois 60606-5096
Telephone: 312.372.2000
Facsimile: 312.984.7700
Email: pclark@mwe.com
      taugspurger@mwe.com

CHI99 4597909-2.034764.0216

## EXHIBIT 1

CHI99 4597909-2.034764.0216

# DELPHI

## ADDITIONAL PURCHASE ORDER PROVISIONS

## LONG TERM CONTRACT

### 1. Purchase of Product

Motorola, Inc. ("Seller") agrees to sell, and Delphi Corporation LLC acting through its Delphi Saginaw Steering Systems ("Buyer") agrees to purchase, approximately 100 percent (%) of Buyer's production and service requirements for the following products (each referred to as a "Product" and collectively referred to as the "Products"):

- See Appendix A for complete listing of products/specifications
- Product development shall include the development of an Open Loop and Closed Loop system

### 2. Term

The term of this Contract is thru calendar year 2011 for OEM production thru calendar year 2027 for 15-year service requirement.

- See Appendix B for Product Specific Timing

### 3. Prices

The sample and production per unit price, shipping terms and annual reductions is included in Appendix C. The Price includes MNS-2 payment terms with payment trigger of receipt of parts at Buyer's Plant (TTOP). Pricing is based on supplier provided expendable dunnage.

Seller agrees to reduce the price according to Appendix C upon the award of additional volume. Additional volumes include new programs or additional volume for previously awarded Product.

- See Appendix C for pricing, volumes, and logistic terms

Buyer and Seller will use their best efforts to implement cost savings and productivity improvements in order to reduce Seller's costs of supplying each Product. Buyer and Seller agree that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount equal to fifty percent 50%) of any net cost savings achieved by Seller with respect to such Product (i.e., savings after recovery by Seller of a pro rata portion, based on the remaining term of this Contract, of the reasonable and documented costs to achieve such cost savings), provided, however, that the pricing of each Product will be reduced (in addition to any scheduled price reductions) by an amount

**DELPHI**

equal to one hundred percent (100%) of any savings resulting from reduction on the content of the such Product.

No price increases (including any decrease of the scheduled price reductions) will be made on account of (i) Seller's failure to achieve any expected cost savings or productivity improvements or (ii) any increases in Seller's labor, materials, overhead and other costs. In the event that Buyer agrees to any price increases (or a decrease of any scheduled price reductions) with respect to any Product, then, notwithstanding anything to the contrary set forth in this Contract, the pricing of each Products will be reduced (in addition to any scheduled price reductions) by an amount equal to one hundred percent (100%) of any subsequent net cost savings achieved by Seller with respect to such Product until aggregate price reductions on account of Seller's cost savings equal any price increases previously agreed to by Buyer.

4.   **Service Pricing**

Seller will sell to Buyer all Product necessary to fulfill Buyer's service and replacement part obligations during the applicable OEM Production Purchase Prior at the then current production pricing under the contract plus any actual cost differential for packaging.

After the applicable OEM production purchase period ends, Seller will sell Product to Buyer to fulfill Buyer's past model service and replacement requirements for a minimum of 15 years. The price of the Product shall be the last year OEM production price plus any cost differential for packaging.

When requested by Buyer, Seller shall make service literature and other materials available to support Buyer's service part sales activities.

5.   **Right to Purchase from Others**

During the entire term of this Contract, Seller will assure that each Product remains competitive in terms of technology, design, service and quality with any similar product available to Buyer. Seller will also assure that each Product remains competitive in terms of price with any similar product available to Buyer. If, in the reasonable opinion of Buyer, a Product does not remain competitive, Buyer, to the extent it is free to do so, will advise Seller in writing of the area(s) in which a similar product is more competitive. If, within ninety (90) days, Seller does not agree to immediately sell any Product with comparable technology, design, quality, or, if applicable, price, Buyer may elect to purchase any similar products available to Buyer without any liability to Seller under this Contract.

6.   **Supplier Quality**

2002 11 01 QuadraSteer LTA.doc
11/01/02

-2-

# DELPHI

Seller agrees to participate in Buyer's supplier quality and development program(s). In addition, Seller shall comply with all quality requirements and procedures specified by Buyer, as the same may be revised from time to time, including those applicable to Seller as set forth in *Quality System Requirements QS-9000* and *Delphi Automotive Advanced Planning and Quality Process (APQP)*.

Seller agrees to take necessary steps through quality improvement and production containment at Seller's plant to insure that there will be:
1) No incoming inspection of components at Buyer's location
2) No on-line testing of components at Buyer's location
3) No extended containment at Buyer's location
4) If Buyer has to implement any of the above items to ensure component quality, Seller shall reimburse Buyer for any and all expense/cost.

## 7. Lean Manufacturing

Seller shall support typical automotive industry "lean" manufacturing principals in support of Buyer's manufacturing plant.

## 8. Resident Support

Seller shall provide resident program management, engineering, and software support (i.e., rapid prototyping) as required, on-site, at Buyer's facility in order to effectively manage, develop, implement, and support the Product. Resident support shall include at least (2) two resident engineers to support this program. One System engineer shall be on-site 100% of the time or as needed. One Software engineer shall be on-site at least 50% of the time or as needed. On-site support will be provided though PPAP.

## 9. Resource Plan

Seller understands and accepts the need to allocate additional resources to facilitate a successful launch of these Product(s) as well as previously awarded Product. Seller shall provide a resource plan 30 days after signing as well as regular updates as needed.

Seller agrees to provide adequate resources to develop an Open and Closed Loop system controller.

## 10. Purchase Orders

All Products will be ordered by Buyer, and delivered by Seller, in accordance with written purchase orders (including related delivery releases and shipping instructions) issued by Buyer from time to time during the term of this Contract. Buyer's General Terms and Condition that have been agreed upon by both parties, and a copy of which is attached, are hereby incorporated into this

# DELPHI

Contract by reference. Any amendment to, or revision of, such General Terms and Conditions shall also become a part of this Contract, provided that both parties execute the revised General Terms and Conditions. The Terms and Conditions (together with any revision made a part of this Contract) shall be construed, to the extent possible, as consistent with the terms and conditions set forth in this Contract and as cumulative, provided, however, that if such construction is unreasonable, the terms and conditions set forth in this Contract shall control.

**EXECUTED by Buyer and Seller as of November 1, 2002**

Motorola objects to Delphi's Terms and Conditions and will supply product on the terms and conditions set forth in Motorola's enclosed Terms of Sale. It is expressly made conditional on assent to those terms and conditions, whether assent is in writing or by conduct. Acceptance of this Response or payment for products shall constitute such assent.

*Delphi does not agree to Motorola's terms + conditions*

Buyer:                                              Seller:

**Delphi Corporation LLC**                          **Motorola, Inc.**
**acting through its Delphi Saginaw**
**Steering Systems**

By: _Nancy Wisniewski_                              By: _[signature]_
Name: _Nancy Wisniewski_                            Name: _[illegible] Scott_
Title: _Buyer_                                      Title: _Director - Motorola CCTD_

By: _[signature]_                                   By: _[signature]_
Name: _Sylvester D. Orsini_                         Name: _Mike Adams_
Title: _Purchasing Manager_                         Title: _VP and Director of Sales_

2002 11 01 QuadraSteer LTA.doc                                                          - 4 -
11/01/02