McDERMOTT WILL & EMERY LLP
James M. Sullivan (JS-2189)
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Counsel for The Timken Company and Timken U.S. Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------- x
In re                                          :    Chapter 11
                                               :
DELPHI CORPORATION, et al.,                    :    Case No. 05-44481 (RDD)
                                               :
            Debtors.                           :    (Jointly Administered)
                                               :
---------------------------------------------- x

### OBJECTION OF THE TIMKEN COMPANY AND TIMKEN U.S. CORP. TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION, ET AL.

The Timken Company and Timken U.S. Corp. (together, "Timken"), creditors of debtor Delphi Corporation and its debtor affiliates (together, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the First Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Plan").[1] In support of this Objection, Timken respectfully represents as follows:

### PRELIMINARY STATEMENT

1.      Timken submits this Objection to the Plan because counsel for the Debtors has advised Timken's counsel that the Debtors will not pay Postpetition Interest on general unsecured cure claims that have previously been satisfied (the "Cure Claims"), such as the Cure Claim held by Timken. Timken disagrees with this interpretation of the Plan, but to the extent

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

the Debtors are correct, then the Plan unfairly and impermissibly discriminates between Cure Claims and other General Unsecured Claims. According to the Debtors' interpretation of the Plan, Postpetition Interest will not be paid on Cure Claims, whereas Postpetition Interest will be paid on General Unsecured Claims. Cure Claims are General Unsecured Claims as defined under the Plan and should therefore receive Postpetition Interest, just like any other General Unsecured Claims.[2] This blatant discrimination among General Unsecured Claims imposed without any valid reason violates section 1123(a)(4) of the Bankruptcy Code.

## BACKGROUND

2.      On June 2, 2006, Timken and Delphi Automotive Systems LLC ("DAS LLC"), one of the Debtors in these cases, entered into an Assumption Agreement (the "Assumption Agreement"), whereby DAS LLC agreed that it would make a payment in the amount of $1,803,986.64 (the "Cure Amount") by December 31, 2006 in connection with the assumption of a certain Life Time Contract dated September 18, 2001. On December 3, 2006 (the "Cure Payment Date"), DAS LLC paid Timken the Cure Amount in accordance with the terms of the Assumption Agreement.

3.      On July 27, 2006, Timken filed proof of claim number 11706 against the Debtors, asserting an unsecured non-priority claim in the amount of $210,932.12 and a secured claim in the amount of $25,011.37 ("Claim 11706") arising from the delivery of goods prior to the Petition Date. On July 31, 2006, Timken filed proof of claim number 14319 against the Debtors,

---

[2] General Unsecured Claim is defined as "any Claim, including a Senior Note Claim, a TOPrS Claim, or a SERP Claim, that is not otherwise an Administrative Claim, Priority Tax Claim, Secured Claim, Flow-Through Claim, GM Claim, Section 510(b) Note Claim, Intercompany Claim, Section 510(b) Equity Claim, Section 510(b) ERISA Claim, Section 510(b) Opt Out Claim, or Intercompany Claim." (*See* Plan, p. 12.) In turn, Claim is defined as "a claim against one of the Debtors (or all or some of them), whether or not asserted, as defined in section 101(5) of the Bankruptcy Code." (*See* Plan, p. 6.)

NYK 1140070-1.064980.0022

asserting an unsecured non-priority claim in the amount of $2,883,781.07, an unsecured priority claim in the amount of $1,803,986.64, and a secured claim in the amount of $551,667.27 ("Claim 14319") arising from the delivery of goods prior to the Petition Date. On January 23, 2007, Timken filed proof of claim number 16499 against the Debtors, asserting an unsecured non-priority claim in the amount of $2,702,790.97, an unsecured priority claim in the amount of $1,803,986.64, and a secured claim in the amount of $732,657.37 ("Claim 16499") arising from the delivery of goods prior to the Petition Date.

4.  On September 7, 2007, this Court entered a Joint Stipulation and Agreed Order Disallowing and Expunging Proof of Claim Number 16499 (the "First Joint Stipulation") pursuant to which Claim 16499 was expunged in its entirety as duplicative of Claim 14319. On November 16, 2007, this Court entered a Joint Stipulation and Agreed Order Compromising and Allowing Proof of Claim Numbers 11706 and 14319 (the "Second Joint Stipulation") pursuant to which (i) Claim 11706 was allowed as a general unsecured non-priority claim against DAS LLC in the amount of $235,943.49, and (ii) Claim 14319 was allowed as a general unsecured non-priority claim against DAS LLC in the amount of $2,906,570.74. According to the Second Joint Stipulation, Timken reserved "its right to seek a distribution of postpetition interest on the Cure Claim from the Petition Date to the Cure Payment Date under the Debtors' plan of reorganization, and the Debtors reserve[d] the right to contest the same." (*See* Second Joint Stipulation ¶ 3.)

