Objection Deadline: January 11, 2008 at 4 p.m.
Hearing Date: January 17, 2008 at 10 a.m.

**BROWN RUDNICK BERLACK ISRAELS LLP**
**Seven Times Square**
**New York, NY 10036**
**(212) 209-4800**
**Robert J. Stark (RS-3575)**
**Daniel J. Saval (DS-2437)**

*Counsel to Law Debenture Trust Company of New York, as successor Indenture Trustee for the 8.25% Junior Subordinated Notes due 2033 and the Adjustable Rate Junior Subordinated Notes due 2033*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :    Case No. 05-44481 (RDD)
                                                    :
                                                    :    Jointly Administered
                    Debtors.                        :
                                                    :
----------------------------------------------------------x

### OBJECTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK TO CONFIRMATION OF FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

Law Debenture Trust Company of New York ("Law Debenture"), as successor Indenture Trustee for the (i) 8.25% Junior Subordinated Notes due 2033 and (ii) Adjustable Rate Junior Subordinated Notes due 2033 (collectively, the "Subordinated Notes") issued by Delphi Corporation ("Delphi" and, together with its Chapter 11 debtor affiliates, the "Debtors"), by and through its undersigned counsel, hereby submits this Objection to confirmation of the *First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession*, dated December 10, 2007 (the "Plan"). In support of its Objection, Law Debenture respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  Law Debenture, as successor Indenture Trustee, is a fiduciary representative for holders of the Subordinated Notes. The Subordinated Noteholders' claims are referred to in the Plan as "TOPrS Claims". The TOPrS Claims break down into two components:[1] (1) principal and interest due on the Subordinated Notes (exceeding $420 million plus post-petition interest, to the extent legally sustainable); and (2) Law Debenture's contractual right to pre- and post-petition fees and expenses, including attorneys' fees, earned and incurred representing the interests of the Subordinated Noteholders in these Chapter 11 cases.

2.  The former component of the TOPrS Claims is arguably subordinate to "Senior Indebtedness," as defined in Subordinated Notes Indenture. The latter component is <u>not</u> subordinated debt and, therefore, is entitled to the same treatment as the Debtors' other general unsecured indebtedness.

3.  The Plan does not fully satisfy either part of the TOPrS Claims: (1) Subordinated Noteholders receive distributions estimated to equal 90% of their pre-petition claims, notwithstanding the fact that the Plan reserves distributions to holders of Delphi equity interests; and (2) Law Debenture is expressly denied any payment on account of its post-petition fees and expenses, notwithstanding the fact that all other general unsecured creditors receive distributions estimated to equal 100% of their pre-petition claims, plus post-petition interest.

4.  On November 21, 2007, Law Debenture interposed a lengthy objection to the Debtors' proposed Disclosure Statement, arguing that added disclosure was necessary to ensure that holders of Subordinated Notes fully understood that grounds may exist to vote against and/or object to confirmation of the Plan. In response, the Debtors added additional

---

[1] A true and correct copy of the Subordinated Notes Indenture is attached hereto as <u>Exhibit A</u>.

2

disclosure to the final Disclosure Statement.  Law Debenture also independently sent notice of its points of concern to holders of Subordinated Notes but, as of the date of this filing, has not received any responsive communications.  Law Debenture therefore presumes the Subordinated Noteholders are accepting of the Plan and/or will independently raise whatever confirmation objections they may have.

5.    Accordingly, Law Debenture focuses this objection only on the treatment of the second-half of the TOPrS Claims, to wit: the Plan's express denial of any payment to Law Debenture on account of it's post-petition fees and expenses, while all other general unsecured creditors receive full satisfaction of their claims, plus post-petition interest.  As discussed herein, the payment of such fees and expenses is: (a) a clear debt obligation of Delphi's; (b) entitled to allowance under applicable case law; and (c) entitled to the same treatment as all other general unsecured creditors, namely full satisfaction plus post-petition interest.  The Plan's treatment of this aspect of the TOPrS Claims violates Bankruptcy Code Section 1129, rendering the Plan unconfirmable.

6.    Accordingly, Law Debenture respectfully requests that this Court deny confirmation of the Plan unless it is modified to provide for the full payment of Law Debenture's post-petition fees and expenses, with post-petition interest (like all other general unsecured, unsubordinated creditors).

