Hearing Date And Time: January 17, 2008 At 10:00 a.m.
Objection Dealine: January 11, 2008 At 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

    DELPHI CORPORATION, et. al        Chapter 11
                                                   Case no. 05-44481(RDD)
                               Debtors        (Jointly Administered)
_____/

**OBJECTIONS OF CERTAIN RETIREE CLAIMANTS TO FIRST AMENDED JOINT
PLAN OF REORGANIZATION OF DELPHI CORPORATION AND
CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION[1]**

The Retiree Claimants[2], in support of their objections to the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan")[3], state as follows:

**BACKGROUND**

On October 8 and 14, 2005 (the "Petition Date"), Delphi and certain of its subsidiaries and affiliates, debtors and debtors-in-possession (collectively, the "Debtors") filed voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code

---

[1] **Counsel for Debtors (defined below) and counsel for the Retiree Claimants filing this objection have been, and continue to be, involved in ongoing discussions to agree upon and resolve these objections. Based on the status of the discussions, it appears highly likely that a resolution will be reached shortly; in which case these objections will be withdrawn.**

[2] The "Retiree Claimants" are the persons listed on Exhibit A attached hereto, each of whom has filed a proof of claim in this bankruptcy proceeding. Each Retiree Claimant is either a retired executive of Delphi Corporation ("Delphi") or the spouse of a retired executive of Delphi.

[3] Any capitalized term not defined herein shall have the meaning ascribed to it in the Plan.

(the "Code").

In July, 2006, each of the Claimants filed a proof of claim (individually a "Claim" and collectively the "Claims") in this case.  The Claim of each Retiree Claimant that is a retired executive of Delphi includes (but may not be limited to) the following claims: (A) in a stated amount, for amounts owing: (i) for benefits under the Delphi Supplemental Executive Retirement Program ("SERP"); (ii) with respect to the Delphi Supplemental Life Benefits Program; and (iii) with respect to the Delphi Executive Personal Umbrella Liability Insurance Program; and (B) in an unknown amount, for amounts owing: (i) under the Delphi Retirement Program for Salaried Employees (the "SRP"), (ii) for basic continuing life insurance coverage ("Basic Life") provided by Delphi, and (iii) for health care benefits ("Health Benefits"). The Claim of each Retiree Claimant that is the spouse of a retired executive of Delphi includes a claim in a stated amount for survivor benefits under SERP and a claim in an unknown amount for survivor benefits under the SRP.  Under the Plan, each of the Claims is classified as a General Unsecured Claim (as defined in Section 1.87 of the Plan) and is currently characterized as a "Disputed Claim."[4]

On December 10, 2007, (i) Debtors filed the Plan and the First Amended Disclosure Statement with respect to the Plan (the

---

[4] A "Disputed Claim" is defined in Section 1.66 of the Plan as "a Claim or any portion thereof...that is neither an Allowed Claim or a Disallowed Claim..." "Allowed Claim" is defined in Section 1.7 of the Plan and "Disallowed Claim" is defined in Section 1.58 of the Plan.

"Disclosure Statement"), and (ii) the Court entered an order approving the adequacy of the Disclosure Statement.

Pursuant to Section 5.3 of the Plan, each Allowed General Unsecured Claim (as defined in Section 1.8 of the Plan) shall receive in full satisfaction of, and in exchange for, such claim New Common Stock in Reorganized Delphi (i.e., Delphi from and after the effective date of the Plan) and Discount Rights (i.e., rights to acquire additional shares of common stock in Reorganized Delphi at a discount, as defined in Section 1.63 of the Plan) equal to 100% of the Face Amount of such claim, as follows: (i) 77.3% of the Face Amount of such claim shall be paid in the form of New Common Stock (at Plan Equity Value - $59.61 per share) and (ii) the remaining 22.7% of the Face Amount of such claim will come in the form of a right (the Discount Right) to acquire additional shares of New Common Stock at a price of $38.39 per share.

