KLESTADT & WINTERS, LLP
292 Madison Avenue, 17th Floor
New York, NY 10017-6314
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
John E. Jureller, Jr. (JJ-4697)

and

WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
(312) 201-2000
Facsimile: (312) 201-2555
Jonathan W. Young
Jeffrey L. Gansberg

Attorneys for Equity Corporate Housing

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
: 
In re                                                                           :    Chapter 11
                                                                                    :
DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                                                    :
                            Debtors.                                     :    (Jointly Administered)
-----------------------------------------------------------------x

LIMITED OBJECTION OF EQUITY CORPORATE HOUSING TO FIRST AMENDED
JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN
AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

Equity Corporate Housing ("Equity"), by its undersigned attorneys, hereby makes and files this, its Limited Objection (the "Limited Objection") To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan"), and states:

**BACKGROUND**

1. Prior to the petition date of these jointly administered cases, Equity provided corporate housing services to the Debtors. These services included housing certain of the Debtors' employees on a temporary basis.

2. On October 8, 2005, Delphi and various of its corporate affiliates (collectively, the "Debtors"), filed their voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.

3. On or about April 3, 2006, Equity timely filed its proof of claim in the Debtors' bankruptcy cases seeking to recover amounts due and owing on account of services that Equity rendered for the benefit of the Debtors (the "Claim").[1]

4. On or about June 15, 2007, the Debtors filed their Debtors' Seventeenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. §502(b) and Fed. R. Bank. P. 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books and Records, (C) Insurance Claims Not Reflected On Debtors' Books and Records, (D) Untimely Claims and Untimely Tax Claims, and (E) Claims Subject to Modification, Tax Claims Subject to Modification, and Modified Claims Asserting Reclamation (the "Claim Objection"). The Claim Objection sought to reduce the Claim from the amount as filed to an amount allegedly contained in the Debtors' books and records.

---

[1] Equity believes that its contract may have been improperly assumed and assigned by the Debtors without proper notice to Equity or may be subject to assumption pursuant to the Debtors' proposed plan of reorganization. If such an assumption has occurred or does occur, Equity would be entitled to a cure claim in an amount equal to the amount of its Claim (as hereinafter defined) plus any post-petition amounts due and owing. As Equity and the Debtors are investigating the purported assumption, by filing this Objection, Equity does not waive, and specifically preserves, any of its rights in regard to a cure claim or its Claim. Further, Equity has not received a cure notice and specifically preserves all of its rights to object to any proposed cure asserted by the Debtors.

5.  Equity filed a response to the Claim Objection and the parties have been working to reconcile the Claim since that time.

6.  On or about December 10, 2007, the Debtors filed their Plan. The Plan contains a provision related to the "estimation" of the Claim. *See* Plan at §§7.15, 9.8.

7.  On or about December 28, 2007, the Debtors filed its Debtors' Motion For Order Pursuant To 11 U.S.C. §§ 105(a) and 502 (c) Estimating or Provisionally Allowing Certain Unreconciled Claims Solely for Purposes of Administration of Discount Rights Offering (the "Motion"). It was through the Motion that the Debtors sought to implement sections 7.15 and 9.8 of the Plan.

## ARGUMENT

8.  The Plan cannot be confirmed because it relies upon relief requested in the Motion – relief which cannot be granted because it may cause the Debtors to violate section 502(c), the absolute priority rule, and section 1123(a)(4) and thereby not comply with section 1129.

### *The Motion is Inconsistent With Section 502(c) of the Bankruptcy Code*

9.  The relief sought in the Motion is inconsistent with the express terms of the Bankruptcy Code. Section 502(c) of the Bankruptcy Code provides for estimation of claims in a bankruptcy case.

10. Section 502(c) provides:

There shall be estimated for purpose of allowance under this section –
   (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
   (2) any right to payment arising from a right to an equitable remedy for breach of performance.

11. Although a claim may be disputed by the debtor, it is not necessarily contingent or unliquidated and is not subject to estimation. The act of a debtor objecting to a claim does not render it unliquidated.

