```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    In re:

 4    BRADLEES STORES, INC., et al.,

 5                Debtors.

 6    ------------------------------x
      GREENWICH HOLDING CORPORATION,
 7
                  Appellant,
 8
            against                              M 47 (LAP)
 9
      BRADLEES STORES, INC., et al.,
10
                  Appellees.
11    ------------------------------x

12                                               December 23, 1998
                                                 12:00 noon
13

14    Before:

15                HON. LORETTA A. PRESKA

16                                               District Judge

17

18
                          APPEARANCES
19

20

21    SULLIVAN & CROMWELL
      Attorneys for Greenwich Holding Corporation
22         ROBINSON B. LACY
           JACQUELINE E. BRYKS
23         Of counsel

24

25
```

```
                       APPEARACES (Continued)
 1

 2
      DEWEY BALLANTINE LLP
 3    Attorneys for Bradlees Stores, Inc.
           DANIEL J. LOSKOVE
 4         STUART HIRSHFIELD
           Of counsel
 5


 6    MILBANK, TWEED, HADLEY & McCLOY
      Attorneys for Unoffical Committee of Trade Claim Holders
 7         MICHAEL J. EDELMAN
           Of counsel
 8

 9    SKADDEN, ARPS, SLATE, MEAGHER & FLOM
      Attorneys for Bankers Trust Co., as Agent
10         J. ERIC IVESTER
           Of counsel
11

12    OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
      Attorneys for Creditors' Committee
13         GLENN B. RICE
           Of counsel
14

15    KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
      Attorneys for Gabriel Capital, L.P.
16         DAVID M. FRIEDMAN
           Of counsel
17

18

19

20

21

22

23

24

25
```

(In open court)

THE COURT: On December 16 I authorized approximately a one-week stay pending Greenwich Holding Corporation's ("Greenwich") appeal of the Bankruptcy Court's order confirming the first amended and modified plan of the reorganization (the "Plan") for Bradlees Stores, Inc. and Affiliates (collectively, "Bradlees" or the "Debtor"). Greenwich requested an expedited appeal and today oral arguments were made on behalf of both parties and additional parties.

Boiling this matter down to its most basic terms, the issue on appeal is whether Section 9.02 of the plan violates Chapter 11 of the Bankruptcy Code. Section 9.02 grants Bradlees the right to assign, assume or reject the unexpired lease in the Union Square property for up to one year after the Plan's Effective Date, both of which terms are defined in the Plan.

Appellant Greenwich supports its appeal on several grounds. First, it argues that after the Effective Date of the Plan, Bradlees is merely a debtor, and therefore it cannot exercise the powers granted to debtors in possession and trustees under sections 365(d)(4) and 1107 of Title 11 of the Bankruptcy Code.

Second, Greenwich contends that nonresidential leases must be assigned, assumed or rejected by the

1  confirmation date or the Effective Date of the Plan, and
2  that Section 9.02 of the Plan allowing Bradlees to exercise
3  those rights for a year after the Effective Date violates 11
4  U.S.C. Section 365(d).
5           Naturally, Bradlees argues that the Bankruptcy
6  Court's confirmation order should be affirmed.  First,
7  Bradlees argues that assignment, assumption or rejection of
8  the lease is governed by Section 1123(b)(2) which, it
9  argues, is not fully subject to Section 365 and that
10 section's limitation.  Second, Bradlees contends that the
11 phrase "debtor in possession" in Section 365 includes the
12 debtor, and thus *the debtor* can exercise Section 365 powers.
13 Bradlees also argues that the Bankruptcy Court properly
14 concluded that precedent and "cause" existed for extending
15 the assumption/rejection powers beyond the confirmation
16 date.
17          On June 23, 1995, Bradlees, a regional discount
18 department store chain, filed voluntary petition for Chapter
19 11 relief under the Bankruptcy Code.  On April 13, 1998, the
20 Debtor filed a proposed plan of reorganization and a related
21 disclosure statement.  An amended plan was filed on
22 October 2, 1998, and Greenwich presented its objections at a
23 confirmation hearing held on November 18, 1998.
24          On that date the Bankruptcy Court issued its
25 confirmation order, stating that the statutory scheme of the

