KELLEY DRYE & WARREN LLP
Craig A. Wolfe (CW-2640)
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

and

PENSION BENEFIT GUARANTY CORPORATION
Israel Goldowitz, Chief Counsel
Karen L. Morris, Deputy Chief Counsel
Joan Segal, Assistant Chief Counsel
Ralph L. Landy, Attorney
Beth Bangert, Attorney
Office of the Chief Counsel
1200 K Street, N.W.
Washington, D.C.  20005
Telephone: (202) 326-4020
Facsimile: (202) 326-4112

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **DELPHI CORPORATION,** *et al.*, | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**OBJECTION OF PENSION BENEFIT GUARANTY CORPORATION
TO FIRST AMENDED JOINT PLAN OF REORGANIZATION
OF DELPHI CORPORATION AND CERTAIN AFFILIATES,
DEBTORS AND DEBTORS-IN-POSSESSION**

The Pension Benefit Guaranty Corporation ("PBGC"), on its own behalf and on

behalf of the Delphi Hourly-Rate Employees Pension Plan ("Hourly Plan"), Delphi Retirement

Program for Salaried Employees ("Salaried Plan"), Delphi Mechatronic Systems Retirement

Plan, ASEC Manufacturing Retirement Program, Packard-Hughes Interconnect Bargaining

Retirement Plan, and the Packard Hughes Interconnect Non-Bargaining Retirement Plan (collectively referred to as "Plans" unless otherwise individually identified) objects to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession.

Specifically, PBGC objects to section 7.22(d) of the First Amended Joint Plan of Reorganization ("POR") as it is unclear and inconsistent with the Debtors' obligations under a minimum funding waiver granted by the Internal Revenue Service ("IRS"), dated September 28, 2007 (the "Waiver") regarding the Hourly Plan (attached hereto as Exhibit 1). PBGC wants to ensure that there is no ambiguity regarding Debtors' obligations to adhere to conditions set forth in the Waiver.

## BACKGROUND

1. The Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code on October 8, 2005 and on October 14, 2005. The Court has ordered the joint administration of the Debtors' chapter 11 cases.

2. PBGC administers the defined benefit pension plan termination insurance program established by Title IV of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA") 29 U.S.C. §§ 1301-1461.

3. The Debtors sponsor the Plans which are defined benefit plans covered by the termination insurance program in Title IV of ERISA.

4. Each of the Debtors may be either a contributing sponsor of one or more of the Plans or a member of the contributing sponsor's controlled group. *See* 29 U.S.C. § 1301(a)(13) and (14).

    5.  PBGC has timely filed three claims regarding each of the Plans against each of the Debtors for: (1) unpaid minimum funding contributions required under 26 U.S.C. § 412 and 29 U.S.C. §§ 1082 and 1362(c); (2) unpaid premiums owed to PBGC under 29 U.S.C. §1307; and (3) contingent termination liability to PBGC under 29 U.S.C. § 1362(a) and (b). Each of the claims filed by PBGC, on behalf of itself and on behalf of the Plans, is asserted against each of the Debtors for joint and several liability.[1]  29 U.S.C. §§ 1307, 1362.

    6.  The contributing sponsors of the Plans and each member of their controlled group(s) are jointly and severally liable to the Plans for the contributions necessary to satisfy the minimum funding standard under the Internal Revenue Code and ERISA. 26 U.S.C. § 412(c)(11), 29 U.S.C. § 1082(b).

    7.  The Debtors and members of its controlled group have been failing to make the statutorily required contributions to certain of its Plans since the inception of this bankruptcy proceeding. Accordingly, the Debtors applied to the IRS for waivers of the minimum funding standard under the provisions of 26 U.S.C. § 412(d). Such waivers may be granted in cases of temporary substantial business hardship. 26 U.S.C. § 412(d)(1), (2). Several waivers and waiver modifications were granted to Delphi during 2007. The last waiver was

---

[1] On June 27, 2006, this Court approved a stipulation between PBGC and the Debtors allowing PBGC to file consolidated claims against the Debtors. Pursuant to the stipulation, the filing of a claim by PBGC in these proceedings is deemed to constitute the filing of such claim in all of the cases jointly administered under the above case caption. Therefore, each claim PBGC filed represents a separate claim asserted against each of the Debtors.

issued on September 28, 2007, and relates to the contributions that the Debtors failed to make to the Hourly Plan. By Motion dated October 5, 2007, the Debtors sought an order from this Court authorizing Delphi to perform under the Waiver. The motion was granted on October 25, 2007.

