MICHAEL J. GARCIA  
United States Attorney for the  
Southern District of New York  
By: MATTHEW L. SCHWARTZ  
Assistant United States Attorney  
86 Chambers Street  
New York, New York 10007  
Tel.: (212) 637-1945  
Fax: (212) 637-2750  

HEARING DATE: January 17, 2008  
TIME: 10:00 AM  

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:                                            Chapter 11

  DELPHI CORPORATION, *et al.*,                   Case No. 05-44481 (RDD)

            Debtors.                              (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### UNITED STATES OF AMERICA'S OBJECTIONS TO THE JOINT PLAN OF REORGANIZATION

The United States of America (the "Government"), by its attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submits these objections to confirmation of the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Plan"). Specifically, the Government objects to the Plan's overly broad release provisions, which purport to release parties other than the debtors from liability to the Government.

### BACKGROUND

1.      On October 8 and 14, 2005 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 1101 *et seq.*, as amended (the "Bankruptcy Code").

2.  On September 7, 2007, Debtors and General Motors Corporation entered into two agreements: the Delphi-GM Global Settlement Agreement (the "Agreement") and the Delphi-GM Master Restructuring Agreement (together, the "Delphi-GM Definitive Documents," pursuant to Plan ¶ 1.45).

3.  On December 10, 2007, this Court entered an order approving Debtor's Disclosure Statement.

4.  Various federal agencies have filed proofs of claim in this case. Of particular relevance to this objection, the Environmental Protection Agency ("EPA") filed a proof of claim in an unliquidated amount on or about July 31, 2006, relating to Debtors' environmental liabilities at two Superfund sites in Ohio, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (the "EPA Claim"). In addition on or about July 26, 2006, the Internal Revenue Service ("IRS") filed a proof of claim in the secured amount of $9,281.26 relating to Debtors' unpaid Social Security taxes for the tax period ending June 30, 2005 (the "IRS Claim").[1]

5.  Paragraph 11.7 of the Plan provides:

> Release Of GM By Debtors And Third Parties. On the Effective Date, GM shall receive all releases provided for in Article IV of the Delphi-GM Global Settlement Agreement, which provisions are incorporated by reference herein in their entirety.

---

[1] In addition to the EPA and the IRS, federal government agencies that have filed proofs of claim include Customs and Border Protection, the Department of Health and Human Services, and the Equal Employment Opportunity Commission. Although not represented by this Office, the Department of Labor and the Securities Exchange Commission have also filed claims.

6. Article IV of the Agreement, entitled "Releases and Claims Treatment," provides, in turn and among other things:

> The Plan shall provide that effective as of the Effective Date, the GM-Related Parties shall be forever released by the Additional Releasing Parties from any and all claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, which the Additional Releasing Parties ever had, now have, or hereafter may have, whether known or unknown, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, or otherwise, that are directly or indirectly related to any of the Delphi-Related Parties, including without limitation claims based in whole or in part upon any act or omission, transaction, agreement, event, action, or other occurrence taking place or failing to take place on or before the Effective Date related to (i) the Separation, (ii) any collective bargaining agreements to which any Delphi-Related Party is now or has been a party, (iii) any agreement or obligation related to any employees or former employees of the Delphi-Related Parties, (iv) the Chapter 11 Cases, or (v) formulation, preparation, negotiation, dissemination, confirmation, or consummation (but not performance) of the Plan, the Disclosure Statement, this Agreement, the Restructuring Agreement, the Labor MOUs, the Non-Represented Employees Term Sheet, the UAW SAP, the IUE-CWA SAP, the IP License, the Warranty Settlement Agreement, or any contract, instrument, or other agreement or document created, modified, amended or entered into in connection with any of the foregoing. The releases provided for in this section 4.01(c) shall include any and all claims that any of the Additional Releasing Parties have or would have been legally entitled to assert in its own right (whether individually or collectively) and shall be effective against any person or entity that would have been legally entitled to assert such claim derivatively or otherwise on behalf of any of the Additional Releasing Parties.

Agreement ¶ 4.01(c).

7. Under the Agreement, the "Additional Releasing Parties" referenced in the preceding paragraph include, among others, "creditors of any of the Debtors."

Agreement ¶ 1.01(i).  The GM-Related Parties are defined by the Agreement to include General Motors Corporation, its affiliates and employees, and a number of related entities, collectively referred to in this Objection as "GM."  Agreement ¶¶ 1.37, 1.43.

