IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re                                                  :        Chapter 11
                                                       :
DELPHI CORPORATION, et al.,                            :        Case No. 05-44481 (RDD)
                                                       :
                              Debtors.                 :        (Jointly Administered)
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>AFFIDAVIT OF SERVICE</u>

I, Elizabeth Adam, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On December 27, 2007, I caused to be served the documents listed below (i) upon the parties listed on <u>Exhibit A</u> hereto via overnight mail, (ii) upon the parties listed on <u>Exhibit B</u> hereto via electronic notification and (iii) upon the parties listed on <u>Exhibit C</u> hereto via postage pre-paid U.S. mail:

1) Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement ("Steering Sale Motion") [a copy of which is attached hereto as <u>Exhibit D</u>]

2) Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Steering And Halfshaft Business ("Steering Bidding Procedures Order") [a copy of which is attached hereto as <u>Exhibit E</u>]

3) Exhibit 1 – Steering Business Bidding Procedures [a copy of which is attached hereto as <u>Exhibit F</u>]

4) Exhibit 2 – Notice Of Sale Of Certain Assets At Auction [a copy of which is attached hereto as <u>Exhibit G</u>]

5) Exhibit 3 – Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business [a copy of which is attached hereto as <u>Exhibit H</u>]

6) Exhibit 4 – Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business [a copy of which is attached hereto as <u>Exhibit I</u>]

7) Exhibit 5 – Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Qualified Bidders In Connection With Sale Of Steering And Halfshaft Business [a copy of which is attached hereto as <u>Exhibit J</u>]

8) Exhibit C – [Proposed] Order Under 11 U.S.C. §§ 363, 365, And 1146 And Fed.R.Bankr.P. 2002. 6004, 6006, And 9014 (A) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Of Assets Of Steering And Halfshaft Business Free And Clear Of Liens, Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities And (B) Authorizing And Approving Transaction Facilitation Agreement ("Steering Sale Approval Order") [a copy of which is attached hereto as <u>Exhibit K</u>]

9) Exhibit D – Master Sale And Purchase Agreement [a copy of which is attached hereto as <u>Exhibit L</u>]

10) Exhibit F – Transaction Facilitation Agreement [a copy of which is attached hereto as <u>Exhibit M</u>]

On December 28, 2007, I caused to be served the documents listed below upon the parties listed on <u>Exhibit N</u> hereto via postage pre-paid U.S. mail:

11) Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement ("Steering Sale Motion") [a copy of which is attached hereto as <u>Exhibit D</u>]

12) Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Steering And Halfshaft Business ("Steering Bidding Procedures Order") [a copy of which is attached hereto as <u>Exhibit E</u>]

13) Exhibit 1 – Steering Business Bidding Procedures [a copy of which is attached hereto as <u>Exhibit F</u>]

14) Exhibit 2 – Notice Of Sale Of Certain Assets At Auction [a copy of which is attached hereto as <u>Exhibit G</u>]

15) Exhibit 3 – Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business [a copy of which is attached hereto as <u>Exhibit H</u>]

16) Exhibit 4 – Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business [a copy of which is attached hereto as <u>Exhibit I</u>]

17) Exhibit 5 – Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Qualified Bidders In Connection With Sale Of Steering And Halfshaft Business [a copy of which is attached hereto as <u>Exhibit J</u>]

18) Exhibit C – [Proposed] Order Under 11 U.S.C. §§ 363, 365, And 1146 And Fed.R.Bankr.P. 2002. 6004, 6006, And 9014 (A) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Of Assets Of Steering And Halfshaft Business Free And Clear Of Liens, Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities And (B) Authorizing And Approving Transaction Facilitation Agreement ("Steering Sale Approval Order") [a copy of which is attached hereto as <u>Exhibit K</u>]

19) Exhibit D – Master Sale And Purchase Agreement [a copy of which is attached hereto as <u>Exhibit L</u>]

20) Exhibit F – Transaction Facilitation Agreement [a copy of which is attached hereto as <u>Exhibit M</u>]

Dated: January 11, 2008

_____*/s/ Elizabeth Adam*_____
Elizabeth Adam

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 11th day of January, 2008, by
Elizabeth Adam, proved to me on the basis of satisfactory evidence to be the person who
appeared before me.

Signature: _____*/s/ Leanne V. Rehder*_____

Commission Expires:___*3/2/08*_____

# EXHIBIT A

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com slivir@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariaivalerio@irs.gov | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | | Creditor Committee Member |
| Jefferies & Company, Inc. | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | gianni.russello@jpmorgan.com susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

1/10/2008 11:33 PM
Master Service List Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

1/10/2008 11:33 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

1/10/2008 11:33 PM
Master Service List Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

1/10/2008 11:33 PM
Master Service List Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | 401-751-0604 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | 202-887-4288 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | 590 Madison Ave | | New York | NY | 10022-2524 | | 212-872-1000 | 212-872-1002 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Companay, Ltd., and Furukawa Electric North America APD, Inc. |
| Ambrake Corporation | Brandon J. Kessinger | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5428 | 270-737-3044 | bkessinger@akebono-usa.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Anthony Ostlund & Baer PA | John B Orenstein | 3600 Wells Fargo Ctr | 90 S 7th St | Minneapolis | MN | 55402 | | 612-349-6969 | 612-349-6996 | jorenstein@aoblaw.com | Attorneys for Whitebox Hedged High Yield Partners, LP |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | 205-226-8799 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | 312-984-3150 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | 765-640-1332 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | 212-554-1444 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Bingham McHale LLP | John E Taylor Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | 317-236-9907 | jtaylor@binghammchale.com wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Michael A Trentadue Carina M de la Torre | 2700 First Indiana Plz | 135 N Pennsylvania St | Indianapolis | IN | 46204 | | 317-684-5000 | 317-684-5173 | mtrentadue@boselaw.com cdelatorre@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amccb@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605 529 | 0039-035-605-671 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | 202-862-2400 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | 216-241-0816 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Enhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | 212-541-5369 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel to Cornell University |
| Covington & Burling | Susan Power Johnston Aaron R. Marcu | 620 Eighth Ave | | New York | NY | 10018 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | 248-457-7001 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-916-2940 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | 212-652-3863 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | 212-248-3141 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | | 302-425-0430 | 302-425-0432 | mbusenkell@eckertseamans.com | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel to Doshi Prettl International, LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel to Aluminum International, Inc. |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | 866-890-3061 | charles@filardi-law.com | Counsel to Federal Express Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | ddragich@foley.com | Counsel to Internet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | 313-234-2800 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | 212-687-2329 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | 212-318-3400 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | 210-270-7205 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Garvey Schubert Barer | Roberto Carrillo | 100 Wall St 20th Fl | | New York | NY | 10005 | | 212-965-4511 | 212-334-1278 | rcarrillo@gsblaw.com | Attorney's for Tecnomec S.r.l. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel to Alps Automotive, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | 200 Park Avenue | | New York | NY | 10166 | | 212-801-9200 | 212-801-6400 | diconzam@gtlaw.com | Counsel to Samtech Corporation |
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | 713-374-3505 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | 315-471-3167 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | 212-918-8989 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | 713-547-2600 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Heller Ehrman LLP | Timothy Mehok | Times Square Tower | Seven Times Square | New York | NY | 10036 | | 212-832-8300 | 212-763-7600 | timothy.mehok@hellerehrman.com | Counsel to @Road, Inc. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | 716-819-4645 | jjkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation; Co Counsel for Yazaki North America, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 60 E 42nd St 37th Fl | | New York | NY | 10165-0150 | | 212-661-3535 | 212-972-1677 | sgross@hodgsonruss.com | Co-Counsel for Yazaki North America, Inc. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | 313-465-7627 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | 248-645-1568 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | 678-384-7034 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | 231-728-2206 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | 212-836-8689 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Riley | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | H. Slayton Dabney, Jr. Bill Dimos | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | sdabney@kslaw.com bdimos@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | (302) 552-4200 | | dbrown@klettrooney.com | Counsel to Entergy |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | 816-960-0041 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | 617-542-3001 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | 610-738-1217 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel to Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Michael S. Etikin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel to Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel to Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | 973-624-7070 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | 804-775-1061 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | 248-786-3596 | jdonahue@miheritage.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb
Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748
616-831-1726 | 616-988-1748
616-988-1726 | sarbt@millerjohnson.com
wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com
pricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Inc. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@moritthock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | 917-522-3157 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | 609-777-3055 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | 614-752-2441 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | 302- 652-4400 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | 212-561-7777 | Rfeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | 212-336-2222 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg Justin B. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | arosenberg@paulweiss.com jbrass@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | 203-259-0251 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p. A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p. A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | 724-981-1398 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com mgr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | 608-294-4920 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | 312-726-0647 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D-J, Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. Counsel for Pamela Gellar |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rttrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | agelman@sachnoff.com | Counsel to Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene E. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | 312-258-5600 | egeekie@schiffhardin.com | Counsel to Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel to Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel to le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | 603-627-8121 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | 212-332-3888 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | 213-620-1398 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | 609-227-4646 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | 213-897-2802 | sarah.morrison@doj.ca.gov | Attorneys for the State of California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang, Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | 609-392-7956 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert G. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | 502-779-8274 502-587-6391 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | 513-381-0205 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | 1-330-471-4388 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | 214-999-9139 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Company |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |
| Varnum, Riddering, Schmidt & Howlett LLP | Michael S. McElwee | Bridgewater Place | P.O. Box 352 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Co-Counsel to Tower Automotive, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 20

1/10/2008 11:33 PM
Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel to Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | 440-930-8098 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel to National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel to Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 20

1/10/2008 11:33 PM
Email

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | Counsel to Airgas, Inc. |
| Akebono Corporation North America | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | Vice President of Administration for Akebono Corporation |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | Counsel to Kamax L.P.; Optrex America, Inc. |
| Bingham McHale LLP | Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | 303-295-0202 | Counsel to United Power, Inc. |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | 212-826-8800 | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | 615-321-0555 | Counsel to Averitt Express, Inc. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 4

1/10/2008 11:34 PM
US MAIL

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dykema Gossett PLLC | Brendan G Best Esq | 39577 Woodward Ave Ste 300 | | Bloomfield Hills | MI | 48304 | 248-203-0523 | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Gregory J. Jordan | 10 Wacker | Suite 2300 | Chicago | IL | 60606 | 312-627-2171 | Counsel to Tremont City Barrel Fill PRP Group |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | Counsel to Aluminum International, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | Counsel to Ryder Integrated Logistics, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Heller Ehrman LLP | Carren Shulman | Times Square Tower | Seven Times Square | New York | NY | 10036 | 212-832-8300 | Counsel to @Road, Inc. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | 248-723-0396 | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | 678-384-7000 | Counsel to Vanguard Distributors, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | Counsel to ZF Group North America Operations, Inc. |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | 850-763-8421 | Counsel to Peggy C. Brannon, Bay County Tax Collector |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | Counsel to the Pension Benefit Guaranty Corporation |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | (302) 552-4200 | Counsel to Entergy |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | UCC Professional |
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-812-8340 | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | Counsel to Siemens Logistics Assembly Systems, Inc. |
| Miami-Dade County Tax Collector | Metro-Dade Paralegal Unit | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | Paralegal Collection Specialist for Miami-Dade County |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 4

1/10/2008 11:34 PM
US MAIL

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | 410-385-3418 | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | Counsel to WL. Ross & Co., LLC |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | 312-849-2020 | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423 | | |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Reed Smith | Richard P. Norton | One Riverfront Plaza | 1st Floor | Newark | NJ | 07102 | 973-621-3200 | Counsel to Jason Incorporated, Sackner Products Division |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Sachnoff & Weaver, Ltd | Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | Counsel to  Means Industries |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Gentral Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 4

1/10/2008 11:34 PM
US MAIL

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. a |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | Attorneys for Sanders Lead Co., Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO David Jury, Esq. | | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | 614-464-8322 | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | 714-966-1000 | Counsel to Toshiba America Electronic Components, Inc. |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | Counsel to National Instruments Corporation |
| WL Ross & Co., LLC | Stephen Toy | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 4

1/10/2008 11:34 PM
US MAIL

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| 3D PRECISION TOOL INC | 3D PRECISION TOOL INC | 2963 E MILLER RD | | | FAIRVIEW | MI | 48621-9702 | |
| 3D PRECISION TOOL INC | LARRY DILLAR | 2963 E MILLER RD | | | FAIRVIEW | MI | 48621-9702 | |
| A 3 ACQUISITION CORP | MICHAEL KOPAK | 309 OSWALD AVE | | | BATAVIA | IL | 60510-9321 | |
| A OK CONTROLS ENGINEERING INC | PHIL ROBERTSON | 4375 E HOLLAND RD | | | SAGINAW | MI | 48601 | |
| ABC FLEXIBLE ENGINEERED PRODUCTS IN | AMILICAR HERRERA | 100 RONSON DR | | | REXDALE | ON | M9W 1B6 | CANADA |
| ABC PLASTIC MOULDING | AMILICAR HERRERA | 3325 ORLANDO DR | | | MISSISSAUGA | ON | L4V1C5 | CANADA |
| ACCESS ELECTRONICS INC | TOM CARTER | 4190 GROVE AVE | | | GURNEE | IL | 60031 | |
| ACCURATE THREADED FASTENERS INC | JOHN LYONS | 3550 W PRATT AVE | | | LINCOLNWOOD | IL | 60712 | |
| ACRA INC % OLDFORD & ASSOCIATES | PAT PATTERSON | 3555 WALNUT ST | | | PORT HURON | MI | 48060 | |
| ACUTECH INDUSTRIES INC | SID PILLARS | 2736 PRODUCT DR | | | ROCHESTER HILLS | MI | 48309-3711 | |
| ADAM OPEL AG | ATTN DIRECTOR OF FINANCE | FRIEDRICH LUTZMANN RING | | | RUSSELSHEIM | | D 65423 | FEDERL REPUBLIC OF GERMANY |
| ADAM OPEL GMBH | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| ADAMS OIL ENTERPRISES INC | MARK ADAMS | 7030 EAST ST | | | SAGINAW | MI | 48601 | |
| ADELL PLASTICS INC | MICHAEL HOHL | 4530 ANNAPOLIS RD | | | BALTIMORE | MD | 21227 | |
| ADVANCE BAG & PACKAGING COMPANY | | 5720 WILLIAMS LAKE RD | | | WATERFORD | MI | 48329-3274 | |
| ADVANCE ENGINEERING COMPANY | RICHARD SLOAN | 12025 DIXIE AVE | | | REDFORD | MI | 48239 | |
| ADVANCED ELASTOMER SYSTEMS LP | JUDY A DEUTSHMAN | 388 S MAIN ST | | | AKRON | OH | 44311 | |
| ADVANCED PRECISION MANUFACTURING | JIM CAUDLE | 4911 MORRE MILL ROAD | | | HUNTSVILLE | AL | 35811 | |
| AGAPE PLASTICS INC | DUANE OVERBEEK | O 11474 1ST AVE NW | | | GRAND RAPIDS | MI | 49544 | |
| AGAPE PLASTICS INC | DUANE OVERBEEK | O 11474 1ST AVE NW | | | GRAND RAPIDS | MI | 49544 | |
| AGES SPA | MR LANZI | VIA TRINITA 80 | | | SANTENA TO | | 10026 | ITALY |
| AI SHREVEPORT LLC | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| AIR PRODUCTS AND CHEMICALS INC | | PO BOX 538 | | | ALLENTOWN | PENN SYLVA NIA | 18105 | |
| AIRGAS INC | DAVID BOYLE | 259 RADNOR CHESTER ROAD SUITE 100 | PO BOX 6675 | | RADNOR | PA | 19087-8675 | |
| AKEBONO CORPORATION NORTH AMERICA | ALAN SWIECH | 34385 TWELVE MILE ROAD | | | FARMINTON HILLS | MI | 48331 | |
| ALABAMA INCENTIVES FINANCING AUTHORITY | ATTN DR HENRY C MABRY III DIRECTOR OF FINANCE | STATE CAPITOL COMPLEX N 105 | 600 DEXTER AVENUE | | MONTGOMERY | ALABA MA | 36130 | |
| ALCON INDUSTRIES INC | ALCON INDUSTRIES INC | 7990 BAKER AVE | | | CLEVELAND | OH | 44102 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| ALCONA TOOL & MACHINE INC | TOM THOMPSON JOE JAMES | 325 LAKE ST DR PO BOX 340 | | | LINCOLN | MI | 48742 | |
| ALEMITE CORPORATION | ALLEN HOBBS | 1057 521 CORPORATE CTR STE 100 | | | FORT MILL | SC | 29715 | |
| ALGAT INDUSTRIE SRL | FABRIZIO SALANDIN | STRADA CARLO 17 | | | SAN CARLO CANAVESE TO | | 10070 | ITALY |
| ALKEN ZIEGLER INC | ROBERT ZIEGLER | 406 S PARK DR | | | KALKASKA | MI | 49646 | |
| ALKEN ZIEGLER INC | ROBERT ZIEGLER | 406 S PARK DR | | | KALKASKA | MI | 49646 | |
| ALLAN TOOL & MACHINE CO INC | JEFF SCOTT | 1822 E MAPLE | | | TROY | MI | 48083 | |
| ALLAN TOOL & MACHINE CO INC | JEFF SCOTT | 1822 E MAPLE | | | TROY | MI | 48083 | |
| ALLEGRO MICROSYSTEMS INC | | 20929 KLINE DRIVE | | | CLINTON TOWNSHIP | MI | 48038 | |
| ALLIANCE PLASTICS % RWP KINSALE | KIM TRISCUIT REG SLS MGR | 27275 HAGGERTY RD STE 500 | | | NOVI | MI | 48377 | |
| ALLIANCE PLASTICS % RWP KINSALE | KIM TRISCUIT REG SLS MGR | 27275 HAGGERTY RD STE 500 | | | NOVI | MI | 48377 | |
| ALLIED SUPPLY CO INC | | 3205 10TH AVE SW | | | HUNTSVILLE | AL | 35805-4027 | |
| ALLIED SUPPLY CO INC | ALLIED SUPPLY CO INC | 3205 10TH AVE SW | | | HUNTSVILLE | AL | 35805-4027 | |
| ALLIED TOOL & MACHINE CO | FRED BECKER | PO BOX 1407 | | | SAGINAW | MI | 48605-1407 | |
| ALLOY ENGINEERING & CASTING COMPANY | ALLOY ENGINEERING & CASTING COMPANY | 1700 W WASHINGTON ST | | | CHAMPAIGN | IL | 61821 | |
| ALLWAYS PRECISION INC | HARRY DIETZ | 14001 S VAN DYKE RD | | | PLAINFIELD | IL | 60544 | |
| ALPHA STAMPING COMPANY | MARY CULBERTSON | 33375 GLENDALE | | | LIVONIA | MI | 48150 | |
| ALPHA TECHNOLOGY CORP | DEAN SHEPARD | 251 MASON RD PO BOX 168 | | | HOWELL | MI | 48844 | |
| ALPS AUTOMOTIVE | CHARITY GLENN | 1500 ATLANTIC BLVD | | | AUBURN HILLS | MI | 48326 | |
| ALPS AUTOMOTIVE INC | | 1500 ATLANTIC BLVD | | | AUBURN HILLS | MI | 48326 | |
| AM GENERAL CORP | JACK ROSENBLAD M&M KNOPF | 12200 HUBBARD RD | PO BOX 3330 | | LIVONIA | MI | 48151-3330 | |
| AMCAN CASTINGS | ALAN HERRON | 11528 S SAGINAW ST STE 201 | | | GRAND BLANC | MI | 48439 | |
| AMERICAN AIKOKU INC | NAOHIKO MORI | 520 LAKE COOK RD STE 180 | | | DEERFIELD | IL | 60015 | |
| AMERICAN AIKOKU INC | RYOICHI HIROSE | 520 LAKE COOK RD STE 180 | | | DEERFIELD | IL | 60015 | |
| AMERICAN AXLE & MANUFACTURING | DOUG SIMOES PRODUCTION BUYER | 2965 TECHNOLOGY DRIVE | | | ROCHESTER HILLS | MI | 48309 | |
| AMERICAN AXLE & MANUFACTURING INC | | ONE DAUCH DRIVE | | | DETROIT | MI | 48211-1198 | |
| AMERICAN AXLE & MANUFACTURING INC | | ONE DAUCH DRIVE | | | DETROIT | MI | 48211-1198 | |
| AMERICAN AXLE & MANUFACTURING SALES | JIM LIBLER | 2965 TECHNOLOGY DR | | | ROCHESTER HILLS | MI | 48309 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| AMERICAN AXLE & MFG INC | DOUG SIMOES PRODUCTION BUYER | 1840 HOLBROOK AVENUE | | | DETROIT | MI | 48212 | |
| AMERICAN JEBCO CORP | JEFF KAUP | 11330 MELROSE ST | | | FRANKLIN PARK | IL | 60131 | |
| AMERICAN KEEPER CORPORATION | HEUNGSIK YOON | 3300 S COMMERCE DR | | | NEW CASTLE | IN | 47362 | |
| AMERICAN KEEPER CORPORATION | LEE GARRETT | 3300 S COMMERCE DR | | | NEW CASTLE | IN | 47362 | |
| AMERICAN NATIONAL RUBBER CO | SYLVIA COSS | 27620 FARMINGTON RD | | | FARMINGTON HILLS | MI | 48334 | |
| AMERICAN PRODUCTS | THEA LLOYD | 610 RAHWAY AVE | | | UNION | NJ | 7083 | |
| AMERICAN PRODUCTS | THEA LLOYD | 610 RAHWAY AVE | | | UNION | NJ | 07083 | |
| AMERICHEM INC | BRIAN KANNEL | 155 E STEEL CORNERS RD | | | CUYAHOGA FALLS | OH | 44224 | |
| AMES | MIKE CARMAN | CTRA LAUREA MIRO 388 | | | SAINT FELIU DE LLOBREGAT | | 8980 | SPAIN |
| AMES REESE | MIKE CARMAN | 2575 OLD PHILADELPHIA PK | | | BIRD IN HAND | PA | 17505 | |
| AMES RUBBER CORPORATION | MARYANN THOMAS | 19 AMES BLVD | | | HAMBURG | NJ | 07419 | |
| AMG INDUSTRIES INC % CT CHARLTON & | W JASON WEST | 24000 GREATER MACK AVE | | | ST CLAIR SHORES | MI | 48080 | |
| AMGOM SRL | BUYER ONLY HAS EMAIL NO NAME OR PHONE NO | FRAZIONE MASIO 94 | | | POIRINO TO | | 10046 | ITALY |
| AMI INDUSTRIES INC | RYAN THORPE | 5093 RED OAK RD | | | LEWISTON | MI | 49756 | |
| AMTEC PRECISION PRODUCTS | ANDREW HAIN | 1875 HOLMES RD | | | ELGIN | IL | 60123 | |
| ANDERSON COOK INC | ANDERSON COOK INC | 44785 MACOMB INDUSTRIAL DR | | | CLINTON TOWNSHIP | MI | 48036-1147 | |
| ANDERSON COOK INC | CRAIG EVERLOVE | 44785 MACOMB INDUSTRIAL DR | | | CLINTON TOWNSHIP | MI | 48036-1147 | |
| ANDROID INDUSTRIES KY LLC | | | | | | | | |
| ANGELO GORDON & CO | LEIGH WALZER | 245 PARK AVENUE | 26TH FLOOR | | NEW YORK | NY | 10167 | |
| ANN ARBOR MACHINE CO | BRUCE SWART | 5800 SIBLEY RD | | | CHELSEA | MI | 48118-1262 | |
| APPLIED INDUSTRIAL TECHNOLOGY | JASON VASQUEZ | 1150 N OUTER DR | | | SAGINAW | MI | 48601 | |
| APPLIED PROCESS INC EFT | STEVE HILL | 12238 NEWBURGH RD | | | LIVONIA | MI | 48150 | |
| APS CLEARING INC | ANDY LEINHOFF MATTHEW HAMILTON | 1301 S CAPITAL OF TEXAS HIGHWAY | SUITE B 220 | | AUSTIN | TX | 78746 | |
| ARCTIC CAT INC | JACK ROSENBLAD SALES MANAGER M&M KNOPF | 601 BROOKS AVENUE SOUTH | | | THIEF RIVER FALL | MN | 56701 | |
| ARGOMM SPA | ANDRA GUALINI | VIA CAMOZZI 22 | | | VILLONGO ITA | | 24060 | ITALY |
| ARGOMM SPA | ANDRA GUALINI | VIA CAMOZZI 22 | | | VILLONGO | | 24060 | ITALY |
| ARGUS SERVICE CORPORATION | C CLAUDIA | PO BOX 130 | | | CHESTERFIELD | MI | 48047-0130 | |
| ARIES ENGINEERING CO INC | TODD BRIESCHKE | 130 ARIES DR | | | DUNDEE | MI | 48131-9694 | |
| ARK LES CORP | MARTIN FOXWORTHY | 3400 YOUNKERS RD | | | RALEIGH | NC | 27604 | |
| ARKEMA INC | SABINE FLEMING | 2000 MARKET ST | | | PHILADELPHIA | PA | 19103 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| ARNOLD CENTER INC | MIKE SHEA | 400 WEXFORD AVE | | | MIDLAND | MI | 48640 | |
| ARNOLD CENTER THE | KAREN NOGASKI | 400 WEXFORD | | | MIDLAND | MI | 48640 | |
| ARNOLD TOOL & DIE CO | THOM MCKAY | 48200 STRUCTURAL DRIVE | | | CHESTERFIELD | MI | 48051 | |
| ARNOLD TOOL & DIE CO | THOM MCKAY | 48200 STRUCTURAL DRIVE | | | CHESTERFIELD | MI | 48051 | |
| ASC INC COTTAGE | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| ASC INCORPORATED | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| ASHLAND DISTRIBUTION | ANDREW J HIER | 5200 BLAZER PKY | | | DUBLIN | OH | 43017 | |
| ASI ASSEMBLY SYSTEMS INNOVATORS | RYAN THORPE | 6285 GARFIELD AVE | | | CASS CITY | MI | 48726 | |
| ASI ASSEMBLY SYSTEMS INNOVATORS | RYAN THORPE | 6285 GARFIELD AVE | | | CASS CITY | MI | 48726 | |
| ASIA FORGING SUPPLY CO LTD | STEVE FRITTS | B1 207 SECTION 3 BEISHIN RD | | | SHINDIAN CITY | | 231 | TAIWAN |
| ASSOCIATED SPRING%BARNES GROUP | STEPHEN BROOKS | 15150 CLEAT ST | | | PLYMOUTH | MI | 48170 | |
| ATF DESIGN SERVICES | | 3913 PINE RD | | | CARO | MI | 48723 | |
| ATG PRECISON PRODUCTS | FRANK BACHELDOR | 7545 N HAGGERTY RD | | | CANTON | MI | 48187 | |
| ATG PRECISON PRODUCTS | FRANK BACHELDOR | 7545 N HAGGERTY RD | | | CANTON | MI | 48187 | |
| ATHENA PROTECTIVE COATINGS INC | LORRAINE LOVELL | 2695 SLOUGH ST | | | MISSISSAUGA | ON | L4T 1G2 | CANADA |
| ATHENS STATE COLLEGE INC | ATHENS STATE COLLEGE INC | 300 N BEATY ST | | | ATHENS | AL | 35611-1902 | |
| ATLAS PRESSED METALS | JUDE PFINGSTER | 125 TOM MIX DR | | | DUBOIS | PA | 15801 | |
| ATMOSPHERE ANNEALING INC | CRAIG BRIGGS | 1801 BASSETT ST | | | LANSING | MI | 48915 | |
| ATMOSPHERE HEAT TREATING INC | JIM HAASE | 30760 CENTURY DRIVE | | | WIXOM | MI | 48393 | |
| ATS AUTOMATION (SHANGHAI) CO LTD | CAVLIN CHUA | JINQIAO EXPORT PROCESSING ZONE | | | SHANGHAI | 020 | 201201 | CN |
| ATS AUTOMATION TOOLING SYSTEMS INC | DOUG OLER | 250 ROYAL OAK RD | | | CAMBRIDGE | ON | N3H 4R6 | CA |
| ATTENTIVE INDUSTRIES INC | JOHN LORD | 502 KELSO | | | FLINT | MI | 48506 | |
| ATTENTIVE INDUSTRIES INC | JOHN LORD | 502 KELSO | | | FLINT | MI | 48506 | |
| AUBECQ SOFEDIT | SANDRINE SAGOT | 1 RUE EDISON BP 605 | | | SAINT QUENTIN YVELINES | | 78280 | FRANCE |
| AUMA TEC SA DE CV | OSCAR HERRERA | CALLE 2 NO 35 FRACC IND BENITO | | | QUERETARO QA | | 76120 | MEXICO |
| AUSTIN TUBE PRODUCTS INC | DUANE OVERBEEK | 5629 S FORMAN RD PO BOX 1120 | | | BALDWIN | MI | 49304 | |
| AUTO CON CORP | BILL SCHEPKE | 18901 FIFTEEN MILE RD | | | CLINTON TOWNSHIP | MI | 48035 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| AUTOCAR LLC | | PO BOX 190 | 551 S WASHINGTON ST | | HAGERSTOWN | IN | 47346 | |
| AUTOMATED DEBURRING DIV PARTS FINIS | MIKE WESSELS | 13251 STEPHENS DR | | | WARREN | MI | 48089 | |
| AUTOMATIC PRESS | SUPPLIER CLOSED **EMAIL DALE 10 24 | 402 N GLASPIE PO BOX 106 | | | OXFORD | MI | 48371 | |
| AUTOMATIC PRESS | SUPPLIER CLOSED **EMAIL DALE 10 24 HE IS OUT OF TOWN UNTIL 11 5 | 402 N GLASPIE PO BOX 106 | | | OXFORD | MI | 48371 | |
| AUTOMATIC SPRING PRODUCTS CORP | MATT VALLIERE | 803 TAYLOR ST | | | GRAND HAVEN | MI | 49417 | |
| AUTOMATIC SPRING PRODUCTS CORP | PAT DESHAW | 803 TAYLOR ST | | | GRAND HAVEN | MI | 49417 | |
| AUTOMOTIVE ADIVISORY PARTNERS | BILL ZIELKE | 199 PIERCE ST STE 202 | | | BIRMINGHAM | MI | 48009 | |
| AUTOMOTIVE PRODUCTS | HERB MORRISON FINANCE AND LOGISTICS | | | | OLD WESTBURY | NY | 11568-0153 | |
| AVERY DENNISON CO FASTENER DIVISION | NICK PENTESCU | 33228 W 12 MILE RD PMB 326 | | | FARMINGTON HILLS | MI | 48334 | |
| B I TECHNOLOGIES | DAN SPARKS | 4200 BONITA PL | | | FULLERTON | CA | 92835 | |
| B I TECHNOLOGIES | DAN SPARKS | 4200 BONITA PL | | | FULLERTON | CA | 92835 | |
| B&B DESIGN INC | DALE CARLSON | PO BOX 305 | | | GRAND HAVEN | MI | 49417 | |
| BACHMAN TOOL & DIE CO | LEON BACHMAN | 1111 4TH AVE NE PO BOX 189 | | | INDEPENDENCE | IA | 50644 | |
| BAILEY MANUFACTURING COMPANY LLC | JOHN HINES | 10979 BENNETT STATE RD PO 356 | | | FORESTVILLE | NY | 14062 | |
| BAILEY MANUFACTURING COMPANY LLC | JOHN HINES | 10979 BENNETT STATE RD PO 356 | | | FORESTVILLE | NY | 14062 | |
| BALDOMERO VENTURA SL | ROGER PAPASSEIT | CTRA DE VALLDORIOLF KM 0 245 | | | LA ROCA 08 | | 08430 | SPAIN |
| BASF CORPORATION | MARY LYNN BRIDGE | 1609 BIDDLE AVE | | | WYANDOTTE | MI | 48192 | |
| BATESVILLE TOOL & DIE INC | TIM LAMBERT | 177 SIX PINE RANCH RD | | | BATESVILLE | IN | 47006 | |
| BAY CITY BLUE PRINT & SUPPLY COMPAN | ACCOUNT PAYABLE | 608 COLUMBUS AVE | | | BAY CITY | MI | 48708-6486 | |
| BAY INDUSTRIAL FINISHING INC | DAVE GRZEGURCZKY | 2632 BROADWAY ST | | | BAY CITY | MI | 48708 | |
| BAYTECH INDUSTRIES INC | JOHN BURKE | 820 BRIDGEVIEW N | | | SAGINAW | MI | 48604 | |
| BEI DUNCAN ELECTRONICS | PAUL CAIN | 170 TECHNOLOGY DR | | | IRVINE | CA | 92618 | |
| BEKAERT CORP EFT | PAT POLING | E PINE & LAKE STS PO BOX 608 | | | ORRVILLE | OH | 44667 | |
| BELL ENGINEERING EFT | KEN BESS | 735 SOUTH OUTER DR | | | SAGINAW | MI | 48601 | |
| BELTLINE ELECTRIC MOTOR REPAIR INC | BELTLINE ELECTRIC MOTOR REPAIR INC | 520 OLD TRINITY LN | | | DECATUR | AL | 35601 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| BENCHMARK INC | LAURA MARTIN | 4660 13TH ST | | | WYANDOTTE | MI | 48192 | |
| BEND ALL AUTOMOTIVE | ALFRED NAPOLITANO | 115 WANLESS CT | | | AYR | ON | N0B 1E0 | CANADA |
| BENTELER AUTOMOTIVE CORP | MIKE STAVER BUYER | VENDOR 700217 | 1780 POND RUN | | AUBURN HILLS | MI | 48326 | |
| BERGQUIST COMPANY THE | CHRISTOPHER GREINER | 18930 W 78TH ST | | | CHANHASSEN | MN | 55317 | |
| BERKSHIRE PARTNERS | JEANINE NEUMANN | ONE BOSTON PLACE | | | BOSTON | MA | 02108-4401 | |
| BERRY MOORMAN PC | JAMES P MURPHY | 535 GRISWOLD | SUITE 1900 | | DETROIT | MI | 48226 | |
| BHARAT FORGE AMERICA INC | BILL HELLER | 2807 S MARTIN L KING BLVD | | | LANSING | MI | 48910 | |
| BICAR SA DE CV | BENJAMIN HERNANDEZ | ALEJANDRINA NO 6 COL LA JOYA | | | TALNEPANTLA EM | | 54160 | MEXICO |
| BILL FORGE PVT LTD | DONALD ULRICH | 9C BOMMASANDRA INDUSTRIAL AREA | | | BANGALORE | | 560099 | INDIA |
| BING METALS GROUP | SAM | 1200 WOODLAND AVE | | | DETROIT | MI | 48211 | |
| BING STEEL INC | JENNIFER SAVOIE | 1500 E EUCLID | | | DETROIT | MI | 48211 | |
| BINGHAM MCHALE LLP | MICHAEL J ALERDING | 10 WEST MARKET STREET | SUITE 2700 | | INDIANAPOLIS | IN | 46204 | |
| BISHOP STEERING TECHNOLOGY INC | | 8802 BASH STREET | SUITE A | | INDIANAPOLIS | IN | 46256 | |
| BISHOP STEERING TECHNOLOGY INC | | 8802 BASH STREET | SUITE A | | INDIANAPOLIS | IN | 46256 | |
| BISHOP STEERING TECHNOLOGY INC | | PO BOX 50190 | | | INDIANAPOLIS | IN | 46250-6910 | |
| BISHOP STEERING TECHNOLOGY INC | | PO BOX 501910 | | | INDIANAPOLIS | IN | 46250-6910 | |
| BISHOP STEERING TECHNOLOGY INC | | 8802 BASH ST STE A PO 501910 | | | INDIANAPOLIS | IN | 46256 | |
| BLACK RIVER MANUFACTURING | JOE JUKOMSKI | 2625 TWENTIETH ST | | | PORT HURON | MI | 48060 | |
| BLISSFIELD MANUFACTURING EFT | DAN SIKKENGA | 626 DEPOT ST | | | BLISSFIELD | MI | 49228 | |
| BLUE WATER AUTOMOTIVE SYSTEMS INC | MARY ELEN JOHNSON | 1515 BUSHA HWY | | | MARYSVILLE | MI | 48040 | |
| BMB STEERING INNOVATION GMBH | DAVID JAMES | BARBARASTR 30 | | | SCHOENEBECK SA | | 39218 | GERMANY |
| BMW TECHNIK GMBH | | HANAUER STRASSE 46 | | | MUNCHEN | | D-80992 | GERMANY |
| BMW TECHNIK GMBH | | | | | MUNCHEN | | D 80788 | GERMANY |
| BNL USA INC | ANDREW RICHARDS | 56 LEONARD ST | | | FOXBORO | MA | 2035 | |
| BNL USA INC | ANDREW RICHARDS | 56 LEONARD ST | | | FOXBORO | MA | 02035 | |
| BODYCOTE THERMAL PROCESSING | SCOTT WERNER | 8468 RONDA DRIVE | | | CANTON | MI | 48187 | |
| BORAMCO INC | MIKE SLISHER | 104 INDUSTRIAL PARK DR BOX 6 | | | WALKERTON | IN | 46574 | |
| BOSCH CORP ROBERT | GREG KUBINSKI | 38000 HILLS TECH DR | | | FARMINGTON HILLS | MI | 48018 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| BOSCH CORP ROBERT | GREG KUBINSKI | 38000 HILLS TECH DR | | | FARMINGTON HILLS | MI | 48018 | |
| BOURNS | KEVIN TIMMERMAN | 1200 COLUMBIA AVE | | | RIVERSIDE | CA | 92507 | |
| BRAZING CONCEPTS LLC | JASON TELL | 94 CONCEPT DR | | | COLDWATER | MI | 49036 | |
| BRC RUBBER GROUP INC | PHIL MEYERS | 589 S MAIN ST PO BOX 227 | | | CHURUBUSCO | IN | 46723 | |
| BREHM PRAEZISIONSTECHNIK GMBH & CO | | BOSCHSTR 1 | | | ULM | BW | 89079 | DE |
| BREHM PRAZISIONSTECHNIK GMBH & CO K | THOMAS BREHM | 1133 E MAPLE RD STE 201 | | | TROY | MI | 48083 | |
| BREHM PRAZISIONSTECHNIK GMBH & CO K | THOMAS BREHM | 1133 E MAPLE RD STE 201 | | | TROY | MI | 48083 | |
| BREMEN BEARINGS INC | JEFF GODFREY | 2928 GARY DR | | | PLYMOUTH | IN | 46506 | |
| BRIGHTON TOOL & DIE CO EFT | TIM BARNES | 735 N 2ND ST | | | BRIGHTON | MI | 48116 | |
| BRIGHTON TOOL & DIE CO EFT | TIM BARNES | 735 N 2ND ST | | | BRIGHTON | MI | 48116 | |
| BROENS INDUSTRIES PTY LTD | STUART CORBETT | 20 WILLIAMSON RD | | | INGLEBURN | NS | 2565 | AU |
| BROWN DOUG PACKAGING PRODUCTS INC | | 4223 EDGELAND AVE | | | ROYAL OAK | MI | 48073 | |
| BROWN DOUG PACKAGING PRODUCTS INC | KIM CRUM | 4223 EDGELAND AVE | | | ROYAL OAK | MI | 48073 | |
| BROWN RUDNICK BERLACK ISRAELS LLP | ROBERT J STARK | SEVEN TIMES SQUARE | | | NEW YORK | NY | 10036 | |
| BRUEL & KJAER NORTH AMERICA INC | | 2815 COLONNADES CT STE A | | | NORCROSS | GA | 30071 | |
| BUCK COMPANY INC | TOM PALLAN | 897 LANCASTER PIKE | | | QUARRYVILLE | PA | 17566 | |
| BUCK COMPANY INC | TOM PALLAN | 897 LANCASTER PIKE | | | QUARRYVILLE | PA | 17566 | |
| BUCKEYE CUSTOM PRODUCTS INC | | 1085 DEARBORN DRIVE | | | COLUMBUS | OH | 43085 | |
| BUEHLER MOTORS INC | DARRYL PARISH | 175 SOUTHPORT DR STE 900 | | | MORRISVILLE | NC | 27560 | |
| BUEHLER MOTORS INC | DARRYL PARISH | 175 SOUTHPORT DR STE 900 | | | MORRISVILLE | NC | 27560 | |
| BULTEN AUTOMOTIVE GMBH | JULIO HAS NOT RESPONDED | INDUSTRIESTRASSE 20 | | | BERGKAMEN NW | | 59192 | GERMANY |
| BURKLAND TEXTRON INC | MIKE SALGAT | 6520 S STATE RD | | | GOODRICH | MI | 48438 | |
| BURKLAND TEXTRON INC | MIKE SALGAT | 6520 S STATE RD | | | GOODRICH | MI | 48438 | |
| BURR OAK TOOL & GAUGE CO | DAVID C CLARK | PO BOX 338 | | | STURGIS | MI | 49091-0338 | |
| C & N MANUFACTURING INC | | 33722 JAMES J POMPO DR | | | FRASER | MI | 48026-1645 | |
| C S BUSINESS SYSTEMS INC | | PO BOX 1122 | | | BUFFALO | NY | 14240-1122 | |
| CADPO INC | | 1490 W 121ST AVENUE | SUITE 201 | | WESTMINSTER | CO | 80234 | |
| CADVENTURE INC | | 38883 HODGSON ROAD | | | WILLOUGHBY | OH | 44094 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CAGE WILLIAMS & ABELMAN PC | STEVEN E ABELMAN | 1433 SEVENTEENTH STREET | | | DENVER | CO | 80202 | |
| CALEDON TUBING | SCOTT VANROOY | 580 JAMES ST S PO BOX 3249 | | | ST MARYS | ON | N4X 1A8 | CANADA |
| CALINOFF & KATZ LLP | DOROTHY H MARINIS RIGGIO | 140 EAST 45TH STREET | 17TH FLOOR | | NEW YORK | NY | 10017 | |
| CAMBRON ENGINEERING | BASIL HALL | 3800 EAST WILDER RD | | | BAY CITY | MI | 48706-2126 | |
| CAMCAR DIVISION OF TEXTRON CANADA | CHRIS VANHEUSDEN | 87 DISCO RD | | | REXDALE | ON | M9W 1M3 | CANADA |
| CAMCAR LLC BELVIDERE OPS | CHRIS VANHEUSDEN | 826 E MADISON ST | | | BELVIDERE | IL | 61008 | |
| CAMCAR LLC BELVIDERE OPS | CHRIS VANHEUSDEN | 826 E MADISON ST | | | BELVIDERE | IL | 61008 | |
| CAMCAR LLC DECORAH OPS | CHRIS VANHEUSDEN | 1302 KERR DR | | | DECORAH | IA | 52101 | |
| CAMCAR LLC ROCHESTER OPS | CHRIS VANHEUSDEN | 4366 OLD US HWY 31 N | | | ROCHESTER | IN | 46975 | |
| CAMCAR LLC SPENCER OPS | CHRIS VANHEUSDEN | 502 INDUSTRY DR PO BOX 856 | | | SPENCER | TN | 38585 | |
| CAMCAR LLC WYTHEVILLE OPS | CHRIS VANHEUSDEN | 345 E MARSHALL ST | | | WYTHEVILLE | VA | 24382 | |
| CAMCAR TEXTRON DE MEXICO | CHRIS VANHEUSDEN | AV ATENEA 101 EDIFICIO 12 | | | SANTA CATARINA NL | | 66350 | MEXICO |
| CAMI AUTOMOTIVE INC SERVICE | BARRY MOMNEY PURCHASING BUYER | PO BOX 1005 | | | INGERSOLL | ON | N5C 4A6 | CANADA |
| CANON USA INC | | 1 CANON PLZ | | | NEW HYDE PARK | NY | 11042-1119 | |
| CAOUTCHOUCS MODERNES | DIDIER GAILLARD | 9 RUE DE L'EPINOY | | | GAMACHES FR | | 80220 | FRANCE |
| CAPLUGS LLC | BEV HARTEN | 2150 ELMWOOD AVE | | | BUFFALO | NY | 14207 | |
| CAPLUGS LLC | GORDY HALMHUBER | 2150 ELMWOOD AVE | | | BUFFALO | NY | 14207 | |
| CAPSONIC AUTOMOTIVE INC | SETH GUTKOWSKI | 3121 UNIVERSITY DR STE 120 | | | AUBURN HILLS | MI | 48326 | |
| CAPSONIC AUTOMOTIVE INC | SETH GUTKOWSKI | 3121 UNIVERSITY DR STE 120 | | | AUBURN HILLS | MI | 48326 | |
| CAPSTAN ATLANTIC | CHRIS GAULIN | 10 CUSHING DR | | | WRENTHAM | MA | 2093 | |
| CAPSTAN ATLANTIC | CHRIS GAULIN | 10 CUSHING DR | | | WRENTHAM | MA | 02093 | |
| CAPTIVA PACKAGING INC | | 1253 S WATER ST | | | SAGINAW | MI | 48601-2560 | |
| CAPTIVA PACKAGING INC | KEN FISCHER | 1253 S WATER ST | | | SAGINAW | MI | 48601-2560 | |
| CARAUSTAR INDUSTRIES | BOB ISAACS | 1301 S WHEELER ST | | | SAGINAW | MI | 48602 | |
| CARAVAN KNIGHT FACILITIES MGMT LLC | BRANDON J BORDEAUX | 304 S NIAGARA ST | | | SAGINAW | MI | 48602 | |
| CARDANES SA DE CV | FERNANDO YAQEZ | ACCESO III NO 3 FI BENITO JUAR | | | QUERETARO QRO | | 76120 | MEXICO |
| CARDINAL MACHINE CO | BRIAN PENNINGTON | 860 TACOMA CT | | | CLIO | MI | 48420 | |
| CARLTON BATES | DAVID KANIECKI | 1530 GOODYEAR DR STE A | | | EL PASO | TX | 79936 | |
| CARLYLE GROUP | MICHAEL STEWART | 520 MADISON AVE NO 41 | | | NEW YORK | NY | 10022 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| CARPENTER TECHNOLOGY CORP | MIKE HARRIS | 101 W BERN ST PO BOX 14662 | | | READING | PA | 19612 | |
| CARPENTER TECHNOLOGY CORP | MIKE HARRIS | 101 W BERN ST PO BOX 14662 | | | READING | PA | 19612 | |
| CARPLASTIC SA DE CV | | PARQUE INDUSTRIAL MONTERREY | | | APODACA | NUEVO LEON | 66600 | MEX |
| CASTELLON S A | LUIS MIGUEL BARBA | CALLE HIERRO NO 1 | | | TORREJON DEARDOZ MADRID | | 28850 | SPAIN |
| CASTROL INDUSTRIAL NORTH AMERICA | BRIAN STOPYAK | 150 W WARRENVILLE RD | | | NAPERVILLE | IL | 60563 | |
| CASTWELL PRODUCTS | RICH RATKA | 7800 N AUSTIN AVE | | | SKOKIE | IL | 60077 | |
| CASTWELL PRODUCTS | RICH RATKA | 7800 N AUSTIN AVE | | | SKOKIE | IL | 60077 | |
| CECH CORP | HLDE MCDONALD | 3984 W CABARET TRL W | | | SAGINAW | MI | 48603-2250 | |
| CENTENNIAL TECHNOLOGIES INC | JOE HAMMIS | 1335 AGRICOLA RD | | | SAGINAW | MI | 48604-9702 | |
| CENTERBRIDGE | STEPHEN GIRSKY | 375 PARK AVE 12TH FL | | | NEW YORK | NY | 10152 | |
| CENTERLESS REBUILDERS INC | CRAIG WASHINSKI | PO BOX 480549 | | | NEW HAVEN | MI | 48048 | |
| CENTRAL SPRING INC | NAJEEB | 39159 PASEO PADRE PKY STE 311 | | | FREEMONT | CA | 94538 | |
| CENTRAL SPRING INC | NAJEEB | 39159 PASEO PADRE PKY STE 311 | | | FREEMONT | CA | 94538 | |
| CENTRAL WAREHOUSE CO | PATRICK RIFFEL | 2027 RUST AVE | | | SAGINAW | MI | 48601 | |
| CENTRAL WAREHOUSE CO EFT | TOM MEYER | 1825 RUST AVE | | | SAGINAW | MI | 48601 | |
| CERBERUS CAPITAL MANAGEMENT | DEV KAPADIA | 299 PARK AVE FL 22 | | | NEW YORK | NY | 10171 | |
| CHAMBER OF COMMERCE | TOWNSHIP OF BUENA VISTA | 3380 MACK ROAD | | | SAGINAW | MI | 48601 | |
| CHARLES ARENT | DIMENSION MACHINE | 24750 21 MILE RD | | | MACOMB | MI | 48042 | |
| CHICAGO RAWHIDE SKF USA INC | PATRICK WILCOX | 46815 PORT ST | | | PLYMOUTH | MI | 48170 | |
| CHICAGO RAWHIDE SKF USA INC | PATRICK WILCOX | 46815 PORT ST | | | PLYMOUTH | MI | 48170 | |
| CHIEF EXECUTIVE OFFICER | | DHB COMPONENTES AUTOMOTIVOS SA | AVENIDA DAS INDUSTRIAS NO 864 | | PORTO | ALEGRE | | RS-BRAZIL |
| CHINA AERO TECHNOLOGY IMPORT AND EXPORT BEIJING COMPANY | ATTN MR LI JIANCHENG | 67 JIAO NAN ST | PO BOX 33 16 | | BEIJING | | | CHINA |
| CHINA AUTOMOTIVE SYSTEMS INC | HENGLONG BLD | HUARZHONG SOFTWARE PARK | GUANSHAN 1ST ROAD | | WUHAN CITY | HUBEI PROVINCE | | CHINA |
| CHINA AUTOMOTIVE SYSTEMS INC | HENGLONG BLD | HUARZHONG SOFTWARE PARK | GUANSHAN 1ST ROAD | | WUHAN CITY | HUBEI PROVINCE | | CHINA |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| CHIRON AMERICA INC | CRIS TAYLOR | 10950 WITHERS COVE PARK DR | | | CHARLOTTE | NC | 28278 | |
| CIE CELAYA SA DE CV | JAMIE AGUIRRE | AV NORTE 4 CUATRO 100 | | | CELAYA GJ | CO | 38010 | MEXICO |
| CIE CELAYA SA DE CV | JAMIE AGUIRRE | AV NORTE 4 CUATRO 100 | | | CELAYA GJ | | 38010 | MEXICO |
| CIE MECAUTO | JAIME AGUIRRE | CALLE MENDIGORRITXU 140 | | | VITORIA GASTEIZ 01 | | 01010 | SPAIN |
| CIKAUTXO S COOP | OLGA AGUIRRE | B MAGDALENA 2B | | | BERRIATUA | | 48710 | SPAIN |
| CIRTEQ LTD | STEVE BARRETT | COLNE ROAD GLUSBURN | | | KEIGHLEY YW ENGLAND | | BD20 BQP | ENGLAND |
| CITY OF SAGINAW | CITY CLERKS OFFICE | 1315 SOUTH WASHINGTON AVE | | | SAGINAW | MI | 48601 | |
| CLARION SINTERED METALS INC EFT | MICHAEL J NEDZINSKI | MONTMORENCI RD PO BOX S | | | RIDGEWAY | PA | 15853 | |
| CLARION SINTERED METALS INC EFT | MICHAEL J NEDZINSKI | MONTMORENCI RD PO BOX S | | | RIDGEWAY | PA | 15853 | |
| CLAUDEM | STEVE BARRETT | ZONE INDUSTRIELLE DU TONNELIER | | | BOUTIGNY PROUAIS FR | | 28410 | FRANCE |
| CLEVELAND DIE & MFG CO | DAVE GEORGE | 20303 1ST AVE | | | MIDDLEBURG HEIGHTS | OH | 44130 | |
| CLEVELAND MANUFACTURING DIV | PAT SMITH | 1265 W 65TH ST | | | CLEVELAND | OH | 44102 | |
| CM DE QUERETARO S DE RL MI | JULIO HAS NOT RESPONDED | CALLE 2 129 NAVE 16 ZONA IND | | | QUERETARO QA | | 76100 | MEXICO |
| CNH INDUSTRIAL SA DE CV | | ZONA INDUSTRIAL BENITO JUAREZ | | | QUERETARO | QRO | 76130 | MEX |
| COHEN WEISS & SIMON | BRUCE SIMON | 330 W 42ND STREET | | | NEW YORK | NY | 10036 | |
| COLBERT & WINSTEAD PC | AMY WOOD MALONE | 1812 BROADWAY | | | NASHVILLE | TN | 37203 | |
| COLD HEADING COMPANY THE | RICHARD BENIGNI | 21777 HOOVER ROAD | | | WARREN | MI | 48089 | |
| COLD HEADING COMPANY THE | RICHARD BENIGNI | 21777 HOOVER ROAD | | | WARREN | MI | 48089 | |
| COLFOR MANUFACTURING INC | DAVE BUSH | 3255 ALLIANCE RD NW | | | MALVERN | OH | 44644 | |
| COLFOR MANUFACTURING INC | DAVE BUSH | 3255 ALLIANCE RD NW | | | MALVERN | OH | 44644 | |
| COLLINS & AIKMAN | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| COLUMBIA INDUSTRIAL SALES CORP | MARK BUELTEL | 2501 THUNDERHAWK COURT | | | DAYTON | OH | 45414 | |
| COLUMBIA INDUSTRIAL SALES CORP | MARK BUELTEL | 2501 THUNDERHAWK COURT | | | DAYTON | OH | 45414 | |
| COLUMBIA MARKING TOOLS INC | | 27430 LUCKINO DR | | | CHESTERFIELD | MI | 48047 | |
| COMBINED VEHICLE TECHNOLOGIES INC | | 447 EAST ELMWOOD | | | TROY | MI | 48083 | |
| COMMERCIAL EQUIPMENT CO INC | SUE BARBEAN | 3160 CABARET TRL S | | | SAGINAW | MI | 48603-2202 | |
| COMMERCIAL STEEL TREATING CORP | JOE BONFOEY | 31440 STEPHENSON HWY | | | MADISON HEIGHTS | MI | 48071 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| COMMERCIAL TOOL & DIE INC | RICK BURKE | 5351 RUSCHE DR NW | | | COMSTOCK PARK | MI | 49321 | |
| COMPONENTES DE AUTOMOCION RECYTEC | | PG IND GOJAIN C SAN BARTOLOME 15 | | | LEGUTIANO | 01 | 01170 | ES |
| COMPONENTES Y CONJUNTOS SA | ISIDRO ALFONSO | POL IND GUARNIZO 43 | | | EL ASTILLERO CANTABRIA | | 39671 | SPAIN |
| COMPUTER ASSET MANAGEMENT CORP | | PO BOX 111 | | | LAKELAND | MI | 48143 | |
| CONSUMERS POWER COMPANY | | 212 WEST MICHIGAN AVENUE | | | JACKSON | MICHIGAN | | |
| CONTECH DIV OF SPX | GEORGE A MCDOUGALL | PO BOX 1706 | | | E LANSING | MI | 48823 | |
| CONTECH DIV OF SPX | GEORGE A MCDOUGALL | PO BOX 1706 | | | E LANSING | MI | 48823 | |
| COOLIDGE WALL WOMSLEY & LOMBARD CO LPA | STEVEN M WACHSTEIN | 33 WEST FIRST STREET | SUITE 600 | | DAYTON | OH | 45402 | |
| COOLIDGE WALL WOMSLEY & LOMBARD CO LPA | SYLVIE J DERRIEN | 33 WEST FIRST STREET | SUITE 600 | | DAYTON | OH | 45402 | |
| COOPER STANDARD AUTOMOTIVE | TODD KAY | 2650 OPDYKE RD PO BOX 217009 | | | AUBURN HILLS | MI | 48321 | |
| COORDINATE MEASUREMENT SPECIALISTS | KATHY DAVIS | 46425 PEARY CT | | | NOVI | MI | 48377 | |
| CORPORATE WAREHOUSE SERVICES | JENNIFER GILLOTT | 2301 COMMERCE DR | | | DECATUR | AL | 35601 | |
| CORPORATE WAREHOUSE SERVICES INC | | 2301 COMMERCE DR | | | DECATUR | AL | 35601 | |
| CORPORATE WAREHOUSE SERVICES INC | CORPORATE WAREHOUSE SERVICES INC | 2301 COMMERCE DR | | | DECATUR | AL | 35601 | |
| COUZENS LANSKY | | 39395 W 12 MILE STE 200 | | | FARMINGTON HILLS | MI | 48331 | |
| COYNE OIL CORP | LYNN GRANGER | 914 W PICKARD RD PO BOX 9 | | | MT PLEASANT | MI | 48804 | |
| CPR III INC | CHARLES RING | 380 SOUTH ST | | | ROCHESTER | MI | 48307 | |
| CREFORM CORPORATION | | PO BOX 830 | | | GREER | SC | 29651 | |
| CROWN AUTOMOTIVE SALES CO INC | | POBOX 607 | | | MARSHFIELD | MA | 02050-0607 | |
| CROWN GROUP INC THE | RICK RINGLE | 133 DAVIS STREET | | | PORTLAND | TN | 37148 | |
| CSM MANUFACTURING CORP%T BARR SALES | DON LINDSEY | 29600 NORTHWESTERN PO BOX 2106 | | | SOUTHFIELD | MI | 48037 | |
| CSM MANUFACTURING CORP%T BARR SALES | DON LINDSEY | 29600 NORTHWESTERN PO BOX 2106 | | | SOUTHFIELD | MI | 48037 | |
| CSX TRANSPORTATION | | 500 WATER STREET SC J180 | | | JACKSONVILLE | FL | 32202-4467 | |
| CURTIS MALLET PREVOST COLT & MOSLE LLP | ANDREW M THAU | 101 PARK AVENUE | | | NEW YORK | NY | 10178-0061 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| CURTIS MALLET PREVOST COLT & MOSLE LLP | DAVID S KARP | 101 PARK AVENUE | | | NEW YORK | NY | 10178-0061 | |
| CURTIS MALLET PREVOST COLT & MOSLE LLP | STEVEN J REISMAN | 101 PARK AVENUE | | | NEW YORK | NY | 10178-0061 | |
| CURTIS METAL FINISHING | BRIAN P LOWRY | 6645 SIMS DR | | | STERLING HTS | MI | 48313 | |
| D & D DESIGN ALABAMA INC | | 3113 IVY AVE SW STE D | | | HUNTSVILLE | AL | 35805-4698 | |
| D & D DESIGN ALABAMA INC | D & D DESIGN ALABAMA INC | 3113 IVY AVE SW STE D | | | HUNTSVILLE | AL | 35805-4698 | |
| D&D DESIGNS INC | DON DELAY | 920 TACOMA CT | | | CLIO | MI | 48420 | |
| D&R TECHNOLOGY LLC | DAVID HARTLEY | 400 E FULLERTON AVE | | | CAROL STREAM | IL | 60188 | |
| DAERIM MTI CO LTD | TIFFANY FORMSMA | 415 1 BAEKJA RI SOOSIN MYEN | | | CHONAN CHUNGNAM | | 330 881 | KOREA |
| DAEWOO | NICKY KWANG | 3000 TOWN CENTER STE 407 | | | SOUTHFIELD | MI | 48075 | |
| DAILMER CHRYSLER AG | | 1000 CHRYSLER DRIVE | | | AUBURN HILLS | MI | 48326 | |
| DAIMLER CHRYSLER CORP 82042 | LISA CLARK BUYER HALFSHAFTS CHRIS KNOLL BUYER HPS RICHARD STAUDER BUYER MOPAR PROCUREMENT | PO BOX 537927 | | | LIVONIA | MI | 48153 | |
| DAIMLERCHRYSLER AG CENTER FAHRWERK | JEAN C LYNN | MERCEDESSTRASSE 1 | | | HAMBURG HH | | 21079 | GERMANY |
| DAIMLERCHRYSLER CORPORATION | KIM KOLB | CIMS 485 13 32 | 1000 CHRYSLER DRIVE | | AUBURN HILLS | MI | 48326-2766 | |
| DAJACO INC EFT | GEORGE WITTBRODT | 49715 LEONA DR | | | CHESTERFIELD | MI | 48051 | |
| DAKKOTA INTEGRATED SYSTEMSLLC | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| DANA CORP | JIM JAMROG | 2651 S 600 E | | | COLUMBIA CITY | IN | 46725 | |
| DANA CORP | MIKE WALKER BUYER | 10000 BUSINESS BLVD | | | DRY RIDGE | KY | 41035 | |
| DANA MODULES | MIKE WALKER BUYER | 4440 NORTH ATLANTIC BLVD | | | AUBURN HILLS | MI | 48326 | |
| DANA MODULES TOLEDO | MIKE WALKER BUYER | 315 MATZINGER ROAD | | | TOLEDO | OH | 43612 | |
| DATAWARE INC | DATAWARE INC | 5153 EXCHANGE DR | | | FLINT | MI | 48507 | |
| DATWYLER RUBBER + PLASTICS INC | MICHAEL HERI | 1790 TECHNOLOGY PL | | | MARION | SC | 29571 | |
| DAVID GUTIERREZ OCAMPO | DAVID GUTIERREZ | CARRETERA A HUIMILPAN 66 | | | VILLA CORREGIDORA QA | | 76920 | MEXICO |
| DAVIS POLK & WARDWELL | DONALD BERNSTEIN BRIAN RESNICK | 450 LEXINGTON AVENUE | | | NEW YORK | NY | 10017 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| DAWLEN CORP EFT | JOE JOHNSON | PO BOX 884 | | | JACKSON | MI | 49204 | |
| DAWLEN CORP EFT | KEVIN CUMMINGS | PO BOX 884 | | | JACKSON | MI | 49204 | |
| DAYCO PRODUCTS INC | DARLENE GRIFFIN | 1955 ENTERPRISE WAY | | | ROCHESTER HILLS | MI | 48309 | |
| DAYCO PRODUCTS INC | DARLENE GRIFFIN PURCHASING BUYER | 3100 MARICAMP ROAD | | | OCALA | FL | 34471 | |
| DAYTON COMPANY INDUSTRIAL REAL ESTATE | ATTENTION MR CRAIG DAYTON | 4860 WEST GERONIMO STREET | | | CHANDLER | ARIZONA | 85226 | |
| DBG | KEVIN PARSONS | 1555 ENTERPRISE RD | | | MISSISSAUGA | ON | L4W 4L4 | CANADA |
| DC MEX SA DE CV | OSCAR ZAMORA | AV ALFREDO DEL MAZO NUM 9 | | | ATIZAPAN | | 52948 | MEXICO |
| DE AMERTEK VEHICLE ELECTRONICS | PAUL FIZOR | 300 WINDSOR DR | | | OAK BROOK | IL | 60523 | |
| DE AMERTEK VEHICLE ELECTRONICS | PAUL FIZOR | 300 WINDSOR DR | | | OAK BROOK | IL | 60523 | |
| DECATUR ATHLETIC CLUB INC | DECATUR ATHLETIC CLUB INC | 219 2ND AVE SE | | | DECATUR | AL | 35601-2307 | |
| DECISIONEERING INC | | 1515 ARAPAHOE ST STE 1311 | | | DENVER | CO | 80202-2113 | |
| DECOLETAJE Y TORNILLERIA SA | XAVIER LLEAL | CTRA BANYOLES FIGUERES KM 2 3 | | | BANYOLES GIRONA | | 17820 | SPAIN |
| DEKALB METAL FINISHING INC | DENNIS FRY | 625 W 15TH PO BOX 70 | | | AUBURN | IN | 46706 | |
| DELL FINANCIAL SERVICES L P | | 14050 SUMMIT DR BUILDING A STE 101 | | | AUSTIN | TX | 78758 | |
| DELPHI AUTOMOTIVE SYSTEMS BRASIL | ROBERTO VALDUGA | AV GOIAS 1860 | | | SAO CAETANO DO SUL SP BRAS | IL | 09550 | |
| DELPHI AUTOMOTIVE SYSTEMS BRASIL | ROBERTO VALDUGA | AV GOIAS 1860 | | | SAO CAETANO DO SUL | | 9550 | BRASIL |
| DELPHI CHASIS SYSTEM | RHONDA FREEMAN | 5820 DELPHI DR | | | TROY | MI | 48098 | |
| DELPHI CORPORATION | | PO BOX 431 | | | WARREN | OH | 44486 | |
| DELPHI CORPORATION | SEAN CORCORAN KAREN CRAFT | 5725 DELPHI DRIVE | | | TROY | MI | 48098 | |
| DELPHI DELCO ELECTRONICS SYSTEMS | WILLIAM FLYNN | 5725 DELPHI DR MS 483400516 | | | TROY | MI | 48098 | |
| DELPHI DELCO ELECTRONICS SYSTEMS | WILLIAM FLYNN | 5725 DELPHI DR MS 483400516 | | | TROY | MI | 48098 | |
| DELPHI E & C SEC | EDMUNDO RODRIGUEZ | 32 CELERITY WAGON | | | EL PASO | TX | 79906 | |
| DELPHI ELECTRONICS SUZHOU CO LTD | EMMA YANG | NO 123 CHANGYANG RD SUSHOU IND | | | SUZHOU JIANGSU | | 215216 | CHINA |
| DELPHI ENERGY AND ENGINE MGT SYS | RHONDA FREEMAN | 5820 DELPHI DR | | | TROY | MI | 48098 | |
| DELPHI FRANCE SAGINAW DIV | SUSANA LUMIER | 81 RUE DE LA ROCHELLE | | | STRASBOURG | | 67026 | FRANCE |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| DELPHI INTERIOR & LIGHTING SYSTEMS | | M C 116 250 NORTHWOODS BLVD | | | VANDALIA | OH | 43577 | |
| DELPHI INTERIOR & LIGHTING SYSTEMS | **DALE IS WAITING TO HEAR FROM PLT 6 AND OUT OF OFC TIL 11 5 ELAINE AND TIM Z NO CONTACT | M C 116 250 NORTHWOODS BLVD | | | VANDALIA | OH | 43577 | |
| DELPHI MECHATRONIC SYSTEMS | DIANA SALDMVAR | 5725 DELPHI DR | | | TROY | MI | 48098 | |
| DELPHI PACKARD ELECTRIC SYSTEMS | | 5725 DELPHI DR MC: 483 400 301 | | | TROY | MI | 48098 | |
| DELPHI PACKARD ELECTRIC SYSTEMS | JEAN TURNER | 5725 DELPHI DR MC: 483 400 301 | | | TROY | MI | 48098 | |
| DELPHI POLSKA SP | PAWEL DYKOWSKI | UL TOWAROWA 6 | | | TYCHY | | 43110 | POLAND |
| DELPHI PROD & SERV SOLUTIONS | | 1441 WEST LONG LAKE ROAD | | | TROY | MI | 48098 | |
| DELPHI PROD & SERV SOLUTIONS | | PO BOX 1743 SPARTAN CLOSE | WARWICK | | | WAR WICK SHIRE | CV346ZQ | ENGLAND |
| DELPHI S BANGALORE | M VENKATRAM | PLOT NO 98 A PHASE II KIADE IND | | | BANGALORE | | 562106 | INDIA |
| DELPHI S SAGINAW STEERING SYSTEMS | | PLOT NO 98 A PHASE II KIADE IND | | | BANGALORE | IN | 562106 | IN |
| DEPARTMENT OF JUSTICE | MICHAEL GARCIA | 1 ST. ANDREWS PLAZA | | | NEW YORK | NY | 10007 | |
| DESIGN SOLUTIONS | | OUDE BOSSCHEWEG 11B | 5301 LA ZALTBOMMEL | | | | | THE NETHERLANDS |
| DESIGN SOLUTIONS | | OUDE BOSSCHEWEG 11B | 5301 LA ZALTBOMMEL | | | | | THE NETHERLANDS |
| DESIGNER PLASTICS SALES EFT | DAVID JONES | POST OFFICE BOX 160 | | | ARAB | AL | 35016 | |
| DETROIT HEADING COMPANY | GORDY HALMHUBER | 6421 LYNCH RD | | | DETROIT | MI | 48234 | |
| DETROIT HEADING COMPANY | GORDY HALMHUBER | 6421 LYNCH RD | | | DETROIT | MI | 48234 | |
| DEVRIES INTERNATIONAL INC | MATT ANDERSON | 1645 REYNOLDS AVE | | | IRVINE | CA | 92714 | |
| DEVRIES INTERNATIONAL INC | MATT ANDERSON | 1645 REYNOLDS AVE | | | IRVINE | CA | 92714 | |
| DEWAYNES QUALITY METAL COATINGS | CONLEY SANDERS | 205 N INDUSTRIAL DR | | | LEXINGTON | TN | 39351 | |
| DIAMOND DESIGN & ENGINEERING INC | | 12055 W FREELAND RD | | | FREELAND | MI | 48623 | |
| DIC INTERNATIONAL USA LLC | TONY PIRRO | 500 FRANK W BURR BLVD GLENPT | | | TEANECK | NJ | 07666 | |
| DICONZA LAW PC | GERARD DICONZA ESQ | 630 THIRD AVENUE 7TH FLOOR | | | NEW YORK | NY | 10017 | |
| DIEMAKERS INC EFT | GEORGE NEWTON | 801 SECOND ST PO BOX 278 | | | MONROE CITY | MO | 63456 | |
| DIEMAKERS INC EFT | GEORGE NEWTON | 801 SECOND ST PO BOX 278 | | | MONROE CITY | MO | 63456 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| DIMENSION MACHINE TOOL INCORPORATED | | 24750 21 MILE RD | | | MACOMB | MI | 48043 | |
| DIMENSION MACHINE TOOL INCORPORATED DIMENSION MACHINE ENGINEERING LLC | | 24750 21 MILE RD | | | MACOMB | MI | 48042 | |
| DIMENSION MACHINE TOOL INCORPORATED DIMENSION MACHINE ENGINEERING LLC | | 24750 21 MILE RD | | | MACOMB | MI | 48043 | |
| DIVERSIFIED MACHINE INC | RUSS POLLACK | 2280 W GRAND RIVER AVE | | | HOWELL | MI | 48843 | |
| DOBSON INDUSTRIAL INC | ROD COLLIER | PO BOX 1368 | | | BAY CITY | MI | 48706-0368 | |
| DON RUNKLE | DON RUNKLE | 2692 W LONG LAKE RD | | | WEST BLOOMFIELD | MI | 48323 | |
| DONNA R WILSON | C O THOMAS C WIMSATT ATTORNEY FOR PLAINTIFF | CHAKLUS JUNGERHELD HAHN & WASHBURN PC | PO BOX 6128 | | SAGINAW | MI | 48608-6128 | |
| DOOSAN INFRACORE AMERICA CORP | CHARLIE CARLAND | 14900 GALLEON DR | | | PLYMOUTH | MI | 48170 | |
| DOUG BROWN PACKAGING PRODUCTS | RUSS SAGER | 4223 EDGELAND | | | ROYAL OAK | MI | 48073 | |
| DOW CORNING CORP | BOB MUSCH | 2200 W SALZBURG RD PO BOX 994 | | | MIDLAND | MI | 48686 | |
| DRAKE MANUFACTURING SERVICE CO INC | JIM VOSMICK | 4371 N LEAVITT RD NW | | | WARREN | OH | 44485 | |
| DRESCO MACHINE & TOOL CO EFT | PAT MARTIN | 1311 N SHERMAN ST | | | BAY CITY | MI | 48708 | |
| DRIV LOK INC EFT | PATRICK RUETZ | 1140 PARK AVE | | | SYCAMORE | IL | 60178 | |
| DRIV LOK INC EFT | PATRICK RUETZ | 1140 PARK AVE | | | SYCAMORE | IL | 60178 | |
| DRIVELINE SYSTEMS LLC | DON DIGIOVANNI | 6421 MATERIAL AVE | | | LOVES PARK | IL | 61111 | |
| DSM ENGINEERING PLASTICS EFT | KEITH M SIOPES | 2267 W MILL RD PO BOX 3333 | | | EVANSVILLE | IN | 47731 | |
| DSM ENGINEERING PLASTICS INC | | 2267 WEST MILL ROAD | | | EVANSVILLE | INDIANA | 47732 | |
| DSPACE INC | | 28700 CABOT DR STE 1100 | | | NOVI | MI | 48377 | |
| DTR INDUSTRIES INC | DICK BRUMBAUGH | 320 SNIDER RD | | | BLUFFTON | OH | 45817 | |
| DTR INDUSTRIES INC | DICK BRUMBAUGH | 320 SNIDER RD | | | BLUFFTON | OH | 45817 | |
| DUPONT DENEMOURS POLYMERE I | MARCIA BELL | 950 STEPHENSON HWY PO BOX 7013 | | | TROY | MI | 48007 | |
| DUPONT MEXICO SA DE CV | EDGAR DMAZ AMBROSINO | HOMERO 206 PISO 15 CHAPULTEPEC | | | MEXICO CITY DF | | 11570 | MEXICO |
| DURA AUTOMOTIVE SYSTEMS INC | ANDY CHEUNG | 2791 RESEARCH DRIVE | | | ROCHESTER HILLS | MI | 48309 | |
| DURA AUTOMOTIVE SYSTEMS INC | ANDY CHEUNG | 2791 RESEARCH DRIVE | | | ROCHESTER HILLS | MI | 48309 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| DURA AUTOMOTIVE SYSTEMS REICHE GMBH | MARIANNE LEMBFELD | 7 9 16 GASSTR POSTFACH 1849 | | | LAGE NW | | 32777 | GERMANY |
| DYBROOK PRODUCTS INC EFT | TOM FERGUSON | 5232 TOD AVE SW UNIT 23 | | | WARREN | OH | 44481 | |
| DYKEMA GOSSETT PLLC | BRENDAN G BEST ESQ | 39577 WOODWARD AVE STE 300 | | | BLOOMFIELD HILLS | MI | 48304 | |
| DYKEMA GOSSETT PLLC | GREGORY J JORDAN | 10 WACKER | SUITE 2300 | | CHICAGO | IL | 60606 | |
| DYNACAST CANADA | BILL HEILMAN | 330 AVRO ST | | | POINTE-CLAIRE PQ | | H9R 5W5 | CANADA |
| DYNACAST INC | BILL HEILMAN | 25952 COMMERCE CENTER DR | | | LAKE FOREST | CA | 92630 | |
| E M ENGINEERED COATING SOLUTIONS | DALE G JACKS | 14830 23 MILE ROAD | | | SHELBY TOWNSHIP | MI | 48315 | |
| E Z GO DIVISION OF TEXTRON INC | | 1451 MARVIN GRIFFIN RD | | | AUGUSTA | GA | 30906 | |
| EAGLE FASTENER | JOHN SMITH | 2431 PONTIAC RD | | | AUBURN HILLS | MI | 48326 | |
| EATON HYDRAULICS | MISTY PRITCHETT | 14615 LONE OAK RD | | | EDEN PRAIRE | MN | 55344 | |
| ECSI INC | JOHN TIDWELL | 1288 N HIGHWAY 36 | | | CAMERON | TX | 76520-3665 | |
| EFD INDUCTION INC | TOM CROCKER | 31511 DEQUINDRE RD | | | MADISON HEIGHTS | MI | 48071 | |
| ELEANOR BARKER | TENNESSEE VALLEY AUTHORITY | ECONOMIC DEVELOPMENT OCP2A STE 100 | 26 CENTURY BLVD | P O BOX 292409 | NASHVILLE | TN | 37229-2409 | |
| ELECTRONIC DATA SYSTEMS CORP | MICHAEL NEFKENS | 5505 CORPORATE DRIVE MSIA | | | TROY | MI | 48098 | |
| ELECTRONIC DATA SYSTEMS CORPORATION | ELECTRONIC DATA SYSTEMS CORP | US HWY 31 | | | ATHENS | AL | 35611 | |
| ELLIOTT TAPE INC | CRYSTAL MCFADDEN | 1882 POND RUN | | | AUBURN HILLS | MI | 48326 | |
| EMAG HOLDING GMBH | EMAG USA LLC | 38800 GRAND RIVER AVE | | | FARMINGTON HILLS | MI | 48335 | |
| EMC CORP | | PO BOX 9103 | | | HOPKINTON | MA | 01748 | |
| EMI CORP | | 28300 EUCLID AVE | | | WICKLIFFE | OH | 44092 | |
| EMPIRE ELECTRONICS | JOHN TREMBOWICZ | 214 E MAPLE PO BOX 1128 | | | TROY | MI | 48099 | |
| EMPIRE ELECTRONICS | JOHN TREMBOWICZ | 214 E MAPLE PO BOX 1128 | | | TROY | MI | 48099 | |
| ENGINEERED CUSTOM LUBRICANTS | BOB PRIZGINT | 45800 MAST ST | | | PLYMOUTH | MI | 48170 | |
| ENGINEERED SINTERED COMPONENTS | JOHN DANIEL | 250 OLD MURDOCK RD | | | TROUTMAN | NC | 28166 | |
| ENRICAU SA | IVANA GUIGON ILICIC | 50 RUE JACQUES BALMAT BP 405 | | | VOUGY | | 74130 | FRANCE |
| ENRIQUE PACHECO | GLOBAL COMMODITY MANAGER | GENERAL MOTORS CORPORATION | 300 RENASSANCE CENTER | | DETROIT | MI | 48265-3000 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ENVIRONMENTAL PROTECTION AGENCY | ARIEL RIOS BUILDING | 1200 PENNSYLVANIA AVE NW | | | WASHINGTON | DC | 20460 | |
| ENVIRONMENTAL PROTECTION AGENCY | MARCUS C PEACOCK | DEPUTY ADMINISTRATOR | ARIEL RIOS BUILDING | 1200 PENNSYLVANIA AVE NW | WASHINGTON | DC | 20460 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 1 | | 1 CONGRESS ST STE 1100 | | | BOSTON | MA | 02114-2023 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 10 | | 1200 SIXTH AVE | | | SEATTLE | WA | 98101 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 2 | | 290 BROADWAY | | | NEW YORK | NY | 10007-1866 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 3 | | 1650 ARCH ST | | | PHILADELPHIA | PA | 19103-2029 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 4 | ATLANTA FEDERAL CENTER | 61 FORSYTH ST SW | | | ATLANTA | GA | 30303-3104 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 5 | | 77 WEST JACKSON BLVD | | | CHICAGO | IL | 60604-3507 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 6 | FOUNTAIN PLACE 12TH FL STE 1200 | 1445 ROSS AVE | | | DALLAS | TX | 75202-2733 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 7 | | 901 NORTH 5TH ST | | | KANSAS CITY | KS | 66101 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 8 | | 999 18TH ST STE 500 | | | DENVER | CO | 80202-2466 | |
| ENVIRONMENTAL PROTECTION AGENCY REGION 9 | | 75 HAWTHORNE ST | | | SAN FRANSISCO | CA | 94105 | |
| EPA HAZARDOUS SUBSTANCE | SUPERFUND YORK OIL SITE | US EPA REG II SUPERFUND ACCT | PO BOX 360188M | | PITTSBURGH | PA | 15251 | |
| EPA HAZARDOUS SUBSTANCE SF | RELIABLE EQUIPMENT MI | ACCT NO 05297T126A SITE LE | PO BOX 70753 | | CHICAGO | IL | 60673 | |
| EPA HAZARDOUS SUBSTANCE SF RELIABLE EQUIPMENT MI | ACCT NO 05297T126A SITE LE | PO BOX 70753 | | | CHICAGO | IL | 60673 | |
| EPA HAZARDOUS SUBSTANCE SUPERF | C O MELLON BANK | 3 MELLON BANK CTR RM 153 2713 | | | PITTSBURGH | PA | 15259 | |
| EPA HAZARDOUS SUBSTANCE SUPERFUND | | PO BOX 360582M | | | PITTSBURGH | PA | 15251 | |
| EPA HAZARDOUS SUBSTANCE SUPERFUND | US EPA RGN IV SUPERFUND ACCTG | PO BOX 100142 | | | ATLANTA | GA | 30384 | |
| EPA HAZARDOUS SUBSTANCE SUPERFUND EPA REGION III | SUPERFUND ACCTG | PO BOX 360515 | | | PITTSBURGH | PA | 15251 | |
| EPA HAZARDOUS SUBSTANCE SUPERFUND YORK OIL SITE | US EPA REG II SUPERFUND ACCT | PO BOX 360188M | | | PITTSBURGH | PA | 15251 | |
| EPA TRI DATA PROCESSING | | P O BOX 1513 | | | LANTHAM | MD | 20703 | |
| EPIC TECHNICAL GROUP AN ECHLIN AUTO | TODD BAGGETT | 2910 WATERVIEW DR | | | ROCHESTER HILLS | MI | 48309 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ERMETAL OTOMOTIV VE ESVA SANAYI TICARET AS | ATTENTION MR COSKUN UNCULU VICE GN MNG COMMERCIAL | YENI YALOVA YOLU | DEMIRTAS ORGANIZE SANAYI | NILUFER | | BURSA | 16369 | TURKEY |
| ETS LACROIX | CECIL | ZONE SYNERGIE RUE 4EME AVE | | | MEUNG SUR LOIRE 45 | | 45130 | FRANCE |
| EUCLID INDUSTRIES EFT | CARMEN GUELI | 1655 TECH DRIVE | | | BAY CITY | MI | 48706 | |
| EWING MANAGEMENT GROUP | STEVE COLDER | 712 FIFTH AVE FL 31 | | | NEW YORK | NY | 10019 | |
| EXTREME TOOL & ENGINEERING | EXTREME TOOL & ENGINEERING | 999 PRODUCTION DR | | | WAKEFIELD | MI | 49968 | |
| EXTREME TOOL & ENGINEERING | PETE WIELAND | 999 PRODUCTION DR | | | WAKEFIELD | MI | 49968 | |
| EXXON MOBIL | ANDY DONLON | 1400 S HARRISON | | | OLATHE | KS | 66061 | |
| EXXON MOBIL MEXICO SA DE CV | JOSE A LEAL | PONIENTE 146 NO 760 COL IND | | | MEXICO DF | | 02300 | MEXICO |
| F & G MULTISLIDE | DENNIS HUPE | 130 INDUSTRIAL DR PO BOX 39 | | | FRANKLIN | OH | 45005 | |
| F & G MULTISLIDE | DENNIS HUPE | 130 INDUSTRIAL DR PO BOX 39 | | | FRANKLIN | OH | 45005 | |
| FAG BEARING LTD | JILL CSAPO | 801 ONTARIO ST | | | STRATFORD | ON | N5A 6T2 | CANADA |
| FAGEL HABER LLC | GARY E GREEN | 55 EAST MONROE | 40TH FLOOR | | CHICAGO | IL | 60603 | |
| FAISON OFFICE PRODUCTS CO | STEVE GILLOSPIE | 3251 REVERE ST STE 200 | | | AURORA | CO | 80011-1847 | |
| FANUC ROBOTICS AMERICA INC | MICHAEL VANWORMER | 3900 W HAMLIN RD | | | ROCHESTER HILLS | MI | 48309-3253 | |
| FARROW RUSSELL A LTD | DARIO AGNOLIN | 2001 HURON CHURCH RD PO BX 333 | | | WINDSOR | ON | N9A 6L6 | CANADA |
| FAS CONTROLS INC | ANNETTE WHALEY | 1100 AIRPORT RD | | | SHELBY | NC | 28150 | |
| FEDERAL MOGUL CORP | SHIRLEY WAITERS | 9104 ALEX HARVIN HWY | | | SUMMERTON | SC | 29148 | |
| FEDERAL MOGUL CORP ENGINE & TRANS G | SHIRLEY WAITERS | 9104 ALEX HARVIN HWY | | | SUMMERTON | SC | 29148 | |
| FEDERAL MOGUL SYSTEMS PROTECTION GR | MARC SCHUMAKER | 241 WELSHPOOL RD | | | EXTON | PA | 19341 | |
| FEDERAL MOGUL SYSTEMS PROTECTION GR | MARC SCHUMAKER | 241 WELSHPOOL RD | | | EXTON | PA | 19341 | |
| FEDERAL SCREW WORKS | CARMIN BEAN | 20229 9 MILE RD | | | ST CLAIR SHORES | MI | 48080 | |
| FEDERAL SCREW WORKS | JOHN FLANNERY | 20229 9 MILE RD | | | ST CLAIR SHORES | MI | 48080 | |
| FELSS GMBH | MATHIEU REICHARDT | DIESELSTR 2 | | | KOENIGSBACH-STEIN | BW | 75203 | DE |
| FELTERS CORPORATION | JIM CLOW | 1750 E BIG BEAVER RD | | | TROY | MI | 48083 | |
| FERNDALE ELECTRIC CO INC | JOESPH PONTONE | 915 E DRAYTON ST | | | FERNDALE | MI | 48220-1199 | |
| FIAT AUTO SPA | PRODUCT & PROCESS ENGINEERING | INNOVATION & COMPONENTS DEVELOPMENT PROCESSES | CSOL SETTEMBRINI | | | | 40 - 10135 | TORINO |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| FIAT AUTOMOVEIS SA | | CX POSTAL 141 | | | BETIM, MG | | 32530-000 | BRAZIL |
| FIBERFIL ENGINEERED PLASTICS INC | TERRY CHAMLEE | 233 ARVIN AVE | | | STONEY CREEK | ON | L83 2L9 | CANADA |
| FILTERTEK INC | EUGENE ALTWIES | 11411 PRICE RD | | | HEBRON | IL | 60034 | |
| FINE CORPORATION | BOB LIFSEY | 27620 FARMINGTON RD STE 101 | | | FARMINGTON HILLS | MI | 48334 | |
| FINISHING SERVICES | STEVE KLEITCH | 877 ANN ST | | | YPSILANTI | MI | 48197 | |
| FINN POWER USA INC | FINN POWER USA INC | 619 ESTES AVE | | | SCHAUMBURG | IL | 60193-4402 | |
| FIRST INERTIA SWITCH | SUPPLIER CLOSED | G 10386 N HOLLY RD PO BOX 480 | | | GRAND BLANC | MI | 48439 | |
| FISHERCAST GLOBAL | JOE PETRILLO | 710 NEAL DR PO BOX 179 | | | PETERBOROUGH | ON | K9J 6X7 | CANADA |
| FLEX TECHNOLOGIES | MIKE SPRAGGINS | 10524 E GRAND RIVER AVE STE110 | | | BRIGHTON | MI | 48116 | |
| FLEXTRONICS INTERNATIONAL | CARRIE L SCHIFF | 305 INTERLOCKEN PARKWAY | | | BROOMFIELD | CO | 80021 | |
| FLEXTRONICS INTERNATIONAL USA INC | PAUL W ANDERSON | 2090 FORTUNE DRIVE | | | SAN JOSE | CA | 95131 | |
| FLOMERICS INC | | 257 TURNPIKE RD STE 100 | | | SOUTHBOROUGH | MA | 01772 | |
| FLOYD MANUFACTURING CO INC | ALFONSO FLOYD | 105 CLARK DRIVE | | | EAST BERLIN | CT | 06023 | |
| FMT FUTURE MANUFACTURING TECHNOLOGY | WILLIAM MCGAUGHEY | VIA TORINO 77 | | | BOSCONERO | TO | 10080 | IT |
| FOAMADE INDUSTRIES | STEVE BROWN | 2550 AUBURN CT PO BOX 215110 | | | AUBURN HILLS | MI | 48057 | |
| FORD CUSTOMER SERVICE DIVISION | TIFFANY BLEWETT BUYER NA PURCHASING | CHASSIS&HEAVY TRUCK PURCHASING | PO BOX 3000 | | LIVONIA | MI | 48151 | |
| FORD MOTOR CO OF AUSTRALIA LTD | DORIS CHEN PURCHASING MANAGER | PRIVATE MAIL BAG 6 | CAMPBELLFIELD 3061 | | VICTORIA | VIC | | AUSTRALIA |
| FORD MOTOR CO OF CANADA LTD | | PARTS DISTRIBUTION CENTER | 8000 DIXIE RD | | BRAMALEA | ON | L6T2J7 | CANADA |
| FORD MOTOR COMPANY | MATT VOLLMER RYAN HALLER VINCENT TUCKER MATTHEW CUFF JENITA MCCLUE CORE CBG BUYER | ROTUNDA DRIVE AT SOUTHFIELD | PO BOX 1587 B | | DEARBORN | MI | 48121 | |
| FORD MOTOR COMPANY | SALES MANAGER | 1 PROVING GROUND RD | | | YUCCA | AZ | 86438 | |
| FORD MOTOR OF AUSTRALIA PROD | DORIS CHEN PURCHASING MANAGER | CAMPBELLFIELD 3061 | | | VICTORIA | VIC | | AUSTRALIA |
| FORD WERKE | DR JAN TRIBIAHN PURCHASING MANAGER | HENRY FORD STRASSE | SUPPLIER CODE G272A | | 66740 SAARLOUIS | | | GERMANY |
| FORD WERKE AG | DR JAN TRIBIAHN PURCHASING MANAGER | POSTFACH 60 40 02 | | | 50735 KOELN | | | GERMANY |
| FORTEQ CZECH SRO | VACLAV KD)R | KOPISTRY 1 | | | MOST CZ | | 43401 | CZECH REPUBLIC |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| FOUR SLIDE TECHNOLOGY INC | ROGER PELC | 2130 E 10 MILE RD | | | WARREN | MI | 48091 | |
| FREESCALE SEMICONDUCTOR INC | RICHARD LEE CHAMBERS III | 6501 WILLIAM CANNON DRIVE WEST | MD OE16 | | AUSTIN | TX | 78735 | |
| FREUDENBERG IBERICA SA SDAD EN COMA | BILL HAUBERT | GURRI 1 POL IND CAN VOLART APT | | | PARETS DEL VALLES BARCELONA | | 08150 | SPAIN |
| FREUDENBERG NOK GENERAL PARTNERSHIP | BILL HAUBERT | 47690 E ANCHOR CT | | | PLYMOUTH | MI | 48170 | |
| FREUDENBERG NOK GP | BILL HAUBERT | 555 MARATHON BLVD PO BOX 269 | | | FINDLAY | OH | 45839 | |
| FRIED FRANK HARRIS SHRIVER & JACOBSON | BRAD ERIC SHELER BONNIE STEINGART VIVEK MELWANI JENNIFER L RODBURG RICHARD J SLIVINSKI | ONE NEW YORK PLAZA | | | NEW YORK | NY | 10004 | |
| FTI CONSULTING INC | RANDALL S EISENBERG | 3 TIMES SQUARE | 11TH FLOOR | | NEW YORK | NY | 10036 | |
| FUKOKU SOUTH CAROLINA INC | MASAHIKO TSUBOTA | 325 HUNTER INDUSTRIAL PARK RD | | | LAURENS | SC | 29360 | |
| FULTON INDUSTRIES INC | LARRY REKAR | 135 E LINFOOT ST PO BOX 377 | | | WAUSEON | OH | 43567 | |
| FULTON INDUSTRIES INC | LARRY REKAR | 135 E LINFOOT ST PO BOX 377 | | | WAUSEON | OH | 43567 | |
| FURUKAWA ELECTRIC CO LTD | TONY UMEMOTO | 2 3 MARUNDUCHI 2 CHOME | | | CHIYODA KU TOKYO | | 1008322 | JAPAN |
| FURUKAWA ELECTRIC NORTH AMERICA APD | PATRICK SETSUDA | 47677 GALLEON DR | | | PLYMOUTH | MI | 48170 | |
| FUTURE ENGINEERING INC | STEVE DAVIDEK | PO BOX 189 | | | FLUSHING | MI | 48433 | |
| FUYU MOULDING & TOOLING (TIANJIN) C | ZHAOCHUNHUI | NO 73 BAIHE RD TEDA | | | TAINJIN 030 | | 300457 | CHINA |
| GAGNIER RKM INC | GARY STREETMAN | 209 DOUGLAS PO BOX 92 | | | MONTROSE | MI | 48457 | |
| GALE FIRE PROTECTION INC | SCOTT REDBURN | 10270 PIERCE RD | | | FREELAND | MI | 48623-9036 | |
| GALNIK SA DE CV | RENATO VILLASEQOR | AV DE LA LUZ 24 NAVE 17 | | | QUERETARO QA | | 76120 | MEXICO |
| GARLOCK BEARINGS INC | ANITA | 700 MID ATLANTIC PKWY | | | THOROFARE | NJ | 08086 | |
| GARLOCK RUBBER TECHNOLOGIES | SHERRY TAYLOR | 201 DANA DR PO BOX 1000 | | | PARAGOULD | AR | 72450 | |
| GARY J BARTZ | SHINNERS & COOK P C | 5195 HAMPTON PLACE | | | SAGINAW | MI | 48604-9576 | |
| GBS CORP | JIM ELLOIT | 1035 N MERIDIAN RD | | | YOUNGSTOWN | OH | 44509-1016 | |
| GE ADVANCED MATERIALS | TOM HOTTERMAN | 11515 VANSTORY DR STE 140 | | | HUNTERSVILLE | NC | 28078 | |
| GE ADVANCED MATERIALS LNP | TOM HOTTERMAN | 11515 VANSTORY DR STE 140 | | | HUNTERSVILLE | NC | 28078 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| GEMINI PLASTICS EFT | LANA GORDON | 4385 GARFIELD AVE | | | UBLY | MI | 48475 | |
| GENEI INDUSTRIES INC | MATT HEWITT | 1930 S 23RD ST | | | SAGINAW | MI | 48601 | |
| GENERAL ALUMINUM MFG CO INC | SCOTT PAULOT | 1370 CHAMBERLAIN BLVD PO BX 28 | | | CONNEAUT | OH | 44030 | |
| GENERAL BROACH & ENGINEERING INC | MARK HALE | 307 SALISBURY ST | | | MORENCI | MI | 49256 | |
| GENERAL ELECTRIC CO INC | GENERAL ELECTRIC COMPANY | 3322 MEM PKWY SW STE 220 | | | HUNTSVILLE | AL | 35801-5348 | |
| GENERAL ELECTRIC COMPANY | VALERIE VENABLE | 9930 KINCEY AVENUE | | | HUNTERSVILLE | NC | 28078 | |
| GENERAL MACHINE SERVICE EFT | LOIS BICKEL | 494 E MORLEY | | | SAGINAW | MI | 48601 | |
| GENERAL MACHINE SERVICE EFT | MEREDITH | 494 E MORLEY | | | SAGINAW | MI | 48601 | |
| GENERAL MOTORS CORPORATION | GENERAL MOTORS | PO BOX 300 | | | DETROIT | MI | 48265 | |
| GENERAL MOTORS CORPORATION | MICHAEL GLAGOLA | PO BOX 300 | | | DETROIT | MI | 48265 | |
| GENERAL MOTORS OF CANADA LTD | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| GENESEE PACKAGING EFT | BERTHA RODGERS | PO BOX 7716 | | | FLINT | MI | 48507 | |
| GENESEE PACKAGING INC | CAROL HATCH | PO BOX 7716 | | | FLINT | MI | 48507-0716 | |
| GENFAST MANUFACTURING COMPANY | NO LONGER OUR SUPPLIER PO CANCELLED | PO BOX 1690 | | | BRANTFORD | ON | N3T 5V7 | CANADA |
| GENOVESE JOBLOVE & BATTISTA PA | CRAIG P RIEDERS ESQ | 100 SE 2ND STREET | SUITE 4400 | | MIAMI | FL | 33131 | |
| GENRAL MOTORS CORP | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| GENUINE PARTS COMPANY | MOTION INDUSTRIES INC | 226 WOODALL | | | DECATUR | AL | 35603 | |
| GERREF INDUSTRIES INC | JOANN STROBEL | 206 N YORK ST | | | BELDING | MI | 48809-1834 | |
| GEVELOT EXTRUSION % NARENS ASSOC IN | DENNIS WALSH | 29200 NORTHWESTERN HWY STE 200 | | | SOUTHFIELD | MI | 48304 | |
| GEVELOT EXTRUSION % NARENS ASSOC IN | DENNIS WALSH | 29200 NORTHWESTERN HWY STE 200 | | | SOUTHFIELD | MI | 48304 | |
| GHSP | JASON SCHOMER | 5700 CROOKS RD STE 225 | | | TROY | MI | 48098 | |
| GHSP | JASON SCHOMER | 5700 CROOKS RD STE 225 | | | TROY | MI | 48098 | |
| GILL MFG | DAVE WOJIE | 522 N MAIN STREET STE 100 | | | MILFORD | MI | 48381 | |
| GKN SINTER METALS | DAVE HICKOFF | 330 UNIVERSITY DR | | | AUBURN HILLS | MI | 48326 | |
| GKN SINTER METALS | DAVE HICKOFF | 112 HARDING ST | | | WORCESTER | MA | 01604 | |
| GKN SINTER METALS GERMANTOWN | DAVE HICKOFF | N112 W18700 MEQUON PO BOX 1009 | | | GERMANTOWN | WI | 53022 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 21 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| GKN SINTER METALS INC EMPORIUM | DAVE HICKOFF | 1 AIRPORT RD PO BOX 493 | | | EMPORIUM | PA | 15834 | |
| GKN SINTER METALS INC SALEM | DAVE HICKOFF | BECK MILLS RD PO BOX 312 | | | SALEM | IN | 47167 | |
| GLOVES INC | GLOVES INC | 1950 COLLINS BLVD | | | AUSTELL | GA | 30106-3618 | |
| GM AFRICA & MIDDLE EAST FZE | JENNIFER STARR BUYER | PILOT M 00783 JEBEL ALI | DUBAI | | DUBAI | | | UNITED ARAB EM |
| GM AUTOWORLD INDONESIA | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| GM DE MEXICO SA DE CV | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| GM DO BRASIL LTDA | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| GM OF CANADA LTD SERVICE | MARSHA SMITH SR BUYER | 1908 COLONEL SAM DRIVE | | | OSHAWA | ON | L1H 8P7 | CANADA |
| GMTG PONTIAC | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| GNERAL DYNAMICS LAND SYSTEMS LLC | MUSKEGON OPERATIONS TECHNICAL CENTER | 640 SEMINOLE ROAD | | | MUSKEGON | MI | 49441 | |
| GNP INC PARKER SEAL | CRAIG KURKECHIAN | 2565 NORTHWEST PARKWAY | | | ELGIN | IL | 60123 | |
| GOBAR SYSTEMS INC | PEDRO SILVA BOB SLOUFFMAN | 3320 E 14TH ST | | | BROWNSVILLE | TX | 78521 | |
| GOBAR SYSTEMS INC | PEDRO SILVA BOB SLOUFFMAN | 3320 E 14TH ST | | | BROWNSVILLE | TX | 78521 | |
| GOLDA JOSEPH | JOSEPH GOLDA | 2678 MILLER RD | | | METAMORA | MI | 48455 | |
| GOMATEC ESPANA SL | R ENDERS | CI RICARDO DE LA CIERVA 52 | | | SANT ESTEVE SESROVIRES 08 | | 08635 | SPAIN |
| GOODYEAR TIRE & RUBBER CO | CHRIS DAVIES | 100 GALLERIA STE 200 BOX 5099 | | | SOUTHFIELD | MI | 48034 | |
| GOSHEN DIE CUTTING GDC INC | MARK EVELER | 815 LOGAN ST PO BOX 98 | | | GOSHEN | IN | 46526 | |
| GOYETTE MECHANICAL COMPANY INC | DOMINIC GOYETTE | PO BOX 33 | | | FLINT | MI | 48501 | |
| GR SPRING & STAMPING INC | LARRY BEURKENS | 706 BOND AVE NW PO BOX 141397 | | | GRAND RAPIDS | MI | 49504 | |
| GRAFF TRUCK CENTERS INC | | 1401 S SAGINAW ST | | | FLINT | MI | 48503-3704 | |
| GRAHAM SALES & ENGINEERING | KEN WOLPERT | 334 S WATER ST | | | SAGINAW | MI | 48607 | |
| GRAND RAPIDS CONTROLS % CT CHARLETO | JIM WEIDE | 24000 GREATER MACK AVE | | | ST CLAIR SHORES | MI | 48080 | |
| GRANT & EISENHOFER PA | GEOFFREY C JARVIS | 1201 NORTH MARKET STREET | SUITE 2100 | | WILMINGTON | DE | 19801 | |
| GREENBRIAR EQUITY GROUP | JOHN DAILEADER | 555 THEODORE FREMD AVE STE A 201 | | | RYE | NY | 10580 | |
| GREENDALE SCREW PRODUCT CO EFT | BJ DAMMAN | 287 E GOLDEN GATE AVE | | | DETROIT | MI | 48203 | |
| GREER STOP NUT | KATHLEEN HOLDSWORTH | 481 MCNALLY DR | | | NASHVILLE | TN | 37211 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 22 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| GRIPCO DIV EMHART AUTOMOTIVE | MARTIN ZEOLI | 7345 NORTH 400 EAST | | | MONTPELIER | IN | 47359 | |
| GROOM LAW GROUP | LONIE A HASSEL | 1701 PENNSYLVANIA AVENUE NW | | | WASHINGTON | DC | 20006 | |
| GRUPO ABC DE MEXICO SA DE CV | LUIS HURTADO | AVENIDA NORTE 4 NO 7 | | | SAN JUAN DEL RIO | | 76809 | MEXICO |
| GRUPO INDUSTRIAL TEBO SA DE CV | FERNANDO BONABEL | AVE 2 NO 5 PARQUE IND CARTAGENA | | | TULTITLAN ESTADO DE | | 51918 | MEXICO |
| GUIDE CORPORATION | | 2915 PENDLETON AVE | | | ANDERSON | IN | 46016 | |
| HAMLIN TOOL & MACHINE CO INC EFT | BOB SEIGWALD | 1671 EAST HAMLIN ROAD | | | ROCHESTER | MI | 48307 | |
| HANK THORN CO INC | HANK THORN CO INC | 29164 WALL ST | | | WIXOM | MI | 48393-3524 | |
| HARLEY DAVIDSON MOTOR COMPANY | | 3700 WEST JUNEAU AVENUE | | | MILWAUKEE | WI | 53208 | |
| HARLEY DAVIDSON MOTOR COMPANY GROUP INC | ATTN VICE PRESIDENT ENGINEERING | 3700 WEST JUNEAU AVENUE | | | MILWAUKEE | WI | 53208 | |
| HARRINGTON AUTOMOTIVE PRODUCTS | TONY SHATAWY | 2555 MATTE BLVD | | | BROSSARD PQ | PQ | J4Y 2H1 | CANADA |
| HARTFORD BEARING CO | FRANK WILLARD | 20630 HARPER STE 201 | | | HARPER WOODS | MI | 48225 | |
| HAWK DESIGN INC | MIKE SLASINSKI | 7201 DANNY DR | | | SAGINAW | MI | 48609 | |
| HEINEMAN JR & SONS | DAN EMMENECKE | 3562 RIDGECREST DR | | | MIDLAND | MI | 48642 | |
| HEINRICH MUELLER MASCHINENFABRIK GM | ELMAR PISCHEL | GOEPPINGER STR 1 3 | | | PFORZHEIM | BW | 75179 | DE |
| HELLER EHRMAN LLP | CARREN SHULMAN | TIMES SQUARE TOWER | SEVEN TIMES SQUARE | | NEW YORK | NY | 10036 | |
| HELLERMANN TYTON | SHIRLEY BEARDSLEE | 7930 N FAULKNER PO BOX 245017 | | | MILWAUKEE | WI | 53224 | |
| HENKEL LOCTITE CORP EFT | CHRIS ORLETSKI | 1001 TROUT BROOK CROSSING | | | ROCKY HILL | CT | 06067 | |
| HERITAGE INTERACTIVE SERVICES LLC | HERITAGE INTERACTIVE SERVICES LLC | 3719 W 96TH ST | | | INDIANAPOLIS | IN | 46268 | |
| HI TECH OPTICAL INC | | 3139 CHRISTY WAY | | | SAGINAW | MI | 48603-2226 | |
| HI TECH STEEL TREATING INC | CHRIS MUSCOTT | 2720 ROBERTS ST | | | SAGINAW | MI | 48601 | |
| HI VOL PRODUCTS | REBECCA C WORDEN | 12955 INKSTER RD | | | LIVONIA | MI | 48150 | |
| HI VOL PRODUCTS METALDYNE | REBECCA C WORDEN | 12955 INKSTER RD | | | LIVONIA | MI | 48150 | |
| HIRSCHVOGEL INC | TIMOTHY E STOWE | 2230 SOUTH 3RD STREET | | | COLUMBUS | OH | 43207 | |
| HIRTENBERGER AUTOMOTIVE SAFETY GMBH | PER LORI PROGRAM HAS BEEN CANCELLED LV ORDERS OPEN LORI LEFT FOR THE DAY NO INFO AVAILABLE | LEOBERSDORFER STRABE 31 33 | | | HIRTENBERGER AT | | 2552 | ATRIA |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| HITACHI METAL AMERICA LTD | SCOTT STRUVEN | 2101 S ARLINGTON HGTS RD ST116 | | | ARLINGTON | IL | 60005 | |
| HITACHI METAL AMERICA LTD | SCOTT STRUVEN | 2101 S ARLINGTON HGTS RD ST116 | | | ARLINGTON | IL | 60005 | |
| HITCHINER MFG CO INC EFT | KENNETH E SIEMS | ELM ST PO BOX 2001 | | | MILFORD | NH | 3055 | |
| HITCHINER MFG CO INC EFT | KENNETH E SIEMS | ELM ST PO BOX 2001 | | | MILFORD | NH | 03055 | |
| HODGES TRANSPORTATION INC | DBA NEVADA AUTOMOTOVE TEST CENTER | | PO BOX 234 | | CARSON CITY | NEVADA | 89702 | |
| HODGSON RUSS LLP | STEPHEN H GROSS | 1540 BROADWAY | 24TH FL | | NEW YORK | NY | 10036 | |
| HOFFER PLASTICS EFT | BILL IRISH | 500 N COLLINS | | | S ELGIN | IL | 60177 | |
| HOFFER PLASTICS EFT | BILL IRISH | 500 N COLLINS | | | S ELGIN | IL | 60177 | |
| HOLMCO INDUSTRIES DIV ROBIN IND | PATTY FRAZIER | 7227 STATE ROUTE 515 PO 188 | | | WINESBURG | OH | 44690 | |
| HOLMCO INDUSTRIES DIV ROBIN IND | PATTY FRAZIER | 7227 STATE ROUTE 515 PO 188 | | | WINESBURG | OH | 44690 | |
| HOME OFFICE ENTERPRISES INC EFT | JOHN DUNN | 2306 HESS ST | | | SAGINAW | MI | 48601 | |
| HONEYWELL SENSING & CONTROL | ANNETTE WHALEY | 1100 AIRPORT RD | | | SHELBY | NC | 28150 | |
| HONIGMAN MILLER SCHWARTZ AND COHN LLP | FRANK L GORMAN ESQ | 2290 FIRST NATIONAL BUILDING | 660 WOODWARD AVENUE | | DETROIT | MI | 48226-3583 | |
| HONIGMAN MILLER SCHWARTZ AND COHN LLP | ROBERT B WEISS ESQ | 2290 FIRST NATIONAL BUILDING | 660 WOODWARD AVENUE | | DETROIT | MI | 48226-3583 | |
| HOOVER PRECISION PRODUCTS INC | ERIC STURDY | 2200 PENDLEY RD PO BOX 899 | | | CUMMING | GA | 30130 | |
| HOOVER PRECISION PRODUCTS INC | ERIC STURDY | 2200 PENDLEY RD PO BOX 899 | | | CUMMING | GA | 30130 | |
| HORIZON TECHNOLOGY GROUP TIFFIN DIV | MIKE STODDART | 1988 COUNTY RD NO 593 | | | TIFFIN | OH | 44883 | |
| HORIZON TECHNOLOGY GROUP TIFFIN DIV | MIKE STODDART | 1988 COUNTY RD NO 593 | | | TIFFIN | OH | 44883 | |
| HOWARD & HOWARD ATTORNEYS PC | LISA S GRETCHKO | 39400 WOODWARD AVE | STE 101 | | BLOOMFIELD HILLS | MI | 48304-5151 | |
| HOWARD FINISHING LLC EFT | KEITH AVALLONE | 32565 DEQUINDRE | | | MADISON HEIGHTS | MI | 48071 | |
| HOWICK WESTFALL MCBRYAN & KAPLAN LLP | LOUIS G MCBRYAN | 3101 TOWER CREEK PARKWAY | STE 600 ONE TOWER CREEK | | ATLANTA | GA | 30339 | |
| HP FORKLIFT INC | BEVERLY HASINKI | 420 S OUTER DR | | | SAGINAW | MI | 48601-6401 | |
| HPVO PERFORMANCE GARAGE | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| HS AUTOMOTIVE ALABAMA | SEUNG SUB OH | 100 SONATA DR | | | ENTERPRISE | AL | 36330 | |
| HUBBARD SUPPLY | | 3900 E WASHINGTON RD | | | SAGINAW | MI | 48601-9623 | |
| HUF NORTH AMERICA | MARK SWAYNE | 395 T ELMER COX DR PO BOX 2110 | | | GREENEVILLE | TN | 37743 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 24 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| HUF PORTUGUESA LDA | ALBERTO GONZALEZ SANTOS | ZIM APARTADO 89 | | | TONDELA PORTUG | AL | 03460 | |
| HUGO BENZING GMBH & CO KG | MANFRED HINK | DAIMLERSTR 49 53 POST 400120 | | | KORNTAL MUNCHINGEN | | 70825 | GERMANY |
| HUNTER & SCHANK CO LPA | JOHN J HUNTER | ONE CANTON SQUARE | 1700 CANTON AVENUE | | TOLEDO | OH | 43624 | |
| HUNTER & SCHANK CO LPA | THOMAS J SCHANK | ONE CANTON SQUARE | 1700 CANTON AVENUE | | TOLEDO | OH | 43624 | |
| HURST MFG EMERSON | ED WAGNER | 1551 E BROADWAY | | | PRINCETON | IN | 47670 | |
| HUTCHINSON SEAL DE MEXICO SA DE CV | CHARLES VAN HOVE | PELICANOS NO 313 COL SAN FERNA | | | ENSENADA MX | | 22785 | MEXICO |
| HY LEVEL INDUSTRIES INC EFT | JOHN MCLAUGHLIN | 15400 FOLTZ IND PKWY PO 368015 | | | STRONGSVILLE | OH | 44136 | |
| HY LEVEL INDUSTRIES INC EFT | JOHN MCLAUGHLIN | 15400 FOLTZ IND PKWY PO 368015 | | | STRONGSVILLE | OH | 44136 | |
| HYDRO ALUMINUM NORTH AMERICA | JIM KONITSNEY | 171 INDUSTRIAL BLVD | | | FAYETTEVILLE | TN | 37334 | |
| HYDRO ALUMINUM NORTH AMERICA | JIM KONITSNEY | 171 INDUSTRIAL BLVD | | | FAYETTEVILLE | TN | 37334 | |
| HYDRO ALUMINUM ROCKLEDGE | JIM KONITSNEY | 100 GUS HIPP BLVD | | | ROCKLEDGE | FL | 32955 | |
| HYLTON INDUSTRIAL CORP | CHRIS COX | 22575 HESLIP DR | | | NOVI | MI | 48375-4140 | |
| HYPER ALLOYS INC | HYPER ALLOYS INC | 29153 GROESBECK HWY | | | ROSEVILLE | MI | 48066-1921 | |
| HYUN YANG CORP | FELIX BUTCH BOSCO | 27650 FARMINGTON RD SUITE 204 | | | FARMINGTON HILLS | MI | 48334 | |
| HYUN YANG CORP | FELIX BUTCH BOSCO | 27650 FARMINGTON RD SUITE 204 | | | FARMINGTON HILLS | MI | 48334 | |
| HYUNDAI MOTOR COMPANY | | MARIE CURIE STRASSE 2 | | | RUSSELSHEIM | | 65428 | GERMANY |
| HYUNDAI MOTOR MFG ALABAMA | GREG GYU SUK LEE SR PURCHASING MANAGER | 700 HYUNDAI BOULEVARD | | | MONTGOMERY | AL | 36105-9622 | |
| I&W INDUSTRIES LLC | OUT OF BUSINESS | 2440 AERO PARK DR | | | TRAVERSE CITY | MI | 49686 | |
| IAC GROUP NORTH AMERICA | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| IBEROFON PLASTICOS SL | COVADONGA ALVAREZ LAYNA | POL IND MIRALCAMPO C ALUMINIO | | | GUADALAJARA | | 19200 | SPAIN |
| ICG CASTINGS INC | KEITH ALDRIDGE | 5700 CROOKS RD STE 225 | | | TROY | MI | 48098 | |
| ICG CASTINGS INC | KEITH ALDRIDGE | 5700 CROOKS RD STE 225 | | | TROY | MI | 48098 | |
| IDEAL CONTRACTING LLC | JULIE WEISS | 2525 CLARK ST | | | DETROIT | MI | 48209-1337 | |
| IER INDUSTRIES INC | PATRICK BREEN | 8271 BAVARIA RD | | | MACEDONIA | OH | 44056 | |
| IER INDUSTRIES INC | PATRICK BREEN | 8271 BAVARIA RD | | | MACEDONIA | OH | 44056 | |
| IFA MASCHINEBAU GMBH | | GENRICKSTRASSE 102 | | | HALDENSLEBEN | | 39340 | GERMANY |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 25 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| IKON OFFICE SOLUTIONS INC | ERIC PLOWMAN | 2780 44TH ST SW | | | GRAND RAPIDS | MI | 49519-4108 | |
| IMCO | MIKE HALE | 1819 W PARK DRPO BX 444 | | | HUNTINGTON | IN | 46750 | |
| IMCO | MIKE HALE | 1819 W PARK DRPO BX 444 | | | HUNTINGTON | IN | 46750 | |
| IMPACT FORGE INC | THOMAS L ROCK | 2805 NORCROSS PO BOX 1847 | | | COLUMBUS | IN | 47202 | |
| IMPERIAL CHEMICAL INDUSTRIES PLC | GLIDDEN CO THE | 1604 HWY 31 S | | | DECATUR | AL | 35601 | |
| IMPRODEX SP ZOO | MALGORZATA JESSA | PRZESZKOWEJ 15 | | | CZECHOWICE DZIEDZICE | | 43502 | POLAND |
| INA USA CORPORATION | JIM CLOW | 1750 E BIG BEAVER RD | | | TROY | MI | 48083 | |
| INA USA CORPORATION | JIM CLOW | 1750 E BIG BEAVER RD | | | TROY | MI | 48083 | |
| INA WALZLAGER SCHAEFFLER OHG | GREGORY PAPP | INDUSTRIESTRASSE 13 | | | HERZOGENAURACH | | 91074 | GERMANY |
| INCAL TECHNOLOGIES INC | LEE LAMBERT | 3870 E WASHINGTON | | | SAGINAW | MI | 48601 | |
| IND Y FUNDICIONES POR INYECCION SA | NO NAME | RIO PIQUERAS 150 151 | | | ARRUBAL ES | | 26509 | SPAIN |
| INDAK MFG CORP | TOM MASON | 1915 TECHNY RD | | | NORTHBROOK | IL | 60062 | |
| INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF ATHENS | C O PATTON LATHOM LEGGE & COLE | ATTN MIKE KOHL ESQ | PO BOX 470 | | ATHENS | ALABAMA | 35612 | |
| INDUSTRIAL PACKAGING CORP | GARY WHITTAKER | 12871 WESTWOOD | | | DETROIT | MI | 48223-3435 | |
| INDUSTRIAL REFRACTORY CONSULTANT | LEONARD AMORE | 8191 PORTSMOUTH LN | | | GRAND BLANC | MI | 48439 | |
| INDUSTRIAL STAMPING & MFG EFT | ADAM TOMLAN | 16500 COMMON RD | | | ROSEVILLE | MI | 48066 | |
| INDUSTRIAL STAMPING & MFG EFT | ADAM TOMLAN | 16500 COMMON RD | | | ROSEVILLE | MI | 48066 | |
| INDUSTRIAS CH SA DE CV | TEODORO GOLDARAZ | AGUSTIN MELGAR NO 23 | | | TLALNEPANTLA | | 54030 | MEXICO |
| INFASCO NUT CO | SHARON CLIFFORD | 3990 NASHUA | | | MISSISSAUGA | ON | L4VIP8 | CANADA |
| INITIAL TROPICAL PLANTS INC | OUT OF BUSINESS | 25220 TRANS X | | | NOVI | MI | 48375 | |
| INTEGRITY DESIGN SERVICES LLC | | PO BOX 668 | | | TRINITY | AL | 35673 | |
| INTELLITECH | | 14 RUE DU FONDS PERNANT TECHNOPOLIS IV | | | COMPIEGNE | | 60200 | FRANCE |
| INTERMET | ERIC MOXHAM | 485 LEXINGTON AVE 28TH FL | | | NEW YORK | NY | 10017 | |
| INTERMET CORP EFT | MARK KUZINSKI | 450 BENNETT DR | | | PULASKI | TN | 38478 | |
| INTERMET FOUNDRIES INC | MARK KUZINSKI | 555 W 25TH ST PO BOX 98 | | | HIBBING | MN | 55746 | |
| INTERMET FOUNDRIES INC | MARK KUZINSKI | 555 W 25TH ST PO BOX 98 | | | HIBBING | MN | 55746 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| INTERNAL REVENUE SERVICE | ATTN INSOLVENCY DEPARTMENT | 477 MICHIGAN AVE | MAIL STOP 15 | | DETROIT | MI | 48226 | |
| INTERNAL REVENUE SERVICE | ATTN INSOLVENCY DEPARTMENT MARIA VALERIO | 290 BROADWAY | 5TH FLOOR | | NEW YORK | NY | 10007 | |
| INTERNATIONAL ELECTRIC SUPPLY CORP | REXEL INC | 1315 COMMERCE DR | | | DECATUR | AL | 35603 | |
| INTERNATIONAL PLASTICS INC | STEVE MCCLURE | 185 COMMERCE CTR | | | GREENVILLE | SC | 29615 | |
| INTIER AUTOMOTIVE INTERIORS OF AMER | JACK SEIGAL | 7751 W 70TH ST | | | SHREVEPORT | LA | 71129 | |
| INTIER AUTOMOTIVE INTERIORS OF AMER | LEFT VME AT COMPANY BOBBI IS NOT HERE | 7751 W 70TH ST | | | SHREVEPORT | LA | 71129 | |
| INVAR MANUFACTURING % LINAMAR SALES | TOM WINKLE | 26555 EVERGREEN RD STE 900 | | | SOUTHFIELD | MI | 48076 | |
| INVAR MANUFACTURING % LINAMAR SALES | TOM WINKLE | 26555 EVERGREEN RD STE 900 | | | SOUTHFIELD | MI | 48076 | |
| IRBY STUART C CO | IRBY STUART C CO | 144 WOODALL RD | | | DECATUR | AL | 35603 | |
| ISOGRAPH INC | | 4695 MACARTHUR CT FL 11 | | | NEWPORT BEACH | CA | 92660-1882 | |
| ISPAT INLAND BAR PRODUCTS | DAVE WARREN | 3300 DICKEY RD | | | EAST CHICAGO | IN | 46312 | |
| ISPAT INLAND BAR PRODUCTS | DAVE WARREN | 3300 DICKEY RD | | | EAST CHICAGO | IN | 46312 | |
| ISUZU MOTORS AMERICA INC | MATTHEW PORMAN PURCHASING COST ANALYST | 46401 COMMERCE CENTER DR | | | PLYMOUTH | MI | 48170 | |
| ISUZU MOTORS AMERICA INC | MATTHEW PORMAN PURCHASING COST ANALYST JAMES DINDINGER SR PARTS ANALYST | 16323 SHOEMAKER AVENUE | ACCOUNT NO4 A | | CERRITOS | CA | 90703 | |
| ITT HIGBIE BAYLOCK | MICHEAL DESROCHERS | 2110 EXECUTIVE HILLS DR | | | AUBURN HILLS | MI | 48326 | |
| ITW AUTOMOTIVE PRODUCTS GMBH & CO K | JOACHIM MITNACHT | MUNSTER 188 | | | CREGLINGEN BW | | 97993 | GERMANY |
| ITW CIP ANCHOR STAMPING | SCOTT MACMARTIN | 12150 MERRIMAN RD | | | LIVONIA | MI | 48150 | |
| ITW CIP ANCHOR STAMPING | SCOTT MACMARTIN | 12150 MERRIMAN RD | | | LIVONIA | MI | 48150 | |
| ITW CIP ANCHOR STAMPINGS | SCOTT MACMARTIN | 850 STEPHENSON HWY STE 500 | | | TROY | MI | 48084 | |
| ITW DELTAR ENGINEERED FASTENERS | CATHERINE ANTOS | 1700 FIRST AVENUE | | | CHIPPEWA FALLS | WI | 54729 | |
| ITW DELTAR ENGINEERED FASTENERS | CATHERINE ANTOS | 1700 FIRST AVENUE | | | CHIPPEWA FALLS | WI | 54729 | |
| ITW DELTAR TEKFAST | KATHLEEN KINSELLA | 850 STEPHENSON HWY SUITE 110 | | | TROY | MI | 48083 | |
| ITW DELTAR TEKFAST | KATHLEEN KINSELLA | 850 STEPHENSON HWY SUITE 110 | | | TROY | MI | 48083 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 27 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| ITW FILTRATION ELK GROVE | KEN MIKUTA | 830 LEE ST | | | ELK GROVE VILLAGE | IL | 60007 | |
| ITW FILTRATION GENEVA | KEN MIKUTA | 7214 MADAUS ST | | | LAKE GENEVA | WI | 53147 | |
| ITW FILTRATION GENEVA | KEN MIKUTA | 7214 MADAUS ST | | | LAKE GENEVA | WI | 53147 | |
| ITW HIGHLAND | BOB VILERIAN | 1240 WOLCOTT ST PO BOX 1858 | | | WATERBURY | CT | 6772 | |
| ITW HIGHLAND | BOB VILERIAN | 1240 WOLCOTT ST PO BOX 1858 | | | WATERBURY | CT | 06772 | |
| ITW IMPRO | BILL THURSTON | 194 MAIN ST PO BOX 1570 | | | LAKEVILLE | CT | 6039 | |
| ITW IMPRO | BILL THURSTON | 194 MAIN ST PO BOX 1570 | | | LAKEVILLE | CT | 06039 | |
| ITW METAL FASTENERS SL | MARIA JOSE MOREMO | PASEO CAN FEU 60 66 | | | SABADELL 08 | | 08520 | SPAIN |
| ITW SHAKEPROOF ANCHOR MEDALIST | KEITH LOGSDON | 850 STEPHENSON HWY STE 500 | | | TROY | MI | 48083 | |
| ITW SHAKEPROOF ANCHOR MEDALIST | SCOTT MACMARTIN | 850 STEPHENSON HWY STE 500 | | | TROY | MI | 48084 | |
| ITW SHAKEPROOF ASSEMBLY COMPONENTS | KEITH LOGSDON | 3704 N PALMER ST | | | MILWAUKEE | WI | 53212 | |
| ITW SHAKEPROOF ASSEMBLY COMPONENTS | KEITH LOGSDON | 3704 N PALMER ST | | | MILWAUKEE | WI | 53212 | |
| ITW TOMCO | PATRICK CROW | 730 E SOUTH ST | | | BRYAN | OH | 43506 | |
| IUE CWA | CONFERENCE BOARD CHAIRMAN | 2360 W DOROTHY LANE | SUITE 201 | | DAYTON | OH | 45439 | |
| J D PLATING | GEORGE A WINES | 25428 JOHN R | | | MADISON HGTS | MI | 48071 | |
| JAMES JORDAN | | 344 WEATHERFORD DR | | | MADISON | AL | 35757 | |
| JASON INC | BETH KLIMCZAK GENERAL COUNSEL | 411 E WISCONSIN AVE | SUITE 2120 | | MILWAUKEE | WI | 53202 | |
| JC CALHOUN STATE CMTY COLLEGE INC | JC CALHOUN STATE CMTY COLLEGE INC | PO BOX 2216 | | | DECATUR | AL | 35609-2216 | |
| JD NORMAN INDUSTRIES | ASHLEY GIBSON | 787 BELDEN AVE | | | ADDISON | IL | 60101 | |
| JEFFERIES & COMPANY INC | WILLIAM Q DERROUGH | 520 MADISON AVENUE | 12TH FLOOR | | NEW YORK | NY | 10022 | |
| JENCO PRODUCTS INC | GARY DENKINS | 7860 CENTER POINT DRIVE | | | HUBER HEIGHTS | OH | 45424 | |
| JIMEX INTERNATIONAL INC | | 6922 HAYMARKET | | | SHELBY TOWNSHIP | MI | 48317 | |
| JINGZHOU HENGLONG AUTOMOTIVE PARTS CO LTD | | NO 1 HENGLONG ROAD | YUQIAO DEVELOPMENT ZONE | | JINGZHOU CITY | HUBEI PROVINCE | | CHINA |
| JMS PLASTICS | CHRIS KOVATH | 52275 STATE RD 933 N PO BX 927 | | | SOUTH BEND | IN | 46624 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 28 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| JMS PLASTICS | CHRIS KOVATH | 52275 STATE RD 933 N PO BX 927 | | | SOUTH BEND | IN | 46624 | |
| JOHNSON CONTROLS INC | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| JOHNSTON HARRIS GERDE & KOMAREK PA | JERRY W GERDE ESQ | 239 E 4TH ST | | | PANAMA CITY | FL | 32401 | |
| JONES PLATING CO K C | MARY ANN | 2845 E 10 MILE RD | | | WARREN | MI | 48091 | |
| JPMORGAN CHASE BANK NA | RICHARD DUKER | 270 PARK AVENUE | | | NEW YORK | NY | 10017 | |
| JPMORGAN CHASE BANK NA | SUSAN ATKINS GIANNI RUSSELLO | 277 PARK AVE 8TH FL | | | NEW YORK | NY | 10172 | |
| JST SALES AMERICA INC | | 1957 SOUTH LAKESIDE DRIVE | | | WAYJEGABM | IL | 60085 | |
| JTEKT AUTOMOTIVE | TINA HENSLEY PURCHASING BUYER | 5932 COMMERCE BLVD | | | MORRISTOWN | TN | 37814-1051 | |
| JTEKT EUROPE | | ZI DU BROTEAU | BP 1 | | 69540 IRIGNY | | | FRANCE |
| K & K SCREW PRODUCTS | MIKE SMALL | 795 KIMBERLY DR | | | CAROL STREAM | IL | 60188 | |
| K & K SCREW PRODUCTS | MIKE SMALL | 795 KIMBERLY DR | | | CAROL STREAM | IL | 60188 | |
| KAMAX G B DUPONT | TOM GARIGLIO | 500 W LONG LAKE RD | | | TROY | MI | 48098 | |
| KAMAX G B DUPONT | TOM GARIGLIO | 500 W LONG LAKE RD | | | TROY | MI | 48098 | |
| KAYABA INDUSTRY CO LTD | | 4 1 HAMAMATSUCHO 2 CHOME | MINATO KU | | 105 6111 | TOKYO | 105-6111 | JAPAN |
| KAYABA INDUSTRY CO LTD | | 4 1 HAMAMATSUCHO 2 CHOME | MINATO KU | | 105 6111 | TOKYO | 105-6111 | JAPAN |
| KC WELDING SUPPLY INC | KEITH CAROLAN | 1309 MAIN ST | | | ESSEXVILLE | MI | 48732 | |
| KC WELDING SUPPLY INC | RICK WEBB | 1309 MAIN ST | | | ESSEXVILLE | MI | 48732 | |
| KEEPER CO LTD | HEUNGSIK YOON | 2 4 36 TSUJIDO KANDAI | | | FUJISAW KANAGAWA | | 251-8515 | JAPAN |
| KELLEY DRYE & WARREN LLP | MARK I BANE | 101 PARK AVENUE | | | NEW YORK | NY | 10178 | |
| KELLEY DRYE & WARREN LLP | MARK R SOMERSTEIN | 101 PARK AVENUE | | | NEW YORK | NY | 10178 | |
| KENDALE INDUSTRIES INC | DEBBIE SALOMONE | 7600 HUB PKWY | | | VALLEY VIEW | OH | 44125 | |
| KENDALE INDUSTRIES INC | DEBBIE SALOMONE | 7600 HUB PKWY | | | VALLEY VIEW | OH | 44125 | |
| KEP AMERICAS ENGINEERING PLASTICS L | BRIAN SOHN | 106 N DENTON TAP RD STE 210202 | | | COPPEL | TX | 75019 | |
| KERR RUSSELL & WEBER PLC | | 500 WOODWARD AVE NO 2500 | | | DETROIT | MI | 48226-3427 | |
| KESSLERS EQUIPMENT CO INC | | 5180 MOWER RD | | | SAGINAW | MI | 48601 | |
| KEY DESIGN INC | DOUG COUNTS | 4876 DIXIE HWY | | | SAGINAW | MI | 48601 | |
| KEY ENGINEERING INC | TREY PARKS | 3116 SEXTON RD | | | DECATUR | AL | 35602-1743 | |
| KEY PLASTICS INC | DAVE HUDSON | 21700 HAGGERTY RD STE 100N | | | NORTHVILLE | MI | 48167 | |
| KEY PLASTICS INC | DAVE HUDSON | 21700 HAGGERTY RD STE 100N | | | NORTHVILLE | MI | 48167 | |
| KEYANG ELECTRIC MACHINERY CO | PAUL LEONARD | 31831 SHERMAN AVE | | | MADISON HEIGHTS | MI | 48071 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 29 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| KEYANG ELECTRIC MACHINERY CO | PAUL LEONARD | 31831 SHERMAN AVE | | | MADISON HEIGHTS | MI | 48071 | |
| KEYSTONE POWDERED METAL COMPANY | CHRIS HAMMER | 1935 STATE STREET | | | ST MARYS | PA | 15857 | |
| KEYSTONE POWDERED METAL COMPANY | CHRIS HAMMER | 1935 STATE STREET | | | ST MARYS | PA | 15857 | |
| KILIAN MANUFACTURING CORP | JOE MANSOUR | 1728 BURNET AVE PO BOX 6974 | | | SYRACUSE | NY | 13217 | |
| KILIAN MANUFACTURING CORP | JOE MANSOUR | 1728 BURNET AVE PO BOX 6974 | | | SYRACUSE | NY | 13217 | GERMANY |
| KIMBALL ELECTRONICS INC | | 1600 ROYAL STREET | | | JASPER | IN | 46546 | |
| KINEFAC CORP | RICHARD RISOTTI | 156 GODDARD MEMORIAL DR | | | WORCESTER | MA | 01603-1260 | |
| KINETICS INC | CHRIS MCDOUGALL | 10085 SW COMMERCE CIR | | | WILSONVILLE | OR | 97070 | |
| KINETICS INC | CHRIS MCDOUGALL | 10085 SW COMMERCE CIR | | | WILSONVILLE | OR | 97070 | |
| KINGSBURY CORP | KINGSBURY CORP | 80 LAUREL ST | | | KEENE | NH | 03431 | |
| KLASSIC LAWN & LANDSCAPE LLC | KARL CRIGGER | 4333 WEST COOK RD | | | SWARTZ CREEK | MI | 48473-9105 | |
| KLEMENT PRESS INC EFT | DAVE MARTIN | 2600 STATE ST | | | SAGINAW | MI | 48602 | |
| KLETT ROONEY LIEBER & SCHORLING | ERIC L SCHNABEL | THE BRANDYWINE BUILDING | 1000 WEST STREET SUITE 1410 | | WILMINGTON | DE | 19801 | |
| KMC STAMPINGS | JOHN KARIPIDES | 1221 S PARK ST PO 348 | | | PORT WASHINGTON | WI | 53074 | |
| KMC STAMPINGS | JOHN KARIPIDES | 1221 S PARK ST PO 348 | | | PORT WASHINGTON | WI | 53074 | |
| KMS BEARINGS AUTOMOTIVE | JEFFREY SPIRA | 1541 N HARMONY CIRCLE | | | ANAHEIM | CA | 92807 | |
| KMS BEARINGS AUTOMOTIVE | JEFFREY SPIRA | 1541 N HARMONY CIRCLE | | | ANAHEIM | CA | 92807 | |
| KOENIG JOHANNES DIETER | DIETER KOENIG | NO1126A COL 10 DE ABRIL | | | CELAYA | GTO | 38010 | MX |
| KOKOMO SPRING CO INC | TODD HAUG | 500 E WHEELER | | | KOKOMO | IN | 46903 | |
| KOKOMO SPRING CO INC | TODD HAUG | 500 E WHEELER | | | KOKOMO | IN | 46903 | |
| KOKUSAI INC | GORDON BOYD | 8102 WOODLAND DR | | | INDIANAPOLIS | IN | 46278 | |
| KONGSBERG AUTOMOTIVE AB | | PO BOX 504 | | | SE-56528 MULLSJO | | | SWEDEN |
| KOPPY CORPORATION | SCOTT HARWOOD | 199 KAY INDUSTRIAL DR | | | ORION | MI | 48359-1833 | |
| KOREA DELPHI AUTO SYSTEMS CORP | KH KIM DEPUTY SENIOR MANAGER OVERSEAS PURCHASING | 395 70 SHINDEABANG DONG | DONGJAK GU | | SEOUL | | 156-010 | SOUTH KOREA |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 30 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| KOREA DELPHI AUTOMOTIVE SYSTEMS COR | IKE YOO | 408 1 MABUK RI GUSEONG EUP | | | GYEGNAGI DO | | 449 912 | KOREA |
| KOREA DELPHI AUTOMOTIVE SYSTEMS COR | WS KANG | 408 1 MABUK RI GUSEONG EUP | | | GYEGNAGI DO | | 449 912 | KOREA |
| KOREA SINTERED METAL CO LTD | YONGHO LEE | 29 10 BONRI RI NONGONG EUP | | | DAEGU | | 711-855 | KOREA |
| KOSTAL OF AMERICA INC | WILLIAM ROBERTS | 25325 REGENCY CT | | | NOVI | MI | 48375 | |
| KOYO CORPORATION OF USA | | 47771 HALYARD DRIVE | | | PLYMOUTH | MI | 48170 | |
| KOYO SEIKO CO LTD | | 5 8 MINAMISEMBA 3 CHOME | | | CHUO KU | OSAKA | 542 | JAPAN |
| KPS CAPITAL PARTNERS | DAVID SHAPIRO | 200 PARK AVE 58TH FL | | | NEW YORK | NY | 10166 | |
| KRAMER LEVIN NAFTALIS & FRANKEL LLP | GORDON Z NOVOD | 1177 AVENUE OF THE AMERICAS | | | NEW YORK | NY | 10036 | |
| KRAMER LEVIN NAFTALIS & FRANKEL LLP | THOMAS MOERS MAYER | 1177 AVENUE OF THE AMERICAS | | | NEW YORK | NY | 10036 | |
| KRUPP HOESCH | CRAIG SHETLER | 3155 W BIG BEAVER RD | | | TROY | MI | 48084 | |
| KRUPP HOESCH | CRAIG SHETLER | 3155 W BIG BEAVER RD PO BOX 2601 | | | TROY | MI | 48007-2601 | |
| KYODO YUSHI USA INC | | 1000 TOWER LN STE 370 | | | BENSENVILLE | IL | 60106-1043 | |
| L&B CARTAGE INC | KATHY DEW | 966 BRIDGEVIEW SOUTH | | | SAGINAW | MI | 48604 | |
| LAKE CITY INDUSTRIES % ROCHESTER SA | CORY TABER | 1265 DORIS RD | | | AUBURN HILLS | MI | 48326 | |
| LAKE CITY INDUSTRIES % ROCHESTER SA | PHILIP T SPIETH | ONE INTERNATIONAL DR | | | MONROE | MI | 48161 | |
| LAKESIDE PLASTICS LIMITED | | 3786 N TALBOT RD PLT 1 RR 1 | | | OLDCASTLE | ON | N0R1L0 | CANADA |
| LAKESIDE PLASTICS LTD | JOE LUCKINO | 3786 N TALBOT PLT 1 | | | OLDCASTLE | ON | N0R 1L0 | CANADA |
| LAKESIDE PLASTICS LTD | JOE LUCKINO | 3786 N TALBOT PLT 1 | | | OLDCASTLE | ON | N0R 1L0 | CANADA |
| LAND PRIDE | | 1525 EAST NORTH ST | PO BOX 5060 | | SALINA | KS | 67401 | |
| LANDAAL PACKAGING SYSTEMS | | 3256 B IRON STREET | | | BURTON | MI | 48529 | |
| LATHAM & WATKINS | JOHN W WEISS | 885 THIRD AVENUE | | | NEW YORK | NY | 10022 | |
| LATHAM & WATKINS LLP | ROBERT J ROSENBERG | 885 THIRD AVENUE | | | NEW YORK | NY | 10022 | |
| LAW DEBENTURE TRUST OF NEW YORK | DANIEL R FISHER | 400 MADISON AVE | FOURTH FLOOR | | NEW YORK | NY | 10017 | |
| LAW DEBENTURE TRUST OF NEW YORK | PATRICK J HEALY | 400 MADISON AVE | FOURTH FLOOR | | NEW YORK | NY | 10017 | |
| LDI INC | MIKE SCIBA | 4311 PATTERSON SE | | | GRAND RAPIDS | MI | 49512 | |
| LDI INC | MIKE SCIBA | 4311 PATTERSON SE | | | GRAND RAPIDS | MI | 49512 | |
| LEAR CORP | TINA BEAUCHAMP | 5500 ENTERPRISE | | | WARREN | MI | 48092 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| LEAR CORP | TINA BEAUCHAMP | 5500 ENTERPRISE | | | WARREN | MI | 48092 | |
| LEAR CORP CSAO | TINA BEAUCHAMP | 5200 AUTOCLUB DRIVE | | | DEARBORN | MI | 48126 | |
| LEISTRITZ CORP | RALPH WEHMANN | 165 CHESTNUT ST | | | ALLENDALE | NJ | 07401 | |
| LETTS INDUSTRIES INC EFT | SUPPLIER CLOSED | NO 1 INDUSTRIAL AVE PO BOX 598 | | | PIONEER | OH | 43554 | |
| LETTS INDUSTRIES INC EFT | SUPPLIER CLOSED | NO 1 INDUSTRIAL AVE PO BOX 598 | | | PIONEER | OH | 43554 | |
| LEWIS SPRING & MFG CO | JIM ROBERTSON | 7500 N NATCHEZ | | | NILES | IL | 60714 | |
| LEWIS SPRING & MFG CO | JIM ROBERTSON | 7500 N NATCHEZ | | | NILES | IL | 60714 | |
| LINCOLN ELECTRIC HOLDINGS INC EFT | WARREN KRUEGER | 22801 ST CLAIR AVE | | | CLEVELAND | OH | 44117 | |
| LIQUIPAK CORP EFT | BRIAN ROCKAFELLOW | 2205 MICHIGAN AVE PO BOX 484 | | | ALMA | MI | 48801 | |
| LISI AUTOMOTIVE FORMER | RACHEL VALENTIN | 28 FAUBOURG DE BELFORT BP 19 | | | DELLE CEDEX FR | | 90100 | FRANCE |
| LOMAR MACHINE & TOOL CO | LOMAR MACHINE & TOOL CO | 135 MAIN ST | | | HORTON | MI | 49246-9540 | |
| LONGWOOD ELASTOMERS SA | PILAR MARTINEZ | POL IND LAS CASAS | | | SORIA 42 | | 42005 | SPAIN |
| LORD BISSEL & BROOK LLP | ROCCO N COVINO | 885 THIRD AVENUE | 26TH FLOOR | | NEW YORK | NY | 10022-4802 | |
| LOUIS P ROCHKIND | | 27777 FRANKLIN RD STE 2500 | | | SOUTHFIELD | MI | 48034 | |
| LOWRY COMPUTER PRODUCTS INC | BRETT GILLICK | 9420 MALTBY RD | | | BRIGHTON | MI | 48116 | |
| LOWRY COMPUTER PRODUCTS INC | LOWRY COMPUTER PRODUCTS INC | 9420 MALTBY RD | | | BRIGHTON | MI | 48116 | |
| LUBRIZOL ADVANCED MATERIALS INC | JOSEPHINE STERNS | 9911 BRECKSVILLE RD | | | CLEVELAND | OH | 44141 | |
| LUNT MANUFACTURING CO INC | JON MILLER | 1000 JOHN R RD STE 110 | | | TROY | MI | 48083 | |
| LUNT MANUFACTURING CO INC | JON MILLER | 1000 JOHN R RD STE 110 | | | TROY | MI | 48083 | |
| LYNN WHITSETT CORP | LYNN WHITSETT CORP | 4126 DELP ST | | | MEMPHIS | TN | 38118-6954 | |
| M & M KNOPF AUTO PARTS INC | JACK ROSENBLAD PURCHASING BUYER | 239 OLD BRUNSWICK RD | | | PISCATAWAY | NJ | 08854 | |
| M & M KNOPF AUTO PARTS INC EFT | JIM BRUNNER | 239 OLD NEW BRUNSWICK RD | | | PISCATAWAY | NJ | 08854-3712 | |
| M & M KNOPF AUTO PARTS INC EFT | JIM BRUNNER | 747 EVERGREEN AVE | | | BROOKLYN | NY | 11207 | |
| M & N PLASTICS | RICK BESSEGA | 6450 DOBRY | | | STERLING HEIGHTS | MI | 48314 | |
| M & N PLASTICS | RICK BESSEGA | 6450 DOBRY | | | STERLING HEIGHTS | MI | 48314 | |
| M & Q PLASTIC PRODUCTS | MICHAEL GLEESON | 26 SPUR DR | | | EL PASO | TX | 79906 | |
| M & Q PLASTIC PRODUCTS | MICHAEL GLEESON | 26 SPUR DR | | | EL PASO | TX | 79906 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 32 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| M & R INDUSTRIAL SERVICES LTD | GERRY FINK | 6420 TOWNSEND LINE PO BOX 910 | | | FOREST | ON | N0N 1J0 | CANADA |
| M MARK PRODUCTS INC | JOHN DIMATTEO FINANCE AND LOGISTICS | 100 REDNECK AVE | | | MOONACHIE | NJ | 07074 | |
| MAC MILLAN ASSOCIATES INC | LINDA LEVINSON | 714 E MIDLAND ST | | | BAY CITY | MI | 48706-2408 | |
| MACARTHUR CORP EFT | AL KANG | 3190 TRI PARK DR PO BOX 10 | | | GRAND BLANC | MI | 48439 | |
| MACARTHUR CORP EFT | AL KANG | 3190 TRI PARK DR PO BOX 10 | | | GRAND BLANC | MI | 48439 | |
| MACHINED PRODUCTS CO | MOHAMMED QURESHI | 2121 LANDMEIER RD | | | ELK GROVE VILLAGE | IL | 60007 | |
| MACHINED PRODUCTS CO | MOHAMMED QURESHI | 2121 LANDMEIER RD | | | ELK GROVE VILLAGE | IL | 60007 | |
| MACLEAN FASTENERS ROYAL OAK | KEVIN HYDE | 3200 W 14 MILE RD | | | ROYAL OAK | MI | 48073 | |
| MACLEAN FASTENERS ROYAL OAK | KEVIN HYDE | 3200 W 14 MILE RD | | | ROYAL OAK | MI | 48073 | |
| MACSTEEL | MARC OWEN | ONE JACKSON SQUARE SUITE 500 | | | JACKSON | MI | 49201 | |
| MADISON KIPP | JERRY LAWICKI | PO BOX 8043 | | | MADISON | WI | 53708 | |
| MADISON KIPP | JERRY LAWICKI | PO BOX 8043 | | | MADISON | WI | 53708 | |
| MAGENTA CORP | FLAVIA MURRAY | 3800 N MILWAUKEE AVE | | | CHICAGO | IL | 60641 | |
| MAGENTA CORP | FLAVIA MURRAY | 3800 N MILWAUKEE AVE | | | CHICAGO | IL | 60641 | |
| MAGID GLOVE & SAFETY MFG CO LLC | MAGID GLOVE & SAFETY MFG CO LLC | 2060 N KOLMAR ST | | | CHICAGO | IL | 60639 | |
| MAGNA POWERTRAIN | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| MAGNA POWERTRAIN USA INC | JEFF BOWES | 1775 RESEARCH DR | | | TROY | MI | 48083 | |
| MAGNESIUM ALUMINUM CORPORATION | VINCE ROTOLE | 3425 SERVICE RD | | | CLEVELAND | OH | 44111 | |
| MAGNESIUM ALUMINUM CORPORATION | VINCE ROTOLE | 3425 SERVICE RD | | | CLEVELAND | OH | 44111 | |
| MAGNETOELASTIC DEVICES INC | | DIRECTOR OF TECHNOLOGY MARKETING | 17 DOWNING THREE | | PITTSFIELD | MASSACHUSETTS | 1201 | |
| MAGNETOELASTIC DEVICES INC | DIRECTOR OF TECHNOLOGY MARKETING | 17 DOWNING THREE | | | PITTSFIELD | MASSACHUSETTS | 01201 | |
| MAHAR TOOL SUPPLY CO | | 112 WILLIAMS STREET | PO BOX 1747 | | SAGINAW | MI | 48605 | |
| MAHLE ENGINE COMPONENTS USA INC | DON LENT | 2001 SANFORD ST | | | MUSKEGON | MI | 49443 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 33 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| MANAGING DIRECTOR | | COMPANIA NACIONAL DE DIRECCIONES | AUTOMOTRICES SA DE CV | CALLE AVE 2 | PARQUE INDUSTRIAL CARTAGENA | | | TULTITLAN ESTADO DE MEXICO |
| MANDO AMERICA CORPORATION | JJ JAE JOON LEE MATERIAL SUPERVISOR | 4201 NORTHPARK DRIVE | | | OPELIKA | AL | 36801 | |
| MANDO AMERICA CORPORATION | STEVE CHO | 45901 FIVE MILE RD | | | PLYMOUTH TOWNSHIP | MI | 48170 | |
| MANDO CORPORATION | AKMCO YANGJAE TOWER | 949 3 DOKOCK DONG | KANGNAM GU | | SEOUL | | | KOREA |
| MANUEL MARTINEZ | | 2576 MOONGLOW DR | | | SAGINAW | MI | 48603 | |
| MANUFAX INC | RANDY SHAW | 1324 D BARLOW ST | | | TRAVERSE CITY | MI | 49686 | |
| MAPRO TEST SYSTEMS INC | JOHN RYAN | 5815 BAY RD STE 400 | | | SAGINAW | MI | 48604-2542 | |
| MARIAH INDUSTRIES | JOHN MESSING | 13125 E 8 MILE RD | | | WARREN | MI | 48089 | |
| MARIAH INDUSTRIES | JOHN MESSING | 13125 E 8 MILE RD | | | WARREN | MI | 48089 | |
| MARKIN TUBING INC | ART SMITH | 1 MARKIN LN | | | WYOMING | NY | 14591 | |
| MARKIN TUBING LP | BOB STEWART | PO BOX 242 | | | WYOMING | NY | 14591-0242 | |
| MARSH PLATING CORP EFT | MATHEW MARSH | 103 N GROVE ST | | | YPSILANTI | MI | 48198 | |
| MARSHALL TOOL SERVICE INC | | 2799 IOWA AVE | | | SAGINAW | MI | 48601-5459 | |
| MARTIN LAGONDA LTD | | 50 60 HIGH PARK DRIVE | WOLVERTON MILL EAST | | MILTON | | | ENGLAND |
| MASTER AUTOMATIC INC | JIM WARD | 40485 SCHOOLCRAFT RD | | | PLYMOUTH | MI | 48170 | |
| MASTER AUTOMATIC INC | JIM WARD | 40485 SCHOOLCRAFT RD | | | PLYMOUTH | MI | 48170 | |
| MASTER AUTOMATIC MACHINE CO INC | | 40485 SCHOOLCRAFT RD | | | PLYMOUTH | MI | 48170 | |
| MASTERS TOOL & DIE INC EFT | CHARLES SMITH | 4485 MARLEA AVE | | | SAGINAW | MI | 48601 | |
| MATERIALS PROCESSING INC | EMMET WINDISCH | 17423 W JEFFERSON AVE | | | RIVERVIEW | MI | 48192 | |
| MATHWORKS INC THE | | 3 APPLE HILL DR | | | NATICK | MA | 01760-2098 | |
| MAVAL MANUFACTURING INC | NO LONGER A SUPPLIER | 1555 ENTERPRISE PARKWAY | | | TWINSBURG | OH | 44087 | |
| MAY & SCOFIELD INC | STACIE STIRTON | 445 E VAN RIPER RD | | | FOWLERVILLE | MI | 48836 | |
| MAY & SCOFIELD INC | STACIE STIRTON | 445 E VAN RIPER RD | | | FOWLERVILLE | MI | 48836 | |
| MAYER TOOL & ENGINEERING INC | PATRICK ROUSSEY | 1404 N CENTERVILLE RD | | | STURGIS | MI | 49091 | |
| MC MASTER CARR SUPPLY CO | | PO BOX 7690 | | | CHICAGO | IL | 60680-7690 | |
| MC NALLEY OFFICE & UPHOLSTERY SVC | MARY MCNALLEY | 5646 SWAN CREEK RD | | | SAGINAW | MI | 48609 | |
| MCDERMOTT WILL & EMERY LLP | DAVID D CLEARY | 227 WEST MONROE STREET | SUITE 5400 | | CHICAGO | IL | 60606 | |
| MCDERMOTT WILL & EMERY LLP | JASON J DEJONKER | 227 WEST MONROE STREET | SUITE 5400 | | CHICAGO | IL | 60606 | |
| MCDERMOTT WILL & EMERY LLP | MOHSIN N KHAMBATI | 227 WEST MONROE STREET | SUITE 5400 | | CHICAGO | IL | 60606 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| MCDERMOTT WILL & EMERY LLP | PETER A CLARK | 227 WEST MONROE STREET | SUITE 5400 | | CHICAGO | IL | 60606 | |
| MCGUIREWOODS LLP | ELIZABETH L GUNN | ONE JAMES CENTER | 901 EAST CARY STREET | | RICHMOND | VA | 23219-4030 | |
| MCTIGUE LAW FIRM | CORNISH F HITCHCOCK | 5301 WISCONSIN AVE NW | SUITE 350 | | WASHINGTON | DC | 20015 | |
| MCTIGUE LAW FIRM | J BRIAN MCTIGUE | 5301 WISCONSIN AVE NW | SUITE 350 | | WASHINGTON | DC | 20015 | |
| MEANS INDUSTRIES INC | PAMELA GREVE | 3715 E WASHINGTON AVE | | | SAGINAW | MI | 48601 | |
| MEANS INDUSTRIES INC | PAMELA GREVE | 3715 E WASHINGTON AVE | | | SAGINAW | MI | 48601 | |
| MECASUR | JAIME AGUIRRE | INGENIERIA 2 PARQUE IND BAHIA | | | PUERTO DE SANTAMARIA | | 11500 | SPAIN |
| MECCANODORA SPA | BILL MCGAUGHEY | VIA TORINO 77 79 | | | BOSCONERO | TO | 10080 | IT |
| MECHANICAL DYNAMICS INC | | 701 BRAZOS ST | | | AUSTIN | TX | 78701 | |
| MENDIGUREN Y ZARRAUA SA | REGINA ZUMETA | AVDA OTAOLA N6 | | | EIBAR GUIPUZCOA | | 20600 | SPAIN |
| MENTOR GRAPHICS CORP | | 8005 SW BOECKMAN RD | | | WILSONVILLE | OR | 97070-9733 | |
| MERIDIAN TECHNOLOGIES INC | JOE PETRILLO | 155 HIGH ST E | | | STRATHROY | ON | N7G 1H4 | CANADA |
| MERRILL TOOL & MACHINE INC | KIM STEMLER | 1023 S WHEELER ST | | | SAGINAW | MI | 48602 | |
| MESIROW FINANCIAL | LEON SZLEZINGER | 666 THIRD AVE | 21ST FLOOR | | NEW YORK | NY | 10017 | |
| METAL FLOW CORPORATION | JIM WISBANG | 11694 JAMES STREET | | | HOLLAND | MI | 49424 | |
| METAL FLOW CORPORATION | JIM WISBANG | 11694 JAMES STREET | | | HOLLAND | MI | 49424 | |
| METAL MATIC INC | DAVID HOPKINS | 629 SECOND ST SE | | | MINNEAPOLIS | MN | 55414 | |
| METAL MATIC INC | DAVID HOPKINS | 629 SECOND ST SE | | | MINNEAPOLIS | MN | 55414 | |
| METAL POWDER PRODUCTS MEXICO | GARY FULTON | ACCESO II MAZANA 3 38 IND B J | | | QUERETARO QA | | 76130 | MEXICO |
| METAL POWDER PRODUCTS MEXICO | JUAN MANSO | ACCESO II MAZANA 3 38 IND B J | | | QUERETARO QA | | 76130 | MEXICO |
| METAL TECHNOLOGIES INC | DAN SCHELLHASE | 429 4TH ST | | | THREE RIVERS | MI | 49093 | |
| METAL TECHNOLOGIES INC | DAN SCHELLHASE | 429 4TH ST | | | THREE RIVERS | MI | 49093 | |
| METALDYNE FORGING OPERATIONS | JAMES RYAN | 6710 INNOVATION BLVD | | | FT WAYNE | IN | 46818 | |
| METALDYNE FORGING OPERATIONS | JAMES RYAN | 6710 INNOVATION BLVD | | | FT WAYNE | IN | 46818 | |
| METFORM DIV OF MACLEAN FOGG | KEVIN HYDE | 2944 WATERVIEW DR | | | ROCHESTER HILLS | MI | 48309 | |
| METFORM DIV OF MACLEAN FOGG | KEVIN HYDE | 2944 WATERVIEW DR | | | ROCHESTER HILLS | MI | 48309 | |
| METHODE ELECTRONICS % KBA AUTOMOTIV | DAVE LEDER | 24585 EVERGREEN RD | | | SOUTHFIELD | MI | 48075 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 35 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| METHODE ELECTRONICS % KBA AUTOMOTIV | DAVE LEDER | 24585 EVERGREEN | | | SOUTHFIELD | MI | 48075 | |
| METHODS MACHINE TOOL INC | | 50531 VARSITY COURT | | | WIXOM | MI | 48393 | |
| METHODS MACHINE TOOLS INC | DAVID PACHULSKI | 50531 VARSITY CT | | | WIXOM | MI | 48393 | |
| METHODS MACHINE TOOLS INCORPORATED | | 65 UNION AVE | | | SUDBURY | MI | 01776 | |
| MEXCOAT SA DE CV | FIDEL GSMEZ FAJARDO | ORIENTE 3 MZ LOTE 10 CD IND'L | | | TIZAYUCA HG | | 43800 | MEXICO |
| MGS MFG GROUP INC | JOHN HAHN | W188 N11707 MAPLE RD | | | GERMANTOWN | WI | 53022 | |
| MIAMI DADE COUNTY TAX COLLECTOR | METRO DADE PARALEGAL UNIT | 140 WEST FLAGLER STREET | SUITE 1403 | | MIAMI | FL | 33130 | |
| MICHIGAN SPRING & STAMPING | RON BAZZY | 2700 WICKHAM DR PO BOX 720 | | | MUSKEGON | MI | 49443 | |
| MICHIGAN SPRING & STAMPING | RON BAZZY | 2700 WICKHAM DR PO BOX 720 | | | MUSKEGON | MI | 49443 | |
| MICRON PRECISON MACHINING INC | ERIC JACOB | 3860 E WASHINGTON RD | | | SAGINAW | MI | 48601 | |
| MICROTECHNIC SAM | MICHAEL EGALON | 2 RUE DU GABIAN | | | MONACO MC MONA | | 98014 | MEXICO |
| MID CONTINENT SPRING %MICH INTL SAL | HAL LEDUC | PO BOX 407 | | | UNION LAKE | MI | 48387 | |
| MID CONTINENT SPRING %MICH INTL SAL | HAL LEDUC | PO BOX 407 | | | UNION LAKE | MI | 48387 | |
| MIDLUX CAR GROUP FLINT | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| MIDLUX CAR GROUP WARREN | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| MIDWEST MOLDING INC | SANJAY PATEL | 741 WINSTON ST PO BOX 189 | | | WEST CHICAGO | IL | 60186 | |
| MIDWEST STAMPING INC | JIM MEISTER | 3455 BRIARFIELD BLVD STE A | | | MAUMEE | OH | 43537 | |
| MIDWEST STAMPING INC | JIM MEISTER | 3455 BRIARFIELD BLVD STE A | | | MAUMEE | OH | 43537 | |
| MIFAST % OLDFORD & ASSOCIATES INC | PAT PATTERSON | 3555 WALNUT ST | | | PORT HURON | MI | 48060 | |
| MIFAST % OLDFORD & ASSOCIATES INC | PAT PATTERSON | 3555 WALNUT ST | | | PORT HURON | MI | 48060 | |
| MIKRON PLASTICS TECHNOLOGY | | 150 PARK CENTER DRIVE | | | HENRIETTA | NY | 14586 | |
| MILBANK TWEED HADLEY & MCCLOY LLP | GREGORY A BRAY ESQ THOMAS R KRELLER ESQ JAMES E TILL ESQ | 601 SOUTH FIGUEROA STREET | 30TH FLOOR | | LOS ANGELES | CA | 90017 | |
| MILES & STOCKBRIDGE PC | KERRY HOPKINS | 10 LIGHT STREET | | | BALTIMORE | MD | 21202 | |
| MILL STEEL CO THE | LEFT VME | 5116 36TH ST SE PO BOX 8827 | | | GRAND RAPIDS | MI | 49518 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 36 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| MILLENNIUM INDUSTRIES CORP | MATT DEROSIA PURCHASING BUYER | 925 N MAIN STREET | | | LIGONIER | IN | 46767 | |
| MILLENNIUM INDUSTRIES CORP | RYAN THORPE | 6285 GARFIELD AVE | | | CASS CITY | MI | 48726 | |
| MILLENNIUM INDUSTRIES CORP | RYAN THORPE | 6285 GARFIELD AVE | | | CASS CITY | MI | 48726 | |
| MILLER TOOL & DIE CO | PAT MILLER | 829 BELDEN RD | | | JACKSON | MI | 49203 | |
| MILLWOOD INC | | 986 TIBBETTS WICK RD | | | GIRARD | OH | 44420-1120 | |
| MILWAUKEE WIRE PRODUCTS INC | BRIAN SCHUSTER | 9201 W HEATHER AVE | | | MILWAUKEE | WI | 53224 | |
| MIS ENVIRONMENTAL SVCS INC | ANNE SCHULTZ | 3515 JANES AVE STE 1 | | | SAGINAW | MI | 48601-6369 | |
| MISTEQUAY GROUP LTD | TIM MATUSZEWSKI | 1212 N NIAGARA PO BOX 1367 | | | SAGINAW | MI | 48605 | |
| MISTEQUAY GROUP LTD | TIM MATUSZEWSKI | 1212 N NIAGARA PO BOX 1367 | | | SAGINAW | MI | 48605 | |
| MIYANO MACHINERY USA INC | GREG SANDLER | 940 N CENTRAL AVE | | | WOOD DALE | IL | 60191 | |
| MMH HOLDINGS INC | MORRIS MATERIAL HANDLING INC | 117 LYON LN | | | BIRMINGHAM | AL | 35211-4477 | |
| MNP CORP | GARY OLEJARCZYK | 44225 UTICA RD PO BOX 189002 | | | UTICA | MI | 48318 | |
| MNP CORP | GARY OLEJARCZYK | 44225 UTICA RD PO BOX 189002 | | | UTICA | MI | 48318 | |
| MOBIS ALABAMA | TOMMY NOAH PURCHASING BUYER | 1395 MITCHELL YOUNG ROAD | | | MONTGOMERY | AL | 36108 | |
| MOBIS ALABAMA PRODUCTION | PEGGY CUMBLE PARTS PURCHASING SPECIALIST | 1395 MITCHELL YOUNG ROAD | | | MONTGOMERY | AL | 36108 | |
| MOCAP INC | LORA CANTONI | 13100 MANCHESTER RD | | | ST LOUIS | MO | 63131 | |
| MOCAP INC | LORA CANTONI | 13100 MANCHESTER RD | | | ST LOUIS | MO | 63131 | |
| MOLEX INC | JOHN MAISEL | 2025 TAYLOR RD | | | AUBURN HILLS | MI | 48326 | |
| MORRISON COHEN LLP | JOSEPH T MOLDOVAN ESQ | 909 THIRD AVENUE | | | NEW YORK | NY | 10022 | |
| MORRISON INDUSTRIAL EQUIPMENT CO | JIM SCHOFIELD | PO BOX 1803 | | | GRAND RAPIDS | MI | 49501-1803 | |
| MORRISON INDUSTRIAL EQUIPMENT CO | JIM SCHOFIELD | 808 N OUTER DR | | | SAGINAW | MI | 48601-6237 | |
| MOTOR CITY STAMPING | NANCY HAWKINSON | 47783 N GRATIOT AVE | | | CHESTERFIELD | MI | 48051 | |
| MOTOR CITY STAMPING | NANCY HAWKINSON | 47783 N GRATIOT AVE | | | CHESTERFIELD | MI | 48051 | |
| MOTOROLA INC | | 21440 WEST LAKE COOK RD | | | DEER PARK | IL | 60010 | |
| MOTOROLA QUADRASTEER | PETER A CLARK ESQ | MCDERMITT WILL & EMERY LLP | 227 WEST MONROE STREET | | CHICAGO | IL | 60606 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| MPI INTERNATIONAL INC | MICHAEL LOSSING | 1617 INDUSTRIAL RD | | | GREENEVILLE | TN | 37745 | |
| MPI INTERNATIONAL INC | MICHAEL LOSSING | 1617 INDUSTRIAL RD | | | GREENEVILLE | TN | 37745 | |
| MPS GROUP | KEVI SULLIVAN | 2920 SCOTTEN | | | DETROIT | MI | 48210 | |
| MPS GROUP | PHIL ROGERS | 2920 SCOTTEN | | | DETROIT | MI | 48210 | |
| MR JAMES BIAFORE | VICE PRESIDENT MARKETING & SALES | BUCKEYE CUSTOM PRODUCTS INC C O BI SALES INC | 1111 W LONG LAKE ROAD SUITE 102 | PO BOX 1259 | TROY | MI | 48099-1259 | |
| MRA INDUSTRIES EFT | JOEL MANSOUR | 44785 MACOMB INDUSTRIAL DR | | | CLINTON TOWNSHIP | MI | 48036 | |
| MRA INDUSTRIES EFT | JOEL MANSOUR | 44785 MACOMB INDUSTRIAL DR | | | CLINTON TOWNSHIP | MI | 48036 | |
| MTS SYSTEMS CORP | STEPHANIE HODGE | 14000 TECHNOLOGY DR | | | EDEN PRAIRIE | MN | 55344-2247 | |
| MTU DRIVE SHAFTS | | 5000 FUTURE DRIVE SUITE 100 | | | LADSON | SC | 29456 | |
| MUBEA INC | WAYNE KOSOWOSKI | 8252 DIXIE HWY | | | FLORENCE | KY | 41042 | |
| MUBEA INC | WAYNE KOSOWOSKI | 8252 DIXIE HWY | | | FLORENCE | KY | 41042 | |
| MUELLER IMPACTS CO | DAVE LOCKHART | 2409 WILLS ST | | | MARYSVILLE | MI | 48040 | |
| MUELLER IMPACTS CO | DAVE LOCKHART | 2409 WILLS ST | | | MARYSVILLE | MI | 48040 | |
| MURSIX CORPORATION TWOSON ESP | | 718 MASSACHUSETTS AVE | | | MATTHEWS | IN | 46957 | |
| NACAM NORTH AMERICA CORP | | 1201 AVIATION BLVD | | | HEBRON | KY | 41048 | |
| NACHI EUROPE GMBH | YURI IMAI | BISHOFSTRASSE 99 | | | KREFELD NW | | 47809 | GERMANY |
| NATG PONTIAC ENGINEERING | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| NATIONAL INSTRUMENTS CORPORATION | | 11500 N MOPAC EXPY BLDG B | | | AUSTIN | TX | 78759-3563 | |
| NATIONAL MOLDING | VINCE HOSKO | 5 DUBON CT | | | FARMINGDALE | NY | 11735 | |
| NATIONAL MOLDING | VINCE HOSKO | 5 DUBON CT | | | FARMINGDALE | NY | 11735 | |
| NATIONAL MOLDING CORP | VINCE HOSKO | 5 DUBON CT | | | FARMINGDALE | NY | 11735 | |
| NATIONAL RENEWABLE ENERGY LABORATORY | | CENTER FOR TRANSPORTATION TECHNOLOGIES | 1617 COLE BOULEVARD | | GOLDEN | CO | 80401-3393 | |
| NCODE INTERNATIONAL INC | | 26877 NORTHWESTERN HWY STE 220 | | | SOUTHFIELD | MI | 48034 | |
| NEW MEXICO INSTITUTE OF MINING AND | | 801 LEROY PLACE | | | SOCORRO | NM | 87801-4750 | |
| NEW UNITED MOTORS MFG INC | JAMIE SCHRECK CALEB DAVIS PURCHASING | 45500 FREMONT BLVD | | | FREMONT | CA | 94538 | |
| NEWBOND | | 480 S AMERICAS AVE STE C 1 | | | EL PASO | TX | 79907-5650 | |
| NEYER TISEO & HINDO LTD | | 4635 44TH ST SE STE C180 | | | GRAND RAPIDS | MI | 49512-4003 | |
| NIAGARA PLASTICS CO INC EFT | GORDY HALMHUBER | 7090 EDINBORO RD | | | ERIE | PA | 16509 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| NIAGARA PLASTICS CO INC EFT | GORDY HALMHUBER | 7090 EDINBORO RD | | | ERIE | PA | 16509 | |
| NICE BALL BEARING CO | JEFF GODFREY | 400 SULLIVAN WAY | | | WEST TRENTON | NJ | 8628 | |
| NILES USA INC WINTECH INC | LORA ERICH | 41129 JO DR | | | NOVI | MI | 48375 | |
| NILES USA INC WINTECH INC | LORA ERICH | 41129 JO DR | | | NOVI | MI | 48375 | |
| NISSAN LOGISTICS CENTER | JOHN WETZEL PRODUCTION BUYER | 624 ENON SPRINGS ROAD EAST | | | SMYRNA | TN | 37167 | |
| NISSAN MOTOR CO LTD | | 2 TAKARA CHO | KANAGAWA KU YOKOHAMA | | KANAGAWA | | 220-8623 | JAPAN |
| NISSAN MOTOR MANUFACTURING | JOHN WETZEL PRODUCTION BUYER PEGGY STOUT PURCHASING SERVICE | NISSAN DRIVE | | | SMYRNA | TN | 37167 | |
| NISSAN NORTH AMERICA INC | | 333 COMMERCE STREET | | | NASHVILLE | TN | 37201-1800 | |
| NN BALL & ROLLER EFT | BOB SAMS | 800 TENNESSEE RD PO BOX 241 | | | ERWIN | TN | 37650 | |
| NN BALL & ROLLER EFT | BOB SAMS | 800 TENNESSEE RD PO BOX 241 | | | ERWIN | TN | 37650 | |
| NORRIS MCLAUGHLIN & MARCUS | ELIZABETH L ABDELMASIEH ESQ | 721 ROUTE 202 206 | PO BOX 1018 | | SOMERVILLE | NJ | 8876 | |
| NORTH ALABAMA GAS DISTRICT | | 108 CHURCH STREET | PO BOX 1428 | | MADISON | AL | 35758 | |
| NORTH ALABAMA GAS DISTRICT | | 602 DEARBORN AVENUE | PO DRAWER 2590 | | MUSCLE SHOALS | AL | 35662 | |
| NORTH ALABAMA GAS DISTRICT | | PO BOX 2605 | | | MUSCLE SHOALS | ALABAMA | 35660 | |
| NORTH ALABAMA INDUSTRIAL SERVICES | NORTH ALABAMA INDUSTRIAL SERVICES | 20300 HARRIS STATION RD | | | TANNER | AL | 35671-3317 | |
| NORTH POINT | MICHELLE M HARNER | 901 LAKESIDE AVENUE | | | CLEVELAND | OH | 44114 | |
| NORTH RENAISSANCE DEVELOPMENT CO | | 909 WASHINGTON AVE | | | BAY CITY | MI | 48708 | |
| NORTH RENAISSANCE DEVELOPMENT LLC | | 909 WASHINGTON AVE PO BOX 348 | | | BAY CITY | MI | 48708 | |
| NORTH TEXAS PLASTICS | RANDY ASHCRAFT | 503 CHAPMAN DR PO BOX 1018 | | | SANGER | TX | 76266 | |
| NORTH TEXAS PLASTICS | RANDY ASHCRAFT | 503 CHAPMAN DR PO BOX 1018 | | | SANGER | TX | 76266 | |
| NORTHEAST REGIONAL OFFICE | MARK SCHONFELD REGIONAL DIRECTOR | 3 WORLD FINANCIAL CENTER | ROOM 4300 | | NEW YORK | NY | 10281 | |
| NOVA MACHINERY INC | DAVID BELOTTI | 22720 WOODWARD AVE STE 207 | | | LAKELAND | MI | 48220-2906 | |
| NRI INDUSTRIES INC | SHAM CHAND | 29200 NORTHWESTERN HWY STE 200 | | | SOUTHFIELD | MI | 48034 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| NRI INDUSTRIES INC | SHAM CHAND | 29200 NORTHWESTERN HWY STE 200 | | | SOUTHFIELD | MI | 48034 | |
| NSK CORP BEARING DIV EFT | CAROL METTLER | 4200 GOSS RD PO BOX 134007 | | | ANN ARBOR | MI | 48106 | |
| NSK CORP BEARING DIV EFT | CAROL METTLER | 4200 GOSS RD PO BOX 134007 | | | ANN ARBOR | MI | 48106 | |
| NSK LTD | | 6 3 OHSAKI 1 CHOME | SHINAGAWA KU | | TOKYO | | 141 | JAPAN |
| NSK LTD | | NISSEI BLDG 1 6 3 OSAKI | | | SHINAGAWA KU | 13 | 1410032 | JP |
| NSS TECHNOLOGIES INC | PETER OLIVER | 9075 GENERAL DRIVE | | | PLYMOUTH | MI | 48170 | |
| NSS TECHNOLOGIES INC | PETER OLIVER | 9075 GENERAL DRIVE | | | PLYMOUTH | MI | 48170 | |
| NTN BEARING CORP OF AMERICA | JONATHAN SNYDER | 39255 WEST 12 MILE RD | | | FARMINGTON HILLS | MI | 48331 | |
| NTN BEARING CORP OF AMERICA | JONATHAN SNYDER | 39255 WEST 12 MILE RD | | | FARMINGTON HILLS | MI | 48331 | |
| NYE INCWM F | BILL BOVENSIEP | 12 HOWLAND RD | | | FAIRHAVEN | MA | 02719 | |
| NYLACAST LIMITED | LOU GRICE | 200 HASTINGS ROAD | | | LEICESTER | | LE5 0HL | ENGLAND |
| NYLACAST LIMITED | LOU GRICE | 200 HASTINGS RD | | | LEICESTER | | LE5 0HL | ENGLAND |
| NYX FORT WAYNE LLC | TRENT HOLMAN | 5727 INDUSTRIAL RD | | | FORT WAYNE | IN | 46825 | |
| OAK HILL CAPITAL PARTNERS | BHAVIN SHAH | 65 EAST 55TH ST | | | NEW YORK | NY | 10022 | |
| OBERLE & ASSOCIATES INC | HNIZDA RON | | 700 NW 2ND ST | | RICHMOND | IN | 47374 | |
| OCE NORTH AMERICA INC | LORI DAROL | 5450 N CUMBERLAND AVE | | | CHICAGO | IL | 60656-1469 | |
| OCE NORTH AMERICA INC | LORI DAROL | 750 STEPHENSON HWY STE 100 | | | TROY | MI | 48083 | |
| OCE NV | IMAGISTICS INTERNATIONAL INC | 24590 LAHSER RD | | | SOUTHFIELD | MI | 48034 | |
| OE SALES | JACK ROSENBLAD PURCHASING BUYER | 239 OLD NEW BRUNSWICK ROAD | | | PISCATAWAY | NJ | 08854 | |
| OETIKER ESPANA SA | INGRID TROMBLEY | POL IND EL PALMAR NAVE 17 | | | CADIZ SPA | IN | 11500 | |
| OETIKER INC | INGRID TROMBLEY | 6317 EUCLID ST | | | MARLETTE | MI | 48453 | |
| OETIKER INC | INGRID TROMBLEY | 6317 EUCLID ST | | | MARLETTE | MI | 48453 | |
| OETIKER LTD (EFT) | INGRID HOLZAPFEL | 203 DUFFERIN ST S PO BOX 5500 | | | ALLISTON | ON | L9R 1W7 | CANADA |
| OFFICE OF NEW YORK STATE | ATTORNEY GENERAL ELIOT SPITZER | 120 BROADWAY | | | NEW YORK CITY | NY | 10271 | |
| OHIO MODULAR MFG CO OMMC | GUY SCHAFER BUYER | 3900 STICKNEY AVENUE | | | TOLEDO | OH | 43608 | |
| OILES AMERICA CORP | DAVE GUGIN | 44099 PLYMOUTH OAKS BLVD ST109 | | | PLYMOUTH | MI | 48170 | |
| OKAYA USA INC | GEN MITOBE | 400 KELBY ST | | | FORT LEE | NJ | 07024 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| OLD KENT BANK | | 1850 E PARIS SE | | | GRAND RAPIDS | MI | 49546 | |
| OLSON INTERNATIONAL LIMITED | MARK OSTERHUES ACCT MGR | 50 W NORTH AVE | | | LOMBARD | IL | 60148 | |
| OLYMPIC COATERS | KAREN DOUGLAS | 354 HUMBERLINE DR | | | ETOBICOKE | ON | M9W 5S3 | CANADA |
| O'MELVENY & MYERS LLP | ROBERT SIEGEL | 400 SOUTH HOPE STREET | | | LOS ANGELES | CA | 90071 | |
| O'MELVENY & MYERS LLP | TOM A JERMAN RACHEL JANGER | 1625 EYE STREET NW | | | WASHINGTON | DC | 20006 | |
| OMNI FORGE INC | NORM ROBAKIEWICZ | COUNTY RD 580 W PO BOX 67 | | | REMINGTON | IN | 47977 | |
| OMNI FORGE INC | NORM ROBAKIEWICZ | COUNTY RD 580 W PO BOX 67 | | | REMINGTON | IN | 47977 | |
| OMNI WAREHOUSE | GREG GERMOND | 966 BRIDGEVIEW S | | | SAGINAW | MI | 48604 | |
| OMNI WAREHOUSE | JON HOWELL | 966 BRIDGEVIEW S | | | SAGINAW | MI | 48604 | |
| ONE EQUITY PARTNERS | LEE GARDNER | 100 BLOOMFIELD HILLS PARKWAY STE 170 | | | BLOOMFIELD HILLS | MI | 48304 | |
| OPEL ESPANAA CISCO 72319 | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| ORBIS CORP | SHEILA DEGRAZIA | 1101 E WHITCOMB AVE | | | MADISON HEIGHTS | MI | 48071-5614 | |
| ORBITAL ENGINEERING INC | RON LUTWEN | 1344 5TH AVE | | | PITTSBURGH | PA | 15219-6214 | |
| ORBITFORM GROUP LLC | BRYAN WRIGHT | PO BOX 1469 | | | JACKSON | MI | 49204 | |
| O'ROURKE KATTEN & MOODY | MICHAEL C MOODY | 161 N CLARK STREET | SUITE 2230 | | CHICAGO | IL | 60601 | |
| OTTO FUCHS METALLWERKE % HUPPERT EN | JOHN YORK | 41000 WOODWARD AVE STE 340 | | | BLOOMFIELD HILLS | MI | 48304 | |
| OTTO FUCHS METALLWERKE % HUPPERT EN | JOHN YORK | 41000 WOODWARD AVE STE 340 | | | BLOOMFIELD HILLS | MI | 48304 | |
| P & R FASTENERS INC | BRIAN ISAACSON | 325 PIERCE ST | | | SOMERSET | NJ | 8873 | |
| P & R FASTENERS INC | BRIAN ISAACSON | 325 PIERCE ST | | | SOMERSET | NJ | 08873 | |
| P & R INDUSTRIES INC | CHARLES SHEELAR | 1524 N CLINTON AVE | | | ROCHESTER | NY | 14621-2206 | |
| P & R INDUSTRIES INC | P & R INDUSTRIES INC | 1524 N CLINTON AVE | | | ROCHESTER | NY | 14621-2206 | |
| P C S CORP | DIRECT SOURCING SOLUTIONS INC | 25200 TELEGRAPH RD | | | SOUTHFIELD | MI | 48034 | |
| PANALPINA | WOO HYUN JUNG | 4300 ALATEX RD | | | MONTGOMERY | AL | 36100 | |
| PANALPINA INC | KIM WOLVERTON | 151 FOLMAR PARKWAY | | | MONTGOMERY | AL | 36109 | |
| PANHARD GENERAL DEFENSE | | 2 RUE PANHARD & LEVASSOR | 91630 MAROLLES EN | | HUREPOIX | | | FRANCE |
| PARIDIGM SINTERED PRODUCTS INC | SUPPLIER CLOSED | 201 FRITZ KEIPER BLVD | | | BATTLE CREEK | MI | 49015 | |
| PARK CORP | PETER STEINER | | | | | | | |
| PARKER ENGINEERED SEALS DIVISION | CRAIG KURKECHIAN | 501 S SYCAMORE | | | SYRACUSE | IN | 46567 | |
| PARKER ENGINEERED SEALS DIVISION | CRAIG KURKECHIAN | 501 S SYCAMORE | | | SYRACUSE | IN | 46567 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PARKER EPS DIVISION | CRAIG KURKECHIAN | 2565 NORTHWEST PARKWAY | | | ELGIN | IL | 60123 | |
| PARKER EPS DIVISION | CRAIG KURKECHIAN | 2565 NORTHWEST PARKWAY | | | ELGIN | IL | 60123 | |
| PARKER HANNIFIN CANADA | CRAIG KURKECHIAN | 64 TROWERS RD UNIT 1 | | | WOODBRIDGE | ON | L4L 7K5 | CANADA |
| PARKER HANNIFIN CORP TUBE FITTINGS | NO LONGER A SUPPLIER | 3885 GATEWAY BLVD | | | COLUMBUS | OH | 43228 | |
| PARKER RUSTPROOF CORP | CONNIE MAREINO | 1688 ARABELLA RD | | | CLEVELAND | OH | 44112 | |
| PARKER SEAL | CRAIG KURKECHIAN | 2360 PALUMBO DR PO BOX 11751 | | | LEXINGTON | KY | 40512 | |
| PARKER SEAL CO | CRAIG KURKECHIAN | 7664 PANASONIC WAY | | | SAN DIEGO | CA | 92154 | |
| PARKER SEAL DE MEXICO SA DE CV | CRAIG KURKECHIAN | RIO LERMA NO 221 PARQUE IND | | | TLALNEPANTLA | | 54030 | MEXICO |
| PARKER SEAL ORD EFT | CRAIG KURKECHIAN | 104 HARTMAN DR | | | LEBANON | TN | 37087 | |
| PARKER SERVICE CENTER | CRAIG KURKECHIAN | 9350 CASTLEGATE DR | | | INDIANAPOLIS | IN | 46278 | |
| PARKER TECH SEAL DIVISION | CRAIG KURKECHIAN | 3125 W CROFT CIR PO BOX 15009 | | | SPARTANBURG | SC | 29302 | |
| PARKER TECH SEAL DIVISION EFT | CRAIG KURKECHIAN | 1525 S 10TH ST PO BOX 517 | | | GOSHEN | IN | 46526 | |
| PATENT COUNSEL | | TRW INC | 1900 RICHMOND ROAD | | CLEVELAND | OH | 44124 | |
| PAUL WEISS RIFKIND WHARTON & GARRISON | CURTIS J WEIDLER | 1285 AVENUE OF THE AMERICAS | | | NEW YORK | NY | 10019-6064 | |
| PAULO PRODUCTS | JERRY JENKINS | 1307 RUTLEDGE WAY | | | MURFREESBORO | TN | 37129 | |
| PAULO PRODUCTS CO | JERRY JENKINS | 5711 W PARK AVE | | | ST. LOUIS | MO | 63110-1834 | |
| PAULO PRODUCTS CO | JERRY JENKINS | 1307 RUTLEDGE WAY | | | MURFREESBORO | TN | 37129 | |
| PENN ALUMINUM % LAWRENCE BOENSCH CO | TRIXI BOENSCH | 5 MECHANIC STREET PO BOX 579 | | | OXFORD | MI | 48371 | |
| PENSION BENEFIT GUARANTY CORPORATION | JEFFREY COHEN | 1200 K STREET NW | SUITE 340 | | WASHINGTON | DC | 20005 | |
| PENSION BENEFIT GUARANTY CORPORATION | RALPH L LANDY | 1200 K STREET NW | SUITE 340 | | WASHINGTON | DC | 20005-4026 | |
| PENSKE LOGISTICS | FRED ERB | 1400 WARREN ST | | | KANSAS CITY | MO | 64116 | |
| PERROTTON SA (ETS JEAN) | PHILIPPE PERROTTON | 900 AVE DE PONTCHY | | | BONNEVILLE | | 74130 | FRANCE |
| PETERSON MANUFACTURING CO | GERRY YATES | 155 CATTLEMEN RD | | | SARASOTA | FL | 34232 | |
| PETERSON MANUFACTURING CO | GERRY YATES | 155 CATTLEMEN RD | | | SARASOTA | FL | 34232 | |
| PETERSON SPRING GEORGIA PLANT | CARRY FOSTER | OLD HULL RD PO BOX 5859 | | | ATHENS | GA | 30613 | |
| PETERSON SPRING GEORGIA PLANT | CARRY FOSTER | OLD HULL RD PO BOX 5859 | | | ATHENS | GA | 30613 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| PETTEY MACHINE WORKS | BILL PETTEY | 16 N SENECA DR PO BOX 729 | | | TRINITY | AL | 35673 | |
| PEUGEOT | | TOUR MANHATTAN | LA DEFENSE | | PARIS | | 92094 | FRANCE |
| PHILIP SERVICES CORP | PSC ENTERPRISES INC | 3158 HWY 20 W BLDG 6 | | | DECATUR | AL | 35601 | |
| PHILIP SERVICES CORP | PSC ENTERPRISES INC | VINCE SHEERER | 5151 SAN FELIPE SUITE 1600 | | HOUSTON | TX | 77056 | |
| PHILLIPS NIZER LLP | SANDRA A RIEMER | 666 FIFTH AVENUE | | | NEW YORK | NY | 10103 | |
| PHILLIPS PLASTICS CORPORATION | GREG MOELLER | 30230 ORCHARD LAKE RD STE 150 | | | FARMINGTON HILLS | MI | 48335 | |
| PHILLIPS PLASTICS CORPORATION | GREG MOELLER | 30230 ORCHARD LAKE RD STE 150 | | | FARMINGTON HILLS | MI | 48335 | |
| PICKREL SHAEFFER & EBELING | SARAH B CARTER ESQ | 2700 KETTERING TOWER | | | DAYTON | OH | 45423 | |
| PINNACLE AUTOMATION INC | | PO BOX 1743 | | | DECATUR | AL | 35602-1743 | |
| PITNEY BOWES INC EFT | WILLIAM POTTS | 750 STEPHENSON HWY STE 100 | | | TROY | MI | 48083 | |
| PJ SPRING CO INC | DICK GALBALLY | 1180 ATLANTIC DR | | | WEST CHICAGO | IL | 60185 | |
| PJ SPRING CO INC | DICK GALBALLY | 1180 ATLANTIC DR | | | WEST CHICAGO | IL | 60185 | |
| PLASTECH % ALPHA TECH | MARTIN MUELLER | 9140 COMPTON ST | | | INDIANAPOLIS | IN | 46240 | |
| PLASTECH % ALPHA TECH | MARTIN MUELLER | 9140 COMPTON ST | | | INDIANAPOLIS | IN | 46240 | |
| PLASTECH MFG CORP | MARTIN MUELLER | 1111 S COLLING RD | | | CARO | MI | 48723 | |
| PLASTECH MFG CORP | MARTIN MUELLER | 1111 S COLLING RD | | | CARO | MI | 48723 | |
| PLASTIC SOLUTIONS INC | ART HORVATH | 701 W CHIPPEWA AVEPO BOX 2378 | | | SOUTH BEND | IN | 46680 | |
| PLASTIC SOLUTIONS INC | ART HORVATH | 701 W CHIPPEWA AVEPO BOX 2378 | | | SOUTH BEND | IN | 46680 | |
| PLASTICOS ABC SPAIN SA SOCIEDAD UNI | AMILCAR HERRERA | PGNO IND LAS CASA II CALLE H | | | SORIA | | 42005 | SPAIN |
| PLASTICOS MORRELL SA | JOSI MARMA SOCIAS | TORRE BOVERA 41 49 | | | SANT ANDREU LA BARCA ES | | 08950 | SPAIN |
| PLASTOMER DIV OF CONSUMERS GLASS CO | JUNE PYNN | 151 JOHN ST PO BOX 14000 | | | BARRIE | ON | L4M 4V3 | CANADA |
| PLATINUM EQUITY ADVISORS | JOHNNY LOPEZ | 2049 CENTURY PARK EAST STE 2700 | | | LOS ANGELES | CA | 90067 | |
| PLYMOUTH TUBE | LANCE THOMAS | 29 W 150 WARRENVILLE RD | | | WARRENVILLE | IL | 60555 | |
| POHLMAN INC | TOM WIETHORN | 140 LONG RD | | | CHESTERFIELD | MO | 63005 | |
| POHLMAN INC | TOM WIETHORN | 140 LONG RD | | | CHESTERFIELD | MO | 63005 | |
| POLARIS INDUSTIRES INC | JOHN PETERSON PRODUCTION BUYER | 301 5TH AVENUE SW | | | ROSEAU | MN | 56751 | |
| POLARIS INDUSTRIES INC | | 2100 NORTH HIGHWAY 55 | | | MEDINA | MINNESOTA | 55340-9770 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 43 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| POLTRON | VOYTEK FIZYTA | 5123 PEGASUS CT STE E | | | FREDERICK | MD | 21704 | |
| POLTRON | VOYTEK FIZYTA | 5123 PEGASUS CT STE E | | | FREDERICK | MD | 21704 | |
| POLYONE DISTRIBUTION | SCOTT SODERSTROM | 4075 MILLENIUM BLVD SE | | | MASSILLON | OH | 44646 | |
| PONTIAC COIL INC | | 5800 MOODY DR | | | CLARKSTON | MI | 48348-4768 | |
| PONTIAC COIL INC | PAUL MCINTYRE | 5800 MOODY DR | | | CLARKSTON | MI | 48348 | |
| PONTIAC COIL INC | PAUL MCINTYRE | 5800 MOODY DR | | | CLARKSTON | MI | 48348 | |
| PORITE USA | RANDY SISK | 1295 COMBERMERE DR | | | TROY | MI | 48083 | |
| POWER & SIGNAL GROUP | CELESTINE STANLEY | 4670 RICHMOND RD | | | CLEVELAND | OH | 44128 | |
| PRA COMPANY | ELLIOT BUCHANAN | 1415 W CEDAR ST | | | STANDISH | MI | 48658-9527 | |
| PRAXAIR INC | | 300 E GREAT LAKES ST | | | RIVER ROUGE | MI | 48218-2606 | |
| PRECISION MFG CO INC | CATHY HANLIN | 2159 VALLEY ST | | | DAYTON | OH | 45404 | |
| PRECISION MFG CO INC | CATHY HANLIN | 2159 VALLEY ST | | | DAYTON | OH | 45404 | |
| PRECISION PLASTIC & DIE CO EFT | MIKE THOMAS | 2545 W MAPLE RD NO 1 | | | TROY | MI | 48084 | |
| PRECISION PLASTIC & DIE CO EFT | MIKE THOMAS | 2545 W MAPLE RD NO 1 | | | TROY | MI | 48084 | |
| PRESIDENT | DHB COMPONENTES AUTOMOTIVOS SA | AVENIDA DAS INDUSTRIAS | 864 BARRIO ANCHIETA | | PORTO ALEGRE | RS | CEP 90200-290 | BRASIL |
| PRIDGEON & CLAY INC | AL BOLT | 50 COTTAGE GROVE SW | | | GRAND RAPIDS | MI | 49507 | |
| PRIDGEON & CLAY INC | AL BOLT | 50 COTTAGE GROVE SW | | | GRAND RAPIDS | MI | 49507 | |
| PRINCE MANUFACTURING DE MEXICO PLT | ALBERT AHUMADA | AV VALLE CEDRO NO 1680 | | | CD JUAREZ CHI | | 32574 | MEXICO |
| PROCESOS CONTROLADOS SA DE CV | CECILIA BAQUELOS RIVAS | CERRO DEL TZIRATE 24 LAS AMERI | | | QUERETARO QUA | | 76000 | MEXICO |
| PRODUCTION MACHINING OF ALMA INC E | RAYMOND CULL | 6595 N JEROME RD | | | ALMA | MI | 48801 | |
| PRODUCTION MACHINING OF ALMA INC E | RAYMOND CULL | 6595 N JEROME RD | | | ALMA | MI | 48801 | |
| PRODUCTION SCREW MACHINE CO | DAVID MUSGRAVE | 1414 E SECOND ST | | | DAYTON | OH | 45403 | |
| PRODUCTION SCREW MACHINE CO | DAVID MUSGRAVE | 1414 E SECOND ST | | | DAYTON | OH | 45403 | |
| PRODUCTOS ESPECIALIZADOS DE ACERO S | GUILLERMO NAVARRETE | EJE 130 NO 135 | | | SAN LUIS POTOSI SL | | 78395 | MEXICO |
| PROFESSIONAL TECHNOLOGIES SERVICES | JOHN V GORMAN | PO BOX NO 304 | | | FRANKENMUTH | MI | 48734 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| PROFIROLL TECHNOLOGIES USA INC | ANDRE HILDEBRANDT | 24300 CATHERINE INDUSTRIAL DR NO 401 | | | NOVI | MI | 48375-2457 | |
| PROGRESSIVE STAMPING EFT | BOB SMITH | 2807 SAMOSET AVE | | | ROYAL OAK | MI | 48073 | |
| PROGRESSIVE STAMPING EFT | BOB SMITH | 2807 SAMOSET AVE | | | ROYAL OAK | MI | 48073 | |
| PROYECTOS REPARACIONES OBRAS Y CON | | COL EX HIPODROMO | | | CD JUAREZ | CHI | 32340 | MX |
| PTC TUBULAR PRODUCTS LLC | DOUG WILKINS | 1480 N W 11TH ST | | | RICHMOND | IN | 48374 | |
| QUALITECH INTERNATIONAL INC | | 42705 GRAND RIVER AVE STE 201 | | | NOVI | MI | 48375-1772 | |
| QUALITY CONTROL DESIGN INC | MARK DELUCA | 50495 CORPORATE DR STE 112 | | | SHELBY TOWNSHIP | MI | 48315 | |
| QUALITY INDUSTRIAL SERVICES QIS | CALVIN HARRIS | 27481 BEVERLY RD | | | ROMULUS | MI | 48174 | |
| QUANTUM LLC | | 2880 UNIVERSAL DR | | | SAGINAW | MI | 48603 | |
| QUANTUM STORAGE | | 807 AIRPORT ACCESS RD | | | TRAVERSE CITY | MI | 49686-3511 | |
| QUASAR INDUSTRIES | C WAYNE MILLER | 1911 NORTHFIELD DR | | | ROCHESTER HILLS | MI | 48309 | |
| R & L SPRING CO % AI NELSON & ASS | ART NELSON | 209 DOUGLAS PO BOX 92 | | | MONTROSE | MI | 48457 | |
| R & L SPRING CO % AI NELSON & ASS | PHILIP T SPIETH | ONE INTERNATIONAL DR | | | MONROE | MI | 48161 | |
| R&M ENGINEERING INC | RON MILLER JR | 7920 WEBSTER | | | FREELAND | MI | 48623 | |
| RALCO INDUSTRIES INC | TOM GITTER | 2720 AUBURN CT | | | AUBURN HILLS | MI | 48326 | |
| RALCO INDUSTRIES INC | TOM GITTER | 2720 AUBURN CT | | | AUBURN HILLS | MI | 48326 | |
| RAMCEL ENGINEERING COMPANY | BILL KRETZER | 2926 MAC ARTHUR BLVD | | | NORTHBROOK | IL | 60062 | |
| RANGER TOOL & DIE CO EFT | CHRIS WILLIAMS | 317 S WESTERVELT ST | | | SAGINAW | MI | 48604 | |
| RANGER TOOL & DIE CO EFT | CHRIS WILLIAMS | 317 S WESTERVELT ST | | | SAGINAW | MI | 48604 | |
| RB&W CORP OF CANADA | LIBBY TUCKEY | 5190 BRADCO BLVD | | | MISSISSAUGA | ON | L4W 1G7 | CANADA |
| RBC BEARINGS | JEFF GODFREY | 400 SULLIVAN WAY | | | WEST TRENTON | NJ | 08628 | |
| RBC PRECISION PRODUCTS INC | JEFF GODFREY | 2928 GARY DR | | | PLYMOUTH | IN | 46506 | |
| REA INTERNATIONAL ANTOMAX DIVISION | LJUBOMIR SCEPANOVIC | 7405 TRANMERE DR | | | MISSISSAUGA | ON | L5S 1L4 | CANADA |
| REA INTERNATIONAL ATLAS DIVISION | LJUBOMIR SCEPANOVIC | 10 ATLAS CT | | | BRAMPTON | ON | L6T 5C1 | CANADA |
| RECYDE SA | JAIME AGUIRRE | PGO INDUSTRIAL POGATZA S N | | | ELGEUTA GUIPUZCOA | | 20690 | SPAIN |
| RED SPOT PAINT & VARNISH CO INC | TOM SPAGNUOLO | 550 EDWIN | | | WESTLAND | MI | 48185 | |
| REED SMITH | RICHARD P NORTON | ONE RIVERFRONT PLAZA | 1ST FLOOR | | NEWARK | NJ | 07102 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| REEF TOOL & GAGE CO INC | WARNER BAUER | 44800 MACOMB INDUSTRIAL DR | | | CLINTON TOWNSHIP | MI | 48036 | |
| REGINA H REDING | | 610 CLEARVIEW ST SW | | | DECATUR | AL | 35601 | |
| REIMOLD PRINTING CORP | MIKE WHITE | 3201 HALLMARK CT | | | SAGINAW | MI | 48603 | |
| RELIASOFT CORP | | 1450 S EASTSIDE LOOP | | | TUCSON | AZ | 85710 | |
| REMAN INC | DON HOWINGTON | 110 E 9TH ST PO BOX 900 | | | DECATUR | MS | 39327 | |
| REMAN INC | DON HOWINGTON | 110 E 9TH ST PO BOX 900 | | | DECATUR | MS | 39327 | |
| REMAN INC EFT | DON HOWINGTON | 6586 HWY 13 | | | MORTON | MS | 39117 | |
| REMAN INC EFT | DON HOWINGTON | 6586 HWY 13 | | | MORTON | MS | 39117 | |
| REME SA DE CV | HELMUT HUBER | AV 5 DE FEBRERO NO 1718 | | | QUERETARO QA | | 76130 | MEXICO |
| REME SA DE CV | HELMUT HUBER | AV 5 DE FEBRERO NO 1718 | | | QUERETARO QA | | 76130 | MEXICO |
| RENAULT SAS | | SOCIETE PAR ACTIONS SIMPLIFIEE | 13 15 QUAI ALPHONSE LE GALLO | | 92100 BOULOGNE-BILLANCOURT | | | FRANCE |
| RENAULT SAS GRAND COURONNE | | 13 15 QUAI ALPHONSE LE GALLO | F92513 BOULOGNE BILLANCOURT | | CEDEX | | | FRANCE |
| RENAULT SERVICE 0753 | | 8 10 AVENUE EMILE ZOLA | F 92109 BOULOGNE BILLANCOURT | | CEDEX | | | FRANCE |
| RENCO GROUP | MARVIN KOENIG | 30 ROCKEFELLER PLAZA STE 4225 | | | NEW YORK | NY | 10112 | |
| REPRO PARTS INC | RICH VERBA | 881 INDUSTRIAL DR | | | ELMHURST | IL | 60126 | |
| REPUBLIC ENGINEERED PRODUCTS INC | JOSEPH LAPINSKY | 3770 EMBASSY PARKWAY | | | AKRON | OH | 44333 | |
| REPUBLIC TECHNOLOGIES INTERNATIONAL | DON UMBOWER | 3770 EMBASSY PARKWAY | | | AKRON | OH | 44333 | |
| REPUBLIC TECHNOLOGIES INTERNATIONAL | DON UMBOWER | 3770 EMBASSY PARKWAY | | | AKRON | OH | 44333 | |
| RESIN SERVICES INC | LYNN HAMLIN | 5959 18 1 2 MILE RD | | | STERLING HEIGHTS | MI | 48314 | |
| RESINAS COLORES Y COMPUESTOS SA DE | LEONARDO CENOZ | AVE INDEPENDENCIA NO 105 | | | SAN MATEO ATENCO TOLUCA | | 52100 | MEXICO |
| RING MASTERS LLC | LINDA MILLER | 240 SIXTH ST NW | | | MASSILLON | OH | 44647 | |
| RING MASTERS LLC | LINDA MILLER | 240 SIXTH ST NW | | | MASSILLON | OH | 44647 | |
| RING SCREW LLC HOLLY DISTRIBUTION C | CHRIS VANHEUSDEN | 4160 E BALDWIN RD | | | HOLLY | MI | 48442 | |
| RING SCREW LLC HOLLY DISTRIBUTION C | CHRIS VANHEUSDEN | 4160 E BALDWIN RD | | | HOLLY | MI | 48442 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 46 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| RIPPLEWOOD HOLDINGS | MICHAEL DURAN | 1 ROCKEFELLER PLAZA FL 32 | | | NEW YORK | NY | 10020 | |
| RJW MANUFACTURING | TAMMY CARTER | 1968 HIGHWAY 31 S PO BOX 1103 | | | ATHENS | AL | 35612 | |
| RJW MANUFACTURING INC | TAMMY CARTER | PO BOX 1103 | | | ATHENS | AL | 35612-1103 | |
| RJW MANUFACTURING INC | TAMMY CARTER | PO BOX 1103 | | | ATHENS | AL | 35612 | |
| ROBIN MEXICANA S DE RL DE CV | JUANCARLOS AGUILAR | AVENIDA LAS MISIONES NO 9 | | | EL MARQUEZ QA | | 76246 | MEXICO |
| ROBINSON INDUSTRIES INC | BILL WILSON | PO BOX 521 | | | COLEMAN | MI | 48618-0521 | |
| ROBINSON INDUSTRIES INC | IZZAT OSAMA | PO BOX 521 | | | COLEMAN | MI | 48618-0521 | |
| ROCKFORD PRODUCTS CORP EFT | LAWRENCE FEY | 707 HARRISON AVE | | | ROCKFORD | IL | 61104 | |
| ROCKFORD PRODUCTS CORP EFT | LAWRENCE FEY | 707 HARRISON AVE | | | ROCKFORD | IL | 61104 | |
| ROCTEL MFG % LINAMAR SALES | TOM WINKLE | 26555 EVERGREEN RD STE 900 | | | SOUTHFIELD | MI | 48076 | |
| ROGERS FOAM CORP | VICKI CHU | 20 VERNON ST | | | SOMERVILLE | MA | 02145 | |
| ROPERS MAJESKI KOHN & BENTLEY | CHRISTOPHER NORGAARD | 515 SOUTH FLOWER STREET | SUITE 1100 | | LOS ANGELES | CA | 90071 | |
| ROSE AJ MANUFACTURING CO INC | RYAN THOMAS | 38000 CHESTER RD | | | AVON | OH | 44011 | |
| ROSE AJ MANUFACTURING CO INC | RYAN THOMAS | 38000 CHESTER RD | | | AVON | OH | 44011 | |
| ROSLER METAL FINISHING USA LLC | LAWRENCE GREEN | 1551 DENSO RD | | | BATTLE CREEK | MI | 49015 | |
| ROTAFORM LLC | DALE DELIZIO | 1420 S LIVERNOIS | | | ROCHESTER HILLS | MI | 48307 | |
| ROTAFORM LLC | DALE DELIZIO | 1420 S LIVERNOIS | | | ROCHESTER HILLS | MI | 48307 | |
| ROTHCHILD INC | DAVID L RESNICK | 1251 AVENUE OF THE AMERICAS | | | NEW YORK | NY | 10020 | |
| ROTOR CLIP CO EFT | HENRY YATES | 187 DAVIDSON AVE | | | SOMERSET | NJ | 8875 | |
| ROTOR CLIP CO EFT | HENRY YATES | 187 DAVIDSON AVE | | | SOMERSET | NJ | 08875 | |
| ROWAN TECHNOLOGIES INC | INDUCTOHEAT INC | 32251 N AVIS DR | | | MADISON HEIGHTS | MI | 48071-1502 | |
| RPK S COOP | JULIO HAS NOT RESPONDED | PORTAL DE GAMARRA 34 | | | VITORIA | | 01013 | SPAIN |
| RPK SOCIEDAD COOPERATIVA | JULIO HAS NOT RESPONDED | PORTAL DE GAMARRA 34 | | | VITORIA | | 01013 | SPAIN |
| RPM PLASTICS INC | CARRIE JONES | 35310 STANLEY | | | STERLING HEIGHTS | MI | 48312 | |
| RYCO DESIGN & RESEARCH INC | | 230 CELTIC DR | | | MADISON | AL | 35758 | |
| RYCO DESIGN & RESEARCH INC | RYCO DESIGN & RESEARCH INC | 230 CELTIC DR | | | MADISON | AL | 35758 | |
| RYCO ENGINEERING INC | R&M ENGINEERING INC | RON MILLER JR | 7920 WEBSTER | | FREELAND | MI | 48623 | |
| S & Z METALWORKS LTD | JIM BALDWIN | 3180 BEREA RD PO BOX 74544 | | | CLEVELAND | OH | 44194 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| S & Z TOOL & DIE CO INC | JIM BALDWIN | 3180 BEREA RD PO BOX 74544 | | | CLEVELAND | OH | 44194 | |
| SAAB AUTOMOBIL AB | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| SAAB SCANIA OF AMERICA INC | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| SABO USA INC | DAVID YATES | 44099 PLYMOUTH OAKS BLVD ST112 | | | PLYMOUTH | MI | 48170 | |
| SABO USA INC | DAVID YATES | 44099 PLYMOUTH OAKS BLVD ST112 | | | PLYMOUTH | MI | 48170 | |
| SACHNOFF & WEAVER LTD | CHARLES S SCHULMAN | 10 SOUTH WACKER DRIVE | 40TH FLOOR | | CHICAGO | IL | 60606 | |
| SACHS AUTOMOTIVE OF AMERICA | WANDA SMITH | 15811 CENTENNIAL DR | | | NORTHVILLE | MI | 48168 | |
| SAET SOCIETA APPLICAZIONI ELETTRO | STEFANO BARALIS | VIA TORINO 213 | | | LEINI | IT | 10040 | IT |
| SAFETYTECH PROTECTION SYSTEMS INC | HNIZDA RON | | PO BOX 616 | | LAPEL | IN | 46051 | |
| SAGINAW BAY PLASTICS INC | DAVE BURKE | 2768 S HURON RD PO BOX 507 | | | KAWKAWLIN | MI | 48631 | |
| SAGINAW CENTRE DEVELOPMENT COMPANY LLC | | 804 S HAMILTON ST | | | SAGINAW | MI | 48602 | |
| SAGINAW MACHINE SYSTEMS INC | SAGINAW MACHINE SYSTEMS INC | 800 N HAMILTON ST | | | SAGINAW | MI | 48602-4354 | |
| SAGINAW VALLEY REHABILITATION CTR | DEAN EMERSON | 919 VETERANS MEMORIAL PKWY | | | SAGINAW | MI | 48601 | |
| SAGINAW VALLEY REHABILITATION CTR | DEAN EMERSON | 919 VETERANS MEMORIAL PKWY | | | SAGINAW | MI | 48601 | |
| SAGINAW VALLEY STATE UNIVERSITY | | 7400 BAY RD | UNIVERSITY CENTER | | SAGINAW | MI | 48710 | |
| SAIC USA INC | MICHAEL DONG SALES MANAGER | 1301 WEST LONG LAKE ROAD | SUITE 190 | | TROY | MI | 48098 | |
| SAINT GOBAIN PERFORMANCE PLASTICS | KEVIN KINAHAN | 150 DEY RD | | | WAYNE | NJ | 7470 | |
| SAINT GOBAIN PERFORMANCE PLASTICS | KEVIN KINAHAN | 150 DEY RD | | | WAYNE | NJ | 07470 | |
| SALINE ACH LLC VISTEON | STEVE SZCZPANIAK PURCHASING MANAGER | 7700 MICHIGAN AVE | | | SALINE | MI | 48176 | |
| SALINE METAL SYSTEMS | RICH SULKOWSKI | 905 WOODLAND DR | | | SALINE | MI | 48176 | |
| SALINE METAL SYSTEMS METALFORMING TECHNOLOGIES INC | RICH SULKOWSKI | 905 WOODLAND DR | | | SALINE | MI | 48176 | |
| SANDIA CORPORATION | ATTN RUSSELL D SKOCYPEC | PO BOX 5800 | CRADA SC92 01133 | | ALBUQUERQUE | NM | 87185-5800 | |
| SANDIA CORPORATION | ATTN RUSSELL D SKOCYPEC | BLDG 957 | CRADA SC92 01133 | 1515 EUBANK BLVD SE | ALBUQUERQUE | NM | 87123 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 48 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| SANLUIS RASSINI INTERNATIONAL | GUSTAVO ABURTO | 14500 BECK RD | | | PLYMOUTH | MI | 48170 | |
| SANLUIS RASSINI INTERNATIONAL | KARRIE'S GONE STEVE & DON DON'T KNOW CONTACT | 14500 BECK RD | | | PLYMOUTH | MI | 48170 | |
| SATURN CORPORATION | LEIGH DUSHANE WAYNE THOMPSON SPECIAL PROJECTS COORDINATOR SERVICE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| SCATE ELEARNING INC | | 100 ENGELWOOD DRIVE | SUITE F | | ORION | MICHI GAN | 48359 | |
| SCHAFER & WEINER PLLC | | 40950 WOODWARD AVE NO 100 | | | BLOOMFIELD HILLS | MI | 48304 | |
| SCHAFER AND WEINER PLLC | MAX NEWMAN | 40950 WOODWARD AVE | SUITE 100 | | BLOOMFIELD HILLS | MI | 48304 | |
| SCHIFF HARDIN LLP | WILLIAM I KOHN | 6600 SEARS TOWER | | | CHICAGO | IL | 60066 | |
| SCHMALD TOOL & DIE | WENDY SANBORN | 4206 S SAGINAW ST | | | BURTON | MI | 48529 | |
| SCHMALD TOOL & DIE INC | WENDY SANBORN | G4206 S SAGINAW ST | | | BURTON | MI | 48529 | |
| SCHMITTERFRANCE SA | RYAN THORPE | 52 RUE DES BATELIERS BP 81 016 | | | ETUPES | | 25461 | FRANCE |
| SCHULMAN INC A | JANE MASELLI | 2100 E MAPLE RD | | | BIRMINGHAM | MI | 48009 | |
| SCIENTIFIC FORMING TECHNOLOGIES | | 5038 REED RD | | | COLUMBUS | OH | 43220-2514 | |
| SCM METAL PRODUCTS INC | GARY COWAN | 2601 WECK DR PO BOX 12166 | | | RESEARCH TRIANGLE PARK | NC | 27709 | |
| SCOTT A ABNEY ESQ | MAYNARD COOPER & GALE PC | 1901 SIXTH AVENUE NORTH | 2400 AMSOUTH HARBERT PLAZA | | BIRMINGHAM | ALABA MA | 35203 | |
| SCOTT SPECIALTY GASES INC | SCOTT SPECIALTY GASES INC | 1750 E CLUB BLVD | | | DURHAM | NC | 27704-3408 | |
| SECOR INTERNATIONAL INC | SECOR INTERNATIONAL INC | 318 SEABORAD LN STE 101 | | | FRANKLIN | TN | 37067 | |
| SECURITY PLASTICS DIV NMC LLC | VINCE HOSKO | 14427 NW 60TH AVE | | | MIAMI LAKES | FL | 33014 | |
| SECURITY PLASTICS DIV NMC LLC | VINCE HOSKO | 14427 NW 60TH AVE | | | MIAMI LAKES | FL | 33014 | |
| SEEGER ORBIS GMBH & CO OHG | HANS PETER ROTH | WIESBADENER STR 243 247 SCHNEI | | | KOENIGSTEIN HE | | 61462 | GERMANY |
| SEGA INC | KVIN KRAATZ | 16041 FOSTER ST | | | STILWELL | KS | 66085-8876 | |
| SELECT INDUSTRIES | LARRY RABER | 60 HEID AVE PO BOX 887 | | | DAYTON | OH | 45401 | |
| SELECT INDUSTRIES | LARRY RABER | 60 HEID AVE PO BOX 887 | | | DAYTON | OH | 45401 | |
| SELTEK INTERNATIONAL INC | LUIS FLORES | 5130 GATEWAY | | | EL PASO | TX | 79905 | |
| SEMBLEX CORP EFT | PATRICK DOWNS | 199 W DIVERSEY | | | ELMHURST | IL | 60126 | |
| SEMBLEX CORP EFT | PATRICK DOWNS | 199 W DIVERSEY | | | ELMHURST | IL | 60126 | |
| SENSUS PRECISION DIE CASTING | GREG WILLIAMS | 232 HOPKINSVILLE RD PO BOX 440 | | | RUSSELLVILLE | KY | 42276 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 49 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SENSUS PRECISION DIE CASTING INC | GEORGE M CHEEVER ESQ | KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP | HENRY W OLIVER BUILDING | 535 SMITHFIELD STREET | PITTSBURGH | PA | 15222 | |
| SEVERSTAL NORTH AMERICA INC | BOB MARSICO | 3001 MILLER RD PO BOX 1699 | | | DEARBORN | MI | 48120 | |
| SEVERSTAL NORTH AMERICA INC | BOB MARSICO | 3001 MILLER RD PO BOX 1699 | | | DEARBORN | MI | 48120 | |
| SEYFARTH SHAW LLP | ROBERT W DREMLUK | 620 EIGHTH AVE | | | NEW YORK | NY | 10018-1405 | |
| SEYMOUR TUBING INC | ROBIN KARMOLINSKI | 1515 W 4TH ST | | | SEYMOUR | IN | 47274 | |
| SGF % HUPPERT ENGINEERING | DAN MCALINDEN | 41000 WOODWARD AVE STE 340 | | | BLOOMFIELD HILLS | MI | 48304 | |
| SHEARMAN & STERLING LLP | DOUGLAS BARTNER JILL FRIZZLEY | 599 LEXINGTON AVENUE | | | NEW YORK | NY | 10022 | |
| SHELL LUBRICANTS | GEOFF STAURSKY | 777 WALKER AVE PO BOX 4427 | | | HOUSTON | TX | 77002 | |
| SHELL LUBRICANTS | GEOFF STAURSKY | 777 WALKER AVE PO BOX 4427 | | | HOUSTON | TX | 77002 | |
| SHELL OIL PRODUCTS US | GEOFF STAURSKY | 700 MILAM ST | | | HOUSTON | TX | 77002 | |
| SHINCHANG AMERICA CORP | DANIEL KIM | 47200 PORT ST | | | PLYMOUTH | MI | 48170 | |
| SHINCHANG AMERICA CORP | DANIEL KIM | 47200 PORT ST | | | PLYMOUTH | MI | 48170 | |
| SHIPMAN & GOODWIN LLP | JENNIFER L ADAMY | ONE CONSTITUTION PLAZA | | | HARTFORD | CT | 06103-1919 | |
| SHIVELY BROS INC | CHRISTINA THORNTON | PO BOX 1347 | | | SAGINAW | MI | 48605 | |
| SHIVELY BROS INC | CHRISTINA THORNTON | PO BOX 1347 | | | SAGINAW | MI | 48605 | |
| SHIVELY BROTHERS INC | SCOTT SHIVELY | PO BOX 1347 | | | SAGINAW | MI | 48605-1347 | |
| SIDENOR SA | LOLI GONZALEZ | BARRIO URGARTE S N | | | BASAURI VIZCAYA ES | | 48970 | SPAIN |
| SIEMEN UGS | | 5400 LEGACY RD | | | PLANO | TX | 75024 | |
| SIGNATURE ALUMINUM % BARTLEMAY | PHILIP T SPIETH | ONE INTERNATIONAL DR | | | MONROE | MI | 48161 | |
| SIGNATURE ALUMINUM % BARTLEMAY WERNER HOLDINGS | DAVE BARTLEMAY | 4821 OLD NATIONAL RD EAST | | | RICHMOND | IN | 47374 | |
| SIGNATURE FINANCIAL GROUP INC | | 24725 WEST TWELVE MILE RD STE 302 | | | SOUTHFIELD | MI | 48034 | |
| SIMPSON THATCHER & BARTLETT LLP | KENNETH S ZIMAN ROBERT H TRUST WILLIAM T RUSSELL JR | 425 LEXINGTON AVENUE | | | NEW YORK | NY | 10017 | |
| SIMTEK INDUSTRIES INC | PAUL SIMMONS | 46958 N GRATIOT STE 169 | | | CHESTERFIELD TOWNSHIP | MI | 48051 | |
| SINCLAIR & RUSH INC | ROD WHITTIER | 123 MANUFACTURERS DR | | | ARNOLD | MO | 63010 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 50 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SINCLAIR & RUSH INC | ROD WHITTIER | 123 MANUFACTURERS DR | | | ARNOLD | MO | 63010 | |
| SINTERMETAL SA DE CV | DANIEL ALFONSO | ACUDUCTO DEL ALT LERMA NO 6 | | | OEOYOACAC | | 52740 | MEXICO |
| SINTERSTAHL CORPORATION POWERTRAIN | DAN TURNER | 5800 WOLF CREEK PIKE | | | DAYTON | OH | 45426 | |
| SKADDEN ARPS SLATE MEAGHER & FLOM LLP | JOHN WM BUTLER JOHN K LYONS RON E MEISLER | 333 W WACKER DR | SUITE 2100 | | CHICAGO | IL | 60606 | |
| SKADDEN ARPS SLATE MEAGHER & FLOM LLP | KAYALYN A MARAFIOTI THOMAS J MATZ | 4 TIMES SQUARE | PO BOX 300 | | NEW YORK | NY | 10036 | |
| SKI DESIGN INC | | 14660 23 MILE RD | | | SHELBY TOWNSHIP | MI | 48315-3000 | |
| SKILLED MANUFACTURING INC | TOM LAWSON | 3680 CASS | | | TRAVERSE CITY | MI | 49696 | |
| SMALL CAR GROUP LAD | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| SMALL PARTS INC | CHUCK MIGYANKA | 600 HUMPHREY PO BOX 23 | | | LOGANSPORT | IN | 46947 | |
| SMALL PARTS INC | CHUCK MIGYANKA | 600 HUMPHREY PO BOX 23 | | | LOGANSPORT | IN | 46947 | |
| SMALLEY STEEL RING CO EFT | FRANK NAUGO | 555 OAKWOOD DR | | | LAKE ZURICH | IL | 60047 | |
| SMALLEY STEEL RING CO EFT | FRANK NAUGO | 555 OAKWOOD DR | | | LAKE ZURICH | IL | 60047 | |
| SMC AMERICA INC | THOMAS HERR | 1679 ELMURST RD | | | ELK GROVE VILLAGE | IL | 60007 | |
| SMC AMERICA INC | THOMAS HERR | 1679 ELMHURST RD | | | ELK GROVE VILLAGE | IL | 60007 | |
| SMC POWDER METALLURGY | JOHN E CHALLINGSWORTH | 259 EBERL ST | | | SAINT MARYS | PA | 15857 | |
| SMC POWDER METALLURGY ST MARY'S CARBON | JOHN E CHALLINGSWORTH | 259 EBERL ST | | | SAINT MARYS | PA | 15857 | |
| SOFTWARE ENGINEERING CORPORATION | | 1520 ECATK STE 101 | | | SEATTLE | WA | 98102 | |
| SOLECTRON MANUFACTURA DE MEXICO S D | DANA COIN | PROL AV LOPEZ MATEOS SUR KM65 | | | TLAJOMULCO DE ZUNIGA JA | | 45645 | MEXICO |
| SOLECTRON MANUFACTURA DE MEXICO S D | DANA COIN | PROL AV LOPEZ MATEOS SUR KM65 | | | TLAJOMULCO DE ZUNIGA JA | | 45645 | MEXICO |
| SOLVAY ADVANCED POLYMERS LLC | GREG DAVIS | 4500 MCGINNIS FERRY RD | | | ALPHARETTA | GA | 30202 | |
| SONY ELECTRONICS INC | LLOYD B SARAKIN CHIEF COUNSEL FINANCE AND CREDIT | 1 SONY DRIVE | MD NO 1 E 4 | | PARK RIDGE | NJ | 7656 | |
| SORALUCE HERMANOS SA | OLATZ SORALUCE | LUGAR IND SECTOR CAPARTADO 30 | | | AZCOITIA 20 | | 20720 | SPAIN |
| SOUTHERN DISPOSAL SYSTEMS LLC | SOUTHERN DISPOSAL SYSTEMS LLC | PO BOX 2713 | | | DECATUR | AL | 35602-2713 | |
| SPECIAL DEVICES INC | ABEL TEJADA | 3431 N RESEDA CIR | | | MESA | AZ | 85215 | |
| SPECIAL DEVICES INC | ABEL TEJADA | 3431 N RESEDA CIR | | | MESA | AZ | 85215 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 51 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| SPECIALIST HEAT EXCHANGERS LTD | ALEX BURNET | FREEDMAN RD N HYKEHAM | | | LINCOLN | | LN6 9AP | UNITED KINGDOM |
| SPECIALTY LUBRICANTS | ROBIN BUGENSKI | 8300 CORPORATE PARK DR | | | MACEDONIA | OH | 44056 | |
| SPENCER FANE BRITT & BROWNE LLP | DANIEL D DOYLE | 1 NORTH BRENTWOOD BOULEVARD | TENTH FLOOR | | ST. LOUIS | MO | 63105 | |
| SPENCER FANE BRITT & BROWNE LLP | NICHOLAS FRANKE | 1 NORTH BRENTWOOD BOULEVARD | TENTH FLOOR | | ST. LOUIS | MO | 63105 | |
| SPIRAL INDUSTRIES INC | DAVID JACKSON | 1572 N OLD US 23 | | | HOWELL | MI | 48843 | |
| SPIRAL INDUSTRIES INC | DAVID JACKSON | 1572 N OLD US 23 | | | HOWELL | MI | 48843 | |
| SPIRAX SARCO INC | | 2521 13TH AVE | | | MOLINE | IL | 61265 | |
| SPIROL INTERNATIONAL CORP | TERRY JACOBSON | 30 ROCK AVENUE | | | DANIELSON | CT | 6239 | |
| SPIROL INTERNATIONAL CORP | TERRY JACOBSON | 30 ROCK AVENUE | | | DANIELSON | CT | 06239 | |
| SPO | MARSHA SMITH SR BUYER | 6200 GRAND POINTE DR | | | GRAND BLANC | MI | 48439 | |
| SPO MEXICO | ANASTACIO RIVERA MATERIAL ANALYST | FRACC INDUSTRIAL | TOLUCA EDO DE MEX | | | | CP 50000 | MEX |
| SPRING ENGR & MFG | JOEL ST JOHN | 7820 N LILLEY RD | | | CANTON | MI | 48187 | |
| SPRING ENGR & MFG | JOEL ST JOHN | 7820 N LILLEY RD | | | CANTON | MI | 48187 | |
| SPS TECHNOLOGIES WATERFORD CO | PETER OLIVER | 5331 DIXIE HWY | | | WATERFORD | MI | 48329 | |
| SPS TECHNOLOGIES WATERFORD CO | PETER OLIVER | 5331 DIXIE HWY | | | WATERFORD | MI | 48329 | |
| SQUIRE SANDERS & DEMPSEY LLP | ERIC MARCKS | ONE MARITIME PLAZA | SUITE 300 | | SAN FRANCISCO | CA | 94111-3492 | |
| SSI TECHNOLOGIES INC | DAN BERTHIAUME | 3330 PALMER DR PO BOX 5002 | | | JANESVILLE | WI | 53547 | |
| SSI TECHNOLOGIES INC | DAN BERTHIAUME | 3330 PALMER DR PO BOX 5002 | | | JANESVILLE | WI | 53547 | |
| ST CLAIR PLASTICS CORP EFT | PAUL VLETRI | 30855 TETON PLACE | | | CHESTERFIELD TWP | MI | 48047 | |
| ST CLAIR PLASTICS CORP EFT | PAUL VLETRI | 30855 TETON PLACE | | | CHESTERFIELD TWP | MI | 48047 | |
| STANDARD ELECTRIC CO | | 2650 TRAUTNER DR | | | SAGINAW | MI | 48604 | |
| STANDARD HORSE NAIL CORP | TAMMY CARDOSI | 1415 FIFTH AVE | | | NEW BRIGHTON | PA | 15066 | |
| STANDARD HORSE NAIL CORP | TAMMY CARDOSI | 1415 FIFTH AVE | | | NEW BRIGHTON | PA | 15066 | |
| STANDARD MOTOR PRODUCTS INC | ROBERT BUTTRAM PURCHASING BUYER | 3718 NORTHERN BLVD | | | LONG ISLAND CITY | NY | 11101-1616 | |
| STANLEY MACHINERY CORP | MAX COHEN | 44 RAMAH CIR N | | | AGAWAM | MA | 01001-1516 | |
| STANT MFG CO | DAVID DEKARSKE | 1620 COLUMBIA AVE | | | CONNERSVILLE | IN | 47331 | |
| STANT MFG CO | DAVID DEKARSKE | 1620 COLUMBIA AVE | | | CONNERSVILLE | IN | 47331 | |
| STEEL PARTS MANUFACTURING | MARIANNE MORAN | 801 BERRYMAN PK PO BOX 700 | | | TIPTON | IN | 46072 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 52 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| STEINBERG SHAPIRO & CLARK | MARK H SHAPIRO | 24901 NORTHWESTERN HIGHWAY | SUITE 611 | | SOUTHFIELD | MI | 48075 | |
| STEPHENSON INC | CRAIG STEPHENSON | PO BOX 8216 | | | FLINT | MI | 48501-8216 | |
| STEVE PARTRIDGE SHANE ELLISON JOHN BATSON | OWENS PLATING COMPANY INC BEP DEVELOPMENT LLC | MICHAEL L ROBERTS ESQ | CUSIMANO KEENER ROBERTS KIMBERLEY & MILES PC | 153 SOUTH 9TH STREET | GADSDEN | AL | 35901 | |
| STEVE PARTRIDGE SHANE ELLISON JOHN BATSON | OWENS PLATING COMPANY INC BEP DEVELOPMENT LLC | ROBERT D MCWHORTER JR | PO DRAWER 287 | | GADSDEN | AL | 35902 | |
| STEVEN LEE WHITMIRE BRENDA K WHITMIRE | FREDERICK S BARBOUR ESQ | MARY E EULER ESQ | PO BOX 3180 | | ASHEVILLE | NC | 28802 | |
| STEVENS & LEE PC | CHESTER B SALOMON CONSTANTINE D POURAKIS | 485 MADISON AVENUE | 20TH FLOOR | | NEW YORK | NY | 10022 | |
| STONERIDGE ALPHABET | CRAIG HALL | 28001 CABOT DR STE 100 | | | NOVI | MI | 48377 | |
| STONERIDGE ALPHABET | CRAIG HALL | 28001 CABOT DR STE 100 | | | NOVI | MI | 48377 | |
| STRATTEC SECURITY CORP | | 3333 W GOOD HOPE RD | | | MILWAUKEE | WI | 53209 | |
| STRATTEC SECURITY CORPORATION | TIM FOLEY | 2075 W BIG BEAVER RD STE 200 | | | TROY | MI | 48084 | |
| STRATTEC SECURITY CORPORATION | TIM FOLEY | 2075 W BIG BEAVER RD STE 200 | | | TROY | MI | 48084 | |
| STROOCK & STROOCK & LAVAN LLP | JOSEPH G MINIAS | 180 MAIDEN LANE | | | NEW YORK | NY | 10038 | |
| SUN CAPITAL PARTNERS | KEVIN FEINBLUM | 375 PARK AVE STE 1302 | | | NEW YORK | NY | 10152 | |
| SUNDANCE DIE CUT LLC | PHIL BURGESS | 800 DIVISION LOOP | | | MINERAL WELLS | TX | 76067 | |
| SUNDANCE DIE CUT LLC | PHIL BURGESS | 800 DIVISION LOOP | | | MINERAL WELLS | TX | 76067 | |
| SUPER AUTO FORGE INC | KASI NATH | 42400 GRAND RIVER AVE STE 205 | | | NOVI | MI | 48375 | |
| SUPER AUTO FORGE INC | KASI NATH | 42400 GRAND RIVER AVE STE 205 | | | NOVI | MI | 48375 | |
| SUPER SYSTEMS INC | SUPER SYSTEMS INC | 7205 EDINGTON DR | | | CINCINNATI | OH | 45249 | |
| SUPERIOR QUALITY INC | SORT HOUSE NOT SUPPLIER PER STACIE | 2138 FERNWOOD DR | | | JENISON | MI | 49428 | |
| SUPPLIER INSPECTION SERVICES INC | TOM KRASKA | 2941 S GETTYSBURG AVE | | | DAYTON | OH | 45418 | |
| SUR FORM CORP | ROSS POTTINGER | 18401 MALYN BLVD | | | FRASER | MI | 48026-1628 | |
| SWIDLER BERLIN LLP | ROBERT N STEINWURTZEL | THE WASHINGTON HARBOUR | 3000 K STREET NW SUITE 300 | | WASHINGTON | DC | 20007 | |
| SYN TECH LTD EFT | TIM FRANK | 1433 W FULLERTON | | | ADDISON | IL | 60101 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 53 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| SYSTEMS INTEGRATION SPECIALISTS | | 6605 19 1 2 MILE RD | | | STERLING HEIGHTS | MI | 48314-1408 | |
| SYZ ROLMEX S DE RL DE CV | JIM BALDWIN | ADOLPH B HORN 2001 CARR | | | TLAJOMULCA DE ZUNIGA JA | | 45670 | MEXICO |
| T & L AUTOMATICS | DAVE MURPHY | 770 EMERSON STREET | | | ROCHESTER | NY | 14613 | |
| T & L AUTOMATICS | DAVE MURPHY | 770 EMERSON STREET | | | ROCHESTER | NY | 14613 | |
| TAE SUNG RUBBER & CHEMICAL CO LTD | ROBERT LIFSEY | 27620 FARMINGTON RD STE 101 | | | FARMINGTON HILLS | MI | 48334 | |
| TAE SUNG RUBBER & CHEMICAL CO LTD | ROBERT LIFSEY | 27620 FARMINGTON RD STE 101 | | | FARMINGTON HILLS | MI | 48334 | |
| TAFIME SA | JUAN JOSI NARDIZ AMURRIO | POLIGONO INDUSTRIAL REGORDONO | | | MOSTOLES MADRID | | 28938 | SPAIN |
| TAIGENE ELECTRIC MACHINERY | M NEIHAUS | 6001 N ADAMS RD STE 125 | | | BLOOMFIELD HILLS | MI | 48304 | |
| TAIGENE ELECTRIC MACHINERY | M NEIHAUS | 6001 N ADAMS RD STE 125 | | | BLOOMFIELD HILLS | MI | 48304 | |
| TAURUS INTERNATIONAL CORP | RICHARD E TOTH | 275 N FRANKLIN TPKE | | | RAMSEY | NJ | 7446 | |
| TAURUS INTERNATIONAL CORP | RICHARD E TOTH | 275 N FRANKLIN TPKE | | | RAMSEY | NJ | 07446 | |
| TAWAS PLATING CO | KEVIN T JUNGQUIST | 510 INDUSTRIAL AVE PO BOX 419 | | | TAWAS CITY | MI | 48764 | |
| TAWAS POWDER COATING INC | BOYD GILCHRIST | 510 INDUSTRIAL AVE PO BOX 419 | | | TAWAS CITY | MI | 48764 | |
| TDK CORP OF AMERICA | LORI SIECZKOWSKI | 1221 BUSINESS CENTER RD | | | MT PROSPECT | IL | 60056 | |
| TDK CORP OF AMERICA | LORI SIECZKOWSKI | 1221 BUSINESS CENTER RD | | | MT PROSPECT | IL | 60056 | |
| TEALE MACHINE | MIKE LAROCK | 1425 UNIVERSITY AVE POB 10340 | | | ROCHESTER | NY | 14610 | |
| TEALE MACHINE | MIKE LAROCK | 1425 UNIVERSITY AVE POB 10340 | | | ROCHESTER | NY | 14610 | |
| TECH PRODUCTION WELDING | EDWARD PINTER | 27330 GLOEDE | | | WARREN | MI | 48093 | |
| TECMES LTDA | AV JABAQUARA | 2940 9 ANDAR SALA 95 | PLANALTO PAULISTA | | SAO PAULO SP | | CEP 04046-500 | BRAZIL |
| TECNIACERO SA | ALBA SOLA | CTRA MANRESA A BERGA KM 0 5 | | | SANT FRUITOS D BAGES BARCELONA | | 08272 | SPAIN |
| TECNOFORMAS AUTOMOTRICES SA DE CV | MIGUEL ANGEL BECERRIL | KM 16 CARR SAN JAUN DEL RIO | | | TEQUISQUIAPAN QA | | 78776 | MEXICO |
| TEKNIA ESTAMPACION DEJ SA | ANA PEREZ | OTAOLA HIRIBID 32 APARTADO 128 | | | EIBAR GUIPUZCOA | | 20600 | SPAIN |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| TELEFLEX INC | MICHAEL D'ANNUNZIO | 700 STEPHENSON HWY | | | TROY | MI | 48083 | |
| TELEFLEX INC | MICHAEL D'ANNUNZIO | 700 STEPHENSON HWY | | | TROY | MI | 48083 | |
| TEMIC AUTOMOTIVE OF NORTH AMERICA I | | 37101 CORPORATE DR | | | FARMINGTON HILLS | MI | 48331 | |
| TEMIC AUTOMOTIVE OF NORTH AMERICA I | GREG GOESTENKORS | 37101 CORPORATE DR | | | FARMINGTON HILLS | MI | 48331 | |
| TEMIC AUTOMOTIVE OF NORTH AMERICA I | GREG GOESTENKORS | 37101 CORPORATE DR | | | FARMINGTON HILLS | MI | 48331 | |
| TENNECO AUTOMOTIVE CLEVITE | PHILIP T SPIETH | ONE INTERNATIONAL DR | | | MONROE | MI | 48161 | |
| TENNECO AUTOMOTIVE CLEVITE | PHILIP T SPIETH | ONE INTERNATIONAL DR | | | MONROE | MI | 48161 | |
| TENNENBAUM CAPITAL PARTNERS | MARK K HOLDSWORTH | 295 1 28TH ST 1ST FL STE 1000 | | | SANTA MONICA | CA | 90405 | |
| TENNESSEE VALLEY AUTHORITY | | P O BOX 292409 | ECON DEV LOANS | | NASHVILLE | TN | 37214 | |
| TERESA JEVICKS | AUTO OWNERS | C O LINDA DRILLOCK ESQ | 3030 MAIN STREET | | MARLETTE | MI | 48453 | |
| TERESA JEVICKS | DYNAMIC CORPORATION | JOHN SCHRIER ESQ | PARMENTER O TOOLE | 175 WEST APPLE AVENUE | MUSKEGON | MI | 49443-0786 | |
| TERESA JEVICKS | TERESA JEVICKS | C O WILLIAM S WEILER ESQ | 19785 W TWELVE MILE ROAD NO 871 | | SOUTHFIELD | MI | 48076 | |
| TERRELL INDUSTRIES INC | LINDA PITTS | 1202 INDUSTRIAL DR PO BOX 1514 | | | HARTSELLE | AL | 35640 | |
| TESLA MOTORS INC | | 1050 BING ST | | | SAN CARLOS | CA | 94070 | |
| TESMA INTERNATIONAL INNOTHERM | JEFF BOWES | 23300 HAGGERTY RD STE 200 | | | FARMINGTON HILLS | MI | 48335 | |
| TESMA INTERNATIONAL INNOTHERM | JEFF BOWES | 23300 HAGGERTY RD STE 200 | | | FARMINGTON HILLS | MI | 48335 | |
| TEST PRODUCTS INC | BOB MANGIN | 41255 TECHNOLOGY PK DR | | | STERLING HEIGHTS | MI | 48314 | |
| TESTAMERICA ANALYTICAL TESTING CORP | IZZAT OSAMA | 6964 HILLDALES COURT | | | INDIANAPOLIS | IN | 46250-2040 | |
| TESTCOM INC | | 1501 EUCLID AVE 4TH FL | | | CLEVELAND | OH | 44115 | |
| TETRA TECH INC | | 710 AVIS DR | | | ANN ARBOR | MI | 48108 | |
| TEXAS FOUNDRIES INC | DANIEL LONG | 1611 N RAGUET PO BOX 3718 | | | LUFKIN | TX | 75901 | |
| TEXAS INSTRUMENT | PAM RAZMUS | 39555 ORCHARD HILL DR STE 350 | | | NOVI | MI | 48375 | |
| THE BRADLEY GROUP OF COMPANIES | STEVE SMITH | 410 S 38TH AVE | | | ST CHARLES | IL | 60174 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 55 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF ATHENS | BOARD | C O CITY HALL | 200 E HOBBS ST | | ATHENS | ALABAMA | 35611 | |
| THE INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF ATHENS | TRUSTEE | PO BOX 11007 | ATTN CORPORATE TRUST DEPARTMENT | | BIRMINGHAM | ALABAMA | 35244 | |
| THE KATBIRD COMPANY LP | ATTENTION MR WILLIAM B COSTELLO | 8411 PRESTON ROAD SUITE 650 | | | DALLAS | TX | 75225 | |
| THE NATIONAL CENTER FOR COMPOSITE SYSTEMS TECHNOLOGY | ATTN LOUIS A LUEDTKE | 2000 COMPOSITE DRIVE | | | DAYTON | OH | 46420 | |
| THE UNIVERSITY OF AKRON | C O ROCHELLE ATHEY ASSOCIALE DIRECTOR OF RESEARCH SERVICES AND SPONSORED PROGRAMS | 302 BUCHTAL | | | AKRON | OH | 44325 | |
| THE UNIVERSITY OF BATH | | CLAVERTON DOWN | | | BATH | | BA2 7AY | |
| THEOREM SOLUTIONS INC | | 6279 TRI RIDGE BLVD STE 240 | | | LOVELAND | OH | 45140-8396 | |
| THERMAL DYNAMICS | RON DALISON | 4850 EAST AIRPORT DRIVE | | | ONTARIO | CA | 91761 | |
| THERMAL DYNAMICS (FLUIDYNE RACING PRODUCTS) | RON DALISON | 4850 EAST AIRPORT DRIVE | | | ONTARIO | ON | 91761 | CANADA |
| THERMO ELECTRON NORTH AMERICA LLC | | 5225 VERONA RD | | | MADISON | WI | 53711-4418 | |
| THOMAS A SYLVESTER | C O MANDEL I ALLWEIL ATTORNEY FOR PLAINTIFF | HURLBURT TSIROS & ALLWEIL PC | PO BOX 3237 | | SAGINAW | MI | 48605 | |
| THORREZ INDUSTRIESC | GARY BURNETTE | 4909 W MICHIGAN AVE | | | JACKSON | MI | 49201 | |
| THORREZ INDUSTRIESC | GARY BURNETTE | 4909 W MICHIGAN AVE | | | JACKSON | MI | 49201 | |
| THYSSEN KRUPP METALURGICA CAMPO LIM | DAVID CATASINER | AV ALFRIED KRUPP 1050 | | | CAMPO LIMPO PAULISTA SP | | 13231 | BRASIL |
| THYSSEN KRUPP METALURGICA CAMPO LIM | DAVID CATASINER | AV ALFRIED KRUPP 1050 | | | CAMPO LIMPO PAULISTA SP | IL | 13231 | BRASIL |
| THYSSEN KRUPP STAHL EFT | KARL JAEGER | 111 E PACIFIC AVE PO BOX 6 | | | KINGSVILLE | MO | 64061 | |
| THYSSEN KRUPP STAHL EFT | KARRIE'S GONE STEVE & DON DON'T KNOW CONTACT | 111 E PACIFIC AVE PO BOX 6 | | | KINGSVILLE | MO | 64061 | |
| THYSSEN KRUPP WAUPACA INC | JIM MELTON | 311 S TOWER RD PO BOX 249 | | | WAUPACA | WI | 54981 | |
| THYSSEN KRUPP WAUPACA INC | JIM MELTON | 311 S TOWER RD PO BOX 249 | | | WAUPACA | WI | 54981 | |
| THYSSENKRUPP BUDD COMPANY | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| TI AUTOMOTIVE FRMLY TI GROUP AUTOMOTIVE SYS | HEIDI VERELLEN | 12345 E 9 MILE RD PO BOX 2001 | | | WARREN | MI | 48090 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 56 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| TI GROUP AUTOMOTIVE SYSTEMS CORPORA | HEIDI VERELLEN | 12345 E 9 MILE RD PO BOX 2001 | | | WARREN | MI | 48090 | |
| TI GROUP AUTOMTOVIE SYSTEMS CORPORA | HEIDI VERELLEN | 12345 9 MILE RD | | | WARREN | MI | 48090 | |
| TICONA | BILL HEITZER | 2600 N OPDYKE RD | | | AUBURN HILLS | MI | 48326 | |
| TIMKEN CORPORATION FRMLY TIMKINCO THE | SHANE MCGUIRE | 28875 CABOT DR STE 100 | | | NOVI | MI | 48377 | |
| TIMKEN CORPORATION THE | | PO BOX 3047 | | | BIRMINGHAM | MI | 48012 | |
| TIMKEN CORPORATION THE | TIMOTHY R HAUBENSTRICKER | 28875 CABOT DR STE 100 | | | NOVI | MI | 48377 | |
| TIMKEN US CORP | TIMOTHY R HAUBENSTRICKER | 28875 CABOT DR STE 100 | | | NOVI | MI | 48377 | |
| TINNERMAN PALNUT ENGINEERED PROD | GREG BEHLER | 800 W COUNTY RD 250 S | | | LOGANSPORT | IN | 46947 | |
| TINNERMAN PALNUT ENGINEERED PRODUCT | ROB DZIADULA JEFF CORNELL | 23800 W 10 MILE RD STE 101 | | | SOUTHFIELD | MI | 48033 | |
| TISAMATIC S DE RL DE CV | FRANCISCO MUQOZ | AV PROMOCION NO 145 ZONA IND'L | | | SAN LUIS POTOSI SL | | 78090 | MEXICO |
| TOGUT SEGAL & SEGAL LLP | ALBERT TOGUT | ONE PENN PLAZA | SUITE 3335 | | NEW YORK | NY | 10119 | |
| TOGUT SEGAL & SEGAL LLP | ALBERT TOGUT ESQ | ONE PENN PLAZA | SUITE 3335 | | NEW YORK | NY | 10119 | |
| TOKAI RUBBER TIANJIN CO LTD | LIU CHAOYUE | NO 6 JUYING RD JINNAN ECONOMIC | | | TIANJIN PR | | 300350 | CHINA |
| TOKYO ELECTRON LIMITED | BUCKLEY PATRICK HOLLISTER | 2400 GROVE BLVD | | | AUSTIN | TX | 78741 | |
| TOMPKINS PRODUCTS INC | PETER T OLIVER | 1040 W GRAND BLVD | | | DETROIT | MI | 48208 | |
| TOMPKINS PRODUCTS INC | PETER T OLIVER | 1040 W GRAND BLVD | | | DETROIT | MI | 48208 | |
| TORNILLERIA LEMA SA | KRISTINA GALLASTEGI | POLIGONO INDUSTRIAL PAGATZA 7 | | | ELGUETA ES | | 20690 | SPAIN |
| TORRINGTON CO INGERSOLL RAND CO | KEVIN KEYLON | 28875 CABOT DR STE 100 | | | NOVI | MI | 48377 | |
| TOWER AUTOMOTIVE | KEN KONDRAT | 280 HUGHES DR PO BOX 1251 | | | TRAVERSE CITY | MI | 49685 | |
| TOWER AUTOMOTIVE | KEN KONDRAT | 280 HUGHES DR PO BOX 1251 | | | TRAVERSE CITY | MI | 49685 | |
| TOYOTA MOTOR MFG TX | JAMIE SCHRECK PURCHASING | 25 ATLANTIC AVE | | | ERLANGER | KY | 41018 | |
| TOYOTA MOTOR MFG USA INC | JAMIE SCHRECK CALEB DAVIS PURCHASING | 25 ATLANTIC AVE | | | ERLANGER | KY | 41018 | |
| TOYOTA MOTOR MFG USA INC | JAMIE SCHRECK PURCHASING | 25 ATLANTIC AVE | | | ERLANGER | KY | 41018 | |
| TOYOTA MOTOR MFG USAINC | JAMIE SCHRECK PURCHASING JULIA CASSADY BUYER SERVICE | 25 ATLANTIC AVENUE | | | ERLANGER | KY | 41018 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 57 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| TOYOTA MOTOR MGFINDIANA | JAMIE SCHRECK PURCHASING | 25 ATLANTIC AVE | | | ERLANGER | KY | 41018 | |
| TOYOTA TSUSHO AMERICA INC | JOEL LOGAN | 4000 TOWN CENTER STE 1260 | | | SOUTHFIELD | MI | 48075 | |
| TOYOTA TSUSHO AMERICA INC | JOEL LOGAN | 4000 TOWN CENTER STE 1260 | | | SOUTHFIELD | MI | 48075 | |
| TOYOTA TSUSHO MEXICO SA DE CV | JOEL LOGAN | AV ARISTOTELES NO 212 EDIF 5 | | | APODACA NL | | 66600 | MEXICO |
| TPI POWDER METALLURGY INC EFT | STEVE YNTEMA | 12030 BEAVER RD | | | ST CHARLES | MI | 48655 | |
| TPI POWDER METTALLURGY | PO BOX 69 | 12030 BEAVER RD | | | ST CHARLES | MI | 48655-0088 | |
| TRACTION TECHNOLOGIES INC | | 6950 A HARBOUR VIEW BOULEVARD | | | SUFFOLK | VA | 23435 | |
| TRAM INC | LYNN RYDZIK | 47200 PORT ST | | | PLYMOUTH | MI | 48170 | |
| TRAN STEER | MARK KOVACIC PURCHASING BUYER | 618 CHRISLEA ROAD | | | WOODBRIDGE | ON | L4L 8K9 | CANADA |
| TRANS AMERICA LUBRICANTS INC | ESMERALDA AGUILAR | 11395 JAMES WATT DR STE A10 | | | EL PASO | TX | 79936 | |
| TRANSFORMACION POR INDUCCION SA DE | RAFAEL MARTINEZ | MEXQUITAL 4 A COL SAN PABLO | | | QUERETARO QA | | 76130 | MEXICO |
| TRANSMARES CORPORATION | EITEL PRESSES INC | DEER LAKE INDUSTRIAL PARK | | | ORWIGSBURG | PA | 17961 | |
| TRANSMATIC INC EFT | MARK SOUTHWELL | 300 E 48TH ST | | | HOLLAND | MI | 49423 | |
| TRANSPORTATION RESOURCE PARTNERS1 | STEVE CARREL | 2555 TELEGRAPH RD | | | BLOOMFIELD HILLS | MI | 48302 | |
| TRELLEBORG AUTOMOTIVE | CYRILLE BRITON | 445 ENTERPRISE CT | | | BLOOMFIELD HILLS | MI | 48302 | |
| TRELLEBORG AUTOMOTIVE | CYRILLE BRITON | 445 ENTERPRISE CT | | | BLOOMFIELD HILLS | MI | 48302 | |
| TRELLEBORG KUNHWA CO LTD | KIM YOUNG CHUN | 1209 4 SINSANG RI JINRYANG EUP | | | KYUNGSAN KYONGBUK | | 712-830 | KOREA |
| TRELLEBORG PRODYN INC % MCCARTHY SA | BILL MCCARTHY | 27236 SOUTHFIELD RD | | | LATHRUP VILLAGE | MI | 48076 | |
| TRELLEBORG SEALING SOLUTIONS % MCCA | BILL MCCARTHY | 27236 SOUTHFIELD RD | | | LATHRUP VILLAGE | MI | 48076 | |
| TRELLEBORG SEALING SOLUTIONS % MCCA | BILL MCCARTHY | 27236 SOUTHFIELD RD | | | LATHRUP VILLAGE | MI | 48076 | |
| TRIAD METAL PRODUCTS CO | BOB REYNOLDS | 12990 SNOW RD | | | PARMA | OH | 44130 | |
| TRIAD METAL PRODUCTS CO | BOB REYNOLDS | 12990 SNOW RD | | | PARMA | OH | 44130 | |
| TRIAD SERVICES GROUP LLC | | 1750 LINCOLN AVENUE | | | MADISON HIEGHTS | MI | 48071 | |
| TRIANGLE GRINDING CO | PAUL DUFFY | 57877 MAIN ST PO BOX 480549 | | | NEW HAVEN | MI | 48048 | |
| TRIDON | TOM MILLIGAN | 8100 TRIDON DR | | | SMYRNA | TN | 37167 | |
| TRIDON | TOM MILLIGAN | 8100 TRIDON DR | | | SMYRNA | TN | 37167 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 58 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| TROQUELADORA BATESVILLE DE MEXICO | TIM LAMBERT | LA NORIA NO 106 PARQUE IND | | | QUERETARO QA | | 76220 | MEXICO |
| TRUTRON CORPORATION | | 274 EXECUTIVE DR | | | TROY | MI | 48083 | |
| TRW AUTOMOTIVE | JOSEPH CANTIE | 12025 TECH CENTER DR | | | LIVONIA | MI | 48150 | |
| TRW AUTOMOTIVE US LLC | | 34201 VAN DYKE AVENUE | | | STERLING HEIGHTS | MI | 48312 | |
| TRW FAHRWERKSYSTEME | STEPHAN LINS | HANSAALLEE 190 POSTFACH 110350 | | | DUESSELDORF W | | 40549 | GERMANY |
| TRW FASTENING SYSTEMS AUTOMOTIVE EL | FRANK HEWITT | 23855 RESEARCH DR | | | FARMINGTON HILLS | MI | 48335 | |
| TRW FASTENING SYSTEMS AUTOMOTIVE EL | FRANK HEWITT | 23855 RESEARCH DR | | | FARMINGTON HILLS | MI | 48335 | |
| TRW TOLEDO PLANT | RON SRNKA BUYER | 5915 JASON STREET | | | TOLEDO | OH | 43611 | |
| TRW VEHICLE SAFETY SYSTEMS INC | MARY ELLEN KALKHOFF | 4505 W 26 MILE RD | | | WASHINGTON | MI | 48094 | |
| TTMI DANA CORPORATION | DENISE C SAMU | 4440 N ATLANTIC BLVD | | | AUBURN HILLS | MI | 48326 | |
| TUBE FAB ROMAN ENGINEERING CO INC | RICHARD SZPOND | 1715 M 68 EAST | | | AFTON | MI | 49705 | |
| TUBE FORMING & MACHINE INC | | 4614 INDUSTRIAL DR | | | OSCODA | MI | 48750 | |
| TWIN CORP EFT | JOE DEL BROCCO | 10456 N HOLLY RD | | | HOLLY | MI | 48442 | |
| TWIN CORP EFT | JOE DEL BROCCO | 10456 N HOLLY RD | | | HOLLY | MI | 48442 | |
| TWOSON TOOL COMPANY | | 4620 W BETHEL AVENUE | | | MUNCIE | IN | 47304 | |
| TWOSON TOOL COMPANY | RANDY CREMEANS | 4620 W BETHEL AVE PO BOX 591 | | | MUNCIE | IN | 47308 | |
| TWOSON TOOL COMPANY | RANDY CREMEANS | 4620 W BETHEL AVE PO BOX 591 | | | MUNCIE | IN | 47308 | |
| TYCO ELECTRONICS CORPORATION | MARYANN BRERETON ASSISTANT GENERAL COUNSEL | 60 COLUMBIA ROAD | | | MORRISTOWN | NJ | 7960 | |
| TYZ ALL PLASTICS INC | SUSAN D'ALESSANDRO | 120 EXPRESS ST | | | PLAINVIEW | NY | 11803 | |
| TYZ ALL PLASTICS INC | SUSAN D'ALESSANDRO | 120 EXPRESS ST | | | PLAINVIEW | NY | 11803 | |
| U S ENVIRONMENTAL PROTECTION AGENCY REGION 2 | JANE M KENNY | REGIONAL ADMINISTRATOR | 290 BROADWAY 26TH FL | | NEW YORK | NY | 10007 | |
| U S EPA | DIANA EMBIL | REGION 5 77 WEST JACKSON BLVD | | | CHICAGO | IL | 60604-3590 | |
| U S EPA | REGINALD PALLESEN | REGION 5 77 WEST JACKSON BLVD | | | CHICAGO | IL | 60604-3590 | |
| U S EPA | TOM NASH | REGION 5 77 WEST JACKSON BLVD | | | CHICAGO | IL | 60604-3590 | |
| U S EPA REGION 3 | | 1650 ARCH ST | (3PM52) | | PHILADELPHIA | PA | 19103-2029 | |
| U S EPA REGION 4 ATLANTA FEDERAL CENTER | | 61 FORSYTH ST SW | | | ATLANTA | GA | 30303-3104 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 59 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| U S EPA REGION 5 | WILLIAM D MESSENGER | 77 WEST JACKSON BLVD | | | CHICAGO | IL | 60604-3590 | |
| U S EPA REGION 8 | | 999 18TH ST STE 200 | | | DENVER | CO | 80202-2466 | |
| U S MANUFACTURING CORP EFT | JEFFREY B JOHNSON | 28201 VAN DYKE AVE | | | WARREN | MI | 48096 | |
| UCC DIRECT SERVICES | | P O BOX 29071 | | | GLENDALE | CA | 91209-9071 | |
| UDALBIDES S A | PEDRO L VARGAS | BARRIO DE LEJARZA 5 | | | LZURZA VIZCAYA SPA | | 48213 | SPAIN |
| UNI COMPS INC | RANDY SISK | 1295 COMBERMERE DR | | | TROY | MI | 48083 | |
| UNISIA JECS CORPORATION | | 1370 ONNA | ATSUGI SHI KANAGAWA KEN | | | | 243-8510 | JAPAN |
| UNISORB INC | | 4117 FELTERS RD | | | JACKSON | MI | 49201 | |
| UNITED METAL PROD | RANDY BONNAM | 8101 LYNDON AVENUE | | | DETROIT | MI | 48238 | |
| UNITED METAL PROD | RANDY BONNAM | 8101 LYNDON AVENUE | | | DETROIT | MI | 48238 | |
| UNITED PLATING INC | | 3400 STANWOOD BLVD NE | | | HUNTSVILLE | AL | 35811 | |
| UNITED PLATING INC | JIM BUTLER | 3400 STANWOOD BLVD PO BOX 2046 | | | HUNTSVILLE | AL | 35804 | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | K W ZANK TRUST DIV A C5115114 | 611 WOODWARD AVE | | | DETROIT | MI | 48226 | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY REGION 5 | BLAURA RIPLEY SPRFUND E ACT SECT | 77 WEST JACKSON BLVD | | | CHICAGO | IL | 60604 | |
| UNITED STATES TRUSTEE | ALICIA M LEONHARD | 33 WHITEHALL STREET | 21ST FLOOR | | NEW YORK | NY | 10004-2112 | |
| UNITED STEEL PAPER AND FORESTRY RUBBER MANUFACTURING ENERGY | ALLIED INDUSTRIAL AND SERVICE WORKERS INTL UNION USW AFL CIO | DAVID JURY ESQ | FIVE GATEWAY CENTER SUITE 807 | | PITTSBURGH | PA | 15222 | |
| UNITED TESTING SYSTEMS INC | CURTIS TURELL | 5171 EXCHANGE DR | | | LAKE ORION | MI | 48507-2941 | |
| UNIVERSAL BEARINGS EFT | SCOTT COWAN | 431 N BIRKEY DR | | | BREMEN | IN | 46506 | |
| UNIVERSAL BEARINGS EFT | SCOTT COWAN | 431 N BIRKEY DR | | | BREMEN | IN | 46506 | |
| UNIVERSAL METAL HOSE CO | JOHN B LAMAGDELINE | 2133 S KEDZIE AVE | | | CHICAGO | IL | 60623 | |
| UNIVERSAL METAL HOSE CO | JOHN B LAMAGDELINE | 2133 S KEDZIE AVE | | | CHICAGO | IL | 60623 | |
| UNIVERSAL METAL PRODUCTS INC EFT | RICHARD SEAHOLM | 29980 LAKELAND BLVD PO BOX 130 | | | WICKLIFFE | OH | 44092 | |
| UNIVERSAL METAL PRODUCTS INC EFT | RICHARD SEAHOLM | 29980 LAKELAND BLVD PO BOX 130 | | | WICKLIFFE | OH | 44092 | |
| UNIVERSAL METAL SERVICE CORP EFT | BRIAN FARRELL | 16655 S CANAL ST | | | S HOLLAND | IL | 60473 | |
| UNIVERSAL METAL SERVICE CORP EFT | BRIAN FARRELL | 16655 S CANAL ST | | | S HOLLAND | IL | 60473 | |
| UNIVERSAL SHIELDING CORP | | 20 W JEFRYN BLVD | | | DEER PARK | NY | 11729-5769 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 60 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| UNIVERSAL TUBE INC EFT | DARREL BOOS | 2607 BOND ST | | | ROCHESTER HILLS | MI | 48309 | |
| UNIVERSAL TUBE INC EFT | DARREL BOOS | 2607 BOND ST | | | ROCHESTER HILLS | MI | 48309 | |
| UNIVERSITY OF GLASGOW | | UNIVERSITY AVENUE | | | GLASGOW | | G12 8QQ | |
| UPTIME PARTS | JOHN KOB LEIGHTON FRACTION PURCHASING | 385 FENTON LANE | | | W. CHICAGO | IL | 60185 | |
| US AEROTEAM INC | JAMES E DELINE WILLIAM A SANKBEIL | KER RUSSELL & WEBER | 500 WOODWARD AVE STE 2500 | | DETROIT | MI | 48226 | |
| US ATTORNEYS OFFICE | MICHAEL GARCIA | 1 ST. ANDREWS PLAZA | | | NEW YORK | NY | 10007 | |
| US ENVIRONMENTAL PROTECTION | AGENCY REGION II YORK OIL CO | SITE 83 CV 1623 | PO BOX 360188M | | PITTSBURGH | PA | 15251 | |
| US ENVIRONMENTAL PROTECTION AGENCY | DAVID J KENNEDY | ASSISTANT US ATTORNEY SDNY | 86 CHAMBERS ST 3RD FL | | NEW YORK | NY | 10007 | |
| US ENVIRONMENTAL PROTECTION AGENCY REGION 5 | | PO BOX 70753 | | | CHICAGO | IL | 60673 | |
| US ENVIRONMENTAL PROTECTION AGENCY REGION II YORK OIL CO | SITE 83 CV 1623 | PO BOX 360188M | | | PITTSBURGH | PA | 15251 | |
| US EPA | | | | | ANN ARBOR | MI | 48105 | |
| US EPA | C O RTP FINANCE | MAIL DROP D143 02 | | | DURHAM | NC | 27711 | |
| US EPA MAIL CODE 6205J | | 1200 PENNSYLVANIA AVE NW | | | WASHINGTON | DC | 20460 | |
| US FARATHANE CORP CHEMCAST GROUP | JEFFERY THIELE | 38000 MOUND ROAD | | | STERLING HEIGHTS | MI | 48310 | |
| US FARATHANE CORP CHEMCAST GROUP | JEFFERY THIELE | 38000 MOUND ROAD | | | STERLING HEIGHTS | MI | 48310 | |
| US STEEL | BURT PHILLIPS | 5850 NEW KING CT | | | TROY | MI | 48098 | |
| USA TOLERANCE RINGS DIV GEN SULLIVA | TIM FINNEY | 85 RTE 31 N | | | PENNINGTON | NJ | 8534 | |
| USA TOLERANCE RINGS DIV GEN SULLIVA | TIM FINNEY | 85 RTE 31 N | | | PENNINGTON | NJ | 08534 | |
| USEPA REGION IV | GAIL GINSBERG REG ADMIN | 77 W JACKSON | | | CHICAGO | IL | 60604 | |
| UTICA ENTERPRISES INC | A OK CONTROLS ENGINEERING INC | PHIL ROBERTSON | 4375 E HOLLAND RD | | SAGINAW | MI | 48601 | |
| VAC MAGNETICS CORPORATION | | 101 MAGNET DRIVE | | | ELIZABETHTOWN | KENTUCKY | 42701 | |
| VALEO ELECTRONICS | ROBIN ARANOWSKI | 3000 UNIVERSITY DR | | | AUBURN HILLS | MI | 48326 | |
| VALLEY DIE CASTINGS INC | ANDREW BROWN | 5216 N 26TH ST | | | MCALLEN | TX | 78504 | |
| VAMP CO EFT | DEAN LANGELL | 28055 FORT ST | | | TRENTON | MI | 48183 | |
| VAMP CO EFT | DEAN LANGELL | 28055 FORT ST | | | TRENTON | MI | 48183 | |
| VASSAR COATING INC | MICHAEL WESSELS PAT PATTERSON | 211 SHERMAN ST | | | VASSAR | MI | 48768 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 61 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| VAUXHALL MOTORS LTD | MARCIN GRABSKI PURCHASING BUYER | GRIFFIN HOUSE | OSBORNE ROAD | | LUTON | BEDFORDSHIRE | LUI3YT | ENGLAND |
| VEHCOM MFG % LINAMAR SALES | TOM WINKLE | 26555 EVERGREEN RD STE 900 | | | SOUTHFIELD | MI | 48076 | |
| VEHICLE ENGINEERING ASSOCIATES INC | | PO BOX 81577 | | | ROCHESTER | MI | | |
| VERNAY LABORATORIES INC EFT | KAY WALLACE | 120 E S COLLEGE ST PO BOX 310 | | | YELLOW SPRINGS | OH | 45387 | |
| VERNAY LABORATORIES INC EFT | KAY WALLACE | 120 E S COLLEGE ST PO BOX 310 | | | YELLOW SPRINGS | OH | 45387 | |
| VIBRACOUSTIC GMBH & CO KG | HAGEN KESSLER | FREUDENBERGSTR 1 | | | NEUENBURG BW | | 79395 | GERMANY |
| VICTOR REINZ DIV DANA CORP | JIM JAMROG | 27404 DRAKE RE | | | FARMINGTON HILLS | MI | 48331 | |
| VICTORY PACKAGING INC | | 6250 BROOK HOLLOW PKY | | | NORCROSS | GA | 30071 | |
| VICTORY PACKAGING INC | GARY ZIMMERMAN JR | 800 JUNCTION | | | PLYMOUTH | MI | 48170 | |
| VICTORY PACKAGING INC | VICTORY PACKAGING INC | 6250 BROOK HOLLOW PKY | | | NORCROSS | GA | 30071 | |
| VIKING PLASTICS INC | RHONDA WALLACE | 1 VIKING ST | | | CORRY | PA | 16407 | |
| VIRGINIA TECH TRANSPORTATION INSTITUTE | | 3500 TRANSPORTATION RESEARCH PLAZE | | | BLACKSBURG | VA | 24061 | |
| VIRTUAL SERVICES INC | | 25307 DEQUINDRE RD | | | MADISON HEIGHTS | MI | 48071-4241 | |
| VOGELSANG CORPORATION | NICK SAKATOS | 1790 SWATHMORE AVENUE | | | LAKEWOOD | NJ | 8701 | |
| VOGELSANG CORPORATION | NICK SAKATOS | 1790 SWATHMORE AVENUE | | | LAKEWOOD | NJ | 08701 | |
| VOITH AG | PREMIER MANUFACTURING SUPPORT | 2828 HIGHLAND AVE | | | CINCINNATI | OH | 45212-2410 | |
| VOLKSWAGEN AG | | POSTFACH 1451 | | | 34219 BAUNATAL | | | GERMANY |
| VOLKSWAGEN AKTIENGESELLSCHAFT | | BERLINER RING 2 | | | 38436 | WOLFSBURG | | |
| VOLKSWAGENWERK AG WOLFSBURG | | BRIEFFACH 1853 | SUPPLIER NO51955 1 OR 57986 | | 38436 WOLFSBURG | | | GERMANY |
| VOLVO CAR CUSTOMER SERV CDC | JOHAN MELIN | | | | SE-405 31 GOTHENB | | | SWEDEN |
| VORYS SATER SEYMOUR AND PEASE LLP | ROBERT J SIDMAN ESQ | 52 EAST GAY STREET | PO BOX 1008 | | COLUMBUS | OH | 43216-1008 | |
| VORYS SATER SEYMOUR AND PEASE LLP | TIFFANY STRELOW COBB | 52 EAST GAY STREET | | | COLUMBUS | OH | 43215 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 62 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| VSSI A B 26 MILE RD | ROBERT DELARGEY TRW PURCHASING BUYER | 4505 WEST 26 MILE RD | | | WASHINGTON | MI | 48094 | |
| WAGNER GMBH & CO | WAGNER DR STEPHAN WAGNER | FRANKFURTER STRASSE 80 86 | | | FULDA | | 36043 | GERMANY |
| WAHL SUPPLY INC | | 935 OLD TRINITY RD | | | DECATUR | AL | 35601-7425 | |
| WALTER KEITH LAWSON | C O MITCHELL K SHELLY ATTORNEY FOR PLAINTIFF | ALEXANDER CORDER PLUNK & SHELLY | PO BOX 1129 | | ATHENS | AL | 35612 | |
| WALTER MECHANICAL SERVICE INC | JEREMY HARRISON | 3419 PIERSON PL | | | FLUSHING | MI | 48433 | |
| WALTER WILLIAM E INC | | PO BOX 391 | | | FLINT | MI | 48501-0391 | |
| WANXIANG AMERICA | GARY E WETZEL | WANXIANG AMERICA CORPORATION | 88 AIRPORT RD | | ELGIN | IL | 60123 | |
| WARING OIL CO | JAMIE YEARWOOD | 630 HWY E | | | FLOWOOD | MS | 39232 | |
| WARNER ELECTRIC | JOEL HALLET CRAIG COOK | 802 E SHORT | | | COLUMBIA CITY | IN | 46725 | |
| WARNER SHUI HING LTD ECB DIV | JAMES BU ZHANJUN | 71 75 CONTAINER PORT RD RM304B | | | KWAI CHUNG NT | | | HONG KONG |
| WARNER STEVENS LLP | MICHAEL D WARNER | 301 COMMERCE STREET | SUITE 1700 | | FORT WORTH | TX | 76102 | |
| WARNER STEVENS LLP | MICHAEL D WARNER | 1700 CITY CENTER TOWER II | 301 COMMERCE STREET | | FORT WORTH | TX | 76102 | |
| WAUCONDA TOOL & ENGINEERING CO EFT | RICH FISCHER | 821 W ALGONQUIN RD | | | ALGONQUIN | IL | 60102 | |
| WAUKEE ENGINEERING CO INC | KEVIN THERRIAN | 5600 W FLORIST AVE | | | MILWAUKEE | WI | 53218-1621 | |
| WEARNES PRECISION (SHENYANG) LTD | MICHAEL LIM YS | NO 46 HUAHAU RD YUHONG DIST | | | SHENYANG | | 110141 | CHINA |
| WEGAPLAST SPA | JASON CHAN | VIA I MAGGIO 39 | | | TOSCANELLA DOZZA IT | | 40060 | ITALY |
| WEIL GOTSHAL & MANGES LLP | HARVEY R MILLER | 767 FIFTH AVENUE | | | NEW YORK | NY | 10153 | |
| WEIL GOTSHAL & MANGES LLP | JEFFREY L TANENBAUM ESQ | 767 FIFTH AVENUE | | | NEW YORK | NY | 10153 | |
| WEIL GOTSHAL & MANGES LLP | MARTIN J BIENENSTOCK ESQ | 767 FIFTH AVENUE | | | NEW YORK | NY | 10153 | |
| WEIL GOTSHAL & MANGES LLP | MICHAEL P KESSLER ESQ | 767 FIFTH AVENUE | | | NEW YORK | NY | 10153 | |
| WEILAND GOLDEN SMILEY WANG EKVALL & STROK LLP | LEI LEI WANG EKVALL | 650 TOWN CENTER DRIVE | SUITE 950 | | COSTA MESA | CA | 92626 | |
| WELLS MANUFACTURING | JOANNE LEAL PURCHASING BUYER | 26 SOUTH BROOKE ST | | | FOND DU LAC | WI | 54936-0070 | |
| WES TECH INC | CHRIS LOVENDAHL | 720 DARTMOUTH LN | | | BUFFALO GROVE | IL | 60089-6902 | |
| WHEELER BROTHERS INC | THERESA MIGOT PURCHASING BUYER | 384 DRUM AVENUE | | | SOMERSET | PA | 15501 | |
| WHIRLAWAY CINCINNATI LTD | TOM ZUPAN | 4505 MULHAUSER RD | | | HAMILTON | OH | 45011 | |
| WHITLAM LABEL CO INC EFT | BARBARA HEMPTON | 24800 SHERWOOD AVE | | | CENTERLINE | MI | 48015 | |
| WHYCO METAL FINISHING | MARK CONKLIN | 1 GENERAL MOTORS DR | | | SYRACUSE | NY | 13206 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 63 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---------|---------|----------|----------|----------|------|-------|-----|---------|
| WIESAUPLAST DE MEXICO SA DE CV | ALFREDO CALDERON | GUAYAKIRI NO 624 NAVE 2 | | | QUERETARO QA | | 76110 | MEXICO |
| WILMINGTON TRUST COMPANY | STEVEN M CIMALORE | RODNEY SQUARE NORTH | 1100 NORTH MARKET STREET | | WILMINGTON | DE | 19890 | |
| WINDSOR MOLD INC | | 444 HANNA | | | WINDSOR | ON | N8X2N4 | CANADA |
| WINEMAN TECHNOLOGY INC | JIM WINEMAN | 1668 CHAMPAGNE DR N | | | SAGINAW | MI | 48604 | |
| WINSTEAD SECHREST & MINICK PC | BERRY D SPEARS | 401 CONGRESS AVENUE | SUITE 2100 | | AUSTIN | TX | 78701 | |
| WITHERS STEEL SUPPLY INC | MIKE MACSUGA | 12011 SHERIDAN RD | | | MONTROSE | MI | 48457 | |
| WL ROSS & CO LLC | STEPHEN TOY | 600 LEXINGTON AVENUE | 19TH FLOOR | | NEW YORK | NY | 10022 | |
| WOCO DE MEXICO SA DE CV | MIGUEL OSEGUERA | AVE DE LAS FUENTES 19 | | | EL MARQUES QUERETA | RO | 76246 | |
| WOO SUNG PRECISION CORPORATION | | 1028 5 JANGGI RI | DALHAP MYUN | | CHANGNYUNG GUN | KYUN GNAM | | KOREA |
| WOODBRIDGE SEQUENCING CENTER | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| WOODBRIDGE VENTURES INC | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| WORCESTER MA DIVISION OF GKN SINTER METALS INC | | 112 HARDING STREET | | | WORCESTER | MA | 01604-5086 | |
| WORKHORSE CUSTOM CHASSIS LLC | RICHARD PIKE OE SALES REPRESENTATIVE FOR WCC | 940 S STATE ROAD 32 | | | UNION CITY | IN | 47390 | |
| WORLD INDUSTRIES ACE | SANG HO LEE MANAGER PLANNING DEPARTMENT | NO 391 8 GAEUMJEONGDONG | | | CHANGWONCITY | KYEO NGSA NGNA MDO | | KOREA |
| WORTHINGTON PRECISION METALS | TOM FLEMING | 306 BEASLEY DRIVE | | | FRANKLIN | TN | 37064 | |
| WORTHINGTON STEEL CO COLUMBUS DIV | GEORGE MURROW | 1127 DEARBORN DR | | | COLUMBUS | OH | 43085 | |
| WRIGHT ENGINEERING INC | MARK WRIGHT | 41481 WINDMILL ST | | | HARRISON TOWNSHIP | MI | 48045-5908 | |
| WRIGHT K TECHNOLOGY INC | | 2025 E GENESEE | | | SAGINAW | MI | 48601 | |
| WRIGHT K TECHNOLOGY INC | JOHN SIVEY | 14000 ALABAMA HWY 20 | | | MADISON | AL | 35756 | |
| WRIGHT K TECHNOLOGY INC | JOHN SIVEY | 14000 ALABAMA HWY 20 | | | MADISON | AL | 35756 | |
| WRIGHT PLASTIC PRODUCTS INC EFT | JIM LACROIX | 201 CONDENSERY RD | | | SHERIDAN | MI | 48884 | |
| WUXI TRELLEBORG VIBRATION ISOLATOR | FEDERICA MARTELLI | NO 36 XIMEI RD NEW ZONE WUXI | | | WUXI JIANGSU | | 214112 | CHINA |
| XEROX COLORGRAFX SYSTEMS INC | GWEN FOY | 300 GALLERIA OFFICENTRE STE 400 | | | SOUTHFIELD | MI | 48034 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| XEROX CORP | GWENDOLYN FOX | 123 N WACKER DR STE 1000 | | | CHICAGO | IL | 60606-1743 | |
| XEROX CORPORATION | | 5500 PEARL ST | | | DES PLAINES | IL | 60018-5303 | |
| XEROX CORPORATION | XEROX CORPORATION | 5500 PEARL ST | | | DES PLAINES | IL | 60018-5303 | |
| YELLOWFIN LIMITED | | 4 SAXON HOUSE SAXON WHAN | LOWER YORK STREET | | SOUTHAMPTON | SQF | SO15 | UNITED KINGDOM |
| YMOS AKTIENGESELLSCHAFT INDUSTRIEPRODUKTE | | 6053 OBERTSHAUSEN 2 | POSTFACH 2240 FELDSTRABE | | | | | WEST GERMANY |
| YOROZU AUTOMOTIVE | LEIGH DUSHANE | 30009 VAN DYKE | | | WARREN | MI | 48090 | |
| YOUNG SHIN PRECISION CO LTD | | 408 O YA RI | CHON BUK MYON KYONGJU SHI | | KYONG BUK | | | KOREA |
| YOUNGJIN CO LTD | SP LEE | 914 11 WOLAM DONG TALSO GU | | | TAEGU | | 704 833 | KOREA |
| YUBEI MACHINE FACTORY | ATTN DIRECTOR | POSTBOX NO 13 | XINXIANG CITY | | HENAN PROVINCE | | | |
| YUCAIPA | ED RENWICK | 9130 W SUNSET BLVD | | | LOS ANGELES | CA | 90069 | |
| ZF BOGE ELASTMETAL | VAL MORENO | 15811 CENTENNIAL DR | | | NORTHVILLE | MI | 48167 | |
| ZF FRIEDRICHSHAFEN | STEFFEN REICHELT | GRAF VON SODEN PLATZ 1 | | | FRIEDRICHSHAFEN | | 88046 | GERMANY |
| ZF LEMFORDER SISTEMAS AUTOMOTRICES | JENNIFER DESKINS | CALLE 7 NORTE S N MANZANA | | | TOLUCA EM | | 50200 | MEXICO |
| ZUA AUTOPARTS | | 5750 MCEVER ROAD | | | OAKWOOD | CA | 30566 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 65 of 65

1/10/2008 11:32 PM
All Steering Business Special Parties - Combined List

# EXHIBIT D

**Bidding Procedures Hearing Date And Time: December 20, 2007 at 10:00 a.m.**
**Bidding Procedures Objection Deadline: December 17, 2007 at 4:00 p.m.**
**Sale Hearing Date And Time: February 21, 2008 at 10:00 a.m.**
**Sale Hearing Objection Deadline: February 14, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                 :
     In re                         :     Chapter 11
                                   :
    DELPHI CORPORATION, et al.,      :     Case No. 05-44481 (RDD)
                                   :
                                   :     (Jointly Administered)
                                   :
          Debtors.            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

EXPEDITED MOTION FOR ORDERS UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P.
2002, 6004, 6006, AND 9014 (A)(I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF SALE NOTICES,
AND (IV) SETTING SALE HEARING DATE, (B) AUTHORIZING AND APPROVING (I) SALE
OF CERTAIN OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL ASSETS PRIMARILY USED
IN DEBTORS' STEERING AND HALFSHAFT BUSINESS FREE AND CLEAR OF LIENS, CLAIMS,
AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES, AND (C)
<u>AUTHORIZING AND APPROVING TRANSACTION FACILITATION AGREEMENT</u>

("STEERING SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this expedited motion (the "Motion") for orders under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding procedures set forth herein and attached hereto as <u>Exhibit A</u> (the "Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and manner of sale notices (the "Notice Procedures"), and (iv) setting a date for the sale hearing (the "Sale Hearing"), (b) authorizing and approving (i) the sale (the "Sale") of certain of the Selling Debtor Entities' (defined below) assets comprising substantially all the assets primarily used in the Selling Debtor Entities' steering and halfshaft business  (the "Acquired Assets") and the Sale Securities[1] (together with the Acquired Assets, the "Purchased Assets") to the Buyers or the Successful Bidder (both as hereinafter defined) submitting a higher or otherwise better bid, as the case may be, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Pre-Petition Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Post-Petition Contracts," and collectively with the Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Buyers or the Successful Bidder, as the case may be, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Buyers or the Successful Bidder, as the case may be, and (c) authorizing and approving the Transaction Facilitation Agreement between Delphi and General Motors Corporation ("GM").  In support of this Motion, the Selling Debtor Entities (as defined below) respectfully represent as follows:

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Agreement (as defined in paragraph 18 below).

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee," and together with the Creditors' Committee, the "Statutory Committees").

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Plan") (Docket No. 11386) and the First Amended Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (the "Disclosure Statement") (Docket No. 11388). The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389).

3

4.       This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5.       The statutory predicates for the relief requested herein are sections 363, 365, and 1146 of the Bankruptcy Code and rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.       Current Business Operations Of The Debtors

6.       Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[2]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Court.[3]

7.       The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

---

[2]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[3]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

4

8.    Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[4] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

10.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

---

[4]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

5

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

11.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas:[5] first, modifying the

---

[5]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors and a plan framework
support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally
terminated the equity purchase and commitment agreement and related plan framework support agreement.  On
July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment
agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan
investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill
Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate
of Pardus Capital Management, L.P.  Under the Delphi-Appaloosa EPCA, the new plan investors agreed to
invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's
transformation plan and plan of reorganization.  This Court approved the Delphi-Appaloosa EPCA on August 2,
2007.  On October 29, 2007, the Debtors filed a motion requesting this Court's approval of certain proposed
amendments to the Delphi-Appaloosa EPCA (Docket No. 10760).  In addition, on November 14, 2007,
December 3, 2007, and December 5, 2007,  the Debtors filed certain additional proposed amendments to the
Delphi-Appaloosa EPCA.  On December 10, 2007, this Court entered an order granting the motion and
approving the proposed amendments (Docket No. 11382).

Company's labor agreements to create a competitive arena in which to conduct business;[6]

second, concluding their negotiations with GM to finalize GM's financial support for the

Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[7]

third, streamlining their product portfolio to capitalize on their world-class technology and

market strengths and make the necessary manufacturing alignment with their new focus;[8] fourth,

transforming their salaried workforce to ensure that the Company's organizational and cost

structure is competitive and aligned with its product portfolio and manufacturing footprint;[9] and

fifth, devising a workable solution to their current pension situation.[10]

---

[6]    As of August 29, 2007, this Court has entered the following orders approving settlements between Delphi and each of its U.S. labor unions:
- International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (Docket No. 8693);
- International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America (Docket No. 9106);
- International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
- United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW Local 87L (Docket No. 9169).
On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's motion for order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

[7]    On September 6, 2007, Delphi announced that it entered into agreements with GM consisting of a Global Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA"). Delphi's comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM. The GSA and MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively. See Docket No. 9263. On October 29, November 14, December 3, and December 5, 2007, the Debtors filed certain proposed amendments to the GSA and MRA. The approval of such amendments will be considered in connection with the confirmation of the Plan.

[8]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders. During the 2006 and 2007 calendar years, for example, the Debtors have sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, their brake hose and catalyst businesses, and their Saltillo, Mexico brake plant business, as well as their manufacturing equipment and test development equipment at the chassis facility in Saginaw, Michigan. The Debtors also received court approval for bid procedures related to the upcoming sale of substantially all assets used in their interiors and closures businesses.

[9]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages. The Company's revised operating structure consists of its four core business segments: Electronics

7

E.    The Debtors' Plan Of Reorganization

13.    By filing the Plan and related Disclosure Statement, the Debtors reached another key milestone in their chapter 11 cases.  The Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases, including GM.  Attached as exhibits to the Plan are two agreements, the GSA and the MRA, which provide for a comprehensive settlement with GM.  Both agreements are subject to this Court's approval as part of the confirmation process.  This Court has scheduled a hearing to consider confirmation of the Plan to commence on January 17, 2008.  Currently, the Debtors continue to expect that they will emerge from chapter 11 during the first quarter of 2008.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

---

and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, Steering and Automotive Holdings Group, which will be transitioned as part of the Company's transformation plan.  To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[10]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Pension Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively.  On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees Plan for the September 30, 2007 pension plan year.  On October 25, 2007, this Court granted the Debtors' motion for authority to perform under the terms of that waiver.  On October 4, 2007, the IRS, at Delphi's request, further modified the conditions to the initial waivers so that they are generally consistent with the conditions to the most recent waiver.

<u>Relief Requested</u>

15.    By this Motion, Delphi and the selling Debtor entities described in the

agreement (the "Selling Debtor Entities")[11] seek approval for the sale of the Steering Business to

Steering Solutions Corporation ("Steering Solutions") and certain of its affiliates (the

"Buyers"),[12] subject to additional competitive bidding pursuant to the proposed Bidding

Procedures.  To effect the sale, the Selling Debtor Entities seek two types of relief.  First, at the

omnibus hearing to be held on December 20, 2007, the Selling Debtor Entities will seek entry of

an order substantially in the form attached hereto as <u>Exhibit B</u> (the "Bidding Procedures Order")

approving the Bidding Procedures, Notice Procedures, and certain bid protections to be provided

to the Buyers pursuant to the master sale and purchase agreement and as described more fully

herein.  Second, subject to the terms of the Bidding Procedures Order, at the omnibus hearing to

be held on February 21, 2008, the Selling Debtor Entities will seek entry of an order substantially

in the form attached hereto as <u>Exhibit C</u> (the "Sale Approval Order") authorizing and approving

the Sale to the Buyers or the Successful Bidder, as the case may be, including, without limitation,

the assumption and assignment of the Assumed and Assigned Contracts to the Buyers, and the

assumption by the Buyers of the Assumed Liabilities.  To the extent that the Selling Debtor

Entities do not receive additional Qualified Bids (as defined below), the Selling Debtor Entities

---

[11]    Under the Agreement (as defined in paragraph 18 below), the Selling Debtor Entities include Delphi, Delphi
Automotive Systems LLC, Delphi China LLC, Delphi Automotive Systems (Holding), Inc. ("DASHI"), and
Delphi Technologies, Inc.  Certain assets would be sold under the Agreement or under ancillary agreements by
non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor
Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."  For purposes of
convenience, reference to the "Sellers" herein (including in all exhibits) means, as the context requires, (i) the
Selling Debtor Entities to the extent such reference implicates assets of the Selling Debtor Entities or (ii) non-
Debtor affiliates to the extent such reference implicates assets of the non-Debtor affiliates.  Moreover, for
convenience, use of the term "Selling Debtor Entities" means, as the context requires, the specific Debtor entity
undertaking the transaction(s) referenced to the extent such transaction affects the assets of such entity.

[12]    This Motion will refer to Steering Solutions, together with any affiliates it identifies in Schedule 1 of the
Agreement, as the "Buyers," or to any of them individually as a "Buyer."

reserve the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing");
provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale
Hearing, the Selling Debtors would serve those parties receiving notice of the Sale under
paragraphs 48, 49, and 84 with a notice of the Earlier Sale Hearing on or before 20 days prior to
the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than
seven days prior to the Earlier Sale Hearing in accordance with the Case Management Order (as
defined below).

<u>Basis For Relief</u>

16.    The Company has stated that to achieve the necessary cost savings and
operational effectiveness in its transformation plan, it must streamline its product portfolio to
capitalize on its world-class technology and market strengths and make the necessary
manufacturing realignment consistent with its new focus.  As part of the Company's
transformation plan, the Company identified the Steering Business as one of its non-core
businesses subject to disposition.

17.    Accordingly, following extensive marketing efforts, on December 10,
2007, the Sellers and the Buyers entered into a Master Sale and Purchase Agreement, a copy of
which is attached hereto as <u>Exhibit D</u> (the "Agreement").  The Agreement contemplates a global
divestiture of the Company's Steering Business to the Buyers.  The Sellers would receive
approximately $447 million worth of consideration under the proposed transactions (the
"Transaction Value"), comprised of approximately $190 million in Assumed Liabilities and
estimated restructuring costs.[13]  In addition, GM would provide the Selling Debtor Entities $257
million under the Transaction Facilitation Agreement (as defined below) among Delphi and GM.

---

[13]    Some of these restructuring costs would otherwise have been borne by GM under the MRA when the MRA
becomes effective.

Finally, GM would be responsible for certain additional expenses, in an amount estimated to be up to $65 million, which expenses would otherwise be Delphi's obligations under the Agreement. The divestiture, as memorialized in the Agreement, contemplates that certain of the assets will be sold by non-Debtor affiliates of Delphi.  The transactions to be undertaken by the Delphi non-Debtor affiliates, although memorialized in the Agreement and the attachments thereto, are generally not the subject of this Motion because those entities are not under the supervision of this Court.  The discussion in this Motion is generally (but not exclusively) limited to transactions to be undertaken by the Selling Debtor Entities, which require this Court's approval.

F.    The Steering Business

18.    The Steering Business is a global leader in the design and manufacture of steering and driveline systems and components for automotive vehicle manufacturers and adjacent markets.  The Steering Business operates 22 manufacturing plants in 15 locations worldwide, five regional systems engineering centers, and 11 local customer support centers. Throughout its distinguished 100-year history, the Steering Business has consistently been an industry leader in introducing new steering technologies, products, systems, and manufacturing processes.  The Steering Business has a history of industry-leading innovations, including the first tilt-wheel steering column and energy-absorbing steering column.  Its "wheel-to-wheel" steering system capabilities include steering columns, intermediate shafts, steering gears, steering pumps, steering hoses, electric power steering systems, halfshaft assemblies, and propeller shaft joints.

19.    The Steering Business employs approximately 9,700 individuals globally, approximately 5,625 of whom work in the U.S.  Its customer base includes major domestic,

11

transnational, and international OEMs, such as GM, Fiat, Ford, DaimlerChrysler, and Chevy.  In

2006, the Steering Business generated $2.53 billion in revenues.[14]

G.    Factors Leading To The Sale

        20.    Although the Company believes that the Steering Business is

fundamentally strong, the Steering Business does not fit within the Company's anticipated

product portfolio under its transformation plan.  In particular, the Company has determined, after

an intensive product portfolio review, that the Steering Business is outside the primary focus of

the Company's growth and long-term strategic goals.

        21.    The Company believes, however, that as a standalone business, the

Steering Business could become more profitable and competitive.  The Company has therefore

determined that the value of the Steering Business would be maximized through its divestiture.

The Company, including the Selling Debtor Entities, will carefully manage the transition of the

Steering Business and the Sale will be completed in coordination with the Company's customers,

employees, unions, and other stakeholders to avoid any disruption to its customers and its world-

class level of service.

        22.    The Company has actively marketed the Steering Business for more than

one-and-a-half years.  As part of the process, the Company, with the assistance of its investment

banker, Rothschild Inc, contacted approximately ninety potential buyers and executed

confidentiality agreements with approximately thirty potential buyers.  These parties were

provided access to information about the Steering Business through a well-organized and

thorough offering and diligence process.  Based on the proposals received, Debtors selected

certain parties to conduct further detailed due diligence, including through an electronic data

---

[14]    The Steering Business' 2006 revenues are based on unaudited internal financial reports which have been
normalized for certain non-recurring items.

12

room that was updated regularly during the sale process, management presentations, and

substantial onsite diligence meetings with key personnel of the Steering Business.

23.    The Sellers evaluated the terms and benefits of the proposals, as well as

the benefits of other alternatives to divesting the Steering Business.  In their business judgment,

the Sellers concluded that the proposal from the Buyers, which formed the basis of the

Agreement, offered the most advantageous terms and the greatest economic benefit.  This

decision was based in part on the Sellers' ability to maximize the value of the business line as a

going concern and their belief that the Buyers would continue to provide quality products and

service to the Company's customers, many of whom buy other products from Delphi.  Indeed,

both GM and the UAW appear to support the Sellers' sale of the Steering Business to the Buyers.

Steering Solutions is an affiliate of Platinum Equity, LLC ("Platinum").  Platinum is a global

firm specializing in the merger, acquisition, and operation of companies that provide services

and solutions to customers in a broad range of business markets, including information

technology, telecommunications, logistics, manufacturing, and entertainment distribution.  Since

its founding in 1995, Platinum has acquired more than 75 businesses with more than $23 billion

in aggregate annual revenue at the time of acquisition.

H.    The Agreement

24.    Pursuant to the Agreement, the Selling Debtor Entities would (i) sell the

Purchased Assets owned by the Selling Debtor Entities free and clear of any Interests and/or

Claims,[15] except for Permitted Encumbrances as defined in the Agreement, in consideration for

---

[15]    "Interests and/or Claims" means any and all liens, claims, interests, and Encumbrances of any type whatsoever,
whenever and however arising (whether known or unknown, choate or inchoate, filed or unfiled, scheduled or
unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed,
contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material,
disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases,
and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise

13

the amount of proceeds paid by GM to Delphi under the TFA (as defined below), less any

portion paid by Delphi to the non-Debtors Sellers, and Buyers assumption of the Assumed

Liabilities and (ii) assume (if applicable) and assign the Assumed and Assigned Contracts to the

Buyers.

25.    The significant terms of the Agreement are summarized as follows:[16]

(a)    General Terms.  The Buyers would acquire the Purchased Assets, which
comprise substantially all of the assets primarily used by the Steering Business through a
combination of asset and share sales (other than the certain assets have been excluded), including
accounts receivable, real property, personal property, inventory, contracts that relate to the
Steering Business, administrative assets, permits, certain intellectual property, technical
documentation, prepaid expenses, deposits, advances, warranties and claims relating to the
Steering Business, certain motor vehicles, certain insurance policies, and goodwill as a going
concern and other intangible properties.

(b)    Bankruptcy Court Approval.  The Sale would be subject to approval by
this Court and competitive bidding pursuant to the Bidding Procedures.

(c)    Documentation.  The Sale would be effected pursuant to the Agreement
and related documentation.[17]  At or prior to the closing, certain of the Sellers and certain of the
Buyers would enter into, among others, the following ancillary agreements (collectively, the
"Ancillary Agreements"): (i) certain agreements related to the Buyers' use of foreign, non-Debtor
real property, (ii) certain agreements governing the transfer of intellectual property from the
Sellers to the Buyers, (iii) certain stock and asset transfer agreements, (iv) an escrow agreement,
(v) a transition services agreement, (vi) a bill of sale, and (vii) certain assignment and
assumption agreements.

(d)    Deposit Escrow.  No later than the business day following entry of the
Bidding Procedures Order on this Court's docket, the Buyers would deliver to the escrow agent
$9.5 million that would be held as an earnest money deposit (such amount, together with the
interest accrued thereon prior to closing, the "Deposit Amount").  Upon closing, the escrow

---

arising under doctrines of successor liability), including, but not limited to those (i) that purport to give to any
party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling
Debtor Entities' or the Buyers' interest in the Purchased Assets, or any similar rights, and (ii) relating to taxes
arising under or out of, in connection with, or in any way relating to the operation of the Steering Business prior
to the Closing Date, including the transfer of the Purchased Assets to the Buyers.

[16]    In the event of any discrepancy between the Agreement and this summary of the Agreement, the provisions of
the Agreement control.  Although the terms and conditions are generally the same for all the Sellers, the
summaries in this Motion refer generally to the Selling Debtor Entities and not the non-Debtor Sellers.

[17]    Copies of the schedules to the Agreement and the Ancillary Documents (as defined below) are available upon
request to parties-in-interest who execute a confidentiality agreement acceptable to the Debtors and who show
that they would be affected by the relief requested in this Motion.

14

agent would return the Deposit Amount to the Buyers.  Upon termination of the Agreement because of a material breach of the Buyers, the Sellers would be entitled to receive the Deposit Amount.  If the Agreement is terminated for any other reason, the Deposit Amount would be returned to the Buyers.

(e)    Representations And Warranties.  Pursuant to the Agreement, the Selling Debtor Entities would provide representations and warranties relating to the Sale and the Purchased Assets and the Buyers would provide representations and warranties generally standard in a transaction of this type.  Except as specifically provided for in the Agreement, the representations and warranties of the Selling Debtor Entities and the Buyers will not survive the closing of the Sale.

(f)    Covenants.  Except as otherwise disclosed in the Agreement, between the date of signing of the Agreement and the Closing, the Selling Debtor Entities would be required to refrain from doing any of the following, among other things, without prior written consent of the Buyers (which consent would not be unreasonably withheld): (i) split, combine, or reclassify any capital stock or other equity interests or purchase or sell any capital stock or other equity interests of any of the Sale Company or JV Company (as defined in the Agreement) or grant or make any option, subscription, warrant, call, commitment, or agreement of any character in respect of any such capital stock or other equity interests; provided, however, that this would not limit the ability of any Sale Company or any JV Company to pay cash dividends or distributions to Delphi and any of its affiliates, (ii) sell or otherwise dispose of the Purchased Assets having an aggregate value exceeding $500,000, excluding sales made in the ordinary course of business, (iii) merge or consolidate any Sale Company or JV Company with or into any other person or enter into any agreement requiring any such merger or consolidation, (iv) acquire assets or commit to capital expenditures with an aggregate value exceeding $1 million, excluding acquisitions of assets or capital expenditures made in the ordinary course of business in accordance with the Steering Business's budgeted capital expenditures, (v) (A) in the case of Sale Companies, incur, assume, or guarantee any debt obligations in excess of $1 million or voluntarily purchase, cancel, prepay, or otherwise provide for a complete or partial discharge in advance of a scheduled payment date with respect to any material debt obligations, excluding intercompany debt obligations that are repaid on or before closing, and (B) otherwise incur, assume, or guarantee any debt obligation that would become an Assumed Liability, (v) incur any encumbrance, other than the Permitted Encumbrances, (vi) increase the cash compensation or grant the right to receive any severance, termination, or retention pay of the Transferred U.S. Employees other than: (A) in the ordinary course of business, or (B) as required by any other agreement, (vii) enter into or amend any employee benefit plan, the consequence of which would be to increase any liability to be assumed by Buyers, (viii) enter into any new transaction with an affiliate of the Sellers, (vi) settle any proceeding in excess of $2.5 million with respect to an Assumed Liability, except for an amount less than or equal to that reserved on the reference balance sheet in respect of such settled proceeding, (x) hire any individual with a base salary in excess of $150,000 per annum, (xi) with respect to the Steering Business, make any material election relating to taxes (except in a manner consistent with past practice) or settle or compromise any material tax liability or amend any material tax return, (xii) make any material change in the accounting methods or practices followed by the Steering Business (other than such changes as are: (A) required by law, (B) made in conformance with GAAP, or (C) required in connection with the preparation of the historical financial statements), (xii) enter into any

15

partnership or joint venture agreement between any of the Sellers and any other person, (xiv) enter into, terminate, or make any material amendment to a material contract (excluding collective bargaining agreements) other than in the ordinary course of business, (xv) amend any organizational document of the Sellers or the JV Companies, (xvi) make any material change in its methods of management, marketing, accounting, or operating or practices relating to payments, (xvii) fail to maintain insurance in a manner consistent with Sellers' past practice, or (xviii) agree or commit to do any of the foregoing.

(g)     KDAC. After the execution of the Agreement, the Sellers would use commercially reasonable efforts to prepare for the sale of DASHI's 50% interest in Korea Delphi Automotive Systems Corporation's ("KDAC") business relating to the Steering Business ("KDAC Steering") and satisfy the following conditions: (i) completion of KDAC Steering's split-off from KDAC as a separate legal entity containing all of the assets and liabilities of KDAC Steering through a corporate split process whereby the shareholding ratio of the existing KDAC shareholders remains unchanged in the newly formed KDAC Steering legal entity and (ii) receipt of consents from the other shareholders of KDAC Steering permitting DASHI to sell its 50% interest in KDAC Steering (the "KDAC Shareholder Consent").

(h)     Indemnification. The Sellers would indemnify the Buyers for (i) damages related to those liabilities and assets retained by the Sellers at closing and (ii) a breach of any agreement or covenant of the Sellers in the Agreement. As for the retained liabilities, the Sellers indemnification obligations for certain items would be limited as follows: (i) product warranty liability (72 months following the closing), (ii) certain environmental liability (96 months following the closing), and (iii) general, automotive, and product liability (36 months following the closing).

(i)     Closing Conditions. In addition to certain other customary closing conditions relating to bankruptcy court approvals and regulatory matters, the obligation of the Buyers to close the Sale would be subject to the satisfaction of the following conditions: (i) the substantial completion of certain separation activities, (ii) the accuracy of the Buyers' and the Sellers' representations and warranties, except as would not be reasonably expected to have a material adverse effect, (iii) the Sellers and the Buyers would have performed and complied in all material respects with all agreements and obligations required by the Agreement to be performed or complied with prior to the closing, (iv) the Sellers' and the Buyers' delivering of the Ancillary Agreements, (v) the Buyers' entering into certain agreements with outsourced service providers, and (vi) no occurrence of a material adverse effect (as defined in the Agreement).

(j)     Termination. The Agreement could be terminated in the following circumstances (by a party which is not in breach of the Agreement): (i) upon mutual written consent of the Sellers and the Buyers, (ii) by either the Sellers or the Buyers if consummation of the Sale would violate any final non-appealable order of any regulatory governmental entity other than this Court, (iii) by either the Sellers or the Buyers if the Selling Debtor Entities consummate an alternative transaction, (iv) by either the Sellers or the Buyers if the closing has not occurred within 180 days after entry of the Sale Approval Order, (v) by either the Sellers or the Buyers, if this Court has not entered a Sale Approval Order that is a final order on or before 90 days after the date of the Agreement, (vi) within ten business days, by the Buyers if a material adverse effect has occurred and continuing, and not reasonably capable of being cured within 90

16

days after entry of the Sale Approval Order (vii) by the Buyers, if the Buyers become an Alternative Bidder but the Selling Debtor Entities fail to consummate the transaction with the Successful Bidder within 90 days of entry of the Sale Approval Order, (viii) by the Buyers, upon written notice to the Sellers, if the Sellers have breached the Agreement and such breach is (A) not cured within 30 days or (A) incapable of being cured by the Sellers, (ix) by the Buyers, if the Sellers enter into an agreement or understanding for an alternative transaction for the Steering Business other than a Successful Bidder at the Auction where the Buyers are the Alternate Bidder; (x) by the Buyers, if the Sellers (A) seek or support, or fail to oppose, a competing bid for the Steering Business or (B) execute an agreement or understanding with respect to an Alternative Transaction (in each case, except in connection with the Qualified Bids at the Auction, or regarding a Successful Bidder at the Auction where the Buyers are the Alternate Bidder), (xi) by the Buyers, if this Court determines that the Sale of the Steering Business can only be approved through a plan of reorganization, unless the Buyers can purchase the Steering Business on substantially the same terms as the Agreement and the plan of reorganization is confirmed within 120 days of the Agreement, (xii) by the Buyers, if the Steering Business is sold in connection with a closure, liquidation, or wind-down, and (xiii) by the Sellers, upon written notice to the Sellers, if the Buyers have breached the Agreement and such breach is (A) not cured within 30 days or (B) is incapable of being cured by the Buyers.

      (k)    <u>Break-up Fee</u>.  Subject to this Court's approval and certain exceptions, the Sellers would be required to pay a break-up fee to the Buyers in the amount of $6 million, which amounts to approximately 1.34% of the Transaction Value (the "Break-Up Fee"), if (i) the Sellers or the Buyers terminate the Agreement for the Sellers to consummate an alternative transaction for the sale of the Steering Business, (ii) if the Buyers terminate the Agreement because the Sellers enter into an agreement or understanding for an alternative transaction for the Steering Business other than regarding a Successful Bidder at the Auction where the Buyers are the Alternate Bidder, (iii) the Buyers terminate the Agreement because the Sellers (A) seek or support, or fail to oppose, a competing bid for the Steering Business or (B) execute an agreement or understanding with respect to an alternative transaction (in each case, except in connection with Qualified Bid in the Auction process or regarding a Successful Bidder at the Auction where Buyer Parent is the Alternate Bidder), or (iv) the Buyers, as an Alternate Bidder, terminate the Agreement because the Sellers fail to consummate an alternative transaction with a Successful Bidder within 90 days of entry of the Sale Approval Order; <u>provided</u>, <u>however</u>, that the Break-Up Fee would be payable only upon consummation of an alternative transaction for the Steering Business.

      (l)    <u>Expense Reimbursement</u>.  Subject to this Court's approval, provided that the Buyers are not in material breach of the Agreement, the Sellers would be required to reimburse (i) all of the Buyers' reasonable, actual out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the Agreement (but not to exceed the amount of the Break-Up Fee) if the Break-Up Fee is not paid or (ii) up to $2 million, if the Break-Up Fee is paid.

      (m)    <u>Transfer Taxes</u>.  The Sellers and the Buyers would use commercially reasonable efforts and cooperate in good faith to exempt the sales, conveyances, assignments, transfers and deliveries to be made to the Buyers under the Agreement from any transfer, documentary, sales, use, registration, recording, stamp, value-added, and other such taxes

17

(including all applicable real estate transfer taxes, but excluding any taxes based on or attributable to income or gains) and related fees (including notarial fees as well as any penalties, interest and additions to tax) ("Transfer Taxes") as may be payable in connection with the Sale under section 1146 of the Bankruptcy Code.  In the event that an exemption(s) is unavailable, such Transfer Taxes would be borne by the party upon whom the applicable law regulation or custom of the jurisdiction imposes the obligation to pay or, where no law, regulation or custom exists would be paid by the Buyers.

I.    Preliminary Payment Allocation By Delphi To Non-Debtor Sellers

26.    As noted above, some of the Purchased Assets are being sold by certain non-Debtor affiliates.  The Buyers are interested in purchasing the global Steering Business, and not merely the portion of the Steering Business owned by the Selling Debtor Entities.  Thus, to divest the U.S. portion of the Steering Business, the Company, in its business judgment, determined that it was in the Company's best interest for the foreign-non-Debtor Sellers to divest their assets related to the Steering Business.  To effectuate the sale, the Selling Debtor Entities must compensate the non-Debtor Sellers for the fair market value of their portion of the Purchased Assets.  The Sellers calculated the fair market value of the non-Debtor Sellers' assets based on a discounted cash flow analysis and/or net book value.  The proposed payments by the Selling Debtor Entities to the Non-Debtor Sellers are reflected in the chart attached hereto as Exhibit E.  The proposed payments for those assets valued based on net book value will be adjusted to reflect actual net book value at date of sale.

27.    Additionally, $10 million (the "KDAC Amount") of value is allocable to DASHI's 50% interest in KDAC Steering (the "KDAC Shares"). The sale of the KDAC Shares to the Buyers, however, is subject to KDAC Shareholder Consent and other necessary approvals. The Selling Debtor Entities and the Buyers understand and agree that the sale of the KDAC Shares would likely occur after closing of the Sale.  Accordingly, the Agreement provides that $10 million would be paid to the Buyers, if the Selling Debtor Entities are unable to sell the KDAC Shares within nine months of closing.

18

J.    Workforce Provisions

28.    As of the Closing, the Buyers would offer employment to substantially all of the Selling Debtor Entities' U.S. (which includes employees on layoff) and non-U.S. employees.  U.S. salaried employees would be employed on terms that provide salary and benefit packages substantially comparable in the aggregate to those in place with the Selling Debtor Entities immediately prior to closing.  For U.S. salaried employees who accept the Buyers' offer of employment, the Buyers would maintain the requisite level of compensation and benefits for a minimum of one year from the closing; provided, however, that in instances in which the level of compensation or benefits of any transferred U.S. salaried employee is governed by a contract containing a different duration period, the Buyers would abide by the terms of such contract; and provided further that the Buyers would be permitted (but not required) to reduce or modify employment terms of the transferred U.S. salaried employees consistent with any across-the-board modifications made by the Selling Debtor Entities to the terms of similarly situated salaried employees of the Selling Debtor Entities during the one-year period following the closing.  The terms and conditions of employment for the transferred U.S. salaried employees that are designated as hourly employees and represented by a union would be as determined by the applicable collective bargaining agreement.

29.    The significant terms of the Agreement, with respect to U.S. hourly or U.S. salaried employees, as applicable, are as follows:[18]

(a)    Collective Bargaining Agreements.  The Buyers would assume the terms and conditions of all of the Selling Debtor Entities' applicable collective bargaining agreements, as may be modified prior to closing.  The Buyers would recognize the seniority status of

---

[18]    Potential bidders should note that Section 6.6 of the Agreement addresses, among other things, the terms and conditions of employment of UAW-represented employees, and these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

Transferred U.S. Employees who are employed in accordance with a collective bargaining agreement for all purposes of continued employment with the Buyers.

(b)    Inactive Employees.  Employees of the Selling Debtor Entities who are not active employees as of the closing (the "Inactive Employees") due to e.g., illness, short-term disability, sick leave, family medical leave, or other approved leave of absence would remain the Selling Debtor Entities' responsibility until such employee commences employment with the Buyers.  Employees of the Selling Debtor Entities on layoff status are not Inactive Employees for purposes of the Agreement.  Inactive Employees may return to work for the Buyers under the terms and conditions described in the Agreement for Transferred U.S. Employees if such return occurs within 12 months of the closing, or later if required by law.

(c)    Employee Benefit Plans. The Buyers would recognize the pre-closing credited and length of service for the Transferred U.S. Employees of the Sellers for eligibility and vesting purposes.  Subject to applicable law, the Sellers would recognize a Transferred U.S. Employee's post-closing service with Buyer (and its affiliates that were within "controlled group" as defined under ERISA and the Internal Revenue Code) for purposes of pension vesting, eligibility, and early retirement subsidies.  In no case, however, would credited or length of service be recognized under the Agreement if such recognition would cause a duplication of compensation or benefits as between the Sellers and the Buyers.  The Transferred U.S. Employees' participation and eligibility for benefits under the Buyers' benefits plans would commence as of the Closing or as soon thereafter as practicable.

(d)    Severance.  The Buyers would assume all obligations and liabilities relating to any claims for severance and terminations payments or benefits by the Transferred U.S. Employees arising from (i) the transactions contemplated under the Agreement or (ii) any action taken by the Buyers after Closing, including terminating or reducing the compensation of any Transferred U.S. Employee after Closing.

K.    Approval Of The Bidding Procedures

30.    The Sale of the Purchased Assets would be subject to higher or otherwise better offers pursuant to the Bidding Procedures.  The Selling Debtor Entities believe that the proposed structure of the Bidding Procedures is the one most likely to maximize the realizable value of the Steering Business for the benefit of the Sellers, including the Selling Debtor Entities and their estates, their stakeholders, and other interested parties.

31.    The Bidding Procedures describe, among other things, the assets available for sale, the manner in which bidders and bids become "qualified," the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any

20

subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s), and

this Court's approval thereof.  The following overbid provisions and related Bidding Procedures

are designed to compensate the Buyers for their efforts and agreements to date and to facilitate a

full and fair process (the "Bidding Process").  The Bidding Process is designed to maximize the

value of the Purchased Assets for the benefit of the Selling Debtor Entities' creditors,

stakeholders, and estates.

32.    The proposed Bidding Procedures attached hereto as <u>Exhibit A</u> provide, in

relevant part, as follows:[19]

(a)    <u>"As Is, Where Is"</u>:  The Purchased Assets would be sold on an "as is, where is" basis and without representations or warranties of any kind, nature, or description except as set forth in the Agreement or the purchase agreement of a Successful Bidder.

(b)    <u>Participation Requirements</u>:  To ensure that only bidders with financial ability and a serious interest in the purchase of the Purchased Assets participate in the Bidding Process, the Bidding Procedures provide for certain requirements for a potential bidder to become a "Qualified Bidder":  (i) executing a confidentiality agreement in form and substance satisfactory to the Sellers, (ii) providing the Sellers with certain financial assurances as to such bidders ability to close a transaction, and (iii) submitting a preliminary proposal reflecting (A) the purchase price range, (B) any Purchased Assets expected to be excluded, (C) the structure and financing of the transaction, (D) any anticipated regulatory approvals, (E) the anticipated time frame and any anticipated impediments to obtaining such approvals, (F) any additional conditions to closing the potential bidder may wish to impose, and (G) the nature and extent of any due diligence the potential bidder may wish to conduct and the date by which such diligence would be completed.

(c)    <u>Due Diligence</u>:  All Qualified Bidders would be afforded an opportunity to participate in the diligence process.  The Sellers would coordinate the diligence process and provide due diligence access and additional information as reasonably requested by any Qualified Bidders.  Due diligence would not continue after the Bid Deadline (as defined below).

(d)    <u>Bid Deadline</u>:  All bids would have to be received from Qualified Bidders not later than 11:00 a.m. (prevailing Eastern time) on January 18, 2008 (the "Bid Deadline").  The Sellers could extend the Bid Deadline once or successively, but would not be obligated to do so; <u>provided</u>, <u>however</u>, for any such extension beyond February 1, 2008, the Sellers would obtain

---

[19]    In the event of any conflict between the Bidding Procedures and this summary of the Bidding Procedures, the provisions of the Bidding Procedures control.  Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Bidding Procedures or the Agreement.

written consent for such extension from Steering Solutions, which consent would not be unreasonably withheld.

(e)    <u>Bid Requirements</u>:  All bids would be required to include the following documents: (i) a letter stating that the bidder's offer would be irrevocable for the period set forth in the Bidding Procedures, (ii) an executed copy of the Agreement, together with all schedules, marked to show amendments and modifications to the agreement, purchase price, and proposed schedules, (iii) a good faith deposit of $9.5 million, and (iv) satisfactory written evidence of a commitment for financing or other ability to consummate the proposed transaction.

(f)    <u>Qualified Bids</u>: To be deemed a "Qualified Bid," a bid would be received by the Bid Deadline and, among other things, would be required to (i) be on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than those contained in the Agreement, (ii) not be contingent on obtaining financing or the outcome of unperformed due diligence, (iii) have a value equal or greater than the Preliminary Purchase Price reflected in the Agreement, plus the Assumed Liabilities, plus the amount of the Break-Up Fee and Expense Reimbursement, plus $1 million, (iv) not be conditioned on bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment, (v) contain acknowledgements and representations as set forth in the Bidding Procedures, (vi) include a commitment to consummate the purchase of the Purchased Assets within not more than 15 days after entry of a Bankruptcy Court order approving such purchase, and (vii) be on terms acceptable to GM, as provided in any agreement between GM and Delphi which facilitates the transactions contemplated in the Agreement.  A Qualified Bid would be valued based on factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Buyers will be referred to as a "Subsequent Bid."  As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers would deliver complete copies of all items and information enumerated above to counsel for the Equity Committee.  The Sellers also would provide the UAW with notice of all Qualified Bidders and their contact information.

(g)    <u>Conduct Of Auction</u>: If the Sellers receive at least one Qualified Bid in addition to that of the Buyers, they would conduct an auction (the "Auction") of the Purchased Assets at 10:00 a.m. (prevailing Eastern time) on or before January 28, 2008, or such later time or other place as the Sellers notify all Qualified Bidders who have submitted Qualified Bids, with the Buyers' consent not to be unreasonably withheld (but in no event later than the second business day prior to the Sale Hearing), in accordance with the procedures outlined in the Bidding Procedures which include: (i) attendance at the Auction would be limited to specified parties as outlined in the Bidding Procedures, (ii) at least three business days prior to the Auction, each Qualified Bidder with a Qualified Bid would inform the Sellers, GM, and the UAW whether it intends to participate in the Auction and at least two business days prior to the Auction, the Sellers would provide such bidders with copies of the Qualified Bid which the Sellers then believe would be the highest or otherwise best offer for the Purchased Assets, (iii) all Qualified Bidders would be entitled to be present for all Subsequent Bids, and (iv) bidding at the Auction would begin with the highest or otherwise best Qualified Bid, continue in minimum increments of at least $1 million, and conclude after each Qualified Bidder has had the opportunity to submit one or more additional Subsequent Bids.

(h)    Selection Of Successful Bid:  As soon as practicable after the conclusion of the Auction, the Sellers, in consultation with their advisors, would review each Qualified Bid and identify the highest or otherwise best offer for the Purchased Assets (the "Successful Bid") and the bidder making such bid (the "Successful Bidder"), as well as identifying the Alternate Bidder.  The Sellers would sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by this Court after the Sale Hearing.

(i)    Sale Hearing: The Selling Debtor Entities request that the Sale Hearing be scheduled for February 21, 2008 at 10:00 a.m. (prevailing Eastern time) and that the Sale Hearing could be adjourned or rescheduled by the Sellers without notice other than by an announcement of the adjourned date at the Sale Hearing, only if (a) such extension would enable the Sellers to comply with the time requirements of the Agreement or (b) the Buyers are not the Successful Bidder at the Auction.  In all other instances, the Sale Hearing may only be adjourned upon written consent of the Buyers, which consent would not be unreasonably withheld**.**  To the extent that the Selling Debtor Entities do not receive additional Qualified Bids, the Selling Debtor Entities reserve the right, at their election, to seek the Earlier Sale Hearing; provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors would serve those parties receiving notice of the Sale under paragraphs 48, 49, and 84 with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing in accordance with the Case Management Orders (as defined below).  If no Qualified Bids other than that of the Buyers is received, the Sellers would proceed with the sale of the Purchased Assets to the Buyers, pursuant to the terms of the Agreement, as it may be modified by the Sale Approval Order, following entry of such order.  If the Sellers receive additional Qualified Bids, then at the Sale Hearing, the Selling Debtor Entities could seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder").  A bid would not be deemed accepted by the Sellers unless and until approved by this Court.  Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for specified reasons, then the Alternate Bid would be deemed to be the Successful Bid and the Sellers would be permitted to effectuate a sale to the Alternate Bidder without further order of this Court.

(j)    Return Of Good Faith Deposits: Good faith deposits of all Qualified Bidders (except for the Successful Bidder) would be held in an interest-bearing escrow account and all Qualified Bids would remain open until two business days following the closing of the Sale (the "Return Date").  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of the Successful Bidder, such Successful Bidder would forfeit its good faith deposit and such deposit would irrevocably become property of the Sellers.  On the Return Date, the Sellers would return the good faith deposits of all other Qualified Bidders, together with the accrued interest thereon.

(k)    Reservation Of Rights:  The Sellers, after consultation with the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time, any bid (other than the Buyers' initial bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the

23

Sellers, including the Selling Debtor Entities, their estates, and their stakeholders as determined by the Selling Debtor Entities in their sole discretion.

L.      Transaction Facilitation Agreement

33.      Under the MRA, which is subject to this Court's approval under the Plan confirmation process, GM committed, among other things, to pay Delphi on the later of January 2, 2008 or the effective date of the Plan an amount equal to "the lesser of (x) $210 million and (y) 66.6% of the estimated Net Working Capital associated with the Global Steering Business as of December 31, 2007," subject to various adjustments (the "Steering Advance").  MRA § 4.04(g)(i).

34.      To induce Delphi to proceed with a sale of the Steering Business on terms set forth in the Agreement, GM, which has committed under the MRA to pay Delphi the Steering Advance, regardless of whether Delphi sells the Steering Business, was amenable to increasing the consideration to Delphi in connection with the sale of the Steering Business.  As a result, on December 10, 2007, GM and Delphi entered into that certain Transaction Facilitation Agreement, a copy of which is attached hereto as Exhibit F (the "TFA").  The Debtors seek approval of the TFA under the Sale Approval Order.  The significant terms of the TFA are as follows:

(a)      Termination.  The TFA would automatically terminate upon any termination of the Agreement, other than in connection with the sale of the Steering Business to a Successful Bidder under the Bidding Procedures.  If the TFA is terminated, all of the terms of the MRA that would otherwise be amended by the TFA would be deemed to have been in full force and effect on the effective date of the MRA, and Delphi and GM would perform their respective obligations thereunder.

(b)      Consent Of Purchase Price And Identity Of Buyer.  The MRA provides GM the right to consent to the identity of any buyer of the Steering Business and to the amount of proceeds to be paid upon the sale of the Steering Business if such proceeds are less than the net working capital associated with the Steering Business.  MRA § 4.05(a).  Under the TFA, GM retains such consent rights.

24

(c)    GM Payment.  If the closing of the Sale (the "Closing Date") occurs before the effective date of the MRA, the TFA provides that GM would pay to Delphi: (i) $257 million on the Closing Date; (ii) the fees payable to Delphi's investment banker, Rothschild, Inc., in the amount of $5 million within one business day after the Closing Date; (iii) an expense reimbursement of up to $10 million related to "Day 2" information technology separation costs; and (iv) a one-time working capital normalization payment of $30 million within one business day of Delphi making a related one-time working capital normalization payment of $30 million to the Buyers.  If the Closing Date occurs after the effective date of the MRA, GM's payment obligations remain unchanged, except that of the $257 million payment described above, GM would pay $210 million of such amount on the effective date of the MRA and the remaining $47 million on the Closing Date.  Additionally, if Delphi does not sell the Buyers its interest in KDAC Steering within nine months of the Closing Date, then GM would reimburse Delphi $10 million, provided that Delphi makes a related $10 million payment to the Buyers under the terms of the Agreement.  If Delphi sells its interest in KDAC Steering to the Buyers within the requisite time, GM would reimburse Delphi an amount up to $20 million for the amount of KDAC Steering debt assumed by Buyer, and for which Delphi reimburses the Buyer.

(d)    Delphi Payment.  To the extent that the Auction results in increased proceeds for the sale of the Steering Business in excess of the Break-Up Fee and Expense Reimbursement paid by Delphi to the Buyers, the TFA provides that Delphi would reimburse GM in full for certain of the payments described above (the "GM Reimbursement").  If a Successful Bid exceeds the Break-Up Fee, the Expense Reimbursement, and the GM Reimbursement, then the TFA provides that such additional proceeds would be paid 66.66% to GM, with the remaining balance retained by Delphi.

M.    Bid Protections

35.    At various times over the course of the past year, the Buyers have expended considerable time, money, and energy pursuing the purchase of the Steering Business. The Agreement is the culmination of these efforts.  The Buyers have engaged in extended arm's length and good faith negotiations regarding a possible sale.  The Buyers are not "insiders" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

36.    In recognition of this expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bid protections to the Buyers (the "Bid Protections").  Specifically, the Agreement provides for, and the Selling Debtor Entities respectfully request that this Court approve, a break-up fee payable by the Sellers to the Buyers in the amount of $6 million, or 1.34% of the Transaction Value, if the Agreement is terminated

under certain termination provisions, the Selling Debtor Entities consummates an Alternative

Transaction, and the Buyers are not in breach of the Agreement or the Bidding Procedures.  The

Selling Debtor Entities' obligation to pay the Bid Protections, as provided by the Agreement,

would survive termination of the Agreement and, until paid, would constitute a superpriority

administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code with priority

over any and all administrative expenses of the kind specified in sections 503(b) or 507(b) of the

Bankruptcy Code.

        37.     In addition, the Selling Debtor Entities respectfully request this Court's

approval of the term in the Agreement providing reimbursement of the Buyers' reasonable, actual

out-of-pocket fees and expenses incurred in connection with the transactions contemplated by the

Agreement in an amount not to exceed (i) $2,000,000 if a Break-Up Fee is paid or (ii) the

amount of the Break-Up Fee if the Break-Up Fee is not paid.

        38.     If the Buyers actually receive the Break-Up Fee and/or Expense

Reimbursement, then such Break-Up Fee or Expense Reimbursement would be the sole and

exclusive remedy of the Buyers, whether at law or in equity, for any breach by Delphi or any of

its affiliates of the terms and conditions of the Agreement; provided, however, that the Buyers

would retain their rights and remedies under the Deposit Escrow Agreement and the portion of

the agreement governing the return of the Deposit Amount.

        39.     The Bid Protections were a material inducement for, and a condition of,

the Buyers' entry into the Agreement.  The Sellers believe that the Bid Protections are fair and

reasonable in view of (a) the intensive analysis, due diligence investigation, and negotiation

undertaken by the Buyer in connection with the Sale, (b) the significant amount of known

Assumed Liabilities being assumed by the Buyers under the Agreement, and (c) the fact that the

26

Buyers' efforts have increased the chances that the Sellers would receive the highest or otherwise best offer for the Purchased Assets.

40.    The Buyers are unwilling to commit to hold open the offer to purchase the Purchased Assets under the terms of the Agreement without the approval of the Bid Protections and the Bidding Procedures Order.  Thus, absent entry of the Bidding Procedures Order and approval of the Bid Protections, the Sellers would lose the opportunity to obtain what they believe to be the highest and best offer for the Purchased Assets.

41.    Moreover, payment of the Break-Up Fee would not diminish the Selling Debtor Entities' estates.  The Sellers would not expect to pay the Break-Up Fee unless they do so to accept an alternative Successful Bid, which must exceed the price offered by the Buyers by an amount sufficient to pay the Break-Up Fee.  The Expense Reimbursement is a necessary cost of obtaining a binding commitment from the Buyers for the sale of the Steering Business.  The Selling Debtor Entities thus request that this Court authorize payment of the Bid Protections pursuant to the terms and conditions of the Agreement.

N.    Assumption And Assignment Of Contracts

42.    The Selling Debtor Entities seek authority under section 365 of the Bankruptcy Code to assume and assign the Pre-Petition Contracts to the Buyers or the Successful Bidder, as the case may be.  The approximate cost to cure the Pre-Petition Contracts is estimated at $32.09 million.

43.    With respect to the Pre-Petition Contracts, at least 20 days prior to the Sale Hearing, the Selling Debtor Entities propose to serve on each non-Debtor party to an Assigned Contract a cure notice substantially in the form attached hereto as Exhibit G (the "Cure Notice").  The Cure Notice would state, with respect to the Pre-Petition Contracts, the cure amount that the Selling Debtor Entities believe is necessary to assume such contract or lease

27

pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and would notify each party that such party's lease or contract would be assumed and assigned to the Buyers to be identified at the conclusion of the Auction. In addition, such Cure Amounts would be listed on a schedule to the Sale Approval Order. In connection with the proposed Sale, the Selling Debtor Entities also seek authority under section 363 of the Bankruptcy Code to assign the Post-Petition Contracts to the Buyers or the Successful Bidder, as the case may be. There are no past due obligations under the Post-Petition Contracts.

44.    The Debtors propose that any objection to the Cure Amount would be required to be filed within ten days of the date of the Cure Notice and served as set forth in the Cure Notice. Any objection to the Cure Amount would be required to state with specificity what cure amount the party to the Pre-Petition Contract believes is required, including appropriate documentation thereof. If no objection is timely received, the Cure Amount set forth in the Cure Notice would be controlling notwithstanding anything to the contrary in any Pre-Petition Contract or other document, and the non-Debtor party to the Pre-Petition Contract would be forever barred from asserting any other claims against the Selling Debtor Entities, the Buyers, or the Successful Bidder (as appropriate) or the property of any of them, as to such Pre-Petition Contract. The Selling Debtor Entities would pay all Cure Amounts as agreed to by the Selling Debtor Entities and the contract counter-party, or, absent such agreement, by order of the Court in the time and manner specified by the Sale Approval Order. Notwithstanding any contested Cure Amount, the Assumed and Assigned Contracts would be assumed and assigned to the Buyer at the closing.

45.    In the event, however, that the Debtors emerge from these chapter 11 cases (the "Emergence Date") prior to the closing of the Sale, then the Pre-Petition Contracts

would be assumed pursuant to the Debtors' Plan. See Plan § 8.1. Under such a scenario, the

Selling Debtor Entities would still seek to assign the Pre-Petition Contracts under the Sale

Approval Order. The Debtors would be obligated to send two sets of cure notices to parties to

the Pre-Petition Contracts: (a) the Cure Notice, as discussed above, and (b) a cure notice sent in

connection with the Plan (the "Plan Cure Notice"). The Debtors would serve the Plan Cure

Notice in a time and manner specified under the Plan. In addition to the Cure Amount described

above, the Cure Notice would also advise the parties that the Cure Amount will be paid in cash

as soon as practicable after closing. The Plan Cure Notice, on the other hand, would allow the

counterparties to affirmatively elect to receive cash as payment of the Cure Amount or to receive

plan currency in satisfaction of the Cure Amount as contemplated under the Plan (the "Plan Cure

Notice Election"). If the closing of the Sale occurs before the Emergence Date, then the Cure

Amount would be paid in cash. If the closing occurs after the Emergence Date, then the Plan

Cure Notice Election would control and the Cure Notice would become moot.

46.        In addition, at least 20 days prior to the Sale Hearing, the Selling

Debtor Entities propose to serve on each non-Debtor party to an Assumed and Assigned Contract

a notice substantially in the form attached hereto as Exhibit H (the "Buyers

Assumption/Assignment Notice"). The Buyers Assumption/Assignment Notice would identify

the Buyers as the parties that would be assigned all of the Selling Debtor Entities' right, title, and

interest in the Assumed and Assigned Contracts, subject to completion of the bidding process

provided under the Bidding Procedures.[20] Non-Debtor parties to any Pre-Petition Contract

would be required to file an objection to the assumption and/or assignment of the Pre-Petition

---

[20]    The Selling Debtor Entities propose to serve the Purchaser Assumption/Assignment Notice and the Qualified
Bidder Assumption/Assignment Notice (as defined below) upon each non-Debtor counterparty to the Post-
Petition Contracts as a means of fulfilling any requirement under the applicable contract to provide notice of
assignment.

Contract within ten days of service of the Buyers Assumption/Assignment Notice, and such

parties would be required to state, with specificity, the legal and factual basis of their objection,

unless otherwise ordered by this Court.

47.     At least 20 days prior to the Sale Hearing or on the business day following

the Bid Deadline, whichever is later, the Selling Debtor Entities propose to send a notice (the

"Qualified Bidder Assumption/Assignment Notice"), substantially in the form attached hereto as

Exhibit I, to each non-Debtor party to an Assumed and Assigned Contract identifying any

Qualified Bidders as potential parties to which the Assumed and Assigned Contracts would be

assigned.  The Qualified Bidder Assumption/Assignment Notice would give the Selling Debtor

Entities the ability to address promptly any adequate assurance issues that contract parties may

have with any of the Qualified Bidders. Non-Debtor counterparties to any Pre-Petition Contract

would be required to file an objection to the assumption and/or assignment of the Pre-Petition

Contract within ten days from the service of the Qualified Bidder Assumption/Assignment

Notice, and such parties would be required to state, with specificity, the legal and factual basis of

its objection, unless otherwise ordered by this Court.

O.     Notice Of Sale Hearing

48.     Within seven days after entry of the Bidding Procedures Order (the

"Mailing Date"), the Selling Debtor Entities (or their agent) propose to serve the Motion, the

Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the

Bidding Procedures Order by first-class mail, postage prepaid, upon (i) the Office of the United

States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for

the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for

the official committee of equity security holders appointed in these chapter 11 cases, (v) counsel

for the agent under the Debtors' postpetition credit facility, (vi) all entities known to have

30

expressed an interest in a transaction with respect to the Purchased Assets during the past 12 months,[21] (vii) all entities known to have asserted any lien, claim, interest, or Encumbrance in or upon the Purchased Assets, (viii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (ix) all counter-parties to the Assumed and Assigned Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice, (xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883), as amended from time to time (collectively, the "Case Management Orders")), (xv) counsel to GM, (xvi) counsel to the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number 2195 (Athens), (xvii) all other labor unions representing the Business' hourly employees, and (xviii) any pension fund or multiemployer pension plan to which the Debtors have made contributions on account of employees of the Business..

P.    Publication Notice

49.    The Selling Debtor Entities also propose pursuant to Fed. R. Bankr. P. 2002(l) and 2002(d) that publication a notice of the Sale in a form substantially similar to the form annexed hereto as Exhibit J, in the Wall Street Journal (International Edition), the New York Times, and the Detroit Free Press by the Mailing Date or as soon as practicable thereafter,

---

[21]    All such entities would be served by electronic mail, in addition to overnight mail, to the extent the Debtors have electronic mail addresses for such parties.

be deemed proper notice to any other interested parties whose identities are unknown to the

Sellers.

Applicable Authority

Q.    Approval Of Bidding Procedures

50.    Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use

property of the estate "other than in the ordinary course of business" after notice and a hearing.

11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be

authorized if the debtor demonstrates a sound business justification for it.  See Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (business

judgment rule requires finding that good business reason exists to grant debtor's application

under section 363(b)); see also In re Delaware & Hudson Ry. Co., 124 B.R. 169, 178-79 (D. Del.

1991).

51.    The Second Circuit has held that, although the bankruptcy court sits as an

"overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . .

debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors

and the estate."  Orion Pictures Corp. v. Showtime Network, Inc. (In re Orion Pictures Corp.), 4

F.3d 1095, 1099 (2d Cir. 1993).  This Court's consideration of a debtor's section 363(b) motion is

a "summary proceeding," intended merely as a means "to efficiently review the . . . debtor's

decision[s] . . . in the course of the swift administration of the bankruptcy estate.  It is not the

time or place for prolonged discovery or a lengthy trial with disputed issues."  Id. at 1098-99.

52.    Once the debtor articulates a valid business justification, a presumption

arises that "in making a business decision the directors of a corporation acted on an informed

basis, in good faith and in the honest belief that the action taken was in the best interests of the

32

company.'"  Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re

Integrated Res.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted).  Thereafter, "[p]arties

opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the

presumption of validity."  Id.   To satisfy its burden, it is not enough for an objector simply to

raise and argue an objection. Rather, an objector "is required to produce some evidence

respecting its objections."  Lionel Corp., 722 F.2d at 1071.

53.    As a rule, the debtor's business judgment "should be approved by the court

unless it is shown to be "so manifestly unreasonable that it could not be based upon sound

business judgment, but only on bad faith, or whim or caprice."  In re Aerovox, Inc., 269 B.R. 74,

80 (Bankr. D. Mass. 2001) (citations omitted).

54.    As set forth above, the Sellers have sound business justifications for

pursuing a sale process at this time.  Although the Sellers believe that the Steering Business is

fundamentally strong, the Steering Business does not fit the Debtors' anticipated product

portfolio under their transformation plan.  Thus, the Debtors have determined that the Steering

Business's value would be maximized through its divestiture.  Moreover, delaying the sale of the

Purchased Assets may result in the erosion of the Steering Business's value.  Accordingly, there

is a sound business purpose for pursuing the sale process promptly and in accordance with the

Bidding Procedures.

55.    Moreover, a prospective purchaser of assets from a chapter 11 debtor may

be reluctant to make an offer because it knows that even if it reaches agreement with the debtor,

its offer will be subject to a higher bid by another party.  Pre-approved bidding procedures

address these concerns by assuring initial bidders that any auction procedure would be

33

reasonable.  Thus, the Selling Debtor Entities submit that the use of the Bidding Procedures also reflects sound business judgment.

R.        Approval Of The Bid Protections

56.        Bidding incentives encourage potential bidders to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.  See, e.g., In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).  Bankruptcy courts often approve bidding incentives under the business judgment rule. In re Global Crossing Ltd., 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) ("[N]o litigant has seriously argued the inapplicability of the business judgment test, and if any such argument had been made, the Court would be compelled . . . to reject it."); United States Trustee v. Bethlehem Steel Corp., (In re Bethlehem Steel Corp.), No. 02 Civ. 2854, 2003 WL 21738964, at *8 n.13 (S.D.N.Y. July 28, 2003) (court should approve agreements providing bidding incentives "unless they are unreasonable or appear more likely to chill the bidding process than to enhance it"). One court, explaining the force of the business judgment rule in this context, stated "the business judgment rule does not become inapplicable simply because a court decides a break-up fee is too large."  Integrated Resources, 147 B.R. at 660.

57.        This district has established a three-part test for determining when to permit bidding incentives.  Id. at 657-58. The three questions for a court to consider when assessing a break-up fee are: "(1) is the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation; (2) does the fee hamper, rather than encourage,

34

bidding; and (3) is the amount of the fee unreasonable relative to the proposed purchase price."

Id. at 657.

58.    Here, the Selling Debtor Entities seek authority to utilize the Bidding

Process and Bid Protections in the event that the Buyers are not ultimately the Successful Bidder

or must increase the Buyers' bid price to become the Successful Bidder.  The Bid Protections are

fair and reasonable in amount, particularly in view of the significant effort, time, and resources

invested by the Buyers and the risk to the Buyers of being used as a stalking horse.  The Break-

Up Fee is $6 million, which represents approximately 1.34% of the Transaction Value (after

taking into account the Assumed Liabilities and cash proceeds under the TFA).  The Break-Up

Fee not only constitutes a fair and reasonable percentage of a proposed value of the Sale to the

Sellers but also customary for similar transactions of this type in the bankruptcy context.  See,

e.g., In re Safety-Kleen Corp., Case No. 00-2303 (Bankr. D. Del. 2002) (approving $7 million

break-up fee, which was 15.1% of cash payment but only 2.2% of transaction value, which took

into account assumed liabilities); In re Stone & Webster, Inc., Case No. 00-02142 (Bankr. D.

Del. 2000) (approving $10 million break-up fee, which was 6.1% of cash and share payment but

only 1.8% of transaction value, which took into account assumed liabilities).  Furthermore, the

amount of the proposed Break-Up Fee is within the range of break-up fees that courts have found

to be fair and reasonable. See, e.g., In re Allegiance Telecom, Inc., Case No. 03-13057 (Bankr.

S.D.N.Y. 2004) (allowing 2.8% break-up fee and expense reimbursement provision in asset sale

agreement); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. 2004) (approving 3%

break-up fee if debtor closed superior transaction); In re Genuity Inc., Case No. 02-43558

(Bankr. S.D.N.Y. 2002) (allowing 4.13% break-up fee if court approved alternative transaction);

In re PSINet, Inc., Case No. 01-13213 (Bankr. S.D.N.Y. 2001) (permitting 4.28% break-up fee in

event that seller consummated transaction with alternative bidder); In re Teligent, Inc., Case No.

01-12974 (Bankr. S.D.N.Y. 2001) (allowing break up fee ranging from 1.3% to 4.25%

depending on value of alternative transaction).  Additionally, the Buyers have agreed that, in the

event that they would otherwise be entitled to receive both the Break-Up Fee and the Expense

Reimbursement under the Agreement, the Expense Reimbursement would be capped at $2

million, which together with the Break-Up Fee a maximum $8 million payment under the Bid

Protections.

59.    The Selling Debtor Entities submit that the Bidding Procedures and the

Bid Protections have encouraged competitive bidding because the Buyers would not have

entered into the Agreement without such provisions.  The Bidding Procedures and the Bid

Protections have thus induced a bid that otherwise would not have been made.  Finally, the mere

existence of the Bidding Procedures and Bid Protections permits the Sellers to insist that

competing bids be materially higher or otherwise better than the Agreement, which would

produce a clear benefit to the Selling Debtor Entities, their estates, and their stakeholders.

S.    Sale Of The Purchased Assets Free And
      Clear Of Liens, Claims, Encumbrances, And Interests

60.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may

sell property free and clear of any lien, claim, or interest in such property if, among other things:

(1)    applicable nonbankruptcy law permits sale of such property free and clear
       of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is sold is greater
       than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled in a legal or equitable proceeding, to
       accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

61.    Here, section 363(f) of the Bankruptcy Code permits the Selling Debtor Entities to sell the Purchased Assets free and clear of all liens, claims (including successor liability claims), and encumbrances, other than the Permitted Encumbrances.[22] See, e.g., In re Trans World Airlines, Inc., No. 01-0056, 2001 WL 1820325, at *5 (Bankr. D. Del. Mar. 27, 2001) ("Authorizing the sale [of debtor's assets] free and clear of . . .successor liability claims achieves the purpose of [Bankruptcy Code] section 363 intended by Congress."), aff'd, In re Trans World Airlines, Inc., 332 F.3d 283 (3d Cir. 2003).  This Court and other courts in the Second Circuit have approved sale approval orders authorizing the sale of assets free and clear of all interests and claims, including successor liability claims.  See In re Refco, Inc., Case No. 05-60006 (Nov. 15, 2006) (authorizing certain debtors to sell customer lists free and clear of interests and claims, including successor liability claims); In re Refco, Inc., Case No. 05-60006 (Nov. 14, 2005) (authorizing debtors to sell the regulated commodities futures merchant business free and clear of interests and claims, including successor liability claims); In re PSINet Inc., Case No. 01-13213 (Jan. 15, 2002) (authorizing debtors to sell certain shares free and clear of liens and claims, including claims otherwise arising under doctrines of successor liability). Because the Buyers are not successors to the Sellers, successor liability claims should not follow the Purchased Assets.

62.    Excluding Permitted Encumbrances, each lien, claim, or encumbrance that is not the result of an assumed liability satisfies at least one of the five conditions of section 363(f), and the Selling Debtor Entities submit that any such lien, claim, or encumbrance would

---

[22]    As a result of intense negotiations, certain liabilities will be assumed by the Buyers or the Successful Bidder, as the case may be.

be adequately protected by attachment to the net proceeds of the Sale, subject to any claims and

defenses that the Selling Debtor Entities may possess with respect thereto.  Accordingly, except

for the liens resulting from the Assumed Liabilities or the Permitted Encumbrances, the Selling

Debtor Entities request that the Purchased Assets be transferred to the Successful Bidder(s), free

and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances to

attach to the proceeds of the Sale of the Purchased Assets.

   63.  Other courts, concluding that Bankruptcy Code section 363(f) does not

empower them to convey assets free and clear of claims, have nevertheless found that

Bankruptcy Code section 105(a) provides such authority.  See Volvo White Truck Corp. v.

Chambersburg Beverage, Inc. (In re White Motor Credit Corp.), 75 B.R. 944, 948 (Bankr. N.D.

Ohio 1987) (stating that absence of specific authority to sell assets free and clear of claims poses

no impediment to such sale, as such authority is implicit in court's equitable powers when

necessary to carry out the provisions of title 11).

T.  The Buyers Are Good Faith Purchasers Pursuant To
   Section 363(m) Of The Bankruptcy Code And The Transaction
   Contemplated By The Agreement Should Carry The
   Protections Of Section 363(n) Of The Bankruptcy Code

   64.  Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b)
> or (c) of this section of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. § 363(m).  Although the Bankruptcy Code does not define "good faith," the Second

Circuit Court of Appeals in In re Gucci has held that the:

> good faith of a purchaser is shown by the integrity of his conduct during the
> course of the sale proceedings; where there is a lack of such integrity, a good
> faith finding may not be made.  A purchaser's good faith is lost by "fraud,

collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390(2d Cir. 1997) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting former Bankruptcy Rule 805, the precursor of section 363(m))); see also Evergreen Int'l Airlines Inc. v. Pan Am Corp. (In re Pan Am Corp.), No. 91 Civ. 8319, 1992 WL 154200, at *4 (S.D.N.Y. June 18, 1992); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988).

65.    Section 363(n) of the Bankruptcy Code further provides, in relevant part, that:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount.

11 U.S.C. § 363(n).

66.    The Selling Debtor Entities submit, and will present evidence at the Sale Hearing, that the Agreement reflects an intensely negotiated, arm's length transaction.  Indeed, these negotiations have continued, on and off, for approximately one year.  Moreover, to the extent that the Purchased Assets are sold to a Successful Bidder, it will be because of a well planned competitive process pursuant to the Bidding Procedures.  As a result of the foregoing, the Selling Debtor Entities request that this Court make a finding that the Purchase Price to be paid by the Buyers, along with the Assumed Liabilities and restructuring costs, coupled with the proceeds paid by GM to Delphi under the TFA, constitutes reasonably equivalent value and fair consideration under any applicable law.

67.    Throughout the negotiations, the Buyers have at all times acted in good faith.  Moreover, if the Purchased Assets are sold to a Successful Bidder, it would be because of

a well planned competitive process and intense negotiations at arm's length to be conducted at

the Auction.  The Selling Debtor Entities, therefore, request that this Court make a finding that

the Buyers or the Successful Bidder, as the case may be, have purchased the Purchased Assets

and assumed the Assumed and Assigned Contracts and Assumed Liabilities in good faith within

the meaning of section 363(m) of the Bankruptcy Code.  Because a key element of a good faith

finding is that the Buyers' successful bid is not the product of fraud or collusion between the

purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other

bidders, the Selling Debtor Entities further request that this Court make a finding that the

transactions contemplated by the Agreement are not avoidable under section 363(n) of the

Bankruptcy Code.

U.    Relief From Transfer Taxes Under Section 1146(c) Of The Bankruptcy Code

        68.    Bankruptcy Code section 1146(c) provides that "[t]he issuance, transfer, or

exchange of a security, or the making or delivery of an instrument of transfer under a plan

confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax

or similar tax."  11 U.S.C. § 1146(c).  This language has been construed to include transfers

pursuant to a sale outside of, but in furtherance of effectuating a reorganization plan.  See City of

New York v. Jacoby-Bender, Inc. (In re Jacoby-Bender, Inc.), 758 F.2d 840, 842 (2d Cir. 1985)

(holding that when transfer is necessary to consummation of plan, transfer is "under a plan"

within meaning of section 1146(c)); In re United Press Int'l, Inc., No. 91 B 13955, 1992 Bankr.

LEXIS 842, at *4 (Bankr. S.D.N.Y. May 18, 1992) (holding that section 1146(c) exemption

applied to section 363 sale in instance in which it found "the value of the Debtor's assets . . .

likely to deteriorate [during] time necessary to . . . confirm a plan"); In re Beulah Church of God

In Christ Jesus, Inc., 316 B.R. 41, 50-51 (Bankr. S.D.N.Y 2004) (stating that determination of

applicability of section 1146(c) exemption depends on whether transfers are in view of, and

integral to chapter 11 plan that is subsequently confirmed); City of New York v. Smoss Enters.

Corp. (In re Smoss Enters. Corp.), 54 B.R. 950, 951 (E.D.N.Y. 1985) (stating that section

1146(c) was designed to reach transfer of assets, on which "plan hinged and which the court had

to approve prior to the confirmation").

69.    As set forth above, as part of their transformation plan, the Selling Debtor

Entities have identified non-core product lines, including the Steering Business, that do not fit

into the Company's future strategic framework, and have planned to sell or wind down these

product lines.  Section 7.30 of the Plan contemplates the Debtors' selling assets outside the Plan,

but obtaining relief as if such divestitures were part of the Plan.  Thus, this sale process may

continue after a plan has already been filed, which would squarely satisfy Beaulah Church.  See

Beulah Church, 316 B.R. at 50-51. In light of the foregoing, the Selling Debtor Entities submit

that the Sale should be exempt under section 1146(c) of the Bankruptcy Code from any stamp,

transfer, sales, recording, or similar taxes.

V.    The Assumption And Assignment Of The Assumed And Assigned Contracts

70.    Section 365(f)(2) of the Bankruptcy Code provides that:

The trustee may assign an executory contract or unexpired lease of the
debtor only if –

(A)    the trustee assumes such contract or lease in accordance with the
provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such
contract or lease is provided, whether or not there has been a
default in such contract or lease.

11 U.S.C. § 365(f)(2).

71.    Under section 365(a) of the Bankruptcy Code a debtor, "subject to the

court's approval, may assume or reject any executory contract or unexpired lease of the debtor."

41

11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements

for assuming an unexpired lease or executory contract of a debtor.  It provides:

> (b)(1)    If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of the assumption of such contract or lease, the trustee –
>
> (A)    cures, or provides adequate assurance that the trustee will promptly
> cure, such default;
>
> (B)    compensates, or provides adequate assurance that the trustee will
> promptly compensate, a party other than the debtor to such
> contract or lease, for any actual pecuniary loss to such party
> resulting from such default; and
>
> (C)    provides adequate assurance of future performance under such
> contract or lease.

11 U.S.C. § 365(b)(1).

72.        Courts give the phrase "adequate assurance of future performance" a

"practical, pragmatic construction."  EBG Midtown S. Corp. v. Mcharen/Hart Envtl. Eng'g Corp.

(In re Sanshoe Worldwide Corp.), 139 B.R. 585, 592 (S.D.N.Y. 1992), aff'd, 993 F.2d 300 (2d

Cir. 1993) (presence of adequate assurance should be "determined under the facts of each

particular case"; see also In re Fifth Ave. Originals, 32 B.R. 648, 652 (Bankr. S.D.N.Y. 1983)

(holding that adequate assurance was furnished on two separate grounds).  Courts have

consistently held that the phrase does not require total assurances.  See In re Natco Indus., Inc.,

54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) ("[I]t does not mean absolute insurance that the debtor

will thrive and make a profit."); In re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla.

1994) (although no single solution will satisfy every case, the required assurance will fall

"considerably short of an absolute guaranty of performance").  In fact, adequate assurance has

been provided by demonstrating the Buyers' financial health and experience in managing the

type of enterprise or property assigned.  See In re Bygraph, Inc., 56 B.R. 596, 605-06 (Bankr.

S.D.N.Y. 1986) (adequate assurance of future performance existed when prospective assignee of lease from debtor had financial resources and had expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

73.    To the extent that any defaults exist under any prepetition executory contract or unexpired lease that is to be assumed and assigned in connection with the sale of the Purchased Assets or any portion thereof, the Selling Debtor Entities would cure any such default. As set forth above, since its founding in 1995, Platinum has acquired more than 75 businesses with more than $23 billion in aggregate annual revenue at the time of acquisition.  Upon Closing, it is expected that the Buyers will have the financial resources to perform under the Assumed and Assigned Contracts.  Moreover, if necessary, the Selling Debtor Entities will adduce facts at the Sale Hearing demonstrating the financial wherewithal of the Buyers or the Successful Bidder, as the case may be, their experience in the industry, and their willingness and ability to perform under the contracts to be assumed and assigned to them.

74.    The Sale Hearing therefore will provide this Court and other parties-in-interest ample opportunity to evaluate and, if necessary, challenge the ability of the Buyers or the Successful Bidder(s) to provide adequate assurance of future performance under the contracts to be assumed.  This Court therefore should have a sufficient basis to authorize the Selling Debtor Entities to assume and assign the Assumed and Assigned Contracts as set forth in the Agreement.

W.    Approval Of The Transaction Facilitation Agreement

75.    The Sellers have authority to enter the TFA, as described above, under section 363(b)(1) of the Bankruptcy Code.  As noted above, Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business

43

justification for it.  See In re Lionel Corp., 722 F.2d at 1071 (business judgment rule requires

finding that good business reason exists to grant debtor's application under section 363(b)).

76.    Once the debtor articulates a valid business justification, a presumption

arises that "in making a business decision the directors of a corporation acted on an informed

basis, in good faith and in the honest belief that the action taken was in the best interests of the

company.'" In re Integrated Res., 147 B.R. at 656.  Thereafter, "[p]arties opposing the proposed

exercise of a debtor's business judgment have the burden of rebutting the presumption of

validity." Id.   To satisfy its burden, it is not enough for an objector simply to raise and argue an

objection. Rather, an objector "is required to produce some evidence respecting its objections."

Lionel Corp., 722 F.2d at 1071.

77.    Here, the Debtors have a sound business judgment to enter into the TFA.

As set forth above, under the TFA, GM would pay to Delphi (i) $257 million ($47 million of

which is conditioned on the closing of the sale); (ii) the fees payable to Delphi's investment

banker, Rothschild, Inc., in the amount of $5 million within one business day after the Closing

Date; (iii) an expense reimbursement of up to $10 million related to "Day 2" information

technology separation costs; (iv) a one-time working capital normalization payment of $30

million within one business day of Delphi's making a related one-time working capital

normalization payment of $30 million to the Buyers, and (v) either (a) up to $20 million for the

debt transferred to the Buyers for KDAC Steering, or (b) in the event Delphi does not sell the

Buyers its interest in KDAC Steering within nine months of the closing, then GM would

reimburse Delphi $10 million provided that Delphi makes a related $10 million payment to the

Buyers under the terms of the Agreement..  Delphi would reimburse GM for these payments,

excluding $257 million in (i) above, which would not be reimbursed if the Bidding Procedures

44

results in an purchase price for the Steering Business increased sufficiently to cover such

reimbursement.

78.    Additionally, approval of the TFA is being sought in connection with the

Sale Approval Order, whereas the Debtors are seeking approval of the MRA as part of the plan

confirmation process.  If the TFA is terminated, all of the terms of the MRA that would

otherwise be amended by the TFA would be deemed to have been in full force and effect on the

effective date of the MRA, and Delphi and GM would perform their respective obligations

thereunder.

79.    In their business judgment, the Sellers concluded that the TFA offers the

most advantageous terms in facilitating the Sale of the Steering Business.  Specifically, the

additional payments by GM to the Selling Debtor Entities under the TFA provide sufficient

incentive for the Selling Debtor Entities to sell the Steering Business at this time.  Thus, the

Selling Debtor Entities submit that their entry into the TFA reflects sound business judgment.

X.    Waiver Of The Ten-Day Stays Provided By Bankruptcy Rule 6004

80.    Bankruptcy Rule 6004(g) provides: "An order authorizing the use, sale, or

lease of property other than cash collateral is stayed until the expiration of 10 days after entry of

the order, unless the court orders otherwise."

81.    Courts in this district have waived these ten-day stays upon a showing of

business need.  See In re Adelphia Commc'ns Corp., 327 B.R. 143, 175 (Bankr. S.D.N.Y. 2005)

("As I find that the required business need for a waiver has been shown, the order may provide

for a waiver of the 10-day waiting period under Fed. R. Bankr. P. 6004(g)."); In re PSINet Inc.,

268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (requiring demonstration of "a business exigency" for

waiver of ten-day stays under Bankruptcy Rules 6004(g) and 6006(d)).  In general, courts will

grant waivers when doing so is important to the Debtor's financial health.  See In re Second

45

Grand Traverse School, 100 Fed.Appx. 430, 434-35 (6th Cir. 2004) (affirming decision waiving ten-day stay because "time was of the essence"); In re Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *9 (D. Del. May 20, 2002) ("[T]he Court understands that an immediate closing is required to remedy Debtors' precarious financial and business position. Accordingly, the Court will waive the Rules 6004(g) and 6006(d), allowing the parties to close.").

82.    The Debtors expect to continue to market the Steering Business to prospective buyers immediately after the Court enters the Bidding Procedures Order.  During this time, however, Bankruptcy Rule 6004(g) would preclude the Buyers from receiving the protections afforded by the Bidding Protections.  In recognition of the time and effort expended by the Buyers in connection the Sale and to reduce the Buyers' risk that the Sellers might obtain a higher and better offer for the Steering Business during those ten days, the Buyers should receive the protections afforded by the Bid Protections.  The Debtors, therefore respectfully request that the Bidding Procedures Order include a waiver of the ten-day stay provided under Bankruptcy Rule 6004(g).

83.    Because the Debtors have demonstrated a need requiring the immediate effectiveness of the Bidding Procedures Order, this Court should exercise its authority under Bankruptcy Rule 6004(g) and waive the ten-day stay as it otherwise would apply to the Bidding Procedures Order.

Notice Of Motion

84.    Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

46

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered October 19, 2007 (Docket

No. 10661).  Specifically, the Selling Debtor Entities have provided notice of this Motion on the

Master Service List (as defined in the Supplemental Case Management Order), each party who

filed a notice of appearance or request for documents in accordance with Bankruptcy Rule 2002,

and all entities known to have expressed an interest in a transaction with respect to the Purchased

Assets during the past 14 months.  Further, after entry of the Bidding Procedures Order, notice

with respect to the Motion and Sale would be provided in accordance with the Notice Procedures

described herein.  In addition, the Debtors have complied with the Supplemental Case

Management Order with respect to the filing of this Motion and the need for expedited relief.[23]

In light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

Memorandum Of Law

85.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Selling Debtor Entities respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

be deemed satisfied.

---

[23]  The Debtors have noticed this Motion for the omnibus hearing on December 20, 2007.  In compliance with the terms of the Supplemental Case Management Order, the Debtors have consulted with counsel to the Creditors' Committee regarding the relief sought in this Motion as well as the timing of its filing.  The Debtors have been informed that the Creditors' Committee has consented to this Motion being heard on December 20, 2007.  Because this Motion is being filed on fewer than 20 days' notice, parties-in-interest will have until December 17, 2007 to file an objection to entry of the Bidding Procedures Order.

47

WHEREFORE the Debtors respectfully request that this Court enter an order (a) (i) approving the Bidding Procedures, (ii) granting the Bid Protections, (iii) approving the Notice Procedures, and (iv) setting the Sale Hearing, (b) approving (i) the Sale of the Purchased Assets free and clear of liens, claims, and encumbrances to the Buyers or to the Successful Bidder, (ii) the assumption and assignment of the Assumed and Assigned Contracts to the Buyers or the Successful Bidder, and (iii) the assumption of the Assumed Liabilities by the Buyers or the Successful Bidder, (c) approving the TFA, and (d) granting them such other and further relief as is just.

Dated:      New York, New York
            December 10, 2007

                                SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM LLP

                                By:    /s/ John Wm. Butler, Jr.
                                       John Wm. Butler, Jr. (JB 4711)
                                       John K. Lyons (JL 4951)
                                       Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606
                                (312) 407-0700

                                           - and -

                                By:    /s/ Kayalyn A. Marafioti
                                       Kayalyn A. Marafioti (KM 9632)
                                       Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036
                                (212) 735-3000

                                Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

48

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
     In re                   :    Chapter 11
                                                      :
DELPHI CORPORATION, et al.,                           :    Case No. 05-44481 (RDD)
                                                      :
             Debtors.    :    (Jointly Administered)
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P.
2002 AND 9014 (I) APPROVING BIDDING PROCEDURES,
(II) GRANTING CERTAIN BID PROTECTIONS,
(III) APPROVING FORM AND MANNER OF SALE NOTICES,
AND (IV) SETTING SALE HEARING DATE IN CONNECTION WITH
SALE OF STEERING AND HALFSHAFT BUSINESS

("STEERING BIDDING PROCEDURES ORDER")

      Upon the expedited motion, dated December 10, 2007 (the "Motion"), of

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for

orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004,

6006, and 9014 (a)(i) approving the bidding procedures set forth herein and attached

hereto as Exhibit 1 (the "Bidding Procedures"), (ii) granting certain bid protections, (iii)

approving the form and manner of sale notices, and (iv) setting a sale hearing date (the

"Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of

the Debtors' assets comprising substantially all of the assets of Delphi's steering and

halfshaft Business,[1] free and clear of liens, Claims, and Encumbrances (the "Acquired

Assets") and the Sale Securities (together with the Acquired Assets, the "Purchased

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them
in the Agreement.

Assets") to Steering Solutions Corporation and certain of its affiliates (the "Buyers"),

pursuant to the Master Sale And Purchase Agreement dated December 10, 2007 by and

between Delphi and certain of its affiliates, including certain affiliated chapter 11 Debtors

as set forth in the Agreement (the "Selling Debtor Entities")[2] and the Buyers, including

Exhibits and Schedules thereto, the Ancillary Agreements, and other related documents

(the "Agreement"), or to the Successful Bidder (as hereinafter defined) submitting a

higher or otherwise better bid pursuant to the Bidding Procedures, (ii) the assumption and

assignment of certain prepetition executory contracts and unexpired leases as defined in

the Agreement (the "Pre-Petition Contracts") and the assignment of certain postpetition

executory contracts and unexpired leases as defined in the Agreement (the "Post-Petition

Contracts" and collectively with the Pre-Petition Contracts, the "Assumed and Assigned

Contracts") to the Buyers or the Successful Bidder, and (iii) the assumption of certain

liabilities as defined in the Agreement (the "Assumed Liabilities") by the Buyers or the

Successful Bidder; and upon the record of the hearing held on December 20, 2007 (the

"Bidding Procedures Hearing"); and after due deliberation thereon, and sufficient cause

appearing therefor,

---

[2]     Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems
LLC, Delphi China LLC, Delphi Technologies, Inc., and Delphi Automotive Systems (Holding),
Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling
Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling
non-Debtor affiliates are collectively referred to as the "Sellers."

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.      The relief requested in the Motion and granted herein is in the best interests of the Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

D.      The notice of the Motion and the Bidding Procedures Hearing given by the Selling Debtor Entities constitutes due and sufficient notice thereof.

E.      The Selling Debtor Entities have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement and this order, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Pre-Petition Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to creditors, stakeholders, and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined below) and the assumption and assignment of the Pre-Petition Contracts to be filed with the Court and served on the non-Debtor counter-parties thereto, and (vi) set the Sale Hearing.

F.      The Break-Up Fee and the Expense Reimbursement may be

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

payable in accordance with the terms, conditions, and limitations of the Agreement, as

modified by this order (together, the "Bid Protections"), (i) if triggered, shall be deemed

an actual and necessary cost and expense of preserving the Selling Debtor Entities' estates,

within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) are of

substantial benefit to the Selling Debtor Entities' estates, (iii) are reasonable and

appropriate, including in light of the size and nature of the Sale and the efforts that have

been and will be expended by the Buyers notwithstanding that the proposed Sale is

subject to higher or better offers for the Purchased Assets, (iv) were negotiated by the

parties at arms' length and in good faith, and (v) are necessary to ensure that the Buyers

will continue to pursue the proposed acquisition of the Purchased Assets.  The Bid

Protections were a material inducement for, and condition of, the Buyers' entry into the

Agreement.  The Buyers are unwilling to commit to hold open their offer to purchase the

Purchased Assets under the terms of the Agreement unless they are assured of payment of

the Bid Protections. Thus, assurance to the Buyers of payment of the Bid Protections

promoted more competitive bidding by inducing the Buyers to hold their bid open.

Without the bid protections, other bidding would have been limited.  Further, because the

Bid Protections induced the Buyers to submit a bid that will serve as a minimum or floor

bid on which other bidders can rely, the Buyers have provided a benefit to the Selling

Debtor Entities' estates by increasing the likelihood that the price at which the Purchased

Assets are sold will reflect their true worth.  Finally, absent authorization of the Bid

Protections, the Selling Debtor Entities may lose the opportunity to obtain the highest or

otherwise best available offer for the Purchased Assets.

         G.     The Bidding Procedures are reasonable and appropriate and

4

represent the best method for maximizing the realizable value of the Purchased Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1.    The Bidding Procedures, substantially in the form as set forth on

Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth herein,

are hereby approved and shall govern all proceedings relating to the Agreement, any

subsequent bids for the Purchased Assets in these cases, and the Auction, if applicable.

2.    The Limited Response of Steering Holding, LLC (Docket No.

11480) is hereby denied.

3.    The Selling Debtor Entities may: (i) determine, in their business

judgment, which Qualified Bid is the highest or otherwise best offer, (ii) consult with the

representative of any official committee or significant constituent in connection with the

Bidding Procedures, and (iii) reject at any time before entry of an order of the Court

approving a Qualified Bid, any bid (other than the Buyers' bid) which, in the Selling

Debtor Entities' sole discretion, is (a) inadequate or insufficient, (b) not in conformity

with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary

to the best interests of the Selling Debtor Entities, their estates, and their stakeholders.

The Selling Debtor Entities are authorized (x) to terminate the Bidding Process or the

Auction at any time if they determine, in their business judgment, that the Bidding

Process will not maximize the value of the Purchased Assets to be realized by the Selling

Debtor Entities' estates and (y) to seek Bankruptcy Court approval of the Agreement with

the Buyers.

4.      Notice of the Bid Deadline and Auction as set forth herein

constitutes good and sufficient to all potential bidders for the Purchased Assets, and no

further notice shall be required if given pursuant to this order and the Bidding

Procedures.

<u>Sale Hearing</u>

5.      The Court shall hold a Sale Hearing on February 21, 2008 at 10:00

a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green, Room 610, New York, New York 10004, at

which time the Court shall consider the remainder of the Motion not approved by this

order, approve the Successful Bidder, and confirm the results of the Auction, if any.

Objections to the Motion, if any, shall be filed and served no later than 4:00 p.m.

(prevailing Eastern time) on February 14, 2008 (the "Objection Deadline").

6.      To the extent that the Selling Debtor Entities do not receive

additional Qualified Bids, the Selling Debtor Entities shall have the right, at their

election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); <u>provided</u>, <u>however</u>,

that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing,

the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs

12(a) and (d) of this order with a notice of the Earlier Sale Hearing on or before 20 days

prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale

no later than seven days prior to the Earlier Sale Hearing.

7.      The failure of any objecting person or entity to timely file and

serve its objection by the Objection Deadline shall be a bar to the assertion, at the Sale

Hearing or thereafter, of any objection to the Motion, the Sale, or the Selling Debtor

6

Entities' consummation and performance of the Agreement (including the transfer of the Purchased Assets and the Assumed and Assigned Contracts free and clear of liens, Claims, and Encumbrances), with the exception of any objection to the conduct of the Auction or the Selling Debtor Entities' selection of the Successful Bidder, which may be made at the Sale Hearing.

8.    If a non-Debtor party to any Pre-Petition Contract that is proposed to be an Assumed and Assigned Contract fails to file and serve an objection to the Cure Notice and/or the Buyer Assumption/Assignment Notice or the Qualified Bidder Assumption/Assignment Notice, as the case may be, in accordance with the instructions therein, (a) the Court will authorize the assumption and assignment of the applicable Pre-Petition Contract at the Sale Hearing and (b) the non-Debtor party to such Pre-Petition Contract shall be entitled to recover only its Cure Amounts listed in the Cure Notice and shall be barred and enjoined from asserting at the Sale Haring or otherwise that any other amounts are owing.

9.    The Sale Hearing, or any portion thereof, such as with respect to the proposed assumption and assignment of a particular executory contract, may be adjourned by the Debtors from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date, subject to the limitations set forth in Section 10.10 of the Agreement regarding the adjournment of the Sale Hearing.

7

<u>Bid Protections</u>

10.     The Bid Protections, as modified by this order, are hereby

approved.  Notwithstanding anything to the contrary in section 9.2 of the Agreement, by

agreement of the Selling Debtor Entities, the Buyers, and the official committee of

unsecured creditors: (i) the Break-Up Fee shall be reduced from $6 million to $5.5

million and (ii) if the Agreement is terminated pursuant to any provision of section 9 of

the Agreement other than section 9.1.4, the Buyers retain the right under section 9.2 of

the Agreement to seek an Expense Reimbursement in an amount up to $6 million if a

Break-Up Fee is not paid.

11.     The Selling Debtor Entities' obligation to pay the Bid Protections

pursuant to the terms of the Agreement shall survive termination of the Agreement and,

until paid in accordance with the Agreement, shall constitute a superpriority

administrative expense claim in favor of the Buyers pursuant to section 364(c)(1) of the

Bankruptcy Code with priority over any and all administrative expenses of the kind

specified in sections 503(b) or 507(b) of the Bankruptcy Code.  The Selling Debtor

Entities shall be authorized to pay the Bid Protections to the Buyers in accordance with

the terms of the Agreement without further order of the Court.

12.     The following provisions of the Agreement, as modified by this

order, regarding payments to the Buyers are approved and the Selling Debtor Entities are

authorized, but not directed, to perform thereunder as applicable:  (i) Section 9.2, the

"Break-Up Fee; Expense Reimbursement" and (ii) Article 10, the "Bidding Procedures."

13.     The Selling Debtor Entities' obligations to pay the Bid Protections

pursuant to the terms of the Agreement, as modified by this order, shall survive

8

termination of the Agreement and, until paid, shall constitute a superpriority

administrative expense claim in favor of the Buyers pursuant to section 364(c)(1) of the

Bankruptcy Code with priority over any and all administrative expenses of the kind

specified in sections 503(b) and 507(b) of the Bankruptcy Code.

Notice

14.    Notice of (i) the Motion, including the proposed Sale of the

Purchased Assets to the Buyers, (ii) the Sale Hearing, and (iii) the proposed assumption

and assignment of the Pre-Petition Contracts to the Buyers pursuant to the Agreement or

to a Successful Bidder shall be good and sufficient, and no other or further notice shall be

required, if given as follows:

(a)    Notice Of Sale Hearing.  Within seven days after entry of this
order (the "Mailing Date"), the Debtors (or their agent) shall serve the Motion, the
Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the
Bidding Procedures Order by first-class mail, postage prepaid, upon (i) the Office of the
United States Trustee for the Southern District of New York, (ii) counsel for the Buyers,
(iii) counsel for the official committee of unsecured creditors appointed in these chapter
11 cases, (iv) counsel for the official committee of equity security holders appointed in
these chapter 11 cases, (v) counsel for the agent under the Debtors' postpetition credit
facility, (vi) all entities known to have expressed an interest in a transaction with respect
to the Purchased Assets during the past 12 months, (vii) all entities known to have
asserted any lien, claim, interest, or Encumbrance in or upon the Purchased Assets, (viii)
all federal, state, and local regulatory or taxing authorities or recording offices, including
but not limited to environmental regulatory authorities, which have a reasonably known
interest in the relief requested by the Motion, (ix) all counter-parties to the Assumed and
Assigned Contracts, (x) the United States Attorney's office, (xi) the United States
Department of Justice, (xii) the Securities and Exchange Commission, (xiii) the Internal
Revenue Service, (xiv) all entities on the Master Service List (as defined by the
Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M),
9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case
Management, And Administrative Procedures (Docket No. 2883), as amended from time
to time (collectively, the "Case Management Orders")), (xv) counsel to General Motors
Corporation, (xvi) counsel to the International Union, United Automobile, Aerospace and
Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number
2195 (Athens), (xvii) all other labor unions representing the Steering Business's hourly

9

employees, and (xviii) any pension fund or multiemployer pension plan to which the Debtors have made contributions on account of employees of the Steering Business.

(b)    <u>Cure Notice</u>.  At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on each non-Debtor party to the Pre-Petition Contracts a cure notice substantially in the form attached hereto as <u>Exhibit 2</u> (the "Cure Notice").  The Cure Notice shall state the cure amount that the Selling Debtor Entities believe is necessary to assume such contract or lease pursuant to section 365 of the Bankruptcy Code (the "Cure Amount") and notify each party that such party's lease or contract will be assumed and assigned to the Buyers or a Successful Bidder (as appropriate) to be identified at the conclusion of the Auction.  In addition, such Cure Amounts shall be listed on a schedule to the Sale Approval Order.  Each non-Debtor party to the Pre-Petition Contracts shall have ten days from the date of the Cure Notice to object to the Cure Amount and must state in its objection with specificity what Cure Amount is required (with appropriate documentation in support thereof).  If no objection is timely received, the Cure Amount set forth in the Cure Notice shall be controlling, notwithstanding anything to the contrary in any the Pre-Petition Contract or any other document, and the non-Debtor party to the Pre-Petition Contract shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Pre-Petition Contract against the Selling Debtor Entities, the Buyers, or the Successful Bidder (as appropriate), or the property of any of them.

(c)    <u>Assumption/Assignment Notice For Buyers</u>.  At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on all non-Debtor parties to the Assumed and Assigned Contracts a notice (the "Buyer Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 3</u>, identifying the Buyers as the parties which will be assigned all of the Selling Debtor Entities' right, title, and interest in the Assumed and Assigned Contracts, subject to completion of the Bidding Process provided under the Bidding Procedures.  The non-Debtor party to a Pre-Petition Contract shall have ten days from the service of the Buyer Assumption/Assignment Notice to object to the proposed assumption and assignment to the Buyers and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor party to the Pre-Petition Contract shall be deemed to have consented to the assumption and assignment of the Pre-Petition Contract to the Buyers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)    <u>Assumption/Assignment Notice For A Qualified Bidder</u>.  At least 20 days prior to the Sale Hearing or on the business day following the Bid Deadline, whichever is later, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 4</u>, to be sent to each non-Debtor party to an Assumed and Assigned Contract identifying all Qualified Bidders (except the Buyers, which notice shall be governed by the Buyer Assumption/Assignment Notice set forth above).  The non-Debtor party to the Pre-Petition Contract shall have ten days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual

10

basis of its objection.  If no objection is timely received, the non-Debtor party to the Pre-
Petition Contract shall be deemed to have consented to the assumption and assignment of
the Pre-Petition Contract to the Buyers or any Qualified Bidder and shall be forever
barred from asserting any objection with regard to the assumption and assignment.

(e)    Publication Notice.  On or before the Mailing Date, or as
soon therafter as is practicable, the Debtors shall cause notice substantially in the form of
the notice attached hereto as Exhibit 5, to be published in the Wall Street Journal
(International Edition), the New York Times, and the Detroit Free Press.

15.    Notwithstanding rules 6004(h), 6006(d), 7062, or 9014 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other

Bankruptcy Rule or rule 62(a) of the Federal Rules of Civil Procedure, this order shall be

immediately effective and enforceable upon its entry and there shall be no stay of

execution of this order.

16.    To the extent that any chapter 11 plan confirmed in these cases or

any order confirming any such plan or in any other order in these cases (including any

order entered after any conversion of these cases to cases under chapter 7 of the

Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this order,

the provisions of this order shall control.  The Debtors' obligations under this order and

the portions of the Agreement pertaining to the Bid Protections shall survive confirmation

of any plan of reorganization or discharge of claims thereunder and shall be binding upon

Debtors, and the reorganized or reconstituted debtors, as the case may be, after the

effective date of the confirmed plan or plans in the Debtors' cases.

17.    This Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this order.

18.    The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the

Motion.

Dated:    New York, New York
          December 20, 2007


                                      /s/ Robert D. Drain
                                     UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT F

## DELPHI CORPORATION
## STEERING BUSINESS BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets that comprise the Steering and Halfshaft Business (the "Steering Business") of Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities").[1]  On December 10, 2007, the Sellers executed that certain Master Sale And Purchase Agreement (the "Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On December 10, 2007, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices,  And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement (the "Sale Motion").  On _____, 2007, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Steering Business (the "Bidding Procedures Order").  The Bidding Procedures Order set February 21, 2008 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement.  All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Bids, respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof.  The following overbid provisions and related Bidding Procedures are designed to compensate the Buyers for their efforts and agreements to date and to facilitate a full and fair process (the

---

[1]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi Automotive Systems (Holding) Inc., Delphi China LLC, and Delphi Technologies, Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

"Bidding Process") designed to maximize the value of the Purchased Assets for the benefit of the Selling Debtor Entities' creditors, stakeholders, and estates.  The Debtors intend to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process.  In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Steering Business (the "Assets").

## "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Buyers, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

## Free Of Any And All Claims And Interests

Except, with respect to the Buyers, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, Encumbrances, Claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Assets.

## Participation Requirements

Any person who wishes to participate in the bidding process (a "Potential Bidder") must become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Buyers must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below, unless otherwise ordered by the Bankruptcy Court or as otherwise determined by the Sellers in their discretion:

(a)    An executed confidentiality agreement in form and substance satisfactory to Delphi;

(b)    Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets and the Steering Business, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Sellers and their financial advisors; and

2    DeltaView comparison of pcdocs://chisr01a/570722/11 and pcdocs://chisr01a/570722/12. Performed on 12/20/2007.

(c)     A preliminary (non-binding) proposal regarding: (i) the purchase price range, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale if selected as a Successful Bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement will be deemed a "Qualified Bidder." Notwithstanding the foregoing, the Buyers will be deemed a Qualified Bidder for purposes of the Bidding Process. As promptly as reasonably practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time when the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to commence due diligence with respect to the Purchased Assets and the Steering Business as described below.

## Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Purchased Assets and the Steering Business. Due diligence access may include such management presentations as may be scheduled by the Sellers, access to data rooms, on site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence will not continue after the Bid Deadline. The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Sellers nor any of their Affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Purchased Assets and the Steering Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

## Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steven Daniels, Director, Mergers & Acquisitions, with copies to: (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285,

3     DeltaView comparison of pcdocs://chisr01a/570722/11 and pcdocs://chisr01a/570722/12. Performed on 12/20/2007.

Attention: John K. Lyons and Ron E. Meisler, (ii) Delphi's in-house counsel, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Attention: Deputy General Counsel – Transactional & Restructuring; (iii) Sellers' financial advisor, Rothschild, Inc., 1251 Avenue of the Americas, New York, New York 10020, Attention: William Shaw, (iv) counsel to the Creditors' Committee, ~~Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude~~Warner Stevens, L.L.P., 301 Commerce Street, Suite 1700, Forth Worth, Texas 76102, Attention: Michael D. Warner, and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received not later than 11:00 a.m. (prevailing Eastern time) by January 18, 2008 (the "Bid Deadline").  Delphi may extend the Bid Deadline once or successively, but is not obligated to do so, provided, however, for any such extension beyond February 1, 2008, Delphi shall have obtained the written consent of the Buyers, which consent shall not be unreasonably withheld.  If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the official committee of equity security holders (the "Equity Committee").  The Sellers also will provide the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (the "UAW") with notice of all Qualified Bidders and their contact information.

Qualified Bidders should note that Section 6.6 of the Agreement addresses, among other things, the terms and conditions of employment of  UAW-represented employees, and these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)      A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Purchased Assets.

(b)      An executed copy of the Agreement, together with all schedules marked (a "Marked Agreement") to show those amendments and modifications to such Agreement and schedules that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

(c)      A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Sellers in their sole discretion) payable to the order of Delphi (or such other party as the Sellers may determine) in an amount equal to $9.5 million.

(d)      Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that is satisfactory to the Sellers and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

4      DeltaView comparison of pcdocs://chisr01a/570722/11 and pcdocs://chisr01a/570722/12. Performed on 12/20/2007.

(e)      Is on terms and conditions (other than the amount of the consideration and the particular Liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Sellers than, those contained in the Agreement.

(f)      Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(g)      Proposes a transaction that the Sellers determine, in the good faith opinion of their senior management, after consultation with their financial advisors, is not materially more burdensome or conditional than the terms of the Agreement and has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the (i) Preliminary Purchase Price plus (ii) the Assumed Liabilities plus (iii) the amount of the Break-Up Fee ($5.5 million) plus (iv) the Expense Reimbursement ($2 million) plus (v) $1 million.

(h)      Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment.

(i)      Includes an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Purchased Assets in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement, and (iv) agrees that any non disclosure agreement or confidentiality agreement entered into with Delphi shall be enforceable by the Successful Bidder.

(j)      Include a commitment to consummate the purchase of the Purchased Assets immediately upon completion of all closing conditions within the Sellers' reasonable control, which may be as early as 15 days after entry of the Sale Approval Order, or in the case of any governmental approvals, 60 days after entry of such order.

(k)      Is on terms acceptable to General Motors Corporation ("GM"), as provided in any agreement between GM and Delphi which facilitates the transactions contemplated in the Agreement.

(l)      Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, the Sellers will have the right, in their sole discretion, to entertain bids for the Purchased Assets that do not conform to one or more of the requirements specified herein and may deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Buyers will be deemed Qualified Bidders, and the Agreement will be deemed a Qualified Bid, for all purposes

in connection with the Bidding Process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of the Buyers is referred to as a "Subsequent Bid."

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Buyers, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement. If Delphi receives a bid that does not conform to one or more of the requirements specified in sections (a) –(h) above, but determines that such bid is to be treated as a Qualified Bid with a higher value as defined in section (c) above, then any Qualified Bidder (including the Buyer) will have the opportunity to submit a bid at the Auction on the same basis, so long as such bid has a value of at least $1,000,000 more than the non-conforming bid. Delphi will notify the Buyer and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids no later than five days following the expiration of the Bid Deadline.

## **Bid Protection**

Recognizing the Buyers' expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Buyers. Specifically, the Selling Debtor Entities have determined that the Agreement furthers the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed. As a result, the Selling Debtor Entities have agreed that if the Buyers are not the Successful Bidder, the Selling Debtor Entities will, in certain circumstances, pay to the Buyers a Break-Up Fee and/or Expense Reimbursement. The payment of the Break-Up Fee or the Expense Reimbursement (as applicable) will be governed by the provisions of the Agreement and the Bidding Procedures Order.

## **Auction**

If the Sellers receive one or more Qualified Bids in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Purchased Assets and the Steering Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on January 28, 2008 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606 (at the Sellers' election) or such later time or other place as the Sellers notify (after obtaining the Buyers' consent, which shall not to be unreasonably withheld) all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing), in accordance with the following procedures:

(a)    Only the Sellers, the Buyers, any representative of the Creditors' Committee and the Equity Committee, any representative of the Sellers' secured lenders under their postpetition credit facility (and the legal and financial advisers to each of the foregoing), any representative of GM, any representative of the UAW, and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Buyers and Qualified Bidders will be entitled to make any subsequent Qualified Bids at

the Auction.  At the Auction, each Qualified Bidder shall confirm on the record that it has not engaged in any collusion with respect to the bidding process or the Sale.

(b)    At least three Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to participate in the Auction and at least two Business Days prior to the Auction, the Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe is the highest or otherwise best offer to GM, the UAW, and all Qualified Bidders who have informed the Sellers of their intent to participate in the Auction.

(c)    All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction and put on the record.

(d)    The Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, the Bankruptcy Code, General Order M-331 issued by the United States Bankruptcy Court for the Southern District of New York, or any order of the Bankruptcy Court entered in connection herewith.

(e)    Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $1 million  higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each Qualified Bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Buyers), the Sellers will give effect to any Break-Up Fee or Expense Reimbursement that may be payable to Buyers under the Agreement as well as any assets and/or equity interests to be retained by any Seller or any Liabilities to be assumed by the Bidder.

## Selection Of Successful Bid

The concluding date and time of the Auction shall be stated on the record.  At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)"), as well as identifying the Alternate Bidder.  No further bids shall be considered by Delphi or the Bankruptcy Court following the conclusion of the Auction.

7.    DeltaView comparison of pcdocs://chisr01a/570722/11 and pcdocs://chisr01a/570722/12. Performed on 12/20/2007.

The Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  If, after an Auction in which the Buyers:  (i) have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) are the Successful Bidder, they must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to:  (a) the amount of the Successful Bid less (b) the Break-Up Fee, Expense Reimbursement, and Deposit Amount.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Court for approval does not constitute the Sellers' acceptance of the bid.  The Sellers will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

### The Sale Hearing

The Sale Hearing will be held before the Honorable Judge Robert Drain on February 21, 2008 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing only if (a) notwithstanding such adjournment or extension, the Sellers would be able to comply with the time requirements of Section 9.1.2.D of the Agreement after consultation with the Buyers or (b) the Buyers are not the Successful Bidder at the Auction.  In all other instances, the Sale Hearing may be adjourned only upon written consent of the Buyers, which consent shall not be unreasonably withheld.  To the extent that the Selling Debtor Entities do not receive additional Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing.  If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Buyers), the Selling Debtor Entities will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to the Buyers following entry of the Sale Order.  If the Sellers do receive additional Qualified Bids, then, at the Sale Hearing, the Selling Debtor Entities will seek approval of the Successful Bid(s), and, at the Sellers' election, one or more next highest or best Qualified Bid(s) (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  The Selling Debtor Entities' presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Sellers' acceptance of either or any such bid(s), which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either the Sellers or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Sellers will be authorized,

but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

## Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the Closing of the Sale (the "Return Date").  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Sellers will not have any obligation to return the Good Faith Deposit, and such Good Faith Deposit will irrevocably become property of the Sellers in full and final satisfaction of any and all Liabilities of the defaulting Successful Bidder to the Sellers with respect to the Sale.  On the Return Date, the Sellers will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

## Reservations Of Rights

The Sellers, after consultation with the agents for their secured lenders and the Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject, at any time any bid (other than the Buyers' bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in their sole discretion.

Document comparison done by DeltaView on Thursday, December 20, 2007 8:30:56 AM

| Input: | |
|---|---|
| Document 1 | pcdocs://chisr01a/570722/11 |
| Document 2 | pcdocs://chisr01a/570722/12 |
| Rendering set | Option 3a strikethrough double score no moves |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| <Moved from> | |
| >Moved to< | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 1 |
| Deletions | 1 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 2 |

# EXHIBIT G

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                           Debtor.        :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the **Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Steering And Halfshaft Business** (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on _____, ____, Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities") have entered into a Master Sale And Purchase Agreement (the "Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers") for the purchase of substantially all of the Debtors' assets (the "Purchased Assects") primarily used in the steering and halfshaft business of Delphi. Capitalized terms used but not otherwise defined in this notice have the meanings ascribed to them in the Bidding Procedures Order.

        2.      All interested parties are invited to make an offer to purchase the Purchased Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures") by **11:00 a.m.** (prevailing Eastern time) on **January 18, 2008**.  Pursuant to the Bidding Procedures, the Sellers may conduct an auction for the Purchased Assets (the "Auction") beginning at **10:00 a.m.** (prevailing Eastern time) on **January 28, 2008** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606.

        3.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting the undersigned counsel to the Sellers or by accessing Delphi's Legal Information Website, www.delphidocket.com.

4.       A hearing to approve the Sale of the Purchased Assets to the highest and best bidder will be held on **February 21, 2008** at 10:00 a.m. (prevailing Eastern time) at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, before the Honorable Robert D. Drain, United States Bankruptcy Judge.  The hearing on the Sale may be adjourned without notice other than an adjournment in open court.

5.       Objections, if any, to the proposed Sale must be filed and served in accordance with the Bidding Procedures Order and **actually received** no later than **4:00 p.m.** (prevailing Eastern time) on **February 14, 2008**.

6.       To the extent that the Selling Debtor Entities do not receive additional Qualified Bids (as defined in the Bidding Procedures Order), the Selling Debtor Entities shall have the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing.

7.       This notice is qualified in its entirety by the Bidding Procedures Order.


Dated: _____
       New York, New York

                                    BY ORDER OF THE COURT

                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 4951)
                                    Ron E. Meisler (RM 3026)
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                        & FLOM LLP
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois  60606
                                    (312) 407-0700

                                        - and -

                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                                    SKADDEN, ARPS, SLATE, MEAGHER
                                        & FLOM LLP
                                    Four Times Square
                                    New York, New York 10036
                                    (212) 735-3000

                                    Attorneys for Delphi Corporation, et al.,
                                        Debtors and Debtors-in-Possession

2

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler


    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession


Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698


Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
         In re                                :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                             Debtor.          :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF CURE AMOUNT WITH RESPECT TO EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO BE ASSUMED AND ASSIGNED
IN CONNECTION WITH SALE OF STEERING AND HALFSHAFT BUSINESS

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections,

(III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In

Connection With Sale Of Steering And Halfshaft Business (the "Bidding Procedures Order")

entered by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") on _____, Delphi Corporation ("Delphi") and certain of its

affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] have entered into a Master Sale And Purchase Agreement

("Agreement") with Steering Solutions Corporation  and certain of its affiliates (the

"Buyers") for the sale of substantially all of the assets primarily used in the steering and

halfshaft Business of Delphi.  The Selling Debtor Entities hereby provide notice (the

"Notice") of their intent to assume and assign the prepetition executory contracts or unexpired

leases (the "Pre-Petition Contracts") listed on Exhibit 1 hereto to the Buyers or the Successful

Bidder, as the case may be.  Capitalized terms used but not otherwise defined in this notice

have the meanings ascribed to them in the Bidding Procedures Order or the Agreement.

2.       On the date of the closing of the transactions contemplated by the

Agreement (the "Closing Date"), or as soon thereafter as is reasonably practicable, the Selling

Debtor Entities will pay the amount the Selling Debtor Entities' records reflect is owing for

prepetition arrearages, if any, as set forth on Exhibit 1 hereto (the "Cure Amount").  The

Selling Debtor Entities' records reflect that all postpetition amounts owing under the Pre-

Petition Contracts have been paid and will continue to be paid until the assumption and

assignment of the Pre-Petition Contracts and that, other than the Cure Amount, there are no

other defaults under the Pre-Petition Contracts.

3.       Objections, if any, to the proposed Cure Amount must (a) be in

writing, (b) state with specificity the cure asserted to be required, (c) include appropriate

---

[1]        Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC,
Delphi Technologies, Inc., Delphi China LLC, and Delphi Automotive Systems (Holding), Inc.
Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities
listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor
affiliates are collectively referred to as the "Sellers."

2

documentation thereof, (d) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under

11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and

Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case

Management, and Administrative Procedures, entered October 19, 2007 (Docket No. 10661),

(e) be filed with the Bankruptcy Court in accordance with General Order M-242 (as

amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (f) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, and (g) be served in hard-copy form so that they are actually received within ten

days of service of this Notice by (i) Delphi Automotive Systems LLC, 5725 Delphi Drive,

Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: Deputy General Counsel, Transactional & Restructuring), (iii)

counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Ron E. Meisler, and Brian

M. Fern), (iv) counsel for the agent under the postpetition credit facility, Davis Polk &

Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and

Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham &

Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg

and Mark A. Broude), (vi) counsel for the official committee of equity security holders,

Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York

10004 (Att'n: Bonnie Steingart), (vii) counsel for the Buyers, Kirkland & Ellis LLP, 777

South Figueroa Street, Los Angeles, California 90017 (Att'n: Richard L. Wynne), and (viii)

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard).

4.       If an objection to the Cure Amount is timely filed and received, a

hearing with respect to the objection will be held before the Honorable Robert D. Drain,

United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of

New York, One Bowling Green, Room 610, New York, New York 10004, at such date and

time as the Court may schedule.  A hearing regarding the Cure Amount, if any, may at the

sole discretion of the Selling Debtor Entities take place after the Closing Date.

5.       If no objection is timely received, the Cure Amount set forth in

Exhibit 1 hereto will be controlling, notwithstanding anything to the contrary in any Pre-

Petition Contract or any other document, and the non-Debtor party to the Pre-Petition

Contract will be deemed to have consented to the Cure Amount and will be forever barred

from asserting any other claims respecting such Pre-Petition Contract against the Selling

Debtor Entities, the Buyers, or the Successful Bidder (as appropriate), or the property of any

of them.  The failure of any objecting person or entity to timely file its objection will be a bar

to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the

Sale, or the Selling Debtor Entities' consummation of and performance under the Agreement

(including the transfer of the Purchased Assets and the Pre-Petition Contracts free and clear

of all Claims and Interests), if authorized by the Court.

6.       In the event, however, that the Selling Debtor Entities emerge from

these chapter 11 cases (the "Emergence Date") prior to the Closing Date, then the Selling

4

Debtor entities will assume the Pre-Petition Contracts pursuant to the Debtors' plan of reorganization. The Debtors will serve a cure notice in connection with contracts being assumed under their plan of reorganization (the "Plan Cure Notice"). The Debtors will serve the Plan Cure Notice in a time and manner specified under their proposed plan of reorganization. The Plan Cure Notice will allow the counterparties to the Pre-Petition Contracts affirmatively to elect to receive a cash payment of the Cure Amount or to receive plan currency in satisfaction of the Cure Amount as contemplated under the Debtors' proposed plan (the "Plan Cure Election Notice"). If the closing of the Sale occurs before the Emergence Date, then the Cure Amount will be paid in cash at the closing of the Sale or as soon thereafter as practicable. If the closing of the Sale occurs after the Emergence Date, then the payment option selected under the Plan Cure Election Notice will control.

7.    Prior to the date of the Closing Date, the Selling Debtor Entities may amend their decision with respect to the assumption and assignment of any Pre-Petition Contract and provide a new notice amending the information provided in this notice.

Dated:  New York, New York
_____, 2007

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:_____
 John Wm. Butler, Jr. (JB 4711)
 John K. Lyons (JL 4951)
 Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:_____
 Kayalyn A. Marafioti (KM 9632)
 Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

# EXHIBIT I

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :
     In re                       :    Chapter 11
                            :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                            :
               Debtor.    :    (Jointly Administered)
                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE  TO BUYERS IN CONNECTION
WITH SALE OF STEERING AND HALFSHAFT BUSINESS

PLEASE TAKE NOTICE THAT:

          1.      Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections,

(III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In

Connection With Sale Of Steering And Halfshaft Business (the "Bidding Procedures Order")

entered by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") on _____, 2007, Delphi Corporation ("Delphi") and certain of its

affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[1] have entered into a Master Sale And Purchase Agreement (the

"Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers")

for the purchase of substantially all of the assets primarily used in the steering and halfshaft

business of Delphi (the "Steering Business").

        2.      Pursuant to the terms of the Agreement and subject to completion of a

competitive bidding process described in the Bidding Procedures Order and the attachments

thereto, the Selling Debtor Entities will seek to assume and assign the prepetition contracts

(the "Pre-Petition Contracts") and assign the postpetition contracts (the "Post-Petition

Contracts") listed on Exhibit 1 hereto to the Buyers at the hearing to be held at 10:00 a.m.

(prevailing Eastern time) on February 21, 2008 (the "Sale Hearing") before the Honorable

Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York

10004.

        3.      To the extent that the Selling Debtor Entities do not receive additional

Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an

earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling

Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall

serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding

---

[1]      Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC,
Delphi Technologies, Inc., Delphi China LLC, and Delphi Automotive Systems (Holdings), Inc.
Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities
listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor
affiliates are collectively referred to as the "Sellers."

Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the

Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than

seven days prior to the Earlier Sale Hearing.

4.       Objections, if any, to the assumption and assignment of a Pre-Petition

Contract must (a) be in writing, (b) state with specificity the reasons for such objection, (c)

conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the

Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) and

105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (I) Omnibus Hearing

Dates, (II) Certain Notice, Case Management, and Administrative Procedures, entered March

20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m),

9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case

Management, and Administrative Procedures, entered October 19, 2007 (Docket No. 10661)

(together with the Supplemental Case Management Order, the "Case Management Orders"),

(d) be filed with the Bankruptcy Court in accordance with General Order M-242 (as

amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (e) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 610, New York, New

York 10004, and (f) be served in hard-copy form so that it is actually received within ten days

after the date of this notice by (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy,

Michigan 48098 (Att'n: Deputy General Counsel, Transactional & Restructuring), (iii)

counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Ron E. Meisler, and Brian

M. Fern), (iv) counsel for the agent under the postpetition credit facility, Davis Polk &

Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and

Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham &

Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg

and Mark A. Broude), (vii) counsel for the official committee of equity security holders,

Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York

10004 (Att'n: Bonnie Steingart), (viii) counsel for the Buyers, Kirkland & Ellis LLP, 777

South Figueroa Street, Los Angeles, California 90017 (Att'n: Richard L. Wynne), and (ix) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard).

   5.  If an objection to the assumption and assignment of a Pre-Petition

Contract is timely filed and received, a hearing with respect to the objection will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, at the Sale Hearing or such date and time as the Court may

schedule.  If no objection is timely received, the non-Debtor party to the Pre-Petition Contract

will be deemed to have consented to the assumption and assignment of the Pre-Petition

Contract to the Buyers and will be forever barred from asserting any other claims, including,

but not limited to, the propriety or effectiveness of the assumption and assignment of the Pre-

Petition Contract, against the Selling Debtor Entities or the Buyers, or the property of either

of them.

   6.  Pursuant to 11 U.S.C. § 365, there is adequate assurance of future

performance that the Cure Amount set forth in the Cure Notice will be paid in accordance

with the terms of the Sale Approval Order.  Further, there is adequate assurance of the

Buyers' future performance under the executory contract or unexpired lease to be assumed

and assigned because of the significant resources of the Buyers.

       7.      In the event that the Selling Debtor Entities emerge from these chapter 11

cases prior to the closing of the Sale, then the Pre-Petition Contracts listed on <u>Exhibit 1</u> would

not be assumed under the Sale Approval Order.  Instead, the Pre-Petition Contracts listed on

<u>Exhibit 1</u> would be assumed pursuant to the Debtors' plan of reorganization (the "Plan"), and any

cure amounts would be paid in accordance with the confirmed Plan.  Even if the Pre-Petition

Contracts listed on <u>Exhibit 1</u> are assumed pursuant to the Debtors' Plan, the Selling Debtor

Entities would assign such contracts to the Buyers under the terms of the order approving the

sale of the Steering Business.

       8.      Prior to the Closing Date, the Selling Debtor Entities may revise their

decision with respect to the assumption and/or assignment of any Pre-Petition Contract or

Post-Petition Contract and provide a new notice amending the information provided in this

notice.

Dated:  New York, New York
    _____, ____

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: _____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

# EXHIBIT J

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                Debtor.             :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND/OR ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO QUALIFIED BIDDERS
IN CONNECTION WITH SALE OF STEERING AND HALFHSAFT BUSINESS

PLEASE TAKE NOTICE THAT:

        1.        Pursuant to the Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P.

2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections,

(III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In

Connection With Sale Of Steering And Halfshaft Business (the "Bidding Procedures Order")

entered by the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court") on _____, 2007, Delphi Corporation ("Delphi") and certain of its

affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities")[1] have entered into a Master Sale And Purchase Agreement (the

"Agreement") with Steering Solutions Corporation and certain of its affiliates (the "Buyers")

for the purchase of substantially all of the assets (the "Purchased Assets") primarily used in

the steering and halfshaft business of Delphi (the "Steering Business").

        2.      Pursuant to the Bidding Procedures set forth in the Bidding Procedures

Order, the following parties, in addition to the Buyers, have submitted Qualified Bids for the

Purchased Assets and will participate in an Auction to be held on January 28, 2008 at the

offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New

York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606, or such later time or other

place as the Selling Debtor Entities will notify all Qualified Bidders who have submitted

Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing).

| Qualified Bidders |
| --- |
|  |
|  |

        3.      Pursuant to the terms of the Agreement (or any asset sale and purchase

agreement that the Selling Debtor Entities may enter into with the Successful Bidder), the

Selling Debtor Entities will seek to assume and assign the prepetition contracts (the "Pre-

Petition Contracts") and assign the postpetition contracts (the "Post-Petition Contracts") listed

on Exhibit 1 hereto to the Buyers or the Successful Bidder, as case may be, subject to

---

[1]    Under the Agreement, the Selling Debtor Entities include Delphi, Delphi Automotive Systems LLC, Delphi Technologies, Inc., Delphi China LLC, and Delphi Automotive Systems (Holding), Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

approval at the hearing to be held at 10:00 a.m. (prevailing Eastern time) on February 21, 2008 (the "Sale Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

4.      To the extent that the Selling Debtor Entities do not receive additional Qualified Bids, the Selling Debtor Entities shall have the right, at their election, to seek an earlier Sale Hearing (the "Earlier Sale Hearing"); provided, however, that if the Selling Debtor Entities seek approval of the Sale at the Earlier Sale Hearing, the Selling Debtors shall serve those parties receiving notice of the Sale under paragraphs 12(a) and (d) of the Bidding Procedures Order with a notice of the Earlier Sale Hearing on or before 20 days prior to the Earlier Sale Hearing and allow any such party to file an objection to the Sale no later than seven days prior to the Earlier Sale Hearing.

5.      Objections, if any, to the assumption and assignment of a Pre-Petition Contract to a Qualified Bidder, who may ultimately become the Successful Bidder, must (a) be in writing, (b) state with specificity the reasons for such objection, (c) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates, Certain Notice, Case Management, And Administrative Procedures, entered by this Court on March 20, 2006 (Docket No. 2883) and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on October 19, 2007 (Docket No. 10661), (d) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-

interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format), (e) be submitted in hard-

copy form directly to the chambers of the Honorable Robert D. Drain, United States

Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York,

One Bowling Green, Room 610, New York, New York 10004, and (f) be served in hard-copy

form so that they are actually received within ten days after the date of this notice by (i)

Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigen 48098 (Att'n: Legal

Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy

General Counsel, Transactional & Restructuring), (iii) counsel to the Debtors, Skadden, Arps,

Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John K. Lyons, Ron E. Meisler, and Brian M. Fern), (iv) counsel for the agent under

the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York,

New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official

committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York,

New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for the

official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP,

One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii) counsel

for the Purchasers, Kirkland & Ellis, LLP, 777 South Figueroa Street, Los Angeles,

California 90017 (Att'n: Richard L. Wynne), and (viii) the Office of the United States Trustee

for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New

York 10004 (Att'n: Alicia M. Leonhard).

6.      If an objection to the assumption and assignment of a Pre-Petition

Contract is timely filed and received, a hearing with respect to the objection will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York 10004, at the Sale Hearing or such other date and time as the Court

may schedule.  If no objection is timely filed and received, the non-Debtor party to the Pre-

Petition Contract will be deemed to have consented to the assumption and assignment of the

Pre-Petition Contract and will be forever barred from asserting any other claims as to such

Pre-Petition Contract, including, but not limited to, the propriety or effectiveness of the

assumption and assignment of the Pre-Petition Contract, against the Selling Debtor Entities or

the Buyers, or the property of either of them.

7.      Pursuant to 11 U.S.C. § 365, there is adequate assurance that the Cure

Amount set forth in the Cure Notice will be paid in accordance with the terms of the Sale

Approval Order.  Further, there is adequate assurance of the Qualified Bidders' future

performance under the executory contract or unexpired lease to be assumed and assigned

because of the significant resources of the Qualified Bidders.

8.      In the event that the Selling Debtor Entities emerge from these chapter 11

cases prior to the closing of the Sale, then the Pre-Petition Contracts listed on Exhibit 1 would

not be assumed under the Sale Approval Order.  Instead, the Pre-Petition Contracts listed on

Exhibit 1 would be assumed pursuant to the Debtors' plan of reorganization (the "Plan"), and any

cure amounts would be paid in accordance with the confirmed Plan.  Even if the Pre-Petition

Contracts listed on Exhibit 1 are assumed pursuant to the Debtors' Plan, the Selling Debtor

Entities would assign such contracts to the Buyers under the terms of the order approving the

sale of the Steering Business.

9.      Prior to the Closing Date, the Selling Debtor Entities may revise their

decision with respect to the assumption and/or assignment of any Pre-Petition Contract or

Post-Petition Contract and provide a new notice amending the information provided in this

notice.

5

Dated:  New York, New York
            _____, 2007

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: _____
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 4951)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:_____
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

# EXHIBIT K

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
    In re                             :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
            Debtors.             :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 (A) AUTHORIZING AND APPROVING (I) SALE OF
CERTAIN OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL OF
ASSETS OF STEERING AND HALFSHAFT BUSINESS FREE AND
CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES AND (B) AUTHORIZING
AND APPROVING TRANSACTION FACILITATION AGREEMENT

("STEERING SALE APPROVAL ORDER")

        Upon the motion, dated December 10, 2007 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11

U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving

the Bidding Procedures,[1] (ii) granting certain Bid Protections, (iii) approving the form and

manner of sale notices, and (iv) setting a sale hearing date (the "Sale Hearing"), (b) authorizing

and approving (i) the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets")

comprising substantially all the assets of the steering and halfshaft Business (the "Steering

Business"), free and clear of liens, Claims, and Encumbrances to Steering Solutions Corporation

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
    Agreement.

and certain of its affiliates (the "Buyers") pursuant to the Master Sale And Purchase Agreement

dated December 10, 2007 (a copy of which is attached hereto as <u>Exhibit A,</u> and together with all

Exhibits, Schedules, and related Ancillary Agreements, the "Agreement"), by and between

Delphi and certain of its affiliates, including certain affiliated Debtors as set forth in the

Agreement (the "Selling Debtors Entities")[2] and the Buyers, or to the party submitting the

highest or otherwise best bid (the "Successful Bidder"), (ii) the assumption and assignment of

certain prepetition executory contracts and unexpired leases as defined in the Agreement (the

"Pre-Petition Contracts") and the assignment of certain postpetition executory contracts and

unexpired leases as defined in the Agreement (the "Post-Petition Contracts" and collectively with

the Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Buyers or the

Successful Bidder, and (iii) the assumption of certain liabilities as defined in the Agreement (the

"Assumed Liabilities") by the Buyers or the Successful Bidder, and (c) authorizing and

approving the Transaction Facilitation Agreement with General Motors Corporation; and the

Court having entered an order on [•], 2007 (the "Bidding Procedures Order") (Docket No. [•])(a)

approving Bidding Procedures, (b) granting certain Bid Protections, (c) approving the form and

manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held

on February 21, 2008, at which time all interested parties were offered an opportunity to be heard

with respect to the Motion; and the Court having reviewed and considered the Motion and the

arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it

appearing that the relief requested in the Motion is in the best interests of the Selling Debtor

---

[2]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi China LLC, Delphi Technologies, Inc., and Delphi Automotive Systems (Holding) Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

Entities, their estates, creditors, stakeholders, and all other parties-in-interest; and after due

deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections

363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and

sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline and Auction, the

assumption and assignment of the Assumed and Assigned Contracts, and the Cure Amounts has

been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002,

6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the

circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the

Bid Deadline, the Auction, or the assumption and/or assignment of the Assumed and Assigned

Contracts is or shall be required.

D.    In accordance with the provisions of the Bidding Procedures Order, the

Debtors have served notice of the Cure Amounts (the "Cure Notice") upon each non-Debtor

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

3

counterparty to a Pre-Petition Contract that the Selling Debtor Entities seek to assume and assign

to the Buyers and each non-Debtor counter-party to the Post-Petition Contracts.  The service of

such Cure Notice was good, sufficient, and appropriate under the circumstances and no further

notice need be given in respect of establishing a Cure Amount for the respective Pre-Petition

Contract.  Non-Debtor counter-parties to the Pre-Petition Contracts have had a reasonable

opportunity to object to the Cure Amount and assumption and assignment of the Pre-Petition

Contracts set forth in the Cure Notice.

E.    As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, the Selling Debtor Entities have marketed the Purchased Assets and conducted the sale

and bidding process in compliance with the Bidding Procedures Order and the Auction was duly

noticed and conducted in a non-collusive, fair, and good faith manner.

F.    The Selling Debtor Entities (i) have full power and authority to execute

the Agreement and all other applicable documents contemplated thereby, and the transfer and

conveyance of the Purchased Assets by the Selling Debtor Entities has been duly and validly

authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and

authority necessary to consummate the transactions contemplated by the Agreement, and (iii)

have taken all action necessary to authorize and approve the Agreement and to consummate the

transactions contemplated thereby, and no consents or approvals, other than those expressly

provided for in the Agreement, are required for the Selling Debtor Entities to consummate such

transactions.

G.    The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purpose and justification for the Sale because, among other things, the Selling

4

Debtor Entities and their advisors diligently and in good faith analyzed all other available options

in connection with the disposition of the Purchased Assets and determined that (a) the terms and

conditions set forth in the Agreement, (b) the transfer to the Buyers of the Purchased Assets

pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair

and reasonable and together constitute the highest or otherwise best value obtainable for the

Purchased Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to, and outside of, a plan of reorganization exist because, among other things, absent

the Sale the value of the Purchased Assets will be substantially diminished.

    H.  A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors

appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security

holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest

in a transaction with respect to the Purchased Assets during the past 12 months, (vi) all entities

known to have asserted any Interests and/or Claims (as defined below) in or upon the Purchased

Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices,

including but not limited to environmental regulatory authorities, which have a reasonably

known interest in the relief requested by the Motion, including all taxing authorities having

jurisdiction over any of the Purchased Assets, (viii) all parties to the Assumed and Assigned

Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice,

(xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

5

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883), as amended from time to time (collectively, the "Case Management Orders")), (xiv)

counsel to General Motors Corporation; (xv) counsel to the International Union, United

Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699

(Saginaw) and Number 2195 (Athens); (xvi) all other labor unions representing the Business'

hourly employees; and (xvii) any pension fund or multiemployer pension plan to which the

Debtors have made contributions on account of employees of the Business.

       I.      The Buyers are not "insiders" of any of the Debtors as that term is defined

in 11 U.S.C. § 101(31).

       J.      The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Buyers without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Buyers have engaged in any

conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

       K.      The Buyers are good-faith purchasers under 11 U.S.C. § 363(m) and, as

such, are entitled to all of the protections afforded thereby.  The Buyers will be acting in good

faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Agreement at all times after the entry of this order.  In particular, (i) the Buyers recognized that

the Debtors were free to deal with any other party interested in acquiring the Purchased Assets;

(ii) the Buyers complied with the terms of the Bidding Procedures Order; (iii) the Buyers agreed

to subject their bid to the competitive bidding procedures set forth in the Bidding Procedures

Order; (iv) the Buyers in no way induced or caused the chapter 11 filing by the Debtors; (v) all

payments to be made by the Buyers and other agreements or arrangements entered into by the

6

Buyers in connection with the Sale have been disclosed; (vi) the Buyers have not violated section

363(n) of the Bankruptcy Code by any action or inaction; (vii) no common identity of directors

or controlling stockholders exists between the Buyers and any of the Debtors; and (viii) the

negotiation and execution of the Agreement was at arms' length and in good faith.

L.    The Buyers are not a continuation of the Debtors or their respective estates

and there is no continuity of enterprise between the Buyers and the Debtors.  The Buyers are not

holding themselves out to the public as a continuation of the Debtors.  The Buyers are not

successors to the Debtors or their respective estates and the Sale does not amount to a

consolidation, merger, or de facto merger of the Buyers and the Debtors.  The transactions

contemplated by the Agreement are not being entered into fraudulently or to escape liability for

the Debtors' debts.

M.    The consideration provided by the Buyers for the Purchased Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Purchased Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

creditors and stakeholders than would be provided by any other practical available alternative,

and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code and under the laws of the United States, any state, territory, or possession thereof, or the

District of Columbia.

N.    The transfer of the Purchased Assets to the Buyers will be a legal, valid,

and effective transfer of the Purchased Assets, and in the case of the Purchased Assets of the

Selling Debtor Entities, shall vest the Buyers with all right, title, and interest of the Selling

Debtor Entities to the Purchased Assets free and clear of any and all liens, claims, interests, and

Encumbrances of any type whatsoever, whenever and however arising (whether known or

7

unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed,

recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed

or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11

cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including

claims otherwise arising under doctrines of successor liability), including, but not limited to

those (i) that purport to give to any party a right or option to effect any forfeiture, modification,

right of first refusal, or termination of the Selling Debtor Entities' or the Buyers' interest in the

Purchased Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in

connection with, or in any way relating to the operation of the Steering Business prior  to the

Closing Date, including the transfer of the Purchased Assets to the Buyers (collectively, the

"Interests and/or Claims").

O.    If the Sale of the Purchased Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this order, or if the Buyers would, or in the future could, be liable for any of the Interests and/or

Claims, the Buyers would not have entered into the Agreement and would not consummate the

Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling

Debtor Entities, their estates, their creditors, and their stakeholders.

P.    The Selling Debtor Entities may sell their interests in the Purchased Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale, pursuant to 11 U.S.C. § 363(f)(2).  Those holders of Interests and/or Claims who did object

8

fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Interests

and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to

the cash proceeds of the Sale ultimately attributable to the property against or in which they

claim an Interest or Claim with the same priority, validity, force, and effect as they attached to

such property immediately before the closing of the Sale.

Q.    The Sale must be approved and consummated promptly in order to

preserve the viability of the Steering Businesses subject to the Sale as a going concern, to

maximize the value of the Debtors' estates and to protect the interests of the customers of the

non-Debtor Sellers.  The Sale is in contemplation of, and a necessary condition precedent to, a

reorganization plan for the Debtors and, accordingly, constitutes a transfer to which section

1146(c) of the Bankruptcy Code applies.

R.    The Selling Debtor Entities have demonstrated that it is an exercise of

their sound business judgment to assume and/or assign the Assumed and Assigned Contracts as

applicable to the Buyers in connection with the Closing of the Sale, and the assumption and/or

assignment of the Assumed and Assigned Contracts is in the best interests of the Selling Debtor

Entities, their estates, their creditors, and their stakeholders.  The Assumed and Assigned

Contracts being assigned to, and the liabilities being assumed by, the Buyers are an integral part

of the Purchased Assets being purchased by the Buyers and, accordingly, such assumption and/or

assignment of the Assumed and Assigned Contracts and is reasonable and enhances the value of

the Selling Debtor Entities' estates.

S.    The Selling Debtor Entities have (i) cured, or have provided adequate

assurance of cure of, any default existing prior to the Closing of the Sale under any of the Pre-

Petition Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the Cure

9

Amounts provided on Schedule 1 hereto and (ii) provided compensation or adequate assurance

of compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Pre-Petition Contracts, within the meaning of 11 U.S.C.

§ 365(b)(1)(B).  The Buyers have provided adequate assurance of their future performance of

and under the Pre-Petition Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and

365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Pre-Petition Contracts to be assumed and

assigned under the Agreement shall be assigned and transferred to, and remain in full force and

effect for the benefit of, the Buyers notwithstanding any provision in the contracts or other

restrictions prohibiting their assignment or transfer.

T.    Approval of the Agreement and consummation of the Sale of the

Purchased Assets and assignment of the Assumed and Assigned Contracts at this time are in the

best interests of the Selling Debtor Entities, their estates, their creditors, their stakeholders, and

other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

### General Provisions

1.    The Motion is GRANTED.

### Approval Of The Agreement

2.    Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

3.    Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized,

but not directed, to perform their obligations under the Agreement and comply with the terms

thereof and consummate the Sale in accordance with and subject to the terms and conditions of

the Agreement.

4.      Each of the signatories to the Agreement is authorized, but not directed, to

take all actions necessary or appropriate to effectuate the terms of this order.

5.      The Selling Debtor Entities are authorized, but not directed, to execute and

deliver, and empowered to perform under, consummate, and implement, the Agreement, together

with all additional instruments and documents as may be reasonably necessary or desirable to

implement the Agreement, and to take all further actions as may be requested by the Buyers for

the purpose of assigning, transferring, granting, conveying, and conferring to the Buyers or

reducing to possession the Purchased Assets and the Assumed and Assigned Contracts, or as

may be necessary or appropriate to the performance of the obligations as contemplated by the

Agreement.

6.      This order and the Agreement shall be binding in all respects upon all

creditors and stakeholders (whether known or unknown) of the Debtors, the Buyers, all

successors and assigns of the Buyers and the Selling Debtor Entities, all affiliates and

subsidiaries of the Buyers and the Selling Debtor Entities, and any subsequent trustees appointed

in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code,

and the Agreement shall not be subject to rejection.  To the extent that any provision of this order

is inconsistent with the terms of the Agreement, this order shall govern.

7.      The Agreement and any related agreements, documents, or other

instruments may be modified, amended, or supplemented by the parties thereto in accordance

with the terms thereof without further order of the Court; <u>provided</u> that any such modification,

11

amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'

estates in the good faith business judgment of the Selling Debtor Entities.

<u>Sale And Transfer Of The Purchased Assets</u>

8.        Except as expressly permitted or otherwise specifically provided for in the

Agreement or this order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of

the Agreement, the Selling Debtor Entities' right, title, and interest in the Purchased Assets shall

be transferred to the Buyers free and clear of all Interests and/or Claims, with all such Interests

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they had as against the Purchased Assets immediately

before such transfer, subject to any claims and defenses the Selling Debtor Entities may possess

with respect thereto.

9.        The transfer of the Purchased Assets to the Buyers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Purchased Assets and shall vest

the Buyers with all right, title, and interest of the Selling Debtor Entities in and to the Purchased

Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.        If any person or entity which has filed financing statements, mortgages,

mechanic's liens, <u>lis pendens</u>, or other documents or agreements evidencing Interests and/or

Claims against or in the Purchased Assets shall not have delivered to the Selling Debtor Entities

prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfactions, releases of all Interests and/or Claims that

the person or entity has with respect to the Purchased Assets, or otherwise, then (i) the Selling

Debtor Entities are hereby authorized to execute and file such statements, instruments, releases,

and other documents on behalf of the person or entity with respect to the Purchased Assets and

12

(ii) the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this

order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Purchased Assets of any kind or nature

whatsoever.

        11.     This order (i) shall be effective as a determination that, upon the Closing

of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling

Debtor Entities or the Purchased Assets being sold by the Selling Debtor Entities prior to the

Closing of the Sale have been unconditionally released, discharged, and terminated (other than

any surviving obligations), and that the conveyances described herein have been effected, and (ii)

shall be binding upon and shall govern the acts of all entities including, without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of

deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register, or otherwise

record or release any documents or instruments, or who may be required to report or insure any

title or state of title in or to any of the Purchased Assets.

        12.     All persons and entities, including, but not limited to, all debt security

holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade

creditors, and other stakeholders, holding Interests and/or Claims of any kind or nature

whatsoever against or in the Selling Debtor Entities or the Purchased Assets being sold by the

Selling Debtor Entities (whether legal or equitable, secured or unsecured, matured or unmatured,

contingent or non-contingent, senior or subordinated), arising under or out of, in connection with,

or in any way relating to, the Steering Business, the Purchased Assets being sold by the Selling

13

Debtor Entities, the operation of the Steering Business by the Selling Debtor Entities prior to the

Closing of the Sale, or the transfer of the Purchased Assets to the Buyers, hereby are forever

barred, estopped, and permanently enjoined from asserting against the Buyers, their successors

or assigns, their property, or the Purchased Assets, such persons' or entities' Interests and/or

Claims.  Nothing in this order or the Agreement releases or nullifies any Liability to a

governmental agency under any environmental laws and regulations that any entity would be

subject to as owner or operator of any Purchased Assets after the date of entry of this order.

Nothing in this order or the Agreement bars, estops, or enjoins any governmental agency from

asserting or enforcing, outside the Court, any Liability described in the preceding sentence.

Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to

obtain penalties from the Buyers for days of violation of environmental laws and regulations

prior to Closing.

       13.     All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with the ability of the Selling Debtor

Entities to sell and transfer the Purchased Assets to the Buyers, in each case in accordance with

the terms of the Agreement and this order.

<u>Assumption And Assignment To The Buyers Of The Pre-Petition Contracts</u>

       14.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the

Buyers, and the Buyers' assumption on the terms set forth in the Agreement, of the Pre-Petition

Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with

respect thereto are hereby deemed satisfied.

14

15.     The Selling Debtor Entities are hereby authorized in accordance with 11 U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Buyers, effective upon the Closing of the Sale, the Assumed and Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Buyers such documents or other instruments as may be necessary to assign and transfer the Assumed and Assigned Contracts and Assumed Liabilities to the Buyers.

16.     The Pre-Petition Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyers in accordance with their respective terms, notwithstanding any provision in any such Pre-Petition Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entities shall be relieved from any further liability with respect to the Pre-Petition Contract after such assignment to and assumption of such contracts by the Buyers.

17.     All defaults or other obligations of the Selling Debtor Entities under the Pre-Petition Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities at the Closing of the Sale or as soon thereafter as practicable, or absent an agreement as to the Cure Amount between the Selling Debtor Entities and the non-Debtor party to a Pre-Petition Contract, by order of this Court, and the Buyers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-debtor party to any Pre-Petition Contract shall be deemed to have consented to the assumption and assignment of the Pre-Petition Contracts to the Buyers and shall be forever barred, estopped,

15

and permanently enjoined from asserting against the Selling Debtor Entities or the Buyers, or the property of any of them, any default, breach, claim, pecuniary loss, or condition to assignment that exists, arises, or accrues as of the date of the Closing or any purported written or oral modification to the Pre-Petition Contracts.  The failure of the Debtors or the Buyers to enforce prior to the Closing of the Sale one or more terms or conditions of any Pre-Petition Contracts shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyers' rights to enforce every term and condition of any such Pre-Petition Contracts.  There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Buyers as a result of the assumption and assignment of the Pre-Petition Contracts.

18.    Each non-Debtor party to a Pre-Petition Contract hereby is forever barred, estopped, and permanently enjoined from asserting against Sellers or the Buyers, or the property of either of them, any default, breach, claim, pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing of the Sale.

<u>Additional Provisions</u>

19.    The transactions contemplated by the Agreement, and the execution, delivery and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt from the imposition and payment of all stamp taxes, or any other similar taxes pursuant to section 1146 of the Bankruptcy Code.

20.    The consideration provided by the Buyers for the Purchased Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

16

Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

21.     Upon the Closing of the Sale, this order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Purchased Assets and the Assumed and Assigned Contracts or a bill of sale transferring good and marketable title in such Purchased Assets and the Assumed and Assigned Contracts to the Buyers pursuant to the terms of the Agreement.

22.     Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release their respective Interests and/or Claims against the Purchased Assets, if any, as such Interest and/or Claims may have been recorded or may otherwise exist.

23.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

24.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Purchased Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Purchased Assets to the Buyers upon the Closing of the Sale.

25.     All persons holding Interests and/or Claims against or in the Selling Debtor Entities or the Purchased Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Buyers, their

17

property, their successors and assigns, or the Purchased Assets with respect to any Interest or

Claim of any kind or nature whatsoever which such person or entity had, has, or may have

against or in the Selling Debtor Entities, their estates, their officers, their directors, their

shareholders, or the Purchased Assets, including, without limitation, the following actions: (i)

commencing or continuing in any manner any action or other Proceeding against the Buyers,

their successors, assets, or properties; (ii) enforcing, attaching, collecting, or recovering in any

manner any judgment, award, decree, or order against the Buyers, their successors, assets, or

properties; (ii) creating, perfecting, or enforcing any lien or other Encumbrance against the

Buyers, their successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or

recoupment of any kind against any obligation due the Buyers or their successors; (v)

commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this order or other orders of the Court, or the agreements or

actions contemplated or taken in respect thereof; (vi) asserting that the Buyers are successors of

the Selling Debtor Entities or the Business or have liability under any theory of successor

liability for any Interest and/or Claim against or in the Business or the Purchased Assets of the

Selling Debtor Entities; or (vi) revoking, terminating, or failing or refusing to renew any license,

permit, or authorization to operate any of the Purchased Assets of the Selling Debtor Entities or

conduct any of the businesses operated by the Purchased Assets of the Selling Debtor Entities.

Following the Closing of the Sale, no holder of an Interest or Claim in or against the Selling

Debtor Entities shall interfere with the Buyers' title to or use and enjoyment of the Purchased

Assets based on or related to such Interest or Claim, or any actions that the Selling Debtor

Entities may take, or have taken, in their chapter 11 cases.

18

26.     The transactions contemplated by the Agreement are undertaken by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Purchased Assets shall not affect the validity of the Sale to the Buyers, unless such authorization is duly stayed pending such appeal.  The Buyers are purchasers in good faith of the Purchased Assets, and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

27.     The consideration provided by the Buyers for the Purchased Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

28.     The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this order.

29.     The terms and provisions of the Agreement and this order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entities, their estates, their creditors, and their stakeholders, the Buyers, and their respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest or Claim against or in the Purchased Assets to be sold to the Buyers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

30.    Notwithstanding anything contained herein to the contrary, the term "Purchased Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates, such as funds that are trust funds under any applicable state lien laws.

31.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Buyers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

32.    Sellers' payment obligations to Buyers under the Agreement (including all Exhibits, Schedules, and Ancillary Agreements) shall survive termination of the Agreement and shall constitute an administrative expense of the Sellers pursuant to sections 503(b) or 507(b) of the Bankruptcy Code (except that the Sellers' obligation to pay the Break-Up Fee and Expense Reimbursement shall have the administrative claim status set forth in the Bidding Procedures Order and Section 9.2 Agreement as specified therein).

33.    To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or in any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with, or derogates from the provisions of the Agreement and this order, the provisions of this order shall control.  The Debtors' obligations under this order and Agreement (including all Exhibits, Schedules, and Ancillary Agreements) shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors and the reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed plan or plans in the Debtors' cases.

34.     The failure specifically to include or to reference any particular provision of the Agreement in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

35.     This Court retains exclusive jurisdiction to interpret, construe, enforce and implement the terms and provisions of this order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Purchased Assets to the Buyers, (ii) compel delivery of the Purchase Price or performance of other obligations owed to the Selling Debtor Entities pursuant to the Agreement, (iii) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (iv) interpret, implement, and enforce the provisions of this order, (v) protect the Buyers against any Interests and/or Claims against or in the Selling Debtor Entities or the Purchased Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (vi) determine all disputes among the Selling Debtor Entities, the Buyers, and any non-Debtor parties to any Assumed and Assigned Contracts concerning, inter alia, the Selling Debtor Entities' assumption and/or assignment of any Assumed and Assigned Contract to the Buyers under the Agreement.

36.     The Selling Debtor Entities are authorized, but not directed, to enter into and perform under the Transaction Facilitation Agreement among Delphi and General Motors Corporation, dated December 10, 2007.

37.     All material provisions of this order are nonseverable and mutually dependent.

21

38.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
_____, 2007

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT L

**EXECUTION COPY**

**MASTER SALE AND PURCHASE AGREEMENT**

**AMONG**

**DELPHI CORPORATION,**

**BUYER PARENT**

**AND**

**THE OTHER SELLERS PARTY HERETO**

**DATED AS OF**

**December __, 2007**

# TABLE OF CONTENTS

**PAGE NO**

1.   DEFINITIONS..................................................................................................1
     1.1    Certain Defined Terms........................................................................1
     1.2    Other Interpretive Provisions ............................................................20
2.   PURCHASE AND SALE.................................................................................21
     2.1    Transfers by Sellers and their Affiliates ...........................................21
     2.2    Assumption of Liabilities...................................................................25
     2.3    Retained Liabilities ............................................................................26
     2.4    Sale Company Liabilities....................................................................27
     2.5    JV Company Liabilities.......................................................................27
     2.6    Deferred Items ....................................................................................27
3.   PURCHASE PRICE; ADJUSTMENT; ALLOCATION ..............................28
     3.1    Deposit Amount...................................................................................28
     3.2    Preliminary Purchase Price; Closing Statement ...............................29
     3.3    Preparation of Closing Adjusted Net Assets Statement.....................30
     3.4    Post Closing Purchase Price Adjustment ...........................................31
4.   REPRESENTATIONS AND WARRANTIES OF SELLERS..........................32
     4.1    Organization.........................................................................................32
     4.2    Authorization; Enforceability..............................................................33
     4.3    Capital Stock of the Sale Companies and JV Companies....................33
     4.4    Historical Financial Statements. ........................................................34
     4.5    No Conflicts or Approvals ...................................................................34
     4.6    Sufficiency of Acquired Assets ...........................................................35
     4.7    Compliance with Law; Permits............................................................35
     4.8    Proceedings; Orders.............................................................................35
     4.9    Absence of Certain Changes................................................................35
     4.10   Tax Matters ..........................................................................................36
     4.11   Employee Benefits; Labor ...................................................................36
     4.12   Intellectual Property............................................................................39
     4.13   Contracts ..............................................................................................40
     4.14   Environmental Matters........................................................................41
     4.15   Insurance ..............................................................................................42
     4.16   Personal Property Assets, Inventory ...................................................42
     4.17   Real Property .......................................................................................43
     4.18   No Brokers' Fees ..................................................................................44
     4.19   Affiliate Transactions..........................................................................44
     4.20   No Other Representations or Warranties .............................................44
     4.21   Fair Disclosure ....................................................................................44
5.   REPRESENTATIONS AND WARRANTIES OF BUYERS...........................44
     5.1    Organization.........................................................................................44
     5.2    Authorization; Enforceability .............................................................45
     5.3    No Conflicts or Approvals ...................................................................45
     5.4    Proceedings...........................................................................................45
     5.5    Solvency................................................................................................45

i

| | | |
|---|---|---|
| 5.6 | Anti-Money Laundering | 46 |
| 5.7 | Investment Representations | 46 |
| 5.8 | No Inducement or Reliance; Independent Assessment | 47 |
| 5.9 | Financial Ability | 47 |
| 5.10 | Adequate Assurance of Future Performance | 47 |
| 5.11 | No Brokers' Fees | 48 |
| 5.12 | Compliance with Laws | 48 |
| 6. | COVENANTS AND AGREEMENTS | 48 |
| 6.1 | Conduct of Business between Signing and Closing | 48 |
| 6.2 | Bankruptcy Actions | 50 |
| 6.3 | Assumed Contracts; Cure Amounts | 50 |
| 6.4 | Non-Competition | 51 |
| 6.5 | Tax Matters; Cooperation; Preparation of Returns; Tax Elections | 53 |
| 6.6 | Employees; Benefit Plans; Labor Matters | 55 |
| 6.7 | Contact with Customers and Suppliers | 60 |
| 6.8 | Technical Documentation | 60 |
| 6.9 | Books and Records and Litigation Assistance From and After Closing | 61 |
| 6.10 | Corporate Names. | 62 |
| 6.11 | Information Technology; Intellectual Property Rights and Licenses. | 63 |
| 6.12 | Letters of Credit | 65 |
| 6.13 | Competition Clearance | 65 |
| 6.14 | Further Actions | 66 |
| 6.15 | Further Assurances | 67 |
| 6.16 | Shared Items Transferred to Buyers | 67 |
| 6.17 | Buyers' Financing Activities | 67 |
| 6.18 | Guarantee by Buyer Parent | 68 |
| 6.19 | Customs Duties | 68 |
| 6.20 | Nonsolicitation | 68 |
| 6.21 | Confidentiality | 68 |
| 6.22 | KDAC | 69 |
| 6.23 | No Right of Set-Off | 70 |
| 6.24 | Enterprise Contracts | 70 |
| 6.25 | Buyers' Covenant to Manufacture Products | 70 |
| 6.26 | Joint Venture | 71 |
| 6.27 | Somerton Equipment | 71 |
| 6.28 | Mexican Newco | 71 |
| 6.29 | 2007 Dividends | 71 |
| 6.30 | Commitment Letter | 72 |
| 6.31 | Athens, Alabama - Plant 22 | 72 |
| 6.32 | Transfer of Certain Sale Securities. | 72 |
| 6.33 | Doblo 262 Column Program | 72 |
| 7. | CONDITIONS TO CLOSING | 72 |
| 7.1 | Conditions to Obligations of Sellers and Buyers | 72 |
| 7.2 | Conditions to Obligations of Buyers | 73 |
| 7.3 | Conditions to Obligations of Sellers | 74 |
| 8. | CLOSING | 74 |

|       | 8.1   | Closing Time and Date | 74 |
|       | 8.2   | Ancillary Agreements | 74 |
|       | 8.3   | Sellers' Deliveries at Closing | 76 |
|       | 8.4   | Buyers' Deliveries at Closing | 77 |
|       | 8.5   | Post-Closing Deliveries | 77 |
|       | 8.6   | Post-Closing Transfer of Intellectual Property Rights | 77 |
| 9.    |       | TERMINATION | 78 |
|       | 9.1   | Termination | 78 |
|       | 9.2   | Break-Up Fee; Expense Reimbursement | 80 |
|       | 9.3   | Procedure and Effect of Termination | 80 |
| 10.   |       | BIDDING PROCEDURES | 81 |
|       | 10.1  | Delphi Initial Bankruptcy Actions | 81 |
|       | 10.2  | Qualified Bidder | 81 |
|       | 10.3  | Bid Deadline | 82 |
|       | 10.4  | Due Diligence | 83 |
|       | 10.5  | Qualified Bids | 83 |
|       | 10.6  | Subsequent Bid | 84 |
|       | 10.7  | Bid Protection | 84 |
|       | 10.8  | Auction, Bidding Increments and Bids Remaining Open | 85 |
|       | 10.9  | Acceptance of Qualified Bids | 86 |
|       | 10.10 | Sale Hearing | 86 |
|       | 10.11 | Return of Good Faith Deposit | 87 |
|       | 10.12 | Reservation of Rights | 87 |
| 11.   |       | LIABILITY, INDEMNIFICATION | 87 |
|       | 11.1  | LIMITATIONS OF LIABILITY | 87 |
|       | 11.2  | Survival | 87 |
|       | 11.3  | Indemnification | 88 |
| 12.   |       | MISCELLANEOUS | 92 |
|       | 12.1  | Fees and Expenses | 92 |
|       | 12.2  | Bulk Sales Laws | 92 |
|       | 12.3  | Payments in Dollars | 92 |
|       | 12.4  | Amendment | 93 |
|       | 12.5  | Assignment | 93 |
|       | 12.6  | No Successor Liability | 93 |
|       | 12.7  | Waiver | 93 |
|       | 12.8  | Notices | 94 |
|       | 12.9  | Entire Agreement | 95 |
|       | 12.10 | Counterparts | 95 |
|       | 12.11 | Publicity | 95 |
|       | 12.12 | Headings | 95 |
|       | 12.13 | Severability | 95 |
|       | 12.14 | Third Parties | 95 |
|       | 12.15 | Governing Law | 95 |
|       | 12.16 | Venue and Retention of Jurisdiction | 95 |
|       | 12.17 | No Right of Setoff | 96 |
|       | 12.18 | Risk of Loss | 96 |

12.19   Enforcement of Agreement..................................................................................96
12.20   Sellers' Payment Obligations.............................................................................96
12.21   Bankruptcy Court Approval................................................................................96

## MASTER SALE AND PURCHASE AGREEMENT

**THIS MASTER SALE AND PURCHASE AGREEMENT**, dated as of December __, 2007 between Delphi Corporation, a Delaware corporation ("**Delphi**") on behalf of itself and the other entities set forth on <u>Schedule 1</u>, and Steering Solutions Corporation**,** a Delaware corporation ("**Buyer Parent**"), on behalf of itself and the other buyers set forth on <u>Schedule 1.2</u>, which is to be provided by Buyer Parent to Delphi ten (10) Business Days before Closing (each a "**Buyer**," and, collectively with Buyer Parent, the "**Buyers**"):

**WHEREAS**, Delphi, through its Affiliates referred to in this Agreement, is engaged in the Business (as hereinafter defined);

**WHEREAS**, the Securities Sellers (as hereinafter defined) own, directly or indirectly, the Sale Securities (as hereinafter defined);

**WHEREAS**, the Asset Sellers (as hereinafter defined) own the Acquired Assets (as hereinafter defined);

**WHEREAS**, on October 8, 2005 (the "**Petition Date**"), the Filing Affiliates (as hereinafter defined) filed voluntary petitions for relief (the "**Bankruptcy Cases**") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq. (as then amended) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"); and

**WHEREAS**, as contemplated by Sections 363, 365 and 1146 of the Bankruptcy Code, the Securities Sellers and the Asset Sellers desire to sell to the Buyers all of their right, title and interest in and to the Purchased Assets (as hereinafter defined), and Buyers desire to make such purchase, subject to and in accordance with the terms and conditions set forth in this Agreement.

**NOW**, **THEREFORE**, in consideration of the premises and the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, and intending to be legally bound, the Parties agree:

1.    **DEFINITIONS**.

      1.1    **Certain Defined Terms**.  As used in this Agreement, the following terms have the meanings set forth below or in the Sections referred to below:

      "**Accounts Payable**" means all trade accounts payable, and other obligations to pay suppliers and third parties to the extent arising from the conduct of the Business or relating to the Acquired Assets, including all trade accounts payable set forth on the Transferable Balance Sheet to the extent not settled prior to the Closing Date.

      "**Accounts Receivable**" means all trade accounts receivable, and other rights to payment from customers and all other accounts or notes receivable from third parties and the full benefit of all security for such accounts or notes, including the trade accounts receivable set forth on the Transferable Balance Sheet to the extent not paid prior to the Closing Date.

"**Acquired Assets**" – Section 2.1.2.

"**Acquired Contracts**" means all Contracts that primarily relate to the Business to which an Asset Seller is a party, including all Material Contracts and all Assumed and Assigned Contracts, except those Contracts listed or generally described on <u>Schedule 2.1.3(O)</u>.

"**Adjusted Net Assets**" means Acquired Assets plus the assets of the Sale Companies and the JV Companies minus Assumed Liabilities and the liabilities of the Sale Companies and the JV Companies (excluding any liabilities retained by Sellers), determined in accordance with GAAP applied consistently with the preparation of the December 31, 2006 balance sheet that is part of the Historical Financial Statements. For purposes of determining Adjusted Net Assets, Cash and Assumed Debt will be excluded.

"**Administrative Assets**" of an Asset Seller or Sale Company, means books, records and instruments relating to the business, operations, condition of (financial or other), or results of operations of such Asset Seller with respect to the Business or Sale Company and other administrative assets including advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, computer files, operating data and plans, sales materials and records, purchasing materials and records, personnel records of employees, billing records, sale order files, accounting records, other financial records, and related work papers that relate solely to the Purchased Assets, budgets, pricing guidelines, ledgers, journals, deeds and title policies and, with respect to a Sale Company, taxation records, minute books, stock certificates and stock transfer ledgers; <u>provided</u>, <u>however</u>, that Administrative Assets does not include Intellectual Property or Technical Documentation.

"**Affiliate**" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person. For purposes of this definition, "control" means ownership of more than fifty percent (50%) of the shares or other equity interest and having power to elect a majority of the members of the board of directors or similar body governing the affairs of such Person.

"**Aggregate NTD/POS Revenue**" means the product of (i) any remaining NTD/POS inventory pre-sold to certain OEM customers from January 1, 2007 through the Closing and (ii) the selling price of such NTD/POS inventory.

"**Agreement**" means this Master Sale and Purchase Agreement (including the Schedules and Exhibits referred to herein, each of which is incorporated herein by reference), as amended, modified or supplemented from time to time.

"**Allocation**" – Section 3.5.1.

"**Alternate Bid(s)**" – Section 10.10.

"**Alternate Bidder(s)**" – Section 10.10.

2

"**Alternative Transaction**" means the sale, transfer, lease or other disposition, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, of any material portion of the Business or the Acquired Assets in a transaction or a series of transactions with one or more Parties other than Buyer Parent;  provided, however, that an Alternative Transaction does not include: (i) retention of the Business by Sellers under a stand-alone plan of reorganization approved by the Bankruptcy Court, or (ii) the sale, transfer, lease or other disposition, directly or indirectly, of any portion of the Business or the Acquired Assets (other than as a going concern) in connection with the closure, liquidation or winding up of the Business or any of the Sellers or Sale Companies.

"**Ancillary Agreements**" means the Transfer Agreements and other agreements referred to in Section 8.2.

"**Acquired Assets**" – Section 2.1.2.

"**After-Acquired Business**" – Section 6.4.3.A.

"**Asset Buyer(s)**" means the Buyers set forth on Schedule 1.2, which is to be provided by Buyer Parent to Delphi ten (10) Business Days before Closing, with respect to the assets set forth opposite their names.

"**Asset Seller(s)**" means the Sellers set forth on Schedule 1, with respect to the assets set forth opposite their names.

"**Assumed and Assigned Contracts**" – Section 6.3.

"**Assumed Debt**" – means (i) the Debt Obligations of the Sale Companies, including the amount of debt assumed pursuant to the Polish factoring facility and (ii) sixty (60) percent of the Debt Obligations of the JV Companies; in each case, excluding Debt Obligations listed on Schedule 6.12.

"**Assumed Environmental Liabilities**" – Section 2.2.13.

"**Assumed Liabilities**" – Section 2.2.

"**Auction**" – Section 10.8.

"**Bankruptcy Cases**" – Recitals.

"**Bankruptcy Code**" – Recitals.

"**Bankruptcy Court**" – Recitals.

"**Bankruptcy Rules**" mean the U.S. Federal Rules of Bankruptcy Procedure.

"**Benchmark Net Assets Amount**" means the amount of $859,061,000, as set forth in Schedule 3.3.1.

"**Bid Deadline**" – Section 10.3.

3

"**Bidding Procedures**" – Section 10.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures and certain provisions of this Agreement, including, but not limited to, Buyers' right, under the terms and conditions set forth hereafter, to a Break-Up Fee and/or Expense Reimbursement as set forth in Section 6.2.1.

"**Bidding Process**" – Section 10.1.

"**Break-Up Fee**" – Section 9.2.1.

"**Business**" means the design, testing, manufacture, development, marketing and sale of the Products by the Sale Companies and/or the Asset Sellers at the Manufacturing Facilities and Technical Centers and Sales Offices and other locations at which the Sale Companies and Asset Sellers conduct any such activities with respect to the Products, except for the Excluded Assets and the JV Companies.

"**Business Day**" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by law to be closed in the City of New York.

"**Buyer Employee Benefit Plans**" means Buyers' pension, savings, profit sharing, retirement, bonus, incentive, health, dental, death, accident, disability, stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, severance, vacation, cafeteria, sick leave, fringe or welfare benefits, any employment or consulting Contracts, collective bargaining agreements, "employee benefit plans" (as defined in Section 3(3) of ERISA), employee manuals, and written policies, practices or understandings relating to employment as applicable to Transferred U.S. Employees and Transferred Non-U.S. Employees.

"**Buyer Parent**" – Recitals.

"**Buyer(s)**" – Recitals.

"**Capped Cash**" means the sum of the Cash at Closing for the following Sale Companies and JV Companies, up to the amounts specified: (i) for both Delphi Saginaw Lingyun Drive Shaft Co. Ltd. and Saginaw Lingyun Drive Shaft (Wuhu) Co., Ltd., no greater than $2,000,000 in the aggregate (such amount refers to Sellers' pro-rata amount of Cash at these JV Companies); (ii) [Brazil Sale Company TBE] no greater than $1,000,000; (iii) Saginaw Steering (Suzhou) Co., Ltd. no greater than $1,500,000; and (iv) Delphi Polska Automotive Systems Sp. zoo, no greater than $7,000,000.

"**Cash**" means the sum of cash, cash equivalents and liquid investments plus all deposited but uncleared bank deposits at Closing and less all outstanding checks and electronic payments of the Business, in each case as determined by GAAP.

"**Claims**" mean all Losses, Liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses) whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

4

"**Closing**" – Section 8.1.

"**Closing Adjusted Net Assets Statement**" means the statement of Adjusted Net Assets of the Combined Business (as adjusted in accordance with this Agreement) as of 11:59 P.M. (Eastern Standard Time) on the Closing Date, which statement will be prepared and delivered in accordance with Section 3.3.

"**Closing Date**" – Section 8.1.

"**Closing Cash and Debt Statement**" – Section 3.3.1.

"**Closing NTD/POS Statement**" – Section 3.3.1.

"**Closing Statement**" – Section 3.2.2.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Collective Bargaining Agreements**" mean all collective bargaining agreements with any labor union, works council or other representatives of Transferred Employees (including local agreements, amendments and supplements, and material letters and memoranda of understanding of any kind).

"**Combined Business**" means the Business and Sellers' ownership interests in the JV Companies.

"**Commitment Letter**" – Section 6.30.

"**Committee**" – Section 10.3.

"**Competition/Investment Law**" means any Law that is designed or intended to prohibit, restrict or regulate: (i) foreign investment; or (ii) antitrust, monopolization, restraint of trade or competition.

"**Competitive Business**" – Section 6.4.1.

"**Compliance Matter**" means an event, condition, activity, practice, action or omission which gives rise to a violation of an Environmental Law at or affecting any property or facility of the Business other than the Tychy, Poland and Gliwice, Poland facilities but which excludes Environmental Contamination.

"**Confidential Information Memorandum**" means the Confidential Information Memorandum dated July 2006 (as supplemented by the Updated Summary Information dated July 2007), which describes the Business.

"**Confidentiality Agreement**" means the confidentiality agreement between Buyer Parent and Delphi relating to the Sale, dated June 29, 2006.

"**Consent**" means any consent, approval, authorization, waiver, permit, agreement, license, certificate, exemption, order, registration, declaration, filing or notice of, with or to any

Person, or the expiration or termination of the waiting period under any Competition/Investment Law, in each case required to permit the consummation of any of the transactions contemplated by this Agreement.

"**Contracts**" mean purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases, product warranty or service agreements and other binding commitments, agreements, arrangements and undertakings of any nature (whether written or oral).

"**Controlled Group**" – Section 4.11.8.

"**Copyrights**" mean: (i) all copyrights, works of authorship or copyrightable works existing anywhere (registered, published, unpublished, protected by statutory law or otherwise) and registrations, renewals, revivals, reissuances, extensions and applications for copyright registration thereof, and all rights therein provided by international treaties or conventions; (ii) moral rights (including, without limitation, rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) semiconductor chip mask work registrations and applications therefor; and (v) rights to sue or recover and retain damages and costs and attorneys' fees for present, future and past infringement of any of the foregoing.

"**Corporate Shared Services Licenses**" means licenses of Software under Delphi-wide Contracts which are not primarily used by the Business that are currently used by corporate shared services users who perform functions for the Business.

"**Corporate Trademark Rights**" means Trademark Rights used both in the Business and in other businesses conducted directly or indirectly by Delphi, none of which are primarily used or material to the Business (other than "Delphi" and any derivatives thereof).

"**Corporate Trademark Use Period**" – Section 6.10.1.

"**CPA Firm**" – Section 3.3.3.

"**CSC**" means Computer Sciences Corporation and its Affiliates.

"**Cure Amounts**" mean all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption of and/or assignment to Buyers of the Pre-Petition Contracts included within the Assumed and Assigned Contracts under the Sale Approval Order.

"**DASHI**" – Section 6.22.1.

"**Data Room**" means the data room(s) in which the documents and information related to the Business, the Acquired Assets, Sale Companies, and JV Companies were disclosed to Buyer Parent's representatives and counsels.

6

"**Day 1**" means separation of the information technology systems required to run the Business from the Sellers' carve-out systems on the Closing Date or at a mutually agreed upon post-Closing Date, in each case in accordance with the Separation Plan, which includes a "Delphi Steering Application Workbook" and "Delphi Steering Infrastructure Workbook." For each application or infrastructure component or service, one of the seven categories set forth on Schedule 6.11.8.A are used to define the agreed upon methodology to achieve Day 1 separation.

"**Day 2**" means logical and physical separation such that the information technology systems required to run the Business are operating in a stand-alone application environment, a stand alone database environment and a non-Delphi physical data center environment, including, for example, in cases where a physical move of the application may be required, such as a move from a Delphi-wide environment to a Steering dedicated environment within an HP data center or from a Delphi-owned data center environment to an environment dedicated solely to the Business; to be effected, in each case, in a manner which is reasonably acceptable to Delphi.

"**Debt Obligations**", as applied to any Person, mean obligations (i) for borrowed money, (ii) evidenced by bonds, debentures, notes, letters of credit and similar instruments, (iii) under financing or capital (as opposed to operating) leases (determined in accordance with GAAP) and other similar instruments, and (iv) all accrued interest, fees and charges in respect of any of the foregoing, and (v) all guarantees of the obligations in clauses (i) through (iv) above.

"**Deferred Items**" – Section 2.6.1.

"**Delphi**" – Recitals.

"**Delphi Statements**" – Section 3.3.1.

"**Deposit Amount**" – Section 3.1.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement referred to in Section 8.2.4, dated as of the date hereof, executed by and among Buyer Parent, Delphi and Escrow Agent concurrently with this Agreement.

"**EC Merger Regulation**" means Council Regulation (EEC) 4064/89 of the European Community, as amended.

"**EDS**" means Electronic Data Systems Corporation, EDS Information Systems, LLC and its Affiliates.

"**Effects MOU**" means a memorandum of understanding between Sellers and the UAW regarding the effects of the transactions contemplated by this Agreement upon the UAW bargaining unit members.

"**Encumbrance**" means: (i) with respect to the Sale Securities, any voting trust, shareholder agreement, proxy, preemptive right, right of first refusal, or other similar restriction; and (ii) with respect to the Purchased Assets (including the Sale Securities or any other shares of capital stock owned by Sellers, Buyers or their respective Affiliates) or any other property or asset, lien, charge, claim, pledge, security interest, conditional sale agreement or any other title

retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or a similar law relating to security interests in and over personal property).

**"Enterprise Providers"** – Section 6.24.

**"Enterprise Contracts"** – Section 6.24.

"**Environment**" means the following media (whether individually or commingled): air, water, surface water, groundwater (whether an aquifer or water below the surface of the ground), and ground (whether at the surface or below the surface) and all organisms, ecosystems, flora, and natural resources.

"**Environmental Claim**" means a written notice, claim, demand, action suit complaint or Proceeding by a Governmental Authority or a third party alleging liability or potential liability under an Environmental Law.

"**Environmental Contamination**" means the release or disposal of a Hazardous Material at, in, under, on,  about, or migrating to or from the Environment at Real Property, or, solely as to disposal locations located in the United States or in other jurisdictions in which applicable Environmental Law imposes cleanup liability in connection with the offsite disposal of Hazardous Materials,  the arrangement for disposal at such an offsite location of a Hazardous Material, which Hazardous Material was generated at a Real Property.

"**Environmental Damages**" means Losses (including reasonable expenses of investigation and attorneys' fees) arising out of any liability under, or any noncompliance with, an Environmental Law, in all cases excluding consequential damages or lost profit, and also excluding investigation expenses incurred for the purpose of making a claim for indemnification under this Agreement.

"**Environmental Law**" means all Laws or Orders applicable to the conduct and the operation of the Business and relating to pollution or the protection of the Environment or protection of human health from environmental hazards, excluding workplace safety laws (including OSHA and similar foreign laws).

"**Environmental Permits**" mean any licenses, permits, authorizations and approvals issued by any Governmental Authority and required to be obtained by the Business in respect of the Acquired Assets under Environmental Laws.

"**Equityholders' Committee**" – Section 10.3.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

"**Escrow Agent**" means the escrow agent under the Deposit Escrow Agreement.

"**Excepted Shared Intellectual Property**" means the Shared Intellectual Property listed in <u>Schedule 6.11.1</u>.

8

"**Excluded Assets**" – Section 2.1.3.

"**Excluded Products**" - Section 6.11.1.

"**Excluded Software**" means the Software identified on <u>Schedule 2.1.3.O</u>.

"**Expense Reimbursement**" – Section 9.2.2.

"**Filing Affiliates**" mean Delphi and the following Affiliates of Delphi, each of which are included in the Bankruptcy Cases and are Asset Sellers and/or Securities Sellers: Delphi Automotive Systems LLC, Delphi China LLC, Delphi Automotive Systems (Holding), Inc. and Delphi Technologies, Inc.

"**Final Order**" means an order of the Bankruptcy Court or any court with jurisdiction, or findings and conclusions relating to an order of the Bankruptcy Court or any court with jurisdiction, as to which the time to file an appeal, a motion for rehearing or reconsideration (excluding any motion under Federal Rule of Civil Procedures 60(b)) or a petition for a writ of certiorari has expired and no such appeal, motion or petition has been resolved in a manner adverse to Buyers or Buyer Parent or is pending.

"**Final Statement of Adjusted Net Assets**" – Section 3.3.3.

"**Final Statement of Cash and Debt**" **–** Section 3.3.3.

"**Final Statement of NTD/POS**" – Section 3.3.3.

"**Foreign Operations**" mean the operations of the Business other than by any of the Filing Affiliates.

"**GAAP**" means United States generally accepted accounting principles and practices as in effect from time to time, consistently applied throughout the specified period, unless otherwise noted or disclosed herein.

"**Good Faith Deposit**" – Section 10.5.3.

"**Governmental Approval**" means any Consent of, with or to any Governmental Authority.

"**Governmental Authority**" means any United States or foreign federal, state, provincial or local government or other political subdivision thereof, any entity, authority or body exercising executive, legislative, judicial, regulatory or administrative functions of any such government or political subdivision, and any supranational organization of sovereign states exercising such functions for such sovereign states.

"**Governmental Order**" means, with respect to any Person, any judgment, order, writ, injunction, decree, stipulation, agreement, determination or award entered or issued by or with any Governmental Authority and binding on such Person.

9

"**Grievances**" - Section 6.6.10.

"**Hazardous Materials**" means any element, mixture, chemical, hazardous substance, constituent, waste, pollutant, contaminant, or material including petroleum or petroleum-based or petroleum-derived, polychlorinated biphenyls, asbestos-containing materials, noxious, radioactive, flammable, corrosive or caustic compound (whether solid, liquid or gaseous), which are regulated, or can give rise to Liabilities or Losses, under an Environmental Law or an Environmental Permit.

"**Historical Financial Statements**" – Section 4.4.1.

"**HP**" – means Hewlett Packard Company and its Affiliates.

"**HSR Act**" means the Hart Scott Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

"**Inactive Employees**" – Section 6.6.5.A.

"**Indemnifiable Losses**" – Section 11.3.1.

"**Indemnifiable Sale Company Liabilities**" means Retained Product Warranty Liability, Retained Products Liability, Retained Insured Liabilities and Retained Environmental Liabilities of the Sale Companies except for Retained Environmental Liabilities of Delphi Polska.

"**Insurance Policies**" means all insurance policies relating to the operations of the Business, including any and all claims and rights thereunder and the proceeds thereof and all prepaid insurance premiums.

"**Insured Liabilities**" mean all Liabilities in the nature of general and automobile liability, including any Liability for Claims made for injury to persons and/or property (excluding Products Liability).

"**Intellectual Property**" means Patent Rights, Trademark Rights, Copyrights, Software, Trade Secrets and Know-How.

"**Inventory**" means finished goods, raw materials, work-in-process, packaging, stores, stock, office supplies, parts, packaging materials and other inventory and accessories related thereto which are held at, or are in transit from or to, the locations at which the Business is conducted or located at customers' premises on consignment, or wherever else located, which are used or held for use by Sellers or the Sale Companies in the conduct of the Business (together with all rights of Sellers against suppliers of such inventories).

"**JV Companies**" means the following joint ventures which are engaged in the manufacture, development and sale of Products: Delphi Saginaw Lingyun Drive Shaft Co. Ltd and Saginaw Lingyun Drive Shaft (Wuhu) Co., Ltd.

"**KDAC**" – Section 2.1.3.N.

"**KDAC Amount**" – means $10.0 million.

"**KDAC Options**" – Section 6.22.2.

"**KDAC Purchase Price**" – Section 6.22.2.

"**KDAC Steering Interest**" – Section 6.22.1.

"**KDAC Steering**" – Section 6.22.1.

"**KDAC Steering Sale Conditions**" – Section 6.22.1.

"**Know-How**" means proprietary technical and business knowledge and information, regardless of whether recorded and, if recorded, regardless of the media in which it is recorded, such knowledge and information including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

"**Knowledge of Buyers**" or "**Buyers' Knowledge**" (or a similar phrase) means the actual, conscious knowledge of the individuals listed on <u>Schedule 1.1.A.</u>

"**Knowledge of Sellers**" or "**Sellers' Knowledge**" (or a similar phrase) means the actual, conscious knowledge of the individuals listed on <u>Schedule 1.1.B</u> with respect to the matters specified for such individuals on <u>Schedule 1.1.B.</u>

"**Law**" means any and all applicable laws, rules, regulations, directives, decrees, treaties, statutes, provisions of any constitution and principles (including principles of the common law) of any Governmental Authority, as well as any applicable Governmental Order.

"**Leased Real Property**" – Section 4.17.1.

"**Leases**" – Section 4.17.1.

"**Liabilities**" mean any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on- or off- balance sheet or otherwise, or due or to become due, including Debt Obligations and those arising under any Law, Claim, Governmental Order, Contract or otherwise.

"**Licensed Intellectual Property**" means Sellers' rights with respect to Intellectual Property licensed or sublicensed to Sellers from a third party, and that is primarily used by the Business, including Licensed Intellectual Property and associated Contracts listed on <u>Schedule 4.13.1.</u>

"**Losses**" mean any and all claims, Liabilities, losses, damages, fines, penalties and costs (in each case including reasonable out-of-pocket expenses (including reasonable attorneys', accountants', technical consultants', engineers' and experts' fees and expenses)).

"**Management Presentations**" mean the presentations, expert meetings, site visits and question and answer sessions, provided by Delphi and Sellers (and their advisers and counsel) to Buyer Parent and the other Buyers (and their advisers and counsel), with respect to the Business, the Acquired Assets and the Sale Companies and JV Companies in view of the transactions contemplated herein.

"**Manufacturing Facilities**" means the Business' manufacturing facilities located at Saginaw, Michigan; New Castle, Indiana; Athens, Alabama; Queretaro, Mexico; Juarez, Mexico; Sabinas Hidalgo, Mexico; Strasbourg, France; Somerton, Australia; Suzhou, China; Bangalore, India; Porto Alegre, Brazil; Gliwice, Poland; and Tychy, Poland.

"**Marked Agreement**" – Section 10.5.2.

"**Material Adverse Effect**" means any change, occurrence or development that, individually or in the aggregate, has or would reasonably be expected to have a material adverse effect on the business, assets, Liabilities (except to the extent assumed or retained by Sellers' hereunder), results of operations or financial condition of the Business, taken as a whole, but excludes any effect: (i) resulting from general economic or business conditions (except to the extent such change, occurrence or development has a significantly disproportionate adverse effect on the Business); (ii) affecting companies in its industry or its markets generally (except to the extent such change, occurrence or development has a significantly disproportionate adverse affect on the Business); (iii) resulting from any changes in any Law, or in GAAP or any foreign generally accepted accounting principles; (iv) that is cured before the date of any termination of this Agreement by Buyer Parent pursuant to Section 9.1 hereof; (v) resulting from the negotiation, announcement or performance of this Agreement or the transactions contemplated hereby, including by reason of the identity of any Buyer or communication by any Buyer or its Affiliates of its plans or intentions regarding operation of the Business; (vi) resulting from any act or omission of any Seller taken with the prior written consent of any Buyer; (vii) resulting from the filing of the Bankruptcy Cases or from any action approved by the Bankruptcy Court; (viii) resulting from the regulatory status of any Buyer, or (ix) resulting from acts of war or terrorism, whether or not directed at the Business or Buyer.

"**Material Contracts**" – Section 4.13.1.

"**Modifications**" – defined within the definition of "Purchased Intellectual Property."

"**Normalized Working Capital Amount**" means $30,000,000.

"**NTD/POS**" means the Products that have been pre-sold to certain OEM customers of the Business, as described on Schedule 1.1.E.

"**NTD/POS Adjustment Amount**" means an amount equal to the Aggregate NTD/POS Revenue multiplied by the blended contribution margin rate of the Products subject to NTD/POS

12

(to be calculated post-Closing using the Product family contribution margin rates set forth on Schedule 1.1.E).

**"Non-U.S. Benefit Plan"** – Section 4.11.13.

**"Non-U.S. Employees"** means the employees (salaried and hourly) who are employed by Asset Sellers or Seller Affiliate in, and dedicated to, the Business in a country other than the United States immediately prior to the Closing and identified on Schedule 4.11.1.

**"Objection"** – Section 3.3.2.

**"OEM"** means automotive original equipment manufacturer.

**"OFAC"** – Section 5.6.

**"Option Notice"** – Section 6.4.3.B.

**"Order"** means any writ, judgment, decree, injunction or similar order of any Governmental Authority.

**"Ordinary Course of Business"** means the usual, regular and ordinary course of a business consistent with the past practice thereof (including with respect to quantity and frequency), provided that where the Sellers' past practices were modified following filing of the Bankruptcy Cases, such term means the ordinary course consistent with the custom and practice of the Sellers' from and after the Petition Date to the extent such practices were necessary to comply with the Bankruptcy Code or orders issued in the Bankruptcy Cases.

**"Organizational Document"** means, as to any Person, its certificate or articles of incorporation, its regulations or by-laws or any equivalent documents under the law of such Person's jurisdiction of incorporation or organization.

**"Other Services"** – Section 6.24.

**"Owned Intellectual Property"** means Intellectual Property in and to which Sellers hold, or have a right to hold, in whole or in part, any right, title and interest.

**"Owned Real Property"** – Section 4.17.2.

**"Party(ies)"** means the Sellers and/or Buyers.

**"Patent Rights"** mean: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including, without limitation, any invention disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention and design registrations, patents and patent applications (including provisionals, substitutions, reissues, divisions, continuations, continuations-in-part, extensions and reexaminations) and all rights therein provided by

international treaties or conventions; and (iv) rights to sue or recover and retain damages and costs and attorneys' fees for present, future and past infringement of any of the foregoing.

"**Permits**" – Section 4.7.

"**Permitted Encumbrance**" means: (i) purchase money security interests arising in the Ordinary Course of Business; (ii) security interests relating to progress payments created or arising pursuant to government contracts in the Ordinary Course of Business; (iii) security interests relating to vendor tooling arising in the Ordinary Course of Business; (iv) any Encumbrance that may be created by or with the written agreement of Buyers; (v) in relation to Real Property: (a) Encumbrances relating to any current real estate or ad valorem taxes or assessments not yet due and payable or delinquent or being contested in good faith by appropriate Proceedings and for which appropriate reserves have been established; (b) mechanic's, materialmen's, laborer's and carrier's liens and other similar liens arising by operation of law or statute in the Ordinary Course of Business for obligations which are not delinquent and which will be paid or discharged in the Ordinary Course of Business; (c) matters which an ALTA survey, or a similar survey in any other country, would disclose, provided that any such matter would not materially interfere with the Business as presently conducted; (d) rights of the public and adjoining property owners in streets and highways abutting and adjacent to the Real Property, (e) easements, covenants, restrictions and other encumbrances of public record; and (f) such other Encumbrances, the existence of which, in the aggregate, would not materially interfere with or materially affect the use of the respective underlying asset to which such Encumbrances relate as used on the Closing Date; and (vi) in the case of Sale Securities of the JV Companies, restrictions contained in the joint venture agreement or shareholders agreement or related agreements (to the extent disclosed to Buyers) affecting such Sale Securities.

"**Person**" means any individual, partnership, firm, corporation, association, trust, unincorporated organization, joint venture, limited liability company, Governmental Authority or other entity.

"**Personal Property**" means tangible personal property other than Inventory, including production machinery, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other information technology assets, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Real Property, at the place of business of a vendor or elsewhere primarily used or held for use in the conduct of the Business; provided, however, that the Personal Property does not include Intellectual Property.

"**Petition Date**" – Recitals.

"**Post-Closing Environmental Contamination**" means Environmental Contamination to the extent occurring after the Closing Date, provided that Post-Closing Environmental Contamination shall not include continued migration of any Pre-Closing Environmental Contamination within or from any property or facility of the Business after the Closing Date.

14

"**Post-Closing Compliance Matter**" means a Compliance Matter first occurring after the Closing Date.

"**Post-Petition Contracts**" mean the Acquired Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates on or after the Petition Date.

"**Potential Bidder**" – Section 10.2.

"**Preliminary Adjusted Purchase Price**" - Section 3.2.1.

"**Preliminary Purchase Price**" – Section 3.2.1.

"**Pre-Closing Environmental Contamination**" means Environmental Contamination to the extent occurring prior to the Closing Date, provided that Pre-Closing Environmental Contamination (a) includes continued migration of any Pre-Closing Environmental Contamination within or from any property or facility of the Business after the Closing Date, and (b) excludes Environmental Contamination from property not part of the Business but which has migrated to property of the Business.

"**Pre-Closing Compliance Matter**" means a Compliance Matter first occurring prior to the Closing Date.

"**Pre-Petition Contracts**" mean the Acquired Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates before the Petition Date.

"**Prior Calendar Month**" means the calendar month preceding the month in which the Closing occurs.

"**Proceeding**" means any action, claim, charge, complaint, grievance, demand, suit, proceeding, arbitration, citation, summons, subpoena, inquiry, or investigation of any nature, civil, criminal, regulatory or otherwise, in law or in equity, by or before any Governmental Authority or any arbitrator or arbitration or grievance panel.

"**Product(s)**" means the products identified on Schedule 1.1.C.

"**Products Liability**" means all Liabilities in the nature of products liability, including any Liability for Claims made for injury to persons and/or property arising from, caused by or arising out of the design, manufacture or assembly of any Product, and any Liability arising from, caused by or arising out of any defective or insufficient warnings, labeling or instructions contained on or provided in connection with any such Products.

"**Product Warranty**" means any Liability arising out of, resulting from, or relating to product warranty, product recall or product return with respect to Products sold on, before or after Closing, including all Liabilities arising from, caused by or related to any obligation to implement any replacement, field fix, retrofit, modification or recall campaign with respect to any Product that was made, designed, manufactured, assembled, installed, sold, leased or licensed by any Asset Sellers, Sale Companies, or any of their predecessors (including obligations arising in connection with Products that were made, designed, manufactured,

assembled, installed, sold, leased or licensed by Sellers or their Affiliates in the Cadiz, Spain and Livorno, Italy manufacturing facilities).

"**Purchase Price**" – Section 3.4.

"**Purchased Assets**" means the Acquired Assets and the Sale Securities.

"**Purchased Intellectual Property**" means Sellers' right, title and interest in Owned Intellectual Property (including Software) that is used primarily for the Business, including the Intellectual Property listed in Schedules 4.12.1.A, 4.12.1.B and 4.12.1.C, and customizations, interfaces, enhancements and other modifications (**"Modifications"**) to Software licensed from third parties that is used primarily for the Business.

"**Qualified Bid**" – Section 10.5.

"**Qualified Bidder**" – Section 10.2.

"**Real Property**" means the Owned Real Property and the Leased Real Property.

"**Replacement Licenses**" mean licenses that replace or substitute the Corporate Shared Services Licenses that are currently used for the benefit of the Business (as set forth on Schedule 1.1.F.

"**Requesting Party**" – Section 6.9.3.

"**Restricted Person**" – Section 6.4.3.A.

"**Retained Environmental Liabilities**" – Section 2.3.10.

"**Retained Insured Liabilities**" – Section 2.3.16.

"**Retained Liabilities**" – Section 2.3.

"**Retained Product Liability**" – Section 2.3.5.

"**Retained Product Warranty Liability**" – Section 2.3.15.

"**Return Date**" – Section 10.11.

"**Review Period**" – Section 3.3.2.

"**Sale**" means the sale, assignment and transfer of the Purchased Assets from Sellers to Buyers in accordance with this Agreement and the relevant Transfer Agreements.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court entered pursuant to Sections 363 and 365 of the Bankruptcy Code, the form and substance of which is reasonably satisfactory to Buyers, authorizing and approving, among other things, the Sale free and clear of all Encumbrances on (i) Acquired Assets sold by a Filing Affiliate, other than

Permitted Encumbrances, and (ii) Sale Securities, other than the Permitted Encumbrance included in clause (iv) of the definition of Permitted Encumbrance, as set forth in Section 6.2.1.

"**Sale Companies**" mean the Affiliates of Delphi engaged in the Business, the stock or other equity of which is being transferred to Buyer, directly or indirectly, under this Agreement, as indicated on Schedule 1 (excluding the JV Companies).

"**Sale Hearing**" – Section 10.9.

"**Sale Motion**" means the motion filed by Delphi with the Bankruptcy Court for entry of the Sale Approval Order as set forth in Section 6.2.1.

"**Sale Securities**" mean all of the outstanding shares of the Sale Companies and all of the outstanding shares of the JV Companies that are owned by Sellers, including the shares set forth on Schedule 1 to this Agreement.

"**SDN List**" – Section 5.6.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"**Securities Buyer(s)**" means the Buyers set forth on Schedule 1.2, which is to be provided by Buyer Parent to Delphi ten (10) Business Days before Closing, with respect to the Sale Securities set forth opposite their names.

"**Securities Seller(s)**" means the Sellers set forth on Schedule 1, with respect to the Sale Securities set forth opposite their names.

"**Seller U.S. CBAs**" means the nationally and locally negotiated Collective Bargaining Agreements, including any letter agreements, memorandums of understanding, supplemental agreements and all applicable employee benefit plans in effect between Sellers and the UAW applicable to the U.S. Hourly Employees immediately prior to the Closing.

"**Seller Employee Benefit Plans**" means Sellers' pension, savings, profit sharing, retirement, bonus, incentive, health, dental, death, accident, disability, stock purchase, stock option, stock appreciation, stock bonus, other equity, executive or deferred compensation, hospitalization, severance, vacation, cafeteria, sick leave, fringe or welfare benefits, any employment or consulting Contracts, "employee benefit plans" (as defined in Section 3(3) of ERISA), employee manuals, and written policies, practices or understandings relating to employment as applicable to Transferred Employees whether or not collectively bargained.

"**Seller(s)**" means Delphi and/or the relevant Asset Sellers or Securities Sellers (including Filing Affiliates and non-Filing Affiliates that are Sellers) with respect to the relevant Acquired Assets or Sale Securities, as appropriate with respect to the portion of the Business and the context in which such term is used.

"**Separation Plan**" – Section 6.11.8.

17

"**Shared Intellectual Property**" means Intellectual Property (other than Corporate Trademark Rights and Excluded Software) owned by Delphi and/or any of its Affiliates that is used in the Business and in one or more other businesses conducted directly or indirectly by Delphi and/or an Affiliate but not used primarily for the Business and includes Modifications to Software licensed from Third Parties but not used primarily for the Business.

"**Shared Licensed Intellectual Property**" means Sellers' rights with respect to Intellectual Property licensed or sublicensed to Sellers from a third party (including General Motors and Lemelson) and that is used by the Business, excluding Licensed Intellectual Property and, except in the case of Software licensed from General Motors or EDS, Software.

"**Shared Software Licenses**" means all shared licenses of Software that are currently used in the Business under Delphi-wide Contracts but which are not primarily used by the Business.

"**Software**" means computer software and programs, including source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**Steering Technology**" means the Patent Rights, Trade Secrets and Know-How initially developed primarily for use in the Products and which constitutes a critical manufacturing, design or engineering element specific to the Products as compared to comparable products manufactured by competitors of the Business.

"**Subsequent Bid**" – Section 10.6.

"**Successful Bid(s)**" – Section 10.8.6.

"**Successful Bidder(s)**" – Section 10.8.6.

"**Tax**" or "**Taxes**" means any taxes of any kind, including but not limited to those measured on, measured by or referred to as, income, alternative or add-on minimum, gross receipts, escheat, capital, capital gains, sales, use, ad valorem, franchise, profits, license, privilege, transfer, withholding, payroll, employment, social, excise, severance, stamp, occupation, premium, goods and services, value added, property, environmental or windfall profits taxes, customs duties or similar fees, assessments or charges of any kind whatsoever, together with any interest and any penalties, additions to tax or additional amounts imposed by any Governmental Authority.

"**Tax Claim**" means any Claim related to Tax or Taxes.

"**Tax Return**" means any return, report, declaration, form, election letter, statement or other information required to be filed with any Governmental Authority with respect to Taxes, including any schedule or attachment thereto or amendment thereof.

"**Taxing Authority**" means, with respect to any Tax, the Governmental Authority thereof that imposes such Tax and the agency, court or other body (if any) charged with the interpretation, administration or collection of such Tax for such Governmental Authority.

"**Technical Centers and Sales Offices**" means the technical and customer support centers located at Casa Grande, Arizona; Dearborn, Michigan; Milford, Michigan; Troy, Michigan; Juarez, Mexico; Russelheim, Germany; Torino, Italy; Paris, France; Beijing, China; Shanghai, China; Akishima, Japan; Krakow, Poland; and Seoul, Korea, including any satellite offices thereto.

"**Technical Documentation**" means all documented technical information owned by Sellers that is currently in the files of the Business or primarily used in the Business, in each case pertaining to the design, test, release, validation or manufacture of the Products.

"**Third Party Claim**" – Section 11.3.4.A.

"**Trade Secrets**" means: (i) all forms and types of financial, business, scientific, technical, economic, manufacturing and/or engineering information, including patterns, plans, compilations, specifications, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and regardless of whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and (ii) confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or un-patentable and whether or not reduced to practice); and (iii) all rights to sue or recover and retain damages, costs and attorneys' fees for present, future and past misappropriation of any of the foregoing.

"**Trademark Rights**" mean (i) trademarks, trade names, service marks, corporate names, logos and slogans; (ii) the goodwill associated with any of the foregoing; (iii) registrations and applications for registration of any of the foregoing; and (iv) all rights to sue or recover and retain damages and costs and attorneys' fees for present, future and past infringement of any of the foregoing.

"**Transfer Agreement(s)**" – Section 8.2.3.

"**Transfer Regulation**" means any Law pursuant to which the employment of any employee of an Asset Seller (or any employee of any other Affiliate of Delphi, except for the Sale Companies, who is working for the Business) will transfer to a Buyer in connection with the transactions contemplated by this Agreement, including pursuant to Directive 77/187/EC of the European Parliament and council and any Law adopted pursuant thereto, and any Law, works council or union agreement otherwise requiring the delivery of information to or consultation with employees or their representatives in connection with the transactions contemplated by this Agreement.

"**Transfer Taxes**" – Section 6.5.5.

19

"**Transferable Balance Sheet**" – Section 4.4.1.

"**Transferred Asset Seller Employees**" means all U.S. Employees and Non-U.S. Employees who are employees of any Asset Seller or Seller Affiliate who become Buyers' employees pursuant to Section 6.6 hereof, except for Inactive Employees subject to Section 6.6.5. No individual who has retired or otherwise terminated employment with Sellers prior to Closing will be deemed to be a Transferred Asset Seller Employee.

"**Transferred Employees**" means: (i) all Transferred Asset Seller Employees and (ii) all employees of the Sale Companies.

"**Transferred Insurance Policies**" means the Insurance Policies set forth on Schedule 4.15(b).

"**Transferred Non-U.S. Employees**" means all Transferred Asset Seller Employees who are Non-U.S. Employees.

"**Transferred U.S. Employees**" means all Transferred Asset Seller Employees who are either U.S. Hourly Employees or U.S. Salaried Employees.

"**Transition Services Agreement**" - Section 8.2.5.

"**UAW**" means the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number 2195 (Athens).

"**U.S. Employees**" means U.S. Hourly Employees and U.S. Salaried Employees.

"**U.S. Hourly Employees**" means the hourly employees represented by the UAW who are employed by Sellers or Seller Affiliate in, and dedicated to, the Business in the United States immediately prior to the Closing and identified on Schedule 4.11.1 (as the same may be amended prior to the Closing Date).

"**U.S. Salaried Employees**" means the salaried employees and hourly non-union employees who are employed by Sellers or Seller Affiliate in, and dedicated to, the Business in the United States immediately prior to the Closing and identified on Schedule 4.11.1 (as the same may be amended prior to the Closing Date).

"**USA PATRIOT Act**" – Section 5.6.

"**WARN ACT**" – Section 6.6.9.

1.2    **Other Interpretive Provisions**.  The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole (including any Schedules hereto) and not to any particular provision of this Agreement, and all Article, Section, Schedule and Exhibit references are to this Agreement unless otherwise specified.  The words "include", "includes" and "including" are deemed to be followed by the phrase "without limitation."  The meanings given to terms defined herein are equally applicable to both the singular and plural forms of such terms.  Whenever the context may require, any

pronoun includes the corresponding masculine, feminine and neuter forms. Except as otherwise expressly provided herein, all references to "dollars" or "$" are deemed references to the lawful money of the United States of America, and all references to "euros" or "€" are deemed references to the lawful money of the European Economic and Monetary Union. References to undertakings by the "Buyer(s)" or the "Seller(s)" are understood to be undertakings by Buyer Parent to cause the relevant Buyer(s) to perform, and by Delphi to cause the relevant Seller(s) to perform, as the case may be.

## 2.    PURCHASE AND SALE.

### 2.1    Transfers by Sellers and their Affiliates.

2.1.1    **Purchase and Sale of the Sale Securities**. Upon the terms and subject to the conditions set forth in this Agreement as modified or supplemented by any applicable Transfer Agreement, on the Closing Date, the Securities Sellers will sell, transfer, assign, convey and deliver to the Securities Buyers, and the Securities Buyers will purchase, accept and acquire, the Sale Securities free and clear of all Encumbrances except Permitted Encumbrances.

2.1.2    **Purchase and Sale of the Acquired Assets**. Upon the terms and subject to the conditions set forth in this Agreement as modified or supplemented by any applicable Transfer Agreement, on the Closing Date, the Asset Sellers will sell, transfer, assign, convey and deliver to the Asset Buyers, and the Asset Buyers will purchase, accept and acquire from the Asset Sellers, free and clear of all Encumbrances except Permitted Encumbrances, all properties, assets, rights, titles and interests of every kind and nature, owned or leased by the Asset Sellers (including indirect and other forms of beneficial ownership) primarily used or held for use in the Business, whether tangible or intangible, real or personal and wherever located and by whomever possessed, including, without limitation, all of the following assets but excluding Excluded Assets pursuant to Section 2.1.3 (all of the assets to be sold, assigned, transferred and delivered to Asset Buyers herein called the "**Acquired Assets**"):

A.    all Accounts Receivable;

B.    Real Property;

C.    Personal Property;

D.    Inventory;

E.    Subject to Section 6.5.10, all of Asset Sellers' Acquired Contracts and rights under the Acquired Contracts, including any rights under tax abatements, incentive agreements, or other similar tax credit arrangements with any taxing authority related to the Business or the Acquired Assets;

F.    Administrative Assets;

G.    Permits;

H.    Purchased Intellectual Property and Licensed Intellectual Property;

21

I.  Technical Documentation;

J.  Prepaid expenses, deposits and advances, warranties and claims relating to the Business;

K.  Motor vehicles owned or leased by Sellers (in each case, to the extent transferable pursuant to the terms of such leases or financing documents);

L.  all Transferred Insurance Policies, including all prepaid insurance premiums and all rights to the benefits, coverages and proceeds under such Transferred Insurance Policies; and

M.  all goodwill as a going concern and all other intangible properties;

in each case to the extent primarily used or held for use in the Business; provided that, with respect to the Technical Centers and Sales Offices, the Acquired Assets will consist only of the assets specifically set forth in Schedule 2.1.2, as well as all end user computing and telecommunications devices used by employees dedicated to the Business; provided further that, with respect to the Acquired Contracts, such Contracts will include all Material Contracts and all Assumed and Assigned Contracts.  Except for the Acquired Assets, the Asset Sellers will retain all other assets, properties, rights and interests owned, used or held by the Asset Sellers.

2.1.3  **Excluded Assets**.  Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreements, the following properties, assets, rights, title and interests of the Asset Sellers will not be included in the Acquired Assets (the "**Excluded Assets**"):

A.  **Third Party Assets**.  Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by an OEM or any other third party, including third party bailed assets, provided however, that any Contracts, rights or licenses pertaining to such bailed assets will be transferred as part of the Acquired Assets.

B.  **Intellectual Property**.  Corporate Trademark Rights and Shared Intellectual Property (subject to the limited rights granted to the Buyers pursuant to Sections 6.10 and 6.11).

C.  **Cash**.  All Cash.

D.  **Insurance Policies**.  All Insurance Policies except for the Transferred Insurance Policies, it being explicitly understood Buyers shall have no access to proceeds of Insurance Policies (other than Transferred Insurance Policies); provided, however, that Buyers will receive the benefit of all such claims and rights under third-party property and casualty insurance policies arising subsequent to the date of this Agreement and prior to the Closing.

E.  **Records**.  Any books, records and other materials that any Asset Seller is required by Law to retain (provided that the Asset Sellers shall provide Buyers with copies of the same), all Tax Returns of any Asset Seller or the Sale Companies for time periods

22

prior to Closing, and related work papers, and (subject to the rights granted pursuant to Section 6.10) all "Delphi" marked sales and promotional materials and brochures.

F. **Claims**. All claims, defenses or causes of action of any kind relating to either Excluded Assets, Retained Liabilities or Liabilities otherwise discharged by Sellers prior to Closing.

G. **Tax Refunds**. Subject to Section 6.5.10, all refunds, credits, prepayments or deferrals of or against any Taxes, including deferred Taxes of any nature, that relate to periods or portions thereof prior to the Closing.

H. **Bankruptcy Rights**. All of the rights and claims of the Filing Affiliates available to Filing Affiliates under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such Sections by operation of law or otherwise, including any and all proceeds of the foregoing.

I. **Personnel Records**. All work histories, personnel and medical records of employees and former employees of any Asset Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws, the appropriate Buyer(s) will be provided the originals of all personnel and medical records of all Transferred Employees after posted written notice or other appropriate notice to such Transferred Employees if legally required or if the Asset Sellers so elects. All such personnel and medical records of Transferred Employees are books and records governed by Section 6.9 of this Agreement. Upon written request of the Asset Sellers (or an Affiliate of Sellers), Buyer will promptly return or cause to be returned any and all of these records to the Asset Sellers (or an Affiliate of the Asset Sellers as directed) at which time the Asset Sellers, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws, will provide the appropriate Buyer(s) with copies of the personnel and medical records of such employees. If an employee objects to provision of personnel or medical records to any Buyer, the records will not be provided, except to the extent the Asset Sellers determine that provision of the records to such Buyer over the objections by the employee is permitted by the applicable local law without adverse consequences to the Asset Sellers or to any Affiliate of the Asset Sellers.

J. **Privileged Information and Materials**. Information and materials protected by the attorney-client privilege (or its equivalent in jurisdictions outside the United States), or that, in the case of environmental-related documents, Sellers consider to be proprietary information; provided, however, that any privileged information relating solely and exclusively to an Assumed Liability will be transferred to Buyers at Closing and deemed an Acquired Asset; provided, further, that any privileged information that relates primarily to an Assumed Liability will be transferred to Buyers at Closing and deemed an Acquired Asset if counsel to Sellers reasonably determines that such information or materials can be shared or transferred without eliminating the privilege.

K.   **Technical Centers and Sales Offices**.  All real property (including any improvements located thereon), real property leases, and Personal Property located at the Technical Centers and Sales Offices, other than those assets which are specifically set forth on Schedule 2.1.2.

L.   **Cadiz, Spain**.  All real property (including any improvements located thereon), Personal Property, employees and Contracts located or performed at the Cadiz, Spain manufacturing facility other than those Contracts which are either (i) being performed (whether by assignment of the prior Contract or pursuant to the issuance of a replacement Contract) at one of the Manufacturing Facilities at the Closing Date or (ii) specifically set forth on Schedule 2.1.3.L.

M.   **Excluded Real Estate**.  All real property (including any improvements located thereon) located at the Livorno, Italy and Suzhou, China manufacturing facilities.

N.   **Korea Delphi Automotive Systems Corporation**.  Subject to Section 6.22, all assets, business lines, rights, Contracts and claims of Korea Delphi Automotive Systems Corporation (**"KDAC"**), wherever located, whether tangible or intangible, real, personal or mixed.

O.   **Inventory and Other Assets**.  (i) All Inventory, products, rights, properties, assets and businesses of the Business transferred or disposed of by Sellers prior to Closing in the Ordinary Course of Business and not in violation of this Agreement; and (ii) all computer hardware, equipment, Software, Contracts, and other assets listed on Schedule 2.1.3.O.

P.   **Intercompany Receivables**.  All amounts owed to the Business by Delphi, Sellers, or Affiliates of Delphi or Sellers.

Q.   **Equity Securities**.  The equity securities or other ownership interest in any entity, except as otherwise provided in Section 2.1.1.

2.1.4   **Post-Closing Deliveries**.

A.   Should Sellers or Buyers, in their reasonable discretion, determine after the Closing that any Acquired Assets are still in the possession of Sellers or any of their Affiliates, Sellers will or will cause such Affiliates to promptly deliver such Acquired Assets to Buyers at no cost to Buyers.  Should Sellers or Buyers, in their reasonable discretion, determine after the Closing that any Excluded Assets were delivered to Buyers, Buyers will promptly return them to Sellers at no cost to Sellers.

B.   After the Closing, Sellers shall permit, and hereby authorize, Buyers to collect, in the name of Sellers, all Accounts Receivable constituting part of the Purchased Assets and to endorse with the name of any applicable Seller for deposit in Buyers' accounts any checks or drafts received in payment thereof.  Sellers shall promptly deliver to Buyers any cash, checks or other property that they may receive after the Closing in respect of any Accounts Receivable or other asset constituting part of the Purchased Assets.

24

2.2    **Assumption of Liabilities**.  Subject to the terms and conditions set forth herein, the Buyers will assume, and will thereafter pay, perform and discharge as and when due, and will be liable with respect to the following, and only the following, liabilities and obligations of the Asset Sellers (collectively, the "**Assumed Liabilities**"):

2.2.1    All Liabilities of the Asset Sellers arising under any Contracts, licenses, permits, leases and other agreements included in the Acquired Assets and assigned or otherwise transferred to Buyers or any relevant Buyer Affiliate pursuant to the terms of this Agreement or the Transfer Agreements, excluding Cure Amounts (if any);

2.2.2    All Liabilities relating to the Acquired Assets and arising on or after the Closing, including Claims and other obligations relating to any Buyer's ownership or use of the Acquired Assets after the Closing;

2.2.3    Accounts Payable incurred after the Petition Date (excluding intercompany trade payables incurred in the Ordinary Course of Business owing to Sellers or their Affiliates as of the Closing Date);

2.2.4    All Products Liability for Products manufactured after Closing;

2.2.5    All Product Warranty Liabilities for Products manufactured after Closing;

2.2.6    All deferred revenue obligations set forth on the Final Statement of Adjusted Net Assets, including all obligations to fulfill orders relating to Products of the Business outstanding on the Closing Date;

2.2.7    Any and all Tax Claims, to the extent that they arise out of the period after Closing;

2.2.8    All Liabilities that Buyer Parent or any Buyer specifically assumes or agrees to pay for or be responsible for pursuant to the terms of this Agreement or any Ancillary Agreement;

2.2.9    Any Liability arising out of, resulting from, or relating to any Proceeding relating to an Assumed Liability, including any Proceeding which is pending as of the Closing Date;

2.2.10   Liabilities with respect to Transferred Asset Seller Employees for periods or portions thereof commencing on or after the Closing Date;

2.2.11   All Liabilities reflected on the Transferable Balance Sheet (actual amounts of such Liabilities will be as set forth on the Final Statement of Adjusted Net Assets);

2.2.12   All Liabilities otherwise specifically assumed in this Agreement or any Ancillary Agreement;

2.2.13  Any and all Environmental Claims for Environmental Damages with respect to Post-Closing Environmental Contamination and Post-Closing Compliance Matters (the "**Assumed Environmental Liabilities**"); and

2.2.14  All Claims made after Closing for Insured Liabilities.

2.2.15  All Liabilities included on <u>Schedule 2.2.15</u>.

2.3  **Retained Liabilities**.  Each Asset Seller acknowledges and agrees that pursuant to the terms and provisions of this Agreement, Buyers will not assume, or become liable to pay, perform or discharge, any Liability or obligation of any Asset Seller, other than the Assumed Liabilities.  In furtherance and not in limitation of the foregoing, neither Buyers nor any of their Affiliates shall assume, and shall not be deemed to have assumed, any debt, Claim, obligation or other Liability of any Asset Seller or any of its predecessor(s) or Affiliate(s) whatsoever (other than the Assumed Liabilities), including, but not limited to the following (collectively, the "**Retained Liabilities**"):

2.3.1  Tax Liabilities for periods or portions thereof ending on or before the Closing Date including deferred Taxes of any nature;

2.3.2  Any Liability of Sellers for administrative fees and expenses under Section 503(b) of the Bankruptcy Code, professional fees or expenses under Sections 328, 330 or 331 of the Bankruptcy Code, or any other fees or expenses associated with administration of the Filing Affiliates' Bankruptcy Cases;

2.3.3  Liabilities related to the Excluded Assets;

2.3.4  Liabilities with respect to Transferred Asset Seller Employees for periods or portions thereof ending prior to the Closing Date except to the extent specifically provided for in Section 6.6 or the applicable Transfer Agreement;

2.3.5  All Products Liability for Products manufactured before Closing ("**Retained Products Liability**");

2.3.6  Any amounts owing to Delphi, the Sellers or the Affiliates of Delphi by the Business (including intercompany trade payables) as of the Closing Date;

2.3.7  Except as expressly provided in this Agreement or any Ancillary Agreement, Liabilities under or that relate to (i) any Seller Employee Benefit Plan or any other employee benefit plan of any member of the Sellers' Controlled Group, (ii) employment and employee benefits-related Claims, obligations and Liabilities of former employees arising at any time and relating to their employment with Seller prior to Closing, and (iii) employment and employee benefits-related Claims, obligations and Liabilities of Transferred Employees, in each case incurred in relation to the employee's period of employment with the Seller prior to and including the Closing Date;

2.3.8  Any Liability arising out of any Proceeding relating to a Retained Liability which is pending as of the Closing Date;

26

2.3.9    Except as expressly provided in Section 2.2, any Liability of the Asset Sellers arising out of, relating to, or incurred in connection with the businesses retained by the Asset Sellers and which are not arising out of, relating to or incurred in connection with the Business;

2.3.10  All Debt Obligations of the Asset Sellers (other than (i) Accounts Payable assumed by Buyers pursuant to Section 2.2.3 hereof, (ii) Debt Obligations listed on <u>Schedule 6.12</u>, and (iii) Debt Obligations otherwise addressed through the Purchase Price adjustment and reflected on the Final Statement of Cash and Debt);

2.3.11  Any and all Environmental Claims for Environmental Damages with respect to Pre-Closing Environmental Contamination and Pre-Closing Compliance Matters (the "**Retained Environmental Liabilities**");

2.3.12  All Liabilities of the Asset Sellers arising under any Contracts relating to any Retained Liabilities;

2.3.13  All Cure Amounts for Contracts included in the Acquired Assets;

2.3.14  Accounts payable incurred on or prior to the Petition Date;

2.3.15  All Product Warranty Liabilities for Products manufactured before Closing ("**Retained Product Warranty Liability**"); and

2.3.16  All Claims made before Closing for Insured Liabilities ("**Retained Insured Liabilities**").

2.4    **Sale Company Liabilities**.  Except as expressly provided herein, the Liabilities of the Sale Companies will not be affected by this Agreement and Sellers will have no obligation for such Liabilities.

2.5    **JV Company Liabilities**.  Notwithstanding anything to the contrary herein, the Liabilities of the JV Companies will not be affected by this Agreement and the Sellers will have no obligation for such Liabilities.

2.6    **Deferred Items**.

2.6.1    **Non-Assignability**.  To the extent that any Contract or Permit included in the Acquired Assets is not capable of being assigned (whether pursuant to Section 365 of the Bankruptcy Code or, if inapplicable, then pursuant to the terms of such Contract or other applicable law) to Buyer at the Closing without the Consent of the issuer thereof or the other party thereto or any third party (including a Governmental Entity) ("**Deferred Item(s)**"), this Agreement will not constitute an assignment thereof, or an attempted assignment, unless any such Consent is obtained.

2.6.2    **Efforts to Obtain Necessary Consents**.  At Buyer's request, the applicable Seller will, at its expense, use commercially reasonable efforts, and the applicable Buyer will, at

27

its expense, cooperate with Sellers, to obtain the necessary Consents and to resolve the impracticalities of assignment referred to in Section 2.6.1 before or after the Closing.

      2.6.3    **If Consents Cannot be Obtained**.  To the extent that the Consents referred to in Section 2.6.1 are not obtained by the applicable Seller, or until the impracticalities of assignment referred to therein are resolved, such Sellers' sole responsibility with respect to such matters, notwithstanding Section 2.1.2, will be to use, during the twelve (12) month period commencing with the Closing, commercially reasonable efforts, at no cost to Sellers, to: (i) provide to Buyers the benefits of any Deferred Item; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Buyers, without incurring any financial obligation to Buyers; and (iii) enforce for the account of Buyers and at the cost of Buyers any rights of Sellers arising from any Deferred Item referred to in Section 2.6.1 against such issuer thereof or other party or parties thereto; provided, however, that any such efforts shall be made with the consent of Buyers.  Notwithstanding the foregoing, Sellers' obligations with respect to obtaining consents for the transfer of certain information technology licenses shall be subject to Section 6.11.5.

      2.6.4    **Obligation of Buyer to Perform**.  To the extent that Buyers are provided the benefits pursuant to Section 2.6.3 of any Deferred Item, Buyers will perform, on behalf of Sellers, for the benefit of the issuer thereof or the other party or parties thereto (including payment obligations) the obligations of Sellers thereunder or in connection therewith and if Buyers fail to perform to the extent required herein, Sellers, without waiving any rights or remedies that they may have under this Agreement or applicable Laws, may suspend their performance under Section 2.6.3 in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or Sellers may perform at Buyers' sole cost and expense, in which case Buyers will reimburse Sellers' costs of such performance immediately upon receipt of an invoice therefor.

      2.6.5    **Standard of Care**.  Sellers will have no Liability to any Buyer arising out of the provision of the benefits of the Deferred Items other than for gross negligence or willful misconduct and will have no Liability for actions taken in accordance with the request or direction of Buyer Parent or its Affiliates; provided such gross negligence or willful misconduct standard shall not apply with respect to the remittance of any collected accounts receivable to Buyer under any deferred items.  Buyers will reimburse Sellers and will hold Sellers harmless from and against all Liabilities, incurred or asserted as a result of Sellers' post-Closing direct or indirect ownership, management or operation of the Deferred Items.

## 3.    **PURCHASE PRICE; ADJUSTMENT; ALLOCATION**.

      3.1    **Deposit Amount**.  Not later than 5:00 p.m. (Eastern Standard Time) on the Business Day immediately following the entry of the Bidding Procedure Order on the Bankruptcy Court's docket, Buyer Parent shall deliver to the Escrow Agent pursuant to the terms of the Deposit Escrow Agreement $9,500,000 in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing, the "**Deposit Amount**"), to be held by the Escrow Agent in an interest bearing account reasonably acceptable to Buyer Parent to serve as an earnest money deposit under this Agreement, and to be released in accordance

with the following procedures (which procedures will be set forth in the Deposit Escrow Agreement):

3.1.1    On the Closing Date, Delphi and Buyer Parent will jointly instruct the Escrow Agent to deliver the Deposit Amount at Closing, by wire transfer of immediately available funds, to an account designated by Buyer Parent in the Deposit Escrow Agreement, to be retained by Buyer Parent;

3.1.2    Upon any termination of this Agreement by Delphi in accordance with Section 9.1.4, Delphi and Buyer Parent will jointly instruct the Escrow Agent to deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Delphi in the Deposit Escrow Agreement, to be retained by Delphi; or

3.1.3    Upon termination of this Agreement by Buyers in accordance with any provision of Article 9 other than Section 9.1.4 or for any reason other than a Buyer breach, then Delphi and Buyer Parent will jointly instruct the Escrow Agent to deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Buyer Parent in the Deposit Escrow Agreement, to be retained by Buyer Parent.  The Deposit Amount is not property of the bankruptcy estate as that term is defined under 11 U.S.C. § 541(a) and shall not become property of any of the Filing Affiliates' bankruptcy estates at any time until released to Delphi.  No liens or Encumbrances shall attach to the Deposit Amount until released to Delphi.

3.2    **Preliminary Purchase Price; Closing Statement**.

3.2.1    On the Closing Date and subject to the terms and conditions of this Agreement, in consideration of the Sale, if the Preliminary Adjusted Purchase Price is a positive number, Buyer Parent, on behalf of Buyers, will pay to the Escrow Agent or Delphi pursuant to Section 8.4 herein, an amount equal to the Preliminary Adjusted Purchase Price.  In the event that the Preliminary Adjusted Purchase Price is a negative number, Delphi, on behalf of Sellers, will pay the amount of such Preliminary Adjusted Purchase Price to the Escrow Agent or Buyer Parent pursuant to Section 8.3.1.  The "**Preliminary Adjusted Purchase Price**" shall be calculated as follows:

3.2.1.1 $1.00 (which includes the KDAC Amount, the "**Preliminary Purchase Price**");

3.2.1.2 plus Capped Cash, as set forth on the Closing Statement ("**Estimated Capped Cash**"), up to the amount of Estimated Assumed Debt;

3.2.1.3 minus Assumed Debt, as set forth on the Closing Statement (the "**Estimated Net Debt**"); and

3.2.1.4 plus $47.0 million if the Proposed Joint Venture is formed at or before Closing.

29

2.2.2    On the fifth (5th) day before Closing, Delphi will prepare (or cause to be prepared) in good faith and deliver to Buyer Parent, a closing statement, containing a calculation of the Estimated Assumed Debt and Estimated Capped Cash (the "**Closing Statement**").

3.3        **Preparation of Closing Adjusted Net Assets Statement**.

3.3.1    Within sixty (60) days after the Closing Date, Delphi will prepare and deliver to Buyer Parent the Closing Adjusted Net Assets Statement  (ii) a statement specifying the actual amount of Capped Cash and the actual amount of Assumed Debt as of the Closing Date (the "**Closing Cash and Debt Statement**"), and (iii) a calculation of the NTD/POS Adjustment Amount as of the Closing Date (the "**Closing NTD/POS Statement**" and together with the Closing Adjusted Net Assets Statement and the Closing Cash and Debt Statement, the "**Delphi Statements**").  The Closing Adjusted Net Assets Statement and the Closing Cash and Debt Statement will be prepared on a combined basis in accordance with Schedule 3.3.1, applied on a basis consistent with the Historical Financial Statements and, except as set forth on Schedule 3.3.1, prepared in accordance with GAAP applied consistently with the December 31, 2006 balance sheet that is part of the Historical Financial Statements and on a basis consistent with, and reflecting, all adjustments reflected on the Benchmark Net Assets Amount and eliminating the effect of currency fluctuations since December 31, 2006.  The Closing Adjusted Net Assets Statement will be based on a physical inventory of the Inventory, consistent with past practice, to be taken jointly by the Parties within fifteen (15) Business Days after the Closing Date.  Each Party's out-of-pocket costs associated with such physical inventory count will be borne separately by such Party.

3.3.2    Buyer Parent will, within the longer of (i) sixty (60) days after the delivery by Delphi of the Delphi Statements and (ii) 120 days following the Closing (the "**Review Period**"), complete its review of such statement.  Each party will, after Closing and pending agreement or final determination of the Delphi Statements, allow the other and its Affiliates and their accountants, agents and advisers such access to the Combined Business, all relevant employees and all relevant records, information and other documentation (and will, upon request, provide copies thereof) as is reasonably necessary to enable each party to prepare the Delphi Statements (or their review thereof), including access to and the services of key personnel of the Combined Business.  If Buyer Parent disagrees with any portion of the Delphi Statements, Buyer Parent will, on or before the Review Period, inform Delphi in writing (the "**Objection**") of disagreements.  Any Objection will specify in reasonable detail the nature of any disagreement so asserted.  If no such Objection has been timely provided to Delphi; then:  (a) the Closing Adjusted Net Assets Statement will be deemed to be the Final Statement of Adjusted Net Assets; (b) the Closing Cash and Debt Statement will be deemed to be the Final Statement of Cash and Debt, and (c) the Closing NTD/POS Statement will be deemed to be the Final Statement of NTD/POS and (d) Delphi's calculations thereon will be final and binding on the Parties of all items therein.

3.3.3    Delphi will then have thirty (30) days following the date it receives the Objection to review and respond to the Objection.  If Delphi and Buyer Parent are unable to resolve all of their disagreements with respect to the determination of the foregoing items by the fifteenth (15th) day following Delphi's response thereto, after having used their good faith efforts to reach a resolution, they will refer their remaining differences to an independent accounting

30

firm mutually acceptable to Buyer Parent and Delphi (the **"CPA Firm"**), who will, acting as experts in accounting and not as arbitrators, determine on a basis consistent with the requirements of Section 3.3, and only with respect to the specific relevant items remaining disputed, whether and to what extent, if any, the Delphi Statements requires adjustment.  Delphi and Buyer Parent will request the CPA Firm to use its commercially reasonable efforts to render its determination within thirty (30) days.  In resolving any disputed item, the CPA Firm: (i) will be bound by the principles set forth in this Section 3.3.3 and Schedule 3.3.1; (ii) will limit its review to matters specifically set forth in the Objection that remain disputed; and (iii) will not assign a value to any item greater than the greatest value for such item claimed by either Party or less than the smallest value for such item claimed by either Party.  The CPA Firm's determination will be conclusive and binding upon Delphi and Buyer Parent.  Delphi and Buyer Parent will make reasonably available to the CPA Firm all relevant books and records, any work papers (including those of the Parties' respective accountants subject to any conditions such accountants may impose) and supporting documentation relating to the Delphi Statements, and all other items reasonably requested by the CPA Firm.  The "**Final Statement of Adjusted Net Assets**" will be: (i) the Closing Adjusted Net Assets Statement if the Parties so agree or if so determined in accordance with Section 3.3.2; or (ii) if an Objection is made under Section 3.3.2, the Closing Adjusted Net Assets Statement, as adjusted pursuant to the agreement of the Parties, or as adjusted by the CPA Firm.  The "**Final Statement of Cash and Debt**" will be:  (i) the Closing Cash and Debt Statement if the Parties so agree or if so determined in accordance with Section 3.3.2; or (ii) if an Objection is made under Section 3.3.2, the Closing Cash and Debt Statement, as adjusted pursuant to the agreement of the Parties, or as adjusted by the CPA Firm.  The "**Final Statement of NTD/POS**" will be: (i) the Closing NTD/POS Statement if the Parties so agree or if so determined in accordance with Section 3.3.2; or (ii) if an Objection is made under Section 3.3.2, the Closing NTD/POS Statement, as adjusted pursuant to the agreement of the Parties, or as adjusted by the CPA Firm.  The fees, costs and expenses of the CPA Firm under this Section 3.3.3: (i) will be borne by Buyer Parent in the proportion that the aggregate dollar amount of such disputed items so submitted that are unsuccessfully disputed by Buyer Parent (as finally determined by the CPA Firm) bears to the aggregate dollar amount of such items so submitted; and (ii) will be borne by Delphi in the proportion that the aggregate dollar amount of such disputed items so submitted that are successfully disputed by Buyer Parent (as finally determined by the CPA Firm) bears to the aggregate dollar amount of such items so submitted.  Whether any dispute is resolved by agreement between the Parties or by the CPA Firm, changes to the Delphi Statements may be made only for items as to which Buyer Parent has taken exception in the Objection.  Except as specifically set forth in this Section 3.3.3 with respect to the fees, costs and expense of the CPA Firm, each Party will bear its own expenses incurred in this dispute resolution process, including fees of its accountants, attorneys and other agents.

3.4    **Post Closing Purchase Price Adjustment**.

3.4.1    **Payments by Delphi.**

3.4.1.1 If the amount of Adjusted Net Assets reflected in the Final Statement of Adjusted Net Assets is less than the Benchmark Net Assets Amount, then Delphi will pay to Buyer Parent an amount equal to such deficiency.

3.4.1.2 If the amount of Assumed Debt reflected in the Final Statement of Cash and Debt is greater than the Estimated Assumed Debt, then Delphi will pay to Buyer Parent an amount equal to such excess.

3.4.1.3 The NTD/POS Adjustment Amount (if any).

3.4.1.4 If the amount of Capped Cash reflected in the Final Statement of Cash and Debt is less than the amount of Estimated Capped Cash paid to Delphi at Closing, then Delphi will pay to Buyer Parent an amount equal to such deficiency.

3.4.1.5 The Normalized Working Capital Amount (to be paid concurrently with any payments made pursuant Section 3.4.1.1 or 3.4.2.1, as applicable).

3.4.2    **Payments by Buyer Parent.**

3.4.2.1 If the amount of Adjusted Net Assets reflected in the Final Statement of Adjusted Net Assets is greater than the Benchmark Net Assets Amount, then Buyer Parent will pay to Delphi an amount equal to such excess.

3.4.2.2 If the amount of Assumed Debt reflected in the Final Statement of Cash and Debt is less than the Estimated Assumed Debt, then Buyer Parent will pay to Delphi an amount equal to such deficiency

3.4.2.3 If the amount of Capped Cash reflected in the Final Statement of Cash and Debt is greater than the amount of Estimated Capped Cash paid to Delphi at Closing, then Buyer Parent will pay to Delphi an amount equal to such deficiency.

3.4.3    The amounts payable pursuant to this Section 3.4 will be paid in immediately available funds within three (3) Business Days after the ultimate determination of the Final Statement of Adjusted Net Assets, Final Statement of NTD/POS, and/or the Final Statement of Debt and Cash, as applicable.  The Preliminary Adjusted Purchase Price plus or minus the amounts referred to in this Section 3.4 is referred to as the "**Purchase Price**."

4.    **REPRESENTATIONS AND WARRANTIES OF SELLERS**.

Each Seller represents and warrants severally to Buyers with respect to the Acquired Assets or Sale Securities being sold by such Seller (except that the Filing Affiliates represent and warrant, jointly and severally, with respect to the Acquired Assets and the Sale Securities of the Filing Affiliates), as follows:

4.1    **Organization**.  Each Seller and Sale Company is a legal entity duly organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization.  Each Seller and Sale Company has the full requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted, and is duly qualified or licensed or admitted to do business in the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed has not had and would not reasonably be expected, individually or in the aggregate, to have a material

32

adverse effect on the ability of Sellers to consummate the transactions contemplated by this Agreement.  Delphi has prior to the execution of this Agreement delivered true and complete copies of the certificate of incorporation and by-laws or similar Organizational Documents of each of the Sale Companies as in full force and effect on the date hereof.

        4.2    **Authorization; Enforceability**.  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, as applicable, each Seller has the requisite corporate or other organizational power and authority to: (i) execute and deliver this Agreement and the Ancillary Agreements to which such Seller is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the applicable Ancillary Agreements, including to own, hold, sell and transfer (pursuant to this Agreement) the Acquired Assets and the Sale Securities.  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, if applicable, the execution and delivery of this Agreement and the Ancillary Agreements by Delphi and each Seller that is a party to any of such agreements, and the performance by each of them of their respective obligations under any of such agreements, in the case of Delphi have been, and in the case of the other Sellers, prior to the Closing Date will be, duly authorized by all necessary corporate action on the part of such Person.  This Agreement has been duly executed and delivered by Delphi, and the Ancillary Agreements will be duly executed and delivered by Delphi and each Seller, as applicable, and, assuming due authorization, execution and delivery by Buyer Parent and Buyers, constitutes, or will constitute, a valid and binding agreement of Delphi and each Seller, as applicable, enforceable against each of them in accordance with their respective terms, except: (a) as enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium and other Laws affecting the enforcement of creditors' rights generally from time to time in effect and by general equitable principles relating to enforceability; (b) that enforceability of Section 9.2 of this Agreement is subject to entry and approval of the Bidding Procedures Order; and (c) that enforceability of all other provisions of this Agreement is subject to entry and effectiveness of the Sale Approval Order.

        4.3    **Capital Stock of the Sale Companies and JV Companies**.

        4.3.1    Except as set forth on <u>Schedule 4.3.1</u>: (i) Sellers' equity interests in each of the Sale Companies and JV Companies is owned, directly or indirectly, by the relevant Securities Seller as set forth on <u>Schedule 1</u> to the Agreement (which Schedule also sets forth the number and type of such equity interests held by each Seller); (ii) the Sale Securities are duly authorized, validly issued, fully paid up and non-assessable and are not subject to any preemptive rights; and (iii) there are no voting trust agreements or other contracts, agreements or arrangements, to which any Securities Seller is a party, restricting voting or dividend rights or transferability with respect to the Sale Securities.

        4.3.2    Except as set forth on <u>Schedule 4.3.2</u>, there is no outstanding security, right, subscription, warrant, option, privilege or other agreement, commitment or contract, preemptive, contractual or otherwise that gives the right to: (i) purchase or otherwise receive or be issued any share capital or similar equity interest of a Sale Company or a JV Company or any security of any kind convertible into or exchangeable or exercisable for any share capital of a Sale Company or a JV Company; or (ii) receive or exercise any benefits or rights similar to any rights enjoyed by or accruing to a holder of share capital or similar equity interest of a Sale Company or a

JV Company, including any rights to participate in the equity or income of a Sale Company or a JV Company, or to participate in or direct the election of any directors of a Sale Company or a JV Company or the manner in which any share capital or similar equity interest of a Sale Company or a JV Company are voted.

4.3.3    At Closing upon payment of Purchase Price, Sellers will convey to Buyers valid and marketable title to (i) all of the issued and outstanding shares of capital stock of the Sale Companies, and (ii) all shares of the JV Companies currently owned by Sellers; in each case, free and clear of all Encumbrances except Permitted Encumbrances.

4.4    **Historical Financial Statements.**

4.4.1    Schedule 4.4.1(a) sets forth the unaudited combined balance sheets of the Combined Business as of December 31, 2005 and 2006 and the related unaudited combined statements of income for the years ended December 31, 2005 and 2006 (referred to as the "**Historical Financial Statements**").  Schedule 4.4.1(b) sets forth the unaudited assets and liabilities of the Combined Business as of December 31, 2006, which will be transferred to the Buyer (referred to as the "**Transferable Balance Sheet**").  Except as set forth on Schedule 4.4.2 and Schedule 3.3.1, and limited to Seller's Knowledge with respect to the JV Companies, each of the Transferable Balance Sheet and each Historical Financial Statement is: (i) true, correct and complete in all material respects with respect to the purpose for which it was prepared, as of the date thereof, subject to the absence of notes and normal year end adjustments, (ii) consistent with prior practice, subject to the exceptions and adjustments described in Schedule 4.4.2 and Schedule 3.3.1, (iii) prepared from the accounting records of the Asset Sellers, Sale Companies and JV Companies, in accordance with the specific accounting treatments consistently used by Seller in preparation of its books and records as described in Schedule 4.4.2 and Schedule 3.3.1; (iv) with respect to the Historical Financial Statements, subject to the exceptions and adjustments set forth in Schedule 4.4.2 and Schedule 3.3.1, presents fairly in all material respects the financial condition and the results of operations of the Combined Business as of the respective dates of and for the periods referred to in such financial statements, (v) with respect to the Transferable Balance Sheet, adopts the same accounting principles, policies, treatments and categorizations as were used in the preparation of the Historical Financial Statements as there applied, including in relation to the exercise of accounting discretion and judgment; and (vi) in accordance with US GAAP.  For the avoidance of doubt, paragraph (iii) shall take precedence over paragraphs (iv), (v) and (vi), and paragraphs (iv) and (v) shall take precedence over paragraph (vi).

4.4.2    Except as specifically reflected or reserved against in the December 31, 2006 balance sheet that is part of the Historical Financial Statements or otherwise disclosed on Schedule 4.4.2, there are no Liabilities that would be required to be disclosed in accordance with GAAP against, relating to or affecting the Acquired Assets or the Sale Companies, other than Liabilities incurred in the Ordinary Course of Business since December 31, 2006.

4.5    **No Conflicts or Approvals**.  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, except as set forth on Schedule 4.5, the execution, delivery and performance by Sellers of this Agreement and the Ancillary Agreements do not: (i) violate, conflict with or result in a breach by any of Delphi or Sellers of the

Organizational Documents of any of Delphi, the Sellers, the Sale Companies or the JV Companies; (ii) violate or result in a breach of any Governmental Order or Law applicable to any of Delphi or Sellers, the Sale Companies or the JV Companies or any of their respective properties or assets; (iii) require any Governmental Approval, except as set forth in this Agreement and in each case for consents, approvals, authorizations of, declarations or filings with the Bankruptcy Court, or (iv) result in a breach, right of acceleration, termination, modification or cancellation of any of the Material Contracts of Sellers or the Sale Companies; except: (x) as would not, individually or in the aggregate, have a Material Adverse Effect or a material adverse effect on the ability of Sellers to consummate the transactions contemplated by this Agreement; or (y) are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

    4.6 **Sufficiency of Acquired Assets**.  Except as set forth on <u>Schedule 4.6</u>, the Acquired Assets and assets of the Sale Companies, together with the Intellectual Property rights to be licensed from Sellers to Buyers pursuant to Sections 6.11.1 and 6.11.4, the Contracts to be entered into by Buyers pursuant to the Separation Plan, and the services to be provided by Sellers to Buyers pursuant to the Transition Services Agreement, comprise all of the assets reasonably necessary to carry on the Business in all material respects as it is now being conducted.

    4.7 **Compliance with Law; Permits**.  Except as set forth on <u>Schedule 4.7</u>, the Business is currently in material compliance with all material Laws.  Each of the Sale Companies possess all licenses, consents, approvals, permits and other Governmental Approvals ("**Permits**") necessary to own, lease and operate its assets and conduct the Business as currently conducted, and the Asset Sellers possess all Permits necessary to own, lease and operate the Acquired Assets, except, in each case, where the failure to have such Permits would not have a Material Adverse Effect.  The representations and warranties relating to Environmental Laws and with Environmental Permits are exclusively set forth in Section 4.14.

    4.8 **Proceedings; Orders**.  Except for the pendency of the Bankruptcy Cases, and for the Claims and other items set forth in <u>Schedule 4.8</u> (and except with respect to compliance with Environmental Laws, which is covered by Section 4.14), there are no Proceedings or Orders pending against any of the Sale Companies or the Asset Sellers or, to the Knowledge of Sellers the JV Companies, and to the Knowledge of Sellers there are no Proceedings or Orders threatened against any of the Sale Companies, the Asset Sellers or the JV Companies with respect to the Combined Business.

    4.9 **Absence of Certain Changes**.  Except as set forth in <u>Schedule 4.9</u> or as otherwise contemplated or expressly permitted by this Agreement, since December 31, 2006: (i) the Business has been conducted only in the Ordinary Course of Business; (ii) there has not been any change or development in or affecting the business or operations of the Sale Companies that has had, or would reasonably be expected to have, a Material Adverse Effect; and (iii) Sellers have not taken or failed to take any action that has or would materially violate any of the restrictions set forth in Section 6.1.1.

4.10    **Tax Matters**.

4.10.1  Each Sale Company and Asset Seller has: (i) duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all material Tax Returns required to be filed and, when filed, were true, correct and complete; and (ii) paid all material Taxes shown thereon as due and owing except in the case of Filing Affiliates Taxes which may have been prohibited by the Bankruptcy Code.

4.10.2  The Sellers and Sale Companies have each withheld and paid all material Taxes required to have been withheld and paid in connection with amounts paid or owing to any Transferred Employee.

4.10.3  Except as set forth in Schedule 4.10.3, no Sale Company is a party to any Tax allocation, Tax sharing agreement or Tax indemnity arrangement or has any liability for Taxes of any person under Treas. Reg. 1.1502-6 (or any similar provision of state, local or foreign law), as a transferee or successor, by contract or otherwise, under which any Buyer could be subject to Tax or other Liability after the Closing.

4.10.4  Except as set forth in Schedule 4.10.4, or as reflected in the Historical Financial Statements, no Sale Company has received any: (i) notice that there is a dispute or claim with respect to the potential underpayment of Taxes or other deficiency; or (ii) any inquiry with respect to any Tax Return.  Except as disclosed in Schedule 4.10.4, all deficiencies asserted or assessments made as a result of any examinations with respect to, in connection with, associated with or related to, the Sale Companies have been fully paid or are fully reflected as a liability in the Historical Financial Statements.

4.10.5  [intentionally omitted]

4.10.6  No Sale Company is a party to any agreement, Contract, Arrangement or plan that has resulted or would result, separately or in the aggregate, in the payment of any excess parachute payments within the meaning of IRC Code Section 280G.

4.10.7  Except as set forth in Schedule 4.10.7, there are no tax liens on the Acquired Assets or on any of the assets of the Sale Companies that arose in connection with any failure (or alleged failure) to pay any Tax.

4.11    **Employee Benefits; Labor**

4.11.1  Schedule 4.11.1 contains a list of all U.S. Employees, Non-U.S. Employees, and employees of the Sale Companies, including for all such employees: (i) each such person's title or job/position/job code; (ii) each such person's job designation (i.e., salaried or hourly); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed (including without limitation those on layoff status) or not actively at work (due to, e.g., illness, short-term disability, sick leave, authorized leave or absence, etc.)); (v) each such person's current annual base rate of compensation; (vi) each such person's date of hire; and (vii) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, separation pay agreement), in each case, to the extent permitted to be disclosed under applicable Law (including local privacy laws).

36

4.11.2  <u>Schedule 4.11.2</u> sets forth a list of the Seller Employee Benefit Plans, including each Non-U.S. Benefit Plan.

4.11.3  Copies of the following materials have been delivered or made available to Buyer Parent with respect to each Seller Employee Benefit Plan to the extent applicable: (i) current plan documents, any related trust agreements, service provider agreements, insurance contracts or agreements with investment managers; (iii) the most recent summary plan description and summary of material modifications to the extent not included in the summary plan description in each case distributed to employees; (iv) current agreements and other documents relating to the funding or payment of benefits; and (v) the most recent actuarial valuation report, if applicable.

4.11.4  Except as set forth in <u>Schedule 4.11.4</u> or where the failure to comply would not have a Material Adverse Effect, the Seller Employee Benefit Plans are in compliance with their terms and applicable requirements of ERISA, the Code and other Laws (if applicable). Each Seller Employee Benefit Plan and related trust which is intended to be qualified within the meaning of Section 401 or 501, as applicable, of the Code has received a favorable determination letter as to its qualification and to the Knowledge of Sellers, nothing has occurred that could reasonably be expected to adversely affect such determination.

4.11.5  Except as: (i) set forth in <u>Schedule 4.11.5</u>; and (ii) routine claims for benefits by participants and beneficiaries, there are no pending or, to the Knowledge of Sellers, material threatened Proceedings with respect to any Seller Employee Benefit Plans.

4.11.6  Except as set forth in <u>Schedule 4.11.6</u>, no event or condition has occurred in connection with which any of the Sale Companies or Sellers or any member of the Controlled Group (as defined below) could be subject to any material Liability or Encumbrance under Title IV of ERISA.

4.11.7  None of the Sale Companies nor any member of the Controlled Group (as defined below) currently have or for the past five (5) years has had an obligation to contribute to a "multiemployer plan" as defined in Section 3(37) of ERISA or Section 414(f) of the Code.

4.11.8  With respect to each group health plan that is subject to Section 4980B of the Code maintained by any entity described in this Section 4.11.8, the Sale Companies and each member of the Controlled Group (as defined below) have complied with the continuation coverage requirements of Section 4980B of the Code and Part 6 of Subtitle B of Title I of ERISA, except where the failure to so comply would not have a Material Adverse Effect.  Except as set forth on <u>Schedule 4.11.8</u>, no Seller Employee Benefit Plan provides welfare coverage that extends after the termination of employment other than for continued coverage provided pursuant to the requirements of Section 4980B of the Code or other similar provision of state law. For purposes of this Agreement, "**Controlled Group**" means any trade or business (whether or not incorporated): (i) under common control within the meaning of Section 4001(b)(1) of ERISA with any of the Sale Companies; or (ii) which together with any of the Sale Companies is treated as a single employer under Section 414(t) of the Code.

37

4.11.9  Sellers are not in default in performing any of their obligations under any Seller Employee Benefit Plan or any related trust agreement or insurance contract.  Except as set forth on Schedule 4.11.9, all contributions and other payments required to be made by Sellers to any Seller Employee Benefit Plan with respect to any period ending before or at the Closing date have been made or reserves adequate for such contributions or other payments have been or will be set aside therefor and have been or will be reflected in the Historical Financial Statements in accordance with GAAP.  There are no material outstanding Liabilities of, or related to, any Seller Employee Benefit Plan other than Liabilities for benefits to be paid in the Ordinary Course of Business to participants in such Seller Employee Benefit Plan and their beneficiaries in accordance with the terms of such Seller Employee Benefit Plan.  Except as set forth on Schedule 4.11.9, there are no Contracts or other arrangements providing for any bonus or other payments to any Transferred Employees arising as a result of the transactions contemplated hereby.

4.11.10 No transaction contemplated by this Agreement will result in liability under Sections 302(c)(ii), 4062, 4063, 4064, or 4069 of ERISA or otherwise, with respect to Sellers or Buyers or any corporation or organization controlled by or under common control with any of the foregoing within the meaning of Section 4001 of ERISA, and no event or condition exists or has existed which would reasonably be expected to result in any such liability with respect to the foregoing within the meaning of Section 4001 of ERISA.

4.11.11  Schedule 4.11.11 lists all material Collective Bargaining Agreements. Sellers have given access or delivered to Buyer true, correct and complete copies of each of the Collective Bargaining Agreements.  Except as disclosed on Schedule 4.11.11, Sellers are, and for the past twelve (12) months have remained, in material compliance with each Collective Bargaining Agreement.  With respect to the transactions contemplated under this Agreement, any notice required under any Law or Collective Bargaining Agreement has been or prior to Closing will be given, and Seller will be in compliance with all bargaining obligations with any employee representative.

4.11.12 Except as disclosed on Schedule 4.11.12, with respect to the Business: (i) there is no labor strike, dispute, slowdown or stoppage actually pending or, to Sellers' Knowledge, threatened against or involving Sellers or any Sale Company; (ii) neither Sellers nor any Sale Company has in the past three (3) years experienced any work stoppage or other labor difficulty or organizational activity relating to any of its employees; (iii) no labor grievance relating to any employee of Sellers or any Sale Company is pending as of the date of Schedule 4.11.12; and (iv) neither Sellers nor any Sale Company has any labor negotiations in process with any labor union or other labor organization.  Except as set forth on Schedule 4.11.12 or as would not, have a Material Adverse Effect, there are no pending litigations, administrative proceedings, grievances, arbitrations, investigations or claims against Sellers or any Sale Companies whether under applicable Laws, Collective Bargaining Agreements, employment agreements or otherwise asserted by any present employee or former employee (or their representative) of any other Person as relates to the Business, including claims on account of or for: (a) overtime pay, other than overtime pay for work done during the current payroll period; (b) wages or salary for any period other than the current payroll period; (c) any amount of vacation pay or pay in lieu of vacation or time off; or (d) any violation of any

38

statute, ordinance or regulation relating to minimum wages or maximum hours at work, and, to Sellers' Knowledge, there are no such claims which have yet to be asserted.

4.11.13  With respect to each benefit plan, bonus, deferred compensation, severance pay, pension, profit-sharing, retirement, insurance, stock purchase, stock option, vacation pay, sick pay or other fringe benefit plan, arrangement or practice that is currently sponsored or maintained outside the jurisdiction of the United States by any Sale Company, that is not subject to the laws of the United States, and that covers an employee of a Sales Company that resides or works outside the United States (each a "**Non-U.S. Benefit Plan**"), the following representations are made with respect to those Non U.S. Benefit Plans:

A.  all employer and employee contributions, to the extent directly paid by the employer, to each Non U.S. Benefit Plan required by law or by the terms of such Non U.S. Benefit Plan have been made, or, if applicable, accrued in accordance with US GAAP; and

B.  each Non U.S. Benefit Plan required to be registered or approved has been registered or approved and has been maintained in good standing with applicable regulatory authorities.  Each Non U.S. Benefit Plan is now and always has been operated in material compliance with all applicable Laws.

4.12    **Intellectual Property**.

4.12.1  Schedule 4.12.1.A, Schedule 4.12.1.B and Schedule 4.12.1.C, respectively, list all Patents and Patent applications, all Trademark registrations and applications therefor, and all Copyright registrations and applications therefor, included in the Purchased Intellectual Property.  Except as: (i) set forth in Schedule 4.12.1.A; or (ii) instances in which such Patents or Patent applications are jointly owned with a third party (which are scheduled as such), and subject to Permitted Encumbrances and the rights and limitations established by the Material Contracts, Sellers own the entire right, title and interest in such Patents, Trademark and Copyright registrations and applications, and have the right to transfer Sellers' right, title and interest in them as set forth in this Agreement.

4.12.2  Subject to Permitted Encumbrances and the rights and limitations established by the Material Contracts, Sellers own or otherwise have the right to transfer all other Purchased Intellectual Property and license the Shared Intellectual Property as set forth in this Agreement.  There are no licenses to Affiliates of Steering Technology other than those set forth in Schedule 4.12.2.

4.12.3  Except as set forth in Schedule 4.12.3, (i) Sellers have not to their Knowledge infringed, misappropriated or otherwise violated, and the operation of the Business as currently conducted does not to the Sellers' Knowledge infringe, misappropriate or otherwise violate any Intellectual Property rights of any third party to any extent that would have a Material Adverse Effect; and (ii) Sellers have no Knowledge of any allegation by any third party of Intellectual Property infringement or misappropriation, resulting from the operation of the Business during the last three (3) years that would have a Material Adverse Effect.

4.12.4  Except as set forth in <u>Schedule 4.12.4</u>, Sellers have no Knowledge of any material infringement, misappropriation or other violation of the Purchased Intellectual Property by any Person that would have a Material Adverse Effect.

4.12.5  Except as set forth on <u>Schedule 4.12.5</u>, (i) Delphi has received no notice of a claim by any third party contesting the validity, enforceability, use or ownership of any of the material Purchased Intellectual Property within the past three (3) years that to Delphi's knowledge is currently outstanding or is threatened; and (ii) Sellers have taken reasonable measures to protect the confidentiality and value of Trade Secrets included in the Purchased Assets.

### 4.13    **Contracts**

4.13.1  <u>Schedule 4.13.1</u> sets forth a true and complete list of each of the following Contracts to which any of the Sale Companies, or any of the Asset Sellers with respect to the Business, is party or by which any of them is bound, other than Seller Employee Benefit Plans (collectively, the "**Material Contracts**"):

A.  Contracts (other than purchase order Contracts) involving the expenditure by the Sale Companies or the Asset Sellers in respect of the Business of more than $500,000 in any instance for the purchase of materials, supplies, equipment or services, excluding any such contracts that are terminable by the Sale Companies or the Asset Sellers without penalty on not more than one hundred eighty (180) days notice;

B.  Indentures, mortgages, loan agreements, capital leases, security agreements or other agreements for the incurrence of material Debt Obligations;

C.  Guarantees of obligations (other than endorsements made for collection) involving the potential expenditure by the Sale Companies or the Asset Sellers in respect of the Business after the date of this Agreement of more than $500,000 in any instance;

D.  Contracts under which any Seller or the Sale Companies has licensed material Purchased Intellectual Property to, or material Licensed Intellectual Property from, any other Person;

E.  Partnership, joint venture agreements or other agreements involving a sharing of profits or expenses by the Sale Companies or the relevant Asset Seller party thereto with respect to the Business;

F.  All Contracts containing any provision or covenant prohibiting or materially limiting the ability of any Sale Company to engage in any Business activity or in any region or compete with any Person;

G.  All Contracts (other than purchase order Contracts with Affiliates) between the Sale Companies or Asset Sellers with respect to the Business, on the one hand, and any Seller or its officers, directors or Affiliates (other than the Sale Companies or any of the Asset Sellers with respect to the Business).

40

H.    Contracts (other than purchase order Contracts) providing that a Sale Company or any Asset Seller in respect of the Business will receive future payments aggregating more than $2,500,000 per annum or $10,000,000 in the aggregate prior to the expiration of such Contract.

I.    Collective Bargaining Agreements, Works Council agreements, and similar agreements with any labor organization or employee representative;

J.    All letters of credit, performance bonds and other similar items issued and outstanding in connection with the Business; and

K.    Agreements compromising, settling or resolving any material dispute affecting a Seller or a Sale Company pursuant to which, on or after the execution date of this Agreement, any Seller, with respect to a matter that would otherwise become an Assumed Liability, or any Sale Company will be required to pay consideration valued in excess of $500,000 or to satisfy monitoring or reporting obligations to any governmental authority outside the Ordinary Course of Business.

4.13.2  Except as set forth in Schedule 4.13.2, and other than with respect to monetary defaults by Sellers under Material Contracts that are curable by payment of all Cure Amounts, if applicable, no event has occurred or would be reasonably likely to occur that constitutes a material default (except with respect to defaults that need not be cured under Section 365 of the Bankruptcy Code for Sellers to assume and assign such Material Contracts to Buyers, if applicable) by: (i) any of the Sale Companies or any Asset Seller under any Material Contract; or (ii) any other party to any Material Contract.  Schedule 4.13.2 identifies all Post-Petition Contracts included within the Material Contracts, other than immaterial Post-Petition Contracts and open purchase orders entered into in the Ordinary Course of Business.

4.13.3  The Sellers have provided to Buyer Parent a true and correct copy of all written Contracts disclosed on Schedule 4.13.1 (other than purchase orders and those subject to confidentiality provisions that prohibit disclosure to third parties), in each case together with all amendments, waivers or other changes thereto.

4.14    **Environmental Matters**.  Except as disclosed in Schedule 4.14, since January 1, 1999, to the Knowledge of Sellers:

4.14.1  The Business is in material compliance with Environmental Laws and with Environmental Permits applicable to the Business and the Real Property; and

4.14.2  None of the Sale Companies, or the Asset Sellers with respect to the Acquired Assets, have received any written notice, which is official and binding, from a Governmental Authority, alleging that the Business as currently operated violates in any material respects any Environmental Laws or Environmental Permits; and

4.14.3  The Sale Companies, and the Asset Sellers with respect to the Acquired Assets, have not received, and have no knowledge of the issuance of any Environmental Claim with respect to the Real Property;

41

4.14.4  Each Sale Company and Asset Seller with respect to the Acquired Assets has obtained and maintains in full force and effect all Environmental Permits required for the operation of the Business and occupancy of the Real Property, except for such failures to obtain and maintain in full force and effect Environmental Permits as would not cause a Material Adverse Effect;

4.14.5  No actions are pending, or to the Knowledge of Sellers threatened, to revoke, cancel, terminate or suspend any Environmental Permits, except as would not cause a Material Adverse Effect; and;

4.14.6  Sellers have delivered or otherwise made available in the Data Room to Buyers non privileged information in the possession of any Seller or any of its Affiliates of: (i) Phase I or Phase II environmental assessments of any Real Property; and (ii) any material reports, studies, analyses or test results pertaining to Hazardous Materials at, in, on, under or adjacent to any Real Property, or regarding Sellers' compliance with Environmental Laws applicable to the Business' use or ownership of any Real Property or applicable to any Real Property.

4.15  **Insurance**.  Schedule 4.15(a) contains a complete and correct list, in all material respects, of all material policies of insurance, other than Insurance Policies relating to multiple business lines of Delphi, covering any of the assets primarily used in or relating to the Business, other than Excluded Assets indicating for each policy the carrier, risks insured, the amounts of coverage, deductible, expiration date and any material pending claims thereunder. With respect to the Transferred Insurance Policies, all such policies are outstanding and in full force and effect and neither the Sale Companies, the Asset Sellers nor the Person to whom any Policy has been issued has received any notice of cancellation or termination in respect of any Policy or is in default thereunder.  Neither the Sale Companies, the Asset Sellers nor the Person to whom any Policy has been issued has received notice that any insurer under such Transferred Insurance Policies is denying coverage or defending under a reservation of rights clause.

4.16  **Personal Property Assets, Inventory**.

4.16.1  Except as set forth on Schedule 4.16.1, the Asset Sellers and Sale Companies have good title to, or hold by valid and existing lease or license, all Personal Property reflected as assets on the Transferable Balance Sheet or acquired after December 31, 2006, except with respect to assets disposed of in the Ordinary Course of Business since such date.  All such Personal Property is free and clear of all Encumbrances, other than Permitted Encumbrances, and is in good working order and condition, ordinary wear and tear excepted.

4.16.2  The Sale Companies and the Asset Sellers, with respect to the Acquired Assets, will own, or have valid leasehold interests in, all Personal Property and Inventory being transferred to Buyers under this Agreement, and to Sellers' Knowledge, all transferred Personal Property used by the Business are in such condition (considering age and purpose for which they are used) as to enable the Business to be conducted as currently conducted without material disruption.

4.16.3  Except to the extent identified in Schedule 4.16.3, the Inventory included in the Acquired Assets and of each Sale Company will, as of the Closing, be (i)  located at the

Real Property, (ii) of a quality usable and saleable in the Ordinary Course of Business, subject to normal allowances for spoilage, damage and outdated items, and (iii) free and clear of all Encumbrances other than Permitted Encumbrances.

4.16.4  Schedule 4.16.4 sets forth a list of substantially all machinery, equipment and capitalized tools with a book value greater than $100,000 included in the Acquired Assets or owned by a Sale Company.

### 4.17  **Real Property**.

4.17.1  **Leased Properties**.  Schedule 4.17.1 lists the address of all real property leased, subleased or equivalent leasehold rights in non-U.S. jurisdictions, by any of the Sale Companies or constituting Acquired Assets (the "**Leased Real Property**"), including any option to purchase the underlying property and leasehold improvements thereon and all security deposits deposited on or on behalf of Seller related to such leases.  Delphi has made available to Buyer Parent true and complete copies of the leases (including all amendments, extensions, renewals, guaranties and other agreements with respect thereto) (the "**Leases**") and subleases covering the Leased Real Property (as amended to the date of this Agreement).  With respect to the Leased Real Property, each lease and sublease and except as otherwise specified on Schedule 4.17.1 or where the failure of any of the following to be true and correct has not and would not reasonably be expected to have a Material Adverse Effect:

A.  The Leases are, to the Knowledge of Sellers, in all material respects, valid, binding, enforceable and in full force and effect, in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting creditors' rights generally and general equitable principles (whether considered in a Proceeding in equity or at law);

B.  (i) None of the Sale Companies, or the Asset Sellers or, to the Knowledge of Sellers, any other party to the Leases thereunder, is in material breach under the Leases, other than with respect to monetary defaults by the Asset Sellers under the Leases that are curable by payment of all Cure Amounts, if applicable, and, to the Knowledge of Sellers, no event has occurred which, with the delivery of notice or passage of time or expiration of any grace period would constitute a material breach of any Sale Company's or Asset Seller's obligations under the Leases (except with respect to breaches that need not be cured under Section 365 of the Bankruptcy Code for the Filing Affiliates to assume and assign the Leases to Buyer, if applicable); and (ii) none of the Sale Companies or the Asset Sellers has received a notice of breach with respect to the Leases.

4.17.2  **Owned Properties**.  Schedule 4.17.2 lists the address and of all real property owned by any of the Sale Companies or Asset Sellers or which constitutes Acquired Assets (the "**Owned Real Property**").  With respect to each such parcel of the Owned Real Property and except as otherwise specified on Schedule 4.17.2, the identified owner has good and marketable fee simple title, or equivalent title rights in non-U.S. jurisdictions, to the parcel of the Owned Real Property, free and clear of any Encumbrances, except for Permitted Encumbrances.

4.18    **No Brokers' Fees**.  Sellers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Buyers, the Sale Companies or the JV Companies would be liable (including any claim for a finder's fee or brokerage commission).

4.19    **Affiliate Transactions**.  Except as disclosed in <u>Schedule 4.19</u>, (i) no officer, director or Affiliate of any Seller provides or causes to be provided any assets, services or facilities used or held for use in connection with the Business, and (ii) the Business does not provide or cause to be provided any assets, services or facilities to any such officer, director or Affiliate.

4.20    **No Other Representations or Warranties**.  Except for the representations and warranties contained in this Article 4, (i) the Sellers make no other express or implied representation or warranty to Buyers, and (ii) no Seller is making any representations with respect to any plan(s) of Buyers for the future conduct of the Business, or any implied warranties of merchantability or fitness for a particular purpose.  For the avoidance of doubt, except for the representations and warranties contained in this Article 4, no warranty or representation is given on the contents of the documents provided in due diligence or with respect to the information contained in the Confidential Information Memorandum, Data Room, Management Presentations, reports or any financial forecasts or projections or other information furnished by Delphi or any Seller or their officers, directors, employees, agents or representatives or in any other documents or other information not contained in this Agreement or the Ancillary Agreements.

4.21    **Fair Disclosure**.  The information set forth in each Section of the Schedules shall be deemed to provide the information contemplated by, or otherwise qualify, the representation and warranties of the Sellers set forth in the corresponding section or subsection of the agreement and any other representation of the Sellers, but only to the extent that it is reasonably apparent on the face of the Schedule that it applies to such other representation.

5.    **REPRESENTATIONS AND WARRANTIES OF BUYERS**.

The Buyers hereby represent and warrant to Sellers as follows:

5.1    **Organization**.  Each Buyer is a legal entity duly organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization. Each Buyer has the full requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted, and is duly qualified or licensed or admitted to do business and is in good standing in the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed: (i) has not had and would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Buyers to consummate the transactions contemplated by this Agreement; or (ii) would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on Buyers.  Buyers have prior to the execution of this Agreement delivered true and complete copies of the certificate of incorporation and by-laws or similar Organizational Documents of each of the Buyers as in full force and effect on the date hereof.

5.2    **Authorization; Enforceability**.  Each Buyer has the requisite corporate power and authority to execute and deliver this Agreement and the Ancillary Agreements and perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Ancillary Agreements by each Buyer and the performance by each of them of their respective obligations hereunder and thereunder, in the case of Buyer Parent have been, and in the case of the other Buyers prior to the Closing Date will be, duly authorized by all necessary corporate action on the part of such Buyer and, upon such authorization, no other corporate or shareholder proceedings or actions are necessary to authorize or consummate this Agreement, the Ancillary Agreements or the transactions contemplated hereby or thereby.  This Agreement has been duly executed and delivered by Buyer Parent, and the Ancillary Agreements will be duly executed and delivered by the applicable Buyers and, assuming due authorization, execution and delivery by Sellers, constitutes, or will constitute, a valid and binding agreement of the applicable Buyers, enforceable against each of them in accordance with their respective terms, except as may be limited by applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting creditors' rights generally and general equitable principles (whether considered in a proceeding in equity or at law).

5.3    **No Conflicts or Approvals**.  The execution, delivery and performance by each Buyer of this Agreement and the Ancillary Agreements to which it is a party and the consummation by Buyers of the transactions contemplated hereby and thereby do not and will not: (i) violate, conflict with or result in a breach by such Buyer of the Organizational Documents of any Buyer; (ii) violate, conflict with or result in a breach of, or constitute a default by any Buyer (or create an event which, with notice or lapse of time or both, would constitute a default) or give rise to any right of termination, cancellation or acceleration under, any note, bond, mortgage, indenture, deed of trust, license, franchise, permit, lease, contract, agreement or other instrument to which such Buyer or any of their properties or assets may be bound; (iii) violate or result in a breach of any Governmental Order or Law applicable to any Buyer or any of their respective properties or assets; or (iv) except for applicable requirements of the HSR Act, the EC Merger Regulation and other applicable Competition/Investment Law, require any Governmental Approval, except, with respect to the foregoing clauses (ii), (iii) and (iv) above, as would not, individually or in the aggregate, have a material adverse effect on the ability of Buyers to consummate the transactions contemplated by this Agreement.

5.4    **Proceedings**.  There are no Proceedings pending or, to the Knowledge of Buyers, threatened against Buyers that could reasonably be expected to restrain, delay or inhibit the ability of Buyers to consummate the transactions contemplated by this Agreement.  None of the Buyers is subject to any Governmental Order that could reasonably be expected to restrain, delay or otherwise inhibit the ability of Buyers to consummate the transactions contemplated by this Agreement.

5.5    **Solvency**.  Upon the consummation of the transactions contemplated by this Agreement: (i) none of the Buyers will be insolvent; (ii) none of the Buyers or the other legal entities constituting the Business will be left with unreasonably small capital; (iii) none of the Buyers or the Business will have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of Buyers and the other legal entities constituting the Business will not be

45

impaired; and (v) immediately following Closing, Buyers individually and in the aggregate will have sufficient capital to continue the Business as a going concern.

5.6    **Anti-Money Laundering**.  Buyers are in compliance with: (i) all applicable provisions of  the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) ("**USA PATRIOT Act**") as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which any Buyer operates or does business.  Neither any Buyer nor any of its directors, officers or affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's ("**OFAC**") list of "Specially Designated Nationals and Blocked Persons" (the "**SDN List**") or otherwise the target of an economic sanctions program administered by OFAC, and no Buyer is affiliated in any way with, or providing financial or material support to, any such persons or entities.  Buyer Parent agrees that should it or any other Buyer, or any of their directors, officers or affiliates be named at any time prior to Closing on the SDN List, or any other similar list maintained by the U.S. Government, Buyer Parent will inform Delphi in writing immediately

5.7    **Investment Representations**.

5.7.1    Each Buyer who is acquiring Sale Securities is acquiring such Sale Securities for its own account solely for investment and not with a view to, or for sale in connection with, any distribution thereof in violation of the Securities Act or the applicable securities Laws of any other jurisdiction.  Each Buyer agrees that it will not transfer any of the Sale Securities, except in compliance with the Securities Act and with the applicable securities Laws of any other jurisdiction.

5.7.2    Each Buyer is an "accredited investor" as defined in Rule 501(a) promulgated under the Securities Act.

5.7.3    Each Buyer understands that the acquisition of the Sale Securities to be acquired by it pursuant to the terms of this Agreement involves substantial risk.  Each Buyer and its officers have experience as an investor in securities and equity interests of companies such as the ones being transferred pursuant to this Agreement and acknowledges that it can bear the economic risk of its investment and has such knowledge and experience in financial or business matters that each Buyer is capable of evaluating the merits and risks of its investment in the Sale Securities to be acquired by it pursuant to the transactions contemplated hereby.

5.7.4    Each Buyer further understands and acknowledges that the Sale Securities have not been registered under the Securities Act or under the applicable securities Laws of any other jurisdiction and agrees that the Sale Securities may not be transferred unless such transfer

is pursuant to an effective registration statement under the Securities Act or under the applicable securities Laws of any other jurisdiction, or, in each case, an applicable exemption therefrom.

5.7.5    Each Buyer acknowledges that the offer and sale of the Sale Securities has not been accomplished by the publication of any advertisement.

5.8    **No Inducement or Reliance; Independent Assessment**.

5.8.1    With respect to the Sale Securities, the Acquired Assets, the Business or any other rights or obligations to be transferred hereunder or under the Transfer Agreements or pursuant hereto or thereto, the Buyers have not been induced by and have not relied upon any representations, warranties or statements, whether express or implied, made by Delphi, any of its Affiliates, or any agent, employee, attorney or other representative of Delphi representing or purporting to represent Delphi or any Seller that are not expressly set forth herein or in the Transfer Agreements (including the Schedules and Exhibits hereto and thereto), whether or not any such representations, warranties or statements were made in writing or orally, and none of Delphi, any Affiliate of Delphi, or any agent, employee, attorney, other representative of Delphi or other Person will have or be subject to any Liability to Buyer Parent, any Buyer or any other Person resulting from the distribution to Buyer Parent, or Buyer Parent's use of, any such information, including the Confidential Information Memorandum and any information, documents or material made available in the Data Room or any Management Presentations or in any other form in expectation of the transactions contemplated by this Agreement.

5.8.2    Buyer Parent acknowledges that it has made its own assessment of the present condition and the future prospects of the Business and is sufficiently experienced to make an informed judgment with respect thereto.  Buyer Parent acknowledges that, except as expressly set forth in the representations and warranties contained in Article IV of this Agreement, neither Delphi nor any of its Affiliates has made any warranty, express or implied, as to the prospects of the Business or its profitability for Buyer Parent, or with respect to any forecasts, projections or business plans prepared by or on behalf of Delphi and delivered to Buyer Parent in connection with Buyer Parent's review of the Business and the negotiation and the execution of this Agreement.

5.9    **Financial Ability**.  Buyers have the financial ability and will have available at Closing, sufficient Cash in immediately available funds to pay the Preliminary Purchase Price and thereafter to pay the Purchase Price if greater than the Preliminary Purchase Price, and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement.

5.10    **Adequate Assurance of Future Performance**.  The Buyers have provided or will be able to provide, at or prior to Closing, adequate assurance of their future performance under each Assumed U.S. Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance will be necessary thereunder with respect to any Assumed U.S. Contract.  Buyer Parent acknowledges and agrees that if is necessary to provide a Contract counter-party with additional assurances to satisfy Buyers' obligations to provide adequate assurance in accordance with this

Section 5.10, all such costs and expenses or other actions required will be borne and performed by Buyers without recourse to Sellers.

      5.11   **No Brokers' Fees**.  Buyers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Sellers would be liable.

      5.12   **Compliance with Laws**.  Buyers are in compliance with all Laws applicable to Buyers, except with respect to those violations that could not reasonably be expected to result in the issuance of an order restraining, enjoining or otherwise prohibiting Buyers from consummating the transactions contemplated by this Agreement.

## 6.    COVENANTS AND AGREEMENTS.

### 6.1   Conduct of Business between Signing and Closing.

      6.1.1   Except as: (i) contemplated by this Agreement; (ii) disclosed on Schedule 6.1.1; (iii) required by Final Order of the Bankruptcy Court (pursuant to a motion, application or other request made by or on behalf of a Person other than any Seller or any Affiliates of any Seller); or (iv) required by or resulting from any changes of applicable Laws, from and after the date of this Agreement and until the Closing, Delphi will cause the Asset Sellers and the Sale Companies to (a) conduct the operations of the Business in the Ordinary Course of Business, (b) use commercially reasonable efforts to preserve intact the Business, to keep available the services of its current employees and agents (provided Sellers shall not be obligated to institute a retention or similar program) and to maintain its relations and good will with its suppliers, customers, distributors and any others with whom or with which it has business relations, (c) maintain appropriate levels of Inventory and (d) not take any action inconsistent with this Agreement or with the consummation of the Closing.  Except: (x) as contemplated by this Agreement or as disclosed on Schedule 6.1.1; or (y) as required by Final Order of the Bankruptcy Court (pursuant to a motion, application or other request made by or on behalf of a Person other than any Seller or any Affiliates of any Seller), from and after the date of this Agreement and until the Closing, Delphi will cause the Asset Sellers with respect to the Business and the Sale Companies to refrain from doing any of the following without the prior written consent of Buyer Parent (which consent will not be unreasonably withheld or delayed):

      A.    Split, combine or reclassify any capital stock or other equity interests or purchase or sell any capital stock or other equity interests of any Sale Company or JV Company or grant or make any option, subscription, warrant, call, commitment or agreement of any character in respect of any such capital stock or other equity interests; provided, however, that this will not limit the ability of any Sale Company or JV Company to pay cash dividends or distributions to Delphi or any of its Affiliates between the date hereof and the Closing Date;

      B.    Sell or otherwise dispose of Acquired Assets and assets of any Sale Company having an aggregate value exceeding $500,000, excluding sales of Inventory and sales of receivables to financial institutions or credit collection agencies, in each case in the Ordinary Course of Business;

C.      Merge or consolidate any Sale Company or JV Company with or into any other Person or enter into any agreement requiring any such merger or consolidation;

D.      In the case of any Sale Company, acquire Assets or commit to capital expenditures (or in the case of any Asset Seller, acquire Assets or commit to capital expenditures with respect to assets that would become Purchased Assets) with an aggregate value exceeding $1,000,000, in each case excluding acquisitions of Assets or capital expenditures made in the Ordinary Course of Business in accordance with the Business' budgeted capital expenditures;

E.      (i) In the case of any Sale Company, incur, assume or guarantee any Debt Obligations in excess of $1,000,000 or voluntarily purchase, cancel, prepay or otherwise provide for a complete or partial discharge in advance of a scheduled payment date with respect to any material Debt Obligations (in each case, other than intercompany Debt Obligations that are repaid on or before Closing); and (ii) in the case of any Seller with respect to the Business, incur, assume or guarantee any Debt Obligation that would become an Assumed Liability;

F.      Incur any Encumbrance on any assets of any Sale Company or any Acquired Assets, in each case, other than Permitted Encumbrances;

G.      Increase the cash compensation or grant the right to receive any severance, termination or retention pay of the Transferred Employees other than: (i) in the Ordinary Course of Business; or (ii) as required by any agreement in effect as of the date hereof or as required by Law;

H.      Enter into or amend any Seller Employee Benefit Plan, the consequence would be to increase any Liability to be assumed by Buyers;

I.      Enter into any new transaction with an Affiliate;

J.      Settle or compromise any Proceeding in excess of $2,500,000 with respect to an Assumed Liability, except for an amount less than or equal to that reserved on the Transferable Balance Sheet in respect of such settled or compromised Proceeding;

K.      Hire any individual with a base salary in excess of $150,000 per annum;

L.      With respect to the Sale Companies, make any material election relating to Taxes (except such that are consistent with past practice) or settle or compromise any material Tax liability or amend any material Tax return;

M.      Make any material change in the accounting methods or practices followed by the Business (other than such changes that are: (i) required by Law; (ii) made in conformance with GAAP; or (iii) required in connection with the preparation of the Historical Financial Statements);

N.      Enter into any partnership or joint venture agreement between any Sale Company and any other Person;

O.      Enter into, terminate or make any material amendment to a Material Contract (excluding Collective Bargaining Agreements) other than in the Ordinary Course of Business;

P.      Amend any Organizational Document of any Sale Company or the JV Companies;

Q.      Make any material change in its methods of management, marketing, accounting or operating or practices relating to payments;

R.      Fail to maintain insurance in a manner consistent with Sellers' past practice; or

S.      Agree or commit to do any of the foregoing.

6.2    **Bankruptcy Actions**.

6.2.1    As soon as practicable after the execution of this Agreement, Delphi will, and will cause the other Sellers that are Filing Affiliates to, file a motion or motions (and related notices and proposed orders) (the "**Sale Motion**") with the Bankruptcy Court and will use commercially reasonable efforts to obtain the approval and entry of (i) the Bidding Procedures Order, which order shall substantially conform to the provisions set forth in Exhibit 6.2.1.A (the "**Bidding Procedures Order**") and (ii) the Sale Approval Order, which order shall substantially conform to the provisions set forth in Exhibit 6.2.1.B (the "**Sale Approval Order**").

6.2.2    Delphi will use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the sale of the Purchased Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases (including all holders of Encumbrances and parties to the Contracts comprising the Acquired Assets), notice of the Sale Motion, the Sale Hearing (as hereinafter defined) and the objection deadline in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (as modified by orders of the Bankruptcy Court), the Bidding Procedures Order or other orders of the Bankruptcy Court, including General Order M-331 issued by the United States Bankruptcy Court for the Southern District of New York, and any applicable local rules of the Bankruptcy Court.

6.3    **Assumed Contracts; Cure Amounts**.

6.3.1    Concurrently with the filing of the Sale Motion, Delphi will, pursuant to a motion (which motion may be incorporated into the Sale Motion), move to assume and assign to Buyers the Pre-Petition Contracts, including those listed on Schedule 6.3, and assign the Post-Petition Contracts to Buyer (collectively, the "**Assumed and Assigned Contracts**") and will provide notice thereof to the Contract counterparties and all other parties in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court.  Delphi shall pay

all Cure Amounts as agreed to by Delphi and the Contract counter-party, or, absent such agreement, by order of Bankruptcy Court in the time and manner specified by the Sale Approval Order.  Such motion or subsequent notice shall identify the specific Cure Amount proposed for each Pre-Petition Contract and state that if not objected to by the objection deadline through a duly-filed pleading, such Cure Amount shall be the only cure required to assume such Contract pursuant to Section 365 of the Bankruptcy Code and/or assign it to Buyer and that such counter-party shall be barred and enjoined from asserting against Buyer, the Purchased Assets and Sellers that any additional defaults, breaches, or claims of pecuniary loss exists with respect to such Contract.  Buyer shall have the ability to add or delete Contracts to Schedule 6.3 up and through the time of the Sale Hearing in its sole and absolute discretion so long as the appropriate notice is provided to the Contract counter-party and any delay in approval of the assignability of and Cure Amount for such additional Contracts shall not affect the Closing; and after the Sale Hearing and up to the time of the Closing, Buyer shall have the ability to add Contracts to Schedule 6.3 so long as the appropriate notice and time period for objection is provided to the Contract counter-party and any delay in approval of the assignability of and Cure Amount for such additional Contracts shall not affect the Closing.  In the Sale Motion, Delphi shall provide for a mechanism reasonably satisfactory to Buyer to ensure that those Contracts to be assumed and assigned to Buyer at Closing are actually assigned to Buyer at Closing notwithstanding any contested Cure Amounts.

### 6.4    **Non-Competition**.

6.4.1    Delphi undertakes and agrees with Buyer Parent that for a period of four (4) years after the Closing Date, except with the consent of Buyer Parent, Delphi will not, and will procure that each Affiliate of Delphi will not, either on its own account or in conjunction with or on behalf of any person, firm or company, whether by sales, marketing or other activities, carry on or be engaged, whether as a shareholder, licensor of Intellectual Property, director, employee, partner or agent in carrying on any business which is engaged in the design, development, manufacture, remanufacture or sale of Products as carried on by the Business at the Closing Date (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 6.4.1 will not prohibit, in any way: (i) the acquisition of a controlling interest or merger with any Person, or a division or business unit thereof, which is not primarily engaged in a Competitive Business, provided that, Delphi will use commercially reasonable efforts to divest, as soon as practicable after such acquisition or merger, any portion of the business of such Person that constitutes a Competitive Business if the Competitive Business accounts for more than $250,000,000 in annual sales; (ii) the acquisition by Delphi or any of its Affiliated companies, directly or indirectly, of a non-controlling ownership interest in any Person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen (15%) percent or less of the sales or fifteen (15%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater); (iii) the acquisition by Delphi or any of its Affiliated companies, directly or indirectly, of less than five (5%) percent of the publicly traded stock of any Person engaged in a Competitive Business; (iv) provision of consulting services to, the license of any technology that Delphi or any Delphi Affiliate owns or has license to use to, or the financing (on its own behalf or on behalf of any other Person) of any Person for the purpose of designing or manufacturing on behalf of Delphi or any Delphi Affiliate or selling to Delphi or any Delphi Affiliate components and parts for automotive applications, other than the current or future Products; (v) consistent

with Delphi's troubled supplier practices, any direct or indirect activities of Delphi or any Delphi Affiliate to advise, operate, manage or finance a troubled supplier of Delphi or its Affiliates; or (vi) any business or activity conducted by Delphi or any Affiliate, joint venture (including KDAC), subsidiary or division of Delphi (excluding the Business) and any natural extensions thereof as of the Closing Date (each of which will be deemed not to breach this Section 6.4.1), including: (a) any activity conducted by KDAC; (b) the design, development, manufacture, remanufacture, or sale of sub-components of the type set forth on Schedule 6.4.1 of the Products and of integrated vehicle controllers containing steering functionality (provided that Delphi will be restricted from using the steering algorithms included in the Purchased Intellectual Property for such purposes) ; and (c) the sale and distribution of Products in the independent aftermarket.

6.4.2    In the event that the covenants contained in Section 6.4.1 are more restrictive than permitted by Law, the Parties agree that the covenants contained in Section 6.4.1 will be enforceable and enforced to the extent permitted by Law.

6.4.3    **Option**.

A.    If, within four (4) years after the Closing Date, Delphi acquires a Competitive Business whose annual sales are in excess of the limits established in Section 6.4.1 clause (i) above, Delphi will use commercially reasonable efforts to divest, as soon as practicable after such acquisition or merger, any portion of the Business of such Person that constitutes a Competitive Business (an "**After-Acquired Business**").  In the case of such acquisition, Delphi promptly will grant to Buyer Parent an option to acquire the portion of the After-Acquired Business which engages in the Competitive Business (the "**Restricted Portion**") at a price and upon such other terms and conditions to be agreed upon by Delphi and Buyer Parent, taking into account prevailing market conditions.

B.    With respect to the option provided for in Section 6.4.3.A, Delphi shall give written notice to Buyer Parent of such option within thirty (30) days after the acquisition of the After-Acquired Business (the "**Option Notice**").  Within thirty (30) days after Buyer Parent's receipt of the Option Notice, Buyer Parent shall notify Delphi in writing whether it exercises such option.  If Buyer Parent exercises the option, Delphi and Buyer Parent shall use their good faith efforts to negotiate the price of Buyer Parent's purchase of the Restricted Portion. If, within thirty (30) days after Buyer Parent exercises such option, Buyer Parent and Delphi are unable to agree on the purchase price for the Restricted Portion of the After-Acquired Business, or if Buyer Parent declines to exercise the option of to acquire the Restricted Portion of the After-Acquired Business, then within fifteen (15) days thereafter,  Delphi or its Subsidiary shall initiate preparations to conduct an "auction" of the Restricted Portion of the After-Acquired Business.  Delphi or its Subsidiary shall be obligated to use commercially reasonable efforts complete the auction within six (6) months after the date that Delphi or its Subsidiary becomes obligated to conduct an auction.  Such a sale shall be conducted by Delphi or its Subsidiary consistent with prevailing market practices for the so-called "auction" of a business.  Buyer Parent shall be invited to participate in such auction, but shall not be obligated to do so.

6.5    **Tax Matters; Cooperation; Preparation of Returns; Tax Elections**.

6.5.1    Asset Sellers will be responsible for the preparation and filing of all Tax Returns of Asset Sellers for all tax periods ending on or prior to the Closing, including without limitation amended returns, applications for loss carryback refunds and applications for estimated tax refunds.  Buyers will make available to Delphi during normal business hours (and to Delphi's accountants and attorneys) any and all books and records and other documents and information in its possession or control reasonably requested by Delphi to prepare these Tax Returns.  Delphi will be responsible for and will make all payments required with respect to any such Tax Returns.

6.5.2    For Sale Companies and JV Companies, Delphi will be responsible for the preparation and filing of all Tax Returns for all tax periods that are due on or prior to the Closing, including without limitation amended returns, applications for loss carryback refunds and applications for estimated tax refunds.

6.5.3    For Sale Companies and JV Companies, Buyers will be responsible for the preparation and filing of all Tax Returns for all periods that are due after the Closing (other than for Taxes with respect to periods for which the consolidated, unitary and combined Tax Returns of Delphi will include the operations of the Business).  For Sale Companies only, Buyer Parent will make all payments required with respect to any such Tax Return and shall be entitled to reimbursement from Sellers for the pre-Closing portion of such Taxes to the extent such Taxes were not already paid or otherwise reflected in the Closing Adjusted Net Assets Statement.

6.5.4    Sellers shall indemnify Buyers for any and all Taxes of the Sale Companies relating to periods ending on or prior to the Closing Date to the extent not provided for in the Closing Adjusted Net Assets Statement. Any indemnification pursuant to this Section 6.5.4 with respect to Delphi Polska Automotive Systems Sp. for any taxable year for Taxes shall be indemnified only to the extent such Taxes exceed the "tax benefit" (defined below) recognized by Delphi Polska Automotive Systems Sp. with respect to such taxable year.  For purposes of this Section 6.5.4, Delphi Polska Automotive Systems Sp. shall be deemed to recognize a tax benefit with respect to a taxable year if, and to the extent that, Delphi Polska Automotive Systems Sp.'s cumulative liability for Taxes through the end of such taxable year, calculated excluding any Tax items attributable to Tax losses and credit carryforwards existing on the Closing Date exceeds Delphi Polska Automotive Systems Sp.'s actual cumulative liability for Taxes through the end of such taxable year, calculated by taking into account any tax items attributable to the Tax losses and credit carryforwards existing on the Closing Date (to the extent permitted by relevant Tax law, and treating such Tax items as the last items claimed for any table year) provided, however, that if a tax benefit is subsequently reduced or eliminated due to a determination by a taxing authority that the Tax losses or credit carryforwards were not available in any particular year to offset a Tax of Delphi Polska Automotive Systems Sp., Sellers shall indemnify Buyer for the amount of any Taxes that would have been indemnified pursuant to this Section 6.5.4, by calculating the indemnification obligation amount (if any) based on the reduction or elimination of the tax benefits.

6.5.5    The Sellers and the Buyers will use commercially reasonable efforts and cooperate in good faith to exempt the sale, conveyance, assignments, transfers and deliveries to

be made to the Buyers hereunder from any transfer, documentary, sales, use, registration, recording, stamp, value-added and other such taxes (including all applicable real estate transfer taxes, but excluding any taxes based on or attributable to income or gains) and related fees (including notarial fees as well as any penalties, interest and additions to tax) ("**Transfer Taxes**") payable in connection with such sale, conveyance, assignments, transfers and, deliveries, to the extent provided in the Sale Approval Order, in accordance with Section 1146 of the Bankruptcy Code.  If Bankruptcy Court approval is granted for such exemption, then any instrument transferring the Purchased Assets to the Buyers will contain the following or similar endorsement:

> Because this [instrument] has been authorized pursuant to Order of the United States Bankruptcy Court for the Southern District of New York relating to a chapter 11 plan of [Seller], it is exempt from transfer taxes, stamp taxes, or similar taxes pursuant to 11 U.S.C. § 1146**.**

To the extent not exempt under Section 1146 of the Bankruptcy Code and approved in the Sale Approval Order, such Transfer Taxes arising out of or incurred in connection with this Agreement will be borne by the party upon whom the applicable law regulation or custom of the jurisdiction imposes the obligation to pay or, where no law, regulation or custom exists shall be paid by the Buyer.  The party that is legally required to file a Tax Return relating to Transfer Taxes will be responsible for preparing and timely filing such Tax Return.

6.5.6    Delphi and Buyer Parent will cooperate in connection with: (i) the preparation and filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or other proceeding in respect of Taxes related to the Business or the Acquired Assets.  Such cooperation includes direct access to accounting and finance personnel.

6.5.7    Sellers will, in their sole discretion, cooperate in good faith with Buyers and Buyers' agents to minimize any US federal and state payroll tax liabilities that either party may bear**,** including that the payroll taxes of the U.S. Transferred Employees will be treated in accordance with the Alternate Procedure set forth in Section 5 of the Revenue Procedure 2004-53.

6.5.8    Sellers will provide Buyers with such certifications as are necessary to exempt all payments made hereunder from withholding under Internal Revenue Code Section 1445.

6.5.9    Buyer Parent will not make any election under Internal Revenue Code Section 338 for any Sale Company or JV Company without the written consent of the Securities Sellers.

6.5.10   Sellers will assign to Buyers, and will cooperate with Buyers to obtain any necessary approvals or consents to affect such assignment, any and all interests in, or rights to, any property tax abatements, incentive agreements, or other similar arrangements with any taxing authority primarily related to the Business or the Acquired Assets to the extent allowed under applicable law; provided, however, that Buyers shall pay to Sellers promptly upon

receiving such credit (the "Brownfield Tax Credit Amount") an amount equal to (i) the amount of any credits attributable to the Steering Buena Vista Brownfield Tax Credit Agreement for Project number M-0505 that are received and utilized by Buyers to offset their tax liability under the Michigan Single Business Tax (or any successor tax) for any taxable period ending after the Closing Date, multiplied by (ii) a fraction, the numerator of which is the qualified expenditures made by Sellers pursuant to the Steering Buena Vista Brownfield Tax Credit Agreement for Project number M-0505 prior to the Closing Date, and the denominator of which is the total amount of all qualified expenditures made pursuant to the Steering Buena Vista Brownfield Tax Credit Agreement for Project number M-0505.  The amount of expenditures made by Sellers prior to the Closing Date will be determined based on verifiable documentation provided by Seller.  Seller and Buyer agree to treat any payments made pursuant to this Section 6.5.10 as adjustments to the Purchase Price for all Tax purposes.

      6.6    **Employees; Benefit Plans; Labor Matters**.  Seller and Buyer will collectively update <u>Schedule 4.11.1</u> as of the day prior to Closing.

      6.6.1    **Transferred Non-U.S. Employees**.  Effective as of the Closing, the relevant Buyer will assume the employment Contracts and all related obligations of any Non-U.S. Employees if and to the extent required by applicable Transfer Regulations or the applicable Transfer Agreement, and will take all necessary steps to assume the employment and related obligations of all employees employed by the Sale Companies immediately prior to Closing.  In addition, the Parties will use commercially reasonable efforts to cause any employment Contracts and/or continued employment (as applicable) of Non-U.S. Employees whose Contracts or continued employment (as applicable) do not transfer by their reporting to work, by operation of Law (including a Transfer Regulation), by operation of this Agreement or otherwise to be novated from the relevant Asset Seller or other Seller-Affiliated employer to the relevant Buyer or other Buyer-Affiliated employer in accordance with the terms of the applicable Transfer Agreement.

      6.6.2    **Transferred U.S. Employees**.

      A.    Effective as of the Closing, the relevant Buyer will offer employment to all U.S. Employees, including employees on layoff.  U.S. Employees who accept Buyers' offer of employment (by reporting to work or otherwise) will be referred to as Transferred U.S. Employees.

      B.    For all Transferred U.S. Employees designated as U.S. Salaried Employees, Buyers' offer of employment will be on terms that provide salary and benefit packages substantially comparable in the aggregate to those in place at Sellers immediately prior to Closing.  Prior to tendering such offers, Buyers will provide Sellers with information sufficient to satisfy Sellers that such offers meet the "substantially comparable in the aggregate" requirement.  Sellers' satisfaction that Buyers' offers meet this requirement will not be unreasonably withheld.  For all Transferred U.S. Salaried Employees, Buyers will maintain the requisite level of compensation and benefits for a minimum of one (1) year from the Closing Date;  <u>provided</u>, <u>however</u>, that, where the level of compensation or benefits of any such employees is governed by a Contract containing a different duration period, Buyers will abide by the terms of such Contract; and <u>provided further</u> that Buyers are permitted (but not required to)

reduce or otherwise modify the employment terms and conditions of the Transferred U.S. Salaried Employees consistent with any across-the-board modifications made by Sellers to the terms and conditions of similarly-situated salaried employees at Sellers during the one (1)-year period following the Closing Date.

(1)  Nothing in this Agreement, including but not limited to the one (1) year requirement referenced immediately above in this Section 6.6.2.B, will limit the ability of Buyer to terminate the employment of any Transferred U.S. Salaried Employee at any time following the Closing and for any reason, including with cause.

(2)  Notwithstanding Buyer's rights under Section 6.6.2.B.1, to the extent that Buyer separates any Transferred U.S. Salaried Employee during the one (1) year period following the Closing Date under circumstances that would render the Transferred U.S. Salaried Employee eligible for severance benefits had such separation occurred at Sellers, Buyers will provide such separated Transferred U. S. Salaried Employees the greater of (a) the severance benefits provided for under the terms of Sellers' severance plan applicable at Closing, taking into account the Transferred U.S. Salaried Employee's combined Seller and Buyer service in accordance with Section 6.6.5.F or (b) the severance benefits under any applicable Buyers' severance plan or policy.

C.  Terms and conditions of unionized Transferred U.S. Employees designated as U.S. Hourly Employees will be as determined by applicable Collective Bargaining Agreements.

6.6.3  **Miscellaneous Transferred Employee Covenants**.

A.  Sellers will retain responsibility for all Liabilities for workers' compensation benefits related to injuries or illnesses incurred by Transferred Asset Seller Employees prior to the Closing, provided that claims for such Liabilities are filed within six (6) months of the date on which such employee becomes a Transferred Asset Seller Employee.

B.  Sellers will be responsible for and shall pay to each Transferred Employee, subject to applicable Bankruptcy Court approvals, at the later of Closing or when such payments are to be made to Seller's respective U.S. or Non-U.S. Employees, any profit sharing or incentive compensation (including bonuses) due such Transferred Employees for the calendar year in which the Closing occurs on a pro-rata basis using the number of days worked by the Transferred Employees for Sellers.

C.  Buyers will assume and be responsible for all accrued and unutilized vacation pay with respect to the Transferred Employees and all such Liabilities shall be reflected in the Closing Statement of Adjusted Net Assets.

56

6.6.4  **Collective Bargaining Agreements**.  Buyers will assume the terms and conditions of all of the Collective Bargaining Agreements, as modified in the case of Sellers' U.S. Collective Bargaining Agreements by: (i) any Bankruptcy Court Proceedings, including but not limited to, Sellers' motions under Section 1113 and 1114 of the Bankruptcy Code; (ii) any consensual agreement reached between Sellers and the UAW; (iii) an approved plan of reorganization in connection with the Bankruptcy Cases; or (iv) the Effects MOU.  The Parties agree that, to the maximum extent possible, this Agreement will be interpreted in a manner consistent with the Effects MOU, however, if any provision of the Effects MOU is inconsistent with the terms of this Agreement, the provisions of the Effects MOU will govern.  Buyers will recognize the seniority status of all Transferred Asset Seller Employees who are employed in accordance with a Collective Bargaining Agreement for all purposes of continued employment with Buyers.

6.6.5  **Inactive U.S. Employees**.

A.  U.S. Employees who are not active employees as of the Closing ("**Inactive Employees**") due to e.g., illness, short-term disability, sick leave, family medical leave, or other approved leave of absence will remain Seller's responsibility until such employee commences employment with Buyer.  U.S. Employees on layoff status are not Inactive Employees for purposes of this Agreement.

B.  When an Inactive Employee is able to return to active status in accordance with Sellers' leave policies, and provided that such return occurs within twelve (12) months of the Closing unless such Inactive Employee's reinstatement thereafter is otherwise required by Law, Buyer must offer employment to such individual in accordance with Section 6.6.2 and, provided such individual accepts Buyers' offer of employment, such individual will be considered a Transferred U.S. Employee as of such date.  Buyer shall have no liability for any Inactive Employee until the date such employee becomes a Transferred U.S. Employee.

6.6.6  **Employee Benefit Plans**.

A.  The applicable Buyers will assume (or cause the Sale Companies to retain) all accrued pension liabilities and assets for all Transferred Non U.S. Employees and all current and former employees of the Sales Companies.  The parties will comply with the specific mechanism for transfer of applicable pension liabilities and assets as specifically set out in the relevant Transfer Agreement.

B.  Seller will retain all assets and Liabilities under the Seller Employee Benefit Plans that are "employee benefit pension plans" as defined in Section 3(2) of ERISA for the benefits accrued prior to Closing for any Transferred U.S. Employees.  Subject to Buyers obligations under the Seller U.S. CBAs to be assumed pursuant to Section 6.6.4 and Section 6.6.3.C under which Buyer may be obligated to establish defined benefit plans, nothing contained in this Agreement requires Buyers to establish a defined benefit plan with respect to any Transferred U.S. Employees.

C.    Sellers will retain responsibility and liability for retiree welfare benefits (including, but not limited to, medical, dental and life insurance benefits) to any Transferred U.S. Salaried Employee who is eligible for such benefits and retirement eligible as of the Closing in accordance with the applicable Seller Employee Benefit Plans.   Buyers will assume the retiree welfare benefit obligations of Sellers (including, but not limited to, medical, dental and life insurance benefits) for all other Transferred U.S. Salaried Employees (i.e., Transferred U.S. Salaried Employees hired by Sellers prior to January 1, 1993 who are eligible for future retiree welfare benefits under the existing terms of the applicable Seller Employee Benefit Plans).

D.    Transferred U.S. Employees' and their dependents' and beneficiaries' active participation in and eligibility for benefits under the Seller Employee Benefit Plans (other than vested pension benefits) will cease after the expiration of transition services, subject to the terms of the Transition Services Agreement.  Notwithstanding the preceding sentence, the Seller Employee Benefit Plans which are "employee benefit welfare plans" as defined under Section 3(1) of ERISA will retain liability for all claims incurred at any time under the terms of such plans prior to Closing.  A claim will be deemed incurred:

(1)   on the date of the occurrence of death or dismemberment in the case of claims under life insurance and accidental death and dismemberment Seller Employee Benefit Plans;

(2)   on the date on which the service or treatment is provided in the case of claims under medical, hospital, dental and similar Seller Employee Benefit Plans; or

(3)   on the date immediately following a U.S. Employee's last day worked on which a physician legally licensed to practice medicine certifies to total disability under the applicable Seller Employee Benefit Plan.

E.    Transferred U.S. Employees' and their dependents' and beneficiaries' participation in and eligibility for benefits under the Buyer Employee Benefit Plans will commence as of the Closing.

F.    Buyer will recognize a Transferred Asset Seller Employee's pre-Closing credited and length of service with Seller for eligibility and vesting purposes but, subject to the requirements of Section 6.6.6.A with respect to the Transferred Non-U.S. Employees, not benefit accrual purposes with respect to any Buyer Employee Benefit Plans.  Subject to applicable Law, Seller will recognize a Transferred U.S. Employee's post-Closing service with Buyer (and its Affiliates that are within Buyer's Controlled Group as defined under ERISA and the Code) for purposes of pension vesting, eligibility and early retirement subsidies.  However, in no case will credited or length of service be recognized under this provision if such recognition will cause a duplication of compensation or benefits as between Seller and Buyer**.**

6.6.7 **Severance**.  Buyers will assume all obligations and liabilities relating to any claims for severance or termination (actual or constructive) payments or benefits by Transferred Employees arising from (i) the transactions contemplated under this Agreement (to the extent such agreements and arrangements are set forth or generally described on Schedule 6.6.7) or (ii) any actions taken by Buyers after the Closing, including terminating or reducing the compensation of any Transferred Employees after the Closing.

6.6.8 **COBRA**.  Seller will retain all obligations relating to compliance with the continuation health care coverage requirements of IRC Section 4980B and Sections 601 through 608 of ERISA regarding qualifying events in regard to Transferred U.S. Employees arising from the transactions contemplated under this Agreement.

6.6.9 **WARN Act**.  Buyers will assume all obligations and liabilities, if any, relating to the Worker Adjustment and Retraining Notification Act and any similar applicable foreign, state or local law, regulation or ordinance (collectively, the "**WARN Act**"), if any, by Transferred Asset Seller Employees arising on or after the Closing Date of the transactions contemplated under this Agreement; provided, however, that on or before the Closing Date Sellers shall provide Buyer with a list of employee layoffs, by location, implemented by Sellers in the 90-day period preceding the Closing Date.  Sellers will retain all other obligations and liabilities relating to the WARN Act for layoffs implemented by Sellers prior to the Closing Date of the transactions contemplated under this Agreement; provided, however, that in no event shall Seller be responsible for any WARN Act liabilities arising in whole or in part due to layoffs implemented by Buyers after the Closing.

6.6.10 **Grievances**.  Seller will retain responsibility to administer and all liability for labor grievances and arbitration proceedings (collectively the "**Grievances**") involving claims of Transferred Asset Seller Employees based on events occurring prior to the Closing, if filed within ninety (90) days after Closing.  Buyer will timely notify Seller of any Grievances filed after the Closing which relate to claims based on events occurring prior to the Closing.  Buyer will be responsible to administer and bear all liability for Grievances involving claims based on events occurring on or after the Closing.  To the extent the administration or resolution of any Grievances requires both the Buyer's and Seller's participation, the following apply:

A.   Buyers and Sellers will cooperate in the defense of the Grievances.

B.   Buyer will not settle any Grievance without Sellers' consent if such settlement will result in Liability for Sellers.  Such consent will not be unreasonably withheld.

C.   Sellers will not settle any Grievance without Buyers' consent if such settlement will result in Liability for Buyer.  Such consent will not be unreasonably withheld.

D.   If the seniority of an employee is reinstated as a result of the disposition of a Grievance or Governmental Order, Buyers will reinstate the employee as if such employee had been a Transferred Asset Seller Employee as of the Closing.

E.   For Transferred Asset Seller Employees who have been continuously employed, back pay Liability to the extent relating to an event, occurrence or cause

59

of action arising prior to the Closing will be allocated to Sellers.  Liability relating to an event, occurrence or cause of action arising subsequent to the Closing will be allocated to Buyers.

F.    The Parties will discuss treatment of Grievances involving unusual circumstances or events that continue before and after the Closing.

G.    If either party withholds consent to a settlement or processing of a Grievance recommended by the other party or elects to continue to defend the Grievance, then such party will be liable for the portion of the Liabilities resulting from the ultimate disposition of such Grievance (or subsequent settlement) which is in excess of the liability that would have resulted from the settlement recommended and rejected.

6.6.11    **Cooperation**.  Sellers and Buyers will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Section 6.6.

6.6.12    **Union and Works Council Notifications**.  Sellers and Buyers will reasonably cooperate in connection with any notification required by Law to, or any required consultation with, or the provision of documents and information to, the employees, employee representatives, work councils, unions, labor boards and relevant government agencies and governmental officials concerning the transactions contemplated by this Agreement.

6.6.13    **No Third Party Rights**.  Nothing in this Section 6.6 and its subparts, express or implied, shall create a third party beneficiary relationship or otherwise confer any benefit, entitlement, or right upon any person or entity other than the parties hereto or serve to amend or create any employee benefit plan or arrangement.

6.6.14    **Sale Company Employees**.  If reasonably requested by Delphi, the Buyers will, or will cause the Sale Companies to, take any and all reasonable actions necessary or appropriate to confirm assumption of all Liabilities assumed hereunder or under any Transfer Agreement in respect of employees (both current and former) of the Sale Companies.

6.7    **Contact with Customers and Suppliers**.  For purposes of Buyers' transition efforts, Sellers shall provide Buyers or their representatives upon reasonable notice and so long as such access does not unreasonably interfere with the business operations of any Seller or Sale Company, reasonable access during normal business hours to the employees, facilities, and books of the Business.  Buyers shall not communicate with customers and suppliers of the Business without the prior consent of Delphi, which consent shall not unreasonably be withheld or delayed.  The rights of access granted pursuant to this Section 6.7 shall not include environmental testing of the Real Property.

6.8    **Technical Documentation**.  Sellers have delivered, or will deliver on or before the Closing, to the Buyer, a copy of all Technical Documentation included in the Acquired Assets.  For a period of not less than ten (10) years commencing at the Closing, Buyers will use reasonable efforts to maintain all Technical Documentation applicable to Product design, test, release and validation at a location at which it will be reasonably accessible to Delphi upon request.  During such ten (10) year period, Buyers will not destroy or give up possession of the final copy of such Technical Documentation without offering Delphi the opportunity to obtain a

60

copy of such documentation at Delphi's expense but without any payment to Buyers.  The use of this Technical Documentation is subject to the limitations of Section 6.11.2.

6.9    **Books and Records and Litigation Assistance From and After Closing**.

6.9.1    Buyers will preserve and keep all books, records, computer files, software programs and any data processing files delivered to Buyers by Seller and its Affiliates pursuant to the provisions of this Agreement for a period of not less than five (5) years from the Closing Date, or for any longer period as may be required by any Law, Governmental Entity Order or in connection with any ongoing litigation, audit or appeal of Taxes, or Tax examination, at Buyers' sole cost and expense.  During such period, Buyers will: (i) provide Sellers with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of each facility included within the Business; and (ii) make such books and records available to Seller and its Affiliates as may be reasonably required by Seller and its Affiliates in connection with any Proceedings against or governmental investigations of Sellers and their Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Sellers and their Affiliates, the Business or the Acquired Assets.  Sellers or their Affiliates will reimburse Buyers for the reasonable out-of-pocket expenses incurred in connection with any request by Sellers to make available records pursuant to the foregoing sentence.  In the event Buyers wish to destroy or dispose of such books and records after five (5) years from the Closing Date, it will first give not less than ninety (90) days' prior written notice to Seller, and Seller will have the right, at its option, upon prior written notice given to Buyers within sixty (60) days of receipt of Buyers' notice, to take possession of said records within ninety (90) days after the date of Buyer's notice to Sellers' hereunder.

6.9.2    Sellers will preserve and keep all books, records, computer files, software programs and any data processing files relating to the Business in accordance with Seller's record retention plans, or for any longer period as may be required by any Law, Governmental Entity Order or in connection with any ongoing litigation, audit or appeal of Taxes, or Tax examination, at Sellers' sole cost and expense.  During such period, Sellers will: (i) provide Buyers with such documents and information as necessary, consistent with past practice, to complete the accounting books and records of each facility included within the Business; and (ii) make such books and records available to Buyers and their Affiliates as may be reasonably required by Buyers and their Affiliates in connection with any Proceedings against or governmental investigations of Buyers and their Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Buyers and their Affiliates, the Business or the Acquired Assets.  Buyers or their Affiliates will reimburse Sellers for the reasonable out-of-pocket expenses incurred in connection with any request by Buyers to make available records pursuant to the foregoing sentence.

6.9.3    Each Party will, from time to time, at the reasonable request of the other (the "**Requesting Party**"), cooperate in providing the Requesting Party and their Affiliates (as appropriate) (to the extent possible through Transferred Employees) with technical assistance and the information described in the last sentence of this Section 6.9.3 in respect of any claims brought against the Requesting Party and their Affiliates involving the conduct of the Business prior to Closing, including consultation and/or the appearance(s) of such persons on a reasonable

basis as expert or fact witnesses in trials or administrative proceedings. The Requesting Party will reimburse, indemnify and hold harmless the other party and its Affiliates for their reasonable, actual direct out-of-pocket costs (travel, employee time (other than for clerical services), hotels, etc.) of providing such services and reasonable attorney's fees and costs associated therewith. In particular, the Parties, for themselves and on behalf of their Affiliates, agree to, at the Requesting Party's sole cost: (i) retain all documents required to be maintained by Law and all documents that may reasonably be required to establish due care or to otherwise assist a Party or its Affiliates in pursuing, contesting, or defending such claims, (ii) make available their documents and records in connection with any pursuit, contest or defense, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by any privilege in favor of such Party and their Affiliates must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, the Party must notify the Requesting Party of the existence of such privileged documents); and (b) the Requesting Party and their Affiliates will agree to keep confidential documents and records that are confidential or are subject to trade secret protection); (iii) promptly respond to discovery requests in connection with such claim understanding and acknowledging that the requirements of discovery in connection with litigation require timely responses to interrogatories, requests to produce and depositions and also understanding and acknowledging that any delays in connection with responses to discovery may result in sanctions; (iv) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to interfere materially with Buyers' business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Requesting Party and their Affiliates in connection with such claim, including investigation into claims and occurrences described in this Section and preparing for and giving factual and expert testimony at depositions, court proceedings, inquiries, hearings and trial; and (v) make available facilities and exemplar parts for the sole and limited use of assisting the Requesting Party and their Affiliates in the contest or defense.

      6.10    **Corporate Names.**  Buyers will have the right (including the right to authorize its relevant Affiliates) to continue to sell or dispose of any existing inventories or service materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of Delphi or any Affiliate of Delphi for a period of no more than one hundred and twenty (120) days after the Closing Date in a manner consistent with past practice of the Business and the name and reputation associated therewith, provided that Buyers and their Affiliates will clearly indicate on all written materials related to such sale or disposition, including business cards, stationery, purchase orders, invoices and the like, that the Business is owned by Buyers and their Affiliates and is no longer affiliated with, and Buyer and its Affiliates do not represent, the Sellers or any Affiliate of Seller.

      6.10.1  Buyers will promptly, and in any event within one hundred and twenty (120) days of the Closing Date (the "**Corporate Trademark Use Period**"), cease all use and will not permit will cause the Sale Companies and the Business to cease all use, of the name "Delphi" and any trademarks, trade names, brandmarks, brand names, trade dress or logos relating or confusingly similar thereto (including on any signs, billboards, advertising materials, telephone listings, labels, stationery, office forms, packaging or other materials of the Sale Companies) in connection with the businesses of the Sale Companies or otherwise.

6.10.2  Immediately following the Closing, Buyers will cause each of the Sale Companies, and will use commercially reasonable efforts to cause each JV Company, to amend its certificate of incorporation, partnership agreement, limited liability company agreement and other applicable documents, in order to change the names of such companies to a name not containing the word "Delphi", with such changes to take effect pursuant to the terms of the respective transfer deed governing the sale of each Sale Company and JV Company.  Buyers will make all required filings with Governmental Authorities to effect such amendments.  If any preceding change is not permissible by law or commercially reasonable within such Corporate Trademark Use Period, the Sale Companies or JV Company shall operate under a "d/b/a" or other similar business name.

6.10.3  If Seller believes that Buyer has breached or failed to perform in any material respect any of Buyer's obligations contained in Sections 6.10.1 and 6.10.2, Seller shall provide Buyer with written notice of the alleged breach.  Seller's rights to remedy for Buyer's breach of its obligations under Sections 6.10.1 and 6.10.2 shall be exercisable only if Buyer has failed to cure such breach with thirty (30) days after written notice thereof.  Each of the Parties hereto acknowledges and agrees that the remedy at Law for any material breach of the requirements of this Section 6.10 would be inadequate, and agrees and consents that without intending to limit any additional remedies that may be available, temporary and permanent injunctive and other equitable relief may be granted without proof of actual damage or inadequacy of legal remedy in any Proceeding which may be brought to enforce any of the provisions of this Section 6.10.

6.10.4  Nothing herein shall prevent or limit the rights of Buyers to use the name "Saginaw Steering."

6.11  **Information Technology; Intellectual Property Rights and Licenses.**

6.11.1  **License to Buyers**.  Delphi hereby grants, on behalf of itself and its Affiliates, to Buyers, as of the Closing Date, but subject to any restrictions arising from rights granted to third parties prior to the Closing Date, a worldwide, perpetual, paid-up, royalty free, non-exclusive license to the Shared Intellectual Property (other than the Excepted Shared Intellectual Property identified on Schedule 6.11.1) only for the use, development, manufacture (including the right to have made), import, export and sale of current and future Products and associated services.  With respect to copyrighted material such as Software, such license includes the right to reproduce, prepare derivative works of, perform, display and distribute such material. The license granted to Buyer under this Section 6.11.1 does not extend to the Excluded Products identified on Schedule 6.11.1.A and is not assignable in whole or in part except as provided in Section 12.5.

6.11.2  **License to Sellers**.  Buyer, on behalf of itself and its Affiliates, hereby grants to Sellers and their Affiliates, as of the Closing Date, a worldwide, perpetual, paid-up, royalty free, non-exclusive license only for the use, development, manufacture (including the right to have made), import, export and sale of products and services of the type provided by Sellers and their Affiliates as of the Closing Date (excluding the Products) using any Purchased Intellectual Property (other than steering algorithms), subject to any restrictions arising from

rights granted to third parties prior to the Closing Date.  Such license is not assignable in whole or in part except as provided in Section 12.5.

6.11.3 **Further Understandings**.  It is further understood and agreed that the licenses granted above in this Section 6.11: (i) include the right for the licensed party to sub-license without the consent of the other party (x) to an Affiliate or (y) in connection with a divestiture of part of the Business (in the case of Buyer) or part of the retained Delphi business (in the case of Sellers) or in either case, divestiture of a product line; and (ii) do not include any right to use any Trademark Rights. It is further understood and agreed that the Parties will cooperate in enforcing the Shared Intellectual Property upon one party's request and the requesting party's payment of reasonable expenses.

6.11.4 **Shared Licensed Intellectual Property**.  Delphi shall extend and hereby grants to Buyer rights under the Shared Licensed Intellectual Property to the extent that such licenses can be extended to Buyer, including sublicense rights from General Motors and EDS and Delphi shall upon any request by any Buyer, grant a sublicense to any entity that is a successor or assignee of any portion of the Business operated by such Buyer.

6.11.5 **Transfer of Proportional Share of Licenses**.  For those Shared Software Licenses set forth on Schedule 6.11.5, Sellers shall transfer to Buyers the number of license seats or other license rights specified for each applicable license.   For any Shared Software Licenses not set forth on Schedule 6.11.5, Sellers shall transfer to the applicable Buyers a proportional share of license seats or other license rights or the number of license seats currently used in the Business for those Shared Software Licenses, but Sellers shall not transfer a proportional share of license seats or other license rights for Corporate Shared Services Licenses.  For clarity, Sellers shall also transfer to the applicable Buyers all Software licenses primarily used in the Business.  If Sellers are unable to obtain by the Closing any necessary consents to assign to Buyers any such Shared Software Licenses or Software licenses primarily used in the Business (other than Corporate Shared Services Licenses), then, notwithstanding Section 2.4, at Buyers' reasonable request, Sellers shall arrange for Buyers to obtain such licenses from the applicable Third Party Licensors.  Buyer shall be responsible for and pay reasonable costs up to $500,000 for obtaining necessary consents or replacement licenses for any Shared Software Licenses or software licenses primarily used in the Business, and Sellers shall be responsible for all reasonable costs that exceed $500,000.  Sellers shall be responsible for any obligations under any Shared Software Licenses or Software licenses  primarily used in the Business that arise prior to the Closing Date, including, for example, maintenance payments or other fees due to applicable Third Party Licensors.  After the Closing Date, Buyer acknowledges that it shall be responsible for the costs of obtaining and making payments under any post-Closing maintenance agreements required in order to use the foregoing license rights and such costs shall not be applied to the $500,000 deductible.

6.11.6 **Corporate Shared Services Licenses**.  Sellers shall not be obligated to transfer to the applicable Buyers any license seats or other license rights for Corporate Shared Services Licenses, including any such licenses currently used for the benefit of the Business except that Sellers shall purchase or transfer Replacement Licenses and Buyers shall reimburse Sellers for the reasonable costs of such Replacement Licenses up to $1.5 million.

64

6.11.7 **Outsourced Services Providers**.  Sellers shall cooperate with Buyers with respect to Buyers entering into new agreements with Sellers' outsourced service providers, including Electronic Data Systems Corporation, EDS Information Systems, LLC and its affiliates (collectively, "**EDS**"), Computer Sciences Corporation and its affiliates (collectively, "**CSC**"), and the Hewlett Packard Company and its affiliates (collectively, "**HP**").  Sellers shall also perform their obligations and exercise their rights under the Agreement to Migrate DMA to MSA between EDS and Delphi Corporation dated effective December 6, 2007 with such migration to occur by January 31, 2008.

6.11.8 **Separation Plan and Costs**.  Sellers' will be responsible for the cost and execution of: (i) the Day 1 separation activities identified on Schedule 6.11.8.A (the "**Separation Plan**"), (ii) modification of the GM payroll system in preparation for Day 1 and transitional services, and (iii) segregation of the Manufacturing Facilities and Technical Centers to be co-located following Closing in a commercially reasonable and workmanlike manner, in accordance with the facilities separation plan set forth in Schedule 6.11.8.B (the "**Facilities Separation Plan**") Buyers will be solely responsible for all other separation and start-up costs and activities, including (i) Day 2 separation activities, (ii) relocation from the Suzhou Manufacturing Facility and any Technical Center or Sales Offices, and (iii) any setup fees required by third party service providers**;** provided, however, that Sellers will reimburse Buyers for the first $10 million, less the amounts that are spent by Sellers (after reasonable consultation with Buyer Parent) on behalf of Buyer Parent for the items set forth on Schedule 6.11.8.C, in post-closing information technology separation costs (which are reasonably incurred and documented) by Sellers as such costs are incurred.  Buyers acknowledge and agree that it is necessary to promptly begin the work necessary to relocate from certain of the Technical Centers in accordance with the Facilities Separation Plan.  The parties shall reasonably cooperate with each other to implement such activities and separation in an effort to complete the activities contemplated by this Section 6.11.8 in a reasonable, expeditious and cost-effective manner.

6.12    **Letters of Credit**.  Buyers agree to use commercially reasonable efforts to cause Delphi and its Affiliates (other than the Sale Companies) to be absolutely and unconditionally relieved ninety (90) days following the Closing of all Liabilities and obligations arising out of the letters of credit, performance bonds and other similar items issued and outstanding in connection with the Business, in each case, to the extent set forth on Schedule 6.12 hereof, and Buyers will indemnify Delphi and its Affiliates against any Losses of any kind whatsoever with respect to such Liabilities and obligations.

6.13    **Competition Clearance**.  Subject to the terms hereof, Buyers and Delphi agree to cooperate and to use commercially reasonable efforts to obtain, as promptly as practicable following the date hereof, any Governmental Approvals required for the Closing under the HSR Act, EC Merger Regulation and any other applicable Competition/Investment Law, to respond to any government requests for information thereunder, to contest and resist in good faith any action thereunder, and to have lifted or overturned any Governmental Order that restricts, prevents or prohibits the consummation of the transactions contemplated by this Agreement.  The Parties will use commercially reasonable efforts to complete, no later than three (3) Business Days after the date hereof, Schedule 6.13.1, which includes a list of all countries in which competition filings may be required or are appropriate.   In this respect, Buyers will make (or continue to prosecute, if made previously) all the competition filings set forth in

Schedule 6.13.1 promptly, but in no event later than fifteen (15) Business Days after the date hereof, and Buyer Parent will: (i) promptly inform Delphi of all oral and written communications with any Governmental Authority in respect of any required Governmental Approval; (ii) give Delphi the opportunity to comment on all filings and any response prepared by Buyers prior to Buyers' submitting such response to the relevant Governmental Authority; and (iii) afford Delphi or any Seller designated by Delphi the opportunity to attend any meetings, telephone conferences or video conferences organized with the Governmental Authorities in relation to any required Governmental Approval.  Notwithstanding the foregoing, the Parties agree that neither of them will make any voluntary filing under applicable foreign antitrust laws or regulations unless advised by legal counsel in such jurisdiction that the failure to make a filing could result in a Material Adverse Effect or otherwise be in violation of applicable Law.  Each party hereto will promptly inform the other of any oral or other communication from any Governmental Authority regarding any of the transactions contemplated by this Agreement and the Ancillary Agreements.  If the competition authority in any such country: (i) imposes conditions upon its approval of the transactions contemplated by this Agreement; or (ii) files a Proceeding before a Governmental Agency seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement, the Parties will take commercially reasonable steps to negotiate with the competition authority regarding, and comply with, any conditions or modifications requested by such competition authority, consistent with the general intention of this Agreement (that ownership of the Business will be vested in the Buyers).  Such compliance may require modifications in structure, economic and other relationships.  Subject to Section 9.2.2, each Party will bear its own costs and expenses incurred in negotiating and agreeing to the required conditions or modifications with the competition authorities.

6.13.1  Buyers will not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Authority necessary to consummate the transactions contemplated by this Agreement or the Transfer Agreements or the expiration or termination of any applicable waiting period; (ii) increase the risk of any Governmental Authority entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Transfer Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) delay or prevent the consummation of the transactions contemplated by this Agreement or the Transfer Agreements.

6.14    **Further Actions**.

6.14.1  Within three (3) Business Days after the entry of an unstayed Sale Approval Order by the Bankruptcy Court, the Parties will use commercially reasonable efforts to take all actions and to do all things necessary, proper or advisable under Law to consummate the transactions contemplated hereby and by the Transfer Agreements.  In furtherance of the foregoing, the Parties will consult and cooperate with one another, and consider in good faith the

66

views of one another, in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any party hereto in connection with the transactions contemplated by this Agreement.

6.14.2  At all times prior to the Closing: (i) Delphi will notify Buyer Parent in writing of any fact, condition, event or occurrence that will result in the failure of any of the conditions contained in Article 7 to be satisfied, promptly upon any of them becoming aware of the same; and (ii) Buyer Parent will notify Delphi in writing of any fact, condition, event or occurrence that will result in the failure of any of the conditions contained in Article 7 to be satisfied, promptly upon any of them becoming aware of the same.

6.15    **Further Assurances**.  Subject to the terms and conditions herein provided, the Parties shall use their respective commercially reasonable efforts to take, or cause to be taken, all action, and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement.  If at any time after the Closing Date any further action is necessary or desirable to carry out the purposes of this Agreement, the parties hereto shall take or cause to be taken all such necessary action, including, without limitation, the execution and delivery of such further instruments and documents as may be reasonably requested by the other party for such purposes or otherwise to consummate and make effective the transactions contemplated hereby; provided that, to the extent not indemnified or required hereunder the cost of such action or of such instruments and documents related thereto shall be borne by the party requesting them.  The foregoing covenant will survive the Closing of the transactions contemplated herein.

6.16    **Shared Items Transferred to Buyers**.  With respect to any contracts for goods or services included in the Acquired Assets and that are used by both the Business and other operations of Delphi or its Affiliates that are set forth on Schedule 6.16, and that will be transferred to Buyers at Closing, Buyers will provide Sellers with the benefits of such contracts in substantially the same manner described in Section 2.4 above regarding Deferred Items, and Delphi will cause Sellers to reimburse Buyers for such benefits in substantially the manner described in Section 2.4, until the earlier of such time as separate contracts for such goods or services have been agreed between the applicable Seller and the other Party or Parties to such contract or contracts, or until the termination of such contract or contracts.

6.17    **Buyers' Financing Activities**.

6.17.1  Buyers acknowledge and agree that: (i) Sellers and their Affiliates have no responsibility for any financing that Buyers may raise in connection with the transactions contemplated hereby including with respect to any offering materials and other documents prepared by or on behalf of or utilized by Buyers or their Affiliates, or Buyers' financing sources, in connection with Buyers' financing activities in connection with the transactions contemplated hereby which include any information provided by Sellers or any of their Affiliates; and (ii) Buyers' obligations to consummate and to cause to be consummated the transactions contemplated by this Agreement and the Transfer Agreements are not subject to any condition or contingency with respect to the financing.

6.17.2  Buyers will use commercially reasonable efforts to: (i) maintain in effect the Commitment Letter; (ii) enter into definitive financing agreements with respect to the financing, so that such agreements are in effect as promptly as practicable but in any event no later than the Closing Date; and (iii) consummate the financing at or prior to Closing.  Buyers will keep Delphi reasonably informed of material developments in respect of the financing process relating thereto and provide copies of the Commitment Letter as it may be revised.  In the period between the date hereof and the Closing Date, upon request of Buyers, Sellers will, and will use commercially reasonable efforts to cause its Affiliates and representatives to, reasonably cooperate with Buyers in connection with the financing. Buyers will promptly, upon request by Sellers, reimburse Sellers for all, documented out-of-pocket expenses incurred by Sellers or their Affiliates or representatives in connection with such cooperation.  If, notwithstanding the use of commercially reasonable efforts by Buyers to satisfy their obligations under this Section 6.17.2, any of the financing or the Commitment Letter (or any definitive financing agreement entered with respect thereto) expire or are terminated prior to the Closing, in whole or in part, for any reason, Buyers will: (i) promptly notify Delphi of such expiration or termination and the reasons therefor; and (ii) use commercially reasonable efforts to promptly arrange for alternative financing (which will not contain any conditions in addition to those contained in such expired or terminated commitments or agreements) to replace the financing contemplated by such expired or terminated commitments or agreements in an amount sufficient to consummate the transactions contemplated by this Agreement and the Ancillary Agreements.

6.18    **Guarantee by Buyer Parent**.  Buyer Parent unconditionally guarantees all obligations of each Buyer pursuant to the terms of this Agreement, including payment of the Purchase Price and any indemnification obligations.  Buyer Parent will also reimburse Sellers for all fees and expenses (including reasonable fees of counsel) incurred in successfully enforcing the guarantee obligations set forth in this Section 6.18.

6.19    **Customs Duties**.  The Buyers expressly agree to reimburse Sellers for all customs-related duties, fees, and associated costs incurred by Sellers on behalf of Buyers following the Closing, including all such duties, fees and costs incurred in connection with co-loaded containers that clear customs intentionally or unintentionally under Sellers' importer/exporter identification numbers and bonds/guarantees post-Closing.

6.20    **Nonsolicitation**.  Until the 2nd anniversary of the date hereof, Delphi shall not, directly or indirectly, and shall cause any entity controlled by Delphi not, to: (A) induce or attempt to induce any employee of any member or employee of the Combined Business or to leave the employ of such Person; or (B) subject to the restrictions of any applicable Law, induce or attempt to induce any customer, supplier, vendor, licensee, distributor, contractor or other business relation of any member of the Combined Business to cease doing business with, or materially alter its business relationship with, such member of the Combined Business; provided, however, that neither of the foregoing shall apply to persons whose employment with Combined Business is terminated by the Combined Business or who are hired as a result of the use of a general solicitation (such as an advertisement) not specifically directed to employees of the Combined Business.

6.21    **Confidentiality**.  After the Closing, Delphi shall, and shall cause its Affiliates to, maintain as confidential and shall not use or disclose (except as required by law or

as authorized in writing by Buyer) any confidential information concerning the businesses and affairs of the Combined Business, except to the extent such confidential information (i) was used by Delphi's divisions other than the Business prior to the Closing Date (ii) becomes generally available to the public other than as a result of a disclosure by Delphi or its representatives in violation of the terms hereof, (iii) becomes available to Delphi on a non-confidential basis from a source other than the Buyers or their representatives or (iv) is covered by the licenses granted pursuant to Section 6.11. In the event Delphi or any of its Affiliates is required by law to disclose any confidential information, such party shall promptly notify Buyer Parent in writing, which notification shall include the nature of the legal requirement and the extent of the required disclosure, and shall cooperate with Buyer Parent to preserve the confidentiality of such information consistent with applicable law. Buyers shall be the beneficiaries of any confidentiality or nondisclosure agreement entered into with respect to a potential acquisition of the steering assets of Delphi before the Closing between Delphi or its Affiliates, on the one hand, and any Person, on the other, and shall be entitled to enforce such agreement after the Closing Date.

      6.22    **KDAC**.

      6.22.1  From and after the execution of this Agreement and continuing after Closing, Delphi shall use commercially reasonable efforts to prepare for sale to Buyer Parent Delphi Automotive Systems (Holding), Inc.'s ("**DASHI**") 50% interest in KDAC's business relating to the Products ("**KDAC Steering**") and satisfy the following conditions precedent (the "**KDAC Steering Sale Conditions**"): (i) completion of KDAC Steering's split-off from KDAC as a separate legal entity containing all of the assets and liabilities (including any severance Liabilities) of KDAC Steering, allocated on a basis consistent with the KDAC Steering reference balance sheet attached hereto as <u>Schedule 6.22</u>, through a corporate split process whereby the shareholding ratio of the existing KDAC shareholders remains unchanged in the newly formed KDAC Steering legal entity and (ii) receipt of consents from the other shareholders of KDAC Steering permitting DASHI to sell its 50% interest in KDAC Steering (the "**KDAC Steering Interest**") to Buyer Parent. DASHI agrees to request that KDAC (or the new KDAC Steering legal entity) agree to be bound by non-compete provisions substantially similar to those in place today under the KDAC Shareholder Agreement dated July 31, 1998 (as if the Business continued to be owned by Delphi).

      6.22.2  Upon satisfaction of the KDAC Steering Sale Conditions and provided that the exercising party provides notice to the other party within nine months of Closing, DASHI and Buyer Parent (or its designee) shall have the following independent options (the "**KDAC Options**") to sell or purchase (as applicable) without the consent of the other party the KDAC Steering Interest for the KDAC Amount less DASHI's pro rata share of any short-term borrowings, current portion of long-term debts, debenture, and long-term debt in the newly formed KDAC Steering legal entity at the time of such purchase (the "**KDAC Purchase Price**"), pursuant to the Transfer Agreement attached as <u>Exhibit 6.22</u>:

          (i)    DASHI shall have the right to sell to Buyer Parent (or its designee), and Buyer Parent must purchase, the KDAC Steering Interest for the KDAC Purchase Price; and

(ii)    Buyer Parent (or its designee) shall have the right to purchase, and DASHI must sell, the KDAC Steering Interest for the KDAC Purchase Price.

6.22.3  Following the exercise of either of the foregoing options, the parties will promptly seek all necessary Governmental Approvals in accordance with the procedures set forth in Section 6.13 hereof and use commercially reasonable efforts to promptly consummate the sale of KDAC Steering Interest.

6.22.4  Upon the sale of the KDAC Steering Interest to Buyer Parent, Buyer Parent agrees to be bound by the terms of the KDAC Steering Shareholders Agreement, or if such KDAC Steering Shareholders Agreement does not yet exist, to enter into a shareholders agreement with the other shareholders of KDAC Steering on the same terms as the KDAC Shareholder Agreement dated July 31, 1998.

6.22.5  In the event that the transaction contemplated by this Section 6.22 is not consummated within nine (9) months following the Closing Date, the KDAC Options shall expire and DASHI shall repay the KDAC Amount to Buyer Parent.

6.23    **No Right of Set-Off**.  Neither Party nor any of its Affiliates shall have any right of holdback or setoff or assert any claim, defense or counterclaim with respect to any amounts that may be owed by such Party or its Affiliates to the other Party (or Parties) hereto or its Affiliates as a result of and with respect to any amount that may be owing to such Party or its Affiliates under this Agreement, any Ancillary Agreement or any other commercial arrangement entered into in connection herewith.

6.24    **Enterprise Contracts**.  The parties acknowledge that (i) the Business currently benefits from certain services or receives certain products of the type listed on Schedule 6.24 ("**Other Services**") provided by third parties ("**Enterprise Providers**") under enterprise contracts with Delphi and/or one of its Affiliates ("**Enterprise Contracts**") and (ii) it may not be practical for Buyers to enter into replacement contracts with all of such Enterprise Providers as of the Closing Date.  After signing this Agreement and prior to Closing, Buyers will use commercially reasonable efforts to enter into replacement contracts covering such Other Services.   In the event that Buyers are unable to secure such replacement contracts, after having used commercially reasonable efforts as required by the preceding sentence, Sellers will use commercially reasonable efforts to make available to Buyers the Other Services provided under such Enterprise Contracts of the type described on Schedule 6.24.  Buyers will pay Sellers the cost (including the cost of any internal resources) of providing such Other Services.  The obligations in this Section 6.23 shall not apply to (i) any Contracts that are Acquired Assets (ii) any service provided under the Transition Services Agreement, (iii) any services or products identified on Schedule 6.24 under the heading "Products/Services excluded from Section 6.24" in the Transition Services Agreement as an "Excluded Service" or (iv) products or services which the applicable Sellers are prohibited from providing to Buyers pursuant to applicable Law.

6.25    **Buyers' Covenant to Manufacture Products**.  Buyers covenant to design, manufacture, transport, provide necessary engineering services for, and deliver replacement, remanufactured or new Products (as appropriate) at Sellers' expense (calculated on

a cost basis) in connection with any Product Warranty Liability (including any recall) retained by Sellers or for which Sellers are responsible to indemnify Buyers.

6.26    **Joint Venture**.  Subject to each of Delphi's and Buyer Parent's respective good faith determination that such Party will not incur any additional liabilities or expenses (other than nominal documentation related expenses) or be exposed to any adverse accounting impact as a result thereof, from and after the execution of this Agreement and continuing until the Closing, Delphi and Buyer Parent shall each use commercially reasonable efforts to structure a mutually agreeable joint venture comprised of the Acquired Assets of the applicable U.S. Sellers and certain assets to be identified by Buyer Parent (the "Proposed Joint Venture").

6.27    **Somerton Equipment**.  Sellers shall use commercially reasonable efforts to remove their Powertrain TFS equipment from Building 1 at the Somerton, Australia Manufacturing Facility prior to Closing.  If the Sellers are unable to remove such equipment prior to Closing, Sellers shall retain reasonable access rights for up to 120 days after Closing  to such facility for the purposes of selling or removing such equipment and shall reimburse Buyers for the reasonable costs associated with (i) at Delphi's option, either (a) procuring reasonably equivalent alternative floor space or (b) extending the lease at Building 2 to accommodate its inventory and equipment currently located in Building 2 at the Somerton, Australia Manufacturing Facility; and (ii) the usage of electricity required to demonstrate the Powertrain TFS equipment to potential buyers if necessary.  For purposes of this Section, any TFS equipment remaining in Building 1 following the Closing will be deemed to be bailed to Buyers for the benefit of Sellers until such equipment is removed from the facility.

6.28    **Mexican Newco**.  No later than fifteen (15) days prior to the Closing date, Delphi shall transfer and assign or cause to be transferred and assigned to Buyer all of the issued and outstanding stock of two legal entities formed in the U.S. (the "**U.S. Holding Companies**") to hold the shares of Steering Newco, S. de R.D. de C.V. ("**Mexican Newco**"), free and clear of all Encumbrances other than Permitted Encumbrances, in exchange for a purchase price equal to the aggregate out-of-pocket costs incurred by Sellers in establishing the U.S. Holding Companies and Mexican Newco and obtaining necessary Permits.  The payment will be made in immediately available funds as of the date of transfer.  As of the date of such transfer, the U.S. Holding Companies and Mexican Newco shall: (i) not own, lease or otherwise have the right to use any assets other than Permits necessary or desirable for the conduct of the Business in Mexico and/or to acquire the Permits and (iii) not have any other Liabilities or employees other than as required to obtain the Permits.  In the event the Closing does not occur subsequent to such transfer of the U.S. Holding Companies described in this Section 6.28, Buyers shall transfer and assign back to Sellers all of the issued and outstanding stock of the U.S. Holding Companies free and clear of all Encumbrances.  If the U.S. Holding Companies and the Mexican Newco are transferred back to Sellers in accordance with the preceding sentence, such entities shall otherwise be delivered to Sellers in the same condition as they were delivered to Buyers pursuant to this Section 6.28.

6.29    **2007 Dividends**.  In the event that the Sellers are unable to cause any Sale Company or JV Company to declare the maximum dividend amount ("**Maximum Dividend Amount**") allowed under applicable Law for 2007, Buyers will promptly cause such Sale

71

Company or JV Company to declare the Maximum Dividend Amount and remit such amount to Sellers, net of any taxes or other reasonable out-of-pocket costs incurred solely as a result of remitting such dividend to Sellers.    The amounts paid to Sellers pursuant to this Section 6.29 and under Section 3 for Capped Cash shall be cumulative, provided that in no event shall the payments under this Section 6.29 duplicate any payments made by Buyer to Seller for Capped Cash pursuant to Section 3 hereof.  In order to maximize the amount of Cash recovered by Sellers under this Section 6.29 and Section 3, Delphi may apportion the $2,000,000 of Capped Cash for the JV Companies in its sole discretion.

       6.30    **Commitment Letter**.  Buyer Parent shall promptly provide to Sellers (i) evidence of its financial ability to consummate this Agreement and the transactions contemplated hereby, as evidenced by a commitment letter from its lender(s) ("**Commitment Letter**") and (ii) subject to Sellers' obligation to maintain the confidentiality of such information in accordance with Section 6.21 hereof, a consolidated balance sheet reflecting the financial position of the Combined Business immediately following the Closing.

       6.31    **Athens, Alabama - Plant 22**.  Upon request, Buyer will perform all of Sellers' obligations under that certain Project Agreement dated as of September 10, 2002, between Delphi Automotive Systems LLC and Alabama Incentives Financing Authority regarding Plant 22 in Athens Alabama (the "**Project Agreement**") to the extent that such obligations were not performed by Sellers prior to the Closing Date.  If Buyers are required to perform any of Sellers' obligations under the Project Agreement, Delphi will reimburse Buyers for Buyers' documented out-of-pocket costs incurred by Buyer promptly following receipt of an invoice from Buyer.

       6.32    **Transfer of Certain Sale Securities.**  In order to effectuate the sale of the Sale Securities pursuant to Section 2.1.1 hereof, the Sellers may, prior to Closing and after consultation with Buyer Parent, transfer certain of the Sale Securities to special purpose vehicles in the form of intermediate holding companies.  In the event of any such transfer, the shares of the intermediate holding company will become the Sale Securities transferred hereunder.

       6.33    **Doblo 262 Column Program**.  With respect to the equipment that is expected to be purchased by a Delphi Affiliate between signing and Closing for use by the Business in connection with the Turkey Doblo 262 Column Program, such equipment will, at Delphi's option be either (i) purchased by Delphi Polska and included as Acquired Asset(s) hereunder, or (ii) purchased by a Delphi Affiliate and Buyers will pay such Delphi Affiliate the net book value of such equipment as of the Closing Date, plus any applicable Transfer Taxes, within 120 days following Closing.  If the equipment is transferred pursuant to subsection (ii) above, title to the equipment will transfer to the Buyers upon Sellers' receipt of payment.

## 7.    CONDITIONS TO CLOSING.

       7.1    **Conditions to Obligations of Sellers and Buyers**.  The respective obligations of each Party to effect the transactions contemplated by this Agreement will be subject to the satisfaction or waiver by both Parties at or prior to the Closing Date of the following conditions precedent:

7.1.1    **Sale Approval Order and Bidding Procedures Order**. The Sale Approval Order and Bidding Procedures Order shall have each been entered by the Bankruptcy Court and shall be a Final Order.

7.1.2    **No Law, Judgments, etc**.  No provisions of any applicable Law or Governmental Order that restrains, prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement will be in effect (each Party taking any and all steps required by Sections 6.13 and 6.14 of this Agreement).  No action, suit or other Proceedings shall be pending before any Governmental Authority seeking or threatening to restrain or prohibit the consummation of the transactions contemplated by this Agreement, or seeking to obtain damages in respect thereof, or involving a claim that consummation thereof would result in the violation of any law, decree or regulation of any Governmental Authority having appropriate jurisdiction.

7.1.3    **Governmental Approvals**.  All required Governmental Approvals (including approvals under any Competition/Investment Law, as identified on Schedule 6.13.1) regarding the Sale will have been granted in writing by the appropriate Governmental Authorities or the waiting period with respect to any such filings will have expired or been terminated.

7.1.4    **Day 1 Readiness**.  The separation activities set forth in Separation Plan shall have been substantially completed.

7.2    **Conditions to Obligations of Buyers**.  The obligation of Buyers to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Buyer):

7.2.1    **Accuracy of Warranties**.  The representations and warranties of Sellers contained in Article 4 of this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein) will be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time) except where the failure of such representations and warranties to be true and correct has not and would not reasonably be expected to have a Material Adverse Effect.

7.2.2    **Performance of Covenants**.  Sellers will have performed and complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it at or prior to the Closing.

7.2.3    **Delivery of Ancillary Agreements**.  Sellers will have delivered duly executed copies of each of the Ancillary Agreements.

7.2.4    **Agreements with Outsourced Service Providers**.  Buyers shall have, entered into the agreements set forth on Schedule 7.2.4.

7.2.5    **Material Adverse Effect**.  Since the date of this Agreement, there shall not have occurred a Material Adverse Effect.

7.3    **Conditions to Obligations of Sellers**.  Except as otherwise permitted by this Agreement or a Transfer Agreement, the obligation of Sellers to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Sellers):

7.3.1    **Accuracy of Warranties**.  The representations and warranties of Buyer contained in Article 5 of this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein), will be true and correct as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated by this Agreement.

7.3.2    **Performance of Covenants**.  Buyer and its Affiliates will have performed and complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it at or prior to the Closing.

7.3.3    **Delivery of Ancillary Agreements**.  Buyers will have delivered duly executed copies of each of the Ancillary Agreements.

## 8.    CLOSING.

8.1    **Closing Time and Date**.  Subject to the terms and conditions of this Agreement, the closing (the "**Closing**") of the transactions contemplated by this Agreement will take place at the offices of Delphi at 10:00 a.m. on the last Business Day of the month in which the conditions set forth in Article 7 will have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree (the "**Closing Date**").  For tax and accounting purposes, the effective time of the transaction will be 11:59 p.m., local time, on the Closing Date.  The Closing of the Transfer Agreements will take place simultaneously with the Closing or on a later date if mutually agreed by the relevant Seller and relevant Buyer.

8.2    **Ancillary Agreements**.  At or prior to the Closing, the Sellers will duly execute and deliver to the Buyers, and the Buyers will duly execute and deliver to Sellers, each of the following agreements to which they are to be a party:

8.2.1    The following lease agreements:

A.    Assignment and Assumption Agreement regarding Building 1 at the Somerton, Australia Real Property, substantially in the form of Exhibit 8.2.1.A.

B.    Sublease regarding the Technical Center located at Paris, France, substantially in the form of Exhibit 8.2.1.B.

C.    Lease regarding the Technical Center located at Juarez, Mexico, in a form to be agreed by the Parties and subject to the terms set forth in Exhibit 8.2.1.C.

74

8.2.2    A Patent Assignment by Seller to Buyer substantially in the form of Exhibit 8.2.2.A, a Trademark Assignment by Seller to Buyer substantially in the form of Exhibit 8.2.2.B, and a Copyright Assignment by Seller to Buyer substantially in the form of Exhibit 8.2.2.C, whereby recorded title to the Purchased Intellectual Property identified in Schedules 4.12.1.A, 4.12.1.B and 4.12.1.C may be recorded as being transferred from Seller to Buyer, as well as any other deeds, bills of sale, endorsements, assignments, affidavits and other instruments of sale, conveyance, transfer and assignment relating to the Purchased Intellectual Property, including an assignment to all Sellers' rights in and to the "Saginaw Steering" name and trademark, any assignment of rights to Intellectual Property under any employment or independent contractor agreements and any necessary releases of security interest in forms appropriate for releasing any security interests filed in any patent offices.   Schedule 8.2.2 sets forth exceptions to the Purchased Intellectual Property identified in Schedule 4.12.1.A, title to each such exception being currently recorded as held by General Motors, and for which exceptions Seller shall effect assignment by General Motors directly to Buyer by means of a Patent Assignment substantially in the form of Exhibit 8.2.2.A.

8.2.3    The following Transfer Agreements:

A.    Mexico Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.A.

B.    China Share Transfer Agreements, substantially in the forms set forth in Exhibit 8.2.3.B.

C.    France Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.C.

D.    Australia Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.D.

E.    India Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.E.

F.    Germany Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.F.

G.    Italy Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.G.

H.    Korea Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.H.

I.    Japan Asset Sale Agreement, substantially in the form set forth in Exhibit 8.2.3.I.

J.    Poland Share Transfer Agreement, substantially in the form set forth in Exhibit 8.2.3.J.

K.    Brazil Quota Transfer Agreement, substantially in the form set forth in <u>Exhibit 8.2.3.K</u>.

8.2.4    The Deposit Escrow Agreement, substantially in the form set forth in <u>Exhibit 8.2.4</u>.

8.2.5    The Transition Services Agreement, substantially in the form set forth in <u>Exhibit 8.2.5</u>.

8.2.6    The Bills of Sale, substantially in the form set forth in <u>Exhibit 8.2.6</u>.

8.2.7    The Assignment and Assumption Agreements, substantially in the form set forth in <u>Exhibit 8.2.7</u>.

8.3    **<u>Sellers' Deliveries at Closing</u>**.  At or prior to the Closing, the appropriate Sellers will deliver or cause to be delivered to the relevant Buyer:

8.3.1    If applicable, the Preliminary Adjusted Purchase Price, by wire transfer of immediately available funds to an account or accounts designated by Buyer Parent not less than two (2) Business Days prior to the Closing;

8.3.2    To the extent that equity interests of Sale Companies or the JV Companies are represented by stock certificates, original certificates evidencing the Sale Securities (to the extent applicable in the respective jurisdiction), which certificates will be duly endorsed for transfer or accompanied by duly executed stock transfer powers or other appropriate instruments of assignment and transfer in favor of the relevant Buyer or its permitted assigns.

8.3.3    Quit claim deeds (or non U.S. equivalent) for the Owned Real Property, substantially in the form of <u>Exhibit 8.3.2</u> or such other form of conveyance in substance equivalent to such form of deed.

8.3.4    Copies of the resolutions (or local equivalent) of the boards of directors of each Seller and, where required, the stockholders/owners of each Seller, authorizing and approving this Agreement, Ancillary Agreements and the transactions contemplated hereby and thereby.

8.3.5    Certified copies of all orders of the Bankruptcy Court pertaining to the transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order.

8.3.6    The minutes and other partnership or limited liability company record books of the Sale Companies and all stock transfer ledgers and other records evidencing the equity ownership of the Sale Companies.

8.3.7    Resignations of all directors (or equivalent) and officers of the Sale Companies and of any Seller representatives in similar positions with the JV Companies, except as otherwise requested by Buyer Parent no less than ten (10) Business Days prior to the Closing Date.

8.3.8    A non-foreign affidavit dated as of the Closing Date and in form and substance required under the Treasury Regulations issued pursuant to Section 1445(b) of the Internal Revenue Code so that Buyers are exempt from withholding any portion of the Purchase Price thereunder.

8.3.9    All other documents and papers reasonably requested by Buyers to transfer title to the Acquired Assets or Sale Securities in accordance with this Agreement or to otherwise effect the transactions contemplated by this Agreement or the Ancillary Agreements.

8.3.10    A certificate signed by each Seller, dated the date of the Closing Date, (in form and substance reasonably satisfactory to Buyer) certifying that the conditions specified in Section 7.2 have been satisfied as of the Closing.

8.4    **Buyers' Deliveries at Closing**.  At or prior to the Closing, Buyers will deliver or cause to be delivered to Delphi and each Seller designated by Delphi the following:

8.4.1    If applicable, the Preliminary Adjusted Purchase Price, by wire transfer of immediately available funds to an account or accounts designated by Delphi not less than two (2) Business Days prior to the Closing;

8.4.2    Where required by applicable Law in the jurisdiction concerned, copies of the resolutions (or local equivalent) of the boards of directors of each Buyer and, where required, the stockholders/owners of each Buyer, authorizing and approving this Agreement, the Ancillary Agreements and the transactions contemplated hereby and thereby;

8.4.3    An officer's certificate, dated as of the Closing Date, executed on behalf of each of the Buyers, certifying that the conditions specified in Section 7.3 have been fulfilled.

8.5    **Post-Closing Deliveries**.  Promptly following the Closing, Seller will deliver signature cards from all banks or financial institutions with which the Sale Companies have any account, designating signatures approved by Buyer Parent.

8.6    **Post-Closing Transfer of Intellectual Property Rights.**

8.6.1    If, after the Closing, either Party identifies a patent or patent application that such Party believes should have been included in Purchased Intellectual Property, but was omitted from Schedule 4.12.1.A, the Parties shall cooperate to determine in good faith whether such patent or patent application should have been included in the Purchased Intellectual Property and assigned to Buyers.  If the Parties agree that such patent or patent application should have been included in the Purchased Intellectual Property and assigned to Buyer, the Parties shall amend Schedule 4.12.1.A to include such patent or patent application and Sellers or their respective Affiliate shall assign or cause to be assigned such patent or patent application to Buyers.  The Parties each covenant and agree on behalf of themselves and their respective Affiliates to execute all documents reasonably requested by the other Party to effect such transfer and/or assignment.

8.6.2    If, after Closing, either Party identifies a patent or patent application that such party believes should have been included in the Shared Intellectual Property licensed under

Section 6.11.1, but which is reasonably within the scope of Excepted Shared Intellectual Property identified in <u>Schedule 6.11.1</u>, the Parties shall cooperate to determine in good faith whether such patent or patent application should have been included in the Shared Intellectual Property licensed to Buyers hereunder.  If the Parties agree that such patent or patent application should have been included in the Shared Intellectual Property licensed to Buyers hereunder, the Parties shall amend <u>Schedule 6.11.1</u> to specifically exclude such patent or patent application from the Excepted Shared Intellectual Property, and Buyers shall receive, via amendment to this Master Sale and Purchase Agreement, a license under such patent or patent application with terms identical to those of the license granted in Section 6.11.1.  The Parties each covenant and agree on behalf of themselves and their respective Affiliates to execute all documents reasonably requested by the other Party to effect such license.

**9.    <u>TERMINATION</u>**.

      9.1    <u>**Termination**</u>. This Agreement may be terminated at any time prior to the Closing:

      9.1.1    By the mutual written consent of Delphi and Buyer Parent.

      9.1.2    By either Party:

      A.    If the Closing will not have occurred within one hundred eighty (180) days after entry of the Sale Approval Order for any reason other than a failure of the conditions set forth in Sections 7.1.2 or 7.1.3, unless the Closing has not occurred due to a material breach by the terminating party of its obligations under this Agreement.

      B.    If Seller consummates an Alternative Transaction.

      C.    If any Governmental Authority of competent jurisdiction (other than the Bankruptcy Court) will have issued a Governmental Order or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplated hereby and such Governmental Order or other action has become final and nonappealable, unless due to a material breach by the terminating party.

      D.    If the Bankruptcy Court has not entered the Sale Approval Order on or before the date that is ninety (90) days after the date of this Agreement and such order is not a Final Order or if the Bidding Procedures Order is not a Final Order within eleven (11) days after it is entered on the Bankruptcy Court's docket.

      9.1.3    By Buyer Parent, upon written notice to Delphi and provided that Buyer Parent is not then in material breach of any representation, warranty, covenant or other agreement contained in this Agreement:

      A.    if Delphi has breached or failed to perform in any material respect any of its obligations or covenants contained in this Agreement, and such material breach or material failure to perform: (i) is not cured within thirty (30) days after written notice thereof or, in the case where the date or period of time specified for performance has lapsed, promptly

following written notice thereof from the non-breaching party; or (ii) is incapable of being cured by Delphi;

      B.   if a Material Adverse Effect will have occurred, Buyer Parent may terminate within ten (10) Business Days after becoming aware of such event so long as such event is continuing at the time of any such termination and not reasonably capable of being cured within ninety (90) days after entry of the Sale Approval Order;

      C.   if any Seller enters into an agreement or understanding for an Alternative Transaction other than regarding a Successful Bidder at the Auction where Buyer Parent is the Alternate Bidder;

      D.   if any Seller (i) seeks or supports, or fails to oppose, Bankruptcy Court approval of a competing bid for any or all of the Business or the Purchased Assets or (ii) executes and delivers an agreement or understanding of any kind with respect to an Alternative Transaction; in each case other than in connection with Qualified Bids at the Auction or regarding a Successful Bidder at the Auction where Buyer Parent is the Alternate Bidder; or

      E.   If the Bankruptcy Court declines to enter the Sale Approval Order because the Bankruptcy Court finds that the Sale under this Agreement can only be approved through or in the context of a plan of reorganization, unless the right of Buyer to purchase the Business on substantially the same terms as this Agreement is preserved in such plan of reorganization and the plan is consummated pursuant to a Final Order of the Bankruptcy Court confirming such Plan of Reorganization on or before one hundred and twenty (120) days after the date of this Agreement.

      F.   If Buyer becomes an Alternate Bidder pursuant to Section 10.9 hereof but Delphi fails to consummate the transaction with the Successful Bidder within ninety (90) days of entry of the Sale Order.

      G.   The sale, transfer, lease or other disposition, directly or indirectly of any portion of the Business or the Acquired Assets (other than as a going concern) in connection with the closure, liquidation or winding up of the Business or any of the Sellers or Sale Companies.

For purposes of Sections 9.1.3.C and 9.1.3.D, the Sellers' negotiations with, and possible selection of, the Qualified Bid that shall serve as the floor bid at the Auction does not give rise to an "understanding" for, or with respect to, an Alternative Transaction, provided, however, that an Auction is actually held pursuant to Section 10 hereof.

      9.1.4 By Delphi, upon written notice to Buyer Parent and provided that Delphi is not then in material breach of any representation, warranty, covenant or other agreement contained in this Agreement, if the Buyer Parent or any Buyer has breached or failed to perform in any material respect any of its obligations or covenants contained in this Agreement, and such material breach or material failure to perform: (i) is not cured within thirty (30) days after written notice thereof or, in the case where the date or period of time specified for performance has lapsed, promptly following written notice thereof from the non-breaching party; or (ii) is incapable of being cured by Buyer Parent or any Buyer.

9.2      **Break-Up Fee; Expense Reimbursement**.

9.2.1  Solely in the event that this Agreement is terminated pursuant to Sections 9.1.2.B,  9.1.3.C, 9.1.3.D, or 9.1.3.F**,** Delphi shall pay to Buyer Parent in immediately available funds a cash fee of $6,000,000 (the "**Break-Up Fee**"), such fee to be paid upon the consummation of an Alternative Transaction.

9.2.2  In the event this Agreement is terminated pursuant to any provision of Section 9 other than Section 9.1.4 and provided that Buyer Parent is not then in breach of this Agreement or the Bidding Procedures, then Sellers shall, jointly and severally, pay to Buyer Parent an amount equal to Buyer Parent's reasonable, actual out-of-pocket fees and expenses (including, without limitation, reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement in immediately available funds up to a maximum of (i) $2,000,000 if a Break-up Fee is paid or (ii) the amount of the Break-up Fee if a Break-Up Fee is not paid (the "**Expense Reimbursement**"). Any Expense Reimbursement payable upon termination of this Agreement will be immediately earned upon such termination and payable by Delphi to Buyer Parent upon the delivery of an invoice related to such Expense Reimbursement to Delphi by Buyer Parent to be delivered to Delphi within ten (10) Business Days of termination of this Agreement; provided, however, that if Delphi believes, in good faith, that the amount of the Expense Reimbursement sought by Buyer Parent is not reasonable, then Delphi will have the right to seek Bankruptcy Court review thereof prior to paying such amount.

9.2.3    If Buyer Parent actually receives the required Break-Up Fee and/or Expense Reimbursement when due, then such Break-Up Fee and/or Expense Reimbursement will be the sole and exclusive remedy of Buyer Parent, whether at law or in equity, for any breach by Delphi or any of its Affiliates of the terms and conditions of this Agreement, provided, however, that Buyer shall retain its rights and remedies under the Deposit Escrow Agreement and Section 3 of this Agreement governing the return of the Deposit Amount in all such circumstances.

9.2.4    Delphi's obligation to pay the Break-Up Fee and Expense Reimbursement pursuant to this Section 9.2 shall survive termination of this Agreement and shall constitute an administrative expense of the Sellers under Section 364(c)(1) of the Bankruptcy Code with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code.

9.3      **Procedure and Effect of Termination**.  In the event of the termination of this Agreement and the abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof will forthwith be given to all other Parties.  If this Agreement is terminated and the transactions contemplated by this Agreement are abandoned as provided herein:

9.3.1    Buyers will redeliver to Sellers all documents, work papers and other material of any of Sellers relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof;

9.3.2   The provisions of the Confidentiality Agreement will continue in full force and effect; and

9.3.3   The following Sections of this Agreement will survive any termination of this Agreement and remain in full force and effect: (i) Article 9 (Termination); and (ii) Sections 3.1 (Deposit Amount), 9.1 (Termination), 9.2 (Break-Up Fee, Expense Reimbursement), 11 (Liability; Indemnification), 12.1 (Fees and Expenses), 12.5 (Assignment), 12.6 (Waiver), 12.7 (Notices), 12.8 (Entire Agreement), 12.10 (Publicity), 12.14 (Governing Law), and 12.15 (Venue and Retention of Jurisdiction).

9.3.4   No party to this Agreement will have any Liability under this Agreement to any other except: (i) that nothing herein will relieve any party from any Liability for any breach of any of the representations, warranties, covenants and agreements set forth in this Agreement occurring before such termination, and, except as provided by Section 9.2.3 above, no Party waives any Claim with respect thereto; and (ii) nothing herein will relieve Sellers of their obligation to pay Buyer Parent the Break-Up Fee and/or Expense Reimbursement pursuant to Section 9.2. above.

## 10.   **BIDDING PROCEDURES**.

### 10.1   **Delphi Initial Bankruptcy Actions**.

10.1.1   This Article 10 sets forth the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the Agreement and the Sale of the Purchased Assets. The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order. The following overbid provisions and related Bidding Procedures are designed to compensate Buyers for their efforts and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Purchased Assets for the benefit of Sellers' and their Affiliates' creditors, shareholders and bankruptcy estate.

### 10.2   **Qualified Bidder**. Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Sellers, in order to participate in the Bidding Process, each person (a "**Potential Bidder**"), other than Buyer Parent, must deliver (unless previously delivered) to Delphi, its counsel, its in-house counsel, and its financial advisors at the addresses provided in Section 10.3:

10.2.1   An executed Confidentiality Agreement in form and substance satisfactory to Delphi.

10.2.2   Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Purchased Assets and the Business, current audited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Delphi and its financial advisors; and

10.2.3   A preliminary (non-binding) written proposal regarding: (i) the purchase price range; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and

financing of the transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale and perform post-Closing, if selected as a Successful Bidder, and that Delphi determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement will be deemed a "**Qualified Bidder**". As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Delphi will determine, and will notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder. At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi will allow the Qualified Bidder to begin to conduct due diligence with respect to the Purchased Assets and the Business as provided in Section 10.4 below. Buyer Parent will be deemed a Qualified Bidder for purposes of the Bidding Process and Qualified Bids and for all purposes hereunder.

       10.3    **Bid Deadline**. A Qualified Bidder that desires to make a bid will deliver written copies of its bid to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Director, Mergers & Acquisitions, with copies to: (i) Delphi's counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Ron E. Meisler; (ii) Delphi's in-house counsel, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Attn: Deputy General Counsel – Transactional & Restructuring; (iii) Delphi's financial advisor, Rothschild, Inc., 1251 Avenue of the Americas, New York, NY 10020, Attention: William Shaw; (iv) counsel to the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "Committee"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert Rosenberg and Mark A. Broude; and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received not later than 11:00 A.M. (EST), on a date to be determined by Delphi that is at least six (6) Business Days before the date of Sale Hearing (the "**Bid Deadline**"). Delphi may extend the Bid Deadline once or successively, but is not obligated to do so; provided however, that for any such extension beyond February 1, 2008, Delphi shall have obtained the written consent of Buyer Parent, which consent will not be unreasonably withheld. If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension. As soon as reasonably practicable following receipt of each Qualified Bid, Sellers will deliver complete copies of all items and information enumerated in the Section below entitled "Qualified Bids" to counsel for the Official Committee of Equity Security Holders (the "**Equityholders' Committee**"). The Sellers also will provide the UAW with notice of all Qualified Bidders and their contact information.

10.4    **Due Diligence**.  Delphi will afford each Qualified Bidder due diligence access to the Purchased Assets and the Business.  Due diligence access may include Management Presentations as may be scheduled by Delphi, access to Data Rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Delphi, in its sole discretion, may agree.  Delphi will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence will not continue after the Bid Deadline.  Delphi may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at Management Presentations or site inspections.  Neither Delphi nor any of its Affiliates (nor any of their respective representatives) will be obligated to furnish any information relating to Purchased Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

10.5    **Qualified Bids**.  A bid will be considered a Qualified Bid only if the bid complies with all of the following ("**Qualified Bid**"):

10.5.1  Includes a letter stating that the bidder's offer is irrevocable until two (2) Business Days after the Closing of the Sale of the Purchased Assets.

10.5.2  Includes an executed copy of this Agreement, together with all Schedules and Exhibits (a "**Marked Agreement**"), marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the Purchase Price (as defined in this Agreement).

10.5.3  Includes a good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as Delphi may determine) in an amount equal to $9.5 million.

10.5.4  Includes written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Delphi and its advisors.

10.5.5  Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

10.5.6  Proposes a transaction on terms and conditions that Delphi determines, in its sole discretion, are similar to, and are not materially more burdensome or conditional than the terms of the Agreement and that has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of (i) the Preliminary Purchase Price plus (ii) the Assumed Liabilities plus (iii) the Break-Up Fee plus (iv) the Expense Reimbursement plus (v) plus $1,000,000.

10.5.7  Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment.

10.5.8  Includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Purchased Assets prior to

making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Purchased Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement; and (iv) agrees that any non disclosure agreement or confidentiality agreement entered into with Delphi shall be enforceable by the Successful Bidder.

        10.5.9  Includes a commitment to consummate the purchase of the Purchased Assets (including the receipt of any required Governmental Approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any Governmental Approvals which must be obtained within sixty (60) days after entry of such order.

        10.5.10  Is on terms acceptable to General Motors, as provided in any agreement between General Motors and Delphi which facilitates the transactions contemplated hereunder.

        10.5.11  Is received by the Bid Deadline.

        10.5.12  Delphi will have the right, in its sole discretion, to entertain bids for the Purchased Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.  Notwithstanding the foregoing, Buyer Parent will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.

        10.6    **Subsequent Bid**.  Each Qualified Bid other than the initial bid of Buyer Parent is referred to as a "**Subsequent Bid**".  If Delphi does not receive any Qualified Bids other than the Agreement received from Buyer Parent, Delphi will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of this Agreement.  If Delphi receives a bid that does not conform to one or more of the requirements specified in Section 10.5 herein, but determines that such bid is to be treated as a Qualified Bid with a higher value as defined in Section 10.5.6 herein, then any Qualified Bidder (including Buyer) shall have the opportunity to submit a bid at the Auction on the same basis, so long as such bid has a value of at least $1,000,000 more than the non-conforming bid.  Delphi shall notify the Buyer and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids no later than five (5) days following the expiration of the Bid Deadline.

        10.7    **Bid Protection**.  Recognizing Buyer Parent's expenditure of time, energy and resources, Delphi has agreed to provide certain bidding protections to Buyer Parent.  Specifically, Delphi has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor that all other Potential Bids must exceed.  As a result, Delphi has agreed that it will pay to Buyer Parent the Break-Up Fee and/or the Expense Reimbursement pursuant to, and subject to the terms of, Section 9.2 hereof.

10.8    **Auction, Bidding Increments and Bids Remaining Open**. If Delphi receives at least one (1) Qualified Bid in addition to the Agreement, Delphi will conduct an auction (the "**Auction**") of the Purchased Assets and the Business (upon notice to all Qualified Bidders who have submitted Qualified Bids) at 10:00 a.m. EST on or before the tenth (10th) Business Day following the expiration of the Bid Deadline, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285 or Four Times Square, New York, New York 10036 (at Delphi's election) or such later time or other place as Delphi will notify with Buyer Parent's consent not to be unreasonably withheld all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

10.8.1  Only Delphi, Buyer Parent, any representative of GM, any representative of the UAW, any representative of the Committee and the Equityholders' Committee, any representative of Delphi's secured lenders (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only Buyer Parent and the other Qualified Bidders who have timely submitted a Qualified Bid will be entitled to make any Subsequent Bids at the Auction.  At the Auction, each Qualified Bidder will confirm on the record that it has not engaged in any collusion with respect to the Bidding Process or the Sale.

10.8.2  At least three (3) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least two (2) Business Days prior to the Auction, Delphi will provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction, GM, and the UAW.

10.8.3  All Qualified Bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction and put on the record.

10.8.4  Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, General Order M-331 issued by the United States Bankruptcy Court for the Southern District of New York, or any order of the Bankruptcy Court entered in connection herewith.

10.8.5  Bidding at the Auction will begin with the highest or otherwise best Qualified Bid and continue in minimum increments of at least $1,000,000 higher than the previous bid or bids. The Auction will continue in one or more rounds of bidding and will conclude after each Qualified Bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (a) Buyer Parent may elect to have the amount of the Break-Up Fee and Expense Reimbursement, as provided in Section 10.5.6, credited towards its Subsequent Bids and (b) Sellers may consider

the value of any assets and/or equity interests to be retained by any Seller or any Liabilities to be assumed by the Bidder.

10.8.6  The concluding date and time of the Auction shall be stated on the record. At the conclusion of the Auction, or as soon thereafter as practicable, Seller, in consultation with its financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Purchased Assets and the Business received at the Auction (the "**Successful Bid**", and the bidder making such bid, the "**Successful Bidder**"), as well as identifying the Alternate Bidder.  No further bids shall be considered by Delphi or the Bankruptcy Court following the conclusion of the Auction.

10.9    **Acceptance of Qualified Bids**.  Sellers will sell the Purchased Assets for the highest or otherwise best Qualified Bid, as determined by Delphi, upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "**Sale Hearing**").  If, after an Auction in which Buyer Parent: (i) will have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it will, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee, Expense Reimbursement and Deposit Amount.  Delphi's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Delphi's acceptance of the bid.  Delphi will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

10.10    **Sale Hearing**.  The Sale Hearing will be held before the Honorable Judge Robert Drain on February 26, 2008 at 10:00 a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court Approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing only if (a) such extension would still enable Sellers to comply with the time requirements in Section 9.1.2.D hereof after consultation with Buyer or (b) Buyer is not the Successful Bidder at the Auction.  In all other instances, the Sale Hearing may only be adjourned upon written consent of Buyer, which consent shall not be unreasonably withheld.  If Delphi does not receive any Qualified Bid (other than the Qualified Bid of Buyer Parent), Delphi will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Purchased Assets to Buyer Parent following entry of the Sale Approval Order.  If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi will seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "**Alternate Bid**" and such bidder, the "**Alternate Bidder(s)**").  Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder, then the Alternate Bid will be deemed to be the Successful Bid and Delphi will be authorized, but not directed, to effectuate a sale to the Alternate Bidder without further order of the Bankruptcy Court.

10.11    **Return of Good Faith Deposit**.  The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids (except for the Successful Bidder) will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the Successful Bid by a Qualified Bidder), until two (2) Business Days following the Closing of the Sale (the "**Return Date**").  If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of Delphi.  On the Return Date, Delphi will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

10.12    **Reservation of Rights**.  Delphi, after consultation with the agents for its secured lenders and the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than Buyer Parent's Qualified Bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of  the Sale; or (c) contrary to the best interests of Sellers, their estates and creditors as determined by Delphi in its sole discretion.

## 11.    **LIABILITY, INDEMNIFICATION**.

11.1    **LIMITATIONS OF LIABILITY**.  NONE OF THE BUYERS OR SELLERS UNDERTAKES ANY LIABILITY FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, INDIRECT OR PUNITIVE DAMAGES; DELPHI WILL NOT BE LIABLE FOR ANY, AND BUYERS ASSUME LIABILITY FOR ALL, PERSONAL INJURY AND PROPERTY DAMAGE CONNECTED WITH BUYERS INVESTIGATION AND EXAMINATION OF THE ACQUIRED ASSETS AND THE SALE COMPANIES, AND OTHER THAN AS EXPRESSLY SET FORTH HEREIN, THE HANDLING, TRANSPORTATION, POSSESSION, PROCESSING, FURTHER MANUFACTURE OR OTHER USE OR RESALE OF ANY OF THE ACQUIRED ASSETS OR THE ASSETS OF THE SALE COMPANIES AFTER THE CLOSING DATE, WHETHER SUCH ACQUIRED ASSETS OR THE ASSETS OF THE SALE COMPANIES ARE USED OR RESOLD ALONE OR IN COMBINATION WITH OTHER ASSETS OR MATERIALS; AND BUYERS ACKNOWLEDGE THAT, SUBJECT TO THE REPRESENTATIONS AND WARRANTIES MADE HEREIN AND IN THE ANCILLARY AGREEMENTS, THE ACQUIRED ASSETS AND SALE SECURITIES ARE BEING SOLD IN THEIR PRESENT STATE AND CONDITION, "AS IS, WHERE IS," WITH ALL FAULTS, AND BUYERS ARE PURCHASING AND ACQUIRING SUCH ACQUIRED ASSETS AND SALE SECURITIES ON THAT BASIS PURSUANT TO BUYERS' OWN INVESTIGATION AND EXAMINATION AFTER HAVING BEEN PROVIDED WITH AN ADEQUATE OPPORTUNITY AND ACCESS TO SUCH ACQUIRED ASSETS AND THE SALE COMPANIES TO COMPLETE SUCH INVESTIGATION OR EXAMINATION.

11.2    **Survival**.  Except with respect to Sections 2.1 (*Transfers by Sellers and their Affiliates*), 2.2 (*Assumption of Liabilities*), 2.3 (*Retained Liabilities*), 2.4 *(Sale Company*

*Liabilities)*, 2.5 *(JV Company Liabilities)*, 2.6 *(Deferred Items)*, 3.3 *(Preparation of Closing Net Assets Statement)*, 3.4 *(Post-Closing Purchase Price Adjustment)*, 3.5 *(Allocation of Purchase Price)*, 6.1 *(Conduct of the Business)* which will survive for only 120 days following Closing, 6.4 *(Non-Competition)*, 6.5 *(Tax Matters; Cooperation; Preparation of Returns; Tax Elections)*, 6.6 *(Employees; Benefit Plans; Labor Matters)*, 6.8 *(Technical Documentation)*, 6.9 *(Books and Records and Litigation Assistance from and after Closing)*, 6.10 *(Corporate Names)*, 6.11 *(Information Technology; Intellectual Property Rights and Licenses)*, 6.12 *(Letters of Credit)*, Section 6.13 *(Competition Clearance)*, 6.14 *(Further Actions)*, 6.15 *(Further Assurances)*, 6.16 *(Shared Items Transferred to Buyers)*, 6.18 *(Guarantee by Buyer Parent)*, 6.19 *(Customs Duties)*, 6.20 *(Nonsolicitation)*, 6.21 *(Confidentiality)*, 6.22 *(KDAC)*, 6.23 *(No Right of Set-Off)*, 6.24 *(Enterprise Contracts)*, 6.25 *(Buyer's Covenant to Manufacture Products)*, **6.27** *(Somerton Equipment)*, 6.29 *(2007 Dividends)*, 6.31 *(Athens, Alabama – Plant 22)*, *6.33 (Doblo 262 Column Program)*, 8.6 *(Post-Closing Transfer of Intellectual Property Rights)*, Article 11 *(Liability, Indemnification)* and Article 12 *(Miscellaneous)* *(and the definitions referenced in this Agreement and used therein)*, the representations, warranties, covenants and agreements of the parties will not survive the Closing.

11.3    **Indemnification**.  Except as may be expressly set forth in this Agreement or in an Ancillary Agreement, no Seller or Buyer will be required to indemnify any other party to any of such agreements.

11.3.1  **Buyers' Indemnification of Delphi**.  Subject to Section 6.18, from and after the Closing, Buyers will, severally and not jointly indemnify, defend and hold harmless Sellers and their Affiliates and their respective directors, officers, employees, advisors, representatives and agents from and against all Losses actually incurred by Sellers and their Affiliates and their respective directors, officers, employees, partners, advisors, representatives and agents, including in connection with any actions, suits, demands, assessments, judgments and settlements, in any such case reduced by the amount of (i) insurance proceeds recovered from any Person or entity with respect thereto and (ii) other third party recoupment ("**Indemnifiable Losses**") relating to, resulting from or arising out of:

A.    Any Assumed Liability or the failure of any of the Sale Companies (or their successors or assigns) to pay, perform and discharge when due any of their respective Liabilities except, in the case of the Sale Companies, for any matters for which Sellers have expressly agreed to indemnify Buyer and its Affiliates pursuant to this Agreement or any Ancillary Agreement; and

B.    Any breach by any Buyer of any covenant or agreement of any Buyer contained in this Agreement or any Ancillary Agreements.

11.3.2  **Sellers' Indemnification of Buyers**.  From and after the Closing, each Seller will (with respect to the Acquired Assets, Liabilities and/or covenants sold by, retained by or applicable to such Seller), severally (and, solely with respect to the obligations of the Filing Affiliates pursuant thereto, Delphi will jointly and severally), indemnify, defend and hold harmless Buyers and their Affiliates and their respective directors, officers, employees, partners, advisors, representatives and agents from and against all Indemnifiable Losses relating to, resulting from or arising out of:

A.   Any Retained Liability and Indemnifiable Sale Company Liabilities, but only to the extent that a written notice of claim thereof is delivered to the Sellers during the:

(i)    in the case of any Product Warranty Liability, seventy-two (72) months after the Closing Date;

(ii)    in the case of Products Liability and Insured Liabilities, thirty-six (36) months after the Closing Date;

(iii)    in the case of Retained Environmental Liabilities, ninety-six (96) months after the Closing Date.

B.   Any breach by any Seller of any covenant or agreement of any Seller contained in this Agreement or any Ancillary Agreements:

11.3.3   **Additional Provisions Regarding Environmental Indemnification and Covenants**.

A.   Solely for Environmental Damages arising from circumstances which are simultaneously Pre-Closing Environmental Contamination and Post-Closing Environmental Contamination, or simultaneously a Pre-Closing Compliance Matter and a Post-Closing Compliance Matter (as the case may be), such Environmental Damages shall be allocated between Sellers and Buyers in an equitable manner based upon available evidence with respect to the timing, duration and causation of, and culpability for, the facts, events and circumstances giving rise to such Environmental Damages.  In the absence of reasonable basis for allocation in accordance with the previous sentence, such allocation shall be established in proportion to the time that such Pre-Closing Environmental Contamination or Pre-Closing Compliance Matter existed as compared to the time that such Post-Closing Environmental Contamination or Post-Closing Compliance Matter existed, as the case may be.

B.   Sellers shall not be liable for Environmental Damages:

(i)    where Buyers make a claim for Pre-Closing Environmental Contamination based on information other than from an Environmental Claim or a subsurface investigation which is not (a) conducted at the direction of a Governmental Authority, or (b) required by Environmental Laws, it being agreed that Buyers cannot otherwise investigate or cause to be investigated any Pre-Closing Environmental Contamination;

(ii)    where Buyers disclose or cause to be disclosed information to any Governmental Authority or third party without the prior written consent of Sellers (not to be unreasonably withheld or delayed), insofar as Sellers and Buyers agree (except as provided above) to treat as confidential all information regarding the environmental condition of the facilities and all information gathered, known or obtained as a result of the sale and purchase of the Purchased Assets or performing any obligation or exercising any right under this Agreement; provided, however, that the following shall not be deemed to be a disclosure for purposes of this subsection (ii):

(1)    where the disclosure is required by an Environmental Law,

(2)    where the information is clearly in the public domain,

(3)    where the disclosure is necessary in connection with ordinary course communications with Governmental Authorities consistent with accepted industry practice, provided that any disclosure of Pre-Closing Environmental Contamination or Pre-Closing Compliance Matter initiated by Buyer or any gratuitous disclosure by Buyer of the existence of Pre-Closing Contamination or Pre-Closing Compliance Matter without an environmental regulatory justification shall not constitute "disclosure in connection with ordinary course communications" for purposes hereof, or

(4)    where the Parties agree in writing to such disclosure (such agreement not to be unreasonably withheld);

(iii)    where Buyers use a Real Property for a use other than an industrial use, or seek to or change the zoning or land use designation or classification of a Real Property to a classification more sensitive than the industrial zoning or land use designation or classification;

(iv)    where the Buyers make a claim and Buyers did not take reasonable action to avoid or mitigate any Environmental Damages; or

(v)    Except in connection with the closure of the Manufacturing Facilities listed on Schedule 11.3.3, to the extent Environmental Damages were created or increased where Buyers cease operations at or close or demolish all or a portion of a facility which is part of the Business which cessation or closure/demolition (a) causes an Environmental Claim to be brought against Buyers by operation of law or otherwise, or (b) increases the Environmental Damages as a result.

C.    The liability of the non-claiming Party for any claim for indemnification related to Assumed Environmental Liabilities or Retained Environmental Liabilities shall terminate absolutely twelve (12) months after a written denial by the non-claiming Party, if legal Proceedings in respect of such claim have not been commenced within such twelve (12) month period, except that the running of the 12 month period shall be tolled for the same time a pending resolution of an issue is the subject of any agreed dispute resolution procedure.

D.    (1)    Environmental investigatory, remedial or corrective action with regard to matters constituting Retained Environmental Liabilities shall be conducted by the Sellers applying best engineering judgment and the common practices in the jurisdiction in which the relevant property is located.  In connection therewith, the Sellers shall provide Buyers

90

with an opportunity to review and comment on all such work plans or scopes of work, studies or site remediation plans, and any material decisions or determinations associated with the implementation thereof, which comments the Sellers will consider and adopt where reasonable, and Sellers shall not unreasonably interfere with Buyers' conduct of the Business at the relevant property.

(2)  As part of the strategy for conducting environmental remediation, Sellers can, at their option and to the extent permitted by Environmental Law, include environmental risk analysis and other risk evaluation methods, institutional engineering control as is appropriate.

(3)  Sellers shall not be obligated to conduct environmental remediation to any standard beyond that which is required under applicable Environmental Law.

E.  On and after the Closing Date, Sellers and Buyers shall cooperate in taking reasonable steps to effect the transfer or procure the reissuance of any Environmental Permit necessary to operate the Business.

F.  With respect to disputes regarding matters related to Environmental Laws or environmental matters, any dispute resolution into which the parties enter shall be commenced and conducted as otherwise consistent with this Agreement, provided, however, that the individuals resolving any such dispute shall be skilled in environmental law, investigation and remediation in the jurisdiction in which the relevant Real Property is located, and shall be qualified environmental lawyers or environmental consultants as the circumstances of the dispute reasonably dictate.

### 11.3.4  **Defense of Claims**.

A.  If any Indemnitee receives notice of the assertion of any Claim or of the commencement of any action or proceeding by any Person or Governmental Authority that is not a party to this Agreement (a "**Third Party Claim**") against such Indemnitee, with respect to which an Indemnifying Party is obligated to provide indemnification under this Agreement, the Indemnitee will give such Indemnifying Party reasonably prompt written notice thereof, but in any event not later than 20 calendar days after receipt of notice of such Third Party Claim; provided, however, that the failure of the Indemnitee to notify the Indemnifying Party shall only relieve the indemnifying party from its obligation to indemnify the Indemnitee pursuant to this Section 11.3 to the extent that the Indemnifying Party is materially prejudiced by such failure (whether as a result of the forfeiture of substantive rights or defenses or otherwise).  Upon receipt of notification of a Third Party Claim, the Indemnifying Party shall be entitled, upon written notice to the Indemnitee, to assume the investigation and defense thereof if such Indemnifying Party delivers a written agreement in form and substance reasonably satisfactory to the Indemnitee agreeing to indemnify the Indemnifying Party with respect to such Third Party Claim; provided that notwithstanding anything herein to the contrary, the Indemnifying Party shall have no right to assume or continue the defense of any Third Party Claim (and the Indemnitee shall have the exclusive right to defend it) if the Indemnitee reasonably determines that the Indemnifying Party does not have sufficient financial resources to defend or discharge such Third Party Claim.  Whether or not the Indemnifying Party elects to assume the

investigation and defense of any Third Party Claim, the Indemnitee shall have the right to employ one separate counsel (plus one separate local counsel) and to participate in the investigation and defense thereof; provided, however, that the Indemnitee shall pay the reasonable fees and disbursements of such separate counsel.  Without the prior written consent of the Indemnitee, the Indemnifying Party will not enter into any settlement of any Third Party Claim that would lead to liability or create any financial or other obligation on the part of the Indemnitee unless such settlement includes as an unconditional term thereof the release of the Indemnitee from all liability in respect of such Third Party Claim.

B.    Any claim by an Indemnitee on account of an Indemnifiable Loss that does not result from a Third Party Claim will be asserted by giving the Indemnifying Party reasonably prompt written notice thereof and the Indemnifying Party will have a period of 30 calendar days within which to respond in writing to such claim.

C.    It is expressly agreed that any Product Warranty Liability for which indemnification may be sought is to be treated as a Third Party Claim and the Indemnifying Party shall be entitled to assume the defense of such claim and participate in the defense of such claim, and, in no event shall any Retained Product Warranty Liability be settled without the consent of Delphi (such consent not to be unreasonably withheld).

D.    The Indemnifying Party shall have the right to pursue any third-party for liability or contribution in connection with any Liability for which indemnification is sought, including the right to pursue suppliers, and each Party shall be deemed to have assigned or retained, as appropriate, such contractual or other rights as are necessary for such Party to prosecute such action.

## 12.    **MISCELLANEOUS**.

12.1    **Fees and Expenses**.  Except as set forth in Section 9.2 hereof and except as otherwise provided in the Ancillary Agreements, Delphi, on behalf of Sellers, on the one hand, and Buyer Parent, on behalf of Buyers, on the other hand, will each bear its own expenses and the expenses of its Affiliates in connection with the preparation and negotiation of this Agreement.  Except as set forth in Section 9.2 hereof, Buyer Parent will be solely responsible for: (i) all expenses in connection with its due diligence review of the Business, including, without limitation, surveys, title work, title inspections, title searches, environmental testing or inspections, building inspections, UCC lien and other searches; and (ii) any cost (including any filing fees) in connection with notarization, registration or recording of this Agreement or an Ancillary Agreement required by applicable Law.

12.2    **Bulk Sales Laws**    Each Party hereto waives compliance by the other Parties with any applicable bulk sales Law.

12.3    **Payments in Dollars**.  Except as otherwise provided in this Agreement or an Ancillary Agreement, all payments pursuant hereto will be made by wire transfer in U.S. Dollars in same day or immediately available funds.

12.4    **Amendment**.  This Agreement may not be amended, modified or supplemented except upon the execution and delivery of a written agreement executed by the duly authorized representative or officer of the Parties.

12.5    **Assignment**.  This Agreement will be binding on and inure to the benefit of the successors and assigns of each Party and their Affiliates, provided, that no assignment of any rights or obligations hereunder will be made by any Seller or Buyer without the written consent of the other Party, except the assignment of this Agreement by a Filing Affiliate to a succeeding entity following such Filing Affiliate's emergence from Chapter 11 (which assignment will not require the other Party's consent); provided further that Buyers may assign all or a portion of their rights or obligations under this Agreement (i) to any subsidiary of Buyer Parent, (ii) in connection with the direct or indirect sale, merger, consolidation or similar reorganization of, all or a portion of Buyers or Buyers' business and/or (iii) to their lenders under Buyers' and their Affiliates' financing documents; provided that each such entity or entities agree in writing to be bound by all of the terms, conditions and provisions contained herein and that neither the applicable Buyer(s) nor Buyer Parent is released from its obligations hereunder.

12.6    **No Successor Liability**.  Except where expressly prohibited under applicable law or otherwise expressly ordered by the Bankruptcy Court, upon the Closing, the Buyers shall not be deemed to (a) be the successor of the Filing Affiliates, (b) have, de facto, or otherwise, merged with or into the Filing Affiliates, (c) be a mere continuation or substantial continuation of the Filing Affiliates or the enterprise(s) of the Filing Affiliates, or (d) be liable for any acts or omissions of the Filing Affiliates in the conduct of the Business or arising under or related to the Purchased Assets other than as set forth in this Agreement.  Without limiting the generality of the foregoing, and except as otherwise provided in this Agreement, the Buyers shall not be liable for any Claims against the Filing Affiliates or any of their predecessors or affiliates, and the Buyers shall have no successor or vicarious liability of any kind or character whether known or unknown as of the Closing of the Sale, whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Business or any obligations of the Filing Affiliates arising prior to the Closing of the Sale, except as provided in the Agreement, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Business prior to the Closing of the Sale.  The Buyers acknowledge and agree that this Section 12.6 shall not in any be deemed to expand or modify Sellers' indemnification obligations under this Agreement or any Ancillary Agreement.

12.7    **Waiver**.  Any waiver by Sellers or Buyers of any breach or of a failure to comply with any provision of this Agreement: (i) will be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) will not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any other provision of this Agreement.  At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties; (b) waive any inaccuracies in the representations and warranties contained in this Agreement or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein.  Except as otherwise expressly provided in this Agreement, any agreement on the part of a Party to any such extension or waiver will be valid only if set forth in an instrument in writing signed on behalf of such Party.

12.8    **Notices**.  Any notice, request, consent or other communication required or permitted to be given under this Agreement will be in writing and will be deemed to have been sufficiently given or served for all purposes: (i) when personally delivered; (ii) on the first (1st) Business Day after sent by a nationally or internationally recognized overnight courier service with signature to the recipient at the address below indicated; (iii) on the third (3rd) Business Day after sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) when sent if sent by facsimile with confirmation of receipt:

<u>If to any Buyer</u>:        **c/o PLATINUM EQUITY ADVISORS, LLC**
360 N. Crescent Drive, South Building
Beverly Hills, CA  90210
Attn:  Eva Kalawski
Tel.:  (310) 712-1850
Fax.: (310) 712-1863

<u>With a copy to</u>:        **KIRKLAND & ELLIS LLP**
777 South Figueroa Street, 37th Floor
Los Angeles, CA  90017
Attn:  Richard L. Wynne
Tel.:  (213) 680-8202
Fax.: (213) 680-8500

<u>If to Delphi</u>:        **DELPHI CORPORATION**
5725 Delphi Drive
Troy, Michigan 48098
Attn:
Fax No.:

<u>With a copy to</u>:        **DELPHI CORPORATION**
5725 Delphi Drive
Troy, Michigan 48098
Attn:  Deputy General Counsel -
        Transactional & Restructuring
Fax:  (248) 813-2491

<u>With a copy to</u>:        **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
4 Times Square
New York, New York 10036
Attn:  Eric Cochrane
        Marie Gibson
Fax:  (212) 735-2000

<u>provided</u>, <u>however</u>, if either Party will have designated a different addressee by notice, then to the last addressee so designated.

94

12.9    **Entire Agreement**.  This Agreement, together with the Ancillary Agreements, the Confidentiality Agreement contain the entire agreement and understanding of the Parties with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof and thereof.

12.10    **Counterparts**.  This Agreement may be executed in two or more counterparts, each of which will be deemed an original, and all of which will constitute one and the same Agreement.  Facsimile signatures will be treated as originals.

12.11    **Publicity**.  Prior to the Closing and for thirty days thereafter, except as required by Law (and then only after prior consultation with the other Party) or in connection with the Bankruptcy Cases, neither Party (nor any of the other Buyers and Sellers) will issue any press release or make any public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party (not to be unreasonably withheld, delayed or conditioned).

12.12    **Headings**.  The headings contained in this Agreement are for convenience only, do not constitute a part of this Agreement and will not be deemed to limit or affect any of the provisions hereof.

12.13    **Severability**.  The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof.  If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable: (i) a suitable and equitable provision will be substituted therefore in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision; and (ii) the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected by such invalidity or unenforceability, nor will such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

12.14    **Third Parties**.  Nothing expressed or implied in this Agreement is intended or will be construed to confer upon or give to any Person, other than the Parties, their Affiliates and their respective permitted successors or assigns, any Claims, rights or remedies under or by reason of this Agreement.

12.15    **Governing Law**.  This Agreement will in all respects be governed by and construed in accordance with the laws of the State of New York, and to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

12.16    **Venue and Retention of Jurisdiction**.  The Parties irrevocably and unconditionally submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court); provided, however, this Section 12.16 shall not be applicable in the event the Bankruptcy Cases have closed, in which case the Parties irrevocably and unconditionally submit to the jurisdiction of the federal

courts in the Southern District of New York and state courts of the State of New York, county of Manhattan, for any litigation arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any litigation relating thereto except in the federal courts in the Southern District of New York and state courts of the State of New York, county of Manhattan).

12.17    **No Right of Setoff**.  Except as otherwise provided herein, neither Party nor any of its Affiliates may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it under this Agreement or any Ancillary Agreement against any amounts owed under this Agreement or any Ancillary Agreement by such Person to the other Party or any of such other Party's Affiliates.

12.18    **Risk of Loss**.  Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business will be borne exclusively by Sellers.

12.19    **Enforcement of Agreement**. The Parties agree that irreparable damage would occur in the event that any provision of this Agreement or any Ancillary Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties will be entitled to an injunction or injunctions to prevent breaches of this Agreement or any Ancillary Agreement and to enforce specifically the terms and provisions hereof and thereof, this being in addition to all other remedies available at law or in equity.

12.20    **Sellers' Payment Obligations**.  The Sellers' payment obligations to Buyers under this Agreement, the Exhibits to this Agreement, or the Ancillary Agreements shall survive termination of this Agreement and shall constitute an administrative expense of the Sellers pursuant to Sections 503(b) or 507(b) of the Bankruptcy Code, except that the Sellers' obligation to pay the Break-Up Fee and Expense Reimbursement shall constitute a super-priority administrative expense claim pursuant to Section 9.2.4 hereof.  Nothing contained in any chapter 11 plan confirmed in these cases or any order confirming any such plan or in any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agreement, the Bidding Procedures Order and the  Sale Approval Order.  The Debtors' obligations under this Agreement (including all Exhibits and  Ancillary Agreements) shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon Debtors, and the reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed plan or plans in the Debtors' cases.

12.21    **Bankruptcy Court Approval**.  Notwithstanding anything to the contrary herein, Sellers' obligations under Section 9.2. are expressly subject to entry of the Bidding Procedures Order.  All other obligations of the Sellers hereunder are subject to entry of the Sale Approval Order.


**[Remainder of the page left intentionally blank.]**

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By:_____
    Name:
    Title:


**STEERING SOLUTIONS
CORPORATION**

By:_____
    Name:
    Title:


The following U.S. Persons sign this Agreement solely with respect to the Acquired Assets or Sale Securities being bought or sold by such Person.


**DELPHI AUTOMOTIVE SYSTEMS LLC**            **DELPHI CHINA LLC**

By: _____            By: _____
    Name:                                       Name:
    Title:                                      Title:


**DELPHI TECHNOLOGIES, INC.**            **DELPHI AUTOMOTIVE SYSTEMS
(HOLDINGS) INC.**

By: _____            By: _____
    Name:                                       Name:
    Title:                                      Title:

## SCHEDULES

| | |
|---|---|
| Schedule 1 | Detail of Sellers and Buyers |
| Schedule 1.1.A | Buyers Knowledge |
| Schedule 1.1.B | Sellers Knowledge |
| Schedule 1.1.C | Products |
| Schedule 1.1.E | NTD/POS |
| Schedule 1.1.F | Replacement Licenses |
| Schedule 1.2 | Details of Buyers |
| Schedule 2.1.2. | Acquired Assets of Technical Centers and Sales Offices |
| Schedule 2.1.3.L | Cadiz included Contracts |
| Schedule 2.1.3.O | Excluded Computer Hardware, Equipment, Software, Contracts and Other Assets |
| Schedule 2.2.15 | Export Liabilities |
| Schedule 3.3.1 | Net Assets |
| Schedule 4.3.1 | Sale Companies and JV Companies |
| Schedule 4.3.2 | Capital Stock |
| Schedule 4.4.1(a) | Historical Financial Statements |
| Schedule 4.4.1(b) | Transferable Balance Sheet |
| Schedule 4.4.2 | Exceptions to GAAP |
| Schedule 4.5 | No Conflicts or Approvals |
| Schedule 4.6 | Sufficiency of Acquired Assets |
| Schedule 4.7 | Noncompliance with Law |
| Schedule 4.8 | Proceedings against Sellers |
| Schedule 4.9 | Absence of Certain Changes |
| Schedule 4.10.3 | Tax Matters |
| Schedule 4.10.4 | Tax Examinations |
| Schedule 4.10.7 | Tax Liens |
| Schedule 4.11.1 | Employees |
| Schedule 4.11.2 | Employee Benefit Plans |
| Schedule 4.11.4 | ERISA Compliance |
| Schedule 4.11.5 | Proceedings Relating to Seller Employee Benefit Plans |
| Schedule 4.11.6 | ERISA Liabilities |
| Schedule 4.11.8 | Welfare Benefits |
| Schedule 4.11.9 | Contributions to Seller Employee Benefit Plans |
| Schedule 4.11.11 | Collective Bargaining Agreements |
| Schedule 4.11.12 | Labor Relations |
| Schedule 4.12.1.A | Patents |
| Schedule 4.12.1.B | Trademarks |
| Schedule 4.12.1.C | Copyrights |
| Schedule 4.12.2 | Licenses to Affiliates |
| Schedule 4.12.3 | Infringement and Allegations of Infringement of Third Party Intellectual Property |
| Schedule 4.12.4 | Infringement of the Purchased Intellectual Property |
| Schedule 4.12.5 | Intellectual Property Notices |

| | |
|---|---|
| Schedule 4.13.1 | Material Contracts |
| Schedule 4.13.2 | Default/Post-Petition Contracts |
| Schedule 4.14 | Environmental Matters |
| Schedule 4.15 (a) | Insurance Policies |
| Schedule 4.15(b) | Transferred Insurance Policies |
| Schedule 4.16.1 | Defects in Title for Personal Property Assets |
| Schedule 4.16.3 | Other Inventory Locations |
| Schedule 4.16.4 | Machinery, Equipment and Capitalized Tools |
| Schedule 4.17.1 | Leased Real Property |
| Schedule 4.17.2 | Owned Real Property |
| Schedule 4.19 | Affiliate Transactions |
| Schedule 6.1.1 | Exceptions to Covenants Regarding Conduct of Business prior to the Closing |
| Schedule 6.3 | Assumed and Assigned U.S. Contracts |
| Schedule 6.4.1 | Product Subcomponents |
| Schedule 6.6.7 | Severance or Termination Agreements |
| Schedule 6.11.1 | Excepted Shared Intellectual Property |
| Schedule 6.11.1.A | Excluded Products |
| Schedule 6.11.5 | Transfer of Proportional Share of Licenses |
| Schedule 6.11.8.A | Separation Plan |
| Schedule 6.11.8.B | Facilities Separation Plan |
| Schedule 6.11.8.C | Certain IT Separation Activities |
| Schedule 6.12 | Letters of Credit |
| Schedule 6.16 | Shared Items Transferred to Buyers |
| Schedule 6.22 | KDAC Reference Balance Sheet |
| Schedule 6.24 | Other Services |
| Schedule 7.2.4 | Outsourcing Agreements |
| Schedule 8.2.2 | Exceptions to Purchased Intellectual Property |
| Schedule 11.3.3 | Certain Manufacturing Facilities |

## EXHIBITS

| | |
|---|---|
| Exhibit 6.2.1.A | Bidding Procedures Order |
| Exhibit 6.2.1.B | Sale Approval Order |
| Exhibit 6.17.3 | Buyers' Balance Sheet |
| Exhibit 6.22 | KDAC Share Transfer Agreement |
| Exhibit 8.2.1.A | Somerton, Australia Assignment and Assumption Agreement |
| Exhibit 8.2.1.B | Paris Technical Center Sublease |
| Exhibit 8.2.1.C | Mexico Technical Center Sublease |
| Exhibit 8.2.2.A | Patent Assignment |
| Exhibit 8.2.2.B | Trademark Assignment |
| Exhibit 8.2.2.C | Copyright Assignment |
| Exhibit 8.2.3.A | Mexico Asset Sale Agreement |
| Exhibit 8.2.3.B | China Share Transfer Agreements |
| Exhibit 8.2.3.C | France Asset Sale Agreement |
| Exhibit 8.2.3.D | Australia Asset Sale Agreement |
| Exhibit 8.2.3.E | India Asset Sale Agreement |
| Exhibit 8.2.3.F | Germany Asset Sale Agreement |
| Exhibit 8.2.3.G | Italy Asset Sale Agreement |
| Exhibit 8.2.3.H | Korea Asset Sale Agreement |
| Exhibit 8.2.3.I | Japan Asset Sale Agreement |
| Exhibit 8.2.3.J | Poland Share Transfer Agreement |
| Exhibit 8.2.3.K | Brazil Quota Transfer Agreement |
| Exhibit 8.2.4 | Deposit Escrow Agreement |
| Exhibit 8.2.5 | Transition Services Agreement |
| Exhibit 8.2.6 | Bills of Sale |
| Exhibit 8.2.7 | Assignment and Assumption Agreements |
| Exhibit 8.3.2 | Quit Claim Deed for Owned Real Property |

## SCHEDULE 1

## DETAILS OF SELLERS AND BUYERS

| | ASSET/ STOCK | SALE COMPANY/ JV COMPANIES | SELLER | BUYER |
|---|---|---|---|---|
| **MANUFACTURING FACILITY:** | | | | |
| Saginaw, Michigan | Asset | N/A | Delphi Automotive Systems LLC | |
| New Castle, Indiana | Asset | N/A | Delphi Automotive Systems LLC | |
| Athens, Alabama | Asset | N/A | Delphi Automotive Systems LLC | |
| Queretaro, Mexico | Asset | N/A | Alambrados y Circuitos Electricos, S.A. de CV | |
| Juarez, Mexico | Asset | N/A | Rio Bravo Electricos, S.A. de C.V. | |
| Sabinas Hidalgo, Mexico | Asset | N/A | Delphi Ensamble de Cables y Componentes, S. de R.L. de C.V. | |
| Strasbourg, France | Asset | N/A | Delphi France SAS | |
| Somerton, Australia | Asset | N/A | Delphi Automotive Systems Australia Ltd. | |
| Suzhou, China | Stock | Sale Company – Saginaw Steering (Suzhou) Co., Ltd. | Delphi Automotive Systems Singapore Pte. Ltd. | |
| Bangalore, India | Asset | N/A | Delphi Automotive Systems Private Ltd. | |
| Porto Alegre, Brazil | Stock | Sale Company – Newco (to be established) | 99.9% - Delphi Automotive Systems do Brasil, Ltda. 0.1% - to be established | |
| Tychy, Poland Gliwice, Poland | Stock | Sale Company - Delphi Polska Automotive Systems Sp. zoo | Delphi Automotive Systems (Holding), Inc. | |
| Hebei, China | Stock (60%) | JV Company - Delphi Saginaw Lingyun Drive Shaft Co. Ltd. | 60% - Delphi China LLC | |
| Wuhu, China | Stock (60%) | JV Company - Saginaw Lingyun Driveshaft (Wuhu) Co., Ltd. | 60% - Delphi Automotive Systems Singapore Pte. Ltd. | |
| | | | | |
| **TECHNICAL CENTERS AND SALES OFFICES:** | | | | |
| Dearborn, Michigan | Asset | N/A | Delphi Automotive Systems LLC | |
| Milford, Michigan | Asset | N/A | Delphi Automotive Systems LLC | |
| Troy, Michigan | Asset | N/A | Delphi Automotive Systems | |

| | | | | |
|---|---|---|---|---|
| | | | LLC | |
| Casa Grande, Arizona | Asset | N/A | Delphi Automotive Systems LLC | |
| Juarez, Mexico | Asset | N/A | Delphi Automotive Systems, S.A. de C.V. | |
| Tremblay-en-France, France | Asset | N/A | Delphi France SAS | |
| Ruesselsheim, Germany | Asset | N/A | Delphi Deutschland GmbH | |
| Torino, Italy | Asset | N/A | Delphi Italia Automotive Systems S.r.l | |
| Beijing, China | Asset | Sale Company – Saginaw Steering (Suzhou) Co., Ltd. | Delphi Automotive Systems Singapore Pte. Ltd. | |
| Shanghai, China | Asset | Sale Company – Saginaw Steering (Suzhou) Co., Ltd. | Delphi Automotive Systems Singapore Pte. Ltd. | |
| Akishima, Japan | Asset | N/A | Delphi Automotive Systems Japan, Ltd. | |
| Seoul, Korea | Asset | N/A | Delphi Korea Corporation | |
| | | | | |
| **INTELLECTUAL PROPERTY**: | | | | |
| | Asset | N/A | Delphi Technologies, Inc. | |

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By: _____
Name: John P. Arle
Title: VP & Treasurer

**STEERING SOLUTIONS CORPORATION**

By: _____
Name:
Title:

The following U.S. Persons sign this Agreement solely with respect to the Acquired Assets or Sale Securities being bought or sold by such Person.

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By: _____
Name: John P. Arle
Title: VP & Treasure

**DELPHI CHINA LLC**

By: _____
Name: John P. Arle
Title: VP & Treasurer

**DELPHI TECHNOLOGIES, INC.**

By: _____
Name: John P. Arle
Title: VP & Treasurer

**DELPHI AUTOMOTIVE SYSTEMS (HOLDINGS) INC.**

By: _____
Name: John P. Arle
Title: CFO & Treasurer

97

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By:_____
    Name:
    Title:

**STEERING SOLUTIONS CORPORATION**

By:_____
    Name: Eva M. Kalawski
    Title: Vice President & Secretary

The following U.S. Persons sign this Agreement solely with respect to the Acquired Assets or Sale Securities being bought or sold by such Person.

**DELPHI AUTOMOTIVE SYSTEMS LLC**

 

By: _____
    Name:
    Title:

**STEERING SOLUTIONS CORPORATION**

By:_____
    Name: Eva M. Kalawski
    Title: Vice President & Secretary

**DELPHI TECHNOLOGIES, INC.**

 

By: _____
    Name:
    Title:

**DELPHI AUTOMOTIVE SYSTEMS (HOLDINGS) INC.**

 

By: _____
    Name:
    Title:

# EXHIBIT M

## TRANSACTION FACILITATION AGREEMENT

This Transaction Facilitation Agreement (the "Agreement"), dated as of December _10_, 2007, is entered into between Delphi Corporation, a Delaware corporation ("Delphi") and General Motors Corporation ("GM"), a Delaware corporation.

## RECITALS

A.    Delphi and Steering Solutions Corporation ("Steering Solutions") are the parties to a Master Sale and Purchase Agreement, dated approximately the date hereof ("Original MSA"), relating to the sale and purchase of the Combined Business (as defined in the MSA) (the "Transaction"). Under the competitive bidding process provided for in the MSA, Delphi may enter into an MSA ("Successor MSA") with a bidder other than Steering Solutions that is approved in writing by GM and provides the highest or otherwise best offer for the sale and purchase the Combined Business ("Successful Bidder"). References in this Agreement to (a) the "MSA" shall be deemed to refer to the Original MSA or any Successor MSA, as applicable, and (b) the "Buyer" shall be deemed to refer to Steering Solutions or any Successful Bidder

B.    Delphi has previously delivered to GM drafts of the Original MSA and has delivered to GM the final version of the Original MSA.

C.    Delphi and GM are the parties to a Master Restructuring Agreement, dated September 6, 2007, as amended (the "MRA"), pursuant to which GM made certain commitments to Delphi with respect to, among other things, recoveries of working capital in connection with the sale of certain businesses, including the Global Steering Business (as defined in the MRA), and Delphi granted GM certain approval rights with respect to the purchase price and identity of the buyer in connection with the sale of the Global Steering Business.

D.    GM has agreed to provide certain commitments and accommodations in accordance with this Agreement in order to induce Delphi to enter into the MSA with Buyer.

NOW THEREFORE, in consideration of the premises and the covenants and agreements contained in this Agreement and other good and valuable consideration, and intending to be legally bound, Delphi and GM (the "Parties") agree as follows:

## TERMS AND CONDITIONS

1.    **Condition to Effectiveness and Termination**.  This Agreement will become effective upon the entry of a final non-appealable order entered by the United States Bankruptcy Court for the Southern District of New York approving this Agreement. This Agreement shall automatically terminate upon any termination of the MSA other than in connection with a sale of the Combined Business pursuant to a Successor MSA.  Notwithstanding anything herein to the contrary, if this Agreement is terminated, all of the terms of the MRA that would otherwise be amended by this Agreement will be deemed to have been in full force and effect on the effective date of the MRA and the parties will perform their respective obligations thereunder.

2.    **Consent of Purchase Price and Identity of Buyer**.  GM consents to (a) Steering Solutions and its affiliates as the purchaser(s) in connection with the Transaction and (b)

the amount of the proceeds to be paid under the MSA in connection with the Transaction. The terms of this Agreement shall apply with respect to an alternative bidder other than Steering Solutions only in the event that GM has consented to the identity of such bidder and the terms of the applicable Successor MSA.

3.    **GM Payment**.  GM will pay to Delphi the amounts set forth in Sections 3.1 and 3.2 below and when paid, such payments will be made in full and final satisfaction of GM's obligations under Section 4.04(f) and 4.04(g) of the MRA:

3.1    Either of the following:

(A)    If the closing of the Transaction ("Closing Date") occurs on or before the effective date of the MRA:

(1)    GM will pay to Delphi on the date of the Closing Date $257 million;

(2)    GM will pay to Delphi within one (1) business day after the Closing Date the fees payable to Delphi's investment bank, Rothchild, Inc. in connection with the Transaction in the amount of $5 million;

(3)    GM will pay to Delphi "Day 2" information technology separation costs that are either (i) incurred by the Buyer and reimbursed to the Buyer by Delphi or (ii) incurred by Delphi in connection with the Transaction; provided, however, the aggregate amount to be paid by GM on account of (i) and (ii) above shall not exceed $10 million.  GM will pay the amounts due to Delphi under clause (i) no later than one (1) business day after Delphi pays such amounts Buyer.  GM will pay the amounts due under clause (ii) within ten (10) business days of receipt of invoices and reasonable documentation evidencing Delphi's payment or evidencing such expenses, but not prior to the Closing Date; and

(4)    Within one (1) business day after Delphi pays Buyer the one time working capital normalization payment of $30 million, GM will reimburse Delphi $30 million for such payment.

(B)    If the Closing of the Transaction has not occurred on or before the effective date of the MRA:

(1)    On the effective date of the MRA, GM will advance to Delphi (as an advance deposit against its accounts payable to Delphi and its U.S. and Mexican affiliates) $210 million (the "Initial Advance"). Upon the Closing Date, the Initial Advance shall cease to be an advance deposit and will be retained by Delphi;

(2)    On the Closing Date, GM will pay to Delphi $47 million;

2

(3)     Within one (1) business day after the Closing Date, GM will pay to Delphi the fees payable to Delphi's investment bank, Rothchild, Inc. in connection with the Transaction in the amount of $5 million;

(4)     GM will pay to Delphi "Day 2" information technology separation costs that are either (i) incurred by the Buyer and reimbursed to the Buyer by Delphi or (ii) incurred by Delphi in connection with the Transaction; provided, however, the aggregate amount to be paid by GM on account of (i) and (ii) above shall not exceed $10 million.  GM will pay the amounts due to Delphi under clause (i) no later than one (1) business day after Delphi pays such amounts Buyer.  GM will pay the amounts due under clause (ii) within ten (10) business days of receipt of invoices and reasonable documentation evidencing Delphi's payment or evidencing such expenses, but not prior to the Closing Date; and

(5)     Within one (1) business day after Delphi pays Buyer the one time working capital normalization payment of $30 million, GM will reimburse Delphi $30 million for such payment.

3.2     Either of the following:

(A)     In the event Delphi does not sell its 50% interest in KDAC Steering (as defined in the MSA) to Buyer within nine (9) months of the Closing Date and as a result of Delphi not transferring its interest in KDAC Steering, Delphi makes a $10 million payment to Buyer, GM will reimburse Delphi for such $10 million payment upon receipt from Delphi of an invoice and reasonable documentation evidencing such payment.  Delphi will provide GM with reasonable advance notice of the date on which it intends to make such payment to Buyer.  Within one (1) business day after Delphi makes such $10 million payment to Buyer, GM will make such $10 million payment to Delphi.

(B)     In the event Delphi transfers its interest in KDAC Steering to Buyer within nine (9) months of the Closing Date, GM will reimburse Delphi for the amount of KDAC Steering debt assumed by Buyer that Delphi reimburses Buyer upon receipt from Delphi of an invoice, reasonable evidence of such payment, and reasonable supporting documentation of the calculation of the amount of KDAC Steering debt assumed by Buyer; provided, however, in no event will GM's obligation under this Section 3.2(B) exceed $20 million.

3.3     The reimbursements set forth in Section 3.1 are subject only to actual payment of such amounts by Delphi and the submission by Delphi of appropriate invoices and reasonable documentation evidencing such payments.

3.4     Delphi agrees in good faith to minimize the apportionment of debt to KDAC Steering as between KDAC Steering and the other KDAC businesses consistent

3

with the approach taken to develop the reference balance sheet with Buyer under the MSA, unless otherwise required by local law, governmental authorities or contract counter-parties, and GM agrees with respect to Section 3.2 above, not to contest the calculation or amount of the KDAC Steering debt assumed with the exception of math errors.

4.    **Delphi Payment**.

4.1    Following the Closing Date, to the extent there are Increased Proceeds in excess of the Break-Up Fee and Expense Reimbursement paid by Delphi to Steering Solutions under the Original MSA (the "<u>Surplus Proceeds</u>"), such amount will be paid, in order of precedence, as follows:

(A)    To the extent GM has paid any amount under (i) Sections 3.1(A)(2), (3), and (4), (ii) Sections 3.1(B)(3), (4) and (5) or (iii) Sections 3.2(A) or 3.2(B) (collectively, the "<u>GM Reimbursement Sections</u>"), Delphi will first reimburse to GM the amount paid by GM under the GM Reimbursement Sections within three (3) business days of receipt of such Surplus Proceeds.

(B)    After giving effect to Section 4.1(A) above, to the extent any of GM's obligations under the GM Reimbursement Sections have not yet been paid or have not yet become due, the balance of such Surplus Proceeds will be credited against such GM obligations at the time such payments become due.

(C)    After giving effect to Section 4.1(A) and 4.1(B) above and after GM's obligations under the GM Reimbursement Sections have been fulfilled, any remaining Surplus Proceeds will be paid 66.66% to GM and the balance retained by Delphi.

4.2    For purposes hereof:

(A)    "Increased Proceeds" means the sum of the Joint Venture Amount, plus the amount received by Delphi (including amounts received through any permissible net adjustment made by Buyer under the MSA) on account of the Brownfield Tax Credit Amount (as defined in the MSA), plus the Increased Purchase Price Amount.

(B)    "Joint Venture Amount" means if the Proposed Joint Venture (as defined in the MSA) is formed, $47 million (net of any reasonable out-of-pocket expenses incurred by Delphi in connection with the evaluation or formation of the Proposed Joint Venture).

(C)    The "Increased Purchase Price Amount" means any increase in the Purchase Price (as defined in the MSA) in a Qualified Bid (as defined in the MSA) as compared to the Original MSA.

4

5.  **Amendment to MSA**.  Delphi will not amend, waive or modify any provision of the Original MSA or any schedules thereto in a manner that affects GM's payment obligations to Delphi or Delphi's payment obligations to GM under this Agreement without prior written consent of GM.

6.  **Agreement Continues**.  At such time as the effective date of the MRA has occurred, the terms and provisions of this Agreement amend, add to and constitute a part of the MRA and this Agreement and the MRA shall be read together as one document, it being understood that this Agreement shall be effective regardless of the effectiveness of the MRA.  Except as expressly modified and amended by the terms of this Agreement, all of the terms and conditions of the MRA will be in full force and effect on the effective date of the MRA.  If there is any conflict between the terms of this Agreement and the terms of the MRA, the terms of this Agreement govern and control.

7.  **MISCELLANEOUS**

    7.1  <u>Governing Law; Jurisdiction; Venue</u>.  This Agreement shall be governed and construed in accordance with the internal laws of the State of New York, the forum state in which the Bankruptcy Court sits, without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each Party hereby irrevocably and unconditionally agrees that the Bankruptcy Court shall retain exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this Agreement; provided, however, that after the second anniversary of the Effective Date of the MRA, the Bankruptcy Court shall retain non-exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this Agreement; and provided further that the jurisdiction of the Bankruptcy Court over all matters related to this Agreement shall terminate upon the fourth anniversary of the Effective Date of the MRA.  Each Party further agrees to waive any objection based on forum non conveniens.

    7.2  <u>Dispute Resolution</u>.  In the event a dispute arises among the Parties under this Agreement, such dispute shall be resolved in accordance with Section 7.11 of the MRA, which shall, for the purposes of disputes arising under this Agreement, be deemed to be effective as of the date of this Agreement.

    7.3  <u>Negotiations Not Admissible</u>.  Pursuant to Rule 408 of the Federal Rules of Evidence and any applicable state rules of evidence, this Agreement and all negotiations relating hereto are not admissible into evidence in any proceeding; provided, however, that this Agreement may be admissible in a proceeding to enforce the terms of this Agreement.

    7.4  <u>Representations and Warranties of Delphi and GM</u>.  Each Party represents and warrants to the other Party that the following statements, as applicable to it, are true, correct, and complete as of the date of this Agreement:

        (A)  It is duly organized, validly existing, and in good standing under the laws of its state of organization and has all requisite corporate power and

authority to enter into this Agreement and to perform its obligations hereunder;

(B)     The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary corporate action on its part; provided, however, that Delphi's authority to enter into this Agreement is subject to Bankruptcy Court approval;

(C)     This Agreement has been duly executed and delivered by it and constitutes its legal, valid, and binding obligation, enforceable against it in accordance with the terms hereof; and

(D)     The execution, delivery, and performance by it (when such performance is due) of this Agreement do not and shall not (i) violate any current provision of law, rule, or regulation applicable to it or any of its subsidiaries or its certificate of incorporation or bylaws or other organizational documents or those of any of its subsidiaries or (ii) conflict with, result in a breach of, or constitute (with due notice or lapse of time or both) a default under any material contractual obligation to which it or any of its subsidiaries is a party.

7.5     <u>Waiver; Modification; Amendment</u>.  Except as otherwise specifically provided herein, this Agreement may not be modified, waived, amended, or supplemented unless such modification, waiver, amendment, or supplement is in writing and has been signed by each Party.  No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver.

7.6     <u>Binding Effect; Assignments</u>.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, and representatives.  Neither this Agreement nor any of the rights, interests, or obligations under this Agreement shall be sold, assigned, or otherwise transferred by any Party without the prior written consent of the other Parties.

7.7     <u>Third Party Beneficiaries</u>.  Nothing contained in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the Parties hereto, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third party to any Party to this Agreement, nor shall any provision give any third party any right of subrogation or action over or against any Party to this Agreement.

7.8     <u>On-Going Setoff Provisions</u>.  Notwithstanding anything to the contrary contained in this Agreement or the MRA, the terms and conditions of Section 7.01 of the MRA shall control the Parties' payment obligations under this Agreement.

7.9     <u>Notices</u>.    All notices and other communications in connection with this Agreement shall be in writing and shall be deemed given (and shall be deemed to have been duly given upon receipt) if delivered personally, mailed by registered or certified mail (return receipt requested) or delivered by an express courier (with

confirmation) to the Parties at the following addresses (or at such other address for a Party as shall be specified by like notice):

If to Delphi, to:

Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098
Att'n:  [John Arle
        Steve Daniels]
        Sean P. Corcoran, Esq.

If to GM, to:

General Motors Corporation
767 Fifth Avenue
14th Floor
New York, New York  10153
Att'n:  Director, New Business Development

and

General Motors Corporation
300 GM Renaissance Center
Detroit, Michigan  48265
Att'n:  General Counsel

or to such other place and with such other copies as either Party may designate as to itself by written notice to the other Party.  Rejection, any refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice as of the date of such rejection, refusal or inability to deliver.

7.10   Waiver of Right to Trial by Jury.  Each Party waives any right to trial by jury in any proceeding arising under or related to this Agreement.

7.11   Service of Process.  Each Party irrevocably consents to the service of process in any legal proceeding arising out of this Agreement by receipt of mailed copies thereof by national courier service or certified United States mail, postage prepaid, return receipt requested, to its applicable registered agent.  The foregoing, however, shall not limit the right of a Party to effect service of process on the other Party by any other legally available method.

7.12   Interpretation.

(A)    In the event of any conflict between this Agreement and the MRA, the provisions of this Agreement shall govern.

(B)    All references to "$" and dollars shall refer to United States currency.

7

7.13   Expenses.  Notwithstanding anything else contained in this Agreement or the MRA, each Party shall bear all costs and expenses incurred or to be incurred by such Party in connection with this Agreement and the consummation and performance of the transactions contemplated hereby.

7.14   Entire Agreement; Parties' Intentions; Construction.  This Agreement and the MRA constitute the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior agreements, whether oral or written, with respect to such subject matter.  The attachments and exhibits attached hereto are an integral part of this Agreement and are hereby incorporated into this Agreement and made a part hereof as if set forth in full herein.  This Agreement is the product of negotiations between the Parties and represents the Parties' intentions.  In any action to enforce or interpret this Agreement, this Agreement shall be construed in a neutral manner, and no term or provision of this Agreement, or this Agreement as a whole, shall be construed more or less favorably to any Party.

7.15   Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nonetheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal, or unenforceable in any respect, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the fullest extent possible.

7.16   Headings.  The headings of the paragraphs of this Agreement are inserted for convenience of reference only and are not intended to be a part of, or to affect the meaning or interpretation of, this Agreement.

7.17   Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.  Electronic delivery of an executed signature page of this Agreement shall be effective as delivery of a manually executed signature page of this Agreement.

**[Remainder of the page left intentionally blank.]**

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By: _____
   Name: JOHN D. SHEEHAN
   Title: VP & CRO.

**GENERAL MOTORS CORPORATION**

By: _____
   Name: _____
   Title: _____

DETROIT.2894250.4

9

**IN WITNESS WHEREOF**, each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By:_____
    Name:_____
    Title:_____

**GENERAL MOTORS CORPORATION**

By: _Frederick A. Henderson_ (signature)
    Name: _FREDERICK A. HENDERSON_
    Title: _VICE CHAIRMAN & CFO_

DETROIT.2894250.4

9

# EXHIBIT N

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Access One Technology Group LLC dba | | 23373 Commerce Dr A2 | | | | | |
| Access One Capital Group LLC | | | | Farmington Hills | MI | 48335 | |
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 | |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 | |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 | |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 | |
| Advanced Metrology Solutions Inc | | 1415 Research Park Drive | | Dayton | OH | 45432 | |
| AEC Inc | | 801 AEC Drive | | Wood Dale | IL | 60191 | |
| Agie Charmilles Corporation | | 560 Bond Street | | Lincolnshire | IL | 60069 | |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 | |
| Air Liquide Industrial U S LP | | 12800 West Little York | | Houston | TX | 77041 | |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 | |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 | |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 | |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 | |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 | |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 | |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 | |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 | |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 | |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 | |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 | |
| Ameritech Credit Corporation | | 2000 West Ameritech Center Dr | | Hoffman Estates | IL | 60196 | |
| Amity Mold Company | | 1411 Commerce Park Dr | | Tipp City | OH | 45371 | |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 | |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 | |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 | |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 | |
| Applied Industrial Technologies Inc | | One Applied Plaza | E 36th St/Euclid Avenue | Cleveland | OH | 44115 | |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 | |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 | |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 | |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 | |
| Assembleon America Inc | | 5110 McGinnis Ferry Road | | Alpharetta | GA | 30005 | |
| AT&T Center | | 2000 W AT&T Center Dr | | Hoffman Estates | IL | 60192 | |
| ATS Ohio Inc | | 425 Enterprise Drive | | Lewis Center | OH | 43035 | |
| ATS Southwest Inc | | 10900 North Stallard Street | | Tucson | AZ | 85737 | |
| Auramet Trading LLC | | 2 Executive Dr #645 | | Fort Lee | NJ | 07024 | |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 | |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 | |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 | |
| Bank One NA | | Bank One Plaza | Suite IL1-0598 1-21 | Chicago | IL | 60670-0596 | |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 | |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 | |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 | |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 | |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 | |
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 | |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 | |
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 | |
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 | |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 | |
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 | |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 | |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 | |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 | |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 | |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 | |
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 | |
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 | |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 | |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 | |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 | |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 | |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 | |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 | |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 | |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 | |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 | |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 | |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 | |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 | |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 | |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 | |
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 | |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 | |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 | |
| Canon Financial Services Inc | | 158 Galther Drive #200 | | Mt Laurel | NJ | 08054 | |
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 | |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 | |
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 | |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 | |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 | |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 | |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Certified Tool and Manufacturing Corp | | 1201 Estes | | Elk Grove | IL | 60007 | |
| Charmilles Technologies | | 560 Bond Street | | Lincolnshire | IL | 60069 | |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 | |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 | |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 | |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 | |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 | |
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 | |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 | |
| CIT Communcations Finance Corporation | | 1 CIT Drive | | Livingston | NJ | 07039 | |
| CIT Technologies | | 11011 N 23rd Avenue | | Phoenix | AZ | 85029 | |
| CIT Technologies Corporation D/B/A CIT Systems Leasing | | 2285 Franklin Road | | Bloomfield Hills | MI | 48302 | |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 | |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 | |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 | |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 | |
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 | |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 | |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 | |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 | |
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 | |
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 | |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 | |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 | |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 | |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 | |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 | |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 | |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn Michigan | | | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 | |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 | |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 | |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 | |
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 | |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 | |
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 | |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 | |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 | |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 | |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 | |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 | |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 | |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                                    Page 3 of 18                    Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 | |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 | |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 | |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 | |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 | |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 | |
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 | |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 | |
| City Of Laredo Tx | City Of Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 | |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 | |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 | |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 | |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 | |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 | |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 | |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 | |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 | |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 | |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 | |
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 | |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 | |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 | |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 | |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 | |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 | |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 | |
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 | |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 | |
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 | |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 | |
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 | |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 | |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 | |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 | |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 | |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 | |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterburry | CT | 06723 | |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 | |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 | |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 | |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 | |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 | |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 | |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 | |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 | |
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 | |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 | |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 | |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 | |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 | |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 | |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 | |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 | |
| Colorado Department Of Revenue | | | | Denver | CO | 80261-0006 | |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 | |
| Comal Co Tx | Comal Co Tax Assessor / Collector | 311445 | | New Braunfels | TX | 78131 | |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 | |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 | |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 | |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 | |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 | |
| Computer Sales International Inc | | 9990 Old Olive Street Rd # 101 | | St Louis | MO | 63141-5904 | |
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 | |
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 | |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 | |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 | |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 | |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 | |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 | |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 | |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 | |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 | |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 | |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 | |
| Credit Lyonnais SA Cayman Island Branch | | The Credit Lonnais Building | 1301 Avenue of the Americas | New York | NY | 10019 | |
| Cupertino National Bank c/o Greater Bay Capital | | 100 Tri-State International | Suite 140 | Lincolnshire | IL | 60069 | |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 | |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 | |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Daewoo Heavy Industries America Corporation | | 2905 Shawnee Industrial Way | | Suwanee | GA | 30024-3202 | |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 | |
| Dane Systems LLC | | 7275 Red Arrow Highway | | Stevensville | MI | 49127 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 | |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 | |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 | |
| Dc Office Of Tax & Revenue | Corporation Estimated Franchise Tax | PO Box 96019 | | Washington | DC | 20090-6019 | |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 | |
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 | |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 | |
| Dearborn Countyin | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 | |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 | |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 | |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 | |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 | |
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 | |
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 | |
| Delphi Corporation | | 5725 Delphi | | Troy | MI | 48098 | |
| Delphi Holdings Luxerbboug SarJ | | Route de Luxembourg | Bascharage L-4940 | Luxembo | | | |
| Delphi Hourly-Rate Employees Pension Plan c/o Pension Benefit Guaranty Corporation | | 1200 K Street NW | | Washington | DC | 20005 | |
| Delphi Retirement Program for Salaried Employees c/o Pension Benefit Guaranty Corporation | | 1200 K Street NW | | Washington | DC | 20005 | |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 | |
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 | |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 | |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 | |
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 | |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 | |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 | |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 | |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 | |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 | |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 | |
| Doosan Infracore America Corporation | | 2905 Shawnee Industrial Way | | Suwanee | GA | 30024-3202 | |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 | |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 | |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 | |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 | |
| El Du Pont de Nemours and Company | | 1007 Market St | | Wilmington | DE | 19898 | |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 | |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 | |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 | |
| Engel Canada Inc | | 545 Elmira Rd | | Guelph | ON | N1K1C2 | Canada |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 | |
| Essexville City Of Bay | | | | Essexville | MI | | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 | |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 | |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 | |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 | |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 | |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 | |
| First Bank of Highland Park | | 1835 First Street | | Highland Park | IL | 60035 | |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 | |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 | |
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 | |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 | |
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 | |
| Forsyth Twp Marquette | | | | Gwinn | MI | | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 | |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 | |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 | |
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 | |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 | |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 | |
| GE Polymerland Inc | | 9930 Kincey Avenue | | Huntersville | NC | 28078 | |
| General Electric Capital Corporation | | 3000 Lakeside Drive | Suite 200N | Bannockburn | IL | 60015 | |
| General Electric Capital Corporation | | 1301 Virginia Drive Suite 200 | | Fort Washington | PA | 19034 | |
| General ElectricCapital Corporation | | 10 Riverview Drive | | Danbury | CT | 06810 | |
| General Motors Corporation | | 300 Renaissance Center | | Detroit | MI | 48265 | |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 | |
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 | |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 | |
| Gerotech Inc | | 29220 Commerce Drive | | Flat Rock | MI | 48134 | |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 | |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 | |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 | |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 | |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 | |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 | |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 | |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 | |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 | |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 | |
| Greenerd Press & Machinery Inc | | 41 Crown St | | Nashua | NH | 03061 | |
| Greenwood Co Sc | Greenwood Co Tax Treasurer | 528 Monument St | R 101 | Greenwood | SC | 29646 | |
| Guilford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 | |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 | |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | Room 210 | Chattanooga | TN | 37402 | |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 | |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 | |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 | |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Harnett Co Nc | Harnett Co Tax Collector | Po 58509 | | Charlotte | NC | 28258 | |
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 | |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 | |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 | |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 | |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 | |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 | |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 | |
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 | |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 | |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | PO Box 4290 | Edinburg | TX | 78540 | |
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 | |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 | |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 | |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 | |
| Hitachi Credit America Corp | | 777 W Putnam Avenue | | Greenwhich | CT | 06830 | |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 | |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 | |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 | |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 | |
| Husky Injection Molding Systems Inc | | 55 Amherst Villa Rd | | Buffalo | NY | 14225 | |
| Hydromat Inc | | 11600 Adie Road | | St Louis | MO | 63043 | |
| ICON SPK 2023-A LLC | | 100 Fifth Avenue | 10th Floor | New York | NY | 10011 | |
| ICX Corporation | | 2 Summit Park Dr | Suite 300 | Cleveland | OH | 44131 | |
| ICX Corporation d/b/a RBS Asset Finance | | 2 Summit Park Dr | Suite 300 | Cleveland | OH | 44131 | |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 | |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 | |
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 | |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 | |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 | |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 | |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 | |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 | |
| Industrial Automation Controls Inc | | 5719 Webster Street | | Dayton | OH | 45414 | |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 | |
| IOS Capital LLC | | 1738 Bass Road | | Macon | GA | 31210 | |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 | |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 | |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 | |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 | |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 | |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 | |
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 | |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 | |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64039 | |
| Johnson County In | Johnson County Treasurer | Courthouse Annex | 86 W Court St | Franklin | IN | 46131 | |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olathe | KS | 66061 | |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 | |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 | |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 | |
| JP Morgan Chase Bank NA | | Lien Perfection Unit | PO Box 2558 | Houston | TX | 77252 | |
| JP Morgan Chase Bank NA | | PO Box 2558 | | Houston | TX | 77252 | |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 | |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 | |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 | |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 | |
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 | |
| Kensington Capital Corporation | | 5725 Forward Avenue | | Pittsburgh | PA | 15217 | |
| Kentucky Department Of Revenue | | | | Frankfort | KY | 40619-0007 | |
| Kentucky Revenue Cabinet | | | | Frankfort | KY | 40620 | |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 | |
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 | |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 | |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 | |
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 | |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 | |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 | |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 | |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 | |
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 | |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 | |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 | |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 | |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 | |
| Leasenet Group Inc | | 5450 Frantz Road | Suite 360 | Dublin | OH | 43016-414 | |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 | |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 | |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 | |
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)                    Page 9 of 18                    Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 | |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 | |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 | |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 | |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 | |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 | |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 | |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 | |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 | |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 | |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 | |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 | |
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 | |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 | |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 | |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 | |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 | |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 | |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 | |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 95808 | |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 | |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 | |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 | |
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 | |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 | |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 | |
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 | |
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 | |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 | |
| Makino Inc | | 7680 Innovation Way | | Mason | OH | 45040 | |
| Manager Of Finance | Jackson County Manager Of Finance | Bankruptcy 415 E 12th St | | Kansas City | MO | 64106 | |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 | |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 | |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 | |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 | |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 | |
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 | |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 | |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 | |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 | |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 | |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 | |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 | |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 | |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 | |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 | |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 | |
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 | |
| Mercedes-Benz US International Inc | | 1 Mercedes Drive | | Vance | AL | 35490 | |
| Metal Processors Inc | | 1010 W John Beers Rd | PO Box 196 | Stevensville | MI | 49127 | |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 | |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 | |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 | |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 | |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 | |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 | |
| Mikron Corporation | | 560 Bond Street | | Lincolnshire | IL | 60069 | |
| Milacron Marketing Company | | 4165 Halface Road | | Batavia | OH | 45103 | |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 | |
| MIM Industries Inc | | 4301 Lyons Road | | Miamisburg | OH | 45342 | |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 | |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 | |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 | |
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 | |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 | |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 | |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 | |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 | |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 | |
| Monroe County In | Monroe County Treasurer | Courthuse Room 204 | | Bloomington | IN | 47404 | |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 | |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 | |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 | |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 | |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 | |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 | |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 | |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 | |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 | |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 | |
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 | |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 | |
| Motion Industries Inc | | 1605 Alton Rd | | Birmingham | AL | 35210 | |
| Motorola Inc | | 1301 E Algonquin Rd | | Schaumburg | IL | 60196 | |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 | |
| N H Research Incorporated | | 16601 Hale Avenue | | Irvine | CA | 92606 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|------------|----------|----------|------|-------|-----|---------|
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 | |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 | |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 | |
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha St | PO Box 233 | Seneca | KS | 66538 | |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 | |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 | |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 | |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 | |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 | |
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 | |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 | |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 | |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 | |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 | |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 | |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 | |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 | |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 | |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 | |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 | |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 | |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 | |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 | |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 | |
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 | |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 | |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 | |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 | |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 | |
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 | |
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 | |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 | |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 | |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 | |
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 | |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 | |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 | |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 | |
| Omega Tool Corporation | | 2045 Solar Crescent | | Tecumseh | | N0R1L0 | Canada |
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 | |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 | |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 | |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 | |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Additional Steering parties - Lienholders and Taxing Authorities

Page 12 of 18

1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 | |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 | |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 | |
| Pacific Rim Capital Inc | | 15 Enterprise Suite 400 | | Aliso Viejo | CA | 92656 | |
| Packard-Hughes Interconnect Non-Bargaining Retirement Plan c/o Pension Benefit Guaranty Corporation | | 1200 K Street NW | | Washington | DC | 20005 | |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 | |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 | |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 | |
| PAX Machine Works Inc | | 5139 Monroe Rd | | Celina | OH | 45822 | |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 | |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 | |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 | |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 | |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 | |
| Pima County Treasurer Pima County Assessor Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 | |
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 | |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 | |
| Plastic Plate Inc | | 3500 Raleigh SE | | Kenwood | MI | 49512 | |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 | |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 | |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 | |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 | |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 | |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 | |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 | |
| Pullman Bank and Trust Company | | 3930 Edison Lakes Parkway | | Mishawaka | IN | 46545 | |
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 | |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 | |
| Relational Funding Corporation | | 3701 Algonquin Road | Suite 600 | Rolling Meadows | IL | 60008 | |
| Renaissance Capital Alliance LLC | | 2005 West Hamlin Road | Suite 200 | Rochester Hills | MI | 48309 | |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 | |
| Riverside County Collector | | P O 12005 | | Riverside | CA | 92502 | |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 | |
| Rochester Hills City Of Oakland | Drawer 7783 | PO Box 79001 | | Detroit | MI | 48279 | |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 | |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 | |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 | |
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 | |
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 | |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 | |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 | |
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 | |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 | |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 | |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 | |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 | |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 | |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 | |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 | |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 | |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 | |
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 | |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 | |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 | |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 | |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 | |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 | |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 | |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 | |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 | |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 | |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 | |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 | |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 | |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 | |
| Southern Pacific Bankcapital a division of S Pacific Bank (SPBC) | | 1515 Arapahoe St | | Denver | CO | 80202 | |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 | |
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 | |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 | |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 | |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 | |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 | |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 | |
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 | |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarie | NC | 28001 | |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 | |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 | |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 | |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 | |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 | |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 | |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 | |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 14 of 18
Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 | |
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 | |
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 | |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 | |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 | |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 | |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 | |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 | |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 | |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 | |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 | |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 | |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 | |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 | |
| Sterling Inc | | 801 AEC Drive | | Wood Dale | IL | 60191 | |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 | |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 | |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 | |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 | |
| Sumner Co Tn | Sumner County Trustee | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 | |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 | |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 | |
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 | |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 | |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 | |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 | |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 | |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 | |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 | |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 | |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Tax Colle | PO Box 7100 | Milton | FL | 32572 | |
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 | |
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 | |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 | |
| Tech-Line Engineering | | 27560 College Park Drive | | Warren | MI | 48088 | |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 | |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 | |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 | |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 484 | | Dawson | GA | 31742 | |
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|------------|----------|----------|------|-------|-----|---------|
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 | |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 | |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 | |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 | |
| Toshiba America Information Systems Inc | | 1010 Thomas Edison Blvd SW | | Cedar Rapids | IA | 52404 | |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 | |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 | |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 | |
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 | |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 | |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 | |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 | |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 | |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 | |
| Toyota Motor Credit Corporation | | PO Box 3457 | | Torrance | CA | 90510 | |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 | |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 | |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 | |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 | |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 | |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 | |
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 | |
| Trenton Corporation | | 274 Executive Dr | | Troy | MI | 48083 | |
| Trey Grayson Ga | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 | |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 | |
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 | |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 | |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 | |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Ultratech Inc | | 3050 Zanker Road | | San Jose | CA | 95134 | |
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 | |
| Unique Tool & Gauge Inc | | 1505 Moro R R #1 | | Windsor | | N9A 6J3 | Canada |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 | |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 | |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 | |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 | |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 | |
| Utah State Tax Commission | | 210 North 1950 West | | Salt Lake City | UT | 84134-0180 | |
| Valiant Tool & Mold Inc | | 6775 Hawthorne Drive | | Windsor | ON | N8T3B8 | Canada |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 | |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 | |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 | |
| Van Dorn Demag Corporation | | 11792 Alameda Dr | | Strongsville | OH | 44149 | |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 | |
| Varilease Corporation | | 8451 Boulder Ct | | Walled Lake | MI | 48390 | |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 | |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 | |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 | |
| Vicount Industries Inc | | 24704 Hathaway | | Farmington Hills | MI | | |
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 | |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 | |
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 | |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 | |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 | |
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 | |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 | |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 | |
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 | |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 | |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 | |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 | |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 | |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 | |
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Blgd | Richmond | IN | 47374 | |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 | |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 | |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 | |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 | |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 | |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 | |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 | |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 | |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 | |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 | |
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 | |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 | |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 | |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 | |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 | |
| Wittmann Inc | | One Technology Park | | Torrington | CT | 06790 | |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 | |
| Wv Secretary Of State | | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | Charleston | WV | 225305 | |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 | |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 | |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 | |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 | |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 | |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 | |
| Yoder Industries Inc | | 2520 Needmore Road | | Dayton | OH | 45414 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM

Delphi Corporation
Special Parties

| Name | NoticeName | Address1 | Address2 | City | State | Zip | Country |
|------|-----------|----------|----------|------|-------|-----|---------|
| York Co Sc | York Co Tax Treasurer | PO Box 116 | | York | SC | 29745 | |
| York County Tax Collector | | 1070 Heckle Beva Box 14 | | Rock Hill | SC | 29732-2863 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 18

Additional Steering parties - Lienholders and Taxing Authorities
1/10/2008 11:24 PM