**<u>Exhibit I</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                  :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER APPROVING (I) DISCLOSURE STATEMENT, (II) RECORD DATE, VOTING
DEADLINE, AND PROCEDURES FOR TEMPORARY ALLOWANCE
OF CERTAIN CLAIMS, (III) HEARING DATE TO CONSIDER CONFIRMATION
OF PLAN, (IV) PROCEDURES FOR FILING OBJECTIONS TO PLAN,
(V) SOLICITATION PROCEDURES FOR VOTING ON PLAN, (VI) CURE CLAIM
PROCEDURES, (VII) PROCEDURES FOR RESOLVING DISPUTES RELATING TO
POSTPETITION INTEREST, AND (VIII) RECLAMATION CLAIM PROCEDURES

("SOLICITATION PROCEDURES ORDER")

Upon the motion, dated September 6, 2007 (the "Motion"),[1] of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (each, a "Debtor"), for entry of an order approving

(i) the Disclosure Statement filed on September 6, 2007, as amended and filed on December 10,

2007 (the "Disclosure Statement"), (ii) a voting record date, voting deadline, and procedures for

temporary allowance of certain claims for voting purposes, (iii) procedures for filing objections

to the Plan of Reorganization filed on September 6, 2007, as amended and filed on December 10,

2007, and as may be further amended (the "Plan"), (iv) procedures for soliciting and tabulating

votes on the Plan, (v) a hearing date to consider confirmation of the Plan, (vi) cure claim

procedures, (vii) procedures for resolving disputes relating to postpetition interest, and (viii)

reclamation claim procedures; and the Court having reviewed the Disclosure Statement and the

Motion; and the Court having received and reviewed various objections and responses to the

Motion filed by various parties in advance of the October 3, 2007 hearing (the "Initial

Objectors");[2] and upon the Debtors' Omnibus Response to Disclosure Statement Objections,

dated October 2, 2007 (Docket No. 10418); and the Court having commenced the hearing on the

Motion on October 3, 2007 (the "Hearing") in accordance with the Order Scheduling Non-

Omnibus Hearing on the Debtors' Motion To Approve Solicitation Procedures And Disclosure

Statement, dated August 6, 2007 (Docket No. 8898); and upon the admission into evidence of

Debtors' hearing exhibits nos. 1 through 20 at the Hearing without objection from any party; and,

on October 9, 2007, the Court having entered its Order (A) Disposing of Certain Objections to

Debtors' Disclosure Statement and Solicitation Procedures Motion and (B) Setting Further Non-

Omnibus Hearing Date and Related Procedures (the "First Disclosure Statement and Solicitations

Procedures Order") (Docket No. 10497) pursuant to which this Court (i) found that notice of the

Hearing was properly and timely given and was sufficient and no further notice being necessary

or required with respect to the Court's consideration of the Motion or the Disclosure Statement

including any Potential Amendments (as defined in the First Disclosure Statement and

Solicitation Procedures Order) and (ii) overruled the objections filed by the Initial Objectors to

the extent such objections were not otherwise resolved or withdrawn, and (iii) continued the

Hearing to October 25, 2007; and on October 19, 2007, in its Supplemental Order

(A) Establishing Revised Hearing Date and Related Procedures on Disclosure Statement and

Solicitations Procedure Motion and (B) Setting Hearing Date and Related Procedures for

Potential Motions Amending Investment Agreement and Approving Certain Exit Financing

_____
*(cont'd from previous page)*
[1]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

2

Agreements ("Supplemental Disclosure Statement, Investment Agreement, and Exit Financing

Procedures Order") (Docket No. 10662) the Court having further continued the Hearing to

November 8, 2007; and upon the filing of the Debtors' Notice of Potential Amendments To

Debtors' Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Of Its Affiliates, Debtors And Debtors-In-Possession And Certain

Appendices And Exhibits Related Thereto (Docket No. 10759), dated October 29, 2007; and a

meet and confer having taken place on October 23, 2007; and the Court having received on

November 2, 2007 further objections to the Disclosure Statement Approval Motion;[3] and upon

the Emergency Motion Of The Official Committee of Equity Security Holders Of Delphi

Corporation To Adjourn The Hearing On, And Fix A New Time To Object To, (A) The

Disclosure Statement Approval Motion And (B) The Amended Investment Agreement Approval

Motion (Docket No. 10795), dated November 2, 2007 (the "Adjournment Motion");[4] and upon

the Debtors' request to the Court on November 5, 2007 to adjourn the Hearing on these matters

from November 8, 2007 to 10:00 a.m. (prevailing Eastern time) on November 29, 2007 pursuant

to the Second Supplemental Disclosure Statement And Investment Agreement Procedures Order

(Docket No. 10864); and a second meet and confer having taken place on November 6, 2007;

and the Debtors having filed further proposed amendments to the Plan and Disclosure Statement

---

*(cont'd from previous page)*

[2]    The Initial Objectors filed the objections found at docket numbers 9513, 9668, 9669, 9670, 9674, 9677, 9680, 10398 10413, 10414, and 10417.

[3]    Further objections and responses filed on November 2, 2007 to the Disclosure Statement Approval Motion may be found at docket numbers 10794, 10802, 10803, 10804, and 10810.

