Hearing Date & Time:  January 17, 2008 at 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan, III (AH 8807)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :
    In re                    :       Chapter 11
                      :
DELPHI CORPORATION, et al.,    :       Case No. 05-44481 (RDD)
                      :
            Debtors.    :       (Jointly Administered)
                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SUPPLEMENTAL REPLY TO OBJECTION TO MOTION FOR ORDER
APPROVING MULTIDISTRICT LITIGATION AND INSURANCE SETTLEMENTS

Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this supplemental reply in support of this Court's final approval of their Motion For Order Approving Multidistrict Litigation And Insurance Settlements (Docket No. 9296), dated September 7, 2007 (the "Motion"). Capitalized terms used and not otherwise defined in this supplemental reply have the meanings ascribed to them in the Motion or the Debtors' Reply In Support Of Motion For Order Approving Multidistrict Litigation And Insurance Settlements (Docket No. 10714), dated October 24, 2007, as appropriate.[1]

Preliminary Statement

1.  In the Motion, the Debtors sought this Court's approval of a settlement that completely resolves as to Delphi and certain other defendants the MDL pending against Delphi and other defendants and related matters. In October 2007, the Debtors – after consulting with the Creditors' Committee, the Securities Lead Plaintiffs, and the ERISA Named Plaintiffs – determined to proceed with the Motion under a two-step bifurcated approach. Under the first step, the Debtors sought from this Court an order preliminary approving the settlement, granting certain relief as to solicitation and voting concerning the Debtors' plan of reorganization, and lifting the automatic stay with respect to certain documents produced to the Securities Lead Plaintiffs. This Court granted the Debtors' request in its Order Preliminarily Approving Multidistrict Litigation And Insurance Settlement (Docket No. 10746), dated October 29, 2007 (the "Order"), a copy of which is attached to this reply as <u>Exhibit A</u>.

---

[1] The descriptions of the settlement stipulations set forth in this supplemental reply are qualified in their entirety by and are subject to the actual terms and conditions of the Securities Stipulation, the Modified Securities Stipulation (as defined below), the ERISA Stipulation, the Amended ERISA Stipulation (as defined below), and the Insurance Stipulation.

        2.       The Debtors are now proceeding with the second step of the bifurcated approach by seeking this Court's final approval of the settlement in connection with the confirmation of the Debtors' First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (as it may be amended, supplemented, or otherwise modified) (the "Plan").[2]  Under the Order, the following parties were authorized to object to final approval of the settlement:  (i) the Creditors' Committee, (ii) the United States Department of Labor, (iii) Wilmington Trust Company, as indenture trustee, (iv) the Ad Hoc Committee of Trade Creditors, (v) Davidson Kempner Capital Management LLC, SPCP Group, LLC, Castlerigg Master Investments Ltd., Elliot Associates, L.P., and CR Intrinsic Investors, LLC (the "Bondholders' Group"),[3] and (vi) the Equity Committee (collectively, the "Potential Objectors").  (Id. ¶¶ I, 13.)  The Order barred all other parties from objecting to final approval of the settlement.  (Id. ¶ 13.)

        3.       Of the Potential Objectors, only the Bondholders' Group filed an objection.[4]  The principal argument raised by the Bondholders' Group is that the settlement

---

[2]    The Debtors are no longer seeking approval of the relief requested in the Motion with respect to the United States Department of Labor.  (See Motion ¶¶ 67-68, 95-98.)

[3]    As noted in the Order, the Debtors assert that these bondholders are part of a group or ad hoc committee and in any event are governed by Fed. R. Bankr. P. 2019 and are potentially subject to other relief available to the Debtors under applicable law.  (See Order ¶ I n.2.)

