**Hearing Date And Time: January 17, 2008 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DEBTORS' OMNIBUS REPLY IN SUPPORT OF MOTION FOR ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 502(c) ESTIMATING OR
PROVISIONALLY ALLOWING CERTAIN UNRECONCILED CLAIMS SOLELY
<u>FOR PURPOSES OF ADMINISTRATION OF DISCOUNT RIGHTS OFFERING</u>

("DEBTORS' OMNIBUS REPLY IN SUPPORT OF RIGHTS OFFERING
ESTIMATION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Reply In Support Of The Debtors' Motion For Order Estimating Or Provisionally Allowing Certain Unreconciled Claims Solely For The Purposes Of Administering The Discount Rights Offering[1] (Docket No. 11606) (the "Motion"), and respectfully represent as follows:

1.  The Debtors filed the Motion to facilitate the distribution of the Discount Rights on a pro rata basis under the Plan. Article 7.15(a)(i) of the Plan provides in pertinent part that "[i]f a Claim of a Discount Rights Offering Eligible Holder is not Allowed or otherwise reconciled by the Debtors by the date of commencement of the Confirmation Hearing, such Claim shall be temporarily allowed, solely for purposes of participation in the Discount Rights Offering, in the amount so estimated by the Bankruptcy Court or agreed to by the holder of the claim and the Debtors."  Thus, under the Plan, holders of Unreconciled Claims would be unable to participate in the Discount Rights Offering absent the relief requested in the Motion. Because the Debtors anticipate that the Discount Rights Offering would commence shortly after the Court confirms the Debtors' Plan and the registration statement for the Discount Rights Offering becomes effective, there is not time to finalize the ultimate resolution of the remaining Unreconciled Claims.

2.  Rather than sit idly by and wait for the Discount Rights Offering to commence without the participation of holders of Unreconciled Claims, the Debtors filed

---

[1]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

2

the Motion to temporarily allow or estimate the Unreconciled Claims so that holders of claims could participate in a meaningful aspect of their recoveries under the Plan. Accordingly, the Motion is not an attempt by the Debtors to deprive the holders of Unreconciled Claims of their rights, but instead represents an effort to ensure that those holders' rights are protected.

3. To that end, the Debtors reviewed and analyzed the approximately 1,700 Unreconciled Claims and proposed to allow the holders of those claims to participate in an amount that was the Debtors' best estimate of the value of those claims (the "Participation Amount"). The Debtors' incentive in determining the Participation Amount was to both (a) protect holders of reconciled claims from having their allocation of Discount Rights diluted by participation of holders of Unreconciled Claims at inflated claim amounts and (b) ensure that holders of Unreconciled Claims were allowed to participate in a fair and reasonable amount that most closely approximated the Debtors' estimation of the ultimate allowed amount of the Unreconciled Claims. The Debtors do not stand to retain any value for their estates through reduction of creditors' participation amounts because the number of Discount Rights to be issued is firmly set under the Plan. More simply, all of the rights will be allocated and the Debtors are attempting to ensure that they are allocated fairly, to the proper party, and in compliance with the Plan.

4. After sending out more than 1,700 individualized notices informing claimants of their Participation Amount, the Debtors received only 35 timely-filed formal docketed responses (the "Objections") to the Motion and the Participation Amounts provided therein (covering approximately 108 claims), which confirms the reasonableness and fairness of the Debtors' approach in determining the Participation

3

Amounts.  Since the Objections were filed, the Debtors have worked diligently with the objecting parties (the "Objectors") to resolve their Participation Amounts and have resolved all but four of the Objections.  Attached hereto as Exhibit 1 is the revised proposed order (the "Revised Proposed Order"), which includes on Exhibit A the Participation Amounts for holders of Unreconciled Claims, including the amounts to which the Debtors have agreed with the objectors.  A copy of the Revised Proposed Order marked to show changes made to the proposed order filed with the Motion is attached hereto as Exhibit 2.

5.  The remaining Objections and the Debtors' responses thereto, by Objector, including resolution of the withdrawn or otherwise resolved Objections, are summarized in the chart attached hereto as Exhibit 3.  Attached hereto as Exhibit 4 is a chart summarizing the Objections by the nature of the Objection.  This Reply, therefore, does not repeat everything contained in Exhibits 3 and 4, but instead highlights certain of the Objections.

6.  Only three parties continue to object to the procedures for allocation of Discount Rights proposed by the motion.  The first, Comerica Leasing Corporation ("Comerica") believes that its claim is entitled to either administrative priority or secured status, and accordingly should not be entitled to participate in the Discount Rights Offering and should not have standing to object to the Motion.  Nonetheless, the Debtors are prepared to revise Comerica's Participation Amount to reflect the previously estimated amount of Comerica's claim, subject to the True-Up Provisions (as defined below) of the Revised Proposed Order.

4

7.      The second remaining objector is David N. Goldsweig, one of the Debtors' retirees who objects both to the amount of his estimated claim and certain aspects of the procedures for the Discount Rights Offering. As with Comerica, the Debtors have agreed to revise Mr. Goldsweig's Participation Amount to reflect his asserted amount, subject to the True-Up Provisions in the Revised Proposed Order. The third and final remaining procedural objection is asserted by General Electric Capital Corporation, and primarily focuses on hypothetical rejection damages while joining in all other objections. The remaining objections are accordingly addressed in turn.

A.    The True-Up Provisions Are Fair And Necessary

8.      The Motion and proposed order provide that, in the event holders of Unreconciled Claims receive more value through the exercise of Discount Rights than they are ultimately entitled to following the allowance of their claims, those claimants will be required to remit that value to the Debtors' estates. Such value will be first offset against direct distributions of New Common Stock to Unreconciled Claim holders, but if any such holder exercises Discount Rights at such an inflated Claim amount that New Common Stock is insufficient to make up the difference, the Debtors have correctly reserved their right to seek cash compensation from the claimant (the "True-Up Provisions").[2] Despite the reasonableness of these provisions, certain objectors attempt to shield themselves from returning unwarranted and gratuitous compensation from the Debtors' estates. These efforts should be refused, as the True-Up Provisions are essential

---

[2] As reflected in the marked Revised Proposed Order attached hereto as <u>Exhibit 2</u>, the Debtors have revised the Revised Proposed Order to make clear that the Debtors will first seek to recover the value of Excess Discount Rights from direct distributions of New Common Stock before seeking to recover remittance in cash from a claimant exercising Excess Discount Rights. See infra n. 4. The Debtors have also added a provision to the Revised Proposed Order to resolve the objection of Robert Bosch GmbH.

5

for the Debtors' other creditors that are entitled to participate in the Discount Rights Offering.

9. Numerous courts in the Second Circuit have acknowledged the duty of trustees or debtors-in-possession to preserve assets of the estate. See, e.g., In re First Central Financial Corp., 377 F.3d 209, 216-17 (2d Cir. 2004) (noting duty of trustee to preserve assets of estate); In re Bennett Funding Group, Inc., 255 B.R. 616, 630-31 (N.D.N.Y. 2000) (noting Bankruptcy Code's broad policy of protecting assets of estate); In re Angelika Films 57th, Inc., 227 B.R. 29, 42 (Bankr. S.D.N.Y. 1998) (noting significant role of bankruptcy court in protecting assets of estate to maximize benefit of creditors). The Debtors have thus appropriately provided for the prevention of overcompensation to the holders of Unreconciled Claims, and will distribute any value attained as a result of the True-Up Provisions to those harmed by the overcompensation in the first instance, the other general unsecured creditors.

B.     A Reserve For Underestimated Claims Is Not Feasible

10. The Plan provides for reserves with respect to the direct grant of New Common Stock that will comprise 77.3% of the distribution on account of general unsecured claims. While the Distribution Reserve under section 9.8 of the Plan appropriately provides for reserves with respect to the direct grant of New Common Stock (among other things), reserving Discount Rights is impracticable. The Debtors are also prohibited from reserving different types of currency, such as New Common Stock, because such a reserve would provide holders of Unreconciled Claims with different treatment than other creditors in Class C by giving them a distribution comprised of a

6

different ratio of New Common Stock and Discount Rights.[3]  Again, the Debtors have taken their best measures to protect the rights of holders of Unreconciled Claims by seeking temporary allowance and estimation of those claims, and Objections to the contrary should be overruled.

          11.    Despite these efforts, the remaining assert that the Debtors should establish a reserve for claimants whose claims are ultimately allowed in an amount greater than the Participation Amount.  These Objections fail to comprehend the nature of the Discount Rights Offering.  The Discount Rights Offering will commence shortly after the confirmation of the Plan, meaning Discount Rights must be allocated to eligible participants in the near term.  Moreover, if holders of Discount Rights and Discount Oversubscription Rights do not fully subscribe for the New Common Stock available in the Discount Rights Offering, the Plan Investors will purchase any remaining shares of New Common Stock.  The exact and final allocation and exercise of the Discount Rights must therefore be determined well in advance of the date that many of the Unreconciled Claims will be resolved.  Unlike other types of Plan currency such as cash, stock, or warrants, the Discount Rights have a very short period of exercise.  Reserving Discount Rights that would not be released until after the close of the Discount Rights Offering would be meaningless and would take rights away from parties entitled to exercise them, such as other unsecured creditors (in the case of Discount Oversubscription Rights) and the Plan Investors (in the case of unsubscribed Discount Rights).

---

[3]     The Plan provides that general unsecured creditors will receive 77.3% of the Face Amount of their claim in a direct grant of New Common Stock, with the remainder paid through rights to participate in the Discount Rights Offering.  To the extent additional New Common Stock was reserved for holders of Unreconciled Claims and they received these shares in lieu of Discount Rights, they would receive a higher percentage of their distribution in directly granted New Common Stock than other creditors.

C.     The Debtors Are Not Estimating Liquidated Claims

12.    The objectors argue that the Debtors are attempting to improperly estimate liquidated claims in contravention of section 502(c) of the Bankruptcy Code.  To the contrary, the Debtors only invoked section 502(c) in the Motion for the purpose of addressing the numerous unliquidated claims implicated by the Motion.  The remaining liquidated Unreconciled Claims are only to be temporarily allowed, and solely for the purposes of participation in the Discount Rights Offering.  Simply put, the Debtors are not improperly estimating the liquidated claims, and objections to the contrary should be overruled.

D.     The Debtors Are Not Circumventing The Claims Procedures Order

13.    The objectors claim that the Motion is an attempt to circumvent the Court's Claim Objection Procedure Order (Docket No. 6089).  These Objections fail to grasp the nature of the relief sought in the Motion.  The Debtors are not seeking to effect nonconsensual temporary allowance amounts less than the asserted amount of the Unreconciled Claims or amounts previously estimated by the Court.  Thus, the Debtors do not propose to affect the underlying validity, amount, or classification of any of the Unreconciled Claims.  The Motion instead seeks estimation or temporary allowance of the Unreconciled Claims for a very limited purpose:  participation in the Discount Rights Offering.

14.    As set forth above, the Plan provides that holders of Unreconciled Claims may not participate in the Discount Rights Offering, absent the temporary allowance of those claims.  To effect the Plan's provisions with respect to the Discount Rights Offering, then, the Debtors were left with two choices:  either do nothing and let

8

the Discount Rights Offering come and go without the participation of the Unreconciled Claims holders, or attempt to temporarily allow these claims for the limited purpose of participation. The Debtors, in an effort to protect the rights of their creditors, chose the latter. The Debtors believe that the relief requested in the Motion represents the fairest and most expedient way to implement the Plan and protect recoveries for <u>all</u> of their creditors, and misguided objections regarding the applicability of the Claim Objection Procedure Order should therefore be overruled.

E.      <u>Secured Claims Cannot Participate In The Discount Rights Offering</u>

15.     Comerica objects that the Motion does not provide for the possibility that its claim could be reclassified to general unsecured status. If this reclassification were to occur after the Discount Rights Offering commences, claimants would be left with no opportunity to participate. There is really no issue that needs to be resolved by the Court. If the claimant continues to assert secured status, the Plan does not permit allocation of rights to the claim. The fact that the Debtors believe that the claim is ultimately unsecured is irrelevant so long as the claimant maintains its entitlement to secured status and the Court has not ordered the claim reclassified. If Comerica is concerned that (a) it has so far improperly asserted secured status and (b) it is likely that the claim will be reclassified, then Comerica should agree to unsecured status before it is too late to participate in the Discount Rights Offering. While the time is short for doing so now, Comerica has had more than two years since the commencement of these cases to decide on the proper classification of its claim. At least with respect to the Discount Rights Offering portion of its distribution, that decision can no longer be deferred.

F.     Conclusion

16.     Here, the Debtors have not attempted to foreclose Unreconciled Claims from receiving a portion of their distribution, but instead have taken every measure possible to ensure that all eligible creditors are permitted to participate in the Discount Rights Offering at a fair and reasonable amount.  As the commencement of the Discount Rights Offering nears, only a fraction of Unreconciled Claim holders dispute the Debtors' assessment of the proper Participation Amount.  This fact is a clear testament to the fairness of the process and the Debtors' extensive efforts to resolve claims throughout these cases.

WHEREFORE, the Debtors respectfully request that this Court enter (a) an order granting the Motion and (b) granting such other further relief as is just.

Dated: New York, New York
       January 16, 2008

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

     - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

10