**Appendix A**

**CONFIRMATION REQUIREMENTS OF THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION
AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS IN POSSESSION**

**THE PLAN COMPLIES WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE**

This chart summarizes the requirements for confirmation of the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (as it may be amended or modified, the "Plan") under section 1129 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code").  This chart is provided in support of the Plan and the Debtors' Memorandum of Law (A) In Support Of Confirmation Of The First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) In Response To Objections Thereto (the "Memorandum") filed with the Bankruptcy Court on January 16, 2008.

|  | |
|---|---|---|
| **Section 1129(a)(1)**–A plan must comply with the provisions of title 11.  The substantive provisions that are most relevant in the context of section 1129(a)(1) are sections 1122 (classification requirements) and 1123 (mandatory plan contents).  The Plan complies with each of these provisions of title 11. | | |
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested  Docket Nos. 11471, 11791, 11792, 11804, 11847, 11852, 11853, 11855, 11867, 11908, 11951 | **Section 1122** – A plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  A plan proponent has considerable discretion in classifying claims and interests so long as it can articulate differences among the legal nature or priority of the claims and interests. | The Plan's classification scheme meets these requirements.  Creditors have been classified based upon the different attributes of their claims.  In addition to Administrative Claims and Priority Tax Claims, which are not required to be classified, the Plan designates 37 classes of claims reflecting the differences in the legal nature or priority of those claims and five classes of interests.  As required by section 1122 of the Bankruptcy Code, the claims and interests within each class are substantially similar.  The rationale for the Plan's classification scheme is explained in the Declaration of John D. Sheehan, the Debtors' chief restructuring officer.  See Sheehan Declaration ¶¶ 69-79, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1; TOPrS Indenture, Joint Exhibit No. 155. |
| **Section 1123(a)**–Identifies the mandatory requirements for the contents of a plan of reorganization.  The Plan fully complies with each of these requirements. | | |
| Uncontested | **Section 1123(a)(1)** – A plan must designate classes of claims and interests. | Article III of the Plan designates 37 classes of claims and five classes of interests.  See Sheehan Declaration ¶ 69, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |
| Uncontested | **Section 1123(a)(2)** – A plan must designate classes of claims that are unimpaired. | Article IV of the Plan designates Classes 1A through 12A, 1B through 12B, and 1J through 12J as unimpaired.  See Sheehan Declaration ¶¶ 70-72, 78, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |
| Uncontested | **Section 1123(a)(3)** – A plan must specify the treatment of any class of claims or interests that is impaired. | Article V of the Plan designates treatment of the following impaired classes of claims:  Classes 1C through 12C, 1D through 12D, 1E, 1F through 12F, 1-G1, 1-G2, 1H, 8H, and 1I.  See Sheehan Declaration ¶¶ 72-77, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |

| Contested Docket Nos. 11471, 11791, 11792, 11804, 11849, 11852, 11853, 11855, 11867, 11883, 11885, 11935, 11937, 11940, 11944, 11951 | **Section 1123(a)(4)** – A plan must provide for the same treatment of each claim or interest within each class. | Article V of the Plan describes the treatment of each class of claims and interests. Claims and interests within each class are treated the same. Certain senior noteholders object that the Debtors do not comply with section 1123(a)(4) in the treatment of Class 1C claims. However, the distribution to holders of TOPrS claims in Class 1C is subject to the satisfaction of the requirements of the subordination provision of the Subordinated Notes Indenture. After giving effect to the subordination provision, the creditors holding claims senior to the TOPrS in Class 1C will receive a par plus accrued recovery and the holders of the TOPrS will receive the residual distribution to Class 1C, which amounts to a recovery of 90% of the principal amount of the TOPrS plus prepetition interest. See Sheehan Declaration ¶¶ 72-79, Joint Exhibit No. 63; TOPrS Indenture, Joint Exhibit No. 155. |
|---|---|---|

| | | |
|---|---|---|
| Contested <u>Management Comp.</u> Docket Nos. 11475, 11580, 11582, 11822, 11938, 12016, 12026<br><br><u>Substantive Consolidation</u> Docket Nos. 11471, 11791, 11792, 11804, 11849, 11852, 11853, 11855, 11867, 11951<br><br><u>MDL Settlement</u> Docket No. 11951 | **Section 1123(a)(5)** – A plan must provide adequate means for the plan's implementation. | Article VII of the Plan contains provisions that provide adequate means for the Plan's implementation, including provisions that relate to, among other things, (a) continued corporate existence, (b) substantive consolidation, (c) certain restructuring transactions, (d) the Reorganized Delphi certificate of incorporation and bylaws, (e) the initial selection of directors and officers, (f) employment, retirement, indemnification, and other agreements and incentive compensation programs, (g) the procedures for asserting SERP claims, (h) the cancellation of existing securities and agreements, (i) plan investor contributions and post-effective date financing, (j) the rights offering, (k) the issuance of new stock and warrants, (l) the Multi-District Litigation and GM settlements, (m) the collective bargaining agreements, (n) the pension plan, (o) preservation of causes of action, (p) reservations of rights, (q) the Debtors' exclusivity period, (r) corporate action, (s) effectuating documents and further transactions, (t) consummation of divestiture transactions, (u) exemption from certain transfer taxes and recording fees, and (v) trade and other unsecured Claims. <u>See</u> Sheehan Declaration ¶ 80, Joint Exhibit No. 63.<br><br>Matters relating to the implementation of Plan, such as substantive consolidation, restructuring transactions, pension and other post-employment benefit obligations, the Investment Agreement, and the rights offering, are discussed in, and supported by, the Sheehan Declaration. <u>See</u> Sheehan Declaration ¶¶ 34-44, 82-99, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1; Plan Exhibits, Joint Exhibit No. 2. Substantive consolidation is also discussed in, and supported by, the declaration of Randall S. Eisenberg of FTI Consulting, Inc., the Debtors' financial advisor. <u>See</u> Eisenberg Declaration ¶¶ 10-28 and Exhibit A thereto, Joint Exhibit No. 83.<br><br>Matters relating to the settlements embodied in the Plan and made effective by the Plan are discussed in, and supported by, the Sheehan Declaration, the Declaration of Robert S. Miller, the Debtors' chairman of the board, and the Declaration of Keith Stipp. <u>See</u> Sheehan Declaration ¶¶ 45-51, Joint Exhibit No. 63; Miller Declaration ¶¶ 24-38, Joint Exhibit No. 67; Stipp Declaration ¶¶ 16-36, Joint Exhibit No. 64; First Amended Plan, Joint Exhibit No. 1; Plan Exhibits, Joint Exhibit No. 2.<br><br>Matters relating to the management compensation plan are discussed in, and supported by, the Miller Declaration, the Declaration of Craig Naylor, the chairman of the Debtor's compensation committee of the board of directors, and the Declaration of Nick Bubnovich of Watson Wyatt Worldwide, the Debtors' compensation expert. <u>See</u> Miller Declaration ¶¶ 41-49, Joint Exhibit No. 67; Naylor Declaration ¶¶ 8-29, Joint Exhibit No. 66; First Amended Plan, Joint Exhibit No. 1; Plan Exhibits, Joint Exhibit No. 2; Bubnovich Declaration ¶¶ 15-40, Joint Exhibit No. 88; Watson Wyatt Reports, Joint Exhibit Nos. 89-94. |

| | | |
|---|---|---|
| | | Matters relating to the Trade and Other Unsecured Claims Threshold are discussed in, and supported by, the Declaration of Dean Unrue. See Unrue Declaration ¶¶ 1, 5, 14-15, 27-29, Joint Exhibit No. 65. |
| Uncontested | **Section 1123(a)(6)** – A plan must provide that the debtor's charter include a provision prohibiting the issuance of non-voting securities. | Article 7.4 of the Plan and reorganized Delphi's amended certificate of incorporation, which is Plan Exhibit 7.4(a), prohibit the issuance of non-voting equity securities. See Sheehan Declaration ¶ 100, Joint Exhibit No. 63; Plan Exhibits, Joint Exhibit No. 2. |
| Uncontested | **Section 1123(a)(7)** – A plan must contain provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner and selection of any officer, director, or trustee under the plan. | Article 7.5 of the Plan discloses or otherwise identifies the procedures for determining the identity and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers and directors of reorganized Delphi. See Sheehan Declaration ¶¶ 102-108, Joint Exhibit No. 63; Article 7.5 of Plan, Joint Exhibit No. 134. |
| **Section 1123(b)–Identifies various discretionary provisions that may be included in a plan of reorganization.** | | |
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1123(b)(1)** – A plan may impair or leave unimpaired any class of claims or interests. | Article IV of the Plan impairs certain Classes of claims and interests while leaving Classes 1A through 12A, 1B through 12B, and 1J through 12J unimpaired. See Sheehan Declaration ¶¶ 70-78, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |
| Contested  Docket Nos. 11792, 11804, 11849, 11852, 11855, 11867, 11871, 11872, 11876, 11883, 11888, 11894, 11944 | **Section 1123(b)(2)** – A plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected. | Article 8.1 of the Plan provides for the assumption and rejection of various contracts and unexpired leases. Evidence supporting the Debtors' business determinations respecting assumption and rejection; reorganized Delphi's ability to cure monetary defaults under assumed contracts and leases; and its ability to continue performing under such contracts and leases is provided in the Sheehan Declaration. See Sheehan Declaration ¶¶ 108-112, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1; Plan Exhibits, Joint Exhibit No. 2; Lender Presentation, Public-Side Version, January 9-10, 2008, Joint Exhibit No. 131. |

4

| | | |
|---|---|---|
| Contested<br><br>GM Settlement<br>Docket No. 11951 | **Section 1123(b)(3)** – A plan may provide for the settlement or adjustment of any claim or interest belonging to a debtor or provide for the retention and enforcement of any claim or interest. | Article 7.24 of the Plan provides for the retention of certain causes of action, and Exhibit 7.24 of the Plan lists such retained actions. See Sheehan Declaration ¶ 134, Joint Exhibit No. 63.<br><br>Article 7.19 provides for the Securities Settlement and ERISA Settlements to become effective on the later of the Effective Date or the date when the orders approving the settlement agreements for the Securities Settlement and the ERISA Settlement become final orders. For a discussion supporting the Securities and ERISA Settlements, see Miller Declaration ¶¶ 36-38, Joint Exhibit No. 67.<br><br>Article 7.20 states that the Plan is a request to authorize and approve the Delphi-GM Global Settlement Agreement and the Delphi-GM Master Restructuring Agreement. For a discussion describing the attributes of the Debtors' settlement with GM, see Sheehan Declaration ¶¶ 13, 50-51, 113-126, Joint Exhibit No. 63; Miller Declaration ¶¶ 24-35, Joint Exhibit No. 67; Stipp Declaration ¶¶ 16-36, Joint Exhibit No. 64.<br><br>Article 7.21 explains that the agreements reached with the six unions will be automatically assumed by the applicable reorganized Debtor. For a discussion of the benefits of the union settlement agreements, see Sheehan Declaration ¶¶ 12, 23-25, 45-49, 174-175, Joint Exhibit No. 63. |
| N/A | **Section 1123(b)(4)** – A plan may provide for the sale of all or substantially all of the property of the estate. | This section is not applicable to the Plan. |
| Contested<br>11935 | **Section 1123(b)(5)** – A plan may modify the rights of holders of claims, or leave unaffected the rights of holders of any class of claims. | The Plan modifies the rights of holders of claims in impaired Classes and leaves unaffected the rights of holders of other claims in unimpaired Classes. See Sheehan Declaration ¶¶ 69-79, Joint Exhibit No. 63. |

5

| | | |
|---|---|---|
| Contested<br><br>Third Party <u>Release</u><br>Docket Nos.<br>11791, 11792, 11804, 11847, 11849, 11852, 11853, 11855, 11867, 11872, 11881, 11883, 11885, 11939, 11973 11950, 11951<br><br>Disputed Claims Estimation and <u>Reserve</u><br>Docket Nos.<br>11791, 11792, 11804, 11849, 11852, 11853, 11855, 11867, 11881, 11944 | **Section 1123(b)(6)** – A plan may include any other appropriate provisions not inconsistent with the provisions of title 11. | The Plan includes numerous other provisions designed to ensure its implementation is consistent with the Bankruptcy Code, including: (a) procedures for objecting to and resolving disputed claims; (b) delivering distributions on account of allowed claims; (c) indemnification obligations; (d) releases of certain parties; (e) releases by holders of claims; and (f) exculpation of various entities and individuals with respect to actions related to or taken in furtherance of the Debtors' cases. <u>See</u> Sheehan Declaration ¶¶ 81-83, 123-132, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. Stipp Declaration ¶¶ 31-32, Joint Exhibit No. 67.<br><br>The Debtors will be issuing (a) new common stock to the holders of general unsecured claims, section 510(b) note claims, section 510(b) equity claims, and section 510(b) equity claims and (b) seven-year warrants and ten-year warrants to holders of existing common stock. These securities will be exempt from securities laws to the extent provided by section 1145 of the Bankruptcy Code. <u>See</u> First Amended Plan, Joint Exhibit No. 1. |
| Contested<br>11951 | **Section 510(a)** – A subordination agreement is enforceable in bankruptcy to the same extent that such agreement is enforceable under applicable non-bankruptcy law. | The Plan implements the subordination provisions of the TOPrS indenture by reallocating distributions that would otherwise go to holders of TOPrS to holders of senior debt. The Class 1C members holding senior debt have voted in favor of the Plan, thereby electing to waive their subordination rights. <u>See</u> First Amended Plan, Joint Exhibit No. 1; TOPrS Indenture, Joint Exhibit No. 155. |

| **Section 1129(a)(2)** | | |
|---|---|---|
| Contested/<br>Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested<br>Docket No.<br>11951 | **Section 1129(a)(2)** – The principal purpose of this section is to ensure compliance with the disclosure and solicitation requirements set forth in section 1125. Section 1125 prohibits the solicitation of acceptances or rejections of a plan from holders of claims or | The requirements of section 1129(a)(2) have been satisfied because the Debtors have adhered to the disclosure requirements of section 1125. By order dated December 10, 2007 (Docket No. 11389) the Bankruptcy Court specifically found that the Disclosure Statement contained adequate information within the meaning of section |

| | | |
|---|---|---|
| | interests unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved by the court as containing adequate information. | 1125. In addition, the Bankruptcy Court approved all materials used in connection with the solicitation, the timing and method of delivery of the solicitation materials, and the rules for tabulating votes to accept or reject the Plan. On or before December 15, 2007, in accordance with the solicitation procedures order, the Debtors caused the solicitation materials to be transmitted to claim and interest holders and other parties in interest, and caused the notice of the confirmation hearing to be published in several national and regional newspapers. See Kurtzman Declaration, Joint Exhibit 59; Sullivan Declaration, Joint Exhibit 60; Solicitation Book, Joint Exhibit No. 9; Gershbein Affidavit of Service, Joint Exhibit No. 13; Sullivan Affidavit of Service, Joint Exhibit No. 14; Affidavits of Publication, Joint Exhibit Nos. 17-57. |

| Section 1129(a)(3) | | |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested Docket Nos. 11475, 11580, 11822 | Section 1129(a)(3) – The plan must be proposed in good faith and not by any means forbidden by law. A plan has been proposed in good faith if it has been proposed based upon a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. A plan proponent must simply demonstrate that the plan is reasonably likely to succeed and that a reorganization is possible. | The Plan has been proposed by the Debtors in good faith and in the belief that a successful reorganization can be accomplished, thereby maximizing the value of recovery to holders of claims consistent with the objectives of the Bankruptcy Code. The Debtors have actively involved the statutory committees, GM, and the plan investors, among others, in the Plan formulation process, and the Plan is the end product of arms' length negotiations among the Debtors, the statutory committees, GM, and the plan investors. The Debtors' good faith in proposing the Plan is further evidenced by the support of the statutory committees and the overwhelming acceptance of the Plan by holders of claims in all Classes except one. The Declarations of Sheehan and Miller discuss the good faith nature of the negotiations surrounding the development of the Plan and the ultimate plan proposal. See Sheehan Declaration *passim*, Joint Exhibit No. 63; Miller Declaration *passim*, Joint Exhibit No. 67; Presentations to Statutory Committees, Joint Exhibit Nos. 135-154. |

| Section 1129(a)(4) | | |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | Section 1129(a)(4) – This section requires that any payment made by a plan proponent, debtor, or person issuing securities or acquiring property under a plan in connection with the plan or bankruptcy case must have been disclosed and approved by the court, or be subject to the approval of the court, as reasonable. | All payments made or to be made by the Debtors for services or for costs or expenses incurred in connection with the Debtors' chapter 11 cases, including professional claims, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable. See Sheehan Declaration ¶ 135, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |

7

| Section 1129(a)(5) |||
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(a)(5)** – This section requires that a plan may be confirmed only if the proponent discloses the identity of those individuals who will serve as director, officer, or voting trustee of the reorganized debtor, the identity of any insider to be employed or retained by the reorganized debtor, and the compensation to be paid to such insider. The appointment or continuation in office of such persons must be consistent with the interests of creditors, equity security holders and public policy. | Article 7.5(b) addresses the process for selecting the board of directors for reorganized Delphi. Article 7.6 provides that the senior officers of the Debtors in officer on the Effective Date will serve in their current capacities after the Effective Date (except the Executive Chairman). Article 7.7 provides that the directors and officers of the Affiliate Debtors will continue to serve in their current capacities after the Effective Date, but that Reorganized Delphi may identify new officers and directors of the Affiliate Debtors at any time thereafter. The manner of selection of these directors and senior management is consistent with the interests of the creditors and equity holders and with public policy. See Sheehan Declaration ¶¶ 102-107, Joint Exhibit No. 63; Article 7.5 of Plan, Joint Exhibit No. 134. |

| Section 1129(a)(6) |||
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| N/A | **Section 1129(a)(6)** – This section requires that, after confirmation of a plan, any governmental regulatory commission with jurisdiction over the rates of the debtor has approved any rate change provided for in the plan, or that such rate change is expressly conditioned on such approval. Section 1129(a)(6) is applicable only to debtors subject to governmental regulatory authority. | This section is not applicable because the Plan is not premised on any rate changes or the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after confirmation of the Plan. See Sheehan Declaration ¶ 136, Joint Exhibit No. 63. |

8

| Section 1129(a)(7) |||
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested  Docket Nos. 11822, 11906, 11908 | **Section 1129(a)(7)** – This section requires that the plan must be in the best interests of creditors. The best interests of creditors test requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest either has accepted the plan or will receive or retain property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were hypothetically liquidated under chapter 7 of the Bankruptcy Code. | The Plan satisfies the best interests of creditors test. The liquidation analysis attached as Appendix E to the Disclosure Statement demonstrates that a hypothetical chapter 7 liquidation of the Debtors' estates would result in a substantial diminution in the value to be realized by holders of claims as compared to the proposed distributions under the Plan. The liquidation analysis demonstrates that the proceeds in a chapter 7 liquidation of the Debtors would result in no recovery to holders of General Unsecured Claims on account of their claims. Under the Plan, holders of General Unsecured Claims receive a distribution amounting to a par plus accrued recovery at plan equity value. The Plan and the reorganization valuation analysis attached as Appendix D to the Disclosure Statement demonstrate that the Plan affords creditors greater recoveries than in a hypothetical liquidation. A discussion of the best interests test is found in the Eisenberg Declaration. See Eisenberg Declaration ¶¶ 29-40 and Exhibit B thereto, Joint Exhibit No. 83. A discussion of the valuation of Reorganized Delphi is found in the Resnick Declaration. See Resnick Declaration ¶¶ 11-39 and Exhibits A-E thereto, Joint Exhibit 85, 87. |

| Section 1129(a)(8) |||
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(a)(8)** – This section provides that the plan must be accepted by the requisite classes of claims and interests. Section 1129(a)(8) is the only confirmation requirement that is not mandatory. If section 1129(a)(8) is not satisfied with respect to certain classes of claims or interests, a plan nevertheless may be confirmed under the "cramdown" provisions of section 1129(b). | Classes 1A through 12A, 1B through 12B, and 1J through 12J are unimpaired under the Plan and therefore are conclusively presumed to have accepted the Plan. See Article 6.2 of the Plan. Holders of Claims in Class 6C have voted to reject the Plan and holders of Other Interests in Class 1I are not entitled to receive any distributions under the Plan and therefore are conclusively presumed to have rejected the Plan. See Article 6.4 of the Plan. However, as discussed below, the Plan satisfies the cramdown requirements of section 1129(b). See Kurtzman Declaration, Joint Exhibit No. 59. |

9

| Section 1129(a)(9) |||
|---|---|---|
| Section 1129(a)(9) requires that the plan provide for mandatory treatment of certain priority claims under a plan of reorganization. The Plan meets these requirements. |||
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested  Docket Nos. 11791, 11792, 11804, 11849, 11852, 11853, 11855, 11867, 11881, 11883, | **Section 1129(a)(9)(A)** – This section provides that administrative claims under section 507(a)(1) must receive cash equal to the allowed amount of the claims on the effective date of the plan. | As more fully described in Article 2.1 of the Plan, holders of allowed administrative claims shall receive cash equal to the unpaid portion of the claims or such other treatment as the parties have agreed, provided, however, that allowed administrative claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Debtors' Chapter 11 Cases will be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.  See Sheehan Declaration ¶ 137, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |
| Uncontested | **Section 1129(a)(9)(B)** – This section requires that holders of claims of a kind specified in sections 507(a)(3) through (7) must receive, if the class in which such claimants are members has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of these claims or, if the class in which such claimants are members has not accepted the plan, cash equal to the allowed amount of these claims on the effective date of the plan. | The creditors that might fall into the specified priority classes have been paid pursuant to orders entered by the Court or are classified as flow-through claims.  See Sheehan Declaration ¶ 71, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |
| Contested  Docket Nos. 11754, 11823 | **Section 1129(a)(9)(C)** – This section requires that the holders of claims of a kind specified in section 507(a)(8) must receive deferred cash payments over a period not to exceed six years from the date of assessment of these claims with a value equal to the allowed amount of these claims on the effective date of the plan. | Article 2.2 of the Plan provides that unless otherwise agreed to by the holder of the priority tax claim and the applicable Reorganized Debtor, holders of allowed priority tax claims will receive (i) equal cash payments during a period not to exceed six years after the assessment of the tax on which such claim is based, totaling the aggregate amount of such claim, plus postpetition interest, plus simple interest at the rate required by applicable law on any outstanding balance from the effective date of the Plan (or such lesser rate agreed to by a particular taxing authority), (ii) such other treatment agreed to by the taxing authority and the Debtors, provided that such treatment is more favorable to the Debtors than the treatment in clause (i) or (iii) payment in full in Cash plus postpetition interest.  See Sheehan Declaration ¶ 138, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |

10

| Section 1129(a)(10) | | |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(a)(10)** – This section requires that the plan must be accepted by at least one impaired class of claims, without including any acceptance of the plan by an insider. | The Debtors have satisfied the requirement of section 1129(a)(10). Classes 1C, 2C, 3C, 4C, 5C, 7C, 8C, 9C, 10C, 11C, 12C, 1D-12D, and E are impaired classes of claims that have voted to accept the Plan. See Kurtzman Declaration, Joint Exhibit No. 59; Sullivan Declaration, Joint Exhibit No. 60. |

| Section 1129(a)(11) | | |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested Docket Nos. 11951, 12012 | **Section 1129(a)(11)** – This section requires that a plan must be feasible. The feasibility test requires the court to determine whether the plan offers the debtor a reasonable assurance of success. Section 1129(a)(11) does not, however, require a guarantee of success. | The pro forma projections provided in Appendix C to the Disclosure Statement indicate that the Reorganized Debtors will be financially viable and that the Debtors' chapter 11 cases will not be followed by liquidation or the need for further financial assistance. See Sheehan Declaration ¶¶ 34-44, 96-99, and 139-170, Joint Exhibit 63; Business Plan and Exit Financing Updates, Joint Exhibit Nos. 96-99, 119-131; Miller Declaration ¶ 51, Joint Exhibit No. 67; Resnick Declaration ¶¶ 8, 22, Joint Exhibit No. 85; Unrue Declaration ¶¶ 1, 5, 14-15, 27-29, Joint Exhibit No. 65. |

| Section 1129(a)(12) | | |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(a)(12)** – This section requires a plan to provide that all fees payable under 28 U.S.C. § 1930 to the United States Trustee, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan. | Pursuant to Article 14.2 of the Plan, all fees payable pursuant to 28 U.S.C. § 1930 plus accrued interest under 31 U.S.C. § 3717 have been or will be paid on or before the effective date. See Sheehan Declaration ¶ 171, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |

|  | Section 1129(a)(13) |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(a)(13)** – This section requires a plan of reorganization to provide for the continuation of payment of all retiree benefits, as that term is defined in section 1114, at the level established by agreement or by court order pursuant to section 1114 at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits. | Article 7.21 of the Plan addresses various collective bargaining agreements with six different unions. The orders approving the agreements with each of the unions will be automatically assumed by the applicable Reorganized Debtor. See Sheehan Declaration ¶¶ 172-175, Joint Exhibit No. 63; Solicitation Book, Joint Exhibit No. 9. |

|  | Section 1129(a)(16) |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(a)(16)** – This section requires that all transfers of property under a plan be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust. | This provision is not applicable to the Debtors because each Debtor is a moneyed corporation or limited liability company. |

|  | Section 1129(b) |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Contested Docket No. 11951 | **Section 1129(b)** – This section provides that a bankruptcy court is required to confirm a plan over the dissent of one or more classes of impaired claims or interests if the plan: (i) meets all requirements for confirmation set forth in section 1129(a) except the requirement of section 1129(a)(8); (ii) does not discriminate unfairly; and (iii) is otherwise fair and equitable with respect to each impaired class of claims or interests that has not accepted the plan. | The Plan satisfies the requirement of section 1129(b) with respect to Class 1I, which is deemed to have rejected the Plan, and Class 6C, which voted against the Plan. The Plan meets all of the requirements of section 1129(a), except the requirement of section 1129(a)(8), with respect to each of Class 1I and Class 6C. As explained below, the Plan does not discriminate unfairly with respect to Class 1I and Class 6C, and the Plan is otherwise fair and equitable with respect to the non-accepting impaired Classes. |
| Contested Docket No. 11951 | **Section 1129(b)(1)** – "Unfair Discrimination Test" This section requires that the Plan not discriminate unfairly as to any dissenting class. | The Plan does note discriminate unfairly as to any dissenting class. See Sheehan Declaration ¶ 176, Joint Exhibit No. 63. |

12

| | | |
|---|---|---|
| Uncontested | **Section 1129(b)(1) – "No Premium Payments"** The fair and equitable component of section 1129(b)(1) also requires that no class may be paid more than in full. | No Class is being paid more than in full. See Sheehan Declaration ¶ 176, Joint Exhibit No. 63. |
| Contested Docket No. 11951 | **Section 1129(b)(2)(B) – "Absolute Priority Test"** This section requires that for a class of unsecured claims, for the treatment of such class to be considered fair and equitable, the plan provide that each holder of a claim of such class receive or retain on account of such claim, property of a value, as of the effective date, equal to the allowed amount of such claim, or in the alternative, any interest junior to the claims of such class shall not receive or retain any property under the plan on account of such junior claim or interest. | Classes 1E (Section 510(b) Note Claims), 1G-1 (Existing Common Stock), 1G-2 (Section 510(b) Equity Claims), and 1H and 8H (Section 510(b) ERISA Claims) (collectively, the" Junior Classes") are subordinate and junior to other classes of unsecured claims, and they are receiving distributions under the Plan. Class 6C has voted to reject plan; however, the Debtors may "cram down" the creditors in class 6C because the Class 6C Claims will receive value, as of the effective date, equal to the allowed amount of such claims because under the terms of the Plan they are receiving par value plus accrued interest on their claims. Because the claims will be paid with New Common Stock and the Discount Rights Offering for the value of their claim plus postpetition interest, holders of Class 6C Claims are receiving value, as of the effective date, equal to the allowed amount of their claims. See Sheehan Declaration ¶¶ 72, 74, 76, 176, Joint Exhibit No. 63; Resnick Declaration ¶¶ 11-39 and Exhibits A-E thereto, Joint Exhibit No. 85, 87; First Amended Plan, Joint Exhibit No. 1. |
| Contested Docket No. 11908, 11951 | **Section 1129(b)(2)(C)** – For a plan to be fair and equitable with respect to a dissenting class of impaired equity interests, the plan must provide either: (1) that each interest holder in the class will receive or retain property of a value equal to the greatest of any fixed liquidation preference, any fixed redemption price, or the value of the holder's interest; or (2) that no holder of an interest that is junior to the interests of that class will receive or retain any property under the plan on account of such junior interest. | Class 1I will not receive any distribution and is therefore deemed to reject the Plan. No class junior to Class 1I will receive a distribution under the Plan. See Sheehan Declaration ¶¶ 77, 176, Joint Exhibit No. 63; First Amended Plan, Joint Exhibit No. 1. |

| **Section 1129(c)** | | |
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(c)** – This section provides that the bankruptcy court can only confirm one plan. | The Plan is the only plan proposed. See Solicitation Book, Joint Exhibit No. 9; First Amended Plan, Joint Exhibit No. 1. |

13

| Section 1129(d) |||
|---|---|---|
| Contested/ Uncontested | Statutory Section | Plan Compliance/Evidentiary Support |
| Uncontested | **Section 1129(d)** – This section provides that the bankruptcy court cannot confirm a plan if the principal purpose of the plan is the avoidance of taxes or application of section 5 of the Securities Act. | The principal purpose of the Plan is not tax avoidance or avoidance of section 5 of the Securities Act. <u>See</u> Sheehan Declaration ¶177, Joint Exhibit No. 63. |

| DOCKET # | OBJECTING PARTY |
|---|---|
| 11471 | Caspian Capital Advisors et al. |
| 11475 | International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") |
| 11580 | UAW (Amended) |
| 11582 | International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America |
| 11753 | Sharyl Y. Carter |
| 11754 | Texas Taxing Authorities |
| 11791 | KenSa LLC |
| 11792 | Comerica Leasing Corporation |
| 11804 | Freudenberg-NOK, General Partnership, Freudenberg-NOK, Inc |
| 11806 | Sharyl Carter |
| 11811 | Darla and Allan Schmidt |
| 11812 | Frank X. Budelewski |
| 11822 | Randy Halazon |
| 11823 | Pima County |
| 11847 | Hildago County I.S.D., Hildago County, Burkburnett I.S.D., Wichita County |
| 11849 | Lear Corporation |
| 11852 | Comerica Leasing Corporation |
| 11853 | KenSa LLC |
| 11855 | Freudenberg-NOK, General Partnership, Freudenberg-NOK, Inc |
| 11867 | Cooper-Standard Automotive Inc. |
| 11869 | Equistar Chemicals, LP |
| 11871 | American Axle & Manufacturing, Inc |
| 11872 | Bank of America Leasing & Capital, LLC. |
| 11876 | Automodular Assemblies Inc. |
| 11881 | Robert Bosch Corporation |
| 11883 | Audio MPEG, Inc., S.I.SV.EL., S.p.A. |
| 11885 | Michigan Department of Environmental Quality |
| 11888 | Fujikura America, Inc. |
| 11894 | AT&T Entities |
| 11906 | Board of County Commissioners of Johnson County, Kansas |
| 11908 | Riverside Claims, LLC |
| 11927 | The Timken Company |

| **DOCKET #** | **OBJECTING PARTY** |
|---|---|
| 11935 | Law Debenture Trust Company of New York |
| 11937 | Liquidity Solutions, Inc. d/b/a Revenue Management |
| 11938 | UAW |
| 11939 | Lead Plaintiff and the Prospective Class |
| 11940 | Retiree Claimants |
| 11944 | Equity Corporate Housing I |
| 11949 | Pension Benefit Guaranty Corporation |
| 11950 | United States Of America |
| 11951 | Davidson Kempner Capital Management LLC, et al |
| 11957 | Fiduciary Counselors, Inc. |
| **11973** | **ERISA Lead Plaintiffs** |
| 12012 | Wilmington Trust Company |
| **12013** | **Larry Vanderpool** |
| 12016 | Randy Halazon (see also Docket No. 11822) |
| **12017** | **Robert W. Ward** |
| 12026 | International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America |
| 12075 | Board of County Commissioners of Johnson County, Kansas |
| **12079** | **Orval W. Wright** |
| **12080** | **Keith Miller** |
| **12081** | **Monroe County Water Authority** |
| **12083** | **Naomi M. Frye** |

16