TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Lara Sheikh (LS-0879)

Hearing Date: January 25, 2008
At:  10:00 a.m.

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :
In re:                                                         :    Chapter 11
                                                               :    Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*,                                  :
                                                               :    Jointly Administered
                                             Debtors.          :
                                                               :
---------------------------------------------------------------x

**DEBTORS' OBJECTION TO AMENDED MOTION OF VERIZON
SERVICES CORP. FOR PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIM PURSUANT TO MOBILEARIA SALE ORDER**

    Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the Amended Motion ("Amended Motion") of Verizon Services Corp. ("Verizon") for Payment of Administrative Expense Claim Pursuant to MobileAria Sale Order (the "Motion") and respectfully represent:

**PRELIMINARY STATEMENT**

1. In its Amended Motion, Verizon asserts a new, previously unasserted claim for Overage Charges.[1] This new claim is: (a) late and time barred by the claims bar date (the "Sale Order Bar Date") that was contained in the Court's July 26, 2006 Order Under 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 Authorizing (I) Rejection of Certain Executory Contracts of MobileAria, Inc. And (II) Assumption And Assignment of Certain Executory Contracts of MobileAria, Inc. (the "MobileAria Sale Order"), and (b) beyond and outside of the scope of expressly defined amendment that was permitted by the Court when it considered the Original Motion on November 29, 2007 (the "November 29 Hearing").

2. Moreover, despite being directed to do so by this Court, Verizon has failed to present any evidence in support of the Misactivation and Overactivation Charges which controverts the Original Absmeier Declaration and the explanations that were submitted by Delphi in its Objection to the Original Motion.

3. Based upon the foregoing, the Amended Motion should be denied.

**PROCEDURAL BACKGROUND**[2]

4. On June 6, 2006, the Debtors moved (the "MobileAria Sale Motion") for an Order to, among other things, assume and assign certain executory contracts and to sell substantially all of the assets of MobileAria.

---

[1] Capitalized terms which are not defined herein shall have the meanings set forth in the Debtors' Objection (the "Objection") to Verizon's original Motion (the "Original Motion") For Payment of Administrative Expense Claim Pursuant to MobileAria Sale Order. (Docket No. 10882) and in the Amended Motion. In addition, the Debtors incorporate herein by reference all of the factual allegations contained in their Objection to the Original Motion and in the declaration of John Absmeier that was submitted therewith.

[2] A more expansive description of the procedural history of the Debtors' cases and the contractual relationship between MobileAria and Verizon is contained in the Debtors' Objection to the Original Motion, and that history is respectfully incorporated herein by reference.

5. Verizon objected to the proposed MobileAria Sale Motion and asserted various claims for damages. The parties were unable to resolve all of Verizon's objections prior to the hearing to reconsider the MobileAria Sale Motion. Consequently, the Debtors and Verizon negotiated paragraph 42 of the MobileAria Sale Order which permitted Verizon to seek payment of Schedule 3 Disputes, as defined in the MobileAria Sale Order, up to an amount of $700,000.[3] A copy of the MobileAria Sale Order is annexed hereto as Exhibit "1." However, Verizon's ability to seek payment of Schedule 3 Disputes was subject to a defined, agreed upon deadline (the "Sale Order Bar Date"):

> "In the event that Verizon seeks to recover for charges arising with respect to a Schedule 3 Dispute, Verizon shall submit such charges to MobileAria within 60 days of this Order (the "Asserted Schedule 3 Disputes") or be deemed to waive such Schedule 3 Dispute.

MobileAria Sale Order para. 42(a).

6. The Court entered the MobileAria Sale Order on July 21, 2006.

7. After entry of the MobileAria Sale Order, Verizon asserted various Schedule 3 Disputes to the Debtor. The $407,228.36 Overage Charges that are described in the Amended Motion at paragraphs 18-21 and in the Declaration of Margaret L. Sheppard in support thereof (the "Sheppard Declaration") at paragraphs 22-25 (the "New Overage Charges Claim") were never submitted or asserted prior to the Sale Order Bar Date. See Declaration of John Absmeier, paras. 14-20, annexed hereto as Exhibit "2."

8. After more than a year of diligence and attempts by the Debtors to settle claims and charges that Verizon submitted prior to the Sale Order Bar Date, on

---

[3] Verizon asserts that the amounts sought in the Original and Amended Motions are Schedule 3 Disputes.

3

September 25, 2007, Verizon filed its Original Motion for allowance of an administrative expense claim consisting of, predominantly, "Overage Charges" of $678,579.09.[4]

9.   In its Original Motion Verizon explained that it "incurred a total of $678,573.09 in additional charges as a result of MobileAria causing more data to be transmitted over the GPS system that was permitted under the applicable data usage plan (collectively, the "Overage Charges"), and that those Overage Charges were caused by MobileAria having initially selected the wrong usage plan for GPS Units. Original Motion, para. 12.  In its Original Motion, in its subsequent Reply (Docket No. 11025), and at the November 29 Hearing, Verizon repeatedly argued that MobileAria was liable because MobileAria initially failed to select the appropriate data usage plan for the GPS Units:

- "At all relevant times, MobileAria itself was responsible for contacting the wireless carrier to set up the data plan for each GPS unit, and was responsible for and controlled the amount of data to and from each GPS unit."  (Original Motion, para. 15);

- "As plainly set forth in the Motion, Verizon clearly communicated to MobileAria at the outset of the project, that the majority of the GPS Units would be activated under a 2 meg plan, and thus required to transmit no more than 2 megabytes of data per month in the course of their operation." (Verizon Reply, para. 5);  and

- "Here, a fundamental specification that was communicated to MobileAria in writing in the order submitted and also in -- at the outset of this contract and before the contract was entered into was that these units needed to stay within two megs of usage.  That was what had been provided to Verizon by its prior supplier . . . It was a fundamental cost component that was in fact provided." (November 29 Hearing Transcript, page 15, annexed hereto as Exhibit "3.")

10.   MobileAria spent considerable time, resources and effort since entry of the MobileAria Sale Order, and in opposition to the Original Motion, and it

---

[4]   Verizon sought immediate payment of $497,532.61 on account of the Overage Charges, which represented a net sum after credit for amounts previously paid by MobileAria to Verizon on account of other claims that had been timely submitted by Verizon.

4

concluded and asserted that, among other things, Verizon had never provided any evidence to support its allegations that MobileAria was somehow contractually or otherwise responsible to arrange the wireless service plans with Verizon Wireless Corporation, and that Verizon had failed to identify any contractual or legal basis that could give rise to Verizon's Overage Charges.

11. Verizon pressed its argument and Overage Charges at the November 29 Hearing. There, the Court observed that Verizon's Original Motion failed because: (a) Verizon did not specify the contractual basis for the Overage Charges; and (b) Verizon did not support its allegations with an affidavit or declaration.

12. The Court concluded and directed:

> "I'm going to give you one more chance on this because I don't like motions for reargument and rehearing. This motion is woefully short of any factual support. But for this argument about specifications, the major claim would be subject to dismissal on the papers because there's nothing in the contract that gives you a right to this except for this definition of specifications. . . . you can make a real motion with the real documents attached as you would to a proof of claim. And a real affidavit from a real client that lays out the elements of the other claim. And so we're not spent here just sort of speculating and the debtor doesn't have to go through a discovery process before you've established the elemental basis for asserting a claim in bankruptcy court. . ."
>
> So again, I really think the focus is on the order or the orders and what they say . . . But the order better be pretty clear as far as what it says if you're going to still pursue this contention that . . . MobileAria obligated itself to cap the megahertz . . . "

November 29 Transcript, pages 20-24.

13. Verizon failed to follow the Court's direction. Instead, Verizon asserted an entirely new claim in its Amended Motion, but labeled it "Overage Charges."

5

14.     The amount and theory of the Overage Charges sought by Verizon has changed since the Original Motion. In the Original Motion, Verizon represented that the Overage Charges totaled $678,579.09. In the Amended Motion, Verizon represents that the Overage Charges total $549,929.69. No explanation for the nearly $130,000 variance is provided in the Amended Motion.

15.     Moreover, the alleged factual basis for the Overage Charges has completely changed. In the Original Motion, Verizon asserted that the Overage Charges resulted from MobileAria's failure to have selected the 'correct' two-megabyte usage plan ("2 Meg Plan") from Verizon Wireless. In the Amended Motion, Verizon asserts, for the first time, that $142,701.33 of the Overage Charges arise from MobileAria initially failing to follow SOAFs[5] and that $407,228.36 results from MobileAria's failure to upgrade GPS Units that were initially programmed correctly by MobileAria but which where then moved to a different geographic location.

16.     Verizon's Amended Motion should be denied. The Amended Motion: fails to comply with the Court's limited and specific authority for amendment; is outside of the scope of what this Court permitted at the November 29 Hearing; fails to provide the contractual bases for claims; and, as demonstrated below, the New Overage Charges Claim is time barred by the MobileAria Sale Order. Although the Amended Motion is accompanied by a Declaration which mimics the Amended Motion, it also fails to specify the contractual bases for Verizon's claims.[6]

---

[5] This amount seems to be a new Misactivation Charge that is different from the Misactivation Charge that was asserted in the Original Motion in the amount of $164,672.32.

[6] Other than quoting the best efforts acknowledgment contained in §18 of the GPS Agreement, the Sheppard Declaration does not contain a single reference to a particular provision of the GPS Agreement to support any of the claims contained in the Amended Motion.

6

17. Verizon's Amended Motion is a perpetuation of Verizon's fishing expedition that leaves the Court and the Debtors speculating what the true bases of Verizon's claims could be, and permitting it to go forward would require the Debtors to expend additional time and resources in discovery concerning claims which are not contractually or factually supported.

**VERIZON'S REQUEST FOR OVERAGE CHARGES IN THE
AMENDED MOTION IS A NEW CLAIM THAT IS TIME BARRED
AND VERIZON'S OTHER CLAIMS FAIL**

18. For the last 18 months, Verizon strenuously asserted to the Debtors and to this Court that the Overage Charges resulted from MobileAria's failure to initially secure the appropriate usage plan from Verizon Wireless. That argument was repeated numerous times and the Debtors were required to expend extensive time and resources to research and defend that claim.

19. The Court expressly limited Verizon's ability to support its original claim for Overage Charges with orders (as defined in the GPS Agreement) and a declaration by a Verizon representative. Notwithstanding, Verizon failed to comply with the Court's direction and instead has asserted an entirely new theory and a new set of factual allegations that do not relate back to the Overage Charges in the Original Motion, and which were never submitted to MobileAria prior to the Sale Order Bar Date.

**A.    The New Overage Charges**

20. Verizon now asserts that Overage Charges include 2 pieces. First, $142,701.33 which was "incurred for each misactivated unit because of the failure of MobileAria to activate the unit on the selected plan." Amended Motion at para. 17.

21. Second, Verizon asserts that it incurred at least $407,228.36 of Overage Charges "as a result of MobileAria failing to change the data usage plan of a

7

unit that was previously activated on a 2 Meg Plan. In each such instance, MobileAria initially had activated the GPS unit on a 2 Meg Plan, but the unit was subsequently transferred to an area in which Verizon required its GPS units to operate with enhanced functionality, and thus under the Unlimited Plan." Amended Motion at para. 18. These new factual allegations were never communicated to MobileAria prior to the Amended Motion. See Absmeier Declaration, paras. 17-20. Moreover, these new factual allegations are entirely outside of the scope of the evidence that this Court demanded at the November 29 Hearing.

22. "The Bar Date is critically important to the administration of a successful chapter 11 case for it is intended 'to be a mechanism for providing the debtor and creditors with finality.'" In re Enron Creditors Recovery Corp., 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007), quoting In re Manville Forest Products Corp., 89 B.R. 358, 374 (Bankr. S.D.N.Y. 1988).

23. A "claimant may amend a timely claim after the bar date to correct defects of form, provide more detailed allegations of fact relating to the timely claim, or plead a new theory of recovery *under the facts set forth in the timely claim.*" In re Asia Global Crossing, Ltd., 324 B.R. 503, 507 (Bankr. S.D.N.Y. 2005) (emphasis added); Integrated Resources, Inc. v. AmeriTrust Co., N.A. (In re Integrated Resources, Inc.), 157 B.R. 66, 70 (S.D.N.Y. 1993); Enron Corp. 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003); In Re McLean Industries, Inc., 121 B.R. 704, 708, (Bankr. S.D.N.Y. 1990); In re W. T. Grant Co., 53 B.R. 417, 420 (Bankr. S.D.N.Y. 1985); see In re G.L. Miller & Co., 45 F.2d 115, 116 (2d Cir. 1930).

24. A claimant "may not, however, through the guise of an amendment, circumvent the bar date by asserting a new claim." Id., at 507; Enron

8

Corp. 298 B.R. at 520; In re Drexel Burnham Lambert Group, Inc., 151 B.R. 684, 694 (Bankr. S.D.N.Y. 1993).

25. Consequently, "the bankruptcy court must examine the proposed post-bar date amendment to ensure that it amends a timely claim and does not assert a new claim." In re Asia Global Crossing, 324 B.R. at 507.

26. "Bar dates would be rendered meaningless if creditors were granted leave to amend to assert new novel claims based on broad language in a timely-filed Proof of Claim . . . Instead 'court[s] must subject post-bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment.'" In re Calpine Corporation, 2007 WL4326738 (Bankr. S.D.N.Y. 2007), quoting In re Enron Corp. 419 F.3d at 133 (quoting In re Integrated Resources, Inc. 157 B.R. at 70).

27. A Bankruptcy Court may a permit post-bar date claim amendment to a timely filed proof of claim, but it must first examine whether there was a timely assertion of the facts supporting the claim. In re Calpine, at 4. A claim relates back to a timely filed claim if it "(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery of the facts set forth in the original claim." In re Calpine, at 3.

28. Only if the "relation back" threshold is satisfied, may Courts examine whether, based upon the facts of a case, it would be equitable to allow the amendment. In re Calpine, at 5. Here, the Amended Motion, as it pertains to the New Overage Charges Claim, fails the relation back test.

29. The New Overage Charges Claim was never submitted to the Debtors prior to the Sale Order Bar Date. In fact, Verizon readily acknowledges that it never timely submitted the New Overage Charges claim to the Debtors and that it was

9

first researched and developed after November 29, 2007 – after the Court considered the Original Motion and nearly 15 months after the Sale Order Bar Date. Sheppard Declaration, at para. 25. Consequently, there was never a timely claim pertaining to the New Overage Charges Claim which could be amended. On this basis alone, Verizon's New Overage Charges Claim may not be allowed.

30. Moreover, as to the New Overage Charges Claim, the Amended Motion does not correct a defect of form in the Original Motion and it doesn't arise out of the same conduct or occurrence set forth in the Original Motion. The New Overage Charges Claim is a new theory based upon completely new allegations of facts. Absmeier Declaration at paras. 17-20.

31. The Court directed Verizon to correct the Original Motion to support the original Overage Charges by producing orders and real evidence to support Verizon's contention that MobileAria was somehow contractually responsible for selecting the type of usage plan for the GPS Units. Instead, Verizon has abandoned that theory and has asserted that MobileAria failed to follow SOAF instructions for transferred GPS units, presumably after Verizon selected the type of plan for the GPS Units. The Amended Motion does not describe the Overage Charges portion of the Original Motion with any greater particularity; it describes a completely new claim which is not, and cannot be, supported by a citation to any section of the GPS Agreement.

32. Finally, Verizon cannot argue that the Amended Motion pleads a new theory of recovery for the New Overage Charges Claim on any facts set forth in the Original Motion because Verizon had not even identified alleged facts in support of the New Overage Charges Claim until after the November 29 Hearing. The Amended

10

Motion sets forth new facts that were not contained in the Original Motion and which were never previously presented to MobileAria. Absmeier Declaration at paras. 17-20.

33. Verizon's half-hearted assertion that its new theory of recovery arises from the GPS Agreement (Sheppard Declaration, at para. 25) is not sufficient to establish relation back because the Original Motion did not provide the Debtors or the Court with reasonable notice of this new claim. In re Calpine, at 5 ("The fact that the New Claims arise out of the same Indentures is not sufficient to establish relation back because the Original Claims did not provide the Debtors with reasonable notice of their proposed amendment.") The Original Motion did not mention the relocation of GPS Units or Verizon's request to upgrade and/or change the usage plan on those GPS Units. Absmeier Declaration, paras. 17-20. This new theory is both novel and substantively dissimilar to the specific claims made in the Original Motion.

34. The foregoing amply demonstrates that the New Overage Charges Claim in the Amended Motion does not relate back, and it fails the threshold test that Courts must consider before proceeding to determine whether amended claims may be permitted. Based upon the foregoing alone, the Court should deny the New Overage Charges Claim which has been untimely asserted in the Amended Motion.

35. Even if, *arguendo*, Verizon somehow prevailed to establish that the New Overage Charges Claim relates back to the Original Motion, this new claim should not be permitted because to do so would be inequitable. In re Calpine, at 4. Courts consider equitable factors when determining whether to allow an amendment:

(i) Undue prejudice to the opposing parties;

(ii) Bad faith or dilatory behavior on the part of the claimant;

(ii) Whether other creditors would receive a windfall were the amendment not allowed;

11

  (iv)  Whether other claimants might be harmed or prejudice; and

  (v)  The justification for the inability to file the amended claim at the time the original claim was filed.

36. The "equitable factors" which are relevant herein demonstrate that it would be inequitable to permit Verizon's amended motion.[7]

37. The Debtors will suffer undue prejudice by allowing Verizon to proceed with the New Overage Charges Claim and discovery related thereto. A finding a prejudice "can be based on the size of the contested claims and the disruptive effect that allowance of the contested claims would have on the current administration of the estate." In re Calpine, at 7; In re Enron Creditors Recovery Corp., 370 B.R. at 101.

38. The claims asserted by Verizon are administrative expense claims and they are substantial in amount. Verizon admits that it has had information to support its claims for more than 15 months, and more than 15 months have elapsed since the Sale Order Bar Date. Sheppard Declaration, at para. 25.

39. More than 16,700 proofs of claim have been filed in these cases and more than 20 omnibus claim objections have been filed by the Debtors. Success of the Debtors' Reorganization rests, in part, upon the amount of allowed claims and working capital. Therefore, allowance of the New Overage Charges Claim could signal the ability for other claimants to amend their proofs of claim at this late date when the Debtors are seeking to effectuate a plan of reorganization. See, In re Calpine, at 6 (The disruptive effect that allowance of the contested claim would have on the administration of the estate could constitute prejudice); In re Enron Corp., 419 F.3d at 130 (Courts have also taken into account whether allowance of a late claim would

---

[7] Bankruptcy Rule 9006 of the Federal Bankruptcy Procedure governs the admission of late-filed new claims, as opposed to amendments. Verizon filed its new claim as an "Amended Motion." Consequently, Bankruptcy Rule 9006 and the excusable neglect standard contained therein is inapplicable to the Amended Motion. See, Calpine, supra.

12

jeopardize the success of a reorganization); In re O'Brien Envtl. Energy, Inc., 188 F.3d 116 (3d Cir. 1999). Allowing Verizon to proceed with the New Overage Charges Claim would have all of these prejudicial effects upon the Debtors.

40. Verizon has failed to offer any justifiable reason why it failed to assert this New Overage Charge Claim during the last 15 months or when it so strenuously argued its original Overage Charge theory at the November 29 Hearing.

41. Based upon the foregoing, the Debtors assert that the New Overage Charges Claim does not relate back to the Original Motion, and that even if some strained argument it could be said to do so, it would be highly prejudicial to allow Verizon to proceed with that claim.

42. Moreover, Verizon has failed to adhere to the Court's express and limited instructions that would have permitted Verizon to continue to assert the Misactivation and Overactivation Charges. No evidence or identification of contractual obligation has been submitted in support of those claims.

43. Consequently, the Amended Motion should be denied in its entirety.

### DEBTORS' PRELIMINARY SUBSTANTIVE OBJECTIONS TO VERIZON'S AMENDED MOTION

44. The Amended Motion fails for various procedural reasons. In addition, and preliminarily, the Debtors assert that the claims contained in the Amended Motion fail for various substantive reasons.

A. The Misactivation Charges

45. Verizon asserts that Overage Charges now includes $142,701.33 arising from MobileAria initially failing to follow SOAFs. In its Original Motion, Verizon coined this type of claim as "Misactivation Charges," and asserted that those

charges totaled $164,672.32 incurred "as a result of MobileAria failing to activate GPS Units on the correct data usage plan." Original Motion at para. 19. Verizon fails to explain the different amounts asserted by Verizon for this claim, and the Debtors should not have to again analyze or read through thousands of lines of data and speculate how and why this claim may be valid.

46. The Debtors responded to the Misactivation Charges in paragraphs 23 and 24 of their Objection to Verizon's Original Motion. The Debtors described that after analysis of data previously provided by Verizon, MobileAria determined that only approximately 2% of lines were activated on an erroneous plan. This is consistent with Schedule 3 of the MobileAria Sale Order: "Units activated with Verizon Wireless on the wrong plan. $86,017.82. MobileAria to issue check." MobileAria already paid Verizon $86,000 on account of alleged Misactivation Charges.

47. At the conclusion of the November 29 Hearing, the Court directed Verizon to provide evidence in support of the Misactivation Charges that the Debtors could analyze to understand why the payment that they already made for these charges was inadequate. November 29 Transcript at page 26. Verizon has failed to do that.

48. Instead, the documents that are attached as Exhibit "B" to the Amended Motion in support of the $142,701.33 Misactivation Claims, are the same documents and information that were provided by Verizon to the Debtors on more than one occasion prior to the Original Motion. This is particularly troubling because the Debtors already analyzed four large, separate sets of data that Verizon submitted prior to the Original Motion in support of Misactivation Charges. Absmeier Declaration, paras. 25-27. The Debtors analyzed that information, shared their analysis with Verizon, and paid more than $86,000 to Verizon. Verizon has failed to present any

14

reliable, new evidence upon which the Debtors can rely for this branch of Verizon's request for relief. Absmeier Declaration, para. 28.

B. <u>The New Overage Charges Claim</u>

49. The New Overage Charges Claim is entirely new. However, upon preliminary review, the Debtors can discern that it has no merit. SOAFs were not used to move a vehicle or GPS Unit from one place to another or to upgrade an account. Consequently, the SOAFs that are attached to the Amended Motion do not support the New Overage Charges Claim. Neither the Amended Motion nor the Sheppard Declaration provide any identification of a contractual obligation for MobileAria to move or upgrade GPS Units. Finally, the Midwest units that are indicated in the SOAFs which are attached Exhibits C-1 and C-2 to the Amended Motion are all first-time installations, not transfers from Pennsylvania or any other geographic location. Absmeier Declaration, paras. 18-19, 21-24. Consequently, on its face, the New Overage Charges Claim has no merit.

C. <u>The Overactivation Charges</u>

50. Finally, while the Amended Motion provides thousands of lines of information purportedly in support of Verizon's Overactivation Charges, the Amended Motion does no more than point a finger to support this branch of its claim. Verizon only asserts that "MobileAria easily could have avoided the overactivations by using proper tracking methods." Sheppard Declaration, para. 28. Once more, Verizon has failed to point to any contractual obligation on the part of MobileAria to undertake extra-contractual obligations in the event that Verizon failed to make any of its vehicles available for installations in accordance with Verizon's strict roll-out schedule.

51. GPS Units were activated based upon an installation schedule that was dictated by Verizon and agreed to by MobileAria. Activation requests were

15

submitted to Verizon Wireless approximately 48 hours in advance of the scheduled installation date to enable the installers to set up and provision the GPS Units upon installation. When Verizon's trucks were not available on the agreed installation date, units remained activated until the installation could be rescheduled. Because deployment was spread out across the United States, and to adhere to Verizon's deployment schedule, it could take several weeks to a few months for an installment to be rescheduled and actually occur. This caused many GPS Units to be activated but not used for several months. Absmeier Declaration at paras. 29, 31,32. Verizon has failed to contradict this explanation by the Debtors.

52.    Verizon continues to assert that it incurred $133,945.20 of Overactivation Charges on account of GPS Units that were activated but were never installed. The Debtors fully responded to this claim in its Objection and in paragraphs 25 through 29 of Absmeier's Original Declaration. New in the Amended Motion, however, is Verizon 's arguments that: (i) many of the Verizon trucks missed their installation appointments because of "weather conditions that posed a safety hazard to the installers"; and (ii) "MobileAria simply could have exhausted any unused account numbers from the previous night or nights and requested new account numbers sufficient to meet only the deficit needed for the specific installations on the particular night." See Amended Motion, paras. 22-23, Sheppard Declaration paras. 27-30.

53.    The Debtors are not aware of any weather conditions that posed a safety hazard to MobileAria's installers which would have caused Verizon trucks to have missed their scheduled appointments, and this is a new allegation by Verizon. The Debtors records indicate that at most, 57 installation appointents were delayed because of cold condidtions that could have effected antenna sealing applications; and

16

57 missed installlations represents less than .4% of the installations that occurred before MobileAria was sold.  Absmeier Declaration, para. 30.

54. Moreover, MobileAria was contractually obligated to follow Verizon's strict roll-out schedule and committed to activate and install approximately 1,000 GPS Units per week during the deployment period.  Activations were submitted to Verizon Wireless by MobileAria pursuant to Verizon's instructions and according to the roll-out schedule that Verizon dicatated.  Absmeier Declaration, para. 31.

55. Activation requests were submitted to Verizon Wireless approximately 48 hours in advance of the scheduled installation date in order for the installers to be able to set up and provision the GPS Units upon installation.  Absmeier Declaration, para 32.  MobileAria could not simply use devices that were activated the night before because the garage locations were often distant from each other, so that hardware could not be transported throughout the country by installers as they flew or drove to the next installation site.  Absmeier Declaration, para. 33.

56. Verizon cannot reasonably suggest that GPS Units which were activated, but which could not be installed because their trucks missed their scheduled appointment, could have easily and seamlessly transferred throughout the country to meet and modify Verizon's strict roll-out program.  That scenario would have been unworkable and MobileAria was not contractually obligated to undertake that task. Absmeier Declaration, para. 34.

57. Moreover, Verizon has failed to controvert that based upon the Debtors' prior analysis of the documents provided by Verizon in support of the Overactivation Charges, at least $33,972.33 in alleged Overactivation Charges were actually on account of lines with data usage.  A GPS unit cannot reflect data usage unless it is both installed and powered on.  Consequently, it is apparent that many of

17

the GPS Units that Verizon included in this group could not have caused overactivation charges.  Absmeier Original Declaration, para. 28.

58. Notwithstanding Verizon's apparent responsibility for the bulk of the Overactivation Charges and the resulting damages suffered by MobileAria, as a customer courtesy, MobileAria paid Verizon $39,300 on account of a total of 1,309 spare and activated GPS Units that were not deactivated.  Verizon has failed to articulate any basis in the Amended Motion to explain how the amount paid by MobileAria on account of 1,309 spare and activated GPS Units could be increased to $133,945.20 for only 1,151 GPS Unit accounts.  Absmeier Declaration, para. 37.

59. Based upon all of the foregoing, the claims asserted in the Amended Motion have no evidentiary support or merit, and the Amended Motion should be denied.

### Reservation of Rights

60. The Debtors' submission of this Objection is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expunction, reduction, or reclassification of the Claims asserted in the Original and Amended Motions;  (b) the Debtors' right to later identify additional documentation supporting disallowance, expunction, reduction, or reclassification;  and (c) the Debtors' right to seek reimbursement for overpayments made to Verizon or other damages suffered by the Debtors on account of the GPS Agreement and continued litigation of baseless claims.

61. The legal authorities upon which the Debtors rely are set forth with specificity above.  Consequently, the Debtors respectfully request that this Court dispense with the requirement of any separate memorandum of law in support hereof.

18

Notwithstanding, the Debtors reserve the right to submit a separate memorandum of law in support hereof.

**WHEREFORE,** the Debtors respectfully request that the Court disallow and deny the Amended Motion, and grant such other and further relief as is just and appropriate.

Dated:  New York, New York
January 16, 2008

DELPHI CORPORATION, *et al.*
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000

19