UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                  :
      In re                              :        Chapter 11
                                                  :
DELPHI CORPORATION, <u>et al.</u>,      :        Case No. 05-44481 (RDD)
                                                  :
                      Debtors.    :        (Jointly Administered)
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN
OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL OF ASSETS OF
MOBILEARIA, INC. FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES,
(II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
<u>AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("MOBILEARIA SALE ORDER")

Upon the motion, dated June 6, 2006 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363 and

365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) approving (i) bidding procedures, (ii)

the granting of certain bid protections, (iii) the form and manner of sale notices, and (iv) the

setting of a sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the

"Sale") of certain of the Debtors' assets (the "Acquired Assets") comprising substantially all of

the assets of MobileAria, Inc. ("MobileAria") free and clear of liens, claims and encumbrances to

Wireless Matrix USA, Inc. (the "Purchaser") pursuant to the Asset Sale and Purchase Agreement

dated June 6, 2006 by and between MobileAria and the Purchaser (as amended on the record at

the auction held on July 6, 2006 to, <u>inter alia</u>, increase the cash consideration to be provided by

the Purchaser to $11.2 million, the "Agreement"),[1] or to the party submitting the highest or

otherwise best bid (the "Successful Bidder") at the auction held on July 6, 2006 (the "Auction"),

(ii) the assumption and assignment of certain executory contracts and unexpired leases (including

the Post-Petition Contracts) (the "Assigned Contracts") to the Purchaser or the Successful

Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Purchaser

or the Successful Bidder; and the Court having entered an order on June 22, 2006 (the "Bidding

Procedures Order") approving (a) bidding procedures, (b) the granting of certain bid protections,

(c) the form and manner of sale notices, and (d) the setting of the Sale Hearing; and the Auction

having been held on July 6, 2006; and the Sale Hearing having been held on July 19, 2006, at

which time all interested parties were offered an opportunity to be heard with respect to the

Motion; and the Court having reviewed and considered (x) the Motion, (y) the objections thereto,

all of which have been resolved, (z) the arguments of counsel made, and the evidence proffered

or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the

best interests of MobileAria, its estate, its creditors, and all other parties in interest; and the Court

having considered the arguments of counsel at the Sale Hearing; and upon the record of the Sale

Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

       IT IS HEREBY FOUND AND DETERMINED THAT:[2]

       A.     The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Agreement.  A true and correct copy of the Agreement is attached hereto as Schedule 1.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 363 and 365 of 11 U.S.C. §§ 101-1330, as in effect on October 14, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the assumption and assignment of the Assigned Contracts, and the Cure Amounts has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale or the assumption and assignment of the Assigned Contracts is or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, MobileAria has marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order, and the Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner.

E.    MobileAria (i) has full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the transfer and conveyance of the Acquired Assets by MobileAria has been duly and validly authorized by all necessary corporate action of MobileAria, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) has taken all corporate

action necessary to authorize and approve the Agreement and the consummation by MobileAria

of the transactions contemplated thereby, and no consents or approvals, other than those

expressly provided for in the Agreement, are required for MobileAria to consummate such

transactions.

F.      MobileAria has demonstrated both (i) good, sufficient, and sound business

purpose and justification for the Sale, because, among other things, MobileAria and its advisors

diligently and in good faith analyzed all other available options in connection with the

disposition of the Acquired Assets and determined that the terms and conditions set forth in the

Agreement, and the transfer to Purchaser of the Acquired Assets pursuant thereto, represent a fair

and reasonable purchase price and constitute the highest or otherwise best value obtainable for

the Acquired Assets and (ii) compelling circumstances for the Sale pursuant to 11 U.S.C. §

363(b) prior to, and outside of, a plan of reorganization in that, among other things, absent the

Sale the value of the Acquired Assets will be substantially diminished.

G.      A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Purchaser, (iii) counsel for @Road, Inc., (iv) counsel for the Official

Committee of Unsecured Creditors appointed in the above-captioned chapter 11 cases (the

"Creditors' Committee"), (v) counsel for the Official Committee of Equity Security Holders

appointed in the above-captioned chapter 11 cases, (vi) all entities known to have expressed an

interest in a transaction with respect to the Acquired Assets during the past six months, (vii) all

entities known to have asserted any Interests or Claims (as defined below) in or upon the

Acquired Assets, (viii) all federal, state, and local regulatory or taxing authorities or recording

offices, including but not limited to environmental regulatory authorities, which have a

reasonably known interest in the relief requested by the Motion, (ix) all parties to Assigned

Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice,

(xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, (xiv) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")) and such other entities that are

required to be served with notices under the Supplemental Case Management Order.

H.    The Purchaser is not an "insider" of any of the Debtors, as that term is

defined in 11 U.S.C. § 101(31).

I.    The Agreement was negotiated, proposed, and entered into by MobileAria

and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

Neither MobileAria nor the Purchaser has engaged in any conduct that would cause or permit the

Sale to be avoidable under 11 U.S.C. § 363(n).

J.    The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as

such, is entitled to all of the protections afforded thereby.  The Purchaser is acting in good faith

within the meaning of 11 U.S.C. § 363(m) in undertaking the transactions contemplated by the

Agreement.

K.    The consideration provided by the Purchaser for the transfer of the

Acquired Assets and the assignment of the Assigned Contracts pursuant to the Agreement (i) is

fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will

provide a greater recovery for MobileAria's creditors than would be provided by any other

practical available alternative, the Debtors having reserved, however, all of the rights against

@Road, Inc., and (iv) constitutes reasonably equivalent value and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the

District of Columbia.  Such transfers and assignments constitute transfers and assignments for

reasonably equivalent value and fair consideration.

        L.      The Sale must be approved and consummated promptly to preserve the

viability of MobileAria as a going concern.  A prompt Sale of the Acquired Assets is the best

way to maximize value for the MobileAria's estate and creditors.

        M.      With the exception of the Assumed Liabilities, the transfer of the Acquired

Assets and the assignment of the Assigned Contracts to the Purchaser pursuant to the Agreement

will be a legal, valid, and effective transfer of the Acquired Assets and assignment of the

Assigned Contracts, and will vest the Purchaser with all right, title, and interest to the Acquired

Assets and all rights related to the Assigned Contracts free and clear of any and all liens, claims,

interests, and encumbrances of any type whatsoever (whether known or unknown, choate or

inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent,

liquidated or unliquidated, matured or unmatured, material or non-material, disputed or

undisputed, whether arising prior to or subsequent to October 14, 2005, and whether imposed by

agreement, understanding, law, equity, or otherwise, including claims otherwise arising under

doctrines of successor liability), including, but not limited to those (i) that purport to give to any

party a right or option to effect any forfeiture, modification, right of first refusal, or termination

of MobileAria's or the Purchaser's interest in the Acquired Assets, or any similar rights, and (ii)

relating to taxes arising under or out of, in connection with, or in any way relating to the

operation of MobileAria's business prior to the transfer of the Acquired Assets to the Purchaser

(collectively, the "Interests and/or Claims").

N.      If the Sale of the Acquired Assets were not free and clear of all Interests

and/or Claims as set forth in the Agreement and this Sale Order, or if the Purchaser would, or in

the future could, be liable for any of the Interests and/or Claims as set forth in the Agreement and

this Sale Order, including, without limitation, the Retained Liabilities, the Purchaser would not

have entered into the Agreement and would not consummate the Sale or the transactions

contemplated by the Agreement, thus adversely affecting MobileAria, its estate, and its creditors.

O.      MobileAria may sell its interests in the Acquired Assets free and clear of

all Interests and/or Claims because, in each case, one or more of the standards set forth in 11

U.S.C. § 363(f)(1)-(5) has been satisfied.  Those (i) holders of Interests and/or Claims and (ii)

non-debtor parties to the Assigned Contracts who did not object, or who withdrew, settled, or

otherwise resolved their objections, to the Sale, the Motion, or the assumption and assignments

of Assigned Contracts contemplated by the Agreement and the Motion, are deemed to have

consented to the Sale, to such assumption and assignments, and to the other transactions

contemplated in the Agreement, pursuant to 11 U.S.C. §§ 363(f)(2) and 365(c).  Those (i)

holders of Interests and/or Claims and (ii) non-debtor parties to Assigned Contracts who did

object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately

protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale

ultimately attributable to the property against or in which they claim an Interest or Claim.

P.      The (i) transfer of the Acquired Assets to the Purchaser and (ii)

assumption and assignment to the Purchaser of the Assigned Contracts and Assumed Liabilities

will not subject the Purchaser to any liability whatsoever with respect to the operation of the

Business prior to the Closing Date or by reason of such transfer under the laws of the United

States, any state, territory, or possession thereof, or the District of Columbia based, in whole or

in part, directly or indirectly, on any theory of law or equity, including, without limitation, any

theory of equitable law, including, without limitation, any theory of antitrust or successor or

transferee liability.

Q.    MobileAria has demonstrated that it is an exercise of its sound business

judgment to assume and assign the Assigned Contracts to the Purchaser in connection with the

consummation of the Sale, and the assumption and assignment of the Assigned Contracts is in

the best interests of MobileAria, its estate, and its creditors.  The Assigned Contracts being

assigned to, and the liabilities being assumed by, the Purchaser are an integral part of the

Business and the Acquired Assets being purchased by the Purchaser and, accordingly, such

assumption and assignment of Assigned Contracts and liabilities are reasonable, enhance the

value of MobileAria's estate, and do not constitute unfair discrimination.

R.    MobileAria has (i) cured, or has provided adequate assurance of cure, of

any monetary or non-monetary default existing prior to the Closing Date under any of the

Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the amounts

provided on Schedule 2 hereto, and (ii) provided compensation or adequate assurance of

compensation to any party for any actual pecuniary loss to such party resulting from a default

prior to the date hereof under any of the Assigned Contracts, within the meaning of 11 U.S.C. §

365(b)(1)(B) (the "Cure").  Further, the Purchaser has provided adequate assurance of its future

performance of and under the Assigned Contracts, within the meaning of 11 U.S.C. §§

365(b)(1)(C) and 365(f)(2)(B).   The Court hereby finds that the Assigned Contracts to be

assumed and assigned under the Agreement shall be assigned and transferred to, and remain in

full force and effect for the benefit of Purchaser notwithstanding any provision in the contracts or

other restrictions prohibiting their assignment or transfer, pursuant to 11 U.S.C. § 365(f).

S.      Approval of the Agreement and consummation of the Sale of the Acquired

Assets and assignment of the Assigned Contracts at this time are in the best interests of

MobileAria, its creditors, its estate, and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

### General Provisions

1.      The Motion is GRANTED.

2.      All objections to the Motion or the relief requested therein, including,

without limitation, objections to the Sale, any Cures or Cure Amounts, or the assumption and

assignment of the Assigned Contracts, that have not been withdrawn, waived, settled, or

otherwise resolved, and all reservations of rights included therein, are hereby overruled on the

merits.

### Approval Of The Agreement

3.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and

conditions thereof are hereby approved.

4.      Pursuant to 11 U.S.C. § 363(b), MobileAria is authorized and directed to

perform its obligations under the Agreement and comply with the terms thereof and consummate

the Sale in accordance with and subject to the terms and conditions of the Agreement.

5.      Each of the signatories to the Agreement is directed to take all actions

necessary or appropriate to effectuate the terms of this Sale Order.

6.      The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession, the Acquired Assets and the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

7.      This Sale Order and the Agreement shall be binding in all respects upon all creditors (whether known or unknown) of MobileAria, the Purchaser, all successors and assigns of the Purchaser and MobileAria, all affiliates and subsidiaries of the Purchaser and MobileAria, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection.  To the extent any provision of this Sale Order is inconsistent with the terms of the Agreement, this Sale Order shall govern.

8.      The Agreement and any related agreements, documents, or other instruments, including, without limitation, the Ancillary Agreements, may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment, or supplement is not material.

Sale And Transfer Of The Acquired Assets

9.      Except as expressly permitted or otherwise specifically provided for in the Agreement or this Sale Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Acquired Assets shall be transferred to the Purchaser free

and clear of all Interests and/or Claims of any kind or nature whatsoever, with all such Interests

and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they now have as against the Acquired Assets, subject to

any claims and defenses MobileAria may possess with respect thereto.

10.    The transfer of the Acquired Assets and the assignment of the Assigned

Contracts to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective

transfer of the Acquired Assets and assignment of the Assigned Contracts , and shall vest the

Purchaser with all right, title, and interest in and to the Acquired Assets and the assignment of

the Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature

whatsoever, including without limitation, any Interests or Claims held by any of the Debtors,

their affiliates, their affiliates' creditors, vendors, suppliers, customers, employees or lessors and

any other person (collectively, "Claimants").  Purchaser shall not be liable in any way (as

assignee, successor entity, or otherwise) for any Interests or Claims that any Claimant or other

third party may have against MobileAria or its affiliates, or the Business, or under any Assigned

Contract.

11.    If any person or entity which has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests or Claims

against or in the Acquired Assets shall not have delivered the foregoing to MobileAria prior to

the Closing Date, in proper form for filing and executed by the appropriate parties, termination

statements, instruments of satisfactions, releases of all Interests or Claims that the person or

entity has with respect to the Acquired Assets, or otherwise, then (a) MobileAria is hereby

authorized to execute and file such statements, instruments, releases, and other documents on

behalf of the person or entity with respect to the Acquired Assets and (b) the Purchaser is hereby

authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once

filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all

Interests and/or Claims in the Acquired Assets of any kind or nature whatsoever.

12.    This Sale Order (a) shall be effective as a determination that, upon the

Closing Date, all Interests and/or Claims of any kind or nature whatsoever existing as to

MobileAria, the Acquired Assets, or the Assigned Contracts prior to the Closing Date have been

unconditionally released, discharged, and terminated (other than any surviving obligations), and

that the conveyances described herein have been effected and (b) shall be binding upon and shall

govern the acts of all entities including, without limitation, all filing agents, filing officers, title

agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds,

administrative agencies, governmental departments, secretaries of state, federal, state, and local

officials, and all other persons and entities who may be required by operation of law, the duties

of their office, or contract, to accept, file, register, or otherwise record or release any documents

or instruments, or who may be required to report or insure any title or state of title in or to any of

the Acquired Assets.

13.    Except as expressly permitted or otherwise specifically provided by the

Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt

security holders, equity security holders, governmental, tax, and regulatory authorities, lenders,

trade, and other creditors, holding Interests or Claims of any kind or nature whatsoever against or

in MobileAria or the Acquired Assets or the Assigned Contracts (whether legal or equitable,

secured or unsecured, matured or unmatured, contingent or non-contingent, senior or

subordinated), arising under or out of, in connection with, or in any way relating to, MobileAria,

the Acquired Assets, the Assigned Contracts, the operation of the Business prior to the Closing

Date, or the transfer of the Acquired Assets and the Assigned Contracts to the Purchaser, hereby

are forever barred from asserting against the Purchaser, its successor or assign, its property, the

Acquired Assets or the Assigned Contracts, such persons' or entities' Interests or Claims.

14.    Upon the consummation of the transactions contemplated by the

Agreement, the Purchaser shall not be deemed to (a) be the successor of MobileAria, (b) have, de

facto, or otherwise, merged with or into MobileAria, (c) be a mere continuation or substantial

continuation of MobileAria or the enterprise(s) of MobileAria, or (d) be liable for any acts or

omissions of MobileAria in the conduct of the Business.

### Assumption And Assignment To The Purchaser Of The Assigned Contracts

15.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned

upon the Closing Date, MobileAria's assumption and assignment to the Purchaser, and the

Purchaser's assumption on the terms set forth in the Agreement, of the Assigned Contracts is

hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto

are hereby deemed satisfied.

16.    MobileAria is hereby authorized and directed in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and assign to the Purchaser, effective upon the

Closing Date, the Assigned Contracts free and clear of all Interests and/or Claims of any kind or

nature whatsoever and (b) execute and deliver to the Purchaser such documents or other

instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed

Liabilities to the Purchaser.

17.    The Assigned Contracts shall be transferred to, and remain in full force

and effect for the benefit of, the Purchaser in accordance with their respective terms,

notwithstanding any provision in any such Assigned Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer, and, pursuant to 11 U.S.C. § 365(k), MobileAria shall be

relieved from any further liability with respect to the Assigned Contracts after such assignment

to and assumption by the Purchaser, except for the Cure of any defaults required to be cured by

MobileAria pursuant to 11 U.S.C. § 365(b) as expressly provided herein.

18.    All monetary or non-monetary defaults or other obligations of MobileAria

under the Assigned Contracts (including, without limitation, any Cure obligations) subsequently

arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or

any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall

be cured by MobileAria on or before the Closing Date or as soon thereafter as practicable, and

the Purchaser shall have no liability or obligation with respect to any Interest or Claim arising

from any Assigned Contract that arose or accrued prior to the Closing Date (including, without

limitation, any Cure obligations), except as otherwise expressly provided in the Agreement.

Each non-debtor party to any Assigned Contracts is deemed to have consented to the assumption

and assignment of the Assigned Contracts to Purchaser and is forever barred from asserting any

default existing as of the date of the Closing or any purported written or oral modification to the

Assigned Contracts.

19.    Each non-Debtor party to an Assigned Contract hereby is forever barred,

estopped, and permanently enjoined from (a) asserting against MobileAria or the Purchaser, or

the property of either of them, any default existing, arising or accruing on or before the Closing

Date, (b) asserting against the Purchaser any counterclaim, defense, setoff or any other Interest

or Claim asserted or assertable against MobileAria, and (c) imposing or charging against

Purchaser any rent accelerations, assignment fees, increases or any other fees as a result of

MobileAria's assumption and assignment to Purchaser of the Assigned Contracts.  The validity

of the assumption and assignment of the Assigned Contracts shall not be affected by any dispute

between MobileAria or any of its affiliates and any non-debtor party to an Assigned Contract.

       20.    The failure of MoblieAria or the Purchaser to enforce at any time one or

more terms or conditions of any Assigned Contract shall not be a waiver of such terms or

conditions, or of MobileAria's and Puchaser's rights to enforce every term and condition of the

Assigned Contracts.

<u>Additional Provisions</u>

       21.    The consideration provided by the Purchaser for the Acquired Assets

under the Agreement is hereby deemed to constitute reasonably equivalent value and fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform

Fraudulent Transfer Act, and under the laws of the United States, and any state, territory,

possession, or the District of Columbia.

       22.    Upon the occurrence of the Closing Date, this Sale Order shall be

construed and shall constitute for any and all purposes a full and complete general assignment,

conveyance, and transfer of all of the Acquired Assets and Assigned Contracts or a bill of sale

transferring good and marketable title in such Acquired Assets and Assigned Contracts to the

Purchaser on pursuant to the terms of the Agreement.

       23.    Except as otherwise provided in the Agreement, upon the Closing Date,

each of MobileAria's creditors is authorized and directed to execute such documents and take all

other actions as may be necessary to release their respective Interests and/or Claims against the

Acquired Assets and the Assigned Contracts, if any, as may have been recorded or may

otherwise exist.

24.    Each and every federal, state, and governmental agency or department,

and any other person or entity, is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the

Agreement.

25.    All entities who are currently, or as of the Closing Date may be, in

possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to

the Agreement are hereby directed to surrender possession of the Acquired Assets to the

Purchaser upon the occurrence of the Closing Date.

26.    The Purchaser shall have no liability or responsibility for any liability or

other obligation of MobileAria arising under or related to the Acquired Assets or the Assigned

Contracts other than for the Assumed Liabilities.  Without limiting the generality of the

foregoing, and except as otherwise specifically provided herein and in the Agreement, the

Purchaser shall not be liable for any Interests or Claims against MobileAria or any of its

predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any

kind or character whether known or unknown as of the Closing Date, now existing or hereafter

arising, whether fixed or contingent, with respect to MobileAria or any obligations of

MobileAria arising prior to the Closing Date, including, but not limited to, liabilities on account

of any taxes arising, accruing, or payable under, out of, in connection with, or in any way

relating to the operation of the Business prior to the Closing Date.

27.    Any amounts that become payable by MobileAria pursuant to the

Agreement or any Ancillary Agreement shall (a) constitute administrative expenses of

MobileAria's estate under 11 U.S.C. §§ 503(b) and 507(a)(1), and (b) be immediately payable if and when such obligation to pay or bear such amount shall arise under the Agreement, without any further order of this Court.

28.    Purchaser shall not be liable, either directly or indirectly, as purchaser, successor, transferee, assignee or otherwise, for any liabilities of or any Interest or Claim against or in MobileAria or any of its affiliates (whether under federal or state law or otherwise).  Under no circumstances shall the Purchaser be deemed a successor of or to MobileAria for any Interest or Claim against or in MobileAria or the Acquired Assets of any kind or nature whatsoever.  The sale, transfer, assignment, and delivery of the Acquired Assets shall not be subject to any Interests or Claims, and Interests or Claims of any kind or nature whatsoever shall remain with, and continue to be obligations of, MobileAria.  All persons holding Interests or Claims against or in MobileAria or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests or Claims of any kind or nature whatsoever against the Purchaser, its property, its successors and assigns, the Acquired Assets, or the Assigned Contracts with respect to any Interest or Claim of any kind or nature whatsoever such person or entity had, has, or may have against or in MobileAria, its estate, its officers, its directors, its shareholders, the Acquired Assets, or the Assigned Contracts.

29.    Nothing contained in any plan of reorganization confirmed in the above-captioned cases or any order of this Court confirming such plan shall conflict with or derogate from the provisions of the Agreement or the terms of this Sale Order.

30.    The transactions contemplated by the Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the

05-44481-rdd    Doc 12192-1    Filed 01/16/08    Entered 01/16/08 18:53:38    Exhibit 1:
MobileAria Sale Order    Pg 18 of 25

Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the sale of the Acquired Assets shall not affect the validity of the

Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.  The

Purchaser is a purchaser in good faith of the Acquired Assets, and is entitled to all of the

protections afforded by section 363(m) of the Bankruptcy Code.

31.    The consideration provided by the Purchaser for the Acquired Assets

under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n)

of the Bankruptcy Code.

32.    MobileAria, including, but not limited to, its officers, employees, and

agents, is hereby authorized to execute such documents and do such acts as are necessary or

desirable to carry out the transactions contemplated by the terms and conditions of the

Agreement and this Sale Order.  MobileAria shall be, and it hereby is, authorized to take all such

actions as may be necessary to effectuate the terms of this Sale Order.

33.    The terms and provisions of the Agreement and this Sale Order shall be

binding in all respects upon, and shall inure to the benefit of, MobileAria, its estates, and its

creditors, the Purchaser, and its respective affiliates, successors, and assigns, and any affected

third parties, including, but not limited to, all persons asserting an Interest or Claim in the

Acquired Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any

subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any

chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms

and provisions likewise shall be binding.

34.     Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of MobileAria's estate, such as funds that are trust funds under any applicable state lien laws.

35.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

36.     The failure specifically to include or to reference any particular provision of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

37.     The provisions of this Sale Order are nonseverable and mutually dependent.

38.     Nothing in this Sale Order shall alter or amend the Agreement and the obligations of MobileAria and the Purchaser thereunder.

39.     This Court retains exclusive jurisdiction to interpret, construe, enforce and implement the terms and provisions of this Sale Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith (including the Ancillary Agreements) in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets and assignment of the Assigned Contracts to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to MobileAria pursuant to the Agreement, (c) resolve any disputes arising

under or related to the Agreement, except as otherwise provided therein, (d) interpret,

implement, and enforce the provisions of this Sale Order, (e) protect the Purchaser against any

Interests and/or Claims against MobileAria or the Acquired Assets, of any kind or nature

whatsoever, attaching to the proceeds of the Sale and (f) determine all disputes among

MobileAria, the Purchaser and any non-debtor parties to any Assigned Contract concerning, inter

alia, MobileAria's assumption and assignment of any Assigned Contract to Purchaser under the

Agreement.

40.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

41.     Pursuant to the terms of the Agreement and the Bidding Procedures Order,

MoblieAria shall credit the Purchaser the amount of one hundred ninety-five thousand dollars

($195,000.00) against the $11,200,000 cash consideration to be provided to MobileAria at

Closing, after which credit Purchaser shall have no right to the Break-Up Fee.

Verizon Contract

42.     Notwithstanding any other provision of this Sale Order, the following

shall apply with respect to the assumption of the Verizon Contract and the assignment of the

Verizon Contract to the Purchaser:

(a)     Verizon has asserted that MobileAria is responsible for the payment of certain

charges and other liabilities, as more particularly identified in Schedule 3 hereto,

including, without limitation, all charges that have arisen prior to the date of this

Order associated with alleged errors that may have resulted in inaccurate billings

20

to Verizon (the "Schedule 3 Disputes"), in the amount of up to $700,000.  Any

amounts paid by MobileAria with respect to the Schedule 3 Disputes shall be

credited to the $700,000.  Verizon and MobileAria shall each work in good faith

during the next 60 days to attempt to resolve these matters.  In the event that

Verizon seeks to recover for charges arising with respect to a Schedule 3 Dispute,

Verizon shall submit such charges to MobileAria within 60 days of the date of

this Order ("Asserted Schedule 3 Disputes") or be deemed to have waived such

Schedule 3 Dispute.  If either MobileAria or Verizon reasonably determines that

the disputes described on Schedule 3 or with respect to the Asserted Schedule 3

Disputes cannot be resolved consensually, MobileAria or Verizon may seek this

Court's determination of same.  The Purchaser shall not be liable to Verizon for

all or any portion of the alleged amounts due that are described in this

subparagraph.  Any and all amounts due and owing from MobileAria to Verizon

pursuant to this subparagraph (a) shall constitute administrative expenses of

MobileAria's estate under 11 U.S.C. §§ 503(b) and 507(a)(1) without further

order of the Court with priority over claims of MobileAria's affiliates.

(b)     Other than warranty and indemnity obligations as referred to in subparagraph (c)

below, with respect to any defaults under the Verizon Contract that are not known

as of the date of this Sale Order, after reasonable investigation, and are not

matters of the types that constitute Schedule 3 Disputes (collectively, the

"Previously Unasserted Pre-Closing Defaults"), MobileAria shall be responsible

for such Previously Unasserted Pre-Closing Defaults under the Verizon Contract

up to the sum of $1,000,000. Verizon shall have one year from the Closing to

assert any Previously Unasserted Pre-Closing Defaults (such then-asserted claims,

the "Category 2 Claims").  If MobileAria or Verizon reasonably determines that

the Category 2 Claims cannot be resolved consensually, MobileAria or Verizon

may seek this Court's determination of same.  Any and all amounts due and owing

from MobileAria to Verizon pursuant to this subparagraph (b) shall constitute

administrative expenses of MobileAria's estate under 11 U.S.C. §§ 503(b) and

507(a)(1) without further order of the Court with priority over claims of

MobileAria's affiliates.

(c)      The Purchaser agrees to perform the warranty and indemnity obligations set forth

in the Verizon Contract.

(d)      With respect to any future obligations that arise subsequent to the Closing, the

Purchaser shall perform such future obligations as and when they become due.

(e)      Verizon hereby withdraws its Objection Of Verizon Services Corp. To

Assumption And Assignment Of Executory Contracts In Connection With Motion

Of Debtors For An Order Authorizing And Approving (i) Sale Of Certain Of The

Debtors' Assets Comprising Substantially All Assets Of MobileAria, Inc. Free

And Clear Of Liens, Claims And Encumbrances, (ii) Assumption And

Assignment Of Certain Executory Contracts And Unexpired Leases, And (iii)

Assumption Of Certain Liabilities (the "Objection") with prejudice and agrees

that, should Verizon seek to terminate the Verizon Contract for convenience

pursuant to the terms thereof, each of the Purchaser and MobileAria shall be

relieved from all of their obligations under this paragraph 43.

(f)      Certain of the Schedule 3 Disputes involve assertions by Verizon that, as of the

date hereof, MobileAria has not completed certain repairs and other work due

under the Verizon Contract ("WIP").  If MobileAria is unable to or fails to

complete any or all of the WIP, then Purchaser shall be obligated to promptly

complete such WIP in a commercially-reasonable manner.   Purchaser shall seek

payment of its reasonable actual out-of-pocket costs and expenses attributable to

Purchaser's performance of WIP, including, but not limited to Purchaser's direct

labor costs ("WIP Costs").   Mobile Aria shall deliver to the Escrow Agent the

sum of $100,000 to pay the estimated WIP Costs ("WIP Escrow").   Purchaser

may periodically deliver to the Escrow Agent and Mobile Aria invoices related to

WIP Costs.  The Escrow Agent shall pay all invoiced WIP Costs ten (10) days

after its receipt of the invoices from the WIP Escrow, provided, however, Mobile

Aria does not object, in good faith, in detail and in writing to some or a portion of

the invoiced WIP Costs.   The Escrow Agent shall promptly pay all undisputed

WIP Costs.   In the event of a dispute, the parties shall try to work out their

differences consensually.  If either the Purchaser or MobileAria reasonably

determines that a WIP Cost dispute cannot be resolved consensually, the

Purchaser or MobileAria may seek this Court's determination of same.  Any and

all invoiced amounts due and owing from MobileAria to Purchaser pursuant to

this paragraph 43(f) shall constitute administrative expenses of MobileAria's

estate under 11 U.S.C. §§ 503(b) and 507(a)(1) without further order of the Court

with priority over claims of MobileAria's affiliates.

Waiver of Stay

43.    As provided by Fed. R. Bankr. P. 7062 and notwithstanding Rules 6004(g) and

6006(d) of the Federal Rules of Bankruptcy Procedure or any other Bankruptcy Rule, this Sale

Order shall take effect and be enforceable immediately upon its entry.

44.     Time is of the essence in closing the Sale and MobileAria and Purchaser intend to close the Sale as soon as possible.  Therefore, any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay or risk their appeal being foreclosed as moot.

Dated: New York, New York
       July 21, 2006

            /s/Robert D. Drain
            UNITED STATES BANKRUPTCY JUDGE