TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Lara Sheikh (LS-0879)

Hearing Date:  January 25, 2008
At:  10:00 a.m.

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
:
In re:                                                       :    Chapter 11
                                                             :    Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*,                                :
                                                             :    Jointly Administered
                                           Debtors.          :
                                                             :
-------------------------------------------------------------x

### DECLARATION OF JOHN ABSMEIER IN SUPPORT OF DEBTORS' OBJECTION TO AMENDED MOTION OF VERIZON SERVICES CORP. FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO MOBILEARIA SALE ORDER

JOHN ABSMEIER, hereby declares pursuant to section 1746 of title 28 of the United States Code:

        1.    I am the former Director, Program Management for MobileAria, Inc. ("MobileAria"), one of the debtors and debtors in possession in the above-captioned cases (collectively the "Debtors").

        2.    I am authorized to submit this Declaration on behalf of the Debtors.

        3.    Except as otherwise set forth herein, all statements in this Declaration are based on my personal knowledge, my familiarity with the Debtors' books and records, the Debtors' relationship with Verizon pertaining to the GPS

Agreement[1], my review of relevant documents and discussion with the Debtors' counsel. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

    4.    I submit this Declaration in support of the Debtors' pre-fixed objection (the "Objection") to the amended motion (the "Amended Motion") by Verizon Services Corp. ("Verizon") for Payment of Administrative Expense Claim Pursuant to MobileAria Sale Order.

    5.    On November 9, 2007, I submitted my Declaration (the "Original Declaration") in support of the Debtors' objection to the original motion (the "Original Motion") by Verizon for payment of an administrative expense claim, which was considered by the Bankruptcy Court on November 29, 2007. I respectfully incorporate herein by reference all of the statements and representations that were contained in my Original Declaration.

    6.    I have read the Amended Motion and the Objection and am fully familiar with the facts, circumstances and status of matters set forth therein.

    7.    Verizon negotiated a wireless service agreement for the GPS Units with its affiliate, Verizon Wireless, without MobileAria's participation or input.

    8.    MobileAria was not a party to and had no input regarding Verizon's negotiations with Verizon Wireless.

    9.    MobileAria recommended to Verizon that it select a limited 6 Mb plan for the GPS Units to be activated with a limited usage plan. Verizon did not follow

---

[1]     Terms used but not otherwise defined herein shall have the meaning ascribed to such terms by the Objection.

2

MobileAria's recommendation and selected the limited 2 Mb plan rather than a limited 6 Mb plan.

10. As a customer courtesy, and without any contractual obligation to do so, MobileAria facilitated activation of the GPS Units in accordance with Verizon's instructions as part of the process of deployment and installation of the GPS Units.

11. Specifically, Verizon completed a Sales Order Activation Form ("SOAF") for each GPS Unit which identified the wireless plan that would be initially activated for the unit. MobileAria then forwarded the data from the SOAFs with instructions to activate the GPS Units, as set forth in the SOAF, and associated hardware identification information for the installation to Verizon Wireless.

12. MobileAria did not receive any compensation for its role in facilitating activation of wireless service for the GPS Units and viewed the service as a ministerial customer courtesy.

## I.    The Sales Order Bar Date

13. On June 6, 2006, the Debtors moved for an Order to, among other things, assume and assign certain executory contracts and to sell substantially all of the assets of MobileAria.

14. Verizon objected to the MobileAria Sale Motion and asserted various claims for damages. The parties were unable to resolve all of Verizon's objections prior to the hearing to reconsider the MobileAria Sale Motion. Consequently, the Debtors and Verizon negotiated paragraph 42 of the MobileAria Sale Order which permitted Verizon to seek payment of Schedule 3 Disputes, as defined in the MobileAria Sale Order, up to amount of $700,000.

15.     However, Verizon's ability to seek payment of Schedule 3 Disputes was subject to a defined, agreed upon deadline (the "Sale Order Bar Date"):

> "In the event that Verizon seeks to recover for charges arising with respect to a Schedule 3 Dispute, Verizon shall submit such charges to MobileAria within 60 days of this Order (the "Asserted Schedule 3 Disputes") or be deemed to waive such Schedule 3 Dispute.

MobileAria Sale Order para. 42(a).

16.     The Court entered the MobileAria Sale Order on July 21, 2006.

17.     After entry of the MobileAria Sale Order, Verizon submitted various Schedule 3 Disputes to the Debtor.  However, the $407,228.36 New Overage Charges Claim that is described in the Amended Motion at paragraphs 18-21 and in paragraphs 22-25 of the Declaration of Margaret L. Sheppard in support thereof (the "Sheppard Declaration") were never submitted to the Debtors or asserted prior to the Sale Order Bar Date.

18.     The Debtors expended time and resources for more than a year to try to understand and settle claims and charges that Verizon submitted prior to the Sale Order Bar Date.  On September 25, 2007, Verizon filed its Original Motion for allowance of an administrative expense claim consisting of, predominantly, "Overage Charges" of $678,579.09.  The Debtors had already spent considerable time and resources to research Verizon's original Overage Charges Claim, but repeatedly concluded that the claim was not factually or legally supported.

19.     In paragraphs 18, 19 and 20 of the Amended Motion, and in pargraphs 22 through 25 of the Sheppard Declaration, Verizon asserts, for the first time, that Overage Charges of $407,228.36 were incurred "as a result of MobileAria failing to change the data usage plan of a unit that was previously activated on a 2 Meg Plan . . . but [which] was subsequently transferred to an area in which Verizon required its GPS

4

units to operate with enhanced functionality, and thus under the Unlimited Plan." This claim was never submitted or communicated to MobileAria or the Debtors prior to the Sale Order Bar Date and was never communicated prior to the Amended Motion.

20. I note that in paragraph 25 of the Sheppard Declaration, Ms. Sheppard acknowledges that this new theory was never even considered, researched or formulated by Verizon prior to November 29, 2007.

21. I have reviewed Exhibits C-1 and C-2 submitted with the Amended Motion in support of the New Overage Charge Claim and have no means to reach the conclusion that Verizon has reached. MobileAria never had any contractual obligation to select wireless service plans for GPS units, nor did it have any contractual obligation to reactivate or upgrade GPS units if Verizon transferred a unit to a new geographic location.

22. Upon a preliminary review, I can discern that the New Overage Charge Claim is invalid. SOAFs were never used to move a vehicle or GPS unit from one place to another or to upgrade an account. Moreover, the Midwest units that are indicated in the SOAFs that are attached to Exhibit C-1 and C-2 of the Amended Motion are all first-time installations, not transfers from Pennsylvania or any other geographic location.

23. Moreover, neither the Amended Motion nor the Sheppard Declaration describe or otherwise articulate how or when any of the GPS units were moved from one geographic location to another.

24. Consequently, on its face, the New Overage Charge Claim has no evidentiary support or merit.

B.     **The Misactivation Charges**

25.    In paragarph 17 of the Amended Motion and paragraph 21 of the Sheppard Declaration, Verizon asserts that $142,701.33 of the Overage Charges were allegedly incurred as a result of MobileAria having initially failed to activate GPS units on a correct data usage plan.  This also appears to be a new claim because in its Original Motion, Verizon asserted that it incurred "Misactivation Charges" of $164,672.30 as additional data usage charges that allegedly resulted from certain GPS units having been activated with a data usage plan other than that specified by Verizon.  Neither the Amended Motion nor the Sheppard Declaration explain whether these are both the same claim and if they are, the basis for the different amount of damages.

26.    As I described in my original declaration, MobileAria activated wireless service for GPS units consistent with Verizon's instructions in the SOAFs that were completed by Verizon.  Research by the Debtors concluded that only approximately 2% of lines were activated on an erroneous price plan.

27.    The Amended Motion does not separately identify Misactivation Charges and the information that is submitted in support of this branch of the Overage Charges Claim in the Amended Motion appears to be the same information that Verizon provided to MobileAria prior to the Original Motion.  This is particularly troubling because the Debtors already analyzed four large, separate sets of data that Verizon submitted prior to the Original Motion in support of Misaction Charges.  Therefore, MobileAria can only conclude, absent analysis of tens of thousands of lines of data, that the Overage Charges of $142,701.33 identified in the Amended Motion are the Misactivation Charges that were identified by Verizon in the Original Motion and prior thereto.

  28. MobileAria paid Verizon $86,000 on account of Misactivation Charges before it had an opportunity to fully analyze the data regarding alleged errors. This was consistent with the parties' agreement, as evidenced by Schedule 3 of the MobileAria Sale Order: "Units activated with Verizon Wireless on the wrong plan. $86,017.82. MobileAria to issue check." After making that payment, MobileAria analyzed data that was provided by Verizon, which appears to be the identical information that was annexed to the Amended Motion, and that analysis revealed that only $42,714.26 in misactivation charges related to accounts that MobileAria erroneously activated with the wrong plan.

**C.** **The Overactivation Charges**

  29. Verizon continues to assert that it incurred $133,945.20 of Overactivation Charges on account of GPS units that were activated but were never installed. The Debtors and I fully responded to this claim in paragraphs 25 through 29 of my Original Declaration. New in the Amended Motion, however, is Verizon's arguments that: (i) many of the Verizon trucks missed their appointments, which were set by Verizon's strict roll-out schedule, because of "weather conditions that posed a safety hazard to the installers"; and (ii) "MobileAria simply could have exhausted any unused account numbers from the previous night or nights and requested new account numbers sufficient to meet only the deficit needed for the specific installations on the particular night." See Amended Motion, paras. 22-23 and Sheppard Declaration, paras. 27-30.

  30. I do not recall any weather conditions that posed safety hazards to MobileAria's installers which would have caused Verizon trucks to have missed their scheduled appointments, and this is a new allegation by Verizon. The Debtors records

indicate that at most, 57 installation appointents were delayed because of cold conditions that could have effected antenna sealing applications; and 57 missed installations represents less than 0.54% of the installations that occurred before MobileAria was sold.

   31. MobileAria was contractually obligated to follow Verizon's strict roll-out schedule and it committed to activate and install approximately 1,000 GPS units per week during the deployment period. Activations were submitted to Verizon Wireless by MobileAria pursuant to Verizon's instructions and according to the roll-out schedule that Verizon dicatated.

   32. Activation requests were submitted to Verizon Wireless approximately 48 hours in advance of the scheduled installation date so that the installers could be able to set up and provision the GPS Units upon installation. When Verizon's trucks were not available on the agreed installation date, units remained activated until the installation could be rescheduled. Because deployment was spread out across the United States, and to adhere to Verizon's ongoing deployment schedule, it could take several weeks to a few months for an installment to be rescheduled and actually occur. This caused many GPS Units to be activated but not used for several months. In some cases, GPS Units were never used if Verizon's truck was never available and the installation never occurred.

   33. MobileAria could not simply use devices activated the night before for completely new installation locations because the garage locations were often distant from each other, so that hardware could not be transported throughout the country by installers as they flew or drove to their next installation site.

   34. Verizon cannot reasonably suggest that GPS Units which were

activated, but which could not be installed because their trucks missed their scheduled appointment, could have easily and seamlessly transferred throughout the country to meet and modify Verizon's strict roll-out program. That scenario would have been unworkable and MobileAria was not contractually obligated to undertake that task.

35. The information supplied as Exhibit D to the Amended Motion is the same information that was submitted to MobileAria prior to the Original Motion.

36. In addition, based upon an analysis of the data previously provided by Verizon, $33,972.33 in alleged Overactivation Charges were actually on account of lines with data usage. A GPS Unit cannot reflect data usage unless it is both installed and powered on. Consequently, many of the GPS Units that Verizon included in this group could not have caused Overactivation Charges. MobileAria deployed significant resources at great time and expense including the Vice President of Engineering to conduct an analysis of the Overactivation Charges, which analysis resulted in the above conclusions, and they have not been contradicted by Verizon.

37. Notwithstanding Verizon's apparent responsibility for the bulk of the Overactivation Charges and the resulting costs and damages suffered by MobileAria, as a customer courtesy, MobileAria paid Verizon $39,300 on account of a total of 1,309 spare and activated GPS Units that were not deactivated. This is consistent with Schedule 3 of the MobileAria Sale Order which provides: "1,309 spares and deactivated units were not deactivated. $39,300.00 MobileAria to issue check." Verizon has failed to articulate any basis in its Original Motion and Amended Motion to explain how the amount paid by MobileAria on account of 1,309 spare and activated

GPS Units could equal the $133,945.20 sought by Verizon for only 1,151 GPS Units.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  January 15, 2008

                                        /s/ John Absmeier  
                                        John Absmeier