Hearing Date and Time:  January 25, 2008 at 10:00 a.m.
Response Date and Time:  January 18, 2008 at 4:00 p.m.

DAY PITNEY LLP
(MAIL TO)  P.O. BOX 1945, MORRISTOWN, NJ  07962-1945
(DELIVERY TO) 200 CAMPUS DRIVE, FLORHAM PARK, NJ 07932-0950
(973) 966-6300
RICHARD M. METH, ESQ. (R.M. – 7791)(*Admitted pro hac vice*)
- and -
7 Times Square
New York, NY 10036-7311
(212) 297-5800

- *and* -

CARSON FISCHER, P.L.C.
ROBERT A. WEISBERG (MI# P13452)
CHRISTOPHER A. GROSMAN (MI# P58693)
4111 Andover Road
West – 2nd Floor
Bloomfield Hills, Michigan  48302
(248) 644-4840 (telephone)
(248) 644-1832 (facsimile)

COUNSEL FOR 2088343 ONTARIO LIMITED

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re                                                       :
                                                            :       Chapter 11
DELPHI CORPORATION, et al.,                                 :       Case No: 05-44481 (RDD)
                                                            :       (Jointly Administered)
                                Debtors.                    :
------------------------------------------------------------x

## 2088343 ONTARIO LIMITED'S RESPONSE TO
## DEBTORS' TWENTY-FOURTH OMNIBUS CLAIMS OBJECTION

**2088343 Ontario Limited** ("208 Ontario"), by and through its undersigned counsel,

hereby submits its response to Debtors' Twenty-Fourth Omnibus Claims Objection [Docket No.

11588], and in support thereof states as follows:

1.      Delphi Corporation, *et al.* (the "Debtors") filed their voluntary bankruptcy petitions on October 8 and 14, 2005.  The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to Chapter 11 of the Bankruptcy Code.

2.      The Debtors' Chapter 11 cases are being jointly administered under Chapter 11 Case No. 05-44481 (RDD).

3.      This Court set July 31, 2006 as the date for general creditors to file proofs of claims against the Debtors (the "Bar Date").

### Background as to the Claim

4.      On May 4, 2006, 1599963 Ontario Limited ("159 Ontario") timely filed its proof of claim (being claim no. 4769) as an unsecured nonpriority claim in the amount of $349,524.38 CDN (the "Claim").  The Claim arose in connection with, and is based upon, a certain Limited Guarantee executed by Delphi Automotive Systems LLC (the "Delphi Guarantor") in favor of Century Services Inc. ("Century").  (A summary of the loan and Claim transfer transactions is contained below.)  A duplicate copy of the Claim is attached hereto as **Exhibit A** and incorporated herein by this reference.

5.      More particularly, on or about July 18, 2005, the Delphi Guarantor executed the Limited Guarantee in favor of Century.  Pursuant to the Limited Guarantee, the Delphi Guarantor guaranteed the prompt payment of certain, but not all, secured loans (all of the secured loans, the "Loans" and the Guaranteed Loans, the "Guaranteed Loans") made by Century to 1664560 Ontario Inc. ("166 Ontario"), not to exceed $350,000 CDN.  (A copy of the Limited Guarantee is attached to the Claim, which is attached hereto as **Exhibit A**.)

6.      In November, 2005, 159 Ontario took an assignment of indebtedness owed by 166 Ontario to Century, including a security interest in certain assets of 166 Ontario and the Limited Guarantee of the Guaranteed Loans.

7.      159 Ontario made demand upon 166 Ontario for repayment of the Loans (in an amount exceeding $1,997,153.63 CDN) and (x) gave its Notice of Intention to Enforce Security in accordance with Section 244 of Canada's Bankruptcy and Insolvency Act and (y) gave its notice of intention to sell assets pursuant to Section 63(4) of the Personal Property Security Act (Ontario) (the "PPSA").  All notices expired without redemption.[1]

8.      Pursuant to the provisions of the PPSA and a certain Agreement of Purchase and Sale and other related documents, 159 Ontario thereafter sold certain of the 166 Ontario assets to 208 Ontario for a purchase price of $1,617,031.60 CDN (the "Sale Transaction"), leaving a shortfall on the Loans of $380,122.03 CDN (the "Loan Shortfall").   Of that shortfall, $322,122.03 CDN was related to the Guaranteed Loan.

9.      Also as part of the Sale Transaction, 159 Ontario sold and assigned the Loan Shortfall, the Loan Guarantee and the Claim to 208 Ontario.

10.     On or about May 1, 2007, 208 Ontario filed and served its *Notice of Transfer of Claim Pursuant to FRBP Rule 3001(e)(2)* [Docket Nos. 7852 (notice) and 7854 (certificate of service)] (the "Transfer Notice"), evidencing the transfer of the Claim from 159 Ontario to 208 Ontario on the Debtors' register of claims.  No objections to the Transfer Notice were filed.

### The Debtors' Objection to the Claim

11.     On December 21, 2007, the Debtors filed Debtors' Twenty-Fourth Omnibus Claims Objection [Docket No. 1158], pursuant to which the Debtors objected to, *inter alia*, the

---

[1]      The Claim also includes an additional interest component.

Claim.  The sole basis asserted for the Debtors' objection to the Claim is that "the Debtors' books and records reflect that the asserted Claim was properly paid prior to the commencement of the Debtors' cases".  (See Debtors' Twenty-Fourth Omnibus Claims Objection [Docket No. 1158] at Page 14, Paragraph 30.)  The Debtors have, however, acknowledged the amount of the Claim in the amount of $297,095.72 (US) in previously filed pleading, but believe that the Claim was paid prior to the Petition Date.

12.     Notwithstanding Debtors' assertion that they previously paid the Claims, the Debtors have failed to provide **any** supporting information or documents evidencing that the Claim was paid prior to the commencement of the Debtors' cases.

13.     In contrast, 208 Ontario has provided the Debtors with documents and information that establish a right to payment in the amount asserted by 208 Ontario in the Claim, and that confirm that such Claim has not been paid.

14.     If a claimant alleges facts sufficient to support the claim, the claim is *prima facie* valid.  In re Allegheny Intern., Inc., 954 F.2d 167, 173-174 (3d Cir. 1992); In re Holm, 931 F.2d 620, 623 (9th Cir. 1991).  In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward.  Id. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim.  Id.  It is often said that the objector must produce evidence equal in force to the *prima facie* case. Id.; see also, In re Windsor Communications Group, Inc., 45 Bankr. 770, 773 (Bankr. E.D. Pa. 1985).

15.     Here, 208 Ontario has provided the Debtors with documents evidencing the validity of the Claim and that the Claim remains unpaid.  The Debtors, on the other hand, have

produced **no** evidence to contradict the *prima facie* validity of the Claim or to establish that the Claim <u>was</u> paid prior to the Petition Date.

16.     Accordingly, the relief requested by the Debtors in the Twenty-Fourth Omnibus Claims Objection [Docket No. 1158] as to the Claim should be denied by this Court.  In the alternative, the Court should provide 208 Ontario with the opportunity to obtain discovery as to the basis and supporting documents for the Debtors' Objection.  Thereafter, the matter should be set down for an evidentiary hearing in order to allow the parties to present evidence in support of their respective positions.

17.     <u>Memorandum Of Law</u>.  Because (i) the legal points and authorities upon which this Response relies are incorporated herein and (ii) the dispute between the parties appears to be factual in nature, 208 Ontario requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013(b) be deemed satisfied.

[Balance of page intentionally left blank.]

5

**WHEREFORE**, 208 Ontario requests the entry of an order (i) overruling the Debtors'

Twenty-Fourth Omnibus Claims Objection [Docket No. 1158] as to the Claim, (ii) allowing the

Claim in full, and (iii)  granting 208 Ontario such other and further relief as this Court deems

appropriate.

Dated: January 18, 2008
      Florham Park, NJ

                DAY PITNEY LLP

                By:<u>Richard M. Meth</u>
                RICHARD M. METH (R.M.-7791)
                 (MAIL TO)  P.O. BOX 1945, MORRISTOWN, NJ  07962-1945
                (DELIVERY TO) 200 CAMPUS DR., FLORHAM PK., NJ 07932-0950
                Telephone: (973) 966-6300
                Facsimile:  (973) 966-1015
                - and -
                7 Times Square
                New York, NY 10036-7311
                Email:      rmeth@daypitney.com

                    - *and* -

                CARSON FISCHER, P.L.C.
                Robert A. Weisberg (MI# P26698)
                Christopher A. Grosman (MI# P58693)
                4111 Andover Road
                West – 2nd Floor
                Bloomfield Hills, Michigan  48302
                (248) 644-4840 (telephone)
                (248) 644-1832 (facsimile)

                *Counsel for 2088343 Ontario Limited*

# **Exhibit A**

## **Duplicate Copy of Proof of Claim No. 4769**



Goldman Rosen LLP
Barristers
390 Bay Street
Box 3030, 30th Floor
Toronto, ON  M5H 2Y2
www.goldmanrosen.com

Steven H. Goldman
Direct Tel: (416) 867-9100
Fax. (416) 867-9091
email: shgold@goldmanrosen.com

April 21, 2006

Our File No.: 051933

**VIA COURIER**

United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY
10004-1409
U.S.A.

**Attention: Claims Processing Department – Delphi**

Dear Sir/Madam:

**Re:    1599963 Ontario Limited (Creditor) and Delphi Automotive Systems Inc. (Debtor)
United States Bankruptcy Court, Southern District of New York
Case No. 05-44481 (RDD)**

We are the solicitors for 1599963 Ontario Limited ("**159**"), which acquired the indebtedness of Carter Groupe, Inc. (formerly known as 1664560 Ontario Inc.) owing to Century Services Inc. Delphi Automotive Systems Inc. owes our client, 159, the sum of $349,524.38 CDN as of today's date under the terms of an equipment loan Limited Guarantee. We understand that the deadline for filing Proof of Claims is July 31, 2006.

**Background**

159 acquired the indebtedness and the security held by Century Services Inc. The security included a Limited Guarantee dated July, 2005, which was given by Delphi Automotive Systems LLC ("**Delphi**") in favour of Century Services Inc. The Limited Guarantee provided that Delphi would guarantee a term loan for the purchase of certain equipment to an amount not exceeding $350,000.00 CDN.

After the loan went into default, 159 sold the assets under its security which left a shortfall on the equipment loan of $322,000.00 CDN, as of December 12, 2005. Interest under the original equipment loan accrues at 24% per annum.

On December 19, 2005, our client verbally demanded payment under Delphi's Guarantee at a meeting with Delphi in Troy, Michigan.

On behalf of our client, we made a further written demand upon Delphi's Canadian legal counsel, Blake, Cassels & Graydon LLP on February 19, 2006, which resulted in a written response from Delphi's U.S. counsel Skadden, Arps, dated February 24, 2006.

Our client wishes to file a Proof of Claim for the amount outstanding under the Limited Guarantee against Delphi. Please note that all amounts are in Canadian dollars.

Enclosed please find:

1. Proof of Claim, with attached Schedule "A" (1 original, 1 copy);

2. Limited Guarantee, dated July 2005;

3. Memorandum of Agreement, dated December 12, 2005, pages 1, 2 and the signing pages. Please note that in paragraph 1 on page 2 of this Memorandum, there is reference to the shortfall on the equipment loan of $322,000.00 CDN. This is the subject matter of the Proof of Claim, enclosed, together with accrued interest at 24% per annum;

4. Demand letter, dated February 19, 2006, from Goldman Rosen LLP to Blake, Cassels & Graydon LLP;

5. Letter from Skadden, Arps, dated February 24, 2006.

A self-addressed envelope is enclosed in which to return an acknowledgment of the filing of our client's Proof of Claim.

Yours very truly,

GOLDMAN ROSEN LLP

Steven H. Goldman
SHG:jk
cc client
cc Robb English, Aird & Berlis
cc Jeffrey Spiegelman, Fogler Rubinoff LLP
Enclosures

M:\2005 Client Files\051933\Correspondence\U.S. Bankruptcy Court ltr.wpd

| United States Bankruptcy Court  Southern  District Of  New York | PROOF OF CLAIM |
|---|---|

| Nam:   Debtor
Delphi Automotive Systems LLC | Case Number
05-44481   (RDD) | This Space For Court Use Only |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

1599963 Ontario Limited

Name and Address where notices should be sent:

Goldman Rosen LLP
390 Bay Street, 30th Floor
Box 3030
Toronto, Ontario, Canada   M5H 2Y2
Attention:  Steven Goldman
Telephone Number. (416) 867-9100

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Last four digits of account or other number by which creditor identifies debtor.

Check here ☐ replaces
if this claim ☐ amends  a previously filed claim dated: _____

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other Equipment Loan Guarantee

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of your SS #: _____
  Unpaid compensation for services performed
  from _____ to _____
  (date)          (date)

**2. Date debt was incurred:**
July 2005

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

Unsecured Nonpriority Claim $ 349,524.38 CDN

☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**
☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority

Amount entitled to priority $ _____

Specify the priority of the claim:
- ☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other _____

Value of Collateral $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $ 349,524.38 CDN _____ _____ $349,524.38 CDN
(Unsecured)   (Secured)   (Priority)   (Total)

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

This Space For Court Use Only

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

Date:
April 21/06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Steven Goldman c/o Goldman Rosen LLP (Solicitors)

Penalty for presenting fraudulent claim: Fine up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

SCHEDULE "A"

DELPHI AUTOMOTIVE SYSTEMS LLC (Debtor) and
1599963 ONTARIO LIMITED (Creditor)

**(Amount x Rate/365) x (End Date - Begin Date)**

How much is claimed?    $322,000.00
When did interest start?   December 12, 2005
When did interest end?    April 21, 2006
What is the interest rate? 24% per annum

The days between dates is **130**
The daily interest rate is **211.73**
The amount of interest is **$27,524.38**

($322,000.00/365) x 130 days = **$27,524.38**

| | |
|---|---|
| Amount of Claim | $322,000.00 |
| Interest | $27,524.38 |
| **Total Claimed** | **$349,524.38** |

04/17/2006 12:52 FAX 9057708942          OTOPOLINSKI                    @002/012

## LIMITED GUARANTEE

TO:    **Century Services Inc.**
       **8 Steelcase Road West**
       **Markham, Ontario**

       **Attention:**   **Nick Mourant**
       **Facsimile:**   **(905) 513-1319**

RECITALS:

A.          **1664560 Ontario Inc.** (the "**Debtor**") is indebted or liable or may become indebted or liable to **Century Services Inc.** (the "**Creditor**"); and

B.          It is in the interests of **Delphi Automotive Systems LLC** (the "**Guarantor**") that the Creditor extend credit (or continue to extend credit) to the Debtor and therefore the Guarantor is prepared to issue this Guarantee to the Creditor;

            For valuable consideration, the receipt and sufficiency of which are hereby conclusively acknowledged by the Guarantor, the Guarantor hereby agrees in favour of the Creditor as follows:

1.          The Guarantor hereby unconditionally and irrevocably guarantees, as a primary obligor and not merely as a surety, the prompt payment and performance to the Creditor, forthwith upon demand by the Creditor, of the indebtedness, liabilities and obligations of the Debtor to the Creditor pursuant to a term loan in the amount of CAD $800,000 pursuant to a certain loan agreement among, *inter alia*, the Debtor and the Creditor as the same may be amended, restated or supplemented from time to time (collectively, the "**Obligations**"); provided, however, that:

(a)         the liability of the Guarantor under this Guarantee will be limited to an amount not exceeding CAD $350,000; and

(b)         notwithstanding any other provision of this Guarantee, such limited amount shall be reduced by CAD $0.4375 for every Canadian dollar of the Obligations repaid by the Debtor to the Creditor in respect of a reduction of the principal amount of the Obligations but, for greater certainty, such limited amount shall not be reduced by or in respect of:

(i)         any amounts paid by the Guarantor to the Creditor pursuant to the terms of the Access and Security Agreement between the Guarantor and the Debtor dated July 22, 2005; or

Doc#438242v4

    (ii)    any amounts paid by Halla Climate Control Canada Inc. ("Halla") to the Creditor pursuant to the terms of the Access and Security Agreement between Halla and the Debtor dated July 22, 2005.

All amounts payable by the Guarantor hereunder will be paid to the Creditor at the address of the Creditor shown above or as otherwise directed in writing by the Creditor. Any amounts payable by the Guarantor under this Guarantee which are not paid forthwith upon demand therefor by the Creditor will bear interest from the date of such demand at the rate or rates applicable to the corresponding Obligations. Notwithstanding any other provision of this Guarantee, the Creditor shall not be entitled to exercise its remedies pursuant to this Guarantee until:

(a)    at least ninety days have elapsed from the Creditor making demand for payment upon the Debtor; and

(b)    the Creditor having initiated enforcement proceedings against the Debtor or a receiver having been appointed over the assets and property of the Debtor.

2.  The obligations of the Guarantor under this Guarantee are continuing, unconditional and absolute and, without limiting the generality of the foregoing, will not be released, discharged, diminished, limited or otherwise affected by (and the Guarantor hereby waives, to the fullest extent permitted by applicable law): (a) any extension, other indulgence, renewal, settlement, discharge, compromise, waiver, subordination or release in respect of any Obligation, security, person or otherwise; (b) any modification or amendment of or supplement to the Obligations, including any increase or decrease in the principal, the rates of interest or other amounts payable thereunder; (c) any release, non-perfection or invalidity of any direct or indirect security for any Obligation other than as a result of gross negligence, willful misconduct or illegal acts of the Creditor; (d) any change in the existence, structure, constitution, name, objects, powers, business, control or ownership of the Debtor or any other person, or any insolvency, bankruptcy, reorganization or other similar proceeding affecting the Debtor or any other person or its assets; (e) the existence of any claim, set-off or other rights which the Guarantor may have at any time against the Debtor, the Creditor, or any other person, whether in connection herewith or any unrelated transactions; (f) any invalidity, illegality or unenforceability relating to or against the Debtor or any provision of applicable law or regulation purporting to prohibit the payment by the Debtor of the principal or interest under the Obligations; (g) any limitation, postponement, prohibition, subordination or other restriction on the rights of the Creditor to payment of the Obligations; (h) any release, substitution or addition of any co-signer, endorser or other guarantor of the Obligations; (i) any defence arising by reason of any failure of the Creditor to make any presentment, demand for performance, notice of non-performance, protest, and any other notice, including notice of all of the following:  acceptance of this Guarantee, partial payment or non-payment of all or any part of the Obligations and the existence, creation, or incurring of new or additional Obligations; (j) any defence arising by reason of any failure of the Creditor to proceed against the Debtor or any other person, to proceed against, apply or exhaust any security held from the Debtor or any other person for the Obligations, to proceed against, apply or exhaust any security held from the Guarantor or any other person for this Guarantee or to pursue any other remedy in the power of the Creditor whatsoever; (k) Subject to Section 1(b), any defence arising by reason of any incapacity, lack of authority, or other defence of the Debtor

or any other person, or by reason of any limitation (exclusive of any limitation imposed by the *Limitations Act, 2002* (Ontario)), postponement, prohibition on the Creditor's right to payment of the Obligations or any part thereof, or by reason of the cessation from any cause whatsoever of the liability of the Debtor or any other person with respect to all or any part of the Obligations, or by reason of any act or omission of the Creditor or others which directly or indirectly results in the discharge or release of the Debtor or any other person or all or any part of the Obligations or any security or guarantee therefor, whether by contract, operation of law or otherwise other than as a result of gross negligence, willful misconduct or illegal acts of the Creditor; (l) other than as a result of gross negligence, willful misconduct or illegal acts of the Creditor, any defence arising by reason of any failure by the Creditor to obtain, perfect or maintain a perfected or prior (or any) security interest in or lien or encumbrance upon any property of the Debtor or any other person, or by reason of any interest of the Creditor in any property, whether as owner thereof or the holder of a security interest therein or lien or encumbrance thereon, being invalidated, voided, declared fraudulent or preferential or otherwise set aside, or by reason of any impairment by the Creditor of any right to recourse or collateral ; (m) any defect in any notice that may be given in connection with any sale or other disposition of any sale or other disposition of any property securing any or all of the Obligations or any guarantee thereof; (n) any dealing whatsoever with the Debtor or other person or any security or any failure to do so; (o) any defence based upon or arising out of any bankruptcy, insolvency, reorganization, moratorium, arrangement, readjustment of debt, liquidation or dissolution proceeding commenced by or against the Debtor or any other person, including any discharge of, or bar against collecting, any of the Obligations, in or as a result of any such proceeding; or (p) any other act or omission to act or delay of any kind by the Debtor, the Creditor, or any other person or any other circumstance whatsoever, whether similar or dissimilar to the foregoing, which might, but for the provisions of this Section 2, constitute a legal or equitable discharge, limitation or reduction of the Guarantor's obligations hereunder (other than the payment or extinguishment in full of all of the Obligations).

3.     The Creditor is entitled to assume, notwithstanding any investigation by or on behalf of the Creditor, the power of the Debtor and the Guarantor and the authority of the officers, directors or agents acting or purporting to act on behalf of the Debtor or the Guarantor, and any Obligations made or created in reliance upon the exercise of such power or authority will be guaranteed hereunder in accordance with Section 1.

4.     Subject to Section 1, the Creditor is not required to exhaust its recourse against the Debtor or others or under any other security or guarantee before being entitled to payment from the Guarantor under this Guarantee.

5.     Any account settled or stated between the Creditor and the Debtor will be accepted by the Guarantor as *prima facie* evidence that the amount thereby appearing due by the Debtor to the Creditor is so due subject to the reasonable right of the Guarantor to review such amount.

6.     No delay on the part of the Creditor in exercising any of its options, powers or rights, or partial or single exercise thereof, will constitute a waiver thereof. No waiver of any of its rights hereunder, and no modification or amendment of this Guarantee, will be deemed to be made by the Creditor unless the same will be in writing, duly signed on behalf of the Creditor, and each

such waiver, if any, will apply only with respect to the specific instance involved, and will in no way impair the rights of the Creditor or the liabilities of the Guarantor to the Creditor in any other respect at any other time.

7.    All moneys and credits in fact borrowed or obtained by the Debtor from the Creditor, will be deemed to form part of the Obligations notwithstanding any incapacity, disability or lack or limitation of status or power of the Debtor or of the directors, officers, employees, partners or agents thereof, or that the Debtor may not be a legal entity, or any irregularity, defect or informality in the borrowing or obtaining of such moneys or credits. Any amount which may not be recoverable from the Guarantor by the Creditor on the basis of a guarantee will be recoverable by the Creditor from the Guarantor as principal debtor in respect thereof and will be paid to the Creditor forthwith after demand therefor as herein provided.

8.    If acceleration of the time for payment of any amount payable by the Debtor in respect of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Debtor or any moratorium affecting the payment of the Obligations, all such amounts otherwise subject to acceleration will nonetheless be payable by the Guarantor hereunder forthwith on demand by the Creditor.

9.    If, at any time, all or any part of any payment previously applied by the Creditor to any Obligation is or must be rescinded or returned by the Creditor for any reason whatsoever (including, without limitation, the insolvency, bankruptcy, or reorganization of the Debtor), such Obligation will, for the purpose of this Guarantee, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by the Creditor, and this Guarantee will continue to be effective or be reinstated, as the case may be, as to such Obligation, all as though such application by the Creditor had not been made. This section shall not apply to payments made to the Creditor by the Guarantor in respect of this Guarantee which have not been be rescinded or required to be returned by the Creditor for any reason whatsoever.

10.    Notwithstanding any payment made by the Guarantor under this Guarantee or any setoff or application of funds of the Guarantor by the Creditor, the Guarantor will have no right of subrogation to, and waives, to the fullest extent permitted by law, any right to enforce any remedy which the Creditor now has or may hereafter have against the Debtor, until all of the Obligations have been indefeasibly paid in full; and until that time, the Guarantor waives any benefit of, and any right to participate in, any security, whether real or personal property, now or hereafter held by the Creditor for the Obligations.

11.    If, after the date that demand for payment of the Obligations has been made on the Debtor by the Guarantor, the Creditor receives from the Guarantor a payment or payments in full or on account of the liability of the Guarantor hereunder, the Guarantor will not be entitled to claim repayment against the Debtor until the Creditor's claims against the Debtor in respect of the Obligations have been paid in full. In case of liquidation, winding up or bankruptcy of the Debtor (whether voluntary or involuntary) or if the Debtor will make a bulk sale of any of its assets within the bulk transfer provisions of any applicable legislation or any composition with creditors or scheme of arrangement, the Creditor will have the right to rank for its full claims and

receive all dividends or other payments in respect thereof in priority to the Guarantor until the claims of the Creditor in respect of the Obligations have been paid in full, and the Guarantor will continue liable hereunder for any balance which may be owing to the Creditor by the Debtor subject to the limitations set out in this Guarantee. In the event of the valuation by the Creditor of any of its security and/or the retention thereof by the Creditor, such valuation and/or retention will not, as between the Creditor and the Guarantor, be considered as a purchase of such security, or as payment or satisfaction or reduction of the Obligations or any part thereof. The foregoing provisions of this Section 11 will not in any way limit or lessen the liability of the Guarantor under any other Section of this Guarantee.

12.    The Guarantor will make payment relative to each Obligation in the currency (the "**Original Currency**") in which the Debtor is required to pay such Obligation. If the Guarantor makes payment relative to any Obligation to the Creditor in a currency (the "**Other Currency**") other than the Original Currency (whether voluntarily or pursuant to an order or judgment of a court or tribunal of any jurisdiction), such payment will constitute a discharge of the liability of the Guarantor hereunder in respect of such Obligation only to the extent of the amount of the Original Currency which the Creditor is able to purchase at Toronto, Ontario with the amount it receives on the date of receipt. If the amount of the Original Currency which the Creditor is able to purchase is less than the amount of such currency originally due to it in respect to the relevant Obligation, the Guarantor will indemnify and save the Creditor harmless from and against any loss or damage arising as a result of such deficiency.  This indemnity will constitute an obligation separate and independent from the other obligations contained in this Guarantee, will give rise to a separate and independent cause of action, will apply irrespective of any indulgence granted by the Creditor and will continue in full force and effect notwithstanding any judgment or order in respect of any amount due hereunder or under any judgment or order.

13.    All payments to be made by the Guarantor hereunder will be made without set-off or counterclaim and without deduction for any taxes, levies, duties, fees, deductions, withholdings, restrictions or conditions of any nature whatsoever. If at any time any applicable law, regulation or international agreement requires the Guarantor to make any such deduction or withholding from any such payment, the sum due from the Guarantor with respect to such payment will be increased to the extent necessary to ensure that, after the making of such deduction or withholding, the Creditor receives a net sum equal to the sum which it would have received had no deduction or withholding been required.

14.    The Guarantor will pay on demand, and will indemnify and save the Creditor harmless from, any and all liabilities, costs and expenses (including legal fees and expenses on a solicitor and own client basis and any sales, goods and services or other similar taxes payable to any governmental authority with respect to any such liabilities, costs and expenses) (a) incurred by the Creditor in the enforcement of this Guarantee, (b) with respect to, or resulting from, any failure or delay by the Guarantor in performing or observing any of its obligations under this Guarantee, or (c) incurred by the Creditor in performing or observing any of the other covenants of the Guarantor under this Guarantee.

04/17/2006 12:56 FAX  8057708942          DTOPOLINSKI                         @007/012

15.   This Guarantee is in addition and without prejudice to any security of any kind (including other guarantees) now or hereafter held by the Creditor and any other rights or remedies that the Creditor might have.

16.   The Guarantor authorizes the Creditor to provide a copy of this Guarantee and such other information as may be requested of the Creditor by persons entitled thereto pursuant to any applicable legislation, and otherwise with the consent of the Debtor.

17.   This Guarantee will be governed by and construed in accordance with the laws of the Province of Ontario. Without prejudice to the ability of the Creditor to enforce this Guarantee in any other proper jurisdiction, the Guarantor irrevocably submits and attorns to the non-exclusive jurisdiction of the courts of such province. To the extent permitted by applicable law, the Guarantor irrevocably waives any objection (including any claim of inconvenient forum) that it may now or hereafter have to the venue of any legal proceeding arising out of or relating to this Guarantee in the courts of such Province.

18.   This Guarantee will extend and enure to the benefit of the Creditor and its successors and assigns and will be binding upon the Guarantor and its successors. The Guarantor's obligations hereunder will not be assigned or delegated without the prior consent of the Creditor acting in a commercially reasonable manner. The Creditor may from time to time, without the consent of the Guarantor, assign or transfer all or any of the Obligations or any interest therein provided, however, that the Guarantor shall be provided with 7 days written notice of the Creditor's intention to enter into an agreement or otherwise for such assignment or transfer and provided further that the Guarantor shall have 7 days to avail itself to its rights pursuant to Section 26 hereof after which the Creditor shall be entitled to pursue any such assignment or transfer without further notice to or consent by the Guarantor; and, notwithstanding any such assignment or transfer or any subsequent assignment or transfer thereof, any such Obligation or part thereof so transferred or assigned will remain an "Obligation" for the purposes of this Guarantee and any immediate and successive assignee or transferee of any Obligation or any interest therein will, to the extent of the interest so assigned or transferred, be entitled to the benefit of, and the right to enforce, this Guarantee to the same extent as if such person were the Creditor.

19.   Time is of the essence with respect to this Guarantee and the time for performance of the obligations of the Guarantor under this Guarantee may be strictly enforced by the Creditor.

20.   If any provision of this Guarantee is determined to be illegal, unconscionable or unenforceable, all other terms and provisions hereof will nevertheless remain effective and will be enforced to the fullest extent permitted by law.

21.   Any communication required or permitted to be given under this Guarantee will be in writing and will be effectively given if (i) delivered personally, (ii) sent by prepaid courier service or mail, or (iii) sent prepaid by facsimile transmission or other similar means of electronic communication, in each case to the address or facsimile number of the Guarantor or Creditor set out in this Guarantee. Any communication so given will be deemed to have been given and to have been received on the day of delivery if so delivered, or on the day of facsimile transmission or sending by other means of recorded electronic communication provided that such

04/17/2006 12:56 FAX  9057708942          OTOPOLINSKI                          @008/012

day is a business day and the communication is so delivered or sent prior to 4:30 p.m. (local time at the place of receipt). Otherwise, such communication will be deemed to have been given and to have been received on the following business day. Any communication sent by mail will be deemed to have been given and to have been received on the fifth business day following mailing, provided that no disruption of postal service is in effect. The Guarantor and the Creditor may from time to time change their respective addresses or facsimile numbers for notice by giving notice to the other in accordance with the provisions of this Section.

22.     The Guarantor represents and warrants to the Creditor, upon each of which representations and warranties the Creditor specifically relies, as follows:

(1)     Good Standing, etc. The Guarantor is a company duly formed under the laws of its jurisdiction of formation. The Guarantor is validly subsisting under the laws of its jurisdiction of formation and is duly authorized and licensed to own its properties and to carry on its businesses as presently owned and carried on by it. The Guarantor has the necessary power and authority to enter into and perform its obligations hereunder.

(2)     Burdensome Provisions, etc. The Guarantor is not a party to any agreement or instrument, or subject to any corporate restriction or any judgment, order, writ, injunction, decree, award, rule or regulation, which materially adversely affects or, to the best of its knowledge, in the future is likely to materially and adversely affect, its ability to issue the Guarantee or to perform its obligations under this Guarantee.

(3)     Consents. No consent, approval or authorization of, or declaration, registration, filing or qualification with, or giving of notice to, or taking of any other action, in respect of, any person, governmental authority or agency is required on the part of the Guarantor in connection with the execution and delivery and enforcement of this Guarantee.

(4)     Due Execution, etc. This Guarantee has been duly executed and delivered by or on behalf of the Guarantor and constitutes a valid and binding obligation of the Guarantor enforceable in accordance with its terms, except as enforceability may be limited by any bankruptcy, insolvency, reorganization, moratorium, or similar laws affecting the enforcement of creditors' rights generally and by general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(5)     No Default, etc. Neither the execution nor the delivery of this Guarantee, the consummation of the transactions herein contemplated, nor compliance with the terms, conditions and provisions hereof conflicts with or will conflict with, or results or will result in, any breach of, or constitutes a default under any of the provisions of, the constating documents of the Guarantor or of any agreement or instrument to which the Guarantor is a party or by which the Guarantor, or any of its property or assets are bound or (except as contemplated by this Guarantee) results or will result in the creation or imposition of any encumbrance upon any of the properties or assets of the Guarantor or results or will result in the contravention of any law or rule or regulation to which the Guarantor or its property or assets are subject and as a consequence of which the ability of the Guarantor to perform its obligations under this Guarantee is or would likely be adversely affected.

23.    The Guarantor is fully aware of the financial condition of the Debtor.

24.    Unless otherwise expressly provided in this Guarantee, if any matter in this Guarantee is subject to the consent or approval of the Creditor or is to be acceptable to the Creditor, such consent, approval or determination of acceptability will be in the sole discretion of the Creditor acting in a commercially reasonable manner.  If any provision in this Guarantee refers to any action taken or to be taken by the Guarantor, or which the Guarantor is prohibited from taking, such provision will be interpreted to include any and all means, direct or indirect, of taking, or not taking, such action.  The division of this Guarantee into sections and paragraphs, and the insertion of headings, is for convenience of reference only and will not affect the construction or interpretation of this Guarantee.  Unless the context otherwise requires, words importing the singular include the plural and vice versa, and words importing gender include all genders.  When used in this Guarantee, the word "including" (or includes) means "including (or includes) without limitation".  Any reference in this Guarantee to a "Section" means the relevant Section of this Guarantee.  If more than one person executes this Guarantee, their obligations under this Guarantee are joint and several.  Any reference in this Guarantee to a "person" will be deemed to include an individual, corporation, partnership, trust, unincorporated organization, government and the heirs, executors, administrators or other legal representatives of an individual.  Any reference to a "business day" will be deemed to include any day which is not a Saturday, Sunday or a statutory holiday in the jurisdiction referred to in the "Governing Law; Attornment" Section of this Guarantee.

25.    The Guarantor acknowledges receipt of an executed copy of this Guarantee.

26.    Provided permitted by law, the Guarantor shall have the right to purchase the Obligations from the Creditor together with an assignment of the security interest held by the Creditor in respect of the equipment previously leased by CIBC Equipment Finance Limited to Carter Group Canada Inc. at a price equal to the amount then outstanding under the Obligations (without discount of any kind unless otherwise agreed to between the Creditor and the Guarantor each in their sole and unfettered discretion) plus:

    (a)    all applicable taxes thereon;

    (b)    all interest accrued thereon in accordance with the documentation governing the Obligations; and

    (c)    all fees and costs accrued in connection therewith and in accordance with the documentation governing the Obligations;

on an "as is, where is" without any representation or warranty of any kind.

27.    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute one and the same instrument.  Counterparts may be executed either in original or faxed form and the

parties adopt any signatures received by a receiving fax machine as original signatures of the
parties.

Dated: July       , 2005

Address:                           **DELPHI AUTOMOTIVE SYSTEMS LLC**
5725 Delphi Drive
Troy Michigan
48098                              By: _____
                                   Name: Pam Geller
                                   Title: Treasurer


                                   **CENTURY SERVICES INC.**

                                   By: _____
                                   Name:
                                   Title:

Doc#438242v4

04/17/2006 12:58 FAX  9057708942          OTOPOLINSKI                          012/012

07/18/2005  12:08   248-813-3981          DELPHI TREASURY                  PAGE  32/42

Dated: July     , 2005

Address:
5725 Delphi Drive
Troy Michigan
48098

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By: _____
Name: John Arle
Title: Treasurer


**CENTURY SERVICES INC.**

By:_____
Name:
Title:

# AIRD & BERLIS LLP

Barristers and Solicitors

## MEMORANDUM OF AGREEMENT

**DATE:**    December 12, 2005

**RE:**    Sale of assets by 1599963 Ontario Limited to 2088343 Ontario Limited

This memorandum, once signed, will be binding on the parties with the intent to forthwith complete and sign all formal documentation as reasonably requested by any party. We all understood that there would be some additional details that would emerge and would need to be worked out, but the essential terms of the proposed resolution are intended to be set out in this memorandum, and it is recognized by all parties that this proposed resolution needs to be implemented immediately if it is to have any value.

### Summary of Current Parties and Status

The lender is 1599963 Ontario Limited ("159" or "Lender") of which the principal is Dean Topolinski ("Dean"). The borrower is Carter Groupe, Inc. ("CG", or the "Borrower"). Monika Scharnweber-Carter ("Monika") is a principal shareholder and President of Carter Groupe, Inc., and Butch Carter ("Butch") is a Guarantor (the "Guarantor"). Roch Cousineau ("Roch") is the President of 2088343 Ontario Limited ("NoCo").

159 acquired the indebtedness of CG to Century Services Inc. and the security held by Century Services Inc. The indebtedness consists of a factoring facility, an inventory loan, which is in essence the operating facility, and an equipment facility, which is in essence the term loan. The aggregate indebtedness from CG to 159 under the three facilities is as of 12 PM on December 12, 2005 is $1,997,153.63 CDN inclusive of costs and accrued interest (the "Loan") The Loan includes, inter alia, an equipment loan of $792,000.00 CDN. 159 has provided a written statement of this indebtedness and supporting documents and CG has accepted same and the loan amount is accurately stated above. For greater clarity the Loan amount (and after closing the Loan Shortfall) will be adjusted for any payments or recoveries received, including but not restricted to receipts from recoveries of expenses or under any guarantee held from any customer of CG. 159 holds a General Security Agreement over the assets and undertaking of CG and certain guarantee(s) provided by CG's customers; and Butch has guaranteed the Loan, securing his Guarantee by collateral mortgages on residential properties in Florida (the "Florida Property") and at 99 Harbour Square in Toronto ('99 Harbour'). As well Carter Group, Inc. a Florida Corporation ("CG Florida") has given a guarantee and an IP pledge agreement.

159 has demanded repayment of all loan facilities, has given its Notice of Intention to Enforce Security in accordance with Section 244 of the Bankruptcy and Insolvency Act and has given its notice of intention to sell assets pursuant to Section 63(4) of the PPSA. All such notices have expired without redemption. Currently no other secured creditor has given any such notice.

The parties have discussed the potential of a sale of CG under the security held by 159 to 2088343 Ontario Limited ("NoCo") being a company of which Valad Investments Inc. ("Valad") is

- 2 -

the principal and will own 2,000,000 common shares and Butch or his nominee will own one common share subject to a shareholders agreement and escrow agreement with respect to all shares described below. NoCo will authorize a Super-Voting share with attributes as may be required by Butch, but such share will not be issued until after a redemption occurs as hereafter described.

## Structure of Transaction and Suggested Documentation

1. 159 will sell the assets and undertaking of CG to NoCo or its agreed nominee for the amount of $1,617,031.60 CDN and as additional consideration, a guarantee of NoCo to 159 for the difference between the Loan and the sale price of the assets being $380,122.03 CDN (the "Loan Shortfall") exercisable by 159 on or after February 28, 2006. $470,000.00 CDN of the sale proceeds will be allocated to the equipment loan ← leaving a shortfall on such equipment loan of $322,000.00 CDN. 159 will demand payment of the equipment loan shortfall under all applicable customer guarantees and any payment under such guarantees will reduce the loan shortfall amount. Payment on the Customers' guarantees will similarly reduce the NoCo guarantee. After February 27, 2006, 159 may assign the indebtedness of NoCo for its guarantee of the Loan Shortfall to New Lender, and all parties agree that the indebtedness so assigned shall be secured by the security held by the New Lender. Upon any such assignment, 159 will assign to NoCo the benefit of any remaining customer guarantees. All parties agree that any liability of NoCo for the Loan Shortfall shall not be treated as a loss or reduction of income for purpose of calculating Net Income after Taxes under paragraph 13(c) below.

2. Immediately prior to the sale by 159 to NoCo, CG will repurchase the accounts receivable of CG from 159 in order to vest all accounts receivable in CG and therefore permit such accounts to be sold subject to the 159 security. Essentially this involves using the inventory loan facility to repay the factoring loan facility. so that all facilities are in loan amounts rather than factored amounts, and this will occur in conjunction with, but notionally prior to the closing of the sale by 159 to NoCo.

3. The purchase price by NoCo of the assets of CG on the sale under security by 159 will be made up of $200,000.00 CDN in cash with a balance consisting of a new loan from 2088342 Ontario Limited ("New Lender") to NoCo.

4. The loan from New Lender to NoCo will be secured by a General Security Agreement on the assets of NoCo and will accrue interest at the rate of 24% per annum calculated monthly in advance, save and except that interest for the first 3 months of such loan will accrue, but only one half of such interest will be paid during those months, the balance of such interest (without interest thereon) to fall due on December 31, 2006. The entire balance of such loan will fall due on January 15, 2007, or on an event of default as will be specified in the Promissory Note, unless earlier re-paid.

5. The $200,000.00 CDN in cash toward the closing will be provided by Valad or its nominee company and will be secured by a Promissory Note and Security Agreement from NoCo to Valad ranking subordinate to New Lender security. The Promissory Note to Valad from NoCo will not bear interest prior to January 15, 2007.

6. Butch will guarantee both the Loan by New Lender to NoCo and will guarantee to 159 the Loan Shortfall, and NoCo's guarantee of such Loan Shortfall to an aggregate limit of

- 8 -

Basketball, Lacrosse and Concerts (including Playoff games).   If no such agreement is reached, a draw will be used to determine the allocation of events.

(d)   That Butch and Carter Group will request to MLSEL that 159 or its nominee be granted an assignment and subletting right equivalent to 50% of the events at the ACC Box per clause 11 of the ACC Agreement.

(e)   The conditions of resale of the events for the suite are to be agreed upon at a later date, failing which, paragraph 18 will govern.

25.   Butch or his nominee shall be granted by NoCo or its successors or assigns the exclusive right to sell NoCo's Linear Power Module (LPM) products for service and replacement parts (after-market parts) to NoCo's customers for five (5) years with an option for a further five (5) years (the "Exclusive Right"). For greater clarity, the after-market parts excludes any parts purchased by Original Equipment Manufacturers (OEMs) or Tier One Suppliers in the course of building new assemblies or vehicles, in part or in whole, in assembly plants. Under this Exclusive Right, NoCo or its successors or assigns will manufacture the parts or contract the parts to be manufactured; should NoCo or its successors or assigns elect not to manufacture or have the parts manufactured, NoCo or its successors or assigns will grant to Butch or his nominee, at no cost, the right to manufacture the parts or have the parts manufactured for Butch or his nominee. NoCo or its successors or assigns will sell replacement parts to Butch or his nominee at a price not to exceed two times the then current selling price(s) for same LPM products by NoCo or its successors or assigns to its customers. By way of example, if the unit price that NoCo or its successors or assigns sells a unit to its customers is $8.00 US per unit, the price charged to Butch or his nominee will not exceed $16.00 US per unit. This Exclusive Right will be terminated if the annual volume of units of NoCo LPM products, per calendar year, purchased by Carter or his nominee from NoCo or its successors or assigns does not exceed 10,000 units for the first year and 30,000 units/year thereafter.

Each party confirms and acknowledges that is has received independent legal advice before signing this memorandum of agreement.

Dated at Toronto this 12th day of December, 2005.

1599963 Ontario Limited

Per:

Dean Topolinski
I have the authority to bind the Corporation

CARTER GROUP     4162092552                    PAGE  01
12/12/2005 20:35 FAX  5057708842          DTOPSLINSKI                          p. 1
                                                                        008/010

- 9 -

Valad Investments Inc.

Per:

Roch Cousineau
I have the authority to bind the Corporation

2088343 Ontario Limited

Per:

Roch Cousineau
I have the authority to bind the Corporation

2088342 Ontario Limited

Per:

Dean Topolinski
I have the authority to bind the Corporation

SIGNED, SEALED AND DELIVERED          )
in the presence of                    )
                                      )
                                      )
                                      )
Name  Nicole Cavanagh                 )   Butch Carter
                                          Butch Carter

SIGNED, SEALED AND DELIVERED          )
in the presence of                    )
                                      )
                                      )
Name  HELGA SCHARNWEBER               )   Monika Scharnweber-Carter

- 10 -

Carter Groupe, Inc.

Per: _____
Monika Scharnweber-Carter
I have the authority to bind the Corporation

Carter Group, Inc.
a Florida Corporation

Per: _____
Butch Carter
I have the authority to bind the Corporation

Carter Group Inc.
a Delaware Corporation

Per: _____
Butch Carter
I have the authority to bind the Corporation

Carter Group

Per: _____
Butch Carter
I have the authority to bind the Corporation