| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | BAKER & MCKENZIE LLP |
| 333 West Wacker Drive, Suite 2100 | 815 Connecticut Avenue, N.W. |
| Chicago, Illinois 60606 | Washington, D.C. 20006-4078 |
| (312) 407-0700 | (202) 452-7080 |
| John Wm. Butler, Jr. | Mary B. Hevener |
| John K. Lyons | Thomas M. Cryan, Jr. |
| Ron E. Meisler | |

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC, Plaintiffs

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re                                  :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,       :    Case No. 05-44481 (RDD)
                                        :
                    Debtors.     :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DELPHI CORPORATION,                 :
DELPHI AUTOMOTIVE SYSTEMS LLC,  :
AND DELPHI AUTOMOTIVE SYSTEMS   :
SERVICES LLC,                            :    Adversary Proceeding
                                        :    No. 07-_____
                  Plaintiffs,     :
                                        :
          - against -                     :
                                        :
UNITED STATES OF AMERICA,        :
                                        :
                  Defendant.     :
                                        ::
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COMPLAINT TO RECOVER PROPERTY OF ESTATES

Delphi Corporation , Delphi Automotive Systems LLC, and Delphi Automotive Systems Services LLC , debtors-in-possession, the plaintiffs herein (together, the "Plaintiffs"), by their undersigned counsel, as and for their complaint (the "Complaint") against the United States of America (the "Defendant"), allege the following on knowledge as to themselves and their own acts and otherwise upon information and belief:

PRELIMINARY STATEMENT

1.      Plaintiffs bring this adversary proceeding (the "Adversary Proceeding") under sections 105, 505, 541, and 542 of the Bankruptcy Code, Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), for an order and judgment of this Court directing the return of $26,058,130 in overpayments of Federal Insurance Contributions Act taxes ("FICA" or "employment taxes") and related interest, or such amount as is legally recoverable.  The employment taxes relate to payments made by Plaintiffs to certain union members upon ratification of collective bargaining agreements in 1999 and 2003.

PARTIES

2.      Plaintiff Delphi Corporation ("Delphi") (E.I.N. 38-3430473) is a Delaware corporation with a principal place of business in Troy, Michigan.

3.      Delco Electronics Corporation (E.I.N. 38-2633811) was a subsidiary of Delphi, with its principal place of business in Troy, Michigan.  Delco Electronics Corporation was converted to Delco Electronics LLC (together with Delco Electronics Corporation, "Delco") as of December 31, 2003 and was dissolved on September 30, 2005, with its assets and liabilities

transferring to its single member, Plaintiff Delphi Automotive Systems LLC, an entity disregarded from Delphi Corporation for U.S. federal tax purposes.

        4.        Plaintiff Delphi Automotive Systems Services LLC ("DASS") (E.I.N. 38-3568834) is a limited liability company whose members are all wholly owned by Delphi, is a partnership for U.S. federal tax purposes, and has its principal place of business in Troy, Michigan.

        5.        Defendant is the United States of America.

## JURISDICTION AND VENUE

        6.        This Court has jurisdiction over this Adversary Proceeding in accordance with 28 U.S.C. §§ 157(b)(1) and 1334(b) and 26 U.S.C.§§ 6532 and 7422. This Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). To the extent the Court determines that any claim asserted herein is not core, Plaintiffs hereby consent to the entry of a final order and judgment by the Court.

        7.        Venue is proper under 28 U.S.C. §§ 1408 and 1409.

        8.        The statutory predicates for the relief requested herein are sections 105, 505, 541, and 542 of the Bankruptcy Code and Bankruptcy Rule 7001(1).

## STATEMENT OF FACTS

The Chapter 11 Cases

        9.        On October 8 and 14, 2005, Delphi and other above-captioned debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. This Court has ordered joint administration of these cases.

3

10.   No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

11.   On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 11388) (the "Disclosure Statement") and this Court entered an order approving the adequacy of the Disclosure Statement and granting a related solicitation procedures motion (Docket No. 11389).  No order confirming the Plan has yet been entered by this Court.

Plaintiffs' Overpayment Of FICA Taxes

    Revenue Ruling 58-145

12.   Nearly 50 years ago, the Internal Revenue Service ("IRS") issued a ruling that an employer's payment made to an individual solely for signing an employment contract, and not conditioned on the performance of future services or continued employment, did not constitute "wages."  Rev. Rul. 58-145, 1958-1 C.B. 360.  The IRS's rationale was that such a payment did not constitute compensation for the individual's services rendered to the employer, but instead constituted a payment for the promise made by the individual to be bound by the contract.

13.   Revenue rulings such as Revenue Ruling 58-145 "are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that

4

purpose." Rev. Proc. 89-14 at § 7.01(4). Taxpayers such as Plaintiffs were entitled to rely on the IRS's published position in Revenue Ruling 58-145.

### The 1999 Agreement

14. On September 16, 1999, representatives of the automaker industry and the UAW reached a tentative three-year national labor agreement (the "1999 Agreement"). The 1999 Agreement provided that if the 1999 Agreement was ratified by the union membership, Delphi and Delco would make an immediate lump-sum payment of $1,350 (the "1999 CBA Payments") to each union member who was classified in a specified status with Delphi or Delco as of the effective date of the 1999 Agreement, i.e., active status, protected status, temporary layoff status, or various forms of short-term leave of absence, including sick leave and vacation (a "specified status").

15. Under the terms of the 1999 Agreement, Delphi and Delco made the lump-sum payment to each union member with such a specified status without regard to (a) whether the union member voted to ratify the 1999 Agreement (i.e., payment was made to those who voted for ratification, those who voted against ratification, and those who did not vote at all), (b) how long or at what rate of pay the union member had performed services for the automaker, and (c) whether the union member continued in the future to perform services for Delphi and Delco (i.e., a union member would receive the lump-sum payment if he or she were on short-term disability on the effective date of the 1999 Agreement and thereafter terminated employment with Delphi or Delco without performing any further services). The only conditions for a union member to receive the payment from Delphi or Delco were that (x) the 1999 Agreement be ratified and (y) the union member be classified as having one of the specified statuses with Delphi or Delco as of the effective date of the 1999 Agreement.

16.     The 1999 Agreement was ratified by the union membership on October 10, 1999.

17.     In accordance with the terms of the 1999 Agreement, as ratified, Delphi and Delco paid $1,350 to each union member with one of the specified statuses in the fourth quarter of 1999.

### The 2003 Agreement

18.     On September 18, 2003, representatives of the automaker industry and the UAW reached a tentative three-year national labor agreement (the "2003 Agreement"). The 2003 Agreement provided that if the 2003 Agreement was ratified by the union membership, the Plaintiffs would make a lump-sum payment of $3,000 (the "2003 CBA Payments") to each union member who was classified in one of the specified statuses with the Plaintiffs as of the effective date of the 2003 Agreement.

19.     Under the terms of the 2003 Agreement, the Plaintiffs made the lump-sum payment to each union member with a specified status without regard to (a) whether the union member voted to ratify the 2003 Agreement (i.e., it was paid to those who voted for the ratification, those who voted against ratification, and those who did not vote at all), (b) how long or at what rate of pay the union member had performed services for the automaker, and (c) whether the union member continued in the future to perform services for the Plaintiffs (i.e., a union member would receive the lump-sum payment if he or she were on short-term disability on the effective date of the 2003 Agreement and thereafter terminated employment with Delphi and Delco without performing any further services). The only conditions for a union member to receive the payment from Plaintiffs were that (x) the 2003 Agreement be ratified and (y) the union member be classified as having one of the specified statuses with the Plaintiffs as of the effective date of the 2003 Agreement.

6

20. The 2003 Agreement was ratified by the union membership on October 5, 2003.

21. In accordance with the terms of the 2003 Agreement, as ratified, the Plaintiffs paid $3,000 to each union member having one of the specified statuses in the fourth quarter of 2003.

### Plaintiffs' Withholding And Payment Of FICA Taxes

22. The Plaintiffs did not make the 1999 CBA Payments or the 2003 CBA Payments (collectively, the "CBA Payments") to union members for the performance of employment services. The union members were paid for their collective act as union members (and not as employees) in ratifying the 1999 Agreement and the 2003 Agreement, and not for any services performed or to be performed for the Plaintiffs as employees. Consistent with Revenue Ruling 58-145, the CBA Payments were not conditioned on continued employment with the Plaintiffs or the performance of future services for them. The ratification of the respective agreements was the only requirement for payment.

23. Because the Plaintiffs faced potential secondary liability for any unpaid FICA tax liability owed by their employees and for which the Plaintiffs might have a duty to withhold, the Plaintiffs withheld and paid FICA taxes with respect to the CBA Payments.

### The 1999 Refund Claims

24. On April 11, 2003, Delphi and Delco filed refund claims (the "1999 Refund Claims") for the FICA taxes paid with respect to the 1999 CBA Payments. The 1999 Refund Claims explained that Delphi and Delco did not make the 1999 CBA Payments for the performance of employment services by the union members and that the historic guidance published by the IRS in Revenue Ruling 58-145 established that such payments were not subject to employment taxes.

7

25.     While the 1999 Refund Claims were pending before the IRS, and with full knowledge of Delphi's and Delco's 1999 Refund Claims, the IRS revoked its longstanding Revenue Ruling 58-145.

26.     The revocation of Revenue Ruling 58-145 was announced in Revenue Ruling 2004-109, 2004-50 I.R.C. 958, published on November 23, 2004, in which the IRS set forth a previously unstated principle for analyzing the wage treatment of a "ratifying bonus pursuant to collective bargaining agreement."

27.     In Revenue Ruling 58-145, whether or not the payment was in respect of a new employee or a new contract, the only important consideration was whether the payment was "predicated on continued employment."  If not, the amount was not treated as wages and was therefore not subject to FICA withholding.  In contrast, the IRS took the unprecedented position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship."

28.     In Revenue Ruling 2004-109 (without the benefit of public notice and comment), the IRS announced a position that is contrary to both the statute and Treasury regulations which provide that for amounts an employer pays its employees to be subject to FICA taxes, the amounts must be wages paid for the performance of services as an employee. IRC § 3121(a)-(b); Treas. Regs. § 31.3121(a)-1(b).

29.     Revenue Ruling 2004-109 provides that the IRS will not apply the position taken in that ruling to any signing bonus, sign-on fee, or similar amount paid to an employee in connection with the employee's _initial_ employment with the employer under a sign-on agreement nor other contract entered into before January 12, 2005, if the amount is paid

8

under facts and circumstances that are substantially the same as those in Revenue Ruling 58-145. By contrast, the IRS applies Revenue Ruling 2004-109 on a retroactive basis to any signing bonus, sign-on fee, or similar amount paid to an employee that is not incurred in connection with the employee's initial employment.

30. On March 28, 2005, the Examiner auditing the 1999 Refund Claims proposed to disallow them.

31. On May 19, 2005, Delphi and Delco filed a protest seeking administrative appeal of the Examiner's proposed denial of the Refund Claims filed in 2003 on the basis that the 1999 CBA Payments were not made for the performance of employment services by the union members and that the IRS's historical guidance in Revenue Ruling 58-145 provided that such payments were not subject to employment taxes.

32. On May 30, 2006, the IRS disallowed in full Delphi's and Delco's 1999 Refund Claims for the FICA taxes paid with respect to the 1999 CBA Payments.

### The 2003 Refund Claims

33. On March 15, 2007, Delphi and Delco filed refund claims for the FICA taxes paid with respect to the 2003 CBA Payments. On April 16, 2007, DASS filed a refund claim for the FICA taxes paid with respect to the 2003 CBA Payments. (The March 15, 2007 refund claims and the April 16, 2007 refund claims are referred to herein collectively as the "2003 Refund Claims.") The 2003 Refund Claims explained that Delphi and Delco did not make the 2003 CBA Payments for the performance of employment services by the union members and that the historic guidance published by the IRS in Revenue Ruling 58-145 established that such payments were not subject to employment taxes.

9

34. On November 6, 2007, the IRS disallowed in full Delco's and DASS's 2003 Refund Claims. More than six months have passed since Delphi filed its 2003 Refund Claims and the IRS has failed to act on it.

## COUNT I

(Delphi: Fourth Quarter 1999)

35. Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

36. On or before January 31, 2000, Delphi timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 1999.

37. Delphi timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 1999.

38. On April 11, 2003, Delphi filed a Form 843 in which it requested a refund of FICA taxes of $153,000, "or such other amount as finally determined," for the calendar quarter ending December 31, 1999.

39. Delphi's 1999 CBA Payments do not constitute wages under FICA.

40. Delphi's 1999 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

41. The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

42. The IRS abused its discretion in Revenue Ruling 2004-109 when determining that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

43. Delphi has overpaid FICA taxes for the calendar quarter ending December 31, 1999 in connection with the 1999 CBA Payments, in the amount of $8,682,980. Delphi is entitled to a refund and abatement of those taxes and any penalties or interest as allowed by law.

44. The IRS erroneously failed to allow Delphi's claim for a refund and failed to refund the overpayment of tax in the amount of $8,682,980 "or such other amount as finally determined."

## COUNT II
(Delco: Fourth Quarter 1999)

45. Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

46. On or before January 31, 2000, Delco timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 1999.

47. Delco timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 1999.

48. On April 11, 2003, Delco filed a Form 843 in which it requested a refund of FICA taxes of $153,000, "or such other amount as finally determined," for the calendar quarter ending December 31, 1999.

49. Delco's 1999 CBA Payments do not constitute wages under FICA.

11

50. Delco's 1999 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

51. The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

52. The IRS abused its discretion in Revenue Ruling 2004-109 when determining that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

53. Delco has overpaid FICA taxes for the calendar quarter ending December 31, 1999 in connection with the 1999 CBA Payments, in the amount of $1,141,224. Delco is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

54. The IRS erroneously failed to allow Delco's claim for a refund and failed to refund the overpayment of tax in the amount of $1,141,224 "or such other amount as finally determined."

## COUNT III
(Delphi: Fourth Quarter 2003)

55. Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

56. On or before January 31, 2004, Delphi timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 2003.

57. Delphi timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 2003.

58. On March 15, 2007, Delphi filed a Form 843 in which it requested a refund of FICA taxes of $7,453,028 "or such other amount as finally determined," for the calendar quarter ending December 31, 2003.

59. Delphi's 2003 CBA Payments do not constitute wages under FICA.

60. Delphi's 2003 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

61. The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

62. The IRS abused its discretion when determining in Revenue Ruling 2004-109 that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

63. Delphi has overpaid FICA taxes for the calendar quarter ending December 31, 2003 in connection with the 2003 CBA Payments, in the amount of $4,479,982. Delphi is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

64. The IRS erroneously failed to allow Delphi's claim for a refund and failed to refund the overpayment of tax in the amount of $4,479,982 "or such other amount as finally determined."

## COUNT IV
(Delco: Fourth Quarter 2003)

65. Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

66. On or before January 31, 2004, Delco timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 2003.

67. Delco timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 2003.

68. On March 15, 2007, Delco filed a Form 843 in which it requested a refund of FICA taxes of $792,262, "or such other amount as finally determined," for the calendar quarter ending December 31, 2003.

69. Delco's 2003 CBA Payments do not constitute wages under FICA.

70. Delco's 2003 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

71. The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

72. The IRS abused its discretion when determining in Revenue Ruling 2004-109 that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

14

73.     Delco has overpaid FICA taxes for the calendar quarter ending December 31, 2003 in connection with the 2003 CBA Payments, in the amount of $362,968. Delco is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

74.     The IRS erroneously failed to allow Delco's claim for a refund and failed to refund the overpayment of tax in the amount of $362,968 "or such other amount as finally determined."

## COUNT V
(DASS: Fourth Quarter 2003)

75.     Plaintiffs repeat, reallege, and incorporate by reference all of the allegations contained in paragraphs 1 through 34 of this Complaint as though set forth at length herein.

76.     On or before January 31, 2004, DASS timely filed Form 941, Employer's Quarterly Federal Tax Return, for the calendar quarter ending December 31, 2003.

77.     DASS timely paid to the IRS the taxes reported on its Form 941 for the calendar quarter ending December 31, 2003.

78.     On or about April 16, 2007, DASS filed a Form 843 in which it requested a refund of FICA taxes of $6,529,054, "or such other amount as finally determined," for the calendar quarter ending December 31, 2003.

79.     DASS's 2003 CBA Payments do not constitute wages under FICA.

80.     DASS's 2003 CBA Payments are substantially similar to the payments found not to constitute wages in Revenue Ruling 58-145.

81.     The IRS position in Revenue Ruling 2004-109 that all amounts paid to employees are wages unless "the employee provides clear, separate, and adequate consideration

15

for the employer's payment that is not dependent upon the employer-employee relationship" is contrary to statute and regulations defining wages for FICA tax purposes as amounts paid for services by an employee.

82. The IRS abused its discretion when determining in Revenue Ruling 2004-109 that its revocation of Revenue Ruling 58-145 would be retroactive with respect to ratifying bonuses under collective bargaining agreements.

83. DASS has overpaid FICA taxes for the calendar quarter ending December 31, 2003 in connection with the 2003 CBA Payments, in the amount of $11,390,976. DASS is entitled to a refund and abatement of such taxes and any penalties or interest as allowed by law.

84. The IRS erroneously failed to allow DASS's claim for a refund and failed to refund the overpayment of tax in the amount of $11,390,976 "or such other amount as finally determined."

WHEREFORE, Plaintiffs respectfully request entry of judgment on their Complaint for each Plaintiff against the Defendant as to each count as follows:

a. <u>For Delphi Corporation and Delphi Automotive Systems LLC, as successor to Delco Electronics Corporation and Delco Electronics LLC</u>:

<u>On Count Two</u>: the amount of $1,141,224, or such other amounts as may be legally refundable, plus interest as provided by law;

<u>On Count Four</u>: the amount of $362,968, or such other amounts as may be legally refundable, plus interest as provided by law;

b. <u>For Delphi Corporation</u>:

<u>On Count One</u>: the amount of $8,682,980, or such other amounts as may be legally refundable, plus interest as provided by law;

16

<u>On Count Three</u>:  the amount of $4,479,982, or such other amounts as may be legally refundable, plus interest as provided by law;

  c. <u>For Delphi Automotive Systems Services LLC</u>:

<u>On Count Five</u>:  the amount of $11,390,976, or such other amounts as may be legally refundable, plus interest as provided by law; and

    d.    <u>And As To All Counts</u>: attorneys' fees, costs and such other and further relief as is just.

Dated:    New York, New York
            January 18, 2008

        BAKER & MCKENZIE LLP

        By:   */s/ Thomas M. Cryan, Jr.*
        Mary B. Hevener
        Thomas M. Cryan, Jr.
    815 Connecticut Avenue, N.W.
    Washington, D.C. 20006-4078
    (202) 452-7080

        – and –

    SKADDEN, ARPS, SLATE, MEAGHER
     & FLOM LLP

    By:   */s/ John Wm. Butler, Jr.*
        John Wm. Butler, Jr. (JB 4711)
        Ron E. Meisler (RM 3026)
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois 60606
    (312) 407-0700

        - and –

    By:   */s/ Kayalyn A. Marafioti*
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    Attorneys for Delphi Corporation, <u>et al.</u>,
      Debtors and Debtors-in-Possession