**Hearing Date And Time: February 21, 2008 at 10:00 a.m.**
**Response Date And Time: February 14, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                            :
      In re                        :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,      :    Case No. 05-44481 (RDD)
                                          :
                                          :    (Jointly Administered)
               Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

DEBTORS' TWENTY-FIFTH OMNIBUS OBJECTION PURSUANT TO 11 U.S.C.
§ 502(b) AND FED. R. BANKR. P. 3007 TO (A) DUPLICATE OR AMENDED CLAIMS, (B)
UNTIMELY EQUITY CLAIM, (C) CLAIMS NOT REFLECTED ON DEBTORS' BOOKS
AND RECORDS, AND (D) CLAIMS SUBJECT TO MODIFICATION AND LIFT STAY
PROCEDURES CLAIM SUBJECT TO MODIFICATION

("TWENTY-FIFTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Twenty-Fifth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (A) Duplicate Or Amended Claims, (B) Untimely Equity Claim, (C) Claims Not Reflected On Debtors' Books And Records, And (D) Claims Subject To Modification And Lift Stay Procedures Claim Subject To Modification (the "Twenty-Fifth Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee," and together with the Creditors' Committee, the "Statutory Committees").

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264).

Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession (the "Plan") (Docket No. 11386) and the First Amended Disclosure Statement with

respect to the Plan (the "Disclosure Statement") (Docket No. 11388).  The Court entered an order

approving the adequacy of the Disclosure Statement and granting the related solicitation

procedures motion on December 10, 2007 (Docket No. 11389).

        4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

        5.      The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

        6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and have continued their business operations without supervision from the Court.[2]

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
2007.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso
*(cont'd)*

7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.      Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

9.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

_____

(cont'd from previous page)
        receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of
        which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31,
        2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing
        footprint and to lower its overall cost structure.

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]
Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of
approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred
a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee
special attrition programs.

10.     The Debtors believe that the Company's financial performance
deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational
restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which
have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production
environment for domestic OEMs resulting in the reduced number of motor vehicles that GM
produces annually in the United States and related pricing pressures, and (iii) increasing
commodity prices.

11.     In light of these factors, the Company determined that it would be
imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product
portfolio, operational issues, and forward-looking revenue requirements.  Because discussions
with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,
the Company commenced these chapter 11 cases for its U.S. businesses to complete its
transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

12.     On March 31, 2006, the Company outlined the key tenets of a
transformation plan that it believed would enable it to return to stable, profitable business

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in
calendar year 2004 was $482 million.

operations.  The Debtors stated that they needed to focus on five key areas:[4] first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business;[5] second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company;[6] third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their
execution of an equity purchase and commitment agreement with certain investors and a plan framework
support agreement with those investors and GM.  On July 9, 2007, Delphi confirmed that it had formally
terminated the equity purchase and commitment agreement and related plan framework support agreement.  On
July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment
agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan
investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill
Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate
of Pardus Capital Management, L.P.  Under the Delphi-Appaloosa EPCA, the new plan investors agreed to
invest up to $2.55 billion in preferred and common equity in the reorganized Delphi to support the Company's
transformation plan and plan of reorganization.  This Court approved the Delphi-Appaloosa EPCA on August 2,
2007.  On October 29, 2007, the Debtors filed a motion requesting this Court's approval of certain proposed
amendments to the Delphi-Appaloosa EPCA (Docket No. 10760).  In addition, on November 14, 2007,
December 3, 2007, and December 5, 2007, the Debtors filed certain additional proposed amendments to the
Delphi-Appaloosa EPCA.  On December 10, 2007, this Court entered an order granting the motion and
approving the proposed amendments (Docket No. 11382).

[5]    As of August 29, 2007, this Court had entered the following orders approving settlements between Delphi and
each of its U.S. labor unions:
  •    International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America
       (Docket No. 8693);
  •    International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication
       Workers of America (Docket No. 9106);
  •    International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die
       Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals
       832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
  •    United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers
       International Union and USW Local 87L (Docket No. 9169).
On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's
motion for an order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of
collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

[6]    On September 6, 2007, Delphi announced that it had entered into agreements with GM consisting of a Global
Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA").  Delphi's
comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM.  The GSA and
MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively.  See Docket No. 9263.  On October
29, November 14, December 3, December 5, and December 10, 2007, the Debtors filed certain proposed
amendments to the GSA and MRA.  The approval of such amendments will be considered in connection with
the confirmation of the Plan.

make the necessary manufacturing alignment with their new focus;[7] fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint;[8] and fifth, devising a

workable solution to their current pension situation.[9]

E.    The Debtors' Plan Of Reorganization

13.    By filing the Plan and related Disclosure Statement, the Debtors reached

another key milestone in their chapter 11 cases.  The Plan is based upon a series of global

settlements and compromises that involve nearly every major constituency in the Debtors'

---

[7]    In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants.  The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders.  During the 2006 and 2007 calendar years, for example, the Debtors have sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, their brake hose and catalyst businesses, and their Saltillo, Mexico brake plant business, as well as their manufacturing equipment and test development equipment at the chassis facility in Saginaw, Michigan.  The Debtors also received court approval to sell substantially all of the assets used in their interiors and closures businesses (subject to certain cure disputes) and for bid procedures related to the upcoming sale of substantially all assets used in their steering and halfshaft business.

[8]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments , which will be transitioned as part of the Company's transformation plan: Steering (for which bidding procedures were approved on December 20, 2007) and Automotive Holdings Group.  To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Pension Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively.  On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees Plan for the September 30, 2007 pension plan year.  On October 25, 2007, this Court granted the Debtors' motion for authority to perform under the terms of that waiver.  On October 4, 2007, the IRS, at Delphi's request, further modified the conditions to the initial waivers so that they are generally consistent with the conditions to the most recent waiver.

reorganization cases, including GM.  Attached as exhibits to the Plan are two agreements, the

GSA and the MRA, which provide for a comprehensive settlement with GM.  Both agreements

are subject to this Court's approval as part of the confirmation process.  A hearing to consider

confirmation of the Plan to commenced on January 17, 2008.  Currently, the Debtors continue to

expect that they will emerge from chapter 11 during the first quarter of 2008.

       14.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

       15.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

       16.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and Statements") and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements. In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

17.    In addition, the Debtors published the Bar Date Notice in the New York Times (National Edition), the Wall Street Journal (National, European, and Asian Editions), USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, the Tuscaloosa News, and The Vindicator, and electronically through posting on the Delphi Legal Information Website, www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,700 proofs of claim (the "Proofs of Claim") have been filed against the Debtors in these cases. The Debtors have filed 24 omnibus Claims objections,[10]

---

[10]    The Debtors filed objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451 and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585), February 15, 2007 (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27, 2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos. 8270 and 8271), and July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151),

*(cont'd)*

pursuant to which this Court has disallowed and expunged approximately 9,400 Claims and modified approximately 3,300 Claims.  In addition, the hearings with respect to approximately 740 Claims have been adjourned to future claims hearings pursuant to the Claims Objection Procedures Order (as defined below).

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To 11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among other things, to approve certain procedures for contested claim objections.  On December 7, 2006, the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

20.    On November 30, 2007, the Debtors filed the Motion Under New Bankruptcy Rule 3007(c) And 11 U.S.C. Section 105(a) For Order Authorizing Debtors To Continue Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. Section 502(b) And Fed. R. Bankr. P. 2002(M), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures Governing Objections To Claims (Docket No. 11187), in which the Debtors requested this Court, among other things, to allow the Debtors to continue to implement the

_____
*(cont'd from previous page)*
    September 21, 2007 (Docket No. 9535),  October 26, 2007 (Docket No. 10738); November 19, 2007 (Docket No. 10982); and December 21, 2007 (Docket No. 11588).

claims objection procedures established in the Claims Objection Procedures Order,

notwithstanding certain amendments to Bankruptcy Rule 3007 that became effective December 1,

2007.  On December 20, 2007, the Court entered the Order Under New Bankruptcy Rule 3007

And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection Procedures Under

Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings Regarding

Objections To Claims And (II) Certain Notices And Procedures Governing Objections To

Claims (Docket No. 11561).

   21. In this Twenty-Fifth Omnibus Claims Objection, the Debtors are objecting

to 10 Proofs of Claim, all of which are set forth on Exhibit F hereto in alphabetical order by

claimant and cross-referenced by proof of claim number and basis of objection.

Relief Requested

   22. By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007, as amended December 1, 2007, (i)

disallowing and expunging (a) the Claims set forth on Exhibit A-1 hereto because they are

duplicative of other Claims, (b) the Claim set forth on Exhibit A-2 hereto because it is

duplicative of another claim that is subject to a prior order, (c) the Claim set forth on Exhibit B

hereto because it was filed by a holder of Delphi common stock solely on account of its stock

holdings and was untimely filed pursuant to the Bar Date Order, (d) the Claims set forth on

Exhibit C hereto because they assert liabilities or dollar amounts that are not reflected on the

Debtors' books and records, and (ii) revising the asserted amount with respect to (a) the Claims

set forth on Exhibit D-1 hereto, and (b) the Claim set forth on Exhibit D-2 hereto, which is the

subject of a pending settlement pursuant to the Order Approving Procedures For Modifying

11

Automatic Stay Under 11 U.S.C. § 362 To Allow For (I) Liquidating And Settling And/Or (II) Mediating Of Certain Prepetition Litigation Claims (the "Lift Stay Procedures Order") (Docket No. 4366).

Objections To Claims

G.    <u>Duplicate Or Amended Claims</u>

23.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain of the Proofs of Claim in fact assert duplicate Claims (each, a "Duplicate Claim") for a single liability.  In some instances, Duplicate Claims arose when a Claimant filed Proofs of Claim against multiple Debtor entities for the same liability.  In an effort to eliminate the Duplicate Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation provided in those Proofs of Claim, and the Debtors' Schedules and Statements to determine which duplicate claim should be the surviving claim.

24.    Additionally, the Debtors determined that a Claim evidenced by a Proof of Claim, which was subject to a prior order, was subsequently amended or superseded by another Proof of Claim filed by the creditor with respect to the same liabilities (the "Amended Claim"). The Amended Claim was filed to amend an amount previously claimed in an earlier Proof of Claim (the "Original Claim").

25.    It is axiomatic that creditors are not entitled to multiple recoveries for a single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate Claims.  In addition, the Debtors wish to eliminate from the Debtors' claims register the Original Claim for which the Amended Claim was subsequently filed (collectively, the "Duplicate Or Amended Claims").

26.    Set forth on <u>Exhibit A-1</u> hereto is a list of Claims that the Debtors have identified as Duplicate Or Amended Claims.  For each Duplicate Or Amended Claim, <u>Exhibit A-</u>

12

1 classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a "Surviving Claim" (the "Surviving Claim").  Generally, the Surviving Claims reflect the classifications of the liabilities as reflected on the Debtors' Schedules and Statements.[11]  The Debtors request that the Claims marked as Expunged Claims on Exhibit A-1 be disallowed and expunged.  With respect to the Claims on Exhibit A-1 marked as Surviving Claims, the Debtors do not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibit A-1, however, does not reflect any view by the Debtors as to the ultimate validity of any such Claims.  The Debtors therefore expressly reserve all of their rights to further object to any or all of the Surviving Claims at a later date on any basis whatsoever, except as expressly provided in paragraph 51 below.

27.    Set forth on Exhibit A-2 hereto is a Claim that the Debtors have identified as a Duplicate Or Amended Claim that is subject to a prior order (a "Duplicate Or Amended Claim Subject To Prior Order").  For the Duplicate Or Amended Claim Subject to Prior Order Claim, Exhibit A-2 classifies the Proof of Claim as a "Claim To Be Expunged" (the "Expunged Claim").  The Debtors request that the Claim marked as Expunged Claim on Exhibit A-2 be disallowed and expunged.  With respect to the Claim on Exhibit A-2 marked as Surviving Claim,

---

[11]    As stated in the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors' Schedules And Statements (the "Global Notes"), filed as part of the Debtors' Schedules and Statements:

> Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General Partnership [("ASEC Manufacturing")], and ASEC Sales General Partnership [(collectively, the "Catalyst Entities")] are maintained in this manner.  The financial information for these entities has been consolidated for purposes of the Schedules and Statements and such consolidated financial information has been included in the Schedules and Statements of each of [the Catalyst Entities].

Global Notes ¶ 19.  To the extent that claimants filed Proofs of Claim against ASEC Manufacturing and one or more of the other Catalyst Entities, the Debtors have, for purposes of administrative convenience, retained the Claim filed against ASEC Manufacturing as the Surviving Claim.  Undoubtedly, despite the consolidation of the books and records of the Catalyst Entities, claimants should not retain more than one Claim for a single liability.  Nonetheless, the Debtors expressly reserve all of their rights to seek to re-classify these obligations as obligations of another Debtor entity at a later date.

the Debtors do not seek any relief at this time.  The inclusion of the Surviving Claim on Exhibit
A-2, however, does not reflect any view by the Debtors as to the ultimate validity of such Claim.
The Debtors therefore expressly reserve all of their rights to further object to the Surviving
Claim at a later date on any basis whatsoever, except as expressly provided in paragraph 51
below.

        28.      Accordingly, the Debtors (a) object to the Duplicate Or Amended Claims
listed on Exhibit A-1 and the Duplicate Or Amended Claim Subject To Prior Order listed on
Exhibit A-2 and (b) seek entry of an order disallowing and expunging the Expunged Claims in
their entirety.

H.     Untimely Equity Claim

        29.      During the Debtors' review of the Proofs of Claim, the Debtors determined
that a certain Proof of Claim filed against the Debtors in fact represents a proof of interest that
was filed by or on behalf of a person holding Delphi common stock and was received by the
Debtors after the Bar Date (the "Untimely Equity Claim").  The Debtors caused the Claims
Agent to serve notice of the Bar Date on holders of Delphi common stock to ensure that holders
of stock who wished to assert claims against any of the Debtors that were not based solely upon
their ownership of Delphi common stock would be afforded the opportunity to file claims in
these chapter 11 cases.

        30.      The ownership of Delphi common stock constitutes an equity interest in
Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section
101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was
approved by this Court, creditors and equity holders were notified that they were not required to

file proofs of claim based exclusively on ownership interests in Delphi common stock.[12]  With

respect to the Untimely Equity Claim, the Debtors also object to such Claim on the basis that it

was not timely filed pursuant to the Bar Date Order.[13]

          31.     Set forth on <u>Exhibit B</u> is the Untimely Equity Claim that the Debtors have

identified as representing solely a proof of interest and that was not timely filed pursuant to the

Bar Date Order.[14]  The Debtors therefore seek to have this claim reclassified from a Claim to an

interest and be disallowed and expunged as untimely.  To the extent that the individual that filed

the Untimely Equity Claim listed on <u>Exhibit B</u> holds a valid equity interest in Delphi as of the

applicable record date, the requested reclassification of the Proof of Claim and disallowance of

---

[12]    The Bar Date Order provides, in relevant part:

    Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:

    *    *    *

    (h)  Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or rescission based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

    Bar Date Order ¶5 (emphasis added).

[13]    The Bar Date Order provides in part:

    Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set form in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

    Bar Date Order ¶ 11.

[14]    The Untimely Equity Claim listed on <u>Exhibit B</u> hereto was not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238).

the Claim will not impair any entitlements that the Claimant may ultimately have under a plan of

reorganization with respect to such holder's equity interest.

32.      Accordingly, the Debtors (a) object to the Untimely Equity Claim and (b)

seek entry of an order disallowing and expunging the Untimely Equity Claim in its entirety.

I.      Claims Not Reflected On The Debtors' Books And Records

33.      During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the

Debtors' books and records (the "Books And Records Claims").  The Debtors believe that the

parties asserting the Books And Records Claims are not creditors of the Debtors.

34.      The bases for determining that the Debtors are not liable for an asserted

Claim include, but are not limited to, the following:  (a) the Debtors' books and records do not

reflect the existence of the asserted Claim or of the Claimant asserting such Claim, (b) the

Debtors' books and records reflect that the Claim has been paid pursuant to a prior order of this

Court, (c) the Debtors' books and records reflect that the asserted Claim was properly paid prior

to the commencement of the Debtors' cases, and (d) the Claim constitutes a postpetition liability

that has been paid by the Debtors in the ordinary course of the Debtors' businesses.

35.      A claimant's proof of claim is entitled to the presumption of prima facie

validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the

allegations that is essential to the claim's legal sufficiency.'"  In re WorldCom, Inc., No. 02-

13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. 2005) (quoting In re Allegheny Int'l, Inc., 954

F.2d 167, 173-74 (3d Cir. 1992)).  Once such an allegation is refuted, "'the burden reverts to the

claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

36.      Attached hereto as Exhibit C is a list of the Books And Records Claims

that the Debtors have identified as Claims for which the Debtors are not liable.  If this Court does

not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to any or all of the Books And Records Claims at a later date on any basis whatsoever.

37.    Accordingly, the Debtors (a) object to the Books And Records Claims and (b) seek entry of an order disallowing and expunging the Books And Records Claims in their entirety.

J.    Claims Subject To Modification

38.    During the Debtors' review of the Proofs of Claim, the Debtors have determined that certain Claims state the incorrect amount or are overstated (collectively, the "Claims Subject To Modification").

39.    Although in this Twenty-Fifth Omnibus Claims Objection the Debtors do not seek to disallow and expunge the Claims Subject To Modification, based on an initial review, the Debtors have determined that their liability with respect to each such Claim does not exceed the dollar amount set forth on Exhibit D-1 hereto.  The bases for placing a Claim in the Claims Subject To Modification category of objection include, but are not limited to, the following: the asserted Claim (a) does not account for amounts that may have been paid or credited against such Claim prior to the commencement of these cases, (b) may include postpetition liabilities, and/or (c) does not account for amounts that may have been paid or credited against such Claim following the commencement of these cases.  Thus, the Debtors seek to convert the amount of each Claim Subject To Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors' books and records and/or the liquidated amount requested by the Claimant (thus eliminating the unliquidated component), as appropriate.

40.    As stated above, a Claimant's Proof of Claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

17

least one of the allegations that is essential to the claim's legal sufficiency.'" <u>WorldCom</u>, 2005

WL 3832065, at *4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted,

"the burden reverts to the claimant to prove the validity of the claim by a preponderance of the

evidence." <u>Id.</u>  As with the Books And Records Claims, the Debtors expressly reserve all of

their rights to further object to any or all of the Claims Subject To Modification at a later date on

any basis whatsoever.

        41.     Set forth on <u>Exhibit D-1</u> hereto is a list of Claims Subject To Modification

that the Debtors believe should be modified solely to assert a properly classified, fully liquidated

claim amount.  For each Claim Subject To Modification, <u>Exhibit D-1</u> reflects the amount,

classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As

Docketed"[15] and the proposed modified dollar amount and classification for the Claim and the

Debtor against which the Claim should be asserted in a column titled "Claim As Modified."

        42.     The Debtors object to the amount for each Claim Subject To Modification

listed on <u>Exhibit D-1</u> and request that each such Claim be revised to reflect the amount listed in

the "Claim As Modified" column of <u>Exhibit D-1</u>.  Thus, no Claimant listed on <u>Exhibit D-1</u> would

be entitled to recover for any Claim Subject To Modification in an amount exceeding the dollar

value listed as the "Modified Total" for such Claim on <u>Exhibit D-1</u>, subject to the Debtors' right

to further object to each such Claim Subject To Modification.  For clarity, <u>Exhibit D-1</u> refers to

the Debtor entities by case number and <u>Exhibit E</u> displays the formal name of the two Debtor

entities and their associated bankruptcy case numbers referenced in <u>Exhibit D-1</u>.

        43.     The inclusion of the Claims Subject To Modification on <u>Exhibit D-1</u>,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The

---

[15]    The Asserted Claim Amounts on <u>Exhibits</u> <u>D-1</u> and <u>D-2</u> reflect only asserted liquidated claims.

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims Subject To Modification at a later date on any basis whatsoever.

44.     Accordingly, the Debtors (a) object to the asserted amount for each Claim Subject To Modification set forth on Exhibit D-1 and (b) seek an order modifying the Claims Subject To Modification to reflect the Modified Total as set forth on Exhibit D-1.

K.     Lift Stay Procedures Claim Subject To Prior Order

45.     Finally, the Debtors have reached agreements with a Claimant asserting a personal injury claim that his Proof of Claim should be reduced and/or fully liquidated pursuant to the Lift Stay Procedures Order (collectively, the "Lift Stay Procedures Claim Subject To Modification").

46.     The Debtors do not seek to disallow and expunge the Lift Stay Procedures Claim Subject To Modification.  The Debtors have determined that their liability with respect to such Claim does not exceed the dollar amount set forth in the column titled "Claim As Modified" on Exhibit D-2 hereto.  Thus, the Debtors seek to convert the amount of the Lift Stay Procedures Claim Subject To Modification to a fully liquidated, U.S. dollar-denominated amount.

47.     Set forth on Exhibit D-2 hereto is the Lift Stay Procedures Claim Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount.  For the Lift Stay Procedures Claim Subject To Modification, Exhibit D-2 reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount which the Claim should be asserted, in a column titled "Claim As Modified."  For clarity, Exhibit D-2 refers to the Debtor entity by case number and Exhibit E displays the formal name of the Debtor entity and its associated bankruptcy case number referenced in Exhibit D-2.

19

48.    The Debtors object to the amount for the Lift Stay Procedures Claim Subject To Modification listed on Exhibit D-2 and request that such Claim be revised to reflect the amount listed in the "Claim As Modified" column of Exhibit D-2.  Thus, the Claimant listed on Exhibit D-2 would not be entitled to  recover for any Lift Stay Procedures Claim Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit D-2.

49. Accordingly, the Debtors (a) object to the amount of the Lift Stay Procedures Claims Subject To Modification and (b) seek an order modifying the Lift Stay Procedures Claims Subject To Modification to reflect the Modified Total, as set forth on Exhibit D-2.

## Separate Contested Matters

50.    Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Twenty-Fifth Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Twenty-Fifth Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Twenty-Fifth Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

## Reservation Of Rights

51.    The Debtors expressly reserve the right to amend, modify, or supplement this Twenty-Fifth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twenty-

Fifth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

Responses To Objections

52.    Responses to the Twenty-Fifth Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

L.    Filing And Service Of Responses

53.    To contest an objection, responses (each, a "Response"), if any, to the Twenty-Fifth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00 p.m. (prevailing Eastern time) on February 14, 2008.**

M.  <u>Contents Of Responses</u>

       54.  Every Response to this Twenty-Fifth Omnibus Claims Objection must

contain at a minimum the following:

       (a)  the title of the claims objection to which the Response is directed;

       (b)  the name of the Claimant and a brief description of the basis for
the amount of the Claim;

       (c)  a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

       (d)  unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; <u>provided</u>,
<u>however</u>, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; <u>provided</u> <u>further</u>, <u>however</u>, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

       (e)  to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

       (f)  the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

N.  <u>Timely Response Required</u>

       55.  If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on February

21, 2008 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims

Objection Procedures Order will apply to all Responses and hearings arising from this Twenty-

Fifth Omnibus Claims Objection.

56.    Only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Twenty-Fifth Omnibus Claims Objection and who is served with the Twenty-Fifth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Twenty-Fifth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

57.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate

23

and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the

Claims Objection Procedures Order.

<u>Replies To Responses</u>

58.    Replies to any Responses will be governed by the Claims Objection

Procedures Order.

<u>Service Of Twenty-Fifth Omnibus Claims Objection Order</u>

59.    Service of any order with regard to this Twenty-Fifth Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

<u>Further Information</u>

60.    Questions about this Twenty-Fifth Omnibus Claims Objection or requests

for additional information about the proposed disposition of Claims hereunder should be directed

to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the</u>

<u>Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

61.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Ninth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 19, 2007 (Docket No. 10661). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

62.    Pursuant to the Claims Objection Procedures Order, the Debtors will provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twenty-Fifth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such objection as well as a copy of the Claims Objection Procedures Order. A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A-1, A-2, B, and C is attached hereto as Exhibit G. A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits D-1 and D-2 is attached hereto as Exhibit H. Claimants will receive a copy of this Twenty-Fifth Omnibus Claims Objection without Exhibits A through H hereto. Claimants will nonetheless be able to review Exhibits A through H hereto free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

63.    Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         January 18, 2008

                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                              By:   /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr. (JB 4711)
                                   John K. Lyons (JL 9331)
                                   Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                   - and -

                              By:   /s/ Kayalyn A. Marafioti
                                   Kayalyn A. Marafioti (KM 9632)
                                   Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession