# DELPHI CORPORATION
# BEARINGS BUSINESS BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets that comprise the global bearings business (the "Bearings Business") of Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities" or the "Sellers").[1] On January 15, 2008, the Sellers executed that certain Sale And Purchase Agreement (the "Agreement") with ND Acquisition Corp. (the "Buyer"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On January 15, 2008, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed an Expedited Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, 6006 And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Primarily Used In Debtors' Bearings Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (the "Sale Motion"). On January ___, 2008, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. § 363 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Debtors' Bearings Business (the "Bidding Procedures Order"). The Bidding Procedures Order set February 21, 2008 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement. All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Bids, respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process"). The Debtors intend to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process. In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

## Assets To Be Sold

---

[1] Under the Agreement, the Selling Debtor Entities are comprised of Delphi Automotive Systems LLC and Delphi Technologies, Inc.

The assets proposed to be sold include substantially all of the assets primarily used in the Bearings Business (the "Acquired Assets").

### "As Is, Where Is"

The sale of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Buyer, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

### Free Of Any And All Claims And Interests

Except, with respect to the Buyers, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests on and/or against the Acquired Assets (collectively, the "Claims and Interests"), such Claims and Interests to attach to the net proceeds of the sale of such Acquired Assets.

### Participation Requirements

Any person who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Buyers, must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below, unless otherwise ordered by the Bankruptcy Court or as otherwise determined by the Sellers in their discretion:

(a) An executed confidentiality agreement in form and substance satisfactory to the Selling Debtor Entities.

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Bearings Business, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Selling Debtor Entities and their financial advisors; and

(c) A preliminary (non-binding) proposal regarding: (i) the purchase price range, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the Purchase Price and the requisite Good Faith Deposit), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement, and (vi) the

nature and extent of additional due diligence the Potential Bidder may wish to conduct and the date by which such due diligence must be completed.

A Potential Bidder who delivers the documents described in the foregoing subparagraphs and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale if selected as a Successful Bidder, and who the Sellers determine in their sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a "Qualified Bidder."  Notwithstanding the foregoing, the Buyer will be deemed a Qualified Bidder for purposes of the Bidding Process.  As promptly as reasonably practicable after a Potential Bidder delivers all of the materials required above, the Selling Debtor Entities will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time when the Selling Debtor Entities notify the Potential Bidder that it is a Qualified Bidder, the Selling Debtor Entities will allow the Qualified Bidder to commence due diligence with respect to the Acquired Assets and the Bearings Business as described below.

## Due Diligence

The Sellers will afford each Qualified Bidder due diligence access to the Acquired Assets and the Bearings Businesses.  Due diligence access may include such management presentations as may be scheduled by the Selling Debtor Entities, access to data rooms, on site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree.  The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional diligence access or information grant to any Qualified Bidder other than the Buyer will be promptly made available to the Buyer.  Any additional due diligence will not continue after the Bid Deadline.  The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither the Sellers nor any of their Affiliates (or any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets and the Bearings Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

## Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents (as defined herein) to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention:  Stephen H. Olsen, Director, Mergers & Acquisitions, Automotive Holdings Group, with copies to:  (i) the Selling Debtor Entities' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Brian M. Fern, (ii) the Selling Debtor Entities' financial advisor, KeyBanc Capital Markets Inc., 127 Public Square, Cleveland, Ohio 44114, Attention: Paul E. Schneir, (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J.  Rosenberg, and (iv) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing

Eastern time) by February 11, 2008 (the "Bid Deadline").  Delphi may extend the Bid Deadline once or successively, but is not obligated to do so.  If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, the Selling Debtor Entities will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to (i) counsel for the official committee of equity security holders (the "Equityholders Committee") and (ii) counsel for the Buyer. The Sellers also will provide the UAW with notice of all Qualified Bidders and their contact information.  Qualified Bidders should note that Section 6.7 of the Agreement addresses, among other things, the terms and conditions of employment of UAW-represented employees, and these issues remain subject to the parties' rights and obligations related to bargaining with the UAW.

### Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)    A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Acquired Assets.

(b)    An executed copy of the Agreement, together with all schedules marked (a "Marked Agreement") to show those amendments and modifications to such Agreement and schedules that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement).

(c)    A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Selling Debtor Entities in their sole discretion) payable to the order of Delphi (or such other party as the Sellers may determine) in the amount of $750,000.

(d)    Written confirmation from General Motors that General Motors approves the bidder to operate the wheel bearings business.

(e)    (d) Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that is satisfactory to the Sellers and their advisors.

### Qualified Bids

A bid will be considered only if the bid:

(a)    Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(b)    Proposes a transaction on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that the Selling Debtor Entities determine, in their sole discretion, are similar to, and are not materially more burdensome or conditional than, the terms of the Agreement and that has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price plus the amount of the Break-Up Fee and  the Expense

      Reimbursement, plus $~~500,000~~250,000 in the case of an initial Qualified Bid, plus $250,000 in the case of any subsequent Qualified Bids over the immediately preceding highest Qualified Bid.

      (c)    Is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment.

      (d)    Includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

      (e)    Includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required Governmental Approvals) within not more than ~~15~~45 days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any Governmental Approvals, which must be obtained within 60 days after entry of such order.

      (f)    Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that the Selling Debtor Entities will have the right, in their sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and may deem such bids to be Qualified Bids.  Notwithstanding the foregoing, the Buyers will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Buyers is referred to as a "Subsequent Bid."

If the Selling Debtor Entities do not receive any Qualified Bids other than the Agreement received from the Buyers, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

## Bid Protection

Recognizing the Buyers' expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Buyers.  Specifically, the Selling Debtor Entities have determined that the Agreement furthers the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed.  As a result, the Selling Debtor Entities have agreed that if the Buyers are not the Successful Bidder, the Selling Debtor Entities will, in certain circumstances, pay to the Buyers a Break-Up Fee.  The payment of the Break-Up

Fee or the Expense Reimbursement (as applicable) will be governed by the provisions of the Agreement and the Bidding Procedures Order.

### **Auction**

If the Selling Debtor Entities receive one or more Qualified Bids in addition to the Agreement, the Selling Debtor Entities will conduct an auction (the "Auction") of the Acquired Assets and the Bearings Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on February 13, 2008, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 or 333 West Wacker Drive, Chicago, Illinois 60606 (at the Selling Debtor Entities' election) or such later time or other place as the Selling Debtor Entities notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing), in accordance with the following procedures:

(a) Only the Sellers, the Buyers, any representative of the Creditors' Committee and the Equityholders' Committee, any representative of the Selling Debtor Entities' secured lenders under their postpetition credit facility (and the legal and financial advisers to each of the foregoing), any representative of the UAW, and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Buyers and Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b) At least one Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Selling Debtor Entities whether it intends to participate in the Auction and at least one Business Day prior to the Auction, the Selling Debtor Entities will provide copies of the Qualified Bid or combination of Qualified Bids which the Selling Debtor Entities believe is the highest or otherwise best offer to the UAW and all Qualified Bidders who have informed the Selling Debtor Entities of their intent to participate in the Auction.

(c) All Qualified Bidders who have submitted Qualified Bids will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d) The Selling Debtor Entities may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e) Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $250,000 higher than the previous bid or bids. The Auction will continue in one or more rounds of bidding and will conclude after each Qualified Bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the

consideration provided by Subsequent Bids (including any Subsequent Bid by Buyer), the Selling Debtor Entities may give effect to any Break-Up Fee or Expense Reimbursement that may be payable to the Buyer under the Agreement as well as any assets and/or equity interests to be retained by any Selling Debtor Entity.

### Selection Of Successful Bid

At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer for the Acquired Assets and the Bearings Business received at the Auction (the "Successful Bid(s)," and the bidder(s) making such bid, the "Successful Bidder(s)").

The Selling Debtor Entities will sell the Acquired Assets for the highest or otherwise best Qualified Bid to the Successful Bidder(s), upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. If, after an Auction in which the Buyer: (i) will have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement, and (ii) is the Successful Bidder, it will, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid, less (b) the Break-Up Fee.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Court for approval does not constitute the Selling Debtor Entities' acceptance of the bid. The Selling Debtor Entities will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

### The Sale Hearing

The Sale Hearing will be held before the Honorable Judge Robert Drain on February 21, 2008 at 10:00 a.m. (prevailing Eastern Time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing. If the Selling Debtor Entities do not receive any Qualified Bids (other than the Qualified Bid of Buyer), the Selling Debtor Entities will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Buyer following entry of the Sale Approval Order. If the Selling Debtor Entities do not receive additional Qualified Bids, then, at the Sale Hearing, the Selling Debtor Entities will seek approval of the Successful Bid, as well as the second highest or best Qualified Bid (the "Alternate Bid" and such bidder, the "Alternate Bidder"). Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of: (i) failure of a condition precedent beyond the control of either the Selling Debtor Entities or the Successful Bidder, or (ii) a breach or failure to perform on the part of such Successful Bidder, then the Alternate Bid will be deemed to be the Successful Bid and the Selling Debtor Entities will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid without further order of the Bankruptcy Court.

### Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder, together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder.  If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Selling Debtor Entities will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Selling Debtor Entities.  On the Return Date, the Selling Debtor Entities will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### Reservations Of Rights

The Selling Debtor Entities, after consultation with the agents for their secured lenders and the Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Buyers' bid) that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Selling Debtor Entities, their estates, and stakeholders as determined by Selling Debtor Entities in their sole discretion.