**EXHIBIT 4**

DELPHI
Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839843
Employer I.D. NO. NY 7226630

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094
US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896
US

# PURCHASE ORDER: LPS92725

PAGE 1

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown o[n] Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post

VENDOR NUMBER 06-202-1696

TO: FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550
US

ORDER DATE: 02/02/05
PHONE: 716-439-2438
C KOCH
DT01
BUYER: Christine M. Koch

ALTERATION ISSUE DATE:
ALTERATION EFFECTIVE DATE:

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH
F.O.B.: SQ
SHIP VIA: HOLLAND MOTOR EXPRESS INC.

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / ECO NUMBER / DATE ISSUED / FAX CODE | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | | |
| | | | DISBURSEMENTS SUPPLIER RELATIONS PHONE 248-874-4636. YOU CAN NOW VIEW PAYMENT STATUS ON-LINE USING E-DACOR. LOGON TO THE DELPHI SUPPLIER PORTAL AT HTTP://DELPHI.COVISINT.COM FOR FREE REGISTRATION. CLICK ON THE REGISTRATION TAB, GO TO REGISTRATION TIMING AND CLICK ON "CLICK ON HERE TO REQUEST AN IMMEDIATE CONTACT FOR YOUR BUSINESS", FILL OUT THE FORM AND FOLLOW THE INSTRUCTIONS. | | | |
| | | | ------------IMPORTANT------------ THIS ORDER WILL PAY ON RECEIPT. PLEASE DO NOT SEND AN INVOICE. DO, HOWEVER, SEND A MONTH END STATEMENT OF UNPAID ITEMS AND/OR ADDITIONAL CHARGES I.E., FREIGHT, TAX, SETUP, ETC. TO DELPHI AUTOMOTIVE SYSTEMS DISBURSEMENTS, PO BOX 1550, FLINT, MI 48501-1550. THIS IS AN INVOICELESS SYTEM WHICH GENERATES PAYMENT BASED ON RECEIPT. IF P.O. IS IN ERROR, PLEASE ADVISE THE BUYER LISTED BEFORE SHIPPING. | | | |
| | | | -----------SHELF LIFE----------- FOR MATERIAL WITH A SHELF LIFE OF LESS THAN 2 YEARS, SUPPLIER MUST NOTIFY BUYER AND PROPERLY LABEL THE MATERIAL WITH AN EXPIRATION DATE. | | | |

Fax to- Shelley Dean
From- Christine Koch
2/25

A005974 USER DIANE K BUTCH

F-0120 1/99

CONTINUE PAGE 2
LEGAL



**DELPHI** Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7726636

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

**PURCHASE ORDER:** LPS92725 PAGE 2

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Ins Parcel Post.

VENDOR NUMBER 06-202-1696

TO: FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

| ORDER DATE | |
|---|---|
| 02/02/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH (Buyer) |
| ALTERATION EFFECTIVE DATE | DT01 |

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH
F.O.B.: SQ
SHIP VIA: HOLLAND MOTOR EXPRESS INC.

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | DESCRIPTION | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | NO CHEMICAL SHALL BE BROUGHT ONSITE FOR DEMONSTRATION EXPERIMENTAL, TRIAL OR EVALUATION PURPOSES OR FOR FULL USAGE WITHOUT PRIOR APPROVAL OF DELPHI HARRISON THERMALS' HAZARDOUS MATERIALS REVIEW COMMITTEE. IT IS THE SUPPLIERS/CONTRACTORS RESPONSIBILITY TO ENSURE THAT THE EMPLOYEE HAS OBTAINED A CHEMICAL USE APPROVAL (CUA) NUMBER PRIOR TO BRINGING ANY CHEMICAL ONSITE. | | | |
| | | | IF ITEMS ARE UNDER 40 LBS., AND TOTAL SHIPMENT LESS THAN 150 LBS., SHIP UPS. ANY QUESTIONS ON FREIGHT, CALL 716-439-2243 FOR UPS ACCOUNT NUMBER. TOOLS ARE PROPERTY OF DELPHI HARRISON THERMAL AND ARE TO BE MAINTAINED BY SUPPLIER FOR OUR EXCLUSIVE USE UNTIL RELEASED BY THE BUYER IN WRITING. DO NOT INVOICE WITHOUT PPAP APPROVAL NUMBER. REGARDLESS OF METHOD OF TOOL PAYMENT AND OWNERSHIP, IT IS DELPHI'S EXPECTATION THAT ALL SUPPLIERS WILL CONSTRUCT OR FURNISH TOOLS OF COMMERCIAL QUALITY, SUITABLE FOR THE SPECIFIC PART, APPLICATION, AND PROGRAM. PLEASE COMPLETE TOOLING COST DETAIL BREAKDOWN FORM. | | | |
| | | | SUPPLIERS ARE EXPECTED TO MEET ALL REQUIREMENTS DETAILED IN THE DELPHI GLOBAL PURCHASING SUPPLIER GUIDELINES AND REFERENCE DOCUMENTS. THESE GUIDE-LINES AND DOCUMENTS ARE AVAILABLE ON THE DELPHI | | | |

A005974 USER DIANE M BUTCH

F-OLPO 1/99

CONTINUE PAGE 3

LEGAL

mol # 555729 - ok to invoic

**DELPHI**
Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012038649
Employer I.D. NO. NY 7226638

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

**PURCHASE ORDER:** LPS92725 PAGE 3

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insu
Parcel Post.

VENDOR NUMBER 06-202-1696

TO: FLANBEAU CORP
FLANBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

ORDER DATE: 02/02/05
PHONE: 716-439-2438
C KOCH
DT01 Buyer
ALTERATION ISSUE DATE:
ALTERATION EFFECTIVE DATE:

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH
F.O.B.: SQ
SHIP VIA: HOLLAND MOTOR EXPRESS INC.

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | DESCRIPTION | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | AUTO WEBSITE AT WWW.DELPHIAUTO.COM (BY CLICKING ON "SUPPLIERS" IN THE HEADER AND "SUPPLIER STANDARDS" ON SUPPLIER PAGE. | | | |
| | | | -----------IMPORTANT INVOICING INSTRUCTIONS-------- ALL INVOICES MUST SHOW THE ABOVE P.O. NUMBER, THE ITEM CODE NO. AND/OR PART NO., SHIPMENT I.D. NO. SEND INVOICE TO BUYER LISTED. | | | |
| | | | THE GENERAL TERMS AND CONDITIONS THAT APPEAR ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE NULL AND VOID AND REPLACED BY DELPHI'S GENERAL TERMS AND CONDITIONS DATED MARCH 2004 FOUND ON WWW.DELPHI.COM/SUPPLIERS. | | | |
| | | | LOCKPORT PURCHASING FAX NOS: 716-439-2216,-3818 | | | |
| | | | TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL. PLEASE FORWARD APPROPRIATE DOCUMENTATION TO THE ASSIGNED BUYER UPON PPAP APPROVAL. | | | |
| 00001 | 1 | PR021707 001 | TO COVER COST OF ALTERED TOOLS TO PRODUCE: PART NO: 0345732-OLD P/N PART NO: 15123411-NEW P/N, NO. SAMPLES PPAP: 5, ATTENTION: BOB KEITZ, PLANT: DS, — Date required 02/16/05, D, 0.00% | 3400.0000 | | LOT |

A005974 USER DIANE M BUTCH

F-01PO 1/89

CONTINUE PAGE 4

LEGAL

DELPHI Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7226636

**PURCHASE ORDER:** LPS92725 PAGE 4

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post.

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

VENDOR NUMBER 06-202-1696
TO: FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

ORDER DATE: 02/02/05
ALTERATION ISSUE DATE:
ALTERATION EFFECTIVE DATE:

PHONE: 716-439-2438
C KOCH
DT01 Buyer

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH
F.O.B.: SQ
SHIP VIA: HOLLAND MOTOR EXPRESS INC.

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | KOLA NAME / DESCRIPTION / P/O NUMBER / DATE REQUIRED / TAX CODES | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | DWG. NO: 15123411 CHG LEVEL: 01<br>ESTIMATE/MDCA NUMBER: CN 66241,<br>PLATFORM: GMX367, TYPE OF TOOL:<br>MODIFY HORIZONTAL DTM SENSOR PAD.<br>QUOTE: 7/22/04 EMAIL, W/O: 08242055<br>TOOL REL NO: 8242, PROJECT NO: 1313 LINE 85T<br>TERMS: MNS2-2 NET UPON PPAP APPROVAL. TOOL<br>ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL.<br>WHO ORDERED: C. KOCH I.A.<br><br>TERMS AND CONDITIONS SEPTEMBER 2004, APPLY<br>OF WHICH SUPPLIER HAS RECEIVED A COPY. | | | |

A005974 USER DIANE M BUTCH

F-DLPO 1/93

LAST PAGE
LEGAL

Feb. 25. 2005 3:05PM No. 3757 P. 5

Tooling

DELPHI
Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7226636

# PURCHASE ORDER: LPS95192

PAGE 5

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 81-253-8135

TO: PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order. This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative.
If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | |
|---|---|
| 04/14/05 | PHONE: 716-439-2438<br>C KOCH |
| ALTERATION ISSUE DATE | DT01 Buyer |
| ALTERATION EFFECTIVE DATE | |

| PAYMENT TERMS | F.O.B. | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | FURNISH TOOLS OF COMMERCIAL QUALITY, SUITABLE FOR THE SPECIFIC PART, APPLICATION, AND PROGRAM. PLEASE COMPLETE TOOLING COST DETAIL BREAKDOWN FORM.<br>----------IMPORTANT INVOICING INSTRUCTIONS--------<br>ALL INVOICES MUST SHOW THE ABOVE PURCHASE ORDER NUMBER,ITEM CODE NUMBER, AND/OR PART NUMBER OR SHIPMENT ID NUMBER.<br>SEND INVOICE TO THE BUYER LISTED ON THIS P.O.<br><br>LOCKPORT PURCHASING FAX #'S: 716-439-2216,& 3818 | | | |
| 00001 | 1 | PR020730 001 | 06/01/05 D 0.00%<br>TO COVER COST OF ALTERED TOOLS TO PRODUCE:<br>PART NAME: RH & LH REAR FLOOR DUCTS<br>PART NUMBERS: 6E5H-18D326-AE & 635H-18D327-AE<br>DRAWING NUMBERS: 6E5H-18D326-AE & 635H-18D327-AE<br>NO. SAMPLES PPAP: 5 ATTENTION: LORRI KING<br>TYPE OF TOOL: INCORPORATE PART NUMBER CHANGE ON BOTH BLOW MOLDING TOOLS.<br>TOOL RELEASE NO.: 8492<br>PROJECT NO.: 1325-032<br>CN#72061<br>PLATFORM: FORD C03XX<br>CAPACITY PER SHIFT: NO CHANGE<br>NO. OF SHIFTS PER 24 HR. PERIOD: NO CHANGE<br>QUOTE: 2003-03550F | 6821.0000 | | LOT |

A006024 USER PAULA J EICK

F•OLPO 1/99

CONTINUE PAGE 6

SUPPLIER

**DELPHI** Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7226636

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

VENDOR NUMBER 81-253-8135

TO: PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

# PURCHASE ORDER: LPS95192

PAGE 6

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post.

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer. On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order. This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative. If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | |
|---|---|
| 04/14/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH |
| | DT01 Buyer |
| ALTERATION EFFECTIVE DATE | |

| PAYMENT TERMS | F.O.B. | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | TERMS: MNS2-2, NET UPON PPAP APPROVAL.<br>TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL.<br>WHO ORDERED: CHRISTINE KOCH<br><br>TERMS AND CONDITIONS SEPTEMBER 2004, APPLY<br>OF WHICH SUPPLIER HAS RECEIVED A COPY. | | | |

A006024 USER PAULA J EICK

LAST PAGE

SUPPLIER

F-OLPO 1/99



# DELPHI

Automotive Systems

Delphi Harrison Thermal Sys.
Employer I.D. NO. 01239643
Employer I.D. NO. NY 7220696

## PURCHASE ORDER: LP595192

PAGE 1

**DELPHI AUTOMOTIVE SYSTEMS**
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094                                                US

SHIP TO: **DELPHI THERMAL & INTERIOR**
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896                                           US

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO                                               US

INVOICE TO:*****PAY ON RECIPT*****
          *****NO INVOICE REQUIRED*****
          CUST SERVICE DIAL 248-874-4636
          FLINT MI
          48501-1550                                 US

This Number Must Appear On All Invoices, Packing Slips,
Packages and Bills of Lading.
(2) copies of your Packing slip must accompany each
Shipment. Item Identification Numbers must be shown on
Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not, Duth: Accounts Payable
Declare Valuation of Express Shipments or Insure
Parcel Post.

ORDER DATE 04/14/05
ALTERNATION ISSUE DATE

ALTERNATION EFFECTIVE DATE

PHONE: 716-439-2438
C KOCH
DT01

| PAYMENT TERMS NET | ITEM SEQUENCE PAYMENT SEQUENCE | QUANTITY ORDERS | ITEM IDENTIFICATION NUMBER | NOUN NAME | DESCRIPTION | F.O.B. | REVS NUMBER | DATE REQUIRED | TAX CONVN. | SHIP VIA RYDER DISTRIBUTION RESOURCES | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2ND DAY OF 2ND MONTH | | | | | | SP | | | | | | | |

THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY
USD DOLLAR (UNITED STATES)

TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL.
PLEASE FORWARD APPROPRIATE DOCUMENTATION TO THE
ASSIGNED BUYER UPON PPAP APPROVAL.

THIS ORDER WILL PAY ON RECEIPT. PLEASE DO NOT SEND
AN INVOICE UNLESS THIS IS THE FIRST PAY ON RECEIPT
ORDER YOU RECEIVED FROM US. THIS IS NOT A C.O.D.
ORDER, BUT AN INVOICELESS SYSTEM WHICH GENERATES
PAYMENT BASED ON MATERIAL RECEIPT. QUESTIONS CALL
DISBURSEMENT SERVICES 248-874-4636.
IF P.O. IS IN ERROR, CONTACT BUYER BEFORE PROCEEDING.
--IF YOUR COMPANY'S AFFILIATE IS EXPECTING PAYMENT
FOR THIS ORDER, PLEASE ADVISE THE DELPHI BUYER TO
CANCEL AND REISSUE THE ORDER TO THE AFFILIATE.
-ALL PACKING SLIPS MUST SHOW THE ABOVE P.O. #,
CORRESPONDING ITEM CODE/AND OR PART NUMBER, AND
THE ASSIGNED RELEASE NUMBER, IF APPLICABLE.

IF ITEM (S) ARE UNDER 40 LBS., AND TOTAL SHIPMENT IS
LESS THAN 150 LBS.-SHIP UPS. ANY QUESTIONS ON FREIGHT
CONTACT 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 (J.FINK) FOR CORRECT ACCOUNT NO.

SUPPLIERS ARE EXPECTED TO MEET ALL REQUIREMENTS

RECEIVED
APR 1 8 2005
BY:
A0006024   USER PAULA J EICK

F-QLFD   1/99



DELPHI Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7226636

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER: LPS95192

PAGE 2

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 81-253-8135

TO: PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 04/14/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 Buyer |
| ALTERATION EFFECTIVE DATE | |

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order. This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative. If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| PAYMENT TERMS | F.O.B. | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | DETAILED IN THE DELPHI GLOBAL PURCHASING SUPPLIER GUIDELINES AND REFERENCE DOCUMENTS. THESE GUIDELINES & DOCUMENTS ARE AVAILABLE ON THE DELPHI SYSTEMS WEBSITE, WWW.DELPHI.COM -BY CLICKING ON "SUPPLIERS" IN THE HEADER & THEN "SUPPLIER STANDARDS" ON THE SUPPLIER PAGE. | | | |
| | | | ------------------ | | | |
| | | | NO CHEMICAL SHALL BE BROUGHT ONSITE FOR DEMONSTRATION EXPERIMENTAL, TRIAL, OR EVALUATION PURPOSES, OR FOR FULL USAGE, WITHOUT PRIOR APPROVAL OF DELPHI THERMAL & INTERIOR'S HAZARDOUS MATERIALS REVIEW COMMITTEE. IT IS SUPPLIER'S/CONTRACTOR'S RESPONSIBILITY TO ENSURE THAT THE EMPLOYEE HAS OBTAINED A CHEMICAL USE APPROVAL (CUA#) PRIOR TO BRINGING ANY CHEMICAL ONSITE | | | |
| | | | YOU CAN VIEW PAYMENT STATUS ONLINE USING E-DACOR. LOGON TO THE DELPHI SUPPLIER PORTAL AT HTTP://DELPHI.COVISINT.COM FOR FREE REGISTRATION. CLICK ON THE REGISTRATION TAB, GO TO REGISTRATION TIMING AND CLICK ON "CLICK ON HERE TO REQUEST AN IMMEDIATE CONTACT FOR YOUR BUSINESS", FILL OUT THE FORM AND FOLLOW THE INSTRUCTIONS. | | | |
| | | | THE GENERAL TERMS AND CONDITIONS THAT APPEAR ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE NULL AND VOID AND REPLACED BY DELPHI'S GENERAL TERMS AND CONDITIONS | | | |

A006024 USER PAULA J EICK

CONTINUE PAGE 3



DELPHI
Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7226636

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER: LPS95192

PAGE 3

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 81-253-8135

TO: PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

| ORDER DATE | |
|---|---|
| 04/14/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH |
| | DT01 (Buyer) |
| ALTERATION EFFECTIVE DATE | |

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer.
On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order. This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative. If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| PAYMENT TERMS | F.O.B. | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | DATED MARCH 2004 FOUND ON WWW.DELPHI.COM/SUPPLIERS. | | | |

---------------------------------------------------------------

---------------------------------------------------------------

SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL TERMS AND CONDITIONS ARE INCORPORATED IN, AND A PART OF, THIS CONTRACT AND EACH PURCHASE ORDER, RELEASE, REQUISITION, WORK ORDER, SHIPPING INSTRUCTION, SPECIFICATION AND OTHER DOCUMENT ISSUED BY BUYER OR ACCEPTED IN WRITING BY BUYER, WHETHER EXPRESSED IN WRITTEN FORM OR BY ELECTRONIC DATA INTERCHANGE, RELATING TO THE GOODS AND/OR SERVICES TO BE PROVIDED BY SELLER PURSUANT TO THIS CONTRACT (SUCH DOCUMENTS ARE COLLECTIVELY REFERRED TO AS THIS "CONTRACT"). A COPY OF BUYER'S GENERAL TERMS AND CONDITIONS IS AVAILABLE UPON WRITTEN REQUEST TO BUYER OR VIA THE INTERNET AT DELPHI'S WEBSITE, DELPHI.COM SELLER ACKNOWLEDGES AND AGREES THAT IT HAS READ AND UNDERSTANDS BUYER'S GENERAL TERMS AND CONDITIONS. IF SELLER ACCEPT THIS CONTRACT IN WRITING OR

A006024 USER PAULA J EICK

CONTINUE PAGE 4

SUPPLIER

F-OLPO 1/99



DELPHI Automotive Systems

Delphi Harrison Thermal Sys.
D-U-N-S 012839643
Employer I.D. NO. NY 7226636

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

**PURCHASE ORDER:** LPS95192 PAGE 4

This Number Must Appear On All Invoices, Packing Slips, Packages and Bills of Lading.
(2) copies of your packing slip must accompany each shipment. Item Identification Number(s) must be shown on Packing Slips and Invoices.
Invoice Attn: Accounts Payable
Do Not Declare Valuation of Express Shipments or Insure Parcel Post.

VENDOR NUMBER 81-253-8135

TO: PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

This order is not binding until accepted. Acceptance should be executed on acknowledgment copy which should be returned to Buyer. On the reverse side hereof are the terms and conditions to which Seller agrees by acceptance of this order. This order, including the terms and conditions on the face and reverse side hereof, contains the complete and final agreement between Buyer and Seller and no other agreement in any way modifying any of said terms and conditions will be binding upon the Buyer unless made in writing and signed by Buyer's authorized representative. If Government Contract Number is Shown Hereon, additional Terms and Conditions Attached Hereto Apply.

| ORDER DATE | |
|---|---|
| 04/14/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH |
| | DT01 Buyer |
| ALTERATION EFFECTIVE DATE | |

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH
F.O.B.: SP
SHIP VIA: RYDER DISTRIBUTION RESOURCES

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE/% | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | COMMENCES ANY OF THE WORK OR SERVICES WHICH ARE THE SUBJECT OF THIS CONTRACT, SELLER WILL BE DEEMED TO HAVE ACCEPTED THIS CONTRACT AND BUYER'S GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY WITHOUT MODIFICATION. ANY ADDITIONS TO, CHANGES IN, MODIFICATIONS OF, OR REVISIONS OF THIS CONTRACT (INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS) WHICH SELLER PROPOSES WILL BE DEEMED TO BE REJECTED BY BUYER EXCEPT TO THE EXTENT THAT BUYER EXPRESSLY AGREES TO ACCEPT ANY SUCH PROPOSALS IN WRITING. | | | |
| | | | -----------SHELF LIFE------------------------- | | | |
| | | | FOR MATERIAL WITH A SHELF LIFE OF LESS THAN 2 YEARS, SUPPLIER MUST NOTIFY BUYER AND PROPERLY LABEL THE MATERIAL WITH AN EXPIRATION DATE. | | | |
| | | | ---------------------------------------------- | | | |
| | | | TOOLS ARE PROPERTY OF DELPHI THERMAL & INTERIOR AND MUST BE MAINTAINED BY SUPPLIER FOR OUR EXCLUSIVE USE UNTIL RELEASED BY THE BUYER IN WRITING. DO NOT INVOICE WITHOUT PPAP APPROVAL NUMBER. REGARDLESS OF METHOD OF TOOL PAYMENT AND OWNERSHIP, IT IS DELPHI'S EXPECTATION THAT ALL SUPPLIERS WILL CONSTRUCT OR | | | |

A006024 USER PAULA J EICK

F-OLPO 1/99

CONTINUE PAGE 5

SUPPLIER

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

VENDOR NUMBER 06-202-1696
FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

MOI 601602

# PURCHASE ORDER

PAGE 1

LPS96009

Tooling

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

| ORDER DATE | BUYER |
|---|---|
| 05/12/05 | PHONE: 716-439-2438<br>C KOCH<br>DT01 |
| ALTERATION ISSUE DATE | |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SQ | | HOLLAND MOTOR EXPRESS INC. |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | | |

TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL. PLEASE FORWARD APPROPRIATE DOCUMENTATION TO THE ASSIGNED BUYER UPON PPAP APPROVAL.

THIS ORDER WILL PAY ON RECEIPT. PLEASE DO NOT SEND AN INVOICE UNLESS THIS IS THE FIRST PAY ON RECEIPT ORDER YOU RECEIVED FROM US. THIS IS NOT A C.O.D. ORDER, BUT AN INVOICELESS SYSTEM WHICH GENERATES PAYMENT BASED ON MATERIAL RECEIPT. QUESTIONS CALL DISBURSEMENT SERVICES 248-874-4636.
IF P.O. IS IN ERROR, CONTACT BUYER BEFORE PROCEEDING.
--IF YOUR COMPANY'S AFFILIATE IS EXPECTING PAYMENT FOR THIS ORDER, PLEASE ADVISE THE DELPHI BUYER TO CANCEL AND REISSUE THE ORDER TO THE AFFILIATE.
-ALL PACKING SLIPS MUST SHOW THE ABOVE P.O. #, CORRESPONDING ITEM CODE/AND OR PART NUMBER, AND THE ASSIGNED RELEASE NUMBER, IF APPLICABLE.
-------------------------------------
IF ITEM(S) ARE UNDER 40 LBS., AND TOTAL SHIPMENT IS LESS THAN 150 LBS.-SHIP UPS. ANY QUESTIONS ON FREIGHT CONTACT 248-655-0901 (J.FINK) FOR CORRECT ACCOUNT NO.
-----------------
SUPPLIERS ARE EXPECTED TO MEET ALL REQUIREMENTS

50,945.00

RECEIVED
MAY 16 2005
BY:

A006044 USER PAULA J EICK

CONTINUE PAGE 2

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS96009

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 06-202-1696
FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 05/12/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH |
| | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SQ | HOLLAND MOTOR EXPRESS INC. |

| ITEM SEQUENCE | QUANTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME DESCRIPTION RFQ NUMBER DATE REQUIRED TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | DETAILED IN THE DELPHI GLOBAL PURCHASING SUPPLIER GUIDELINES AND REFERENCE DOCUMENTS. THESE GUIDELINES & DOCUMENTS ARE AVAILABLE ON THE DELPHI SYSTEMS WEBSITE, WWW.DELPHI.COM -BY CLICKING ON "SUPPLIERS" IN THE HEADER | | | |
| | | | ------------------ | | | |
| | | | NO CHEMICAL SHALL BE BROUGHT ONSITE FOR DEMONSTRATION EXPERIMENTAL, TRIAL, OR EVALUATION PURPOSES, OR FOR FULL USAGE, WITHOUT PRIOR APPROVAL OF DELPHI THERMAL & INTERIOR'S HAZARDOUS MATERIALS REVIEW COMMITTEE. IT IS SUPPLIER'S/CONTRACTOR'S RESPONSIBILITY TO ENSURE THAT THE EMPLOYEE HAS OBTAINED A CHEMICAL USE APPROVAL (CUA#) PRIOR TO BRINGING ANY CHEMICAL ONSITE | | | |
| | | | YOU CAN VIEW PAYMENT STATUS ONLINE USING E-DACOR. LOGON TO THE DELPHI SUPPLIER PORTAL AT HTTP://DELPHI.COVISINT.COM FOR FREE REGISTRATION. CLICK ON THE REGISTRATION TAB, GO TO REGISTRATION TIMING AND CLICK ON "CLICK ON HERE TO REQUEST AN IMMEDIATE CONTACT FOR YOUR BUSINESS", FILL OUT THE FORM AND FOLLOW THE INSTRUCTIONS. | | | |
| | | | THE GENERAL TERMS AND CONDITIONS THAT APPEAR ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE NULL AND VOID AND REPLACED BY DELPHI'S GENERAL TERMS AND CONDITIONS DATED MARCH 2004 FOUND ON WWW.DELPHI.COM/SUPPLIERS. | | | |

A006044 USER PAULA J EICK

CONTINUE PAGE 3

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS96009

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 06-202-1696
FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 05/12/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH

F.O.B.: SQ — DESTINATION UNLESS OTHERWISE INDICATED

SHIP VIA: HOLLAND MOTOR EXPRESS INC.

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL TERMS AND CONDITIONS ARE INCORPORATED IN, AND A PART OF, THIS CONTRACT AND EACH PURCHASE ORDER, RELEASE, REQUISITION, WORK ORDER, SHIPPING INSTRUCTION, SPECIFICATION AND OTHER DOCUMENT ISSUED BY BUYER OR ACCEPTED IN WRITING BY BUYER, WHETHER EXPRESSED IN WRITTEN FORM OR BY ELECTRONIC DATA INTERCHANGE, RELATING TO THE GOODS AND/OR SERVICES TO BE PROVIDED BY SELLER PURSUANT TO THIS CONTRACT (SUCH DOCUMENTS ARE COLLECTIVELY REFERRED TO AS THIS "CONTRACT"). A COPY OF BUYER'S GENERAL TERMS AND CONDITIONS IS AVAILABLE UPON WRITTEN REQUEST TO BUYER OR VIA THE INTERNET AT DELPHI'S WEBSITE, DELPHI.COM SELLER ACKNOWLEDGES AND AGREES THAT IT HAS READ AND UNDERSTANDS BUYER'S GENERAL TERMS AND CONDITIONS. IF SELLER ACCEPT THIS CONTRACT IN WRITING OR COMMENCES ANY OF THE WORK OR SERVICES WHICH ARE THE | | | |

A006044 USER PAULA J EICK

CONTINUE PAGE 4

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS96009

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 06-202-1696
FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 05/12/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH<br>DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SO | | HOLLAND MOTOR EXPRESS INC. |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | SUBJECT OF THIS CONTRACT, SELLER WILL BE DEEMED TO HAVE ACCEPTED THIS CONTRACT AND BUYER'S GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY WITHOUT MODIFICATION. ANY ADDITIONS TO, CHANGES IN, MODIFICATIONS OF, OR REVISIONS OF THIS CONTRACT (INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS) WHICH SELLER PROPOSES WILL BE DEEMED TO BE REJECTED BY BUYER EXCEPT TO THE EXTENT THAT BUYER EXPRESSLY AGREES TO ACCEPT ANY SUCH PROPOSALS IN WRITING.<br><br>-----------SHELF LIFE------------------------<br>FOR MATERIAL WITH A SHELF LIFE OF LESS THAN 2 YEARS, SUPPLIER MUST NOTIFY BUYER AND PROPERLY LABEL THE MATERIAL WITH AN EXPIRATION DATE.<br>---------------------------------------------<br><br>TOOLS ARE PROPERTY OF DELPHI THERMAL & INTERIOR AND MUST BE MAINTAINED BY SUPPLIER FOR OUR EXCLUSIVE USE UNTIL RELEASED BY THE BUYER IN WRITING. DO NOT INVOICE WITHOUT PPAP APPROVAL NUMBER. REGARDLESS OF METHOD OF TOOL PAYMENT AND OWNERSHIP, IT IS DELPHI'S EXPECTATION THAT ALL SUPPLIERS WILL CONSTRUCT OR FURNISH TOOLS OF COMMERCIAL QUALITY, SUITABLE FOR THE | | | |

A006044 USER PAULA J EICK

CONTINUE PAGE 5

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

MOl 601602

# PURCHASE ORDER

PAGE 5

LPS96009

SHIP TO: DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 06-202-1696
FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 05/12/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

PAYMENT TERMS: NET 2ND DAY OF 2ND MONTH

F.O.B.: SQ — DESTINATION UNLESS OTHERWISE INDICATED

SHIP VIA: HOLLAND MOTOR EXPRESS INC.

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | SPECIFIC PART, APPLICATION, AND PROGRAM. PLEASE COMPLETE TOOLING COST DETAIL BREAKDOWN FORM.<br>----------IMPORTANT INVOICING INSTRUCTIONS--------<br>ALL INVOICES MUST SHOW THE ABOVE PURCHASE ORDER NUMBER,ITEM CODE NUMBER, AND/OR PART NUMBER OR SHIPMENT ID NUMBER.<br>SEND INVOICE TO THE BUYER LISTED ON THIS P.O.<br><br>LOCKPORT PURCHASING FAX #'S: 716-439-2216,& 3818 | | | |
| 00001 | 1 | PR020734 001 | 09/01/05 D 0.00%<br>TO COVER COST OF ALTERED TOOLS TO PRODUCE:<br>PART NAME: OVERFLOW BOTTLE<br>OLD PART NUMBER: 10346645<br>NEW PART NUMBER: 15822510<br>DRAWING NUMBER: 15822510 CHG. LEVEL: 01<br>CN#72375, PLATFORM: W-CAR LS4<br>NO. SAMPLES PPAP: 5 ATTN: LORRI KING<br>TYPE OF TOOL: (1) REMOVE VENT GUILLOTINE, ADD DRILL TO SECONDARY FIXTURE, RELOCATE SEAL IN LEAK TESTER. (2) GROMMET INSTALLATION PRESS, (3) HOSE ASSEMBLY STATION, (4) RAISE COLD FILL LINE, (5) CHANGE PART NUMBER ON BOTH CAVITIES.<br>CAPACITY PER SHIFT: NO CHANGE<br>NO. OF SHIFTS PER 24-HR. PERIOD: NO CHANGE<br>TOOL RELEASE NO.: 8488 | 50945.0000 | | PC |

A006044 USER PAULA J EICK

CONTINUE PAGE 6

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS96009

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 06-202-1696
FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI
53913

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 05/12/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH |
| | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SQ | | HOLLAND MOTOR EXPRESS INC. |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | PROJECT NO.: 1357-125<br>QUOTE: LS4-V8 ENGINE, DATED 2/5/05 & 2/11/05<br>TERMS: MNS2-2, NET UPON PPAP APPROVAL.<br>TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL.<br>WHO ORDERED: CHRISTINE KOCH<br><br>TERMS AND CONDITIONS SEPTEMBER 2004, APPLY<br>OF WHICH SUPPLIER HAS RECEIVED A COPY. | | | |

A006044 USER PAULA J EICK

CONTINUE PAGE 7

# PURCHASE ORDER TERMS AND CONDITIONS

1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this Contract). Seller acknowledges and agrees that it has read and understands these General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subjects of this contract, Seller will be deemed to have accepted this contract and these General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

2. SHIPPING AND BILLING

2.1 Shipping. Seller will (a) properly pack, mark and ship goods as instructed by buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) not charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, fees, etc.) unless otherwise expressly stated in this contract, (d) provide packing slips with each shipment that identify Buyers contract and/or release number and the date of the shipment, and (e) promptly forward the original bill of lading or other shipping receipt with respect to each shipment as Buyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires. The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods.

2.2 Billing. Seller will (a) accept payment based upon Buyers Evaluated Receipt Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer. If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services. Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the absence of any liens, encumbrances and claims on such goods or services.

2.3 Delivery Schedules. Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract. Time is of the essence with respect to all delivery schedules Buyer establishes. Buyer will not be required to pay for any goods that exceed the quantities specified in Buyers delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyers delivery schedules. Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyers delivery schedules. If Buyer determines that the requirements of Buyers customers or market, economic or other conditions require changes in delivery schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other modification of this Contract.

2.4 Premium Shipments. If Seller fails to have goods ready for shipment in time to meet Buyers delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyers actions caused Seller to fail to meet Buyers delivery schedules, in which case Buyer will pay any costs for premium shipment.

3. SPECIFICATION, DESIGN AND SCOPE CHANGES

Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes. Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyers payment of reasonable costs of modifications to Sellers Equipment and Facilities (as defined in Article 16) Necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes in Sellers cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

4. QUALITY AND INSPECTION

Seller will participate in Buyers supplier quality and development program(s) and comply with all quality requirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its representatives and consultants to (i) inspect Sellers books and records in order to monitor Sellers compliance with this Contract and Sellers financial condition and (ii) enter Sellers facilities at reasonable times to inspect such facilities and any goods, materials and property that relate to this Contract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

5. NON-CONFORMING GOODS

Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections. Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyers rejection of non-conforming goods (or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to arrange for the shipment of any non-conforming goods back to Seller at Sellers expense. Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods. Buyers payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyers right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

6. FORCE MAJEURE

If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such partys fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. During any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other available sources, in which case the quantities under this Contract will be reduced by the quantities of such substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the substitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide substitute goods from other available sources in quantities and at times buyer requests and at the prices set forth in this Contract. If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without liability. Before any of Sellers labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Sellers facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

7. WARRANTY

7.1 General. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for non-conforming goods.

7.2 Date and Time Processing. Seller warrants that goods (and any components thereof) that are products (including computer hardware, software, firmware, machinery and equipment) covered by this Contract must at all times accurately process, handle, calculate, compare and sequence date and time data from, into, within and between the 20th and 21st centuries, including leap year calculations.

7.3 Warranty Period. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract.

8. INGREDIENTS AND HAZARDOUS MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

10. TERMINATION FOR BREACH

Buyer may terminate all or any part of this contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Sellers warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract; or (c) fails to assure timely and proper completion of services or delivery of goods.

11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Sellers sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyers written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Sellers standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

12. TECHNICAL INFORMATION

12.1 Exchange of Information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyers drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyers customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may here-after disclose in connection with the goods or services covered by this Contract.

12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyers customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, microcode, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing the Contract (separately or as a part of any goods and components) are works made for hire and the sole property of Buyer. To the extent that all right, title and interest in any intellectual property rights in such works authorship.

13. INDEMNIFICATION

13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that such infringement arose out of compliance with Buyers specifications.

13.2 Activities on Buyers Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyers or Buyers customers premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyers customer.

13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyers specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than seller.

14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyers request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages r expenses (including reasonable attorney or other professional fees and disbursements) arising from the Sellers noncompliance with this Article.

15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that uyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Sellers obligations or liabilities under this Contract.

16. SELLERS EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract (Sellers Equipment). Seller will insure Sellers Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Sellers Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Sellers Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Sellers Equipment. The option will not apply to the extent that Sellers Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Sellers right to exercise this option is not conditioned on Sellers breach or Buyers termination of this Contract or upon payment of any other amounts due under this Contract.

17. BUYERS PROPERTY

17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part (Buyers Property), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyers property (such as tooling), Seller will purchase and pay for such Buyers Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyers Property (such as tooling) without separate or additional payment or reimbursement by Seller, Seller acknowledges nd agrees that Buyers issuance of this Contract is good and sufficient consideration for such Buyers Property and that title to such Buyers property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyers property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyers property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyers ownership of Buyers property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment or incorporation into Buyers property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyers property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyers Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyers property for work performed on such property or otherwise. Goods manufactured based on Buyers drawings and/or specifications may not be used for Sellers own use or sold to third parties without Buyers express written authorization.

17.2 Sellers Duties with Respect to Buyers Property. While Buyers property is in Sellers possession and until Seller delivers Buyers property back to Buyer, Seller bears the risk of loss and damage to Buyers property. Seller will be responsible for the cost of repairing or replacing Buyers property if it is damaged or destroyed regardless of cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyers Property at Sellers own expense, (b) use Buyers Property only for the performance of this Contract, (c) deem Buyers property to be personal property, (d) conspicuously mark Buyers property as the property of Buyer and maintain such markings, (e) not commingle Buyers property with the property of Seller or with that of a third person, (f) not move Buyers Property from Sellers premises without Buyers written approval, and (g) use Buyers Property in compliance with Buyers or the manufacturers instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Sellers premises at all reasonable times to inspect Buyers Property and Sellers records with respect thereto.

17.3 Return of Buyers property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyers property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Sellers premises and take possession of any and all of Buyers Property. Upon Buyers request and in accordance with Buyers instructions, Buyers Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Sellers plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyers Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyers Property to the location Buyer designates. If Seller does not release and deliver any Buyers Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Sellers premises, with or without legal process, and take immediate possession of Buyers Property.

17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyers Property nor the manufacturers agent nor a dealer therein, (ii) Buyer is bailing Buyers property to Seller for Sellers benefit, (iii) Seller is satisfied that Buyers Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYERS PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyers Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits, or any other indirect, special or consequential damages.

17.5 Development, Engineering and Consulting Services. Engineering, consulting or development services (Development Services) funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property (IP) shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services (Developed IP) to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or nforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyers service and replacement parts requirements to Buyers customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyers and its customers service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the Post-Production Period), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-roduction Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyers service activities.

19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to the Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all xport licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Sellers affiliates to Buyer or Buyers affiliates, Buyer may (i) setoff such obligations against and sums owing to Seller or Sellers affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Sellers affiliates by Buyer or Buyers affiliates.

22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Sellers advertising or promotional materials unless Buyer consents in writing.

23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Sellers obligations under this Contract.

24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Sellers prior written consent. Seller may not assign or delegate its rights or obligations under this contract without Buyers prior written consent.

25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyers option, in the court(s) having jurisdiction over Buyers location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order of rule, and the remaining provisions of this Contract will remain in full force and effect.

28. RIGHT TO AUDIT

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Sellers administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Seller has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Sellers performance of the Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by the Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyers claims, rights, or remedies.

JUNE 1999

LAST PAGE



DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI T MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

Tooling - GE 1

LPS97028

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 06/14/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | Christine M. Koch — PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | $2400.00 | | |

THIS ORDER WILL PAY ON RECEIPT. PLEASE DO NOT SEND AN INVOICE UNLESS THIS IS THE FIRST PAY ON RECEIPT ORDER YOU RECEIVED FROM US. THIS IS NOT A C.O.D. ORDER, BUT AN INVOICELESS SYSTEM WHICH GENERATES PAYMENT BASED ON MATERIAL RECEIPT. QUESTIONS CALL DISBURSEMENT SERVICES 248-874-4636.
IF P.O. IS IN ERROR, CONTACT BUYER BEFORE PROCEEDING.
--IF YOUR COMPANY'S AFFILIATE IS EXPECTING PAYMENT FOR THIS ORDER, PLEASE ADVISE THE DELPHI BUYER TO CANCEL AND REISSUE THE ORDER TO THE AFFILIATE.
-ALL PACKING SLIPS MUST SHOW THE ABOVE P.O. #, CORRESPONDING ITEM CODE/AND OR PART NUMBER, AND THE ASSIGNED RELEASE NUMBER, IF APPLICABLE.

-------------------------------------

IF ITEM(S) ARE UNDER 40 LBS., AND TOTAL SHIPMENT IS LESS THAN 150 LBS.-SHIP UPS. ANY QUESTIONS ON FREIGHT CONTACT 248-655-0901 (J.FINK) FOR CORRECT ACCOUNT NO.

-----------------

SUPPLIERS ARE EXPECTED TO MEET ALL REQUIREMENTS DETAILED IN THE DELPHI GLOBAL PURCHASING SUPPLIER GUIDELINES AND REFERENCE DOCUMENTS. THESE GUIDELINES & DOCUMENTS ARE AVAILABLE ON THE DELPHI SYSTEMS WEBSITE, WWW.DELPHI.COM -BY CLICKING ON "SUPPLIERS"

RECEIVED
JUN 2 1 2005
BY:

A006067 USER JODY SIMONS

CONTINUE PAGE 2

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI T. MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97028

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 06/14/05 | PHONE: 716-439-2438<br>C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME DESCRIPTION RFQ NUMBER DATE REQUIRED TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | IN THE HEADER<br>-------------------<br>NO CHEMICAL SHALL BE BROUGHT ONSITE FOR DEMONSTRATION EXPERIMENTAL, TRIAL, OR EVALUATION PURPOSES, OR FOR FULL USAGE, WITHOUT PRIOR APPROVAL OF DELPHI THERMAL & INTERIOR'S HAZARDOUS MATERIALS REVIEW COMMITTEE. IT IS SUPPLIER'S/CONTRACTOR'S RESPONSIBILITY TO ENSURE THAT THE EMPLOYEE HAS OBTAINED A CHEMICAL USE APPROVAL (CUA#) PRIOR TO BRINGING ANY CHEMICAL ONSITE<br><br>YOU CAN VIEW PAYMENT STATUS ONLINE USING E-DACOR. LOGON TO THE DELPHI SUPPLIER PORTAL AT HTTP://DELPHI.COVISINT.COM FOR FREE REGISTRATION. CLICK ON THE REGISTRATION TAB, GO TO REGISTRATION TIMING AND CLICK ON "CLICK ON HERE TO REQUEST AN IMMEDIATE CONTACT FOR YOUR BUSINESS", FILL OUT THE FORM AND FOLLOW THE INSTRUCTIONS.<br><br>THE GENERAL TERMS AND CONDITIONS THAT APPEAR ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE NULL AND VOID AND REPLACED BY DELPHI'S GENERAL TERMS AND CONDITIONS DATED MARCH 2004 FOUND ON WWW.DELPHI.COM/SUPPLIERS.<br>---------------------------------------------------<br>---------------------------------------------------<br><br>SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 3

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI T MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97028

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 06/14/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME DESCRIPTION RFQ NUMBER DATE REQUIRED TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | TERMS AND CONDITIONS ARE INCORPORATED IN, AND A PART OF, THIS CONTRACT AND EACH PURCHASE ORDER, RELEASE, REQUISITION, WORK ORDER, SHIPPING INSTRUCTION, SPECIFICATION AND OTHER DOCUMENT ISSUED BY BUYER OR ACCEPTED IN WRITING BY BUYER, WHETHER EXPRESSED IN WRITTEN FORM OR BY ELECTRONIC DATA INTERCHANGE, RELATING TO THE GOODS AND/OR SERVICES TO BE PROVIDED BY SELLER PURSUANT TO THIS CONTRACT (SUCH DOCUMENTS ARE COLLECTIVELY REFERRED TO AS THIS "CONTRACT"). A COPY OF BUYER'S GENERAL TERMS AND CONDITIONS IS AVAILABLE UPON WRITTEN REQUEST TO BUYER OR VIA THE INTERNET AT DELPHI'S WEBSITE, DELPHI.COM SELLER ACKNOWLEDGES AND AGREES THAT IT HAS READ AND UNDERSTANDS BUYER'S GENERAL TERMS AND CONDITIONS. IF SELLER ACCEPT THIS CONTRACT IN WRITING OR COMMENCES ANY OF THE WORK OR SERVICES WHICH ARE THE SUBJECT OF THIS CONTRACT, SELLER WILL BE DEEMED TO HAVE ACCEPTED THIS CONTRACT AND BUYER'S GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 4

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI T. MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97028

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 06/14/05 | PHONE: 716-439-2438<br>C KOCH<br>DT01 BUYER |
| ALTERATION ISSUE DATE | |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | WITHOUT MODIFICATION. ANY ADDITIONS TO, CHANGES IN, MODIFICATIONS OF, OR REVISIONS OF THIS CONTRACT (INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS) WHICH SELLER PROPOSES WILL BE DEEMED TO BE REJECTED BY BUYER EXCEPT TO THE EXTENT THAT BUYER EXPRESSLY AGREES TO ACCEPT ANY SUCH PROPOSALS IN WRITING.<br><br>-----------SHELF LIFE------------------------<br>FOR MATERIAL WITH A SHELF LIFE OF LESS THAN 2 YEARS, SUPPLIER MUST NOTIFY BUYER AND PROPERLY LABEL THE MATERIAL WITH AN EXPIRATION DATE.<br>---------------------------------------------------<br><br>LOCKPORT PURCHASING FAX #'S: 716-439-2216,& 3818<br><br>TOOLS ARE PROPERTY OF DELPHI THERMAL & INTERIOR AND MUST BE MAINTAINED BY SUPPLIER FOR OUR EXCLUSIVE USE UNTIL RELEASED BY THE BUYER IN WRITING. DO NOT INVOICE WITHOUT PPAP APPROVAL NUMBER. REGARDLESS OF METHOD OF TOOL PAYMENT AND OWNERSHIP, IT IS DELPHI'S EXPECTATION THAT ALL SUPPLIERS WILL CONSTRUCT OR FURNISH TOOLS OF COMMERCIAL QUALITY, SUITABLE FOR THE SPECIFIC PART, APPLICATION, AND PROGRAM. PLEASE COMPLETE TOOLING COST DETAIL BREAKDOWN FORM. | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 5



DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI T MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

PAGE 5

LPS97028

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 06/14/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | Christine M. Koch |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|
| | | | ----------IMPORTANT INVOICING INSTRUCTIONS-------- ALL INVOICES MUST SHOW THE ABOVE PURCHASE ORDER NUMBER, ITEM CODE NUMBER, AND/OR PART NUMBER OR SHIPMENT ID NUMBER. SEND INVOICE TO THE BUYER LISTED ON THIS P.O. TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL. PLEASE FORWARD APPROPRIATE DOCUMENTATON TO THE ASSIGNED BUYER UPON PPAP APPROVAL. | | | | | | |
| 00001 | 1 | PR020741 001 | | | 08/01/05 | D 0.00% | 2400.0000 | | PC |
| | | | TO COVER COST OF ALTERED TOOLS TO PRODUCE: TANK ASM-COOL REVY. P/N 15285554, NO. SAMPLES PPAP: 3, ATTN: L. KING, DRAWING #: 15285551, CHG. LEVEL: 5, CN #72611, GMT 001, TYPE OF TOOL: TEMP. TOOLING/FIXTURE TO HAND TRIM NEW ANGLE PRIOR TO PRODUCTION. QUOTE: E-MAIL 5/3/05, TOOL REL: 8268, PROJECT #: 1261-426. TERMS: MNS2-2. NET UPON PPAP APPROVAL. TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL. WHO ORDERED: CHRISTINE KOCH | | | | | | |
| | | | TERMS AND CONDITIONS SEPTEMBER 2004, APPLY OF WHICH SUPPLIER HAS RECEIVED A COPY. | | | | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 6

Part 1 Pg 24 of 39

# PURCHASE ORDER TERMS AND CONDITIONS

1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, [illegible]

2. SHIPPING AND BILLING

2.1 Shipping. Seller will (a) properly pack, mark and, ship goods [illegible]

2.2 Billing. Seller will (a) accept payment based upon Buyers Evaluated Receipt [illegible]

2.3 Delivery Schedules. Deliveries will be made in the quantities, [illegible]

2.4 Premium Shipments. If seller fails to have goods ready for shipment [illegible]

3. SPECIFICATION, DESIGN AND SCOPE CHANGES

[illegible]

4. QUALITY AND INSPECTION

[illegible]

5. NON-CONFORMING GOODS

[illegible]

6. FORCE MAJEURE

[illegible]

7. WARRANTY

[illegible]

8. INGREDIENTS AND HAZARDOUS MATERIALS

[illegible]

9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

10. TERMINATION FOR BREACH

Buyer my terminate all or any part of this contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Sellers warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract or (c) fails to assure timely and proper completion of services or delivery of goods.

11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Sellers sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyers written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Sellers standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, With sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

12. TECHNICAL INFORMATION

12.1 Exchange of Information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyers drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyers customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may here-after disclose in connection with the goods or services covered by this Contract.

12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyers customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, microcode, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing the Contract (separately or as a part of any goods and components) are works made for hire and the sole property of Buyer. To the extent that all right, title and interest in any intellectual property rights in such works authorship.

13. INDEMNIFICATION

13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that such infringement arose out of compliance with Buyers specifications.

13.2 Activities on Buyers Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyers or Buyers customers premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyers customer.

13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyers specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than seller.

14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyers request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages r expenses (including reasonable attorney or other professional fees and disbursements) arising from the Sellers noncompliance with this Article.

15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that uyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Sellers obligations or liabilities under this Contract.

16. SELLERS EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract (Sellers Equipment). Seller will insure Sellers Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Sellers Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Sellers Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Sellers Equipment. The option will not apply to the extent that Sellers Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Sellers right to exercise this option is not conditioned on Sellers breach or Buyers termination of this Contract or upon payment of any other amounts due under this Contract.

17. BUYERS PROPERTY

17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part (Buyers Property), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyers property (such as tooling), Seller will purchase and pay for such Buyers Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyers Property (such as tooling) without separate or additional payment or reimbursement by Seller. Seller acknowledges nd agrees that Buyers issuance of this Contract is good and sufficient consideration for such Buyers Property and that title to such Buyers property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyers property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyers property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyers ownership of Buyers property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment or incorporation into Buyers property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyers property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyers Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyers property for work performed on such property or otherwise. Goods manufactured based on Buyers drawings and/or specifications may not be used for Sellers own use or sold to third parties without Buyers express written authorization.

17.2 Sellers Duties with Respect to Buyers Property. While Buyers property is in Sellers possession and until Seller delivers Buyers property back to Buyer, Seller bears the risk of loss and damage to Buyers property. Seller will be responsible for the cost of repairing or replacing Buyers property if it is damaged or destroyed regardless of cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyers Property at Sellers own expense, (b) use Buyers Property only for the performance of this Contract, (c) deem Buyers property to be personal property, (d) conspicuously mark Buyers property as the property of Buyer and maintain such markings, (e) not commingle Buyers property with the property of Seller or with that of a third person, (f) not move Buyers Property from Sellers premises without Buyers written approval, and (g) use Buyers Property in compliance with Buyers or the manufacturers instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Sellers premises at all reasonable times to inspect Buyers Property and Sellers records with respect thereto.

17.3 Return of Buyers property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyers property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Sellers premises and take possession of any and all of Buyers Property. Upon Buyers request and in accordance with Buyers instructions, Buyers Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Sellers plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyers Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyers Property to the location Buyer designates. If Seller does not release and deliver any Buyers Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Sellers premises, with or without legal process, and take immediate possession of Buyers Property.

17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyers Property nor the manufacturers agent nor a dealer therein, (ii) Buyer is bailing Buyers property to Seller for Sellers benefit, (iii) Seller is satisfied that Buyers Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYERS PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyers Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits, or any other indirect, special or consequential damages.

17.5 Development, Engineering and Consulting Services. Engineering, consulting or development services (Development Services) funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property (IP) shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services (Developed IP) to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyers service and replacement parts requirements to Buyers customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyers and its customers service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the Post-Production Period), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyers service activities.

19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to the Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Sellers affiliates to Buyer or Buyers affiliates, Buyer may (i) setoff such obligations against and sums owing to Seller or Sellers affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Sellers affiliates by Buyer or Buyers affiliates.

22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Sellers advertising or promotional materials unless Buyer consents in writing.

23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Sellers obligations under this Contract.

24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Sellers prior written consent. Seller may not assign or delegate its rights or obligations under this contract without Buyers prior written consent.

25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyers option, in the court(s) having jurisdiction over Buyers location, in which event Seller consents to jurisdiction and service of process in accordance with applicable procedures. Any actions by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order of rule, and the remaining provisions of this Contract will remain in full force and effect.

28. RIGHT TO AUDIT

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Sellers dministrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Seller has the ight to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Sellers performance f the Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and greements. This Contract may only be modified by a written contract amendment issued by the Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and his Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyers claims, rights, or remedies.

JUNE 1999

LAST PAGE



DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI T MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

PURCHASE ORDER Tooling GE 1
LPS97029

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 06/14/05 | PHONE: 716-439-2438 |
| ALTERATION ISSUE DATE | C KOCH — BUYER |
| | DT01 |
| ALTERATION EFFECTIVE DATE | Christine M. Koch — PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | THIS ORDER IS LISTED IN THE FOLLOWING CURRENCY USD DOLLAR (UNITED STATES) | | | |
| | | | THIS ORDER WILL PAY ON RECEIPT. PLEASE DO NOT SEND AN INVOICE UNLESS THIS IS THE FIRST PAY ON RECEIPT ORDER YOU RECEIVED FROM US. THIS IS NOT A C.O.D. ORDER, BUT AN INVOICELESS SYSTEM WHICH GENERATES PAYMENT BASED ON MATERIAL RECEIPT. QUESTIONS CALL DISBURSEMENT SERVICES 248-874-4636. IF P.O. IS IN ERROR, CONTACT BUYER BEFORE PROCEEDING. --IF YOUR COMPANY'S AFFILIATE IS EXPECTING PAYMENT FOR THIS ORDER, PLEASE ADVISE THE DELPHI BUYER TO CANCEL AND REISSUE THE ORDER TO THE AFFILIATE. -ALL PACKING SLIPS MUST SHOW THE ABOVE P.O. #, CORRESPONDING ITEM CODE/AND OR PART NUMBER, AND THE ASSIGNED RELEASE NUMBER, IF APPLICABLE. ----------------------------------- | 12,500.00 | | |
| | | | IF ITEM(S) ARE UNDER 40 LBS., AND TOTAL SHIPMENT IS LESS THAN 150 LBS.-SHIP UPS. ANY QUESTIONS ON FREIGHT CONTACT 248-655-0901 (J.FINK) FOR CORRECT ACCOUNT NO. ---------------- | RECEIVED JUN 2 1 2005 BY:---------------- | | |
| | | | SUPPLIERS ARE EXPECTED TO MEET ALL REQUIREMENTS DETAILED IN THE DELPHI GLOBAL PURCHASING SUPPLIER GUIDELINES AND REFERENCE DOCUMENTS. THESE GUIDELINES & DOCUMENTS ARE AVAILABLE ON THE DELPHI SYSTEMS WEBSITE, WWW.DELPHI.COM -BY CLICKING ON "SUPPLIERS" | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 2

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI T MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97029

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 06/14/05 | PHONE: 716-439-2438 C KOCH |
| ALTERATION ISSUE DATE | BUYER DT01 |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | IN THE HEADER<br>------------------ | | | |
| | | | NO CHEMICAL SHALL BE BROUGHT ONSITE FOR DEMONSTRATION EXPERIMENTAL, TRIAL, OR EVALUATION PURPOSES, OR FOR FULL USAGE, WITHOUT PRIOR APPROVAL OF DELPHI THERMAL & INTERIOR'S HAZARDOUS MATERIALS REVIEW COMMITTEE. IT IS SUPPLIER'S/CONTRACTOR'S RESPONSIBILITY TO ENSURE THAT THE EMPLOYEE HAS OBTAINED A CHEMICAL USE APPROVAL (CUA#) PRIOR TO BRINGING ANY CHEMICAL ONSITE | | | |
| | | | YOU CAN VIEW PAYMENT STATUS ONLINE USING E-DACOR. LOGON TO THE DELPHI SUPPLIER PORTAL AT HTTP://DELPHI.COVISINT.COM FOR FREE REGISTRATION. CLICK ON THE REGISTRATION TAB, GO TO REGISTRATION TIMING AND CLICK ON "CLICK ON HERE TO REQUEST AN IMMEDIATE CONTACT FOR YOUR BUSINESS", FILL OUT THE FORM AND FOLLOW THE INSTRUCTIONS. | | | |
| | | | THE GENERAL TERMS AND CONDITIONS THAT APPEAR ON THE REVERSE SIDE OF THIS PURCHASE ORDER ARE NULL AND VOID AND REPLACED BY DELPHI'S GENERAL TERMS AND CONDITIONS DATED MARCH 2004 FOUND ON WWW.DELPHI.COM/SUPPLIERS.<br>-----------------------------------------------------<br>----------------------------------------------------- | | | |
| | | | SELLER ACKNOWLEDGES AND AGREES THAT BUYER'S GENERAL | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 3

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO: DELPHI T. MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97029

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO: DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 06/14/05 | PHONE: 716-439-2438<br>C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME DESCRIPTION RFQ NUMBER DATE REQUIRED TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | TERMS AND CONDITIONS ARE INCORPORATED IN, AND A PART OF, THIS CONTRACT AND EACH PURCHASE ORDER, RELEASE, REQUISITION, WORK ORDER, SHIPPING INSTRUCTION, SPECIFICATION AND OTHER DOCUMENT ISSUED BY BUYER OR ACCEPTED IN WRITING BY BUYER, WHETHER EXPRESSED IN WRITTEN FORM OR BY ELECTRONIC DATA INTERCHANGE, RELATING TO THE GOODS AND/OR SERVICES TO BE PROVIDED BY SELLER PURSUANT TO THIS CONTRACT (SUCH DOCUMENTS ARE COLLECTIVELY REFERRED TO AS THIS "CONTRACT"). A COPY OF BUYER'S GENERAL TERMS AND CONDITIONS IS AVAILABLE UPON WRITTEN REQUEST TO BUYER OR VIA THE INTERNET AT DELPHI'S WEBSITE, DELPHI.COM SELLER ACKNOWLEDGES AND AGREES THAT IT HAS READ AND UNDERSTANDS BUYER'S GENERAL TERMS AND CONDITIONS. IF SELLER ACCEPT THIS CONTRACT IN WRITING OR COMMENCES ANY OF THE WORK OR SERVICES WHICH ARE THE SUBJECT OF THIS CONTRACT, SELLER WILL BE DEEMED TO HAVE ACCEPTED THIS CONTRACT AND BUYER'S GENERAL TERMS AND CONDITIONS IN THEIR ENTIRETY | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 4

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI THERMAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97029

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | PHONE: 716-439-2438 |
|---|---|
| 06/14/05 | C KOCH |
| ALTERATION ISSUE DATE | DT01 — BUYER |
| ALTERATION EFFECTIVE DATE | |
| | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION / RFQ NUMBER / DATE REQUIRED / TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|
| | | | WITHOUT MODIFICATION. ANY ADDITIONS TO, CHANGES IN, MODIFICATIONS OF, OR REVISIONS OF THIS CONTRACT (INCLUDING BUYER'S GENERAL TERMS AND CONDITIONS) WHICH SELLER PROPOSES WILL BE DEEMED TO BE REJECTED BY BUYER EXCEPT TO THE EXTENT THAT BUYER EXPRESSLY AGREES TO ACCEPT ANY SUCH PROPOSALS IN WRITING. | | | |
| | | | -----------SHELF LIFE------------------------ FOR MATERIAL WITH A SHELF LIFE OF LESS THAN 2 YEARS, SUPPLIER MUST NOTIFY BUYER AND PROPERLY LABEL THE MATERIAL WITH AN EXPIRATION DATE. --------------------------------------------- | | | |
| | | | LOCKPORT PURCHASING FAX #'S: 716-439-2216,& 3818 | | | |
| | | | TOOLS ARE PROPERTY OF DELPHI THERMAL & INTERIOR AND MUST BE MAINTAINED BY SUPPLIER FOR OUR EXCLUSIVE USE UNTIL RELEASED BY THE BUYER IN WRITING. DO NOT INVOICE WITHOUT PPAP APPROVAL NUMBER. REGARDLESS OF METHOD OF TOOL PAYMENT AND OWNERSHIP, IT IS DELPHI'S EXPECTATION THAT ALL SUPPLIERS WILL CONSTRUCT OR FURNISH TOOLS OF COMMERCIAL QUALITY, SUITABLE FOR THE SPECIFIC PART, APPLICATION, AND PROGRAM. PLEASE COMPLETE TOOLING COST DETAIL BREAKDOWN FORM. | | | |

A006067 USER JODY SIMONS

CONTINUE PAGE 5

DELPHI

DELPHI AUTOMOTIVE SYSTEMS
HARRISON THERMAL SYSTEMS
200 UPPER MOUNTAIN RD.
LOCKPORT 14094-1896 NY
14094 US

SHIP TO:
DELPHI TH MAL & INTERIOR
PLANT 2, DEPT. 333, BLD.7
200 UPPER MOUNTAIN ROAD
LOCKPORT NY
14094-1896 US

# PURCHASE ORDER

LPS97029

THIS NUMBER MUST APPEAR ON ALL INVOICES, PACKING SLIPS PACKAGES AND BILLS OF LADING

(2) COPIES OF YOUR PACKING SLIP MUST ACCOMPANY EACH SHIPMENT. ITEM IDENTIFICATION NUMBER(S) MUST BE SHOWN ON PACKING SLIPS AND INVOICES.

INVOICE ATTN: ACCOUNTS PAYABLE
DO NOT DECLARE VALUATION OF EXPRESS SHIPMENTS OR INSURE PARCEL POST.

VENDOR NUMBER 81-253-8135
PLASTICOS FLAMBEAU S DE RL DE
CALLE 17 NO 3692
COL AMPLIACION MORELOS
SALTILLO CZ
25217
MEXICO

INVOICE TO:
DELPHI AUTOMOTIVE SYSTEMS
****PAY ON RECIPT*****
*****NO INVOICE REQUIRED*****
CUST SERVICE DIAL 248-874-4636
FLINT MI
48501-1550 US

THIS ORDER IS NOT BINDING UNTIL ACCEPTED. ACCEPTANCE SHOULD BE EXECUTED ON ACKNOWLEDGEMENT COPY WHICH SHOULD BE RETURNED TO BUYER.
ON THE REVERSE SIDE HEREOF ARE THE TERMS AND CONDITIONS TO WHICH SELLER AGREES BY ACCEPTANCE OF THIS ORDER.
THIS ORDER, INCLUDING THE TERMS AND CONDITIONS ON THE FACE AND REVERSE SIDE HEREOF, CONTAINS THE COMPLETE AND FINAL AGREEMENT BETWEEN BUYER AND SELLER AND NO OTHER AGREEMENT IN ANY WAY MODIFYING ANY OF SAID TERMS AND CONDITIONS WILL BE BINDING UPON THE BUYER UNLESS MADE IN WRITING AND SIGNED BY BUYERS AUTHORIZED REPRESENTATIVE.
IF GOVERNMENT CONTRACT NUMBER IS SHOWN HEREON, ADDITIONAL TERMS AND CONDITIONS ATTACHED HERETO APPLY.

| ORDER DATE | |
|---|---|
| 06/14/05 | PHONE: 716-439-2438<br>C KOCH |
| ALTERATION ISSUE DATE | DT01 BUYER |
| ALTERATION EFFECTIVE DATE | PURCHASING AGENT |

| PAYMENT TERMS | F.O.B. | DESTINATION UNLESS OTHERWISE INDICATED | SHIP VIA |
|---|---|---|---|
| NET 2ND DAY OF 2ND MONTH | SP | | RYDER DISTRIBUTION RESOURCES |

| ITEM SEQUENCE | QUNTITY ORDERED | ITEM IDENTIFICATION NUMBER | NOUN NAME / DESCRIPTION | RFQ NUMBER | DATE REQUIRED | TAX CODE / % | BASE UNIT PRICE | PRICE MULTIPLE | UNIT OF MEASURE |
|---|---|---|---|---|---|---|---|---|---|
| | | | ----------IMPORTANT INVOICING INSTRUCTIONS--------<br>ALL INVOICES MUST SHOW THE ABOVE PURCHASE ORDER NUMBER,ITEM CODE NUMBER, AND/OR PART NUMBER OR SHIPMENT ID NUMBER.<br>SEND INVOICE TO THE BUYER LISTED ON THIS P.O.<br><br>TOOL ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL. PLEASE FORWARD APPROPRIATE DOCUMENTATION TO THE ASSIGNED BUYER UPON PPAP APPROVAL. | | | | | | |
| 00001 | 1 | PR020740 001 | TO COVER THE COST OF ALTERED TOOLS TO PRODUCE: P/N: TANK, ASN-COOL REVY, P/N 1528554 - OLD P/N, 15817298 - NEW P/N, NO. SAMPLES PPAP: 5, ATTN: L. KING, DRAWING #: 15817298, CHG. LEVEL: 01, CN #72608, GMT001 PLATFORM, MODIFY OVERFLOW PART ON OVERFLOW TANK TO REDUCE INTERFERENCE W/INLET HOSE, QUOTE: EMAIL 5/24/05, TOOL REL: 8268, PROJECT: 1261-426. TERMS: MNS2-2. NET UPON PPAP APPROVAL. TOOLS ORDERS REQUIRE AN INVOICE UPON PPAP APPROVAL.<br>WHO ORDERED: C. KOCH - I.A.<br><br>TERMS AND CONDITIONS SEPTEMBER 2004, APPLY OF WHICH SUPPLIER HAS RECEIVED A COPY. | | 08/01/05 | D 0.00% | 12500.0000 | | PC |

A006067 USER JODY SIMONS

CONTINUE PAGE 6

# PURCHASE ORDER TERMS AND CONDITIONS

1. ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this Contract). Seller acknowledges and agrees that it has read and understands these General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this contract, Seller will be deemed to have accepted this contract and these General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

2. SHIPPING AND BILLING

2.1 Shipping. Seller will (a) properly pack, mark and ship goods as instructed by buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) not charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, fees, etc.) unless otherwise expressly stated in this contract, (d) provide packing slips with each shipment that identify Buyers contract and/or release number and the date of the shipment, and (e) promptly forward the original bill of lading or other shipping receipts with respect to each shipment as Buyer instructs. Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires. The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods.

2.2 Billing. Seller will (a) accept payment based upon Buyers Evaluated Receipts Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer. If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services. Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the the absence of any liens, encumbrances and claims on such goods or services.

2.3 Delivery Schedules. Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract. Time is of the essence with respect to all delivery schedules Buyer establishes. Buyer will not be required to pay for any goods that exceed the quantities specified in Buyers delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyers delivery schedules. Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyers delivery schedules. If Buyer determines that the requirements of Buyers customers or market, economic or other conditions require changes in deliver schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other modification of this Contract.

2.4 Premium Shipments. If seller fails to have goods ready for shipment in time to meet Buyers delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium(more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible. Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyers actions caused Seller to fail to meet Buyers delivery schedules, in which case Buyer will pay any costs for premium shipment.

3. SPECIFICATION, DESIGN AND SCOPE CHANGES

Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control. While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes. Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyers payment of reasonable costs of modifications to Sellers Equipment and Facilities (as defined in Article 16) Necessary to implement such changes. In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes in Sellers cost of production and the time to implement such changes. In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

4. QUALITY AND INSPECTION

Seller will participate in Buyers supplier quality and development program(s) and comply with all quality requirements and procedures Buyer specifies from time to time. Seller will permit Buyer and its representatives and consultants to (i) inspect Sellers books and records in order to monitor Sellers compliance with this Contract and Sellers financial condition and (ii) enter Sellers facilities at reasonable times to inspect such facilities and any goods, materials and property that relate to this Contract. No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

5. NON-CONFORMING GOODS

Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections. Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing. If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies. If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyers rejection of non-conforming goods (or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to arrange for the shipment of any non-conforming goods back to Seller at Sellers expense. Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods. Buyers payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyers right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

6. FORCE MAJEURE

If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such partys fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. During any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other available sources, in which case the quantities under this Contract will be reduced by the quantities of such substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the substitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide substitute goods from other available sources in quantities and at times Buyer requests and at the prices set forth in this Contract. If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without liability. Before any of Sellers labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Sellers facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

7. WARRANTY

7.1 General. Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this contract will (a) conform to all applicable specifications, drawings, samples, descriptions, brochures and manuals furnished by Seller or Buyer, (b) will be merchantable, (c) of good material and workmanship, (d) free from defect, and (e) are fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer. If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for non-conforming goods.

7.2 Date and Time Processing. Seller warrants and guarantees to Buyer and its customers that any products (including computer hardware, software, firmware, machinery and equipment) covered by this Contract must at all times accurately process, handle, calculate, compare and sequence date and time data from, into, within and between the 20th and 21st centuries, including leap year calculations.

7.3 Warranty Period. The period for each of the foregoing warranties will be that provided by applicable law, except that if Buyer ever provides a longer warranty to its customers, such longer warranty period will apply to the goods covered by this Contract.

8. INGREDIENTS AND HAZARDOUS MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients. Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

9. INSOLVENCY OF SELLER

Buyer may immediately terminate this Contract without liability to Seller in any of the following or any similar events: (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract. Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

10. TERMINATION FOR BREACH

Buyer may terminate all or any part of this contract, without liability to Seller at any time after execution if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Sellers warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract, or (c) fails to assure timely and proper completion of services or delivery of goods.

11. TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing. Upon such termination, Buyer may at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition. The purchase price for such finished goods, raw materials and work-in-process, and Sellers sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyers written consent. In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Sellers standard stock or that are readily marketable. Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination. Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

12. TECHNICAL INFORMATION

12.1 Exchange of Information. Buyer and Seller will cooperate to create, maintain, update, and share technical information about the goods, products, machinery, materials, formulations and their manufacture, use, application and control in compliance with Buyers drafting and math data standards. Such technical information will not be subject to any use or disclosure restrictions. Accordingly, Seller agrees not to assert any claims against Buyer, its customers or their respective suppliers with respect to any technical information that Seller discloses in connection with this Contract.

12.2 Waiver of Claims. Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyers customers or their respective suppliers with respect to any technical information that Seller shall have disclosed or may here-after disclose in connection with the goods or services covered by this Contract.

12.3 Repair and Rebuild. Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyers customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4 Computer Programs and Written Works. All works of authorship, including without limitation, software, computer programs, and databases (including object code, microcode, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing the Contract (separately or as a part of any goods and components) are works made for hire and the sole property of Buyer. To the extent that all right, title and interest in any intellectual property rights in such works authorship. [illegible]

13. INDEMNIFICATION

13.1 Infringement. Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services. Seller waives any claim against Buyer that such infringement arose out of compliance with Buyers specifications.

13.2 Activities on Buyers Premises. Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyers or Buyers customers premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyers customer.

13.3 Product Liability. Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or other legal theories), except to the extent such injury, damage or loss results from Buyers specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than seller.

14. COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety. Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract. Upon Buyers request, Seller will certify in writing its compliance with the foregoing. Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from the Sellers noncompliance with this Article.

15. INSURANCE

Seller will maintain insurance coverage as required by applicable law or reasonably requested by Buyer with carriers reasonably acceptable to Buyer. With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests. The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage. The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Sellers obligations or liabilities under this Contract.

16. SELLERS EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of the products covered by this Contract (Sellers Equipment). Seller will insure Sellers Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option to take possession of, and title to, all or part of Sellers Equipment that is specially designed or outfitted for the production of the goods covered by this Contract upon payment to Seller of the net book value of such Sellers Equipment less any amounts that Buyer has previously paid to Seller for the cost of such Sellers Equipment. The option will not apply to the extent that Sellers Equipment is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods are being sold by Seller to others. Sellers right to exercise this option is not conditioned on Sellers breach or Buyers termination of this Contract or upon payment of any other amounts due under this Contract.

17. BUYERS PROPERTY

17.1 Bailment of Property. All supplies, materials, tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment and other items Buyer furnishes, either directly or indirectly, to Seller, or for which Buyer gives consideration to Seller in whole or in part (Buyers Property), will be and remain the property of Buyer and be held by Seller on a bailment basis. To the extent that this Contract provides that Buyer will reimburse Seller for any specific items of Buyers property (such as tooling), Seller will purchase and pay for such Buyers Property as agent of Buyer. To the extent that this Contract provides that Seller will obtain any specific items of Buyers Property (such as tooling) without separate or additional payment or reimbursement by Seller, Seller acknowledges and agrees that Buyers issuance of this Contract is good and sufficient consideration for such Buyers Property and that title to such Buyers property shall vest immediately in Buyer and be held by Seller pursuant to this Article. Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to Buyers property. Seller shall also execute (i) any bills of sale or other documents of conveyance Buyer requests to evidence the transfer to Buyer of title to any Buyers property, related contract rights and claims and (ii) any financing statements or other documents Buyer requests to evidence Buyers ownership of Buyers property. Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment or incorporation into Buyers property. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyers property. Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyers Property. When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyers property for work performed on such property or otherwise. Goods manufactured based on Buyers drawings and/or specifications may not be used for Sellers own use or sold to third parties without Buyers express written authorization.

17.2 Sellers Duties with Respect to Buyers Property. While Buyers property is in Sellers possession and until Seller delivers Buyers property back to Buyer, Seller bears the risk of loss and damage to Buyers property. Seller will be responsible for the cost of repairing or replacing Buyers property if it is damaged or destroyed regardless of cause or fault. Seller will at all times (a) regularly inspect, maintain in good condition, and repair Buyers Property at Sellers own expense, (b) use Buyers Property only for the performance of this Contract, (c) deem Buyers property to be personal property, (d) conspicuously mark Buyers property as the property of Buyer and maintain such markings, (e) not commingle Buyers property with the property of Seller or with that of a third person, (f) not move Buyers Property from Sellers premises without Buyers written approval, and (g) use Buyers Property in compliance with Buyers or the manufacturers instructions and in compliance with all federal, state and local laws, ordinances and regulations. Buyer will have the right to enter Sellers premises at all reasonable times to inspect Buyers Property and Sellers records with respect thereto.

17.3 Return of Buyers property. Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyers property. Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Sellers premises and take possession of any and all of Buyers Property. Upon Buyers request and in accordance with Buyers Instructions, Buyers Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (Incoterms 1990) at Sellers plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyers Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyers Property to the location Buyer designates. If Seller does not release and deliver any Buyers Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Sellers premises, with or without legal process, and take immediate possession of Buyers Property.

17.4 Disclaimer of Warranties. Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyers Property nor the manufacturers agent nor a dealer therein, (ii) Buyer is bailing Buyers property to Seller for Sellers benefit, (iii) Seller is satisfied that Buyers Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYERS PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyers Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits, or any other indirect, special or consequential damages.

17.5 Development, Engineering and Consulting Services. Engineering, consulting or development services (Development Services) funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property (IP) shall be the sole property of Buyer. Seller agrees to assign all right, title and interest in and to IP that results from Development Services (Developed IP) to Buyer. Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

18. SERVICE AND REPLACEMENT PARTS

During the term of this Contract, Seller will sell to Buyer goods necessary to fulfill Buyers service and replacement parts requirements to Buyers customers at the then current production price(s) under this Contract. If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs. If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyers and its customers service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the Post-Production Period), and this Contract will automatically remain in effect during the entire Post-Production Period. During the first three (3) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period. For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties. If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyers service activities.

19. REMEDIES

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.

20. CUSTOMS AND EXPORT CONTROLS

Credits or benefits resulting or arising from this Contract, including trade credits, export credits or the refund of duties, taxes or fees, belong to the Buyer. Seller will provide all information necessary (including written documentation and electronic transaction records) to permit Buyer to receive these benefits or credits, and to fulfill any customs related obligations, origin marking or labeling requirements and local content origin requirements. Seller will obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licenses or authorization(s). Seller will make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.

21. SETOFF AND RECOVERY

With respect to any monetary obligations of Seller or Sellers affiliates to Buyer or Buyers affiliates, Buyer may (i) setoff such obligations against and sums owing to Seller or Sellers affiliates and/or (ii) recoup such obligations from any amounts paid to Seller or Sellers affiliates by Buyer or Buyers affiliates.

22. NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Sellers advertising or promotional materials unless Buyer consents in writing.

23. NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision. No course of dealing or course of performance may be used to evidence a waiver or limitation of Sellers obligations under this Contract.

24. ASSIGNMENT

Buyer may assign its rights and obligations under this Contract without Sellers prior written consent. Seller may not assign or delegate its rights or obligations under this contract without Buyers prior written consent.

25. RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties. Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

26. GOVERNING LAW AND JURISDICTION

This Contract is to be construed according to the laws of the country (and state or province, if applicable) from which this Contract is issued as shown by the address of Buyer, excluding the provisions of the United Nations Convention on Contracts for the International sale of Goods and any choice of law provisions that require application of any other law. Any action or proceedings by Buyer against Seller may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyers option, in the court(s) having jurisdiction over Buyers location, in which event Seller consents to Jurisdiction and service of process in accordance with applicable procedures. Any actions by Seller against Buyer may be brought by Seller only in the court(s) having jurisdiction over the location of Buyer from which this Contract is issued.

27. SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted, as the case may be, but only to the extent necessary to comply with such statute, regulation, ordinance, order of rule, and the remaining provisions of this Contract will remain in full force and effect.

28. RIGHT TO AUDIT

Buyer, at its expense, has the right to audit and review all relevant books, records, payroll data, receipts and other documents, including Sellers administrative and accounting policies, guidelines, practices and procedures, in order to substantiate any charges and other matters under this Contract. Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract. In addition, Seller has the right to inspect all inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges, and other items related to Sellers performance of the Contract. Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits or inspections by Buyer.

29. ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by the Buyer. Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and his Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract). All payments by Buyer to Seller under this Contract are without prejudice to Buyers claims, rights, or remedies.

DELPHI Harrison Thermal Systems

**Buyer:**
Delphi Harrison Thermal Systems
200 Upper Mountain Rd.
LOCKPORT NY 14094

## Requirements Contract

PO Number
550035284
Version
05/05/2004 10:21:23

Date Issued
07/11/2003

**Deliver to:**

***Please deliver to:***
***See Delivery Schedule***

FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

Vendor No: 1010201
DUNS No: 062021696

**Payment Terms:** ZMN2 **Currency:** USD

Payment settled on 2nd, 2nd Month

**Incoterms:** COL- Collect-FOB Ship Point

JPN 81628970

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00010 | 52403487<br>DUCT AIR DIST - LEFT | J801 DELPHI THERMAL DIRECTSHIP |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 07/11/2003 | 08/31/2005 | USD | 2,840.00 | 1,000 | PC |
| 09/01/2005 | 08/31/2006 | USD | 2,726.00 | 1,000 | PC |
| 09/01/2006 | 08/31/2007 | USD | 2,617.00 | 1,000 | PC |
| 09/01/2007 | 12/31/2007 | USD | 2,513.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

**Notes:**

********************

Delphi requires suppliers of productive material be capable of communicating material forecasts, material schedules, shipping notices and associated information through Electronic Data Interchange (EDI). To insure that EDI communications are accurate and effective, each productive material supplier will be required to become EDI Certified by exhibiting their ability to send and/or receive the appropriate EDI messages in accordance with applicable standards prior to providing productive material. EDI Certification will be conducted and coordinated by the EDI Competency organization.

Purchasing Contact: Koch, Christine

Contact Address:

Phone: 716-439-2438

Fax: 716-439-3818

Date and Time Printed: 05/05/2004 10:21:23

FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

## Requirements Contract

PO Number
550035284
Version
05/05/2004 10:21:23

Date Issued
07/11/2003

| Item No. | Material No. Description | Plant |
|---|---|---|

Notes Continued:

An Internet electronic form alternative solution is intended to provide relief in situations where establishing an in-house EDI capability is a hardship for a supplier providing limited material.

Please refer to Delphi's website: www.delphi.com then Suppliers/Supplier Community Portal / Supplier Standards, for additional information.
********************

********************
Suppliers are required to meet the requirements of Delphi's Production Part Approval Process as described in the Supplier Performance Development Process (SPDP) and in the Production Part Approval Process (PPAP) Manual. The Production Part Approval Process Manual is available from AIAG (810-358-3003) and the SPDP documents can be provided by the appropriate Supplier Quality Representative. Suppliers must have part manufacturing site approval prior to shipping production quantities. Contact the appropriate Delphi Supplier Quality Representative regarding questions on the approval process or approval status.
*************

********************
Suppliers are required to meet all requirements detailed in the Delphi Global Purchasing Supplier Guidelines and reference documents that are available on the Delphi website, www.delphi.com, (by clicking on the "Suppliers" in the header).
********************

This Contract replaces GM part number 10348970.
********************

DELPHI GM # 10435305 Harrison Thermal Systems

**Buyer:**
DELPHI
THERMAL & INTERIOR SYSTEMS
200 UPPER MOUNTAIN RD
LOCKPORT NY 14094

## Requirements Contract

PO Number: 550035288
Date Issued: 11-Jul-2003
Version: 23-Aug-2005 15:17:38

**Deliver to:**

***Please deliver to:***
***See Delivery Schedule***

FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

Vendor No: 1010201
DUNS No: 062021696

**Payment Terms:** ZMN2 **Currency:** USD

Payment settled on 2nd, 2nd Month

**Incoterms:** FOB- FREIGHT COLLECT

*** Incoterms changed
*** Condition record added
*** Condition record changed
*** Text changed

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00010 | 52404013 / Duct Asm-Air Distribution | J801 DELPHI T & I DIRECTSHIP |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 11-Jul-2003 | 31-Jan-2004 | USD | 1,000.00 | 1,000 | PC |
| 01-Feb-2004 | 28-Feb-2005 | USD | 960.00 | 1,000 | PC |
| 01-Mar-2005 | 31-Dec-2009 | USD | 969.50 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.
*** Condition record added
*** Condition record changed
*** Net price changed

Notes:

Purchasing Contact: Ermer, David
Phone: 716-439-2438
Fax: 716-439-3818

Contact Address:

RECEIVED
AUG 29 2005
BY:..................

Date and Time Printed: 23-Aug-2005 15:17:38



Harrison Thermal Systems

FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

## Requirements Contract

PO Number
550035288
Version
23-Aug-2005 15:17:38

Date Issued
11-Jul-2003

| Item No. | Material No. Description | Plant |
|---|---|---|

Notes Continued:

This Contract replaces previous contract DE02305 and Part 10435305.
*******************

08/23/05: Price Change Notification. Reason for Change: Resin increase effective 3/1/05 thru 12/31/2009. 4% LT is removed and all reductions will be based upon supplier suggestions an supplier development ideas. Approved: B. Lendzion 6/30/05

*****************************************************************************

Suppliers are required to meet all requirements detailed in the Delphi Global Purchasing Supplier Guidelines and reference documents that are available on the Delphi website, www.delphi.com. (by clicking on the "Suppliers" in the header).

*****************************************************************************

Suppliers are required to meet the requirements of Delphi's Production Part Approval Process as described in the Supplier Performance Development Process (SPDP) and in the Production Part Approval Process (PPAP) Manual. The Production Part Approval Process Manual is available from AIAG (810-358-3003) and the SPDP documents can be provided by the appropriate Supplier Quality Representative. Suppliers must have part manufacturing site approval prior to shipping production quantities. Contact the appropriate Delphi Supplier Quality Representative regarding questions on the approval process or approval status.

*****************************************************************************

Restricted, toxic, and hazardous materials - Suppliers are required to comply with current governmental and safety constraints on restricted, toxic and hazardous materials; as well as environmental, electrical and electromagnetic considerations applicable to the country of manufacture and sale. This relates to both the salable product and the manufacturing processes. (Refer also to Terms and Conditions No. 8 "Ingredients Disclosure and Special Warnings Instructions"). Commencement of any work or service under this order shall constitute seller's acceptance of these responsibilities. If you do not accept these responsibilities, please contact the appropriate Delphi's Buyer.

Failure Analysis/Corrective Action: Suppliers are expected to perform failure analysis on defective material returned by any Delphi Division. Irreversible corrective action plans for these failures must be developed and implemented. The plans with effective dates are to be reported back to the Delphi Division who requested the analysis.

Delphi requires suppliers of productive material be capable of communicating material forecasts, material schedules, shipping notices and associated information through Electronic Data Interchange (EDI). To insure that EDI communications are accurate and effective, each productive material supplier will be required to become EDI Certified by exhibiting their ability to send and/or receive the appropriate EDI messages in accordance with applicable standards prior to providing productive material. EDI Certification will be conducted and coordinated by the EDI Competency organization.

An Internet electronic form alternative solution is intended to provide relief in situations where establishing an in-house EDI capability is a hardship for a supplier providing limited material.

Please refer to Delphi's website: www.delphi.com then Suppliers/Supplier Community Portal / Supplier Standards, for additional information.

*****************************************************************************

Seller acknowledges and agrees that Buyer's General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions is available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

DELPHI

Harrison Thermal Systems

FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

**Requirements Contract**

PO Number
550035288
Version
23-Aug-2005 15:17:38

Date Issued
11-Jul-2003

| Item No. | Material No. Description | Plant |
|---|---|---|

Notes Continued:
**************************************************************************

DELPHI GM # 10330965 Harrison Thermal Systems

Buyer:
DELPHI
THERMAL & INTERIOR SYSTEMS
200 UPPER MOUNTAIN RD
LOCKPORT NY 14094

## Requirements Contract

PO Number
550035285
Version
23-Aug-2005 15:57:29

Date Issued
11-Jul-2003

Deliver to:

*Please deliver to:*
*See Delivery Schedule*

FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

Vendor No: 1010201
DUNS No: 062021696

**Payment Terms:** ZMN2 **Currency:** USD
Payment settled on 2nd, 2nd Month
**Incoterms:** FOB- FREIGHT COLLECT

*** *Incoterms changed*
*** *Text changed*

| Item No. | Material No. Description | Plant |
|---|---|---|
| 00010 | 52403488 DUCT AIR DIST- RIGHT | J801 DELPHI T & I DIRECTSHIP |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 11-Jul-2003 | 28-Feb-2005 | USD | 2,330.00 | 1,000 | PC |
| 01-Mar-2005 | 31-Dec-2009 | USD | 2,434.60 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.
*** *Condition record changed*
*** *Net price changed*

Notes:
This Contract replaces previous contract DE02305 & Part No. 10330965.
********************
08/23/05: Price Change Notification. Reason for Change: Resin increase effective 3/1/05 thru 12/31/2009. 4% LT is removed and all reductions will be based

Purchasing Contact: Ermer, David
Phone: 716-439-2438
Fax: 716-439-3818

Contact Address:

RECEIVED
AUG 29 2005
BY:

Date and Time Printed: 23-Aug-2005 15:57:29



Harrison Thermal Systems

FLAMBEAU INC
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

**Requirements Contract**

PO Number 550035285
Version 23-Aug-2005 15:57:29
Date Issued 11-Jul-2003

| Item No. | Material No. Description | Plant |
|---|---|---|

Notes Continued:

upon supplier suggestions an supplier development ideas. Approved: B. Lendzion 6/30/05

*************************************************************************

Suppliers are required to meet all requirements detailed in the Delphi Global Purchasing Supplier Guidelines and reference documents that are available on the Delphi website, www.delphi.com, (by clicking on the "Suppliers" in the header).

*************************************************************************

Suppliers are required to meet the requirements of Delphi's Production Part Approval Process as described in the Supplier Performance Development Process (SPDP) and in the Production Part Approval Process (PPAP) Manual. The Production Part Approval Process Manual is available from AIAG (810-358-3003) and the SPDP documents can be provided by the appropriate Supplier Quality Representative. Suppliers must have part manufacturing site approval prior to shipping production quantities. Contact the appropriate Delphi Supplier Quality Representative regarding questions on the approval process or approval status.

*************************************************************************

Restricted, toxic, and hazardous materials - Suppliers are required to comply with current governmental and safety constraints on restricted, toxic and hazardous materials; as well as environmental, electrical and electromagnetic considerations applicable to the country of manufacture and sale. This relates to both the salable product and the manufacturing processes. (Refer also to Terms and Conditions No. 8 "Ingredients Disclosure and Special Warnings Instructions"). Commencement of any work or service under this order shall constitute seller's acceptance of these responsibilities. If you do not accept these responsibilities, please contact the appropriate Delphi's Buyer.

Failure Analysis/Corrective Action: Suppliers are expected to perform failure analysis on defective material returned by any Delphi Division. Irreversible corrective action plans for these failures must be developed and implemented. The plans with effective dates are to be reported back to the Delphi Division who requested the analysis.

Delphi requires suppliers of productive material be capable of communicating material forecasts, material schedules, shipping notices and associated information through Electronic Data Interchange (EDI). To insure that EDI communications are accurate and effective, each productive material supplier will be required to become EDI Certified by exhibiting their ability to send and/or receive the appropriate EDI messages in accordance with applicable standards prior to providing productive material. EDI Certification will be conducted and coordinated by the EDI Competency organization.

An Internet electronic form alternative solution is intended to provide relief in situations where establishing an in-house EDI capability is a hardship for a supplier providing limited material.

Please refer to Delphi's website: www.delphi.com then Suppliers/Supplier Community Portal / Supplier Standards, for additional information.

*************************************************************************

Seller acknowledges and agrees that Buyer's General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions is available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

*************************************************************************

DELPHI GMT 355 Harrison Thermal Systems

Buyer:
Delphi Harrison Thermal Systems
200 Upper Mountain Rd.
LOCKPORT NY 14094

## Requirements Contract

PO Number
550036614
Version
08/21/2003 20:38:19

Date Issued
08/21/2003

***Please deliver to:***
***See Delivery Schedule***

Requested chg from buyer

FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

Wrong

Madison, GA

Vendor No: 1010201
DUNS No: ~~062021696~~ wrong 825733629

**Payment Terms:** ZMN2 **Currency:** USD

Payment settled on 2nd, 2nd Month

**Incoterms:** FCA- Named Place

| Item No. | Material No. / Description | Plant |
|---|---|---|
| 00010 | 52404596 / Reservoir Asm-Coolant Recovery | DELPHI THERMAL DIRECTSHIP |

| Valid From | Valid To | Currency | Price | Price Unit | UOM |
|---|---|---|---|---|---|
| 08/21/2003 | 12/31/2004 | USD | 2,430.00 | 1,000 | PC |
| 01/01/2005 | 12/31/2005 | USD | 2,357.00 | 1,000 | PC |
| 01/01/2006 | 12/31/2006 | USD | 2,286.00 | 1,000 | PC |
| 01/01/2007 | 12/31/2007 | USD | 2,218.00 | 1,000 | PC |
| 01/01/2008 | 12/31/2008 | USD | 2,218.00 | 1,000 | PC |

This Requirement Contract is for 100% unless otherwise specified.

Notes:

********************

Delphi requires suppliers of productive material be capable of communicating material forecasts, material schedules, shipping notices and associated information through Electronic Data Interchange (EDI). To insure that EDI communications are accurate and effective, each productive material supplier will be required to become EDI Certified by exhibiting their ability to send and/or receive the appropriate EDI messages in accordance with applicable standards prior to providing productive material. EDI Certification will be conducted and coordinated by the EDI Competency organization.

An Internet electronic form alternative solution is intended to provide relief in situations where establishing an in-house EDI capability is a hardship for a supplier providing limited material.

Please refer to Delphi's website: www.delphi.com then Suppliers/Project Vega/Supplier Requirements, for additional information.

********************

********************

Suppliers are required to meet the requirements of Delphi's Production Part Approval Process as described in the Supplier Performance Development Process (SPDP) and in the Production Part Approval Process (PPAP) Manual. The Production Part Approval Process Manual is available from AIAG (810-358-3003) and

Purchasing Contact: Koch, Christine
Phone: 716-439-2438
Fax: 716-439-3818
Contact Address:

Date and Time Printed: 08/21/2003 20:38:19

DELPHI

Harrison Thermal Systems

FLAMBEAU CORP
FLAMBEAU PLASTICS DIV
801 LYNN AVE
BARABOO WI 53913

**Requirements Contract**

PO Number
550036614
Version
08/21/2003 20:38:19

Date Issued
08/21/2003

| Item No. | Material No. Description | Plant |
| --- | --- | --- |

Notes Continued:

the SPDP documents can be provided by the appropriate Supplier Quality Representative. Suppliers must have part manufacturing site approval prior to shipping production quantities. Contact the appropriate Delphi Supplier Quality Representative regarding questions on the approval process or approval status.
*************

********************

Suppliers are required to meet all requirements detailed in the Delphi Global Purchasing Supplier Guidelines and reference documents that are available on the Delphi website, www.delphi.com, (by clicking on the "Suppliers" in the header).
********************

This Contract replaces previous contract DE02326, 15099956.
********************

> GM P/N