<u>Exhibit A</u>

Modifications To The Plan

## Modifications To The Amended Plan[4]

1. **1.3 Administrative Claims Bar Date**

"Administrative Claims Bar Date" means the deadline for filing proofs of or requests for payment of Administrative Claims, which shall be 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, and except with respect to Professional Claims, which shall be subject to the provisions of Article ~~10.4~~ 10.3 hereof, and except with respect to Investment Agreement Claims, which shall be subject to the provisions of Article 10.2 hereof.

2. **2.1 Administrative Claims**

Subject to the provisions of Article X of this Plan, on the first Periodic Distribution Date occurring after the later of (a) the date when an Administrative Claim becomes an Allowed Administrative Claim or (b) the date when an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Administrative Claim, a holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other less favorable treatment which the Debtors (or the Reorganized Debtors) and the holder of such Allowed Administrative Claim shall have agreed upon in writing; provided, however, that (x) holders of the DIP Facility Revolver Claim, DIP Facility First Priority Term Claim, DIP Facility Second Priority Term Claim, and the Investment Agreement Claims shall be deemed to have Allowed Administrative Claims as of the Effective Date in such amount as the Debtors and such holders of such DIP Facility Revolver Claim, DIP Facility First Priority Term Claim, DIP Facility Second Priority Term Claim, and the Investment Agreement Claims shall have agreed upon in writing or as determined by the Bankruptcy Court, which Claims shall be paid in accordance with Article X of this Plan, and (y) ~~Allowed Administrative Claims with respect to~~ liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases or ~~and Allowed Administrative Claims~~ arising under contracts assumed during the Chapter 11 Cases prior to the Effective Date shall be deemed Allowed Administrative Claims and paid by the Debtors or the Reorganized Debtors in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto; provided that (i) any cure payments associated with the assumed contracts shall be paid in accordance with Sections 2.1(a) or 2.1(b), except as otherwise provided in Article VIII, and (ii) the contracts shall not have been rejected pursuant to Section 8.1(a) of the Plan. Holders of Administrative Claims shall not be entitled to Postpetition Interest unless the documents governing such Administrative Claims explicitly so provide.

---

[4]    Additions are indicated with double underlining; deletions are indicated with a strike-through.

   3. **5.3** **Class 1C through Class 12C (General Unsecured Claims)**.

 (a) Except as otherwise provided in and subject to Articles 7.15(b), 9.8, and 11.10 of this Plan, on the first Periodic Distribution Date occurring after the later of (a) the date when a General Unsecured Claim becomes an Allowed General Unsecured Claim or (b) the date when a General Unsecured Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the holder of such General Unsecured Claim, and after giving effect to Article 11.10 of this Plan, each holder of an Allowed General Unsecured Claim shall receive the number of shares of New Common Stock (at Plan Equity Value) equal to ~~77.3~~78.4% of the Face Amount of such Claim; provided, however, that in each case fractional shares of New Common Stock shall not be distributed to holders of Allowed General Unsecured Claims, and all such fractional shares shall be rounded, and distributions shall be made, in accordance with Article 9.10 of this Plan.  The Plan Equity Value is equal to the Debtors' total enterprise value of $~~13.3~~12.8 billion, less net debt and warrant value of approximately $~~5.5~~4.8 billion, which results in a distributable equity value of $~~7.8~~8.0 billion, or $59.61 per share of New Common Stock based on ~~131,266,407~~134,345,642 shares issued and outstanding (assuming full conversion of the New Preferred Stock) as of the Effective Date (the "Plan Equity Value"); provided, however, the number of shares remains subject to immaterial modifications made by the Debtors based on the reconciliation of, among other things, Cure Claims and Disputed Claims.

   4. **7.14** **Exit Financing**

 On the Effective Date, the Reorganized Debtors shall receive the proceeds of the Exit Financing Arrangements, in the aggregate amount necessary to implement the Plan within the terms and conditions previously approved by the Bankruptcy Court as ~~which include an asset-backed revolving credit facility in an aggregate principal amount of $1.6 billion, a funded senior secured first-lien term facility in an aggregate principal amount of $3.7 billion, and a funded senior secured second-lien term facility in amount of $1.5 billion, of which up to $750 million will be in the form of the GM Note(s), the terms of which are~~ described in the exit financing engagement letter and term sheet attached hereto as Exhibit 7.14, as such term sheet may be amended, modified, or supplemented, to repay the DIP Facility Revolver Claims, the DIP Facility First Priority Term Claims, and the DIP Facility Second Priority Term Claims, make other payments required to be made on the Effective Date, satisfy the conditions of the Investment Agreement, and conduct their post-reorganization operations.  The Reorganized Debtors may execute all documents and enter into all agreements as may be necessary and appropriate in connection with the Exit Financing Arrangements.

   5. **7.19** **MDL Settlements.**

 (a) Securities Settlement.  Upon the ~~later of the Effective Date or the date the last order, as between~~ entry of orders by each of the Bankruptcy Court and the

MDL Court, approving the Securities Settlement, a copy of which is attached hereto as Exhibit 7.19(a), becomes a Final Order, Reorganized Delphi shall, in accordance with the Securities Settlement, distribute the New Common Stock and Discount Rights described in accordance with Articles 5.5, 5.8, 7.15(a), and 7.16 of this Plan to the disbursing agent appointed by the MDL Court.  Such distribution shall be made in accordance with such order entered by the MDL Court which modifies distributions under the Securities Settlement on a non-material basis in furtherance of the monetization of the distribution hereunder for distribution by the disbursing agent appointed by the MDL Court.  Pursuant to the approval orders of the Bankruptcy Court and/or the MDL Court, as necessary and applicable, the Lead Plaintiffs in the Securities Settlement, in lieu of paying the cash exercise price for the Discount Rights at the time they are exercised, will have the right to exercise the Discount Rights by delivering to Delphi a notice during the pendency of the rights offering for the Discount Rights stating that (i) the Lead Plaintiffs elect to participate in the rights offering for the Discount Rights, (ii) the number of shares of New Common Stock that the Lead Plaintiffs are purchasing through the Discount Rights Offering, and (iii) the Lead Plaintiffs elect to reimburse Delphi, subsequent to the Effective Date of the Securities Settlement (as defined in the Securities Settlement), the amount of the rights offering exercise price in connection with the number of shares of New Common Stock purchased through the Discount Rights Offering by the Lead Plaintiffs on behalf of the class as described more particularly in Article 7.15(a)(iv) of this Plan.  Notwithstanding anything contained herein, no distribution of the New Common Stock underlying the Discount Rights or certificates therefor shall be made to the disbursing agent appointed by the MDL Court until Delphi has received the amount needed to reimburse Delphi for the rights offering exercise price for the MDL Group in connection with the Discount Rights Offering.

(b) ERISA Settlement.  Upon the later of the Effective Date or the date the last order, as between entry of orders by each of the Bankruptcy Court and the MDL Court, approving the ERISA Settlement, a copy of which is attached hereto as Exhibit 7.19(b), becomes a Final Order, Reorganized Delphi shall, in accordance with the ERISA Settlement, distribute the New Common Stock and Discount Rights described in accordance with Articles 5.9, 7.15(a), and 7.16 of this Plan to the disbursing agent appointed by the MDL Court.

6.  **7.21  Collective Bargaining Agreements.**

(a) UAW.  Pursuant to this Plan and in accordance with the UAW 1113/1114 Settlement Approval Order, a copy of which is attached hereto as Exhibit 7.21(a), on the Effective Date, the UAW-Delphi-GM Memorandum of Understanding, a copy of which is attached hereto as Exhibit 1 to the UAW 1113/1114 Settlement Approval Order, and all documents described in Attachment E to the UAW-Delphi-GM Memorandum of Understanding and Exhibit 2 to the UAW 1113/1114 Settlement Approval Order shall be automatically assumed by the applicable Reorganized Debtor under sections 365 and 1123 of the Bankruptcy Code.

3

7. **10.4 Substantial Contribution Compensation And Expenses Bar Date.**

Any Person (including the Indenture Trustees) who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before the 45th day after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors, the Statutory Committees, the Plan Investors, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.  ~~Notwithstanding the foregoing, on or within 15 days after the Confirmation Date, the Indenture Trustees shall deliver to the Debtors, either (a) a statement indicating that such Indenture Trustee's prepetition fees and expenses are less than the amounts set forth on Exhibit 10.4 or (b) their invoices for their respective fees and expenses, and the Debtor shall have the right to file an objection with the Bankruptcy Court, which objection must be filed within 15 days of receipt.  If an Indenture Trustee has delivered notice that its prepetition fees and expenses are less than the amounts set forth on Exhibit 10.4 or absent any such objection, the Indenture Trustees' invoice for its fees and expenses shall be paid by the Debtors or Reorganized Debtors, as applicable, on the Effective Date, or as soon thereafter as practicable, without need to file an application for the payment of its fees and without need for further order of the Bankruptcy Court.~~

8. **12.3 Waiver Of Conditions To Confirmation Or Consummation.**

The conditions set forth in Articles 12.1(a), 12.2(c), and 12.2(e) of this Plan may be waived, in whole or in part, by the Debtors without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing; provided, however that in connection with the satisfaction or waiver of the condition set forth in Article 12.2(e) of this Plan, no material modification of the Investment Agreement, the Delphi-GM Definitive Documents, and the exhibits to each such agreements (except exhibits B and C to the Investment Agreement) that have a material adverse effect on the recoveries of unsecured creditors or existing equity holders may be made without the consent of the Creditors' Committee or the Equity Committee, as the case may be, and the respective non-Debtor counterparty to the agreement. <u>The condition set forth in Article 12.2(d) may be waived by the Debtors, provided that if any of Appaloosa, GM, or the Statutory Committees objects to such waiver, the waiver shall not become effective unless the Bankruptcy Court determines the effectiveness of such waiver (provided that such parties shall have waived their right to object to such waiver if the objection is not received within two Business Days from the time of the receipt of the written notice from the Debtors of such waiver of Article 12.2(d)); provided, however, that any such waiver shall not be deemed to waive or otherwise modify the rights of the parties under the</u>

Investment Agreement or the Delphi-GM Definitive Documents. Article 12.2(i) of this Plan may be waived jointly by the Debtors and Appaloosa (as lead Plan Investor), provided, however that no waiver of Article 12.2(i) of this Plan shall be effective unless notice is first given to the Creditors' Committee; provided further, however, that such waiver shall be effective upon the earlier of (i) the Creditors' Committee's consent and (ii) 12:00 noon New York time on the third Business Day after the notice is given to the Creditors' Committee unless the Creditors' Committee has provided written notice pursuant to Article 14.8 of this Plan that the Creditors' Committee has voted affirmatively to object to the effectiveness of the waiver solely on the basis that the recoveries of unsecured creditors would be materially adversely affected if the waiver were implemented (and in such case the waiver shall not become effective unless the Bankruptcy Court thereafter determines that the effectiveness of the waiver would not materially adversely affect unsecured creditors' recoveries). No other condition set forth in Articles 12.1 and 12.2 of this Plan may be waived. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

9. **Plan Exhibit 7.8**

Plan Exhibit 7.8 is supplemented and modified to:

(a) reduce the aggregate long-term incentive opportunity awarded at emergence, on an annualized basis, for all DSB Members and executives in Bands A through F from approximately $68 million (as disclosed on page 2 of the Supplement to Management Compensation Plan filed on December 28, 2007) to approximately $58 million and

(b) reduce the aggregate Chapter 11 Effective Date Executive Payments to no more than $16.5 million, payable on the Effective Date in the amounts and to the executives as determined by the compensation committee of Delphi's board of directors.

As a result of these determinations (i) the aggregate long-term incentive opportunities for the full 18 month award period have been reduced by an additional $15 million from an aggregate of approximately $102 million to $87 million and (ii) the aggregate Chapter 11 Effective Date Executive Payments have been reduced by $70.5 million from an aggregate of approximately $87 million to $16.5 million.

10. **Plan Exhibit 7.16(b)**

"**Form S-3 Eligible**": Such time as the Company satisfies the registrant requirements specified in Instruction I.A. and the transaction requirement specified in Instruction I.B.1 for use of Form S-3 (or any applicable successor form) as set forth in such form.

2.2(a)(iii)    Subject to the Transfer Restrictions, at any time and from time to time, a Creditor Party may request in writing that the Company effect the

5

registration of all or part of such Holder's or Holders' shares of Common Stock with the Commission under and in accordance with the provisions of the Securities Act (which written request will specify the Selling Holder Information for such Holder or Holders). The Company will file a Registration Statement covering such Holder's or Holders' shares of Common Stock requested to be registered as promptly as practicable (and, in any event, by the applicable Filing Date) after receipt of such request; provided, that the Company will not be required to take any action pursuant to this Section 2.2(a)(iii) if prior to the date of such request, the Company has effected any registration pursuant to this Section 2.2(a)(iii); ~~provided, further, that following the time that the Company shall become Form S-3 Eligible, the immediately preceding proviso shall no longer apply~~. The Holders requesting a registration pursuant to the first sentence of this Section 2.2(a)(iii) shall provide written notice, within three (3) Business Days of making such a request pursuant to the first sentence of this Section 2.2(a)(iii), to ADAH and all other Holders of any such request (by delivering a copy of such request to ADAH and each other Holder) for registration pursuant to this Section 2.2(a)(iii) and ADAH and each other Holder may, by written notice to the Holders requesting the registration pursuant to this Section 2.2(a)(iii) and the Company, given no later than ten (10) Business Days after the Holders requesting the registration pursuant to this Section 2.2(a)(iii) give notice to ADAH and each other Holder (which notice shall specify the applicable Selling Holder Information with respect to each such other Holder), request that all or part of such Holder's Registrable Securities be included in such registration. Additionally, at any time that any Holder has made a request for registration pursuant to this Section 2.2(a)(iii), ADAH and/or its Related Purchasers and/or Investors and/or their Related Purchasers and/or GM and its Affiliates and/or any other Creditor Party may request in writing that such Holder submit a request to the Company on behalf of ADAH and/or its Related Purchasers and/or Investors and/or their Related Purchasers and/or GM and its Affiliates and/or any other Creditor Party to be included as selling shareholders in such registration statement in accordance with this Section 2.2(a)(iii); provided, that the determination of the requesting Creditor Party as to whether or not to make such request to the Company shall be at the sole discretion of such Holders requesting a registration pursuant to the first sentence of this Section 2.2(a)(iii); provided, further, that if any Holder submits a request pursuant to this sentence, ADAH and/or its Related Purchasers and/or Investors and their Related Purchasers and/or GM and its Affiliates and/or any other Creditor Party shall provide such cooperation and information so as to permit such Holder to comply with the requirements of this Section 2.2(a)(iii).

      2.6    No securities to be sold for the account of any Person other than a Holder (including the Company) shall be included in a registration pursuant to Section 2.2 if, in the case that such registration is to be an Underwritten Registration, the managing underwriter of the Underwritten Offering relating thereto advises the Holders (or, in the case that such registration is not to be an Underwritten Registration, the Holders requesting registration holding a majority of the Registrable Securities which such request covers (in the case of Section 2.2(a)) or ADAH (in the case of Section 2.2(b)) determines in good faith) that the total amount of Registrable Securities requested to be registered, together with such other securities to be included in such offering in

accordance with this Agreement is such as could adversely affect the success of such offering. In the circumstances described in the immediately preceding sentence, the Company will include in such registration (a) (i) if a demand for registration by any Investor and/or their Related Purchasers, first, all Registrable Securities of the Investor and of their Related Purchasers, allocated pro rata among such Investors and Related Purchasers on the basis of the amount of Registrable Securities requested to be included therein by each such Investor and Related Purchaser, next, to the extent it is not a demand for registration pursuant to Section 2.2(a)(i), to GM and its Affiliates allocated pro rata among GM and its Affiliates on the basis of the amount of Registrable Securities requested to be included therein by GM and its Affiliates, (ii) if a demand for registration by GM and its Affiliates, first, all shares of Common Stock held by such Holder or Holders, allocated pro rata among such Holder or Holders on the basis of the amount of shares of Common Stock requested to be included therein by such Holder or Holders, next, to the Investors and their Related Purchasers allocated pro rata among such Investors and their Related Purchasers on the basis of the amount of Registrable Securities requested to be included therein by each such Investor and Related Purchaser, (iii) if a demand for registration by a Creditor Party, first, all shares of Common Stock held by such Holder or Holders and any other Creditor Party, allocated pro rata among such Holder or Holders on the basis of the amount of shares of Common Stock requested to be included therein by such Holder or Holders, next, to the Investors and their Related Purchasers and GM and its Affiliates allocated pro rata among such Investors and their Related Purchasers and GM and its Affiliates on the basis of the amount of Registrable Securities requested to be included therein by each such Investor and Related Purchaser and GM and its Affiliates; (b) second, in each case under clauses (a)(i), (ii) and (iii) above, up to the full amount of Registrable Securities requested to be included in such registration by all other Holders (other than a Creditor Party unless the demand for registration is made pursuant to clause (a)(iii) above), allocated pro rata among such Holders on the basis of the amount of Registrable Securities requested to be included therein by each such Holder; (c) third, in each case under clauses (a)(i), (ii) and (iii) above, up to the full amount of securities requested to be included in such registration by the Company; [(d) fourth, as and to the extent the Board of Directors of the Company may reasonably determine will not adversely affect the offering, Registrable Securities requested to be included in such registration by GM and its Affiliates allocated pro rata among GM and its Affiliates on the basis of the amount of Registrable Securities requested to be included therein by GM and its Affiliates;] and (e) fifth, only in the case of a demand for registration, other than a demand for registration that the Holders (other than ADAH) have pursuant to Section 2.2(a), up to the full amount of securities requested to be included in such registration by the holders of junior registration rights granted in accordance with Section 3.4; provided, that clauses (c) and (d) (e) above shall only be applicable if such registration is on Form S-3.

7