<u>EXHIBIT "A"</u>

THE COURT:  I have before me the Debtors'
objection to the claims asserted against them by two
related entities, Lightsource Parent Corporation and Guide
Corporation.  It's clear from the parties' pleadings and
remarks at oral argument that the two claims together
constitute one claim.  If the claims were to be allowed, in
other words, Delphi Corporation would make one payment that
would cover the amount asserted in only one of the claims
without duplication, and the two claimants would divide up
that amount between themselves.

The claim is asserted in both liquidated and
unliquidated amounts as set forth in the proof of claim,
and then in the supplemental pleadings, filed by
Lightsource, and when I refer to Lightsource throughout I
mean both Lightsource and Guide.

In the proof of claim, Lightsource contends that
it entered into an agreement in September of 1998 called
the Lightsource Formation Agreement, or LFA, pursuant to
which the parties, that is, GM (General Motors Corporation)
and Lightsource, agreed to form Lightsource Parent
Corporation, to which GM transferred certain assets
described in the LFA essentially comprising GM's vehicle
lighting business.

As set forth in the proof of claim, pursuant to Section 6.7.1(D) of the LFA, Lightsource agreed to provide certain of its employees with GM-comparable post-employment, that is, retiree, health care and life insurance benefits ("OPEB obligations").  And then pursuant to Section 6.7.1(E) of the LFA, GM agreed to reimburse Lightsource for a portion of the cost of those OPEB obligations which, again, Lightsource had agreed to undertake.

In December of 1998, GM entered into another agreement, the Master Separation Agreement, or MSA, with Delphi Corporation and other subsidiaries and affiliates of Delphi, including Delphi Automotive Systems, LLC, pursuant to which GM spun off Delphi, which had operated as a division of GM, and related business units.  That agreement, as I said before, was between GM and the Delphi parties.  Lightsource and Guide were not a party to that agreement.

Pursuant to Section 2.02(b) of the Master Separation Agreement, Delphi agreed with GM to assume all "Liabilities" of GM related to the business and operations divested by the Delphi Automotive Systems business. "Liabilities" is defined in the MSA as "any and all debts,

2

liabilities, guarantees, assurances, commitments and

obligations, whether fixed, contingent or absolute,

asserted or unasserted, matured or unmatured, liquidated or

unliquidated, accrued or not accrued, known or unknown, due

or to become due, whenever or however arising, including

without limitation whether arising out of any contract or

tort based on negligence or strict liability, and whether

or not the same would be required by generally accepted

accounting principles to be reflected in financial

statements or disclosed in the notes thereto."

These assumed liabilities, for purposes of this

hearing, which is, as the parties have noted, a so-called

"sufficiency" hearing on the legal sufficiency on its face

of Lightsource's claim, would include the reimbursement

liability that GM undertook under Section 6.7.1(E) of the

LFA to Lightsource to reimburse Lightsource's payment of

OPEB obligations.

Section 2.02(b) of the MSA had some exceptions to

the liabilities of divested operations that were to be

assumed by Delphi but it stated in its concluding clause,

"provided further, however, that notwithstanding the

foregoing or any other provision of this agreement or any

ancillary agreement, responsibility for certain obligations

3

related to certain divestitures shall be allocated between the parties as set forth in Schedule I hereto."

Schedule I to the MSA provides specifically in paragraph 2 that Delphi shall assume "any subsidies and supplements relating to the businesses divested to Lightsource Parent Corporation."

Lightsource therefore contends that, pursuant to Section 2.02(b) of the MSA, it may assert its claim in respect of unpaid OPEB obligations not only against GM but also against the Debtors. It bolsters its argument in two ways. First, it contends that, pursuant to Section 14.3 of the Lightsource Formation Agreement, it agreed that "GM may assign without the prior written consent of [Lightsource] this agreement and any or all of its rights, interests and obligations hereunder to a corporation or other business entity to which all or substantially all of the assets of Delphi Automotive is sold or otherwise transferred, provided such transferee agrees in writing to be bound by Section 11.8 herein," which was a noncompete provision. It contends that, by Delphi's assumption of "Liabilities" under Section 2.02(b) of the MSA, which includes "obligations," Delphi agreed in writing to be bound by the non-compete provision in Section 11.8 of the LFA, although

4

it didn't specifically do so, i.e., specifically refer to
that section, and, therefore, that the MSA in general and
Section 2.02 in particular constitute an assignment of the
LFA to Delphi.

Secondly, Lightsource contends that, pursuant to
a related agreement that was entered into in connection
with the Master Separation Agreement, Delphi and GM agreed
that Delphi "shall pay the liabilities and expenses under
the Delphi Benefit Plans with respect to Delphi Employees"
and, further, that "the Delphi Benefit Plans shall also
cover the provision of benefits for employees of divested
units which were formerly Delphi operations to the extent
that the GM Benefit Plans cover the provision of benefits
for such 'divested employees' as of the Effective Time."
That, Lightsource contends, would mean that Delphi has an
obligation to Lightsource to provide for the payment of
benefits to the Lightsource employees in respect of their
OPEB.

Again, that agreement, which is set forth in an
agreement entitled U.S. Employee Matters Agreement, was not
one to which Lightsource or Guide was a party but, rather,
was between GM and Delphi Automotive Systems Corporation.
The paragraph in that agreement that I quoted above is

5

paragraph 10(a).

The Debtors, for purposes of this sufficiency hearing, do not dispute that Delphi assumed the OPEB liability.  They contend, however, that the only party who can enforce that assumption agreement, and consequently the only party with a claim against Delphi, is the party to that agreement, whether it's found in the Master Separation Agreement or the U.S. Employee Matters Agreement: GM.  The Debtors rely for that proposition primarily upon Section 9.05 of the Master Separation Agreement, which provides "This Agreement shall be binding upon and inure solely to the benefit of each party hereto and their legal representatives and successors, and each Subsidiary and each Affiliate of the parties hereto, and nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement, except for Article 5 (which is intended to be for the benefit of the Persons provided for therein and may be enforced by such Persons)."  (GM in fact has asserted an enormous claim in these chapter 11 cases against Delphi under the MSA.)

When one turns to Article 5 of the MSA, which is referred to in Section 9.05, one can see from its plain

terms that, in addition to the parties to the MSA, their legal representatives and successors-in-interest, the additional parties referred to therein would not include Lightsource or Guide but, rather, a limited group of indemnities -- "Representatives," of the parties and the successors to this agreement.  Thus, Lightsource would not be covered by the express exception to the "no third party beneficiaries" provision of Section 9.05 of the MSA.

In addition, in respect of Lightsource's argument that it has a claim against Delphi because of the assumed obligations under the U.S. Employee Matters Agreement, the Debtors rely upon Section 14 of that agreement, headed "No Third Party Beneficiaries," which states, "No provision in this EM Agreement or in any Schedule, including any Attachment thereto, shall confer upon any person, other than the signatories hereto, any rights or remedies with respect to the employment, compensation, benefits, or other terms and conditions of employment of any persons, provided that any rights to be provided under the Delphi Employee Benefit Plans or their successors pursuant to this EM Agreement and the attached Schedules shall be enforceable by the participants thereunder."

The parties generally agree upon the applicable

law, which is, by choice of the parties under the Master

Separation Agreement, the law of Delaware.  They also

generally agree on what the law of Delaware says.

Moreover, it is the Court's view that on the

applicable issues the law of Delaware is consistent with

the general common law, including as set forth in decisions

by courts from other jurisdictions cited by the parties.

The issue as framed by the parties, again, is

whether, pursuant to the plain and unambiguous terms of the

relevant contracts, the provisions of those contracts

relied upon by Delphi, namely Section 9.05 of the MSA and

Section 14 of the U.S. Employee Matters Agreement, limit or

preclude Lightsource's ability to assert a claim directly

against Delphi based upon Delphi's assumption of

liabilities under those respective agreements.

Lightsource contends that because it is

specifically referred to in the MSA and inferentially

specifically referred to in the U.S. Employee Matters

Agreement, those references, pursuant to which Delphi

assumed liability for OPEB obligations of Lightsource

(under the MSA) and agreed to "cover" the provision of

benefits for employers of divested units (under the U.S.

Employee Matters Agreement), trump the provisions of

8

Sections 9.05 and 14.  Sometimes this is referred to by
Lightsource as a more specific provision modifying and
defeating a more general provision.  Sometimes it is
referred to as an argument based on the proposition that
the more specific provision must lead one to interpret the
"no third party beneficiary" language in the two agreements
to apply to others who are not specifically dealt with in
those contracts.

In addition, Lightsource contends that GM
assigned the LFA contract to Delphi and that, as an
assignee who has specifically assumed liability, Delphi is,
under the common law of Delaware as well as the general
common law elsewhere, responsible directly to Lightsource.

Let me address that latter point first, because I
believe it is a red herring.  Under the MSA, GM agreed with
Delphi that Delphi would assume liabilities to Lightsource,
or, in the words of the proviso to Section 2.02(b), the
"responsibility" for such obligations would be allocated,
as between the parties (i.e., between GM and Delphi), to
Delphi, as set forth on Schedule I to the MSA.

It does not appear to me from reading the MSA
that GM assigned the entire Lightsource Formation
Agreement, both its benefits and its burdens, to Delphi.

It was permitted to do either of those two things, in my view, under paragraph 14.3 of the LFA, which says, "In addition, after the Closing, GM may assign without the prior written consent of [Lightsource] this Agreement and any or all of its rights, interests and obligations hereunder."  I believe that what occurred here, as made clear from reading the documents, is that GM assigned only some of its obligations under the LFA agreement to Delphi and none of its rights.

In addition, paragraph 14.3 of the LFA makes it clear that "Notwithstanding any such assignment permitted by this Section 14.3, GM, Guide and [Lightsource] shall in each case remain liable for all of its respective obligations hereunder."  That is important because it has been suggested by Lightsource that Delphi's interpretation of the MSA and the U.S. Employee Matters Agreement would render Lightsource remedyless, i.e., that it would not have a claim against GM anymore for breach of the OPEB reimbursement obligation in 6.7.1(D) of the LFA, and, therefore, that it would be irrational to construe the MSA as not giving it a direct right against Delphi under MSA Section 2.02(b).

To the contrary, it seems to me that GM and

Lightsource in paragraph 14.3 of the LFA made it clear that

GM's reimbursement obligation to Lightsource would survive,

notwithstanding even a full assignment, let alone an

agreement like the MSA that Delphi would assume certain

liabilities of GM under the LFA.

Consequently, it is perfectly rational to

interpret the MSA as providing that GM would have a claim

against Delphi for breach of its assumption agreement under

the MSA, which would be triggered by Delphi's nonpayment of

the obligations that GM owes Lightsource under Section

6.7.1(D) of the LFA in respect of OPEB.

But the key element of textual analysis here

involves reading, in the case of the MSA, paragraphs

2.02(b) and 9.05, to determine, in fact, which paragraph

limits the other.  That is because the case law is clear

that, where two parties agree that one party will assume or

pay the liability of the other, the party holding the

original liability may have standing to bring a direct

claim against the assuming party, provided that the

parties' agreement -- that is, the agreement between the

original obligor and the assuming party -- makes it clear

that the third party would have that right.

Generally speaking, under the law of Delaware,

reference to the specific assumption of a liability in an agreement between two parties would give the party who has that claim standing to sue the assuming party directly. But that proposition is qualified.  Thus, where there is limiting language in the agreement, it would preclude such a direct right.  That limiting language controls.  This general proposition is set forth in Royal Indem. Co. v. Alexander Indus., Inc., 211 A.2d 919, 921 (Del. 1965), in which the Delaware Supreme Court said "standing alone without limiting language" words of assumption show "an intent to benefit those who have supplied materials and labor and that the promise thus confers upon such parties a right of action as third party beneficiaries."

The Court made the distinction perfectly clear in the next sentence of Royal Indem. when it said "We see no injustice in this result, especially since the parties, had they in fact intended the contrary, could easily have avoided the result by inserting a few words in the bond itself" to limit third party beneficiary standing.  Id.

The cases relied upon by Lightsource all stand for that general proposition, and indeed Lightsource acknowledges as much in its Supplemental Response, dated January 8, 2008.  In discussing the Debtors'

reliance on Corbin on Contracts, Section 777 at 25, which
states that if two contracting parties expressly provide
that some parties that will be benefited by performance
shall have no legally enforceable right, the Court should
effectuate the express intent by denying the third party
any direct remedy, Lightsource's Supplemental Response
states that Corbin "is merely restating, in context, the
principle that the specific should govern the general: if a
contract by its general terms confers rights on third
parties but such third parties are specifically excluded,
then no rights should attach."  Lightsource Supplemental
Reply at 9.  This is clearly a correct statement of the law
and is borne out by the various cases relied upon by
Lightsource, as well as by the Debtors.

For example, Lightsource's primary case, Caldwell
Trucking PRP v. Rexon Tech. Corp., 421 F.3d 234 (3d Cir.
2005), involved a similar issue where there was a
successor-and-assigns provision that stated, "The terms and
conditions of this agreement shall inure to the benefit of
and be binding upon the respective successors and assigns
of the parties hereto, provided that no person, firm or
entity, other than the parties hereto, their respective
successors and assigns shall be deemed a beneficiary of any

of the representations, warranties or covenants contained here." Id. at 245.

The Caldwell Trucking Court noted, however, that the foregoing general language must yield to the specific direction of paragraph 1.05 of the parties' agreement, which was an assumption of liabilities provision that stated "Anything contained herein to the contrary notwithstanding, Pullman agrees to assume [certain liabilities including the third party liability at issue]." Id.

Obviously, that introductory clause, "Anything contained herein to the contrary notwithstanding," would in respect of the assumption vitiate or narrow the scope of the general successor-and-assign provision of the agreement so that it would not apply to that specific assumption of liability.  Id.

Similarly, in Ladish Co., Inc. v. Armco Inc., 514 N.W.2d 724 (Wis. Ct. App. 1993), the Court found a general "no third party beneficiaries" provision was trumped by a provision that stated that the specific obligations under the acquisition agreement "to defend and indemnify the 'surviving companies' make the surviving companies, and, under the express terms of the acquisition agreement,

'their respective successors and assigns' intended third party beneficiaries of the obligations," since the specific indemnification rights went to the "surviving companies," one of whom was the plaintiff.

Again, I want to make it clear that I'm dealing with cases here that, as I believe is appropriate, analyze the interplay of <u>assumption</u> language in an agreement between two other parties that also contains "no third party beneficiary" language to determine the parties' intent. I do not believe cases pertaining to <u>assignments</u> of contracts apply here since the entire LFA contract was not assigned.  But even where an entire contract is assigned, limiting language would appear to preclude the conferral of direct liability to a third party, or, more appropriately, the assignee's assumption of pre-closing liabilities would have to be clearly set forth, without more specific limitations, for the third party to be able to make a claim therefor against the assignee.  <u>See</u> Corbin on Contracts §906.

Turning to the specific language at issue, I conclude that Section 9.05 of the MSA is not trumped by the assumption of liability provision of 2.02(b) of the MSA. First and perhaps most important, Section 2.02(b) does not

contain the clause, or a similar clause, that appeared in
the agreement in Caldwell Trucking that I just quoted, to
the effect that "notwithstanding any other provision of
this agreement," Delphi assumes the OPEB liability.
Secondly, to the contrary, Section 9.05 clearly applies, on
its face, to all the provisions of the MSA, with one
specifically articulated exception that is inapplicable to
Lightsource.

In other words, it's carefully drafted.  First,
it excludes from those third parties who may benefit from
the agreement "assigns."  Second, its scope is worded very
broadly.  Section 9.05 states that "nothing in this
agreement" -- literally the flip side of the
"notwithstanding" language that I quoted from Caldwell
Trucking earlier -- "nothing in this agreement, express or
implied" -- that is, it refers to the express provisions of
the agreement as well as any sort of implied right that one
might otherwise want to assert -- "is intended to confer
upon any other person any rights or remedies of any nature
whatsoever under or by reason of this agreement."

Almost the same language was found by the Sixth
Circuit in Nationwide Mut. Ins. Co. v. Home Ins. Co., 150
F.3d 545 (6th Cir. 1998), to deprive a specifically

16

identified potential third party beneficiary of the ability
to bring a direct claim under or in connection with an
assumption agreement.  In that case, the assumption
agreement provided, "Nothing in this Assumption Agreement,
express or implied, is intended, or shall be construed, to
confer upon or give to any person, firm or corporation
(other than the parties hereto) any rights or remedies
under or by reason of this Assumption Agreement, or any
term, provision, condition, undertaking, warranty,
representation, indemnity, covenant or agreement contained
herein," id. at 547-48, language quite similar to Section
9.05 of the MSA.

Finally, going one step further, the last clause
in Section 9.05 of the MSA makes it even more clear that
the Lightsource OPEB was not excepted from the parties "no
third party beneficiaries" agreement.  That is, the last
clause of Section 9.05 lists a specific exception to the
foregoing prohibition on third party reliance on the
express or implied terms of the agreement.  And, as I noted
earlier, that exception by its plain terms does not apply
to Lightsource.    In construing the
agreement as a whole, one would expect that if the parties
intended by their plain language to include any other

17

exception, i.e., for example, parties with liabilities that
would be assumed under Section 2.02(b), they would have
included it in this clause in Section 9.05, and obviously
they did not.

The Delaware courts, as well as the courts in
every other jurisdiction that the parties have discussed,
hold that the plain meaning of a contract establishes the
parties' intentions.  Rhone-Poulenc Basic Chemicals Co. v.
Am. Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992).
As I noted before, the Delaware courts also hold that the
parties' expressed intentions will govern whether a third
party to an agreement has direct rights under the
agreement.  Royal Indem., 211 A.2d at 921.

Given the unambiguous language that I just
quoted, therefore in the absence of any clear rationale why
that language is contrary to logic or reason, and indeed,
recognizing that the language is consistent with an
agreement between GM and Delphi that leaves Lightsource
with its original direct source of recovery as well as,
now, an indirect source of recovery against Delphi through
GM's enforcement of the Master Separation Agreement, I
conclude that, as a matter of law, Lightsource cannot
assert a claim against Delphi under the Master Separation

18

Agreement for the OPEB.

A similar legal analysis pertains to the interplay of paragraphs 10(a) and 14 of the U.S. Employee Matters Agreement. Paragraph 14, the "no third party beneficiary provision" of the U.S. Employee Matters Agreement, is also broadly worded, to make it clear that "no provision in this EM Agreement or in any Schedule, including any Attachment thereto, shall confer upon any person, other than the signatories hereto, any rights or remedies with respect to...benefits...of any persons."

Similarly with the last clause of Section 9.05 of the MSA, paragraph 14 also has a proviso, giving certain specified third parties rights against Delphi notwithstanding the foregoing language, which, however, do not include either Lightsource or its employees. This exception states "provided that any rights to be provided under the Delphi Employee Benefit Plans or their successors, pursuant to this EM Agreement and the attached Schedules, shall be enforceable by the participants thereunder." Again, if GM and Delphi intended to exempt Lightsource or its employees from the reach of paragraph 14, they knew how to do it since they did it in the last clause of that paragraph for participants in the Delphi

19

Employee Benefit Plans.  (Lightsource itself is clearly not a participant in a Delphi Benefit Plan and therefore would not be exempt from the reach of paragraph 14.)

It was suggested at oral argument that conceivably Lightsource's employees who are owed by it OPEB guaranteed by GM under the LFA might nevertheless fit within the proviso to paragraph 14, and if, in fact, Lightsource paid the claims of those participants or those employees, it might be subrogated to them.  To determine whether the plain language of the U.S. Employee Matters Agreement would support such an argument one has to turn to paragraph 10(a) of the U.S. Employee Matters Agreement. Having read that paragraph, however, I conclude, to the contrary, that its plain terms actually confirm that the only logical reading of the exception to paragraph 14 excludes Lightsource and its present and former employees or those pursuant to whom Lightsource in the LFA agreed to pay OPEB obligations.

Paragraph 10(a) states, "Delphi shall pay the liabilities and expenses under the Delphi Benefit Plans with respect to Delphi Employees."  Then it goes on to state, "the Delphi Benefit Plans shall also cover the provision of benefits for employees of divested units which

20

were formerly Delphi operations to the extent that the GM

Benefit Plans cover the provision of benefits for such

'divested employees' as of the Effective Time."  It then

states some exceptions to that agreement, which I believe

are, for purposes of this matter, irrelevant.  Then

paragraph 10(a) states, "To the extent the parties [i.e.,

GM and Delphi] are unable to arrange with an applicable

third party (such as a buyer of a divested unit) for direct

payment of benefits or transfer of obligations, Delphi

agrees to reimburse GM for any such amounts."

Reading that language pursuant to its plain

terms, it is clear that Delphi undertook not to include

employees of divested units in the Delphi Benefit Plans as

"participants" in such plans but, rather, to "cover" the

provision of benefits to them, that is, to cover the

payment of their benefits, including OPEB, and that if the

parties could not arrange to do so with an applicable third

party, such as a buyer of a divested unit for direct

payment, it would reimburse GM for any such amounts.

It appears clear to me, therefore, that under

paragraph 14's proviso, the Lightsource employees who were

owed OPEB, or the GM former employees owed OPED, would not

be "participants" "in the Delphi Employee Benefit Plans,"

and, therefore, those former employees of the Delphi

division before the spin-off would be exempted from the

reach of the "no third party beneficiaries" language of

paragraph 14.  And under the case law that I have

previously discussed, it's therefore clear the parties

intended, pursuant to paragraph 14, with no countervailing

intention set forth in the agreement, that, while Delphi

would be responsible to GM for making the payments under

paragraph 10(a), it would not be directly responsible

therefor to any third party, including Lightsource or

Lightsource's employees.  And, consequently, the only party

who can, under these circumstances, assert a claim against

Delphi under the U.S. Employee Matters Agreement is GM.

Lightsource and/or Guide may not do so.

        For those reasons, I'll grant Delphi's objection

to the claims filed by Lightsource and Guide.  So, Mr.

Lyons, you can submit an order to that effect.