BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, MI 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

John T. Gregg, Admitted Pro Hac Vice
Telephone: (616) 742-3945
Email: jgregg@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case |
| DELPHI CORPORATION, *et al*. | No. 05-44481 |
| Debtors. | (Jointly Administered) |

**NOTICE OF CURE CLAIM OF BANK OF AMERICA, N.A. WITH RESPECT TO
CERTAIN AIRCRAFT LEASES BY AND BETWEEN BANK OF AMERICA,
N.A. AND DELPHI AUTOMOTIVE SYSTEMS HUMAN RESOURCES, LLC**

Bank of America, N.A. ("Bank of America")[1], by and through its undersigned counsel, hereby files this Notice (the "Notice") of Cure Claim With Respect to Certain Aircraft Leases By and Between Bank of America and Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), and in support of the Notice, respectfully states as follows:

**BACKGROUND**

**A.   THE LEARJET LEASE**

1.   On or about March 30, 2001, Bank of America's predecessor-in-interest, Fleet National Bank ("Fleet") entered into a certain Aircraft Lease dated such date with the

---

[1]   Capitalized terms not defined herein shall have the meaning given to them by the Plan.

predecessor-in-interest to Delphi HR, SM 5105 LLC, a Delaware limited liability company ("SMLLC"), as lessee (the "Learjet Lease").

2.  The following personal property is the subject of the Learjet Lease:

(a) a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

(b) two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA0319 and PCE-CA 0318 (collectively, the "Learjet Engines"); and

(c) all present and future parts, avionics, accessories, accessions and attachments related to the Learjet Aircraft, the Learjet Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Learjet Aircraft, the Learjet Engines, and any related goods (the "Learjet Accessories and Avionics").

3.  Title to the Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics (collectively referred to herein as the "Learjet") is held by Bank of America, as successor-in-interest to Fleet. The lessor's cost of the Learjet amounted to $11,125,200.00.

4.  Pursuant to the Learjet Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

5.  Pursuant to Section 3 of the Learjet Lease, the lessee is required to pay to Bank of America "Basic Rent" and "Supplemental Rent." Basic Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013. The amount of each monthly installment of Base Rent under the Learjet Lease is $64,202.53 for months 1 through 72 of the Learjet Lease and $78,470.93 for months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

2

6. All of the lessee's obligations under the Learjet Lease are unconditionally guaranteed by Delphi Corporation ("Delphi Corp."), formerly known as "Delphi Automotive Systems Corporation", a Delaware corporation, and Delphi Automotive Systems LLC ("Delphi Automotive Systems"), a Delaware limited liability company, pursuant to the terms of four separate guaranties, all of which are dated March 30, 2001, and which were thereafter amended in writing on or about December 16, 2003.

7. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property.

8. On December 17, 2001, Fleet made an in lieu filing with the Delaware Secretary of State, which continued perfection with respect to the Learjet and related collateral.

9. On January 29, 2002, the Learjet Lease was recorded with the FAA.

10. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.

11. On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State and listing Delphi HR as the debtor.

12. On or about November 26, 2001, lessee and Automotive Air Charter, Inc. ("Charter"), a Delaware corporation, executed a certain Charter Agreement concerning the Learjet, which agreement is dated such date (the "Learjet Charter Agreement"). The Learjet Charter Agreement was thereafter extended/renewed by lessee and Charter on or about January 2, 2002.

3

13. On November 26, 2001, lessee and Pentastar Aviation, LLC ("Pentastar") executed a certain Aircraft Management Agreement under FAR Part 91, concerning the Learjet, which agreement is dated such date, and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003 (the "Management Agreement").

14. Pursuant to the terms of the Learjet Lease and two separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by Fleet, the lessee, Pentastar and Charter and dated November 27, 2001 and December 16, 2003 (collectively, the "Assignments of Related Collateral"), SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of lessee's rights under the Management Agreement and the Learjet Charter Agreement (and any extensions and renewals thereof) and any subleases of the Learjet aircraft, including any sums paid and payable to the lessee thereunder (the "Learjet Ancillary Personal Property"). This security interest was perfected under applicable nonbankruptcy law.

**THE CHALLENGER LEASE**

15. On or about March 30, 2001, Fleet entered into a certain Aircraft Lease dated such date with SMLLC, as lessee (the "Challenger Lease", and together with the Learjet Lease, the "Leases").

16. The following personal property is the subject of the Challenger Lease:

(a) a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b) two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

4

(c) all present and future parts, avionics, accessories, accessions and attachments related to the Challenger Aircraft, the Challenger Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods (the "Challenger Accessories and Avionics").

17. Title to the Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics (collectively referred to herein as the "Challenger") is held by Bank of America, as successor-in-interest to Fleet. The lessor's cost of the Challenger was $24,149,760.00.

18. Pursuant to the Challenger Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

19. Pursuant to Section 3 of the Challenger Lease, the lessee is required to pay to Bank of America "Base Rent" and "Supplemental Rent." Base Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013. The amount of each monthly installment of Base Rent is $130,476.08 for months 1 through 72 of the Challenger Lease and $159,480.43 for the months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

20. All of the lessee's obligations under the Challenger Lease are unconditionally guaranteed by Delphi Corp. and Delphi Automotive Systems pursuant to the terms of four (4) separate guaranties, all of which are dated as of March 30, 2001, and which were thereafter amended in writing on or about December 16, 2003.

21. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property.

5

22. On November 30, 2001, Fleet made an in lieu filing with the Delaware Secretary of State, which continued perfection with respect to the Challenger and related collateral.

23. On January 25, 2002, the Challenger Lease was recorded with the FAA.

24. On or about December 16, 2003, SMLLC assigned all of its rights in the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.

25. On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State.

26. On or about November 26, 2001, lessee and Charter executed a certain Charter Agreement concerning the Challenger, which agreement is dated such date (the "Challenger Charter Agreement"). The Challenger Charter Agreement was thereafter extended/renewed by lessee on or about January 2, 2002.

27. On November 26, 2001, lessee and Pentastar Aviation, LLC executed the Management Agreement which also concerns the Challenger, which agreement is dated such date and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003.

28. Pursuant to the terms of the Challenger Lease and the Assignments of Related Collateral, SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of SMLLC's rights under the Management Agreement and the Challenger Charter Agreement (and any extensions and renewals thereof) and in any subleases of the Challenger aircraft including any sums paid and payable to the lessee thereunder (the "Challenger Ancillary Personal Property"). This security interest has been perfected under applicable nonbankruptcy law.

6

**C.    THE BANKRUPTCY FILING**

1.    On October 8, 2005 (the "Petition Date"), Delphi HR, Delphi Corp., Delphi Automotive Systems and several of their affiliates each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.    Shortly thereafter, Bank of America filed a Motion for Adequate Protection Replacement Liens (the "Motion for Adequate Protection").  The Motion for Adequate Protection was resolved when this Court entered a Consent Order Resolving Motion by Bank of America, N.A. for Adequate Protection Replacement Liens (the "Consent Order"), which provided for payment of certain amounts due under the Learjet Lease and the Challenger Lease in installments. (Consent Order at ¶ 6.)  Moreover, the Consent Order required that the Debtors establish a segregated deposit account for the Aircraft Cash Collateral (as defined by the Consent Order).  (Consent Order at ¶¶ 1-2.)  Finally, the Consent Order prohibited the Debtors from amending, canceling or otherwise terminating the Learjet Charter Agreement, the Challenger Charter Agreement, the Management Agreement or any subleases of the Learjet or the Challenger without at least ten (10) days prior written notice to Bank of America.  (Consent Order at ¶ 5.)

3.    On January 13, 2006, Bank of America commenced an adversary proceeding by filing a Complaint for a Declaratory Judgment With Respect to the Priority of Liens and Security Interests in Property of Delphi Automotive Systems Human Resources, LLC (the "Complaint") against Delphi HR, the Official Committee of Unsecured Creditors and JPMorgan Chase Bank, N.A., acting in its capacities as administrative agent for the Debtors' prepetition and post-petition lenders.  The Complaint requested that this Court enter a judgment declaring that JPMorgan

7

Chase Bank, N.A., in both of the aforementioned capacities, did not hold any security interests or liens in certain collateral pledged to Bank of America by Delphi HR.

4.      On April 26, 2006, this Court approved a Stipulation and Order Resolving and Dismissing Adversary Proceeding (the "Adversary Order").  The Adversary Order resolved the issues set forth in the Complaint and provided, among other things, that (i) the Prepetition Agent (as defined in the Adversary Order) did not hold any security interests in, or liens on, any assets owned by Delphi HR, (ii) none of the security interests or liens granted by this Court under the Final DIP Financing Order (as defined in the Adversary Order) attached to any interests of Delphi HR in collateral pledged to Bank of America, and (iii) the Debtors and the Committee agreed that the liens granted in the Final DIP Financing Order were subject and subordinate to the liens and security interests held by Bank of America.

5.      On or around July 27, 2006, Bank of America timely filed (i) a proof of claim against Delphi Corp. (Claim No. 11317) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the leases that are currently unknown or cannot be determined until one or both of the aircraft are returned, (ii) a proof of claim against Delphi Automotive Systems (Claim No. 11470) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the leases that are currently unknown or cannot be determined until one or both of the aircraft are returned, and (iii) a proof of claim against Delphi HR (Claim No. 11457) in the amount of $38,127,592.68, plus interest, late charges, taxes, expenses of collection, attorneys' fees and damages for violations of the leases that are currently unknown or cannot be determined until one or both of the aircraft are returned (collectively, the "Proofs of Claims").

8

6.    The Debtors and Bank of America subsequently entered into a Joint Stipulation and Agreed Order to Withdraw Without Prejudice [sic] of Proofs of Claim 11317, 11470, and 11457 (Bank of America, N.A.) (the "Claims Stipulation"), that was approved by this Court on September 7, 2007. The Claims Stipulation provides, among other things, that (i) Bank of America agreed to withdraw the Proofs of Claim without prejudice pending the Debtors' decision to assume or reject the Leases, and (ii) the Debtors must provide Bank of America with ten (10) days prior notice of the election to assume or reject the Leases.

7.    On December 10, 2007, this Court approved the Debtors' disclosure statement, and on the same day, the Debtors filed their First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (the "Plan").

8.    On December 28, 2007, the Debtors filed Exhibit 8.1(a) to the Plan, which discloses three (3) categories of executory contracts and unexpired leases that are to be rejected pursuant to the Plan. Pursuant to Exhibit 8.1(a) and the Plan, both Leases were assumed by Delphi HR.

9.    On January 25, 2008, this Court approved the Plan by entering its Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified (the "Confirmation Order"). By the express terms of the Plan and Confirmation Order, Bank of America continues to maintain its security interests and liens.

10.    Pursuant to the Plan and the Confirmation Order, in the event that a non-Debtor party wishes to assert an entitlement to Cure, such party must file and serve a Cure Claim within forty-five (45) days after the entry of the Confirmation Order, after which the Debtors shall have

9

forty-five (45) days to file an objection to the Cure Claim.  This Notice is filed in satisfaction of such requirements under the Plan and Confirmation Order.

## CURE CLAIM

11.  Both Leases provide that an event of default will be deemed to have occurred when:

> any event or condition set forth in subsections (d) through (h) of this Section shall occur with respect to any Guarantor or other person responsible, in whole or in part, for payment or performance of this Lease, or there shall be an express repudiation of any Guaranty or a default under any Guaranty, and any applicable grace period or cure period with respect thereto has expired.

(Leases at § 13(m).)  As such, in order to satisfy the conditions of Cure and "adequate assurance of future performance," the Debtors are required to either reaffirm all guaranties executed by Delphi Corp. and Delphi Automotive Systems in favor of Bank of America or provide new guaranties in a form and manner satisfactory to Bank of America.

12.  Moreover, both Leases provide that Delphi HR is "liable for all costs, charges and expenses, including legal fees and disbursements, incurred by [Bank of America] by reason of the occurrence of any Event of Default, the exercise of any of [Bank of America's] rights or remedies with respect thereto or otherwise."  (Leases at § 14(b).)  Alternatively, because the collateral that is subject to Bank of America's security interests and liens is valued at an amount in excess of the debt owed to Bank of America by the Debtors, Bank of America is entitled to reimbursement for all of its costs, charges and expenses incurred. 11 U.S.C. § 506(b).  As of the date of this Cure Claim and subject to continued accrual, Bank of America has incurred the

aggregate amount of $147,056.02 in legal fees and the aggregate amount of $10,178.00 in expenses.[2]

## RESERVATION OF RIGHTS

13.     Bank of America expressly reserves any and all rights to supplement and modify this Cure Claim.  This Cure Claim is being filed only as it pertains to the Leases and the rights derived thereunder or related thereto.  Nothing contained herein should be construed as a waiver by Bank of America with respect to any other rights.

---

[2]     Due to their voluminous nature and subject to the attorney-client privilege and work product doctrine, copies of invoices from Bank of America's counsel, Barnes & Thornburg LLP, will be provided to the Debtors upon request.

WHEREFORE, Bank of America respectfully requests that this Court (i) require the Debtors to provide Cure and "adequate assurance of future performance" to Bank of America as requested herein, and (ii) grant such other and further relief as is just and appropriate under the circumstances.

Dated:  February 1, 2008

                        BARNES & THORNBURG LLP
                        Attorneys for Bank of America, N.A.


                        By: /s/John T. Gregg
                            Patrick E. Mears (PM-6473)
                            John T. Gregg (Admitted Pro Hac Vice)
                        Business Address:
                        300 Ottawa Avenue, NW
                        Suite 500
                        Grand Rapids, Michigan  49503
                        Telephone:(616) 742-3930
                        Facsimile: (616) 742-3999
                        pmears@btlaw.com
                        jgregg@btlaw.com

GRDS01 JGREGG 358121v1