Eduardo J. Glas, Esquire (# EG7027)  Hearing date: February 21, 2008
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York  10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
Attorneys for Automodular Corporation f/k/a
Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc.,
and Automodular Assemblies (Ohio) Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
|  | : Chapter 11 |
|  | : |
| In re: | : Case Nos. 05-44481 (RDD) |
|  | : (Jointly Administered) |
| DELPHI CORPORATION | : |
| INC., et al. | : |
|  | : |
|  | : |
| Debtors. | : |
|  | : |

**SUPPLEMENT IN SUPPORT OF MOTION OF AUTOMODULAR ASSEMBLIES CORPORATION F/K/A AUTOMODULAR ASSEMBLIES INC., TEC-MAR DISTRIBUTION SERVICES, INC., AND AUTOMODULAR ASSEMBLIES (OHIO) INC. TO COMPEL ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND MOTION TO ALLOW AND DIRECT PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Automodular Corporation f/k/a Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc., and Automodular Assemblies (Ohio) Inc.[1] (collectively, "Automodular" or "Movant") hereby supplements its Motion to Compel Assumption or Rejection of Executory Contracts and Motion to Allow and Direct Payment of Administrative Expense Claims [D.I. # 11180] (the "Motion") as follows:

---
[1] As of January 1, 2008, the company changed its name to Automodular Corporation.

**Page 1**

ME1 7101667v.1

## BACKGROUND

1.  On October 8, 2005, Delphi and certain of its subsidiaries and affiliates filed for bankruptcy protection pursuant to Chapter 11 of Title 11 of the Bankruptcy Code.

2.  On November 30, 2007, Automodular filed its Motion seeking assumption or rejection of the U.S. Contract and the Ontario Contract (as further defined in the Motion and collectively the "Contracts") as well as payment of the post-petition amounts owed. On the same date, Automodular filed an Affidavit of Christopher Dell in support of the Motion [D.I. #11195]. Automodular hereby incorporates by reference the Motion, Affidavit and any and all exhibits thereto, as if fully set forth herein. The Motion was originally scheduled to be heard on December 20, 2007. The Motion is currently scheduled to be heard on February 21, 2008.

3.  The Motion alleged that as of the Petition Date, Debtors owed no less than $147,306.27 under the U.S. Contract and no less than $322,249.11 under the Ontario Contract. Although the parties have attempted to resolve the outstanding issues relating to the pre-petition amounts owed, as of the date of this Motion, the parties have not yet reached a final agreement.

4.  The Motion also alleges that the Debtors breached the Contracts in several ways. By way of example and without limitation, the Motion states that:

    (a) Although several changes in the scope of production were issued, Delphi failed to pay the adjusted rate for the changes in the scope of the work performed as contemplated by the contract. Per the Motion, "As a result of the change in scope, among other things, required by the Debtor, additional amounts have accrued that remain unpaid." Automodular then provided the total amount owed and a spreadsheet with a breakdown demonstrating the total owed and the how it was calculated, including reference to certain expenses incurred as a result of the scope change - an adjustment for addition of a TOC Clip and

Page 2

an adjustment for steel increases for a Screw purchased parts from ITW Medalist. (see Motion at paragraphs 4 -5, Affidavit and Exhibits attached thereto).  As of September 30, 2007, a total of $625,132.73 was due and owing from the Debtor for post-petition services and goods provided under the U.S. Contract.

   (b) Similar to the U.S. Contract, several changes in the scope of production were made with respect to the Ontario Contract.  The Motion also states that "Delphi has failed to perform under the Ontario Contract in several ways, including without limitation, failing to comply with (a) a foreign exchange adjustment clause; (b) to negotiate in good faith for price adjustments contemplated in the contract to changes in the scope of work; and (c) requirements for payment of termination costs for discontinued programs."  Although Automodular provided the goods and services to Delphi, Delphi failed to pay the adjusted rate for the changes in the scope of the work performed as contemplated by the contract.  As of September 30, 2007, no less than $1,042,756.83 was due and owing from the Debtors for post-petition goods and services provided by Automodular under the Ontario Contract. (see Motion at paragraphs 6-12, Affidavit and Exhibits thereto)

  5. On December 13, 2007, Debtors filed an Objection to the Motion [D.I. # 11447]. After the Objection was filed, the parties engaged in numerous telephone calls as well as formal and informal exchanges of information to discuss the claims addressed in the Motion.  The parties also discussed a proposed schedule for discovery including written and oral discovery. However, the hearing on the Motion was eventually continued to January 25, 2008 thus postponing the need for immediate discovery.

  6. The parties again engaged in numerous formal and informal discussions about the claims raised in the Motion.  As a result, Automodular answered many questions raised by the

Page 3

ME1 7101667v.1

Debtors and provided the Debtors with documentation in support of its claims. The parties also agreed to serve and respond to written discovery. On December 21, 2007, the parties served written discovery requests [See Automodular Notice of Service D.I. # 11587] and on January 9, 2008, the parties responded to the pending requests. At the suggestion of the Debtors, the parties agreed to produce written documentation on a rolling basis. Although the Debtors have only provided documentation on one occasion, Automodular has supplemented its responses to the Debtors' written discovery on two separate occasions, for a total production of over 400 pages.[2]

7. Subsequent to the parties' exchange of written discovery, the parties again engaged in numerous formal and informal discussions relating to the claims. While preserving any and all work product relating to the claims, Automodular responded to the Debtors and provided additional information and documentation in support. Despite two (2) months of notice to the Debtors of Automodular's claims, and numerous formal and informal exchanges of information and documentation, on January 31, 2008, Debtors notified Automodular that if Automodular failed to supplement its pleadings by February 1, 2008, Debtors would move to strike the presentation of many of the claims.[3] This is Automodular's response.

## THE CLAIMS

8. Automodular's claims for relief relate to two pre-petition contracts: the U.S. Contract, first dated March of 2004 and the Ontario Contract, first dated June 2005.

---

[2] Automodular asserts that Debtors have failed to comply with their discovery obligations and as such, Automodular recently sent the Debtors a discovery deficiency letter in an effort to meet and confer with respect to the insufficient responses. Debtors have not yet responded to the letter.

[3] Automodular strongly disagrees with Debtors' assertion that the original pleadings were insufficient in any way. However, in the interest of moving this matter forward without unnecessary delay and to avoid any unfounded arguments, Automodular submits this Supplement to its Motion.

ME1 7101667v.1

**I.      The U.S. Contract**

9.      As stated in the original motion, and supported by the Exhibits thereto, the amounts due and owing under the U.S. Contract related to (a) work requiring the addition of a TOC Clip; (b) the adjustment for steel increase for screws purchased from ITW Medalist; and (c) a change in scope for work performed under the contract or a "de-rate" of jobs and volume.  The "de-rate" relates to the scope change from 3 shifts to 2 shifts and an increase in line rate from 54 net jobs per hour to 63 net jobs per hour.  Subsequent to the filing of the Motion, the business people engaged in discussions relating to the TOC Clip and have resolved this issue.

10.     However, as of the date of this Motion, the amount due and owing for the Screw work/parts is $10,630.00.  This amount represents the cost incurred by Automodular due to an increase in purchased parts from ITW Medalist.  In addition, the amount due and owing for the change in scope work is no less than $738,845.00.  This amount represents the change in scope or de-rate from 3 shifts to 2 shifts and the increase in line rate.  On July 19, 2006, Automodular provided Delphi with a new cost breakdown for a two shift operation, with 63 net jobs per hour, and reflecting the change in volume.  A Scope Change Form was issued on September 27, 2006 verifying the change in work.  Additional documentation in support of these claims has been provided to the Debtors.  A spreadsheet showing the amounts owed is attached as Exhibit A.[4]

**II.     The Ontario Contract**

11.     With respect to the Ontario Contract, the Motion asserted claims for (a) a failure of the Debtors to adjust for the currency exchange rate pursuant to paragraph 3 of the Ontario Contract - $117,201.86; (b) a change in the scope of work or de-rate of jobs and volume - $472,139.20; (c) labor and costs incurred for the addition of labels and a clip - $1,131.11; (d)

costs and labor for the installation of an additional foam pad on two cars lines beginning November 6, 2006 and November 11, 2006 - $54,823.39; (e) an unauthorized retroactive credit for grease application taken by the Debtors - $183,931.00; and (f) fees and costs associated with early termination of the GMX 231 prior to the 2010 contract termination date - $322,307.54.

       12.     As of December 31, 1007, the following was owed under the Ontario Contract:

          (a)     Currency Exchange = $156,354.77;

          (b)     Change in Scope = $620,835.27;

          (c)     Label and Clip addition = $1,131.11;

          (d)     Foam Pad Installation = $66,012.00;

          (e)     Retroactive Grease Credit = $183,931.00;

          (f)     Early Exit for GMX 231 = $322,307.54;

          (g)     Short Charges on invoices = $191.98 and $4,442.05.

Documentation in support of the claims has been provided to Debtors and a spreadsheet summarizing the claims is attached as Exhibit B.

       13.     By way of its responses to Automodular's discovery requests, and as shown by the documentation exchanged in this case, Debtors admit they did not adjust payments after January 1, 2006 for the currency exchange rate but denied that any payments are due and owing. Automodular continues to assert that amounts are due and owing for the failure of the Debtors to adjust for the currency exchange rate. The parties are attempting to resolve the currency exchange rate issue but have not yet reached a final agreement.

---

[4] The Exhibits have been provided in hard copy to the Debtors and the Court and marked "Confidential" pursuant to the parties' stipulated protective order but have not been scanned or efiled herewith.

ME1 7101667v.1

14. Debtors admitted that the GMX 231 line was terminated but deny that it was terminated early. As the line was terminated in 2007, rather than the projected time of 2010, Automodular continues to assert that Debtors improperly terminated the line early.

15. Debtors admitted that Automodular provided additional goods and services by implementation of the foam pad and label and clip installations, but deny that anything is owed. Automodular has provided significant documentation regarding the installation of the foam pad, including a Design Record Change Notice, emails and letters calculating the cost for installation of the foam pad. To date, the parties have not resolved this issue.

16. Debtors admitted that a credit of $183,931 relating to the grease application was taken but provided no explanation as to why it was entitled to the deduction. Automodular provided documentation to the Debtors demonstrating that the credit was not authorized by Automodular and constituted a breach of contract. This issue remains unresolved.

17. Finally, Debtors admitted that General Motors issued changes in the scope of work to be performed under the contract but denies an obligation to compensate Automodular for the change in work. Numerous documents relating to the scope change issue were provided to the Debtors including, but not limited to, copies of Scope Change Forms, copies of letters to Delphi notifying it of the ordered changes, letters and emails explaining how the scope changes result in a price change and the calculations in support, etc. This issue also remains unresolved.

## ARGUMENT

18. Pursuant to the Debtors' approved Plan of Reorganization, any contracts not specifically rejected, will be assumed by the Debtors. As of the date of this filing, the Debtors have not rejected either of the Contracts. Pursuant to Section 365 of Title 11 of the Bankruptcy Code, the Debtors must cure all defaults under a contract prior to assumption.

ME1 7101667v.1

19. Debtors incurred, and continue to incur, substantial pre and post-petition expenses for services provided pursuant to the Contracts. As a result, Automodular has sustained large economic losses due to Debtors' failure to pay for the services provided. Delphi as admitted that it has received the benefit of the services outlined in the Motion and must therefore cure all defaults under the Contracts as well as promptly pay for the services which are continuously being provided to Debtors on an ongoing basis.

20. In addition, the post-petition amounts owed should be paid in full and in cash. Section 503(b) of Title 11 of the Bankruptcy Code provides that "[a]fter notice and a hearing, there shall be allowed administrative expenses, … including -- the actual, necessary costs and expenses of preserving the estate…." 11 U.S.C. §503(b)(1)(A). While the Bankruptcy Code does not itself elaborate on what constitutes an actual, necessary cost or expense of preserving a debtor's estate, "[i]f the debtor in possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor in possession is obligated to pay for the reasonable value of those services which, depending on the circumstances of a particular contract, may be what is specified in the contract." NLRB v. Bildisco and Bildisco, 465 U.S. 513, 531 (1984) (internal citations omitted).

21. The Debtors should not be permitted to reap the benefit of the use of these services without compensating Automodular for such use. Thus, Automodular is entitled to immediate payment of an administrative expense claim for the full value of the services rendered and which continue to accrue post-petition, under the Contracts. As such, Movants request that the Court enter an Order compelling the Debtors to make immediate payment to Automodular in the amount of any accrued post-petition payments as an administrative expense claim as and when they become due.

ME1 7101667v.1

WHEREFORE, Automodular respectfully request that this Court grant the relief requested in the motion by (1) compelling Debtors to cure all defaults under the assumed Contracts; (2) granting Automodular an administrative expense claim for the amount due and owing under the Contracts and compelling Debtors to make immediate payment; and (3) granting such other and further relief as deemed just and proper.

/s/ Eduardo J. Glas
Eduardo J. Glas, Esquire (# EG7027)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York  10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile

and

Katharine L. Mayer, Esquire
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19899
(302) 984-6300

Attorneys for Automodular Corporation f/k/a Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc., and Automodular Assemblies (Ohio) Inc.

DATED: February 1, 2008