PEPPER HAMILTON LLP
Linda J. Casey (LC 1891)
Anne Marie Aaronson (AA 1679)
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

Henry J. Jaffe (DE Bar No. 2987)
James C. Carignan (DE Bar No. 4230)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel for SKF USA  Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, <u>et al.</u>, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| _____ | : | |

**SKF USA INC.'S OBJECTION TO (I) NOTICE OF ASSUMPTION AND/OR
ASSIGNMENT OF EXECUTORY CONTRACT OR UNEXPIRED LEASE TO BUYERS
IN CONNECTION WITH THE SALE OF STEERING AND HALFSHAFT BUSINESS
RELATING TO (A) PURCHASE ORDER NUMBERS 9016236, 9016280, 9016383, (B)
PURCHASE ORDER NUMBERS SAG9014765, SAG9012726; AND (C) PURCHASE
ORDER NUMBERS 9015996, 9016242, 9016243; (II) NOTICE OF CURE AMOUNT
WITH RESPECT TO EXECUTORY CONTRACT OR UNEXPIRED LEASE TO BE
ASSUMED AND ASSIGNED IN CONNECTION WITH SALE OF STEERING AND
HALFSHAFT BUSINESS RELATING TO (A) PURCHASE ORDER NUMBER
SAG9014765; AND (B) PURCHASE ORDER NUMBER SAG9012726;
<u>AND (III) THE "STEERING SALE MOTION"</u>**

SKF USA Inc. ("SKF") hereby files this objection (the "Objection") to the:

#9276514 v3

(1) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With The Sale Of Steering And Halfshaft Business (Purchase Order Numbers 9016236, 9016280, 9016383);

(2) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With The Sale Of Steering And Halfshaft Business (Purchase Order Numbers SAG9014765, SAG9012726);

(3) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With The Sale Of Steering And Halfshaft Business (Purchase Order Numbers 9015996, 9016242, 9016243) (hereinafter, the documents identified in paragraphs (1) through (3), the "SKF Assumption Notices");

(4) Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business (Purchase Order Number SAG9014765);

(5) Notice Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business (Purchase Order Number SAG9012726 (hereinafter, the documents identified in paragraphs (4) and (5), the "SKF Cure Notices");

(6) Expedited Motion for Orders Under 11 U.S.C. §§ 363, 365 and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date, (B) Authorizing and Approving (I) Salle of Certain of Debtors' Assets Comprising Substantially All Assets Primarily Used in Debtors' Steering and Halfshaft Business Free and Clear of Liens, Claims, and Encumbrances, (II) Assumption and Assignment of Certain

#9276514 v3

Executory Contracts and Unexpired Leases, and (III) Assumption of Certain Liabilities, and (C)

Authorizing and Approving Transaction Facilitation Agreement (the "Steering Sale Motion").

**SKF also hereby provides notice to the Debtors that it elects to be paid in**

**cash for all cure amounts due and owing to it for any executory contract assumed by the**

**Debtors, whether assumed pursuant to the Steering Sale Motion, the Debtors' plan of**

**reorganization or otherwise.**[1]

In support hereof, SKF states as follows:

_____

[1] Pursuant to the Plan and various motions and notices, the Debtors have created different procedures for counterparties to object to the proposed assumption of executory contracts and the proposed cure amounts relating to such contracts. In accordance with the Solicitation Procedures Order (as defined by the Debtors), if the Debtors assume any executory contract pursuant to the terms of the Plan, and have provided the required cure notice pursuant to the Solicitation Procedures Order, the counterparty was required to object to the proposed cure amount, and elect whether to be paid in cash or stock, on or before January 11, 2008. If the counterparty does object to the cure amount, it must file a statement of cure amount on or before thirty days after effective date of the Plan, a date which cannot be determined as of the date of filing of this Objection.

If, however, the counterparty does not receive any cure notice pursuant to the Solicitation Procedures Order, or receives such a notice for some but not all of its executory contracts, the counterparty is required to object to the assumption and/or request a cure payment for any executory contracts not subject to a notice within 45 days after the entry of the order confirming the Plan, *i.e.* March 10, 2008.

The Debtors may also seek to assume executory contracts pursuant to the Steering Sale Motion. Pursuant to the Bidding Procedures Order (as defined by the Debtors), objections to the proposed assumption, assignment and cure amount relating to executory contracts to be assumed in connection with the Steering Sale Motion must be filed within ten days of service of the applicable assumption/cure notice (for the SKF Assumption Notices and Cure Notices, the deadline is February 4, 2008; on January 29, the Debtors served additional assumption and cure notices pursuant to the Plan, which have a separate deadline of February 8, 2008). However, the notices served in connection with the Steering Sale Motion also state that, if the sale does not close prior to the Effective Date of the Plan, then the contracts that are the subject of the sale notice shall be assumed pursuant to the plan, and the procedures, including the objection deadlines, set forth in the Solicitation Procedures Order, shall apply to the contracts subject to the Steering Sale Motion assumption notices.

Because there are several deadlines that theoretically apply to each of the executory contracts (or non-executory contracts that the Debtors nonetheless seek to assume), SKF has attempted to comply with each of the applicable deadlines and intends to file an objection to the later-served notice on or before February 8, 2008. SKF also intends to file an omnibus objection and statement of cure amount, which will include all unassumed, unexpired pre-petition executory contracts, in the hope that this Court will schedule a hearing on all issues relating to the assumption of SKF's executory contracts in the interest of judicial economy.

-3-

#9276514 v3

## INTRODUCTION

1.    SKF and debtor Delphi Automotive Systems, LLC ("DASL"), and/or debtor Delphi Corporation ("DelCorp"), and/or one or more of DASL or DelCorp.'s debtor affiliates (collectively, the "Debtors") are parties to certain contracts that SKF believes are, were or may be pre-petition executory contracts or are post-petition contracts. These pre and post-petition contracts include, but are not limited to, the following contracts identified by the Debtors in the SKF Assumption Notices: Purchase Order Numbers 9016236, 9016280, 9016383, SAG9014765, SAG9012726, 9015996, 9016242, and 9016243.[2]

2.    The Debtors have filed their Steering Sale Motion seeking authority to sell certain assets comprising substantially all of the assets primarily used in the Seller Debtor Entities' (as defined by the Debtors) steering and halfshaft business. The Debtors also seek authority to assume and assign certain pre-petition executory contracts in connection with the sale of its steering and halfshaft business, and, in addition, to assign certain post-petition contracts.

3.    The SKF Assumption Notices notify SKF of the Debtors' intent to assume the following pre-petition executory contracts: Purchase Orders Numbered SAG9014765 and SAG9012726. The SKF Cure Notices sent by the Debtors assert that there are no defaults under Purchase Order SAG9014765, and that the cure amount relating to SAG9012726 is $103,159.81. SKF disputes these cure amounts.

---

[2] SKF and certain of the Debtors previously entered into an assumption agreement relating to one or more contracts that were executory as of the Petition Date. The previously-assumed contract(s) are, therefore, not governed by the terms of the Plan relating to the assumption of executory contracts and are not the subject of an assumption notice relating to the Steering Sale Motion. Such contracts may, however, give rise to administrative claims in favor of SKF and nothing herein shall be deemed to waive or modify SKF's right to seek or obtain payment with regard to such claims.

#9276514 v3

4.      The SKF Assumption Notices also indicate the Debtors' intent to assign to the successful purchaser the following post-petition contracts: Purchase Orders Numbered SAG9016236, SAG9016280, SAG9016383, SAG9015996, SAG9016242, and SAG9016243.[3]

5.      The SKF Assumption and Cure Notices provide that, if the closing on the sale of the steering and halfshaft business does not occur prior to the effective date (the "Effective Date") of the Debtors' Chapter 11 plan (the "Plan"), then the identified pre-petition executory contracts will be assumed pursuant to the terms of the Plan, and the assumption and cure amounts will be governed by the procedures set forth in the solicitation procedures order(s) entered in connection with the approval of the disclosure statement for the Plan.

## OBJECTION

### I.      OBJECTION TO STEERING SALE MOTION

#### A.      General Rights of Parties to Assumed Executory Contracts and Post-petition Contracts

6.      Pursuant to 11 U.S.C. § 365(b)(1)(A), a debtor may not assume any pre-petition executory contract unless it cures any existing defaults. In addition, a debtor must provide adequate assurance of future performance under such executory contract. 11 U.S.C. § 365(b)(1)(C). As such, a non-debtor party to an executory contract is entitled to both the cure of all defaults under such contract and the future performance of all outstanding contract obligations existing under such contract (including obligations relating to claims that have accrued, but are not yet in default). Any proposed assumption (or assumption and assignment)

---

[3] The SKF Assumption and Cure Notices appear to accidentally omit the "SAG" prefix before some of purchase order numbers. However, this minor discrepancy is immaterial and SKF can identify these contracts in its books and records.

#9276514 v3

of a contract that does not provide for the payment of all claims arising under such contract clearly violates the Bankruptcy Code.

7.    Similarly, a non-debtor party to a valid post-petition contract with a debtor has a right to payment under such contract for goods or services provided prior to the assignment if the goods or services provided by the claimant benefited the debtor's estate.  If the debtor does not pay such post-petition claim in the ordinary course (as it is permitted to do so under section 363(a) of the Bankruptcy Code), the claim is entitled to administrative expense priority and must be paid in full on the effective date of the plan pursuant to sections 503(b), 507(a)(2) and 1129 of the Bankruptcy Code.  Consequently, a debtor cannot, through some sleight of hand, or cleverly drafted sale motion order, deprive the administrative claimant of its right to payment in full for valid post-petition claims.

B.    **The Proposed Sale Order is Inconsistent with the Proposed Sale Agreement And Threatens to Deprive SKF of the Right to be Paid in Full Under its Assumed Executory Contracts and Post-petition Contracts**

8.    The proposed sale agreement (the "Proposed Sale Agreement") and the proposed sale order (the "Proposed Sale Order") authorizing the sale contain contradictory and improper language concerning the Debtors' or buyer's responsibility to pay for all outstanding and accrued amounts due under pre-petition and post-petition contracts that will be assigned to the proposed buyer.

9.    For example, the Proposed Sale Agreement provides that the buyer shall assume all "Liabilities of the Asset Sellers arising under any Contracts . . . assigned or otherwise transferred to Buyers . . . excluding Cure Amounts (if any)." (Proposed Sale Agreement, at ¶ 2.2.1).  The Proposed Sale Agreement further provides that the buyer shall assume, "Accounts Payable incurred after the Petition Date." (Proposed Sale Agreement, at ¶ 2.2.3).

-6-

#9276514 v3

10.     While the language of the Proposed Sale Agreement, when read as a whole, is somewhat unclear, it would appear to require: (a) for pre-petition executory contracts being assumed and assigned, that: (i) the Debtors shall pay all amounts (whether accrued pre- or post-petition) that are in default for each executory contract as of the date that such contract is assumed and assigned to the buyer (for purposes of this Objection, for each pre or post-petition contract that is to be assigned to the buyer, the date of such assignment is referred to herein as the "Closing Date"); and (ii) the buyer shall pay all post-petition amounts that have accrued under the contract prior to the Closing Date, if such amount is not in default; and (b) for post-petition contracts that are being assigned – that the buyer shall assume all unpaid obligations arising under such contract as of the Closing Date.[4]

11.     The Proposed Sale Order, however, is inconsistent with certain key provisions of the Proposed Sale Agreement.  Furthermore, and most troubling, the Proposed Sale Order seeks to deprive SKF of its right to be paid in full for all obligations arising under its pre-petition and post-petition contracts prior to the Closing Date.

12.     To begin, contrary to the Proposed Sale Agreement, the Proposed Sale Order suggests that it is the Debtors, not the buyer, who will pay all amounts (including both obligations that are in default and accrued obligations that are not in default) due under pre-petition executory contracts that are to be assumed and assigned in connection with the sale. Particularly, the Proposed Sale Order provides that "[a]ll defaults or other obligations of the Selling Debtor Entities under the Pre-Petition Contracts arising or accruing prior to the Closing

---

[4] Note, however, that to the extent that the Debtors and the proposed buyers do not confirm this construction of Proposed Sale Agreement (which would provide for the satisfaction of all claims accruing under assigned contracts prior to the Closing Date), then SKF objects to the Proposed Sale Agreement as improperly modifying SKF's right to payment under such contracts.

#9276514 v3

of the Sale . . . shall be cured by the Selling Debtor Entities . . . ." (Proposed Sale Order, at ¶ 17). This language contradicts the language in the Proposed Sale Agreement, and appears to require the *Debtors* to pay both Cure Amount s (*i.e.* any amount in default), as well as any post-petition invoices that are not in default.

13.    Furthermore, the Proposed Sale Order also contains, in two separate locations, language that would appear to shield both the Debtors and the proposed buyer from *any* obligation to make *any* payments to the counterparties to assumed pre-petition executory contracts, including any cure amount or any obligations not in default as of the Closing Date. In particular, the Proposed Sale Order states that "[e]ach non-Debtor party to a Pre-Petition Contract hereby is forever barred, estopped, and permanently enjoined from asserting against Sellers or the Buyers, or the property of either of them, any default, breach, claim, pecuniary loss, or condition to assignment, existing, arising or accruing as of the Closing of the Sale." (See Proposed Sale Order, at ¶¶ 17, 18). Of course, bankruptcy law requires the Debtors to cure any defaults existing under the agreements, and further, pay all obligations arising under the contracts that are not in default as of the assumption date (unless the buyers agree to make payment for all such therefore).

14.    In addition, contrary to the Proposed Sale Agreement, the Proposed Sale Order, as it is presently drafted, would prevent parties to both assigned post-petition contracts and assumed and assigned pre-petition contracts, from obtaining any payment from the Buyers for claims arising under such agreements prior to the Closing Date. Particularly, paragraphs 12 and 25 of the Proposed Sale Order purport to bar and enjoin parties holding "Claims" (which the Proposed Sale Order defines as including post-petition claims) relating to the Purchased Assets or the Debtors' Steering Business from asserting such Claims against the proposed buyers. If

-8-

so, then the Proposed Sale Agreement and the Proposed Sale Order need to be amended to reflect

that the Debtors shall be responsible for each and every obligation (including those which have

accrued, but for which there has been no default) arising prior to the Closing relating to both pre-

petition and post-petition contracts that the Debtors seek to assign or assumed and assign to the

proposed buyer. Presently, however, the Proposed Sale Agreement is directly at odds with the

Proposed Sale Order.

15.     The Proposed Sale Order also states that SKF, and other contract

counterparties, are "forever barred, estopped, and permanently enjoined from asserting against

the Selling Debtor Entitles or the Buyers . . . any purported written or oral modifications to the

Pre-Petition Contracts." The Debtors do not have the power to assume executory contracts,

unilaterally modify them to fit their liking, and then assign the modified contracts to a third

party. If, under applicable law, a pre-petition contract has validly been modified, the Debtors

may only assume and assign the contract as it exists between them and the counterparty on the

date of assignment.

16.     Finally, the Proposed Sale Order improperly provides that such order

"shall be effective as a determination that, upon the Closing of the Sale, all Interests and/or

Claims of any kind or nature whatsoever existing as to the Selling Debtor Entities or the

Purchased Assets being sold by the Selling Debtor Entities prior to the Closing of the Sale have

been unconditionally released, discharged, and terminated (other than any surviving

obligations)."

17.     This broad and overly inclusive release language is entirely inappropriate

in the context of a 363 sale order. Those with claims against the Debtors should not have those

claims released or discharged merely because the Debtors are selling assets. Indeed, generally

#9276514 v3

speaking, in an approved 363 sale, exactly the opposite is true – namely, the assets are transferred to the buyer free and clear of claims and those claims may continue to be asserted against the debtors and the proceeds of the sale of the property. If the debtors seek approval of a release it must be carefully circumscribed to deal only with specific claims that the sale order and sale agreement clearly identify and provide will be paid by the buyer (and it is insufficient for the Debtors merely to reference certain unspecified "surviving obligations"). In its present form, however, this release language should be stricken from the Proposed Sale Order in its entirety.

18.    In sum, any sale order entered by the Court should: (a) clearly provide that all pre-petition and post-petition amounts arising under each pre-petition executory contract to be assumed and assigned to the buyer will be satisfied in full, regardless of whether such amounts are in default as of the Closing Date: (b) clearly provide that all amounts due under post-petition contracts to be assigned to the buyer will be satisfied in full, regardless of whether such amounts are in default as of the Closing Date; (c) clearly delineate the respective obligations of the Selling Debtor Entities and the Buyer with regard to all amounts accrued as of the Closing Date (regardless of whether such amounts are then in default) under both pre-petition executory contracts and post-petition contracts that are to be assigned to the buyer; (d) require the Buyer to accept the assignment of the assumed pre-petition executory contracts in their present form, including any valid amendments thereto; (e) not provide for releases against the Debtors in the form currently set forth in the Proposed Sale Order; and (f) be consistent with the terms of the final sale agreement and require the modification of the final sale agreement to the extent that such agreement would violate any section of the Bankruptcy Code or otherwise improperly interfere with SKF's right to be paid, in full, for all claims that have accrued as of the Closing

#9276514 v3

Date, under pre-petition or post-petition contracts to be assigned to the buyer in connection with the proposed sale.

C.    **Reservation of Rights Concerning Identity of Successful Bidder**

19.    Because the proposed sale is subject to higher and better bids, SKF cannot determine at this time if the proposed assignee (who is not yet determinable) has provided or can provide adequate assurances of future performance, and SKF reserves its rights to object to the assignment of its contracts to the winning bidder on this basis.

II.    **OBJECTION TO CURE AMOUNTS FOR PRE-PETITION CONTRACTS**

A.    Purchase Order SAG9014765

20.    The SKF Cure Notice asserts that there are no defaults under Purchase Order SAG9014765.  SKF agrees that there were no amounts due and unpaid as of the Petition Date relating to this purchase order.  However, as of January 28, 2008, there were three unpaid invoices relating to this purchase order, which are currently in default or may be in default as of the date the contract is assumed, as follows:

| Invoice Number | Invoice Date | Invoice Amount |
| --- | --- | --- |
| 1697841 | 12/12/07 | $550.25 |
| 1700114 | 1/4/08 | $550.25 |
| 1703067 | 1/23/08 | $550.25 |

Thus, the cure claim related to Purchase Order SAG9014765 is, or may be, $1,650.75 (or more, if additional amounts are billed and not timely paid prior to the Closing Date).  To the extent that the Debtors are not in default of their payment obligations pursuant to any of these invoices as of the assumption date, SKF is nevertheless entitled to payment in full for these post-petition administrative expenses.  Attached as Exhibit A is a copy of each of these three invoices.

#9276514 v3

21.    In addition, SKF reserves the right to seek payment of any claims incurred after January 28, 2008, and objects to the assumption and assignment of this contract to the extent that its right to obtain payment of such claims is in any way impaired.

B.    Purchase Order SAG9012726

22.    The SKF Cure Notices asserted that the cure amount relating to Purchase Order Number SAG9012726 is $103,159.81.

23.    As of the Petition Date, SKF was owed $83,147.38 for invoices issued pursuant to this purchase order.  As of January 28, 2008, there were 152 unpaid post-petition invoices relating to this purchase order, which are currently in default or which may be in default as of the Closing.  The total amount of these invoices is $269,568.55.  Attached at Exhibit B, part 1, is a chart listing each outstanding pre-petition invoice relating to SAG9012726, and at Exhibit B, part 2, is a chart listing each outstanding post-petition invoice relating to SAG9012726.

24.    Thus, the total cure amount for Purchase Order Number SAG9012726 is, or could be, $352,715.93(or more, if additional amounts are billed and not timely paid prior to the Closing Date) .  To the extent that the Debtors are not in default of their payment obligations pursuant to any of the post-petition invoices as of the Closing Date, SKF is nevertheless entitled to payment in full for these post-petition administrative expenses.

25.    In addition, SKF reserves the right to seek payment of any claims incurred after January 28, 2008, and objects to the assumption and assignment of this contract to the extent that its right to obtain payment of such claims is in any way impaired.

26.    Attached hereto as Exhibit C are copies of all unpaid and outstanding invoices, as of January 28, 2008, pertaining to Purchase Order SAG9012726.

#9276514 v3

III.                    **The Assignment of Post-Petition Contracts**

27.    The Debtors have provided notice of their intent to assign to the proposed

buyer the following purchase orders, which were entered into post-petition: SAG9016236,

SAG9016280, SAG9016383, SAG9015996, SAG9016242, and SAG9016243.

28.    The proposed order must explicitly state whether the Debtors (as

suggested by the Proposed Sale Order) or the proposed buyer (as suggested by the Proposed Sale

Agreement) is responsible for paying all accrued but unpaid obligations pursuant to these post-

petition contracts as of the Closing Date.

29.    As of January 28, 2008, the outstanding and unpaid invoices relating to the

foregoing post-petition contracts totaled:

| Purchase Order | Total Outstanding Invoices |
| --- | --- |
| SAG9016236 | $0 |
| SAG9016280 | $0 |
| SAG9016383 | $0 |
| SAG9015996 | $85,499.80 |
| SAG9016242 | $33,920.40 |
| SAG9016243 | $43,145.25 |

30.    Attached at Exhibit D is chart listing, for each purchase order, all of the

outstanding invoices.  Attached at Exhibit E is a copy of each of the outstanding and unpaid

invoices, as of January 28, 2008, pertaining to purchase orders numbered SAG9016236,

SAG9016280, SAG9016383, SAG9015996, SAG9016242, and SAG9016243.

31.    SKF is entitled to payment in full, in cash, of all post-petition invoices

issued under these purchase orders.  In addition, SKF is entitled to payment in full, in cash, of

any post-petition amounts that accrues between January 28, 2008 and the assignment date and

-13-

#9276514 v3

SKF objects to the assignment of such contracts to the extent that its right to obtain payment of such claims is in any way impaired.

WHEREFORE, SKF USA respectfully requests that this Court (a) deny the Steering Sale Motion, unless the order (and the underlying asset purchase agreement) is/are amended to require either the Debtors or the ultimate buyer of the assets to make payment in full, in cash, on the Closing Date, of all amounts outstanding, whether in default or otherwise, related to the assumed and assigned pre-petition executory contracts and assigned post-petition contracts, and that the order explicitly identify and delineate which of the Selling Debtors or the ultimate buyer is required to make what payments; (b) allow cure claims in favor of SKF in the amount of at least $354,366.68 for the pre-petition executory contracts to be assumed in connection with the Steering Sale, together with administrative claims for amounts that have accrued, but are not in default, under such contracts as of the Closing Date; (c) allow administrative expense claims in favor of SKF in the amount of at least $162,565.45 for amounts outstanding in connection with post-petition contracts being assigned to the purchaser of the steering and halfshaft business, together with administrative claims for amounts that have accrued, but are not in default, under such contracts as of the Closing Date; and (d) such other and further relief as is just and appropriate.

Respectfully submitted,

/s/ Linda J. Casey

Linda J. Casey (LC 189 )
Anne Marie Aaronson (AA 1679)
PEPPER HAMILTON LLP
3000 Two Logan Square,
18th and Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

-14-

#9276514 v3

-and-

Henry J. Jaffe
James C. Carignan
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, DE 19801
(302) 777-6500
Counsel for SKF USA Inc.


DATED:

#9276514 v3