**Hearing Date And Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 14, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :
    In re                           :        Chapter 11
                              :
DELPHI CORPORATION, et al.,     :        Case No. 05-44481 (RDD)
                              :
                              :        (Jointly Administered)
        Debtors.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 365(d)(4)
FURTHER EXTENDING DEADLINE TO ASSUME OR
REJECT LEASES OF NONRESIDENTIAL REAL PROPERTY

("FOURTH 365(d)(4) DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 365(d)(4) further extending the deadline to assume or reject unexpired leases of nonresidential real property, and respectfully represent as follows:

Background

A.       The Chapter 11 Filings

       1.       On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

       2.       No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

       3.       On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264).  Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession  (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan  (Docket No. 11388) (the "Disclosure Statement").  The Court entered an

2

order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008, the Court entered an order confirming the Plan, as modified  (Docket No. 12359) (the "Confirmation Order").

        4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

        5.      The statutory predicate for the relief requested herein is section 365(d)(4) of the Bankruptcy Code.

B.      <u>Current Business Operations Of The Debtors</u>

        6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately $15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

        7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27, 2007.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

3

largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.  Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.  Events Leading To The Chapter 11 Filing

9.  In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred

---

[3]  Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

4

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs.

10.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

11.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations. The Debtors stated that they needed to focus on five key areas:[4] first, modifying the

---

[4]    In furtherance of the Debtors' transformation plan, on December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with certain investors and a plan framework support agreement with those investors and GM. On July 9, 2007, Delphi confirmed that it had formally terminated the equity purchase and commitment agreement and related plan framework support agreement. On July 18, 2007, Delphi announced that it had accepted a new proposal for an equity purchase and commitment agreement (the "Delphi-Appaloosa EPCA") submitted by a group comprising a number of the original plan investors (affiliates of Appaloosa Management L.P., Harbinger Capital Partners Master Fund I, Ltd., Merrill Lynch, Pierce, Fenner & Smith Inc., and UBS Securities LLC) as well as Goldman Sachs & Co. and an affiliate

Company's labor agreements to create a competitive arena in which to conduct business;[5] second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company;[6] third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus;[7] fourth, transforming their salaried workforce to ensure that the Company's organizational and cost

---

of Pardus Capital Management, L.P. This Court approved the Delphi-Appaloosa EPCA on August 2, 2007. On October 29, 2007, the Debtors filed a motion requesting this Court's approval of certain proposed amendments to the Delphi-Appaloosa EPCA (Docket No. 10760). In addition, on November 14, 2007, December 3, 2007, and December 5, 2007, the Debtors filed certain additional proposed amendments to the Delphi-Appaloosa EPCA. On December 10, 2007, this Court entered an order granting the motion and approving the proposed amendments (Docket No. 11382).

[5] As of August 29, 2007, this Court had entered the following orders approving settlements between Delphi and each of its U.S. labor unions:
- International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (Docket No. 8693);
- International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communication Workers of America (Docket No. 9106);
- International Association of Machinists and Aerospace Workers and its District 10 and Tool and Die Makers Lodge 78, the International Brotherhood of Electrical Workers and its Local 663, and Locals 832S, 18S, and 101S of the International Union of Operating Engineers (Docket No. 9107); and
- United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and USW Local 87L (Docket No. 9169).

On September 4, 2007, at Delphi's request, this Court entered an order withdrawing without prejudice Delphi's motion for an order under sections 1113(c) and 1114(g) of the Bankruptcy Code authorizing rejection of collective bargaining agreements and modification of retiree welfare benefits (Docket No. 9221).

[6] On September 6, 2007, Delphi announced that it had entered into agreements with GM consisting of a Global Settlement Agreement (the "GSA") and a Master Restructuring Agreement (the "MRA"). Delphi's comprehensive settlement with GM resolves all outstanding disputes between Delphi and GM. The GSA and MRA were filed as Exhibits 7.20(a) and 7.20(b) to the Plan, respectively. See Docket No. 9263. On October 29, November 14, December 3, December 5, and December 10, 2007, the Debtors filed certain proposed amendments to the GSA and MRA. The Court approved, and authorized the Debtors to enter into, the GSA and MRA in the Confirmation Order.

[7] In connection with their March 31, 2006 announced transformation plan, the Debtors classified "core" and "non-core" product lines and plants. The Debtors have been working to divest non-core assets so as to maximize the value of their estates for stakeholders. During the 2006 and 2007 calendar years, for example, the Debtors sold substantially all of the assets related to MobileAria, Inc., their chapter 11 affiliate, their brake hose and catalyst businesses, and their Saltillo, Mexico brake plant business, as well as their manufacturing equipment and test development equipment at the chassis facility in Saginaw, Michigan. The Debtors also received court approval to sell substantially all of the assets used in their interiors and closures businesses and for bid procedures related to the upcoming sale of substantially all assets used in their steering and halfshaft business and their bearings business.

6

structure is competitive and aligned with its product portfolio and manufacturing footprint;[8] and fifth, devising a workable solution to their current pension situation.[9]

E.    The Debtors' Plan Of Reorganization

13.    The confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases. The GSA and the MRA provide for a comprehensive settlement with GM, and both agreements were approved by this Court in the Confirmation Order.  With the Plan confirmed, the Debtors are focusing their efforts on satisfying the conditions for the Plan to become effective and allow them to emerge from chapter 11.  Currently, the Debtors continue to expect that they will emerge from chapter 11 during the first quarter of 2008.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

---

[8]    As part of this effort, effective July 1, 2006, the Company realigned its business operations to focus its product portfolio on core technologies for which the Company believes it has significant competitive and technological advantages.  The Company's revised operating structure consists of its four core business segments:  Electronics and Safety, Thermal Systems, Powertrain Systems, and Electrical/Electronic Architecture.  The Company also has two additional segments, which will be transitioned as part of the Company's transformation plan: Steering (for which bidding procedures were approved on December 20, 2007) and Automotive Holdings Group.  To ensure that their organizational and cost structure is competitive, the Debtors obtained an Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors To Enter Into Finance Outsourcing Agreement on April 23, 2007 (Docket No. 7773) (the "Finance Outsourcing Order").  The Finance Outsourcing Order authorized the Debtors to outsource certain of the Debtors' accounts receivable, accounts payable, fixed assets, travel and expense reporting, general ledger, and contract administration processes and significantly reduce SG&A expenses as part of their transformation plan.

[9]    To that end, on May 31, 2007, this Court granted the Debtors' motion for authority to perform under the terms of those certain September 30, 2006 pension plan year funding waivers, which were approved by the IRS on May 1, 2007, for both the Delphi Hourly-Rate Employees Plan and the Delphi Retirement Program for Salaried Employees (collectively, the "Pension Plans").  On July 13, 2007, the IRS modified the conditional funding waivers granted to Delphi related to the Pension Plans, extending the dates by which Delphi is required to file a plan of reorganization and emerge from chapter 11 to December 31, 2007 and February 29, 2008, respectively. On September 28, 2007, the IRS approved a similar waiver with respect to the Delphi Hourly-Rate Employees Plan for the September 30, 2007 pension plan year.  On October 25, 2007, this Court granted the Debtors' motion for authority to perform under the terms of that waiver.  On October 4, 2007, the IRS, at Delphi's request, further modified the conditions to the initial waivers so that they are generally consistent with the conditions to the most recent waiver.

its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

### Relief Requested

15. The Debtors request entry of an order, under section 365(d)(4) of the Bankruptcy Code, further extending the date on or before which the Debtors may assume or reject unexpired leases of nonresidential real property to and including the earlier of the effective date of the confirmed Plan and May 31, 2008, a date which is approximately three months from the current deadline, subject to the terms of the confirmed Plan and the Confirmation Order. The relief requested is without prejudice to the Debtors' right to seek a further extension of the deadline and without prejudice to a lessor's right to seek a shortening of the deadline.

16. The Debtors further request that the order contain procedures for requesting an additional extension, if necessary. In particular, the Debtors request an order providing that if the Debtors file a subsequent motion to extend the section 365(d)(4) deadline before the expiration of the applicable section 365(d)(4) deadline for a particular lease and the motion is set for hearing on the next omnibus hearing date that is 20 or more days thereafter or is filed in accordance with Rule 6006-1(c) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, the deadline to assume or reject that lease will be automatically extended until the later of (a) the date set forth in any subsequent order, (b) three business days after the Court enters an order ruling on the subsequent motion, and (c) May 31, 2008.

### Basis For Relief

17. The Debtors are lessors or lessees with respect to approximately 80 unexpired leases of nonresidential real property (the "Real Property Leases"). This Court's

Order Pursuant To 11 U.S.C. § 365(d)(4) Further Extending Deadline To Assume Or Reject Unexpired Leases Of Nonresidential Real Property, entered August 16, 2007 (Docket No. 9108), set the deadline for the Debtors to assume or reject unexpired leases of nonresidential real property as the earlier of plan confirmation and February 29, 2008.  The Debtors have determined to assume all of their Real Property Leases under the Plan as of the effective date of the Plan.[10]  This Court approved those lease assumptions (as of the Plan's effective date) when entering the Confirmation Order on January 25, 2008.  (Confirmation Order ¶ 22.)

18.    The Confirmation Order further provides that the Debtors may obtain a further extension of the deadline for assumption or rejection of Real Property Leases in the event that the Plan does not become effective on or before February 29, 2008 by filing a motion for that relief on or before February 29, 2008.  (Confirmation Order ¶ 29.)  The proposed new deadline to assume or reject the Debtors' Real Property Leases sought in this Motion remains subject to the terms of the Plan and Confirmation Order and coincides with the Debtors' current deadline to solicit acceptances of a reorganization plan.[11]

19.    As noted above, the Debtors have determined to assume under their Plan all of the Real Property Leases, as of the effective date of the Plan and subject to the terms of the Plan and Confirmation Order.  Out of the abundance of caution, the Debtors seek an extension that could be used in the event that the confirmed Plan does not become effective by February 29, 2008, the current section 365(d)(4) deadline, or in a manner that is consistent with the terms

---

[10]    Section 8.1(a) of the Plan provides that all unexpired Real Property Leases (not previously assume or rejected) will be assumed under the Plan unless scheduled for rejection on Plan Exhibit 8.1(a).  The Debtors did not schedule any Real Property Lease on Plan Exhibit 8.1(a).  (See Plan Exhibit 8.1(a), filed December 28, 2007, Docket No. 11608.)

[11]    The May 31, 2008 deadline for the Debtors to solicit acceptances for a plan of reorganization was set under this Court's Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, entered on December 20, 2007 (Docket No. 11565).  Although the Debtors have already completed their solicitation, it is not uncommon for the solicitation deadline to expire after solicitation is already complete.

9

of the Plan and Confirmation Order. The non-debtor parties to the Real Property Leases will not be prejudiced by the proposed extension because the Debtors are making payments under the Real Property Leases as they come due and have determined to assume the Real Property Leases under the Plan.

## Applicable Authority

20. Section 365(d)(4) of the Bankruptcy Code provides:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

21. The term "cause" as used in section 365(d)(4) is not defined in the Bankruptcy Code. In South Street Seaport L.P. v. Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit held that the following factors would establish whether "cause" existed to extend the statutory period under section 365(d)(4) of the Bankruptcy Code:

    (a)    whether the debtor was paying for the use of the property;

    (b)    whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

    (c)    whether the lease is the debtor's primary asset; and

    (d)    whether the debtor has had sufficient time to formulate a plan of reorganization.

Id. at 761. The court enumerated additional factors that may merit consideration, including the complexity of the case and the number of leases that the debtor must evaluate. Id.; see also 130 Cong. Rec. S8891, 58,894-95 (daily ed. June 29, 1984) ("cause" includes large number of leases)

10

(statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. 590, 597; In re Enron Corp., 279 B.R. 695, 703 (Bankr. S.D.N.Y. 2002).

22. The Debtors satisfy all of these requirements. First, in compliance with section 365(d)(3) of the Bankruptcy Code, the Debtors have remained and fully intend to remain current with respect to all outstanding postpetition rental obligations under the Real Property Leases.

23. Second, the relief requested herein will not affect any lessor's rights in a manner inconsistent with the provisions of the Bankruptcy Code. See Edward J. Debartolo Corp. v. Child World, Inc. (In re Child World, Inc.), 146 B.R. 89, 92 (S.D.N.Y. 1992) (holding that extension of debtors' time to assume or reject its unexpired leases of nonresidential real property is appropriate when leaseholders are not "irreparably injured in the interim"). The Debtors have the financial ability to and intend to continue to perform all of their obligations under the Real Property Leases as required by section 365(d)(3) of the Bankruptcy Code. The significant cash revenues from the Debtors' operations afford the Debtors this financial ability. The Debtors' existing debtor-in-possession financing facility gives the Debtors liquidity and provides additional comfort to lease counterparties that the Debtors will continue to meet their obligations under the Real Property Leases as they come due. Moreover, lessors may seek to shorten the deadline if circumstances warrant such a shortening.

24. Third, certain of the Real Property Leases are among the Debtors' primary assets and are vital to their business. The Debtors' manufacturing sites, technical centers, and sales offices are fundamental to their reorganization efforts and comprise an integral component of the Debtors' strategic business plans.

25.    Fourth, the Debtors have obtained confirmation of a plan of reorganization and have determined under the Plan to assume the Real Property Leases.

26.    Additionally, if the deadline is not extended, the Debtors may face uncertainty with respect to their ability to assume or reject Real Property Leases if the Plan did not become effective by the current section 365(d)(4) deadline of February 29, 2008 or otherwise. To prevent this uncertainty, this Court should exercise its discretion to extend the deadline to and including the earlier of the effective date of the confirmed plan of reorganization and May 31, 2008, subject to the terms of the Plan and Confirmation Order, without prejudice to the Debtors' right to seek a further extension of such deadline or a lessor's right to seek a shortening of the deadline.

## Notice Of Motion

27.    Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Ninth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered October 19, 2007 (Docket No. 10661). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

28.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the deadline to assume or reject unexpired leases of nonresidential real property to and including the earlier of the effective date of a plan of reorganization and May 31, 2008, subject to the terms of the Plan and Confirmation Order, without prejudice to the Debtors' right to seek a further extension of such deadline or a lessor's right to seek a shortening of the deadline, and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          February 1, 2008

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:    /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:    /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession