1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 05-44481

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  DELPHI CORPORATION ET AL,

9

10         Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14               United States Bankruptcy Court

15               One Bowling Green

16               New York, New York

17

18               January 17, 2008

19               10:26 AM

20

21  B E F O R E:

22  HON. ROBERT D. DRAIN

23  U.S. BANKRUPTCY JUDGE

24

25

2

1

2   A P P E A R A N C E S :

3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4          Attorneys for Debtor

5          333 West Wacker Drive

6          Chicago, IL 60606

7

8   BY:   JOHN WM. BUTLER, JR., ESQ.

9          ALBERT L. HOGAN, III, ESQ.

10

11

12   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13          Attorneys for Debtor

14          Four Times Square

15          New York, NY 10036

16

17   BY:   KAYALYN A. MARAFIOTI, ESQ.

18          ADLAI S. HARDIN, ESQ. (Telephonically)

19

20

21

22

23

24

25

3

1   LATHAM & WATKINS LLP

2         Attorneys for Creditors Committee

3         885 Third Avenue

4         New York, NY 10022

5

6   BY:   ROBERT J. ROSENBERG, ESQ.

7

8

9   WEIL GOTSHAL & MANGES LLP

10        Attorneys for General Motors

11        767 Fifth Avenue

12        New York, NY 10153

13

14  BY:   MICHAEL KESSLER, ESQ.

15        JEFFREY L. TANENBAUM, ESQ.

16

17

18  FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

19        Attorneys for Equity Committee

20        One New York Plaza

21        New York, NY 10004

22

23  BY:   BONNIE STEINGART, ESQ.

24        JENNIFER LAUREN RODBERG, ESQ.

25

4

1    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

2         Attorneys for Wilmington Trust Company

3         599 Lexington Avenue

4         New York, NY 10022

5

6    BY:    EDWARD M. FOX, ESQ.

7

8    COHEN, WEISS AND SIMON LLP

9         Attorneys for UAW

10        330 West 42nd Street

11        New York, NY 10036

12

13   BY:    PETER DECHIARA, ESQ.

14        BABETTE CECCOTTI, ESQ.

15

16

17   WHITE & CASE LLP

18        Attorneys for Appaloosa Management L.P. & Harbinger

19        1155 Avenue of the Americas

20        New York, NY 10036

21

22   BY:    DOUGLAS P. BAUMSTEIN, ESQ.

23        THOMAS E. LAURIA, ESQ.

24        MICHAEL SHEPERD, ESQ.

25        JACK ROTENSTEIN, ESQ. (Telephonically)

5

1    LOWENSTEIN SANDLER PC

2         Attorneys for Lead Plaintiffs

3         1251 Avenue of the Americas

4         New York, NY 10020

5

6    BY:  S. JASON TEELE, ESQ.

7         MICHAEL S. ETKIN, ESQ.

8

9

10   KENNEDY, JENNIK & MURRAY, PC

11        Attorneys for IUE-CWA

12        113 University Place

13        New York, NY 10003

14

15   BY:  SUSAN M. JENNIK, ESQ.

16        THOMAS M. KENNEDY, ESQ.

17

18

19   GOODWIN PROCTER LLP

20        901 New York Avenue N.W.

21        Washington, DC 20001

22

23   BY:  MICHAEL K. ISENMAN, ESQ.

24        JOHN MOUSTAKAS, ESQ.

25        RICHARD WYNER, ESQ.

6

1    GOODWIN PROCTER LLP

2          599 Lexington Avenue

3          New York City, NY 10022

4

5    BY:   ALLAN S. BRILLIANT, ESQ.

6

7

8    ARENT FOX PLLC

9          Attorneys for Audio MPEG, Inc. & SISVEL

10         1050 Connecticut Avenue NW

11         Washington, DC 20036

12

13   BY:   MARY JOANNE DOWD, ESQ.

14

15

16   KELLEY DRYE & WARREN LLP

17         Attorneys for PBGC

18         101 Park Avenue

19         New York, NY 10178

20

21   BY:   ERIC R. WILSON, ESQ.

22

23

24

25

7

1    SEYFARTH SHAW LLP

2        Attorneys for Fujikura America Inc.

3        620 Eighth Avenue

4        New York, NY 10018

5

6    BY:   ROBERT W. DREMLUK, ESQ.

7

8

9    MCDERMOTT WILL & EMERY LLP

10       Attorneys for Timken

11       340 Madison Avenue

12       New York, NY 10017

13

14   BY:   JAMES M. SULLIVAN, ESQ.

15

16

17   WARNER NORCROSS & JUDD LLP

18       900 Fifth Third Center

19       Grand Rapids, MI 49503

20

21   BY:   GORDON J. TOERING, ESQ.

22

23

24

25

8

1   KELLER ROHRBACK PLC

2        Attorneys for ERISA Lead Plaintiffs

3        3101 North Central Avenue

4        Phoenix, AZ 85012

5

6   BY:   GARY A. GORRO, ESQ.

7

8

9   BUCHANAN INGERSOLL & ROONEY PC

10        Attorneys for Fiduciary Counselors Inc.

11        1000 West Street

12        Wilmington, DE 19401

13

14   BY:   MARY F. CALOWAY, ESQ.

15

16

17   STEVENS & LEE, P.C.

18        Attorneys for Equistar Chemicals

19        1415 Marlton Pike East

20        Suite 506

21        Cherry Hill, NJ 08034

22

23   BY:   RONALD L. GLICKS, ESQ.

24        (Telephonically)

25

9

BARNES & THORNBURG, LLC

    Attorneys for Bank of America

    300 Ottawa Avenue NW

    Suite 500

    Grand Rapids, MI 49503


BY:   JOHN T. GREGG, ESQ.

    (Telephonically)



MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

    Attorneys for MI Department of Environmental Quality

    525 Ottawa Street

    6th Floor

    Lansing, MI 48933


BY:   CELESTE R. GILL, ESQ.

    (Telephonically)

10

1    PIMA COUNTY ATTORNEY'S OFFICE

2         Attorneys for Pima County

3         32 N. Stone

4         Suite 1400

5         Tucson, AZ 85701

6

7    BY:   GERMAN YUSUFOV, ESQ.

8         (Telephonically)

9

10

11   TOGUT SEGAL & SEGAL, LLP

12        One Penn Plaza

13        New York, NY 10119

14

15   BY:   NEIL BERGER, ESQ.

16

17

18   UNITED STATES DEPARTMENT OF JUSTICE

19   OFFICE OF THE UNITED STATES TRUSTEE

20        33 Whitehall Street

21        21st Floor

22        New York, NY 10004

23

24   BY:   ALICIA M. LEOHNAHRD, ESQ.

25

11

1    BROWN RUDNICK BERLACK ISRAELS LLP

2         Attorneys for Law Debenture Trust Company

3         One Financial Center

4         Boston, MA 02111

5

6    BY:   JEFFREY L. JONAS, ESQ.

7

8

9    HERRICK FEINSTIEN, LLP

10        Attorneys for Riverside

11        2 Park Avenue

12        New York, NY 10016

13

14   BY:   ERIK SCHMIDT, ESQ.

15

16

17

18

19

20

21

22

23

24

25

12

1          P R O C E E D I N G S

2          THE COURT:  Okay.  This is Delphi Corporation.  Just

3  for those of you who are standing and not participating, as you

4  can see from the sign there is an overflow courtroom which has

5  the advantage of letting you use your various devices and for

6  the benefit of the people in that courtroom as well as people

7  appearing on the phone I'm going to ask the parties to try to

8  remember to speak into the microphone because that's what gets

9  picked up in both cases.

10          Okay, Mr. Butler.

11          MR. BUTLER:  Your Honor, good morning.  Jack Butler,

12  Kayalyn Marafioti and Al Hogan appearing with our colleagues on

13  behalf of Delphi Corporation and it's debtor affiliates and

14  subsidiaries for our confirmation hearing on the first amended

15  joint plan of reorganization of Delphi Corporation and its

16  affiliated debtors and debtors in possession that was filed on

17  December 10, 2007 at docket number 11386.

18          Your Honor we did file a confirmation hearing agenda

19  and it has been served.  And we would propose to address the

20  matters in the order on the agenda.

21          THE COURT:  Okay.  That's fine.

22          MR. BUTLER:  Your Honor, the first matter that I'd

23  like to deal with, in connection with the rule -- Bankruptcy

24  Rule 3018(a), there are only four motions that were filed in

25  this case seeking an estimation of claims for the purposes of

13

1  voting on the plan of reorganization.  Three of those -- all of

2  those matters have been resolved.  Let me just address the

3  first -- address them and the only -- and then Mr. Burger can

4  deal with matter number four.

5        Bank of America -- number one on the agenda is the

6  Bank of America motion for temporary allowance of claims at

7  docket number 9683.  Number two is the Technology Properties

8  motion for temporary allowance of claims at docket number 10425

9  and number three is the FCI claims estimation motion at docket

10 number 11618.  Those have all been withdrawn and will not be

11 proceeding this morning.

12        I'll let MR. Burger address the SPCP group motion for

13 temporary allowance of claims at docket number 1169.

14        THE COURT:  Before -- before I hear from him, they've

15 been withdrawn, is there any agreement as to the amount of the

16 vote or it's just --

17        MR. BUTLER:  Those matters, I believe, unless someone

18 tells me -- correct me, I believe -- my understanding is those

19 have simply all been withdrawn.

20        THE COURT:  Okay.  All right.

21        MR. BERGER:  Judge, Neil Berger, Togut Segal & Segal.

22 Your Honor, as to the Silver Point motion we have an agreement

23 we communicated to chambers last night that it is going to be

24 withdrawn.  Silver Point agrees to withdraw its Rule 3018

25 motion provided that Silver Point is permitted to vote its

14

1   claim number 14347 as assignee of NXP Semi Conductor in class

2   three in the amount of $194,272.52 and it's claim number 11567

3   as assignee of ON Semi Conductor in class 5C in the amount of

4   $24,141.71 provided though, Your Honor, that the 5C ballot on

5   claim number 11567 can only be cast to supersede Silver Point's

6   prior ballet on that case.  The concept is it can't be counted

7   twice let it be counted once.

8           Based upon that agreement the Silver Point 3018

9   motion is being withdrawn.

10          THE COURT:  Okay.  Does that change the class votes

11  in any way?

12          MR. BERGER:  No.  No, Your Honor, it doesn't tip the

13  ballots.

14          THE COURT:  That's what I meant.  Okay.

15          MR. BERGER:  Your Honor, item number one on the

16  calendar is the Bank of America motion for a temporary

17  allowance of claims.  That's being withdrawn by Bank of

18  America.  They also had a plan objection that is also being

19  withdrawn.  I don't know if counsel is on the record -- on the

20  phone.  There is an agreement, Your Honor, those -- the plan

21  objection and that motion are being withdrawn.

22          THE COURT:  Okay.  And again, I think Mr. Butler

23  answered this but are the debtor's providing any consideration

24  or is there any understanding in connection with that

25  withdrawal?

15

1          MR. BERGER:  No, Your Honor.

2          THE COURT:  And that's the same for the other --

3          MR. BERGER:  Bank of America --

4          THE COURT:  -- movants who have withdrawn their

5    objections.

6          MR. BUTLER:  That is correct, Your Honor.

7          MR. BERGER:  Yes.

8          THE COURT:  Okay.  All right.

9          MR. BUTLER:  One moment, Your Honor.  Thank you, Your

10   Honor.  The first matter, I think, we'd like to deal with

11   following the 3018 is to give the Court a summary of where we

12   are and the recent objections that have been filed in terms of

13   what is still a live objection and what objections have been

14   resolved.

15         THE COURT:  Okay.

16         MR. BUTLER:  To do that, Your Honor, I think the --

17   probably the best document to use would be Exhibit 158 and

18   there is, at Exhibit 158, we go to the last pages of that

19   please, it will be on the -- I've posted it on the screens.  We

20   have a chart of the -- of the objectors to confirmation.  And

21   what I'd like to do is just walk through the chart and indicate

22   the objections that are -- have been resolved and the

23   objections that are live.

24         The first objection that I would like to deal with,

25   Your Honor, is the objection at docket number 11471 of Caspian

16

1    Advisors et al.  That has been supplemented by various

2    additional objections filed subsequently by the bondholder

3    group represented by Goodwin -- Goodwin Proctor including at

4    docket number 11951.

5           THE COURT:  Are all of those objections by the same

6    objectors?

7           MR. BUTLER:  No, Your Honor.  There is -- in fact we

8    had actually compared a chart and Exhibit 95 has a chart in it.

9    Let me just find it, one second.  The short answer is, Your

10   Honor, they -- the parties that Goodwin Proctor represents that

11   been objecting have changed during the course of --

12          THE COURT:  I guess the issue I'm raising is -- is

13   probably -- comes in two parts, consistent with earlier

14   procedures adopted for the confirmation process.  The parties

15   were permitted to file preliminary objections.  And that was

16   something they could do to get discovery rolling.  As I recall,

17   about half of the clients of Goodwin Proctor who filed a

18   preliminary objection or was signed on to a preliminary

19   objection did not file a supplement.  And I took that to mean

20   that they weren't objecting anymore.

21          MR. BUTLER:  Your Honor, I think that Mr. Brilliant

22   can address that.  But I think we -- on Exhibit 95, page 59, we

23   summarized the ad hoc bondholder group.  And your right, that

24   group has changed.  There's -- it's up on the screen now.  That

25   group belonged from the disclosure state objections through the

17

1    various confirmation objectors have changed.  And you can see

2    that the current objectors, on the January 11th objection, are

3    Davidson Kempner, Elliot Associates, Nomura, North East

4    Investors and White Box.  Mr. Brilliant's been very careful and

5    I think very thoughtful in updating his 2019s in this case.  I

6    think I received the sixth or seventh one of those updates last

7    night, in which they clarified who is on their committee or

8    group -- their group of folks that they represent.  And I

9    believe that 2019, what my recollection is, that they listed

10   six parties on it, the five that are part of the January 11th

11   objection and an affiliate of Silver Point Capital who is

12   represented by them but is not a party to the objection.  Do I

13   have it correct, Mr. Brilliant?

14            MR. BRILLIANT:  Mr. Butler has it correct, Your

15   Honor.  And Your Honor does have it right.  Subsequent to

16   filing the preliminary objection Caspian, Castlerigg,

17   CR Intrinsic and Everest Capital decided not to continue to

18   object.  And I believe we noted that in our objection in a

19   footnote.

20            THE COURT:  Okay.

21            MR. BRILLIANT:  The other parties continue to object.

22   We did not add any additional parties to the objection that was

23   filed last Friday.

24            THE COURT:  And the other parties, the other five,

25   have they -- in their objections that are extent, are they all

18

1    in each objection?  They're acting together?  I'm not saying

2    acting as a group, I'm saying are there any objections filed by

3    anyone other than those five together?  For example, did Davis

4    and Kempner file a separate objection?

5            MR. BRILLIANT:  To confirmation, Your Honor?

6            THE COURT:  Yeah.

7            MR. BRILLIANT:  No, Your Honor.

8            THE COURT:  Okay.

9            MR. BRILLIANT:  At this point in time, and I thought,

10   you know, I was flipping through our objection and I don't know

11   if it got deleted or if it's something I'm just not finding

12   very quickly, I thought we had indicated that with respect to

13   the final objection with respect to the parties who had filed a

14   preliminary that it was withdrawn with respect to them.

15   Without going into detail, some of them sold and were no longer

16   involved and some just chose --

17           THE COURT:  No, I'm just trying to figure out what

18   are the --

19           MR. BRILLIANT:  -- not to continue to object.

20           THE COURT:  -- the extent objections and --

21           MR. BRILLIANT:  Right.

22           THE COURT:  -- and I think it's clear now.

23           MR. BRILLIANT:  Right.  And then with respect to the

24   MDL objection, which I know we're not there, there's one

25   additional party, SPCP an affiliate of Silver Point Capital, is

19

1    on that objection --

2              THE COURT:  Okay.

3              MR. BRILLAINT:  -- as well as the -- you know, some

4    but not all of the remaining bondholder objectors that we filed

5    the confirmation objection on behalf of.

6              THE COURT:  Okay.

7              MR. BUTLER:  So, Your Honor, with respect to the

8    objections, I've indicated on the record the objection numbers

9    that have been filed by the bondholders represented by Goodwin

10   Proctor.  The debtors have reached a settlement with them that

11   we would ask, Your Honor, be approved under Bankruptcy Rule

12   9019 so that we may proceed with this confirmation hearing

13   after having the objecting parties represented by Mr.

14   Brilliant's firm having withdrawn their objections to

15   confirmation and their related objections to the MDL and other

16   matters.

17             We have -- the understanding that we have with the

18   bondholders is that the objecting parties will withdraw their

19   objection to the plan.  They will withdraw the expert report of

20   Marianne Anne Keller and they will withdraw any and all

21   objections on related matters to be heard in connection with

22   the confirmation hearing, including any objections they may

23   have, for example, to the MDL motion or any other matters on

24   the confirmation agenda subject to Your Honor's approval of the

25   following agreement.

20

1    The agreement would be that the debtors would agree

2  to reimburse the bondholders for the actual, reasonable and

3  documented fees and expenses incurred by Goodwin Proctor, the

4  law firm of Klestadt & Winters, K-L-E-S-T-A-D-T and Winters,

5  and Marianne Keller & Associates, the expert witness, that have

6  incurred from September 1, 2007 through today, January 17,

7  2008, in connection with the representation of the Goodwin

8  Proctor Group's current and former noteholder clients as it

9  relates to the debtor's Chapter 11 cases up to an aggregate

10  maximum of five million dollars.

11    The debtors have agreed and have made the business

12  judgment under Section 363 to make -- proposed to make these

13  1124(a)(4) payments pursuant to a settlement at this

14  confirmation hearing of these objections that we're asking Your

15  Honor to approve under Bankruptcy Rule 9019.  The terms of the

16  approval, if Your Honor chooses to grant it, would be included

17  in the confirmation order which terms will be consistent with

18  this agreement I'm placing on the record today.

19    The objecting parties have acknowledged to the

20  debtors, in advance, that the Bankruptcy Court may require

21  their professionals to file a final fee application and have

22  agreed to a standard for that review which would be an

23  evaluation of the reasonableness of the fees and expenses

24  incurred for the services rendered under the totality of the

25  circumstances.

21

1          The debtors have also agreed to use their reasonable

2     best efforts to obtain Court approval of the consummation of

3     this settlement, including the payment of the fees and expenses

4     that are reasonable.  And that would include preparing and

5     filing supporting pleadings and, if necessary, propounding

6     testimony in support of the fee application or the settlement

7     once the debtors have reached their own independent conclusion

8     that I've described in this settlement has been met.

9          And we also -- that, Your Honor, is the sum and

10    substance of the settlement we're asking Your Honor to approve

11    on the record today.

12          MR. BRILLIANT:  Your Honor, Allan Brilliant on behalf

13    of the bondholders that Mr. Butler had mentioned.  That is, in

14    fact, our settlement with just one clarification, which I don't

15    believe is controversial.  We would withdraw the objections

16    that, you know, we had filed on behalf of the noteholders.  One

17    of the members of our group, SPCP as Mr. Butler had already

18    mentioned in connection with 3018, had filed an objection in

19    connection with some trade claims they own.  We are not

20    settling on behalf of anything other than, you know, bondholder

21    issues and objections to the confirmation of the plan, the MDL

22    and the objections under 3018 that we had filed against the

23    motions by Bank of America and FCI.

24          THE COURT:  But what -- the SPCP is that -- that's

25    been resolved, I thought?  I thought that was what Mr. Berger

22

1    reported.

2          MR. BRILLIANT:  It has, Your Honor.  I just wanted to

3    make sure --

4          THE COURT:  It's not covered by this settlement.

5    It's a separate thing.

6          MR. BRILLIANT:  Right.  It's not covered by the

7    settlement.  That's all I wanted to make sure Your Honor

8    that -- that there wasn't any misunderstanding as to what it

9    was that we were withdrawing since, you know, I'm not their

10   counsel in connection with anything other than their role as

11   a -- as a noteholder.

12         THE COURT:  All right.  Does anyone want to address

13   this motion?

14         MS. LEONHARD:  Good morning, Your Honor.  Alicia

15   Leonhard for the United States Trustee.  First, I'd like to say

16   that the United States Trustee received notice of this motion

17   about five minutes ago.  So, the notice issues may be a problem

18   except the Court has the authority to waive the notice

19   requirements under Section -- Rule 2002.

20         The U.S. Trustee's main objection to this settlement

21   is the standard of review of these fees.  The debtors have

22   actually created a new standard which is reasonableness under

23   the totality of the circumstances.  Now, I understand

24   reasonableness.  I don't -- I don't think there's any -- a

25   standard for any of those -- and I know what totality of the

23

 1   circumstances is too, but I don't know exactly how applies

 2   reasonableness to fees under the totality of the circumstances.

 3   The only basis upon which a creditor or a committee of

 4   creditors may obtain or apply for fees and expenses under the

 5   Bankruptcy Code is Section 503(b).  Now I know Mr. -- I noticed

 6   that Mr. Butler backed off calling this group a committee

 7   calling them a group of folks.  But I think if you look at

 8   503(b) it simply says a creditor or a committee of creditors

 9   among other people may apply for their reasonable fees and

10   expenses under 503(b) if they have -- if they have made a

11   substantial contribution to the case.

12            That is the basis on which the U.S. Trustee objects

13   to this settlement.  If the Court would approve a 503(b)

14   standard, I don't think the U.S. Trustee would have any issue

15   with it.  But I do not believe it is our view that the parties

16   cannot settle away provisions of the Bankruptcy Code that are

17   put there for a specific purpose which is to, on the one hand,

18   encourage participation but on the other hand limit the fees so

19   that cases will not become administratively insolvent or

20   overburdened with professional fees.  So on that basis the U.S.

21   Trustee would request that the Court not approve the settlement

22   and -- today.  Thank you very much.

23            THE COURT:  Now, there are times when creditors get

24   fees approved under a plan -- under a plan and also in

25   connection with the case without going through the 503(b)

24

1    application.  There's, for example, the provision of fees in

2    DIP agreements.

3         MS. LEONHARD:  Yes, Your Honor.  But that's pursuant

4    to a contract.  I mean, there's certain conditions under which

5    people get fees.  The -- for example the Appaloosa and the plan

6    funders, their fees are being reimbursed pursuant to a

7    contract.  But Mr. -- the counsel for Appaloosa, they're coming

8    in with a 503(b) application for the fees incurred prior to the

9    entry into an application.

10        THE COURT:  What about 1129(a)(4)?

11        MS. LEONHARD:  I'm sorry?

12        THE COURT:  What about 1129(a)(4)?

13        MS. LEONAHRD:  Well, I understand 1129(a)(4) but

14   1129(a)(4) is a statute of general application.  And it simply,

15   under rules of statutory construction, does not override a

16   statute which is specific, like Section 503(b).  And so I think

17   that you have to -- you can't use 1129(a)(4) to override

18   Section 503(b).

19        THE COURT:  But it actually does use a different

20   statute.  It says as reasonable.

21        MS. LEONHARD:  It says reasonable but it -- but it's

22   very broad.  And I must also say that there is a reasonableness

23   component to Section 503(b).  But I don't think that that

24   provision, and in fact I've never seen case law that

25   contemplates that provision applying to any party whose fees

25

1    should be payable under 503(b) or another provision of the

2    Code.  And so, for that reason, the U.S. Trustee objects to

3    this settlement.

4              THE COURT:  Okay.

5              MS. LEONHARD:  Thank you, Your Honor.

6              MR. BUTLER:  Your Honor, I have just a short

7    response.  First, the standard that was enunciated here that we

8    negotiated with the -- with the objecting parties was done in

9    consultation with counsel to the Official Committee of

10   Unsecured Creditors who, in fact, had suggested a portion of

11   the standard as we had been reviewing what we thought would be

12   reasonable on behalf of the estate.

13             Second, there are examples in this case where there

14   have been, as parts of settlement at contested hearings, fees

15   that have been paid and have been approved by the Court.  An

16   example of that, ironically, involved Mr. Brilliant and his

17   firm in connection with the representation of another group of

18   creditors at the time we were trying to get the DIP hearing put

19   in place, early on in the case.  Where, I believe, the fees

20   were paid.

21             I also think, and where I disagree with the United

22   States Trustee, I also believe that 1129 is not a -- a

23   provision of, sort of, general construction.  It is a very

24   specific set of provisions dealing with a very special hearing

25   under the Bankruptcy Code and that is a hearing on confirmation

26

1   of a plan of reorganization.  And what we're proposing to do

2   here is not to make payments to Goodwin Proctor who, I believe,

3   has already been paid a good proportion of the fees they've

4   incurred in this case; this is an agreement to reimburse

5   objecting creditors.  And we're using as the standard for

6   reimbursement these particular payments and limiting it to

7   this -- in this amount.  Which is, frankly from our

8   perspective, a much better deal then simply making a five

9   million dollar payment to the bondholders or taking some other

10  tact with them.

11          We also believe, Your Honor, that under Section 363

12  of the Code we can use property of the estate for a matter

13  that's in the best interest of the estate.  And we believe an

14  1129(a)(4) payment under Bankruptcy Rule 9019 when we are

15  settling a broad ranging set of objections which, while not to

16  in any way denigrate any other objections that have been filed

17  by any other party that are still going to be heard today, I

18  think, are fairly evaluated as the most comprehensive

19  objections that were asserted against the debtors in connection

20  with confirmation.  We're fully prepared to try those matters.

21  We fully prepared, we believe we'll prevail at the end of the

22  day on those matters.  But having said that, I think that --

23  and, you know, I would ask the Court to consider under the

24  salient factors of Bankruptcy Rule 9019, the issues that are at

25  controversy here, the cost to the estate, the potential damage

27

1  to the estate of having to have a protracted valuation

2  litigation fight here at confirmation with battling experts

3  when those matters can all be resolved having negotiated with

4  the bondholders to this result.  From the debtor's perspective

5  there is just no question in our minds that this is in the best

6  interest of the estate.  It's in the best interest of all of

7  the creditors of the estate.  And we don't believe that 503(b)

8  is a bar -- was intended by Congress or in fact sits in the

9  Bankruptcy Code as a bar to a 9019 settlement in these

10 circumstances at a confirmation hearing.

11         MS. LEONHARD:  Your Honor, I'd just like to make one

12 comment for the record.  Section 503(b) does not refer to

13 reimbursement to professionals.  It clearly refers to

14 reimbursement to creditors or their -- or committees of

15 creditors and other parties.  So the fact that the debtor has

16 made an agreement with these bondholders, again, puts it

17 strictly and squarely in the purview of Section 503(b).  Thank

18 you.

19         THE COURT:  Okay.  All right.  The debtors made an

20 oral motion for approval of a settlement with the objecting

21 bondholders represented by Goodwin Proctor.  First, I am not

22 troubled by the fact that the objection -- I'm sorry, that the

23 motion was made in this manner on the morning of the

24 confirmation hearing.  The Court, as the parties are well

25 aware, reviews a settlement under a fairly flexible standard

28

1    that takes into account a number of factors.  First and

2    foremost, the Court's assessment of the merits of the

3    underlying controversy.  Second, the likely cost to the estate

4    of continuing to a decision on the merits, both in terms of out

5    of pocket costs as well as delay; third, the views of the key

6    parties in interest who would be affected by the settlement.

7    And, finally, an overall analysis as to whether the settlement

8    is in the best interest of the estate and fair and equitable.

9    That standard's flexible because sometimes settlements begin or

10   are proposed at the very early stages of a litigation.

11   Sometimes they're proposed on the eve of trial.  If they're

12   proposed on the eve of trial, as is the case here, the Court is

13   far more familiar with the merits.  And while the Court is not

14   required to conduct any sort of mini trial on the merits, it's

15   a given here that I'm fully familiar with the issues on the

16   merits having read the objection to the plan as well as the

17   related objections and the supporting exhibits.  And therefore,

18   that factor is extremely important here and one that does not

19   require, I believe, further notice or briefing.

20           Secondly, the key parties in interest are clearly

21   present here today, since this is the confirmation hearing and,

22   with the exception of the U.S. Trustee, are not opposing the

23   relief sought.

24           Finally, I do need to consider whether the settlement

25   ultimately, of course, is in the best interest of the estate in

29

1    light of the foregoing as well as whether it's fair and

2    equitable.  Which, as the Second Circuit in the Iridian case,

3    has reminded us is a term of art.

4           The U.S. Trustee opposes the settlement not on the

5    merits where there, I believe, she's deferring to the parties

6    and the debtor's analysis and ultimately to the Court's

7    analysis.  But rather based on her assessment of the procedure

8    for dealing with professional fees in Chapter 11 cases.  That

9    view is one that is itself, I believe, unsettled.  The statute,

10   on its face, contains two separate provisions that are relevant

11   here dealing with the allowance and payment of fees.  They've

12   been cited at oral argument, Section 503(b) and Section

13   1129(a)(4).  (a)(4) is clearly not limited to professionals for

14   the debtor or the plan proponent and has its own standard, a

15   reasonableness standard.

16          The standard that the parties have agreed to her,

17   with the assistance of the Creditors Committee, is one that is

18   set forth in neither 503(b) nor 1129(a)(4).  It was one that

19   they've agreed to as part of a settlement.  It is more onerous

20   than the (a)(4) reasonableness standard.  It is less onerous

21   than the 503(b) standard although it is certainly conceivable

22   to me that there is a distinct possibility that there would be

23   substantial overlap based on whatever the firm ultimately

24   submits on notice to parties in interest.  And that it's

25   certainly likely that a significant portion of its fees could

30

1    fall within the 503(b) standard.

2         Given the uncertainty as to what standard governs, I

3    believe that that issue is one that can be settled as well.  It

4    is clear to me, and this is part of the agreement, that in any

5    event the right to receive the payment is contingent upon

6    submission of an application under the terms of the settlement

7    on notice to parties in interest, that is the service list,

8    with an opportunity to object pursuant to the agreed upon

9    standard, reasonableness under the totality of the

10   circumstances.

11        What troubles me about the settlement, and I, in

12   fact, reached this issue only based on the answer to my initial

13   questions, is that a settlement in return for the withdrawal of

14   plan objections and related objections.  As phrased, and I

15   believe I heard you correctly on this Mr. Butler, it would,

16   however, cover the fees incurred by Goodwin Proctor's current

17   and former clients.  I don't see how the former clients who

18   have withdrawn their objections would necessarily have any

19   merit or consideration provided in return for the withdrawal of

20   objections today, since they've already been withdrawn.

21        On the other hand, it is also the case that the

22   existing clients who have extent objections may have used some

23   portion of that work and the consideration they're providing to

24   the estate is the withdrawal of those objections, premised upon

25   work that was done, perhaps, before they became members of this

31

1    group.

2         So it seems to me that the phrase and former clients

3    should not apply here.  However, the reasonableness under the

4    totality of the circumstances may include fees that were

5    incurred before -- conceivably may include fees that were

6    incurred before the members who -- who later joined the group

7    and are still extent did so.

8         With that caveat, based on my understanding of the

9    issues that are being settled here, I believe the settlement is

10   fair and in the best interest of the estate.  But I believe it

11   would have to have that adjustment to it.

12        MR. BRILLIANT:  Your Honor, can I ask for a

13   clarification.  I'm not sure I understand Your Honor's ruling.

14   The way that --

15        THE COURT:  Let me -- let me explain it.  And I

16   appreciate it; it may have been a little cryptic.  I don't

17   think that the burden should be on an objector to your fee --

18   your upcoming application to show, under the totality of the

19   circumstances, that fees incurred by former clients shouldn't

20   be covered because it would not be reasonable.  I believe the

21   burden should be on you and the current clients to show that

22   fees that were incurred before they became part of the group

23   and they were arguably incurred for former clients would still

24   be reasonable under the totality of the circumstances.  It's

25   not an absolute bar to being reimbursed for the amount that

32

1    they paid.  But it -- it shouldn't cover, out of the box,

2    people who have already withdrawn their objections since I

3    don't see why the debtors would settle something that's already

4    been withdrawn.

5          MR. BRILLIANT:  All right.  I think I understand,

6    Your Honor.  So, you know, the way our clients have paid is on

7    a pro rata basis.  So, you know, to the extent that we have an

8    objection that is still outstanding, some portion of the

9    discovery the creation of that document is paid by clients who,

10   you know, may have decided on -- on Friday --

11         THE COURT:  If they were building on that they can --

12   they have a chance to show me that that would be reasonable

13   under the totality of the circumstances, that they were

14   building on what someone else paid as a pro rata basis.

15         MR. BRILLIANT:  I understand, Your Honor.

16         THE COURT:  Okay.  Okay.

17         MR. BRILLIANT:  With -- you know, thank you, Your

18   Honor, for approving the settlement.  With the approval of the

19   settlement I have the authority, from my clients, to withdraw

20   our preliminary objection to confirmation, our supplemental

21   objection to confirmation, our objection to the MDL settlement,

22   as well as our two objections to Rule 3018 to the extent that

23   it's relevant given the fact that they've already been dealt

24   with.  The objection to the Bank of America motion for

25   temporary allowance as well as the FCI claims estimation motion

33

1    that we objected to.  Your Honor, obviously the vote did not

2    come out the way my clients expected it to.  There were changes

3    in the macro-economic environment which, to some extent, I'm

4    sure had some effect on the ultimate vote.  After having

5    discussions with the debtors after the vote came out, it became

6    pretty clear to us that although, you know, 500 million dollars

7    or so of holders of the notes voted against the plan that we

8    did not have the one third that we expected to have.  And

9    although we had remaining objections that the prudent thing, in

10   light of what could be a bruising and potentially damaging

11   confirmation hearing to all parties including, you know, the

12   future owners of the company which would have included my

13   clients, you know, might occur and might not be in anybody's

14   best interest.  And so we reached a settlement which, although

15   disappointing to us, we believe is fair to everybody under the

16   circumstances.

17          Your Honor, we'd like to thank you and your chambers

18   for all your courtesy and assistance during the case.  At

19   times, I know, that we might have been frustrating to the other

20   parties and to Your Honor to the extent that, you know, we were

21   frustrating or, you know, we apologize for that.  But I can

22   assure you, we were just trying to do the best we could for our

23   clients under the circumstances.  With the approval of the

24   settlement and the withdrawal of our objections, if Your Honor

25   doesn't need us to, you know, continue to be present in court

34

1    we would ask Your Honor to, you know, release us today so that

2    other parties who continue to have objections can have seats at

3    the table, so to speak, and have more room in the courtroom to

4    do what they need to do.

5         THE COURT:  Okay.  That's fine.  You all are excused.

6    I did not summarize the reasons for approving the settlement

7    but, again, my assessment is largely based upon the cost and

8    the adverse effect on the debtors of protractive litigation as

9    well as an assessment of potential litigation at risk.  And I

10   certainly took into account the debtor's and the committee's

11   own assessment of that.  You all generally don't come to the

12   claim objection hearings but these debtors are very diligent,

13   generally, in dealing with claims against their estates and

14   very aggressive in trying to reduce them.

15        So, again, I find the settlement reasonable as set

16   forth on the record.

17        MR. BUTLER:  Thank you, Your Honor.  Thank you,

18   Mr. Brilliant.

19        MR. BRILLIANT:  Thank you, Your Honor.

20        MR. BUTLER:  Your Honor, turning back to the end of

21   the table of Exhibit 158, which summarizes the objection.  If

22   we could go to the table, please?  Thank you, Your Honor.  I'm

23   looking at pages 26, 27, and 28 of that document.

24        Okay.  On page 26 of the document, we'll just run

25   through the objecting parties that have been listed on

35

1   Exhibit 158.  The -- we've just dealt with docket number 11471,

2   the Caspian Capital Advisor's objection which has now been

3   withdrawn.  The two next objections, 11475 from the UAW and

4   11580 from the UAW, both remain outstanding.  Going to page 27,

5   the 11582 the IUE objection that also is a supplemental

6   objection; it remains outstanding as does the -- and I know

7   they're here to prosecute.

8          The next objection that remains outstanding is the

9   objection of Cheryl W. Carter at docket number 11753.  And I

10  would ask if Ms. Carter or anyone representing Ms. Carter is

11  present at the confirmation hearing to prosecute the objection?

12         THE COURT:  Ms. Carter, are you on the phone, or

13  anyone representing her?  Okay.

14         MR. BUTLER:  Your Honor, I --

15         THE COURT:  Why don't you briefly go ahead on this --

16  on this particular objection.

17         MR. BUTLER:  Excuse me, Your Honor?

18         THE COURT:  Why don't you just briefly address this

19  objection?

20         MR. BUTLER:  Your Honor, this is an objection --

21  Ms. Carter has an objection at 11753, also at 11806 in which

22  she objects to the -- basically to the entire confirmation

23  process of the plan.  It's a one page --

24         THE COURT:  I remember this was a one-page of --

25         MR. BUTLER:  -- non-specific --

36

1          THE COURT:  -- sort of, frustration.  All right.

2          MR. BUTLER:  May I have one moment, Your Honor?

3          THE COURT:  Yeah.  Mr. Butler, I guess I'm a little

4    confused.  I thought you were going to go through the ones that

5    were resolved first.

6          MR. BUTLER:  I was just walking straight through.  I

7    could --

8          THE COURT:  If anyone was showing up --

9          MR. BUTLER:  Okay.

10          THE COURT:  -- that -- just to hear that their

11   objection was resolved or resolved based upon something to be

12   recited on the record they could then leave if they wanted to.

13          MR. BUTLER:  Let me -- let me do those, Your Honor,

14   first.

15          THE COURT:  Okay.  Because I -- you could do it

16   either way but I -- I'd rather address the remaining objections

17   all -- you know, after you've made a showing on the voting and

18   the like.

19          MR. BUTLER:  Okay.

20          THE COURT:  And then we can turn to the objections.

21   But -- so why don't we just deal with the ones that have been

22   resolved.

23          MR. BUTLER:  I mean, several objection then, Your

24   Honor, are as follows, 11754 the Texas Taxing Authorities;

25   11791 Kennesaw LLC; 11792 Comerica Leasing Corporation; 11804

37

1    Freedenberg-NOK et al; 11847 Hidalgo County et al; 11849

2    Lear Corporation; 11852 Comerica Leasing Corporation; 11853,

3    again, Kennesaw LLC and 11855, again, Freudenberg-NOK et al;

4    11867 Cooper Standard Automotive; 11871 American Axle &

5    Manufacturing; 11872 Bank of America Leasing and Capital LLC;

6    11881 Robert Bosch Corporation; 11885 The Michigan Department

7    of Environmental Quality; 11906 Board of County Commissioners

8    of Johnson County; 11937 Liquidity Solutions Inc.; 11949 the

9    Pension Benefit Guarantee Corporation; 11950 the United States

10   of America; 11951 is the Davidson Kempner that's a supplemental

11   objection that was just withdrawn by Mr. Brilliant; and 12075

12   the Board of County Commissioners of Johnson County, Kansas.

13            Your Honor, in the case of a number of these

14   settlements there is specific language we've agreed to in the

15   confirmation order to clarify certain points and we'll deal

16   with those points.  We have agreed language that we will deal

17   with when we get to that point in time.

18            THE COURT:  So the parties that have that language,

19   they've seen it?

20            MR. BUTLER:  They've seen it.

21            THE COURT:  Okay.

22            MR. BUTLER:  It's been negotiated.  We don't intend

23   to change it.

24            THE COURT:  Okay.  So those were all withdrawn

25   objections?

38

1      MR. BUTLER:  Those were all withdrawn objections.

2  Obviously anyone who had language if it didn't end up in the

3  confirmation order I would expect that their -- you know, that

4  they have that expectation that their language will go in.

5      THE COURT:  Okay.  All right.  And I have not heard

6  anyone contradicting you.  So I'll assume those have all been

7  withdrawn.

8      MR. GREGG:  Your Honor, it's John Gregg on behalf of

9  Bank of America NA.  Bank of America has agreed to withdraw its

10  objection based on the understanding that (indiscernible) and

11  security interest will provide and continue post confirmation

12  that reaffirmation of certain guarantees and attorney fees for

13  which the Bank of America believes it is entitled to, will be

14  addressed as part of the cure process.  And finally, it's Bank

15  of America's understanding that a confirmation will, in no way,

16  (indiscernible) res judicata with respect to a secure of any

17  defaults under the leases between the debtors and Bank of

18  America.

19      MR. BERGER:  Your Honor, Neil Berger for the debtors.

20  Counsel is referring to section 5. -- article 5.1 of the plan

21  which addresses preservation of secured claims.  Your Honor had

22  entered a number of different stipulations and order in this

23  case, some of which address the perfection of the Bank of

24  America liens and the petition date.  And yes, there is an

25  article 8.2(b) of the plan that provides for addressing

39

1    monetary and non-monetary cure issues post confirmation date.

2              THE COURT:  So you agree with Mr. Gregg's status?

3              MR. BERGER:  I have no objection to his

4    representations.

5              THE COURT:  Very well.  Okay.

6              MR. BUTLER:  Your Honor, we were just having a

7    sidebar during Mr. Berger's presentation with counsel to the

8    PBGC and I just want to be clear.  What I said I want to say

9    again so everyone hears it.  The government, in particular, and

10   government agencies have agreed to certain language that we've

11   agreed to put in the confirmation order.  Obviously if that

12   language does not end up in the confirmation that Your Honor

13   signs their objections are not withdrawn.

14             THE COURT:  Right.

15             MR. BUTLER:  Okay.  And their objections are -- all

16   these objections are provisional.

17             THE COURT:  That's the -- that's the case for anyone

18   who has agreed to withdraw their objection contingent upon that

19   language or the language they've agreed to appearing in the

20   confirmation order.

21             MR. WILSON:  Eric Wilson for PBGC, Your Honor.  Thank

22   you for that clarification.

23             THE COURT:  Okay.  Thanks.

24             MR. BUTLER:  All right.  Your Honor, the other thing

25   I'm also advised that Auto Modular Assemblies Inc., at 11876

40

1   has also withdrawn their objection.

2           So, Your Honor, those are all of the settled

3   objections.  Would you prefer me now going to the voting and

4   then I'll come back to the others?

5           THE COURT:  Yes.  Yes.

6           MR. BUTLER:  Okay.  Your Honor, the first thing I'll

7   do then, with Your Honor's permission, is make a brief

8   presentation on voting and then ask -- offer the declarants who

9   have filed voting reports for the -- the --

10          THE COURT:  Okay.

11          MR. BUTLER:  So I'd like to go to Exhibit 95 for the

12  screens, Exhibit 95, page 55.

13          Your Honor, with respect to the voting results, we

14  have more than eighty percent of the ballots case in the

15  Chapter 11 cases were cast to accept the plan.  This -- page 55

16  of Exhibit 95 reports to Your Honor, both by numerosity and

17  claim amount, based on the classes that are specified under the

18  plan the specific percentage results with respect to each of

19  the classes.

20          The only class that was deemed to have rejected,

21  assuming Your Honor accepts the voting reports we'll be

22  introducing in a few minutes, would be Delphi Diesel Systems

23  Corp. Class 6C where the percentage voting to accept was 48.4

24  percent, falling short of the statutory two thirds requirement.

25          THE COURT:  That's -- that's the dollar amount?

41

1          MR. BUTLER:  Yes, that's the dollar amount, Your

2     Honor.  That's the dollar amount.  There -- ninety-one percent

3     of the ballots that were voted, voted in favor.  But only

4     forty-eight percent of the amounts in that class voted in

5     favor, 51.6 percent voted against and therefore that was --

6     that was -- that class did not carry.

7          If we could go to page 58 of Exhibit 95.  Page 58 of

8     Exhibit 95, Your Honor, one of the things you asked us to do at

9     the disclosure statement hearing and we indicated to you it was

10    our intention to do, was to tabulate votes.  While not formal

11    sub-classes under the plan, to tabulate votes in class 1C,

12    which is by far the largest class that voted in terms of -- I

13    shouldn't say by far because General Motors had a very large

14    claim.  But other than the GM claim it was by far the largest

15    class, in dollar amounts, and it did exceed the GM class.

16          And here you can see, on the numerosity side, all

17    three -- segmenting it in senior note claims, TOPrS claims and

18    all other class 1C creditors, which would have included trade

19    claims in the DAS Delphi Group, that all of those classes

20    exceeded the statutory requirement of fifty percent by a very

21    healthy margin; the lowest seventy-three percent, the highest

22    eighty-five percent.  When evaluated by amount, and there was a

23    very large, in my experience, a very large percentage of

24    participation in the voting, for example, something like eighty

25    percent of the senior note claims actually voted, which is a

42

1    pretty high percentage.  And you'll see that in terms of

2    numerosity or rather dollar amount, again, seventy -- almost

3    seventy-one percent of the note claims voted in favor.

4    Virtually all of the TOPrS claims that voted, voted in favor.

5    And some eighty-eight percent of all of the class 1C creditors

6    trade claimants and all of the other creditors that were in

7    that class with general unsecured, voted in favor.

8           So, what Mr. Brilliant was referring to in his

9    address to the Court was the fact that even when we segmented

10   on an informal basis class 1C to evaluate the composition of

11   that vote, as we indicated in the disclosure statement, Your

12   Honor asked us to indicate, would be done and that they would

13   be presented to the Court at confirmation.  In fact, each of

14   those on a segmented basis, voted in favor.

15          I'd also point out to Your Honor that we also looked

16   at this by individual debtor.  As Your Honor knows, this

17   case -- and we go to page -- Exhibit 95, page 56, we also

18   examined this informally on a debtor by debtor basis, in terms

19   of the general unsecured classes and how they -- and how they

20   would have been voted if you looked at this based on claims

21   that have been allocated to a debtor.  In this instance forty-

22   nine -- thirty-nine of the forty-two classes -- excuse me --

23   forty-two debtors, if you evaluated this and tried to assess

24   this on a class basis by debtor also voted in favor

25   individually.  There were three cases that fell out.  In

43

1    addition to Delphi Diesel Corporation, Class 6C which was -- is

2    the natural fallout of that class having not voted, I reported

3    to you on that.  There were -- within the Delphi DAS debtor

4    group, class group one, there were two entities that would be

5    deemed to have rejected; Delphi Electronics Holding, LLC

6    rejected because it split one to one.  I think it had two votes

7    and they split them fifty-fifty.  And on an amount basis, ASAC

8    Manufacturing General Partnership.  So that, you know, even if

9    you looked at it on a debtor by debtor basis, thirty-nine of

10   the forty-two debtors voted in favor.  And from the debtor's

11   perspective, most importantly, Delphi Corporation and Delphi

12   Automotive Systems LLC, the parent company and the principal

13   operating company in the United States, voted in favor of the

14   plan.  You looked at it on a deconsolidated basis.

15          That -- the -- and that voting is, and we'll talk

16   about this later -- later on but on page -- Exhibit 95, page 54

17   that is laid out based on charts Your Honor has seen in the

18   past in terms of the groups that had, and we look at it on a

19   deconsolidated basis, all the groups that voted in favor or all

20   the green bars and you see the three red bars down in the lower

21   structure -- lower tiers of Delphi Corporation that if you

22   looked at this on a purely deconsolidated manner.

23          Your Honor, in terms of putting in evidence with

24   respect to this, we have two -- in the courtroom two witnesses

25   who are representing the voting agents in this case.  First we

44

1    have Eric Kurtzman, the chief executive officer of Kurtzman

2    Carson Consultants LLC who was retained by the debtors both --

3    to do a variety of things in this case including acting as a

4    claims agent and taking other -- representing us in terms of

5    tabulating ballots in connection with the Chapter 11 cases

6    under the solicitation procedures order.  And his declaration

7    is Exhibit 59 and the -- his deposition has been designated as

8    Exhibit 554.

9              Also, we have with us Jane Sullivan, who is the

10   executive director of Financial Balloting Group LLC, who was

11   retained in connection with the solicitation procedures order

12   and did all the public side tabulation here, the equity and

13   also tabulated the senior noteholder votes and reported on

14   that.  And her deposition -- excuse me, her affidavit, the

15   declaration, is Exhibit 60 and her testimony, at deposition,

16   has been designated as Exhibit 553.

17             Your Honor, I would also note in terms of the actual

18   certification of the vote there is a custom here in the

19   Southern District of New York that if you act in a capacity as

20   a claims agent you shouldn't be the formal certifier of the

21   vote.  And as we've indicated in the voting reports we filed,

22   James Sullivan who did not act in that capacity on behalf of --

23   and acted strictly in the capacity of a voting agent, certified

24   the entire vote and filed that in connection with her

25   declaration and those were filed yesterday on the record in the

45

1    docket.

2         Your Honor, I guess, what I'd like to do is first

3    move into evidence the declaration of Eric Kurtzman in Exhibit

4    59 and the deposition that's been designated for Mr. Kurtzman

5    at Exhibit 554 and offer Mr. Kurtzman for cross examination if

6    any party should desire to do that.

7         THE COURT:  Is there any objection to the admission

8    of those two documents?  All right.  They're -- they're

9    admitted.  Does anyone wish to cross examine Mr. Kurtzman?  All

10   right.  I'll accept those documents as his testimony.

11   (Declaration of Eric Kurtzman was hereby received as Debtor's

12   Exhibit 59 for identification, as of this date.)

13   (Deposition of Eric Kurtzman was hereby received as Debtor's

14   Exhibit 554 for identification, as of this date.)

15        MR. BUTLER:  Thank you, Your Honor. Your Honor, I'd

16   like now to move the admission of the declaration of Jane

17   Sullivan at Exhibit 60 and the designated transcript of her

18   deposition at Exhibit 553.  And I would move the admission of

19   those into evidence and present Ms. Sullivan for any cross

20   examination by the parties.

21        THE COURT:  Okay.  Does anyone object to the

22   admission of those two documents?  They will be admitted then.

23   And does anyone wish to cross examine Ms. Sullivan on her

24   declaration, on the vote certification or the solicitation

25   voting calculation?  Okay.  I'll take those documents as her

46

1    testimony.

2    (Declaration of Jane Sullivan was hereby received as Debtor's

3    Exhibit 60 for identification, as of this date.)

4    (Deposition of Jane Sullivan was hereby received as Debtor's

5    Exhibit 553 for identification, as of this date.)

6         MR. BUTLER:  Thank you, Your Honor.  Your Honor,

7    based on the testimony -- the uncontroverted testimony on the

8    record with respect to voting, I'd ask -- I'd now move, Your

9    Honor, for the Court to accept the voting reports and

10   certification of the balloting agents and to find that these

11   reports are final and represents the summaries I've laid out

12   for Your Honor that they testified to in their declarations on

13   Exhibit 95.

14        THE COURT:  I'll do that.

15   (Voting Reports and Certification of Balloting Agents were

16   hereby received as Debtor's Exhibit 95 for identification, as

17   of this date.)

18        MR. BUTLER:  Thank you, Your Honor.  So -- and we'll

19   deal, Your Honor, with -- just so the record is clear here, as

20   we move forward in the confirmation hearing there are two

21   classes we'll be dealing with as non-accepting classes.  That

22   will be class 6C.  We'll also be dealing with class 1I, which

23   under the plan receive no consideration.  It is deemed, as a

24   matter of law, to have rejected the plan.

25        THE COURT:  Let me just ask you -- get a sense of the

47

1    nature of the hearing, did any creditor of ASAC Manufacturing

2    object to the plan?

3              MR. BUTLER:  Your Honor, I'm not specifically aware

4    of ASAC, whether that's the case.  I do know that we have

5    settled the objections in class 6C.

6              THE COURT:  Well, that was going to be my next

7    question.  Are there any objections -- I mean, you obviously

8    still have to go through the cramdown?

9              MR. BUTLER:  Yes.  Liquidities Solutions Inc., was

10   the objecting creditor in class 6C.  We resolved their

11   objection and they've withdrawn it.  We had agreed with them

12   that we would use the same kind of good faith reconciliation of

13   their claims as we did with other trade claimants.

14             THE COURT:  Okay.

15             MR. BUTLER:  And that -- that was the only -- to my

16   knowledge the only objecting creditor.

17             THE COURT:  Let me ask you a slightly different

18   question with regard to ASAC and Delphi Electronics, the two

19   DAS group companies that did not have -- on a company by

20   company basis an acceptance.  Has any creditor of either of

21   those two companies objected to the plan on the basis of its

22   substantive consolidation provisions?

23             MR. BUTLER:  I am not aware that they have, Your

24   Honor.

25             THE COURT:  Okay.

48

1          MR. BUTLER:  I've looked through all the objections.

2   I do not believe that they are members of those companies.  I

3   would leave it to those creditors if I'm wrong.  But it's not

4   my understanding that we have an objection on sub-con from

5   those creditors.

6          THE COURT:  Okay.  That was my understanding too.

7   But -- all right.

8          MR. BUTLER:  All right.  Your Honor, where do you

9   want me to go next?  Do you want me to go to the -- what I was

10  going to try to do now was go through the live objections and

11  find out who's here to prosecute if that makes sense.  How

12  would you like me to proceed with those objections?

13         THE COURT:  Well, I actually -- I think it would be

14  better if you made your -- your showing under 1129(a).  And I

15  have spent some time, and I know the parties will spend some

16  time, on the objections by the two unions.  My thought is that

17  after making a showing on 1129(a) we should turn to the

18  objections other than the unions' objections.

19         MR. BUTLER:  Okay.

20         THE COURT:  And I guess it's fair to say that I

21  will -- for those who -- who are concerned that in going

22  through 1129(a) showings that they will have to raise their

23  objections then, I intended to take the union objections, sort

24  of, on a separate basis and I intend -- I assume the debtors

25  are, sort of, putting on a separate case on -- on that in

49

1    response to that.

2            MR. BUTLER:  Yes, Your Honor.  We're -- in fact the

3    order of our witnesses -- it would be useful to describe the

4    order of our witness and how we propose to deal with the case

5    and make sure that's acceptable to Your Honor.

6            The way in which we propose to offer our witnesses

7    today is to begin with John Sheehan our chief restructuring

8    officer who is going to deal with, principally, all of the

9    1129(a) issues; not all but many of them.  And move from there

10   to specific witnesses that will -- that support Mr. Sheehan's

11   declaration.  That is Colin Whitmer, an expert dealing with

12   Pricewaterhouse Coopers independent evaluation of portions of

13   the business plan.

14           Then moving to two company witnesses, Dean Unrue,

15   who's been responsible for the claims administration of the

16   case and to report to the Court where we are on the 1.45

17   billion dollar cap which the debtor's believe we are now below.

18   And also then Mr. Keith Stip (ph.) who would be dealing with

19   testimony on the General Motors settlement and the substantial

20   contributions being made by General Motors to the

21   reorganization cases.

22           We then move into the -- well some of those -- while

23   Mr. Whitmer is an expert we'd also then be moving in to the

24   principal expert part of the case dealing with valuation, best

25   interest, liquidation analysis and so forth, first with

50

1    Mr. Eisenberg from FTI and Mr. Resnick from Rothschild.

2         Having completed that portion of the hearing, Your

3    Honor, we would then move into the -- our principal, if you

4    will, compensation witnesses, Mr. -- and that would include Mr.

5    Naylor who is the chairman of the compensation committee on the

6    Delphi Board of Directors and Mr. Bubnovich who is the outside

7    expert from Watson and Wyatt. And then finally we'd conclude

8    our witnesses here at the confirmation hearing, at least our

9    direct witnesses, with the testimony of Mr. Miller who is, as

10   you know, the executive chairman of the company.

11        THE COURT:  Okay.

12        MR. BUTLER:  So that's our proposed order.

13        THE COURT:  All right.  Well, I think that makes

14   sense.  And -- so why don't you proceed with that and in each

15   case if a party wishes to cross examine in connection with

16   their objection they should do so.

17        MR. BUTLER:  Your Honor, I also -- Your Honor, I

18   would also -- one thing I also want to correct the record.  One

19   of my colleagues reminded me that it may be that the -- one of

20   the other objections, and this would be the objection of Equity

21   Corporate Housing, they may be able to make a claim against

22   class 6C as well.  So we'll have to deal with that when we get

23   to it.

24        THE COURT:  Okay.

25        MR. BUTLER:  I just wanted the court to be aware of

51

1   that.

2           THE COURT:  All right.

3           MR. BUTLER:  Your Honor, also -- now that Your Honor

4   has accepted the voting reports in this case and the work of

5   the voting agents is now final, may they be excused?

6           THE COURT:  Yes.

7           MR. BUTLER:  Thank you, Your Honor.  Your Honor,

8   before I move into presenting our witnesses I would like to

9   deal with the exhibits in the case.

10          THE COURT:  Okay.

11          MR. BUTLER:  For which I think we have, with maybe

12  three exceptions, I think substantial agreement on.  I'd like

13  to -- I'd like to move into evidence Exhibit 1 through 555.

14  I'll not repeat those, not go through them specifically.  The

15  Court and parties have been provided with the joint exhibit

16  index.  The joint exhibit index was the product of work done by

17  the debtors and the objectors.  There was a meet and confer

18  held two days ago on the -- if I got my time right, times and

19  days are going together -- I believe it was on the 15th.  At

20  which the objectors came together and with the -- and resolved

21  the -- at a meet and confer, the objections to the -- to the

22  joint exhibits.  If I understand --

23          THE COURT:  And that was pursuant to the order -- the

24  second order I entered on --

25          MR. BUTLER:  Yes, that was pursuant to Your Honor's

52

1   scheduling order.

2           THE COURT:  -- procedures.

3           MR. BUTLER:  And so, the only -- I believe the only

4   objections that are outstanding, which I'm not sure need to be

5   argued now.  I think the exhibits could come in subject to

6   resolving these three objections at some point during the

7   hearing, is I believe Wilmington Trust has an exhibit -- an

8   objection to paragraph 170 of Mr. Sheehan's declaration,

9   Exhibit 63.  And I believe the UAW has objections to Mr.

10  Naylor's declaration at exhibit -- paragraph 25, that would be

11  Exhibit 66.  And also to paragraph 48 of Mr. Miller's

12  declaration, Exhibit 67.

13          THE COURT:  Okay.

14          MR. BUTLER:  I think those -- I'm sorry.

15          MR. FOX:  Your Honor, I just add to that.  We have

16  the same objection that we've had in each case with respect to

17  the debtor's out of court presentations, the bank

18  presentations, that they're not being admitted for the truth of

19  the matter -- the matter set forth in those documents.

20          THE COURT:  But simply that they were made.

21          MR. FOX:  Exactly.

22          THE COURT:  All right.

23          MR. BUTLER:  And we're fine with that, Your Honor.

24          THE COURT:  All right.  So, except with regard to

25  those, I think it was three paragraphs --

53

1          MR. BUTLER:  Right.

2          THE COURT:  -- which will be dealt with when they

3     come up, I will admit those exhibits.

4     (Exhibits 1-155 were hereby received as Joint Exhibits 1-555

5     for identification, as of this date.)

6          MR. BUTLER:  Thank you, Your Honor.

7          THE COURT:  With the caveat -- again, for the

8     purposes set forth on the record --

9          MR. FOX:  Thank you.

10          THE COURT:  -- where relevant.

11          MR. BUTLER:  All right.  Your Honor, the -- Your

12     Honor, then the first order of our witnesses, the first witness

13     would be John D. Sheehan.  He's the vice president and chief

14     restructuring officer of Delphi Corporation.  He has been a

15     witness in this court on many occasions in the past.  His

16     declaration in this -- for this confirmation hearing has been

17     now admitted as Exhibit number 63 and his deposition has been

18     designated and admitted at Exhibit number 552.  And, Your

19     Honor, I would now offer him for cross examination by the

20     parties or any questions that the Court may have.  Noting that

21     there is an objection to the extent by Mr. Fox to paragraph 170

22     of that declaration.

23          THE COURT:  Okay.  Does anyone wish to cross examine

24     Mr. Sheehan?

25          MR. FOX:  Your Honor, I think before we get to that,

54

1    I'm not sure how you want to deal with that particular

2    objection to paragraph 170.  It's actually where Mr. Sheehan

3    expresses, what I believe is intended to be, a lay opinion as

4    to the likelihood that the debtor will be able to obtain

5    financing commitments that it is presently seeking in the

6    capital markets.

7            THE COURT:  That's right.  You're not offering him as

8    an expert, are you?

9            MR. BUTLER:  NO, we're not.  It's a lay -- I mean,

10   he's our chief restructuring officer.  This represents --

11           THE COURT:  He's a business person trying to get a

12   sense of whether the likelihood of securing exit financing and

13   the other factors that he mentioned, mean that the plan is

14   feasible for purposes of 1129(a)(11).

15           MR. BUTLER:  Correct.  That's his opinion as the

16   chief restructuring officer of the company and that's all it's

17   being offered for.

18           THE COURT:  Okay.

19           MR. FOX:  Well -- I mean, the problem with -- with a

20   lay opinion with respect to the likelihood of the debtor

21   getting financing is that that's not the typical kind of area

22   where one would expect a lay person to be providing such an

23   opinion.  This is more of a technical area that, you know, the

24   average person, even a chief restructuring officer, isn't

25   necessarily going to be considered an appropriate party to be

55

1    offering that kind of opinion.

2            THE COURT:  Well, I don't -- I don't follow that.  I

3    mean -- I think it's fair for a business person, particularly

4    one who's been involved in this process for the length that he

5    has and who has dealt with the people, in many cases on the

6    opposite side of the table in these matters, to have an

7    opinion.  You can -- you can question it but it's -- I think

8    it's just -- it's just that.

9            MR. FOX:  Well, there's also --

10           THE COURT:  It's certainly different than an opinion

11   of someone who's not been involved in the process but --

12           MR. FOX:  Well, that's true, Your Honor.  The other

13   problem with it though is there's a foundational problem

14   because effectively it brings in hearsay because his opinion is

15   based on what, you know, banks and such have told them and

16   they're not here to testify about that.  They're not being

17   offered as witnesses directly.

18           THE COURT:  Again, it's not -- I don't think this is

19   being offered for the truth of what he's been told though.

20   It's just his view based upon --

21           MR. FOX:  Well --

22           THE COURT:  I mean, he has -- clearly in his

23   declaration discussed in more detail the basis for this

24   conclusion here.

25           MR. FOX:  Right, which is based on out of court

56

1    statements that others have made to him.

2         THE COURT:  And -- and again, they're not -- those

3    statements are what he has taken away from them.  They're not

4    being admitted as true -- as the truth of what's been said to

5    him.  So -- I -- I just don't see why it would be inadmissible

6    as opposed to what weight you might give to it.

7         MR. FOX:  Thank you, Your Honor.

8         THE COURT:  So I'll admit this.  Again, with the

9    general caveat that the statements by third parties that

10   Mr. Sheehan has recounted and is relying upon in this paragraph

11   170 are not in his affidavit to show the truth of those

12   statements but merely that he is -- this is what he has heard.

13   Okay.  So --

14        MR. BUTLER:  So, Your Honor, I would --

15        THE COURT:  So given that, does anyone wish to cross

16   examine Mr. Sheehan on his declaration or in respect of the

17   designated portions of his deposition?  Okay.

18        THE COURT:  I have one question for you Mr. Sheehan

19   and I could ask it of you or perhaps, before you come up here,

20   are any of the counsel involved in the exit financing, you

21   know, on reporting on exit financing and where it stands?  I

22   guess what I would like to do is just see if there -- is there

23   any update from the date of this declaration that would, at

24   all, alter what Mr. Sheehan reports.

25        MR. FOX:  I didn't fully understand --

57

1         MR. BUTLER:  Can I have a moment, Your Honor?

2         THE COURT:  Just to update it.

3         MR. BUTLER:  Your Honor, I think Mr. Sheehan would be

4   the proper question to answer the Court's question.

5         THE COURT:  All right.  Well, let me just briefly

6   swear you in then.

7      (Witness is Sworn)

8         THE COURT:  For the record, could you spell your

9   name.

10        THE WITNESS:  John, J-O-H-N, D. Sheehan, S-H-E-E-H-A-

11  N.

12        THE COURT:  Okay.  And my question, Mr. Sheehan, and

13  I appreciate it's only four days difference but your

14  declaration's dated January 13, 2008 and it reflects that the

15  exit financing process got started, I believe, on January 5th,

16  is that correct?

17        THE WITNESS:  January 9th, Your Honor.

18        THE COURT:  January 9th, excuse me.  My question is,

19  knowing what you know today with regard to that process, have

20  there been any developments in connection with that process

21  between the date of your declaration and today, that would

22  alter your view as to the likely outcome of that process?

23        THE WITNESS:  The short answer to that question is no

24  Your Honor.  And I'd be happy to provide you more detail if you

25  would like.

58

1     THE COURT:  No, that's fine.  All right.  Does anyone

2  wish to cross examine Mr. Sheehan on that update?  All right.

3  Again, I -- I'm being somewhat reticent because I do not

4  believe it's appropriate to get into negotiation strategies and

5  the like.  But obviously if you -- if you have come across

6  information that would suggest that you should be, you know,

7  considerably more pessimistic, you should let me know.

8     THE WITNESS:  I considered my answer carefully when I

9  answered.

10     THE COURT:  Okay.  Very well.  Thank you.

11     MR. BUTLER:  Your Honor, the next -- our next witness

12  is Colin E. Whitmer who is a partner in the transaction

13  services practice at Pricewaterhouse Coopers LLP.  Mr. Whitmer,

14  would you stand and identify yourself please?

15     THE COURT:  He's been standing.

16     MR. BUTLER:  He is standing.  Mr. Whitmer's

17  declaration is Exhibit 68 and his deposition has been marked as

18  Exhibit 516.  They have been admitted into evidence and I

19  present Mr. Whitmer now for cross examination by the parties or

20  any questions the Court may have with respect to his

21  declaration.

22     THE COURT:  Okay.  Does anyone want to cross examine

23  Mr. Whitner -- Whitmer, excuse me, on his declaration or the

24  designated sections of his deposition?  Okay.  I will accept

25  his declaration and the deposition provisions as his testimony.

59

1        MR. BUTLER:  Your Honor, may Mr. Whitmer be excused?

2        THE COURT:  Yes.

3        MR. BUTLER:  Your Honor, the debtor's third witness

4   in support of its confirmation of its plan of reorganization is

5   Dean R. Unrue.  Also a witness that the Court is familiar with.

6   He's been handling all of the company's claims administration

7   process in the Chapter 11 case.  He is the claims administrator

8   at Delphi Corporation.  And his declaration has been submitted

9   and admitted into evidence as Exhibit 65.  And his deposition

10  has been admitted as Exhibit 515.  Your Honor, I would present

11  Mr. Unrue for cross examination by the parties or questions by

12  the Court about any of the matters in connection with his

13  testimony but particularly with respect to his judgment that

14  the debtors have met the 1.45 billion dollar claims cap set

15  forth in the plan of reorganization.

16       THE COURT:  Well, when you say that, is that in his

17  deposition?

18       MR. BUTLER:  No, but I think it was discussed -- they

19  updated it in his declaration.

20       THE COURT:  It's not in the declaration.

21       MR. BUTLER:  We're about twenty or thirty million

22  dollars ahead.

23       THE COURT:  Right.

24       MR. BUTLER:  And the -- and maybe the best way, Your

25  Honor, just so it's clear because I think it is in there

60

1   somewhere would be if -- first off if anyone has any cross

2   examination it might be useful to get that update on where we

3   are, just so it's clearly in the record.

4         THE COURT:  I would like to do that.  I know there

5   have been some recent rulings.  So Mr. Unrue, if you'd come up

6   please.

7      (Witness is Sworn)

8         THE COURT:  And for the record, would you spell your

9   name?

10        THE WITNESS:  It's Dean, D-E-A-N, R. Unrue,

11   U-N-R-U-E.

12        THE COURT:  Okay.

13   DIRECT EXAMINATION BY

14   MR. BUTLER:

15   Q.   Mr. Unrue, we just -- do you have any -- do you remember,

16   in your declaration, having testified about where the debtors

17   stood at the time of your declaration with respect to

18   compliance with the 1.45 billion dollar cap referenced in the

19   debtor's plan of reorganization for a limitation on what have

20   been called various names in this case but I would -- I refer

21   to them as general unsecured claims other than funded debt

22   claims.  Have you -- do you recall that testimony in your

23   declaration?

24   A.   Yes, I do.

25   Q.   Do you have an update to that testimony?

61

1   A.    Yes, I do.

2   Q.    Could you please give the Court an update to where the

3   debtors stand with respect to that cap?

4   A.    Okay.  At the time of my declaration we were at 1.470,

5   twenty million dollars in excess of the cap.  As you know, we

6   resolved two cases at the most recent claims hearing.  The case

7   of White Source and Nu-Tech that put us slightly over the cap.

8   Since then we have, at least, three signed settlement

9   agreements that put us, currently, at three million under the

10  cap.

11              THE COURT:  Okay.  All right.  Does anyone wish to

12  cross examine Mr. Unrue, either on his declaration, his

13  deposition testimony or the most recent update from the stand?

14              MR. LAURIA:  Your Honor, Tom Lauria for the plan

15  investors.  I do not wish to cross the examine the witness

16  however I do want to, on the record, just reserve our rights

17  and make it clear that we're not expecting the Court to make

18  any finding on this particular issue, we have an independent

19  right to be satisfied that this cap has not been exceeded.  And

20  I -- I'm, kind of, surprised if this is an effort to get a

21  finding that that cap has been satisfied separate and apart

22  from the determination we have the right, under our contract,

23  to make.

24              THE COURT:  Okay.

25              MR. BUTLER:  Your Honor, the evidence is what it's

62

1    for.  I mean, I'm not -- there's nothing --

2         THE COURT:  The evidence is for confirmation

3    purposes.  And primarily goes to valuation issues, since

4    there's an adjustment under the investment agreement if the cap

5    is exceeded.  So that's the purpose for which it's being

6    offered.  All right.  You can step down Mr. Unrue.  Thank you.

7         MR. BUTLER:  Your Honor, the debtor's forth witness

8    in support of its confirmation hearing is Keith D. Stip.  Mr.

9    Stip is the divisional chief financial officer of the

10   Automotive Holdings Group at Delphi Corporation and has had

11   various other responsibilities over his twenty-three years at

12   Delphi Corporation.  Mr. Stip, will you please stand if you're

13   not already standing.  There is Mr. Stip.

14        Your Honor, his declaration has been admitted at

15   Exhibit 64 and his deposition has been admitted at Exhibit 514.

16   I'd offer Mr. Stip for cross examination by the parties or for

17   any questions Your Honor may have.

18        THE COURT:  All right.  First, does anyone wish to

19   cross examine Mr. Stip on his declaration?  All right.

20   Mr. (indiscernible) -- you were, I assume, heavily involved in

21   the analysis and negotiation of the GM issues, correct?

22        MR. BUTLER:  Yes, Your Honor.

23        THE COURT:  All right.  I may have a question as to

24   analyzing the settlement in light of potential objections that

25   may come up.  But I -- I believe it's more of a lawyer's

63

1    question then -- then a question for the witness.  So, now that

2    you've confirmed that you were involved in that analysis and

3    negotiations I won't -- I don't have any questions for Mr.

4    Stip.

5           MR. BUTLER:  Thank you, Your Honor.  Your Honor, with

6    respect to Mr. Unrue and Mr. Stip, they may be here for part of

7    the hearing on other matters, may they be excused as witnesses?

8           THE COURT:  Yes.  You might be able to auction off

9    your seat too, if you're willing to leave.

10          MR. BUTLER:  Your Honor, that would complete what I

11   refer to, sort of, as the group one witnesses in this case

12   which are witnesses that have testified comprehensively as

13   Mr. Sheehan has in support of confirmation.  And then as to

14   Mr. Whitmer in terms of their evaluation of the business plan.

15   Mr. Unrue on claims and Mr. Stip on the General Motors

16   settlement.  We now move into what I refer to as the group two

17   witnesses, dealing with matters relating to valuation,

18   liquidation, substantive consolidation and the best interest

19   test in the 1129 of the Bankruptcy Code.

20          THE COURT:  Okay.

21          MR. BUTLER:  And these witnesses are the two

22   principal financial advisors the company's had during the

23   Chapter 11 cases.  First, the -- the partner who has lead the

24   engagement for FTI, Randall S. Eisenberg, whose declaration has

25   been admitted as Exhibit 83 and whose deposition has been

64

1    admitted at Exhibit 517.

2            Your Honor, I'd like to present -- these have been

3    admitted and I'd like to present Mr. Eisenberg now for cross

4    examination by the parties or for any questions the Court may

5    have with respect to his testimony.

6            THE COURT:  Okay.  Does anyone wish to cross examine

7    Mr. Eisenberg on his declaration or the subject of his

8    deposition?  Okay.  Mr. Eisenberg, I do have one -- one set of

9    questions for you so if you could come up here I'd appreciate

10   it.

11       (Witness is Sworn)

12           THE COURT:  And would you spell your name for the

13   record.

14           THE WITNESS:  Sure.  Randall S. Eisenberg,

15   E-I-S-E-N-B-E-R-G.

16           THE COURT:  Okay.  Mr. Eisenberg, in your declaration

17   you -- you go through the analysis that you and your colleagues

18   at FTI, in consultation with Skadden, undertook regarding the

19   plans proposed substantive consolidation.  You're familiar with

20   that?

21           THE WITNESS:  Yes, I am.

22           THE COURT:  Earlier in the hearing Mr. Butler

23   reported, in connection with the voting certification portion

24   of the hearing, that two of the DAS group debtors had classes

25   that didn't accept the plan.  They were lower down in the

65

1    organization structure, ASEC Manufacturing General Partnership

2    and, I believe, Delphi Electronics.  Do you recall that?

3             THE WITNESS:  I do.

4             THE COURT:  Did you or your colleagues do any

5    analysis as to whether -- or do you have -- let me change that.

6    Do you have an opinion as to whether the creditors, the

7    unsecured creditors, of those two entities -- or let's take

8    them separately -- of each of those two entities, respectively,

9    would be harmed by the proposed substantive consolidation of

10    the DAS/Delphi Corp. debtors.

11             THE WITNESS:  Yes, I do have an opinion.

12             THE COURT:  And what is that opinion?

13             THE WITNESS:  It's my opinion that creditors in

14    either of those entities will not be harmed as a result of the

15    substantive consolidation under the plan.

16             THE COURT:  And what is the basis for that opinion?

17             THE WITNESS:  The plan calls for a recovery of par

18    plus accrued -- excuse me -- par plus accrued for preponderance

19    of the creditors and preponderance of the classes.  And as a

20    result of that these creditors will receive the same recovery

21    whether substantive consolidation is approved or not approved.

22             THE COURT:  Is it -- if -- if the -- if you looked at

23    those companies on a stand-alone basis, is it your view that

24    those creditors would get that -- that level of recovery or did

25    you do that type of analysis?

66

1          THE WITNESS:  We did not look at an analysis on a

2     going concern basis as to what he recoveries would be on an

3     individual, entity by entity, basis, no.

4          THE COURT:  You did that on a 1129(a)(7) basis?

5          THE WITNESS:  We did it --

6          THE COURT:  Best interest basis?

7          TRHE WITNESS:  -- on a best interest basis, that's

8     correct.

9          THE COURT:  And it was your conclusion, on a best

10    interest basis, that -- that what would happen to those

11    creditors?

12         THE WITNESS:  One moment, Your Honor.  I'm sorry, let

13    me just clarify.  We performed substantive -- a best interest

14    test as it relates under two conditions.  One is under

15    substantive consolidation under the plan as well as substantive

16    consolidation for all debtors.  We did not do an analysis on an

17    entity by entity basis under liquidation.  Again, I would point

18    out though, under reorganization the creditors of those

19    entities will not be harmed because they will receive, in

20    essence, the same recovery whether those estates are

21    substantively consolidated or not substantively consolidated.

22         THE COURT:  Okay.  All right.  Are you aware of

23    whether these are operating entities?

24         THE WITNESS:  ASEC Manufacturing is an operating

25    entity.  And Specialty Electronics -- if I could just get

67

1    clarification from counsel on the specific entities actual name

2    because some of the names are fairly similar?

3              MR. BUTLER:  Yes, the two that we indicated earlier,

4    Your Honor, were ASEC Manufacturing General Partnership of

5    Delaware and the other entity -- maybe we could put up, if we

6    could, Plan Exhibit 95, page 54 on the screen which has the

7    chart and the other -- and shows where they are in the

8    structure.  And the others -- the other one is Delphi

9    Electronics Holding, LLC.

10              THE WITNESS:  Delphi Electronics Holding, LLC, is a

11    holding company.

12              THE COURT:  Okay.

13              THE WITNESS:  It's not an operating entity.

14              THE COURT:  And ASEC is the entity you were thinking

15    of before when you said it had some -- it was an operating

16    entity?

17              THE WITNESS:  Yes, sir.

18              THE COURT:  And am I right that each of these two

19    entities is within the alleged control group that the PBGC has

20    said it would have a claim against?

21              THE WITNESS:  That is my understanding.  Correct.

22              THE COURT:  Okay.  All right.  Does anyone have

23    any -- any questions of Mr. Eisenberg in -- in light of the --

24    my questioning of him?

25              MR. BUTLER:  Your Honor, I just have a very brief re-

68

1   direct.

2           THE COURT:  Okay.

3           MR. BUTLER:  If we could put on the screens Exhibit

4   83, page 28.  Okay.

5           THE COURT:  What is that document?

6           MR. BUTLER:  That would be his report, Your Honor.

7           THE COURT:  Oh, okay.  I have that.

8           MR. BUTLER:  You've got that.

9           THE COURT:  Yeah.

10          MR. BUTLER:  It's page 28 of the report.

11  RE-DIRECT EXAMINATION BY

12  MR. BUTLER:

13  Q.   Mr. Eisenberg, did you -- you testified --

14          THE COURT:  Do you have it, Mr. Eisenberg?

15          THE WITNESS:  I do.  Yes.

16          THE COURT:  Okay.

17  Q.   You testified, in response to the Court's question, as to

18  whether or not you had done examination on individual debtor by

19  debtor basis, on a reorganization basis or on a best interest

20  basis.  Did you -- and you had testified no.  Did you do an

21  examination of each entity on a debtor by debtor basis from a

22  substantive consolidation perspective?

23  A.   Yes, I did.

24  Q.   And are the results -- the summary of your report with

25  respect to that analysis set forth on pages -- as to the DAS

69

1    LLC and its debtor subsidiaries set forth on pages 28 and 29 of

2    your report?

3    A.   Yes, it is.

4    Q.   And looking at ASEC Manufacturing General Partnership, am

5    I correct to refer to that as entity number three?

6    A.   Yes.

7    Q.   All right.  In -- in reviewing that line item could you

8    just, very briefly, walk the Court through your assessment of

9    ASEC Manufacturing General Partnership from a sub-con

10    perspective?

11    A.   Yes, I can.  ASEC, like many of the other DAS

12    subsidiaries, is an entity that does not portray itself in

13    front of the marketplace as a separate entity.  Going to --

14    just highlighting some of the items across the row, the entity

15    does not have its own financial statements.  It does not have

16    documents that reflect the name ASEC Manufacturing General

17    Partnership, business documents of various natures.  It does

18    not file its own federal tax return.  It does not provide its

19    creditors or potential creditors individual creditor

20    information as it relates to its financial wherewithal and

21    capabilities.  Among other -- among other components it is

22    unable to obtain its own financing.  It does not have its own

23    trial balance.  It has lock boxes or it participates in the

24    ASEC -- I'm sorry -- in the global or the U.S. rather -- the

25    U.S. cash management system.  It also does not have its own

70

1    engineering services.  This is an entity that, again, portrays

2    itself to the marketplace as part of overall Delphi

3    Corporation.

4            THE COURT:  Okay.

5    Q.   Would you also -- is -- is -- on your report is item --

6    entity number 12, that's the entry number for Delphi

7    Electronics Holding, LLC, is that correct?

8    A.   Yes, it is.

9    Q.   And did you perform a separate examination with respect to

10   that entity?

11   A.   Yes, I did.

12   Q.   Could you explain to the Court the results of your

13   examination?

14   A.   In summary, very similar to what I described with respect

15   to entity number three, ASEC Manufacturing General Partnership.

16   Delphi Electronic Holdings does not portray itself in the

17   marketplace as a separate entity.  It has all -- many of the

18   same characteristics.  I can go through them specifically with

19   the Court if they'd like.  But in general it's very similar

20   both as it relates to creditor reliance and attainment of

21   affairs.

22           MR. BUTLER:  One moment, Your Honor, if I may?  All

23   right.  Your Honor, I have no other questions of the witness.

24   Thank you.

25           THE COURT:  Okay.  Did you -- did you -- are you

71

1    familiar with the basis for the scheduled assets and schedule

2    liabilities for those two companies or is that something --

3            THE WITNESS:  Yes, I am familiar with them.  Yes.

4            THE COURT:  Is there a reason why the assets and

5    liabilities of entities three, four and five are all the same?

6            THE WITNESS:  Yes, there is.  Entities three, four

7    and five all share one trial balance and therefore we're

8    unable -- we were unable to, at the time, to break out the

9    individual assets and liabilities.  And I believe that's so

10   footnoted in the actual statements and schedules that were

11   filed with the Court.

12           THE COURT:  Okay. All right.  Any -- any questions?

13   Any further questions?  All right.  You can step down, sir.

14           THE WITNESS:  Thank you.

15           MR. BUTLER:  Your Honor, I'd also indicate now, and

16   I'll deal with this later in argument, but the -- I think

17   Your Honor can take judicial notice of the catalyst sale order

18   that Your Honor entered earlier in these cases.  And the

19   catalyst sale order involved selling the assets of ASEC.  And I

20   think Your Honor will be able to take judicial notice of the

21   fact that that sale order approved that sale -- the sale of

22   those assets for an amount less than seventy-five million

23   dollars.  And when we get through to talk about it,

24   substantially less value than the claims against the -- filed

25   against that entity.

72

1          THE COURT:  Okay.

2          MR. BUTLER:  But we'll deal -- I just wanted to but a

3    place holder here in the record as to that sale.

4          Your Honor, the debtor's sixth witness in support of

5    its confirmation hearing is the company's principal outside

6    financial strategist and banker -- investment banker, David

7    Resnick from Rothschild, who's also been a frequent witness in

8    these cases over the last several years.  Mr. Resnick's

9    deposition has been admitted at Exhibit 85 and his deposition

10   has been admitted at Exhibit 550.

11         Your Honor, I introduce Mr. Resnick at this hearing

12   for purposes of cross examination by any party or for any

13   questions the Court might have.

14         THE COURT:  Okay.  Does anyone wish to cross examine

15   Mr. Resnick on his deposition or -- deposition transcript or

16   his declaration or the subject of his deposition?  All right.

17   I have no questions of Mr. Resnick.

18         MR. BUTLER:  Thank you, Your Honor.  Your Honor, I

19   notice it's the noon hour and I'd like to get some guidance

20   from the Court on what you'd like to take up next.  In terms of

21   moving forward with the witnesses on the management comp issue,

22   we'd like to do that after the lunch break.  In part because --

23   no one can ever plan a hearing perfectly, had someone told me

24   yesterday that we'd be through our first six witnesses in an

25   hour at this hearing, I'm not sure that I would have accepted

73

1    that evaluation as realistic.  And so, Mr. Naylor won't be with

2    us until shortly after lunch, who's our next scheduled witness

3    and that's also on the management comp side.

4              Mr. Naylor and Mr. Bubnovich are witnesses only on

5    those issues.  Mr. Miller's testimony goes to both that issue

6    and more broadly the debtor's cases.  And I would rather leave

7    him for last in case there is cross examination.  And so I --

8    I'd like -- the -- so aside, Your Honor, from Mr. Miller and

9    aside from the specific issue you asked to deal with separately

10   on the union's objections to management compensation, the

11   testimony is now in, in terms of the first six witnesses and in

12   terms of the evidentiary -- the evidentiary record.  We have to

13   deal with Mr. Naylor -- the UAW's objections to Mr. Naylor and

14   Mr. Miller, those two paragraphs, but other than that, those

15   are the only two documentary objections that are left.

16             So, I could do -- we could do one of two things,

17   Your Honor or whatever else Your Honor would like to do but the

18   two possibilities here would be to spend some time going

19   through the balance of the objections that are live to figure

20   out -- sort out who's going to pursue them and who's not.

21             THE COURT:  I think that's a good idea.  If

22   that'll -- my guess is that won't take very long so let's do

23   that first.  Just who's -- who is here and not content to rely

24   upon their objection either implicitly because they're not here

25   or because that's all they want to do.

74

1           MR. BUTLER:  Right.

2           THE COURT:  And who will be arguing an objection and

3      who may even have a witness.  And -- and that's other than the

4      unions because I know the unions are here and have their own

5      record.

6           MR. BUTLER:  Your Honor, I think the -- I'd like to

7      put the chart back up that we had before and go to page 27 of

8      that -- 28.  And this would be the objection chart and let's

9      walk through those again.  All right.  It'll just take a second

10     so we can get it up so we can all see it.  All right.  And then

11     again, page -- if we can go to page 27 of the exhibit.  This,

12     again, so the record's correct, we're back to Exhibit 158 and

13     on page 27 of that exhibit now.  I had passed on the IUE

14     objection which is being prosecuted.  And I think I had started

15     to deal with the objection of Cheryl Carter at 11753 and at

16     11806.  Those were the letter objections that were in

17     opposition to confirmation.

18          THE COURT:  Okay.  And I think we've already

19     determined that Ms. Carter's not present and so I assume that

20     will just get dealt with in closing argument.

21          MR. BUTLER:  The next objection is the objection

22     11811 of Darla and Alan Schmidt (ph.).  This was an objection

23     that they filed to the treatment of Delphi stock under the

24     plan.

25          THE COURT:  All right.  Are Mr. and Mrs. Schmidt or

75

1    their counsel present?  Okay.  You can go to the next one.

2    Again, we'll address these in closing argument.

3            MR. BUTLER:  The next objection, Your Honor, is the

4    objection at docket number 11812 of Frank X. Budiluwsky (ph.).

5    He objects to the pension plan, treatment described in the plan

6    on various basis including asserting age discrimination and

7    other matters.

8            THE COURT:  Okay.  Is Mr. Budiluwsky or his counsel

9    present?  All right.  So you can go to the next one.

10           MR. BUTLER:  Okay.  The next objection, and these are

11   actually -- there are two objections filed.  One at docket

12   number 11822 and the other one at 12016.  These were filed by

13   Frank Helizon (ph.) a former employee of Delphi Corporation.

14   Mr. Helizon asserts that the plan is unfair and inequitable

15   because it does not include the foreign subsidiaries as part of

16   the liquidation analysis.  He objects to the -- and he also

17   objects to the management compensation plan as unreasonable and

18   unfair to the other stakeholders in the case.

19           THE COURT:  Okay.  Is Mr. Helizon here or represented

20   here?  Okay.

21           MR. BUTLER:  Your Honor, the next objector is at

22   docket number 11823.  This is Pima County.  Pima County asserts

23   that the plan would impermissible strip secured tax claimants

24   of their liens without having first paid all taxes and interest

25   by treating those secured claims in the same manner as priority

76

1   tax claims.  And they also make various other allegations with

2   respect to taxing matters including payment of its claim over a

3   six year period would be objectionable and other assertions.

4   They also assert that the plan violates section 1129(a)(7) of

5   the Code because in a liquidation scenario Pima County would

6   receive payment of its tax claim in full.

7                THE COURT:  All right.  Is anyone present for Pima

8   County?

9                MR. YUSUFOV:  (Indiscernible).

10               THE COURT:  Yes, okay.  Sir, the debtors have stated

11   on the record and pointed to the provision of the plan that has

12   liens surviving.  I don't know if it may be fruitful, offline,

13   while we're at lunch for you to speak with someone about the

14   plan.  I think your objection might be resolvable, conceivably.

15               MR. YUSUFOV:  I'm not able (indiscernible).

16               THE COURT:  Okay.  What I'm saying is, if you give

17   your phone number, now, to -- to -- on the record, someone from

18   the debtors will contact you.  I -- I have a feeling that your

19   objection may be resolvable as a number of the other objections

20   have been that are somewhat similar to this, if you want to do

21   that.

22               MR. YUSUFOV:  (Indiscernible).  Let me just address,

23   briefly, if you would (indiscernible).

24               THE COURT:  No, let me -- Mr. Butler, why don't you

25   repeat what I said.

77

1          MR. BUTLER:  All right.  Sir, I -- the Court had

2     asked if you would give your phone number on the record so that

3     you could be contacted again by debtor's counsel.  His

4     statement was that seeing as the debtor's have acknowledged on

5     the record that the plan is not stripping any liens and the

6     liens are going to survive the Chapter 11 case, the Court

7     indicated the view that this should be a resolvable objection.

8     If you would like to engage us over the lunch break we're happy

9     to call you if you'd give us your telephone number.

10         MR. YUSUFOV:  Certainly.  My phone number is 520-740-

11    5750.  And, Your Honor, if I may, I think I can partially

12    address the objection right now.

13         THE COURT:  Well, I'd rather you -- I think we may be

14    able to avoid that if -- if you speak with the debtors.

15    Because I think -- my -- I have a pretty good belief that

16    it's -- it's something that can be resolved without having to

17    have oral argument or a ruling on.  So I'm going to ask the

18    debtors to give you a call once we adjourn for lunch.  And

19    you'll have a chance to make this argument later if you can't

20    resolve it with them.

21         MR. YUSUFOV:  Thank you, Your Honor.  May I be

22    excused at this time?

23         THE COURT:  Yes.

24         MR. YUSUFOV:  Thank you.

25         THE COURT:  But keep your phone by you.

78

1          MR. YUSUFOV:  Yes.

2          THE COURT:  Okay.

3          MR. BUTLER:  Your Honor, the next objection that is

4  unresolved is at docket number 11869, Equistar Chemicals LP.

5  Equistar seeks to reserve its right -- it's claimed right of

6  setoff and objects to the plan it disallows or impairs claims

7  of setoff or offset that would result in the discharge of

8  Equistar's alleged secured claim without providing it the

9  equivalent of its claim.

10          THE COURT:  Okay.  Is anyone from Equistar present or

11  on the phone?  All right.  I would have -- I would have

12  suggested the same approach but we'll just deal with this at

13  oral argument.  My understanding is the debtor's acknowledge

14  that a valid setoff claim is a lien under the Bankruptcy Code.

15          MR. BUTLER:  Yes, Your Honor.

16          THE COURT:  And therefore it's preserved under the

17  plan.  It's not stripped away.

18          MR. BUTLER:  That's correct, Your Honor.

19          THE COURT:  Unless of course you haven't -- you

20  haven't filed a proof of claim or your claim's disallowed.

21          MR. BUTLER:  Right.  I mean, with all the normal

22  claims administration caveats, Your Honor.

23          THE COURT:  Right.  Okay.

24          MR. BUTLER:  Your Honor, the next one I believe that

25  is still not specifically settled -- bear with me one moment --

79

1    is docket number 11883, Audio MPEG, Inc.  This is an

2    intellectual property dispute and there is an objection that

3    the license -- the assumption of a license agreement --

4    assumption of a license agreement that should not be assumable

5    or assignable based on bankruptcy law and non-bankruptcy law

6    basis.  There's a -- they have a series of objections but this

7    all relates to intellectual property disputes with respect to

8    their license and what they think they're entitled to.

9           This is also, I believe, the only declarant -- the

10   only objection that has a declarant attached to it, that I'm

11   aware of.  And we have discussed -- there was a declaration

12   that was presented to the debtors of a Mr. Lancaster.  We have

13   agreed that Mr. Lancaster would be made available for

14   deposition at a later time.  We're not stipulating to the facts

15   set forth in his declaration.  We reserve our rights to contest

16   it.  The debtors understand the purpose of the declaration was

17   to show standing to make legal objections to the plan.  And we

18   don't object to its admission for that limited purpose.  We

19   didn't -- the declarant was not presented to us for cross

20   examination.  I don't believe the declarant's here for --

21   for -- at court.

22          THE COURT:  Well, let me -- let me just -- this is an

23   objection to assumption of this license?

24          MR. BUTLER:  Among other things.

25          THE COURT:  Well, I'm just wondering, is this

80

1    something that is part of the confirmation hearing?

2         MR. BUTLER:  Well, Your Honor, I think some of the

3    relief -- some of the relief ultimately is.  I do believe that

4    we could put this off to another day but that would have to be,

5    you know, I'd have to hear what counsel thinks.

6         THE COURT:  Okay.

7         MS. DOWD:  Your Honor, if I could be heard briefly.

8    Mary Joe Dowd on behalf of the objector, the intellectual

9    property patent licensor.  A clarification, we did submit a

10   declaration and it's my understanding that we have an agreement

11   with debtor's counsel that it could be -- it's admissible

12   insofar as it goes for the purposes of giving us standing to

13   raise the legal issues that will be relevant for this hearing.

14   It's not being offered with respect to a determination of an

15   amount of a cure claim.  We agree that there will be further

16   discovery on that at a later date.

17        THE COURT:  Okay.

18        MS. DOWD:  In terms of some of the objections that we

19   note, do go to the issue of the cure amount and we agree and

20   understand that those are for a later hearing.  However, we did

21   object to the scope of the third-party releases to the extent

22   that they impact these world-wide licenses that we've granted.

23   Our concern is the breadth of the releases in terms of not

24   wanting to cut off our rights against parties that are not

25   covered by the license agreement such that if we have a cure

81

1    claim against the debtor and it's assumed, if the third-party

2    release is to broad, for example for goods that they sell in

3    the aftermarket, you could read it to have released that.  I'm

4    not sure that that was their intent but we object to the

5    breadth of the third-party release which is a confirmation

6    objection.

7              THE COURT:  All right.  Okay.  Well it sounds to me,

8    then, that if this isn't resolved during the lunch break it

9    will be dealt with at oral argument because it really does

10   go -- it's not really an evidentiary issue so much as an

11   argument about the release language.

12             MS. DOWD:  Yes, Your Honor.

13             THE COURT:  Okay.  But it may be resolvable at the

14   lunch break.  If the particular concern that Audio MPEG has

15   about the release, I'm not sure -- I'm not sure this is

16   something the debtors mean to cover.

17             MR. BUTLER:  Your Honor, we can continue to talk

18   with -- we've been talking with this particular objector for --

19             THE COURT:  Okay.

20             MR. BUTLER:  So we'll continue those discussions at

21   lunch.

22             THE COURT:  All right.  Well, now that things are

23   imminent maybe everyone'll be a little more focused.

24             MR. BUTLER:  Your Honor, the next objection is

25   objection 11888, Fujikura America, Inc.  This is objections

82

1   relating to certain executory contracts to be assumed by the

2   debtors, including contracts for which they allegedly did not

3   receive cure notices.  And they assert the plan must provide

4   for the payment in cash on the effective date of all defaults

5   under these executory contracts.  And insofar as the objection

6   is that it has to be paid on the effective date, that's not

7   what our plan says.  Our plan says on the later of the

8   effective date or the date in which the cure claim is, if they

9   have a cure claim, that cure claim is something that we

10  allow by --

11          THE COURT:  Okay.  So this is an issue of law too.

12          MR. BUTLER:  Yes.

13          THE COURT:  All right.  So we'll deal with this

14  during oral argument.

15          MR. BUTLER:  I don't know whether Fujikura's here.

16          MR. DREMLUCK:  Your Honor, may I be heard?

17          THE COURT:  Yes.  I'm just now trying to figure out

18  whether we're going to have -- whether you're -- you're not

19  putting on evidence are you?

20          MR. DREMLUCK:  No, I'm not, Your Honor.  I think we

21  can resolve this.  And if I may, Robert Dremluck, Seyforth Shaw

22  for Fujikura America.

23          What's happened is this, there are up to about five

24  executory contracts that seemed to have slipped through the

25  cracks.  I've shared some information with representative of

83

1    the company earlier this morning with respect tot hose.  And I

2    think what we can do during the lunch break is identify three

3    of those five contracts that continue to be ongoing and the

4    cure amounts that we believe are due that did not get a cure

5    notification from the debtor.  It's really a housekeeping

6    matter, I think, to clean up this issue as to what the cure

7    amount is and then treat it under the plan as -- as a cash

8    cure.

9           THE COURT:  Okay.  If it can be resolved, that's

10   fine.  If it -- if there's an open cure dispute and you still

11   have your plan objection then I'll resolve it at oral argument

12   based on the law.

13          MR. DREMLUCK:  Understood.  Thank you, Judge.

14          THE COURT:  Okay.

15          MR. BUTLER:  Okay.  Your Honor, the next objection

16   that I have as still pending is objection docket number 11894.

17   This is AT&T who objects to the plan on the basis that the

18   contracts are to be assumed without payment in full of the pre-

19   petition and post-petition amounts owed.  And they're asking us

20   to be compelled -- for you to compel us to cure all the

21   defaults under the assumed contract.

22          We don't view this as an objection to confirmation.

23   We think article 8 of the plan provides all of the mechanics

24   for how to deal with this issue.

25          THE COURT:  All right.

84

1          MR. BUTLER:  That's -- that's --

2          THE COURT:  Is anyone here for AT&T?  Well, again,

3     this is similar, I think, to the Fujikura issue except that

4     there's no chance of resolving it in the interim.  And so, I'll

5     rule on it as a matter of law as to what a debtor's duty is

6     when there's a pending --

7          MR. BUTLER:  Thank you, Your Honor.

8          THE COURT:  -- motion to assume or reject as far as

9     the timing of when that has to be performed.

10          MR. BUTLER:  Thank you, Your Honor.  Your Honor,

11     11908 is the next -- docket 11908 is the next objection.  This

12     is an objection by Riverside Claims, LLC, which asserts that

13     the plan violates Sections 1129(a)(1) and 1122 of the Code by

14     misclassifying things.  They have a classification objection.

15     They have an objection that the plan doesn't pay in full, that

16     it's not providing fair and equitable treatments of claims, it

17     violates the absolute priority rule.  That -- that post-

18     petition interest should accrue until the effective date of the

19     plan not just until January 31, 2008 as the plan currently

20     states.  And that we can't meet the cramdown tests, which I

21     think are inapplicable here, but the cramdown tests, under

22     1129(b), they have -- they object to sub-con and a variety of

23     other basis.

24          THE COURT:  Okay.  Is counsel for Riverside here?

25          MR SCHMIDT:  (Indiscernible).  I don't know if you

85

1    can hear me way in the back here.

2            THE COURT:  I can.  Do you anticipate presenting

3    evidence?

4            MR. SCHMIDT:  I don't, Your Honor.  And I'd just like

5    the opportunity to speak with debtor's counsel during the lunch

6    break and perhaps this is resolvable.

7            THE COURT:  Okay.  Otherwise we'll deal with it at

8    oral argument.

9            MR. BUTLER:  All right.  Your Honor, the next

10   objection that's still pending is at docket number 11927, the

11   Timken Company.  They are asserting unfair discrimination

12   between the treatment for cured claims and general unsecured

13   claims because cured claims aren't getting post-petition

14   interest and unsecured claims are.

15           THE COURT:  Okay.  Is anyone here for Timken?

16           MR. SULLIVAN:  James Sullivan, McDermott Will & Emery

17   on behalf of Timken, Your Honor.

18           THE COURT:  Okay.

19           MR. SULLIVAN:  We wouldn't anticipate any evidentiary

20   issues.

21           THE COURT:  All right.  So again this is just a

22   legal -- a legal dispute.

23           MR. BUTLER:  Your Honor, the next objector is at

24   docket number 11935.  This is Law Debenture Trust Company of

25   New York.  And this is an objection to the mechanics in the

86

1    plan on how their fees are being paid and they're therefore

2    asserting a violation of 1123(a)(4).  I think someone's here

3    from --

4              MR. JONAS:  Yes, Your Honor.  Jeff Jonas from

5    Brown Rudnick for Law Debenture.

6              THE COURT:  Is there -- is there -- there was some

7    allusion in the debtor's reply brief that you all are still

8    discussing how to deal with the indentured trustee fee issue?

9              MR. BUTLER:  We had proposed mechanics; so far those

10   mechanics have been unacceptable to the indentured trustee.

11             THE COURT:  All right.  Well, if they're not

12   acceptable I'll deal with this at -- in oral argument.

13             MR. FOX:  Your Honor, Edward Fox.  Wilmington Trust

14   also has the same objection, just so you're aware.  There is

15   some changes that were made in the proposed confirmation order.

16             THE COURT:  I saw it.  Yeah, I saw that.

17             MR. FOX:  We sent back to the debtors, last evening,

18   and I have a copy for them if they need hard copies, of some

19   additional language to address the mechanical issues that, you

20   know, doesn't go to the substance of it but in our view would

21   then resolve that issue.

22             THE COURT:  Okay.  Well maybe -- maybe you can --

23             MR. FOX:  Yeah, I would hope that we can --

24             THE COURT:  -- talk about that with one of the

25   debtor's counsel and Law Debenture's counsel.

87

1        MR. BUTLER:  Your Honor, docket number 11938 is the

2   UAW objection which is proceeding.  Docket number 11939 is the

3   lead plaintiff and the prospective class objection which, I

4   think, goes, I think, to a release point actually.

5        THE COURT:  I'm aware -- there's no evidence on this

6   one.  This is just discuss at oral argument, right?

7        UNIDENTIFIED ATTORNEY:  That's correct, Your Honor.

8        THE COURT:  Okay.

9        UNIDENTIFIED ATTORNEY:  And there will be a second

10  presentation on our settlement papers.

11       THE COURT:  Right.  That may moot it.  Okay.

12       MR. BUTLER:  Your Honor, the next objection, I'm now

13  on page 28, going to docket number 11940 is the objection filed

14  by certain retiree claimants.  This was a protective objection

15  that was filed in the event that a settlement was unable to be

16  finalized.  I know we've been working on that.  I don't know

17  what the results are and whether there are counsel here to

18  press the objection.

19       THE COURT:  Okay.

20       MR. BUTLER:  This is the retiree objection.

21       MR. SCHMIDT:  Your Honor, Erik Schmidt again,

22  Herrick Feinstein.  I understood that this was a different

23  process (indiscernible).  I'm only local counsel.  Counsel was

24  going to appear by phone.  I don't think there are evidentiary

25  issues, Your Honor.

88

1          THE COURT:  Okay.  All right.

2          MR. BUTLER:  The --

3          THE COURT:  Well they -- there better be -- there

4    should be some confirmation of it because then otherwise either

5    side runs some risk that I'm going to make a ruling that they

6    won't like.  So --

7          MR. BUTLER:  Right.  I mean --

8          THE COURT:  But since it was couched the way it was

9    couched, I have a feeling -- well, I think they better get in

10   touch with the debtor.

11         MR. BUTLER:  Your Honor, objection -- docket number

12   11944 is the objection of Equity Corporate Housing.  This is an

13   objection arguing that the discount rights offering violates

14   502(c) the absent (indiscernible) rule, and other matters.

15   They have a series of objections and this is -- this is a

16   creditor -- may be -- is an alleged creditor of class 6C.

17         THE COURT:  Okay.  Is anyone here for that objector

18   or on the phone for Equity Corporate Housing?  All right.  So

19   there's -- they're going to rely on their papers, I guess.

20         MR. BUTLER:  Okay.  Your Honor, the next objection

21   that I have marked as still being pending is objection 11957.

22   And this is the objection of Fiduciary Counselors, Inc., where

23   they joined the PBGC objections and arguing that there is a

24   problem with Section 722(d).  I think this is -- they're

25   joining the PBGC objection which, I think, we have resolved

89

1   provided the language that we agree with the PBGC's, a fact

2   accepted by Your Honor, and they also -- they also had asked

3   for some other findings under the plan.  I don't know whether

4   they're here to press the objection or not.

5          MS. CALOWAY:  Your Honor, Mary Caloway, Buchanan

6   Ingersoll and Rooney on behalf of Fiduciary Counselors.  I just

7   learned this morning from Mr. Butler's presentation that the

8   objection of the PBGC had been resolved.  That had been our

9   primary concern and why we filed a joinder.  Subject to, over

10  the lunch break, confirming that the language is what we were

11  shown yesterday, that portion of our objection would -- would

12  be resolved.

13         We had asked for the addition of four words to the

14  order.  It's not the end of the world if they're not in.  I

15  disagree that their addition would render the confirmation

16  order redundant somehow.  But to answer your question --

17         THE COURT:  Okay.

18         MS. CALOWAY:  -- we probably won't be pressing it and

19  there would certainly be no evidence.

20         THE COURT:  Okay.  Thank you.

21         MR. BUTLER:  Objection number 11973 is the ERISA lead

22  plaintiffs.  I think this is the same -- the same as the 11939.

23         MR. GORRO:  That's right, Your Honor.  Gary Gorro for

24  the ERISA lead plaintiffs.

25         THE COURT:  This may be -- this may be mooted out by

90

1    the hearing on the -- on the MDL settlement.

2         MR. GORRO:  I hope it is, Your Honor.

3         THE COURT:  Okay.

4         MR. BUTLER:  The next objection, Your Honor, is

5    objection 12012 from Wilmington Trust Company.

6         MR. FOX:  Your Honor, we just -- Edward Fox.  We just

7    addressed the fee issue.  The other issue is whether the

8    confirmation is appropriate until they have the commitments.

9         THE COURT:  And do you have any -- any witnesses or

10   evidentiary presentation on the feasibility issue?

11        MR. FOX:  It's all in already.  Just five, ten

12   minutes argument.  That's all.

13        THE COURT:  Okay.  All right.

14        MR. BUTLER:  The next -- the next objector is --

15   that's open is at 12013.  this is Mr. Larry Vanderpool who

16   was -- it was filed after the objection deadline but objects to

17   the information provided to employees in connection with

18   various union memoranda understanding and asserts the

19   information provided was misleading.

20        THE COURT:  Okay.  Is Mr. Vanderpool here or on the

21   phone or his counsel?  All right.  So we'll deal with that at

22   oral argument.

23        MR. BUTLER:  The next objection I already mentioned,

24   Mr. Helizon.  We already discussed this.  So the next objection

25   would be, and these are all -- most of these now are late filed

91

1    objections.  Objection number 12017 from Robert W. Ward.  The

2    objector asserts as a shareholder he's entitled to the same

3    percentage of organized -- of ownership in reorganized Delphi

4    as he had in pre-petition Delphi.  So we'd like to ride

5    through.  And the -- that's his assertion, Your Honor.

6              THE COURT:  Okay.  Mr. Ward, are you here?  All

7    right.  That'll be dealt with.

8              MR. BUTLER:  Okay.  We've dealt with 12026 which will

9    be argued.  The next one is docket number 12079,

10   Orwell W. Write (ph.).  An assertion because he worked for GM

11   for over thirty years, his pension plan should not have been

12   transferred to Delphi upon separation.  And that his flow back

13   opportunities to GM should have better explained to him.  This

14   was a late filed objection.

15             THE COURT:  Okay.  Mr. Write are you on the phone or

16   is counsel for Mr. Write on the phone?  All right.  So that'll

17   be dealt with at oral argument.

18             MR. BUTLER:  The next objection, Your Honor, is the

19   objection of Mr. Miller, Keith Miller.  He asserts that he was

20   not provided sufficient time to return his ballot because he

21   did not receive it from his proxy in a timely manner.  And his

22   objection is late filed at docket number 12080.

23             THE COURT:  Okay.  Did he make a provisional vote?

24             MR. BUTLER:  I don't know, Your Honor.  I don't -- I

25   don't believe so but I don't know.

1          THE COURT:  Do we know who he is?  Is he a creditor

2     or --

3          MR. BUTLER:  I don't know anything about Mr. Miller

4     other than --

5          THE COURT:  Than what he filed.

6          MR. BUTLER:  -- what he filed.  I could go back

7     and --

8          THE COURT:  Well, it may be moot.  But we'll deal

9     with it at oral argument.

10          MR. BUTLER:  Docket number 12081 is the next

11    objection.  This is the Monroe County Water Authority.  And

12    they -- they've -- they filed late objection as a utility.

13    They assert the payment of the claims in the form of stock is

14    unacceptable.  That they'll -- that the -- Monroe County is not

15    permitted to accept stock.

16          THE COURT:  Okay.  Is anyone here from Monroe County

17    or on the phone?  Okay.  So that'll get dealt with at oral

18    argument.

19          MR. BUTLER:  And finally, Your Honor, is the late

20    filed letter objection of Naomi M. Fry (ph.).  Ms. Fry asserts

21    that new common stock should be valued at $79.93 cents per

22    share.  This should be effectuated for all shareholders as if

23    they filed a class action.

24          THE COURT:  Okay.  Is Ms. Fry present or on the phone

25    or her representative?  Okay.

93

1    MR. BUTLER:  Your Honor, for the record I ask those

2  on the telephone and those here in the hearing room whether

3  there are any objections that have not been waived or withdrawn

4  that I have not called and discussed with the Court?

5    So, Your Honor, I think those are the balance of the

6  objections.  I think, Your Honor, it would be helpful to take

7  an extended lunch break so that we can try and work with the

8  folks that have been -- who have indicated they want to proceed

9  with their objections and perhaps come back at 2:30 or

10  something like that.

11    THE COURT:  Okay.  I think that's a good idea.  I

12  would like to meet, however, and everyone else can go

13  including, you know, your colleagues.  But I'd like to meet

14  with counsel for the debtors and the two unions if I could,

15  just briefly.  So my clerks will bring you around to the

16  conference room.

17    MR. BUTLER:  Thank you, Your Honor.

18    (Recess from 12:35 till 3:03 PM)

19

20

21

22

23

24

25

94

1

2                              **I N D E X**

3

4    **WITNESS**              **EXAMINATION BY**        **PAGE**

5    Dean R. Unrue           Mr. Butler                60

6    Randall Eisenberg       Mr. Butler                68

7

8                          **E X H I B I T S**

9    **DEBTOR'S**             **DESCRIPTION**           **PAGE**

10   59                      Declaration of            45

11                           Eric Kurtzman

12   554                     Deposition of Eric        45

13                           Kurtzman

14   60                      Declaration of            46

15                           Jane Sullivan

16   553                     Deposition of Jane        46

17                           Sullivan

18   95                      Voting Reports and        46

19                           Certification of

20                           Balloting Agents

21   1-555                                             53

22

23                          **RULINGS**

24                          Page      Line

25   Settlement is Approved      31        8

**VERITEXT/NEW YORK REPORTING COMPANY**

95

1

2                          C E R T I F I C A T I O N

3

4       I, Pnina Eilberg, court approved transcriber, certify that the

5       foregoing is a correct transcript from the official electronic

6       sound recording of the proceedings in the above-entitled

7       matter.

8

9       _____  January 23, 2008

10      Signature of Transcriber                  Date

11

12      Pnina Eilberg

13      typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25