TOGUT, SEGAL & SEGAL LLP
Conflicts Counsel for Delphi Corporation, *et al.*,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Andy Winchell (AW-6590)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re:<br><br>DELPHI CORPORATION, *et al.*,<br><br>                      Debtors.<br>-----------------------------------------------------------x | HEARING DATE: Feb. 29, 2008<br>         AT: 10:00 a.m.<br><br><br>Chapter 11<br>Case No. 05-44481 [RDD]<br><br>Jointly Administered |

**DEBTORS' MOTION FOR AN ORDER
PURSUANT TO BANKRUPTCY CODE SECTION 363
AND BANKRUPTCY RULE 9019 APPROVING PATENT
<u>LICENSE SETTLEMENT AGREEMENT WITH DENSO CORPORATION</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors in possession, including Delphi Automotive Systems, LLC ("DAS LLC", together with Delphi, the "Debtors") in the above-captioned cases, by their undersigned counsel, as and for their motion (the "Motion") for an Order pursuant to section 363 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a settlement agreement (the "Patent

License Settlement Agreement")[1] by and among Denso Corporation (the "Claimant") and the Debtors, respectfully represent that:

## PRELIMINARY STATEMENT

1.      The Debtors seek approval of the Patent License Settlement Agreement with Claimant pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.  As described below, the Patent License Settlement Agreement resolves a specific dispute among the Debtors and the Claimant and eliminates the chance of costly and potentially damaging litigation between the Debtors and the Claimant.  The Patent License Settlement Agreement also eliminates three claims in the amount of $697,778 that have been asserted against the Debtors' estates.  For the reasons set forth below, the Debtors have concluded that the settlement embodied in the Patent License Settlement Agreement is fair and equitable, falls well within the range of reasonableness, is in the best interest of the Debtors' estates and should be approved.

## BACKGROUND

**A.      The Debtors' Bankruptcy Cases**

2.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered Orders directing the joint administration of the Debtors' Chapter 11 cases.

---

[1]    The Patent License Settlement Agreement has been sealed pursuant to an Order of the Court dated February 1, 2008.

2

3. On October 17, 2005, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases. On April 28, 2006 the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5. The statutory predicate for the relief requested herein is Rule 9019 of the Bankruptcy Rules.

6. On January 25, 2008, this Court entered its Findings of Fact, Conclusion of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fred. R. Bankr. P. 3020 Confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as modified.

**RELIEF REQUESTED**

7. The Debtors seek approval of the Patent License Settlement Agreement with Claimant pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019. The Debtors regularly enter into agreements that resolve actual and potential disputes pertaining to patent rights and other forms of intellectual property. Thus, the Debtors believe that their entry into the Patent License Settlement Agreement is within the ordinary course of business. Nevertheless, the Debtors seek approval of the Patent License Settlement Agreement out of an abundance of caution and because it eliminates proofs of claim filed in this case.

**BASIS FOR RELIEF**

A.  Background to the Proposed Patent License Settlement Agreement

   (i)   The Debtors' Variable-Valve Timing Technology

   8.   Variable-valve timing ("VVT") is a technology designed to enhance the performance of engines by adjusting the timing of the opening and closing of their valves according to environmental and performance conditions. One popular type of VVT technology, known as "cam phaser VVT," uses a camshaft, that varies the timing of the valves through an extra joint that allows irregularly shaped valve-actuating cams on the camshaft to be rotated to varying positions relative to the position of the crankshaft.

   9.   Commencing in 2005, the Debtors introduced a new family of cam phaser VVT products (the "Delphi VVT") having certain features such as an axial locking pin to prevent unwanted slippage of the camshaft joint. The Delphi VVT has been successful and profitable in the marketplace. Claimant later asserted that certain features in Delphi VVT infringed on Claimant's patents.

   (ii)  The Denso Patent Claims

   10.  In July 2005, Claimant sent correspondence to the Debtors indicating that the Claimant believed that the Debtors' use of the Dephi VVT technology might infringe on patents the Claimant owns.

   11.  On August 5, 2006, Claimant filed proof of claim numbers 12339 ("Claim 12339"), 12340 ("Claim 12340"), and 12341 ("Claim 12341") (together, the "Denso Claims") against DAS LLC, Delphi Technologies, Inc., and Delphi Corporation, respectively, each of which asserted an unsecured non-priority claim in the amount of $697,778. In each of the Denso claims, Claimant alleged that the Debtors' manufacture of Delphi VVT products violated certain of the Claimant's patent rights.

4

12. On November 2, 2006, the Debtors objected to the Denso Claims pursuant to the Debtors' (i) Third Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (a) Claims With Insufficient Documentation, (b) Claims Unsubstantiated By Debtors' Books And Records, And (c) Claims Subject To Modification And (ii) Motion To Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection").

### The Proposed Settlement Agreement

13. After diligence and extensive arms-length negotiations between the Debtors and Claimant, the Parties have negotiated the Patent License Settlement Agreement, subject to Bankruptcy Court approval, the significant portions of which are[2]:

    a) <u>Condition Precedent</u>. The Patent License Settlement Agreement will be effective upon the entry of an Order by this Court approving the Patent License Settlement Agreement and such Order becoming a Final Order (the "Effective Date");

    b) <u>License for Technology</u>. The Patent License Settlement Agreement provides for the Debtors to use the Delphi VVT technology pursuant to a license agreement with Claimant. The Debtors shall pay a royalty to Claimant based upon the sales of products containing the Delphi VVT technology.

    c) <u>Withdrawal of Denso Claims</u>. Claimant, on its behalf and on behalf of each of its predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents, acknowledges and agrees that the Denso Claims will be deemed withdrawn with prejudice.

14. Given the risks and costs involved in litigation against Claimant, the withdrawal of the Claims, and the concomitant reduction of claims against the

---

[2] The description of the Patent License Settlement Agreement herein is a summary only. The actual terms of the Patent License Settlement Agreement, which has been filed under seal pursuant to an Order of the Court dated February 1, 2008, govern the parties' agreement.

5

Debtors, the Debtors have concluded that the Patent License Settlement Agreement is fair and reasonable and in the best interests of the Debtors and their creditors.

## Applicable Authority

15. The Debtors respectfully request the entry of an Order pursuant to Rule 9019(a) of the Bankruptcy Rules approving the Patent License Settlement Agreement and the settlement terms contained therein. Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are "a normal part of the process of reorganization …." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Comm'ns Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

16. Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate. See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Comm'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it."). In general, compromises in the bankruptcy context should be approved unless they "'fall below the lowest point in the range of reasonableness.'"

6

Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

17.     The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate: (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors. TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

18.     Courts in this district have further elaborated on these factors to consider, including: (a) the balance between the likelihood of plaintiffs' or defendants' success should the case go to trail vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the competency and experience of counsel who support the settlement, and (d) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. Adelphia Comm'ns, 327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 802 (Bankr. S.D.N.Y. 1988).

19.     The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances. See Adelphia Comm'ns, 327 B.R. at 159-60; see also Penn Centr., 596 F.2d at 1114. Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable, "In re Lee Way Holding Co., 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and

falls "'within the reasonable range of litigation possibilities'". In re Telesphere Comm'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted). To that end, courts should not substitute their own judgment for that of the debtor, but rather should "'canvas the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'" Adelphia Comm'ns, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17 F.3D 600 (2d Cir. 1994).

20.     The proposed settlement eliminates $697,778 against the Debtors' estates and the risks attendant to litigation of objections of those Claims. Moreover, the proposed Patent License Settlement Agreement eliminates the litigation risk concerning the Debtors' ongoing use of the Delphi VVT technology. Finally, the proposed Patent License Settlement Agreement permits the Debtors to continue to use and develop the Delphi VVT technology going forward, which enhances the Debtors' ability to introduce a profitable product in the marketplace.

21.     Based upon the foregoing, the Debtors respectfully submit that the Patent License Settlement Agreement is an appropriate exercise of the their business judgment and represents a fair, reasonable and extensively negotiated settlement that falls within the range of reasonableness, and which is in the best interests of the Debtors' estates.

**Notice**

22.     Notice of this Motion has been provided in accordance with the Amended Eighth Supplemental Order Under 11 U.S.C. Sections 102(a) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and

Certain Notice, Case Management, and Administrative Procedures (Docket No. 5418) and the Settlement Procedures Order.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum of Law

23.  Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (a) authorizing and approving the Patent License Settlement Agreement and (b) granting them such other and further relief as is just.

Dated:  New York, New York
        February 5, 2008

                                                DELPHI CORPORATION, *et al.*
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000

9