1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION ET AL,


        Debtor.


- - - - - - - - - - - - - - - - - - - - -x

            United States Bankruptcy Court

            One Bowling Green

            New York, New York


            January 17, 2008

            3:22 PM



B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1

2   A P P E A R A N C E S :

3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4          Attorneys for Debtor

5          333 West Wacker Drive

6          Chicago, IL 60606

7

8   BY:   JOHN WM. BUTLER, JR., ESQ.

9          ALBERT L. HOGAN, III, ESQ.

10

11

12  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

13         Attorneys for Debtor

14         Four Times Square

15         New York, NY 10036

16

17  BY:   KAYALYN A. MARAFIOTI, ESQ.

18         ADLAI S. HARDIN, ESQ. (Telephonically)

19

20

21

22

23

24

25

3

1   LATHAM & WATKINS LLP

2        Attorneys for Creditors Committee

3        885 Third Avenue

4        New York, NY 10022

5

6   BY:   ROBERT J. ROSENBERG, ESQ.

7

8

9   WEIL GOTSHAL & MANGES LLP

10        Attorneys for General Motors

11        767 Fifth Avenue

12        New York, NY 10153

13

14   BY:   MICHAEL KESSLER, ESQ.

15        JEFFREY L. TANENBAUM, ESQ.

16

17

18   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

19        Attorneys for Equity Committee

20        One New York Plaza

21        New York, NY 10004

22

23   BY:   BONNIE STEINGART, ESQ.

24        JENNIFER LAUREN RODBERG, ESQ.

25

4

1    KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP

2         Attorneys for Wilmington Trust Company

3         599 Lexington Avenue

4         New York, NY 10022

5

6    BY:   EDWARD M. FOX, ESQ.

7

8    COHEN, WEISS AND SIMON LLP

9         Attorneys for UAW

10        330 West 42nd Street

11        New York, NY 10036

12

13   BY:   PETER DECHIARA, ESQ.

14        BABETTE CECCOTTI, ESQ.

15

16

17   WHITE & CASE LLP

18        Attorneys for Appaloosa Management L.P. & Harbinger

19        1155 Avenue of the Americas

20        New York, NY 10036

21

22   BY:   DOUGLAS P. BAUMSTEIN, ESQ.

23        THOMAS E. LAURIA, ESQ.

24        MICHAEL SHEPERD, ESQ.

25        JACK ROTENSTEIN, ESQ. (Telephonically)

5

1   LOWENSTEIN SANDLER PC

2       Attorneys for Lead Plaintiffs

3       1251 Avenue of the Americas

4       New York, NY 10020

5

6   BY:   S. JASON TEELE, ESQ.

7       MICHAEL S. ETKIN, ESQ.

8

9

10   KENNEDY, JENNIK & MURRAY, PC

11       Attorneys for IUE-CWA

12       113 University Place

13       New York, NY 10003

14

15   BY:   SUSAN M. JENNIK, ESQ.

16       THOMAS M. KENNEDY, ESQ.

17

18

19   GOODWIN PROCTER LLP

20       901 New York Avenue N.W.

21       Washington, DC 20001

22

23   BY:   MICHAEL K. ISENMAN, ESQ.

24       JOHN MOUSTAKAS, ESQ.

25       RICHARD WYNER, ESQ.

6

GOODWIN PROCTOR LLP

    599 Lexington Avenue

    New York City, NY 10022

BY:   ALLAN S. BRILLIANT, ESQ.


ARENT FOX PLLC

    Attorneys for Audio MPEG, Inc. & SISVEL

    1050 Connecticut Avenue NW

    Washington, DC 20036

BY:   MARY JOANNE DOWD, ESQ.


KELLEY DRYE & WARREN LLP

    Attorneys for PBGC

    101 Park Avenue

    New York, NY 10178

BY:   ERIC R. WILSON, ESQ.

7

1  SEYFARTH SHAW LLP

2        Attorneys for Fujikura America Inc.

3        620 Eighth Avenue

4        New York, NY 10018

5

6  BY:   ROBERT W. DREMLUK, ESQ.

7

8

9  MCDERMOTT WILL & EMERY LLP

10        Attorneys for Timken

11        340 Madison Avenue

12        New York, NY 10017

13

14  BY:   JAMES M. SULLIVAN, ESQ.

15

16

17  WARNER NORCROSS & JUDD LLP

18        900 Fifth Third Center

19        Grand Rapids, MI 49503

20

21  BY:   GORDON J. TOERING, ESQ.

22

23

24

25

8

1    KELLER ROHRBACK PLC

2         Attorneys for ERISA Lead Plaintiffs

3         3101 North Central Avenue

4         Phoenix, AZ 85012

5

6    BY:   GARY A. GORRO, ESQ.

7

8

9    BUCHANAN INGERSOLL & ROONEY PC

10        Attorneys for Fiduciary Counselors Inc.

11        1000 West Street

12        Wilmington, DE 19401

13

14   BY:   MARY F. CALOWAY, ESQ.

15

16

17   STEVENS & LEE, P.C.

18        Attorneys for Equistar Chemicals

19        1415 Marlton Pike East

20        Suite 506

21        Cherry Hill, NJ 08034

22

23   BY:   RONALD L. GLICKS, ESQ.

24        (Telephonically)

25

9

1

2   BARNES & THORNBURG, LLC

3         Attorneys for Bank of America

4         300 Ottawa Avenue NW

5         Suite 500

6         Grand Rapids, MI 49503

7

8   BY:   JOHN T. GREGG, ESQ.

9         (Telephonically)

10

11

12  MICHIGAN DEPARTMENT OF ATTORNEY GENERAL

13        Attorneys for MI Department of Environmental Quality

14        525 Ottawa Street

15        6th Floor

16        Lansing, MI 48933

17

18  BY:   CELESTE R. GILL, ESQ.

19        (Telephonically)

20

21

22

23

24

25

10

1   PIMA COUNTY ATTORNEY'S OFFICE

2        Attorneys for Pima County

3        32 N. Stone

4        Suite 1400

5        Tucson, AZ 85701

6

7   BY:   GERMAN YUSUFOV, ESQ.

8        (Telephonically)

9

10

11  TOGUT SEGAL & SEGAL, LLP

12        One Penn Plaza

13        New York, NY 10119

14

15  BY:   NEIL BERGER, ESQ.

16

17

18  UNITED STATES DEPARTMENT OF JUSTICE

19  OFFICE OF THE UNITED STATES TRUSTEE

20        33 Whitehall Street

21        21st Floor

22        New York, NY 10004

23

24  BY:   ALICIA M. LEOHNAHRD, ESQ.

25

11

1    BROWN RUDNICK BERLACK ISRAELS LLP

2         Attorneys for Law Debenture Trust Company

3         One Financial Center

4         Boston, MA 02111

5

6    BY:   JEFFREY L. JONAS, ESQ.

7

8

9    HERRICK FEINSTIEN, LLP

10        Attorneys for Riverside

11        2 Park Avenue

12        New York, NY 10016

13

14   BY:   ERIK SCHMIDT, ESQ.

15

16

17

18

19

20

21

22

23

24

25

12

1        P R O C E E D I N G S

2        THE COURT:  Please be seated.  Okay.  We're back on

3    the record in Delphi Corporation.  When we adjourned, we

4    left it that at least two or three objectors were going to

5    try to speak with the debtors to see if they could resolve

6    some of their objections, for example, Pima County and the

7    fiduciary corporation.  So first, why don't I hear of any

8    of those -- any objections have been resolved over the

9    course of the break?

10        MR. BUTLER:  Thank you, Your Honor.  Again, Jack

11   Butler on behalf of the debtors.  We are here, Your Honor,

12   on that portion of the hearing.  We have had a chance over

13   the course of the noon recess to partially settle one

14   objection and to completely settle eight other objections.

15        THE COURT:  Okay.

16        MR. BUTLER:  And so I'll indicate what those

17   objections are now using the chart that is on the screen,

18   which is page 27 of exhibit, I believe, 158.

19        MALE SPEAKER:  Object -- could I just interrupt for

20   one second?  I apologize, but, Your Honor, in view of the

21   scheduling that we've discussed, at least my office and I

22   would like to go back to our office and begin to work on

23   what we talked about, so --

24        THE COURT:  That's fine.

25        MALE SPEAKER:  -- if you don't mind, we'll be --

13

1      THE COURT:  That's fine.  And in that regard, let me

2  just say that we -- looking at the clock, looking at the

3  calendar for today it seemed appropriate to proceed as

4  follows with the rest of today's hearing.  It appears to

5  me that the only considerable evidentiary aspect of the

6  confirmation hearing to come involves the master employee

7  or master executive compensation aspect of the debtor's

8  request for confirmation.  It appeared to me to be more

9  efficient to leave that portion of the record until

10  tomorrow and that for today, we would deal with that

11  portion of Mr. Miller's testimony that doesn't deal with

12  employee matters, but rather deals with the rest of the

13  debtor's case.

14      Then I would hear oral argument on the remaining

15  objections, other than the two union objections, and then

16  we pick up tomorrow with the evidentiary record on the

17  employee/union issues.

18      So if there are people here who are here solely for

19  the employee/union matters and you don't want to stay,

20  you're certainly free to go at this point.

21      MALE SPEAKER:  And what time will we resume tomorrow

22  morning, Your Honor?

23      THE COURT:  Ten o'clock.

24      MALE SPEAKER:  Thank you, Your Honor.

25      MALE SPEAKER:  Thank you, Your Honor.

14

1      FEMALE SPEAKER:  Thank you, Your Honor.

2      THE COURT:  Okay.  All right.  So again, Mr. Butler.

3      MR. BUTLER:  All right.  So turning back again to

4  page 27 of Exhibit 158, which was the remaining

5  objections, I'll start with Pima County, which is the one

6  you asked about, Your Honor.  That has been settled.

7  That's at Docket Number 11823.  We have agreed to

8  represent on the record that which I think Your Honor had

9  discussed before we got off the record earlier today and

10  that is the debtors do agree that with respect to secured

11  claims post-petition interest includes interest that

12  accrues up to the date the claim is paid in full.  I think

13  that, in fact, is -- they're secured claims.  They get

14  interest in accordance with their claim.

15      THE COURT:  If they're over secured.

16      MR. BUTLER:  If they're over secured, yes.

17      THE COURT:  Okay.

18      MR. BUTLER:  Correct.  To the extent they're secured.

19  We will add language to the confirmation order.  This sis

20  the same language we have agreed to with other taxing

21  authorities, just to state it on the record.  There will

22  be a provision added to the confirmation order with

23  respect to secured tax claims.  It says, "Notwithstanding

24  ending in Article 5.1 of the plan to the contrary, any

25  holder of the secured claim which claim arose as a result

15

1      of a tax secured by a lien shall retain its lien in

2      accordance with applicable nonbankruptcy law until the

3      claim is paid in full with post-petition interest as

4      provided in the plan and the payment of the secured claim

5      shall not include the treatments set forth in Article 2.2

6      of the plan.  This is to make sure that they retain their

7      liens," which is this was not a liens-driven case.

8           THE COURT:  All right.  And that seems implicit in

9      the language anyway, but I don't mind repeating it to

10     alleviate people's concern.

11          MR. BUTLER:  So that resolves Pima County 1123, so

12     they're not settled.

13              We were able to resolve audio MPEG, Inc.  That's

14     at docket --

15          MALE SPEAKER:  Your Honor, if I may interrupt.  I'm

16     just on the line since [inaudible] you were [inaudible].

17          THE COURT:  Yes, you may.  Thank you very much.

18          MALE SPEAKER:  Thank you very much.

19          THE COURT:  Okay.  Audio MPEG?

20          MR. BUTLER:  Yeah, docket number -- docket number

21     11883, Audio MPEG, Inc. has also settled.  I will before

22     we close the record today read a couple things into the

23     record with respect to that, everything being worked out,

24     Your Honor, but that is now resolved so I owe you that.

25              The next matter that's settled is docket number

16

1    11888, Fujikura America, Inc.  They have -- this is a cure

2    notice issue that I believe Mr. Berger resolved earlier in

3    the matter, but this is just a cure matter.  There's

4    nothing that needs to be said here on the record.

5         THE COURT:  This is Fujikura, right?

6         MR. BUTLER:  Fujikura.  Excuse me.

7         THE COURT:  Okay.  Okay.  So that objection is going

8    to be withdrawn?

9         MR. BUTLER:  Correct, Your Honor.

10        THE COURT:  All right.

11        MR. BUTLER:  The next matter that's been resolved is

12   docket number 11908, the Riverside Claims, LLC objection.

13   That is a claims reconciliation matter.  We're treating it

14   like we treated LSI and like we treated the other trade

15   claimants earlier.  We're just going to reconcile their

16   claims.  We talked to them about it in good faith --

17        THE COURT:  All right.

18        MR. BUTLER:  -- a commercial reasonable basis.

19        THE COURT:  There's no agreement as to a certain

20   amount --

21        MR. BUTLER:  No.

22        THE COURT:  -- but you're going to expedite the

23   process to do it on a good faith, commercially reasonable

24   basis?

25        MR. BUTLER:  Correct, Your Honor.

17

1      THE COURT:  Okay.

2      MR. BUTLER:  The next matter that's been settled is

3  we have settled completely the objection of Law Debenture

4  Trust Company of New York at docket number 11935.  We've

5  partially settled the objection of Wilmington Trust

6  Company at docket number 12012 and this has to do with the

7  mechanism to address the fees that would be owed to

8  counsel for the indenture trustee.  There is a mechanism

9  that will go into the proposed confirmation order.  It's

10  been reviewed with the United States Trustee, I believe,

11  and is acceptable to the parties.

12      MR. FOX:  Edward Fox, Your Honor, for Wilmington

13  Trust Company.  Mr. Butler is correct.  We gave him some

14  language to modify the provision of the plan -- or the

15  provision of the confirmation order dealing with this

16  issue.  We've been advised that they've accepted the

17  language that we gave them.  I've also discussed it with

18  Ms. Leonard from the U.S. Trustee's Office.

19      I would just ask Mr. Butler to confirm that we're

20  correct in our expectation that the debtors will be making

21  the distribution to the senior noteholders to Wilmington

22  Trust as a servicer to then be made to the bondholders.

23      MR. BUTLER:  I assume that's correct.  I'm not --

24  that wasn't part of our settlement, so I'm not -- are you

25  asking me a question out the clear blue?  You know, I

18

1       assume that's correct, but I'd like to double-check with

2       our folks now --

3           MR. FOX:  That'd be fine.

4           MR. BUTLER:  -- get with you off the record about

5       the.

6           MR. FOX:  Okay.

7           THE COURT:  Just for my edification having reviewed

8       those objections the two indenture trustees or servicers

9       claims will be recognized on a contract basis, not a

10      503(b) basis?

11          MR. BUTLER:  That's correct, Your Honor.

12         MR. FOX:  Yes.

13         THE COURT:  Okay.  And then there's a mechanism for

14      reviewing the fees as -- under the contract?

15         MR. FOX:  Yeah, I can hand up the market --

16         THE COURT:  No, that's okay.  I just wanted to make

17      sure I understood the basic concept of it.

18         MR. FOX:  The concept is we'll submit the invoices to

19      the debtor, the committee, and the fee committee.  They'll

20      have ten business days to review them.  If they're in

21      accord will be paid.  If they have an issue, then the

22      undisputed portion will be paid.  The disputed portion

23      will be brought before Your Honor to resolve.

24         THE COURT:  And will they be paid like other

25      unsecured claims?

19

1          MR. FOX:  It'll be paid in cash.

2          THE COURT:  Okay.  And that resolves the lien issue?

3          MR. FOX:  Once they're paid, yes.

4          THE COURT:  Okay.

5          MR. JONAS:  Your Honor, Jeff Jonas from Brown

6     Rudnick, the Law Debenture, and that's acceptable to us.

7          THE COURT:  All right.

8          MR. JONAS:  Thank you.

9          THE COURT:  And then the other -- but Mr. Butler said

10    "partially settles."  The other aspect of your objection,

11    Mr. Fox, was on feasibility and that's still open?

12         MR. FOX:  Yes, that's correct.

13         THE COURT:  Okay.

14         MALE SPEAKER:  Your Honor, if I may, I don't want to

15    interrupt your train of thought, but I didn't consider

16    the -- Mr. Fox has characterized his objection as a

17    feasibility objection.  The Committee considers it more of

18    just a timing of the entry of an order issue.

19         THE COURT:  I'm just using shorthand.

20         MALE SPEAKER:  Yeah, well, I just wanted the Court to

21    understand that notwithstanding that we didn't join in

22    Mr. Fox's feasibility objection, we do agree with him that

23    the order should not be entered until the exit financing

24    commitments have been obtained.

25         THE COURT:  But that's for down the road.

20

1        MALE SPEAKER:  Yes.  I just wanted to make sure you

2    were aware of it.

3        THE COURT:  All right.

4        MALE SPEAKER:  Thank you.

5        MR. BUTLER:  Yeah, and we at -- the Committee didn't

6    file an objection.  We can argue all this in oral

7    argument.

8        THE COURT:  And I was just using feasibility as

9    shorthand for that other aspect of his objection.

10       MR. BUTLER:  The next objection that's been settled,

11   Your Honor, is objection -- docket number 11940, retiree

12   claims.  That matter has been resolved.  That had mostly

13   to do with sorting through estimated amounts for the

14   rights offering and related matters, but that has -- that

15   issue has been resolved.

16       THE COURT:  Okay.

17       MR. BUTLER:  I'm also pleased to report, Your

18   Honor --

19       THE COURT:  Not only that issue, but the whole

20   objection is withdrawn?

21       MR. BUTLER:  Correct.  The whole objection has been

22   resolved.

23       THE COURT:  Okay.

24       MR. BUTLER:  I'm also very pleased to report, Your

25   Honor, that objection 11944, Equity Corporate Housing,

21

1   which was the class 6C objection has been resolved.  That

2   was a claims issue, which has been resolved in the claims

3   process, but they're not pressing anything here at the

4   confirmation hearing.

5        THE COURT:  Okay.  And again, there are no promises

6   as to treatment of that claim.  It's just going to be

7   resolved on a good-faith, expedite basis?

8        MR. BUTLER:  I need to check with Mr. Lyons on that

9   one.  Can I have one minute, Your Honor, so I can give you

10  the information correctly?

11            [Pause in the proceedings.]

12        MR. BUTLER:  Your Honor, as I understand it, there's

13  been no special promises made here in connection with

14  this.  There was -- the claim was split into two parts,

15  one that was undisputed by the debtors, which was going to

16  be allowed and the piece that the debtors do not agree

17  with is going to go through the claims process.

18        THE COURT:  Okay.  That's fine.

19        MR. BUTLER:  Your Honor, I think that covers all of

20  the settled objections and partially settled objections.

21        THE COURT:  Okay.

22        MR. BUTLER:  So there should have been eight settled

23  objections.  Yeah, eight settled objections and one

24  partially settled objection from the recitation I made

25  this moment at the commencement of the hearing.

22

1           THE COURT:  All right.  So --

2           MR. BUTLER:  Oh, I didn't mention AT&T.  I'm sorry.

3     Excuse me.  Thank you.  One of the eight I did not -- it

4     was within the eight.  Thank you.  Yeah, I have it.  AT&T

5     entities, Your Honor, at 11894 is also withdrawn.  I had

6     that marked as settled and I didn't read it.

7           THE COURT:  Okay.  And I'm assuming there was no

8     special treatment to them because their objection didn't

9     really call for it.  They just -- it was --

10         MALE SPEAKER:  That's right, Your Honor.  It was a

11    cure issue that had --

12         THE COURT:  It was the type of objection you would

13    have expected from the phone company.

14         MALE SPEAKER:  Right.

15         THE COURT:  Okay.  All right.

16         MR. BUTLER:  So, Your Honor, I believe if I have it

17    correctly -- I just want to make sure I've got it

18    correctly here.

19         MS. DOWD:  Excuse me, Your Honor.  Could I -- I

20    apologize that I didn't get back in the courtroom in time

21    to hear Mr. Butler's presentation about the settlement

22    with my client.  I was on the phone with my client.  As I

23    communicated with my client we do have a settlement, but

24    they wanted to look at the language and neither I nor my

25    client have received that language that was actually

23

1    written up.

2        MR. BUTLER:  I can actually help you out on this.  I

3    didn't read the language.

4        MS. DOWD:  You didn't read it?

5        MR. BUTLER:  I said that we had a settlement and I

6    would read it later on in the hearing.

7        THE COURT:  Right.  He did say that.

8        MS. DOWD:  Thank you.

9        THE COURT:  Okay.

10       MS. DOWD:  And there were some subtle -- which I hope

11   you will resolve -- some subtle open terms, but I think

12   we're, you know, 95 percent there.  Thank you, Your Honor.

13       THE COURT:  That's what I took away from what

14   Mr. Butler said.

15       MR. BUTLER:  Your Honor, I believe based on the

16   discussions we had this morning, and parties in the

17   courtroom I'm sure will correct me if I'm wrong, in terms

18   of parties who had objections that said they were

19   appearing either, you know, by the objector or by counsel

20   or another representative that we're here this morning, I

21   believe that resolves all of what I'll call the

22   represented objections other than the union objections,

23   which are being dealt with tomorrow, and the following

24   objections.

25       I believe that the Timken Company objection, docket

24

1    number 11927, has not been resolved.  I believe the --

2    what I think are more or less -- well, I won't

3    characterize them.  The objections of the lead plaintiff

4    in prospective class at 11939 and the ERISA-lead

5    plaintiffs at 11973 have not been resolved.  I believe

6    that the Fiduciary Counselors, Inc. objection at 11957 has

7    not been resolved.

8        I believe the -- and let me just see here if I missed

9    one -- Equistar Chemicals was not represented earlier

10   today.  They haven't [ph.] resolved, but I think they're

11   represented, so I think that is the world of the

12   represented objections.

13       THE COURT:  Okay.

14       MR. BUTLER:  Other than the union objections.

15       THE COURT:  All right.  So do you want to proceed

16   then with Mr. Miller?

17       MR. BUTLER:  I do, Your Honor.  Thank you.

18       THE COURT:  And again, as I stated earlier, given

19   that I'm handling the discrete issue of the executive

20   employee compensation issue -- or proposal and the union

21   objections tomorrow, Mr. Miller will come back to the

22   stand if need be tomorrow on those aspects of his

23   declaration.

24       MR. BUTLER:  Yes, Your Honor.  So for today we're

25   dealing with the declaration of Robert S. Miller, Jr., the

25

1    company's executive chairman and admit it into evidence

2    Exhibit 67 subject to an evidentiary matter that we'll

3    resolve tomorrow in connection with the union portion of

4    the hearing and his deposition, which has been admitted as

5    Exhibit 551.  I'd like to present Mr. Miller for all

6    purposes of cross-examination, other than the management

7    compensation portions of Exhibit 67 and Exhibit 551 and

8    for any questions the Court might have.

9         THE COURT:  Okay.  As far as the declaration, you're

10   going to wait until tomorrow to have it be admitted?

11        MR. BUTLER:  Well, it was admitted already, Your

12   Honor, subject to the evidentiary objection of the --

13        THE COURT:  Oh, that's right.  Of course.

14        MR. BUTLER:  -- UAW, which we'll deal with tomorrow.

15        THE COURT:  That's right.

16        MR. BUTLER:  We're now just presenting him for

17   examination or questions by the Court.

18        THE COURT:  Okay.  Does anyone want to cross-examine

19   Mr. Miller on his declaration as just discussed, as well

20   as on the topic of his deposition as just discussed?

21   Okay.  And I have no questions of Mr. Miller either.

22        MR. BUTLER:  Thank you, Your Honor.

23        Now, Your Honor, I believe that completes the

24   evidentiary record, other than -- I believe all of the

25   evidentiary exhibits are in with the exception of

26

1      resolving the evidentiary objections of the UAW on

2      Exhibits 66 and 67.  That was paragraph 25 and 66 and

3      paragraph 48 on 67, two of the declarants we'll deal with

4      tomorrow.

5          I believe all of the other exhibits are now in

6      evidence and I believe all the declarations are now in.

7      See if there's cross-examination offered on all the

8      declarations other than Mr. Naylor and Mr. Bubnovich, who

9      will be dealt with tomorrow morning and the compensation

10     section of Mr. Miller's declaration.

11         So in terms of next steps, Your Honor, the debtors

12     had planned to reserve our closing argument until tomorrow

13     after the completion of whatever the proceedings are

14     tomorrow, but we'd be prepared to address objections --

15     specific objections if Your Honor wants to hear those.

16     There are a handful of, as I indicated, objectors who are

17     represented today.

18         THE COURT:  I think we should use the remaining time

19     today to deal with the remaining objections, other than

20     the two union objections.

21         MR. BUTLER:  All right.

22         THE COURT:  Maybe I should hear from the objectors,

23     then, who are present either in person or by phone.

24     Debtors can respond to them and then they can briefly

25     address the objections made by those who are just content

27

1    to rely on their papers.

2        MR. BUTLER:  Thank you, Your Honor.  So maybe the --

3        THE COURT:  So whoever -- I don't care who wants to

4    go first.

5        MS. CALOWAY:  Your Honor, Mary Caloway, Buchanan,

6    Ingersoll & Rooney.  I'd like to go first for one reason

7    I'm the closest and second is I think mine is one of the

8    easiest objections to discuss and resolve.

9        THE COURT:  Remind me again.

10       MS. CALOWAY:  It's Fiduciary Counselors.

11       THE COURT:  Okay.

12       MS. CALOWAY:  We had filed a joinder to the objection

13    filed by the Pension and Benefit Guaranty Corporation.

14       THE COURT:  Right.

15       MS. CALOWAY:  With the resolution of the Pension and

16    Benefit Guaranty Corporation's objection, that portion of

17    the joinder is essentially mooted.

18       We had also included in our joinder an independent

19    request that the debtors add four words or put on the

20    record clarification by using those four words that the

21    language in the plan didn't affect the individual debtor's

22    joint and several liability under the applicable pension

23    laws.

24       My understanding from the debtor's response is that

25    they were -- that they believe the language is abundantly

28

1   clear and that those four words aren't necessary.  Quite

2   frankly, since I've sat here all day I've decided I think

3   it's worth it to stand up and tell Your Honor that I don't

4   think the addition of those four words harms anyone and it

5   does provide Fiduciary Counselors as the independent

6   fiduciary for the pension plans a certain amount of

7   comfort.

8        With that, Your Honor, I would sit down.

9        THE COURT:  Okay.  Is there any debtor that wouldn't

10  be covered individually by the minimum funding

11  requirements under 26 --

12       MS. CALOWAY:  I'm sorry, Your Honor.  I may not have

13  been as clear as I should have been.  We were concerned

14  that the deemed substantive consolidation provision might

15  be misread to somehow affect that joint and several

16  liability.

17       MR. BUTLER:  Your Honor --

18       THE COURT:  No, I understand that.

19       MR. BUTLER:  Your Honor, the reason we didn't agree

20  to the words is quite simply that we don't want to expand

21  any rights that may not exist.

22       THE COURT:  Well, that --

23       MR. BUTLER:  So consolidation only covered for voting

24  and distribution.  No other purpose.

25       THE COURT:  Right.  They have --

29

1        MR. BUTLER:  Whatever rights they have, they have.

2        THE COURT:  That's why I was starting to ask the

3    question I had.  Is there a possibility that some of the

4    debtors -- or some of the debtors on an individual basis

5    wouldn't necessarily be jointly and severally liable?

6        MR. BUTLER:  And the truthful answer, Your Honor, is

7    I just don't know.  I mean, and I wasn't prepared to agree

8    to language that could arguably expand liability --

9        THE COURT:  Right.

10       MR. BUTLER:  -- exposure when it's unnecessary given

11   what they are trying to protect.

12       THE COURT:  The substantive consolidation provision

13   is for distribution for purposes of this plan.

14       MR. BUTLER:  Correct.

15       THE COURT:  Only.

16       MR. BUTLER:  Right.

17       THE COURT:  Distributions under this plan.

18       MR. BUTLER:  Correct.  Then only -- the actual

19   consolidating of the businesses, Your Honor, or the

20   entities to the extent that that's been planned to be

21   done, that's done under the restructuring transactions

22   notice that was filed as a separate exhibit to the plan

23   and that will occur either preeffective date or post-

24   effective date as the case may be.

25       But that -- when those things occur, they'll occur in

30

1    connection with the overall, you know, obligation

2    requirements the company has to go through and do those

3    combinations, liquidations, and so forth.  But there's

4    nothing in the subcon portion of this plan that would

5    affect the joint and several liability -- you know, cause

6    someone's joint and several liability -- preexisting joint

7    and several liability to be eliminated.

8        THE COURT:  In other words, payment in respect of --

9    under -- existing under funding will be made pursuant to

10   the plan, but if for some reason they aren't made down the

11   road, the plan doesn't affect individual debtor's

12   liability, whatever that is.

13       MR. BUTLER:  Whatever that is to the extent it

14   exists.

15       THE COURT:  Okay.  That was my reading of the plan

16   and while we could spend a lot of time going through 26

17   U.S.C. 412 and 29 U.S.C. 1082 and 1362, I think that's

18   pretty dangerous if you have one bankruptcy lawyer, one

19   bankruptcy judge being asked to make a determination on --

20   under pension law.

21       MS. CALOWAY:  319.  There are two bankruptcy lawyers,

22   Your Honor --

23       THE COURT:  Okay.  Two bankruptcy lawyers and a

24   bankruptcy judge, so I think it's -- I think your client

25   is protected on the issue you're concerned about and I

31

1      think there is a risk to the debtor that by adopting this

2      language we would be adding liability where it might not

3      exist down the road.

4          So I'm going to deny the objection, although I think

5      the record is clear.

6          MS. CALOWAY:  Thank you, Your Honor.

7          THE COURT:  And I think the plan is clear as well on

8      this point.

9          Okay.  Does any other objector want to add to what --

10     their written objection?

11         MR. SULLIVAN:  Just opening up the floor, Your Honor?

12         THE COURT:  Whoever wants to go first.

13         MR. SULLIVAN:  Okay.  I'm happy to --

14         THE COURT:  Or second actually now that -- and again,

15     you're on behalf of Timken?

16         MR. SULLIVAN:  That's right, Your Honor.  Mine is a

17     fairly discrete issue as well --

18         THE COURT:  Let me just --

19         MR. SULLIVAN:  I don't think it will take very long.

20         THE COURT:  -- get that one here.  I had it in front

21     of me.  Okay.

22         MR. SULLIVAN:  Just for the record again, James

23     Sullivan, of McDermott, Will & Emery on behalf of Timken.

24         The issue is very simple, Your Honor.  I represent

25     Timken who during the course of the bankruptcy proceeding

32

1    entered into a settlement stipulation with the debtor.

2    Pursuant to that stipulation, the debtor and Timken

3    stipulated that Timken had an allowed claim of

4    approximately 1.8 million dollars and that the claim was

5    deemed satisfied pursuant to the previous payment of the

6    1.8 million pursuant to an assumption of an agreement that

7    had been previously agreed to.

8              The parties specifically reserved the right

9    to -- whether or not post-petition interest should be

10    payable for the period of time from the petition date

11    through the date of the payments approximately a 14-month

12    period.  So we're talking -- you know, it's not a huge

13    issue, but the question in essence is because other

14    creditors, unsecured creditors in the case are being --

15    are entitled to receive interest, Timken does not believe

16    that there's any basis for not also paying interest.

17         THE COURT:  I want to make sure I understand this.

18    Your client has already gotten the money, though, right,

19    as part of a cure payment?

20         MR. SULLIVAN:  Without interest, Your Honor.

21         THE COURT:  But as part of the assumption of the

22    contract.

23         MR. SULLIVAN:  It's received the full principal

24    amount.  Correct, Your Honor.

25         THE COURT:  But at the time it didn't -- when it got

33

1    that money, when the contract was assumed and payment was

2    made under 365(b) that was the agreed amount.

3        MR. SULLIVAN:  Well, the agreement specifically

4    talked about the -- you know, the prepetition balance.  It

5    didn't -- it was silent as to whether or not there'd be

6    any post-petition interest payable.

7        THE COURT:  But was there a reserva -- I mean --

8        MR. SULLIVAN:  There's no reservation of rights, but

9    at the time there was no even indication that this would

10   be 100 percent plan and the post-petition interest would

11   even be payable and --

12       THE COURT:  But isn't that the point?  I mean, your

13   client made a choice at the time as to what the cure would

14   be.

15       MR. SULLIVAN:  Well, generally speaking, post-

16   petition interest isn't payable until all general

17   unsecured claims have been paid in full.

18       THE COURT:  No, I understand that, but under 365(b)

19   it doesn't talk about post-petition interest.  It has

20   (b)(1)(A) which is the provision for curing of a default

21   and then (b)(1)(B) says "... compensates or provides

22   adequate assurance that the trustee will promptly

23   compensate a party, other than the debtor, to such

24   contract or lease for any actual pecuniary loss to such

25   party resulting from such default."  Isn't that the

34

1    calculation you go through when you are a nondebtor party

2    to a contract that's being assumed, as well as, of course,

3    adequate assurance.  I mean, it's sort of a three-part

4    test.  That's your -- you can say I object.  You have to

5    comply with those three parts.  If you don't you can't

6    assume my contract, but it sounds like your client did

7    that.  Your client went through that analysis and agreed

8    on the assumption, and there was a payment, and this seems

9    to me that it would be -- that it's barred by res judicata

10   and the law of the case.  I mean, it's already happened.

11   This isn't a claim.  It's a cured contract, part of the

12   assumption.

13       MR. SULLIVAN:  Right.  But even administrative

14   claims, even if it were treated as administrative claim

15   and not a general unsecured claim, although pursuant to --

16       THE COURT:  But it's not a claim.  It's been paid.

17       MR. SULLIVAN:  Well, there's still a claim for post-

18   petition interest.  It's only been paid in part.

19       THE COURT:  But where's -- I don't -- but once it

20   was -- the claim is pursuant to the contract that's been

21   assumed.  I mean, once it's assumed then unless you have

22   some other agreement on how the cure is to be paid you

23   just look to perform it's going forward.  Have they

24   defaulted post-assumption?

25       MR. SULLIVAN:  It's not -- that's not the issue here,

35

1    Your Honor.  I don't know if they defaulted or not.  I

2    assume that they haven't because, you know --

3         THE COURT:  Okay.

4         MR. SULLIVAN:  -- that's not part of our pleading.

5         THE COURT:  All right.  Okay.  Does the debtor have

6    anything to say on this objection?

7         MR. BUTLER:  Well, I mean, I know Your Honor hit the

8    salient points.  One, this was an assumption back in 2006.

9    It's been assumed all the assumption obligations were by

10   admission performed.  I will say generally the debtor's

11   position under this plan in this case is that -- and we

12   have discussed this in several other hearings, there is a

13   difference between cure under Section 365, which -- and

14   the payment of the prepetition claim that is still a claim

15   under a bankruptcy plan.

16        In this case, people who are being paid cash amounts

17   or cure claims in cash are not receiving post-petition

18   interest and people who chose to not -- to be treated as a

19   class 1C, general unsecured claim, receive plan currency,

20   which incl -- and got post-petition interest, but had

21   received plan currency.

22        Here, Timken which had already had its contract

23   assumed and had all -- the debtors had already fully

24   performed in connection with that assumption is now coming

25   in after the fact, should be barred to do that as a matter

36

1    of res judicata, but they also want sort of a hybrid

2    treatment.  They want to keep the cash they were given,

3    and they want to be paid additional post-petition

4    interest, but not take the plan currency the other parties

5    are taking.  There isn't any basis for this objection

6    whatsoever, Your Honor.

7         THE COURT:  Okay.  I agree with that.  The Bankruptcy

8    Code treats executory contracts differently than claims.

9    Executory contracts are both assets and liabilities for a

10   debtor and they're -- because of that and because of the

11   balance that Congress struck, nonparties to executory

12   contracts are treated differently than those with simple

13   claims.

14        If a contract is assumed, those parties are

15   preferred.  They -- as Second Circuit in Klinesly [ph.]

16   said, have not only the right to require compliance with

17   365(b)(1) through (A), (B) and (C), which requires cure or

18   adequate assurance, a prompt cure compensation for actual

19   pecuniary loss and adequate assurance of future

20   performance, but they also get ongoing performance as if

21   the bankruptcy hadn't happened to their contract.  If the

22   debtor breaches after assumption, they have an

23   administrative claim.

24        All of those features are different than the

25   treatment of someone with a prepetition claim or a party

37

1    to a contract that's rejected.  Here where Timken's

2    contract was assumed, apparently by agreement, the cure

3    payment paid and the other factors of 365(b)(1) satisfied,

4    I think that there's no additional claim that Timken has

5    as a prepetition claim in respect of that contract.  If

6    the debtor breaches the contract or has breached it post-

7    assumption, it has an administrative claim, but there's no

8    suggestion that it does have one.

9        So I don't see a basis for an argument that a cure

10   claim that has been satisfied should be put in a class of

11   prepetition claims or has consequently any right to be

12   treated like prepetition claims.  It's just -- it's really

13   apples and oranges, so I'll deny this objection.

14       MR. SULLIVAN:  Okay.

15       MR. BUTLER:  Thank you, Your Honor.

16       THE COURT:  Okay.  All right.  Counsel for the

17   securities law plaintiffs and the like, both counsel,

18   we're clear in their objections, I think.  At least I

19   thought they were clear.  I think they were clear earlier

20   today that their concern is really a timing concern.

21       In other words, as long as the MDL settlement order

22   of this court is entered before a confirmation order, then

23   your concern about the release provisions in the

24   confirmation order goes by the boards, because the MDL

25   order with its own release language is entered before the

38

1    effective date.  Is that right?

2         MALE SPEAKER:  That's essentially correct, Your

3    Honor, the --

4         THE COURT:  All right.  So why don't we --

5         MALE SPEAKER:  Along with the confirmation of a plan

6    embodying the settlement, so --

7         THE COURT:  So why don't we put this off until the

8    end of this hearing because it may be rendered moot at

9    that point?

10        MALE SPEAKER:  We're hopeful of that, Your Honor.

11        THE COURT:  Okay.  I know you won't, but don't let me

12   forget this point, but I think your objection for the

13   record is clear -- I'm looking at both of you -- that you

14   don't need the extra language that you all propose if it

15   turns out that I approve the MDL settlement and enter that

16   order ahead of the confirmation order.

17        MALE SPEAKER:  As well as entering an order

18   ultimately confirming the plan which embodies the

19   settlement.

20        THE COURT:  Well, of course.  Of course.  They're

21   tied together.

22        MALE SPEAKER:  That's --

23        THE COURT:  It just is a timing matter.  If I approve

24   both, the MDL one has to get entered first.

25        MALE SPEAKER:  That's absolutely correct, Your Honor.

39

1          THE COURT:  All right.  And I think given the

2     parties' careful drafting it's better to wait so that that

3     can happen as opposed to doing some redrafting now.

4          MALE SPEAKER:  That's absolutely -- it's our hope

5     that it's ultimately rendered moot, Your Honor.

6          THE COURT:  Okay.  All right.  All right.  Is anyone

7     else present or on the phone who wants to argue their

8     objection to the plan?  Yes.

9          MR. FOX:  I was waiting to see if there were other

10    individual objections that were -- needed to go forward.

11    Edward Fox, Your Honor, on behalf of Wilmington Trust

12    Company.

13          Your Honor, this is an important issue which can be

14    dealt with with the passage of two business days, but it's

15    nevertheless important.  I think it needs to be seriously

16    considered.  As we stand here today according to the

17    deposition and other testimony in the debtor's case, the

18    debtor does not have yet a loan commitment for the -- I

19    guess it's 4.5 billion of exit financing that it is

20    seeking and requires as part of its plan to exit

21    bankruptcy.

22          It is in the process of getting that.  As far as we

23    know, the debtor is doing whatever is necessary or

24    appropriate to do that.  We understand that.  We accept

25    that.  The timing is such that the -- Mr. Sheehan has

40

1          indicated in his deposition testimony that commitments are

2          not expected until the 23rd, which is next Wednesday.

3          That means that if the hearing -- evidentiary portion of

4          the hearing completes tomorrow, Monday is a holiday,

5          there's two business days, Tuesday and Wednesday, before

6          the commitments are supposed to come in.

7               The problem comes in if the commitments do not come

8          in.  If they don't come in by Wednesday, but they're

9          delayed, we'll at least find out why -- what further

10         update as you asked Mr. Sheehan might be going on that is

11         holding him up, but it's possible that they don't come in

12         with the -- under the appropriate interest cap, which is

13         required under EPCA [Ph.], or that they're delayed

14         significantly given the continued turmoil in the credit

15         markets, which I think we well know about from this case,

16         from the inability to obtain the financing that was

17         originally intended under the plan filed on September 6th,

18         and the issues that we've discussed in this case

19         throughout the fall.

20              In Mr. Sheehan's deposition testimony, he was asked

21         on page 230 --

22              THE COURT:  But can I interrupt you?

23              MR. FOX:  Yes.

24              THE COURT:  The debtors say, and I think based on my

25         reading of the plan this is correct, the plan will not go

41

1      effective, distributions will not be made to anybody

2      unless the exit financing closes.

3              MR. FOX:  That --

4              THE COURT:  And that that's not waivable by anybody.

5              MR. FOX:  Well, that's true.  A couple of points,

6      though.  First of all, what the statute requires is not

7      that the plan not become effective but that the plan not

8      be confirmed if there's a likelihood of a need for further

9      reorganization, which is why --

10             THE COURT:  Well --

11             MR. FOX:  -- in a case law typically --

12             THE COURT:  But I'm trying to figure out what the --

13     the case law talks about speculative success of the

14     reorganization.  The statute talks about not likely to be

15     followed by liquidation or the need for financial

16     reorganization.  As a practical matter, I'm just trying to

17     figure out given that the plan wouldn't go effective

18     unless you had the financing what is the harm of having it

19     be confirmed subject to that condition?

20             MR. FOX:  Well, one thing is there's no -- on a

21     practical level, there's no sunset provision in the

22     confirmation order, so if they don't get the financing --

23     it's true, they don't go effective, but it's not clear

24     that there's any particular date by which the confirmation

25     order becomes null and void and the parties go back to

42

1    whatever position they're in.

2        Now, when the disclosure statement went out, one of

3    the changes that was made that we asked for was to say

4    that the debtors believed that at the present time, and we

5    asked that the words "at the present time" be added, that

6    this is the best plan available.

7        It's possible that the capital markets could get

8    worse, of course.  It's possible that they might get

9    better and certainly predictions had been that we go out a

10   few months that could be the case, but people voted today

11   or by last week with a certain expectation I would suggest

12   to you that they took the plan with some resignation.

13       THE COURT:  And I understand and there's the interest

14   provision that cuts off interest at the end of January.

15       MR. FOX:  Well, that's true, too.  So if they don't

16   get their financing but the plan is confirmed, we don't

17   know -- certainly there's no drop-dead date as to how long

18   it would get stretched out, what kind of negotiation might

19   be attempted, you know, with the plan investors or

20   otherwise, what potential adjustments might be made.  It

21   creates a whole host of problems and opens up a whole

22   Pandora's box.

23       THE COURT:  But on the other hand, the debtors are

24   fiduciaries.

25       MR. FOX:  Yes, and as good fiduciaries --

43

1        THE COURT:  And there is an ability to terminate

2    exclusivity.

3        MR. FOX:  Well, they're going to do their best to put

4    a deal together, but there's a deal on the table that

5    people have agreed to with a certain level of expectation.

6    It's with no sunset provision in the confirmation order.

7        THE COURT:  But wasn't there also an expectation that

8    we might well get to confirmation before there was a

9    financing commitment or the like and, in fact, having a

10   confirmed plan subject only to that condition to go --

11   well, it's not the only condition, but that's the prime

12   condition for going effective, might well have a positive

13   effect on the financing.

14       MR. FOX:  Well, I would certainly have no problem if

15   the order -- and if Your Honor entered a confirmation

16   order that said that it's the -- the confirmation order

17   was subject to their having a financing commitment.

18       In other words, we're not -- I'm not suggesting that

19   they can't make the rest of their case, that Your Honor

20   can't indicate that you're prepared to confirm the plan

21   subject only to their having the signed commitment

22   letters.

23       THE COURT:  Okay.

24       MR. FOX:  There's no intention to try to hold the

25   debtor up and that presumably would be helpful if that's

44

1    what's required.  It seems to me that the two business

2    days does, in effect, and there are many time lines.  I

3    can't remember them as well as I'm sure Mr. Butler.

4         THE COURT:  Well, I'm not -- I don't like the two

5    business day argument, I'm afraid.

6         MR. FOX:  Well, even if it's not that, the problem is

7    then --

8         THE COURT:  I understand your point about -- the

9    general point, though.  I understand that point.

10         MR. FOX:  There's simply no drop-dead as to what

11    happens.

12         THE COURT:  All right.  Well, I -- that's not the

13    point I'm that fond of either.  The point I understand is

14    there is a risk to parties of interest of delay beyond

15    what parties might have thought would be appropriate

16    without knowing what that date would be necessarily.

17         MR. FOX:  I believe that's right, Your Honor.

18         THE COURT:  Okay.

19         MR. BUTLER:  Your Honor, from --

20         THE COURT:  And also that it might be entirely

21    hypothetical.

22         MR. FOX:  And we'll presumably know that on

23    Wednesday.

24         MR. BUTLER:  No.  I think that's just plain wrong and

25    I'm -- you know, Mr. Fox -- it's interesting.  Mr. Fox is

45

1      the only -- I think only party now pressing a feasibility

2      objection at this confirmation hearing after the

3      indentured trustee was supposedly looking after

4      bondholders have now voted in favor of the plan.

5          THE COURT:  Well, let me ask you, though, a question,

6      Mr. Butler, and I appreciate that point.  But I have

7      had -- I inherited a plan which unfortunately had no end

8      to it, no end to its condition.  That was a problem.  I

9      eventually dealt with it by a motion under 60(b) and maybe

10     that's what will eventually happen here.

11         MR. ROSENBERG:  Well, Your Honor, if I may this is

12     still an issue of great concern to the Committee and I

13     know you said you'll deal with it in the order, but that

14     is what we're now talking about.  We have asked for the

15     placement of a sunset provision in the order.  Mr. Butler

16     has refused and we'll be arguing that to you, but, you

17     know, this is a situation where you've got specific drop-

18     dead dates and other agreements, but you can have a

19     confirmation order that is absolutely incapable of being

20     consummated.  You know, under the Bankruptcy Code a

21     confirmed plan after an appeal period is only

22     challengeable for fraud for a 180-day period.  We could be

23     sitting here for months and months and months, but no

24     reason.

25         Now, you know, whether or not this goes -- becomes a

46

1          feasibility issue today, whether or not there's a

2          confirmation order entered subject to feasibility it just

3          can't be that a confirmation order is entered today, the

4          plan becomes clearly unfeasible either because of the

5          financing or because of the passage of time and everyone's

6          just hanging out there.  That's just not appropriate and

7          I'm sort of interested and happy to hear that Your Honor

8          has had some experience with that.  It shouldn't happen in

9          this case.

10              MR. BUTLER:  On the other hand, Your Honor, we're

11         here at confirmation and I recognize Mr. Rosenberg's view

12         that, you know -- and they are the Creditors' Commission

13         is a fiduciary, but the reality is until a draft comment

14         we got from last night they had never raised the issue of

15         a sunset provision in this which we would have resisted

16         had they ever raised it.

17              THE COURT:  I -- as I said to Mr. Fox, the sunset

18         provision concept to me doesn't seem to work because I

19         don't think the parties considered a sunset provision, but

20         they did consider this happening with the financing.

21              MR. BUTLER:  Your Honor, I think one of the things

22         we --

23              THE COURT:  And -- I'm sorry.  Maybe you're about to

24         say this, but an order that says the plan is confirmed

25         subject to a commitment at which point this order becomes

47

1    effective is -- I don't know.  What do you think about

2    that?

3        MR. BUTLER:  I really hope Your Honor doesn't do

4    that.  I think it adds -- it adds conditionality and

5    uncertainty into an extraordinarily uncertain market.

6        THE COURT:  Well, but it's the same condition not

7    only that's there, because they know the plan won't be

8    consummated without the financing.  I don't think --

9        MR. BUTLER:  I'm not even sure that's a confirmation

10   order that's enforceable under the EPCA.  My point is

11   we're here at confirmation to get -- to procure an order,

12   which I believe on this record we're entitled to get and

13   which we then follow what the plan says.  This plan was

14   approved by 80 percent of the people who voted on it.  The

15   reality is that there is very specifically a series of

16   conditions to the effective date.  If we look on Exhibit

17   95, page 7, this was the chart that was in the disclosure

18   statement and again shall be talking about later, but

19   reminding Your Honor of the events we have to navigate

20   through over the next couple of months starting at the end

21   of February, and then going into March and April, and

22   things -- you know, and it's not until April frankly that,

23   you know, there are some termination rights that are

24   optional termination rights in March.  ADH has a

25   termination right that comes up at the end of March, but

48

1       it's not all the plan investors.  It's ADH.

2           GM has some rights to trigger, some in March, some at

3       the end of April.  The Government has rights at the end of

4       February.  We're in a very uncertain market here and the

5       debtors need the opportunity and the flexibility to

6       navigate through this marketplace and to get to a point

7       where we can get the EPCA closed, the GSA closed, and

8       financing consummated and closed that will allow us to

9       effectuate these distributions.

10          The reality is, we have never committed -- and I

11      don't know of anything in the plan and disclosure

12      statement or anything we've ever committed to that says

13      that we were going to have the financing all completed by

14      the confirmation --

15          THE COURT:  No, you have it.  That's why I think a

16      drop-dead date doesn't make sense.  I agree with that.

17          MR. BUTLER:  And, Your Honor, as we go through

18      there --

19          THE COURT:  If on the other hand you never get --

20          MR. BUTLER:  -- if you look at condition 12 --

21          THE COURT:  -- the finan -- I mean, this is all

22      hypothetical.

23          MR. BUTLER:  Right.

24          THE COURT:  Let me -- what -- is what you were saying

25      is that there are other transactional termination dates

49

1    that will likely to be triggered if you don't get the

2    financing?

3         MR. BUTLER:  Yes.  And I'm also saying, Your Honor,

4    that we need the opportunity.  We could all go back to

5    square one if that's what people want to do in this case

6    at some point.  I know I certainly don't.  I want to try

7    to get the deal --

8         THE COURT:  I don't think --

9         MR. BUTLER:  -- that the creditors have voted on --

10        THE COURT:  -- I don't think the indentured trustee

11   wants to do that either, nor Mr. Rosenberg.  I think they

12   were concerned about open-endedness.  Your response is

13   there are likely termination triggers here.

14        MR. BUTLER:  There are ten triggers -- ten effective

15   date requirements in Section 12.2 of the plan that's been

16   voted on by creditors and there are a series and my view

17   is that the governors on all of that are GM, in the GM, in

18   the GM and GSA and MRA and the plan investors in EPCA.  I

19   want to be very plain --

20        THE COURT:  And the debtors.

21        MR. BUTLER:  And the debtors.  But I want to be very

22   plain on this, Your Honor.

23        THE COURT:  And the debtors are fiduciaries.

24        MR. BUTLER:  Are fiduciaries.  We're going to do

25   everything we can if Your Honor confirms this plan to get

50

1    it to go effective as quickly as we can get it to go

2    effective.  But, you know, if we're going -- once the

3    confirmation order is entered, we then execute a rights

4    offering, you know, we're going to be working on the

5    financing.  Hopefully the financing will come together.

6    You heard Mr. Sheehan's testimony today that there wasn't

7    any material change in his judgment as to the ability to

8    procure the financing, but these are uncertain markets and

9    uncertain times, and we want the ability to be able to

10   manage all the levers dealing with the EPCA, the GSA, the

11   MRA financing to get that package to all come together.

12   We would -- we intentionally have not ever come before

13   this court or the parties and pointed to a specific date

14   as to when that's going to occur.  We've said publicly

15   until frankly this hearing -- we've said publicly that we

16   hope that would happen by the end of the first quarter.

17   The reality is is I think people know we're trying to do

18   our best to see if that can come together prior to any of

19   these event risks occurring starting at the end of

20   February.

21       That's going to be a function of being able to put

22   the financing together.  Certainly if the debtors as

23   fiduciaries came to the conclusion that we could not

24   execute on this plan that the plan -- that the plan

25   notwithstanding everyone's best -- good faith and best

51

1    intentions the debtors as fiduciaries aren't going to sit

2    around for months and months or days or weeks and not do

3    anything.  I don't think there's any record of us sitting

4    on our hands here.  We've been extremely proactive in this

5    case.

6        But I'm looking to maximize the opportunity for

7    success here.  Assuming the debtors meet their evidentiary

8    burdens and are able to get a confirmation order what

9    maximizes this is for us to be able to go in the

10   marketplace and be able to be very clear that this case is

11   essentially done.  All right.  This case is cooked.  Here

12   are -- everything is done.  The order is final.  We're

13   moving on with the rights offering.  We're implementing

14   the plan and that everyone understands what we need to do

15   with respect to financing and the EPCA and the GSA.

16       It's very clear that, you know, we -- the rights that

17   people have to affect those conditions are set forth in

18   the plan and it's very clear that we have to adhere to

19   those, but I think there's been a carefully negotiated

20   balance in 12.2 and 12.3 about what can be done and when

21   it can be done and by whom.  We simply want to be

22   absolutely sure that we are able to maximize the

23   opportunity to get that done, so that's why, Your Honor,

24   we think it's -- we believe as the case is pointed out in

25   our response on pages 61 through 63 of our brief indicated

52

1    we believe that we have been able to demonstrate

2    feasibility.  We believe that Your Honor is not precluded

3    certainly in this district from concluding based on the

4    uncontroverted evidence in the record that the company

5    given the fact this is a condition to the effective date

6    that the company can take into account the effective date

7    transactions in determining feasibility.

8         THE COURT:  Okay.

9         MR. FOX:  Your Honor, I think at this point I need to

10   make a clean record on this because I'm very disturbed by

11   what Mr. Butler has said and what the implication is of

12   what he's said.

13        First of all, the time line that he put up was the

14   time line that was used in the disclosure statement to

15   tell people all the bad things that would happen if they

16   didn't vote for the plan because if the debtor didn't meet

17   these deadlines their deal with the PBGC would fall apart,

18   their deal on the EPCA would fall apart, the deal with the

19   unions might fall apart, et cetera, et cetera.

20        In other words, it wasn't to suggest to people that

21   only those deadlines were the deadlines that would save

22   them from being stuck in limbo forever.

23        THE COURT:  But there's no other deadline.

24        MR. FOX:  No, no.

25        THE COURT:  There's no deadline.

53

1        MR. FOX:  But hear me out, because what those

2    deadlines were put in to tell people that this had to get

3    done now, because if it didn't get done now and it didn't

4    get done before February 29th that in effect the economics

5    could change, the parade of horribles would kick in, and

6    something worse would happen than what we have now.

7        People made a decision based in part presumably on

8    the fact that at present this was (a) the best deal they

9    were going to get, and (b) that if they didn't take it now

10    worse things would happen in the future.

11        What Mr. Butler is now saying is that people

12    actually, you know, were looking at the -- were supposed

13    to look at these time lines to think that they were going

14    to have to suffer through these deadlines and only if

15    other parties, the PBGC, the UAW, et cetera, called

16    triggers would somehow this thing fall apart, because that

17    presumably would then trigger the EPCA and let the plan

18    investors walk away.

19        THE COURT:  But what else --

20        MR. FOX:  That's what --

21        THE COURT:  What else would you think?

22        MR. FOX:  I would think that the Court would not

23    enter a confirmation order if it weren't satisfied that

24    the debtor was going to be -- had its financing, which is

25    typically the case when the debtor comes to confirmation.

54

1          Now, Mr. Butler also, I think, basically made the

2    argument against what his own -- what he claims his own

3    witness said in terms of --

4          THE COURT:  Well, I have -- well, okay.  Go ahead.

5          MR. FOX:  He's arguing against the factual statements

6    or the opinion of his own witness about the financing.

7    What he stood here and said was that we're in

8    extraordinarily uncertain markets.  That's all the more

9    reason not to credit the testimony in the declaration or

10   the opinion of Mr. Sheehan and it's nothing against

11   Mr. Sheehan.  He's working as hard as he can.  We

12   appreciate that, but it just points to the fact that

13   anybody sitting here can't predict what's going to happen

14   in the markets and whether the debtor can get the

15   financing.  We hope that they will.  We're not trying to,

16   you know, do something to prevent them from doing that,

17   but having a confirmation order that's completely open-

18   ended leaves the creditors in limbo and creates a real

19   problem.

20         Secondly, if you look at the testimony of Mister --

21   the deposition testimony of Mr. Sheehan, for instance,

22   when he was asked about the schedule, he was asked on page

23   240, "When is the earliest you think you will have

24   commitment for the full financing?"  Answer, "The current

25   time schedule would call for a January 23rd due date for

55

1   commitments and JPM is working toward that exactly, but,

2   you know, to be open it is a very tough market and we're

3   working as hard as we can."

4        He was then asked, "Do you think it is a slam dunk?"

5   Answer, "I don't think anybody in this market would call

6   it a slam dunk."

7        He was asked -- let's see -- on page 287, "First, do

8   you have a view as to how likely it is that the company

9   will be able to obtain the exit financing of these under

10  the plan at a price that it can afford?"  Objection by

11  Mr. Hogue and asked and answered, but you can discuss it

12  again.  Answer, "The company was -- the company announced

13  earlier this week, I'm sure you're aware, we discussed at

14  the statutory committee meeting last week that we reduced

15  our exist financing by 675 million.  I think that helps

16  dramatically to assure or helps dramatically to be able to

17  stay under the 585 cap and, you know, only time will

18  tell."

19       And then he was asked a question, "It helps, although

20  I believe you testified earlier that you still wouldn't

21  say it was slam dunk in the current credit market.  Is

22  that correct?"  Answer, "I'm not sure I was testifying

23  about the probability of staying under 585.  I think with

24  respect to the 'slam dunk' comment it was more about the

25  ability to get the financing done, but maybe I'm wrong.  I

56

1    don't think anything is a slam dunk in this market."

2        So anyway, the point is we're going to have -- as

3    Mr. Rosenberg's points out to me, we're also -- if they go

4    forward and the confirmation order is entered, a rights

5    offering is going to get triggered.  You're going to have

6    people not only have to putting up money or trading rights

7    in the marketplace, because these are going to trade.  If

8    people don't want to exercise them, they're freely

9    tradeable and people have the ability to buy them, we're

10    going to have a situation where people are going to be

11    buying rights on the market on a plan that may never

12    become effective.  It creates extraordinary problems in

13    that circumstance.

14        The debtor is basically arguing that the creditors

15    have voted for an open-ended period of limbo that they

16    should merely trust the debtors to try and get done

17    whatever they can whenever they can get it done.  I don't

18    think that's (a) what anybody bargained for, but I don't

19    think that's what the Code permits.  The Court has to make

20    a determination now as to whether confirmation, not

21    effectiveness, but confirmations is likely to be followed

22    by further reorganization.  With the debtor's counsel

23    standing here talking about the extraordinarily uncertain

24    markets, I don't know how you can make that determination

25    and sign a confirmation order before we have the

57

1    commitments.

2         MR. BUTLER:  Your Honor, a couple of points.  I

3    know -- I think you dealt with the drop-dead date.  I'll

4    just reiterate my comment that I think that Mr. Fox's

5    pursuit of that actually damages the debtors and the right

6    to get this plan done.  Put -- entering drop-dead dates I

7    think would be completely counter-productive.  I'd also

8    point out that the company never represented to anyone as

9    to the exact date and time this financing would be

10   completed and there's nothing in the record that Mr. Fox

11   just read that would suggest to the contrary.

12        The evidence in Mr. Sheehan's testimony has been very

13   consistent in terms of what we're trying to get

14   accomplished.  We're trying to get this done yesterday,

15   you know, and the questions that Mr. Fox said, what's the

16   earliest something that happened.  We're trying to get it

17   done yesterday.

18        On the other hand, we haven't said if it doesn't get

19   done tomorrow we should go back to square one.  The

20   reality is I've always believed the case law to be that we

21   have to demonstrate here in connection -- and when you

22   talk about confirmation of the plan will not lead to

23   another financial organization, I've always paid attention

24   to Texaco, which has -- and some of the other cases which

25   has been pretty clear that we're required to establish at

58

1      the confirmation hearing that at the emergence of the

2      debtors from Chapter 11 there's at least a reasonable

3      prospect that the debtor's earning capacity, together with

4      their ability to obtain financing and sell assets will be

5      sufficient to fund the plan.  It's as of the -- you know,

6      that is -- in terms of taking the plan effective and I

7      have always understood the case to be that so long as

8      things are -- you know, so long as the debtor's business

9      plan is not so --

10          THE COURT:  The Court makes the determination, not

11     the lenders.

12          MR. BUTLER:  Correct.  You know, and the fact of the

13     matter is that Your Honor gets to take into consideration

14     this business plan as it's been presented in the

15     evidentiary record and all of the aspects of the company's

16     restructuring.  The EPCA and the very settlements and the

17     plan -- and I think Your Honor gets to take judicial

18     notice of Your Honor's prior order approving the financing

19     arrangements, albeit the structure of them, the arranger's

20     agreements, not the committed financing, but that is a

21     final order of this court.

22          THE COURT:  I guess the answer to Mr. Fox's point

23     about the rights offering is if -- is that if the plan

24     does not go effective, the rights offering is null and

25     void.

59

1          MR. BUTLER:  That's correct.

2          THE COURT:  So it's not as if the debtor keeps that

3     money.

4          MR. BUTLER:  We don't keep any of it.  I think Mr.

5     Fox's point is that people may sell out in the marketplace

6     and they sell it in the marketplace that -- in those

7     market transactions.  That's a -- I don't know what those

8     trades will be and what those agreements will be, but

9     presumably I'm assuming that if someone buys rights that

10    they later can't exercise they will have some ability to

11    go back against the seller.  I'm not -- that's not for us

12    to be concerned about.  We're not setting up those

13    arrangements.  They are whatever the marketplace will

14    provide them in the context of the order everybody reads,

15    but the Court -- let's make no mistake.  The Court is

16    ordering these things will be mattered.

17         I believe under Texaco that we have been able to --

18    we have made the showing that -- I believe the case law in

19    this circuit and district requires that we make on this

20    evidentiary record.  I don't think there's anything in our

21    plan that suggests or anyone could walk away from our plan

22    believing that this company could be sitting around the

23    kind -- the length of period or anywhere close to what

24    Your Honor is dealing with in that other case.  I just

25    think that's it.

60

1          But to put constraints on the debtor, start putting

2     one arm behind our back because a single objector here

3     whose constituency is voted for the plan says what we

4     should do here is put constrictions on the debtor's

5     ability to try to take this plan effective, I think that

6     is not in the best interests of the estate and the

7     objection should be overruled.

8          MR. FOX:  Your Honor, with respect to the rights

9     offering point, this is a serious point.  People may be

10    able to make arrangements with respect to the sale or

11    rights but one of two things are going to happen, because

12    there's only a 20-day window to either exercise or trade

13    the rights.  Sure, if you exercise the rights then

14    presumably -- and the plan doesn't become effective the

15    rights are going to go -- the money goes back to the

16    purchaser, but it certainly seems to me that either you

17    won't be able to sell your rights at all or you're going

18    to sell them and have to buy them back effectively if the

19    plan doesn't become effective, but at the end of the 20-

20    day period, which is going to start, if there's no

21    financing the plan doesn't become effective then the

22    rights become worthless.

23         So people are being told they're going to get rights

24    that are 22 percent of their recovery and they'll

25    effectively expire worthless one way or the other if

61

1      there's no financing in place or they'll be severely

2      discounted if they can sell them without having the

3      obligation to take them back, but either way it kills the

4      value that people were told they were going to have with

5      respect to these rights.  You can't say you've got a

6      limited window of time but this event you weren't told

7      about because we couldn't get financing --

8           THE COURT:  That's what I don't -- I guess --

9           MR. FOX:  Well, when does the 20-day period --

10          MR. BUTLER:  Mr. Fox is just completely

11     misrepresenting this plan.

12          THE COURT:  Yeah, I -- there's no date that people

13     could rely upon in the plan.  If you put a sunset

14     provision in, you wouldn't have that issue either.

15          MR. FOX:  Well, people are going to have the 20-day

16     period from some point in February, if I understand it

17     correctly, to ex --

18          THE COURT:  No, but what I'm saying is if you put in

19     a sunset provision for the financing then that wouldn't

20     affect -- that wouldn't improve anyone's position.  It

21     would just make it worse as far as the rights offering is

22     concerned.

23          MR. FOX:  Well, what it would mean is you wouldn't go

24     forward with the rights offering because you'd recognize

25     the impact that the failure to have the financing by that

62

1   time would have on the rights offering otherwise you're

2   saying, let's go forward with the rights offering but we

3   don't have the financing.  You don't know -- you talk

4   about uncertainty in the marketplace and the affect that

5   it has on the value of the rights and on the recovery,

6   that's going to have a severe impact if not a complete

7   impact on the value of the rights.  That time period isn't

8   going to be delayed.  Maybe Mr. Butler could tell me

9   otherwise, but I don't believe that that time period is

10  intended to be delayed until they get the -- have the

11  financing commitments.

12      So you have a process working in tandem, but one is

13  going to be affected by the other.  The rights that people

14  told that they were going to get and were going to have

15  value, I think we should be able to all agree are going to

16  be severely affected by the lack of the financing because

17  the market is going to know that.

18      MR. BUTLER:  And this is the problem I have with

19  these hypothetical debates in public about Mr. Fox's

20  concerns about what may or may no occur when, in fact, you

21  know, the reality here is the financing.  Assuming we're

22  able in the very short term to get the circle commitments

23  from the book and get the book -- the orders in on the

24  book of financing, the reality is the documentation all

25  has to be worked out and finalized and everyone circles

63

1     around that.  We all understand how these syndicates get

2     put together.  That process is going to happen during the

3     time and was always planned over the last number of weeks

4     to be during the time whenever -- when we made the

5     decision last to do the launch after the first of the year

6     that was always going to go along with all the activities

7     necessary to get to the effective date and there is

8     nothing in the planned disclosure statement to suggest

9     otherwise.  The goal -- at least the company's goal here

10    obviously is to move forward expeditiously.  I think no

11    one is suggesting that we aren't.  If we can pull all the

12    levers together successfully, we'll be out before the

13    first of those event risks occurs, become effective.  All

14    I'm saying is if we can't do that, the debtors I think in

15    this plan bargained for the ability to try to manage those

16    event risks as fiduciaries in a way that allows the

17    debtors to implement the plan.

18        But ultimately if the plan cannot be implemented the

19    debtors and fiduciaries know what they have to do.  We'll

20    be back before this court and we'll be back with the

21    committees, but I -- but to constrict the debtors,

22    particularly when I think we have met the standards and

23    met the case law that's described in detail in our brief,

24    complied with it, and we've -- and, you know, I'll remind

25    everyone this is a preponderance of the evidence burden we

64

1    have at the confirmation hearing and the evidence is

2    uncontroverted.  You know, Your Honor, I believe that

3    we've met the standard and that these -- this objection

4    should be overruled.

5         THE COURT:  All right.  Section 1129(a)(11) provides

6    that "The Court shall not enter an order confirming the

7    plan if" -- and this is a quote -- "confirmation of the

8    plan is not likely to be followed by the liquidation or

9    the need for further financial reorganization of the

10   debtor or any successor to the debtor under the plan

11   unless such liquidation or reorganization is proposed in

12   the plan."

13        Wilmington Trust as indentured trustee for one of the

14   issuances of bonds under -- that the debtor -- the parent

15   debtor has issued has raised the objection that the

16   present status of the debtor's exit financing arrangements

17   requires the Court not to confirm the plan today or

18   tomorrow or enter an order doing so until the exit

19   financing is confirmed by a signed commitment.

20        The record as set forth primarily in Mr. Sheehan's

21   declaration but it's also a matter of record in the case

22   is that the debtors have entered into a best efforts

23   agreement with Citi Group and JPMorgan as lead arrangers

24   and that those parties starting earlier this month began

25   to assemble as soon as they get potential lenders with

65

1    respect to the exit financing.

2        Mr. Sheehan testified that the earliest date when

3    that commitment would issue would be the middle of next

4    week, but he could not confirm that it would be a "slam

5    dunk," which is something that I would expect any

6    accountant to say.

7        The other evidence in the record with respect to the

8    exit financing is evidence with regard to the debtor's

9    business plan as vetted by PWC and which serves the basis

10   for a very substantial financial commitments by the plan

11   investors led by Appaloosa.

12       The provision of the Code that I quoted, 1129(a)(11),

13   does not specify how the Court determines whether the plan

14   is not likely to be followed by the need for further

15   financial reorganization.  I do not believe that the Court

16   under the present circumstances needs to defer making that

17   analysis until third parties have acted to sign commitment

18   letters, but that rather the Court can make such a

19   determination based on the present record.

20       I also believe that as Mr. Butler correctly states

21   while the burden generally for the proponent of a plan is

22   a preponderance of the evidence burden, the showing that

23   the proponent needs to make under Section 1129(a)(11) is

24   pretty clearly set forth by the language, i.e., it is not

25   likely to be followed by the need for further financial

66

1    reorganization.

2         I cannot make that -- I cannot find anything other

3    than that conclusion.  It is not likely to be followed by

4    further financial reorganization based on today's record.

5    I believe that based upon the undertakings by Citi Group

6    and JPMorgan, based upon the debtor's business plan as

7    vetted by its professionals including PWC and by outside

8    third parties and its financials indicate that it could

9    can well support the exit financing.  I appreciate that it

10   is conceivable that notwithstanding the abundance of

11   capital in the world that prospective lenders may for

12   matters completely unrelated to the debtor for some reason

13   think that normal credit analyses don't apply for the

14   month of January 2008, but that's not anywhere set forth

15   in the record.

16        I have to assume that lenders who are in the business

17   of lending money to make money will look at a company like

18   Delphi, look at its ability to repay debt, and look at

19   what it's achieved through its reorganization plan, and

20   conclude that it makes economic sense to provide the exit

21   financing.  I believe furthermore that that is why in part

22   parties in interest voted on this plan, which did not

23   contemplate a drop-dead date for the exit financing, per

24   se, but instead contemplate a series of closely

25   interlocked transactions.  In particular, the GM

67

1    settlement, the union agreements, and the plan funding

2    agreement, the EPCA that are premised upon a later date

3    and time essentially the end of March and that the parties

4    were prepared in light of that not to have a specific

5    sunset provision.

6        I believe it is also the case that the parties who

7    voted in favor of this plan would find themselves

8    prejudiced by imposing such a date.  That is so I believe

9    particularly because based on what's before me in the

10   record, it seems to me that issues with regard to the exit

11   financings being available are tied less to, if at all to,

12   the debtor's inherent economic strength and ability to

13   repay that financing, but rather to rather nebulous issues

14   related to perhaps irrational lack of confidence on

15   lenders' behalf generally in the marketplace putting a

16   condition now that would limit confirmation's effect into

17   the plan or the confirmation order or delaying entry of

18   that order I think would encourage that what appears to me

19   to be irrational propensity.

20       I don't believe given that it wasn't in the plan or

21   the disclosure statement that parties would be well served

22   by imposing it now and, in fact, might be concerned that

23   it would be imposed now.  As I said during oral argument

24   on this point, I do have some concern based on experience

25   in a wholly different case where I had an irresponsible

68

1   debtor in front of me, unlike here, that a confirmation

2   order not be entered with an undue delay between

3   confirmation and effectiveness.  However, here the debtors

4   have made it abundantly clear that they are proceeding as

5   fast as they possibly can to emerge from Chapter 11.

6       In addition, there are logical decision dates in the

7   other transactions that I described and it seems to me

8   that the debtors acting as fiduciaries can be relied upon

9   not to hold the creditors hostage in a hypothetical

10  situation unless the case I remember, and if for some

11  unforeseen reason they do something like that, there's an

12  appropriate remedy for creditors.

13      Consequently, I conclude that the plan is feasible

14  under Section 1129(a)(11) and that there should not be

15  imposed on the terms of the plan an additional date that

16  the parties did not have before them when they were voting

17  on it tied to when exit financing should, in fact, be

18  permitted or alternatively there should not be a condition

19  to confirmation itself of receiving exit financing

20  commitments.

21      I believe that in sum as I have done those voting on

22  the plan look at the debtors' underlying business and

23  financial fundamentals and made their analysis that the

24  plan would be feasible and that they would receive the

25  recoveries that they assume they will receive under the

69

1    plan and that a part of that analysis is that the relevant

2    group of prospective or potential lenders will do the

3    same.

4        I think that was the last objection where someone was

5    represented in court.  If not, you should speak up now or

6    else we'll turn to the other objections that are

7    remaining.  Okay.

8        Do you just want to go down them in order,

9    Mr. Butler?

10       MR. BUTLER:  I thought I would, if that's all right,

11   Your Honor.

12       THE COURT:  Okay.

13       MR. BUTLER:  I think the -- I'll just get myself --

14   just one moment so I can get organized.

15       All right.  Your Honor, the -- just get my individual

16   objections here.

17       Your Honor, the first two objections that I would

18   deal with are the objections of Cheryl Carter (ph.).

19   These are at 11753 and 11806.

20       THE COURT:  Okay.

21       MR. BUTLER:  Ms. Carter wrote --

22       THE COURT:  No, I've read the objections.

23       MR. BUTLER:  Okay.

24       THE COURT:  There --

25       MR. BUTLER:  Do you want me to address them, Your

70

1      Honor, or --

2          THE COURT:  Why don't you address them just briefly?

3          MR. BUTLER:  All right.  In objection 11753 Ms.

4      Carter -- both objections, they object to the parties'

5      treatment under the plan.  She's objecting to the plan.

6      The fact that we filed Chapter 11, that we were

7      reorganizing and that employees were laid off.  We have

8      treated this in our response as an objection to the

9      parties' treatment under the plan.  I would simply argue,

10     Your Honor, that while a party may not support their

11     treatment, the plan as a whole has been accepted by the

12     requisite classes.  The more -- just as importantly, the

13     memorandum of understanding with the applicable unions are

14     now the subject of final orders of this court and they

15     stand for the transactions that have been agreed to there

16     and objections to provisions in those agreements are now

17     moot having been dealt with if they were timely raised at

18     the time those agreements were approved by the Court.

19         THE COURT:  Okay.  I agree.  The two generalized

20     objections that Ms. Carter made are ones that are overcome

21     in the first instance by the accepting vote of the class

22     in which her claim resides, secondly, by the agreement

23     with the union to which I believe she is a member,

24     although it's not clear entirely from the objection.

25         In any event, there's no particularized or specific

71

1    objection beyond that rather amorphous objection that she

2    does not like the plan and consequently I'll overrule the

3    objection.

4         MR. BUTLER:  Thank you, Your Honor.

5         Your Honor, the next -- I believe the next objection

6    that we've not dealt with is 11811.  This is a letter

7    objection dated January 7, 2008 from Darla and Allen

8    Schmidt (ph.).  In this objection they objected to the

9    treatment of Delphi stock under the plan.  It's a seven-

10   page handwritten letter.  Again, our response to this if

11   this is treated as an objection to a particular treatment

12   under the plan in this case the -- while they may not

13   individually support the treatment, the plan as a whole

14   and the class in which they would be considered has

15   accepted the plan under the statutory requirements 1129.

16        THE COURT:  I agree with that.  The class vote has

17   mooted their objection or alternatively they don't have

18   standing to make that objection based on the class vote.

19   I also conclude since there are some references in the

20   letter to Mr. Schmidt's prior employment by GM that the GM

21   settlement, which is part of the plan, would override that

22   objection given my belief that that settlement is in the

23   best interests of the debtor's estate and fair and

24   equitable.

25        Therefore, that -- to the extent that I can

72

1       understand Mr. Schmidt's objection with regard to his

2       prior ownership of stock that it was based upon issues

3       between the debtors and GM that that objection is not well

4       taken given the merits of the GM settlement in the plan.

5              MR. BUTLER:  Thank you, Your Honor.

6              The next objection to be dealt with is objection

7       11812.  This is the objection of Frank X. Budelewski

8       spelled B-U-D-E-L-E-W-S-K-I.  This is a two-page letter

9       objection in which Mr. Budelewski objects to the pension

10      plan described in the plan on several bases.  He asserts

11      age discrimination because retirees of the age 65 is

12      entitled to cash while retirees under that age he asserts

13      is not entitled to it.  He asserts because he worked for

14      General Motors for over 30 years his pension plan should

15      not have been transferred to Delphi upon separation.

16             Again, Your Honor, from the debtor's perspective and

17      legally responding to this letter objection, we believe

18      this is an objection again to the party's treatment under

19      the plan and that the class in which he would be

20      classified has voted to accept the plan.

21             THE COURT:  I agree with that, again, because of the

22      class vote.  The issues raised by Mr. Budelewski are not

23      ones that need to be addressed under 1129(b)(1) --

24             MR. BUTLER:  Your Honor, I don't mean to interrupt,

25      but I was just passed a note that literally as we were

73

1        arguing this objection Mr. Budelewski resolved his

2        objection --

3             THE COURT:  Okay.

4             MR. BUTLER:  -- I'm told to place that on the record.

5             THE COURT:  Very well.  So it's moot for that reason,

6        too.

7             [Laughter.]

8             MR. BUTLER:  I wouldn't normally interrupt the Court,

9        but I know Your Honor doesn't like to --

10            THE COURT:  Okay.

11            MR. BUTLER:  -- rule if a settlement has been

12       reached.  It occurred as we were speaking.

13            THE COURT:  Okay.

14            MR. BUTLER:  The next objection, Your Honor, is

15       objection 11822 and this is also 12016.  There are two

16       objections and this was from -- just get them -- this is

17       from Randy Halazon, H-A-L-A-Z-O-N.  I believe this -- just

18       to say it, they were filed in different ways, but I

19       believe the two objections are, in fact, identical.  At

20       least my information would suggest they are under two

21       docket numbers.

22            One was, I think, it was received in two different

23       places, one at Delphi, and one in the Bankruptcy Court,

24       and they were docketed separately for that reason.  This

25       was an objection by Mr. Halazon to -- made several

74

1   objections.  I think some -- one we dealt with today and

2   one you may not want to deal with until tomorrow.

3        The first objection was as a former employee of

4   Delphi he asserts the plan is unfair and inequitable to

5   the extent it doesn't include the foreign subsidiaries as

6   part of the liquidation analysis.  That happens as a

7   factual matter not to be true.  The liquidation analysis

8   assumes the going concern sale of the remaining nondebtor

9   businesses which are located primarily outside of the

10  United States, that's how value gets to Dashi, one of the

11  debtor's subsidiaries.  It was contemplated, considered.

12  Dashi, I believe, is group two in the liquidation analysis

13  and as part of Exhibit E to the plan or rather the

14  disclosure statement.  I think that was, in fact,

15  comprehended and so we'd ask -- so I think the objection,

16  number one, is incorrect and number two the class in which

17  he has -- he would participate has voted in favor of a

18  plan.

19       His other objection is an objection to management

20  compensation.  Your Honor may want to take that up

21  tomorrow.

22       THE COURT:  I'll carry that till tomorrow, but

23  Mr. Halazon's other objection is overruled.

24       First, it's not clear to me from his objection

25  whether he still has a stock interest.  You suggested his

75

1    stock was sold by his pension trustee, but in any event,

2    if he has a continuing stock interest, the class has

3    accepted the plan and to the extent he's raising

4    1129(b)(1) or (b) type objections, I believe that renders

5    his objection of no effect.  See, for example, In Re:

6    Jersey Medical Center, 817 F.2d 1055 (Third Circuit 1987).

7         As far as his best interest objection is concerned,

8    based on my review of the liquidation analysis the debtors

9    or the particular debtor's equity in the four nondebtor

10   subsidiaries was taken into account.  To the extent he

11   suggests that something more than those foreign

12   subsidiaries equity should have been taken into account,

13   that's incorrect since the creditors of those foreign

14   subsidiaries would have first claim on their assets.

15        MR. BUTLER:  All right.  Your Honor, the -- thank

16   you, Your Honor.  The next objection that I believe we

17   have is 11869, Equistar Chemicals, LP.  Equistar seeks to

18   preserve its right of setoff and objects to the plan to

19   the extent it disallows or impairs claims to set off the

20   offset, which allegedly would result in discharge or their

21   secured claim -- their alleged secured claim without

22   providing it with the "indubitable equivalent" of its

23   claim.

24        Our response to that was that under the terms of the

25   plan secured claims, assuming claims -- including claims

76

1    secured by setoff to the extent those claims are

2    ultimately allowed by the Court are paid in full under the

3    plan and, therefore, there is no prejudice to Equistar.

4    There are a series of court-approved procedures both in

5    the case and in the plan about how to exercise setoff

6    rights and so if, in fact, Equistar has a valid setoff

7    right and has preserved it and is ultimately allowed by

8    the Court, the plan will provide for the payment of that

9    claim.

10        THE COURT:  I agree with that based upon my reading

11   of the plan.  Consequently, Equistar's concern doesn't

12   legitimately exist so its objection is overruled.

13        MR. BUTLER:  Thank you, Your Honor.  I think I'm

14   going to have folks help me on this, make sure I haven't

15   missed anything.  I think the next one is 12013, Larry

16   Vanderpool (ph.) I think is our next --

17        THE COURT:  Right.

18        MR. BUTLER:  Just give me one second, Your Honor,

19   please.

20        THE COURT:  In essence, I guess what I take away from

21   Mr. Vanderpool's objection is he believes in his

22   particular instance the agreement with the union was not

23   honored in some respect.

24        MR. BUTLER:  Well, Your Honor, I think it actually --

25   it may be -- I think it's -- I mean, in some respects

77

1    perhaps it's that it may be a bit broader than that.  This

2    is a January 5, 2008 two-page letter objection in which I

3    think it does go to the memorandum of understanding, but

4    I -- it's not clear to me that he's asserting the -- that

5    we haven't followed -- that the MOU provides or that the

6    information that was provided in connection with its

7    approval was misleading.  It appears to me to be a

8    collateral attack on the memorandum of understanding.  At

9    least that's the way I interpreted it.

10          THE COURT:  Well, it may be --

11          MR. BUTLER:  That may not be correct, but --

12          THE COURT:  If it is, then it's barred by the order

13   approving the settlement agreement in respect of the

14   unions in the Kettering, Ohio plant.  If it's something

15   less than that and a suggestion that there's been some

16   form of breach of the agreement, I believe the plan has

17   appropriate recognition of a remedy, but it's not really a

18   confirmation objection.

19          MR. BUTLER:  Your Honor, and beyond that I also --

20   if, in fact, it's -- the allegation has been the debtor

21   has not performed under the memo of understanding, a

22   matter of labor law in addition to everything else, the

23   MOU and labor law has a whole set of procedures including

24   governance --  grievance procedures that would be

25   triggered but it would not be -- I mean, that's the other

78

1    point I guess I would make.  It's hard to kind of sort out

2    what it was.

3        THE COURT:  Okay.  All right.  In any event, as a

4    plan objection it's without merit.  Not to say that

5    there's any merit to it otherwise, but it's really not an

6    objection to any provision of the plan.

7        Therefore, it's overruled.

8        MR. BUTLER:  Thank you, Your Honor.

9        Your Honor, the next objection is docket number

10    12017.  This is a two-page letter, but I think it's

11    actually one page.  Two pages have been stapled together

12    in the way we received it, docket number 12017, Robert W.

13    Ward.  Mr. Ward asserts that he's a shareholder and he's

14    entitled to the same percentage of ownership and

15    reorganized Delphi as he had in Delphi before filed his

16    Chapter 11 petition.  It's essentially, I think, a ride-

17    through objection.  Think should ride through the Chapter

18    11.  Again, from a legal perspective I think the debtor's

19    appropriate response to this is that while he may object

20    to his treatment under the plan, the party in which he

21    is -- the class in which he has appropriately classified

22    person has voted in favor of the plan.

23        THE COURT:  I agree with that again because of the

24    acceptance of the interest holder class the valuation

25    issue implicit in Mr. Ward's objection is not an issue

79

1    because the class has accepted the plan.  Again, see In

2    Re: Jersey City Medical Center, 817 F.2d 1055 at 1062

3    (Third Circuit 1987).

4         In addition, and this really goes for all of the

5    objections that I ruled on that are based upon the

6    objector's view that he or she is entitled to greater

7    value under the plan as a shareholder I have reviewed and

8    will rely on Mr. Resnik's (ph.) declaration.  Excuse me.

9    As well as Mr. Whitmir's (ph.) declaration and Mr.

10   Sheehan's declaration as to on a -- that the consensual

11   plan value is a reasonable value for purposes of a

12   consensual resolution and for setting the stock price for

13   distribution under the plan.

14        So for those reasons, the objection is overruled.

15        MR. BUTLER:  Thank you, Your Honor.

16        Your Honor, the next objection is objection one -- I

17   believe it's 12079, Orville W. Wright (ph.).  Mr. Wright

18   asserts that because he worked for General Motors for over

19   30 years his pension plan should not have been transferred

20   to Delphi upon separation and that his flow-back

21   opportunities to GM should have been better explained to

22   him.  I think, Your Honor, whatever that complaint is, it

23   is not, I think, a cognizable objection to confirmation of

24   a plan.  Mr. Wright, if he is -- in fact, has stock or has

25   claims it's hard to tell from the document that which --

80

1    whichever class he would have been properly classified.

2    Those classes are voted in favor of the plan and the

3    objection itself is not a cognizable objection to

4    confirmation.

5        THE COURT:  I agree with that and also note that to

6    the extent the objection has implicit in it an objection

7    to the GM settlement that's part of the plan.  I conclude

8    based on review of Mr. Step's declaration, as well as

9    Mr. Sheehan's and Mr. Miller's that the GM settlement is

10   again fair and reasonable and in the best interests of the

11   debtor -- the debtors and an appropriate resolution of I

12   believe, although I'm not sure one of Mr. Wright's

13   arguments in his objection that as I take it GM should be

14   responsible for his debts or for his claims.

15       MR. BUTLER:  Your Honor, the next objection is docket

16   number 12080 from Keith Miller.  Mr. Miller asserts that

17   he was not provided sufficient time to return his ballot

18   because he did not receive it from his proxy in a timely

19   manner.  His is a one-page letter objection dated

20   January 9, 2008 and he writes from Granite Bay, California

21   to the Court indicating that his voting package from his

22   proxy agent arrived on January 8, 2008 having come from

23   proxy services in Farmingdale, New York, and then

24   describes the process he did to seek to vote on this.

25       Your Honor, I -- the responses we have are as

81

1  follows.  First, the debtor believed that the cessation

2  (ph.) procedures order and the solicitation process

3  approved therein is a sound process.  I think as evidenced

4  from the fact that over 217 million shares voted in the

5  equity class on this plan and over 80 percent of the

6  bondholders, the senior notes voted on the plan, I think

7  there is sound evidence in the voting reports Your Honor

8  has already accepted in the record to evidence that the

9  kinds of responses that were received by the voting agents

10 would belie any sort of systemic flaw in the cessation

11 procedures.  I don't know this particular circumstances of

12 Mr. Brown's or Mr. Miller's relationship with his proxy

13 agent.

14      THE COURT:  Do you know how much of debt or equity he

15 may hold?

16      MR. BUTLER:  I don't, Your Honor.

17      THE COURT:  Okay.

18      MR. BUTLER:  I mean, I don't.  I mean, it would need

19 to be a very large amount.

20      THE COURT:  To matter.

21      MR. BUTLER:  To matter in this case.

22      THE COURT:  Certainly it wasn't large enough for him

23 to appear here.

24      MR. BUTLER:  That's correct, Your Honor.

25      THE COURT:  All right.  All right.  I will overrule

1    this objection first because based upon the voting

2    tabulation in the record it appears to me to be the case

3    that as Mr. Butler noted this plan unlike a lot of plans

4    had a remarkable amount of voting on it, particularly in

5    the category where you would have a proxy agent or broker,

6    i.e., the public bonds and stock.  So taking Mr. Miller's

7    objection at its face without any ability to examine him

8    or his agent it appears to me that if he received his

9    ballot late that was a rare aberration.

10    Secondly, it appears highly likely to me that the

11    lateness of his ballot is moot in that as far as

12    numerocity is concerned the public debt and stock classes

13    voted in favor of the plan whether his vote would be

14    counted or not.

15    As far as dollar amount would be concerned, his claim

16    would have to be quite high, extremely high to alter the

17    vote and as I just noted he has not appeared or hired a

18    lawyer from which I can -- I believe -- reasonably infer

19    that it is not high, so that objection is overruled.

20    MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

21    next objection is docket number 12081.  This is the

22    objection of the Monroe County Water Authority.

23    THE COURT:  Monroe County?

24    MR. BUTLER:  Excuse me.  Monroe County.

25    THE COURT:  Monroe County.

83

1          MR. BUTLER:  Yeah.  Monroe County.  Sorry.  Monroe

2     County Water Authority from Rochester, New York.  It was

3     dated -- letter to me dated January 9, 2008 and the  --

4     their complaint here really goes to their treatment under

5     the plan to the extent that they have -- their claim is an

6     unsecured claim.  They basically indicate that they as a

7     governmental entity can't really accept the form of

8     planned currency that's proposed in this case or in fact

9     it would be a burden on them and they explained in their

10    letter objection why that is.

11         So from the debtor's perspective this again is --

12    should, I think, be treated here today in this hearing as

13    an objection by a creditor to treatment under the plan

14    which I believe should be overruled by the Court based on

15    among other matters the class having voted in favor of the

16    plan.

17         THE COURT:  All right.  I also believe arguably this

18    objection was made under 1123(a)(4) and perhaps also under

19    11 U.S.C. 1122(a), but I don't believe it has merit under

20    either of those sections 1123(a)(4) provides that a plan

21    shall "provide the same treatment for each claim or

22    interest of a particular class.  Unless the holder of a

23    particular claim or interest agrees to a less favorable

24    treatment."  The operative word there is "claim."  "...

25    the same treatment for each claim or interest of a

84

1    particular class."  Monroe County's claim is being treated

2    the same as every other claim in the class.  It is -- I'll

3    take it on faith because Monroe County isn't here to

4    establish it on a contested basis, that Monroe County may

5    have less ability to use or receive that treatment, but I

6    do not believe that's what 1123(a)(4) contemplates as

7    prohibiting disparate treatment.

8        I also believe the operative word in 1122(a) is also

9    claim as opposed to claimant and again the claim is

10   substantially similar to all other unsecured claims.  I

11   also have some question as to whether as a factual matter

12   Monroe County cannot monetize its recovery in some way,

13   shape or form either through selling it or through setting

14   up some form of subsidiary, but that ultimately is neither

15   here nor there given the plain meaning of the statute and

16   the cases which the debtors have cited in their reply

17   memorandum that construe what Congress meant to preclude

18   under 1129 -- I'm sorry, 1123(a)(4) and 1122.

19       So that objection will be overruled.

20       MR. BUTLER:  Thank you, Your Honor.

21       Your Honor, I believe the last objection to be dealt

22   with -- there's one other objection I'd like to go back

23   to, but the last objection we've not talked about to be

24   dealt with today I believe is objection number 12083 and

25   that's the objection of Naomi M. Frye, F-R-Y-E.

85

1          Ms. Frye filed a letter -- actually, a written

2     objection -- on January 10, 2008 in which she complained

3     about her treatment having purchased General Motors shares

4     in 1950 and ultimately having -- talking about various

5     spinoffs that she would have participated in including the

6     Delphi spinoff in May of 1999 and does not believe the

7     program that is proposed under the plan, in fact, works to

8     her favor and asks that the small investor be protected,

9     that all partial common stock in the corporation be paid

10    proportionately for shares in the amount at the rate of

11    7193 and that the same protection made the similar

12    shareholders as a class action suit without fees and

13    attorney's fees and costs.

14         Again, Your Honor, I think as a general response to

15    this objection we would rely on the fact that the class in

16    which Ms. Frye is situated voted in value of the plan and

17    that her objection should be overruled.

18         THE COURT:  Okay.  I agree with that for the same

19    reasons that I dealt with similar objections.  I'd also

20    note that in light of Mr. Resnik's declaration

21    supplemented by Mr. Sheehan's and Mr. Whitmir's and my

22    review of the GM settlement that, in fact, based upon my

23    assessment of the value of these debtors the interests of

24    small investors like Ms. Frye were, indeed, well

25    represented by the equity committee and to the extent such

86

1    investors had securities law claims by the MDL

2    representatives.

3        So that objection will be overruled.

4        MR. BUTLER:  Thank you, Your Honor.  Your Honor, I'd

5    like, if I could, to go back to the docket number 11883 on

6    page 27 of Exhibit 158 that deals with the Audio MPEG,

7    Inc. objection that's been settled.  I'd like to summarize

8    that settlement on the record, if I may.

9        THE COURT:  Okay.

10       MR. BUTLER:  This objection is intended to resolve

11   the plan objection and another related filing not being

12   heard today, which is their motion to lift stay filed in

13   the Chapter 11 case.

14       First, Delphi is agreeing to lift the stay for a

15   limited purpose of permitting the movant to perform an

16   audit under the license agreement as set forth in Article

17   6 of the license agreement.

18       Second, Delphi and MPEG agreed to work together to

19   resolve cure amounts including using reasonable efforts to

20   fulfill MPEG's requests and also providing information

21   regarding the use of the license by controlled companies

22   as defined in the license agreement.  Delphi will also use

23   reasonable efforts to provide MPEG with reports that are

24   timely as required by the agreement.

25       Third, to the extent the license agreement has

87

1      assumed the exclusive jurisdiction provision of the

2      license agreement will apply with respect to post-

3      emergence obligations.

4           Fourth, the allowed cure amount will be paid in cash

5      provided that no cure election form was mailed to MPEG.

6      They didn't file it -- have the opportunity to file a cure

7      election and I'll deal with that a little bit later, Your

8      Honor.  We, I think, discussed it in the brief.  There was

9      a small group of -- maybe not so small group of cure

10     parties that we were able to verify were not mailed to

11     cure notice.  Under the proposed confirmation order their

12     default has been reversed to be cash rather than the class

13     treatment, the class 1C treatment because they were not

14     given the opportunity by the debtors to consider the

15     option.  Otherwise -- and given the -- we had an

16     opportunity to briefly examine the elections that were

17     sent back.  The majority elections sent back were to be

18     received cash not to remain -- to receive treatment by --

19     and so that we thought that was an appropriate disposition

20     of that.

21          MPEG asserts they were in that category.  We've not

22     been able to verify that yet, but if they are, they'd be

23     treated in the same fashion as those similarly situated.

24          Fifth, to the extent the license agreements rejected

25     and the licensor satisfies the second circuit standard for

88

1      an administrative claim then their allowed administrative

2      claim would also be paid in cash.  I think that's, in

3      fact, the law.

4            Finally, claims against -- any claims that they may

5      have against -- that is, that MPEG may have against

6      nondebtors that are independent of the commercial

7      relationship between MPEG and the debtors are not covered

8      under any third-party release contemplated in Article

9      11(5) of the plan and that is certainly acceptable to the

10     debtors with respect to --

11           THE COURT:  Okay.

12           MR. BUTLER:  -- the particular settlement.

13           THE COURT:  Is that the language that you were

14     waiting on, ma'am?

15           MS. DOWD:  Yes, Your Honor.  That's essentially

16     correct.  The only thing I wanted to clarify for the

17     record is that the settlement is also -- encompasses MPEG

18     parent.  The Audio MPEG, Inc. is owned by an Italian

19     entity, which we referred to in the pleadings as Sisvel,

20     S-I-S-V-E-L, and they're bound by this as well.  They

21     filed a joint objection.  It encompasses both of them.

22           And then on the point that Mr. Butler was talking

23     about as best as we know, I would be surprised if it was

24     anything other.  We're not a material purchase supply.  We

25     didn't get the notice.  We were in the other category of

1      other executory contracts.

2           THE COURT:  All right.

3           MS. DOWD:  So we didn't make it an election -- we

4      weren't mailed anything and we're the fall-back category.

5           THE COURT:  Okay.  Well, if you can satisfy them of

6      that they've agreed to that.  When you say it includes S-

7      S-V-E-L, obviously it's encompassed by it.  You're not

8      conflating the two.  They each have their own relationship

9      with the debtor.

10          MS. DOWD:  It's one license agreement.  There's

11     both -- there's only one license agreement.

12          THE COURT:  Okay.  But they're treated as -- they're

13     both treated as separate entities.  You're not doing

14     anything more than saying that this settlement applies to

15     both of them.

16          MS. DOWD:  Correct.

17          THE COURT:  Okay.  All right.

18          MR. BUTLER:  Your Honor, I think that will dispose

19     of, I believe, all of the objections by either settlement

20     or ruling of the court other than the objections of the

21     unions carried to tomorrow and the objection, I believe,

22     of Mr. Halazon related to management conference carried to

23     tomorrow.

24          THE COURT:  That portion of his objection?

25          MR. BUTLER:  That portion of his objection.  Other

90

1    than that, I think the objections have been disposed of

2    and that would conclude the debtor's presentation, Your

3    Honor, for the first day of the confirmation hearing and

4    we plan to return at ten o'clock tomorrow.

5         THE COURT:  Okay.

6         MR. BUTLER:  If that's acceptable to the Court.

7         THE COURT:  All right.  And again, just to be clear,

8    the only evidentiary portion of the record that is still

9    open is with regard to the debtor's case in support of the

10   executive compensation elements of the plan and the

11   union's objections to it.

12        In addition to that, we'll have some comments on the

13   confirmation order, but only insofar as clarifying the

14   record as to my belief, again leaving aside the issues

15   that are reserved for tomorrow, but in all other respects

16   that the 1129(a) requirements that have been met.  As you

17   know, the Court has an independent obligation to review

18   those.  A number of objections were settled that raised

19   certain of those issues.  I considered them independently

20   and I'll address them tomorrow, but based on my review of

21   the record and review of the case law and the Code, of

22   course, I believe I'll be able to make the finding that

23   the relevant provisions of 1129(a) have been satisfied.

24        MR. BUTLER:  Thank you, Your Honor.  Your Honor, with

25   respect -- just I'll say here on the record so parties can

91

1      consider it and talk with me afterwards on this matter,

2      but with respect to the entry of the confirmation order

3      Your Honor is prepared to grant confirmation tomorrow

4      after the completion of the record and the presentations

5      relating to it and any questions Your Honor has.

6           In addition to any comments Your Honor may be making

7      we are still reviewing an additional rounds of comments

8      from the statutory committees from General Motors and from

9      the plan investors and want to complete that process in

10     good faith.

11          Your Honor can imagine what the last number of hours

12     have been like for the parties and so I think that

13     probably the prudent thing to do tomorrow if Your Honor is

14     prepared to grant confirmation would be to have the

15     parties here, the Court's -- whatever the Court has to

16     tell us, but I think I'd like the weekend to be able to

17     research and consider comments and present an order on --

18          THE COURT:  Tuesday.

19          MR. BUTLER:  On Tuesday.

20          THE COURT:  That's fine.  Unlike the case with other

21     orders, my comments so far at least are not on the

22     drafting of the order but simply to note for the record in

23     some instances why I am prepared to make the particular

24     finding.  For example, a finding that the plan does not

25     run afoul of 1129(a)(4) -- I'm sorry, 1123(a)(4).  Excuse

92

1    me.  And one or two similar instances.  I don't

2    contemplate giving you frankly based on my review the

3    confirmation order any substantive comments on it.

4        MR. BUTLER:  Well, thank you, Your Honor.  With

5    respect -- I would say tomorrow just again the one aspect

6    for the record that tomorrow -- that I will also want to

7    introduce and I just want to call the Court's attention to

8    it.  On 1128(a)(5) we dealt with this in a brief, we have

9    the business of identifying officers and directors for the

10   Court or a process of their selection.  With respect to

11   the subsidiary officer directors we intend to introduce an

12   exhibit tomorrow that has that so it's in the evidentiary

13   record.  I think Your Honor is aware from our brief

14   there's a process that was established that's in the plan.

15   There's a selection committee that has representatives of

16   the statutory committee or designees of them of the plan

17   investors and if I'm trying to remember the -- I guess the

18   debtor.  I forgot somebody.  Of the debtor as -- that are

19   in the process of continuing their work on that.  I think

20   they expect to have that work completed by the effective

21   date, but so it's -- we're asking for Your Honor to

22   determine our compliance of 1128(5) both in the filing of

23   the additional exhibit as it relates to the subsidiaries

24   but as to the parent company based on the process and

25   procedure that's been established in the plan in which

93

1       there is participation that I suggested.

2           THE COURT:  Okay.  That's fine.  All right.  So I'll

3       see you all at ten o'clock tomorrow.  You can leave your

4       materials here and that includes the screen.  Just the

5       last representative of the debtor check with the marshals

6       to make sure the courtroom is locked.

7           MR. BUTLER:  Thank you, Your Honor.

8           THE COURT:  Okay.  Thank you.

9       (Proceedings concluded at 5:26 PM.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

94

1

2                        C E R T I F I C A T I O N

3

4      I, Pnina Eilberg, court approved transcriber, certify that the

5      foregoing is a correct transcript from the official electronic

6      sound recording of the proceedings in the above-entitled

7      matter.

8

9      _____   January 23, 2008

10     Signature of Transcriber              Date

11

12     Pnina Eilberg

13     typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25