1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DELPHI CORPORATION ET AL,

9

10        Debtor.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              January 25, 2008

19              12:51 PM

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1   HEARING re "Automodular motion to compel assumption or

2   rejection of executory contracts and to allow payment of

3   administrative expense claim" - Notice of motion of Automodular

4   Assemblies, Inc., Tec-Mar Distribution Services, Inc., and

5   Automodular Assemblies (Ohio) Inc., to compel assumption or

6   rejection of executory contracts and motion to allow and direct

7   payment of administrative expense claim (Docket No. 11180).

8

9   HEARING re "Employees' motion to vacate automatic stay" -

10  Motion to vacate automatic stay for cause to commence action in

11  N.D. Alabama filed by Jimmy Mueller, David Gargis and Keith

12  Livingston (Docket No. 11350, 11631).

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   HEARING re "Interiors and Closures Businesses Sale Motion" -

2   Expedited motion for orders under 11 U.S.C. Sections 363, 365,

3   and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 (A)(I)

4   Approving bidding procedures, (II) Granting certain bid

5   protections, (III) Approving form and manner of sale notices

6   and (IV) setting sale hearing date and (B) Authorizing and

7   approving (I) Sale of certain of debtors' assets comprising

8   substantially all the assets primarily used in debtors'

9   cockpits and interior systems and integrated closure systems

10  business free and clear of liens, claims and encumbrances, (II)

11  Assumption and assignment of certain executory contracts and

12  unexpired leases and (III) Assumption of certain liabilities

13  (Docket No. 10606).

14

15  HEARING re "Audio MPEG's motion to modify automatic stay" -

16  Motion of Audio MPEG, Inc., and S.I.SV.EL. to modify automatic

17  stay to perform audit under license agreement

18  (Docket No. 11820).

19

20

21

22

23

24

25

4

1   HEARING re "Amended Interior and Closures Business Sale Motion"

2   Expedited motion pursuant to 11 U.S.C. Section 105(a) and Fed.

3   R. Bankr. P. 6004 and 9019 authorizing and approving compromise

4   with Inteva Products, LLC and to amend and restate order under

5   11 U.S.C. Sections 363, 365 and 1146 and Fed R. Bankr. P. 2002,

6   6004, 6006 and 9014 authorizing and approving (I) Sale of

7   certain of debtors' assets and comprising substantially all the

8   assets of the cockpits and interior systems and integrated

9   closure systems business free and clear of liens, claims and

10  encumbrances, (II) Assumption and assignment of certain

11  executory contracts and unexpired leases and (III) Assumption

12  of certain liabilities (Docket No. 12097).

13

14  HEARING re "Bearings Sale Motion" - Motion to authorize

15  expedited motion for orders under 11 U.S.C. sections 363, 365

16  and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014 (A)(I)

17  Approving bidding procedures (II) Granting certain bid

18  protections, (III) Approving form and manner of sale notices

19  and (IV) Setting Sale Hearing Date and (B) Authorizing and

20  approving (I) Sale of debtors' assets primarily used in debtors

21  Bearings Business free and clear of liens, claims and

22  encumbrances, (II) Assumption and assignment of certain

23  executory contracts and unexpired leases and (III) Assumption

24  of certain liabilities (Docket No. 12104).

25

5

1   HEARING re "Verizon Administrative Expense Motion" - Amended

2   motion of Verizon Services Corp. for payment of administrative

3   expense claim pursuant to MobileAria Sale Order

4   (Docket No. 11496).

5

6   HEARING re "Twenty-Fourth Omnibus Claims Objection" - Debtors'

7   twenty-fourth omnibus objection pursuant to 11 U.S.C., Section

8   502(b) and Fed. R. Bankr. P.  3007 to (A) Duplicate of amend

9   claims, (B) Claims not reflected on debtors' books and records,

10  (C) Untimely claims and (D) Claims subject to modification,

11  modified claims asserting reclamation and claim subject to

12  modification that is subject to prior order (Docket No. 11588).

13

14

15

16

17

18

19

20

21

22

23

24

25  Transcribed by:  Pnina Eilberg

6

1

2   A P P E A R A N C E S :

3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4       Attorneys for Debtors

5       333 West Wacker Drive

6       Chicago, IL 60606

7

8   BY:   JOHN WM. BUTLER, JR., ESQ.

9         JOHN K. LYONS, ESQ.

10        RON E. MEISLER, ESQ.

11

12

13   SKADEN, ARPS, SLATE, MEAGHER & FLOM LLP

14       Attorneys for Debtors

15       Four Times Square

16       New York, NY 10036

17

18   BY:   KAYALYN A. MARAFIOTI, ESQ.

19         THOMAS J. MATZ, ESQ.

20

21

22

23

24

25

7

```
 1   TOGUT, SEGAL & SEGAL LLP
 2         Attorneys for Debtors
 3         One Penn Plaza
 4         New York, NY  10119
 5
 6   BY:  NEIL BERGER, ESQ.
 7
 8
 9   LATHAM & WATKINS LLP
10         Attorneys for Creditors Committee
11         885 Third Avenue
12         New York, NY 10022
13
14   BY:  MICHAEL RIELA, ESQ.
15
16
17   JONES DAY
18         Attorneys for ND Acquisition
19         77 West Wacker Drive
20         Chicago, IL 60601
21
22   BY:  BRAD B. ERENS, ESQ.
23
24
25
```

8

1   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

2        One New York Plaza

3        New York, NY 10004

4

5   BY:   RICHARD J. SLIVINSKI, ESQ.

6

7

8   KING & SPALDING LLP

9        1185 Avenue of the Americas

10       New York, NY 10036

11

12  BY:   BARRY N. SEIDEL, ESQ.

13

14

15  ARNALL GOLDEN & GREGORY LLP

16       Attorneys for Verizon Services Corp.

17       171 17th Street NW

18       Atlanta, GA 30363

19

20  BY:   DARRYL SCOTT LADDIN, ESQ.

21       (TELEPHONICALLY)

22

23

24

25

9

1   FOLEY & LARDNER LLP

2        Attorneys for Kuss Corporation

3        321 North Clark

4        Chicago, IL 60610

5

6   BY:   JILL L. MURCH, ESQ.

7        (TELEPHONICALLY)

8

9

10  FOLEY & LARDNER LLP

11       Attorneys for Savic Innovative Plastics

12       500 Woodward Avenue

13       Detroit, MI 48226

14

15  BY:   JUDY A. O'NEILL, ESQ.

16       (TELEPHONICALLY)

17

18

19

20

21

22

23

24

25

10

1          P R O C E E D I N G S

2          THE COURT:  Please be seated.  Okay.  Delphi

3  Corporation.

4          MR. BUTLER:  Your Honor, good morning.  Jack Butler

5  and Kayalyn Marifioti from -- and Tom Matz from Skadden and

6  Neil Berger from the Togut firm here on behalf of

7  Delphi Corporation for its January omnibus hearing.

8          Your Honor, we did file a proposed agenda for the

9  twenty-seventh omnibus hearing and would propose to file that

10 agenda.

11         THE COURT:  Okay.

12         MR. BUTLER:  Backing away from the microphone, Your

13 Honor, because I --

14         THE COURT:  Well, we have a whole new sound system

15 because suddenly everyone can here me.

16         MR. BUTLER:  It's amazing.  Change the method of

17 delivery at the podium.  Your Honor, the first matter on the

18 agenda is the Automodular motion to compel assumption or

19 rejection at Docket No. 11180.  The parties are engaged in

20 discovery on this matter now and ask Your Honor to continue

21 this to the February 21st omnibus hearing.

22         THE COURT:  Okay.  This is -- this is different than

23 their -- that's fine.

24         MR. BUTLER:  Yes, Your Honor.

25         THE COURT:  Yes.

11

1    MR. BUTLER:  This has to do with taking discovery

2    with respect to the administrative portion of it.

3    THE COURT:  That's fine.

4    MR. BUTLER:  Your Honor, the next matter on the

5    agenda is an employees motion to vacate the automatic stay in

6    order to commence litigation in the Northern District of

7    Alabama on some ERISA matters filed at Dockets No. 1135011631.

8    The parties have been discussing this issue and have agreed to

9    move it to the February 21st Omnibus hearing with Your Honor's

10   permission.  The debtors would file a response no later than

11   February 14th.  And this would constitute an agreement, also,

12   to have the preliminary hearing and this heard at the February

13   21st hearing.

14   THE COURT:  Okay.  That's fine.

15   MR. BUTLER:  Your Honor, the next matter on the

16   agenda is the first of two motions dealing with the Interiors

17   Enclosures business sale that Your Honor approved back in

18   December.  At that time, you may recall that the Court -- there

19   were, I believe twenty-eight objections that were filed to the

20   motion most of the dealing with cure issues and assumption

21   issues.  Thirteen of those were disposed of at the time of

22   hearing and fifteen of them were continued for hearing today.

23   Your Honor, also, made explicit on the record that certain of

24   the findings you were making at the hearing in December were

25   not applicable to the continued -- at that time at least, were

12

1   not applicable to the continued objections.

2          I'm pleased to report to Your Honor that all of the

3   remaining objections have been resolved.  There are three of

4   them that I need to summarize here on the record.  There's a

5   proposed order that we'll submit to Your Honor that addresses

6   the resolution of all fifteen of these matters.  It also would

7   then, based on the settlements that have been reached, the

8   order we're asking Your Honor to consider for entry today would

9   also make applicable the findings of the sale order as it

10  relates to these objects as well.  And there are three that I

11  wanted to address in particular.  The -- the first of those,

12  and these are agreements we -- specific agreements we're

13  indicating would be dealt with on the record today.  I should

14  indicate that the primary issues raised in the fifteen

15  adjourned objections involve primarily disputed cure amounts.

16  The identification or characterization of the initial notices

17  of the contracts to be assumed or assigned and issues relating

18  to adequate assurance and future performance.

19          The first objection I'd like to deal with this is the

20  objection -- objections filed by Savic Innovative Plastics

21  U.S., LLC.  And that deal with objections filed at Dockets No.

22  11010, 11011 and Docket No. 11368.  In their objection Savic

23  disputed the debtors' cure amounts and asserted that the

24  debtors improperly identified the initial notices, the

25  contracts to be assumed and assigned.  The parties have

13

1   resolved the Savic objections, consensually, under the --

2   what's called the Delphi Savic Claims Resolutions Stipulation

3   and Agreed Order, which is the stipulation that's dated January

4   24, 2008 that's going to be filed with the Court.

5           Essentially, that stipulation provides for the

6   payment of agreed net cure amounts in the amounts of

7   $119,643.34 and 2,199,917.19 as -- involving the resolution of

8   all pre-petition disputes relating to the contracts to be

9   assumed or assigned.  In addition, upon payment by the debtors

10  of the amount set forth in the Savic stipulation, the Savic

11  proofs of claim will also be withdrawn.

12          That summarizes, Your Honor, the Savic transaction.

13          THE COURT:  Okay.  And I believe counsel for Savic is

14  on the telephone.

15          MS. O'NEILL:  Yes I am, Your Honor.  Judy O'Neill

16  from Foley and Lardner.

17          THE COURT:  Okay.  And that's -- that's consistent

18  with your understanding.

19          MS. O'NEILL:  That is, Your Honor.

20          THE COURT:  All right.

21          MR. BUTLER:  Your Honor, the next matter I'd like to

22  deal with on the record is the objection that's filed by

23  Spartec Corporation and Spartec Polycom.  This was filed at

24  Docket No. 11381.  And in this objection Spartec disputed the

25  cure amount asserted in the debtors' cure notice and asserted a

14

1   total cure of approximately 42,000 dollars for products

2   delivered post-petition.  This consisted of an amount of -- an

3   exact amount of 30,635.36 for purchase order 550057020 and

4   11,093.72 for purchase order 550057021.  This matter has been

5   resolved, Your Honor, consensually and the debtors will make

6   the following payments to Spartec, pursuant to a timeline.

7   They will pay 3,264.85 by February 15th of 2008.  And another

8   payment, by that time, of 4,330.26 and then will make payments

9   of 58,147.71 in the ordinary course.

10          We've also agreed to pay Spartec for shipments

11  received on or after January 10, 2008 in the ordinary course.

12  And we've been asked -- I've been asked to place on the record

13  the following statement.  For the avoidance of doubt, Spartec

14  having timely filed the Spartec objection is not subject to the

15  terms of paragraph 7(b) of the bidding procedures order

16  pertaining to circumstances in which no objection is timely

17  filed.  And nothing shall preclude Spartec from asserting any

18  and all future claims it may have arising out of the contracts

19  at issue in the Spartec objection.  In consideration for the

20  debtor's commitment to these transactions Spartec has withdrawn

21  the Spartec objection and that is at Docket No. 12337.  And I

22  believe Spartec is represented on the phone as well.

23          THE COURT:  Is that right?

24          MR. BUTLER:  I thought we had Spartec.

25          THE COURT:  No, maybe not.

15

1      MR. BUTLER:  Okay.  And then last, the last of the

2  fifteen resolutions that I've been asked to place on the record

3  is that with respect to Leer Corporation.  Leer Corporation

4  filed an objection at Docket No. 11378 and there has -- this

5  has been -- this objection was resolved as part of a broader

6  settlement between the parties that was set forth in a

7  stipulation and a proposed agreed order that will be filed

8  separately with the Court.

9      But basically the parties have agreed that if prior

10  to the closing date the Court enters the Leer stipulated

11  settlement agreement and enters an order confirming the

12  debtors' plan of reorganization, all cure amounts due and owing

13  in respect to the purchase orders at issue in the Leer

14  objection will be paid in accordance with the Leer stipulated

15  order and settlement agreement.  If, however, the closing date

16  occurs before the entry of either of the Leer stipulated orders

17  and the settlement agreement or the confirmation order properly

18  following the closing date, Delphi shall pay the amount of

19  245,325.33 with respect to purchase order 550038138 to Leer.

20  And such amount will be offset from any other payments that

21  Delphi may owe Leer, as determined under the Leer stipulated

22  order and settlement agreement.  The -- and by closing date,

23  that's the closing date with respect to this transaction that

24  I'm referring to in terms of the sale of business.

25      And as a result of the -- Leer also acknowledges that

16

1   the buyers have addressed Leer's concerns concerning adequate

2   assurance of future performance and therefore Leer has agreed,

3   based on this settlement, to withdraw the objection.

4             THE COURT:  Okay.

5             MR. BUTLER:  Your Honor, I think that's -- those are

6   the only three that I've been asked to summarize on the record.

7   We have a proposed order that disposes of the balance of the

8   objections.

9             THE COURT:  Okay.  Well, let me make sure then

10  that -- that's the order -- because there are a couple of

11  orders dealing with this --

12            MR. BUTLER:  Right.

13            THE COURT:  -- with this transaction and that's the

14  one order resolving adjourned objections, correct?

15            MR. BUTLER:  Yes.  Your Honor, I'd like to pass up a

16  current copy of the order if I May

17            THE COURT:  Okay.

18            MR. BUTLER:  Because this was one that was worked on,

19  again, overnight last night.

20            THE COURT:  All right.  I think I've seen that -- if

21  that was what was provided to chambers.

22            MR. BUTLER:  Yes.

23            THE COURT:  Okay.  And that looks fine to me.

24            MR. BUTLER:  Thanks, Your Honor.  There is another

25  order we'll deal with in just a few moments and another motion

17

1    involving Interiors Business.

2            THE COURT:  Okay.

3            MR. BUTLER:  Your Honor, before we get to that, item

4    number four on the agenda is Audio MPEG's motion to modify the

5    automatic stay.  A motion filed at Docket No. 11820.  Your

6    Honor, from my perspective we dealt with this, in its entirety,

7    at the confirmation hearing as part of the settlement.  We

8    indicated to Your Honor that there be a joint stipulation

9    that's been submitted.  I've believe it's been submitted in

10   connection with this motion.  We'd ask Your Honor to agree to

11   enter the stipulation and settlement of the motion.

12           THE COURT:  That's fine.  I'll do that on the record

13   at the confirmation hearing and I have that order.

14           MR. BUTLER:  Thank you, Your Honor.

15           THE COURT:  That stipulation is so ordered.

16           MR. BUTLER:  Thank you, Your Honor.  Your Honor,

17   this -- now turning back to the Interior Enclosures business.

18   We filed an amended Interior Enclosure motion -- rather a

19   business of sale motion earlier this month at Docket No. 12097.

20   And we have provided a revised order to chambers this morning

21   with respect to this particular motion.  Essentially, Your

22   Honor, following the December 20, 2007 approval of the sale of

23   this business to Inteva, which is a subsidiary of Renco, the

24   buyer's formal name is Inteva Products, LLC.  On December 26th

25   and thereafter, following a receipt of a letter from Inteva,

18

1   the company and Inteva have been in discussions regarding

2   various conditions to closing that Inteva had concluded might

3   not be able to be satisfied in terms of the conditions to

4   closing.  The -- the end -- the punch line with respect to all

5   those discussions is that we've been able to successfully

6   negotiate a letter agreement, which is the subject of this

7   motion, in which Inteva has agreed to waive those conditions,

8   various conditions to closing that had been a matter of dispute

9   or that had been discussed as potentially not being able to be

10  closed in exchange for the company agreeing to take part or

11  finance part of the purchase price through a note payable, the

12  terms of which are described in the motion.  And taking a note

13  from the Inteva entity for that purpose.

14          We have, under the original agreement, sections

15  number 7.24, 7.25, 7.28, 7.29 and 7.210 are all waived by the

16  buyers and they've waived other conditions as well under the

17  particular -- under the major agreement.  There are still

18  closing conditions that exist.  The closing conditions that

19  exist, however, are, in some respects, more objective.  They

20  are things relating to a sale order approval, bidding

21  procedures having been entered by Your Honor.  No law or

22  judgment prohibiting consummation, government approvals,

23  receipts of necessary consents, board approval, accuracy,

24  warranties, performance of covenance, the -- there is no

25  material adverse effect provision but there are waivers that

19

1   have been given in connection with aspects of that.  And there

2   are insurance certificates that have to be -- have to be

3   provided.  So from the debtors' perspective the conditionality

4   of the agreement has been significantly reduced as a part of

5   these negotiations.  And --

6          THE COURT:  So this would resolve the dispute raised

7   in Inteva's letter?

8          MR. BUTLER:  Correct.  It will resolve that dispute

9   and it will provide more certainty.  Obviously there's other

10  matters that we need to deal with them over the next number of

11  weeks.  We hope to have this transaction close during the month

12  of February.  That's the current target date and we continue to

13  move forward.  We have framed this up, Your Honor, as a 9019

14  settlement based on the documents that we have provided Your

15  Honor.  I would, for purposes of the record, indicate that we

16  have prepared eleven exhibits to be admitted into the record,

17  including the declaration of Mr. Sheehan.  There are no

18  objections to this motion.  I'd like to move -- and we have

19  designated certain of them highly confidential and disclosed

20  them to the Court, including the December 26th letter.  I'd

21  like to move --

22          THE COURT:  And the committee's seen that as well?

23          MR. BUTLER:  Yes, Your Honor.  I'd like to move that

24  for -- those exhibits, including the three exhibits marked

25  highly confidential into the record.

20

1       THE COURT:  Okay.  Any objection to that?  All right.

2  They'll be admitted.

3  (Exhibits 1-11, including three marked highly confidential,

4  were hereby received as Debtor's Exhibit 1-11 for

5  identification, as of this date.)

6       MR. BUTLER:  And Your Honor, I do have -- Mr. Sheehan

7  is present in court today and is available for any cross

8  examination or any questions the Court may have in connection

9  with his declaration on this matter.

10       THE COURT:  Okay.  Does anyone want to cross examine

11  Mr. Sheehan?  Okay.  I'll accept his declaration.

12       MR. BUTLER:  Your Honor, then based on -- on the

13  record, we'd ask Your Honor to grant the relief requested in

14  the motion.

15       THE COURT:  Okay.  I'll -- I'll do that.  I believe

16  the terms of the letter agreement are reasonable in light of

17  the -- of the facts.

18       MR. BUTLER:  Thank you, Your Honor.

19       Your Honor, the next matter on the agenda is the

20  Bearings sale motion, another transaction involving the

21  disposition of a non-core asset originally designated as such

22  by the debtors back in 2006 in connection with its

23  transformation plan.

24       Your Honor, the -- today's hearing, and I should

25  indicate that the proposal or the motion today is for the

21

1   proposed sale of the business.  And these are assets primarily

2   used in the debtors' bearings businesses to an entity named

3   ND Acquisition Corp for an amount up to 44.2 million dollars

4   subject to certain adjustments, as well as the assumption

5   assignment of assumed contracts and the assumption assignment

6   of assumed liabilities.

7           This is a proposed two-step transaction, Your Honor.

8   Today's hearing is limited to the request to establish and

9   approve bidding procedures, notice procedures and certain bid

10  protections and to set the sale hearing.  And we would propose,

11  after making this transaction subject to higher and better

12  offers at an auction on February 13, 2008, if necessary to come

13  back to the Court at the February hearing -- February omnibus

14  for approval of the transaction.

15          Your Honor, in connection with this hearing we have

16  designated six exhibits, including a declaration by Mr. Sheehan

17  describing the basis for the debtors' business judgment in

18  entering into the proposed transaction with ND Acquisition

19  Corporation and I'd like to move admission of those documents

20  into evidence.

21  (ND Acquisition Corporation Exhibits were hereby received as

22  Debtor's Exhibit 1-6 for identification, as of this date.)

23          THE COURT:  Okay.  Any objection to that?  And does

24  anyone want to cross examine Mr. Sheehan?  Okay.  Those will be

25  admitted.

22

1        MR. BUTLER:  Your Honor, this transaction which

2   was -- has been negotiated under short notice was reviewed by

3   the creditors committee in detail.  There were a number of

4   changes that the creditors committee was very helpful to the

5   company in getting made to the agreements, as the committee was

6   able to weigh in matters that we had not been successful in

7   negotiating with the purchaser.  For example, I'll just

8   summarize some of them; we had been unable to obtain a cap on

9   expense reimbursement amounts.  After the committee's

10  involvement a cap has been agreed to of one million dollars.

11       The creditors committee also raised concerns about

12  the financing contingencies, pursuant to which the purchasers

13  of financing would be a condition to closing.  But the bidding

14  procedures required a qualified bid couldn't be conditioned on

15  obtaining financing.  The creditors committee was able to help

16  us negotiate an agreement that to the extent that a qualified

17  bid is received, the buyer will not be entitled to the bid

18  protections or be able to participate in auction unless it

19  waives the financing contingency prior to the auction.  So the

20  other bidders will still not be able to put a financing

21  contingency in place but if we're able to get a qualified bid

22  on that basis then the --

23       THE COURT:  Then it's apples to apples.

24       MR. BUTLER:  Then the (indiscernible) has to step up

25  and make it apples to apples.

23

1      THE COURT:  Okay.

2      MR. BUTLER:  Or they lose their bid protections.

3      The third agreement is that bids must include written

4  confirmation from General Motors.  That General Motors approves

5  the bid -- the bidder to operate the Bearings business, so that

6  information is available to the debtors and to the committees.

7      Fourth, the requirement -- the initial overbid --

8  originally, under the bidding procedures, we filed it would

9  have to be 500,000 dollars greater than the purchase price,

10  breakup fee and expense reimbursement.  That's been reduced to

11  250,000 dollars by agreement.

12      And finally, the requirement that a bid contain a

13  commitment to close within not more than fifteen days after the

14  entry of the sale approval order has been increased to forty-

15  five days.

16      I believe, with these changes, the creditors

17  committee now supports entry of this order approving the

18  business -- the sale -- I should say approving the bid

19  procedures and bid protections.  The breakup fee here is 1.5

20  million dollars.  I should indicate to Your Honor that the

21  purchase price of 44.2 million dollars, that I think Your Honor

22  may be aware of, is subject to certain reductions and could be

23  reduced to as low as 18.2 million dollars under certain

24  conditions.  And in other -- but also is subject to upward

25  adjustments of as much as eight to ten million dollars relating

24

1    to other conditions -- post-closing conditions set forth in the

2    transaction.

3            The expense reimbursement is kept at a million

4    dollars, as I've summarized.  And the -- an alternative

5    transaction has to occur in order to give rise to the breakup

6    fee as described.  And there's various other conditions, which

7    I will not summarize, regarding the conditions that relate to

8    the transaction -- the expense reimbursement unless Your Honor

9    wants to be -- wants me to go through them.

10            THE COURT:  Well, there -- those conditions have not

11    been changed from the original agreement, those other ones?

12            MR. BUTLER:  No, Your Honor.  Other than the forty-

13    five day --

14            THE COURT:  Okay.

15            MR. BUTLER:  -- one that has been extended.  I

16    also --

17            THE COURT:  Are these -- are the changes set forth in

18    revised bidding procedures in a revised order?

19            MR. BUTLER:  Yes, that we submitted to Your Honor.

20            THE COURT:  Okay.

21            MR. BUTLER:  And, Your Honor, if Your Honor approves

22    the bidding procedures and breakup protection and other matters

23    today, we would -- the bid deadline would be February 11, 2008

24    and the auction would be held on February 13, 2008.  And the

25    sale hearing would be at the February 21st hearing.

25

1          THE COURT:  Okay.

2          MR. BUTLER:  I should point out to Your Honor that

3    RD Acquisition Corp is a wholly owned subsidiary of Resilience

4    Capital Partners, LLC, a private equity investment firm that

5    invests in companies with revenues between twenty-five million

6    and 250 million dollars.  But this is a special purpose

7    acquisition vehicle in terms of the transaction, as was the

8    case with in the Interiors businesses and certain of the other

9    businesses.  And I wanted to make that disclosure to the Court.

10         THE COURT:  Well, okay.  Resilience is not an

11   insider, they're --

12         MR. BUTLER:  No, they're not an insider but

13   they're --

14         THE COURT:  You're saying there no guarantee?

15         MR. BUTLER:  Right.  The purchaser is an acquisition

16   vehicle and I just -- and that's been the case in a number of

17   these transactions over the course of the case.

18         THE COURT:  Actually, that raised something in my

19   mind with regard to the last motion.  The note is issued by

20   what entity?

21         MR. BUTLER:  The note is -- by the acquisition

22   vehicle, Your Honor.

23         THE COURT:  Okay.  But the acquisition vehicle will

24   own -- own the debtor.

25         MR. BUTLER:  That's correct.

26

1          THE COURT:  I mean own the -- own the business.

2          MR. BUTLER:  Own the business, that's correct.

3          THE COURT:  If the transfer is -- I guess, there are

4     limitations under the note as to its ability to transfer the

5     business without the transferee taking on the liability or

6     paying the note.

7          MR. BUTLER:  I have to actually look to see whether

8     there is that -- whether there is that notation.  I do know

9     that the -- I do know, because I had made note of it, that it

10    was the acquisition vehicle that issued the note.  I don't know

11    that the -- as I recall, Your Honor, and I'll be corrected by

12    my colleagues if I'm wrong, I believe the note is an unsecured

13    note.  And as a result of being an unsecured note there would

14    be -- and I am not familiar with there being, and I did look at

15    the note this morning again, I'm not familiar with there being

16    covenants that would prohibit transactions.

17         THE COURT:  But would it be accelerated if they sold

18    the business or anything like that?

19         MR. BUTLER:  I don't know that there's a due on sale

20    clause or not, Your Honor.  I'd have to check that.  I mean, I

21    believe that there is, which is why I described it, I think

22    there's risk associated with that particular -- that was part

23    of the negotiation and part of the underlying transaction.  But

24    there is risk associated with that.  But I do not know whether

25    there is a -- whether there's a due on sale clause.  I can

27

1    certainly check into that.

2            THE COURT:  I mean, the rest of the transaction, the

3    back end of the purchase price, that was treated by a sale of

4    their interests?

5            MR. BUTLER:  Yes.  Yes.  That's correct.  Could I

6    have one moment, Your Honor, let me just double check that?

7            THE COURT:  Yes.

8            MR. BUTLER:  Your Honor, Mr. Gorkin (ph.) points

9    out -- and this note -- the actual notes, one of the exhibits

10   to the hearing binder, indicates that while there are no -- the

11   limitations are not expressed precisely as you asked for it,

12   there is a limitation that says that if there are dividend

13   distributions paid to its members the company has to then make

14   payment on the note.

15           THE COURT:  Okay.  All right.

16           MR. BUTLER:  That provision is in the note.

17           THE COURT:  Okay.  Well that's -- that would be the

18   only way that they'd want to get around it.  Very well.  Okay.

19   So turning back to the -- the bearings motion, I had -- I had

20   two questions on it but before I ask them, does anyone else

21   have anything to say on this particular motion, as far as the

22   debtors are seeking relief today on it?  Okay.

23           I had these two questions.  First, the -- the entry

24   into the competitive operating agreement and the related cost

25   savings, is that something that -- that -- is there any

28

1    anticipated issue on that at this point or is that, sort of,

2    consistent with the MOU?

3            MR. BUTLER:  Well, I don't know that there's

4    anticipated issues.  As has been the case with every one of

5    these sales, Your Honor, there is a requirement that's not --

6    that we need to -- we need to get the unions --

7            THE COURT:  Right.

8            MR. BUTLER:  -- to do the necessary -- to undertake

9    the necessary action and General Motors to undertake the

10   necessary action.

11           THE COURT:  But the buyer has undertaken to -- to

12   offer employment to all of the employees --

13           MR. BUTLER:  Yes.

14           THE COURT:  -- and related issues.

15           MR. BUTLER:  Your Honor, I don't think the debtors

16   are aware that there is a problem in connection with either of

17   those.

18           THE COURT:  Okay.

19           MR. BUTLER:  And in fact, there was a specific

20   requirement that the GM consent in connection with a proposed

21   transaction be placed -- be provided.  There are -- but I

22   would -- just to say it, there are no sunset provisions in

23   terms of trying to get some of this -- get that agreement put

24   in place.  But from the debtors' perspective, I have to tell

25   you, this is one of those things, under the MOU between Delphi,

29

1   GM and the UAW.  This particular business becomes GM's

2   responsibility at the end of this year, December 31, 2008.  So

3   I -- I believe that the parties are motivated to, you know, to

4   complete this transaction.  I believe that -- that, you know,

5   that General Motors is supportive of the transaction that has

6   been placed before Your Honor today.  And they will need to be

7   involved in evaluating any --

8          THE COURT:  Okay.

9          MR. BUTLER:  -- of the potential qualified bidders

10  that may come along.

11         THE COURT:  All right.  And -- and based upon my

12  review of the agreement provisions dealing with employees, it

13  would appear to me, at least, to be logically or reasonably

14  attractive to the union as well.  I'm asking that because

15  the -- the breakup fee is tied to the higher purchase price --

16  the percentage is tied to the higher purchase price but I think

17  it's reasonable given the likelihood that -- that that price,

18  rather than the lower price, would be paid ultimately.

19         The other question I had is -- is -- for the

20  assumption notice here.  There's no cure notice, correct?

21  Because the cure issues have already been dealt with as part of

22  the confirmation process so it's just an assumption and

23  assignment notice that's going out now?

24         MR. BUTLER:  That's correct, Your Honor.

25         THE COURT:  Okay.  All right.  Okay.  Certainly with

30

1   the changes that you've set forth on the record to the bidding

2   procedures and the cap on the reimbursement expense, I conclude

3   that the relief that the debtors are seeking today is

4   reasonable and I'll enter that order.  I don't -- I don't think

5   I've seen a black-line of that order, maybe it's on my desk and

6   I missed it but -- but I should see that with the -- obviously

7   the black-line bidding procedures and the other attachments.

8           MR. BUTLER:  We'll double check that, Your Honor, and

9   submit it after the hearing.

10          THE COURT:  Okay.  Thanks.

11          MR. BUTLER:  Your Honor, that -- the next matter on

12  the agenda, matter number seven, is the Verizon Administrative

13  expense motion.  Neil Berger is -- Mr. Berger is handling this

14  particular matter for the debtors.

15          THE COURT:  Okay.

16          MR. BERGER:  Good morning, Judge.  Neil Berger, Togut

17  Segal & Segal.  On Your Honor's calendar as number seven is the

18  amended motion by Verizon Services Corp at Docket 11496.

19  Your Honor may recall that Verizon brought on a motion for

20  immediate payment of administrative expense in connection with

21  the MobileAria sale motion seeking 479,000 dollars.  Your Honor

22  considered that original motion and allowed Verizon to file and

23  amended motion.  I'm pleased to tell the Court that subject to

24  Your Honor's permission and consent, we've reached a consensual

25  resolution of this matter such that Verizon will have an

31

1    allowed administrative expense claim of 25,000 dollars to be

2    paid pursuant to and in accordance with the plan.  We'll work

3    on a consent order that will contain mutual releases for issues

4    arising from or relating to the GPS agreement, which is the

5    central issue of this -- of this motion.

6          The resolution that we proposed to Your Honor was

7    breached and as a result of arms length negotiations that I

8    personally was involved with, and we think it's a proper

9    exercise of the debtors business judgment to reach this

10   conclusion, in considering, among other things, the debtor

11   looked at the extremely large volume of data that needed to

12   mined and analyzed in connection with this dispute, the cost

13   and expense of further discovery and litigation and the

14   disruption and diversion of the debtors' time and resources to

15   look at all the issues that are presented by Verizon.  In the

16   end, Your Honor, we think that a 25,000 dollar administrative

17   expense claim, which is the form of relief, administrative

18   expense claim, that Your Honor approved and contemplated by the

19   parties in the MobileAria sale order is a proper resolution of

20   this -- of this motion.

21          I make that representation after having reviewed

22   those points with counsel for Verizon.  I believe he's on the

23   phone with us now.

24          MR. LADDIN:  Good morning, Your Honor.  This is

25   Darryl Laddin of Arnall, Golden & Gregory on behalf of Verizon

32

1    Services Corp.  Mr. Berger has correctly stated the discussions

2    and the agreement between the parties that would be set forth

3    in the consent order to be presented to Your Honor.

4              THE COURT:  Okay.  Very well.  I -- I conclude

5    that -- that that settlement as set forth on the record is

6    reasonable in light of the merits as well as the cost of

7    dealing with potential additional issues that the debtors would

8    have to deal with in light of Verizon's response.

9              MR. BERGER:  Thank you, Judge.  We'll work quickly to

10   get a consent order to you promptly.

11             THE COURT:  Okay.  Thank you.

12             MR. BUTLER:  Your Honor, the final matter on the

13   agenda for today is the debtors' twenty-fourth omnibus claims

14   objection which is filed at Docket No. 11588.  As filed, there

15   were 136 proofs of claim that were addressed on the omnibus

16   claim objection.  In connection with our omnibus reply that we

17   filed in this case, we noted that there were thirty-four

18   replies that had been filed including some potential untimely

19   replies but nonetheless replies that we count for purposes of

20   moving things over to the claims track.  And then there was,

21   Your Honor, two additional replies we got subsequent to filing

22   the reply which we also count for purposes of this.  So as we

23   enter the hearing today, we have thirty-six proofs of claim for

24   which a response, whether timely or untimely, has been filed.

25   And therefore, the relief we're asking today is to be limited

33

1    to a hundred proofs of claim for which no response has been

2    received, at least as we headed over to court this morning.

3            Your Honor, in the aggregate there were 136 claims on

4    the twenty-fourth omnibus claims objection.  As I indicated,

5    they asserted approximately fifty-three million dollars.

6    The -- as I indicated the twenty-six responses now in hand

7    cover thirty-six proofs of claim asserting liquidated claims of

8    approximately 28.2 million dollars and as is our custom in this

9    case, the hearing with respect to those thirty-six claims will

10   be adjourned and put on the claims track and dealt with by the

11   claims team, as we have with other similar objections, with the

12   debtors reserving all of their rights with respect to late-

13   filed objections -- I should say late-filed responses to the

14   debtors' objections.

15           Therefore, Your Honor, today what we're seeking is

16   relief with respect to a hundred claims, asserting liquidated

17   claims of approximately 24.8 million dollars in the aggregate.

18   Of these hundred claims we're asking Your Honor to expunge

19   fourteen of them, with an asserted claim amount of

20   approximately 3.5 million.

21           With respect to the remaining eighty-six claims,

22   involving 21.3 million dollars, we're asking for a various

23   relief including changing the identity of the debtor against

24   who the proof of claim is asserted, revising the class and/or

25   the amount of the claim and reducing the asserted amount of the

34

1   claims in the aggregate to 16.7 million dollars.  That would

2   reflect a reduction in the aggregate of 4.6 million dollars

3   across those eighty-six claims.

4           THE COURT:  Okay.  And as in the past, you gave each

5   of the claimants' individualized notice of protection?

6           MR. BUTLER:  We did -- we did, Your Honor, and we'll

7   give them individualized notice of any relief Your Honor enters

8   today.

9           THE COURT:  Okay.  Does anyone have anything to say

10  on the relief the debtors are seeking presently?  All right.

11  In light of the fact that this relief, as modified, is

12  unopposed and the statements and averments in the omnibus

13  objection, I'll grant the objection as -- as sought on the

14  record.

15          MR. BUTLER:  Thank you, Your Honor.  Your Honor, that

16  completes the matters on the calendar for the January omnibus

17  hearing.

18          THE COURT:  Okay.  While I have -- while I have you

19  here, I -- I got the revised proposed confirmation order, as

20  you all said you'd get to me.  And it came with an e-mail that

21  said that there might be comments from other parties.  I did

22  get one comment from the lead plaintiffs in the securities

23  action, which seemed innocuous to me.  I'm assuming it's

24  innocuous to you all but --

25          MR. BUTLER:  I think it probably is innocuous,

35

1    Your Honor, to everybody.

2              THE COURT:  Okay.  It's just a reference to the order

3    I'm entering approving their settlement.  Should I be waiting

4    for anything else at this point or is it ready to enter?  I

5    think it would be appropriate for the debtor to have it be

6    entered today.

7              MR. BUTLER:  Your Honor, we certainly would hope it

8    would be entered.  We have -- this has been a process where the

9    debtors have gotten rounds and after rounds of comments.  And

10   at some point we simply said to people we've -- after the

11   fourth or fifth rounds of comments, we've taken all the

12   comments we're going to take and we're going to submit it.

13             THE COURT:  Okay.

14             MR. BUTLER:  And we did that on Wednesday by mid --

15   well, we said we'd to it by Wednesday, mid-day.  We actually

16   waited towards the end of the day to do it.  And from the

17   debtors' perspective we're prepared to have the order entered,

18   up there but I think Mr. Matz' representation to you in his

19   transmittal is still the case.  I cannot represent to

20   Your Honor that this is on consent.

21             THE COURT:  Well --

22             MR. BUTLER:  There are -- there are comments that

23   people had presented to us that we have not accepted.

24             THE COURT:  All right.

25             MR. RIELA:  Your Honor, this is Mike Riela from

36

1   Latham & Watkins on behalf of the committee.  The confirmation

2   order that was sent to Your Honor by Mr. Matz includes all the

3   comments the committee has.  So the committee will have no

4   further comments.

5        THE COURT:  Okay.  Well, I've -- I've reviewed it and

6   with the addition of the reference to the --

7        MS. HOLIDAY:  Your Honor, Diana Holiday for the plan

8   investor, Appaloosa.  There's still one outstanding issue that

9   we are waiting to resolve with the debtor.

10       THE COURT:  All right.  Well, let me just finish.  I

11  have reviewed it.  I didn't have any problem adding a reference

12  to the -- to my MDL approval order as the lead plaintiffs

13  requested in paragraph 61.  The rest of the order is fine to

14  me.  So my intention is to get it entered by the end of the day

15  today.  You know, if the investors want to inform me of

16  something before then, you know, they can.  But I -- I think on

17  the -- on the record of the confirmation hearing and based on

18  my knowledge of the plan and the related documents, this

19  order's appropriate.  So I intend to enter it today.

20       MR. BUTLER:  Thank you, Your Honor.

21       THE COURT:  Okay.

22   (Proceedings Concluded at 10:38 AM)

23

24

25

37

**I N D E X**

**E X H I B I T S**

| DEBTOR'S | DESCRIPTION | PAGE |
|----------|-------------|------|
| 1-11 | | 19 |
| 1-6 | ND Acquisition | 20 |
| | Corporation | |
| | Exhibits | |

**RULINGS**

| | Page | Line |
|--|------|------|
| Automodular Motion to | 9 | 22 |
| Compel Assumption or | | |
| Rejection Continued to | | |
| February 21 | | |
| Motion to Vacate the | 10 | 14 |
| Automatic Stay Continued | | |
| to February 21. | | |
| Stipulation and | 16 | 15 |
| Settlement of MPEG's | | |
| motion to Modify | | |
| Automatic Stay, So | | |
| Ordered. | | |

38

**RULINGS (Cont.)**

Relief Requested in          19        17
Letter Agreement Granted.
Bearings Sale Motion         28        25
Approved
Objection Granted as         33        9
Sought on the Record.

39

1

2                          **C E R T I F I C A T I O N**

3

4        I, Pnina Eilberg, court approved transcriber, certify that the

5        foregoing is a correct transcript from the official electronic

6        sound recording of the proceedings in the above-entitled

7        matter.

8

9        _____    January 28, 2008

10       Signature of Transcriber             Date

11

12       Pnina Eilberg

13       typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25