Eduardo J. Glas, Esquire (# EG7027)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York  10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile
Attorneys for Automodular Corporation f/k/a
Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc.,
and Automodular Assemblies (Ohio) Inc.

**Hearing Date and Time:  February 21, 2008 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | Chapter 11 |
| In re: | : | Case Nos. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| DELPHI CORPORATION | : | |
| INC., et al. | : | |
| | : | |
| Debtors. | : | |

**OPPOSITION OF AUTOMODULAR CORPORATION F/K/A AUTOMODULAR ASSEMBLIES INC., TEC-MAR DISTRIBUTION SERVICES, INC., AND AUTOMODULAR ASSEMBLIES (OHIO) INC. TO DEBTORS' EXPEDITED MOTION TO STRIKE (I) NON-CONFORMING CURE AMOUNT NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER, PLAN OF REORGANIZATION, 11 U.S.C. § 105(a), AND FED. R. BANKR. P. 9010 ("NON-CONFORMING CURE NOTICE MOTION") [D.I. # 12615]**

Automodular Corporation f/k/a Automodular Assemblies Inc. and its wholly-owned subsidiaries Tec-Mar Distribution Services, Inc., and Automodular Assemblies (Ohio) Inc. (collectively, "<u>Automodular</u>") hereby submits the following Opposition to Debtors' "Non-Conforming Cure Notice Motion" [D.I. # 12615] and in support thereof asserts as follows:

ME1 7139039v.1

**BACKGROUND**

1.    In or about March 2004, Automodular Assemblies (Ohio) Inc. and Delphi Automotive Systems LLC ("Delphi" or Debtor") entered into a contract (hereinafter the "U.S. Contract") whereby Automodular agreed to provide services to Delphi as specified amongst other items, in purchase orders and work orders. As of the Petition Date, no less than $147,306.27 was owed by the Debtors under the U.S. Contract.

2.    In addition to the U.S. Contract, Automodular Assemblies Inc. contracted with Delphi under a Long Term Contract, as recently amended in June 2005 (the "Ontario Contract" and collectively with the U.S. Contract, the "Contracts"). Pursuant to the Ontario Contract, Delphi would contract with General Motors of Canada ("GM") for the supply and installation of various car parts. In turn, Delphi contracted with Automodular for Automodular's sub-assembly and sequencing services of condensers, radiators and fan modules, which were ultimately installed in GM vehicles. As of the Petition Date, no less than $322,249.11 was due and owing under the Ontario Contract.

3.    On October 8, 2005 (the "Petition Date"), Delphi and certain of its subsidiaries and affiliates filed for bankruptcy protection pursuant to Chapter 11 of Title 11 of the Bankruptcy Code.

4.    On or about July 31, 2006, Automodular timely submitted a proof of claim. On October 31, 2006, Debtors filed an objection to Automodular's proof of claim, and the parties have since been in negotiations to resolve the issues raised in the Debtors' objection.

5.    All the while, Automodular has continued to provide services to the Debtors after the Petition Date. However, a dispute arose with respect to the Debtors' failure to pay for services provided by Automodular under the Contracts. As a result, on November 30, 2007,

Automodular filed a Motion to Compel Assumption or Rejection of Executory Contracts and Motion to Allow and Direct Payment of Administrative Expense Claims [D.I. # 11180] (the "Motion to Compel"). The Motion to Compel sought assumption or rejection of the Contracts and payment of the pre-petition and post-petition amounts owed. On February 1, 2008, Automodular filed a Supplement to the Motion to Compel [D.I. # 12453]. As of December 31, 2007, more than $2 million was due and owing for post-petition services rendered under the Contracts. A hearing for the Motion to Compel is scheduled for February 21, 2007.

6. Accordingly, Debtors have been on notice of Automodular's pre-petition claims for years and aware of the post-petition claims for months. Furthermore, Debtors have been on notice that McCarter & English, LLP represents Automodular with respect to its claims in this case since 2006.

7. Notwithstanding the foregoing, the Debtors sent a Notice of Cure Amount with Respect to Executory Contract to be Assumed or Assumed and Assigned Under Plan of Reorganization (the "Cure Notice") directly to Automodular, and not to Automodular's counsel. Given the timing of Automodular's receipt of the Cure Notice, there was insufficient time for Automodular to send the original Cure Notice to its counsel. In fact, neither Automodular, nor its counsel of record, were aware that a Cure Notice had been sent until discussions took place between Debtors and Automodular's counsel on related issues. At that time, Automodular's counsel requested and received a duplicate Cure Notice from Debtors' counsel, which Debtors' counsel sent via email. Due to the time constraints involved, and acting as legal counsel to Automodular, Automodular's counsel completed the duplicate Cure Notice and sent it via Federal Express (overnight delivery) so as to be timely received. Automodular's submission of a duplicate Cure Notice is attributable to Debtors' failure to provide the original Cure Notice to

ME1 7139039v.1

counsel for Automodular and/or provide the original Cure Notice to Automodular with sufficient time for it to be received, reviewed, and then transmitted to its counsel.

8. With regard to the substance of the Cure Notice, the Cure Notice only lists six (6) purchase orders related to the Ontario Contract, with a $0 cure for three (3) of the purchase orders and a total of $11,888.18 owed for the remaining three (3) purchase orders. Several purchase orders relating to the Ontario Contract were not listed. In addition, no Cure Notice was submitted with respect to the U.S. Contract. As such, Automodular objected to the Cure Notice, in accordance with the procedures set forth therein by returning the Cure Notice in a timely manner.

9. Pursuant to the cure procedures set in place in this case, Automodular and other creditors whose contracts have been assumed, can file a substantive objection to the proposed cure amount within 30 days of the Effective Date of the Plan. The Effective Date has not yet occurred.

10. Debtors have now filed the Non-Conforming Cure Notice Motion which seeks to disallow in full any and all cure claims of numerous creditors, including Automodular, simply because the word "duplicate" appears on the Cure Notice. The Debtors' current motion would deprive Automodular and other similarly-situated creditors of their substantive right to contest the unsupported and inaccurate cure amount noticed by the Debtors.

## **RELIEF REQUESTED**

11. Automodular respectfully requests that this Court deny Debtors' Non-Conforming Cure Notice Motion and treat Automodular's timely filed Cure Notice as valid.

## ARGUMENT

12.     The relief sought by Debtors is unjustified and inequitable.  Debtors seek to strike Automodular's Cure Notice because it was submitted on a form stamped "duplicate."  Such a draconian sanction is unwarranted in this instance.

13.     As set forth *supra*, Automodular has been involved in this case for almost two years, has had extensive negotiations with Debtors, and has a Motion to Compel pending.  Debtors seek to exclude Automodular's cure claims based on a technicality for the purpose of obtaining a windfall, as there is quite a disparity between Debtors' proposed cure amount and the amounts owed under the Contracts.

14.     Further, as set forth above, Automodular's submission of a duplicate Cure Notice is at least partially attributed to Debtors' own actions, as Debtors did not serve Automodular's counsel with the original Cure Notice form, despite the fact that Automodular's counsel has been the recipient for service of filings since 2006.  It would be inequitable to permit Debtors a windfall based on a situation of Debtors' own making.

15.     In addition, it is worth noting that Automodular submitted only one response to the Cure Notice and did not modify the document other than as required by the notice.  Therefore, there is no prejudice to the Debtors in processing the response.

16.     Finally, pursuant to the Plan, Automodular is entitled to an opportunity to substantively address Debtors' proposed cure amount, and thus, the relief sought by Debtors would subvert the process set forth in the Plan by denying Automodular that opportunity.

17. As there is no basis in law or equity for striking Automodular's Cure Notice based on Automodular's submission of a duplicate Cure Notice form, the relief sought by Debtors should be denied. .

WHEREFORE, Automodular respectfully requests that Debtors' Non-Conforming Cure Notice Motion be denied with respect to Automodular, that Automodular's Cure Notice be deemed valid and timely and that the Court grant such other and further relief as deemed just and proper.

/s/ Eduardo J. Glas
Eduardo J. Glas, Esquire (# EG7027)
McCARTER & ENGLISH, LLP
245 Park Avenue
27th Floor
New York, New York  10167
(212) 609-6800 - Telephone
(212) 609-6921 - Facsimile

and

Katharine L. Mayer, Esquire
McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19899
(302) 984-6300

Attorneys for Automodular Corporation f/k/a Automodular Assemblies Inc., Tec-Mar Distribution Services, Inc., and Automodular Assemblies (Ohio) Inc.

DATED: February 15, 2008