Hearing Date And Time: March 19, 2008 at 10:00 a.m.
Response Date And Time: March 12, 2008 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                  :
      In re                        :     Chapter 11
                                  :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                                  :
                                  :     (Jointly Administered)
                    Debtors.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

DEBTORS' TWENTY-SEVENTH OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN CLAIMS
TO IMPLEMENT CURE PAYMENTS AND MODIFY GENERAL
UNSECURED CLAIMS BY AMOUNT OF CURE PAYMENTS

("TWENTY-SEVENTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Twenty-Seventh Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And

Fed. R. Bankr. P. 3007 To Certain Claims To Implement Cure Payments And Modify General

Unsecured Claims By Amount Of Cure Payments (the "Twenty-Seventh Omnibus Claims

Objection"), and respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.      No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

3.      On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264).

Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

2

Possession  (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

respect to the Plan  (Docket No. 11388) (the "Disclosure Statement").  The Court entered an

order approving the adequacy of the Disclosure Statement and granting the related solicitation

procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008, the Court

entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation

Order"), which became a final order on February 4, 2008.

        4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

        5.      The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      <u>Current Business Operations Of The Debtors</u>

        6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2006 had global net sales of $26.4 billion and global assets of approximately

$15.4 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and have continued their business operations without supervision from the Court.[2]

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
     and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 27,
     2007.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
     automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
     proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso
     *(cont'd)*

3

7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.      Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

9.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

_____
*(cont'd from previous page)*
        receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of
        which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31,
        2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing
        footprint and to lower its overall cost structure.

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs.

10.     The Debtors believe that the Company's financial performance

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

11.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements. Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

12.     On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in
calendar year 2004 was $482 million.

operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business; second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company; third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus; fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable

solution to their current pension situation.

E.      Confirmation Of The Debtors' Plan Of Reorganization

        13.     The confirmed Plan is based upon a series of global settlements and

compromises that involve nearly every major constituency in the Debtors' reorganization cases.

The Global Settlement Agreement and the Master Restructuring Agreement provide for a

comprehensive settlement with GM, and both agreements were approved by this Court in the

Confirmation Order.  With the Plan confirmed, the Debtors are focusing their efforts on

satisfying the conditions for the Plan to become effective and allow them to emerge from chapter

11.  Currently, the Debtors continue to expect that they will emerge from chapter 11 during the

first quarter of 2008.

        14.     Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

15.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

16.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

17.    In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

7

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, the Tuscaloosa

News, and The Vindicator, and electronically through posting on the Delphi Legal Information

Website, www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,700 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 25 omnibus Claims[4] objections,

pursuant to which this Court has disallowed and expunged 9,530 Claims and modified

approximately 3,400 Claims.  In addition, the hearings with respect to approximately 720 Claims

have been adjourned to future claims hearings pursuant to the Claims Objection Procedures

Order (as defined below).

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

---

[4]    The Debtors filed objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451
and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585),
February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27,
2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos.
8270 and 8271), and July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151),
September 21, 2007 (Docket No. 9535), October 26, 2007 (Docket No. 10738), November 19, 2007 (Docket
No. 10982), December 21, 2007 (Docket No. 11588), and January 18, 2008 (Docket No. 12288).

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

        20.     On November 30, 2007, the Debtors filed the Motion Under New

Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue

Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §

502(B) And Fed. R. Bankr. P. 2002(M), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 11187), in which the Debtors requested this Court,

among other things, to authorize the Debtors to continue the current practices and procedures for

filing and serving notice of omnibus Claims objections pursuant to the Claims Objection

Procedures Order previously entered by this Court, including omnibus Claims objections to more

than 100 Claims.  On December 20, 2007, this Court entered the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

21.    In this Twenty-Seventh Omnibus Claims Objection, the Debtors are objecting to 131 Proofs of Claim, all of which are set forth on Exhibit C hereto in alphabetical order by claimant and cross-referenced by proof of claim number and basis of objection.[5]

Relief Requested

22.    By this Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 revising, upon the occurrence of the Effective Date[6] of the Plan as modified pursuant to the Confirmation Order, (a) the classification with respect to the Claims set forth on Exhibit A-1 hereto due to cure payments that the Debtors expect to make on account of the assumption, pursuant to section 365 of the Bankruptcy Code, of certain executory contracts or unexpired leases (each, a "Contract Assumption"), (b) the classification with respect to the Claims that have been modified pursuant to prior orders set forth on Exhibit A-2 hereto due to cure payments that the Debtors expect to make on account of a Contract Assumption, and (c) the classification with respect to the Claims, some of which are subject to a letter agreement pursuant to which the Debtors and the Claimant agreed upon the valid amount of such Claimant's reclamation demand, subject to certain reserved defenses, others

---

[5]    Contemporaneously with this Twenty-Seventh Omnibus Claims Objection, the Debtors are filing the Twenty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification And Modified Claim Asserting Reclamation (the "Twenty-Sixth Omnibus Claims Objection").  In the Twenty-Sixth Omnibus Claims Objection, the Debtors object to Claims and are seeking (i) to expunge and disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed Claims, (b) were not timely filed pursuant to the Bar Date Order and are not reflected on the Debtors' books and records, including certain Claims filed by taxing authorities, and (c) were not timely filed pursuant to the Bar Date Order, including certain Claims filed by taxing authorities, and (ii) to modify certain Claims, including Claims in which the claimant asserted a reclamation demand and the claimant and the Debtors entered into a letter agreement regarding the valid amount of the reclamation demand, with such agreement being subject to certain reserved defenses.  The Debtors are objecting to 40 Proofs of Claim in the Twenty-Sixth Omnibus Claims Objection.

[6]    Pursuant to Article 1.69 of the Plan as modified by the Confirmation Order, "Effective Date" means "the Business Day determined by the Debtors on which all conditions to the consummation of this Plan set forth in Article 12.2 of this Plan have been either satisfied or waived as provided in Article 12.3 of this Plan and the day upon which this Plan is substantially consummated."

of which are held by Claimants who are deemed to have consented to the Debtors' determination

of the valid amount of the reclamation demand, subject to certain reserved defenses, and all of

which are subject to prior orders that modified the classification of such claims, set forth on

Exhibit A-3 hereto due to cure payments that the Debtors expect to make on account of a

Contract Assumption.

Objections To Claims

G.        Assumption And Assignment Of Contracts And Related Cure Payments

        23.        The Debtors are party to thousands of contracts for the supply of goods to

the Company's manufacturing operations.  Under the confirmed Plan, all executory contracts and

unexpired leases to which any of the Debtors is a party will be deemed automatically assumed in

accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy

Code as of the effective date of the Plan, unless such executory contracts or unexpired leases (i)

have been previously rejected by Delphi pursuant to a final order of this Court, (ii) are the

subject of a motion to reject pending on or before such effective date, (iii) have expired or been

terminated on or prior to December 31, 2007 (and not otherwise extended) pursuant to their own

terms, (iv) are listed on Exhibit 8.1(a) to the Plan as executory contracts or unexpired leases to be

rejected, or (v) are otherwise rejected pursuant to the terms of the Plan.  As required under

section 365 of the Bankruptcy Code, to assume such contracts, the Debtors are proposing to cure

defaults in all such assumed executory contracts and unexpired leases (the "Material Supply

Contract Cure Payments").

        24.        In addition, in furtherance of the Debtors' transformation plan, the Debtors

have been selling and winding-down certain non-core product lines and manufacturing sites.  On

December 10, 2007 and January 15, 2008, the Debtors filed motions seeking authority to sell the

global steering and halfshaft business (the "Steering Business") and the global bearings business

11

(the "Bearings Business"), respectively.  On December 20, 2007 and January 25, 2008, this

Court approved the bidding procedures authorizing the Debtors to commence auctions to sell the

Steering Business and the Bearings Business, respectively.  The final sale hearings regarding the

Steering Business and Bearings Business are both currently scheduled for the February 21, 2008

omnibus hearing.  In both the Steering Business and Bearings Business divestitures, the Debtors

have conducted due diligence and finalized a list of contracts that will be assumed by the Debtors

and assigned to the respective buyers as part of the sale transactions.  Upon assumption of the

contracts by the Debtors, or as soon thereafter as practicable, the non-Debtor contract

counterparties will receive payments to cure the defaults on the contracts (the "Divestiture Cure

Payments," and, together with the Material Supply Contract Cure Payments, the "Cure

Payments").

        25.     In some instances, certain Claims will be satisfied in whole or in part by a

cure payment that the Debtors will make to counterparties to executory contracts or unexpired

leases under which such Claim arose.  As a result, the Debtors are seeking to reclassify a portion

of each claim that pertains to certain executory contracts or unexpired leases assumed pursuant to

section 365 of the Bankruptcy Code and therefore will be satisfied by payment of cure.  In

determining the amount by which each such Claim will be satisfied and the amount by which the

classification of such Claim would be modified accordingly, the Debtors reviewed the executory

contracts and unexpired leases being assumed and also reviewed related documents to determine

the claim amount that will remain unsecured, or will be classified as priority for reasons other

than being subject to cure, after the Debtors make the Cure Payments.  To eliminate multiple

recoveries for a single liability, by this Objection, the Debtors seek to modify the Claims to

accurately reflect the classification of such Claims against a Debtor after the Debtors make the Cure Payments.

H.      Claims Subject To Modification Due To Cure

26.     During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim will be satisfied in whole or in part by the Cure Payments and as such should be modified to reflect the Cure Payments. Set forth on Exhibit A-1 hereto is a list of such Claims that the Debtors believe should be modified solely to assert a properly classified claim different from that asserted by the Claimant (the "Exhibit A-1 Claims"). For each Exhibit A-1 Claim, Exhibit A-1 reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed"[7] and the proposed modified classification for the Claim in a column titled "Claim As Modified."

27.     The Debtors object to the classification for each Exhibit A-1 Claim listed on Exhibit A-1 and request that each such Claim be revised to reflect the classification listed in the "Claim As Modified" column of Exhibit A-1. Thus, no Claimant listed on Exhibit A-1 would be entitled to assert a classification that is inconsistent with that listed in the "Claim As Modified" column on Exhibit A-1, subject to the Debtors' right to further object to each such Exhibit A-1 Claim.

28.     The inclusion of the Exhibit A-1 Claims on Exhibit A-1, however, may not reflect the Debtors' view as to the ultimate validity of any such Claim. The Debtors therefore expressly reserve all of their rights to further object to any or all of the Exhibit A-1 Claims at a later date on any basis whatsoever. For clarity, Exhibit A-1 refers to the Debtor entities by case

---

[7]     The Asserted Claim Amount on Exhibit A-1 reflects only asserted liquidated claims.

13

number and Exhibit B displays the formal name of seven Debtor entities and their associated

bankruptcy case numbers referenced in Exhibit A-1.

29.    Accordingly, the Debtors (a) object to the classification for each Exhibit

A-1 Claim and (b) seek an order modifying the Exhibit A-1 Claims to reflect the classification as

set forth on Exhibit A-1.

I.    Claims Subject To Prior Orders And To Modification Due To Cure

30.    In addition, the Debtors have also determined that certain Proofs of Claim

that were modified pursuant to prior orders will be satisfied in whole or in part by the Cure

Payments and that the classifications of such Proofs of Claim should be modified accordingly.

Set forth on Exhibit A-2 hereto is a list of such Claims that the Debtors believe should be

modified solely to assert a properly classified claim different from that asserted by the Claimant

(the "Exhibit A-2 Claims").  For each Exhibit A-2 Claim, Exhibit A-2 reflects the amount,

classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As

Docketed"[8] and the proposed modified classification for such Exhibit A-2 Claims, in a column

titled "Claim As Modified."

31.    The Debtors object to the classification for each Exhibit A-2 Claim listed

on Exhibit A-2 and request that such Claim be revised to reflect the classification listed in the

"Claim As Modified" column of Exhibit A-2.  Thus, no Claimant listed on Exhibit A-2 would be

entitled to assert a classification that is inconsistent with that listed in the "Claim As Modified"

column on Exhibit A-2, subject to the Debtors' right to further object to each such Exhibit A-2

Claim.  For clarity, Exhibit A-2 refers to the Debtor entities by case number and Exhibit B

---

[8]  The Asserted Claim Amount on Exhibit A-2 reflects only asserted liquidated claims.

14

displays the formal name of seven Debtor entities and their associated bankruptcy case numbers referenced in Exhibit A-2.

32.     Accordingly, the Debtors (a) object to the classification for each Exhibit A-2 Claim and (b) seek an order modifying the Exhibit A-2 Claims to reflect the classification as set forth on Exhibit A-2.

J.     Claims Asserting Reclamation Subject To Prior Orders, Modification, And Cure

33.     In addition, the Debtors have also determined that portions of certain Proofs of Claim that are subject to prior orders that modified the classification of such Claims (a) will be satisfied in whole or in part by the Cure Payments, (b) incorrectly assert secured or priority status, and (c) assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (c)(i) and (ii), each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses") with respect to the reclamation demand are valid.

34.     Set forth on Exhibit A-3 hereto is a list of such Claims that the Debtors believe should be modified solely to assert a properly classified claim (the "Exhibit A-3 Claims"). For each Exhibit A-3 Claim, Exhibit A-3 reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed"[9] and the proposed modified classification for the Exhibit A-3 Claims, in a column titled "Claim As Modified."  The

---

[9] The Asserted Claim Amount on Exhibit A-3 reflects only asserted liquidated claims.

classification column labeled "Priority" includes amounts both from assertions of reclamation claims, administrative claims, and Divestiture Cure Payments and/or the Material Supply Contract Cure Payments.  In some instances, the dollar amount for the reclamation portion of a Claim set forth on Exhibit A-3 is being reduced in proportion to the anticipated cure payments. Thus, in those instances the total dollar amounts associated with the "Priority" classification as reflected on Exhibit A-3 are not being modified, but instead only the components of the "Priority" portion of the Claim are being modified.  Such modifications are reflected in the column titled "Claims As Modified" and identified as "Cure Amount" and "Reclamation Amount".

35.    The Debtors object to the classification for each Exhibit A-3 Claim listed on Exhibit A-3 and request that each such Claim be revised to reflect the classification listed in the "Claim As Modified" column of Exhibit A-3.  Thus, no Claimant listed on Exhibit A-3 would be entitled to (a) recover for any Exhibit A-3 Claims in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit A-3, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column not listed in the "Claim As Modified" column on Exhibit A-3, subject to the Debtors' right to further object to each such Exhibit A-3 Claim.  For clarity, Exhibit A-3 refers to the Debtor entities by case number and Exhibit B displays the formal name of seven Debtor entities and their associated bankruptcy case numbers referenced in Exhibit A-3.

36.    Accordingly, the Debtors (a) object to the classification, for the Exhibit A-3 Claims and (b) seek an order modifying the Exhibit A-3 Claims to reflect the classification as set forth on Exhibit A-3.

16

<u>Separate Contested Matters</u>

37.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Twenty-Seventh Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Twenty-Seventh Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Twenty-Seventh Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

<u>Reservation Of Rights</u>

38.     The Debtors expressly reserve the right to amend, modify, or supplement this Twenty-Seventh Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twenty-Seventh Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

<u>Responses To Objections</u>

39.     Responses to the Twenty-Seventh Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

K.    Filing And Service Of Responses

40.    To contest an objection, responses (each, a "Response"), if any, to the Twenty-Seventh Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00 p.m. (prevailing Eastern time) on March 12, 2008.**

L.    Contents Of Responses

41.    Every Response to this Twenty-Seventh Omnibus Claims Objection must contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should not be disallowed and expunged, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; provided, however, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Claimant must disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

M.    Timely Response Required

42.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order. With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on March 19, 2008 at 10:00 a.m. (prevailing Eastern time). The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Twenty-Seventh Omnibus Claims Objection.

43.    Pursuant to the Claims Objection Procures Order, only those Responses made in writing and timely filed and received will be considered by the Court. If a Claimant whose Proof of Claim is subject to the Twenty-Seventh Omnibus Claims Objection and who is served with the Twenty-Seventh Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Twenty-Seventh Omnibus Claims Objection without further notice to the

19

Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

44.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the Claims Objection Procedures Order.

Replies To Responses

45.    Replies to any Responses will be governed by the Claims Objection Procedures Order.

Service Of Twenty-Seventh Omnibus Claims Objection Order

46.     Service of any order with regard to this Twenty-Seventh Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

47.     Questions about this Twenty-Seventh Omnibus Claims Objection or

requests for additional information about the proposed disposition of Claims hereunder should be

directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-

5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive,

Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N.

Wharton).  Questions regarding the amount of a Claim or the filing of a Claim should be directed

to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  Claimants should not

contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

48.     Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

49.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twenty-

Seventh Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A-1, A-2, and A-3 is attached hereto as Exhibit D.  Claimants will receive a copy of this Twenty-Seventh Omnibus Claims Objection without Exhibits A-1 through C hereto.  Claimants will nonetheless be able to review Exhibits A-1 through C hereto free of charge by accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

50.     Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         February 15, 2008

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 9331)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

      - and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession