**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ., CA State Bar #66849
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@mlg-pc.com
Attorneys for Alps Automotive, Inc., Creditor

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, et al., | Chapter 11 |
| Debtors. | (Jointly Administered) |

**OBJECTION OF ALPS AUTOMOTIVE, INC. TO DEBTORS'
EXPEDITED MOTION TO STRIKE (I) NON-CONFORMING CURE
AMOUNT NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO
SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER,
PLAN OF REORGANIZATION, 11 U.S.C. §105(a), AND FED. R.BANKR.P. 9010**

ALPS AUTOMOTIVE, INC. ("Alps"), an unsecured creditor herein, objects to the *Debtors' Expedited Motion To Strike (I) Non-Conforming Cure Amount Notices And (II) Improper Objections Pursuant To Solicitation Procedures Order, Confirmation Order, Plan Of Reorganization, 11 U.S.C. § 105(a), And Fed. R. Bankr. P. 9010* (the "Motion"), filed by the debtors herein, Delphi Corporation, et al. (collectively, the "Debtors"), on or about February 11, 2008.

As set forth below, Alps objects to the Debtors' request to strike the two cure amount notices submitted by Alps on each of the following grounds: (a) Alps substantially complied with the terms of the *Notice Of Cure Amount With Respect To Executory Contract To Be Assumed And Assigned Under Plan Of Reorganization* dated December 10, 2007, (b) any failure by Alps to conform to procedural requirements was the fault of the Debtors and not of Alps, and (c) the Debtors have not suffered any prejudice from the submission of "non-conforming" cure notices in any event. Alps' objection is based on the following:

-1-

21178

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

## I. BACKGROUND

The record of the Court, together with the declaration of Beth Hornbeck filed concurrently herewith (the "Hornbeck Declaration"), establishes the following pertinent facts:

**A.     Service of Notices**

1. On October 8, 2005 (the "Petition Date"), the Debtors and numerous related entities filed voluntary petitions initiating the above-captioned chapter 11 case, now jointly administered.

2. On or about December 10, 2007, the Debtors sent two *Notice Of Contract Counterparty With Multiple Addresses Of Transmittal Of Cure Amount Notices* (the "Duplicate Notice") to Alps at 1500 Atlantic Blvd., Auburn Hills, MI 48326. Each Duplicate Notice contained an Exhibit A, which was a copy of the *Notice of Cure Amount With Respect to Executory Contract to be Assumed or Assigned Under Plan of Reorganization* (the "Original Notice"), and an Exhibit B, which lists the name and address of the party who received the Original Notice (the "Original Notice Party"). The first Duplicate Notice (the "Michigan Duplicate Notice") was addressed to Alps Electric (USA) Inc., 1500 Atlantic Blvd., Auburn Hills, MI 48326, and the Original Party was listed as Alps Electric (USA) Inc., 1500 Atlantic Blvd., Auburn Hills, MI 48326. The second Duplicate Notice (the "California Duplicate Notice") was addressed to Alps Automotive Inc. EFT, 1500 Atlantic Blvd., Auburn Hills, MI 48326, and the Original Party was listed as Alps Automotive Inc. EFT, 30 Las Colinas Ln, San Jose, CA 95119. There is no registration for 'Alps Automotive Inc.' in the state of California, and the Alps corporate entity in California is and has always been Alps Electric (USA), Inc.

3. The Original Notice attached to the Michigan Duplicate Notice stated the Debtors' intent to cure the amount owing on a single purchase order identified in Schedule 1 attached thereto (the "Michigan Notice"). A true and correct copy of the Michigan Duplicate Notice is attached to the Hornbeck Declaration as **Exhibit "A."**

4. The Original Notice attached to the California Duplicate Notice stated the Debtors' intent to cure amounts owing on various purchase orders identified in Schedule 1 attached thereto (the "California Notice"). A true and correct copy of the California Duplicate Notice is attached to

-2-

21178

the Hornbeck Declaration as **Exhibit "B."**

5. Notably, neither the Michigan Duplicate Notice nor the California Duplicate Notice were addressed to any specific individual, or even to the attention of the President, Chief Executive Officer, or any managing agent or officer of Alps.

6. Nor were the Michigan Duplicate Notice or the California Duplicate Notice (collectively, the "Duplicate Notices") served upon Alps' counsel of record, Merle C. Meyers, Esq. of Meyers Law Group, P.C. ("MLG"), or MLG's predecessor as Alps' counsel of record, Goldberg, Stinnett, Meyers & Davis, P.C. ("GSMD"). One or the other of MLG and GSMD had appeared through numerous documents in the Debtors' case, including prior filed responses to the Debtors' claims objections and on Alps' filed proofs of claim. Mr. Meyers, the principal attorney representing Alps at each of the two firms in succession, had communicated on many occasions with the Debtors' counsel with respect to Alps' claims, and had negotiated extensively a stipulation with the Debtors' counsel with respect to allowance of Alps' claims.

7. By way of example, attached to the Hornbeck Declaration as **Exhibits "C" and "D"** are, respectively, a copy of the first page of one of Alps' proofs of claim filed herein on February 6, 2006 (which identifies Mr. Meyers, at GSMD, as the person to whom notices should be sent); and a copy of Alps' response and counter-motion (without exhibits) filed on October 17, 2007 in answer to a claim objection filed by the Debtors (which response identifies Mr. Meyers, at MLG, as Alps' counsel).

8. Notwithstanding all of these appearances and contacts, neither of the Duplicate Notices was served upon Alps' counsel.

**9.** Because the notices were not addressed to any person or officer at Alps, the notices were not immediately delivered to anyone within Alps who was knowledgeable with respect to the Debtors' cases. Moreover, because the notices were not served upon Alps' counsel of record, said counsel did not learn of the notices until well after the Debtors' mailing.

**10.** The Duplicate Notices were first brought to the attention of Beth Hornbeck, an employee in Alps' accounting department, on January 10, 2008. However, neither the original

-3-

Michigan Notice nor the original California Notice were received by Ms. Hornbeck.

11. Ms. Hornbeck, upon receipt of the Duplicate Notices, immediately forwarded them to Alps' counsel, MLG, by email. The copies of the Michigan Notice and the California Notice appended to the Duplicate Notices set a deadline of 7:00 p.m. (Prevailing Eastern time) January 11, 2008 (the "Deadline") for a response in the event that Alps disagreed with the cure amounts stated in the respective notices.

12. On January 10, 2008, the same day that counsel for Alps received, and first learned of, the notices, said counsel returned the completed the copies of the Michigan Notice and the California Notice (collectively, the "Completed Notices") to Kurtzman Carson Consultants by Federal Express in order to meet the Deadline. The Completed Notices stated Alps' disagreement with the cure amounts proposed by the Debtors. True and correct copies of the Completed Notices are attached to the Hornbeck Declaration as **Exhibit "E."**

13. Whereas the Michigan Duplicate Notice and the California Duplicate Notice stated a requirement that the "original" cure notice be completed and returned in order to be effective, no explanation of the term "original" was provided, and nothing in the documents indicated a requirement that anything but a copy of the cure notice with an original signature by served, as would be the customary interpretation of the term "original." There was also no explanation in the Duplicate Notices that the Duplicate Notices were "courtesy" notices provided to counterparties "at multiple points of contact", as argued by the Debtors in paragraph 22 of the Debtors' Motion. Moreover, given the defective service upon Alps (not having been served on Alps' counsel of record or even upon an officer of Alps), the original forms of the Michigan Notice and the California Notice did not ever reach Alps' counsel, and there was no time to seek duplicate originals, with a deadline for service being one day away. Therefore, the Completed Notices were not "original" cure notices, as the Debtors now interpret that term.

**B.    Alps' Claims and the Debtors' Objections**

14. Prior to the Petition Date, Alps sold various automotive parts on credit terms to one or more of the Debtors, and as of the Petition Date, Alps was owed the sum of $6,140,513.59 for parts

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

sold to the Debtor for which payment was not received.

15.    All parts orders by the Debtors were part of an overall relationship, with standard terms for delivery, payment and reconciliation. Individual orders were made by purchase orders, as part of that relationship. Since the Petition Date, Alps has continued to sell parts to the Debtors.

16.    On February 6, 2006, Alps filed two proofs of claim in order to recover the Debtor's obligations, and attached documentation supporting such obligations, as follows:

a.    A proof of claim ("Claim No. 2246") against Delphi Automotive Systems LLC ("DAS"), in the amount of $6,140,513.59, with attachments identifying each unpaid invoice by number, date, amount and parts order; and

b.    A proof of claim ("Claim No. 2665") against Delphi Corporation ("DC"), in the amount of $6,140,513.59, with the same attachments described above.

17.    In addition, on October 18, 2005, by letter to the Debtors, Alps made demand upon the Debtors for reclamation and return of products delivered to the Debtors on credit terms within ten days preceding the Petition Date, in the amount of $1,550,810.57, pursuant to the provisions of 11 U.S.C. §546(c) of the Bankruptcy Code. The amount of that demand is included in the amounts set forth in Claims Nos. 2246 and 2665. The Debtors have disputed Alps' reclamation demand but have deferred resolution of that dispute, with the result that no payment or return of products has yet been made to Alps on account of its reclamation demand.

18.    Alps filed its proofs of claim against both DAS and DC primarily because, due to ambiguous or inconsistent documentation provided by the Debtors, Alps was not able to determine which such debtor, or whether each of such debtors, was obligated to pay for the Alps products ordered by the Debtors. Because both such debtors appeared on documentation with Alps, Alps believed that both entities might be jointly and severally liable to Alps for payment for the ordered and delivered parts.

19.    On October 31, 2006, the Debtors filed an objection to Alps' claims, as part of the *Debtor's Second Omnibus Objection, etc.* (the "First Objection"). In the First Objection, the Debtors sought disallowance of Claim No. 2665, on the ground that such claim was allegedly duplicative of

-5-

21178

Claim No. 2246. The First Objection stated that the Debtors intended to reserve all rights to object to Claim No. 2246 at a later time, and therefore did not seek allowance of Claim No. 2246. First Objection, at *¶32*.

20. On or about November 22, 2006, Alps' counsel, GSMD, filed timely opposition to the First Objection, and entered into discussions with the Debtors' counsel, regarding resolution of the dispute.

21. Ultimately, the Debtors and Alps, through counsel, reached agreement as to the resolution of the objection to Claim No. 2665, as follows: Claim No. 2665 was disallowed, and Claim No. 2446 was deemed to be valid as against DAS (except for a small portion that was valid as against DMS and another debtor), in an amount to be determined at a later time. That resolution was incorporated into an order of the Court, the *Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging (I) Equity Claims, (II) Claims Duplicative Of Consolidated Trustee Or Agent Claims, And (III) Duplicate And Amended Claims Identified In Second Omnibus Claims Objections*, dated December 21, 2007.

22. On September 21, 2007, the Debtors filed an objection to Claim No. 2246 (the "Second Objection"). In the Second Objection, the Debtors sought various adjustments of Claim No. 2246 and reduction of Alps' reclamation claim by roughly $1.5 million, to the amount of $37,893.60, with a reservation of the Debtors' right to object further to Claim No. 2246 at a later time.

23. Alps, through its successor counsel, MLG, thereafter filed opposition to the Second Objection, as well as a counter-motion seeking final allowance of Claim No. 2246. Discussions again ensued among counsel, with the interim outcome of deferring the hearing and litigation of the Second Objection and Alps' counter-motion pending settlement discussions.

24. In subsequent discussions among counsel for the Debtors and Alps, a tentative settlement of Claim No. 2246 was reached, subject to documentation and Court approval. As of the date of this memorandum, discussions of details of the documentation are continuing.

-6-

21178

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

## II. DISCUSSION

In the Motion, the Debtors argue that Alps' Completed Notices should be stricken from the record because they are not in conformity with applicable requirements, namely the apparent requirement that only the original paper mailed to Alps be used in responding to the Debtors. For each of the reasons set forth below, that argument has no merit.

### A. Alps' Completed Notices Are Substantially Conforming.

In the California and Michigan Notices, the Debtor states that claimants such as Alps must (a) deliver the notices, once completed, to the claims agent no later than January 11, 2008; (b) indicate by checking an appropriate box whether the claimant agrees with the Debtors' stated cure amount; (c) indicate by checking an appropriate box whether the claimant wants a cash payment or "Plan currency;" and (d) sign the form and fully identify the claimant. Alps, through its counsel, performed each of these required tasks, and there is no suggestion that the Completed Forms were either delivered late or incomplete in any of the foregoing respects. The Debtors' only contention is that Alps failed to use the "original" notices in completing those tasks.

Clearly, Alps has substantially complied with the requirements of the Duplicate Notices, in a manner that provided all necessary information to the claims agent and the Debtors. The fact that the "original" notices were not used to do so did not materially diminish that compliance, particularly in light of the many instances in the record of the Court that establish that Alps is in fact the counter-party with respect to the contracts that the Debtors seek to assume and cure. Under those circumstances, Alps' minor and unknowing discrepancy is not an appropriate basis for striking the Completed Notices altogether.

The principle of substantial compliance serves to excuse a party from strict compliance of a statute or contract if the essential purpose of that statute or contract is accomplished. *Kiser v. Russell County (In re Kiser)*, 344 B.R. 423 *passim* (Bankr. W.D. Va. 2003). Substantial compliance can be found where: 1) a party failed to strictly adhere to a requirement but accomplished the result intended by the requirement; 2) the party who benefited from the requirement suffered no prejudice from the defect; 3) there was a justifiable excuse for failing to strictly adhere to the requirement; and 4) the

-7-

21178

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

party who failed to the requirement would be severely prejudiced if the requirement was strictly enforced. *Mayor and City Council of Baltimore v. West Virginia (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 529-30 (6th Cir. 2002) (finding substantial compliance where actual notice was received even though strict notice requirements had not been followed); *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984). In the present case, Alps has satisfied all of these factors. First, though Alps did not comply with the strict requirement that the original forms be returned, Alps accomplished the result intended (i.e., giving the Debtors notice that Alps objected to the cure amounts stated in the notices) by sending in a copy of the forms with the same information that would have been included on the original forms. Second, the Debtors have suffered no prejudice by receiving copies of the completed forms instead of the originals, as discussed in more detail in Section B, *infra*. Third, the failure of the Debtors to serve Alps' counsel or otherwise direct the Duplicate Notices justified Alps' need to respond quickly and send in the copies it had received, as discussed in more detail in Section C, *infra*. Finally, Alps would be severely prejudiced if the Completed Notices are stricken, as discussed in more detail in Section D, *infra*. Accordingly, the Completed Notices must be allowed because Alps substantially complied with the requirements of the Cure Notices.

Additionally, it is important to note that the requirements in the Cure Notices are not statutorily mandated. There is no requirement in the Bankruptcy Code that parties to an executory contract in which a debtor intends to assume must send back the original form to the debtor. In fact, there is no requirement in the Bankruptcy Code that any original forms be returned or else be disallowed. The Debtors made up this procedure in an effort to organize returned cure notices. The only reason proffered by the Debtors for requiring that the "original" forms be returned is that the original forms had bar codes on them, which would, according to paragraph 22 of the Debtors' Motion, help "avoid the ambiguity of receiving multiple contradicting Cure Amount Notices for the same contract." Alps did not return multiple contradicting Cure Amount Notices, and to the best of Alps' information, no other party returned any notices conflicting with Alps' notices. Therefore, the fact that Alps substantially complied with the Debtors' tailored requirements to send back only the

-8-

21178

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

original notices proves the Completed Notices should be allowed.

This is especially true in light of the fact that most courts hold that substantial compliance of even strictly construed, important statutes is sufficient to excuse any non-conformance. *Malloy v. Arcadia Fin. Ltd. (In re Suddarth)*, 232 B.R. 789, 792 (N.D. Okla. 1999) (recognizing the substantial compliance with UCC requirements is effective to uphold financing statement not in strict compliance); *Fox v. Bank Mandiri (In re Perry H. Koplik & Sons, Inc.)*, 357 B.R. 231, 249 (Bankr. S.D.N.Y. 2006) (holding that substantial compliance with Foreign Sovereign Immunities Act was sufficient to satisfy notice requirements). If strict compliance with established, well-known statutes is not absolutely required, then certainly Alps' non-compliance with the Debtors' strict customized cure notice requirements should not be sufficient as a reason to strike the Cure Amount Notices.

**B.      The Debtors Have Not Been Prejudiced In Any Event.**

Most importantly, the Debtors have not been prejudiced by the minor non-conformity of Alps' Completed Notices. Alps' objection to the stated cure amount was timely received by the claims agent, all necessary information was provided, and if the Debtors had reviewed their own records, they would have readily found that Alps is the true counter-party to the executory contracts in question, and that MLG is Alps' counsel of record. Alps is not aware of any action taken by the Debtors in reasonable reliance upon any non-conformity in the Completed Notices, and thus there is no basis on which the Debtors can contend that they have been harmed by the alleged non-conformity. Alps' Completed Notices should therefore be permitted, and should not be stricken as requested by the Debtors.

The Debtors have offered no explanation as to how allowing the Completed Notices to be admitted would somehow be prejudicial. In fact, as mentioned above, the Debtors' reason for requiring that only 'original' cure notices be returned was to "avoid the ambiguity of receiving multiple contradicting Cure Amount Notices for the same contract." In Alps' case, no duplications were sent. Alps' counsel received the notices one day before responses were due, and Alps sent in responses in the proper corporate names based on Alps' records of the cure amounts. The Completed Notices certainly gave notice of Alps' objections, which notice was the point of requiring the

-9-

21178

Completed Notices in the first place. And, to Alps' best understanding, no other party returned any notices conflicting with Alps' notices. Accordingly, no harm has been suffered by the Debtors. *See Morris v. The CIT Group/Equip.Fin., Inc. (In re Charles)*, 268 B.R. 575,579 (Bankr. D. Kan. 2001) (holding that substantial compliance with Article 9 filing requirement showed that no potential creditors would be prejudiced).

**C.     Any Non-Conformity Is The Fault of The Debtors, Not Alps.**

To the extent that Alps' Completed Notices do not conform to applicable requirements, it is due to the Debtors' defective service, and not any fault of Alps. The Debtors did not serve the notices on an officer of Alps, as required by Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure ("FRBP"), made applicable by FRBP Rule 9014(b), or upon Alps' counsel of record, with whom the Debtors' counsel had had repeated formal and informal contact. As a result of the defective service, and the resulting very short time frame in which Alps could provide responses, it is a wonder that Alps was able to serve the Completed Notices at all, and it was not possible to reach full conformity by using the "original" forms of notice. First, the notices failed to clarify what the term "original" was intended to mean, and it was reasonable to assume that the term referred only to service of completed forms with original signatures. Second, because of the defective service, Alps' counsel learned of the notices on the same day as responses were required to be served, for receipt the following day, and there was no time in which to obtain the original forms of notices, if they could be located at all, or to request new original forms.

Under the circumstances, in which the Debtors, not Alps, created the need for Alps to serve non-conforming responses, Alps should not be punished for that non-conformity because Alps was not given proper notice, or even reasonable notice, to be able to materially respond to the Debtors' claims. Generally, notices involving bankruptcy rights are subject to Fifth Amendment Due Process requirements. *In re Wright*, 300 B.R. 453, 460 (Bankr. N.D. Ill. 2003) (referring to the Fifth Amendment mandate that "No person shall be deprived of life, liberty, or property, without due proceeds of law."). Due process can only be satisfied by "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an

-10-

21178

opportunity to present their objections." *Id.* In this case, Alps received notice of the Debtors' cure notices only one day before they were due. Though the Debtors' Motion attempts to explain that sending notice to multiple parties was designed to use all best efforts to apprise counterparties of the Debtors' intent to assume and cure, Debtors' duplicative procedures, in fact, only served to confuse and complicate procedures, and none of the Debtor's efforts were reasonably calculated to provide sufficient notice, because they were not directed to an officer or counsel of Alps. The Debtors' attempt to serve Alps clearly failed in this matter.

### D. **Alps Would be Severely Prejudiced if the Completed Notices Were Stricken**

If the relief the Debtors are seeking is granted (i.e., ordering that withdrawal of a parties' claims be allowed), then the Alps would be severely prejudiced. To disallow Alps' claim on, at best, a narrow technicality, would result in a gross injustice. As explained above, Alps has at all times defended its claim. Therefore, the Debtors are certainly aware of Alps' intentions and will not be prejudiced if the Completed Notices are allowed. The fact that the Debtors would suffer no prejudice compared to the severe prejudice that Alps would suffer compels that relief be granted to Alps. *In re Henry-Chandler*, 2006 WL 4547188, at *7 (Bankr. D. Md. 2006) (comparing the extent of prejudice that would be suffered by parties if the relief sought was or was not granted). Accordingly, the Completed Notices should be allowed in this case.

### III. **CONCLUSION**

Based on the foregoing, Alps respectfully submits that the Debtors' Motion should be denied as to Alps, and Alps' Completed Notices should not be stricken.

DATED: February 15, 2008

                                                MEYERS LAW GROUP, P.C.

                                                By:   /s/    Merle C. Meyers
                                                        Merle C. Meyers, Esq. CA State Bar #66849
                                                        44 Montgomery Street, Suite 1010
                                                       San Francisco, CA 94104
                                                       Telephone: (415) 362-7500
                                                       Facsimile: (415) 362-7515
                                                       Email: mmeyers@mlg-pc.com
                                                       Attorneys for Alps Automotive, Inc., Creditor

21178

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

## CERTIFICATE OF SERVICE BY FEDERAL EXPRESS

I, the undersigned, state that I am employed in the City and County of San Francisco, State of California; that I am over the age of eighteen years and not a party to the within action; that my business address is 44 Montgomery Street, Suite 1010, San Francisco, California 94104-4789; that on the date set out below, I served a copy of the following:

OBJECTION OF ALPS AUTOMOTIVE, INC. TO DEBTORS' EXPEDITED MOTION TO STRIKE (I) NON-CONFORMING CURE AMOUNT NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER, PLAN OF REORGANIZATION, 11 U.S.C. § 105(A), AND FED. R.BANKR.P. 9010

on each party listed below using the express mail services of Federal Express, with delivery guaranteed by noon on February 19, 2008, with a copy of same to be delivered directly to the chambers of the Honorable Robert D. Drain.

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on February 15, 2008.

/s/ Edie Walters
EDIE WALTERS

SEE ATTACHED SERVICE LIST.

CERTIFICATE OF SERVICE BY FEDERAL EXPRESS
21178

**Hearing Date and Time: February 21, 2008 at 10:00 a.m.**
**Objection Deadline: February 19, 2008 at 4:00 p.m.**

## SERVICE LIST

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
Attn: John Wm. Butler, Jr.

Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
Attn: Donald Bernstein and Brian Resnick

Latham & Watkins LLP
885 Third Avenue
New York, NY 10022
Attn: Robert J. Rosenberg and Mark A. Broude

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
Attn: Bonnie Steingart

Office of the United States Trustee
For the Southern District of New York
33 Whitehall Street
Suite 2100
New York, NY 10004
Attn: Alicia M. Leonhard

cc:     Chambers, Hon. Robert D. Drain
        United States Bankruptcy Judge
        1 Bowling Green
        New York, NY 10004 _____

CERTIFICATE OF SERVICE BY FEDERAL EXPRESS
21178