Hearing Date & Time: February 21, 2008 at 10:00 a.m.
Objection Deadline: February 19, 2008 at 4:00 p.m.

David S. Rosner (DR-4214)
Adam L. Shiff (AS-7571)
Daniel N. Zinman (DZ-7562)
Daniel A. Fliman (DF-2236)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to ASM Capital L.P. and
ASM Capital II L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------x

### OBJECTION OF ASM CAPITAL L.P. AND ASM CAPITAL II L.P. TO DEBTORS' EXPEDITED MOTION TO STRIKE (I) NON-CONFORMING CURE AMOUNT NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER, PLAN OF REORGANIZATION, 11 U.S.C. § 105(A), AND FED. R. BANKR. P. 9010

ASM Capital L.P. and ASM Capital II L.P. (collectively, "ASM"), by and through the undersigned attorneys, hereby files this objection (the "Objection") to the Debtors' Expedited Motion to Strike (I) Non-Conforming Cure Amount Notices and (II) Improper Objections Pursuant to Solicitation Procedures Order, Confirmation Order, Plan of Reorganization, 11 U.S.C. § 105(A), and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9010 (the "Motion to Strike"), and respectfully represent as follows:

**Preliminary Statement**

ASM is the purchaser and transferee of a number of claims that are subject to potential

assumption and cure.  For most of these claims, ASM obtained the original cure notice election

form with the bar code from their Transferors (as defined below) and executed them, pursuant to

the terms and conditions of the Transfer Agreements (as defined below) between ASM and the

Transferors and in accordance with the desire of the Transferors.  On January 10, 2008, this

Court denied a motion filed by ASM, among other entities, ruling that (a) the deadline to submit

cure notice election forms (January 11, 2008 at 7:00 p.m.) would not be extended; (b) the filing

(without opposition) of a Bankruptcy Rule 3001(e) notice alone does not create an assignment of

the underlying contract, that the assumption (and cure of any defaults) of that contract is

governed by section 365; and (c) the rights under section 365, including the right to assume the

contract and cure all defaults, are governed by the relationship between the Debtors and the

Transferors, not the transferees.  The January 10 ruling by this Court did not address the issue of

whether the Transfer Agreements give ASM the right to execute the original cure notice election

forms on behalf of the Transferors, nor did it address the question of whether ASM was attorney-

in-fact for the Transferors.

Immediately following this ruling, ASM, concerned about the fact that it had executed

the original cure notice election forms on behalf of the Transferors and considering the Court's

comments about the importance of the relationship between the Debtors and the Transferors,

obtained from most of its Transferors a Letter (as defined below) which:  (a) confirmed that

ASM had the right to sign the cure notice election forms on the Transferors' behalf; (b)

appointed ASM as the Transferors' attorney-in-fact with the power to sign the cure notice

election forms on the Transferors' behalf; and (c) ratified ASM's prior signature on such forms.

2

Further, each of these Transferors (with two exceptions), affixed their signature on a copy of the original cure notice election form previously sent by ASM to the Debtors' agent. Both the Letters and these copies of the original cure notice election forms were sent to the Debtors' agent by email prior to the January 11 deadline (within 24 hours of this Court's January 10 ruling) and by express mail for delivery on the next business day.

ASM, through the Transfer Agreements, has the right and authority to execute the original cure notice election form on behalf of the Transferors. This is confirmed by the Letters and the fact that the Transferors sent the original cure notice election forms, which they had received directly from the Debtors, to ASM for ASM's signature. Further, even if this Court were to rule that it is unclear (which it is not) whether the Transfer Agreements gave ASM the right and authority to execute the original cure notice election form on behalf of the Transferors, many of the Transferors, in the Letters, made ASM their attorney-in-fact and ratified ASM's prior signature on the original cure notice election forms.

Furthermore, if this Court were to rule that only the original cure notice election forms signed by the actual Transferors were valid, each of those were obtained by ASM as quickly as possible following this Court's ruling on January 10 and were received by the Debtors' agent by email prior to the January 11 deadline and by express mail the following business day. Given these circumstances, including the fact that the Debtors have not publicly indicated that they are prepared for their Plan to go effective within the short term, ASM submits that such lateness constitutes excusable neglect under Bankruptcy Rule 9006(b).

Additionally, in certain limited cases, ASM was unable to obtain or have the Transferor obtain the original cure notice election form or a duplicate thereof, notwithstanding the fact that ASM took every reasonable step to do so. As stated above, ASM had the authority to execute

3

the original cure notice election form on behalf of the Transferor. ASM submits that in these

limited circumstances, ASM's execution of a reproduction of the original cure notice election

form (created by ASM) rather than the actual original cure notice election form is excusable

neglect under Bankruptcy Rule 9006(b). If, for some reason, the various notices filed by ASM

and/or the Transferors are insufficient to enforce the Transferors' and ASM's election for cash

treatment, ASM respectfully requests that it have a reasonable period of time to cure any

deficiencies in connection therewith.

## Background

### A.    ASM As Transferee Of Claims, Including Cure Claims.

1.    ASM holds trade claims against the Debtors (the "Claims"), transferred from

various parties through post-petition transfers (the "Claims Transfers"). Each Claims Transfer is

governed by a transfer agreement (a "Transfer Agreement") between ASM, as transferee, and the

prior claimholder, as transferor (a "Transferor"). ASM filed notices of the Claims Transfers

pursuant to Bankruptcy Rule 3001(e), none of which were objected to by the Debtors or the

Transferors. Pursuant to each Transfer Agreement, the Transferor agreed to transfer

> all of [the Transferor's] right, title, benefit, interest, voting rights,
> claims and causes of action in and to, or arising under or in
> connection with the claim or claims of [the Transferor] against [the
> Debtor], in bankruptcy proceedings in the United States
> Bankruptcy Court for the Southern District of New York . . .
> including any and all Proofs of Claim(s) associated with and filed
> by [the Transferor] with the Court (the "Claim") and; **all cash,
> securities, instruments and other property which may be paid
> or issued in satisfaction of the Claim and all rights to receive
> interest, penalties, fees and any damages from any cause of
> action or litigation which may be paid with respect to the
> Claim.**

Additionally, the Transfer Agreements reference the Debtors' bankruptcy cases and the relevant

Claim. See Declaration of Douglas Wolfe in Support of Objection Of ASM Capital L.P. and

4

ASM Capital L.P. to Debtors' Expedited Motion to Strike (I) Non-Conforming Cure Amount

Notices and (II) Improper Objections Pursuant to Solicitation Procedures Order, Confirmation

Order, Plan of Reorganization, 11 U.S.C. § 105(A), and Fed. R. Bankr. P. 9010 (the "Wolfe

Decl."), filed contemporaneously with this Objection, at ¶ 5 (emphasis added). Copies of the

relevant Transfer Agreements are attached to the Wolfe Decl. at Exh. A. Thus, ASM is the

designated and rightful recipient of any payments on the Claims, including cure payments,[1] to

which the Transferor would be entitled on account of the Claims including, without limitation,

on account of contracts underlying that Claims. Additionally, ASM is entitled to determine how

its Claims will be treated (i.e, electing whether to receive cash or plan currency which consists of

stock and discounted stock rights (the "Plan Currency")).

    2.      Most of the Transferors, by letter to the Debtors (the "Letters"), have confirmed

and believe that ASM had acquired "all right, title and interest of the Transferor to any cure

payments to be made by Delphi Corporation and/or any of its affiliates . . . ." See Wolfe Decl. at

Exh. D. Moreover, each of the Letters provides that ASM "was within its rights to execute on its

behalf and on behalf of the Transferor" the Transferor Notice (as defined below). Id.

**B.**    **<u>Cure Notice Procedures.</u>**

    3.      On December 10, 2007, the Court entered an Order Approving (I) Disclosure

Statement, (II) Record Date, Voting Deadline, and Procedures For Temporary Allowance of

Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing

Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures,

(VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII)

Reclamation Claim Procedures [Docket No. 11389] (the "Solicitation Order").

---

[1] On Friday, February 15, 2008, the Debtors filed an omnibus objection to claims that sought to expunge or reduce proofs of claim for which cure payments are to be made. Thus, the Debtors have acknowledged that a cure payment is a payment on a claim.

4.      The Solicitation Order approved, *inter alia*, two forms of notice with respect to cure claims. See Solicitation Order at ¶¶ 43-44; Exhibits O & P. First, it approved a form Notice of Cure Amount With Respect to Executory Contract to be Assumed or Assumed and Assigned Under Plan of Reorganization to be sent to each contract counterparty (the "Transferor Notice") and containing a schedule identifying the specific contract being assumed and the Debtors' proposed cure amount for that contract (the "Cure Amount"). See Solicitation Order at ¶ 43; Exhibit O. The Transferor Notice provides an opportunity to accept or reject the Debtors' proposed Cure Amount and, if accepting that amount, to elect whether to receive cash payment or Plan Currency. The Transferor Notice further provides that any Transferor Notice not timely submitted to the Debtors' claims agent, will be deemed an acceptance of the Debtors' proposed Cure Amount and an election of Plan Currency.

5.      Second, the Solicitation Order approved a form Notice to Holders, Assignees, Transferees, and Purchasers of Claims of Cure Procedures Established Under Solicitation Procedures Order (the "Transferee Notice") to be sent to each assignee, transferee, or purchaser of a claim from a Transferor. See Solicitation Order at ¶ 44; Exhibit P. Unlike the Transferor Notice, the Transferee Notice is a generic form that does not identify the contract counterparty, the contract itself, or the proposed cure claim, but rather simply states:

> you are receiving this notice as a courtesy because the claims register of
> Kurtzman Carson Consultants, LLC, the claims agent approved by the
> Bankruptcy Court, indicates that you may hold or may have purchased a claim
> from one or more of the Counterparties to whom the Cure Notice and election was
> sent.

See Solicitation Order, Exhibit P. The Transferee Notice provides no information that would enable a transferee to identify the relevant Transferor, contract being assumed, or Debtors' proposed Cure Amount for that contract.

6.      Nowhere does the Solicitation Order address the issue of whether a Transferor can, by Transfer Agreement or power of attorney, appoint an agent, attorney-in-fact or otherwise, to sign a Transferor Notice on a Transferor's behalf, nor does the Solicitation Order provide that any such Transfer Agreement or power of attorney need be included with the completed Transferor Notice.

7.      With respect to making cure payments, the Solicitation Order provides that "[t]he Debtors are authorized, but not directed, to remit resolved, uncontested, or adjudicated distributions on account of cure directly to the contract party whose contract is being assumed or assumed and assigned." See Solicitation Order at ¶ 43.

8.      Upon information and belief, on or about December 21, 2007, the Debtors sent the Transferor Notices to the Transferors that transferred Claims to ASM (the "Cure Notices") and the Transferee Notices to ASM.

**C.    The Transferee Notices Failed to Provide Sufficient Information to Enable ASM to Determine Which Claims Were Subject to Cure Notices And ASM's Efforts To Obtain Such Information From the Debtors.**

9.      Several times in the last week of December, 2007 and in the first week of January, 2008, counsel for the Delphi Trade Committee (which includes ASM) informed Debtors' counsel that the Transferee Notices lacked the information necessary for members of the Delphi Trade Committee to track-down Transferor Notices and to match-up proposed Cure Amounts with proofs of claim and explained to the Debtors the urgent need for a list reconciling Cure Amounts with specific proofs of claim.  Additionally, during the first week of January, ASM, concerned with this lack of information, sent a letter to each of their Transferors asking them to contact ASM if they had received a Transferor Notice.  On January 4, 2008, counsel for the Debtors provided the Delphi Trade Committee with lists of contracts, cure amounts, and contract counterparties.

10.    On or about January 9, 2008, Argo Partners, Inc., ASM, Avenue Capital Management, LLC, Contrarian Capital Management, LLC, Hain Capital Group, Longacre Master Fund, Ltd., and Sierra Liquidity Fund, LLC filed a Motion for Order (I) Extending Deadline For Submission of Cure Notices (II) Approving the Cure Notices Executed by Movants With Respect to Their Claims, and (III) Directing the Debtors (A) to Reconcile Cure Claims with Corresponding Claims and (B) to make Cure Claim Distributions Directly to Movants (the "Cure Notice Motion").

11.    On January 10, 2008, one day prior to the deadline to submit Cure Notice forms, this Court denied the Cure Notice Motion. Specifically, the Court denied the request for an extension of time for Transferors to elect a cure method, and ruled, in part, that a Bankruptcy Rule 3001(e) filing is not necessarily an assignment of the underlying contract, the assumption (and cure of any defaults) of which is governed by section 365. The Court ruled that the rights under section 365, including assumption of a contract, are governed by the relationship between the Debtors and the Transferors, not the transferees. However, the Court acknowledged several times that it had not seen the actual Transfer Agreements or other applicable documents, stating, "I haven't seen any of the assignments . . .", Tr. 93:22, and "[T]here's nothing in the record to suggest that the contract party has, you know, assigned the contract or the right to do that to anyone else . . ." Tr. 96:19-22. Nor did the Court ever address the question of whether a third party can sign the Cure Notice and make an election on behalf of the Transferor under the powers of a Transfer Agreement or a power of attorney. Further, the Court suggested that transferees contact each of their Transferors and direct them to select the cure treatment desired by the Transferees. Tr. 66:16-67:3.

**D.    ASM and the Transferors' Efforts To Comply With the Cure Notice Procedures.**

12.    In the week between January 4, 2008 and January 11, 2008, ASM took extensive efforts and went through unbounded lengths to get each of ASM's 52 Transferors to complete Transferor Cure Notices. Those efforts included calling each Transferor (often, repeatedly) and emailing best known contacts. (See Wolfe Decl. at ¶ 10).

13.    Initially, immediately and finally receiving from the Debtors the spreadsheet regarding Cure Notices, and concerned about the ability to reach all of the Transferors to obtain their specific original forms timely in light of the intervening holidays, ASM timely served on Kurtzman Carson Consultants LLC ("KCC"), the Debtors' agent for Cure Notices, re-created Transferor Notices ("Re-Created Transferor Notices") signed by ASM, as agent for and assignee of the Transferors (pursuant to the Transfer Agreements). Copies of the Re-Created Transferor Notices are attached to the Wolfe Decl. at Exh. B.

14.    Separately, ASM obtained a number of Transferor Notices from Transferors consisting of notices Transferors received from KCC including replacement notices Transferors requested and received from KCC (the "Original Transferor Notices"). Some of the Original Transferor Notices were sent to ASM by the Transferors at or near the time of receipt by the Transferors. Many were sent only after a specific request from ASM and/or after the Transferor requested a replacement Original Transferor Notice from KCC. Once ASM, as a member of the Delphi Trade Committee, obtained information from the Debtors on January 4, 2008, a mere 7 days prior to the January 11 deadline), ASM continued contacting the remaining Transferors. Most of the remaining Transferors were able to forward to ASM the Original Transferor Notice. In most cases, ASM signed the Original Transferor Notices as agent for and assignee of the Transferors and timely served the Original Transferor Notices on KCC. Copies of the Original Transferor Notices are attached to the Wolfe Decl. at Exh. C.

9

15.    Immediately, following the Court's ruling of January 10, 2008, ASM followed the suggestion of the Court to contact each of its Transferors, at which point most of the Transferors[2] executed Letters specifying that ASM had the authority under the applicable Transfer Agreements to execute the Original Transferor Notices and/or the Re-Created Transferor Notices, and clarifying that, even if a Court were to rule that ASM lacked such authority under the Transfer Agreements, ASM had a power of attorney to do so on the Transferors' behalf and ratified ASM's prior signatures, as attorney-in-fact, on the Original Transferor Notices. Moreover, all of these Transferors (with two exceptions) also signed a copy of the Original Transferor Notice next to ASM's signature, in a further effort to clarify that ASM had the authority to execute the Original Transferor Notices (the "Ratified Original Transferor Notices").[3]  A copy of each Letter, together with the Ratified Original Transferor Notices, were served on KCC by email before the 7:00 p.m. (Pacific) January 11, 2008 deadline and by express mail the next business day, copies of which are attached to the Wolfe Decl. at Exh. D.

E.    **Motion to Strike.**

16.    On or about February 11, 2008, the Debtors filed the Motion to Strike, which was noticed for a hearing on an expedited basis.[4]  If the Motion to Strike is granted, ASM will be forced to receive Plan Currency (stock and discount rights) instead of cash, a result that will cost ASM significant sums, as the Plan Currency is worth materially less than the equivalent amount of cash. See Wolfe Decl. at ¶ 15. Moreover, the distribution of Plan Currency would create

---

[2] ASM was unable, in the extremely limited time provided, to reach all of their Transferors. Notably, however, none of the Transferors refused to sign a Letter.

[3] Two Transferors, Fuji Bank/Fukoku South and Sigmund Cohn Corp, refused to execute a copy of the Original Transferor Notice, stating that they had been informed by their counsel that only ASM had the authority to do so.

[4] No attempt was made by the Debtors to obtain the consent of ASM to having an expedited hearing on the Motion to Strike nor was any additional notice or warning provided to ASM, notwithstanding the fact that the Debtors undoubtedly knew that ASM would be affected by and likely object to the Motion to Strike.

further significant administrative difficulties, due to the nature of transferring stock from the

Transferors to the Transferees and potential tax ramifications of such transfers.  Additionally, the

distribution of the Discount Rights (as defined in the Plan) - part of the Plan Currency - would

create timing risk to ASM, given that such Discount Rights are only exercisable for a short

period of time.

## OBJECTION

### A.    The Court Should Enforce the Transferor Notices Executed by ASM.

#### 1.    ASM had the Authority Under the Transfer Agreements to Execute the Transferor Notices.

17.    Contracts must "be construed to effectuate the parties' intent as expressed by the

words the parties used, and if the terms of the contract are clear and unambiguous, the [c]ourt

must enforce the plain, ordinary and common meaning of those terms.  Francis v. INA Life Ins.

Co., 638 F. Supp. 1117, 1118 (S.D.N.Y. 1986).  New York law requires that a court apply the

plain meaning rule in divining the meaning of a contract.  In re Mirant Corp., 2006 Bankr.

LEXIS 221, *14-15 (Bankr. N.D. Tex. Feb. 13, 2006); See, e.g., R/S Assocs. v. New York Job

Dev. Auth., 98 N.Y.2d 29, 32 (N.Y. 2002).

18.    Pursuant to the Transfer Agreements, ASM, not the Transferors, is entitled to

elect treatment of the Cure Amounts.  The Transfer Agreements clearly provide that ASM is the

transferee of each Claim, including any right to a cure payment and any right to elect cash or

Plan Currency for that cure payment.  The authority of ASM to execute the Transferor Notices

on behalf of the Transferors and elect cash payment logically follows from the nature of the

Transfer Agreements.  Moreover, it clear that any payments made on account of the Claims,

regardless if paid under a plan as general unsecured claim distributions, or on account of Cure

Amounts for the contracts underlying those Claims, must be paid to ASM. That is exactly what the Transfer Agreements provide.

19.    The Letters confirm that this is the effect of the Transfer Agreements. Each Letter, signed by a Transferor,[5] acknowledges, among other things, that the Transferor through the Transfer Agreement "transferred to ASM Capital, among other things, all right, title and interest of the Transferor to any cure payments to be made by Delphi Corporation and/or any of its affiliates . . . ." Further, each Letter acknowledges that "ASM was within its rights to execute on behalf of the Transferor" the Transferor Notices. Moreover, the very fact that most of the Transferors sent the Original Transferor Notices to ASM for ASM to fill-out and sign and send to KCC is clear evidence that such Transferors believed that ASM and only ASM had the right to and intended that ASM fill-out and sign the Original Transferor Notices on their behalf.[6]

20.    Thus, both parties to the Transfer Agreements agree on the meaning of the Transfer Agreements. The only party who has raised any dispute is the Debtors, someone who does not have any interest in the Transfer Agreements. It would seem that the Debtors' motive is solely to force ASM to accept payment of the Cure Amounts in Plan Currency, which is worth far less than the cash equivalent.

21.    Critically, the Debtors have known for some time -- and certainly well before their Motion to Strike -- of the clear language of the Transfer Agreements empowering ASM to elect treatment for all aspects of its Claims. That was made a matter of public record, of which

---

[5] Most of the signatures on the Letters are either notarized or acknowledged. To the extent that the signatures are required to be notarized or acknowledged to be effective, ASM respectfully requests the right to cure any deficient signatures by providing the Debtors with a corrected Letter.

[6] If this Court were to rule that such Letters are sufficient to rule that the Debtors must respect ASM's signed Transferor Notices, ASM respectfully requests that it be allowed to obtain Letters from the Transferors that ASM has not yet been able to reach to sign the Letters.

the Debtors received notice, when ASM filed its notices pursuant to Bankruptcy Rule 3001(e), to which a copy of the relevant Transfer Agreement was attached.[7]

### 2.    ASM had the Authority Under its Powers of Attorney as Agent of the Transferors to Execute the Transferor Notices.

22.    Even if ASM did not have the authority to execute the Transferor Notices on behalf of the Transferors and elect to take cash or Plan Currency for the cure payments on the basis of the Transfer Agreements alone, the Letters appoint ASM as such Transferors' "attorney-in-fact and agent with the sole and exclusive power to execute the [Transferor Notice] on the Transferor's behalf." See Wolfe Decl. at Exh. D. Further, the Letters provide that by "granting ASM said power of attorney and appointing ASM as Transferor's attorney-in-fact and agent, Transferor ratifies ASM's previous execution of the Cure Notice Form." Id. As each such Transferor's attorney-in-fact, ASM had the right to execute the Transferor Notices. Thus, this Court must deny the Motion to Strike and enforce the Transferor Notices executed by ASM for which ASM obtained Letters.

23.    The Debtors cite to Bankruptcy Rule 9010 and seem to argue for a narrow interpretation of a form of power of attorney that would allow a transferee signature on a Transferor Notice to be enforceable. However, Bankruptcy Rule 9010 and the cases interpreting it (including the only case cited by the Debtors) do not support the Debtors' view and, in fact, support a finding that the Letters are sufficient to make the power of attorney contained therein enforceable.

24.    Bankruptcy Rule 9010 provides, in its pertinent part, that:

> The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a

---

[7] To be perfectly clear, ASM cites its Bankruptcy Rule 3001(e) filings solely to show that the Debtors were on notice of the provisions of the Transfer Agreements. For purposes of this Objection, ASM does not argue that those filings, by themselves, empowered ASM to execute Transferor Notices.

> proof of claim or the acceptance or rejection of a plan shall be
> evidenced by a power of attorney conforming substantially to the
> Official Form.

Bankruptcy Rule 9010 (emphasis added). Thus, a power of attorney need not be the official

form, but rather must only substantially conform to the official form. Courts have interpreted

this standard flexibly, enforcing powers of attorney where the power of attorney was

acknowledged by "a notary rather than an agent of the corporation" and where "there was an

individual rather than a corporate acknowledgment," finding these errors "harmless." In re Ben

Franklin Retail Stores, Inc., 214 B.R. 852, 863 (Bankr. N.D. Ill. 1997). Even the lone case cited

by the Debtors is in accord with this holding. See In re Eddie Haggar Ltd., Inc., 190 B.R. 281,

286 (Bankr. N.D. Tex. 1995) (ruling that the failure to contain the address of the proxy receiver

and the failure to have the proxy/power of attorney acknowledged or notarized were harmless

errors).

25.    The Letters (obtained within 24 hours of the Court's January 10, 2008 ruling)

substantially conform to the official form. Like the official form, which contains language

expressly acknowledging the grant of a power of attorney and the scope of the power of attorney,

compare Official Form 11A (general power of attorney) with Official Form 11B (special power

of attorney), the Letters contain specific language granting ASM the authority to act "as

attorney-in-fact" and the scope of that authority (i.e., "with the sole and exclusive power to

execute the [Transferor Notice]"). See Wolfe Decl. at Exh. D. Additionally, the Letters

reference the Debtors' bankruptcy cases and the Transfer Agreement and relevant Claim. Thus,

the Letters substantially conform with the official form.

26.    Even if this Court were to rule that the Letters do not substantially conform with

the official form (which they do), ASM has the right to submit amended or corrected powers of

attorney that remedy any defects. See In re Eddie Haggar Ltd., Inc., 190 B.R. at 286 (even if

14

original powers of attorney had not substantially conformed to the official form, Court could

have relied on amended powers of attorney presented to the Court); In re Monterey Equities-

Hillside, 73 B.R. 749, 754 (Bankr. N.D. Cal. 1987) (filing of amended petition containing

powers of attorney that comply with Bankruptcy Rule 9010 and the official form cured any

defect with originally filed petition).  Thus, if this Court rules that the Letters grant of a power of

attorney is not enforceable under Bankruptcy Rule 9010, then ASM should be given a reasonable

opportunity to cure any defects with the Letters by providing to the Debtors and the Court an

amended document.  Additionally, if this Court rules that such Letters are required for the

Transferor Notices executed by ASM to be effective, ASM respectfully requests a reasonable

period of time to obtain Letters from the Transferors that have not yet provided a Letter.

     **3.**     **The Issue of ASM's Rights Under the Transfer Agreements and as Attorney-In-Fact for the Transferors was not Addressed by This Court's Prior Ruling On The Cure Notice Motion.**

     27.     ASM's rights under the Transfer Agreements and as attorney-in-fact in the

transfers was clearly not addressed by the Court's ruling on January 10, 2008.  The Cure Notice

Motion did not request a ruling that ASM, as a transferee, had the right under the Transfer

Agreements, to execute the Original Transferor Notices on behalf of the Transferor.  Rather, the

Cure Notice Motion requested a ruling that ASM had that right simply by virtue of its rights

under Bankruptcy Rule 3001.

     28.     At the hearing on the Cure Notice Motion, this Court noted repeatedly that it did

not have the Transfer Agreements before it and could not determine the rights under it.  Now, the

Court has those Transfer Agreements before it and they clearly provide ASM with the right to

execute the Original Transferor Notices on behalf of the Transferor, through the express intent of

the Transferor.

29.     Moreover, this Court, in denying the Cure Notice Motion, stated that it was concerned about ASM and the other transferees interfering with the relationship between the Transferors and the Debtors.  Here, as the Transfer Agreements provide and as most of the Transferors themselves acknowledged in the Letters, ASM is not interfering.  Rather, ASM had the right to fill out and sign the Original Transferor Notices on behalf of the Transferors.  Instead, it is the Debtors that are interfering with the Transferors' rights to sell their cure claim rights (including the right to elect cash rather than Plan Currency) to ASM.

30.     In addition, the Cure Notice Motion never addressed the question of whether ASM was an attorney-in-fact for the Transferors with the right to sign the Transferor Notices on behalf of the Transferors and that subject did not come up during the hearing.  As such, the ruling by this Court denying the Cure Notice Motion does not preclude this Objection.

**B.     Alternatively, This Court Should Enforce The Late Filed
Transferor Notices Containing The Transferors' Signatures.**

31.     Even if the Court holds that ASM is not authorized under the Transfer Agreements to execute the Transferor Notices, the Court should acknowledge the cure treatment elected in the Ratified Original Transferor Notices.

32.     Pursuant to Bankruptcy Rule 9006(b)(1), a Bankruptcy Court can authorize a late filing if the failure to comply with the earlier deadline was the result of excusable neglect.  Case law makes clear that "by empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)(1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness, as well as by intervening circumstances beyond the party's control."  Pioneer Inv. Serv. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 388 (1993).  In Pioneer, the Court stressed that the determination of whether a party's neglect of a deadline was excusable

16

was "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 395. Thus, in making such a finding, courts explore the following: the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. Id.

33.     Here, the circumstances strongly support allowing late filings due to excusable neglect. Ironically, the Debtors solicited ASM for plan votes with respect to the Claims (which arise from the very contracts subject to the Cure Notices). The Debtors did not solicit plan votes from the Transferors. Apparently, the Debtors acknowledge that ASM is authorized by its Transfer Agreements to vote on the plan which determined what is Plan Currency, but argue that ASM cannot elect whether to receive that Plan Currency for a portion of its Claims. Rather, the Debtors will only acknowledge Transferor Notices from Transferors, who were never solicited for plan votes, and therefore less familiar with the real value of Plan Currency.

34.     After this Court denied the Cure Notice Motion on January 10, 2008 (the day before the Transferor Notices were due at KCC), in an abundance of caution, ASM obtained from most of the Transferors the Letters. In addition, most of the Transferors signed a copy of the Original Transferor Notice next to ASM's signature (i.e., the Ratified Original Transferor Notices). In this way, ASM attempted to provide further assurances to the Debtors that the signatures were valid and enforceable and that ASM's election of cash should be respected. ASM sent the Letters and the Ratified Original Transferor Notices to KCC as expeditiously as possible, on January 11 by email and by express mail on the next business day. Moreover, the Debtors have not yet announced an effective date for their Plan and, based upon public reports,

an effective date does not appear to be imminent. Thus, there has been little to no delay in the judicial proceedings.

35.    In all instances, the Ratified Original Transferor Notices were duplicative in form to the Original Transferor Notices previously signed by only ASM and sent to KCC on a timely basis. Thus, the Debtors were aware of the exact forms to which these Ratified Original Transferor Notices related. Each such form had the bar code the Debtors affixed to the bottom of the Cure Notices. Given these facts, the Debtors were able to reconcile the various notices sent to the Debtors, as evidenced by the particularized schedules attached to the Motion to Strike. There is no material prejudice to the Debtors. The failure to allow a late filing here, however, would deprive ASM of the benefits of their bargains and cost it significant sums by forcing it to accept Plan Currency which is worth less than the cash payment to which it would otherwise be entitled. Allowing a late filing here, would bring the cure notice procedures in line with proof of claim procedures, which clearly allow a late filed amended claim to be effective if it relates back to timely filed claim. Here, the Ratified Original Transferor Notices are identical to the Original Transferor Notices previously signed and timely submitted by ASM (other than the additional signatures of the Transferors) and, thus, should relate back and be effective. In re Tanaka Bros. Farms, Inc., 36 F.3d 996, 998 (10th Cir. 1994) ("In a bankruptcy proceeding, 'amendment of a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable.'") (quoting Unioil v. Elledge (In re Unioil, Inc.), 987 F.2d 665, 667 (10th Cir. 1993)).

36.    Moreover, there can be no question that ASM has acted in good faith. After the hearing on January 10, 2008, ASM took every conceivable step to get Original Transferor Notices and the Letters to KCC as expeditiously as possible. Since the Motion to Strike was

filed, ASM contacted the Debtors and made every reasonable attempt to resolve as many issues as possible, to no avail.

37.     Given the foregoing, the fact that there is little to no prejudice to the Debtors, that the length of the delay was a matter of one business delay (not late by email), the fact that such delay would have little to no impact on judicial proceedings, the reasons for the delay, and ASM's good faith, this Court should allow the late filed Ratified Original Transferor Notices (executed by the Transferors).

38.     Moreover, pursuant to section 105(a), this Court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). In certain limited cases, ASM was unable to obtain or have the Transferor obtain the original cure notice election form or a duplicate thereof, notwithstanding the fact that ASM took every reasonable step to do so. As stated above, ASM had the authority to execute the original cure notice election form on behalf of the Transferor. ASM submits that in these limited circumstances, ASM's execution of a reproduction of the original cure notice election form (created by ASM) rather than the actual original cure notice election form is excusable neglect under Bankruptcy Rule 9006(b). If, for some reason, the various notices filed by ASM and/or the Transferors are insufficient to enforce the Transferors' and ASM's election for cash treatment, ASM respectfully requests that it have a reasonable period of time to cure any deficiencies in connection therewith.

**C.      Joinder in Contrarian Funds LLC and Argo Partners, Inc. Objections.**

39.     On February 19, 2008, Contrarian Funds, LLC filed its Objection Of Contrarian Funds, LLC To Debtors' Expedited Motion To Strike (I) Non-Conforming Cure Amount Notices And (II) Improper Objections Pursuant To Solicitation Procedures Order, Confirmation Order, Plan Of Reorganization, 11 U.S.C. § 105(A), And Fed. R. Bankr. P. 9010 and Argo Partners, Inc.

19

filed its Objection Of Argo Funds, Inc. To Debtors' Expedited Motion To Strike (I) Non-

Conforming Cure Amount Notices And (II) Improper Objections Pursuant To Solicitation

Procedures Order, Confirmation Order, Plan Of Reorganization, 11 U.S.C. § 105(A), And Fed.

R. Bankr. P. 9010 (collectively, the "Other Objections").  The Other Objections both ask this

Court to direct that payment on account of cure notices be made to Contrarian Funds, LLC and

Argo Partners, Inc., as claim transferees.  In the event the Court grants the relief sought in the

Other Objections and orders the Debtors to provide distributions directly to Contrarian Funds,

LLC and Argo Partners, Inc., ASM joins in the relief requested in the Other Objections and

respectfully requests this order the Debtors to provide distributions directly to ASM with respect

to the cure claims and/or otherwise provide ASM with a reasonable opportunity to provide the

Debtors and the Court with sufficient documentation from the Transferors reflecting the

Transferors intent to have distributions on cure claims made directly to ASM.

### Waiver of Memorandum of Law

40.     Pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern

District of New York, because there are no novel issues of law presented herein, ASM

respectfully requests that the Court waive the requirement that ASM file a memorandum of law

in support of this Objection.

## CONCLUSION

For the foregoing reasons, ASM respectfully request that the Court deny the Motion to

Strike and grant such other and further relief as is just and proper.

Dated: February 19, 2008
        New York, New York

                                    KASOWITZ, BENSON, TORRES
                                    & FRIEDMAN LLP

                                    /s/ Daniel N. Zinman
                                    David S. Rosner (DR-4214)
                                    Adam L. Shiff (AS-7571)
                                    Daniel N. Zinman (DZ-7562)
                                    Daniel A. Fliman (DF-2236)
                                    1633 Broadway
                                    New York, New York 10019
                                    Telephone: (212) 506-1700
                                    Facsimile:  (212) 506-1800

                                    Counsel to *ASM Capital L.P. and ASM
                                    Capital II L.P.*

21