Hearing Date: February 21, 2008 at 10:00 a.m.
Objection Deadline: February 19, 2008 at 4:00 p.m.

David S. Rosner (DR-4214)
Adam L. Shiff (AS-7571)
Daniel N. Zinman (DZ-7562)
Daniel A. Fliman (DF-2236)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to Contrarian Funds, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                   :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                Debtors.                :    (Jointly Administered)
-----------------------------------------------------------x

**OBJECTION OF CONTRARIAN FUNDS, LLC TO DEBTORS' EXPEDITED
MOTION TO STRIKE (I) NON-CONFORMING CURE AMOUNT
NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO
SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER,
PLAN OF REORGANIZATION, 11 U.S.C. § 105(A), AND FED. R. BANKR. P. 9010**

Contrarian Funds, LLC ("Contrarian"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the Debtors' Expedited Motion to Strike (I) Non-Conforming Cure Amount Notices and (II) Improper Objections Pursuant to Solicitation Procedures Order, Confirmation Order, Plan of Reorganization, 11 U.S.C. § 105(A), and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9010 (the "Motion to Strike"), and respectfully represent as follows:

**Preliminary Statement**

The Motion to Strike asks this Court to eliminate timely, properly submitted cure notice election forms solely because they were submitted by Contrarian on behalf of claim transferors.

The Debtors, relying on a myopic reading of the Solicitation Procedures Order (as defined below) and a flawed interpretation of this Court's prior holding, as well as a misunderstanding of Bankruptcy Rule 9010, ask this Court to interfere in the relationship between Contrarian and its claim transferors.

Despite extensive efforts by Contrarian to ensure that its transferors complete cure notice election forms, operating under a severely truncated timeframe -- caused by Debtors' delay in providing Contrarian with sufficient information to identify all transferors -- 21 of Contrarian's transferors never completed cure notices. Rather than having no cure notice submitted, and therefore defaulting to plan currency treatment (worth substantially less than cash), Contrarian completed cure notice election forms on behalf of its transferors. Contrarian had clear authority to do so under its transfer agreements.

Pursuant to each transfer agreement, Contrarian is vested with a power-of-attorney by a claim transferor. Each power-of-attorney authorizes Contrarian to act on behalf of a transferor on matters related to the transferred claim. Contrarian, as transferee, is also entitled to receive all payments on its claims, including cure payments. Thus, Contrarian is authorized to submit cure notice election forms on behalf of its transferors. But the Debtors wholly disregard Contrarian's powers-of-attorney and have never explained why those powers-of-attorney are insufficient to confer authority for Contrarian to execute cure notice election forms.

Rather, the Debtors assert a clear-cut rule that any cure notice election form submitted by anybody who is not a contract counterparty (as opposed to an attorney-in-fact of a contract counterparty) must be rejected. The Debtors' position is not supported by the Solicitation Procedures Order which never prohibited completion of forms by third-parties such as those with powers-of-attorney. Moreover, Bankruptcy Rule 9010, which the Debtors erroneously argue

2

requires completion of an official bankruptcy form, really requires a form "substantially complying" with the official forms; Contrarian's transfer agreements with powers-of-attorney are such forms. And Debtors' argument that this Court already ruled to exclude Contrarian's cure notice election forms is mistaken. The Court never reviewed Contrarian's powers-of-attorney to determine their impact on cure election.

The Motion to Strike should be denied with respect to the Relevant Cure Notices (as defined below) and the Court should recognize the treatment elected by Contrarian in those notices.

## Background

### A. Contrarian As Transferee Of Claims, Including Cure Claims.

1. Contrarian holds certain trade claims against the Debtors (the "Claims"), transferred from various parties ("Transferors") through post-petition transfers ("Claims Transfers"). Each Claims Transfer is governed by a transfer of claim agreement (a "Transfer Agreement") between Contrarian, as the transferee, and the prior claimholder, as Transferor.

2. Throughout these bankruptcy cases, Contrarian has publicly filed approximately one hundred notices of transfer pursuant to Bankruptcy Rule 3001(e) (collectively, the "Notices of Transfer"). Each Notice of Transfer was served upon the Debtors. Thus, the Debtors are aware that Contrarian is transferee of the Claims.

3. While each Transfer Agreement may vary slightly -- a result of negotiations between Contrarian and Transferors -- each Transfer Agreement necessarily contains a power-of-attorney provision. See Declaration of Alisa Mumola in Support of Objection Of Contrarian Funds, LLC to Debtors' Expedited Motion to Strike (I) Non-Conforming Cure Amount Notices and (II) Improper Objections Pursuant to Solicitation Procedures Order, Confirmation Order, Plan of Reorganization, 11 U.S.C. § 105(A), and Fed. R. Bankr. P. 9010 (the "Mumola Decl."),

3

filed contemporaneously with this Objection, at ¶ 4. In fact, empowering Contrarian with power-of-attorney is an absolute condition without which Contrarian simply will not conduct a transfer. (See Id.). Copies of the Transfer Agreements between Contrarian and the Relevant Transferors (as defined below) (the "Relevant Transfer Agreements") are attached to the Mumola Decl. at Exh. A through T.

4.     The Relevant Transfer Agreements each contain a provision substantially similar to the following provision empowering Contrarian with power-of-attorney (collectively, the "Power-of-Attorney Provisions"):

> SELLER hereby irrevocably <u>appoints BUYER as its true and lawful attorney-in-fact with respect to the Claim and authorizes Buyer to act in SELLER'S name,</u> place, and stead, to demand, sue for, compromise and recover all such sums of money which are, or may hereafter become due and payable for, or on account of the Claim herein assigned, to vote the Claim and to file proofs of claim with respect thereto. <u>SELLER hereby grants unto BUYER full authority to do all things necessary to enforce the Claim and SELLER's rights thereunder</u> . . .

(See e.g. Mumola Decl. at Exh. B, ¶ 9) (emphasis added).

5.     The language of the Power-of-Attorney Provisions could not be any clearer. Contrarian is the designated and rightful recipient of any payments on a Claim, including cure payments. Contrarian is also empowered to act on behalf of the Transferor in all respects related to the transferred Claim, including accepting or disputing a proposed Cure Amount and electing the form of treatment of that Claim (in this instance, electing cash versus plan currency consisting of stock and discounted stock rights ("Plan Currency")).

**B.     Cure Notice Procedures.**

6.     On December 10, 2007, the Court entered an Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures For Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures,

4

(VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures (the "Solicitation Procedures Order").

7. The Solicitation Procedures Order approved, *inter alia,* two forms of notice with respect to cure claims. (See Solicitation Procedures Order at ¶¶ 43-44; Exhibits O & P). First, it approved a form notice (the "Transferor Cure Notice") containing a schedule identifying the specific contract being assumed and the Debtors' proposed cure amount for that contract (the "Cure Amount"). (See Solicitation Order at ¶ 43; Exhibit O). The Transferor Cure Notice provided an opportunity to accept or reject the Debtors' proposed Cure Amount and, if accepting that amount, to elect whether to receive cash payment or Plan Currency. The Transferor Cure Notice provided that any Transferor Cure Notice not timely submitted to the Debtors' claims agent, would be deemed an acceptance of the proposed Cure Amount and an election of Plan Currency.

8. Second, the Solicitation Procedures Order approved a form notice (the "Transferee Notice") sent to each assignee, transferee, or purchaser of a claim from a Transferor receiving a Transferor Cure Notice. (See Solicitation Procedures Order at ¶ 44; Exhibit P). Unlike the Transferor Cure Notice, the Transferee Notice was a generic form that did not identify the contract counterparty, the contract itself, or the proposed Cure Amount. (See Solicitation Procedures Order, Exhibit P). The Transferee Notice provided no information that would enable a transferee, such as Contrarian, to identify the relevant Transferor, contract being assumed, or Debtors' proposed Cure Amount for that contract.

9. Upon information and belief, on or about December 21, 2007, the Debtors sent the Transferor Cure Notices to Transferors of Contrarian's Claims (the "Cure Notices") and the Transferee Notices to Contrarian.

C. **The Transferee Notices Fail to Provide Sufficient Information to Enable Contrarian to Determine Which Transferors Received Cure Notices.**

10. Several times in the last week of December, 2007 and in the first week of January, 2008, counsel for the Delphi Trade Committee (which includes Contrarian) informed Debtors' counsel that the Transferee Notices lacked the information necessary for members of the Delphi Trade Committee: to identify which Transferors received Transferor Cure Notices and to determine whether Transferor Cure Notices would impact transferee's claims. Without that information, the Delphi Trade Committee explained, it was extremely difficult to ensure that Transferors elected the treatment desired by Claim transferees.

11. On January 4, 2008 -- one week before the deadline for submitting Cure Notices -- counsel for the Debtors provided the Delphi Trade Committee with lists of contracts, cure amounts, and contract counterparties. Contrarian immediately began contacting Transferors regarding the Cure Notices.

12. On or about January 9, 2008, Argo Partners, Inc., ASM, Avenue Capital Management, LLC, Contrarian Capital Management, LLC, Hain Capital Group, Longacre Master Fund, Ltd., and Sierra Liquidity Fund, LLC filed a Motion for Order (I) Extending Deadline For Submission of Cure Notices (II) Approving the Cure Notices Executed by Movants With Respect to Their Claims, and (III) Directing the Debtors (A) to Reconcile Cure Claims with Corresponding Claims and (B) to make Cure Claim Distributions Directly to Movants (the "Cure Notice Motion").

13. On January 10, 2008, one day prior to the deadline to submit Cure Notice forms, this Court denied the Cure Notice Motion. Specifically, the Court denied the request for an extension of time for Transferors to elect a cure method, and ruled, in part, that a Bankruptcy Rule 3001(e) filing is not necessarily an assignment of the underlying contract, the assumption

6

(and cure of any defaults) of which is governed by section 365. The Court ruled that the rights under section 365, including assumption of a contract, are governed by the relationship between the Debtors and the Transferors, not the transferees.

14. However, the Court acknowledged several times that it had not seen the actual Transfer Agreements or other applicable documents, stating, "I haven't seen any of the assignments . . .", (See January 10, 2008 Transcript ("Tr.") at 93:22), and "[T]here's nothing in the record to suggest that the contract party has, you know, assigned the contract or the right to do that to anyone else . . ." (See Tr. at 96:19-22). Nor did the Court ever address whether a third-party can sign a Transferor Cure Notice and make an election on behalf of a Transferor under the powers-of-attorney in a Transfer Agreement. Further, the Court suggested that transferees contact each of their Transferors and direct them to select the cure treatment desired by the transferees. (See Tr. at 66:16-67:3). Contrarian continued it extensive efforts to do so.

D. **Contrarian's Extensive Efforts To Obtain Transferor Completed Cure Notices.**

15. In the week between January 4, 2008 and January 11, 2008, Contrarian took extensive efforts and went through unbounded lengths to get each of Contrarian's 64 Transferors to complete Transferor Cure Notices. Those efforts included calling each Transferor (often, repeatedly), emailing best known contacts, and sending direction letters explaining the process and how to complete Transferor Cure Notices. (See Mumola Decl. at ¶ 25). A sample of such letter is attached to the Mumola Decl. as Exh. U.

16. Through extensive efforts, Contrarian was successful in ensuring that 43 of its Transferors completed and submitted Transferor Cure Notices. (See Mumola Decl. at ¶ 26).

7

17. However, upon information and belief, the following Transferors (the "Relevant Transferors") failed to complete and submit Transferor Cure Notices (the "Relevant Cure Notices"):[1]

| Transferor Name | Proposed Cure Amount |
|---|---|
| AMI Industries | 101,722.70 |
| Creative Engineered polymer | 10,618.34 |
| Dickey Grabler | 3,639.82 |
| Ferro Corporation | 6,906.00 |
| FHBC AMERICA INC EFT | 36,510.72 |
| GCI Technologies | 0.00 |
| Intel Americas | 61,861.60 |
| Magnesium Industries | 34,836.00 |
| Millenium Industries Corp | 585,170.32 |
| Monroe, Inc. | 0.00 |
| Novelis Corporation | 0.00 |
| Okemetic Inc. | 125,426.36 |
| Okemetic Oyj. | 235,679.69 |
| PhotoCircuits Corporation | 0.00 |
| Plastic Decorators | 9,252.30 |
| Premier Products | 62,862.80 |
| Schaeffler Canada, Inc. | 118,659.84 |
| Security Plastics DIV NMC | 10,896.13 |
| Thomas Engineering | 0.00 |
| Triumph, LLC | 23,852.15 |
| Twoson Tool Co., Inc. | 41,730.92 |
| Twoson Tool Co., Inc. | 2,348.64 |
| Wacker Chemical Corp | 0.00 |

(See Mumola Decl. at ¶ 27 ). In those instances, either Contrarian could not reach the Transferor or the Transferor simply failed -- despite Contrarian's direction -- to complete and submit its Transferor Cure Notice. (See Id.).

18. Critically, none of the Relevant Transferors stated to Contrarian that they would not submit Cure Notices because they agreed with the Debtors' proposed Cure Amount and

---

[1] It is Contrarian's understanding that Transferors Millenium Industries Corp. and Schaeffler Canada Inc. intend to object, or have objected, to the Motion to Strike. If the Court grants those objections, and those Transferors' cure notices are accepted by the Debtors, Contrarian will withdraw this Objection with respect to those cure notices.

8

wanted Plan Currency over cash. (See Mumola Decl. at ¶ 28).

19.     When it was clear that the Relevant Transferors would not submit their Cure Notices, Contrarian decided to exercise its powers-of-attorney, pursuant to the Power-of-Attorney Provisions, and to complete Transferor Cure Notices on behalf of the Relevant Transferors (the "Re-Created Transferor Cure Notices").[2] An example of such Re-Created Transferor Cure Notice is attached to the Mumola Decl. as Exh. V.

### E. Motion to Strike.

20.     On or about February 11, 2008, the Debtors filed the Motion to Strike, which was noticed for a hearing on an expedited basis.[3] If the Motion to Strike is granted, Contrarian will be forced to receive Plan Currency instead of cash on account of the Relevant Cure Notices; a result inconsistent with Contrarian's right to elect treatment of its claims and that could cost Contrarian significant sums, as Plan Currency is worth materially less than the equivalent amount of cash. (See Mumola Decl. at ¶ 30). Moreover, Contrarian would be deemed to have accepted all proposed Cure Amounts, notwithstanding Contrarian's dispute of Cure Amounts on certain Re-Created Transferor Cure Notices.

## OBJECTION

### A. The Court Should Enforce the Transferor Cure Notices Executed by Contrarian.

#### 1. Contrarian Has Authority Under the Transfer Agreements to Execute the Transferor Cure Notices.

21.     "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced

---

[2] The Re-Created Transferor Cure Notices do not prejudice the Debtors as, besides the lack of a bar-code, the Re-Created Transferor Cure Notices are identical to the Transferor Cure Notices and are sufficient to put the Debtors on notice of each of the Relevant Cure Notices.

[3] No attempt was made by the Debtors to obtain the consent of Contrarian to having an expedited hearing on the Motion to Strike nor was any additional notice or warning provided to Contrarian, notwithstanding the fact that the Debtors undoubtedly knew that Contrarian would be affected by and likely object to the Motion to Strike.

9

according to its terms. In interpreting a contract under the laws of New York, the intent of the parties governs. The contract should be construed so as to give full meaning and effect to all of its provisions." In re Metz, 231 B.R. 474, 479 (E.D.N.Y. 1999) (citations omitted).

22. Pursuant to the Transfer Agreements, Contrarian is entitled to accept or dispute Cure Amounts and to elect treatment of Cure Amounts. Each Transfer Agreement contains a Power-of-Attorney Provision empowering Contrarian to act on behalf of the Transferor with respect to the Claim. Moreover, Contrarian is entitled to receive payments on account of its Claims which includes cure payments. The authority of Contrarian to execute the Transferor Cure Notices on behalf of the Transferors and elect cash payment logically follows from these provisions of the Transfer Agreements.

23. The Transfer Agreements reflect that the only parties whose interests are really at stake (i.e., Contrarian and each Relevant Transferor) are in agreement that Contrarian can act on behalf of Transferors. The only party who has raised any dispute is the Debtors, someone who does not have any interest in the Transfer Agreements. It would seem that the Debtors' motive is solely to force Contrarian to accept payment of the Cure Amounts in Plan Currency, which is worth far less than the cash equivalent.

24. Ironically, the Debtors solicited Contrarian for plan votes with respect to the Claims (which arise from the very contracts subject to the Cure Notices). The Debtors did not solicit plan votes from the Transferors. Apparently, the Debtors acknowledge that Contrarian is authorized by its Transfer Agreements to vote on the plan which determined what is Plan Currency, but argue that Contrarian cannot elect whether to receive that Plan Currency for a portion of its Claims. Rather, the Debtors will only acknowledge Transferor Cure Notices from Transferors, who were never solicited for plan votes, and therefore less familiar with the real

value of Plan Currency.

25. As such, the Court should acknowledge the Re-Created Transferor Cure Notices. Moreover, the Court should direct, pursuant to the Power-of-Attorney Provisions that any payment on behalf of Re-Created Transferor Cure Notices be made directly to Contrarian. The distribution of cash or Plan Currency to Transferors, rather than Contrarian, would create further significant administrative difficulties, due to, for instance, complexities of transferring stock from the Transferors to Contrarian and potential tax ramifications of such transfers. (See Mumola Decl. at ¶ 31). Additionally, distribution of the discounted rights portion of Plan Currency would create timing risk to Contrarian, given that such discount rights are only exercisable for a short period of time. (See Id.).

### 2. Debtors' Reliance on Bankruptcy Rule 9010 Is Unavailing.

26. The Debtors cite to Bankruptcy Rule 9010 and seem to argue for a narrow interpretation of the form of power of attorney that would allow a transferee signature on a Transferor Cure Notice to be enforceable. The Debtors contend that because Contrarian did not submit an Official Form 11A General Power of Attorney or Official Form 11B Specific Power of Attorney, the Debtors can simply disregard the Power-of-Attorney Provisions in the Transfer Agreements.

27. However, Bankruptcy Rule 9010 and the cases interpreting it (including the only case cited by the Debtors) do not support the Debtors' view and, in fact, support a finding that the Transfer Agreements are sufficient to make the powers of attorney contained therein enforceable.

28. Bankruptcy Rule 9010 provides, in its pertinent part, that:

> The authority of any agent, attorney in fact, or proxy to represent a creditor for any purpose other than the execution and filing of a proof of claim or the acceptance or rejection of a plan shall be

11

>evidenced by a power of attorney <u>conforming substantially</u> to the Official Form.

Bankruptcy Rule 9010 (emphasis added). Thus, a power of attorney need not be the official form, but rather must only substantially conform to the official form.

29. Courts have interpreted this standard flexibly, enforcing powers of attorney where the power of attorney was acknowledged by "a notary rather than an agent of the corporation" and where "there was an individual rather than a corporate acknowledgment," finding these errors "harmless." <u>In re Ben Franklin Retail Stores, Inc.</u>, 214 B.R. 852, 863 (Bankr. N.D. Ill. 1997). Even the lone case cited by the Debtors is in accord with this holding. <u>See</u> <u>In re Eddie Haggar Ltd., Inc.</u>, 190 B.R. 281, 286 (Bankr. N.D. Tex. 1995) (ruling that the failure to contain the address of the proxy receiver and the failure to have the proxy/power of attorney acknowledged or notarized were harmless errors).

30. The Transfer Agreements and the Power-of-Attorney Provisions contained therein substantially conform to the official form. Like the official forms, which contains language expressly acknowledging the grant of a power of attorney and the scope of the power of attorney, <u>compare</u> Official Form 11A (general power of attorney) <u>with</u> Official Form 11B (special power of attorney), the Power-of-Attorney Provisions contain specific language granting Contrarian the authority to act "in SELLER'S name, place, and stead, to demand, sue for, compromise and recover all such sums of money which are, or may hereafter become due and payable for, or on account of the Claim herein assigned, to vote the Claim and to file proofs of claim with respect thereto." (See <u>e.g.</u>, Mumola Decl. at Exh. B, ¶ 9). Additionally, the Transfer Agreements reference the Debtors' bankruptcy cases and the relevant Claim. (See Mumola Decl. at Exh. A through T). Thus, the Transfer Agreements and the Power-of-Attorney Provisions contained therein substantially conform with the official forms.

31.     Even if this Court were to rule that Transfer Agreements and the Power-of-Attorney Provisions contained therein do not substantially conform with the official forms, Contrarian has the right to submit amended or corrected powers of attorney that remedy any defects. See In re Eddie Haggar Ltd., Inc., 190 B.R. at 286 (even if original powers of attorney had not substantially conformed to the official form, Court could have relied on amended powers of attorney presented to the Court); In re Monterey Equities-Hillside, 73 B.R. 749, 754 (Bankr. N.D. Cal. 1987) (filing of amended petition containing powers of attorney that comply with Bankruptcy Rule 9010 and the official form cured any defect with originally filed petition). Thus, if this Court rules that the Transfer Agreements and the Power-of-Attorney Provisions contained therein are not enforceable under Bankruptcy Rule 9010, then Contrarian should be given a reasonable opportunity to cure any defects with an amended document.

### 3.     Contrarian's Right To Submit Relevant Cure Notices On Behalf Of Transferors Has Not Yet Been Addressed By This Court.

32.     The Debtors cite to the Solicitation Procedures Order and the Court's ruling on the Cure Notice Motion as binding and determinative of the issues raised in the Motion to Strike. However, neither the Solicitation Procedures Order nor the Cure Notice Motion addressed the actual impact of the Transfer Agreements and the Power-of-Attorney Provisions.

33.     The Solicitation Procedures Order only provided that the Debtors were "authorized to provide counterparties to supply contracts that the Debtors intend to assume with the Cure Amount Notice." (¶ 43). The Debtors erroneously argue that, therefore, the Solicitation Procedures Order "do[es] not contemplate or allow a party other than the Counterparty to execute and return the Cure Amount Notice." (Motion to Strike ¶ 29). But that is clearly a misreading of the Solicitation Procedures Order which does not preclude parties empowered to act on behalf of the counterparty from executing Cure Notices.

13

34. Moreover, whether Contrarian was authorized by the Transfer Agreements and the Power-of-Attorney Provisions to submit Cure Notices was never addressed by the Court's ruling on January 10, 2008, which only considered whether Bankruptcy Rule 3001(e), by itself, gave transferees the right to complete Transferor Cure Notices. In fact, this Court noted repeatedly that it did not have the Transfer Agreements before it and could not determine the rights under them. See e.g. Tr. at 93:22 ("I haven't seen any of the assignments . . ."); Tr. at 96:19-22 ("[T]here's nothing in the record to suggest that the contract party has, you know, assigned the contract or the right to do that to anyone else . . .").

35. Now, the Court has those Transfer Agreements before it and they clearly provide Contrarian with the right to execute the Relevant Cure Notices on behalf of the Relevant Transferors.

36. Moreover, this Court, in denying the Cure Notice Motion, stated that it was concerned about Contrarian and the other transferees interfering with the relationship between the Transferors and the Debtors. Here, none of the Transferors contend that Contrarian is interfering with their relationship with the Debtors and the Transfer Agreements are clear that the Transferors voluntarily empowered Contrarian to elect treatment for the Claims. What is actually happening is that the Debtors are interfering in the relationship between Contrarian and the Transferors; a relationship that is well-documented and clearly set out in the Transfer Agreements.

37. The issues raised in this Objection are new and the Court's prior rulings in the Solicitation Procedures Order and on the Cure Notice Motion did not address the impact of Contrarian's Transfer Agreements on their ability to complete the Relevant Cure Notices.

**B.   Alternatively, This Court Should Enforce The Relevant Cure Notices Under
Bankruptcy Code Section 105(a) To Avoid An Unjust Result.**

38.   Pursuant to section 105(a), this Court is authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). Even if the Court holds that Contrarian is not authorized under the Transfer Agreements to execute Relevant Cure Notices, the Court should exercise it equitable powers to accept Contrarian's election of cure treatment.

39.   The treatment election portion of the Cure Notices provides creditors with the option of waiving the requirement that the Debtors provide full cash payment on their cure claims pursuant to section 365(b)(1)(A). The Solicitation Procedures Order considers any unreturned Cure Notice to be an election to waive the cash payment requirement in favor of Plan Currency. The Relevant Transferors -- despite Contrarian's extensive and diligent efforts -- never submitted Cure Notices. Thus, if Contrarian's completed Relevant Cure Notices are stricken by the Court, there will be a void, meaning: the Relevant Transferors, through their silence, will be deemed to elect Plan Currency over cash.

40.   It is undisputed that Contrarian owns the Claims affected by the Relevant Cure Notices and that Contrarian's Claims will be reduced on account of cure payments. (See Debtors' Motion Debtors' Twenty-Seventh Omnibus Objection Pursuant To 11 U.S.C. § 502(B) And Fed. R. Bankr. P. 3007 To Certain Claims To Implement Cure Payments And Modify General Unsecured Claims By Amount Of Cure Payments, filed February 15, 2008). Thus, whether cure payments are made in cash or Plan Currency, worth substantially less, will have a direct economic impact on Contrarian.

41.   Because Contrarian has a real, undisputed interest in Claims affected by the Cure Amounts, the Court should use its equitable powers to recognize Contrarian's election of cash

treatment. Contrarian should not be forced to incur losses by involuntarily accepting Plan Currency solely because Relevant Transferors failed to complete their Cure Notices in disregard of Contrarian's extensive efforts to ensure that all Transferors submit Cure Notices. Nor should Contrarian be forced to agree to Cure Amounts that it disputes.

42.     If, for some reason, the notices filed by Contrarian are insufficient to enforce the Transferors' and Contrarian's election for cash treatment, Contrarian respectfully requests that it have a reasonable period of time to cure any deficiencies in connection therewith.

### Waiver of Memorandum of Law

43.     Pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York, because there are no novel issues of law presented herein, Contrarian respectfully requests that the Court waive the requirement that Contrarian file a memorandum of law in support of this Objection.

### CONCLUSION

For the foregoing reasons, Contrarian respectfully request that the Court deny the Motion to Strike and grant such other and further relief as is just and proper.

Dated: February 19, 2008
New York, New York

> KASOWITZ, BENSON, TORRES
> & FRIEDMAN LLP
>
> /s/ Daniel A. Fliman
> David S. Rosner (DR-4214)
> Adam L. Shiff (AS-7571)
> Daniel N. Zinman (DZ-7562)
> Daniel A. Fliman (DF-2236)
> 1633 Broadway
> New York, New York 10019
> Telephone: (212) 506-1700
> Facsimile: (212) 506-1800
> *Counsel to Contrarian Funds, LLC*