David S. Rosner (DR-4214)
Adam L. Shiff (AS-7571)
Daniel N. Zinman (DZ-7562)
Daniel A. Fliman (DF-2236)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to Argo Partners, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

### DECLARATION OF SCOTT KROCHEK IN SUPPORT OF OBJECTION OF ARGO PARTNERS, INC. TO DEBTORS' EXPEDITED MOTION TO STRIKE (I) NON-CONFORMING CURE AMOUNT NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER, PLAN OF REORGANIZATION, 11 U.S.C. § 105(A), AND FED. R. BANKR. P. 9010

I, Scott Krochek, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1.    Except as otherwise stated, I have personal knowledge and first hand knowledge of the matters set forth herein and could and would competently testify thereto if I were called as a witness. I am over 18 years of age.

2.    I am a Vice President for Argo Partners, Inc.

3.    I am submitting this Declaration in support of the Objection Of Argo Partners, Inc. to Debtors' Expedited Motion to Strike (I) Non-Conforming Cure Amount Notices and (II) Improper Objections Pursuant to Solicitation Procedures Order, Confirmation Order, Plan of

Reorganization, 11 U.S.C. § 105(A), and Fed. R. Bankr. P. 9010 (the "Objection").[1]

4.      Argo holds Claims against the Debtors, transferred from various Transferors through post-petition Claims Transfers. Each Claims Transfer is governed by a Transfer Agreement between Argo, as the transferee, and the prior claimholder, as Transferor. Each Transfer Agreement contains a power-of-attorney provision. In fact, empowering Argo with a power-of-attorney is an absolute condition, without which, Argo simply will not conduct a transfer.

5.      Attached hereto as Exh. A is a true and correct copy of the Transfer Agreement between Argo and Ampex Metal Products.

6.      Attached hereto as Exh. B is a true and correct copy of the Transfer Agreement between Argo and Barry Industries, Inc.

7.      Attached hereto as Exh. C is a true and correct copy of the Transfer Agreement between Argo and Computer Optical Products, Inc.

8.      Attached hereto as Exh. D is a true and correct copy of the Transfer Agreement between Argo and Eagle Fasteners Corp.

9.      Attached hereto as Exh. E is a true and correct copy of the Transfer Agreement between Argo and Fluidyne Racing Products THMX Holdings, Inc.

10.     Attached hereto as Exh. F is a true and correct copy of the Transfer Agreement between Argo and Fulton Industries, Inc.

11.     Attached hereto as Exh. G is a true and correct copy of the Transfer Agreement between Argo and Hyland Machine Company.

12.     Attached hereto as Exh. H is a true and correct copy of the Transfer Agreement

---

[1] Each capitalized term used, but not defined herein, is ascribed the definition set forth in the Objection.

2

between Argo and Jamak Fabrication, Inc.

13.    Attached hereto as Exh. I is a true and correct copy of the Transfer Agreement between Argo and Lyon Manufacturing, Inc.

14.    Attached hereto as Exh. J is a true and correct copy of the Transfer Agreement between Argo and Mendiguren Y Zarraua, SA.

15.    Attached hereto as Exh K is a true and correct copy of the Transfer Agreement between Argo and Metalbages SA.

16.    Attached hereto as Exh. L is a true and correct copy of the Transfer Agreement between Argo and Pridgeon& Clay, Inc.

17.    Attached hereto as Exh. M is a true and correct copy of the Transfer Agreement between Argo and R&F Products.

18.    Attached hereto as Exh. N is a true and correct copy of the Transfer Agreement between Argo and Soc Claudem.

19.    Attached hereto as Exh. O is a true and correct copy of the Transfer Agreement between Argo and UFE, Inc.

20.    Attached hereto as Exh. P is a true and correct copy of the Transfer Agreement between Argo and Actuant dba Power Packer.

21.    In the week between January 4, 2008 and January 11, 2008 Argo took extensive efforts and went through unbounded lengths to get each of Argo's 16 Transferors to complete Transferor Cure Notices. Those efforts included calling each Transferor (often, repeatedly)

22.    Two Transferors, Pridgeon & Clay, Inc. (proposed cure amount $122,201.19) and Hyland Machine, Co. (proposed cure amount $22,262.96) sent to Argo their original Transferor Cure Notices asking that Argo complete those forms and submit them to the Debtors. Argo

signed those Two Original Transferor Cure Notices and timely sent them to KCC.

23.    Attached hereto as Exh. Q is a true and correct copy of the Hyland Machine, Co.

original Transferor Cure Notice signed by Argo on behalf of the Transferor.

24.    Attached hereto as Exh. R is a true and correct copy of the Pridgeon & Clay, Inc.

original Transferor Cure Notice signed by Argo on behalf of the Transferor.

25    However, the following Transferors failed to complete and submit the Relevant

Cure Notices:

| Transferor Name | Proposed Cure Amount |
|---|---|
| Ampex Metal Products | 231,668.44 |
| Barry Industries | 18,375.00 |
| Computer Optical Products | 32,901.92 |
| Eagle Fasteners | 11,080.20 |
| Fluidyne Racing Products | 29,834.20 |
| Fulton Industries | 48,839.82 |
| Jamak Fabrication | 2,522.59 |
| Lyon Manufacturing | 6,398.00 |
| Mendiguen Y Zarraua | 9,640.96 |
| Metalbages SA | 22,262.96 |
| R&F Products | 143,806.43 |
| Soc Claudem | 5,510.97 |
| UFE | 17,077.94 |
| Actuant dba Power Packer | **43,371** |

In those instances, either Argo could not reach the Transferor or the Transferor simply failed --

despite Argo's direction -- to complete and submit its Transferor Cure Notice.

26.    None of the Relevant Transferors stated to Argo that they would not submit

Transferor Cure Notices because they agreed with the Debtors' proposed Cure Amount and

wanted Plan Currency over cash.

27.    When it was clear that the Relevant Transferors would not submit their Cure

Notices, Argo decided to exercise its powers-of-attorney, pursuant to the Power-of-Attorney

4

Provisions, and to complete the Two Original Transferor Cure Notices on behalf of Pridgeon &

Clay, Inc. and Hyland Machine, Co. and to complete Re-Created Transferor Cure Notices on

behalf of the other Relevant Transferors.

28.    In addition, for each Cure Notice completed and submitted by Argo, Argo

attached a Supplemental Notice of Transfer of Claim Other Than for Security ("Supplemental

Notice of Transfer") identifying the Notice of Transfer relating to the underlying Claims

Transfer including the related docket entry number. An example of a Re-Created Transferor

Cure Notice (with Supplemental Notice of Transfer) is attached hereto as Exh. S.

29.    Forcing Argo to receive Plan Currency instead of cash on account of the Relevant

Cure Notices is a result inconsistent with Argo's right, pursuant to the Transfer Agreements, to

elect treatment of its claims and could cost Argo significant sums, as Plan Currency is worth

materially less than the equivalent amount of cash.

30.    The distribution of Plan Currency would create further significant administrative

difficulties, due to the nature of transferring stock from the Transferors to Argo and potential tax

ramifications of such transfers. The distribution of the Discount Rights (as defined in the Plan) -

part of the Plan Currency - would create timing risk to Argo, given that such Discount Rights are

only exercisable for a short period of time.

31.    I declare under the penalty of perjury that the foregoing is true and correct to the

best of my knowledge, information, and belief.

Executed this 19th day of February, 2008, at New York, New York.

SCOTT KROCHEK

MATTHEW A. GOLD
Notary Public, State of New York
No. 02GO5057355
Qualified in New York County
Commission Expires March 25, 2010

5