TRANSFER OF CLAIM

SELLER: Thomas Engineering Company
ADDRESS: 7024 Northland Drive, Minneapolis, MN 55428-1503

BUYER: Contrarian Funds, LLC
ADDRESS: 411 West Putnam Avenue, Suite 225, Greenwich, CT 06830

DATE OF THIS AGREEMENT: July 31 2007

DEBTOR: Delphi Automotive Systems, LLC. For the avoidance of doubt, Debtor shall not include Delphi Corporation, and BUYER shall have no obligation hereunder to purchase any Invoices (as defined below) to Delphi Corporation.
PETITION DATE: October 8, 2005
BANKRUPTCY COURT: Southern District of New York
CHAPTER 11 CASE NO: 05-44640 (jointly administered under 05-44481)
OUTSTANDING PRINCIPAL AMOUNT OF CLAIM: $87,884.74
PROOF OF CLAIM AMOUNT: $100,819.04 (Claim no. 7459)

1. SELLER for good and valuable consideration does hereby irrevocably sell, convey, transfer and assign unto BUYER all of SELLER's right, title and interest in, to and under:

(1) the above-referenced claim of SELLER (as defined in Section 101(5) of the Bankruptcy Code) against Debtor in the above-referenced Chapter 11 case (the "Case"), including, without limitation, any and all right to receive principal, interest and other amounts paid or payable in respect of such claim (including principal, interest and any other amounts, and in each case whether accruing prior to, on or after the date of this Agreement), and, to the extent relating thereto, all accounts, accounts receivable and other rights of SELLER against Debtor including, without limitation, all of SELLER's right, title and interest in, to and under the invoices listed in Exhibit A (the "Invoices");
(2) Proof(s) of Claim (as defined below);
(3) all causes of action or other rights held by SELLER, whether against the Debtor or against any other party, in connection with the above referenced claim arising under or in connection with all agreements, invoices, purchase orders or other documents executed or delivered in connection with such claim;
(4) all causes of action held by SELLER in connection with the above-referenced claim against the Debtor or any other person or entity arising under any law, including without limitation causes of action for negligence, fraud or fraudulent transfers; and
(5) all cash, securities or other property ("Distributions") distributed or received on account of, or exchanged in return for, any of the foregoing;

all of the foregoing, whether against the Debtor, or any guarantor or other third party liable in respect thereof, being collectively referred to herein as the "Claim".

2. (a) The consideration paid by BUYER to SELLER for the Claim, the receipt and sufficiency of which are hereby acknowledged by SELLER, is the purchase price (the "Purchase Price") set forth in a certain confirmation letter to SELLER from Contrarian Capital Management, LLC dated July 24, 2007 (the "Confirmation Letter"). The Purchase Price represents the product of a rate of cents per dollar set forth in the Confirmation Letter (the "Purchase Rate") multiplied by the Outstanding Principal Amount of Claim set forth above (the "Outstanding Amount"). SELLER further agrees to keep this transaction and the Purchase Price paid by the BUYER confidential. The "Closing Date" shall mean the date on which the BUYER pays the Purchase Price to the SELLER in exchange for the Claim.

KL2:2394444.1

(b) BUYER's obligations to pay to SELLER the Purchase Price is subject to (i) SELLER's representations and warranties being true and correct on the date of this Agreement and on the Closing Date (and, if applicable, any Additional Closing Date), (ii) SELLER shall have complied with all covenants required by this Agreement to be complied with by it on or before the Closing Date (and, if applicable, any Additional Closing Date), including, without limitation, BUYER obtaining from SELLER any necessary releases and/or consents reasonably requested by BUYER (including, if necessary, in respect of all of SELLER's rights under or in connection with the Claim), (iii) BUYER shall have received this Agreement and the Evidence of Transfer of Claim attached hereto, to be filed with the Bankruptcy Court, duly executed by SELLER.

3. SELLER represents and warrants the following: (***Please check the appropriate box - IF YES, enclose a copy of the proof of claim***)

[X] YES, a PROOF OF CLAIM HAS been duly and timely filed in the Case in the amount of $100,819.04 (the "**Proof of Claim Amount**"), and a true and complete copy of such Proof of Claim is attached to this Agreement (the "**Proof of Claim**"). The Proof of Claim have not been amended or withdrawn and no right thereunder has been waived.

[ ] NO, a PROOF OF CLAIM HAS NOT been filed in the Case. SELLER agrees to cooperate with BUYER in preparation of a Proof of Claim if one is necessary (the "**Proof of Claim**").

4. SELLER represents, warrants and covenants that: (a) SELLER is duly authorized and empowered to execute, deliver and perform this Agreement and the Evidence of Transfer of Claim relating hereto; this Agreement and the Evidence of Transfer of Claim constitute the valid, legal and binding Agreement of SELLER, enforceable against SELLER in accordance with its terms; (b) SELLER owns and has (and upon the consummation of the transactions contemplated hereby BUYER shall own and have) good and marketable title to the Claim, free and clear of (i) any legal, regulatory or contractual restriction on transfer or resale, (ii) any lien, claim, charge, security interest, participation, factoring arrangement or encumbrance, or any similar claim of any nature, and (iii) any and all taxes, imposts and duties of any kind (the items in clauses (i), (ii) and (iii) are collectively "**Liens**"); (c) neither SELLER nor any entity related to SELLER is currently or has ever been a party in a bankruptcy proceeding; and neither SELLER nor any entity related to SELLER is "insolvent" within the meaning of Section 101 (32) of the Bankruptcy Code (taking into account each of clauses (A), (B) and (C) thereof and without regard to the types of entities specified in such clauses); (d) neither SELLER nor any entity related to SELLER is currently contemplating a filing for bankruptcy protection; (e) SELLER has not previously sold, assigned, factored or otherwise encumbered the Claim, in whole or in part, to any party; (f) neither the execution, delivery or performance of this Agreement or the Evidence of Transfer of Claim, nor the consummation of the transactions contemplated hereby and thereby, will violate or contravene any law, rule, regulation, order or agreement affecting the SELLER or the Claim; (g) the basis for the Claim is amounts due and owing by the Debtor to SELLER in respect of goods, merchandise or services sold and actually delivered or performed by SELLER and received by Debtor, and the outstanding principal amount of the Claim is not less than the Outstanding Amount; (h) SELLER has fully performed and satisfied all of its obligations (if any) to Debtor, BUYER shall assume no obligations or liabilities in respect of the Claim, and BUYER shall have no obligations or liabilities of any kind to Debtor and Debtor has no claims (as defined in Bankruptcy Code §101(5)) of any kind against SELLER; (i) the Claim is a valid, allowable, enforceable, general unsecured claim against the Debtor and is, at least to the extent of the Outstanding Amount, undisputed, liquidated and non-contingent; (j)(I) no objections have been filed to the Claim or, to SELLER's knowledge, exist or are threatened with respect to the Claim; and (II) except for the Case, no litigation, action, case, arbitration or proceeding is pending or, to the best of SELLER's knowledge, threatened against SELLER before any governmental authority, agency, institution, regulatory body, court or tribunal (including arbitration bodies, whether governmental, private or otherwise) that will materially and adversely affect the Claim, BUYER's rights hereunder or any action taken or to be taken by SELLER hereunder; (k) the Claim is not subject to any Lien, counterclaim, defense or claim or right of setoff, reduction, recoupment, impairment, avoidance, preference, disallowance, subordination or equitable subordination; (l) no payment has been received by or on behalf of SELLER in full or partial satisfaction of the Claim; (m) SELLER did not receive any payments, security interests

or other transfers (whether by setoff or otherwise) from or on account of Debtor during the 91 days prior to the Petition Date, except payments made in the ordinary course of business of the SELLER and Debtor, on ordinary business terms, and in respect of indebtedness incurred in the ordinary course of business of the SELLER and Debtor; (n) SELLER does not, and did not as of the Petition Date, hold any funds or property of or owe any amounts or property to Debtor or any of its affiliates and has not effected or received, and shall not effect or receive, the benefit of any setoff against Debtor or any of its affiliates; (o) SELLER is not, and has never been, an insider within the meaning of 11 U.S.C. Section 101(31) and is not, and has not been, a member of any creditors' committee appointed in the Case; (p) as of the date of this transfer, SELLER is not doing business with the Debtor, and has no other claims against or interests in respect of the Debtor or any of its affiliates; (q) none of the Invoices have been issued to Delphi Corporation and none of the liabilities which give rise to the Claim have been incurred by Delphi Corporation; (r) true and complete copies of all agreements, instruments, invoices (including the Invoices), purchase orders, proofs of delivery, computer runs and other documents relating to the Claim are annexed hereto as <u>Exhibit "A"</u>; other than the documents contained in <u>Exhibit "A"</u>, there are no other contracts, documents, stipulations, objections, motions or orders that could materially or adversely affect the Claim or BUYER's rights hereunder; (s) SELLER has agreed to the Purchase Price based on its own independent investigation and credit determination and has consulted with such advisors as it believes appropriate and has not relied on any representations made by BUYER; (t) SELLER is aware that information which may be pertinent to SELLER's decision to transfer the Claim is available to SELLER and can be obtained from the Bankruptcy Court's files or other publicly available sources; (u) SELLER is aware that the consideration received herein for the sale of the Claim may differ both in kind and amount from any distributions made pursuant to any plan of reorganization confirmed by the Bankruptcy Court in the Case; (v) SELLER has not engaged in any act, conduct or omission, or had any relationship with the Debtor, that could result in distributions in respect of the Claim being (i) less per dollar of claim, (ii) different in type or kind, or (iii) made at a later time, than payments or distributions in respect of other unsecured claims against the Debtor generally; (w) SELLER has not received any written notice (other than documents publicly available in the Bankruptcy Case) that the Claim, or any portion thereof is void, voidable, unenforceable or subject to any Impairment (as defined in paragraph 8); (x) SELLER is not, and shall not be or become, (i) an "underwriter" in respect of the Claim (as defined in Section 1145 of the Bankruptcy Code) or (ii) an "affiliate" of the Debtor or of any of the Debtor's affiliates (as such term is defined in either Section 101(2) of the Bankruptcy Code or Rule 144 of the Securities Act of 1933, as amended) and (y) SELLER agrees to execute and deliver, or to cause to be executed and delivered, all such instruments and documents, and to take all such action as BUYER may reasonably request, promptly upon the request of BUYER, in order to effectuate the intent and purpose of, and to carry out the terms of this Agreement, and to cause BUYER to become the legal and beneficial owner and holder of the Claim.

    5.  BUYER and SELLER each acknowledge that the other may possess material non-public information concerning the Claim and/or the Debtor. Each further acknowledges that it has not requested to receive such information and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other party, and each waives and releases any claims that it might have against the other (whether under applicable securities laws or otherwise), arising out of the non-disclosure of such information; <u>provided, however,</u> that nothing in this paragraph shall limit any representation or warranty made by SELLER in Paragraph 4.

    6.  In the event the Bankruptcy Court enters an Allowance Order (as defined below) allowing the Claim as a general unsecured unsubordinated claim in the Case in an amount in excess of the Outstanding Amount, or in the event the Claim is scheduled as a general unsecured unsubordinated claim in the Case that is not disputed, unliquidated or contingent and is not (according to such schedules) subject to any other objection or reservation of rights with respect to future schedules or objection (the excess so allowed or scheduled being defined as an "<u>Additional Allowed Amount</u>"), BUYER <u>shall</u> purchase on the Additional Closing Date (as defined below) such Additional Allowed Amount not to exceed the Proof of Claim in the amount of $100,819.04 for additional cash equal to the product of the Additional Allowed Amount multiplied by the Purchase Rate, whereupon the "Claim" as defined herein shall be deemed to include the Additional Allowed Amount, and the Outstanding Amount shall be increased by the Additional Allowed Amount, in each case for all purposes hereunder (including without limitation for purposes of the application of representations and warranties in Paragraph 4 and the calculation of "Impairment" in Paragraph 8. As used herein, the "<u>Additional Closing Date</u>" shall mean the seventh business day after the entry of an Allowance

Order. An "Allowance Order" shall mean an order of the Bankruptcy Court which has not been reversed, stayed, modified or amended and as to which (a) any appeal, rehearing or other review has been finally determined in a manner that does not affect such order, or (b) the time to appeal or seek a rehearing or other review has expired and no appeal or motion, for reconsideration has been timely filed.

7. SELLER agrees that, if SELLER shall hereafter receive any Distributions, SELLER shall accept and hold the same on behalf of and in trust for BUYER, and that any and all Distributions, together with any and all proceeds thereon, are the sole property of BUYER. If SELLER receives any cash Distributions on account of the Claim, SELLER shall immediately deposit such cash Distribution in Seller's bank account (provided that at no time shall such Distribution or any proceeds thereof constitute property of SELLER) and, within ten (10) business days after such deposit, deliver a check in BUYER's name in the same Distribution Amount, together with a copy of the original Distribution check issued by the Debtor. If SELLER fails to timely deliver any cash Distribution to BUYER, SELLER shall also pay interest thereon at the rate of eight (8%) percent per annum from the date SELLER received such cash Distribution to the date SELLER pays the same to BUYER. In the event SELLER receives any non-cash Distribution on account of the Claim, SELLER shall deliver the same to BUYER, in the same form received, within five (5) business days, with the endorsement of SELLER (without recourse, representation or warranty) when necessary or appropriate. In the event SELLER receives any notices or other documents in respect of the Claim, SELLER shall accept and hold the same on behalf of BUYER and SELLER shall promptly deliver the same to BUYER.

8. IF ANY MOTION, COMPLAINT, OBJECTION, APPLICATION, PLAN OF REORGANIZATION OR OTHER PLEADING IS FILED OR AN ORDER IS ENTERED, SEEKING TO DISALLOW, REDUCE OR SUBORDINATE ALL OR ANY PORTION OF THE CLAIM OR TO ASSERT THAT ALL OR ANY PORTION OF THE CLAIM IS OR IS DEEMED TO HAVE BEEN OR SUBJECT TO A PREFERENTIAL PAYMENT OR FRAUDULENT CONVEYANCE OR TO PROVIDE DISTRIBUTIONS ON THE CLAIM WHICH ARE, PER DOLLAR OF CLAIM, LESS IN AMOUNT OR DIFFERENT IN NATURE OR TIMING THAN DISTRIBUTIONS ON UNSECURED CLAIMS AGAINST THE DEBTOR GENERALLY, OR IF ANY PORTION OF THE CLAIM IS SCHEDULED BY THE DEBTOR AS UNLIQUIDATED, CONTINGENT, OR DISPUTED OR IS SCHEDULED IN AN AMOUNT LESS THAN THE OUTSTANDING AMOUNT, OR IF BUYER IS NOT SUBSTITUTED FOR SELLER TO THE EXTENT OF THE CLAIM (ANY OF THE FOREGOING, AN "IMPAIRMENT" WITH RESPECT TO THE PORTION SO AFFECTED), SELLER SHALL REPURCHASE SUCH PORTION BY PAYING IMMEDIATELY ON DEMAND OF BUYER CASH IN AN AMOUNT EQUAL TO THE SUM OF ALL AMOUNTS PAID BY BUYER HEREUNDER MULTIPLIED BY A FRACTION, THE NUMERATOR OF WHICH SHALL BE THE PORTION OF THE CLAIM THAT IS SUBJECT TO THE IMPAIRMENT, AND THE DENOMINATOR OF WHICH SHALL BE THE TOTAL AMOUNT OF THE CLAIM, TOGETHER WITH INTEREST THEREON PER ANNUM AT THE PRIME RATE THEN IN EFFECT PLUS THREE (3) PERCENT AS SET FORTH IN THE WALL STREET JOURNAL, EASTERN EDITION, FOR THE APPLICABLE PERIOD. BUYER'S DEMAND FOR SUCH REPAYMENT SHALL NOT BE DEEMED AN ELECTION OF REMEDIES OR A LIMITATION ON ANY OTHER RIGHTS THAT BUYER MAY HAVE HEREUNDER OR UNDER APPLICABLE LAW. IN THE EVENT THAT SELLER REPURCHASES ALL OR ANY PORTION OF THE CLAIM FROM BUYER, THEN BUYER SHALL EXECUTE AND DELIVER ALL DOCUMENTS REASONABLY REQUESTED BY SELLER TO EFFECTUATE SUCH REPURCHASE. SELLER FURTHER AGREES TO REIMBURSE BUYER FOR ALL LOSSES, COSTS, AND EXPENSES, INCLUDING REASONABLE LEGAL FEES AND COSTS, INCURRED BY BUYER AS A RESULT OF SUCH IMPAIRMENT.

IN THE EVENT SELLER HAS SOLD OR ASSIGNED THE CLAIM OR ANY PORTION THEREOF TO ANY PERSON OR ENTITY, SELLER SHALL, IMMEDIATELY UPON DEMAND BY BUYER PAY BUYER LIQUIDATED DAMAGES IN AN AMOUNT EQUAL TO TWICE THE SUM OF THE PURCHASE PRICE PAID HEREUNDER AND BUYER'S COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEY'S FEES AND EXPENSES) RELATING TO THIS AGREEMENT OR THE CLAIM.

9. SELLER hereby irrevocably appoints BUYER as its true and lawful attorney-in-fact with respect to the Claim and authorizes BUYER to act in SELLER's name, place and stead, to demand, sue for, compromise and recover all such sums of money which are, or may hereafter become due and payable for, or on

KL2:2394444.1

account of the Claim herein assigned, to vote the Claim and to file proofs of claim with respect thereto. SELLER hereby grants unto BUYER full authority to do all things necessary to enforce the Claim and SELLER'S rights thereunder. SELLER agrees that the powers granted in this paragraph are discretionary in nature and exercisable at the sole option of BUYER. BUYER shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Claim.

10.     SELLER agrees to indemnify and hold BUYER and its respective officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages and liabilities, including, without limitation, reasonable attorneys' fees and expenses which result from (i) any act or omission by SELLER in connection with or in any way related to the Claim, (ii) SELLER'S breach of any representation, warranty, covenant or agreement set forth herein and (iii) any obligation of SELLER or BUYER to disgorge, in whole or in part, or otherwise reimburse (by setoff or otherwise) the Debtor or any other person or entity for any payments, distributions, property, setoffs or recoupments received, applied or effected by or for the account of SELLER under or in connection with the Claim or otherwise from, against or on account of Debtor or any of its affiliates or any person or entity obligated in respect thereof.

11.     All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and shall inure to the benefit of the successors and assigns of any party hereto; provided, however, that the obligations of SELLER and BUYER contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied. This agreement shall be governed by the laws of the State of New York. Each party submits to the jurisdiction of the federal or state courts located in the City of New York, State of New York and agrees that any litigation relating to this Agreement shall be brought only in such courts. Each party hereto consents to service of process by certified mail at its address listed above. This Agreement may be executed in any number of counterparts, each of which, when so executed and delivered, shall be an original, but all of which, together constitute one and the same instrument. BUYER may sell, transfer or assign all or any part of the Claim and its rights under this Agreement without the consent of SELLER, provided that BUYER may assign its obligations hereunder this Agreement only with the written consent of SELLER, such consent not to be unreasonably withheld or delayed.

12.     SELLER HEREBY WAIVES ANY NOTICE REQUIREMENT IMPOSED BY BANKRUPTCY RULE 3001(e), AND CONSENTS TO THE SUBSTITUTION OF BUYER FOR SELLER FOR ALL PURPOSES IN THE CASE, INCLUDING, WITHOUT LIMITATION, FOR VOTING AND DISTRIBUTION PURPOSES WITH RESPECT TO THE CLAIM. BUYER AGREES TO FILE THIS AGREEMENT OR OTHER APPROPRIATE NOTICE WITH THE BANKRUPTCY COURT PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 3001(e).

KL2:2394444.1

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of the date first written above.

(SELLER)
THOMAS ENGINEERING COMPANY

By: *[signature]*
Name: Timothy S. Aberwald
Title: President
Telephone: 763-531-4111

(BUYER)
CONTRARIAN FUNDS, LLC
By: Contrarian Capital Management, LLC as manager

By: *[signature]*
Name: Gil Tenzer
Title: MEMBER
Telephone: 203-862-8200

KL2:2394444.1