David S. Rosner (DR-4214)
Adam L. Shiff (AS-7571)
Daniel N. Zinman (DZ-7562)
Daniel A. Fliman (DF-2236)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel to ASM Capital L.P. and
ASM Capital II L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                              :        Chapter 11
                                                   :
DELPHI CORPORATION, et al.,                        :        Case No. 05-44481 (RDD)
                                                   :
                       Debtors.                    :        (Jointly Administered)
-----------------------------------------------------------x

## DECLARATION OF DOUGLAS WOLFE IN SUPPORT OF OBJECTION OF ASM CAPITAL L.P. AND ASM CAPITAL II L.P. TO DEBTORS' EXPEDITED MOTION TO STRIKE (I) NON-CONFORMING CURE AMOUNT NOTICES AND (II) IMPROPER OBJECTIONS PURSUANT TO SOLICITATION PROCEDURES ORDER, CONFIRMATION ORDER, PLAN OF REORGANIZATION, 11 U.S.C. § 105(A), AND FED. R. BANKR. P. 9010

I, Douglas Wolfe, hereby declare pursuant to 28 U.S.C. § 1746 as follows:

1. Except as otherwise stated, I have personal knowledge and first hand knowledge of the matters set forth herein and could and would competently testify thereto if I were called as a witness. I am over 18 years of age.

2. I am General Counsel for ASM Capital L.P. and ASM Capital II L.P ("ASM").

3. I am submitting this Declaration in support of the Objection Of ASM Capital L.P. and ASM Capital II L.P to Debtors' Expedited Motion to Strike (the "Motion to Strike") (I) Non-Conforming Cure Amount Notices and (II) Improper Objections Pursuant to Solicitation

Procedures Order, Confirmation Order, Plan of Reorganization, 11 U.S.C. § 105(A), and Fed. R. Bankr. P. 9010 (the "Objection").

**ASM As Transferee Of Claims, Including Cure Claims.**

4. ASM holds trade claims against the Debtors (the "Claims"), transferred from various parties through post-petition transfers (the "Claims Transfers"). Each Claims Transfer is governed by a transfer agreement (a "Transfer Agreement") between ASM, as transferee, and the prior claimholder, as transferor (a "Transferor"). ASM filed notices of the Claims Transfers pursuant to Bankruptcy Rule 3001(e), none of which were objected to by the Debtors or the Transferors. ASM attached to each notice of Claim Transfer a copy of the relevant Transfer Agreement. True and correct copies of each of the relevant Transfer Agreements along with the notices of the Claims Transfers are attached hereto as Exh. A.

5. Pursuant to each Transfer Agreement, the Transferor agreed to transfer

> all of [the Transferor's] right, title, benefit, interest, voting rights, claims and causes of action in and to, or arising under or in connection with the claim or claims of [the Transferor] against [the Debtor], in bankruptcy proceedings in the United States Bankruptcy Court for the Southern District of New York . . . including any and all Proofs of Claim(s) associated with and filed by [the Transferor] with the Court (the "Claim") and; **all cash, securities, instruments and other property which may be paid or issued in satisfaction of the Claim and all rights to receive interest, penalties, fees and any damages from any cause of action or litigation which may be paid with respect to the Claim.**

Additionally, the Transfer Agreements reference the Debtors' bankruptcy cases and the relevant Claim.

2

**Cure Notice Procedures**

6. Upon information and belief, on or about December 21, 2007, the Debtors sent form notices to ASM (the "Transferee Notices"), allegedly in accordance with the *Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures For Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Post-petition Interest, and (VIII) Reclamation Claim Procedures* (the "Solicitation Procedures Order").

7. The Transferee Notice, unlike the cure notices provided to the Transferors (the "Transferor Cure Notices"), was a generic form that did not identify the contract counterparty, the contract itself, or the Debtors' proposed cure amount for that contract (the "Cure Amount"). (See Solicitation Procedures Order, Exhibit P). The Transferee Notice provided no information that would enable ASM, to identify the relevant Transferor, contract being assumed, or Debtors' proposed Cure Amount for that contract.

8. In late December, ASM, concerned with the lack of information concerning the Transferee Notices, sent a letter to each of the Transferors asking them to contact ASM if they had received a Transferor Notice.

9. On January 4, 2008 -- one week before the deadline for submitting Transferor Cure Notices-- counsel for the Debtors provided the Delphi Trade Committee (including ASM) with lists of contracts, cure amounts, and contract counterparties.

**ASM's Extensive Efforts To Obtain Transferor Completed Cure Notices.**

10. In the week between January 4, 2008 and January 11, 2008, ASM took extensive efforts and went through unbounded lengths to get each of ASM's 52 Transferors to complete Transferor Cure Notices. Those efforts included calling each Transferor (often, repeatedly) and

3

emailing best known contacts..

11.     Initially, ASM timely served on Kurtzman Carson Consultants LLC ("KCC"), the Debtors' agent for Cure Notices, re-created Transferor Notices ("Re-Created Transferor Notices") signed by ASM, as agent for and assignee of the Transferors (pursuant to the Transfer Agreements). True and correct copies of the Re-Created Transferor Notices are attached hereto as Exh. B.

12.     Separately, ASM obtained a number of Transferor Notices from Transferors consisting of notices Transferors received from KCC including replacement notices Transferors requested and received from KCC (the "Original Transferor Notices"). Some of the Original Transferor Notices were sent to ASM by the Transferors at or near the time of receipt by the Transferors. Many were sent only after a specific request from ASM and/or after the Transferor requested a replacement Original Transferor Notice from KCC. Once ASM, as a member of the Delphi Trade Committee, obtained information from the Debtors on January 4, 2008, a mere 7 days prior to the January 11 deadline, ASM contacted the remaining Transferors. Most of the remaining Transferors were able to forward to ASM the Original Transferor Notice or were able to request a duplicate copy of the Original Transferor Notice from KCC. In most cases, ASM signed the Original Transferor Notices as agent for and assignee of the Transferors and timely served the Original Transferor Notices on KCC. True and Correct Copies of the Original Transferor Notices are attached hereto as Exh. C.

13.     Immediately, following the Court's ruling of January 10, 2008, ASM followed the suggestion of the Court to contact each of its Transferors, at which point most of the Transferors[1] executed Letters specifying that ASM had the authority under the applicable Transfer

---

[1] ASM was unable, in the extremely limited time provided, to reach all of their Transferors. Notably, however, none of the Transferors refused to sign a Letter.

4

Agreements to execute the Original Transferor Notices and/or the Re-Created Transferor Notices, and clarifying that, even if a Court were to rule that ASM lacked such authority under the Transfer Agreements, ASM had a power of attorney to do so on the Transferors' behalf and ratified ASM's prior signatures, as attorney-in-fact, on the Original Transferor Notices.

14. Moreover, most of these Transferors (with only 2 exceptions) also signed a copy of the Original Transferor Notice next to ASM's signature, in a further effort to clarify that ASM had the authority to execute the Original Transferor Notices (the "Ratified Original Transferor Notices").[2] A copy of each Letter, together with the Ratified Original Transferor Notices were served on KCC by email before the 7:00 p.m. (Pacific) January 11, 2008 deadline and by express mail the next business day. Copies of the Letters along with the Ratified Original Transferor Notices are attached hereto as Exh. D.

15. Forcing ASM to receive Plan Currency instead of cash is a result inconsistent with ASM's right, pursuant to the Transfer Agreements, to elect treatment of its claims. Further, if the Motion to Strike is granted, ASM will be forced to receive Plan Currency (stock and discount rights) instead of cash, a result that will cost ASM significant sums, as the Plan Currency is worth materially less than the equivalent amount of cash.

16. Moreover, the distribution of Plan Currency would create further significant administrative difficulties, due to the nature of transferring stock from the Transferors to the Transferees and potential tax ramifications of such transfers. Additionally, the distribution of the Discount Rights (as defined in the Plan) - part of the Plan Currency - would create timing risk to ASM, given that such Discount Rights are only exercisable for a short period of time.

---

[2] Two Transferors, Fuji Bank/Fukoku South and Sigmund Cohn Corp, refused to execute a copy of the Original Transferor Notice, stating that they had been informed by their counsel that only ASM had the authority to do so.

5

17.    I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 19th day of February, 2008, at New York, New York.

_____
DOUGLAS WOLFE

Meryl Moskowitz
Notary Public, State of New York
No. 01M06024732
Qualified in Nassau County
Commission Expires May 17, 20_11_

*meryl moskowitz* (signature)