**Hearing Date and Time: February 21, 2008, 10:00 a.m.**

THALER & GERTLER, LLP
90 Merrick Avenue, Suite 400
East Meadow, New York 11554
(516) 228-3553
*Attorneys for Jimmy Mueller,*
*David Gargis and Keith Livingston*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re

DELPHI CORPORATION, et al.

                        Debtors.

-----------------------------------------------------------------x

Chapter 11

Case No. 05-44481-rdd
Judge Robert D. Drain

(Jointly Administered)

### REPLY TO OBJECTION OF DEBTOR TO APPLICATION OF JIMMY MUELLER, DAVID GARGIS AND KEITH LIVINGSTON TO VACATE THE AUTOMATIC STAY

      Jimmy Mueller, David Gargis and Keith Livingston, by their attorneys Thaler & Gertler, LLP, as and for their Reply to Opposition of movants' application to vacating the automatic stay for cause, under 11 U.S.C. §362(d)(1), Bankruptcy Rule 4001(d)(1) and SDNY LBR 4001-1 for the purpose of commencing an action for equitable and injunctive relief in the Northern District of Alabama titled **Jimmy Mueller, David Gargis and Keith Livingston v. Delphi Corporation and Delphi Hourly-Rate Employee Pension Plan** under 29 U.S.C. §§1132(a) and 1140 of ERISA, together with such other relief as this Court deems just and proper, respectfully represent:

### Introductory Comments

      1.     In this motion, Jimmy Mueller, David Gargis and Keith Livingston , three salaried employees of Debtor Delphi Corporation (hereinafter "Debtor" or "Delphi") seek to vacate the automatic stay for the purpose of commencing an action in the Northern District of Alabama titled **Jimmy Mueller, David Gargis and Keith**

-1-

**Livingston v. Delphi Corporation and Delphi Hourly-Rate Employee Pension Plan**[1].

As stated in the underlying moving papers, Jimmy Mueller, David Gargis and Keith
Livingston (hereinafter "the moving employees") seek a change in their status from
salaried employees to hourly employees, retroactive to the dates of their initial requests
to Delphi.

2.      The moving employees each transferred from hourly to salaried
employees at Delphi's request in the years 1995 through 1999[2] while working at the
plant located in Huntsville, AL.  The employees have worked at the same plant since
that time.  The key inducements in each of the moving employees' decisions to become
salaried employees was Delphi's assurance and promise that their rights to hourly
pensions were protected, that the salary pension would provide a greater benefit than
the hourly benefit, and that the employees would be allowed to transfer back to being
hourly employees if circumstances arose necessitating the transfer.  Delphi had an

---

[1]The only relief sought against the Debtor is equitable and injunctive in nature,
which would not necessarily be affected by the stay.  In addition, under 11 U.S.C.
§362(a), the automatic stay is only applicable to

> "the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action or
> proceeding against the debtor that was or could have been commenced
> before the commencement of the case under this title, or to recover a claim
> against the debtor that arose before the commencement of the case under
> this title."

As the Debtor did not deny the moving employees' respective requests for transfer until
2006, they could not have commenced their action prior to the Debtor's Chapter 11
filing in October of 2005.  However, as stated in the moving employees' motion papers,
this application is being made in an abundance of caution.

[2]The moving employees each have between 22 and 23 years of employment with
Delphi.  They each had put in a significant amount of years as hourly employees prior
to transferring to salaried employees.  Their years of service break down as follows:

|  | Years as Hourly Employee | Years as Salaried Employee |
|---|---|---|
| Keith Livingston: | 11 | 11 |
| Jimmy Mueller: | 14 | 9 |
| David Gargis: | 14 | 9 |

obligation to divulge information impacting these promises and assurances. The same
or similar offers were extended to other similarly-situated Delphi employees at the
plant where the moving employees worked[3].

     3.     Of these Delphi employees who transferred to salaried status,
several were granted their requests to transfer back to hourly employees at various
times, while others accepted promotions and specifically reaffirmed their salaried status
with Delphi. However, Delphi denied the moving employees' respective requests for
transfers. Upon information and belief, there is only one other employee in the
Huntsville plant, other than the moving employees, to whom Delphi made
representations and assurances but denied a transfer requst to hourly employment.

### Additional Facts

     4.     David Gargis, Keith Livingston, and Jimmy Mueller were all hired
as hourly employees with General Motors through its Sagniaw division.[4] As a part of
their employment they became participants in an hourly pension plan, which is
governed by the Employee Retirement Income Security Act of 1974 (ERISA).

     5.     Keith Livingston worked approximately 11 years as an hourly
employee and Jimmy Mueller and David Gargis each worked respectively 14 years.

---

[3]Three examples of employees permitted to switch from hourly to salaried and
back to hourly are as follows:

|  | Years as Hourly Employee | Years as Salaried Employee |
|---|---|---|
| Troy McNeese: | 1 | 17 |
| Tim Thomas: | 1 | 9 |
| Billy Broadway: | 3 | 19 |

After switching back to hourly status, these three employees worked between six and
thirteen more years as hourly employees prior to retirement.

[4]In the Debtor's Motion for Denial, Preliminary Statement No. 1, it is asserted
that Movants are non-degreed quality reliability engineers. Debtor's assertion, while
irrelevant, is incorrect as Jimmy Mueller has a B.S. In Accounting and Keith Livingston
possesses a B.S. in Business Administration.

Protecting their interest in their hourly pension plan was of vital importance to them, as they did not want to lose their years of service.

6.      At various times General Motors represented and promised to certain employees at its Saginaw division at the plant in Huntsville, Alabama that if they would transfer from hourly to salary employment, they would not lose the benefit of their years of hourly service and in fact the salary pension benefits would be better. The representations and assurances  included the right and ability to retransfer to hourly employment in the event that the need to do so arose. This representation forseeably included situations in which the salary pension was not providing better benefits than the hourly pension. General Motors only made such representations to employees it believed would make "good" salary employees. The representations and promises were made specifically to induce the transfers.

7.      Given the repeated concern of hourly employees over their years of service in the hourly pension plan, General Motors, by and through its various management employees including H.J. Krieger, Director of Salary Personnel and Harry Fuller, Human Resources Director at the Huntsville Plant, made written assurances and promises to the employees granting them the "ability" to return to hourly if some future event warranted the same, including a failure of the salary pension to yield benefits equal to or greater than hourly benefits. Attached as **Exhibit A** is a letter directed to General Motors' employees in the Saginaw division reflecting these representations. As noted in the letter as part of the inducement to cause employees to transfer, the employees have the option of retaining "the ability to return to hourly as your salary employment" in the event "... some future event warranted it ...".

8.      In order to further assure protection of these rights the collective bargaining agreements from 1996 and through 2003 (which includes the current contract) provides at paragraph 69 that "Any employee who has been transferred from

-4-

a supervisory position to a job classification in the bargaining unit shall be credited with seniority ..." provided the "...employee previously worked on a job classification in the bargaining unit ...". To further assure these rights the collective bargaining agreement in 2003 contained a letter from the Vice President of Human Resource Management assuring Mr. Richard Shoemaker, Vice President and Director of General Motors Department International Union, UAW, that "any employee who has been transferred from a supervisory position to a job classification in the bargaining unit shall be credited with the seniority the employee had established prior to March 1, 1977, all time worked in the bargaining unit subsequent to March 1, 1977 and all time worked in a supervisory position subsequent to the effective date of this agreement..."

9.     As is known to this Court, General Motors Corp., the Saginaw Division became Delphi prior to Delphi filing for bankruptcy protection. At no time prior to Delphi filing a petition for bankruptcy reorganization did General Motors Corp., or its successor Delphi Corporation provide these three employees information that the salary pension benefits would not yield a more favorable pension to these employees as the hourly pension plan would yield or that their rights or this ability to retransfer was no longer going to be permitted.

10.    After learning that Delphi had filed bankruptcy, David Gargis, Keith Livingston, and Jimmy Mueller inquired as to the pension benefit due to be paid. The three learned that their salary pension benefit was far less than the hourly pension benefit for employees with the same years of service. This constituted a circumstance in which they each had a right to retransfer to the hourly pension plan.

11.    During 2006, the three employees filled out necessary paperwork to retransfer to hourly employment. However, Delphi refused to allow the retransfers to be entered into their system pending further review. Thereafter, various management officials with Delphi had discussions regarding the retransfers with the employees

along with Harold Fuller and others. Harold Fuller urged the company to allow the retransfers given the certainty of the promises, representations, and assurances provided to induce the hourly employees to transfer to salary employment. (See **Exhibit B** - an email from Harold Fuller).

12.    Due to the lack of any document in writing confirming the refusal by Delphi, uncertainty persisted as to whether the retransfers would be allowed.[5] Questions also persisted as to whether the employees had exhausted all claim or administrative remedies as required by ERISA before a claim or suit was filed. Counsel was hired. In a letter dated June 19, 2007 from Counsel, requests were made to the Employee Benefits Plan Committee and the plan administrator for Delphi and Harold Fuller to confirm that all administrative or claim remedies regarding the retransfer to the hourly pension plan had been exhausted and that a final decision had been made. A copy of this letter is attached as **Exhibit C.** Also attached as **Exhibit C** is a copy of a letter dated June 21, 2007 reflecting that Keith Livingston joined in the prior letter.

13.    A response to that letter was requested in 14 days; however, by way of letter dated July 17, 2007 Jeffrey M. Peterson, attorney for Delphi, stated that he would not be able to provide a response until on or before July 31, 2007.

14.    By way of letter dated July 24, 2007, which was provided both by facsimile and first class mail, Mr. Peterson was provided with two declarations of employees who were allowed to retransfer from salary to hourly. A copy of this letter and declaration is attached as **Exhibit D.**

15.    Because the implication of General Motors in this matter, especially regarding the payment of health insurance benefits for both David Gargis and Jimmy

---

[5]The ERISA claim procedure regulation at 29 C.F.R. § 2560.503-1 requires that decisions be documented in an administrative file. See also <u>McDonald v. Western-Southern Life Ins. Co.,</u> 347 F.3d 161 (6th Cir. 2003)

Mueller, the GM Benefits and Services Center was alerted as was Denise McDonald, manger of pensions for General Motors Corporation of Employee Benefits and Human Resources Operations. A copy of these letters are attached as **Exhibit E.**

16.    By way of letter dated August 2, 2007 which was received on August 5, 2007, Delphi stated that it viewed this matter as "an issue of employment policies governing the placement and status of employees ...and that such matters are 'solely within Delphi's discretion, and it is Delphi's position that such circumstances do not give rise to an actionable legal claim.'" Therefore, Delphi "reconfirmed that your clients' request to be transferred from salary to hourly positions is denied."

17.    Additionally on August 10, 2007, the Fidelity Benefits Center, which was responding on behalf of letters sent to Denise McDonald and the GM Benefits Center, stated that as to the requests to allow the employees to transfer to the hourly pension plan "any such decision/direction would come from the Delphi Corporation."

18.    Additionally, by way of letter dated August 23, 2007, Denise McDonald, manager of pensions for General Motors Corporation, stated that the employees "...were former General Motors (GM) employees who transferred to Delphi on January 1, 1999. As part of that transfer, Delphi Corporation assumed all of the pension liability for their prior service at GM. GM does not have any responsibility for these individuals." See **Exhibit "C"**. These statements were made even though it had been pointed out that General Motors may have responsibility regarding payment of health insurance benefits for some of the employees.

19.    The letters from Denise McDonald and Jeffrey Patterson in August of 2007, See **Exhibit "C",** are the only letters provided to the employees reflecting that there was no further need to exhaust any claim or administrative remedies and that a final decision regarding this matter had been made.

-7-

20.    Accordingly, their rights to retransfer did not ripen into actions for breach of fiduciary duty until these letters were received.

21.    In the event that the stay is not lifted and the employees are not allowed to fully litigate these matters, the employees would lose their significant years of hourly service. As a salary employee, Keith Livingston is entitled to a lump sum of $57,000; however, as an hourly employee he is entitled to a lump sum of $140,000 or $1,182 per month beginning at age 62.  All payments are made only out of the pension plans in question and not from Delphi assets.

22.    David Gargis as a salary employee is entitled to a lump sum of $89,000 or a monthly benefit of $436. However, if he is retransferred as an hourly employee, he will not be entitled to a lump sum, but he will be entitled to a monthly benefit of $2,283 per month. Additionally as an hourly employee, he would be entitled to health insurance benefits paid for by General Motors.

23.    Jimmy Mueller as a salary employee is only entitled to a lump sum of $121,000 or a monthly benefit of $509 per month. As an hourly employee, he is not entitled to a lump sum, but is instead entitled to a monthly pension benefit of $2,283 per month. Additionally, he is entitled to health insurance funded by General Motors.

24.    Almost all witnesses are located in the state of Alabama. No known witnesses are located in the state of New York. A significant burden and expense is shifted to the employees to litigate these matters in an inconvenient forum and costs of litigation for the wrongs perpetrated by Delphi  will be greatly increased in the state of New York.

25.    The three movants have not been promised future employment with Delphi Corporation and accordingly their employment will necessarily end. Allegations to the contrary are unsupported. Additionally, there is no promise of future employment with Platinum and in fact the plant is slated to be closed after its purchase.

In any event, any employment with Platinum would be separate and would not involve any pension benefit or years of service with Delphi or General Motors. Accordingly, the three employees seek equity to require Delphi to do what should have been done when the employees exercised their right and ability to retransfer to the hourly pension fund.

26.    This Court does have jurisdiction over the hourly attrition program as noted by Delphi; however, this Court has not particularly determined each and every employee that is eligible to participate in the hourly attrition program. Rather that is a matter that is at the discretion of Delphi. Accordingly, it is necessary for the three movants to request a Court to exercise equitable relief to force Delphi to properly exercise its discretion in accordance with its obligations.[6]

### ERISA Requirements

27.    Under ERISA, Fiduciaries with authority to make representations regarding the pension plan are required to provide accurate information. See Ervast v. Flexible Products Company, 346 F.3d 1007 (11th Cir. 2003). Additionally the failure to provide accurate information and the withholding of information may give rise to a cause of action for a breach of fiduciary duty. See Jones v. American General Life and Accident Insurance Company, 370 F.3d 1065 (11th Cir. 2004).

28.    A cause of action for breach of fiduciary duty necessarily falls under ERISA § 502(a)(3) and is entirely exclusive of a cause of action for benefits under ERISA § 502(a)(1)(b). See Varity Corp v. Howe, 516 U.S., 513, 116 S.Ct. 1065, 1078, 134

---

[6]This will not cost Delphi as all monies due to be paid out will be paid out under the hourly pension plan, which in fact appears to be overfunded.  As the Court knows Delphi has had troubles raising funds to emerge from bankruptcy.  The Detroit News Washington Bureau recently reported (February 14, 2008) that Delphi may in fact seek a loan from its pension funds for $6.1 billion dollars.  Obviously this must come from funds that were not due to be paid out to pensioners in the near future. Given the amounts of the pension benefits of the employees as opposed to the funds in question, it is sheer speculation that there will be any cost incurred by Delphi in connection with these matters.

L.Ed. 2d 130 (1996). Also see <u>Katz v. Comprehensive Plan of Group Insurance</u>, 197 F.3d
1083 (11th Cir. 1999).

29.     All plan remedies must be exhausted before suit is filed. See
<u>Mason v. Continental Group Inc.</u>, 763 F.2d 1219 (11th Cir. Court of Appeals 1985) The
11th Circuit has specifically held that the administrative or claim resolution procedures
are necessary to follow and must be completely exhausted before suit may be filed " as
such enhances the plan trustees' ability to carry out their fiduciary duties expertly and
efficiently by preventing premature judicial intervention in the decision making
process, and to allow prior fully considered actions by pension plan trustees to assist
the Courts if the dispute is eventually litigated." Accordingly upon receipt of written
confirmation of the exhaustion of administrative remedies regarding these breach of
fiduciary duty matters, Gargis, Livingston, and Mueller were  entitled to file suit.

30.     In <u>Hunt v. Hawthorne Associates Inc.</u>, 119 F.3d 888 (11th Cir. 1997)
the 11th Circuit noted that under ERISA § 502(d)(1) an employee benefit plan may be
sued as an entity.   This is because assets for pension benefit claims are paid out of the
pension plan assets.  Accordingly, the hourly pension plan is a proper party to pension
benefit litigation. However, the <u>Hunt</u> Court stated that in the event that equitable or
injunctive relief was sought, a plan administrator or entity capable of carrying out the
Court orders must be also joined in the lawsuit.

31.     Technically, it may be possible for the employees to sue the
Employee Benefits Plan Committee as the plan administrator for Delphi in order to
obtain appropriate relief.   Because Delphi has in its control the individuals who would
constitute the Employee Benefit Committee, again out of an abundance of caution, this
matter is brought to this Court's attention to avoid unnecessary litigation.
Additionally Delphi made the representations and assurances and it would also appear
to be a party to a breach of fiduciary duty action.  The post petition actions are brought

to the Court's attention to avoid unnecessary and protracted litigation in the Northern District of Alabama as to whether such actions should have been brought to this Court's attention.

32.    Under ERISA § 204(g) and under Internal Revenue Code § 411(d) certain benefits cannot be eliminated by plan amendment. This rule is commonly known as the "anti-cut back rule". The type of benefits protected include early retirement benefits, retirement-type subsidies and optional forms of benefits. The Movants seek to correct actions which Delphi has inequitably taken to indirectly violate this anti-cut back rule. While Delphi has not overtly amended the Plan to retroactively cut back benefits, it has accomplished the same effect by its promises and assurances inducing the Movants to transfer from hourly employment to salary employment and then refusing to honor the promises and assurances.

## THE AUTOMATIC STAY SHOULD BE LIFTED

33.    As stated by Delphi in its objection, the major purpose of the automatic stay is to prevent "the dissipation of the debtor's assets during the pendency of the case" and to avoid "multiplicity of claims against the estate in different courts". In re Newport Offshore, Ltd., 59 B.R. 283 (U.S.B.C. Rhode Island, 1986) [Court lifted automatic stay to allow employee to continue wrongful termination suit in state court.] Relief from an automatic stay in bankruptcy will be warranted when no substantial prejudice to the bankruptcy estate will result from the proceeding, and there will be no interference with the bankruptcy proceeding. Id.

34.    In this case, the ultimate goal, reorganization, has been achieved and the plan confirmed by Order of this Court on January 25, 2008, which was during the pendency of this motion[7]. Despite confirmation of Delphi's plan, Delphi argues that

_____

[7]It is the moving employees' understanding that while the plan has been confirmed, the automatic stay will remain until the "Effective Date" of the plan, which has yet to be determined.

it should retain the benefits of the stay despite the fact that the moving employees'
actions will not interfere with the Debtor's reorganization or implementation of the
plan, nor will it significantly impact (if it impacts at all) the Debtor's estate[8]. Courts have
found that the stay should be lifted where the Debtor is unable to afford adequate
protection to the movant and because, by way of example, there was a liability
insurance policy for all damages sought. See In re Columbia Ribbon & Carbon
Manufacturing Co., 54 B.R. 714, 721 (Bankr. S.D.N.Y. 1985) ["Generally, the court will
vacate the automatic stay to permit a claimant to continue an action covered by
insurance that is being defended by the carrier."]

35.     Although the automatic stay has not yet been vacated, the Debtor
has reorganized and the Debtor needs only to complete certain steps in the
implementation of the plan before discharge and the vacating of the automatic stay.  As
discussed below, the moving employees do not seek to hinder the Debtor's
reorganization, nor will their actions impact the Debtor's assets.

36.     Delphi further argues that the moving employees have not met
their burden of showing cause to lift the stay and have only supplied conclusory
assertions.  However, the movants have shown good cause.  As argued in the moving
employees' application, the relief sought is simply the equitable relief of directing
Delphi to re-transfer each of the moving parties back to the Delphi Hourly Rate
Employee Pension Plan.  As is further stated, this transfer will not have any direct
monetary impact on Delphi, and Delphi has not supplied any evidence to the contrary.

37.     In fact, it is Delphi which has supplied only conclusory assertions
that the relief sought by the moving employees will affect it reorganization plan. Delphi
suggests that permitting the proposed litigation to go forward would open a veritable

---

[8]Significantly, the moving employees never filed claims against the estate as they
never have, nor do they now, seek monetary relief against the Debtor.

floodgate of salaried employees seeking to transfer to hourly status.  No evidence has been presented that supports that assertion.[9]

38.    Notably, the Debtor, despite its claims that the moving employees' actions "could interfere significantly with bankruptcy cases and prejudice the interests of other creditors," has not shown any specific manner in which the employees' claim would interfere at all, let alone significantly, with the bankruptcy cases and the interest of creditors.  While the automatic stay will apply to actions which impact the property of the debtor and the bankruptcy estate, the impact may not be speculative; "there must be some evidence that a judgment which might result from the pending action 'would inevitably have an adverse impact on property of the bankrupt estate.'" Teichthesen v. Eagle Industries, Inc., 1993 U.S.Dist. LEXIS 10900 (N.D.N.Y. 1993).  To that end, when there is evidence that the result of the action may have an impact on the estate, the automatic stay is still properly lifted, because the evidence must show that such an impact is inevitable.  "The mere fact that the bankruptcy estate 'could' be adversely impacted clearly does not satisfy the requirement that the bankruptcy estate would 'inevitably' be adversely impacted." Id.

39.    In Bennet v. Manufacturers & Traders Trust Co., 2000 U.S.Dist.LEXIS 15316 (N.D.N.Y. 2000), the Court held that the automatic stay should be lifted to allow the plaintiff to proceed with an action against her employer (also the plan administrator) seeking additional benefits under ERISA-qualified plans absent a showing that the action "will inevitably have an adverse impact on the debtor's estate." Delphi, in its objection, repeatedly claims that the estate "could" be adversely impacted;

---

[9]The situation of the Movant employees is extremely rare. To qualify for benefits under the Attrition program, 10 or more years of hourly service are necessary. Aside from these Movants, there may only be one or two employees who have ten or more years of hourly credited service, and who have transferred from the hourly ranks to the salary ranks, and have also not qualified for full salary retirement benefits.

however, they do not offer any proof that the estate will be affected, nor are they able to identify the particular circumstances or manner in which the estate would be affected.

40.    To the extent that the Debtor claims that the moving employees seek and may be entitled to enhanced benefits if successful in their proposed action, this is not something that impacts Delphi's estate. "Employee benefit plans do not fall under the protection of a §362 automatic stay because 'an employer has no property interest in its employee benefit plans.'" Buchanan v. Golden Casting Corporation Hourly Health Benefit Plan, 2003 U.S.Dist. LEXIS 19879 (S.D. Indiana, 2003). See also, Brown v. Blue Cross and Blue Shield of Alabama, 898 F. 2d 1556, 1562 (11th Cir. 1990). In Hunt v. Hawthorne Associates, Inc., 119 F. 3d 888 (11th Cir. 1997) the Court noted that although a money judgment would satisfy demands made only an order for benefits would be sufficient. Such relief was found to be equitable.

41.    The Debtor has cited the case In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990) for discussion of a number of factors which may be relevant in deciding whether a stay should be lifted. The Debtor concedes that not all 12 factors are relevant in every case and of course the Sonnax court also acknowledged that the factors "may be relevant" rather than mandating that each factor be considered. Furthermore, the Debtor acknowledges that the Court does not need to afford equal weight to each factor. The Debtor in conclusory fashion argues that the factors overwhelmingly weigh in its favor, however the converse is true when one examines

the factual matters incident to the issues raised.

42.    The first factor is whether relief would result in a partial or complete resolution of the issues. If the automatic stay is lifted, it will completely resolve the issues as to whether the Movant employees are entitled to hourly pension benefits. The action seeks to give direction to Delphi that the Movants are due to be

considered as employees who have re-transferred to the hourly ranks and are eligible for participation in the Attrition program and eligible for hourly pension benefits. Once such a court order is issued, all matters are effectively resolved.

43.     As to whether there is any connection with or interference with a bankruptcy case, in this instance, the Movants are merely seeking a court order directing a ministerial act to be performed. These matters lack any connection with the bankruptcy case and certainly involve no interference. Once a court order is obtained against Delphi, it is expected that all further dealings will be with the hourly pension plan and General Motors regarding the provision of health insurance benefits, as to two of the Movants. Delphi protests that there will be some impact due to its ongoing relationship with GM is conclusory speculation. General Motors has been put on notice regarding any impact to its obligations and it has declined to intervene. General Motors has abstained from any role in the matter.

44.     The third factor pertains to whether the proceeding involves the Debtor as a fiduciary. Technically Delphi is the fiduciary but the actual fiduciary decision for which a court order will be sought pertains to the Employee Benefit Committee, which is composed of employees appointed by Delphi. Due to the lack of any financial impact on Delphi, this factor remains favorable to the Movants.

45.     The next factor pertaining to whether a specialized tribunal with a necessary expertise has been established to hear the cause of action, does not weigh in either party's favor. The issues sought to be litigated involve ERISA and therefore the

matters are not within the specialty of this court.

46.     The fifth factor is whether the Debtor's insurers have assumed full responsibility for defending it. That is unknown, but is completely irrelevant as equitable relief is sought.

47.    As to whether the action would primarily involve third parties, this factor weighs in the Movants' favor. The hourly pension plan would be the payee in this instance. The limited issue for Delphi is whether the Movants are entitled to equitable relief directing them each to be made a participant in the hourly pension plan in the Attrition program.

48.    The seventh factor pertaining to whether litigation in another forum will prejudice the interests of creditors is irrelevant to this consideration since money damages are not being sought against Delphi but rather only equitable relief. There will be no prejudice to any creditor.

49.    The next factor pertains to whether the judgment claim arising from the other action is subject to equitable subordination. Again this is not an issue in this matter as any judgment obtained would not involve monetary relief but solely equitable relief.

50.    As to the ninth factor, in the event that the Movants are successful the proceeding in the Alabama federal court will not result in a judicial lien avoidable by the Debtor. Again, only equitable relief is sought.

51.    The tenth factor pertains to the interest or judicial economy in the expeditious and economical resolution of litigation. As noted above, it would be to the financial detriment for the Movant employees to be forced to litigate in an inconvenient form and the presentation of their case will be further prejudiced by the fact that nearly all witnesses are in the state of Alabama. No known witnesses are in the state of New York.

52.    The twelfth factor is relevant to this issue as well as the impact of the stay on the parties and the balance of harms is greatly to the disadvantage of the Movant employees. The cost of litigating this matter in an inconvenient forum will greatly increase the cost of litigation and will reduce the effectiveness of presentation of

testimony and evidence.

53.    The eleventh factor which pertains to whether the parties are ready for trial in the other preceding is not relevant as the action has not yet been filed.

54.    Clearly, most of these factors as well as other considerations weigh in favor of the Movants.

55.    In sum, the moving employees' proposed actions do not impact the implementation or performance of the plan.  Most importantly, there is no direct financial impact on Delphi.  Any additional monies to which the moving employees would be entitled (if they are successful in their action) would not be paid by the Debtor, but by the retirement plan, which, by law, is a separate entity and which is not itself a Debtor in this action.

## THE BANKRUPTCY COURT WOULD NOT RETAIN JURISDICTION OVER THIS MATTER

56.    Delphi argues that since the moving employees' contemplated litigation implicates central elements of the Debtor's reorganization, it would give rise to issues that fall within the exclusive jurisdiction of the bankruptcy court, not the Alabama District Court.  This argument is immaterial to the issue of whether the automatic stay should be lifted, and is properly a jurisdictional argument to be addressed to the Court in which the moving employees commence their action.

57.    Notwithstanding the foregoing, Delphi further claims that a decision on the moving employees' demand to be transferred to hourly status "bears a close relationship to key components of the Debtors' Chapter 11 cases and transformation plan" and would implicate the various agreements reached between GM, Delphi and UAW.

58.    Again, the moving employees seek to have their employment status transferred back to hourly retroactive to the dates of their respective initial requests.  The moving employees would further seek the benefits they would have

received as hourly employees had Delphi not reneged on its promises and denied their requests.

59.    As the Court is aware, United Auto Workers (hereinafter "UAW"), Delphi and GM worked out various settlement agreements regarding Delphi's hourly employees and the benefits to which these employees are entitled. The moving defendants argue that they should have been hourly employees since the respective dates of request for re-transfer and, therefore, are entitled to the benefits afforded Delphi's hourly employees under that agreement, such as they may be.

60.    While the Bankruptcy Court retains jurisdiction over the settlement agreements and matters materially related to it, this is not one of those matters. The moving employees in no way seek to alter or modify the settlement agreements in any way, they only assert that they should be entitled to the rights and benefits afforded to Delphi's other hourly employees under such agreement.

61.    Delphi further argues that the moving employees' time to object to the settlement agreement and reorganization plan have passed, and thus, the relief they seek is barred. However, this argument lacks merit as the moving employees do not object to the settlements or the plan. They are seeking to be subject to it as hourly employees instead of salaried employees. They do not and have not sought "claims" against the estate[10]. See <u>Kennedy V. Medicap Pharms., Inc.</u> 267 F.3d 493 (6th Cir. 2001)

---

[10]The term "claim" is defined under 11 U.S.C. §101(5) as:
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The is equitable relief sought falls necessarily falls outside of ERISA §§ 502 (a)(1)(B) which is the provision utilized to seek monetary relief. Section 502(a)(3) specifically states:
A civil action may be brought by a participant, beneficiary, or fiduciary

[The right to injunctive enforcement of a covenant not to compete, which under state law was available if money damages were not an adequate remedy, was not a claim subject to discharge.]

62.    The Debtor further claims that a suit in an Alabama Federal Court will not substantially resolve the material issues, nor is the District Court equipped to hear the specialized issues here.  The District Court certainly has the power and authority to hear issues resolving employer/employee disputes and matters involving ERISA.  No specialized knowledge of Bankruptcy Law would be required to hear and determine this matter.

63.    The District Court would determine whether the moving employees were entitled to transfer back to hourly employee status, the effective date of such transfer and which benefits the moving employees would be entitled to under the settlement agreements as they are written.  The District Court has the same interpretive power that it would have under any collective bargaining agreement or the like, and it is immaterial whether such agreement was entered into by a Debtor in a Chapter 11 reorganization or otherwise.

64.    In conclusion, the moving employees established that they have cause to lift the stay and proceed against the Debtor in the Alabama District Court, even more so now that the Debtor's reorganization plan has been confirmed.  In objecting to the moving employees' application, the Debtor has not offered any reason that the moving employees should not be permitted to go forward with their action.  Delphi's claims that the action will impact upon the bankruptcy is unfounded, and Delphi has not shown any definite, quantifiable, non-speculative, material and/or prejudicial

-------

(A) **to enjoin any act or practice which violates any provision of this subchapter** or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provisions of this subchapter or the terms of the plan. (Emphasis added.)

-19-

impact the action will have upon the estate, particularly since any benefits will be paid out of a separate pension plan, which is not a Debtor.

**WHEREFORE**, the moving employees respectfully request that this application for the entry of an Order vacating the automatic stay for cause, under 11 U.S.C. §362(d)(1), Bankruptcy Rule 4004(d)(1) and SDNY LBR 4001-1 for the purpose of commencing an action in the Northern District of Alabama entitled **Jimmy Mueller, David Gargis and Keith Livingston v. Delphi Corporation and Delphi Hourly-Rate Employee Pension Plan** under 29 U.S.C. §§1132(a) and 1140 of ERISA be granted; and (2) that the Court grant such other and further relief as this Court deems just and proper.

Dated: East Meadow, New York
        February 19, 2008

THALER & GERTLER, LLP
*Attorneys for Jimmy Mueller, David Gargis
and Keith Livingston*
90 Merrick Avenue, Suite 400
East Meadow, New York 11554
(516) 228-3553

By: /s/ Andrew M. Thaler
        Andrew M. Thaler (AMT-3081)

W:\Clients A-Z\Clients K-N\Martin.David\Reply001.wpd