MICHAEL J. GARCIA                                    **HEARING DATE: February 29, 2008**
United States Attorney for the                       **TIME:  10:00 AM**
Southern District of New York
By: MATTHEW L. SCHWARTZ
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
IN RE:                                               Chapter 11

      DELPHI CORPORATION, *et al.*,            Case No. 05-44481 (RDD)

              Debtors.            (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF MARGARET A. MALLOY

Pursuant to 28 U.S.C. § 1746, Margaret A. Malloy declares as follows:

1.    I am employed by the United States Equal Employment Opportunity

Commission (EEOC) as a trial attorney in the EEOC's New York District Office,

which is located at 33 Whitehall Street, New York, New York.  I make this

declaration in support of the Government's motion for leave to file a late claim, and

in opposition to debtors' various objections to the EEOC's claims.

2.    The EEOC enforces the nation's anti-discrimination laws, including

the Age Discrimination in Employment Act of 1967 (ADEA), Titles I and V of the

Americans with Disabilities Act of 1990 (ADA), the Equal Pay Act of 1963 (EPA),

and Title VII of the Civil Rights Act of 1964 (Title VII).  Under EEOC regulations,

the EEOC's Office of General Counsel is responsible for the litigation of

enforcement actions, with the actual responsibility delegated in turn to the EEOC's various District Offices.

3.      I am the trial attorney assigned to represent the EEOC in *Equal Employment Opportunity Commission v. Delphi Corp.*, No. 07 Civ. 6470 (MAT), pending in the United States District Court for the Western District of New York.  I base this declaration on my personal knowledge and on information contained in EEOC files.

4.      On or about August 28, 2006, the EEOC National Call Center was first contacted about a potential claim of discrimination at Delphi Corporation ("Delphi") by Stanley Straughter, a Delphi employee in Rochester, New York.

5.      Over the next several months, the EEOC worked with Straughter to prepare and finalize a formal charge of discrimination.  On August 30, 2006, the EEOC sent Straughter a questionnaire to complete.  (The covering letter is attached as **Exhibit A**).  Straughter filled out the questionnaire on or about September 5, 2006.  Among other things, Straughter's responses indicated that he had been fired by Delphi on August 17, 2006, "for not showing my medical history," and that he had already made Delphi aware of his complaint.  (A copy of Straughter's questionnaire, with enclosures, is attached as **Exhibit B**).

6.      Straughter informed the EEOC that he had been employed as a laborer by Delphi since May 22, 2006.  He called in sick to work on August 14 and 15, 2006, and returned to work on August 16, 2006, with a note from his doctor. Delphi informed Straughter that he needed to execute a medical release so that

2

Delphi could obtain more information about his medical condition from his personal physician. Straughter initially refused to sign, but was told that Delphi would not accept the excuse for his absence without the release. Straughter then signed the release, but modified it to permit Delphi only to verify that he was unable to work on August 14th and 15th, but not to discuss his actual medical condition. Delphi did not accept this modified release, and when Straughter explained that he believed Delphi's policy was unlawful, he was immediately fired for being an "unsatisfactory temporary employee."

7.    On the basis of Straughter's allegations, EEOC Investigator Jennifer Carlo drafted a Charge of Discrimination for Straughter's signature, which she sent to him on or about September 13, 2006. (A copy of Ms. Carlo's covering letter and the draft charge is attached as **Exhibit C**). Ms. Carlo and Straughter subsequently discussed the draft Charge of Discrimination, and on September 18, 2006, Ms. Carlo sent a revised Charge of Discrimination to Straughter for his signature. (A copy of Ms. Carlo's covering letter and the revised draft charge is attached as **Exhibit D**).

8.    On or about September 22, 2006, Straughter formally filed his Complaint of Discrimination with the EEOC; it was indexed as EEOC Charge No. 525-2006-01314. (Attached as **Exhibit E**).

9.    On October 2, 2006, the EEOC forwarded the Charge of Discrimination to Delphi for a response, giving the company until October 23, 2006, to provide a position statement. The EEOC also served Delphi with a Request for Information as part of its investigation. Among other things, the Request sought basic

3

statistical information about Delphi, a copy of the relevant union's collective

bargaining agreement with Delphi, and the identities of potential witnesses to

Delphi's unlawful activities, including any employees who had either (a) been

required to sign a medical authorization form, or (b) refused to sign one.  Finally,

the EEOC indicated to Delphi that it was open to "consider[ing] a resolution by

mutually agreed to settlement."  (A copy of the EEOC's October 2, 2006

communication, including the notice to Delphi about the Charge of Discrimination

and the Request for Information, is attached as **Exhibit F**).

10.    On October 17, 2006, Delphi (through its attorneys) requested an

extension of time in which to respond to the Charge of Discrimination.  The EEOC

agreed to extend Delphi's response date until November 6, 2006.  (A copy of a letter

from Delphi, confirming the parties' agreement, is attached as **Exhibit G**).

11.    On November 6, 2006, Delphi responded to the Charge of

Discrimination, essentially admitting the factual allegations of Straughter's

complaint, but contending that he could not demonstrate a prima facie case of

retaliation or violation of the ADA.  Relying on EEOC guidance that an employer

"may ask an employee to justify his/her use of sick leave by providing a doctor's note

or other explanation, as long as it has a policy or practice of requiring all employees

. . . to do so," Delphi argued that it was permitted to require its employees to

execute a release so that the company could obtain medical records and speak with

personal physicians to question the validity of a doctor's note.  Delphi did not,

however, respond to the EEOC's Request for Information.  (A copy of Delphi's

4

response, with enclosures, is attached as **Exhibit H**).

12.     On December 11, 2006, the EEOC contacted Delphi to remind the

company that it had not fully responded to the Request for Information.  The EEOC

gave Delphi until December 29, 2006, to provide a complete response.  (A copy of the

EEOC's December 11, 2006 letter to Delphi is attached as **Exhibit I**).

13.     On January 31, 2007 — more than three months since the information

was first due, and more than a month after the last deadline — Delphi responded to

the EEOC's Request for Information.  Among other things, Delphi indicated that it

was "unable to answer" the EEOC's request for documentation regarding employees

who had been required to sign a medical authorization pursuant to Delphi's

unlawful policy because "it does not keep a log of every employee asked to sign an

authorization."  Delphi did provide, however, the identity of three other employees

who had, like Straughter, refused to sign an authorization.  (A copy of Delphi's

response to the EEOC's Request for Information is attached as **Exhibit J**).

14.     After reviewing Delphi's submissions, the EEOC determined that it

needed further information to investigate the claim of discrimination.  Therefore, on

or about February 26, 2007, the EEOC sent Delphi a second Request for

Information.  Among other things, the second Request sought an explanation of why

Straughter's modified medical authorization was insufficient, given Delphi's

proffered justification for its policy, a copy of the policy, exemplars of medical

authorizations used by Delphi, and certain information pertaining to the other

employees who had refused to sign authorizations.  Delphi was to respond by March

19, 2007.  (A copy of the EEOC's second Request for Information is attached as

**Exhibit K**).

15.    On or about April 4, 2007, Delphi finally responded to the EEOC's

second Request for Information, providing some documentation and objecting to a

variety of the EEOC's requests as, variously, irrelevant or overly broad.  (A copy of

Delphi's response is attached as **Exhibit L**).

16.    Throughout this give-and-take process with Delphi, the EEOC

simultaneously pursued other avenues of investigating the Charge of

Discrimination, including collecting further information from Straughter.

17.    On or about May 22, 2007, the EEOC issued its Letter of

Determination.  In relevant part, the EEOC concluded:

> The investigation determined that [Delphi] subjected [Straughter]
> and a class of employees nationwide to an unlawful policy of
> making disability-related inquiries that are not job-related and
> consistent with business necessity, in violation of the ADA.
> [Straughter] offered to sign a revised release that would have
> allowed [Delphi] to speak with his doctor and verify the dates he
> was off work and that it was for a legitimate, medical reason.  This
> should have satisfied [Delphi]'s need to verify the absence.
> [Straughter]'s refusal to sign the release as it was written and his
> objection that the medical inquiry was overly broad was protected
> activity as defined by the statute.   Consequently, [Delphi]'s
> discharge of [Straughter] for opposing the policy was unlawful
> retaliation.

The EEOC also informed Delphi that it would like to "eliminate the unlawful

practices through informal methods of conciliation" and invited Delphi to discuss

settlement of the Charge.  (A copy of the EEOC's Determination is attached as

**Exhibit M**).

6

18.     The following day, May 23, 2007, the EEOC contacted Delphi to begin conciliation efforts and outlined a comprehensive remedy for Delphi's discriminatory practices, which included, among other things:  (a) eliminating Delphi's unlawful sick leave policy, (b) providing anti-discrimination training to Delphi employees, (c) posting EEOC materials in conspicuous places throughout Delphi facilities, (d) developing a meaningful anti-discrimination complaint procedure, (e) reinstating Straughter, (f) paying monetary damages to Straughter to make him whole for Delphi's unlawful discrimination, as well as similar relief for any other individuals determined to have been harmed by Delphi's discriminatory practices, and (g) paying pain and suffering damages to Straughter.  In addition, EEOC proposed that Delphi agree to permit the EEOC to monitor compliance with the terms of any conciliation agreement for not less than three years.  Delphi was to respond to the EEOC's offer, as well as certain additional requests for information, by June 6, 2007.  (A copy of the EEOC's offer of conciliation is attached as **Exhibit N**).

19.     On or about June 12, 2007, Delphi responded to the EEOC's offer of conciliation.  Delphi flatly rejected the EEOC's offer, and indicated that it did "not intend to submit a counter-proposal."  (A copy of Delphi's response is attached as **Exhibit O**).

20.     On June 19, 2007, the EEOC confirmed to Delphi that conciliation efforts had failed, and that the case was being forwarded to the legal unit of the EEOC's New York District Office for review to determine whether the EEOC would

7

file an enforcement action in United States District Court.  On the same date, the

EEOC sent a similar notice to Straughter.  (A copy of the EEOC's June 19, 2007

notices to Delphi and Straughter are, respectively, attached as **Exhibits P and Q**).

21.    The EEOC's Regional Attorney's Manual (available at

www.eeoc.gov/litigation/manual/index.html) outlines the steps that the EEOC must

take before filing a federal court action to remedy alleged violations of the ADA.  In

cases (such as this one) that require approval from the Commissioners at EEOC

headquarters in Washington prior to filing suit, the legal unit must prepare a

"presentation memorandum" to the General Counsel containing its assessment of

the case.  The presentation memorandum is extensive, requiring the legal unit not

only to describe the background and legal analysis involved in a case, including the

proof that it anticipates introducing, but also to prepare a breakdown of anticipated

litigation costs and to include a draft of the complaint to be filed.  (A sample

presentation memorandum is contained in the Manual).  The Commissioners must

then authorize the litigation before it can be filed.

22.    In this case, the pre-filing process unfolded very quickly.  The EEOC

filed a complaint on behalf of a class of Delphi employees in the United States

District Court for the Western District of New York on or about September 28, 2007

(the "EEOC Complaint"), just over three months after conciliation efforts had failed.

The EEOC Complaint seeks, *inter alia*, injunctive relief, as well as monetary relief

to make the victims of Delphi's policy whole.  The EEOC Complaint also seeks

punitive damages.    (A copy of the Complaint is attached as **Exhibit R**).

8

23.    Because Delphi was at that time in bankruptcy, and because the enforcement action sought monetary damages, the EEOC also protected its interest by filing claims in this bankruptcy.  On or about October 16, 2007, the EEOC filed two claims with the Debtors' claims agent (the "EEOC Claims").  Claim number 16727 asserts an unliquidated priority claim, corresponding to damages caused by Delphi's pre-petition conduct.  (A copy is attached as **Exhibit S**).  Claim number 16728 asserts an unliquidated priority administrative expense claim, corresponding to damages caused by Delphi's post-petition conduct.  (A copy is attached as **Exhibit T**).

24.    Meanwhile, Delphi answered the EEOC Complaint on or about November 30, 2007.  The answer did not assert any bankruptcy-related defenses to the EEOC Complaint.  (A copy of Delphi's answer is attached as **Exhibit U**).

25.    Pursuant to a scheduling order entered by Magistrate Judge Payson, fact discovery in the *EEOC v. Delphi* enforcement action is presently expected to last until July 24, 2008, and expert discovery will last until August 29, 2008.  Dispositive motions are due no later than October 24, 2008.  No trial date has been scheduled, but the Court has scheduled an interim status conference for July 9, 2008.  (A copy of the Scheduling Order is attached as **Exhibit V**).

26.    Discovery, in other words, has just begun in the enforcement action: the parties only just made their initial disclosures on February 6, 2008.  (The EEOC provided 215 pages of documentation; Delphi provided none).  The parties anticipate that one of the main subjects of discovery will be trying to identify the

9

Delphi employees that were subject to and injured by its unlawful policy.  Because Delphi has not even identified the facilities at which the policy was or is in place, identifying all putative class members is, at this point, impossible.

27.    The EEOC Claims in this bankruptcy are comprised of the monetary component of damages requested in the EEOC Complaint.  Because the class may — depending on how discovery unfolds — include employees who worked at Delphi prior to the petition date, the EEOC filed both a proof of claim (for the pre-petition portion of its damages) and an administrative claim (for its post-petition damages). Straughter, however, worked for Delphi exclusively after the petition date, and he was terminated and brought Delphi's practices to the EEOC's attention after the bar date.  The EEOC then promptly investigated Delphi's unlawful practices and filed the enforcement action — and the claims in the bankruptcy.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:    New York, New York
          February 22, 2008

                                             /s/  Margaret A. Malloy
                                            MARGARET A. MALLOY

10