TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Tally Wiener (TW-0215)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

**Hearing Date: February 26, 2008**
**At:  10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :    Case No. 05-44481 [RDD]
DELPHI CORPORATION, *et al.*,                                      :
                                                                   :    Jointly Administered
                                                  Debtors.         :
                                                                   :
------------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION BY TEMIC AUTOMOTIVE OF NORTH
AMERICA, INC. AND MOTOROLA, INC. FOR ORDER EXTENDING TIME TO
ELECT CASH PAYMENT FOR CURE AMOUNT**

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), hereby submit this Objection to the Motion dated February 22, 2008 (the

"Temic Extension Motion") by Temic Automotive of North America, Inc. and

Motorola, Inc. ("Temic") for Order Extending Time to Elect Cash Payment for Cure

Amount [Docket No. 12827], and respectfully represent:

**PRELIMINARY STATEMENT**

        1.      More than two months ago, the Debtors complied with the

Solicitation Procedures Order and provided Plan Cure Notices to Temic at four separate

locations.[1]  Notwithstanding that service and Temic's prior actual knowledge of the

procedures and deadlines regarding the Plan Cure Notices, Temic now seeks

emergency relief after the January 11, 2008 cure notice deadline to file an original Plan

Cure Notice to elect cash.

        2.      Temic has not and cannot establish excusable neglect or otherwise

satisfy any of the *Pioneer* Standards to warrant the relief it seeks at this late date.  The

relief sought by Temic is unwarranted and it would be highly prejudicial to the Debtors

and their stakeholders.

        3.      Consequently, Temic's motion should be denied.

## BACKGROUND[2]

**A.    The Cure Notices Pursuant To The Solicitations Procedures Order**

        4.      The Debtors are party to thousands of executory contracts, many of

which are with the Debtors' trade suppliers (the "Material Supply Agreements").  In

accordance with the Solicitation Procedures Order[3], the Plan, and 11 U.S.C. § 365, the

---

[1]      Temic erroneously asserts in its Extension Motion that Plan Cure Notices were served upon it at only two locations.  As demonstrated below, original and Duplicate Plan Cure Notices were served upon Temic at four separate locations, and its counsel was also sent four separate notices of the cure procedures for other counterparties.

[2]      A more expansive description of the procedural and factual background concerning the Debtors' Chapter 11 cases and their efforts to emerge from Chapter 11 is contained in the Debtors' Expedited Motion to Strike (I) Non-Conforming Cure Amount Notices and (II) Improper Objections Pursuant to Solicitation Procedures Order, Confirmation Order, Plan of Reorganization, 11 U.S.C. § 105(a), and Fed. R. Bankr. P. 9010 [Docket No. 12615] (the "Non-Conforming Cure Notice Motion").  Capitalized terms that are not defined herein shall have the meanings set forth in the Non-Conforming Cure Notice Motion.

      The February 21, 2008 hearing to consider the Non-Conforming Cure Notice Motion was continued to February 26, 2008 for limited purposes, but the evidentiary record (the "Evidentiary Record") of that hearing was closed, and the Debtors incorporate the Evidentiary Record herein.

[3]      On December 10, 2007, the Court entered that certain Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, and Procedures for Temporary Allowance of Certain Claims, (III) Hearing Date to Consider Confirmation of Plan, (IV) Procedures for Filing Objections to Plan, (V) Solicitation Procedures for Voting on Plan, (VI) Cure Claim Procedures, (VII) Procedures for Resolving Disputes Relating to Postpetition Interest, and (VIII) Reclamation Claim Procedures (the "Solicitation Procedures Order") (Docket No. 11389).  The Solicitation Procedures Order, together with Article VIII of the Plan, as modified by the Confirmation Order (Docket No. 12359), establishes, among other things,

Debtors embarked upon a process to assume ongoing prepetition Material Supply

Agreements.

      5.    On December 10, 2007, the Court entered the Solicitation

Procedures Order, which sets forth certain procedures with respect to cure of defaults

under certain executory contracts.  In accordance with the Solicitation Procedures

Order, on or before December 21, 2007, the Debtors transmitted three different Court-

approved notices relating to Material Supply Agreements.[4]  Specifically, the Debtors

delivered (i) cure amount notices to counterparties to Material Supply Agreements (the

"Counterparties"), (ii) duplicate cure amount notices to Counterparties who designated

alternate addresses on purchase orders, and (iii) courtesy cure amount notices to claims

traders and other assignees and transferees of claims.  See Gershbein Declaration,

Exhibit "1" of Evidentiary Record.

      6.    The Debtors served on the Counterparties a cure amount notice, a

form of which was approved as Exhibit O pursuant to paragraph 43 of the Solicitation

Procedures Order (the "Plan Cure Notice").  This Plan Cure Notice stated the Debtors'

intent to assume or assume and assign the contract listed on a schedule attached to the

Plan Cure Notice and to provide cure in the corresponding amount reflected on the

schedule attached to such notice (the "Cure Amount").  The Plan Cure Notices (a total of

1,669 of which were served, along with 10,765 duplicate notices) gave each

---

certain procedures relating to the assumption of executory contracts, including procedures for a contract
counterparty to object to the Debtors' proposed cure amounts and/or the proposed assumption of such
counterparty's contracts.

[4]    To provide notice of cure amounts to certain Counterparties that were inadvertently excluded
from the initial service of Cure Amount Notices (the "Omitted Contracts"), on January 29, 2008 and
February 1, 2008, the Debtors filed and caused to be served the Notice Of Cure Amount With Respect To
Executory Contract To Be Assumed Or Assumed And Assigned Under Plan Of Reorganization (Docket
No. 12375) pursuant to paragraph 24 of the Confirmation Order.  Counterparties to the Omitted Contracts
had ten days from the date of mailing of the foregoing notice to file an objection to the Debtors' proposed
assumption and Cure amount.  However, the contract subject to the Temic Extension Motion is not an
Omitted Contract.

Counterparty, among other things, the right to elect to be paid the Cure Amount in cash or plan currency,[5] and described certain procedures approved by this Court for Counterparties to object to the assumption of their contracts or to the Cure Amount. Plan Cure Notices contained the Counterparty's name and address, the purchase order numbers for those contracts assumed under the Plan with corresponding cure amounts, and a bar code which provides a unique identifier for the Counterparty and links this data to the particular original Plan Cure Notice.   This bar code identifier was designed to maintain the integrity of this process by allowing KCC to, among other things, ensure that a returned Plan Cure Notice (and the data contained therein) was the same Plan Cure Notice that KCC had served on the Counterparty returning the form and that the data contained on the Plan Cure Notice for which a Counterparty made elections was accurately recorded and reflected.   This system also provided significant administrative efficiency by allowing the Debtors to easily and accurately track and document responses to the Plan Cure Notices by reducing the need for, and potential error associated with, manual entry of this data.   See Gershbein Declaration.

> 7.     Consistent with the Solicitation Procedures Order, the Debtors also provided a separate courtesy notice to Counterparties for whom the Debtors had multiple addresses so as to notify the Counterparties at multiple points of contact that the Plan Cure Notice had been served upon the primary address contained in the Debtors' books and records (the "Duplicate Plan Cure Notice").   The form of Duplicate Plan Cure Notice was approved pursuant to paragraph 45 of the Solicitation Procedures Order (see Exhibit Q thereto).   A total of 10,765 Duplicate Plan Cure Notices were served.   The Duplicate Plan Cure Notices informed their recipients in detail that

---

[5]     Plan currency is that form of payment to be provided to holders of Allowed General Unsecured Claims pursuant to Article 5.3 of the Plan (the "Plan Currency").

substantive rights were affected by the Plan Cure Notice and put the recipients on notice to locate the original Plan Cure Notice.  To facilitate this effort, the Debtors attached to the Duplicate Plan Cure Notice a copy of the original Plan Cure Notice sent to the primary address for that Counterparty, which copy was prominently watermarked with the word "COPY" printed on each page.  The Duplicate Plan Cure Notice instructed the recipient that only original Plan Cure Notices would be accepted. See Gershbein Declaration.

8.      The Duplicate Plan Cure Notice also provided KCC's contact information so that the Counterparties could obtain and return a new original of the Plan Cure Notice in the event that the initial original version was misplaced.[6]  The Debtors implemented this process to avoid receipt of duplicate and/or self-made Plan Cure Notices.  This system was designed to maintain the integrity of the cure reconciliation and avoid the ambiguity of receiving multiple contradicting Plan Cure Notices for the same contract.  See Gershbein Declaration.

9.      Additionally, as set forth in the Solicitation Procedures Order, the Debtors provided a separate notice to claims traders and other assignees and transferees of claims, the form of which was approved pursuant to paragraph 44 of the Solicitation Procedures Order (see Exhibit P thereto).  This notice advised the recipients that they may have purchased a claim from one or more of the Counterparties to whom Cure Amount Notices were sent and that the election therein might impact the currency to be distributed to such Counterparty.  This notice further informed its recipients that pursuant to the Solicitation Procedures Order, the Debtors were authorized, but not directed, to remit resolved or uncontested distributions on account of cure directly to the Counterparty whose contract is being assumed or assumed and assigned.  The

---

[6]      As demonstrated below, Temic's counsel took advantage of this process for certain of its clients.

Solicitation Procedures Order stated that this notice "shall be the only notice the Debtors shall be required to provide to these purchasers with respect to the cure and these purchasers shall have no rights or recourse against the Debtors with respect to the cure." See Solicitation Procedures Order, ¶ 44.

10.     The Debtors' efforts to provide notice of the Plan Cure Notices to parties were reasonable, and the Court found in paragraph 45 of the Solicitations Procedure Order: "Transmission of this proposed notice, as applicable, together with the Cure Amount Notice to the addresses in the Debtors' current books and records shall satisfy the Debtors' noticing obligations." See Solicitation Procedures Order, ¶ 45.

**B.     The Multiple Forms of Notice to Temic**.

11.     In accordance with the Solicitation Procedures Order, on December 21, 2007, the Debtors served original and Duplicate Plan Cure Notices upon Temic at four separate locations:

- Original Plan Cure Notices were served upon Temic at:

    (i)     Temic Automotive of North America
            4000 North Commercial Avenue
            North Brook, Illinois 60062

            -and-

    (ii)    Patriacio Lote 6,
            Parq Ind San Carlo
            Nogales, Son, 84090 Mexico

KCC Affidavit of Service [Docket No. 11773] ("KCC AOS"), at Exhibit A, page 178.

- Courtesy Duplicate Plan Cure Notices were served upon Temic at:

    (i)     Temic Automotive of North America Inc.
            37101 Corporate Drive
            Farmington Hills, Michigan 48331;

            -and-

6

          (ii)     Temic Automotive of North America Inc.
                     611 Jamison Road
                     Elma, NY  10459-9566

KCC AOS, at Exhibit C, page 77.

12.     Moreover, McDermott Will & Emery LLP ("MWE"), Temic's counsel of record, was well aware of the cure amount notice procedures and deadlines prior to the January 11, 2008 deadline.  On December 21, 2007, MWE was served with separate notices of the cure amount notice procedures for certain of its clients pursuant to paragraph 44 of the Solicitations Procedures Order.   See KCC AOS, at Exhibit E, pages 15, 22 & 27.  Copies of the portions of the KCC AOS which pertain to Temic and its counsel are jointly annexed hereto as Exhibit "1."

13.     On January 4, 2008, MWE contacted Debtors' counsel by email and the following exchange occured:

Mr. Sullivan:

> I have been in touch with each of my clients and none received the notices Delphi allegedly sent.  Can you get me another set of originals?  Otherwise we'll have to fill out the forms you sent, which are marked as copies.  Thanks.

The Debtors:

> If you list all of your clients for which you want to receive originals of the cure notices and confirm that you are willing to accept service of duplicate originals on behalf of those clients and certify that you are the official attorney of record for these entities with a right to received service on their behalf, then I will forward on to KCC, the claims and noticing agent, and KCC will either Fed[Ex] duplicate originals or send them by PDF in an email, whichever you prefer.

Mr. Sullivan:

> I so certify as to Timken, Torrington (which is now part of Timken), National Semiconductor, and Linear Technology.  Please pdf and email to me.  Thanks.

7

See emails annexed hereto as Exhibit "2", introduced into the Evidentiary Record by Temic's counsel at the February 21, 2008 hearing before the Court to consider the Motion to Strike.

14.     Article 8 of the Plan and the Debtor's Disclosure Statement provide that all of the Material Supply Agreements were to be assumed by the Debtors and that cure amount notice procedures would be implemented.  Temic's counsel argued at the Confirmation Hearing on behalf of Timken Corporation, a counterparty to a Material Supply Agreement, concerning cure payments pursuant to the Plan.  See Tr. of January 17, 2008 Confirmation Hearing, page 85.

15.     Moreover, on December 10, 2007, the Debtors filed their Expedited Motion for Orders under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Half Shaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement [Docket No. 11390] (the "Steering Sale Motion").

16.     On December 21, 2007, the Court entered an Order approving the bidding procedures sought by the Debtors in connection with the Steering Sale Motion, including the form of notice of cure notice for contracts that the Debtors intended to assume in connection with the sale of the assets subject to the Steering Sale Motion [Docket No. 11578] (the "Steering Cure Notices").

17.     Temic acknowledges that a Steering Cure Notice was sent to it at "37101 Corporate Drive Farmington Hills, MI  48331" (the "Farmington Hills Office"). Temic Objection to Motion To Strike, ¶ 15;  Temic Extension Motion, ¶ 21.  The Farmington Hills Office is the address listed in the purchase order that is the subject of the Temic Extension Motion.

18.     Temic also represents that the Steering Cure Notice that was sent to it at the Farmington Hills Office was timely forwarded to its in-house counsel with sufficient speed to permit its outside counsel to file an objection to that Steering Cure Notice on February 5, 2008 [Docket No. 12519] , notwithstanding that the Farmington Hills Office was apparently closed "months ago."[7]  Temic Objection to Motion To Strike, ¶¶ 11, 15;  Temic Extension Motion, ¶ 21.

19.     Temic has not provided any explanation of how service of the Steering Cure Notice to the Farmington Hills Office was effective, but service of the Plan Cure Notice to the same location, and others, was allegedly not effective.

20.     Notwithstanding all of this service and Temic's actual knowledge of the procedures and deadlines for the Plan Cure Notices, Temic requests authority to file late a Plan Cure Notice to elect cash.  In support of its late request, Temic presents a 'mere denial of receipt' of all of the Plan Cure Notices that were sent to it and an assertion of ignorance of the Plan Cure Notice procedures and deadlines.

21.     Temic's Extension Motion should be denied out of hand.  Temic's request is unsupported by fact, and its Motion is contradicted by facts in evidence:  the facts demonstrate a failure by Temic to act, and that such failure to act was squarely

---

[7]     Temic is entitled to receive its cure for this contract in cash if the Steering Sale closes prior to the Effective Date of the Plan.

9

within Temic's control.  No basis or a finding of excusable neglect can be demonstrated or reached.  Temic has not and cannot satisfy any of the *Pioneer* standards.

22.     Moreover, the relief sought by Temic is highly prejudicial.

## OBJECTION

**A.     Temic is Presumed to Have Received
Original and Duplicate Plan Cure Notices**

23.     Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it is properly addressed, stamped, and deposited in the mail. *See In re R.H. Macy & Co., Inc.*, 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (citing *Hagner v. United States*, 285 U.S. 427, 430 (1932)) ("the rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed");  *see also Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993) (finding, under New York law, that when a sender "presents proof of office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed," a presumption of receipt arises);  *In re Alexander's Inc.*, 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995) ("It is black letter law that once an item is properly mailed, the law presumes that it is received by the addressee.").

24.     "While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary." *In re Dana Corp.*, No. 06-10354, 2007 WL 1577763, at *3 (Bankr. S.D.N.Y. 2007);  *see Hagner v. U.S.*, 285 U.S. at 430 ("Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to

10

whom it was addressed"); *In re Mid-Miami Diagnostics, L.L.P.*, 195 B.R. 20, 22 -23 (Bankr.

S.D.N.Y. 1996) ("A creditor's denial of receipt, standing alone, does not rebut the

presumption that the mail was received, but merely creates a question of fact."). "The

presumption can only be overcome by clear and convincing evidence that the mailing

was not, in fact, accomplished." *Moody v. Bucknum*, 951 F.2d 204, 207 (9th Cir.1991). As

Judge Lifland noted in *Dana Corp.*, 2007 WL at *4:

> Evidence of an objective nature going beyond the claimant's
> statement of non-receipt is necessary. *CUNA Mutual Ins.
> Group v. Williams,* 185 B.R. 598, 600 (9th Cir. BAP 1995)
> (evidence of business routine regarding receipt of mail not
> sufficient; more positive evidence such as testimony of a
> clerk's office employee that notice was not sent or proof that
> none of the listed creditors received notice or that the mail was
> returned unclaimed.); *In re Chicago P'ship Bd., Inc.*, 236 B.R.
> 249, 256 (Bankr. N.D.Ill.1999) (the presumption that the
> addressee of a properly addressed and mailed notice receives
> that notice may be rebutted by "direct" and "substantial"
> evidence); *Ms. Interpret v. Rawe Druck-Und-Veredlungs-GMBH*,
> 222 B.R. 409, 413 (Bankr. S.D.N.Y. 1998) (a party must do more
> than merely assert that it did not receive the mailing; its
> testimony or affidavit of non-receipt is insufficient, standing
> alone, to rebut the presumption.); *Dependable Insurance Co. v.
> Horton*, 149 B.R. 49, 58 (Bankr. S.D.N.Y. 1992) (finding that an
> addressee did not rebut the presumption of receipt as it did
> not present evidence that, because of the incomplete address,
> the postal service could not deliver the notice of bankruptcy to
> its post office box and further, its affidavits denying receipt,
> "[stood] merely as general denials" and were insufficient to
> rebut the presumption); *In re STN Enterprises, Inc.*, 94 B.R. 329,
> 335 (Bankr. D.Vt. 1988) ("the combination of the facts that the
> address was only 'slightly incorrect,' the notice was never
> returned to debtor's attorney as undelivered, and that [the
> creditor] had received other mailings from debtor's attorney at
> the incorrect address lead us to conclude that the [creditor
> received the] notice of the bar date.").

25.     Temic bears the burden of rebutting the presumption of receipt of

the four Plan Cure Notices that were served upon it at separate locations. *Alexander's*

*Inc.*, 176 B.R. at 721.  Affidavits of employees are considered mere denials of receipt of

notice and are therefore insufficient to rebut the presumption of receipt. *See Horton*, 149

B.R. at 58;  s*ee also Capital Data Corp. v. Capital National Bank,* 778 F.Supp. 669, 675-676

(S.D.N.Y. 1991) (the "mere denial of receipt does not rebut the presumption that notice

was properly addressed and mail is received.").  To rebut the presumption of proper

service, the claimant must prove that the "regular office procedure was not followed or

was carelessly executed so that the presumption that notice was mailed becomes

unreasonable." *Horton,* 149 B.R. at 58 (citing *Meckel v. Continental Resources Co.*, 758 F.2d

811, 817 (2d Cir. 1985)).

26.     Temic's assertion that it has not "seen" the Cure Notices, by a

hearsay affiant, does not overcome the presumption of proper notice.  See Declaration

of Robert Patton, annexed to the Temic Extension Motion, at ¶ 11 (the "Patton

Declaration").

27.     The Patton Declaration does not even begin to explain what

Temic's regular office procedures are at the four locations where the Plan Cure Notices

were served, nor could it do so in a non-hearsay fashion.  The Patton Declaration

doesn't even squarely deny receipt of the Plan Cure Notices:  it simply says that they

haven't been "seen".

28.     The Debtors served original and courtesy copies of the Plan Cure

Notices upon Temic at four separate locations, yet the Temic Extension Motion only

seeks to address service at two of those locations.  Temic readily acknowledges that one

of those locations, the Farmington Hills Office, was sufficient for service of the Steering

Cure Notice – so much so that Temic's in-house counsel was able to forward it to

outside counsel for completion and timely submission to the Debtors on February 5,

2008.

29.     Temic has utterly failed, however, to describe why the Farmington

Hills Office, and the three other locations where Plan Cure Notices were served, could

have been insufficient for the Plan Cure Notices.  Moreover, Temic has not presented any evidence to prove that its "regular office procedure was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable." *Horton,* 149 B.R. at 58 (citing *Meckel v. Continental Resources Co.*, 758 F.2d 811, 817 (2d Cir. 1985)).

30.      Temic has not and cannot rebut the strong presumption of receipt of the four Plan Cure Notices that were served upon it.  Instead, Temic seeks to invoke other misplaced and unsupported presumptions and a 'mere denial' of receipt.  These half-hearted explanations are insufficient, and the Temic Extension Motion fails.  *In re Delphi Corp.*, 05-44481 (RDD) (Bankr. S.D.N.Y., Tr., Feb. 14, 2007), at pages 41-42; *In re Dana Corp.*, No. 06-10354, 2007 WL 1577763, *3 (Bankr. S.D.N.Y. 2007); *see Hagner v. U.S.*, 285 U.S. at 430.

**B.      Temic's Reference to Collateral Documents Fails to Establish Cause to Extend**

31.      Having found itself unable to rebut the presumption of the receipt of the Original and Duplicate Plan Cure Notices, Temic points to collateral documents in an effort to create confusion and to attempt to establish excusable neglect as cause to extend the time within which it may file a Plan Cure Notice.  As demonstrated below, the collateral documents to which Temic refers are irrelevant and insufficient to establish excusable neglect or cause.

32.      Temic's reference to Proof of Claim 2402 is misplaced.  That Proof of Claim was filed by "Motorola, Inc. aka Motorola AIEG " and it makes no reference to Temic.  See Proof of Claim Number 2402, annexed hereto as Exhibit "3."[8]

---

[8]      The Debtors have intentionally omitted copies of the Long Term Contract and other pricing information from this exhibit.

13

33.     Similarly, Temic's reference to Delphi's reply to the reclamation demand that is attached to the Temic Extension Motion is equally insufficient to rebut the presumption that Temic received the Plan Cure Notices.  Delphi's letter response was made in reply to a post-petition, October 11, 2005 reclamation demand that was made on Motorola letterhead.  The demand had nothing to do with a contract cure or a pre-petition claim.  Moreover, no mention whatsoever is made to Temic in the reclamation demand or in Delphi's response thereto.[9]  See Motorola reclamation demand, annexed hereto as Exhibit "4."

34.     Even if Motorola's reclamation demand could be somehow probative of the service issue before the Court, it supports the presumption that Temic received notice of the Plan Cure Notices.  All of the invoices that are attached to the reclamation demand indicate that the goods subject to reclamation were shipped from "Elma."  A Duplicate Plan Cure Notice was served to:  "Temic Automotive North America, 611 Jamison Rd, Elma, NY 10459-9566" (the "Elma Location").  KCC AOS, Ex. C, page 77.

35.     The invoices that are annexed to the Patton Declaration are equally ineffective to rebut the presumption of receipt by Temic.  All of those invoices are dated during February 2008, after entry of the Solicitation Procedures Order and after service of the Plan Cure Notices.  Moreover, the invoices list three separate locations for Temic, one of which is the Elma Location, at which a Duplicate Plan Cure Notice was served.

36.     Temic's unsupported and misplaced arguments fail to rebut the presumption that Temic received at least one of the four forms of the Plan Cure Notices

---

[9]     Temic appears to argue that the Solicitation Procedures Order somehow imposed a duty upon the Debtors to serve Plan Cure Notices upon counterparties at each and every address where counterparties may maintain offices and facilities and from which correspondence by the counterparties to the Debtors may have emanated.  No such obligation exists in the Solicitations Procedure Order, and such obligation would be unduly burdensome.

14

that were served upon it, and all of these excuses and alternative presumptions ring hollow in the face of its counsel's direct communication with the Debtors concerning Plan Cure Notices (and the Debtors' efforts to assist counsel) prior to the January 11, 2008 deadline.

37.    The Debtors satisfied their notice obligations to Temic pursuant to the Solicitation Procedures Order and the facts in evidence indicate that Temic's failure to timely submit a Plan Cure Notice to elect cash is the result of factors within Temic's control.

## C.    Temic Has Failed to Establish Excusable Neglect

38.    The Supreme Court held that excusable neglect is the failure to comply with a filing deadline because of negligence. *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 394 (1993). In examining whether a creditor's failure to file a claim by the bar date constituted excusable neglect, the Supreme Court found that the factors include "(1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* at 395. The Second Circuit has held the most important factor is the reason for the delay, including whether it was within the reasonable control of the movant. The Second Circuit has taken a "hard line" when applying the *Pioneer* factors and has held that the equities will rarely favor a party who does not follow the clear dictates of a Court rule or order. *See* Delphi February 14, 2007 Hearing Transcript, page 27. Furthermore, "where the rule is entirely clear, the Second Circuit continues to expect that a party claiming excusable neglect will, in ordinary course, lose under the Pioneer test." *Id.*

15

39.     The potential opening of the floodgates would prejudice the

Debtors if an exception were granted with respect to the January 11, 2008 deadline for

the Plan Cure Notices.  *See, e.g., In re Enron Corp.,* 419 F. 3d 115, 132 (2d Cir. 2005); *In re*

*Kmart Corp.,* 381 F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar

late-filed claims, "Kmart could easily find itself faced with a mountain of such claims");

*Enron Creditors Recovery Corp.,* 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("It can be

presumed in a case of this size with tens of thousands of filed claims, there are other

similarly-situated potential claimants. . . . Any deluge of motions seeking similar relief

would prejudice the Debtors' reorganization process." (citation omitted)); *In re Dana*

*Corp.* 2007 WL 1577763, at \*6 (Bankr. S.D.N.Y. 2007) ("the floodgates argument is a

viable one").

40.     Allowing Temic additional time to file a late Plan Cure Notice to

elect cash, especially in the context of the facts contained in the Evidentiary Record, as

supplemented herby, may inspire many other claimants to submit or file late Plan Cure

Notices, undermining the integrity and finality of the entire cure procedure process.

The resulting uncertainty would greatly prejudice the Debtors, their estates, and their

creditors.

41.     A failure to timely act is willful when a party has notice of a

requirement to act and fails to do so.  *See Argus Research Group v. Argus Secs., Inc.,* 204 F.

Supp. 2d 529, 531 (E.D.N.Y. 2002).  It is not necessary for a Court to find bad faith to

find that a defendant acted willfully.  *See Gucci Am., Inc., Guess? Inc. v. Gold Center*

*Jewelry,* 158 F.3d 631, 635 (2d Cir. 1998); *see also S.E.C. v. McNulty*, 137 F.3d at 738 (citing

*Am. Alliance* ("willfulness" refers to "conduct that is more than merely negligent or

careless.")).  A failure to timely act may also be found to be willful in a situation where

the conduct of either the counsel *or* the litigant "was egregious and was not

16

satisfactorily explained." *E-Business Holdings, LLC v. Webgenius.com, Inc.,* 2004 WL

2884311, at *1 (S.D.N.Y. 2004) (citing *Gonzalez v. City of New York,* 104 F. Supp. 2d 193,

196 (S.D.N.Y. 2000)).  Temic has failed to adequately explain its failure to act in response

to all of the forms of notice that it had of the Plan Cure Notices.

42.     Temic is presumed to have received the Plan Cure Notices at the

end of December 2007.  Further, Temic's counsel expressed actual knowledge of the

procedures governing the Plan Cure Notices on January 4, 2007, when it communicated

with the Debtors and requested duplicate original Plan Cure Notices for certain of its

clients (notwithstanding having been requested by the Debtors to provide a list of "all"

of MWE's clients for whom duplicate originals could be provided).  Finally, Temic

received the Steering Plan Cure Notice for the contract in question after the January 23,

2008 service thereof by KCC and before February 5, 2008, when Temic returned the

Steering Cure Notice which was served upon the Farmington Hills Office.  Based upon

these facts, the Court should conclude that Temic willfully failed to timely submit a

Plan Cure Notice.

43.     Given all of the foregoing, Temic cannot credibly argue that its

Extension Motion is timely.  Temic's failure to return Plan Cure Notices was caused by

factors within its control, and its decision to wait until February 22, 2008 to file the

Extension Motion cannot be reconciled with the facts in evidence.

### CONCLUSION

44.     The Temic Extension Motion fails to rebut the strong presumption

of Temic's receipt of the four original and duplicate Plan Cure Notices that were served

upon it, and similarly fails to establish excusable neglect to justify an extension of time

within which Temic may return a Plan Cure Notice.  Temic has failed to establish:

(a) that it did not receive notice of the Plan Cure Notices; (b) a justifiable reason why it did not request a duplicate original Plan Cure Notice from KCC or the Debtors; (c) a valid justification for not returning a Plan Cure Notice; and (d) any justification for waiting some seven weeks after the January 11, 2008 Plan Cure Notice deadline before filing the Extension Motion.

45.     The Debtors provided notice to Temic as required by the Solicitation Procedures Order. Temic's unjustified delay threatens to prejudice and interrupt the efforts of the Debtors and their significant stakeholders to facilitate an emergence from Chapter 11 for the benefit of all creditors. Weighing all of the foregoing factors demonstrates that the Temic Extension Motion should be denied.

**Waiver of Separate Memorandum of Law**

46.     All of the legal authorities upon which the Debtors rely are set forth herein. Consequently, the Debtors respectfully request that the requirement for the filing of a separate Memorandum of Law in support hereof be waived. However, the Debtors preserve the right to file such a Memorandum of Law in response to any reply hereto.

Based upon the foregoing, the Debtors respectfully request that the

Temic Extension Motion be denied, and that the Debtors be granted such other and

further relief as is just and appropriate.

Dated:   New York, New York
         February 25, 2008

                                        DELPHI CORPORATION, *et al.*
                                        By their attorneys,
                                        TOGUT, SEGAL & SEGAL LLP
                                        By:

                                        /s/ Neil Berger
                                        ALBERT TOGUT (AT-9759)
                                        NEIL BERGER (NB-3599)
                                        Members of the Firm
                                        One Penn Plaza
                                        New York, New York 10119
                                        (212) 594-5000