# Exhibit C

IC0225b.txt

1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    - - - - - - - - - - - - - - - - - - - -x

5    IN RE:

6

7    DELPHI CORPORATION, et al.,                    Case No.
                                                     05-44481
                                                     (RDD)
8

9    - - - - - - - - - - - - - - - - - - - -x

10

11           DEPOSITION of MARGARET MALLOY, taken by

12   Debtors at the offices of U.S. Attorney's Office,

13   Southern District of New York, 86 Chambers Street, New

14   York, New York 10007, on Monday, February 25, 2008

15   commencing at 7:40 p.m., before I. Iris Cooper, a

16   Certified Shorthand (Stenotype) Reporter and Notary

17   Public within and for the State of New York.

18

19

20

21

22

23

24

25

2

1

2
     A P P E A R A N C E S:

IC0225b.txt

3

4          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, L.L.P.
                   Attorneys for Debtor
5                  333 West Wacker Drive
                   Chicago, Illinois  60606-1285
6
           BY:  JOHN K. LYONS, Esq., of Counsel
7


8
           U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF
9    NEW YORK
                   Attorneys for Witness
10                 86 Chambers Street
                   New York, New York  10007
11
           BY:  MATTHEW L. SCHWARTZ, Esq., of Counsel
12

13

14

15

16

17

18

19

20

21

22

23

24

25


                                                    3
1

2                    IT IS HEREBY STIPULATED AND

3          AGREED that the filing and sealing of

4          the within deposition be, and the

5          same are hereby waived;

6                    IT IS FURTHER STIPULATED AND

7          AGREED that all objections, except as

IC0225b.txt

8               to the form of the question, be and

9               the same are hereby reserved to the

10              time of the trial;

11                  IT IS FURTHER STIPULATED AND

12              AGREED that the within deposition may

13              be sworn to before any Notary Public

14              with the same force and effect as if

15              sworn to before a Judge of this

16              Court;

17                  IT IS FURTHER STIPULATED that

18              the transcript is to be certified by

19              the reporter.

20

21

22

23

24

25

                                                        4

1

2       M A R G A R E T   M A L L O Y, called as a

3               witness, having been first duly sworn by

4               I. Iris Cooper, a Notary Public within and

5               for the State of New York, was examined and

6               testified as follows:

7                   MR. SCHWARTZ:  John, before we

8               start, we've already told you that the

9               answers to a lot of the questions

10              today are going to evoke

11              attorney-client privilege or work

IC0225b.txt

```
12                    product or government deliberative

13                    process information.  As I also

14                    explained, we'll try to give you some

15                    latitude.  I assume that we can agree

16                    up front that any answers that are

17                    given today won't affect broader

18                    waivers of the privilege.

19                        MR. LYONS:  I don't think

20                    we're in position to agree to that

21                    because we no longer need to follow up

22                    on answers that the deponent gives, so

23                    I don't think we can agree right now

24                    to that.  So I think what we need to

25                    do is just proceed forward, and you
```

                                                          5
```
 1

 2                    can certainly state your objections on

 3                    the record which you deem necessary to

 4                    safeguard privileges, instruct the

 5                    witness not do answer.  Delphi in turn

 6                    will seek whatever inference from the

 7                    judge resulting from that invocation

 8                    of privilege.

 9    DIRECT EXAMINATION

10    BY MR. LYONS:

11         Q    Can you please state your name for

12    the record.

13         A    Margaret Malloy.

14         Q    Ms. Malloy, what is your current

15    occupation?

16         A    I'm a trial attorney at the EEOC.
```
                          Page 4

IC0225b.txt

| | | |
|---|---|---|
| 17 | Q | And when did you obtain that |
| 18 | position? | |
| 19 | A | I began on December 26, 2006. |
| 20 | Q | And what did you do before that, |
| 21 | before you took that position? | |
| 22 | A | I was an associate at a law firm. |
| 23 | Q | And what's the name of the law firm? |
| 24 | A | Gladstein, Reif & McGinnis. |
| 25 | Q | How long were you an associate |

6

| | | |
|---|---|---|
| 1 | | |
| 2 | there? | |
| 3 | A | Six years. |
| 4 | Q | Before you became an associate at |
| 5 | Gladstein, what was your occupation? | |
| 6 | A | I clerked for a judge. |
| 7 | Q | And who did you clerk for? |
| 8 | A | Denise Coat. |
| 9 | Q | What type of judge was she? |
| 10 | A | U.S. District Court judge. |
| 11 | Q | For the Southern District of |
| 12 | New York? | |
| 13 | A | Yes. |
| 14 | Q | And before you clerked for the U.S. |
| 15 | District Court for the Southern District of | |
| 16 | New York, did you have any other occupations or | |
| 17 | jobs? | |
| 18 | A | Legal jobs? |
| 19 | Q | Legal jobs first. |
| 20 | A | I graduated from law school right |

Page 5

IC0225b.txt

21    before my clerkship.

22          Q      So you went to clerk straight from

23    law school?

24          A      Yes.

25          Q      And before you went to law school,

                                                              7

1

2    did you have any other jobs?

3          A      Yes, I did.

4          Q      Can you briefly go through your

5    jobs, briefly?

6          A      Immediately before I went to law

7    school, I had been working for Clean Water Action.

8          Q      In your other jobs, did you have any

9    other investigative duties, with any of your jobs

10    prior to becoming a clerk for the Southern

11    District of New York.

12          A      No, I don't think so.

13          Q      What areas of law did you practice

14    as an associate of Gladstone?

15          A      Gladstein.

16          Q      I'm sorry.  Gladstein.

17          A      Labor and employment.

18          Q      Was that for your six years there?

19          A      Yes.

20          Q      So you testified that you had joined

21    the U.S. Attorney's office on December 26, 2006.

22                      MR. SCHWARTZ:  EEOC.

23          Q      EEOC.  I'm sorry.  December 26,

24    2006.  When did you first become involved in the

25    Straughter matter?

IC0225b.txt

                                                              8
     1
     2          A    I don't recall exactly.
     3          Q    Is there anything that would refresh
     4    your recollection on that?
     5                    MS. GROSSMAN:  You can answer
     6              yes or no.
     7                    THE WITNESS:  There might be
     8              something that would refresh my
     9              recollection, but it might be
    10              privileged.
    11          Q    Well, let's look at your
    12    declaration, which I'll mark as deposition Exhibit
    13    No. 1.
    14                    (Declaration of Margaret
    15              Malloy was marked as Exhibit No. 1 for
    16              identification on this date.)
    17          Q    And also to be marked as Exhibit No.
    18    2 will be the exhibits to the declaration.
    19                    (Exhibits to declaration of
    20              Margaret Malloy was marked as Exhibit
    21              No. 2 for identification on this
    22              date.)
    23                    MR. LYONS:  For the witness's
    24              copy, we actually inserted tabs.  For
    25              my copy and your copy we don't have

                                                              9
     1
     2              tabs.

                                    IC0225b.txt
    3              Q      Ms. Malloy, in connection with the
    4      motion for leave to file late claim filed by the
    5      EEOC in the Delphi bankruptcy case, you submitted
    6      a declaration and exhibits.  Can you please review
    7      Exhibit Nos. 1 and 2 and confirm for us that those
    8      are true and correct copies of your declaration
    9      and attached exhibits?
    10             A      Cursory review, they appear to be
    11     true and correct copies.
    12             Q      Thank you.  If you look at Paragraph
    13     No. 3 of Exhibit No. 1, which is your declaration,
    14     you state that you're the trial attorney assigned
    15     to represent the EEOC in the Equal Employment
    16     Opportunity Commission versus Delphi Corp., which
    17     is No. 07 Civ. 640 which is pending in the U.S.
    18     District Court for the Western District of
    19     New York.  Is that true?
    20             A      It's U.S. Civ. 6470.
    21             Q      I'm sorry.  Is that true that you're
    22     the trial attorney assigned to the represent the
    23     EEOC in that matter?
    24             A      Yes.
    25             Q      Do you recall when you were assigned


                                                                    10
    1
    2      to represent the EEOC in that matter?
    3              A      I don't recall.  It was before the
    4      lawsuit was filed.
    5              Q      Do you know how long before the
    6      lawsuit it was filed?
    7              A      Within a few months before the
                                    Page 8

IC0225b.txt

 8    lawsuit was filed.

 9         Q     Why don't we take a look at

10    Paragraph No. 20 of your declaration, your

11    declaration states, and I'm just paraphrasing

12    here.  I'm omitting certain of the words of your

13    declaration.  It states that on June 19, 2007, the

14    case which was the charge filed by Mr. Straughter

15    was forwarded to the legal unit of the EEOC's

16    New York district office?

17         A     That's correct, it states that.

18         Q     Does that refresh your recollection

19    as to when you were assigned this matter?

20                   MR. SCHWARTZ:  It's a yes or

21              no question.

22                   THE WITNESS:  No.

23         Q     Okay.  Let's go back to your

24    declaration.  We'll take it paragraph by

25    paragraph.  If you can look at Paragraph No. 4, it


                                                        11

 1

 2    states that on or about August 28, 2006, the EEOC

 3    national call center was first contacted about a

 4    potential claim of discrimination by Stanley

 5    Straughter, a Delphi employee in Rochester,

 6    New York.

 7                   Do you have any personal knowledge

 8    as to that contact with the EEO national call

 9    center by Mr. Straughter?

10         A     No.

11         Q     Paragraph No. 5 states, over the

                          Page 9

IC0225b.txt

12   next several months, the EEOC worked with

13   Straughter to prepare and finalize a formal charge

14   of discrimination.

15            Is it true that over the next

16   several months the EEOC worked with Straughter to

17   prepare and finalize a formal charge of

18   discrimination?

19        A    Yes, that's correct.

20        Q    Did you work on this effort?

21            MR. SCHWARTZ:  Objection.

22        Calls for privileged communications,

23        attorney work product, government

24        deliberative process information.

25        Q    Who worked for Mr. Straughter --

                                          12

1

2   strike that.  You can answer the question.

3        A    I'm sorry.  Which question is

4   pending?

5        Q    Did you work with Mr. Straughter --

6            MR. SCHWARTZ:  When I assert

7        privileges, do I need to say every

8        time that I also instruct her not to

9        answer?

10            MR. LYONS:  Yes.

11            MR. SCHWARTZ:  I instruct her

12        not to answer the previous question.

13            MR. LYONS:  Please note the

14        witness is conferring with counsel.

15            THE WITNESS:  He told me I can

16        make that point.  So the point was

                    Page 10

IC0225b.txt

17                    that I was not yet employed by the

18                    EEOC at that time.

19          Q      So up until December 26, 2006, you

20   did not have any involvement in the investigation

21   of Mr. Straughter's charge?

22          A      That's correct.

23          Q      Have you spoken with Mr. Straughter?

24          A      Yes, I have.

25          Q      When was the first time you spoke


                                                                    13
1

2    with Mr. Straughter?

3                        MR. SCHWARTZ:  Objection.

4                    Calls for attorney work product and

5                    government deliberative process

6                    information.

7                        MR. LYONS:  And you instruct

8                    the witness not to answer?

9                        MR. SCHWARTZ:  And I instruct

10                   the witness not to answer.  I think I

11                   can say for the record that whenever I

12                   invoke the attorney-client privilege,

13                   the attorney work product with the

14                   government deliberative process of

15                   privilege that I'm also instructing

16                   the witness not to answer.  It is a

17                   continuing instruction.

18                       THE WITNESS:  I'll just add

19                   that the EEOC takes the position that

20                   our communications with claimants in

IC0225b.txt

21              our cases are protected by the

22              attorney-client privilege as well.

23                     MR. SCHWARTZ:  So also the

24              attorney-client privilege trifecta.

25        Q     Who is the primary investigator of

                                                        14

1

2    Mr. Straughter's charge?

3         A     Jennifer Carlo.

4         Q     Has she been the primary

5    investigator from the time that Mr. Straughter

6    made his allegations to the EEOC through today?

7         A     My knowledge of that is based on the

8    documents that you have before you.  Based on

9    those documents, the answer to that is yes.

10        Q     Do you know from your personal

11   knowledge whether Ms. Carlo was the primary

12   investigator from the time that Mr. Straughter

13   made his allegations through today?

14        A     Since I wasn't working for the

15   agency prior to December 26, 2006, no.

16        Q     From the time that you became

17   involved in the Straughter charge through today,

18   has Ms. Carlo been the primary investigator for

19   Mr. Straughter's charge?

20        A     Yes.

21        Q     Have there been any other

22   investigators assigned to the charge in the EEOC's

23   lawsuit in the Western District of New York?

24        A     Not to my knowledge.

25        Q     Turn to Paragraph No. 13 of your

                           Page 12

IC0225b.txt

15

1
2    declaration.  Paragraph No. 13 states that on
3    January 31, 2007 Delphi responded to the EEOC's
4    request for information.
5              Does this refresh your recollection
6    as to when you first became involved in the
7    Straughter charge?
8         A    No.
9         Q    Do you recall receiving the response
10   that Delphi made to the EEOC's request on or about
11   January 31, 2007?
12                  MR. SCHWARTZ:  Are you asking
13              whether she received it on or about
14              January 31, 2007 or if she recalls
15              receiving the January 31, 2007
16              response?
17        Q    Whether you recall receiving the
18   January 31, 2007 response on or about January 31,
19   2007?
20        A    No, I do not.  I just mention that
21   if I had received something at that time and I do
22   not recall receiving anything, but if I did, the
23   only way I could have received it is from the
24   investigator, and that would be privileged
25   communication.

16

1
2         Q    Look at Paragraph No. 14.  The

Page 13

IC0225b.txt

3 second sentence states, therefore, on or about

4 February 26, 2007, the EEOC sent Delphi a second

5 request for information.

6     Were you involved in formulating

7 that second request for information on or about

8 February 26, 2007?

9      MR. SCHWARTZ:  Objection.

10     Calls for attorney-client privilege,

11     work product protection, and

12     government deliberative process

13     privilege.

14  Q What is the basis for your statement

15 that on or about February 26, 2007 the EEOC sent

16 Delphi a second request for information?

17  A The EEOC's files.

18  Q That's your sole basis for that

19 statement?

20  A That's all that I can recall would

21 be the basis for that that is reflected in the

22 EEOC's investigative file.

23  Q Paragraph No. 15, at or about

24 April 4, 2007 Delphi finally responded to the

25 EEOC's second request for information, and it goes


               17

1

2 on and on.  Were you involved in the EEOC's

3 receipt and analysis of  Delphi's response to the

4 second request for information on or about

5 April 4, 2007?

6      MR. SCHWARTZ:  Objection to

7     form.  Also objection because it calls

IC0225b.txt

8                    for attorney-client privileged

9                    information, attorney work project,

10                   and government deliberative process

11                   privileged information.

12        Q     Were you ever involved in analyzing

13   Delphi's response to the EEOC's second request for

14   information?

15                        MR. SCHWARTZ:  Objection to

16                   form.  Objection because it calls for

17                   attorney-client privilege information,

18                   attorney work product, and government

19                   deliberative process privileged

20                   information.

21        Q     Paragraph No. 16 states, throughout

22   this give-and-take process with Delphi, the EEOC

23   simultaneously pursued other avenues of

24   investigating the charge of discrimination,

25   including collecting further information from


                                                    18

1

2    Straughter.  What avenues of investigation of the

3    charge of discrimination did the EEOC pursue?

4                        MR. SCHWARTZ:  Objection.

5                   Calls for attorney-client privileged

6                   information, attorney work product,

7                   and government deliberative process

8                   information, other than, of course,

9                   what's stated in the declaration,

10                  which is that the EEOC collected

11                  further information from

IC0225b.txt

```
12                 Mr. Straughter.
13         Q     Let's read Paragraph No. 16.
14    Throughout this give-and-take process with Delphi,
15    the EEOC simultaneously pursued other avenues of
16    investigating the charge of discrimination,
17    including collecting further information from
18    Straughter.
19                 Is your statement that the EEOC in
20    pursuing other avenues of investigation of the
21    charge of discrimination solely collected further
22    information from Straughter?
23         A     No.
24         Q     So apart from collecting
25    information, further information from Straughter,
```

                                                       19
```
 1
 2    what other avenues of investigation did the EEOC
 3    pursue relating to Mr. Straughter's charge of
 4    discrimination?
 5                     MR. SCHWARTZ:  Objection.
 6                Calls for attorney-client privileged
 7                information, attorney work product,
 8                and government deliberative process
 9                privileged information.
10         Q     As reflected in Paragraph No. 16,
11    did the EEOC ever discuss with any other employees
12    at Delphi any potential violations of the ADA
13    relating to medical release forms?
14                     MR. SCHWARTZ:  Objection.
15                Privileged.  And can we agree to save
16                some breath that I can simply say
```

IC0225b.txt

```
17              privileged when I mean to invoke all
18              three of those privileges?
19                   MR. LYONS:  Yes.  And if you
20              decide to drop one of the privies, why
21              don't you so note.
22                   MR. SCHWARTZ:  I certainly
23              will.  I assume that your questions
24              about your investigation are questions
25              about prelitigation investigation;
```

                                                    20
```
 1
 2              correct?
 3                   MR. LYONS:  Unless otherwise
 4              noted, I try to put a time frame that
 5              I'm asking the question.  I mean,
 6              Paragraph No. 16, let's confirm that.
 7              Paragraph No. 16 does not put a time
 8              frame on it.
 9       Q    Is Paragraph No. 16 meant to just
10  cover the period prior to commencement of the
11  federal EEOC action.
12       A    That's my understanding of Paragraph
13  No. 16.
14       Q    Is Paragraph No. 16 based upon your
15  personal knowledge?
16       A    Paragraph No. 16 is based on my
17  review of the investigative file.
18       Q    Other than your review of the
19  investigative file, is there any basis, other
20  basis, for your statements in Paragraph No. 16?
```

IC0225b.txt
 21          A    I would like to confer with my

 22    counsel as to whether or not my answer would be

 23    privileged.

 24                     MR. LYONS:  It asks for a yes

 25             or no.  Whether it goes into more than


                                                        21
  1

  2                     a yes or no, then I can understand why

  3                     there might be a --

  4                     MR. SCHWARTZ:  I do appreciate

  5                     that.  But given what you said at the

  6                     outset that there would be no waivers,

  7                     no subject matter waivers, we need to

  8                     be very careful.

  9                     MR. LYONS:  Note conference

 10                     off the record.

 11                     (Whereupon, a conversation was

 12                     held off the record.)

 13          Q    What was the basis for your

 14    statement in Paragraph No. 16 of the declaration?

 15          A    The investigative file.  The

 16    documents in the investigative file.

 17          Q    Did you have any other basis?

 18          A    No, not that I recall.

 19          Q    Paragraph Nos. 4, 5, 6, 7, 8, 9, 10,

 20    11, 12, 13, 14, and 15, what was the basis for

 21    your statements in those paragraphs?

 22          A    The EEOC's investigative file.

 23          Q    Did you have any other basis other

 24    than the file for those statements?

 25          A    No.
                        Page 18

IC0225b.txt

                                                                22
 1
 2          Q       Paragraph No. 17, what was the basis
 3   for your statement in Paragraph No. 17?
 4          A       The EEOC's investigative file.
 5          Q       Did you have any other basis for the
 6   statement in Paragraph No. 17?
 7                       MR. SCHWARTZ:  Objection.
 8                       THE WITNESS:  Not that's not
 9              privileged.
10                       MR. SCHWARTZ:  It's quotation
11              from a document that's dated.  I'm not
12              sure exactly what you're getting at.
13          Q       Can you answer the question?
14          A       The basis for my statement in
15   Paragraph No. 17 is the document itself that's
16   quoted, the letter of determination.
17          Q       Did you have any involvement in the
18   preparation of the conclusions contained in the
19   letter of determination?
20                       MR. SCHWARTZ:  Objection.
21              That is attorney work product,
22              attorney-client privileged
23              information, government deliberative
24              process privileged information.
25                       MR. LYONS:  I don't believe


                                                                23
 1
 2              the fact of whether or not you were

                          Page 19

IC0225b.txt

3              involved falls within any of those
4              privileges.  Would you like to
5              reconsider your insertion, your
6              instruction not to answer?
7                      MR. SCHWARTZ:  Okay.  No.  I
8              think that it's privileged.
9                      MR. LYONS:  Okay.  Just so I
10             understand to be clear, the U.S.'s
11             position is that your involvement or
12             non-involvement in the issuance of the
13             letter of determination is privileged?
14                     MR. SCHWARTZ:  I think that
15             your question was broader than the way
16             that you just phrased it to me.  And
17             the question of how and when the EEOC
18             or any law enforcement agency staffs
19             cases and makes final decisions about
20             charges is privileged, both under the
21             attorney-client work product doctrine
22             and under the government deliberative
23             process privilege.  That said, if you
24             want to try to rephrase your question,
25             maybe get a little bit closer.


                                                    24
1
2          Q     Were you involved in the EEOC's
3      issuance of it's letter of determination
4      referenced in Paragraph No.17 of your declaration?
5                      MR. SCHWARTZ:  Objection to
6              the form.
7          Q     You can answer.
                        Page 20

IC0225b.txt

 8          A    I don't know what it really means to

 9    be involved in the issuance of the LOD.

10          Q    Prior to May 22, 2007, were you

11    involved in the investigation referenced in the

12    first sentence of the block quote in Paragraph No.

13    17?

14          A    My attorney is not objecting but I

15    think that calls for privileged information.

16                    MR. SCHWARTZ:  Okay.  We'll

17               object on the basis of privilege.

18                    MR. LYONS:  So you're

19               instructing not to the answer and

20               we've got the protocol.

21                    MR. SCHWARTZ:  Yes.

22                    MR. LYONS:  And you're

23               instructing the witness not to answer?

24                    MR. SCHWARTZ:  Yes.  I think,

25               John, that involved is a very


                                              25

 1

 2               difficult word in this context.  You

 3               might want to try and be clear with

 4               specific reference to the last

 5               question.

 6                    MR. LYONS:  I put a clear

 7               temporal limit on this.  I said on or

 8               before May 22, 2007 were you involved

 9               in the investigation of

10               Mr. Straughter's charge of

11               discrimination that's referenced in

                        Page 21

IC0225b.txt

```
12              the letter of determination that's set
13              forth in Paragraph No. 17 of your
14              declaration.
15                   MR. SCHWARTZ:  My point to you
16              is that involved is a very ambiguous
17              word in this context.  Specifically,
18              it's ambiguous as to whether she was
19              involved as a lawyer or whether she
20              was involved as investigating.
21         Q    Were you involved in any capacity on
22   or prior to May 22, 2007 in the Straughter charge
23   of discrimination?
24         A    Yes.
25         Q    And in what capacity were you
```

26

```
 1
 2   involved?
 3         A    In my capacity as an attorney
 4   legally involved in it.
 5         Q    Does Paragraph No. 17 refresh your
 6   recollection as to when you became involved in the
 7   Straughter charge of discrimination?
 8         A    Yes.
 9         Q    And based upon your refreshed
10   recollection, when do you believe you first became
11   involved in the Straughter charge of
12   discrimination?
13         A    All I can say is that it was before
14   May 22, 2007.
15         Q    If we go to the last sentence of
16   Paragraph No. 17, it states that the EEOC also
```

Page 22

IC0225b.txt

17    informed Delphi that it would like to eliminate

18    the unlawful practices through informal methods of

19    conciliation and invited Delphi to discuss

20    settlement of the charge.

21            Do you recall having discussions

22    with Delphi regarding settlement of the charge on

23    or about May 22, 2007?

24        A    No.

25        Q    Paragraph No. 18 of your declaration

27

1

2    references, and perhaps this might be more

3    efficient.  If you can turn to Exhibit N to your

4    declaration.  Is Exhibit N which you're reviewing

5    right now, is that, to the best of your knowledge,

6    Exhibit N to your declaration?

7        A    Yes.

8        Q    Do you recall seeing a copy of this

9    letter dated May 23, to Mr. Peterson at Delphi on

10    or about May 23, 2007?

11        A    I don't recall when I saw it.

12        Q    Were you involved in the preparation

13    of this letter which is Exhibit N to your

14    declaration?

15                MR. SCHWARTZ:  Objection.

16            Privileged.

17        Q    Your declaration states that the

18    following day, May 23, 2007, that the EEOC

19    contacted Delphi.  What was the basis of the

20    statement that the EEOC contacted Delphi?  What

Page 23

IC0225b.txt

21   was your basis -- I'm sorry.  Let me back up.

22            Paragraph No. 18 of your declaration

23   states that following day on May 23, 2007 the EEOC

24   contacted Delphi to begin conciliation efforts and

25   outlined a comprehensive remedy for Delphi's

28

1

2   discriminatory practices.

3            What was the basis for your

4   statement in Paragraph No. 18 that I just --

5        A    Exhibit A, the letter.

6        Q    Is there any other basis?

7        A    I don't recall whether the letter

8   was faxed in addition to being mailed.  The May

9   23rd date comes from the letter.

10       Q    Were you aware of any other contacts

11   other than the letter marked as Exhibit N to

12   Delphi discussing the subject matter of Paragraph

13   No. 18 of your letter?

14       A    Not that I recall.

15       Q    To your declaration.  I'm sorry.

16            If you can turn to Paragraph No. 16

17   of your letter, Exhibit N to your declaration.

18       A    The EEOC's letter?

19       Q    Correct.  It begins with respondent

20   will make charging party whole for all losses

21   suffered as a result of discrimination?

22       A    Yes.

23       Q    Including lost wages and fringe

24   benefits plus interest?

25       A    I see that.

IC0225b.txt


29

1

2          Q      Did the EEOC make any calculation as

3     to the amount necessary to make whole

4     Mr. Straughter for losses suffered as a result of

5     discrimination?

6                          MR. SCHWARTZ:  Objection.

7                     Privileged.  I also have to say this

8                     is a bit far outside the purpose of

9                     this deposition.

10         Q      In Paragraph No. 17 of Exhibit N,

11    the letter states, respondent will compensate

12    charging party for emotional harm and distress,

13    pain, suffering, humiliation or embarrassment in

14    the amount of $115,000.

15                     Were you involved in the calculation

16    of the $115,000 that the EEOC was necessary to

17    compensate Mr. Straughter for emotional harm and

18    distress, pain, suffering, humiliation or

19    embarrassment?

20                          MR. SCHWARTZ:  Objection.

21                     Privileged.  Also irrelevant.

22         Q      Paragraph No. 19 of Exhibit N to

23    your declaration states, respondent will provide,

24    make whole relief for any and all other

25    individuals determined to have been harmed by


30

1

2     respondent's discriminatory practices.

Page 25

IC0225b.txt

```
 3                   Are you aware of any other
 4     individuals who have suffered harm as a result of
 5     Delphi's alleged discriminatory practices
 6     referenced in the EEOC's lawsuit against Delphi?
 7                   MR. SCHWARTZ:  Objection.
 8                   Privileged.  Also relevance.  At this
 9                   point, could you explain the relevance
10                   of these questions about damages in
11                   this suit.  I understand they go to
12                   potential value of our claim to
13                   bankruptcy, but certainly not to its
14                   timeliness.
15                   MR. LYONS:  I think the
16                   relevance is pretty obvious since to
17                   the extent that the EEOC was aware of
18                   prepetition claims, potential
19                   prepetition claims, and did nothing
20                   for 13 months from the time that
21                   Mr. Straughter walked in the door,
22                   that that goes directly to excusable
23                   neglect.
24                   MR. SCHWARTZ:  I'm not sure
25                   that I follow, but --
```

```
                                                      31
 1
 2          Q     If I look at Paragraph No. 20 to
 3     Exhibit M to your declaration, it states,
 4     respondent will create a $200,000 fund to provide
 5     for compensatory damages for any and all
 6     individuals who have been required to sign an
 7     unlawful medical release at any time from
```

Page 26

IC0225b.txt

8    January 1, 2005 to the present.

9                     Were you involved in assessing the

10   adequacy of a $200,000 fund to provide

11   compensatory damages for any and all individuals

12   who had been required to sign an unlawful medical

13   release at any time from January 1, 2005 to the

14   present?

15                     MR. SCHWARTZ:  Objection.

16               Privileged.

17        Q    Do you know the basis for setting a

18   $200,000 figure to compensate any and all

19   individuals who may have been harmed by reason of

20   the failure to sign a medical release?

21                     MR. SCHWARTZ:  Objection.

22               Privileged.

23        Q    Are you aware of any Delphi

24   employees who were harmed by Delphi's alleged

25   requirement to sign a medical release, other than


                                                    32

1

2    Mr. Straughter?

3                     MR. SCHWARTZ:  Objection.

4               Privileged.

5        Q    Do you know whether at the time

6    Mr. Straughter filed his charge of discrimination

7    whether any Delphi employees suffered harm as a

8    result of Delphi's alleged policy to require

9    employees to sign medical release forms?

10                    MR. SCHWARTZ:  You're asking

11              if she knew it at the time or if there

IC0225b.txt

12        were folks who were injured at the

13        time?

14    Q    As you sit here today, as you sit

15 here today, are you aware of any Delphi employees

16 that suffered harm as a result of Delphi's alleged

17 policy to require medical release forms from

18 employees?

19        MR. SCHWARTZ:  This is aside

20        from the ones your own client has

21        identified in response to request for

22        information or including those folks?

23        MR. LYONS:  Any employees.

24        MR. SCHWARTZ:  I think that

25        she identified those people before.


                                              33

1

2        THE WITNESS:  There were, I

3        believe, three other individuals

4        identified in Delphi's response to a

5        request for information.

6    Q    And we'll turn to that.  Other than

7 those three individuals, are you aware of any

8 other Delphi employees who suffered harm based

9 upon Delphi's alleged policy to require medical

10 release forms?

11        MR. SCHWARTZ:  Objection.

12        Privileged.

13    Q    Paragraph No. 21 of your declaration

14 refers to steps that the EEOC must take before

15 filing a federal court action to remedy alleged

16 violations of the ADA.  What is the basis of your

                Page 28

IC0225b.txt

17    knowledge of the statements made in Paragraph No.

18    21 of your declaration?

19         A    The regional's attorney manual

20    reflects those steps.

21         Q    Do you have any other basis for your

22    statements made in Paragraph No. 21 of your

23    declaration?

24              MR. SCHWARTZ:  Objection to

25         the form.


                                                        34

1

2         Q    You can answer.

3         A    I'm aware of the steps we have to

4    take because of my jobs a trial attorney of the

5    legal unit of the EEOC.

6         Q    Are you aware of the steps -- are

7    you aware of any steps that the EEOC must take to

8    file a proof of claim in a bankruptcy case?

9         A    I am aware of some of the steps,

10   yes.

11        Q    What are those steps?

12        A    I can only testify as to this case.

13        Q    This case is your only source of

14   knowledge as to the steps?

15        A    Yes.

16        Q    To file a proof of claim?

17        A    Yes.

18        Q    And what are those steps?

19        A    In this case, we had to mail our

20   proof of claims to Kurtsman something or other in

IC0225b.txt

21   California.

22        Q     Did you need to get advanced

23   authorization from the commissioner at EEOC

24   headquarters in Washington prior to filing your

25   proofs of claim?

                                                        35

 1

 2        A     No.

 3        Q     What authorizations do you need to

 4   file a proof of claim in a bankruptcy case on

 5   behalf of the EEOC?

 6        A     I'm not aware of any particular

 7   authorizations that we require.

 8                     (Declaration of Margaret

 9                Malloy was marked as Exhibit No. 3 for

10                identification on this date.)

11        Q     Marked as Exhibit No. 3 is the

12   order -- well, I'll just refer to it as the  bar

13   date order.  Have you ever seen a copy of the bar

14   date order referenced in Exhibit No. 3?

15        A     I don't recall.

16        Q     Do you recall learning that there

17   was a bar date order entered in the Delphi

18   bankruptcy case?

19        A     I have learned that.

20        Q     When did you first become aware of a

21   bar date order entered in the Delphi's bankruptcy

22   case?

23        A     I don't recall.

24        Q     Is there anything that would refresh

25   your recollection?

                         Page 30

IC0225b.txt

36

1
2          A     I don't know what would refresh my
3     recollection.
4          Q     Were you aware of the bar date order
5     before the EEOC lawsuit was filed in the Western
6     District of New York?
7          A     I don't recall.
8          Q     Who handles compliance with bar date
9     orders at the EEOC?
10         A     I don't know.
11                    MR. SCHWARTZ:  Assumes facts
12               not in evidence.
13         Q     How did the bar date order in
14    Delphi's case come to your attention?
15         A     I don't recall.
16         Q     Did you --
17         A     It had to be a privileged
18    communication, though.
19         Q     So you became aware of the bar date
20    order through communication with another attorney
21    at the EEOC?
22                    MR. SCHWARTZ:  Objection.
23                    MR. LYONS:  Fact of a
24               conversation isn't privileged.
25                    MR. SCHWARTZ:  Lacks

37

1
2                    foundation.

IC0225b.txt

3           Q     What was the basis for your
4    statement that you believe if it came to your that
5    it was due to a privileged conversation?
6           A     I don't know how else it would have
7    come to my attention.
8           Q     Were you aware of the Delphi
9    bankruptcy case prior to filing your proofs of
10   claim?
11          A     Yes.
12          Q     Were you involved in the preparation
13   of the proofs of claim?
14          A     Yes.
15          Q     Did you have primary responsibility
16   for preparing and filing the proofs of claim?
17          A     Yes.
18          Q     Did you review the bar date order
19   before you filed the proofs of claim on behalf of
20   the EEOC?
21          A     I don't recall.
22          Q     And I believe your prior testimony
23   was that you did not recall learning of the bar
24   date order before the EEOC filed its lawsuit
25   against Delphi in the Western District of

                                                    38
1
2    New York?
3           A     I don't recall whether I did or not.
4           Q     And you're not aware of anything
5    that would refresh your recollection on that?
6           A     No.
7           Q     Were you aware that all of Delphi's
                        Page 32

IC0225b.txt

8      employees were served the bar date order?

9          A      No.

10         Q      Were you aware that not a single

11    Delphi employee filed a proof of claim alleging

12    any EEOC violation?

13         A      No.

14                    MR. SCHWARTZ:   That's why we

15               have the EEOC.

16         Q      Paragraph No. 21 refers to a

17    presentation memorandum?

18         A      Paragraph No. 21 of the bar date

19    order?

20         Q      I'm sorry.  Paragraph No. 21 of your

21    declaration.

22         A      Yes.

23         Q      Your Paragraph No. 21 states, the

24    legal unit must prepare a presentation memorandum

25    to the general counsel containing its assessment


                                                         39

1

2     of the case?

3          A      Yes.

4          Q      Does the presentation memorandum

5     contain such an assessment of the case?

6          A      The presentation memorandum is

7     privileged.

8          Q      Does it contain an assessment of the

9     case?

10                    MR. SCHWARTZ:   This one or

11               the --

                        Page 33

IC0225b.txt

12          Q      Does the presentation memorandum

13   referred to in Paragraph No. 21 of your

14   declaration contain an assessment of the EEOC case

15   filed in the Western District of New York?

16                      MR. SCHWARTZ:  Objection.

17               Privileged.

18          Q      I'll just refer to presentation

19   memorandum relating to the case filed in the

20   Western district of New York against Delphi?   Is

21   the presentation memorandum extensive?

22                      MR. SCHWARTZ:  Objection.

23               Privileged.

24          Q      Does the presentation memorandum

25   describe the background and legal analysis

                                                      40

1

2    involved in the case, including proof that

3    anticipates introducing but also to prepare a

4    breakdown of anticipated litigation costs?

5                       MR. SCHWARTZ:  Objection to

6                the form.  Objection.  Privileged.

7           Q      So you are unable to confirm the

8    statements contained in Paragraph No. 21 on the

9    basis that such confirmation would be privileged?

10          A      That's not a correct representation,

11   no.

12          Q      Could you please confirm then that

13   the presentation memorandum is extensive?

14          A      Paragraph No. 21 refers to

15   presentation memoranda in general and what is

16   required to be included in them.  The questions

                          Page 34

IC0225b.txt

17    you're asking, however, relate to the presentation

18    memorandum prepared in this case.

19         Q      Was a presentation memorandum

20    presented to the general counsel for the Delphi

21    case?

22         A      Yes.

23         Q      And was that presentation memorandum

24    extensive?

25                    MR. SCHWARTZ:  Objection.


                                                        41

1

2                    Privileged.

3         Q      Did the presentation memorandum that

4    the EEOC prepared with respect to the Delphi case

5    discuss proof that it anticipated introducing?

6                    MR. SCHWARTZ:  Objection.

7                    Privileged.

8         Q      Did the Delphi presentation

9    memorandum also contain a breakdown of an

10    anticipated litigation cost?

11                    MR. SCHWARTZ:  Objection.

12                    Privileged.

13         Q      Did the Delphi presentation

14    memorandum also include a draft of the complaint

15    to be filed?

16                    MR. SCHWARTZ:  Objection.

17                    Privileged.

18                    MR. LYONS:  For the record, we

19                    request a copy of that presentation

20                    memorandum.

IC0225b.txt

21          MR. SCHWARTZ:  I'm sure you'll

22          put that in writing.

23              MR. LYONS:  It's on the record

24          here.

25     Q      Paragraph No. 22 refers to a

                                                    42

1

2      statement that the prefiling process unfolded very

3      quickly.  What did you mean by that statement?

4          A      Just what it says.

5          Q      You have no further explanation of

6      the first sentence of Paragraph No. 22?

7                  MR. SCHWARTZ:  Objection to

8              the form.

9          Q      You can answer.

10         A      It simply refers to the time period

11     from the failure of conciliation to when we filed

12     the complaint.

13         Q      And, again, the failure of

14     conciliation referenced in Paragraph No. 20 of

15     your declaration occurred on June 19, 2007?

16         A      That's correct.

17         Q      And the case was filed on

18     September 28, 2007?

19         A      Correct.

20         Q      Let's turn to Exhibit R to your

21     declaration which is the actual EEOC complaint.

22     In the nature of action paragraph, it refers to an

23     action under the ADA to correct unlawful

24     employment practices and to provide relief to

25     Stanley Straughter, who is defined as the charging

IC0225b.txt

                                                                    43
1
2     party, and to a class of similarly-situated
3     individuals who had been adversely affected by
4     such practices.
5                    Can you identify any
6     similarly-situated individuals who had been
7     adversely affected by the practices discussed in
8     the complaint?
9                    MR. SCHWARTZ:  Objection.
10                   Privileged, except to the three that
11                   Delphi identified.
12       Q     As of the time that Mr. Straughter
13    made his charge of discrimination in September of
14    2006, was the EEOC aware of any other
15    similarly-situated individuals who had been
16    adversely affected by the practices discussed in
17    the EEOC complaint?
18                   MR. SCHWARTZ:  You're asking
19                   if -- I'm sorry.  I didn't understand
20                   it at all.
21       Q     As of the time Mr. Straughter filed
22    his charge of discrimination in September 2006,
23    was the EEOC aware of any similarly-situated
24    individuals who were adversely affected by the
25    practices discussed in the EEOC's complaint?

                                                                    44
1
2                    MR. SCHWARTZ:  And now you're

IC0225b.txt

```
 3                   asking if they were aware of it prior

 4                   to Mr. Straughter filing his complaint

 5                   or if they were aware of individuals'

 6                   complaints prior to the filing of

 7                   Mr. Straughter's complaint.

 8                        MR. LYONS:  As of the time

 9                   Mr. Straughter filed his charge of

10                   discrimination in September 2006.

11                        THE WITNESS:  I'm totally lost

12                   now.

13        Q     Okay.  One more time.  One more

14   time.  At the time that Mr. Straughter filed his

15   charge of discrimination in September of 2006, was

16   the EEOC aware of any other similarly-situated

17   individuals who were adversely affected by the

18   policies discussed in the EEOC's complaint?

19        A     I can't testify as to that.  My

20   knowledge of this case is derived from the

21   investigative file in this case.  If other charges

22   were filed, our charge filing process is

23   confidential.  Delphi would be aware of that.

24        Q     So your answer is no?

25        A     My answer relates only to my
```

                                                     45
```
 1

 2   knowledge.  I can't testify as to the agency's

 3   knowledge.

 4        Q     What of your knowledge derived from

 5   the Straughter file that the EEOC maintains?

 6        A     There's nothing --

 7                        MR. SCHWARTZ:  That wasn't a
```
                         Page 38

IC0225b.txt

```
 8              question.
 9                      MR. LYONS:  It is a question
10              because --
11                      MR. SCHWARTZ:  Ask the whole
12              question.
13          Q     Does the EEOC's file that is
14     maintained for the Straughter charge reveal any
15     other similarly-situated individuals who have been
16     adversely affected by the practice described in
17     the EEOC complaint?
18                      MR. SCHWARTZ:  That is a
19              totally different question.  Before,
20              you were asking whether anyone had
21              complaints prior to Mr. -- I just want
22              you to realize that you're changing
23              the question, so when I object to it
24              you don't think I'm trying to get in
25              the way.
```

46

```
 1
 2                      You were asking before whether
 3              they were aware prior to
 4              Mr. Straughter's complaint if anyone
 5              else had complained, and she said she
 6              was not personally aware.  And now
 7              you're asking if anyone was injured.
 8                      MR. LYONS:  Let me back up.
 9                      MR. SCHWARTZ:  Yes.
10          Q     Prior to December 26, 2006, your
11     knowledge of the Straughter matter and any other
```

IC0225b.txt

12  related plaintiffs is limited to the file the EEOC

13  maintains for the Straughter matter; correct?

14        A    Well, I still don't understand the

15  question.

16                 MR. LYONS:  Read the question

17             again.

18                 (Whereupon, the following was

19             read into the record by the reporter:

20                 "Question:  Prior to

21             December 26, 2006, your knowledge of

22             the Straughter matter and any other

23             related plaintiffs is limited to the

24             file the EEOC maintains for the

25             Straughter matter; correct?

47

1

2                 MR. SCHWARTZ:  Objection to

3             form.

4                 THE WITNESS:  I don't

5             understand the question.

6        Q    I'll try it one more time or a

7  couple more times.

8        A    Try it differently because I really

9  don't understand.

10       Q    As of the time Mr. Straughter filed

11  his charge of discrimination with the EEOC in

12  December of 2006, did the EEOC have any

13  information with respect to Delphi employees who

14  were adversely affected by Delphi's alleged policy

15  of requiring medical releases?

16                 MR. SCHWARTZ:  Objection to

IC0225b.txt

17              form and to foundation.
18                   THE WITNESS:  I believe you
19              meant to say September 2006.
20        Q     September 2006.
21        A     And I can't -- I have no knowledge
22   as to that.  I can't testify as to anything
23   outside of Mr. Straughter's charge and the
24   investigative file related to that charge.
25        Q     Fair enough.  And just to be clear,

                                                        48
1
2    Mr. Straughter's file did not indicate or identify
3    other Delphi employees who were adversely affected
4    by the practices described in the EEOC complaint?
5                   MR. SCHWARTZ:  Well,
6              objection.  Privileged.  If you want
7              to ask if other people had made
8              charges, that's fine.
9         Q     Had other Delphi -- to follow up on
10   that, the instruction still stands.  Understood.
11   But had other Delphi employees filed charges with
12   the EEOC at any time?
13        A     I would have no knowledge of that.
14        Q     We move on.  If you could go to the
15   peripheral leaf which is Page No. 5 of the
16   complaint marked as Exhibit R to your declaration.
17   In the event the EEOC prevails in its lawsuit and
18   obtains compensatory relief, that compensatory
19   relief will only be provided to the affected
20   employees; correct?

                        Page 41

IC0225b.txt

21          A      What do you mean by affected

22    employees?

23          Q      Employees that were subject to

24    Delphi's alleged ADA's violations.

25          A      I don't think -- I think that's a

                                                          49

1

2     question for the judge to answer.

3          Q      Let me put it another way.  The EEOC

4     isn't going to keep any amount it recovers from

5     Delphi; correct?

6          A      No.

7          Q      All the proceeds that it would

8     collect would go to aggrieved employees; correct?

9          A      I can't really testify as to how we

10    would distribute proceeds.

11         Q      In the EEOC's lawsuit, any

12    compensatory relief is being sought on behalf of

13    potentially-aggrieved Delphi employees?

14         A      That's correct.

15         Q      Why did the EEOC wait until

16    November 2007 to file proofs of claim in the

17    Delphi case when it became aware of

18    Mr. Straughter's charge in September of 2006?

19                    MR. SCHWARTZ:  Objection.

20              Privileged.

21                    THE WITNESS:  It's October.

22         Q      We file a month earlier than I

23    thought.  So are you in a position to discuss any

24    of the facts and circumstances relating to

25    Mr. Straughter's charge of discrimination that

                        Page 42

IC0225b.txt

50
```
 1
 2    existed in September 2006?
 3                   MR. SCHWARTZ:  Objection to
 4              form.
 5                   THE WITNESS:  It seems like an
 6              argumentative question to me.  If you
 7              want to ask me about facts and
 8              circumstances, then I can tell you on
 9              an individual basis whether I'm
10              prepared to answer those questions.
11         Q    Beyond reviewing the contents of
12    files maintained for the Straughter matter, do you
13    have any personal knowledge of any of the events
14    discussed in your declaration?
15         A    We've gone through my declaration
16    paragraph by paragraph.
17                   MR. SCHWARTZ:  And she
18              testified that she was involved in
19              certain aspects.
20         Q    And I believe the first aspects you
21    were involved in followed the transmittal letter
22    of the EEOC?
23         A    I don't think I testified as to
24    that, no.
25         Q    Well, why don't you tell me, what's
```

51
```
 1
 2    the first paragraph in your declaration that
```

IC0225b.txt

3    contains facts of which you have personal

4    knowledge?

5           A      Paragraph No. 1.

6           Q      Any other paragraphs?

7           A      Paragraph No. 2, Paragraph No. 3.

8    Are you waiting for me to keep going?

9           Q      Please.

10                 MR. SCHWARTZ:  I object to the

11              form of this question.

12                 THE WITNESS:  I believe I

13              testified I don't recall at what point

14              I became involved, and I believe I

15              testified that it was sometime before

16              May 22, 2007.

17          Q      But which paragraph do you first

18   have personal knowledge of facts contained in that

19   paragraph?

20          A      I don't recall which would be the

21   first one.

22          Q      Are there any paragraphs in your

23   declaration, other than Paragraph Nos. 1 through 3

24   that contained facts of which you have personal

25   knowledge?


                                                    52

1

2           A      The paragraphs are written based on

3    the investigative file.  So, for example,

4    Paragraph No. 15 is based on documents in the

5    investigative file.

6           Q      Please answer my question.

7           A      Can you repeat your question.

                        Page 44

IC0225b.txt

8          Q      Please identify paragraphs that
9    contain facts based upon your personal knowledge,
10   other than Paragraph Nos. 1 through 3.
11         A      All I can say again is I don't
12   recall at what time I became involved in the case.
13         Q      That's not my question.  My question
14   is which paragraphs contain facts based upon your
15   personal knowledge, other than Paragraph Nos. 1
16   through 3?
17         A      All I can say is that Paragraph Nos.
18   1 through 3 are based on my personal knowledge.
19   The remaining paragraphs reflect documents in the
20   EEOC's investigative file and other documents.
21         Q      And are not based upon your personal
22   knowledge?
23         A      No, I won't say that.
24         Q      Well, please answer then what
25   paragraph contain facts based upon your personal

                                              53
1
2    knowledge other than Paragraph Nos. 1 through 3?
3          A      I've already answered to the best of
4    my ability.
5          Q      So you are not going to answer --
6    you're not going to identify factual assertions
7    contained in your declaration based upon your
8    personal knowledge other than Paragraph Nos. 1
9    through 3?
10                MR. SCHWARTZ:  Objection.
11         Q      There is a pending question.

                    Page 45

IC0225b.txt

12          A      I did not rely on privileged

13    information to prepare this document -- to prepare

14    this declaration.  For me to answer your question

15    would require me to review privileged information.

16    So if that answers your question that the

17    declaration is prepared based on documents, aside

18    from Paragraph Nos. 1 through 3, then that's my

19    answer.

20          Q      And not based upon your personal

21    knowledge?

22          A      Aside from Paragraph Nos. 1 through

23    3?

24                  MR. SCHWARTZ:  You're asking

25                  now the basis for the declaration as

54

1

2                  opposed to whether she has personal

3                  knowledge of the events.  Very

4                  different question.

5                  MR. LYONS:  My question has

6                  been very precise.

7                  MR. SCHWARTZ:  It really

8                  hasn't.

9                  MR. LYONS:  It has.  I'll do

10                  it one more time.

11          Q      Please identify any factual

12    assertions in your declaration based upon your

13    personal knowledge, other than Paragraph Nos. 1

14    through 3?

15                  MR. SCHWARTZ:  Objection to

16                  form.

Page 46

IC0225b.txt

17                    THE WITNESS:   Paragraph No.

18              22, I have personal knowledge of facts

19              in that paragraph.

20        Q     All of the facts?

21        A     That is based on that paragraph, I

22   have to read it.  I have personal knowledge of

23   those facts.

24        Q     Paragraph No. 23?

25        A     I have personal knowledge of those

                                                      55

 1

 2   facts.

 3        Q     Paragraph No. 24?

 4        A     I have personal knowledge of those

 5   facts.

 6        Q     Paragraph No. 25?

 7        A     I have personal knowledge of those

 8   facts.

 9        Q     Paragraph No. 26?

10        A     I have personal knowledge of those

11   facts.

12        Q     And Paragraph No. 27?

13        A     I don't have personal knowledge of

14   all of those facts.

15        Q     What about first sentence of

16   Paragraph No. 27?

17        A     I have personal knowledge of that.

18        Q     The second sentence?

19        A     I wouldn't really say that that's a

20   fact.

                          Page 47

IC0225b.txt

21          Q      Fair enough.  The third sentence?

22          A      I have no personal knowledge of

23     that.  No, I have no personal knowledge of that.

24          Q      And the last sentence of Paragraph

25     No. 27?

                                                        56

1

2          A      I only have partial personal

3     knowledge.

4          Q      And what's the partial personal

5     knowledge?

6          A      I have personal knowledge of filing

7     the enforcement action and filing the claims of

8     the bankruptcy.

9          Q      But no personal knowledge of the

10     prompt investigation?

11          A      My knowledge of the investigation is

12     based on the investigative file.

13          Q      So other than Paragraph Nos. 1

14     through 3, Paragraph Nos. 22, 23, 24, 25, 26, and

15     parts of 27, you do not have personal knowledge of

16     the assertions in your declaration?

17                    MR. SCHWARTZ:  Objection.

18                    THE WITNESS:  That's not what

19               I was saying.  I want to make a

20               correction as to Paragraph No. 2.

21          Q      First the correction.

22          A      I think I stated that my knowledge

23     of the investigation is based upon the

24     investigative file.  The facts that I assert in

25     the declaration are based on the facts in the

                        Page 48

IC0225b.txt

                                                              57
     1
     2    investigative file.
     3         Q     And my questions have presumed other
     4    than the investigative file, whether you have
     5    personal knowledge of the assertions?
     6                    MR. SCHWARTZ:  I think you're
     7                    missing the distinction she's drawing,
     8                    which is the same one I tried to draw
     9                    and you're about to get as she
    10                    clarifies.
    11                    THE WITNESS:  And that's what
    12                    I keep trying to say.  If I have other
    13                    personal knowledge, it's privileged.
    14                    The facts asserted in this declaration
    15                    as I've described them are based on
    16                    facts in the investigative file.
    17                    MR. SCHWARTZ:  Do you
    18                    understand difference?  In other
    19                    words, the declaration was written on
    20                    the basis of the investigative file.
    21                    That says nothing about whether or not
    22                    Ms. Malloy also has personal knowledge
    23                    of some of those events.  It's talking
    24                    about that basis for the assertions in
    25                    the declaration.

                                                              58
     1
     2              Q     And to clarify, my questions were

                            Page 49

IC0225b.txt

 3    based on your personal knowledge, not knowledge

 4    derive from what's in the file.

 5                    MR. SCHWARTZ:  No.  Your

 6                    question was whether the basis for the

 7                    assertions in the declaration was

 8                    personal knowledge, which is not the

 9                    investigative file.  And I think we

10                    all understood that, and that was the

11                    answer.

12                    MR. LYONS:  Yes.

13                    MR. SCHWARTZ:  But that

14                    doesn't mean that she doesn't have

15                    personal knowledge about some of the

16                    events that are described in some of

17                    those paragraphs.  For example, take

18                    one that we know that she doesn't have

19                    personal knowledge of, something that

20                    happened before she was hired.  On

21                    August 28, 2006 the national call

22                    center was first contacted.

23                        The basis for putting that in

24                    the declaration, what you've heard,

25                    was a review of the investigative

                                                    59

 1

 2                    file.  That doesn't mean, however,

 3                    that she doesn't also have personal

 4                    knowledge of the August 28, 2006 call.

 5                    That just means that wasn't the basis

 6                    for including it as an assertion in

 7                    the declaration.  Do you understand

                    Page 50

IC0225b.txt

8                      that now?

9                      MR. LYONS:  No.

10           Q    Do you have personal knowledge of

11     the August 28th call?

12          A    As he said, let's use an example of

13    one that we all know Ms. Malloy does not have

14    personal knowledge of.

15                    MR. SCHWARTZ:  Because ones

16                    that she actually does have personal

17                    knowledge of, that's all going to be

18                    privileged.  So the declaration was

19                    specifically drafted so as not to rely

20                    on that privileged information.

21                    MR. LYONS:   My question were

22                    what is your personal knowledge.  If

23                    you believe your revelation of your

24                    personal knowledge is going to be

25                    privileged, then you make a note of

60

1

2                    privilege and instruct your witness

3                    not to answer.

4                    MR. SCHWARTZ:  That wasn't

5                    your question.

6                    THE WITNESS:  I think the

7                    record speaks for itself.

8                    MR. LYONS:  I think the

9                    question speaks for itself, too.

10                 MR. SCHWARTZ:  I think it

11                 speaks for two different things.

Page 51

IC0225b.txt

12                  THE WITNESS:  Well, I answered

13            the question, and I think the

14            objections were made.

15        Q    Let's turn to the proof of claim

16   that was filed, which was Exhibit S to your

17   declaration.  In that proof of claim, it states

18   debt was incurred May 21, 2004.

19            What's the basis for the EEOC's

20   assertion that Delphi's debt to it was incurred

21   May 21, 2004?

22        A    I don't recall.  It had to be

23   something in the investigative file, but I don't

24   recall as I sit here.

25        Q    As long as we have Exhibit S in


                                                    61

1

2   front of us, that's your signature?

3        A    Yes, it is.

4        Q    And that's the proof of claim that

5   you recall being filed?

6        A    That I recall filing, yes.

7        Q    From the time Mr. Straughter his

8   charge of discrimination through the date the EEOC

9   filed its proofs of claim, what new facts came to

10   the EEOC's attention regarding the alleged policy

11   that violated the ADA?

12                  MR. SCHWARTZ:  Objection.

13            Privileged.  I mean other than facts

14            that Delphi itself produced back to

15            the EEOC or that have been disclosed

16            in discovery and enforcement

                        Page 52

IC0225b.txt

17          proceedings in the Western District of
18          New York.
19     Q    What is the basis for the EEOC's
20  assertion that it acted with excusable neglect in
21  filing proofs of claim after the Delphi bar date?
22               MR. SCHWARTZ:  Objection.
23               THE WITNESS:  I believe the
24          basis for our assertion is set forth
25          in the memorandum of law in our

                                                    62
1
2          position to Delphi's motion.
3     Q    Any other bases not set forth in the
4  memorandum?
5               MR. SCHWARTZ:  She's only a
6          person.  She's not a 30(b)(6) witness
7          testifying on behalf of the EEOC.
8               MR. LYONS:  Wait a second.
9          You're to declare who's testifying in
10          support of excusable neglect?
11               MR. SCHWARTZ:  Sure.
12     Q    So, again, are there any other bases
13  of excusable neglect, other than in your
14  memorandum that the EEOC filed of which you are
15  aware?
16     A    I think the memorandum covers it,
17  including the fact that Mr. Straughter did not
18  even come to the EEOC.  I believe it was after the
19  bar date already at that time, and his claim in
20  any event is not a prepetition claim.

                        Page 53

IC0225b.txt

21          A     I want to correct something as far

22     as personal knowledge here.

23          Q     Did I want to?

24          A     I did, yes.  I do also have personal

25     knowledge of the contents of the EEOC's regional

                                                              63

 1

 2     attorneys' manual.  I have read it.

 3          Q     Okay.  Thank you.  Generally

 4     speaking, for an employee to recover front or back

 5     pay, does the employee have to be terminated by

 6     some wrongful act of the employee?

 7                    MR. SCHWARTZ:  Objection to

 8                the form.

 9                    THE WITNESS:  No.

10          Q     What other instances can they get

11     front and back pay?

12          A     Someone could be paid a lower rate,

13     for example, than they should be being paid.

14          Q     Any other basis to get front and

15     back pay?

16          A     You're asking for my legal opinion.

17                    MR. SCHWARTZ:  Objection.  I

18                will send the research on the ADA.

19                They could potential recover lost

20                wages for wonderful termination,

21                failure to get a promotion or other

22                pay grade.  If someone, for example,

23                was not credited for sick leave, those

24                days might be recoverable.  There's

25                all sorts of things that are

                        Page 54

IC0225b.txt

                                                                        64
    1
    2              potentially recoverable.
    3         Q      Other than the list mentioned by
    4    counsel, is there any other basis to get front and
    5    back pay, to your knowledge?
    6         A      If someone was suspended without
    7    pay, for example.
    8         Q      Any other basis to get front and
    9    back pay?
   10         A      I would have to research it.  That's
   11    what I can think of sitting here right now.
   12    Constructive discharge.
   13         Q      Are you aware whether any employee
   14    suffered any of the litany of consequences based
   15    upon Delphi's alleged policy to require medical
   16    release forms referenced in the EEOC complaint?
   17         A      Stanley Straughter.
   18         Q      Other than Mr. Straughter?
   19              MR. SCHWARTZ:  Objection.
   20              It's privileged, other than the three
   21              individuals that Delphi disclosed.
   22              MR. LYONS:  Just so it's
   23              clear, you're instructing privilege
   24              with respect to anybody other than
   25              Straughter or the three employees that


                                                                        65
    1
    2              Delphi disclosed?

                          Page 55

                            IC0225b.txt
3                 MR. SCHWARTZ:  Correct.
4                 THE WITNESS:  But I think I
5             can say that -- I'm sorry.  I can't.
6             We're in discovery in the federal
7             court action.
8                 MR. SCHWARTZ:  Yes, the
9             investigation is ongoing, but --
10                THE WITNESS:  I've provided my
11            initial disclosures to Delphi.
12                MR. SCHWARTZ:  That's okay.
13       Q    But I'm just clarifying you're
14   refusing to answer the question.  Let me rephrase
15   that.
16                MR. LYONS:  You're instructing
17            the witness not to identify other
18            Delphi employees suffering the adverse
19            acts from Delphi's alleged medical
20            release form policy based upon the
21            three privileges?
22                MR. SCHWARTZ:  I don't think I
23            can assert deliberative process on
24            this one, but work product and
25            attorney-client, yes.  And I'll say


                                                    66
1
2             also I think in a very real sense, all
3             Delphi employees who are subject to
4             that illegal policy are harmed by it.
5             Even those that comply with it are
6             harmed by it.
7                 THE WITNESS:  That reflects
                        Page 56

IC0225b.txt

```
 8                   our position.
 9                        MR. LYONS:  I think we had a
10                   clear answer, but I'm not sure.
11                        MR. SCHWARTZ:  We will not
12                   disclose with specificity Delphi
13                   employees, other than Mr. Straughter
14                   and the three employees Delphi
15                   disclosed back to the EEOC that were
16                   harmed by the policies.
17                        MR. LYONS:  And when you mean
18                   disclose with specificity, you won't
19                   identify?
20                        MR. SCHWARTZ:  I won't give
21                   you their names, correct.
22        Q     Do such employees exist?
23        A     I can't answer that question.
24   That's information that's within Delphi's control.
25        Q     Well, to the EEOC's knowledge, do
```

                                                        67

```
 1
 2   any employees, not by name, but do any other
 3   Delphi employees, other than Mr. Straughter or the
 4   three disclosed in Delphi's information statement,
 5   exist that suffered harm as a result of Delphi's
 6   alleged illegal policy?
 7        A     I have every reason to believe that
 8   Delphi has subjected numerous employees to this
 9   illegal policy, so, yes, those employees exist.
10        Q     Well, explain this every reason?
11        A     Delphi indicated in the
```

IC0225b.txt

12    investigation and papers that you have in front of

13    you that it subjects every employee who is out

14    sick to this illegal inquiry.

15         Q    And have employees suffered harm as

16    a result of this allegedly illegal policy, in the

17    EEOC's view?

18         A    Yes.

19         Q    Has the EEOC quantified that harm on

20    an individual-by-individual basis?

21                   MR. SCHWARTZ:  Objection to

22              the form.

23                   THE WITNESS:  We have an

24              obligation under Rule 26 of the

25              Federal Rules of Civil Procedure to


                                                        68

1

2              disclose to Delphi individuals with

3              knowledge of the claim in this case

4              and calculation of their damages.  We

5              have satisfied our obligations under

6              that rule.

7         Q    So --

8         A    We have an ongoing obligation,

9    however.

10         Q    So all of EEOC's information on

11    individual employees who suffered harm is

12    reflected in the Rule 26 disclosures?

13         A    We haven't had discovery in that

14    case yet, so --

15         Q    So the EEOC has made no disclosures

16    to date?

                    Page 58

IC0225b.txt

17          A     We have made Rule 26 disclosures,

18    yes.

19          Q     And those disclosures have

20    identified the universe of employees who have

21    suffered harm as a result of Delphi's allegedly

22    illegal policies?

23          A     Oh, no, I certainly wouldn't say

24    that.

25          Q     Then I'm not following.



                                                    69

  1

  2          A     We don't have access to that

  3    universe.

  4          Q     That's my question.  To the EEOC's

  5    knowledge -- again, I preface my question to the

  6    EEOC's knowledge.  The EEOC has disclosed

  7    employees who the EEOC is aware may have suffered

  8    damages as a result of Delphi's illegal policies?

  9          A     Yes.

 10          Q     The EEOC hasn't failed to disclose

 11    someone who the EEOC is aware of who has suffered

 12    harm as a result of Delphi's illegal policies?

 13          A     No.

 14                    MR. LYONS:  I think I'm done.

 15                    (Whereupon, the deposition

 16               concluded at 9:27 p.m.)

 17

 18

 19

 20


                        Page 59

IC0225b.txt
21
22
23
24
25

70

 1
 2                    C A P T I O N
 3
 4    The Deposition of MARGARET MALLOY, taken in the
 5    matter, on the date, and at the time and place set
 6    out on the title page hereof.
 7
 8
 9    It was requested that the deposition be taken by
10    the reporter and that same be reduced to
11    typewritten form.
12
13
14    It was agreed by and between counsel and the
15    parties that the Deponent will read and sign the
16    transcript of said deposition.
17
18
19
20
21
22
23
24
25

                         Page 60

IC0225b.txt

71

```
 1
 2                    C E R T I F I C A T E
 3
 4     STATE OF_____:
 5     COUNTY/CITY OF_____:
 6
 7     Before me, this day, personally appeared
 8     MARGARET MALLOY, who, being duly sworn, states
 9     that the foregoing transcript of his/her
10     Deposition, taken in the matter, on the date, and
11     at the time and place set out on the title page
12     hereof, constitutes a true and accurate transcript
13     of said deposition.
14
15
16                    _____
17                    MARGARET MALLOY
18
19     SUBSCRIBED and SWORN to before me this_____
20     day of _____, 2007, in the
21     jurisdiction aforesaid.
22
23
24     _____      _____
25     My Commission Expires                Notary Public
```

72

```
 1
 2                    DEPOSITION ERRATA SHEET
```

Page 61

IC0225b.txt

3   RE:
    FILE NO.
4   CASE CAPTION:     IN RE:  DELPHI

5   DEPONENT:  MARGARET MALLOY
    DEPOSITION DATE: FEBRUARY 25, 2008
6
    To the Reporter:
7   I have read the entire transcript of my Deposition
    taken in the captioned matter or the same has been
8   read to me.  I request for the following changes
    be entered upon the record for the reasons
9   indicated.
    I have signed my name to the Errata Sheet and the
10  appropriate Certificate and authorize you to
    attach both to the original transcript.
11  _____
    _____
12  _____
    _____
13  _____
    _____
14  _____
    _____
15  _____
    _____
16  _____
    _____
17  _____
    _____
18  _____
    _____
19  _____
    _____
20  _____
    _____
21  _____
    _____
22  _____
    _____
23  _____
    _____
24  SIGNATURE:_____ DATE:_____

25          MARGARET MALLOY

                                          73
1

2                    I N D E X

3

4                  E X H I B I T S

5
    Malloy            Description              Page
6   For Ident.

7   1      Declaration of Margaret Malloy.      8
                Page 62

IC0225b.txt

```
 8   2      Exhibits to declaration of Margaret        8
            Malloy.
 9
     3      Declaration of Margaret Malloy.            35
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                                                        74
```
 1

 2                  C E R T I F I C A T E

 3   STATE OF NEW YORK   )

 4                       ) ss.

 5   COUNTY OF NEW YORK )

 6                  I, I. IRIS COOPER, a Shorthand

 7                  (Stenotype) Reporter and Notary Public

 8                  of the State of New York, do hereby

 9                  certify that the foregoing Deposition,

10                  of the witness, MARGARET MALLOY, taken

11                  at the time and place aforesaid, is a
```

IC0225b.txt

12              true and correct transcription of my

13              shorthand notes.

14                      I further certify that I am

15              neither counsel for nor related to any

16              party to said action, nor in any wise

17              interested in the result or outcome

18              thereof.

19                      IN WITNESS WHEREOF, I have

20              hereunto set my hand this 27th day of

21              February, 2008.

22

23                      _____

24                      I. Iris Cooper

25