**Hearing Date And Time: March 19, 2008 at 10:00 a.m.**
**Objection Deadline: March 12, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :
    In re                         :    Chapter 11
                              :
DELPHI CORPORATION, et al.,   :    Case No. 05-44481 (RDD)
                              :
                              :    (Jointly Administered)
            Debtors.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION PURSUANT TO FED. R. BANKR. P. 7004(a) AND
9006(b)(1) AND FED. R. CIV. P. 4(m) TO EXTEND DEADLINE TO
SERVE PROCESS FOR AVOIDANCE ACTIONS FILED IN CONNECTION
<u>WITH PRESERVATION OF ESTATE CLAIMS PROCEDURES ORDER</u>

("EXTENSION OF AVOIDANCE ACTION SERVICE DEADLINE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Motion Pursuant To Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation Of Estate Claims Procedures Order (Docket No. 9105) (the "Motion"), and respectfully represent as follows:

Background

A.   The Chapter 11 Filings

1.   On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

2.   No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.   On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession  (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

2

respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389). On January 25, 2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order"), which became a final order on February 4, 2008.

        4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

        5.      The statutory predicates for the relief requested herein are rules 7004 and 9004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 4(m) of the Federal Rules of Civil Procedure.

B.      <u>Current Business Operations Of The Debtors</u>

        6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

---

[1]    The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007. On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007. The Spanish court approved the social plan on July 31, 2007. The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

7.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.    Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

          10.       The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

          11.       In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.       <u>The Debtors' Transformation Plan</u>

          12.       On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements to create a competitive arena in which to conduct business; second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company; third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus; fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable solution to their current pension situation.

E.   Confirmation Of The Debtors' Plan Of Reorganization

13.   The confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases. The Global Settlement Agreement and the Master Restructuring Agreement provide for a comprehensive settlement with GM, and both agreements were approved by this Court in the Confirmation Order. With the Plan confirmed, the Debtors are focusing their efforts on satisfying the conditions for the Plan to become effective and allow them to emerge from chapter 11. The Debtors anticipate having the Plan become effective as soon as reasonably practicable.

14.   Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

F.   The Establishment Of Procedures to Preserve Estate Claims

15.   Before the confirmation of the Debtors' Plan, this Court entered on August 16, 2007 that certain Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), And 9018 (i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, And (iii) Establishing

Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, Or 553 ("Preservation Of Estate Claims Procedures Order") (Docket No. 9105).

        16.      The purpose of the Preservation Of Estate Claims Procedures Order was two-fold: on the one hand, it permitted the Debtors to preserve their right to pursue (or abandon) certain avoidance actions before the then-impending expiration of the two-year statute of limitations to file such actions; on the other hand, it established procedures to avoid having to force all potential defendants to retain counsel and defend against the adversary proceedings when, in fact, the Debtors anticipated that most of them would be resolved upon the Debtors' emergence from chapter 11 and thus never pursued. To that end, the Preservation Of Estate Claims Procedures Order (i) allowed the Debtors to file adversary proceeding complaints under seal, (ii) directed the Clerk of Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of Court of their intent to prosecute such actions, (iii) stayed each adversary action unless and until the Debtors make service of process on the respective defendants, and (iv) extended the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31, 2008, which was less than 60 days beyond the 120-day deadline, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m). Such relief was intended to allow the Debtors to preserve potentially valuable assets without disrupting the Plan process or business relationships or prejudicing the rights of any defendants.

        17.      In accordance with the Preservation Of Estate Claims Procedures Order, the Debtors commenced 742 adversary proceedings (the "Adversary Proceedings") by filing complaints under seal. On January 25, 2008, the Court entered the Confirmation Order. Under

the Plan, the Debtors will not retain any of the causes of action asserted in the Adversary Proceedings except those specifically listed on Exhibit 7.24 to the Plan.[4]

### Relief Requested

18.     By this Motion, the Debtors request entry of an order under Bankruptcy Rule 9006(b)(1) and Federal Rule Of Civil Procedure 4(m), made applicable by Bankruptcy Rule 7004(a), to extend the deadline by which the Debtors would be required to serve a summons and complaint upon each defendant under the Preservation Of Estate Claims Procedures Order.  Specifically, the Debtors request that the existing March 31, 2008 service deadline set forth in the Preservation Of Estate Claims Procedures Order be extended by two months to May 31, 2008.  The Debtors accordingly request that the Court enter the proposed Extension of Avoidance Action Service Deadline Order, a copy of which is annexed hereto as Exhibit A.

### Basis For Relief

19.     The Debtors intend to emerge from chapter 11 as soon as reasonably practicable.  Under the Preservation Of Estate Claims Procedures Order, however, the Debtors' current deadline to serve the summons and complaint on every defendant in the Adversary Proceedings is March 31, 2008.  To meet the March 31, 2008 deadline for each of the defendants, the Debtors would first have to request that the Clerk of Court issue in the coming weeks summonses for each of the 742 Adversary Proceedings to allow enough time for the summonses to be issued and subsequently served with the complaints by the March 31, 2008 deadline.

---

[4]  Of the five categories of claims listed by the Debtors on Exhibit 7.24 to the Plan, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries are subject to the Preservation Of Estate Claims Procedures Order.  (See Exhibit 7.24 to the Plan (Docket No. 11608).)

20. Contemplating that further extensions may be necessary to achieve the goals of the Preservation Of Estate Claims Procedures Order, that order expressly provided that the Debtors' previous extension of the deadline for services of process was "without prejudice [to the Debtors' ability] to seek further extensions" if appropriate. (See Preservation Of Estate Claims Procedures Order ¶ 8.)

21. The Debtors now believe that the short two-month extension of the Fed. R. Civ. P. 4(m) deadline that is requested in this Motion is appropriate, and that there is good cause for such an extension. Such an extension would enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations. Moreover, the requested limited extension would reduce the administrative and economic burdens of the Adversary Proceedings on the Debtors, the Court, the Clerk of Court, and the potential defendants. Specifically, the Debtors believe that the resources that they, the Court, the Clerk of Court, and the defendants would need to expend on issuing and serving 742 summonses and complaints in the Adversary Proceedings at this time—and the potential need thereafter to prosecute and defend such adversary proceedings—would not be in the best interests of the Debtors' estates, the Debtors' stakeholders, and other parties-in-interest because most of the Adversary Proceedings will not be prosecuted once the Plan becomes effective. The Debtors submit that these reasons comprise good cause for the requested extension.

<u>Applicable Authority</u>

22. The Bankruptcy Rules and Federal Rules of Civil Procedure grant this Court discretion to adopt and implement guidelines which will aid in the administration of Adversary Proceedings, including discretion to grant the proposed extension of the service of

process deadline.  See In re Sheehan, 253 F.3d 507, 511 (9th Cir. 2001) ("The time for service in an adversary proceeding may be extended under two different rules: Rule 4(m) of the Federal Rules of Civil Procedure, and Bankruptcy Rule 9006(b).").

23.     Bankruptcy Rule 9006(b)(1) provides for the enlargement of time to perform acts required under the Bankruptcy Rules: "[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . ."  Fed. R. Bankr. P. 9006(b)(1).

24.     Moreover, Fed. R. Civil P. 4(m), made applicable here by Bankruptcy Rule 7004(a), requires courts, upon a showing of good cause, to extend the period for service of process after the filing of a complaint.  See Bank of Cape Verde v. Bronson, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) (good cause existed when future events would have likely "obviated the need to serve the [] complaint" and when plaintiff requested extension before Fed. R. Civ. P. 4(m) deadline expired).  Even absent good cause, this Court has discretion to extend the 120-day service period.  See Mejia v. Castle Hotel Inc., 164 F.R.D. 343, 345 (S.D.N.Y. 1996).

25.     The Debtors accordingly request that the Court enter the proposed order, annexed hereto as Exhibit A, which would extend by two months (i.e., from March 31, 2008 to May 31, 2008) the Debtors' Fed. R. Civ. P. 4(m) deadline to serve each defendant in the Adversary Proceedings commenced in connection with the Preservation Of Estate Claims

Procedures Order with a summons and a copy of the complaint, without prejudice to the Debtors' right to seek further extensions of the deadline.[5]

## Notice Of Motion

26.    Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

27.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

---

[5]    Similar relief was granted in In re Ames Dep't Stores, Inc., No. 01-42217 (REG) (Bankr. S.D.N.Y. Feb. 3, 2004).  (See Order Extending Time For Service Of Process With Respect To Certain Preference Actions (Docket No. 2524).)

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
February 28, 2008

                    SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 9331)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

- and -

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession