WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore (JCS-6031)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)

ATTORNEYS FOR A-D ACQUISITION HOLDINGS, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| Delphi Corporation, et al. | ) Case No. 05-44481 |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

## EMERGENCY MOTION OF A-D ACQUISITION HOLDINGS, LLC FOR (I) A CONTINUANCE AND (II) AN ORDER VACATING THE ORDER TO SHOW CAUSE

A-D Acquisition Holdings, LLC ("ADAH"), by its counsel, White & Case LLP,

files this Emergency Motion of A-D Acquisition Holdings, LLC for (I) a Continuance and (II) an

Order Vacating the Order to Show Cause (the "Motion") pursuant to Rule 9006(b)(1) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Court's Supplemental

Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014

Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative

Procedures (the "Supplemental Case Management Order"), for entry of an order continuing the

hearing on the Expedited Motion Under 11 U.S.C. § 1142(b) and Fed. R. Bankr. P. 3020(d) for

Implementation of Debtors' Confirmed Plan of Reorganization (the "1142 Motion") [Docket

Entry No. 12978] of Delphi Corporation ("Delphi" and, together with its affiliated debtors and

debtors-in-possession, the "Debtors") and vacating the Court's Order to Show Cause Why

Debtors' Expedited Motion Under 11 U.S.C. § 1142(b) and Fed. R. Bankr. P. 3020(d) for

Implementation of Debtors' Confirmed Plan of Reorganization Should Not Be Granted (the

"Order to Show Cause") [Docket Entry No. 12977] and, in support thereof, respectfully

represents as follows:

## PRELIMINARY STATEMENT

1.      Ever since the Debtors first raised the possibility that they would seek to

have the Court address the issues raised in the 1142 Motion on one or two days' formal notice,

we have been asking "why?" We have asked counsel in telephone calls; we have asked the

client in correspondence. We have, however, yet to receive a response, other than that the

Debtors are on a tight timeline to reach an effective date before April 4, 2008. While we do not

dispute the timeline, we simply do not understand how this proceeding fits on it. In the one

document that is required to set forth a detailed explanation for expediting—the affidavit of

Kayalyn Marafioti, dated March 5, 2008—there is no answer other than that the Debtors must

file a registration statement with the SEC by Monday, March 10, 2008. No explanation

whatsoever is given as to why a judicial ruling is needed before that date, or why the registration

statement cannot simply be filed with a disclosure of the existence of a pending dispute. Nor is

there any discussion of the fact, discussed in our contemporaneous opposition to the 1142

Motion, that there is no specific performance remedy for a breach of the EPCA. As such, there

is no reason why the parties need to litigate before the scheduled closing rather than focusing

their efforts on consensually resolving the path to emergence. That the Debtors want a quick

litigated answer does not justify the extraordinary schedule established in the Order to Show

Cause. Thus, we respectfully request that the Court vacate the Order to Show Cause and

establish a hearing on the 1142 Motion on a normal ten-day schedule.

2

## FACTUAL BACKGROUND

2.       On October 8 and 14, 2005, the Debtors filed voluntary petitions in the

Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as

then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and

manage their properties as debtors-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code. The Court has ordered joint administration of the Debtors' chapter 11 cases

(the "Cases").

3.       No trustee or examiner has been appointed in the Cases. On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S.

Trustee appointed an official committee of equity holders.

4.       The Court confirmed the Joint Plan of Reorganization of Delphi

Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Plan") on January

25, 2008. The order confirming the Plan became final on February 4, 2008.

5.       Pursuant to the terms and subject to the conditions of that certain Equity

Purchase and Commitment Agreement, dated as of August 3, 2007, as amended on December 10,

2007, among ADAH, Harbinger Del-Auto Investment Company, Ltd. ("Del-Auto"), Merrill

Lynch, Peirce, Fenner & Smith Incorporated ("Merrill Lynch"), UBS Securities LLC ("UBS"),

Goldman Sachs & Co. ("GS") and Pardus DPH Holding LLC ("Pardus" and, together with ADAH,

Del-Auto, Merrill Lynch, UBS, and GS, the "Plan Investors"), and Delphi (the "EPCA"), the Plan

Investors may invest up to $2.55 billion of equity financing in reorganized Delphi.

6.       On February 28, 2008, the Debtors' counsel transmitted a draft of the 1142

Motion (the "Draft Motion") on an outside "attorneys' eyes only" basis to counsel to ADAH. In

the Draft Motion, the Debtors seek entry of an order pursuant to 11 U.S.C. § 1142(b) and

Bankruptcy Rule 3020(d) implementing the Plan by:

> (i) finding that the terms of the Debtors' proposed exit financing comply with the Plan and the EPCA, . . . and, if consummated, would satisfy the conditions to the effectiveness of the Plan and EPCA, respectively, . . . (ii) directing the Plan Investors, and each of them, in accordance with section 6(d) of the EPCA, to use their reasonable best efforts to take all actions, and do all things, reasonably necessary, proper, or advisable on their part under the EPCA and applicable laws to cooperate with Delphi and to consummate and make effective all transactions contemplated by the EPCA and the Plan, . . . and (iii) conducting, pursuant to sections 105 and 1142(b) of the Bankruptcy Code, periodic Chambers conferences to receive reports from the Debtors, the [official committees], the Plan investors, and [General Motors Corporation ("GM")] regarding their reasonable best efforts to consummate the Plan and related matters.

1142 Motion ¶ 46.

       7.     The next day, February 29, 2008, ADAH sent a letter reiterating its lack of

consent to proceeding with the 1142 Motion on an expedited basis (first contained in a February

27, 2008 letter to Debtors' counsel) and enclosing draft discovery which would be served if the

1142 Motion was filed. See February 29, 2008 Letter from J. Christopher Shore to Albert L.

Hogan, III, at 1-2, a true and correct copy of which is attached hereto as **Exhibit A**. Counsel to

ADAH also sought authority to disseminate the Draft Motion to ADAH's principals. Id.

       8.     On the evening of March 3, 2008, Debtors' counsel noted its refusal to

produce expedited discovery and agreed to provide the Draft Motion to the Plan Investors only to

the extent that each Plan Investor signed a detailed confidentiality order.

       9.     During the morning of March 4, 2008, counsel to ADAH sent an email to

counsel to the Debtors and initiated a telephone conference again noting that ADAH wanted an

explanation as to why an expedited hearing on the 1142 Motion was necessary and requesting

access to any witness on that topic. Later in the morning on March 4, 2008, at the Debtors'

4

request, the Court held an "off the record" chambers conference. Simultaneously, counsel to ADAH provided to Debtors' counsel a mark-up of March 3, 2008 draft confidentiality order. In the late afternoon of March 4, 2008, Delphi commented on ADAH's re-draft and agreement was reached. ADAH almost immediately executed the confidentiality order, and, at approximately 5:15 p.m., ADAH received the Draft Motion.

          10.    At approximately 2:30 p.m. on March 5, 2008, Debtors' counsel solicited the Plan Investors' views as to scheduling of the 1142 Motion, including proposed briefing. At approximately 3:10 p.m., the undersigned requested that responsive papers be filed by 8:00 a.m. on March 7, 2008, with the hearing to be held at Noon on that day. At approximately 5:00 p.m., the Debtors filed the 1142 Motion and sought an order to show cause why the Court should not consider the 1142 Motion on an expedited basis at a hearing on the merits to be held on March 7, 2008, commencing at 10:00 a.m. The affidavit of Kayalyn Marafioti did not mention the Plan Investors' proposed briefing schedule or the request to move back the time of the hearing. The Court entered the Order to Show Cause on March 5, 2008, setting the hearing on the 1142 Motion for March 7, 2008, at 10:00 a.m., and the deadline for the filing of responses to the 1142 Motion for March 6, 2008, at 5:00 p.m.

          11.    ADAH opposes the relief sought in the 1142 Motion and has herewith filed a written objection to the 1142 Motion.

## JURISDICTION AND VENUE

          12.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED

13.     For the reasons set forth herein, ADAH moves the Court for entry of an

order continuing the hearing on the 1142 Motion, vacating the Order to Show Cause and

awarding ADAH such other and further relief as the Court deems appropriate. The predicates for

the relief sought herein are section 105(a) of the Bankruptcy Code, Bankruptcy Rule 9006, and

the Supplemental Case Management Order.

## BASIS FOR RELIEF

**I.      The Debtors Have Not Demonstrated "Cause" Exists To Expedite
This Litigation Under Bankruptcy Rule 9006(c)(1) And Have Not
Complied With The Supplemental Case Management Order.**

14.     Pursuant to paragraphs 10 and 11 of the Supplemental Case Management

Order, in the absence of agreement among the movant, the Debtors and the Creditors'

Committee, or direction by the Court, motions, other than motions for relief from the automatic

stay, must be filed and served at least twenty days prior to the next available omnibus hearing

date. See Supplemental Case Management Order ¶¶ 10 & 11.[1]

15.     Paragraph 11.C of the Supplemental Case Management Order also

provides that, "[a]ny Motion scheduled to be heard [on an expedited basis (A) with the

agreement of counsel to the Debtors and counsel to Creditors' Committee or (B) at the Court's

direction] must, as set forth in the Local Rules, state with specificity the reason why an

emergency exists or why there is a need for expedited treatment . . . ." Supplemental Case

Management Order ¶ 11.C (emphasis added).

16.     Similarly, Bankruptcy Rule 9006(c)(1) provides the court discretion to reduce

notice periods providing that "[e]xcept as provided in paragraph (2) of this subdivision, when an act

---

[1]     ADAH notes that the twenty-day notice period established by the Supplemental Case Management Order is
a departure from Local Rule 9006-1(b), which provides that, except with respect to discovery motions brought under
Bankruptcy Rules 7026 through 7037, "[u]nless the Court orders otherwise, all other motion papers shall be served
at least 10 days before the return date." Local Rule 9006-1(b).

is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court <u>for cause shown</u> may in its discretion with or without motion or notice order the period reduced." Fed. R. Bankr. P. 9006(c)(1) (emphasis added).

17.    Case law provides guidance as to when and how bankruptcy courts should exercise the discretion afforded by Bankruptcy Rule 9006(c)(1). Bankruptcy courts deciding whether or not to shorten notice periods pursuant to Bankruptcy Rule 9006(c)(1) "must consider, primarily, the prejudice that potentially would result to parties entitled to notice if a reduction is effected, and weigh this against the reasons for shortening the period." <u>In re Grant Broad. of Phila.</u>, 71 B.R. 390, 397 (Bankr. E.D. Pa. 1987) (concluding that argument that court improperly shortened twenty-day notice period, which the Bankruptcy Rules ordinarily require before a court may approve a Bankruptcy Rule 9019 settlement, was not made with the good faith belief that there had been any resulting prejudice). At least one bankruptcy court in New York has specifically stated that "[t]he flexibility written into Bankruptcy Rule 9006 to reduce the time for notice <u>should be sparingly invoked and may be invoked only for cause shown</u>." <u>In re Sandra Cotton, Inc.</u>, 65 B.R. 153, 156-57 (W.D.N.Y. 1986) (holding that bankruptcy court abused its discretion in shortening notice period for motion to convert case from chapter 11 to chapter 7 because no unusual circumstances were present to justify shortening notice period but declining to reverse order converting case on grounds that bankruptcy court's order improperly shortening notice period was harmless error) (emphasis added).[2]

---

[2]    Outside of bankruptcy, the Second Circuit has cautioned against shortening notice periods in a manner that compromises a litigant's opportunity to fully prepare and respond. <u>Gutwein v. Roche Labs. Div. of Hoffman La Roche, Inc.</u>, 739 F.2d 93, 93-94 (2d Cir. 1984) (holding that "where a party claims an inability to prepare adequate opposition to a motion for summary judgment within a shortened response period, the non-moving party must be afforded the full response period mandated by Rule 56(c), absent reason to believe that that claim is demonstrably frivolous" and reversing district court's summary judgment order because plaintiff was only given five days to respond to motion for summary judgment rather than the ten required by Rule 56(c)).

Although the Federal Rules of Civil Procedure do not have a corollary to Bankruptcy Rule 9006(c), the Second Circuit in <u>Gutwein</u> observed that reviewing courts are not barred from upholding a lower court's decision to

18.    Given the foregoing, discretion to shorten response deadlines should only be "sparingly invoked." Sandra Cotton, 65 B.R. at 156.  Here, the Debtors have made no showing of "cause," as required by Bankruptcy Rule 9006(c)(1) and the Supplemental Case Management Order, to expedite so severely the hearing on, and the litigation with respect to, the 1142 Motion.  Instead, the Debtors have merely asserted through the Affidavit of Kayalyn A. Marafioti in Support of Application for Expedited Hearing on Debtors' Motion Under 11 U.S.C. § 1142(b) and Fed. R. Bankr. P. 3020(d) for Implementation of Debtors' Confirmed Plan (the "Marafioti Affidavit") that "the Debtors must file a revised registration statement with the SEC on or about March 10, 2008 if the Rights Offerings are to conclude with sufficient time to achieve an April 4 EPCA closing and Plan effective date."  Marafioti Affidavit ¶ 5.  No explanation is offered by Debtors' counsel as to why the revised registration statement requires a disclosure of a ruling of the Court as opposed to the existence of a dispute.  Nor is there any explanation as to why any legal disputes need to be resolved prior to the projected effective date of the Plan.

19.    This kind of ipse dixit statement of counsel does not constitute evidence establishing "cause" within the meaning of Bankruptcy Rule 9006(c)(1).[3] See Mahoney v.

---

shorten a notice period mandated by the Federal Rules of Civil Procedure. Gutwein, 739 F.2d at 95.  Specifically, the harmless error rule may give an appellate court some latitude to affirm a decision of a lower court made after departing from the "strict adherence to the ten-day rule" for summary judgment preferred by the Second Circuit. Id. The Second Circuit stated, however, that the use of the harmless error rule in such a manner "must be limited to extraordinary cases in which the ten day notice is impractical, and it is absolutely clear that the non-moving party suffered no prejudice from a shortening of the period." Id.  This is because the non-moving party has the burden to produce "and the need for time to marshal and prepare documents indicating the presence of a disputed factual issue." Id.  In reversing the order granting the defendant summary judgment, the Second Circuit pointed out that the observance of a religious holiday prevented the plaintiff from consulting with his attorney during two of the five notice days and that the attorney was unable in such a short amount of time to obtain the necessary affidavits. Id. at 96.  The Gutwein court also observed that the fact that the parties were supposed to go to trial on the day that the summary judgment motion was heard was not a reason to shorten the notice period because the tasks associated with opposing a motion for summary judgment are different from tasks associated with preparation for trial. Id.

[3]    In the event the Court requests that the Debtors demonstrate further "cause" to expedite this litigation, ADAH submits that the Debtors should be precluded from introducing any evidence other than the EPCA itself. Despite repeated requests by counsel to ADAH to counsel to the Debtors to identify any witness(es) the Debtors would offer in support of their request to expedite this litigation, the Debtors have failed to date to do so.

Wash. Mut., Inc. (In re Mahoney), 368 B.R. 579, 594 n.7 (Bankr. W.D. Tex. 2007) ("[C]ounsel

for a party is not competent to testify as a fact witness, nor would he be competent to serve as an

expert witness on this issue."). Where a bankruptcy court does not make findings as to "cause"

and where there is no evidence to demonstrate "cause," a bankruptcy court errs in exercising its

discretion to reduce notice periods. See S. Willow Creek Farm v. S. Willow Creek, L.L.C. (In re

S. Willow Creek Farm), 251 B.R. 441, 1999 WL 1244511, at *1 & *3 (B.A.P. 10th Cir. 1999)

(unpublished table decision) (holding that bankruptcy court abused its discretion in shortening

notice period for a hearing on dismissal of a chapter 12 petition from twenty days to three days

where bankruptcy court did not make a finding of "cause" and where appellees did not offer

evidence of an emergency, but instead merely alleged concern as to certain actions debtor might

take if the court did not hear the matter on an expedited basis).

        20.     Further, the Debtors were aware as early as February 6, 2008 that the Plan

Investors had serious doubts as to whether the proposed financing (in which GM would

participate) satisfies the conditions of the EPCA. See February 13, 2008 Letter from Thomas E

Lauria to John Wm. Butler, Jr., at 1-2, a true and correct copy of which is attached hereto as

**Exhibit B**. Despite the passing of four weeks, as the "Closing Date Outside Date" (as defined in

the EPCA) of March 31, 2008 (now April 5, 2008) approaches, the Debtors have asked the Court

to overlook their delay and drastically shorten the applicable notice period to the prejudice and

detriment of the Plan Investors.

        21.     Courts have routinely held that, for purposes of reducing notice periods,

"[c]ause is not shown when the cause for an expedited hearing is one of the movant's own making."

In re Villareal, 160 B.R. 786, 787 (Bankr. W.D. Tex. 1993) (denying debtors' motion to expedite the

hearing for sale of property where there would not have been an emergency if the debtors had filed

the motion to authorize the sale earlier); Official Comm. of Disputed Litig. Creditors v. McDonald

Inv., Inc., 42 B.R. 981, 987 (N.D. Tex. 1984) (concluding that bankruptcy court abused its discretion in shortening the notice period on debtor's application to spend funds to twenty hours where "[a]ny 'emergency' was brought on solely by the dalliance of debtors' counsel").

22.    In Villareal, a case analogous to the situation at hand, the bankruptcy court denied the chapter 13 debtors' motion to expedite the hearing on the sale of a piece of property where the debtors waited to file the motion to authorize the sale until more than one month after execution of the earnest money contract and until the day after the sale was scheduled to close. 160 B.R. at 787. According to the debtors' motion to expedite, an emergency hearing was necessary because the debtors' earnest money would expire if the closing did not occur within the next fifteen days. Id. The bankruptcy court found that the debtors' self-created emergency occasioned by their failure to file the motion to sell the property a month earlier did not satisfy the "cause" requirement of Bankruptcy Rule 9006(c)(1) and that the debtors had not presented any other grounds to justify the requested expedited hearing. Id.

23.    Here, the Debtors could have filed the 1142 Motion weeks ago without also having to ask the Court to compromise the notice periods afforded to the Plan Investors by the Supplemental Case Management Order. That the Debtors' chose not to file in order to seek potential settlement and avoid precipitating a formal dispute until the last minute was their business decision.

24.    For the foregoing reasons, the hearing on the 1142 Motion should be continued, and the Order to Show Cause should be vacated.

10

## II.    The Hearing On The 1142 Motion Should Be Continued
To Allow The Plan Investors Sufficient Time To Assist
<u>Counsel Further In Responding To The 1142 Motion.</u>

25.    Given that (i) counsel to ADAH was not permitted to discuss the specific allegations in the 1142 Motion with representatives of ADAH until the evening of March 4, 2008, and (ii) the "final" 1142 Motion was not filed until approximately 5:00 p.m. on March 5, 2008, the March 7, 2008 hearing on the 1142 Motion should be continued for at least one week to permit ADAH sufficient time to adequately prepare a response to the 1142 Motion.

26.    Due process requires a hearing on adequate notice with an opportunity for a meaningful response. <u>See Whitaker v. Baxter (In re Whitaker)</u>, 341 B.R. 336, 338 n.4 (Bankr. S.D. Ga. 2006) (notwithstanding a bankruptcy court's powers to reduce the notice requirement under Rule 9006(c), notice must be sufficient to provide due process to all interested parties); <u>Smith v. Wheeler Tech., Inc. (In re Wheeler Tech., Inc.)</u>, 139 B.R. 235, 240 (B.A.P. 9th Cir. 1992) ("The concept of due process is no less applicable in bankruptcy proceedings."). As the Supreme Court stated:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and <u>to afford them an opportunity to present their objections.</u> The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearances.

<u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950) (citations omitted) (emphasis added). The Supreme Court later explained that "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, <u>and permit adequate preparation for,</u> an impending 'hearing'." <u>Memphis Light, Gas & Water Div. v. Craft</u>, 436 U.S. 1, 14 (1978) (footnote omitted) (emphasis added). Thus, it is clear from Supreme Court precedent that due process requires a party in interest to have an opportunity to prepare and present their objections.

11

27.    Certainly, the relief requested in the 1142 Motion should not be taken lightly—hundreds of millions of dollars of the Plan Investors' property is at stake. See Reliable Elec. Co. v. Olson Constr. Co., 726 F.2d 620, 623 (10th Cir. 1984) (recognizing that even in bankruptcy, "[a] fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake"). Yet, despite these high stakes, ADAH has only received forty-eight hours to prepare its response and no opportunity to engage in discovery. Such a truncated time frame does not comport with due process. See, e.g., Wheeler Tech., 139 B.R. at 239-40 (noting that that "[b]asic notions of due process require that parties . . . be allowed a reasonable opportunity to respond[,]" and holding that expedited hearing that allowed the interested party only seven days to prepare its response did "not comport with the requirements of procedural due process"); 1488, Inc. v. Philsec Inv. Corp., 939 F.2d 1281, 1292 (5th Cir. 1991) (stating that due process demands that a party have an opportunity to prepare a response and "[p]roviding the defendant with an opportunity to mount a defense 'on the spot' does not comport with due process"); Owens-Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.), 759 F.2d 1440, 1450 (9th Cir. 1985) (cash collateral order deemed void on due process grounds where creditor received only one day notice of hearing and such short notice was insufficient to allow the creditor to adequately prepare for the hearing); In re Taylor, 334 B.R. 660, 662 (Bankr. D. Minn. 2005) (serving creditors with process five to eight days in advance of hearing was not sufficient time for creditors to take notice of the receipt of the motion, evaluate complicated statutory language and prepare a formal response); see also Stevenson v. Stevenson Assocs. (In re Stevenson Assocs., Inc.), 777 F.2d 415, 420-21 (8th Cir. 1985) (vacating and remanding bankruptcy court order where bankruptcy court acted "in substantial haste" by providing a party in interest only five days for preparation and presentation of a brief before the hearing, which was insufficient notice and opportunity to make the party's case).

12

## NOTICE

28.     Notice of the Motion was provided to (a) the U.S. Trustee, (b) counsel to the Debtors, (c) counsel to the Creditors' Committee, (d) counsel to the official committee of equity holders, (e) counsel to GM, (f) counsel for the agent under the Debtors' post-petition credit facility; and (g) counsel to the other Plan Investors. In light of the nature of the relief requested, ADAH submits that no other or further notice of the Motion need be given.

## NO PRIOR REQUEST

29.     No prior motion for the relief requested herein has been made by ADAH to this or any other court.

## MEMORANDUM OF LAW

30.     Because the legal points and authorities upon which the Motion relies are incorporated herein, ADAH respectfully requests that the requirement of service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

13

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, ADAH respectfully requests that the

Court enter an order continuing the hearing on the 1142 Motion and vacating the Order to Show

Cause and grant such other and further relief as the Court deems appropriate and just.

Dated: March 6, 2008
        New York, New York

By: /s/ Douglas P. Baumstein

WHITE & CASE LLP
J. Christopher Shore  (JCS-6031)
Douglas P. Baumstein (DB-1948)
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200

Thomas E Lauria (Admitted *Pro Hac Vice)*
Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
(305) 371-2700

ATTORNEYS FOR ADAH

14