# EXHIBIT 4

**From:** Hardin, Adlai [mailto:AHARDIN@skadden.com]
**Sent:** Wednesday, December 06, 2006 11:21 PM
**To:** TJanson@milbank.com; gbray@milbank.com; CBell@milbank.com; Bmintz@kayescholer.com; lfisher@kayescholer.com; Alm, Charles; Lauria, Thomas E.; Reiss, John; Hollander, Evan; Rotenstein, Jack; Dantzler, J. William; Raskin, Ken; Trimarchi, Peter; Milmed, Paul; Pryor, Gregory; Goldenberg, Avi
**Cc:** john.sheehan@delphi.com; Sherbin, David; Corcoran, Sean P; david.resnick@us.rothschild.com; william.shaw@us.rothschild.com; Eisenberg, Randall; Butler, Jr., John (Jack) Wm; Marafioti, Kayalyn; Cochran, Eric; Panagakis, George; Gibson, Marie; Saggese, Nick; Matz, Thomas; Furman, Erin; Stuart, Nathan
**Subject:** Equity Purchase and Commitment Agreement Mark-Up

As discussed, attached is a mark-up of the blackline 12/5/06 Delphi draft of the Equity Purchase and Commitment Agreement. The mark-up addresses a number of the issues discussed today but not all of them. The Agreement remains subject to further review by Delphi and its advisors.

Adlai S. Hardin III
Skadden, Arps, Slate,
    Meagher & Flom LLP
Four Times Square
New York, NY 10036
Main Tel.: (212) 735-3000
Direct Tel.: (212) 735-3849
Direct Fax: (917) 777-3849

-------------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you
that, unless otherwise expressly indicated, any federal tax advice contained
in this message was not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding tax-related penalties under the Internal
Revenue Code or applicable state or local tax law provisions or (ii)
promoting, marketing or recommending to another party any tax-related matters
addressed herein.

******************************************************
This e-mail and any attachments thereto, is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or
confidential information. If you are not the intended recipient of this email,
you are hereby notified any dissemination, distribution or copying of
this email, and any attachments thereto, is strictly prohibited. If you
receive this email in error please immediately notify me at (212) 735-3000
and permanently delete the original copy and any copy of any e-mail, and any
printout thereof.

Further information about the firm, a list of the Partners and their
professional qualifications will be provided upon request.
******************************************************
===============================================================================

[handwritten box, top left: IS NOT INTENDED TO ADDRESS ALL ISSUES DISCUSSED 12/6/06]

CONFIDENTIAL

SUBJECT TO FED. R. EVID. 408

SASM&F DRAFT 12/5/06

[handwritten: SKADDEN COMMENTS 12/6/06]

# EQUITY PURCHASE AND COMMITMENT AGREEMENT[1]

THIS EQUITY PURCHASE AND COMMITMENT AGREEMENT (this "Agreement"), dated as of December __, 2006, is made by and among Appaloosa Management L.P., [Appaloosa Entity], a [_____] formed under the laws of [_____] (collectively, "Appaloosa"), [Harbinger Capital Partners Master Fund I, Ltd., [Harbinger Entity], a [_____] formed under the laws of [_____] ("Harbinger") (collectively, "Harbinger"), Cerberus Partners LP, [Cerberus Entity], a limited liability company formed under the laws of Delaware (collectively, "Cerberus"), Merrill Lynch & Co., a Delaware corporation ("Merrill"), and UBS Securities LLC, a [_____] limited liability company ("UBS"), on the one hand, and Delphi Corporation (as a debtor in possession and a reorganized debtor, as applicable, the "Company"), on the other hand. Appaloosa, Harbinger, Cerberus, Merrill and UBS are each individually referred to herein individually as an "Investor" and collectively as the "Investors". Capitalized terms used in the agreement have the meanings assigned thereto in the sections indicated on Schedule 1 hereto.

[handwritten margin note: note: identity of parties to be addressed]

WHEREAS, the Company and certain of its subsidiaries and affiliates (the "Debtors") commenced jointly administered proceedings (the "ProceedingsChapter 11 Cases") under United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, the Company intends to propose and submit to the Bankruptcy Court for its approval a plan of reorganization for the Debtors that is consistent with this Agreement and the PSA;

WHEREAS, the Company has requested that the Investors participate in the plan of reorganization, and the Investors are willing to participate in the plan of reorganization, on the terms and subject to the conditions contained in this Agreement PSA; and [handwritten: STET]

WHEREAS, the Company has filed a motion and supporting papers (the "Initial Approval Motion") seeking an order of the Bankruptcy Court (the "Initial Approval Order") (i) approving and authorizing the Company to enter into this Agreement, (ii) authorizing the payment of the Commitment Fees, the Alternate Transaction Fee and the Transaction Expenses provided for herein, and (iii) approving and authorizing the PSA and (iv) approving and authorizing the release and exculpation of each Investor, its Affiliates, shareholders, partners, directors, officers, employees and advisors from any liability for participation in the transactions contemplated by this Agreement, the Preferred Term Sheet, the PSA and the Plan to the fullest extent permitted under applicable lawCompany to enter into the PSA;

---

[1] This draft is subject to additional review by the Company and its advisors, including Company specialists.

[handwritten: NOTE: IMPORT APPROPRIATE PROVISIONS FROM PLAN FRAMEWORK SUPPORT AGREEMENT.]

19. <u>Headings</u>.  The headings in this Agreement are for reference purposes only and will not in any way affect the meaning or interpretation of this Agreement.

20. <u>Specific Performance</u>.  The parties acknowledge and agree that any breach of the terms of this Agreement would give rise to irreparable harm for which money damages would not be an adequate remedy, and, accordingly, the parties agree that, in addition to any other remedies, each will be entitled to enforce the terms of this Agreement by a decree of specific performance without the necessity of proving the inadequacy of money damages as a remedy and without the necessity of posting bond.

21. <u>Publicity</u>.  The initial press release regarding this Agreement shall be a joint press release. Thereafter, the Company and Investors each shall consult with each other prior to issuing any press releases (and provide each other a reasonable opportunity to review and comment upon such release) or otherwise making public announcements with respect to the transactions contemplated by this Agreement and the Plan, and prior to making any filings with any third party or any governmental entity (including any national securities exchange or interdealer quotation service) with respect thereto, except as may be required by law or by the request of any governmental entity.

22. <u>Effectiveness</u>.  ~~This~~<u>With respect to Delphi, this</u> Agreement is expressly contingent on, and shall automatically become effective on such date as the Initial Approval Order has been entered by the Bankruptcy Court.

[Signature Page Follows]

23. <u>Knowledge</u>.  The phrase "Knowledge of the Company" and similar phrases shall mean the actual conscious knowledge of the Chief Restructuring Officer of the Company.

63    DeltaView comparison of pcdocs://nycsr05a/586121/1 and pcdocs://nycsr05a/586121/3. Performed on 12/5/2006.