# EXHIBIT 5

From:           Quatela, Michele on behalf of Pryor, Gregory

To:             asamett@bear.com;dcelentano@bear.com;ecochran@skadden.com;
                fred.fromm@gm.com;hmiller@greenhill-co.com;
                jbutler@skadden.com;jeff.tanenbaum@weil.com;
                kevan.parekh@gm.com;mhootnick@greenhill-co.com;
                michael.kessler@weil.com;michael.lukas@gm.com;
                nicole.ostrowski@weil.com;robert.lemons@weil.com;
                ted.waksman@weil.com;tmatz@skadden.com;
                warren.g.andersen@gm.com

CC:             Alm, Charles;arosenberg@paulweiss.com;
                Bmintz@kayescholer.com;CBell@milbank.com;
                Dantzler, J. William;davidalan@amlp.com;Diamond, Colin;
                gavin.kagan@ubs.com;gbray@milbank.com;Goldenberg, Avi;
                Hollander, Evan;jeffrey_kaplan@ml.com;
                jkirshner@harbingercap.net;JMcCullough@Harbert.net;
                jmcmullin@cgsh.com;k.maiman@amlp.com;Lauria, Thomas E.;
                lfisher@kayescholer.com;ltessler@cerberuscapital.com;
                Milmed, Paul;pfalcone@harbingercap.net;
                r.goldstein@amlp.com;Raskin, Ken;Reiss, John;
                Rotenstein, Jack;scohen@cerberuscapital.com;
                scott_levy@ml.com;sd.smith@ubs.com;TJanson@milbank.com;
                Trimarchi, Peter

Subject:        Equity Purchase and Commitment Agreement

Date:           12/07/2006 14:40:03 (GMT-05:00)

Resending e-mail.


Attached hereto please find a revised Equity Purchase and Commitment Agreement for your
review. In the interest of time we are distributing it at this time for your review. The
document, however, is still being discussed among the various Plan Investors and remains
subject to the comments of each of the Plan Investors in all respects.

We have marked it against the version last distributed by White & Case as well as the
version that Skadden distributed earlier this week.


Gregory Pryor
Partner, Mergers and Acquisitions Practice
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
Telephone: + (212) 819-8389
Fax:       + (212) 354-8113
gpryor@whitecase.com


        Attachments:    EPCA-clean.doc;Blackline vs. Skadden.doc;Blackline WC.doc

[Draft: (New York) December 7, 2006]

CONFIDENTIAL

SUBJECT TO FED. R. EVID. 408

~~SASM&F DRAFT 12/5/06~~

## EQUITY PURCHASE AND COMMITMENT AGREEMENT[‡]

THIS EQUITY PURCHASE AND COMMITMENT AGREEMENT (this "**"Agreement"**"), dated as of December __, 2006, is made by and among ~~Appaloosa Management L.P., [Appaloosa Entity] (collectively, "Appaloosa"),~~ **A-D Acquisition Holdings, LLC, a limited liability company formed under the laws of the State of Delaware ("Appaloosa"),** [Harbinger Capital Partners ~~Master Fund I, Ltd., [Harbinger Entity] (collectively, "Harbinger"), Cerberus Partners LP, [Cerberus Entity] (collectively, "Cerberus"), Merrill Lynch & Co., ("Merrill"~~**Entity], a [_____] formed under the laws of [_____] ("Harbinger"), Dolce Investments, LLC, a limited liability company formed under the laws of the State of Delaware, Merrill Lynch & Co., a Delaware corporation ("Merrill"**), and UBS Securities LLC, (~~"UBS"~~**a [_____] limited liability company ("UBS"**), on the one hand, and Delphi Corporation (as a debtor in possession and a reorganized debtor, as applicable, the "**"Company"**"), on the other hand. Appaloosa, Harbinger, Cerberus, Merrill and UBS are each individually referred to herein as an "**"Investor"**" and collectively as the "**"Investors"**".[1] Capitalized terms used in the agreement have the meanings assigned thereto in the sections indicated on Schedule 1 hereto.

WHEREAS, the Company and certain of its subsidiaries and affiliates (the "**"Debtors"**") commenced jointly administered proceedings (the "**"Chapter 11 Cases"**") under United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "**"Bankruptcy Code"**") in the United States Bankruptcy Court for the Southern District of New York (the "**"Bankruptcy Court"**");

WHEREAS, the Company intends to propose and submit to the Bankruptcy Court for its approval a plan of reorganization for the Debtors that is consistent with this Agreement and the PSA;

WHEREAS, the Company has requested that the Investors participate in the plan of reorganization, and the Investors are willing to participate in the plan of reorganization, on the terms and subject to the conditions contained in ~~the PSA~~**this Agreement**; and

WHEREAS, the Company has filed a motion and supporting papers (the "**"Initial Approval Motion"**") seeking an order of the Bankruptcy Court (the "**"Initial Approval Order"**") (i) approving and authorizing the Company to enter into this Agreement, (ii) authorizing the payment of the Commitment Fees, the Alternate Transaction Fee and the Transaction Expenses provided for herein, ~~and~~ (iii) approving and authorizing the ~~Company to enter into the PSA;~~**PSA and (iv) approving and authorizing the release and exculpation of each Investor, its Affiliates, shareholders, partners, directors, officers, employees and advisors from any**

---

[‡]    ~~This draft is subject to additional review by the Company and its advisors, including Company specialists.~~

[1]    **Equity commitment letters to which the Company is a third-party beneficiary to be provided. Liability on the equity commitment to be capped at an amount to be determined.**

hereto acknowledge that any confidentiality agreements heretofore executed among the parties will continue in full force and effect.

## 16. ~~15.~~ GOVERNING LAW; VENUE

. THIS AGREEMENT WILL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW YORK.  THE INVESTORS HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF, AND VENUE IN, THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK AND WAIVE ANY OBJECTION BASED ON <u>FORUM NON CONVENIENS</u>.

## 17. ~~16.~~ Counterparts

. This Agreement may be executed in any number of counterparts, all of which will be considered one and the same agreement and will become effective when counterparts have been signed by each of the parties and delivered to the other party (including via facsimile or other electronic transmission), it being understood that each party need not sign the same counterpart.

## 18. ~~17.~~ Waivers and Amendments

. This Agreement may be amended, modified, superseded, cancelled, renewed or extended, and the terms and conditions of this Agreement may be waived, only by a written instrument signed by all the parties or, in the case of a waiver, by the party waiving compliance, and subject, to the extent required, to the approval of the Bankruptcy Court.  No delay on the part of any party in exercising any right, power or privilege pursuant to this Agreement will operate as a waiver thereof, nor will any waiver on the part of any party of any right, power or privilege pursuant to this Agreement, nor will any single or partial exercise of any right, power or privilege pursuant to this Agreement, preclude any other or further exercise thereof or the exercise of any other right, power or privilege pursuant to this Agreement.  The rights and remedies provided pursuant to this Agreement are cumulative and are not exclusive of any rights or remedies which any party otherwise may have at law or in equity.

## 19. ~~18.~~ Adjustment to Shares

. If, in accordance with the terms of this Agreement, the Company effects a reclassification, stock split (including a reverse stock split), stock dividend or distribution, recapitalization, merger, issuer tender or exchange offer, or other similar transaction with respect to any shares of its capital stock, references to the numbers of such shares and the prices therefor shall be equitably adjusted to reflect such change and, as adjusted, shall, from and after the date of such event, be subject to further adjustment in accordance herewith.

## 20. ~~19.~~ Headings

. The headings in this Agreement are for reference purposes only and will not in any way affect the meaning or interpretation of this Agreement.
~~20.        Specific Performance~~

~~. The parties acknowledge and agree that any breach of the terms of this Agreement would give rise to irreparable harm for which money damages would not be an adequate remedy, and, accordingly, the parties agree that, in addition to any other remedies, each will be entitled to enforce the terms of this Agreement by a decree of specific performance without the necessity of proving the inadequacy of money damages as a remedy and without the necessity of posting bond.~~

21.    <u>Publicity</u>

. The initial press release regarding this Agreement shall be a joint press release.  Thereafter, the Company and Investors each shall consult with each other prior to issuing any press releases (and provide each other a reasonable opportunity to review and comment upon such release) or otherwise making public announcements with respect to the transactions contemplated by this Agreement and the Plan, and prior to making any filings with any third party or any governmental entity (including any national securities exchange or interdealer quotation service) with respect thereto, except as may be required by law or by the request of any governmental entity.

~~22.~~  **22.** <u>Effectiveness</u>.  ~~With respect to Delphi, this~~**This** Agreement is expressly contingent on, and shall automatically become effective on such date as the Initial Approval Order has been entered by the Bankruptcy Court.

[Signature Page Follows]