# EXHIBIT 6

**From:** Hardin, Adlai [mailto:AHARDIN@skadden.com]
**Sent:** Saturday, December 09, 2006 1:25 AM
**To:** TJanson@milbank.com; gbray@milbank.com; CBell@milbank.com; Bmintz@kayescholer.com; lfisher@kayescholer.com; Alm, Charles; Lauria, Thomas E.; Reiss, John; Hollander, Evan; Rotenstein, Jack; Dantzler, J. William; Raskin, Ken; Trimarchi, Peter; Milmed, Paul; Pryor, Gregory; Goldenberg, Avi
**Cc:** john.sheehan@delphi.com; Sherbin, David; Corcoran, Sean P; david.resnick@us.rothschild.com; william.shaw@us.rothschild.com; Eisenberg, Randall; Butler, Jr., John (Jack) Wm; Marafioti, Kayalyn; Cochran, Eric; Panagakis, George; Gibson, Marie; Saggese, Nick; Matz, Thomas; Furman, Erin; Stuart, Nathan
**Subject:** Revised Equity Purchase and Commitment Agreement

Attached are clean and blacklined copies of the Equity Purchase and Commitment Agreement revised to reflect Delphi's changes since circulation on Thursday of the most recent Cerbaloosa draft. The attached draft remains subject to further review by Delphi and its advisors.

As discussed on Thursday evening, we would be grateful if you would provide us comments on the attached as soon as possible and in any event no later than early Sunday morning so that Delphi will have a meaningful opportunity to review them before Sunday afternoon. We have offered to meet with you on Sunday afternoon beginning as early as 1:00 p.m. New York time. We continue to believe that such a meeting is necessary for us to finalize the document under the current timeline, and the Delphi team, including Delphi business people, are prepared to go forward as discussed. Because a number of us have to make travel arrangements, please confirm your Sunday schedule with us as early as possible on Saturday.

Adlai S. Hardin III
Skadden, Arps, Slate,
   Meagher & Flom LLP
Four Times Square
New York, NY  10036
Main Tel.: (212) 735-3000
Direct Tel.: (212) 735-3849
Direct Fax: (917) 777-3849

-------------------------------------------------------------------------
-
To ensure compliance with Treasury Department regulations, we advise you
that, unless otherwise expressly indicated, any federal tax advice contained
in this message was not intended or written to be used, and cannot be used,
for the purpose of (i) avoiding tax-related penalties under the Internal
Revenue Code or applicable state or local tax law provisions or (ii)
promoting, marketing or recommending to another party any tax-related matters
addressed herein.

**************************************************

This e-mail and any attachments thereto, is intended only for use by the
addressee(s) named herein and may contain legally privileged and/or
confidential information. If you are not the intended recipient of this e-
mail, you are hereby notified any dissemination, distribution or copying of
this email, and any attachments thereto, is strictly prohibited. If you
receive this email in error please immediately notify me at (212) 735-3000
and permanently delete the original copy and any copy of any e-mail, and any
printout thereof.

Further information about the firm, a list of the Partners and their
professional qualifications will be provided upon request.
**************************************************
============================================================================
=

[Draft: (New York) December 7, 2006]

**CONFIDENTIAL**

**SUBJECT TO FED. R. EVID. 408**

**SASM&F Draft 12/9/06**

EQUITY PURCHASE AND COMMITMENT AGREEMENT

THIS EQUITY PURCHASE AND COMMITMENT AGREEMENT (this ""Agreement""), dated as of December __, 2006, is made by and among A-D Acquisition Holdings, LLC, a limited liability company formed under the laws of the State of Delaware (""Appaloosa""), [Harbinger Capital Partners Entity], a [_____] formed under the laws of [_____] (""Harbinger""), Dolce Investments, LLC ("Cerberus"), a limited liability company formed under the laws of the State of Delaware, Merrill Lynch & Co., a Delaware corporation (""Merrill""), and UBS Securities LLC, a [_____–] limited liability company (""UBS""), on the one hand, and Delphi Corporation, a Delaware corporation (as a debtor -in -possession and a reorganized debtor, as applicable, the ""Company""), on the other hand.  Appaloosa, Harbinger, Cerberus, Merrill and UBS are each individually referred to herein as an ""Investor"" and collectively as the ""Investors"".[1]  Capitalized terms used in the agreement have the meanings assigned thereto in the sections indicated on Schedule 1 hereto.

WHEREAS, the Company and certain of its subsidiaries and affiliates (the ""Debtors"") commenced jointly administered ~~proceedings~~cases (the ""Chapter 11 Cases"") under United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the ""Bankruptcy Code"") in the United States Bankruptcy Court for the Southern District of New York (the ""Bankruptcy Court"");

WHEREAS, the Company intends to propose and submit to the Bankruptcy Court for its approval a plan of reorganization for the Debtors that is consistent with this Agreement and the PSA;

WHEREAS, the Company has requested that the Investors participate in the plan of reorganization, and the Investors are willing to participate in the plan of reorganization, on the terms and subject to the conditions contained in this Agreement; ~~and~~

WHEREAS, the Company has filed a motion and supporting papers (the ""Initial Approval Motion"") seeking an order of the Bankruptcy Court (the ""Initial Approval Order"") (i) approving and authorizing the Company to enter into this Agreement, (ii) authorizing the payment of the Commitment Fees, the Alternate Transaction Fee and the Transaction Expenses provided for herein, and (iii) approving and authorizing the Company to enter into the PSA; and ~~(iv) approving and authorizing the release and exculpation of each Investor, its Affiliates, shareholders, partners, directors, officers, employees and advisors from any liability for participation in the transactions contemplated by this Agreement, the Preferred Term Sheet, the PSA and the Plan to the fullest extent permitted under applicable law.~~

---

[1]  ~~Equity commitment letters to which the Company is a third-party beneficiary to be provided.  Liability on the equity commitment to be capped at an amount to be determined.~~

on the part of any party of any right, power or privilege pursuant to this Agreement, nor will any single or partial exercise of any right, power or privilege pursuant to this Agreement, preclude any other or further exercise thereof or the exercise of any other right, power or privilege pursuant to this Agreement.  The rights and remedies provided pursuant to this Agreement are cumulative and are not exclusive of any rights or remedies which any party otherwise may have at law or in equity.

19.    Adjustment to Shares.  If, in accordance with the terms of this Agreement, the Company effects a reclassification, stock split (including a reverse stock split), stock dividend or distribution, recapitalization, merger, issuer tender or exchange offer, or other similar transaction with respect to any shares of its capital stock, references to the numbers of such shares and the prices therefor shall be equitably adjusted to reflect such change and, as adjusted, shall, from and after the date of such event, be subject to further adjustment in accordance herewith.

20.    Headings.  The headings in this Agreement are for reference purposes only and will not in any way affect the meaning or interpretation of this Agreement.

21.    Specific Performance.  The parties acknowledge and agree that any breach of the terms of this Agreement would give rise to irreparable harm for which money damages would not be an adequate remedy, and, accordingly, the parties agree that, in addition to any other remedies, each will be entitled to enforce the terms of this Agreement by a decree of specific performance without the necessity of proving the inadequacy of money damages as remedy and without the necessity of posting bond.

22.    21. Publicity.  The initial press release regarding this Agreement shall be a joint press release.  Thereafter, the Company and Investors each shall consult with each other prior to issuing any press releases (and provide each other a reasonable opportunity to review and comment upon such release) or otherwise making public announcements with respect to the transactions contemplated by this Agreement and the Plan, and prior to making any filings with any third party or any governmental entity (including any national securities exchange or interdealer quotation service) with respect thereto, except as may be required by law or by the request of any governmental entity.

23.    22. Effectiveness.  This With respect to Delphi, this Agreement is expressly contingent on, and shall automatically become effective on such date as the Initial Approval Order has been entered by the Bankruptcy Court.

24.    Knowledge.  The phrase "Knowledge of the Company" and similar phrases shall mean the actual conscious knowledge of the Chief Restructuring Officer of the Company.

[Signature Page Follows]

67     DeltaView comparison of pcdocs://nycsr05a/586887/1 and pcdocs://nycsr05a/586887/2. Performed on 12/9/2006.