# EXHIBIT 12

05-44481-rdd    Doc 13074-10    Filed 03/11/08    Entered 03/11/08 13:37:42    Exhibit 12
Pg 1 of 3



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                 :
        In re                                                    :    Chapter 11
                                                                 :
DELPHI CORPORATION, et al.,                                      :    Case No. 05-44481 (RDD)
                                                                 :
                                                                 :    (Jointly Administered)
        Debtors.                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### FIRST AMENDED DISCLOSURE STATEMENT WITH RESPECT TO
### FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND
### CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(800) 718-5305
(248) 813-2698 (International)
John Wm. Butler, Jr. (JB 4711)
George N. Panagakis (GP 0770)
Ron E. Meisler (RM 3026)
Nathan L. Stuart (NS 7872)

                                        Of Counsel

SKADDEN, ARPS, SLATE, MEAGHER           DELPHI CORPORATION
   & FLOM LLP                                     5725 Delphi Drive
Four Times Square                          Troy, Michigan 48098
New York, New York 10036              David M. Sherbin
Kayalyn A. Marafioti (KM 9632)        Sean P. Corcoran
Thomas J. Matz (TM 5986)               Karen J. Craft

Attorneys for Debtors and Debtors-in-Possession

Dated: New York, New York
          December 10, 2007

---

**DISCLAIMER**

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.
ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY
COURT HAS APPROVED THIS DISCLOSURE STATEMENT. THIS DISCLOSURE
STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT YET BEEN
APPROVED BY THE COURT.**

---



There were several important reasons for the Debtors entering into the Investment Agreement Amendment as described in the Debtors' omnibus reply brief filed in support of the Investment Agreement Amendment (Docket No. 11289), including the following:

- The September 6 Plan was premised on the Debtors' obtaining $7.1 billion in exit financing, but shortly thereafter it became apparent that volatility in the credit markets would make it unlikely that the Debtors could secure such financing. As a result, the Debtors revised their proposed exit financing facility to seek $5.2 billion in exit financing, comprised of a $3.7 billion first lien exit financing facility and a $1.5 billion second lien exit financing facility (up to $750 million of which will be issued to GM). This reduction in the aggregate size of the exit financing facility raised a serious question whether the Debtors could have satisfied the financing condition contained in Section 9(a)(xix) of the Investment Agreement.

- While the credit market dislocation increased the Debtors' need for a plan investor to emerge from chapter 11 and protect the value of the Estates that had been achieved through the Debtors' Transformation Plan, the Debtors recognized that the same turbulence in the credit markets was causing debt and equity investors to abandon, terminate and/or withdraw from a significant number of other proposed transactions. Absent the Investment Agreement Amendment, pursuant to which the Plan Investors approved the Disclosure Statement and the Plan (and the principal underlying building blocks thereof), the Debtors would have been left to either attempt to satisfy the closing conditions of the Investment Agreement or to litigate with the Plan Investors under a legal theory such as anticipatory breach. However, even if the Debtors were successful in such litigation against the Plan Investors, the Investment Agreement expressly caps the Plan Investors' liability for breach thereof at $100 million prior to approval of the Disclosure Statement, and there is no specific performance provision. Thus, an attempt to "enforce" the Investment Agreement against the wishes of the Plan Investors, even if successful, would yield a maximum recovery of $100 million to the Estates and would materially delay the Debtors' emergence from chapter 11 requiring the Debtors to manage the inherent uncertainties associated with the loss of the Plan Investors, pursuit of material litigation, and delay in emergence from chapter 11.

On December 7, 2007, the Bankruptcy Court approved the Investment Agreement Amendment.

The Investment Agreement Amendment revises a number of provisions in the Investment Agreement to reflect events and developments since August 3, 2007, including delivery of a revised and supplemented disclosure letter by Delphi, delivery of a revised business plan by Delphi, delivery of a best efforts financing letter, updates and revisions to representations and warranties, the Union Settlement Agreements, and the execution and amendment of the Settlement Agreement and Restructuring Agreement. The Investment Agreement Amendment also amends provisions of the Investment Agreement relating to the Discount Rights Offering (including the replacement of existing common stockholders with unsecured creditors and the provision of oversubscription rights) and reflects the Series C Preferred Stock to be issued to GM. In addition, the Investment Agreement Amendment no longer outlines Delphi's proposed framework for a plan of reorganization but instead, except for corporate governance matters, relies upon the Plan for that function.