# EXHIBIT 18

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
    In re                             :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                     Debtors.     :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
UNDER 11 U.S.C. §§ 1129(a) AND (b) AND FED. R. BANKR. P. 3020
CONFIRMING FIRST AMENDED JOINT PLAN OF REORGANIZATION
OF DELPHI CORPORATION AND CERTAIN AFFILIATES,
DEBTORS AND DEBTORS-IN-POSSESSION, AS MODIFIED

0544481080125000000000013

THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A. <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B. <u>Filing Of Amended Plan</u>. On December 10, 2007, the Debtors filed the Amended Plan and the First Amended Disclosure Statement With Respect To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (as transmitted to parties-in-interest, the "Disclosure Statement").

C. <u>Solicitation Procedures Order</u>. On December 10, 2007, the Court entered an order (the "Solicitation Procedures Order") that, among other things, (i) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017 and 2002(c)(3), (ii) fixed January 17, 2008 as the date for the commencement of the hearing to consider confirmation of the Amended Plan (the "Confirmation Hearing"), (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (iv) established certain procedures for soliciting and tabulating votes with respect to the Amended Plan. In accordance with the Solicitation Procedures Order, on December

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. Fed. R. Bankr. P. 7052.

3

of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

  W. <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Each Impaired Class of Claims other than those listed in paragraph U above has voted to accept the Plan and, to the best of the Debtors' knowledge, do not contain "insiders," as such term is defined in 11 U.S.C. § 101(31).  Thus, the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

  X. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The financial projections in Appendix C to the Disclosure Statement, the Sheehan Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) have not been controverted by other evidence or sufficiently challenged in any of the objections to the Plan, (3) establish the ability of the Debtors to pay their debts as they mature, and (4) establish that subject to, and upon consummation of, the transactions set forth as conditions to the Effective Date in Article 12.2 of the Plan, the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors.  Specifically, based on the Court's entry of the Order Under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002, 6004, 9006, and 9007 Authorizing Debtors' Entry into Exit Facility Engagement and Fee Letters and Performance Thereunder ("Exit Financing Order") (Docket No. 10960), the uncontroverted evidence proffered or adduced at the Confirmation Hearing, and the requirement of consummation of the Exit Financing Arrangements as a condition

15

to the Effective Date, the Court finds that the Plan is feasible, notwithstanding that a firm commitment for exit financing was not entered into as of the Confirmation Hearing.

  Y. <u>Payment Of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Debtors have paid, or pursuant to Sections 1.2, 2.1, and 14.2 of the Plan will pay by the Effective Date, fees payable under 28 U.S.C. § 1930 plus accrued interest under 31 U.S.C. § 3717.  Thus, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

  Z. <u>Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  As required by section 1129(a)(13) of the Bankruptcy Code, and in connection with the authorization of the Delphi-GM Definitive Documents as set forth in section 7.20 of the Plan and the assumption of the collective bargaining agreements as set forth in section 7.21 of the Plan, following the Effective Date of the Plan, the payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code) will continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to the entry of this Confirmation Order, for the duration of the periods the Debtors have obligated themselves to provide such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that during the Chapter 11 Cases, modifications to certain retiree benefits were made solely in accordance with the terms of the existing retiree benefit plans, and not as a result of subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code.

  AA. <u>Non-Applicability Of Sections 1129(a)(16)</u>.  Section 1129(a)(16) does not apply because each of the Debtors is a moneyed, business or commercial corporation or limited liability company.

16

provisions because the TOPrS receive the distributions remaining after other holders of claims in Class C (General Unsecured Claims) are paid in full with postpetition interest (as required by the TOPrS Indenture). Moreover, because of the settlement nature of the Plan, the deemed satisfaction of the TOPrS subordination provision is proper. In addition, because the Senior Notes and the TOPrS, if treated as being in separate classes as permitted under Article 14.3 of the Plan, voted to accept the Plan under section 1126 of the Bankruptcy Code, the Senior Notes, as a class, and the TOPrS, as a class, have each agreed to the treatment under the Plan and are not entitled to any different or additional recovery under the Plan, and are not entitled to the treatment specified in section 1129(b) of the Bankruptcy Code.

OO.    <u>Exit Financing Arrangements</u>.  The Plan provides for the Exit Financing Arrangements on the terms and conditions set forth in Exhibit 7.14 to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and adequate notice of the Exit Financing Arrangements. All documents necessary to implement the Plan including, without limitation, those associated with the Exit Financing Arrangements, shall, upon execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

PP.    <u>Investment Agreement</u>.  The Investment Agreement is an essential element of the Plan and entry into and consummation of the Investment Agreement is in the best interests of the Debtors, their estates, and their creditors and is approved in all respects, as reflected in the Court's previous orders dated August 2, 2007 and December 10, 2007 authorizing and approving the Debtors' entrance into the Delphi-Appaloosa Equity Purchase and Commitment Agreement and subsequent amendment thereto

(Docket Nos. 8856 and 11382), which orders are incorporated herein by reference. The investment being made by the Plan Investors pursuant to, and subject to the terms and conditions of, the Investment Agreement represents reasonably equivalent value for the consideration the Plan Investors are receiving under the Plan. Each Plan Investor (in its capacity as such or otherwise), its Affiliates, shareholders, partners, directors, officers, employees, and advisors, has acted in good faith in connection with the Chapter 11 Cases and the formulation and confirmation of the Plan.

QQ.    Delphi-GM Definitive Documents. The Debtors' settlement with GM, as memorialized in the Plan and the Delphi-GM Definitive Documents (the "GM Settlement"), is essential to the Plan and provides material and substantial consideration to Delphi, which allows Delphi to provide material and substantial distributions to stakeholders that would be impossible to deliver without the GM Settlement. As adequately described in Section V.F. of the Disclosure Statement, the Debtors underwent an extensive investigation and analysis of their claims and potential claims against GM and certain defenses to claims that might be asserted by GM against the Debtors' estates (the "GM Claims and Defenses") and determined that the consensual resolution of the GM Claims and Defenses as set forth in the Delphi-GM Definitive Documents is essential to the reorganization, in the best interest of the Debtors' estates, and superior to any alternative under which the Debtors would seek to pursue the GM Claims and Defenses through proceedings adversarial to GM. As adequately described in Section IX.B.1 of the Disclosure Statement, absent the GM Settlement, the Debtors would not be able to provide meaningful distributions to junior stakeholders or a par plus accrued recovery at Plan Equity Value for holders of unsecured claims. Pursuant to Bankruptcy

22

construed as discharging, releasing, or relieving the Debtors or the Debtors' successors, including the Reorganized Debtors, or any party, in any capacity, from any liability for minimum funding under 26 U.S.C. § 412 and 29 U.S.C. § 1082 or liability under 29 U.S.C. § 1362 with respect to the Pension Plans or the PBGC. The PBGC and the Pension Plans shall not be enjoined or precluded from seeking to enforce such liability as a result of any provision of the Plan or the Confirmation Order.

CCC. <u>Preservation Of Causes Of Action</u>. It is in the best interests of the holders of Claims and Interests that the Retained Actions that are not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Article 7.24 of the Plan to maximize the value of the Debtors' Estates. It is also in the best interests of holders of Claims and Interests that Avoidance Actions shall not be retained by the Reorganized Debtors unless specifically listed on Exhibit 7.24 of the Plan.

DDD. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1. <u>Confirmation</u>. The Plan, which consists of the Amended Plan (and all exhibits and supplements thereto) and the modifications set forth in Exhibit A hereto, which are hereby incorporated into and constitute a part of the Plan, is hereby approved and confirmed under section 1129 of the Bankruptcy Code. The exhibits to the Plan (as may be modified pursuant to the terms of the Plan and/or such exhibit, as applicable) are

34

their respective active directors, officers, and employees who will continue in such capacities (or similar capacities) after the Effective Date, or retirement income plans, welfare benefit plans, and other plans for such Persons, subject to the terms and conditions of any such agreement, and subject to the Plan, and (b) enter into new employment, retirement, indemnification, and other agreements for active directors, officers, and employees, and retirement income plans, welfare benefits plans, and other plans for active and retired directors, officers, and employees, subject to the Plan; provided, however, that to enter into or obtain the benefits of any employment, retirement, indemnification, or other agreement with the Debtors or Reorganized Debtors, an employee must contractually waive and release any claims arising from pre-existing employment, retirement, indemnification, or other agreements with any of the Debtors.

18. Freezing Of Pension Plans. Notwithstanding anything in the Plan, the Pension Plans shall be frozen by March 1, 2008 or as soon as practicable thereafter.

19. SERP Claims. Notwithstanding Article 7.9 of the Plan and for the avoidance of doubt, to the extent a proof of claim asserting a claim for SERP benefits has already been properly filed, no further proof of claim shall be required to be filed in connection with the rejection and termination of the SERP.

20. Exit Financing Arrangements. The provisions of Article 7.14 of the Plan are approved in their entirety. Specifically, on the Effective Date, the Reorganized Debtors shall receive the proceeds of the Exit Financing Arrangements on the terms as set forth in the exit financing engagement letter and term sheet attached to the Plan as Exhibit 7.14, as such term sheet may be amended, modified, or supplemented in accordance with the Plan (subject to consents of third parties, if any, as may be

required by the Plan). The Reorganized Debtors are hereby authorized to execute any documents required to effectuate the Exit Financing Arrangements without further approval of the board of directors of the Debtors. The Exit Financing Arrangements shall constitute legal, binding and authorized obligations of the Reorganized Debtors, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Financing Arrangements shall be deemed to be approved and shall be legal, binding and enforceable liens on the collateral granted thereunder. In furtherance of the foregoing, the Reorganized Debtors and any other person granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of any state, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that would be necessary under applicable law to give notice of such liens and security interests to third parties.

        21.     <u>Exemption From Certain Taxes And Recording Fees</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recording of any instrument of transfer under, or in connection with, the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax. Furthermore, and without limiting the foregoing, any transfers from a Debtor to a Reorganized Debtor or to any other Person pursuant to the Plan, as contemplated by the Plan or pursuant to any agreement regarding the transfer of title to or ownership of any of the Debtors' property in the United States, shall not be

back-up letters of credit, in each case in accordance with the DIP Credit Agreement or as otherwise agreed to by the DIP Agent.  Upon compliance with the foregoing sentence, all liens and security interests granted to secure the DIP Facility Revolver Claim, the DIP Facility First Priority Term Claim, and the DIP Facility Second Priority Term Claim shall be deemed cancelled and shall be of no further force and effect.  To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take any and all commercially reasonable steps requested by the Debtors that are necessary to cancel and/or extinguish such publicly-filed liens and/or security interests.

        32.      <u>Investment Agreement</u>.  Notwithstanding any provision in this Confirmation Order, the Investment Agreement is valid, binding, in full force and effect in accordance with its terms, and constitutes an obligation of the parties thereto fully enforceable on its terms, and is not amended or modified in any way hereby.

        33.      <u>Professional Claims And Final Fee Applications</u>.  All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than the last day of the second full month after the Effective Date or May 31, 2008, whichever is later.  After notice and a hearing in accordance with the procedures established by the Court and prior orders of the Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Court.  Subject to the Holdback Amount, on the Effective Date, the Debtors or Reorganized Debtors shall pay all amounts owing to Professionals and members of the Statutory Committees for all outstanding amounts payable relating to

54

ERISA Claims shall be made in accordance with the terms of Articles 5.5, 5.8, 5.9, 7.15(a), 7.16 and 7.19 of the Plan.

60. Union Settlement Agreements. Pursuant to the Plan, upon the Effective Date, the Union Settlement Agreements and the certain documents referenced in Section 7.21 of the Plan shall be assumed and shall be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

61. Effect On Other Orders And Agreements. Neither the confirmation of the Plan nor anything set forth in this Confirmation Order shall modify the following previous orders of the Court, except to the extent contemplated in such orders: (a) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among UAW, Delphi, and General Motors Corporation Including Modification of UAW Collective Bargaining Agreements and Retiree Welfare Benefits for Certain UAW-Represented Retirees, entered July 19, 2007 (Docket No. 8693), (b) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memorandum of Understanding Among IUE-CWA, Delphi, and General Motors Corporation Including Modification of IUE-CWA Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUE-CWA-Represented Retirees, entered August 16, 2007 (Docket No. 9106), (c) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving (I) Memoranda of Understanding Among IUOE, IBEW, IAM, Delphi, and General Motors Corporation Including Modification of IUOE, IBEW, and IAM Collective Bargaining Agreements and Retiree Welfare Benefits for Certain IUOE, IBEW, and IAM-Represented Retirees and (II) Modification of, and Term Sheet Regarding, Retiree Welfare Benefits for Certain

Non-Represented Hourly Active Employees and Retirees, entered August 16, 2007 (Docket No. 9107), (d) Order Under 11 U.S.C. §§ 363, 1113, and 1114 and Fed. R. Bankr. P. 6004 and 9019 Approving Memoranda of Understanding Among USW, Delphi, and General Motors Corporation Including Modification of USW Collective Bargaining Agreements and Retiree Welfare Benefits for Certain USW-Represented Retirees, entered August 29, 2007 (Docket No. 9169), (e) Order Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a), entered August 2, 2007 (Docket No. 8856), (f) Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a) Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Amendment, entered December 10, 2007 (Docket No. 11382), and (g) both the Amended Opinion And Order Regarding Lead Plaintiffs' Motions For (1) Final Approval Of Settlements, (2) Settlement Class Certification, (3) Final Approval Of Plans Of Allocation, And (4) Award Of Attorneys' Fees; And Delphi Trust I Interim Counsel's Motion For Attorneys' Fees, Case No. 05-MD-01725 (E.D. Mich., January 11, 2008) and the Final Order Approving the Multidistrict Litigation and Insurance Settlement entered on January 25, 2008 (Docket No. 12358).

62. <u>Resolution Of Plan Objections Of Certain Senior Noteholders</u>.

(a) The request for approval of the settlement (the "Senior Noteholders Settlement") under Bankruptcy Rule 9019 with certain holders of Senior Notes (the "Senior Noteholders") represented by Goodwin Procter LLP made by oral motion of the Debtors on January 17, 2008, is hereby approved.