# EXHIBIT 19

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION ET AL,


       Debtor.


- - - - - - - - - - - - - - - - - - - -x


        United States Bankruptcy Court

        One Bowling Green

        New York, New York


        January 17, 2008

        10:26 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

## Page 54

1  I'm not sure how you want to deal with that particular
2  objection to paragraph 170. It's actually where Mr. Sheehan
3  expresses, what I believe is intended to be, a lay opinion as
4  to the likelihood that the debtor will be able to obtain
5  financing commitments that it is presently seeking in the
6  capital markets.
7      THE COURT: That's right. You're not offering him as
8  an expert, are you?
9      MR. BUTLER: NO, we're not. It's a lay -- I mean,
10 he's our chief restructuring officer. This represents --
11     THE COURT: He's a business person trying to get a
12 sense of whether the likelihood of securing exit financing and
13 the other factors that he mentioned, mean that the plan is
14 feasible for purposes of 1129(a)(11).
15     MR. BUTLER: Correct. That's his opinion as the
16 chief restructuring officer of the company and that's all it's
17 being offered for.
18     THE COURT: Okay.
19     MR. FOX: Well -- I mean, the problem with -- with a
20 lay opinion with respect to the likelihood of the debtor
21 getting financing is that that's not the typical kind of area
22 where one would expect a lay person to be providing such an
23 opinion. This is more of a technical area that, you know, the
24 average person, even a chief restructuring officer, isn't
25 necessarily going to be considered an appropriate party to be

## Page 55

1  offering that kind of opinion.
2      THE COURT: Well, I don't -- I don't follow that. I
3  mean -- I think it's fair for a business person, particularly
4  one who's been involved in this process for the length that he
5  has and who has dealt with the people, in many cases on the
6  opposite side of the table in these matters, to have an
7  opinion. You can -- you can question it but it's -- I think
8  it's just -- it's just that.
9      MR. FOX: Well, there's also --
10     THE COURT: It's certainly different than an opinion
11 of someone who's not been involved in the process but --
12     MR. FOX: Well, that's true, Your Honor. The other
13 problem with it though is there's a foundational problem
14 because effectively it brings in hearsay because his opinion is
15 based on what, you know, banks and such have told them and
16 they're not here to testify about that. They're not being
17 offered as witnesses directly.
18     THE COURT: Again, it's not -- I don't think this is
19 being offered for the truth of what he's been told though.
20 It's just his view based upon --
21     MR. FOX: Well --
22     THE COURT: I mean, he has -- clearly in his
23 declaration discussed in more detail the basis for this
24 conclusion here.
25     MR. FOX: Right, which is based on out of court

## Page 56

1  statements that others have made to him.
2      THE COURT: And -- and again, they're not -- those
3  statements are what he has taken away from them. They're not
4  being admitted as true -- as the truth of what's been said to
5  him. So -- I -- I just don't see why it would be inadmissible
6  as opposed to what weight you might give to it.
7      MR. FOX: Thank you, Your Honor.
8      THE COURT: So I'll admit this. Again, with the
9  general caveat that the statements by third parties that
10 Mr. Sheehan has recounted and is relying upon in this paragraph
11 170 are not in his affidavit to show the truth of those
12 statements but merely that he is -- this is what he has heard.
13 Okay. So --
14     MR. BUTLER: So, Your Honor, I would --
15     THE COURT: So given that, does anyone wish to cross
16 examine Mr. Sheehan on his declaration or in respect of the
17 designated portions of his deposition? Okay.
18     THE COURT: I have one question for you Mr. Sheehan
19 and I could ask it of you or perhaps, before you come up here,
20 are any of the counsel involved in the exit financing, you
21 know, on reporting on exit financing and where it stands? I
22 guess what I would like to do is just see if there -- is there
23 any update from the date of this declaration that would, at
24 all, alter what Mr. Sheehan reports.
25     MR. FOX: I didn't fully understand --

## Page 57

1      MR. BUTLER: Can I have a moment, Your Honor?
2      THE COURT: Just to update it.
3      MR. BUTLER: Your Honor, I think Mr. Sheehan would be
4  the proper question to answer the Court's question.
5      THE COURT: All right. Well, let me just briefly
6  swear you in then.
7      (Witness is Sworn)
8      THE COURT: For the record, could you spell your
9  name.
10     THE WITNESS: John, J-O-H-N, D. Sheehan, S-H-E-E-H-A-
11 N.
12     THE COURT: Okay. And my question, Mr. Sheehan, and
13 I appreciate it's only four days difference but your
14 declaration's dated January 13, 2008 and it reflects that the
15 exit financing process got started, I believe, on January 5th,
16 is that correct?
17     THE WITNESS: January 9th, Your Honor.
18     THE COURT: January 9th, excuse me. My question is,
19 knowing what you know today with regard to that process, have
20 there been any developments in connection with that process
21 between the date of your declaration and today, that would
22 alter your view as to the likely outcome of that process?
23     THE WITNESS: The short answer to that question is no
24 Your Honor. And I'd be happy to provide you more detail if you
25 would like.

15  (Pages 54 to 57)

022c54d3-cae3-4395-be3c-d8cda93d26d1

Page 58

1    THE COURT:  No, that's fine.  All right.  Does anyone
2 wish to cross examine Mr. Sheehan on that update?  All right.
3 Again, I -- I'm being somewhat reticent because I do not
4 believe it's appropriate to get into negotiation strategies and
5 the like.  But obviously if you -- if you have come across
6 information that would suggest that you should be, you know,
7 considerably more pessimistic, you should let me know.
8    THE WITNESS:  I considered my answer carefully when I
9 answered.
10    THE COURT:  Okay.  Very well.  Thank you.
11    MR. BUTLER:  Your Honor, the next -- our next witness
12 is Colin E. Whitmer who is a partner in the transaction
13 services practice at Pricewaterhouse Coopers LLP.  Mr. Whitmer,
14 would you stand and identify yourself please?
15    THE COURT:  He's been standing.
16    MR. BUTLER:  He is standing.  Mr. Whitmer's
17 declaration is Exhibit 68 and his deposition has been marked as
18 Exhibit 516.  They have been admitted into evidence and I
19 present Mr. Whitmer now for cross examination by the parties or
20 any questions the Court may have with respect to his
21 declaration.
22    THE COURT:  Okay.  Does anyone want to cross examine
23 Mr. Whitner -- Whitmer, excuse me, on his declaration or the
24 designated sections of his deposition?  Okay.  I will accept
25 his declaration and the deposition provisions as his testimony.

Page 59

1    MR. BUTLER:  Your Honor, may Mr. Whitmer be excused?
2    THE COURT:  Yes.
3    MR. BUTLER:  Your Honor, the debtor's third witness
4 in support of its confirmation of its plan of reorganization is
5 Dean R. Unrue.  Also a witness that the Court is familiar with.
6 He's been handling all of the company's claims administration
7 process in the Chapter 11 case.  He is the claims administrator
8 at Delphi Corporation.  And his declaration has been submitted
9 and admitted into evidence as Exhibit 65.  And his deposition
10 has been admitted as Exhibit 515.  Your Honor, I would present
11 Mr. Unrue for cross examination by the parties or questions by
12 the Court about any of the matters in connection with his
13 testimony but particularly with respect to his judgment that
14 the debtors have met the 1.45 billion dollar claims cap set
15 forth in the plan of reorganization.
16    THE COURT:  Well, when you say that, is that in his
17 deposition?
18    MR. BUTLER:  No, but I think it was discussed -- they
19 updated it in his declaration.
20    THE COURT:  It's not in the declaration.
21    MR. BUTLER:  We're about twenty or thirty million
22 dollars ahead.
23    THE COURT:  Right.
24    MR. BUTLER:  And the -- and maybe the best way, Your
25 Honor, just so it's clear because I think it is in there

Page 60

1 somewhere would be if -- first off if anyone has any cross
2 examination it might be useful to get that update on where we
3 are, just so it's clearly in the record.
4    THE COURT:  I would like to do that.  I know there
5 have been some recent rulings.  So Mr. Unrue, if you'd come up
6 please.
7    (Witness is Sworn)
8    THE COURT:  And for the record, would you spell your
9 name?
10    THE WITNESS:  It's Dean, D-E-A-N, R. Unrue,
11 U-N-R-U-E.
12    THE COURT:  Okay.
13 DIRECT EXAMINATION BY
14 MR. BUTLER:
15 Q.  Mr. Unrue, we just -- do you have any -- do you remember,
16 in your declaration, having testified about where the debtors
17 stood at the time of your declaration with respect to
18 compliance with the 1.45 billion dollar cap referenced in the
19 debtor's plan of reorganization for a limitation on what have
20 been called various names in this case but I would -- I refer
21 to them as general unsecured claims other than funded debt
22 claims.  Have you -- do you recall that testimony in your
23 declaration?
24 A.  Yes, I do.
25 Q.  Do you have an update to that testimony?

Page 61

1 A.  Yes, I do.
2 Q.  Could you please give the Court an update to where the
3 debtors stand with respect to that cap?
4 A.  Okay.  At the time of my declaration we were at 1.470,
5 twenty million dollars in excess of the cap.  As you know, we
6 resolved two cases at the most recent claims hearing.  The case
7 of White Source and Nu-Tech that put us slightly over the cap.
8 Since then we have, at least, three signed settlement
9 agreements that put us, currently, at three million under the
10 cap.
11    THE COURT:  Okay.  All right.  Does anyone wish to
12 cross examine Mr. Unrue, either on his declaration, his
13 deposition testimony or the most recent update from the stand?
14    MR. LAURIA:  Your Honor, Tom Lauria for the plan
15 investors.  I do not wish to cross the examine the witness
16 however I do want to, on the record, just reserve our rights
17 and make it clear that we're not expecting the Court to make
18 any finding on this particular issue, we have an independent
19 right to be satisfied that this cap has not been exceeded.  And
20 I -- I'm, kind of, surprised if this is an effort to get a
21 finding that that cap has been satisfied separate and apart
22 from the determination we have the right, under our contract,
23 to make.
24    THE COURT:  Okay.
25    MR. BUTLER:  Your Honor, the evidence is what it's

16  (Pages 58 to 61)