# Exhibit

# A

FORM B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**Delphi Corp. et al** | Case Number<br>**05-44481** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor
**U.S. Equal Employment Opportunity Commission**

Name and address where notices should be sent:
**Margaret A. Malloy**
**Trial Attorney**
**U.S. Equal Employment Opportunity Commission**
**33 Whitehall St.**
**New York, NY 10004**
**212-336-3690**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**COPY**

THIS SPACE IS FOR
COURT USE ONLY

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:<br>**NA** | Check here if this claim: ☐ replaces<br>☐ amends a previously filed claim, dated: _____ |
|---|---|

1. BASIS FOR CLAIM:
   - ☐ Goods sold
   - ☐ Services performed
   - ☐ Money loaned
   - ☐ Personal injury/wrongful death
   - ☐ Taxes
   - ☒ Other (Describe briefly): **Violation of Americans with Disabilities Act 42 U.S.C. § 12101 et seq.**
     (date)                        (date)

   - ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   - ☒ Wages, salaries, and compensations (fill out below)
     Your SS#: _____
     Unpaid compensation for services performed
     from _____ to _____

   RECEIVED
   OCT 1 8 2007
   CLAIMS PROCESSING CENTER
   USBC, SDNY

2. DATE DEBT WAS INCURRED: **May 21, 2004**
3. IF COURT JUDGMENT, DATE OBTAINED:

4. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: **Unliquidated**
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. SECURED CLAIM.
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate    ☐ Motor Vehicle
   ☐ Other:

   Value of Collateral:

   Amount of arrearage and other charges <u>at time case filed</u> included in secured claim, if any:

6. UNSECURED PRIORITY CLAIM.
   ☒ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ **unliquidated**
   Specify the priority of the claim:
   ☒ Wages, salaries, or commissions (up to $4,000)* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
   ☐ Up to $1800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
   * Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. CREDITS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
8. SUPPORTING DOCUMENTS: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
9. DATE-STAMPED COPY: To receive an acknowledgment copy of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE FOR
COURT USE ONLY

**RECEIVED**
OCT 1 6 2007
KURTZMAN CARSON

| Date<br>**October 12, 2007** | Sign and print the name and title any. of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>*[signature]*<br>**Margaret A. Malloy**<br>**Trial Attorney** |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit
# B

| United States Bankruptcy Court | Administrative |
|---|---|
| Southern District of New York | Expense Claim |
| Delphi Corporation et al. Claims Processing | Request |
| c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue | |
| El Segundo, California 90245 | |

**Debtor against which claim is asserted :**
Delphi Corporation, *et al.* 05-444481

**Case Name and Number**
In re Delphi Corporation., *et al.* 05-44481
Chapter 11, Jointly Administered

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Request form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case pursuant to 11 U.S.C. § 503.**

**Name of Creditor**
*(The person or other entity to whom the debtor owes money or property)*

**U.S. Equal Employment Opportunity Commission**

Name and Address Where Notices Should be Sent

    **Margaret A. Malloy**
    **U.S. Equal Employment Opportunity Commission**
    **33 Whitehall St.**
Telephone No.  **New York, NY 10004**
    **212-336-3690**

- ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
- ☒ Check box if you have never received any notices from the bankruptcy court in this case.
- ☐ Check box if the address differs from the address on the envelope sent to you by the court.

**THIS SPACE IS FOR COURT USE ONLY**

**ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:**
    **N/A**

Check here if this claim ☐ replaces
                      ☐ amends  a previously filed claim, dated: _____

**1. BASIS FOR CLAIM**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other (Describe briefly)
    Violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☒ Wages, salaries, and compensation (Fill out below)
    Your social security number _____
    Unpaid compensation for services performed
    from _____ to _____
           (date)          (date)

**2. DATE DEBT WAS INCURRED**  **August 16, 2006**

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $**  **Unliquidated**
- ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Brief Description of Claim (attach any additional information):**
**EEOC has filed a case in U.S. District Court, WDNY, No. 07-cv-6470, charging Delphi with violating the Americans with Disabilities Act by making prohibited medical inquiries of employees and retaliating against those who object. EEOC seeks monetary and injunctive relief on behalf of a class of employees harmed by the unlawful conduct. This claim covers claims arising after the petition was filed. EEOC is filing a separate proof of claim on behalf of employees harmed prepetition. A copy of the Complaint is attached.**

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

**8. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

**THIS SPACE IS FOR COURT USE ONLY**

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
|---|---|
| **October 12, 2007** | *[signature]*    **Margaret A. Malloy**
    **Trial Attorney** |

# Exhibit

# C

## United States Bankruptcy Court
Southern District of New York

Delphi Corporation et al. Claims Processing
c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue
El Segundo, California 90245

## Administrative Expense Claim Request

Claim #16753
USBC SDNY
Delphi Corporation, et al.
05-44481 (RDD)

Debtor against which claim is asserted :
Delphi Corporation, *et al.* 05-444481

Case Name and Number
In re Delphi Corporation, *et al.* 05-44481
Chapter 11, Jointly Administered

NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Request form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case pursuant to 11 U.S.C. § 503.

**RECEIVED**

**DEC 20 2007**

**KURTZMAN CARSON**

Name of Creditor
*(The person or other entity to whom the debtor owes money or property)*

**U.S. Equal Employment Opportunity Commission**

Name and Address Where Notices Should be Sent

Margaret A. Malloy
U.S. Equal Employment Opportunity Commission
33 Whitehall St.
New York, NY 10004
Telephone No.  212-336-3690

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☑ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:        N/A

Check here if this claim ☐ replaces   ☐ amends   a previously filed claim, dated: _____

1. BASIS FOR CLAIM
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other (Describe briefly)
   Violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

☑ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
   Your social security number _____
   Unpaid compensation for services performed
   from _____ to _____

2. DATE DEBT WAS INCURRED    **August 16, 2006**

3. IF COURT JUDGMENT, DATE OBTAINED:

4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $    **Unliquidated**
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

5. Brief Description of Claim (attach any additional information):
EEOC has filed a case in U.S. District Court, WDNY, No. 07-cv-6470, charging Delphi with violating the Americans with Disabilities Act by making prohibited medical inquiries of employees and retaliating against those who object. EEOC seeks monetary and injunctive relief on behalf of a class of employees harmed by the unlawful conduct. This claim covers claims arising after the petition was filed. EEOC is filing a separate proof of claim on behalf of employees harmed prepetition. A copy of the Complaint is attached.

6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".

8. DATE-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
OCT 18 2007
CLAIMS PROCESSING CENTER
USBC SDNY

Date    **October 12, 2007**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

Margaret A. Malloy
Trial Attorney

0544481071018000000000029

# Exhibit D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————X

EQUAL EMPLOYMENT OPPORTUNITY          :
COMMISSION,                           :
                                      :        CIVIL ACTION NO.
                        Plaintiff,    :
                                      :
                                      :
        -against-                     :
                                      :        COMPLAINT
DELPHI CORP.,                         :        JURY TRIAL DEMANDED
                                      :
                        Defendant.    :

———————————————————————————X

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA")

and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to

provide relief to Stanley Straughter ("Charging Party") and to a class of similarly situated

individuals who have been adversely affected by such practices. As alleged with particularity

below, Defendant Delphi Corp. ("Defendant") violated the ADA by making disability-related

inquiries of employees, including Charging Party, for purposes inconsistent with those permitted

by the ADA, and by taking adverse employment action against Charging Party and a class of

similarly situated individuals in retaliation for and interfering with their exercise of their rights

protected by the ADA.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

reference §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. §§ 2000e-5(f)(1) and (3).

1

2.    The unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the Western District of New York.

## PARTIES

3.    Plaintiff, Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.    At all relevant times, Defendant has continuously been a corporation doing business in the State of New York and has continuously employed at least fifteen employees.

5.    At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000-e(g) and (h).

6.    At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.    More than thirty days prior to the institution of the lawsuit, Charging Party filed a charge with the EEOC alleging violations of Title I of the ADA by Defendant.  All conditions precedent to the institution of this lawsuit have been fulfilled.

8.    Since at least 2004, Defendant has engaged in unlawful employment practices in violation of Sections 102 and 503 of the ADA, 42 U.S.C. §§ 12112(d)(4)(A) and 12203, as outlined below:

a.    Charging Party was employed as a Laborer by Defendant from May 22 to August 17, 2006.

b.    On August 14 and 15, 2006, Charging Party called in sick.

c.    On August 16, 2006, Charging Party returned to work with a doctor's note verifying that he had been unable to work due to illness on the two days that he was out.

d.    Defendant informed Charging Party that he was required to sign an authorization form to allow Defendant to obtain information from Charging Party's personal physician about his medical condition.

e.    Charging Party refused to sign the form, stating that he believed the inquiry into his medical condition was unlawful.

f.    Defendant informed Charging Party that it was Defendant's policy to check all doctors' notes to verify that the reasons for the absence are acceptable, and that although an employee could refuse to sign the release, the result would be that Defendant would not accept the excuse for the absence.

g.    Charging Party asked to take a copy of the form and respond the next day. Defendant consented to this request.

h.    Charging Party then modified the form to allow Defendant to verify with his doctor that he had been unable to work on the two days that he was out, but not to discuss his actual medical condition.

i.    When Charging Party presented Defendant with the modified form the next day, he was told that it was unacceptable.

j.    Charging Party again stated his belief that it was unlawful for Defendant to demand to know his medical information.

    k.    Defendant immediately fired Charging Party for being "an unsatisfactory temporary employee."

    9.    The ADA prohibits employers from making inquiries as to whether an employee is an individual with a disability unless the inquiry is shown to be job-related and consistent with business necessity.

    10.    Defendant's requirement that employees returning from sick leave sign a release of their medical information is a disability-related inquiry that is not job-related or consistent with business necessity.

    11.    Defendant's requirement that employees returning from sick leave sign a release of their medical information and its practice of disciplining, withholding pay from and/or taking any other adverse employment action against employees who fail to comply with this unlawful policy constitutes coercion, intimidation and/or interference with employees' exercise or enjoyment of their rights under the ADA.

    12.    Defendant's practice of disciplining, withholding pay from and/or taking any other adverse employment action against employees who refuse to comply with the unlawful policy constitutes retaliation against such employees for engaging in activity protected by the ADA.

    13.    The effect of the practices complained of above has been to deprive Charging Party and a class of other individuals of equal employment opportunities and otherwise adversely affect their status as employees.

    14.    The effect of the practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon Charging Party and similarly situated individuals.

    15.    The unlawful employment practices complained of above were intentional.

4

16.    The unlawful employment practices complained of above are continuing.

17.    The unlawful employment practices complained of above were done with malice and reckless disregard for the federally protected rights of Charging Party and similarly situated individuals, in violation of 42 U.S.C. § 12101, *et seq.*

## PRAYER FOR RELIEF

Wherefore, EEOC respectfully requests that this Court:

A.    Enjoin Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from making any disability-related inquiries that are not job-related and consistent with business necessity;

B.    Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices;

C.    Order Defendant to make whole all those individuals affected by the unlawful employment practices described above, by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary including re-instatement to eradicate the effects of Defendants' unlawful employment practices;

D.    Order Defendant to make whole all of those individuals adversely affected by the unlawful employment practices described above by providing compensation for nonpecuniary losses, including pain, suffering, and humiliation in amounts to be determined at trial;

E.    Order Defendant to pay all those individuals adversely affected by the unlawful employment practices described above punitive damages for Defendant's malicious and/or reckless conduct in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper.

H.    Award the EEOC its costs in this action.

## JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by this Complaint.

Dated:  September 27, 2007

Ronald S. Cooper
General Counsel

James Lee
Deputy General Counsel

Gwendolyn Y. Reams
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1801 L Street, N.W.
Washington, D.C.  20507

s/Elizabeth Grossman
_____

Elizabeth Grossman
Regional Attorney

s/Judy Keenan
_____

Judy Keenan
Supervisory Trial Attorney

s/Margaret A. Malloy
_____

Margaret A. Malloy
Trial Attorney, U.S. EEOC
33 Whitehall Street, 5th Floor
New York, New York 10004
margaret.malloy@eeoc.gov
Phone 212-336-3690
Fax 212-336-3623

# Exhibit E

| **United States Bankruptcy Court** | **Administrative Expense Claim Request** | |
|---|---|---|
| Southern District of New York<br>Delphi Corporation et al. Claims Processing<br>c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue<br>El Segundo, California 90245 | | Claim #16754<br>USBC SDNY<br>Delphi Corporation, et al.<br>05-44481 (RDD) |

| Debtor against which claim is asserted : | Case Name and Number |
|---|---|
| Delphi Corporation, *et al.* 05-444481 | In re Delphi Corporation., *et al.* 05-44481<br>Chapter 11, Jointly Administered |

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services p[...] to the Debtors prior to the commencement of the case. This Administrative Expense Claim Request form is to be used [...] connection with a request for payment of an administrative expense arising after commencement of the case pursuant [...] U.S.C. § 503.**

| Name of Creditor<br>*(The person or other entity to whom the debtor owes money or property)*<br><br>Stanley N. Straughter<br><br>Name and Address Where Notices Should be Sent<br><br>Stanley N. Straughter / PO Box 19391 / Rochester, NY 14619<br><br>Telephone No.<br>585-581-9166 | ✓ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
|---|---|
| | **THIS SPACE IS FOR COURT USE ONLY** |

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:      N/A | Check here if this claim ☐ replaces<br>☐ amends  a previously filed claim, dated: _____ |
|---|---|

**1. BASIS FOR CLAIM**

| | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ✓ Services performed | ☐ Wages, salaries, and compensation (Fill out below) |
| ☐ Money loaned | Your social security number  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 |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ✓ Taxes | from _____ to _____ |
| ✓ Other (Describe briefly) | (date)            (date) |
| Violation of Americans with Disabilities Act, 42 U.S.C. 12101 et seq. | |

| 2. DATE DEBT WAS INCURRED   August 16, 2006 | 3. IF COURT JUDGMENT, DATE OBTAINED: |
|---|---|

| 4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $ Unliquidated |
|---|
| ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges. |

**5. Brief Description of Claim (attach any additional information):**
I began employment with Delphi Corporation in Rochester, NY on May 22, 2006.  On August 14, 2006 and August 15, 2006, I was out of work per my doctor's instructions.  I was asked to sign a full medical release limited to the days I was out of work. I refused to sign the release and complained that I felt the inquiry was unlawful.  I was terminated immediately on August 17, 2006, in retaliation for opposing an unlawful inquiry under the ADA. I am seeking compensation for lost wages, benefits, pain & suffering, etc.

| 6. **CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.<br><br>7. **SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11".<br><br>8. **DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | **THIS SPACE IS FOR COURT USE ONLY**<br><br>**RECEIVED**<br><br>**DEC 14 2007**<br><br>KURTZMAN CARSON CONSULTANTS |
|---|---|

| Date<br><br>December 7, 2007 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>*Stanley N. Straughter*            Stanley N. Straughter | |
|---|---|---|



0544481071218000000000029

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 525-2006-01314 |

## New York State Division Of Human Rights
*State or local Agency, if any* — and EEOC

| Name *(indicate Mr., Ms., Mrs)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Stanley Straughter** | **(585) 581-9166** | **04-22-1977** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **935 Edge Creek Trail, Rochester, NY 14609** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **DELPHI CORP** | **500 or More** | **(585) 647-7000** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **P.O. Box 92700,  Rochester, NY 14692** | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|

| | | | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest | Latest |
| ☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☒ OTHER *(Specify below.)* | 08-17-2006 | 08-17-2006 |
| | ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began employment with the above named Respondent on May 22, 2006.

On August 14, 2006 and August 15, 2006, I was out of work per my doctor's instructions. Upon my return to work, I submitted a medical excuse from my doctor. The Respondent asked me to sign a full medical release. I questioned the release because I felt it exceed the permissible scope of medical inquiry for missing two days of work. Under information and belief, the Respondent has a policy of requiring full medical releases from employees when they are out sick. I signed the release, but limited it so that the Respondent could verify the days off and verify that it was due to a medical condition, but not to release my specific condition.

The Respondent then gave me a revised medical release, with language giving them full access to my medical information, but limited only to August 14, 2006 and August 15, 2006. I refused to sign the release and complained that I felt the inquiry was unlawful. I was immediately terminated on August 17, 2006, in retaliation for opposing an unlawful inquiry under the ADA.

I believe the Respondent has a policy and/or practice of making unlawful medical inquiries when employees are out sick, and I was terminated for opposing the unlawful medical inquiry, in violation of Title I of the Americans with Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| _____     _____<br>Date            Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)*<br><br>LINDA M. SCHMITT<br>Notary Public, State of New York<br>No. 01SC6095202<br>Qualified in Monroe County<br>Commission Expires July 7, 20__ |

# Exhibit
# F

**Hearing Date and Time: February 29, 2008 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtor. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO UNITED STATES OF AMERICA'S
MOTION FOR LEAVE TO FILE LATE CLAIM

1.       Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,
debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),
hereby object (the "Objection") pursuant to Rule 9006 of the Federal Rules of Bankruptcy
Procedures (the "Bankruptcy Rules"), to the United States Of America's Motion For Leave To
File Late Claim (Docket No. 12831) (the "Motion") filed by the United States of America (the
"Government").  In support of this Objection, the Debtors submit (i) the Declaration Of Evan
Gershbein In Support Of Debtors' Objection To United States Of America's Motion For Leave
To File Late Claim, executed and sworn to on February 27, 2008 by Evan Gershbein of
Kurtzman Carson Consultants LLC ("KCC"), the noticing agent in these chapter 11 cases (the
"Gershbein Declaration"), a copy of which is attached hereto as Exhibit A and (ii) the
Declaration Of Dean Unrue In Support Of Debtors' Objection To United States Of America's
Motion For Leave To File Late Claim, executed and sworn to on February 27, 2008 by Dean
Unrue, the claims administrator for Delphi in these chapter 11 cases (the "Unrue Declaration"), a
copy of which is attached hereto as Exhibit B.  In further support of this Objection, the Debtors
respectfully represent as follows:

Preliminary Statement

2.       On August 26, 2006, the Equal Employment Opportunity Commission
(the "EEOC") received a call from Stanley Straughter.  Mr. Straughter is a former temporary
employee hired postpetition who Delphi allegedly terminated on August 17, 2006 for refusing to
execute a medical release form to allow a Delphi doctor to confirm with Mr. Straughter's
personal physician that he was absent from work due to a medical condition.  Jennifer Carlo, an
investigator employed by the EEOC, promptly investigated Mr. Straughter's complaint that
Delphi violated his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101

2

et seq., (the "ADA") by reason of this policy.  Three weeks later, Ms. Carlo drafted a charge of

discrimination which Mr. Straughter reviewed, approved, and filed with the EEOC.  The charge

of discrimination asserted, among other things, that Mr. Straughter's rights under the ADA were

violated due to Delphi's "policy and/or practice of making unlawful medical inquiry when

employees are out sick."  See Charge of Discrimination, attached as part of Exhibit C to the

Declaration of Margaret A. Malloy (the "Malloy Declaration") (Docket No. 12832).

3.    It is uncontested that four months earlier, the EEOC was served with the

Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7),

3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving

Form And Manner Of Notice Thereof, entered by this Court on April 12, 2006 (Docket No. 3206)

(the "Bar Date Order") setting a bar date of July 31, 2006 (the "Bar Date") for creditors to file

proofs of claim in Delphi's chapter 11 cases and, in fact, did not file a timely proof of claim.  It is

also uncontested that Delphi served substantially all of its employees with the Bar Date Order

and, with the exception of Mr. Straughter, not a single employee ever filed a proof of claim

asserting that he or she was injured by Delphi's supposedly unlawful medical release policy.

4.    Moreover, even though the Government has asserted that the EEOC was

not aware of Delphi's allegedly unlawful policy at the time the bar date expired, there is no doubt

that the EEOC learned of this policy in September 2006 when Ms. Carlo actively began to work

with Mr. Straughter to prosecute his charge of discrimination against Delphi.  Notwithstanding

this knowledge, the EEOC inexplicably waited until October 2007, almost 13 months later,

before filing proof of claim number 16727 (the "Proof of Claim") asserting an unliquidated claim

3

on behalf of potential employees who were damaged by this policy prior to October 8, 2005 (the "Petition Date") (the "ADA Claim").[1]

5.        During this 13-month delay, Delphi undertook a massive claims estimation project to set a limit for asserted trade and other prepetition general unsecured claims (the "EPCA Target") that ultimately evolved into a closing condition that Delphi was required to meet, among other conditions, to obtain funding under a plan of reorganization from a group of outside investors (the "Plan Investors"). Throughout 2006 and into 2007, the EPCA Target was modified to account for progress made during Delphi's expedited claims administration process and to otherwise update claims estimates. In early September 2007, the EPCA Target was finalized at $1.45 billion and incorporated into Delphi's plan of reorganization (the "Plan").

6.        Because the EEOC's proof of claim was never filed in the Debtors' chapter 11 cases prior to the setting of the EPCA Target, the Debtors did not consider the EEOC's proof of claim in fixing, or measuring compliance with, the EPCA Target. During the confirmation hearing, Dean Unrue, the Delphi claims administrator, testified that the Debtors were below the EPCA Target by a mere $2 million. Based in part upon Mr. Unrue's testimony, this Court found the Plan was feasible and confirmed the Plan.

7.        After Mr. Unrue testified, and one day before this Court entered an order confirming the Plan, the EEOC finally responded to Delphi's month-old request to set a consensual cap regarding the EEOC's late claim until the merits of the claim, including whether the claim should be expunged on timeliness grounds, could be adjudicated in due course. The

---

[1]    Although the Debtors deny engaging in any illegal conduct under the ADA, to the extent the EEOC is pursuing a claim solely on Mr. Straughter's behalf, the Debtors do not, by this Objection, seek to disallow and expunge such claim on timeliness grounds because Mr. Straughter's claim clearly arose postpetititon and, if valid, would constitute an administrative expense claim not subject to the Bar Date Order. However, in the Proof of Claim, the EEOC is pursuing prepetition claims on behalf of other employees that it alleges were harmed by Delphi's medical release policy prior to the Petition Date. It is this claim that is subject to the Motion and this Objection and which the Debtors are now seeking to have disallowed and expunged.

4

EEOC informed the Debtors that it could only agree to a cap of $15 million. It based this number on potential damages of $100,000 per employee for 150 Delphi employees allegedly adversely affected by Delphi's sick leave policy. In justifying this number, the EEOC indicated its belief that the number could go even higher, stating that an additional 500 employees could receive similar damages. In its proposal, the EEOC did not, and still has not, identified a single Delphi employee nationwide, other than Mr. Straughter, who even arguably suffered any economic injury due to Delphi's allegedly unlawful policy. The EEOC also stated separately that if Delphi sought to estimate, on a nonconsensual basis, the Proof of Claim in the Bankruptcy Court, the EEOC would file a motion to withdraw the reference to the United States District Court for the Western District of New York. The settlement proposal was in stark contrast to a previous offer made by the EEOC to Delphi to resolve the entire Straughter matter for back pay, $115,000.00 for pain and suffering damages, and establishment of a fund in the amount of $200,000.00 to compensate other similar plaintiffs.

8.      Pursuant to this Court's protocol, Delphi filed a notice requiring the EEOC to file a motion for leave to file a late claim. On February 22, 2008, the Government filed the Motion and, in support, submitted a declaration of Margaret Malloy, the EEOC's trial lawyer assigned to the Straughter matter. Surprisingly, the EEOC did not submit a declaration of Ms. Carlo, the EEOC's chief investigator for the Straughter matter and the person at the EEOC with primary knowledge of facts relevant to the Motion. Instead, the EEOC decided to support its request with the declaration of a lawyer who did not even join the EEOC until late December 2006 and first became involved in the Straughter matter sometime in the summer of 2007. See Transcript of February 25, 2006 deposition of Margaret Malloy ("Malloy Dep. Tr."), attached hereto as Exhibit C at 7:23-8:2; 24:10-17. She could not even recall when she became involved in the Straughter matter but placed her involved sometime before May 22, 2007. Id. at 51:12-16.

5

Thus, she had no first hand knowledge of what the EEOC knew in September 2006 much less why it did not file a proof of claim when it received the charge of discrimination. Moreover, based upon instruction of her counsel, she generally refused to answer questions regarding facts set forth in her declaration, including whether the EEOC knew whether any Delphi employee, other than Mr. Straughter and three other reprimanded employees (each of whom only received written reprimands but were not fired), actually suffered economic injury by reason of Delphi's supposedly unlawful medical release policy. Id. at 30:3-19; 31:23-32:3; 66:13-65:3. Thus, because Ms. Malloy has no personal knowledge of the underlying facts during the relevant time period or, alternatively, refused to answer questions concerning potentially relevant facts, the EEOC has failed to submit credible, probative evidence in support of its Motion, thus warranting denial. Id. at 21:19-25; 29:22-30:14; 31:17-32:4; 33:6 -12; 36:13-24; 49:15-20; 51:22-53:9; 56:13-57:2; 61:7-18.

9.    Moreover, even if the Government's evidentiary submissions are considered by the Court, it still cannot demonstrate excusable neglect under the Pioneer factors. First and foremost, the Government has not provided any rational explanation why the EEOC waited over 13 months after learning of Delphi's supposedly unlawful policy before filing a proof of claim. Ms. Malloy offers no reason in her declaration and, when asked at deposition why the EEOC waited 13 months to file its proof of claim, her lawyer instructed her not to answer on the grounds that such information could not be divulged because of privilege. Id. at 49:15-20.[2] Furthermore Ms. Malloy confirmed that filing a proof of claim on behalf of the EEOC could have been done at any time and did not require levels of internal approval or any other lengthy authorization. Id. at 34:6-35:7. Thus, the ability to file a proof of claim was

---

[2]    At Ms. Malloy's deposition, the EEOC's counsel made a standing instruction to the wtiness not to answer questions when he objected to a question on the basis of a privilege. Id. at 13: 9-17.

clearly within the EEOC's control.  For unknown reasons, it waited until October 2007 to finally file the Proof of Claim.

10.     Second, the Debtors suffered prejudice as a result of the delay.  Because the Proof of Claim was not promptly filed, the Debtors were unable to build in the asserted amount of the Proof of Claim into the EPCA Target and, if necessary, adjust the EPCA Target if claims litigation was unsuccessful in reducing or disallowing the EEOC's claim.  Although the Debtors believe the EEOC's potential estimate of its claim is baseless, the size of the EEOC's asserted estimate underscores the prejudice to the Debtors if the Motion is granted.

11.     Third, the length of the delay and impact on Delphi's judicial proceedings further dictates denial of the Motion.  As stated above, during the 13-month delay, the Debtors set the EPCA Target and prosecuted claims objections to meet the stringent requirements imposed under the agreements with the Plan Investors.  If the Motion is granted, not only could it erode the progress the Debtors have achieved since confirmation to further reduce claims below the EPCA Target, but it could open the floodgates to other late claims that could jeopardize compliance with the EPCA Target and, accordingly, the Debtors' emergence from chapter 11.

12.     Finally, the timing of the filing of the proof of claim, the EEOC's disproportionate response to the Debtors' request to consensually cap the EEOC's unliquidated claim, and its threat to further delay adjudication of the claim by seeking to withdraw the reference if this Court tries to estimate the EEOC claim, allows this Court to draw its own inference regarding whether the EEOC is acting in good faith in prosecuting the Motion.  For the reasons set forth herein, the Motion should be denied and the Proof of Claim disallowed and expunged.

<u>Background</u>

13.    On April 12, 2006, this Court entered the order (Docket No. 3206)

establishing the Bar Date.

14.    On April 20, 2006, KCC served copies of the Bar Date Notice on a

comprehensive list of individuals and entities.  Specifically relevant to the ADA Claim, KCC

served the Bar Date Notice on the EEOC via U.S. mail at the address below, which is the address

of the EEOC set forth in the Complaint:

> EEOC
> 1801 L St. NW
> Washington, D.C.  20507

Gershbein Declaration at ¶4.  KCC also served the Bar Date Notice on the U.S. Attorney for the

Southern District of New York via U.S. mail at the address below:

> David N. Kelly USA
> US Attorney S District Of NY
> One St. Andrews Plaza
> New York, NY  10007

<u>Id.</u> at ¶ 4.  Finally, among the parties upon whom KCC served the Bar Date Notice were

substantially all Delphi employees.  Unrue Declaration at ¶¶ 4-6; Gershbein Declaration at ¶ 5.

15.    By the July 31, 2006 Bar Date, neither the EEOC nor any Delphi

employee filed a claim that asserted the allegedly discriminatory conduct set forth in the ADA

Claim.

16.    On August 17, 2006, Mr. Straughter, a temporary employee who was

hired by Delphi on May 22, 2006, was terminated.  <u>See</u> Malloy Declaration at ¶¶ 4-8.  On

September 22, 2006, Mr. Straughter filed a charge of discrimination with the EEOC.  <u>Id.</u>  The

EEOC did not file a proof of claim on account of the ADA Claim until approximately 13 months

later, on October 17, 2007.

17.    Over 16,000 proofs of claim were timely filed by the Bar Date.  Together with scheduled liabilities for which no proof of claim had been filed, these proofs of claim asserted more than $36 billion in liquidated amounts plus certain unliquidated amounts.

18.    Throughout the summer and fall of 2006, the Debtors were heavily involved in framework discussions with their key stakeholders to come to an agreement on a plan for the Debtors' emergence from chapter 11.  See Unrue Declaration at ¶ 10.  It became apparent that the Debtors' ability to consummate a framework agreement, and obtain necessary funding from outside investors, was predicated upon a clear understanding of the scope of the general unsecured claims that would ultimately be allowed in these cases.  Id.  To that end, in October and November 2006, the Debtors began a massive internal claims estimation effort to gauge the scope and amount of general unsecured claims anticipated at emergence from chapter 11 and devised detailed claims administration procedures to efficiently and expeditiously adjudicate disputed and unliquidated claims.  Id.

19.    On December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with the Plan Investors and a plan framework support agreement with those investors and General Motors Corporation, both of which contained the EPCA Target, a limit on trade and other unsecured claims that could not be exceeded as a condition to plan funding.  Id. at ¶ 11.

20.    The Debtors then began an extensive claims administration process designed to expeditiously reduce the claims pool to meet the EPCA Target, filing 27 omnibus claims objections to date.  Id. at ¶ 12.

21.    Throughout late 2006 and into 2007, the EPCA Target was modified to account for progress made during Delphi's expedited claims administration process and to

9

otherwise update claims estimates. Id. at ¶ 13. In early September 2007, the EPCA Target was

finalized at $1.45 billion and incorporated into Delphi's plan of reorganization (the "Plan").  Id.

22.    On September 28, 2007, without leave of this Court, the EEOC filed a

complaint against Delphi in the United States District Court for the Western District of New

York alleging violations of the ADA based on Mr. Straughter's charge of discrimination and on

behalf of Mr. Straughter and other unidentified Delphi employees (the "Complaint").  On

October 18, 2007, also without leave of this Court, and 15 months after the Bar Date and at least

13 months after the EEOC knew of the ADA Claim, the EEOC filed the Proof of Claim,

attaching a copy of the Complaint.  The Debtors objected to the ADA Claim on October 26,

2007 (Docket No. 10738).

23.    As early as November 20, 2007, however, counsel for the Government

and the Debtors began to discuss a possible resolution of the Debtors' objection to the ADA

Claim, including capping the ADA Claim.  On January 24, 2008, counsel for the Government

sent counsel for the Debtors an email indicating that the EEOC would not agree to cap the ADA

Claim in an amount less than $15 million.

24.    This was in stark contrast to the Government's previous offer to Delphi

eight months earlier to settle the matter at a fraction of the proposed $15 million amount.  By

letter dated May 23, 2007, a copy of which is attached as Exhibit N to the Malloy Declaration,

the EEOC initially made Delphi an offer of conciliation to settle the Straughter matter, which

offer included, among other things, (a) back pay for Straughter, (b) $115,000.00 for "emotional

distress, pain, suffering, humiliation or embarrassment", and (c) the creation by Delphi of a

$200,000.00 fund to provide compensation for other Delphi employees affected by Delphi's

allegedly discriminatory conduct.  Delphi did not accept the EEOC's offer.

25.    On January 25, 2008, this Court entered an order (Docket No. 12359)

confirming the Plan.  The effectiveness of the Plan is contingent on, among other things,

satisfaction of the EPCA Target.

Argument

A.    <u>The EEOC Was Properly Served With And Is Presumed To Have Received The Bar Date
Notice</u>

26.    The EEOC does not contest, nor could it, that KCC served the Bar Date

Notice on both the EEOC and the U.S. Attorney for the Southern District of New York.

Gershbein Declaration at ¶ 4.  Even if it did, there is a presumption that the EEOC was properly

served with the Bar Date Notice by KCC's confirmation that it mailed the Bar Date Notice to

both parties.  <u>See</u> <u>Hagner v. U.S.</u>, 285 U.S. 427, 430 (1932) ("proof that a letter properly directed

was placed in a post office creates a presumption that it reached its destination in usual time and

was actually received by the person to whom it was addressed"); <u>In re Mid-Miami Diagnostics,</u>

<u>L.L.P.</u>, 195 B.R. 20, 22 -23 (Bankr. S.D.N.Y. 1996) ("A creditor's denial of receipt, standing

alone, does not rebut the presumption that the mail was received, but merely creates a question of

fact.").  "While the presumption [of receipt] is a rebuttable one, it is a very strong presumption

and can only be rebutted by specific facts and not by invoking another presumption and not by a

mere affidavit to the contrary." <u>In re Dana Corp.</u>,  No. 06-10354, 2007 WL 1577763, *4

(Bankr.S.D.N.Y. May 2007).  The Government has failed to present any objective evidence to

rebut this presumption.

27.    Because the EEOC is presumed to have received the Bar Date Notice, it

was obligated to follow the procedures referenced therein to file a proof of claim, or risk having

11

its claim barred. The EEOC did not file the Proof of Claim before the Bar Date,[3] and it should

not be granted an extension of the Bar Date.

B.    The Government Has Not Met Its Burden Of Proof For Establishing Excusable Neglect
      Under Bankruptcy Rule 9006(b)

28.    Because the EEOC is presumed to have received the Bar Date Notice, the

EEOC can file the untimely Proof of Claim only if the Government meets its burden to establish

excusable neglect. See In re R.H. Macy & Co., Inc., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993)

("the burden of proving 'excusable neglect' is on the creditor seeking to extend the bar date").

The Government cannot meet this burden.

29.    The United States Supreme Court has outlined factors to be considered in

determining whether there is excusable neglect on the part of the moving party, which includes:

"the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial

proceedings, the reason for the delay, including whether it was within the reasonable control of

the movant, and whether the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick

Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). The Second Circuit applied the factors set forth

in Pioneer and noted that "reason for the delay" is the most important factor in the analysis.

Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115,

123 (2d Cir. 2005). The Second Circuit has also noted that, under the Pioneer standard, "'the

equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule' and

'that where the rule is entirely clear, we continue to expect that a party claiming excusable

neglect will, in the ordinary course, lose under the Pioneer test.'" Id. (quoting Silivanch

v.Celebrity Cruises, Inc., 333 F.3d 355, 366-67 (2d Cir. 2003)).  Here, the EEOC's alleged

---

[3]    As noted above, the EEOC filed proof of claim number 14821, on the Bar Date, which asserted a completely
different claim than the ADA Claim.  Filing a proof of claim on the Bar Date suggests that the EEOC was in
fact served, and had knowledge of, the Bar Date.

reason for its delay – that it did not know of the existence of the ADA Claim until after the Bar

Date and that it took 13 months to investigate the claim – does not warrant a departure from the

Second Circuit's strict approach.  The EEOC waited at least 13 months after it knew of the ADA

Claim to file the Proof of Claim and the employees on whose behalf the ADA Claim is asserted

knew, or should of known, of the ADA Claim well before the Bar Date.  This delay, including

the EEOC's failure to adequately explain the delay, coupled with the other Pioneer factors,

including the prejudice to the Debtors, weighs heavily against permitting EEOC to file a late

proof of claim.

(i)        The EEOC's Alleged Lack Of Knowledge Of The ADA Claim
           Does Not Constitute Excusable Neglect

30.    The Government asserts that the reason for the EEOC's delay in filing the

Proof of Claim was that the EEOC did not know about the existence of the ADA Claim until

after the Bar Date.  See Motion at 2.  Although the Government asserts that the EEOC exercised

"efficient and diligent prosecution of its claims," it has not, however, provided factual support to

justify the EEOC's 13-month delay.  Further, the employees on whose behalf the Complaint and

Proof of Claim were filed had, or should have had, knowledge of the claim at the time the

conduct giving rise to such claim occurred, which would have been well in advance of the Bar

Date.  To allow the EEOC to pursue a recovery on behalf of employees who themselves knew of

the claims but missed the Bar Date would be to circumvent the policy behind the Bar Date with

respect to these employees by rewarding their failure to file a claim with a chance at recovery

simply because the EEOC did not know about the existence of a claim.

31.    As noted above, the most important Pioneer factor in determining

excusable neglect is the reason for the delay.  See Midland, 419 F.3d at 123.  Even assuming that

the EEOC's lack of knowledge of the ADA Claim is a valid reason for delay – which, as

13

explained in further detail below, the Debtors dispute – the Government has not provided a valid

explanation for the EEOC's 13-month delay after it had knowledge of the ADA Claim.  Instead,

the Government asserts that the EEOC was engaged in "efficient and diligent prosecution of its

claims" and suggests that the Debtors are partially responsible for the EEOC's delay by not

timely responding to the EEOC's information requests.

     32.     However, even though it has the burden to prove excusable neglect, the

only factual support submitted by the Government to support its allegations is the declaration of

an EEOC lawyer, Ms. Malloy, who was not involved in the Straughter matter until sometime in

the summer of 2007.  <u>See</u> Malloy Dep. Tr. at 7:23-8:2; 24:10-17; 51:12-16.  Because Ms. Malloy

has no personal knowledge of what occurred prior to her involvement in the summer of 2007, the

Government has provided no factual support to account for at least the first eight months of the

EEOC's delay.  Furthermore, when asked point-blank to explain the 13-month delay, the

Government – again, the party with the burden of proof – has refused to provide a sufficient

explanation, but rather has hid behind privileges.  <u>Id.</u> at 49:15-20.

     33.     Ms. Malloy did, however, confirm that the EEOC could have filed a proof

of claim while it was completing its lengthy investigation of Mr. Straughter's allegations.  <u>Id.</u> at

34:6-35:7.  Indeed, Ms. Malloy testified that no extraordinary approvals were needed within the

EEOC, or any other part of the Government, to file such a proof of claim and that the EEOC's

investigation protocols did not need to be completed to file a proof of claim.  <u>Id.</u>  But again, even

though the Government has the burden of proof, Ms. Malloy refused to explain why the EEOC

failed to file such a claim until 13 months after discovering Delphi's supposedly unlawful

medical release policy.

     34.     In analyzing the reason (or lack thereof) for the EEOC's delay in the

context of the <u>Pioneer</u> factors, a recent unpublished <u>Enron</u> decision is instructive.  In that case, a

creditor, with a claim based upon a guaranty executed by the debtor, sought leave to file a proof

of claim approximately 20 months after the bar date. In re Enron Corp., 2007 WL 294114, *2

(Bankr. S.D.N.Y. 2007). The creditor asserted that its failure to timely file a claim was the result

of its inability to verify that the guaranty had actually been executed by the debtor, that the

creditor worked diligently to find an executed copy of the guaranty but was unable to do so until

well after the bar date, and that the debtor added to the delay by refusing to provide an executed

copy of the guaranty. Id. The court, however, held that the creditor did not satisfy the excusable

neglect standard. Id. at *7. In so holding, the court noted that the debtor was not obligated to

assist the creditor in finding a copy of the guaranty and that the creditor could have sought the

intervention of the court if it believed the debtor was not properly responding to the creditor's

inquiries. Id. at *6. In addition, the court noted that the creditor could have simply filed a proof

of claim without attaching an executed copy of the guaranty and explained why the executed

copy was missing. Id.

        35.     Here, the Government offers no explanation for the EEOC's failure to file

a protective proof of claim while it completed its investigation, though Ms. Malloy admitted that

filing a proof of claim was within the reasonable control of the EEOC and it could have done so

without extraordinary approvals within the EEOC. Malloy Dep. Tr. at 34:6-35:7. In addition,

although the Debtors maintain that they acted properly during the EEOC's investigation, just as

the court in the Enron decision noted with respect to the creditor in that case, the EEOC could

have sought relief from this Court if it believed that the Debtors were not properly and timely

responding to its information requests in conjunction with its investigation. The EEOC did not

make such a request. As the Enron decision illustrates, the Government's unsupported argument

that the Debtors somehow caused the EEOC's delay does not meet the excusable neglect

standard.

36.    In the Motion, the Government suggests that not allowing the EEOC to file an untimely claim would put the EEOC "on the horns of a dilemma" because it would be forced to choose between filing a discrimination charge prior to a full investigation or not file a charge at all.  See Motion at 18.  The Government's argument misses the point.  As Ms. Malloy admitted, the EEOC could have filed a proof of claim prior to the completion of its supposed "full-blown investigation".  Malloy Dep. Tr. at 34:6-35:7.  Indeed, bar dates, by their very nature, necessarily put some creditors in the difficult position of having to quickly figure out what claims they may have and how they need to protect themselves, and claimants often file unliquidated and/or contingent claims to protect their rights even though they may not yet have all the information relevant to their claims, as the Debtors have experienced first-hand in these cases.[4]  The EEOC is no different than any of these other creditors, even if it is required by its own internal regulations to follow certain investigative protocol prior to filing an actual complaint asserting discrimination.  The EEOC could have filed a protective proof of claim during the 13 months after it learned of the ADA Claim, but chose not to, and has provided no justification for that choice.  See In re Calpine Corp., 2007 WL 4326738, *6-7 (S.D.N.Y. 2007) (finding that a delay of over six months in filing claims after bar date not result of excusable neglect and noting that the claimants "had the ability to . . . file supplemental Proofs of Claim at any time and have not offered any explanation as to why no such supplements were filed until such a late date."); In re Northwest Airlines Corp., 2007 WL 498285, *3 (Bankr. S.D.N.Y. 2007) ("[Movant] cannot properly ground its excusable neglect argument on the fact that it conducted

---

[4]    The Debtors note that the Bar Date was approximately 10 months after the Petition Date and only approximately four months after the Bar Date Notice was served, and thus all creditors had less than 13 months to complete their investigation and diligence, but most still managed to timely file claims.

an investigation and tried to resolve the issue by good faith negotiations. All of this can be done after a filing is first made and rights are preserved.").

37.    Furthermore, the cornerstone of the Government's argument – that the EEOC did not have knowledge of the ADA Claim until after the Bar Date – is undermined by the fact that the employees who did have knowledge of a claim (to the extent one existed) did not file proofs of claim. Because the injunctive relief sought in the Complaint is prospective, it has no bearing on, and, indeed, cannot be satisfied through, the Proof of Claim,[5] and thus the compensatory relief for alleged prepetition violations of the ADA is the only relief relevant to the Proof of Claim. But, all employees on whose behalf this compensatory relief is sought would have had knowledge of a claim at the time such discriminatory conduct occurred, and, to preserve their rights to assert such a prepetition claim against the Debtors' estates, were obligated to file a proof of claim regardless of whether the EEOC had knowledge of the claim. See O'Loghlin v. County of Orange, 229 F.3d 871, 874 (9th Cir. 2000) (holding that employee's ADA claim based on prepetition conduct was discharged in bankruptcy where employee failed to file proof of claim, even though employee never received right to sue letter from EEOC) (citing McSherry v. Trans World Airlines, Inc., 81 F.3d 739, 741 (8th Cir.1996)).

38.    Because no employee filed a prepetition proof of claim arising from the same set of facts as the ADA Claim,[6] the employees adversely affected by Delphi's allegedly illegal conduct are barred from asserting an ADA claim against the Debtors based upon prepetition conduct. To allow the EEOC to file an untimely proof of claim on behalf of these

---

[5]    By their objection to the Proof of Claim, the Debtors are not seeking to cutoff any claim to injunctive relief, nor any other postpetition claim, that the EEOC holds. Although the Debtors dispute the merits of any such claims, by this Objection they are seeking to expunge the prepetition Proof of Claim only.

[6]    Slaughter, the charging employee who initiated the ADA Claim, was not hired until after the Petition Date, and thus any claim that he holds did not arise prepetition.

17

employees, and recover compensatory damages directly for the benefit of such employees, on the

grounds that the EEOC did not know about the ADA Claim, would allow the employees to

circumvent the Bar Date by recovering, through the EEOC, on account of claims for which they

are individually barred from asserting.  See E.E.O.C. v. Jefferson Dental Clinics, PA, 478 F.3d

690, 696-99 (5th Cir. 2007) (distinguishing between the EEOC's role when it seeks injunctive

relief versus monetary relief and holding that res judicata precludes EEOC from recovering

monetary damages on behalf of employee who previously lost individual state court

discrimination case).[7]

> 39.    The Government relies on Lone Star Inds. v. Rankin County, Miss. Bd. of

Supervisors (In re New York Trap Rock Corp.), 153 B.R. 642 (Bankruptcy S.D.N.Y. 1993) for

the proposition that its alleged lack of knowledge of the ADA Claim excuses it from filing a

timely proof of claim.  Contrary to the Government's assertions, Lone Star is inapposite.  In that

case, the government asserted a claim against the debtor for cleanup and response costs under the

Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") as a

result of prepetition environmental contamination by the debtor.  Id. at 644.  Neither the Debtor

---

[7]    The Debtors acknowledge the Supreme Court's decision in E.E.O.C. v. Waffle House, Inc., 534 U.S. 279 (2002) and its limited holding that an arbitration agreement between an employee and employer does not preclude the EEOC from pursuing victim-specific monetary relief on behalf of such employee. See also E.E.O.C. v. Sidley Austin LLP, 437 F.3d 695, 696 (7th Cir. 2006) (relying on Waffle House and holding that EEOC was not precluded from pursuing monetary damages on behalf of employees barred from bringing their own suits). However, as acknowledged by the Supreme Court in its ruling, "The only issue before this Court is whether the fact that [the individual employee] has signed a mandatory arbitration agreement limits the remedies available to the EEOC." Id. at 297.  Accordingly, Waffle House, which relied on part in the lack of privity of contract between the EEOC and an employer who signs an arbitration agreement with its employee, does not address the issue presented here.  Additionally, because of the unique factual circumstances presented in the bankruptcy context, only prepetition claims are affected by the Bar Date, and any remedy of the EEOC with respect to postpetition conduct, including injunctive relief, is unaffected.  Also, the fresh start policy underlying the Bankruptcy Code is unique to the bankruptcy context and was not present in the Waffle House or any other non-bankruptcy decision relying on Waffle House.  A debtor's ability to understand its prepetition claim and emerge from bankruptcy with a fresh start requires that it not be subject to late claims filed by the government on behalf of claimants that the debtor believed were otherwise barred by the bar date.  Accordingly, the Debtors believe that the limited holding of Waffle House is not applicable.

nor the government knew of the contamination until after the bar date. Id. 647. The court held

that the government's lack of knowledge of its claim may constitute excusable neglect. Id.

However, a CERCLA claim is much different than an ADA claim and thus Lone Star is not

analogous to the issue at bar. A CERCLA claim is based on environmental contamination that,

by its very nature, is difficult to detect at the point at which a claim arises because the

contamination usually occurs underground. Not so with an ADA claim. As noted above, an

employee adversely affected by unlawful employer conduct will known of his claim at the time

of such conduct. Accordingly, the Lone Star court's analysis of an environmental claim is not

applicable to a discrimination claim, and Lone Star has little precedential value.

        40.     More importantly, however, the bankruptcy court, in a separate opinion

deciding the same matter, held that the claimant in Lone Star did not meet the excusable neglect

standard because, like the EEOC here, it waited to long to file its late claim. See In re New York

Trap Rock Corp., 153 B.R. 648 (Bankr. S.D.N.Y. 1993). The court noted that the government

waited nine months until after it knew of the existence of the oil contamination to file its

CERLCA claim and found that "the delay in filing the proposed claim since May and June of

1992, when the [government] first acquired actual notice of the potentially hazardous condition,

was solely within the [government's] control." Id. at 653. The court held that "[t]his delay is

inexcusable." Id. Here, the EEOC waited 13 months after it knew of the ADA Claim to file the

Proof of Claim. Therefore, even if the first opinion in Lone Star supports the Government's

argument that the EEOC's lack of knowledge excuses its failure to meet the Bar Date, the later

decision squarely negates the EEOC's request for relief because the EEOC waited 13 months

after it learned of the ADA Claim to file the Proof of Claim.

(ii)    The Debtors Would Be Prejudiced By Allowing The EEOC To
        File A Late Claim

41.    Allowing the EEOC to file the Proof of Claim will prejudice the Debtors.

Although the EEOC's proposed claim itself may be only one of thousands, allowing the EEOC to

file the Proof of Claim may inspire many other similarly situated potential claimants to file

similar motions and thus would unfairly impede the Debtors' ability to meet a condition to its

emergence from chapter 11 pursuant to the confirmed Plan.  Courts have often looked primarily

to concerns about opening the floodgates to similar late-filed claims as a reason not to allow late

claims.  See, e.g., In re Enron Corp., 419 F. 3d 115, 132 (2d Cir. 2005); In re Kmart Corp., 381

F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart

could easily find itself faced with a mountain of such claims"); Enron Creditors Recovery Corp.,

__ B.R. __, 2007 WL 1705653, at *10-11 (Bankr. S.D.N.Y. June 13, 2007) ("It can be presumed

in a case of this size with tens of thousands of filed claims, there are other similarly-situated

potential claimants. . . . Any deluge of motions seeking similar relief would prejudice the

Debtors' reorganization process." (citation omitted)); In re Dana Corp. 2007 WL 1577763, *6

(Bankr.S.D.N.Y. 2007) ("the floodgates argument is a viable one").

42.    As stated above, in October and November 2006, the Debtors began a

massive internal claims estimation effort to gain an understanding of the scope and amount of the

general unsecured claims filed against the Debtors, which would be necessary for the Debtors to

obtain funding from outside investors and emerge from chapter 11.  See Unrue Declaration at 12.

In the year and a half since the Bar Date and the 15 months since the commencement of the

internal claims estimation effort, the Debtors have achieved great progress towards achieving the

EPCA Target.  Id. at 14.

20

43.     Had the EEOC filed its untimely unliquidated Proof of Claim a year earlier, when it first acquired actual notice of an alleged violation from Mr. Straughter's formal executed complaint against Delphi, the Debtors would have been able to include the Proof of Claim in its internal claims estimation process  and factor the unliquidated Proof of Claim into its calculation of the EPCA Target. Id. at 15.  Opening the door to late unliquidated claims such as the EEOC's, after the EPCA Target has been relied upon by all those with a stake in the negotiations that allowed the Debtors to confirm its Plan, would erode progress the Debtors have made in further reducing claims below the EPCA Target and could threaten the Debtors' ability to emerge from chapter 11. Id.

(iii)    The Good Faith Factor

44.     As stated above, the timing of the filing of the proof of claim, the EEOC's disproportionate response to the Debtors' request to consensually cap the EEOC's unliquidated claim, and its threat to further delay adjudication of the claim by seeking to withdraw the reference if this Court tries to estimate the EEOC claim, allows this Court to draw its own inference regarding whether the EEOC is acting in good faith in prosecuting the Motion  The good faith of the moving party is an additional Pioneer factor.  See Midland, 419 F.3d at 123.

## Conclusion

45.     The Government seeks to allow the EEOC to maintain its late proof of claim without having satisfied any of the grounds for relief from the Bar Date Order.  Relief under Bankruptcy Rule 9006(b) is not available to the EEOC.  Accordingly, the Motion should be denied.

## Memorandum Of Law

46.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

        WHEREFORE the Debtors respectfully request that this Court enter an order (a)

denying the Motion, (b) disallowing and expunging the Proof of Claim, and (c) granting them

such other and further relief as is just.


Dated: New York, New York
      February 28, 2008


                        SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP


                        By: /s/ John Wm. Butler, Jr.
                            John Wm. Butler, Jr. (JB 4711)
                            John K. Lyons (JL 4951)
                            Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois 60606
                        (312) 407-0700

                              - and –


                        By: /s/ Kayalyn A. Marafioti
                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036
                        (212) 735-3000

                        Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession

# Exhibit
# G

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, ET AL.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


                U.S. Bankruptcy Court

                One Bowling Green

                New York, New York


                February 29, 2008

                10:07 a.m.


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1    MOTION for Approving Patent License Settlement with Denso

2    Corporation

3

4    CLAIM Objection Hearing Regarding Claim of Furukawa Electric

5    Co. Ltd.

6

7    MOTION of Equal Employment Opportunity Commission for Leave to

8    File Late Proof of Claim

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Esther Accardi

25

3

```
 1    A P P E A R A N C E S :

 2    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 3         Attorneys for Debtors

 4         333 West Wacker Drive

 5         Chicago, Illinois 60606

 6

 7    BY:  JOHN K. LYONS, ESQ.

 8         ADLAI HARDIN, ESQ.

 9

10

11    TOGUT SEGAL & SEGAL, LLP

12         Attorneys for Debtors

13         One Penn Plaza

14         New York, New York 10119

15

16    BY:  ANDREW WINCHELL, ESQ.

17

18

19    UNITED STATES DEPARTMENT OF JUSTICE

20    OFFICE OF THE UNITED STATES TRUSTEE

21         Attorneys for the EEOC

22         86 Chambers Street

23         New York, New York 10007

24

25    BY:  MATTHEW L. SCHWARTZ, ESQ.
```

VERITETEXT/NEW YORK REPORTING COMPANY

212-267-6868                                        516-608-2400

4

1    BLANK ROME, LLP

2         Attorneys for Denso

3         405 Lexington Avenue

4         New York, New York 10174

5

6    BY:  MELISSA S. VONGTAMA, ESQ.

7

8    MARGARET MALLOY, ESQ., EEOC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1                       P R O C E E D I N G S

2            THE COURT:  Please be seated.  Okay.  Delphi

3    Corporation.

4            MR. LYONS:  Good morning, Your Honor.  John Lyons on

5    behalf of the debtors.

6            THE COURT:  Good morning.

7            MR. LYONS:  This is our twenty-first claims hearing.

8    And, Your Honor, and we have one contested matter today.  We

9    have two other matters that I'd like to take first, though.

10   They're handled by Togut Segal and they involve some

11   compromises at compromised motions.

12           THE COURT:  Okay.

13           MR. WINCHELL:  Good morning, Your Honor.  Andy

14   Winchell for Togut Segal & Segal, LLP, on behalf of the

15   debtors.  The first item on the agenda this morning is a motion

16   to approve for patents -- license settlement agreement with

17   Denso Corporation.  This arises out of the claims context

18   because Denso filed three claims, claims 12339, 12340, 12341,

19   for alleged patent infringement.  Each claim was in the amount

20   of 697,778 dollars.  One claim against DAS, LLC, one against

21   Delphi Corporation, and one against Delphi Technologies.

22           Your Honor, the settlement was arguably in the

23   ordinary course of business, but we, out of an abundance of

24   caution decided to bring this motion, give all parties an

25   opportunity -- some notice, and a chance to inquire about the

6

1    terms of the settlement.  We did receive one inquiry about the

2    settlement, that was from the creditors' committee, it came a

3    couple of weeks ago.  FTI responded and the creditors'

4    committee is now supportive of the settlement, so they did not

5    end up filing any objection.

6        After the filing of these three claims, there was

7    approximately a year/year and a half worth of arms length

8    negotiations between sophisticated parties, representing by

9    competent counsel, Melissa Vongtama of Blank Rome is here

10    representing Denso.  The result of this, had a license

11    settlement agreement, which we filed under seal, pursuant to

12    your order.

13        There are two remaining provisions of the settlement

14    agreement, one of which is obviously the withdrawal of the

15    three claims, that's not confidential at all.  The rest of the

16    settlement agreement contains highly sensitive pricing

17    information which is confidential and therefore we filed it

18    under seal.

19        THE COURT:  Because it's essentially the patent

20    license.

21        MR. WINCHELL:  Absolutely, Your Honor.  But

22    otherwise, Your Honor, we consider this in the best interest of

23    the estate and request it be approved.

24        THE COURT:  I reviewed the license, and I was going

25    to ask you but you've already told me, the creditors' committee

7

1    considered it also.

2         MR. WINCHELL:  Yes.

3         THE COURT:  So in light of that and there being no

4    objections, I'll approve the settlement.  As you noted also, it

5    includes approval of the license agreement.

6         MR. WINCHELL:  Thank you, Your Honor.

7         THE COURT:  Okay.

8         MR. WINCHELL:  And the second item, Your Honor, is

9    the claims objection hearing regarding the claim of Furukawa

10   Electric.  This is a purely housekeeping matter.  The claim was

11   superseded -- opposing counsel confirmed to us on Wednesday

12   that the claim should be expunged as being superseded.  We have

13   that with an e-mail they transmitted to us.  They're not here.

14   They did not want to go through the effort of having a

15   stipulation, they just intend to have us proceed.

16        THE COURT:  Okay.  So how's that going to be

17   memorialized, do you have an order on that?

18        MR. WINCHELL:  We'll have an order on that, yes.

19        THE COURT:  Okay.  Fine.  Then, I'll sign that when

20   you give it to me, the claim is conceded -- duplicate of --

21   superseded by subsequent proof of claim.

22        MR. WINCHELL:  Very good.  Thank you, Your Honor.

23        THE COURT:  Okay.

24        MR. LYONS:  Your Honor, the third item on the agenda

25   is the contested matter.  And that's the motion of the Equal

8

1   Opportunity Commission for a leave to file a late proof of

2   claim.  I'll yield the podium to the United States.

3          THE COURT:  Okay.

4          MR. SCHWARTZ:  Good morning, Your Honor.  Matthew

De

l

e

5   Schwartz for the United States of America.  We're here for a

6   hearing on the United States' motion for leave to file a late

7   claim, that's the claim of the Equal Employment Opportunity

8   Commission.  At the outset, I would like to ask that this

9   hearing be adjourned to a time next week.  We were served with

10   Delphi's papers yesterday morning.  I have personally been on

11   trial before Judge Stein since the beginning of the month,

12   concluding yesterday, and so was not able to turn to the papers

13   until after that.  I don't think that we've had adequate time

14   to review them.  I would like to put in a response, especially

15   in view of the fact that Delphi's papers implicates serious

16   evidentiary problems, I think that should be briefed.  There

17   are large portions of the response that I feel should be

18   stricken, because they disclose improper settlement material.

19   And so we would ask at the outset that the hearing be adjourned

20   so that we could file reply papers.

21          THE COURT:  Well, let me first hear about the

22   evidentiary record for this matter.  I was provided with an

23   exhibit index which indicated that the last item in the index,

24   a January 8, 2008 e-mail, is in dispute.  I took from that that

25   the other items were not.  I didn't read the e-mail because I

9

1    knew it was in dispute.  Was that a fair assumption?

2        MR. SCHWARTZ:  It's a fair assumption, of course,

3    that we dispute the admissibility of item 8.  There is one

4    other item, it's an item actually that we've included as

5    Exhibit N to Ms. Malloy's declaration, that is admissible.  But

6    the use that Delphi  has made of that document is not

7    acceptable under the rules of evidence.  In addition, they have

8    disclosed the contests of settlement discussion in their motion

9    papers, their brief.  That is not reflected in any of the

10   documents.  And those portions of the brief should also be

11   stricken.  And there specifically, I'm referring to with

12   respect to Exhibit N, that is the conciliation letter from the

13   EEOC during the investigative process.  We included that

14   basically to give a full picture of the investigation.  And

15   because by the EEOC's regulations, they were required to enter

16   into conciliation efforts.  Under Rule 408, in other words, the

17   use of that settlement material was to rebut an argument of

18   undue delays, specifically, explicitly under the rules of

19   permissible use.  The use that Delphi has made of that document

20   is (1) to look at the actual terms of the conciliation offer,

21   to say this number, the number that's in that letter which may

22   have read, is 200,000 dollars, and that is the actual amount of

23   the claim.  And then they used that to try to impeach the

24   amount of the later settlement offer.  You may not have read

25   the e-mail but you read the number because its all throughout

10

1   their brief, so if you read the brief you know that.

2          THE COURT:  But you don't want to have either of the

3   settlement offers in for purposes of the amount of the claim?

4          MR. SCHWARTZ:  For purposes of the amount of the

5   claim, that's correct.

6          THE COURT:  I agree with you on that.

7          MR. SCHWARTZ:  And in addition, there is commentary

8   in Delphi's --

9          THE COURT:  I mean, it's admissible for other

10  purposes, but under 408 it can't be admitted to go to show the

11  amount of the claim.

12         MR. SCHWARTZ:  I think that is the only purpose that

13  Exhibit 8 is being offered.  I know in our conversations, Mr.

14  Lyons has said that this goes to the good faith prong of the

15  pioneer analysis.  But that can't be right, this is not good --

16  it doesn't have anything to do with the good faith of the EEOC

17  and filing the claim when it did.  If anything, it has to --

18         THE COURT:  Well, I haven't read it.  So as long as

19  it's not being admitted to show the amount of the claim Mr.

20  Lyons can make the argument and you can say that's what it's

21  doing, and I'll consider it at that point, if he wants to rely

22  on it.

23         MR. SCHWARTZ:  Okay.  And there are also statements

24  throughout the brief about the content of settlement

25  discussions.  And in particular, there is a suggestion in the

11

1   papers that I threatened them that if they were to litigate
2   this -- that if they were to litigate this claim, I would have
3   moved to withdraw the reference in this case.  That is, first
4   of all, not at all what I said.  What I said was, if they were
5   going to litigate the merits of the claim, it might make sense
6   to agree to withdraw the reference so it can be consolidated
7   with the enforcement action in Buffalo, so as not to duplicate
8   effort.  But in any case, that also came in the context that
9   settlement is not in any way admissible in this proceeding.
10          THE COURT:  Well, why is that?  Everything you say in
11  the context of a settlement is not shielded.
12          MR. SCHWARTZ:  I think that under Rule 408 that's not
13  the case.  I think that discussions in the context of a
14  settlement are shielded.
15          THE COURT:  No, that's not right.  Not every
16  discussion.  If it goes to an issue of good faith, it isn't.
17  Now, you -- it's not that big a point, frankly.  I take with a
18  grain of salt the whole -- the whole issue.  But --
19          MR. SCHWARTZ:  That also goes to an issue on the
20  merits because these are not the relevant good faith arguments.
21  Again --
22          THE COURT:  But again, I'm just talking about the
23  evidentiary issues to see whether they really are something

                                                         De
                                                         l
                                                         e

24  that needs to be briefed.  So far I don't think they do.  You

                                                         De
                                                         l
                                                         e

25  won on one and I think legitimately you lost on the other and I

12

1    don't think any briefing would have changed that, particularly
2    since -- I'm telling you both right now, I think it's a very
3    peripheral point to begin with.
4            MR. SCHWARTZ:  Fair enough.  And just generally, I
5    would like an opportunity to be able to review the papers, to
6    read the cases cited in the papers, and to put in a reply.
7            THE COURT:  Well, I -- you know, I prepared for
8    this --
9            MR. SCHWARTZ:  Let me ask in the alternative then,
10   can I ask for the opportunity to put in post-hearing papers?
11           THE COURT:  Well, we see.  The law in this area is
12   quite clear.  There -- there's a leading Second Circuit case on
13   it, you've cited Pioneer, you cited Trap Rock, although not --
14   well, no, you cited both Trap Rocks.  And, you know, I don't
15   think there's any particular mystery here on the standard under
16   Pioneer.  If we go off on some other point, including the
                                                    De
                                                    l
                                                    e

17   capacity in which the EEOC seeks damages that I think needs
18   additional briefing, I'll ask for it.  But, I just -- you know,
                                                    De
                                                    l
                                                    e

19   this is -- I know this was adjourned once because - I recollect    De
                                                                         l
                                                                         e
                                                                         t

20   your letters, and it was something I prepared on already and
21   the parties are here on it, I just don't think I --
22           MR. SCHWARTZ:  I appreciate that, Judge.  I just --
23           THE COURT:  -- should adjourn it further.
24           MR. SCHWARTZ:  I just do want to note that prejudice
25   here is that Delphi's had our arguments for months.  We put in

13

1    a reply to their untimeliness objection that had the merits of

2    our arguments.  We've had their arguments functionally since 5

3    p.m. yesterday.

4         THE COURT:  Well, but -- you know, they haven't

5    violated any rule.  And again, this is -- the arguments are

6    pretty evident -- should be pretty evident to the movant and

7    everyone else.  I mean, it's a -- I just don't feel you're

8    particularly disadvantaged.

9         MR. SCHWARTZ:  Okay.  Well --

10        THE COURT:  So, as far as the record is concerned

11   then, is it -- it's fair to say that items 1 through 7 in the

12   exhibit index are agreed to as to admissibility?

13        MR. SCHWARTZ:  That's correct.

14        THE COURT:  And as number 8 is concerned, well, I

15   haven't looked at it.

16        MR. LYONS:  If I may, Your Honor.  I mean, again,

17   we're not introducing it to prove the amount of the claim.

18        THE COURT:  Okay.

19        MR. LYONS:  Rather, again, I think it's almost to

20   rebut the rebuttal of the contention of undue delay.

21        THE COURT:  All right.  Well, why don't we --

22        MR. SCHWARTZ:  Let me say one more thing on that

23   Exhibit 8, before we look at it.  A characterization in the

24   index that its an e-mail regarding expanding discovery is

25   grossly wrong.  Is an e-mail from me that begins and ends in

14

1   boldfaced letters with the phrase "for settlement purposes

2   only." It was not something that should have been disclosed.

3        THE COURT: Well, again, I don't accept the fact that

4   someone can write a settlement memo and keep it all out. But,

5   let me take a look at it.

6        (Pause in proceedings.

7        THE COURT: Okay. I guess, as long as its not being

8   introduced to show the -- some sort of admission or evidence as

9   to the amount of the claim, then I believe it's marginally

10  relevant. And I think it could serve as part of the record.

11  You can tell me why I shouldn't give it much attention, and I

12  may well agree with you, but I just -- I don't see why it

13  should be excluded.

14       MR. SCHWARTZ: Thank you, Your Honor. I suppose then

15  we'll move to the merits of the motion.

16       THE COURT: Okay.

17       MR. LYONS: As a threshold, though, the parties have

18  agreed that we are not going to introduce live testimony, we'd

19  rely on the papers and also the depositions which Your Honor

20  has in exhibit binder.

21       THE COURT: Except for the depositions, there's not

22  going to be any cross examination of any witnesses or the like.

23       MR. LYONS: That's correct.

24       THE COURT: Okay. All right.

25       MR. SCHWARTZ: And so as Your Honor said, about the

15

1   standard of excusable neglect, is well established by the
2   Pioneer case and by the Second Circuit in a line of cases.  And
3   there are four factors to consider.  And so let me just discuss
4   those factors and how they apply to this case.  But let me
5   stress at the outset, that this case presents a exceedingly
6   narrow question, whether when a law enforcement agency receives

7   a complaint by a single individual of unlawful conduct and

8   after a diligent investigation determines that there was
9   unlawful conduct against a class of employees, whether all of
10  that information is received after the bar date, whether the

11  agency acts with excusable neglect if they wait until they
12  complete their investigation to file a proof of claim in
13  bankruptcy.  And I think the answer to that case -- to that
14  question, that narrow question on the facts of this case,
15  should be yes.  And let me look to the four Pioneer facts.
16      The first, of course, is the reason for the delay.
17  And as Mr. Lyons points out in his opposition, this is the most

18  important factor in the Circuit.  The reason for this -- for
19  the delay is clear.  First of all, there is, I don't think, any
20  contest that the EEOC could not have filed its proof of claim
21  before the bar date.  They did not learn about the charge of

22  discrimination from Mr. Straughter until after the bar date.

23  In fact, the conduct giving rise to Mr. Straughter's claim of

24  discrimination did not occur until a month after the bar date.
25  So they -- the EEOC received the information after the bar

16

1  date, and then they went through their process.  And the
2  process is receive a charge of discrimination, investigate that
3  claim, including disclose it to the target of the investigation
4  and allow them to make a response, make a determination, enter
                                                            De
                                                            l
                                                            e

5  into conciliation efforts, if those conciliation efforts fail,    De
                                                            l
                                                            e
                                                            t

6  refer the case to the legal unit, the legal unit makes a         De
                                                            l
                                                            e
                                                            t

7  determination to -- whether or not to recommend further action
8  to the commissioners.  The commissioners of the EEOC in
                                                            De
                                                            l
                                                            e

9  Washington, decide in cases like this, whether an enforcement
10  action is appropriate.  If they decided that it is, an
11  enforcement action is filed.  And then and only then, could the
12  EEOC file a proof of claim.
13      THE COURT:  Wasn't that contradicted by your witness'
                                                            De
                                                            l
                                                            e

14  deposition?
15      MR. SCHWARTZ:  Absolutely not.  And that was one of
16  the misstatements of facts that I would have like to have
17  corrected in briefing.
18      THE COURT:  Let me just read the deposition.
19      MR. SCHWARTZ:  Absolutely.  What page are we at?
20      THE COURT:  Well, there are two different pages on
21  the deposition.  If you look at the bottom --
22      MR. SCHWARTZ:  This is the version in the binder?
23      THE COURT:  Yes.  And it's Ms. Malloy's deposition,
24  it starts on page 29.
25      MR. SCHWARTZ:  That's the page at the bottom.

VERITETEXT/NEW YORK REPORTING COMPANY

212-267-6868                                        516-608-2400

17

1          THE COURT:  Right.  Line 6 on page 34 of the original
2     transcript, I guess.

De
l
e
t

3     "Q. Are you aware of the steps -- are you aware of any steps
4     that the EEOC must take to file a proof of claim in a
5     bankruptcy case?"
6     "A. I'm aware of some of the steps, yes."
7     "Q. What are those steps?"
8     "A. I can only testify as to this case."
9     "Q. This case is your only source of knowledge as to the
10    steps?"
11    "A. Yes."

De
l
e
t

12         She earlier testified about the Attorney Manuel with    De
l
e
t

13    regard to enforcement actions.
14         MR. SCHWARTZ:  Judge, I think we can stop right
15    there.  She could only testify about this case.  In this case,
16    the EEOC commissioners had already authorized the District
17    Court litigation.  And so to say that they did not have to go
18    back to those commissioners to get further authorization to
19    file the proof of claim is not nearly the same thing as saying
20    they could have filed the proof of claim at the outset.  And
21    let me --
22         THE COURT:  That's your reading of her argument, her
23    question, "What authorizations do you need to file a proof of
24    claim in a bankruptcy case on behalf of the EEOC?"
25         MR. SCHWARTZ:  Everything is qualified by lines 11

VERITETEXT/NEW YORK REPORTING COMPANY
212-267-6868                                                              516-608-2400

18

1   and 12, "I can only testify as to this case." If there's
2   ambiguity on that, as long as --
3       THE COURT: And what is your evidence to show that
4   there are those limitations on filing a proof of claim?
5       MR. SCHWARTZ: It's the confidentiality rules of the
6   EEOC. The EEOC is not permitted to make public a charge of
7   discrimination until there is litigation. Either until they
8   file litigation or until the claimant files litigation. I'm
9   reading here from that enforcement manual, laws enforced by the
                                                        De
                                                         l
                                                         e

10  EEOC quoting 42 U.S.C. 2000e-5. "Charges shall be in writing,
11  under oath or affirmation, and shall contain such information
12  and be in such form as the Commission requires. Charges shall
13  not be made public by the Commission. If the Commission
14  determines after such investigation that there's not reasonable
15  cause," it says "that you issue a right to sue letter." And
                                                        De
                                                         l
                                                         e

16  then it says, that or they'll sue if they determine that it is
                                                        De
                                                         l
                                                         e

17  founded. But the critical language, "charges shall not be made
18  public by the Commission." Simply on the basis of a charge of
19  discrimination, the Commission could not have filed a proof of
20  claim, that is critical. And that's sound public policy. You
                                                        De
                                                         l
                                                         e

21  don't want the EEOC filing, in its own name, charges of
22  discrimination, until it determines that those charges have
23  merit. It also, incidentally, would be an enormous waste of
24  public resources to require the EEOC to file proof of claims in
25  association with every unfounded charge of discrimination.

19

1    Earlier this week in the Holowicki case, the Supreme Court
2    observed that the EEOC receives approximately 175,000
3    complaints of ADA discrimination alone every year.  To require
4    the EEOC, an agency which receives no compensation as a result
5    of prosecuting these claims, to file a proof of claim in every
6    bankruptcy, every single time someone simply makes a complaint
7    of discrimination, it doesn't make sense and it's not permitted
8    under the EEOC's rules.  They were required to wait until

Dele

9    either Mr. Straughter had filed a District Court lawsuit, or,

Dele

10   because in this case they determined that his claims had merit,
11   they filed a District Court lawsuit to file the proof of claim.
12   And that is why there was good reason for the delay in this
13   case, because they had to substantiate the charge of
14   investigation because they were not permitted to publicize it.
15   That's the first Pioneer factor.
16        Second Pioneer factor, the prejudice to the debtor.
17   You seem like you saw questions.
18        THE COURT:  This really sounds totally bizarre to me
19   and totally contradictory to the definition of claim in the

Dele

20   Bankruptcy Code.

Delet

21        MR. SCHWARTZ:  I think that is fair, Judge.  And the
22   point that I'm trying to make is that the claim of --
23        THE COURT:  Why wasn't this argued at all in the
24   motion?  Why wasn't it argued at all at deposition?
25        MR. SCHWARTZ:  Because it came to my attention

20

1    earlier today --

                                                        De
                                                        l
                                                        e
                                                        t

2            THE COURT:  Weren't you defending the deposition?
3            MR. SCHWARTZ:  I was, Judge.  I didn't know about
4    this --
5            THE COURT:  So this isn't like a -- a, you know,

                                                        De
                                                        l
                                                        e

6    creative use of what is the meaning of the word is?  You were
7    truly mistaken by that question and her answer, that you refer

                                                        De
                                                        l
                                                        e

8    to a bankruptcy case?
9            MR. SCHWARTZ:  No.  Everything -- everything has to
10   be taken in the context of the conversation.  She said that she
11   could only testify to this case.  She doesn't --
12           THE COURT:  She's the witness on excusable neglect.
13           MR. SCHWARTZ:  No.  She is a fact witness.
14           THE COURT:  I know.  And it's a fact issue.
15           MR. SCHWARTZ:  No, no.  That's fair but --
16           THE COURT:  And she was asked -- never mind.  You
17   know, I'll take it for what its worth.
18           MR. LYONS:  Your Honor, if I could make just one
19   point.  The bar date order says all attached documentation is
20   confidential.  So if there's some confidentiality concern,
21   paragraph 4 of the bar date order makes it clear that all
22   supporting documentation to a proof of claim --
23           THE COURT:  What is the --
24           MR. LYONS:  -- are confidential.
25           THE COURT:  -- citation of the document you're

21

1   reading from?  Is it a CFR or is that confidential --

2        MR. SCHWARTZ:  This is the statute itself.  It's 42

3   U.S.C. Section 2000E-5.  And that, Judge --

4        THE COURT:  I'm sorry, 2000?

5        MR. SCHWARTZ:  It's 2000E, not in parens, just 2000E-

6   5.

7        THE COURT:  Okay.

8        MR. SCHWARTZ:  And that's -- that's actually a

9   sentence -- a provision under Title 7, that is incorporated

10  into the ADA by Section 107 of the ADA.

11       THE COURT:  Okay.  So you're reading the statute

12  itself.

13       MR. SCHWARTZ:  I was reading the statute itself.  You

14  asked why we didn't mention this earlier.  Frankly, the reason

15  that we didn't mention this earlier is because we've been

16  forced to litigate this in an extremely rushed way and, you

17  know, it just came to my attention.  And I apologize for that.

18  And that's why I would have liked the opportunity to put in

                                          De

                                           l

                                           e

19  additional briefing.  However, the fact remains that the EEOC

20  was not permitted to disclose the claim until litigation was

21  filed.  And that absolutely justifies the delay.

22       The next two factors, the prejudice to the debtor and

23  prejudice --

24       THE COURT:  Well, I have a question.  You're saying

25  this witness doesn't know anything about the EEOC's policy in

22

1    bankruptcy cases -- the, right?  Just this case?
2         MR. SCHWARTZ:  That's correct.
3         THE COURT:  Do you have any evidence that the EEOC
4    does or does not file proofs of claim in other bankruptcy
5    cases?
6         MR. SCHWARTZ:  Does or does not file proofs of claim?
7         THE COURT:  Right.
8         MR. SCHWARTZ:  I don't have any evidence one way or
9    the other.
10        THE COURT:  So you don't have any evidence as to

                                                  De
                                                   l
                                                   e

11   whether they file claims before litigation ever, or only after
12   litigation is commenced?
13        MR. SCHWARTZ:  Not as I stand here today.
14        THE COURT:  Okay.
15        MR. SCHWARTZ:  Okay.  And moving on to the
16   prejudice --
17        THE COURT:  So the argument about the policy point is
18   not backed up by any specific facts as to the EEOC's actual
19   practices on whether, notwithstanding the policy argument you
20   made, it does or does not file proofs of claims in bankruptcy

                                                  De
                                                   l
                                                   e

21   cases?
22        MR. SCHWARTZ:  That is not a policy argument, that is
23   a statutory argument.
24        THE COURT:  No.  You said think of the policy, Judge,
25   if we had to do this.

23

1      MR. SCHWARTZ:  No.  I do not know the evidence
2  underlying the policy, that's correct.  The policy, though,
3  certainly makes sense.  I believe, again, the reference to the
4  number of ADA claims, as I said, comes from the Supreme Court's
5  case earlier this week in the Holowicki decision.
6      You know, the reason for the a delay, and excusable
7  neglect, is, according to the Supreme Court from Pioneer,
8  supposed to be a flexible inquiry.  And when you say it's a
9  flexible inquiry, that means you have to look at the entire
10  context and what is excusable for the EEOC, where a law
11  enforcement agency may not be excusable for the Acme
12  Corporation.  But that's why I began by saying that this is a
13  case that presents an extraordinarily narrow issue.  And then
14  that is the segue to the prejudiced point.  Because the
15  prejudice really that arises out of allowing this claim, is

                                                De
                                                 l
                                                 e

16  that it opens the floodgates.  I asked last night, Mr. Unrue,
17  what are the prejudices that flow to Delphi if this claim is
18  allowed.  He said if the claims are allowed that it endangers
19  the bankruptcy.  And I said what if only this one were allowed?
20  He said that might be different.  And I said well, what if this
21  one were allowed in some small amount?  He said well, that
22  might be different.
23      This case -- this claim is sui generis, it is the

                                                De
                                                 l
                                                 e

24  claim of a law enforcement agency asserting law enforcement
25  charges on behalf of grieved Delphi employees who were the

24

```
 1    victims of a facially unlawful policy.  And the EEOC didn't
 2    know that it was facially unlawful until they were able to
 3    investigate it.  And even now, they don't know the full extent
 4    of the unlawfulness because --
 5              THE COURT:  Let me ask you about that.  Because if
 6    its facially unlawful, in the response of Delphi to the first
 7    inquiry, which is attached to Ms. Malloy's declaration and is
 8    also quoted at paragraph 11.  That response was on November 6,
 9    2006.
10              MR. SCHWARTZ:  Which exhibit is this, Judge.
11              THE COURT:  Well, it's attached as Exhibit H, but she
12    also quotes at paragraph 11 of her declaration.
13              MR. SCHWARTZ:  Okay.
14              THE COURT:  And the response said, "it has been
15    Delphi's policy to require this of all employees."  So as far
16    as investigating whether this is a pre or post-petition
                                                            De
                                                             l
                                                             e
17    claim,on  November 6th they said it -- everyone.
18              MR. SCHWARTZ:  That's not what they're saying now,
19    Judge.
20              THE COURT:  No, I know.  But that's what they said
                                                            De
                                                             l
                                                             e
21    then.  What more was there to investigate?              De
                                                             l
                                                             e
                                                             t
22              MR. SCHWARTZ:  Because, first of all, they have to
23    determine whether that's true.  And they have to determine what
24    it means.  Does that mean of all employees forever.  Does that
25    mean for all employees at all locations.  Does that mean for
```

25

1    all employees at the Rochester plant on August 16, 2006  They                    De
                                                                                        l
                                                                                        e
                                                                                        t

2    don't know what that means.  They have an obligation to
3    investigate it.  That is why the EEOC exists.  And now, Delphi
4    has taken a very different position, which is that they never
                                                                                        De
                                                                                         l
                                                                                         e

5    really had such problems and that that policy doesn't exist                       De
                                                                                         l
                                                                                         e
                                                                                         t

6    every place, they won't tell us where the policy exists.
7    That's why we're in discovery in the Western District of New
8    York, because we don't even know what the policy is.  We still
9    don't understand the contours of this claim, and that's --
10   that's why we are litigating.
11            THE COURT:  But as far as having the basis for
12   asserting a claim, I just really -- again, leaving aside your
13   point about some hoops need to be gone through before a proof
14   of claim is filed, several hoops, what more investigation
15   really needed to be done to at least have been able to say, at
16   that date, that it appeared reasonable to the EEOC based on
                                                                                        De
                                                                                         l
                                                                                         e

17   Delphi's own statement that there was a pre-petition claim?
18            MR. SCHWARTZ:  The investigation that occurred
19   between November 6, 2006 and May 27, 2007, when the letter of
20   determination was made.  This response by Delphi was the first
21   response to the charge of discrimination made by Mr.
                                                                                        De
                                                                                         l
                                                                                         e

22   Straughter.  It incidentally only responded to his individual                     De
                                                                                         l
                                                                                         e
                                                                                         t

23   charge and not because there were not at that point any class
24   charges.  They did not, in this response, also respond to the
25   requests for information that the EEOC had propounded, they

26

1   didn't do that until a little bit later.  So all we had was a
2   position statement by Delphi that their practices were entirely
3   lawful.  A position statement by Delphi that their practices

De
l
e

4   were entirely lawful was not, apparently, enough for the EECO
5   to feel comfortable issuing a letter of determination.  And
6   with respect, I think it is not for us to second guess the way
7   that the EEOC investigates claims of discrimination, that is
8   why they exist.  And this investigation, I think by all
9   objective measures, have been extraordinarily quickly, there
10  are not delays in here.  And the delays that do exist are while
11  they were waiting for information from the Delphi Corporation.
12          THE COURT:  So the determination was made May 22nd?
13          MR. SCHWARTZ:  That is when the determination was
14  made.  At that point, they were required to enter into

De
l
e

15  conciliation efforts.  This is all by reg.  The conciliation
16  efforts failed a month later and they were required to notify
17  Delphi that they failed.  They did that, I believe, on June 19,
18  2007.  At that point, again, by regulation, the case was
19  referred to the legal unit.  The legal unit did its assessment
20  of the case and made its recommendation to the commissioners in
21  Washington.  The commissioners of the EEOC are the only people
22  who have the authority to authorize an enforcement action in
23  Federal District Court in cases like this one.  They did and
24  that complaint was filed on September 28, 2007.  At that point,
25  when the District Court complaint was filed, the charge of

27

1    discrimination and the EEOC's findings were effectively

2    unsealed.  And so, as well, they filed their proof of claim in

3    this bankruptcy.  This is not a case, Judge, like Trap Rock,

4    where the agency -- the county in that case, who is prosecuting

De

l

e

5    a circa claim was essentially trying to game the system, where

6    they filed an enforcement action instead of filing a proof of

7    claim.   The EEOC acted entirely appropriately here when they

8    were ready to unveil to the world that they had determined that

9    Delphi had an unlawful policy of requiring its employees to

10   execute releases to all their medical records, whenever they

11   called in sick.  When they were ready to release that to the

12   world, they both filed a complaint in Federal District Court

13   and filed a proof of claim to protect the monetary component of

14   their damages in this Court.  That's what you want a

15   responsible law enforcement agency to do.  That act, again,

16   causes no prejudice to the debtors because it has no floodgate

17   effect.  It is entirely reasonable, and it certainly was all

18   done absolutely in good faith.  This is the model of an

19   investigation by a law enforcement agency.  They received a

20   claim, they investigated it quickly, they made a determination,

21   they filed a lawsuit, and simultaneously they filed a proof of

22   claim.  They were not permitted to file a proof of claim

23   earlier, it would not have been responsible to file a proof of

24   claim earlier.  It would not have been reasonable.  And again,

25   excusable neglect standard, has to take into account the

28

1  position of the creditor.  And for the EEOC, an agency that
2  gets none of the money if this claim's allowed -- gets none of
3  the money back, even to offset its litigation costs to require
                                                        De
                                                        l
                                                        e

4  them to file protective proofs of claims which both disclose      De
                                                                      l
                                                                      e
                                                                      t

5  the charge of discrimination in violation of their
6  confidentiality rules, disclose the charge of discrimination,
7  you know, in a way that embarrasses potentially the debtors,
8  disclose the charge of discrimination in a way certainly that
9  can embarrasses the claimant, who in many cases, may be current
10 employees of the corporation.  And to file a charge of dis --
11 to file a proof of claim --
                                                        De
                                                        l
                                                        e

12         THE COURT:  I'm sorry, how does it embarrass the
13 claimant?
14         MR. SCHWARTZ:  The claimant can still be working for
15 the corporation.  And so to, you know, disclose to the world
16 that you have accused your boss, your current boss, of
17 discrimination --
                                                        De
                                                        l
                                                        e
                                                        t

18         THE COURT:  But he -- Mr. Straughter's done that.
                                                        De
                                                        l
                                                        e

19         MR. SCHWARTZ:  Mr. Straughter had been fired.
20         THE COURT:  Right.
21         MR. SCHWARTZ:  It was pretty obvious.
22         THE COURT:  Right.
23         MR. SCHWARTZ:  He was no longer employed in this
24 particular case.  But, well --
25         THE COURT:  Oh, I see, you're arguing the policy

29

1  again without --
2          MR. SCHWARTZ:  I'm arguing that policy.
3          THE COURT:  All right.  Fine.  I got it.
4          MR. SCHWARTZ:  That's correct.  It doesn't make sense
5  to require the EEOC, particularly on the facts of this case, to

                                                        De
                                                        l
                                                        e

6  have filed a proof of claim in the moment that Mr. Straughter
7  filed his charge of discrimination.
8          And, in particular, in this case, all of this
9  happened after the bar date.  There's no conceivable way for
10 the EEOC to file a timely claim.  So really, we're only
11 quibbling about the delay now, whether they should have filed
12 the proof of claim a month after the bar date or a year after
13 the bar date.  And I submit to you, on the facts of this case,
14 it was entirely reasonable and certainly excusable for the EEOC
15 to do a quick and responsible investigation consistent with its
16 regulations and statutes before filing the proof of claim.  And
17 for that reason, the proof of claim --
18         THE COURT:  Are you telling me, as an officer of the
19 Court, that you do not know, and have not made an inquiry, of
20 the EEOC as to its policy in filing proofs of claims in

                                                        De
                                                        l
                                                        e

21 bankruptcy cases?
22         MR. SCHWARTZ:  Yes.
23         THE COURT:  You just -- you literary don't know.
24         MR. SCHWARTZ:  I literary don't know, Judge.
25         THE COURT:  Okay.  All right.  That's all I want to

30

1   know.  That's all I want to know.  Okay.

2        MR. SCHWARTZ:  Unless, there are questions, I'll

3   submit.

4        THE COURT:  It's not referred to in any regs or

5   anything like that?

6        MR. SCHWARTZ:  I would have been happy to have put in

7   briefing with all the regulations.

8        THE COURT:  Okay.  How does the statute define

9   enforcement action?

10        MR. SCHWARTZ:  I don't know the answer to that.

11        THE COURT:  Okay.  I take it there's no cap on the

12   claim at this point, right?

13        MR. SCHWARTZ:  There is not.  As you now know, we

14   have begun to enter into settlement discussions, we have never

15   received a counteroffer from the debtors.

De

l

e

16        THE COURT:  Okay.  Mr. Lyons?

17        MR. LYONS:  I do Your Honor.  I'm sorry, Your Honor.

18   Your Honor, I'll be very brief.  I mean, we're going to rely on

19   our papers.  You know, again, the burden of proof is on the

20   United States to prove that they've met the Pioneer factors of

De

l

e

21   excusable neglect.  Your Honor, the length of the delay -- I

22   mean putting the proof of claim in is to give a placeholder to

23   know that there may be a claim.  There's nothing horribly

24   embarrassing or sensitive about that.  The bar date order,

25   frankly, encompasses any attachments are confidential.  So I

31

1    think it's kind of an after the fact excuse, after Ms. Malloy
2    testified, and I asked her pretty squarely are there any
3    authorizations, she didn't believe they were, and now we're
4    hearing this today.  You know, again, they decided to submit
5    whatever proof that they had in support of their motion.  I'm
6    frankly surprised they didn't have the investigator here.  The
7    primary investigatory, Ms. Carlo, who was involved in this back
8    in September of '06, who -- it's not like this is some charge

Dele

9    that Mr. Straughter came up with: she drafted the charge.  She    De
let

10   drafted it for him, he reviewed it --
11          THE COURT:  All the argument they're making is that
12   they're precluded by statute from filing a proof of claim.
13   That's the only argument that has any possible merit here.
14          MR. LYONS:  And on that, Your Honor, is -- you know
15   steps could have been taken to make it even more confidential
16   if that were, in fact, the case.  Again, you know, Chapter 11
17   in this case, we need to know what claims there are.  We have
18   investors who are depending upon the answer as to what our
19   claims pool is.  We have an EPCA target that we have to meet.
20   You know, we can't wait until, you know, three years after we
21   emerge to all of a sudden find out they've completed their

Dele

22   investigation; we need to know if there's a claim.  And also
23   another point, Your Honor, we served all of our employees with
24   the bar date order.  Not a single claimant filed a proof of
25   claim by the bar date.  So certainly those claimants would know

32

1    if they had a violation, and none of them have filed a proof of
2    claim.  The EEOC is just seeking damages on behalf of these

De
l
e

3    employees.  So there's another grounds, apart from the whole
4    excusable neglect, Your Honor, why the other employees would be
5    -- would be bound by the bar date order.  They all got the bar
6    date order, none of them filed a claim, and we briefed that in
7    our papers.
8          So, Your Honor, I really don't have much more, we'll
9    rely on the papers.  We don't believe that they've met the
10   burden under Pioneer.  There's no explanation as to the length
11   of delay.  It was within their reasonable control.  There's
12   tremendous prejudice to the debtors.  It will unduly lengthen
13   proceedings.  And that's where the -- and he may disagree with
14   what was said on the -- withdrawing the reference to estimate
15   the claim, but that would no question add delay to be able to
16   estimate this claim if we had to, you know, go out to Buffalo
17   to estimate this claim within the time period that we have to
18   estimate this claim, which is one month before emergence, Your
19   Honor.  And frankly, good faith, we've laid out the facts,
20   that's just up to Your Honor how Your Honor wants to view that,
21   we've just laid it out.  With having a 200,000 dollar offer and
22   then come in with a fifteen million dollar cap, certainly that

De
l
e

23   goes to the issue of we're negating a negative contention of
24   undue delay for under Federal Rule 408.  Unless Your Honor has
25   any questions, I'm prepared to rest on our response.

33

1          THE COURT:  Okay.  Do you have a response to the
                                                        De
                                                        l
                                                        e

2   argument that the -- the actual employees got notice of the bar
                                                        De
                                                        l
                                                        e

3   date, and obviously knew about the policies?  They may or may
4   not have known that it was subject to attack, but they had
5   notice?
6          MR. SCHWARTZ:  Two responses.  One, there's no
                                                        De
                                                        l
                                                        e

7   evidence that Mr. Straughter was served and there's -- you
                                                        De
                                                        l
                                                        e

8   know, artful drafting over there, but Mr. Straughter was not
9   working for Delphi at the time that the bar date order was
10  served on the employees.  So there's no reason to believe that
11  he got it, and he was the charging party in this case, first
12  point.
13         Second point, the fact that the employees may have
14  been aware of the policy is very, very different from saying
15  that they were aware that they had a claim.  This is not an
16  obvious form of discrimination that we're talking about in this
17  case.  This is not "we are firing you because of your race or
18  gender."  This is a policy that required employees to, you
                                                        De
                                                        l
                                                        e

19  know, execute releases for their medical records when they
20  called in sick.  It is an unlawful policy and a discriminatory
21  policy under the law, but not at all obvious to the common
22  person that it is either unlawful and certainly not unlawful in
23  a discriminatory way.  As evidence of that fact, I point to the
24  incredible paucity of cases that discuss this particular point
25  of discrimination.  Really, I'm aware of two, the Conway case

34

1   from the Second Circuit and Judge Scheindlin's decision in the
2   Transport Worker's Union case.  So to say that they were aware
3   of the policy is not to say that they were aware that they had
4   a claim.
5          I don't think in any case, that Mr. Lyons is making
6   an estoppel --
7          THE COURT:  You know -- look, let me make two -- let
8   ask you two questions related to that.  First of all, as far as
9   the intricacies of the law are concerned, I understand your
10  point.  I doubt any employee would have read the case law.  On
11  the other hand, if you had a policy that said you can be fired
12  unless you provided all your medical records, human nature
13  being what it is, someone might be offended by that.

De
l
e

14         MR. SCHWARTZ:  Mr. Straughter was.  And he was the
15  first person to bring it to the attention of the EEOC.  And
16  bear in mind, this was not, at least to my knowledge --
17         THE COURT:  No, but what I'm saying -- but in that
18  sense it doesn't seem esoteric to me, you know.  It seems

De
l
e

19  analogous to situations where people don't necessarily know the

De
l
e

20  ins and out of securities laws but nevertheless feel sometimes    De
l
e
t

21  that they were defrauded by debtor.
22         MR. SCHWARTZ:  That's right.
23         THE COURT:  In those cases the courts have said if
24  someone is looking to certify a class, now I understand your
25  class is being -- your action, on behalf of the class, is being

35

1  brought by a government agency as opposed to an individual lead
2  plaintiff.  But the courts have said, Judge Rakoff, Chief Judge
3  Bernstein, and other courts have said, Judge Garrity from this
4  district, that there's a big distinction when someone seeks to

5  certify a class in a bankruptcy case after the bar date,

6  because the members of the class got notice and they haven't

7  filed a proof of claim.  Class certifi -- you know, certifying

8  them undermines the bar date.  So what's your response to that?
9     MR. SCHWARTZ:  A few responses.  The first one is I
10 think that it was not nearly as clear to Delphi employees that
11 this was the policy.  And, in fact, the policy of firing
12 employees was limited to a small class of probationary

13 employees that Mr. Straughter fell in.  So that day-to-day
14 employees of Delphi may have been denied sick pay for those
15 days when they were not -- when they didn't execute releases,
16 but they wouldn't have been fired.  And so prior to where
17 someone would go to a lawyer over a day or two's loss of sick
18 leave pay, that's one point.  The second point, I think --
19    THE COURT:  I'd get pretty mad if someone asked me to

20 turn over all my medical records.  That's the type of thing
21 that people get mad about.  But so -- go ahead.
22    MR. SCHWARTZ:  And there were a few other people who
23 complained and we are starting to learn this in discovery.  As
24 we are getting names of people from Delphi, there were people

25 who complained.  Delphi tells us that no one else was ever

36

1    fired, I don't know if that's the case.  And it may be that
2    people felt aggrieved.  You know, I don't know what the case
3    is.

De
l
e
t

4          The second, and I think more important point, is that
5    that is essentially an estoppel argument.  And the estoppel
6    argument can go to the merits of our claim, say that we should
7    be estopped from recovering on the claim.  I don't think it
8    goes to any of the Pioneer factors, whether it goes to whether
9    the claim should be permitted to be filed in the first place,
10   it goes to whether or not it should be allowed.
11         Finally, I would point out to you, this argument was
12   an argument first raised in the papers that I received last
13   night at 5 p.m. and we have not had an opportunity to respond
14   to it.
15         THE COURT:  Okay.  Anything else?
16         MR. LYONS:  Just very quickly.  You know, if Mr.

De
l
e

17   Straughter was just involved, Your Honor, we wouldn't be here.

De
l
e

18   I mean, I think if there's liability to Mr. Straughter it would
19   be an administrative --
20         THE COURT:  Well, it's admit -- it's post-petition.
21         MR. LYONS:  It's post-petition, exactly.  So we're
22   really here because of the other unnamed, you know, claimants
23   that, you know, that the EEOC asserts are out there, and that's
24   really why we're here.
25         And as to the argument on the bar date and the other

37

1   employees, again, I think any kind of discovery accrual
2   analysis, Your Honor, it's always the facts. Did you -- were
3   you aware of the facts? Whether you understood what claim
4   arises out of those facts does not go to what point in time the
5   particular plaintiff had awareness of the facts giving rise to
6   this cause of action.
7        MR. SCHWARTZ:  Just one factual note, Judge.  They
    Dele

8   have objected on timeliness grounds to Mr. Straughter's
9   personal proof of claim, that's part of the twenty-sixth
10  omnibus objection.
11       MR. LYONS:  If we did, Your Honor, it's inadvertent.
    Dele

12  I mean, again, the timeliness of Mr. Straughter's claim is
13  governed by the administrative bar date, which is established
14  under the plan.
15       THE COURT:  Okay.  All right.  Well, I'll take a
16  break and read the statute that was cited to me.  And so I'll
17  be back probably at 11:30.
18       (Recess from 10:55 a.m. to 11:44 a.m.)
19       THE COURT:  Please be seated.  Okay.  Before I
20  proceed, is Ms. Malloy present?
21       MR. SCHWARTZ:  Yes, Judge, she is.
22       THE COURT:  Ms. Malloy, if you can come up, please.
23  I understand the parties have waived any sort of direct
24  testimony, but I have a question of you as the declarant and as
25  the person who was deposed.  I'm not going to put you under

38

1    oath because you are an officer of the Court.  But my question

2    is, are you aware of any policies or practices of the EEOC with

3    respect to filing proofs of claim in a bankruptcy case, other

4    than that particular proof of claim that you filed?

5         MS. MALLOY:  No, Your Honor, I don't know the

6    policies or practices or --

7         THE COURT:  Okay.

8         MS. MALLOY:  -- whether there are any.

9         THE COURT:  Okay.  Very well, thank you.  You can sit

10   down, as can you, unless you have something to say.

11        MR. SCHWARTZ:  No, sir.

12        THE COURT:  Okay.  All right.  I have before me a

13   motion by the United States on behalf of the Equal Employment

14   Opportunity Commission, or the EEOC, to deem a proof of pre-

15   petition claim filed in these Chapter 11 cases, claim number

16   16727, timely filed.  That motion is necessary because the bar

17   date in these Chapter 11 cases was July 31, 2006 and the EEOC

18   proof of claim was filed on October 16, 2007.  The U.S.'s

19   motion is made pursuant to Bankruptcy Rule 9006(b)(1) and the

20   case law interpreting that rule, first and foremost, Pioneer

21   Investment Services Co. v. Brunswick Associates Ltd.

22   Partnership, 507 U.S. 380 (1993).  The general standard for

23   determining such a motion was set forth in the Pioneer

24   Investment Services case, but the Court is also guided by the

25   Second Circuit's interpretation and application of that

39

1    standard in Midland Cogeneration Venture Ltd. Partnership v.

2    Enron, (In re Enron) 419 F.3d 115 (2d Cir. 2005).  The standard

3    is generally well settled.  Bankruptcy Rule 9006(b)(1) permits

4    a claimant to file a late proof of claim if the failure to

5    submit a timely proof of claim was due to "excusable neglect."

6    The burden of proving excusable neglect is on the claimant

7    seeking to extend the bar date.  In re R.H. Macy & Co., 161

8    B.R. 355, 360 (Bankr. S.D.N.Y. 1993).  The Supreme Court in

9    Pioneer developed a two-step test to determine whether the

10   cause for a late filing was due to excusable neglect.  First,

11   the movant must show that its failure to file a timely claim

12   constituted neglect, as opposed to willfulness.  Neglect

13   generally being attributed to a movant's inadvertent mistake

14   for carelessness, 507 U.S. at 387-88.  After establishing

15   neglect, as opposed to willfulness or a knowledge of the bar

16   date and the failure to show any basis for neglecting it, the

17   movant must show by a preponderance of the evidence that the

18   neglect was excusable.  That analysis is to be undertaken on a

19   case-by-case basis, under the particular facts of the case.

20   Although the Court is to be guided by and make the

21   determination pursuant to a balancing of the following factors:

22   the danger of prejudice to the debtor, the length of the delay

23   and whether or not it would impact the case, the reason for the

24   delay, in particular whether the delay was within the control

25   of the movant, and finally, whether the movant acted in good

40

1    faith, Id. at 395.

2         In the Midland Cogeneration case the Second Circuit,

3    in upholding the lower court's determination that a late filed

4    proof of claim would not be deemed timely filed stated, "we

5    have taken a hard line" in applying the Pioneer test.

6    Silivanch v. Celebrity Cruises Inc., 333 F.3d 355, 368 (2d Cir.

7    2003) in a "typical" case, "three of the Pioneer factors," the

8    length of the delay, the danger of prejudice and the movant's

9    good faith "usually weigh in favor of the parties seeking the

10   extension," Id. at 366.  We noted though that "we and other

11   circuits have focused on the third factor, "the reason for the

12   delay, including whether it was within the reasonable control

13   of the movant," Id.  And we cautioned "that the equities will

14   rarely, if ever, favor a party who fails to follow the clear

15   dictates of a court rule" and "that where the rule is entirely

16   clear, we continue to expect that a party claiming excusable

17   neglect will, in the ordinary course, lose under the Pioneer

18   test," Id. at 366-67.  And that quotation appears in the

19   Midland Cogeneration case at 419 F.3d at 122-123.  See also In

20   re Musicland Holding Corporation, 356 B.R. 603 (Bankr.

21   S.D.N.Y.) in which Chief Bankruptcy Judge Bernstein stated that

22   the Second Circuit focuses on the reason for the delay in

23   determining excusable neglect under Pioneer and that the other

24   factors are relevant only in close cases.

25        Strict enforcement of a bar date is no mere and

41

1    unimportant procedural matter in a Chapter 11 case.  And the

2    bar date and a consequent filing of claims before the bar date

3    allows a debtor-in-possession, such as these debtors, to

4    evaluate the claims against the estate and formulate and

5    negotiate a plan that relates to the claims as filed, In re

6    Drexel Burnham Lambert Group, Inc. 148 B.R. 1002, 1008-10

7    (Bankr. S.D.N.Y. 1993).  Allowing late filed claims, especially

8    after their plan is confirmed, subjected debtor to prejudice

9    because it would have to renegotiate a myriad of settlements.

10   In this case, at least that form generally speaking, the basis

11   for a Chapter 11 plan, which are negotiated and set forth for

12   the Court to consider in contemplation of the known claims

13   asserted against the estate.  Again, See Drexel Burnham at 148

14   B.R. 1008-10, see also Midland Cogeneration 419 F.3d at 129.

15        Furthermore, allowing a late claim that materially

16   alters the distribution to creditors would prejudice the

17   creditors who relied on the disclosed distribution when voting

18   to accept or reject the plan, Id.  In light of the importance

19   of collecting on all of the allowable claims against the estate

20   in one forum and to permit the parties to proceed to consider a

21   Chapter 11 plan in light of those claim, Congress interpreted

22   the term claim in the Bankruptcy Code extremely broadly.  As

23   set forth in Section 1015 of the Bankruptcy Code, the term

24   claim means a right to payment, whether or not such right is

25   reduced to judgment, liquidated, unliquidated fixed,

42

1    contingent, matured, unmatured, disputed, undisputed, legal,

2    equitable, secured or unsecured, or a right to an equitable

3    remedy for breach of performance, if such breach gives rise to

4    a right to payment.  Whether or not such right to an equitable

5    remedy is reduced to judgment, fixed contingent, matured,

6    unmatured, disputed, undisputed, secured, or unsecured.

7         In this Chapter 11 case the reasonable allowed amount

8    of unsecured claims against the debtors' estate took on even

9    more significance than in most Chapter 11 cases.  That is,

10   because over a year ago it became clear that the debtor, to

11   achieve all the various goals that it wanted to achieve in the

12   case, including the preservation on a frozen basis of its

13   pension plan, needed outside investors to agree to invest

14   considerable amount of money in the debtors pursuant to a plan

15   of reorganization.  Part of that investment decision, as

16   negotiated with the plan investors and the creditor and

17   shareholder committees and other interested parties, was a cap

18   on the allowed amount or allowable amount of unsecured claims

19   as of the effective date of the plan.  As ultimately negotiated

20   in the so-called EPCA agreement, that cap was 1.45 billion

21   dollars, as specified in the agreement.  The Court, at the

22   confirmation hearing in this case, that began on January 7th of

23   this year, took testimony as to the debtors' ability to satisfy

24   that cap.  At the time of the confirmation hearing in that

25   testimony, pursuant to the debtors' analysis and the Court's

43

1    determination of timely filed claims, that would meet the

2    definition of the claim in the EPCA cap, the debtors had

3    satisfied the cap by approximately two million dollars.

4    Subsequently, the Court has continued to deal with the debtors'

5    expedited process for dealing with claims to which they object

6    and there have been further rulings on claims as well as

7    further settlements, and as set forth in the deposition of Mr.

8    Unrou, who has primarily responsibility, as an officer of the

9    debtors, for the claim liquidation process.  Taking into

10   account timely filed claims, the debtors are now approximately

11   twenty-four million dollars under the EPCA cap.  And again,

12   under the EPCA, debtors will not be able to obtain the

13   investment.  And consequently under their Chapter 11 plan,

14   which I confirmed by final -- now final order in January of

15   this year, will not be able to emerge from Chapter 11 unless

16   they remain under that cap.  But, of course, the cap is only an

17   added example of the importance of timely compliance with the

18   bar date in these particular cases.  In addition to it, the

19   parties-in-interest assessment of properly allowable claims. as

20   in most Chapter 11 cases, as recognized by Drexel in the Second

21   Circuit in Midlantic, form the critical backdrop for the plan

22   as proposed, negotiated and ultimately confirmed by the Court,

23   in the collective process of these cases.

24       The material facts surrounding or underlying the

25   present motion under 9006(b) are not, as I see it, contested.

44

1    And the EEOC, through Ms. Malloy's declaration, primarily

2    alleges that on or about August 28th a former employee of one

3    of the debtors, Stanley Strauder, contacted the EEOC regarding

4    a potential claim for discrimination against Delphi.  He was a

5    temporary Delphi employee hired post-petition and terminated

6    post-petition, allegedly he believed in violation of the ADA.

7    He believed that he was terminated improperly based upon

8    Delphi's sick leave policy, which apparently required employees

9    who called in sick to execute a release that would allow

10   Delphi, or at least the entity employing Mr. Strauder, to

11   obtain medical records relating, not just to the employee's

12   reason for taking sick days, but the employees entire medical

13   history.

14       Ms. Malloy's declaration, which is Exhibit 1 in the

15   record, then states that an investigator for the EEOC, Ms.

16   Carlo, after sending Mr. Strauder a questionnaire to complete,

17   and receiving the questionnaire, drafted a charge of

18   discrimination for Mr. Strauder's signature, which she sent to

19   him on or about September 13, 2006.  She subsequently discussed

20   that charge with him and a revised charge to him on September

21   18, 2006.  I take it that the charge referred to in Ms.

22   Malloy's declaration is the charge also referred to -- or the

23   type of charge referred to in 42 U.S.C. Section 2000E-5.

24       On September 22, 2006, Mr. Strauder formally filed

25   his complaint of discrimination with the EECO, Index Discharge

45

1    Number 525-2006-001314.  And on October 2, 2006, the EEOC

2    forwarded the charge to Delphi for a response.  Before

3    continuing, I should note, although I think by references of

4    the dates makes this obvious, that all of these dates, and most

5    importantly the date upon which the EEOC learned of Mr.

6    Strauder's concerns about discrimination, were after the bar

7    date.  Again, that date being July 31, 2006.

8         On November 6, 2006 Delphi responded to the charge.

9    According to Ms. Malloy's declaration at paragraph 11, the

10   response "essentially admitted the factual allegations of

11   Strauder's complaint, but contended that he could not

12   demonstrate a prima facie case of retaliation of violation of

13   the ADA."  Relying on EEOC guidance that an employer may ask an

14   employee to justify his/her use of sick leave by providing a

15   doctor's note or other explanation, as long it has a policy or

16   practice of requiring all employees to do so, Delphi argued

17   that it was permitted to require its employees to execute a

18   release so that the company could obtain medical records and to

19   speak with personal physicians.  The specific responses

20   attached as Exhibit H to Ms. Malloy's affidavit, in which on

21   page 2, Delphi says "because Delphi requires this of all

22   employees it was within the EEOC's guidelines."  U.S. has

23   stated that Delphi's policy is, on its face, relative of the

24   ADA.  It appears to me, notwithstanding the fact that Mr.

25   Strauder was a post-petition employee, Delphi's November 2,

46

1    2006 response were one to assume, as of course the EEOC does,

2    the truth of the position that the policy was violative on its

3    face, that there was sufficient information to reasonably infer

4    that Delphi's policy extended also to those who were employed

5    during the pre-petition period since the response referred to

6    practice required of all employees.

7         In any event, as noted in Ms. Malloy's declaration,

8    the EEOC continued to seek further information from Delphi to

9    investigate a claim of discrimination as set forth in

10   paragraphs 12-14, and in particular, the first sentence of

11   paragraph 14 of her declaration. Eventually, having received

12   sufficient information to satisfy its internal deliberative

13   process, according to Ms. Malloy on or about May 22, 2007, the

14   EEOC issued its letter of determination which, in relevant

15   part, took the position that Delphi subjected Strauder and a

16   class of employees nationwide to an unlawful policy of making

17   disability-related inquiries that are not job related and

18   consistent with business necessity in violation of the ADA.

19   The next day, May 23, the EEOC contacted Delphi to begin

20   conciliation efforts as contemplated by 42 U.S.C. Section

21   2000(e)(5), which were not fruitful since there is a

22   fundamental disagreement between Delphi and the EEOC as to the

23   underlying premise that Delphi had breached the ADA.

24   Confirming that those efforts had failed on June 19, 2007, the

25   EEOC forwarded the case to the New York District Office for

47

1    determination of whether an enforcement action should be filed

2    in the U.S. District Court.

3        Ms. Malloy's declaration as well as her deposition

4    testimony, referred to the EEOC's Regional Attorneys Manual,

5    which outlines the steps that the EEOC must take before filing

6    a Federal District Court action, as contemplated by 482 U.S.C.

7    2000(e)(5), to enforce its rights and remedies under the ADA.

8    And her declaration states that after going through the steps

9    in the manual, the EEOC filed a complaint on behalf of a class

10   of Delphi employees in the U.S. District Court for the Western

11   District of New York on or about September 28, 2007, just over

12   three months after conciliation efforts had failed.  The EEOC

13   takes the position here that that was a timely and rapid

14   process under its statute and the Regional Attorney's Manual.

15   And as far as this matter is concerned, which deals with relief

16   from the bar date, Delphi appears to me not to have disputed

17   that.  Roughly, three weeks later, on October 16, 2007, the

18   EEOC filed the claim at issue here in the bankruptcy case.

19   Which again, is roughly fourteen months since the date that it

20   learned of Mr. Strauder's concern and thirteen -- roughly

21   thirteen months since the date that Delphi responded to the

22   charge.

23       In addition, the record before me reflects that no

24   employee of Delphi asserted a claim for which one could

25   arguably contend any element included a breach of the ADA or a

48

1    violation of the ADA on this type of basis.  Notwithstanding

2    the notice of the bar date, to known present and former

3    employees, as well as the publication notice, that was

4    provided, and of course, the fact that this being a very

5    prominent Chapter 11 case involving prominent labor issues, the

6    Court can reasonably infer that present and former employees,

7    who did not receive actual notice, would have been aware of the

8    case and found publication notice meaningful.

9          As I said at oral argument, I also believe that the

10   basis -- the underlying factual basis for this type of claim,

11   is not counter-intuitive or esoteric.  The litigation of the

12   basis of the claim might be, but the fundamental facts

13   underlying the claim are ones where one would assume an

14   employee with a grievance would assert such a grievance.  That

15   is, that Delphi required access to all of an employee's medical

16   records in connection with sick leave.  Obviously a very

17   sensitive subject to individual employees.  Nevertheless, as I

18   said, the record, I believe, is undisputed that there are no

19   such claims on file by employees on a pre-petition basis filed

20   before the bar date.

21         The monetary relief in the proof of claim of the EEOC

22   appears to assert the claim, on behalf of the employees

23   themselves.  And the debtors have cited case law that stands

24   without proposition, including in a bankruptcy context where

25   the EEOC is seeking monetary relief as opposed to perspective

49

1    injunctive relief.  See EEOC v. Jefferson Dental Clinics, PA

2    478 F.3d 690, 696-99 (5th Cir. 2007) as well as O'Loughlin v.

3    County of Orange, 229 F.3d 871 (9th Cir. 2007), in which the

4    monetary claim was deemed discharged in Orange County's

5    bankruptcy case.

6         The argument made by the EEOC in its motion and in

7    the exhibits offered up by the EEOC, including Ms. Malloy's

8    declaration, for why Rule 9006(b)(1) should apply here, is two-

9    fold.  First, the EEOC contends that since it is conceded that

10   it learned of the claim after the bar date past, it should be

11   excused from complying to the bar date.  Secondly, it contends

12   that its own reasonable deliberative practices and procedures

13   for determining whether it had a properly assertible claim

14   precluded it from filing the proof of claim until the date that

15   it did, or until a short time after the date that it would have

16   been so precluded.  The first argument, given the facts that

17   I've recited not clearly as inadequate.  Under the two-step

18   analysis set forth in Pioneer, the failure to file a proof of

19   claim until well over a year past after learning of the claim,

20   would need to be justified.  First, as an act of neglect as

21   opposed to a conscious decision, or a decision that was made

22   knowing of the existence of the bar date.  And second, assuming

23   that that hurdle were surmounted that would satisfy in favor of

24   the EEOC, the balancing test for which the EEOC bears the

25   burden set forth in Pioneer and Midland.

50

1        Except as set forth in oral argument today, the EEOC

2    has not carried its burden to show neglect in the first place.

3    Ms. Malloy's declaration and more significantly her deposition

4    transcript, reflect that she did not know when or would not say

5    when she began her involvement in this matter.  Although,

6    ultimately, with a considerable amount of prying, her

7    involvement went back from -- went back to sometime before May

8    22, 2007, but after December of 2006.

9        In any event, neither from her personal knowledge or

10   from her familiarity with the file and what others have told

11   her, she has not offered up a reason for delay in filing a

12   proof of claim.  Such as, for example, any sort of excuses set

13   forth by the Supreme Court or provided by example by the

14   Supreme Court in Brunswick or Pioneer or the absence of notice

15   of the bar date.  In any event, the declaration and deposition

16   of Mr. Gershbein show that the debtors' provided sufficient

17   notice of the bar date to the government.  As well as, of

18   course, to the bar date order referred to in the bar date

19   notice.  And that there was no return of that notice under the

20   case law that establishes a strong presumption of the receipt

21   of notice, which very clearly has not been rebutted here.  See

22   In re Dana Corporation, 2007, W.L. 1577763 at page 4 (Bankr.

23   S.D.N.Y. 2007) and In re R.H. Macy & Co., Inc., 161 B.R. 355,

24   359 (Bankr. S.D.N.Y. 1993), indeed, and I will come back to

25   this.  In her deposition, Ms. Malloy was asked two questions

51

1    first.

2    "Q. Did you need to get advance authorization from the

3    commissioner or at EEOC headquarters in Washington prior to

4    filing your proofs of claim, that is the proofs of claim in

5    this case?"

6    "A. No."

7          Next question.

8    "Q. What authorizations do you need to file a proof of claim

9    in a bankruptcy case on behalf of the EEOC?"

10   "A. I'm not aware of any particular authorizations that we

11   require."

12         She was also asked, as a witness testifying in

13   support of excusable neglect --

14   "Q. Are there any other basis of excusable neglect, other than

15   in your memorandum, that the EEOC filed, of which you are

16   aware?"

17   "A. I think the memorandum covers it."

18         Including the fact that Mr. Strauder did not even

19   come to the EEOC, I believe it was after the bar date already

20   at that time.  And his claim, in any event, is not a pre-

21   petition claim.

22         Moreover, even if the EEOC could be said to have

23   proven that its delay stemmed from "neglect" as opposed to a

24   knowing act or choice, it has not shown that such length the

25   neglect.  And again, I point out, that to my mind for purposes

52

1   of the Bankruptcy's Code's definition of a claim under 1015,

2   the EEOC would have believed that there was a basis for

3   asserting a claim at least as early as November 2006 and

4   determined that there was a claim through its own processes on

5   May 22, 2006. But that delay, if it does rise to the level of

6   neglect, would be excusable. The case law dealing with

7   analogous situations, is to the contrary, in support of the

8   debtors' position. See for example, In re Calpine Corporation,

9   2007 W.L. 4326738, at pages 6-7 (S.D.N.Y 2007), holding that

10  six-month delay between the date when one could be said to have

11  had to file a proof of claim and the date that it was actually

12  filed, was not excusable neglect. And noting that the

13  claimants "had the ability to file supplemental proofs of claim

14  at any time" have not offered any explanation as to why no such

15  supplements were filed until such a late date. In re Northwest

16  Airlines Corporation, 2007 W.L. 498, 295 at page 3 (Bankr.

17  S.D.N.Y. 2007), which the Court stated "movant cannot properly

18  ground it's excusable neglect argument on the fact that it

19  conducted an investigation and tried to resolve the issues in

20  good faith negotiations." All of this could be done after a

21  filing is first made and rights are preserved. A similar point

22  was made in In re Enron Corporation, 2007 W.L. 294, 114 (Bankr.

23  S.D.N.Y. 2007), in which the movant sought leave to file a late

24  proof of claim approximately twenty months after the bar date,

25  stating that it was not sure that it had a pre-petition

53

1    guarantee claim against the debtor because it did not have an

2    executed copy of the guarantee.  Notwithstanding a diligent

3    search therefore in its file, bankruptcy judge Gonzalez

4    disagreed.  Noting again, that the most important factor in the

5    Pioneer analysis is the reason for the delay, the court found

6    that the creditor had failed to carry its burden.  In addition,

7    to noting that the creditor had a means to obtain information

8    in the bankruptcy case itself by getting the intervention of

9    the court under Bankruptcy Rule 2004, the court found that it

10   also could have filed a proof of claim without a copy of the

11   executed guarantee, without committing perjury.  And that, in

12   fact, the bar date order permitted it to file a protected claim

13   and explain why a copy of the guarantee was not available.  See

14   also New York Trap Rock Corporation, 153 B.R. 648 (Bankr.

15   S.D.N.Y. 1993), in which bankruptcy judge Schwartzberg denied a

16   Rule 9006(b) motion on the basis of prejudice to the debtor, as

17   well as untimeliness in pursing non-bankruptcy remedies in the

18   face of a bar date.

19        As far as the reason for the delay argument, as well

20   as the issue of prejudice, I conclude that the facts here or at

21   least, if not more, compelling.  The debtors here were clearly

22   reorganizing, unlike in Enron.  Moreover, I've noted the

23   particular nature of prejudice here over and beyond the

24   prejudice recognized in the Enron case that I've just discussed

25   as well as New York Trap Rock whenever new claims are asserted

54

1   after a plan has been filed and negotiated and confirmed, that

2   prejudice being of course the cap on claims for purposes of the

3   EPCA and emergence from Chapter 11, which is premises on the

4   EPCA closing.  Moreover, at least from the record, the EEOC has

5   not explained why it could not file a protective proof of

6   claim, particularly given the fact that it had formed the

7   belief that there was a claim at least by May 22, 2006, and

8   arguably -- or more than arguably, would have been able to do

9   so in November of 2006.  This is particularly so, given the

10  fact that the bar date order itself recognizes in paragraph 4

11  limitations on who may review the supporting documentation in

12  any proof of claim, which is over and above any rights that a

13  claimant, such as the EEOC, would have generally under Section

14  107 of the Bankruptcy Code, to obtain additional

15  confidentiality protection, which this Court has repeatedly

16  granted generally in this case, not only to the debtor but to

17  third parties, whenever they made a reasonable case that

18  information covered by 107 would be implicated in a public

19  filing.

20        It was argued by counsel at oral argument, and I

21  believe contrary to the reasonable inference one can draw from

22  the deposition testimony of Ms. Malloy, which I believe is

23  defended by the same counsel, that the EEOC's statute governing

24  how it needs to process charges in bringing enforcement actions

25  in the District Court, nevertheless precluded the EEOC from

55

1  filing a proof of claim in the bankruptcy case.  Again See 42

2  U.S.C. Section 2000E-5, which sets forth a process for the EEOC

3  to review charges by persons aggrieved under the statute.  As

4  well as a process for proceeding with a civil action.  In

5  particular, it's contended in oral argument that under 42

6  U.S.C. Section 2000E-5(b), which provides that charges shall

7  not be made public by the Commission, that the Commission was

8  precluded from filing a proof of claim in the bankruptcy case.

9  And that the process set forth in Section F(1) of the statute

10  including the process for going through conciliation before the

11  Commission may bring a civil action also precluded the

12  Commission from filing a proof of claim.

13       Neither counsel nor Ms. Malloy, who's also obviously

14  an attorney for the EEOC, has been able to tell me whether

15  indeed, the EEOC follows its practice generally in bankruptcy

16  cases of not filing proofs of claim, even as a protective

17  matter, until it has made a determination and commenced civil

18  action.  They state that they know nothing about how the EEOC

19  deals with proofs of claim in Chapter 11 cases, except in

20  respect of Ms. Malloy's own personal knowledge of this case.

21  Which, of course, as a factual matter, begs the question since

22  the claim here was filed only after the filing of the complaint

23  in the Western District.

24       I've reviewed the statute, as well as the

25  regulations, 29 C.F.R. 1600 et seq., and I believe based upon

56

1  that review, including the regulation specification of what

2  must be set forth in a charge, that this requirement as set

3  forth in -- or these requirements as set forth in 42 U.S.C.

4  Section 2000E-5, does not preclude -- it would not reasonably

5  be read to preclude the EEOC from filing a proof of claim in

6  this case before the commencement of the District Court

7  litigation.  The EEOC has made no effort in the case to seek

8  direction from the Court on this issue, but merely waited until

9  after the litigation was filed to file the proof of claim.

10  Given the definition of claim in the Bankruptcy Code and the

11  importance of that definition, I believe that what Congress had

12  in mind there was far broader than either the definition of

13  charge or a civil action in 42 U.S.C. Section 2000E-5.  And

14  that to the extent it even constituted neglect, which I have

15  serious doubts over, as opposed to a conscious decision, the

16  neglect of the EEOC to file a proof of claim, until the date

17  that it did, is not excusable.  First, because of the asserted

18  reason for the delay, being a unilateral legal interpretation,

19  that frankly to me appears to have been come up with following

20  Ms. Malloy's deposition this morning at oral argument, and to

21  be contrary to her deposition.  Secondly, because unlike the

22  normal case, there would indeed be prejudice here.  This is an

23  unliquidated claim, it would be difficult to liquidate it.  And

24  it is contended, and even if it were not contended, the Court

25  would take into account the fact that the liquidation of that

57

1    claim might involved, even on an estimation basis, a request

2    for withdrawal of the reference, which would further delay the

3    liquidation of the claim.

4         This Court has dealt with several requests to extend

5    the bar date in these cases, and consistent with Midlantic, has

6    generally taken a hard line with those requests and denied

7    them.  In addition to the affect of this claim itself on the

8    EPCA cap and the premises by which the parties negotiated and

9    voted on and the Court confirmed the Chapter 11 plan, therefore

10   it appears to me that other claims late filed could come out of

11   the woodwork as well at this point if the Court were to, under

12   the present facts, grant the motion here.  So the prejudice is

13   two-fold.  First, directly because it's not clear to me that

14   this claim on its own would be liquidated in time to preclude

15   an assertion of a default under the EPCA.  And secondly, that

16   such liquidation would necessarily result in an amount under

17   the cap based on Mr. Unrou's declaration and deposition, in

18   which he said that there were a handful, at least, of other

19   unliquidated and partial liquidated claims, that were filed on

20   a timely basis.  And then secondly, the prejudice generally

21   which is harder to quantify but is believed still exists, that

22   opening the door by granting a motion on this shaky foundation,

23   would encourage other late claimants to seek relief under 9006,

24   or to seek reconsideration of the Court's prior orders denying

25   them relief under Rule 9006.

1        Finally, I note here as an independent concern, the

2   point I made some time ago, which is no individual, employee or

3   former employee, all of whom I believe had adequate notice of

4   the bar date, filed a claim that could be construed to assert

5   this type of claim which the EEOC is asserting on behalf of

6   such a class.  By analogy, although I believe it's a very close

7   analogy, therefore, I believe that the reluctance of courts in

8   this district to certify classes for purposes of class proofs

9   of claim under Bankruptcy Rule 7023 and Federal Rule 23, are

10  instructive.  As Chief Judge Bernstein has noted where the

11  request for class certification comes after a bar date has been

12  established and past, bankruptcy law considerations argue

13  strongly against granting the motion for certification.  See In

14  re Musicland Holding Corporation, 362 B.R. 644, 654-6 (Bankr.

15  S.D.N.Y. 2007) citing In re Jamesway Corporation, 1997 Bankr.

16  Lexus 825 at page 10 (Bankr. S.D.N.Y. June 11, 1997) and In re

17  Sacred Heart Hospital of Norristown, 177 B.R. 1624 (Bankr. E.D.

18  P.A. 1995).  See also Judge Rakoff's decision In re Ephedra

19  Products Liability litigation; 329 B.R. 1 (S.D.N.Y 2005), in

20  which Judge Rakoff examined the timing of the request for class

21  certification and found that the late date of the request, in

22  essence, arriving in connection with the impending hearing on

23  confirmation of the debtors' plan, precluded the granting of

24  the motion.  I believe it would similarly undermine the bar

25  date order to let in a claim on behalf of people who did not

59

1   file pre-petition claims for the very same claim before the bar

2   date, under these particular circumstances at least.

3        So for those reasons, I'll deny the motion.  Mr.

4   Lyons, you can submit an order to that effect.  You don't need

5   to settle it but you should provide counsel for the EEOC with a

6   copy when you give it to the Court.  As I often do when I give

7   a long bench ruling, I'll go over the transcript of this

8   matter, not only for typos and mis-citations or incorrect

9   spellings of names and case names, but also for my grammar and

10  additional points that I may or may not want to make.  But the

11  gist of my ruling and the reasons for it won't change.

12        MR. LYONS:  Thank you, Your Honor.  I did clarify

13  that proof of claim 16727 is actually the claim that was filed

14  on behalf of the other pre-petition claimants.  Claim number

15  16728 was actually the administrative expense request filed by

16  Mr. Strauder.

17        THE COURT:  And that's not objected to on the basis

18  of timeliness.

19        MR. LYONS:  Correct.  So that one would clearly

20  remain -- survive Your Honor's ruling.  It's 16727 that would

21  be disallowed and expunged.

22        THE COURT:  Right.  The pre-petition claim.

23        MR. LYONS:  Correct.

24        THE COURT:  Okay.  All right.

25        MR. LYONS:  Thank you, Your Honor.

60

1          (Proceedings concluded at 12:57 p.m.)

2

3                     I N D E X

4

5                     RULINGS

6                                    Page Line

7    Settlement Between Denso and Delphi Approved    7    4

8    Claim of Furukawa Expunged

                                     7    9

9    Motion of the EEOC Denied            59   2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

61

1

2

3                         C E R T I F I C A T I O N

4

5       I, Esther Accardi, court approved transcriber(s), certify that

6       the foregoing is a correct transcript from the official

7       electronic sound recording of the proceedings in the above-

8       entitled matter, except where, as indicated, the Court has

9       modified its bench ruling.

10      **Esther Accardi**  Digitally signed by Esther Accardi
                            DN: cn=Esther Accardi, c=US
                            Reason: I am the author of this document
11      _____  March 3, 2008
                            Date: 2008.03.13 10:47:28 -04'00'

12      Signature of Transcriber            Date

13

14      ESTHER ACCARDI

15      typed or printed name

16

17

18

19

20

21

22

23

24

25