**Hearing Date: March 19, 2008**
**Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

– and –

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,

Debtors and Debtors-in-Possession
Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
    In re                                 :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
               Debtors.      :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SUMMARY (I) OF MODIFICATIONS TO SALE APPROVAL
ORDER IN CONNECTION WITH SALE OF DEBTORS' BEARINGS
BUSINESS AND (II) RESOLUTION OF OBJECTIONS TO (A) SALE
MOTION AND (B) NOTICES OF ASSUMPTION AND/OR ASSIGNMENT

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit

this summary of (i) modifications to the Sale Approval Order[1] and (ii) the resolution of

objections to (a) the Debtors' Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And

1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures,

(II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And

(IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Debtors' Assets

Primarily Used In Debtors' Bearings Business Free And Clear Of Liens, Claims, And

Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And

Unexpired Leases, And (III) Assumption Of Certain Liabilities (Docket No. 12104) (the "Sale

Motion") and (b) notices of assumption and/or assignment of executory contracts in connection

with the sale of the Bearings Business.

<u>Background</u>

1.        On January 25, 2008, the Court entered an Order Under 11 U.S.C. §§ 363

And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain

Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale

Hearing Date In Connection With Sale Of Debtors' Bearings Business (Docket No. 12355) (the

"Bidding Procedures Order").  Under the Bidding Procedures Order, the Debtors originally

established February 11, 2008 as the deadline to submit bids for the Bearings Business and

February 13, 2008 as the date for the auction.  On February 11, 2008, pursuant to the Bidding

---

[1]     Under the Kyklos Agreement (defined below), the Selling Debtor Entities include Delphi Automotive Systems LLC ("DAS LLC"), Delphi Technologies, Inc., and Delphi Corporation.  For convenience, use of the term "Selling Debtor Entities" means, as the context requires, the specific Debtor entity undertaking the transaction referenced to the extent such transaction affects the assets of such entity.

Procedures Order and the Sale and Purchase Agreement (the "ND Acquisition Agreement") with

the stalking horse bidder, ND Acquisition Corp. ("ND Acquisition"), the Selling Debtor Entities

extended the bid deadline to February 12, 2008 and re-set the date of the auction to February 14,

2008. On February 12, 2008, the Selling Debtor Entities again extended the bid deadline to

February 13, 2008 (the "Bid Deadline") and re-set the date of the auction to February 19, 2008.[2]

      2.      By the Bid Deadline, the Selling Debtor Entities received bids from

Kyklos Bearing International, Inc. f/k/a Kyklos, Inc.[3] ("Kyklos") and WND Acquisition

Company, LLC ("WND"). Kyklos offered $45.95 million plus the expense reimbursement

contemplated in the ND Acquisition Agreement (the "Expense Reimbursement"), subject to

certain downward adjustments. WND offered $19.95 million plus the Expense Reimbursement,

subject to certain upward adjustments for the assets of the Bearings Business.

      3.      After an independent evaluation by the Selling Debtor Entities and their

advisors, and in accordance with Bidding Procedures, the Selling Debtor Entities determined that

both the Kyklos and WND competing proposals were Qualified Bids as defined in the Bid

Procedures. In addition, although on its face the purchase price of the WND bid appears lower

than both the ND Acquisition stalking horse bid and the Kyklos bid, the WND bid included an

upward adjustment of $26 million if a competitive operating agreement with the UAW (the

"Competitive Operating Agreement") were reached prior to closing. The ND Acquisition and

Kyklos bids, on the other hand, each included a $26 million downward adjustment if such an

agreement is not reached before closing. Because the Selling Debtor Entities do not anticipate

---

[2]    In addition to the extension of the bid deadline and the date of the auction, the sale hearing was adjourned from
February 21, 2008 to March 19, 2008.

[3]    Kyklos was known as Kyklos, Inc. when it submitted its bids. Subsequent to the auction, however, Kyklos, Inc.
formally changed its name to Kyklos Bearing International, Inc.

executing the Competitive Operating Agreement prior to the closing of the Sale, the Selling

Debtor Entities excluded $26 million from the purchase price of the ND Acquisition and Kyklos

bids solely for purposes of valuing the bids.  Therefore, on February 14, 2008, the Selling Debtor

Entities, with the assistance of their advisors, concluded that the WND bid was the highest or

otherwise best offer submitted prior to the auction and, in accordance with the Bidding

Procedures Order, distributed the WND bid letter and a marked copy of the WND bid to ND

Acquisition, Kyklos, and other relevant parties.[4]

        4.      On February 19 and 20, 2008, pursuant to the Bidding Procedures Order,

the Selling Debtor Entities held an auction for the sale of the assets of the Bearings Business.  A

transcript of the auction is attached hereto as <u>Exhibit A</u> (the "Auction Transcript").  Both Kyklos

and WND made subsequent bids at the auction.  ND Acquisition did not.

        5.      The final bid submitted by Kyklos, which is contained in the Sale and

Purchase Agreement dated February 19, 2008, and all exhibits and schedules thereto (the

"Kyklos Agreement"), stated a purchase price of $46.2 million plus the Expense Reimbursement,

subject to certain adjustments.  The Kyklos Agreement, marked to reflect changes made to the

ND Acquisition Agreement submitted with the Sale Motion, is attached hereto as <u>Exhibit B</u>.

After subtracting the $26 million downward adjustment and the $1.5 million breakup fee

approved by the Bidding Procedures Order (the "Breakup Fee"), the quantifiable value to the

Selling Debtor Entities of the Kyklos final bid is $18.7 million, which represents an increase of

$500,000 from the quantifiable value of the purchase price set forth in the ND Acquisition

---

[4]    On February 14, 2008, ND Acquisition waived the finance contingency contained in the ND Acquisition bid
and thus, pursuant to the Bidding Procedures Order, was entitled to participate at the auction.

Agreement.[5]  In addition, in connection with its bid, Kyklos represented that it had entered into a component supply agreement with General Motors Corporation ("GM"), which was subsequently confirmed at the auction by GM.

6.     The final bid received from WND, which is contained in the Sale and Purchase Agreement dated February 20, 2008 and all exhibits and schedules thereto (the "WND Agreement"), offered a cash purchase price of $46.7 million plus the Expense Reimbursement, subject to similar adjustments contained in the ND Acquisition Agreement and the Kyklos Agreement.  The WND Agreement, also marked to reflect changes made to the ND Acquisition Agreement submitted with the Sale Motion, is attached hereto as Exhibit C.  After taking into account the $26 million downward adjustment and subtracting the $1.5 million Breakup Fee, the quantifiable value to the Selling Debtor Entities of the WND final bid is $19.2 million.  Kyklos was invited to submit a higher bid but declined to do so.

7.     At the conclusion of the auction, the Selling Debtor Entities, after consultation with representatives from the Creditors' Committee and GM, announced that the final bid submitted by Kyklos was the "Successful Bid" and the final bid submitted by WND was the "Alternate Bid," as each is defined in the Bidding Procedures Order.  Although the purchase price of the WND bid is $500,000 greater than the Kyklos bid, the Selling Debtor Entities determined, in their business judgment, that there is much greater certainty of closing the sale with the Kyklos bid than with either the WND or ND Acquisition bids.  Neither WND nor ND Acquisition has been able to obtain a supply agreement with GM even though GM made itself available to negotiate with each of these parties, and even attended the two-day auction so that

---

[5]     The purchase price contained in the ND Acquisition Agreement is $44.2 million, subject to similar adjustments contained in the Kyklos Agreement.  After subtracting the $26 million downward adjustment, the quantifiable value to the Selling Debtor Entities of the ND Acquisition bid is $18.2 million.

negotiations with bidders could occur as the auction progressed.  Indeed, GM informed the

Debtors that it did not believe that it would be able to reach a supply agreement with either WND

or ND Acquisition.  If either WND or ND Acquisition decided not to close the Sale because

either party could not obtain a component supply agreement with GM, the sole customer of

bearings business, the Selling Debtor Entities' damages would be limited to the security deposit

contained in the WND Agreement and ND Acquisition Agreement, which is only $1 million and

$500,000, respectively.[6]  Accordingly, given, among other things, the very high closing risks

associated with the WND and ND Acquisition bids, the Selling Debtor Entities, after

consultation with their advisors and advisors to the Creditors' Committee, determined that the

Kyklos bid was the highest or otherwise best bid, notwithstanding the fact that the WND bid

contained a higher purchase price.

   8. On March 5, 2008, two weeks after the conclusion of the auction and the

selection of the Successful Bid and Alternate Bid, affiliates of ND Acquisition, WND, and

Bearing Technologies, Ltd. (collectively, the "Resilience/WND Group") submitted an unsolicited

bid for the Bearings Business.  The bid purported to increase the purchase price contained in the

Kyklos Agreement by $2.8 million, $1.5 million of which represented ND Acquisition's

agreement to waive the Break Up Fee,  and to increase the security deposit to $4 million.  The

bid, however, was not submitted in accordance with the Bidding Procedures Order and was

received long after the conclusion of the auction.

---

[6] In addition, if the Selling Debtor Entities cannot close the sale of the Bearings Business by the end of 2008, then, pursuant to agreement with GM, GM would be obligated to buy the Bearings Busines from the Selling Debtor Entities at a lower price than contemplated by each of the bids, and the Selling Debtor Entities would be forced to continue to incur the operating losses of the Bearings Business until it could "put" the business to GM. Accordingly, it is critical that the Selling Debtor Entities minimize closing risks associated with the Sale.

9.      Notwithstanding the late bid, the Debtors elected to proceed forward with approval of the Successful Bid for a number of reasons. First, to select a bid outside the Court-approved procedures would jeopardize the integrity of the sale process and the auction. Second, the Selling Debtor Entities do not believe the Resilience/WND Group bid constitutes a higher or otherwise better bid than the Successful Bid. The Resilience/WND Group bid, including its bid letter and a marked version of the Kyklos Agreement, is attached hereto as Exhibit D. The Resilience/WND Group has not secured a supply agreement with GM. Indeed, GM informed Delphi that it had no intention of reaching such an agreement with the Resilience/WND Group. As noted about, the ability of the Selling Debtor Entities to timely close the Sale is critical, and failure to obtain a supply agreement with GM increases exponentially the closing risk associated with selecting the Resilience/WND Group bid. Accordingly, on March 12, 2008, the Selling Debtor Entities informed the Resilience/WND Group that it would not accept the Resilience/WND Group's bid and that they would move forward to seek Court approval of the Successful Bid and Alternate Bid as reflected in the Kyklos Agreement and WND Agreement, respectively.

10.     In addition, as further described below, the Sale Approval Order was revised to reflect, among other things, comments received by certain parties-in-interest and the selection of Kyklos as the Successful Bidder and WND as the Alternate Bidder. A marked version of the Sale Approval Order reflecting the modifications made to the form of proposed order submitted with the Sale Motion is attached hereto as Exhibit E.[7]

---

[7]     At the request of the Department of Justice (the "DOJ"), the Debtors have reverted language at the end of paragraph 12 of the Sale Approval Order to the language previously agreed to by the Debtors and the DOJ in connection with a prior divestiture. It is the Debtors' understanding that the DOJ is concerned that the language in the Sale Approval Order originally filed with the Sale Motion arguably could prevent the DOJ from asserting violations against the buyer for environmental violations starting before entry of the Sale Approval Order but continuing after closing.

11.     Finally, the Debtors received one limited objections to the Sale Motion and eight objections to notices of assumption and/or assignment of executory contracts. As described below, the objection to the Sale Motion has been resolved through modification of the Sale Approval Order. In addition, all of the executory contract objections have been resolved consensually.

A.     Modifications To The Sale Approval Order

12.     The proposed Sale Approval Order has been modified to reflect, among other things, that Kyklos is the Successful Bidder and WND is the Alternate Bidder. In addition, the proposed order has been clarified to provide that, in the event the effective date of the Debtors' plan of reorganization (the "Plan") occurs prior to the closing of the sale, then the Assumed Contracts (as defined in the Sale Approval Order) will be assumed pursuant to the Plan.

13.     Furthermore, as noted above, there was one limited objection (Docket No. 12649) to the Sale Motion, which was filed by the Timken Company and Timken U.S. Corp. (collectively, "Timken"). Timken, a counterparty to an Assigned Contract (as defined in the Sale Approval Order), raised concerns that the Sale Approval Order impaired its ability to assert certain defenses against the buyer or successful bidder. To resolve Timken's objection, the Selling Debtor Entities, Kyklos, and Timken have agreed to include a sentence at the conclusion of paragraph 17 of the Sale Approval Order relating solely to Timken. Accordingly, the sole objection to the Sale Motion has been resolved.[8]

---

[8]     On March 18, 2008, Timken filed a withdrawal of its objection to the sale motion, as well as objections to Notices of Assumption/Assignment (as defined below) (Docket No. 13152). Timken's withdrawal is conditioned on the inclusion in the Sale Approval Order of the language it negotiated with the Selling Debtor Entities and Kyklos.

B.    Assumption And Assignment Of Executory Contracts

14.    On January 30, 2008, February 1, 2008, and February 14, 2008, the

Debtors served upon counterparties to the executory contracts notices of assumption and

assignment of certain executory contracts identifying ND Acquisition as the buyer and notices of

assumption and assignment of certain executory contracts identifying WND and Kyklos as the

qualified bidders (collectively, the "Notices of Assumption/Assignment").  The Debtors served

approximately 170 Notices of Assumption/Assignment.[9]  In total, the Debtors received eight

objections to these Notices of Assumption/Assignment.  A chart summarizing the Objections,

including resolution of all the objections, is attached hereto as Exhibit F.

15.    As noted on Exhibit F, all of the objections have been withdrawn or

otherwise resolved.  The Debtors, therefore, submit that the revised Sale Approval Order should

be approved for all of the reasons set forth in the Sale Motion.

---

[9]    Pursuant to the Bidding Procedures Orders, and because there were qualified bidders, the Debtors served two
sets of notices of assumption and/or assignment (the first pertaining to ND Acquisition and the second
pertaining to the qualified bidders), each time serving approximately 170 notices.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) granting the Sale Motion, (ii) overruling any objections to the Motion not otherwise withdrawn or resolved, and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       March 18, 2008

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 4951)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

–and –

By:  /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

10