Hearing Date And Time: March 19, 2008 at 10:00 a.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   -  x
   :
     In re                                   :        Chapter 11
   :
DELPHI CORPORATION, et al.,        :        Case No. 05-44481 (RDD)
   :
                            Debtors.     :        (Jointly Administered)
   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' REPLY IN SUPPORT OF EXPEDITED MOTION FOR ORDERS UNDER 11
U.S.C. §§ 363 AND 1146 AND FED. R. BANKR. P. 2002, 6004, AND 9014 (A) (I)
APPROVING BIDDING PROCEDURES, (II) GRANTING CERTAIN BID PROTECTIONS,
(III) APPROVING FORM AND MANNER OF SALE NOTICES, AND (IV) SETTING SALE
HEARING DATE AND (B) AUTHORIZING AND APPROVING (I) SALE BY DELPHI
AUTOMOTIVE SYSTEMS LLC OF CERTAIN MACHINERY, EQUIPMENT, AND INVENTORY
PRIMARILY USED IN DAS LLC'S KETTERING DAMPER BUSINESS FREE AND CLEAR OF
LIENS AND (II) ENTRY INTO LEASE AGREEMENT IN CONNECTION THEREWITH

("DEBTORS' REPLY IN SUPPORT OF KETTERING SALE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Reply In Support Of Debtors' Expedited Motion For Orders Under 11 U.S.C. §§ 363 And 1146 And Fed. R. Bankr. P. 2002, 6004, And 9014 (a) (i) approving bidding procedures, (ii) granting certain bid protections, (iii) approving form and manner of sale notices, (iv) setting a sale hearing date in connection with the sale (the "Sale") of certain assets of Delphi Automotive Systems LLC (the "Seller") comprising certain assets used in the U.S. damper business located at the Seller's damper manufacturing facility in Kettering, Ohio (the "Acquired Assets"), and (v) authorizing the Seller's entry into lease agreement in connection therewith[1] (Docket No. 13028) (the "Motion"), and respectfully represent as follows:

Preliminary Statement

1.    Pursuant to the Motion, the Debtors seek approval of two orders: (a) an order (the "Bidding Procedures Order") approving (i) certain bidding procedures (the "Bidding Procedures") for the sale of the assets in the Debtors' U.S. damper business and (ii) certain bid protections to be provided to Tenneco Automotive Operating Company Inc. (the "Purchaser" or "Tenneco") pursuant to the Asset Purchase Agreement dated March 7, 2008 by and between the Seller and the Purchaser (the "Agreement") and (b) an order approving the Sale of the Acquired Assets in accordance with the terms of the Agreement. At the March 19, 2008 omnibus hearing the Debtors are seeking approval only of the Bidding Procedures Order and seeking to set the sale hearing for the April 30, 2008 omnibus hearing (the "Sale Hearing"). Thus, the relief being sought on March 19th is limited in scope and intended only to commence the process by which

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

2

the Debtors would sell the Acquired Assets subject to this Court's subsequent approval of the Sale at the Sale Hearing.

2.  Significantly, not a single objection was filed that challenged the appropriateness of the Bidding Procedures or the Bid Protections – the substantive matters before the Court at the March 19th hearing. The only objection filed was a "Limited Objection" by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers – Communications Workers of America and its Local Union Number 755 (the "IUE-CWA") (Docket no. 13140) claiming that the Purchaser "does not have a fully completed collective bargaining agreement with the IUE-CWA and Local 755 prior to said sale." The IUE-CWA simply objects to the timing of the Debtors' sale process and requests additional time to negotiate a fully completed bargaining agreement with Tenneco and an Effects MOU before the sale process commences. If the Debtors are forced to wait to commence the sale process, they risk losing Tenneco as the stalking horse bidder on the terms set forth in the Agreement. Indeed, timing is so tight that the Debtors sought approval of the Bidding Procedures on an expedited basis. Moreover, because the upcoming hearing simply requests approval of the Bidding Procedures and the Bid Protections and the scheduling of a Sale Hearing, the IUE-CWA's request for an adjournment is misplaced and its objection is, at best, premature. Indeed, completing a collective bargaining agreement with Tenneco, for example, is an issue that can be completed following the auction. In fact, subject to the receipt of competitive bids and the outcome of a consequent auction, it is possible that Tenneco will not be the Successful Bidder. Furthermore, as set forth in more detail below, the Agreement itself contains certain provisions that should resolve the IUE-CWA's concerns. Accordingly, the IUE-CWA's request for an adjournment is misplaced and its objection should be overruled.

3

Argument

3.     The IUE-CWA's limited objection should not be considered at this time. First, as mentioned above, the objection is premature. To the extent the IUE-CWA has an issue with respect to the completion of a collective bargaining agreement with the successful bidder at the auction or the Purchaser, as the case may be, this issue can and should be addressed at the Sale Hearing. It is of particular importance that the IUE-CWA did not object to the substantive issues to be heard at tomorrow's hearing – the Bidding Procedures and the Bid Protections. Moreover, to the extent that the IUE-CWA implicitly objects to the scheduling of the April 30th Sale Hearing, this issue – and any request for a subsequent adjournment – can be addressed at that time. Indeed, between now and then, it is possible that the IUE-CWA's concerns will be resolved.

4.     To the extent this Court is inclined to hear the IUE-CWA's limited objection, the Debtors believe that this Court should overrule the objection on its merits. First, pursuant to the IUE-CWA Settlement Agreement (Docket No. 9106), the IUE-CWA already waived its right to enforce the "no sale" provision of its national collective bargaining agreement with respect to the Kettering facility to the extent necessary to complete the sale of the Kettering facility. See Attachment A to the IUE-CWA Settlement Agreement (Docket No. 9106) at page 40. Although the Debtors have certain lingering obligations pursuant to the relevant successor clause, these obligations can be satisfied at any time between now and the closing of the transaction. In fact, one of the Debtors' closing conditions, as set forth in Section 6.3(D) of the Agreement, is the satisfaction of the relevant successor clause and the IUE-CWA's acknowledgment of same. Moreover, the Agreement also contains a purchaser closing condition stating that the Purchaser shall have entered into an Effects MOU (as defined in the Agreement).

4

See Section 6.2(D) of the Agreement. Accordingly, the substance of the IUE-CWA's objection has been waived to the extent it is based on the no-sale clause and is otherwise addressed explicitly by the Agreement.[2]

        5.      The Agreement and the Motion make clear that the Sale, to the extent consummated with Tenneco in accordance with the terms of the stalking horse Agreement, would not close until on or about June 1, 2008. This gives the parties ample time to resolve any outstanding issues. Thus, the IUE-CWA's concern is already addressed by the terms of the Agreement and the IUE-CWA Settlement Agreement.

        6.      The IUE-CWA is further protected by the fact that it already has in place a replacement collective bargaining agreement with the Purchaser, dated August 5, 2007. Although the IUE-CWA asserts that it continues to negotiate with the Purchaser as to certain terms of its replacement collective bargaining agreement, any remaining issues between the IUE-CWA and the Purchaser in connection with the Sale can be resolved even after closing.

        7.      In addition, the Bidding Procedures themselves provide protections against the concerns raised by the IUE-CWA with respect to other possible purchasers. For example, the Bidding Procedures explicitly state that "[p]otential bidders should note that Section 3.2 of the Agreement addresses, among other things, the terms and conditions of employment of IUE-CWA-represented employees, and these issues remain subject to the parties' rights and obligations related to bargaining with the IUE-CWA." Thus, the Bidding Procedures themselves provide notice to potential bidders that the Agreement is subject to certain rights of the IUE-CWA and its represented employees. Moreover, one of the bid requirements is that

---

[2] The IUE-CWA's concerns should not be an issue at this time. Indeed, similar objections have been filed prior to the bid procedures hearing (e.g., in connection with the brake hose business) and have been resolved consensually and without need for court intervention because such objections were premature.

5

each bidder must provide "[w]ritten evidence that the bidder has negotiated a ratified, executed successor collective bargaining agreement with the IUE-CWA or that the bidder is prepared to assume the Seller's current collective bargaining agreement with the IUE-CWA." See Bidding Procedures, "Bid Requirements." Rather than threaten the IUE-CWA's rights, these provisions of the Bidding Procedures actually protect the IUE-CWA. The IUE-CWA's objection, therefore, is unfounded.

8. For the reasons set forth above, any attempt by the IUE-CWA to delay the sale process is unwarranted. The Sale on the terms set forth in the Agreement, or any succeeding purchase agreement as a result of an auction, and the Bidding Procedures would be beneficial to all of the Seller's stakeholders, including the IUE-CWA. Specifically with respect to the IUE-CWA, the Sale of the Acquired Assets to the Purchaser or the Successful Bidder, as the case may be, represents the best opportunity for the employees it represents to continue in their positions at the Kettering facility with the least amount of disruption. Indeed, GM has indicated that it intends to resource the supply of passive dampers and damper modules manufactured at the Kettering facility to the Purchaser, and the Purchaser has agreed to lease a portion of the Kettering facility from the Seller. The Purchaser has also covenanted to maintain no fewer than 200 hourly manufacturing jobs at the Kettering facility through October 12, 2011.

9. In sum, the IUE-CWA's objection is at best premature. Beginning the sale process now is imperative and will not adversely affect the IUE-CWA's rights or abilities to resolve its outstanding issues. Accordingly, the IUE-CWA should not be permitted to delay a sale process that will be beneficial to the Seller and its stakeholders, including the IUE-CWA.[3]

---

[3] The Debtors have minimally revised the proposed Bidding Procedures Order to reflect the IUE-CWA's limited objection. A version of the proposed Bidding Procedures Order marked with these changes is attached hereto as Exhibit A.

6

WHEREFORE, the Debtors respectfully request that this Court enter (a) an order granting the Motion as it relates to the Bidding Procedures Order, (b) overruling the IUE-CWA's limited objection, and (c) granting the Debtors such other further relief as is just.

Dated: New York, New York
March 18, 2008

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: */s/ John. Wm. Butler, Jr.*
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 9331)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

- and -

By: */s/ Kayalyn A. Marafioti*
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession