UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                              :

      In re                     :         Chapter 11
                              :

DELPHI CORPORATION, <u>et al.</u>,     :         Case No. 05-44481 (RDD)
                              :

                Debtors.     :         (Jointly Administered)
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL ASSETS PRIMARILY USED IN DEBTORS' BEARINGS BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND <u>(III) ASSUMPTION OF CERTAIN LIABILITIES</u>

("BEARINGS BUSINESS SALE APPROVAL ORDER")

           Upon the unopposed motion, dated January 15, 2008 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv) setting a sale hearing date (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of the Debtors' assets (the "Acquired Assets") comprising substantially all the assets that comprise the Debtors' global bearings business (the "Bearings Business"), free and clear of liens, claims, encumbrances, and interests to ND Acquisition Corp. ("ND Acquisition") or to the party submitting the highest or otherwise best bid (the "Successful Bidder"), (ii) the assumption and assignment of certain prepetition

executory contracts and unexpired leases (the "Assumed Contracts") and the assignment of

certain postpetition executory contracts and unexpired leases (the "Postpetition Contracts," and

collectively with the Assumed Contracts, the "Assigned Contracts") to ND Acquisition or the

Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by

ND Acquisition or the Successful Bidder; and the Court having entered an order on January 25,

2008 (the "Bidding Procedures Order") (Docket No. 12355) (a) approving bidding procedures, (b)

granting certain bid protections, (c) approving the form and manner of sale notices, and (d)

setting the Sale Hearing; and an auction for the Acquired Assets (the "Auction") having occurred

on February 19 and 20, 2008; and Kyklos Bearing International, Inc. f/k/a Kyklos, Inc. having

been selected by the Debtors as the Successful Bidder (hereafter, the "Buyer") in connection with

the Sale and Purchase Agreement, dated February 19, 2008 (such Sale and Purchase Agreement,

including all schedules, exhibits, and related agreements and documents (certain of such

schedules, exhibits, and related agreements and documents were attached as an exhibit to the

transcript of the Auction), is hereafter referred to as the "Agreement," a copy of which, without

its schedules, exhibits, and related agreements and documents, is attached hereto as Exhibit A);

and the Sale Hearing having been held on March 19, 2008, at which time all interested parties

were offered an opportunity to be heard with respect to the Motion; and the Court having

reviewed and considered the Motion and the arguments of counsel made, and the evidence

proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion

is in the best interests of Delphi and certain of its affiliated Debtors (the "Selling Debtor

Entities"),[1] their estates, their stakeholders, and all other parties-in-interest; and after due

deliberation thereon, and sufficient cause appearing therefor,

---

[1]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi Automotive Systems LLC, Delphi

*(cont'd)*

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections

363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and

sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, and the

assumption and assignment of the Assumed Contracts, and the Cure Amounts as approved herein

has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P.

2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the

circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the

Bid Deadline, the Auction, or the assumption and assignment of the Assumed Contracts or

assignment of the Postpetition Contracts as provided herein is necessary or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, the Selling Debtor Entities have marketed the Acquired Assets and conducted the sale

_____

*(cont'd from previous page)*
    Technologies, Inc., and Delphi Corporation.

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
    of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

process in compliance with the Bidding Procedures Order and in a manner that afforded a full,

fair, and reasonable opportunity for any entity to make a higher or better offer to purchase the

Acquired Assets.

E.       The Buyer submitted a final bid at the auction consisting of the Buyer's

bid submission documents delivered to the Selling Debtor Entities on February 11 and 13, 2008

and marked at the auction as Exhibit 6, as amended by the documents marked at the auction as

Exhibit 12 (revised version of the Sale and Purchase Agreement, including certain schedules and

exhibits thereto).  No higher or otherwise better offers having been made, the Buyer, pursuant to

the Agreement and the Bidding Procedures Order, is the Successful Bidder.

F.       WND Acquisition Company, LLC ("WND") submitted a final bid at the

auction consisting of WND's bid submission documents delivered to the Selling Debtor Entities

on February 11 and 12, 2008 and marked at the auction as Exhibit 5, as amended by the

documents marked at the auction as Exhibit 13 (revised version of the Sale and Purchase

Agreement), and attached hereto as Exhibit B (the "WND Final Bid").  The WND Final Bid was

determined by the Debtors to be the Alternate Bid (as defined by the Bidding Procedures Order)

to be submitted to this Court for approval in accordance with the Bidding Procedures Order.

G.       The Selling Debtor Entities (i) have full power and authority to execute

the Agreement and all other applicable documents contemplated thereby, and the transfer and

conveyance of the Acquired Assets by the Selling Debtor Entities has been duly and validly

authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and

authority necessary to consummate the transactions contemplated by the Agreement, and (iii)

have taken all action necessary to authorize and approve the Agreement and to consummate the

transactions contemplated thereby, and no consents or approvals, other than those expressly

4

provided for in the Agreement, are required for the Selling Debtor Entities to consummate such transactions.

H.      The Selling Debtor Entities have demonstrated (i) good, sufficient, and sound business purposes and justification for the Sale because, among other things, the Selling Debtor Entities and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Acquired Assets and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to Buyer of the Acquired Assets pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Acquired Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) prior to the effective date of a plan of reorganization exist because, among other things, absent the Sale the value of the Acquired Assets will be substantially diminished.

I.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for ND Acquisition, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as defined below) in or upon the Acquired Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (viii) all parties to Assigned

5

Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice,

(xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all

entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§

102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus

Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883) (the "Supplemental Case Management Order")), and (xiv) such other entities as are

required to be served with notices under the Supplemental Case Management Order.

       J.     The Buyer is not an "insider" of any of the Debtors as that term is defined

in 11 U.S.C. § 101(31).

       K.     The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Buyer without collusion, in good faith, and from arm's-length bargaining

positions.  Neither the Selling Debtor Entities nor the Buyer has engaged in any conduct that

would cause or permit the Sale or any part of the transactions contemplated by the Agreement to

be avoidable under 11 U.S.C. § 363(n).

       L.     The Buyer is a good faith purchaser under 11 U.S.C. § 363(m) and, as

such, is entitled to all of the protections afforded thereby.  The Buyer will be acting in good faith

within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Agreement at all times after the entry of this order.

       M.     The consideration provided by the Buyer for the Acquired Assets pursuant

to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the

Acquired Assets, (iii) will provide a greater recovery for the Selling Debtor Entities' stakeholders

than would be provided by any other practical available alternative, and (iv) constitutes

6

reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

N.      The Sale must be approved and consummated promptly to preserve the viability of the Bearings Business as a going concern. The Sale is in contemplation of, and a necessary condition precedent to consummation of the First Amended Joint Plan of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (as amended, the "Plan") confirmed by order of the Court on January 25, 2008 (the "Confirmation Order") (Docket No. 12359), and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

O.      The transfer of the Acquired Assets to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets and shall vest the Buyer with all right, title, and interest of the Selling Debtor Entities to the Acquired Assets free and clear of any and all liens, claims, interests, and encumbrances (including, without limitation, Encumbrances as defined in the Agreement) of any type whatsoever (whether known or unknown, secured or unsecured or in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under doctrines of successor liability), including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or the Purchaser's interest in the Acquired Assets, or any similar rights, and (ii) relating to taxes arising

7

under or out of, in connection with, or in any way relating to the operation of the Bearings

Business prior to the Closing Date, including the transfer of the Acquired Assets to the Buyer (all

such liens, claims, interests, and encumbrances listed herein, the "Interests and/or Claims").

P.      If the Sale of the Acquired Assets with respect to the Selling Debtor

Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and

this order, or if the Buyer would, or in the future could, be liable for any of the Interests and/or

Claims as set forth in the Agreement and this order, the Buyer would not have entered into the

Agreement and would not consummate the Sale or the transactions contemplated by the

Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their

stakeholders.

Q.      The Selling Debtor Entities may sell their interests in the Acquired Assets

free and clear of all Interests and/or Claims because, in each case, one or more of the standards

set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims,

who did not object, or withdrew their objections to the Sale, are deemed to have consented to the

Sale pursuant to 11 U.S.C. § 363(f)(2; and all holders of Interests and/or Claims are adequately

protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale

ultimately attributable to the property against or in which they claim an Interest and/or Claim

with the same priority, validity, force, and effect as they attached to such property immediately

before the closing of the Sale.

R.      Except as expressly provided in the Agreement, the (i) transfer of the

Acquired Assets to the Buyer and (ii) assumption and/or assignment to the Buyer of the

Assigned Contracts and Assumed Liabilities will not subject the Buyer to any liability

whatsoever with respect to the operation of the Bearings Business prior to the Closing of the Sale,

or by reason of such transfer under the laws of the United States, any state, territory, or

possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly,

on any theory of law or equity including, without limitation, any theory of equitable law,

antitrust, or successor or transferee liability.

       S.      The Selling Debtor Entities have demonstrated that it is an exercise of

their sound business judgment to assume and/or assign the Assigned Contracts as applicable to

the Buyer in connection with the consummation of the Sale, and the assumption and/or

assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their

estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being

assumed by, the Buyer are an integral part of the Acquired Assets being purchased by the Buyer

and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities is

reasonable and enhances the value of the Selling Debtor Entities' estates.

       T.      The Selling Debtor Entities have (i) cured, or have provided adequate

assurance of cure of, any default existing prior to the Closing of the Sale under all of the

Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A) and (ii) provided

compensation or adequate assurance of compensation to any party for any actual pecuniary loss

to such party resulting from a default prior to the date hereof under any of the Assumed

Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Buyer has provided adequate

assurance of its future performance of and under the Assumed Contracts, within the meaning of

11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed

Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to,

and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in

the contracts or other restrictions prohibiting their assignment or transfer.

U.      Approval of the Agreement and consummation of the Sale of the Acquired Assets and assignment of the Assigned Contracts at this time are in the best interests of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## General Provisions

1.      The Motion is GRANTED.  Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise resolved herein are hereby overruled and denied with prejudice.

## Approval Of The Agreement

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3.      Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized, but not directed, to perform their obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.      Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this order.

5.      The Selling Debtor Entities are authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to

implement the Agreement, and to take all further actions as may be requested by the Buyer for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyer or reducing to possession the Acquired Assets and the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.      This order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Debtors, the Buyer, all successors and assigns of the Buyer and the Selling Debtor Entities (including the reorganized or reconstituted Debtors after the effective date of the Plan), all affiliates and subsidiaries of the Buyer and the Selling Debtor Entities, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this order is inconsistent with the terms of the Agreement, this order shall govern.

7.      The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is not material.

<u>Sale And Transfer Of The Acquired Assets</u>

8.      Except as expressly permitted or otherwise specifically provided for in the Agreement or this order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Selling Debtor Entities' right, title, and interest in the Acquired Assets shall be transferred to the Buyer free and clear of all Interests and/or Claims, with all such Interests and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the

same validity, force, and effect which they had as against the Acquired Assets immediately before such transfer, subject to any claims and defenses the Selling Debtor Entities may possess with respect thereto.

9.      The transfer of the Acquired Assets to the Buyer pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Buyer with all right, title, and interest of the Selling Debtor Entities in and to the Acquired Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or Claims against or in the Acquired Assets shall not have delivered to the Selling Debtor Entities prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Interests and/or Claims that the person or entity has with respect to the Acquired Assets, or otherwise, then (a) the Selling Debtor Entities are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and/or Claims in the Acquired Assets of any kind or nature whatsoever.

11.      This order (a) shall be effective as a determination that, upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling Debtor Entities or the Acquired Assets prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the

12

conveyances described herein have been effected and (b) shall be binding upon and shall govern

the acts of all entities including, without limitation, all filing agents, filing officers, title agents,

title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal, state, and local officials, and all

other persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Acquired

Assets.

12.    All persons and entities, including, but not limited to, all debt security

holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade

creditors, and other stakeholders, holding Interests and/or Claims of any kind or nature

whatsoever against or in the Selling Debtor Entities or the Acquired Assets (whether legal or

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or

subordinated), arising under or out of, in connection with, or in any way relating to, the Bearings

Business, the Acquired Assets, the operation of the Bearings Business by the Selling Debtor

Entities prior to the Closing of the Sale, or the transfer of the Acquired Assets to the Buyer,

hereby are forever barred, estopped, and permanently enjoined from asserting against the Buyer,

its successors or assigns, their property, or the Acquired Assets, such persons' or entities'

Interests and/or Claims.  Nothing in this order or the Agreement releases or nullifies any

Liability to a governmental agency under any environmental laws and regulations that any entity

would be subject to as owner or operator of any Acquired Assets after the date of entry of this

order.  Nothing in this order or the Agreement bars, estops, or enjoins any governmental agency

from asserting or enforcing, outside the Court, any Liability described in the preceding sentence.

13

Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to obtain penalties from the Buyer for days of violation of environmental laws and regulations prior to Closing.

13.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Selling Debtor Entities to sell and transfer the Acquired Assets to the Buyer, in each case in accordance with the terms of the Agreement or this order.

## Assumption And Assignment To The Purchaser Of The Assumed Contracts

14.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, and subject to paragraph 15 herein, the Selling Debtor Entities' assumption and assignment to the Buyer, and the Buyer' assumption on the terms set forth in the Agreement, of the Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied; provided, however, that in the event the effective date of the Plan occurs prior to the Closing of the Sale, then the Assumed Contracts shall be assumed pursuant to the Plan and assigned in accordance with 11 U.S.C. §§ 365 and 1123 and the provisions of this order pursuant to the terms set forth in the Agreement.

15.    The Selling Debtor Entities are hereby authorized in accordance with the Plan, 11 U.S.C. §§ 105(a), 363, and 365, as applicable, to (a) assume and/or assign to the Buyer, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to the Buyer.

16.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entities shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption of such contracts by the Buyer.

17.     All defaults or other obligations of the Selling Debtor Entities under the Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities in accordance with the terms of the Agreement or, in the event the effective date of the Plan occurs prior to the Closing of the Sale, in accordance with the terms of the Plan, and the Buyer shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-debtor party to any Assumed Contracts is hereby deemed to have consented to the assumption and assignment of the Assumed Contracts to the Buyer and shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entities or the Buyer, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing or any purported written or oral modification to the Assumed Contracts.  Each non-debtor party to any Assumed Contract shall be forever barred, estopped, and permanently enjoined from asserting against the Buyer (or its property, including the Acquired Assets) any claim, counterclaim, defense, breach, condition, setoff asserted or assertable against the Debtors.  The failure of the Selling Debtor Entities or the Buyer to enforce

15

prior to the Closing of the Sale one or more terms or conditions of any Assumed Contracts shall

not be a waiver of such terms or conditions or of the Selling Debtor Entities' or Buyer's rights to

enforce every term and condition of any such Assumed Contracts.  There shall be no rent

accelerations, assignment fees, increases (including of rates), or any other fees charged to the

Buyer as a result of the assumption and assignment of the Assumed Contracts.  Notwithstanding

any provisions to the contrary otherwise contained in this order, nothing in this order shall be

construed to bar, estop, or enjoin The Timken Company and/or Timken U.S. Corp. or any of

their affiliates (collectively, the "Timken Entities") from asserting against the Buyer (or its

property, including the Acquired Assets) any defenses asserted or assertable by the Timken

Entities against the Debtors with respect to any and all contracts between the Debtors and the

Timken Entities that are to be assumed and/or assigned under the Agreement and/or this order

<u>Additional Provisions</u>

18.     The transactions contemplated by the Agreement, and the execution,

delivery, and/or recordation of any and all documents or instruments necessary or desirable to

consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt

from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section

1146(c) of the Bankruptcy Code.

19.     The consideration provided by the Buyer for the Acquired Assets under

the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

Transfer Act, and under the laws of the United States, and any state, territory, or possession

thereof, or the District of Columbia.

16

20.    Upon the Closing of the Sale, this order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets and the Assigned Contracts or a bill of sale transferring good and marketable title in such Acquired Assets and Assigned Contracts to the Buyer pursuant to the terms of the Agreement.

21.    Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release their respective Interests and/or Claims against the Acquired Assets, if any, as such Interests and/or Claims may have been recorded or may otherwise exist.

22.    Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

23.    All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Acquired Assets to the Buyer upon the Closing of the Sale.

24.    All entities holding Interests and/or Claims against or in the Selling Debtor Entities or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Buyer, its property, its successors and assigns, or the Acquired Assets with respect to any Interest and/or

17

Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers, their directors, their shareholders, or the Acquired Assets. Following the Closing of the Sale, no holder of an Interest and/or Claim in or against the Selling Debtor Entities shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or related to such Interest and/or Claim or any actions that the Selling Debtor Entities may take, or have taken, in their chapter 11 cases.

25.     The transactions contemplated by the Agreement are undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Acquired Assets shall not affect the validity of the Sale to the Buyer, unless such authorization is duly stayed pending such appeal. The Buyer is a purchaser in good faith of the Acquired Assets pursuant to section 363(m) of the Bankruptcy Code, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

26.     The consideration provided by the Buyer for the Acquired Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

27.     The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this order. The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this order.

18

28.    The terms and provisions of the Agreement and this order shall be binding in all respects upon the Selling Debtor Entities, their estates, and their stakeholders, the Buyer and its affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all entities asserting an Interest and/or Claim against or in the Acquired Assets to be sold to the Buyer pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding, and shall inure to the benefit of the Selling Debtor Entities and the Buyer and their affiliates, successors, and assigns.

29.    Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates or of the other Sellers, such as funds that are trust funds under any applicable state lien laws.

30.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

31.    The failure specifically to include or to reference any particular provision of the Agreement in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

32.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance

19

with the terms thereof without further order of the Court, <u>provided</u> that any such modification,

amendment, or supplement does not have a material adverse effect on the Selling Debtor Entities'

estates.

33.    No bulk sales law or any similar law of any state or other jurisdiction

applies in any way to the Sale.

34.    To the extent that the Plan or Confirmation Order alters, conflicts with, or

derogates from the provisions of the Agreement and this order, the provisions of this order shall

control.  The Selling Debtor Entities' obligations (including but not limited to all post-Closing

obligations) under this order and Agreement (including all Exhibits, Schedules, and Ancillary

Agreements) shall survive confirmation of the Plan or discharge of claims thereunder and shall

be binding upon the Selling Debtor Entities and their successors including the reorganized or

reconstituted debtors, as the case may be, after the effective date of the Plan in the Debtors' cases.

35.    This Court retains exclusive jurisdiction to interpret, construe, enforce,

and implement the terms and provisions of this order, the Agreement, all amendments thereto,

any waivers and consents thereunder, and of each of the agreements executed in connection

therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel

delivery of the Acquired Assets to the Buyer, (b) compel delivery of the purchase price or

performance of other obligations owed to the Selling Debtor Entities pursuant to the Agreement,

(c) resolve any disputes arising under or related to the Agreement, except as otherwise provided

therein, (d) interpret, implement, and enforce the provisions of this order, (e) protect the Buyer

against any Interests and/or Claims against or in the Selling Debtor Entities or the Acquired

Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (f) determine

05-44481-rdd    Doc 13174    Filed 03/19/08    Entered 03/19/08 15:55:03    Main Document
Pg 21 of 21

all disputes among the Selling Debtor Entities, the Buyer, and any non-Debtor parties to any

Assigned Contracts concerning, inter alia, the Selling Debtor Entities' assumption and/or

assignment of any Assigned Contract to the Purchaser under the Agreement.

36.     The provisions of this order are nonseverable and mutually dependent.

37.     The WND Final bid is hereby approved as the Alternate Bid (as defined

by the Bidding Procedures Order).

38.     Following entry of this order, if the Buyer fails to consummate the Sale

because of the failure of a condition precedent beyond the control of either the Selling Debtor

Entities or the Buyer or a breach or failure to perform on the part of the Buyer, then the Alternate

Bid shall be deemed the Successful Bid (as defined in the Bidding Procedures Order); the

Alternate Bidder shall have all of the rights, protections, and status as if it were the "Buyer," as

defined in this order, including, without limitation, the status of a purchaser in good faith within

the meaning of 11 U.S.C. § 363(m); and the Selling Debtor Entities shall be authorized, but not

directed, to effectuate a sale of the Bearings Business to the Alternate Bidder subject to the terms

of the Alternate Bid without further order of this Court.

39.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       March 19, 2008

___/s/Robert D. Drain_____
     UNITED STATES BANKRUPTCY JUDGE

21