**Hearing Date And Time: March 31, 2008 at 10:00 a.m.**
**Objection Deadline: March 27, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |
|---|---|
| : | |
| In re : | Chapter 11 |
| : | |
| DELPHI CORPORATION, et al., : | Case No. 05-44481 (RDD) |
| : | |
| : | (Jointly Administered) |
| Debtors. : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | |

EXPEDITED MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a) AND 363(b) AND FED.
R. BANKR. P. 6004 AUTHORIZING BUT NOT DIRECTING OR REQUIRING DEBTORS TO EXTEND
INDEMNITY TO GENERAL MOTORS CORPORATION UNDER AGREEMENT BETWEEN DELPHI AND
GM, WITH RESPECT TO UAW BENEFIT GUARANTEE, DATED AS OF DECEMBER 22, 1999

("GM INDEMNITY EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this expedited motion (the "Motion") for an order pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. R. Bankr. P. 6004 authorizing, but not directing or requiring, the Debtors to extend the indemnification agreement between Delphi and General Motors Corporation ("GM") with respect to the UAW Benefit Guarantee (as defined below), dated as of December 22, 1999 (the "Indemnification Agreement"), for an additional time period of up to 15 days (i.e. up to April 15, 2008) beyond the scheduled expiration of the Indemnification Agreement if GM extends the UAW Benefit Guarantee by the same period of time.

## Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.    No trustee or examiner has been appointed in the Debtors' cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders.

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389) (the "Solicitation Procedures Order"). On January 25, 2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order"), which became a final order on February 4, 2008.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B. Current Business Operations Of The Debtors

6. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company

---

[1] The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

       7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

       8.      Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     <u>Events Leading To The Chapter 11 Filing</u>

       9.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however,

---

[2] On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007. On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007. The Spanish court approved the social plan on July 31, 2007. The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

10.     The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

11.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

---

[3] Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

D.     The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations. The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements to create a competitive arena in which to conduct business; second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company; third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable solution to their current pension situation.

E.     Confirmation Of The Debtors' Plan Of Reorganization

13.    The confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases. The Global Settlement Agreement and the Master Restructuring Agreement (the "MRA") provide for a comprehensive settlement with GM, and both agreements were approved by this Court in the Confirmation Order. With the Plan confirmed, the Debtors are focusing their efforts on satisfying the conditions for the Plan to become effective and allow them to emerge from chapter 11. The Debtors anticipate having the Plan become effective as soon as reasonably practicable.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15.   By this Motion, the Debtors seek entry of an order under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004 authorizing, but not directing or requiring, the Debtors to extend the Indemnification Agreement for an additional time period of up to 15 days (i.e. up to April 15, 2008) beyond the scheduled expiration of the Indemnification Agreement if GM extends the UAW Benefit Guarantee by the same period of time.

## Basis For Relief

16.   On June 22, 2007, the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW"), Delphi, and GM entered into a memorandum of understanding (the "UAW-Delphi-GM Memorandum of Understanding"). Among other things, the UAW-Delphi-GM Memorandum of Understanding was designed to enable Delphi's continued transformation to more competitive wage and benefit levels and to address divestiture, work rules, and staffing level issues in its workforce. Pursuant to the UAW-Delphi-GM Memorandum of Understanding, the UAW, Delphi, and GM also agreed to the "Term Sheet— Delphi Pension Freeze and Cessation of OPEB, and GM Consensual Triggering of Benefit Guarantee," which facilitates the freezing of Delphi's pension plan and the assumption of billions of dollars of OPEB liabilities by GM, thereby dramatically reducing Delphi's ongoing benefit costs. The UAW-Delphi-GM Memorandum of Understanding was ratified by the UAW membership on June 28, 2007 and approved by this Court on July 19, 2007 (Docket No. 8693) and is Exhibit 7. 21(a) to the Plan as confirmed by the Confirmation Order.

17. Section F.2.a of the UAW-Delphi-GM Memorandum of Understanding extended the time period for certain of GM's obligations under the Benefit Guarantee Agreement between GM and the UAW, dated September 30, 1999 (the "UAW Benefit Guarantee"), to March 31, 2008 if Delphi commenced solicitation of acceptances of its chapter 11 plan of reorganization prior to December 31, 2007 but the plan had not been confirmed and substantially consummated by December 31, 2007. Under Section F.2.c of the UAW-Delphi-GM Memorandum of Understanding, in turn, Delphi and GM agreed that the eighth anniversary date reference in paragraph L of the Indemnification Agreement would be extended until March 31, 2008 if Delphi had commenced solicitation of acceptances of its chapter 11 plan of reorganization prior to December 31, 2007 but the plan had not been confirmed and substantially consummated by December 31, 2007. Finally, section F.2.a of the UAW-Delphi-GM Memorandum of Understanding also provided that the March 31, 2008 UAW Benefit Guarantee extension date would be extended to "such later date as Delphi and GM shall agree to extend the Indemnification Agreement expiration in Section F.2.c."

18. Under the provisions of the UAW-Delphi-GM Memorandum of Understanding approved by this Court on July 19, 2007, the Debtors believe that they already have authority to extend the Indemnification Agreement for additional time periods. Out of an abundance of caution, however, as a result of GM's unique role in these chapter 11 cases, the Debtors are seeking this Court's authorization, but not direction or requirement, to extend the Indemnification Agreement for an additional time period of up to 15 days (i.e. up to April 15, 2008) beyond the scheduled expiration of the Indemnification Agreement on March 31, 2008 if GM extends the UAW Benefit Guarantee for an equivalent number of days.

19. Extending the Indemnification Agreement would allow Delphi's indemnification obligations under that agreement to continue uninterrupted until Delphi has emerged from chapter 11 if Delphi consummates its Plan prior to the extended expiry date. If the Plan is not consummated, the extension will also provide additional time for the Debtors to consider whether additional extensions are appropriate or viable.

20. Extending the Indemnification Agreement would, in the exercise of their business judgment, be in the best interests of the Debtors' estates, their creditors, and other parties-in-interest, including the Debtors' employees. Accordingly, the relief sought herein should be granted.

## Applicable Authority

21. Section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); In re Delaware Hudson Ry. Co., 124 B.R. 169, 179 (Bankr. D. Del. 1991).

22. The Second Circuit has held that, although the Bankruptcy Court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," it must nevertheless resist becoming "arbiter of disputes between creditors

and the estate." In re Orion Pictures Corp., 4 F.3d 1095, 1098-99 (2d Cir. 1993).  The Court's consideration of a debtor's section 363(b) motion is a summary proceeding, intended merely as a means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate.  It is not the time or place for prolonged discovery or a lengthy trial with disputed issues." Orion Pictures, 4 F.3d at 1098-99.

23.     Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).  Thereafter, "[p]arties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity." Id.  To satisfy its burden, it is not enough for an objector simply to raise and argue an objection.  Rather, an objector "is required to produce some evidence respecting its objections." Lionel, 722 F.2d at 1071.

24.     As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" In re Aerovox, Inc., 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

25.     For the reasons stated above, the Debtors submit that extending the Indemnification Agreement, if GM extends the UAW Benefit Guarantee for at least an equivalent number of days, reflects a sound use of the Debtors' business judgment and will facilitate Delphi's emergence from chapter 11.

Notice Of Motion

26. Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered February 4, 2008 (Docket No. 12487). The Debtors have complied with the Supplemental Case Management Order with respect to the filing of this Motion and the need for expedited relief.[4] In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

27. Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order authorizing, but not directing or requiring, the Debtors to extend the Indemnification Agreement for an additional time period of up to 15 days (i.e. up to April 15, 2008) beyond the scheduled

---

[4] The Debtors have noticed this Motion for March 31, 2008. In compliance with the terms of the Supplemental Case Management Order, the Debtors have consulted with counsel to the Creditors' Committee regarding the relief sought in this Motion as well as the timing of its filing. The Debtors have been informed that the Creditors' Committee has consented to this Motion being heard on March 31, 2008. Because this Motion is being filed on fewer than 20 days' notice, parties-in-interest will have until March 27, 2008 to file an objection the relief requested herein.

expiration of the Indemnification Agreement if GM extends the UAW Benefit Guarantee by the same period of time.

Dated:   New York, New York
         March 21, 2008

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession