# Items Designated To Be Included In The Record On Appeal

## (Not Already Docketed)

# Item No. 1

FORM B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**Delphi Corp. et al** | Case Number<br>**05-44481** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor
**U.S. Equal Employment Opportunity Commission**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
**Margaret A. Malloy**
**Trial Attorney**
**U.S. Equal Employment Opportunity Commission**
**33 Whitehall St.**
**New York, NY 10004**
**212-336-3690**

COPY

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:
**NA**

Check here if this claim: ☐ replaces
☐ amends a previously filed claim, dated: _____

1. BASIS FOR CLAIM:
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other (Describe briefly): **Violation of Americans with Disabilities Act 42 U.S.C. § 12101 et seq.**
(date) _____ (date) _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☒ Wages, salaries, and compensations (fill out below)
Your SS#: _____
Unpaid compensation for services performed
from _____ to _____

2. DATE DEBT WAS INCURRED: **May 21, 2004**

3. IF COURT JUDGMENT, DATE OBTAINED:

4. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: **Unliquidated**
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

OCT 1 8 2007

CLAIMS PROCESSING CENTER
USBC, SDNY

5. SECURED CLAIM.
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other:

Value of Collateral:

Amount of arrearage and other charges at time case filed included in secured claim, if any:

6. UNSECURED PRIORITY CLAIM.
☒ Check this box if you have an unsecured priority claim
Amount entitled to priority $ **unliquidated**
Specify the priority of the claim:
☒ Wages, salaries, or commissions (up to $4,000)* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11U.S.C. § 507(a)(4).
☐ Up to $1800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
* Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

7. CREDITS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
8. SUPPORTING DOCUMENTS: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
9. DATE-STAMPED COPY: To receive an acknowledgment copy of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE FOR COURT USE ONLY

**RECEIVED**

**OCT 1 6 2007**

**KURTZMAN CARSON**

Date

**October 12, 2007**

Sign and print the name and title any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

**Margaret A. Malloy**
**Trial Attorney**

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Item No. 15

*In re Delphi Corporation, et al., Case No. 05-44481 (RDD)*

United States of America's Motion for Leave to File Late Claim
(Docket No. 12831)

Exhibit Index For February 29, 2008 Hearing

Malloy Declaration

1.    Declaration Of Margaret A. Malloy (Docket No. 12832)

Malloy Deposition

2.    Deposition of Margaret Malloy

Gershbein Declaration

3.    Declaration Of Evan Gershbein In Support Of Debtors' Objection To United
States Of America's Motion For Leave To File Late Claim (Docket No. 12907 -
Ex. A)

Unrue Declaration

4.    Declaration Of Dean Unrue In Support Of Debtors' Objection To United States Of
America's Motion For Leave To File Late Claim (Docket No. 12907 - Ex. B)

Gershbein/Unrue Deposition

5.    Deposition of Evan Gershbein/Dean Unrue

Bar Date Notice

6.    Affidavit of Service regarding Bar Date Notice (Docket No. 2934)

7.    Bar Date Notice and Order (Docket No. 3206)

Other

8.    Email dated, January 8, 2008 from Matthew L. Schwartz to Lisa Diaz regarding
expanding discovery*

* The Parties are in dispute with respect to use of this document

# EXHIBIT 1

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: MATTHEW L. SCHWARTZ
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel.: (212) 637-1945
Fax: (212) 637-2750

**HEARING DATE: February 29, 2008**
**TIME:  10:00 AM**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE:                                          Chapter 11

    DELPHI CORPORATION, *et al.*,        Case No. 05-44481 (RDD)

              Debtors.    (Jointly Administered)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DECLARATION OF MARGARET A. MALLOY

      Pursuant to 28 U.S.C. § 1746, Margaret A. Malloy declares as follows:

      1.    I am employed by the United States Equal Employment Opportunity

Commission (EEOC) as a trial attorney in the EEOC's New York District Office,

which is located at 33 Whitehall Street, New York, New York.  I make this

declaration in support of the Government's motion for leave to file a late claim, and

in opposition to debtors' various objections to the EEOC's claims.

      2.    The EEOC enforces the nation's anti-discrimination laws, including

the Age Discrimination in Employment Act of 1967 (ADEA), Titles I and V of the

Americans with Disabilities Act of 1990 (ADA), the Equal Pay Act of 1963 (EPA),

and Title VII of the Civil Rights Act of 1964 (Title VII).  Under EEOC regulations,

the EEOC's Office of General Counsel is responsible for the litigation of

enforcement actions, with the actual responsibility delegated in turn to the EEOC's various District Offices.

3.    I am the trial attorney assigned to represent the EEOC in *Equal Employment Opportunity Commission v. Delphi Corp.*, No. 07 Civ. 6470 (MAT), pending in the United States District Court for the Western District of New York. I base this declaration on my personal knowledge and on information contained in EEOC files.

4.    On or about August 28, 2006, the EEOC National Call Center was first contacted about a potential claim of discrimination at Delphi Corporation ("Delphi") by Stanley Straughter, a Delphi employee in Rochester, New York.

5.    Over the next several months, the EEOC worked with Straughter to prepare and finalize a formal charge of discrimination. On August 30, 2006, the EEOC sent Straughter a questionnaire to complete. (The covering letter is attached as **Exhibit A**). Straughter filled out the questionnaire on or about September 5, 2006. Among other things, Straughter's responses indicated that he had been fired by Delphi on August 17, 2006, "for not showing my medical history," and that he had already made Delphi aware of his complaint. (A copy of Straughter's questionnaire, with enclosures, is attached as **Exhibit B**).

6.    Straughter informed the EEOC that he had been employed as a laborer by Delphi since May 22, 2006. He called in sick to work on August 14 and 15, 2006, and returned to work on August 16, 2006, with a note from his doctor. Delphi informed Straughter that he needed to execute a medical release so that

2

Delphi could obtain more information about his medical condition from his personal physician. Straughter initially refused to sign, but was told that Delphi would not accept the excuse for his absence without the release. Straughter then signed the release, but modified it to permit Delphi only to verify that he was unable to work on August 14th and 15th, but not to discuss his actual medical condition. Delphi did not accept this modified release, and when Straughter explained that he believed Delphi's policy was unlawful, he was immediately fired for being an "unsatisfactory temporary employee."

7.     On the basis of Straughter's allegations, EEOC Investigator Jennifer Carlo drafted a Charge of Discrimination for Straughter's signature, which she sent to him on or about September 13, 2006. (A copy of Ms. Carlo's covering letter and the draft charge is attached as **Exhibit C**). Ms. Carlo and Straughter subsequently discussed the draft Charge of Discrimination, and on September 18, 2006, Ms. Carlo sent a revised Charge of Discrimination to Straughter for his signature. (A copy of Ms. Carlo's covering letter and the revised draft charge is attached as **Exhibit D**).

8.     On or about September 22, 2006, Straughter formally filed his Complaint of Discrimination with the EEOC; it was indexed as EEOC Charge No. 525-2006-01314. (Attached as **Exhibit E**).

9.     On October 2, 2006, the EEOC forwarded the Charge of Discrimination to Delphi for a response, giving the company until October 23, 2006, to provide a position statement. The EEOC also served Delphi with a Request for Information as part of its investigation. Among other things, the Request sought basic

3

statistical information about Delphi, a copy of the relevant union's collective

bargaining agreement with Delphi, and the identities of potential witnesses to

Delphi's unlawful activities, including any employees who had either (a) been

required to sign a medical authorization form, or (b) refused to sign one. Finally,

the EEOC indicated to Delphi that it was open to "consider[ing] a resolution by

mutually agreed to settlement." (A copy of the EEOC's October 2, 2006

communication, including the notice to Delphi about the Charge of Discrimination

and the Request for Information, is attached as **Exhibit F**).

10.     On October 17, 2006, Delphi (through its attorneys) requested an

extension of time in which to respond to the Charge of Discrimination. The EEOC

agreed to extend Delphi's response date until November 6, 2006. (A copy of a letter

from Delphi, confirming the parties' agreement, is attached as **Exhibit G**).

11.     On November 6, 2006, Delphi responded to the Charge of

Discrimination, essentially admitting the factual allegations of Straughter's

complaint, but contending that he could not demonstrate a prima facie case of

retaliation or violation of the ADA. Relying on EEOC guidance that an employer

"may ask an employee to justify his/her use of sick leave by providing a doctor's note

or other explanation, as long as it has a policy or practice of requiring all employees

. . . to do so," Delphi argued that it was permitted to require its employees to

execute a release so that the company could obtain medical records and speak with

personal physicians to question the validity of a doctor's note. Delphi did not,

however, respond to the EEOC's Request for Information. (A copy of Delphi's

4

response, with enclosures, is attached as **Exhibit H**).

12.     On December 11, 2006, the EEOC contacted Delphi to remind the
company that it had not fully responded to the Request for Information. The EEOC
gave Delphi until December 29, 2006, to provide a complete response. (A copy of the
EEOC's December 11, 2006 letter to Delphi is attached as **Exhibit I**).

13.     On January 31, 2007 — more than three months since the information
was first due, and more than a month after the last deadline — Delphi responded to
the EEOC's Request for Information. Among other things, Delphi indicated that it
was "unable to answer" the EEOC's request for documentation regarding employees
who had been required to sign a medical authorization pursuant to Delphi's
unlawful policy because "it does not keep a log of every employee asked to sign an
authorization." Delphi did provide, however, the identity of three other employees
who had, like Straughter, refused to sign an authorization. (A copy of Delphi's
response to the EEOC's Request for Information is attached as **Exhibit J**).

14.     After reviewing Delphi's submissions, the EEOC determined that it
needed further information to investigate the claim of discrimination. Therefore, on
or about February 26, 2007, the EEOC sent Delphi a second Request for
Information. Among other things, the second Request sought an explanation of why
Straughter's modified medical authorization was insufficient, given Delphi's
proffered justification for its policy, a copy of the policy, exemplars of medical
authorizations used by Delphi, and certain information pertaining to the other
employees who had refused to sign authorizations. Delphi was to respond by March

5

19, 2007. (A copy of the EEOC's second Request for Information is attached as

**Exhibit K**).

15.    On or about April 4, 2007, Delphi finally responded to the EEOC's

second Request for Information, providing some documentation and objecting to a

variety of the EEOC's requests as, variously, irrelevant or overly broad. (A copy of

Delphi's response is attached as **Exhibit L**).

16.    Throughout this give-and-take process with Delphi, the EEOC

simultaneously pursued other avenues of investigating the Charge of

Discrimination, including collecting further information from Straughter.

17.    On or about May 22, 2007, the EEOC issued its Letter of

Determination. In relevant part, the EEOC concluded:

> The investigation determined that [Delphi] subjected [Straughter]
> and a class of employees nationwide to an unlawful policy of
> making disability-related inquiries that are not job-related and
> consistent with business necessity, in violation of the ADA.
> [Straughter] offered to sign a revised release that would have
> allowed [Delphi] to speak with his doctor and verify the dates he
> was off work and that it was for a legitimate, medical reason. This
> should have satisfied [Delphi]'s need to verify the absence.
> [Straughter]'s refusal to sign the release as it was written and his
> objection that the medical inquiry was overly broad was protected
> activity as defined by the statute.    Consequently, [Delphi]'s
> discharge of [Straughter] for opposing the policy was unlawful
> retaliation.

The EEOC also informed Delphi that it would like to "eliminate the unlawful

practices through informal methods of conciliation" and invited Delphi to discuss

settlement of the Charge. (A copy of the EEOC's Determination is attached as

**Exhibit M**).

6

18.    The following day, May 23, 2007, the EEOC contacted Delphi to begin conciliation efforts and outlined a comprehensive remedy for Delphi's discriminatory practices, which included, among other things: (a) eliminating Delphi's unlawful sick leave policy, (b) providing anti-discrimination training to Delphi employees, (c) posting EEOC materials in conspicuous places throughout Delphi facilities, (d) developing a meaningful anti-discrimination complaint procedure, (e) reinstating Straughter, (f) paying monetary damages to Straughter to make him whole for Delphi's unlawful discrimination, as well as similar relief for any other individuals determined to have been harmed by Delphi's discriminatory practices, and (g) paying pain and suffering damages to Straughter. In addition, EEOC proposed that Delphi agree to permit the EEOC to monitor compliance with the terms of any conciliation agreement for not less than three years. Delphi was to respond to the EEOC's offer, as well as certain additional requests for information, by June 6, 2007. (A copy of the EEOC's offer of conciliation is attached as **Exhibit N**).

19.    On or about June 12, 2007, Delphi responded to the EEOC's offer of conciliation. Delphi flatly rejected the EEOC's offer, and indicated that it did "not intend to submit a counter-proposal." (A copy of Delphi's response is attached as **Exhibit O**).

20.    On June 19, 2007, the EEOC confirmed to Delphi that conciliation efforts had failed, and that the case was being forwarded to the legal unit of the EEOC's New York District Office for review to determine whether the EEOC would

7

file an enforcement action in United States District Court. On the same date, the
EEOC sent a similar notice to Straughter. (A copy of the EEOC's June 19, 2007
notices to Delphi and Straughter are, respectively, attached as **Exhibits P and Q**).

21.    The EEOC's Regional Attorney's Manual (available at
www.eeoc.gov/litigation/manual/index.html) outlines the steps that the EEOC must
take before filing a federal court action to remedy alleged violations of the ADA. In
cases (such as this one) that require approval from the Commissioners at EEOC
headquarters in Washington prior to filing suit, the legal unit must prepare a
"presentation memorandum" to the General Counsel containing its assessment of
the case. The presentation memorandum is extensive, requiring the legal unit not
only to describe the background and legal analysis involved in a case, including the
proof that it anticipates introducing, but also to prepare a breakdown of anticipated
litigation costs and to include a draft of the complaint to be filed. (A sample
presentation memorandum is contained in the Manual). The Commissioners must
then authorize the litigation before it can be filed.

22.    In this case, the pre-filing process unfolded very quickly. The EEOC
filed a complaint on behalf of a class of Delphi employees in the United States
District Court for the Western District of New York on or about September 28, 2007
(the "EEOC Complaint"), just over three months after conciliation efforts had failed.
The EEOC Complaint seeks, *inter alia*, injunctive relief, as well as monetary relief
to make the victims of Delphi's policy whole. The EEOC Complaint also seeks
punitive damages.    (A copy of the Complaint is attached as **Exhibit R**).

23. Because Delphi was at that time in bankruptcy, and because the enforcement action sought monetary damages, the EEOC also protected its interest by filing claims in this bankruptcy. On or about October 16, 2007, the EEOC filed two claims with the Debtors' claims agent (the "EEOC Claims"). Claim number 16727 asserts an unliquidated priority claim, corresponding to damages caused by Delphi's pre-petition conduct. (A copy is attached as **Exhibit S**). Claim number 16728 asserts an unliquidated priority administrative expense claim, corresponding to damages caused by Delphi's post-petition conduct. (A copy is attached as **Exhibit T**).

24. Meanwhile, Delphi answered the EEOC Complaint on or about November 30, 2007. The answer did not assert any bankruptcy-related defenses to the EEOC Complaint. (A copy of Delphi's answer is attached as **Exhibit U**).

25. Pursuant to a scheduling order entered by Magistrate Judge Payson, fact discovery in the *EEOC v. Delphi* enforcement action is presently expected to last until July 24, 2008, and expert discovery will last until August 29, 2008. Dispositive motions are due no later than October 24, 2008. No trial date has been scheduled, but the Court has scheduled an interim status conference for July 9, 2008. (A copy of the Scheduling Order is attached as **Exhibit V**).

26. Discovery, in other words, has just begun in the enforcement action: the parties only just made their initial disclosures on February 6, 2008. (The EEOC provided 215 pages of documentation; Delphi provided none). The parties anticipate that one of the main subjects of discovery will be trying to identify the

9

Delphi employees that were subject to and injured by its unlawful policy. Because
Delphi has not even identified the facilities at which the policy was or is in place,
identifying all putative class members is, at this point, impossible.

27.     The EEOC Claims in this bankruptcy are comprised of the monetary
component of damages requested in the EEOC Complaint. Because the class may
— depending on how discovery unfolds — include employees who worked at Delphi
prior to the petition date, the EEOC filed both a proof of claim (for the pre-petition
portion of its damages) and an administrative claim (for its post-petition damages).
Straughter, however, worked for Delphi exclusively after the petition date, and he
was terminated and brought Delphi's practices to the EEOC's attention after the
bar date. The EEOC then promptly investigated Delphi's unlawful practices and
filed the enforcement action — and the claims in the bankruptcy.

         I declare under penalty of perjury that the foregoing is true and
correct.

Dated:      New York, New York
            February 22, 2008

                                        /s/ Margaret A. Malloy
                                        MARGARET A. MALLOY

10

**A**





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

August 30, 2006

Mr. Stanley Straughter
935 Edge Creek Trail
Rochester, NY 14609

Dear Mr. Straughter:

This letter is in reference to the recent inquiry you made to the EEOC National Contact Center.

Please fill out the enclosed questionnaire and return it to the office in the enclosed envelope as soon as possible. The more completely and accurately you fill out this form, the faster and better we can access your complaint.

I urge you to fill out this form as soon as possible because a Charge of Employment Discrimination must be filed within the time limits imposed by law, 300 days from the date of the alleged violation. Completion of this form does not constitute a valid Charge of Employment Discrimination. Once we have received your form, I will contact you if we need more information to complete the charge filing process. (See charge processing information on the enclosed sheet).

If you have any questions or need assistance in filling out this form, please call (716) 551-4441.

Sincerely,

Jennifer A. Carlo
Investigator

Enclosures



# B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Elizabeth Cadle
Director

# NEW CHARGE QUESTIONNAIRE

### Americans with Disabilities Act (ADA)

•This form is affected by the Privacy Act of 1974; see Privacy Act statement on the last page before completing this form.

Your name: Stanky Straughter                    Date: 9/5/06
Address: 935 Edge Creek Trail
City: Rochester          State: NY Zip: 14609
Home phone (with area code): (585) 581-9146
Work phone (with area code): (585) 820-7620
County: MonRoE     Soc Sec No: _____

Name of employer or organization that discriminated against you:
Name: Delphi
Address: P.O. Box 92700

City: Rochester    State: NY Zip: 14692-8700
Phone (with area code)  (585) 647-7000

Name of the head of the organization:_____
Title of the head of the organization:_____

Your date of birth: 4/22/77 Age: 29 Sex: Male
Race: Black    National origin: USA Religion: ——

What type of business does the employer engage in? Manufacturing
Number of employees: 1 to 14__  15 to 100__  101 to 200__  201 to 500__  More than 500 ✓

Check the factor that you believe caused the harmful action against you:
( ) Race        ( ) Color        ( ) Religion        ( ) Sex
( ) National Origin  ( ) Age  (✓) Disability
( ) Retaliation for having complained about discrimination
(✓) Other (explain): Was fired for not showing my medical history.

Provide the name of an individual at a different address who we can contact if we are unable to reach you:
Name: Candice_____ Relationship: Wife_____
Phone: (585) 258-8014
Address: P.O. Box 19391

EEOC00004

*not sure*

d.) Does the Respondent have a light duty program?     ( ) Yes     ( ) No
e.) If yes, is this duty limited in any way (i.e. only to person who had on the job injuries, for a limited period of time, for certain categories of employees only)? _____

_____
_____
_____

3.)     Provide the names, addresses and phone numbers of any doctors and/or therapists who have treated you in the past year for this disability. For each, indicate the period of time you were treated by this person:

Dr. Bharat Gupta
Unity Internal Medicine at Cornerstone BLDG 800
2300 Buffalo Road \ Rochester, NY 14624 \ (585) 368-6370
[ 7/31/06 – 8/14/06 ]

## Part II
*Complete all questions which apply to your situation.*

1.     How have you been harmed? ⟶ I WAS Fired on 8/17/06
        ( ) Not hired (date:_____)     ( ) Not promoted (date: _____)
        ( ) Denied a reasonable accommodation:
          Date you requested an accommodation: _ _____ Date denied: _____
          To whom you made the request: _____
          Why and what type of a reasonable accommodation did you request: _____

          _____
          Name/position title of individual that denied your accommodation: _____

          _____
          Reason given by employer for denial of your accommodation: _____ _

          _____

2.     Job applied for_____ _____ _____
3.     How did you find out about the opening/vacancy for the position? _____

        _____ _ _____ ____
4.     When did you find out about the opening/vacancy?_____ ____
5.     How did you apply?   By mail____    In person____       By telephone____
6.     Date you applied: _____
7.     Did you fill out an application?_____
8.     Did you submit a resume?_____
9.     Did you ask to be considered for the job, but not submit anything in writing?_____
        If so, who did you ask?_____
10.    What are the qualifications for the job? Able to stand for long periods of time._____ _____ _____

5

19. Complete as many of the following questions as apply:
    Job title: _Labrer_____ Date hired: _5\22\06_
    Salary: _4.70hr_
    Name of immediate supervisor: _Tony  Ingwagiato_____
    Supervisor's Title: _Supervisor_____
    Unit, department or division: _Canisters, B·shift_
    Number of employees in department or division: _not sure_
    Number of employees with the same job title: _not sure_

20. Provide the following information for any witnesses who will provide evidence to support
    your allegations:

    Name:_____          Name:_____
    Home phone:(___)_____            Home phone:(___)_____
    Work phone:(___)_____            Work phone:(___)_____
    Address:_____            Address:_____

    Nature of the evidence they           Nature of the evidence they
    will provide: _____           will provide:_____

21. Describe how, when and which management officials became aware of your disability :
    Name: _Tracy Gilmore_____ ___ Job title: _Senior Labor Relations_ Date:_8\16\06_
                                                Rep.
    _I gave him a copy of Doctors note._____ _____

    Name: _____ Job title: _____ Date: _____

22. Have any of the managers or supervisors for the Respondent made negative comments
    concerning your disability? If so, provide the name and title of each person making the
    comments and describe the comments in terms of what was said, when it was said, and
    identify any witnesses to the comments by name and job title:

    _____
    _____
    _____
    _____
    _____

23. Have you sought assistance from any other government agency, union, attorney or other
    source?  (✓)Yes  ( ) No
    Name of source of assistance: _Labor Union_____
    Results, if any: _none_____  _____

24. Have you filed an EEOC charge in the past? ( )Yes  (✓) No

EEOC00006

September 5, 2006

To Whom it may Concern,

I was terminated on 8/17/06 for not waiving my medical rights. I had a doctor's note for
calling in sick on 8/14/06 and 8/15/06. The doctors note explained that I needed to rest
for 2 days and that I was seen in the doctor's office on 8/14/06. I was told that the note
needed to be verified. In order to do so I would need to sign a waiver allowing the
company to have access to my medical records for those 2 days.

I signed the waiver stating in writing that the company could verify my doctor's note and
verify my inability to work on the days in question with my physician; but not have my
actual medical condition released. I was fired immediately because I would not release
my personal medical information to the company, not because they couldn't verify my
doctor's note. This appears to fall under FMLA and Wrongful termination.

Included with this letter is a copy of the waiver that I signed and gave to the company, a
copy of the doctor's note I gave them and my discharge paper which was given to me
immediately, after I refused to give the company access to my medical information.

Sincerely,

Stanley N. Straughter

**RECEIVED**

**0 6 SEP 2006**

**E.E.O.C. BULO**

# DELPHI

Delphi Corporation
P.O. Box 92700
Rochester, New York 14692-8800
(585) 647-7000 Phone

## AUTHORIZATION FOR INFORMATION RELEASE

Date: 5/17/06          SSN: 1779          Date of Birth: 4/22/77

I, Stasky Steingeter _____ (Print Name), declare that I am the patient /
employee, and I authorize the release of following information:

| | |
|---|---|
| ☐ Lab Results: —— | ☐ History and Physical Exam |
| ☐ EKG/ Echo/Stress Test Results | ☐ Progress Notes Since: |
| ☐ X-Ray results | ☐ Work Restrictions |
| ☐ MRI / CT Results | ☑ Other: To verify Doctors note for 3/14/06 - 3/15/06 |
| ☐ NCS / EMG | ☑ Other: And verify patients inability to work on those days w/ releasing actual medical condition |

| | |
|---|---|
| ☐ From    ☑ To | ☑ From    ☐ To |
| ☑ Anthony S. Alaimo, M.D.<br>Plant Medical Director (585)647-7095 Phone<br>(585)647-7426 Fax | Name: Unity Internal Medicine |
| ☐ Linda L. Clark, M.D., M.S<br>Plant Physician.    (585)647-7095 Phone<br>or 7600 Phone | Address: 2300 Buffalo Rd. Bld - 3(?) |
| ☐ Labor Relations-Delphi Automotive<br>P.O. Box 92700    (585)647-7179 Fax<br>Rochester, New York 14692-8800 | City: Rochester State: NY Zip: 14624 |
| ☐ Tom Redmond    (585)647-7640 Phone<br>Sr. Labor Rep | |
| ☐ Tracy Gilmore    (585)647-7585 Phone<br>Sr. Labor Rep | Phone (585) 368-6370 Fax: _____ |
| ☐ Renee' Kunego    (585)647-7582 Phone<br>HR Specialist | |
| ☐ Carlton Smith    (585)647-7586 Phone<br>Supervisor, Employee Relations | |

The information is to assist the above employee in validating absences from work due to illness or injury.
☐ Other: _____

*I understand that my records are protected under the federal regulations governing confidentiality, and certain state regulations. My
records cannot be disclosed without my written consent unless otherwise provided for in the regulations. Further release of information is
prohibited. I may revoke this consent in writing at any time, except to the extent that it has already been acted upon.*
This consent shall remain in effect for one year, or until the following date:——
Otherwise, it can be revoked in writing.

_____          3/17/06
Signature of Patient / Employee                              Date

_____          _____
Witness Signature (For Psychiatric or Drug / Alcohol Records)          Date

Medical release for dr&lr.Delphi.doc

**UNITY INTERNAL MEDICINE AT CORNERSTONE**
**2300 BUFFALO RD**        **BLDG 800**
**ROCHESTER, NY 14624**
**(585) 368-6370**

**DATE:   08/14/06**

**PATIENT:   STRAUGHTER, STANLEY**

**-CHECK ALL THAT APPLY-**

[X] HE OR SHE WAS SEEN AT OUR OFFICE ON: 08/14/06        BY: GUPTA, MD BHARAT

[ ] IS RELEASED TO WORK/SCHOOL ON _____ WITHOUT ANY RESTRICTIONS

[ ] IS UNABLE TO RETURN TO WORK/SCHOOL DUE TO: _____

[ ] IS PREGNANT AND ESTIMATED DATE OF CONFINEMENT IS _____

[ ] IS IN GOOD HEALTH

[ ] IS SCHEDULED FOR SURGERY ON _____ AND PT MAY RETURN TO WORK/SCHOOL AFTER _____ WEEKS

[X] WILL BE OUT OF WORK/SCHOOL AS OF _____ AND WILL BE ABLE TO RETURN AS OF _5 / 16 / 06_

[ ] RESTRICTIONS - OTHER NOTES

_Patient is to rest for 2 days._

_____

_____

SIGNED: _Bharat B. Gupta_

**UNITY HEALTH SYSTEM - PARK RIDGE HOSPITAL**

**Printed by:   SMERRITT**

EEOC00009

# NOTICE OF DISCIPLINARY ACTION

**EMPLOYEE:** _Stanley Stronghil_ _____ **CLOCK #:** _____

**SOCIAL SECURITY #** ████████████  **SHIFT:** _2_

## THE FOLLOWING DISCIPLINARY ACTION

☐
**WRITTEN REPRIMAND**

☐
**SUSPENSION**

☐
**DISCIPLINARY LAYOFF**

☑
**DISCHARGE**

**IS ASSESSED AND ENTERED ON YOUR RECORD FOR THE REASON(S) NOTED BELOW:**
**VIOLATION/MISCONDUCT -**

**SPECIAL ATTENDANCE PROCEDURE? YES ☐ OR NO ☑**

**VIOLATION & SHOP RULE #** _____

**DETAILS OF VIOLATION/MISCONDUCT -**
Unsatisfactory Temporary Employee.

**ACTION** _Discharge_ **EFFECTIVE DATE:** _3/12/01_

**RETURN TO WORK DATE & TIME:** _N / A_

**BADGE SUSPENDED/TAKEN:YES ☐ NO☐** _____
**MANAGEMENT SIGNATURE - DATE - TIME**

**NOTICE TO EMPLOYEE:**  IN ACCORDANCE WITH PARAGRAPH 76 OF THE GM-UAW NATIONAL AGREEMENT, YOU
HAVE THE RIGHT TO UNION REPRESENTATION IN THIS MATTER UPON REQUEST.

## ACKNOWLEDGMENT OF RECEIPT OF NOTICE

**EMPLOYEE:** _____  **DATE:** _____ **TIME:** _____
**UNION REPRESENTATIVE:** _____  **DATE:** _____ **TIME:** _____

**LABOR RELATIONS - WHITE**      **EMPLOYEE  YELLOW**      **UNION REPRESENTATIVE - PINK**      **FILE COPY - GOLD**

° Code 94140410

**C**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

September 13, 2006

Mr. Stanley Straughter
935 Edge Creek Trail
Rochester, NY 14609

     Re:    Delphi Automotive

Dear Mr. Straughter:

Attached are five copies of a Charge of Discrimination which I drafted from the information you provided to our office.  Please:

1.    Review the charge forms and make any corrections.

2.    Sign the charge forms in front of a **Notary Public** in the blocks where I have made an X.

3.    Return the signed charge forms to this office in the enclosed postage-paid envelope.

I urge you to complete these three steps as soon as possible.  Please be aware, in order to have a valid Charge of Discrimination, you must return your signed and notarized Charge forms.  If we do not receive your signed, notarized Charge Forms within sixty (60) days, your inquiry will be deleted. Should you have any questions, please call me at (716) 551-4441.

            Sincerely,

            Jennifer A. Carlo
            Investigator

Enclosures:    Charge of Discrimination (5 copies)
               Return, postage-paid envelope

COPY

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 525-2006-01314 |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Stanley Straughter** | **(585) 581-9166** | **04-22-1977** |

| Street Address | City, State and ZIP Code |
|---|---|
| **935 Edge Creek Trail, Rochester, NY 14609** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **DELPHI CORP** | **500 or More** | **(585) 647-7000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O. Box 92700, Rochester, NY 14692** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☐ RETALIATION    ☐ AGE    ☐ DISABILITY    ☒ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-17-2006**    Latest **08-17-2006**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with the above named Respondent on May 22, 2006.

I had a medical procedure which required me to be off work on August 14, 2006 and August 15, 2006. Upon my return to work, I submitted a medical excuse from my doctor. The Respondent asked me to sign a full medical release. I questioned the release because I felt it exceed the permissible scope of medical inquiry for missing two days of work. Under information and belief, the Respondent has a policy of requiring full medical releases from employees when they are out sick. I signed the release, but limited it so that the Respondent could verify the days off and verify that it was due to a medical condition, but not to release my specific condition.

The Respondent then gave me a revised medical release, with language giving them full access to my medical information, but limited only to April 14, 2006 and April 15, 2006. I refused to sign the release and complained that I felt the inquiry was unlawful. I was immediately terminated on August 17, 2006, in retaliation for opposing an unlawful inquiry under the ADA.

I believe the Respondent has a policy and/or practice of making unlawful medical inquiries when employees are out sick, and I was terminated for opposing the unlawful medical inquiry, in violation of Title I of the Americans with Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | X |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Date _____    Charging Party Signature _____

EEOC00012

# D



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

September 18, 2006

Mr. Stanley Straughter
935 Edge Creek Trail
Rochester, NY 14609

      Re:    Delphi Automotive

Dear Mr. Straughter:

Attached are five new copies of a Charge of Discrimination with the corrections we discussed. Please:

1.    Review the charge forms and make any corrections.

2.    Sign the charge forms in front of a **Notary Public** in the blocks where I have made an X.

3.    Return the signed charge forms to this office in the enclosed postage-paid envelope.

I urge you to complete these three steps as soon as possible. Please be aware, in order to have a valid Charge of Discrimination, you must return your signed and notarized Charge forms. If we do not receive your signed, notarized Charge Forms within sixty (60) days, your inquiry will be deleted. Should you have any questions, please call me at (716) 551-4441.

                Sincerely,

                Jennifer A. Carlo
                Investigator

Enclosures:    Charge of Discrimination (5 copies)
              Return, postage-paid envelope



EEOC00013

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 525-2006-01314 |

| New York State Division Of Human Rights | and EEOC |
|---|---|

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Stanley Straughter | (585) 581-9166 | 04-22-1977 |

| Street Address | City, State and ZIP Code |
|---|---|
| 935 Edge Creek Trail, Rochester, NY 14609 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| DELPHI CORP | 500 or More | (585) 647-7000 |

| Street Address | City, State and ZIP Code |
|---|---|
| P.O. Box 92700, Rochester, NY 14692 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☒ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 08-17-2006 | 08-17-2006 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with the above named Respondent on May 22, 2006.

On August 14, 2006 and August 15, 2006, I was out of work per my doctor's instructions. Upon my return to work, I submitted a medical excuse from my doctor. The Respondent asked me to sign a full medical release. I questioned the release because I felt it exceed the permissible scope of medical inquiry for missing two days of work. Under information and belief, the Respondent has a policy of requiring full medical releases from employees when they are out sick. I signed the release, but limited it so that the Respondent could verify the days off and verify that it was due to a medical condition, but not to release my specific condition.

The Respondent then gave me a revised medical release, with language giving them full access to my medical information, but limited only to August 14, 2006 and August 15, 2006. I refused to sign the release and complained that I felt the inquiry was unlawful. I was immediately terminated on August 17, 2006, in retaliation for opposing an unlawful inquiry under the ADA.

I believe the Respondent has a policy and/or practice of making unlawful medical inquiries when employees are out sick, and I was terminated for opposing the unlawful medical inquiry, in violation of Title I of the Americans with Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| | X |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date            Charging Party Signature | |

**E**

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 525-2006-01314 |

| New York State Division Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Stanley Straughter | (585) 581-9166 | 04-22-1977 |

Street Address          City, State and ZIP Code

935 Edge Creek Trail, Rochester, NY 14609

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| DELPHI CORP | 500 or More | (585) 647-7000 |

Street Address

P.O. Box 92700, Rochester, NY 14692

RECEIVED
2 2 SEP 2006
E.E.O.C. BULO

| Name | Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address          City, State and ZIP Code

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☒ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 08-17-2006 | 08-17-2006 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)).*

I began employment with the above named Respondent on May 22, 2006.

On August 14, 2006 and August 15, 2006, I was out of work per my doctor's instructions. Upon my return to
work, I submitted a medical excuse from my doctor. The Respondent asked me to sign a full medical release. I
questioned the release because I felt it exceed the permissible scope of medical inquiry for missing two days of
work. Under information and belief, the Respondent has a policy of requiring full medical releases from
employees when they are out sick. I signed the release, but limited it so that the Respondent could verify the
days off and verify that it was due to a medical condition, but not to release my specific condition.

The Respondent then gave me a revised medical release, with language giving them full access to my medical
information, but limited only to August 14, 2006 and August 15, 2006. I refused to sign the release and
complained that I felt the inquiry was unlawful. I was immediately terminated on August 17, 2006, in retaliation
for opposing an unlawful inquiry under the ADA.

I believe the Respondent has a policy and/or practice of making unlawful medical inquiries when employees are
out sick, and I was terminated for opposing the unlawful medical inquiry, in violation of Title I of the Americans
with Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *[signature]* 9/20/06  Date   Charging Party Signature | X *[signature]* SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* September 20, 2006 *[signature]* Linda M Schnitt |

CP Enclosure with EEOC Form 5 (5/01)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (5/01).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please notify EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**F**

EEOC FORM 131 (5/01)

## U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| DELPHI CORP<br>P.O. Box 92700<br>Rochester, NY 14692 | **Stanley Straughter** |
| | THIS PERSON (check one or both)<br>[X] Claims To Be Aggrieved<br>[ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>**525-2006-01314** |

### NOTICE OF CHARGE OF DISCRIMINATION
(See the enclosed for additional information)

This is notice that a charge of employment discrimination has been filed against your organization under:

[ ] Title VII of the Civil Rights Act          [X] The Americans with Disabilities Act

[ ] The Age Discrimination in Employment Act          [ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by    **23-OCT-06**    a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [X] Please respond fully by    **23-OCT-06**    to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Jennifer Carlo,
Investigator
*EEOC Representative*

Telephone    **(716) 551-4441**

**Buffalo Local Office - 525**
**6 Fountain Plaza**
**Suite 350**
**Buffalo, NY 14202**

Enclosure(s):    [X] Copy of Charge

| CIRCUMSTANCES OF ALLEGED DISCRIMINATION | |
|---|---|
| [ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN  [ ] AGE  [ ] DISABILITY  [X] RETALIATION  [X] OTHER | |

**See enclosed copy of charge of discrimination.**

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| October  02, 2006 | Elizabeth Cadle,<br>Director | |

*Enclosure with EEOC*
*Form 131 (5/01)*

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14   Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge*, for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.

EEOC00022

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 525-2006-01314 |

| New York State Division Of Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Mr. Stanley Straughter | (585) 581-9166 | 04-22-1977 |

Street Address                    City, State and ZIP Code
935 Edge Creek Trail, Rochester, NY 14609

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| DELPHI CORP | 500 or More | (585) 647-7000 |

Street Address
P.O. Box 92700, Rochester, NY 14692

RECEIVED
2 2 SEP 2006
E.E.O.C. BUFO

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

Street Address

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN
☒ RETALIATION    ☐ AGE    ☐ DISABILITY    ☒ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|
| Earliest | Latest |
| 08-17-2006 | 08-17-2006 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began employment with the above named Respondent on May 22, 2006.

On August 14, 2006 and August 15, 2006, I was out of work per my doctor's instructions. Upon my return to work, I submitted a medical excuse from my doctor. The Respondent asked me to sign a full medical release. I questioned the release because I felt it exceed the permissible scope of medical inquiry for missing two days of work. Under information and belief, the Respondent has a policy of requiring full medical releases from employees when they are out sick. I signed the release, but limited it so that the Respondent could verify the days off and verify that it was due to a medical condition, but not to release my specific condition.

The Respondent then gave me a revised medical release, with language giving them full access to my medical information, but limited only to August 14, 2006 and August 15, 2006. I refused to sign the release and complained that I felt the inquiry was unlawful. I was immediately terminated on August 17, 2006, in retaliation for opposing an unlawful inquiry under the ADA.

I believe the Respondent has a policy and/or practice of making unlawful medical inquiries when employees are out sick, and I was terminated for opposing the unlawful medical inquiry, in violation of Title I of the Americans with Disabilities Act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 9/20/06 _____ Date    Charging Party Signature | X _____ SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 9/20/06 *(month, day, year)*    Linda M. Schmitt    LINDA M. SCHMITT Notary Public, State of New York Reg. No. 01SC6090208 Qualified in Monroe County Commission Exp. |

EEOC00025

CP Enclosure with EEOC Form 5 (5/01)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.    **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (5/01).

2.    **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

3.    **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.    **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.    **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

#### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

#### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC00026



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Jeff Patterson, Esq.
Delphi Automotive
5825 Delphi Drive
World Headquarters & Customer Center
Troy, MI 48098

### Date Information Due: October 23, 2006

Re:    EEOC Charge No.: 525-2006-01314
       Stanley Straughter v. Delphi Corp.

Dear Mr. Patterson:

Enclosed is a charge of employment discrimination which has been filed with this agency against
your organization.  It is our purpose to resolve this case either through a settlement which is
mutually agreeable to the parties or by rendering a determination on the merits.

In order to begin our investigation we will initially need your responses to the items listed below.
If you have any questions regarding these items please call me at 716-551-4441.  Please be
advised that we may seek additional evidence regarding the allegations in the charge, as well as
any evidence relating to other possible violations that may come to light during the course of our
investigation.

Should you wish to consider a resolution by mutually agreed to settlement, either now or in the
future, we would be happy to discuss it with you.  In the meantime please submit the following
by October 23, 2006, and number your responses to correspond to the items of this request.

1.    Provide the name, title, address and telephone number of the individual who will be
      responding to this and future inquiries.

2.    Indicate the number of employees presently employed by Respondent .  Provide the legal
      name of Respondent  and any parent organizations.  Also, indicate whether Respondent is
      a federal contractor regulated by the Office of Federal Contract Compliance Programs.

3.    Provide the reason(s) for taking the action(s) which the Charging Party has complained
      about, together with relevant records, documents and statements which substantiate these
      reason(s).

4.    Produce the personnel records, disciplinary records, promotional records, applicant
      records, interview assessment forms, medical records and evaluations for the Charging
      Party.

5. Provide the name, job title and contact information for any and all individuals who work or worked for Respondent who have information regarding Charging Party's employment and/or Charge.

6. Produce a copy of your organization's policy or practice with respect to requesting employees to sign medical releases, including a copy of any releases employees have been required to sign and under what circumstances employees are required to sign a medical release. Also identify the name and address of every facility that uses such releases.

7. Provide a copy of any and all medical releases the Charging Party was asked to sign, including any and all drafts.

8. Provide a copy of any union contract, if applicable, governing the Charging Party's terms and conditions of employment in effect at any time between 1/1/05 and the present.

9. Provide documentation which evidences or explains the following for any and all individuals asked to sign medical releases at any time between 1/1/05 and the present:

   a. Full name;
   b. Job title, department, unit and facility location;
   c. Most recent home address and telephone number;
   d. Copy of the release; and
   e. If no longer employed, give reason no longer employed and date last employed.

10. Provide documentation which evidences or explains the following for any and all individuals who refused to sign a medical release at any time between 1/1/05 and the present:

    a. Full name;
    b. Job title, department, unit and facility location;
    c. Most recent home address and telephone number;
    d. Copy of the release;
    e. Did the employee suffer any adverse consequence as a result of refusing to sign the release? If so, explain.
    f. If no longer employed, give reason no longer employed and date last employed.

11. Provide a position description for a Laborer position.

Whenever possible, responses should be provided in the form of documents which are kept by your organization in the normal course of business.

Sincerely,

Jennifer A. Carlo
Investigator

**G**

# DELPHI

October 17, 2006

**RECEIVED**

**2 0 OCT 2006**

**E.E.O.C. BULO**

**VIA FIRST CLASS MAIL**

Jennifer Carlo
Investigator
U.S. Equal Employment Opportunity Commission
Buffalo Local Office – 525
6 Fountain Plaza
Suite 350
Buffalo, NY 14202

     **Re:**   **Stanley Straughter v. Delphi Corp.**
             **EEOC Charge No. 525-2006-01314**

Dear Ms. Carlo:

     Per our phone conversation this afternoon, this letter shall serve to confirm the extension you have granted Delphi for filing its Position Statement in the above-cited matter. The Position Statement is now due November 6, 2006. Thank you for your cooperation in this matter.

     If you have any questions, please do not hesitate to contact me.

Very truly yours,

Charlotte Garry Carne
Attorney

EEOC00029

# H

11/16/2006  16:35    248-813-1466          LEGAL FILING AND ...           . ...  ... ..

# DELPHI

Date:     November 16, 2006

To:       **Jennifer Carlo**        **Fax:**     **716-551-4387**

From:     Jeff Peterson          Fax:         248-813-1466
                                 Phone:       248-813-1460

**Subject: Straughter v. Delphi (525-2006-01314)**

No. of pages including cover sheet: 9

Problems with the receipt of this transmission, contact Denise LaPlante at 248-813-1471

| ☐ Urgent | ☐ For Review | ☐ Please Reply |
|----------|--------------|----------------|

The information contained in this facsimile message is confidential information intended only for
the use of the individual or entity named above, and may be privileged. If the reader of this
message is not the intended recipient or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error, please
immediately notify us by telephone and delete the original message. Thank you.

Delphi Legal Staff  MC: 480-410-144  5825 Delphi Drive  Troy, MI 48098

EEOC00039

11/16/2006   16:35    248-813-1466                        ᴸᴸᴳᴬᴸ ᴾᴸᴳ ᴬᴿ ᴳ ᴳ ᴳ·ᴵ

# DELPHI

November 8, 2006

**Via Facsimile and U.S. Mail**

Jennifer Carlo
Investigator
U.S. Equal Employment Opportunity Commission
6 Fountain Plaza, Suite 350
Buffalo, NY 14202

> **Re:    Stanley Straughter v. Delphi Corp.**
> **EEOC Charge No. 525-2006-01314**

Dear Ms. Carlo:

This letter shall serve as the position statement for Delphi Corp. ("Delphi") in response to the Charge of Discrimination ("Charge") filed by Charging Party Stanley Straughter ("Charging Party").

Charging Party Straughter alleges that Delphi violated the Americans with Disabilities Act ("ADA") and engaged in retaliation when it discharged him after he refused to sign Delphi's standard Medical Release Authorization to verify two of the Charging Party's absences. As set forth more fully below, the Charging Party cannot establish a prima facie case of retaliation or violation of the ADA. Per the Equal Employment Opportunity Commission's guidance on the ADA, an employer is entitled to know why an employee is requesting sick leave, and may ask for a doctor's explanation, as long as it has a policy or practice of requiring the same for all employees.    See http://www.eeoc.gov/docs/guidance-inquiries.html.    As such, Delphi's request for the Charging Party to sign a written authorization was valid, and his refusal to do so, reasonable grounds for discharge. Thus, this Charge is without merit, and should be dismissed.

## FACTUAL BACKGROUND

The Delphi facility in Rochester, New York is primarily a manufacturing facility.  Charging Party Straughter was a temporary hourly employee at this facility for less than three months.  (See Exhibit A, Delphi Employee Personnel History for Straughter).

The Charging Party was absent from work on August 14, 2006 and August 15, 2006.    Upon his return to work, he submitted a doctor's note.  (See Exhibit B, Doctor's Note from Bharat B. Gupta, MD). Per Delphi's policy, all doctor's notes are verified in order to confirm that notes are authentic, and that the employee did, in fact, have a condition that rendered him or her unable to work on the date(s) in question.  (See Exhibit C, Memo from Tracy C. Gilmore to Larry Creswell).  Thus, on August 16, 2006, Tracy Gilmore, Senior Labor Relations Representative for the Rochester facility, presented the Charging Party with a copy of Delphi's standard Medical Release Authorization. (See Exhibit D, 8/16/06 Authorization for Information Release).  The Charging Party refused to sign the Authorization.  Gilmore asked a Union Committeeperson discuss the form with the Charging Party, and inform him of Delphi's policy of verifying doctor's notes.  Despite the counseling by the Union Committeeperson, the Charging Party still refused to sign the Authorization.  Instead, the

Delphi Legal Staff  MC: 480-410-144  5825 Delphi Drive  Troy, MI 48098    Tel: [1] 248.813.1460  Fax: [1] 248.813.1466  E-mail: jeffery.m.peterson@delphi.com

11/16/2006  16:35     248-613-1466

November 16, 2006
Page 2 of 3

Charging Party requested that he be given a day to review the Authorization. Gilmore granted this request. (See Exhibit C).

On August 17, 2006, Gilmore met with the Charging Party again. At that meeting, the Charging Party submitted his own authorization form. (See Exhibit E, 8/17/06 Authorization for Information Release submitted by the Charging Party). Gilmore informed the Charging Party that his authorization was not consistent with Delphi's authorization, and that his language would not allow the plant doctor to understand exactly *why* the employee was out of work. The Charging Party was given another opportunity to consent to Delphi's standard Authorization, but he still refused. (See Exhibit C).

Consequently, the Charging Party was separated from employment. Because the Charging Party was a temporary employee, Management did not have to show cause for termination under the collective bargaining agreement. Thus, he was simply separated. (See Exhibit C).

## LEGAL ANALYSIS

Charging Party alleges that Delphi violated the ADA and engaged in retaliation when it discharged him on August 17, 2006. As set forth more fully below, this allegation is without merit.

The EEOC's Enforcement Guidance on Disability-Related Inquiries and Medical Examinations contains the following question and answer:

> May an employer request an employee to provide a doctor's note *or other explanation* to substantiate his/her use of sick leave?
>
> Yes. *An employer is entitled to know why an employee is requesting sick leave.* An employer, therefore, may ask an employee to justify his/her use of sick leave by providing a doctor's note or other explanation, as long as it has a policy or practice of requiring all employees, with and without disabilities, to do so.

See http://www.eeoc.gov/docs/guidance-inquiries.html (emphasis added).

Applying this guidance to Delphi's policy of verifying doctor's notes, Delphi was well within the constraints of the ADA when it requested the Charging Party to sign its standard Authorization to verify his doctor's note. Delphi simply asked for "medical information regarding absence from work on 8/14 and 8/15 to verify note." (See Exhibit D). Thus, contrary to the Charging Party's accusations in his Charge, Delphi did not require the Charging Party to give a full medical release. Delphi was simply requesting information to verify the Charging Party's absence on two days — August 14, 2006 and August 15, 2006. Moreover, Delphi does not seek detailed information about the employee's condition — it simply requires enough information to verify that the employee was, in fact, absent for a reason that rendered him or her unable to work.

Because Delphi requires this of all employees, it was within the EEOC's guidelines regarding these types of inquiries. The Charging Party's own personal authorization, however, did not allow Delphi to verify the absences because he did not allow his physician to release *any* information about his medical condition on August 14, 2006 and August 15, 2006. (See Exhibit E). Thus, contrary to the EEOC's guidance, the Charging Party's authorization would not have allowed Delphi to determine

11/16/2006   16:35      248-813-1466                    LEGAL PERS AND LABOR                    PAGE   04/05

November 16, 2006
Page 3 of 3

*why* the Charging Party requested sick leave.   See http://www.eeoc.gov/docs/guidance-inquiries.html.

In short, the Charging Party was not discharged in retaliation, but for failure to comply with Delphi's standard policy regarding absences. This standard policy did not, in any way, violate the ADA. Most importantly, the Charging Party's refusal to comply with Delphi's policy was clearly a legitimate, non-retaliatory, non-discriminatory reason for termination. Therefore, this Charge must be dismissed.

## CONCLUSION

Delphi is unaware of any facts or circumstances that would give rise to a claim of retaliation or violation of the ADA in this matter. As such, a prompt dismissal of this Charge is warranted.

Should you have any questions, or require further information, please do not hesitate to contact me.

Very truly yours,

Jeffery M. Peterson
Attorney

Delphi
Users VELASK

Delphi Employee Personnel Area History Screen

Date: 11/02/2
Time: 14:50:4

PERSONNEL NUMBER : 07001832
PERSONNEL NAME   : 3953 Rochester

EMPLOYEE NAME        : STANLEY N STRASGATER
PHONE NUMBER         : (585) 581-5166
SOCIAL SECURITY #:   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

ADDRESS : 2129 LAKE AVE, APT D
ROCHESTER
NY 14610

| Pers Area | Code | Reason for Action Description | Action Eff. Date | Position | Dept | Occp | Basic Pay | Pay Lvl | Grp | Shift | Supervisor | Job Bank Code | Security Security Rule | Date Date Date | Job Bank Reason |
|-----------|------|-------------------------------|------------------|----------|------|------|-----------|---------|-----|-------|------------|---------------|------------------------|----------------|-----------------|
| 5953 | HD05 | Disch-Unrat Temp Employee | 08/17/2006 | 53016740 | 1037 | 02C | 14.00 | 02 | | 2 | 037D | | | 05/22/2 | |
| 5953 | RT18 | Local Stmnt of Policy 3 | 05/22/2006 | 53016740 | 1037 | 02C | 14.00 | 02 | | 2 | 037D | | | 05/22/2 | |
| 5953 | HR17 | Hourly Temp Hire | 05/22/2006 | 53016740 | 1037 | 02C | 14.00 | 02 | | 2 | 037D | | | 05/22/2 | |

Delphi
ECOM : SYVELOS

Confidential
Page No:

EEOC00043

7163596896 TO 912489131460   P.07/13

UNITY INTERNAL MEDICINE AT CORNERSTONE
2300 BUFFALO RD          BLDG 300
ROCHESTER, NY 14624
(585) 368-6370

DATE: 08/14/06

PATIENT:  STRAUGHTER, STANLEY

-CHECK ALL THAT APPLY-

[X] HE OR SHE WAS SEEN AT OUR OFFICE ON: 08/14/06         BY: GUPTA, MD BHARAT

[ ] IS RELEASED TO WORK/SCHOOL ON _____ WITHOUT ANY RESTRICTIONS

[ ] IS UNABLE TO RETURN TO WORK/SCHOOL DUE TO: _____

[ ] IS PREGNANT AND ESTIMATED DATE OF CONFINEMENT IS _____

[ ] IS IN GOOD HEALTH

[ ] IS SCHEDULED FOR SURGERY ON _____ AND PT MAY RETURN TO WORK/SCHOOL AFTER _____ WEEKS

[X] WILL BE OUT OF WORK/SCHOOL AS OF  8/14/06 AND WILL BE ABLE TO RETURN AS OF  8/16/06

[ ] RESTRICTIONS - OTHER NOTES

Patient is to rest for 2 days

SIGNED:  Bharat B Gupta

UNITY HEALTH SYSTEM - PARK RIDGE HOSPITAL

Printed by:  SMERRITT

EEOC00044

11/16/2006  16:32    248-813-1466                LEGAL PERS MID CALLR                      PAGE  03/05
         TUE 05:22AM 13:33 FR DELPHI PER 4TH FLOOR    7163596896 TO 912488131466          P.03/13

# DELPHI                                                    Energy systems

## memo

**Date:**  November 2, 2006

**To:**  Larry Cresswell

**From:**  Tracy C. Gilmore

**Subject:** Stanley Straughter

c:

I spoke to Mr. Straughter on 8/16/06 at approximately 5:00 pm. The grievant had been absent
from work August 14, and 15. I met with him to discuss that he had missed work on 7/28 and
now a couple of weeks later again he is absent. Stanley submitted the attached note as
containing the reason for his absence. I informed Stanly that our policy is to check all notes
out to assure that the reasons for absence are acceptable. I presented him with a copy of our
Medical Release form that we use when contacting Doctor's to determine if the Medical issue
justifies a day off of work. In this case it was two days. The employee looked at the form and
refused to sign it. I explained our policy; employees may refuse however our failure to be able
to investigate the reasons of absence will result in our not accepting the excuse at all. The
employee's Union Committeeperson was present and took him outside of the room for private
discussion to inform him of our ongoing practice here at this facility. The employee continued
to refuse even after the Union's attempt's to persuade him otherwise. The employee asked if
he could look at the form and respond to me the next day. I granted his request.

On 8/17/06 at approximately 3:30 pm I again met with the employee and the employee
presented me with a form that had been filled out be him. I looked at the form and informed
the employee that the language on his copy is not consistent with the verbiage that we use that
will allow our doctor to understand exactly why the employee was out of work. I told him that
what he had was unacceptable. The employee held fast to his position that he did not want
our MD to have access to his medical information. The employee was subsequently separated
as an unsatisfactory temporary employee.


Tracy C. Gilmore
Personnel
Sr. Labor Relations Representative


C:\Documents and Settings\vzbink\My Documents\straughter.doc

11/16/2006  16:35  298-813-1466
NOV 03 2000 15:35 FR DELPHI MEN 4TH FLOOR    7163596896 TO 912488131466    P.08/13

# DELPHI

Delphi Corporation
P.O. Box 92700
Rochester, New York 14692-8800
(585) 647-7000 Phone

## AUTHORIZATION FOR INFORMATION RELEASE

Date: 5/11/06        SSN: _____        Date of Birth: _____

I, Stanley Straughter _____ (Print Name), declare that I am the patient /
employee, and I authorize the release of following Information:

| | |
|---|---|
| ☐ Lab Results: | ☐ History and Physical Exam |
| ☐ EKG / Echo/ Stress Test Results | ☐ Progress Notes Since: _____ |
| ☐ X-Ray results | ☐ Work Restrictions |
| ☐ MRI / CT Results | ☐ Other: *Medical information regarding absence from* |
| ☐ NCS / EMG | ☐ Other: *work 5/11 15/06 to verify absence.* |

| ☐ From    ☑ To | ☐ From    ☐ To |
|---|---|
| ☑ Anthony S. Abiruo, M.D. | |
| Plant Medical Director (585)647-7095 Phone | Name: _____ |
| (585)647-7426 Fax | |
| ☐ Linda L. Clark, M.D., M.S | |
| Plant Physician.    (585)647-7095 Phone | Address: _____ |
| or 7600 Phone | |
| ☐ Labor Relations-Delphi Automotive | |
| P.O. Box 92700    (585)647-7179 Fax | City: _____  State: _____  Zip: _____ |
| Rochester, New York 14692-8800 | |
| ☐ Tom Redmond    (585)647-7640 Phone | |
| Sr. Labor Rep | Phone: _____  Fax: _____ |
| ☐ Tracy Gilmore    (585)647-7585 Phone | |
| Sr. Labor Rep | |
| ☐ Renee' Kunego    (585)647-7582 Phone | |
| HR Specialist | |
| ☐ Carlton Smith    (585)647-7586 Phone | |
| Supervisor, Employee Relations | |

The information is to assist the above employee in validating absences from work due to illness or injury.
☐ Other: _____

*I understand that my records are protected under the federal regulation governing confidentiality, and certain state regulations. My records cannot be disclosed without my written consent unless otherwise provided for in the regulations. Further release of information is prohibited. I may revoke this consent in writing at any time, except to the extent that it has already been acted upon.*
This consent shall remain in effect for one year, or until the following date: _____
Otherwise, it can be revoked in writing.

_____                          _____
Signature of Patient / Employee                          Date

_____                          _____
Witness Signature (For Psychiatric or Drug / Alcohol Records)                Date

Medical release for dr&lr.Delphi.doc

FEB 02 1996 21:56                                                          PAGE.07

EEOC00046

11/16/2006  15:35  245-813-1466  LEGAL MENS AND LABOR  PAGE  03/09
NOV 03 2006 15:54 FR DELPHI MEN 4TH FLOOR  Y165956896 TO 912400131466  P.06/13

# DELPHI

*Employee Examination*

Delphi Corporation
P.O. Box 92700
Rochester, New York 14692-8800
(585) 647-7000 Phone

## AUTHORIZATION FOR INFORMATION RELEASE

Date: 8/17/06     SSN: 1779     Date of Birth: 4/22/77

I, Stanley Strangulter (Print Name), declare that I am the patient / employee, and I authorize the release of following information:

| | |
|---|---|
| ☐ Lab Results: | ☐ History and Physical Exam |
| ☐ EKG / Echo / Stress Test Results | ☐ Progress Notes Since: |
| ☐ X-Ray results | ☐ Work Restrictions |
| ☐ MRI / CT Results | ☑ Other: To verify doctors note for 8/4/06 + 8/9/06 |
| ☐ NCS / EMG | ☑ Other: And verify patients inability to work on those days, and releasing actual medical condition |

| | |
|---|---|
| ☐ From  ☑ To | ☑ From  ☐ To |
| ☑ Anthony S. Alaimo, M.D.<br>Plant Medical Director (585)647-7095 Phone<br>(585)647-7426 Fax | Name: Unity Internal Medicine |
| ☐ Linda L. Clark, M.D., M.S<br>Plant Physician (585)647-7095 Phone<br>or 7600 Phone | Address: 2300 Buffalo Rd. BLD-800 |
| ☐ Labor Relations-Delphi Automotive<br>P.O. Box 92700 (585)647-7179 Fax<br>Rochester, New York 14692-8800 | City: Rochester  State: NY  Zip: 14624 |
| ☐ Tom Redmond (585)647-7640 Phone<br>Sr. Labor Rep | Phone (585) 368-6340 Fax: |
| ☐ Tracy Gilmore (585)647-7585 Phone<br>Sr. Labor Rep | |
| ☑ Renee' Kunego (585)647-7582 Phone<br>HR Specialist | |
| ☐ Carlton Smith (585)647-7586 Phone<br>Supervisor, Employee Relations | |

The information is to assist the above employee in validating absences from work due to illness or injury.
☐ Other: _____

*I understand that my records are protected under the federal regulations governing confidentiality, and certain state regulations. My records cannot be disclosed without my written consent unless otherwise provided for in the regulations. Further release of information is prohibited. I may revoke this consent in writing at any time, except to the extent that it has already been acted upon.*
This consent shall remain in effect for one year, or until the following date: _____
Otherwise, it can be revoked in writing.

_____     8/17/06
Signature of Patient / Employee              Date

_____     _____
Witness Signature (For Psychiatric or Drug / Alcohol Records)         Date

Medical release for dr&lr-Delphi.doc

FEB 03 1995 21:55                                          PAGE.05

EEOC00047

# I



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

December 11, 2006

Jeffery M. Peterson, Esq.
Delphi Legal Staff
MC: 480-410-144
5825 Delphi Drive
Troy, MI 48098

**Date Information Due: December 29, 2006**

Re:    EEOC Charge No.: 525-2006-01314
       Stanley Straughter v. Delphi Corp.

Dear Mr. Peterson:

The Commission is in receipt of the position statement you prepared for the Respondent,
however, you did not provide a complete response to Commission's specific request for
information, originally due October 23, 2006. A copy of that request is enclosed for your
convenience. The information you submitted did not respond to questions numbered 2, 4, 5, 6, 8,
9, 10 and 11. Please provide responses to those inquiries by **December 29, 2006.**

Your cooperation in this matter is appreciated. If you have any questions, please feel free to
contact me at (716) 551-4441.

Sincerely,

Jennifer A. Carlo
Investigator



**J**

# DELPHI

January 31, 2007

Jennifer Carlo
Investigator
U.S. Equal Employment Opportunity Commission
6 Fountain Plaza, Suite 350
Buffalo, NY 14202

RECEIVED

0 2 FEB 2007

E.E.O.C. BULO

> **Re:   Stanley Straughter v. Delphi Corp.**
> **EEOC Charge No. 525-2006-01314**

Dear Ms. Carlo:

I write in response to the EEOC's request for additional information regarding the referenced matter.

Before turning to your specific requests, I wanted to take the opportunity to reiterate the purpose to which Delphi intended to use the medical information it was requesting of Mr. Straughter. The purpose of the Authorization form was to submit *Delphi's doctor* to speak with Mr. Straughter's physician. The substance of the conversation would be the requirements of the job to which Mr. Straughter is assigned. It has been the Rochester plant's experience that personal physicians frequently indicate that an individual was "unable to work" simply because they do not have enough knowledge about the duties of the job in question. However, under the new HIPAA regulations, personal physicians are often unwilling to discuss such issues without an authorization. Thus, the requirement of signing the authorization form, which would permit the Delphi Medical Director to have a conversation with Mr. Straughter's physician about the specific requirements for the job, and whether Complainant's condition did, in fact, render him "unable to work." Importantly, *none of the information about the employee's condition is shared with any other Delphi manager* – it is strictly used for the "doctor-to-doctor" discussion described above.

Turning to your specific requests:

1.   Jeff Peterson; Attorney; 5825 Delphi Drive, Troy, MI  48098; 248-813-1460.

2.   Respondent employs approximately 170,000 individuals worldwide. Its legal name is Delphi Corporation, and it is a federal contractor regulated by the OFCCP.

3.   See position statement.

4.   Complainant's personnel file is enclosed.

5.   All individuals with involvement in the situations regarding Complainant's charge are identified in the position statement, and can be contacted through the undersigned.

EEOC00049

January 31, 2007
Page 2 of 2

6.    There is no written policy regarding the signing of releases. Employees are required to sign releases when Respondent has a reason for discussing the employee's absence with their personal physician that is job-related and consistent with business necessity. Respondent is unaware of other locations that use this particular authorization form.

7.    See enclosed.

8.    The union contract is irrelevant to the present charge. Moreover, Respondent believes it has previously produced the collective bargaining agreement between Respondent and the UAW to the EEOC's Buffalo office.

9.    Respondent cannot answer this question because it does not keep a log of every employee asked to sign an authorization.

10.    Individuals who have refused to sign authorization forms are listed below. Note that only Complainant had "temporary" status at the time. This meant that he, unlike the others, was not subject to the progressive discipline process.

| Name | Title | Address & Phone | Reason and date if no longer employed |
|---|---|---|---|
| Valerie Darrough Sharp | 01C | 15 Snug Harbot Cr., Rochester, 14612 / 585-581-1788 | Voluntarily accepted attrition program effective 11/30/06 |
| Kim Conley | 02C | 1125 Maple St, Rochester, 14611 / 585-436-0774 | Currently employed |
| Daniel Aponte | 14B2 | 14 Lynnwood Dr., Brockport, 14420 / 585-637-6477 | Currently employed |
| Stanley Straughter | 01C | | Released 8/18/06 |

11.    There is no position description.

Should you have any questions, or require further information, please do not hesitate to contact me.

Very truly yours,

Jeffery M. Peterson
Attorney

Enclosures

4/25/06 = 2:30

Gives, Fell.

# DELPHI

## AN EQUAL OPPORTUNITY EMPLOYER
## APPLICATION FOR EMPLOYMENT

**PRINT**
NAME IN FULL: STRAUGHTER (LAST)  STANLEY (FIRST)  N (MIDDLE)

SOCIAL SECURITY NO. 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

*OTHER NAME(S), IF ANY, UNDER WHICH YOU HAVE WORKED OR ATTENDED SCHOOL:

POSITION DESIRED:  FIRST CHOICE PRODUCTION  SECOND CHOICE ____
YEARS EXPERIENCE ____
YEARS EXPERIENCE ____

DATE AVAILABLE TO START WORK ASAP
SHIFT PREFERENCE, IF ANY AM, PM, NIGHT

EMPLOYMENT DESIRED: FULL TIME ____ PART-TIME ____ TEMPORARY ____ STUDENT ____
Salaried ____
Hourly ✓

DELPHI UNIT PREFERENCE(S), IF ANY

### PERSONAL DATA

**PRESENT ADDRESS** 2124 D. EAST AVE Rochester NY 14610
(STREET ADDRESS)        (CITY)         (STATE)  (ZIP CODE)
IF LESS THAN 7 CONSECUTIVE YEARS, LIST ALL PRIOR RESIDENCES WITHIN THE LAST 7 YEARS:

TELEPHONE NO. 581-9166
ALTERNATE TELEPHONE NO. ____

ADDRESS ____ (STREET ADDRESS) ____ (CITY) ____ (STATE) ____ (ZIP CODE)
TELEPHONE NO. ____

ADDRESS ____ (STREET ADDRESS) ____ (CITY) ____ (STATE) ____ (ZIP CODE)
TELEPHONE NO. ____

ADDRESS ____ (STREET ADDRESS) ____ (CITY) ____ (STATE) ____ (ZIP CODE)
TELEPHONE NO. ____

ARE YOU CURRENTLY AUTHORIZED TO WORK IN THE UNITED STATES? (YES) NO

HAVE YOU BEEN CONVICTED OF A FELONY IN THE LAST 7 YEARS (FIVE YEARS IF APPLYING FOR A JOB IN MASSACHUSETTS)? YES (NO)
IF SO, COMPLETE THE FOLLOWING:
DATE(S) ____ OFFENSE(S) ____ PLACE(S) ____ DESCRIPTION(S) ____

IF APPLYING FOR A DRIVING POSITION, PLEASE COMPLETE THE FOLLOWING INFORMATION:
DRIVER'S LICENSE NO. AND ISSUING STATE ____ EXPIRATION DATE ____

### U. S. MILITARY SERVICE

BRANCH OF SERVICE: ____ HIGHEST RANK OR RATING: ____
WERE YOU DISHONORABLY DISCHARGED FOR REASONS OTHER THAN SEXUAL ORIENTATION? (DISREGARD IF APPLYING FOR A JOB IN OHIO) YES NO IF YES, EXPLAIN.

### EDUCATION

| | NAME OF SCHOOL AND LOCATION | MAJOR FIELD OF STUDY | DEGREE AWARDED | | TYPE OF DEGREE(S) |
|---|---|---|---|---|---|
| | | | YES | NO | DIPLOMA GED |
| **INSTITUTION(S)** | NAME: Gates - CW Rochester NY | | | | IF USED WHERE? |
| **HIGH SCHOOL** | CITY AND STATE: | | | | |
| **COLLEGE** | NAME: Oneonta State (Suny Oneonta) Oneonta N | | (YES) | NO | Cum Grade BA, Music Indust |
| | CITY AND STATE: | | | | Point Average |
| | NAME: Nazone Community College, Roch NY | | (YES) | NO | Cum Grade Customers |
| | CITY AND STATE: | | | | Point Average 45 liberal Arts |

PROFESSIONAL LICENSE(S),  NAME(S):
CERTIFICATION(S), OR OTHER TRAINING  CITY AND STATE:

EEOC00051

# EXPERIENCE

HAVE YOU EVER BEEN EMPLOYED BY DELPHI?   YES   **(NO)**
PLEASE LIST ALL PREVIOUS EMPLOYMENT AND BEGIN BY LISTING YOUR LAST OR PRESENT EMPLOYMENT FIRST.

**1. EMPLOYMENT DATES: FROM** 4/05 (MO./YEAR) **TO** *Present* **POSITION** *House Keeper* **REASON FOR LEAVING** *Presently Active*

COMPANY NAME *M.S.† Full* **SUPERVISOR'S NAME**
COMPLETE COMPANY ADDRESS *Highland Dr* **CITY** *Rochester* **STATE** *NY* **ZIP CODE** *14610*
PHONE NUMBER *461-3300* STATE DUTIES CLEARLY AND BRIEFLY *General housekeeping* WAGE OR SALARY *space, restrooms, floors, etc*

**2. EMPLOYMENT DATES: FROM** 6/04 (MO./YEAR) **TO** 1/05 **POSITION** *Power Washer* **REASON FOR LEAVING**

COMPANY NAME *Advanced Facilities Services* **SUPERVISOR'S NAME**
COMPLETE COMPANY ADDRESS *30 Cedar Brk* **CITY** *Rochester* **STATE** *NY* **ZIP CODE** *14624*
PHONE NUMBER *654-1970* STATE DUTIES CLEARLY AND BRIEFLY *Power washing trailers, okay, lockup* WAGE OR SALARY
*I under bricks, + hookups, off. in truck + greenline* *Main office, retrieving gas*

**3. EMPLOYMENT DATES: FROM** 6/03 (MO./YEAR) **TO** *Present* **POSITION** *Owner/Operator 1106 Site* **REASON FOR LEAVING** *Presently Active*

COMPANY NAME *Sun Graphics + Design* **SUPERVISOR'S NAME** *STANLEY STRINKEHOR (OWNER)*
COMPLETE COMPANY ADDRESS *8570 Q Rd* **CITY** *Rochester* **STATE** *NY* **ZIP CODE** *14610*
PHONE NUMBER STATE DUTIES CLEARLY AND BRIEFLY *Design + Quality controls, sole proposals, producer + computer set up*
*databases for customers and quote contracts* *Design budgets in Excel, maintain accounting records*

**4. EMPLOYMENT DATES: FROM** 2/04 (MO./YEAR) **TO** 5/04 **POSITION** *Laundry Assistant* **REASON FOR LEAVING**

COMPANY NAME *The Friendly House* **SUPERVISOR'S NAME**
COMPLETE COMPANY ADDRESS *3156 East Ave* **CITY** *Rochester* **STATE** *NY* **ZIP CODE** *14618*
PHONE NUMBER *381-1600* STATE DUTIES CLEARLY AND BRIEFLY *Managed laundry area, prepare linen carts, general housekeeping*

ARE THERE ANY ADDITIONAL COMMENTS YOU WOULD CARE TO MAKE REGARDING YOUR EXPERIENCE OR SPECIAL SKILLS? *Qualifications: self starter,*
*Attentive to detail, Proven quality, Quick learner, Analytical + Problem Solving skills, time*
*Management, team player, extensive knowledge Microsoft office + technically savvy, written + verbal communication*
*skills*

IN APPLYING FOR EMPLOYMENT, I UNDERSTAND DELPHI RESERVES THE RIGHT TO CONTACT ALL PREVIOUS EMPLOYERS.

MAY WE ALSO CONTACT YOUR CURRENT EMPLOYER AT THIS TIME?   YES   NO
EXCEPT IF AN OFFER OF EMPLOYMENT IS MADE, DELPHI RESERVES THE RIGHT TO CONTACT MY CURRENT EMPLOYER.

I AUTHORIZE ALL CORPORATIONS, COMPANIES, FORMER EMPLOYERS, ASSOCIATES, CREDIT AGENCIES, EDUCATIONAL INSTITUTIONS, LAW ENFORCEMENT AGENCIES, CITY, COUNTY, STATE, AND FEDERAL GOVERNMENTS, OUR MILITARY SERVICES AND ALL PARTIES INVOLVED TO RELEASE INFORMATION THEY MAY HAVE ABOUT ME TO THE COMPANY, OR ITS AGENT, WITH WHICH THIS FORM HAS BEEN FILED. IN CONSIDERATION OF THE ACCEPTANCE OF THIS APPLICATION AND IN CONSIDERATION OF THE RELEASE OF INFORMATION, I RELEASE DELPHI AND ALL PARTIES INVOLVED FROM ANY CLAIMED LIABILITY ARISING OUT OF SUCH LAWFUL RESPONSE AND DISCLOSURE. THIS AUTHORIZATION, IN ORIGINAL OR COPY FORM, SHALL BE VALID FOR THIS AND ANY FUTURE REPORTS OR UPDATES THAT MAY BE REQUESTED.

I HEREBY REPRESENT THAT EACH ANSWER TO A QUESTION HEREIN AND ALL OTHER INFORMATION OTHERWISE FURNISHED IS TRUE AND CORRECT. I FURTHER REPRESENT THAT SUCH ANSWERS AND INFORMATION CONSTITUTE A FULL AND COMPLETE DISCLOSURE OF MY KNOWLEDGE WITH RESPECT TO THE QUESTION OR SUBJECT TO WHICH THE ANSWER OR INFORMATION RELATES. I UNDERSTAND THAT ANY INCORRECT, INCOMPLETE, OR FALSE STATEMENT OR INFORMATION FURNISHED BY ME MAY CAUSE THE RESCINDING OF ANY OFFER OF EMPLOYMENT OR, IN THE EVENT I HAVE BEEN EMPLOYED BY DELPHI, MAY SUBJECT ME TO DISCHARGE.

I UNDERSTAND THAT ANY POSITION OFFERED BY DELPHI WILL BE CONSIDERED AT-WILL, TERMINABLE BY DELPHI OR MYSELF FOR ANY REASON NOT PROHIBITED BY APPLICABLE LAW.

**APPLICANT'S SIGNATURE** _____   **DATE** 1/11/06

Application for Employment
00/0000

EEOC00052

UNITY INTERNAL MEDICINE AT CORNERSTONE
2300 BUFFALO RD          BLDG 800
ROCHESTER, NY 14624
(585) 368-6370

DATE:  08/14/06

PATIENT:  STRAUGHTER, STANLEY

-CHECK ALL THAT APPLY-

[X] HE OR SHE WAS SEEN AT OUR OFFICE ON: 08/14/06          BY: GUPTA, MD BHARAT

[ ] IS RELEASED TO WORK/SCHOOL ON _____ WITHOUT ANY RESTRICTIONS

[ ] IS UNABLE TO RETURN TO WORK/SCHOOL DUE TO: _____

[ ] IS PREGNANT AND ESTIMATED DATE OF CONFINEMENT IS _____

[ ] IS IN GOOD HEALTH

[ ] IS SCHEDULED FOR SURGERY ON _____ AND PT MAY RETURN TO WORK/SCHOOL AFTER _____ WEEKS

[X] WILL BE OUT OF WORK/SCHOOL AS OF __8/14/06__ AND WILL BE ABLE TO RETURN AS OF __8/16/06__

[ ] RESTRICTIONS - OTHER NOTES

_Patient is to rest for 2 days._

_____

_____

SIGNED:  _Bharat B Gupta_

UNITY HEALTH SYSTEM - PARK RIDGE HOSPITAL

Printed by:  SMERRITT

EEOC00053

**Evaluation**      2st Week ___  ✓ 3rd Week ___  ___ 45-Day ___  60-Day ___  75-Day ___  Other

## New Employee Evaluation

Name: _STANLEY STANGUTER_ SS# (last 4 digits): _1779_ Hire Date: _5/22/06_

Supervisor: _TONY INGUASTATO_ Date: _6/14/06_ Dept #: _1037_

**Purpose:** Assess the employee's job performance      Certification Date: _6/9/06_

**Instructions**

✓ The Supervisor of the employee must complete the evaluation and review with the employee.

✓ Return the original evaluation form to the Hourly Personnel Department.

**RATING KEY**

|   |   |   |   |
|---|---|---|---|
| 1. Above Average | 2. Satisfactory | 3. Needs Improvement | 4. Unsatisfactory |

NA = Not Applicable in this period      NOTE: If this rating is used explain why

For each skill, write in the appropriate rating.

| 1. Quality of Work | Skills | Rating | Comments: List the specific work assignment (s) or situation (s) used in arriving at the rating. |
|---|---|---|---|
| | 1.1 Consistently follows standardized work. | 2 | |
| | 1.2 Consistently does quality checks on each job. | 2 | |
| | 1.3 Understands visual aids and used them. | 2 | |
| | 1.4 Handles suspect parts according to procedure. | 2 | |
| | 1.5 Keeps work area neat and clean. Follows WPO. | 2 | |

| 2. Quantity of Work / Line Rate Initiative | Skills | Rating | Comments: List the specific work assignment (s) or situation (s) used in arriving at the rating. |
|---|---|---|---|
| | 2.1 Works to expected level, following Standardized Work | 2 | |
| | 2.2 Cycle time is at expected performance limits. | 2 | |
| | 2.3 Works well with the team | 2 | |
| | 2.4 Strictly adheres to policies, eg  Bell-to-bell. | 2 | |
| | 2.5 Certifications are up to date | 2 | |

| Communication / Health & Safety | Skills | Rating | Comments: List the specific work assignment (s) or situation (s) used in arriving at the rating |
|---|---|---|---|
| | 3.1 Listens, follows, understands oral & written communications. | 2 | |
| | 3.2 Asks relevant questions | 2 | |
| | 3.3 Adheres to H&S practices, eg.,safety glasses | 2 | |
| | 3.4 Uses materials, tools & machinery properly. | 2 | **RECEIVED** |
| | 3.5 Wears appropriate Personal Protective Equipment (PPE). | 2 | JUN 2 2 2006 |

PERSONNEL

- Continued on next page -

C:\DATA\FORMS\New Employee Evaluation Form 08-450 26.doc

EEOC00054

## Attendance

| Number of days absent | | Specify days absent : | | | |
|---|---|---|---|---|---|
| Number of days tardy | | Specify days tardy | | | |

Any day of absence must be reviewed by Labor Relations

## Summary

**Overall Summary Rating**

☑ *Check one for the overall rating*

☐ Exceptional Performance   ☐ Above Acceptable   ☑ Satisfactory   ☐ Needs Improvement   ☐ Unsatisfactory

Comments:_____

Employee's / Trainee's Comments:_____

Signatures _____     Date 6/16/06

Supervisor: _____    6/16/06

Employee _____    6/16/06

General Supervisor: _____    Supt: _____    clerk

_____ Evaluation satisfactory     _____ Further action required

Labor Relations

(Sign only after reviewed for completion and need for further action)

EEOC00055

**Evaluation** ___ 2ⁿ Week    ___ 3ʳᵈ Week    ✓ 45-Day ___ 60-Day ___ 75-Day ___ Other

### New Employee Evaluation

Name: _Stanley Stanguitte_    SS# (last 4 digits): _1779_ Hire Date: _5/22/06_

Supervisor: _Tony Guguage_    Date: _8/16/06_ Dept #: _11237_

**Purpose:** Assess the employee's job performance    Certification Date: _6/2/06_

**Instructions**

✓ The Supervisor of the employee must complete the evaluation and review with the employee.

✓ Return the original evaluation form to the Hourly Personnel Department.

**RATING KEY**

| 1. Above Average | 2. Satisfactory | 3. Needs Improvement | 4. Unsatisfactory |

NA = Not Applicable in this period.    NOTE: If this rating is used explain why

For each skill, write in the appropriate rating.

| | Skills | Rating | Comments: List the specific work assignment (s) or situation (s) used in arriving at the rating. |
|---|---|---|---|
| **1. Quality of Work** | 1.1 Consistently follows standardized work. | 2 | |
| | 1.2 Consistently does quality checks on each job. | 2 | |
| | 1.3 Understands visual aids and used them. | 2 | |
| | 1.4 Handles suspect parts according to procedure. | 2 | |
| | 1.5 Keeps work area neat and clean. Follows WPO. | 2 | |

| | Skills | Rating | Comments: List the specific work assignment (s) or situation (s) used in arriving at the rating. |
|---|---|---|---|
| **2. Quantity of Work / Line Rate Initiative** | 2.1 Works to expected level, following Standardized Work. | 2 | |
| | 2.2 Cycle time is at expected performance limits. | 2 | |
| | 2.3 Works well with the team. | 2 | |
| | 2.4 Strictly adheres to policies, eg Bell to bell. | 2 | |
| | 2.5 Certifications are up to date. | 2 | |

| | Skills | Rating | Comments: List the specific work assignment (s) or situation (s) used in arriving at the rating. |
|---|---|---|---|
| **Communication / Health & Safety** | 3.1 Listens, follows, understands oral & written communications. | 2 | |
| | 3.2 Asks relevant questions. | 2 | |
| | 3.3 Adheres to H&S practices, eg safety glasses. | 2 | |
| | 3.4 Uses materials, tools & machinery properly. | 2 | |
| | 3.5 Wears appropriate Personal Protective Equipment (PPE). | 2 | |

RECEIVED
AUG 1 8 2006
Personnel

- Continued on next page -

CADATA\FORMS\New Employee Evaluation Form

*Attendance*

| Number of days absent | 3 | Specific days absent 7/35/06, 8/14/06, 8/15/06 |
|---|---|---|
| Number of days tardy | 0 | specific days tardy |

Any day of absence **must** be reviewed by Labor Relations

## Summary

**Overall Summary Rating**

☑ *Check one for the overall rating*

☐ Exceptional Performance   ☐ Above Acceptable   ☐ Satisfactory   ☒ Needs Improvement   ☐ Unsatisfactory

Comments: _See Dr. Notes_

**Employee's / Trainee's Comments:**

|  | Signatures | Date |
|---|---|---|
| Supervisor: | | 8/16/06 |
| Employee: | | 8/16/06 |
| General Supervisor: | Supt. | 8/17/06 |

✓ Evaluation satisfactory    ___ Further action required

_____
Labor Relations

(Sign only after reviewed for completion and need for further action)

EEOC00057

HOURLY PERSONNEL

INTERVIEW RECORD - JOB ASSIGNMENT - SERVICE CARD

(PHOTO)

Soc Sec. No. [0] [5] [3] - [7] [2] - [1] [7] [7] [9]    Clock No. [2] [6] [2] [8] [3]

Name  Strangliter    Stanley    N.
        (Last)            (First)        (M.I.)

Sex: M    Ht: ____  Wt.: ____
Marit: ____
Hair: ____  Eyes: ____

Address  2129 East Ave. Apt D

EEO: ____    Handicap (if any): ____
Educ: BA    Branch of Service: ____
Spec: ____   Type of Discharge: ____
Date of Discharge: ____

City/St/Zip Rochester, NY 14610

Phone No. (585 )581-9166    DOB: 4/22/77    Citizen?: Yes    Date: ____

Place of Birth: Rochester, NY

In Case of Emergency Contact: Candice Strangliter    Phone: (585 )258-8014
                                                            581-9166

EMPLOYMENT PLACEMENT

Plant Sen. Date: 5/22/06    Int.: ____    Interviewed by: ____
GM Date: 5/22/06    Req.: ____    Write Up by: ____
Start Date: 5/22/06    Dept: ____    Shift: ____  Start Time: ____ .
Acc. No.: ____
Rate: ____    Supvr: ____

EEOC00058

# DELPHI CORPORATION
## INTELLECTUAL PROPERTY RIGHTS AGREEMENT

I enter this agreement in consideration of the compensation paid for services I perform for Delphi Corporation or a Delphi subsidiary, either as an employee or otherwise under contract. (Delphi Corporation and its subsidiaries are collectively referred to as "Delphi".)

I assign to Delphi Technologies, Inc. all rights to all patents, utility models, industrial designs, trademarks, service marks, semiconductor chip mask works and copyrights on all writings, designs, inventions and works that I conceive, make, invent or suggest during the term of such services and that are connected with my work or are otherwise related to the business of Delphi. (The business of Delphi includes the business that exists or is anticipated at the time the rights come into existence.)

I will promptly disclose such writings, designs, inventions and works to Delphi Technologies.

At Delphi Technologies' request, whether during or after the term of such services, I will sign patent applications and other lawful papers that Delphi Technologies considers helpful to secure and enforce such rights. Delphi Technologies will bear all expense related to such activities.

This agreement does not apply to an invention that I developed entirely on my own time without using Delphi's equipment, supplies, facilities, or trade secret information except for those inventions that either relate at the time of conception or reduction to practice of the invention directly to Delphi's business or to actual or demonstrably anticipated research or development of Delphi, or result from any work performed by me for Delphi. This agreement does not affect Delphi's ownership of rights in works made for hire.

I will protect Delphi business and technical information and other proprietary information created or obtained in the course of my services.

I will not disclose to Delphi, or use in performing services for Delphi, any of my prior inventions that Delphi is not entitled to use, or any proprietary information belonging to others (including my prior employers) unless I have their prior written approval. This paragraph does not apply to inventions that I was obligated to assign to General Motors Corporation prior to 1 January 1999, or to proprietary information belonging to General Motors Corporation prior to 1 January 1999.

I will return to Delphi, at the time my services for Delphi cease or upon any earlier request, all documents and other materials containing any Delphi business or technical information or other proprietary information created or obtained in the course of my services. I will not engage in any outside activity that would involve the use or disclosure of any Delphi business or technical information or other proprietary information created or obtained in the course of my services unless I have prior written approval from a Delphi officer. This obligation is not changed by termination of my services for Delphi.

This agreement replaces any prior agreement regarding this subject matter and is binding on my executors, administrators, heirs, legal representatives and assigns. This agreement may be modified only by another written agreement, or by a written endorsement on this agreement, signed by Delphi and me.

DATE: _____        EMPLOYEE: _____

DATE: _____        DELPHI REPRESENTATIVE: _____

As a probationary employee, I understand my continued employment with Delphi Automotive Systems Division of General Motors Corporation will be based upon my satisfactory performance in these job-related areas:

- Attendance
- Conduct
- Safety

- Quantity and Quality of Work
- Ability
- Observance of all established shop rules

## SAFETY EYEGLASS AGREEMENT

In consideration of my being supplied by Delphi Automotive Systems Division of General Motors Corporation with safety eyeglasses as required by my job, I hereby promise and agree that if for any reason I voluntarily leave my employment at Delphi Automotive Systems on or before the date that I would acquire seniority, I will return all safety eyeglasses, feather-weight and/or eyeglass side-shields to the Plant Security Office or to Hourly Personnel.

## UNION MEMBERSHIP

On November 11, 1970, a National Agreement was executed between General Motors Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, which became effective on November 23, 1970. It contains the following provision concerning membership in the Union by an employee covered by that Agreement.

"(4c)"     The union shall accept into membership each employee covered by this Agreement who tenders to the Union the periodic dues and initiation fee uniformly required as a condition of acquiring or maintaining membership in the Union.

Accordingly, as a condition of continued employment, you will be required to become a member of the Union and to maintain your membership in the Union. You will also be required to pay an initiation fee and the membership dues uniformly required as a condition of acquiring or maintaining membership in the Union.

If you are now a member of the Union and do not wish to become one within the period specified, you will subject yourself to discharge for failure to carry out this condition of employment.

It will be necessary for you to sign this notice in the place indicated below. By signing, you are acknowledging that you have read and understand its contents.

☑ I am presently a member of the UAW in good standing
  I am not presently a member of the UAW.
          (Check one)

It will be necessary for you to sign this notice in the place indicated below. By signing, you are acknowledging that you have read and understand its contents
This 23rd day of _MAY_____, ■ 2006

_____
(Signature of Employee)

EEOC00060

## BACKGROUND VERIFICATION DISCLOSURE

As part of the employment process, _____, ("The Company"), may obtain a
Consumer Report and/or an Investigative Consumer Report. The Fair Credit Reporting Act as amended by
the Consumer Reporting Reform Act of 1996 requires that we advise you that for purposes of employment
only, a Consumer Report may be made which may include information about your character, general
reputation, personal characteristics, or mode of living. Upon written request, additional information as to the
nature and scope of the report, if one is made, will be provided, in the event the Report contains information
regarding your character, general reputation, personal characteristics, or mode of living.

### AUTHORIZATION and RELEASE

During the application process and at any time during any subsequent employment, I hereby authorize
ChoicePoint Services Inc., on behalf of The Company to procure a Consumer Report which I understand may
include information regarding my character, general reputation, personal characteristics, or mode of living.
This report may be compiled with information from credit bureaus, courts record repositories, departments of
motor vehicles, past or present employers and educational institutions, governmental occupational licensing or
registration entities, business or personal references, and any other source required to verify information that I
have voluntarily supplied.   I understand that I may request a complete and accurate disclosure of the nature
and scope of the background verification, to the extent such investigation includes information bearing on my
character, general reputation, personal characteristics or mode of living.

_____            24/25/06
Applicant/Employee Name and Signature                    Date

OSo -72 -1779                                4|22
Social Security Number                           *Month and date of Birth only (omit year)
                                        (*Optional - for background verification purposes only)

TS246280   NY
Driver's License State and Number

Do you give the Company and/or ChoicePoint Inc. on behalf of the Company permission to contact
your current employer?     ☐ Yes  ☑ No
                  (please check one box)

Oklahoma State Residents please note: In connection with your application for employment, your consumer
report will be obtained and reviewed. Under Oklahoma law, you have the right to receive a free copy of your
consumer report directly from ChoicePoint Inc.

☐    YES, I am an Oklahoma state resident and would like a free copy of my consumer report.

Printed Name _____

Street Address_____

City, State, Zip _____

Employer please note: If Oklahoma resident checks "YES", and you do request a consumer report,
please fax this form to ChoicePoint Inc., 800-256-5876.

Account Number: _____219848_____

                                    Revised
                                    06-17-02

EEOC00061

(CORRECTED)

## DELPHI AUTOMOTIVE SYSTEMS
## GENERAL MOTORS CORPORATION

### TEMPORARY PASS

NAME Stanley Straughter

SOCIAL SECURITY NUMBER 050 - 72 - 1779

CLOCK

### ASSIGNMENT

THE ABOVE NAMED EMPLOYEE IS ASSIGNED TO :

DEPT 187 - Christ r S

SHIFT 1st 2nd

START TIME 2:44 pm 3:12 Pm

SUPERVISOR Tony Ingagiato

CLASSIFICATION 2e - Lt. Assembly

PERSONNEL DEPARTMENT

/5200D

EEOC00062

# DELPHI

*Employer Submission*

Delphi Corporation
P.O. Box 92700
Rochester, New York 14692-8800
(585) 647-7000 Phone

## AUTHORIZATION FOR INFORMATION RELEASE

Date: _5/17/06_    SSN: _1779_    Date of Birth: _4/22/77_

I, _Stanley Strawiter_ (Print Name), declare that I am the patient /
employee, and I authorize the release of following information:

| | |
|---|---|
| ☐ Lab Results: _____ | ☐ History and Physical Exam |
| ☐ EKG/ Echo/Stress Test Results | ☐ Progress Notes Since: _____ |
| ☐ X-Ray results | ☐ Work Restrictions |
| ☐ MRI / CT Results | ☑ Other: To notify Doctors note for 3/4/06 +3/6/06 |
| ☐ NCS / EMG | ☑ Other: And verify patients inability to work in those days and releasing actual medical condition |

| ☐ From        ☑ To | ☑ From        ☐ To |
|---|---|
| ☑ Anthony S. Alaimo, M.D. (585)647-7095 Phone | Name: _Uatti, Internal Medicine_ |
| Plant Medical Director     (585)647-7426 Fax | |
| ☐ Linda L. Clark, M.D., M.S | Address: _2300 Buffalo Rd. Bld = 800_ |
| Plant Physician     (585)647-7095 Phone or 7600 Phone | |
| ☐ Labor Relations-Delphi Automotive | City: _Rochester_ State: _NY_ Zip: _14624_ |
| P.O. Box 92700     (585)647-7179 Fax | |
| Rochester, New York 14692-8800 | Phone _(585) 368-6376_ Fax: _____ |
| ☐ Tom Redmond     (585)647-7640 Phone | |
| Sr. Labor Rep | |
| ☐ Tracy Gilmore     (585)647-7585 Phone | |
| Sr. Labor Rep | |
| ☑ Renee' Kunego     (585)647-7582 Phone | |
| HR Specialist | |
| ☐ Carlton Smith     (585)647-7586 Phone | |
| Supervisor, Employee Relations | |

The information is to assist the above employee in validating absences from work due to illness or injury.
☐ Other: _____

*I understand that my records are protected under the federal regulation governing confidentiality, and certain state regulations. My records cannot be disclosed without my written consent unless otherwise provided for in the regulation. Further release of information is prohibited. I may revoke this consent in writing at any time, except to the extent that it has already been acted upon.*
This consent shall remain in effect for one year, or until the following date _____
Otherwise, it can be revoked in writing.

_____     Signature of Patient / Employee          _3/17/06_     Date

_____     Witness Signature (For Psychiatric or Drug / Alcohol Records)          _____     Date

Medical release for dr&lr.Delphi.doc

# DELPHI



Delphi Corporation
P.O. Box 92700
Rochester, New York 14692-8800
(585) 647-7000 Phone

## AUTHORIZATION FOR INFORMATION RELEASE

Date: _5/11/08_       SSN: _____       Date of Birth: ___ . ___

I, _Stanley Straughter_ _____ (Print Name), declare that I am the patient /
employee, and I authorize the release of following information:

| | |
|---|---|
| ☐ Lab Results: ___ | ☐ History and Physical Exam |
| ☐ EK G/ Echo/Stress Test Results | ☐ Progress Notes Since: ___ |
| ☐ X-Ray results | ☐ Work Restrictions |
| ☐ MRI / CT Results | ☐ Other: _Medical information regarding absence from_ |
| ☐ NCS / EMG | ☐ Other: _work 5/11 x 15/08 to verify doctor_ |

| | | | | |
|---|---|---|---|---|
| ☐ From  ☑ To | | ☐ From  ☐ To | | |
| ☑ Anthony S. Alaimo, M.D. | | Name: _____ | | |
| Plant Medical Director (585)647-7095 Phone | | | | |
| (585)647-7426 Fax | | | | |
| ☐ Linda L. Clark, M.D., M.S | | Address: _____ | | |
| Plant Physician.   (585)647-7095 Phone | | | | |
| or 7600 Phone | | City: ___ State: ___ Zip: ___ | | |
| ☐ Labor Relations-Delphi Automotive | | | | |
| P.O. Box 92700   (585)647-7179 Fax | | | | |
| Rochester, New York 14692-8800 | | Phone: ___ Fax ___ | | |
| ☐ Tom Redmond   (585)647-7640 Phone | | | | |
| Sr. Labor Rep | | | | |
| ☐ Tracy Gilmore   (585)647-7585 Phone | | | | |
| Sr. Labor Rep | | | | |
| ☐ Renee' Kunego   (585)647-7582 Phone | | | | |
| HR Specialist | | | | |
| ☐ Carlton Smith   (585)647-7586 Phone | | | | |
| Supervisor, Employee Relations | | | | |

The information is to assist the above employee in validating absences from work due to illness or injury.
☐ Other: _____

_I understand that my records are protected under the federal regulations governing confidentiality, and certain state regulations. My
records cannot be disclosed without my written consent unless otherwise provided for in the regulations. Further release of information is
prohibited. I may revoke this consent in writing at any time, except to the extent that it has already been acted upon._
This consent shall remain in effect for one year, or until the following date: _____
Otherwise, it can be revoked in writing.

_____       _____
Signature of Patient / Employee         Date

_____       _____
Witness Signature (For Psychiatric or Drug / Alcohol Records)   Date

Medical release for dr&lr.Delphi.doc

**K**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

February 26, 2007

Jeffery M. Peterson, Esq.
Delphi Legal Staff
MC: 480-410-144
5825 Delphi Drive
Troy, MI 48098

**Date Information Due: March 19, 2007**

  Re:  EEOC Charge No.: 525-2006-01314
     Stanley Straughter v. Delphi Corp.

Dear Mr. Peterson:

The Commission is in receipt of the information you submitted dated January 31, 2007. The
EEOC requires additional information and clarification to ensure a complete investigation of the
charge of discrimination listed above.

The Commission seeks to obtain all relevant information, including that which may not support
Charging Party's allegations. Please respond to the following by **March 19, 2007**:

1.  In the first full paragraph on page 2 of the position statement dated November 6, 2006,
  you indicated:

> "On August 17, 2006, Gilmore met with the Charging Party again. At
> that meeting, the Charging Party submitted his own authorization
> form. (See Exhibit E, 8/17/06 Authorization for Information Release
> submitted by the Charging Party). Gilmore informed the Charging
> Party that his authorization was not consistent with Delphi's
> authorization, and that his language would not allow the plant doctor
> to understand exactly *why* the employee was out of work..."

  Please explain why the revised Authorization for Information Release submitted by the
  Charging Party was insufficient. In addition, please provide the precise information the
  Respondent was seeking and identify the reasons for seeking that information.

2.  Provide the address of each and every Delphi facility nationwide.

3.  Produce a copy of Delphi's policy or practice with respect to requesting employees to
  sign medical releases in connection with sick leave. If each facility has a different
  practice with respect to utilizing medical releases, describe the specific practice in place
  at each facility.

FILE COPY

EEOC00065

4.   Produce exemplars of each and every type or variation of medical authorization or releases utilized at any and all Delphi facilities nationwide. Clearly identify the name and address of the facility where each exemplar is used.

5.   Produce the personnel records, disciplinary records, attendance records, promotional records, applicant records, interview assessment forms, and medical records and evaluations, including file covers, for Valerie Darrough Sharp, Kim Conley and Daniel Aponte. Clearly identify any discipline or adverse consequence each individual received for refusing to sign authorization forms.

Your cooperation in this matter is appreciated. If you have any questions, please feel free to contact me at (716) 551-4442.

Sincerely,

Jennifer A. Carlo
Investigator

**FILE COPY**

**L**

04/04/2007  15:37    248-813-1466    LEGAL PERS AND LABOR    PAGE  01/03

# DELPHI

Date:     April 4, 2007

To:       Jennifer Carlo        Fax:      716-551-4387

From:     Jeff Peterson         Fax:      248-813-1466
                                Phone:    248-813-1460

Subject: Straughter v. Delphi (525-2006-01314)

No. of pages including cover sheet: 3

Problems with the receipt of this transmission, contact Denise LaPlante at 248-813-1471

| ☐ Urgent | ☐ For Review | ☐ Please Reply |

## RECEIVED
### 0 4 APR 2007
## E.E.O.C. BULO

Ms. Carlo,

I just received your voice mail message. Coincidentally, the attached
letter was mailed to you earlier today (along with requested employment
files). Please call with any questions.

The information contained in this facsimile message is confidential information intended only for
the use of the individual or entity named above, and may be privileged. If the reader of this
message is not the intended recipient or the employee or agent responsible to deliver it to the
intended recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this communication in error, please
immediately notify us by telephone and delete the original message. Thank you.

Delphi Legal Staff  MC: 480-410-144  5825 Delphi Drive  Troy, MI 48098

EEOC00073

# DELPHI

April 4, 2007

Jennifer Carlo
Investigator
U.S. Equal Employment Opportunity Commission
6 Fountain Plaza, Suite 350
Buffalo, NY 14202

**RECEIVED**

0 4. APR 2007

**E.E.O.C. BULO**

    **Re:**   **Stanley Straughter v. Delphi Corp.**
              **EEOC Charge No. 525-2006-01314**

Dear Ms. Carlo:

I write in response to your February 26, 2007 request for additional information regarding the referenced matter. I apologize for the delay in responding.

    1.    **Please explain why the revised Authorization for Information Release submitted by the Charging Party was insufficient. In addition, please provide the precise information the Respondent was seeking and identify the reasons for seeking that information.**

        The purpose of the Authorization form was to permit *Delphi's doctor* to speak with Mr. Straughter's physician. The substance of the conversation would have been the requirements of the job to which Mr. Straughter was assigned. Mr. Straughter had been absent for "illness" three times in three weeks – July 28, August 14, and August 15, 2006. Delphi had reason to inquire further whether Mr. Straughter was capable of performing the job, or whether there were any job-related reasons for his absences. It has been the Rochester plant's experience that personal physicians frequently indicate that an individual was "unable to work" simply because they do not have enough knowledge about the duties of the job in question. It often assists these physicians if they can discuss the job requirements with the Delphi doctor. However, under the new HIPAA regulations, personal physicians are often unwilling to discuss such issues without an authorization. Thus, the requirement of signing the authorization form, which would have permitted the Delphi Medical Director to have a conversation with Mr. Straughter's physician about the specific requirements for the job, and whether Complainant's condition did, in fact, render him "unable to work." Delphi views this purpose as completely – and strictly – job related and consistent with business necessity.

    2.    **Provide the address of each and every Delphi facility nationwide.**

        This request is overly broad. The undersigned is the designated contact for all charges of discrimination filed against Delphi Corporation in the United States.

EEOC00074

April 4, 2007
Page 2 of 2

3.     **Produce a copy of Delphi's policy or practice with respect to requesting employees to sign medical releases in connection with sick leave. If each facility has a different practice with respect to utilizing medical releases, describe the specific practice in place at each facility.**

There is no copy of a "policy or practice" to produce. In some situations, Delphi may ask employees to sign medical authorization forms for purposes that are job-related and consistent with business necessity. These purposes may include verification and authentication of absence documentation, and may include discussions with the employee's physician regarding any physical restrictions or capabilities of the employee to perform his or her job.

4.     **Produce exemplars of each and every type or variation of medical authorization or releases used at any and all Delphi facilities nationwide. Clearly identify the name and address of the facility where each exemplar is used.**

Delphi objects to this request as overly broad and unduly burdensome, and not relevant to the instant charge.

5.     **Produce the personnel records, disciplinary records, attendance records, promotional records, applicant records, interview assessment forms, and medical records and evaluations, including file covers, for Valerie Darrough Sharp, Kim Conley and Daniel Aponte. Clearly identify any discipline or adverse consequences each individual received for refusing to sign authorization forms.**

The personnel records of the named individuals are enclosed. In each case, the individuals were asked to sign authorization forms solely for the purpose of verifying the absence paperwork. In each case, they received written warnings. Note that Complainant in this case was a "temporary" employee, and under the collective bargaining agreement was subject to a different standard then these other "permanent" employees.

I have not enclosed the employees' medical files. In order to produce those documents, I would need a signed release from the employees. In addition, I would object on the basis of relevancy, since the medical records will not show anything related to the employees' refusal to sign authorization forms.

Should you have any questions, or require further information, please do not hesitate to contact me.

Very truly yours,

Jeffery M. Peterson
Attorney

Enclosures

# M



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Charge No: 525-2006-01314

Stanley Straughter
935 Edge Creek Trail
Rochester, New York 14609                    **Charging Party**

Delphi Corporation
5825 Delphi Drive
Troy, Michigan 48098                         **Respondent**

## DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the
following determination on the merits of this charge filed under Title I of the Americans with
Disabilities Act (ADA) of 1990. Timeliness, deferral and all other requirements for coverage
have been met.

Charging Party alleged that Respondent's policy of requiring employees who return to work after
a sick leave to sign a release of their medical information constitutes a medical inquiry
prohibited by the ADA. Charging Party further alleged he was terminated in retaliation for
opposing the unlawful medical inquiry policy.

Respondent denied the allegations and stated that the medical inquiries it made were permissible
under the ADA. Respondent indicated that as an employer, it is entitled to know why an
employee is requesting sick leave, and it may ask for a doctor's explanation, as long as it has a
policy or practice of requiring the same of all employees, with or without disabilities.
Respondent further indicated that its request for Charging Party to sign the written medical
authorization was valid, and his refusal to do so was reasonable grounds for discharge.
Respondent contends Charging Party's discharge was not retaliatory, rather it was due to the
Charging Party's failure to comply with its standard policy regarding absences. Respondent
indicated that it issued written warnings to at least three other individuals who refused to sign its
medical releases.

The investigation determined that Respondent subjected Charging Party and a class of employees
nationwide to an unlawful policy of making disability-related inquiries that are not job-related
and consistent with business necessity, in violation of the ADA. Charging Party offered to sign a
revised release that would have allowed Respondent to speak with his doctor and verify the dates
he was off work and that it was for a legitimate, medical reason. This should have satisfied

Page 2                                          Charge No.: 525-2006-01314

Respondent's need to verify the absence. Charging Party's refusal to sign the release as it was written and his objection that the medical inquiry was overly broad was protected activity as defined by the statute. Consequently, Respondent's discharge of Charging Party for opposing the policy was unlawful retaliation.

Upon finding that there is reason to believe that violations have occurred, the Commission attempts to eliminate the alleged unlawful practices through informal methods of conciliation. Therefore, the Commission now invites the parties to join with it in a collective effort toward a just resolution to this matter. The confidentiality provisions of Section 107 of the ADA and the Commission Regulations apply to information obtained during conciliation.

When the Respondent declines to discuss settlement or when, for any reason, a settlement acceptable to the office Director is not obtained, the Director will inform the parties and advise them of the court enforcement alternatives available to aggrieved persons and the Commission. A Commission representative will contact each party in the near future to begin conciliation.

On Behalf of the Commission:

MAY 2 2 2007
_____
Date

Elizabeth Cadle, Director
Buffalo Local Office

N



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Buffalo Status Line: (866) 408-8075
Buffalo Direct Dial: (716) 551-4442
TTY (716) 551-5923
FAX (716) 551-4387

May 23, 2007

Jeffery M. Peterson, Esq.
Delphi Automotive
Delphi Legal Staff
MC: 480-410-144
5825 Delphi Drive
Troy, MI 48098

        Re:    EEOC Charge No.: 525-2006-01314
               Stanley Straughter v. Delphi Corporation

Dear Mr. Peterson:

As stated the in the Letter of Determination for this charge, the U.S. Equal Employment
Opportunity Commission ("Commission" or "EEOC") is interested in starting conciliation
efforts. I would like to outline the remedies the Commission is seeking for the discriminatory
employment practices that have been found to have occurred in violation of Title I of the
Americans with Disabilities Act of 1990 (ADA):

1. Respondent will comply with the ADA;

2. Respondent will eliminate at all facilities nationwide its policy of requiring employees
   returning from sick leave to sign medical releases and will cease making any medical
   inquiries or requiring medical examinations prohibited by the ADA;

3. Within three (3) months from the date this Conciliation Agreement ("Agreement") is
   signed by the Commission, Respondent will provide no fewer than eight (8) hours of
   training in Federal laws prohibiting employment discrimination for all Respondent's
   current employees in all its facilities nationwide. The training will be conducted by an
   outside agency approved by the Commission. Respondent will maintain documentation,
   including a copy of the training materials presented and signed attendance lists to show it
   conducted the required training;

4. On an annual basis, Respondent will provide no fewer than eight (8) hours of training in
   Federal laws prohibiting employment discrimination for all employees of Respondent in
   all its facilities nationwide. Respondent will conduct this training for the duration of this
   Agreement and will maintain documentation, including a copy of the training materials
   presented and signed attendance lists to show it conducted the required training;



5.  For all new employees of Respondent in all its facilities nationwide, within thirty days of date of hire, Respondent will provide no fewer than eight (8) hours of training in Federal laws prohibiting employment discrimination. Respondent will conduct this training for the duration of this Agreement and will maintain documentation, including a copy of the training materials presented and signed attendance lists to show it conducted the required training;

6.  Within three (3) months from the date this Conciliation Agreement ("Agreement") is signed by the Commission, Respondent will provide no fewer than sixteen (16) hours of training in Federal laws prohibiting employment discrimination for all Respondent's current management/supervisory employees in all its facilities nationwide. The training will be conducted by an outside agency approved by the Commission. Respondent will maintain documentation, including a copy of the training materials presented and signed attendance lists to show it conducted the required training;

7.  On an annual basis, Respondent will provide no fewer than sixteen (16) hours of training in Federal laws prohibiting employment discrimination for all management/supervisory employees of Respondent in all its facilities nationwide. Respondent will conduct this training for the duration of this Agreement and will maintain documentation, including a copy of the training materials presented and signed attendance lists to show it conducted the required training;

8.  For all new management/supervisory employees of Respondent in all its facilities nationwide, within thirty days of date of hire, Respondent will provide no fewer than sixteen (16) hours of training in Federal laws prohibiting employment discrimination. Respondent will conduct this training for the duration of this Agreement and will maintain documentation, including a copy of the training materials presented and signed attendance lists to show it conducted the required training;

9.  Respondent will submit written documentation to the EEOC, including a copy of the training materials presented and a signed attendance lists, to show it has complied with paragraphs 3-8 of this Agreement. Respondent will submit the documentation to the EEOC within ten (10) days of compliance;

10. Respondent will post EEOC's poster in conspicuous places where employee notices are posted;

11. Respondent will post remedial notices in conspicuous places where employee notices are posted;

12. Respondent will develop and adopt effective antidiscrimination policies and complaint procedures for employees who believe that they have been discriminated against.

13. Prior to implementation, the Commission will review and approve the proposed policies and procedures. If such a procedure is already in place, Respondent will submit copies of these policies and procedures to the Commission and will permit the EEOC to review, and, if necessary, revise said policies and procedures. Respondent will distribute the Commission's approved policies and procedures within thirty (30) days of this Agreement being signed by the Commission;

14. Respondent agrees that the EEOC may monitor compliance with this Agreement for a period of not less than three (3) years from the date that the Agreement is signed by the Commission, by inspection of the Respondent's premises, records and interviews with employees at reasonable times. Respondent agrees to make available for inspection and copying any records reasonably related to any of these areas, upon notice by the Commission;

15. Respondent will immediately reinstate Charging Party to a Laborer position with permanent employment status and with restoration of all rights and privileges of employment lost as a result of the discrimination, including, but not limited to, restoration of seniority

16. Respondent will make Charging Party whole for all losses suffered as a result of the discrimination, including lost wages and fringe benefits plus interest. Charging Party was discharged on August 17, 2006. After his discharge from Delphi, Charging Party earned $7,044.15 in 2006 and approximately $1,600.00, to date, in 2007;

17. Respondent will compensate Charging Party for emotional harm and distress, pain, suffering, humiliation or embarrassment in the amount of $115,000.00;

18. Respondent agrees not to retaliate against Charging Party or any other person(s) because the individual(s) provided information or assistance, or participated in any other manner, investigation, or proceeding relating to this Agreement.

19. Respondent will provide make-whole relief for any and all other individuals determined to have been harmed by Respondent's discriminatory practices;

20. Respondent will create a $200,000.00 fund to provide for compensatory damages for any and all individuals who have been required to sign an unlawful medical release at any time from January 1, 2005, through the present;

Any conciliation agreement arrived at must be reduced to writing and signed by an authorized representative of the Respondent and, to be effective, must be signed by the Commission's Local Director.

If the Respondent is willing to enter into a conciliation agreement in accordance with the remedies outlined above, or if the Respondent is unwilling to conciliate the charge, please let me know by return letter by **June 6, 2007.**

In order to effect a successful and equitable conciliation in any future attempts to conciliate this charge, additional information is required by the Commission. Therefore, the following information is requested of Respondent at this time, to be provided to the undersigned by **June 6, 2007:**

a.      Pay rate schedules and methods of compensation for permanent/nonprobationary Laborer positions in effect at any time during the period from January 1, 2006, to the present, including initial rate ranges, schedules for and amounts of increases, and procedures and criteria for pay rate decisions.  Indicate the effective dates for each.

b.      A complete description of all fringe benefits and other non-wage compensation available for n permanent/nonprobationary Laborer positions in effect at any time during the period from January 1, 2006, to the present, including: health, life, disability and other insurance coverage & premium amounts, bonuses, vacation days, paid holidays, overtime-shift differentials, retirement plans and programs, room and board, etc.  Please indicate all eligibility criteria and the effective dates of each.  Provide the amount of employer contributions and, if any, the amount of employee contributions for the benefits, as applicable.

c.      Submit records showing the compensation and job history with the Respondent for n permanent/nonprobationary Laborer positions hired at any time during the period from January 1, 2006, to the present, including initial pay rates, dates, amounts and reasons for all pay rate changes, and all changes in job titles, and the dates and reasons therefore.  Submit also payroll records for each person.

d.      Please identify all rights and privileges of employment available to permanent/nonprobationary Laborer positions at any time during the period from January 1, 2006, to the present, including but not limited to seniority, and all purposes for which seniority has been recognized by the Respondent (for example, for layoff consideration, promotional opportunities, retirement, etc.); advancement opportunities, including normal lines of progression; etc., including effective dates.

I look forward to your timely response.  If you have any questions, please feel free to contact me at (716) 551-5282.

Sincerely,

Jennifer A. Carlo
Investigator



# DELPHI

June 12, 2007

Via Facsimile and U.S. Mail

Jennifer Carlo
Investigator
U.S. Equal Employment Opportunity Commission
6 Fountain Plaza, Suite 350
Buffalo, NY 14202

**RECEIVED**
**1 5 JUN 2007**
**E.E.O.C. BULO**

> **Re:    Stanley Straughter v. Delphi Corp.**
> **EEOC Charge No. 525-2006-01314**

Dear Ms. Carlo:

I write in response to the Commission's recent determination and request for conciliation, as well as the telephone message you left for me yesterday.

Respondent does not intend to submit a counter-proposal to the terms of the proposed consent decree. The findings and requested relief are patently excessive and not based on the facts. The determination makes several factual claims that are simply not true. Moreover, the determination appears clearly based on a misapplication of the law in the area of medical examinations and inquiries. (Just as one example, Respondent's actions appear to fall squarely within the type of approach validated by the court in *Transportation Workers Union v. New York City Transit Authority*, 341 F.Supp.2d 432 (S.D.N.Y. 2004) (attached), where the court found that requiring diagnosis information for purpose of addressing attendance problems and safety concerns is "job related and consistent with business necessity").

Moreover, the Commission's apparent view of this case as involving a policy or procedure that extends across Delphi is simply incorrect. There is no evidence to conclude that all Delphi facilities require diagnosis information; in fact, virtually all do not (indeed, diagnosis information is not required for every absence in Rochester).

Delphi might have been willing to enter into discussions about remedies for Mr. Straughter (although certainly not to the degree suggested in the proposed terms). Unfortunately, the Commission appears intent on reaching far beyond making Mr. Straughter whole. Accordingly, we can only conclude that the Commission does not have a genuine interest in reasonably attempting to conciliate this matter.

Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Jeffery M. Peterson
Attorney

Attachment

**P**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Jeffery M. Peterson, Esq.
Delphi Automotive
Delphi Legal Staff
MC: 480-410-144
5825 Delphi Drive
Troy, MI 48098

Re:    EEOC Charge No. 525-2006-01314
       Stanley Straughter v. Delphi Corporation

Dear Mr. Peterson:

The Commission has determined that efforts to conciliate this charge as required by Title I of the Americans with Disabilities Act of 1990, have been unsuccessful. This letter is the notice required by Sec. 1601.25 of the Commission's Regulations, which provides that the Commission shall notify a Respondent in writing when it determines that further conciliation efforts would be futile or non-productive. No further efforts to conciliate this case will be made.

The case is being forwarded to the legal unit in the New York District Office for review to determine whether the EEOC will bring suit in Federal District Court against the Respondent.

On Behalf of the Commission:

Date:    JUN 1 9 2007

Elizabeth Cadle, Director
Buffalo Local Office



**Q**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

6 Fountain Plaza, Suite 350
Buffalo, NY 14202
(716) 551-4441
TTY (716) 551-5923
FAX (716) 551-4387

Stanley Straughter
935 Edge Creek Trail
Rochester, NY 14609

      Re:    Charge No.: 525-2006-01314
              Respondent: Delphi Corporation

Dear Mr. Straughter:

Your case has been referred to the EEOC legal unit in the New York District Office for review to determine whether the EEOC will bring suit in Federal District Court against the above named Respondent. A decision should be forthcoming in the near future. If EEOC decides that it will not bring suit, you will be notified and advised of your private suit rights.

If EEOC decides to bring a civil action under Title I of the Americans with Disabilities Act of 1990, you have the right to seek to intervene in such an action.

                          Sincerely,

Date:   **JUN 1 9 2007**           Elizabeth Cadle, Director
                                  Buffalo Local Office



**R**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---------------------------------------------------X

EQUAL EMPLOYMENT OPPORTUNITY          :
COMMISSION,                            :
                                       :          CIVIL ACTION NO.
                Plaintiff,             :
                                       :
        -against-                      :
                                       :          COMPLAINT
DELPHI CORP.,                          :          JURY TRIAL DEMANDED
                                       :
                Defendant.             :

---------------------------------------------------X

### NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA")

and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices and to

provide relief to Stanley Straughter ("Charging Party") and to a class of similarly situated

individuals who have been adversely affected by such practices. As alleged with particularity

below, Defendant Delphi Corp. ("Defendant") violated the ADA by making disability-related

inquiries of employees, including Charging Party, for purposes inconsistent with those permitted

by the ADA, and by taking adverse employment action against Charging Party and a class of

similarly situated individuals in retaliation for and interfering with their exercise of their rights

protected by the ADA.

### JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), which incorporates by

reference §§ 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"),

42 U.S.C. §§ 2000e-5(f)(1) and (3).

1

2.    The unlawful employment practices alleged were committed within the jurisdiction of the United States District Court for the Western District of New York.

## PARTIES

3.    Plaintiff, Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.    At all relevant times, Defendant has continuously been a corporation doing business in the State of New York and has continuously employed at least fifteen employees.

5.    At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000-e(g) and (h).

6.    At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7.    More than thirty days prior to the institution of the lawsuit, Charging Party filed a charge with the EEOC alleging violations of Title I of the ADA by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

8.    Since at least 2004, Defendant has engaged in unlawful employment practices in violation of Sections 102 and 503 of the ADA, 42 U.S.C. §§ 12112(d)(4)(A) and 12203, as outlined below:

2

    a.     Charging Party was employed as a Laborer by Defendant from May 22 to August 17, 2006.

    b.     On August 14 and 15, 2006, Charging Party called in sick.

    c.     On August 16, 2006, Charging Party returned to work with a doctor's note verifying that he had been unable to work due to illness on the two days that he was out.

    d.     Defendant informed Charging Party that he was required to sign an authorization form to allow Defendant to obtain information from Charging Party's personal physician about his medical condition.

    e.     Charging Party refused to sign the form, stating that he believed the inquiry into his medical condition was unlawful.

    f.     Defendant informed Charging Party that it was Defendant's policy to check all doctors' notes to verify that the reasons for the absence are acceptable, and that although an employee could refuse to sign the release, the result would be that Defendant would not accept the excuse for the absence.

    g.     Charging Party asked to take a copy of the form and respond the next day. Defendant consented to this request.

    h.     Charging Party then modified the form to allow Defendant to verify with his doctor that he had been unable to work on the two days that he was out, but not to discuss his actual medical condition.

    i.     When Charging Party presented Defendant with the modified form the next day, he was told that it was unacceptable.

    j.     Charging Party again stated his belief that it was unlawful for Defendant to demand to know his medical information.

3

k.     Defendant immediately fired Charging Party for being "an unsatisfactory temporary employee."

9.     The ADA prohibits employers from making inquiries as to whether an employee is an individual with a disability unless the inquiry is shown to be job-related and consistent with business necessity.

10.    Defendant's requirement that employees returning from sick leave sign a release of their medical information is a disability-related inquiry that is not job-related or consistent with business necessity.

11.    Defendant's requirement that employees returning from sick leave sign a release of their medical information and its practice of disciplining, withholding pay from and/or taking any other adverse employment action against employees who fail to comply with this unlawful policy constitutes coercion, intimidation and/or interference with employees' exercise or enjoyment of their rights under the ADA.

12.    Defendant's practice of disciplining, withholding pay from and/or taking any other adverse employment action against employees who refuse to comply with the unlawful policy constitutes retaliation against such employees for engaging in activity protected by the ADA.

13.    The effect of the practices complained of above has been to deprive Charging Party and a class of other individuals of equal employment opportunities and otherwise adversely affect their status as employees.

14.    The effect of the practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon Charging Party and similarly situated individuals.

15.    The unlawful employment practices complained of above were intentional.

4

16.    The unlawful employment practices complained of above are continuing.

17.    The unlawful employment practices complained of above were done with malice and reckless disregard for the federally protected rights of Charging Party and similarly situated individuals, in violation of 42 U.S.C. § 12101, *et seq.*

### PRAYER FOR RELIEF

Wherefore, EEOC respectfully requests that this Court:

A.    Enjoin Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from making any disability-related inquiries that are not job-related and consistent with business necessity;

B.    Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices;

C.    Order Defendant to make whole all those individuals affected by the unlawful employment practices described above, by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary including re-instatement to eradicate the effects of Defendants' unlawful employment practices;

D.    Order Defendant to make whole all of those individuals adversely affected by the unlawful employment practices described above by providing compensation for nonpecuniary losses, including pain, suffering, and humiliation in amounts to be determined at trial;

E.    Order Defendant to pay all those individuals adversely affected by the unlawful employment practices described above punitive damages for Defendant's malicious and/or reckless conduct in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper.

5

H.    Award the EEOC its costs in this action.

### JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by this Complaint.

Dated: September 27, 2007

Ronald S. Cooper
General Counsel

James Lee
Deputy General Counsel

Gwendolyn Y. Reams
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
1801 L Street, N.W.
Washington, D.C.  20507

s/Elizabeth Grossman

Elizabeth Grossman
Regional Attorney

s/Judy Keenan

Judy Keenan
Supervisory Trial Attorney

s/Margaret A. Malloy

Margaret A. Malloy
Trial Attorney, U.S. EEOC
33 Whitehall Street, 5th Floor
New York, New York 10004
margaret.malloy@eeoc.gov
Phone 212-336-3690
Fax 212-336-3623

6

S

FORM B10 (Official Form 10) (4/98)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor<br>**Delphi Corp. et al** | Case Number<br>**05-44481** | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor<br>**U.S. Equal Employment Opportunity Commission**<br><br>Name and address where notices should be sent:<br>**Margaret A. Malloy**<br>**Trial Attorney**<br>**U.S. Equal Employment Opportunity Commission**<br>**33 Whitehall St.**<br>**New York, NY 10004**<br>**212-336-3690** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☒ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | COPY<br><br>THIS SPACE IS FOR COURT USE ONLY |

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:<br>**NA** | Check here if this claim: ☐ replaces<br>☐ amends a previously filed claim, dated: _____ |
|---|---|

**1. BASIS FOR CLAIM:**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other (Describe briefly) **Violation of Americans with Disabilities Act 42 U.S.C. § 12101 et seq.**
  (date) _____ (date) _____

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☒ Wages, salaries, and compensation (fill out below)
  Your SS#: _____
  Unpaid compensation for services performed
  from _____ to _____

**2. DATE DEBT WAS INCURRED: May 21, 2004**

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED: Unliquidated**
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. SECURED CLAIM.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
- ☐ Real Estate  ☐ Motor Vehicle
- ☐ Other:

Value of Collateral: _____

Amount of arrearage and other charges at time case filed included in secured claim, if any:

**6. UNSECURED PRIORITY CLAIM.**
☒ Check this box if you have an unsecured priority claim
Amount entitled to priority $ unliquidated
Specify the priority of the claim:
- ☒ Wages, salaries, or commissions (up to $4,000)* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $1800* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
  *Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

*RECEIVED OCT 18 2007 CLAIMS PROCESSING CENTER USGC, SDNY*

**7. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
**8. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.
**9. DATE-STAMPED COPY:** To receive an acknowledgment copy of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date<br><br>**October 12, 2007** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>_(signature)_ **Margaret A. Malloy**<br>**Trial Attorney** | THIS SPACE FOR COURT USE ONLY<br><br>**RECEIVED**<br>**OCT 16 2007**<br>**KURTZMAN CARSON** |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**T**

| **United States Bankruptcy Court** | **Administrative Expense Claim Request** |
|---|---|
| Southern District of New York | |
| Delphi Corporation et al. Claims Processing | |
| c/o Kurtzman Carson Consultants LLC, 2335 Alaska Avenue | |
| El Segundo, California 90245 | |

| Debtor against which claim is asserted : | Case Name and Number |
|---|---|
| Delphi Corporation, *et al.* 05-444481 | In re Delphi Corporation, *et al.* 05-44481 |
| | Chapter 11, Jointly Administered |

**NOTE: This form should not be used to make a claim in connection with a request for payment for goods or services provided to the Debtors prior to the commencement of the case. This Administrative Expense Claim Request form is to be used solely in connection with a request for payment of an administrative expense arising after commencement of the case pursuant to 11 U.S.C. § 503.**

| Name of Creditor | |
|---|---|
| *(The person or other entity to whom the debtor owes money or property)* | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| **U.S. Equal Employment Opportunity Commission** | ☒ Check box if you have never received any notices from the bankruptcy court in this case. |
| Name and Address Where Notices Should be Sent | ☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| **Margaret A. Malloy** | |
| **U.S. Equal Employment Opportunity Commission** | |
| **33 Whitehall St.** | |
| Telephone No.  **New York, NY 10004** | **THIS SPACE IS FOR COURT USE ONLY** |
| **212-336-3690** | |

| ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR: **N/A** | Check box if this claim  ☐ replaces  ☐ amends  a previously filed claim, dated: _____ |
|---|---|

**1. BASIS FOR CLAIM**

| | | |
|---|---|---|
| ☐ Goods sold | ☐ | Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☒ | Wages, salaries, and compensation (Fill out below) |
| ☐ Money loaned | | Your social security number _____ |
| ☐ Personal injury/wrongful death | | Unpaid compensation for services performed |
| ☐ Taxes | | from _____ to _____ |
| ☒ Other (Describe briefly) | | (date)              (date) |
| Violation of Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* | | |

| 2. DATE DEBT WAS INCURRED  **August 16, 2006** | 3. IF COURT JUDGMENT, DATE OBTAINED: |
|---|---|

**4. TOTAL AMOUNT OF ADMINISTRATIVE CLAIM: $ ___Unliquidated___**

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**5. Brief Description of Claim (attach any additional information):**
EEOC has filed a case in U.S. District Court, WDNY, No. 07-cv-6470, charging Delphi with violating the Americans with Disabilities Act by making prohibited medical inquiries of employees and retaliating against those who object. EEOC seeks monetary and injunctive relief on behalf of a class of employees harmed by the unlawful conduct. This claim covers claims arising after the petition was filed. EEOC is filing a separate proof of claim on behalf of employees harmed prepetition. A copy of the Complaint is attached.

| 6. CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor. | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|
| 7. SUPPORTING DOCUMENTS: *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Any attachment must be 8-1/2" by 11". | |
| 8. DATE-STAMPED COPY: To receive an acknowledgement of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) | |
|---|---|---|
| **October 12, 2007** | *[signature]* | **Margaret A. Malloy** **Trial Attorney** |

U

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                    Plaintiff,                    **ANSWER**

            v.

                                                  Civil Action No.
DELPHI CORP.,                                     07-CV-6470 (T)

                    Defendant.

        Defendant Delphi Corporation ("Delphi" or "the Company"), for its Answer to

the Complaint in this action, states and alleges as follows:

        1.      Denies the allegations contained in the unnumbered introductory

paragraph entitled "NATURE OF THE ACTION" as well as the allegations contained in

paragraphs 10, 11, 12, 13, 14, 15, 16, and 17 of the Complaint.

        2.      Admits the allegations contained in paragraphs 4, 5 and 6 of the

Complaint.

        3.      Regarding the allegations contained in paragraph 1 of the Complaint, does

not dispute that this Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§1331, 1337 and 1345, but denies the remaining allegations of that paragraph.

        4.      Regarding the allegations contained in paragraph 2 of the Complaint,

admits that the conduct alleged in paragraph 8 of the Complaint allegedly occurred at a

Delphi facility within the geographic jurisdiction of the United States District Court for

the Western District of New York, but denies the remaining allegations of that paragraph.

        5.      Regarding the allegations contained in paragraph 3 of the Complaint,

admits that the Equal Employment Opportunity Commission ("EEOC" or the

"Commission") is an agency of the United States of America created by 42 U.S.C. §2000e-4 and that the EEOC is charged by statute with various duties and responsibilities, but denies the remaining allegations of that paragraph.

6.   Regarding the allegations in paragraph 7 of the Complaint, admits that Charging Party Stanley Straughter filed a charge of discrimination with the EEOC more than 30 days prior to the commencement of this action, but denies the remaining allegations of that paragraph.

7.   Regarding the allegations in paragraph 8 of the Complaint, admits that it hired Charging Party effective May 22, 2006 and discharged him effective August 17, 2006, that Charging Party failed to report for work on July 28, 2006, August 14, 2006 and August 15, 2006, that Charging Party asked Delphi to excuse him from work on these dates claiming that he was ill, and that Charging Party refused to execute a Medical Release Authorization that would have allowed Delphi's Plant Medical Director to verify his illness or illnesses and evaluate whether his alleged illness or illnesses justified or excused his failure to report for work, but denies the remaining allegations of that paragraph.

8.   Denies the allegations in paragraph 9 of the Complaint, and relies on the express language of the Americans With Disabilities Act, 42 U.S.C. §12111 *et seq.*, for a complete and accurate description of its terms and prohibitions.

### FIRST AFFIRMATIVE DEFENSE

9.   The Company's request for medical information was prompted by Charging Party's requests that he be excused from work on several days that he failed to report for work allegedly because he was too sick to work. This information was needed

2

to verify the Charging Party's alleged illness and to respond to his claim that he was too

sick to work, and the request was both job-related and consistent with business necessity.

### SECOND AFFIRMATIVE DEFENSE

10.     Upon information and belief, the EEOC's claim is barred to the extent that

it seeks relief for events that occurred more than 180 days prior to the filing of Charging

Party's complaint with the EEOC.

### THIRD AFFIRMATIVE DEFENSE

11.     Charging Party's terms and conditions of employment were established by

a series of collective bargaining agreements between the Company and the United

Automobile Workers of America, AFL-CIO (the "Union"). The Company's treatment of

Charging Party and its decisions concerning his employment were based in whole or in

part on its contractual rights and duties as defined by the terms and conditions of its

collective bargaining agreements with the Union and the shop rules applicable to

Charging Party and other hourly employees.

### FOURTH AFFIRMATIVE DEFENSE

12.     Upon information and belief, the Charging Party is not entitled to any

relief to the extent that he has failed to take reasonable measures to mitigate his alleged

loss.

### FIFTH AFFIRMATIVE DEFENSE

13.     Upon information and belief, any harm, economic or otherwise, that

plaintiff claims to have suffered was caused in whole or in party by his own decisions and

actions.

3

## SIXTH AFFIRMATIVE DEFENSE

14.    Defendant denies that the relief that plaintiff has demanded is available as a matter of law, warranted by Delphi's conduct, or appropriate given all of the pertinent facts and circumstances.

## SEVENTH AFFIRMATIVE DEFENSE

15.    Defendant's treatment of Plaintiff was reasonable and supported by good cause.

## EIGHTH AFFIRMATIVE DEFENSE

16.    The Complaint is defective and barred to the extent that it seeks relief for matters not alleged in the charge of discrimination filed by the Charging Party or for matters not investigated by the Equal Employment Opportunity Commission.

WHEREFORE, defendant Delphi Corporation respectfully requests that the Complaint be dismissed in its entirety on the merits and that it be granted such other and further relief as is just and proper, including the costs, disbursements, and attorneys' fees incurred in the defense of this Complaint.

DATED:    November 30, 2007

WARD NORRIS HELLER & REIDY LLP

By:    /s/ James Holahan
James Holahan, Esq.
*Attorneys for Defendant Delphi Corporation*
300 State Street
Rochester, New York 14614
(585) 454-0700
jch@wnhr.com

4

V

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                       Plaintiff,

        v.

DELPHI CORP.,

                   Defendant.

SCHEDULING ORDER

07-CV-6470T

Pursuant to the order of the Hon. Michael A. Telesca, United States District
Judge, referring the above case to the undersigned for pretrial procedures and the entry of a
scheduling order as provided in Fed. R. Civ. P. Rule 16(b) and Local Rule 16.1(a), and a
conference having been held on **February 7, 2008** with counsel relative to the matter, it is
ORDERED that:

      1.      All mandatory disclosure requirements found in Rule 26(a)(1) of the
Federal Rules of Civil Procedure, as well as any objections to the mandatory disclosure
requirements, shall be completed on or before **February 6, 2008**.

      2.      All motions to join other parties and to amend the pleadings shall be filed
on or before **May 23, 2008**. Any third party action shall be commenced on or before **May 23,
2008**.

      3.      A **status conference** will be held with the undersigned at 2310 U.S.
Courthouse, Rochester, New York on **July 9, 2008**, at **11:00 a.m.**, to discuss the status of the
case and the possibility of settlement.

4.    All factual discovery in this case, including depositions, shall be completed on or before **July 24, 2008**. All motions to compel discovery shall be filed at least thirty (30) days <u>prior</u> to the factual discovery cutoff.

5.    Parties with the burden of proof as to particular issues shall identify any expert witnesses and provide reports pursuant to Fed. R. Civ. P. 26 by **June 30, 2008**. Parties shall identify any rebuttal experts and provide reports pursuant to Fed. R. Civ. P. 26 by **July 30, 2008**. Parties shall complete all discovery relating to experts, including depositions, by **August 29, 2008**. The parties reserve their right to offer expert disclosure on the issue of damages. Disclosure of damage experts will take place within sixty days after the resolution of any dispositive motions.

6.    Dispositive motions, if any, shall be filed no later than **October 24, 2008**. Unless a consent to proceed before this Court has been filed, such motions shall be made returnable before Judge Telesca.

7.    A <u>trial date status conference</u> pursuant to Fed. R. Civ. P. Rule 16(d) and Local Rule 16.1(f) will be held, if necessary, at a date and time to be determined by the trial judge after determination of dispositive motions. If no dispositive motions are filed, counsel shall **immediately** contact the trial judge so that a trial date status conference can be scheduled.

At least seven (7) days prior to the trial date status conference, the parties shall file a joint case status report setting forth the information described below. If the parties disagree as to the information to be provided, the report must set forth their different responses. The joint status report shall contain:

2

(1)     Nature of the Case: Set forth a brief description of the action,
        identifying the parties, all counsel of record, the relief requested,
        any affirmative defenses and any relationship the case may have to
        other pending actions.

(2)     Motion Practice: Are any motions, dispositive or non-dispositive,
        pending? If so, briefly describe the motion. Explain if additional
        motion practice is necessary before the matter is ready to be tried.

(3)     Settlement: Describe the status of settlement negotiations. If the
        parties believe a court supervised settlement/mediation conference
        would be of assistance in resolving the case or narrowing disputed
        issues, please state.

(4)     Trial: State whether the case is ready for trial. If not, explain why.
        Set forth an estimate of how long the trial will take and whether the
        case is jury or non-jury.

No extension of the above cutoff dates will be granted except upon written

application, made prior to the cutoff date, showing good cause for the extension. Application for

extensions should be made to the Magistrate Judge. Joint or unopposed requests to extend the

deadlines set forth in this order need not be made by formal motion, but rather may be sought in a

3

letter to the court.  Letter requests must detail good cause for the extension and propose new

deadlines.

**IT IS SO ORDERED.**

Marian W Payson

MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       February ⁊, 2008

4

# EXHIBIT 2

IC0225b.txt

1

1
2      UNITED STATES BANKRUPTCY COURT
3      SOUTHERN DISTRICT OF NEW YORK
4      - - - - - - - - - - - - - - - - - - -x
5      IN RE:
6
       DELPHI CORPORATION, et al.,                    Case No.
7                                                     05-44481
                                                      (RDD)
8
9      - - - - - - - - - - - - - - - - - - -x
10
11            DEPOSITION of MARGARET MALLOY, taken by
12     Debtors at the offices of U.S. Attorney's Office,
13     Southern District of New York, 86 Chambers Street, New
14     York, New York 10007, on Monday, February 25, 2008
15     commencing at 7:40 p.m., before I. Iris Cooper, a
16     Certified Shorthand (Stenotype) Reporter and Notary
17     Public within and for the State of New York.
18
19
20
21
22
23
24
25

                                                              2
1
2
       A P P E A R A N C E S:

                          Page 1

IC0225b.txt

3

4        SKADDEN, ARPS, SLATE, MEAGHER & FLOM, L.L.P.
                  Attorneys for Debtor
5                 333 West Wacker Drive
                  Chicago, Illinois  60606-1285
6
         BY:  JOHN K. LYONS, Esq., of Counsel
7

8
         U.S. ATTORNEY'S OFFICE SOUTHERN DISTRICT OF
9    NEW YORK
                  Attorneys for Witness
10                86 Chambers Street
                  New York, New York  10007
11
         BY:  MATTHEW L. SCHWARTZ, Esq., of Counsel
12

13

14

15

16

17

18

19

20

21

22

23

24

25


                                                3
1

2               IT IS HEREBY STIPULATED AND

3          AGREED that the filing and sealing of

4          the within deposition be, and the

5          same are hereby waived;

6               IT IS FURTHER STIPULATED AND

7          AGREED that all objections, except as

                    Page 2

ICO225b.txt

8          to the form of the question, be and

9          the same are hereby reserved to the

10         time of the trial;

11                IT IS FURTHER STIPULATED AND

12         AGREED that the within deposition may

13         be sworn to before any Notary Public

14         with the same force and effect as if

15         sworn to before a Judge of this

16         Court;

17                IT IS FURTHER STIPULATED that

18         the transcript is to be certified by

19         the reporter.

20

21

22

23

24

25

                                                        4

1

2    M A R G A R E T   M A L L O Y, called as a

3          witness, having been first duly sworn by

4          I. Iris Cooper, a Notary Public within and

5          for the State of New York, was examined and

6          testified as follows:

7                      MR. SCHWARTZ:   John, before we

8          start, we've already told you that the

9          answers to a lot of the questions

10         today are going to evoke

11         attorney-client privilege or work

                        Page 3

IC0225b.txt
```
12                      product or government deliberative

13                      process information.  As I also

14                      explained, we'll try to give you some

15                      latitude.  I assume that we can agree

16                      up front that any answers that are

17                      given today won't affect broader

18                      waivers of the privilege.

19                          MR. LYONS:  I don't think

20                      we're in position to agree to that

21                      because we no longer need to follow up

22                      on answers that the deponent gives, so

23                      I don't think we can agree right now

24                      to that.  So I think what we need to

25                      do is just proceed forward, and you
```

                                                         5
```
1

2                       can certainly state your objections on

3                       the record which you deem necessary to

4                       safeguard privileges, instruct the

5                       witness not do answer.  Delphi in turn

6                       will seek whatever inference from the

7                       judge resulting from that invocation

8                       of privilege.

9     DIRECT EXAMINATION

10    BY MR. LYONS:

11          Q     Can you please state your name for

12    the record.

13          A     Margaret Malloy.

14          Q     Ms. Malloy, what is your current

15    occupation?

16          A     I'm a trial attorney at the EEOC.
```
                              Page 4

IC0225b.txt

17          Q     And when did you obtain that
18    position?
19          A     I began on December 26, 2006.
20          Q     And what did you do before that,
21    before you took that position?
22          A     I was an associate at a law firm.
23          Q     And what's the name of the law firm?
24          A     Gladstein, Reif & McGinnis.
25          Q     How long were you an associate

                                                    6
1
2    there?
3          A     Six years.
4          Q     Before you became an associate at
5    Gladstein, what was your occupation?
6          A     I clerked for a judge.
7          Q     And who did you clerk for?
8          A     Denise Coat.
9          Q     What type of judge was she?
10          A     U.S. District Court judge.
11          Q     For the Southern District of
12    New York?
13          A     Yes.
14          Q     And before you clerked for the U.S.
15    District Court for the Southern District of
16    New York, did you have any other occupations or
17    jobs?
18          A     Legal jobs?
19          Q     Legal jobs first.
20          A     I graduated from law school right

                        Page 5

IC0225b.txt
21    before my clerkship.
22            Q        So you went to clerk straight from
23    law school?
24            A        Yes.
25            Q        And before you went to law school,


                                                            7
1
2    did you have any other jobs?
3            A        Yes, I did.
4            Q        Can you briefly go through your
5    jobs, briefly?
6            A        Immediately before I went to law
7    school, I had been working for Clean Water Action.
8            Q        In your other jobs, did you have any
9    other investigative duties, with any of your jobs
10   prior to becoming a clerk for the Southern
11   District of New York.
12           A        No, I don't think so.
13           Q        What areas of law did you practice
14   as an associate of Gladstone?
15           A        Gladstein.
16           Q        I'm sorry.  Gladstein.
17           A        Labor and employment.
18           Q        Was that for your six years there?
19           A        Yes.
20           Q        So you testified that you had joined
21   the U.S. Attorney's office on December 26, 2006.
22                       MR. SCHWARTZ:   EEOC.
23           Q        EEOC.  I'm sorry.  December 26,
24   2006.  When did you first become involved in the
25   Straughter matter?

                           Page 6

IC0225b.txt

8

1
2          A      I don't recall exactly.
3          Q      Is there anything that would refresh
4     your recollection on that?
5                      MS. GROSSMAN:  You can answer
6               yes or no.
7                      THE WITNESS:  There might be
8               something that would refresh my
9               recollection, but it might be
10              privileged.
11         Q      Well, let's look at your
12    declaration, which I'll mark as deposition Exhibit
13    No. 1.
14                     (Declaration of Margaret
15              Malloy was marked as Exhibit No. 1 for
16              identification on this date.)
17         Q      And also to be marked as Exhibit No.
18    2 will be the exhibits to the declaration.
19                     (Exhibits to declaration of
20              Margaret Malloy was marked as Exhibit
21              No. 2 for identification on this
22              date.)
23                     MR. LYONS:  For the witness's
24              copy, we actually inserted tabs.  For
25              my copy and your copy we don't have


9

1
2               tabs.

Page 7

IC0225b.txt

3          Q     Ms. Malloy, in connection with the

4    motion for leave to file late claim filed by the

5    EEOC in the Delphi bankruptcy case, you submitted

6    a declaration and exhibits.  Can you please review

7    Exhibit Nos. 1 and 2 and confirm for us that those

8    are true and correct copies of your declaration

9    and attached exhibits?

10         A     Cursory review, they appear to be

11   true and correct copies.

12         Q     Thank you.  If you look at Paragraph

13   No. 3 of Exhibit No. 1, which is your declaration,

14   you state that you're the trial attorney assigned

15   to represent the EEOC in the Equal Employment

16   Opportunity Commission versus Delphi Corp., which

17   is No. 07 Civ. 640 which is pending in the U.S.

18   District Court for the Western District of

19   New York.  Is that true?

20         A     It's U.S. Civ. 6470.

21         Q     I'm sorry.  Is that true that you're

22   the trial attorney assigned to the represent the

23   EEOC in that matter?

24         A     Yes.

25         Q     Do you recall when you were assigned

                                                    10

1

2    to represent the EEOC in that matter?

3          A     I don't recall.  It was before the

4    lawsuit was filed.

5          Q     Do you know how long before the

6    lawsuit it was filed?

7          A     Within a few months before the

                       Page 8

IC0225b.txt

8    lawsuit was filed.

9         Q    Why don't we take a look at

10    Paragraph No. 20 of your declaration, your

11    declaration states, and I'm just paraphrasing

12    here.  I'm omitting certain of the words of your

13    declaration.  It states that on June 19, 2007, the

14    case which was the charge filed by Mr. Straughter

15    was forwarded to the legal unit of the EEOC's

16    New York district office?

17         A    That's correct, it states that.

18         Q    Does that refresh your recollection

19    as to when you were assigned this matter?

20              MR. SCHWARTZ:  It's a yes or

21         no question.

22              THE WITNESS:  No.

23         Q    Okay.  Let's go back to your

24    declaration.  We'll take it paragraph by

25    paragraph.  If you can look at Paragraph No. 4, it


                                              11

1

2    states that on or about August 28, 2006, the EEOC

3    national call center was first contacted about a

4    potential claim of discrimination by Stanley

5    Straughter, a Delphi employee in Rochester,

6    New York.

7              Do you have any personal knowledge

8    as to that contact with the EEO national call

9    center by Mr. Straughter?

10        A    No.

11        Q    Paragraph No. 5 states, over the

                        Page 9

IC0225b.txt

12    next several months, the EEOC worked with

13    Straughter to prepare and finalize a formal charge

14    of discrimination.

15                Is it true that over the next

16    several months the EEOC worked with Straughter to

17    prepare and finalize a formal charge of

18    discrimination?

19            A    Yes, that's correct.

20            Q    Did you work on this effort?

21                    MR. SCHWARTZ:  Objection.

22            Calls for privileged communications,

23            attorney work product, government

24            deliberative process information.

25            Q    Who worked for Mr. Straughter --

                                                        12

1

2    strike that.  You can answer the question.

3            A    I'm sorry.  Which question is

4    pending?

5            Q    Did you work with Mr. Straughter --

6                    MR. SCHWARTZ:  When I assert

7            privileges, do I need to say every

8            time that I also instruct her not to

9            answer?

10                    MR. LYONS:  Yes.

11                    MR. SCHWARTZ:  I instruct her

12            not to answer the previous question.

13                    MR. LYONS:  Please note the

14            witness is conferring with counsel.

15                    THE WITNESS:  He told me I can

16            make that point.  So the point was

                        Page 10

IC0225b.txt

17                that I was not yet employed by the

18                EEOC at that time.

19          Q     So up until December 26, 2006, you

20     did not have any involvement in the investigation

21     of Mr. Straughter's charge?

22          A     That's correct.

23          Q     Have you spoken with Mr. Straughter?

24          A     Yes, I have.

25          Q     When was the first time you spoke

                                                        13
1

2      with Mr. Straughter?

3                     MR. SCHWARTZ:  Objection.

4                Calls for attorney work product and

5                government deliberative process

6                information.

7                     MR. LYONS:  And you instruct

8                the witness not to answer?

9                     MR. SCHWARTZ:  And I instruct

10               the witness not to answer.  I think I

11               can say for the record that whenever I

12               invoke the attorney-client privilege,

13               the attorney work product with the

14               government deliberative process of

15               privilege that I'm also instructing

16               the witness not to answer.  It is a

17               continuing instruction.

18                    THE WITNESS:  I'll just add

19               that the EEOC takes the position that

20               our communications with claimants in

                            Page 11

```
                         IC0225b.txt
21               our cases are protected by the
22               attorney-client privilege as well.
23                    MR. SCHWARTZ:  So also the
24               attorney-client privilege trifecta.
25          Q    Who is the primary investigator of


                                                      14
1
2    Mr. Straughter's charge?
3          A    Jennifer Carlo.
4          Q    Has she been the primary
5    investigator from the time that Mr. Straughter
6    made his allegations to the EEOC through today?
7          A    My knowledge of that is based on the
8    documents that you have before you.  Based on
9    those documents, the answer to that is yes.
10         Q    Do you know from your personal
11   knowledge whether Ms. Carlo was the primary
12   investigator from the time that Mr. Straughter
13   made his allegations through today?
14         A    Since I wasn't working for the
15   agency prior to December 26, 2006, no.
16         Q    From the time that you became
17   involved in the Straughter charge through today,
18   has Ms. Carlo been the primary investigator for
19   Mr. Straughter's charge?
20         A    Yes.
21         Q    Have there been any other
22   investigators assigned to the charge in the EEOC's
23   lawsuit in the Western District of New York?
24         A    Not to my knowledge.
25         Q    Turn to Paragraph No. 13 of your
                        Page 12
```

IC0225b.txt

                                                                15
 1
 2    declaration. Paragraph No. 13 states that on
 3    January 31, 2007 Delphi responded to the EEOC's
 4    request for information.
 5              Does this refresh your recollection
 6    as to when you first became involved in the
 7    Straughter charge?
 8        A    No.
 9        Q    Do you recall receiving the response
10    that Delphi made to the EEOC's request on or about
11    January 31, 2007?
12                    MR. SCHWARTZ:  Are you asking
13              whether she received it on or about
14              January 31, 2007 or if she recalls
15              receiving the January 31, 2007
16              response?
17        Q    Whether you recall receiving the
18    January 31, 2007 response on or about January 31,
19    2007?
20        A    No, I do not.  I just mention that
21    if I had received something at that time and I do
22    not recall receiving anything, but if I did, the
23    only way I could have received it is from the
24    investigator, and that would be privileged
25    communication.


                                                                16
 1
 2        Q    Look at Paragraph No. 14.  The

                         Page 13

IC0225b.txt

3    second sentence states, therefore, on or about

4    February 26, 2007, the EEOC sent Delphi a second

5    request for information.

6              Were you involved in formulating

7    that second request for information on or about

8    February 26, 2007?

9                   MR. SCHWARTZ:  Objection.

10                  Calls for attorney-client privilege,

11                  work product protection, and

12                  government deliberative process

13                  privilege.

14        Q    What is the basis for your statement

15    that on or about February 26, 2007 the EEOC sent

16    Delphi a second request for information?

17        A    The EEOC's files.

18        Q    That's your sole basis for that

19    statement?

20        A    That's all that I can recall would

21    be the basis for that that is reflected in the

22    EEOC's investigative file.

23        Q    Paragraph No. 15, at or about

24    April 4, 2007 Delphi finally responded to the

25    EEOC's second request for information, and it goes

17

1

2    on and on.  Were you involved in the EEOC's

3    receipt and analysis of  Delphi's response to the

4    second request for information on or about

5    April 4, 2007?

6                   MR. SCHWARTZ:  Objection to

7                   form.  Also objection because it calls

                    Page 14

IC0225b.txt

```
 8                for attorney-client privileged
 9                information, attorney work project,
10                and government deliberative process
11                privileged information.
12        Q     Were you ever involved in analyzing
13   Delphi's response to the EEOC's second request for
14   information?
15                     MR. SCHWARTZ:  Objection to
16                form.   Objection because it calls for
17                attorney-client privilege information,
18                attorney work product, and government
19                deliberative process privileged
20                information.
21        Q     Paragraph No. 16 states, throughout
22   this give-and-take process with Delphi, the EEOC
23   simultaneously pursued other avenues of
24   investigating the charge of discrimination,
25   including collecting further information from
```

18

```
 1
 2   Straughter.  what avenues of investigation of the
 3   charge of discrimination did the EEOC pursue?
 4                     MR. SCHWARTZ:  Objection.
 5                Calls for attorney-client privileged
 6                information, attorney work product,
 7                and government deliberative process
 8                information, other than, of course,
 9                what's stated in the declaration,
10                which is that the EEOC collected
11                further information from
```

Page 15

```
                              IC0225b.txt
12                Mr. Straughter.
13        Q     Let's read Paragraph No. 16.
14   Throughout this give-and-take process with Delphi,
15   the EEOC simultaneously pursued other avenues of
16   investigating the charge of discrimination,
17   including collecting further information from
18   Straughter.
19                Is your statement that the EEOC in
20   pursuing other avenues of investigation of the
21   charge of discrimination solely collected further
22   information from Straughter?
23        A     No.
24        Q     So apart from collecting
25   information, further information from Straughter,
```

```
                                                    19
1
2    what other avenues of investigation did the EEOC
3    pursue relating to Mr. Straughter's charge of
4    discrimination?
5                MR. SCHWARTZ:  Objection.
6                Calls for attorney-client privileged
7                information, attorney work product,
8                and government deliberative process
9                privileged information.
10        Q     As reflected in Paragraph No. 16,
11   did the EEOC ever discuss with any other employees
12   at Delphi any potential violations of the ADA
13   relating to medical release forms?
14                MR. SCHWARTZ:  Objection.
15                Privileged.  And can we agree to save
16                some breath that I can simply say
                          Page 16
```

IC0225b.txt

```
17              privileged when I mean to invoke all
18              three of those privileges?
19                   MR. LYONS:  Yes.  And if you
20              decide to drop one of the privies, why
21              don't you so note.
22                   MR. SCHWARTZ:  I certainly
23              will.  I assume that your questions
24              about your investigation are questions
25              about prelitigation investigation;
```

20

```
1
2               correct?
3                    MR. LYONS:  Unless otherwise
4               noted, I try to put a time frame that
5               I'm asking the question.  I mean,
6               Paragraph No. 16, let's confirm that.
7               Paragraph No. 16 does not put a time
8               frame on it.
9       Q    Is Paragraph No. 16 meant to just
10   cover the period prior to commencement of the
11   federal EEOC action.
12       A    That's my understanding of Paragraph
13   No. 16.
14       Q    Is Paragraph No. 16 based upon your
15   personal knowledge?
16       A    Paragraph No. 16 is based on my
17   review of the investigative file.
18       Q    Other than your review of the
19   investigative file, is there any basis, other
20   basis, for your statements in Paragraph No. 16?
```

Page 17

IC0225b.txt
21      A      I would like to confer with my
22  counsel as to whether or not my answer would be
23  privileged.
24                      MR. LYONS:  It asks for a yes
25              or no.  Whether it goes into more than

                                                            21
1
2              a yes or no, then I can understand why
3              there might be a --
4                      MR. SCHWARTZ:  I do appreciate
5              that.  But given what you said at the
6              outset that there would be no waivers,
7              no subject matter waivers, we need to
8              be very careful.
9                      MR. LYONS:  Note conference
10             off the record.
11                     (Whereupon, a conversation was
12             held off the record.)
13      Q      What was the basis for your
14  statement in Paragraph No. 16 of the declaration?
15      A      The investigative file.  The
16  documents in the investigative file.
17      Q      Did you have any other basis?
18      A      No, not that I recall.
19      Q      Paragraph Nos. 4, 5, 6, 7, 8, 9, 10,
20  11, 12, 13, 14, and 15, what was the basis for
21  your statements in those paragraphs?
22      A      The EEOC's investigative file.
23      Q      Did you have any other basis other
24  than the file for those statements?
25      A      No.
                        Page 18

IC0225b.txt

22

```
 1
 2         Q    Paragraph No. 17, what was the basis
 3   for your statement in Paragraph No. 17?
 4         A    The EEOC's investigative file.
 5         Q    Did you have any other basis for the
 6   statement in Paragraph No. 17?
 7                   MR. SCHWARTZ:  Objection.
 8                   THE WITNESS:  Not that's not
 9             privileged.
10                   MR. SCHWARTZ:  It's quotation
11             from a document that's dated.  I'm not
12             sure exactly what you're getting at.
13         Q    Can you answer the question?
14         A    The basis for my statement in
15   Paragraph No. 17 is the document itself that's
16   quoted, the letter of determination.
17         Q    Did you have any involvement in the
18   preparation of the conclusions contained in the
19   letter of determination?
20                   MR. SCHWARTZ:  Objection.
21             That is attorney work product,
22             attorney-client privileged
23             information, government deliberative
24             process privileged information.
25                   MR. LYONS:  I don't believe
```

23

```
 1
 2             the fact of whether or not you were
```

Page 19

IC0225b.txt
3          involved falls within any of those
4          privileges.  Would you like to
5          reconsider your insertion, your
6          instruction not to answer?
7                    MR. SCHWARTZ:  Okay.  No.  I
8          think that it's privileged.
9                    MR. LYONS:  Okay.  Just so I
10         understand to be clear, the U.S.'s
11         position is that your involvement or
12         non-involvement in the issuance of the
13         letter of determination is privileged?
14                    MR. SCHWARTZ:  I think that
15         your question was broader than the way
16         that you just phrased it to me.  And
17         the question of how and when the EEOC
18         or any law enforcement agency staffs
19         cases and makes final decisions about
20         charges is privileged, both under the
21         attorney-client work product doctrine
22         and under the government deliberative
23         process privilege.  That said, if you
24         want to try to rephrase your question,
25         maybe get a little bit closer.


                                                      24
1
2          Q    Were you involved in the EEOC's
3    issuance of it's letter of determination
4    referenced in Paragraph No.17 of your declaration?
5                    MR. SCHWARTZ:  Objection to
6          the form.
7          Q    You can answer.
                    Page 20

IC0225b.txt

```
 8          A    I don't know what it really means to
 9    be involved in the issuance of the LOD.
10          Q    Prior to May 22, 2007, were you
11    involved in the investigation referenced in the
12    first sentence of the block quote in Paragraph No.
13    17?
14          A    My attorney is not objecting but I
15    think that calls for privileged information.
16                     MR. SCHWARTZ:  Okay.  We'll
17              object on the basis of privilege.
18                     MR. LYONS:  So you're
19              instructing not to the answer and
20              we've got the protocol.
21                     MR. SCHWARTZ:  Yes.
22                     MR. LYONS:  And you're
23              instructing the witness not to answer?
24                     MR. SCHWARTZ:  Yes.  I think,
25              John, that involved is a very
```

                                            25
```
 1
 2              difficult word in this context.  You
 3              might want to try and be clear with
 4              specific reference to the last
 5              question.
 6                     MR. LYONS:  I put a clear
 7              temporal limit on this.  I said on or
 8              before May 22, 2007 were you involved
 9              in the investigation of
10              Mr. Straughter's charge of
11              discrimination that's referenced in
```

Page 21

                              IC0225b.txt
12                the letter of determination that's set

13                forth in Paragraph No. 17 of your

14                declaration.

15                        MR. SCHWARTZ:  My point to you

16                is that involved is a very ambiguous

17                word in this context.  Specifically,

18                it's ambiguous as to whether she was

19                involved as a lawyer or whether she

20                was involved as investigating.

21        Q     Were you involved in any capacity on

22   or prior to May 22, 2007 in the Straughter charge

23   of discrimination?

24        A     Yes.

25        Q     And in what capacity were you

                                                         26

1

2    involved?

3         A     In my capacity as an attorney

4    legally involved in it.

5         Q     Does Paragraph No. 17 refresh your

6    recollection as to when you became involved in the

7    Straughter charge of discrimination?

8         A     Yes.

9         Q     And based upon your refreshed

10   recollection, when do you believe you first became

11   involved in the Straughter charge of

12   discrimination?

13        A     All I can say is that it was before

14   May 22, 2007.

15        Q     If we go to the last sentence of

16   Paragraph No. 17, it states that the EEOC also

                        Page 22

IC0225b.txt

17    informed Delphi that it would like to eliminate

18    the unlawful practices through informal methods of

19    conciliation and invited Delphi to discuss

20    settlement of the charge.

21              Do you recall having discussions

22    with Delphi regarding settlement of the charge on

23    or about May 22, 2007?

24         A    No.

25         Q    Paragraph No. 18 of your declaration


27

1

2    references, and perhaps this might be more

3    efficient.  If you can turn to Exhibit N to your

4    declaration.  Is Exhibit N which you're reviewing

5    right now, is that, to the best of your knowledge,

6    Exhibit N to your declaration?

7         A    Yes.

8         Q    Do you recall seeing a copy of this

9    letter dated May 23, to Mr. Peterson at Delphi on

10    or about May 23, 2007?

11         A    I don't recall when I saw it.

12         Q    Were you involved in the preparation

13    of this letter which is Exhibit N to your

14    declaration?

15              MR. SCHWARTZ:  Objection.

16         Privileged.

17         Q    Your declaration states that the

18    following day, May 23, 2007, that the EEOC

19    contacted Delphi.  What was the basis of the

20    statement that the EEOC contacted Delphi?  What

Page 23

IC0225b.txt
21    was your basis -- I'm sorry.  Let me back up.
22                    Paragraph No. 18 of your declaration
23    states that following day on May 23, 2007 the EEOC
24    contacted Delphi to begin conciliation efforts and
25    outlined a comprehensive remedy for Delphi's

                                                        28
1
2    discriminatory practices.
3                    What was the basis for your
4    statement in Paragraph No. 18 that I just --
5            A    Exhibit A, the letter.
6            Q    Is there any other basis?
7            A    I don't recall whether the letter
8    was faxed in addition to being mailed.  The May
9    23rd date comes from the letter.
10           Q    Were you aware of any other contacts
11   other than the letter marked as Exhibit N to
12   Delphi discussing the subject matter of Paragraph
13   No. 18 of your letter?
14           A    Not that I recall.
15           Q    To your declaration.  I'm sorry.
16                   If you can turn to Paragraph No. 16
17   of your letter, Exhibit N to your declaration.
18           A    The EEOC's letter?
19           Q    Correct.  It begins with respondent
20   will make charging party whole for all losses
21   suffered as a result of discrimination?
22           A    Yes.
23           Q    Including lost wages and fringe
24   benefits plus interest?
25           A    I see that.
                           Page 24

IC0225b.txt

                                                              29
1
2            Q      Did the EEOC make any calculation as
3      to the amount necessary to make whole
4      Mr. Straughter for losses suffered as a result of
5      discrimination?
6                        MR. SCHWARTZ:   Objection.
7                        Privileged.   I also have to say this
8                        is a bit far outside the purpose of
9                        this deposition.
10           Q      In Paragraph No. 17 of Exhibit N,
11     the letter states, respondent will compensate
12     charging party for emotional harm and distress,
13     pain, suffering, humiliation or embarrassment in
14     the amount of $115,000.
15                       Were you involved in the calculation
16     of the $115,000 that the EEOC was necessary to
17     compensate Mr. Straughter for emotional harm and
18     distress, pain, suffering, humiliation or
19     embarrassment?
20                       MR. SCHWARTZ:   Objection.
21                       Privileged.   Also irrelevant.
22           Q      Paragraph No. 19 of Exhibit N to
23     your declaration states, respondent will provide,
24     make whole relief for any and all other
25     individuals determined to have been harmed by

                                                              30
1
2      respondent's discriminatory practices.

                        Page 25

IC0225b.txt

```
 3                 Are you aware of any other
 4   individuals who have suffered harm as a result of
 5   Delphi's alleged discriminatory practices
 6   referenced in the EEOC's lawsuit against Delphi?
 7                     MR. SCHWARTZ:  Objection.
 8                     Privileged.  Also relevance.  At this
 9                     point, could you explain the relevance
10                     of these questions about damages in
11                     this suit.  I understand they go to
12                     potential value of our claim to
13                     bankruptcy, but certainly not to its
14                     timeliness.
15                     MR. LYONS:  I think the
16                     relevance is pretty obvious since to
17                     the extent that the EEOC was aware of
18                     prepetition claims, potential
19                     prepetition claims, and did nothing
20                     for 13 months from the time that
21                     Mr. Straughter walked in the door,
22                     that that goes directly to excusable
23                     neglect.
24                     MR. SCHWARTZ:  I'm not sure
25                     that I follow, but --
```

                                                            31
```
 1
 2        Q    If I look at Paragraph No. 20 to
 3   Exhibit M to your declaration, it states,
 4   respondent will create a $200,000 fund to provide
 5   for compensatory damages for any and all
 6   individuals who have been required to sign an
 7   unlawful medical release at any time from
```

                          Page 26

IC0225b.txt

8    January 1, 2005 to the present.

9                    Were you involved in assessing the

10    adequacy of a $200,000 fund to provide

11    compensatory damages for any and all individuals

12    who had been required to sign an unlawful medical

13    release at any time from January 1, 2005 to the

14    present?

15                    MR. SCHWARTZ:  Objection.

16              Privileged.

17        Q     Do you know the basis for setting a

18    $200,000 figure to compensate any and all

19    individuals who may have been harmed by reason of

20    the failure to sign a medical release?

21                    MR. SCHWARTZ:  Objection.

22              Privileged.

23        Q     Are you aware of any Delphi

24    employees who were harmed by Delphi's alleged

25    requirement to sign a medical release, other than

32

1

2    Mr. Straughter?

3                    MR. SCHWARTZ:  Objection.

4              Privileged.

5        Q     Do you know whether at the time

6    Mr. Straughter filed his charge of discrimination

7    whether any Delphi employees suffered harm as a

8    result of Delphi's alleged policy to require

9    employees to sign medical release forms?

10                    MR. SCHWARTZ:  You're asking

11                    if she knew it at the time or if there

Page 27

IC0225b.txt

12          were folks who were injured at the

13          time?

14     Q    As you sit here today, as you sit

15  here today, are you aware of any Delphi employees

16  that suffered harm as a result of Delphi's alleged

17  policy to require medical release forms from

18  employees?

19               MR. SCHWARTZ:  This is aside

20               from the ones your own client has

21               identified in response to request for

22               information or including those folks?

23               MR. LYONS:  Any employees.

24               MR. SCHWARTZ:  I think that

25               she identified those people before.

33

1

2               THE WITNESS:  There were, I

3               believe, three other individuals

4               identified in Delphi's response to a

5               request for information.

6     Q    And we'll turn to that.  Other than

7  those three individuals, are you aware of any

8  other Delphi employees who suffered harm based

9  upon Delphi's alleged policy to require medical

10  release forms?

11               MR. SCHWARTZ:  Objection.

12               Privileged.

13     Q    Paragraph No. 21 of your declaration

14  refers to steps that the EEOC must take before

15  filing a federal court action to remedy alleged

16  violations of the ADA.  What is the basis of your

Page 28

IC0225b.txt

17    knowledge of the statements made in Paragraph No.

18    21 of your declaration?

19          A    The regional's attorney manual

20    reflects those steps.

21          Q    Do you have any other basis for your

22    statements made in Paragraph No. 21 of your

23    declaration?

24                    MR. SCHWARTZ:  Objection to

25          the form.

                                                        34

1

2          Q    You can answer.

3          A    I'm aware of the steps we have to

4    take because of my jobs a trial attorney of the

5    legal unit of the EEOC.

6          Q    Are you aware of the steps -- are

7    you aware of any steps that the EEOC must take to

8    file a proof of claim in a bankruptcy case?

9          A    I am aware of some of the steps,

10    yes.

11          Q    What are those steps?

12          A    I can only testify as to this case.

13          Q    This case is your only source of

14    knowledge as to the steps?

15          A    Yes.

16          Q    To file a proof of claim?

17          A    Yes.

18          Q    And what are those steps?

19          A    In this case, we had to mail our

20    proof of claims to Kurtsman something or other in

Page 29

IC0225b.txt

21    California.

22        Q    Did you need to get advanced

23    authorization from the commissioner at EEOC

24    headquarters in Washington prior to filing your

25    proofs of claim?


                                                    35

 1

 2        A    No.

 3        Q    What authorizations do you need to

 4    file a proof of claim in a bankruptcy case on

 5    behalf of the EEOC?

 6        A    I'm not aware of any particular

 7    authorizations that we require.

 8              (Declaration of Margaret

 9              Malloy was marked as Exhibit No. 3 for

10              identification on this date.)

11        Q    Marked as Exhibit No. 3 is the

12    order -- well, I'll just refer to it as the  bar

13    date order.  Have you ever seen a copy of the bar

14    date order referenced in Exhibit No. 3?

15        A    I don't recall.

16        Q    Do you recall learning that there

17    was a bar date order entered in the Delphi

18    bankruptcy case?

19        A    I have learned that.

20        Q    When did you first become aware of a

21    bar date order entered in the Delphi's bankruptcy

22    case?

23        A    I don't recall.

24        Q    Is there anything that would refresh

25    your recollection?

                        Page 30

IC0225b.txt

36

```
1
2              A     I don't know what would refresh my
3     recollection.
4              Q     Were you aware of the bar date order
5     before the EEOC lawsuit was filed in the western
6     District of New York?
7              A     I don't recall.
8              Q     who handles compliance with bar date
9     orders at the EEOC?
10             A     I don't know.
11                        MR. SCHWARTZ:  Assumes facts
12                   not in evidence.
13             Q     How did the bar date order in
14    Delphi's case come to your attention?
15             A     I don't recall.
16             Q     Did you --
17             A     It had to be a privileged
18    communication, though.
19             Q     So you became aware of the bar date
20    order through communication with another attorney
21    at the EEOC?
22                        MR. SCHWARTZ:  Objection.
23                        MR. LYONS:  Fact of a
24                   conversation isn't privileged.
25                        MR. SCHWARTZ:  Lacks
```

37

```
1
2                   foundation.
```

Page 31

IC0225b.txt

3      Q      What was the basis for your

4  statement that you believe if it came to your that

5  it was due to a privileged conversation?

6      A      I don't know how else it would have

7  come to my attention.

8      Q      Were you aware of the Delphi

9  bankruptcy case prior to filing your proofs of

10  claim?

11      A      Yes.

12      Q      Were you involved in the preparation

13  of the proofs of claim?

14      A      Yes.

15      Q      Did you have primary responsibility

16  for preparing and filing the proofs of claim?

17      A      Yes.

18      Q      Did you review the bar date order

19  before you filed the proofs of claim on behalf of

20  the EEOC?

21      A      I don't recall.

22      Q      And I believe your prior testimony

23  was that you did not recall learning of the bar

24  date order before the EEOC filed its lawsuit

25  against Delphi in the Western District of

                                                      38

1

2  New York?

3      A      I don't recall whether I did or not.

4      Q      And you're not aware of anything

5  that would refresh your recollection on that?

6      A      No.

7      Q      Were you aware that all of Delphi's

                        Page 32

IC0225b.txt

```
 8    employees were served the bar date order?

 9         A    No.

10         Q    Were you aware that not a single

11    Delphi employee filed a proof of claim alleging

12    any EEOC violation?

13         A    No.

14                   MR. SCHWARTZ:  That's why we

15              have the EEOC.

16         Q    Paragraph No. 21 refers to a

17    presentation memorandum?

18         A    Paragraph No. 21 of the bar date

19    order?

20         Q    I'm sorry.  Paragraph No. 21 of your

21    declaration.

22         A    Yes.

23         Q    Your Paragraph No. 21 states, the

24    legal unit must prepare a presentation memorandum

25    to the general counsel containing its assessment
```

                                                       39
```
 1

 2    of the case?

 3         A    Yes.

 4         Q    Does the presentation memorandum

 5    contain such an assessment of the case?

 6         A    The presentation memorandum is

 7    privileged.

 8         Q    Does it contain an assessment of the

 9    case?

10                   MR. SCHWARTZ:  This one or

11              the --
```

Page 33

IC0225b.txt

12        Q        Does the presentation memorandum

13    referred to in Paragraph No. 21 of your

14    declaration contain an assessment of the EEOC case

15    filed in the Western District of New York?

16                        MR. SCHWARTZ:  Objection.

17                Privileged.

18        Q    I'll just refer to presentation

19    memorandum relating to the case filed in the

20    Western district of New York against Delphi?  Is

21    the presentation memorandum extensive?

22                        MR. SCHWARTZ:  Objection.

23                Privileged.

24        Q        Does the presentation memorandum

25    describe the background and legal analysis


                                                        40

1

2    involved in the case, including proof that

3    anticipates introducing but also to prepare a

4    breakdown of anticipated litigation costs?

5                        MR. SCHWARTZ:  Objection to

6                the form.  Objection.  Privileged.

7        Q        So you are unable to confirm the

8    statements contained in Paragraph No. 21 on the

9    basis that such confirmation would be privileged?

10        A        That's not a correct representation,

11    no.

12        Q        Could you please confirm then that

13    the presentation memorandum is extensive?

14        A        Paragraph No. 21 refers to

15    presentation memoranda in general and what is

16    required to be included in them.  The questions

                        Page 34

IC0225b.txt

17    you're asking, however, relate to the presentation

18    memorandum prepared in this case.

19         Q    Was a presentation memorandum

20    presented to the general counsel for the Delphi

21    case?

22         A    Yes.

23         Q    And was that presentation memorandum

24    extensive?

25              MR. SCHWARTZ:  Objection.


                                                      41

1

2              Privileged.

3         Q    Did the presentation memorandum that

4    the EEOC prepared with respect to the Delphi case

5    discuss proof that it anticipated introducing?

6              MR. SCHWARTZ:  Objection.

7              Privileged.

8         Q    Did the Delphi presentation

9    memorandum also contain a breakdown of an

10   anticipated litigation cost?

11             MR. SCHWARTZ:  Objection.

12             Privileged.

13        Q    Did the Delphi presentation

14   memorandum also include a draft of the complaint

15   to be filed?

16             MR. SCHWARTZ:  Objection.

17             Privileged.

18             MR. LYONS:  For the record, we

19             request a copy of that presentation

20             memorandum.

                        Page 35

IC0225b.txt

21          MR. SCHWARTZ:  I'm sure you'll

22          put that in writing.

23                MR. LYONS:  It's on the record

24          here.

25      Q    Paragraph No. 22 refers to a

                                                    42

1

2   statement that the prefiling process unfolded very

3   quickly.  What did you mean by that statement?

4       A    Just what it says.

5       Q    You have no further explanation of

6   the first sentence of Paragraph No. 22?

7                MR. SCHWARTZ:  Objection to

8          the form.

9       Q    You can answer.

10      A    It simply refers to the time period

11  from the failure of conciliation to when we filed

12  the complaint.

13      Q    And, again, the failure of

14  conciliation referenced in Paragraph No. 20 of

15  your declaration occurred on June 19, 2007?

16      A    That's correct.

17      Q    And the case was filed on

18  September 28, 2007?

19      A    Correct.

20      Q    Let's turn to Exhibit R to your

21  declaration which is the actual EEOC complaint.

22  In the nature of action paragraph, it refers to an

23  action under the ADA to correct unlawful

24  employment practices and to provide relief to

25  Stanley Straughter, who is defined as the charging

Page 36

IC0225b.txt

```
                                                      43
1
2    party, and to a class of similarly-situated
3    individuals who had been adversely affected by
4    such practices.
5                 Can you identify any
6    similarly-situated individuals who had been
7    adversely affected by the practices discussed in
8    the complaint?
9                 MR. SCHWARTZ:   Objection.
10                Privileged, except to the three that
11                Delphi identified.
12       Q    As of the time that Mr. Straughter
13   made his charge of discrimination in September of
14   2006, was the EEOC aware of any other
15   similarly-situated individuals who had been
16   adversely affected by the practices discussed in
17   the EEOC complaint?
18                MR. SCHWARTZ:   You're asking
19                if -- I'm sorry.   I didn't understand
20                it at all.
21       Q    As of the time Mr. Straughter filed
22   his charge of discrimination in September 2006,
23   was the EEOC aware of any similarly-situated
24   individuals who were adversely affected by the
25   practices discussed in the EEOC's complaint?
```

```
                                                      44
1
2                 MR. SCHWARTZ:   And now you're
```

Page 37

IC0225b.txt

```
 3                  asking if they were aware of it prior
 4                  to Mr. Straughter filing his complaint
 5                  or if they were aware of individuals'
 6                  complaints prior to the filing of
 7                  Mr. Straughter's complaint.
 8                      MR. LYONS:  As of the time
 9                  Mr. Straughter filed his charge of
10                  discrimination in September 2006.
11                      THE WITNESS:  I'm totally lost
12                  now.
13          Q     Okay.  One more time.  One more
14     time.  At the time that Mr. Straughter filed his
15     charge of discrimination in September of 2006, was
16     the EEOC aware of any other similarly-situated
17     individuals who were adversely affected by the
18     policies discussed in the EEOC's complaint?
19          A     I can't testify as to that.  My
20     knowledge of this case is derived from the
21     investigative file in this case.  If other charges
22     were filed, our charge filing process is
23     confidential.  Delphi would be aware of that.
24          Q     So your answer is no?
25          A     My answer relates only to my
```

```
                                                 45
 1
 2     knowledge.  I can't testify as to the agency's
 3     knowledge.
 4          Q     What of your knowledge derived from
 5     the Straughter file that the EEOC maintains?
 6          A     There's nothing --
 7                      MR. SCHWARTZ:  That wasn't a
```

Page 38

IC0225b.txt

```
 8          question.
 9                      MR. LYONS:  It is a question
10          because --
11                      MR. SCHWARTZ:  Ask the whole
12          question.
13      Q     Does the EEOC's file that is
14  maintained for the Straughter charge reveal any
15  other similarly-situated individuals who have been
16  adversely affected by the practice described in
17  the EEOC complaint?
18                      MR. SCHWARTZ:  That is a
19              totally different question.  Before,
20              you were asking whether anyone had
21              complaints prior to Mr. -- I just want
22              you to realize that you're changing
23              the question, so when I object to it
24              you don't think I'm trying to get in
25              the way.
```

46

```
 1
 2              You were asking before whether
 3              they were aware prior to
 4              Mr. Straughter's complaint if anyone
 5              else had complained, and she said she
 6              was not personally aware.  And now
 7              you're asking if anyone was injured.
 8                      MR. LYONS:  Let me back up.
 9                      MR. SCHWARTZ:  Yes.
10      Q     Prior to December 26, 2006, your
11  knowledge of the Straughter matter and any other
```

Page 39

IC0225b.txt
12    related plaintiffs is limited to the file the EEOC

13    maintains for the Straughter matter; correct?

14          A    Well, I still don't understand the

15    question.

16                    MR. LYONS:   Read the question

17              again.

18                    (Whereupon, the following was

19              read into the record by the reporter:

20                    "Question:   Prior to

21              December 26, 2006, your knowledge of

22              the Straughter matter and any other

23              related plaintiffs is limited to the

24              file the EEOC maintains for the

25              Straughter matter; correct?

                                                    47
1

2                     MR. SCHWARTZ:   Objection to

3               form.

4                     THE WITNESS:   I don't

5               understand the question.

6          Q    I'll try it one more time or a

7     couple more times.

8          A    Try it differently because I really

9     don't understand.

10         Q    As of the time Mr. Straughter filed

11    his charge of discrimination with the EEOC in

12    December of 2006, did the EEOC have any

13    information with respect to Delphi employees who

14    were adversely affected by Delphi's alleged policy

15    of requiring medical releases?

16                    MR. SCHWARTZ:   Objection to
                        Page 40

IC0225b.txt

17              form and to foundation.

18                   THE WITNESS:  I believe you

19              meant to say September 2006.

20      Q      September 2006.

21      A      And I can't -- I have no knowledge

22  as to that.  I can't testify as to anything

23  outside of Mr. Straughter's charge and the

24  investigative file related to that charge.

25      Q      Fair enough.  And just to be clear,

                                                48
1

2   Mr. Straughter's file did not indicate or identify

3   other Delphi employees who were adversely affected

4   by the practices described in the EEOC complaint?

5                   MR. SCHWARTZ:  Well,

6              objection.  Privileged.  If you want

7              to ask if other people had made

8              charges, that's fine.

9       Q      Had other Delphi -- to follow up on

10  that, the instruction still stands.  Understood.

11  But had other Delphi employees filed charges with

12  the EEOC at any time?

13      A      I would have no knowledge of that.

14      Q      We move on.  If you could go to the

15  peripheral leaf which is Page No. 5 of the

16  complaint marked as Exhibit R to your declaration.

17  In the event the EEOC prevails in its lawsuit and

18  obtains compensatory relief, that compensatory

19  relief will only be provided to the affected

20  employees; correct?

Page 41

IC0225b.txt
21        A        What do you mean by affected

22    employees?

23        Q        Employees that were subject to

24    Delphi's alleged ADA's violations.

25        A        I don't think -- I think that's a

                                                    49

1

2    question for the judge to answer.

3        Q        Let me put it another way.  The EEOC

4    isn't going to keep any amount it recovers from

5    Delphi; correct?

6        A        No.

7        Q        All the proceeds that it would

8    collect would go to aggrieved employees; correct?

9        A        I can't really testify as to how we

10    would distribute proceeds.

11        Q        In the EEOC's lawsuit, any

12    compensatory relief is being sought on behalf of

13    potentially-aggrieved Delphi employees?

14        A        That's correct.

15        Q        Why did the EEOC wait until

16    November 2007 to file proofs of claim in the

17    Delphi case when it became aware of

18    Mr. Straughter's charge in September of 2006?

19                    MR. SCHWARTZ:  Objection.

20              Privileged.

21                    THE WITNESS:  It's October.

22        Q        We file a month earlier than I

23    thought.  So are you in a position to discuss any

24    of the facts and circumstances relating to

25    Mr. Straughter's charge of discrimination that

                        Page 42

IC0225b.txt

                                                                50
1
2    existed in September 2006?
3                        MR. SCHWARTZ:  Objection to
4               form.
5                        THE WITNESS:  It seems like an
6               argumentative question to me.  If you
7               want to ask me about facts and
8               circumstances, then I can tell you on
9               an individual basis whether I'm
10              prepared to answer those questions.
11        Q      Beyond reviewing the contents of
12   files maintained for the Straughter matter, do you
13   have any personal knowledge of any of the events
14   discussed in your declaration?
15        A      We've gone through my declaration
16   paragraph by paragraph.
17                       MR. SCHWARTZ:  And she
18              testified that she was involved in
19              certain aspects.
20        Q      And I believe the first aspects you
21   were involved in followed the transmittal letter
22   of the EEOC?
23        A      I don't think I testified as to
24   that, no.
25        Q      Well, why don't you tell me, what's


                                                                51
1
2    the first paragraph in your declaration that

                        Page 43

IC0225b.txt
```
 3    contains facts of which you have personal
 4    knowledge?
 5            A    Paragraph No. 1.
 6            Q    Any other paragraphs?
 7            A    Paragraph No. 2, Paragraph No. 3.
 8    Are you waiting for me to keep going?
 9            Q    Please.
10                    MR. SCHWARTZ:  I object to the
11                form of this question.
12                    THE WITNESS:  I believe I
13                testified I don't recall at what point
14                I became involved, and I believe I
15                testified that it was sometime before
16                May 22, 2007.
17            Q    But which paragraph do you first
18    have personal knowledge of facts contained in that
19    paragraph?
20            A    I don't recall which would be the
21    first one.
22            Q    Are there any paragraphs in your
23    declaration, other than Paragraph Nos. 1 through 3
24    that contained facts of which you have personal
25    knowledge?
```

52
```
 1
 2            A    The paragraphs are written based on
 3    the investigative file.  So, for example,
 4    Paragraph No. 15 is based on documents in the
 5    investigative file.
 6            Q    Please answer my question.
 7            A    Can you repeat your question.
```
                        Page 44

IC0225b.txt

8           Q       Please identify paragraphs that
9     contain facts based upon your personal knowledge,
10    other than Paragraph Nos. 1 through 3.
11          A       All I can say again is I don't
12    recall at what time I became involved in the case.
13          Q       That's not my question.  My question
14    is which paragraphs contain facts based upon your
15    personal knowledge, other than Paragraph Nos. 1
16    through 3?
17          A       All I can say is that Paragraph Nos.
18    1 through 3 are based on my personal knowledge.
19    The remaining paragraphs reflect documents in the
20    EEOC's investigative file and other documents.
21          Q       And are not based upon your personal
22    knowledge?
23          A       No, I won't say that.
24          Q       Well, please answer then what
25    paragraph contain facts based upon your personal


                                                     53
1
2     knowledge other than Paragraph Nos. 1 through 3?
3           A       I've already answered to the best of
4     my ability.
5           Q       So you are not going to answer --
6     you're not going to identify factual assertions
7     contained in your declaration based upon your
8     personal knowledge other than Paragraph Nos. 1
9     through 3?
10                  MR. SCHWARTZ:  Objection.
11          Q       There is a pending question.

                        Page 45

IC0225b.txt

12          A     I did not rely on privileged
13    information to prepare this document -- to prepare
14    this declaration.  For me to answer your question
15    would require me to review privileged information.
16    So if that answers your question that the
17    declaration is prepared based on documents, aside
18    from Paragraph Nos. 1 through 3, then that's my
19    answer.
20          Q     And not based upon your personal
21    knowledge?
22          A     Aside from Paragraph Nos. 1 through
23    3?
24                    MR. SCHWARTZ:  You're asking
25                    now the basis for the declaration as

                                                         54
1
2                    opposed to whether she has personal
3                    knowledge of the events.  Very
4                    different question.
5                    MR. LYONS:  My question has
6                    been very precise.
7                    MR. SCHWARTZ:  It really
8                    hasn't.
9                    MR. LYONS:  It has.  I'll do
10                    it one more time.
11          Q     Please identify any factual
12    assertions in your declaration based upon your
13    personal knowledge, other than Paragraph Nos. 1
14    through 3?
15                    MR. SCHWARTZ:  Objection to
16                    form.

                          Page 46

IC0225b.txt

17                    THE WITNESS:  Paragraph No.

18            22, I have personal knowledge of facts

19            in that paragraph.

20        Q    All of the facts?

21        A    That is based on that paragraph, I

22   have to read it.  I have personal knowledge of

23   those facts.

24        Q    Paragraph No. 23?

25        A    I have personal knowledge of those

                                              55

1

2    facts.

3        Q    Paragraph No. 24?

4        A    I have personal knowledge of those

5    facts.

6        Q    Paragraph No. 25?

7        A    I have personal knowledge of those

8    facts.

9        Q    Paragraph No. 26?

10        A    I have personal knowledge of those

11   facts.

12        Q    And Paragraph No. 27?

13        A    I don't have personal knowledge of

14   all of those facts.

15        Q    What about first sentence of

16   Paragraph No. 27?

17        A    I have personal knowledge of that.

18        Q    The second sentence?

19        A    I wouldn't really say that that's a

20   fact.

Page 47

IC0225b.txt

21          Q      Fair enough.  The third sentence?

22          A      I have no personal knowledge of

23     that.  No, I have no personal knowledge of that.

24          Q      And the last sentence of Paragraph

25     No. 27?


                                                        56

1

2          A      I only have partial personal

3     knowledge.

4          Q      And what's the partial personal

5     knowledge?

6          A      I have personal knowledge of filing

7     the enforcement action and filing the claims of

8     the bankruptcy.

9          Q      But no personal knowledge of the

10     prompt investigation?

11          A      My knowledge of the investigation is

12     based on the investigative file.

13          Q      So other than Paragraph Nos. 1

14     through 3, Paragraph Nos. 22, 23, 24, 25, 26, and

15     parts of 27, you do not have personal knowledge of

16     the assertions in your declaration?

17                    MR. SCHWARTZ:  Objection.

18                    THE WITNESS:  That's not what

19              I was saying.  I want to make a

20              correction as to Paragraph No. 2.

21          Q      First the correction.

22          A      I think I stated that my knowledge

23     of the investigation is based upon the

24     investigative file.  The facts that I assert in

25     the declaration are based on the facts in the

                        Page 48

IC0225b.txt

57

1
2    investigative file.
3         Q    And my questions have presumed other
4    than the investigative file, whether you have
5    personal knowledge of the assertions?
6                   MR. SCHWARTZ:  I think you're
7                   missing the distinction she's drawing,
8                   which is the same one I tried to draw
9                   and you're about to get as she
10                  clarifies.
11                  THE WITNESS:  And that's what
12                  I keep trying to say.  If I have other
13                  personal knowledge, it's privileged.
14                  The facts asserted in this declaration
15                  as I've described them are based on
16                  facts in the investigative file.
17                  MR. SCHWARTZ:  Do you
18                  understand difference?  In other
19                  words, the declaration was written on
20                  the basis of the investigative file.
21                  That says nothing about whether or not
22                  Ms. Malloy also has personal knowledge
23                  of some of those events.  It's talking
24                  about that basis for the assertions in
25                  the declaration.

58

1
2         Q    And to clarify, my questions were

Page 49

IC0225b.txt

3    based on your personal knowledge, not knowledge

4    derive from what's in the file.

5                        MR. SCHWARTZ:  No.  Your

6                        question was whether the basis for the

7                        assertions in the declaration was

8                        personal knowledge, which is not the

9                        investigative file.  And I think we

10                        all understood that, and that was the

11                        answer.

12                        MR. LYONS:  Yes.

13                        MR. SCHWARTZ:  But that

14                        doesn't mean that she doesn't have

15                        personal knowledge about some of the

16                        events that are described in some of

17                        those paragraphs.  For example, take

18                        one that we know that she doesn't have

19                        personal knowledge of, something that

20                        happened before she was hired.  On

21                        August 28, 2006 the national call

22                        center was first contacted.

23                        The basis for putting that in

24                        the declaration, what you've heard,

25                        was a review of the investigative

59

1

2                        file.  That doesn't mean, however,

3                        that she doesn't also have personal

4                        knowledge of the August 28, 2006 call.

5                        That just means that wasn't the basis

6                        for including it as an assertion in

7                        the declaration.  Do you understand

Page 50

```
                        IC0225b.txt
8              that now?
9                      MR. LYONS:  No.
10       Q      Do you have personal knowledge of
11   the August 28th call?
12       A      As he said, let's use an example of
13   one that we all know Ms. Malloy does not have
14   personal knowledge of.
15                      MR. SCHWARTZ:  Because ones
16                      that she actually does have personal
17                      knowledge of, that's all going to be
18                      privileged.  So the declaration was
19                      specifically drafted so as not to rely
20                      on that privileged information.
21                      MR. LYONS:    My question were
22                      what is your personal knowledge.  If
23                      you believe your revelation of your
24                      personal knowledge is going to be
25                      privileged, then you make a note of
```

60

```
1
2                      privilege and instruct your witness
3                      not to answer.
4                      MR. SCHWARTZ:  That wasn't
5                      your question.
6                      THE WITNESS:  I think the
7                      record speaks for itself.
8                      MR. LYONS:  I think the
9                      question speaks for itself, too.
10                      MR. SCHWARTZ:  I think it
11                      speaks for two different things.
```

Page 51

IC0225b.txt

12                THE WITNESS: Well, I answered
13              the question, and I think the
14              objections were made.
15          Q    Let's turn to the proof of claim
16  that was filed, which was Exhibit S to your
17  declaration.  In that proof of claim, it states
18  debt was incurred May 21, 2004.
19              What's the basis for the EEOC's
20  assertion that Delphi's debt to it was incurred
21  May 21, 2004?
22          A    I don't recall.  It had to be
23  something in the investigative file, but I don't
24  recall as I sit here.
25          Q    As long as we have Exhibit S in


                                                    61
1
2   front of us, that's your signature?
3           A    Yes, it is.
4           Q    And that's the proof of claim that
5   you recall being filed?
6           A    That I recall filing, yes.
7           Q    From the time Mr. Straughter his
8   charge of discrimination through the date the EEOC
9   filed its proofs of claim, what new facts came to
10  the EEOC's attention regarding the alleged policy
11  that violated the ADA?
12              MR. SCHWARTZ:  Objection.
13              Privileged.  I mean other than facts
14              that Delphi itself produced back to
15              the EEOC or that have been disclosed
16              in discovery and enforcement

                    Page 52

IC0225b.txt

17          proceedings in the Western District of

18          New York.

19     Q     What is the basis for the EEOC's

20  assertion that it acted with excusable neglect in

21  filing proofs of claim after the Delphi bar date?

22               MR. SCHWARTZ:  Objection.

23               THE WITNESS:  I believe the

24          basis for our assertion is set forth

25          in the memorandum of law in our


                                                    62

1

2          position to Delphi's motion.

3     Q     Any other bases not set forth in the

4  memorandum?

5               MR. SCHWARTZ:  She's only a

6          person.  She's not a 30(b)(6) witness

7          testifying on behalf of the EEOC.

8               MR. LYONS:  Wait a second.

9          You're to declare who's testifying in

10          support of excusable neglect?

11               MR. SCHWARTZ:  Sure.

12     Q     So, again, are there any other bases

13  of excusable neglect, other than in your

14  memorandum that the EEOC filed of which you are

15  aware?

16     A     I think the memorandum covers it,

17  including the fact that Mr. Straughter did not

18  even come to the EEOC.  I believe it was after the

19  bar date already at that time, and his claim in

20  any event is not a prepetition claim.

                    Page 53

IC0225b.txt
21          A      I want to correct something as far
22    as personal knowledge here.
23          Q      Did I want to?
24          A      I did, yes.  I do also have personal
25    knowledge of the contents of the EEOC's regional


                                                    63
1
2     attorneys' manual.  I have read it.
3           Q      Okay.  Thank you.  Generally
4     speaking, for an employee to recover front or back
5     pay, does the employee have to be terminated by
6     some wrongful act of the employee?
7                        MR. SCHWARTZ:  Objection to
8                 the form.
9                        THE WITNESS:  No.
10          Q      What other instances can they get
11    front and back pay?
12          A      Someone could be paid a lower rate,
13    for example, than they should be being paid.
14          Q      Any other basis to get front and
15    back pay?
16          A      You're asking for my legal opinion.
17                        MR. SCHWARTZ:  Objection.  I
18                 will send the research on the ADA.
19                 They could potential recover lost
20                 wages for wonderful termination,
21                 failure to get a promotion or other
22                 pay grade.  If someone, for example,
23                 was not credited for sick leave, those
24                 days might be recoverable.  There's
25                 all sorts of things that are
                        Page 54

IC0225b.txt

64

```
1
2              potentially recoverable.
3        Q     Other than the list mentioned by
4    counsel, is there any other basis to get front and
5    back pay, to your knowledge?
6        A     If someone was suspended without
7    pay, for example.
8        Q     Any other basis to get front and
9    back pay?
10       A     I would have to research it.  That's
11   what I can think of sitting here right now.
12   Constructive discharge.
13       Q     Are you aware whether any employee
14   suffered any of the litany of consequences based
15   upon Delphi's alleged policy to require medical
16   release forms referenced in the EEOC complaint?
17       A     Stanley Straughter.
18       Q     Other than Mr. Straughter?
19                   MR. SCHWARTZ:  Objection.
20             It's privileged, other than the three
21             individuals that Delphi disclosed.
22                   MR. LYONS:   Just so it's
23             clear, you're instructing privilege
24             with respect to anybody other than
25             Straughter or the three employees that
```

65

```
1
2              Delphi disclosed?
```

Page 55

```
                              IC0225b.txt
 3                       MR. SCHWARTZ:  Correct.
 4                       THE WITNESS:  But I think I
 5               can say that -- I'm sorry.  I can't.
 6               We're in discovery in the federal
 7               court action.
 8                       MR. SCHWARTZ:  Yes, the
 9               investigation is ongoing, but --
10                       THE WITNESS:  I've provided my
11               initial disclosures to Delphi.
12                       MR. SCHWARTZ:  That's okay.
13         Q     But I'm just clarifying you're
14   refusing to answer the question.  Let me rephrase
15   that.
16                       MR. LYONS:  You're instructing
17               the witness not to identify other
18               Delphi employees suffering the adverse
19               acts from Delphi's alleged medical
20               release form policy based upon the
21               three privileges?
22                       MR. SCHWARTZ:  I don't think I
23               can assert deliberative process on
24               this one, but work product and
25               attorney-client, yes.  And I'll say
```

                                                  66
```
 1
 2               also I think in a very real sense, all
 3               Delphi employees who are subject to
 4               that illegal policy are harmed by it.
 5               Even those that comply with it are
 6               harmed by it.
 7                       THE WITNESS:  That reflects
                         Page 56
```

IC0225b.txt

```
 8              our position.
 9                      MR. LYONS:  I think we had a
10              clear answer, but I'm not sure.
11                      MR. SCHWARTZ:  We will not
12              disclose with specificity Delphi
13              employees, other than Mr. Straughter
14              and the three employees Delphi
15              disclosed back to the EEOC that were
16              harmed by the policies.
17                      MR. LYONS:  And when you mean
18              disclose with specificity, you won't
19              identify?
20                      MR. SCHWARTZ:  I won't give
21              you their names, correct.
22         Q    Do such employees exist?
23         A    I can't answer that question.
24    That's information that's within Delphi's control.
25         Q    Well, to the EEOC's knowledge, do
```

                                              67

```
 1
 2    any employees, not by name, but do any other
 3    Delphi employees, other than Mr. Straughter or the
 4    three disclosed in Delphi's information statement,
 5    exist that suffered harm as a result of Delphi's
 6    alleged illegal policy?
 7         A    I have every reason to believe that
 8    Delphi has subjected numerous employees to this
 9    illegal policy, so, yes, those employees exist.
10         Q    Well, explain this every reason?
11         A    Delphi indicated in the
```

                        Page 57

IC0225b.txt

12    investigation and papers that you have in front of

13    you that it subjects every employee who is out

14    sick to this illegal inquiry.

15         Q    And have employees suffered harm as

16    a result of this allegedly illegal policy, in the

17    EEOC's view?

18         A    Yes.

19         Q    Has the EEOC quantified that harm on

20    an individual-by-individual basis?

21              MR. SCHWARTZ:  Objection to

22              the form.

23              THE WITNESS:  we have an

24              obligation under Rule 26 of the

25              Federal Rules of Civil Procedure to

                                              68

1

2              disclose to Delphi individuals with

3              knowledge of the claim in this case

4              and calculation of their damages.  We

5              have satisfied our obligations under

6              that rule.

7         Q    So --

8         A    We have an ongoing obligation,

9    however.

10        Q    So all of EEOC's information on

11   individual employees who suffered harm is

12   reflected in the Rule 26 disclosures?

13        A    We haven't had discovery in that

14   case yet, so --

15        Q    So the EEOC has made no disclosures

16   to date?

                    Page 58

IC0225b.txt

17          A     We have made Rule 26 disclosures,
18     yes.
19          Q     And those disclosures have
20     identified the universe of employees who have
21     suffered harm as a result of Delphi's allegedly
22     illegal policies?
23          A     Oh, no, I certainly wouldn't say
24     that.
25          Q     Then I'm not following.

                                                        69
1
2          A     We don't have access to that
3     universe.
4          Q     That's my question.  To the EEOC's
5     knowledge -- again, I preface my question to the
6     EEOC's knowledge.  The EEOC has disclosed
7     employees who the EEOC is aware may have suffered
8     damages as a result of Delphi's illegal policies?
9          A     Yes.
10          Q     The EEOC hasn't failed to disclose
11     someone who the EEOC is aware of who has suffered
12     harm as a result of Delphi's illegal policies?
13          A     No.
14                    MR. LYONS:  I think I'm done.
15                    (Whereupon, the deposition
16                concluded at 9:27 p.m.)
17
18
19
20

                    Page 59

IC0225b.txt

21

22

23

24

25


70
1

2                           C A P T I O N

3

4      The Deposition of MARGARET MALLOY, taken in the

5      matter, on the date, and at the time and place set

6      out on the title page hereof.

7

8

9      It was requested that the deposition be taken by

10     the reporter and that same be reduced to

11     typewritten form.

12

13

14     It was agreed by and between counsel and the

15     parties that the Deponent will read and sign the

16     transcript of said deposition.

17

18

19

20

21

22

23

24

25

Page 60

IC0225b.txt

                                                                    71
1
2                        C E R T I F I C A T E
3
4      STATE OF_____:
5      COUNTY/CITY OF_____:
6
7      Before me, this day, personally appeared
8      MARGARET MALLOY, who, being duly sworn, states
9      that the foregoing transcript of his/her
10     Deposition, taken in the matter, on the date, and
11     at the time and place set out on the title page
12     hereof, constitutes a true and accurate transcript
13     of said deposition.
14
15
16                     _____
                            MARGARET MALLOY
17
18
19     SUBSCRIBED and SWORN to before me this_____
20     day of _____, 2007, in the
21     jurisdiction aforesaid.
22
23
24     _____        _____
25     My Commission Expires            Notary Public


                                                                    72
1
2                      DEPOSITION ERRATA SHEET

                              Page 61

```
                            IC0225b.txt
3   RE:
    FILE NO.
4   CASE CAPTION:    IN RE:  DELPHI

5   DEPONENT:  MARGARET MALLOY
    DEPOSITION DATE: FEBRUARY 25, 2008
6
    To the Reporter:
7   I have read the entire transcript of my Deposition
    taken in the captioned matter or the same has been
8   read to me.  I request for the following changes
    be entered upon the record for the reasons
9   indicated.
    I have signed my name to the Errata Sheet and the
10  appropriate Certificate and authorize you to
    attach both to the original transcript.
11  _____

12  _____

13  _____

14  _____

15  _____

16  _____

17  _____

18  _____

19  _____

20  _____

21  _____

22  _____

23  _____

24  SIGNATURE:_____ DATE:_____

25             MARGARET MALLOY


                                                73
1

2                      I N D E X

3

4                   E X H I B I T S

5
    Malloy              Description              Page
6   For Ident.

7   1       Declaration of Margaret Malloy.       8
                       Page 62
```

IC0225b.txt

| 8 | 2 | Exhibits to declaration of Margaret Malloy. | 8 |
| 9 | | | |
| 10 | 3 | Declaration of Margaret Malloy. | 35 |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

74

1
2                    C E R T I F I C A T E
3    STATE OF NEW YORK  )
4                       ) ss.
5    COUNTY OF NEW YORK )
6                  I, I. IRIS COOPER, a Shorthand
7              (Stenotype) Reporter and Notary Public
8              of the State of New York, do hereby
9              certify that the foregoing Deposition,
10             of the witness, MARGARET MALLOY, taken
11             at the time and place aforesaid, is a

Page 63

IC0225b.txt
12                    true and correct transcription of my

13                    shorthand notes.

14                         I further certify that I am

15                    neither counsel for nor related to any

16                    party to said action, nor in any wise

17                    interested in the result or outcome

18                    thereof.

19                         IN WITNESS WHEREOF, I have

20                    hereunto set my hand this 27th day of

21                    February, 2008.

22

23                    _____

24                         I. Iris Cooper

25

# EXHIBIT 3

Hearing Date & Time: February 29, 2008 at 10:00 a.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                 :

       In re                           :     Chapter 11
                                   :
DELPHI CORPORATION, et al.,          :     Case No. 05-44481 (RDD)
                                   :
                                   :     (Jointly Administered)
                Debtors.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS' OBJECTION TO UNITED STATES OF AMERICA'S MOTION FOR LEAVE TO FILE LATE CLAIM

("GERSHBEIN DECLARATION—EEOC")

I, Evan Gershbein, state as follows:

1.    I am over eighteen years of age and not a party to the above-captioned cases. I believe the statements contained herein are true based on my personal knowledge. I am one of the Senior Consultants employed by Kurtzman Carson Consultants LLC ("KCC") and my business address is 2335 Alaska Avenue, El Segundo, California 90245. KCC was retained as the noticing agent pursuant to the Final Order Under 28 U.S.C. § 156(c) Authorizing Retention And Appointment Of Kurtzman Carson Consultants LLC As Claims, Noticing, And Balloting Agent for Clerk Of Bankruptcy Court entered by this Court on December 1, 2005 (Docket No. 1374) in the chapter 11 cases of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"). I am familiar with KCC's routine practices and procedures for the mailing of notices and other pleadings. This declaration is based upon my personal knowledge, except as to such matters as are stated upon information and belief.

2.    KCC has been the claims and noticing agent for numerous large bankruptcy cases. To fulfill this role, we have established a number of safeguards to make certain that notices and other pleadings are served in a proper manner. Our service procedures are specifically designed to insure that documents are always properly addressed and mailed. Our procedures for mailing documents, including bar date notices in chapter 11 cases, are generally outlined as follows:

    a. Placement Of Documents Into An Envelope: When mailing out notices of a bar date ("Bar Date Notices"), KCC generates a personalized proof of claim form for each party on a relevant

service list, collates that personalized proof of claim form with a
Bar Date Notice, and places both documents into an envelope.
These tasks are performed by the KCC Production Department.

b.      Affixing Of The Proper Postage:   Once we review and approve
random samples of completed packages, employees assigned to the
KCC Production Department apply the proper postage to all
completed packages prior to mailing.

c.      Placing Of Letter Into An Outgoing Mail Receptacle:  Depending
upon the completion time of the mailing, we either direct our
regular courier to take the mail directly to a post office (or post
offices, if necessary) or we physically deliver it to a post office
ourselves.  For the Debtors' Bar Date Notice we served in the
above captioned cases, our regular courier delivered the Bar Date
Notice packages to a post office facility in Los Angeles, California
on April 20, 2006.

d.      Retention Of Electronic Data Files:  KCC retains the electronic
data files used to create the personalized proof of claim forms.

e.      Records Of Each Mailing:  I execute and file affidavits of service
for most mailings.  I include a specific service list containing a
listing of all parties to receive a notice of an order in my notarized
and filed affidavits of service.

      f.    <u>Monitoring Of Returned Mail</u>:  We preprint the return address (<u>i.e.</u>, KCC's address) on our envelopes.  We receive and carefully maintain the mail sent out and returned to our office.

3.    In preparation of the mailing of the Debtors' Bar Date Notice, I personally supervised the following:

      a.    <u>Creation Of Data Files Used To Merge Address Information Into Notices</u>:  I directed the reformatting of the Debtors' Bar Date Notice data files, including the extraction and incorporation of the various claimants' address information from KCC's database into those data files.

      b.    <u>Submit Data Files And Bar Date Notice To Production Staff</u>:  My colleagues and I provided the data files and the Debtors' Bar Date Notices to a technological programming consultant, an employee who is trained to operate the software used by KCC to generate personalized proof of claim forms.

      c.    <u>Monitor Preparation Of Merge Project</u>:  I monitored the creation of the process by which we merged the data files to prepare the envelopes containing the Debtors' Bar Date Notices for mailing.  I, along with another KCC employee, reviewed and approved samples of printed copies of proof of claim forms with the merged mailing addresses and instructed a technological programming consultant to print hard copies of the Debtors' Bar Date Notices for the service.

d.  Review printed documents: I reviewed and approved samples of the printed copies of the Debtors' Bar Date Notice for service.

e.  Collating and inserting documents into windowed envelopes: After receiving approval, the KCC Production Department collated and inserted the proof of claim forms and the Debtors' Bar Date Notice into windowed envelopes, with the claimants' addresses showing through the windowed section of the envelopes.

f.  Review and finalize completed packages: I reviewed samples of completed packages. Afterwards, my colleagues and I provided our Production Department with the approval for sealing, applying postage and delivering all packages to the post office. Throughout the merging, printing and inserting portions of the project, all packages to be sent to foreign addresses are processed and metered separately. It is KCC's procedure to notify me of any problems with or deviation from KCC's normal procedures in relation to the service of any Delphi documents. With respect to the mailing of the Bar Date Notice to the appropriate parties, including the EEOC, I was not notified of any such problem or deviation.

4.  On April 20, 2006, KCC served copies of the Bar Date Notice on the following entity and person:

EEOC
1801 L St Nw
Washington, DC 20507

David N Kelley USA
US Attorney S District of NY
One St Andrews Plaza

New York, NY 10007

These names and addresses were provided by the Debtors as a part of the "creditor matrix" (the "Creditor Matrix"), which is a list of each entity and person that was listed on the Debtors' Schedules Of Assets And Liabilities (the "Schedules") filed in the above captioned cases, or was identified by the Debtors as potentially having a claim against the Debtors.

5.    KCC sent the Bar Date Notice to every entity listed on the Creditor Matrix.  If potentially duplicate entries on the Creditor Matrix did not contain exactly the same name and address, the Bar Date Notice was sent to both entries.

6.    Neither of the packages sent to the EEOC or David N. Kelley were returned to KCC as undeliverable.

7.    In addition to mailing the Debtors' Bar Date Notices to the EEOC at the address listed above, KCC arranged to have the Debtors' Bar Date Notices published in 38 newspapers, including the European edition of the Wall Street Journal and the international edition of USA Today.   We also posted the Debtors' Bar Date Notices on the informational website established and maintained by KCC for the Debtors' cases, which is found at www.delphidocket.com.

8.    To the best of my knowledge, information and belief, I hereby declare and state that the foregoing information is true and correct.

Executed on February 27, 2008, at Los Angeles, California.

Evan Gershbein

# EXHIBIT 4

Dean Unrue declares as follows:

1.         Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates
(the "Debtors") are debtors and debtors-in-possession in these chapter 11 cases. I submit this
declaration in support of the Debtors' Objection To United States Of America's Motion For
Leave To File Late Claim. Capitalized terms not otherwise defined in this declaration have the
meanings ascribed to them in the Debtors' Objection To United States Of America's Motion For
Leave To File Late Claim.

2.         Except as otherwise indicated, all facts set forth in this declaration are
based upon my personal knowledge and my review of relevant documents and data. If I were
called upon to testify, I could and would testify to the facts set forth herein.

3.         Since 2006, I have served as the Delphi Claims Administrator, responsible
for overseeing the reconciliation and settlement of all proofs of claim filed against Delphi in
these chapter 11 cases. I am responsible for, among other things, overseeing the investigation
into and reconciliation of proof of claim number 16727 (the "Claim") filed by the Equal
Employment Opportunity Commission ("EEOC").

Prejudice Caused By Late-Filed Claims

4.         On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),
501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)
Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice
Thereof (Docket No. 3206) (the "Bar Date Order"). Among other things, the Bar Date Order
established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or
wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) against a Debtor to file
a proof of claim with respect to each such Claim.

2

5.      Delphi compiled a list of substantially all current and former employees

working for the Debtors (the "Employee List"). Delphi provided the Employee List to Kurtzman

Carson Consultants LLC ("KCC"), the noticing agent in these chapter 11 cases, as a part of the

"creditor matrix," which is a list of each entity and person that was listed on the Schedules Of

Assets And Liabilities filed by the Debtors in these chapter 11 cases or was identified by the

Debtors as potentially having a claim against the Debtors, including all employees as of the

Petition Date (the "Bar Date Notice Parties").

6.      On or prior to April 20, 2006, KCC, provided notice of the Bar Date to the

Bar Date Notice Parties by mailing a notice of Bar Date approved by this Court, together with a

proof of claim form.

7.      On October 17, 2007, over a year after the Bar Date, the EEOC filed the

Claim against Delphi asserting an unsecured non-priority claim in an unliquidated amount

stemming from the alleged violations as set forth in the Lawsuit. The Claim describes the

following events:

- a.      On September 22, 2006, Stanely Straughter filed a complaint of discrimination against the Debtors with the EEOC.
- b.      On September 28, 2007, the EEOC filed a complaint against Delphi in the United States District Court for the Western District of New York, alleging violations of the Americans with Disabilities Act of 1990 and the Civil Rights Act of 1991 (the "Lawsuit"). The Lawsuit alleges that Stanley Straughter was hired by the Debtors on May 22, 2006, and discharged by the Debtors on August 17, 2006, in violation of the Americans with Disabilities Act of 1990 and the Civil Rights Act of 1991.

8.      Throughout the summer and fall of 2006, the Debtors were heavily

involved in framework discussions with their key stakeholders to come to an agreement on a

plan for the Debtors' emergence from chapter 11. It became apparent that the Debtors' ability to

3

consummate a framework agreement, and obtain necessary funding from outside investors, was predicated upon a clear understanding of the scope of the general unsecured claims that would ultimately be allowed in these cases. To that end, in October and November 2006, the Debtors began a massive internal claims estimation effort to gauge the scope and amount of general unsecured claims anticipated at emergence from chapter 11 and devised detailed claims administration procedures to efficiently and expeditiously adjudicate disputed and unliquidated claims.

9.    On December 18, 2006, the Debtors announced their execution of an equity purchase and commitment agreement with the Plan Investors and a plan framework support agreement with those investors and General Motors Corporation, both of which contained the EPCA Target, a limit on trade and other unsecured claims that could not be exceeded as a condition to plan funding.

10.    The Debtors then began an extensive claims administration process designed to expeditiously reduce the claims pool to meet the EPCA Target, filing 27 omnibus claims objections to date.

11.    Throughout late 2006 and into 2007, the EPCA Target was modified to account for progress made during Delphi's expedited claims administration process and to otherwise update claims estimates. In early September 2007, the EPCA Target was finalized at $1.45 billion and incorporated into Delphi's plan of reorganization (the "Plan").

12.    In the year and a half since the Bar Date and the fifteen months since the commencement of the internal claims estimation effort, the Debtors have achieved great progress towards achieving the EPCA Target.

4

13.    Had the EEOC filed its untimely unliquidated Proof of Claim a year

earlier, when it first acquired actual notice of an alleged violation from Mr. Straughter's formal

executed complaint against Delphi, the Debtors would have been able to include the Proof of

Claim in its internal claims estimation process that ultimately established the EPCA Target.

Opening the door to late claims such as the EEOC's claim, after the EPCA Target has been set

and the Plan confirmed, would not only erode progress the Debtors have made in further

reducing claims below the EPCA Target but could also threaten the Debtors' ability to emerge

from chapter 11.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the

foregoing statements are true and correct.


Executed on February 28, 2008 in Troy Michigan.


_Dean R Unrue_

Dean R. Unrue

5

# EXHIBIT 5

56789 GERSHBEIN.txt

1

```
 1
 2  UNITED STATES DISTRICT COURT
 3  SOUTHERN DISTRICT OF NEW YORK
 4  Case No. 05-44481 (RDD)
 5  ----------------------------------x
 6  IN RE:
 7
 8  DELPHI CORPORATION, et al..
 9
10  ----------------------------------x
11                  February 28, 2008
12                  8:07 p.m.
13
14
15            Deposition of EVAN GERSHBEIN,
16  pursuant to Notice, held at the offices of
17  Skadden Arps Slate Meagher & Flom, LLP, 4
18  Times Square, New York, New York, before
19  Jineen Pavesi, a Registered Professional
20  Reporter, Registered Merit Reporter,
21  Certified Realtime Reporter and Notary
22  Public of the State of New York.
23
24
25
```
[]

2

```
 1
 2  A P P E A R A N C E S :
```

56789 GERSHBEIN.txt
3

4  U.S. DEPARTMENT OF JUSTICE

5  U.S. ATTORNEY'S OFFICE

6  SOUTHERN DISTRICT OF NEW YORK

7  86 Chambers Street

8  New York, New York 10007

9              Attorneys for United States

10             of America

11

12  BY:      MATTHEW L. SCHWARTZ, ESQ.

13             matthew.schwartz@usdoj.gov

14

15

16  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

17  333 West Wacker

18  Chicago, Illinois 60606

19             Attorneys for Delphi

20             Corporation

21

22  BY:      LISA DIAZ, ESQ.

23             lisa.diaz@skadden.com

24

25

□

                                         3

1

2  E V A N   G E R S H B E I N,

3  having first been duly sworn by a Notary

4  Public of the State of New York, was

5  examined and testified as follows:

6  EXAMINATION BY

7  MR. SCHWARTZ:
                         Page 2

56789 GERSHBEIN.txt

8    Q.    Good morning, Mr. Gershbein,

9    how are you?

10    A.    Good.

11    Q.    My name is Matthew Schwartz, I

12    am an assistant United States attorney for

13    the Southern District of New York and I

14    represent the United States of America in

15    connection with various claims in the

16    Delphi bankruptcy.

17         Are you presently employed?

18    A.    Yes.

19    Q.    Where?

20    A.    Kurtzman Carson Consultants

21    LLC.

22    Q.    What is your position -- if I

23    call it KCC, is that all right?

24    A.    Fine.

25    Q.    What is your position?

                                          4

1              GERSHBEIN

2    A.    I am a senior consultant.

3    Q.    In connection with your job as

4    a senior consultant at KCC, do you have

5    responsibilities with respect to the

6    Delphi Corporation?

7    A.    I do.

8    Q.    Can you describe those

9    responsibilities.

10    A.    They are varied and many; they

11    include performing and overseeing mailings

                    Page 3

56789 GERSHBEIN.txt
12  on a daily basis, they include maintaining

13  the claims register and claims that come

14  in, processing those claims and handling

15  claim objections and stipulations, they

16  include many other things which kind of

17  escape me at the moment.

18      Q.      You said one of your

19  responsibilities was mailings?

20      A.      Yes.

21      Q.      Can you describe that with a

22  little bit more detail.

23      A.      Delphi's attorneys serve

24  various different pleadings and we are

25  charged with performing those mailings or

⬚

5

1               GERSHBEIN

2  noticing on their behalf.

3      Q.      In connection with a motion

4  made by the United States of America for

5  leave to file a late claim, have you

6  submitted a declaration?

7      A.      This is motion filed by the

8  U.S., so our office wouldn't have served

9  it then.

10      Q.      Have you submitted a

11  declaration, you personally, have you

12  submitted a declaration in connection with

13  a motion made by the United States of

14  America for leave to file a late claim?

15      A.      I submitted a declaration, yes.

16      Q.      Do you have a copy of that?
                        Page 4

56789 GERSHBEIN.txt

17      A.      I believe there is a copy here,
18  yes.
19      Q.      In paragraph 2 of your
20  declaration you describe KCC's procedures
21  for mailing documents, is that correct?
22      A.      That's correct.
23      Q.      Are those procedures that KCC
24  uses generally when mailing documents?
25      A.      These generally outline

▯

                                              6

1               GERSHBEIN
2   mailings that we use at KCC, yes.
3      Q.       Is there anything specific
4   about the procedures outlined in paragraph
5   2, including subparagraphs 2 A through F,
6   about the mailing of bar date notices?
7      A.       All of them pertain to the
8   mailing of a bar date notice.
9      Q.       What I am asking is, is there
10  any part of this procedure that is
11  specific to the procedure for mailing bar
12  date notices?
13     A.       As opposed to a different type
14  of mailing?
15     Q.       Exactly.
16              (Witness perusing document.)
17     A.       No, they are general for all
18  mailings.
19     Q.       In paragraph 3 of your
20  declaration, you describe some steps that

                    Page 5

56789 GERSHBEIN.txt
21  you took in connection with the mailing of

22  Delphi's bar date notice, is that correct?

23      A.      That is correct.

24      Q.      Incidentally, in your

25  declaration, when you refer to the bar

☐

7

1                   GERSHBEIN

2  date notice, what does that actually refer

3  to?

4      A.      It is the notice of bar date

5  that describes the order -- I don't have

6  a copy of the notice of bar date in front

7  of me and it has been two years, but I

8  would assume it describes the deadline for

9  which proofs of claim would need to be

10  filed in connection with the order for the

11  bar date motion.

12      Q.      Bar date notice is something

13  different than the bar date order, is that

14  right?

15      A.      That is true.

16      Q.      And your declaration is about

17  the mailing of the bar date notice?

18      A.      And proof of claim forms, yes.

19      Q.      But not the bar date order?

20      A.      That would be correct.

21      Q.      In paragraph 4 of your

22  declaration you write that "KCC served

23  copies of the bar date notice," and you

24  list two addresses.

25      A.      Yes.

Page 6

56789 GERSHBEIN.txt

⧠

8

1              GERSHBEIN
2      Q.      How do you know KCC served
3   copies of the bar date notice on those two
4   entities?
5      A.      I reviewed the files used
6   directly to create the personalized proof
7   of claim forms which we served upon all --
8   the entire creditor matrix and these two
9   parties were located there.
10     Q.      What method of mail did you
11  use?
12     A.      First class mail.
13     Q.      So there is no return receipt?
14     A.      That would be correct.
15     Q.      No actual proof of delivery?
16     A.      That's correct.
17     Q.      Where did you get these two
18  names and addresses from?
19     A.      From those files used to create
20  the personalized proof of claim forms.
21     Q.      Who gave you those files?
22     A.      Well, there are a few different
23  steps in between, but those files came
24  from our database of the current state of
25  the creditor matrix at that time.

⧠

9

1              GERSHBEIN
2              If you're asking for the
                  Page 7

56789 GERSHBEIN.txt

 3  original source of the creditor matrix,

 4  that would have been by debtors' financial

 5  advisers.

 6      Q.      In the first place, debtors'

 7  financial advisers provided you with

 8  creditors matrix and that's where you got

 9  these addresses from?

10      A.      That's correct.

11      Q.      So do you have any knowledge

12  about whether this is the correct address

13  to mail bar date notice for the EEOC?

14      A.      I do not.

15      Q.      Do you know what the EEOC is?

16      A.      The Equal Employment

17  Opportunity Commission.

18      Q.      Do you know who the United

19  States attorney for the Southern District

20  of New York is?

21      A.      I do not.

22      Q.      Do you know who was on April

23  20, 2006?

24      A.      I know one of the addresses we

25  served was David N. Kelly, U.S.A., U.S.

□

                                        10

 1              GERSHBEIN

 2  attorney, Southern District of New York.

 3              I do not know more than that

 4  information.

 5      Q.      Do you even know if David N.

 6  Kelly worked at the United States

 7  attorneys' office on April 20, 2006?
                     Page 8

56789 GERSHBEIN.txt

8    A.    I do not know that information.

9    Q.    So you didn't take any steps to

10   determine whether these were the correct

11   addresses to mail notice to?

12   A.    We serve 600,000 parties; I

13   didn't take any steps.

14   Q.    You were just telling me you

15   know you mailed it to those addresses?

16   A.    Yes.

17   Q.    And the thing that you mailed

18   was the bar date notice and the proof of

19   claim form?

20   A.    That's correct.

21   Q.    But not the bar date order?

22   A.    Correct.

23   Q.    Paragraph 6 you write that

24   neither of the two packages was returned

25   to you as undeliverable, is that right?

11

1              GERSHBEIN

2    A.    That's correct.

3    Q.    In your experience, can you

4    infer from the fact that you did not

5    receive the package back as undeliverable,

6    that it was in fact delivered?

7    A.    I cannot make an inference one

8    way or the other.

9    Q.    Do you know Jennifer Carlo?

10   A.    No.

11   Q.    Do you know whether Jennifer

Page 9

56789 GERSHBEIN.txt

12  Carlo was served with bar date notice?

13      A.      I would have to read my files

14  to determine.

15      Q.      Your declaration, however,

16  includes the sum and substance of the

17  testimony that you would offer if you were

18  called at a hearing on the United States'

19  motion, is that correct?

20      A.      That's correct.

21      Q.      Do you know if the EEOC was

22  served with a bar date notice at any other

23  addresses?

24      A.      I do not offhand without

25  reviewing my files.

□

                                        12


1                GERSHBEIN

2      Q.      You don't know if the Buffalo

3  local office was served?

4      A.      I do not know.

5      Q.      And you don't know if the New

6  York district office was served?

7      A.      I do not know.

8      Q.      Do you know whether the Buffalo

9  local office of the EEOC was investigating

10  the Delphi Corporation in April of 2006?

11      A.      I do not know.

12              MR. SCHWARTZ:  No further

13  questions.

14              (Time noted:  8:12 p.m.)

15              _____

16              EVAN GERSHBEIN

                        Page 10

56789 GERSHBEIN.txt

17

18    Subscribed and sworn to before me

19    this      day of              , 2008.

20

21

22

23

24

25

                                                      13

1

2        C E R T I F I C A T I O N

3

4

5

6      I, Jineen Pavesi, a Registered

7    Professional Reporter, Registered Merit

8    Reporter, Certified Realtime Reporter and

9    a Notary Public, do hereby certify that

10   the foregoing witness, EVAN GERSHBEIN, was

11   duly sworn on the date indicated, and that

12   the foregoing is a true and accurate

13   transcription of my stenographic notes.

14     I further certify that I am not employed

15   by nor related to any party to this

16   action.

17

18

19

20

Page 11

56789 GERSHBEIN.txt

```
21

22

23        JINEEN PAVESI, RPR, RMR, CRR

24

25
```
□

14

```
 1

 2        LITIGATION SUPPORT INDEX

 3

 4

 5     DIRECTION TO WITNESS NOT TO ANSWER

 6     Page        Line        Page        Line

 7   (NONE)

 8

 9

10

11

12

13     REQUEST FOR PRODUCTION OF DOCUMENTS

14     Page        Line        Page        Line

15   (NONE)

16

17

18

19

20          INFORMATION TO BE FURNISHED

21     Page        Line        Page        Line

22   (NONE)

23

24

25
```

Page 12

56789 UNRUE.txt

3

4  U.S. DEPARTMENT OF JUSTICE

5  U.S. ATTORNEY'S OFFICE

6  SOUTHERN DISTRICT OF NEW YORK

7  86 Chambers Street

8  New York, New York 10007

9              Attorneys for United States

10             of America

11

12  BY:       MATTHEW L. SCHWARTZ, ESQ.

13             matthew.schwartz@usdoj.gov

14

15

16  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

17  333 West Wacker

18  Chicago, Illinois 60606

19             Attorneys for Delphi

20             Corporation

21

22  BY:       LISA DIAZ, ESQ.

23              lisa.diaz@skadden.com

24

25

3

1

2  D E A N    U N R U E,

3  having first been duly sworn by a Notary

4  Public of the State of New York, was

56789 UNRUE.txt

8    Q.        Good evening, Mr. Unrue, is it?

9    A.        Yes, it is.

10   Q.        My name is Matthew Schwartz, I

11   am an assistant United States attorney in

12   the Southern District of New York and I

13   represent the United States of America in

14   connection with certain claims being

15   asserted in bankruptcy proceedings of the

16   Delphi Corporation and its affiliated

17   debtors.

18            I am going to ask you a few

19   questions; in particular, about a claim

20   that's being asserted by the Equal

21   Employment Opportunity Commission, which I

22   will refer to as the EEOC.

23            Are you presently employed?

24   A.        Yes.

25   Q.        Where?

                                          4

1                 UNRUE

2    A.        Delphi.

3    Q.        What is your position at the

4    Delphi Corporation?

5    A.        I am the claims administrator.

6    Q.        What does it mean to be the

7    claims administrator?

8    A.        To oversee the reconciliation

9    and settlement of the proofs of claim

10   filed in our case, our bankruptcy case,

11   sorry.

                    Page 3

56789 UNRUE.txt
12      Q.      In connection with your

13  position as claims administrator, did you

14  submit a declaration in opposition to a

15  motion submitted by the United States of

16  America for leave to file a late proof of

17  claim?

18      A.      Yes.

19      Q.      Do you have a copy in front of

20  you?

21      A.      Yes, I do.

22      Q.      I would ask you a few questions

23  about what you have written, but before I

24  do that, let me ask you this.

25              Does this declaration describe

                                                5


1                   UNRUE

2   the entirety of your testimony that you

3   would offer if you were called at a

4   hearing on the late claim motion?

5       A.      Yes.

6       Q.      Is it fair to say generally

7   that the subject on which you would

8   testify is is alleged prejudice to Delphi

9   if the United States were permitted to

10  file a late claim?

11      A.      That's correct.

12      Q.      Or United States on behalf of

13  EEOC.

14      A.      Yes.

15      Q.      Can you tell me what the

16  prejudice would be to the Delphi
                        Page 4

56789 UNRUE.txt

17  Corporation if the EEOC were permitted to

18  file its claim?

19      A.      Yes; if the EEOC were permitted

20  to file its claim excessively beyond the

21  bar date that we established, that could

22  maybe open the flood gate for other claims

23  to come in late.

24              Secondly, it is an unliquidated

25  claim and we need to value all of our

[]

6

1                   UNRUE

2  claims.

3      Q.      Any other reason why Delphi

4  would be prejudiced if the EEOC's claim

5  were allowed?

6      A.      Those are the two main reasons.

7      Q.      Anything else you can think of?

8      A.      No.

9      Q.      Let's talk about them

10  one-by-one.

11              The first was that allowing the

12  claim could open up flood gate to other

13  similar claims, is that right?

14      A.      We have a bar date of July 31st

15  and I rely on the bar date in order to

16  reconcile our claims.

17      Q.      What I thought I heard you say

18  before, though, was that one of the

19  prejudices of allowing the EEOC's claim to

20  be filed would be that that could open the

Page 5

56789 UNRUE.txt
21  flood gates for other claims also to be

22  filed late?

23      A.      I did say that, yes.

24      Q.      And that was one of the two

25  prejudices that you identified, correct?

☐

7

1                   UNRUE

2      A.      Correct.

3      Q.      Can you tell me what it is

4  about the EEOC claim in particular that

5  leads you to believe that allowing it to

6  be filed would open the flood gates to

7  other claims?

8      A.      Nothing in particular about the

9  EEOC claim; just the fact that it is a

10  proof of claim that's filed late.

11      Q.      Are there other claims, other

12  late claims, filed in the Delphi

13  bankruptcy by governmental agencies?

14      A.      I believe the EEOC has other

15  claims, I believe taxing authorities have

16  filed late claims in this case.

17      Q.      You believe the EEOC has other

18  late claims?

19      A.      Yes.

20      Q.      which claims are those?

21      A.      I believe they filed

22  duplicative claim of this claim.

23      Q.      Other than taxing authorities,

24  are you aware of any other governmental

25  agencies or entities that have filed late
                    Page 6

56789 UNRUE.txt

8

1                    UNRUE
2    claims?
3        A.      Not that I can think of.
4        Q.      The other prejudice that you
5    identified was the fact that this claim
6    happens to be unliquidated, is that right?
7        A.      That's correct.
8        Q.      Can you explain why that
9    prejudices Delphi?
10       A.      Yes.
11               We estimated all of our timely
12   filed proofs of claim in the fall of 2006
13   to determine our value of our timely filed
14   claims pool.
15               Ultimately in September, when
16   the plan was filed, the equity purchase
17   and commitment agreement, the EPCA, held a
18   cap of 1.45 billion, so in order to make
19   our constituents comfortable that we could
20   meet that requirement, we need to be at or
21   under 1.45 billion and as such one of our
22   requirements is to liquidate our claims.
23       Q.      And so is the EPCA requirement
24   that at the end of the process there be no
25   more than $1.45 billion in allowed general

9

1                    UNRUE
2    unsecured claims, did I understand that

Page 7

                          56789 UNRUE.txt
 3  right?

 4      A.      The 1.45 billion is the cap on

 5  general unsecured claims, that's correct.

 6      Q.      On allowed claims?

 7      A.      On allowed claims, that's

 8  right.

 9      Q.      And so you enter into the

10  stimulation process to try and cap all the

11  claims to insure that, even if they were

12  all allowed, they would be allowed at less

13  than 1.45 billion in aggregate, is that

14  right?

15      A.      That's correct.

16      Q.      How many unliquidated general

17  unsecured claims are there currently in

18  the Delphi bankruptcy?

19      A.      Approximately seven.

20      Q.      Seven?

21      A.      Yes.

22      Q.      What are they?

23      A.      Well, there are some premise

24  litigation type claims, I think, and there

25  I believe is unliquidated portions of

□

                                          10

 1                    UNRUE

 2  general unsecured claims and there are I

 3  think still some patent infringement type

 4  claims.

 5                  Primarily legal-related claims.

 6      Q.      Maybe I didn't understand you

 7  before.

                    Page 8

56789 UNRUE.txt

8              I thought you said there were
9   seven unliquidated claims remaining.
10     A.     I don't recall the exact
11   number; there is a handful of unliquidated
12   claims remaining.
13     Q.     But you don't know who the
14   claimants are?
15     A.     Yes, I know who some of the
16   claimants are.
17     Q.     Who are they.
18     A.     well, I don't know -- is it
19   appropriate for me to mention individuals'
20   names?
21     Q.     If they filed claims in the
22   bankruptcy, you surely can.
23     A.     I think there is a claim from a
24   Shapiro --
25              MS. DIAZ:  Can we have a

                                          11

1              UNRUE
2   second.
3              MR. SCHWARTZ:  Sure.
4              (witness and counsel conferring
5   off the record.)
6     A.     There is a claim I believe from
7   Universal Tool that has an unliquidated
8   portion remaining, if it hasn't yet been
9   settled.
10              I am not sure I recall the
11   names of the others.
                         Page 9

56789 UNRUE.txt
12      Q.      Are there any other

13   unliquidated claims by governmental

14   agencies?

15      A.      There was recently a claim that

16   was capped, so I believe the answer is no.

17      Q.      Which claim are you referring

18   to?

19      A.      The U.S. Customs Department.

20      Q.      Now that the Customs claim has

21   been capped, is it your testimony that

22   there are not any governmental agencies

23   that hold unliquidated claims, other than

24   EEOC potentially?

25              MS. DIAZ:  Object to form.

⬚

12

1               UNRUE

2      A.      As I mentioned, I don't recall

3   all of the names of those claimants.

4      Q.      As you sit here today, you

5   can't think of any other governmental

6   agencies that hold unliquidated claims,

7   can you?

8              MS. DIAZ:  Objection.

9              You can answer the question.

10      A.      Correct, I can't think of any.

11      Q.      If I told you that the United

12   States Department of Health and Human

13   Services held an unliquidated general

14   unsecured claim that was timely filed,

15   would that refresh your recollection?

16      A.      No, actually it wouldn't.
                     Page 10

56789 UNRUE.txt

17    Q.    You're not aware of Health and

18  Human Services having an unliquidated

19  claim?

20    A.    I am not aware of it being

21  currently categorized as a general

22  unsecured claim.

23    Q.    Now that there are only a

24  handful of unliquidated claims, what is

25  the aggregate cap number of the general

                                                13

1                UNRUE

2  unsecured claims that have been liquidated

3  or capped?

4    A.    I am not sure I understand the

5  question, sorry.

6    Q.    In other words, you told me

7  that cap number, 1.45 billion, has to

8  represent the maximum amount of aggregate

9  allowed of general unsecured claims,

10  right?

11    A.    Yes.

12    Q.    I am saying now that you have

13  liquidated or capped almost every general

14  unsecured claim, what is their aggregate

15  value?

16    A.    The allowed amount and then the

17  estimated amount of those that are not yet

18  resolved?

19    Q.    Exactly.

20        MS. DIAZ:  Objection,

                    Page 11

56789 UNRUE.txt

21  privilege.

22              (Witness and counsel conferring

23  off the record.)

24              MS. DIAZ:  He can answer if you

25  want to ask in pieces, he can answer part

                                        14


1                    UNRUE

2  of those pieces.

3              MR. SCHWARTZ:  Which is the

4  privileged piece?

5              MS. DIAZ:  The estimation.

6              MR. SCHWARTZ:  Aren't the

7  estimations consensual and so ordered by

8  the court?

9              MS. DIAZ:  The estimations; it

10  depends on what kind of estimation you're

11  asking.

12              If you're asking for what is

13  Delphi's internal estimate, I guess --

14              MR. SCHWARTZ:  No, I am not

15  asking that at all.

16      Q.      An unsecured claim has a face

17  value, right, I assert a claim in X

18  dollars--

19      A.      An asserted amount.

20      Q.      And some of the claims were

21  asserted as unliquidated, in other words,

22  not in a sum certain, correct?

23      A.      Correct.

24      Q.      And for those claims, except

25  for the handful we talked about, you have
                    Page 12

56789 UNRUE.txt

15

1                    UNRUE
2    either capped them or liquidated them,
3    correct?
4        A.       That's correct.
5        Q.       What I am asking you now is
6    what is the aggregate value of the capped
7    claims plus the face value of the claims
8    that were liquidated all along.
9        A.       Well, I think to your point, to
10   Lisa's point, we have adjourned claims,
11   claims we have sought to object to in the
12   value of our books and records, thus our
13   internal estimates versus the asserted
14   amount.
15       Q.       Now I am asking for the big
16   number, the asserted amount.
17       A.       We're currently at 1.426
18   billion; approximately 24 million under
19   the EPCA.
20       Q.       If every general unsecured
21   claim, except for that handful of
22   unliquidated claims, were allowed and
23   allowed in the full amount asserted,
24   you're telling me that totals 1.426
25   billion?

16

1                    UNRUE
2        A.       The 1.426 does include the

Page 13

56789 UNRUE.txt
3  handful of unliquidated claims.

4      Q.      It does?

5      A.      The count of claims includes

6  those unliquidated claims at our internal

7  estimate.

8      Q.      So $1.426 billion is now what

9  Delphi believes is its worst case

10  scenario, the biggest aggregate allowed

11  claim?

12     A.      When you include claims that

13  are ordered, capped or estimated, and are

14  internal estimates for unliquidated

15  claims.

16     Q.      That was a yes?

17     A.      Yes.

18     Q.      1.426 billion, you said 24

19  million less than the EPCA amount?

20     A.      The EPCA cap is 1.45 billion.

21     Q.      24 million more than 15

22  million, 24 million is more than 15

23  million, is that correct?

24     A.      That's correct.

25     Q.      Tell me again how, if the EEOC

17

1              UNRUE

2  claim were allowed by itself, it would

3  prejudice you because it was unliquidated.

4      A.      I am not sure I understand the

5  question, when you say by itself.

6      Q.      What if I told you that the

7  EEOC claim was worth less than $24
                Page 14

56789 UNRUE.txt

8  million, I want you to assume that, that

9  we could liquidate it to $24 million or

10  less.

11            If that were the case, you

12  would agree with me, would you not, that

13  you would not, Delphi would not be

14  prejudiced by permitting that claim to be

15  filed at least with respect to the EPCA

16  cap?

17  A.       If all of our adjourned claims

18  were found in our favor and all of our

19  unliquidated claims were resolved at our

20  internal estimates and nobody else was

21  allowed to file a late claim with

22  liquidated values, then I suppose that

23  would be correct.

24  Q.       And I think maybe we weren't on

25  the same page a moment ago.

☐

18

1            UNRUE

2            I thought, and please correct

3  me if I am wrong, that you said the $1.426

4  billion figure was the worst case scenario

5  for Delphi, in other words, if you lost on

6  every objection and every claim were

7  allowed in its asserted amount.

8  A.       Excluding the handful and

9  partially unliquidated claims and assuming

10  in our adjourned claims there wasn't a

11  claim somehow found in excess of the

Page 15

56789 UNRUE.txt

12  asserted amount and assuming that nobody

13  else filed a late claim.

14      Q.      So we're on the same page;

15  1.426 is the worst case scenario, but

16  we're still carving out those handful of

17  unliquidated claims because we don't know

18  what they are worth.

19      A.      Right, and I think the

20  assumption is there is not additional late

21  claims that continue to add value.

22      Q.      That's the flood gate concern,

23  I am talking about the EPCA concern; I am

24  trying to separate that out.

25              You don't disagree with that

□

                                                    19

1                   UNRUE

2  way of thinking, do you?

3      A.      No, I don't.

4      Q.      Does Delphi have a valuation of

5  the seven or so unliquidated claims that

6  remain?

7      A.      We have our internal estimates

8  of those claims.

9      Q.      What is the aggregate estimate?

10              MS. DIAZ:  Objection,

11  privileged.

12              MR. SCHWARTZ:  I take it you

13  instruct him not to answer?

14              MS. DIAZ:  I am instructing him

15  not to answer.

16      Q.      In your declaration, looking
                        Page 16

56789 UNRUE.txt

17   specifically at paragraph 13, last

18   paragraph, you write, "Had the EEOC filed

19   its untimely unliquidated proof of claim a

20   year earlier... the debtors would have

21   been able to include the proof of claim in

22   its internal claims estimation process

23   that ultimately established the EPCA

24   target."

25           Did I read that right?

☐

20

1                    UNRUE

2     A.     Yes, sir.

3     Q.     Can you explain how debtors

4   would have included EEOC's proof of claim

5   in its internal claims estimation process

6   that ultimately established EPCA target.

7     A.     Yes.

8            We went through the estimation

9   process in the fall of 2006 and we used

10   our internal estimates of claims.

11           We also objected to claims

12   based on our internal books and records

13   and out of that objection came the process

14   of resolving those claims and valuing

15   those claims.

16    Q.     Is it your testimony that the

17   EPCA target would have been different if

18   the EEOC had filed its claim timely?

19           MS. DIAZ:  Objection to form.

20           You can answer.

Page 17

56789 UNRUE.txt

21    A.    I would be speculating.

22          I mean, I don't know.

23    Q.    You would agree with me,

24  wouldn't you, that if the EEOC's claim

25  were allowed to be filed but no other late

21

1                  UNRUE

2  claims, Delphi wouldn't be prejudiced?

3    A.    Sorry, can't agree to that

4  without knowing the resolution of our

5  remaining unliquidated claims.

6    Q.    If I told you that the EEOC

7  claim could be liquidated to $1, would you

8  agree with me that allowing the EEOC claim

9  to be filed would not prejudice Delphi?

10    A.    Depending on the valuation of

11  the other claims.

12          But I think that's likely, yes.

13    Q.    Is there a number at which the

14  EEOC claim could liquidate that you would

15  feel comfortable saying that Delphi would

16  not be prejudiced by its allowance, and

17  when I say allowance, it allowed to be

18  filed, not allowed in that amount?

19          MS. DIAZ:  Objection, calls for

20  privileged information, don't answer.

21    Q.    As the Delphi claims

22  administrator, are you involved in the

23  process of setting or resolving caps for

24  unliquidated claims?

25    A.    For overseeing the process.
                    Page 18

56789 UNRUE.txt

[]

22

1                    UNRUE
2        Q.      Does that mean that you have to
3    approve any consensual capping of an
4    unliquidated claim?
5        A.      I am not sure I understand the
6    question, sorry.
7        Q.      In other words, if I file an
8    unliquidated proof of claim and Delphi's
9    lawyers come to me and say, well, this has
10   to be capped for estimation purpose, can
11   we agree on a number, are you the person
12   who signs off on that resolved cap?
13       A.      I am not the only person who
14   signs off; I rely on our functions, as you
15   described, our legal staff, other
16   functions.
17       Q.      Are you the person at Delphi
18   with the ultimate authority on that issue,
19   though?
20       A.      The individual function, the
21   function that's responsible for the nature
22   of the claim, is really responsible for
23   the final sign-off or authority.
24               In terms of the settlement
25   agreements, I sign off on most of the

[]

23

1                    UNRUE
2    agreements.

Page 19

56789 UNRUE.txt
3                 We have in-house legal who

4   signs agreements.

5       Q.      Particularly with respect to

6   the claim filed by the EEOC that's the

7   subject of your declaration, are you aware

8   that EEOC offered to liquidate that claim

9   at a certain amount?

10                MS. DIAZ:  Objection,

11  privileged information.

12                MR. SCHWARTZ:  It is not

13  privileged whether he is aware of it.

14                MS. DIAZ:  You can answer.

15      A.      I am aware.

16      Q.      Delphi has never responded to

17  that offer, is that right?

18      A.      I am not aware, I don't know.

19      Q.      If Delphi were to respond, you

20  would have to approve any response, isn't

21  that so?

22      A.      I would have to be involved in

23  the approval, yes.

24      Q.      It wouldn't happen without your

25  knowledge?

▯

24

1                 UNRUE

2       A.      That's correct.

3       Q.      Paragraph 13, you write that

4   "opening the door to late claims such as

5   the EEOC's claim... could also threaten

6   the debtors' ability to emerge from

7   Chapter 11."

Page 20

56789 UNRUE.txt

```
 8              Did I read  that right?
 9    A.    Yes.
10    Q.    Is that true?
11    A.    Yes.
12    Q.    Can you explain that to me.
13    A.    Yes.
14              As we discussed, if late claims
15  are allowed, obviously the value of the
16  claims pool would increase and part of the
17  requirements is to be under the EPCA cap.
18    Q.      But the way you wrote it, maybe
19  it is my fault for not quoting the whole
20  thing, you said that opening the door to
21  late claims would not only erode progress
22  the debtors had made in further reducing
23  claims below the EPCA target, but could
24  also threaten the debtors' ability to
25  emerge from Chapter 11, is that right?
```

[]

25

```
 1              UNRUE
 2    A.    That's correct.
 3    Q.      What I thought I heard you just
 4  say was that the reason that that could
 5  threaten the debtors' ability to emerge
 6  from Chapter 11 was because you were below
 7  the EPCA target?
 8    A.      No, it is a requirement of
 9  emergence that would be under the EPCA
10  target.
11    Q.      You wrote that allowing late
```

Page 21

56789 UNRUE.txt

12   claims would erode progress the debtors

13   had made in reducing claims below the EPCA

14   target and also threaten the debtors'

15   ability to emerge from Chapter 11, right?

16        A.        Correct.

17        Q.        But what you really mean is

18   allowing late claims such as the EEOC's

19   would erode the progress the debtors had

20   made in further reducing claims below the

21   EPCA target, which could result in the

22   debtors' inability to emerge from Chapter

23   11?

24        A.        When I discuss eroding the

25   progress, it would increase the claim

26

1                    UNRUE

2    value where we stand today and the

3    progress that we have made over time to

4    get there.

5               If we were to exceed the EPCA

6    target, it would threaten our ability to

7    emerge from Chapter 11 because meeting the

8    EPCA target is one of the requirements of

9    emergence.

10        Q.        But you would agree with me

11   that simply owing more money, having more

12   claims, that by itself doesn't prejudice

13   Delphi, does it?

14        A.        I disagree; it is the

15   requirement of emergence to be under the

16   EPCA cap, being over 1.45 billion

                         Page 22

56789 UNRUE.txt

17  prejudices Delphi.

18      Q.       So in your view any additional

19  claim, every additional claim, prejudices

20  Delphi?

21      A.       The receipt of late claims that

22  adds value to our claims pool prejudices

23  Delphi in regard to meeting the EPCA

24  requirement.

25              (Continued on next page.)

☐

                                                    27

1                  UNRUE

2      Q.       Can you think of any nonzero

3  late claim that wouldn't prejudice Delphi?

4      A.       No.

5              MR. SCHWARTZ:  No further

6  questions.

7              (Time noted:  8:44 p.m.)

8

9

10

11

12

13      _____

14         DEAN UNRUE

15

16  Subscribed and sworn to before me

17  this      day of            , 2008.

18

19

20

                        Page 23

56789 UNRUE.txt

21

22

23

24

25

⬜

28

1

2        C E R T I F I C A T I O N

3

4

5

6        I, Jineen Pavesi, a Registered

7    Professional Reporter, Registered Merit

8    Reporter, Certified Realtime Reporter and

9    a Notary Public, do hereby certify that

10   the foregoing witness, DEAN UNRUE, was

11   duly sworn on the date indicated, and that

12   the foregoing is a true and accurate

13   transcription of my stenographic notes.

14       I further certify that I am not employed

15   by nor related to any party to this

16   action.

17

18

19

20

21

22

23       JINEEN PAVESI, RPR, RMR, CRR

24

25
            Page 24

56789 UNRUE.txt

⬚

                                                                29

        1
        2       LITIGATION SUPPORT INDEX
        3
        4
        5    DIRECTION TO WITNESS NOT TO ANSWER
        6    Page          Line          Page          Line
        7   19/14
        8   21/19
        9
       10
       11
       12
       13    REQUEST FOR PRODUCTION OF DOCUMENTS
       14    Page          Line          Page          Line
       15   (NONE)
       16
       17
       18
       19
       20         INFORMATION TO BE FURNISHED
       21    Page          Line          Page          Line
       22   (NONE)
       23
       24
       25

# EXHIBIT 6

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
       In re                               :     Chapter 11
                                           :
DELPHI CORPORATION, et al.,                :     Case No. 05-44481 (RDD)
                                           :
                         Debtors.          :     (Jointly Administered)
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On or before April 20, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit A hereto via postage pre-paid U.S. mail:

1) Notice of Bar Date for Filing Proofs of Claim [a copy of which is attached hereto as Exhibit B]

2) Proof of Claim form [a copy of which is attached hereto as Exhibit C]

Dated: April 28, 2006

 _/s/ Evan Gershbein_
Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 28th day of April, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : _/s/ Amy Lee Huh_

Commission Expires: _3/15/09_

0544481060428000000000051

# EXHIBIT A

## Delphi Service List

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| David N Ginsburg | | 3536 Mooney Ave | | | Cincinnati | OH | 45208-1308 | |
| David N Herd | | 540 Michigan Ave Unit H2 | | | Evanston | IL | 60202 | |
| David N Hess and | Laura C Hess Tr | Hess Fam Living Trust | Ua 032895 | 17 E Ireland Dr | North Manchester | IN | 46962-8606 | |
| David N Hurst | | 123 W Superior | | | Wauseon | OH | 43567-1648 | |
| David N Hutula and Mary L | | Hutula Ten Ent | 109 Ridgeview Dr | | Venetia | PA | 15367-1224 | |
| David N Karnes | | 8245 Ellis Rd | | | Clarkston | MI | 48348-2609 | |
| David N Kelley Usa | | Us Attorney S District Of Ny | One St Andrews Plaza | | New York | NY | 10007 | |
| David N Konstantin Cust | | Ethan R Konstantin | Unif Tran Min Act Va | 5835 26th St N | Arlington | VA | 22207 | |
| David N Kurtz | | 288 Jefferson Ave | | | York | PA | 17404-3041 | |
| David N Leaverton | | 6951 Carper La | | | Hillsboro | OH | 45133 | |
| David N Legge | | 3218 N Centennial St | | | Indianapolis | IN | 46222-1919 | |
| David N Liaska | | 10772 Big Canoe | | | Big Canoe | GA | 30143 | |
| David N Livingston | | 413 Mt Rainer Pl | | | Ridgecrest | CA | 93555-3173 | |
| David N Lombard and | Alicia B Lombard Tr | Lombard Trust Estate | Ua 062597 | 11181 Kensingtonrd | Los Alamitos | CA | 90720-2906 | |
| David N Love and Sandra J Love Jt Ten | | 510 Grant St | | | Endicott | NY | 13760-2626 | |
| David N Malone | | 9120 Nichols | | | Montrose | MI | 48457-9111 | |
| David N Mc Donald | | 12 Caudie Dr | | | Poughkeepsie | NY | 12603-4329 | |
| David N Moehwee | | 4765 St Rt 43 | | | Kent | OH | 44240-6433 | |
| David N Meyers | | 303 Regent St | | | Lansing | MI | 48912-2728 | |
| David N Miller | | 1311 Heights Rd | | | Lake Orion | MI | 48362-2210 | |
| David N Moody and Louise M | | Moody Jt Ten | | | Glen | NH | 03838 | |
| David N Myers University | | Accelerated Degree Program | 6500 Pearl Rd | Heritage Bldg | Parma Heights | OH | 44130 | |
| David N Myers University Accelerated Degree Program | | 6500 Pearl Rd | Heritage Bldg | | Parma Heights | OH | 44130 | |
| David N Peck | | 9503 Godstone Ln | | | Spring | TX | 77379-6514 | |
| David N Rago | | 1419 E Pk Pl | | | Ann Arbor | MI | 48104-4312 | |
| David N Rehm | | 3925 S Jones Blvd Apt 1067 | | | Las Vegas | NV | 89103-7104 | |

**Delphi Service List**

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Edythe Z Salzman Cust | Thomas Herschel Salzman Unif | Gift Mln Act Ny | Box 559 | 78 Old Ayer Rd | Groton | MA | 01450-0559 | |
| Eef Northwest Engineering Employers Federation | | Glazebrook Ln Glazebrook | Mount Pleasant | | Warrington Ch | | WA35BN | United Kingdom |
| Eekhoff R J | | 27 Coralin Way | Ashton In Makerfield | | Wigan | | WN4 0ET | United Kingdom |
| Eem Electronic Engineers | | Masters Catalog | 645 Stewart Ave | | Garden City | NY | 11530 | |
| Eeoc | | 1801 L St Nw | | | Washington | DC | 20507 | |
| Eeoc Technical Assistance | | PO Box 18198 | | | Washington | DC | 20039-8198 | |
| Eep Group | | 6432 Baird Ave | | | Syracuse | NY | 13206 | |
| Eep Group Llc | | 1.6158e+008 | PO Box 127 Eastwood Sta | | Syracuse | NY | 13206 | |
| Eep Group Llc | | PO Box 127 Eastwood Sta | | | Syracuse | NY | 13206 | |
| Eer Systems Inc | | 1525 Perimeter Pkwy | Ste 400 | | Huntsville | AL | 35805 | |
| Eero A Nurmi | | 237 Fair Ave | Box 29 | | Marenisco | MI | 49947 | |
| Eesco Inc | | Englewood Electrical Supply | Wesco Distribution Inc | 125 N Tecumseh St Rm Chg | Adrian 5 28 04 Am | MI | 49221 | |
| Eesco Inc Englewood Electrical Supply | | PO Box 802578 | | | Chicago | IL | 60680-2578 | |
| Eesley Gary | | 2620 W Clarkston Rd | | | Lake Orion | MI | 48362 | |
| Eezer Products Inc | Leighton Sjostrand | 4734 East Home Ave | | | Fresno | CA | 93703 | |
| Ef Global Services Llc | | 435 W Wilson St | | | Salem | OH | 44460 | |
| Ef Global Services Llc | Mike Karmazine | A Subsidiary Of Efco Inc | See Vendor 815304 | | | | | |
| Ef Rittmueller Middle School | Mark Whelton | 965 E Genesse | | | Frankenmuth | MI | 48734 | |
| Efc International | | Engineered Fastener Co | 1940 Craigshire Rd | | Saint Louis | MO | 63146-4008 | |
| Efco Corporation | Monica Benson | 1000 County Rd | | | Monet | MO | 65708 | |
| Efd | | 977 Waterman Ave | | | East Providence | RI | 02914 | |
| Efd | Kim Eastwood | 977 Waterman Ave | | | East Providence | RI | 02914-1378 | |
| Efd Inc | | 977 Waterman Ave | | | East Providence | RI | 02914 | |
| Efd Inc | | 977 Waterman Ave | | | East Providence | RI | 02914-131 | |
| Efd Inc | | 977 Waterman Ave | | | East Providence | RI | 02914 | |
| Efd Inc | Customer Svc | 977 Waterman Ave | | | E Providence | RI | 02914 | |

## Delphi Service List

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| Eq Industrial Services Inc | | 2701 N I94 Service Dr | | | Ypsilanti | MI | 48197 | |
| Eq Industrial Services Inc | | 2701 North I 94 Service Dr | Rmt Chg 5 11 04 Cc | | Ypsilanti | MI | 48198 | |
| Eq Industrial Services Inc | | PO Box 671605 | | | Detroit | MI | 48267-1605 | |
| Eq Resource Recovery Michigan Recovery Systems Inc | | 36345 Van Born Rd | | | Romulus | MI | 48174 | |
| Eq Resource Recovery Michigan Recovery Systems Inc | | 36345 Van Born Rd | | | Romulus | MI | 48174 | |
| Eq The Environmental Quality | | Eqis Atlanta | 5600 Fulton Industrial Blvd | | Atlanta | GA | 30336 | |
| Eq The Environmental Quality C | | 36255 Michigan Ave | | | Wayne | MI | 48184 | |
| Eqs Systems Inc | | 8588 Mayfield Rd | | | Chesterland | OH | 44026-2626 | |
| Equal Employment Advisory | | Council | 1015 Fifteenth St Nw | Ste 1200 | Washington | DC | 20005 | |
| Equal Employment Advisory Council | | 1015 Fifteenth St Nw | Ste 1200 | | Washington | DC | 20005 | |
| Equal Opportunity Employment Journal Inc | | 608 E Missouri | | | Phoenix | AZ | 85012 | |
| Equator Technologies Inc | | 1300 White Oaks Rd | | | Campbell | CA | 95008 | |
| Equifax | | One Pk Pl 4th Flr | | | Albany | NY | 12205 | |
| Equifax Services Inc | | PO Box 4013 | | | Atlanta | GA | 30302 | |
| Equilon Enterprises Llc | | 1111 N Bridge | | | Linden | MI | 48451 | |
| Equilon Enterprises Llc | | 700 Milam St | | | Houston | TX | 77002 | |
| Equilon Enterprises Llc | | Equilon Lubricants Div | 1111 Bagby | | Houston | TX | 77002-2543 | |
| Equilon Enterprises Llc | | Fmly Texaco Ref & Mktg Inc | PO Box 4427 Rm 4335b | Chg Rm Add 4 02 Tb | Houston | TX | 77210-4427 | |
| Equilon Enterprises Llc | | PO Box 200889 | | | Houston | TX | 77216-0889 | |
| Equilon Enterprises Llc | | Shell Oil Products Us | 1100 Louisiana St Ste 2200 | | Houston | TX | 77002-4906 | |
| Equilon Enterprises Llc | | Shell Oil Products Us | 245 Marion Ave | | River Rouge | MI | 48218 | |
| Equilon Enterprises Llc | | Wood River Refining Co Div | 900 S Central | | Roxana | IL | 62084 | |
| Equilon Enterprises Llc Eft | | 1111 Bagby St | Rmt 7 01 Letter Kl | | Houston | TX | 77002 | |
| Equilon Enterprises Llc Eft | | PO Box 200889 | | | Houston | TX | 77216-0889 | |
| Equiment & Tool Inst | | PO Box 327 | | | Wilmette | IL | 60091-0327 | |
| Equinix Inc | | Dept La 22310 | | | Pasadena | CA | 91185-2310 | |

*Delphi Service List*

| CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|---|---|---|---|---|---|---|---|---|
| United States Treasury Internal Revenue Service | | Case 372258935 | | | Kansas City | MO | 64999-0010 | |
| United States Treasury Internal Revenue Service | | Philadelpia Svc Ctr Itin | PO Box 447 | | Bensalem | PA | 19020 | |
| United States Treasury Internal Revenue Service | | PO Box 13757 | | | Philadelphia | PA | 19101-3757 | |
| United States Treasury Internal Revenue Service | | PO Box 192 | | | Covington | KY | 41012-0192 | |
| United States Treasury Internal Revenue Service | | PO Box 7328 | | | Philadelphia | PA | 19162-7328 | |
| United States Treasury Internal Revenue Service | | PO Box 80111 | | | Cincinnati | OH | 45290-0011 | |
| United States Treasury Internal Revenue Service | | PO Box 8530 | | | Philadelphia | PA | 19162-8530 | |
| United States Trustee | Alicia M. Leonard | 33 Whitehall Street | 21st Floor | | New York | NY | 10004-2112 | |
| United States Trustee | Deirdre A. Martini | 33 Whitehall Street | Suite 2100 | | New York | NY | 10004 | |
| United States Trusteeregion 2 | Martin Deirdre A | 33 Whitehall St | Ste 2100 | Ste 2100 | New York | NY | 10004 | |
| United Steel Paper Forestry Rubber Mfging Energy Allied Industrial Svc Wkrs Intl Union Usw Afl Cio | David Jury Esq | Five Gateway Ctr | Ste 807 | | Pittsburgh | PA | 15222 | |
| United Steel Workers | Leo W Gerard | 5 Gateway Ctr | | | Pittsburgh | PA | 15222 | |
| United Steel Workers Of | | America | PO Box 400041 | | Pittsburgh | PA | 15268 | |
| United Steel Workers Of | | America | PO Box 951667 | | Cleveland | OH | 44193 | |
| United Steel Workers Of America | | PO Box 400041 | | | Pittsburgh | PA | 15268 | |
| United Steel Workers Of America | | PO Box 951667 | | | Cleveland | OH | 44193 | |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | | Pittsburgh | PA | 15222 | |
| United Steelworkers Of | | America | 5 Gateway Ctr | | Pittsburgh | PA | 15222-1214 | |
| United Steelworkers Of America Afl Ciodc | Leo W Gerard | Five Gateway Ctr | | | Pittsburgh | PA | 15222 | |
| United Steelworkers Of America Afl Ciodc | Leo W Gerard | Five Gateway Ctr | | | Pittsburgh | PA | 15222 | |
| United Tae Kwon Do | | C o 20300 Civic Cntr Dr 203 | | | Southfield | MI | 48075 | |
| United Technologies Automotive | | 50 W 3rd St | | | Holland | MI | 49423-2814 | |
| United Technologies Automotive | | 5200 Auto Club Dr | | | Dearborn | MI | 48126-2659 | |

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                         :

In re                        :      Chapter 11
                           :

DELPHI CORPORATION, et al.,   :      Case No. 05-44481 (RDD)
                           :

             Debtors.   :      (Jointly Administered)
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM

TO ALL CREDITORS OF THE DEBTORS, AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT:

        In accordance with an order entered on April 12, 2006 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned chapter 11 cases (the "Bar Date Order"), **5:00 p.m. Eastern Time on July 31, 2006** (the "General Bar Date") has been established as the last date for each person or entity (including individuals, partnerships, corporations, limited liability companies, estates, trusts, unions, indenture trustees, the United States Trustee, and governmental units) (individually, a "Person" or "Entity," and collectively, "Persons" or "Entities") to file a proof of claim in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). A list of all Debtors in these chapter 11 cases is attached hereto as Exhibit A.

        On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions in the Bankruptcy Court for reorganization relief under the Bankruptcy Code. The term "Petition Date" shall mean the date on which each Debtor filed its chapter 11 bankruptcy petition as set forth on Exhibit A attached hereto. The General Bar Date and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before the applicable Petition Date, except for those holders of the claims listed in Section 4 below which are specifically excluded from the General Bar Date filing requirement.

## 1.    Who Must File A Proof Of Claim

        You MUST file a proof of claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim against any of the Debtors that arose prior to the applicable Petition Date, and such claim is not one of the types of claim described in Section 4 below. Claims based on acts or omissions of the Debtors that occurred before the applicable Petition Date must be

filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

## 2.    What To File

The Debtors are enclosing a proof of claim form which you may use to file any claim you may have in these cases. If the Debtors scheduled you as a creditor in any of the Debtors' schedules of assets and liabilities (as amended from time to time, the "Schedules"), the form sets forth the amount of your claim as scheduled and whether the claim is scheduled as disputed, contingent, or unliquidated. Additional proof of claim forms may be obtained at http://www.uscourts.gov/bkforms/index.html or at http://www.delphidocket.com.

All proofs of claim must be signed by the claimant or, if the claimant is not an individual, by a claimant's authorized agent. All proofs of claim must be written in English and be denominated in United States currency. You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

If any supporting documentation provided with any proof of claim contains confidential information, such documentation will be subject to examination only by the party asserting the claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these chapter 11 cases, and any personnel of the United States Bankruptcy Court for the Southern District of New York in the performance of their official duties, and such entities have been ordered to maintain the confidentiality of all supporting documentation to any proof of claim and the information contained therein.

Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case. A list of the names of the Debtors and their reorganization case numbers is attached hereto as Exhibit A.

### 3.    When And Where To File

Except as provided for herein, all proofs of claim must be filed so as to be received no later than **5:00 p.m. Eastern Time on July 31, 2006** at the following address:

If sent by mail:                          If sent by messenger or overnight courier:

United States Bankruptcy Court            United States Bankruptcy Court
Southern District of New York             Southern District of New York
Delphi Corporation Claims                 Delphi Corporation Claims
Bowling Green Station                     One Bowling Green
P.O. Box 5058                             Room 534
New York, New York 10274-5058             New York, New York 10004-1408

**Proofs of claim will be deemed filed only when actually received at the addresses above on or before the General Bar Date.** Proofs of claim may not be delivered by facsimile, telecopy, or electronic mail transmission.

Governmental units must file proofs of claims in these chapter 11 cases on or prior to the General Bar Date.

### 4.    Who Need Not File A Proof Of Claim

You do not need to file a proof of claim on or prior to the General Bar Date if you are:

> (a)    Any Person or Entity (i) which agrees with the nature, classification, and amount of its Claim set forth in the Schedules and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

> (b)    Any Person or Entity which has already properly filed a proof of claim against the correct Debtor;

> (c)    Any Person or Entity which asserts a Claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' chapter 11 cases;

> (d)    Any Person or Entity which asserts a Claim solely on the basis of future pension or other post-employment benefits, including, without limitation, retiree health care and life insurance; provided, however, that any such Person or Entity which wishes to assert a Claim against any of the Debtors based on anything other than

future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;[1]

(e)     Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

(f)     Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of the Bankruptcy Court;

(g)     Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior and junior subordinated unsecured debt (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033  (collectively, the "Unsecured Securities"), other than the indenture trustees of the Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)     Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

This notice is being sent to many persons and entities which have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors.  The fact that you have received this Notice does not

---

[1] The bar date for the filing of Proofs of Claim on account of Claims arising from modification to or termination of future pension or other post-employment benefits will be determined pursuant to an order of the Bankruptcy Court approving such modification or termination.

necessarily mean that you have a claim or that the Debtors or the Bankruptcy Court
believe that you have a claim against the Debtors.

### 5.    Executory Contracts And Unexpired Leases

Any person or entity which has a claim arising from the rejection of an
Executory Contract must file a proof of claim on account of such claim against the
Debtors on or before the later of (a) the General Bar Date or (b) 30 calendar days after the
effective date of such rejection or such other date as fixed by the Bankruptcy Court in an
order authorizing such rejection.

### 6.    Amended Schedule Bar Date

If the Debtors amend the Schedules on or after the date of this Notice
(listed below) to reduce the undisputed, noncontingent, and liquidated amounts or to
change the nature or classification of a claim against a Debtor reflected therein, the bar
date for filing a proof of claim in respect of such amended schedule claim is the later of
(a) the General Bar Date or (b) 30 calendar days after a claimant is served with notice
that the Debtors have amended their Schedules.

### 7.    Consequences Of Failure To File A Proof Of Claim By The General Bar Date

ANY HOLDER OF A CLAIM WHICH IS NOT EXCEPTED FROM
THE REQUIREMENTS OF THIS NOTICE, AS SET FORTH IN SECTION 4 ABOVE,
AND WHICH FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE
APPROPRIATE FORM, WILL BE BARRED FROM ASSERTING SUCH CLAIM
AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING
ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES, AND FROM
PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON
ACCOUNT OF SUCH CLAIM.

### 8.    The Debtors' Schedules And Access Thereto

You may be listed as the holder of a claim against the Debtors in any of
the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts
and Unexpired Leases.

To determine if and how you are listed on any of the Schedules, please
refer to the descriptions set forth on the enclosed proof of claim forms regarding the
nature, amount, and status of your claim(s).

As set forth above, if you agree with the nature, amount, and status of your
claim as listed in any of the Debtors' Schedules, and if your claim is not described as
"disputed," "contingent," or "unliquidated," you need not file a proof of claim.
Otherwise, or if you decide  to file a proof of claim, you must do so before the General
Bar Date in accordance with the procedures set forth in this Notice.

Copies of any of the Debtors' Schedules are available for inspection online
at http://www.delphidocket.com or on the Court's Internet Website at

http://www.nysb.uscourts.gov. A login and password to the Court's Public Access to
Electronic Court Records ("PACER") are required to access this information on the
Court's Internet Website and can be obtained through the PACER Service Center at
http://www.pacer.psc.uscourts.gov. No login or password is required to access this
information on the Debtors' Legal Information Website (http://www.delphidocket.com).
Copies of any of the Schedules may also be examined between the hours of 9:00 a.m. and
4:30 p.m., Monday through Friday at the Office of the Clerk of the Bankruptcy Court,
One Bowling Green, Room 511, New York, New York 10004-1408.

      A holder of a possible claim against any of the Debtors should consult an
attorney regarding any matters not covered by this Notice, such as whether the holder
should file a proof of claim.

Dated: New York, New York                      BY ORDER OF THE COURT
        April 12, 2006

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        John Wm. Butler, Jr.
        John K. Lyons
        Ron E. Meisler
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois  60606

         - and -

        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
        Four Times Square
        New York, New York 10036

        Attorneys for Delphi Corporation, et al.,
         Debtors and Debtors-in-Possession

**For additional information:**

Delphi Restructuring Information Hotline:
Toll Free:  (866) 688-8740
International:  (248) 813-2602

Delphi Legal Information Website:
http://www.delphidocket.com

## EXHIBIT A

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 1. | Delphi NY Holding Corporation | 20-3383408 | 05-44480 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 2. | Delphi Corporation | 38-3430473 | 05-44481 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 3. | ASEC Manufacturing General Partnership | 73-1474201 | 05-44482 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 4. | ASEC Sales General Partnership | 73-1474151 | 05-44484 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 5. | Environmental Catalysts, LLC | | 05-44503 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 6. | Delphi Medical Systems Colorado Corporation | 84-1524184 | 05-44507 | 4300 Road 18 Longmont, CO 80504 | October 8, 2005 |
| 7. | Delphi Medical Systems Texas Corporation | 20-2885110 | 05-44511 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 8. | Delphi Medical Systems Corporation | 32-0052827 | 05-44529 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 9. | Specialty Electronics International Ltd. | 66-0522490 | 05-44536 | 69A Kronprindsens Gade (Third Floor) P.O. Box 1858 St. Thomas, VI | October 8, 2005 |
| 10. | Specialty Electronics, Inc. | 57-0755068 | 05-44539 | 19200 Asheville Highway P.O. Box 519 Landrum, SC 29356 | October 8, 2005 |
| 11. | Delphi Liquidation Holding Company | 95-4359324 | 05-44542 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 12. | Delphi Electronics (Holding) LLC | 95-4554161 | 05-44547 | One Corporate Center Kokomo, IN 46904 | October 8, 2005 |
| 13. | Delphi Technologies, Inc. | 38-3430681 | 05-44554 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 14. | Delphi Automotive Systems Tennessee, Inc. | 38-3319836 | 05-44558 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 15. | Delphi Mechatronic Systems, Inc. | 38-3589834 | 05-44567 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 16. | Delphi Automotive Systems Risk Management Corp. | 38-3575299 | 05-44570 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 17. | Exhaust Systems Corporation | 38-3211473 | 05-44573 | 4800 S. Saginaw Street Flint, MI 48501 | October 8, 2005 |
| 18. | Delphi China LLC | 38-3196159 | 05-44577 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 19. | Delphi Automotive Systems Korea, Inc. | 38-2849490 | 05-44580 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 20. | Delphi International Services, Inc. | 38-3439894 | 05-44583 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 21. | Delphi Automotive Systems Thailand, Inc. | 38-3379709 | 05-44586 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 22. | Delphi Automotive Systems International, Inc. | 38-3280289 | 05-44589 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 23. | Delphi International Holdings Corp. | 38-3449527 | 05-44591 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 24. | Delphi Automotive Systems Overseas Corporation | 38-3318021 | 05-44593 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 25. | Delphi Automotive Systems (Holding), Inc. | 38-3422378 | 05-44596 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 26. | Delco Electronics Overseas Corporation | 38-2638990 | 05-44610 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 27. | Delphi Diesel Systems Corp. | 38-3505001 | 05-44612 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 28. | Delphi LLC | 37-1438255 | 05-44615 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 29. | Aspire, Inc. | 36-4392806 | 05-44618 | U.S. Route 1 Morrisville, PA 19067 | October 8, 2005 |
| 30. | Delphi Integrated Service Solutions, Inc. | 38-3473261 | 05-44623 | 1322 Rankin Street Troy, MI 48083 | October 8, 2005 |
| 31. | Delphi Connection Systems | 95-2563022 | 05-44624 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 32. | Packard Hughes Interconnect Company | 33-0595219 | 05-44626 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 33. | DREAL, Inc. | 38-3457411 | 05-44627 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 34. | Delphi Automotive Systems Services LLC | 38-3568834 | 05-44632 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 35. | Delphi Services Holding Corporation | 20-0577653 | 05-44633 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 36. | Delphi Automotive Systems Global (Holding), Inc. | 38-3547659 | 05-44636 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 37. | Delphi Foreign Sales Corporation | 66-0564421 | 05-44638 | Chase Trade, Inc. Post Office Box 309420 55-11 Conacao Gade Charlotte Amalie St. Thomas, VI 00803-9420 | October 8, 2005 |
| 38. | Delphi Automotive Systems Human Resources LLC | 38-3547664 | 05-44639 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 39. | Delphi Automotive Systems LLC | 38-3431131 | 05-44640 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 40. | Delphi Furukawa Wiring Systems LLC | 20-2478586 | 05-47452 | 5725 Delphi Drive Troy, MI 48098 | October 14, 2005 |

| | Entity | Tax/Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 41. | Delphi Receivables LLC | 61-1446224 | 05-47459 | 5725 Delphi Drive Troy, MI 48098 | October 14, 2005 |
| 42. | MobileAria, Inc. | 31-1695929 | 05-47474 | 800 West El Camino Real Suite 240 Mountain View, CA 94040 | October 14, 2005 |

# EXHIBIT C

**FORM B10** (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT   **Southern**   DISTRICT OF   **New York** | PROOF OF CLAIM |
|---|---|

| Name of Debtor | Case Number |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
|---|---|
| Name and address where notices should be sent: | ☐ Check box if you have never received any notices from the bankruptcy court in this case. |
| | ☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone number: | THIS SPACE IS FOR COURT USE ONLY |

| Account or other number by which creditor identifies debtor: | Check here ☐ replaces
if this claim        a previously filed claim, dated:_____
☐ amends |
|---|---|

**1. Basis for Claim**

☐ Goods Sold / Services Performed
☐ Customer Claim
☐ Taxes
☐ Money Loaned
☐ Personal Injury
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS #: _____
Unpaid compensation for services performed
from _____ to_____
     (date)              (date)

**2. Date debt was incurred:**

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed: $** _____ _____ _____ _____
(unsecured)    (secured)    (priority)    (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other_____

Value of Collateral:   $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**6. Unsecured Nonpriority Claim** $_____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim

Amount entitled to priority   $_____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

| **8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this claim. | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| **9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. | |
| **10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | |

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

FORM B10 (Official Form 10) (04/04)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## —— DEFINITIONS ——

### Debtor

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

### Creditor

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

### Proof of Claim

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

### Secured Claim

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim*.)

### Unsecured Claim

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

### Unsecured Priority Claim

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

---

## Items to be completed in Proof of Claim form (If not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in the last four digits of your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**
Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**
Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above.)

**6. Unsecured Nonpriority Claim:**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount **not** entitled to priority.

**7. Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above.) A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**8. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**9. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

# EXHIBIT 7

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :        Chapter 11
                                    :
DELPHI CORPORATION, et al.,          :        Case No. 05-44481 (RDD)
                                    :
                Debtors.            :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER UNDER 11 U.S.C. §§ 107(b), 501, 502, AND 1111(a) AND FED. R. BANKR. P. 1009, 2002(a)(7), 3003(c)(3), AND 5005(a) ESTABLISHING BAR DATES FOR FILING PROOFS OF CLAIM AND APPROVING FORM AND MANNER OF NOTICE THEREOF

### ("BAR DATE ORDER")

Upon the motion, dated March 17, 2006 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order (the "Order"), under 11 U.S.C. §§

107(b), 501, 502, and 1111(a) and Rules 1009, 2002(a)(7), 3003(c)(3), and 5005(a) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), establishing bar dates for all

creditors to file proofs of claim in these chapter 11 cases and approving the form and manner of

notice thereof; and this Court having determined that the relief requested in the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to Bankruptcy Rules 3003(c)(3) and 5005(a), except as set forth herein, all persons and entities, including, without limitation, individuals, partnerships, limited liability companies, corporations, estates, trusts, unions, indenture trustees, the United States Trustee, and governmental units (individually, a "Person" or "Entity," and collectively, "Persons" or "Entities" or the "Creditors") holding or wishing to assert claims (as such term is defined in 11 U.S.C. § 101(5)) against the Debtors (collectively, the "Claims") shall file a separate, completed, and executed proof of claim form (either in the form mailed to Creditors or otherwise conforming substantially to Form No. 10 of the Official Bankruptcy Forms, a copy of which is attached as Exhibit A hereto) on or before 5:00 p.m., Eastern Standard Time on July 31, 2006 (the "General Bar Date").

3.      The following procedures for the filing of valid proofs of claim (a "Proof of Claim") shall apply:

(a)      Proofs of Claim must conform substantially to Form No. 10 of the Official Bankruptcy Forms;

(b)      A Proof of Claim must be filed either by mailing the original proof of claim to the United States Bankruptcy Court, Southern District of New York, Delphi Corporation Claims, Bowling Green Station, P.O. Box 5058, New York, New York 10274-5058 or by delivering the original proof of claim by hand or overnight courier to the United States Bankruptcy Court, Southern District of New York, Delphi Corporation Claims, One Bowling Green, Room 534, New York, New York 10004-1408;

(c)      Proofs of Claim shall be deemed filed only when actually received by the Clerk of the Bankruptcy Court on or before the applicable Bar Date (as defined below);

(d)      Proofs of Claim must (i) be signed, (ii) include supporting documentation (or a summary if such documentation is voluminous) or an explanation as to why documentation is not available, (iii) be written in the English language, and (iv) be denominated in United States currency;

(e)      Facsimile submissions of Proofs of Claim shall not be accepted; and

2

(f)     Proofs of Claim must clearly indicate the name of the applicable Debtor against which the Claim is asserted and the applicable reorganization case number for such Debtor, and if a Claim is asserted against more than one of the Debtors, a separate Proof of Claim must be filed in each such Debtor's reorganization case.

4.     All supporting documentation to any Proof of Claim shall be subject to examination only by the party asserting the Claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these chapter 11 cases, and any personnel of the United States Bankruptcy Court for the Southern District of New York in the performance of their official duties. All such parties are hereby directed to maintain the confidentiality of all supporting documentation to any Proof of Claim and the information contained therein.

5.     Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:

(a)     Any Person or Entity (i) which agrees with the nature, classification, and amount of its Claim set forth in the schedules of assets and liabilities (as amended from time to time, the "Schedules") and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

(b)     Any Person or Entity which has already properly filed a proof of claim against the correct Debtor;

(c)     Any Person or Entity which asserts a Claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), as an administrative expense of the Debtors' chapter 11 cases;

(d)     Any Person or Entity which asserts a Claim solely on the basis of future pension or other post-employment benefits, including, without limitation, retiree health care and life insurance; provided, however, that any such Person or Entity which wishes to assert a Claim against any of the Debtors based on anything other than future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;

3

(e)    Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control, or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

(f)    Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of this Court;

(g)    Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior and junior subordinated unsecured debt (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033 (collectively, the "Unsecured Securities"), other than the indenture trustees of the Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)    Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

6.    Any Creditor which desires to rely on the Schedules with respect to filing a Proof of Claim in these chapter 11 cases shall have the responsibility of determining that its claim is accurately listed therein.

7.    The Debtors shall retain the right to (a) dispute, or assert offsets or defenses against, any filed Claim or any Claim listed or reflected in the Schedules as to nature, amount, liability, classification, or otherwise, or (b) subsequently designate any Claim as disputed, contingent, or unliquidated. If the Debtors amend the Schedules to reduce the

4

undisputed, noncontingent, and liquidated amounts or to change the nature or classification of a

particular Claim against a Debtor reflected therein, then the affected claimant shall have until the

later of (x) the General Bar Date or (y) 30 calendar days after such claimant is served with notice

that the Debtors have amended their Schedules (the "Amended Schedule Bar Date") to file a

Proof of Claim or to amend any previously filed Proof of Claim in respect of such amended

scheduled Claim. Notwithstanding Bankruptcy Rule 1009(a), the Debtors shall have no

obligation to provide notice to claimants of amendments to the Schedules filed prior to the date

upon which the Debtors serve the Bar Date Notice, other than the personalized proof of claim

form provided to each party affected by an amendment to the Schedules. Notwithstanding the

foregoing, nothing set forth herein shall preclude the Debtors from objecting to any Claim,

whether scheduled or filed, on any grounds.

8.      Notwithstanding anything in this Order to the contrary, the holder of any

Claim arising from the rejection of an executory contract or unexpired lease pursuant to section

365 of the Bankruptcy Code shall be required to file a Proof of Claim on account of such Claim

against the Debtors on or before the later of (a) the General Bar Date or (b) 30 calendar days

after the effective date of such rejection or such other date as fixed by the Court in an order

authorizing such rejection (the "Rejection Bar Date," and together with the General Bar Date and

the Amended Schedule Bar Date, the "Bar Dates").

9.      Governmental units shall file Proofs of Claim in these cases on or prior to

the General Bar Date.

10.     (a)      In order to facilitate the processing of claims, to ease the burden

upon the Court and to reduce any unnecessary expense to the Debtors' estates, the Pre-Petition

Agent (as defined in the Final DIP Financing Order) is authorized to file a master proof of claim

5

.

on behalf of itself and the Pre-Petition Secured Lenders (as defined in the Final DIP Financing Order) on account of their claims arising under the Third Amended and Restated Credit Agreement, dated as of June 14, 2005, and all other documentation executed in connection therewith (collectively, the "Loan Documents") and under the Final Order under 11 U.S.C §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Federal Rules of Bankruptcy Procedure 2002, 4001 and 9014 (i) Authorizing the Debtors to Obtain Post-Petition Financing, (ii) to Utilize Cash Collateral and (iii) Granting Adequate Protection to Pre-Petition Secured Parties, dated October 28, 2005 (the "Final DIP Financing Order"), against all of the Debtors (the "Master Proof of Claim"), and the Pre-Petition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Bankruptcy Rules.

(b)     Upon the filing of the Master Proof of Claim against the Debtors, the Pre-Petition Agent and each Pre-Petition Secured Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim against each Debtor in the amount set forth opposite its name therein in respect of its claims against each Debtor arising under the Loan Documents, and the claim of the Pre-Petition Agent and each Pre-Petition Secured Lender (and each of their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in the chapter 11 cases in the amount set forth opposite each name in the Master Proof of Claim; provided that, subject to the Debtors' and any other party-in-interest's right to object to such amendment on any basis including that such amendment is time-barred, the Pre-Petition Agent may, but shall not be required to, amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

6

(c)    The provisions set forth in this paragraph and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, any statutory committee appointed in these Chapter 11 cases, the Pre-Petition Agent or the Pre-Petition Secured Lenders or any other party in interest or their respective successors in interest including, without limitation, the right of each Pre-Petition Secured Lender (or their successors in interest and assigns) to vote separately on any plan of reorganization proposed in the Debtors' chapter 11 cases.

11.    Any Person or Entity which is required to file a Proof of Claim in these chapter 11 cases but that fails to do so in a timely manner on or before the applicable Bar Date shall be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules as undisputed, non-contingent, and unliquidated or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim referred to as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim, and the Debtors and their property shall be forever discharged from any and all indebtedness or liability with respect to such Unscheduled Claim.

12.    Notice of the Bar Dates, substantially in the form of the notice attached hereto as Exhibit B (the "Bar Date Notice"), and the manner of providing notice of the Bar Dates proposed in the Motion are approved. No later than April 20, 2006, Kurtzman Carson Consultants, LLC, the Debtors' claims and noticing agent in these cases, shall serve by first class

7

U.S. mail, postage prepaid, proof of claim forms substantially in the form attached hereto as

Exhibit A, and together with the Bar Date Notice, on:

       (a)    the United States Trustee;

       (b)    counsel to each official committee;

       (c)    all Persons or Entities which have requested notice of the proceedings in the chapter 11 cases;

       (d)    all Persons or Entities which have filed claims in these chapter 11 cases;

       (e)    all creditors and other known holders of claims as of the date of this Order, including all persons or entities listed in the Schedules as holding Claims;

       (f)    all parties to executory contracts and unexpired leases of the Debtors;

       (g)    all parties to litigation with the Debtors;

       (h)    the Philadelphia office of the Internal Revenue Service, the Northeast Regional Office of the Securities and Exchange Commission, the United States attorney for the Southern District of New York, any other department, agency, or instrumentality of the United States through which the Debtors became indebted for debt other than taxes, and any other governmental units as required by Bankruptcy Rule 2002(j); and

       (i)    all known Persons and Entities holding potential prepetition Claims.

       13.    The Debtors are directed to give notice of the Bar Date Notice by (a)

publication in the New York Times (national edition), the Wall Street Journal (national,

European, and Asian editions), USA Today (worldwide), the Automotive News (national

edition), and in local editions of the following: the Adrian Daily Telegram, the Arizona Daily

Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbus Dispatch, the

Daily Leader, the Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald

Herald Leader, The Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greensville

News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune, the Lansing State

Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee Journal Sentinel, the

Mobile Beacon, The Mobile Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, The Tuscaloosa News, and The Vindicator, and (b) electronically through posting on the Delphi legal information website, www.delphidocket.com. Such notices will be published no later than April 21, 2006, or as soon thereafter as practicable.

14.      Provision of notice of the Bar Dates to the Persons and Entities set forth in the Motion and this Order, in the manner set forth above and as described more particularly in the Motion, shall constitute adequate and sufficient notice of each of the Bar Dates and shall be deemed to satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of this Court.

15.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

16.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       April 12, 2006

                    /s/ Robert D. Drain
              UNITED STATES BANKRUPTCY JUDGE

9

| United States Bankruptcy Court __Southern__ District Of __New York__ | | **PROOF OF CLAIM** |
|---|---|---|
| Name of Debtor | Case Number | This Space For Court Use Only |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
| Name and Address where notices should be sent: | ☐ Check box if you have never received any notices from the bankruptcy court in this case. | |
| | ☐ Check box if the address differs from the address on the envelope sent to you by the court. | |
| Telephone Number: | | This Space For Court Use Only |

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim dated: _____ |
|---|---|

**1. Basis for Claim**
☐ Goods Sold / Services Performed
☐ Customer Claim
☐ Taxes
☐ Money Loaned
☐ Personal Injury
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
   Last four digits of your SS #: _____
   Unpaid compensation for services performed
   from _____ to _____
          (date)       (date)

| **2. Date debt was incurred:** | **3. If court judgment, date obtained:** |
|---|---|

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim $_____**

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim.**

☐ Check this box if you have an unsecured claim, all or part of which is entitled to priority

Amount entitled to priority $_____

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim.**

☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
    ☐ Real Estate  ☐ Motor Vehicle    ☐ Other_____
    Value of Collateral $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)____.
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| **5. Total Amount of Claim at Time Case Filed:  $** | | | |
|---|---|---|---|
| (Unsecured) | (Secured) | (Priority) | (Total) |

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 6. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>7. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | This Space For Court Use Only |
|---|---|
| Date: | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |

*Penalty for presenting fraudulent claim: Fine up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571*

FORM B10 (Official Form 10) (10/05)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## —— DEFINITIONS ——

**Debtor**

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**Creditor**

A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

**Proof of Claim**

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

**Secured Claim**

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. (See also *Unsecured Claim.*)

**Unsecured Claim**

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Priority Claim**

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**
Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**
Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Classification of Claim**
  **Secured Claim:**
  Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the

amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**Unsecured Priority Claim:**
Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**Unsecured Nonpriority Claim:**
Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

**5. Total Amount of Claim at Time Case Filed:**
Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**6. Credits:**
By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**7. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

In re                           :    Chapter 11

                            :

DELPHI CORPORATION, et al.,      :    Case No. 05-44481 (RDD)

                            :

                   Debtors.   :    (Jointly Administered)

                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM

TO ALL CREDITORS OF THE DEBTORS, AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT:

        In accordance with an order entered on April 12, 2006 by the United
States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")
in the above-captioned chapter 11 cases (the "Bar Date Order"), **5:00 p.m. Eastern Time
on July 31, 2006** (the "General Bar Date") has been established as the last date for each
person or entity (including individuals, partnerships, corporations, limited liability
companies, estates, trusts, unions, indenture trustees, the United States Trustee, and
governmental units) (individually, a "Person" or "Entity," and collectively, "Persons" or
"Entities") to file a proof of claim in the chapter 11 cases of the above-captioned debtors
and debtors-in-possession (collectively, the "Debtors"). A list of all Debtors in these
chapter 11 cases is attached hereto as Exhibit A.

        On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed
voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of
title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy
Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi filed
voluntary petitions in the Bankruptcy Court for reorganization relief under the
Bankruptcy Code. The term "Petition Date" shall mean the date on which each Debtor
filed its chapter 11 bankruptcy petition as set forth on Exhibit A attached hereto. The
General Bar Date and the procedures set forth below for filing proofs of claim apply to all
claims against the Debtors that arose before the applicable Petition Date, except for those
holders of the claims listed in Section 4 below which are specifically excluded from the
General Bar Date filing requirement.

## 1.    Who Must File A Proof Of Claim

        You MUST file a proof of claim to vote on a chapter 11 plan filed by the
Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a
claim against any of the Debtors that arose prior to the applicable Petition Date, and such
claim is not one of the types of claim described in Section 4 below. Claims based on acts
or omissions of the Debtors that occurred before the applicable Petition Date must be

filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

## 2.    What To File

The Debtors are enclosing a proof of claim form which you may use to file any claim you may have in these cases. If the Debtors scheduled you as a creditor in any of the Debtors' schedules of assets and liabilities (as amended from time to time, the "Schedules"), the form sets forth the amount of your claim as scheduled and whether the claim is scheduled as disputed, contingent, or unliquidated. Additional proof of claim forms may be obtained at http://www.uscourts.gov/bkforms/index.html or at http://www.delphidocket.com.

All proofs of claim must be signed by the claimant or, if the claimant is not an individual, by a claimant's authorized agent. All proofs of claim must be written in English and be denominated in United States currency. You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

If any supporting documentation provided with any proof of claim contains confidential information, such documentation will be subject to examination only by the party asserting the claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these chapter 11 cases, and any personnel of the United States Bankruptcy Court for the Southern District of New York in the performance of their official duties, and such entities have been ordered to maintain the confidentiality of all supporting documentation to any proof of claim and the information contained therein.

Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case. A list of the names of the Debtors and their reorganization case numbers is attached hereto as Exhibit A.

## 3.    When And Where To File

Except as provided for herein, all proofs of claim must be filed so as to be received no later than **5:00 p.m. Eastern Time on July 31, 2006** at the following address:

If sent by mail:

United States Bankruptcy Court
Southern District of New York
Delphi Corporation Claims
Bowling Green Station
P.O. Box 5058
New York, New York 10274-5058

If sent by messenger or overnight courier:

United States Bankruptcy Court
Southern District of New York
Delphi Corporation Claims
One Bowling Green
Room 534
New York, New York 10004-1408

**Proofs of claim will be deemed filed only when actually received at the addresses above on or before the General Bar Date.** Proofs of claim may not be delivered by facsimile, telecopy, or electronic mail transmission.

Governmental units must file proofs of claims in these chapter 11 cases on or prior to the General Bar Date.

## 4.    Who Need Not File A Proof Of Claim

You do not need to file a proof of claim on or prior to the General Bar Date if you are:

(a)    Any Person or Entity (i) which agrees with the nature, classification, and amount of its Claim set forth in the Schedules and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

(b)    Any Person or Entity which has already properly filed a proof of claim against the correct Debtor;

(c)    Any Person or Entity which asserts a Claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' chapter 11 cases;

(d)    Any Person or Entity which asserts a Claim solely on the basis of future pension or other post-employment benefits, including, without limitation, retiree health care and life insurance; provided, however, that any such Person or Entity which wishes to assert a Claim against any of the Debtors based on anything other than future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;[1]

(e)    Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

---

[1] The bar date for the filing of Proofs of Claim on account of Claims arising from modification to or termination of future pension or other post-employment benefits will be determined pursuant to an order of the Bankruptcy Court approving such modification or termination.

(f)      Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of the Bankruptcy Court;

(g)      Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior unsecured debt (each, a "Noteholder"): (i) those certain senior and junior subordinated unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033 (collectively, the "Unsecured Securities"), other than the indenture trustees of the Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)      Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

This notice is being sent to many persons and entities which have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors. The fact that you have received this Notice does not necessarily mean that you have a claim or that the Debtors or the Bankruptcy Court believe that you have a claim against the Debtors.

## 5.      Executory Contracts And Unexpired Leases

Any person or entity which has a claim arising from the rejection of an Executory Contract must file a proof of claim on account of such claim against the Debtors on or before the later of (a) the General Bar Date or (b) 30 calendar days after the effective date of such rejection or such other date as fixed by the Bankruptcy Court in an order authorizing such rejection.

## 6.      Amended Schedule Bar Date

If the Debtors amend the Schedules on or after the date of this Notice (listed below) to reduce the undisputed, noncontingent, and liquidated amounts or to change the nature or classification of a claim against a Debtor reflected therein, the bar date for filing a proof of claim in respect of such amended schedule claim is the later of (a) the General Bar Date or (b) 30 calendar days after a claimant is served with notice that the Debtors have amended their Schedules.

## 7.    Consequences Of Failure To File A Proof Of Claim By The General Bar Date

ANY HOLDER OF A CLAIM WHICH IS NOT EXCEPTED FROM THE REQUIREMENTS OF THIS NOTICE, AS SET FORTH IN SECTION 4 ABOVE, AND WHICH FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM, WILL BE BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES, AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

## 8.    The Debtors' Schedules And Access Thereto

You may be listed as the holder of a claim against the Debtors in any of the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases.

To determine if and how you are listed on any of the Schedules, please refer to the descriptions set forth on the enclosed proof of claim forms regarding the nature, amount, and status of your claim(s).

As set forth above, if you agree with the nature, amount, and status of your claim as listed in any of the Debtors' Schedules, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide to file a proof of claim, you must do so before the General Bar Date in accordance with the procedures set forth in this Notice.

Copies of any of the Debtors' Schedules are available for inspection online at http://www.delphidocket.com or on the Court's Internet Website at http://www.nysb.uscourts.gov. A login and password to the Court's Public Access to Electronic Court Records ("PACER") are required to access this information on the Court's Internet Website and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. No login or password is required to access this information on the Debtors' Legal Information Website (http://www.delphidocket.com). Copies of any of the Schedules may also be examined between the hours of 9:00 a.m. and 4:30 p.m., Monday through Friday at the Office of the Clerk of the Bankruptcy Court, One Bowling Green, Room 511, New York, New York 10004-1408.

A holder of a possible claim against any of the Debtors should consult an attorney regarding any matters not covered by this Notice, such as whether the holder should file a proof of claim.

Dated: New York, New York                        BY ORDER OF THE COURT
       April___, 2006

       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
       John Wm. Butler, Jr.
       John K. Lyons
       Ron E. Meisler
       333 West Wacker Drive, Suite 2100
       Chicago, Illinois  60606
       (312) 407-0700

          - and -


       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
       Four Times Square
       New York, New York 10036
       (212) 735-3000

       Attorneys for Delphi Corporation, et al.,
          Debtors and Debtors-in-Possession

## EXHIBIT A

| | Entity | Tax / Federal ID. Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 1. | Delphi NY Holding Corporation | 20-3383408 | 05-44480 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 2. | Delphi International Holdings Corp. | 38-3449527 | 05-44591 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 3. | Delphi Corporation | 38-3430473 | 05-44481 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 4. | Delphi Automotive Systems Overseas Corporation | 38-3318021 | 05-44593 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 5. | ASEC Manufacturing General Partnership | 73-1474201 | 05-44482 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 6. | Delphi Automotive Systems (Holding), Inc. | 38-3422378 | 05-44596 | 5785 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 7. | ASEC Sales General Partnership | 73-1474151 | 05-44484 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 8. | Delco Electronics Overseas Corporation | 38-2638990 | 05-44610 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 9. | Environmental Catalysts, LLC | | 05-44503 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 10. | Delphi Diesel Systems Corp. | 38-3505001 | 05-44612 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |

| | Entity | Tax/ Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 11. | Delphi Medical Systems Colorado Corporation | 84-1524184 | 05-44507 | 4300 Road 18 Longmont, CO 80504 | October 8, 2005 |
| 12. | Delphi LLC | 37-1438255 | 05-44615 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 13. | Delphi Medical Systems Texas Corporation | 20-2885110 | 05-44511 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 14. | Aspire, Inc. | 36-4392806 | 05-44618 | U.S. Route 1 Morrisville, PA 19067 | October 8, 2005 |
| 15. | Delphi Medical Systems Corporation | 32-0052827 | 05-44529 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 16. | Delphi Integrated Service Solutions, Inc. | 38-3473261 | 05-44623 | 1322 Rankin Street Troy, MI 48083 | October 8, 2005 |
| 17. | Specialty Electronics International Ltd. | 66-0522490 | 05-44536 | 69A Kronprindsens Gade (Third Floor) P.O. Box 1858 St. Thomas, VI | October 8, 2005 |
| 18. | Delphi Connection Systems | 95-2563022 | 05-44624 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 19. | Specialty Electronics, Inc. | 57-0755068 | 05-44539 | 19200 Asheville Highway P.O. Box 519 Landrum, SC 29356 | October 8, 2005 |
| 20. | Packard Hughes Interconnect Company | 33-0595219 | 05-44626 | 17150 Von Karman Avenue Irvine, CA 92614-0901 | October 8, 2005 |
| 21. | Delphi Liquidation Holding Company | 95-4359324 | 05-44542 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 22. | DREAL, Inc. | 38-3457411 | 05-44627 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 23. | Delphi Electronics (Holding) LLC | 95-4554161 | 05-44547 | One Corporate Center Kokomo, IN 46904-9005 | October 8, 2005 |
| 24. | Delphi Automotive Systems Services LLC | 38-3568834 | 05-44632 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 25. | Delphi Technologies, Inc. | 38-3430681 | 05-44554 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 26. | Delphi Services Holding Corporation | 20-0577653 | 05-44633 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 27. | Delphi Automotive Systems Tennessee, Inc. | 38-3319836 | 05-44558 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 28. | Delphi Automotive Systems Global (Holding), Inc. | 38-3547659 | 05-44636 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 29. | Delphi Mechatronic Systems, Inc. | 38-3589834 | 05-44567 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 30. | Delphi Foreign Sales Corporation | 66-0564421 | 05-44638 | Chase Trade, Inc. Post Office Box 309420 55-11 Conacao Gade Charlotte Amalie St. Thomas, VI 00803-9420 | October 8, 2005 |
| 31. | Delphi Automotive Systems Risk Management Corp. | 38-3575299 | 05-44570 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 32. | Delphi Automotive Systems Human Resources LLC | 38-3547664 | 05-44639 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 33. | Exhaust Systems Corporation | 38-3211473 | 05-44573 | 4800 S. Saginaw Street Flint, MI 48501 | October 8, 2005 |
| 34. | Delphi Automotive Systems LLC | 38-3431131 | 05-44640 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 35. | Delphi China LLC | 38-3196159 | 05-44577 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 36. | Delphi Furukawa Wiring Systems LLC | 20-2478586 | 05-47452 | 5725 Delphi Drive Troy, MI 48098-281 | October 14, 2005 |
| 37. | Delphi Automotive Systems Korea, Inc. | 38-2849490 | 05-44580 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 38. | Delphi Receivables LLC | 61-1446224 | 05-47459 | 5725 Delphi Drive Troy, MI 48098-2815 | October 14, 2005 |
| 39. | Delphi International Services, Inc. | 38-3439894 | 05-44583 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 40. | MobileAria, Inc. | 31-1695929 | 05-47474 | 800 West El Camino Real Suite 240 Mountain View, CA 94040 | October 14, 2005 |
| 41. | Delphi Automotive Systems Thailand, Inc. | 38-3379709 | 05-44586 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 42. | Delphi Automotive Systems International, Inc. | 38-3280289 | 05-44589 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |

# EXHIBIT 8

## Demma, Jeffrey (CHI)

**From:** Matthew.Schwartz@usdoj.gov

**Sent:** Thursday, January 24, 2008 5:47 PM

**To:** Diaz, Lisa B (CHI)

**Subject:** RE: Delphi: EEOC Claim

FOR SETTLEMENT PURPOSES ONLY

Lisa:

I spoke with EEOC. Now that their investigation has expanded and discovery in the enforcement action has progressed, they believe that their claim is significantly larger than at first blush; they also now have evidence that the discriminatory policies were in place since at least Delphi was spun off from GM. That said, they are comfortable capping their pre-petition claim at $15 million. While there is obviously some guess-work involved, that figure was based on their conservative estimate, after investigation, that they would be able to recover approximately $100,000 a piece (including front and back pay and other damages – a very common damages award in such cases) for at least 150 workers. In fact, they believe they could probably recover on behalf of many more workers (on the order of 500 or more), but recognize that they need to be conservative in their estimates because of the uncertainty involved and the nature of the claims estimation process.

Please let me know whether this is acceptable to you and your clients.

Matthew L. Schwartz
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Phone: (212) 637-1945
Facsimile: (212) 637-2750
E-mail: matthew.schwartz@usdoj.gov

FOR SETTLEMENT PURPOSES ONLY

**From:** Diaz, Lisa B [mailto:Lisa.Diaz@skadden.com]
**Sent:** Wednesday, January 23, 2008 2:19 PM
**To:** Schwartz, Matthew (USANYS)
**Subject:** RE: Delphi: EEOC Claim

Great. Thanks for the fast response. E-mail me or call my cellphone. I will be in court on Friday morning.

**Lisa B. Diaz**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**333 West Wacker Drive | Chicago | Illinois | 60606-1285**
**T: 312.407.0588 | F: 312.827.9337**
**ldiaz@skadden.com**

Skadden

**From:** Schwartz, Matthew (USANYS) [mailto:Matthew.Schwartz@usdoj.gov]

2/28/2008

**Sent:** Wednesday, January 23, 2008 1:17 PM
**To:** Diaz, Lisa B (CHI)
**Subject:** Delphi: EEOC Claim

Lisa:

FYI, I spoke to the folks at EEOC and they said they would have a number for you by the end of the week, probably tomorrow.

Matthew L. Schwartz

Assistant United States Attorney

Southern District of New York

86 Chambers Street, 3rd Floor

New York, New York 10007

Phone:  (212) 637-1945

Facsimile:  (212) 637-2750

E-mail:  matthew.schwartz@usdoj.gov

--------------------------------------------------------------------------
************************************************** To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein. ************************************************
************************************************** This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any email, and any printout thereof. Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request. ************************************************

2/28/2008

# Item No. 16

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION, ET AL.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            One Bowling Green

            New York, New York


            February 29, 2008

            10:07 a.m.


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

1    MOTION for Approving Patent License Settlement with Denso

2    Corporation

3

4    CLAIM Objection Hearing Regarding Claim of Furukawa Electric

5    Co. Ltd.

6

7    MOTION of Equal Employment Opportunity Commission for Leave to

8    File Late Proof of Claim

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Esther Accardi

25

3

```
 1    A P P E A R A N C E S :

 2    SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 3        Attorneys for Debtors

 4        333 West Wacker Drive

 5        Chicago, Illinois 60606

 6

 7    BY:  JOHN K. LYONS, ESQ.

 8        ADLAI HARDIN, ESQ.

 9

10

11    TOGUT SEGAL & SEGAL, LLP

12        Attorneys for Debtors

13        One Penn Plaza

14        New York, New York 10119

15

16    BY:  ANDREW WINCHELL, ESQ.

17

18

19    UNITED STATES DEPARTMENT OF JUSTICE

20    OFFICE OF THE UNITED STATES TRUSTEE

21        Attorneys for the EEOC

22        86 Chambers Street

23        New York, New York 10007

24

25    BY:  MATTHEW L. SCHWARTZ, ESQ.
```

4

1    BLANK ROME, LLP

2        Attorneys for Denso

3        405 Lexington Avenue

4        New York, New York 10174

5

6    BY:   MELISSA S. VONGTAMA, ESQ.

7

8    MARGARET MALLOY, ESQ., EEOC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1                    P R O C E E D I N G S

2            THE COURT:  Please be seated.  Okay.  Delphi

3    Corporation.

4            MR. LYONS:  Good morning, Your Honor.  John Lyons on

5    behalf of the debtors.

6            THE COURT:  Good morning.

7            MR. LYONS:  This is our twenty-first claims hearing.

8    And, Your Honor, and we have one contested matter today.  We

9    have two other matters that I'd like to take first, though.

10   They're handled by Togut Segal and they involve some

11   compromises at compromised motions.

12           THE COURT:  Okay.

13           MR. WINCHELL:  Good morning, Your Honor.  Andy

14   Winchell for Togut Segal & Segal, LLP, on behalf of the

15   debtors.  The first item on the agenda this morning is a motion

16   to approve for patents -- license settlement agreement with

17   Denso Corporation.  This arises out of the claims context

18   because Denso filed three claims, claims 12339, 12340, 12341,

19   for alleged patent infringement.  Each claim was in the amount

20   of 697,778 dollars.  One claim against DAS, LLC, one against

21   Delphi Corporation, and one against Delphi Technologies.

22           Your Honor, the settlement was arguably in the

23   ordinary course of business, but we, out of an abundance of

24   caution decided to bring this motion, give all parties an

25   opportunity -- some notice, and a chance to inquire about the

6

1   terms of the settlement.  We did receive one inquiry about the

2   settlement, that was from the creditors' committee, it came a

3   couple of weeks ago.  FTI responded and the creditors'

4   committee is now supportive of the settlement, so they did not

5   end up filing any objection.

6          After the filing of these three claims, there was

7   approximately a year/year and a half worth of arms length

8   negotiations between sophisticated parties, representing by

9   competent counsel, Melissa Vongtama of Blank Rome is here

10  representing Denso.  The result of this, had a license

11  settlement agreement, which we filed under seal, pursuant to

12  your order.

13         There are two remaining provisions of the settlement

14  agreement, one of which is obviously the withdrawal of the

15  three claims, that's not confidential at all.  The rest of the

16  settlement agreement contains highly sensitive pricing

17  information which is confidential and therefore we filed it

18  under seal.

19         THE COURT:  Because it's essentially the patent

20  license.

21         MR. WINCHELL:  Absolutely, Your Honor.  But

22  otherwise, Your Honor, we consider this in the best interest of

23  the estate and request it be approved.

24         THE COURT:  I reviewed the license, and I was going

25  to ask you but you've already told me, the creditors' committee

7

1   considered it also.

2           MR. WINCHELL:  Yes.

3           THE COURT:  So in light of that and there being no

4   objections, I'll approve the settlement.  As you noted also,it

5   includes approval of the license agreement.

6           MR. WINCHELL:  Thank you, Your Honor.

7           THE COURT:  Okay.

8           MR. WINCHELL:  And the second item, Your Honor, is

9   the claims objection hearing regarding the claim of Furukawa

10  Electric.  This is a purely housekeeping matter.  The claim was

11  superseded -- opposing counsel confirmed to us on Wednesday

12  that the claim should be expunged as being superseded.  We have

13  that with an e-mail they transmitted to us.  They're not here.

14  They did not want to go through the effort of having a

15  stipulation, they just intend to have us proceed.

16          THE COURT:  Okay.  So how's that going to be

17  memorialized, do you have an order on that?

18          MR. WINCHELL:  We'll have an order on that, yes.

19          THE COURT:  Okay.  Fine.  Then, I'll sign that when

20  you give it to me, the claim is conceded -- duplicate of --

21  superseded by subsequent proof of claim.

22          MR. WINCHELL:  Very good.  Thank you, Your Honor.

23          THE COURT:  Okay.

24          MR. LYONS:  Your Honor, the third item on the agenda

25  is the contested matter.  And that's the motion of the Equal

VERITETEXT/NEW YORK REPORTING COMPANY

212-267-6868                                          516-608-2400

8

1    Opportunity Commission for a leave to file a late proof of

2    claim.   I'll yield the podium to the United States.

3              THE COURT:   Okay.

4              MR. SCHWARTZ:   Good morning, Your Honor.   Matthew

                                                           De

                                                            l

                                                            e

5    Schwartz for the United States of America.   We're here for a

6    hearing on the United States' motion for leave to file a late

7    claim, that's the claim of the Equal Employment Opportunity

8    Commission.   At the outset, I would like to ask that this

9    hearing be adjourned to a time next week.   We were served with

10   Delphi's papers yesterday morning.   I have personally been on

11   trial before Judge Stein since the beginning of the month,

12   concluding yesterday, and so was not able to turn to the papers

13   until after that.   I don't think that we've had adequate time

14   to review them.   I would like to put in a response, especially

15   in view of the fact that Delphi's papers implicates serious

16   evidentiary problems, I think that should be briefed.   There

17   are large portions of the response that I feel should be

18   stricken, because they disclose improper settlement material.

19   And so we would ask at the outset that the hearing be adjourned

20   so that we could file reply papers.

21             THE COURT:   Well, let me first hear about the

22   evidentiary record for this matter.   I was provided with an

23   exhibit index which indicated that the last item in the index,

24   a January 8, 2008 e-mail, is in dispute.   I took from that that

25   the other items were not.   I didn't read the e-mail because I

9

1  knew it was in dispute.  Was that a fair assumption?

2      MR. SCHWARTZ:  It's a fair assumption, of course,

3  that we dispute the admissibility of item 8.  There is one

4  other item, it's an item actually that we've included as

5  Exhibit N to Ms. Malloy's declaration, that is admissible.  But

6  the use that Delphi  has made of that document is not

7  acceptable under the rules of evidence.  In addition, they have

8  disclosed the contests of settlement discussion in their motion

9  papers, their brief.  That is not reflected in any of the

10  documents.  And those portions of the brief should also be

11  stricken.  And there specifically, I'm referring to with

12  respect to Exhibit N, that is the conciliation letter from the

13  EEOC during the investigative process.  We included that

14  basically to give a full picture of the investigation.  And

15  because by the EEOC's regulations, they were required to enter

16  into conciliation efforts.  Under Rule 408, in other words, the

17  use of that settlement material was to rebut an argument of

18  undue delays, specifically, explicitly under the rules of

19  permissible use.  The use that Delphi has made of that document

20  is (1) to look at the actual terms of the conciliation offer,

21  to say this number, the number that's in that letter which may

22  have read, is 200,000 dollars, and that is the actual amount of

23  the claim.  And then they used that to try to impeach the

24  amount of the later settlement offer.  You may not have read

25  the e-mail but you read the number because its all throughout

10

1   their brief, so if you read the brief you know that.

2          THE COURT:   But you don't want to have either of the

3   settlement offers in for purposes of the amount of the claim?

4          MR. SCHWARTZ:   For purposes of the amount of the

5   claim, that's correct.

6          THE COURT:   I agree with you on that.

7          MR. SCHWARTZ:   And in addition, there is commentary

8   in Delphi's --

9          THE COURT:   I mean, it's admissible for other

10  purposes, but under 408 it can't be admitted to go to show the

11  amount of the claim.

12         MR. SCHWARTZ:   I think that is the only purpose that

13  Exhibit 8 is being offered.   I know in our conversations, Mr.

14  Lyons has said that this goes to the good faith prong of the

15  pioneer analysis.   But that can't be right, this is not good --

16  it doesn't have anything to do with the good faith of the EEOC

17  and filing the claim when it did.   If anything, it has to --

18         THE COURT:   Well, I haven't read it.   So as long as

19  it's not being admitted to show the amount of the claim Mr.

20  Lyons can make the argument and you can say that's what it's

21  doing, and I'll consider it at that point, if he wants to rely

22  on it.

23         MR. SCHWARTZ:   Okay.   And there are also statements

24  throughout the brief about the content of settlement

25  discussions.   And in particular, there is a suggestion in the

VERITETEXT/NEW YORK REPORTING COMPANY

212-267-6868                                         516-608-2400

11

1   papers that I threatened them that if they were to litigate
2   this -- that if they were to litigate this claim, I would have
3   moved to withdraw the reference in this case.  That is, first
4   of all, not at all what I said.  What I said was, if they were
5   going to litigate the merits of the claim, it might make sense
6   to agree to withdraw the reference so it can be consolidated
7   with the enforcement action in Buffalo, so as not to duplicate
8   effort.  But in any case, that also came in the context that
9   settlement is not in any way admissible in this proceeding.
10          THE COURT:  Well, why is that?  Everything you say in
11  the context of a settlement is not shielded.
12          MR. SCHWARTZ:  I think that under Rule 408 that's not
13  the case.  I think that discussions in the context of a
14  settlement are shielded.
15          THE COURT:  No, that's not right.  Not every
16  discussion.  If it goes to an issue of good faith, it isn't.
17  Now, you -- it's not that big a point, frankly.  I take with a
18  grain of salt the whole -- the whole issue.  But --
19          MR. SCHWARTZ:  That also goes to an issue on the
20  merits because these are not the relevant good faith arguments.
21  Again --
22          THE COURT:  But again, I'm just talking about the
23  evidentiary issues to see whether they really are something
                                                        De
                                                        l
                                                        e

24  that needs to be briefed.  So far I don't think they do.  You
                                                        De
                                                        l
                                                        e

25  won on one and I think legitimately you lost on the other and I

12

1   don't think any briefing would have changed that, particularly
2   since -- I'm telling you both right now, I think it's a very
3   peripheral point to begin with.
4           MR. SCHWARTZ:  Fair enough.  And just generally, I
5   would like an opportunity to be able to review the papers, to
6   read the cases cited in the papers, and to put in a reply.
7           THE COURT:  Well, I -- you know, I prepared for
8   this --
9           MR. SCHWARTZ:  Let me ask in the alternative then,
10  can I ask for the opportunity to put in post-hearing papers?
11          THE COURT:  Well, we see.  The law in this area is
12  quite clear.  There -- there's a leading Second Circuit case on
13  it, you've cited Pioneer, you cited Trap Rock, although not --
14  well, no, you cited both Trap Rocks.  And, you know, I don't
15  think there's any particular mystery here on the standard under
16  Pioneer.  If we go off on some other point, including the
                                                De
                                                l
                                                e

17  capacity in which the EEOC seeks damages that I think needs
18  additional briefing, I'll ask for it.  But, I just -- you know,
                                                De
                                                l
                                                e

19  this is -- I know this was adjourned once because – I recollect    De
                                                l
                                                e
                                                t

20  your letters, and it was something I prepared on already and
21  the parties are here on it, I just don't think I --
22          MR. SCHWARTZ:  I appreciate that, Judge.  I just --
23          THE COURT:  -- should adjourn it further.
24          MR. SCHWARTZ:  I just do want to note that prejudice
25  here is that Delphi's had our arguments for months.  We put in

13

1    a reply to their untimeliness objection that had the merits of

2    our arguments.  We've had their arguments functionally since 5

3    p.m. yesterday.

4            THE COURT:  Well, but -- you know, they haven't

5    violated any rule.  And again, this is -- the arguments are

6    pretty evident -- should be pretty evident to the movant and

7    everyone else.  I mean, it's a -- I just don't feel you're

8    particularly disadvantaged.

9            MR. SCHWARTZ:  Okay.  Well --

10           THE COURT:  So, as far as the record is concerned

11   then, is it -- it's fair to say that items 1 through 7 in the

12   exhibit index are agreed to as to admissibility?

13           MR. SCHWARTZ:  That's correct.

14           THE COURT:  And as number 8 is concerned, well, I

15   haven't looked at it.

16           MR. LYONS:  If I may, Your Honor.  I mean, again,

17   we're not introducing it to prove the amount of the claim.

18           THE COURT:  Okay.

19           MR. LYONS:  Rather, again, I think it's almost to

20   rebut the rebuttal of the contention of undue delay.

21           THE COURT:  All right.  Well, why don't we --

22           MR. SCHWARTZ:  Let me say one more thing on that

23   Exhibit 8, before we look at it.  A characterization in the

24   index that its an e-mail regarding expanding discovery is

25   grossly wrong.  Is an e-mail from me that begins and ends in

14

1    boldfaced letters with the phrase "for settlement purposes

2    only." It was not something that should have been disclosed.

3             THE COURT: Well, again, I don't accept the fact that

4    someone can write a settlement memo and keep it all out. But,

5    let me take a look at it.

6             (Pause in proceedings.

7             THE COURT: Okay. I guess, as long as its not being

8    introduced to show the -- some sort of admission or evidence as

9    to the amount of the claim, then I believe it's marginally

10   relevant. And I think it could serve as part of the record.

11   You can tell me why I shouldn't give it much attention, and I

12   may well agree with you, but I just -- I don't see why it

13   should be excluded.

14            MR. SCHWARTZ: Thank you, Your Honor. I suppose then

15   we'll move to the merits of the motion.

16            THE COURT: Okay.

17            MR. LYONS: As a threshold, though, the parties have

18   agreed that we are not going to introduce live testimony, we'd

19   rely on the papers and also the depositions which Your Honor

20   has in exhibit binder.

21            THE COURT: Except for the depositions, there's not

22   going to be any cross examination of any witnesses or the like.

23            MR. LYONS: That's correct.

24            THE COURT: Okay. All right.

25            MR. SCHWARTZ: And so as Your Honor said, about the

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                              516-608-2400

15

1  standard of excusable neglect, is well established by the
2  Pioneer case and by the Second Circuit in a line of cases.   And
3  there are four factors to consider.   And so let me just discuss
4  those factors and how they apply to this case.   But let me
5  stress at the outset, that this case presents a exceedingly
6  narrow question, whether when a law enforcement agency receives
                                                          De
                                                           l
                                                           e

7  a complaint by a single individual of unlawful conduct and        De
                                                           l
                                                           e
                                                           t

8   after a diligent investigation determines that there was
9   unlawful conduct against a class of employees, whether all of
10  that information is received after the bar date, whether the
                                                          De
                                                           l
                                                           e

11  agency acts with excusable neglect if they wait until they
12  complete their investigation to file a proof of claim in
13  bankruptcy.   And I think the answer to that case -- to that
14  question, that narrow question on the facts of this case,
15  should be yes.   And let me look to the four Pioneer facts.
16       The first, of course, is the reason for the delay.
17  And as Mr. Lyons points out in his opposition, this is the most
                                                          De
                                                           l
                                                           e

18  important factor in the Circuit.   The reason for this -- for
19  the delay is clear.   First of all, there is, I don't think, any
20  contest that the EEOC could not have filed its proof of claim
21  before the bar date.   They did not learn about the charge of
                                                          De
                                                           l
                                                           e

22  discrimination from Mr. Straughter until after the bar date.
                                                          De
                                                           l
                                                           e

23  In fact, the conduct giving rise to Mr. Straughter's claim of
                                                          De
                                                           l
                                                           e

24  discrimination did not occur until a month after the bar date.
25  So they -- the EEOC received the information after the bar

16



1  date, and then they went through their process.  And the
2  process is receive a charge of discrimination, investigate that
3  claim, including disclose it to the target of the investigation
4  and allow them to make a response, make a determination, enter

5  into conciliation efforts, if those conciliation efforts fail,

6  refer the case to the legal unit, the legal unit makes a

7  determination to -- whether or not to recommend further action
8  to the commissioners.  The commissioners of the EEOC in

9  Washington, decide in cases like this, whether an enforcement
10  action is appropriate.  If they decided that it is, an
11  enforcement action is filed.  And then and only then, could the
12  EEOC file a proof of claim.
13          THE COURT:  Wasn't that contradicted by your witness'

14  deposition?
15          MR. SCHWARTZ:  Absolutely not.  And that was one of
16  the misstatements of facts that I would have like to have
17  corrected in briefing.
18          THE COURT:  Let me just read the deposition.
19          MR. SCHWARTZ:  Absolutely.  What page are we at?
20          THE COURT:  Well, there are two different pages on
21  the deposition.  If you look at the bottom --
22          MR. SCHWARTZ:  This is the version in the binder?
23          THE COURT:  Yes.  And it's Ms. Malloy's deposition,
24  it starts on page 29.
25          MR. SCHWARTZ:  That's the page at the bottom.

17

1        THE COURT:  Right.  Line 6 on page 34 of the original
2    transcript, I guess.

                                              De
                                              l
                                              e
                                              t

3    "Q. Are you aware of the steps -- are you aware of any steps
4    that the EEOC must take to file a proof of claim in a
5    bankruptcy case?"
6    "A. I'm aware of some of the steps, yes."
7    "Q. What are those steps?"
8    "A. I can only testify as to this case."
9    "Q. This case is your only source of knowledge as to the
10   steps?"
11   "A. Yes."

                                              De
                                              l
                                              e
                                              t

12       She earlier testified about the Attorney Manuel with    De
                                                                 l
                                                                 e
                                                                 t

13   regard to enforcement actions.
14       MR. SCHWARTZ:  Judge, I think we can stop right
15   there.  She could only testify about this case.  In this case,
16   the EEOC commissioners had already authorized the District
17   Court litigation.  And so to say that they did not have to go
18   back to those commissioners to get further authorization to
19   file the proof of claim is not nearly the same thing as saying
20   they could have filed the proof of claim at the outset.  And
21   let me --
22       THE COURT:  That's your reading of her argument, her
23   question, "What authorizations do you need to file a proof of
24   claim in a bankruptcy case on behalf of the EEOC?"
25       MR. SCHWARTZ:  Everything is qualified by lines 11

VERITETEXT/NEW YORK REPORTING COMPANY
212-267-6868                                          516-608-2400

18

1   and 12, "I can only testify as to this case." If there's
2   ambiguity on that, as long as --
3           THE COURT:   And what is your evidence to show that
4   there are those limitations on filing a proof of claim?
5           MR. SCHWARTZ:   It's the confidentiality rules of the
6   EEOC.   The EEOC is not permitted to make public a charge of
7   discrimination until there is litigation.   Either until they
8   file litigation or until the claimant files litigation.   I'm
9   reading here from that enforcement manual, laws enforced by the
                                                                De
                                                                l
                                                                e

10  EEOC quoting 42 U.S.C. 2000e-5.   "Charges shall be in writing,
11  under oath or affirmation, and shall contain such information
12  and be in such form as the Commission requires.   Charges shall
13  not be made public by the Commission.   If the Commission
14  determines after such investigation that there's not reasonable
15  cause," it says "that you issue a right to sue letter."   And
                                                                De
                                                                l
                                                                e

16  then it says, that or they'll sue if they determine that it is
                                                                De
                                                                l
                                                                e

17  founded.   But the critical language, "charges shall not be made
18  public by the Commission."   Simply on the basis of a charge of
19  discrimination, the Commission could not have filed a proof of
20  claim, that is critical.   And that's sound public policy.   You
                                                                De
                                                                l
                                                                e

21  don't want the EEOC filing, in its own name, charges of
22  discrimination, until it determines that those charges have
23  merit.   It also, incidentally, would be an enormous waste of
24  public resources to require the EEOC to file proof of claims in
25  association with every unfounded charge of discrimination.

19

1   Earlier this week in the Holowicki case, the Supreme Court
2   observed that the EEOC receives approximately 175,000
3   complaints of ADA discrimination alone every year.  To require
4   the EEOC, an agency which receives no compensation as a result
5   of prosecuting these claims, to file a proof of claim in every
6   bankruptcy, every single time someone simply makes a complaint
7   of discrimination, it doesn't make sense and it's not permitted
8   under the EEOC's rules.  They were required to wait until
                                                            De
                                                             l
                                                             e

9   either Mr. Straughter had filed a District Court lawsuit, or,
                                                            De
                                                             l
                                                             e

10   because in this case they determined that his claims had merit,
11   they filed a District Court lawsuit to file the proof of claim.
12   And that is why there was good reason for the delay in this
13   case, because they had to substantiate the charge of
14   investigation because they were not permitted to publicize it.
15   That's the first Pioneer factor.
16        Second Pioneer factor, the prejudice to the debtor.
17   You seem like you saw questions.
18        THE COURT:  This really sounds totally bizarre to me
19   and totally contradictory to the definition of claim in the
                                                            De
                                                             l
                                                             e

20   Bankruptcy Code.                                       De
                                                             l
                                                             e
                                                             t

21        MR. SCHWARTZ:  I think that is fair, Judge.  And the
22   point that I'm trying to make is that the claim of --
23        THE COURT:  Why wasn't this argued at all in the
24   motion?  Why wasn't it argued at all at deposition?
25        MR. SCHWARTZ:  Because it came to my attention

20

1    earlier today --

De
l
e
t

2        THE COURT:  Weren't you defending the deposition?
3        MR. SCHWARTZ:  I was, Judge.  I didn't know about
4    this --
5        THE COURT:  So this isn't like a -- a, you know,

De
l
e

6    creative use of what is the meaning of the word is?  You were
7    truly mistaken by that question and her answer, that you refer

De
l
e

8    to a bankruptcy case?
9        MR. SCHWARTZ:  No.  Everything -- everything has to
10   be taken in the context of the conversation.  She said that she
11   could only testify to this case.  She doesn't --
12       THE COURT:  She's the witness on excusable neglect.
13       MR. SCHWARTZ:  No.  She is a fact witness.
14       THE COURT:  I know.  And it's a fact issue.
15       MR. SCHWARTZ:  No, no.  That's fair but --
16       THE COURT:  And she was asked -- never mind.  You
17   know, I'll take it for what its worth.
18       MR. LYONS:  Your Honor, if I could make just one
19   point.  The bar date order says all attached documentation is
20   confidential.  So if there's some confidentiality concern,
21   paragraph 4 of the bar date order makes it clear that all
22   supporting documentation to a proof of claim --
23       THE COURT:  What is the --
24       MR. LYONS:  -- are confidential.
25       THE COURT:  -- citation of the document you're

VERITETEXT/NEW YORK REPORTING COMPANY
212-267-6868                                              516-608-2400

21

1    reading from? Is it a CFR or is that confidential --
2        MR. SCHWARTZ: This is the statute itself. It's 42
3    U.S.C. Section 2000E-5. And that, Judge --
4        THE COURT: I'm sorry, 2000?
5        MR. SCHWARTZ: It's 2000E, not in parens, just 2000E-
6    5.
7        THE COURT: Okay.
8        MR. SCHWARTZ: And that's -- that's actually a
9    sentence -- a provision under Title 7, that is incorporated
10   into the ADA by Section 107 of the ADA.
11       THE COURT: Okay. So you're reading the statute
12   itself.
13       MR. SCHWARTZ: I was reading the statute itself. You
14   asked why we didn't mention this earlier. Frankly, the reason
15   that we didn't mention this earlier is because we've been
16   forced to litigate this in an extremely rushed way and, you
17   know, it just came to my attention. And I apologize for that.
18   And that's why I would have liked the opportunity to put in
                                                        De
                                                         l
                                                         e
19   additional briefing. However, the fact remains that the EEOC
20   was not permitted to disclose the claim until litigation was
21   filed. And that absolutely justifies the delay.
22       The next two factors, the prejudice to the debtor and
23   prejudice --
24       THE COURT: Well, I have a question. You're saying
25   this witness doesn't know anything about the EEOC's policy in

22

1    bankruptcy cases -- the, right?  Just this case?
2         MR. SCHWARTZ:  That's correct.
3         THE COURT:  Do you have any evidence that the EEOC
4    does or does not file proofs of claim in other bankruptcy
5    cases?
6         MR. SCHWARTZ:  Does or does not file proofs of claim?
7         THE COURT:  Right.
8         MR. SCHWARTZ:  I don't have any evidence one way or
9    the other.
10        THE COURT:  So you don't have any evidence as to
                                                      De
                                                       l
                                                       e

11   whether they file claims before litigation ever, or only after
12   litigation is commenced?
13        MR. SCHWARTZ:  Not as I stand here today.
14        THE COURT:  Okay.
15        MR. SCHWARTZ:  Okay.  And moving on to the
16   prejudice --
17        THE COURT:  So the argument about the policy point is
18   not backed up by any specific facts as to the EEOC's actual
19   practices on whether, notwithstanding the policy argument you
20   made, it does or does not file proofs of claims in bankruptcy
                                                      De
                                                       l
                                                       e

21   cases?
22        MR. SCHWARTZ:  That is not a policy argument, that is
23   a statutory argument.
24        THE COURT:  No.  You said think of the policy, Judge,
25   if we had to do this.

23

1    MR. SCHWARTZ: No. I do not know the evidence
2    underlying the policy, that's correct. The policy, though,
3    certainly makes sense. I believe, again, the reference to the
4    number of ADA claims, as I said, comes from the Supreme Court's
5    case earlier this week in the Holowicki decision.
6    You know, the reason for the a delay, and excusable
7    neglect, is, according to the Supreme Court from Pioneer,
8    supposed to be a flexible inquiry. And when you say it's a
9    flexible inquiry, that means you have to look at the entire
10   context and what is excusable for the EEOC, where a law
11   enforcement agency may not be excusable for the Acme
12   Corporation. But that's why I began by saying that this is a
13   case that presents an extraordinarily narrow issue. And then
14   that is the segue to the prejudiced point. Because the
15   prejudice really that arises out of allowing this claim, is

De
l
e

16   that it opens the floodgates. I asked last night, Mr. Unrue,
17   what are the prejudices that flow to Delphi if this claim is
18   allowed. He said if the claims are allowed that it endangers
19   the bankruptcy. And I said what if only this one were allowed?
20   He said that might be different. And I said well, what if this
21   one were allowed in some small amount? He said well, that
22   might be different.
23   This case -- this claim is sui generis, it is the

De
l
e

24   claim of a law enforcement agency asserting law enforcement
25   charges on behalf of grieved Delphi employees who were the

24

1   victims of a facially unlawful policy. And the EEOC didn't
2   know that it was facially unlawful until they were able to
3   investigate it. And even now, they don't know the full extent
4   of the unlawfulness because --
5           THE COURT:  Let me ask you about that. Because if
6   its facially unlawful, in the response of Delphi to the first
7   inquiry, which is attached to Ms. Malloy's declaration and is
8   also quoted at paragraph 11. That response was on November 6,
9   2006.
10          MR. SCHWARTZ:  Which exhibit is this, Judge.
11          THE COURT:  Well, it's attached as Exhibit H, but she
12  also quotes at paragraph 11 of her declaration.
13          MR. SCHWARTZ:  Okay.
14          THE COURT:  And the response said, "it has been
15  Delphi's policy to require this of all employees." So as far
16  as investigating whether this is a pre or post-petition
                                                        De
                                                         l
                                                         e

17  claim, on November 6th they said it -- everyone.
18          MR. SCHWARTZ:  That's not what they're saying now,
19  Judge.
20          THE COURT:  No, I know. But that's what they said
                                                        De
                                                         l
                                                         e

21  then. What more was there to investigate?                De
                                                         l
                                                         e
                                                         t

22          MR. SCHWARTZ:  Because, first of all, they have to
23  determine whether that's true. And they have to determine what
24  it means. Does that mean of all employees forever. Does that
25  mean for all employees at all locations. Does that mean for

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                    516-608-2400

25

1    all employees at the Rochester plant on August 16, 2006  They    De
l
e
t

2    don't know what that means.  They have an obligation to
3    investigate it.  That is why the EEOC exists.  And now, Delphi
4    has taken a very different position, which is that they never
De
l
e

5    really had such problems and that that policy doesn't exist    De
l
e
t

6    every place, they won't tell us where the policy exists.
7    That's' why we're in discovery in the Western District of New
8    York, because we don't even know what the policy is.  We still
9    don't understand the contours of this claim, and that's --
10   that's why we are litigating.
11       THE COURT:  But as far as having the basis for
12   asserting a claim, I just really -- again, leaving aside your
13   point about some hoops need to be gone through before a proof
14   of claim is filed, several hoops, what more investigation
15   really needed to be done to at least have been able to say, at
16   that date, that it appeared reasonable to the EEOC based on
De
l
e

17   Delphi's own statement that there was a pre-petition claim?
18       MR. SCHWARTZ:  The investigation that occurred
19   between November 6, 2006 and May 27, 2007, when the letter of
20   determination was made.  This response by Delphi was the first
21   response to the charge of discrimination made by Mr.
De
l
e

22   Straughter.  It incidentally only responded to his individual    De
l
e
t

23   charge and not because there were not at that point any class
24   charges.  They did not, in this response, also respond to the
25   requests for information that the EEOC had propounded, they

                                                                        26

1   didn't do that until a little bit later.  So all we had was a
2   position statement by Delphi that their practices were entirely
3   lawful.  A position statement by Delphi that their practices
                                                                De
                                                                l
                                                                e

4   were entirely lawful was not, apparently, enough for the EECO
5   to feel comfortable issuing a letter of determination.  And
6   with respect, I think it is not for us to second guess the way
7   that the EEOC investigates claims of discrimination, that is
8   why they exist.  And this investigation, I think by all
9   objective measures, have been extraordinarily quickly, there
10  are not delays in here.  And the delays that do exist are while
11  they were waiting for information from the Delphi Corporation.
12          THE COURT:  So the determination was made May 22nd?
13          MR. SCHWARTZ:  That is when the determination was
14  made.  At that point, they were required to enter into
                                                                De
                                                                l
                                                                e

15  conciliation efforts.  This is all by reg.  The conciliation
16  efforts failed a month later and they were required to notify
17  Delphi that they failed.  They did that, I believe, on June 19,
18  2007.  At that point, again, by regulation, the case was
19  referred to the legal unit.  The legal unit did its assessment
20  of the case and made its recommendation to the commissioners in
21  Washington.  The commissioners of the EEOC are the only people
22  who have the authority to authorize an enforcement action in
23  Federal District Court in cases like this one.  They did and
24  that complaint was filed on September 28, 2007.  At that point,
25  when the District Court complaint was filed, the charge of

27

1    discrimination and the EEOC's findings were effectively
2    unsealed.  And so, as well, they filed their proof of claim in
3    this bankruptcy.  This is not a case, Judge, like Trap Rock,
4    where the agency -- the county in that case, who is prosecuting
                                                              De
                                                               l
                                                               e

5    a circa claim was essentially trying to game the system, where
6    they filed an enforcement action instead of filing a proof of
7    claim.   The EEOC acted entirely appropriately here when they
8    were ready to unveil to the world that they had determined that
9    Delphi had an unlawful policy of requiring its employees to
10   execute releases to all their medical records, whenever they
11   called in sick.  When they were ready to release that to the
12   world, they both filed a complaint in Federal District Court
13   and filed a proof of claim to protect the monetary component of
14   their damages in this Court.  That's what you want a
15   responsible law enforcement agency to do.  That act, again,
16   causes no prejudice to the debtors because it has no floodgate
17   effect.  It is entirely reasonable, and it certainly was all
18   done absolutely in good faith.  This is the model of an
19   investigation by a law enforcement agency.  They received a
20   claim, they investigated it quickly, they made a determination,
21   they filed a lawsuit, and simultaneously they filed a proof of
22   claim.  They were not permitted to file a proof of claim
23   earlier, it would not have been responsible to file a proof of
24   claim earlier.  It would not have been reasonable.  And again,
25   excusable neglect standard, has to take into account the

28

1    position of the creditor.  And for the EEOC, an agency that
2    gets none of the money if this claim's allowed -- gets none of
3    the money back, even to offset its litigation costs to require
                                                          De
                                                          l
                                                          e

4    them to file protective proofs of claims which both disclose      De
                                                                       l
                                                                       e
                                                                       t

5    the charge of discrimination in violation of their
6    confidentiality rules, disclose the charge of discrimination,
7    you know, in a way that embarrasses potentially the debtors,
8    disclose the charge of discrimination in a way certainly that
9    can embarrasses the claimant, who in many cases, may be current
10   employees of the corporation.  And to file a charge of dis --
11   to file a proof of claim --
                                                          De
                                                          l
                                                          e

12          THE COURT:  I'm sorry, how does it embarrass the
13   claimant?
14          MR. SCHWARTZ:  The claimant can still be working for
15   the corporation.  And so to, you know, disclose to the world
16   that you have accused your boss, your current boss, of
17   discrimination --
                                                          De
                                                          l
                                                          e
                                                          t

18          THE COURT:  But he -- Mr. Straughter's done that.
                                                          De
                                                          l
                                                          e

19          MR. SCHWARTZ:  Mr. Straughter had been fired.
20          THE COURT:  Right.
21          MR. SCHWARTZ:  It was pretty obvious.
22          THE COURT:  Right.
23          MR. SCHWARTZ:  He was no longer employed in this
24   particular case.  But, well --
25          THE COURT:  Oh, I see, you're arguing the policy

29

1    again without --
2         MR. SCHWARTZ:  I'm arguing that policy.
3         THE COURT:  All right.  Fine.  I got it.
4         MR. SCHWARTZ:  That's correct.  It doesn't make sense
5    to require the EEOC, particularly on the facts of this case, to

                                              De
                                              l
                                              e

6    have filed a proof of claim in the moment that Mr. Straughter
7    filed his charge of discrimination.
8         And, in particular, in this case, all of this
9    happened after the bar date.  There's no conceivable way for
10   the EEOC to file a timely claim.  So really, we're only
11   quibbling about the delay now, whether they should have filed
12   the proof of claim a month after the bar date or a year after
13   the bar date.  And I submit to you, on the facts of this case,
14   it was entirely reasonable and certainly excusable for the EEOC
15   to do a quick and responsible investigation consistent with its
16   regulations and statutes before filing the proof of claim.  And
17   for that reason, the proof of claim --
18        THE COURT:  Are you telling me, as an officer of the
19   Court, that you do not know, and have not made an inquiry, of
20   the EEOC as to its policy in filing proofs of claims in

                                              De
                                              l
                                              e

21   bankruptcy cases?
22        MR. SCHWARTZ:  Yes.
23        THE COURT:  You just -- you literary don't know.
24        MR. SCHWARTZ:  I literary don't know, Judge.
25        THE COURT:  Okay.  All right.  That's all I want to

30

1   know.  That's all I want to know.  Okay.

2         MR. SCHWARTZ:  Unless, there are questions, I'll

3   submit.

4         THE COURT:  It's not referred to in any regs or

5   anything like that?

6         MR. SCHWARTZ:  I would have been happy to have put in

7   briefing with all the regulations.

8         THE COURT:  Okay.  How does the statute define

9   enforcement action?

10        MR. SCHWARTZ:  I don't know the answer to that.

11        THE COURT:  Okay.  I take it there's no cap on the

12  claim at this point, right?

13        MR. SCHWARTZ:  There is not.  As you now know, we

14  have begun to enter into settlement discussions, we have never

15  received a counteroffer from the debtors.

                                              De
                                               l
                                               e

16        THE COURT:  Okay.  Mr. Lyons?

17        MR. LYONS:  I do Your Honor.  I'm sorry, Your Honor.

18  Your Honor, I'll be very brief.  I mean, we're going to rely on

19  our papers.  You know, again, the burden of proof is on the

20  United States to prove that they've met the Pioneer factors of

                                              De
                                               l
                                               e

21  excusable neglect.  Your Honor, the length of the delay -- I

22  mean putting the proof of claim in is to give a placeholder to

23  know that there may be a claim.  There's nothing horribly

24  embarrassing or sensitive about that.  The bar date order,

25  frankly, encompasses any attachments are confidential.  So I

31

1   think it's kind of an after the fact excuse, after Ms. Malloy
2   testified, and I asked her pretty squarely are there any
3   authorizations, she didn't believe they were, and now we're
4   hearing this today.  You know, again, they decided to submit
5   whatever proof that they had in support of their motion.  I'm
6   frankly surprised they didn't have the investigator here.  The
7   primary investigatory, Ms. Carlo, who was involved in this back
8   in September of '06, who -- it's not like this is some charge
                                                    De
                                                     l
                                                     e

9   that Mr. Straughter came up with: she drafted the charge.  She    De
                                                     l
                                                     e
                                                     t

10   drafted it for him, he reviewed it --
11          THE COURT:  All the argument they're making is that
12   they're precluded by statute from filing a proof of claim.
13   That's the only argument that has any possible merit here.
14          MR. LYONS:  And on that, Your Honor, is -- you know
15   steps could have been taken to make it even more confidential
16   if that were, in fact, the case.  Again, you know, Chapter 11
17   in this case, we need to know what claims there are.  We have
18   investors who are depending upon the answer as to what our
19   claims pool is.  We have an EPCA target that we have to meet.
20   You know, we can't wait until, you know, three years after we
21   emerge to all of a sudden find out they've completed their
                                                    De
                                                     l
                                                     e

22   investigation; we need to know if there's a claim.  And also
23   another point, Your Honor, we served all of our employees with
24   the bar date order.  Not a single claimant filed a proof of
25   claim by the bar date.  So certainly those claimants would know

32

1   if they had a violation, and none of them have filed a proof of
2   claim.  The EEOC is just seeking damages on behalf of these
                                                              De
                                                              l
                                                              e

3   employees.  So there's another grounds, apart from the whole
4   excusable neglect, Your Honor, why the other employees would be
5   -- would be bound by the bar date order.  They all got the bar
6   date order, none of them filed a claim, and we briefed that in
7   our papers.
8        So, Your Honor, I really don't have much more, we'll
9   rely on the papers.  We don't believe that they've met the
10  burden under Pioneer.  There's no explanation as to the length
11  of delay.  It was within their reasonable control.  There's
12  tremendous prejudice to the debtors.  It will unduly lengthen
13  proceedings.  And that's where the -- and he may disagree with
14  what was said on the -- withdrawing the reference to estimate
15  the claim, but that would no question add delay to be able to
16  estimate this claim if we had to, you know, go out to Buffalo
17  to estimate this claim within the time period that we have to
18  estimate this claim, which is one month before emergence, Your
19  Honor.  And frankly, good faith, we've laid out the facts,
20  that's just up to Your Honor how Your Honor wants to view that,
21  we've just laid it out.  With having a 200,000 dollar offer and
22  then come in with a fifteen million dollar cap, certainly that
                                                              De
                                                              l
                                                              e

23  goes to the issue of we're negating a negative contention of
24  undue delay for under Federal Rule 408.  Unless Your Honor has
25  any questions, I'm prepared to rest on our response.

33

1           THE COURT:  Okay.  Do you have a response to the
                                                        De
                                                         l
                                                         e

2      argument that the -- the actual employees got notice of the bar
                                                        De
                                                         l
                                                         e

3      date, and obviously knew about the policies?  They may or may
4      not have known that it was subject to attack, but they had
5      notice?
6           MR. SCHWARTZ:  Two responses.  One, there's no
                                                        De
                                                         l
                                                         e

7      evidence that Mr. Straughter was served and there's -- you
                                                        De
                                                         l
                                                         e

8      know, artful drafting over there, but Mr. Straughter was not
9      working for Delphi at the time that the bar date order was
10     served on the employees.  So there's no reason to believe that
11     he got it, and he was the charging party in this case, first
12     point.
13          Second point, the fact that the employees may have
14     been aware of the policy is very, very different from saying
15     that they were aware that they had a claim.  This is not an
16     obvious form of discrimination that we're talking about in this
17     case.  This is not "we are firing you because of your race or
18     gender."  This is a policy that required employees to, you
                                                        De
                                                         l
                                                         e

19     know, execute releases for their medical records when they
20     called in sick.  It is an unlawful policy and a discriminatory
21     policy under the law, but not at all obvious to the common
22     person that it is either unlawful and certainly not unlawful in
23     a discriminatory way.  As evidence of that fact, I point to the
24     incredible paucity of cases that discuss this particular point
25     of discrimination.  Really, I'm aware of two, the Conway case

VERITETEXT/NEW YORK REPORTING COMPANY

212-267-6868                                          516-608-2400

34

1   from the Second Circuit and Judge Scheindlin's decision in the
2   Transport Worker's Union case.  So to say that they were aware
3   of the policy is not to say that they were aware that they had
4   a claim.
5        I don't think in any case, that Mr. Lyons is making
6   an estoppel --
7        THE COURT:  You know -- look, let me make two -- let
8   ask you two questions related to that.  First of all, as far as
9   the intricacies of the law are concerned, I understand your
10  point.  I doubt any employee would have read the case law.  On
11  the other hand, if you had a policy that said you can be fired
12  unless you provided all your medical records, human nature
13  being what it is, someone might be offended by that.
                                                        De
                                                         l
                                                         e

14       MR. SCHWARTZ:  Mr. Straughter was.  And he was the
15  first person to bring it to the attention of the EEOC.  And
16  bear in mind, this was not, at least to my knowledge --
17       THE COURT:  No, but what I'm saying -- but in that
18  sense it doesn't seem esoteric to me, you know.  It seems
                                                        De
                                                         l
                                                         e

19  analogous to situations where people don't necessarily know the
                                                        De
                                                         l
                                                         e

20  ins and out of securities laws but nevertheless feel sometimes   De
                                                         l
                                                         e
                                                         t

21  that they were defrauded by debtor.
22       MR. SCHWARTZ:  That's right.
23       THE COURT:  In those cases the courts have said if
24  someone is looking to certify a class, now I understand your
25  class is being -- your action, on behalf of the class, is being

35

1  brought by a government agency as opposed to an individual lead
2  plaintiff.  But the courts have said, Judge Rakoff, Chief Judge
3  Bernstein, and other courts have said, Judge Garrity from this
4  district, that there's a big distinction when someone seeks to

5  certify a class in a bankruptcy case after the bar date,

6  because the members of the class got notice and they haven't

7  filed a proof of claim.  Class certifi -- you know, certifying

8  them undermines the bar date.  So what's your response to that?
9      MR. SCHWARTZ:  A few responses.  The first one is I
10  think that it was not nearly as clear to Delphi employees that
11  this was the policy.  And, in fact, the policy of firing
12  employees was limited to a small class of probationary

13  employees that Mr. Straughter fell in.  So that day-to-day
14  employees of Delphi may have been denied sick pay for those
15  days when they were not -- when they didn't execute releases,
16  but they wouldn't have been fired.  And so prior to where
17  someone would go to a lawyer over a day or two's loss of sick
18  leave pay, that's one point.  The second point, I think --
19      THE COURT:  I'd get pretty mad if someone asked me to

20  turn over all my medical records.  That's the type of thing
21  that people get mad about.  But so -- go ahead.
22      MR. SCHWARTZ:  And there were a few other people who
23  complained and we are starting to learn this in discovery.  As
24  we are getting names of people from Delphi, there were people

25  who complained.  Delphi tells us that no one else was ever

36

1   fired, I don't know if that's the case.  And it may be that
2   people felt aggrieved.  You know, I don't know what the case
3   is.
                                                    De
                                                     l
                                                     e
                                                     t

4          The second, and I think more important point, is that
5   that is essentially an estoppel argument.  And the estoppel
6   argument can go to the merits of our claim, say that we should
7   be estopped from recovering on the claim.  I don't think it
8   goes to any of the Pioneer factors, whether it goes to whether
9   the claim should be permitted to be filed in the first place,
10  it goes to whether or not it should be allowed.
11         Finally, I would point out to you, this argument was
12  an argument first raised in the papers that I received last
13  night at 5 p.m. and we have not had an opportunity to respond
14  to it.
15         THE COURT:  Okay.  Anything else?
16         MR. LYONS:  Just very quickly.  You know, if Mr.
                                                    De
                                                     l
                                                     e

17  Straughter was just involved, Your Honor, we wouldn't be here.
                                                    De
                                                     l
                                                     e

18  I mean, I think if there's liability to Mr. Straughter it would
19  be an administrative --
20         THE COURT:  Well, it's admit -- it's post-petition.
21         MR. LYONS:  It's post-petition, exactly.  So we're
22  really here because of the other unnamed, you know, claimants
23  that, you know, that the EEOC asserts are out there, and that's
24  really why we're here.
25         And as to the argument on the bar date and the other

VERITEXT/NEW YORK REPORTING COMPANY

37

1    employees, again, I think any kind of discovery accrual
2    analysis, Your Honor, it's always the facts. Did you -- were
3    you aware of the facts? Whether you understood what claim
4    arises out of those facts does not go to what point in time the
5    particular plaintiff had awareness of the facts giving rise to
6    this cause of action.
7         MR. SCHWARTZ:  Just one factual note, Judge.  They
                                                    De
                                                    l
                                                    e

8    have objected on timeliness grounds to Mr. Straughter's
9    personal proof of claim, that's part of the twenty-sixth
10   omnibus objection.
11        MR. LYONS:  If we did, Your Honor, it's inadvertent.
                                                    De
                                                    l
                                                    e

12   I mean, again, the timeliness of Mr. Straughter's claim is
13   governed by the administrative bar date, which is established
14   under the plan.
15        THE COURT:  Okay.  All right.  Well, I'll take a
16   break and read the statute that was cited to me.  And so I'll
17   be back probably at 11:30.
18        (Recess from 10:55 a.m. to 11:44 a.m.)
19        THE COURT:  Please be seated.  Okay.  Before I
20   proceed, is Ms. Malloy present?
21        MR. SCHWARTZ:  Yes, Judge, she is.
22        THE COURT:  Ms. Malloy, if you can come up, please.
23   I understand the parties have waived any sort of direct
24   testimony, but I have a question of you as the declarant and as
25   the person who was deposed.  I'm not going to put you under

38

1   oath because you are an officer of the Court.  But my question

2   is, are you aware of any policies or practices of the EEOC with

3   respect to filing proofs of claim in a bankruptcy case, other

4   than that particular proof of claim that you filed?

5          MS. MALLOY:  No, Your Honor, I don't know the

6   policies or practices or --

7          THE COURT:  Okay.

8          MS. MALLOY:  -- whether there are any.

9          THE COURT:  Okay.  Very well, thank you.  You can sit

10  down, as can you, unless you have something to say.

11         MR. SCHWARTZ:  No, sir.

12         THE COURT:  Okay.  All right.  I have before me a

13  motion by the United States on behalf of the Equal Employment

14  Opportunity Commission, or the EEOC, to deem a proof of pre-

15  petition claim filed in these Chapter 11 cases, claim number

16  16727, timely filed.  That motion is necessary because the bar

17  date in these Chapter 11 cases was July 31, 2006 and the EEOC

18  proof of claim was filed on October 16, 2007.  The U.S.'s

19  motion is made pursuant to Bankruptcy Rule 9006(b)(1) and the

20  case law interpreting that rule, first and foremost, Pioneer

21  Investment Services Co. v. Brunswick Associates Ltd.

22  Partnership, 507 U.S. 380 (1993).  The general standard for

23  determining such a motion was set forth in the Pioneer

24  Investment Services case, but the Court is also guided by the

25  Second Circuit's interpretation and application of that

39

1    standard in Midland Cogeneration Venture Ltd. Partnership v.

2    Enron, (In re Enron) 419 F.3d 115 (2d Cir. 2005).  The standard

3    is generally well settled.  Bankruptcy Rule 9006(b)(1) permits

4    a claimant to file a late proof of claim if the failure to

5    submit a timely proof of claim was due to "excusable neglect."

6    The burden of proving excusable neglect is on the claimant

7    seeking to extend the bar date.  In re R.H. Macy & Co., 161

8    B.R. 355, 360 (Bankr. S.D.N.Y. 1993).  The Supreme Court in

9    Pioneer developed a two-step test to determine whether the

10   cause for a late filing was due to excusable neglect.  First,

11   the movant must show that its failure to file a timely claim

12   constituted neglect, as opposed to willfulness.  Neglect

13   generally being attributed to a movant's inadvertent mistake

14   for carelessness, 507 U.S. at 387-88.  After establishing

15   neglect, as opposed to willfulness or a knowledge of the bar

16   date and the failure to show any basis for neglecting it, the

17   movant must show by a preponderance of the evidence that the

18   neglect was excusable.  That analysis is to be undertaken on a

19   case-by-case basis, under the particular facts of the case.

20   Although the Court is to be guided by and make the

21   determination pursuant to a balancing of the following factors:

22   the danger of prejudice to the debtor, the length of the delay

23   and whether or not it would impact the case, the reason for the

24   delay, in particular whether the delay was within the control

25   of the movant, and finally, whether the movant acted in good

40

1    faith, Id. at 395.

2          In the Midland Cogeneration case the Second Circuit,

3    in upholding the lower court's determination that a late filed

4    proof of claim would not be deemed timely filed stated, "we

5    have taken a hard line" in applying the Pioneer test.

6    Silivanch v. Celebrity Cruises Inc., 333 F.3d 355, 368 (2d Cir.

7    2003) in a "typical" case, "three of the Pioneer factors," the

8    length of the delay, the danger of prejudice and the movant's

9    good faith "usually weigh in favor of the parties seeking the

10   extension," Id. at 366.  We noted though that "we and other

11   circuits have focused on the third factor, "the reason for the

12   delay, including whether it was within the reasonable control

13   of the movant," Id.  And we cautioned "that the equities will

14   rarely, if ever, favor a party who fails to follow the clear

15   dictates of a court rule" and "that where the rule is entirely

16   clear, we continue to expect that a party claiming excusable

17   neglect will, in the ordinary course, lose under the Pioneer

18   test," Id. at 366-67.  And that quotation appears in the

19   Midland Cogeneration case at 419 F.3d at 122-123.  See also In

20   re Musicland Holding Corporation, 356 B.R. 603 (Bankr.

21   S.D.N.Y.) in which Chief Bankruptcy Judge Bernstein stated that

22   the Second Circuit focuses on the reason for the delay in

23   determining excusable neglect under Pioneer and that the other

24   factors are relevant only in close cases.

25         Strict enforcement of a bar date is no mere and

41

1    unimportant procedural matter in a Chapter 11 case.  And the

2    bar date and a consequent filing of claims before the bar date

3    allows a debtor-in-possession, such as these debtors, to

4    evaluate the claims against the estate and formulate and

5    negotiate a plan that relates to the claims as filed, In re

6    Drexel Burnham Lambert Group, Inc. 148 B.R. 1002, 1008-10

7    (Bankr. S.D.N.Y. 1993).  Allowing late filed claims, especially

8    after their plan is confirmed, subjected debtor to prejudice

9    because it would have to renegotiate a myriad of settlements.

10   In this case, at least that form generally speaking, the basis

11   for a Chapter 11 plan, which are negotiated and set forth for

12   the Court to consider in contemplation of the known claims

13   asserted against the estate.  Again, See Drexel Burnham at 148

14   B.R. 1008-10, see also Midland Cogeneration 419 F.3d at 129.

15        Furthermore, allowing a late claim that materially

16   alters the distribution to creditors would prejudice the

17   creditors who relied on the disclosed distribution when voting

18   to accept or reject the plan, Id.  In light of the importance

19   of collecting on all of the allowable claims against the estate

20   in one forum and to permit the parties to proceed to consider a

21   Chapter 11 plan in light of those claim, Congress interpreted

22   the term claim in the Bankruptcy Code extremely broadly.  As

23   set forth in Section 1015 of the Bankruptcy Code, the term

24   claim means a right to payment, whether or not such right is

25   reduced to judgment, liquidated, unliquidated fixed,

42

1    contingent, matured, unmatured, disputed, undisputed, legal,

2    equitable, secured or unsecured, or a right to an equitable

3    remedy for breach of performance, if such breach gives rise to

4    a right to payment.  Whether or not such right to an equitable

5    remedy is reduced to judgment, fixed contingent, matured,

6    unmatured, disputed, undisputed, secured, or unsecured.

7          In this Chapter 11 case the reasonable allowed amount

8    of unsecured claims against the debtors' estate took on even

9    more significance than in most Chapter 11 cases.  That is,

10   because over a year ago it became clear that the debtor, to

11   achieve all the various goals that it wanted to achieve in the

12   case, including the preservation on a frozen basis of its

13   pension plan, needed outside investors to agree to invest

14   considerable amount of money in the debtors pursuant to a plan

15   of reorganization.  Part of that investment decision, as

16   negotiated with the plan investors and the creditor and

17   shareholder committees and other interested parties, was a cap

18   on the allowed amount or allowable amount of unsecured claims

19   as of the effective date of the plan.  As ultimately negotiated

20   in the so-called EPCA agreement, that cap was 1.45 billion

21   dollars, as specified in the agreement.  The Court, at the

22   confirmation hearing in this case, that began on January 7th of

23   this year, took testimony as to the debtors' ability to satisfy

24   that cap.  At the time of the confirmation hearing in that

25   testimony, pursuant to the debtors' analysis and the Court's

43

1    determination of timely filed claims, that would meet the

2    definition of the claim in the EPCA cap, the debtors had

3    satisfied the cap by approximately two million dollars.

4    Subsequently, the Court has continued to deal with the debtors'

5    expedited process for dealing with claims to which they object

6    and there have been further rulings on claims as well as

7    further settlements, and as set forth in the deposition of Mr.

8    Unrou, who has primarily responsibility, as an officer of the

9    debtors, for the claim liquidation process.  Taking into

10   account timely filed claims, the debtors are now approximately

11   twenty-four million dollars under the EPCA cap.  And again,

12   under the EPCA, debtors will not be able to obtain the

13   investment.  And consequently under their Chapter 11 plan,

14   which I confirmed by final -- now final order in January of

15   this year, will not be able to emerge from Chapter 11 unless

16   they remain under that cap.  But, of course, the cap is only an

17   added example of the importance of timely compliance with the

18   bar date in these particular cases.  In addition to it, the

19   parties-in-interest assessment of properly allowable claims. as

20   in most Chapter 11 cases, as recognized by Drexel in the Second

21   Circuit in Midlantic, form the critical backdrop for the plan

22   as proposed, negotiated and ultimately confirmed by the Court,

23   in the collective process of these cases.

24        The material facts surrounding or underlying the

25   present motion under 9006(b) are not, as I see it, contested.

44

1   And the EEOC, through Ms. Malloy's declaration, primarily
2   alleges that on or about August 28th a former employee of one
3   of the debtors, Stanley Strauder, contacted the EEOC regarding
4   a potential claim for discrimination against Delphi.  He was a
5   temporary Delphi employee hired post-petition and terminated
6   post-petition, allegedly he believed in violation of the ADA.
7   He believed that he was terminated improperly based upon
8   Delphi's sick leave policy, which apparently required employees
9   who called in sick to execute a release that would allow
10  Delphi, or at least the entity employing Mr. Strauder, to
11  obtain medical records relating, not just to the employee's
12  reason for taking sick days, but the employees entire medical
13  history.
14      Ms. Malloy's declaration, which is Exhibit 1 in the
15  record, then states that an investigator for the EEOC, Ms.
16  Carlo, after sending Mr. Strauder a questionnaire to complete,
17  and receiving the questionnaire, drafted a charge of
18  discrimination for Mr. Strauder's signature, which she sent to
19  him on or about September 13, 2006.  She subsequently discussed
20  that charge with him and a revised charge to him on September
21  18, 2006.  I take it that the charge referred to in Ms.
22  Malloy's declaration is the charge also referred to -- or the
23  type of charge referred to in 42 U.S.C. Section 2000E-5.
24      On September 22, 2006, Mr. Strauder formally filed
25  his complaint of discrimination with the EECO, Index Discharge

45

1    Number 525-2006-001314.  And on October 2, 2006, the EEOC

2    forwarded the charge to Delphi for a response.  Before

3    continuing, I should note, although I think by references of

4    the dates makes this obvious, that all of these dates, and most

5    importantly the date upon which the EEOC learned of Mr.

6    Strauder's concerns about discrimination, were after the bar

7    date.  Again, that date being July 31, 2006.

8         On November 6, 2006 Delphi responded to the charge.

9    According to Ms. Malloy's declaration at paragraph 11, the

10   response "essentially admitted the factual allegations of

11   Strauder's complaint, but contended that he could not

12   demonstrate a prima facie case of retaliation of violation of

13   the ADA."  Relying on EEOC guidance that an employer may ask an

14   employee to justify his/her use of sick leave by providing a

15   doctor's note or other explanation, as long it has a policy or

16   practice of requiring all employees to do so, Delphi argued

17   that it was permitted to require its employees to execute a

18   release so that the company could obtain medical records and to

19   speak with personal physicians.  The specific responses

20   attached as Exhibit H to Ms. Malloy's affidavit, in which on

21   page 2, Delphi says "because Delphi requires this of all

22   employees it was within the EEOC's guidelines."  U.S. has

23   stated that Delphi's policy is, on its face, relative of the

24   ADA.  It appears to me, notwithstanding the fact that Mr.

25   Strauder was a post-petition employee, Delphi's November 2,

46

1   2006 response were one to assume, as of course the EEOC does,

2   the truth of the position that the policy was violative on its

3   face, that there was sufficient information to reasonably infer

4   that Delphi's policy extended also to those who were employed

5   during the pre-petition period since the response referred to

6   practice required of all employees.

7        In any event, as noted in Ms. Malloy's declaration,

8   the EEOC continued to seek further information from Delphi to

9   investigate a claim of discrimination as set forth in

10  paragraphs 12-14, and in particular, the first sentence of

11  paragraph 14 of her declaration.  Eventually, having received

12  sufficient information to satisfy its internal deliberative

13  process, according to Ms. Malloy on or about May 22, 2007, the

14  EEOC issued its letter of determination which, in relevant

15  part, took the position that Delphi subjected Strauder and a

16  class of employees nationwide to an unlawful policy of making

17  disability-related inquiries that are not job related and

18  consistent with business necessity in violation of the ADA.

19  The next day, May 23, the EEOC contacted Delphi to begin

20  conciliation efforts as contemplated by 42 U.S.C. Section

21  2000(e)(5), which were not fruitful since there is a

22  fundamental disagreement between Delphi and the EEOC as to the

23  underlying premise that Delphi had breached the ADA.

24  Confirming that those efforts had failed on June 19, 2007, the

25  EEOC forwarded the case to the New York District Office for

47

1    determination of whether an enforcement action should be filed

2    in the U.S. District Court.

3        Ms. Malloy's declaration as well as her deposition

4    testimony, referred to the EEOC's Regional Attorneys Manual,

5    which outlines the steps that the EEOC must take before filing

6    a Federal District Court action, as contemplated by 482 U.S.C.

7    2000(e)(5), to enforce its rights and remedies under the ADA.

8    And her declaration states that after going through the steps

9    in the manual, the EEOC filed a complaint on behalf of a class

10   of Delphi employees in the U.S. District Court for the Western

11   District of New York on or about September 28, 2007, just over

12   three months after conciliation efforts had failed.  The EEOC

13   takes the position here that that was a timely and rapid

14   process under its statute and the Regional Attorney's Manual.

15   And as far as this matter is concerned, which deals with relief

16   from the bar date, Delphi appears to me not to have disputed

17   that.  Roughly, three weeks later, on October 16, 2007, the

18   EEOC filed the claim at issue here in the bankruptcy case.

19   Which again, is roughly fourteen months since the date that it

20   learned of Mr. Strauder's concern and thirteen -- roughly

21   thirteen months since the date that Delphi responded to the

22   charge.

23        In addition, the record before me reflects that no

24   employee of Delphi asserted a claim for which one could

25   arguably contend any element included a breach of the ADA or a

48

1   violation of the ADA on this type of basis.  Notwithstanding

2   the notice of the bar date, to known present and former

3   employees, as well as the publication notice, that was

4   provided, and of course, the fact that this being a very

5   prominent Chapter 11 case involving prominent labor issues, the

6   Court can reasonably infer that present and former employees,

7   who did not receive actual notice, would have been aware of the

8   case and found publication notice meaningful.

9        As I said at oral argument, I also believe that the

10  basis -- the underlying factual basis for this type of claim,

11  is not counter-intuitive or esoteric.  The litigation of the

12  basis of the claim might be, but the fundamental facts

13  underlying the claim are ones where one would assume an

14  employee with a grievance would assert such a grievance.  That

15  is, that Delphi required access to all of an employee's medical

16  records in connection with sick leave.  Obviously a very

17  sensitive subject to individual employees.  Nevertheless, as I

18  said, the record, I believe, is undisputed that there are no

19  such claims on file by employees on a pre-petition basis filed

20  before the bar date.

21       The monetary relief in the proof of claim of the EEOC

22  appears to assert the claim, on behalf of the employees

23  themselves.  And the debtors have cited case law that stands

24  without proposition, including in a bankruptcy context where

25  the EEOC is seeking monetary relief as opposed to perspective

VERITETEXT/NEW YORK REPORTING COMPANY
212-267-6868                                          516-608-2400

49

1   injunctive relief.  See EEOC v. Jefferson Dental Clinics, PA

2   478 F.3d 690, 696-99 (5th Cir. 2007) as well as O'Loughlin v.

3   County of Orange, 229 F.3d 871 (9th Cir. 2007), in which the

4   monetary claim was deemed discharged in Orange County's

5   bankruptcy case.

6        The argument made by the EEOC in its motion and in

7   the exhibits offered up by the EEOC, including Ms. Malloy's

8   declaration, for why Rule 9006(b)(1) should apply here, is two-

9   fold.  First, the EEOC contends that since it is conceded that

10  it learned of the claim after the bar date past, it should be

11  excused from complying to the bar date.  Secondly, it contends

12  that its own reasonable deliberative practices and procedures

13  for determining whether it had a properly assertible claim

14  precluded it from filing the proof of claim until the date that

15  it did, or until a short time after the date that it would have

16  been so precluded.  The first argument, given the facts that

17  I've recited not clearly as inadequate.  Under the two-step

18  analysis set forth in Pioneer, the failure to file a proof of

19  claim until well over a year past after learning of the claim,

20  would need to be justified.  First, as an act of neglect as

21  opposed to a conscious decision, or a decision that was made

22  knowing of the existence of the bar date.  And second, assuming

23  that that hurdle were surmounted that would satisfy in favor of

24  the EEOC, the balancing test for which the EEOC bears the

25  burden set forth in Pioneer and Midland.

50

1    Except as set forth in oral argument today, the EEOC

2  has not carried its burden to show neglect in the first place.

3  Ms. Malloy's declaration and more significantly her deposition

4  transcript, reflect that she did not know when or would not say

5  when she began her involvement in this matter.  Although,

6  ultimately, with a considerable amount of prying, her

7  involvement went back from -- went back to sometime before May

8  22, 2007, but after December of 2006.

9    In any event, neither from her personal knowledge or

10  from her familiarity with the file and what others have told

11  her, she has not offered up a reason for delay in filing a

12  proof of claim.  Such as, for example, any sort of excuses set

13  forth by the Supreme Court or provided by example by the

14  Supreme Court in Brunswick or Pioneer or the absence of notice

15  of the bar date.  In any event, the declaration and deposition

16  of Mr. Gershbein show that the debtors' provided sufficient

17  notice of the bar date to the government.  As well as, of

18  course, to the bar date order referred to in the bar date

19  notice.  And that there was no return of that notice under the

20  case law that establishes a strong presumption of the receipt

21  of notice, which very clearly has not been rebutted here.  See

22  In re Dana Corporation, 2007, W.L. 1577763 at page 4 (Bankr.

23  S.D.N.Y. 2007) and In re R.H. Macy & Co., Inc., 161 B.R. 355,

24  359 (Bankr. S.D.N.Y. 1993), indeed, and I will come back to

25  this.  In her deposition, Ms. Malloy was asked two questions

51

1   first.

2   "Q. Did you need to get advance authorization from the

3   commissioner or at EEOC headquarters in Washington prior to

4   filing your proofs of claim, that is the proofs of claim in

5   this case?"

6   "A. No."

7          Next question.

8   "Q. What authorizations do you need to file a proof of claim

9   in a bankruptcy case on behalf of the EEOC?"

10  "A. I'm not aware of any particular authorizations that we

11  require."

12          She was also asked, as a witness testifying in

13  support of excusable neglect --

14  "Q. Are there any other basis of excusable neglect, other than

15  in your memorandum, that the EEOC filed, of which you are

16  aware?"

17  "A. I think the memorandum covers it."

18          Including the fact that Mr. Strauder did not even

19  come to the EEOC, I believe it was after the bar date already

20  at that time.  And his claim, in any event, is not a pre-

21  petition claim.

22          Moreover, even if the EEOC could be said to have

23  proven that its delay stemmed from "neglect" as opposed to a

24  knowing act or choice, it has not shown that such length the

25  neglect.  And again, I point out, that to my mind for purposes

VERITETEXT/NEW YORK REPORTING COMPANY

212-267-6868                                           516-608-2400

52

1    of the Bankruptcy's Code's definition of a claim under 1015,

2    the EEOC would have believed that there was a basis for

3    asserting a claim at least as early as November 2006 and

4    determined that there was a claim through its own processes on

5    May 22, 2006.  But that delay, if it does rise to the level of

6    neglect, would be excusable.  The case law dealing with

7    analogous situations, is to the contrary, in support of the

8    debtors' position.  See for example, In re Calpine Corporation,

9    2007 W.L. 4326738, at pages 6-7 (S.D.N.Y 2007), holding that

10   six-month delay between the date when one could be said to have

11   had to file a proof of claim and the date that it was actually

12   filed, was not excusable neglect.  And noting that the

13   claimants "had the ability to file supplemental proofs of claim

14   at any time" have not offered any explanation as to why no such

15   supplements were filed until such a late date.  In re Northwest

16   Airlines Corporation, 2007 W.L. 498, 295 at page 3 (Bankr.

17   S.D.N.Y. 2007), which the Court stated "movant cannot properly

18   ground it's excusable neglect argument on the fact that it

19   conducted an investigation and tried to resolve the issues in

20   good faith negotiations."  All of this could be done after a

21   filing is first made and rights are preserved.  A similar point

22   was made in In re Enron Corporation, 2007 W.L. 294, 114 (Bankr.

23   S.D.N.Y. 2007), in which the movant sought leave to file a late

24   proof of claim approximately twenty months after the bar date,

25   stating that it was not sure that it had a pre-petition

53

1   guarantee claim against the debtor because it did not have an

2   executed copy of the guarantee.  Notwithstanding a diligent

3   search therefore in its file, bankruptcy judge Gonzalez

4   disagreed.  Noting again, that the most important factor in the

5   Pioneer analysis is the reason for the delay, the court found

6   that the creditor had failed to carry its burden.  In addition,

7   to noting that the creditor had a means to obtain information

8   in the bankruptcy case itself by getting the intervention of

9   the court under Bankruptcy Rule 2004, the court found that it

10  also could have filed a proof of claim without a copy of the

11  executed guarantee, without committing perjury.  And that, in

12  fact, the bar date order permitted it to file a protected claim

13  and explain why a copy of the guarantee was not available.  See

14  also New York Trap Rock Corporation, 153 B.R. 648 (Bankr.

15  S.D.N.Y. 1993), in which bankruptcy judge Schwartzberg denied a

16  Rule 9006(b) motion on the basis of prejudice to the debtor, as

17  well as untimeliness in pursing non-bankruptcy remedies in the

18  face of a bar date.

19        As far as the reason for the delay argument, as well

20  as the issue of prejudice, I conclude that the facts here or at

21  least, if not more, compelling.  The debtors here were clearly

22  reorganizing, unlike in Enron.  Moreover, I've noted the

23  particular nature of prejudice here over and beyond the

24  prejudice recognized in the Enron case that I've just discussed

25  as well as New York Trap Rock whenever new claims are asserted

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                              516-608-2400

54

1   after a plan has been filed and negotiated and confirmed, that

2   prejudice being of course the cap on claims for purposes of the

3   EPCA and emergence from Chapter 11, which is premises on the

4   EPCA closing.  Moreover, at least from the record, the EEOC has

5   not explained why it could not file a protective proof of

6   claim, particularly given the fact that it had formed the

7   belief that there was a claim at least by May 22, 2006, and

8   arguably -- or more than arguably, would have been able to do

9   so in November of 2006.  This is particularly so, given the

10  fact that the bar date order itself recognizes in paragraph 4

11  limitations on who may review the supporting documentation in

12  any proof of claim, which is over and above any rights that a

13  claimant, such as the EEOC, would have generally under Section

14  107 of the Bankruptcy Code, to obtain additional

15  confidentiality protection, which this Court has repeatedly

16  granted generally in this case, not only to the debtor but to

17  third parties, whenever they made a reasonable case that

18  information covered by 107 would be implicated in a public

19  filing.

20       It was argued by counsel at oral argument, and I

21  believe contrary to the reasonable inference one can draw from

22  the deposition testimony of Ms. Malloy, which I believe is

23  defended by the same counsel, that the EEOC's statute governing

24  how it needs to process charges in bringing enforcement actions

25  in the District Court, nevertheless precluded the EEOC from

55

1    filing a proof of claim in the bankruptcy case.  Again See 42

2    U.S.C. Section 2000E-5, which sets forth a process for the EEOC

3    to review charges by persons aggrieved under the statute.  As

4    well as a process for proceeding with a civil action.  In

5    particular, it's contended in oral argument that under 42

6    U.S.C. Section 2000E-5(b), which provides that charges shall

7    not be made public by the Commission, that the Commission was

8    precluded from filing a proof of claim in the bankruptcy case.

9    And that the process set forth in Section F(1) of the statute

10   including the process for going through conciliation before the

11   Commission may bring a civil action also precluded the

12   Commission from filing a proof of claim.

13        Neither counsel nor Ms. Malloy, who's also obviously

14   an attorney for the EEOC, has been able to tell me whether

15   indeed, the EEOC follows its practice generally in bankruptcy

16   cases of not filing proofs of claim, even as a protective

17   matter, until it has made a determination and commenced civil

18   action.  They state that they know nothing about how the EEOC

19   deals with proofs of claim in Chapter 11 cases, except in

20   respect of Ms. Malloy's own personal knowledge of this case.

21   Which, of course, as a factual matter, begs the question since

22   the claim here was filed only after the filing of the complaint

23   in the Western District.

24        I've reviewed the statute, as well as the

25   regulations, 29 C.F.R. 1600 et seq., and I believe based upon

VERITETEXT/NEW YORK REPORTING COMPANY
212-267-6868                                        516-608-2400

56

1    that review, including the regulation specification of what

2    must be set forth in a charge, that this requirement as set

3    forth in -- or these requirements as set forth in 42 U.S.C.

4    Section 2000E-5, does not preclude -- it would not reasonably

5    be read to preclude the EEOC from filing a proof of claim in

6    this case before the commencement of the District Court

7    litigation.  The EEOC has made no effort in the case to seek

8    direction from the Court on this issue, but merely waited until

9    after the litigation was filed to file the proof of claim.

10   Given the definition of claim in the Bankruptcy Code and the

11   importance of that definition, I believe that what Congress had

12   in mind there was far broader than either the definition of

13   charge or a civil action in 42 U.S.C. Section 2000E-5.  And

14   that to the extent it even constituted neglect, which I have

15   serious doubts over, as opposed to a conscious decision, the

16   neglect of the EEOC to file a proof of claim, until the date

17   that it did, is not excusable.  First, because of the asserted

18   reason for the delay, being a unilateral legal interpretation,

19   that frankly to me appears to have been come up with following

20   Ms. Malloy's deposition this morning at oral argument, and to

21   be contrary to her deposition.  Secondly, because unlike the

22   normal case, there would indeed be prejudice here.  This is an

23   unliquidated claim, it would be difficult to liquidate it.  And

24   it is contended, and even if it were not contended, the Court

25   would take into account the fact that the liquidation of that

57

1   claim might involved, even on an estimation basis, a request

2   for withdrawal of the reference, which would further delay the

3   liquidation of the claim.

4        This Court has dealt with several requests to extend

5   the bar date in these cases, and consistent with Midlantic, has

6   generally taken a hard line with those requests and denied

7   them.  In addition to the affect of this claim itself on the

8   EPCA cap and the premises by which the parties negotiated and

9   voted on and the Court confirmed the Chapter 11 plan, therefore

10  it appears to me that other claims late filed could come out of

11  the woodwork as well at this point if the Court were to, under

12  the present facts, grant the motion here.  So the prejudice is

13  two-fold.  First, directly because it's not clear to me that

14  this claim on its own would be liquidated in time to preclude

15  an assertion of a default under the EPCA.  And secondly, that

16  such liquidation would necessarily result in an amount under

17  the cap based on Mr. Unrou's declaration and deposition, in

18  which he said that there were a handful, at least, of other

19  unliquidated and partial liquidated claims, that were filed on

20  a timely basis.  And then secondly, the prejudice generally

21  which is harder to quantify but is believed still exists, that

22  opening the door by granting a motion on this shaky foundation,

23  would encourage other late claimants to seek relief under 9006,

24  or to seek reconsideration of the Court's prior orders denying

25  them relief under Rule 9006.

58

1          Finally, I note here as an independent concern, the

2    point I made some time ago, which is no individual, employee or

3    former employee, all of whom I believe had adequate notice of

4    the bar date, filed a claim that could be construed to assert

5    this type of claim which the EEOC is asserting on behalf of

6    such a class.  By analogy, although I believe it's a very close

7    analogy, therefore, I believe that the reluctance of courts in

8    this district to certify classes for purposes of class proofs

9    of claim under Bankruptcy Rule 7023 and Federal Rule 23, are

10   instructive.  As Chief Judge Bernstein has noted where the

11   request for class certification comes after a bar date has been

12   established and past, bankruptcy law considerations argue

13   strongly against granting the motion for certification.  See In

14   re Musicland Holding Corporation, 362 B.R. 644, 654-6 (Bankr.

15   S.D.N.Y. 2007) citing In re Jamesway Corporation, 1997 Bankr.

16   Lexus 825 at page 10 (Bankr. S.D.N.Y. June 11, 1997) and In re

17   Sacred Heart Hospital of Norristown, 177 B.R. 1624 (Bankr. E.D.

18   P.A. 1995).  See also Judge Rakoff's decision In re Ephedra

19   Products Liability litigation, 329 B.R. 1 (S.D.N.Y 2005), in

20   which Judge Rakoff examined the timing of the request for class

21   certification and found that the late date of the request, in

22   essence, arriving in connection with the impending hearing on

23   confirmation of the debtors' plan, precluded the granting of

24   the motion.  I believe it would similarly undermine the bar

25   date order to let in a claim on behalf of people who did not

59

1    file pre-petition claims for the very same claim before the bar

2    date, under these particular circumstances at least.

3        So for those reasons, I'll deny the motion.  Mr.

4    Lyons, you can submit an order to that effect.  You don't need

5    to settle it but you should provide counsel for the EEOC with a

6    copy when you give it to the Court.  As I often do when I give

7    a long bench ruling, I'll go over the transcript of this

8    matter, not only for typos and mis-citations or incorrect

9    spellings of names and case names, but also for my grammar and

10   additional points that I may or may not want to make.  But the

11   gist of my ruling and the reasons for it won't change.

12       MR. LYONS:  Thank you, Your Honor.  I did clarify

13   that proof of claim 16727 is actually the claim that was filed

14   on behalf of the other pre-petition claimants.  Claim number

15   16728 was actually the administrative expense request filed by

16   Mr. Strauder.

17       THE COURT:  And that's not objected to on the basis

18   of timeliness.

19       MR. LYONS:  Correct.  So that one would clearly

20   remain -- survive Your Honor's ruling.  It's 16727 that would

21   be disallowed and expunged.

22       THE COURT:  Right.  The pre-petition claim.

23       MR. LYONS:  Correct.

24       THE COURT:  Okay.  All right.

25       MR. LYONS:  Thank you, Your Honor.

60

1          (Proceedings concluded at 12:57 p.m.)

2

3                      I N D E X

4

5                      RULINGS

6                              Page Line

7   Settlement Between Denso and Delphi Approved    7    4

8   Claim of Furukawa Expunged

                              7    9

9   Motion of the EEOC Denied              59   2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                              61
 1

 2

 3                    C E R T I F I C A T I O N

 4

 5     I, Esther Accardi, court approved transcriber(s), certify that

 6     the foregoing is a correct transcript from the official

 7     electronic sound recording of the proceedings in the above-

 8     entitled matter, except where, as indicated, the Court has

 9     modified its bench ruling.

10     Esther Accardi  Digitally signed by Esther Accardi
                       DN: cn=Esther Accardi, c=US
                       Reason: I am the author of this document
11                     Date: 2008.03.13 10:47:28 -04'00'        March 3, 2008

12     Signature of Transcriber                Date

13

14     ESTHER ACCARDI

15     typed or printed name

16

17

18

19

20

21

22

23

24

25
```