PENSION BENEFIT GUARANTY CORPORATION
1200 K Street, NW
Washington, D.C. 20005-4026
(202) 326-4020
Israel Goldowitz, Chief Counsel
Karen L. Morris, Deputy Chief Counsel
Joan Segal, Assistant Chief Counsel
Ralph L. Landy, Attorney (RL 6162)
Beth A. Bangert, Attorney

Attorneys for Pension Benefit Guaranty Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x
:
:
In re : Chapter 11
:
DELPHI CORPORATION, et al., : Case No. 05-44481 (RDD)
:
: (Jointly Administered)
Debtors. :
——————————————————————x

**RESPONSE OF PENSION BENEFIT GUARANTY CORPORATION IN SUPPORT OF DEBTORS' EXPEDITED MOTION UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 9019 FOR SUPPLEMENTAL ORDER AUTHORIZING DEBTORS' PERFORMANCE UNDER MODIFIED PENSION FUNDING WAIVERS ISSUED BY UNITED STATES INTERNAL REVENUE SERVICE AND RELATED LETTERS OF CREDIT ISSUED BY DELPHI CORPORATION TO PENSION BENEFIT GUARANTY CORPORATION**

The Pension Benefit Guaranty Corporation ("PBGC") hereby responds to Debtors' Motion for a Supplemental Order Authorizing Debtors' Performance under Modified Pension Funding Waivers Issued by the Internal Revenue Service and Related Letters of Credit Issued to PBGC ("Pension Funding Waiver Extension Motion").

PBGC supports this motion for two reasons: (1) the funding waiver extension Delphi is seeking is only for seven days; and (2) as Delphi states, the waivers are absolutely essential to Delphi's plan of reorganization. PBGC shares in Delphi's goal of emerging from bankruptcy in

early April with its pension plans ongoing, and PBGC will continue to support Delphi's efforts to reorganize.

The Debtors' pension plans, which are involuntary creditors of this estate, are among its largest creditors.[1] Throughout this bankruptcy, the Debtors have paid only the "normal cost" portion of the statutorily required minimum funding contributions that are owed to the Pension Plans. The funding waivers cover over $2 billion in missed contributions. In addition, missed contributions not covered by waivers total at least $570 million. Moreover, Delphi is not making amortization payments on the minimum funding waivers that it has received for the Hourly Plan for the 2005 and 2006 plan years, and for the Salaried Plan for the 2005 plan year. These unpaid amortization amounts account for about $400 million of the $570 million of missed contributions. Thus, the funding level of each Pension Plan has decreased significantly over the course of this bankruptcy.

To date, Delphi's waivers have been granted with PBGC support.[2] When Delphi first sought funding waivers, IRS and PBGC agreed to accept minimal security for the Pension Plans based on assurances that the waivers were intended to provide only short-term relief for Delphi – in fact, Delphi's emergence from bankruptcy was expected to occur last summer.

If Delphi's emergence from bankruptcy is delayed beyond April 4, 2008, it seems likely that an additional funding waiver extension will be necessary. The Pension Plans will be seriously and adversely affected by an extension that does not provide security that is realistic

---

[1] Debtors' pension plans ("Pension Plans") are the Delphi Hourly-Rate Employees Pension Plan ("Hourly Plan"), the Delphi Retirement Program for Salaried Employees ("Salaried Plan"), the ASEC Manufacturing Retirement Program, the Delphi Mechatronic Systems Retirement Program, the Packard-Hughes Interconnect Bargaining Retirement Plan and the Packard-Hughes Interconnect Non-Bargaining Retirement Plan.

[2] In fact, the Department of the Treasury is directed by section 412(f)(3)(B) of the Internal

considering the increased liabilities and risk to the Plans.  Indeed, the Internal Revenue Code recognizes that an employer should provide security to pension plans for contributions covered by a waiver.  *See* Internal Revenue Code ("IRC") § 412(f)(3).  This security is to be provided to the pension plan, not to PBGC.  *See* IRC § 412(f)(3)(A)(i).  If the waiver conditions are not met, the security provided to the plan will become assets of the plan used to pay plan benefits.  Thus, any security provided by Delphi for an additional waiver extension will benefit plan participants.

PBGC does, of course, recognize that it is in the best interests of all parties for Delphi to consummate its plan of reorganization and emerge from bankruptcy in the near future with the Pension Plans ongoing, thus making the need for future waiver extensions unnecessary.  PBGC files this response, nonetheless, to convey its view that if future waiver extensions are necessary

---

Revenue Code to consult with PBGC before granting a waiver.

3

to effect emergence, the security given to the Pension Plans — not to PBGC — as a condition of such waivers must be adequate to protect the Plans.

          Respectfully submitted,

          /s/ Ralph L. Landy
          ISRAEL GOLDOWITZ
          Chief Counsel
          KAREN L. MORRIS
          Deputy Chief Counsel
          JOAN SEGAL
          Assistant Chief Counsel
          RALPH L. LANDY (RL 6162)
          BETH A. BANGERT
          Attorneys

          PENSION BENEFIT GUARANTY CORPORATION
          Office of the Chief Counsel
          1200 K Street N.W.
          Washington, D.C.  20005-4026
          (202) 326-4020
          FAX:  (202) 326-4112
          e-mail:  landy.ralph@pbgc.gov
          Attorneys for Pension Benefit Guaranty Corporation

Dated: March 27, 2008