**Hearing Date And Time: April 30, 2008 at 10:00 a.m.**
**Response Date And Time: April 23, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                     :
      In re                   :     Chapter 11
                     :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                     :
                     :     (Jointly Administered)
            Debtors.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' TWENTY-EIGHTH OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO (A) DUPLICATE OR AMENDED
CLAIMS, (B) BOOKS AND RECORDS CLAIM, (C) UNTIMELY BOOKS AND RECORDS
CLAIM, (D) UNTIMELY CLAIM, AND (E) CLAIMS SUBJECT TO MODIFICATION AND
<u>MODIFIED CLAIM ASSERTING RECLAMATION</u>

("TWENTY-EIGHTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Twenty-Eighth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To (A) Duplicate Or Amended Claims, (B) Books And Records Claim (C)

Untimely Books And Records Claim, (D) Untimely Claim, And (E) Claims Subject To

Modification And Modified Claim Asserting Reclamation (the "Twenty-Eighth Omnibus Claims

Objection"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264).

Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of

2

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession  (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan  (Docket No. 11388) (the "Disclosure Statement").  The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order"), which became a final order on February 4, 2008.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested herein are sections 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      <u>Current Business Operations Of The Debtors</u>

6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

---

[1]    The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency

*(cont'd)*

7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.      Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

_____

(cont'd from previous page)

proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

10.    The Debtors believe that the Company's financial performance

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

11.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in
calendar year 2004 was $482 million.

operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business; second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company; third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus; fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable

solution to their current pension situation.

E.      Confirmation Of The Debtors' Plan Of Reorganization

        13.     The confirmed Plan is based upon a series of global settlements and

compromises that involve nearly every major constituency in the Debtors' reorganization cases.

The Global Settlement Agreement and the Master Restructuring Agreement provide for a

comprehensive settlement with GM, and both agreements were approved by this Court in the

Confirmation Order.  With the Plan confirmed, the Debtors are focusing their efforts on

satisfying the conditions for the Plan to become effective and allow them to emerge from chapter

11.  The Debtors anticipate having the Plan become effective as soon as reasonably practicable.

        14.     Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.    <u>Bar Date, Proofs Of Claim, And Omnibus Claims Objections</u>

15.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"), against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

16.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and Statements") and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

17.    In addition, the Debtors published the Bar Date Notice in the <u>New York Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions), <u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>, <u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the

7

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, the Tuscaloosa

News, and The Vindicator, and electronically through posting on the Delphi Legal Information

Website, www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,700 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 27 omnibus Claims objections,[4]

pursuant to which this Court has disallowed and expunged 9,577 Claims and modified

approximately 3,550 Claims.  In addition, the hearings with respect to approximately 690 Claims

have been adjourned pursuant to the Claims Objection Procedures Order (as defined below).

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

---

[4]    The Debtors filed objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451
and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585),
February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27,
2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos.
8270 and 8271), July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151), September
21, 2007 (Docket No. 9535), October 26, 2007 (Docket No. 10738), November 19, 2007 (Docket No. 10982),
December 21, 2007 (Docket No. 11588), January 18, 2008 (Docket No. 12288), and February 15, 2008 (Docket
Nos. 12686 and 12687).

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

        20.     On November 30, 2007, the Debtors filed the Motion Under New

Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue

Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 11187), in which the Debtors requested this Court,

among other things, to authorize the Debtors to continue the current practices and procedures for

filing and serving notice of omnibus Claims objections pursuant to the Claims Objection

Procedures Order previously entered by this Court, including omnibus Claims objections to more

than 100 Claims.  On December 20, 2007, this Court entered the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

        21.     In this Twenty-Eighth Omnibus Claims Objection, the Debtors are

objecting to nine Proofs of Claim, all of which are set forth on Exhibit F hereto in alphabetical

order by claimant and cross-referenced by proof of claim number and basis of objection.[5]

---

[5]    Contemporaneously with this Twenty-Eighth Omnibus Claims Objection, the Debtors are filing the Twenty-
     Ninth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (A) Disallow And
                                                      *(cont'd)*

<u>Relief Requested</u>

22.    By this Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) the Claims set forth on <u>Exhibit A</u> hereto as "Claims To Be Expunged" because they are duplicative of other Claims or have been amended or superseded by later-filed Claims, (b) the Claim set forth on <u>Exhibit B-1</u> hereto because it asserts a liability or dollar amount that is not reflected on the Debtors' books and records, (c) the Claim set forth on <u>Exhibit B-2</u> hereto because it asserts a liability or dollar amount that is not reflected on the Debtors' books and records and was untimely filed pursuant to the Bar Date Order, and (d) the Claim set forth on <u>Exhibit C</u> hereto because it was untimely filed pursuant to the Bar Date Order.

23.    In addition, by this Objection the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 revising (a) the asserted amount with respect to the Claims set forth on <u>Exhibit D-1</u> hereto and (b) the asserted amount and classification with respect to the Claim set forth on <u>Exhibit D-2</u> hereto, which is subject to a letter agreement pursuant to which the Debtors and the Claimant agreed upon the valid amount of such Claimant's reclamation demand, subject to certain reserved defenses.

---

*(cont'd from previous page)*

Expunge Claims Due To Cure Payments And (B) Modify General Unsecured Claims By Amount Of Cure Payments (the "Twenty-Ninth Omnibus Claims Objection").  In the Twenty-Ninth Omnibus Claims Objection, the Debtors object to Claims and are seeking to (i) disallow and expunge certain Claims, including those that have been modified pursuant to prior orders, that were satisfied in whole due to cure payments that the Debtors have made on account of the assumption of certain executory contracts or unexpired leases and (ii) modify certain Claims, including those that have been modified pursuant to prior orders, that were satisfied in part by cure payments that the Debtors have made on account of the assumption of certain executory contracts or unexpired leases.

Objections To Claims

G.    Duplicate Or Amended Claims

24.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that a certain Proof of Claim in fact asserts a duplicate Claim (the "Duplicate Claim") for a single

liability.  In this instance, the Duplicate Claim arose when a Claimant filed two Proofs of Claim

against the same Debtor entity for the same liability.  In an effort to eliminate the Duplicate

Claim, the Debtors reviewed the Proofs of Claim, the supporting documentation provided in

those Proofs of Claim, and the Debtors' Schedules and Statements to determine which duplicate

claim should be the surviving claim.

25.    Additionally, the Debtors determined that certain Claims evidenced by

Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by

creditors with respect to the same liabilities (the "Amended Claims").  For instance, the

Amended Claims were filed to (a) amend an amount previously claimed in an earlier Proof of

Claim (the "Original Claim") and/or (b) to amend the classification of an earlier Original Claim.

26.    It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate the Duplicate Claim.

In addition, the Debtors wish to eliminate from the Debtors' claims register Original Claims for

which Amended Claims were subsequently filed (collectively, the "Duplicate Or Amended

Claims").

27.    Set forth on Exhibit A hereto is a list of Claims that the Debtors have

identified as Duplicate Or Amended Claims.  For each Duplicate Or Amended Claim, Exhibit A

classifies a Proof of Claim as either a "Claim To Be Expunged" (the "Expunged Claim") or as a

"Surviving Claim" (the "Surviving Claim").  Generally, the Surviving Claims reflect the

classifications of the liabilities as reflected on the Debtors' Schedules and Statements.  The

11

Debtors request that the Claims marked as Expunged Claims on Exhibit A be disallowed and

expunged.  With respect to the Claims on Exhibit A marked as Surviving Claims, the Debtors do

not seek any relief at this time.  The inclusion of the Surviving Claims on Exhibit A, however,

does not reflect any view by the Debtors as to the ultimate validity of any such Claims.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the

Surviving Claims at a later date on any basis whatsoever, except as expressly provided in

paragraph 46 below.

28.    Accordingly, the Debtors (a) object to the Duplicate Or Amended Claims

and (b) seek entry of an order disallowing and expunging the Duplicate Or Amended Claims in

their entirety.

H.    Books And Records Claim And Untimely Books And Records Claim

29.    During the Debtors' review of the Proofs of Claim, the Debtors determined

that a certain Proof of Claim asserts a liability or dollar amount that is not owing pursuant to the

Debtors' books and records (the "Books And Records Claim").  The Debtors have also

determined that a certain Proof of Claim asserts a liability or dollar amount that is not owing

pursuant to the Debtors' books and records and, in addition, was not timely filed pursuant to the

Bar Date (the "Untimely Books And Records Claim").  The Debtors believe that the parties

asserting the Books And Records Claim and the Untimely Books And Records Claim are not

creditors of the Debtors.  The Debtors determined that they are not liable for the Books And

Records Claim and the Untimely Books And Records Claim because the Debtors' books and

records do not reflect the existence of the asserted Claim or of the Claimant asserting such Claim.

30.    A claimant's proof of claim is entitled to the presumption of prima facie

validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the

allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at

*4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts

to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  <u>Id</u>.

          31.      Attached hereto as <u>Exhibit B-1</u> is the Books And Records Claim that the

Debtors have identified as a Claim for which the Debtors are not liable.  Identified on <u>Exhibit B-

2</u> hereto is the Untimely Books And Records Claim that the Debtors have also identified as a

Claim for which the Debtors are not liable.[6]  The Debtors object to the Untimely Books And

Records Claim not only because the Debtors have no liability in respect thereof, but also because

the Claim was not timely filed pursuant to the Bar Date Order.[7]  If this Court does not disallow

and expunge these Claims in full, the Debtors expressly reserve all of their rights to further

object to either or both of the Books And Records Claim and the Untimely Books And Records

Claim at a later date on any basis whatsoever.

          32.      Accordingly, the Debtors (a) object to the Books And Records Claim and

the Untimely Books And Records Claim and (b) seek entry of an order disallowing and

expunging the Books And Records Claim and the Untimely Books And Records Claim in their

entirety.

I.     <u>Untimely Claim</u>

          33.      Although the Bar Date passed more than 18 months ago, various parties

have continued to file Proofs of Claim in these chapter 11 cases.  During the Debtors' continuing

review of the Proofs of Claim, the Debtors have determined that a certain Proof of Claim was

received by the Debtors after the Bar Date (the "Untimely Claim").  The Debtors object to the

---

[6]    The Untimely Books And Records Claim listed on <u>Exhibit B-2</u> hereto was not included as part of the Motion
For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed,
dated September 29, 2006 (Docket No. 5238) (the "Claims Timeliness Motion").

[7]    See Bar Date Order cited <u>supra</u> note 14.

Untimely Claim on the basis that it was not timely filed pursuant to the Bar Date Order.  The

Untimely Claim is identified on Exhibit C hereto.  Accordingly, the Debtors (a) object to the

Untimely Claim[8] and (b) seek entry of an order disallowing and expunging the Untimely Claim

in its entirety.

J.    Claims Subject To Modification

34.    During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims state the incorrect amount or are overstated (collectively, the

"Claims Subject To Modification").

35.    Although in this Twenty-Eighth Omnibus Claims Objection the Debtors

do not seek to disallow and expunge the Claims Subject To Modification, based on an initial

review, the Debtors have determined that their liability with respect to each such Claim does not

exceed the dollar amount set forth on Exhibit D-1 hereto.  The bases for placing a Claim in the

Claims Subject To Modification category of objection include, but are not limited to, the

following: the asserted Claim (a) does not account for amounts that may have been paid or

credited against such Claim prior to the commencement of these cases and/or (b) does not

account for amounts that may have been paid or credited against such Claim following the

commencement of these cases.  Thus, the Debtors seek to convert the amount of each Claim

Subject To Modification to a fully liquidated, U.S. dollar-denominated amount consistent with

the Debtors' books and records and/or the liquidated amount requested by the Claimant (thus

eliminating the unliquidated component).

36.    As stated above, a Claimant's Proof of Claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

---

[8]    The Untimely Claim listed on Exhibit C hereto was not included as part of the Claims Timeliness Motion.

least one of the allegations that is essential to the claim's legal sufficiency.'" <u>WorldCom</u>, 2005 WL 3832065, at *4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  As with the unsubstantiated Claims, the Debtors' books and records refute that the claims asserted in each Claims Subject To Modification are actually owed by any of the Debtors.

37.    Set forth on <u>Exhibit D-1</u> hereto is a list of Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against a different Debtor than the one identified by the Claimant.  For each Claim Subject To Modification, <u>Exhibit D-1</u> reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed"[9] and the proposed modified dollar amount for the Claim in a column titled "Claim As Modified."

38.    The Debtors object to the amount for each Claim Subject To Modification listed on <u>Exhibit D-1</u> and request that each such Claim be revised to reflect the amount listed in the "Claim As Modified" column of <u>Exhibit D-1</u>.  Thus, no Claimant listed on <u>Exhibit D-1</u> would be entitled to recover for any Claim Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on <u>Exhibit D-1</u>.  For clarity, <u>Exhibit D-1</u> refers to a Debtor entity by case number and <u>Exhibit E</u> displays the formal name of the Debtor entity and its associated bankruptcy case number referenced in <u>Exhibit D-1</u>.

39.    The inclusion of the Claims Subject To Modification on <u>Exhibit D-1</u>, however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims Subject To Modification at a later date on any basis whatsoever.

---

[9]    The Asserted Claim Amounts on <u>Exhibit D-1</u> reflect only asserted liquidated claims.

40.      Accordingly, the Debtors (a) object to the asserted amount for each Claim

Subject To Modification set forth on Exhibit D-1 and (b) seek an order modifying the Claim

Subject To Modification to reflect the Modified Total as set forth on Exhibit D-1.

K.      Modified Claim Asserting Reclamation

41.      In addition, the Debtors have also determined that a certain Claim (the

"Modified Claim Asserting Reclamation") (a)(i) states the incorrect amount and is overstated and

(ii) states the incorrect classification and (b) asserts a reclamation demand and the Debtors and

the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed

upon the valid amount of the reclamation demand, subject to certain reserved defenses (with

respect to (b), a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and

notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation

Agreement, a judicial determination that certain reserved defenses with respect to the

reclamation demand are valid.

42.      As stated above, a Claimant's Proof of Claim is entitled to the presumption

of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at

least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005

WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  As with the unsubstantiated Claims,

the Debtors' books and records refute that the claim asserted in the Modified Claim Asserting

Reclamation is actually owed by any of the Debtors.

43.      Set forth on Exhibit D-2 hereto is the Modified Claim Asserting

Reclamation that the Debtors believe should be modified solely to assert a properly classified,

fully liquidated claim amount against the appropriate Debtor.  For this Modified Claim Asserting

Reclamation, Exhibit D-2 reflects the amount, classification, and Debtor asserted in the Proof of

Claim in a column titled "Claim As Docketed"[10] and the proposed modified dollar amount, and the Debtor against which such Claim should be asserted, in a column titled "Claim As Modified."

44.     The Debtors object to the amount and classification for the Modified Claim Asserting Reclamation listed on Exhibit D-2 and request that such Claim be revised to reflect the amount and  classification listed in the "Claim As Modified" column of Exhibit D-2. Thus, the Claimant listed on Exhibit D-2 would not be entitled to (a) recover for the Modified Claim Asserting Reclamation in an amount exceeding the dollar value listed as the "Modified Total" for the Claim on Exhibit D-2, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation.  For clarity, Exhibit D-2 refers to a Debtor entity by case number and Exhibit E displays the formal name of the Debtor entity and its associated bankruptcy case number referenced in Exhibit D-2.

45.     Accordingly, the Debtors (a) object to the amount and classification for the Modified Claim Asserting Reclamation set forth on Exhibit D-2 and (b) seek an order modifying the Modified Claim Asserting Reclamation to reflect the Modified Total and classification, as set forth on Exhibit D-2.

<u>Separate Contested Matters</u>

46.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Twenty-Eighth Omnibus Claims

---

[10]    The Asserted Claim Amount on Exhibit D-2 reflects only the asserted liquidated claim.

Objection, each such Claim and the objection to such Claim asserted in this Twenty-Eighth
Omnibus Claims Objection will be deemed to constitute a separate contested matter as
contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order,
any order entered by the Court with respect to an objection asserted in this Twenty-Eighth
Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

Reservation Of Rights

47.     The Debtors expressly reserve the right to amend, modify, or supplement
this Twenty-Eighth Omnibus Claims Objection and to file additional objections to the Proofs of
Claim or any other Claims (filed or not) which may be asserted against the Debtors, including
without limitation the right to object to any Claim on the basis that it has been asserted against
the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twenty-
Eighth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on
other stated grounds or on any other grounds that the Debtors discover during the pendency of
these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to
the extent that such Claim has been paid.

Responses To Objections

48.     Responses to the Twenty-Eighth Omnibus Claims Objection are governed
by the provisions of the Claims Objection Procedures Order.  The following summarizes the
provisions of that Order, but is qualified in all respects by the express terms thereof.

L.     Filing And Service Of Responses

49.     To contest an objection, responses (each, a "Response"), if any, to the
Twenty-Eighth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal
Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New
York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in

18

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's

case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch

disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on April 23, 2008.**

M.    <u>Contents Of Responses</u>

          50.    Every Response to this Twenty-Eighth Omnibus Claims Objection must

contain at a minimum the following:

                    (a)    the title of the claims objection to which the Response is directed;

                    (b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

                    (c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

                    (d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; <u>provided</u>,
<u>however</u>, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; <u>provided further</u>, <u>however</u>, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

19

(e)    to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

N.    <u>Timely Response Required</u>

51.    If a Response is properly and timely filed and served in accordance with the foregoing procedures, the hearing on the relevant Claims covered by the Response will be adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on April 30, 2008 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Twenty-Eighth Omnibus Claims Objection.

52.    <u>Pursuant to the Claims Objection Procedures Order, only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Twenty-Eighth Omnibus Claims Objection and who is served with the Twenty-Eighth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Twenty-Eighth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek</u>

disallowance and expungement of the relevant Claim or Claims only in accordance with the
Claims Hearing Procedures Order.

53.    To the extent that a Claim would be subject to estimation pursuant to
section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with
the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or
partially unliquidated and (b) provides the amount that the Claimant believes would be the
allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,
as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection
Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted
Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the
Bankruptcy Code for all purposes other than allowance, but including voting and establishing
reserves for purposes of distribution, subject to further objection and reduction as appropriate
and section 502(j) of the Bankruptcy Code, by providing notice as described more fully in the
Claims Objection Procedures Order.

Replies To Responses

54.    Replies to any Responses will be governed by the Claims Objection
Procedures Order.

Service Of Twenty-Eighth Omnibus Claims Objection Order

55.    Service of any order with regard to this Twenty-Eighth Omnibus Claims
Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

56.    Questions about this Twenty-Eighth Omnibus Claims Objection or
requests for additional information about the proposed disposition of Claims hereunder should be

21

directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-

5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive,

Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N.

Wharton).  Questions regarding the amount of a Claim or the filing of a Claim should be directed

to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not</u>

<u>contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

57.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

58.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twenty-

Eighth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on <u>Exhibits A</u>, <u>B-1</u>, <u>B-2</u>, and <u>C</u>

is attached hereto as <u>Exhibit G</u>.  A form of the Notice Of Objection To Claim to be sent to the

Claimants listed on <u>Exhibits D-1</u> and <u>D-2</u> is attached hereto as <u>Exhibit H</u>.  Claimants will receive

22

a copy of this Twenty-Eighth Omnibus Claims Objection without <u>Exhibits A</u> through <u>H</u> hereto.

Claimants will nonetheless be able to review <u>Exhibits A</u> through <u>H</u> hereto free of charge by

accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

59.    Because the legal points and authorities upon which this objection relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        March 27, 2008

                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                              By:   /s/ John Wm. Butler, Jr.
                                   John Wm. Butler, Jr. (JB 4711)
                                   John K. Lyons (JL 9331)
                                   Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                   - and -

                              By:   /s/ Kayalyn A. Marafioti
                                   Kayalyn A. Marafioti (KM 9632)
                                   Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession

24