**Hearing Date And Time: April 30, 2008 at 10:00 a.m.**
**Response Date And Time: April 23, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -   x
                                            :
        In re                            :     Chapter 11
                                            :
DELPHI CORPORATION, et al.,       :     Case No. 05-44481 (RDD)
                                            :
                                          :     (Jointly Administered)
                Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x

DEBTORS' TWENTY-NINTH OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO (A) DISALLOW AND EXPUNGE
CLAIMS DUE TO CURE PAYMENTS AND (B) MODIFY GENERAL UNSECURED
CLAIMS BY AMOUNT OF CURE PAYMENTS

("TWENTY-NINTH OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Twenty-Ninth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To (A) Disallow And Expunge Claims Due To Cure Payments And (B)

Modify General Unsecured Claims By Amount Of Cure Payments (the "Twenty-Ninth Omnibus

Claims Objection"), and respectfully represent as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

1.      On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.      No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders.

3.      On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization

Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264).

Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession  (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

respect to the Plan  (Docket No. 11388) (the "Disclosure Statement").  The Court entered an

order approving the adequacy of the Disclosure Statement and granting the related solicitation

procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008, the Court

entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation

Order"), which became a final order on February 4, 2008.

4.        This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

5.        The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.        <u>Current Business Operations Of The Debtors</u>

6.        Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately

$13.7 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and have continued their business operations without supervision from the Court.[2]

---

[1]    The aggregated financial data used herein generally consists of consolidated information from Delphi and its
       worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
       automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
       proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso
       receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of
       *(cont'd)*

7.       The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

8.       Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.       In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

---

*(cont'd from previous page)*
     which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred

a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee

special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

10.     The Debtors believe that the Company's financial performance

deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

11.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

12.     On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

---

[3]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
        valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in
        calendar year 2004 was $482 million.

operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business; second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company; third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus; fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable

solution to their current pension situation.

E.      Confirmation Of The Debtors' Plan Of Reorganization

                13.      The confirmed Plan is based upon a series of global settlements and

compromises that involve nearly every major constituency in the Debtors' reorganization cases.

The Global Settlement Agreement and the Master Restructuring Agreement provide for a

comprehensive settlement with GM, and both agreements were approved by this Court in the

Confirmation Order.  With the Plan confirmed, the Debtors are focusing their efforts on

satisfying the conditions for the Plan to become effective and allow them to emerge from chapter

11.  The Debtors anticipate having the Plan become effective as soon as reasonably practicable.

                14.      Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

        15.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

        16.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements") and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

        17.    In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

7

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, the Tuscaloosa

News, and The Vindicator, and electronically through posting on the Delphi Legal Information

Website, www.delphidocket.com, on or before April 24, 2006.

18.    Approximately 16,700 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 27 omnibus Claims[4] objections,

pursuant to which this Court has disallowed and expunged 9,577 Claims and modified

approximately 3,550 Claims.  In addition, the hearings with respect to approximately 690 Claims

have been adjourned to future claims hearings pursuant to the Claims Objection Procedures

Order (as defined below).

19.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

---

[4]    The Debtors filed objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451
and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585),
February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27,
2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos.
8270 and 8271), July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151), September
21, 2007 (Docket No. 9535), October 26, 2007 (Docket No. 10738), November 19, 2007 (Docket No. 10982),
December 21, 2007 (Docket No. 11588), January 18, 2008 (Docket No. 12288), and February 15, 2008 (Docket
Nos. 12686 and 12687).

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

    20.  On November 30, 2007, the Debtors filed the Motion Under New

Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue

Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 11187), in which the Debtors requested this Court,

among other things, to authorize the Debtors to continue the current practices and procedures for

filing and serving notice of omnibus Claims objections pursuant to the Claims Objection

Procedures Order previously entered by this Court, including omnibus Claims objections to more

than 100 Claims.  On December 20, 2007, this Court entered the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

21.    In this Twenty-Ninth Omnibus Claims Objection, the Debtors are objecting to 17 Proofs of Claim, all of which are set forth on <u>Exhibit D</u> hereto in alphabetical order by claimant and cross-referenced by proof of claim number and basis of objection.[5]

<u>Relief Requested</u>

22.    By this Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) the Claim set forth on <u>Exhibit A-1</u> hereto because it asserts a liability or dollar amount that is not owed by the Debtors as the result of cure payments that the Debtors have made on account of assumptions, pursuant to section 365 of the Bankruptcy Code, of certain executory contracts or unexpired leases (each, a "Contract Assumption") and (b) the Claims that have been modified pursuant to prior orders set forth on <u>Exhibit A-2</u> hereto because they assert liabilities or dollar amounts that are not owed by the Debtors as the result of cure payments that the Debtors have made on account of a Contract Assumption.

23.    In addition, by this Objection the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 revising (a) the asserted amount with respect to the Claims set forth on <u>Exhibit B-1</u> hereto as the result of cure payments that the Debtors have made on account of a Contract Assumption and (b) the asserted amount

---

[5]    Contemporaneously with this Twenty-Ninth Omnibus Claims Objection, the Debtors are filing the Twenty-Eighth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To (A) Duplicate Or Amended Claims, (B) Books And Records Claim (C) Untimely Books And Records Claim, (D) Untimely Claim, And (E) Claims Subject To Modification And Modified Claim Asserting Reclamation.  In the Twenty-Eighth Omnibus Claims Objection, the Debtors object to Claims and are seeking (i) to expunge and disallow Claims that (a) are duplicative of other Claims or have been amended or superseded by later filed Claims, (b) are not reflected on the Debtors' books and records, (c) were not timely filed pursuant to the Bar Date Order and are not reflected on the Debtors' books and records, (d) were not timely filed pursuant to the Bar Date Order and (ii) to modify certain Claims, including Claims in which the claimant asserted a reclamation demand and the claimant and the Debtors entered into a letter agreement regarding the valid amount of the reclamation demand, with such agreement being subject to certain reserved defenses.  The Debtors are objecting to nine Proofs of Claim in the Twenty-Eighth Omnibus Claims Objection.

with respect to the Claims that have been modified pursuant to prior orders set forth on <u>Exhibit B-2</u> hereto as the result of cure payments that the Debtors have made on account of a Contract Assumption.

Objections To Claims

G.      <u>Assumption And Assignment Of Contracts And Related Cure Payments</u>

24.      The Debtors are party to thousands of contracts for the supply of goods to the Company's manufacturing operations.  In furtherance of the Debtors' transformation plan, the Debtors have been selling and winding-down certain non-core product lines and manufacturing sites.

25.      On October 15, 2007 and January 15, 2008, the Debtors filed motions seeking authority to sell their cockpits and interior systems business (the "Interiors Business") and their integrated closure systems business (the "Closure Business," and together with the Interiors Business, the "Interiors and Closures Businesses"), respectively.  On October 26, 2007, this Court approved the bidding procedures authorizing the Debtors to commence auctions to sell the Interiors and Closures Businesses.  On January 25, 2008, this Court entered an order authorizing the sale of the Interiors Business and Closures Business, which order subsequently became final.  In both the Interiors Business and Closure Business divestitures, the Debtors conducted due diligence and finalized a list of contracts that they would assume and assign to the respective buyers as part of the sale transactions.   Pursuant to section 365 of the Bankruptcy Code, to assume such contracts, the Debtors have cured all defaults to the extent required.  Accordingly, the defaults on the contracts with the non-Debtor contract counterparties have been cured due to certain payments they have received (the "Cure Payments").

26.      In some instances, certain Claims were satisfied in whole or in part by a cure payment that the Debtors made to counterparties to executory contracts or unexpired leases

11

under which such Claims arose.  The Debtors are seeking to reduce those Claims by the amount of the Cure Payments made in such instances.  In determining the amount by which each such Claim should be reduced, the Debtors reviewed the executory contracts and unexpired leases being assumed.  To eliminate multiple recoveries for a single liability, by this Objection, the Debtors seek to modify the Claims to accurately reflect the amount of such Claims against a particular Debtor.

H.    Books And Records Claim Due To Cure Payment

27.    During the Debtors' review of the Proofs of Claim, the Debtors determined that a certain Proof of Claim asserts a liability or dollar amount that is not owing pursuant to the Debtors' books and records because such Claim was fully satisfied by a Cure Payment.  Set forth on Exhibit A-1 hereto is a Claim that the Debtors have identified as a Claim for which the Debtors are no longer liable (the "Exhibit A-1 Claim").

28.    A claimant's proof of claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'"  WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'"  Id.

29.    The Debtors object to the Exhibit A-1 Claim and request that such claim be disallowed and expunged in its entirety.  If this Court does not disallow and expunge this Claim in full, the Debtors expressly reserve all of their rights to further object to the Exhibit A-1 Claim at a later date on any basis whatsoever.

30.    Accordingly, the Debtors (a) object to the Exhibit A-1 Claim and (b) seek entry of an order disallowing and expunging the Exhibit A-1 Claim in its entirety.

12

I.    Books And Records Claims Due To Cure Payment That Are Subject To Prior Orders

31.    In addition, the Debtors have determined that certain Proofs of Claim that were modified pursuant to prior orders assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records because each such Claim was fully satisfied by Cure Payments.  Set forth on Exhibit A-2 hereto are such Claims that the Debtors have identified as Claims for which the Debtors are no longer liable (the "Exhibit A-2 Claims").

32.    The Debtors object to the Exhibit A-2 Claims and request that each such Claim be disallowed and expunged in its entirety.   If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Exhibit A-2 Claims at a later date on any basis whatsoever.

33.    Accordingly, the Debtors (a) object to the Exhibit A-2 Claims and (b) seek entry of an order disallowing and expunging the Exhibit A-2 Claims in their entirety.

J.    Claims Subject To Modification Due To Cure

34.    During the Debtors' review of the Proofs of Claim, the Debtors determined that certain Proofs of Claim have been satisfied in part by Cure Payments and thus should be modified to reflect the Cure Payments.  Set forth on Exhibit B-1 hereto is a list of such Claims that the Debtors believe should be modified solely to assert a properly fully liquidated claim amount different from that asserted by the Claimant (the "Exhibit B-1 Claims").  For each Claim, Exhibit B-1 reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed"[6] and the proposed modified amount for the Claim in a column titled "Claim As Modified."

---

[6]    The Asserted Claim Amount on Exhibit B-1 reflects only asserted liquidated claims.

13

35.    The Debtors object to the amount for each Claim listed on <u>Exhibit B-1</u> and request that each such Claim be revised to reflect the amount listed in the "Claim As Modified" column of <u>Exhibit B-1</u>.  Thus, no Claimant listed on <u>Exhibit B-1</u> would be entitled to recover for any Claim in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on <u>Exhibit B-1</u>, subject to the Debtors' right to further object to each such Claim.

36.    The inclusion of the Claims on <u>Exhibit B-1</u>, however, may not reflect the Debtors' view as to the ultimate validity of any such Claim.  The Debtors therefore expressly reserve all of their rights to further object to any or all of the Exhibit B-1 Claims at a later date on any basis whatsoever. For clarity, <u>Exhibit B-1</u> refers to the Debtor entities by case number and <u>Exhibit C</u> displays the formal name of three Debtor entities and their associated bankruptcy case numbers referenced in <u>Exhibit B-1</u>.

37.    Accordingly, the Debtors (a) object to the amount for each Exhibit B-1 Claim and (b) seek an order modifying the Exhibit B-1 Claims to reflect the Modified Total as set forth on <u>Exhibit B-1</u>.

K.    <u>Claims Subject To Prior Orders And To Modification Due To Cure</u>

38.    In addition, the Debtors have also determined that certain Proofs of Claim that were modified pursuant to prior orders have been satisfied in part by the Cure Payments and that the amounts of such Proofs of Claim should be modified accordingly.  Set forth on <u>Exhibit B-2</u> hereto is a list of such Claims that the Debtors believe should be modified solely to assert a properly fully liquidated claim amount different from that asserted by the Claimant (the "Exhibit B-2 Claims").  For each Claim, <u>Exhibit B-2</u> reflects the amount, classification, and Debtor

14

asserted in the Proof of Claim in a column titled "Claim As Docketed."[7]  The proposed modified

amount for such Exhibit B-2 Claims is reflected in a column titled "Claim As Modified."

       39.     The Debtors object to the amount for each Claim listed on Exhibit B-2 and

request that each such Claim be revised to reflect the amount listed in the "Claim As Modified"

column of Exhibit B-2.  Thus, no Claimant listed on Exhibit B-2 would be entitled to recover for

any Claim in an amount exceeding the dollar value listed as the "Modified Total" for such Claim

on Exhibit B-2, subject to the Debtors' right to further object to each such Claim.  For clarity,

Exhibit B-2 refers to the Debtor entities by case number and Exhibit C displays the formal name

of three Debtor entities and their associated bankruptcy case numbers referenced in Exhibit B-2.

       40.     Accordingly, the Debtors (a) object to the asserted amount for each

Exhibit B-2 Claim and (b) seek an order modifying the Exhibit B-2 Claims to reflect the

Modified Total as set forth on Exhibit B-2.

Separate Contested Matters

       41.     Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Twenty-Ninth Omnibus Claims

Objection, each such Claim and the objection to such Claim asserted in this Twenty-Ninth

Omnibus Claims Objection will be deemed to constitute a separate contested matter as

contemplated by Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order,

any order entered by the Court with respect to an objection asserted in this Twenty-Ninth

Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

---

[7]  The Asserted Claim Amount on Exhibit B-2 reflects only asserted liquidated claims.

## Reservation Of Rights

42.     The Debtors expressly reserve the right to amend, modify, or supplement this Twenty-Ninth Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Twenty-Ninth Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

## Responses To Objections

43.     Responses to the Twenty-Ninth Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

L.      Filing And Service Of Responses

44.     To contest an objection, responses (each, a "Response"), if any, to the Twenty-Ninth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

16

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on April 23, 2008.**

M.    <u>Contents Of Responses</u>

45.    Every Response to this Twenty-Ninth Omnibus Claims Objection must

contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; <u>provided,
however,</u> that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; <u>provided further, however,</u> that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

N.    <u>Timely Response Required</u>

46.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

17

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on April 30,

2008 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection

Procedures Order will apply to all Responses and hearings arising from this Twenty-Ninth

Omnibus Claims Objection.

47.    Pursuant to the Claims Objection Procures Order, only those Responses
made in writing and timely filed and received will be considered by the Court.  If a Claimant
whose Proof of Claim is subject to the Twenty-Ninth Omnibus Claims Objection and who is
served with the Twenty-Ninth Omnibus Claims Objection fails to file and serve a timely
Response in compliance with the Claims Objection Procedures Order, the Debtors may present
to the Court an appropriate order seeking relief with respect to such Claim consistent with the
relief sought in the Twenty-Ninth Omnibus Claims Objection without further notice to the
Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the
entry of such order as provided in the Claims Objection Procedures Order; provided further,
however, that if the Claimant files a timely Response which does not include the required
minimum information required by the Claims Objection Procedures Order, the Debtors may seek
disallowance and expungement of the relevant Claim or Claims only in accordance with the
Claims Hearing Procedures Order.

48.    To the extent that a Claim would be subject to estimation pursuant to

section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with

the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or

partially unliquidated and (b) provides the amount that the Claimant believes would be the

allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,
as appropriate (the "Claimant's Asserted Estimated Amount"), <u>pursuant to the Claims Objection
Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted
Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the
Bankruptcy Code for all purposes other than allowance, but including voting and establishing
reserves for purposes of distribution, subject to further objection and reduction as appropriate
and section 502(j) of the Bankruptcy Code</u>, by providing notice as described more fully in the
Claims Objection Procedures Order.

Replies To Responses

49.     Replies to any Responses will be governed by the Claims Objection
Procedures Order.

Service Of Twenty-Ninth Omnibus Claims Objection Order

50.     Service of any order with regard to this Twenty-Ninth Omnibus Claims
Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

51.     Questions about this Twenty-Ninth Omnibus Claims Objection or requests
for additional information about the proposed disposition of Claims hereunder should be directed
to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in
writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,
Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).
Questions regarding the amount of a Claim or the filing of a Claim should be directed to the
Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the
Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

19

<u>Notice</u>

52.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

53.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Twenty-

Ninth Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on <u>Exhibits A-1</u> and <u>A-2</u>  is

attached hereto as <u>Exhibit E</u>.  A form of the Notice Of Objection To Claim to be sent to the

Claimants listed on <u>Exhibits B-1</u> and <u>B-2</u>  is attached hereto as <u>Exhibit F</u>.  Claimants will receive

a copy of this Twenty-Ninth Omnibus Claims Objection without <u>Exhibits A-1</u> through <u>F</u> hereto.

Claimants will nonetheless be able to review <u>Exhibits A-1</u> through <u>F</u> hereto free of charge by

accessing the Debtors' Legal Information Website (www.delphidocket.com).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

54.    Because the legal points and authorities upon which this objection relies
are incorporated herein, the Debtors respectfully request that the requirement of the service and
filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy
Rules for the United States Bankruptcy Court for the Southern District of New York be deemed
satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        March 27, 2008

                      SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

                      By:  _/s/ John Wm. Butler, Jr._____
                          John Wm. Butler, Jr. (JB 4711)
                          John K. Lyons (JL 9331)
                          Ron E. Meisler (RM 3026)
                      333 West Wacker Drive, Suite 2100
                      Chicago, Illinois 60606

                          - and -

                      By:  _/s/ Kayalyn A. Marafioti_____
                          Kayalyn A. Marafioti (KM 9632)
                          Thomas J. Matz (TM 5986)
                      Four Times Square
                      New York, New York 10036

                      Attorneys for Delphi Corporation, et al.,
                        Debtors and Debtors-in-Possession