ORIGINAL

```
 1              UNITED STATES BANKRUPTCY COURT
                SOUTHERN DISTRICT OF NEW YORK
 2     ----------------------------------------X
       IN THE MATTER OF              Case No.: 05-44481
 3
       DELPHI CORP.                  One Bowling Green
 4                                   New York, New York
                                     March 31, 2008
 5     ----------------------------------------X

 6         HEARING RE [MOTION TO AMEND COMPLAINT]

 7

 8         BEFORE THE HONORABLE JUDGE DRAIN

 9            US BANKRUPTCY COURT JUDGE

10

11     TRANSCRIPT ORDERED BY:

12         SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

13

14     APPEARANCES:

15         JOHN BUTLER, JNR.

16         MICHAEL RIELA

17

18     COURT TRANSCRIBER:

19         BRENTON GRAY

20

21              REGENCY REPORTING, INC.

22        Certified Court Reporters & Videographers

23      425 Eagle Rock Avenue      575 Madison Avenue

24      Roseland, NJ 07068         New York, NY 10022

25        www.regencyreporting.net    1-866-268-7866
```

1              JUDGE DRAIN: Okay.  Delphi Corporation.

2              JOHN BUTLER, JNR: Your Honor, Jack Butler and Kayalyn

3     Marafioti from Skadden Arps here on behalf of the debtors for this

4     non omnibus hearing agenda involving two matters.  We are seeking

5     extension of performance under various agreements.

6              Your Honor, we did file a proposed non omnibus agenda

7     and would like to take the two matters in order.

8              Your Honor, the first matter on the agenda, matter

9     number one, is the supplemental IRS Pension Funding Waiver Extension

10    Motion in Document No. 13195.  The only response, which is not an

11    objection, actually it's a response in support of the relief sought,

12    was filed by the PPGC at Document No. 13264, and I will address that

13    in just a couple of moments.

14             Your Honor, this is a fourth in a series of motions that

15    we have filed seeking to get the Court's approval to enter into and

16    perform in connection with waivers issued by the IRS of certain

17    minimum funding requirements applicable to Delphi's [unclear] salary

18    pension plans.

19             The Court has earlier approved these waivers back on

20    May 31, 2007 at Document No. 8117 and again on October 26, 2007 at

21    Document No. 10726 and finally, on February 27, 2008 at Document

22    No. 12887.

23             Under the existing terms of these waivers, the waivers

24    expired today March 31.  If the pension funding waivers were permitted

25    to expire the debtor's believe that the consequences would be

1   significant with respect to their prospect of emerging under Chapter

2   11 under the current plan of reorganization that has been confirmed

3   by this Court pursuant to a final Confirmation Order.

4          The debtors could face the assertion of a total potential

5   excise tax claim for the plan year ended September 30, 2006, of more

6   than $1.4 billion and for the plan year ended September 30, 2007,

7   the debtors would be required to make what we believe would be

8   redundant cash contributions that would actually result in a projected

9   over-funding of the hourly plan.

10         As a result of our discussions with the PBGC and the

11  IRS and giving credence to the plan closing on the plan of reorganization,

12  which is scheduled to occur this Friday April 4, 2008, the PBGC

13  recommended and the IRS has granted waivers through April 7, 2008

14  subject to this Court's approval.  And in fact, the actual waivers

15  were received on Friday, so I have them here in Court today.

16         Your Honor, in exchange for extending the waivers from

17  March 31, 2008 through and including April 7, 2008, we have agreed to

18  extend the letter of credit expiry date to April 22, 2008 and increase

19  the aggregate amount outstanding under those letters of credit by

20  $2.5 million.

21         Two other comments Your Honor, regarding both relief

22  requested and the PBGC's response.  First is the PBGC's response.

23  We did not file any kind of reply to the positions taken in the

24  PBGC in their response.  Essentially I think it was an effort to

25  put the Court on notice of the discussions that have been had

4

1    between  the company and the PBGC, that if the plan were not to

2    go forward in the short term and the debtors were seeking longer

3    term waivers inside of Chapter 11, that the PBGC would intend

4    to put back on the table the issue of additional collateral.  And

5    they stake out in their response their view of why that would

6    be justified.

7         We don't intend to negotiate with the government

8    on the record in a courtroom.  We don't agree with their view

9    particularly on the issues on what would be required and we

10   understand that many of our stakeholders have an issue on

11   elevating what our stakeholders would view to be an unsecured

12   claim to secured status.  I don't think that needs to be before

13   the Court today, but I also didn't want this record to suggest

14   that our lack of response indicated that we conceded the positions

15   taken by the PBGC.  They have been, as Your Honor knows, very

16   constructive in the dialogues with the company in these cases and

17   we expect that constructive dialogue to continue.  And candidly,

18   in the even that the plan didn't go forward, the only basis on

19   which the company would be in a position to ultimately continue

20   as a transformation objective preservation of these pension plans

21   will be on a consensual basis the PBGC.

22         So we need to work with each other, we understand

23   it, and we very much appreciate the constructive nature of their

24   dialogue throughout this.  So I simply wanted to express that

25   appreciation on the record and just indicate that we thought it

1   I wanted to make that brief statement that we didn't think

2   it was appropriate to publicly negotiate.

3           JUDGE DRAIN: Okay, understood.

4           JOHN BUTLER, JNR: Your Honor, the other item

5   in terms of relief and implementing some of the discussions

6   with the PBGC, I can imagine that there may be in the next

7   number of days an additional shorter term waiver required

8   on sort of the same basis as the prior waivers.  That

9   would be a different discussion than if we weren't going to

10  go forward and promptly consummate the plan and we were having

11  a collateral discussion with the PBGC, which would clearly

12  involve our committees.

13          So I would ask Your Honor if you would consider,

14  in connection with the proposed order we have, to add an

15  additional element of the second sentence of the decretal

16  paragraphs that not only would approve the pension funding

17  waivers that we've brought before you today, but also authorize

18  us to enter into any additional supplemental modifications to

19  the pension funding waivers that are not objected to by the

20  Statutory Committees on terms generally consistent with the

21  pension funding waivers.  So that if we have a  if we need to

22  extend something for two, three or four days or a week we don't

23  have to come running back into Court in the short term.

24          JUDGE DRAIN: Have you discussed that with the two

25  committees?

1              JOHN BUTLER, JNR: I have not.  We talked about it

2    this morning.  We felt that so long as it is reviewed by them

3    in that objection then it preserves sort of a check and balance.

4    But in thinking through the

5    issues of April 7 as a week from now, and I can imagine that we

6    might need a day or two or some amount of time, and so I wanted

7    to make sure that we had the opportunity.

8              The reason I raise it is I think there is a question

9    as to whether or not the approval has to be as of the day, like

10   today if March 31, as of the day or whether it can relate back.

11   I don't want to take any risks along that line or have that sort

12   of legal debate with anybody.

13             JUDGE DRAIN: Okay.

14             JOHN BUTLER, JNR: That's why I wanted to ask.

15             JUDGE DRAIN: Does the committee have any view on this.

16             MICHAEL RIELA:   Michael Riela from Latham and Watkins

17   for the Committee.  This is the first I had heard about this, but I

18   understand Mr. Butler's concerns here.  I think if there is enough

19   time to review, say at least a day or two, I guess if the Creditors'

20   Committee were to object I'm not sure how mechanically we would get

21   this before this Court, whether it be.

22             JUDGE DRAIN: Well, my response is that I'm generally

23   going to be around.  I have a PLI thing in the morning on the 7th,

24   but you could get on for a very quick hearing on something like this

25   too.  But it seems to me, given the fiduciary roles that the

1    committees play, I could approve this.  But if you have any issues

2    or doubt you all should understand that I could have a hearing

3    very quickly on it.

4            MICHAEL RIELA:    I understand Your Honor, and thank

5    you for that.  I guess it would be teed up to this Court by a

6    motion of the debtor, I assume, or would it have to be something

7    that the Committee would have to bring up?

8            JUDGE DRAIN: I think it would be by the debtor.

9            JOHN BUTLER, JNR: Yes.

10           JUDGE DRAIN: The initial call is by the debtor based

11   on the response that the debtor got from the two committees.

12           MICHAEL RIELA: That should be fine.

13           JOHN BUTLER, JNR: Your Honor, I think there are only

14   two limitations here, one I think we need the Committee's support

15   to second [unclear] not objection to it, we need to review that

16   in ample time.  And second, I think it also would need to be on

17   terms generally consistent with the current waivers.

18           JUDGE DRAIN: Right.

19           JOHN BUTLER, JNR: We're talking about extending LCs,

20   giving sort of de minimus additional collateral.  I think if it

21   was going to be a discussion about a long term waiver and some

22   significant granting of leans or other collateral, I think that

23   is a different  that's not what we would be contemplating by

24   this provision.

25           JUDGE DRAIN: Okay.  And that raises one question

1   I have on this, which is you mentioned I think that your closing

2   schedule for the 4th, but then you are contemplating this

3   protective matter of potential extension, where do you stand on

4   the closing at this point?

5          JOHN BUTLER, JNR: Your Honor, the debtors believe

6   that we will have met all conditions to closing as of April 4,

7   and would intend to close on April 4.  We're having  today is

8   the date that the rights offering closes and so I don't want to

9   go beyond that stage.

10          JUDGE DRAIN: All right, well, in light of that

11  and there being no opposition to this motion, I will approve it.

12  It is certainly consistent with the prior relief granted in the

13  prior agreement by the PBGC/IRS and certainly a reasonable

14  exercise of business judgment given the timing here and the

15  nature of the plan in the [unclear] pension plan.

16          JOHN BUTLER, JNR: Thank you Your Honor.

17          JUDGE DRAIN: That Order will get under today.

18          JOHN BUTLER, JNR: Your Honor, the second matter

19  before the Court is Item No. 2 on the agenda, the GM Indemnity

20  Extension Motion filed at Document No. 13200.  We did file,

21  there was a noticing issue and we sent out a restated notice of

22  Document No. 13229 because the caption of the motion wasn't

23  correct in the original notice.

24          Your Honor, this is again seeking very narrow

25  relief and is really brought by the debtors out of an abundance

1    of caution.   Under the provisions of the UAW Delphi GM

2    Memorandum of Understanding that this Court approved on July 19,

3    2007, at Document No. 8693, and which was incorporated into the

4    plan of reorganization as Exhibit 7.21A of the plan of

5    reorganization at Document No. 11386, that Your Honor confirmed

6    in the Confirmation Order.

7            The debtors believe they have the authority to

8    extend the indemnification agreement for additional periods of

9    time, such as requested in the motion, and that has to do with

10   the provisions that are set forth in Sections F2 A, B, and C,

11   particularly F2C of the UAW Delphi GM Memorandum of Understanding.

12           Without the debtors determining to extend the

13   indemnity, the indemnity would otherwise expire today, on March

14   31, 2008.   And the reason it would expire on this date is because

15   under the original Approval Order and the original terms of the

16   provisions the indemnity was extended from December 31, 2007 to

17   March 31, 2008 if Delphi had commenced solicitation of acceptances

18   of its Chapter 11 plan prior to December 31, 2007.   But the plan

19   had not been confirmed or substantially consummated by December 31,

20   2007.   We actually entered into that and Your Honor will recall that

21   Your Honor approved the disclosure statement I think on or about

22   December 10, 2007, and we commenced the solicitation, but the

23   confirmation order didn't occur until January.

24           So that brought it into March 31, 2008.   The debtors

25   are seeking here the authority, but not the direction to unilaterally

1  agree to extend this.  This is not a separate agreement that we have

2  to enter into.  We are mindful  while the plant investors have not

3  objected to this motion we are mindful of the constraints of Section

4  5P of the [unclear] out of the ordinary course agreements with

5  General Motors, this is a pre-existing agreement that was under the

6  plan of reorganization.  That plan is a material investment document

7  that has already been approved by the plant investors, but we wanted

8  the unilateral right to exercise our discretion to extend the

9  indemnity for a period of up through and including April 15, 2008,

10  so long as GM had extended the UAW benefit guarantee by at least that

11  amount of time.

12         JUDGE DRAIN: Has GM done that?

13         JOHN BUTLER, JNR: I don't know Your Honor, that's

14  between GM and the UAW I presume.  The way this Order is crafted our

15  extension would only be effective if they have done that.  I think

16  you can read the agreement, the memorandum of understanding, by

17  providing for that frankly in Article F2.

18         JUDGE DRAIN: So it's automatically effective if they

19  have done it?

20         JOHN BUTLER, JNR: Yes Your Honor, so long as we

21  agreed to do it, then yes, we would have  we are asking for the

22  discretion here to do it, but we would not be committed to extend

23  the indemnity unless GM and the UAW had extended their agreement.

24         JUDGE DRAIN: But you don't have to do anything more,

25  that condition is.

1        JOHN BUTLER, JNR: Correct.

2        JUDGE DRAIN: .self effecting if they have done it?

3        JOHN BUTLER, JNR: Yes Your Honor.  Your Honor, that

4   is really the limitations of this particular, and the extent of

5   request for authority in this particular matter.  We believe, as

6   I said, that we actually have the right to do this under the MOU,

7   but this is a sensitive subject for everybody involved and we

8   wanted to make sure that we had brought it on for notice there

9   are no objections from any party, and we wanted to have this

10  as a matter of record, and candidly I think both  some of the other

11  major stakeholders will want it in order that the Court has

12  specifically authorized us to do this.

13       JUDGE DRAIN: Does anyone have anything to say on

14  this motion?  Right.  I have one question.  I don't remember this

15  that well, but the Union represented by Mr. Kennedy, does this

16  I mean does this affect them at all?

17       JOHN BUTLER, JNR: No Your Honor, there are separate

18  agreements between GM and both the steel workers and the IUECWA,

19  which are separate agreements not involving the debtors and the

20  debtors did never indemnify GM in connection with those matters.

21  So those are independent agreements, they are swept up to and

22  included in the MOUs involving the steel workers and IUECWA.

23       JUDGE DRAIN: The distinction here is the separate

24  indemnity?

25       JOHN BUTLER, JNR: Correct.

1      JUDGE DRAIN: Okay.

2      JOHN BUTLER, JNR: And the only matter before the

3  Court on here is Delphi's, the debtor's indemnity obligations.

4  The other matter is between GM and the Unions and the MOUs,

5  between those parties.

6      JUDGE DRAIN: Okay, I agree with you, this does

7  seem to me to be something that you already have authority to

8  do under the existing agreement, but I think it is something

9  that both GM and the Union would like to have confirmed on the

10  record and I'm happy to do that.

11      So I will grant this motion on the basis that it

12  is unopposed and again, I think you already have the right to

13  do it.

14      JOHN BUTLER, JNR: Thank you very much Your Honor.

15  Your Honor, those are the only matters we have on this record.

16  We will submit the revised disc.

17      JUDGE DRAIN: Very well, you can email it to

18  Chambers.

19      JOHN BUTLER, JNR: Thank you Judge.

20

21

22

23

24

25

C E R T I F I C A T I O N

    I certify that the foregoing is a transcript from an electronic sound recording of the proceedings in the above-entitled matter taken on March 31, 2008, except where,  as indicated, the Court has modified the transcript.

Brenton Gray
Brenton Gray

4/1/08
Date