**Hearing Date And Time: April 30, 2008 at 10:00 a.m.**
                                              **Objection Deadline: April 23, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
    In re                             :       Chapter 11
                                              :
DELPHI CORPORATION, et al.,      :       Case No. 05-44481 (RDD)
                                              :
                                              :       (Jointly Administered)
           Debtors.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 365(d)(4)
FURTHER EXTENDING DEADLINE TO ASSUME OR
REJECT LEASES OF NONRESIDENTIAL REAL PROPERTY

("POSTCONFIRMATION 365(d)(4) DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 365(d)(4) further extending the deadline to assume or reject unexpired leases of nonresidential real property, and respectfully represent as follows:

Background

A.  The Chapter 11 Filings

1.  On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.  No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the official committee of unsecured creditors, the "Statutory Committees").

3.  On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264).  Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession  (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

2

respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389). On January 25, 2008, the Court entered an order confirming the Plan, as modified (Docket No. 12359) (the "Confirmation Order"), which became a final order on February 4, 2008.

4.   On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Plan) refused to participate in a closing that was commenced but not completed and refused to fund their Investment Agreement (as defined in the Plan) with Delphi. The Debtors are prepared to pursue actions with respect to the Plan Investors that are in the best interests of the Debtors and their stakeholders and are working with their stakeholders to achieve their goal of emerging from chapter 11 as soon as practicable.

5.   This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

6.   The statutory predicate for the relief requested herein is section 365(d)(4) of the Bankruptcy Code.

B.   Current Business Operations Of The Debtors

7.   Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company

---

[1] The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

3

business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

        8.       The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

        9.       Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.     Events Leading To The Chapter 11 Filing

        10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however,

---

[2] On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007. On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007. The Spanish court approved the social plan on July 31, 2007. The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

4

with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

11.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

5

D.  The Debtors' Transformation Plan

13. On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations. The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements to create a competitive arena in which to conduct business; second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company; third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable solution to their current pension situation.

E.  Plan Confirmation And Postconfirmation Matters

14. The confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases. The Global Settlement Agreement and the Master Restructuring Agreement provide for a comprehensive settlement with GM, and both agreements were approved by this Court in the Confirmation Order. After the Plan was confirmed, the Debtors focused their efforts on satisfying the conditions for the Plan to become effective. The Debtors satisfied those conditions and on April 4, 2008 began a formal closing process attended by representatives of GM, the exit lenders, and the Statutory Committees. The Plan Investors, however, refused to participate in the closing or fund their obligations under the Investment Agreement. Instead, the Plan Investors delivered written notices purporting to terminate the Investment Agreement based on both alleged breaches by the Debtors and the failure of the Plan's effective date to occur by April 4,

6

2008. The Debtors are prepared to pursue actions against the Plan Investors that are in the best interests of the Debtors and their stakeholders and are working with their stakeholders to evaluate their options to move forward with emerging from chapter 11 as soon as reasonably practicable.

15.  Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

16.  The Debtors request entry of an order, under section 365(d)(4) of the Bankruptcy Code, further extending the date on or before which the Debtors may assume or reject unexpired leases of nonresidential real property to and including the effective date of the confirmed Plan (subject to the terms of the confirmed Plan and the Confirmation Order, including the elections to assume or reject Real Property Leases (as defined below) in accordance therewith) or the effective date of any modified plan (subject to the terms of such plan and corresponding confirmation order, including any elections to assume or reject Real Property Leases that may be permitted thereunder). The relief requested is without prejudice to the Debtors' right to seek from this Court further extensions of the assumption and rejection deadline with respect to any or all of their Real Property Leases and a lessor's right to seek a shortening of the deadline.

Basis For Relief

17.     The Debtors are lessors or lessees with respect to approximately 80 unexpired leases of nonresidential real property (the "Real Property Leases").  This Court's Order Pursuant To 11 U.S.C. § 365(d)(4) Further Extending Deadline To Assume Or Reject Unexpired Leases Of Nonresidential Real Property, entered February 26, 2008 (Docket No. 12878) (the "Fourth Extension Order"), set the deadline for the Debtors to assume or reject unexpired leases of nonresidential real property as the earlier of plan confirmation and May 31, 2008.  The Debtors have determined to assume all of their Real Property Leases under the Plan as of the effective date of the Plan.[4]  This Court approved those lease assumptions (as of the Plan's effective date) when entering the Confirmation Order on January 25, 2008.  (Confirmation Order ¶ 22.)

18.     Although the Debtors have determined to assume under their Plan all of the Real Property Leases, as of the effective date of the Plan and subject to the terms of the Plan and Confirmation Order, it would be premature for the Debtors to assume any of the Real Property Leases until the Plan or any modified plan becomes effective.  If the current deadline is not extended, the Debtors may be compelled to assume substantial, long-term liabilities under the Real Property Leases or forfeit benefits associated with some Real Property Leases to the detriment of the Debtors' ability to operate and preserve the going-concern value of their business for the benefit of all creditors and other parties-in-interest.  The non-debtor parties to the Real Property Leases will not be prejudiced by the proposed extension because the Debtors

---

[4]  Section 8.1(a) of the Plan provides that all unexpired Real Property Leases (not previously assume or rejected) will be assumed under the Plan unless scheduled for rejection on Plan Exhibit 8.1(a).  The Debtors did not schedule any Real Property Lease on Plan Exhibit 8.1(a).  (See Plan Exhibit 8.1(a), filed December 28, 2007, Docket No. 11608.)

8

are making payments under the Real Property Leases as they come due and have determined to assume the Real Property Leases under the Plan.

## Applicable Authority

19. Section 365(d)(4) of the Bankruptcy Code provides:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

1 1 U.S.C. § 365(d)(4).

20. The term "cause" as used in section 365(d)(4) is not defined in the Bankruptcy Code. In South Street Seaport L.P. v. Burger Boys, Inc., 94 F.3d 755 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit held that the following factors would establish whether "cause" existed to extend the statutory period under section 365(d)(4) of the Bankruptcy Code:

    (a)    whether the debtor was paying for the use of the property;

    (b)    whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;

    (c)    whether the lease is the debtor's primary asset; and

    (d)    whether the debtor has had sufficient time to formulate a plan of reorganization.

Id. at 761. The court enumerated additional factors that may merit consideration, including the complexity of the case and the number of leases that the debtor must evaluate. Id.; see also 130 Cong. Rec. S8891, 58,894-95 (daily ed. June 29, 1984) ("cause" includes large number of leases) (statement of Sen. Hatch), reprinted in 1984 U.S.C.C.A.N. 590, 597; In re Enron Corp., 279 B.R. 695, 703 (Bankr. S.D.N.Y. 2002).

21. The Debtors satisfy all of these requirements. First, in compliance with section 365(d)(3) of the Bankruptcy Code, the Debtors have remained and fully intend to remain current with respect to all outstanding postpetition rental obligations under the Real Property Leases.

22. Second, the relief requested herein will not affect any lessor's rights in a manner inconsistent with the provisions of the Bankruptcy Code. See Edward J. Debartolo Corp. v. Child World, Inc. (In re Child World, Inc.), 146 B.R. 89, 92 (S.D.N.Y. 1992) (holding that extension of debtors' time to assume or reject its unexpired leases of nonresidential real property is appropriate when leaseholders are not "irreparably injured in the interim"). The Debtors have the financial ability to and intend to continue to perform all of their obligations under the Real Property Leases as required by section 365(d)(3) of the Bankruptcy Code. The significant cash revenues from the Debtors' operations afford the Debtors this financial ability. The Debtors' existing debtor-in-possession financing facility gives the Debtors liquidity and provides additional comfort to lease counterparties that the Debtors will continue to meet their obligations under the Real Property Leases as they come due. Moreover, lessors may seek to shorten the deadline if new circumstances were to warrant such a shortening.

23. Third, certain of the Real Property Leases are among the Debtors' primary assets and are vital to their business. The Debtors' manufacturing sites, technical centers, and sales offices are fundamental to their reorganization efforts and comprise an integral component of the Debtors' strategic business plans.

24. Fourth, the Debtors have obtained confirmation of the Plan and have determined under the Plan to assume the Real Property Leases, but require additional time for such a determination under any modified plan that might be proposed.

25.     Additionally, as stated above, if the current deadline is not extended, the Debtors may be compelled to assume liabilities prematurely under the Real Property Leases or risk forfeiting benefits associated with certain Real Property Leases.  To prevent this difficult choice, this Court should exercise its discretion to extend the current deadline.

26.     Courts in this circuit and others have granted similar relief to the relief requested herein in other large, complex chapter 11 cases.  See, e.g., In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Sept. 24, 2003) (lease assumption/rejection deadline extended through plan confirmation); In re Ames Dep't Stores, Inc., Case No. 01-42217 (REG) (Bankr. S.D.N.Y. Oct. 3, 2001, Dec. 5, 2001) (deadline extended through confirmation); In re Nextwave Personal Commc'ns Inc., Case No. 98 B 21529 (ASH) (Bankr. S.D.N.Y. July 10, 1998) (same); In re Maidenform Worldwide, Inc., Case No. 97 B 44869 (CB) (Bankr. S.D.N.Y. Sept. 12, 1997) (same); In re UAL Corp., Case No. 02-B-48191 (ERW) (Bankr. N.D. Ill. Sept. 21, 2005) (same).

27.     Accordingly, this Court should extend the time within which the Debtors may assume or reject any Real Property Lease to and including the earlier of the effective date of the Plan (subject to the subject to the terms of the confirmed Plan and the Confirmation Order) and the effective date of any modified plan (subject to the terms of the confirmed modified plan and corresponding confirmation order).

Notice Of Motion

28.     Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) and the Tenth

11

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  Notice has also been provided to each lessor with respect to the Real Property Leases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

29.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the deadline to assume or reject unexpired leases of nonresidential real property to and including the effective date of the Plan or any modified plan (subject to the terms thereof and any corresponding confirmation order) without prejudice to the Debtors' right to seek further extensions of the assumption and rejection deadline with respect to any or all of their Real Property Leases and a lessor's right to seek a shortening of the deadline and (b) granting the Debtors such other and further relief as is just.

Dated:      New York, New York
            April 10, 2008

                                                               SKADDEN, ARPS, SLATE, MEAGHER
                                                                & FLOM LLP

                                                    By:   /s/ *John Wm. Butler, Jr.*
                                                        John Wm. Butler, Jr. (JB 4711)
                                                        John K. Lyons (JL 4951)
                                                        Ron E. Meisler (RM 3026)
                                                333 West Wacker Drive, Suite 2100
                                                Chicago, Illinois 60606
                                                (312) 407-0700

                                                               - and -

                                                By:   /s/ *Kayalyn A. Marafioti*
                                                      Kayalyn A. Marafioti (KM 9632)
                                                       Thomas J. Matz (TM 5986)
                                                Four Times Square
                                                New York, New York 10036
                                                (212) 735-3000

                                                Attorneys for Delphi Corporation, et al.,
                                                  Debtors and Debtors-in-Possession