IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
        In re                         :   Chapter 11
                                      :
DELPHI CORPORATION, et al.,           :   Case No. 05-44481 (RDD)
                                      :
                          Debtors.    :   (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

<u>AFFIDAVIT OF SERVICE</u>

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On April 8, 2008, I caused to be served the document listed below upon the parties listed on <u>Exhibit A</u> hereto via overnight mail:

> Debtors' Supplemental Reply To James Penney's Response To Debtors' Twenty-Third Omnibus Objection Regarding Claim No. 11395 ("Supplemental Reply To The Response Of James Penney") (Docket No. 13338) [a copy of which is attached hereto as <u>Exhibit B</u>]

Dated: April 11, 2008

_____/s/ Evan Gershbein_____
Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 11th day of April, 2008, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____/s/ Vanessa R Quinones_____

Commission Expires:___3/20/2011____

# EXHIBIT A

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Davis, Polk & Wardwell | Donald Bernstein<br>Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092<br>212-450-4213 | Counsel to Debtor's Postpetition<br>Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler<br>Bonnie Steingart<br>Vivek Melwani<br>Jennifer L Rodburg<br>Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | Counsel to Equity Security Holders<br>Committee |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | Counsel to Official Committee of Unsecured<br>Creditors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | Counsel to Debtor's Prepetition<br>Administrative Agent, JPMorgan Chase<br>Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | Counsel to United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/9/2008 3:28 PM
Response Service List 070530 Overnight

Delphi Corporation
Special Parties

| Company | Address | City | State | Zip |
|---|---|---|---|---|
| James Penney | 445 North King Street | Xenia | OH | 45385-2207 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/11/2008 3:03 AM
James Penney Special Party

# EXHIBIT B

**Hearing Date and Time: April 18, 2008 at 10:00 a.m.**
**Supplemental Response Date and Time: April 16, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                 :
       In re                        :     Chapter 11
                                   :
DELPHI CORPORATION, et al.,      :     Case No. 05-44481 (RDD)
                                 :
                                 :     (Jointly Administered)
            Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' SUPPLEMENTAL REPLY TO JAMES PENNEY'S RESPONSE TO DEBTORS'
TWENTY-THIRD OMNIBUS OBJECTION REGARDING CLAIM NO. 11395

("SUPPLEMENTAL REPLY TO THE RESPONSE OF JAMES PENNEY")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit the Debtors' Supplemental Reply To James Penney's Response To Debtors' Twenty-Third Omnibus Objection Regarding Claim No. 11395, and respectfully represent as follows:

<u>Preliminary Statement</u>

1.    On July 26, 2006, James Penney, an hourly Delphi employee and a member of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers - Communications Workers of America (the "IUE-CWA"), filed proof of claim no. 11395 (the "Proof of Claim") asserting an unsecured non-priority claim in the amount of $115,276.00 against Delphi.  In the Proof of Claim, Mr. Penney asserts that he is entitled to participate in and receive benefits under an attrition plan entered into between Delphi and his local union, the IUE-CWA, Local 755, in 2003 (the "2003 Attrition Plan").  Mr. Penney continues to assert this Proof of Claim even though, on August 7, 2006, he elected to receive benefits under a special hourly attrition plan entered into between the Debtors and the IUE-CWA on June 16, 2006 (the "2006 SAP") and by doing so waived any and all claims arising under the 2003 Attrition Plan.  The 2006 SAP, which was authorized pursuant to the Order Under 11 U.S.C. § 363(b) and Fed.R.Bankr.P. 6004 Approving (I) Supplement to UAW Special Attrition Program, and (II) IUE-CWA Special Attrition Program (Docket No. 4461) entered by this Court on July 7, 2006, provides for incentivized and early retirements along with buyouts for eligible employees.  A copy of the collectively bargained 2006 SAP is attached hereto as <u>Exhibit 1</u>.  The amount set forth in the Proof of Claim is based on what Mr. Penney states is the difference

between the value of the benefits that Mr. Penney asserts he would have received under the 2003

Attrition Plan and the benefits that he asserts he will receive under the 2006 SAP.

2.      Mr. Penney's assertion that he is entitled to benefits under the 2003

Attrition Plan is without merit not only because he elected to receive benefits under the 2006

SAP, but also because, in choosing the early retirement option under the 2006 SAP, Mr. Penney

executed two forms, "Form A - Special Attrition Program IUE-CWA-Delphi Plants" (the "Form

A") and "Form B - Special Attrition Program Conditions Of Participation Release Form" (the

"Form B"), acknowledging his acceptance of the terms of his retirement and releasing Delphi,

General Motors Corporation ("GM"), and the IUE-CWA from all other claims relating to his

employment.  Mr. Penney executed each of Form A and Form B on August 7, 2006, when he

elected early retirement effective January 1, 2007.  On Form A, a copy of which is attached

hereto as Exhibit 2, Mr. Penney elected to transition to GM for the purposes of retirement and

executed a release of postretirement health care and life insurance.  Additionally, on Form B, a

copy of which is attached hereto as Exhibit 3, Mr. Penney acknowledged that he voluntarily

elected to receive certain benefits pursuant to the 2006 SAP and executed a broad release of all

claims including without limitation a breach of employment contracts, either express or implied.

3.      On November 19, 2007, the Debtors filed the Debtors' Twenty-Third

Omnibus Objection Pursuant To 11 U.S.C. Section 502(b) And Fed. R. Bankr. P. 3007 To (A)

Duplicate Claim, (B) Certain Equity Claims, (C) Insufficiently Documented Claim, (D) Certain

Claims Not Reflected On Debtors' Books And Records, And (E) Certain Claims Subject To

Modification, Modified Claims Asserting Reclamation, Claim Subject To Modification That Is

Subject To Prior Order, And Modified Claim Asserting Reclamation That Is Subject To Prior

Order (Docket No. 10982) (the "Twenty-Third Omnibus Claims Objection").  In the Twenty-

3

Third Omnibus Claims Objection, the Debtors objected to, and sought an order disallowing and expunging, inter alia, the Proof of Claim. (Docket No. 10982, ¶ 30, Ex. B-1).

4.      On December 5, 2007, Mr. Penney filed his Response To Twenty-Third Omnibus Objection Regarding Claim No. 11395 (Docket No. 11476) (the "Response"). In the Response, Mr. Penney disagrees with the Twenty-Third Omnibus Claims Objection to disallow the Proof of Claim. Mr. Penney asserts that of the five categories of losses asserted in the Proof of Claim, including (i) lost retirement incentive, (ii) reduced retirement, (iii) lost income, (iv) lost stock value, and (v) lost guarantee. Mr. Penney does not submit further documentation to the Response, but reattaches his proof of claim, including its supporting documentation.

5.      On March 21, 2008, the Debtors filed a Notice Of Sufficiency Hearing With Respect To Debtors' Objection To Proof Of Claim No. 11395 (Docket No. 13192) in which the Debtors provided notice that the Twenty-Third Omnibus Claims Objection with respect to the Proof of Claim will be heard at a sufficiency hearing on April 18, 2008.

6.      The Debtors respectfully submit that the Proof of Claim fails to state a claim against the Debtors under rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). First, Mr. Penney has not proved any facts to support a right to payment by the Debtors. Second, Mr. Penney voluntarily agreed to accept the benefits associated with the 2006 SAP, Delphi has provided those benefits, and Mr. Penney's signed releases extinguish his right to any further benefits pursuant to any other attrition programs. Accordingly, the Twenty-Third Omnibus Claims Objection should be sustained with respect to the Proof of Claim and the Proof of Claim should be disallowed and expunged in its entirety.

Argument

A.  Mr. Penney Has Not Met His Burden Of Proof To Establish A Claim Against The Debtors

7.      The burden of proof to establish a claim against the Debtors rests on Mr. Penney and, if the Proof of Claim does not include sufficient factual support, such Proof of Claim is not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f) . In re WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only a claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d 167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C. May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524, 527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its claim to have claim make prima facie case).

8.      For purposes of sufficiency, this Court determined that the standard of whether the claimant has met its initial burden of proof to establish a claim should be similar to the standard employed by courts in deciding a motion to dismiss under Bankruptcy Rules 7012 and 9014.  Pursuant to that standard, a motion to dismiss should be granted "if it plainly appears that the nonmovant 'can prove no set of facts in support of his claim which would entitle him to relief.'" In re Lopes, 339 B.R. 82, 86 (Bankr. S.D.N.Y. 2006) (quoting Conley v. Gibson, 355

U.S. 41, 45-46 (1957)).  Essentially, the claimant must provide facts that sufficiently support a

legal liability against the Debtors.

9.       This Court further established that the sufficiency hearing standard is

consistent with Bankruptcy Rule 3001(f), which states that "a proof of claim executed and filed

in accordance with these Rules shall constitute prima facie evidence of the validity and amount

of the claim."  Fed. R. Bankr. P. 3001(f) (emphasis added).  Likewise, Bankruptcy Rule 3001(a)

requires that "the proof of claim must be consistent with the official form" and Bankruptcy Rule

3001(c) requires "evidence of a writing if the claim is based on a writing."  Fed. R. Bankr. P.

3001(a), (c).

10.      In this case, Mr. Penney has not proved, and cannot prove, any set of facts

that support a right to payment from the Debtors for the difference between the value of the

benefits he purports he would have received under the 2003 Attrition Plan and the benefits he is

eligible for under the 2006 SAP.  Mr. Penney has not met his burden of proof and cannot provide

facts or law supporting his claim.  Further, neither the Proof of Claim nor the Response assert

any other valid basis upon which Mr. Penney could base his claim.   Accordingly, the Twenty-

Third Omnibus Claims Objection should be sustained as to the Proof of Claim; and the Proof of

Claim should be disallowed and expunged in its entirety.

B.  Delphi Fulfilled All Of Its Contractual Obligations Under The 2006 SAP And Is Not
    Liable To Mr. Penney[1]

11.      Delphi has fully performed all of its duties and obligations due Mr.

Penney under the 2006 SAP, a fact that Mr. Penney does not even dispute.  Instead, Mr. Penney

---

[1]    The Debtors' submission of this Supplemental Reply To The Response Of James Penney is without prejudice to
the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement,
reduction, or reclassification of the Proof of Claim.

seeks additional benefits he is not entitled to receive.  Full performance of a duty under a

contract discharges that duty.  <u>See</u> Restatement (Second) of Contracts § 235(1) (1981).

According to the comments from the Restatement (Second) of Contracts, "a duty is discharged

when it is fully performed."  Restatement (Second) of Contracts § 235 cmt. a (1981); <u>see also</u>

<u>Rory v. Continental Insurance Company</u>, 703 N.W. 2d 23, 30 (Mich. 2005) ("A fundamental

tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and

must be <u>enforced as written</u>.")

        12.     Moreover, Mr. Penney executed a broad and unambiguous release of any

claims against Delphi.  Under Michigan law, which governs the terms of the release executed by

Mr. Penney, a release of liability is valid if it is fairly and knowingly made.  <u>Xu v. Gay</u>, 257

Mich. App. 263 (Mich. Ct. App. 2003).  If the text of the release is clear, then the parties'

intentions must be ascertained from the plain, ordinary meaning of the language of the release.

<u>Id.</u>  The fact that the parties may dispute the meaning of the release does not alone evidence an

ambiguity; a contract is ambiguous only if its language is reasonably susceptible to more than

one interpretation.  <u>Id.</u>  If the terms of the release are clear, the effect of the language is a

question of law to be resolved summarily.  <u>Id.</u>; <u>see also</u> <u>Gortney v. Norfolk & W. Ry. Co.</u>, 216

Mich. App. 535 (Mich. Ct. App. 1996) (holding that the language of the release evidenced a

clear, unambiguous intent to settle and because the release was capable of but one reasonable

interpretation, namely that all claims were released, in exchange for a substantial monetary

consideration, the trial court correctly granted summary disposition); <u>Cole v. Ladbroke Racing</u>

<u>Mich., Inc.</u>, 241 Mich. App. 1 (Mich. Ct. App. 2000) (holding that "[t]he scope of a release is

governed by the intent of the parties as it is expressed in the release").  Mr. Penney argues that

even in light of Delphi's full performance of the 2006 SAP and his own fully executed releases,

the terms of the 2003 Attrition Plan should control.  Yet by continuing to prosecute the Proof of

Claim, Mr. Penney directly breached such releases.  For example, by executing Form B, Mr.

Penney acknowledged:

> In consideration for participation in the Special Attrition Program,
> I hereby release and forever discharge Delphi, GM, and the IUE-
> CWA and their respective officers, directors, agents, employees,
> stockholders and employee benefit plans from all existing claims,
> demands and causes of action (claims) known or unknown which I
> may have related to my employment or the cessation of my
> employment or denial of any employee benefit.  This release
> specifically includes, without limitation, a release of any claims I
> may now have under The Employee Retirement Income Security
> Act of 1974, as amended (ERISA); the Age Discrimination in
> Employment Act, which prohibits discrimination in employment
> based on age; Title VII of the Civil Rights Act of 1964 as
> amended, which prohibits discrimination in employment based on
> race, color, national origin, religion or sex; The Americans with
> Disabilities Act, which prohibits discrimination in employment
> based on disability; the Equal Pay Act; state fair employment
> practices or civil rights laws; and any other federal state or local
> laws or regulations, or any common law actions relating to
> employment discrimination.  This includes without limitation any
> claims for breach of employment contract, either express or
> implied, and wrongful discharge.  The release does not waive any
> claims that arise after the date I separate from Delphi under this
> Agreement.  The release does not waive any claims that arise after
> the date I separate from Delphi under this Agreement.  The release
> does not include workers' compensation claims.  I further agree not
> to institute any proceedings against Delphi, GM, the IUE-CWA, or
> its officers, directors, agents, employees, stockholders or employee
> benefit plans related to my employment, cessation of my
> employment, or the denial of any employee benefit.

Form B, at 2 (emphasis added).

13.    Furthermore, Mr. Penney asserts in the Proof of Claim and the Response

that he is entitled to several additional retirement benefits, including a lump sum payment

pursuant to the terms of the 2003 Attrition Plan.   These assertions by Mr. Penney are not

consistent with the 2006 SAP under which he voluntarily retired.  By asserting his claim, Mr.

Penney ignores the acknowledgements and releases that he agreed to by executing Form A,

specifically that:

> I acknowledge no prior representations, promises, or agreements
> relating to my employment, redeployment, separation from service,
> or retirement have been made by Delphi, GM or the IUE-CWA
> which are contrary to this document and the Special Attrition
> Program.    I further acknowledged that my selections are
> voluntarily made and irrevocable.

> ….(ii) in exchange for eligibility to receive post-retirement health
> care and life insurance benefits from GM waive any and all rights I
> might otherwise have to post-retirement health care and life
> insurance benefits from Delphi, including but not limited to any
> and all rights to COBRA continuation through Delphi.

Form A, at 2.

14.    The Debtors have satisfied all their obligations under the 2006 SAP and

are not liable to Mr. Penney for the difference between the 2006 SAP and the 2003 Attrition

Plan.   Therefore, the Twenty-Third Omnibus Claims Objection should be sustained as to the

Proof of Claim and the Proof of Claim should be disallowed and expunged in its entirety.

Memorandum of Law

15.    Because the legal points and authorities upon which this Reply relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request this Court enter an order (i) sustaining the Twenty-Third Omnibus Claims Objection with respect to the Proof of Claim, (ii) disallowing and expunging the Proof of Claim in its entirety, and (iii) granting such further and other relief this Court deems just and proper.

Dated:    New York, New York
          April 8, 2008

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By:   /s/ John Wm. Butler, Jr.
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 9331)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606

                                  - and -

                              By:   /s/ Kayalyn A. Marafioti
                                  Kayalyn A. Marafioti (KM 9632)
                                  Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036

                              Attorneys for Delphi Corporation, et al.,
                                Debtors and Debtors-in-Possession

10

Exhibit 1

# IUE-CWA-GM-DELPHI
## SPECIAL ATTRITION PROGRAM

Due to the extraordinary circumstances in the domestic auto industry and the Delphi bankruptcy, the parties agree to the following special one-time program ("The Program"):

1) Delphi and the IUE-CWA agree on the following Special Attrition Program for Delphi employees who are participants in the Delphi Hourly-Rate Employees Pension Plan ("Delphi HRP"):

   a) An attrition program will be run for Delphi employees as follows:
      i) $35,000 for normal or early voluntary retirement retroactive to October 1, 2005.
      ii) 50 & 10 Mutually Satisfactory Retirement (MSR).
      Provisions 1.ai and 1.aii will apply to employees who are eligible to retire by or on January 1, 2007. Employees will be allowed to retire when their services are no longer required but in any event no later than January 1, 2007.

   b) Any employee with at least 26 and less than 30 years of credited service regardless of age will be eligible for special voluntary placement in a pre-retirement program under the following terms:
      i) Employees electing this pre-retirement program must be eligible no later than July 1, 2006.
      ii) Employees will retire without additional incentives when they first accrue 30 years of credited service under the provisions of the Delphi HRP.
      iii) The gross monthly wages while in the program will be:
         (1) 29 years credited service   $2,900
         (2) 28 years credited service   $2,850
         (3) 27 years credited service   $2,800
         (4) 26 years credited service   $2,750
      Wages will be paid weekly on an hourly basis (2,080 hours per year) and will remain at that rate until 30 years of credited service is accrued. Employees electing this program will be treated the same as protected status employees with the following exceptions: (1) not eligible for Cost of Living Allowance (COLA); and (2) not eligible for vacation pay except as was earned and unpaid prior to the commencement of this Pre-Retirement Program. For purposes of pension benefits, the Benefit Class Code will be determined using the twenty-four month look back period as specified in Appendix A of the Delphi HRP, with said period starting from the last day worked prior to the commencement of the pre-retirement program. For purposes of life insurance, the amount of life insurance will be based on the base rate as of the last day worked prior to the commencement of the pre-retirement program.
      iv) Within ten (10) business days after the first date on which any employees are eligible to receive wage payments in accordance with Paragraph 1.b.iii above, Delphi will establish a segregated payment account (the "Account") in the amount of $12 million (the "Ceiling Amount"). The funds in the Account will be available to reimburse Delphi for the payment of weekly wage payments (which will be paid through Delphi's normal payroll process) under Paragraph 1.b.iii. above or for direct wage payments to employees entitled to receive such payments, as described in this Paragraph.
         1. Delphi shall not draw funds from the Account for purposes of this Paragraph until a date (the "Permitted Draw Down Date"), which shall be the later of the Final Election Date or the Adequate Funding Date

(see definitions below). Prior to the Permitted Draw Down Date, payments to satisfy the obligations to employee participants pursuant to this Paragraph will be drawn from Delphi's available cash.

2. If, on the Permitted Draw Down Date, the Anticipated Liability is less than the Ceiling Amount, Delphi shall be permitted to draw such funds out of the Account so that the balance remaining in the Account is equal to the Anticipated Liability.

The Final Election Date shall be the first of the month following the last day on which employees at any IUE-CWA-Delphi facility can make an election to participate in the pre-retirement program described in Paragraph 1.b., or sooner if determined by the IUE-CWA-Delphi National Parties.

The Adequate Funding Date shall be the date on which the Ceiling Amount is greater than or equal to the Anticipated Liability.

The Anticipated Liability shall be an amount, calculated after the Final Election Date, sufficient to pay all of the remaining liabilities under Paragraph 1.b.iii. for all employees who have elected to participate in such program for the full remaining duration of such program. The Anticipated Liability shall be calculated based on the number of eligible employees, the remaining duration of the wage payments, and the applicable pay rates.

3. The funds in the Account shall be available to satisfy the obligations of this Paragraph and for no other purpose. The Bankruptcy Court order approving the Program shall specifically provide that under no circumstances (including but not limited to conversion of Delphi's Chapter 11 cases to Chapter 7 proceedings) shall the assets in the Account be available to satisfy the claims of any party other than the employees. This Program is, in its entirety, contingent on entry of an order which, to the satisfaction of the IUE-CWA and Delphi National Parties provides the protections described in this Paragraph.

c) Delphi employees who are active or on leave status will be offered lump sum buyouts to sever all ties with Delphi and GM except vested pension benefits (exclusive of supplements) on a date no later than January 1, 2007. Employees (except employees at the Gadsden, Alabama operations) with 10 or more years of seniority or credited service, whichever is greater, are eligible for $140,000; employees with three (3) but less than 10 years seniority or credited service, whichever is greater, are eligible for $70,000; and employees with one (1) but less than three (3) years of seniority or credited service, whichever is greater, are eligible for $40,000 (the "Buyout Payments"), paid in lump sum, less withholdings. Delphi and GM will each pay one-half of the Buyout Payments due under this paragraph 1.c. Notwithstanding paragraph 3 below, GM will receive an allowed prepetition general unsecured claim in the aggregate amount of all Buyout Payments actually paid by GM pursuant to the Program.

d) The application period, timing of retirements and buyouts, release dates, and number of sign-up dates will be determined by Delphi based upon staffing considerations. These dates may vary by location. In no event will the application period extend beyond 45 days from the agreed upon roll-out date for the Program unless mutually agreed by the Delphi-IUE-CWA National Parties.

e) All participants will be required to sign a release of all claims against Delphi and GM, except workers' compensation claims.

f) An employee may only select one of the options described in subparagraphs 1.a.i, 1.a.ii., 1.b and 1.c hereof.

2) GM, the IUE-CWA and Delphi agree that any employee electing to retire under option 1.a.i , 1.a.ii., or 1.b. above or under the New Brunswick Special Attrition Program dated May 25, 2006 (the "New Brunswick SAP") will be permitted to either retire from Delphi or, provided they "check the box", transition to GM for purposes of retirement and receive other post-retirement benefits (i.e., health care coverage and life insurance benefits) from GM as any other GM IUE-CWA retiree; provided, however that any health care coverage from GM will be as amended pursuant to the Health Care Discussions Agreement dated April 10, 2006 between GM and the IUE-CWA (the "Health Care Discussions Agreement"); provided further that employees who retire under option 1.a.i prior to entry of the order described in subparagraphs 1.b.iv.3 and 3.a hereof will not be permitted to "check the box." Any employee choosing option 1.b. above will be considered a Delphi employee until they retire. Employees checking the box who have 100% of his/her credited service in the Delphi HRP will receive 100% of their pension benefit from the Delphi HRP. Notwithstanding paragraph 3 below, any obligations assumed by GM under the "check the box" provisions of this paragraph shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation under Delphi's general indemnity of GM under the Master Separation Agreement. Neither Delphi Corporation nor any of its debtor affiliates may object on any grounds to the allowance of such claim; provided, however, that Delphi Corporation and any of its debtor affiliates reserve the right to object to the economic value of such claim (in the nature of assumptions such as discount rate, health care trend rates, mortality, other withdrawal rates and current and future expected benefit plan design changes). This limited objection waiver applies to Delphi, only, and not for other parties in interest, for which all rights are expressly reserved to object to the allowance of such claim under any grounds other than it was not assertable under the Master Separation Agreement.

3) The parties acknowledge the following matters regarding the Special Attrition Program:

a) Delphi's participation in this Program is subject to the approval of the U.S. Bankruptcy Court; which approval Delphi will seek promptly at the June 29, 2006 omnibus hearing should this Program be finalized in time for Delphi to file a motion on ten days notice without objection from the Creditors Committee or as otherwise permitted by the Case Management Order in Delphi's Chapter 11 cases. In the event such participation is not allowed by the Bankruptcy Court, no party will have any obligations under this Program. GM's obligations in respect of the Program are subject to approval of the Program by the U.S. Bankruptcy Court pursuant to entry of an order that provides for the allowance and/or treatment of GM's claims as described in this Program and is otherwise reasonably satisfactory to GM, Delphi and the IUE-CWA based on the prior special attrition program order approved in Delphi's chapter 11 cases.

b) For the avoidance of doubt, any obligations assumed by GM under this Program with respect to OPEB under Paragraph 2 above or active health care and life insurance under 3.d below shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation under Delphi's general indemnity of GM under the Master Separation Agreement.  GM agrees to pay the amounts due under Paragraph 1.a.i above and to pay 50% of the aggregate amounts due under Paragraph 1.c above (except for any payments made to participants who are employed at or retired from Delphi New Brunswick Operations), as well as to assume and pay OPEB payments to Delphi employees who "check the box" for purposes of retirement.

c) This Program shall not be subject to abrogation, modification or rejection without the mutual consent of the IUE-CWA, GM and Delphi and the order obtained in the Bankruptcy Court by Delphi approving this Program shall so provide.  The parties further agree (and the Bankruptcy Court order shall also provide) that this Program is without prejudice to any party-in-interest (including the parties to this Program and the official statutory committees appointed Delphi's chapter 11 cases) in all other aspects of Delphi's Chapter 11 cases, including by illustration, Delphi's and GM's respective positions in all commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any proceedings under Sections 1113 and/or 1114 of the Bankruptcy Code with respect to the IUE-CWA and under Section 365 of the Bankruptcy Code with respect to GM's contracts with Delphi, in any pension termination proceeding under ERISA and/or the Bankruptcy Code, and all claims administration and allowance matters.

d) Nothing in this Program, the Bankruptcy Court's approval of such Program, or the performance of any obligation hereunder, shall limit or otherwise modify (a) Delphi's rights under Section 4041 of ERISA, or (b) Delphi's rights under Section 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed this Program (including pre-existing obligations referenced within this agreement), such as (by way of illustration only) the obligation to maintain the hourly pension plan or provide retirees or active employees (including employees/retirees participating in the attrition programs contained in this Program) with levels of healthcare or other benefits as specified in pre-existing labor agreements.  Under no circumstances shall Delphi freeze its pension plan covering IUE-CWA represented employees in a manner that prevents employees in the pre-retirement program described in paragraph 1.b. above or in the New Brunswick SAP from receiving on-going credited service sufficient to reach 30 years of credited service.  Delphi shall provide the same healthcare and life insurance coverage to employees participating in paragraph 1.b. or in the New Brunswick SAP that it provides to its other active IUE-CWA employees; provided, however, that if Delphi reduces or eliminates such coverage provided to its active IUE-CWA employees, GM shall subsidize such coverage provided to employees participating in paragraph 1.b. above or in the New Brunswick SAP up to the level provided to GM-IUE-CWA active employees as provided in the GM-IUE-CWA Health Care Discussions Agreement.  Except as otherwise expressly provided herein, nothing in this Program shall limit, expand or otherwise modify the rights or obligations of any party under the Benefit Guarantee between GM and the IUE-CWA.

e) Nothing contained herein, in the Bankruptcy Court's approval of this Program, or the performance of any obligation hereunder, shall constitute an assumption of any agreement described herein, including, without limitation (a) any collective bargaining agreement between the IUE-CWA and Delphi or (b) any agreement between GM and Delphi, nor shall anything herein, in the Bankruptcy Court's approval of this Program, or the performance of any obligation hereunder, be deemed to create or give rise to an

administrative or priority claim with respect to, in favor of, or for the benefit of GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

_____          _____
Delphi Corporation               International Union, IUE-CWA

_____          _____
Delphi Corporation               .International Union, IUE-CWA

_____          _____
General Motors Corp.

_____          _____
General Motors Corp

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Date:  June 16, 2006

Exhibit 2

# FORM A

## SPECIAL ATTRITION PROGRAM
## IUE-CWA-DELPHI PLANTS

I have evaluated the selection of attrition options currently available under the Delphi-IUE-CWA National Agreement and the IUE-CWA-GM-Delphi Special Attrition Program dated June 16, 2006 ("Special Attrition Program") governing the attrition of employees from IUE-CWA-Delphi plants under this Program. I have marked the option of my preference and understand that I must meet all eligibility conditions of the option in order to receive it. I understand that I may elect only one of the following options, and, unless I am selecting the buyout, I may also "check the box" to transition to GM for the purpose of retirement as described below:

☐ Retire effective the first of the month following the month my services are no longer required but no later than January 1, 2007 under the normal or early voluntary provisions of The Delphi Hourly-Rate Employee Pension Plan [Article II, Section 1 and Article II, Section 2(a)(1), 2(a)(2) and 2(a)(3)]. I understand that under this option I will also receive thirty-five thousand ($35,000) cash, less applicable withholdings. I understand that I must meet all necessary requirements, execute all applicable forms, and my eligibility to retire is subject to approval.

☒ Retire effective the first of the month following the month my services are no longer required but no later than January 1, 2007 under the mutually satisfactory retirement provisions of The Delphi Hourly-Rate Employee Pension Plan [Article II, Section 2 (b)] at the age of 50 but less than age 65 with 10 or more years of credited service. I understand that I must meet all necessary requirements, execute all applicable forms, and my eligibility to retire is subject to approval.

☐ Enter into a pre-retirement program under which I will remain on protected status, accumulate credited service and then retire the first of the month following the month that I attain thirty (30) years of credited service under the early voluntary provisions of The Delphi Hourly-Rate Employee Pension Plan [Article II, Section 2 (a)(3)] without any additional incentives. I understand that wages will be paid weekly on an hourly basis (2,080 hours per year) and will remain at that rate until thirty (30) years of credited service is accrued. I also understand that no additional vacation time will accrue and I will not be eligible for COLA. I further understand that I must be eligible no later than July 1, 2006. For purposes of pensions benefits, I understand that my Benefit Class Code will be determined using the twenty-four month look back period as specified in Appendix A of The Delphi Hourly-Rate Employees Pension Plan with said period starting from the last day worked prior to the commencement of the pre-retirement program. For purposes of life insurance, the amount of life insurance

IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM IS

FORM A

will be based on my base rate as of the last day worked prior to commencement of the pre-retirement program.

I understand that I must meet all necessary requirements, execute all applicable forms, and my eligibility to retire is subject to approval. While on the pre-retirement program I will receive gross monthly pay as follows:

| | Years of Credited Service | Monthly Gross Pay |
|---|---|---|
| ☐ | 29 | $2900 |
| ☒ | 28 | $2850 |
| ☐ | 27 | $2800 |
| ☐ | 26 | $2750 |

*Mutual*

In addition to the above:

☒ I elect to transition to GM for the purposes of retirement. In so choosing, I (i) understand that all of my pension benefit will be payable from The Delphi Hourly-Rate Employees Pension Plan and (ii) in exchange for eligibility to receive post-retirement health care and life insurance benefits from GM, waive any and all rights I might otherwise have to post-retirement health care and life insurance benefits from Delphi, including but not limited to any and all rights to COBRA continuation through Delphi.

☐ I am on active or leave of absence status from Delphi as of June 16, 2006 (except employees from Gadsden, Alabama operations) and choose to buyout my seniority to sever all ties with GM and Delphi except vested pension benefits (exclusive of supplements) under the following program:

☐ I have 10 or more years seniority or credited service whichever is greater - $140,000

☐ I have 3 years seniority but less than 10 years of seniority - $70,000

☐ I have 1 year of seniority but less than 3 years of seniority - $40,000

I acknowledge the options available to me are determined solely by the written provisions of the IUE-CWA-GM-Delphi Special Attrition Program, The Delphi Hourly-Rate Employees Pension Plan, and other applicable benefit plans and programs. I acknowledge no prior representations, promises, or agreements relating to my employment, redeployment, separation from service, or retirement have been made by Delphi, GM, or the IUE-CWA which are contrary to this document and the Special

IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM IS

# FORM A

Attrition Program.  I further acknowledge that my selections are voluntarily made and irrevocable.

I understand that Delphi and the IUE-CWA may be considering and in the future may agree to amend the Special Attrition Program, the 2003 Delphi-IUE-CWA National Agreement, and Delphi's benefit plans and programs and make available different redeployment, job security, retirement benefits or separation benefits or payments for which I will not be eligible.

It is understood that those employees who have elected to: (i) retire under the normal or early voluntary provisions; (ii) retire as a Mutually Satisfactory Retirement; (iii) participate in the pre-retirement program; (iv) elect a buyout payment; or (v) not respond or fail to timely respond will not be eligible to exercise any other rights under this Program.

Nothing in this agreement is intended to modify the Special Attrition Program or waive Delphi's right to amend, modify, suspend or terminate its pension or benefit plans or programs as otherwise provided in the Supplemental Agreements covering Delphi's hourly employee pension or benefit plans and programs.

I have carefully read this Agreement and understand it.

Name: _JAMES R. PENNEY_
    (Please Print)

Signed: _____

SS. No: _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_

Dated: _8/7/06_

Witness: _____

IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM IS

Exhibit 3

# FORM B

### SPECIAL ATTRITION PROGRAM
### CONDITIONS OF PARTICIPATION RELEASE FORM

Delphi has discussed with me the option of separating from my employment with Delphi under the terms of the IUE-CWA-GM-Delphi Special Attrition Program dated June 16, 2006 ("Special Attrition Program") as negotiated by Delphi, GM, and the IUE-CWA. I have evaluated the benefits and options made available to me and have decided to separate from employment under the option I have checked on the Special Attrition Program form. My separation will be effective at the time called for in the option I have selected.

I acknowledge that the benefits provided to me under the option of the Special Attrition Program which I have selected are greater than the benefits to which I would otherwise be entitled and that such benefit package is available only under the terms of the Special Attrition Program to those employees who meet all eligibility criteria for the option I have selected and who agree to separate on the applicable date.

Further, I acknowledge that the benefits to which I am entitled are determined solely by the written provisions of the Special Attrition Program and the written provisions of the applicable Delphi employee benefit plans and programs.

I understand that any payments or benefits provided under the Special Attrition Program will be subject to all applicable taxes.

I am satisfied with the terms of the Special Attrition Program. I acknowledge that I am voluntarily accepting it. This acceptance is not under duress and I am able to work and suffer from no disability that would preclude me from doing my regularly assigned job. As such, I acknowledge that I am not entitled to disability pay or benefits. I acknowledge no prior representations, promises or agreements relating to my employment and separation have been made by Delphi, GM, or the IUE-CWA which are contrary to this agreement and the provisions of the Special Attrition Program and my acceptance constitutes the entire and only agreement between me and Delphi. I understand that I shall not be eligible for recall to work or reemployment by Delphi, any of its subsidiaries or any other entity in which the Corporation has an ownership interest.

I understand that Delphi and the IUE-CWA may be considering and in the future may agree to amend Delphi's benefit plans and make available different retirement, placement, or separation benefits for which I may not be eligible. Neither this agreement nor the provisions of the Special Attrition Program limit or in any way modify the provisions of any benefit plan.

## IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM IS

In consideration for participation in the Special Attrition Program, I hereby release and forever discharge Delphi, GM, and the IUE-CWA and their respective officers, directors, agents, employees, stockholders and employee benefit plans from all existing claims, demands and causes of action (claims) known or unknown which I may have related to my employment or the cessation of my employment or denial of any employee benefit. This release specifically includes, without limitation, a release of any claims I may now have under The Employee Retirement Income Security Act of 1974, as amended (ERISA); the Age Discrimination in Employment Act, which prohibits discrimination in employment based on age; Title VII of the Civil Rights Act of 1964 as amended, which prohibits discrimination in employment based on race, color, national origin, religion or sex; The Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Equal Pay Act; state fair employment practices or civil rights laws; and any other federal state or local laws or regulations, or any common law actions relating to employment discrimination. This includes without limitation any claims for breach of employment contract, either express or implied, and wrongful discharge. The release does not waive any claims that arise after the date I separate from Delphi under this Agreement. The release does not include workers' compensation claims. I further agree not to institute any proceedings against Delphi, GM, the IUE-CWA, or its officers, directors, agents, employees, stockholders or employee benefit plans related to my employment, cessation of my employment, or the denial of any employee benefit.

I understand that this Release Form does not authorize Delphi to exclude me from future increased pension or other benefits, if any, for which I may otherwise be eligible.

I acknowledge that I have been given a period of forty-five (45) days to review and consider this agreement before signing it. If I execute this agreement, I shall have a period of seven (7) days to revoke, in writing, my acceptance, and this agreement shall not be effective until expiration of this seven (7) day period. I have also been advised to consult with an attorney, but understand whether or not I do so is my own decision. I understand that once the seven (7) day revocation period expires, my acceptance is irrevocable.

I acknowledge that I have been informed in writing and in an understandable manner as to the class, or group of individuals covered by the Special Attrition Program, any eligibility factors and time limits applicable to the Special Attrition Program, the job titles and ages of all individuals eligible or selected for the Special Attrition Program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the Special Attrition Program.

02/07/08   THU 16:15   FAX 937 455 9509   DELPHI STERING DIV SERV DEP   011

If any provision or portion of this agreement is held unenforceable or invalid for any reason, all remaining provisions of this agreement shall remain in full force and effect. I have carefully read this agreement and understand it.

Name: _JAMES R. PENNEY_
(Please print)

Signed: _James R. Penney_

Social Security #: _287-50-8 356_

Dated: _8/7/06_

Witness: _____

Delphi Corporation: _____ 8/7/06

IUE-CWA – Delphi Jointly Approved Release
(Final June 2006)

Info pkg IUE-CWA-Delphi plants                                      June 21, 2006
IMPLEMENTATION OF THE SPECIAL ATTRITION PROGRAM IS