**Hearing Date and Time: April 18, 2008 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtor. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO CITY OF DAYTON'S (A) MOTION FOR
RECONSIDERATION OF EXPUNGEMENT OF THE CLAIMS OF THE CITY OF DAYTON
RELATED TO THE DEBTORS' THIRTEENTH OMNIBUS OBJECTIONS AND (B)
<u>MOTION REQUESTING AUTHORITY TO FILE A CLAIM AFTER THE BAR DATE</u>

1. Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby object (the "Objection"), pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), to the City Of Dayton's (1) Response To Debtors' Twenty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification And Modified Claim Asserting Reclamation, Or In The Alternative (2) Motion For Reconsideration Of Expungement Of The Claims Of The City Of Dayton Related To The Debtors' Thirteenth Omnibus Objections (Docket No. 13092) (the "Response and Motion for Reconsideration") and the City Of Dayton's Motion Requesting Authority To File A Claim After The Bar Date (Docket No. 13283) (the "Motion to File Late Claim," and together with the Response and Motion for Reconsideration, the "Dayton Pleadings") filed by the City of Dayton, Ohio ("Dayton").

2. In support of this Objection, the Debtors submit the Declaration Of Noticing Agent Regarding Service Of Thirteenth Omnibus Claims Objection On City Of Dayton, Ohio, executed and sworn to on April 15, 2008 by Evan Gershbein of Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent in these chapter 11 cases (the "Gershbein Declaration"), a copy of which is attached hereto as <u>Exhibit A</u>. In further support of this Objection, the Debtors respectfully represent as follows:

Preliminary Statement

3. Through the Dayton Pleadings, Dayton is trying to unilaterally reinstate a late claim that was properly expunged nine months ago when Dayton failed to file a response to the Debtor's objection to that claim. First, Dayton seeks to overturn the order of this Court

expunging proof of claim number 16404 (the "First Proof of Claim"), which Dayton had filed November 6, 2006, after the bar date for filing proofs of claim and without leave of this Court. The Debtors subsequently objected to the First Proof of Claim and, when Dayton failed to file a response, the First Proof of Claim was disallowed and expunged by an order of this Court, a copy of which was served on Dayton. More than two months after the expungement order was entered, on August 13, 2007, Dayton, again without leave from this Court, filed a second untimely claim, proof of claim number 16640 (the "Second Proof of Claim"), which was identical to the expunged First Proof of Claim. Now, sixteen months after Dayton filed the First Proof of Claim, nine months after this Court disallowed and expunged the First Proof of Claim, and over one month after the Court confirmed the Debtors' Plan of Reorganization, Dayton filed its motion seeking reconsideration of this Court's order with respect to the First Proof of Claim or, alternatively, recognition from this Court of the validity of the Second Proof of Claim.

        4.      In support of its request, Dayton questions whether it received notice of the Debtors' objection and asserts that its failure to respond to the objection was the result of excusable neglect. Neither contention has merit. The Debtors have submitted sworn testimony from KCC, that the personalized notices regarding the Debtors' objection to the First Proof of Claim, and subsequent order expunging the First Proof of Claim, were sent to the address provided in the First Proof of Claim, creating a "very strong" presumption that such notice of objection was delivered. In its Motion for Reconsideration, Dayton does not confirm or deny its receipt of the objection to the First Proof of Claim. Consequently, Dayton has not rebutted the presumption of delivery.

        5.      In the Motion to File Late Claim, Dayton relies again on excusable neglect in seeking to establish the validity of the Second Proof of Claim. In this instance, however, Dayton's reliance on excusable neglect is improper because any argument that this

Court should excuse Dayton's late filing of the Second Proof of Claim is barred by the doctrine of res judicata.  The propriety of Dayton's First Proof of Claim was already before this Court and was adjudicated by this Court's order disallowing and expunging the First Proof of Claim.  Dayton, therefore, cannot avoid the conclusive effect of the order expunging the First Proof of Claim simply by filing the Second Proof of Claim containing the same claim.

6.      For the reasons set forth herein, the Dayton Pleadings should be denied and the both the First and Second Proofs of Claim should be disallowed and expunged.

## Background

7.      It is uncontested that Dayton was served with the Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof, entered by this Court on April 12, 2006 (Docket No. 3206) setting a bar date of July 31, 2006 (the "Bar Date") for creditors to file proofs of claim in Delphi's chapter 11 cases and, in fact, did not file a timely proof of claim.   Over 16,000 proofs of claim were timely filed by the Bar Date.

8.      On November 6, 2006, three months after the Bar Date, Dayton filed the First Proof of Claim in the amount of $427,534.25 for the 2002 tax year assessed by Dayton.  On April 27, 2007, the Debtors objected to the First Proof of Claim pursuant to Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject To Modification, Tax Claims Subject to Modification, And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825) (the "Thirteenth Omnibus Claims Objection") on the

grounds that the First Proof of Claim was untimely.  Dayton did not file a response to the Thirteenth Omnibus Claims Objection, and, on June 6, 2007, the Court entered its Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject To Modification, Tax Claims Subject to Modification, And Claims Subject To Modification And Reclamation Agreement Identified In The Thirteenth Omnibus Claims Objection (Docket No. 8194) (the "Thirteenth Omnibus Order"), which disallowed and expunged the First Proof of Claim.  A copy of the Thirteenth Omnibus Order was served on Dayton on June 8, 2007, as evidenced by the Affidavit of Service of Evan Gershbein, which was filed on June 15, 2007 (Docket No. 8265).

9. On August 13, 2007, without leave of this Court and more than one year after the Bar Date, Dayton filed the Second Proof of Claim, asserting an unsecured priority claim for the same amount and for the same liability as in the First Proof of Claim – $427,534.25 for the 2002 tax year assessed by Dayton.  On February 15, 2008, the Debtors objected to the Second Proof of Claim pursuant to the Debtors' Twenty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification And Modified Claim Asserting Reclamation (Docket No. 12686) (the "Twenty-Sixth Omnibus Claims Objection").  On March 12, 2008, Dayton filed the Response and Motion for Reconsideration.

10. Pursuant to this Court's protocol for untimely proofs of claim filed in these cases without leave of this Court, on March 19, 2008, the Debtors filed the Notice Of

Deadline To File Motion For Leave To File Late Claim With Respect To Late Claim Filed By The City Of Dayton, Ohio (Proof Of Claim No. 16640) (Docket No. 13180). On March 31, 2008, Dayton filed the Motion to File Late Claim.

        11.    On January 25, 2008, this Court entered an order (Docket No. 12359) confirming the Debtors' plan of reorganization (the "Plan").

Argument

**I.    MOTION FOR RECONSIDERATION**

A.    Dayton Was Properly Served With And Is Presumed To Have Received Notice Of The Thirteenth Omnibus Claims Objection

        (i)    A Proper Mailing Constitutes Effective Service

        12.    On April 27, 2007, KCC served copies of the Thirteenth Omnibus Claims Objection (without exhibits)[1] and the personalized notice of the Thirteenth Omnibus Claims Objection. These documents were served by KCC on Dayton through the Tax Collections department by First Class mail at the address below, which is the address set forth on the First Proof of Claim. (Gershbein Declaration ¶4.)

    City of Dayton
    Attn: Tax Collections
    City of Dayton Finance Department
    101 West Third Street
    Dayton, OH 45402

On May 30, 2007, KCC filed with this Court an Affidavit of Service with respect to KCC's service of the Thirteenth Omnibus Claims Objection and the personalized notice (the "Affidavit") (Docket No. 7920). (Gershbein Declaration ¶5.)

---

[1]    The personalized notice provides, "If you wish to view the complete exhibits to the Thirteenth Omnibus Claims Objection, you can do so at www.delphidocket.com." (Personalized Notice at 3).

13. Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail. See e.g., Hagner v. United States, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); Leon v. Murphy, 988 F.2d 303, 309 (2d Cir.1993) (finding, under New York law, that when sender "presents proof of office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed," a presumption of receipt arises); In re R.H. Macy Co., Inc., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) ("Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed.").

14. The Debtors provided timely, proper, and sufficient notice of the Thirteenth Omnibus Claims Objection by mailing the Thirteenth Omnibus Claims Objection and a personalized notice 30 days prior to the hearing on the objection at the address provided on the First Proof of Claim.

      (ii) Dayton Has Failed To Rebut The Presumption That Service Was Proper

15. In each of the Dayton Pleadings, Dayton contends that it is unclear whether Dayton was served with notice of the Thirteenth Omnibus Claims Objection, stating the Affidavit fails to expressly indicate that Dayton was served with such notice. Dayton bases this contention on its reading of the Affidavit. First, Dayton states that "the Affidavit provides that the parties listed on Exhibits A, B, C, E, G, I, K, and M received service of the [Thirteenth Omnibus Claims Objection]" but that "Dayton's name and address are not listed on Exhibits A, B, C, E, G, I, K, and M." Then, Dayton notes that it is listed on page 283 of the Affidavit, "which is

labeled as Exhibit D-2 of the [Thirteenth Omnibus Claims Objection]" and that the Affidavit never provides that the parties listed on Exhibit D-2 were served with notice of the objection.

16.  Dayton's reading of the Affidavit is in error.  The Affidavit states that "On April 27, 2007, I [Evan Gershbein] caused to be served the documents listed below on the parties listed on Exhibit E hereto via postage pre-paid U.S. mail."  Exhibit E consists of pages 240 – 284 of the Affidavit.  Dayton's name and address is on page 283 of the Affidavit, thus evidencing that Dayton was indeed served by KCC with a personalized notice of the Thirteenth Omnibus Claims Objection informing Dayton of the proposed expungement of the First Proof of Claim and a copy of that objection, without exhibits.  The reference to "Exhibit D-2" at the top of the page is simply the title of the exhibit to the Thirteen Omnibus Claims Objection on which the First Proof of Claim was listed.  (Gershbein Declaration ¶5.)  It does not denote a separate exhibit for purposes of the Affidavit.  See id.

17.  Notwithstanding the evidence of service in Affidavit, Dayton has failed to present any objective evidence to rebut the presumption that Dayton was properly served with the Thirteenth Omnibus Claims Objection.  "While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts and not by invoking another presumption and not by a mere affidavit to the contrary."  In re Dana Corp., No. 06-10354, 2007 WL 1577763, *3 (Bankr. S.D.N.Y. 2007) (emphasis added);  see also Hagner, 285 U.S. at 430 ("proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed"); In re Mid-Miami Diagnostics, L.L.P., 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996) ("A creditor's denial of receipt, standing alone, does not rebut the presumption that the mail was received, but merely creates a question of fact.").

18. "The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished." Moody v. Bucknum, 951 F.2d 204, 207 (9th Cir. 1991); In re Dana Corp., 2007 WL 1577763, at *3. Dayton bears the burden of rebutting the presumption of receipt of the personalized notice. In re Alexander's Inc., 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995). To rebut the presumption of proper service, the claimant must prove that the "regular office procedure was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable." Id. (citing Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985)). It is established in the Second Circuit that the "mere denial of receipt does not rebut the presumption that notice was properly addressed and mail is received." Capital Data Corp. v. Capital Nat'l Bank, 778 F. Supp. 669, 675-76 (S.D.N.Y. 1991); In re Alexander's, 176 B.R. at 721 ("It is black letter law that once an item is properly mailed, the law presumes that it is received by the addressee.").

19. Accordingly, Dayton is presumed to have received the Thirteenth Omnibus Claims Objection, and as such Dayton was obligated to file a response or risk having its claim disallowed and expunged. The Court should, therefore, deny Dayton's Motion For Reconsideration.

B.   Dayton Has Not Met Its Burden Of Proof For Establishing Excusable Neglect

20. Because notice of the Thirteenth Omnibus Claims Objection was proper, Dayton is forced to assert excusable neglect. As this Court has noted, there is some variation in the case law in the Second Circuit as to whether the proper standard for a motion to reconsider is (a) the three-factor analysis set forth in American Alliance Insurance Co., Ltd. v. Eagle Insurance Co. under Section 502(j) of the Bankruptcy Code and Bankruptcy Rule 3008 or (b) the four-factor analysis set forth in Pioneer Investment Services Co. vs. Brunswick Associates Limited Partnership under Bankruptcy Rule 9024, which incorporates rule 60(b) of the Federal Rules of

Civil Procedure for reconsideration of judgments. Regardless of which standard applies, Dayton has not established excusable neglect or an equitable basis for having the Thirteenth Omnibus Order reconsidered under either standard.

        (i) Dayton Is Not Eligible Under Rule 60(b) For Reconsideration Of The Order Disallowing And Expunging Its Claim

21. Dayton does not meet its burden for reconsideration under the three-factor test articulated in American Alliance Insurance Co., Ltd. v. Eagle Insurance Co., 92 F.3d 57, 59 (2d. Cir.1996). This test applies Bankruptcy Rule 9024, which incorporates Federal Rule 60(b), to determine the existence of excusable neglect. Under this test, the Second Circuit has outlined three factors: "(1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." American Alliance Insurance Co., 92 F.3d at 59. Willfulness does not require bad faith or wrongful conduct. Instead it may be sufficient that the movant knew that the action was pending and failed to respond. Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d. Cir. 1998). Conduct by the movant that is in bad faith falls under the willfulness standard and weighs heavily against the movant. In re Enron, Inc., 325 B.R. 114, 116 (Bankr. S.D.N.Y. 2005). In addition, gross negligence, while not determinative, can weigh against the party seeking relief. Id.

22. First, Dayton's conduct was willful because (a) it is presumed to have received personalized notice of the Thirteenth Omnibus Claims Objection and did nothing and (b) Dayton was aware that the First Proof of Claim was disallowed and expunged before filing the Second Proof of Claim, but elected not to file a motion for reconsideration until it responded to the Twenty-Sixth Omnibus Claims Objection. See Motion to File Late Claim ¶ 17. Second, Dayton has provided no evidence of extenuating circumstances that might rise to the level of

excusable neglect relating to its failure to file a timely response to the Thirteenth Omnibus Claims Objection. And third, as discussed more fully infra ¶25–26, prejudice to the Debtors will result if the Motion for Reconsideration is granted. Accordingly, Dayton is not eligible under Rule 60(b) for reconsideration of the Thirteenth Omnibus Order disallowing and expunging the First Proof of Claim.

> (ii) Dayton's Counsel Has Not Met Its Burden Of Proof For Establishing Excusable Neglect Under Bankruptcy Rule 3008

23.    Dayton seeks reconsideration of the Thirteenth Omnibus Order under Bankruptcy Rule 3008 and section 502(j) of the Bankruptcy Code, but again fails to demonstrate excusable neglect. The Supreme Court held that excusable neglect is the failure to comply with a filing deadline because of negligence. Pioneer Inv. Servs. Co. vs. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 394 (1993). In examining whether a creditor's failure to file a claim by the bar date constituted excusable neglect, the Supreme Court found that the factors include "(1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." Id. at 395. The Second Circuit has held the most important factor is the reason for the delay, including whether it was within the reasonable control of the movant. In re Enron Corp., 419 F.3d 115, 122-24 (2d Cir. 2005) The Second Circuit has taken a "hard line" when applying the Pioneer factors and has held that the equities will rarely favor a party who does not follow the clear dictates of a court rule or order. See Hearing Tr. 27, Feb. 14, 2007 (Docket No. 7446). Furthermore, "where the rule is entirely clear, the Second Circuit continues to expect that a party claiming excusable neglect will, in ordinary course, lose under the Pioneer test." Id.

24.     The most important factor, the reason for the delay, weighs heavily in favor of the Debtors.  Dayton's only explanation for not filing a response – the number of pages generally appearing in the Debtors' omnibus objections – is inapposite in light of service of the personalized notice, which clearly indicates both the proof of claim number and the nature of the Debtors' objection.  Moreover, Dayton's delay in responding to the Thirteenth Omnibus Claims Objection was entirely within Dayton's control.  Dayton has not provided any evidence that it was somehow prevented from filing a timely response to the Thirteenth Omnibus Claims Objection, nor has it given any reason for waiting nine months to file the Motion for Reconsideration.

25.     With respect to prejudice to the Debtors, Dayton dismisses any possibility of prejudice, asserting that the Debtors would suffer no harm because the Debtors are working to resolve other claims and have already scheduled an amount for Dayton.  See Response and Motion for Reconsideration ¶20.  This argument should be denied because it ignores, to the detriment of all creditors in these cases, the ramifications if this Court were to grant the same relief to every claimant that failed to timely respond to an omnibus claims objection.  The courts, on the other hand, have often recognized the danger of opening the floodgates to potential claimants.  See, e.g., In re Enron Corp., 419 F.3d at 132; In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain of such claims"); Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("'It can be presumed in a case of this size with tens of thousands of filed claims, there are other similarly-situated potential claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process.'" (citation omitted)); In re Dana Corp.  2007 WL 1577763, at *6 ("the floodgates argument is a viable one").

26. It is important to note that, because it asserts a priority tax claim, Dayton's claim does not impact the Debtors' compliance with the $1.45 billion target under the Equity Purchase and Commitment Agreement, the investment agreement between the Debtors and their plan investors. However, the Debtors relied in part upon the current state of claims register to calculate post-emergence liquidity needs to satisfy tax claims and otherwise formulate and prosecute a plan of reorganization. Allowing Dayton to prevail may inspire many other similarly situated potential claimants to file similar motions. Any potential claimant who, by its own error, failed to file a timely response may seek to follow Dayton's lead. Granting Dayton's Motion for Reconsideration in this instance may also call into question the Debtors' efforts to enforce response deadlines and orders with respect to the approximately 9,000 claims that have already been subject to orders on omnibus claims objections in these cases. Moreover, granting the relief requested by Dayton would excuse it from its obligation to timely respond to the Thirteenth Omnibus Claims Objection and would encourage other claimants to seek similar relief, undermining the integrity and finality of the entire claims administration process. Accordingly, establishing a precedent for reconsidering ordered claims without a compelling justification would greatly prejudice the Debtors, their estates, and their creditors and undermine the Debtors' restructuring efforts.

27. The length of the Dayton's delay in seeking reconsideration of this Court's Thirteenth Omnibus Order expunging the First Proof of Claim also favors the Debtors, as Dayton's nine-month delay was long enough to have a disparate impact on the bankruptcy proceedings. See In re Dana Corp., 2007 WL 1577763, at *5, citing In re Enron, 419 F.3d at 125 (delay of more than six months after bar date was "substantial").

28. Accordingly, Dayton has failed to provide any evidence of circumstances justifying the extraordinary relief it seeks under the "excusable neglect" standard and has not met

its burden for establishing excusable neglect. Dayton's Motion for Reconsideration should, therefore, be denied.

## II.     MOTION TO FILE LATE CLAIM

A.     Res Judicata Precludes Dayton From Filing The Second Proof of Claim

29.     The doctrine of res judicata also bars parties from pursuing claims where they were either parties to an action in which a court of competent jurisdiction has entered a final judgment and where the parties could have pursued their claims in the earlier proceeding. Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 206 (2d Cir. 2002); Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997). For purposes of res judicata, a bankruptcy court order disallowing and expunging a proof of claim is a final judgment. See Katchen v. Landy, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. More specifically, a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined, and if his claim is rejected, its validity may not be relitigated in another proceeding on the claim." (citations omitted)); cf. EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 325-27 (2d. Cir. 2007) (finding, in the context of an order allowing a claim that was not contested on the merits, that a bankruptcy court order was final for res judicata purposes even though other relief, such as reconsideration, may have been available).

30.     Accordingly, the Thirteenth Omnibus Order was a final judgment that disallowed and expunged the First Proof of Claim. Moreover, Dayton is presumed to have received notice of the Thirteenth Omnibus Claims Objection and, thus, had an opportunity to protect its interest in the First Proof of Claim by simply filing a response. The Thirteenth Omnibus Order is, therefore, subject to res judicata and precludes Dayton from pursuing the Second Proof of Claim, which asserts a claim that is identical to the First Proof of Claim.

B.      <u>Dayton Improperly Invokes Excusable Neglect Standard For The Second Proof of Claim</u>

31.      While the Debtors acknowledge that excusable neglect is generally the appropriate vessel for determining whether a claimant should be allowed to file a late claim, Dayton's application of the standard in the Motion to File Late Claim is in error. Dayton asserts that it had no occasion to file the Second Proof of Claim until it learned that the Court had disallowed and expunged its original claim. This explanation, however, is improper because the issue of whether Dayton was entitled to file a late claim was the precise issue raised by the Thirteenth Omnibus Claims Objection, and any argument that this Court should excuse Dayton's filing of a late claim is barred by the doctrine of res judicata.

<u>Conclusion</u>

32.      Whether characterized as a Motion for Reconsideration or a Motion to File Late Claim, Dayton seeks to resuscitate a claim that has already been fully adjudicated by this Court but fails to provide any compelling justification for such extraordinary relief. Accordingly, the relief requested in the Dayton Pleadings should be denied.

<u>Memorandum Of Law</u>

33.      Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) denying each of the Dayton Pleadings, (b) disallowing and expunging proof of claim number 16640, and (c) granting them such other and further relief as is just.

Dated: New York, New York
April 15, 2008

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

By: /s/ John Wm. Butler, Jr._____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and –

By: /s/ Kayalyn A. Marafioti_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession