IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

In re                           :     Chapter 11

                                    :

DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)

                                    :

                Debtors.    :     (Jointly Administered)

                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

I, Elizabeth Adam, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On April 15, 2008, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via overnight mail:

>  Debtors' Objection To City Of Dayton's (A) Motion For Reconsideration Of Expungement Of The Claims Of The City Of Dayton Related To The Debtors' Thirteenth Omnibus Objections And (B) Motion Requesting Authority To File A Claim After The Bar Date (Docket No. 13406) [a copy of which is attached hereto as Exhibit B]

Dated: April 17, 2008

                                        */s/ Elizabeth Adam*
                                          Elizabeth Adam

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 17th day of April, 2008, by Elizabeth Adam, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:     */s/ Vanessa R. Quiñones*

Commission Expires:    *3/20/11*

# EXHIBIT A

Delphi Corporation
Response Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Davis, Polk & Wardwell | Donald Bernstein<br>Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092<br>212-450-4213 | Counsel to Debtor's Postpetition<br>Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | Debtors |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler<br>Bonnie Steingart<br>Vivek Melwani<br>Jennifer L Rodburg<br>Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | Counsel to Equity Security Holders<br>Committee |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | Counsel to Official Committee of Unsecured<br>Creditors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | Counsel to Debtor's Prepetition<br>Administrative Agent, JPMorgan Chase<br>Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | Counsel to the Debtor |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | Counsel to United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/16/2008 12:45 PM
Response Service List 070530 Overnight

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip | Phone |
|---------|---------|----------|----------|------|-------|-----|-------|
| SQUIRE, SANDERS & DEMPSEY, L.L.P. | G. Christopher Meyer | 4900 Key Tower | 127 Public Square | Cleveland | OH | 44114-1304 | (216) 479-8500 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/16/2008 12:19 PM

City of Dayton Ohio special party

# EXHIBIT B

**Hearing Date and Time: April 18, 2008 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (IL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

In re                      :      Chapter 11
                        :

DELPHI CORPORATION, et al.,   :      Case No. 05-44481 (RDD)
                        :

            Debtor.    :      (Jointly Administered)
                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO CITY OF DAYTON'S (A) MOTION FOR
RECONSIDERATION OF EXPUNGEMENT OF THE CLAIMS OF THE CITY OF DAYTON
RELATED TO THE DEBTORS' THIRTEENTH OMNIBUS OBJECTIONS AND (B)
<u>MOTION REQUESTING AUTHORITY TO FILE A CLAIM AFTER THE BAR DATE</u>

1.      Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby object (the "Objection"), pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), to the City Of Dayton's (1) Response To Debtors' Twenty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification And Modified Claim Asserting Reclamation, Or In The Alternative (2) Motion For Reconsideration Of Expungement Of The Claims Of The City Of Dayton Related To The Debtors' Thirteenth Omnibus Objections (Docket No. 13092) (the "Response and Motion for Reconsideration") and the City Of Dayton's Motion Requesting Authority To File A Claim After The Bar Date (Docket No. 13283) (the "Motion to File Late Claim," and together with the Response and Motion for Reconsideration, the "Dayton Pleadings") filed by the City of Dayton, Ohio ("Dayton").

2.      In support of this Objection, the Debtors submit the Declaration Of Noticing Agent Regarding Service Of Thirteenth Omnibus Claims Objection On City Of Dayton, Ohio, executed and sworn to on April 15, 2008 by Evan Gershbein of Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing agent in these chapter 11 cases (the "Gershbein Declaration"), a copy of which is attached hereto as Exhibit A.  In further support of this Objection, the Debtors respectfully represent as follows:

Preliminary Statement

3.      Through the Dayton Pleadings, Dayton is trying to unilaterally reinstate a late claim that was properly expunged nine months ago when Dayton failed to file a response to the Debtor's objection to that claim.  First, Dayton seeks to overturn the order of this Court

expunging proof of claim number 16404 (the "First Proof of Claim"), which Dayton had filed

November 6, 2006, after the bar date for filing proofs of claim and without leave of this Court.

The Debtors subsequently objected to the First Proof of Claim and, when Dayton failed to file a

response, the First Proof of Claim was disallowed and expunged by an order of this Court, a

copy of which was served on Dayton.  More than two months after the expungement order was

entered, on August 13, 2007, Dayton, again without leave from this Court, filed a second

untimely claim, proof of claim number 16640 (the "Second Proof of Claim"), which was

identical to the expunged First Proof of Claim.  Now, sixteen months after Dayton filed the First

Proof of Claim, nine months after this Court disallowed and expunged the First Proof of Claim,

and over one month after the Court confirmed the Debtors' Plan of Reorganization, Dayton filed

its motion seeking reconsideration of this Court's order with respect to the First Proof of Claim

or, alternatively, recognition from this Court of the validity of the Second Proof of Claim.

   4.  In support of its request, Dayton questions whether it received notice of

the Debtors' objection and asserts that its failure to respond to the objection was the result of

excusable neglect.  Neither contention has merit.  The Debtors have submitted sworn testimony

from KCC, that the personalized notices regarding the Debtors' objection to the First Proof of

Claim, and subsequent order expunging the First Proof of Claim, were sent to the address

provided in the First Proof of Claim, creating a "very strong" presumption that such notice of

objection was delivered.  In its Motion for Reconsideration, Dayton does not confirm or deny its

receipt of the objection to the First Proof of Claim.  Consequently, Dayton has not rebutted the

presumption of delivery.

   5.  In the Motion to File Late Claim, Dayton relies again on excusable

neglect in seeking to establish the validity of the Second Proof of Claim.  In this instance,

however, Dayton's reliance on excusable neglect is improper because any argument that this

Court should excuse Dayton's late filing of the Second Proof of Claim is barred by the doctrine

of res judicata.  The propriety of Dayton's First Proof of Claim was already before this Court and

was adjudicated by this Court's order disallowing and expunging the First Proof of Claim.

Dayton, therefore, cannot avoid the conclusive effect of the order expunging the First Proof of

Claim simply by filing the Second Proof of Claim containing the same claim.

6.      For the reasons set forth herein, the Dayton Pleadings should be denied

and the both the First and Second Proofs of Claim should be disallowed and expunged.

<u>Background</u>

7.      It is uncontested that Dayton was served with the Order Under 11 U.S.C.

§§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And

5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner

Of Notice Thereof, entered by this Court on April 12, 2006 (Docket No. 3206) setting a bar date

of July 31, 2006 (the "Bar Date") for creditors to file proofs of claim in Delphi's chapter 11 cases

and, in fact, did not file a timely proof of claim.   Over 16,000 proofs of claim were timely filed

by the Bar Date.

8.      On November 6, 2006, three months after the Bar Date, Dayton filed the

First Proof of Claim in the amount of $427,534.25 for the 2002 tax year assessed by Dayton.  On

April 27, 2007, the Debtors objected to the First Proof of Claim pursuant to Thirteenth Omnibus

Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain

(A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And

Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors'

Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject

To Modification, Tax Claims Subject to Modification, And Claims Subject To Modification And

Reclamation Agreement (Docket No. 7825) (the "Thirteenth Omnibus Claims Objection") on the

grounds that the First Proof of Claim was untimely.  Dayton did not file a response to the

Thirteenth Omnibus Claims Objection, and, on June 6, 2007, the Court entered its Order

Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging

Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books

And Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors'

Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject

To Modification, Tax Claims Subject to Modification, And Claims Subject To Modification And

Reclamation Agreement Identified In The Thirteenth Omnibus Claims Objection (Docket No.

8194) (the "Thirteenth Omnibus Order"), which disallowed and expunged the First Proof of

Claim.  A copy of the Thirteenth Omnibus Order was served on Dayton on June 8, 2007, as

evidenced by the Affidavit of Service of Evan Gershbein, which was filed on June 15, 2007

(Docket No. 8265).

        9.      On August 13, 2007, without leave of this Court and more than one year

after the Bar Date, Dayton filed the Second Proof of Claim, asserting an unsecured priority claim

for the same amount and for the same liability as in the First Proof of Claim – $427,534.25 for

the 2002 tax year assessed by Dayton.  On February 15, 2008, the Debtors objected to the

Second Proof of Claim pursuant to the Debtors' Twenty-Sixth Omnibus Objection Pursuant To

11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims,

(B) Untimely Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And

(D) Claims Subject To Modification And Modified Claim Asserting Reclamation (Docket No.

12686) (the "Twenty-Sixth Omnibus Claims Objection").  On March 12, 2008, Dayton filed the

Response and Motion for Reconsideration.

        10.     Pursuant to this Court's protocol for untimely proofs of claim filed in

these cases without leave of this Court, on March 19, 2008, the Debtors filed the Notice Of

Deadline To File Motion For Leave To File Late Claim With Respect To Late Claim Filed By

The City Of Dayton, Ohio (Proof Of Claim No. 16640) (Docket No. 13180).  On March 31, 2008,

Dayton filed the Motion to File Late Claim.

       11.    On January 25, 2008, this Court entered an order (Docket No. 12359)

confirming the Debtors' plan of reorganization (the "Plan").

Argument

## I.    MOTION FOR RECONSIDERATION

A.    Dayton Was Properly Served With And Is Presumed To Have Received Notice Of The
Thirteenth Omnibus Claims Objection

(i)    A Proper Mailing Constitutes Effective Service

       12.    On April 27, 2007, KCC served copies of the Thirteenth Omnibus Claims

Objection (without exhibits)[1] and the personalized notice of the Thirteenth Omnibus Claims

Objection.  These documents were served by KCC on Dayton through the Tax Collections

department by First Class mail at the address below, which is the address set forth on the First

Proof of Claim.  (Gershbein Declaration ¶4.)

       City of Dayton
       Attn: Tax Collections
       City of Dayton Finance Department
       101 West Third Street
       Dayton, OH 45402

On May 30, 2007, KCC filed with this Court an Affidavit of Service with respect to KCC's

service of the Thirteenth Omnibus Claims Objection and the personalized notice (the "Affidavit")

(Docket No. 7920).  (Gershbein Declaration ¶5.)

---

[1]    The personalized notice provides, "If you wish to view the complete exhibits to the Thirteenth Omnibus Claims
Objection, you can do so at www.delphidocket.com."  (Personalized Notice at 3).

13.    Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail. See e.g., Hagner v. United States, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); Leon v. Murphy, 988 F.2d 303, 309 (2d Cir.1993) (finding, under New York law, that when sender "presents proof of office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed," a presumption of receipt arises); In re R.H. Macy Co., Inc., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) ("Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed.").

14.    The Debtors provided timely, proper, and sufficient notice of the Thirteenth Omnibus Claims Objection by mailing the Thirteenth Omnibus Claims Objection and a personalized notice 30 days prior to the hearing on the objection at the address provided on the First Proof of Claim.

(ii)    Dayton Has Failed To Rebut The Presumption That Service Was Proper

15.    In each of the Dayton Pleadings, Dayton contends that it is unclear whether Dayton was served with notice of the Thirteenth Omnibus Claims Objection, stating the Affidavit fails to expressly indicate that Dayton was served with such notice.  Dayton bases this contention on its reading of the Affidavit.  First, Dayton states that "the Affidavit provides that the parties listed on Exhibits A, B, C, E, G, I, K, and M received service of the [Thirteenth Omnibus Claims Objection]" but that "Dayton's name and address are not listed on Exhibits A, B, C, E, G, I, K, and M."  Then, Dayton notes that it is listed on page 283 of the Affidavit, "which is

labeled as Exhibit D-2 of the [Thirteenth Omnibus Claims Objection]" and that the Affidavit

never provides that the parties listed on Exhibit D-2 were served with notice of the objection.

16.     Dayton's reading of the Affidavit is in error.  The Affidavit states that "On

April 27, 2007, I [Evan Gershbein] caused to be served the documents listed below on the parties

listed on Exhibit E hereto via postage pre-paid U.S. mail."  Exhibit E consists of pages 240 – 284

of the Affidavit.  Dayton's name and address is on page 283 of the Affidavit, thus evidencing that

Dayton was indeed served by KCC with a personalized notice of the Thirteenth Omnibus Claims

Objection informing Dayton of the proposed expungement of the First Proof of Claim and a copy

of that objection, without exhibits.  The reference to "Exhibit D-2" at the top of the page is

simply the title of the exhibit to the Thirteen Omnibus Claims Objection on which the First Proof

of Claim was listed.  (Gershbein Declaration ¶5.)  It does not denote a separate exhibit for

purposes of the Affidavit.  See id.

17.     Notwithstanding the evidence of service in Affidavit, Dayton has failed to

present any objective evidence to rebut the presumption that Dayton was properly served with

the Thirteenth Omnibus Claims Objection.  "While the presumption is a rebuttable one, it is a

very strong presumption and can only be rebutted by specific facts and not by invoking another

presumption and not by a mere affidavit to the contrary." In re Dana Corp.,  No. 06-10354, 2007

WL 1577763, *3 (Bankr. S.D.N.Y. 2007) (emphasis added);  see also Hagner, 285 U.S. at 430

("proof that a letter properly directed was placed in a post office creates a presumption that it

reached its destination in usual time and was actually received by the person to whom it was

addressed"); In re Mid-Miami Diagnostics, L.L.P., 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996)

("A creditor's denial of receipt, standing alone, does not rebut the presumption that the mail was

received, but merely creates a question of fact.").

18.     "The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished."  Moody v. Bucknum, 951 F.2d 204, 207 (9th Cir. 1991); In re Dana Corp., 2007 WL 1577763, at *3.  Dayton bears the burden of rebutting the presumption of receipt of the personalized notice.  In re Alexander's Inc., 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995).  To rebut the presumption of proper service, the claimant must prove that the "regular office procedure was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable."  Id. (citing Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985)).  It is established in the Second Circuit that the "mere denial of receipt does not rebut the presumption that notice was properly addressed and mail is received."  Capital Data Corp. v. Capital Nat'l Bank, 778 F. Supp. 669, 675-76 (S.D.N.Y. 1991); In re Alexander's, 176 B.R. at 721 ("It is black letter law that once an item is properly mailed, the law presumes that it is received by the addressee.").

19.     Accordingly, Dayton is presumed to have received the Thirteenth Omnibus Claims Objection, and as such Dayton was obligated to file a response or risk having its claim disallowed and expunged.  The Court should, therefore, deny Dayton's Motion For Reconsideration.

B.     Dayton Has Not Met Its Burden Of Proof For Establishing Excusable Neglect

20.     Because notice of the Thirteenth Omnibus Claims Objection was proper, Dayton is forced to assert excusable neglect.  As this Court has noted, there is some variation in the case law in the Second Circuit as to whether the proper standard for a motion to reconsider is (a) the three-factor analysis set forth in American Alliance Insurance Co., Ltd. v. Eagle Insurance Co. under Section 502(j) of the Bankruptcy Code and Bankruptcy Rule 3008 or (b) the four-factor analysis set forth in Pioneer Investment Services Co. vs. Brunswick Associates Limited Partnership under Bankruptcy Rule 9024, which incorporates rule 60(b) of the Federal Rules of

Civil Procedure for reconsideration of judgments.  Regardless of which standard applies, Dayton

has not established excusable neglect or an equitable basis for having the Thirteenth Omnibus

Order reconsidered under either standard.

> (i)  Dayton Is Not Eligible Under Rule 60(b) For
> Reconsideration Of The Order Disallowing And
> <u>Expunging Its Claim</u>

21.     Dayton does not meet its burden for reconsideration under the three-factor

test articulated in <u>American Alliance Insurance Co., Ltd. v. Eagle Insurance Co.</u>, 92 F.3d 57, 59

(2d. Cir.1996).  This test applies Bankruptcy Rule 9024, which incorporates Federal Rule 60(b),

to determine the existence of excusable neglect.  Under this test, the Second Circuit has outlined

three factors: "(1) whether the default was willful; (2) whether the defendant has a meritorious

defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is

granted." <u>American Alliance Insurance Co.</u>, 92 F.3d at 59. Willfulness does not require bad faith

or wrongful conduct.  Instead it may be sufficient that the movant knew that the action was

pending and failed to respond. <u>Gucci Am., Inc. v. Gold Ctr. Jewelry</u>, 158 F.3d 631, 635 (2d. Cir.

1998).  Conduct by the movant that is in bad faith falls under the willfulness standard and weighs

heavily against the movant. <u>In re Enron, Inc.</u>, 325 B.R. 114, 116 (Bankr. S.D.N.Y. 2005).  In

addition, gross negligence, while not determinative, can weigh against the party seeking relief.

<u>Id.</u>

22.     First, Dayton's conduct was willful because (a) it is presumed to have

received personalized notice of the Thirteenth Omnibus Claims Objection and did nothing and (b)

Dayton was aware that the First Proof of Claim was disallowed and expunged before filing the

Second Proof of Claim, but elected not to file a motion for reconsideration until it responded to

the Twenty-Sixth Omnibus Claims Objection. <u>See</u> Motion to File Late Claim ¶ 17.  Second,

Dayton has provided no evidence of extenuating circumstances that might rise to the level of

excusable neglect relating to its failure to file a timely response to the Thirteenth Omnibus

Claims Objection.  And third, as discussed more fully infra ¶25–26, prejudice to the Debtors will

result if the Motion for Reconsideration is granted.  Accordingly, Dayton is not eligible under

Rule 60(b) for reconsideration of the Thirteenth Omnibus Order disallowing and expunging the

First Proof of Claim.

(ii) Dayton's Counsel Has Not Met Its Burden Of Proof
For Establishing Excusable Neglect Under
<u>Bankruptcy Rule 3008</u>

23.    Dayton seeks reconsideration of the Thirteenth Omnibus Order under

Bankruptcy Rule 3008 and section 502(j) of the Bankruptcy Code, but again fails to demonstrate

excusable neglect.  The Supreme Court held that excusable neglect is the failure to comply with

a filing deadline because of negligence.  <u>Pioneer Inv. Servs. Co. vs. Brunswick Assoc. Ltd.</u>

<u>P'ship</u>, 507 U.S. 380, 394 (1993).  In examining whether a creditor's failure to file a claim by the

bar date constituted excusable neglect, the Supreme Court found that the factors include "(1) the

danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial

proceedings, (3) the reason for the delay, including whether it was within the reasonable control

of the movant, and (4) whether the movant acted in good faith."  <u>Id.</u> at 395.  The Second Circuit

has held the most important factor is the reason for the delay, including whether it was within the

reasonable control of the movant.  <u>In re Enron Corp.</u>, 419 F.3d 115, 122-24 (2d Cir. 2005)  The

Second Circuit has taken a "hard line" when applying the <u>Pioneer</u> factors and has held that the

equities will rarely favor a party who does not follow the clear dictates of a court rule or order.

<u>See</u> Hearing Tr. 27, Feb. 14, 2007 (Docket No. 7446).  Furthermore, "where the rule is entirely

clear, the Second Circuit continues to expect that a party claiming excusable neglect will, in

ordinary course, lose under the <u>Pioneer</u> test." <u>Id.</u>

24.     The most important factor, the reason for the delay, weighs heavily in favor of the Debtors.  Dayton's only explanation for not filing a response – the number of pages generally appearing in the Debtors' omnibus objections – is inapposite in light of service of the personalized notice, which clearly indicates both the proof of claim number and the nature of the Debtors' objection.  Moreover, Dayton's delay in responding to the Thirteenth Omnibus Claims Objection was entirely within Dayton's control.  Dayton has not provided any evidence that it was somehow prevented from filing a timely response to the Thirteenth Omnibus Claims Objection, nor has it given any reason for waiting nine months to file the Motion for Reconsideration.

25.     With respect to prejudice to the Debtors, Dayton dismisses any possibility of prejudice, asserting that the Debtors would suffer no harm because the Debtors are working to resolve other claims and have already scheduled an amount for Dayton.  See Response and Motion for Reconsideration ¶20.  This argument should be denied because it ignores, to the detriment of all creditors in these cases, the ramifications if this Court were to grant the same relief to every claimant that failed to timely respond to an omnibus claims objection.  The courts, on the other hand, have often recognized the danger of opening the floodgates to potential claimants.  See, e.g., In re Enron Corp., 419 F.3d at 132; In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-filed claims, "Kmart could easily find itself faced with a mountain of such claims"); Enron Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("'It can be presumed in a case of this size with tens of thousands of filed claims, there are other similarly-situated potential claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors' reorganization process.'" (citation omitted)); In re Dana Corp.  2007 WL 1577763, at *6 ("the floodgates argument is a viable one").

26.     It is important to note that, because it asserts a priority tax claim, Dayton's claim does not impact the Debtors' compliance with the $1.45 billion target under the Equity Purchase and Commitment Agreement, the investment agreement between the Debtors and their plan investors.  However, the Debtors relied in part upon the current state of claims register to calculate post-emergence liquidity needs to satisfy tax claims and otherwise formulate and prosecute a plan of reorganization.  Allowing Dayton to prevail may inspire many other similarly situated potential claimants to file similar motions.  Any potential claimant who, by its own error, failed to file a timely response may seek to follow Dayton's lead.  Granting Dayton's Motion for Reconsideration in this instance may also call into question the Debtors' efforts to enforce response deadlines and orders with respect to the approximately 9,000 claims that have already been subject to orders on omnibus claims objections in these cases.  Moreover, granting the relief requested by Dayton would excuse it from its obligation to timely respond to the Thirteenth Omnibus Claims Objection and would encourage other claimants to seek similar relief, undermining the integrity and finality of the entire claims administration process.  Accordingly, establishing a precedent for reconsidering ordered claims without a compelling justification would greatly prejudice the Debtors, their estates, and their creditors and undermine the Debtors' restructuring efforts.

27.     The length of the Dayton's delay in seeking reconsideration of this Court's Thirteenth Omnibus Order expunging the First Proof of Claim also favors the Debtors, as Dayton's nine-month delay was long enough to have a disparate impact on the bankruptcy proceedings.  See In re Dana Corp., 2007 WL 1577763, at *5, citing In re Enron, 419 F.3d at 125 (delay of more than six months after bar date was "substantial").

28.     Accordingly, Dayton has failed to provide any evidence of circumstances justifying the extraordinary relief it seeks under the "excusable neglect" standard and has not met

its burden for establishing excusable neglect.  Dayton's Motion for Reconsideration should,

therefore, be denied.

## II.    MOTION TO FILE LATE CLAIM

A.    Res Judicata Precludes Dayton From Filing The Second Proof of Claim

29.    The doctrine of res judicata also bars parties from pursuing claims where

they were either parties to an action in which a court of competent jurisdiction has entered a final

judgment and where the parties could have pursued their claims in the earlier proceeding.

Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 206 (2d Cir. 2002); Maharaj v. Bankamerica

Corp., 128 F.3d 94, 97 (2d Cir. 1997).  For purposes of res judicata, a bankruptcy court order

disallowing and expunging a proof of claim is a final judgment.  See Katchen v. Landy, 382 U.S.

323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions

of bankruptcy courts. More specifically, a creditor who offers a proof of claim and demands its

allowance is bound by what is judicially determined, and if his claim is rejected, its validity may

not be relitigated in another proceeding on the claim." (citations omitted)); cf. EDP Med.

Computer Sys., Inc. v. United States, 480 F.3d 621, 325-27 (2d. Cir. 2007) (finding, in the

context of an order allowing a claim that was not contested on the merits, that a bankruptcy court

order was final for res judicata purposes even though other relief, such as reconsideration, may

have been available).

30.    Accordingly, the Thirteenth Omnibus Order was a final judgment that

disallowed and expunged the First Proof of Claim.  Moreover, Dayton is presumed to have

received notice of the Thirteenth Omnibus Claims Objection and, thus, had an opportunity to

protect its interest in the First Proof of Claim by simply filing a response.  The Thirteenth

Omnibus Order is, therefore, subject to res judicata and precludes Dayton from pursuing the

Second Proof of Claim, which asserts a claim that is identical to the First Proof of Claim.

B.      <u>Dayton Improperly Invokes Excusable Neglect Standard For The Second Proof of Claim</u>

31.      While the Debtors acknowledge that excusable neglect is generally the appropriate vessel for determining whether a claimant should be allowed to file a late claim, Dayton's application of the standard in the Motion to File Late Claim is in error.  Dayton asserts that it had no occasion to file the Second Proof of Claim until it learned that the Court had disallowed and expunged its original claim.  This explanation, however, is improper because the issue of whether Dayton was entitled to file a late claim was the precise issue raised by the Thirteenth Omnibus Claims Objection, and any argument that this Court should excuse Dayton's filing of a late claim is barred by the doctrine of res judicata.

Conclusion

32.      Whether characterized as a Motion for Reconsideration or a Motion to File Late Claim, Dayton seeks to resuscitate a claim that has already been fully adjudicated by this Court but fails to provide any compelling justification for such extraordinary relief.  Accordingly, the relief requested in the Dayton Pleadings should be denied.

Memorandum Of Law

33.      Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

denying each of the Dayton Pleadings, (b) disallowing and expunging proof of claim number

16640, and (c) granting them such other and further relief as is just.


Dated: New York, New York
         April 15, 2008


                                   SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM LLP


                                   By: /s/ John Wm. Butler, Jr._____
                                        John Wm. Butler, Jr. (JB 4711)
                                        John K. Lyons (JL 4951)
                                        Ron E. Meisler (RM 3026)
                                   333 West Wacker Drive, Suite 2100
                                   Chicago, Illinois 60606
                                   (312) 407-0700

                                            - and –


                                   By: /s/ Kayalyn A. Marafioti_____
                                        Kayalyn A. Marafioti (KM 9632)
                                        Thomas J. Matz (TM 5986)
                                   Four Times Square
                                   New York, New York 10036
                                   (212) 735-3000

                                   Attorneys for Delphi Corporation, et al.,
                                    Debtors and Debtors-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
     In re                            :     Chapter 11
:
DELPHI CORPORATION, et al.,       :     Case No. 05-44481 (RDD)
:
                  Debtors.    :     (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF NOTICING AGENT REGARDING SERVICE OF
THIRTEENTH OMNIBUS CLAIMS OBJECTION ON
CITY OF DAYTON, OHIO**

I, Evan Gershbein, state as follows:

        1.      I am over eighteen years of age and not a party to the above-captioned

cases.  I believe the statements contained herein are true based on my personal

knowledge.  I am one of the Senior Consultants employed by Kurtzman Carson

Consultants LLC ("KCC") and my business address is 2335 Alaska Avenue, El Segundo,

California 90245.  KCC was retained as the noticing agent pursuant to the Final Order

Under 28 U.S.C. § 156(c) Authorizing Retention And Appointment Of Kurtzman Carson

Consultants LLC As Claims, Noticing, And Balloting Agent for Clerk Of Bankruptcy

Court, entered by the Court on December 1, 2005 (Docket No. 1374).  I am familiar with

KCC's routine practices and procedures for the mailing of notices and other pleadings.

This declaration is based upon my personal knowledge, except as to such matters as are

stated upon information and belief.

        2.      KCC has been the claims and noticing agent for numerous large

bankruptcy cases.  In order to fulfill this role, we have established a number of safeguards

to make certain that notices and other pleadings are served in a proper manner.  Our

procedures are specifically designed to insure that documents are always properly addressed and mailed.  Our procedures for mailing are generally outlined as follows:

a. <u>Placement of the document into an envelope</u>:  After carefully reviewing the printed versions of the personalized notices, and objections/orders, the pleading is collated and placed into envelopes.

b. <u>Addressing of the envelope</u>:  A team member cross-references the various addresses for each mailing with the actual addresses on the proofs of claim, notices of transfer, and change of address requests prior to the mailing.

c. <u>Monitoring of returned mail</u>:  We preprint the return address (i.e. KCC's address) on our envelopes.  We carefully monitor the mail sent out and returned to our office.

d. <u>The affixing of the proper postage</u>:  Once we approve the completed packages, our production department applies the proper postage.

e. <u>The placing of the letter in an outgoing mail receptacle</u>: Depending upon the completion time of the mailing, we either have our regular courier take the mail directly to the post office or we physically drive it there. For the Thirteenth Omnibus Objection, our office physically delivered the Thirteenth Omnibus Objection packages to the post office in the evening on April 27, 2007.

f.    <u>The retention of a copy of each document</u>:  KCC retains copies of all personalized notices.  Additionally, we store copies both electronically on protected servers and physically in file cabinets.

g.    <u>Records of each mailing</u>:  I execute and file Affidavits of Service for most omnibus objection mailings.  I include a specific service list containing a listing of all parties to receive an omnibus objection/order, and personalized notice in my notarized and filed Affidavits of Service.

h.    <u>Other checks or cross-checks built into the office routine to insure mailing</u>:  We have many checks for the quality control of an omnibus objection/order mailing, including utilizing independent reviewers to verify address information against filed proofs of claim and the formatting and accuracy of the various data merge files and completed personalized notices.  In addition, I create data merge files containing the address and claim information to be merged into the personalized notices and monitor the entire process from inception to completion.

3.    In preparation of the mailing of the Debtors' Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject To Modification, Tax Claims Subject to Modification,

And Claims Subject To Modification And Reclamation Agreement (Docket No. 7825)

(the "Thirteenth Omnibus Claims Objection"), I personally supervised the following:

    a.    <u>Creation of data files used to merge claim and address information into personalized notices</u>:  I personally reformatted the Thirteenth Omnibus Claims Objection data files, including the extraction and incorporation of the various claimants' address information from KCC CaseView into those data files.

    b.    <u>Submit data files, personalized notice and Thirteenth Omnibus Claims Objection to Production staff</u>:  I personally emailed the data files, blank personalized notice and Thirteenth Omnibus Claims Objection to the Technological Programming Consultant in the KCC Production department.

    c.    <u>Monitor preparation of merge project</u>:  I supervised and monitored the creation of the project where we merge the data files into the personalized notice.  I, along with another Consultant, reviewed electronic copies of the merged notices.  The Consultant and I approved the electronic copies and instructed the Technological Programming Consultant to print hard copies for the service.

    d.    <u>Address included on attached slip sheet during merge process</u>:  During the process of merging a claimant's objection information, we also merge that individual claimant's address information to a slip sheet, which we print and staple to the back of the personalized notice.

e.    <u>Review printed documents</u>:  A Consultant approved the printed copies of the completed personalized notices and Thirteenth Omnibus Claims Objection for service.

f.    <u>Collating and inserting documents into windowed envelopes</u>: After receiving approval, our Production department collated and inserted the personalized notices with the Thirteenth Omnibus Claims Objection into windowed envelopes, with the claimants' addresses showing through the windowed section of the envelopes.

g.    <u>Review and finalize completed packages</u>:  A Consultant reviewed and counted the completed packages.  Afterwards, we provided our Production department with the approval for sealing, applying postage and delivering all packages to the Post Office.  Throughout the merging, printing and inserting portions of the project, all packages to be sent to foreign addresses are processed and metered separately.  It is KCC's procedure to notify me of any problems with or deviation from KCC's normal procedures in relation to the service of any Delphi documents.  With respect to the mailing of the Thirteenth Omnibus Claims Objection to the appropriate parties, including the City of Dayton, Ohio ("Dayton"), I was not notified of any such problem or deviation.

4.    On April 27, 2007, KCC served copies of the Thirteenth Omnibus Claims Objection, without exhibits, and the personalized Notice of Objection to Claim pertaining to proof of claim no. 16404 on Dayton via First Class mail at the address below, which is the address set forth on Proof Of Claim No. 16404:

City of Dayton
Attn: Tax Collections
City of Dayton Finance Department
101 West Third Street
Dayton, OH 45402

5.      On May 10, 2007, KCC filed with this Court an Affidavit Of Service with

respect to KCC's service of the Thirteenth Omnibus Claims Objection and the

Specialized Personalized Notice (Docket No. 7920).  The service information for Dayton

appears in Exhibit E of the Affidavit of Service, which spans pages 240 – 284 of the

Affidavit of Service, on page 283.  The parties listed in Exhibit E are grouped by exhibits

as they appeared in the Thirteenth Omnibus Claims Objection.  Thus, the page on which

Dayton's service information appears references Exhibit D-2 of the Thirteenth Omnibus

Claims Objection.

6.      When preparing the Thirteenth Omnibus Claims Objection, KCC merged

claimants' contact information directly onto the personalized Notices of Objection to

Claim.  The Thirteenth Omnibus Claims Objections, without exhibits, and Claim

Objection Procedures Order were collated and served with the personalized Notices of

Objection to Claim.  The address for mailing is printed directly on the Personalized

Notice, which is placed at the back of the packet of documents so that the mailing address

appears through the window of the envelopes in order to effectuate service.

7.      On June 8, 2007, KCC served the Order Pursuant To 11 U.S.C. § 502(b)

And Fed. R. Bankr. P. 3007 Disallowing And Expunging Certain (A) Insufficiently

Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C)

Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books

And Records, (E) Untimely Claims And Untimely Tax Claims, And (F) Claims Subject

To Modification, Tax Claims Subject to Modification, And Claims Subject To

Modification And Reclamation Agreement Identified In The Thirteenth Omnibus Claims

Objection (Docket No. 8194) (the "Thirteenth Omnibus Order"), without exhibits, and the

personalized Notice of Entry of Order pertaining to Claim No. 16404 on Dayton via First

Class mail at the address below:

> City of Dayton
> Attn: Tax Collections
> City of Dayton Finance Department
> 101 West Third Street
> Dayton, OH 45402

8.      On June 15, 2007, KCC filed with this Court an Affidavit Of Service with

respect to KCC's service of the Thirteenth Omnibus Order and the Specialized

Personalized Notice (Docket No. 8265).

9.      KCC maintains a department of employees that specifically receive and

track all returned mail.  This department provides myself and other Consultants assigned

to the Delphi case with all Omnibus Claims packages containing personalized notices.  In

turn, we maintain and update a tracking sheet with all such returned packages.  After

reviewing the tracking sheet and these returned packages, I have determined that none of

the packages sent to the addresses listed above were returned to KCC as undeliverable.

Attached hereto as Exhibit C is a copy of the returned mail tracking sheet.

10.      To the best of my knowledge, information and belief, I hereby declare and

state that the foregoing information is true and correct.

11.     To the best of my knowledge, information and belief, I hereby declare and state under penalty of perjury pursuant to 28 U.S.C. section 1746 that the foregoing information is true and correct.

Executed on April 15, 2008, at Los Angeles, California.

_/s/ Evan Gershbein_____
Evan Gershbein