**Hearing Date And Time: May 29, 2008 at 10:00 a.m.**
**Objection Deadline: May 22, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :
    In re                          :    Chapter 11
                                 :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                 :
                  Debtors.    :    (Jointly Administered)
                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' (I) OMNIBUS OBJECTION PURSUANT TO CONFIRMATION ORDER, 11 U.S.C. §§
105(a), 365, AND FED. R. BANKR. P. 9014 REGARDING CURE PROPOSALS SUBMITTED
UNDER ARTICLE 8.2(b) OF DEBTORS' PLAN OF REORGANIZATION AND (II) REQUEST FOR
ORDER PROVISIONALLY ALLOWING CERTAIN CURE PROPOSALS

("OMNIBUS 8.2(b) CURE OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this (I) Omnibus Objection Pursuant To Confirmation Order, 11 U.S.C. §§ 105(a), 365, And Fed. R. Bankr. P. 9014 Regarding Cure Proposals Submitted Under Article 8.2(b) Of Debtors' Plan Of Reorganization And (II) Request For Order Provisionally Allowing Certain Cure Proposals (the "Objection") and respectfully represent as follows:

Background

A.  The Chapter 11 Filings

1.  On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.  No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the official committee of unsecured creditors, the "Statutory Committees").

3.  On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

2

Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389). On January 25, 2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order"), which became a final order on February 4, 2008.

4. On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Plan) refused to participate in a closing that was commenced but not completed and refused to fund their Investment Agreement (as defined in the Plan) with Delphi. The Debtors are prepared to pursue actions with respect to the Plan Investors that are in the best interests of the Debtors and their stakeholders and are working with their stakeholders to achieve their goal of emerging from chapter 11 as soon as practicable.

5. This Court has jurisdiction over this objection pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

6. The statutory predicates for the relief requested herein are sections 105(a) and 365 of the Bankruptcy Code and rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.  Current Business Operations Of The Debtors

7. Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately

3

$13.7 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

    8.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

    9.  Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM

---

[1] The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2] On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007. On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007. The Spanish court approved the social plan on July 31, 2007. The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

4

sources.

C.     Events Leading To The Chapter 11 Filing

        10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

        11.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

        12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

5

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

13.    On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations. The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements to create a competitive arena in which to conduct business; second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company; third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable solution to their current pension situation.

E.    Plan Confirmation And Postconfirmation Matters

14.    The confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases. The Global Settlement Agreement and the Master Restructuring Agreement provide for a comprehensive settlement with GM, and both agreements were approved by this Court in the Confirmation Order. After the Plan was confirmed, the Debtors focused their efforts on satisfying the conditions for the Plan to become effective. The Debtors satisfied those conditions and on April 4, 2008 began a formal closing process attended by representatives of GM, the exit lenders, and the Statutory Committees. The Plan Investors, however, refused to participate in the closing or fund their obligations under the Investment Agreement. Instead, the Plan Investors

6

delivered written notices purporting to terminate the Investment Agreement based on both alleged breaches by the Debtors and the failure of the Plan's effective date to occur by April 4, 2008.  The Debtors are prepared to pursue actions against the Plan Investors that are in the best interests of the Debtors and their stakeholders and are working with their stakeholders to evaluate their options to move forward with emerging from chapter 11 as soon as reasonably practicable.

    15.  Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

    16.  By this Objection, the Debtors request that this Court (a) disallow a certain Cure Proposal (as defined herein) relating to contracts that will not be assumed pursuant to Article 8.1 of the Plan and, therefore, is not entitled to cure under Article 8.2(b) of the Plan, (b) disallow an untimely Cure Proposal, (c) disallow any Cure Proposal submitted by an improper third party, and (d) modify certain Cure Proposals to an amount that conforms to that set forth on the Debtors' books and records. In addition, with respect to certain Cure Proposals that are consistent with the Debtors' books and records and Cure Proposals that are modified to conform to the Debtors' books and records, the Debtors seek an order provisionally allowing such Cure Proposals, provided that (a) each such Cure Proposal shall be satisfied by and subject to the terms of a consummated plan of reorganization, and (b) each such Cure Proposal shall be subject

to expiration of the underlying executory contract or unexpired lease or subject to further modification on account of any increases or decreases to the proposed cure amount as a result of acts or omissions following entry of the order granting the relief requested in this Objection.

Basis For Relief

17. Article 8.2(b) of the Plan provides that parties to Other Executory Contracts or Other Unexpired Leases (as defined in the Plan) whose contracts are to be assumed under the Plan and who wish to assert a cure amount as a condition to assumption were required to file and serve a cure proposal ("Cure Proposal") within 45 days after entry of the Confirmation Order (the "Cure Proposal Bar Date"). Because the Confirmation Order was entered on January 25, 2008, the Cure Proposal Bar Date was March 10, 2008, and the Debtors' deadline is April 24, 2008, to object to Cure Proposals submitted pursuant to Article 8.2(b) of the Plan. (See Confirmation Order ¶ 25.) The Debtors received 31 Cure Proposals under Article 8.2(b) of the Plan. As more fully discussed below, the Debtors seek to (a) disallow three of the Cure Proposals, (b) modify and provisionally allow 23 of the Cure Proposals, and (c) provisionally allow four of the Cure Proposals.[4]

    (i)    <u>Cure Proposal Submitted For Contracts Not Assumed Under Article 8.1 Of The Plan And Therefore Not Entitled To Cure Under Article 8.2(b) Of The Plan</u>

18. The Debtors have reviewed the Cure Proposals and have determined that the Cure Proposal identified on <u>Exhibit A</u> hereto asserts liabilities or dollar amounts that are not entitled to cure payments under Article VIII of the Plan because the asserted contracts are not contemplated under Article 8.1(a) and, therefore, would not be entitled to cure under Article

---

[4] The Cure Proposal submitted by Multek Flexible Circuits, Inc. (Docket No. 13060) was withdrawn with prejudice on April 23, 2008 (Docket No. 13451).

8

8.2(b) of the Plan (the "Non-Article 8 Cure Proposal"). The Debtors have determined that the Non-Article 8 Cure Proposal is not eligible to receive a cure payment under Article 8.2(b) of the Plan. Accordingly, the Debtors object to the Non-Article 8 Cure Proposal and request that the Court disallow the Non-Article 8 Cure Proposal set forth on Exhibit A.

     (ii)  Untimely Cure Proposal

    19.  The Debtors determined that the Cure Proposal set forth on Exhibit B was untimely because it was filed on March 25, 2008, 15 days after the Cure Proposal Bar Date expired (the "Untimely Cure Proposal"). The Debtors object to the Untimely Cure Proposal on the basis that it was not timely filed pursuant to the Plan and Confirmation Order and therefore the Untimely Cure Proposal should be disallowed.

    20.  As discussed above, the Cure Proposal Bar Date was March 10, 2008. The party filing the Untimely Cure Proposal received notice of the Cure Proposal Bar Date pursuant to the Confirmation Hearing Notice and the Confirmation Order but, nevertheless, failed to comply with this Court's order for submitting a timely Cure Proposal under Article 8.2(b) of the Plan.[5] This Court should disallow the Untimely Cure Proposal to ensure the integrity of the Court's orders and procedures. Moreover, allowing this counterparty to ignore the Cure Proposal Bar Date could potentially open the floodgates to other late Cure Proposals, which would prejudice the Debtors in their efforts to efficiently resolve Cure Proposals and determine their postemergence liquidity needs. See, e.g., In re Enron Corp., 419 F.3d 115, 132

---

[5] The Confirmation Hearing Notice, as well as the confirmed Plan, provide as follows: "[s]hould a party to an executory contract or unexpired lease not file a proposed Cure Proposal by the Cure Proposal Submission Deadline in accordance with the procedures set forth in Article 8.2(b) of the Plan, then any default then existing will be deemed cured as of the day following the Cure Proposal Submission Deadline and such party will forever be barred from asserting against the Debtors or the Reorganized Debtors, as applicable, a claim that arose on or prior to the confirmation date of the Plan."

9

(2d Cir. 2005); In re Dana Corp., 2007 WL 1577763, at *6 (Bankr. S.D.N.Y. 2007) (noting that, in the context of late proofs of claims, "the floodgates argument is a viable one"). The Untimely Cure Proposal identified on Exhibit B should therefore be disallowed.

        (iii)    Cure Proposal Submitted By Improper Third Party

21.    The Cure Proposal identified at Docket No. 13065, submitted by Liquidity Solutions, Inc. ("LSI") as assignee of certain counterparties, should be disallowed because it was submitted by an improper third party. Specifically, LSI's purported Cure Proposal simply lists more than 200 creditor names and, where applicable, corresponding proof of claim numbers. But as this Court has already ruled, absent specific evidence of consent by the counterparty submitted with the Cure Proposal, an independent third party cannot interfere between Delphi and its vendors. Moreover, LSI failed to identify any executory contracts or unexpired leases to be assumed and failed to list any cure amounts. Instead, LSI's proposal includes a list of proof of claim numbers and proof of claim amounts without identifying any contract to be assumed or amount to be cured. In addition, LSI asserts that any cure amounts should be paid directly to LSI and should be in cash. Once again, this Court has previously ruled, on several occasions, that cure amounts will be paid to the underlying counterparty and not to a third-party claims trader.[6] Therefore, LSI's Cure Proposal should be disallowed.

        (iv)    Cure Proposals Not Reflected On The Debtors' Books And Records

22.    During the Debtors' review of the Cure Proposal, the Debtors determined that certain Cure Proposals assert liabilities or dollar amounts that are not consistent with, or owing as Cure Payments pursuant to, the Debtors' books and records (the "Books And Records

10

Cure Proposals"). The Books And Records Cure Proposals are identified on <u>Exhibit C</u> hereto. The Debtors believe that those parties asserting the Books And Records Cure Proposals are not entitled to receive Cure Payments under the Plan in the asserted amount. The Debtors seek to modify and provisionally allow certain Cure Proposals for dollar amounts that are supported by the Debtors' books and records.

23. The bases for determining that the Debtors are not liable for an asserted Books And Records Cure Proposal include, but are not limited to, the following: (a) the Debtors' books and records reflect payments made by the Debtors that are not accounted for in the Cure Proposal, (b) the Debtors' books and records reflect that the asserted Cure Proposal states the incorrect, or overstated, amount, or (c) the Cure Proposal asserts liabilities for which the Debtors are not liable as a matter of law. For each Books And Records Cure Proposal, <u>Exhibit C</u> reflects the amount asserted by the contract counterparty in a column titled "Cure Amount Asserted In Cure Proposal" and the proposed modified dollar amount that the Debtors believe is owed, if any, to cure defaults under the executory contract or unexpired lease for each Books And Records Cure Proposal in a column titled "Debtors' Reconciled Cure Amount."[7]

24. Accordingly, the Debtors (a) object to the Books And Records Cure Proposals set forth on <u>Exhibit C</u> and (b) seek an order modifying the Books And Records Cure Proposals and provisionally allowing the Books And Records Cure Proposals to reflect the Debtors' Reconciled Cure Amounts, identified on <u>Exhibit C</u>, provided that (a) each such Cure

_____
*(cont'd from previous page)*
[6] This Court has already spurned previous attempts by LSI to meddle with the Debtors' ongoing contractual relationships in the context of payment of cure amounts.

[7] For the avoidance of doubt, the Debtors' books and records presently reflect that no amount is owed for certain of the Cure Proposals. Following the entry of the order granting the relief requested in this Objection, the amounts owed with respect to certain Cure Proposals could increase. Therefore, the Debtors seek provisional allowance of the Cure Proposals subject to the qualifications set forth in paragraph 24 herein.

11

Proposal shall be satisfied by and subject to the terms of a consummated plan of reorganization, and (b) each such Cure Proposal shall be subject to expiration of the underlying executory contract or unexpired lease or subject to further modification on account of any increases or decreases to the proposed cure amount as a result of acts or omissions following entry of order granting the relief requested in this Objection.

        (v)      <u>Provisional Allowance Of Certain Cure Proposals</u>

25.      With respect to the Cure Proposals set forth on <u>Exhibit D</u> hereto, the Debtors seek provisional allowance (the "Provisionally Allowed Cure Proposals").  The Debtors seek a provisional allowance of the Provisionally Allowed Cure Proposals because any final reconciliation and payment of the Cure Proposals at this time would be premature.  Article 8.1(a) of the Plan provides that the Debtors will assume executory contracts and unexpired leases as of the Effective Date.  Article 1.36 of the Plan, which defines "Cure," provides that monetary Cure Payments will be made "within a reasonable period of time following the Effective Date."  Furthermore, intervening factors may affect the cure amount that may be owed when the underlying contracts are ultimately assumed as of the Effective Date.  Following this Court's entry of an order on this Objection, it may become necessary either to increase or decrease the cure amount on the Provisionally Allowed Cure Proposals.  For example, the cure amount could potentially increase in the event of a postpetition default or could possibly decrease to offset payments made pursuant to First Day Orders.  In addition, contracts that expire before the Effective Date would not be subject to assumption and cure, and thus, no cure would be paid on such contracts.  Moreover, under the Confirmation Order, the Debtors also retain the right to reject, among other things, any executory contract or unexpired lease that "shall be the subject of a motion to reject pending on or before the Effective Date."  (<u>See</u> Confirmation Order ¶ 22.)

26. Accordingly, the Debtors request that this Court enter an order provisionally allowing the Provisionally Allowed Cure Proposals identified on <u>Exhibit D</u>, provided that (a) each such Cure Proposal shall be satisfied by and subject to the terms of a consummated plan of reorganization, and (b) each such Cure Proposal shall be subject to expiration of the underlying executory contract or unexpired lease or subject to further modification on account of any increases or decreases to the proposed cure amount as a result of acts or omissions following entry of the order granting the relief requested in this Objection.

Applicable Authority

27. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), this Court is authorized to establish the procedures governing this Objection. "'Section 105 is an omnibus provision phrased in general terms as to be the basis for a broad exercise of power in the administration of a bankruptcy case.'" <u>In re Elmendorf</u>, 345 B.R. 786, 502 (Bankr. S.D.N.Y. 2006) (quoting <u>In re Flores</u>, 291 B.R. 44, 54 (Bankr. S.D.N.Y. 2003)).

28. Furthermore, bankruptcy courts have broad latitude to determine the process for hearing contested matters. Bankruptcy Rule 9014 provides that this Court "may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply." <u>See</u> Fed. R. Bankr. P. 9014(c). <u>See also</u> <u>In re Crown Books Corporation</u>, 269 B.R. 12, 16 (Bankr. D. Del. 2001) (lessor's objection seeking determination of amount necessary to cure existing fault under leases was contested matter); <u>In re Millivision, Inc.</u>, 328 B.R. 1, 3 (Bankr. D. Mass. 2005) (objection to proposed Cure Proposal treated as contested matter governed by Fed. R. Bankr. P. 9014).

29. Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  Section 365(b)(1) of the Bankruptcy Code further provides that, in the event of a default on an executory contract or unexpired lease, a debtor-in-possession "may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor-in-possession] cures, or provides adequate assurance that the [debtor-in-possession] will promptly cure, such default."  The purpose of this Objection is, in part, to facilitate the determination of the correct size and scope of any defaults on Other Executory Contracts and Other Unexpired Leases pursuant to section 365 so that such cure amounts can be paid at the appropriate time in the future.

Responses To Objections

F.      Responses To Objections

30. The Debtors propose that, to contest an objection, responses (each, a "Response"), if any, to the Objection would be required to (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West

Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Ron E. Meisler, and Carl Tullson), (iii) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), and (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be received no later than 4:00 p.m. (prevailing Eastern time) on May 22, 2008.

G.   Contents Of Responses

31.   The Debtors further propose that every Response to the Objection contain at a minimum the following:

(a)   the title of the Objection to which the Response is directed;

(b)   the name of the Counterparty and a brief description of the basis for the amount of the Cure Proposal;

(c)   a concise statement setting forth the reasons why the Objection should not be sustained, including, but not limited to, the specific factual and legal bases upon which the Counterparty would rely in opposing the Objection;

(d)   documentation sufficient to establish a prima facie case to the Counterparty's asserted Cure Proposal; provided, however, that the Counterparty need not disclose confidential, proprietary, or otherwise protected information in the Response; provided further, however, that the Counterparty must disclose to the Debtors all information and provide

15

copies of all documents that the Counterparty believes to be confidential, proprietary, or otherwise protected and upon which the Counterparty intends to rely in support of its position, subject to appropriate confidentiality constraints; and

(e) the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the Cure Proposal.

H. <u>Timely Response Required</u>

32. If a Response is properly and timely filed and served in accordance with the foregoing procedures, the Debtors will negotiate in good faith to reach a consensual resolution of the Cure Proposal. If no consensual resolution is reached, then the Debtors propose to notice the disputed Cure Proposal for a later hearing pursuant to the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Supplemental Case Management Order") and schedule the matter for hearing at the next regularly scheduled hearing that is at least twenty days following service of the foregoing notice. The Debtors propose that the proponent of such disputed Cure Proposals be entitled to file a supplemental response by 4:00 p.m. (prevailing Eastern time) at least seven calendar days prior to such hearing and that the Debtors (or the Reorganized Debtors) be entitled to file a reply no later than 4:00 p.m. (prevailing Eastern time) on the business day prior to such hearing. To the extent that an evidentiary hearing is necessary to resolve the disputed Cure Proposals, the procedures for such evidentiary hearings would be governed by the Supplemental Case Management Order, including any amendments or supplements thereto, and the established practices of this Court in these cases. The Debtors further request that only those Responses made in writing and timely filed and received be considered by the Court.

16

I.      Service Of Proposed Omnibus 8.2(b) Cure Objection Order

33.     Kurtzman Carson Consultants, LLC ("KCC") will serve all orders entered with respect to the Objection, including exhibits, upon the master service list and the 2002 list. KCC will also serve all parties whose Cure Proposals are the subject of an order entered with respect to the Objection with a copy of such order, without exhibits, and a personalized Notice Of Entry Of Order (a form of which is attached as an exhibit to the proposed order) specifically identifying the Cure Proposal that is subject to the order, the Court's treatment of such Cure Proposal, and the basis for such treatment, and advising the party of its ability to view the order with exhibits free of charge on the Debtors' Legal Information Website.

### Separate Contested Matters

34.     To the extent that a Response is filed with respect to any Cure Proposal listed in this Objection, the Debtors request that each such Cure Proposal and the objection to such Cure Proposal asserted in this Objection be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  The Debtors propose to provide notice of a hearing on Cure Proposals pursuant to the Supplemental Case Management Order.  In accordance with the Supplemental Case Management Order, the Debtors reserve all rights to file supplemental objections at least 20 days prior to the hearing date and the proponents of Cure Proposals would be entitled to file a supplemental response at least seven days prior to such hearing.  Any order entered by the Court with respect to an objection asserted in this Objection will be deemed a separate order with respect to each Cure Proposal.

### Reservation Of Rights

35.     The Debtors expressly reserve the right to amend, modify, or supplement this Objection and to file additional objections to the Cure Proposals or any other Cure Proposals (filed or not) which may be asserted against the Debtors.  Should one or more grounds for the

17

objection stated in the Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any grounds that the Debtors discover during the pendency of these cases.

### Notice

36.     Notice of this Objection has been provided in accordance with the Supplemental Case Management Order and the Tenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  In addition, the Debtors will provide each party whose Cure Proposal is included on this Objection with a personalized Notice Of Objection To Cure Proposal which specifically identifies the party's Cure Proposal that is subject to this objection and the basis for such objection.  A form of the Notice Of Objection To Cure Proposal to be sent to the parties included in this objection is attached hereto as Exhibit E.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

37.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) disallowing the Non-Article 8 Cure Proposal identified on <u>Exhibit A</u>, (b) disallowing the Untimely Cure Proposal identified on <u>Exhibit B</u>, (c) disallowing the Cure Proposal filed by an improper third party at Docket No. 13065, (d) modifying and provisionally allowing the Books And Records Cure Proposals identified on <u>Exhibit C</u>, (e) provisionally allowing the Provisionally Allowed Cure Proposals as identified on <u>Exhibit D</u>, and (f) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         April 24, 2008

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

        - and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, <u>et al.</u>,
  Debtors and Debtors-in-Possession