UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
::::::::::::::::::::::::::::::::

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363 AND 1146 AND FED. R. BANKR. P. 2002, 6004, AND 9014 AUTHORIZING AND APPROVING (I) SALE BY DELPHI AUTOMOTIVE SYSTEMS LLC OF CERTAIN MACHINERY, EQUIPMENT, AND INVENTORY USED AT DEBTOR'S KETTERING FACILITY FREE AND CLEAR OF LIENS AND (II) ENTRY INTO LEASE AGREEMENT IN CONNECTION THEREWITH

("KETTERING SALE APPROVAL ORDER")

Upon the expedited motion, dated March 7, 2008 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363 and 1146 and Fed. R. Bankr. P. 2002, 6004, and 9014 (i) approving bidding procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale notices, (iv) setting a sale hearing date (the "Sale Hearing") in connection with the sale (the "Sale") of certain assets of Delphi Automotive Systems LLC ("DAS LLC" or the "Seller") comprising certain assets used in the U.S. damper business (the "Acquired Assets"), including, without limitation, the machinery, equipment, and inventory primarily used and located at DAS LLC's damper manufacturing facility in Kettering, Ohio for approximately $18.8 million and other consideration, as such purchase price may be adjusted based on Inventory Value (as defined below) at closing pursuant to the Asset Purchase Agreement, dated March 7, 2008 (the

"Agreement," a copy of which is attached hereto as <u>Exhibit A</u>), by and between the Seller and Tenneco Automotive Operating Company Inc. (the "Purchaser")[1] or to the party submitting the highest or otherwise best bid (the "Successful Bidder"), and (v) approving and authorizing the Seller to enter into the lease agreement attached to the Agreement as Exhibit A (the "Lease");[2] and the Court having entered an order on March 20, 2008 (the "Bidding Procedures Order") (Docket No.13188) (a) approving bidding procedures, (b) granting certain bid protections, (c) approving the form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held on April 30, 2008, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion and the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

    IT IS HEREBY FOUND AND DETERMINED THAT:[3]

    A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

[2] Further references throughout this order to the Agreement shall include the Lease and the terms thereof.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052.

  B. The statutory predicates for the relief sought in the Motion are sections 363 and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, and 9014.

  C. As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, and the Sale has been provided in accordance with 11 U.S.C. §§ 102(l) and 363 and Fed. R. Bankr. P. 2002, 6004, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, or the Sale is necessary.

  D. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Seller has marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order.

  E. The Seller has full power and authority to execute the Agreement and all other applicable documents contemplated thereby.  The transfer and conveyance of the Acquired Assets by the Seller have been duly and validly authorized by all necessary action of the Seller.  The Seller has all of the power and authority necessary to consummate the transactions contemplated by the Agreement and has taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for in the Agreement, are required for the Seller to consummate such transactions.

  F. The Seller has demonstrated (i) good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors

diligently and in good faith analyzed all other available options in connection with the disposition of the Acquired Assets and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Acquired Assets pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Acquired Assets.

        G.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Purchaser, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (vi) all entities known to have asserted any Liens (as defined below) in or upon the Acquired Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (viii) the United States Attorney's office, (ix) the United States Department of Justice, (x) the Securities and Exchange Commission, (xi) the Internal Revenue Service, (xii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")), and (xiii) such other entities as are required to be served with notices under the Supplemental Case Management Order.

  H. The Purchaser is not an "insider" of any of the Debtors as that term is defined in 11 U.S.C. § 101(31).

  I. This Sale Order and the consummation of the contemplated transactions are supported by good business reasons, and will serve the best interests of the Debtors, their estates and creditors by maximizing the values to be obtained from the Acquired Assets.

  J. The Agreement was negotiated, proposed, and entered into by the Seller and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Seller nor the Purchaser has engaged in any conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

  K. The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Agreement at all times after the entry of this Sale Approval Order.

  L. The consideration provided by the Purchaser for the Acquired Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Seller's stakeholders than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

  M. The Sale must be approved and consummated promptly to preserve the viability of the Kettering damper business as a going concern. The Sale is consistent with the terms of the First Amended Joint Plan of Reorganization Of Delphi Corporation And Certain

5

Affiliates, Debtors And Debtors-In-Possession, As Modified (as amended, the "Plan") confirmed by order of the Court on January 25, 2008 (the "Confirmation Order") (Docket No. 12359), and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

    N.  The transfer of the Acquired Assets to the Purchaser is a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title, and interest of the Seller to the Acquired Assets free and clear of any and all liens of any type whatsoever (including tax liens and any statutory or common law liens, possessory or otherwise), charges, pledges, security interests, conditional sale agreements or other title retention agreements, leases, mortgages, security interests, options, or other encumbrances (including the filing of, or agreement to give, any financing statements under the Uniform Commercial Code of any jurisdiction) and any monetary amounts which are secured by any lien, including but not limited to those (i) that purport to give to any party a right or option to effect any forfeiture, modification, right of first refusal, or termination of the Seller or the Purchaser's interest in the Acquired Assets, or any similar rights, and (ii) relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Kettering damper business prior to the transfer of the Acquired Assets to the Purchaser except as expressly provided in the Agreement (collectively, the "Liens").

    O.  If the Sale of the Acquired Assets by the Seller were not free and clear of any Liens as set forth in the Agreement and this Sale Approval Order, or if the Purchaser would, or in the future could, be liable for any of the Liens as set forth in the Agreement and this Sale Approval Order, the Purchaser would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P. The Seller may sell its interest in the Acquired Assets free and clear of all Liens because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied. All holders of Liens who did not object or withdrew their objections to the Sale are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2). Those holders of Liens who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f), and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an interest with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale.

Q. The transfer of the Acquired Assets to the Purchaser will not subject the Purchaser to any liability whatsoever with respect to the operation of the Kettering damper business prior to the Closing of the Sale or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1. The Motion is GRANTED.

### Approval Of The Agreement

2. Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3. Pursuant to 11 U.S.C. § 363(b), the Seller is authorized, but not directed, to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4. Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5. The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6. This Sale Approval Order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Seller, the Purchaser, the Seller, all successors and assigns of the Purchaser and the Seller (including the reorganized or reconstituted Debtors after the effective date of the Plan), all affiliates and subsidiaries of the Purchaser and the Seller, and any subsequent trustees appointed in the Seller's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection, and Seller's obligations (including but not limited to all post-closing obligations) under this Sale

Approval Order and the Agreement (including all exhibits, schedules, and ancillary agreements) shall survive discharge of claims under the Plan. To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

7. The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

<u>Sale And Transfer Of The Acquired Assets</u>

8. Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Acquired Assets shall be transferred to the Purchaser free and clear of all Liens, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Acquired Assets immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

9. The transfer of the Acquired Assets to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Purchaser with all right, title, and interest of the Seller in and to the Acquired Assets free and clear of all Liens of any kind or nature whatsoever.

10. If any person or entity which has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens on or against the Acquired Assets shall not have delivered to the Seller prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Acquired Assets, or otherwise, then (a) the Seller is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on or against the Acquired Assets of any kind or nature whatsoever.

11. This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Liens of any kind or nature whatsoever existing as to the Seller or the Acquired Assets being sold by the Seller prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

    12.  All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Seller or the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Kettering facility, the Acquired Assets, the operation of the Kettering facility prior to the Closing of the Sale, or the transfer of the Acquired Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Acquired Assets, such persons' or entities' Liens.  Nothing in this Sale Approval Order or the Agreement releases or nullifies any Liability to a governmental agency under any environmental laws and regulations that any entity would be subject to as owner or operator of any Acquired Assets after the date of entry of this Sale Approval Order.  Nothing in this Sale Approval Order or the Agreement bars, estops, or enjoins any governmental agency from asserting or enforcing, outside the Court, any Liability described in the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to obtain penalties from the Purchaser for days of violation of environmental laws and regulations prior to Closing.

Additional Provisions

    13.  The transactions contemplated by the Agreement, and the execution, delivery, and/or recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

14. The consideration provided by the Purchaser for the Acquired Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

15. Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring good and marketable title in the Acquired Assets to the Purchaser pursuant to the terms of the Agreement.

16. Upon the Closing of the Sale, each of the Seller's creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release its respective Liens against the Acquired Assets, if any, as such Liens may have been recorded or may otherwise exist.

17. Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

18. All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Acquired Assets to the Purchaser upon the Closing of the Sale.

19. The transactions contemplated by the Agreement are undertaken by the Seller and the Purchaser at arm's-length, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Acquired Assets shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith, within the meaning of section 363(m) of the Bankruptcy Code, of the Acquired and in accordance therewith.

20. The consideration provided by the Purchaser for the Acquired Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

21. The Seller, including, but not limited to, its officers, employees, and agents, is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this Sale Approval Order. The Seller shall be, and it hereby is, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Approval Order.

22. The terms and provisions of the Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Seller, its estate, and its stakeholders, the Purchaser, and its affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting a Lien in the Acquired Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

23.     Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of the Seller's estate, such as funds that are trust funds under any applicable state lien laws.

24.     The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

25.     This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Seller pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, (d) interpret, implement, and enforce the provisions of this Sale Approval Order, and (e) protect the Purchaser against any Lien against the Selling Debtor Entities or the Acquired Assets, of any kind or nature whatsoever, which Liens, valid and timely perfected, shall attach to the proceeds of the Sale.

26.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:  New York, New York
        ___, 2008

>                   _____
>                   UNITED STATES BANKRUPTCY JUDGE