```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                 :
     In re                                       :   Chapter 11
                                                 :
DELPHI CORPORATION, et al.,                      :   Case No. 05-44481 (RDD)
                                                 :
                              Debtors.           :   (Jointly Administered)
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

ORDER (I) SUPPLEMENTING JANUARY 5, 2007 DIP ORDER
(DOCKET NO. 6461) AND AUTHORIZING DEBTORS TO
(A) EXTEND MATURITY DATE OF DIP FACILITY, (B) ENTER INTO
RELATED DOCUMENTS, AND (C) PAY FEES IN CONNECTION THEREWITH
AND (II) AUTHORIZING DEBTORS TO ENTER INTO ARRANGEMENT WITH
<u>GENERAL MOTORS CORPORATION OR AN AFFILIATE</u>

("SECOND DIP EXTENSION ORDER")

Upon the motion, dated April 15, 2008 (the "Motion"), of Delphi Corporation (the "Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order supplementing January 5, 2007 DIP Order (Docket No. 6461) (as supplemented by the November 16, 2007 DIP Order (Docket No. 10957) (the "DIP Extension Order"), hereinafter referred to as the "DIP Order") and authorizing the Debtors to (i) extend the maturity date of DIP Facility,[1] (ii) enter into related documents, including an amendment and restatement of the First Amended and Restated DIP Credit Agreement (the "Second Amended and Restated DIP Credit Agreement," the form of which is attached hereto as Exhibit A; together with all other documentation executed in connection therewith, hereinafter referred to as the "Amendment

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Documents"), (iii) pay the fees in accordance with the Amendment Documents (the "Amendment Fees") and (iv) enter into an borrowing arrangement with General Motors Corporation or an affiliate; due and appropriate notice of the Motion, the relief requested therein, and the opportunity for a hearing on the Motion having been served by the Debtors in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered February 4, 2008 (Docket No. 12487), and no other or further notice being necessary; and the Court having held a hearing on the Motion on April 30, 2008 (the "Hearing"), and upon the record of the Hearing and after due deliberation and consideration, and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      This Court has core jurisdiction over these chapter 11 cases and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334.  Venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Motion is hereby granted in its entirety.

3.      The Amendment Documents are hereby authorized and approved, and the Debtors are hereby authorized, but not directed, to perform, and take all actions necessary to make, execute and deliver, all of the Amendment Documents with any other instruments

and documents in connection therewith, including, without limitation, to pay the Amendment Fees.  Upon execution and delivery of each of the Amendment Documents and such other instruments and documents, such instruments and documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with their respective terms.

        4.        Furthermore, the Debtors are hereby authorized to effectuate the extension of debtor-in-possession financing contemplated by the Amendment Documents, in their sole discretion, through an amendment, modification or restatement of the existing DIP Facility or through a new debtor in possession financing facility that refinances the existing DIP Facility, in either case with new or existing lenders, provided that such transaction is on substantially the terms and conditions contemplated by the Second Amended and Restated DIP Credit Agreement exhibited hereto as Exhibit A (as such terms and conditions may be modified in accordance with any fee letter entered into among Delphi and the Agent in connection therewith) (such modification, amendment or restatement of the existing DIP Facility, or new replacement debtor-in-possession financing facility, being referred to herein as the "Replacement DIP Facility"; and together with all other documentation executed in connection therewith, being referred to herein as the "Replacement DIP Facility Documents"), and, regardless of the form of the transaction, (a) the Replacement DIP Facility shall be considered the amended DIP Facility, (b) the credit agreement implementing the Replacement DIP Facility (the "Replacement Credit Agreement") shall be considered the "Second Amended and Restated DIP Credit Facility" and the First Amended and Restated DIP Credit Agreement, as amended and restated by the Amendment Documents, and (c) the Replacement DIP Facility Documents

shall be considered "Amendment Documents," in each case for purposes of this Order, and such documents shall be entitled to all of the rights, benefits, liens and priorities conferred on the Second Amended and Restated DIP Credit Facility and Amendment Documents under this Order.

5.     The Debtors have a need to obtain an extension or refinancing of their current financing under the terms set forth in the Amendment Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, or secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, without the continuation of the liens and claims granted pursuant to the DIP Order and incorporated by reference herein to secure the DIP Facility, as amended by the Amendment Documents (the "Second Amended and Restated DIP Credit Facility") and any obligations in respect thereof.

6.     The DIP Order shall be deemed supplemented by this order, and shall continue in full force and effect as supplemented hereby and by the DIP Extension Order (in each case including, without limitation, paragraph 6 of the DIP Extension Order). Without limiting the generality of the foregoing, (a) for all obligations and indebtedness arising under the Second Amended and Restated DIP Credit Facility, the Agent and the DIP Lenders and any other secured creditor granted rights under the DIP Order are each granted each and every right and remedy granted to such secured creditor under the DIP Order (the relevant provisions of the DIP Order being incorporated herein by reference), and (b) nothing herein shall adversely affect any of the rights and remedies granted to the Agent and the DIP Lenders or any other secured creditor under the DIP Order, which rights and remedies shall continue in full force and effect and shall be deemed applicable to the

Second Amended and Restated DIP Credit Facility to the same extent applicable to the DIP Facility.  Consistent with and not in any way limiting the generality of the foregoing, (a) the definitions of "DIP Credit Agreement" and "DIP Documents" contained in the DIP Order shall be deemed to include the Amendment Documents, as applicable, (b) the definition of "DIP Obligations" contained in the DIP Order shall be deemed to include all obligations and indebtedness arising under, in respect of, or in connection with the Second Amended and Restated DIP Credit Facility (including, without limitation, all "Obligations" as defined in the First Amended and Restated DIP Credit Agreement, as amended and restated by the Amendment Documents), and (c) all liens, security interests, priorities, and other rights, remedies, benefits, privileges, and protections provided in the DIP Order shall apply with equal force and effect to the amended DIP Facility and all obligations in connection therewith or related thereto.

7. The second sentence of Paragraph 6 of the DIP Extension Order is hereby amended in its entirety to read as follows:  "In addition, to the extent any similar replacement liens (including consensual liens) on Collateral (as defined in the DIP Order) are granted to the PBGC (the "Future PBGC Liens" and together with the Existing PBGC Liens, the "PBGC Liens"), the DIP Lenders, under the Amended and Restated DIP Credit Agreement, are deemed to consent to the granting of such liens, provided that such Future PBGC Liens shall be subject to the limitations set forth in the DASHI Intercompany Transfer Order with respect to the priority of PBGC liens relative to the liens granted to the Agent and the DIP Lenders."

8. Notwithstanding anything herein to the contrary, this order shall not modify the August 2, 2007 Order Authorizing and Approving Delphi-Appaloosa Equity Purchase

5

and Commitment Agreement Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) (Docket No. 8856), the December 10, 2007 Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Amendment (Docket No. 11382) (the "EPCA Amendment Order"), the Amended Investment Agreements (as defined in the EPCA Amendment Order), or any rights of the parties under any of the foregoing, including without limitation with respect to (i) the propriety, allowance, or payment of any unpaid Transaction Expenses or Post-Order Transaction Expenses or the timing thereof or (ii) the Delphi-GM Agreement (as defined below), as to which the rights of all parties are hereby expressly reserved.

9.    The Amendment Documents and the Delphi-GM Agreement have been negotiated in good faith and at arm's-length between the Debtors and the Agent and the Debtors and GM, respectively, and all of the Debtors' obligations under the Second Amended and Restated DIP Credit Agreement as authorized by the DIP Order and this order, including, without limitation, the obligation to pay the Amendment Fees, and under the Delphi-GM Agreement as authorized by this order, have been incurred in good faith as that term is used in section 364(e) of the Bankruptcy Code. In accordance with section 364(e) of the Bankruptcy Code, in the event that any or all of the provisions of this order, the DIP Order, any Amendment Document, or the Delphi-GM Agreement are hereinafter modified, amended, or vacated by a subsequent order of this Court or any other court, no such modification, amendment, or vacation shall effect the validity, enforceability, or priority of any lien (including any rights of setoff of GM or any GM Affiliates (as defined below) permitted by the Delphi-GM Agreement and this order) or claim authorized or

6

created hereby or thereby.  Notwithstanding any such modification, amendment, or vacation, any claim granted to the Agent and/or the DIP Lenders hereunder or under any DIP Document (as defined in the DIP Order) or to GM or any GM Affiliate hereunder or under the Delphi-GM Agreement arising prior to the effective date of such modification, amendment, or vacation shall be governed in all respects by the original provisions of this order, the DIP Order, the other DIP Documents (as defined in the DIP Order), and the Delphi-GM Agreement; and the Agent, the DIP Lenders, GM and the GM Affiliates as the case may be, shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and therein, with respect to any such claim.

10. A sound business purpose exists for the Debtors to enter into the Amendment Documents for purposes of the authorization and approval thereof pursuant to 11 U.S.C. § 363(b).

11. The Second Amended and Restated DIP Credit Facility and the provisions of this order shall be binding upon the Agent, the DIP Lenders, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and inure to the benefit of the Agent, the DIP Lenders, and the Debtors and their respective successors and assigns.

12. The Debtors are hereby authorized, but not directed, to execute, deliver and perform their obligations under an Agreement among Delphi, the other Debtors that are Guarantors under and as defined in the Second Amended and Restated DIP Credit Facility (the "GM Guarantors"), and GM, substantially in the form annexed as Exhibit B hereto (the "Delphi-GM Agreement").  Without limiting the foregoing, such authorization shall include authorization of Delphi pursuant to section 364(b) of the Bankruptcy Code to

7

receive advances of up to $650,000,000 pursuant to the terms of the Delphi-GM Agreement and pay any and all fees and expenses provided for by the Delphi-GM Agreement.  Upon execution of the Delphi-GM Agreement by the parties thereto, GM and its relevant Affiliates (as defined in the Delphi-GM Agreement, the "GM Affiliates") shall have (a) allowed claims with administrative expense priority pursuant to section 503(b)(1) of the Bankruptcy Code against Delphi and the GM Guarantors for all Obligations (as defined in the Delphi-GM Agreement, the "Delphi-GM Agreement Obligations") owing to GM or any applicable GM Affiliates and (b) all other rights under the Delphi-GM Agreement, including, without limitation, the ability to exercise the right to set-off and apply, subject to the terms of the Delphi-GM Agreement, any indebtedness or liabilities owing by GM or the GM Affiliates to or for the credit or the account of Delphi or the GM Guarantors against any and all Delphi-GM Agreement Obligations of Delphi or the GM Guarantors without need to seek additional modification of the automatic stay imposed pursuant to section 362 of the Bankruptcy Code and without further order of the Court.

13.     Notwithstanding anything to the contrary in the Delphi-GM Agreement, (a) neither GM nor any GM Affiliates shall exercise any Set-Off Right (as defined in the Delphi-GM Agreement) with respect to any Delphi-GM Agreement Obligations (i) against any amounts payable by GM or the GM Affiliates to or for the credit or the account of any of the Debtors under the Master Restructuring Agreement and the Global Settlement Agreement (as each such term is defined in the Delphi-GM Agreement) until the amendments to such agreements referred to in Section 5.03 of the Delphi-GM Agreement become effective and (ii) except with respect to any prepayments due and payable under Section 2.09 of the Delphi-GM Agreement, against any other amounts payable by GM or

8

any GM Affiliate to or for the credit or the account of any of the Debtors (or defer, delay or suspend the payment of any other amounts payable by GM or any GM Affiliates to or for the credit or the account of any of the Debtors) until after the DIP Termination Date (as defined in the Delphi-GM Agreement), and (b) until after the DIP Termination Date, the Debtors shall not make any payment to GM or any GM Affiliates with respect to the Delphi-GM Agreement Obligations (except (i) with respect to any prepayments due and payable under Section 2.09 of the Delphi-GM Agreement, whether in cash or through any Set-Off Right (as defined in the Delphi-GM Agreement) exercised by GM, (ii) interest to the extent paid in kind under Section 2.05(b) of the Delphi-GM Agreement, and (iii) any Delphi-GM Agreement Obligations paid through any Set-Off Right (as defined in the Delphi-GM Agreement) exercised by GM against amounts payable by GM or GM Affiliates to or for the credit or the account of any of the Debtors pursuant to the Global Settlement Agreement or Master Restructuring Agreement as permitted under the Delphi-GM Agreement).

14. In the event of any inconsistency between the provisions of this order and the DIP Order, the DIP Documents or the Delphi-GM Agreement, the provisions of this order shall govern.

15. This Court shall retain jurisdiction to enforce and implement the terms and provisions of the DIP Order, this order, the Second Amended and Restated DIP Credit Agreement, as amended, including pursuant to the Fourth Amendment and the Delphi-GM Agreement, in all respects.

16. Notwithstanding Bankruptcy Rule 6004(g) or any other provision of the Bankruptcy Rules or Bankruptcy Code, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

17. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:  April 30, 2008
        New York, New York

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE