DRAFT    ORIGINAL

```
 1                UNITED STATES BANKRUPTCY COURT
                  SOUTHERN DISTRICT OF NEW YORK
 2     ----------------------------------------X
       In re:                                    05-44481
 3     DELPHI CORP.
       MOTION                                    One Bowling Green
 4                                               New York, New York
                                                 April 18, 2008
 5     ----------------------------------------X
           HEARING RE [MOTION TO AMEND COMPLAINT]
 6                        [DRAFT]
            BEFORE THE HONORABLE JUDGE DRAIN
 7               US BANKRUPTCY COURT JUDGE
 8

 9     APPEARANCES:
       For the Debtor:          JOHN K. LYONS, ESQ.
10                              LISA DIAZ, ESQ.
                                Skadden, Arps, Slate,
11                               Meagher & Flomm, LLP
                                333 West Wacker Drive
12                              Chicago, IL  60606

13                              DEAN UNRUE
                                Delphi Claims Admin.
14
                                ERAN GERSHBEIN
15                              KCC, Delphi Claims Agent

16     For the City
       of Dayton, Ohio:         G. CHRISTOPHER MYER, ESQ.
17                              Squire Sanders & Dempsey, LLP
                                4900 Key Tower, 127 Public Square
18                              Cleveland, Ohio  44114

19     For creditors committee: JUDE GORMAN, ESQ.
                                Latham & Watkins
20                              885 3rd Avenue, Suite 1000
                                New York, NY  10022
21
       Court Transcriber:       BRENTON GRAY
22

23                     REGENCY REPORTING, INC.
                  Certified Court Reporters & Videographers
24          425 Eagle Rock Avenue      575 Madison Avenue
            Roseland, NJ 07068         New York, NY 10022
25           www.regencyreporting.net    1-866-268-7866
```

1               I N D E X

2   SPEAKER:                                    Page

3   THE COURT:                                    3

4   LYONS:                                        3

5   MYER:                                         4

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1       COURT: This is Delphi Corporation.

2       MR. LYONS: Good morning Your Honor, John Lyons on

3   behalf of the debtor and this is our 22nd claims hearing.   We

4   have submitted an agenda to the Court.

5       Today we only have one contested matter; all the

6   other matters have either been adjourned or resolved.

7       So before we turn the matter over to Counsel for

8   the City of Dayton, if Your Honor has any questions.

9       COURT: So the one matter involving the employee was

10  resolved?

11      MR. LYONS: Yes, it was Your Honor.

12      COURT: Okay.

13      MR. LYONS: He will be submitting stipulation

14  expunging, having the claim expunged and the response withdrawn

15  with prejudice.

16      COURT: All right, Ill look forward to seeing that.

17      MR. LYONS: Then at the conclusion of the hearing

18  Your Honor I figured Id give you a very brief update where we

19  are in claims, what we anticipate through the rest of the

20  summer, we will be continuing to fully liquidate and resolve

21  claims, although we are obviously at the end  towards the end

22  of the process rather than in the middle.   But I wanted to give

23  Your Honor a quick update on where we stand.

24      COURT: Okay.   So why dont we then turn to Daytons

25  motion.

1       MR. LYONS: Very good.

2       MR. MEYER: Good morning Your Honor, Im Christopher

3  Myer of Squires Sanders and Dempsey.  I am here today on behalf

4  of the City of Dayton, Ohio, in support of its motions

5  alternatively to reconsider an order disallowing the claim, or

6  to permit the filing of a late claim.

7       I thought I would begin with a short review of the

8  circumstances that have brought us here this morning.

9       When the debtors filed their schedule of assets and

10  liabilities Dayton was listed several times, but was listed

11  without amount and shown as contingent, unliquidated and

12  disputed.

13      After the cases were commenced, July 31 was

14  established as the deadline for the filing of prepetition

15  proofs of claim.

16      Thereafter, in October of 2006, the debtors filed

17  an amended 2002 tax return for income taxes owing to the City

18  of Dayton.  While the original return had reported a loss, the

19  amended return showed taxable income and a tax due in the

20  amount of $341,023.

21      Delphi noted in its amended return that it was in

22  Chapter 11 and according would not be paying since this was a

23  prepetition obligation.

24      Within 30 days of receiving that amended return,

25  the City of Dayton submitted a proof of claim for those taxes.

1    The proof of claim was filed in the amount reported in the

2    return by Delphi for the taxes due, plus applicable interest

3    for a total of $427,534.

4            In April of 2007 debtors objected to Daytons claim

5    in their 13th omnibus objection based on the fact that the

6    claim was filed after the July 31, 2006 bar date.

7            Dayton did not respond to the debtors objection and

8    on June 6, 2007 this Court entered an order disallowing Daytons

9    claim.

10           Approximately 60 days later on August 7, 2007,

11   Dayton sent the debtors a letter reminding of their unpaid 2002

12   taxes, and filed a second proof of claim for the identical

13   amount of $427,534.

14           In February of 2008, the debtors objected to that

15   second claim in their 26th omnibus objection on the basis that

16   it was late filed.

17           We were contacted by Dayton after they received the

18   debtors 26th omnibus objection.  In our response to the

19   objection we asked alternatively either that the objection be

20   denied or that the Courts order disallowing the 2006 claim be

21   reconsidered and set aside.

22           Thereafter, we received notice from the debtors

23   advising us of the protocol that required the filing of a

24   motion for permission to file a late proof of claim.  We filed

25   that motion and the debtors have objected.

1        We are thus here asking the Court to permit either

2   the first claim filed in 2006 or the second claim filed in

3   2007, notwithstanding their late filing and notwithstanding the

4   Courts order disallowing the 2006 claim.

5        The standards that apply to the relief that we are

6   requesting are primarily excusable neglect.  We note that under

7   Bankruptcy Rule 7055 a default judgment may be set aside either

8   for good cause or under Bankruptcy Rule 9024, which

9   incorporates Rule 60(b) of the Federal Rules of Civil Procedure

10  and thereby picks up the excusable neglect standard.

11       Similarly, Rule 3008 authorizes reconsideration of

12  orders disallowing claims and provides that the Court may enter

13  an appropriate order.

14       In either event we are asking the Court for the

15  exercise of its equitable powers to permit a claim by the City

16  of Dayton.

17       The standards applicable are those set forth in the

18  Supreme Courts Pioneer decision, excusable neglect first

19  requires a consideration of whether the failure was the result

20  of neglect as opposed to knowing and willful conduct and

21  neglect suggest mistake, negligence or carelessness as opposed

22  to deliberate action.

23       The Courts then go on to examine whether under all

24  the circumstances applicable that neglect should be deemed

25  excusable.   We recognize that the Courts in this Circuit have

1    taken a firm line in applying the Supreme Courts Pioneer

2    standards, however, we believe that this case presents facts

3    that justify a finding of excusable neglect.

4            Courts in this circuit have focused on the reason

5    for delay as the most important element in determining

6    excusability.  In this case, the timing of Daytons 2006 filing

7    was exclusively a function of the timing of the debtors amended

8    tax return.  Until the filing of that return, Dayton had no

9    basis to believe that it had a claim for 2002 taxes. The

10   amended return was not filed until a year after the

11   commencement of the proceedings and more than two months after

12   the July 31 bar date.

13           Within 30 days Dayton filed its 2000...

14           COURT: Im sorry, is it Daytons practice in

15   bankruptcy cases not to file proof of claim unless the debtor

16   files a tax return?

17           MR. MEYER: I think unless they believe that there

18   is a basis for a tax obligation Your Honor, if the original

19   return showed a loss and therefore no tax they had no reason to

20   believe that a claim would be appropriate.

21           COURT: So Dayton doesnt routinely file a protective

22   proof of claim?

23           MR. MEYER: I dont believe that they do.  It is not

24   my understanding that they do Your Honor.

25           COURT: What is that based on?

1    MR. MEYER: Conversations with the legal department

2 at Dayton.

3    COURT: Okay.

4    MR. MEYER: Once appraised of the potential claim

5 Dayton did not sit for an extended period of time before filing

6 the 2006 claim.

7    Now, admittedly, Dayton did not respond as required

8 to the debtors 13th omnibus objection.  That failure resulted

9 in this Courts order disallowing the claim.  However, I would

10 ask the Court to recognize the difficulty for an individual

11 creditor in reviewing and responding to pleadings in a case of

12 this scope and complexity.

13    The listings of claims covered in the 13th omnibus

14 objection extend for more than 150 pages.  It was just one of

15 13 objection filed in this case to that date and we are now at

16 26, as Your Honor is aware.

17    The Dayton claims were filed by non lawyer

18 personnel...

19    COURT: But there is an affidavit submitted by Mr.

20 Gershbein that Dayton got individualized notice, which is the

21 requirement under...

22    MR. MEYER: I do understand and the presumption that

23 applies from that.  Dayton is not aware of receiving notice,

24 but they cannot say affirmatively that they did not, they can

25 only say that they didnt realize that they were served.  And I

1    do recognize the presumption.

2         The Dayton claims were filed by non lawyer

3    personnel.  They simply failed to recognize the significance of

4    the pleadings that had been received.

5         A secondary question is the impact of a late claim

6    filing on the debtors case.

7         COURT: Can I - before we get to that.

8         MR. MEYER: Sure.

9         COURT: Is there anyone for the City of Dayton or

10   its legal department that is designated to deal with bankruptcy

11   issues, bankruptcy claims?

12        MR. MEYER: It is handled by the finance department

13   in their tax collection area, so I dont know whether they are

14   officially designated, but thats who does it.

15        COURT: But Im assuming that Dayton has experience

16   in dealing with bankruptcy notices and the like?

17        MR. MEYER: I assume that they must have some Your

18   Honor.

19        COURT: Do they have - when a company or an

20   individual like Delphi goes into bankruptcy, is someone given

21   responsibility for...

22        MR. MEYER: I cant answer that Your Honor.  I dont

23   know that.

24        COURT: Okay.  The people who were in charge of this

25   matter in terms of responding to notices of filing claims, did

1    they have any  why were they assigned the matter?

2              MR. MEYER: Because of their assignment to that

3    particular part of the finance section of the City of Dayton

4    where tax collections are handled.

5              COURT: But does that include dealing with

6    bankruptcy issues?

7              MR. MEYER: It must Your Honor, because they filed

8    the proof of claim.  I cant tell you that there is a specific

9    person identified or assigned.  But it is in the proof of

10   claim, it is a lady in the finance department who filed both

11   the 2006 and the 2007 claims.

12             COURT: Okay.

13             MR. MEYER: In terms of the impact on the debtors

14   Chapter 11 cases, we dont believe it can be said in this

15   instance that allowing a Dayton claim would operate to the

16   debtors prejudice.

17             This is not a claim that came out of the woodwork

18   to the surprise of the debtors.  The debtors acknowledged their

19   liability for these taxes in their amended 2002 return. The

20   2006 claim and the 2007 claim both put the debtors on notice of

21   Daytons assertion of liability.

22             A claim by Dayton for these taxes has been on file

23   for virtually the entire period since November 2006, shortly

24   after the filing of the ended 2000 return.  The first claim was

25   on until June of 2007, the second claim was filed in August

1    2007 and remains on today.

2            The 2007 claim was on file throughout the period

3    leading up to the confirmation of the Delphi plan, so as a

4    result it was within the scope of claims contemplated at the

5    time of confirmation.

6            COURT: Say that again?

7            MR. MEYER: Well, the claim was on file so when

8    Delphi was confirming its plan it was aware of that file claim.

9            COURT: But there was also an order disallowing

10   anything.

11           MR. MEYER: Well, the 2007 claim there was not Your

12   Honor, thats the one that was objected to in February.

13           COURT: Okay, but it is really the same claim, isnt

14   it?

15           MR. MEYER: Its an identical claim on the issue,

16   yes.

17           COURT: Okay.

18           MR. MEYER: In its objection to our motion the

19   debtor suggested Dayton should have promptly filed a motion to

20   reconsider the order disallowing the 2006 claim.

21           We have two difficulties with that assertion. First

22   it assumes that Dayton promptly recognized the disallowance of

23   the 2006 claim following this Courts order in June of 2007.   In

24   the letter that is part of the 2007 claim there is no

25   indication that that was the case.

1           COURT: But again, Mr. [Fishpons] affidavit says

2    that

3           MR. MEYER: It was served.

4           COURT: No, not only that it was served but a notice

5    of the order was served.

6           MR. MEYER: Yes, thats what I was referring to, yes.

7           COURT: I mean, so that

8           MR. MEYER: That there was a notice served on the

9    City of Dayton.

10           COURT: Of the entry of the order.

11           MR. MEYER: Yes Your Honor.

12           COURT: Okay.

13           MR. MEYER: The letter included as a part of the

14    2007 claim, there is no indication that they knew that their

15    claim had been disallowed, the letter is more in the nature of

16    a reminder on an unpaid debt than an acknowledgment of a prior

17    disallowance.

18           Second, and perhaps more importantly

19           COURT: Sorry, where is this letter?

20           MR. MEYER: It is in Exhibit 4 Your Honor.

21           COURT: Thats the joint exhibit book?

22           MR. MEYER: Yes, and it would be the page

23    immediately after the first page which is a letter dated August

24    6.

25           COURT: So this was attached to the proof of claim?

1          MR. MEYER: Yes, it was.

2          COURT: Well, if Dayton didnt know that the first

3  claim was disallowed why would they file a second claim?

4          MR. MEYER: It has been my experience Your Honor

5  that a number of taxing authorities refile claims throughout

6  the case from time to time based on periodic activity within

7  the taxing authority.  So I looked for any indication and asked

8  about any indication of was this filed in specific reaction to

9  disallowance and I have none.

10         This appears to have been  I mean, they were

11  talking about you should pay the balance within 15 days, so

12  this is a general practice as opposed to a specific response.

13         COURT: But thats making a demand on a prepetition

14  claim to pay within 15 days, which doesnt make any sense

15  either.

16         MR. MEYER: I agree that

17         COURT: And its a (multiple speakers).

18         MR. MEYER: This is not a sophisticated creditor.

19  This is a public body and I agree that the idea of suggesting

20  payment of a prepetition claim within 15 days makes no sense in

21  view of the automatic stay.

22         COURT: Well, didnt the  I mean, the proof of claim

23  is received on the 13th, so Im assuming that this letter went

24  with the proof of claim, right, it is contemporaneous with the

25  second proof of claim?

1          MR. MEYER: Yes, it is.  The second proof of claim

2    was dated August 6 and it indicates that it was mailed August 7

3    and the letter is August 6.

4          COURT: Okay.

5          MR. MEYER: The other reason it would have been

6    well, the other reason for the difficulty and the suggestion

7    that Dayton should have filed an immediate request for

8    reconsideration is that that calls for a lawyers response, that

9    is a legal response to the order, and Daytons personnel

10   involved were non lawyers.

11         Once Dayton contacted counsel in 2008 we promptly

12   filed exactly the motion that the debtors suggested was needed

13   and that motion was within the one year period for motions

14   contemplated by Rule 60(b).

15         Lastly, the debtors objection to our motion to file

16   for permission to file the 2007 claim late suggests that the

17   Court should refuse to allow that filing on the basis of res

18   judicata.  Res judicata is a doctrine that is designed to

19   prevent the Court and the parties from relitigating issues that

20   have already been litigated to conclusion, where parties have

21   the opportunity  it presupposes the existence of a decision on

22   the merits.

23         Here the Courts order disallowing the 2006 claim

24   was a default judgment for lack of response, so there wasnt any

25   determination on the merits in any significant sense.

1       COURT: Okay, but that rule is clear on res

2   judicata, a default judgment [17:50] res judicata?

3       MR. MEYER: I was suggesting that as a part of the

4   second claim it shouldnt be applied because there was never a

5   determination.

6       COURT: But why, do you have any authority for that?

7       MR. MEYER: I dont Your Honor.

8       COURT: I mean, the basis for res judicata is the

9   first order, right?

10      MR. MEYER: Thats the basis argued for res judicata,

11   thats correct.

12      COURT: And the law is clear, if issue is joined and

13   there is default judgment that counts as res judicata, right?

14      MR. MEYER: Well, here in one sense Your Honor the

15   issue was not joined and there was no response whatsoever to

16   that

17      COURT: But thats a default judgment.

18      MR. MEYER: That is a default judgment.

19      COURT: Okay.  I dont - well, okay.  Is there any

20   case law to support that?

21      MR. MEYER: Well, I believe that there may be some

22   Your Honor, in the two days since receipt of the debtors

23   response before the hearing I dont have any to offer.

24      COURT: You did take a look at the opinion by Judge

25   Walker in EDP Medical Computers that they recited?

1         It says, and Ive cited this same law frequently,

2    that where he cites [Morris] versus Jones from 1947, 329 US

3    545, A judgment of the Court having jurisdiction of the parties

4    and of the subject matter operates its res judicata in the

5    absence of fraud or collusion even if obtained upon a default.

6         MR. MEYER: I understand.

7         COURT: Okay.

8         MR. MEYER: This case is a large and complicated

9    Chapter 11 and there are thousands of claims and sophisticated

10   procedures designed to deal with those claims efficiently.

11        My client in contrast is a relatively

12   unsophisticated public body and it failed to negotiate those

13   procedures.  There is no way of getting around that fact.

14        However, we dont believe that the first filing was

15   the late filing of the 2006 claim was a function of any sort

16   of neglect, because it was a function rather of having no

17   indication whatsoever that a claim obligation was owed.  Had

18   the debtors amended their schedules after filing the amended

19   return we may never have been here this morning.  It is also

20   possible that they would have concluded that there was a

21   justification.

22        However, when my client was put to the task of

23   responding to the objection they failed to respond as required.

24        We dont believe the debtors have been prejudiced,

25   they have been aware of the asserted liability throughout the

1   case.  We also dont believe that this is a situation where

2   there is a risk of opening the floodgates for similar requests

3   by others.  This case presented unique circumstances and can

4   be handled as such. We believe that there is ample authority to

5   satisfy the order disallowing the 2006 claim using either the

6   for cause standard of Rule 7055 or the excusable neglect

7   standard of Rule 60(b) by way of Rule 9024.

8          Alternatively we believe the Court can permit the

9   filing of the 2007 claim after the bar date using the same

10  excusable neglect standard.

11         We ask only that Dayton be permitted to recover on

12  what was an acknowledged tax obligation by Delphi,

13  notwithstanding their prior failure to correctly navigate the

14  procedural process for claims objections in this case.

15         COURT: Is there any authority dealing with

16  comparable situations where a debtor scheduled a claim that

17  said it was a zero amount or contingent on liquidated and then

18  later amended its tax return or...

19         MR. MEYER: I didnt find any Your Honor.

20         COURT: Okay.

21         MR. MEYER: Thank you.

22         MR. LYONS: Good morning.  Just a few points, I

23  think the presumption of service, I believe there is really

24  nothing at issue there.  We do have Mr. Gershbeins affidavit

25  and he did testify in his affidavit that service of the

1    personalized notice was made.

2            COURT: And this is in the Exhibit binder.  The

3    parties have agreed that these Exhibits are admitted?

4            MR. LYONS: Yes, as a threshold matter we have a

5    joint mutually agreed Exhibit binder.  And we introduced Mr.

6    Gershbeins affidavit for evidentiary purposes.

7            COURT: Okay.

8            MR. LYONS: So threshold Your Honor, its

9    uncontested.  The presumption of service has been unrebutted,

10   so they did receive both personalized notices.

11           And quickly, to address the late claim issue. Your

12   Honor, I think it is very well settled that res judicata does

13   apply to bar of the late claim.  That wouldnt prohibit them to

14   seek reconsideration of the order expunging the first claim,

15   but again, you cant lose  in a judicial proceeding have a

16   judgment entered against you and then just go ahead and file

17   another proof of claim alleging the same matter.  I mean, for

18   obvious reasons that would turn judicial economy on its head.

19   So Im not going to spend much time on that point.

20           Turning to the standards which I believe apply

21   under American Alliance and Pioneer, which are the two lines

22   Your Honor has looked at in a situation here where you have an

23   order expunging a claim.  At the threshold matter, Your Honor

24   the issue is not whether the first proof of claim, whether they

25   could have obtained relief from this Court to file the first

1    proof of claim, rather the issue is whether they have an

2    appropriate basis to vacate the order expunging the claim.

3            Again, we did have a late claim that was filed

4    pursuant to our omnibus objections, we objected that late

5    claim, they did not respond and Your Honor entered an order

6    expunging the claim.

7            So again, I think the focus Your Honor should have

8    is on whether or not they should  that Your Honor should vacate

9    its previous order expunging the claim.

10           And in looking at that issue Your Honor, youve

11    looked at American Alliance which has a number of requirements,

12    but the one requirement which I know Your Honor has highlighted

13    in the past is whether or not the failure to seek

14    reconsideration was willful.

15           Here Your Honor there is no evidence in the record

16    from the City of Dayton who this person was in the treasury

17    department.  We have heard from counsel that they do have a

18    legal department inside the City of Dayton, so certainly they

19    do have a legal process to view judicial notices and orders.

20           So we do know that the City of Dayton does act with

21    counsel when it makes these decisions.

22           Your Honor, I think the late claim that was filed

23    in August is very strong evidence that they did act willfully,

24    that they did receive the order.  Once they received the order

25    that precipitated the City of Dayton to just go ahead and file

1    another late claim, instead of seeking a reconsideration.    I

2    think it actually cuts against them on the issue of whether or

3    not they acted willfully in just deciding not to seek

4    reconsideration of the order expunging their claim.    I think

5    thats very probative evidence that they did file that late

6    claim.

7         The other factor in American Alliance, the

8    floodgates argument.    Clearly the integrity of Your Honors

9    orders expunging claims are relied upon by the debtors in

10   making its various calculations under the plan and designing

11   this plan.    Also by the constituents who are again working with

12   us in this claims administration process and looking at our

13   business plan.

14        Now, Your Honor, as we mentioned in our papers,

15   this is not a claim that would impact [EPCA] because its a

16   priority claim, but nonetheless priority tax claims are fully

17   considered in formulating our liquidity needs under a plan of

18   reorganization and therefore certainly any additional

19   unanticipated late claims that could arise would have an

20   adverse effect on being able to formulate and execute our

21   business plan.

22        Looking at Pioneer, length of delay.    The City of

23   Dayton did wait nine months before seeking relief from Your

24   Honors order expunging the claim.    During that period of time

25   Your Honor confirmed the plan of reorganization.    There were

1    some intense negotiations between constituents who were very

2    closely examining the claims register and the claims database

3    and what was out there.  It was the length of delay occurred

4    during a period of very critical plan negotiations.

5              The reason for the delay, Your Honor, there is

6    nothing in the record to show that somehow it was beyond the

7    City of Daytons control to seek reconsideration.  So Dayton has

8    submitted nothing on that.

9              The other Pioneer factor, good faith.  Your Honor,

10   they filed a late claim instead of seeking reconsideration.

11   They may well have thought theyd just put in another late claim

12   and hope that wed pay it.  So although there is nothing [27:46]

13   good faith, I think that could cut against them on that point.

14             And finally again, you know, just the danger of

15   other claims coming in and having the integrity of Your Honors

16   prior orders questioned would be very deleterious to the

17   estates.

18             Unless Your Honor has any other questions, we

19   believe that the City of Daytons motion should be denied.

20             COURT: Let me ask you the flipside of the question

21   I asked Daytons counsel.

22             I assume that Daytons wasnt the only prepetition

23   tax liability that was scheduled as contingent on the zero

24   dollar amount?

25             MR. LYONS: Thats correct.

1     COURT: Do you know whether the debtors got proofs

2   of claim from those taxing authorities?

3     MR. LYONS: I can check with my client, but Im

4   certain we received hundreds of tax claims Your Honor in this

5   case, that we have resolved and reconciled and negotiated.

6     And again, under the bar date order, because it was

7   scheduled as contingent disputed, the bar date notice said you

8   must file a proof of claim if you want your claim to be

9   preserved.  So that was mandatory.

10     COURT: Do you want to talk to your client for a

11   second?

12     MR. LYONS: Sure.  Mr. Unrue has confirmed he is

13   here if you have questions directly that hundreds of taxing

14   authorities filed protective claims that were in essence

15   protective claims based upon the contingent disputed nature

16   that were on our schedules.

17     COURT: Do you want to cross-examine Mr. Unrue on

18   that point?

19     MR. MEYER: No Your Honor.

20     COURT: Okay.  Is it the debtors practice generally

21   with regard to such claims to simply file a tax return as

22   opposed to amending the schedule?

23     MR. LYONS: Let me confirm with Mr. Unrue.

24     Your Honor, here is the process for a situation

25   such as this.  The tax department would file returns as it

1    normally would, it would file amended returns as it normally

2    would in the ordinary course.  However, when you link that to

3    the claims database there would have to be a claim that was

4    filed in response to the schedules for  I mean, to answer your

5    question precisely, I dont

6         COURT: You would not amend the schedule unless

7    there had been a claim?

8         MR. LYONS: We wouldnt amend the schedules, what we

9    would do is when the taxing authority would file an amended

10   claim and if we agreed with that amended claim we would then

11   not challenge it, because the amendment would relate back to

12   the time we filed protective claim.  And thats the way weve

13   been dealing with tax claim.

14        But if the claim - but if there never was a timely

15   claim and then there is a late claim, it would go on the

16   omnibus objection.  If they would respond obviously we would

17   talk to them to see if they had reasonable grounds to delay the

18   filing based upon our amendment and we would negotiate this.

19        But here, there was no response, the claim was

20   expunged and so the claim was valued at zero once the order -

21   once we had Your Honors order and the claims database reflected

22   a zero liability for this claim.

23        COURT: Okay.  Do you want to cross-examine Mr.

24   Unrue on that?

25        MR. MEYER: No Your Honor.

1            COURT: Okay.  And you were relating what Mr. Unrue

2    just told you?  That was essentially  that is a proper of what

3    he would say?

4            MR. LYONS: Yes, I would submit that as evidence

5    from Mr. Unrue.

6            COURT: Anything else?

7            MR. MEYER: Two things briefly Your Honor.

8            First, Mr. Lyons asked the Court to draw a

9    conclusion from the timing of the 2007 proof of claim.  He did

10    that based only really on when it occurred.

11            What I suggested to Your Honor was to look at what

12    occurred and to look at the letter that was sent and we think

13    that shows that there is no cognizance of a disallowed claim.

14    They are in fact talking about a regular collection procedure

15    on what they view as a delinquent tax liability.

16            Plainly, in terms of the schedules, I think it

17    would be one circumstance if there had never been a tax return

18    filed and a taxing authority was shown as contingent,

19    unliquidated, [and disputed or undisputed? 00:33:47].  Because

20    there is an open question that remains unanswered and the

21    filing of a protective claim would be a logical response to

22    that.

23            Here we had something different.  We had the

24    affirmative filing of a return that showed no liability and

25    what Daytons failure was, was to assume that that was a correct

1    state of affairs and not to file the claim, in effect in

2    contravention of the return that was then in its files.

3            COURT: But the schedules did show - they did list a

4    claim as

5            MR. MEYER: They listed the City of Dayton a number

6    of times and all with zero amounts and contingent,

7    unliquidated, [and disputed or undisputed? 00:34:28].  So there

8    were a number of listings but there was nothing directly

9    referencing a particular type of tax or a particular tax.

10           COURT: But they were all listed as contingent,

11   unliquidated [and disputed or undisputed? 00:34:43], at zero

12   dollars?

13           MR. MEYER: Im sorry?

14           COURT: At zero dollars?

15           MR. MEYER: Yes, I think they were listed perhaps 14

16   times and I believe there was one that was not, but that was a

17   different issue.

18           COURT: Okay.

19           MR. MEYER: Thank you Your Honor.

20           COURT: Thank you.

21           MR. LYONS: Very, very briefly Your Honor?

22           COURT: Yes.

23           MR. LYONS: The letter was attached to a proof of

24   claim, it makes not sense.  Does Dayton file a proof of claim

25   every three months until it gets paid?  I mean, it makes no

1    sense.

2         Why would they go to the point of filing a new

3    proof of claim unless they were aware of some order expunging

4    the previous proof of claim?  It doesnt make sense that a City

5    is going to file serial proofs of claim until they get paid.

6         COURT: All right.

7         I have before me a motion which is dated March 31,

8    2008 by the City of Dayton, Ohio, requesting authority to file

9    a claim after the bar date.

10        The facts as they appear to me from the record of

11   this hearing, including the four exhibits jointly introduced

12   into evidence, are that the debtors in these cases obtained an

13   order from the Court in 2006 that established a bar date for

14   filing prepetition or claims in respect of - Im sorry, for

15   filing proofs of claim in respect of prepetition claims,

16   including priority tax claims.

17        The bar date was July 31, 2006.  As is typical of a

18   bar date order the order provided, and there was notice to

19   claimants explaining this provision, that if a claimant

20   believes that it has a valid and allowable prepetition proof of

21   claim it must file proof of claim by the bar date in a number

22   of circumstances, including where the debtor has scheduled on

23   its schedules the proof of claim that is contingent, disputed

24   or unliquidated.

25        There is no dispute that Dayton received notice of

1    the bar date.  It filed a proof of claim with respect to

2    prepetition tax liability, however, on November 10, 2006,

3    roughly 3.5 months after the bar date, consistent with the

4    claim objection procedures that I approved in this case where

5    there were thousands of potentially disputed claims, over

6    16,000 having been filed, the debtors filed an objection to

7    Daytons proof of claim.  The proof of claim was given the

8    number 16404.

9           The record contains the affidavit of Mr. Gershbein

10   from the debtors claim agent in which he states that the claim

11   agent, Kurtzman Carson Consultants, KCC, served copies of the

12   13th omnibus claims objection, which included the objection to

13   the Dayton claim on the basis that the claim was late after the

14   bar date, without exhibits, as well as a personalized notice of

15   objection to claim pertaining to Daytons claim, Claim No. 16404

16   by first class mail at the address listed on the proof of

17   claim.

18           In the following paragraph of his affidavit,

19   paragraph 5, he states that on May 10, 2007 KCC filed with the

20   Court an affidavit of service with respect to KCCs service of

21   the 13th omnibus claims objection and a specialized

22   personalized notice.  The service information for Dayton

23   appears on Exhibit E of the affidavit of service on page 283

24   and that has a cross-reference to the exhibit of the omnibus

25   objection, Exhibit D2, which referenced the objection to the

1 Dayton proof of claim.

2        The Court, in approving the claims procedures,

3 required, knowing that the debtors would be making a number of

4 omnibus objections that would cover many claims in each

5 objection, that the debtors provide, in addition to the

6 objection and the exhibit to the objection, individualized or

7 personalized notice to each claimant whose claim was objected

8 to so that there could be no issue that the claimant didnt

9 understand that the omnibus objection was objecting to, among

10 other claims, its claim.

11        It had been the Courts experience that such issues

12 in the past had arisen with omnibus claim objections where

13 there was not personalized notice, since at times the exhibit

14 would be either hard to read or would list the clearly in a

15 slightly different form than - or even in a simply different

16 form than the clearly normally thought of itself.

17        The personalized individualized notice was intended

18 again to eliminate that basis for confusion, which subsequently

19 was recognized when the Bankruptcy Rules were amended in

20 respect of omnibus objections.

21        In response to the omnibus objection Dayton

22 apparently took no action of which the debtors were aware.  It

23 did not certainly object to the omnibus objection to its claim.

24        Accordingly, at the hearing on the omnibus

25 objection the Court entered an order disallowing the claim

1    based upon the prima facie showing in the omnibus objection

2    that the claim was late and therefore disallowable under the

3    bar date order, and given the lack of opposition.

4              That result is certainly in this case not unique

5    to Dayton.  That has been the result in respect of thousands

6    of claims that were objected to pursuant to omnibus objections

7    under the claims procedures order, where there was no response

8    either informal or formal.

9              Where there has been a response, either informal

10   or formal, the debtors have routinely as part of the claims

11   procedures removed the claimant from the omnibus objection and

12   that claim has then fallen into the contested track of the

13   claims procedures, which then contemplates a series of steps,

14   including in respect of substantial claims, and a $427,000

15   claim is a substantial claim I believe, exchange of data,

16   mediation, potential and then ultimately a contested claim

17   process on the merits before the Court.

18             Without those procedures and without relying upon

19   the absence of an objection, the claims procedures which have

20   resulted in approximately 9,000 claims having been resolved on

21   a non objected to basis, simply wouldnt work and the debtors

22   would not be able, in the manner they have done, to have

23   efficiently dealt with the tens of thousands of claims

24   asserted against them which they contest.

25             The Court entered the order disallowing Daytons

1    claim on April 27, 2007.   Im sorry, excuse me.   The motion was

2    filed, or the omnibus objection was filed on April 27, 2007.

3    There being no objection the Court entered the order

4    disallowing the claim on June 6, 2007.

5            As Mr. Gershbein states in his affidavit, and

6    again consistent with the claims procedures approved by the

7    Court, two days later on June 8, Kurtzman Carson Consultants

8    served that order disallowing Daytons claim on Dayton at the

9    same address as listed in the proof of claim.

10            Dayton did not file or request for rehearing or

11    reconsideration under Bankruptcy Rules 9024 or 9023 and

12    Federal Rules 59 or 60.   Instead, it appears that the next

13    step taken by Dayton was to file a second proof of claim,

14    which is identical except for the date to the first proof of

15    claim.

16            The second proof of claim has the number 16440.

17    That was set out it appears on August 7, roughly two months

18    after the order was sent to Dayton and received, based on the

19    file stamp, on August 13.

20            Attached to the proof of claim itself is a letter

21    addressed to Delphi Automotive Systems from the Division of

22    Revenue and Taxation of the City of Dayton stating that We

23    have notified you that your amended City income tax for the

24    tax year listed has not been fully paid, indicating the amount

25    listed on the tax return and the balance due, those two being

1   different based on $86,500 and change of interest, and

2   stating, "That you should pay the balance due within 15 days".

3          The proof of claim is a claim for a prepetition

4   claim, so obviously the statement 'that you should pay the tax

5   due within 15 days' is unenforceable and if said in any way

6   other than pursuant to a proof of claim would be in violation

7   of the automatic stay.

8          That second proof of claim, which again is

9   identical to the first one, was subsequently objected to by

10  the debtors and in response, on again March 31, 2008 roughly

11  18 months after the original bar date and roughly nine months

12  after the order disallowing the first proof of claim, the

13  present motion for permission to file a late claim was filed.

14         The Court believes that proper analysis of this

15  motion must take into account first and foremost the filing of

16  the first proof of claim, 16404, and secondly the order

17  disallowing the claim from June 6, 2007.

18         The second proof of claim, being literally no

19  different from the first proof of claim, is properly viewed as

20  barred by res judicata as a result of the order disallowing

21  the first proof of claim.

22         In granting the objection to that proof of claim

23  brought and raised before the Court by the debtors in their

24  13th omnibus objection, such a result constitutes res judicata

25  which would bar the second proof of claim as a legal matter.

1   See Morris versus Jones 329 US 345 550-551 (1947) and EDP

2   Medical Computer Systems Inc. versus United States 480 F.3d

3   621, 626-27 (2d Cir. 2007).

4           Obviously where a debtor has successfully objected

5   to a claim it would create havoc and be completely inimical to

6   the underlying basis for res judicata to permit a claimant,

7   notwithstanding the debtors successful objection to their

8   claim, to then start a new claim process by filing the same

9   claim all over again.

10           That being said, I still should consider in the

11   light of whether the City of Dayton should be relieved of the

12   consequences of the June 6, 2007 order.  The subsequent filing

13   of the second proof of claim as one of the two actions that

14   Dayton took after the entry of that order, but that

15   consideration should be done in the context of an analysis

16   under Rule 60(b) and/or 502(J) of the Bankruptcy Code in

17   conjunction with Rule 9006 and the four factors set forth by

18   the Supreme Court in Pioneer Investment Services Company

19   versus Brunswick Associates Limited Partnership 507 US 380

20   (1993).

21           And in particular focusing on the factors of

22   length of delay and the reason for the delay and/or Daytons

23   willfulness which, both for the purposes of the Pioneer

24   analysis as well as Rule 60(b) analysis, does not constitute

25   or does not require a showing of bad faith, but merely that a

1   party fails to respond to a pleading or motion that the party

2   knew was pending.  See Gucci America Inc. versus Gold Center

3   Jewelry 158 F.3d 631, 635 (2d Cir. 1998) and Enron Inc. 325

4   B.R. 114, 118 (Bankr. S.D.N.Y. 2005) discussing again in the

5   Enron case at page 118 the concept of willfulness for purposes

6   of the foregoing analysis.

7           As the parties have noted and as I previously

8   noted, there is some slight confusion in the case law in this

9   Circuit as to the test to apply to a motion of this kind.

10  Some courts have taken the position that such a motion is

11  governed by Federal Rule 60(b) as incorporated by Bankruptcy

12  Rule 9024.

13          The motion before me falls within the time period,

14  the one year time period covered by Rule 60(b) and it is with

15  regard to cases applying that approach, see O.W. Hubbell and

16  Sons Inc. 180 B.R. 31 (N.D.N.Y 1995).

17          Alternatively, some Courts have applied Section

18  502(j) of the Bankruptcy Code and a analysis of Rule 3008, see

19  Enron Inc. 325 B.R. 114, 118 (Bankr. S.D.N.Y. 2005) citing

20  American Alliance Insurance Company versus Eagle Insurance

21  Company 92 F.3d 57 (2d Cir. 1996).  In addition some Courts

22  have considered both approaches, see JDP Information Service

23  Inc. 231 B.R. 209 (Bankr. S.D.N.Y. 1999) denying motion under

24  both Rule 60(b) and 502(j) and this is an approach I have

25  taken in prior hearings on similar motions.

1       As stated by the Second Circuit recently in the

2   EDP case that I cited previously the analysis under Federal

3   Rule 60(b) is "in many ways the functional equivalent of a

4   partys rights under Section 502(j) and as one goes through the

5   analysis I think that is generally speaking the case,

6   including here.

7       Under Rule 60(b) the Court may apply the excusable

8   neglect test incorporated by Pioneer, which again asks, after

9   establishing neglect, that the movant show by prepondence of

10  the evidence, that neglect was excusable, determined in light

11  of the following factors.  The dangers of prejudice to the

12  debtor, the length of the delay and whether or not it would

13  impact the case, the reason for the delay, in particular

14  whether the delay was within the control of the movant and

15  finally whether the movant acted in good faith, 507 US and

16  395.

17      The Second Circuit has said the following in

18  respect of Pioneer in Midland Cogeneration Venture Limited

19  Partnership versus Enron 419 F.3d 115 at 122 through 123 (2d.

20  Cir. 2005) "We've taken a hard line in applying the Pioneer

21  test.  In a typical case three of the Pioneer factors, the

22  length of the delay, the danger of prejudice and the movants

23  good faith usually weigh in favor of the parties taking an

24  extension.  We noted though that we and other circuits have

25  focused on the third factor, the reason for the delay,

1    including whether it was within the reasonable control of the

2    movant and we have cautioned that the equities will rarely, if

3    ever, favor a party who fails to follow the clear dictates of

4    the Court rule and that where the rule is entirely clear we

5    continue to expect that a party claiming excusable neglect

6    will, in the ordinary course, lose under the Pioneer test."

7            I have omitted the quotations from an earlier

8    Second Circuit case [Sovenge] versus Celebrity Cruises Inc.

9    333 F.3d 355, 368 (2d Cir. 2003) from that quote from Midland

10   Cogeneration.

11           The slightly different standard articulated in

12   respect to 502(j) by Enron 8 325 V.R.114 quoting American

13   Alliance 92 F.3d 57 (2d Cir. 1996) required an evaluation of

14   three factors.  One, whether the failure to respond was

15   willful, as I've previously discussed citing Gucci how

16   willfulness is defined for these purposes.  Two, whether the

17   movant had a legally supportable defense on the merits.  And

18   three, the amount of prejudice that would incur if the Court

19   granted the motion.  See Enron 325 B.R. 118.

20           In either case there is a preference that Courts

21   resolve disputes on the merits.  However, as the Second

22   Circuit cautioned in Midland, and I believe this is especially

23   the case in bankruptcy cases deadlines and more particularly

24   bar dates, are important, indeed often critical, to the

25   successful management of the Chapter 11 case.

1        In either instance, or under either test, the

2    focus should first be in my mind on the reason for the delay

3    or alternatively the claimants knowledge of the deadline.

4        Here it is clear that the debtors have established

5    the presumption that the claimant, City of Dayton, was on

6    notice of the objection to its proof of claim, its first proof

7    of claim.

8        It is also clear that Dayton was on notice of the

9    entry of the order disallowing the proof of claim.  That is

10   because the Courts hold routinely that notice is presumed if

11   the sender submits proof, such as an affidavit of service,

12   that a notice was properly addressed, stamped and deposited in

13   the mail system; Hagner versus United States 285 US 427, 430

14   (1932), in re R.H. Macey and Company Inc. 161 B.R. 355, 359

15   (Bankr. S.D.N.Y. 1993) which makes this finding in the context

16   of proper notice of a bar date.

17       While the presumption is rebuttable it is a very

18   strong presumption and can only be rebutted by specific facts

19   and not by invoking another presumption and not by a mere

20   affidavit to the contrary, in re Dana Corp 2007 W.L. 157 763

21   at page 4, (Bankr. S.D.N.Y. 2007).  See also [Bettencourt]

22   versus FDIC 851 F 126, 132-33 (S.D.N.Y. 1994).

23       Here three is no such evidence offered to rebut

24   the presumption of mailing, not even an affidavit but merely a

25   statement that it is not clear that Dayton received notice of

1   the claim objection and also that it is 'questionable' based

2   upon Daytons reading of the affidavit of service.  I disagree

3   with that assertion based on Mr. Gershbeins affidavit and the

4   affidavit of service itself, which clearly states that the

5   parties listed on Exhibit, among others, E, received notice

6   and referring to Dayton being listed on page 283 of Exhibit E,

7   which attaches or references, not attaches, references the

8   schedule also, Exhibit D2, to the 13th omnibus objection that

9   referred to Dayton.

10          Given that presumption and the burden to overcome

11  it, which Dayton has not done, I conclude that Dayton received

12  notice of the claim objection, as well as notice of the entry

13  of the order, which Dayton has offered no evidence to refute

14  by way of any witness or in any other manner, with one

15  exception which I do not believe rebuts the presumption.

16          The exception is Dayton contends that the letter

17  attached to the proof of claim and contemporaneous with the

18  proof of claim filed in August of 2007, 16440, suggests that

19  Dayton didnt really know that the claim - that the first proof

20  of claim had been disallowed.

21          I cannot derive such a conclusion from the face of

22  the letter, which again was attached to and prepared in

23  connection with the filing of the second proof of claim.

24  Indeed, although I dont believe the debtors need this, it

25  seems to me to the contrary that the filing of the second

1    proof of claim indicates that Dayton was indeed aware of the

2    first proof of claim being disallowed.  There really would be

3    no other logical reason to file a second one that is identical

4    to the first one.

5            So it appears to me that Dayton did in fact know

6    of the objection deadline and the entry of the order

7    disallowing its claim and notwithstanding that did not move

8    until March 31, 2008 for the proper relief there from.

9            It is asserted that Dayton simply made the mistake

10    of filing a new proof of claim instead of making the motion,

11    but such a mistake is a big one and while I accept that it is

12    possible that the people handling tax matters for the City of

13    Dayton are not as versed in bankruptcy matters as everyone who

14    has appeared in this case, the approach of not seeking out

15    someone who is sophisticated in the face of an objection to a

16    late claim and an order disallowing a late claim for a

17    significant sum, $427,534, is difficult to excuse.

18            Similarly, it is difficult to excuse filing the

19    same claim after the first claim, identical claim, was

20    disallowed and believing that the filing of the second claim

21    would start the clock all over again.  That is something that

22    one would believe would perhaps be even more apparent to a non

23    lawyer to be an incorrect approach.

24            The debtors contend that I should not look at

25    whether - or need not look at whether the first proof of claim

1    should be deemed timely filed because of the intervening

2    objection and June 6 order.  I believe that is ultimately

3    true, but the most facially appealing aspect of Daytons

4    argument deals with the first proof of claim.

5           Dayton contends that it was justified in filing

6    the first proof of claim late because the debtors had on file

7    a tax return for the relevant prepetition period showing no

8    taxes owing, until after the bar date the debtors amended

9    their taxes to show approximately $340,000 owing and it was

10   after that amendment, fairly soon after that amendment, within

11   30 to 35 days, that the City filed Claim 16404, the first one.

12          Three points should be said in respect thereof.

13   First, the debtors were certainly within their rights to make

14   the objection on April 27, 2007 to the first proof of claim as

15   being late, notwithstanding the facts that I have just

16   outlined.  That is because it was late.  And was required to

17   have been filed as a protective basis under the bar date order

18   by the bar date, notwithstanding that at that point the

19   debtors listed the claim only as contingent, unliquidated and

20   at zero dollars.

21          The bar date notice and order made it clear that

22   under those circumstances to protect ones rights a claimant

23   would have to file proof of claim, which the debtors state and

24   I accept, is routinely done in bankruptcy cases, including by

25   taxing authorities to protect their rights.

1        It is true that at times debtors will, in light of

2   subsequent tax amendments, negotiate with taxing authorities

3   about whether a claim was late or not if they fail to do so,

4   but clearly the burden is on the taxing authority in those

5   circumstances to show excusable neglect where it has not filed

6   a proof of claim by the bar date in the face of a debtors

7   schedule that lists the taxing authority, as here, as having a

8   contingent, disputed and unliquidated claim, even if the list

9   says the claim is zero, or the schedule says it is zero.

10       So the objection was clearly warranted.  The

11   debtors were certainly also entitled to rely upon the order

12   disallowing the claim in the absence of an objection.  And it

13   was that order that governed the debtors actions and

14   understanding of the claim thereafter, notwithstanding the

15   second identical claim having been filed roughly two months

16   after the entry of the order.

17       Debtors negotiate their Chapter 11 plans and in

18   this case, since this is a priority claim, also perform their

19   budgeting [and their emergency 01:19:53] cash needs in

20   reliance upon orders entered by the Bankruptcy Court dealing

21   with the filed claims.  That is a general statement.

22       In this case where so many claims were filed which

23   were disputed or disputable, that statement is especially true

24   and it is why the Court again entered claims procedures to be

25   followed to deal with claims in an orderly fashion.

1    It is in that light that I consider the issue of

2    prejudice to the debtors and their estates under either Rule

3    60 or Pioneer or 502(j).

4    Ultimately here, given that I believe there is a

5    particularly weak showing as to a lack of notice, which is

6    understandable given the procedures that the debtors were

7    directed to follow by me and have followed, that Dayton can

8    make an argument that the debtor would not be prejudiced by

9    the grant of this motion.

10    To the contrary, if I were to grant this motion it

11    truly would open the door to almost any creditor whose claim

12    was filed, objected to, who did not oppose the objection or

13    promptly seek reconsideration of the order granting the

14    objection after having received notice of such order, but now

15    would contend that it didnt really know of the foregoing

16    events and general continue to make the debtor aware of the

17    fact that it wanted to be paid.

18    That would, I believe, potentially turn the

19    debtors claims process into a process that the parties could

20    not rely on and I dont believe that it is incumbent upon the

21    debtors to prove that that wouldnt happen, since such a

22    result, to my mind, would invite it happening.

23    And where the debtors have dealt with, again,

24    approximately 9,000 claims on a similar basis, where there was

25    not an objection and then the claim was disallowed, I do not

1    believe that it would be appropriate to jeopardize that result

2    with a ruling today that would permit all of those claimants

3    simply by saying they werent sure that the notice was

4    received, whether it is uncertain that the notice was

5    received, to come back into court and seek allowance of the

6    claim and vacateur of the order granting the objection to

7    their claim.

8            Of course, those people would be moving months

9    after Dayton moved, but Dayton itself took several months to

10   request such relief which, to my mind, is too long and I say

11   that in light of the case law dealing with the length of the

12   delay.

13           So for those reasons I conclude that the motion

14   should be denied and the debtors counsel should issue an order

15   to that effect.

16           MR. LYONS: Thank Your Honor.  And also the second

17   claim expunged as well, I think that was also...

18           COURT: Yes.  Thats right.  Its all wound up in

19   one.

20           MR. LYONS: Okay, we will submit that order Your

21   Honor.

22           As I mentioned at the beginning of the hearing, I

23   just wanted to very briefly update you on where we are with

24   the number of claims that are in the procedures, that have

25   already been contested in our new procedures.

1           We have approximately 560 claims right now Your

2    Honor.  About 40% or so...

3           COURT: That are contested?

4           MR. LYONS: That are in the procedures, yes, they

5    may contest it.  All of it may seem like a large amount...

6           COURT: But again, you say the second part of the

7    procedures, this is now the contest part.

8           MR. LYONS: Yes, these are the claims that have

9    been adjourned into the procedures.

10          40% we believe are settled in amount, they just

11   await documentation and stipulation.  So those are in process.

12    The other 60% are in various stages.  Some close to

13   settlement, some may end up before Your Honor or some other

14   form for that matter if the parties decide to have it

15   liquidated elsewhere.

16          But the long and short is that we still are going

17   to need claim [1:26:29] summer.

18          COURT: Okay, so you should get some dates from my

19   Chambers.

20          MR. LYONS: Get some dates and obviously well work

21   with the Court to make sure we cancel hearings properly once

22   we have resolved all claims and we will have hearings where we

23   just have resolved claims per Your Honors suggestion.

24          COURT: Okay, is that roughly 500 and something

25   claims?  Are you anticipating further objections?

1         MR. LYONS: We have 38 open claims that still need

2  to be reconciled and objected to.  And again, late claims keep

3  on trickling in.  Thats going to...

4         COURT: Thats a separate issue.

5         MR. LYONS: But we're pretty much into the

6  adjourned claims, that by far is the vast majority, and an

7  awful lot of the claims are held by claims traders who hold

8  multiple claims, so they may get resolved en mass as well as

9  we proceed.

10        But we are working with the parties as we have

11  since the beginning of this process and plan on being

12  efficient again and we are still, in our view, safely well

13  below the 1.45 billion and may actually make further progress

14  on that amount as we continue through the claims process.

15        COURT: All right, well, thats real progress.

16        Thank you.

17        (Whereupon, the proceedings were concluded.)

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

1

2

3      I certify that the foregoing is a transcript from an

4  electronic sound recording of the proceedings in the

5  above-entitled matter taken on April 18, 2008, except

6  where,  as indicated, the Court has modified the transcript.

7

8

9

10

11

12  _Brenton Gray_____          4/23/08_____

13  Brenton Gray                              Date

14

15

16

17

18

19

20

21

22

23

24

25