UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
    In re                        :     Chapter 11
                                    :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                                    :
                Debtors.    :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AUTHORIZING DEBTORS TO ENTER
INTO LEASE FOR PROPERTY LOCATED IN WARREN, OHIO

("WARREN, OHIO LEASE ORDER")

        Upon the motion, dated May 9, 2008 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order under 11 U.S.C. § 363

authorizing Delphi Automotive Systems LLC  ("DAS LLC") to enter into leases (collectively,

the "Lease Agreement") for a research and development facility and an adjacent parcel located at

the premises commonly known as 4551 Research Parkway in Warren, Ohio with Orix Warren,

LLC (the "Lessor"); and upon the record of the hearing held on the Motion; and this Court

having determined that the relief requested in the Motion is in the best interests of the Debtors,

their estates, their creditors, and other parties-in-interest; and it appearing that proper and

adequate notice of the Motion has been given and that no other or further notice is necessary; and

after due deliberation thereon, and sufficient cause appearing therefor, it is hereby

        ORDERED, ADJUDGED, AND DECREED THAT:

        1.        The Motion is GRANTED.

2.      DAS LLC is authorized to enter into and perform under the Lease

Agreement in substantially the form attached hereto as <u>Exhibit A</u>, and to take any and all actions

necessary for such performance.

3.      The cure claim filed in the above-captioned case by the Lessor on March 4,

2008 (Docket No. 12956) is hereby deemed withdrawn with prejudice.

4.      This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this order.

5.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:   New York, New York
         May ___, 2008


_____
UNITED STATES BANKRUPTCY JUDGE

**LEASE**

by and between

**ORIX WARREN, LLC, a Delaware limited liability company**

and

**DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company**

Table of Contents

ARTICLE 1. DEMISE OF PREMISES ................................................................................1
   1.1.    Definitions: ................................................................................................1
         1.1.1.  Land: ....................................................................................1
         1.1.2.  Building: ..............................................................................1
         1.1.3.  Premises: .............................................................................1
   1.2.    Demise of Premises: ..................................................................................2

ARTICLE 2. TERM OF LEASE ........................................................................................2
   2.1.    Definitions: ................................................................................................2
         2.1.1.  Commencement Date: .........................................................2
         2.1.2.  Initial Term .........................................................................2
         2.1.3.  Term: ...................................................................................2
   2.2.    Possession: ................................................................................................2
         2.2.1.  Delivery of Possession: ......................................................2

   2.3.    Option to Extend: ......................................................................................3
         2.3.1.  Grant of Option: .................................................................3
         2.3.2.  Rent During Renewal Term: ...............................................3
         2.3.3.  Intentionally Deleted .........................................................5
         2.3.4.  Exercise of Option: ............................................................5
         2.3.5.  Continuation of Lease Terms: .............................................5

ARTICLE 3. USE AND OCCUPANCY ..............................................................................5
   3.1.    Use of Premises: .......................................................................................5
   3.2.    Intentionally Deleted .................................................................................5
   3.3.    Tenant's Covenants: ..................................................................................5

ARTICLE 4. RENT ...........................................................................................................6
   4.1.    Definitions ................................................................................................6
         4.1.1.  Base Rent: ...........................................................................6
         4.1.2.  Additional Rent: ..................................................................7
         4.1.3.  Rent: ...................................................................................7
         4.1.4.  Lease Year: .........................................................................7
   4.2.    Manner of Payment: ..................................................................................7
   4.3.    Interest; Late Charge: ................................................................................7
   4.4.    Net Lease: ..................................................................................................7

ARTICLE 5. OPERATING EXPENSES, TAXES AND ASSESSMENTS ..........................8
   5.1.    Operating: Expenses: .................................................................................8
   5.2.    Taxes and Assessments: ............................................................................8

ARTICLE 6. Intentionally Deleted ....................................................................................9

i

ARTICLE 7. INTENTIONALLY DELETED .................................................................9

ARTICLE 8. ALTERATIONS ....................................................................................9
    8.1.    Alterations by Tenant: ..............................................................9
    8.2.    Ownership of Improvements: ....................................................10
    8.3.    Mechanic's Liens: ...................................................................10

ARTICLE 9. MAINTENANCE AND REPAIR ............................................................10

ARTICLE 10. INSURANCE ....................................................................................11
    10.1.    Tenant's Obligations: ..............................................................11
    10.2.    Waiver of Subrogation: ...........................................................12

ARTICLE 11. CASUAL TV DAMAGE ....................................................................12
    11.1.    Repairs to Premises: ...............................................................12
    11.2.    Landlord's Option to Terminate: ...............................................12

ARTICLE 12. EMINENT DOMAIN ........................................................................12
    12.1.    Total Taking: ..........................................................................12
    12.2.    Partial Taking: ........................................................................13
        12.2.1. Responsibility to Repair: ...............................................13
        12.2.2. Cost of Repairs: .........................................................13
    12.3.    Landlord's Option to Terminate: ...............................................13
    12.4.    Tenant's Option to Terminate: ..................................................14
    12.5.    Rights to Condemnation Award: ...............................................14

ARTICLE 13. ASSIGNMENT, SUBLEASE AND MORTGAGE PROVISIONS .................14
    13.1.    Assignment and Sublease by Tenant: ........................................14
    13.2.    Landlord's Right to Subordinate Lease: ......................................15
    13.3.    Tenant's Estoppel Certificate: ..................................................15

ARTICLE 14. EVENTS OF DEFAULT ....................................................................15
    14.1.    Default: .................................................................................15
    14.2.    Remedies: ..............................................................................16

ARTICLE 15. CURING DEFAULT ..........................................................................18
    15.1.    Tenant's Right to Cure Landlord's Default: .................................18
    15.2.    Landlord's Right to Cure Tenant's Default: .................................18

ARTICLE 16. BANKRUPTCY ................................................................................19
    16.1.    Landlord's Bankruptcy: ...........................................................19

ARTICLE 17. QUIET ENJOYMENT .......................................................................19

ARTICLE 18. MISCELLANEOUS PROVISIONS .......................................................19
    18.1.    Notice: ..................................................................................19
    18.2.    Consents: ..............................................................................19
    18.3.    Holding Over: .........................................................................20

18.4.    Landlord's Access: ..............................................................................20
18.5.    Provisions Relating: to Landlord: ........................................................20
18.6.    Force Majeure: ...................................................................................21
18.7.    Mutual Hold Harmless: .......................................................................21
18.8.    Entire Agreement: ..............................................................................21
18.9.    Severability: .......................................................................................22
18.10.   Time is of the Essence: ........................................................................22
18.11.   Modification: ......................................................................................22
18.12.   Applicable Law; Binding Effect: ..........................................................22
18.13.   Execution of Lease; No Option: ...........................................................22
18.14.   Brokers: ..............................................................................................22
18.15.   Office of Foreign Assets Control: ........................................................22
18.16.   Bankruptcy Court Approval: ...............................................................22

# LEASE

This Lease ("**Lease**"), made as of the day of **May 8, 2008**, is by and between **ORIX Warren, LLC,** a Delaware limited liability company, with a principal address in care of ORIX Real Estate Capital, Inc., c/o David R. Brown, 100 N. Riverside Plaza, Suite 2100, Chicago, IL 60606, as Landlord, and **Delphi Automotive Systems LLC**, a Delaware limited liability company, with its principal address at 5725 Delphi Drive, Troy, Michigan 48098   (however, all notices must be sent as set forth in <u>Section 18.1: Notice</u>), as Tenant.

## BACKGROUND

A.     Landlord and Tenant (as successor-in-interest to General Motors Corporation) are parties to a Lease dated November 21, 1997, as amended by a First Amendment to Lease dated May 7, 2001 (as amended, the **"1997 Lease"**).

B.     On October 8, 2005, Delphi Corporation ("**Delphi**") and certain of its U.S. affiliates filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the **"Bankruptcy Code"**), in the United States Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**), and on October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions for reorganization under the Bankruptcy Code (collectively, the "**Debtors**").  The Debtors continue to operate their business as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

C.     Landlord and Tenant desire to enter into this Lease.  The 1997 Lease shall remain in full force and effect through and including the expiration of its existing term, and shall further continue in full force and effect with respect to any obligations or indemnities that survive the expiration of such term.


DEMISE OF PREMISES

1.1.   <u>Definitions</u>:

1.1.1.  <u>Land</u>:

Land means certain real property located in the City of Warren, Trumbull County, Ohio, as described in **<u>Exhibit "A"</u>**.

1.1.2.  <u>Building</u>:

Building means that one-story building located on the Land commonly known as the Delphi Packard Electric Systems Research Building.

1.1.3.  <u>Premises</u>:

Premises consists of approximately 94,000 rentable square feet of area in the Building.

1.2.    Demise of Property:

Landlord hereby leases to Tenant and Tenant hires from Landlord, on the terms and conditions contained in this Lease, the Premises, the Building and the Land (collectively referred to as the "**Property**").

ARTICLE  2.
TERM OF LEASE

2.1.    Definitions:

2.1.1.    Commencement Date:

The Commencement Date shall be January 1, 2009.

2.1.2.    Initial Term:

(a)      The initial term of this Lease (the "**Initial Term**") shall commence on the Commencement Date and shall expire and terminate on December 31, 2015.  Notwithstanding the foregoing, Tenant shall have the right, upon delivering to Landlord not less than five hundred fifty (550) days prior written notice (the "**Termination Notice**"), to terminate the Initial Term on and as of the later to occur of (1) either (i) if the date on which Tenant's plan of reorganization becomes effective (the "**Emergence Date**") is the first day of a calendar month, the last day of the sixty-fifth (65th) month following the Emergence Date, or (ii) if the Emergence Date is other than the first day of a calendar month, the last day of the sixty-fifth (65th) full month following the month in which the Emergence Date occurs, and (2) December 31, 2013.  If Tenant exercises its termination rights granted in this subsection (a), then Tenant shall have no right to extend or renew the Initial Term as provided in Section 2.3 below, the terms and provisions of which shall be null and void and of no force or effect upon delivery of the Termination Notice.

(b)      Tenant agrees to give Landlord written notice of the Emergence Date and promptly after the determination of such Emergence Date, the parties agree to execute a Certificate, in substantially the form attached hereto as **Exhibit "B"**, setting forth the expiration date of the Initial Term of this Lease and the termination rights granted in subsection (a) above.

2.1.3.    Term:

The Term of this Lease (the "**Term**") means the Initial Term of this Lease and all extensions and renewals thereof.

2.2.    Possession:

2.2.1.    Delivery of Possession:

Tenant acknowledges that pursuant to the 1997 Lease Tenant is in possession of the Property and Tenant acknowledges and agrees that it shall take possession of the Property in an "as-is" condition, without any warranty as to the condition thereof.  No promises of Landlord to alter, remodel, improve, repair, decorate or clean the Property or any part thereof have been made, and no representation respecting the condition of the Property has been made to Tenant by or on behalf of Landlord.

2

## 2.3. Option to Extend:

### 2.3.1. Grant of Option:

Tenant shall have the option to extend the Initial Term of this Lease for one (1) additional term of five (5) years ("**Renewal Term**") on the conditions contained in this Section 2.3.

### 2.3.2. Rent During Renewal Term:

The Base Rent for each year of the Renewal Term shall be at the Fair Market Rental Rate (as hereinafter defined); provided, however, that in no event shall the Fair Market Rental Rate be less than $7.00 per rentable square foot of the Premises. Within thirty (30) days after receipt by Landlord of a Trigger Notice (as defined in Section 2.3.4 below) that Tenant desires to exercise its option to extend the Term of this Lease, Landlord shall deliver to Tenant a notice specifying Landlord's opinion as to the Fair Market Rental Rate for the Property for the Renewal Term ("**Landlord's Fair Market Rental Notice**"). If Landlord's Fair Market Rental Notice establishes $7.00 per rentable square foot of the Premises as the Fair Market Rental Rate for the Renewal Term, then Tenant shall be deemed to have irrevocably exercised the option for the Renewal Term at such Fair Market Rental Rate. As used herein, the term "**Fair Market Rental Rate**" shall mean the then prevailing (as of the date on which Tenant delivers to Landlord the Trigger Notice) base rent for space of comparable size and quality in the market area in which the Property is located, taking into consideration all relevant terms and conditions, including without limitation rent concessions, improvement allowances, brokerage commissions, the extent of existing leasehold improvements, the term of the lease, the extent of services to be provided and available inducements. Unless Tenant advises Landlord otherwise in writing within thirty (30) days after delivery of Landlord's Fair Market Rental Notice, Tenant shall be deemed to have rescinded its option for the Renewal Term and irrevocably waived its right and option to renew the Term of this Lease pursuant to this Section 2.3. If Tenant believes that the Fair Market Rental Rate set forth in Landlord's Fair Market Rental Notice is not consistent herewith, Tenant shall notify Landlord in writing within the aforesaid 30-day period that Tenant does not agree with Landlord's determination of the Fair Market Rental Rate (the "**Objection Notice**"), which Objection Notice shall (a) state that Tenant has not rescinded its exercise of the option for the Renewal Term, and (b) set forth Tenant's opinion of the Fair Market Rental Rate. Failure of Tenant to deliver the Objection Notice prior to the expiration of such 30-day period shall be deemed Tenant's rescission of its option for the Renewal Term and irrevocable waiver of its right and option to renew the Term of this Lease pursuant to this Section 2.3. For a period of thirty (30) days after Landlord's receipt of the Objection Notice (the "Negotiation Period"), the parties shall negotiate in an attempt to agree upon the Fair Market Rental Rate. If, prior to the expiration of the Negotiation Period, the parties are unable to agree upon the Fair Market Rental Rate, then the Tenant shall have the right to either (i) rescind its exercise of the option for the Renewal Term, or (ii) submit such matter (i.e., determination of the Fair Market Rental Rate) to arbitration as hereinafter set forth, in either case by delivering to Landlord, within ten (10) days after the expiration of the Negotiation Period, written notice (the "Final Election Notice") as to which course of action Tenant has elected. Tenant's failure to deliver to Landlord a Final Election Notice prior to the expiration of such 10-day period shall be deemed Tenant's rescission of the exercise of the option for the Renewal Term and irrevocable waiver to renew the Term of this Lease pursuant to this Section 2.3. If Tenant elects to submit the matter to arbitration, then Tenant shall be deemed to have irrevocably exercised its option for the Renewal Term (and

3

Tenant thereafter shall have no right to rescind such election). If Tenant elects to submit the dispute to arbitration as provided above, then, within ten (10) business days following the date on which Tenant delivers to Landlord the Final Election Notice, Landlord and Tenant shall submit such party's written final offer as to the Fair Market Rental Rate (the "**Final Offers**") to the other party pursuant to the notice requirements in Section 18.1. The failure of either party to submit a Final Offer within such 10-business day period shall be deemed acceptance of the other party's Final Offer (if submitted within such 10-business day period). If the higher of such Final Offers is not more than five percent (5%) greater than the lower of such Final Offers, then the Fair Market Rental Rate shall be the average of the two (2) estimates and shall be final and binding on Landlord and Tenant. If the higher of such Final Offers is more than five percent (5%) greater than the lower of such Final Offers, then Landlord and Tenant shall, within ten (10) business days after the exchange of Final Offers, agree on a single arbitrator, which arbitrator shall, within thirty (30) days of its appointment, determine which of the Final Offers is closest to the Fair Market Rental Rate, upon which event the selected Final Offer shall be the Fair Market Rental Rate for the Renewal Term. If Landlord and Tenant do not agree upon a single arbitrator within the 10-business day period set forth in the preceding sentence, then Landlord and Tenant shall each designate their own arbitrator within five (5) business days following the expiration of such 10-business day period. Such arbitrators shall meet within ten (10) business days following their appointment and determine which of the Final Offers is closest to the Fair Market Rental Rate, upon which event the selected Final Offer shall be the Fair Market Rental Rate for the Renewal Term. If the two (2) arbitrators are unable to agree which of the Final Offers shall be the Fair Market Rental Rate prior to the expiration of such 10-business day period, then they shall appoint a third arbitrator prior to the expiration of such 10-business day period. If the two (2) arbitrators cannot agree upon a third arbitrator prior to the expiration of such 10-business day period, then either party may request that the American Arbitration Association (or any successor thereto) make such appointment within ten (10) business days after such request. In the event of the appointment of such third (3rd) arbitrator, such third (3rd) arbitrator shall, within ten (10) business days following its appointment, determine which of the Final Offers is closest to the Fair Market Rental Rate as of the commencement of the Renewal Term, upon which event the selected Final Offer shall be the Fair Market Rental Rate for the Renewal Term. The decision of the arbitrator(s) shall be final and binding upon Landlord and Tenant. In no event shall any appraiser(s) establish a Fair Market Rental Rate for the Renewal Term that is other than one of the Final Offers. The arbitrator(s) shall be permitted to (x) discuss with each party its Final Offer and any criticisms of the other party's Final Offer, and (y) receive from each party any materials and information regarding such party's Final Offer and any criticisms of the other party's Final Offer; provided, however, that the arbitrator(s) shall afford each party an equal opportunity with respect to such discussions and the providing of any such materials and information. The arbitrators shall be leasing real estate brokers with at least ten (10) years continuous experience in leasing commercial real estate properties or acting as commercial real estate leasing agents or brokers in the Warren, Ohio area. If there is a single arbitrator, such arbitrator's fees and expenses shall be shared equally by the parties. If there are two (2) arbitrators, each party shall pay the fees and expenses of its arbitrator. The fees and expenses of a third arbitrator, and all other expenses, other than attorneys' fees, witness fees and similar expenses of the individual parties, shall be shared equally by the parties hereto.

2.3.3.  Intentionally Deleted:

2.3.4.  Exercise of Option:

Tenant shall exercise its option hereunder by giving written notice (the "Trigger Notice") of its
intent to exercise the Renewal Term not less than five hundred fifty (550) days, and not more
than five hundred eighty (580) days, prior to the expiration of the Initial Term; provided,
however, that this option to renew shall not apply if: (a) this Lease has been terminated (either at
the time of sending notice or at the commencement of the Renewal Term); or (b) an Event of
Default (as hereinafter defined) has occurred and is continuing or an event has occurred which
the passage of time or the giving of notice (or both) would constitute an Event of Default, either
at the time of sending notice or at the commencement of the Renewal Term; or (c) Tenant (not
including any of Tenant's successors or assigns) does not occupy fifty percent (50%) or more of
the Premises. Notwithstanding the foregoing, Tenant shall have no right to renew this Lease for
the Renewal Term if more than one Event of Default occurs hereunder during the final thirty (30)
months of the Initial Term, and, if any such Event of Default relates to a monetary default by
Tenant, such default is not cured within seven (7) business days of Tenant's receipt of written
notice thereof from Landlord.   At such time as Tenant sends notice to Landlord of its intent to
renew this Lease, Tenant shall be bound for such Renewal Term on the terms set forth herein.

2.3.5.  Continuation of Lease Terms:

Except as modified in this Section, all terms and conditions of this Lease shall continue and shall
remain in full force and effect throughout the Renewal Term (except for the renewal option
contained herein). Tenant shall not be entitled to receive any improvement or fit-out allowance
or payment from Landlord in connection with the Renewal Term.

ARTICLE 3.
USE AND OCCUPANCY

3.1.  Use of Property:

Tenant may use and occupy the Property during the Term for general office and laboratory use
and any other use not prohibited by applicable federal, state or local laws, regulations or
ordinances, and for no other purpose.

Tenant shall not do, permit, or suffer any act or thing to be done which is injurious to the
Property, which is a nuisance, contrary to law or in violation of the certificate of occupancy
issued for the Building.

3.2.  Intentionally Deleted:

3.3.  Tenant's Covenants:

(a)     Tenant covenants and agrees that it will comply with all applicable federal, state
or local laws, regulations or ordinances in connection with its use of or operations at the
Property including those laws, regulations, or ordinances governing hazardous wastes,
hazardous substances or toxic substances.

5

(b)    Tenant shall procure each and every permit, license, certificate or other authorization required in connection with the lawful and proper use of the Property, and shall at all times use the Property in compliance with all applicable federal, state, local, civil and criminal laws, statutes, ordinances, codes or regulations (collectively, "**Laws**"). Within ten (10) days after receipt, Tenant shall advise Landlord in writing and provide Landlord with copies of any and all written notices directed to Tenant alleging violation of any Laws by Tenant and/or any governmental or regulatory actions or investigations instituted or threatened regarding noncompliance with any Laws relating to the Property or Tenant's use of the Property.

(c)    Tenant shall not place, dispose, emit, discharge or release into air, water, groundwater, soil, sewers, storm sewers or otherwise into the environment any substance, material or waste regulated or governed under any Laws ("**Regulated Material**") except in compliance with applicable Laws.  If Tenant generates, arranges for disposal or treatment or transports for disposal or treatment any Regulated Material then Tenant shall treat and dispose of the Regulated Material by lawful and proper means off of the Property at its own expense. Tenant shall store any Regulated Material in compliance with all Laws, and in no event shall Tenant take any actions which would require a permit pursuant to the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq.

(d)    If Tenant fails to use the Property in compliance with all applicable Laws, Tenant shall cure such non-compliance within thirty (30) days of receipt of written notice by Landlord specifying the alleged non-compliance. In the event that the non-compliance cannot be cured within thirty (30) days, Tenant shall diligently and expeditiously proceed to cure the non-compliance as provided for herein, and such cure period shall be extended so long as Tenant is diligently and expeditiously proceeding to cure such non-compliance. If Tenant fails to cure, or take action to cure, such non-compliance, or in the event of an emergency, Landlord may perform any and all such Tenant's obligations to cure the non-compliance. All costs and expenses reasonably incurred by Landlord in connection with this paragraph shall be paid by Tenant to Landlord on demand.

(e)    Tenant warrants and agrees that it will indemnify and hold Landlord harmless from and against any damage, liability, fines, penalties, costs or losses (hereinafter collectively "**Claims**") to which Landlord may be subjected to the extent such Claim results from Tenant's breach of any of the foregoing covenants or any of its representations or warranties.

ARTICLE 4.
RENT

4.1.    <u>Definitions</u>:

4.1.1.  <u>Base Rent</u>:

Base Rent ("**Base Rent**") for each Lease Year of the Initial Term shall be $7.00 per rentable square foot of the Premises, payable in equal monthly installments of $54,833.33 each. The Base Rent for each Lease Year of the Renewal Term shall be as set forth in <u>Section 2.3.2</u> hereof.

4.1.2.  Additional Rent:

"**Additional Rent**" shall be and consist of all sums of money due hereunder except "Base Rent," including, without limitation, late charges, costs, expenses, reasonable attorneys' fees as set forth in this Lease, and charges of any kind or amount whatsoever which Tenant assumes or agrees to pay or which become due and payable by Tenant to Landlord pursuant to this Lease.

4.1.3.  Rent:

"**Rent**" payable pursuant to this Lease shall consist of Base Rent and Additional Rent as such terms are defined in this Article 4.  Any Additional Rent obligations payable to Landlord shall be paid prior to or with the next installment of Base Rent due hereunder.

4.1.4.  Lease Year:

"**Lease Year**" shall mean the consecutive twelve (12) month period following the Commencement Date.

4.2.    Manner of Payment:

The Tenant shall pay monthly installments of Base Rent to the Landlord in the amounts specified in this Lease, in advance, on the first day of each calendar month during the Term without set off, deduction or abatement. The Tenant shall pay Additional Rent in the manner described in Article 5. All Rent shall be paid at the address of Landlord given above or at such other place as Landlord may designate from time to time in writing.

4.3.    Interest; Late Charge:

If Landlord does not receive all Rent due on the date when due or within five (5) days following Tenant's receipt of written notice from Landlord, said Rent shall be delinquent and interest, as Additional Rent, shall accrue thereon at the rate of three percent (3%) per annum over the prime rate for commercial lending as announced from time to time by PNC Bank, National Association ("**PNC Bank**") or its successor ("**Prime Rate**") until the Rent and the accrued interest thereon is paid in full. In addition, if said Rent and all accrued interest thereon are not paid in full within three (3) days after said Rent is due or within five (5) days following Tenant's receipt of written notice from Landlord, Tenant agrees and covenants to pay, as Additional Rent, a late fee equal to five percent (5%) of the amount of any delinquent payment. Such payment shall be deemed liquidated damages and not a penalty, and shall not excuse the timely payment of Rent. Notwithstanding the foregoing, Landlord shall not be obligated to deliver written notice of such failure to pay Rent when due more than twice in any twelve-month period and upon the third such occurrence in any twelve-month period Tenant shall be obligated to pay (i) interest at the foregoing rate on any Rent not paid when due, and (ii) the foregoing late fee with respect to any Rent not paid within three (3) days of the due date for such payment.

4.4.    Net Lease:

This Lease is a net lease and, except as otherwise expressly provided herein (including, without limitation, in Section 15.1 hereof), Tenant shall not be entitled to or claim any abatement, reduction, set-off, counterclaim, defense or deduction with respect to any Base Rent, Additional

Rent or other sum payable hereunder. It is the intention of the parties hereto that the Base Rent, Additional Rent and any other sums payable hereunder shall be paid by Tenant as absolutely net sums, without diminution for any reason. The parties intend that the obligations of Tenant hereunder shall be separate and independent covenants and agreements and shall continue unaffected unless such obligations shall have been modified or terminated pursuant to an express provision of this Lease. Tenant shall have the right, however, by separate and independent action to pursue any claims it may have against Landlord or any assignee or successor of Landlord,

ARTICLE 5.
OPERATING EXPENSES, TAXES AND ASSESSMENTS

5.1.    Operating Expenses:

(a)    Tenant shall pay, or cause to be paid, prior to delinquency all Operating Expenses. "**Operating Expenses**" shall mean all costs and expenses in connection with the operation, servicing, repair, replacement, ownership, use, occupancy and maintenance of the Property and all exterior appurtenances thereto including, but not limited to, utility charges; heating, ventilating and air conditioning; exterminating services; detection system and security services; trash removal and recycling programs; leasing of trash compactors, dumpsters and other miscellaneous equipment; sewer and water charges; premiums for fire and casualty, liability, workmen's compensation, and other insurance; painting or redecorating common or public areas; janitorial services and cleaning supplies; window cleaning; snow removal fees; landscaping; electricity, gas, oil and all other fuels; telephone services; service contracts for the maintenance of elevators, boilers, HVAC and all other mechanical and electrical equipment; and the costs of any additional services and amenities required by Tenant. The parties acknowledge that Landlord has entered into a certain Management Agreement with LaSalle Partners Management Services, Inc. dated December, 1998 with respect to the Property which shall be in effect during the Term. Tenant shall be responsible for all costs incurred by Landlord pursuant to such Management Agreement which, if paid by Landlord, shall be payable on a monthly basis to Landlord as Additional Rent hereunder. If Tenant reasonably concludes that the management company is routinely failing to perform its obligations pursuant to the Management Agreement, then Landlord shall, upon receipt of written notice from Tenant describing in reasonable detail such failures and adverse effects, use its reasonable efforts to engage a replacement management company reasonably acceptable to Tenant. Tenant shall also be responsible for all costs incurred by Landlord pursuant to such replacement management agreement. Tenant hereby releases and waives any and all claims, causes of action or demands against Landlord's management company, if any, engaged by Landlord with respect to the Property relating to or arising out of Tenant's occupancy of the Property except for any claims, causes of action or demands arising out of the negligence, willful misconduct or intentional misconduct of any such management company, its employees and agents.

5.2.    Taxes and Assessments:

Tenant shall pay, or cause to be paid, before any fine, penalty. interest or cost may be added for non-payment, all Taxes and Assessments. "**Taxes and Assessments**" shall mean: all real estate and other taxes, assessments, payments (either in lieu of taxes or otherwise) in connection with

8

any tax increment financing program affecting the Property, levies, fees, water and sewer rents and charges, and all other governmental charges, general and special, ordinary and extraordinary, foreseen and unforeseen, which are at any time during the Term imposed or levied upon or assessed against the Property, or any additional improvements constructed by the Tenant pursuant to the provisions of this Lease (provided that Tenant may pay Taxes and Assessments over the longest period wholly within the Term permitted without penalty by the applicable authority, and provided further that with respect to any extraordinary assessments levied against the Property during the Term and payable in installments continuing beyond the expiration of the Term, Tenant shall be obligated to pay only the installments thereon falling due prior to the expiration or sooner termination (unless such termination arises as a result of an Event of Default by Tenant hereunder) of this Lease and any pro-rata portion of any installment that applies in part to periods included in the Term) and all charges for utilities serving the Property. Tenant shall not be required to pay any franchise, corporate, estate, inheritance, transfer, value added or single business tax of Landlord or any gross receipts, income, revenue or profits tax of Landlord based on its general income or revenues except to the extent, and only to the extent, such tax is imposed, levied or assessed in substitution for any other tax, assessment, charge or levy which Tenant is required to pay pursuant to the preceding sentence of this Section 5.2. Nothing in this Section 5.2 shall require the payment by Tenant of any tax, assessment, charge or levy imposed or levied upon or assessed against any property of Landlord other than the Property or any income to, or business activity of, Landlord not connected with the Property.

ARTICLE 6.
INTENTIONALLY DELETED


ARTICLE 7.
INTENTIONALLY DELETED


ARTICLE 8.
ALTERATIONS

8.1.    Alterations by Tenant:

Tenant, at its own expense, may make non-structural alterations, additions, or improvements in or to the Premises in each case costing less than $40,000 for each such project. Landlord may not require Tenant to remove either the initial improvements made as part of Landlord's Work and Special Improvements for Tenant (as defined in the 1997 Lease) or any alterations, additions or improvements described in this Lease or to restore the Premises to its original condition except as otherwise agreed to by Landlord and Tenant in connection with any alteration, addition or improvement. Tenant, at its own expense and with the prior written consent of Landlord, which consent shall not be unreasonably withheld, may make non-structural alterations, additions, or improvements in or to the Property or alterations, additions or improvements costing $40,000 or more for each such project. Tenant may not make any structural alterations, additions or improvements in or to the Property without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Tenant shall not make any alterations, additions or improvements to any mechanical systems in the Building without the prior written consent of Landlord, which consent shall not be unreasonably withheld.

8.2.  <u>Ownership of Improvements:</u>

All trade fixtures, movable partitions and similar installations installed in the Premises by either Tenant or Landlord on Tenant's behalf, the cost of which is or has been borne by Tenant, shall be and remain the property of Tenant and may be removed by Tenant at its own option and expense. All other alterations, additions and improvements installed in the Premises by Tenant or Landlord on Tenant's behalf shall be the property of Landlord unless Landlord has agreed otherwise at the time such alterations, additions or improvements are installed.  Upon removal of such trade fixtures and similar installations, together with Tenant's office furniture and equipment, Tenant shall immediately and at its own expense, repair and restore the Premises to the condition existing prior to installation (subject to ordinary wear and tear and damage by fire or other insurable casualty) and repair any damage to the Premises or the Building due to such removal. All property that was permitted to be removed by Tenant at the end of the Term but which remains in the Premises for ten (10) days after Tenant vacates the Premises shall be deemed abandoned and may, at the election of Landlord, either be retained as Landlord's property or may be removed from the Premises by Landlord, <u>provided, however,</u> if Tenant is delayed or hindered in the removal of the property permitted under this <u>Section 8.2</u> for reasons beyond Tenant's control (such reasons not including any bankruptcy or insolvency proceeding affecting Tenant), then Tenant's removal of its property shall be extended for the period of the delay.

8.3.  <u>Mechanic's Liens:</u>

Tenant shall: (a) pay before delinquency all costs and expenses of work done or caused to be done by Tenant at or upon the Property; (b) keep the title to the Property and every part thereof free and clear of any lien or encumbrance in respect of such work; and (c) indemnify and hold harmless Landlord against any claim, loss, cost, demand (including reasonable legal fees), whether in respect of liens or otherwise, arising out of the supply of material, services, or labor for such work. Tenant shall immediately notify Landlord of any lien, claim of lien, or other action of which Tenant has or reasonably should have knowledge and which affects the title to the Building or any part thereof, and shall cause the same to be removed within thirty (30) days, or sooner if possible through the exercise of reasonable diligence, (or such additional time as Landlord may consent to in writing), either by paying and discharging such lien or by posting a bond or such other security as may be reasonably satisfactory to Landlord. If Tenant shall fail to remove same within said time period, Landlord may take such action as Landlord deems necessary to remove the same and the entire cost thereof shall be immediately due and payable by Tenant to Landlord. Tenant shall have no right, power or authority to subject the Property or any part thereof to any mechanic's or materialman's lien.

ARTICLE 9.
<u>MAINTENANCE AND REPAIR</u>

Tenant will, at its expense, maintain the Property in good repair and condition, except for ordinary wear and tear, and will make all non-structural, interior and exterior repairs (except the exterior walls), foreseen and unforeseen and ordinary and extraordinary changes, replacements and repairs which may be required to keep the Property in such good repair and condition, all of which shall be of quality at least equivalent to the original. Landlord shall not be required to perform any repairs or other maintenance or services in the Premises, except with respect to the

10

exterior walls and structure which shall be the Landlord's obligation. Tenant waives the right to make repairs at the expense of Landlord pursuant to any law at any time in effect, except as provided otherwise in Section 15.1 hereof.

Notwithstanding the foregoing, with respect to the roof of the Premises (i) Tenant shall be responsible for all ordinary repairs required to be made to the roof, and (ii) Landlord shall be responsible for all replacements of the roof or major repairs to the roof that would be classified as capital expenditures under generally accepted accounting principles consistently applied.

ARTICLE 10.
INSURANCE

10.1.  Tenant's Obligations:

(a)    Tenant shall, at its sole cost and expense, obtain and maintain during the term of this Lease, Comprehensive General Liability Insurance, including Blanket Contractual Liability coverage, with limits of not less than Five Million Dollars ($5,000,000) Combined Single Limit for Personal Injury and Property Damage; Comprehensive Automobile Liability Insurance covering all owned, non-owned and hired vehicles with limits of not less than One Million Dollars ($1,000,000) Combined Single Limit for Personal Injury and Property Damage; and Statutory Workers Compensation and Employers Liability coverage with limits of not less than $250,000. Tenant shall also, at its sole cost and expense, obtain and maintain during the Term of this Lease, All Risk Property Insurance for the Building upon a full replacement cost basis, with no co-insurance requirement Tenant shall deliver to Landlord on January 1 of each year of the Term and upon request by Landlord a certificate evidencing such coverages or copies of such policies if requested by Landlord. All such policies shall name Landlord as an additional insured.  At Landlord's request, Tenant shall cause any lender of Landlord secured by the Property or any other party designated by Landlord to be named as an additional insured and/or loss payee under the above policies.  Such insurance policies shall provide for no cancellation or material alteration without thirty (30) days' prior written notice to Landlord. Tenant shall, at its sole cost and expense, insure its furniture, furnishings, equipment and other personal property in the Premises against all risk of loss or damage in coverage amounts not less than the full replacement cost of such personal property.

(b)    Tenant shall, at its sole cost and expense, insure its furniture, furnishings, equipment and other personal property in the Premises against all risk of loss or damage in coverage amounts not less than the full replacement cost of such personal property.

(c)    In addition to any other indemnities provided by Tenant to Landlord in this Lease, Tenant agrees that it shall indemnify, defend and hold harmless Landlord from and against any and all costs, expenses, damages, liabilities or claims sustained, incurred or paid by Landlord arising out of or relating to any claims against Landlord based on occurrences within the scope of the Comprehensive General Liability Insurance required to be maintained by Tenant hereunder to the extent that the amount of such claims exceeds the limits of coverage applicable to such policy or policies.

10.2.    Waiver of Subrogation:

Tenant shall cause each insurance policy carried by Tenant and insuring the Premises and its fixtures and contents against loss by fire and causes covered by standard extended coverage to be written in a manner so as to provide that the insurance company waives all right of recovery by way of subrogation against the Landlord in connection with any loss or damage covered by any such policies. Neither party shall be liable to the other for any loss or damage caused by fire or any of the risks enumerated in standard extended coverage insurance, provided such insurance was obtainable at the time of such loss or damage.

## ARTICLE 11.
## CASUALTY DAMAGE

11.1.    Repairs to Premises:

In the event the Premises and/or other areas of the Building are damaged or destroyed in whole or in part by fire or other casualty during the Term of this Lease, then, except as otherwise provided in this Article, Tenant shall immediately commence and diligently pursue the restoration of the damaged areas to good and tenantable condition, and shall use all available insurance proceeds therefor. Tenant shall restore the Premises to substantially the same condition as before the occurrence of such casualty.

11.2.    Landlord's Option to Terminate:

Notwithstanding anything to the contrary contained in this Lease, in the event twenty-five percent (25%) or more of the Premises are damaged or destroyed by fire or other casualty during the Term hereof, Landlord shall have the right to terminate this Lease upon written notice given to Tenant within ninety (90) days after the date of such occurrence, if such damage or destruction occurs within the last two (2) years of the Term of this Lease or of any extension of such Term; provided, however, that this Lease may not be so terminated if Tenant's option, if any, to further extend the Term of this Lease is exercised within sixty (60) days after Tenant received such written termination notice from Landlord. Termination of this Lease pursuant to this Section shall be effective sixty (60) days after Tenant receives from Landlord the written notice required above. Upon any such termination, Landlord shall receive all proceeds of the property insurance coverage maintained by Tenant with respect to the Premises pursuant to Section 10.1 hereof payable in connection with such fire or casualty, and Tenant waives any claim with respect to such proceeds.

## ARTICLE 12.
## EMINENT DOMAIN

12.1.    Total Taking:

If the whole of the Premises is taken by any public authority under the power of eminent domain, then this Lease shall terminate on the date possession of the Premises is delivered to such public authority. Base Rent and Additional Rent shall be paid to that date and prorated accordingly.

12.2.    Partial Taking:

12.2.1. Responsibility to Repair:

If part of the Building is taken by any public authority under the power of eminent domain, then, on the date possession is required by such public authority, this Lease shall terminate as to the portion taken and if a portion of the Building is taken, the Base Rent due hereunder shall be reduced in proportion to the amount taken. Except as otherwise provided in this Article, Landlord shall immediately commence and diligently pursue the restoration of the remaining Premises to the extent necessary to permit the continued use of the Premises, and shall use Landlord's Condemnation Award as described in Section 12.5 therefor.

During the period of making such repairs, Base Rent shall abate as to that portion of the remaining Premises which is untenantable; provided, however, that if Tenant uses any part of such untenantable portion for storage with Landlord's consent during the period of repair, Landlord may assess a reasonable charge therefor against Tenant.

Landlord shall restore the Premises to substantially the same condition as before the taking. In no event shall Landlord be required to repair or replace: (a) Tenant's personal property such as wall coverings, carpeting, and window treatments (except to the extent: (i) such personal property was originally provided by Landlord at Landlord's cost under the terms of the 1997 Lease; or (ii) Landlord's Condemnation Award contains an amount allocated for reimbursement for such personal property); or (b) Tenant's furnishings, operating equipment, trade fixtures or merchandise.

12.2.2. Cost of Repairs:

Notwithstanding the foregoing, Landlord shall have no obligation to restore the Premises to the extent that the Award (less any portion thereof constituting damages for lost rent, income, etc,) is insufficient to cover the cost of restoration.

12.3.    Landlord's Option to Terminate:

Notwithstanding anything to the contrary contained in this Lease, if part of the Property is taken by any public authority under the power of eminent domain, Landlord shall have the right to terminate this Lease upon written notice to Tenant if: (a) more than fifty percent (50%) of the Building is taken; or (b) the taking (i.e., the date possession is required by the public authority) occurs within the last six (6) months of the Term of this Lease or any extension of such Term. Such written notice shall be given to Tenant not later than sixty (60) days after commencement of condemnation proceedings against the Land and/or Building or, if such proceedings are not commenced, not later than fourteen (14) days before Landlord delivers possession of the part so taken by such public authority. In connection with any condemnation, Landlord shall use reasonable efforts to obtain an agreement from the condemning authority that Tenant be given adequate time to relocate from the Premises.

Termination of this Lease pursuant to this Section shall be effective as of the later of the date possession is required by the public authority or sixty (60) days after Tenant receives the termination notice described above.

12.4.   Tenant's Option to Terminate:

Notwithstanding anything to the contrary contained in this Lease, if fifty percent (50%) or more of the Building is taken by any public authority under the power of eminent domain, Tenant shall have the right to terminate this Lease upon the occurrence of any of the following and upon written notice given to Landlord not later than sixty (60) days after commencement of condemnation proceedings against the Land and/or Building (or, if such proceedings are not commenced, not later than thirty (30) days after possession of the part taken is required by the public authority):

(a)    If the taking of part of the Property significantly and materially adversely affects Tenant's use of the Premises in Tenant's sole discretion; or

(b)    If the taking of part of the Building or Land significantly and materially adversely affects Tenant's use of the Premises in Tenant's sole discretion, whether or not part of the Premises are taken; or

(c)    If restoration of the remainder of the Premises and/or the Building or Land cannot in Tenant's reasonable opinion be completed within one hundred eighty (180) days after the date possession is required by the public authority; or

(d)    If the taking (i.e., the date possession is required by the public authority) occurs within the last twelve (12) months of the Term of this Lease or any extension of such Term.

Termination of this Lease pursuant to this Section shall be effective as of the later of the date possession is required by the public authority or sixty (60) days after Landlord receives the termination notice described above.

12.5.   Rights to Condemnation Award:

Except as otherwise provided in this Section, all damages awarded for such taking shall belong to and be the property of the Landlord. The amount received by Landlord which is allocable to the Property shall be "**Landlord's Condemnation Award**". However, Tenant shall be entitled to any award for diminution in value to this leasehold, removal and relocation expenses, Tenant's loss of business, and fixtures paid for by Tenant so long as any award in favor of Tenant does not diminish Landlord's Condemnation Award or any award received by Landlord in connection with the remainder of the Property. Landlord and Tenant shall each seek their own award and pay their own expenses in connection therewith.

ARTICLE 13.
ASSIGNMENT, SUBLEASE AND MORTGAGE PROVISIONS

13.1.   Assignment and Sublease by Tenant:

Tenant may not assign, mortgage, pledge, or encumber this Lease, in whole or in part or whether by operation of law or otherwise nor shall Tenant sublet or permit the use or occupancy of the Property or any part thereof by anyone other than Tenant, without the express prior written consent of Landlord, which consent shall not be unreasonably withheld; provided, however, that

14

Tenant may, without Landlord's consent, make any such assignment to a corporation or other entity in which Tenant has a majority ownership interest and which Tenant has sole control (a **"Permitted Transfer"**) provided that in the event of a Permitted Transfer Tenant shall provide Landlord with prior written notice of such Permitted Transfer together with a copy of the instrument of assignment. No assignment or sublease shall relieve Tenant of any liability hereunder.

13.2.   Landlord's Right to Subordinate Lease:

Landlord may subject and subordinate this Lease, at all times, to the lien of any mortgage or mortgages now or hereafter placed upon the Property on which the Premises are located, provided that, if and when any such mortgage is placed, the mortgagee shall agree for itself and for every subsequent holder or owner of the mortgage and for any receiver or purchaser of the Property in the event of foreclosure, Tenant's quiet possession of the Property will not be disturbed on account of said mortgage or by reason of anything done thereunder so long as Tenant pays the rent and keeps the other covenants as its part to be performed. In such event, Landlord shall provide Tenant with a Subordination, Non-Disturbance and Attornment Agreement executed by Landlord, the mortgagee, and any other persons claiming benefits under such Agreement, which shall provide: (i) that this Lease is subordinate to the lien of any mortgage or mortgages upon the Property; (ii) that the Tenant's right of possession will not be disturbed by the mortgagee in connection with any mortgage foreclosure proceedings so long as Tenant performs its obligations set forth in this Lease; (iii) that the Tenant shall attorn to the foreclosing mortgagee or purchaser at the foreclosure sale; and (iv) such other provisions which are reasonable and acceptable to Tenant and which do not materially impact Tenant's use of the Property. Tenant agrees to execute such Subordination, Non-Disturbance and Attornment Agreement.

Landlord agrees that, in the event a mortgage is placed on the Property and a collateral assignment of rents or leases is given as security for the loan, Tenant will be furnished with a copy of such collateral assignment.

13.3.   Tenant's Estoppel Certificate:

Tenant shall, within thirty (30) days of receipt of written notice from Landlord, execute and deliver an estoppel certificate to Landlord or Landlord's mortgagee certifying, if true, that: (a) this Lease is in full force and effect and has not been modified or amended (or if modified or amended; describing the same); (b) the Commencement Date; (c) the date to which Rent has been paid; (d) to the best of Tenant's knowledge and belief and without due diligence investigation, the defenses or offsets thereto or defaults of Landlord under this Lease (or if none be claimed, stating that fact); and (e) such other matters as Landlord may reasonably request.

ARTICLE 14.
EVENTS OF DEFAULT

14.1.   Default:

The following events shall be deemed to be events of default (**"Event of Default"**) by Tenant under this Lease:

(i)      Tenant fails to comply with any term, provision, condition, covenant or obligation of this Lease or any of the rules now or hereafter established for the Building following five (5) business days' written notice from Landlord in the case of a monetary default by Tenant and thirty (30) days' written notice from Landlord in the case of any other default by Tenant under this Lease unless such other default creates a dangerous condition in the Premises and the Building, in which case Tenant shall cure such default as soon as possible; provided, however, that if the nature of the default is such that the same cannot reasonably be cured within such thirty (30) day period, Tenant shall not be deemed to be in default if Tenant shall within such period commence such cure and thereafter diligently prosecute the same to completion; provided further, however, that if in any period of twelve consecutive calendar months there shall be more than one monetary default or one non-monetary default, then the foregoing cure periods, as the case may be, shall not apply and Tenant shall be in default hereunder from the first day any default in excess of one default shall occur;

(ii)     any petition is filed by or against Tenant under any section or chapter of the United States Bankruptcy Code, as amended, or under any similar law or statute of the United States or any state thereof;

(iii)    Tenant becomes insolvent or makes a transfer in fraud of creditors;

(iv)     Tenant makes an assignment for the benefit of creditors;

(v)      a receiver, trustee, custodian, intervenor or liquidator is appointed for Tenant or any of the assets of Tenant;

(vi)     Tenant, either voluntarily or involuntarily, takes advantage of debtor relief proceedings under any present or future law, whereby the Rent (or any part thereof) is, or is proposed to be, reduced or payment thereof deferred; or

(vii)    the interest of Tenant hereunder shall be levied or taken by execution, attachment or other process of law in any action against Tenant.

14.2.  Remedies:

If an Event of Default shall have occurred, Landlord shall have the right to pursue any one (l) or more of the following remedies, separately or concurrently, in addition to all other rights or remedies provided herein, or available to Landlord at law or in equity:

(i)      Landlord may serve a written notice upon Tenant that Landlord elects to terminate this Lease and this Lease shall then expire on the date upon which such notice is given as if that date had been originally fixed as the expiration date of the Term herein granted, and Tenant shall then immediately quit and surrender the Premises to Landlord, but Tenant shall remain liable as provided herein.

(ii)     Landlord may, without terminating this Lease and without notice (except as required by applicable law), reenter and resume possession of the Premises either by-force (only if permitted by applicable law) or otherwise, and dispossess

16

Tenant by summary proceedings or otherwise, and remove all property therefrom without being liable to prosecution or any claim for damages therefor.

(iii)    Landlord may terminate this Lease by giving written notice to Tenant and, upon such termination, Landlord shall be entitled to recover from Tenant damages in an amount equal to all Rent which is then due and which would otherwise have become due throughout the remaining Term of this Lease, or any renewal or extension thereof (as if this Lease had not been terminated).

(iv)    In the event of Tenant's default hereunder, reentry, expiration of the Term and/or dispossession by summary proceedings or otherwise: (a) the Rent shall become due thereupon and be paid up to the time of such reentry, dispossession and/or expiration, together with such reasonable expenses as Landlord may incur for legal expenses, attorneys' fees, brokerage fees, putting the Premises in good order, and/or preparing the Premises for re-rental; (b) Landlord may relet the Premises or any part or parts thereof, either in the name of Landlord or otherwise, for a term or terms, which may (at Landlord's sole and exclusive option) be less than or exceed the period which would otherwise have constituted the balance of the Term of this Lease and Landlord may grant concessions or free rent; and/or (c) Tenant, or the legal representative of Tenant, shall also pay Landlord, as damages for the failure of Tenant to observe and perform Tenant's covenants herein contained, any deficiency between the Rent hereby covenanted to be paid by Tenant and the net amount, if any, of the rents collected on account of the re-letting of the Premises for each month of the period which would otherwise have constituted the balance of the Term of this Lease. The failure of Landlord to re-let the Premises or any part or parts thereof shall not release or affect Tenant's liability for damages, but Landlord agrees to use reasonable efforts to mitigate any damage or loss to Tenant. In computing such damages, there shall be added to said deficiency such reasonable expenses as Landlord may incur in connection with re-letting, such as reasonable legal expenses and attorneys' fees, reasonable brokerage fees, concessions, and tenant improvements, keeping the Premises in good order and preparing the Premises (or any portion thereof) for re-letting. Any such damages shall be paid in monthly installments by Tenant on the day for payment of Base Rent specified in this Lease.  Any suit brought to collect the amount of the deficiency for any month(s) shall not prejudice in any way the rights of Landlord to collect the deficiency for any subsequent month by a similar proceeding.  Landlord may make such reasonable alterations, repairs, replacements and/or decorations in the Premises as Landlord considers advisable and necessary for the purpose of reletting the Premises; and the making of such alterations, repairs, replacements and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid and Tenant shall repay the cost thereof to Landlord on demand plus fifteen percent (15%) thereof for overhead and supervision.

## ARTICLE 15.
## CURING DEFAULT

15.1.   Tenant's Right to Cure Landlord's Default:

If Landlord fails to comply with or defaults in the performance of any provision of this Lease, Tenant shall have the right (but not the obligation) in addition to any and all other rights and remedies available to Tenant at law or in equity, to cure such nonconformance or default on behalf of Landlord, upon thirty (30) days prior written notice to Landlord, except in an emergency, Tenant may cure such nonconformance or default without prior notice to Landlord and provided further, that if such failure or default by Landlord cannot be cured by Landlord acting in good faith and with reasonable diligence within such thirty-day period, then such thirty-day period shall be extended a reasonable period of time in order for Landlord to effectuate such cure so long as Landlord acts in good faith and with reasonable diligence. Tenant further agrees to furnish a copy of such written notice of default to any lender holding a mortgage interest with respect to the Land and Building whose name and address have been provided by Landlord to Tenant at the same time such notice is furnished by Tenant to Landlord and to allow such lender a reasonable period of time in which to cure such default. "**Emergency**" means any emergency situation created by storm, flood, fire or other act of God, war, rebellion, insurrection, riot, strike or an order, rule or regulation of any federal, state, municipal or other governmental agency, or any cause whatsoever, whether similar to the causes specifically enumerated or not. Upon receipt from Tenant of notice of such cure and demand for payment, Landlord shall repay any reasonable payment or expenditure made by Tenant on or before the date the next monthly installment of Base Rent is due. If Landlord fails to repay such sums when due, Tenant may offset same against subsequent monthly installment(s) of Rent.

Tenant's failure to exercise its right to cure such default(s) shall not be deemed a breach of this Lease nor a waiver or release of any of Landlord's obligations under this Lease.

15.2.   Landlord's Right to Cure Tenant's Default:

If Tenant fails to comply with or defaults in the performance of any provision of this Lease, Landlord shall have the right (but not the obligation), in addition to any and all other rights and remedies which Landlord may have at law or in equity, to cure such nonconformance or default for the account of Tenant, upon ten (10) days prior written notice to Tenant, except that in an Emergency or potential Emergency Landlord may cure such nonconformance or default without prior notice to Tenant. Upon receipt of notice of such cure and demand for payment, Tenant shall repay any reasonable payment or reasonable expenditure with the next monthly Base  Rent payment.

Landlord's failure to exercise its right to cure such default(s) shall not be deemed a breach of this Lease nor a waiver or release of any of Tenant's obligations under this Lease.

## ARTICLE 16.
## BANKRUPTCY

16.1.  Landlord's Bankruptcy:

In the event Landlord files for protection under the Bankruptcy Code and subsequently obtains
Bankruptcy Court approval authorizing rejection of this Lease, Tenant may, in its sole discretion,
treat this Lease as terminated under Section 365(h)(1) of the Bankruptcy Code or remain in
possession and have all of the rights afforded to it under Section 365.

## ARTICLE 17.
## QUIET ENJOYMENT

Landlord covenants that so long as Tenant is not in default in the terms and conditions of this
Lease, Tenant may peacefully and quietly hold and enjoy the Property, for the Term hereof
without interference by Landlord or any person claiming by, through, or under Landlord. Should
Tenant be dispossessed from the Property by reason of superior title, payment of Rent shall cease
from and after the date of such dispossession and all Rent that may have been prepaid for any
period of time during which Tenant is deprived of its peaceful possession by reason of such
dispossession, shall be returned to Tenant forthwith; however, Landlord shall not be relieved of
liability to Tenant for damages sustained by Tenant due to such dispossession.

## ARTICLE 18.
## MISCELLANEOUS PROVISIONS

18.1.  Notice:

All notices given hereunder shall be in writing and given by personal delivery to the Tenant or to
one of the executive officers of the Tenant or shall be sent by registered or certified mail or
recognized overnight delivery service addressed to the party intended to be notified at the post
office address of such party last known to the party giving such notice and notice given as
aforesaid shall be a sufficient service thereof, and shall be deemed given as of the date of
personal delivery or the date when deposited in any post office, or in any post office box
regularly maintained by the Federal Government. Tenant hereby appoints, and Landlord hereby
acknowledges, the Executive Director Operations Support Group, 5825 Delphi Drive, Troy,
Michigan 48098 and Deputy General Counsel – Restructuring and Transactional, Delphi
Corporation, 5725 Delphi Drive, Troy, Michigan 48098 as Tenant's agents, either of whom may
give all notices and pay the Rent.  The right is hereby reserved by the Tenant to countermand
such appointments and make others consistent herewith, due notice of which shall be given by
Tenant to Landlord All notices to Landlord shall be sent: in care of ORIX Real Estate Capital,
Inc, c/o David R. Brown, 100 N. Riverside Plaza, Suite 2100, Chicago, IL 60606 with a copy to
Landlord's General Counsel at the same address.  The right is hereby reserved by the Tenant to
countermand such appointments and make others consistent herewith, due notice of which shall
be given by Tenant to Landlord.

18.2.  Consents:

All consents permitted or required to be given under this Lease shall be reasonable and, unless
expressly provided otherwise, shall not be unreasonably withheld.

18.3.    <u>Holding Over:</u>

In the event that Tenant retains possession of the Property after the expiration of the Term of this Lease, then the Tenant shall be deemed to be a Tenant on a month-to-month basis in the absence of a written agreement to the contrary, subject to all of the terms and conditions hereof except that the Base Rent shall be increased by fifty percent (50%). Tenant hereby waives all rights to any notice regarding the termination of the Term hereof or regarding the surrender of the Property, including any rights under Section 5321.17(B) of the Ohio Revised Code. Acceptance by Landlord of Rent after such termination shall not of itself constitute a renewal. Nothing contained in this <u>Section 18.3</u> shall be construed or shall operate as a waiver of Landlord's right of reentry or any other right or remedy of Landlord. Such holding over by Tenant, and Landlord's collection of any Rent thereof, shall not serve as permission for Tenant's continued occupancy of the Property nor serve to extend the Term.

18.4.    <u>Landlord's Access:</u>

Landlord or any mortgagee or prospective purchaser of the Property shall have the right to enter into the Property for the purpose of inspecting the physical condition of the Property, for making the repairs required or permitted herein and exhibiting the Property to prospective purchasers or lenders; <u>provided</u>, <u>however</u>, that, except in the event of an emergency, Landlord shall enter the Property for such purposes only: (a) upon reasonable written notice to Tenant; (b) at such times as may be reasonably approved by Tenant; and (c) in such a manner as to cause the minimum reasonable disruption to Tenant's employees and business activities on the Property.

Landlord shall have the right for a period commencing five hundred fifty (550) days prior to the expiration of the Term of this Lease to exhibit the Property to prospective tenants, on the same conditions listed as (a), (b) and (c) in the prior paragraph, and may display in or about the Property the usual and ordinary "for lease" or "for sale" signs.

18.5.    <u>Provisions Relating to Landlord:</u>

As used in this Lease, the term "**Landlord**" shall mean the owner, or the mortgagee in possession, for the time being, of the Property.

Landlord shall have the right to sell, transfer or assign the Property, and/or Landlord' s interest under this Lease, and shall obtain the agreement of the transferee to assume and perform Landlord's obligations under this Lease arising from and after the effective date of transfer. If such transferee assumes and agrees to perform Landlord's obligations arising from and after the effective date of transfer, Tenant shall attorn to and recognize such purchaser, transferee, or assignee as Landlord under this Lease, and Landlord shall be relieved from all subsequent obligations and liabilities under this Lease. If such obligations are not assumed by such purchaser, transferee or assignee, Landlord shall not be relieved from its obligations and liabilities hereunder.

Landlord further agrees that in the event the Property is sold during the Term of this Lease or any extension thereof, notice of the sale and certified copies of the deed(s) of conveyance and the assignment of this Lease shall be furnished to Tenant at the address set forth in <u>Section 18.1</u>; the consideration for such conveyance and assignment may be deleted from such instruments.

Notwithstanding any other provision in this Lease to the contrary Tenant shall look solely to Landlord's interest in the Property and Building, applicable insurance proceeds, condemnation awards and the proceeds of any sale or financing or refinancing proceeds for the recovery of any judgment against Landlord and in no circumstances shall Landlord or any partner, member, principal, employee, director, officer, representative or agent of Landlord be personally liable nor shall Tenant have recourse to any other assets of Landlord for satisfaction of any claim Tenant may have against Landlord.

Notwithstanding any other provision in this Lease to the contrary, Tenant acknowledges and agrees that: (i) Landlord shall have no liability or obligation to Tenant with respect to or arising out of the oil and gas wells located on the Land; (ii) Tenant hereby releases Landlord from any and all such liability or obligation and shall indemnify, defend and hold harmless Landlord, its partners, agents and employees from and against any and all costs, expenses, losses, liabilities, claims and causes of action sustained, incurred or paid by Landlord, its partners, agents or employees arising out of or relating to the oil and gas wells located on the Land or any pipelines, tanks or other improvements or equipment associated with or related to such wells; and (iii) Tenant shall look to the operator of such wells, and not Landlord, in connection with any cost, liability, expense or obligation sustained, incurred or paid by Tenant arising out of or related to any such oil and gas wells; provided, however, that the foregoing provisions shall not apply to, and Tenant shall not be liable to Landlord with respect to, any costs, expenses, losses, liabilities, claims or causes of action arising subsequent to the date hereof to the extent resulting from the negligence, willful misconduct or intentional misconduct of Landlord or its employees, agents and contractors.

18.6.   Force Majeure:

Unless otherwise specifically provided in this Lease, neither Landlord nor Tenant shall be required to perform any term, condition, or covenant in this Lease so long as such performance is delayed or prevented by force majeure, which shall mean acts of God, labor disputes (whether lawful or not), material or labor shortages, weather conditions, restrictions by any governmental authority (including the inability to obtain permits), civil riots, floods, and any other cause not reasonably within the control of Landlord or Tenant and which by the exercise of due diligence Landlord or Tenant is unable, wholly or in part, to prevent or overcome; provided, however, that the payment of Rent or the procurement of the insurance policies required from Tenant under this Lease shall not be subject to the force majeure provisions contained in this Section 18.6.

18.7.   Mutual Hold Harmless:

The Landlord and Tenant agree to defend, indemnify and hold harmless the other against all lawsuits and claims for liability arising out of this Lease which result from the negligent acts or omissions or willful misconduct of the Landlord or Tenant, as the case may be, its officers, agents, employees, servants, or representatives.

18.8.   Entire Agreement:

The obligations of the Landlord and Tenant hereunder are mutual, and all understandings and agreements heretofore made between the parties hereto are merged in this Lease, which alone fully and completely expresses the agreement between Landlord and Tenant, and any executory agreement hereafter made shall be ineffective to change, modify, discharge, or effect an

abandonment of it, in whole or in part, or a surrender of this Lease or of the Property or any part thereof or of any interest of Tenant therein unless such executory agreement is in writing and signed by Landlord and Tenant.

18.9.   Severability:

The unenforceability, invalidity or illegality of any provision of this Lease shall not render the other provisions unenforceable, invalid or illegal.

18.10.   Time is of the Essence:

Time is of the essence of this Lease, and all provisions herein relating thereto shall be strictly construed.

18.11.   Modification:

This Lease shall not be modified or amended except by a writing signed by Landlord and Tenant.

18.12.   Applicable Law; Binding Effect:

This Lease shall be construed and enforced in accordance with the laws of the State in which the Property is located, and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

18.13.   Execution of Lease; No Option:

The submission of this Lease to either party shall be for examination purposes only, and does not and shall not constitute a reservation of or option to lease, or otherwise create any interest in the Property. Execution of this Lease by one party and its return to the other party shall not be binding, notwithstanding any time interval, until a fully executed Lease is delivered to the party which first signed this Lease.

18.14.   Brokers:

Landlord and Tenant each represent that they have had no dealing with any real estate broker or other person with respect to this Lease in any manner except with CB Richard Ellis, which shall be compensated by Landlord pursuant to a separate agreement with Landlord. Landlord will also pay a brokerage fee to Tenant's brokers, Jones Lang LaSalle Americas, Inc. and DREAL, Inc. pursuant to a separate agreement with Landlord. Tenant agrees to indemnify and hold harmless Landlord from any claims for any fees or commissions that are payable to any broker, individual or entity other than the brokers described above asserting a claim for a fee or commission with respect to this Lease.

18.15   Office of Foreign Assets Control.

Tenant and its parent Delphi Corporation (a) is not currently identified on the list of specially designated nationals and blocked persons subject to financial sanctions that is maintained by the U.S. Treasury Department, Office of Foreign Assets Control (currently is accessible through the internet website at www.treas.gov/ofac/tl_lsdn.pdf) or any other similar list maintained by the U.S. Treasury Department, office of Foreign Assets Control pursuant to any Laws (or if such list

does not exist, the similar list then being maintained by the United States) including trade embargo, economic sanctions, or other prohibitions imposed by Executive Order of the President of the United States; (b) is not a person or party subject to any trade restriction, trade embargo, economic sanction, or other prohibition under federal law, including the International Emergency Economic Powers Act, 50 U.S.C §§ 1701 et seq., The Trading with the Enemy Act, 50 U.S.C. App. 1 et seq., and any executive orders or regulations promulgated thereunder; and (c) is not in violation of Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism and the Uniting and Strengthening America by Providing Appropriate Tools Required in Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-56).    Without limitation of any other indemnities contained in this Lease, and notwithstanding any other terms or provisions of this Lease, Tenant shall indemnify and hold Landlord harmless from and against any and all losses, damages, liabilities, fines, penalties, interest, costs and expenses (including, without limitations, attorneys' fees and court costs) suffered, paid or incurred by Landlord if the representations, statements and certifications contained in this Section 18.15 shall not be true and correct in all respects.

18.16. Bankruptcy Court Approval:

This Lease and the Landlord and Tenant's respective obligations hereunder are subject to the satisfaction of the following conditions on or before September 15, 2008: (a) the entry of a final, non-appealable order (the **"Approval Order"**) of the Bankruptcy Court in Case Number 05-4481-rdd (In re: Delphi Corporation, et al.) unconditionally approving this Lease pursuant to Section 363 of the Bankruptcy Code; (b) delivery to Landlord of a true, correct and complete certified copy of the Approval Order once issued; and (c) Landlord and Tenant's execution of this Lease.  If the foregoing conditions are not satisfied by September 15, 2008, then this Lease shall be null and void and of no force or effect.

**IN WITNESS WHEREOF**, the Landlord has signed this Lease this _____ day of **May,** 2008, and the Tenant has signed this Lease this **8th** day of **May**, 2008.

**ORIX WARREN, LLC**, a Delaware limited liability company

By:    ORIX Real Estate Capital, Inc., its sole member

By:_____

Name:_____

Title:_____

**DELPHI AUTOMOTIVE SYSTEMS LLC**, a Delaware limited liability company

By:_____

Name:  John A. Jaffurs

Title: Executive Director, Operations
        Support Group

24

STATE OF ILLINOIS  )
         ) ss.
COUNTY OF COOK  )

   On this, the _____ day of May, 2008, before me, the undersigned officer, personally appeared _____, the _____ of ORIX Real Estate Capital, Inc., the sole member of ORIX Warren LLC, a Delaware limited liability company, and that he, as such officer, being authorized so to do, executed the foregoing instrument on behalf of said partnership, for the purpose there in contained.

   IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


                   _____
                   Name:_____
                   Notary Public
[NOTARIAL SEAL]        County of _____
                   State of _____
                   My Commission:_____


STATE OFMICHIGAN  )
          ) ss.
COUNTY OF  OAKLAND )

   On this, the 8th day of May, 2008, before me personally appeared John A. Jaffurs, the Executive Director, Operations Support Group of DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company, and that he/she, as such officers, being authorized so to do, executed the foregoing instrument on behalf of said limited liability company, for the purpose therein contained.

   IN WITNESS WHEREOF, I have hereunto set my hand and official seal.


                   _____
                   Name:_____
                   Notary Public
[NOTARIAL SEAL]        County of _____
                   State of _____
                   My Commission:_____

## SCHEDULE 1

## <u>LIST OF EXHIBITS</u>

Article 1          -          Exhibit "A"          Legal Description

Article 2          -          Exhibit "B"          Certificate

## Exhibit "A"

## LEGAL DESCRIPTION

Situated in the Township of Champion, County of Trumbull and State of Ohio and known as being a part of Section 79 in the original survey of said township and being further bounded and described as follows:

Beginning at a point at the northeast corner of a 150 foot wide ingress-egress utility easement recorded in Volume 1035 at page 619 in the Trumbull County Records of Deeds, said easement created for the Educational Center Highway, said point also being S. 00'-01'-01" W. 392.70 feet south of the northwest corner of a 82.002 acre parcel of land leased to the Trumbull County Vocational School and recorded in Volume 97 at page 186 in the Leases and Agreements of Trumbull County;

Thence N. 0'-01'-01" E., along the westerly line of the 82.002 acre parcel leased to the Trumbull County Vocational School, 392.70 feet to a point at the northwest corner of said 82.002 acre parcel;

Thence N. 89'-46'-57" W., along the northerly line of the Trumbull County Commissioner's 10.3578 acre parcel 40.00 feet to an iron pin on the proposed westerly right of way of Education Boulevard, said iron pin being the True Place of Beginning of the parcel described herein.

Thence continuing N. 89'-46'-57" W., along the north line of the Trumbull County Commissioner's 10.357 acre parcel 1054.80 feet to a point at the northwest corner of said parcel, said point being S. 9'-16'-58" E., 1.24 feet from an iron pin found, said point also being in the east line of the original North Warren Heights Townsite Plat as recorded in Plat Book 12 at pages 76 & 77 in the Trumbull County Recorder of Plats;

Thence N. 00'-15'-43" E., along the east line of the original North Warren Heights Townsite Plat, 490.00 feet to a point;

Thence S. 89'-46'-57" E., along a new division line, 1052.70 feet to a point on the proposed westerly right-of-way of proposed Education Boulevard;

Thence S. 00'-01'-01" W., along the proposed westerly right-of-way of Education Boulevard, 490.00 feet to a point of beginning and containing within said bounds 11.853 acres of land as surveyed by Lynn, Kittinger & Noble, Inc., Professional Surveyors in October 1997.

And being a part of that land previously conveyed to Champion Land Venture as recorded in Official Record Volume 415 at page 285 of the Trumbull County Official Records.

Exhibit "B"

## CERTIFICATE

      **THIS CERTIFICATE** is made as of the _____ day of _____ ,
_____, between ORIX Warren, LLC, a Delaware limited liability with its principal address in
care of ORIX Real Estate Capital, Inc., c/o David R. Brown, 100 N. Riverside Plaza, Suite 2100,
Chicago, IL  60606, hereinafter referred to as **"Landlord"**, and Delphi Automotive Systems
LLC, a Delaware limited liability company, with its principal address at 5725 Delphi Drive,
Troy, Michigan 48098, hereinafter referred to as **"Tenant"**,

W I T N E S S E T H:

The Lease dated as of May 8, 2008 between the parties hereto covering the property commonly
known as the Delphi Packard Electrics Systems,  Research Building located on the real property
described in Exhibit "A" attached hereto, is hereby supplemented as follows:

The Initial Term of the Lease commenced on January 1, 2009, and the Initial Term shall expire
on _____, 20__.

As hereby supplemented, the Lease is in all respects ratified and confirmed.

**IN WITNESS WHEREOF**, the parties have executed this Certificate as of the date first written
above.

                              **ORIX WARREN, LLC**, a Delaware limited
                              liability company

                              By:   ORIX Real Estate Capital, Inc.,
                                    its sole member

                                    By:_____
                                  Title:_____

                              **DELPHI AUTOMOTIVE SYSTEMS LLC**, a
                              Delaware limited liability company

                              By:_____

                              Title:_____

# TABLE OF CONTENTS OF LEASE

LANDLORD:      ORIX WARREN, LLC

TENANT:        DELPHI AUTOMOTIVE SYSTEMS LLC

DATE:          May 8, 2008

LOCATION:      WARREN, OHIO

Paragraph                                                                           Page

1.    Demise. ........................................................................................ 1

2.    Term. .......................................................................................... 1

3.    Rent. .......................................................................................... 2

4.    Title; Possession. ........................................................................ 2

5.    Use of Property ........................................................................... 2

      (a)  Permitted Use. ..................................................................... 2

      (b)  Compliance with Laws and Regulations ............................... 2 3

6     Improvements; Alterations. .......................................................... 3

7.    Surrender of Property. ................................................................. 3

8.    Taxes; Expenses. ........................................................................ 3

      (a)  Payment of Taxes ................................................................ 3

      (b)  Contesting Taxes ................................................................. 3 4

      (c)  Evidence of Taxes ............................................................... 4

      (d)  Adjustment of Taxes ........................................................... 4

9.    Net Lease. ................................................................................... 4

10.   Maintenance. .............................................................................. 5

11.   No Liens. .................................................................................... 5

12.   Insurance. ................................................................................... 5

      (a)  Failure to Insure .................................................................. 5 6

      (b)  Umbrella Coverage .............................................................. 6

      (c)  Insurance Requirements ....................................................... 6

      (d)  Indemnification; Waiver ...................................................... 6

13.   Condemnation. ........................................................................... 7

14.   Default; Remedies. ...................................................................... 7

15.   Performance by Landlord. ........................................................... 8

16.   Indemnity. ............................................................................................................ 8

17.   Assignment and Subletting. ................................................................................... 9

18.   *Intentionally Deleted* ............................................................................................ 9

19.   Inspection. ............................................................................................................ 10

20.   Quiet Enjoyment. .................................................................................................. 10

21.   Option to Purchase. .............................................................................................. 10

22.   Purchase Price. ..................................................................................................... 10

23.   Put Purchase Requirement. .................................................................................. 10

24.   Notices. ................................................................................................................. 11

25.   No Broker. ............................................................................................................ 11

26.   Landlord/Tenant. .................................................................................................. 11

27.   Memorandum of Lease. ........................................................................................ 11

28.   Force Majeure. ..................................................................................................... 11

29.   Sale of Property; Limited Liability. ..................................................................... 11

30.   Costs, Expenses and Attorneys' Fees. ................................................................. 12

31.   Successors; Assigns. ............................................................................................ 12

32.   Holding Over. ....................................................................................................... 12

33.   Provisions Severable. ........................................................................................... 12

34.   Estoppel Certificates. ........................................................................................... 12

35.   Certain Definitions. .............................................................................................. 12

36.   Miscellaneous. ..................................................................................................... 13

37.   Condition to Lease. .............................................................................................. 13

38.   Counterparts. ........................................................................................................ 13

EXECUTION ACKNOWLEDGMENTS:'


EXHIBIT A: Legal Description
EXHIBIT B: Memorandum of Lease

## LEASE

**THIS AGREEMENT OF LEASE** (hereinafter referred to as this "**Lease**"), made and effective as of the **8th** day of **May, 2008**, by and between **ORIX WARREN, LLC**, with an address of c/o ORIX Real Estate Capital, Inc., 100 North Riverside Plaza, Suite 2100, Chicago, IL, 60606 (hereinafter referred to as "**Landlord**"), and **DELPHI AUTOMOTIVE SYSTEMS LLC,**, a Delaware limited liability company, with an address of 5725 Delphi Drive, Troy, Michigan 48098 (hereinafter referred to as "**Tenant**").

## W I T N E S S E T H

**WHEREAS**, Landlord owns a certain tract of land located in the City of Warren, County of Trumbull, State of Ohio, more particularly described on **Exhibit A**, which is attached hereto and hereby incorporated herein (hereinafter referred to as the "**Property**"); and

A.    Landlord and Tenant (as successor-in-interest to General Motors Corporation) are parties to a Lease dated November 21, 1997 with respect to the Property (the "**1997 Land Lease**")

B.    On October 8, 2005, Delphi Corporation ("**Delphi**") and certain of its U.S. affiliates filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and on October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions for reorganization under the Bankruptcy Code (collectively, the "**Debtors**"). The Debtors continue to operate their business as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

C.    Landlord and Tenant desire to enter into this Lease. The 1997 Land Lease shall remain in full force and effect through and including the expiration of its existing term, and shall further continue in full force and effect with respect to any obligations or indemnities that survive the expiration of such term.

**WHEREAS**, Landlord desires to lease the Property to Tenant and Tenant desires to lease the Property from Landlord on and subject to the terms, covenants and conditions hereinafter set forth;

**IT IS, THEREFORE**, in consideration of the premises, the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agreed by and between the parties hereto, each being legally advised in the premises and intending to be legally bound hereby, as follows, to-wit:

1.    <u>Demise</u>. Landlord hereby leases, lets, and demises unto Tenant, and Tenant hereby leases and rents from Landlord, on and subject to the terms, covenants and conditions herein contained, all of Landlord's right, title and interest in the Property, together with all easements and other appurtenances of Landlord thereto, subject, however, to all covenants, conditions, agreements, easements, encumbrances and restrictions affecting the Property.

2.    Term.

(a)    <u>Initial Term</u>. The term of this Lease with respect to the Property (hereinafter referred to as the "**Initial Term**") shall commence on January 1, 2009 (the "**Commencement Date**") and expire at midnight on the expiration date of the Building Lease Initial Term (as such term is hereinafter defined), unless the same is terminated as hereinafter provided. For purposes hereof, the term "**Building Lease**" shall refer to that certain Lease of even date herewith between Landlord and Tenant for certain premises and the improvements located at 4551 Research Parkway in the City of Warren, County of Trumbull, Ohio and located adjacent to the Property. The term "**Building Lease Initial Term**" shall mean the Initial Term (as such term is defined in the Building Lease) of the Building Lease.

Tenant expressly acknowledges and agrees that this Lease shall commence on the Commencement Date, regardless of any rejection of the 1997 Land Lease proposed by Tenant and/or approved by the Bankruptcy Court in the Bankruptcy Case.

The phrases **"the Term of this Lease"** and **"the Term hereof"**, as used herein, shall mean any period subsequent to the commencement of the Term and prior to the expiration or termination of the Initial Term as extended by all extensions or renewals thereof.

        (b)    <u>Extension Term</u>. Provided Tenant is not in default hereunder beyond any applicable grace period, Tenant shall have the option to extend the Term of this Lease for one (1) successive additional term of five (5) years (the **"Renewal Term"**) but only if and to the extent that Tenant has effectively extended the term of the Building Lease for a corresponding five (5) year term. Tenant shall exercise its option hereunder by giving written notice of its intent to exercise the Renewal Term not less than 550 days prior to the expiration of the Initial Term, and by paying a Renewal Extension Fee of $1.00 to be paid upon the exercise of the above-referenced option to extend. Any such extension shall be effective only if the applicable and corresponding extension of the Building Lease is effective.

All terms and conditions of this Lease shall continue and shall remain in full force and effect throughout the Renewal Term (except for the renewal option contained herein).

        3.    <u>Rent</u>. Tenant shall pay, as rent hereunder, to Landlord, at the address of Landlord first set forth above, or to such other person or at such other address as Landlord may from time to time hereafter designate by notice to Tenant, without demand and without set-off whatsoever, rent in the amount of one dollar ($1.00) per year for every year or partial year during the Term hereof, payable in advance on the Commencement Date.

If Tenant shall fail to pay, when the same is due and payable, any rent or other charges due Landlord hereunder within five (5) days after it is due, then such unpaid amounts shall bear interest from the due date thereof to the date of payment at the annual rate of four percent (4%) plus the "prime rate" as such rate is published from time to time in <u>The Wall Street Journal</u> or, if <u>The Wall Street Journal</u> no longer publishes said rate or is no longer published, then a comparable rate published by <u>The Wall Street Journal</u> or the "prime rate" as published by a substantially comparable publication, as applicable, and in either such case as selected by Landlord.

        4.    <u>Possession</u>. On the Commencement Date, Tenant shall be entitled to possession of the Property, subject, however, to the terms and conditions hereof, and Tenant shall be deemed to have taken possession of the Property and to have accepted the Property in "as is", "where is" and "with all faults" condition, without any representations or warranties on the part of Landlord, whatsoever, either express or implied as to the title, status, or condition of such Property, including, without limitation, the environmental condition thereof.

        Notwithstanding any other provision in this Lease to the contrary, Tenant acknowledges and agrees that: (i) Landlord shall have no liability or obligation to Tenant with respect to or arising out of the oil and gas wells and any pipelines, tanks or other improvements or equipment or appurtenances associated with or relating to such wells (collectively, the **"Oil and Gas Facilities"**) located on the Property; (ii) Tenant hereby releases Landlord from any and all such liability or obligations and shall indemnify, defend and hold harmless Landlord, its partners, agents and employees from and against any and all costs, expenses, losses, liabilities, claims and causes of action sustained, incurred or asserted against or paid by Landlord, its partners, agents and employees arising out of or relating to the Oil and Gas Facilities located on the Property; and (iii) Tenant shall look to the operator of such wells, and not Landlord, in connection with any cost, liability, expense or obligation sustained, incurred or paid by Tenant arising out of or related to any such Oil and Gas Facilities.

        5.    <u>Use of Property</u>.

        (a)    <u>Permitted Use.</u> During the Term of this Lease, the Property shall be used only as vacant land and for no other purposes. Tenant shall, at all times, maintain the

Property in a sound and efficient manner and shall not, at any time, do or permit any act or thing which may be contrary to the terms and conditions of this Lease, or to any Legal Requirements or Insurance Requirements (as such terms are hereinafter defined), or which may impair the value or usefulness of the Property, or any part or parts thereof, or which may constitute a public or private nuisance or waste.

(b)    Compliance with Laws and Regulations. Tenant shall, at all times, maintain, use and occupy the Property, in a lawful manner, and in compliance with the provisions of all Legal Requirements and provision of insurance underwriters applicable to the Property. Tenant's obligations hereunder shall include, without limitation, the obligation to restore and/or remediate the Property, if necessary, to effect such compliance with Legal Requirements.

6.    Improvements; Alterations. Tenant shall not make or construct any additions, alterations, modifications, improvements, changes in grade or other changes (hereinafter referred to as "**Alterations**") in or to the Property, without the prior written consent of Landlord, which consent shall not be unreasonably withheld, provided the use is in compliance with the terms of Paragraph 5 hereof.

7.    Surrender of Property. At the expiration or termination of this Lease, Tenant shall peaceably yield up the Property peaceably in clean and good order, as vacant land and subject to any alterations consented to by Landlord pursuant to Paragraph 6. Should Tenant fail to remove any of its property from the Property on or before the expiration or termination of this Lease, then the same shall be considered as abandoned and become the property of Landlord and Landlord may remove any such property and charge Tenant for the reasonable costs of said removal.

8.    Taxes; Expenses. Tenant will, at Tenant's cost and expense, bear, pay and discharge, or cause to be borne, paid and discharged, prior to delinquency, all real estate and other taxes (including, without limitation, real estate and personal property taxes, if any), assessments (special or otherwise), including all installments therefor falling due after the Commencement Date, payments in lieu of taxes, sewer rents, water rents and charges, duties, impositions, license and permit fees, charges for public utilities of any kind, maintenance and common area charges and management fees payable pursuant to any applicable covenants and restrictions, association and district fees and expenses, if any, and payments and other charges of every kind and nature whatsoever, ordinary or extraordinary, foreseen or unforeseen, general or special (all of which are hereinafter sometimes collectively referred to as "**Taxes**"), which shall, pursuant to present or future law or otherwise, during the Term hereby granted, have been or shall be levied, charged, assessed or imposed upon, or grow or become due and payable out of or for, or become or have become a lien on, the Property or any part thereof, or improvements now or hereafter located thereon, or the appurtenances thereto, or the sidewalks or streets adjacent thereto, or any franchises as may be appurtenant to the use and occupation of the Property; it being the intention of the parties hereto that the rents reserved herein shall be received and enjoyed by Landlord as a net sum free of all of such Taxes or any tax or charge in replacement or substitution of the foregoing or of a similar character; provided, however, that if at any time during the Term of this Lease the then prevailing method of taxation or assessment shall be changed so that the whole or any part of the Taxes theretofore payable by Tenant as above provided shall instead be levied, charged, assessed or imposed wholly or partially on the rents received by Landlord from the Property, or shall otherwise be imposed against Landlord in the form of a franchise tax or otherwise, then Tenant shall pay all such levies, charges, assessments, impositions, taxes, and other substituted charges prior to delinquency. If, by law, any such Tax is payable, or may at the option of the taxpayer be paid in installments (whether or not interest shall accrue on the unpaid balance of such Tax), Tenant may pay the same, together with any accrued interest on the unpaid balance of such Tax, in installments as the same, respectively, become due and before any fine, penalty, interest, or cost may be added thereto for the nonpayment of any such installment and interest.

(a)    Payment of Taxes. If requested by Landlord, Tenant shall pay all interest and penalties imposed upon the late payment of any Tax which Tenant is obligated to pay or to cause to be paid hereunder. If Tenant shall fail to pay any Tax prior to

3

delinquency, then Landlord may pay the same with all interest and penalties lawfully imposed upon the last payment thereof, and the amounts so paid by Landlord shall thereupon be and become immediately due and payable by Tenant to Landlord hereunder, together with interest thereon. Notwithstanding the foregoing, Tenant shall promptly pay all such Taxes if at any time the Property or any part thereof shall be subject to forfeitures or if the Landlord shall be subject to any criminal or civil liability arising out of the nonpayment thereof.

      (b)    <u>Contesting Taxes.</u> Tenant, at Tenant's cost and expense, may, in good faith, contest the validity or amount of any Tax, in which event Tenant may defer the payment thereof if permitted by applicable law for such period so long as such contest shall be continuously and diligently prosecuted to conclusion upon the conditions, however, that in the event of each such deferment of payment by Tenant:

      (i)    prior to the date on which the Tax being contested shall become delinquent, and from time to time thereafter until payment thereof shall be finally determined not to be payable by the appropriate body having jurisdiction, Tenant shall deposit and thereafter maintain with Landlord satisfactory indemnity or other security, reasonably satisfactory to Landlord sufficient to pay the item or items so contested or intended to be contested together with the interest and penalties thereon which shall accrue during the period of such contest; and

      (ii)    no provision of this Lease shall be construed so as to require Landlord to allow any such items so contested or intended to be contested to remain unpaid for such length of time as shall permit the Property, or the lien thereon created by such item to be contested, to be sold by federal, state, county or municipal authority for the nonpayment thereof.

      (c)    <u>Evidence of Taxes</u>  An official certificate or statement issued or given by any sovereign or municipal authority, or any agency thereof, or any public utility, showing the existence of any Tax, or interest or penalties thereon, the payment of which is the obligation of Tenant as herein provided, shall be conclusive evidence for all purposes of this Lease of the existence and amount of such Tax, interest, and penalties. Within thirty (30) days after request by Landlord therefor, Tenant shall provide Landlord with evidence of payment of any and all such Taxes.

      (d)    <u>Adjustment of Taxes.</u> Any Tax relating to a fiscal period of the taxing authority, a part of which period is included within the Term of this Lease, and a part of which is included within a period of time prior to the commencement of the Term of this Lease or after the expiration of the Term of this Lease, shall be adjusted as between Landlord and Tenant as of the commencement or the termination of the Term of this Lease, so that the Landlord shall pay the proportion of such Tax which relates to that part of such fiscal period included in the period of time both prior to the commencement or after the termination of this Lease bears to such fiscal period, and the Tenant shall pay the remainder thereof. If such Tax consists of an assessment (special or otherwise), Tenant shall be responsible for all installment payments thereof which come due after the Commencement Date but before the expiration of the Term of this Lease.

      9.    <u>Net Lease</u>. This Lease is and shall be an absolutely "net" lease, and the rent and all other sums payable hereunder by Tenant (all of which shall be deemed to be additional rent) shall be paid without notice or demand and without set-off, counterclaim, abatement, suspension, deduction, or defense. Tenant shall pay all Taxes, insurance premiums, maintenance and remediation costs and expenses, utility charges and expenses, impositions, and all other costs and expenses, of whatever nature, relating in any way to the Property and/or the operation thereof during the Term of this Lease, under the terms and conditions of this Lease. In addition, this Lease shall continue in full force and effect, and the obligations of Tenant hereunder shall not be released, discharged, diminished, or otherwise affected by reason of any damage to the Property, or any part or parts thereof; any Partial Taking (as hereinafter defined), any restriction or prevention of or interference with

4

any use of the Property, or any part or parts thereof; or any eviction from the Property, or any part or parts thereof, by reason of paramount title or otherwise. It is expressly understood and agreed that Landlord shall have no responsibility or obligations whatsoever, with respect to the Property or the condition or use thereof, during the Term of this Lease under the terms and conditions of this Lease, and shall be absolutely, without limitation, exculpated from any and all such responsibilities and/or obligations, all such responsibilities and obligations being those of Tenant. Tenant hereby indemnifies and saves Landlord harmless from and against any and all claims, damages, losses, responsibilities, liabilities, costs, fees and expenses, including court costs and reasonable attorneys' and expert witness fees, arising out of, or in connection with the Property or Tenant's use and operation thereof, including, without limitation, matters arising out of, or in connection with, the condition, environmental or otherwise, of the Property whether such condition existed prior to or after the Commencement Date. Notwithstanding the foregoing, Tenant shall not be required to pay the cost of interest and principal payments on debt incurred by Landlord relating to the Property, or any cost or expenditure for which Landlord is reimbursed by insurance proceeds or otherwise. It is understood that Landlord shall not be required to perform any management services.

10.    Maintenance. Tenant shall, at its sole cost and expense: (a) keep the Property clean, neat, and safe and maintain the same in good order and condition; (b) comply with all Legal Requirements and Insurance Requirements, including, without limitation, Legal Requirements relating to the remediation of the Property; and (c) make all repairs, replacements and alterations to all utilities conduits, fixtures and equipment situated on or serving the Property, which may be necessary to maintain the same in good repair and condition or which may be required by any Legal Requirements. It is expressly understood and agreed that Landlord shall have no responsibility or obligation whatsoever with respect to any services to be provided to the Property or with respect to any repair or maintenance of the Property and shall be absolutely, without limitation, exculpated from any and all such responsibilities and/or obligations, all such responsibilities and obligations being those of Tenant.

11.    No Liens. Without in each instance obtaining the prior written consent of Landlord, Tenant shall not directly or indirectly create or permit to be created or to remain, and will immediately discharge, any lien, encumbrance, or charge on, or pledge of, the Property, or any part thereof, the interest of Tenant hereunder or therein, or the rent or other payments hereunder, other than: (a) this Lease; (b) any assignment, pledge, lien, encumbrance, charge, conditional sale, or title retention agreement affecting the Property, resulting solely from (i) any action by Landlord or (ii) any liability or obligation on the part of Landlord which Tenant is not obligated by this Lease to assume; and (c) liens for impositions not yet payable. In amplification and not in limitation of the foregoing, Tenant shall not knowingly permit any portion of the Property to be used by any person or persons or by the public, as such, at any time or times during the Term of this Lease, in such manner as might tend to impair the title or interest of Landlord in the Property, or any portion thereof, or in such manner as might make possible a claim or claims of adverse use, adverse possession, prescription, dedication, or other similar claims of, in, to, or with respect to the Property, or any part thereof.

12.    Insurance. Tenant hereby agrees: to indemnify and hold Landlord harmless from and against any and all injury, loss, claims or damage to or by any person or property while on the Property, or otherwise if occasioned by any act or omission of Tenant or anyone claiming by, through, or under Tenant; to maintain comprehensive general liability insurance, insuring Landlord and Tenant, as their interests may appear, against all claims, demands, and actions for property damage, bodily injury to or death arising from, related to, or in any way connected with the Property or the use, maintenance or operation thereof, in an amount of not less than Five Million Dollars ($5,000,000), combined single limit (Landlord having the right, from time to time, to require Tenant to increase the aforesaid amounts to equal such amounts of insurance as may be reasonably required by Landlord or Landlord's mortgagee) and, in addition, and in like amounts, covering the contractual liability of Tenant under the aforesaid hold harmless clause. Such insurance shall include, but not be limited to: (a) property operations; (b) blanket contractual; (c) independent contractors; (d) completed o

5

perations; (e) broad form property damage; and (f) broad form vendors (but only if applicable).

    a.    <u>Failure to Insure.</u> If Tenant shall fail to effect or maintain such insurance, Landlord may effect the same pursuant to <u>Paragraph 15</u> hereof. Landlord shall not be limited in the proof of any damages which Landlord may claim against Tenant arising out of or by reason of Tenant's failure to provide and keep in force insurance policies as aforesaid, to the amount of the insurance premium or premiums not paid or incurred by Tenant which would have been payable upon such insurance but shall also be entitled to recover as damages for such breach the uninsured amount of any loss, liability, damages, claims, costs and expenses of suit, judgments and interests, suffered or incurred by Landlord, by reason of any casualty or accident or disaster occurring on the Property which should have been insured hereunder. Tenant shall not violate or permit to be violated any condition of any of said policies, and Tenant shall so perform and satisfy the requirements of the companies writing such policies so that at all times companies of good standing shall be willing to write such insurance.

    (b)    <u>Umbrella Coverage.</u> Tenant shall have the right to insure and maintain the insurance coverages required to be maintained by Tenant under umbrella or blanket insurance coverages covering other premises so long as such umbrella or blanket insurance policies provide coverage for the Property and otherwise comply with the amounts and types of insurance and the other requirements provided for under this Lease.

    (c)    <u>Insurance Requirements.</u> All policies of insurance procured by Tenant shall be insured by insurance companies with general policy holder's rating of not less than A+ and a financial rating of Class XI as rated in the most current available Best's Insurance Landlord Reports, and licensed to do business in the state where the Property is located and authorized to issue such policy or policies. All policies of insurance procured by Tenant shall be written as primary policies not contributing with and not in excess of coverage that Landlord may carry. All comprehensive general liability insurance procured by Tenant shall contain an endorsement that Landlord, although named as an insured, nevertheless shall be entitled to recover under said policies for any loss or damage occasioned to it, its servants, agents and employees by reason of the negligence of Tenant. All such insurance shall name Landlord and Landlord's mortgagee and such other parties designated by Landlord as additional insureds thereunder, and shall provide that it will not be subject to cancellation, termination, or change, except after at least thirty (30) days prior written notice to Landlord and Landlord's mortgagee. The aforesaid policies or duly executed certificates thereof (which certificates shall evidence the waiver by each insurer of all rights of subrogation against Landlord and the payment of the subject premiums) shall be deposited with Landlord on or before the commencement of the Term hereof and said policies shall contain such form and content as shall be approved by Landlord and, upon renewals of such policies, not less than thirty (30) days prior to the expiration of the term of such coverage. Neither the issuance of any insurance policy required under this Lease nor the minimum limits specified herein shall be deemed to limit or restrict Tenant's liability under this Lease.

    (d)    <u>Indemnification; Waiver.</u> Anything in this Lease to the contrary not-withstanding, Landlord shall not be liable to Tenant for any business interruption or any loss or damage to property or injury to or death of persons occurring on the Property or the adjoining properties, sidewalks, streets or alleys; or in any manner growing out of or connected with Tenant's use and occupation of the Property, or the condition thereof, or of sidewalks, streets, or alleys adjoining, caused by the negligence or other fault of Landlord or of its agents, employees, subtenants, licensees, or assignees, to the extent that such business interruption or loss or damage to property or injury to or death of persons is covered by or indemnified by proceeds received from insurance carried by Tenant (regardless of whether such insurance is payable to or protects Landlord or Tenant or both) or for which such party is otherwise reimbursed; and Tenant hereby waives all right of recovery against Landlord, its agents, employees, subtenants, licensees, and assignees, for any such loss or damage to property or injury to or death of persons to the extent the same is covered or indemnified by proceeds received from any such insurance, or for which reimbursement is otherwise

received.

13.    Condemnation. In the event of a Total Taking or a Substantial Taking (as such terms are hereinafter defined), the Term hereof shall terminate as of the date of the Taking (as hereinafter defined); and Landlord shall exercise its rights under the Put Purchase Requirement as more particularly described in Paragraph 23 hereof. In the event of a Partial Taking, Tenant shall, as soon as practicable, restore the Property to a condition as equivalent to that existing prior to such Taking as reasonably possible. The award or other compensation, whether pursuant to judgment or by agreement or otherwise, with respect to such Taking, shall be the property of Tenant, after deduction for any reasonable costs and expenses incurred by Landlord in connection with any such condemnation.

14.    Default; Remedies. Each of the following events shall constitute an "**Event of Default**" hereunder:

(a)    if Tenant shall fail to make payment of all or any part of the rent or any other payments required of Tenant provided for hereunder within thirty (30) days after notice of said failure; or

(b)    if Tenant shall fail to duly and fully observe or perform any other covenant, condition, or agreement on the part of Tenant to be observed or performed by Tenant pursuant to this Lease, or any other agreement between Landlord and Tenant, whether now existing or hereafter arising, and such failure shall continue for thirty (30) days after notice thereof to Tenant (or if such default is not of a type that can reasonably be corrected within thirty (30) days, then if Tenant fails to commence promptly and in good faith to proceed with due diligence to correct such default and said default is not corrected within one hundred twenty (120) days after such notice); or

(c)    if any order shall be made for the appointment of a receiver or custodian of Tenant or of all or any part of its property, or for the appointment of any assignee for creditors, or for the sequestration, winding up, or liquidation of Tenant and/or its affairs; or

(d)    if Tenant shall make any assignment for the benefit of its creditors or shall, while insolvent, enter into an arrangement, composition, or similar proceeding with its creditors for the satisfaction of its debts or shall be unable to pay its debts when they become due or shall consent to the appointment of a receiver or custodian of all or any part of its property; or

(e)    if creditors of Tenant shall file a petition against Tenant in any court under the provisions of any federal or state bankruptcy or insolvency law; or

(f)    if Tenant shall file a petition for reorganization or other relief pursuant to any federal or state bankruptcy or insolvency law; or

(g)    if the interest of Tenant in the Property or this Lease shall, by any action or inaction by Tenant or by operation of law or otherwise, without the prior written consent of Landlord, devolve or pass to any other entity;

then, and in any such event, regardless of and notwithstanding the fact that Landlord has or may have some other right or remedy hereunder or by virtue hereof, at law, or in equity, and without in any way restricting the exercise of any such other right or remedy: (i) Landlord may give notice to Tenant of termination of the Term of this Lease and the exercise by Landlord of the put described in Paragraph 23 hereof, which notice shall specify a day, not less than thirty (30) days thereafter, upon which the Term of this Lease shall terminate and the Property shall be conveyed to Tenant pursuant to Paragraph 23 hereof, and, upon the giving of such notice and provided that Tenant simultaneously shall have purchased the Property pursuant to and in full compliance with Paragraph 23 hereof and Tenant shall have executed and delivered any and all documents in connection with said purchase as Landlord may deem reasonably necessary to effectuate said purchase and lease termination, then this Lease and the term and estate hereby granted shall expire and terminate upon the day so specified, as

7

fully and completely and with the same force and effect as if the day so specified were the date hereinbefore fixed for the expiration of the Term of this Lease and all rights of Tenant under this Lease shall expire and terminate therewith; and (ii) if for any reason Tenant fails

to comply with this Paragraph 14 and Paragraph 23 and fails to purchase the Property, then Landlord may either (A) terminate this Lease and Landlord may, without further notice and without liability therefor, enter upon, re-enter, possess, and repossess itself thereof, by force, summary proceedings, ejectment, or otherwise; dispossess and remove Tenant and all other persons and property therefrom; and have, hold, and enjoy the Property and the right to receive all rental and other income of and from the same; all without liability for any damages resulting therefrom; or (B) without terminating this Lease, Landlord may repossess the Property by forcible entry, detainer suit, or otherwise, without demand or notice, in which event Landlord may (but shall not be obligated to) relet all or any part of the Property for such rent and upon such terms as shall be satisfactory to Landlord (including, but not limited to, the right to relet the Property for a term greater or lesser than that remaining hereunder, the right to relet the Property as a part of a larger area, and the right to change the character or use made of the Property); or (C) sue for specific performance. For the purpose of any such reletting, Landlord may remediate or restore the Property. If the Property is relet and a sufficient sum shall not be realized from such reletting, after paying all of the reasonable costs and expenses of such improvements, repairs, remediation and changes and the reasonable expenses of such reletting and collection of the rent accruing therefrom to satisfy the rent and other charges, rates, and sums herein provided to be paid for the remainder of the Term hereof, then Tenant shall pay to Landlord, on demand, any deficiency, and Tenant hereby agrees that Landlord may file suit from time to time to recover any amounts falling due under the terms hereof. Any costs and expenses incurred by Landlord in connection with any such Event of Default, including court costs and reasonable attorney's fees, or otherwise incurred in connection with the Property shall be the responsibility of Tenant and shall be paid at the time of the purchase pursuant to Paragraph 23 or if such purchase does not take place, then within thirty (30) days after request therefor from Landlord. Any amounts due hereunder shall be deemed additional rent hereunder. This provision shall survive the expiration or termination of this Lease.

No consent or waiver, expressed or implied, by Landlord, to or of any breach by Tenant of any covenant, condition, or duty hereunder, nor any failure of Landlord to enforce any such covenant, condition, or duty, shall be construed as a consent or waiver to or of any other breach of the same or any other covenant, condition, or duty. In any event, no consent or waiver by Landlord shall be effective unless in writing and signed by Landlord, and no acceptance of rent by Landlord shall constitute a waiver by Landlord to or of any default by Tenant.

15. Performance by Landlord. Landlord may, but shall not, in any event, be obligated to, make any payment or perform any act hereunder to be made or performed by Tenant, with the same effect as if made or performed by Tenant; provided, however, that no entry by Landlord upon the Property for such purposes shall constitute or be deemed to be an eviction of Tenant; and provided, further, that no such payment or performance by Landlord shall constitute or be deemed to be a waiver of or consent to an Event of Default, shall release Tenant from any obligation hereunder, or shall prevent Landlord from pursuing any other right or remedy available hereunder, at law, or in equity. All sums paid by Landlord and all costs and expenses (including, but not limited to, reasonable attorneys' fees) incurred by Landlord in connection with any such payment or performance, together with interest thereon at the rate set forth in Paragraph 3 above, shall constitute additional rent immediately due and payable to Landlord by Tenant.

16. Indemnity. Tenant hereby agrees to indemnify and hold Landlord harmless from and against any and all obligations, claims, damages, penalties, causes of action, judgments, costs, liabilities (including, without limitation, liabilities under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., and any other federal, state or local environmental statute, law, ordinance, regulation, rule or judicial or administrative order), and expenses (including, but not limited to, court costs, reasonable attorneys' and expert witness fees) (the foregoing are i

8

ndividually and collectively sometimes referred to herein as **"Expenses"**) imposed upon, incurred by, or asserted against Landlord or the Property for any reason whatsoever (excluding only those liabilities, obligations, claims, damages, penalties, causes of action, judgments, costs and expenses (including, but not limited to, reasonable attorneys' fees) caused by the intentional misconduct of Landlord) arising out of or in connection with the Property or this Lease, including, but not limited to: (a) any accidents or injury to or death of persons or loss of or damage to property occurring on or about the Property, or any part or parts thereof, or the adjoining sidewalks, curbs, streets, or ways; (b) any failure by Tenant to duly and fully perform or comply with each and all of the terms of this Lease; (c) any negligence or tortious act by Tenant or any of its agents, contractors, sublessees, licensees, or invitees; or (d) any claim for a construction lien in connection with work done or materials furnished with respect to the Property. If any action, suit, or proceeding is brought against Landlord by reason of any such occurrence, then Tenant, upon request of Landlord, shall, at the sole cost and expense of Tenant, defend such action, suit, or proceeding, with counsel designated by Tenant and approved by Landlord.   This provision shall survive the expiration or termination of this Lease.

As used herein, **"Hazardous Substance"** means any substance or material which is toxic, ignitable, reactive, or corrosive and which is regulated by any local government, the State of Ohio or the United States government, and includes any and all material or substances which are defined as **"Hazardous Waste"**, **"Hazardous Material"**, **"Extremely Hazardous Waste"** or a **"Hazardous Substance"**, pursuant to state, federal or local governmental law, including, but not limited to, asbestos, polychlorinated biphenyls (**"PCBs"**), and petroleum. Tenant hereby agrees to indemnify and hold harmless Landlord from any and all Expenses (including reasonable attorneys' fees) relating to the presence or suspected presence of Hazardous Substances in or on the Property at or prior to the date of this Lease and at any time thereafter.

17.   <u>Assignment and Subletting</u>. Tenant shall not assign, sell, mortgage, pledge, or in any manner transfer this Lease (hereinafter collectively referred to as **"Assignment"**) or any right, title or interest of Tenant hereunder, by operation of law or otherwise, or sublet the Property, or any portion thereof, without the prior written consent of Landlord, which consent shall not be unreasonably withheld; provided, however, that Tenant may assign this Lease to a company controlled by or under common control with Tenant without Landlord's consent so long as notice of the assignment or sublet is delivered to Landlord within thirty (30) days after the date of any such assignment or sublet and a copy of the assignment or sublease is delivered to Landlord within one hundred twenty (120) days after the date of any such assignment or sublet.

If any one of the foregoing events shall occur, whether with or without the prior written consent of Landlord, Tenant shall remain liable to Landlord for the payment of rent and all other sums hereunder then due and thereafter to become due and the performance of all other obligations of Tenant hereunder for the balance of the Term hereof. Landlord is hereby authorized to collect rent directly from any assignee of this Lease, and Tenant hereby agrees that such collection shall not constitute consent by Landlord to such assignment. Upon the occurrence of an Event of Default, if this Lease is then assigned or the Property, or any part thereof, are then sublet, then Landlord, in addition to any other remedies available hereunder, at law, or in equity, may, at its option, collect directly from such assignee or subtenant all rents and other payments becoming due to Tenant under such assignment or sublease and apply such rents and other payments against any sums due to Landlord by Tenant hereunder, and no such collection shall be construed to constitute a novation or a release of Tenant from the performance of any of its obligations hereunder. The consent of Landlord to any such assignment, sublease, pledge, mortgage, or encumbrance shall not release or waive the prohibition against the same thereafter or constitute a consent to any other assignment, sublease, pledge, mortgage, or encumbrance. Each and every assignee of the interest of Tenant hereunder shall, immediately upon such assignment, be, become, and remain liable for the due performance of all of the obligations of Tenant hereunder.

18.   Intentionally Deleted.

9

19.    Inspection. Tenant shall permit Landlord, any mortgagee of the Property or any prospective purchaser and their agents to enter the Property at all reasonable times for the purpose of inspecting the same, of making repairs or alterations thereto or thereof.

20.    Quiet Enjoyment. Landlord hereby covenants that, so long as Tenant shall duly and punctually perform and observe all of its obligations under this Lease, Tenant shall peaceably and quietly have, hold, and enjoy the Property, subject to the terms, covenants, and conditions of this Lease, free from hinderance by Landlord.

21.    Option to Purchase. Landlord hereby grants to Tenant the option to purchase the Property or any part or parts thereof at a purchase price per acre determined as set forth in Paragraph 22 below. The option herein granted may be exercised by Tenant from time to time and at any time during the Term hereof, by providing written notice to Landlord. Further, the option herein granted may be exercised by Tenant only if Tenant is not in default under this Lease. Within twenty (20) days after the giving of notice by Tenant exercising an option to purchase hereunder, Landlord shall, at Tenant's expense, furnish to Tenant an owners policy of title insurance (or a binding commitment to issue such title insurance) in an amount to be determined by Tenant issued by a title insurance company licensed to do business in the State of Ohio, naming Tenant as the insured and guaranteeing Landlord's title to that portion of the Property covered by the election. Tenant shall be allowed ten (10) days in which to examine such evidence of title and if the same does not show Landlord's title to be free from any liens, charges, and encumbrances created by Landlord which adversely affect the marketability of title, Landlord shall have the right, but shall not be obligated , within a reasonable time thereafter, to cure such defects and clear title. The closing of the transaction shall be held sixty (60) days after the giving of the applicable notice by Tenant of its exercise of the option herein granted; the closing date shall be extended to such period of time that Landlord needs to cure title defects. Tenant shall, at its sole cost and expense, arrange for and obtain any necessary approvals, authorizations and consents to the subdivision of the Property if Tenant elects to purchase less than all of the Property and the Closing Date shall be extended as necessary so that all such necessary approvals, consents and authorizations have been obtained to the satisfaction of Landlord prior to the applicable closing. At the closing, Landlord shall by special warranty deed convey to Tenant fee simple title to that portion of the Property covered by the election free and clear of all liens, charges, and encumbrances excepting those permitted by this paragraph. Any transfer, stamp, recording or other similar taxes, fees or charges or costs, including, without limitation, attorney's fees, copying charges and escrow and title charges, with respect to such transfer shall be paid by Tenant. Upon delivery of such special warranty deed, Tenant shall pay the purchase price to Landlord in cash or by certified check. Tenant may apply all or any portion of the purchase price to cure any title defects not permitted by this Paragraph 21 which Landlord is unable or unwilling to cure. Upon the closing, this Lease and all of the obligations arising from and after the closing shall terminate as to that portion of the Property conveyed to Tenant. If Tenant elects to purchase less than all of the Property, then the remainder of the Property shall continue to be subject to all of the terms and provisions of the Lease and the term "Property" as used herein shall refer to that portion of the Property which was not conveyed to Tenant. Tenant shall not assign its rights under this option to purchase except in conjunction with an approved assignment of the entire Lease as set forth in Paragraph 17 above. Any conveyances of the Property shall be "as is," "where is," and "with all faults" and Landlord makes no representation or warranties, whatsoever, either express or implied as to title, status or condition of the Property, including, without limitation, the environmental condition thereof other than as set forth in the special warranty deed.

22.    Purchase Price. The purchase price per acre for the Property shall be One Dollar ($1.00).

23.    Put Purchase Requirement. Upon any Total Taking or Substantial Taking of the Property or upon the expiration or earlier termination of this Lease or upon an Event of Default or upon the proposed conveyance of the Property by Landlord, Landlord may require that Tenant purchase the Property by providing Tenant with thirty (30) days prior written notice of its option to have Tenant so purchase the Property, which notice must be given within thirty (30) days after the date of such Taking or Substantial Taking or the expiration

or termination of this Lease or the applicable Event of Default or at least thirty (30) days prior to any proposed conveyance of the Property by Landlord, as applicable. On the first business day which is thirty (30) days after the giving of said notice, Tenant shall purchase the entire Property at the Put Purchase Price hereunder (as such term is hereinafter defined). The Property shall be conveyed in accordance with and pursuant to the provisions of

Paragraph 21 hereof. The Put Purchase Price shall be $1.00 per acre of the Property, together with any and all reasonable costs and expenses incurred by Landlord in connection with such Taking or Event of Default or the exercise of Landlord's rights pursuant to this Paragraph 23, including, without limitation, the enforcement hereof.

24.    Notices. All notices required or otherwise given hereunder shall be in writing and delivered personally or mailed in the United States mail, registered or certified mail or recognized overnight delivery service, addressed to Landlord or Tenant, as the case may be, at the address therefor set forth above, or at such other address as such party may hereafter designate by like notice, all of which notices shall be deemed given upon the earlier of personal delivery or certification thereof.

25.    Brokers. Landlord and Tenant each represent that they have had no dealing with any real estate broker or other person with respect to this Lease in any manner except with CB Richard Ellis, Jones Lang LaSalle Americas, Inc. and DREAL, Inc., Tenant agrees to indemnify and hold harmless Landlord from any claims for any fees or commissions that are payable to any broker, individual or entity other than the brokers described above asserting a claim for a fee or commission with respect to this Lease.

26.    Landlord/Tenant.    Nothing contained herein or in any other instrument or agreement between Landlord and Tenant shall be deemed or construed by the parties hereto or by any third party as creating the relationship of principal and agent or of partnership or of joint venture between Landlord and Tenant.

27.    Memorandum of Lease.    Landlord and Tenant hereby agree that this Lease shall not be recorded, but that Landlord and Tenant shall, promptly after the execution and delivery of this Lease; execute and deliver a memorandum of this Lease, in substantially the form attached hereto as **Exhibit B** and made a part hereof and shall record the same in the office of the Recorders Office of Trumbull County, Ohio to place third parties on notice hereof.

28.    Force Majeure. In the event that either party hereto shall be delayed or hindered in or prevented from the performance of any act required hereunder by reason of strikes, lockouts, labor troubles, inability to procure materials, failure of power, acts of God (including adverse weather conditions), restrictive governmental laws, regulations or actions, riots, insurrection, war, civil commotion, fire or other insured casualty or other reason of a like nature not the fault of the party delayed in performing work or doing acts required under the terms of this Lease, then performance of such act shall be excused for the period of the delay and the period for the performance of any such act shall be extended for a period equivalent to the period of such delay. The provisions of this Paragraph shall not operate to excuse Tenant from prompt payment of rent or any other payments required by the terms of this Lease.

29.    Sale of Property; Limited Liability. If Landlord proposes to convey or transfer its interest in the Property or in this Lease, except as collateral security for a loan, then, prior to such conveyance or transfer, Landlord shall exercise its rights pursuant to Paragraph 23 and Landlord shall be entirely released and relieved from all liability with respect to the performance of any covenants and obligations on the part of the Landlord to be performed hereunder after the date of such conveyance or transfer. This provision shall not be deemed, construed, or interpreted to be or constitute any agreement, express or implied, between Landlord and Tenant that the Landlord's interest hereunder and in the Property shall be subject to impressment of an equitable lien or otherwise. Landlord's liability under this Lease shall be limited to its interest in the Property and Landlord and its partners shall have no personal liability hereunder.

11

30.   Costs, Expenses and Attorneys' Fees. If Landlord shall, without fault on its part, be made a party to any litigation commenced by or against the Tenant, then Tenant shall pay all costs, expenses and reasonable attorneys' fees incurred or paid by Landlord. Tenant and Landlord shall pay all costs, expenses, and reasonable attorneys' fees that may be incurred or paid by the other party in enforcing the covenants and agreements in this Lease or otherwise in connection with this Lease, provided that such other party prevails in any litigation commenced by it to enforce same or otherwise in connection with this Lease.

31.   Successors; Assigns. This Lease and each and all of the terms, covenants, and conditions hereof shall be binding upon and inure to the benefit of Landlord and Tenant and their respective heirs, personal representatives, successors, and assigns (but, as to the successors and assigns of Tenant, the benefits hereof shall inure to them only to the extent that assignment is permitted hereunder). No third party, other than such heirs, personal representatives, and permitted successors and assigns, shall be entitled to enforce any term, covenant, or condition of this Lease or have any rights hereunder. Notwithstanding the foregoing, if Landlord sells the Property, or any portion thereof, subject to this Lease, then Landlord shall thereby be released from any obligation or liability arising thereafter and relating in any way to this Lease or the Property, or such portion thereof.

32.   Holding Over. If Tenant, with the consent or acquiescence of Landlord, remains in possession of the Property after the termination of this Lease and without the execution of a new lease, Tenant shall be deemed to be occupying the Property as a tenant from month-to-month, subject to all the applicable terms, conditions and covenants of this Lease. Tenant hereby waives all rights to any notice regarding the termination of the Term hereof or regarding the surrender of the Property, including any rights under Section 5321.17(B) of the Ohio Revised Code. Acceptance by Landlord of rent after such termination shall not of itself constitute a renewal. Nothing contained in this Section 32 shall be construed or shall operate as a waiver of Landlord's right of reentry or any other right or remedy of Landlord. Such holding over by Tenant, and Landlord's collection of any rent thereof, shall not serve as permission for Tenant's continued occupancy of the Property nor serve to extend the Term.

33.   Provisions Severable. If any provision of this Lease shall be held or declared to be invalid, illegal or unenforceable under any law applicable thereto, such provision shall be deemed deleted from this Lease without impairing or prejudicing the validity, legality and enforceability of the remaining provisions hereof.

34.   Estoppel Certificates. Tenant will, at any time from time to time, upon not less than ten (10) days prior request by the Landlord, execute, acknowledge and deliver to Landlord or Landlord's mortgagee a statement in writing certifying that this Lease is unmodified (or, if modified, then disclosure of such modification shall be made) and in full force and effect, the date to which the rents and other charges have been paid, and stating whether or not said party has knowledge of any default hereunder on the part of the other party in the performance of any covenant, agreement or condition contained herein and if so, specifying each such default, it being intended that any such statement may be relied upon by any prospective purchaser, mortgagee or holder of a deed of trust of the Property or any assignee of any such party.

35.   Certain Definitions. The following terms used in this Lease shall have the meanings set forth therefor below:

(a)   **"Insurance Requirements"** shall mean all terms of any insurance policy covering or applicable to the Property or any part or parts thereof, all requirements of the issuer of any such policy, and all orders, rules, and regulations of the National Board of Fire Underwriters or any other similar agency or board in the case of fire insurance policies applicable to or affecting the Property or any part or parts thereof and the applicable insurance rating bureau or similar body in the case of other insurance policies.

(b)   **"Lease Year"** shall mean a period of one year, with the first Lease Year commencing on the date of commencement of the Term hereof and each succeeding

Lease Year commencing on the next anniversary of such date.

12

(c)    **"Legal Requirements"** shall mean all laws, statutes, codes, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, and licenses which now or at any time hereafter may be applicable to the adjoining sidewalks, streets, or ways, any condition of the Property, or any part or parts thereof, or the operation or use of the Property, or any part or parts thereof.

(d)    **"Partial Taking"** shall mean any Taking of the Property that is not either a Total Taking or a Substantial Taking.

(e)    **"Substantial Taking"** shall mean the Taking of so much of the Property that the portion thereof not taken cannot reasonably be used by Tenant for its intended purpose.

(f)    **"Taking"** shall mean the taking or damaging of the Property, or any part or parts thereof, including severance damage, by eminent domain, by inverse condemnation, or for any public or quasi-public use under any statute. The transfer of title with respect thereto may be either a transfer resulting from the recording of a final order in condemnation or a voluntary transfer or conveyance to the condemning agency or entity under threat of condemnation, in avoidance of an exercise of eminent domain, or while condemnation proceedings are pending. The Taking shall be considered to take place as of the later of (i) the date actual physical possession is taken by the condemnor, or (ii) the date on which the right to compensation and damages accrues under applicable law.

(g)    **"Total Taking"** shall mean the taking of fee title to the entire Property.

36.    <u>Miscellaneous</u>. Neither this Lease nor any of the terms, covenants or conditions hereof may be modified or amended, except by an agreement in writing, duly executed and delivered by the party against whom enforcement of such modification or amendment is sought. If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable under applicable law, then the remainder hereof and the application of such term, covenant or condition to persons or circumstances other than those as to which it is invalid or unenforceable shall not be affected thereby. The Table of Contents and the headings of the paragraphs and subparagraphs of this Lease are for convenience only and shall in no way affect the construction or effect of any of the terms, covenants or conditions hereof. This Lease and each and all of the terms, covenants and conditions hereof shall be interpreted in accordance with and governed in all respects by the internal laws of the State of Ohio.

37.    <u>Condition to Lease</u>.    This Lease and the Landlord and Tenant's respective obligations hereunder are subject to the satisfaction of the following conditions on or before September 15, 2008: (a) the entry of a final, non-appealable order (the **"Approval Order"**) of the Bankruptcy Court in Case Number 05-4481-rdd (In re: Delphi Corporation, et al.) unconditionally approving this Lease pursuant to Section 363 of the Bankruptcy Code (the **"Approval Order"**); and (b) delivery to Landlord of a true, correct and complete certified copy of the Approval Order once issued; and (c) Landlord and Tenant's execution of this Lease. If the foregoing conditions are not satisfied by September 15, 2008, then this Lease shall be null and void and of no force or effect.

38.    <u>Counterparts</u>.    This Lease may be signed in counterparts.

**IN WITNESS WHEREOF**, Landlord and Tenant have caused this Lease to be duly executed on the day and year first above written.

**LANDLORD:**

**ORIX WARREN, LLC**, a Delaware limited Liability company

By:     **ORIX Real Estate Capital, Inc.**
        Its sole member


        By:_____

        Name:_____

        Its:_____



**DELPHI AUTOMOTIVE SYSTEMS LLC**, a Delaware limited liability company


        By:_____

        Name:_____

        Its:_____

14

STATE OF ILLINOIS            )
                             ) ss.
COUNTY OF COOK               )

On this, the ____ day of _____, 2008, before me, the undersigned officer, personally appeared _____, the _____ of ORIX Real Estate Capital, Inc., the sole member of ORIX Warren LLC, a Delaware limited liability company, and that he, as such officer, being authorized so to do, executed the foregoing instrument on behalf of said partnership, for the purpose there in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Name:_____
Notary Public
[NOTARIAL SEAL]                        County of _____
State of _____
My Commission:_____

STATE OFMICHIGAN          )
                          ) ss.
COUNTY OF  OAKLAND  )

On this, the ____ day of _____, 2008, before me personally appeared _____, the _____ of DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company, and that he/she, as such officers, being authorized so to do, executed the foregoing instrument on behalf of said limited liability company, for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Name:_____
Notary Public
[NOTARIAL SEAL]                        County of _____
State of _____
My Commission:_____

# EXHIBIT A

Situated in the Township of Champion, County of Trumbull and State of Ohio and known as being a part of Section 76 & 79 in the original survey of said township and being further bounded and described as follows:

Beginning at a point at the northeast corner of a 150 foot wide ingress-egress utility easement recorded in Volume 1035 at page 619 in the Trumbull County Records of Deeds, said easement ceded for the Educational Center Highway, said point also being S. 00°-01'-01" W., 392.70 feet south of the northwest corner of a 82.002 acre parcel of land leased to the Trumbull County Vocational School and recorded in Volume 97 at page 186 in the Leases and Agreements of Trumbull County;

Thence N. 0°-01'-01" E., along the westerly line of the 82.002 acre parcel leased to the Trumbull County Vocational School, 392.70 feet to a point at the northwest corner of said 82.002 acre parcel;

Thence N. 89°-46'-57" W., along the northerly line of the Trumbull County Commissioner's 10.3578 acre parcel 40.00 feet to an iron pin on the proposed westerly right of way of Education Boulevard;

Thence N. 00°-01'-01" E along the proposed westerly right-of-way of Education Boulevard, 490.00 feet to a point, said point being the True Place of Beginning of the parcel described herein

Thence N. 89°-46'-57" W., along a new division line, 1052.70 feet to a point in the east line of the original North Warren Heights Townsite Plat as recorded in Plat Book 12 at pages 76 & 77 in the Trumbull County Records of Plats.

Thence N. 00°-15'-43" E., along the east line of the original North Warren Heights Townsite Plat, 626.95 feet to a point, said point being S. 39°-01'-33" E., 0.93 feet from an iron pin found;

Thence N. 00°-18'-07" W., along the east line of lands now or formerly owned by J. & B. Osti as as recorded in Official Record 78 at page 470 in the Official Records of Trumbull County, 535.02 feet to an iron pin;

Thence S. 89°-46'-57" E., along a new division line, 1096.94 feet to an iron pin on the proposed westerly right-of-way of Education Boulevard;

Thence southwesterly along the proposed westerly right-of-way of Education Boulevard along a curve to the left, said curve having a radius of 1040.00 feet, a central angle of 16°-42'-50", a length of 303.38 feet with a chord bearing of S. 8°-22'-26" W., and a chord length of 302.30 feet to an iron pin at the end of the curve;

Thence continuing S. 00°-01'-01" W along the proposed westerly right-of-way of said proposed road, 862.71 feet to the point of beginning and containing within said bounds 28.147 acres of land as surveyed by Lynn, Kittinger & Noble, Inc., Professional Surveyors in October 1997.

And being a part of that land previously conveyed to Champion Land Venture as recorded in Official Record Volume 415 at page 285 of the Trumbull County Official Records.

# EXHIBIT B

## MEMORANDUM OF LEASE AGREEMENT

**THIS MEMORANDUM** is made as of the _____ day of _____ ,
_____, between ORIX Warren, LLC, a Delaware limited liability with its principal address in
care of ORIX Real Estate Capital, Inc., c/o David R. Brown, 100 N. Riverside Plaza, Suite 2100,
Chicago, IL   60606, hereinafter referred to as "**Landlord**", and Delphi Automotive Systems
LLC, a Delaware limited liability company, with its principal address at 5725 Delphi Drive,
Troy, Michigan 48098, hereinafter referred to as "**Tenant**",

## W I T N E S S E T H:

Landlord and Tenant have entered into a certain Lease dated as of May 8, 2008 covering certain
real property described in **Exhibit "A"** attached hereto.

The Initial Term of the Lease commenced on January 1, 2009 and the Initial Term shall expire
on _____, ____. Tenant has one (1) 5-year option to extend the Initial Term pursuant
to the provisions of the Lease.

All capitalized terms used herein shall have the same definition as in this Lease.

In the event this document is recorded, its recording is intended solely to give notice of this
Lease and is not a complete summary of the terms and conditions thereof.  Any successor in
interest to the Landlord shall take this Lease subject to all the terms and conditions of same, as
amended herein.  Except as to the amendment made herein, this document shall not be used in
interpreting provisions of this Lease.

B-1

**IN WITNESS WHEREOF,** the Landlord has signed and sealed this instrument this _____ day of _____, _____, and the Tenant has signed and sealed this instrument this _____ day of _____, _____.

> **ORIX WARREN, LLC,** a Delaware limited liability company
>
> By:    ORIX Real Estate Capital, Inc.,
>           its sole member
>
>           By:_____
>           Name:_____
>           Title:_____
>
> **DELPHI AUTOMOTIVE SYSTEMS LLC,** a Delaware limited liability company
>
> By:_____
> Name:_____
> Title:_____

B-1

STATE OF ILLINOIS     )
                      ) ss.

COUNTY OF COOK     )

On this, the _____ day of _____, 2008, before me, the undersigned officer, personally appeared _____, the _____ of ORIX Real Estate Capital, Inc., the sole member of ORIX Warren LLC, a Delaware limited liability company, and that he, as such officer, being authorized so to do, executed the foregoing instrument on behalf of said partnership, for the purpose there in contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Name:_____

Notary Public

[NOTARIAL SEAL]                     County of _____

State of _____

My Commission:_____

STATE OF MICHIGAN     )
                        ) ss.

COUNTY OF OAKLAND  )

On this, the _____ day of _____, 2008, before me personally appeared _____, the _____ of DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company, and that he/she, as such officers, being authorized so to do, executed the foregoing instrument on behalf of said limited liability company, for the purpose therein contained.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

Name:_____

Notary Public

[NOTARIAL SEAL]                     County of _____

State of _____

My Commission:_____