# EXHIBIT 2

# 1455 PROOF OF CLAIM

**FORM B10**   (Official Form 10) (4/01)

| UNITED STATES BANKRUPTCY COURT   SOUTHERN   DISTRICT OF   NEW YORK | |
|---|---|
| Name of Debtor<br>**Delphi Corporation** | Case Number<br>**05-44481 (jointly administered)** |

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>**ICX Corporation, Cleveland, Ohio** | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | |
|---|---|---|
| Name and address where notices should be sent:<br>**James M. Ray<br>53 State Street, 9th Floor - Mailcode: MBS970<br>Boston, MA 02109**<br>Telephone number: 617-994-7527 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT |
| Account or other number by which creditor identifies debtor:<br>**L902/1455** | Check here<br>if this claim ☐ replaces   a previously filed claim, dated: _____<br>☐ amends | |

**1. Basis for Claim**

| | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (fill out below) |
| ☐ Money loaned | Your SS#: _____ - _____ - _____ |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from _____ to _____ |
| ☒ Other   Lease of Equipment: 902/1455 | (date)                (date) |

| 2. Date debt was incurred:   03/11/2000 to present | 3. If court judgment, date obtained:   N/A |
|---|---|

**4. Total Amount of Claim at Time Case Filed:**   $  169,686.00
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☒ Other   leased equipment
Value of Collateral:  $   169,686.00

Amount of arrearage and other charges at time case filed included in secured claim, if any: $  0.00

**6. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C.§ 507(a)(6).
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties of governmental units - 11 U.S.C. §507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a) ( ___ ).
*Amounts are subject to adjustment on 4/1/01 and every 3 years thereafter with respect to cases commenced on or after date of adjustment.

**7. Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**8. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**9. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

RECEIVED
JUL 3 1 2006
CLAIMS PROCESSING CENTER
USBC. SDNY

| Date<br>7/27/2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): _____ att. for ICX<br>Leo Gibson |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances, such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## DEFINITIONS

**Debtor**

The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

**Creditor**

A creditor is any person, corporation, or other entity to whom the debtor owed a debt n the date that the bankruptcy case was filed.

**Proof of Claim**

A form telling the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed.

**Secured Claim**

A claim is a secured claim to the extent that the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from the property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set, or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began; in some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. *(See also Unsecured Claim.)*

**Unsecured Claim**

If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

**Unsecured Priority Claim**

Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims.*

## Items to be completed in Proof of Claim form (if not already filled in)

**Court, Name of Debtor, and Case Number:**

Fill in the name of the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the name of the debtor in the bankruptcy case, and the bankruptcy case number. If you received a notice of the case from the court, all of this information is near the top of the notice.

**Information about Creditor:**

Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

**1. Basis for Claim:**

Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

**2. Date Debt Incurred:**

Fill in the date when the debt first was owed by the debtor.

**3. Court Judgments:**

If you have a court judgment for this debt, state the date the court entered the judgment.

**4. Total Amount of Claim at Time Case Filed:**

Fill in the total amount of the entire claim. If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

**5. Secured Claim:**

Check the appropriate place if the claim is a secured claim. You must state the type and value of property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date of the bankruptcy case was filed. A Claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

**6. Unsecured Priority Claim:**

Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

**7. Credits:**

By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

**8. Supporting Documents:**

You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

# ICX/Delphi Equipment Lease 902/1455

As of 7/31/2006, Debtor will owe $112,250.78 on the above referenced lease.

Pursuant to its rights under the lease, ICX has allocated $428.51 in costs and fees associated with the enforcement and protection of its rights under the lease identified in this proof of claim, for a total claim amount as of July 31, 2006 of $112,679.29. Additional costs and fees continue to accrue.

ICX reserves the right to amend or revise this proof of claim.

A copy of the master lease is attached. The lease described in this proof of claim involves eighteen separate lease schedules covering separate pieces of equipment, and involves voluminous supporting documents. ICX has attached a sample lease schedule to this proof of claim. If required, additional supporting documents on the additional schedules are available upon request to ICX's counsel at:

Leo J. Gibson
Barris, Sott, Denn and Driker
211 West Fort Street, 15th Floor
Detroit, MI 48226

ORIGINAL

# MASTER LEASE AGREEMENT

THIS MASTER LEASE AGREEMENT, dated as of ___May 1, 1995___ ("Agreement"), is between General Motors Corporation, _____ Delaware, a corporation organized and existing under the laws of the State of Delaware, with an office at ___902 East Hamilton Avenue___ ___Flint, MI 48550___ (hereinafter called, together with its successors and assigns, if any, "Lessee"), and ___First American Capital Management___, a corporation organized and existing under the laws of the State of ___Minnesota      Group, Inc.___, with an office at ___2330 Sioux Trail N.W.___ ___Prior Lake, MN 55372___ (hereinafter called, together with its successors and assigns, if any, "Lessor").

## WITNESSETH:

### I.    LEASING:

(a)    Subject to the terms and conditions set forth below, Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the equipment ("Equipment") described in Annex A to any schedule attached hereto or made a part hereof ("Schedule"). Terms defined in a Schedule and not defined herein shall have the meanings contained in such Schedule.

(b)    The obligation of Lessor to purchase Equipment from the manufacturer or supplier thereof ("Supplier") and to lease the same to Lessee under any Schedule shall be subject to receipt by Lessor, prior to the Lease Commencement Date (with respect to such Equipment), of each of the following documents in form and substance satisfactory to Lessor: (i) a Schedule relating to the Equipment, (ii) a Purchase Order Assignment and Consent in the form of Annex B to the applicable Schedule, unless Lessor shall have delivered its purchase order for such Equipment, (iii) evidence of insurance which complies with the requirements of Section IX, and (iv) such other documents as Lessor may reasonably request. As a further condition to such obligations of Lessor, Lessee shall, upon delivery of such Equipment (but not later than the Last Delivery Date specified in the applicable Schedule) execute and deliver or have delivered to Lessor a Certificate (in the form of Annex C to the applicable Schedule) covering such Equipment, and deliver or have delivered to Lessor a bill of sale therefor (in form and substance satisfactory to Lessor). Lessor hereby appoints Lessee as its agent for inspection and acceptance of the Equipment from the Supplier. Upon execution by Lessee of such Certificate, the Equipment described thereon shall be deemed to have been delivered to, and received and irrevocably accepted by, Lessee, as between Lessee and Lessor only, for lease hereunder. It is understood that such Certificate does not limit any rights Lessee may have against the Supplier.

### II.    TERM, RENT, AND PAYMENT:

(a)    The rent payable hereunder and Lessee's right to use the Equipment shall commence on the date of execution by Lessee of the Certificate (in the form of Annex C to the applicable Schedule) for such Equipment ("Lease Commencement Date"). The term of this Agreement shall be the period specified in the applicable Schedule. If any term is extended, the word "term" shall be deemed to refer to all extended terms, and all provisions of this Agreement shall apply during any extended terms, except as otherwise agreed to in writing.

(b)    Rent shall be paid to Lessor at its address stated above, except as otherwise directed by Lessor. Payments of rent shall be in accordance with the provisions of the applicable Schedule. If Advance Rentals are payable, such Advance Rental shall be (i) set forth on the applicable Schedule, (ii) due upon acceptance by Lessor of such Schedule, and (iii) when received by Lessor, applied to the first rent payment and the balance, if any, to the final rental payment(s) under such Schedule. In no event shall any Advance Rental or any other rent payments be refunded to Lessee. If rent is not paid within ten (10) days of its due date, Lessee agrees to pay a late charge of one cent ($.01) per dollar on, and in addition to, the amount of such rent but not exceeding the lawful maximum, if any.

Rev. 5/14/92                                              - 1 -

ORIGINAL

## III.   TAXES:

Lessee shall have no liability for taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the total gross income, net income, total gross receipts, capital, capital stock, or net worth of Lessor. Lessee shall report (to the extent that it is legally permissible) and pay promptly all other taxes, fees, and assessments due, imposed, assessed, or levied against the Equipment, or the purchase, ownership, delivery, leasing, possession, the use or operation thereof, or upon the rentals or receipts with respect to this Agreement or any Schedule hereunder, including all license and registration fees and all sales, use, personal property, excise, gross receipts, stamp, or other similar taxes, imposts, duties, and charges, together with any penalties, fines, or interest thereon, imposed against this Agreement or any Schedules or Supplemental Documents, or against Lessor, Lessee, or the Equipment by any federal, state, or local government or taxing authority during or relating to the term of this Agreement (all hereinafter called "Taxes"). Lessee shall not be liable, however, for any penalties, fines, or interest resulting from any acts or omissions of the Lessor, but only to the extent such penalties, fines, or interests have not arisen from Lessor's acts or omissions which are predicated on a request from Lessee or reliance on Lessee's representations or duties pursuant to this Agreement. Lessee shall (i) reimburse Lessor upon receipt of written request for reimbursement for any Taxes charged to or assessed against Lessor, provided such Taxes have not previously been paid by, or simultaneously billed to Lessee (in this regard Lessor and Lessee agree to mutually cooperate in the resolution of such matters with the appropriate taxing authorities), (ii) on written request of Lessor, submit to Lessor written evidence of Lessee's payment of Taxes, (iii) on all reports and returns show ownership of the Equipment by Lessor, and (iv) upon receipt of written request, send a copy thereof to Lessor.

## IV.   REPORTS:

(a)    Lessee will notify Lessor in writing, within ten (10) days after any tax or other lien shall attach to any Equipment, of the full particulars thereof and of the location of such Equipment on the date of such notification unless the same shall have been removed or fully discharged by the Lessee.

(b)    Lessee will permit Lessor to inspect any Equipment during normal business hours, provided that no exercise of such inspection right shall materially interfere with the normal operation of the Equipment or the business of Lessee.

(c)    Lessee will keep the Equipment at the Equipment Location (specified in the applicable Schedule) and will promptly notify Lessor of any relocation of Equipment. Upon written request of Lessor, Lessee will notify Lessor forthwith in writing of the location of any Equipment as of the date of such notification.

(d)    Lessee will promptly and fully report to Lessor in writing if any Equipment is lost or damaged (where the estimated repair costs would exceed ten percent (10%) of its then fair market value), or is otherwise involved in an accident causing personal injury or property damage.

## V.   DELIVERY, USE, AND OPERATION:

(a)    All Equipment shall be shipped directly from the Supplier to Lessee.

(b)    Lessee agrees that the Equipment will be used by Lessee solely in the conduct of its business and in a manner complying with all applicable federal, state, and local laws and regulations.

(c)    LESSEE SHALL NOT ASSIGN, MORTGAGE, SUBLET, OR HYPOTHECATE ANY EQUIPMENT, OR THE INTEREST OF LESSEE HEREUNDER, NOR SHALL LESSEE REMOVE ANY EQUIPMENT FROM THE CONTINENTAL UNITED STATES, WITHOUT THE PRIOR WRITTEN CONSENT OF THE LESSOR. SUCH CONSENT SHALL NOT UNREASONABLY BE WITHHELD.

(d)    Lessee will keep the Equipment free and clear of all liens and encumbrances other than the following: (1) liens arising from claims attributable to Lessor, (2) liens for taxes of Lessee either not yet due or being contested in good faith by appropriate proceedings, so long as such proceedings do not involve any material danger of the sale, forfeiture, or loss of

Rev. 5/14/92

- 2 -

ORIGINAL

the Equipment or any interest therein, and (3) materialmen's, mechanics', workmen's, repairmen's, or other like liens arising in the ordinary course of Lessee's business (including those arising under maintenance agreements entered into in the ordinary course of business) securing obligations that are not overdue or are being contested in good faith by appropriate proceedings, so long as such proceedings do not involve any material danger of the sale, forfeiture, or loss of the Equipment or any interest therein.

## VI.    SERVICE:

(a)    Lessee will, at its sole expense, maintain or cause to be maintained each unit of Equipment in good operating order, repair, condition, and appearance in accordance with normal industry standards, normal wear and tear excepted. Lessee shall, if at any time requested by Lessor, affix in a prominent position on each unit of Equipment plates, tags, or other identifying labels showing ownership thereof by Lessor. So long as no event of default shall have occurred and be continuing, and so long as Lessee shall comply with Section VI(b) hereof, Lessee may, without the prior written approval of Lessor, deliver possession of Equipment to the Supplier or to any other provider for testing, service, repair, maintenance, or overhaul work on such Equipment.

(b)    Lessee will not, without the prior consent of Lessor, affix or install any accessory, equipment, or device on any Equipment if such addition will impair the originally intended function or use of such Equipment. All additions, repairs, parts, supplies, accessories, equipment, and devices furnished, attached, or affixed to any Equipment which are not readily removable shall be made only in compliance with applicable law, including Internal Revenue Service guidelines, and shall become the property of Lessor and subject to the terms of this Agreement. Lessee will not, without the prior written consent of Lessor and subject to such conditions as Lessor may impose for its protection, affix or install any Equipment to or in any other personal or real property.

(c)    Any alterations or modifications to the Equipment that may, at any time during the term of this Agreement, be required to comply with any applicable law, rule, or regulation shall be made at the expense of Lessee.

## VII.    STIPULATED LOSS VALUE:

"Event of Loss" with respect to the Equipment means any of the following: (1) the loss of such Equipment or use thereof due to the destruction of or damage to such Equipment which renders repair uneconomic or which renders such Equipment permanently unfit for normal use by Lessee for any reason whatsoever; (2) the theft, disappearance, confiscation, condemnation, or seizure of title to such Equipment which shall have resulted in the loss of possession or use of such Equipment by Lessee for a period in excess of sixty (60) consecutive days; or (3) imposition of environmental or other legal restrictions that make continued use of the Equipment uneconomic or illegal. Lessee shall promptly and fully notify Lessor in writing upon the occurrence of any Event of Loss. On the rental payment date next succeeding an Event of Loss (the "Payment Date"), Lessee shall pay Lessor without duplication the sum of (x) the Stipulated Loss Value of such unit calculated as of the rental period immediately preceding such Event of Loss ("Calculation Date"); and (y) all rental and other amounts which are due hereunder as of the Payment Date. Upon payment of all sums due hereunder, the term of this lease as to such unit shall terminate, and (except in the case of the loss, theft, or complete destruction of such unit) Lessor shall be entitled to recover possession of such unit.

## VIII.    RISK OF LOSS:

Lessee hereby assumes and shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Equipment from any cause whatsoever from the time the Equipment is shipped to Lessee.

## IX.    INSURANCE:

Lessee agrees, at its own expense, to keep all Equipment insured with "ALL-RISKS" property insurance to a limit of the Stipulated Loss Value, including, but not limited to, insurance for damage to or loss of such Equipment and liability coverage for personal injuries, death, or property damage that may result from the use or operation of the Equipment, with Lessor

Rev. 5/14/92

# ORIGINAL

named as additional insured and with a loss payable clause in favor of Lessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Lessee. All such policies shall be with reputable companies and on terms reasonably satisfactory to Lessor. Lessee agrees to deliver to Lessor, upon written request by Lessor, certificate(s) of insurance. Said certificate(s) shall state that the insurance is primary to any other insurance that may be available to Lessor and provide at least thirty (30) days' written notice to Lessor of cancellation, modification, or material change to any policy. Lessee will not make adjustments with insurers except (i) with respect to claims for damage to any unit of Equipment where the repair costs do not exceed ten percent (10%) of such unit's fair market value, or (ii) with Lessor's written consent. Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Equipment or any portion thereof, or (ii) satisfy any obligation of Lessee to Lessor hereunder.

**X.    RETURN OF EQUIPMENT:**

(a)   Upon any expiration or termination of this Agreement or any Schedule, Lessee shall promptly, at its own cost and expense: (i) perform any testing and repairs required to place the affected units of Equipment in the good condition and repair, reasonable wear and tear excepted, and in good working order for their originally intended purpose; (ii) if deinstallation, disassembly, or crating is required, cause such units to be properly deinstalled, disassembled, and crated in accordance with normal industry standards; and (iii) tender such units to Lessor at the Equipment Location specified in the applicable Schedule or, at the option of Lessor, at any location designated by Lessor within two hundred fifty (250) miles of said Equipment Location. Upon and after tender of delivery to Lessor, Lessee shall have no new responsibilities for the Equipment. This shall not affect any obligations hereunder predating said tender.

(b)   Until Lessee has complied with the requirements of Section X(a) above, Lessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term. Lessor may terminate such continued leasehold interest upon ten (10) days' notice to Lessee.

**XI.    EVENTS OF DEFAULT:**

Lessor may in writing declare this Agreement in default upon the occurrence of any one of the following events ("Events of Default"):

(a)   Lessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten (10) days after written notice thereof;

(b)   Lessee breaches any of its insurance obligations under Section IX and fails to cure the breach within ten (10) days after written notice thereof;

(c)   Lessee breaches any of its other obligations, representations, or warranties and fails to cure that breach within thirty (30) days after written notice thereof;

(d)   Lessee becomes insolvent or ceases to do business as a going concern; or

(e)   any Equipment is illegally used and Lessee fails to cease such use as soon as possible, not to exceed five (5) working days, after written notice thereof.

Such declaration of default shall apply to all Schedules except as specifically excepted by Lessor.

**XII.    REMEDIES:**

(a)   Upon the declaration of default and at any time thereafter so long as an Event of Default shall be continuing Lessor may at its option do one or more of the following with respect to all or any part of the Equipment, to the extent permitted by, and subject to compliance with any mandatory requirements of, applicable law then in effect:

Rev. 5/14/92                                               - 4 -

(1)     upon the written demand of Lessor and at Lessee's expense cause Lessee to return promptly, and Lessee shall return promptly, all or any part of the Equipment as the Lessor may demand in the manner and condition required by, and otherwise in accordance with Section X(a) hereof, as if the Equipment were being returned at the end of the Term; and/or

(2)     enter the premises, with or without legal process, where all or any part of the Equipment is located and take immediate possession; and/or

(3)     sell the Equipment, upon fifteen (15) days' written notice to Lessee, at public or private sale, as Lessor may determine, or otherwise dispose of, hold, use, operate, lease to others, or keep idle the Equipment as Lessor, in its sole discretion, may determine, all free and clear of any rights of Lessee, except as hereinafter set forth in this Section XII. Lessor may sell the Equipment without having the Equipment present at place of sale, and Lessor may make reasonable use of Lessee's premises for the purpose of displaying and selling the equipment at no expense to Lessor; and/or

(4)     whether or not Lessor shall have exercised, or shall thereafter at any time exercise, any of its rights under subparagraphs (1), (2), and (3) of this Section XII with respect to any of the Equipment, Lessor, by written notice to Lessee specifying a payment date of such notice, may demand that the Lessee pay to Lessor, as damages for loss of a bargain and not as a penalty, the Stipulated Loss Value of the Equipment (calculated as of the rental period immediately preceding the declaration of default), all rent due for Equipment prior to the payment date so specified, any late charges provided for in Section II hereof, any interest provided for in Section XXI(e) hereof, any accrued and then-due taxes, and all reasonable costs and expenses, including reasonable legal fees incurred by the Lessor in connection with the enforcement of, but not the administration of, the Agreement; and/or

(5)     in the event Lessor, pursuant to subparagraph (3) of this Section XII, shall have sold, released, or otherwise disposed of the Equipment, the proceeds of sale, lease, or other disposition, if any, shall be applied in the following order of priorities:  (i) to pay all Lessor's reasonable costs, charges, and expenses incurred in taking, removing, holding, repairing, selling, leasing, or otherwise disposing of Equipment; then (ii) to the extent not previously paid by Lessee, to pay Lessor all sums due from Lessee hereunder; then (iii) to reimburse to Lessee any sums previously paid by Lessee as liquidated damages; and then (iv) any surplus shall be retained by Lessor (Lessee shall remain responsible for any deficiency in (i) and (ii) forthwith).

(b)     The foregoing remedies are cumulative and not exclusive of other remedies, and any or all thereof may be exercised in lieu of or in addition to each other or any remedies at law, in equity, or under statute.  Waiver of any default shall not be a waiver of any other or subsequent default.

## XIII.   ASSIGNMENT:

(a)     LESSEE WILL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR, ASSIGN, CONVEY, OR SUBLEASE ITS RIGHTS OR INTEREST IN THIS AGREEMENT.

(b)     Lessor may, without the consent of Lessee, assign this Agreement or any Schedule.  Lessee agrees that if Lessee receives written notice of an assignment from Lessor, Lessee will pay all rent and all other amounts payable under any assigned Equipment Schedule to such assignee or as instructed by Lessor.  Lessee further agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee.  Lessee hereby waives and agrees not to assert against any such assignee any defense, set-off, recoupment claim, or counterclaim which Lessee has or may at any time have against Lessor, Supplier, or any prior assignee for any reason whatsoever.

(c)     Subject to the foregoing, the terms and provisions of this Agreement shall be binding upon and inure to the benefit of Lessor and Lessee and their respective successors and permitted assigns.

Rev. 5/14/92

ORIGINAL

## XIV.  NET LEASE; NO SET-OFF, ETC.:

This Agreement is a net lease. Lessee's obligation to pay rent and other amounts due hereunder shall be absolute and unconditional. Lessee shall not be entitled to any abatement or reductions of, or set-offs against, said rent or other amounts, including, without limitation, those arising or allegedly arising out of claims (present or future, alleged or actual, and including claims arising out of strict tort or negligence of Lessor or Supplier) of Lessee against Lessor or Supplier under this Agreement or otherwise. Nor shall this Agreement terminate or the obligations of Lessee be affected by reason of any defect in or damage to, or loss of possession, use or destruction of, any Equipment from whatsoever cause. It is the intention of the parties that rents and other amounts due hereunder shall continue to be payable in all events in the manner and at the times set forth herein unless the obligation is terminated pursuant to the express terms hereof.

## XV.  INDEMNIFICATION:

(a)     Lessee and Lessor hereby agree to indemnify, save and keep harmless the other, the other's agents, employees, successors, and assigns from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort, arising during the term of this Agreement out of the breach by the Lessor or Lessee, respectively, of any part of this Agreement. However, to the extent that any losses, damages, penalties, injuries, claims, actions and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort, arising during the term of this Agreement out of the breach by the Lessor or Lessee, respectively, of any part of this Agreement are caused by negligence or malfeasance of the indemnified party, there shall be no indemnification under the first sentence of this subsection. Additionally, Lessee hereby agrees to indemnify and keep harmless Lessor, its agents, employees, successors, and assigns against any and all losses, damages, penalties, injuries, claims, actions, and suits, including reasonable legal expenses, of whatsoever kind and nature, in contract or tort, and including Lessor's strict liability in tort, arising during the term of this Agreement, out of selection, manufacture, acceptance, or rejection of Equipment, and the delivery, possession, maintenance, uses, condition, return, or operation of Equipment (including, without limitation, latent and other defects, whether or not discoverable by Lessor or Lessee and any claim for patent, trademark, or copyright infringement or environmental damage). Lessor or Lessee, respectively, shall, upon request, defend any actions based on, or arising out of, any such indemnification.

(b)     Lessee hereby represents, warrants, and covenants that (i) Lessor shall be the party entitled to claim accelerated cost recovery deductions ("Tax Benefits") as defined by the Internal Revenue Code of 1986, as amended, available for Lessor's purchase and ownership of the Equipment purchased and leased hereunder, (ii) on Lease Commencement Date for any unit of Equipment, such unit will qualify for all Tax Benefits specified in Section C of the applicable Schedule(all references to Lessor in this Section XV include Lessor and the consolidated taxpayer group of which Lessor is a member), and (iii) at no time during the term of this Agreement will Lessee take or omit to take, nor will it permit any sublessee or assignee to take or omit to take, any action which will result in the disqualification of any Equipment for, reduction of (which is not the result of Lessor having alternative minimum tax status), or recapture of, all or any portion of such Tax Benefits.

(c)     Notwithstanding any other provisions in this document, if as a result of a breach of any representation, warranty, and covenant of the Lessee contained in this Agreement or any Schedule (i) tax counsel of Lessor shall reasonably determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Equipment, or (ii) any such Tax Benefit claimed on the Federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any such Tax Benefit is recomputed or recaptured (any such determination, disallowance, adjustment, recomputation, or recapture being hereinafter called a "Loss"), then to the extent of any such breach Lessee shall pay to Lessor, as additional rental payments, such amount as shall cause the Lessor's net after-tax return on investment to equal the net after-tax return on investment (assuming an effective tax rate of thirty-four percent [34%]) that would have been realized by the Lessor if such Loss had not occurred, computed in all cases using the same assumptions utilized in originally evaluating the transaction. Such amount shall be payable within thirty (30) days after the Lessor has notified the Lessee in writing that such a Loss has occurred, including a written statement describing in reasonable detail such Loss and the computation thereof.

(d)    All of Lessor's and Lessee's rights, privileges, and indemnities contained in this Section XV shall survive the expiration or other termination of this Agreement and the rights, privileges, and indemnities contained herein are expressly made for the benefit of, and shall be enforceable by Lessor and Lessee, respectively, their successors and assigns, respectively.

## XVI.  DISCLAIMER:

LESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE EQUIPMENT WITHOUT ANY ASSISTANCE FROM LESSOR, ITS AGENTS OR EMPLOYEES. LESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE EQUIPMENT LEASED HEREUNDER OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK OR COPYRIGHT INFRINGEMENT, OR TITLE. All such risks, as between Lessor and Lessee, are to be borne by Lessee. Without limiting the foregoing, Lessor shall have no responsibility or liability to Lessee or any other person with respect to any of the following, regardless of any negligence of Lessor (i) any liability, loss, or damage caused or alleged to be caused directly or indirectly by any Equipment, any inadequacy thereof, any deficiency or defect (latent or otherwise) therein, or any other circumstance in connection therewith; (ii) the use, operation, or performance of any Equipment or any risks relating thereto; (iii) any interruption of service, loss of business or anticipated profits, or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement, or replacement of any Equipment. If, and so long as, no default exists under this Lease, Lessee shall be, and hereby is, authorized during the term of this Lease to assert and enforce, at Lessee's sole cost and expense, from time to time, in the name of and for the account of Lessor and/or Lessee, as their interests may appear, whatever claims and rights Lessor may have against any Supplier of the Equipment.

## XVII.  REPRESENTATIONS AND WARRANTIES OF LESSEE:

Lessee hereby represents and warrants to Lessor that on the date hereof and on the date of execution of each Schedule:

(a)    Lessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") and is duly qualified to do business wherever necessary to carry on its present business operations, including the jurisdiction(s) where the Equipment is or is to be located.

(b)    The Documents have been duly authorized, executed, and delivered by Lessee and constitute valid, legal, and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws.

(c)    No approval, consent, or withholding of objections is required from any governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents except such as have already been obtained.

(d)    The entry into and performance by Lessee of the Documents will not: (i) violate any judgment, order, law, or regulation applicable to Lessee or any provision of Lessee's Certificate of Incorporation or By-Laws; or (ii) result in any breach of, constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon any Equipment pursuant to any indenture, mortgage, deed of trust, bank loan, or credit agreement or other instrument (other than this Agreement) to which Lessee is a party.

(e)    There are no suits or proceedings pending or threatened in court or before any commission, board, or other administrative agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations under this Agreement.

Rev. 5/14/92

ORIGINAL

(f)    The Equipment listed on any Certificate (in the form of Annex C to the applicable Schedule) is and will remain tangible personal property.

(g)    Lessee is and will be at all relevant times validly existing and in good standing under the laws of the State of its incorporation (specified in the first sentence of this Agreement);

(h)    The Equipment will at all times be used for commercial or business purposes.

## XVIII.  REPRESENTATIONS AND WARRANTIES OF LESSOR:

(a)    Lessor covenants that it will not directly or indirectly create, incur, assume, or suffer to exist any lien attributable to it on the Equipment which has priority over the Lessee's rights under this Agreement.

(b)    Lessor covenants that it will not, through its own actions or inactions, interfere in Lessee's quiet enjoyment of the Equipment during the applicable lease term so long as this Agreement shall not have been declared in default under Section XI above.

## XIX.  EARLY TERMINATION:

(a)    On or after the First Termination Date (specified in the applicable Schedule), Lessee may, so long as no default exists hereunder, terminate this Agreement as to all (but not less than all) of the Equipment on such Schedule as of a rent payment date ("Termination Date") upon at least ninety (90) days' prior written notice to Lessor.

(b)    Lessee shall, and Lessor may, solicit cash bids for the Equipment on an AS IS, WHERE IS BASIS without recourse to or warranty from Lessor, express or implied ("AS IS BASIS"). Prior to the Termination Date, Lessee shall (i) certify to Lessor any bids received by Lessee and (ii) pay to Lessor (A) the Termination Value (calculated as of the rental due on the Termination Date) for the Equipment, and (B) all rent and other sums due and unpaid as of the Termination Date.

(c)    Provided that all amounts due hereunder have been paid on the Termination Date, Lessor shall (i) sell the Equipment on an AS IS BASIS for cash to the highest bidder and (ii) refund the proceeds of such sale (net of any related expenses) to Lessee up to the amount of the Termination Value. If such sale is not consummated, no termination shall occur and Lessor shall refund the Termination Value (less any expenses incurred by Lessor) to Lessee.

(d)    Notwithstanding the foregoing, Lessor may elect by written notice, at any time prior to the Termination Date, not to sell the Equipment. In that event, on the Termination Date Lessee shall (i) return the Equipment (in accordance with Section X) and (ii) pay to Lessor all amounts required under Section XIX(b) less the amount of the highest bid certified by Lessee to Lessor.

## XX.  PURCHASE OPTION:

(a)    So long as no default exists hereunder and the lease has not been earlier terminated, Lessee may at lease expiration, upon at least ninety (90) days' prior written notice to Lessor, purchase all (but not less than all) of the Equipment in any Schedule on an AS IS BASIS for the option price set forth in said Schedule (the "Option Price") (plus all applicable sales taxes). Lessor and Lessee agree that the Option Price is a reasonable prediction of the Equipment's "Fair Market Value" at lease expiration.

(b)    "Fair Market Value" shall mean the price which a willing buyer (who is neither a lessee in possession nor a used equipment dealer) would pay for the Equipment in an arm's-length transaction to a willing seller under no compulsion to sell; provided, however, that in such determination: (i) the Equipment shall be assumed to be in the condition in which it is required to be maintained and returned under this Agreement; (ii) in the case of any installed Equipment, that Equipment

Rev. 5/14/92                                          - 8 -

shall be valued on an installed basis; and (iii) costs of removal from current location shall not be a deduction from such valuation.

## XXI.   MISCELLANEOUS:

(a)    LESSEE AND LESSOR HEREBY UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS LEASE, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). NOTWITHSTANDING ANY STATE OR FEDERAL LAW TO THE CONTRARY, LESSEE AND LESSOR AGREE THAT THIS WAIVER IS NOT UNILATERALLY REVOCABLE. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS LEASE, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS LEASE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b)    Unless and until Lessee exercises its rights under Section XX above, nothing herein contained shall give or convey to Lessee any right, title, or interest in and to any Equipment except as a lessee. Any cancellation or termination by Lessor, pursuant to the provisions of this Agreement or any Schedule hereto, shall not release Lessee from any then outstanding obligations to Lessor hereunder. All Equipment shall at all times remain personal property of Lessor regardless of the degree of its annexation to any real property and shall not by reason of any installation in, or affixation to, real or personal property become a part thereof.

(c)    Time is of the essence of this Agreement. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith. Lessee agrees, upon Lessor's request, to execute any instrument reasonably necessary for filing, recording, or perfecting the interest of Lessor. All notices required to be given hereunder shall be deemed adequately given if sent by registered or certified mail to the addressee at its address stated herein, or at such other place as such addressee may have designated in writing. This Agreement and any Schedule and Annexes thereto constitute the entire agreement of the parties with respect to the subject matter hereof. NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

Initials

(d)    In case of a failure of Lessee to comply with any provision of this Agreement, Lessor shall have the right, but shall not be obligated to, effect such compliance, in whole or in part; and all monies spent and expenses and obligations incurred or assumed by Lessor in effecting such compliance shall constitute additional rent due to Lessor within five (5) days after the date Lessor sends notice to Lessee requesting payment. Lessor's effecting such compliance shall not be a waiver of Lessee's default.

(e)    Any rent or other amount than rent not paid to Lessor when due hereunder shall bear annualized interest, both before and after any judgment or termination hereof, at the lesser of the Prime Rate (as shown in the "Money Rates" column of *The Wall Street Journal* as of the due date of the rent or other amount) or the maximum rate allowed by law. Any provisions in this Agreement and any Schedule which are in conflict with any statute, law, or applicable rule shall be deemed omitted, modified, or altered to conform thereto.

Rev. 5/14/92    - 9 -

(f)      This Agreement shall be governed by and construed and enforced according to the laws of the State of Michigan, excluding any such laws which direct the application of laws of any other jurisdiction.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Agreement to be executed by their duly authorized representatives as of the date first above written.

LESSEE:

GENERAL MOTORS CORPORATION

By _____

Title _____

LESSOR:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.

By _____

Title _____

ORIGINAL

Doc# 1234454-001

#591317-001

**EQUIPMENT SCHEDULE
NO. 454
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995**

Lessor and Mailing Address:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.
1600 RAND TOWER, 527 MARQUETTE AVE. S.
MINNEAPOLIS, MN 55402

Lessee and Mailing Address:

GENERAL MOTORS CORPORATION
902 E. HAMILTON AVENUE
FLINT, MI 48550

Capitalized terms not defined herein shall have the meanings assigned to them in the Master Lease Agreement identified above ("Agreement"; said Agreement and this Schedule being collectively referred to as "Lease").

A.   EQUIPMENT

Pursuant to the terms of the Lease, Lessor agrees to acquire and lease to Lessee the Equipment listed on Annex A attached hereto and made a part hereof.

B.   FINANCIAL TERMS

1.   Advance Rent (if any): N/A

2.   Capitalized Lessor's Cost : $272,480.00

3.   Basic Term Lease Rate Factor: 1.617%

4.   Daily Lease Rate Factor: 0.0539%

5.   Basic Term (Number of Months): 60

6.   Basic Term Commencement Date: The last day of the calendar month in which the Commencement Date occurs for all the Equipment described herein.

7.   Equipment Location:   General Motors Corporation
Delphi Packard Electric
Equipment Warehouse
9650C Railroad Dr.
El Paso, TX 79924

8.   Lessee's Federal Tax ID Number: 38-0572515

9.   Supplier: Hyster Company

10.   Last Delivery Date: _____

11.   Termination Date: The later of (i) the 60th Basic Rent Date or (ii) the last day of any extension of this Lease.

12.   Purchase Option: Fair Market Value.

13.   Renewal Option: Provided that an Event of Default has not occurred and this Equipment Schedule has not previously been terminated, the Lessee shall have the right at its option, upon not less than 90 days' written notice to the Lessor prior to the original Termination Date, to renew all (but not less than all) of the Equipment subject to this Equipment Schedule for a firm term renewal period requested by Lessee of 12 or 24 months at a monthly renewal rate for such term as determined by Lessee and Lessor.

14. <u>Return Provisions:</u>    In furtherance, and not in limitation of, the use, maintenance and return conditions for the Equipment set forth in Section X of the Master Lease, Lessee hereby agrees to return the Equipment to Lessor in accordance with all of the terms and conditions of the Master lease and in compliance with the following special return conditions. Lessor or its agent shall conduct a preliminary inspection of the Equipment at the equipment location prior to the expiration of the Lease to minimize claims made after return, provided however, that Lessee shall nonetheless remain liable for the Equipment unless and until it is returned to Lessor as specified below.

1. At the time of return when loaded to its rated capacity, each unit shall:

a. Start under its own power and idle without water, fuel or oil leaks.

b. Move through its normal speed ranges in both forward and reverse;

c. Be in good appearance, free from all advertising, and insignia placed thereon by Lessee, in a clean condition, free of material rust and corrosion that would impede the normal operation of the units;

d. Steer normally right and left in both forward and reverse;

e. Be able to stop with its service brakes within a safe distance in both forward and reverse;

f. Lift, lower and tilt normally;

2. Be complete with no missing or damaged parts and have all components able to perform the function for which they were designed in accordance with the manufacturer's recommended specifications;

3. With respect to tires, averaged over all tires the remaining wear life shall be a minimum of 50% and there shall be no damage to any individual tire that precludes normal usage.

4. With respect to all batteries, all batteries must be capable of maintaining not less than 90% of the rated voltage charge and amp hours as when originally delivered and originally specified by the manufacturer. With respect to the battery chargers, be capable of maintaining its rated charging capacity.

## C.    TAX BENEFITS

<u>Depreciation Deductions:</u>

a. <u>Depreciation Method:</u> Two hundred percent (200%) declining balance method, switching to straight line method for the first (1st) taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance.

b. <u>Recovery Period:</u> 5 years.

c. <u>Basis:</u> 100% of Capitalized Lessor's Cost.

## D.    TERM AND RENT

1. <u>Interim Rent.</u> For the period from and including the Lease Commencement Date to the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period. Interim Rent shall be due on the Basic Term Commencement Date.

ORIGINAL

Doc# 1234454-001

2. <u>Basic Term Rent</u>. Commencing on the Basic Term Commencement Date, and on the last day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

3. <u>Adjustment to Capitalized Lessor's Cost</u>. Lessee hereby irrevocably authorizes Lessor to adjust the Capitalized Lessor's Cost up or down by no more than ten percent (10%) to account for equipment change orders, equipment returns, invoicing errors, and similar matters. Lessee acknowledges and agrees that the Rent shall be adjusted as a result of such change in the Capitalized Lessor's Cost (pursuant to paragraphs 1 and 2 above). Lessor shall send Lessee a written notice stating the final Capitalized Lessor's Cost, if different from that disclosed on this Schedule.

E.    INSURANCE

1. Commercial (broad form comprehensive) general liability, including contractual liability coverage, in limits of not less than $2,000,000 per occurrence combined single limit for personal injury and property damage.

2. "All Risks" property insurance for the Equipment in an amount equal to the Stipulated Loss Value, with no co-insurance requirement.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives.

LESSOR:                                             LESSEE:

FIRST AMERICAN CAPITAL MANAGEMENT GROUP, INC.      GENERAL MOTORS CORPORATION,

By:                                                 By:
Name:                                               Name:   Eileen A. Gurko
Title:   DAVID L. NICOU                             Title:   Senior Buyer
         V.P. / C.F.O.

firstame\els.454

ORIGINAL

Doc# 1234454-001

## ANNEX A
## TO
## EQUIPMENT SCHEDULE NO. 454
## TO MASTER LEASE AGREEMENT
## DATED AS OF MAY 1, 1995

### DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of units | Cost/unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Packard Electric Equipment Warehouse 9650C Railroad Dr. El Paso, TX 79924 | | | | | |
| Hyster | PRDH8210-001 | Hyster E45XM 4,500 lbs @ 24" LC Electric With the following: Enhanced Controls GE EV100 ZX SCR 36 Volt Lever Direction Control SCR Hydraulics Seat Actuated and Manual Brake Battery Compartment Less Side Covers Drive Tires: 21 x 7 x 15 Polyurethane Steer Tires: 16 x 5 x 10.5 Polyurethane Mast: 2 Stage Vista 131" MFH/84" LH/62" FL Carriage: Hook Type 38.5" Sideshift: MFG STD Battery Discharge W/Lift Interrupt MFG STD Forks: 42" x 1.5" x 4" MFG STD Battery Compartment Rollers-Right Side Removal Freight | 13 | $20,960.00 | $272,480.00 |

**TOTAL EQUIPMENT COST:** $272,480.00

Initials: Lessor Lessee

firstame\els.454

ORIGINAL

ANNEX C
TO
EQUIPMENT SCHEDULE NO. 454
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

CERTIFICATE NO. 1 OF ____

To:  FIRST AMERICAN MANAGEMENT GROUP, INC. ("Lessor")

        Pursuant to the provisions of the above schedule and lease (collectively, the "Lease"), Lessee hereby certifies and warrants that all Equipment listed below has been delivered and installed (if applicable); and (b) Lessee has received the Equipment for all purposes of the Lease.

        Lessee does further certify that as of the date hereof (I) Lessee is not in default under the Lease; (ii) the representations and warranties made by Lessee pursuant to or under the Lease are true and correct on the date hereof; and (iii) Lessee has reviewed and approves of the purchase documents for the Equipment, if any.

## DESCRIPTION OF EQUIPMENT

| Supplier/ Manufacturer | Serial Numbers | Type and Model of Equipment | Number of units | Cost/unit | Total Cost |
|---|---|---|---|---|---|
| Equipment Location: General Motors Corporation Delphi Packard Electric Equipment Warehouse 9650C Railroad Dr. El Paso, TX 79924 | | | | | |
| Hyster PRDH8210-001 | F108V08609T F108V08610T F108V08611T F108V08699T F108V08700T F108V08702T F108V08703T | Hyster E45XM 4,500 lbs @ 24" LC Electric With the following: Enhanced Controls GE EV100 ZX SCR 36 Volt Lever Direction Control SCR Hydraulics Seat Actuated and Manual Brake Battery Compartment Less Side Covers Drive Tires: 21 x 7 x 15 Polyurethane Steer Tires: 16 x 5 x 10.5 Polyurethane Mast: 2 Stage Vista 131" MFH/84" LH/62" FL Carriage: Hook Type 38.5" Sideshift MFG STD Battery Discharge W/Lift Interrupt MFG STD Forks: 42" x 1.5" x 4" MFG STD Battery Compartment Rollers-Right Side Removal Freight | 7 | $20,960.00 | $146,720.00 |

**TOTAL EQUIPMENT COST:**                     $146,720.00

LESSEE:
GENERAL MOTORS CORPORATION

By:  _Eileen A Gurko_

Authorized Representative
Name:  Eileen A. Gurko
Title:  Senior Buyer
Date:  5/16/97

ANNEX D
TO
EQUIPMENT SCHEDULE NO. 454
TO MASTER LEASE AGREEMENT
DATED AS OF MAY 1, 1995

ORIGINAL

902-454

STIPULATED LOSS VALUE TABLE*

| RENTAL | STIPULATED LOSS VALUE |
|---|---|
| Interim Rent | 115% |
| Basic Term Rent | |
| 1 | 115% |
| 2 | 114% |
| 3 | 113% |
| 4 | 112% |
| 5 | 111% |
| 6 | 111% |
| 7 | 110% |
| 8 | 110% |
| 9 | 109% |
| 10 | 108% |
| 11 | 108% |
| 12 | 107% |
| 13 | 106% |
| 14 | 105% |
| 15 | 105% |
| 16 | 104% |
| 17 | 103% |
| 18 | 103% |
| 19 | 102% |
| 20 | 101% |
| 21 | 101% |
| 22 | 100% |
| 23 | 99% |
| 24 | 98% |
| 25 | 93% |
| 26 | 98% |
| 27 | 96% |
| 28 | 95% |
| 29 | 94% |
| 30 | 94% |
| 31 | 93% |
| 32 | 92% |
| 33 | 91% |
| 34 | 90% |
| 35 | 90% |
| 36 | 89% |
| 37 | 88% |
| 38 | 87% |

firstame\els.454

ORIGINAL

| | |
|---|---|
| 39 | 86% |
| 40 | 85% |
| 41 | 85% |
| 42 | 84% |
| 43 | 83% |
| 44 | 82% |
| 45 | 81% |
| 46 | 80% |
| 47 | 79% |
| 48 | 78% |
| 49 | 77% |
| 50 | 76% |
| 51 | 76% |
| 52 | 74% |
| 53 | 73% |
| 54 | 72% |
| 55 | 71% |
| 56 | 70% |
| 57 | 70% |
| 58 | 68% |
| 59 | 67% |
| 60 | 67% |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be equal to the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above tables.  In the event that the lease term is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

Initials:

Lessor          Lessee