# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
   In re                                       :        Chapter 11
:
DELPHI CORPORATION, et al.,       :        Case No. 05-44481 (RDD)
:
                        Debtors.        :        (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SUPPLEMENTAL ORDER RESOLVING CERTAIN ADJOURNED OBJECTIONS TO DEBTORS' MOTION FOR ORDERS UNDER 11 U.S.C. §§ 363, 365, AND 1146 AND FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 (A) AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL OF ASSETS OF STEERING AND HALFSHAFT BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) ASSUMPTION OF CERTAIN LIABILITIES

("SUPPLEMENTAL STEERING SALE ADJOURNED OBJECTIONS ORDER")

Upon the motion, dated December 10, 2007 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving the Bidding Procedures,[1] (ii) granting certain Bid Protections, (iii) approving the form and manner of sale notices, and (iv) setting a sale hearing date (the "Sale Hearing"), (b) authorizing and approving (i) the sale (the "Sale") of certain of the Debtors' assets (the "Purchased Assets") comprising substantially all the assets of the steering and halfshaft business (the "Steering Business"), free and clear of liens, Claims, and Encumbrances to Steering Solutions Corporation

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement (as defined below).

and certain of its affiliates (the "Buyers") pursuant to the Master Sale And Purchase Agreement dated December 10, 2007 together with all Exhibits, Schedules, and related Ancillary Agreements (the "Agreement"), by and between Delphi and certain of its affiliates, including certain affiliated Debtors as set forth in the Agreement (the "Selling Debtors Entities")[2] and the Buyers, or to the party submitting the highest or otherwise best bid (the "Successful Bidder"), (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases as defined in the Agreement (the "Pre-Petition Contracts") and the assignment of certain postpetition executory contracts and unexpired leases as defined in the Agreement (the "Post-Petition Contracts," and collectively with the Pre-Petition Contracts, the "Assumed and Assigned Contracts") to the Buyers or the Successful Bidder, and (iii) the assumption of certain liabilities as defined in the Agreement (the "Assumed Liabilities") by the Buyers or the Successful Bidder, and (c) authorizing and approving the Transaction Facilitation Agreement with General Motors Corporation; and the Court having entered an order on December 21, 2007 (the "Bidding Procedures Order") (Docket No. 11578) (a) approving Bidding Procedures, (b) granting certain Bid Protections, (c) approving the form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held on February 21, 2008, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having entered an order granting the Motion (the "Steering Sale Approval Order") (Docket No. 12868) on February 25, 2008; and the Court having reviewed and considered the Motion and the arguments of counsel made, and the evidence proffered or adduced, at the omnibus hearing

---

[2] Under the Agreement, the Selling Debtor Entities are comprised of Delphi, Delphi Automotive Systems LLC, Delphi China LLC, Delphi Technologies, Inc., and Delphi Automotive Systems (Holding) Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

2

on March 19, 2008 concerning the resolution of certain objections covering contracts for which the findings and conclusions and decretal paragraphs in the Steering Sale Approval Order did not apply; and the Court having entered an order granting the Motion (the "Steering Sale Adjourned Objections Order") (Docket No. 13177) on March 19, 2008; and the Court having found and determined in the Steering Sale Adjourned Objections Order that the hearing on the Motion as it pertained to the objections set forth in Schedule 1 hereto (the "Objections") was adjourned to subsequent hearings and that any findings and conclusions and decretal paragraphs in the Steering Sale Adjourned Objections Order pertaining to the Assumed and Assigned Contracts did not apply to the contracts covered by the Objections; and the Court having entered certain stipulations and agreed orders resolving certain of the Objections;[3] and the Court having received

---

[3]   Stipulation And Agreed Order Resolving In Part That Certain Objections And Response Of S&Z Tool & Die., Inc. N/K/A S&Z Metal Works, Ltd. To (1) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business, And (2) Any Corresponding Cure Amount Proposed By Delphi Or Otherwise And Reserving Issues For Hearing, entered March 18, 2008 (Docket No. 13166) (the "Initial S&Z Stipulation and Agreed Order"); Stipulation And Agreed Order (I) Resolving Objection Of Hydro Aluminum North America, Inc. To The Debtors' Notice Of Cure Amount With Respect To Executory Contracts To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business And (II) Disallowing And Expunging Proof Of Claim Number 9111, entered March 31, 2008 (Docket No. 13291); Stipulation And Agreed Order Resolving Objection Of E.I. DuPont de Nemours and Company ("DuPont") To Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business, entered April 15, 2008 (Docket No. 13405) (the "DuPont Stipulation"); Stipulation And Agreed Order (i) Resolving Objection Of American Aikoku Alpha, Inc. To Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business And (ii) Disallowing And Expunging Proofs Of Claim Numbers 16692 And 16783, entered May 8, 2008 (Docket No. 13551), Amended And Restated Stipulation And Agreed Order (i) Resolving Objection Of American Aikoku Alpha, Inc. To Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business And (ii) Disallowing And Expunging Proofs Of Claim Numbers 16692 And 16783, submitted to this Court on May 20, 2008 (Docket No. _____), and Joint Stipulation And Agreed Order Resolving Objection And Response Of S&Z Tool & Die, Inc. n/k/a S&Z Metalworks, Ltd. To (1) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business, And (2) Any Corresponding Cure Amount Proposed By Delphi Or Otherwise, And Resolving Objection And Response Of S&Z Tool & Die, Inc. n/k/a S&Z Metalworks, Ltd. To Notice Of Assumption And Assignment And Cure Amount Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale of Steering and Halfshaft Business, submitted to this Court on May 21, 2008 (Docket No. \_\_\_\_\_) (the "Supplemental S&Z Stipulation and Agreed Order") (collectively, the "Stipulations and Agreed Orders").

3

notice of the withdrawal of certain of the Objections;[4] and it appearing that the relief requested in the Motion, as amended as set forth in the Stipulations and Agreed Orders and the Schedules hereto, as applicable to the contracts covered by the Objections is in the best interests of the Selling Debtor Entities, their estates, creditors, stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[5]

A.   The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.   The statutory predicates for the relief sought in the Motion are sections 363, 365, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.   As evidenced by the affidavits of service previously filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, notices of the assumption and assignment of the Assumed and Assigned Contracts, and notices

---

[4]   Withdrawal of Objection by Freudenberg-NOK General Partnership (On Behalf of Itself and Its Affiliates Freudenberg Telas Sin Tejer sa and Freudenberg Iberica Sa En Comandita) to Debtors' (I) Notice of Assumption and/or Assignment of Executory Contract or Unexpired Lease to Buyers in Connection with Sale of Steering and Halfshaft Business and (II) Motion for Sale of Steering and Halfshaft Business, filed March 31, 2008 (Docket No. 13282) and Notice Of Withdrawal Of Objection To The Debtors' Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Of Assets Of Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, filed May 19, 2008 (Docket No. 13624) (the "Notices of Withdrawal").

[5]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

of the Cure Amounts as approved herein has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the assumption and/or assignment of the contracts covered by the Objections pursuant to the terms set forth herein (the "Objection Contracts"), or the Cure Amounts is necessary.

        D.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Purchased Assets during the past 12 months, (vi) all entities known to have asserted any Interests and/or Claims (as defined below) in or upon the Purchased Assets, (vii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, including all taxing authorities having jurisdiction over any of the Purchased Assets, (viii) all parties to the Assumed and Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket

No. 2883), as amended from time to time (collectively, the "Case Management Orders")), (xiv) counsel to General Motors Corporation, (xv) counsel to the International Union, United Automobile, Aerospace and Agricultural Works of America and its Local Unions Number 699 (Saginaw) and Number 2195 (Athens), (xvi) all other labor unions representing the Business' hourly employees, and (xvii) any pension fund or multiemployer pension plan to which the Debtors have made contributions on account of employees of the Business.

    E.  Except as expressly provided in the Agreement, the assumption and/or assignment to the Buyers of the Objection Contracts and Assumed Liabilities related thereto will not subject the Buyers to any liability whatsoever with respect to the operation of the Steering Business prior to the Closing of the Sale, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

    F.  The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign, as applicable, the Objection Contracts to the Buyers in connection with the Closing of the Sale, and the assumption and/or assignment of the Objection Contracts is in the best interests of the Selling Debtor Entities, their estates, their creditors, and their stakeholders.  The Objection Contracts being assigned to, and the liabilities being assumed by, the Buyers are an integral part of the Purchased Assets being purchased by the Buyers and, accordingly, such assumption and/or assignment of the Objection Contracts and related liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

    G.  The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under all of the

6

Objection Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), by payment of the Cure Amounts provided on Schedule 2 hereto and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Objection Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B). The Buyers have provided adequate assurance of their future performance of and under the Objection Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). Pursuant to 11 U.S.C. § 365(f), the Objection Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

   H.  Approval of the assignment of the Objection Contracts at this time are in the best interests of the Selling Debtor Entities, their estates, their creditors, their stakeholders, and other parties-in-interest.

   NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

General Provisions

   1.  The Motion as it pertains to the Objection Contracts is GRANTED.

   2.  The Objections are resolved as reflected in the Stipulations and Agreed Orders and Notices of Withdrawal.

   3.  Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this order.

   4.  The Selling Debtor Entities are authorized, but not directed, to take all actions as may be requested by the Buyers for the purpose of assigning, transferring, granting,

conveying, and conferring to the Buyers or reducing to possession the Objection Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

        5.      This order shall be binding in all respects upon all creditors and stakeholders (whether known or unknown) of the Debtors, the Buyers, all successors and assigns of the Buyers and the Selling Debtor Entities, all affiliates and subsidiaries of the Buyers and the Selling Debtor Entities, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code. To the extent that any provision of this order is inconsistent with the terms of the Agreement, this order shall govern.

<u>Assumption And Assignment To The Buyers Of The Objection Contracts</u>

        6.      Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the Buyers, and the Buyers' assumption on the terms set forth in the Agreement, of the Objection Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied.

        7.      The Selling Debtor Entities are hereby authorized in accordance with 11 U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Buyers, effective upon the Closing of the Sale, the Objection Contracts free and clear of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Buyers such documents or other instruments as may be necessary to assign and transfer the Objection Contracts and Assumed Liabilities to the Buyers.

        8.      The Objection Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Buyers in accordance with their respective terms,

notwithstanding any provision in any such Objection Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entities shall be relieved from any further liability with respect to the Objection Contract after such assignment to and assumption of such contracts by the Buyers.  Nothing contained herein constitutes (i) a waiver by DuPont of its right to seek or (ii) a release of the Selling Debtor Entities' obligations to pay to DuPont postpetition amounts that arise prior to the Closing Date under the Purchase Order (as defined in the DuPont Stipulation) in the ordinary course of the Selling Debtor Entities' business.

        9.       All defaults or other obligations of the Selling Debtor Entities under the Objection Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities at the Closing of the Sale or as soon thereafter as practicable, or absent an agreement as to the Cure Amount between the Selling Debtor Entities and the non-Debtor party to the Objection Contract, by the order of this Court, and the Buyers shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Each non-debtor party to any Objection Contract shall be deemed to have consented to the assumption and assignment of the Objection Contract to the Buyers and shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entities or the Buyers, or the property of any of them, any default, breach, claim, pecuniary loss, or condition to assignment that exists, arises, or accrues as of the date of the Closing or any purported written or oral modification to the Objection Contracts.  The failure of the Debtors or the Buyers to enforce

prior to the Closing of the Sale one or more terms or conditions of any Objection Contracts shall not be a waiver of such terms or conditions, or of the Debtors' or the Buyers' rights to enforce every term and condition of any such Objection Contracts.  There shall be no rent accelerations, assignment fees, increases (including advertising rates), or any other fees charged to the Buyers as a result of the assumption and assignment of the Objection Contracts.

Additional Provisions

10.    Upon the Closing of the Sale, this order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Objection Contracts or a bill of sale transferring good and marketable title in such Objection Contracts to the Buyers pursuant to the terms of the Agreement.

11.    The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of this order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this order.

12.    This Court retains exclusive jurisdiction to interpret, construe, enforce and implement the terms and provisions of this order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (i) interpret, implement, and enforce the provisions of this order and (ii) determine all disputes among the Selling Debtor Entities, the Buyers, and any non-Debtor parties to any Assumed and Assigned Contracts concerning, inter alia, the Selling Debtor Entities' assumption and/or assignment of any Objection Contract to the Buyers under the Agreement.

13. All material portions of this order are nonseverable and mutually dependent.

14. Notwithstanding anything contained herein or based on application hereof, this order as it relates to S&Z Tool & Die Co., Inc. n/k/a S&Z Metalworks Ltd or its affiliates (together, "S&Z") is subject in all respects to the Initial S&Z Stipulation and Agreed Order and the Supplemental S&Z Stipulation and Agreed Order (together, the "S&Z Stipulations and Agreed Orders"). In the event of any inconsistency between this order and either of the S&Z Stipulations and Agreed Orders, the S&Z Stipulation and Agreed Order with respect to which there is an inconsistency shall control in all respects and any such inconsistency shall be resolved in favor of the S&Z Stipulations and Agreed Orders.

15. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
      May ___, 2008

 

UNITED STATES BANKRUPTCY JUDGE

## **Schedule 1**

1) Objection Of American Aikoku Alpha, Inc. To Notices Of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business (filed January 28, 2008, Docket No. 12369)

2) Limited Objection Of American Aikoku Alpha, Inc. To Notices Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business (filed January 29, 2008, Docket No. 12376)

3) Objection And Response Of S&Z Tool & Die Co., Inc. N/K/A S&Z Metal Works, Ltd. To (1) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business, And (2) Any Correspondence Cure Amount Proposed By Delphi Or Otherwise (filed February 1, 2008, Docket No. 12447)

4) Objection Of Hydro Aluminum North America, Inc. To The Debtors' Notice Of Cure Amount With Respect To Executory Contract To Be Assumed And Assigned In Connection With Sale Of Steering And Halfshaft Business (filed February 1, 2008, Docket No. 12452)

5) Objection Of E.I. Du Pont De Nemours And Company To Debtors' Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business (filed February 1, 2008, Docket No. 12464)

6) Objection By Freudenberg-Nok General Partnership (On Behalf Of Itself And Its Affiliates Freudenberg Telas Sin Tejer Sa And Freudenberg Iberica Sa En Comandita) To Debtors' (I) Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business And (II) Motion For Sale Of Steering And Halfshaft Business (filed February 4, 2008, Docket No. 12479)

7) Letter Objection Of Gevelot Extrusion To Debtors' Notice Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business, dated February 8, 2008 and marked received February 20, 2008 (Undocketed)

## **Schedule 2**[1]

| **Non-Debtor Counterparty** | **Agreement(s)** | **Cure Amount** |
|---|---|---|
| S.A. Gevelot Extrusion | SAG9OI3428 SAG9OI4577 | **€6,500** |

---

[1] Cure amounts and agreement information that have been or will be addressed in separate stipulations and agreed orders are not included on this schedule.

2