Joseph E. Shickich, Jr. (JS 5229)
RIDDELL WILLIAMS P.S.
1001 4th Ave Ste 4500
Seattle WA 98154-1192
(206) 624-3600 Telephone
(206) 389-1708 Facsimile

Attorneys for Microsoft Corporation

Hearing Date and Time:
May 29, 2008 at 10:00 a.m.
Objection deadline:
May 22, 2008 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re

DELPHI CORPORATION, et al.

Debtors.

Case No. 05-44481 (rdd)
(administratively consolidated)

Chapter 11

## RESPONSE OF MICROSOFT TO OMNIBUS CURE OBJECTION

COME NOW Microsoft Corporation and its wholly-owned subsidiary, Microsoft Licensing, GP (collectively "Microsoft"), and respond to the Omnibus Cure Objection of the Debtors (Docket No. 13459) as follows:

### Introduction

1.     This Response is filed by Microsoft to the Debtors' objection to Microsoft's Cure Claim of $3,005,830.42 for the Debtors' assumption of the following agreements to which Delphi Automotive Systems LLC and Microsoft Licensing, GP, are parties:

| Item | Number |
|------|--------|
| Microsoft Business Agreement | U2985619 |
| Microsoft Enterprise Agreement | 01E62067 |

2.     These agreements and their related enrollments are referred to collectively as the "EA". The EA is the contractual vehicle by which the Debtors obtained and are using Microsoft software licenses in volume across their entire business enterprise.

3.     Microsoft's Cure Claim was filed on March 25, 2008 under Docket No. 13236. Exhibit A. It restated Microsoft's cure claim for the EA as previously set forth in Microsoft's Proof of Claim, dated July 28, 2006, filed on July 31, 2006, under Delphi Claim No. 13452. Exhibit B.

4.     At Paragraph 19 of their Omnibus Cure Objection, the Debtors object to Microsoft's Cure Claim as "untimely because it was filed on March 25, 2008, 15 days after the Cure Proposal Bar Date expired (the "Untimely Cure Proposal")."

5.     The Debtors make no substantive objection to Microsoft's Cure Claim. They do not object to its amount or validity. As noted below, the amount is, in fact, reflected on their books and records and has been known and acknowledged by the Debtors throughout their bankruptcy cases.

## Supporting Documents

6.     Submitted with this Response is the Declaration of Joseph E. Shickich, Jr., Authenticating Documents. The Exhibits referenced in this Response are those attached to that declaration.

## Statement of Facts

7.     When Debtors filed their bankruptcy cases in October 2005, they were parties to the EA under which they obtained Microsoft licenses for more than 10,000 computers in their offices and over 4,000 computers on their plant floors.

8.     When Debtors filed the schedules for Delphi Automotive Systems LLC (Case No. 05-44640) on January 20, 2006, Schedule G listed the EA as an executory contract. Exhibit C.

9.     In February 2006, Delphi and Microsoft discussed how to deal with the licensing fees that were due and coming due under the EA. Delphi proposed that the fees be prorated as of the bankruptcy filing date (October 8, 2005) and Mr. Mark Volpp of Delphi prepared a schedule setting out that calculation. It showed that approximately

$3.3 million was due prepetition and this served as the initial calculation of cure amount. Exhibit D.

10.    When Debtors filed their Amendments to Schedule F for Delphi Automotive Systems LLC, they listed the amount of Microsoft's claim as $3,005,437.42. Exhibit E.  Likewise, they reported the same amount when they filed the Amended and Restated Schedule F for Delphi Automotive Systems LLC.  Exhibit F.

11.    On July 31, 2006, Microsoft filed its Proof of Claim.  Exhibit B.  It was very specific about the existence and nature of the cure claim.  It stated the cure amount as $3,005,830.42 with citation to the EA and the particular billing documents that comprised that amount.  It also said:

> As of the date of this Proof of Claim, the Debtor has neither assumed nor rejected the EA.  Accordingly, Microsoft files this Proof of Claim contingently in case the Debtor rejects and does not assume the EA. . . . .  Attached hereto is a copy of page 7250 from Schedule G from the Debtor.  It shows the Debtor has listed the EA as one of the Debtor's executory contracts.  Also attached is an email from Mark Volpp of the Debtor, dated February 13, 2006, in which the Debtor calculates that the pre-petition amount due under the EA is $3,343,217.62.  Microsoft reserves the right to amend this Proof of Claim, especially if the Debtor rejects the EA and does not assume it.

12.    The Debtors apparently scrutinized Microsoft's Proof of Claim closely.  It was $393.00 greater than the amount shown on Debtors' Schedules (Microsoft's Proof of Claim of $3,005,830.42 minus Debtor's Schedule F of $3,005,437.42 equals $393.00).  In January 2007, counsel for Microsoft was contacted by Darlene Evans, a Delphi employee, asking for additional information about Microsoft's claim; namely, copies of the two invoices identified in the Proof of Claim totaling $343.00.  Microsoft's counsel provided this information to her.  Exhibit G.

13.    Thereafter, the Debtors revised the amount of Microsoft's claim upwards by the $393.00 and listed the amount of Microsoft's claim on the Kurtzman Carson

Consultants' website for Delphi in an amount identical to the amount stated in Microsoft's Proof of Claim: $3,005,830.42. The website shows that this claim is not contingent, unliquidated or disputed and that no objection to this claim has been filed. Exhibit H.

14. In late December 2007, the Debtors sent out their notice of the plan confirmation hearing which included a provision entitled "Cure Claim Submission Deadline." It referenced Article 8.2 of the plan, which set up a procedure by which some but inexplicably not all counterparties to executory contracts would receive a "Cure Amount Notice" telling them the Debtors' calculation of their particular cure amount and giving each of them an individualized notice to file a cure claim if they disagreed with the Debtors' calculation within 45 days after the order confirming the plan. Microsoft did not get such a notice. Article 8.2 of the plan purports to require counterparties, like Microsoft, to the so-called "Other Executory Contracts" to file cure claims (or risk no cure) without any prima facie dispute by the Debtors of the counterparties' right to or amount of cure or delivery by the Debtors of a individualized Cure Amount Notice as was being given to other counterparties, and apparently even if the Debtors had already scrutinized the amount closely and their books and records and schedules already reflected the accurate cure amount.

15. The plan was confirmed on January 25, 2008.

16. The deadline under Section 8.2 of the Plan was 45 days later, on March 10, 2008.

17. Microsoft filed its Cure Claim on March 25, 2008. The Cure Claim was very specific in its restatement of Microsoft's earlier Proof of Claim. It said:

> The Cure Claim of Microsoft of the EA was set forth in Microsoft's Proof of Claim, dated July 28, 2006, filed on July 31, 2006, under Delphi Claim Number 13452. . . . As reported in the Proof of Claim, the cure amount is $3,005,830.42.

Moreover, a copy of Microsoft's Proof of Claim was attached to the Cure Claim.

18.   The Debtors did not meet the plan's April 4, 2008 deadline to close and have been unable to consummate the plan. As a result, the 15-day delay in the filing of the Microsoft Cure Claim, if it ever was material to the timely closing of the Plan and Debtors' emergence from Chapter 11, is now completely immaterial. In the present context of the case, where Debtors have just sued their Plan Investors and are at least $2.55 billion short of the funds necessary to close, these 15 days in mid-March are inconsequential, especially since the Debtors had notice of Microsoft's cure from at least as early as the filing of Microsoft's Proof of Claim in July 2006.

## Debtors Knew of and Acknowledge Cure Amount

19.   There can be no dispute that the Debtors had actual knowledge of the default in the EA and the amount to cure it. Mr. Volpp prepared the actual calculations that led to the proration of the licensing fees. The Debtors' amended Schedule F and their amended and restated Schedule F were only $393 less than Microsoft's later filed Proof of Claim. Because of this discrepancy, Ms. Darlene Evans from the Debtors obtained additional information about Microsoft's claim. The Debtors ultimately rescheduled their claim in exactly the amount asserted by Microsoft in its Proof of Claim thereby acknowledging the cure amount.

## Proof of Claim Is Sufficient

20.   Microsoft's Proof of Claim, which was filed on July 31, 2006, is sufficient to meet the requirements of Article 8.2(b) of the Plan, which did not require that a cure claim be in any particular format or style. Microsoft's Proof of Claim provided all of the requisite information and was scrutinized and acknowledged by the Debtors well in advance of the Cure Claim Submission Deadline.

## Relation Back to Proof of Claim

21.    The law relating to amendments is instructive and shows that Microsoft's Cure Claim relates back in time to the filing of Microsoft's Proof of Claim in July 2006. B.R. 7015(c)(1)(B) provides:

> An amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading.

The Cure Claim clearly asserts the claim set out in the Proof of Claim.

22.    "[A]mendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading fall within Rule 15(c)." Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 1497.

23.    Because the Cure Claim is a restatement of the Proof of Claim, the relation back is mandatory. *Salyton v. American Exp. Co.*, 460 F.3d 215, 227 (2nd Cir. 2006) ("[i]f facts provable under the amended complaint arose out of the conduct alleged in the original complaint, relation back is mandatory").

## Informal Cure Objection

24.    The law relating to informal proofs of claim is also instructive and shows that Microsoft's Proof of Claim qualifies as a timely, informal cure claim.

25.    The requirements for an informal proof of claim are that it (1) be filed timely with the bankruptcy court and have been made part of the judicial record; (2) state the existence and nature of the debt; (3) state the amount claimed; and (4) evidence the creditor's intent to hold the debtor liable. *In re Enron Creditors Recovery Corp*, 370 B.R. 90, 99 (Bank. S.D.N.Y. 2007); *In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bank. S.D.N.Y. 1995).

26.    Microsoft's proof of claim was timely filed with the bankruptcy court and is a part of the judicial record. It very clearly states the existence and the nature of the debt. It refers specifically to the EA and its assumption or rejection. It states the amount claimed, which the Debtor scrutinized and accepted. It is unmistakable evidence of Microsoft's intent to hold the Debtor liable for this amount.

## Excusable Neglect

27.    An alternative theory is that Microsoft should be granted leave to file a late cure claim because of excusable neglect.

> The determination of whether neglect is "excusable" is "an equitable one, taking account of all relevant circumstances surrounding the parties' omission." Such circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay…and whether the movant acted in good faith." This list is not exhaustive. [Citations omitted.]

*Pioneer Inv. Servs. Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993); *In re Enron Creditors Recovery Corp.*, 370 B.R. at 100-101.

28.    In *Pioneer*, a creditor represented by "an experienced bankruptcy attorney" did not file a proof of claim on time because the creditor's lawyer overlooked the bar date in the bankruptcy court's notice. The bankruptcy court did not find excusable neglect and the district court affirmed. The Sixth Circuit reversed and the Supreme Court affirmed, holding that the bankruptcy court abused its discretion in not finding excusable neglect.

29.    In its Omnibus Cure Objection, the Debtors cite the excusable neglect cases of *In re Enron Corp.*, 419 F.3d 115, 132 (2nd Cir. 2005) and *In re Dana Corp.*, 2007 WL 1577763, at *6 (Bankr. S.D.N.Y. 2007) for the speculation that by "allowing this counterparty to ignore the Cure Proposal Bar Date could potentially open the floodgates to other late Cure Proposals, which would prejudice the Debtors in their

efforts to efficiently resolve Cure Proposals and determine their post-emergent liquidity needs."

30.    In the case cited by the Debtors, *In re Enron Corp.*, 419 F.3d at 131, the Second Circuit emphasized the caveat that "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."

31.    There is no actual danger of prejudice to the Debtor. Instead, the obvious and real prejudice is to Microsoft. The delay is miniscule and has no impact on this case in its current posture.

32.    The Debtors made the decision to act affirmatively and assume the EA knowing full well the amount of Microsoft's cure. If there is any prejudice to the Debtors, it is one they knew and accepted and should not avoid and harvest a unfair windfall on a technicality. A cure claim is not like a prepetition creditor's claim that is adjusted or discharged in a bankruptcy case. Instead, it is the result of an affirmative post-petition act by the Debtors to gain the benefit of an executory contract with a corresponding mandatory obligation to provide the cure. Here, there is no substantive dispute about the amount or validity of Microsoft's cure claim, nor is there any question that the Debtors had full knowledge and opportunity to scrutinize it long before March 10, 2008.

### Cure is Mandatory

33.    In any event, the Bankruptcy Code makes cure mandatory if an executory contract is assumed. The obligation to cure is unconditional. Section 365 (b)(1)(A) directly provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default...

05-44481-rdd   Doc 13644   Filed 05/21/08   Entered 05/21/08 18:29:05   Main Document
Pg 9 of 10

*In re A.C.E. Elevator Co., Inc.*, 347 B.R. 473, 483 (Bankr. S.D.N.Y. 2006); *In re WorldCom, Inc.*, 343 B.R. 486, 500 (Bankr. S.D.N.Y.2006); *In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 754 (Bankr. S.D.N.Y. 1986).

34.    "The idea of cure in the Code is to provide the other party to the contract with the benefit of its economic bargain." *3 Collier on Bankruptcy.* ¶ 365.05[3][b] (15th ed. rev. 2005).

35.    Unlike the specific statutory authority for the establishment of a bar date for prepetition creditor claims set forth in Section 501 and BR 3003(c), there is no specific statutory or rule basis for a so-called "Cure Proposal Bar Date" by which those who are counterparties to an executory contract must affirmatively assert a Cure Claim or lose the cure.

36.    Especially here, where the Debtors had full knowledge of Microsoft's Cure Claim, no basis exists for forgiving the Debtors their obligation under Section 365 to provide cure.

37.    The Debtors have decided to assume that EA because of the benefits it provides in licensing thousands of computers used by the Debtors.  Without those licenses, the Debtors may not run the related Microsoft software on their computers. The Debtors are getting the benefit of the bargain in having the licenses.  To get its benefit of the bargain, Microsoft is entitled to cure and Section 365 mandates it.

## Conclusion

38.    The Debtors have had full knowledge of Microsoft's Cure Claim since the beginning of this case.  Its representatives helped determine how to prorate the license fees to establish the Cure Claim and carefully scrutinized Microsoft's Proof of Claim.

39.    The Proof of Claim is sufficient for purposes under Section 8.2 of the Plan and is a timely, informal cure claim.  The Cure Claim appropriately relates back in time to the Proof of Claim and the doctrine of excusable neglect works in Microsoft's favor.

4830-3135-6930.01                                  9

40.    Section 365 is mandatory:  The Debtors must pay Microsoft its Cure Claim of $3,005,830.42.

41.    Because it has filed and served this Response, Microsoft understands and trusts that the hearing set for May 29, 2008, will be adjourned and the Debtors will negotiate in good faith to reach a consensual resolution.

DATED this 21st day of May, 2008.

RIDDELL WILLIAMS P.S.

By: _____
Joseph E. Shickich, Jr. (JS 5229)
Washington State Bar No. 8751
Riddell Williams P.S.
1001 4th Ave Ste 4500
Seattle WA  98154-1192
(206) 624-3600 Telephone
(206) 389-1708 Facsimile
jshickich@riddellwilliams.com
Counsel for Microsoft Corporation and
Microsoft Licensing, GP