**DAY PITNEY LLP**
Amish R. Doshi (AD5996)
7 Times Square
New York, New York 10036
Telephone:    (212) 297-5800
Facsimile:    (212) 916-2940
E-Mail:       adoshi@daypitney.com

Hearing Date:    May 29, 2008
Hearing Time:    10:00 A.M.
Objection Date:  May 22, 2008

Attorneys for IBJTC Business Credit Corporation,
as successor to IBJ Whitehall Business Credit Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| **DELPHI CORPORATION,** *et al.***,** ) | Case No. 05-44481 (RDD) |
| ) | |
| Debtors. ) | (Jointly Administered) |

**IBJTC BUSINESS CREDIT CORPORATION'S RESPONSE
TO DEBTORS' (I) OMNIBUS OBJECTION PURSUANT TO
CONFIRMATION ORDER, 11 U.S.C. §§105(a), 365, AND
FED. R. BANKR. P. 9014 REGARDING CURE PROPOSALS
SUBMITTED UNDER ARTICLE 8.2(b) OF DEBTORS' PLAN
OF REORGANIZATION AND (II) REQUEST FOR ORDER
PROVISIONALLY ALLOWING CERTAIN CURE PROPOSALS**

IBJTC Business Credit Corporation ("IBJTC"), as successor to IBJ Whitehall Business Credit Corporation ("IBJ"), by and through its undersigned counsel, hereby submits its response to the Debtors' (I) Omnibus Objection Pursuant To Confirmation Order, 11 U.S.C. §§ 105(a), 365, and Fed. R. Bankr. P. 9014 Regarding Cure Proposals Submitted Under Article 8.2(b) Of Debtors' Plan of Reorganization and (II) Request For Order Provisionally Allowing Certain Cure Proposals (the "Cure Objection"), and in support of its response, respectfully states as follows:

**I.    PRELIMINARY STATEMENT**

1.    The Lease Agreements (as that term is defined below) have expired by their own terms and, thus, cannot be assumed by the Debtors. Accordingly, the issue of cure is moot.

2. To the extent that this Court deems that the Lease Agreements may be assumed, then the Cure Objection must be overruled on the basis that:

    (a) The Cure Objection fails to rebut the *prima facie* validity of the Cure Claim (as that term is defined below), as required by Fed. R. Bankr. P. 3001(f); and

    (b) The Cure Claim is the proper amount of cure required pursuant to 11 U.S.C. § 365(b)(1), representing the pre-petition monthly lease payments and related taxes due under the Lease Agreements, plus attorneys' fees and costs and all other charges due thereunder.[1]

## II.    SUMMARY OF FACTS

3. Pre-petition, General Motors Corporation ("GM") and First American Capital Management Group, Inc. ("First American") entered into, among other things, a Master Lease Agreement (as at any time amended, the "Master Lease") and certain schedules (as at any time amended, the "Schedules" and together with the Master Lease, collectively, the "Lease"), whereby GM leased certain equipment (collectively, the "Equipment") from First American. A copy of the Master Lease and the Schedules are attached as Exhibits "1" through "14" to the Compel Motion (as that term is defined below) and is incorporated by reference herein.

4. Upon information and belief, GM assigned its right, title and interest in and to the Lease and Equipment to Delphi Corporation ("Delphi"), one of the Debtors in the above-captioned bankruptcy cases.

---

[1] In addition, IBJTC reserves the right to seek any unpaid post-petition amounts due under the Lease Agreements. Also, for avoidance of any doubt, the amount of the attorneys' fees and costs and all other charges due under the Lease Agreements have not been included, but will be added at a later date.

2

5.      As a result of, *inter alia*, that certain December 23, 1996 Master Purchase Agreement (the "Master Purchase Agreement") between Capital Associates International, Inc. ("CAI") and IBJS Commercial Corporation ("IBJS") and that certain August 10, 1999 Assignment of Lease and Purchase Agreement (the "Assignment Agreement") between First American and CAI, IBJS[2] became the holder of (a) the Schedules and (b) the Lease as it applies to the Schedules. Copies of the Master Purchase Agreement and the Assignment Agreement are attached as Exhibits "15" and "16", respectively, to the Compel Motion and are incorporated by reference herein.

6.      Thereafter, Delphi and IBJ entered into several Renewal Agreements with respect to certain Schedules (the "Renewals" and together with the Lease, collectively, the "Lease Agreements"), whereby the maturity date under each such Schedule was extended and the monthly installment amount was modified as follows:

| Schedule No. | New Maturity Date | Monthly Rental Installment Amount |
|---|---|---|
| 1093 | 05/31/06 | $   341.47 |
| 1094 | 09/30/05 | $   395.06 |
| 1137 | 04/31/07 | $1,194.72 |
| 1180 | 03/31/04 | $   433.23 |
| 1185 | 08/31/06 | $   696.09 |
| 1205 | 04/30/04 | $   463.50 |
| 1336 | 08/31/06 | $   248.94 |
| 1366 | 11/01/06 | $1,359.55 |

True and correct copies of the Renewals are attached as Exhibit "17" to the Compel Motion and are incorporated by reference herein.

7.      With respect to the Schedules that were not renewed or whose renewal term periods have passed, and under which Delphi continues to possess the Equipment, Delphi is

---

[2]     IBJS later became IBJ.

3

obligated to make month-to-month rental payments to IBJTC at the rate of the monthly installment amount of the corresponding original Schedules or most recent Renewal.

8.  IBJTC is the successor-in-interest to IBJ with respect to the Lease Agreements (as it applies to the Schedules), the Equipment and the Renewals.

9.  On or about July 31, 2006, IBJTC filed a Proof of Claim in the amount of $98,086.39 (the "Proof of Claim"), representing the amounts due by Delphi to IBJTC under the Lease Agreements. A copy of the Proof of Claim (without attachments) is attached herewith as Exhibit "1" and is incorporated by reference herein.

10. The Proof of Claim was later reduced to $57,149.69 (the "Reduced Amount"), pursuant to that certain Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 (I) Disallowing And Expunging Certain (A) Claims With Insufficient Documentation and (B) Claims Unsubstantiated By Debtors' Books And Records, (II) Modifying Certain Claims, And dated December 19, 2006, (III) Adjourning Hearing On Certain Contingent And Unliquidated Claims Pursuant to 11 U.S.C. § 502(c) Identified In Third Omnibus Claims Objection (the "Third Omnibus Order").

11. On August 23, 2006, IBJTC filed a Motion to Compel the Debtors to Assume or Reject the Lease and for Payment of Post-Petition Lease Obligations (Docket No. 5009) (the "Compel Motion").

12. Pursuant to that certain Stipulation and Order Resolving IBJTC Business Credit Corporation's Motion to Compel Assumption or Rejection of Unexpired Lease and for Payment and Performance of Post-Petition Lease Obligations (Docket No. 5865), dated November 28, 2006 (the "Compel Order"), the Debtors agreed, among other things, to the payment of specific post-petition amounts under certain Schedules and to continue to make the monthly payments set forth in the Compel Order until either: (i) the particular Schedule expires and Delphi returns the

4

Equipment under that Schedule in accordance with the terms of the Lease; or (ii) a decision is made to reject the Lease and/or one or more of the Schedules. *See,* Compel Order at ¶ E.

13.     On or about April 27, 2007, the Debtors filed that certain Debtors' Thirteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books and Records, (C) Protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims and Untimely Tax Claims, and (F) Claims Subject To Modification, Tax Claims Subject to Modification, and Claims Subject to Modification And Reclamation Agreement (the "13th Omnibus Objection").

14.     Pursuant to the 13th Omnibus Objection, the Debtors sought, among other things, to further reduce the Proof of Claim amount from $57,149.69 to $44,643.53 (the "Final Amount") and to modify the Proof of Claim by changing the identity of the Debtor against whom the Proof of Claim was asserted. Specifically, the Debtors asserted that the Proof of Claim should be asserted against Delphi Automotive Systems LLC under Case No. 05-44640, rather than against Delphi under Case No. 05-44481.

15.     On or about June 19, 2007, IBJTC filed that certain Limited Response to Debtors' Thirteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (a) Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C) protective Insurance Claims, (D) Insurance Claims Not Reflected On Debtors' Books and Records, (E) Untimely Claims and Untimely Tax Claims, and (F) Claims Subject To Modification, Tax Claims Subject to Modification, and Claims Subject to Modification and Reclamation Agreement (Docket No. 8330) (the "Limited Response").

5

16. As set forth in detail in the Limited Response, IBJTC objected to the Debtors' proposed modification of the Proof of Claim to the extent that it sought to modify the identity of the Debtor against which the Proof of Claim was asserted. IBJTC did not contest the further reduction in the Proof of Claim amount to the sum of the $44,643.53. To date, no hearing has been held with respect to the 13th Omnibus Objection and the Limited Response.

17. On or about December 28, 2007, the Debtors filed that certain Motion For Order Pursuant To 11 U.S.C. Sections 105(a) And 502(c) Estimating Or Provisionally Allowing Certain Unreconciled Claims Solely For Purposes Of Administration Of Discount Rights Offering (Docket No. 11606) (the "Rights Offering Motion").

18. On or about January 23, 2008, an Order was entered with respect to the Rights Offering Motion (the "Rights Offering Order").

19. The Rights Offering Order provides, among other things, that for purposes of administering the Discount Rights Offering (as that term is defined in the Rights Offering Motion) and allocating Discount Rights (as that term is defined in the Rights Offering Motion), IBJTC shall have an estimated and temporarily allowed claim in the amount of $44,643.53.

20. On or about March 6, 2008, IBJTC filed its Precautionary Cure Claim, asserting, among other things, that: (a) the Debtors cannot assume the Lease Agreements because they have expired by their own terms, and (b) in the event the Court deems that the Lease Agreements can be assumed, then IBJTC is owed a cure amount of $44,643.53, plus attorneys' fees and costs and all other charges due under the Lease Agreements (collectively, the "Cure Claim"). The Precautionary Cure Claim is entered as Docket No. 12983 and is incorporated by reference herein.

6

21. On or about April 24, 2008, the Debtors filed the Cure Objection, asserting, among other things, that the Debtors' books and records are not consistent with the cure amount asserted by IBJTC in the Cure Claim.

22. For the reasons set forth below, the Cure Objection should be overruled.

### III. ARGUMENT

#### A. The Leases Agreements have expired by their own terms

23. It is clear by the terms of the Lease, the Schedules and the Renewals that the Lease Agreements have expired by their own terms and are on a month-to-month basis until the Equipment is returned to IBJTC. Presently, each of the Schedules, whether pursuant to their original term or whether renewed as a consequence of the Renewals, have expired. As such, the Lease Agreements cannot be assumed by the Debtors. *See*, 11 U.S.C. § 365(d).

#### B. To the extent this Court deems that the Lease Agreements can be assumed, the Cure Claim is the proper cure amount pursuant to 11 U.S.C. 365(b)[3]

24. In the event that: (a) the Debtors seek to assume the Lease Agreements, and (b) this Court finds that the Lease Agreements can be assumed, then, under such a scenario, IBJTC is owed a cure amount of not less than $44,643.53, plus attorneys' fees and costs, plus all other charges due under the Lease Agreements.

25. It is well established that a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

---

[3] Nothing in this response shall be deemed as an admission by IBJTC that the Lease Agreements may be assumed by the Debtors. To the extent that the Debtors seek to assume the Lease Agreements, IBJTC reserves all rights to oppose such assumption on any grounds. For avoidance of any doubt, IBJTC asserts that the Lease Agreements cannot be assumed because they have expired by their own terms and 11 U.S.C. § 365 only applies to unexpired leases and executory contracts.

26.    It is further well established that the debtor bears the burden of proof when seeking to disallow a properly filed claim. In re Woodmere Investors Ltd. Partnership, 178 B.R. 346, 354 (Bankr. S.D.N.Y. 1995); In re Frederes, 98 B.R. 165, 166 (Bankr. W.D.N.Y. 1989). Evidence necessary to rebut the presumption of validity, "must be sufficient to demonstrate a true dispute and must have probative force equal to the contents of the claim." 9 Collier on Bankruptcy, §3001.09[2], p. 3001-27 (15th ed. 2004).

27.    Here, there is no dispute as to the proper execution and filing of the Cure Claim. As such, it is *prima facie* evidence of the validity and amount of the Cure Claim.

28.    Furthermore, there is no basis recited in the Cure Objection to disallow the Cure Claim, except a bare assertion that the cure amount is not consistent with the Debtors' books and records. There is no evidence to substantiate such an assertion. In fact, all the evidence, including pleadings filed by the Debtors, establish that, at least, the sum of $44,643.53 is the pre-petition amount due to IBJTC under the Lease Agreements. Thus, for the Debtors to allege that according to their books and records, the proper cure amount is zero is, simply, unsupported.

29.    Specifically, as set forth above, the 13th Omnibus Objection sought, among other things, to reduce the Proof of Claim amount to $44,643.53. Thus, according to the Debtors, the pre-petition amounts due to IBJTC under the Lease Agreements is, at least, $44,643.53.

30.    Similarly, the Rights Offering Motion and the Rights Offering Order estimated and temporarily allowed IBJTC, a claim in the amount of $44,643.53 for purposes of Discount Rights and Discount Rights Offering. The Rights Offering Motion and Rights Offering Order thus serve to reinforce the fact that the Debtors believed that the pre-petition amounts due to IBJTC is, at least, $44,643.53. Hence, it is clear that the Debtors believe that at least this amount is due and owing to IBJTC, prior to the petition date, on account of the Lease Agreements.

8

31. Notwithstanding the foregoing, 11 U.S.C. § 365(b) sets forth specific prerequisites that must be met before a debtor and/or trustee can assume an executory contract or unexpired lease, including curing (or providing adequate assurance of a prompt cure of) any defaults under the subject contracts. As set forth above and in the Precautionary Cure Claim, the proper amount of cure payment is the sum of the pre-petition unpaid monthly lease payments and taxes due under the Lease Agreements, plus attorneys' fees and costs, plus all other charges due thereunder. As such, the Cure Claim is $44,643.53, plus attorneys' fees and costs, plus all other charges due under the Lease Agreements, if the Court holds the expired Lease Agreements are able to be assumed.

32. A summary of the pre-petition unpaid monthly lease payments due to IBJTC is set forth in Exhibit "2" and is incorporated by reference herein. A summary of the pre-petition unpaid personal property taxes due under the Lease Agreements is set forth in Exhibit "3" and is incorporated by reference herein.

33. Absent payment of the appropriate amounts due to IBJTC, the Lease Agreements may not be assumed. *See*, 11 U.S.C. § 365(b).

34. Accordingly, to the extent that the Lease Agreements can be assumed, the Debtors owe the Cure Claim amounts to IBJTC.

## IV. RESERVATION OF RIGHTS

35. IBJTC reserves their rights to further respond to the Cure Objection and/or to amend or supplement this response.

9

## V. CONCLUSION

**WHEREFORE**, to the extent that the Debtors seek to assume the Lease Agreements and this Court determines that the Lease Agreements may be assumed:

(a) The Cure Objection must be overruled as to IBJTC;

(b) As a precondition to the assumption of the Lease Agreements, the Debtors pay to IBJTC, the sum of no less than $44,643.53, plus attorneys' fees and costs, plus all other charges due under the Lease Agreements;

(c) The Debtors cure any other defaults under the Lease Agreements and pay any unpaid post-petition amounts due to IBJTC; and

(d) For such other and further relief that this Court deems just and proper.

Dated: May 22, 2008
      New York, New York

Respectfully submitted,

**DAY PITNEY LLP**

By: /s/ Amish R. Doshi
    Amish R. Doshi (AD5996)
7 Times Square
New York, New York 10036
Telephone: (212) 297-5800
Facsimile: (212) 916-2940
E-Mail: adoshi@daypitney.com

Attorneys for IBJTC Business Credit Corporation (USA), as successor to IBJ Whitehall Business Credit Corporation