KIRKPATRICK & LOCKHART                    **Hearing Date:  May 29, 2008**
PRESTON GATES ELLIS LLP                                  **10:00 a.m.**
Edward M. Fox, Esq. (EF 1619)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                      :      Chapter 11
                                            :      Case No. 05-44481 (RDD)
DELPHI CORPORATION, *et al.*,               :      (Jointly Administered)
                                            :
        Debtors.                            :
                                            :
-------------------------------------------------------X

**SUPPLEMENTAL OBJECTION OF WILMINGTON TRUST COMPANY,
AS INDENTURE TRUSTEE, TO MOTION FOR ORDER UNDER
11 U.S.C. §§ 361 AND 363, FED. R. BANKR. P. 9019, AND CASH MANAGEMENT
ORDER, AUTHORIZING DASHI TO GRANT ADEQUATE PROTECTION TO
PENSION BENEFIT GUARANTY CORPORATION IN CONNECTION WITH
CERTAIN INTERCOMPANY TRANSFERS OF REPATRIATED FUNDS**

        Wilmington Trust Company ("WTC"), as indenture trustee for the senior notes

and debentures in the aggregate principal amount of $2 billion issued by Delphi Corporation

("Delphi"), by and through its attorneys, Kirkpatrick & Lockhart Preston Gates Ellis LLP,

hereby files this supplemental objection (the "Objection") to the Motion for Order Under 11

U.S.C. §§ 361 and 363, Fed. R. Bankr. P. 9019, and Cash Management Order Authorizing

DASHI To Grant Adequate Protection to Pension Benefit Guaranty Corporation in Connection

with Certain Intercompany Transfers of Repatriated Funds (the "Motion") filed by Delphi and its

debtor subsidiaries and affiliates (collectively, the "Debtors"), stating as follows:

NY-605840 v1

## PRELIMINARY STATEMENT

1.    The Motion seeks authorization for Delphi Automotive Systems (Holding) Inc. ("DASHI") -- a solvent debtor entity, 87% of which is indirectly owned by Delphi Corporation -- to provide adequate protection to the Pension Benefit Guaranty Corporation in connection with DASHI's anticipated repatriation of $750 million from its foreign subsidiaries and subsequent loan of those funds to to Delphi Automotive Systems, LLC ("DAS"), apparently to finance DAS's continuing operating losses.

2.    Notably, the Motion does not seek authorization for the underlying transaction itself – namely, DASHI's decision to repatriate and lend $750 million to DAS -- nor does it offer any explanation for, or request approval of, DASHI's decision to repatriate such funds and make such a loan.  Instead, the Debtors claim that, by virtue of certain prior orders of this Court, the Debtors already have the requisite authority to repatriate funds and make any intercompany loans they deem advisable.

3.    Contrary to the Debtors' contentions, however, none of the prior orders of this Court have provided the Debtors with the sort of *carte blanche* authority to repatriate funds and make intercompany loans that they claim in the Motion.

4.    Moreover, given the size of the proposed loan, and the dubious creditworthiness of DAS, the proposed loan by DASHI cannot possibly qualify as a transaction "in the ordinary course of business" within the meaning of 11 U.S.C. § 363(c)(1).

5.    Finally, in light of DAS's substantial and continuing operating losses and questionable ability to repay any intercompany loan from DASHI, there is simply no "good business reason" for DASHI to continue to pour hundreds of millions of dollars into DAS to enable DAS to subsidize its customers by continuing to sell its products at a loss.

6.      Accordingly, the Motion must be denied.  In re Lionel Corp., 722 F.2d

1063, 1071 (2d Cir. 1983).

## FACTUAL BACKGROUND

7.      On October 8, 2005 (the "Petition Date"), Delphi Corporation and each of

the other Debtors in these jointly administered cases filed a voluntary petition for relief under

chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy

Code").  Since the Petition Date, the Debtors have continued to operate their businesses and

remained in possession of their assets as debtors in possession pursuant to sections 1107 and

1108 of the Bankruptcy Code.

## A.      Cash Management Order

8.      On the Petition Date, the Debtors filed a number of first day motions,

including a Motion For Order Under 11 U.S.C. §§ 363 And 553 Authorizing (I) Continued

Maintenance Of Existing Bank Accounts, (II) Continued Use Of Existing Cash Management

System, (III) Continued Use Of Existing Business Forms, (IV) Preservation And Exercise Of

Intercompany Setoff Rights, And (V) Grant Of Administrative Status For Postpetition

Intercompany Transactions (Bridge and Final Orders) (the "Cash Management Motion")

9.      On October 27, 2005, the Court held a final hearing with respect to the

Cash Management Motion, and commented as follows regarding the Debtors' request for

authorization to continue making intercompany extensions of credit: "I don't think there should

be a sort of an automatic yes by a particular debtors' management . . . to a borrowing request. . . .

There needs to be some analysis of the ability to repay that."  (October 27, 2007 Transcript, p.

23).

10.     On November 4, 2005, the Court entered its Final Order Under 11 U.S.C. §§ 363 and 553 Authorizing (I) Continued Maintenance of Existing Bank Accounts, (II) Continued Use of Existing Cash Management System, (III) Continued Use of Existing Business Forms, (IV) Preservation and Exercise of Intercompany Setoff Rights, and (V) Grant of Administrative Status for Postpetition Intercompany Transactions (the "Cash Management Order").

11.     The Cash Management Order authorized the Debtors "to continue to engage in the Intercompany Transactions in the ordinary course of the Debtors' business," (¶ 10), but cautioned that "[n]othing in this order relieves any of the Debtors or person or entity of its fiduciary duties with respect to entry into any intercompany transactions."  (¶ 15).

**B.     DASHI Intercompany Transfer Order**

12.     On October 5, 2007, the Debtors filed a Motion for Order Under 11 U.S.C. §§ 363(c), 1107, and 1108, and Cash Management Order, and Alternatively, Under 11 U.S.C. §§ 363(b)(1) and 364(c), Confirming Authority of Delphi Automotive Systems (Holding), Inc. to Complete Intercompany Transfer of Funds (the "DASHI Intercompany Transfer Motion") by which the Debtor sought authorization for DASHI to make an intercompany loan of up to $650 million to DAS.

13.     On October 12, 2007, WTC filed a preliminary objection to the DASHI Intercompany Transfer Motion, which questioned whether the proposed intercompany loan from DASHI to DAS was in the best of DASHI's creditors and equity holders, including Delphi Corporation.

14.     WTC ultimately withdrew its preliminary objection based on the Debtors' agreement to provide certain information to WTC concerning intercompany loans, and to modify

the form of the proposed order granting the DASHI Intercompany Transfer Motion in order to preserve WTC's right to object to any future intercompany extensions of credit by DASHI (or any of the other Debtors) to DAS.

15.      Following the withdrawal of WTC's objection, on October 25, 2007, the Court entered its Order Under 11 U.S.C. §§ 363(c), 1107, and 1108, and Cash Management Order, and, Alternatively, Under 11 U.S.C. §§ 363(b) and 364(c), Confirming Authority of Delphi Automotive Systems (Holding) Inc. to Complete Intercompany Transfer of Funds (the "DASHI Intercompany Transfer Order").

16.      The DASHI Intercompany Transfer Order "confirm[ed] DASHI's authorize to complete the Intercompany Transaction in accordance with [the Cash Management Order]" (¶ 2) (emphasis added) and defined Intercompany Transaction as "an intercompany transfer to DAS LLC in an amount expected to be up to $650 million." (Preamble, p. 1) (emphasis added).

17.      The DASHI Intercompany Transfer Order further provided that:

> This order, including, without limitation, any finding regarding the ordinary course nature of the Intercompany Transaction, shall not be used adversely as precedent by the Debtors against Wilmington Trust Company, as indenture trustee ("WTC") or by WTC against the Debtors, in any subsequent litigation in these chapter 11 cases.

DASHI Intercompany Transfer Order, ¶ 6.

## C.      The Motion

18.      On May 9, 2008, the Debtors filed the instant Motion, which reports that DASHI intends to repatriate additional funds from its foreign subsidiaries in order to make an additional $750 million intercompany loan to DAS (¶ 17), and seeks authorization to provide adequate protection to the Pension Benefit Guaranty Corporation in connection with that intercompany loan.

- 5 -

19.     The Motion does not actually request authorization for DASHI to make an additional $750 million loan to DAS.  Instead, the Debtors assert that they already have that authority by virtue of the Cash Management Order, as confirmed by the DASHI Intercompany Transfer Order.  See Motion, ¶18, n.6 ("The [DASHI Intercompany Transfer Order] confirmed the Debtors' authority under the Cash Management Order to complete the intercompany transactions contemplated . . . Because the Court has already issued an order confirming the authority granted under the Cash Management Order, no additional confirmation or authority is believed necessary at this time.").

20.     On May 16, 2007, WTC filed a preliminary objection to the Motion, and issued an initial set of discovery requests to the Debtor seeking information regarding, among other things, DAS' ability to repay any additional funds it borrows from DASHI.

## THE MOTION SHOULD BE DENIED

### I.     The Debtors Do Not Have the Requisite Authority to Make the $750 Million Proposed Intercompany Loan from DASHI to DAS Without Court Approval

#### A.     The Proposed Intercompany Loan Is Not Authorized by the DASHI Intercompany Transfer Order or the Cash Management Order

21.     The DASHI Intercompany Transfer Order confirmed "DASHI's authority to complete the Intercompany Transaction" (¶ 2) (emphasis added) and defined the term "Intercompany Transaction" to mean "an intercompany transfer to DAS LLC in an amount expected to be up to $650 million."  (Preamble, p. 1) (emphasis added).

22.     The DASHI Intercompany Tranfer Order did not purport to authorize or confirm DASHI's authority to make any additional intercompany transfers, nor did it create a blanket exemption from the requirement of court approval for all intercompany extensions of credit regardless of magnitude or surrounding circumstances, or absolve DASHI from its obligation to act as a responsible fiduciary in deciding whether to make intercompany loans.

23.     Furthermore, even if the DASHI Intercompany Transfer Order were construed to confirm the Debtors' authority to engage in transactions beyond the specific Intercompany Transaction described in the preamble, the order specifically provides that it "shall not be used adversely as precedent by the Debtors against Wilmington Trust Company, as indenture trustee . . . in any subsequent litigation in these chapter 11 cases." (¶ 6).  Accordingly, WTC clearly has the right to insist that DASHI obtain approval to repatriate the funds and make the proposed $750 million loan, particularly at a time when DAS appears to lack the ability to repay that loan and continues to incur substantial losses.

24.     The Debtors' reliance on the Cash Management Order is equally misplaced.  The Cash Management Order authorized the Debtors "to continue to engage in the Intercompany Transactions in the ordinary course of the Debtors' businesses," (¶ 10) (emphasis added), but did not purport to hold that all intercompany loans – regardless of the size of the loan or the borrower's ability to repay – were in the ordinary course of the Debtors' businesses and hence exempt from the requirement of Court approval.

25.     In fact, prior to entering the Cash Management Order, the Court specifically admonished the Debtors that they needed to consider their affiliated borrower's ability to repay the loan before making an intercompany loan.  See October 27, 2007 Transcript, p. 23 ("I don't think there should be a sort of an automatic yes by a particular debtors' management . . . to a borrowing request. . . . There needs to be some analysis of the ability to repay that.").

26.     The intercompany loan proposed by the Motion – a $750 million loan to a financially troubled, and most likely insolvent, borrower – is hardly in the ordinary course of DASHI's business.  At a minimum, this proposed transaction is $100 million larger than the

transaction approved under the DASHI Intercompany Transfer Order on October 25, 2007, and

the Debtor conceded that that transaction was larger than usual.[1]  Accordingly, because the

proposed repatriation and loan is not authorized by the Cash Management Order or the DASHI

Intercompany Transfer Order, the Motion must be denied.

### B.    The Proposed Intercompany Loan Is Not In the Ordinary Course of DASHI's Business

27.    Section 363(c)(1) provides that "the trustee may enter into transactions . . .

in the ordinary course of business, without notice or a hearing, and may use property of the estate

in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).

28.    While the Bankruptcy Code does not define the phrase "ordinary course of

business," courts have generally understood it to "embrace the reasonable expectations of

interested parties of the nature of transactions that the debtor would likely enter in the course of

its normal, daily business."  In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997) (citation omitted).

29.    In applying this somewhat amorphous standard, courts apply a two-part

test: "(1) the 'creditor's expectation test' also known as the 'vertical test,' and (2) the 'industry-

wide test' also called the 'horizontal test.'"  Id.  If a transaction fails either of these tests, it is not

"in the ordinary course of business" and requires court approval after notice and a hearing.  11

U.S.C. § 363(b); see In re Crystal Apparel, Inc., 220 B.R. 816, 831 (Bankr. S.D.N.Y. 1998) ("[I]f

either dimension of the test is not satisfied, the disputed transaction is not in the ordinary course

of business.").

30.    In this instance, the proposed repatriation and intercompany loan

described by the Motion, which has not been put before the Court for approval, fails both tests.

---

[1] "We move cash balances around our entire system on a regular basis; this one is a larger one."
October 25, 2007 Hearing Transcript ("10/25/07 Tr."), p. 67, l. 22-24 (emphasis supplied).

31.     Quite simply, the creditors and equity holders of DASHI would not expect DASHI to make a $750 million loan to an insolvent affiliate "in the course of its normal, daily business." In re Lavigne, 114 F.3d at 384. That is obviously why the statutory committees in these cases asked the Debtor to bring the DASHI Intercompany Transfer Order on for a hearing on October 25, 2007 (see 10/25/07 Tr. At 69, l. 5-8), and that is why WTC raises this objection now. Thus, the Debtors cannot meet the "creditor's expectation test."

32.     Likewise, there is no evidence to suggest that other, similarly-situated companies would be likely to make a similarly-sized loan to a financially-troubled affiliate, like DAS. Accordingly, the Debtors proposal also fails the "industry-wide test."

33.     The Motion must therefore be denied since the proposed $750 million intercompany loan from DASHI to DAS is not "in the ordinary course of business" within the meaning of 11 U.S.C. § 363(c)(1), and the Debtors' have expressly and intentionally declined to request Court approval under 11 U.S.C. § 363(b) to repatriate the funds and make the loan.

## II.     DASHI Cannot Articulate a Good Business Reason to Support DAS's Continued Subsidy of its Customers

34.     Even if the Court considers the Debtors' Motion as an implicit request for relief under section 363(b) of the Bankruptcy Code – something that the Debtors expressly deny is sought by the Motion -- the Motion must still be denied because there is simply no "good business reason" – and certainly none set forth in the Motion – to justify permitting DASHI to repatriate and lend to DAS an additional $750 million – in addition to the $650 million approved barely six months ago – in order to enable DAS to continue to subsidize its customers by enabling it to continue to sell them parts for less than it costs DAS to produce them. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).

35.    DAS has posted consistent operating losses since the Petition Date, and continues to hemorrhage cash notwithstanding the Debtors' substantial efforts to restructure its business, reduce its labor costs, and generally improve its profitability.[2]

36.    Under the circumstances, there is no reason to expect that DAS will be in a position at any point in the foreseeable future to generate sufficient cash flow, after repayment of its fair share of the Debtors' borrowings under their DIP facility, to enable it to repay the $650 million it has already borrowed from DASHI, let alone an additional $750 million loan from DASHI.  In the absence of a prompt end to DAS's subsidization of its customers through the sale of parts below DAS's cost to produce them, there is clearly no "good business reason" for DASHI to extend any additional credit to DAS and the Motion must therefore be denied.  In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).[3]

37.    WTC expressly reserves the right to amend or supplement this objection upon the conclusion of discovery and prior to the hearing on the Motion.

---

[2] According to the Debtor's financial projections annexed to its amended Disclosure Statement as Appendix C, the Debtors expected to lose $1.266 billion in 2008, assuming their plan of reorganization became effective.  For the first quarter of 2008, alone, the Debtors posted a net loss of $589 million.

[3] Indeed, in light of DAS's continuing losses throughout its chapter 11 case, it might be more appropriate for the Debtors to convert DAS's case to Chapter 7 based on its "substantial or continuing loss to or diminuition of the estate and the absence of a reasonable likelihood of rehabilitation."  11 U.S.C. § 1112(b)(4).

WHEREFORE, WTC respectfully requests that the Court enter an Order denying

the Motion and granting such other and further relief as this Court deems just and proper.


Dated: New York, New York
       May 22, 2008

                              KIRKPATRICK & LOCKHART
                              PRESTON GATES ELLIS LLP

                              By:    /s/ Edward M. Fox
                                 Edward M. Fox (EF 1619)
                                 A Member of the Firm
                              Attorneys for Wilmington Trust Company,
                              as Indenture Trustee
                              599 Lexington Avenue
                              New York, NY 10022
                              (212) 536-3900