1            UNITED STATES BANKRUPTCY COURT
             SOUTHERN DISTRICT OF NEW YORK
2

3    ----------------------------------------X
     IN RE:                                  : Case No. 05-44481
4                                            :
       DELPHI CORPORATION,                   : One Bowling Green
5                                            : New York, New York
                                    Debtor.  : May 29, 2008
6    ----------------------------------------X
     DELPHI CORPORATION,                     :
7                                            :
                            Plaintiff,       :
8                                            : Adv. No. 08-01038
                 v.                          :
9                                            :
     UNITED STATES OF AMERICA,               :
10                                           :
                            Defendant.       :
11   ----------------------------------------X
     DELPHI CORPORATION,                     :
12                                           :
                            Plaintiff,       :
13                                           : Adv. No. 08-01232
                 v.                          :
14                                           :
     APPALOOSA MANAGEMENT, et al,            :
15                                           :
                            Defendants.      :
16   ----------------------------------------X
     DELPHI CORPORATION,                     :
17                                           :
                            Plaintiff,       :
18                                           : Adv. No. 08-01233
                 v.                          :
19                                           :
     UBS SECURITIES, LLC,                    :
20                                           :
                            Defendant.       :
21   ----------------------------------------X

22     TRANSCRIPT OF HEARING ON MOTION FOR AUTHORIZATION TO ENTER
     INTO LEASE FOR PROPERTY LOCATED IN WARREN, OHIO
23       MOTION FOR ORDER SUPPLEMENTING SECOND DIP EXTENSION ORDER
            MOTION FOR OMITTED CONTRACTS ASSUMPTION PROCEDURES
24   MOTION FOR ADEQUATE PROTECTION, MOTION FOR PRETRIAL CONFERENCE
             EMERGENCY MOTION FOR AN ORDER TO SHORTEN TIME
25        MOTION TO AUTHORIZE EXPEDITED DISCOVERY AND TRIAL
                MOTION TO REMOVE CHAPTER 7 TRUSTEE
                MOTION FOR THE REMOVAL OF ALL FEES
              BEFORE THE HONORABLE ROBERT D. DRAIN
                UNITED STATES BANKRUPTCY JUDGE

2

APPEARANCES:

| | |
|---|---|
| For the Debtor: | JACK BUTLER, ESQ.<br>KAYALYN MARAFIOTI, ESQ.<br>THOMAS MATZ, ESQ.<br>Skadden Arps |
| For the U.S.: | MATTHEW SCHWARTZ, ESQ.<br>U.S. Department of Justice<br>86 Chambers Street<br>New York, New York 10007 |
| For the Debtor: | EDWARD A. FRIEDMAN, ESQ.<br>Friedman, Kaplan, Seiler, & Adelman<br>1633 Broadway<br>New York, New York 10019 |
| For the Debtor: | JACOB BUCHDAHL, ESQ.<br>Susman Godfrey<br>654 Madison Avenue<br>New York, New York 10065 |
| For ADAH and<br>Appaloosa: | CHRISTOPHER SHORE, ESQ.<br>White & Case LLP<br>1155 Avenue of the Americas<br>New York, New York 10036 |
| For Goldman Sachs: | ROBINSON LACY<br>Seldan & Cromwell |
| For UBS Securities: | JEFFREY ROSENTHAL, ESQ.<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006 |
| For Merrill Lynch: | MARC FALCONE, ESQ.<br>Paul, Weiss, Rifkind, Wharton &<br>Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 |
| For EDS: | MICHAEL D. WARNER, ESQ.<br>Warner Stevens LLP<br>301 Commerce Street<br>Suite 1700<br>Fort Worth, TX 76102 |

(Appearances continue on next page.)

3

APPEARANCES:

(Continued)

For the Equity Committee:    BONNIE STEINGART, ESQ.
                             Fried Frank Harris Shriver &
                             Jacobson
                             One New York Plaza
                             New York, NY 10004




Court Transcriber:           MARY GRECO
                             TypeWrite Word Processing Service
                             356 Eltingville Boulevard
                             Staten Island, New York 10312

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

4

1          THE COURT:  Okay.  Delphi Corporation.

2          MR. BUTLER:  Your Honor, good morning, Jack

3    Butler, Kayalyn Marafioti, Tom Matz from Skadden Arps here on

4    behalf of Delphi Corporation for its 31st time at this hearing.

5          Your Honor, we have filed an agenda and propose to

6    take the matters in the order on the agenda.

7          THE COURT:  Okay.  That's fine.

8          MR. BUTLER:  Your Honor, the first matter on the

9    agenda, matter number one, is the omnibus 8.2(b) cure objection

10   filed with docket number 13459.

11         Your Honor, this was a motion filed in connection

12   with a proceeding in connection with the debtor's plan of

13   reorganization of the confirmation order and pursuant to those

14   procedures, parties whose contracts are to be assumed under the

15   plan and who wish to assert a cure amount as a condition to

16   assumption are required to file and serve a cure proposal

17   within 45 days after entry of the confirmation order.  That was

18   on or about March 10, 2008.  Of all of the notices that were

19   sent out there were in fact 31 cure proposals under Section

20   8.2(b) that were filed.  Of the 31, one was withdrawn for the

21   debtor's objection deadline and four have been subsequently

22   withdrawn leaving us to deal with 26 of those cure proposals

23   that are still essentially live.  Of those 26 cure proposals

24   there are five cure proposals that the debtors objected to

25   because they did not comport with the debtor's books and

5

1    records, but there was no response filed to the objection.

2         The debtors therefore request the Court enter an

3    order modifying the cure proposal for the amount that's

4    consistent with the debtor's books and records and

5    provisionally allowing those cure proposals at the modified

6    amount.  Those particular proposals are listed in Exhibit 1 of

7    the proposed order of today's hearing.

8         There are three cure proposals that asserted an

9    amount which was consistent with the debtor's books and records

10   and as to those cure proposals we ask that the Court enter an

11   order provisionally allowing those cure claims.  Those

12   proposals are listed in Exhibit 2 of the proposed order.

13        There are 18 parties who filed responses to the

14   objection so that there's now a contested matter between the

15   debtors and those cure parties as to what the appropriate cure

16   should be for the assumption of those contracts.  A proposed

17   order would adjourn those proceedings until further notice by

18   the debtors at a subsequent hearing.  We would give notice and

19   set it for a subsequent point in time.  But we're continuing to

20   work with the parties to resolve the disputed cure proposals.

21        THE COURT:  Okay.  Does anyone want to be heard on

22   this matter?  All right.  Given that at this stage the debtors

23   are seeking uncontested relief --

24        MR. BUTLER:  That is correct, Your Honor.

25        THE COURT:  -- I'll grant the omnibus objections

6

1    as sought today.

2            MR. BUTLER:  Thank you, Your Honor.

3            Your Honor, matter number two on today's agenda is

4    the omitted contracts assumption procedures motion filed

5    originally at docket number 13029.  This deals with the

6    steering half shaft business.  Your Honor may recall that we

7    sent out in late March and early April approximately 150

8    supplemental notices relating to assumption, assignment and

9    cure with respect to approximately, as I said, 150 executory

10   contracts have been inadvertently omitted from the list of

11   contracts to be assumed and assigned.

12           Prior to today's hearing we had resolved all but

13   four of those and I reported to you at earlier hearings about

14   that.  There were four that were remaining and the four

15   remaining has to do with SKF USA, Inc. at docket number 13344,

16   Federal Screw Works at docket number 13356, S&Z Tool & Die

17   Company at docket number 13358, and Keystone Powdered Metal

18   Company at docket number 13364.

19           Over the last several days and mostly yesterday we

20   had submitted stipulations and agreed orders that resolved all

21   of those remaining matters and that resolves, fully resolves

22   the 150 that notices have been sent out under the procedures,

23   the omitted contracts assumption procedures order.  I wanted

24   the Court to be aware that in consultation with the purchaser

25   as we move towards closing tentatively scheduled at the end of

7

1   this quarter with this, the purchaser and the debtors have

2   identified seven additional contracts, have actually talked

3   with the contract vendees, largely utilities, and there are

4   seven supplemental notices of assumption assignment that are

5   being sent out pursuant to the omitted contract assumption

6   procedures order.  We expect those are all going to be resolved

7   on consent seeing as we're negotiating on a tri-party basis

8   regarding that.  To the extent that there is an objection

9   filed, Your Honor, we would bring those on at the June 24th

10  omnibus hearing in advance of the proposed closing date.

11              THE COURT:  Okay.  I think the four stipulations

12  have been entered yesterday, but if not, they'll be entered

13  shortly.

14              MR. BUTLER:  Thank you, Your Honor.  So we're down

15  I think to the last seven, but if we do have a procedure it

16  allows us to continue to address those as we prepare for

17  closing.

18              THE COURT:  Right.

19              MR. BUTLER:  Your Honor, the next matter on the

20  agenda is matter number three.  This is the Warren, Ohio lease

21  motion, docket number 13583.  This is actually one of the few

22  lease agreements that we needed to bring to Court during the

23  course of these cases because Your Honor had earlier entered a

24  procedures order at docket number 1777 earlier in the case that

25  allowed us to deal with this essentially on a notice basis with

8

1    our statutory committees and some other parties.  This

2    particular matter comes before the Court because the

3    obligations under the lease agreement exceed $5 million.  So it

4    busted the cap, if you will.  It is uncontested.  It deals with

5    renewing leases involving a property located in Warren, Ohio

6    involving about 94,000 square feet.  70,000 square feet are

7    used for Delphi Packard's North American product testing

8    laboratory.  24,000 square feet are used for the advanced

9    product process development and there's an adjacent parcel of

10   28 acres.

11          The terms of the proposed arrangements including

12   options and termination rights are all outlined in the motion.

13   As I indicated, this is uncontested, Your Honor.  I should also

14   point out if Your Honor is prepared to grant the relief here,

15   it will also resolve a prior lease cure claim that had been

16   filed at docket number 12956.

17          THE COURT:  Okay.  Does anyone have anything to

18   say on this motion?  All right.  I'll grant it.  It's clearly

19   within the debtor's business judgment.  It needs the facility

20   and the terms have been renegotiated on a basis that's

21   favorable to the prior lease and based on the status of the

22   motion.  Also fair based on the current market.

23          MR. BUTLER:  Thank you, Your Honor.

24          Your Honor, the next matter on the agenda, matter

25   number four, is the supplemental second DIP extension motion at

9

1    docket number 13584.  This is both uncontested and a good news

2    motion.  It's brought to Your Honor as a result of

3    opportunities afforded by strong market support to the debtors.

4    It allowed us to make improvements to the structure of the

5    second DIP extension.  When we were here actually getting that

6    extension approved, Your Honor appropriately asked us how we

7    thought the syndication might go.  Ultimately I can now report

8    to you it not only went as expected but in fact was over

9    subscribed and that allowed us to make a number of positive

10   changes to the transaction for the benefit of the debtor's

11   estates.

12             First, the debtors increased the amount of

13   availability under the tranche revolving credit facility to

14   $1.1 billion and decreased the amount of tranche term loan to

15   $500 million.  That would save several hundred thousand dollars

16   interest expense per month.  We believe that those matters were

17   consistent with the terms of the agreement.  We didn't bring

18   that particular matter to Your Honor.  However, with respect to

19   tranche C, we were actually able to increase the tranche term

20   loan by approximately $254 million.  I think that there was a

21   reasonable inquiry as to whether that was within the authority

22   Your Honor had granted us.  So when that was closed, and it is

23   -- this transaction has been closed and all the documents are

24   available to make that $254 million available to us subject to

25   Your Honor's approval to that.  So that was a condition of the

10

1   agreement.  So if not, there's additional amendments we have to

2   go out and execute with respect to this.

3              There is exhibits that we do have in connection

4   with this.  There are 15 exhibits.  The first is Mr. Sheehan's

5   declaration in support of authorizing an increase in the

6   financing and commitments.  The credit documents are Exhibits 2

7   and 3.  The court documents are Exhibits 4 through 12, the GM

8   settlement agreements, Exhibits 13 and 14 and the affidavits of

9   service of this are Exhibit 15.  I would, Your Honor, move

10  admission of those exhibits into evidence in this record.

11             THE COURT:  Okay.  Is there any objection to that?

12  All right.  I'll admit them.

13             MR. BUTLER:  Your Honor, so in the -- as I've

14  indicated it is now Mr. Sheehan's testimony in the record that

15  indicates it.  This upsizing of this tranche term loan which is

16  the authority we're seeking today will supply additional

17  liquidity to the debtors and does not negatively affect the

18  price and terms or other benefits of the financing for which

19  the debtor sought approval from the Court in April 2008.  As a

20  result, Your Honor, we would very much appreciate if Your Honor

21  would grant the relief requested here.

22             THE COURT:  Okay.  Does anyone have anything to

23  say on this motion?  No one wishes to cross examine

24  Mr. Sheehan?  All right.  I've reviewed the motion and as

25  Mr. Butler just said the motion seeks approval of improved

11

1   terms on the financing to the extent that the original relief

2   didn't necessarily give the debtors the ability to obtain these

3   improvements without requiring an order, or alternatively

4   because [inaudible] was worthwhile.  In either event, I

5   conclude that the motion should be granted as an appropriate

6   exercise of the debtor's business judgment and meeting Section

7   364.

8            MR. BUTLER:  Thank you, Your Honor.

9            Your Honor, the next matter on the agenda is

10  matter number five.  This is the PBGC adequate protection

11  motion filed at docket number 13585.  There were two objections

12  filed by Wilmington Trust Company as indentured trustee, one at

13  docket number 13623 and the other at docket number 13652.  As

14  described in our reply filed yesterday, Wilmington Trust has

15  agreed to withdraw those objections without prejudice.  We have

16  a form of order that's agreeable to Wilmington Trust and to the

17  creditors committee.  I'll address that in just a moment.  But

18  pursuant to this particular motion, Your Honor, we seek entry

19  of an order that authorizes Dashy [Ph.], one of the debtors in

20  this case, to grant adequate protection to PBGC in connection

21  with certain anticipated inter-company transfers in an amount

22  not to exceed $750 million.

23            Your Honor, I would point out that except as to

24  the amount, the adequate protection the debtors propose to

25  provide to PBGC is identical to the adequate protection the

12

1    debtors agree to provide PBGC in connection with the 2007 Dashy

2    inter-company transfer order that Your Honor previously

3    approved.  That was entered on October 25, 2007 at docket

4    number 10725.

5              I also want to indicate, in connection with this,

6    that this motion does not alter the relief granted in that

7    prior order and is made in respect of unrelated inter-company

8    transfers.  Your Honor may recall from the prior order that

9    these -- that granting this adequate protection is conditional.

10   When I say conditional, eventually if it ever becomes

11   necessary, there is --the rights of the parties in this case

12   are reserved with respect to whether or not the PBGC has the

13   liens they original asserted they had pursuant to which the use

14   of these funds is raising the issue of adequate protection.  So

15   we think the parties' rights and the estate's rights here are

16   appropriately reserved.

17             In reviewing this, and in a motion, the debtors

18   have taken the position and the debtors believe that our right

19   to operate our cash management system under the prior cash

20   management system in these cases allows us to continue to make

21   these repatriations.  They've been made consistently over the

22   course of the case.  We believe it's in the ordinary course of

23   operating our business.  Both the creditor's committee and

24   Wilmington Trust have expressed a reservation as to whether

25   that is the case and want to reserve whatever rights they have,

13

1   all rights that they have in connection with that to the extent

2   that they don't agree that this adequate protection ought to

3   continue for transfers beyond July 1st.  We continue to review

4   these matters with the committee and with Wilmington Trust.

5   The proposed order that's being entered here makes it clear

6   that this order if Your Honor is prepared to grant it is in

7   fact the final order.  The creditor's committee and Wilmington

8   Trust would have the right to bring the matter on for

9   supplemental hearing at the next omnibus hearing if the file an

10  objection by June 17th.  That would only relate as to the

11  adequate protection matters for transfers subsequent to July

12  1st, and they would be reserving all of their rights as a

13  potential objection to argue that the motion should be denied

14  on any basis that they, going forward respectively, on any

15  basis that they might choose including contesting our

16  underlying predicate that the debtors have the ability to

17  repatriate funds without further order of the Court.  We would

18  deal with that at that time.  Obviously, the debtors reserve

19  all their rights as well.

20          THE COURT:  This doesn't change the burden of

21  proof in the event that such an objection were made?

22          MR. BUTLER:  Correct, Your Honor.

23          THE COURT:  Okay.

24          MR. BUTLER:  The other piece of it is that

25  assuming -- I'm actually, as one needs to be in this case, I'm

14

 1   the eternal optimist that we're able to work through these

 2   issues to the extent there are any because this is one of the

 3   three elements.  This, the General Motors support agreement and

 4   relating to payments that have been made in anticipation of the

 5   GSA [inaudible] becoming effective and the DIP liquidity are

 6   all integrated components of the company's liquidity program to

 7   operate the businesses over the course of these cases until the

 8   debtors emerge from Chapter 11.  I'm confident that we'll be

 9   able to resolve any issues here.  If we can't, the order will

10   control here, but I think the more important actual comment is

11   that assuming this were, if Your Honor is prepared to grant it,

12   is not further contested as it relates to the next month or so,

13   there is still a monitoring mechanism built into the order, in

14   Paragraph 3 of the order, that provides the creditors committee

15   the right to continue to monitor any subsequent cash flows that

16   we might submit.  If there are material changes in those cash

17   flows vis a vis this proposed program, the creditors committee

18   would have an independent right to object.  In that case, we'd

19   come back for a supplemental hearing at that point in the case.

20   The same reservation of rights I described, the same burden of

21   proof, same issues as to future repatriation, adequate

22   protection relating to repatriation, and any claims the

23   committee wants to make in terms of going forward would be

24   fully preserved as I've described.  So it provides a monitoring

25   mechanism here.  I'm hopeful that with that monitoring

15

1    mechanism that's been negotiated with the committee and with

2    the progress the company continues to make in these cases that

3    this in fact will end up being the final order and we'll be

4    able to resolve this on these terms.

5                    THE COURT:  Okay.

6                    MR. BUTLER:  I should say one other thing I did

7    promise to say on behalf of the PBGC.  They just want to make

8    clear today that to the extent that either the creditors

9    committee or Wilmington Trust subsequently files an objection

10   that would bring on a supplemental hearing with respect to this

11   motion, the PBGC itself reserves the right to file pleadings in

12   support of the relief requested and respond to any such

13   objection.  I need to say that on the record here today.

14                   THE COURT:  Okay.  All right.  Does anyone have

15   anything to say on this motion as resolved?  Okay.  Obviously,

16   the motion has -- well, the resolution highlights the two

17   components of the motion.  As far as the I think the protection

18   element of it for the PBGC's asserted lien, the motion and

19   order, as did the prior version of this back in 2007, makes it

20   clear that the amount of protection is only to the extent that

21   PBGC does have a valid enforceable lien, and as with the last

22   iteration of this given the terms of the stipulation that's an

23   appropriate resolution of the matter.  I also conclude that the

24   resolution negotiated with the creditors committee Wilmington

25   Trust is also appropriate and I too hope that in light of the

16

1    monitoring mechanism and the sharing of information related to

2    it that the reservation of rights will be just that and it

3    won't bloom into litigation.

4              MR. BUTLER:  Thank you, Your Honor.

5              Your Honor, we now move to several adversary

6    proceedings that we filed in this case.  The first of these

7    proceedings our firm is handling which is a complaint to

8    recover property of the estate, the FICA complaint involving

9    the United States Government filed at docket number 12269.

10   This is adversary proceeding number 08-01038.  This was filed

11   on January 18, 2008 and it was seeking the return of

12   approximately $26 million in overpayments of payments made

13   under the Federal Insurance Contribution Act taxes.  These

14   taxes relate to payments made by the plaintiffs, that is the

15   debtors, to certain union members upon ratification of

16   collective bargaining agreements in 1999 and 2003.  This

17   conference had been adjourned from time to time pending a

18   filing of an answer by the Internal Revenue Service.  They

19   filed an answer to the complaint on May 13, 2008.  They also

20   filed a motion to withdraw the reference of the adversary

21   proceeding at the Bankruptcy Court.  That matter has been

22   assigned to District Court Judge the Honorable Kevin Castel.

23   By agreement, our response to that motion which we will oppose

24   is due on June 9, 2008, and there will be a hearing set

25   subsequent, if one's required, there will be a hearing set

17

1    subsequent for oral argument on that motion set subsequently

2    after the filing of that response.

3                In the interim, Your Honor, there has been a

4    scheduling order that's been worked out that was submitted to

5    chambers yesterday.  We made a point of being guided by Judge

6    Castel's form of pretrial order in terms of the elements of it

7    so that hopefully it would be acceptable to Your Honor and also

8    acceptable to Judge Castel in the event that the reference is

9    ultimately withdrawn.  That would set up a scheduling order.

10   I'm not going to go through all of the details of it.

11   Essentially, I think the key issue is there is an agreement

12   between the parties that would propose that the trial of the

13   proceeding be bifurcated with the initial trial addressing

14   whether there's been an overpayment of tax by the plaintiffs.

15   That is trying the issue of liability first and then once the

16   liability is determined, trying the issue with respect to the

17   amount of damages if the parties were unable to agree after the

18   liability issue is resolved.  The parties would propose, if

19   they're not able to agree upon the liability phase of the

20   trial, they would propose procedures to the Court for a

21   disposition of a dispute over the amount of damages.

22               The proposed schedule begins with initial

23   disclosures on July 3, 2008 and it ends with a proposed trial

24   date that would be set at a pretrial conference, a further

25   pretrial conference that the parties would ask be scheduled in

18

1    February of 2009.  Again, there are, as Your Honor is aware

2    presumably from the proposed scheduling order, there are a lot

3    of dates between here and there that are in the order.  I'm not

4    going to read them on the record here unless Your Honor wants

5    to review them.

6            THE COURT:  Okay.  Paragraph 11 has a blank for

7    the next case management conference.  When do you anticipate

8    Judge Castel ruling on the -- well, at least having it being

9    heard by him on the motion to --

10            MR. BUTLER:  I don't have [unintelligible] our

11    answer, our response is filed as to what the chambers there

12    will actually do in terms of the next step.

13            THE COURT:  You worked out a discovery schedule.

14    I don't really see much of a need for a case management

15    conference given that you are working along the schedule, so --

16            MR. BUTLER:  I think we're really speaking in

17    terms of the scheduling conference in February, Your Honor --

18            THE COURT:  All right.

19            MR. BUTLER:  -- as the next date.

20            THE COURT:  All right.  That's fine.  Then you

21    don't have omnibus dates out that far?

22            MR. BUTLER:  Not quite yet.

23            THE COURT:  Why don't you say that it will be --

24            MR. SCHWARTZ:  Your Honor, I'm sorry, Matthew

25    Schwartz for the United States.  I'm not sure that we had

19

1    actually discussed the February '09 date.  The scheduling order

2    that we proposed contemplates the parties reporting back to

3    this Court, the District Court, 30 days after the close of fact

4    discovery whether or not dispositive motions will be made.  It

5    seems to me that if motions are going to be made then probably

6    we'll need a status conference at that point.  If motions are

7    not to be made, then that's a sensible time to have a status

8    conference.  So that will be 30 days after the close of fact

9    discovery which would put us I believe into March.

10                   THE COURT:  Let me just check.

11                   MR. BUTLER:  Fact discovery is to be completed by

12   December 19, 2008 and I think that's why we had suggested the

13   February date so there's a date held at this point.

14                   THE COURT:  Yes, that's the expert discovery

15   that's March.  The fact will be in January.  Why don't I just

16   say that the next case management conference will be held on

17   the claims on the estate in February and that will be

18   scheduled.  Certainly, if you don't need it, I have no problem

19   with you all contacting chambers and saying you don't need it

20   until a later date.  It's really just a holding date.  If the

21   reference is withdrawn for some reason I'm sure the District

22   Court will have some views as to whether it wants to hear from

23   you before then.

24                   MR. BUTLER:  Thank you, Your Honor.

25                   THE COURT:  Okay.

20

1          MR. BUTLER:  Your Honor, matters seven, eight, and

2    nine, the emergency motion to shorten time, the motion

3    authorized expedited discovery and trial and the motion

4    authorized expedited discovery and trial to shorten time with

5    respect thereto are related to adversary proceedings that have

6    been filed by special counsel.  These are adversary proceedings

7    number 08-01232 and 08-1233.  These matters are being handled

8    by the Friedman Kaplan firm and by the Susman Godfrey firm.

9    We're dealing with those proceedings.  So Your Honor, I will

10   turn the podium over to them at this time.

11         THE COURT:  Okay.  Let me just say if there are

12   people in the audience who are here for the other matters such

13   as counsel for the U.S. who may already have left, I don't see

14   him again, you're free to be excused.

15         MR. BUTLER:  Thank you, Your Honor.

16         MR. FRIEDMAN:  Good morning, Your Honor.  May it

17   please the Court, I am Edward Friedman with the firm of

18   Friedman, Kaplan, Seiler and Adelman, special litigation

19   counsel for plaintiff Delphi Corporation in adversary

20   proceeding 08-1232.

21         I would like to address Delphi's motion for

22   expedited discovery and trial which is filed at docket number 8

23   in this adversary proceeding.  There were corrected copies of

24   the motion clean and black lined filed at docket numbers 11 and

25   12.

21

1          We agree, Your Honor, with counsel for the

2     defendants in this adversary proceeding that granting the

3     motion for expedited discovery and trial would impose a

4     tremendous burden on all counsel and parties but we submit that

5     burden needs to be balanced against the irreparable harm that

6     would be suffered by Delphi and the stakeholders in this

7     proceeding if the motion to expedite is not granted.  There had

8     been over two years of tremendous effort in these Chapter 11

9     cases to achieve a confirmed plan of reorganization.  Delphi

10    respectfully submits that if the issues raised in the adversary

11    proceeding cannot be determined on an expedited basis then the

12    claim is gone.  Simply put, Delphi filed this adversary

13    proceeding because it is convinced that the plan confirmed by

14    this Court cannot be consummated without a decree of specific

15    performance and any modified plan would be materially adverse

16    to all of Delphi's stakeholders.

17          Delphi did not commence this action on April 4 at

18    the latest as defendants say Delphi should have because Delphi

19    was engaged in full efforts to achieve a consummation of this

20    plan by April 4.  From the time of the 1142 hearing before Your

21    Honor in early March of 2008, Delphi, with counsel for the plan

22    investors, was engaged in confidential settlement negotiations

23    in an effort to resolve all issues that needed to be resolved

24    so that the closing could occur and the plan could be

25    consummated.  Therefore, Delphi strenuously disagrees with the

22

1   notion that Delphi should have been prepared to file this

2   litigation on April 4.  While the substance of those settlement

3   discussions is confidential, we believe the fact of those

4   discussions is not confidential especially in light of the

5   defendant's contention in opposition to the motion that Delphi

6   should have been filing this action on April 4.

7         If the proceedings in this case, including

8   motions, discovery, and trial, are not expedited, then the

9   remedy of specific performance is effectively denied without

10  Delphi's obtaining an adjudication as to whether it is legally

11  entitled to that remedy as it believes it is.  Delphi is now in

12  the unfortunate situation of needing to bring this litigation

13  because the plan investors refuse to fund their equity

14  commitments on April 4, 2008.  On that date Delphi, General

15  Motors, the exit financing lenders, all other parties necessary

16  for the consummation of the plan were ready, willing, and able

17  to close.  Delphi had fulfilled all conditions applicable to it

18  as prerequisites to the obligations of the plan investors to

19  provide the funding that they had committed to provide.

20        Defendants now say that Delphi's claim for

21  specific performance should be dismissed because today Delphi

22  is not in full compliance with all the conditions.

23        In the first place, Your Honor, we would

24  respectfully submit that that argument, as with the other

25  arguments made by the defendants in their papers, relates to

23

1   whether Delphi's claims, and in particular claims for specific

2   performance, is legally sufficient.  We have no quarrel with

3   defendant's rights to challenge the legal sufficiency and

4   factual merit of those claims.

5          With respect to their particular contention that

6   the motion to expedite should be denied because Delphi is not

7   in full compliance today with all the applicable conditions,

8   the fact is that to the extent Delphi is not today in full

9   compliance, the reason is because defendant's wrongful conduct

10  and breaches of their contractual obligations put Delphi in the

11  position it is in today.  As a practical matter, defendant's

12  contention that Delphi today should be in full compliance

13  raises issues that we submit are just unrealistic in terms of

14  the position being taken by defendants.  Delphi, for example,

15  had raised funds in connection with a rights offer.  Delphi

16  made the decision which we believe was warranted and necessary

17  in accordance with its fiduciary duties to return those funds

18  to the people who had paid them in the rights offering to

19  return those funds when the plan investors' conduct made the

20  closing impossible.

21         Similarly, Delphi should not be in the position

22  today of paying millions of dollars in commitment fees to exit

23  financing lenders in order to keep the exit financing

24  commitment alive at this day.  The complaint filed by Delphi

25  alleges that Delphi was not only in full compliance with all

24

1    conditions and ready, willing, and able to close on April 4,

2    but also that Delphi will be in full compliance with all

3    conditions and ready, willing, and able to close in connection

4    with a decree of specific performance by this Court if the

5    Court agrees with the claims asserted by Delphi, if the Court

6    agrees that the remedy of specific performance is warranted and

7    that a judgment should be entered.

8            One of the legal issues that will be determined,

9    we submit, in connection with the claim for specific

10   performance is whether the investors can profit from their own

11   wrongdoing which is exactly what we say they are trying to do.

12   Not only did the investors refuse to fund their equity

13   commitments on April 4, and not only did they send what we

14   submit is a totally wrongful termination notice on April 4, but

15   then on April 5 they submitted a second termination notice

16   asserting that because the closing had not occurred on April 4

17   they were entitled to terminate the investment agreement or the

18   EPCA as it is known.

19           The fact of the matter, Your Honor, as alleged in

20   the complaint is that Delphi is in the unfortunate position it

21   is in precisely because of the wrongful conduct by the

22   defendants which should not, we submit, give them a basis for

23   imposing further hardship on Delphi.

24           I would emphasize that Delphi is not trying to

25   foreclose the defendant's rights to move to dismiss the

25

1    complaint or for summary judgment.  In fact, the arguments

2    today in opposition to the motion to expedite probably

3    constitute a substantial portion of the arguments that

4    defendants would make in a motion to dismiss.  Delphi had

5    proposed June 13 as the date for defendants to answer or move

6    with respect to the complaint and Delphi had proposed a ten day

7    period for itself to respond to that motion.  Delphi would be

8    agreeable to accelerating and shortening those time periods to

9    the extent that defendants wish to present to the Court sooner

10   rather than later their contention that the claim for a

11   specific performance and other claims in the complaint are not

12   legally sufficient.

13            In connection with the schedule that Delphi has

14   proposed, although defendants argue that the schedule is

15   unreasonably short and unworkable, the fact of the matter is

16   Delphi has proposed a longer schedule and a longer time for

17   discovery and pretrial proceedings than was the case in other

18   recent litigations also involving multibillion dollar disputes

19   such as the Solutia case in this district and the Clear Channel

20   case in the New York State Court.  In Solutia, the time from

21   the filing of the complaint to trial was two weeks.  In Clear

22   Channel, it was five and a half weeks.  Delphi has proposed a

23   schedule which would entail approximately 11 weeks from the

24   filing of the complaint to trial.  So to the extent that

25   defendants are saying there are more issues and more complexity

26

1    in this case, the time period, although still very expedited,

2    is significantly more than was the time period in those other

3    cases.

4         I would add that in looking at the reality of

5    Delphi's situation in this case, Delphi has proposed a schedule

6    that goes out as far as possible.  The current situation for

7    Delphi and the fundamental reason why this litigation has been

8    filed is that Delphi is now in a position of impossible

9    uncertainty that is creating the potential for terrible harm

10   for all of Delphi stakeholders.  At the same time that Delphi

11   is pursuing this adversary proceeding to obtain a judgment

12   which Delphi believes will enable the consummation of the plan,

13   at the same time Delphi, in fulfillment of its fiduciary duties

14   and in an effort to mitigate damages, is pursuing alternative

15   steps to try to develop a modified plan and Delphi is committed

16   to doing everything that will enable it to fulfill its

17   fiduciary duties to all of its stakeholders.

18        In effect, the defendants are trying to litigate

19   all of the issues that will have to be litigated in the course

20   of this adversary proceeding in connection with a motion to

21   expedite.  The Court over the course of this case will have a

22   full record before it concerning the ability of Delphi to

23   consummate the plan.  We submit as alleged in the complaint

24   Delphi was and will be ready, willing, and able to fulfill all

25   the conditions, as well as the alternatives for Delphi and all

27

1    of the stakeholders.

2              Under the present circumstances, Delphi is trying

3    as hard as it can to develop a modified plan.  Delphi knows

4    that the plan will require re-solicitation.  Delphi knows the

5    plan will be materially adverse to the stakeholders.  The goal

6    is to emerge from Chapter 11 by the end of the third quarter if

7    that's humanly possible either by means of consummation of the

8    plan that has already been confirmed, or if the Court rejects

9    Delphi's claims, then Delphi and the stakeholders will be in

10   the unfortunate position of pursuing a modified plan.

11             There's no doubt that from the perspective of the

12   defendants they would like to see Delphi's ability to pursue a

13   claim for specific performance go away.  Then defendants will

14   be in the position to make whatever arguments they want to make

15   about Delphi's damages.

16             We respectfully submit, Your Honor, that under the

17   circumstances here damages are simply not an adequate remedy

18   for the wrong that occurred.  Not only would damages not be an

19   adequate remedy for Delphi itself, but the conduct of the plan

20   investors has caused serious damage to Delphi's creditors and

21   all of Delphi's stakeholders.  The whole point, we submit, of

22   the remedy of specific performance is to redress a wrong in a

23   way that puts the innocent parties in the position they should

24   have and would have been in if the wrongdoer had complied with

25   its legal obligations.

1        For today, Your Honor, in sum, unless the

2   proceedings in this adversary proceeding are expedited, the

3   remedy of specific performance is effectively denied without

4   Delphi having the ability to litigate the legal sufficiency and

5   factual merits of its claim.  We believe that when the record

6   is developed, the law and the facts will establish that Delphi

7   is entitled to the remedy of specific performance that it

8   seeks.  If the motion to expedite is denied, that remedy is

9   gone, the plan cannot be consummated and there will be

10  irreparable injury to Delphi and all of its stakeholders.

11       For that reason, we submit that good cause has

12  been shown for the motion to expedite and we ask that Your

13  Honor grant the motion.

14       THE COURT:  I don't understand and I want to

15  explore with you the underlying basis for the schedule which

16  will result in a trial commencing on August 1st.  I guess I

17  have two questions related to that which I guess divides into

18  two points.  The first is is Delphi contemplating doing

19  something other than operating normally and pursuing

20  discussions and groundwork for an alternative plan that would

21  cause the remedy of specific performance to go away after mid

22  August?  I don't necessarily see that that's the case.

23       MR. FRIEDMAN:  Delphi believes that if a modified

24  plan is confirmed and consummated, the remedy --

25       THE COURT:  Oh, I understand that, but you're

29

1    talking about doing that as a goal by the end of the third

2    quarter and that's some way after August 1st and would give

3    more time, for example, for the development of specific not

4    only motions to dismiss but specific summary judgment issues,

5    for example.

6                    MR. FRIEDMAN:  Again, Your Honor, we have no

7    problem and we would agree the schedule should build in a time

8    for summary judgment motions.  But the August 1 date for trial

9    --

10                    THE COURT:  It doesn't really -- I mean it doesn't

11   work out.  I mean if you're going to do it, if you're going

12   have a trial on August 1st, I don't see how you could have --

13                    MR. FRIEDMAN:  Well here --

14                    THE COURT:  -- summary judgment motions given that

15   discovery is done at the end of July.

16                    MR. FRIEDMAN:  Here's the problem we're wrestling

17   with as a practical matter, Your Honor.  My understanding from

18   restructuring counsel is that by virtue of waivers previously

19   granted by PBGC and the IRS Delphi has a window of opportunity

20   to emerge from Chapter 11 between June 15 and September 30th

21   without the need to go back to the PBGC and the IRS and obtain

22   new waivers.  Whether it would be possible to obtain those

23   waivers, I don't know.  That is part of the reason why Delphi

24   is doing everything within its power to develop a plan and

25   pursue this litigation so that there could be emergence on

30

1    September 30 at the very very latest.  If there's a judgment of

2    specific performance, one of the very important issues that

3    Delphi has to wrestle with with respect to the timing of that

4    judgment, Your Honor, is that in order for the remedy of

5    specific performance to be effective, as Delphi acknowledges in

6    its complaint, Delphi would reinitiate the rights offering,

7    would redevelop the commitments for the exit financing, and the

8    notion that Delphi should do that even if it were possible in

9    advance of a decree of specific performance is highly dubious I

10   believe.  For example, Delphi would have to go to the --

11              THE COURT:  No, I understand the point.

12              MR. FRIEDMAN:  That's why the August 1 trial date

13   ties to the September 30 emergence date in order for there to

14   be obviously time for trial and a decision.  I'm not the expert

15   in these matters but it's got to be 35, 40 days to complete the

16   rights offering, have the commitments for financing.  So that's

17   the position in which Delphi finds itself.

18              THE COURT:  Is there any other anticipated event

19   besides the PBGC labor issue that impacts this schedule?

20              MR. FRIEDMAN:  The way I would answer that, Your

21   Honor, is that I'm not aware of a specific --

22              THE COURT:  Again, I'm not talking about anything

23   other than an event that would moot the specific performance

24   remedy.

25              MR. FRIEDMAN:  The way I would answer that, Your

31

1   Honor, is that there's not a specific event that I'm aware of

2   that would moot the remedy but Delphi is in this position now

3   of tremendous uncertainty which is putting tremendous pressure

4   on Delphi to develop a modified plan and seek to re-solicit,

5   seek to confirm it, and consummate it.  If the PBGC deadline

6   hypothetically were a deadline other than September 30, if it

7   were October 15 for example, then I would be talking about

8   October 15 with respect to that deadline.  There's not another

9   particular event other than the ongoing cost, harm, and

10  uncertainty from the continuation of the Chapter 11 proceeding

11  at a time when Delphi believes the plan confirmed by Your Honor

12  should be consummated.

13              THE COURT:  Okay.  All right.  As I read the

14  motion, it also, unlike at least my understanding of Solutia

15  and some of the other cases you cited, seeks an expedited

16  schedule on all aspects of the complaints including equitable

17  subordination and the fraud claim against Appaloosa.  My

18  question related to that is is there a way to bifurcate that

19  issue since specific performance is what seems to be driving

20  this matter?  Particularly since it's hard for me to see

21  raising money after you win on specific performance, assuming

22  you do, from lenders and people coming to a rights offering

23  when you've also potentially obtained a judgment saying that

24  your lead investors defrauded you.  That to me is somewhat mind

25  boggling.

32

1          MR. FRIEDMAN:   I believe, Your Honor, that there

2     could be the kind of bifurcation Your Honor is suggesting.   The

3     issues that we believe require acceleration and expedited

4     proceedings are the issues of breach of contract and the

5     appropriate remedy for that breach, i.e. did the defendants

6     breach their contractual obligations when they failed to fund

7     their equity commitment on April 4 and is the appropriate

8     remedy for that breach a judgment of specific performance

9     ordering the defendants to comply with their funding

10    obligation?   So yes, I would agree with Your Honor that those

11    issues could be bifurcated and that claims for damages and

12    other claims do not require the expedited treatment we have

13    proposed and requested with respect to the claim for breach of

14    contract and the remedy of specific performance.

15         THE COURT:   Okay.   Okay.   Does anyone other than

16    the defendants have anything to say on this motion?

17         MR. BUCHDAHL:   Good morning, Your Honor.   My name

18    is Jacob Buchdahl, Susman Godfrey and we are also litigation

19    counsel for Delphi in the other adversary proceeding that was

20    filed against UBS.   I'm going to rely on Mr. Friedman's

21    argument this morning.   We're seeking the exact same relief.

22         THE COURT:   Including his answers to my questions

23    about what could be --

24         MR. BUCHDAHL:   As Your Honor is aware, we do not

25    allege a fraud claim against UBS.

33

1          THE COURT:  Right.  There is an equitable

2    subordination --

3          MR. BUCHDAHL:  There is an equitable subordination

4    claim which we agree could be bifurcated and would not have to

5    be addressed on an expedited basis.  The only other thing that

6    I'll point out, Your Honor, is that defendants seem to advance

7    two fundamentally contradictory arguments in their papers.  The

8    first is that all of this should have been concluded by April

9    4th, and the second that all of this is far too complex to be

10   determined on any kind of quick schedule.  We believe that

11   defendants are more than in a position to answer the narrow

12   contractings in this case on a schedule that would allow us to

13   complete this litigation before it's too late for Delphi.

14   Other than that, I'll rely on comments by Mr. Friedman.

15          THE COURT:  Okay.

16          MR. SHORE:  Good morning, Your Honor.  Chris Shore

17   from White and Case for ADAH and AM LP.  I was standing before

18   and let me just address this on the record.  We did have a

19   little dispute about the motion to shorten time to respond and

20   I got the message on the call to the Court the other day but we

21   have an opportunity to address that today.

22          While I think it's probably somewhat moot at this

23   point, I did want to start my comments with just noting however

24   this moves, it's got to move in our perspective in a certain

25   way.  There are rules, procedural rules.  Procedural rules are

34

1   very clear in your case management order.  Either you file ten

2   days before an omnibus or you get everybody on the phone and

3   you call the Court and you try to figure out what day works for

4   people.

5                THE COURT:  You guys did call the Court though.

6                MR. SHORE:  No.  I called alone, Your Honor.  I

7   did not have everybody else on the phone.  I do not speak for

8   any other defendant, and I wanted to be heard on that on that

9   point which is that none of the other defendants were ever

10  called with respect to this.  I can't answer for them.

11               THE COURT:  Okay.  For the record, I gave you the

12  same answer I will give them which is that rather than have a

13  fairly half baked discussion on the phone it seemed to be a

14  better play to have the arguments, as you all have done very

15  effectively in your papers.  Unlike some orders to show cause

16  that are fairly routine, this one I think did require some

17  elucidation.  I'm treating this hearing essentially as I would

18  treat a contested hearing about an order to show cause.

19               MR. SHORE:  Very good, Your Honor.  Let me also

20  just note for the record --

21               THE COURT:  The request for an order to show cause

22  that is.

23               MR. SHORE:  With respect to all the people here, I

24  recognize this is a high stakes case.  There are high

25  temperatures right now but there are also rules and just for

35

1   the record, I think people do need to follow them.  Filing a

2   motion on a Friday before a holiday suggesting that there be an

3   amenability at least to consider an adjournment and then

4   showing up on Tuesday morning saying no adjournment for a day,

5   that's not an appropriate way to proceed.  If we're going to

6   proceed that way, it's going to be very painful for everybody

7   and ultimately is going to work out very badly for the Court

8   who's going to be dragged into disputes like this.

9           Ultimately, the procedure that was adopted just

10  wasted a week from our perspective.  Let me just say leading

11  into the motion to expedite how this should have worked.  They

12  should have filed a motion to expedite when they filed the

13  complaint.  It was not a secret that they wanted to expedite.

14  They could have filed it.  It could have been on for today and

15  we could have had an opportunity to respond and ultimately to

16  provide Your Honor with potentially one set of papers and not

17  six sets of papers.  We all could have called the Court and had

18  a discussion with how much time we needed.  We could have had

19  the discussion, for example, of how long it's going to take to

20  move to dismiss these complaints.

21          Quite frankly, I appreciate the willingness on

22  their part to handle a motion to dismiss on an expedited basis

23  and I would propose that we move to dismiss on June 13th, they

24  respond on June 19th, and we file a reply on the 23rd.  I think

25  we should be discussing whether or not we need depositions in

36

1    connection with the motion to expedite.  I don't think so but I

2    do have questions which haven't been answered and some of the

3    questions Your Honor is asking today, quite frankly we're

4    getting new facts with respect to the expiration of the PVDC

5    waiver.  We should resolve intervention issues.  We should

6    resolve the consolidation issues.  We should have a Rule 26(f)

7    conference so that we can talk about how this is going to get

8    down, and we should come back on the Rule 16(b) conference

9    which is set on 6/24 to set the schedule.  All that does is

10   that it delays that -- if Your Honor says at that point no,

11   we're going ahead, we're going on the two months schedule,

12   we've delayed it for three weeks, but at least Your Honor is

13   doing it on the record with a full understanding of the issues

14   that are going to be raised in connection with the motion to

15   dismiss, the scope of discovery, and everything else; who's

16   going to be a party to the suit, whether the suits are going to

17   be consolidated.  All that is before you and it allows you to

18   make a judgment as to whether or not an August 1 or at that

19   point August 23 deadline is in fact realistic.  But starting in

20   the papers that are filed on a Friday and then papers that are

21   brought in on the morning of the hearing and trying to decide

22   and exercise your discretion with respect to the evidence in

23   front of you as to either irreparable harm or good cause isn't

24   a way to run it.

25              THE COURT:  Well, there's no evidence in front me.

37

1          MR. SHORE:  No, there is no evidence in front of

2     you and quite frankly, that's a motion in and of -- or a reason

3     in and of itself to deny the motion to expedite until they get

4     evidence in front of you because you're abusing your discretion

5     if you're allowing this to proceed on a non-evidentiary basis.

6     There are real reasons they need to explain and questions we'd

7     like to ask with respect to what's the magic about April 1?  I

8     hear more every time --

9          THE COURT:  You mean August 1.

10          MR. SHORE:  August 1.  So let me turn to the

11     substance a bit and why it matters that we follow that

12     procedure to kind of come back on the 24th and address all of

13     these issues.

14          First, and it was touched upon in Mr. Friedman's

15     opening and more explained by him that the theory here is that

16     they're going to get an order of specific performance sometime

17     in August.  Then they're going to go start their rights

18     offering, they're going to go get their debt ratings again,

19     they're going to raise public debt with the bank and try to put

20     the whole plan back together again.  It's fundamentally flawed.

21     They can't do that.  They can't do that because it violates New

22     York law which is going to apply here.  We could debate whether

23     or not they have to allege in the complaint that they're

24     currently ready, willing, and able to close.  I think they do.

25     I don't think the complaint says that.  Quite frankly, I think

38

1    it's not true.  They're not ready, willing, and able to close

2    right now.  They've terminated their bank commitments, they

3    lost their debt rating, they have new GM agreements which were

4    just on today.  Your Honor said they can't enter in an

5    agreement with GM outside the ordinary course and satisfy the

6    condition.  They had those agreements today.  They have not

7    been performing under the EPCA.  As we put in the papers, they

8    haven't paid our fees.  They can't stop performing the EPCA and

9    then seek specific performance --

10              THE COURT:  Frankly, I think you better go on to

11   some other points besides your fees.

12              MR. SHORE:  Fair enough, Your Honor.  The point

13   being here is that when we get to trial or we get to summary

14   judgment, if they are not at that moment ready, willing, and

15   able to close the law says they can't have specific performance

16   because the alternate theory where they're going to take an

17   order of this Court that says you have specific performance,

18   the right to specific performance and shop that around, all

19   they have is an advisory opinion at that point.  We get back to

20   the same problems which were addressed in the context of the

21   1142 motion.  All that means is, and the reason we were saying

22   that this had to be done while all the commitments were in

23   place, and that would have raised a whole different set of

24   issues, they can't stop it all and then seek the remedy.

25              The second reason we should wait until the 16th is

39

1    I don't think you're getting necessarily a realistic view from

2    Delphi as to the issues that are going to be involved.  Leaving

3    out fraud, 1142, equitable subordination, veil piercing is

4    another one that they're going to have to deal with in order to

5    get specific performance if they can't get to the funds unless

6    they pierce the veil from the investment entities.  All of that

7    needs to be dealt with at some point.  But if you say we're

8    just going to deal with the contract claim, that is do they get

9    specific performance?

10                We can talk about a separate issue which is if we

11   want to try the issue of whether the remedy of specific

12   performance is available under the facts and circumstances of

13   the case, that's a different issue.  But with respect to

14   whether they get a decree of specific performance, the issue

15   there is we're past the closing date, outside date, the

16   terrible definition, and the termination has occurred.  It's

17   not an invalid termination.  The termination has been sent.

18   All parties are relieved of any obligation they're under except

19   for liability for any willful breach.

20                So the issue is going to be can Delphi establish

21   that the plan investors, each of the plan investors committed a

22   willful breach.  If they didn't, then there's no liability on

23   anybody's part and I don't think Delphi is contesting that.

24   Whether or not we breached is determined whether or not they

25   satisfied all the conditions.  Some of those conditions are

40

1    motion to dismiss issues from our perspective.  Some of them

2    are summary judgment issues.  Did they hit the equity

3    capitalization?  They in our mind blew it by five million

4    shares clearly.  That's a summary judgment issue.  There's not

5    going to be a lot of testimony.

6              Other issues is whether the GM agreement affect

7    the business, whether there was a map in the operations of the

8    company.  Those are extremely factually intensive.  They're

9    going to require a lot of work from experts.  The issues with

10   respect to drafting that Your Honor has already raised with

11   respect to a more evidentiary record on what some of this meant

12   are going to require taking depositions of drafts people,

13   taking depositions of the business people.  The concept that

14   we're going to be doing that in essentially a two week period

15   between the date the documents have to be produced and the date

16   the expert reports have to be up is completely unworkable.

17   There's no explanation given as to how that's ever going to

18   work if you're going to take 60 depositions in two week period.

19   I don't even have a sense right now, because we haven't had our

20   26(f) conference, as to how many depositions Delphi is going to

21   want.

22             So I think just from the perspective of perceiving

23   today, I just don't think the Court -- it has the record before

24   it to expedite.  I think we get the motion to dismiss up, we

25   deal with consolidation, we deal with interventions and all of

41

1   that and get back here to a point where you do have a sense of

2   how much discovery there is, how many depositions, how many

3   witnesses, how many documents.  We're all going to be in a

4   better position.  Motions to dismiss up and you can make it

5   either -- we can either hear it on that date or you can at

6   least review them to address the issue of how much of this is

7   going to go forward.  It seems like a far more prudent way to

8   go.

9          Leaving aside the issue of cause, I think the

10  explanation that other cases have done it, we all have reasons

11  in cases like that for consenting and many times a defendant

12  will say you know what?  I wanted to try the fraud case in

13  three weeks.  We're not there yet.  I don't think any of the

14  plan investors is there yet.  Nobody is in a position to

15  understand just how much there is to get done to consent to an

16  expedited schedule.  So we're not consenting to an expedited

17  schedule now.  We're not consenting to the motion to shorten

18  time either.  We think this matter should be kicked for a

19  couple of weeks to allow the record to be much more fully

20  developed and come back and allow Your Honor to make a reasoned

21  decision as to whether or not we can go forward.  I think --

22          THE COURT:  You said something I didn't -- maybe I

23  didn't hear you correctly.  You said that you can litigate

24  where the remedy of specific performance exists?

25          MR. SHORE:  Yes.

42

1          THE COURT:  Okay.  But how does that differ from –

2 –

3          MR. SHORE:  Because that is one of those limited

4 issues.  If you have established breach, now you're opening up

5 to all the conditions and all the different facets of Delphi's

6 business, corporate finance, employment, all those things.

7          THE COURT:  Right.

8          MR. SHORE:  If what you're talking about is

9 whether the remedy of specific performance exists, you have a

10 limited set of depositions.  Who are the people involved at the

11 company, who are the people involved for the plan investors

12 with respect to drafting the provisions on waiver?

13          THE COURT:  Okay.

14          MR. SHORE:  You've got questions of delay and

15 they're seeking it are ones they can probably address on

16 papers.  Whether they're ready, willing, and able to perform at

17 the time the decree of specific performance is a motion to

18 dismiss issue.  You've got issues with respect to veil piercing

19 which I think are addressed as a matter of law because Delphi

20 is a signatory to that agreement.  But to the extent that there

21 had to be some discovery, we're talking about doing that in a

22 two month period, coming back on August 1 and Delphi will know

23 give it up on specific performance.  Different issue than is

24 there a breach which I just, practically speaking, I mean I

25 have my chart here, I've gone through it.  I don't see how I go

43

1  about trying to sequence this in a manner where you're not

2  having expert depositions before the documents are in to make

3  it work in any practical fashion.

4          THE COURT:  Does your chart take into account that

5  there was obviously an enormous amount of thought given to

6  whether there was a breach or not that led not only to the

7  dress rehearsal in March but also the termination letter and a

8  lot of letters in between?

9          MR. SHORE:  I've provided, from my perspective, I

10  provided no time for our time to draft papers.  We'll get you

11  papers.  We can turn out papers.  It takes a little bit of

12  time.  I think it's better if people are given a few days to

13  deliver what's written.  But what I'm talking about is trying

14  to schedule depositions of parties during July.

15          THE COURT:  Okay.

16          MR. SHORE:  But third party witnesses --

17          THE COURT:  No, I just wanted to ask you that

18  question.

19          MR. SHORE:  Yes, it does.  Certainly, we are up to

20  speed on the legal issues.  My telling you that we'll file our

21  motion to dismiss in ten days which is -- or 11 days which is

22  earlier than they wanted us to and a week earlier than our

23  motion to dismiss is actually due, we'll do it.  But to say

24  we're just going to put our heads down and people are going to

25  just have to wait with these depositions and not talk to

44

1    parties, nobody gets an opportunity to interpose

2    interrogatories, that stuff doesn't work.  I've done trials

3    like that where depositions close before the documents are in

4    and it leads to ten hour cross examinations on the record

5    because you've never seen the witness before.  That doesn't

6    help you.

7              THE COURT:  Okay.  I've read the other responses.

8    I think I know the differences between them, particularly the

9    Goldman Sachs one.  People are free to state their case though

10   briefly if they want.

11             MR. LACY:  Your Honor, I'll be brief.  Robinson

12   Lacy, Seldan and Cromwell for Goldman Sachs.  Goldman Sachs of

13   course did not carefully consider whether the conditions were

14   satisfied.

15             THE COURT:  You are willing to go along with --

16             MR. LACY:  We were prepared to go ahead.  We

17   didn't go ahead because we know that some body else, we're not

18   sure who, but somebody else failed to perform and that relieved

19   Goldman Sachs of its obligations.  So we're starting from

20   scratch.  We were not a participant of any of the discussions

21   that happened before the closing date.  We never signed the

22   common interest agreement.  We were locked out of the room.  We

23   are starting from scratch.

24             Your Honor, Part 7 rules basically incorporate the

25   Federal Rules of Civil Procedure and those reflect 70 years of

45

1  deliberation and study and experiment and revision concerning

2  how to conduct a fair trial.  They are sometimes thought to be

3  cumbersome in small cases or simple cases.  They are designed

4  for big cases and this is a big complicated case and this is

5  the sort of case for which all of those procedures were

6  designed.  Those rules have been revised at length in the last

7  10 or 15 years in particular to provide for preliminary

8  discovery and to provide for a Rule 26 conference, to provide

9  for a Rule 16 conference.  The plaintiff's proposal is

10  scrapping all of those procedures.

11        It is not fair to the litigants to scrap the

12  procedure set out in the Part 7 rules unless there is cause.

13  You have to proceed on the basis that in this motion there is

14  no cause.  You cannot find cause to shorten time.

15        In the first place, Delphi's papers allege nothing

16  that is going to happen in August or September or October.

17  There is no deadline, there is no event that makes it necessary

18  to get this thing done.  We heard today for the first time that

19  there is in existence a PBGC waiver that ends on September

20  30th.  We know nothing about PBGC's ruling as to extend that.

21  They have obviously extended repeatedly as the Court knows and

22  it's highly unlikely that the PBGC is going to sink this thing

23  if there is a plan in the offering.

24        The debtor's own conduct makes clear that there is

25  no urgency about this.  Mr. Friedman can tell you that they

46

1   were busy doing other things but he was not busy doing anything

2   else.  Mr. Friedman's firm, Susman Godfrey, were all free to

3   continue the litigation that was begun in March under the

4   directions the Court gave concerning the issues that needed to

5   be litigated on an evidentiary record and they dropped the ball

6   and went away.  There was nothing that prevented Delphi from

7   continuing that litigation then or any other time before now.

8   There is no excuse for a ten week delay and then proposing a

9   schedule that requires us to finish the fact discovery in less

10  time than it took them to begin the proceeding.

11          Finally, even if there is some urgency now, it is

12  not legally cognizable as cause for shortening time because

13  whatever urgency there is now is the result of the plaintiff's

14  own conduct.  They cannot create a crisis by waiting for ten

15  weeks and then ask to shorten cause on that basis.  So if

16  there's any need for urgency, they created it and it is not

17  fair to put that on the defendants.

18          Your Honor has been at this for a while and you

19  are aware that litigants sometimes make procedural motions to

20  obtain tactical advantages.  I don't see how the Court can

21  conclude anything except that this motion was made to obtain a

22  tactical advantage.  Delphi itself obviously does not believe

23  this case is as urgent as [unintelligible].  We've waited nine

24  weeks.  That's from the time that you denied their motion for

25  summary judgment.  They obviously knew that there was a problem

47

1  before that.  The proposed schedule that they've offered is

2  clearly abusive.  It's manifestly undoable.  They cannot expect

3  a fair finding of fact they cannot expect a fair application of

4  the law on the schedule they are proposing.  This is completely

5  independent of the burden which they acknowledge they would

6  inflict on the defendants as part of it.  So we have to take it

7  as a given that they are asking for something that is going to

8  depart severely from the well thought out standards of the

9  Federal Rules that is going to do it in a way which is going to

10  impair a fair fact finding and fair ventilation of the issues

11  and which is going to impose tremendous expense.  They have no

12  real basis for saying there is urgency, and any urgency that

13  they do say exists is of their own making.

14            Then finally, Your Honor, if you are not startled

15  by the way in which this motion was brought on, then I have to

16  say I'm worried because to wait after the complaint was filed

17  on the 19th for another few days to serve this on the Friday

18  before a holiday weekend telling us that there was going to be

19  a hearing on the 29th which we'd be ordered to file papers on

20  the 28th -- Your Honor, the order that you were asked to sign

21  requires us to deliver papers to Delphi in Troy, Michigan

22  yesterday at 4.  There is clearly an effort here to game the

23  rules to avoid being required -- to escape from the usual

24  procedural requirements of this Court.  It is abuse.  It should

25  be recognized as such, and the motion should be denied.

48

1          THE COURT:  Okay.

2          MR. ROSENTHAL:  Good morning, Your Honor.  Jeff

3   Rosenthal, Cleary Gottlieb.  I represent UBS Securities in the

4   companion case that was filed that Mr. Buchdahl had referenced.

5          I think Mr. Lacy and Mr. Shore have covered most

6   of the comments that I wanted to make, but there's really just

7   two very short points that I wanted to add to what Mr. Lacy

8   just said one of which is Mr. Friedman argued that at the

9   appropriate time they want the ability to come to the Court and

10  show that specific performance is an available remedy, that

11  they don't have to be ready, willing, and able if they can pin

12  the fault on the defendants, and that the EPCA still allows for

13  that remedy despite the history of the EPCA.  But they're in

14  the moment today.  They have to show good cause today.  They

15  have to show the Court today that this is an available remedy

16  because without that remedy, that's the only thing that's

17  driving the request for expedited treatment.  Today, and in the

18  papers, they've shown nothing.  They haven't cited a single

19  case that says that being ready, willing, and able in the past

20  allows them to get specific performance in the future.  We've

21  cited a lot of cases [unintelligible] cited a lot to the

22  contrary.  They don't cite anything to show that the EPCA

23  permits specific performance despite the disclosure statement

24  and despite the statements previously made to the Court.  So on

25  the record today they can't carry the burden on this motion.

49

1            The only other thing that I want to mention, Your

2   Honor, is that with respect to the other cases that are cited,

3   Solutia and the like, even with bifurcation as Mr. Shore said,

4   we still have the big breach of contract issue that can't be

5   bifurcated.  The other cases like Solutia, they were narrow

6   single issue cases is there are material adverse change, for

7   example, on almost all of them.  Here we have --

8            THE COURT:  Well, they delved into what the

9   contract meant as well.

10           MR. ROSENTHAL:  But it's still, but it's an

11  interpretation issue, Your Honor.  Here we have a lot of

12  conditions precedent that are an issue for discovery.  There,

13  and in those other cases you've built up bottoms up schedules.

14           THE COURT:  I would only take that so far given

15  the letters that I've read.

16           MR. ROSENTHAL:  Well, this isn't that case, Your

17  Honor.

18           THE COURT:  But I understand that there's a

19  difference between this case and the cases cited by the

20  debtors.

21           MR. ROSENTHAL:  And obviously also the timing of

22  where we are relative to the transaction.  That's all I have to

23  say, Your Honor.

24           THE COURT:  Of course that issue also may affect

25  specific performance.  Granted the debtors have not cited cases

50

1    on this point, but it seems to me that if a contract party's

2    breach is preventing the debtors from being ready, willing, and

3    able they don't necessarily have to do more than show that they

4    could be able to perform if that impediment, that breach were

5    resolved.  But I agree there's no evidence in front of me today

6    showing that the debtor's lenders would be able to advance --

7                    MR. ROSENTHAL:  Thank you, Your Honor.

8                    THE COURT:  -- in the future.  Which raises a

9    question that I have for Mr. Friedman, but I'll hear from the

10   other parties first before I ask him.

11                   MR. FALCONE:  Good morning, Your Honor.  Marc

12   Falcone from Paul Weiss for defendant Merrill Lynch.  I just

13   thought I'd make a couple of very simple points telling this

14   Court some things that have already been said.  The rules

15   provide for certain boxes to be checked before a schedule is

16   set.  They can be checked quickly and I think all of the

17   defendants are willing to work with the plaintiff to check

18   those boxes quickly, but they should be checked.  If we're

19   going to try to expedite discovery in this day of electronic

20   documents, we should have discussions about whether search

21   terms can be agreed to.  If we're going to try to set a short

22   schedule for depositions, we should at least know roughly how

23   many depositions we're talking about.  We should know how many

24   third parties are going to be involved in discovery.  We should

25   try to define the date range for documents that are going to be

51

1    searched.  We should try to address very basic issues that have

2    dramatic impact on whether certain tasks can be done within a

3    certain time.

4              The cases, Your Honor, that talk about expedited

5    discovery generally show that parties that come to Court in a

6    contested proceeding asking for expedited discovery are

7    generally asking for things that are quite specific.  In the

8    Notaro case the parties were asking to depose Ed Koch.  That's

9    all that case was about.  In other cases parties were asking

10   for specific depositions, a 30(b)(6) deposition here, a witness

11   there, for specific reasons, not sweeping orders setting a

12   schedule blindly without understanding the needs of the case

13   for every issue in the case.

14             The schedule, as Your Honor has observed, could

15   not have been proposed with any serious contemplation that

16   there would be summary judgment motions.  Pretrial submissions

17   are due on the same day the fact discovery closes.  We're

18   between there and when there'll be time to make summary

19   judgment motions much less have them duly considered.

20             We submit, Your Honor, that before setting a

21   schedule in this case certain boxes must be checked.  We can do

22   that quickly.  We can create a schedule that's both efficient

23   and fair.

24             THE COURT:  Okay.

25             MR. FALCONE:  Thank you, Your Honor.

52

1          THE COURT:  So the question I just wanted to ask

2     you, Mr. Friedman, is the debtors have not sought any

3     injunctive relief here and injunctive relief has its parameters

4     and focuses the parties on a specific set of facts that may

5     come up in the future.  But today they don't seem to be

6     available which is probably why you haven't sought it.  But

7     aren't many if not all of the defendants' issues resolved if

8     you have a somewhat more orderly process but reserved your

9     rights to seek injunctive relief if, you know, the facts

10    warrant it later this summer?

11          MR. FRIEDMAN:  Your Honor, I don't think what

12    we're talking about here and what we're seeking here is in any

13    way analogous to injunctive relief.

14          THE COURT:  I know, I know.  But I'm saying that

15    if you have indications, for example, that you're not able to

16    negotiate an extension of the PBGC or that you have a window

17    where you can get financing that resolves these people's

18    issues, you know, to me that would make your case where you

19    have very discrete discovery and perhaps a basis for injunctive

20    relief.  I mean I'm just wondering -- I know you're not seeking

21    injunctive relief --

22          MR. FRIEDMAN:  Right.

23          THE COURT:  -- today and I also know that despite

24    some of the case law the standard for expediting discovery is

25    an injunction standard.  But why not reserve your rights on

53

1    getting injunctive relief when the facts, if they do, warrant

2    it, and otherwise going ahead?  I mean yes, I can see there may

3    be some tactical basis in which you're seeking here including

4    keeping the pressure on these folks that they may have to end

5    up paying $2 billion, $5 million, $30 million.  But I think you

6    need to show more than a tactical advantage in order to

7    expedite discovery.

8                MR. FRIEDMAN:  Your Honor, the fundamental reason

9    for seeking expedited discovery and expedited trial is that the

10   ongoing Chapter 11 causes harm and the litigation schedule

11   that's being proposed by the defendants, Mr. Shore said let's

12   have a conference on June 24 --

13                THE COURT:  I understand.  There's something in

14   between those two proposals I'm sure.  But I mean this whole --

15   frankly, except if one focuses on litigation leverage, this

16   whole specific performance issue for me is a little bit

17   bizarre, frankly.  Why you'd want these people at this point is

18   somewhat beyond me.

19                MR. FRIEDMAN:  Well, the answer to that --

20                THE COURT:  I've never seen more efforts to get

21   out of a deal ever.  So you know -- yes, tell me your answer to

22   that.

23                MR. FRIEDMAN:  Let me try to address, Your Honor,

24   some of the -- because I think I understand what's being raised

25   and the decision to bring this litigation by Delphi was a

54

1    decision based on the unfortunate reality that the plan

2    confirmed by this Court if it could be consummated is vastly

3    superior for Delphi's stakeholders as compared to any other

4    possible alternative.  If there were another alternative then

5    the remedy of specific performance would be rejected.  The

6    reason for the request for expedited proceedings is so that

7    Delphi will have the ability to develop a record to show that

8    specific performance is warranted under all the circumstances.

9    The concern we have today is that defendants are making all of

10   their arguments in opposition to the remedy of specific

11   performance based on law, based on facts in connection with the

12   effort to set an expedited schedule.  The result is --

13           THE COURT:  I understand that but I also have to

14   weigh in determining cause that there is a reason to go for

15   specific performance on this type of schedule.  I mean so I

16   don't blame them for raising those points.

17           MR. FRIEDMAN:  You know, and I understand --

18           THE COURT:  But I'm not ruling on the merits on

19   these points but it's a significant factor in determining what

20   cause exists here.

21           MR. FRIEDMAN:  Well, I understand the passion with

22   which some of the defendants' lawyers addressed the normal

23   rules and procedures and we all as lawyers respect and are

24   governed by those rules but those rules also provide for

25   expedited treatment in appropriate cases.  The argument that

55

1   Delphi is making today is that when we look at the

2   extraordinary effort that went into developing the plan and

3   when we look at how everything had to come together in exactly

4   the right way in order to achieve confirmation, we're now in a

5   situation where unless there can be a judgment of specific

6   performance on an expedited basis, that plan cannot be

7   consummated and the years of work are just gone.  The

8   fundamental problem that we have with the schedule proposed by

9   defendants is that if we put ourselves on a track where we're

10  addressing this legal issue and figuring out what are the

11  search terms for electronic discovery and then coming back in

12  July to set a schedule, then it doesn't matter at that point

13  even if the Court agrees with Delphi, it will be too late

14  because there's just a limit to how long Delphi can languish,

15  endure the burdens of Chapter 11.  The costs are tremendous,

16  the uncertainty is tremendous.  On April 4 Delphi was at a

17  point where --

18              THE COURT:  I understand.  I appreciate the

19  evidentiary burden of showing that you're being lashed and

20  confused, or lashed and harmed, but this is a company that just

21  was able to raise more money than expected to.  You know, I

22  don't see it as a company that is, you know, like Camille

23  coughing on the doors of death.  I just don't see that.

24  Frankly, you know, to be rushing with open arms for the fourth

25  time to try to bring these people in is a little bit

56

1    disconcerting.  You know, it's --

2             MR. FRIEDMAN:  Well --

3             THE COURT:  So I think you're going to have to

4    give me more evidence than you've given me on this.  I

5    understand the PBGC point and I can take judicial notice of the

6    terms of their waiver which I approved and their statements

7    made to the Court about their reservation of rights, and the

8    fact that the most recent statement very clearly put me on

9    notice as well as everyone else that their position at the end

10   of the summer may be quite different than it was while the EPCA

11   is pending.

12            But the issue I guess I'm facing is I'm not by any

13   means precluding consideration on a proper record which may be

14   appropriately expedited of specific performance as a remedy.

15   But it seems to me unless the debtors see themselves doing

16   something or things over the next few months that will moot

17   that remedy, it seems to me it's probably better suited with

18   forward development where you can look into everything that

19   you've alleged in the complaint which is not pretty.  It's

20   quite ugly.  It may not be true but that's why we have

21   discovery.  Particularly given that it seems to me ultimately

22   what both parties would want here is a monetary solution as

23   opposed to a solution where people who you're accusing,

24   obviously with some evidentiary support or it wouldn't be in

25   the complaint, of fraud and perhaps securities law violations

57

1    picking your port.  I mean, you know, it's like a country

2    western song, how many times are you going to cheat on me?  All

3    right?  Now, that's why you have a trial and that's why you

4    have a lengthy discovery as opposed to rushing through it.

5    Unless I'm convinced that that remedy truly is mooted, it seems

6    to me it's fair to both sides to have a longer discovery

7    period.

8              MR. FRIEDMAN:  Well, in thinking about what

9    actions would moot the remedy, Delphi, because it has a

10   fiduciary duty to do so, is pursuing efforts to develop and

11   modify the plan.

12             THE COURT:  I understand that, but those are

13   efforts to develop; right?

14             MR. FRIEDMAN:  Yes, but --

15             THE COURT:  Now that -- listen, you've already

16   told me with some credibility that I can't accept the fact that

17   April 4th has come and gone as a basis for relieving the

18   investors of their obligation since you contend they were the

19   reason it came and went.  You've similarly told me I can't

20   relieve them of their obligations because as you allege as a

21   result of their breach you terminated the financing commitments

22   and the rights offering and sent the money back that people

23   were willing to put up as part of a rights offering.  So it

24   seems to me that it's just one more thing you're going to tell

25   me that your negotiations with other parties on an alternative

58

1    plan wouldn't relieve these people of their breach either.

2                I mean unless it's an actual closing, then I

3    understand it.  I understand that.  But it seems to me you can

4    weigh whether to close or not on an alternative plan by what's

5    coming out of the discovery and by how the trial is progressing

6    including summary judgment motions on whether specific

7    performance based on discovery exists, dealing with motions to

8    dismiss before then.  I mean, you know, people evaluate these

9    things as they go along.  Anyway, that's really where I'm

10   coming out on this.

11               MR. FRIEDMAN:  I certainly understand, Your Honor.

12   The one thing I would say is that as Delphi pursues its efforts

13   and develops a plan and embarks on a process of resolicitation

14   the choice that Delphi will face on or about September 30 is do

15   you consummate a modified plan --

16               THE COURT:  I understand that.

17               MR. FRIEDMAN:  -- or do you roll the dice --

18               THE COURT:  But that's why I raised the injunction

19   for.  If the choice becomes acute following discovery, I don't

20   see why you don't have a remedy in the injunction at that

21   point.  I mean I -- I don't know.  So --

22               MR. FRIEDMAN:  May I just address, Your Honor, a

23   couple of practical considerations?

24               THE COURT:  Yes.

25               MR. FRIEDMAN:  You know, one is I think everybody

59

1    -- I think there's general agreement or at least not strenuous

2    opposition to the idea that defendants would file a motion to

3    dismiss if that's what they're doing on June 13th.

4                  THE COURT:   I thought I was signaling this before.

5    I'm going to be clear.   It seems to me that what should happen

6    here is the defendants should meet no later than Tuesday next

7    week and have their conference with you.   I think the committee

8    should participate in that conference so that we don't have a

9    second go around if I grant the committee's motion to

10   intervene, and that you should talk about an expedited

11   discovery schedule and an expedited schedule on filing motions

12   to dismiss and summary judgment but that it should be focused,

13   if you can focus it, on at least getting key discovery issues

14   complete on the specific performance issue and the fact

15   discovery in July.   As far as the trial is concerned, you know,

16   I think your schedule is too ambitious.   I don't frankly see

17   this as 60 witnesses type of case, but you all have to talk

18   that through and I'll hold a conference on it.   I'm happy to

19   carry this motion to be heard after you have that conference.

20                  Again, I don't know how many witnesses you want to

21   depose, for example.   I don't think I can really deal with

22   discovery issues until I do that.   I think the other points,

23   the e-discovery protocol, who the parties are, I think this can

24   be dealt with pretty simply.   If people are being

25   obstructionist or alternatively if people are pushing too hard

60

 1    for expedition, then I'll deal with that.  But I trust, as

 2    Mr. Falcone said and as you said, that that won't be the case,

 3    and that what you all will be talking about is not a schedule

 4    that moots the relief or that puts undue pressure on the

 5    parties but deals with a practical situation which is

 6    developing this factual record in a way that would enable me to

 7    make a decision if there's not a resolution of the matter.

 8    Frankly, I'm working off of the timetable that I was focusing

 9    on in March which I believe would have enabled me to make the

10    decision on an injunction basis at least around April 4th.  So

11    you may not be complete in discovery then but I think you could

12    take the main actors by then.

13          As far as third party discovery is concerned, it

14    seems to me if the debtor had the commitments, it had the

15    commitments.  If the people were ready to fund, you know, if

16    they were ready to fund I don't see why you need to do more

17    than that unless there's something fishy in the commitments.

18    The documents pretty much are going to speak for themselves.

19          So I think the focuses are going to be on terms

20    that the parties think may be ambiguous and the agreements mean

21    based upon the parties course of dealing in conduct.  The

22    issues that were all -- you were here I think, but we all had a

23    dress rehearsal for this in March and people knew pretty well

24    then what discovery would need to be taken.

25          MR. FRIEDMAN:  I would think, Your Honor, that to

61

1    be efficient the expedited discovery needs to include the issue

2    of whether or not the plan investors breached their contractual

3    obligation and whether or not Delphi complied with the

4    conditions applicable to.

5                    THE COURT:  Right.  That's what I'm talking about.

6                    MR. FRIEDMAN:  Then the idea, Your Honor, is that

7    we would have a meeting on Tuesday of next week and --

8                    THE COURT:  Well, or Monday or tomorrow.

9                    MR. FRIEDMAN:  Try to --

10                   THE COURT:  Or this afternoon since you're all

11   here.  Then if you don't have agreement you could come back

12   June 4th or June 9th which is a Monday.

13                   MR. FRIEDMAN:  If it's convenient for Your Honor's

14   schedule, may we have June 4 and --

15                   THE COURT:  I'll give you that date --

16                   MR. FRIEDMAN:  If we need it.

17                   THE COURT:  -- if you need it.  I'm hopeful though

18   that at a minimum you would have narrowed your points down

19   considerably.  The committee's motion to intervene has not been

20   scheduled yet; right?

21                   MR. WARNER:  It has not, Your Honor.

22                   THE COURT:  Okay.  Well, it would seem to me that

23   the issue there is primarily how active the committee is going

24   to be in the litigation and that's what you all should discuss

25   at the conference.

62

1          MR. FRIEDMAN:  Your Honor, if --

2          THE COURT:  I guess with the equity committee the

3    same thing.  My guess is that both committees while reserving

4    their rights will probably be willing to let the debtors carry

5    the [inaudible] all the discovery and the like.  Is that fair

6    to say?

7          MR. WARNER:  It's very fair to say.  We don't

8    intend to duplicate or supplant or replace.  We intend to

9    assist and monitor and be involved as wholly appropriate.

10         THE COURT:

11         MR. FRIEDMAN:  Your Honor, we're actually hopeful

12   that we'll be able to reach a resolution without the need for a

13   formal ruling or a formal intervention by the committees.

14         THE COURT:  All right.

15         MS. STEINGART:  That's what we were hoping for as

16   well.  Certainly, while I can -- I'm not Mr. Joseph who leads

17   our counsel on this matter.  I'm sure that he would anticipate

18   being cooperative and not creating any issues with respect to

19   additional or, you know, excessive discovery.

20         THE COURT:  Okay.

21         MR. WARNER:  Your Honor, I don't want anything

22   that counsel just said to imply that we're agreeing not to go

23   forward with the motion.  Counsel --

24         THE COURT:  No, he just said he hopes that maybe

25   there could be an agreed order dealing with the motion.

63

1          MR. WARNER:  I'm hoping to hear that.

2          THE COURT:  Okay.

3          MR. WARNER:  But --

4          MS. STEINGART:  As always.

5          MR. WARNER:  As far as setting, we'll deal with

6   that after we have this conference.

7          THE COURT:  Okay.  All right.  Are there any

8   questions?  No?  Okay.  You don't have to wait till Tuesday.

9          MR. FRIEDMAN:  No, I'm available this afternoon.

10  Thank you, Your Honor.

11          THE COURT:  So to be clear, I'm denying the motion

12  to expedite the hearing.  The hearing will be scheduled for the

13  4th.  I'm sorry, yes, for the 4th at 10 on the merits because I

14  believe that's sufficient notice.  But I am hopeful that the

15  motion to expedite will be significantly narrowed based on your

16  discussions either this week or Monday or Tuesday of next week.

17          MR. WARNER:  Your Honor, on behalf of the

18  committee we're hopeful that something will come out of those

19  discussions vis a vis the intervention, but can we go ahead and

20  just set it for the Court also in case we don't have some

21  agreement?

22          THE COURT:  When did you file it?

23          MR. WARNER:  Tuesday.

24          THE COURT:  I don't think -- no, let's set it

25  further for a little bit more time on that.  It will be heard.

64

1    I'd rather just have you all deal with it without the debtors

2    having to respond to it, just deal with it in your conferences

3    and I'd rather hear it in the light of what you've discussed in

4    your conferences because it may be largely resolved at that

5    point.  So I'm not going to hear the committee's motion on the

6    4th.  You can get somewhat -- I mean I'm not going to delay it

7    a long time.

8              MR. WARNER:  The Court mentioned it had time on

9    the 9th.  Should I use that date and ask --

10             THE COURT:  Well, what's the -- is there a June

11   omnibus date?

12             MR. WARNER:  June 24th, Your Honor.

13             THE COURT:  Let's cross that -- I could

14   conceivably do it on the 9th but let's cross that bridge --

15   let's discuss it on the 4th.

16             MR. WARNER:  On the 4th.  Thank you.

17             MR. FRIEDMAN:  Your Honor, I just want to make

18   sure I heard correctly.  On the 4th we'll have the motion for

19   expedited discovery and trial --

20             THE COURT:  Right.

21             MR. FRIEDMAN:  -- to the extent we have to work

22   things out.

23             THE COURT:  Right.  I don't require any more

24   briefing on it obviously, but if you want to fill me in on what

25   the remaining issues are, I certainly would appreciate that

65

1   although I hope that it won't be many and I'm happy to hear

2   them without them being written down if they're not resolved

3   until shortly before the hearing.

4          MR. SHORE:  Would you expect the 4th to be an

5   evidentiary hearing though?

6          THE COURT:  I think the debtor is going to need to

7   give me some evidence.

8          MR. SHORE:  Okay.  I only raised it because I do

9   have an outstanding deposition notice then.  So we're going to

10  have to deal with that in the time frame and we'll try to work

11  out a schedule.  We may have to push it to the 9th if they

12  really want to proceed on an evidentiary case like that.

13         THE COURT:  All right.

14                    *  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

66

1           I certify that the foregoing is a court transcript from

2     an electronic sound recording of the proceedings in the above-

3     entitled matter.

4

5                                    _____

6                                            Mary Greco

7     Dated:  May 30, 2008