**Hearing Date And Time: July 31, 2008 at 10:00 a.m. (Prevailing Eastern Time)**
**Response Date And Time: July 24, 2008 at 4:00 p.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
: 
    In re                                     :     Chapter 11
: 
DELPHI CORPORATION, et al.,         :     Case No. 05-44481 (RDD)
: 
:     (Jointly Administered)
                  Debtors.         : 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**DEBTORS' THIRTIETH OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO CERTAIN
(A) AMENDED CLAIMS, (B) EQUITY CLAIMS, (C) UNTIMELY
INSUFFICIENTLY DOCUMENTED CLAIM, (D) BOOKS AND
RECORDS CLAIMS, (E) UNTIMELY CLAIMS, AND (F) CLAIMS
<u>SUBJECT TO MODIFICATION</u>**

**("THIRTIETH OMNIBUS CLAIMS OBJECTION")**

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Thirtieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Amended Claims, (B) Equity Claims, (C) Untimely Insufficiently Documented Claim, (D) Books And Records Claims, (E) Untimely Claims, And (F) Claims Subject To Modification (the "Thirtieth Omnibus Claims Objection"), and respectfully represent as follows:

Background

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108. This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases. On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the official committee of unsecured creditors, the "Statutory Committees").

3.    On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9264).

Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

respect to the Plan (Docket No. 11388) (the "Disclosure Statement").  The Court entered an order

approving the adequacy of the Disclosure Statement and granting the related solicitation

procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008, the Court

entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation

Order"), which became a final order on February 4, 2008.

4.      On April 4, 2008, the Debtors announced that although they had met the

conditions required to substantially consummate the Plan, including obtaining $6.1 billion of exit

financing, Delphi's Plan Investors (as defined in the Plan) refused to participate in a closing that

was commenced but not completed and refused to fund their Investment Agreement (as defined

in the Plan) with Delphi.  On May 16, 2008, Delphi filed complaints for damages and specific

performance against the Plan Investors and related parties who refused to honor their equity

financing commitments and refused to participate in the closing that would have led to Delphi's

successful emergence from chapter 11.  The Debtors nevertheless continue to work with their

stakeholders to achieve their goal of emerging from chapter 11 as soon as practicable.

5.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

7.    Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

8.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

9.    Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-

---

[1]    The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

11.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which had the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

12.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.      The Debtors' Transformation Plan

13.     On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements to create a competitive arena in which to conduct business; second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company; third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable solution to their current pension situation.

E.      Plan Confirmation And Postconfirmation Matters

14.     The confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases. The Global Settlement Agreement and the Master Restructuring Agreement provide for a comprehensive settlement with GM, and both agreements were approved by this Court in the Confirmation Order.  After the Plan was confirmed, the Debtors focused their efforts on

6

satisfying the conditions for the Plan to become effective.  The Debtors satisfied those conditions

and on April 4, 2008 began a formal closing process attended by representatives of GM, the exit

lenders, and the Statutory Committees.  The Plan Investors, however, refused to participate in the

closing or fund their obligations under the Investment Agreement.  Instead, the Plan Investors

delivered written notices purporting to terminate the Investment Agreement based on both

alleged breaches by the Debtors and the failure of the Plan's effective date to occur by April 4,

2008.  On May 16, 2008, Delphi filed complaints for damages and specific performance against

the Plan Investors and related parties who refused to honor their equity financing commitments

and refused to participate in the closing that would have led to Delphi's successful emergence

from chapter 11.  The Debtors nevertheless are working with their stakeholders to evaluate their

options to move forward with emerging from chapter 11 as soon as reasonably practicable.

    15.  Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

F.  Bar Date, Proofs Of Claim, And Omnibus Claims Objections

    16.  On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

17.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and Statements") and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

18.    In addition, the Debtors published the Bar Date Notice in the <u>New York Times</u> (National Edition), the <u>Wall Street Journal</u> (National, European, and Asian Editions), <u>USA Today</u> (Worldwide Edition), the <u>Automotive News</u> (National Edition), and in local editions of the following publications: the <u>Adrian Daily Telegram</u>, the <u>Arizona Daily Star</u>, the <u>Buffalo News</u>, the <u>Chicago Sun Times</u>, the <u>Clinton News</u>, the <u>Columbia Dispatch</u>, the <u>Daily Leader</u>, <u>Dayton Daily News</u>, the <u>Detroit Free Press</u>, the <u>El Paso Times</u>, the <u>Fitzgerald Herald Leader</u>, the <u>Flint Journal</u>, the <u>Gadsden Times</u>, the <u>Grand Rapids Press</u>, the <u>Greenville News</u>, the <u>Indianapolis Star</u>, the <u>Kansas City Star</u>, the <u>Kokomo Tribune</u>, the <u>Lansing State Journal</u>, the <u>Laurel Leader</u>, the <u>Los Angeles Daily News</u>, the <u>Milwaukee Journal Sentinel</u>, the <u>Mobile Beacon</u>, the <u>Mobile Register</u>, the <u>Oakland Press</u>, the <u>Olathe Daily News</u>, the <u>Rochester Democrat and Chronicle</u>, the <u>Saginaw News</u>, the <u>Sandusky Register</u>, the <u>Tribune Chronicle</u>, the <u>Tulsa World</u>, the <u>Tuscaloosa</u>

News, and The Vindicator, and electronically through posting on the Delphi Legal Information

Website, www.delphidocket.com, on or before April 24, 2006.

19.    Approximately 16,810 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 29 omnibus Claims objections, [4]

pursuant to which this Court has disallowed and expunged 9,602 Claims and modified

approximately 3,610 Claims.  In addition, the hearings with respect to approximately 490 Claims

have been adjourned pursuant to the Claims Objection Procedures Order (as defined below).

20.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

21.    On November 30, 2007, the Debtors filed the Motion Under New

Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue

---

[4]    The Debtors filed Claims objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451 and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585), February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27, 2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos. 8270 and 8271), July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151), September 21, 2007 (Docket No. 9535), October 26, 2007 (Docket No. 10738), November 19, 2007 (Docket No. 10982), December 21, 2007 (Docket No. 11588), January 18, 2008 (Docket No. 12288), February 15, 2008 (Docket Nos. 12686 and 12687), and March 27, 2008 (Docket Nos. 13269 and 13270).

Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 11187).  In that motion, the Debtors requested this

Court, among other things, to authorize the Debtors to continue the current practices and

procedures for filing and serving notice of omnibus Claims objections pursuant to the Claims

Objection Procedures Order, including omnibus Claims objections to more than 100 Claims.  On

December 20, 2007, this Court granted this relief by entering the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

    22.  In this Thirtieth Omnibus Claims Objection, the Debtors are objecting to

135 Proofs of Claim, all of which are set forth on Exhibit H hereto in alphabetical order by

claimant and cross-referenced by proof of claim number and basis of objection.

Relief Requested

    23.  By this Thirtieth Omnibus Claims Objection, the Debtors seek entry of an

order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing

and expunging (a) the Claim set forth on Exhibit A-1 hereto because it has been amended and

superseded by a later-filed Claim, (b) the Claim set forth on Exhibit A-2 hereto because it has

been amended and superseded by a later-filed Claim and is subject to a prior order, (c) the Claim

set forth on Exhibit B-1 hereto because it was filed by a holder of Delphi common stock solely

10

on account of its stock holdings, (d) the Claims set forth on Exhibit B-2 hereto because they were filed by holders of Delphi common stock solely on account of their stock holdings and were untimely filed pursuant to the Bar Date Order, (e) the Claim set forth on Exhibit C hereto because it contains insufficient documentation in support of the Claim asserted and was untimely filed pursuant to the Bar Date Order, (f) the Claims set forth on Exhibit D-1 hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records, (g) the Claims set forth on Exhibit D-2 hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records and were untimely filed pursuant to the Bar Date Order, (h) the Claim filed by a taxing authority set forth on Exhibit D-3 hereto because it asserts liabilities or dollar amounts that are not reflected on the Debtors' books and records and was untimely filed pursuant to the Bar Date Order, and (i) the Claims set forth on Exhibit E hereto because they were untimely filed pursuant to the Bar Date Order.

24.    In addition, by the Thirtieth Omnibus Claims Objection the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 revising the asserted amount and/or classification with respect to the Claims set forth on Exhibit F hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records.

Objections To Claims

G.    Amended Claims

25.    During the Debtors' review of the Proofs of Claim, the Debtors determined that many Claims evidenced by Proofs of Claim were subsequently amended and superseded by other Proofs of Claim filed by creditors with respect to the same liabilities (the "Amended Claims").  For instance, many Amended Claims were filed to amend an amount previously

claimed in an earlier Proof of Claim (the "Original Claim").  Other Amended Claims were filed

to amend the classification of part or all of an Original Claim.

26.    It is axiomatic that creditors are not entitled to multiple recoveries for a

single liability against a debtor.  Accordingly, the Debtors wish to eliminate two Original Claims

for which Amended Claims were subsequently filed.  One of the Amended Claims had been

modified pursuant to a prior order (the "Amended Claim That Is Subject To Prior Order").

27.    Identified on Exhibit A-1 hereto is the Claim that the Debtors have

identified as an Amended Claim that had not been modified pursuant to a prior order.  Attached

hereto as Exhibit A-2 is the Claim that the Debtors have identified as an Amended Claim That Is

Subject To Prior Order.  For each Amended Claim and Amended Claim That Is Subject To Prior

Order, Exhibits A-1 and A-2, classify a Proof of Claim as either a "Claim To Be Expunged" (the

"Expunged Claim") or as a "Surviving Claim" (the "Surviving Claim").  Generally, the Surviving

Claims reflect the classifications of the liabilities as reflected on the Debtors' Schedules and

Statements.  The Debtors request that the Claims marked as Expunged Claims on Exhibits A-1

and A-2 be disallowed and expunged.  With respect to the Claims on Exhibits A-1 and A-2

marked as Surviving Claims, the Debtors do not seek any relief at this time.  The inclusion of the

Surviving Claims on Exhibits A-1 and A-2 does not reflect any view by the Debtors as to the

ultimate validity of any such Claims.  The Debtors therefore expressly reserve all of their rights

to further object to any or all of the Surviving Claims at a later date on any basis whatsoever,

except as expressly provided in paragraph 51 below.

28.    Accordingly, the Debtors (a) object to the Amended Claim and the

Amended Claim That Is Subject To Prior Order and (b) seek entry of an order disallowing and

expunging the Amended Claim and the Amended Claim That Is Subject To Prior Order in their
entirety.

H.    Equity Claims

29.    During their Claims review, the Debtors determined that a certain Proof of
Claim filed against the Debtors represents a proof of interest that was filed by or on behalf of a
person holding Delphi common stock (the "Equity Claim").  In addition, the Debtors determined
that certain Proofs of Claim filed against the Debtors also represent proofs of interest that were
filed by or on behalf of a person holding Delphi common stock and were received by the Debtors
after the Bar Date (the "Untimely Equity Claims").  The Debtors caused the Claims Agent to
serve notice of the Bar Date on holders of Delphi common stock to ensure that holders of stock
who wished to assert claims against any of the Debtors that were not based solely upon their
ownership of Delphi common stock would be afforded the opportunity to file claims in these
chapter 11 cases.

30.    The ownership of Delphi common stock constitutes an equity interest in
Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section
101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was
approved by this Court, creditors and equity holders were notified that they were not required to
file proofs of claim based exclusively on ownership interests in Delphi common stock.[5]

---

[5]    The Bar Date Order provides, in relevant part:

Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the
types set forth below:

*    *    *

(h) Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's
ownership interest in or possession of such equity securities, or other interest; provided, however, that any such
holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of
*(cont'd)*

31.    Identified on <u>Exhibit B-1</u> is the Equity Claim that the Debtors have identified as representing solely a proof of interest.  Set forth on <u>Exhibit B-2</u> is a list of Untimely Equity Claims that the Debtors have identified as representing solely proofs of interest that were untimely filed pursuant to the Bar Date Order.  The Debtors therefore seek to have these claims reclassified from Claims to interests and be disallowed and expunged.  To the extent that the individuals that filed the Equity Claims listed on <u>Exhibits B-1</u> and <u>B-2</u> hold valid equity interests in Delphi as of the applicable record date, the requested reclassification of the Proofs of Claim and disallowance of the Claims will not impair any entitlements the Claimants may ultimately have under a plan of reorganization with respect to such holders' equity interests.

32.    Accordingly, the Debtors (a) object to the Equity Claim and Untimely Equity Claims and (b) seek entry of an order disallowing and expunging the Equity Claim and Untimely Equity Claims in their entirety.

I.    <u>Untimely Insufficiently Documented Claim</u>

33.    During their Claims review, the Debtors discovered that a certain Proof of Claim did not include sufficient documentation to support the claim asserted and was untimely filed pursuant to the Bar Date Order (the "Untimely Insufficiently Documented Claim").  This deficiency in documentation has made it impossible for the Debtors to meaningfully review the asserted Claim.  In addition, the Debtors have also determined that the Untimely Insufficiently Documented Claim was untimely filed pursuant to the Bar Date Order.

34.    The burden of proof to establish a claim against an estate rests on the claimant and, if a proof of claim does not include sufficient factual support, the proof of claim is

_____
*(cont'd from previous page)*
    the Debtors' securities, including, but not limited to, Claims for damages or rescission based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

    Bar Date Order ¶5 (emphasis added).

not entitled to a presumption of prima facie validity pursuant to Bankruptcy Rule 3001(f).  In re

WorldCom, Inc., No. 02-13533, 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (only

claim that alleges facts sufficient to support legal liability to claimant satisfies claimant's initial

obligation to file substantiated proof of claim); see also In re Allegheny Intern., Inc., 954 F.2d

167, 174 (3d Cir. 1992) (in its initial proof of claim filing, claimant must allege facts sufficient to

support claim); In re Chiro Plus, Inc. 339 B.R. 111, 113 (Bankr. D.N.J. 2006) (claimant bears

initial burden of sufficiently alleging claim and establishing facts to support legal liability); In re

Armstrong Finishing, L.L.C., No. 99-11576-C11, 2001 WL 1700029, at *2 (Bankr. M.D.N.C.

May 2, 2001) (only when claimant alleges facts sufficient to support its proof of claim is it

entitled to have claim considered prima facie valid); In re United Cos. Fin. Corp., 267 B.R. 524,

527 (Bankr. D. Del. 2000) (claimant must allege facts sufficient to support legal basis for its

claim to have claim make prima facie case).  As a result of the failure of the Claimants identified

on Exhibit C to provide sufficient documentation to permit an understanding of the basis for their

Claims, those Claims do not make out a prima facie case against the Debtors.

      35.     The Untimely Insufficiently Documented Claim (a) fails to assert a Claim,

(b) fails to assert a monetary amount for the Claim, (c) states that there is no outstanding Claim

against the Debtors, and (d) contains no documentation in support of the Claim or provides no

evidence of the Debtors' liability for the Claim.  Furthermore, the Untimely Insufficiently

Documented Claim was not timely filed pursuant to the Bar Date Order.

      36.     Identified on Exhibit C is the Untimely Insufficiently Documented Claim

which the Debtors have identified as a Claim that does not contain sufficient documentation to

permit an understanding of the basis for the Claim and was untimely filed pursuant to the Bar

Date Order.[6]  Accordingly, the Debtors (a) object to the Untimely Insufficiently Documented

Claim and (b) seek entry of an order disallowing and expunging the Untimely Insufficiently

Documented Claim in its entirety.  In the event that this Court does not disallow and expunge

this Claim in full, the Debtors expressly reserve all of their rights to further object to the

Untimely Insufficiently Documented Claim at a later date on any basis whatsoever.

J.      Books And Records Claims

              37.      During the Debtors' review of the Proofs of Claim, the Debtors determined

that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the

Debtors' books and records (the "Books And Records Claims").  The Debtors have also

determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing

pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant to the

Bar Date Order (the "Untimely Books And Records Claims").  The Debtors have also

determined that a certain Proof of Claim filed by a taxing authority asserts a liability or dollar

amount that is not owing pursuant to the Debtors' books and records and, in addition, was not

timely filed pursuant to the Bar Date (the "Untimely Books And Records Tax Claim").  The

Debtors believe that the parties asserting the Books And Records Claims, the Untimely Books

And Records Claims, and the Untimely Books And Records Tax Claim are not creditors of the

Debtors.  The Debtors determined that they are not liable for the Books And Records Claims, the

Untimely Books And Records Claims, and the Untimely Books And Records Tax Claim because

the Debtors' books and records do not reflect the existence of the asserted Claims or of the

Claimants asserting such Claims.

---

[6]      Certain of the Claims on Exhibits C, D-1, D-2, and F are denoted as having an asserted amount of "UNL."  This
reflects the fact that the Claim amounts asserted by the Claimants in those instances are unliquidated.

38.    A claimant's proof of claim is entitled to the presumption of <u>prima facie</u> validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'" <u>WorldCom</u>, 2005 WL 3832065, at *4 (quoting <u>Allegheny</u>, 954 F.2d at 174).  Once such an allegation is refuted, "'the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.'" <u>Id.</u>

39.    Attached hereto as <u>Exhibit D-1</u> is a list of the Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Attached hereto as <u>Exhibit D-2</u> is a list of the Untimely Books And Records Claims that the Debtors have identified as Claims for which the Debtors are not liable.  Identified on <u>Exhibit D-3</u> hereto is the Untimely Books And Records Tax Claim that the Debtors have also identified as a Claim for which the Debtors are not liable.[7]  The Debtors object to the Books And Records Claims because the Debtors have no liability in respect thereof.  The Debtors object to the Untimely Books And Records Claims and the Untimely Books And Records Tax Claim not only because the Debtors have no liability in respect thereof, but also because these Claims were not timely filed pursuant to the Bar Date Order.  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Books And Records Claims, the Untimely Books And Records Claims, and the Untimely Books And Records Tax Claim at a later date on any basis whatsoever.

40.    Accordingly, the Debtors (a) object to the Books And Records Claims, the Untimely Books And Records Claims, and the Untimely Books And Records Tax Claim and (b)

---

[7]    The Untimely Books And Records Claims listed on <u>Exhibit D-2</u> hereto and the Untimely Books And Record Tax Claim listed on <u>Exhibit D-3</u> hereto were not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) (the "Claims Timeliness Motion").

seek entry of an order disallowing and expunging the Books And Records Claims, the Untimely

Books And Records Claims, and the Untimely Books And Records Tax Claim in their entirety.

K.    Untimely Claims

41.    Although the Bar Date passed almost two years ago, various parties have

continued to file Proofs of Claim in these chapter 11 cases.  During the Debtors' continuing

review of the Proofs of Claim, the Debtors have determined that a certain Proofs of Claim were

received by the Debtors after the Bar Date (the "Untimely Claims").  The Debtors object to these

Untimely Claims on the basis they were not timely filed pursuant to the Bar Date Order.  The

Untimely Claims are identified on Exhibit E hereto.  If this Court does not disallow and expunge

these Claims in full, the Debtors expressly reserve all of their rights to further object to the

Untimely Claims at a later date on any basis whatsoever.

42.    Accordingly, the Debtors (a) object to the Untimely Claims[8] and (b) seek

entry of an order disallowing and expunging the Untimely Claims in their entirety.

L.    Claims Subject To Modification

43.    During the Debtors' review of the Proofs of Claim, the Debtors have

determined that certain Claims state the incorrect amount and/or assert the incorrect

classification or are overstated (collectively, the "Claims Subject To Modification").

44.    Although in this Thirtieth Omnibus Claims Objection the Debtors do not

seek to disallow and expunge the Claims Subject To Modification the Debtors have determined,

based on an initial review, that their liability with respect to each such Claim does not exceed the

dollar amount set forth on Exhibit F hereto.  The bases for placing a Claim in the Claims Subject

To Modification category of objection include, but are not limited to, the following: the asserted

---

[8]    The Untimely Claims listed on Exhibit E hereto was not included as part of the Claims Timeliness Motion.

Claim (a) does not account for amounts that may have been paid or credited against such Claim prior to the commencement of these cases and/or (b) does not account for amounts that may have been paid or credited against such Claim following the commencement of these cases. Thus, the Debtors seek to convert the amount of each Claim Subject To Modification to a fully liquidated, U.S. dollar-denominated amount consistent with the Debtors' books and records and/or the liquidated amount requested by the Claimant (thus eliminating the unliquidated component).

45.    As stated above, a Claimant's Proof of Claim is entitled to the presumption of prima facie validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the allegations that is essential to the claim's legal sufficiency.'" WorldCom, 2005 WL 3832065, at *4 (quoting Allegheny, 954 F.2d at 174). As with the unsubstantiated Claims, the Debtors' books and records refute that the claims asserted in each Claims Subject To Modification are actually owed by any of the Debtors.

46.    Set forth on Exhibit F hereto is a list of Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified and fully liquidated claim amount. For each Claim Subject To Modification, Exhibit F reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed"[9] and the proposed modified dollar amount and classification for the Claim in a column titled "Claim As Modified."

47.    The Debtors object to the amount and/or classification for each Claim Subject To Modification listed on Exhibit F and request that each such Claim be revised to reflect the amount and classification listed in the "Claim As Modified" column of Exhibit F.

---

[9]    To the extent that the Asserted Claim Amounts on Exhibit F reflect asserted liquidated claims, "UNL" denotes an unliquidated claim.

19

Thus, no Claimant listed on Exhibit F would be entitled to recover for any Claim Subject To

Modification in an amount exceeding the dollar value listed as the "Modified Total" for such

Claim on Exhibit F.  For clarity, Exhibit F refers to a Debtor entity by case number and Exhibit

G displays the formal name of the Debtor entity and its associated bankruptcy case number

referenced in Exhibit F.

48.     The inclusion of the Claims Subject To Modification on Exhibit F,

however, does not reflect the Debtors' view as to the ultimate validity of any such Claim.  The

Debtors therefore expressly reserve all of their rights to further object to any or all of the Claims

Subject To Modification at a later date on any basis whatsoever.

49.     Accordingly, the Debtors (a) object to the asserted amount and/or

classification for each Claim Subject To Modification set forth on Exhibit F and (b) seek an

order modifying the Claim Subject To Modification to reflect the Modified Total and

classification as set forth on Exhibit F.

<u>Separate Contested Matters</u>

50.     Pursuant to the Claims Objection Procedures Order, to the extent that a

response is filed with respect to any Claim listed in this Thirtieth Omnibus Claims Objection,

each such Claim and the objection to such Claim asserted in this Thirtieth Omnibus Claims

Objection will be deemed to constitute a separate contested matter as contemplated by

Bankruptcy Rule 9014.  Pursuant to the Claims Objection Procedures Order, any order entered

by the Court with respect to an objection asserted in this Thirtieth Omnibus Claims Objection

will be deemed a separate order with respect to each Claim.

<u>Reservation Of Rights</u>

51.      The Debtors expressly reserve the right to amend, modify, or supplement

this Thirtieth Omnibus Claims Objection and to file additional objections to the Proofs of Claim

or any other Claims (filed or not) which may be asserted against the Debtors, including without

limitation the right to object to any Claim on the basis that it has been asserted against the wrong

Debtor entity.  Should one or more of the grounds for objection stated in this Thirtieth Omnibus

Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds

or on any other grounds that the Debtors discover during the pendency of these cases.  In

addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that

such Claim has been paid.

<u>Responses To Objections</u>

52.      Responses to the Thirtieth Omnibus Claims Objection are governed by the

provisions of the Claims Objection Procedures Order.  The following summarizes the provisions

of that Order, but is qualified in all respects by the express terms thereof.

M.      <u>Filing And Service Of Responses</u>

53.      To contest an objection, responses (each, a "Response"), if any, to the

Thirtieth Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of

Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance

with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on July 24, 2008.**

N.    Contents Of Responses

54.    Every Response to this Thirtieth Omnibus Claims Objection must contain

at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

O.    Timely Response Required

55.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all uncontested objections, the Debtors request that this Court conduct a final hearing on July 31, 2008 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection Procedures Order will apply to all Responses and hearings arising from this Thirtieth Omnibus Claims Objection.

56.      Pursuant to the Claims Objection Procedures Order, only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Thirtieth Omnibus Claims Objection and who is served with the Thirtieth Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Thirtieth Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Hearing Procedures Order.

57.      To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the

allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency,
as appropriate (the "Claimant's Asserted Estimated Amount"), <u>pursuant to the Claims Objection
Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted
Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the
Bankruptcy Code for all purposes other than allowance, but including voting and establishing
reserves for purposes of distribution, subject to further objection and reduction as appropriate
and section 502(j) of the Bankruptcy Code,</u> by providing notice as described more fully in the
Claims Objection Procedures Order.

Replies To Responses

58.     Replies to any Responses will be governed by the Claims Objection
Procedures Order.

Service Of Thirtieth Omnibus Claims Objection Order

59.     Service of any order with regard to this Thirtieth Omnibus Claims
Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

60.     Questions about this Thirtieth Omnibus Claims Objection or requests for
additional information about the proposed disposition of Claims hereunder should be directed to
the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in
writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,
Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).
Questions regarding the amount of a Claim or the filing of a Claim should be directed to the
Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the
Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

24

<u>Notice</u>

61.     Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Tenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered February 4, 2008 (Docket No. 12487).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

62.     Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Thirtieth

Omnibus Claims Objection with a personalized Notice Of Objection To Claim which specifically

identifies the Claimant's Proof of Claim that is subject to an objection and the basis for such

objection as well as a copy of the Claims Objection Procedures Order.  A form of the Notice Of

Objection To Claim to be sent to the Claimants listed on <u>Exhibits</u> <u>A-1</u>, <u>A-2</u>, <u>B-1</u>, <u>B-2</u>, <u>C</u>, <u>D-1</u>, <u>D-</u>

<u>2</u>, <u>D-3</u>, and <u>E</u> is attached hereto as <u>Exhibit I</u>.  A form of the Notice Of Objection To Claim to be

sent to the Claimants listed on <u>Exhibit F</u> is attached hereto as <u>Exhibit J</u>.  Claimants will receive a

copy of this Thirtieth Omnibus Claims Objection without <u>Exhibits A</u> through <u>J</u> hereto.

Claimants will nonetheless be able to review <u>Exhibits A</u> through <u>J</u> hereto free of charge by

accessing the Debtors' Legal Information Website (<u>www.delphidocket.com</u>).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

63.     Because the legal points and authorities upon which this objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        June 27, 2008

                                SKADDEN, ARPS, SLATE, MEAGHER
                                   & FLOM LLP

                                By:   /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 9331)
                                    Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606

                                    - and -

                                By:   /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036

                                Attorneys for Delphi Corporation, et al.,
                                   Debtors and Debtors-in-Possession