# Exhibit A

# Settlement Agreement

EXECUTION VERSION

# SETTLEMENT AGREEMENT

THIS AGREEMENT, dated as of June 12, 2008 (this "Settlement Agreement"), is entered into by and between the Secretary of the United States Department of Labor (the "Secretary") and Delphi Corporation ("Delphi").

## RECITALS:

WHEREAS, on October 8, 2005 (the "Petition Date"), Delphi, together with certain of its U.S. affiliates (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Delphi Bankruptcy Court").

WHEREAS, on July 31, 2006, the Secretary, on behalf of the Delphi Personal Savings Plan for Hourly Rate Employees in the United States (the "Plan"), filed proof of claim number 15135 against Delphi, asserting an unsecured non-priority claim in an unliquidated amount arising from alleged violations of the Employee Retirement Income Security Act of 1974 ("ERISA") in connection with the investment of certain stock dividends held in the Plan's General Motors $1-2/3 Par Value Common Stock Fund from 2000 to 2003 and certain remedial actions taken in connection therewith in 2004 and 2005 (the "Original Claim").

WHEREAS, on July 13, 2007, the Debtors objected to the Original Claim pursuant to the Debtors' Nineteenth Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claim, And (D) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, And Consensually Modified And Reduced Claims (Docket No. 8617) (the "Nineteenth Omnibus Claims Objection").

WHEREAS, on August 2, 2007, the Secretary, on behalf of the Plan, filed proof of claim number 16638, which amended the Original Claim and asserted an unsecured non-priority claim in the amount of approximately $3,233,000 (the "Amended Claim").

WHEREAS, on August 9, 2007, the Secretary filed the Secretary Of Labor's Response To The Debtors' Nineteenth Omnibus Claims Objection To Her Proof Of Claim Filed On Behalf Of The Delphi Personal Savings Plan For Hourly Employees In The United States (Docket No. 8975) (the "Response").

WHEREAS, on September 21, 2007, the Debtors objected to the Amended Claim pursuant to the Debtors' Twenty-First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Equity Claim, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claim Subject To Modification, And Modified Claims Asserting Reclamation (Docket No. 9535).

WHEREAS, on October 22, 2007, the Secretary filed The Secretary's Supplemental Response To The Debtors' Objection To Proof Of Claim Number 15135 And Statement Of Disputed Facts (Docket No. 10695) (the "Supplemental Response").

WHEREAS, on October 25, 2007, the Delphi Bankruptcy Court issued the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 Disallowing And Expunging Certain (A) Duplicate Or Amended Claims, (B) Untimely Equity Claim, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claim Subject To Modification, And Modified Claims Asserting Reclamation Identified In Twenty-First Omnibus Claims Objection (Docket No. 10728) disallowing and expunging the Amended Claim in its entirety and providing that the Original Claim shall remain on the Debtors' claims register.

WHEREAS, on March 31, 2008, the Secretary, on behalf of the Plan, filed proof of claim number 16815, which replaced the Original Claim and asserted an unsecured non-priority claim in the amount of $3,232,133 arising from alleged violations of ERISA in connection with the investment of certain stock dividends held in the Plan's General Motors $1-2/3 Par Value Common Stock Fund from 2000 to 2003 and certain remedial actions taken in connection therewith in 2004 and 2005 (the "Claim").

WHEREAS, on May 12, 2008, Delphi presented to the Secretary a petition under section 502(l)(3)(B) of ERISA, 29 U.S.C. § 1132(l)(3)(B), and 29 C.F.R. § 2570.85, seeking a waiver of any civil penalty arising from the Secretary's recovery from Delphi of any applicable recovery amount on account of the Claim (the "Petition").

WHEREAS, on May 19, 2008, the Secretary granted the Petition.

WHEREAS, to resolve the Nineteenth Omnibus Claims Objection with respect to the Original Claim, as replaced by the Claim, Delphi and the Secretary have agreed to enter into this Settlement Agreement.

WHEREAS, in connection with the settlement contemplated by the Settlement Agreement, Delphi and certain third parties (the "Third Parties") agreed that Delphi and the Plan will release and waive any right to assert against the Third Parties any claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Claim or any matters giving rise to the Claim (the "Plan Releases").

WHEREAS, Delphi is authorized to enter into this Settlement Agreement pursuant to that certain Amended And Restated Order Under 11 U.S.C. §§ 363, 502 And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) entered by the Delphi Bankruptcy Court on June 26, 2007 (the "Amended And Restated Settlement Procedures Order").

NOW THEREFORE, in consideration of the premises set forth above and by execution of this Settlement Agreement, Delphi, without admitting or denying the allegations made by the Secretary concerning the Claim, and the Secretary agree as follows:

1.      <u>Allowed General Unsecured Non-Priority Claim And Waiver Of Rights</u>.  Delphi acknowledges and agrees that the Claim shall be allowed against Delphi in the amount of One Million, Six Hundred and Twenty-Three Thousand, Three Hundred and Ninety-Two Dollars and Zero Cents ($1,623,392.00) and shall not be subject to reconsideration pursuant to section 502(j) of the Bankruptcy Code.  The Claim shall be treated as a prepetition general unsecured non-priority claim.  The Secretary, on behalf of the United States Department of Labor (the "<u>Department</u>"), hereby acknowledges that the allowance of the Claim, together with the Third-Party Payment (as defined in paragraph two of this Settlement Agreement), is in full satisfaction of the Claim and hereby waives any and all rights to assert, against any and all of the Debtors, that the Claim is anything but a prepetition general unsecured non-priority claim against Delphi.  The Secretary, on behalf of the Department, further releases and waives any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever against the Debtors and their current and former employees, officers, and directors, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Claim; <u>provided</u>, <u>however</u>, that such release and waiver shall not apply to any claim by the Secretary for breach of this Settlement Agreement.

2.      <u>Third-Party Payment</u>.  Within fifteen business days after the Delphi Bankruptcy Court enters that certain Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 16815 (Secretary Of United States Department Of Labor) (the "<u>Agreed Order</u>"), Delphi shall cause the Third Parties to deliver to Delphi in its capacity as a Plan fiduciary a cash payment in the aggregate amount of Six Hundred and Fifty Thousand Dollars and Zero Cents ($650,000.00) (the "<u>Third-Party Payment</u>").  Delphi shall distribute the Third-Party Payment at no cost to the Plan in accordance with the plan of allocation attached to this Settlement Agreement as <u>Exhibit A</u> (the "<u>Allocation Plan</u>").  The Third-Party Payment is not property of the Debtors' estates and shall not be subject to the claims or interests of the Debtors' creditors or equity holders other than the Plan.

3.      <u>Closing Letter</u>.  Within two business days after the Third Parties deliver to Delphi in its capacity as a Plan fiduciary the Third-Party Payment as set forth in paragraph two above, the Department will deliver to the Executive Committee of Delphi's Board of Directors an executed version of the letter attached to this Settlement Agreement as <u>Exhibit B</u> (the "<u>Closing Letter</u>").

4.      <u>Delphi Consideration</u>.  Upon the execution of this Settlement Agreement by the Secretary and Delphi, the Secretary shall assign and hereby does assign to Delphi in its capacity as a Plan fiduciary any unexpired Rights (as defined in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, as confirmed by the Delphi Bankruptcy Court in its order dated January 25, 2008) received by the Secretary or the Department on account of the Claim prior to the time of such execution.  Any other consideration distributed by the Debtors on account of the Claim shall be distributed directly to Delphi in its capacity as a Plan fiduciary.  Delphi shall distribute any Rights or any other consideration (collectively, the "<u>Consideration</u>") it receives pursuant to this paragraph at no cost to the Plan in accordance with the Allocation Plan.

5.      <u>Termination</u>.  If the Delphi Bankruptcy Court declines to enter the Agreed Order, then (a) this Settlement Agreement shall terminate automatically, and (b) the Debtors and the

3

Secretary shall proceed with respect to the Claim as if they had not entered into this Settlement Agreement.

  6. <u>Exempt Transactions</u>.  The Secretary and Delphi acknowledge and agree that, to the extent the distribution of Consideration in the form of securities to the Plan or the Plan Releases could be construed as prohibited transactions under ERISA, such transactions qualify as exempt transactions under Prohibited Transaction Exemption 79-15, provided that the Delphi Bankruptcy Court authorizes such transactions in the Agreed Order.

  7. <u>Proposed Settlement Notice</u>.  Within five business days after the execution of this Settlement Agreement by Delphi and the Secretary, Delphi will provide the Notice Parties (as defined in the Amended And Restated Settlement Procedures Order) with a Proposed Settlement Notice (as defined in the Amended And Restated Settlement Procedures Order) concerning this Settlement Agreement pursuant to paragraph 6(b) of the Amended And Restated Settlement Procedures Order.

  8. <u>Withdrawal Of Response</u>.  Within five business days after the Delphi Bankruptcy Court enters the Agreed Order, the Secretary shall withdraw with prejudice the Response and the Supplemental Response to the Nineteenth Omnibus Claims Objection.

  9. <u>Governing Law</u>.  This Settlement Agreement shall be governed by, and construed and enforced in accordance with, as appropriate, federal bankruptcy law, ERISA, and the laws of the State of Michigan, without regard to conflicts of law principles.

  10. <u>Representations And Warranties</u>.  The parties hereto acknowledge that they are executing this Settlement Agreement without reliance on any representations, warranties, or commitments other than those representations, warranties, and commitments expressly set forth in this Settlement Agreement.

  11. <u>Entire Understanding</u>.  This Settlement Agreement and the Closing Letter constitute the entire understanding of the parties hereto in connection with the subject matter hereof.  This Settlement Agreement may not be modified, altered, or amended except by an agreement in writing signed by the Delphi and the Secretary.

  12. <u>No Party Deemed Drafter</u>.  Any ambiguous language in this Settlement Agreement shall not be construed against any particular party as the drafter of such language.

  13. <u>Counterparts</u>.  This Settlement Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of this Settlement Agreement by facsimile or electronic mail shall be equally as effective as delivery of an original executed counterpart of this Settlement Agreement.

  14. <u>Release Of Secretary And Department</u>.  The Debtors and their current and former employees, officers, and directors release and waive any right to assert any claim, cause of action, demand, or liability of every kind and nature whatsoever against the Secretary and the Department, including those arising under contract, statute, or common law, whether or not

4

known or suspected at this time, which relate to the Claim, including, without limitation, any claim for costs, fees, or other expenses under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412.

15.  **Miscellaneous**. This Settlement Agreement is binding on the Secretary and the Department but does not bind any other department or agency of the United States Government.

**Accepted and agreed to by:**

| Delphi Corporation | Elaine L. Chao, Secretary of Labor, United States Department of Labor |
|---|---|
| By: *[signature]* <br> Name: Steven L. Gebbia <br> Title: Executive Director, Benefits & Policy <br> Dated: June 10, 2008 | By: _____ <br> Name: Peter D. Broitman <br> Title: Chicago ERISA Counsel <br> Dated: June ___, 2008 |

5

05-44481-rdd    Doc 13824-1    Filed 06/27/08    Entered 06/27/08 17:02:10    Exhibit A
Pg 7 of 16

known or suspected at this time, which relate to the Claim, including, without limitation, any claim for costs, fees, or other expenses under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412.

15.     <u>Miscellaneous</u>. This Settlement Agreement is binding on the Secretary and the Department but does not bind any other department or agency of the United States Government.

**Accepted and agreed to by:**

| **Delphi Corporation** | **Elaine L. Chao, Secretary of Labor, United States Department of Labor** |
|---|---|
| By: _____ <br> Name: <br> Title: <br> Dated: June \_\_\_, 2008 | By: _____ <br> Name: Peter D. Broitman <br> Title: Chicago ERISA Counsel <br> Dated: June __, 2008 |

5

# Exhibit A
# Allocation Plan

## ALLOCATION PLAN

1.     In accordance with the Settlement Agreement ("Agreement") between Delphi Corporation ("Delphi") and the Secretary of the United States Department of Labor ("Secretary"), (a) the Secretary has assigned to Delphi, as a Plan fiduciary, certain Rights described in the Agreement, which will include non-cash consideration, (b) Delphi, in its capacity as a Plan fiduciary, may receive a direct distribution of Rights described in the Agreement, which will include non-cash consideration, and (c) certain Third Parties will deliver to Delphi, in its capacity as a Plan fiduciary, cash payments in the aggregate amount stated in the Agreement.

2.     Within one (1) business day after receipt of any cash payment made pursuant to the Agreement, Delphi will transfer such payment to State Street Bank and Trust Company ("State Street") as Trustee of the Delphi Personal Savings Plan for Hourly Rate Employees in the United States (Plan Number 29000) (the "Plan"), for the benefit of the Plan and for deposit into the Delphi Automotive Systems Savings Trust ("Master Trust") in the Promark Income Fund. State Street will separately track amounts deposited and earnings thereon in a distribution account in the Master Trust ("Distribution Account").

3.     Within one (1) business day after Delphi's receipt of any non-cash consideration assigned or delivered to it pursuant to the Agreement, Delphi will transfer such non-cash consideration to State Street.

4.     As soon as reasonably possible after receipt of any non-cash contribution, State Street will, to the extent possible, liquidate the non-cash consideration pursuant to commercially reasonable terms and hold the resulting cash proceeds in the Distribution Account. If State Street liquidates the non-cash proceeds in tranches on more than one date, State Street will deposit the resulting cash proceeds in the Distribution Account within one (1) business days after the date of liquidation of each tranche. To the extent State Street holds any non-cash consideration prior to depositing the cash proceeds in the Distribution Account, State Street will hold the non-cash consideration in an escrow account that is part of the Master Trust.

5.     On the business day following the date on which all deposits in the Distribution Account described in paragraphs 2 through 4 have been completed, State Street will simultaneously notify Delphi and Fidelity Investments Institutional Operations Company, Inc. ("Fidelity") in writing that the deposits have been made and provide, to Delphi, a total dollar value of the Distribution Account , along with a projection of the total dollar value of the Distribution Account thirty business days after completion of deposits in paragraphs 2 through 4 (the "Total Distribution Amount"). For purposes of this Allocation Plan, the term "Allocation Date" shall mean the date that is thirty business days after completion of the deposits in paragraphs 2 through 4.

6.     No later than five (5) business days after receipt of the Total Distribution Amount, Delphi shall formulate the "Allocation Dollar Amount" due to each "Affected Participant" in accordance with the Agreement. Delphi has defined "Affected Participants" as individuals who, at any time during the period from January 1, 2000 through December 31, 2003 were participants

in the Plan (the "Relevant Period"), some or all of whose individual account under the Plan was invested in the GM Stock Fund, who suffered a loss in relation to the Claim, and who did not request adjustment of their individual accounts under the 2005 correction program concerning the GM Stock Fund.  Delphi's consultant, Lexecon, has established the "Allocation Dollar Amount" by using:  (1) the Total Distribution Amount; (2) the GM Common Stock Fund and Promark Income Fund prices as of October 7, 2005; and (3) the historical record relating to the Affected Participants' holdings in the GM Stock Fund (e.g., exchanges, withdrawals, dividend payments) during the Relevant Period.  Delphi or its consultant, Lexecon, shall prepare this information in an Excel spreadsheet (the "Allocation File") that lists for each Affected Participant:  (i) name; (ii) Social Security Number; and (iii) the specific amount in dollars that such Affected Participant is to receive from the Total Distribution Amount.

       7.      Delphi shall prepare a "Participant Notification Letter" intended to notify Affected Participants upon completion of the allocation.  This Participant Notification Letter shall not be customized to any Affected Participant, but shall specify the available means whereby the participant can a) ascertain the exact amount allocated to his or her Plan account in connection with the allocation, and b) direct investment of any such amount.  In addition, this Participant Notification Letter shall provide a toll-free number to use to notify Fidelity of an Affected Participant's death, and instructions on how to obtain a supplemental distribution (e.g., check or rollover) in the event a recipient has a zero balance account immediately before the allocation.

       8.      Immediately upon preparation of the Allocation File, Delphi shall direct Fidelity, in writing signed by an authorized signatory, to proceed with the allocation into the Plan of the Distribution Account as described in paragraphs 9 and 10 below.  Additionally, by this "Letter of Direction," Delphi shall:

    (a) Direct Fidelity to add a new contribution source (the "Source") in which Fidelity shall track each Affected Participant's Allocation Dollar Amount.  The Letter of Direction shall provide the following specifics with respect to the Source:
- (i)     name;
- (ii)    number;
- (iii)   whether the Source is taxable (pre-tax) or non-taxable (after-tax);
- (iv)   type (e.g., Employee Contribution, Employer Contribution, Qualified Nonelective Contribution);
- (v)    vesting schedule, if any;
- (vi)   withdrawal characteristics, including any and all withdrawal transactions types for which the Source monies will be eligible;
- (vii)  whether the Source shall be available for participant investment elections, exchanges, rebalances or distribution elections; and
- (viii) whether the Source shall be included in the fee hierarchy when calculating participant fees for transactions such as loans and withdrawals.

    (b) Notify Fidelity of the specific location on Fidelity's Plan Sponsor Webstation to which Delphi has uploaded the Allocation File.

2

     (c) Provide Fidelity with a copy of the Participant Notification Letter described in paragraph 7 above, and direct Fidelity to send, at the conclusion of the allocation process described in paragraph 9 below, the Participant Notification Letter in substantially that form.

     (d) Attach a certification for Fidelity to complete upon the completion of the tasks itemized in paragraph 9 below.

     (e) Direct, for any Affected Participant who does not have an account in the Plan on the Fidelity Participant Recordkeeping System, creation of a shell account into which Allocation Dollar Amount shall be processed, and provide for each such Affected Participant (in addition to the information in the Allocation File):

       i. Address;
       ii. Foreign Country Code;
       iii. Date of Birth;
       iv. Date of Hire;
       v. Termination Date;
       vi. Status Code;
       vii. Division Name; and
       viii. Division Code.

     9. Upon receipt of such Letter of Direction from Delphi, Fidelity and State Street will take the following steps:

     (a) As soon as administratively possible but not more than five (5) business days after Fidelity receives the Allocation File in good order, Fidelity will load and complete a reconciliation of the Allocation File against expected results (using the total number of Affected Participants as supplied by Delphi and the Total Distribution Amount).

     (b) Upon the completion of the reconciliation of the Allocation File, Fidelity shall: (i) confirm to Delphi and State Street that it can process the Allocation File as of the Allocation Date in accordance with the Letter of Direction; and (ii) Provide a report to Delphi that identifies all Affected Participants and beneficiaries that have a balance of zero immediately prior to the allocation of the Allocation Dollar Amount. Upon receipt of this report, Delphi will provide direction to Fidelity concerning the distribution due to these "Zero Balance" Affected Participants, if any (as stated in section (f) of paragraph 9).

     (c) No later than the business day following the Allocation Date, Fidelity shall process the allocation in each Affected Participant's account as a market value adjustment in the amounts listed on the Allocation File, and shall post such amounts as of the Allocation Date to the Promark Income Fund, Fund Code 96326, in each recipient's Plan account.

     (d) In the event that Fidelity is unable to meet the Allocation Date despite commercially reasonable efforts, it shall immediately notify the parties, and State Street and Delphi shall cooperate in providing new totals and Allocation Files, and establishing the earliest possible new Allocation Date.

3

(e) As soon as administratively possible, but not later than five (5) business days after the date on which the Allocation is processed, Fidelity shall mail the Participant Notification Letter supplied by Delphi via first-class U.S. Mail.

(f) No later than two (2) business days following mailing of the Participant Notification Letter, Fidelity shall certify to Delphi using the form provided in the Letter of Direction that it has completed the tasks anticipated by this paragraph 9.

10. Special Circumstances.

(a) If Fidelity determines that a Qualified Domestic Relations Order has divided the Plan account of an Affected Participant between the Affected Participant and his or her former spouse, the amount that was to be allocated to such Affected Participant will be applied to the Affected Participant's Account, and no proceeds will be directed to that of any alternate payee.

(b) If Fidelity's system reflects that an Affected Participant status code is "D" (deceased), the allocation of the Allocation Dollar Amount to his or her individual account in the Plan will be applied to deceased participant's Plan account and transferred to any beneficiary accounts maintained on the system, if applicable, after posting of the Allocation Dollar Amount. If Fidelity determines that no beneficiary account has been established for the deceased, Fidelity will proceed in accordance with death reporting and distribution procedures and rules, as directed by Delphi. In addition, in the event that Fidelity determines that it no longer maintains beneficiary information for any deceased Affected Participant, Fidelity will seek direction from Delphi regarding the distribution of such Affected Participant's share of the Total Allocation Amount.

(c) Upon receipt of any Participant Notification Letters that are returned to Fidelity via U.S. Mail, Fidelity will engage in its customary process, as approved by Delphi, to find participants and/or beneficiaries utilizing a locator service. If the search does not yield a result, Fidelity will await further direction from Delphi.

(d) To the extent unforeseen circumstances arise in relation to the execution of this Allocation Plan, Delphi reserves the right, consistent with its obligations under applicable law and subject to the concurrence of Delphi's and/or the Plan's service providers, to modify the process set forth in this Allocation Plan as may be reasonably necessary.

11. Nothing in this Allocation Plan shall prevent Fidelity or State Street from seeking reimbursement from Delphi for the costs, fees, and expenses it will incur in completing the tasks contemplated by either party in this Allocation Plan.

# Exhibit B
# Closing Letter

Delphi Corporation
Executive Committee of the Board of Directors
5725 Delphi Drive
Troy, Michigan 48098

RE:   Delphi Personal Savings Plan for Hourly-Rate Employees in the United States

Dear Directors:

The United States Department of Labor (the Department) has responsibility for administration and enforcement of Title I of the Employee Retirement Income Security Act of 1974 (ERISA). Title I establishes standards governing the operation of employee benefit plans such as the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (the Plan).

This office has concluded its investigation of the Plan and of Delphi Corporation's (Delphi) activities as fiduciary to the Plan. Based on the facts gathered in this investigation it appears that, as a fiduciary to the Plan, Delphi may have violated several provisions of ERISA. The purpose of this letter is to advise you of our findings.

As we understand the facts, many of which were provided by Delphi on behalf of the Executive Committee of Delphi's Board of Directors (the EXPD) to this office during the course of our investigation, the Plan is sponsored by Delphi and is a defined contribution plan with a cash or deferred arrangement as described in Internal Revenue Code section 401(k). The EXPD is the named fiduciary of the Plan and delegates its authority to various committees. The day-to-day operations of the Plan are administered by Delphi's Pension Welfare Benefit Group, which is responsible for benefit plan administration, plan policy and design, implementation of any changes made to the Plan and negotiations with each union representing employees who are participants in the Plan. As such, Delphi is a fiduciary and party-in-interest to the Plan within the meaning of ERISA sections 3(21) and 3(14), respectively.

Our investigation revealed, as of January 1, 2000 the Plan offered an array of investment options, one of which was the General Motors $1-2/3 Par Value Common Stock Fund (GMSF). Pursuant to the Plan document, the GMSF within the Plan was closed to new investments effective January 1, 2000. As a result, any subsequent dividends issued on the General Motors stock (GM Stock) in the GMSF were required to be invested in the Promark Income Fund (PMIF). Participants were allowed to retain the GM Stock already invested in their accounts. However, from March 10, 2000 through December 2003, Delphi failed to follow the Plan document by investing the proceeds of the dividends of the GM Stock held in participants' accounts into the GMSF rather than into the PMIF and

thereafter failed to make participants whole for the losses suffered upon discovery that the GM Stock dividends were incorrectly invested.

Accordingly, it is our view that Delphi's failure to invest dividends declared on GM Stock held in the Plan into the PMIF and the failure to make the Plan participants whole for the losses suffered due to the incorrectly invested dividends violated ERISA sections 404(a)(1)(A),(B) and (D) which provide, in relevant part:

> 404(a)(1) ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and --
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants and their beneficiaries;
> >
> > ….
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
> >
> > ….
> >
> > (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

After careful review of the facts by this office, you were informed of the actions we believe resulted in violations of ERISA and you took corrective actions with respect to the aforementioned violations, including through a settlement with the Department that provides for a distribution of consideration to the Plan. The violations disclosed by the Department's investigation have been resolved by the Settlement Agreement executed by Delphi and the Department and the Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 16815 (Secretary Of United States Department Of Labor) filed in the United States Bankruptcy Court for the Southern District of New York (Case No. 05-44481 (RDD)).

Because you have taken the corrective action noted above, the Department will take no further action against any person or entity (including, without limitations, any service provider or fiduciary of the Plan).  You must understand that the Department's decision is binding on the Department only and only concerns the matter discussed above.  Any other individual or governmental agency remains free to take whatever action it may deem appropriate.

Sincerely,



Joseph R. Menez
Regional Director
Cincinnati Regional Office