IN THE UNITED STATES BANRKUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

Hearing Date and Time: July 31, 2008 at 10:00 a.m. (Eastern)
Response Date: July 24, 2008 at 4:00 p.m. (Eastern)

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, et al. | 05-44481-RDD |
| Debtors. | Jointly Administered |

**PIONEER SPEAKERS, INC.'S MOTION FOR (i) RELIEF UNDER FED. R. BANKR. P. 9024 AND FED. R. CIV. P. 60(b) FROM ORDER EXPUNGING CLAIM AS UNTIMELY, (ii) FOR PERMISSION TO FILE CLAIM AFTER BAR DATE AND (iii) IN THE ALTERNATIVE, FOR ALLOWANCE OF ADMINISTRATIVE CLAIM.**

Pioneer Speakers, Inc. ("PSI") states:

**Factual Background:**

1. PSI is a global leader in the manufacture of speakers and components for the automotive industry and others.

2. For all relevant time periods, PSI and Delphi Automotive Systems, LLC ("DAS") have engaged in substantial amount of business through DAS' Electronics and Safety Division.

3. As part of an award of a new program (the GMX 381 program), on July 30, 2004, DAS issued Purchase Order 450066978 (the "Tooling PO", Exhibit "B") to PSI.

4. The Tooling PO called for PSI to manufacture 3 separate tools for DAS, specifically, GMX381 Coupe 6" and 3.5" Bracket Hard Tool, Speaker Housing Tool and GMX 381 Conv. Bracket Tool (together, the "Tools").

5. Under the Tooling PO and DAS's General Terms and Conditions incorporated in the Tooling PO, DAS has no payment obligation for the Tools unless and until they are complete and they have received approval for manufacture of parts through the Production Part Approval Process ("PPAP").

6. In fact, the Tooling PO expressly provides the following:

> Final Payment: Final invoice for tools will not be accepted until full PPAP approval has been documented. Supplier should therefore ensure that notification of approval has been received before submitting final invoice. Refer also to payment terms on PO"

7. Prior to the Petition Date, PSI completed the Tools. However, it did not receive PPAP approval for all of the Tools until November 9, 2005, after the October 8, 2005 date that DAS and its affiliates filed their Chapter 11 Petitions (the "Petition Date").

8. More specifically, both the Coupe 6" and 3.5" Bracket Hard Tool and the GMX 381 Conv. Bracket Tool were given PPAP approval prior to the Petition Date, but the Speaker Housing Tool was approved on November 9, 2005.

9. PSI believed (and believes) that, based on the plain language of the Tooling PO, its claim was a post-petition administrative claim entitled to priority under 11 U.S.C. §503(b). Accordingly, this claim was not included in the Proof of Claim (claim number 1420) filed by PSI's affiliate Pioneer North America, Inc. on January 3, 2006.[1]

10. Delphi has paid postpetition for the Speaker Housing Tool. It has not paid for the Coupe 6" and 3.5" Bracket Hard Tool and the GMX 381 Conv. Bracket Tool (the "Unpaid Tools"). The total amount owed for the Unpaid Tools is $153,750.00.

11. PSI and Delphi have discussed the amounts owed for the Unpaid Tools several times. Initially, Delphi took the position that the amounts owed for the Unpaid Tools were prepetition claims because those specific tools were given PPAP approval prior to the Petition Date (Herriott letter, exhibit "C")

---

[1] Claim 1420 was later transferred by PNA to Credit Suisse First Boston, which transferred it to Whitebox Hedged High Yield Partners LP, the current holder of that claim.

2

12. After further discussions, the Delphi legal team took the position that the amounts due for the Unpaid Tools technically came due post-petition, but were pre-petition obligations because they did not provide any benefit to the bankruptcy estate (Lyons e-mails, exhibit "D").

13. PSI disputes this position. However, as a result of this position, in order to avoid litigation and because DAS' Chapter 11 Plan offered a generous distribution to unsecured creditors, on January 28, 2008 PSI filed an unsecured claim against DAS (see Proof of Claim, Exhibit "E").

14. On March 11, 2008, Douglas Cassidy, a Delphi Proof of Claims Analyst sent PSI's counsel an e-mail (Exhibit "F") suggesting that he believed that PSI's claim was properly a post-petition claim.

15. On March 24, 2008, PSI's counsel e-mailed Mr. Cassidy a response (Exhibit "G") indicating that PSI believed it held a post-petition claim, but that it wished to avoid litigation, particularly over the "benefit to the estate" issue and had agreed to file the claim as a prepetition claim.

16. On March 27, 2008, DAS objected to PSI's claim as untimely. For reasons unknown, PSI's counsel did not receive Notice of this objection, although the Proof of Service reflects proper service (see Declaration of Max J. Newman, Exhibit "H").

17. As a result, PSI did not respond, and an order was entered on April 30, 2008 expunging claim 16802 (exhibit "I"). PSI received that claim on May 9, and immediately began discussions with Delphi's counsel regarding setting aside the April 30, 2008 order (see E-mail to Lyons, Exhibit "J")

18. Those negotiations were ultimately not successful, leading to this Motion (see Lyons' Email, Exhibit "K").

3

### Set Aside of April 30, 2008 Order

19. Under Fed. R. Bankr. P. 9024, Fed. R. Civ. P. 60(b) applies in bankruptcy cases. Under Fed. R. Civ. P. 60(b)(1), an order may be set aside if it results from "mistake, inadvertence, surprise or excusable neglect."

20. As set forth in the Declaration of Max Newman, PSI did not receive notice of the objection to its claim until it received a copy of the Order denying the claim on or about May 9, 2008. A failure of service to arrive, and therefore lack of knowledge about the need for a response is excusable.

21. PSI's claim is a meritorious claim. Throughout the many discussion of the claim, DAS never denied the validity of the claim. The discussion has merely been about priority and timing of the claim.

### Late Proof of Claim

22. Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993) and *In re Enron*, 419 F.3d 115 (2d Cir. 2005), a late claim should be allowed if it result from excusable neglect, rather than willfulness or unjustifiable conduct.

23. Here, PSI's claim was filed late entirely due to a good-faith dispute as to whether the claim arose prior to, or after the Petition Date, a dispute that would impact the priority of the claim (and the propriety of filing a Proof of Claim for its allowance).[2]

24. In considering whether to allow PSI's claim, the Court should consider: (i) the danger of prejudice to the debtor, (ii) the length of the delay and whether or not it would impact

---

[2] PSI believes that the Bar Date Order does not apply to it at all because it only affects "Creditors" – i.e. those whose Claims arose at the time of, or prior to the Petition Date.

4

the case, (iii) the reason for the delay, including whether it was within the control of the movant, and (iv) whether the movant acted in good faith.

25.    The first factor favors PSI – at this time, there is no danger of prejudice for DAS. PSI's claim amounts to approximately 0.01% of the total unsecured claims against the estate and the formerly existing cap on allowed unsecured debt imposed by the equity investors appears not to be relevant at this time.

26.    The second factor also favors PSI – PSI's delay was not long, and this case has not been fully administered. In fact, at present, the Debtors have confirmed a Plan, but whether that Plan will become effective is in doubt and neither the allowance nor the disallowance of PSI's claim will likely impact the status of the Plan.

27.    The fourth factor also favors PSI – its interpretation of the Purchase Order and the impact of its post-petition claim is reasonable, PSI has negotiated about its claim with DAS in good faith and PSI's ultimate decision to file a Proof of Claim, rather than seek an administrative claim demonstrates its willingness to compromise.

28.    In prior hearings in this case, the Court has held that the third factor – the reason for the delay -- is the most important. This factor also favors PSI. Admittedly, there may well have been things PSI could have done to bring this issue to a head (such as filing an earlier Administrative Claim Motion). However, PSI did not take this action because (a) it was expressly addressing this issue with DAS' operational, financial and legal management teams during the case, and (b) through those discussions, it sought to reach a consensual resolution with DAS, and to avoid legal fees for each side.

29. This is not a typical pre-petition claim, as DAS' obligation to pay amounts to PSI only became payable after the Petition Date, and the allowance of this claim, at this time, would not prejudice the Debtors.

30. Instead, it is similar to the allowance of a rejection damage claim for a lessor or party to a rejected executory contract – each of which is not covered by the Bar Date Order, each of which arises after the Petition Date.

31. This is not a case where allowance of PSI's claim would force the renegotiation of a myriad of settlements. In fact, PSI is not aware of any portion of Debtors' Confirmed Plan that would change as a result of the allowance of this claim.

32. PSI knew of the Bar Date, but did not believe that the Bar Date applied to it because its claim arose post-petition (and thus PSI was not a "Creditor" subject to the Bar Date and/or PSI's claim was entitled to administrative expense priority).

33. PSI has not "ducked" this issue or delayed resolution of this matter. Instead, throughout this case, it has been engaged in attempts to obtain payment through its commercial relationship with DAS.

### Allowance of Administrative Claim

34. As alternative relief, PSI seeks allowance of its claim for the Unpaid Tooling as an administrative claim.

35. No bar date has been set for Applications for Allowance of Administrative Claims, and, therefore, this claim is timely.

36. Until after the Petition Date, DAS had no obligation to make any payment on the Tooling POs. Instead, the Tooling POs specifically state that "Final Payment: Final invoice for tools will not be accepted until full PPAP approval has been documented. Supplier should

6

therefore ensure that notification of approval has been received before submitting final invoice. Refer also to payment terms on PO"

37.    The payment terms on the Tooling POs were "ZMN2 – Payment on 2nd, 2nd month (after invoice)."[3]

38.    Under the Tooling POs, DAS had no payment obligation until "full PPAP approval has been documented". Full PPAP approval for all of the Tools was documented on November 9, 2005 – after the Petition Date.[4]

39.    Under 11 U.S.C. §503(b)(1), the actual and necessary costs and expenses of preserving the bankruptcy estate are administrative expense claims. Claims for post-petition obligations of the debtor are administrative claims to the extent that they arose from a transaction between the Debtor-in-Possession and the claimant and benefited the estate. *In re Bethlehem Steel*, 479 F.3d 167, 172 (2nd Cir. 2007)("an expense is administrative only if it arises out of a transaction between the creditor and the .. debtor in possession, and only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business."). Until PPAP approval of the Tools, the Tooling PO was an executory contract which became property of the estate under 11 U.S.C. §541. Accordingly, PSI's transaction was with the estate.

40.    On PPAP approval, the Tools, including the Unpaid Tooling became property of DAS. Transfer of title of goods provides benefit to the estate (and, upon information and belief, was necessary to permit DAS to transfer title of the Unpaid Tooling to its customer, GM).

---

[3] This is not a case where an existing payment obligation had a due date after the Petition Date. Instead, under the plain language of the Tooling POs, until PPAP there was no payment obligation. At PPAP, PSI was required to submit an invoice for the Tools, and Delphi then was obligated to pay for the Tools second day, second month.

[4] The PPAP Approval Notice can also be interpreted to suggest that Approval occurred on October 11, 2005 and PSI was notified of that Approval on November 9, 2005.

7

41. Further, PPAP approval allowed PSI to use the Tools, including the Unpaid Tooling, to produce millions of dollars of post-petition goods for the GMX 381. This production also provides benefit to the estate.

42. Accordingly, PSI is entitled to an administrative claim in the amount of $153,750.

43. Recently, when presented with similar facts, another court found that the tooling supplier was entitled to an administrative claim. *In re Collins & Aikman*, 382 B.R. 751 (Bankr. E.D. Mich. 2008).

44. In that case, like ours, the tooling was delivered prior to the Petition Date, but PPAP approval was not granted until after the Petition Date. *Id. at* 757.

45. As in this case, the *Collins & Aikman* Debtor argued that the fact that the tooling was delivered prior to the Petition Date meant that there was no benefit to the estate from PPAP. *Id.* at 758.

46. The Collins & Aikman court rejected this argument because,

> The evidence overwhelmingly establishes that if after the petition date, all of C&A's tool suppliers had ceased working on tooling that had not achieved PPAP, the result would have been disastrous for C&A.

*Id.* at 760

47. Therefore the claimant was entitled to administrative expense priority for the tooling. *Id.* at 761.

48. It is neither necessary, nor appropriate to file a Proof of Claim for an administrative claim. See, 11 U.S.C. §503(a)("Request for payment of administrative expense" must be timely filed, 11 U.S.C. §503(b)(requiring notice and a hearing before allowance of an administrative claim). Instead, absent a contrary order of the Court, such a claim must be sought via Motion to the Bankruptcy Court.

8

49.     Accordingly, there can be no issue as to the timeliness of PSI's claim for an administrative expense.

WHEREFORE PSI requests that this Honorable Court enter an order in the form of that attached as Exhibit "A" either (a) setting aside the April 30, 2008 Order expunging its claim 16802 as untimely and allowing that claim, or (b) allowing PSI an administrative expense claim in the amount of $153,750, or (c) granting such other relief as is just and equitable.

DATED: New York, New York
         July 1, 2008

BUTZEL LONG, a Professional Corporation

By:    /s/ Robert Sidorsky
       Robert Sidorsky (RS 2490)
380 Madison Avenue
22nd Floor
New York, New York 10017
(212) 818-1110
sidorsky@butzel.com

Attorneys for Pioneer Speakers, Inc.