**Hearing Date: August 5, 2008**
                                **Hearing Time: 10:00 a.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Kurt Ramlo (KR 8629)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
|               Debtors. | : | (Jointly Administered) |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DEBTORS' SUPPLEMENTAL REPLY WITH RESPECT TO PROOF OF CLAIM NUMBER
16633 WITH RESPECT TO MICHIGAN SINGLE BUSINESS TAXES FOR THE PERIOD OF
JANUARY 1, 2005 THROUGH OCTOBER 7, 2005
<u>(STATE OF MICHIGAN DEPARTMENT OF TREASURY – SBT TAXES)</u>

("SUPPLEMENTAL REPLY –
STATE OF MICHIGAN DEPARTMENT OF TREASURY – SBT TAXES ")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Supplemental Reply With Respect To Proof Of Claim Number 16633 With Respect To Michigan Single Business Taxes For the Period Of January 1, 2005 Through October 7, 2005 (State Of Michigan, Department of Treasury – SBT Taxes) (this "Supplemental Reply") and respectfully represent as follows:

Preliminary Statement

1.  The State Of Michigan, Department of Treasury ("Michigan") filed proof of claim number 16633 ("Claim 16633") to assert, among other things, unpaid prepetition tax liability for 2005 under its now-repealed Single Business Tax ("SBT") Act. The following three issues remain with respect to the Debtors' objection to Claim 16633:

    (a)  Whether the SBT Act permits the Debtors to deduct in full their research and experimental expenditures ("R&E Expenses") when calculating their federal taxable income for SBT purposes where the Debtors had capitalized and amortized those R&E Expenses when calculating federal taxable income for federal income tax reporting purposes;

    (b)  If Michigan prevails on issue (a) above, whether Claim 16633 would be allowed in any amount other than $946,674.63[1] (as asserted by the Debtors); and

    (c)  Whether the Debtors must make "accelerated addbacks" of R&E Expenses because the SBT Act was repealed as of December 31, 2007 (resulting in a $1,108,429 prepetition claim).

---

[1] In the Debtors' Statement of Disputes Issues (as defined below), the Debtors stated that if Michigan prevails on issue (a) above, the Debtors' liability would be $949,842.08. Since the filing of the Statement of Disputed Issues (as defined below), the Debtors have reviewed and identified a necessary correction to their potential liability. The Debtors now believe that if Michigan prevails on issue (a) above, the Debtors would be liable for $946,674.63 for the period of January 1, 2005 through October 7, 2005 before accounting for any credits due to the Debtors.

2

    2.  The Debtors and Michigan have previously briefed in full the first issue set forth above and have relied on those briefs instead of restating those arguments in a second set of briefs. The parties have accordingly attached the prior briefs as exhibits to this round of briefs.[2] The Debtors contend that if Michigan prevailed on the first issue, Michigan's claim for 2005 SBT liability would be $946,674.63. In its Supplemental Response, Michigan did not challenge the amount set forth in the Debtors' Statement of Disputed Issues nor present any evidence on this second issue.

    3.  The third issue, regarding "accelerated addbacks," arises from Michigan's misapprehension of the function of certain "addbacks" made by the Debtors and described on a schedule of adjustments to their 2005 SBT return. As explained below, the Debtors capitalized and amortized their R&E Expenses (incurred in 1999 and 2002 through 2005) over ten years on their federal income tax returns, while for SBT purposes those same expenses were fully

---

[2] This issue was first set forth in the Debtors' Statement Of Disputed Issues With Respect To Proofs of Claim Numbers 6354, 6383, 9272, And 16633 (State of Michigan, Department of Treasury), dated November 9, 2007 (Docket No. 10884) (the "Original Statement of Disputed Issues"), which is attached as <u>Exhibit A</u> to the "Debtors' Statement Of Disputed Issues With Respect To Proof Of Claim Number 16633 With Respect To Michigan Single Business Taxes For The Period Of January 1, 2005 Through October 7, 2005 (State Of Michigan Department Of Treasury-SBT Taxes)," dated May 21, 2008 (Docket No. 13647) ("Statement of Disputed Issues").

Michigan incorporates its original arguments on this issue by attaching its original supplemental response, "State Of Michigan, Department Of Treasury's Supplemental Response To Debtors' Statement Of Disputed Issues With Respect To Proofs of Claim Numbers 6354, 6383, 9272 and 16633 (State Of Michigan, Department Of Treasury)," dated December 5, 2007 (Docket No. 11296) (the "Original Supplemental Response"), to its "State Of Michigan Department Of Treasury's Supplemental Response To Debtors' Statement Of Disputed Issues With Respect To Proof Of Claim Number 16633, With Respect To Michigan Single Business Taxes For The Period Of January 1, 2005 Through October 7, 2005 (State Of Michigan Department Of Treasury-SBT Taxes)," dated June 10, 2008 (Docket No. 13724) (the "Supplemental Response").

The Debtors' arguments on the issue are set forth in the Debtors' Supplemental Reply With Respect To Proofs Of Claim Numbers 6354, 6383, 9272, And 16633 (State of Michigan, Department of Treasury) dated December 19, 2007 (Docket No. 11551) (the "Original Supplemental Reply"), which is attached hereto as <u>Exhibit A</u>, and is marked to indicate those portions of the Original Supplemental Reply that are not relevant to the sole issue for which it is incorporated herein.

3

deducted in the year incurred. Both of these methods are permissible methods for calculating federal taxable income under the Internal Revenue Code.

    4.  Rather than submit a pro forma 2005 federal return showing a calculation of federal taxable income with a deduction of the full amount of R&E Expenses for SBT purposes, the Debtors submitted their 2005 federal return as filed along with a separate schedule of adjustments. Those adjustments reconcile the federal taxable income amount appearing on their federal return as filed to the federal taxable income used as the starting point (i.e., business income) of their SBT return. The schedule showed the adjustments to federal taxable income as reported on the Debtors' federal return (which included capitalization and amortization of R&E Expenses) that were made to calculate federal taxable income for SBT purposes (which included a deduction of the full amount of R&E Expenses). To avoid deducting the R&E Expenses more than once for SBT purposes, certain adjustments were made to "add back" amortizations of R&E Expenses incurred in prior years that were included on the 2005 federal return as filed because those expenses had already been deducted in full on the SBT returns as filed for 1999 and 2002 through 2004. A similar "addback" adjustment was made for 2005 R&E Expenses because they were also amortized on the 2005 federal return as filed, but deducted in full on the 2005 SBT return.

    5.  Michigan contends that the Debtors, on their 2005 SBT return, must accelerate the addbacks of R&E Expenses because the SBT was repealed as of December 31, 2007. In support of this position, Michigan first mischaracterizes the addbacks as "making Michigan whole," as recouping the expense deduction, and as a "recapture [of] the deduction" (instead of mere adjustments to calculate federal taxable income for SBT purposes). Michigan then reasons that because the addbacks would normally continue for ten years (the length of

4

R&E Expense amortization on the federal returns), the Debtors must condense, or "accelerate," the addbacks so that they are all made by the end of 2007.

    6.  This theory fails for at least three reasons.  First, the addbacks made by the Debtors serve a single and simple purpose—to calculate federal taxable income for SBT purposes with a deduction of the full amount of R&E Expenses.  The addbacks do not serve to make Michigan "whole" in any sense.  Rather than scheduling any addbacks at all, the Debtors could have calculated their federal taxable income for SBT purposes without any reference to federal taxable income as reported for federal purposes.  Instead, the Debtors could have prepared pro forma federal tax returns for SBT purposes, which pro forma returns would have deducted the full amount of R&E Expenses.  This would have obviated the need to do any schedule of adjustments or "addbacks."  The Debtors' addbacks, however, served the same function and brought about the same result—deducting for SBT purposes the full amount of R&E Expenses in the year incurred—a permissible treatment of R&E Expenses under the Internal Revenue Code.  Michigan's attempt to accelerate the addbacks misconstrues the function of the addbacks and would force the Debtors, when calculating federal taxable income for SBT purposes, to deduct less than the full amount of R&E Expenses.  This would prevent the Debtors from taking a permissible deduction when calculating federal taxable income.

    7.  Second, the accelerated addback theory also must fail because it is premised on a calculation of federal taxable income that is not recognized under the Internal Revenue Code.  The Internal Revenue Code allows R&E Expenses to be deducted in one of two ways: (a) deducted in full in the year incurred or (b) capitalized and amortized over ten years.  Michigan's accelerated addback theory applies neither of these approaches and therefore must fail.

8.      Finally, Michigan's accelerated addback theory contradicts the position that it asserts on the first issue listed above, i.e., that the Debtors' business income for SBT purposes must match exactly the federal taxable income reported on their federal Form 1120. In addition, there is no basis in the SBT or the newly enacted Michigan Business Tax ("MBT") for any "accelerated addbacks."

9.      Accordingly, for the reasons set forth more fully below, the Debtors request that this Court find that the Debtors have no additional liability for 2005 SBT taxes, and, to the extent not previously disallowed, Claim 16633 should be disallowed.

Background

10.     During the 2005 tax year, the Debtors made over $1.6 billion in expenditures that constituted R&E Expenses under I.R.C. § 174. As noted above, when the Debtors computed their 2005 federal taxable income for federal income tax reporting, the Debtors elected to capitalize $1,002,000,000 of these R&E Expenses and to amortize them over ten years. Thus, $100,200,000 of the capitalized 2005 R&E Expenses were deducted in computing their 2005 federal taxable income, and the same amount would be deducted when computing federal taxable income for each of the nine years after 2005. (See Decl. of James P. Whitson ¶ 4 executed on July 8, 2008 (attached hereto as Exhibit B)).

11.     The Debtors' decision to defer allowable deductions on their 2005 federal income tax return at first impression seems counterintuitive. This decision was predicated on the Debtors' situation of having available foreign tax credits and an unusually large amount of foreign source income in 2005. The Debtors capitalized and amortized their 2005 R&E Expenses on their filed Form 1120 for 2005 so as to reduce the amount of the domestic source loss that would offset foreign source income. This produced an amount of tax that was based solely on foreign source income and allowed the Debtors to use certain foreign tax credits to

6

offset over 99% of their 2005 federal tax liability.[3] The foreign tax credits that were utilized would otherwise have expired if not used within ten years from the years in which they originated. In this way, the Debtors were able to (i) use certain foreign tax credits to offset substantially all of the Debtors' 2005 federal tax liability and (ii) preserve additional R&E Expense amortization deductions for future tax years. Because the foreign tax credits would have expired within ten years, and because foreign tax credits can offset only tax on foreign source income while future deductions of R&E Expenses can offset both domestic and foreign source income, the Debtors opted to maximize the application of the foreign tax credits in 2005. Accordingly, the Debtors elected under I.R.C. § 59(e) to amortize the 2005 R&E Expenses over ten years and thereby increase their 2005 federal tax liability, before credits. (Whitson Decl. ¶ 5.)

12.     In contrast, the SBT does not contain or provide for use of foreign tax credits to offset SBT liability. Thus, the Debtors had no reason to defer their 2005 R&E Expenses with respect to their 2005 SBT return and thereby increase their SBT liability. When calculating their 2005 SBT "business income," therefore, the Debtors chose to calculate their federal taxable income for SBT purposes by deducting the full amount of R&E Expenses for that tax year.[4] The Debtors included a schedule with their 2005 SBT return showing the calculation for SBT purposes of federal taxable income, which under the SBT Act is "business income." A copy of this schedule is attached hereto as <u>Exhibit C</u>. (Whitson Decl. ¶ 6.) As noted above, the schedule shows adjustments to federal taxable income as reported on the Form 1120 to calculate the federal taxable income for SBT purposes. This schedule could have been substituted or

---

[3]     A fraction of 1% of the tax pertained to "passive basket" income for which the debtors did not have sufficient "passive basket" foreign tax credits to offset the entire tax. (Whitson Decl. ¶ 5.)

[4]     The group of Delphi entities filing the consolidated federal return was different than the group of Delphi entities filing the consolidated SBT return. (Whitson Decl. ¶ 7.)

7

replaced by a pro forma Form 1120 to show the calculation of federal taxable income for SBT purposes. (Id.)

13. On March 14, 2008, this Court entered an order[5] approving the parties' stipulation that Claim 16633 be reduced and capped such that in no event will Claim 16633 be allowed (i) in an amount exceeding $1,150,684.80 or (ii) on account of anything other than SBT taxes for the period of January 1, 2005 through October 7, 2005.

14. The Debtors assert that if they were required to calculate their 2005 SBT liability by using their unadjusted federal taxable income from their Form 1120 that was filed with the Internal Revenue Service as their "business income" for SBT purposes, their 2005 SBT liability for the period of January 1, 2005 through October 7, 2005 would be $946,674.63 before accounting for any credits due to the Debtors. (See Whitson Decl. ¶ 12.)

15. The Debtors do not contest Michigan's position that if the Debtors were required to accelerate addbacks in the manner asserted by Michigan, Michigan's prepetition claim for unpaid 2005 SBT liability would be $1,108,429. (Whitson Decl. ¶ 13.)

## Argument

16. The Debtors properly calculated their 2005 SBT liability on their SBT return as filed. Accordingly, the Debtors believe that they do not owe additional amounts for 2005 SBT taxes and any argument by Michigan to the contrary should be rejected.

A. <u>The Debtors Properly Deducted 2005 R&E Expenses In Full On Their 2005 SBT Return</u>

17. As noted above, the Debtors incorporate their prior brief on the legitimacy of deducting 2005 R&E Expenses in full for SBT purposes notwithstanding that those same

---

[5] "Joint Stipulation And Agreed Order (I) Disallowing And Expunging Proofs Of Claim Numbers 6354, 6383, And 9272, (II) Compromising And Allowing Claim 16724 And (III) Capping Claims 9273 And 16633 (State of Michigan, Department Of Treasury – SBT Taxes)" (Docket No. 13118).

8

expenses were capitalized and amortized over ten years for federal income tax purposes. (<u>Exhibit A</u> hereto.)

B.    <u>The Debtors' 2005 SBT Liability Is No Greater Than $946,674.63</u>

   18. If the Debtors were required to calculate their 2005 SBT liability by using unadjusted federal taxable income from their filed Form 1120 as their "business income" for SBT purposes, their 2005 SBT liability for the period of January 1, 2005 through October 7, 2005 would be $946,674.63 before accounting for any credits due to the Debtors.  (<u>See</u> Whitson Decl. ¶ 12.)  Michigan presents no argument or evidence to the contrary.

C.    <u>Michigan's "Accelerated Addback" Assertion Is Flawed And Impermissible Under The SBT Act</u>

   19. Michigan asserts that the Debtors must nevertheless accelerate their addbacks of amortized R&E Expenses (resulting in a $1,108,429 prepetition claim for 2005 SBT liability).  Michigan's justification for this assertion is unfounded, confusing, and self-contradictory.

     (a) <u>Michigan's "Accelerated Addbacks" Prevent The Debtors From Taking Legitimate R&E Expense Deductions</u>

   20. Michigan's primary argument and misconception in support of its "accelerated addback" theory are that the addbacks would make Michigan "whole" for the Debtors' 2005 SBT taxes.  This argument misses the point of the addbacks altogether.  As permitted under the Internal Revenue Code, when calculating federal taxable income to be used as SBT "business income," the Debtors chose to deduct the full amount of R&E Expenses, while such expenses were amortized over ten years on the Debtors' federal return.  Importantly, both of these methods are permissible for deducting R&E Expenses under the Internal Revenue Code.

   21. The Debtors prepared and submitted with their 2005 SBT return a schedule of adjustments to the federal taxable income amount that appeared on their federal

9

income tax return (which included capitalization and amortization of R&E Expenses).  The adjustments showed the federal taxable income amount that results from the Debtors' deduction of R&E Expenses in full.  The deduction of 2005 R&E Expenses in full is shown by the line item entitled "Reversal of R&E Capitalization – Delphi Corporation."  (Exhibit C.)  As shown below, however, this "reversal" line item by itself would not accurately reflect the full deduction of 2005 R&E Expenses.  (Whitson Decl. ¶ 8.)

22.    Because one-tenth amortization of the 2005 R&E Expenses appeared on the federal Form 1120, the adjustments also included an addback of this one-tenth amortization.  This adjustment is shown in the line item entitled "Addback of 2005 Amortization – Delphi Corporation."  (Exhibit C.)  In addition, R&E Expenses incurred in prior years (1999 and 2002 through 2004), and fully deducted for SBT purposes, were also amortized on the Debtors' 2005 federal income tax return.  Thus, the Debtors' adjustments also included addbacks of those prior year amortizations, which were reflected in three separate line items that all begin with "Addback of Prior Years' Amortizations."  (Id.)  All of these adjustments resulted in an amount equal to the Debtors' 2005 federal taxable income after deducting all 2005 R&E Expenses in full and accounting for R&E Expenses incurred in 1999 and 2002 through 2004 which had already been deducted in full in prior years for SBT purposes.  (Whitson Decl. ¶ 9.)

23.    Had the Debtors not made these addbacks, the Debtors would have effectively been deducting under the SBT certain R&E Expenses more than once, a result the Debtors were intentionally trying to avoid.  In fact, rather than using federal taxable income as reported on Form 1120 as the starting point for calculating SBT "business income," the Debtors could have instead calculated their federal taxable income by preparing a pro forma Form 1120 that deducted the full amount of R&E Expenses for 2005 and accounted for the prior year

10

deductions in full of the R&E Expenses. This would have obviated the need for addbacks altogether; yet, it would have yielded the same result—amortizing R&E Expenses for federal purposes but adding back those same amortizations for SBT purposes to ensure that R&E Expenses were deducted once, and only once. (Whitson Decl. ¶ 10.)

24. The following three charts illustrate that the reconciling items or "addbacks" made by the Debtors served the sole purpose of substituting for separately prepared Forms 1120 to calculate federal taxable income for SBT purposes:

| Federal Income Tax – Federal Returns—Forms 1120 | | | | | |
|---|---|---|---|---|---|
| Year | 1999 | 2002 | 2003 | 2004 | 2005 |
| R&E Expenses capitalized | 2,795,550 | 1,102,849,497 | 1,050,331,255 | 1,328,995,124 | 1,002,000,000 |
| Amount amortized (**deducted**) when calculating federal taxable income | **(279,555)** | **(110,284,949)** | **(105,033,125)** | **(132,899,512)** | **(100,200,000)** |
| | | (279,555) | (110,284,949) | (105,033,125) | (132,899,512) |
| | | | (279,555) | (110,284,949) | (105,033,125) |
| | | | | (279,555) | (110,284,949) |
| | | | | | (279,555) |

| Michigan Single Business Tax – Adjustment Schedules To SBT Returns | | | | | |
|---|---|---|---|---|---|
| Year | 1999 | 2002 | 2003 | 2004 | 2005 |
| Amortization deductions included within "federal taxable income" from filed Forms 1120 | (279,555) | (110,284,949) | (105,033,125) | (132,899,512) | (100,200,000) |
| | | (279,555) | (110,284,949) | (105,033,125) | (132,899,512) |
| | | | (279,555) | (110,284,949) | (105,033,125) |
| | | | | (279,555) | (110,284,949) |
| | | | | | (279,555) |
| R&E Expenses **deducted in full** (through reversal adjustments) | **(2,795,500)** | **(1,102,849,497)** | **(1,050,331,255)** | **(1,328,995,124)** | **(1,002,000,000)** |
| Schedule of "addback" adjustments to calculate federal taxable income for SBT purposes | 279,555 | 110,284,949 | 105,033,125 | 132,899,512 | 100,200,000 |
| | | 279,555 | 110,284,949 | 105,033,125 | 132,899,512 |
| | | | 279,555 | 110,284,949 | 105,033,125 |
| | | | | 279,555 | 110,284,949 |
| | | | | | 279,555 |

| Michigan Single Business Tax – Potential Pro Forma Federal Returns—Forms 1120 | | | | | |
|---|---|---|---|---|---|
| Year | 1999 | 2002 | 2003 | 2004 | 2005 |
| R&E Expenses **deducted in full** in the year incurred (rather than capitalized) | **(2,795,550)** | **(1,102,849,497)** | **(1,050,331,255)** | **(1,328,995,124)** | **(1,002,000,000)** |

(Whitson Decl. ¶ 11.)

11

25. The addbacks, therefore, have nothing to do with making Michigan "whole" or permitting Michigan to "recoup" expenses. To the contrary, the Debtors would be prejudiced and disadvantaged if they were required to increase their SBT liability based on Michigan's assertion of "accelerated addbacks." Contrary to Michigan's assertion, nothing in the SBT Act allows Michigan to "fully recoup" deductions that are otherwise allowable to taxpayers. The Debtors were entitled to deduct their 2005 R&E Expenses once and that is all that the Debtors have done. Requiring any form of "accelerated addbacks" would preclude the Debtors from taking a legitimate deduction and result in an increased liability for the Debtors and a windfall for Michigan at the Debtors' expense.

    (b) <u>Applying "Accelerated Addbacks" Results In Impermissible SBT Business Income</u>

26. The Internal Revenue Code allows a taxpayer to account for R&E Expenses in one of two ways: (i) deduct in full in the year incurred or (ii) capitalize and amortize over ten years. Michigan's attempt to calculate business income using "accelerated addbacks" accounts for R&E Expenses in an impermissible third way and thereby would result in a business income that could not be a viable federal taxable income under any version of the Internal Revenue Code. In other words, although the Debtors deducted their R&E Expenses in full on their 2005 SBT return, while capitalizing and amortizing those expenses on their 2005 federal income tax return, both of these methods are permissible methods under the Internal Revenue Code for deducting R&E Expenses.

27. The Debtors' schedule of addbacks of current and prior year R&E Expense amortizations included on their 2005 federal tax return simply reconciles their use of the permissible method of amortizing one-tenth of the R&E Expenses on their federal return to their use of the other permissible method of deducting the full amount of R&E Expenses. But

12

applying Michigan's "accelerated addback" approach would result in the Debtors deducting on their SBT return less than the full amount of R&E Expenses, but more than the one-tenth amortizations included on the federal return. This is not a permissible method of accounting for R&E Expenses under I.R.C. § 59(e), and accordingly, such a method may not be used to compute business income under the SBT Act. Accordingly, Michigan's accelerated addback assertion must be denied.

       (c)  <u>Michigan's Arguments For "Accelerated Addbacks" Are Self-Contradictory And Not Supported By Statute</u>

    28.  Michigan's assertion of "accelerated addbacks" contradicts Michigan's self-proclaimed policy that SBT "business income" must be exactly equal to the federal taxable income number that appears on the taxpayer's filed Form 1120. Indeed, on the one hand, and as previously briefed by the parties, Michigan asserts that the Debtors must calculate their SBT liability for 2005 by using "business income" that is exactly equal to federal taxable income reported on their filed 2005 federal income tax return. (Original Supplemental Response ¶¶ "17-20," at 8; Supplemental Response ¶ 14, at 6.) Yet, on the other hand, Michigan asserts under its accelerated addback theory that the Debtors must compute their 2005 SBT liability by using a different "business income," one that includes non-statutory "accelerated addbacks" and is not equal to either federal taxable income as reported in their filed 2005 federal income tax return or federal taxable income otherwise calculated under the Internal Revenue Code. Thus, if Michigan were to prevail on the first issue discussed herein and "business income" must be the exact federal taxable income as it appears on the Form 1120 as filed, Michigan's "accelerated addback" argument automatically fails.

    29.  But aside from this self-contradictory position, no provision in the SBT Act permits or requires "accelerated addbacks." Michigan admits that the "1/10 add back of

13

R&E expenses is not recognized in Michigan law." (Supplemental Response ¶ 15.) Moreover, Michigan does not—and cannot—point to any provision of the SBT Act that permits "accelerated add backs." This is not surprising because using federal taxable income to derive SBT "business income" allows for only two possible methods for deducting R&E Expenses: (i) deduct in full or (ii) amortize over ten years. The Debtors' "1/10 add backs" simply brings the Debtors from the permissible approach that they followed when calculating federal taxable income on their federal Form 1120 (amortize R&E Expenses over ten years) to the other permissible approach that they followed when calculating federal taxable income for SBT purposes (deducting the R&E Expenses in full). "Accelerated addbacks" necessarily involve a computation of federal taxable income that is not in compliance with the Internal Revenue Code and therefore must not be permitted.

30.     Michigan also attempts to justify the "accelerated addbacks" by pointing out that the SBT Act was repealed on December 31, 2007 and "[t]here are no statutory provisions in the new Michigan Business Tax that allow R&E expense addbacks, at any rate." (Supplemental Response ¶ 16.) This argument, although imaginative, is unfounded because only those provisions of the SBT specifically addressed by statutory transitional rules are relevant and applicable under the newly enacted MBT. For example, there are specific transitional rules under the MBT Act that allow taxpayers to continue to carry forward to the MBT regime certain losses or credits incurred under the SBT system. See Mich. Comp. Laws § 208.1203(4) (2008) (SBT business loss); Mich. Comp. Laws § 208.1435 (2008) (SBT historic preservation credit); Mich. Comp. Laws § 208.1437 (2008) (SBT brownfield credit). But without these specific transitional rules, items that were incurred under the SBT would not carry forward to the MBT.

14

31.     This point is aptly illustrated by the accounting for the cost of depreciable assets under the SBT Act and the MBT Act, which accounting is almost identical to the R&E Expense addbacks at issue here. Under Mich. Comp. Laws § 208.23 (1999),[6] taxpayers were required to deduct in the year incurred the full cost of tangible assets that were otherwise depreciable over a period of years under the Internal Revenue Code. When computing the taxpayer's SBT tax base in each subsequent year, the SBT Act required the taxpayer to make an addition to "business income" under the SBT of the depreciation that was deducted on the taxpayer's federal tax return. Mich. Comp. Laws § 208.9(4)(c). Therefore, for example, if a commercial building was placed into use in 1999, the full cost of the asset would have been deducted for SBT purposes in 1999. The same asset, however, could have been depreciated using a straight line method over 31.5 years for federal income tax reporting purposes beginning in 1999. The MBT Act, however, does not contain any provision requiring an addition of the annual federal depreciation expense to MBT business income when calculating MBT liability. Thus, any depreciation deductions taken by taxpayers on their federal income tax returns in years after 2007 for assets acquired in years before 2008 for which capital acquisition deductions were allowed under the SBT Act will not be additions to business income when computing liability under the MBT. Without the addition of these post-2007 depreciation expenses, a taxpayer may effectively obtain the benefit of deducting a partial cost of the asset more than once, and nothing in either SBT or MBT requires the taxpayer to accelerate theoretical post-2007 depreciation additions so that they are fully recaptured by December 31, 2007, when the SBT ended. Under

---

[6] The 1999 provision of the SBT Act that required taxpayers to deduct in the year incurred the full cost of tangible assets that are otherwise depreciable under the Internal Revenue Code was repealed and replaced with the Investment Tax Credit. Mich. Comp. Laws § 208.35a. Nevertheless, for assets that were deducted in full in 1999, the corresponding depreciation on the federal Form 1120 income tax returns continued for many years after 1999, and in many cases beyond 2007.

15

the MBT, a similar result occurs with respect to R&E Expenses that were previously deducted in full for SBT purposes, but amortized over ten years for federal income tax reporting purposes.

        32.      There is nothing unusual about this result, for either capital acquisition or R&E Expense deductions. The SBT and MBT are fundamentally different in nature. As disclosed by Michigan, the "SBT is a Value Added Tax (VAT). Value added taxes are levied on a 'Services Consumed' or 'Benefits Received' principle. The SBT replaced taxation of net income with value-added taxation." See State of Michigan Department of Treasury, at http://www.michigan.gov/taxes/0,1607,7-238-43533-154440--,00.html. In contrast to the "value added tax," the MBT is both an "income based" and a "gross receipts based" tax. See Michigan Department of Treasury, Michigan Business Tax, available at, http://www.michigan.gov/taxes/0,1607,7-238-46621-169399--,00.html. By changing the fundamental purpose of the tax, it follows that deductions or addbacks that may have remained applicable during the life of the SBT would no longer be applicable afterward, under a new—and fundamentally different—MBT Act. Because neither the SBT nor MBT address the addbacks of R&E Expenses, there is no basis to require "accelerated addbacks."

        (d)      "Accelerated Addbacks" Are Not Allowable Additions To SBT Tax Base Under SBT Act

        33.      Michigan's "accelerated addback" theory is not only irrelevant to computing SBT business income, but it is also irrelevant to making any adjustments to business income to determine the tax base under the SBT. In computing the Debtors' SBT liability for 2005, the sole statutory additions that can be made to business income are those included in Mich. Comp. Laws § 208.9. This provision of the SBT Act contains no adjustment for any type of "accelerated addback" or any similar adjustment for R&E Expenses. Thus, no addbacks of R&E Expenses (accelerated or not) are authorized under Mich. Comp. Laws § 208.9.

16

Conclusion

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging Claim 16633 and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
July 8, 2008

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 9331)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

- and -

By:  /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Kurt Ramlo (KR 8629)
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession