Exhibit A

Restructuring And Exchange Agreement

Final Execution Copy

# RESTRUCTURING AND EXCHANGE AGREEMENT

This Restructuring and Exchange Agreement (the "**Agreement**"), is entered into as of July __, 2008 by and between Delphi Automotive Systems LLC ("**Delphi**"), a Delaware limited liability company, with its principal place of business at 5725 Delphi Drive, Troy, Michigan 48098 and Ener1, Inc. ("**Ener1**"), a Florida corporation, with its principal place of business at 500 West Cypress Creek Road, Suite 100, Fort Lauderdale, Florida 33309.

## WITNESSETH

**WHEREAS**, Delphi and Ener1 each owns equity in EnerDel, Inc (the "**Company**"), a Delaware corporation, with its principal place of business at 8640 Hague Road, Indianapolis, IN 46256;

**WHEREAS**, Delphi owns 19,500,000 shares of the Company's common stock, par value $0.01 per share (the "**Common Stock**");

**WHEREAS**, Delphi owns eight thousand (8,000) shares of Series A preferred stock of the Company, par value $0.01 per share, having a liquidation value of $1,000 per share (the "**Preferred Stock**");

**WHEREAS**, Delphi owns warrants entitling the holder thereof to purchase up to 750,000 fully paid and non-assessable shares of Ener1 common stock, par value $0.01 per share (the "**Ener1 Common Stock**") at an initial exercise price per share of $7.00, subject to adjustment in accordance with the terms of the warrants (the "**Original Warrants**");

**WHEREAS**, Ener1 currently owns 80,500,000 shares of Common Stock;

**WHEREAS,** Delphi commenced a case under chapter 11 of Title 11 of the United States Code, 11 U.S.C. Sections 101 et seq. (the "**Bankruptcy Code**") on October 8, 2005 in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") as Case No. 05-44481 (RDD) (the "**Case**");

**WHEREAS**, pursuant to, *inter alia*, Sections 363 of the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure, Delphi wishes to exchange all of the shares of Common Stock and Preferred Stock owned by Delphi (the "**Shares**") to Ener1, for cash, Ener1 Common Stock, and strike price adjustments to the Original Warrants, and Ener1 wishes to consummate the foregoing exchange, on the terms and subject to the conditions set forth in this Agreement;

**WHEREAS**, the effectiveness of this Agreement and the exchange of the Shares hereunder are subject to the approval of the Bankruptcy Court; and

**WHEREAS**, Delphi and Ener1 are parties to a Formation, Subscription and Stockholders' Agreement, dated as of October 20, 2004 and amended as of December 23, 2004 (the "**Formation Agreement**"), and, in connection with the exchange of the Shares hereunder, the parties wish to terminate certain obligations and liabilities of the parties under the Formation Agreement;

**NOW THEREFORE**, in consideration of the promises and of the mutual covenants and agreements contained herein, the parties agree as follows:

1.  **Definitions**. As used herein, the following terms have the meanings indicated:

    1.1.  "**Affiliate**" of a Person shall mean any other Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.

    1.2.  "**Approval Order**" means an order of the Bankruptcy Court that is in form and substance reasonably satisfactory to Ener1 approving this Agreement and all of the terms and conditions hereof, and approving and authorizing Delphi to consummate the transactions contemplated hereby, including the transfer of all of the Shares to Ener1. The Approval Order shall approve this Agreement without any material modification or change, and the Approval Order shall also find and provide, among other things, that (i) the transactions contemplated hereby and by all other agreements, documents and instruments contemplated in connection with this Agreement are in good faith and otherwise satisfy the provisions of Section 363 of the Bankruptcy Code, (ii) Delphi has complied with the notice requirements of Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and any applicable rules of the Bankruptcy Court with respect to the transactions contemplated by this Agreement and by all other agreements, documents and instruments contemplated in connection with this Agreement, (iii) the terms and conditions of this Agreement are fair and reasonable, valid, binding and enforceable, (iv) the Exchange Consideration represents fair value for the Shares, (v) Delphi's execution of and performance under this Agreement is in the best interests of Delphi's estate and its creditors, (vi) Delphi is authorized to enter into and perform under this Agreement, and (vii) at the Closing, except as expressly set forth in this Agreement, the Shares shall be transferred to Ener1 free and clear of any and all Liens to the extent permitted under Section 363 of the Bankruptcy Code.

    1.3.  "**Business Day**" means any day other than a Saturday, Sunday or a legal holiday on which banking institutions in the State of New York are not required to open.

    1.4.  "**Certificate of Termination**" means the certificate in the form of Exhibit B hereto, having the effect of terminating certain provisions of the Formation Agreement.

    1.5.  "**Confidential Information**" means any of the Company's technical or business information, regardless of whether such information is in written, oral, graphic, physical, electronic or other form, which may include, without limitation, patents, patent applications, inventions, inventor's rights, copyrights, utility models, industrial or other designs, trade secrets, mask works, scientific knowledge, know-how, show-how, processes, procedures, formulae, products, drawings, materials, apparatus, methods, customer or supplier specifications or requirements, computer software and other data,

2

technical documentation or specifications, plans, records, test results, permissions, licenses and approvals, telephone numbers, e-mail addresses and names, techniques, business operations, financial information, customer and/or supplier information, distribution information, and other records and information.

1.6. "**Consent**" means any consent, waiver, authorization, order or approval, filing, registration or notification.

1.7. "**Exchange Consideration**" has the meaning specified in Section 2.3 below.

1.8. "**Governmental Entity**" shall mean any (i) federal, state, local, municipal, foreign or other government; (ii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); or (iii) body exercising, or entitled to exercise any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature, including any arbitral tribunal.

1.9. "**HSR Act**" shall mean the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and any successor statute and the rules and regulations thereunder or under any successor statute.

1.10. "**Lien**" means any claim (as defined in the Bankruptcy Code), pledge, option, charge, hypothecation, easement, security interest, right-of-way, encroachment, mortgage, deed of trust, imperfection of title, prior assignment or other encumbrance of any kind or nature whatsoever.

1.11. "**Material Adverse Effect**" means, with respect to a party, an effect on (i) the consolidated business, properties, assets, operations, results of operations or financial condition of such party, or (ii) the ability of such party to perform its obligations under this Agreement that, in any such case, is material and adverse.

1.12. "**Person**" shall mean an individual, a partnership, a joint venture, an association, a corporation, a business trust, a limited liability company, a trust, an unincorporated organization, a joint stock company, a labor union, an estate, a Governmental Entity or any other entity.

2. **EXCHANGE OF SHARES**.

2.1. <u>Exchange</u>.  Upon and subject to the terms and conditions of this Agreement and entry of the Approval Order, at the closing (the "**Closing**"), Delphi shall transfer and deliver to Ener1, and Ener1 shall acquire and accept, the Shares, free and clear of any Liens to the extent permitted under Section 363 of the Bankruptcy Code.

3

2.2. <u>Closing; Closing Date</u>. The Closing shall occur on the first Business Day following the day on which all conditions set forth in Section 6 of this Agreement have been satisfied or waived, or on such other date as the parties hereto shall mutually agree, such date to be as soon as practicable following entry of the Approval Order and in no event later than the date specified in Section 7.1(b) hereof (the "**Effective Date**").

2.3. <u>Exchange Consideration</u>.  In consideration for the delivery of the Shares by Delphi at the Closing, Ener1 shall deliver to Delphi, as consideration for the Shares (the "Exchange Consideration"), the following:

(a) 2,857,143 shares of Ener1 Common Stock (the "**Ener1 Stock Consideration**"), registered in the name of Delphi or its designated Affiliate, containing no legends or restrictions on transfer other than a legend specifying compliance with applicable federal securities laws; and which legend, if any, shall be removed at the request of Delphi following the date on which such shares can be sold to the public without limitation pursuant to Rule 144 under the Securities Act of 1933, as amended, or the rules promulgated thereunder (the "**Securities Act**");

(b) $8,000,000 cash (the "**Cash Consideration**") in immediately available funds to be delivered by wire transfer to an account or accounts specified by Delphi in writing delivered to Ener1 no later than the Business Day immediately preceding the Closing Date; and

(c) revised warrants in exchange for the Original Warrants (the "**Revised Warrants**") delivered as set forth in Section 2.4 hereof; the Revised Warrants shall be in the form of Exhibit A hereto, shall have an exercise price of per share price of $5.25 and shall be exercisable into 750,000 shares of Ener1 Common Stock, subject to adjustment in accordance with the terms of the Revised Warrants.

2.4. <u>Delivery of Shares by Delphi</u>.  At the Closing, simultaneous with and conditioned upon the deliveries to be made by Ener1 pursuant to Section 2.3 hereof, Delphi shall deliver certificates representing the Shares, duly endorsed for transfer to Ener1.

2.5. <u>Currency</u>. All dollar amounts referred to in this Agreement are in the lawful money of the United States of America.

3. **REPRESENTATIONS AND WARRANTIES OF DELPHI**.  Delphi makes the following representations and warranties to Ener1 regarding, among other things, its authority to enter into this Agreement and its ownership of the Shares.  Except as specifically set forth in this Section 3, Delphi makes no other representations or warranties, express or implied, with respect to the Shares or the Company.

3.1. <u>Existence, Standing and Qualification</u>.  Delphi is a limited liability company validly existing and in good standing under the laws of the State of Delaware, and has all requisite power and authority to own the Shares.

4

3.2. <u>Authority, Power and Binding Effect</u>.  Subject to the entry of the Approval Order, the execution and delivery of, and the performance of all obligations under, this Agreement and all other agreements, documents and instruments contemplated in connection with this Agreement to be executed and delivered by Delphi and the consummation by Delphi of the transactions contemplated hereby and thereby have been duly authorized by all necessary corporate action on the part of Delphi.  Subject to the entry of the Approval Order, Delphi has all requisite corporate power and authority to execute, deliver and perform its obligations under this Agreement and all other agreements, documents and instruments contemplated in connection with this Agreement to which it is a party and to consummate the transactions contemplated hereby and thereby. Delphi has duly executed and delivered this Agreement and, on or prior to the Closing Date, Delphi will duly execute and deliver all other agreements, documents and instruments required to be executed and delivered by Delphi pursuant to this Agreement. Upon the entry of the Approval Order, this Agreement will be, and the other agreements, documents and instruments executed by or on behalf of Delphi in connection herewith when executed and delivered will be, the legal, valid and binding obligations of Delphi, enforceable in accordance with their respective terms.

3.3. <u>Conflicts and Consents</u>.  Assuming (i) the entry of the Approval Order, (ii) the execution and delivery of the Certificate of Termination, and (iii) compliance with the requirements of the HSR Act (if any), none of the execution and delivery of, or the performance of the obligations under, this Agreement and all other agreements, documents and instruments contemplated in connection with this Agreement to be executed and delivered by Delphi and the consummation by Delphi of the transactions contemplated hereby and thereby, will (a) materially conflict with or result in a material breach of the certificate of formation, operating agreement or other organizational document of Delphi, (b) conflict with or result in a breach or default, or give rise to any right of acceleration, payment, amendment, cancellation or termination, under any agreement or other instrument to which Delphi is a party or by which Delphi or any of its respective properties or assets is bound, or (c) violate any law applicable to Delphi or any of its respective properties or assets, except, with respect to clauses (b) and (c), such conflicts, breaches, defaults or violations that would not reasonably be expected to have a Material Adverse Effect. Other than the entry of the Approval Order, no consent from any Person, including any required approvals under its debtor-in-possession financing agreements, the absence of which would reasonably be expected to have a Material Adverse Effect, is required in connection with this Agreement and all other agreements, documents and instruments contemplated in connection with this Agreement and the consummation by Delphi of the transactions contemplated hereby and thereby.

3.4. <u>Ownership of Shares</u>.  The Shares are owned by Delphi and, subject to entry of the Approval Order, the satisfaction (or waiver by the appropriate party) of the conditions to Closing specified herein, and Delphi's receipt of the Exchange Consideration, upon delivery of the Shares at the Closing, Delphi shall transfer

5

to Ener1 good and marketable title to the Shares free and clear of all Liens to the extent permitted under section 363 of the Bankruptcy Code. At the Closing, the parties shall take all action necessary in order to render inapplicable any restrictions on transfer, rights of first refusal and preemptive rights contained in the Company's Certificate of Incorporation or in the Formation Agreement.

3.5. <u>Brokers</u>. Delphi has not employed any investment bank, broker or finder or incurred any liability for any other investment banking, brokerage, finders' or similar fees or commissions in connection with the transactions contemplated by this Agreement.

3.6. <u>Disclosure.</u>  None of the information contained in the representations and warranties of Delphi set forth in this Agreement, including any Exhibits and Schedules referenced herein, or in the lists and other information furnished to Ener1 in connection with the transactions contemplated hereby, or in the certificates delivered or to be delivered in connection herewith, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements herein or therein not misleading.

4. **REPRESENTATIONS AND WARRANTIES OF ENER1**.  Ener1 hereby makes the following representations and warranties to Delphi. Except as specifically set forth in this Section 4, Ener1 makes no other representations, warranties or covenants, express or implied.

4.1. <u>Organization of Ener1</u>.  Ener1 is a corporation duly incorporated, validly existing and in good standing under the laws of the State of Florida.  Ener1 is duly qualified to do business and in good standing as a foreign corporation and licensed or qualified to transact business in each jurisdiction in which the nature of the properties owned or leased by Ener1 or used in connection with its business requires Ener1 to be so licensed or qualified, other than such failures to be so licensed or qualified which would not have a Material Adverse Effect.

4.2. <u>Authority Relative to this Agreement</u>.  Ener1 has all necessary corporate power, authority and capacity to enter into this Agreement, to deliver the Purchase Price and to perform its other obligations hereunder. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by all necessary corporate action on the part of Ener1 and, upon such execution and delivery, and assuming the entry of the Approval Order, this Agreement shall constitute the legal, valid and binding obligation of Ener1, enforceable in accordance with its terms.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, including without limitation the delivery of the Revised Warrants, do not and will not result in a breach or violation of, or a default under, any statute applicable to Ener1, any agreement to which it is a party or by which it or any of its properties are bound, or any order, judgment, decree, rule or regulation of any court or any governmental agency or body having jurisdiction over it or its properties, which breach, violation or default is reasonably likely to have a Material Adverse Effect.

4.3. <u>Capitalization</u>.  The number of authorized and outstanding shares of common stock and preferred stock of Ener1 is as described in the most recent SEC Report (as defined below) filed by Ener1.  Upon issuance of the Ener1 Stock Consideration, and receipt of the consideration therefore in accordance with the terms hereof, the Ener1 Stock Consideration will be validly issued, fully paid and nonassessable.  No class of capital stock of Ener1 is entitled to preemptive rights.  Except for the Warrants and, except as described in the SEC Reports (as defined below) filed by Ener1 prior to the date hereof, there are no outstanding options, warrants, scrip, rights to subscribe to, calls or commitments of any character whatsoever relating to, or securities or rights convertible into, shares of any capital stock of Ener1, or contracts, commitments, understandings, or arrangements by which Ener1 is or may become bound to issue additional shares of its capital stock or options, warrants or rights to purchase any shares of its capital stock.  Ener1 has not offered or sold any shares of capital stock in a manner that would require the offer or sale to Delphi of the Ener1 Stock Consideration to be registered under the Securities Act or under any state securities laws.

4.4. <u>SEC Reports, Absence of Changes, etc</u>.  Ener1 has filed all proxy statements, periodic, current and other reports and other documents required to be filed by it under the Securities and Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder (the "**Exchange Act**") since December 31, 2006  (collectively, the "**SEC Reports**").  Each SEC Report was, at the time it was filed, in compliance in all material respects with the requirements of its form and none of the SEC Reports, nor the financial statements (and the notes thereto) included in the SEC Reports, as of their respective dates, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.  Since December 31, 2007, except as disclosed in the SEC Reports, there has been no change in the condition of Ener1, whether as a result of any change as to accounts receivable or other assets, any loss of competitive position, any natural disaster, accident, strike, sabotage or confiscation of property, or any other event of condition directly affecting or relating to Ener1 or its business, whether or not related to any of the foregoing, except for such changes as have not and are not reasonably likely to have a Material Adverse Effect, and to Ener1's knowledge no such changes are contemplated or pending.

4.5. <u>Financial Statements</u>.  The financial statements of Ener1 contained in the SEC Reports present fairly, in all material respects, the financial position of Ener1 and the results of its operations and cash flows as of the respective dates and periods thereof in conformity with United States generally accepted accounting principles (except that, in the case of unaudited interim financial statements such statements are subject to normal, recurring adjustments which would be made in the course of an audit and which would not be material).

4.6. <u>Disclosure.</u>  None of the information contained in the representations and warranties of Ener1 set forth in this Agreement, including any Exhibits and

7

Schedules referenced herein, or in the lists and other information furnished to Delphi in connection with the transactions contemplated hereby, or in the certificates delivered or to be delivered in connection herewith, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements herein or therein not misleading.

## 5.   COVENANTS.

5.1. Bankruptcy Actions. Delphi shall file with the Bankruptcy Court a motion, pursuant to, among other things, Sections 363 of the Bankruptcy Code, seeking approval of the transactions contemplated hereby.  Delphi and Ener1 shall use their reasonable best efforts to cooperate, assist and consult with each other to (a) secure the entry of the Approval Order as soon as reasonably practicable, and (b) consummate the transactions contemplated by this Agreement as soon as reasonably practicable.  In the event that any orders of the Bankruptcy Court relating to this Agreement shall be appealed by any Person (or a petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to any such order), Delphi shall take such steps as are reasonably necessary or appropriate to diligently defend against such appeal, petition or motion and Delphi shall use its reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion.

5.2. Other Actions Pending the Closing.  Delphi shall not (i) sell, lend or transfer any right, title or interest in or to any of the Shares, (ii) subject any of the Shares to any Lien, or (iii) take any action (or fail to take any action) that would cause the representations and warranties made by Delphi in this Agreement not to be true and correct in any material respect as of the Closing Date.

5.3. Supplemental Disclosure.  Each party to this Agreement covenants that until the Closing, it shall promptly advise the other party with respect to any matter arising or discovered that, if existing or known at the date of this Agreement, would have been required to be set forth or described in a schedule to this Agreement by such party, or that constitutes, or could constitute, a breach or prospective breach, of this Agreement by such party; provided, however, that no such disclosure shall cure any breach or potential breach of this Agreement.

5.4. Intellectual Property.  With the exception of licenses set forth in paragraph 5.5 below, Delphi shall not claim any right, license or interest in or to any of the Company's Confidential Information or intellectual property, including, without limitation, any trademarks, copyrights, patents, patent applications, trade secrets, know-how, or the use of the Company's name (i.e., "EnerDel").

5.5. Licenses.  Delphi shall have a royalty-free, worldwide, perpetual license under the patents assigned by Delphi to EnerDel pursuant to the Formation Agreement, for non-lithium battery use, manufacture or sale.   Any assignments, licenses, leases, grants of security interests or other transactions involving the above-mentioned patents shall be subject to these licenses.

5.6. <u>Non-Compete</u>.  Paragraph 1.6 ("Non-Compete") of the Formation Agreement shall remain in full force and effect and will not be included in the Certificate of Termination.

## 6.    <u>CONDITIONS TO OBLIGATIONS OF DELPHI AND ENER1.</u>

6.1. <u>Conditions to Obligations of Ener1 and Delphi</u>.  The obligations of Ener1 and Delphi to consummate the transactions contemplated under this Agreement shall be subject to the satisfaction (or mutual waiver) at or prior to the Closing Date of the following conditions:

(a)    <u>*No Injunction*</u>.  No preliminary or permanent injunction or other order issued by any Governmental Entity shall be in effect or instituted which materially delays, restrains, enjoins or otherwise prohibits or limits the transactions contemplated by this Agreement.

(b)    <u>*Entry of Approval Order*</u>.  The Bankruptcy Court shall have approved and entered the Approval Order, and the Approval Order shall be effective and not subject to any stay.

(c)    <u>*HSR Act*</u>.  Any applicable waiting period under the HSR Act, if required, shall have expired or shall have been earlier terminated.

6.2. <u>Conditions to Obligations of Ener1</u>.  The obligation of Ener1 to consummate the transactions contemplated under this Agreement is subject to the satisfaction (or waiver by Ener1 in its sole discretion) at or prior to the Closing Date of each of the following additional conditions:

(a)    <u>*Accuracy of Representations and Warranties*</u>.  The representations and warranties of Delphi contained herein that are qualified by materiality shall be true and correct in all respects on the date hereof and on and as of the Closing Date, and the representations and warranties of Delphi contained herein that are not qualified by materiality shall be true and correct in all material respects on the date hereof and as of the Closing Date, in each case with the same force and effect as though such representations and warranties had been made on and as of the Closing Date, except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct as of such date.

(b)    <u>*Performance of Agreements*</u>.  Delphi shall have performed in all material respects each of the covenants, obligations and agreements contained in this Agreement required to be performed by it prior to or at the Closing Date.

(c)  *Kay Resignation Letter*.  The Company shall have received a copy of Rick Kay's letter of resignation from the Board of Directors of the Company, such resignation to be effective upon the Closing Date.

(d)  *Officer's Certificate*.  Ener1 shall have received a certificate, dated as of the Closing Date, of a duly authorized officer of Delphi to the effect that the conditions specified in Sections 6.2(a) and (b) have been satisfied.

(e)  *Termination of Formation Agreement*.  Delphi shall have executed and delivered to Ener1 the Certificate of Termination.

(f)  *Share Certificates*.  Delphi shall deliver to Ener1 one or more certificates representing the Shares, duly endorsed for transfer to Ener1, and with any necessary transfer stamps attached.

(g)  *Other Deliveries*.  Delphi shall have delivered to Ener1 a certificate of its secretary or assistant secretary, certifying to and attaching certificates of good standing, charter documents and resolutions of the board of directors of Delphi in form and substance reasonably acceptable to Ener1 approving the transactions contemplated hereby, and all other customary documents, certificates and instruments reasonably requested by Ener1 in order to consummate the transactions contemplated by this Agreement.

6.3.  <u>Conditions Precedent to the Obligations of Delphi</u>.  The obligation of Delphi to consummate the transactions contemplated under this Agreement is subject to the satisfaction (or waiver by Delphi in its sole discretion) at or prior to the Closing Date of each of the following additional conditions:

(a)  *Accuracy of Representations and Warranties*.  The representations and warranties of Ener1 contained herein that are qualified by materiality shall be true and correct in all respects on the date hereof and on and as of the Closing Date, and the representations and warranties of Ener1 contained herein that are not qualified by materiality shall be true and correct in all material respects on the date hereof and as of the Closing Date, in each case with the same force and effect as though such representations and warranties had been made on and as of the Closing Date, except to the extent that any such representation or warranty is made as of a specified date, in which case such representation or warranty shall have been true and correct in all material respects as of such date.

(b)  *Performance of Agreements*.  Ener1 shall have performed in all material respects each of the covenants, obligations and agreements contained in this Agreement required to be performed by it prior to or at the Closing Date.

(c)  *Officer's Certificate*.  Delphi shall have received a certificate, dated as of the Closing Date, of a duly authorized officer of Ener1 to the effect that the conditions specified in Sections 6.3(a) and (b) have been fulfilled.

(d)   *Termination of Formation Agreement*. Ener1 shall have executed and delivered to Delphi the Certificate of Termination.

(e)   *Warrant*. Ener1 shall have issued and delivered to Delphi a certificate representing the Revised Warrant.

(f)   *Ener1 Stock Consideration*. Ener1 shall have issued and delivered to Delphi one or more certificates representing the Ener1 Stock Consideration, registered in the name of Delphi or its designee and containing no legends or other restrictions on transfer or resale except those permitted by Section 2.3 hereof.

(g)   *Other Deliveries*.   Ener1 shall have delivered a certificate of its secretary or assistant secretary, certifying to and attaching certificates of good standing, charter documents and resolutions of the board of directors of Ener1 in form and substance reasonably acceptable to Delphi approving the transactions contemplated hereby, and all other customary documents, certificates and instruments reasonably requested by Delphi in order to consummate the transactions contemplated by this Agreement.

6.4. <u>Satisfaction of Conditions</u>. Each party shall use its reasonable best efforts to satisfy the conditions to closing to be satisfied by it pursuant to this Section 6.

## 7.   **TERMINATION**.

7.1. <u>Termination of Agreement</u>.   This Agreement may be terminated, and the transactions contemplated hereby abandoned, at any time prior to the Closing:

(a)   by mutual written agreement of Ener1 and Delphi;

(b)   by either party if the Closing shall not have occurred on or before 11:59 p.m. (New York time) on the date five Business Days following the date the Approval Order is no longer subject to a stay or injunction; *provided, however*, that the right to terminate this Agreement pursuant to this Section 7.1(b) shall not be available to a party whose material failure to fulfill any obligation under this Agreement shall have been the cause of the failure of the Closing Date to have occurred on or prior to such date;

(c)   by written notice of Ener1 to Delphi, if Delphi shall have materially breached its representations, warranties or agreements contained herein; *provided* that any such breach is not curable or, if curable, is not cured within 10 Business Days after Ener1 gives Delphi written notice identifying such breach or breaches;

(d)   by written notice of Delphi to Ener1, if Ener1 shall have materially breached its representations, warranties or agreements contained herein; *provided* that any such breach is not curable or, if curable, is not cured within 10 Business Days after Delphi gives Ener1 written notice identifying such breach or breaches; or

11

(e)  by either party if the Bankruptcy Court has not approved and entered the Approval Order on or before September 12, 2008 (or such later date as the parties may agree in writing).

7.2. *Effect of Termination*.  Nothing in this Section 7 shall relieve any party of any liability for a breach of this Agreement prior to the termination hereof, including the failure to use reasonable best efforts to satisfy or cause to be satisfied the conditions to Closing required to be satisfied by it.  Upon the termination of this Agreement in accordance with its terms, all rights and obligations of the parties hereunder shall terminate, except that the provisions of Sections 5.5, 7, 8, 9, 10 and 11 shall remain in full force and effect.

8.  **PUBLIC ANNOUNCEMENTS**.  Except as required by any and all applicable laws, rules, and regulations of any governmental authority or governmental order (and then only after prior consultation with the other party to this Agreement) or in connection with the Case and Delphi's efforts to seek entry of the Approval Order, neither party to this Agreement will make any public announcements regarding this Agreement or the transactions contemplated herein without obtaining the prior written consent of the other party (such consent not to be unreasonably withheld, delayed, or conditioned).

9.  **CONFIDENTIALITY**.

9.1. <u>Duty to Keep Information Confidential</u>.  Delphi agrees (i) to hold all Confidential Information in strict confidence and to take all precautions to protect such Confidential Information, (ii) not to disclose any Confidential Information or any information derived therefrom to any third party, and (iii) not to make any use at any time of such Confidential Information.  Without granting any right or license, the foregoing clauses (i), (ii) and (iii) shall not apply with respect to any information that (a) is, through no improper action or inaction by Delphi, generally available to the public, or (b) was rightfully disclosed to Delphi by a third party not under a duty of confidentiality with respect to such information, and shall not be interpreted in any way to limit or restrict the licenses provided pursuant to Section 5.5 hereof.

9.2. <u>Right to Disclose Confidential Information</u>.  Delphi may disclose Confidential Information to the extent such disclosure is (i) determined by Delphi in its reasonable judgment, acting in good faith and upon the advice of counsel, to be necessary in order to obtain entry of the Approval Order, or (ii) required by the order of any court or regulatory authority; provided, however, that Delphi (i) shall use reasonable best efforts to limit such disclosure and (ii) shall provide Ener1 with prior written notice of such disclosure sufficient to allow Ener1 to obtain a protective order or otherwise seek to prevent such disclosure.

10.  **NOTICES**.  Unless additional means are expressly provided herein, any notice, request, consent or other communication required or permitted to be given under this Agreement will be in writing and will be deemed to have been sufficiently given or served for all purposes: (i) when personally delivered to the recipient at

12

the address below indicated; (ii) on the first (1st) Business Day after sent by a nationally or internationally recognized overnight courier service with signature to the recipient at the address below indicated; or (iii) when sent if delivered by facsimile with confirmation of receipt; provided, however, that if any such notice, request, consent or other communication is received after 5 p.m. (New York time) on a Business Day, or on a day that is not a Business Day, such receipt shall not be effective until the immediately succeeding Business Day.

| | |
|---|---|
| If to Delphi: | DELPHI CORPORATION<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn: Vice President and Treasurer<br>Fax No.: 248-813-2648 |
| With a copy to: | DELPHI CORPORATION<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn: Assistant General Counsel -<br>    Corporate and Securities<br>Fax No.: 248-813-2491 |
| If to Ener1: | ENER1, INC<br>1540 Broadway<br>Suite 25C<br>New York, NY 10036<br>Attn.: Charles Gassenheimer<br>Fax: (212) 920-3510 |

*With a copy (which shall not constitute notice) to:*

Mazzeo Song & Bradham LLP
708 Third Avenue
19th Floor
New York, New York 10017
Attn: Robert L. Mazzeo
Tel:    (212) 599-0700
Fax:    (212) 599-8400

provided, however, either Party may change its address by giving notice in accordance with this Section 10.

11. **GENERAL**.

11.1. Entire Agreement; Modification; Waiver.  This Agreement constitutes and contains the entire agreement of the parties and supersedes any and all prior negotiations, correspondence, understandings, and agreements between the parties respecting the subject matter hereof. This Agreement may be amended only by a written instrument signed by both parties. No provision of this Agreement may be waived other than by a written instrument signed by the

13

party against whom enforcement of any such waiver is sought.  Any waiver shall be effective only in the specific instance and for the specific purpose for which given.

11.2. <u>Headings</u>.  The division of this Agreement into Sections, Articles, Paragraphs and subparagraphs and the insertion of headings are for convenience of reference only and shall not be used in the interpretation of this Agreement.

11.3. <u>Exhibits and Schedules</u>.  The exhibits and schedules hereto, whether or not attached hereto, are deemed a part of this Agreement.

11.4. <u>Jurisdiction; Governing Law</u>.  This Agreement and performance under it shall be governed by and construed in accordance with the applicable laws of the United States and the laws of the State of Delaware, without giving effect to the principles thereof relating to conflicts of laws.  Each party irrevocably agrees that unless otherwise mutually agreed by the parties, any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively (a) in the Bankruptcy Court while the Case remains open, and (b) in all other instances in Oakland County, Michigan, and each party irrevocably submits to the non-exclusive jurisdiction of the Bankruptcy Court or the federal and state courts in Oakland County, Michigan, as applicable *in personam*, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other party.

11.5. <u>Expenses</u>.  Except as specifically set forth otherwise in this Agreement, each party will pay its own expenses incurred incident to this Agreement and the transactions contemplated hereby.

11.6. <u>Binding Nature and Assignment</u>.  The Agreement shall be binding on the parties and their respective successors and permitted assigns (including a reorganized or reconstituted Delphi after the Closing Date of its confirmed plan of reorganization).  Except for Delphi's assignment of the Agreement to a reorganized or reconstituted Delphi after the Closing Date of its confirmed plan of reorganization, neither party may, or will have the power to assign the Agreement without the prior written consent of the other.  Any attempted assignment that does not comply with the terms of this Section shall be null and void.

11.7. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  This Agreement may be executed and delivered by facsimile transmission.

11.8. <u>No Reliance</u>.  Each party acknowledges that (i) it has such knowledge in business and financial matters as to be fully capable of evaluating this Agreement and the transactions contemplated hereby and thereby, (ii) it is not relying on any advice or representation of the other party in connection with entering into this Agreement or such transactions (other than the representations made in this Agreement), (iii) it has not received from the other

14

party any assurance or guarantee as to the merits (whether legal, regulatory, tax, financial or otherwise) of entering into this Agreement or the performance of its obligations hereunder and thereunder, and (iv) it has consulted with its own legal, regulatory, tax, business, investment, financial and accounting advisors to the extent that it has deemed necessary, and has entered into this Agreement based on its own independent judgment and, if applicable, on the advice of such advisors, and not on any view (whether written or oral) expressed by the other party.

11.9. <u>Injunctive Relief</u>.   Each party agrees that a breach by it of its obligations hereunder will cause irreparable harm to the other party, that the remedy or remedies at law for any such breach will be inadequate and, in the event of any breach of this Agreement by the other party, in addition to all other available remedies, such party shall be entitled to an injunction restraining any breach and requiring immediate and specific performance of such obligations without the necessity of showing economic loss or the posting of any bond.

[signatures on following page]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date and year above written.


ENER1, INC.


By: /s/_____
    Name:
    Title:



DELPHI AUTOMOTIVE SYSTEMS LLC.


By: /s/_____
    Name:
    Title:

16