5.  On September 6, 2007, the Debtors filed the Plan and the related Disclosure Statement (as amended on December 10, 2007, the "Disclosure Statement"). On December 10, 2007, the Disclosure Statement was approved by this Court.

NYK 1140070-1.064980.0022

6. In accordance with the Plan, holders of General Unsecured Claims will receive Postpetition Interest at the Michigan Statutory Rate of 4.845%. (*See* Disclosure Statement, p. 177.)

7. In accordance with the Solicitation Procedures Order approving, among other things, the Disclosure Statement, the Debtors were to provide on or before December 21, 2007 to counterparties to supply contracts to be assumed by the Debtors a Cure Amount Notice. (*See* Solicitation Procedures Order ¶ 43.) According to the Cure Amount Notice, holders of Cure Amount Claims whose contracts have not yet been assumed may request payment of their cure amount either (i) in Cash without postpetition interest as soon as reasonably practicable after the Effective Date but in any event no later than 30 days after the Effective Date, or (ii) in Plan currency afforded to General Unsecured Claims, including postpetition interest from the Petition Date through the earlier of the Confirmation Date or January 31, 2008, at the Michigan Statutory Rate. (*See* Cure Amount Notice, p. 2; *see also* Disclosure Statement, p.16.)

## **OBJECTION**

8. The Debtors, as the proponents of the Plan, bear the burden of demonstrating that each element of section 1129(a) of the Bankruptcy Code has been satisfied. *See, e.g., In re Arnold & Baker Farms*, 177 B.R. 648, 654 (BAP 9th Cir. 1994); *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D. Va. 2000). The Debtors bear both the burdens of production and persuasion on these issues. *See, e.g.,* 7 Collier on Bankruptcy ¶1129.02[4] (15th ed. 2005) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied").

9. In addition, the Debtors must demonstrate that the Plan satisfies the provisions of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence. As explained by

NYK 1140070-1.064980.0022

the Court of Appeals for the Fifth Circuit in *Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprises., Ltd. II (In re Briscoe Enterprises., Ltd. II)*:

> The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof under both § 1129(a) and in a cramdown.

994 F.2d 1160, 1165 (5th Cir. 1993); *see also In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994) ("the final burden of proof at ...[the] confirmation hearing remains a preponderance of the evidence.")

10.    The Debtors, however, have failed to meet their burden because their interpretation of the Plan discriminates between Cure Claims, on which Postpetition Interest will not be paid, and other General Unsecured Claims, on which Postpetition Interest will be paid. Such discrimination between General Unsecured Claims violates section 1123(a)(4) of the Bankruptcy Code.

11.    It is axiomatic that a plan may not discriminate among claims in the same class. Section 1123(a)(4) of the Bankruptcy Code provides that "[n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall -- (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest..." Thus, section 1123(a)(4) "prohibits different percentage settlements to members of the same class as well as unequal consideration tendered for equal payment." *See* 7 Collier on Bankruptcy, ¶1123.01[4] (15th ed. 2005). *See also In re AOV Indus., Inc.*, 792 F.2d 1140, 1152 (D.C. Cir. 1986) ("the most conspicuous inequality that § 1123(a)(4) prohibits is payment of different percentage settlements to co-class members"); *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280

NYK 1140070-1.064980.0022

F.3d 648, 659-60 (6th Cir. 2002) (finding disparate treatment where certain claimants were afforded more rights than other claimants in the same class).

12.  The Debtors provide no justification for the disparate treatments embodied in the Plan between Cure Claims and other General Unsecured Claims.  It is not a sufficient justification to say that holders of Cure Claims are being treated the same as holders of Cure Amount Claims who may elect to receive their cure amount in the form of Cash (without Postpetition Interest), as opposed to Plan currency (with Postpetition Interest) because section 1123(a)(4) of the Bankruptcy Code only authorizes less favorable treatment for those claimants who consent to such treatment.  Holders of Cure Amount Claims who elect to receive their cure amount in Cash (without Postpetition Interest) have consented to such treatment.  Holders of Cure Claims, such as Timken, have not consented to such less favorable treatment.

13.  There is therefore no justification to discriminate among General Unsecured Claims in this fashion.  Timken, who only received Cash on the Cure Payment Date (and no Postpetition Interest) should receive, just like any other holder of General Unsecured Claims, Postpetition Interest on the Cure Amount from the Petition Date to the Cure Payment Date.

NYK 1140070-1.064980.0022

## CONCLUSION

For the foregoing reasons, Timken respectfully requests that this Court grant Timken Postpetition Interest on the Cure Amount from the Petition Date to the Cure Payment Date.

Timken reserves the right to join in any other objections that may be filed to the Plan.

Dated: January 11, 2008                McDERMOTT WILL & EMERY LLP

By: /s/ James Sullivan
    James M. Sullivan (JS-2189)
    340 Madison Avenue
    New York, New York 10173-1922
    Telephone: (212) 547-5400
    Facsimile (212) 547-5444

*Counsel for The Timken Company
and Timken U.S. Corp.*