## BACKGROUND

7.  **General Case Background.**  On October 8 and 14, 2005 (together, the "Petition Date"), each of the Debtors filed with this Court voluntary petitions for Chapter 11 relief.  The Debtors have continued to manage and operate their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code Sections 1107 and 1108.

8.  On October 17, 2005, the United States Trustee appointed an Official Committee of Unsecured Creditors.  Subsequently, the U.S. Trustee appointed an Official Committee of Equity Security Holders.

9.  **The TOPrS Claims.**  The Subordinated Notes were originally issued to two Delaware statutory trusts: Delphi Trust I and Delphi Trust II (together, the "Statutory Trusts").  The Statutory Trusts, in turn, issued publicly-held trust preferred securities (the "TOPrS") backed by the Subordinated Notes.  The trust agreements establishing the respective Statutory Trusts (the "Trust Agreements") provided that the commencement of Delphi's Chapter 11 case triggered the termination of the Statutory Trusts.  As a consequence, the Statutory Trusts were terminated post-petition and the TOPrS were cancelled.  In exchange, interests in the Subordinated Notes were issued on a pro rata basis to holders of the TOPrS.

10.  On or about April 12, 2006, Law Debenture, on behalf of the Subordinated Noteholders and itself, filed a proof of claim against the Debtors in the amount of $420,083,457, representing the outstanding principal amount of the Subordinated Notes and accrued interest as of the Petition Date.  This is the first component of the TOPrS Claims, as discussed above.  A true and accurate copy of the proof of claim filed by Law Debenture is attached hereto as Exhibit B.

11. In its proof of claim, Law Debenture also asserted "the right to recover post-petition interest, fees, costs, counsel fees and charges," noting that "[t]hese amounts are currently unliquidated and continue to accrue." Law Debenture's entitlement to the payment of post-petition fees and the reimbursement of expenses is the second component of the TOPrS Claims, and is based on an independent contractual right to such payments as provided for in the Subordinated Notes Indenture.

12. **The Debtors' Contractual Obligation To Pay Law Debenture Invoices.** Section 7.06 of the Subordinated Notes Indenture provides that "[Delphi] will pay or reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Indenture (including the reasonable compensation, expenses and disbursements of its counsel and of all persons not regularly in its employ)." Further, Section 6.02 of the Indenture directs "any receiver, assignee or trustee in bankruptcy or reorganization" to "pay to the Trustee such amount as shall be sufficient to cover reasonable compensation to the Trustee."

13. Thus, in the Indenture, Delphi contractually agreed to satisfy all of Law Debenture's fees earned and expenses incurred representing the Subordinated Noteholders in these cases, including payment of invoices submitted by Law Debenture's counsel.

14. **Law Debenture's Entitlement To Payment Constitutes An *Unsubordinated* "General Unsecured Claim".** The Subordinated Noteholders' entitlement to value from Delphi's Chapter 11 estate arguably is contractually subordinated to "Senior Indebtedness," as defined in the Subordinated Notes Indenture. However, Law Debenture's entitlement to payment of post-petition fees and reimbursement of its expenses is <u>not</u> contractually subordinated to any other Delphi indebtedness. <u>See</u> Subordinated Notes Indenture

5

§ 17.01 ("[T]he indebtedness evidenced *by the Debt Securities* [defined in a manner excluding Law Debenture's rights under Section 7.06] of each series or any Coupons appurtenant thereto is subordinate and junior in right of payment to all Senior Debt to the extent provided herein." (emphasis added)); see also § 17.06 ("nothing in this Article [discussing subordination] shall apply to claims of, or payments to, the Trustee under or pursuant to Section 7.06."). Thus, Law Debenture's entitlement to payment of fees and expenses, including professional expenses, constitutes a general unsecured claim entitled to the same treatment as any other unsubordinated, unsecured obligation of the Debtors.

15.    **Plan Treatment of Law Debenture's Claim.**    Although the Plan provides a distribution to holders of general unsecured claims deemed to equal 100% of their allowed claims, plus post-petition interest, see Plan § 5.3, the Plan does not provide for payment of Law Debenture's post-petition fees and expenses asserted in its proof of claim, see id. at § 1.211 (defining "TOPrS Claim" to exclude Law Debenture's entitlement to fees and expenses). Rather, Law Debenture is required by the Plan to file a "substantial contribution" application under Bankruptcy Code Section 503(b) in order to seek payment of its fees and expenses. See id. at § 10.4.

**BASES FOR OBJECTION**

**I.    Confirmation Should Be Denied Because
The Plan Inappropriately Denies Law Debenture
Of Its Entitlement To The Payment Of Fees And Expenses.**

**A.    Law Debenture's Fees and Expenses Are
Allowable As A General Unsecured Claim.**

16.    As noted above, the Subordinated Notes Indenture explicitly obligates Delphi to fully satisfy Law Debenture's fees and reimburse its expenses, and this obligation is not contractually subordinated to debt obligations owed to any other creditor. Therefore, Law

6

Debenture's entitlement to have its fees and expenses paid by the estate was, as of the Petition Date, a contingent contract claim sharing the same priority as any other general unsecured claim. In other words, the fee claim arose from a pre-petition contract, and became "fixed" post-petition upon the incurrence of the fees and expenses, and became payable like any other unsecured obligation.

17. As a threshold matter, it is beyond cavil that contingent claims are not subject to disallowance or disparate treatment by dint of their contingent status. See 11 U.S.C. § 101(5)(A)(including contingent right to payment within the definition of "claim"); see also Acevedo v. Van Dorn Plastic Mach. Co., 68 B.R. 495, 497 (Bankr. E.D.N.Y. 1986) (noting that "Congress intended an extremely broad definition of 'claim' for bankruptcy administration").

18. With that principle in mind, recent case law provides more than ample support for allowance of Law Debenture's fees and expenses. Last year, the United States Supreme Court, in Travelers Casualty & Insurance Co. of America v. Pacific Gas & Elec. Co., 127 S.Ct. 1199 (2007), overruled the Ninth Circuit's so-called "Fobian Rule", which precluded the allowance of post-petition fees incurred in litigating issues peculiar to bankruptcy law. In so holding, the Supreme Court stated that "it remains true that an otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." Id. at 1203-04.

19. Although Travelers did not squarely address whether the Bankruptcy Code permits the recovery of an unsecured creditor's post-petition fees, post-Travelers decisions (as well as pre-Travelers decisions) hold that such fees are allowable where, as here, the right to payment of those fees arises in contract. See In re Qmect, Inc., 368 B.R. 882, 883 (Bankr. N.D. Cal. 2007) (holding unsecured creditor could recover, as part of its unsecured claim, post-petition

7

attorney's fees if its contract with the debtor provided for recovery of such fees); In re Brooks, 2007 WL 1114091, *3 (Bankr. D.N.J. Apr. 12, 2007) (citing Travelers, court held that contractual fee-shifting arrangements are enforceable and the fact that the fees were incurred during the bankruptcy process does not make them unrecoverable); In re Hoopai, 369 B.R. 506, 511–12 (B.A.P. 9th Cir. 2007) ("the Supreme Court in *Travelers* overruled the Ninth Circuit's *Fobian* rule and made clear that contract-based fees incurred in the course of litigating issues of federal bankruptcy law may be awarded pursuant to state law"); see also In re Fast, 318 B.R. 183, 194 (Bankr. D. Colo. 2004) ("The Court is persuaded that an unsecured creditor is not, completely and unqualifiedly, precluded from asserting a claim for postpetition attorney's fees if it is provided for by contract."); In re New Power Co., 313 B.R. 496, 510 (Bankr. N.D. Ga. 2004) ("Neither § 506(b) nor the *Timbers* decision bar unsecured creditors from asserting a contractual or statutory claim for attorneys' fees as an unsecured claim.").

20.  Following these principles, courts routinely allow the post-petition fees of indenture trustees where the indenture provides for payment of those fees. See, e.g., In re W.T. Grant Co., 119 B.R. 898, 901 (S.D.N.Y. 1990) (indenture trustee's contractual claim for compensation enforceable in bankruptcy regardless of whether its efforts benefited the estate); In re Flight Transp. Corp. Sec. Litigation, 874 F.2d 576, 583 (8th Cir. 1989) (holding that indenture trustee's claim for fees based on indenture provisions included post-petition fees).

21.  Second Circuit authority also supports the payment of Law Debenture's fees and expenses. In In re United Merchs. & Mfrs., Inc., 674 F.2d 134 (2d Cir. 1982), the Second Circuit held that the post-petition fees of two unsecured lenders were allowable where the pre-petition loan agreement provided for payment of those fees. The Court concluded that the fees were allowable as contingent claims as of the petition date, so long as they were

8

enforceable under state law.  Id. at 137.  Although United Merchs. was decided under the former Bankruptcy Act, the Second Circuit specifically rejected an argument that the newly enacted Bankruptcy Code Section 506(b) -- providing for the payment of an oversecured creditor's post-petition fees -- by negative implication, compelled a different result.  In this regard, the Court stated that "[n]either the statute [section 506(b)] nor its legislative history sheds any light on the status of an unsecured creditor's contractual claims for attorney's fees." Id. at 138.  The United Merchs. case has subsequently been cited with approval in cases decided under the Bankruptcy Code.  See, e.g., In re Ladycliff College, 56 B.R. 765, 769 (S.D.N.Y. 1985); In re Independent American Real Estate, Inc., 146 B.R. 546, 555-56 (Bankr. N.D. Tex. 1992).

22.     In sum, there is no legitimate basis for the Plan to treat Law Debenture any differently from any other general unsecured, unsubordinated creditor.  See In re WorldCom, Inc., 2003 WL 23861928, *59 (Bankr. S.D.N.Y. Oct. 31, 2003)(a plan discriminates against creditors if similar claims "are treated differently without a reasonable basis for the disparate treatment").

     **B.     The Plan Unfairly Discriminates Against
            Law Debenture And Is, Therefore, Unconfirmable.**

23.     Bankruptcy Code Section 1123(a)(4) states that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  Compliance with Section 1123(a)(4) is a condition precedent for plan confirmation, per Section 1129(a)(1).  See In re AOV Indus., 792 F.2d 1140 (D.C. Cir. 1986); In re MCorp Fin., 160 B.R. 941 (S.D. Tex. 1993); In re Wermelskirchen, 163 B.R. 793 (Bankr. N.D. Ohio 1994).

24. Section 1123(a)(4) "restates a cardinal principle of bankruptcy law, namely that creditors of the same class have a right to equality of treatment." 7 Collier on Bankruptcy ¶ 1123.01[4][a] at 1123-9 (15th ed. rev. 2006); see, e.g., Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 659-60 (6th Cir. 2001)(Section 1123(a)(4) violated where Canadian governmental agencies accorded far more effective recovery rights than the United States); In re Granada Wines, Inc. 748 F.2d 42, 46 (1st Cir. 1984) (stating that pension fund claims and other general unsecured claims must be treated alike); AOV Indus., Inc., 792 F.2d 1140 (Section 1123(a)(4) violated when members of common class are required to tender more valuable consideration in exchange for same percentage of recovery); In re Finova Group, Inc., 304 B.R. 630 (D. Del. 2004)(plan's attempt to pay fees to certain creditors and not others violated the equality of treatment requirement); In re Stratford Assoc. Ltd. Partnership, 145 B.R. 689, 700-701 (Bankr. D. Kan. 1992) (plan under which first mortgagee was not entitled to receive post-petition interest, but which provided second mortgagee with post-petition interest, resulted in unfair discrimination, precluding confirmation); In re Modern Steel Treating Co., 130 B.R. 60 (Bankr. N.D. Ill. 1991)(plan violated Section 1123(a)(4) by divesting some shareholders of interests but transfers complete ownership to another shareholder); In re Pine Lake Village Apartment Co., 19 B.R. 819, 831 (Bankr. S.D.N.Y. 1982) (finding that mortgage deficiency claim and trade claims must be treated alike).

25. Here, similarly situated claims are not accorded equality of treatment: (i) on the one hand, distributions are not reserved for Law Debenture's general unsecured, unsubordinated claim for fees and expenses; and (ii) on the other hand, all other general unsecured claims receive 100% distributions, plus post-petition interest. Law Debenture does not consent to treatment that is any different than the treatment afforded all other general

unsecured, unsubordinated creditors and, as a result, Section 1123(a)(4) is violated. Confirmation should be denied.

### C. The Plan Explicitly Denies The Existence Of Law Debenture's Valid Claim And Is, Therefore, Unconfirmable.

26. Almost axiomatic, a plan cannot simply ignore a valid claim and fail to provide appropriate treatment therefore. See 11 U.S.C. §§ 1129(a)(1) (ensuring that the "plan complies with applicable provisions of this title"); 1129(a)(3) (ensuring that the "plan has been proposed in good faith and not by any means forbidden by law"); 1123(a)(5) (ensuring "adequate means for the plan's implantation"); 1123(b)(6) (prohibiting provisions "inconsistent with the applicable provisions of this title"); see also In re International Wireless Communs. Holdings, Inc., 1999 Bankr. LEXIS 1853 (Bankr. D. Del 1999)("If a plan fails to … designate a class for a particular claim or provide for its treatment under the plan, the plan cannot be confirmed.").

27. In this regard, In re Wermelskirchen, 163 B.R. 793 (Bankr. N.D. Ohio 1994), is particularly instructive. In that case, the debtors filed a plan of reorganization that failed to recognize or provide any treatment for a particular creditor's claim. Id. at 795. The court found that such failure was inexcusable, violating various provisions of the Bankruptcy Code. The plan was, therefore, unconfirmable.

28. Here, Law Debenture has asserted a valid and allowable claim. The Plan essentially denies its existence, in violation of Section 1123(a)(5). Confirmation should be denied.

11

**II.     Confirmation Should Be Denied Because Failure
        To Satisfy Law Debenture's Rightful Claim Will
        Necessarily Result In The Assertion Of The "Charging Lien"
        And, In Turn, Substantial Lost Value To Subordinated Noteholders.**

29.    To facilitate distributions to holders of Subordinated Notes, the Plan contemplates using Law Debenture as "Servicer" (essentially, a disbursing agent). Plan §§ 7.10, 9.3. This makes sense for a practical reason: since Law Debenture has served in that capacity under the Subordinated Notes Indenture, it is well positioned to efficiently make distributions to Subordinated Noteholders.

30.    But, this also makes sense for a legal reason. Like all indentures, the Subordinated Notes Indenture affords the Indenture Trustee (i.e., Law Debenture) the right to receive first and to surcharge (via the so-called "charging lien") distributions reserved for Subordinated Noteholders, and thereby make itself whole for fees earned and costs incurred, including professional costs, representing Noteholder interests in these cases. See Subordinated Notes Indenture ¶ 6.03. This right of first receipt and surcharge is a contractual arrangement between Law Debenture and the Subordinated Noteholders that may not be disturbed by the Plan. See 11 U.S.C. § 524(e); Mellon Bank v. Siegel, 96 B.R. 505, 506 (E.D. Pa. 1989)("While the Code expressly alters the contractual obligations of the bankrupt, it does not contemplate the same effect on the obligations and liabilities of third-parties to a creditor.").

31.    To the extent Law Debenture's fees and expenses are not paid by the Debtors, Law Debenture will be required to exercise its "charging lien" against Subordinated Noteholder distributions, meaning that Law Debenture will be compelled to hold (for perhaps an extended period of time) and ultimately liquidate (in perhaps an unfriendly market) their distributions of reorganized Delphi stock under the Plan to satisfy outstanding invoices.

32. This may have disastrous consequences, not only for the Subordinated Noteholders (as the "deemed" value of their distributions is dissipated through unfriendly sales), but for all parties receiving securities issued by the Debtors (as such sales may have a negative impact on pricing) and on the Debtors themselves. Such an unfortunate result is certainly not in keeping with Section 1123(a)(5)'s mandate that a plan provide adequate means for implementation. Accordingly, confirmation should be denied.

## CONCLUSION

**WHEREFORE,** Law Debenture respectfully requests that this Court: (a) deny confirmation of the Plan unless it is modified to provide for payment of Law Debenture's post-petition fees and expenses, with post-petition interest (like all other general unsecured, unsubordinated creditors); and (b) grant Law Debenture such other and further relief as is just and proper.

Dated: January 11, 2008
　　　New York, New York

BROWN RUDNICK BERLACK ISRAELS LLP

By: /s/ Robert J. Stark
　　Robert J. Stark (RS-3575)
　　Daniel J. Saval (DS-2437)

Seven Times Square
New York, New York
(212) 209-4800

*Counsel to Law Debenture Trust Company of New York, as successor Indenture Trustee for the 8.25% Junior Subordinated Notes due 2033 and the Adjustable Rate Junior Subordinated Notes due 2033*