A holder of a General Unsecured Claim will not receive any New Common Stock until the first Periodic Distribution Date occurring after the later of (i) the date when such claim becomes an Allowed General Unsecured Claim, or (ii) the date such claim becomes payable pursuant to any agreement between the Debtors and the holder of such claim.  A holder of a General Unsecured Claim will, however, be eligible to receive Discount Rights (and participate in the Discount Rights Offering) even if such holder's claim is not yet Allowed or otherwise reconciled by the Debtors by the date of the commencement of the confirmation hearing on the Plan.  Pursuant to Section 7.15 of the Plan, such claim shall be temporarily

allowed for purposes of participating in the Discount Rights Offering.  In this regard, on December 28, 2007, Debtors filed Motion For Order Pursuant To 11 U.S.C. §§ 105(a) And 502(c) Estimating Or Provisionally Allowing Certain Unreconciled Claims Solely For Purposes Of Administration Of Discount Rights Offering (the "Estimation Motion").

Pursuant to the Estimation Motion, the Debtors have sought the provisional allowance or estimation of claims that have not been allowed, disallowed, or reconciled (the "Unreconciled Claims") prior to the commencement of the Discount Rights Offering, solely for purposes of distributing the Discount Rights.  Attached to the Estimation Motion as Exhibit 1 is a list of the Debtors' estimation of the Unreconciled Claims for purposes of distributing the Discount Rights.  Exhibit 1 to the Estimation Motion contains an estimate for the claims of each of the Retiree Claimants.

### OBJECTIONS TO PLAN

### I. It is Unreasonable and Inequitable to Require Retiree Claimants to File an Additional Proof of Claim

Section 7.9 of the Plan requires that "All persons holding or wishing to assert Claims on the basis of future pension or other post-employment benefits arising out of the SERP, and whose SERP Claims vest or vested prior to the Effective Date, must file with the Bankruptcy Court and serve upon the Debtors a separate, completed, and executed proof of claim (substantially conforming to Form. No. 10 of the Official Bankruptcy Forms) no later than 30 days after the Effective Date."

Each Retiree Claimant has already filed a proof of claim that includes a claim for benefits arising out of SERP. It is unreasonable to require that they now file a second proof of claim related to SERP. There is simply no reason to require the Retiree Claimants to file a separate claim for SERP when the proofs of claim already filed included (and specifically identified) a claim for SERP. Moreover, in addition to the additional expense and effort associated with filing an additional (and duplicative) proof of claim, this requirement will cause further delay in the resolution or reconciliation of the Retiree Claimants' claims against the Debtors. In other words, this requirement will guarantee that (i) the Retiree Claimants' claims will not be resolved or reconciled as of the initial Distribution Date, and (ii) as a result, the Retiree Claimants will not receive any shares of New Common Stock until sometime after the initial Distribution Date. As is discussed in detail below, if the Retiree Claimants do not receive shares of New Common Stock as payment on their Claims on the initial Distribution Date, or at the same time as the other General Unsecured Claimants, then the Plan does not provide the same treatment for each claim or interest of a particular class, in violation of Code §§ 1123(a)(4) and 1129(a)(1).[5] Moreover, the mere fact that the Retiree Claimants will be required to file an

---

[5] Code § 1129(a)(1) provides as follows: "(a) The court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title."  Code § 1123(a)(4) provides in relevant part as follows: "(a) Notwithstanding any otherwise applicable non-bankruptcy law, a plan shall...(4)provide the same treatment for each claim or interest of a particular class..."

-5-

additional (and duplicative) proof of claim results in the Retiree Claimants being treated different than the other General Unsecured Creditors.[6]

## II. **Elimination of Health Benefits and Basic Life Violates Code § 1129(a)(13)**

Subject to certain terms and conditions, as of the Petition Date, Delphi provided the Retiree Claimants with Health Benefits (and continues to provide Health Benefits as of the date hereof). In addition, each Retiree Claimant that was a retired executive of Delphi was (on the Petition Date) and is covered by Basic Life. The Plan appears to eliminate both of these "retiree benefits" in violation of Code § 1129(a)(13).[7]

Code § 1129(a)(13) provides that the court shall confirm a plan only if the "plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is

---

[6] It should be noted that counsel for the Debtors has indicated to counsel for the Retiree Claimants that, notwithstanding the clear reading of Section 7.9 of the Plan, the quoted language was not intended to require that an additional proof of claim be filed by a claimant that has already filed a timely claim for SERP benefits (but only to give more time to any SERP claimants who have not so filed a timely claim). Counsel for the parties have discussed amended Plan language to resolve this issue.

[7] Although Section 7.22(e) of the Plan specifically provides that Debtors shall assume and continue the SRP, there is not similar language anywhere in the Plan with respect to Health Benefits or Basic Life. In fact, Section 7.23 specifically provides that as of the Effective Date "Delphi shall cease to provide, offer, or have any liability for OPEB [other post-employment benefits obligations] to its Union represented hourly employees and retirees and their spouses, surviving spouses, dependents, or other beneficiaries." While it is not clear whether this language in Section 7.23 applies to Union represented retirees only or applies to all retirees, there is nothing in the Plan making it clear that Health Benefits and Basic Life will continue.

defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits."[8]  Code § 1114 defines "retiree benefits" as "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title."

Thus, Code § 1114 requires that a company in chapter 11 continue paying retiree benefits throughout the bankruptcy process unless the Court grants it the right to modify the benefits or unless agreed upon by the debtor and the retirees' representatives.

---

[8] Code § 1114(e)(1)(B) provides in relevant part that "the debtor in possession, or the trustee if one has been appointed . . . shall timely pay and shall not modify any retiree benefits, except that . . .(B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments..."  Code § 1114(g) provides in relevant part that "the court shall enter an order providing for modification in the payment of retiree benefits if the court finds that - (1) the trustee has, prior to the hearing, made a proposal to the retiree committee that fulfills the requirements of subsection (f); (2) the authorized representative of the retirees has refused to accept such proposal without good cause; and (3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities..."

To the best of the Retiree Claimants' knowledge, during the pendency of Debtors' bankruptcy, Debtors have not eliminated or otherwise altered its obligation to provide retirees with Health Benefits and Basic Life, in accordance with Code § 1114. Accordingly, eliminating through the Plan Health Benefits and Basic Life provided to retirees is a violation of Code § 1129(a)(13).[9]

### III. Distribution Scheme of Plan Violates Code § 1129(a)(1)

As indicated above, Code § 1129(a)(1) provides that "The court shall confirm a plan only if all of the following requirements are met: (1) The plan complies with the applicable provisions of this title." The proposed distributions under the Plan violate Code § 1123(a)(4) in a number of instances and, therefore, the Plan does not comply with Code § 1129(a)(1).

#### A.   New Common Stock

The Plan provides for General Unsecured Creditors to receive in full satisfaction of, and in exchange for, their claims, Discount Rights and New Common Stock in Reorganized Delphi.  To ensure that holders of General Unsecured Claims whose claims are not yet allowed or reconciled are eligible to participate in the Discount Rights Offering, Debtors have filed the Estimation Motion to estimate or provisionally allow such claims solely for purposes of distributing the Discount Rights.  Debtors have not, however,

---

[9] It should be noted that Debtors' counsel, during discussions with counsel for the Retiree Claimants, has indicated that upon information and belief Basic Life and Health Benefits are continuing, notwithstanding the failure of the Plan to specifically so provide.  Counsel for the parties have discussed additional Plan language to resolve this issue.

-8-

filed a similar motion to estimate claims for purposes of allowing the holders of General Unsecured Claims that are not yet allowed or reconciled to receive a distribution of New Common Stock on the initial Distribution Date.[10]  As a result, a holder of an unallowed or unreconciled General Unsecured Claim will not receive any New Common Stock until such time as the claim is allowed.  Thus, while creditors holding Allowed General Unsecured Claims on the Effective Date will receive New Common Stock on the initial Distribution Date and will have the opportunity (in such claimant's discretion) to hold or sell such stock at any time following the Distribution Date, a claimant holding an unallowed or unreconciled General Unsecured Claim on the Effective Date will not have the same opportunity and, in essence, is being required to hold the New Common Stock until such time as the claimant's claim is allowed (that is, if the stock price declines between the initial Distribution Date and the time such claimant ultimately receives his shares of the New Common Stock, the claimant will not have had an opportunity to dispose of the stock before the decline in price).[11]

---

[10] The Debtors' rationale for estimating claims for the Discount Rights Offering but not for purposes of the distribution of New Common Stock seems clear, and it appears to have nothing to do with the Debtors being generous.  The Discount Rights Offering will raise additional capital for Debtors.  Holders of the Discount Rights will pay Debtors approximately $38 for each share of New Common Stock acquired through the exercise of the Discount Rights.

[11] Section 9.8(a) of the Plan provides that no payments or distributions shall be made with respect to all or any portion of a Disputed Claim until all objections to such Disputed Claim have been settled or withdrawn.  Thus, the Plan prohibits distribution of New

In addition, regardless of the fair market value of the New Common Stock at the time a creditor receives New Common Stock in payment of such creditor's claim, the stock will be valued at Plan Equity Value ($59.61).  While the fair market value of the New Common Stock on the initial Distribution Date will presumably be at or close to Plan Equity Value ($59.61), this may or may not be true on the subsequent Distribution Dates.  Thus, the Plan again provides unequal treatment to creditors in the same class (and, in fact, unequal treatment to creditors in the same class having the same exact claim amount).  For example, if two claimants each have a General Unsecured Claim in the amount of $10,000, then each claimant is to receive 130 shares of New Common Stock [($10,000 x 77.3%)/$59.61], regardless of when the distribution of stock is made to such claimant.  If the claim of claimant 1 is an Allowed Claim as of the Effective Date, then claimant 1 will receive his New Common Stock on the initial Distribution Date (when the fair market value of the stock is presumably at or close to $59.61) and his 130 shares of New Common Stock will have a fair market value of approximately $7,730.  If the claim of claimant 2, however, is not an Allowed Claim as of the Effective Date and claimant 2 has to wait a year to receive his New Common Stock (during which year the

---

Common Stock on the undisputed portion of a claim if any part of the claim is disputed (no matter how small such disputed amount is relative to the entire claim).  To alleviate, at least partially, the inequitable treatment of claimants with unallowed or unreconciled claims on the Effective Date, the Plan could be revised to require distribution of New Common Stock on the undisputed portion of such claims (such undisputed amount could be based on the estimates set forth in the Estimation Motion).

fair market value of the New Common Stock declines), then claimant 2 will receive 130 shares of New Common Stock with a fair market value of less than $7,730. Accordingly, although each claimant has a $10,000 General Unsecured Claim, they will receive different amounts in payment of such claims, in clear violation of Code § 1123(a)(4).

### B.   Estimation of Claims

The proposed estimation of claims for purposes of the Discount Rights Offering creates unfair treatment of creditors within the same class by reducing claims without due process and not providing certain creditors with the same distribution as all others.[12] Thus, these provisions violate Code § 1123(a)(4).

### C.   No Recourse

Section 9.8(c) of the Plan creates unequal treatment of creditors within the same class by relegating creditors with disputed claims to a non-recourse position. Again, this violates Code § 1123(a)(4).

### WAIVER OF MEMORANDUM

Retiree Claimants respectfully request that the Court waive the requirement contained in Rule 9013(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted, because the issues raised herein are clear. To the extent the Court determines that a memorandum of

---

[12] For example, a creditor whose claim is estimated at $0 but is ultimately determined at a later date to have an Allowed Claim will not receive any Discount Rights under the Discount Rights Offering, while other creditors in the same class will have received Discount Rights.

law is required, the Retiree Claimants request that it be allowed to submit one at a date to be determined by the Court.

**WHEREFORE**, the Retiree Claimants respectfully request the Court deny confirmation of the Plan unless it is modified and/or amended to address the issues raised herein, and to grant such other and further relief which the Court deems appropriate in the circumstances.

    Respectfully submitted,

    **HERRICK, FEINSTEIN LLP**

    By:    /s/ Paul Rubin
        Paul A. Rubin (PR 2097)
        2 Park Avenue
        New York, NY 10016
        (212) 592-1400
        (212) 592-1500 (fax)

    and

    **JACOB & WEINGARTEN, P.C.**
    Howard S. Sher (P38337)
    Alan J. Schwartz (P38144)
    2301 West Big Beaver Road
    Suite 777
    Troy, Michigan 48084
    (248) 649-1900

    Counsel for Retiree Claimants

Dated: January 11, 2008

## **EXHIBIT A**

## **RETIREE CLAIMANTS**

George Albrecht
Dorothy Albrecht
Ray Campbell
Carolyn Campbell
James Crouse
Linda Crouse
Charles Cunningham
Marybeth Cunningham
Timothy M. Dils
Paula Dils
William Ebbert
Mary Ebbert
Karen Gaffe
Richard Grosse
Carolyn Grosse
David R. Heilman
Mary Ann Heilman
Larry Kessler
Marlene Kessler
George Kralovich
Janice Kralovich
Edward Lundberg
Denys Lundberg
Gerald T. Meier
Barbara Meier
Donald L. Runkle
Virginia Runkle
C. Richard Satterthwaite
Karen Satterthwaite
George Sloan
Kristin Sloan
Paul Tosch
Gay Tosch
Robert and Barbara Zeilinger
Barbara Zeilinger