12. The Claim is not one which is contingent or unliquidated. To the contrary, the Debtors' liability on the Claim is certain and needs only to be calculated. A claim as to which the parties disagree is not unliquidated, only disputed.

13. Because the Claim is not unliquidated or contingent, it cannot be estimated by the Debtors pursuant to the Motion. Because the Claim cannot be "estimated" the Plan cannot be confirmed because it relies upon such attempted "estimation."

14. Additionally, the Plan provision alters the procedures set forth in the Bankruptcy Code pursuant to which a claim and an objection to a claim are to be undertaken. *See* 11 U.S.C. §§ 501, 502; Fed. R. Bankr. P. 3001, 3007.

15. In contravention of the Bankruptcy Code, the Debtors are seeking to reduce the Claim without a proper hearing and without presenting any evidence that the Claim should be reduced. Further, the purported "estimation" is more akin to a permanent reduction of the Claim because no provision is made to allow Equity to recover its full distribution if the Claim is ultimately allowed in an amount which exceeds the Debtors' "estimation."

***The Debtors Reserve For Themselves Relief if the Claim is Ultimately Allowed in an Amount Less Than Their "Estimation" But Fail to Preserve Relief for Equity if the Claim is Allowed In An Amount in Excess of The Estimation***

16. The Debtors have fixed a ceiling, but no floor, on the amount of Discount Rights available to Equity on account of the Claim.

17. In paragraph 17 of the Motion, the Debtors' specify the procedures that will be undertaken in the unlikely event that their "estimation" is too high in regard to any claim. *See*

Motion at ¶ 17.  The Motion, however, does not speak to their "estimation" being lower than the ultimate allowed amount of any claim.  If, as Equity believes, the "estimation" is too low, it will lose a portion of its distribution in the case.[2]  This clearly implicates the absolute priority rule because junior creditors will receive distributions on account of their claims prior to Equity receiving its full claim.  Additionally, this procedure treats different creditors in the same class differently, because all creditors may not receive their *pro rata* share of any distributions in the case.  *See* 11 U.S.C. § 1129(a)(4).

18. Further, the procedures devised by the Debtors if their "estimation" is too high are grossly unfair – the **Debtors** will have, in their **sole discretion**, the ability to reduce the amount of Discount Rights available to Equity (which is fair) or require Equity to buyback the overage.  *See generally*, Motion at ¶ 17.  It seems that the Debtors reserve their rights to require a claimant to make a forced investment in a company in which they may have no interest in investing.  Such certainly cannot be approved.

### *The Plan Impermissibly Purports to Bar Distributions if Any Portion of a Claim is Disputed*

19. The Plan provides, in pertinent part, that, "[n]o payments or distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been settled or withdrawn or have been determined by a Final Order of the Bankruptcy Court, and the Disputed Claim or Disputed Interest has become an Allowed Claim or Allowed Interest."  *See* Plan at § 9.8(a).

20. The foregoing provision effectively permits the Debtors to hold an entire claim hostage in connection with a dispute over a mere portion of such claim.  By way of example, this provision would bar distributions on a $4,000,000.00 claim, merely based upon a $20,000.00 discrepancy between the Debtors' numbers and the claimant's numbers.

---

[2] This necessarily implicates the absolute priority rule and §1123(a)(4).

21. This wholesale and indiscriminate disallowance mechanism cannot be reconciled with the plain language of § 502(b) of the Bankruptcy Code, which provides that a claim shall be allowed, "except **to the extent that** . . . such claim is unenforceable against the debtor and property of the debtor." *See* 11 U.S.C. § 502(b)(1)(emphasis added); *Mims v. Fidelity Funding, Inc.,* 275 B.R. 789, 823-24 (Bankr. N.D.Tex. 2002) (disallowing the portion of a claim attributable to unmatured interest disguised as fees); *United Companies Financial Corporation v. Brantley*, 6 B.R. 178, 184 (Bankr N.D.Fla. 1980) (if the debt is "unenforceable against the debtor, either in whole or in part, then, to such extent, the claim is not allowable under [section] 502(b)(1)"); *In re Ralph Morris, Jr.*, 8 B.R. 924, 925 (Bankr. N.D.Ohio 1981) (disallowing the portion of a claim attributable to unmatured interest). The foregoing language strongly suggests that a claim should be disallowed (or barred from distribution), only **to the extent that** such claim is subject to a validly pled objection. The Debtors' mechanism appears to lack foundation in the Bankruptcy Code or Rules, and therefore renders the Plan unconfirmable pursuant to 11 U.S.C. § 1129(a)(1).

### *The Plan Should Not Extinguish Rights of Setoff and Recoupment*

22. As the estate's rights of setoff have been reserved, the plan should so preserve Equity's rights to setoff and recoupment as well. *See generally* Plan § 11.9. Because Equity's claim is still being resolving, issues related to setoff and recoupment may arise. Additionally, subject to certain exceptions not relevant here, the Bankruptcy Code expressly preserves Equity's rights of setoff. *See* 11 U.S.C. § 553(a) ("[T]his title does not affect the right of any creditor to offset a mutual debt[.]"); *Carolco Television, Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group, Inc.)*, 963 F.2d 1269, 1274-78 (9th Cir. 1992) (holding that

setoff rights survive the confirmation of a chapter 11 plan and operation of 11 U.S.C. § 1141).

The Plan should be clarified to expressly preserve Equity's rights of setoff and recoupment.

*The Assumption and Cure of the Equity Executory Contract*

23. The Plan provides a mechanism for the assumption and cure of executory contracts. *See* Plan at Article VIII. Equity is a counterparty to an executory contract with the Debtors.

24. The Plan provides that all executory contracts, with certain limited exclusions, are to be assumed by the Reorganized Debtors. *See* Plan at §8.1.

25. The Plan further provides a procedural mechanism for determining a cure amount for any assumed contract. *See* Plan at §8.2.

26. However, the cure amounts will necessarily be affected by the Motion. As previously stated, the Motion "estimates" the pre-petition portion of the cure claim at an amount lower than that actually owed by the Debtors. By "estimating" the pre-petition amounts due and owing at a number lower than the amount of the Claim, the Debtors have artificially set a ceiling on the amount of the cure claim.

27. Additionally, the cure procedures allow the Debtors to extend their determination of whether to assume or reject an executory contract to a time significantly after the effective date of the Plan. *See* Plan at §8.2. If, after a judicial determination of the cure claim, the Debtors believe the cure claim is too high, the reserve the right to reject the executory contract. Such a procedure flies in the face of the Bankruptcy Code and established case law. *See* 11 U.S.C. § 365; *In re Bradlees Stores, Inc,* No. M 47 (LAP) (S.D.N.Y. December 23, 1998) (determining that section 365 prohibits post-confirmation assumption of non-residential real property) (unpublished opinion attached hereto as Exhibit A).

28.     Additionally, as set forth above, the Plan will prohibit payment of Equity's cure claim until the claim is resolved in its entirety.  Such is inappropriate, and as stated above, Equity should be paid the undisputed portion of any cure claim immediately.  *See also* 11 U.S.C. § 365.

WHEREFORE, Equity respectfully requests that the Court (i) (a) condition confirmation of the Plan upon modifications which conform to the changes suggested herein (b) deny confirmation of the Plan and (ii) grant such other and further relief as the Court deems just and proper.

Dated: January 11, 2008                    Respectfully submitted,

EQUITY CORPORATE HOUSING


By: */s/ John E. Jureller, Jr.*
    John E. Jureller, Jr. (JJ-4697)


Klestadt & Winters, LLP
292 Madison Avenue, 17th Floor
New York, NY 10017-6314
(212) 972-3000

and

WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL  60606-1229
(312) 201-2000
Facsimile:  (312) 201-2555
Jonathan W. Young
Jeffrey L. Gansberg