1   Bankruptcy Code permits the debtors to act
2   "post-confirmation in the fashion that is set forth in
3   9.02." The Bankruptcy Court also observed that the
4   reorganization scheme and the value of the Union Square
5   property are closely linked and "the ability to extract the
6   value of the property depends on the maintenance of 9.02 of
7   the Plan."
8            With respect to Section 365, that section of the
9   Plan that the Bankruptcy Court referred to above, Section
10  9.02, is the single target of Greenwich's appeal. That
11  section states:
12           "Reorganized [Bradlees] shall have until the date
13  that is one year after the occurrence of the Effective Date
14  (as defined in the Plan) or such later period as the
15  Bankruptcy Court may grant, to exercise its rights under
16  sections 363 and 365 of the Bankruptcy Code with respect to
17  [Bradlees'] unexpired real property lease pursuant to which
18  [Bradlees] leases the Union Square Property, including,
19  without limitation, the right to assume, assume and assign,
20  or reject the lease under which [Bradlees] leases the Union
21  Square property. The Bankruptcy Court shall retain
22  jurisdiction with respect to such rights and any issues
23  related thereto."
24           Plan, Section 9.02. Section 1.65 of the Plan
25  sets forth how the Effective Date is determined, and barring

1    extension by Bradlees, it will apparently be February 1,
2    1999. Accordingly, Bradlees will have until February 1,
3    2000, to exercise the powers of assumption, assignment or
4    rejection. The Plan provides that the Union Square lease
5    and an unrelated lease (the "Yonkers lease") are to secure
6    $40 million of notes to be issued by the reorganized
7    Bradlees to certain creditors. Under the terms of those
8    notes, reorganized Bradlees will prepay the notes with
9    proceeds from the sale of the Yonkers lease and Union Square
10   lease.
11           Greenwich, the landlord of the Union Square
12   property, currently used as a Bradlees' department store,
13   contends that Section 9.02 conflicts with Section 365 of the
14   Bankruptcy Code. That section grants the power to assign,
15   assume or reject an unexpired lease of nonresidential real
16   property to trustees. Under 11 U.S.C. Section 1107(a),
17   those powers are also granted to debtors in possession.
18   Greenwich argues that only those two entities can exercise
19   the power of assumption, rejection, etc., of an unexpired
20   lease of nonresidential real property, and that Bradlees
21   will not be a trustee or debtor in possession after the
22   Effective Date.
23           Greenwich argues that Section 365 controls this
24   issue and that Section 1123(b)(2) is subject to all of the
25   provisions of Section 365. Generally, Section 1123 governs

1    the contents of a reorganization plan. Subsection

2    1123(b)(2) states that "a plan may, *subject to Section 365*

3    *of this title*, provide for the assumption, rejection, or

4    assignment of any executory contract or unexpired lease of

5    the debtor not previously rejected under such section."

6    (emphasis added). Bradlees argues that despite the direct

7    language, Section 365 does not fully govern Section

8    1123(b)(2).

9          I decline to embrace this interpretation. More

10   specifically, I decline to adopt Bradlees' construction that

11   the words "subject to" do not mean "subject to all," (See

12   Bradlees' Memorandum at 10), or the theory that because

13   Congress is aware of the phrase "subject to all" and the

14   absence of such language in Section 1123(b)(2) indicates

15   that Congress did not intend to import Section 365 fully

16   into 1123(b)(2), (See Bradlees' Memorandum at 12-13.)

17   Rather, I find that the plain language of Section 1123(b)(2)

18   indicates that that section is in fact subject to the

19   entirety of Section 365.

20         In connection with its reliance on the *J.M.*

21   *Fields* case which I discuss below, Bradlees argues that

22   Section 1123(b)(2) moves the process further ahead in time,

23   that is, that it was intended to give the debtor more time

24   to exercise Section 365 powers. Indeed, Bradlees argues

25   that the Plan complies with Section 1123(b)(2) and

1  "provide[s] for the assumption, rejection, or assignment of

2  any . . . unexpired lease" by merely stating that it will do

3  so later within a specified time.

4  　　　　Even assuming such intent with respect to Section

5  1123(b)(2), such general intent cannot under the clear terms

6  of the statute, that is, that it is subject to Section 365,

7  trump the very specific widely recognized intent of Section

8  365(d)(4) to shorten the time within which the debtor in

9  possession or trustee must exercise its 365(d)(4) rights.

10  　　　　Bradlees also contends that preventing the

11  assumption of unexpired leases after confirmation would

12  render Section 1123(b)(2) meaningless, since in its view

13  that section would be swallowed up by Section 365.

14  　　　　I disagree. Section 1123(b)(2) is not surplusage

15  because it provides a procedural alternative to a motion to

16  assume, assign or reject an unexpired lease prior to

17  confirmation. Similarly, Bradlees' argument that

18  Greenwich's interpretation of Section 1123(b)(2), and

19  specifically the word "provides" is contrary to the plain

20  meaning of the statute and would force the debtor into an

21  immediately effective decision under its plan with respect

22  to its unexpired leases, is unpersuasive.

23  　　　　First, Greenwich does not argue that the decision

24  to reject, assign, etc., must be effective immediately --

25  only that it must be set out in the Plan so that it can be

　　　　　　　　　　　　SOUTHERN DISTRICT REPORTERS (212) 805-0300

1  consid● and voted upon. Second, ● is well recognized
2  that delaying the assumption/rejection decision until
3  confirmation can be advantageous to the debtor who seeks to
4  avoid binding itself to a contract or a lease before it has
5  devised a "feasible business plan under which it knows
6  whether it will want the benefits and burdens of each
7  agreement." 3 Lawrence P. King, ed., Collier on Bankruptcy,
8  paragraph 365.04[2][a] (15th ed. rev. 1998) (citing Nostas
9  Associates v. Costich (In Re Klein Sleep Products, Inc.)),
10 78 F.3d 18, 29 (2d Cir. 1996) (cautioning that the decision
11 to assume a long term lease should be delayed until
12 confirmation).
13         Accordingly, I find that Greenwich's
14 interpretation of Section 1123(b)(2) as requiring a decision
15 to assume, reject or assign an unexpired nonresidential
16 lease prior to the Effective Date of the Plan is not
17 inconsistent with the statute.
18         Next I analyze which parties are authorized under
19 Chapter 11 of the Bankruptcy Code to exercise Section 365
20 powers to assume, assign or reject an unexpired
21 nonresidential lease. Those powers are bestowed on only two
22 entities, the debtor in possession and the trustee. Here,
23 no trustee was ever appointed, and Bradlees has served as a
24 debtor in possession. (See Disclosure Statement, annexed as
25 Exhibit 3 to the Declaration of Robinson B. Lacy, subscribed

1    to November 30, 1998, at 3.)

2         Following the Effective Date of the Plan,
3    however, Bradlees will no longer be a debtor in possession.
4    As Professor King notes: "[u]pon the effectiveness of a
5    confirmed plan, the Chapter 11 estate is terminated and the
6    debtor is no longer a Debtor in possession." Collier
7    1101.01[2][b] at 1101-04; see In re Grinstead, 75 B.P.R. 2,
8    3 (D. Minn. 1985) ("There is no debtor in possession status
9    of a debtor post confirmation.")

10        In opposition Bradlees contends that the term
11   "debtor in possession" includes "debtor." Bradlees relies
12   on references to sections within Chapter 11, especially
13   Section 1101(1) which states that "'debtor in possession'
14   means debtor." That broad definition does not indicate when
15   the debtor ceases to hold the title of debtor in possession,
16   and it has been interpreted as intending to refer to "a
17   debtor who, during the pendency of the case prior to
18   confirmation, retains property in the fiduciary capacity of
19   a trustee of the estate." In re Grinstead, 75 B.P.R. at 3.

20        Accordingly, I reject Bradlees' interpretation of
21   "debtor" to extend to the reorganized Bradlees after the
22   Effective Date of the Plan.

23        Bradlees also argues that the reorganized debtor
24   has the ability to exercise Section 365 rights when the Plan
25   so provides. Bradlees' reliance on Hillis Motors, Inc. v.

1    *Hawaii Automobile Dealers Assn*, 997 F.2d 581 (9th Cir. 1993)

2    and *In re Parrot Packing Co.*, 42 B.P.R. 323 (N.D. Ind. 1983)

3    for this proposition is misplaced. Bradlees cites *Hillis*

4    for the proposition that a bankruptcy estate can survive

5    confirmation and that it remains a debtor in possession. In

6    *Hillis*, the court discussed whether, after confirmation, the

7    debtor's property remained property of the estate. While

8    the court recognized that confirmation "customarily revests

9    the property of the estate in the debtor, it also operates

10   as a discharge of all dischargeable claims against the

11   debtor unless the Plan otherwise provides." 997 F.2d at

12   589. Yet, the plan in *Hillis* was an anomaly; unambiguously

13   provided for the preservation of the estate post

14   confirmation and did not grant *Hillis* a discharge at that

15   time. *Id.* at 588.

16           After confirmation, the debtor was not free to go

17   about its business without supervision. Rather, the

18   trustees retained management powers and control over the

19   business, distribution of the profits remained under strict

20   control, and the Bankruptcy Court remained involved in the

21   administration of the estate.

22           The court found that "[w]hile the confirmation of

23   the Plan emancipates most debtors, *Hillis* remained a ward of

24   the court." *Id.* at 590. Accordingly, the *Hillis* court

25   found that the automatic stay continued to apply even after

1   confi[r]ation.

2       Here, the bankruptcy estate will not survive post

3   confirmation. Rather, the property of the estate will

4   revest in the reorganized Bradlees when the Plan becomes

5   effective. See Section 33, Confirmation Order. There will

6   not be a trustee to supervise Bradlees post confirmation,

7   and reorganized Bradlees will not, for example, have to seek

8   court approval for the payment of its various fees, most

9   importantly, no doubt, its fees to its attorneys. See id.

10  sections 25, 30.

11      Although Bradlees argues that, for example, the

12  retention of the Bankruptcy Court's jurisdiction over the

13  details of its future assumption, rejection or assignment of

14  the Union Square lease is sufficient to bring this case

15  within *Hillis*, I disagree. Even assuming, as Bradlees

16  suggests, that it is a matter of degree, that degree is not

17  reached here. Unlike *Hillis*, Bradlees will not be a ward of

18  the court under its reorganization plan but will control

19  property formerly part of the estate and will hopefully make

20  a robust return to the ranks of retail competition. Thus, I

21  find *Hillis* to be inapplicable to the case before me.

22      *In re Parrot Packing Co.* is also inapplicable

23  here. That case stands for the limited proposition that a

24  Creditors' Committee has standing to seek rejection of the

25  collective bargaining agreement where the debtor in

1    possession has "unjustifiably" refused to act.

2    In holding that the Creditors' Committee had
3    standing, the court in Parrot relied on Section 1109(b) of
4    the Code which provides that "a party in interest . . . may
5    raise and may appear and be heard on any issue in a case
6    under this chapter." The Court noted, however, that the
7    Creditors' Committee motion was made with the approval of
8    the debtor in possession. Because it is clear that the
9    debtor in possession could have moved for the relief sought
10   in that case, and the court did not address the post
11   confirmation time frame when there is no trustee or debtor
12   in possession, Parrot Packing does not shed any light on the
13   current problem.

14   Accordingly, I find that the power to assume,
15   assign or reject under Section 365(d)(4) may be exercised by
16   a trustee or a debtor in possession but, under the
17   circumstances presented here, not by the reorganized debtor.

18   I now consider whether Section 365(d)(4) powers
19   may be exercised beyond the confirmation date. At the
20   outset I note that there is significant legislative history
21   to support Greenwich's argument that nonresidential leases
22   must be assumed, assigned or rejected by the confirmation
23   date.

24   Before the Bankruptcy Code was amended in 1984,
25   Section 365(d)(2) provided that in Chapter 11 the trustee

1  could assume or reject an executory contract or unexpired
2  lease of the debtor at any time before confirmation of a
3  plan. See In re Grayson-Robinson Stores, Inc., 227 F.Supp
4  609 (S.D.N.Y. 1964) (pre-Code case where the court refused
5  to permit rejection of an executory contract after
6  confirmation), and the court, on request of any party to the
7  agreement, could shorten the times to assume or reject.
8         Section 365(d)(4) was added in the 1984
9  amendments to provide that in all chapters a lease of
10 nonresidential real property is deemed rejected if the
11 trustee does not assume or reject it within sixty days after
12 the order for relief, or within such additional time as the
13 court fixes, for cause, within such sixty-day period.
14        It is now widely accepted that the purpose of
15 Section 365(d)(4) was to prevent trustees from taking too
16 much time in deciding whether to assume unexpired
17 nonresidential leases. See Legacy Limited v. Channel Home
18 Centers, Inc. (In re Channel Home Centers, Inc.) 989 F.2d
19 682, 686 (3rd Cir. 1993) (collecting cases).
20        Subsection (4) does not refer to a confirmation
21 date, and Greenwich argues persuasively that it would be
22 error to construe this omission as supplying authority to
23 extend the time to assume or reject beyond the confirmation
24 date or the effective date. The Senate report for the 1984
25 amendments to the Bankruptcy Code demonstrates that Section

1  3654(d)(4) was intended to shorten the time for a debtor to
2  make its election, not extend it.
3      The Report states: "The bill reduces the
4  severity of these problems [of a trustee's taking an
5  extended time to assume or reject an unexpired lease] by
6  imposing a sixty-day limit on the trustee's decision to
7  assume or reject a nonresidential lease in cases under any
8  chapter for the code unless the court for cause extends
9  time. In all but the most complicated reorganization cases,
10 sixty days should be a sufficient time to make this
11 determination. Even in large reorganization cases, the
12 debtor presumably knows his business and understands the
13 value of his assets well enough to make such decisions. The
14 debtor should consequently be able to make this
15 determination shortly after the petition is filed and
16 certainly within sixty days in all but the most complicated
17 cases." Sen. Rep. No. 98-70, 11-13.
18      Recognizing that pre-Code case law does not
19 support the extension of assumption powers and that the 1978
20 Bankruptcy Code provisions expressly prohibited such
21 extension, I cannot lightly adopt a construction of the code
22 that represents a sharp break with its past. In Dewsnup v.
23 Timm, 502 U.S. 410 (1992), the Supreme Court admonished
24 courts construing the Bankruptcy Code that if the language
25 of the provision creates any uncertainty, the legislative

1   hisory should be given controlling weight.

2   In particular: "When Congress amends the
3   bankruptcy laws, it does not write 'on a clean slate' . . .
4   Furthermore, this Court has been reluctant to accept
5   arguments that would interpret the code, however vague the
6   particular language under consideration may be, to effect a
7   major change in pre-Code practice that is not the subject of
8   at least some discussion in the legislative history." Id.
9   at 419.

10  Bradlees cites In re Gunter Hotel Associates, 96
11  B.P.R. 696 (Bankr. W.D. Tex. 1988) as authority for
12  extension of the assumption/rejection powers. That case
13  involved a debtor in possession's motion to reject a license
14  agreement but seeking to delay the effect of such rejection
15  for some sixty days. The licensor moved to compel
16  rejection. Both motions were heard at the confirmation
17  hearing and the Court, relying on bankruptcy Rule 9006(b),
18  extended for sixty days after confirmation the debtor's
19  right to assume or reject the license.

20  I find Gunter to be rather weak authority given
21  that Section 365(b)(2), which governed that case, expressly
22  requires assumption or rejection "at any time before
23  confirmation of the plan." I also note that the authority
24  on which Gunter relies deals with preservation of the
25  jurisdiction of the Bankruptcy Court to consider the

```
 1    debt___ pre-confirmation motions ___ reject unexpired leases
 2    or executory contracts, not the reorganized company's future
 3    exercise of 365(d)(4) rights.  See In re J.M. Fields, Inc.,
 4    26 B.P.R. 852, 853 (Bankruptcy S.D.N.Y. 1983).  Thus,
 5    neither Gunter nor Fields supports Bradlees' position here.
 6              Given the absence of any clear congressional
 7    intent to extend the assumption/rejection powers regarding
 8    unexpired leases past the confirmation or effective date, I
 9    will not break with bankruptcy precedent before the 1984
10    amendments which indicates that such extension would not be
11    permitted.
12              Because I have determined that the Bankruptcy
13    Court should not have extended the assumption/rejection
14    powers for an unexpired nonresidential lease, I do not reach
15    the issue of cause.
16              In ruling today I do not ignore the many
17    complicating factors in this case.  In particular, I note
18    the three and a half years Bradlees spent in Chapter 11, the
19    significant and substantial efforts it and the other parties
20    have spent in developing a viable reorganization plan, the
21    difficulty of finding a tenant to assume the lease for the
22    Union Square property, and the importance of that property
23    for Bradlees' future welfare as an ongoing company.  Indeed,
24    we have all agreed here today that the issue is not the
25    economic viability of this scheme; rather, the legality.
```

```
 1              Accordingly, because Section 9.02 of the Plan is
 2    inconsistent with Section 365(d)(4) of the code, the
 3    confirmation order is reversed and the matter is remanded to
 4    the Bankruptcy Court.
 5              Is there anything further today, counsel?  Thank
 6    you for your most informative arguments.  I'm sorry to have
 7    brought you here so soon before the holiday.
 8              (Proceedings adjourned)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

02/14/2003 12:23 FAX 212 558 3997    S&C/11P 125 BD 34FI    ☒020