   8.  The Waiver includes a number of conditions that ensure that the Hourly Plan will be protected. One such condition ("Condition 4") includes (*inter alia*): (1) a detailed method for calculating the contributions that Delphi is required by the Waiver to make after the Debtors emerge from Chapter 11, (2) a five-month timeline for making these contributions, and (3) the creation of an escrow account to ensure that funds will be available during the post-emergence period to make the contributions as required by the timeline. Exhibit 1, paragraph 4. PBGC objects to section 7.22(d) of the POR as it does not recognize the requirements of Condition 4 of the Waiver.

## ARGUMENT

**The POR Is Inconsistent with The Debtors' Obligations under The Minimum Funding Waiver Issued Regarding the Hourly Plan**

   9.  Section 7.22(d) of the POR states, in relevant part, the following:

> (d) Pension Contribution Payment. No earlier than January 2, 2008, and no later that five days after the Effective Date, Reorganized Delphi shall contribute cash to the Pension Plans (as defined below) [defined to include the Hourly Plan] sufficient to meet ERISA minimum contributions not covered by the IRC Section 414(l) transfer ...

   10.  Section 7.22(d) of the POR does not mention the Waiver, which is the operative document governing the minimum funding contributions that will be due to the Hourly Plan upon emergence. Section 7.22(d) suggests that the amount that will be contributed within the five-day period after the effective date of the plan of reorganization will satisfy the minimum

4

funding standard of 26 U.S.C. § 412.  In the case of the Hourly Plan, this is not accurate; under the Waiver, only an estimated portion of the necessary contributions is required to be made within five days after the effective date of the Debtors' plan of reorganization.

11.     In fact, an additional portion of the estimated unpaid contributions is required by the Waiver to be deposited into an escrow account within the five-day period.  The escrowed amount will be used to make up for any shortfall in the contributed amount.  Section 7.22(d) is silent about the escrow requirement; this may create the misconception that the initial contribution is all that will be required with respect to the Hourly Plan.

12.     Further, the Waiver provides that any shortfall that exists after the first portion of the contributions is made will be determined by Delphi within five months after the effective date of the plan of reorganization.  Thus, it is possible that the minimum funding requirements with respect to the Hourly Plan will not be met until at least five months after the effective date of the plan of reorganization.

13.     The inconsistencies and inaccuracies in the section 7.22(d) may jeopardize the carefully crafted protections for the Hourly Plan set forth in the Waiver - protections that Delphi participated in drafting and for which Delphi sought and obtained court approval.  Whether section 7.22(d) suffers from inaccuracy or an attempt to circumvent the provisions of the Waiver, it must be amended so that it is consistent with the court-approved Waiver.

14.     Language that is consistent with the Waiver requirements should be included in section 7.22(d).  Accordingly, the following language, or substantially similar language, should be included in section 7.22(d):

> Notwithstanding anything that may be contrary in this Plan [of Reorganization], Delphi will make the contributions and satisfy the conditions set forth in the

minimum funding standard waiver letters issued to Delphi by the Internal Revenue Service.

## CONCLUSION

For the reasons set forth above, PBGC respectfully requests that this Court withhold its approval of the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession until the correction described above is made.

Dated: New York, New York
       January 11, 2008

                                      Respectfully Submitted,

                                      KELLEY DRYE & WARREN LLP

                                      By: */s/ Craig A. Wolfe*
                                         Craig A. Wolfe (CW-2640)
                                      101 Park Avenue
                                      New York, New York 10178
                                      Telephone: (212) 808-7800
                                      Facsimile: (212) 808-7897

                                      and

                                      PENSION BENEFIT GUARANTY
                                      CORPORATION
                                      Israel Goldowitz, Chief Counsel
                                      Karen L. Morris, Deputy Chief Counsel
                                      Joan Segal, Assistant Chief Counsel
                                      Ralph L. Landy, Attorney
                                      Beth Bangert, Attorney
                                      Office of the Chief Counsel
                                      1200 K Street, N.W.
                                      Washington, D.C.  20005
                                      Telephone: (202) 326-4020
                                      Facsimile: (202) 326-4112

# EXHIBIT 1



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SEP 2 8 2007

TAX EXEMPT AND
GOVERNMENT ENTITIES
DIVISION

Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation and Subsidiaries
MC 483.400.626
5725 Delphi Drive
Troy, MI 48098

Re: Delphi Hourly-Rate Employees Pension Plan (Plan No. 003) ("Hourly Plan")
EIN: 38-3430473

Company = Delphi Corporation

Former Parent = General Motors Corporation

Dear Mr. Whitson:

This letter constitutes notice that for a conditional waiver of the minimum funding standard for the Hourly Plan has been granted for the plan year ending September 30, 2007.

This conditional waiver has been granted in accordance with section 412(d) of the Internal Revenue Code ("Code") and section 303 of the Employee Retirement Income Security Act of 1974 ("ERISA"). The amount for which this conditional waiver has been granted is equal to the contributions that would otherwise be required to reduce the balance in the funding standard account to zero (after the payment of at least the amount required under section 412(b)(2)(C) of the Code) as of September 30, 2007.

The Company is a U.S.-based global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology with a network of manufacturing sites, technical centers, sales offices, and joint ventures in every major region of the world. The Company supplies products to automotive original equipment manufacturers worldwide, and its customer base includes customers in the communications, computer, consumer electronics, energy, and medical devices industries.

2

Based on the information submitted by the Company, it is clear that it has suffered a substantial business hardship. While the Company generated net income for its 1999, 2000, and 2002 fiscal years, the Company suffered losses for its 2001, 2003, 2004, 2005, and 2006 fiscal years. The Company's financial condition particularly began to deteriorate in 2004 and the first half of 2005 as a result of downturns in its industry. Three issues have largely contributed to the Company's financial deterioration:

(1) unsustainable U.S. legacy liabilities and restrictions driven by collective-bargaining agreements, which have had the effect of creating large fixed labor costs;

(2) reduced production for the Former Parent, which is the Company's major U.S. customer; and

(3) increased commodity prices.

In October 2005, the Company filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. The Company continues to operate its business as debtor-in-possession. The Company has announced that it will cease accruals to the Hourly Plan for most participants as soon as practicable following its emergence from Chapter 11 bankruptcy protection. Participants in the Hourly Plan who are employed by the Company after the "freeze" date will continue to earn service for purposes of eligibility and vesting until termination of employment with the Company.

The Company is expected to emerge from Chapter 11 bankruptcy protection fully restructured with trimmed legacy labor costs, sufficient access to capital markets, and a business plan to diversify its customer base. Based on the Company's diversification strategy and vastly improved equity position, the Company is poised to return to profitability.

If the Company is able to successfully reorganize under Chapter 11 bankruptcy protection, its financial condition will be vastly improved and its financial hardship can be considered temporary. However, it is still uncertain whether the Company can successfully emerge from Chapter 11 bankruptcy protection. Accordingly, the waiver of the of the minimum funding standard for the Hourly Plan has been granted for the plan year ending September 30, 2007, subject to the following conditions:

(1) No later than December 31, 2007, the Company files a plan of reorganization with the bankruptcy court providing for continuation of the Plan, compliance with the conditions of this waiver and the waiver granted in a ruling letter dated May 1, 2007 (as modified by a ruling letter dated July 13, 2007), and providing for the combination of transfers under section 414(l) of the Internal Revenue Code ("Code") and cash contributions described below. The Company will not seek approval of a plan of reorganization which is inconsistent with the conditions of this waiver.

3

(2) The Company does not enter into any agreement, or amend any existing agreement, that would prevent it from satisfying its agreement under this funding waiver to make the pension contributions described in condition (4).

(3) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company effects a transfer under section 414(l) of the Code of unfunded liabilities from the Plan to an overfunded plan sponsored by the Former Parent such that the net unfunded liabilities under the Plan are reduced by at least $1.5 billion as determined on a FAS 87 basis.

(4) (i) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company (a) makes a contribution to the Plan equal to seventy-four and two-tenths percent (74.2%) of the estimated amount described in 4(ii) below based on the projections and assumptions provided by the Company in its waiver application submitted to the Service on August 3, 2007 (i.e., 74.2% of the amount described as the estimated quarterly payment due 1/15/2008 on page one of the schedule labeled IRS 7/20/2007 SCENARIO #D) (the "Scenario #D Amount"), and (b) deposits into escrow an amount equal to twenty-five and eight-tenths percent (25.8%) of such Scenario #D Amount.

(ii) No later than five (5) months after the effective date of the Company's plan of reorganization under Chapter 11, the Company calculates the amount sufficient to result in a funded current liability percentage as of the effective date of the Company's plan of reorganization under Chapter 11, when measured reflecting such contributions and the impact of the section 414(l) transfer, that is the same funded current liability percentage that would have existed as of the effective date of the Company's plan of reorganization under Chapter 11, if (a) the funding waivers had not been granted, (b) the section 414(l) transfer had not occurred, and (c) a contribution had been made on the effective date of the Company's reorganization under Chapter 11 equal to the accumulated Employee Retirement Income Security Act of 1974 ("ERISA") funding deficiency as of September 30, 2007.  These calculations should exclude the $20 million contribution outlined in condition (5) of this ruling letter and the $20 million contribution outlined in conditions (6) and (7) in the ruling letter dated May 1, 2007 (as modified by the ruling letter dated July 13, 2007).

(iii) If the contribution described in 4(i)(a) above is less than the amount calculated in 4(ii) above, the Company makes an additional contribution within 15 days after making the calculation described in 4(ii) above from the escrow account described in 4(i)(b) above in an amount that is

4

        sufficient to make the funded current liability percentages described in 4(ii) above equal.

(iv)    If the amount in the escrow account in 4(i)(b) above is not sufficient to make the additional contribution described in 4(iii) above, the Company makes an additional contribution within 15 days after making the calculation described in 4(ii) above that is sufficient to make the funded current liability percentages described 4(ii) above equal. Any amount remaining in the escrow account after condition 4 is met will be returned to the Company within 15 days after condition 4 is met.

(v)    If a credit balance is created as a result of the contributions described in 4(i), (iii) or (iv) above, the Company elects to reduce to zero (0) such remaining credit balance as exists in the Plan as of October 1, 2008, prior to determining the value of plan assets and crediting them against the minimum required contribution for the plan year ending September 30, 2009, in accordance with the Pension Protection Act of 2006 ("PPA"). If the contribution described in 4(i)(a) is greater than the amount calculated in 4(ii), the Company will be allowed to keep a credit balance equal to the amount of such excess, and this credit balance will be available to offset contributions for plan years beginning October 1, 2008, and later.

(5)    Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company makes a contribution to the Plan in the amount of $20 million (in addition to the contributions outlined in condition (4) above). This $20 million additional contribution is in addition to the $20 million additional contribution outlined in conditions (6) and (7) of the ruling letter dated May 1, 2007 (as modified by the ruling letter dated July 13, 2007) granting a waiver of the minimum funding standard for the Plan for the plan year ending September 30, 2006. The Company will elect to reduce to zero (0) the credit balance created by this condition as of October 1, 2008, prior to determining the value of plan assets and crediting against the minimum required contribution for the plan year ending September 30, 2009, in accordance with PPA.

(6)    Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company reimburses the Pension Benefit Guaranty Corporation ("PBGC") in an amount not to exceed $2 million for outside consulting fees incurred in the review of this funding waiver and of the waivers granted on May 1, 2007 (as modified by the ruling letter dated July 13, 2007).

(7)    The effective date of the Company's plan of reorganization is no later than February 29, 2008.

5

(8) Not later than five (5) days after the effective date of the Company's plan of reorganization under Chapter 11, the Company makes a contribution to the Plan in an amount sufficient to meet the minimum funding standard for the Plan for the plan year ending September 30, 2007. This contribution is equal to the amount necessary under section 412(b)(2)(C) of the Code to amortize the waived funding deficiency for the plan year ending September 30, 2006, in the Plan's funding standard account for the plan year ending September 30, 2007, and is in addition to any contribution made under conditions (4) and (5) above.

(9) Should the waiver become null and void, the Company agrees not to assert that the waiver had any impact on the filing date or amount of any PBGC statutory lien that existed as of the date the waiver was granted.

Your authorized representative agreed to these conditions in a letter dated September 27, 2007. If any one of the conditions is not met, the waiver for the plan year ending September 30, 2007, is retroactively null and void.

Your attention is called to section 412(f) of the Code and section 304(b) of ERISA which describe the consequences that would result in the event the Hourly Plan is amended to increase benefits, change the rate in the accrual of benefits or to change the rate of vesting, while any portion of the waived funding deficiency remains unamortized. Please note that any amendment to a profit sharing plan or any other retirement plans (covering employees covered by the Hourly Plan) maintained by the Company, to increase the liabilities of those plans would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA. Similarly, the establishment of a new profit sharing plan or any other retirement plan by the Company (covering employees covered by the Hourly Plan) would be considered an amendment for purposes of section 412(f) of the Code and section 304(b) of ERISA.

This ruling is directed only to the taxpayer that requested it. Section 6110(k)(3) of the Code provides that it may not be used or cited by others as precedent.

When filing Form 5500 for the plan year ending September 30, 2007, the date of this letter should be entered on Schedule B (Actuarial Information). For this reason, we suggest that you furnish a copy of this letter to the enrolled actuary who is responsible for the completion of the Schedule B.

We have sent a copy of this letter to the Manager, EP Classification in Baltimore, Maryland, to the Manager, EP Compliance Unit in Chicago, Illinois, and to your authorized representative pursuant to a power of attorney on file in this office.

6

If you require further assistance in this matter, please contact Mr. Heil (ID# 50-03208) at (410) 962-9480.

Sincerely yours,

Joseph H. Grant, Director
Employee Plans

cc:    Mr. William L. Sollee, Jr., Esq.