## ARGUMENT

### THE PLAN'S RELEASE AND DISCHARGE PROVISIONS ARE IMPERMISSIBLY BROAD

8.  The Plan is objectionable to the extent that it seeks to release non-debtors from liability to the Government under any statute for conduct in connection with the Debtors, the Chapter 11 case or the Plan.  As set forth below, the broad releases contained in the Agreement, as incorporated into the Plan, *see* Plan ¶ 11.7, are prohibited by the Bankruptcy Code and Article III of the Constitution.  Moreover, even if the third-party releases were somehow found to be acceptable with respect to ordinary creditors, they are most certainly invalid as against the Government, especially with reference to GM's environmental and tax liabilities.

**A.    The Third-Party Release is Prohibited by the Code**

9.    As the Second Circuit recently acknowledged, "a nondebtor release . . . is proper only in rare cases."  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005).  Such releases are not authorized by the language of the Code (except in asbestos cases, and even then only under certain circumstances) and are easily subject to "abuse."  *Id.* at 142.

10.    Thus, the Court recognized that "[n]o case has tolerated nondebtor

4

releases absent the finding of circumstances that may be characterized as unique." *Id.* As examples of "unique" cases in which a third-party release could be "tolerated," the Court cited cases where the enjoined claims were channeled to a settlement fund instead of extinguished or otherwise ultimately ended up being paid. *Id.*

11.     The Court therefore concluded that for a third-party release to be valid, the Bankruptcy Court would have to make — at a minimum — the explicit finding that the release is "*itself* important to the Plan," *id.* at 143 (emphasis in original). Thus, "[a] nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to success of the plan." *Id.*

12.     The Second Circuit's recognition in *Metromedia* that third-party releases are only permitted in "unique" cases is consistent with the Code itself, which provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e). Courts have repeatedly held that plan provisions that compel creditors to release non-debtors from liability violate section 524(e). *See, e.g., In re Lowenschuss*, 67 F.3d 1394, 1401-02 (9th Cir. 1995); *Matter of Zale Corp.*, 62 F.3d 746, 757-61 (5th Cir. 1995); *In re Elsinore Shore Assocs.*, 91 B.R. 238 (Bankr. D.N.J. 1988); *In re Future Energy Corp.*, 83 B.R. 470, 486 (Bankr. S.D. Ohio 1988); *In re*

5

*222 Liberty Assocs.*, 108 B.R. 971, 996-97 (Bankr. E.D. Pa. 1990).[2] *See also In re Sybaris Clubs, Int'l*, 189 B.R. 152, 155-59 (Bankr. N.D. Ill. 1995); *In re Market Square Inn, Inc.*, 163 B.R. 64 (Bankr. W.D. Pa. 1994).

13.   Here, the Plan does not provide for a channeling injunction, nor has there been any showing of extraordinary circumstances that justify the proposed release of GM from potential claims that may be asserted by the Government. Accordingly, the Release provision is improper because it effectively discharges the obligations of the non-debtors for no satisfactory reason.

**B.   The Third-Party Release is Barred by Article III of The Constitution**

14.   There is also a fundamental jurisdictional problem with the Release to the extent that it purports to enjoin any claim the Additional Releasing Parties "now have, or hereafter may have, whether known or unknown, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, foreseen or unforeseen." Agreement ¶ 4.01(c). To exercise subject matter jurisdiction over the potential claims by the Government against GM that are covered by the Release, the Court must find that a "case or controversy" exists with respect to those claims:

> In order for a federal court to assert jurisdiction over an action, the Court must find that a justiciable "case or controversy" exists. To

---

[2]   A 1994 amendment to the Bankruptcy Code expressly authorizes releases of non-debtors in cases involving trusts created to address liabilities stemming from harm caused by asbestos, if a variety of conditions are met. *See* 11 U.S.C. § 524(g). The presence of this express authorization of releases for non-debtors in one category of cases further confirms that Congress did not intend for such releases to be available generally. *See In re Lowenschuss*, 67 F.3d at 1402 n.6; *In re W. Real Estate Fund, Inc.*, 922 F.2d 592, 600-02 (10th Cir. 1990) (per curiam).

6

>satisfy the requirements of Article III, a plaintiff "must allege some threatened or actual injury." . . . Such injury must be "sufficiently real and immediate," as opposed to merely "conjectural or hypothetical."

*Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 595-96 (2d Cir. 1988) (citations omitted). The controversy must be "real and substantial . . . admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 241, *reh'g denied*, 300 U.S. 687 (1937). No Article III case or controversy exists in "cases which present a hypothetical conflict which, while perhaps foreseeable, has not yet become imminent." *Alan Guttmacher Institute v. McPherson*, 616 F. Supp. 195, 199 (S.D.N.Y. 1985), *aff'd in relevant part*, 805 F.2d 1088 (2d Cir. 1986).

15.  The Plan purports to resolve potential, but hypothetical, disputes that clearly do not satisfy the "case or controversy" requirement. The question of whether GM might be liable under federal law for conduct arising out of their relationship with the Debtors does not present a case or controversy. It is unwise — and beyond the jurisdiction of any court — to issue an order declaring that the non-debtors will not be liable for such conduct.

16  The jurisdictional defect surrounding third-party releases was recognized in *In re Bradlees Stores, Inc.*, 95 Civ. No. 5494 (JSM), 1995 WL 510005, at *1-2 (S.D.N.Y. Aug. 25, 1995). In *Bradlees*, the district court vacated an order entered by this Court authorizing the debtor to obtain financing from a bank, to the

7

extent that the order included a provision that declared that the bank was not a "responsible person" under federal environmental laws and the Internal Revenue Code. The court concluded that the Bankruptcy Court lacked "authority to enjoin the Internal Revenue Service from collecting taxes that could be owed by the lender, a non-debtor, if it is responsible for the debtors' failure to pay them," or to issue a declaratory judgment as to possible future environmental liabilities. *Id*. at *1.

C.  **The Release is Invalid With Respect to Tax Liabilities Under the Anti-Injunction Act and the Declaratory Judgment Act**

17.  Even if this Court were to overlook the constitutional jurisdictional problem and were to conclude that the Third-Party Release is somehow so integral to the Plan as to render this case "unique," it is not enforceable against the Government. *First*, with respect to tax liabilities, the Release violates the Anti-Injunction Act, 26 U.S.C. § 7421, which prohibits (with certain exceptions not relevant here) any "suit for the purpose of restraining the assessment or collection of any tax . . . by any person, whether or not such person is the person against whom such tax was assessed." *Id*.

18.  The Release would effectively restrain the IRS from commencing actions or taking other measures to collect payroll taxes from GM. Under the Anti-Injunction Act, 26 U.S.C. § 7421, the Court lacks jurisdiction to restrain the IRS in this manner.

19.  Congress provided for certain limited exceptions to the Anti-Injunction Act, but did not include injunctions issued by bankruptcy courts. *In re Condel*, 91

B.R. 79, 81 (9th Cir. BAP 1988). "Not only is injunctive relief against tax collection proscribed by [Section 7421] but also the courts are deprived of subject matter jurisdiction to fashion equitable remedies." *In re County Wide Garden Center, Inc.*, 25 B.R. 203, 204 (Bankr. S.D.N.Y. 1982).

20. To the extent that Debtors seeks to rely on 11 U.S.C. § 105 in support of their request to enjoin the Government from seeking to assert tax claims against the non-debtors, the Debtors' effort must fail. Section 105(a) does not permit a court to override the Anti-Injunction Act. *See In re Buildwright Homes, Inc.*, 179 B.R. 865 (Bankr. S.D. Ohio 1994); *In re Pressimone*, 39 B.R. 240, 245 (N.D.N.Y. 1984) ("[N]othing in the general language of § 105(a) indicates that Congress intended it to supersede the proscription of the Anti-Injunction Act").[3] This Court therefore has no jurisdiction to order the relief requested by the Plan as it relates to GM's tax liabilities.

21. Similarly, to the extent that Plan seeks a declaratory judgment that GM will not be liable for any failures by Debtors to withhold and pay over payroll taxes to the Government, the Court lacks jurisdiction to issue a declaratory judgment concerning federal taxes under 28 U.S.C. § 2201.[4]

---

[3] Moreover, the Second Circuit was extremely critical of section 105(a)'s application to third-party releases in *Metromedia. See* 416 F.3d at 142 (noting that "section 105(a) does not allow the bankruptcy court to create substantive rights that are otherwise unavailable under applicable law" (internal quotations marks and citation omitted)).

[4] The Plan is also procedurally deficient. Since a declaratory judgment is equitable in nature, Rule 7001 requires that the Debtors institute an adversary

22.     The Declaratory Judgment Act, 28 U.S.C. § 2201, provides as follows:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . .

*Id*. (emphasis supplied).[5]

23.     It is well established that courts may not issue a declaratory judgment in cases concerning federal taxes. *See Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 490 (7th Cir. 1994); *Warren v. United States*, 874 F.2d 280, 282 (5th Cir. 1989); *Falik v. United States*, 343 F.2d 38, 42 (2d Cir. 1965). Congress did not "evidence[ ] an intent that the bankruptcy courts have jurisdiction to enter a binding determination on a question of federal taxation before the IRS has assessed a deficiency or presented a claim, and even before a tax return has been filed . . . ." *Gilbert v. United States (In re Statmaster Corp.)*, 465 F.2d 978, 981 (5th Cir. 1972). Thus, the courts have no jurisdiction over actions seeking declaratory judgments concerning federal tax liability. *See, e.g., Falik*, 343 F.2d at 42; *Myles v. United*

---

proceeding. *See* Bankr. Rule 7001(7),(9); *Zale*, 62 F.3d at 765.

[5]     The relief sought in the Plan does not fall within any of the exceptions set forth in 28 U.S.C. § 2201. Section 7428 of the Internal Revenue Code permits certain courts to issue declaratory judgments concerning the tax exempt status of certain organizations; section 505 of the Bankruptcy Code permits a bankruptcy court, under certain circumstances, to determine the "amount or legality of any tax," but does not authorize declaratory relief concerning tax liability; and section 1146 of the Bankruptcy Code permits a bankruptcy court to determine certain tax effects of a plan of reorganization under state and local, *but not federal*, tax laws.

*States*, 810 F. Supp. 390, 394-95 (N.D.N.Y. 1992); *Greenhouse v. United States*, 780 F. Supp. 136, 141-42 (S.D.N.Y. 1991); *Lapadula & Villani, Inc. v. United States*, 563 F. Supp. 782, 784 (S.D.N.Y. 1983).

24. Given Debtors' and GM's close relationship and long history, these concerns are not idle. Sections 3102 and 3402 of the Internal Revenue Code require an employer to withhold federal Social Security and income taxes from the wages of its employees. 26 U.S.C. §§ 3102, 3402. The taxes withheld from each employee's wages constitute a special fund held in trust for the benefit of the United States under 26 U.S.C. § 7501. *See Slodov v. United States*, 436 U.S. 238, 242-43 (1978); *Fiataruolo v. United States*, 8 F.3d 930, 938 (2d Cir. 1993).

25. If an employer withholds these trust fund taxes but fails to pay them to the United States, the employee nevertheless is credited with having paid the taxes, and the Government may not require any additional payment from the employee. *See Slodov*, 436 U.S. at 243; *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1548 (11th Cir. 1986). Thus, unless the Government has recourse against the person or persons responsible for the collection and nonpayment of the tax, the revenues are lost to the Government. *See Slodov*, 436 U.S. at 243; *Newsome v. United States*, 431 F.2d 742, 744 (5th Cir. 1970).

26. To protect against such losses, 26 U.S.C. § 6672(a) authorizes the collection of taxes from those persons who were "responsible" for the corporation's failure to pay them. *Monday v. United States*, 421 F.2d 1210, 1214 (7th Cir. 1970); *Gephart v. United States*, 818 F.2d 469 (6th Cir. 1987) (per curiam). Courts have

taken a "broad view" of who qualifies as a "responsible person" within the meaning of Section 6672.  *United States v. Rem*, 38 F.3d 634, 642 (2d Cir. 1994); *Fiataruolo*, 8 F.3d at 938; *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992) ("Section 6672 casts a broad net of liability"); *Caterino v. United States*, 794 F.2d 1, 4 (1st Cir. 1986).

27.    The Plan is objectionable to the extent that it purports to seek to release GM from unspecified future liability to the Government under the federal tax laws and to absolve GM of responsibility for conduct under circumstances in which they may otherwise be deemed "responsible persons."

28.    Moreover, it is well established in this Circuit that bankruptcy courts have no jurisdiction to enjoin the efforts of the IRS to collect taxes from non-debtors. *See In re Brandt-Airflex Corp.*, 843 F.2d 90 (2d Cir. 1988).  In *Brandt-Airflex*, the debtor had entered into a secured lending agreement with the Long Island Trust Company ("LITC").  Prior to Brandt-Airflex's bankruptcy petition, LITC had advanced funds to Brandt-Airflex for the payment of employee wages, but had not advanced funds for the federal and state withholding taxes due on those wages. Following Brandt-Airflex's bankruptcy petition, the federal and state taxing authorities filed claims for the unpaid taxes.  The debtor then sued LITC and the taxing authorities, seeking a ruling that LITC, not the debtor, was responsible for the taxes under 26 U.S.C. § 3505(b) and its state law counterpart.

29.    The Second Circuit held that 11 U.S.C. § 505(a)(1) does not confer jurisdiction on bankruptcy courts to determine the tax liability of individuals or

12

entities other than the debtor. In so holding, the court noted that "[v]irtually all the courts which have considered the issue most recently concluded that section 505(a) does not extend the bankruptcy court's jurisdiction to parties other than the debtor." *Brandt-Airflex*, 843 F.2d at 95. This principle rests on the understanding that the Bankruptcy Court has no jurisdiction, in general, to determine the liabilities of non-debtors. *Huckabee Auto*, 783 F.2d at 1549.

### D. The Release is Invalid With Respect to Environmental Liabilities Under CERCLA

30. Pursuant to Section 107(a)(1) of CERCLA, when there is a "release" or "threatened release" of a hazardous substance from a facility into the environment, the Government may sue a potentially responsible party ("PRP") to compel such PRP to clean up the site or reimburse the Government for its response costs. *See* 42 U.S.C. §§ 9604, 9607. PRP's can include the current "owners and operators" of a hazardous waste site, the "owner or operator" at the time of disposal of the hazardous substances, the parties who arranged for the disposal of the hazardous substances, and the transporters of those substances. *See* 42 U.S.C. § 9607(a)(1)-(4).

31. Pursuant to 42 U.S.C. § 9613(h), federal courts have no power to review any EPA pre-enforcement decision. CERCLA's complex procedures are designed to give EPA the authority to undertake cleanup actions before becoming embroiled in litigation to resolve liability for the cost of cleanup. *See* S. Rep. 848, 96th Cong., 2d Sess. 8, 11-12, 22, 56, 62 (1980). For that reason, the Second Circuit has concluded that the Bankruptcy Court cannot issue a pre-enforcement

declaratory judgment or advisory opinion regarding a party's potential CERCLA liability even *after* a party has been notified that it is a PRP where the EPA has not yet decided whether to act against the party. *See Carter Day Indus., Inc. v. U.S. Environmental Protection Agency, Inc. (In re Combustion Equipment Assocs., Inc.*), 838 F.2d 35 (2d Cir. 1988).

32.     Moreover, the Second Circuit's decision in *Brandt-Airflex* also leads to the conclusion that bankruptcy courts have no jurisdiction over the EPA's possible pursuit of environmental claims against non-debtors. *See In re Brandt-Airflex Corp.*, 843 F.2d 90 (2d Cir. 1988). *Brandt-Airflex* makes clear that this Court has no jurisdiction to release non-debtors from either tax liabilities or environmental liabilities, as sought by the Plan.

33.     Likewise, section 107(e) of CERCLA provides:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1). Put simply, "notwithstanding the existence of indemnification agreements, all potentially responsible parties are jointly and severally liable to the government for the cleanup and/or closure costs. The first sentence of § 107(e)(1) merely states that once an entity is found to be a responsible party, it cannot extricate itself from the CERCLA liability web simply by entering

14

into an indemnification agreement with another party." *United States v. Lang*, 864 F. Supp. 610, 613-14 (E.D. Tex. 1994).

34.     Accordingly, the Plan's broad release provisions are objectionable to the extent that they purport to release GM from unspecified future liability to the Government under the federal environmental laws, and to absolve GM of potential responsibility for disposal of hazardous waste even under circumstances in which they would otherwise be deemed "owners or operators" or "in control" of the Debtors' operations.

### E.     The Plan Impermissibly Releases Other Non-Debtor Obligations to the Government

35.     In addition to improperly releasing GM from readily foreseeable tax and environmental claims, the Plan impermissibly purports to release non-debtors from any type of governmental claim, without restriction.  The Government's many regulatory and statutory interests may give rise to claims against GM in myriad respects, most unknown if not unknowable at this time.  Among the other infirmities set forth above, such potential claims are inherently hypothetical and do not present an Article III case or controversy at this time.  Accordingly, the Plan's proposed release language should be stricken or modified to carve out any effect it would otherwise have on the Government's potential future claims against non-debtors.

## CONCLUSION

36. For the foregoing reasons, the Government respectfully objects to the Plan. The Plan should not be confirmed to the extent that it seeks to release parties other than the Debtors from any potential claims by the Government. The language releasing non-debtors from any potential claims by the Government should be stricken, or in the alternative, the following language should be added to the Plan and confirmation order:

> Nothing in the Plan or Confirmation Order or the Delphi-GM Definitive Documents providing for the release of non-debtors, or an injunction on behalf of non-debtors, shall apply to the United States of America or to any agency thereof.

Dated:    January 11, 2008
         New York, New York

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States of America


                              By:    /s/ Matthew L. Schwartz
                                    MATTHEW L. SCHWARTZ
                                    Assistant United States Attorney
                                    86 Chambers Street
                                    New York, New York 10007
                                    Tel.: (212) 637-1945
                                    Fax: (212) 637-2750