[4]    Brandes Investment Partners, L.P. filed a statement in support of the Adjournment Motion at docket number 10807 and Law Debenture Trust Company of New York, as indenture trustee, filed a joinder to the Adjournment Motion at docket number 11161.

on November 14, 2007; and on November 16, 2007 the Potential Objectors[5] having filed further

objections to the Disclosure Statement Approval Motion; and upon the objections filed by the

Potential Objectors (the "November Objections");[6] and a third meet and confer having taken

place on November 27, 2007; and upon the Debtors' request to the Court on November 28, 2007

to adjourn the Hearing on these matters from November 29, 2007 to 10:00 a.m. (prevailing

Eastern time) on December 6, 2007 pursuant to the Third Supplemental Order (A) Establishing

Revised Hearing Date and Related Procedures on Disclosure Statement and Solicitations

Procedure Motion and (B) Setting Hearing Date and Related Procedures for Motion To Amend

Investment Agreement (Docket No. 11198); and the Debtors having filed their Debtors'

(I) Omnibus Reply To Objections To Disclosure Statement And Potential Disclosure Statement

Amendments And (II) Response To Equity Committee's Emergency Motion To Adjourn Hearing

And Fix New Objection Deadline (Docket No. 11295), on December 5, 2007; and the Debtors

having filed (i) blacklined changed pages to certain documents, (ii) proposed changes in response

to certain objections, (iii) a cumulative blackline of each document for which additional changed

pages were filed marked against the documents originally filed on September 6, 2007, and (iv) a

proposed blacklined approval order and revised Plan solicitation timeline, which timeline

provides for a Plan exhibit filing date no later than ten days prior to the proposed Plan voting and

---

[5]    "Potential Objectors" was defined in the Supplemental Disclosure Statement, Investment Agreement, And Exit
Financing Procedures Order as "the Official Committee of Unsecured Creditors, the Official Committee of
Equity Security Holders, A-D Acquisition Holdings, LLC (an affiliate of Appaloosa Management L.P.) as lead
plan investor under the Plan, General Motors Corporation, the Ad Hoc Committee of Trade Creditors,
Wilmington Trust Company, as indenture trustee, and a group of bondholders represented by common counsel
consisting of DK Acquisition Co., Silverpoint Capital, Sandell Management Co., Elliott Management Company,
and CR Intrinsic, as well as the Lead Plaintiffs (but only to the extent of matters raised in the Lead Plaintiffs
Response or any Potential Amendments)." All parties reserve all rights with respect to whether the bondholders
constitute "an entity or committee representing more than one creditor or equity security holder" subject to the
requirements of Bankruptcy Rule 2019.

[6]    The November Objections can be found at docket numbers 10794, 10795, 10802, 10803, 10804, 10810, 11017,
11022, 11028, 11034, 11045, 11048, and 11049.

4

objection deadline; and the second day of the hearing on the Motion and the adequacy of the

Disclosure Statement having been scheduled to resume on December 6, 2007 and having

concluded on December 7, 2007, at which time all remaining objectors, including the Potential

Objectors, were offered an opportunity to be heard with respect to the Disclosure Statement and

Motion; and the Adjournment Motion having been withdrawn; and upon the admission into

evidence of Debtors' hearing exhibits nos. 21 through 81 at the Hearing without objection from

any party; and the Court having reviewed and considered (i) the Disclosure Statement, the

objections thereto, and the Debtors' response to such objections, (ii) the Motion and the

objections thereto, (iii) the adequacy of notice, (iv) the arguments of counsel made at the

Disclosure Statement Hearing, and (v) the evidence proffered or adduced at the Disclosure

Statement Hearing; and all objections having been withdrawn or overruled, except as reflected in

changes made to the Disclosure Statement as required by the Court; and for further reasons

stated on the record at the Hearing; and after due deliberation thereon, and good cause appearing

therefor, the Court hereby finds as follows:

A.    The Disclosure Statement complies with the requirements of 11 U.S.C.

§§ 101-1330, as amended on October 8, 2005 (the "Bankruptcy Code"), and the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and contains adequate information as that term

is defined in section 1125 of the Bankruptcy Code.  Specifically, but without limitation, the

Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently

describing in specific and conspicuous bold language the provisions of the Plan that provide for

releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and

sufficiently identifies the persons and entities that are subject to the releases and injunctions.

B.    Nothing has come to the attention of the Court to suggest that all currently

material information regarding the Debtors and their subsidiaries, their respective assets, affairs,

and financial condition, and the reorganization and restructuring provided for under the Plan has

not been set forth in the Disclosure Statement and the Debtors' public filings with the Securities

and Exchange Commission (or the exhibits or appendices thereto) incorporated in the Disclosure

Statement.

C.      The Debtors' notice to all parties-in-interest of the hearing on the Motion,

the Disclosure Statement Hearing, and the time fixed for filing objections to the Disclosure

Statement was good and sufficient under the particular circumstances, and no other or further

notice need be given.

D.      The Debtors' proposed solicitation procedures, as described more fully in

the Motion, are fair and reasonable.

E.      The Debtors' proposed procedures for transmitting the Disclosure

Statement, the Plan, the Ballots (as defined below), and the voting instructions are adequate and

comply with the requirements of Bankruptcy Rule 3017(d) and (e).

F.      Good and sufficient cause exists under Bankruptcy Rule 3017(d)(4) for the

establishment of the Record Date as a date other than the date this Order is entered.

G.      The Debtors' proposed cure claim procedures, as described more fully in

the Motion, are fair and reasonable.

H.      The Debtors' proposed procedures for resolving disputes relating to

postpetition interest, as described more fully in the Motion, are fair and reasonable.

I.      Upon the record of the Disclosure Statement Hearing and these cases, the

relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors,

their interest holders, and other parties-in-interest.

Accordingly, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED.

2.      Notice of the Disclosure Statement Hearing was properly and timely given and was sufficient.  No further notice is necessary or required with respect to the Court's consideration of the Motion or the Disclosure Statement including any Potential Amendments.

3.      To the extent not already withdrawn or reflected in changes to the Disclosure Statement that have been made as required by the Court, all objections filed or otherwise asserted against the Motion or Disclosure Statement are hereby overruled.

4.      The reservation of rights made on the record at the hearing held on December 6, 2007 regarding the Equity Committee's reservation of rights to assert claims, interests, defenses, or offsets against any and all holders of equity in these Chapter 11 Cases solely within Class 1G-1 with respect to the allocation of Plan consideration among holders of Existing Common Stock based on the facts and circumstances in these Chapter 11 Cases and the reciprocal reservation of rights made by counsel on behalf of the Plan Investors with respect to the rights reserved by the Equity Committee on the record at the hearing of the same date are incorporated herein and all such rights are reserved in all respects.

5.      <u>Approval Of Disclosure Statement</u>.  Pursuant to Bankruptcy Rule 3017(b), (i) the Disclosure Statement (Docket No. 11388) is approved as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code and (ii) to the extent not withdrawn, settled, or otherwise resolved, all objections to the Disclosure Statement are overruled on the merits.

6.      The Debtors are authorized to (i) make non-material changes to the Disclosure Statement and related documents (including the exhibits thereto and to the Motion) and (ii) revise the Disclosure Statement and related documents (including the exhibits thereto) to

7

add further disclosure concerning events occurring at or after the Disclosure Statement Hearing, before distributing it to each person and entity in accordance with the terms of this Order; provided, however, that the Debtors shall file copies with the Court of any changed pages blacklined to show such changes.

7.    Confirmation Hearing Date; Objection Deadline.  The hearing (the "Confirmation Hearing") to consider confirmation of the Plan, as the same may be further modified or amended, shall commence on January 17, 2008 (the "Confirmation Hearing Date"), at 10:00 a.m. (prevailing Eastern time), or as soon thereafter as counsel can be heard, before the undersigned United States Bankruptcy Judge, in the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004.  The Confirmation Hearing may be adjourned from time to time by announcing such adjournment in open court or otherwise, all without further notice to parties-in-interest.

8.    January 11, 2008 at 4:00 p.m. (prevailing Eastern time) (the "Objection Deadline") is fixed as the last date and time for filing and serving objections to confirmation of the Plan.  Objections, if any, must (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York, (iii) set forth the name of the objector and the nature and amount of any claim or interest asserted by the objector against or in the Debtors, their estates, or their property, (iv) state with particularity the legal and factual bases for the objection, and (v) be filed with the Court together with proof of service, and served by personal service, overnight delivery, or first-class mail, with a hard copy delivered to the chambers of the Honorable Robert D. Drain, and served so that they are RECEIVED no later than the Objection Deadline by:

Counsel For The Debtors

Skadden, Arps, Slate, Meagher & Flom LLP

8

333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(800) 718-5305
Att'n: John Wm. Butler, Jr.
Att'n: George N. Panagakis
Att'n: Ron E. Meisler
Att'n: Nathan L. Stuart

and

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
Att'n: Kayalyn A. Marafioti
Att'n: Thomas J. Matz

United States Trustee

The Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004
Att'n: Alicia M. Leonhard

Counsel For The Creditors' Committee

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Att'n: Robert J. Rosenberg
Att'n: Mitchell A. Seider
Att'n: Mark A. Broude

Counsel For The Equity Committee

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Att'n: Brad E. Scheler
Att'n: Bonnie K. Steingart
Att'n: Vivek Melwani

Counsel For The Postpetition Lenders

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York  10022
Att'n:  Donald S. Bernstein

Att'n:  Brian M. Resnick

Counsel For A-D Acquisition Holdings, LLC

White & Case LLP
Wachovia Financial Center
200 South Biscayne Boulevard
Suite 4900, Miami, Florida 33131
Att'n: Thomas E. Lauria
Att'n:  Michael C. Shepherd

     and
White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Att'n:  Gerard H. Uzzi
Att'n:  Glenn M. Kurtz
Att'n:  Douglas P. Baumstein

Counsel for General Motors Corporation

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Att'n:  Jeffrey L Tanenbaum
Att'n:  Michael P. Kessler
Att'n:  Robert J. Lemons

**Objections not timely filed and served in the manner set forth above shall not be considered by the Court and shall be deemed overruled.**

     9.    <u>Record Date</u>.  Notwithstanding anything to the contrary in Bankruptcy Rule 3017(d), November 26, 2007 shall be the record date (the "Record Date") for purposes of determining the members of Classes C, D, E, G-1, G-2, and H[7] (the "Voting Classes") that are entitled to receive a Solicitation Package and to vote on the Plan.  The Record Date for a

---

[7]    Class C consists of all General Unsecured Claims against the applicable Debtor or consolidated group of Debtors, Class D consists of the GM Claim against the applicable Debtor or consolidated group of Debtors, Class E consists of all Section 510(b) Note Claims against Delphi Corporation, Class G-1 consists of all Existing Common Stock of Delphi Corporation, Class G-2 consists of all Section 510(b) Equity Claims against Delphi Corporation, and Class H consists of all Section 510(b) ERISA Claims against the applicable Debtors.

docketed proof of claim or scheduled claim shall be determined by reference to KCC's (as defined below) claims register as may be modified by Notices of Transfer filed and reflected on the Court's official docket (ECF) at **11:59 p.m.** (prevailing Eastern time) on **November 26, 2007**, and only those registered holders of claims as reflected on the docket together with KCC's database on the Record Date shall be entitled to vote.  The holders of any claims filed after the Record Date shall not be entitled to vote.

10.    <u>Content And Transmittal Of Solicitation Packages</u>.  On or before December 15, 2007 (the "Solicitation Date"), the Debtors shall cause Kurtzman Carson Consultants LLC (the "Creditor Voting Agent" or "KCC") and Financial Balloting Group, LLC (the "Securities Voting Agent," and together with the Creditor Voting Agent and the Securities Voting Agent, the "Voting Agents") or their agents to transmit by first class mail (or in the case of non-US holders of Class I claims or interests, the Debtors shall, in certain cases, have local plant managers transmit) to the holders of claims against and interests in the Debtors as of the Record Date a Solicitation Package containing a copy or conformed version of:

A.    the Confirmation Hearing Notice,

B.    to the extent applicable, the appropriate ballot and/or notice as set forth below for the specific creditor or equity holder, with appropriate voting instructions, such ballots in substantially the forms attached hereto as <u>Exhibit A</u> (as may be modified for particular classes and with instructions attached thereto), and a pre-addressed postage pre-paid return envelope,

C.    a CD-ROM containing this order (without exhibits attached), the solicitation letters from the Creditors' Committee and the Equity Committee as referenced below, the Disclosure Statement, the Plan, and the publicly filed materials appended thereto,

D.    to the extent appropriate, and at the Debtors' discretion, an Internal Revenue Service form W-9 (Request for Taxpayer Identification Number and Certification) or form W-8BEN to be returned with a party's ballot,

E.    solicitation letters, in hard copy, from the Creditors' Committee and the Equity Committee, substantially in the forms of <u>Exhibits B-1</u> and <u>B-2</u>,

respectively, attached hereto, and hereby approved for inclusion in the Solicitation Package,

F.    an informational letter from the UAW to its members who will receive a ballot, substantially in the form of <u>Exhibit B-3</u> attached hereto, and hereby approved for inclusion in the Solicitation Package, and

G.    Postpetition Interest Rate Determination Notice for all holders of General Unsecured Claims, other than Senior Note Claims and TOPrS Claims.

11.    The Voting Agents shall transmit the Solicitation Package to the following creditors, interest holders, and other parties-in-interest (with exclusions as noted herein): (i) the United States Trustee, (ii) all non-voting unimpaired creditors, (iii) equity holders, (iv) holders of claims or interests in non-voting Class I under the Plan, (v) persons or entities which timely filed a proof of claim reflecting a claim or portion of a claim that is unliquidated, and (vi) creditors holding claims in a class designated as impaired and entitled to vote on the Plan (A) who have filed timely proofs of claim (or untimely proofs of claim which have been allowed as timely by the Court under applicable law on or before the Record Date) that have not been disallowed by an order of the Court entered on or before the Record Date or (B) whose claims are scheduled in the Debtors' schedules of assets and liabilities dated April 18, 2006, or any amendment thereof (the "Schedules") other than those scheduled as (x) unliquidated, contingent, or disputed or (y) zero or unknown in amount and for which no proof of claim was timely filed.  Creditors, if any, who have filed duplicate claims in a given class shall be entitled to receive only one Solicitation Package with respect to that class.

12.    With respect to non-US holders of claims or interests in non-voting class I, the Debtors are authorized but not directed to include in (or provide in conjunction with) the Solicitation Package a translated Confirmation Hearing Notice and a translated notice of non-voting status.  The Debtors shall not be required to cause to be translated any other documents contained in the Solicitation Package.

13.     Not later than the Solicitation Date, the Debtors shall transmit, through the Voting Agents, the Solicitation Packages to all holders of the Debtors' Securities, or of claims based on those Securities where appropriate, including Class C General Unsecured Claims (Senior Note Claims), Class C General Unsecured Claims (TOPrS Claims), and Class G-1 Existing Common Stock Claims, by mailing or delivering the Solicitation Packages to (i) each registered holder of Securities as of the Record Date (collectively, the "Record Owners") and (ii) to each bank or brokerage firm, or the agent therefor, identified by the Debtors or the Voting Agents as an entity through which beneficial owners (the "Beneficial Owners") hold the Securities (collectively, the "Intermediary Record Owners").  In addition, the Debtors shall distribute master ballots to the Intermediary Record Owners in accordance with customary procedures in the publicly traded securities industry.  Further, the Debtors shall distribute a ballot directly to registered record holders of common stock who hold the stock in their own name (and not in street name).  Claims in Class E (Section 510(b) Note Claims), Class G-2 (Section 510(b) Equity Claims), and Class H (Section 510(b) ERISA Claim) shall be voted by their respective class action representatives, as approved by the Order Preliminarily Approving Multidistrict Litigation and Insurance Settlement entered on October 29, 2007 (Docket No. 10746) (the "Preliminary MDL Settlement Approval Order"), or putative members of the classes who filed Claims and opted out of the class and whose Claims have not been expunged by Court order.

14.     Labels For Record Holders.  To facilitate the distribution described in the immediately preceding paragraph, each of the indenture trustees and transfer agents for the Securities, including, without limitation, Wilmington Trust Company (as Indenture Trustee for the Senior Notes), Law Debenture Trust Company of New York (as Indenture Trustee for the Subordinated Notes), and Computershare Shareholder Services (as Transfer Agent of Existing Common Stock) or any successors thereto, shall, if and to the extent they have not done so

13

previously, provide to the Securities Voting Agent an electronic file containing the names, addresses, and holdings of the respective Record Owners of the Securities as of the Record Date or, if unable to provide an electronic file, two sets of adhesive labels and a list containing the same information no later than December 11, 2007.

15.      Within five business days after an Intermediary Record Owner's receipt of the Solicitation Packages, the Intermediary Record Owner shall distribute the Solicitation Packages to the respective Beneficial Owners for which they hold Securities.

16.      Voting By Beneficial Owners.  Intermediary Record Owners are hereby authorized and directed to use the appropriate procedure set forth below for obtaining the votes of Beneficial Owners.  First, the Intermediary Record Owners may forward the Solicitation Package to the Beneficial Owners of the Securities for voting, which package shall include a beneficial owner ballot substantially in the form of the beneficial owner ballots attached as part of Exhibit A to this order (the "Beneficial Owner Ballot") and a return envelope provided by, and addressed to, the Intermediary Record Owner.  Upon receipt of the Beneficial Owner Ballots, the Intermediary Record Owner shall summarize the individual votes of its Beneficial Owners, as reflected on the Beneficial Owner Ballots, on a master ballot in substantially the form of the master ballots attached as part of Exhibit A to this order (each a "Master Ballot").  The Intermediary Record Owners shall then return the Master Ballot to the Securities Voting Agent prior to the Voting Deadline.

17.      Alternatively, if an Intermediary Record Owner is unable to use the option above, it may prevalidate a Beneficial Owner Ballot (a "Prevalidated Ballot") by signing that ballot and by indicating on that ballot the identity of the Intermediary Record Owner, the principal amount or number of shares, as applicable, of Securities owned by the Beneficial Owner, and the appropriate account numbers through which the Beneficial Owner's holdings are

14

derived.  The Intermediary Record Owner shall then forward a Solicitation Package, including

the Prevalidated Ballot and a return envelope addressed to the appropriate Securities Voting

Agent, for voting by the Beneficial Owner.

18.    The Debtors are hereby authorized to reimburse Intermediary Record

Owners for their reasonable and customary out-of-pocket expenses incurred in performing the

tasks described above upon written request of the Intermediary Record Owner (subject to the

Court's jurisdiction to resolve any disputes over any such request for reimbursement).

19.    The Debtors shall serve a copy of this order on each indenture trustee, the

transfer agent, and each Intermediary Record Owner identified by the Debtors and the Securities

Voting Agent as an entity through which Beneficial Owners hold Securities.

20.    Confirmation Hearing Notice.  The form of notice of the Confirmation

Hearing and the Confirmation Objection Deadline (the "Confirmation Hearing Notice") annexed

hereto as Exhibit C is approved and shall be included in the Solicitation Packages distributed to

all creditors and interest holders and all persons or entities on the Debtors' master service list.

The Confirmation Hearing Notice complies with the requirements of Bankruptcy

Rules 2002(c)(3) and 3017(f) by including in conspicuous bold language a statement that the

Plan proposes releases and injunctions against conduct not otherwise enjoined under the

Bankruptcy Code, describing briefly the nature of the releases and injunctions, identifying the

persons and entities that are subject to the releases and injunctions, and providing those persons

and entities that are not creditors or equity security holders with contact information to obtain a

copy of the Plan and Disclosure Statement.  As to those persons and entities subject to the

releases and injunctions, and not receiving a copy of Exhibit C as provided herein, notice by

publication as set forth above is sufficient notice as permitted by Bankruptcy Rule 2002(l).  To

supplement notice of the Confirmation Hearing, and to ensure proper notice of any releases and

injunctions contained in the Plan, the Debtors shall transmit the Confirmation Hearing Notice to

parties to executory contracts and unexpired leases, which parties are not currently "creditors" as

defined in section 101(10) of the Bankruptcy Code.  In addition, the Debtors shall give

supplemental publication notice of the Confirmation Hearing by causing the Confirmation

Hearing Notice to be published not fewer than 25 days before the Confirmation Hearing in the

New York Times (national edition), the Wall Street Journal (national, European, and Asian

editions), USA Today (worldwide), the Automotive News (national edition), and in local

editions of the following: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News,

the Chicago Sun Times, the Cleveland Plain Dealer, the Clinton News, the Columbus Dispatch,

the Daily Leader, the Dayton Daily News, the Detroit Free Press, the Detroit News , the El Paso

Times, the Fitzgerald Herald Leader, The Flint Journal, the Gadsden Times, the Grand Rapids

Press, the Greensville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune,

the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee

Journal Sentinel, the Mobile Beacon, The Mobile Register, the Oakland Press, the Olathe Daily

News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky Register, the

Toledo Blade, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and The

Vindicator.

21.     Ballots.  The Debtors' proposed forms of ballots, in substantially the forms

annexed to this order as Exhibit A (as may be specifically modified for particular classes of

claims or interests), are hereby approved for use in connection with the Debtors' solicitation of

votes to accept or reject the Plan.

22.     The Unimpaired Creditors in Classes A, B, and J are conclusively

presumed to have accepted the Plan and solicitation of votes from those Creditors is not required.

In lieu of a ballot and in accordance with Bankruptcy Rule 3017(d), the Solicitation Packages

mailed to the Unimpaired Creditors shall contain a notice of non-voting status substantially in the

form of Exhibit D to this order.

23.     The holders of claims and interests in Class I are conclusively presumed to

have rejected the Plan and solicitation of votes from those creditors and interest holders shall not

be required.  In lieu of a ballot, the Solicitation Packages mailed to those creditors and interest

holders, as well as holders of contingent and disputed claims, shall contain a notice of non-voting

status substantially in the form of Exhibit E to this order.  In addition, recipients of an objection

to expunge their claim or interest shall receive a notice of non-voting status.

24.     The deadline for the filing and serving of motions requesting temporary

allowance of a movant's claim or interest for purposes of voting pursuant to Bankruptcy

Rule 3018(a) ("Rule 3018(a) Motion(s)") shall be 4:00 p.m. (prevailing Eastern time) on

January 2, 2008 (the "Rule 3018(a) Motion Deadline"); provided, however, that if the Debtors

object to a claim or interest after December 21, 2007, the Rule 3018(a) Motion Deadline shall be

extended for that claim or interest such that the deadline shall be ten days following the filing of

the Debtors' objection.  Rule 3018(a) Motions shall be filed with the Clerk of the Court and

served on the Notice Parties in the manner set forth for objections to the confirmation of the

Debtors' Plan.  Any party timely filing and serving a Rule 3018(a) Motion shall be provided a

provisional ballot and be permitted to cast a provisional vote to accept or reject the Plan.  If, and

to extent that, the Debtors and such party are unable to resolve the issues raised by the Rule

3018(a) Motion, then at the Confirmation Hearing, the Court shall determine whether the

provisional ballot should be counted as a vote on the Plan.

25.     Any holder of a claim or interest to which the Debtors filed objections

requesting the Court to modify claims either in (a) amount, (b) Debtor or Debtor group, or

(c) Plan class shall be allowed to vote in the amount and class set forth in the Debtors' objection.

Solicitation Packages shall be transmitted to the appropriate parties based upon the Debtors'

records as of the Record Date.  To provide notice to any holders of claims or interests of a

change in voting status on account of an objection filed after the Solicitation Date and to provide

notice of a claimant's right to file a Rule 3018(a) Motion, the Debtors shall provide such holders

with the Notice To Parties Subject To A Post-Solicitation Date Objection, the form of which is

attached hereto as Exhibit F and hereby approved as being in compliance with Rule 3018-1(b) of

the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of

New York.  Any holder whose claim or interest has been estimated pursuant to the Estimation

Order (Docket No. 9685), however, shall be allowed to vote in the amount set forth for that claim

or interest therein, notwithstanding that this claim or interest is subject to a pending objection,

subject to any intervening orders of the Court.

26.     The filing of an avoidance action by the Debtor which includes no

objection to a claim held by the defendant shall not, by itself, cause the defendant's claim to lose

the benefit of deemed allowance under section 502(a) with respect to voting on the Plan.

Alternatively, under Rule 3018(a), such claims shall be allowed temporarily for voting purposes,

and not for the purposes of distribution or otherwise, but only if the claim would have been

deemed allowed under section 502(a) but for the filing of the avoidance action.

27.     When No Notice or Transmittal Necessary; Voting Deadline; Procedures

For Vote Tabulation.  Solicitation Packages shall not be sent to creditors whose claims are based

solely on amounts scheduled by the Debtors and whose claims already have been paid in the full

scheduled amount; provided, however, that if, and to the extent that, any such creditor would be

entitled to receive a Solicitation Package for any reason other than by virtue of the fact that its

claim had been scheduled by the Debtors, the creditor shall be sent a Solicitation Package in

accordance with the procedures set forth above.  In addition, the Debtors shall not be required to

send a Solicitation Package to any party who filed a proof of claim if the amount asserted in the proof of claim has already been paid.   The Debtors, however, shall send the Confirmation Hearing Notice to any such party, who, for the foregoing reasons, shall not be sent a Solicitation Package.

28.    The Debtors shall not be required to give notice or effectuate service of any kind upon any person or entity to which the Debtors mailed a Disclosure Statement Hearing Notice and received any of these notices returned by the U.S. Postal Service marked "undeliverable as addressed," "moved – left no forwarding address," "forwarding order expired," or a similar reason for return of the notice, unless the Debtors have been informed in writing by that person or entity of the person's or entity's new address.

29.    Subject to paragraph 31(i) below, to be counted, ballots (including Master Ballots) for accepting or rejecting the Plan must be received by the appropriate Voting Agent not later than January 11, 2008, at 7:00 p.m. (prevailing Eastern time) (the "Voting Deadline"). Ballots must be returned to the appropriate Voting Agent on or before the Voting Deadline by (a) mail, in the return envelope provided with each ballot, (b) overnight delivery, or (c) hand delivery.  Any ballot submitted by facsimile or other electronic means of transmission shall not be counted.

30.    Any ballot timely received that contains sufficient information to permit the identification of the claimant or interest holder and is cast as an acceptance or rejection of the Plan shall be counted and shall be deemed to be cast as an acceptance or rejection, as the case may be, of the Plan.  Each Record Owner or Beneficial Owner of a Security shall be deemed to have voted the full amount of its claims or interest relating to the Security, notwithstanding anything to the contrary on any ballot.  The foregoing general procedures shall be subject to the following:

19

(i)     If a claim is deemed allowed in accordance with the Plan, that claim
        would be allowed for voting purposes in the deemed allowed amount set
        forth in the Plan,

(ii)    If a claim for which a proof of claim has been filed is marked as
        unliquidated or partially unliquidated, the claim, if fully unliquidated, shall
        be temporarily allowed for voting purposes only, and not for purposes of
        allowance or distribution, in the amount of $1.00, and if the claim is
        partially unliquidated, the liquidated portion shall be similarly temporarily
        allowed at its liquidated amount for voting purposes and no amount shall
        be allocated for voting purposes on account of the unliquidated portion,

(iii)   If a claim is subject to a potential avoidance action, the action shall not, by
        itself, cause the claim to lose the benefit of deemed allowance under
        section 502(a) of the Bankruptcy Code with respect to voting on the Plan,

(iv)    If a claim has been estimated or otherwise allowed for voting purposes by
        order of the Court, the claim shall be temporarily allowed in the amount so
        estimated or allowed by the Court for voting purposes only, and not for
        purposes of allowance or distribution, and

(v)     If the Debtors have served and filed an objection to a claim at least
        thirteen calendar days before the Confirmation Hearing, subject to the
        filing of a Rule 3018(a) Motion, the claim shall be temporarily disallowed
        for voting purposes only and not for the purposes of the allowance or
        distribution, except to the extent and in the manner as may be set forth in
        the objection.

31.     The following ballots shall not be counted or considered for any purpose

in determining whether the Plan has been accepted or rejected:

(i)     Any ballot received after the Voting Deadline unless the Debtors have
        granted an extension in writing of the Voting Deadline with respect to that
        ballot, which extension of the Voting Deadline shall be subject to Court
        approval,

(ii)    Any ballot that is illegible or contains insufficient information to permit
        the identification of the claimant or interest holder, as the case may be,

(iii)   Any ballot cast by a person or entity which does not hold a claim or
        interest in a class that is entitled to vote to accept or reject the Plan,

(iv)    Any ballot cast on account of a proof of claim filed, or a Security
        purchased or otherwise obtained, after the Record Date,

(v)     Any ballot cast for a claim listed in the Schedules as unliquidated, contingent, or disputed and for which (i) no superseding proof of claim was timely filed and (ii) no Rule 3018(a) Motion has been filed by the Rule 3018(a) Motion Deadline,

(vi)    Any ballot cast in a manner that neither indicates an acceptance nor rejection of the Plan or that indicates both an acceptance and rejection of the Plan,

(vii)   Any ballot submitted by facsimile transmission or other electronic means of transmission, and

(viii)  Any unsigned ballot.

32.     Notwithstanding Bankruptcy Rule 3018(a), whenever two or more ballots are cast voting the same claim or interest before the Voting Deadline, the last ballot received before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede any prior ballots; provided, however, that where an ambiguity exists as to which ballot was the latest transmitted, the appropriate Voting Agent is permitted to contact the voting party and calculate the vote according to the party's stated intent.  The foregoing shall be without prejudice to the Debtors' right to object to the validity of the second ballot on any basis permitted by law and, if the objection is sustained, to count the first ballot for all purposes.

33.     Vote splitting shall not be permitted (except as it may relate to the procedures with respect to Master Ballots), and creditors and interest holders who vote must vote all their claims or interests within a particular class to either accept or reject the Plan.

34.     For all persons or entities which timely filed a proof of claim reflecting a claim or portion of a claim that is unliquidated, the claim shall be allowed temporarily for voting purposes only, and not for purposes of allowance or distribution, for that portion of the claim that is not unliquidated. Fully unliquidated claims shall be counted for purposes of determining whether a sufficient number of the allowed claims in the applicable class has voted to accept the Plan, but the allowed amount of the fully unliquidated claim shall be $1.00 for voting purposes,

21

subject to the right of the holder to file a Rule 3018(a) Motion under paragraph 24 hereof.

Unliquidated claims shall also include any claims that were the subject of prepetition litigation

between the Debtors and the claimant as of the Petition Date.

35.    For all persons or entities which filed a proof of claim reflecting a claim or

portion of a claim that is contingent, the claim shall be disallowed in its entirety for voting

purposes, subject to the right of such holder to file a Rule 3018(a) Motion under paragraph 24

hereof.  Contingent claims shall include any claim that has been explicitly designated as

contingent on the proof of claim form.  Finally, contingent claims shall include any claims that

were not the subject of prepetition litigation, but that otherwise involved an allegation of liability

against the Debtors that was contested or otherwise was the subject of continuing, unresolved

investigations as of the Petition Date.

36.    The following procedures shall be used by the Debtors and the Securities

Voting Agent for tabulating votes cast by holders of Securities:

(i)    Intermediary Record Owners required to use the Master Ballot voting
process shall be required to retain for inspection by the Court the
Beneficial Owner Ballots cast by Beneficial Owners for one year
following the Voting Deadline, and Intermediary Record Owners required
to send Prevalidated Ballots to Beneficial Owners for direct return to the
respective Voting Agent shall be required to retain for inspection by the
Court a list of those Beneficial Owners to whom the Prevalidated Ballots
were sent for one year following the Voting Deadline.

(ii)    Votes cast by Beneficial Owners holding Securities through Intermediary
Record Owners and transmitted by means of a Master Ballot or
Prevalidated Ballot shall be applied against the positions held by the
Intermediary Record Owners with respect to the Securities.  Votes
submitted by an Intermediary Record Owner on a Master Ballot or
Prevalidated Ballot must not be counted to the extent they are in excess of
the position maintained by the respective Intermediary Record Owner in
the Securities on the Record Date.

(iii)    The following assumptions apply to Prevalidated Ballots: (i) each
Prevalidated Ballot shall be for a single account and (ii) each vote shall be
a separate vote and not duplicative of any other vote cast by other

customers of the Intermediary Record Owner (unless specific evidence exists that indicates that one vote is for the identical account number and amount of another vote).

(iv)     To the extent that conflicting votes or overvotes are submitted on a timely received Master Ballot or Prevalidated Ballot, the Securities Voting Agent shall attempt to resolve the conflict or overvote before the preparation of the vote certification.

(v)     To the extent that overvotes on a timely received Master Ballot or Prevalidated Ballot are not reconcilable before the preparation of the vote certification, the Securities Voting Agent shall count votes in respect of the Master Ballot or Prevalidated Ballot in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or Prevalidated Ballot that contained the overvote, but only to the extent of the applicable Intermediary Record Owners' position on the Record Date in the applicable Securities.

(vi)     Intermediary Record Owners shall be authorized to complete multiple Master Ballots, and the votes reflected by the multiple Master Ballots shall be counted except to the extent that they are duplicative of other Master Ballots.  If two or more duplicative Master Ballots submitted are inconsistent in whole or in part, the latest Master Ballot received before the Voting Deadline, to the extent of such inconsistency, shall supersede and revoke any prior Master Ballot, subject to the Debtors' right to object to the validity of the second Master Ballot on any basis permitted by law, including under Bankruptcy Rule 3018(a).

(vii)     Each Intermediary Record Owner or Beneficial Owner of the Securities shall be deemed to have voted the full principal amount (and with respect to the TOPrS, number of TOPrS), or number of shares held, notwithstanding anything to the contrary on the Ballot.  Therefore, with respect to the Senior Notes and the TOPrS, the Securities Voting Agent may adjust any principal amount or number of TOPrS voted to reflect the corresponding claim amount, including prepetition interest.

37.     The requirement under Rule 3018-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the certification of acceptance and rejections of the plan is modified to require the Voting Agents to file their certifications no later than 4:00 p.m. (prevailing Eastern time) on January 16, 2008.

38.     To the extent that (a) an objection to confirmation of the Plan is timely and properly filed and served, (b) such objection opposes the classification of claims or interests

proposed under the Plan and requests the receipt of periodic reports during the solicitation period

disclosing the interim tabulation of votes, and (c) the objector executes, or is party to, a

stipulation and agreed protective order applicable to confirmation or a mutually agreeable non-

disclosure agreement, then following the receipt of such objection through and including the

filing of the voting report with the Court, the Debtors shall provide, or shall cause to be provided,

to such objector on a highly confidential basis balloting reports on each business day that the

Debtors receive balloting reports which disclose the interim tabulation of votes received and

tabulated as of a specific date and time during the solicitation period (which date shall vary by

report) and which shall, to the extent included in the Debtors' reports, include the tabulation

broken down by type of claim and by Debtor (which may vary by report); provided, however,

that counsel to the Statutory Committees, White & Case LLP on behalf of the Plan Investors, and

Weil, Gotshal & Manges LLP on behalf of General Motors Corporation shall receive on a highly

confidential basis balloting reports on each business day that the Debtors receive balloting

reports without the necessity of filing an objection.

      39.    Service of all notices and documents described herein in the time and

manner as set forth herein, including the service and publication of the Confirmation Hearing

Notice and the Confirmation Hearing Publication Notice, as described in the Motion, shall be

adequate and sufficient and no other or further notice will be necessary.

      40.    Plan Exhibits And Disclosure Statement Appendices Filing Deadline.  The

Debtors shall file all exhibits and schedules to the Plan and appendices to the Disclosure

Statement with the Court on or before December 28, 2007 (the "Exhibit Filing Date").  After the

Exhibit Filing Date, copies of exhibits to the Plan and appendices to the Disclosure Statement

shall be available by accessing the Delphi Legal Information Website at www.delphidocket.com.

In addition, printed copies of the Plan and its exhibits and the Disclosure Statement and its

appendices may also be obtained, upon reasonable written request, from the Creditor Voting

Agent, Kurtzman Carson Consultants LLC, 2335 Alaska Avenue, El Segundo, California 90245,

Att'n: Delphi Corporation, et al.  The Debtors shall not be required to serve the exhibits and

schedules to the Plan and appendices to the Disclosure Statement upon any of the parties-in-

interest in these cases.

      41.    <u>Notices To Union-Represented Employees And Former Employees</u>.  The

Debtors are authorized to provide the current and former employees represented by the United

Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), the

United Steel Workers (the "USW"), the International Union of Electronic, Electrical, Salaried,

Machine and Furniture Workers-Communication Workers of America (the "IUE-CWA"), the

International Association of Machinists and Aerospace Workers and its District 10 and Tool and

Die Makers Lodge 78 (the "IAM"), the International Brotherhood of Electrical Workers and its

Local 663 (the "IBEW"), the International Union of Operating Engineers Locals 832S, 18S, and

101S (the "IUOE"), and certain non-represented employees and former employees with the

Confirmation Hearing Notice and the appropriate specialized notice.  The forms of UAW, USW,

IUE-CWA, IAM, IBEW, and  IUOE Notices are attached hereto as <u>Exhibits G</u>, <u>H</u>, <u>I</u>, <u>J</u>, <u>K</u>, and <u>L</u>,

respectively, and the forms of notice to be sent to certain non-represented employees and former

employees is attached hereto as <u>Exhibit M</u>, each of which are hereby approved.

      42.    <u>Notice To Employees Receiving Multiple Solicitation Documents</u>.  For

those current and former employees who may receive multiple documents as part of the

solicitation process, the Debtors shall be authorized, in their sole discretion, to make available by

either normal internal communications channels or posting on the Delphi intranet and at

www.delphidocket.com a notice, the form of which is attached hereto as <u>Exhibit N</u> and hereby

approved.

43.    <u>Cure Claim Procedures</u>.  The Debtors shall be authorized to provide counterparties to supply contracts that the Debtors intend to assume with the Cure Amount Notice, the form of which is attached hereto as <u>Exhibit O</u> and hereby approved, by mailing such notice on or before December 21, 2007.  Parties wishing to object to the assumption of their contracts under the terms set forth in the Cure Amount Notice shall be required to return the Cure Amount Notice in accordance with the instructions provided therein so as to be received by the undersigned counsel to the Debtors and such other notice parties as required in the instructions on or before January 11, 2008.  Such objecting party shall also be required to subsequently file a substantive objection to the Cure Claim Amount (in accordance with the procedures outlined in the Cure Amount Notice) and/or assumption of their contract on or before the date that is 30 days following the effective date of the Plan.  The Cure/assumption dispute shall then be resolved following the effective date of the Plan.  Parties which either agree with the cure of their supply contracts as set forth in the Cure Amount Notice or do not timely return the Cure Amount Notice shall be given plan currency (as provided to allowed general unsecured creditors including any postpetition interest) on account of their Cure Claim Amount as set forth in the Cure Amount Notice and in the amount set forth in such notice.  The Debtors are authorized, but not directed, to remit resolved, uncontested, or adjudicated distributions on account of cure directly to the contract party whose contract is being assumed or assumed and assigned.

44.    The Debtors shall be authorized to provide a notice titled Notice To Holders, Assignees, Transferees, And Purchasers Of Claims Of Cure Procedures Established Under Solicitation Procedures Order, the form of which is attached hereto as <u>Exhibit P</u> and hereby approved, to parties that may have purchased claims from certain of the Debtors' Material Supply Agreement counterparties who have been provided with a cure payment election pursuant

to the Cure Amount Notice. This shall be the only notice the Debtors shall be required to

provide to these purchasers with respect to the cure and these purchasers shall have no rights or

recourse against the Debtors with respect to the cure.

45.    For those counterparties who will receive a Cure Amount Notice for

whom the Debtors have multiple addresses for a single contract, the Debtors shall be authorized

to transmit, on or before December 21, 2007, a notice, the form of which is attached hereto as

Exhibit Q and hereby approved. This notice shall communicate to the counterparty that a Cure

Amount Notice has been sent to multiple addresses, which addresses shall be set forth on an

exhibit to the notice. Transmission of this proposed notice, as applicable, together with the Cure

Amount Notice to addresses in the Debtors' current books and records shall satisfy the Debtors'

noticing obligations.

46.    Postpetition Interest Rate Dispute Procedures. The Debtors shall be

authorized to provide creditors holding General Unsecured Claims, other than Senior Note

Claims and TOPrS Claims, with the Postpetition Interest Rate Determination Notice, the form of

which is attached hereto as Exhibit R and hereby approved, by mailing such notice on or before

December 15, 2007. Any party wishing to contest the proper rate of interest to be paid on

account of its claims under the terms set forth in the Postpetition Interest Rate Determination

Notice shall be required to return the Postpetition Interest Rate Determination Notice in

accordance with the instructions provided therein so as to be received on or before January 11,

2008. If the Debtors disagree with the interest rate asserted in a returned Postpetition Interest

Rate Determination Notice, they shall file an objection no later than 30 days after the effective

date of the Plan. To the extent that the Postpetition Interest Rate Determination Notice is

returned and contests the rate of interest and relates to a claim that would otherwise be allowed,

such claim shall no longer be deemed an allowed claim for purposes of distribution until the interest rate issue is resolved consensually or by Court order.

47.     <u>Reclamation Claim Procedures</u>.  The Debtors shall be authorized to provide to a party asserting a reclamation claim the Reclamation Election Notice (as defined in the Second Amended And Restated Final Order Under 11 U.S.C. §§ 362, 503, And 546 And Fed. R. Bankr. P. 9019 Establishing Procedures For Treatment Of Reclamation Claims entered by this Court on October 2, 2007 (Docket No. 10409) (the "Reclamation Order")), the form of which is attached hereto as <u>Exhibit S</u> and which was approved pursuant to the Reclamation Order.

48.     <u>Trading In Delphi Securities</u>.  To the extent Delphi determines to open a trading window for insiders to trade in Delphi securities, it shall inform counsel to the Creditors' Committee and Equity Committee of its intention to do so in advance of the opening of such trading window.

49.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
         December 10, 2007


                                         /s/ Robert D. Drain_____
                                         UNITED STATES BANKRUPTCY JUDGE