[4]    The Bondholders' Group's objection to final approval is set forth in the Objection By Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC; Davidson Kempner Capital Management LLC; Elliot Associates, L.P.; And SPCP Group, LLC To Motion By The Debtors For Order Approving Multidistrict Litigation And Insurance Settlements (Docket No. 10687), dated October 19, 2007, and is reiterated in part in paragraph one of the Preliminary Objection Of Caspian Capital Advisors, LLC; Castlerigg Master Investments Ltd.; CR Intrinsic Investors, LLC; Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Everest Capital Limited; Nomura Corporate Research & Asset Management, Inc.; Northeast Investors Trust; And Whitebox Advisors, LLC To Conformation Of First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11471), dated December 14, 2007, and paragraphs 114-117 of the Memorandum Of Law And Supplemental Objection Of Davidson Kempner Capital Management LLC; Elliott Associates, L.P.; Nomura Corporate Research & Asset Management, Inc.; Northeast Investors Trust; And Whitebox Advisors, LLC To Confirmation Of The First Amended Joint Plan Of

(cont'd)

violates the absolute priority rule because it allows a recovery by junior creditors – the members of the Securities Class and the ERISA Class – even though senior creditors are allegedly not receiving a full recovery under the Debtors' Plan.  This is not a valid argument, however, because the absolute priority rule applies only with respect to classes that vote against a plan of reorganization.  In this case, the creditor class to which the members of the Bondholders' Group belong, Class 1C, voted in favor of the Debtors' Plan.  The Bondholders' Group is therefore barred from asserting that the settlement violates the absolute priority rule.

4. The Bondholders' Group also argues that the settlement "grant[s] impermissibly broad releases to the Debtors' current and former officers and directors," including some current and former officers and directors who are not parties to the settlement stipulations. (See Docket No. 10687 at 2, ¶ 18.)  As a threshold matter, this factor is of limited importance in this case because the releases were approved by disinterested members of the Board, undercutting the Bondholders' Group's suggestion that the released individuals benefited from improper collusion or self-dealing.  Moreover, the releases are appropriate because they were an essential element of a broader arrangement that made possible the Insurers' commitment to provide more than $110 million in insurance proceeds to the Securities Class and the ERISA Class under the settlement, which in turn enabled the Debtors to achieve their objective of a comprehensive resolution of the MDL and related matters.

## Background

5. Since this Court entered the Order on October 29, 2007, there have been a number of developments concerning the settlement.  On October 31, 2007, the parties to the

---

*(cont'd from previous page)*
  Reorganization Of Delphi Corporation And Certain Debtors And Debtors-In-Possession (Docket No. 11951), dated January 11, 2008.

ERISA Stipulation executed an amended stipulation (the "Amended ERISA Stipulation") that, among other things, modified the ERISA Stipulation's definitions of "Contribution Credit" and "Indemnity Credit" to resolve an objection that had been filed in the District Court by State Street Bank and Trust Company, one of the defendants in the MDL ERISA actions.  (Exhibit C ¶¶ 1(j), 1(x).)  The Amended ERISA Stipulation also corrected a typographical error in the ERISA Stipulation's definition of "Judgment" and corrected the ERISA Stipulation's inadvertent omission of one of the ERISA plans at issue in the MDL ERISA actions, the Delphi Mechatronic Systems Savings-Stock Purchase Program.  (Exhibit C ¶¶ 1(z), 1(hh).)  A copy of the Amended ERISA Stipulation is attached to this supplemental reply as Exhibit B, and a blackline filed with the District Court by the ERISA Named Plaintiffs that shows the differences between the ERISA Stipulation and the Amended ERISA Stipulation is attached to this supplemental reply as Exhibit C.

    6.  On November 13, 2007, the District Court held a fairness hearing on the motions filed by the Securities Lead Plaintiffs and the ERISA Named Plaintiffs seeking final approval of the settlements contemplated by the Securities Stipulation and the Amended ERISA Stipulation.  At the conclusion of the hearing, the District Court took the matter under advisement.

    7.  Meanwhile, the Debtors were engaged in discussions with several parties concerning the Debtors' plan of reorganization.  As a result of those discussions, Delphi and the Securities Lead Plaintiffs agreed to modify the Securities Stipulation with respect to the consideration to be provided by Delphi.  Under the modifications, instead of receiving an allowed claim in the face amount of $204 million, with no additional provision to be made for accrued interest, the Securities Lead Plaintiffs, as representatives of the Securities Class, will

5

receive an allowed claim in the face amount of $179 million, also with no additional provision to be made for accrued interest.  The modifications also provide that Delphi will cause a third party to pay $15 million in cash to the escrow agent under the Securities Stipulation, and it establishes a process by which the Securities Lead Plaintiffs, as representatives of the Securities Class, may exercise rights distributed to them under the rights offering contemplated by the Debtors' Plan.

        8.      Delphi and the Securities Lead Plaintiffs presented the modifications to the District Court at a hearing on December 4, 2007.  At the hearing, the District Court expressed its view that the modifications had at least a neutral impact on the rights of the members of the Securities Class, and that they potentially provided a net benefit to class members.  The District Court tentatively approved the modifications, subject to final consideration after publication of a supplemental notice affording members of the Securities Class an opportunity to object, and directed the parties to memorialize the modifications in a stipulation.[5]  Under the supplemental notice, the deadline for objections to the modifications in the District Court was January 4, 2007.  (Exhibit D at 2 n.3.)  No party objected to the modifications before that deadline.  (Id.)

        9.      The District Court granted final approval of the Securities Stipulation, including the modifications thereto (the "Modified Securities Stipulation"), and the Amended ERISA Stipulation in an opinion and order issued in an opinion and order issued on January 10, 2008, and amended on January 11, 2008.  A copy of the District Court's amended opinion and order is attached to this brief as Exhibit D.  In its amended opinion and order, the District Court considered:

> (a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further

---

[5] As of this filing, not all of the parties to the Securities Stipulation have executed the written stipulation memorializing the modifications.

6

> litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest.

(Id. at 25.) The District Court found that "each of [these] factors weigh[ed] in favor of approval" of the settlement, and concluded that the settlement was "fair and reasonable." (Id. at 25, 39.) As noted by the District Court, although one putative member of the Securities Class filed an objection to the Securities Lead Plaintiffs' counsel's application for attorneys' fees and expenses, by the time the hearing regarding final approval concluded "there [were] no substantive objections to either the ERISA or the [s]ecurities [s]ettlement." (Id. at 35-37.)

## Reply To The Bondholders' Group's Objections

### A.    The Rule 9019 Factors Weigh Heavily In Favor Of The Settlement.

10.    In deciding whether to grant final approval of the settlement covered by the Motion, this Court "need only canvass the issues to determine if the settlement falls below the lowest point in the range of reasonableness." In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006) (internal quotations marks omitted here and throughout); accord In re Adelphia Communications Corp., 368 B.R. 140, 225 (Bankr. S.D.N.Y. 2007). The factors to be weighed in making this determination include (1) the balance between the likelihood of success in the litigation compared to the present and future benefits offered by the settlement, (2) the prospect of complex and protracted litigation with its attendant expense, inconvenience, and delay, and the difficulties associated with collection of any judgment, (3) the paramount interests of the creditors, which includes the relative benefits to be received by members of any affected class and the degree to which creditors either do not object to or affirmatively support the proposed settlement, (4) the degree to which the settlement is supported by other parties in

7

interest, (5) the competency and experience of counsel who support the settlement, (6) the nature and breadth of releases to be obtained by officers and directors, and (7) the extent to which the settlement is the product of arm's length bargaining.  See WorldCom, 347 B.R. at 137; Adelphia Communications, 368 B.R. at 226.

11.     The Debtors established in the Motion that these factors weigh heavily in favor of this Court's approval of the settlement.  (See Motion ¶¶ 76-82.)  Since then, additional facts have emerged that tip the scales even further toward approval.  First, from the perspective of the Debtors' estates, the economic terms of the settlement have improved under the Modified Securities Stipulation because the face amount of the allowed claim to be granted to the Securities Lead Plaintiffs, as representatives of the Securities Class, has dropped from $204 million to $179 million.  Second, the Bondholders' Group was the only party to object to this Court's preliminary approval of the settlement at the initial hearing on the Motion in October 2007.  And of the Potential Objectors who maintained their rights to object to this Court's final approval of the settlement under the Order – a group that included the Creditors' Committee and the Equity Committee – the Bondholders' Group is the lone party objecting here.  The fact that no other creditor constituency has come forward to contest the settlement is an important indication that the settlement is fair, equitable, and in the best interests of the Debtors and their estates and creditors.  See In re Spielfogel, 211 B.R. 133, 144 (E.D.N.Y. 1997) (stating that court considering settlement agreement should "consider the paramount interest of the creditors and give proper deference to their reasonable views").

B.      **The Absolute Priority Rule Does Not Apply Because Class 1C Voted In Favor Of The Debtors' Plan Of Reorganization.**

12.     The Bondholders' Group argues that the settlement should be rejected because it provides a recovery to junior creditors even though senior creditors will allegedly not

8

receive a full recovery under the Debtors' Plan, in violation of the absolute priority rule. That rule, however, applies only in "cramdown" cases, when an impaired "<u>class</u> of claims or interests" has not accepted a plan of reorganization. 11 U.S.C. § 1129(b)(1) (emphasis added); accord <u>Coltex Loop Central Three Partners, L.P. v. BT/SAP Pool C Assocs., L.P.</u> (In re Coltex Loop Central Three Partners, L.P.), 138 F.3d 39, 42 (2d Cir. 1998) (explaining that section 1129(b) applies when "an impaired class of creditors rejects a plan"); <u>Kane v. Johns-Manville Corp.</u> (In re Johns-Manville Corp.), 843 F.2d 646, 650 (2d Cir. 1988) (stating that section 1129(b) applies only as to "<u>classes</u> that voted against the plan") (emphasis added).

    13.  Thus, in <u>Herbert Construction Co. v. Greater New York Savings Bank</u> (In re 455 CPW Associates), No. 96 CIV. 367, No. 96 CIV. 2476, 1999 WL 675972 (S.D.N.Y. Aug. 31, 1999), the court rejected a dissenting creditor's argument that a plan violated the absolute priority rule because the class to which the creditor belonged had voted in favor of the plan. <u>Id.</u> at *4. Other cases reaching the same result include <u>WHBA Real Estate Limited Partnership v. Lafayette Hotel Partnership</u> (In re Lafayette Hotel Partnership), 227 B.R. 445, 449-50 (S.D.N.Y. 1998), and <u>In re Northeast Dairy Cooperative Federation, Inc.</u>, 73 B.R. 239, 252 (Bankr. N.D.N.Y. 1987), where the court explained: "NFO [the creditor invoking the absolute priority rule] is a member of impaired Class Three. Class Three has voted to accept the Plan. Therefore, the absolute priority provisions of § 1129(b) . . . have no place in the present proceedings." <u>Northeast Dairy</u>, 73 B.R. at 252.

    14.  By analogy, the principle that the absolute priority rule must be taken into account under Fed. R. Bankr. P. 9019 should not apply when, as here, the only party challenging the settlement belongs to a class that has voted in favor of the debtor's plan of reorganization.

9

This limitation will ensure that dissenting creditors do not have greater rights as to the approval of a settlement than they have with respect to the confirmation of a plan.

15. In this case, the members of the Bondholders' Group fall within Class 1C, the class covering general unsecured claims. As explained in greater detail in the Debtors' Memorandum Of Law (A) In Support Of Confirmation Of First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) In Response To Objectors Thereto, dated January 16, 2008, Class 1C voted to accept the Debtors' Plan. Indeed, the tabulation of the votes in Class 1C shows that approximately 80% of the number and 78% of the amount of the claims in that class voted in favor of the plan.[6] Accordingly, under the authorities cited above, the Bondholders' Group is barred from arguing that the settlement violates the absolute priority rule.[7]

C. <u>The Releases In The Settlement Are Appropriate.</u>

16. The Bondholders' Group also asserts that the settlement should be rejected because it includes the Board's release of Delphi's current and former officers and directors, including certain officers and directors who are not parties to the settlement stipulations, with respect to affirmative claims arising from alleged violations of the federal securities laws during

---

[6] With respect to the subset of claims within Class 1C arising from senior notes, approximately 74% of the number and 71% of the amount voted to accept the Debtors' Plan.

[7] In their separate objection to the Debtors' Plan, some members of the Bondholders' Group argue that the subordination provisions of 11 U.S.C. § 510(b) apply outside the context of a cramdown case. This is incorrect, and the Bondholders' Group has not identified a single decision supporting its position. The language in section 510(b) cited by the Bondholders' Group merely sets forth the relative priority of certain claims – those "arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such claim" – within the comprehensive priority scheme established under the Bankruptcy Code. Again, because of the results of the voting on the Debtors' Plan, there is no requirement that the Debtors' Plan comply strictly with that scheme, including the portion of the scheme reflected in section 510(b). Furthermore, as noted in the Debtors' reply concerning Plan objections, the Debtors do not necessarily agree that the treatment of the claims and interests of the Securities Lead Plaintiffs and the ERISA Named Plaintiffs under the settlement conflicts with section 510(b).

the period of time between March 7, 2000 and March 3, 2005, inclusive.[8] Although in appropriate cases courts do consider the nature and breadth of releases to be obtained by officers and directors in deciding whether to approve a settlement under Fed. R. Bankr. P. 9019, this factor should be given little or no weight here because the releases were approved by disinterested members of Delphi's Board. As explained in the Motion, the settlement was authorized by the members of the Board who are not named as defendants in the Delphi Securities Action or the Delphi ERISA Action, and the Board resolution releasing claims against the current and former officers and directors was vetted by the Special Committee and approved by the members of the Board who are not named as defendants in the Delphi Securities Action. (Motion ¶¶ 3, 62-64, 81.) Under these circumstances, the releases identified by the Bondholders' Group are no basis for rejecting the settlement. See Adelphia Communications, 327 B.R. at 165 (giving this factor "no weight" where "[b]oard members who considered the settlement were wholly disinterested").

17.     In addition to this corporate-governance point, the Bondholders' Group's argument fails because the releases were appropriate and integral to the overall structure of the settlement. As detailed in the Motion, the releases of Delphi's current and former officers and directors were related to the Insurers' agreement to provide in excess of $110 million in insurance proceeds to the Securities Lead Plaintiffs and the ERISA Named Plaintiffs under the settlement. (Motion ¶¶ 51-54.) The Insurers' payment exhausted the proceeds available under Tower I and the proceeds available under Tower II are deemed exhausted under the settlement, leaving current and former officers and directors without coverage under those towers. (Id. ¶ 51.) To gain access to the insurance proceeds and accommodate the officers' and directors' reasonable

---

[8] Delphi retained its right to assert such claim as a defense or setoff to claims asserted by such officers and directors.

11

concerns regarding lack of coverage, Delphi and the officers and directors agreed to release their MDL-related claims against the Insurers, Delphi and the Insurers agreed to release their MDL-related claims against the officers and directors, and the Insurers and the officers and directors agreed to release their MDL-related claims against Delphi, including certain indemnification claims that had been asserted against Delphi by the officers and directors. (Id. ¶¶ 56-57, 63-64.)

18.     In sum, the releases granted to Delphi's current and former officers and directors should be given little or no weight in this case because Delphi was careful to have those releases approved by disinterested members of its Board. In addition, the releases identified by the Bondholders' Group were part of the broader arrangement that allowed the parties to gain access to the insurance proceeds made available under the settlement, making it possible for the Debtors to achieve their objective of a comprehensive resolution of the MDL and related matters. For these reasons, the nature and breadth of the releases provide no grounds for sustaining the Bondholders' Group's objection to the settlement, particularly given that the totality of the circumstances and the Rule 9019 factors point strongly in favor of the settlement.

Conclusion

WHEREFORE, the Debtors respectfully request that this Court overrule the Bondholders' objections to final approval of the settlement, enter an order in substantially the same form as the form of Final Order Approving Multidistrict Litigation And Insurance Settlement attached to this supplemental reply as Exhibit E, and grant the Debtors such other and further relief as is just.

DATED:  New York, New York
January 16, 2008

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Albert L. Hogan, III (AH 8807)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession