K&L GATES LLP
Edward M. Fox, Esq. (EF1619)
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtor. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| WILMINGTON TRUST COMPANY, as Indenture | : | |
| Trustee, | : | |
| | : | Adv. Pro. No. 08-_____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DELPHI CORPORATION, ASEC MANUFACTURING | : | |
| GENERAL PARTNERSHIP, ASEC SALES GENERAL | : | |
| PARTNERSHIP, ASPIRE, INC., DELCO ELECTRONICS | : | |
| OVERSEAS CORPORATION, DELPHI AUTOMOTIVE | : | |
| SYSTEMS (HOLDING), INC., DELPHI AUTOMOTIVE | : | |
| SYSTEMS GLOBAL (HOLDING), INC., DELPHI | : | |
| AUTOMOTIVE SYSTEMS HUMAN RESOURCES LLC, | : | |
| DELPHI AUTOMOTIVE SYSTEMS INTERNATIONAL, | : | |
| INC., DELPHI AUTOMOTIVE SYSTEMS KOREA, INC., | : | |
| DELPHI AUTOMOTIVE SYSTEMS LLC, DELPHI | : | |
| AUTOMOTIVE SYSTEMS OVERSEAS CORPORATION, | : | |
| DELPHI AUTOMOTIVE SYSTEMS RISK MANAGEMENT | : | |
| CORP., DELPHI AUTOMOTIVE SYSTEMS SERVICES | : | |
| LLC, DELPHI AUTOMOTIVE SYSTEMS TENNESSEE, | : | |
| INC., DELPHI AUTOMOTIVE SYSTEMS THAILAND, | : | |
| INC., DELPHI CHINA LLC, DELPHI CONNECTION | : | |
| SYSTEMS, DELPHI DIESEL SYSTEMS CORP., DELPHI | : | |
| ELECTRONICS (HOLDING) LLC, DELPHI FOREIGN | : | |
| SALES CORPORATION, DELPHI INTEGRATED | : | |
| SERVICE SOLUTIONS, INC., DELPHI INTERNATIONAL | : | |
| HOLDINGS CORP., DELPHI INTERNATIONAL | : | |
| SERVICES, INC., DELPHI LIQUIDATION HOLDING | : | |
| COMPANY, DELPHI LLC, DELPHI MECHATRONIC | : | |
| SYSTEMS, INC., DELPHI MEDICAL SYSTEMS | : | |

COLORADO CORPORATION, DELPHI MEDICAL            :
SYSTEMS CORPORATION, DELPHI MEDICAL             :
SYSTEMS TEXAS CORPORATION, DELPHI NY            :
HOLDING CORPORATION, DELPHI SERVICES            :
HOLDING CORPORATION, DELPHI TECHNOLOGIES,       :
INC., DREAL, INC., ENVIRONMENTAL CATALYSTS,     :
LLC, EXHAUST SYSTEMS CORPORATION,               :
PACKARD HUGHES INTERCONNECT COMPANY,            :
SPECIALTY ELECTRONICS INTERNATIONAL LTD.,       :
SPECIALTY ELECTRONICS, INC., DELPHI             :
FURUKAWA WIRING SYSTEMS LLC, DELPHI             :
RECEIVABLES LLC and  MOBILEARIA, INC.,          :
                                                :
                          Defendants.           :
-----------------------------------------------------------------------------x

## **COMPLAINT**

Wilmington Trust Company, as Indenture Trustee ("WTC"), through its

counsel, K&L Gates LLP, hereby files this complaint against Delphi Corporation

("Delphi") and its subsidiaries and affiliates who are debtors in these jointly administered

Chapter 11 cases (collectively with Delphi, the "Defendants" or "Debtors"), and alleges as

follows:

## **INTRODUCTION**

1.      In this Adversary Proceeding, WTC seeks to revoke the Court's

Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. § 1129(a) and (b) and Fed.

R. Bankr. P. 3020 Confirming First Amended Joint Plan of Reorganization of Delphi

Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified dated

January 25, 2008 (the "Confirmation Order") (i) pursuant to 11 U.S.C. § 1144, on grounds that

entry of the Confirmation Order was procured by fraud and (ii) pursuant to Fed. R. Civ. P.

60(b)(1), (5) and (6), made applicable to this case by Fed. R. Bankr. P. 9024.

2.      Pursuant to 11 U.S.C. § 1144, the Confirmation Order must be

revoked.  On May 16, 2008, the Debtors commenced an adversary proceeding against

Appaloosa Management, L.P.("Appaloosa'), A-D Acquisition Holdings ("ADAH") and

certain other parties to the EPCA (as hereinafter defined) (Appaloosa, ADAH and such

other parties defendant, the "Plan Investors"), Adv. Pro. No. 08-01232, wherein the

Debtors acknowledge and concede that the Confirmation Order was procured by fraud.

Specifically, the Debtors allege that ADAH defrauded the Court, the Debtors and the

Debtors' various stakeholders (including WTC) by affirmatively stating that it had every

intention of performing its obligations to the Debtors under the EPCA when, in fact, it had

no such intention.  By the Debtors' own admission, ADAH's misrepresentations were

fraudulent and resulted in the Court's approval and entry of the Confirmation Order.

Accordingly, by the Debtors' own admission, the Confirmation Order was procured by

fraud and must be revoked.

> 3.    Fed. R. Civ. P. 60(b) also provides a basis for revoking the

Confirmation Order.  The Debtors' Plan (defined below) is inextricably entwined with the

EPCA, and the Debtors required the equity investment contemplated by the EPCA in order

to consummate the Plan.  As a result of the failure of the Plan Investors to perform under

the EPCA, the Debtors have not, and, upon information and belief, cannot, consummate the

Plan.  The Debtors thus should not be allowed to hamstring their creditors and bind them to

a Plan (and to findings of fact and conclusions of law set forth in the Confirmation Order

which were not contested in reliance on the expectation that the transactions under the

EPCA would close and the Plan would, thus, become effective) that can never become

effective.  Therefore, it would be inequitable for the Confirmation Order to apply

prospectively, and relief from the Confirmation Order should issue pursuant to Fed. R. Civ.

P. 60(b)(5).  Moreover, WTC and all parties should be relieved from the effects of the

Confirmation Order pursuant to Fed. R. Civ. P. 60(b)(1) on grounds of mistake,

inadvertence or surprise since neither the Court nor WTC or any other creditors or parties

in interest could have known, at the time the Confirmation Order was entered, that the

transaction provided for in the EPCA would not close and the Plan would never be able to

be consummated.  Finally, the Debtors' inability to consummate the Plan and deliver the

promised recoveries to creditors constitutes just cause to revoke the Confirmation Order

pursuant to Fed. R. Civ. P. 60(b)(6).

### JURISDICTION AND VENUE

4.      This Court has jurisdiction over this adversary proceeding pursuant to

28 U.S.C. § 1334, and pursuant to Paragraph 51 of the Confirmation Order, which states:

> Retention of Jurisdiction.  Pursuant to sections 105(a) and 1142
> of the Bankruptcy Code, and notwithstanding the entry of this
> Confirmation Order or the occurrence of the Effective Date,
> and subject to the provisions of Sections 7.05 and 7.10 of the
> Delphi-GM Global Settlement Agreement and Delphi-GM
> Master Restructuring Agreement, respectively, the Court shall
> retain exclusive jurisdiction as provided in the Plan over all
> matters arising out of, and related to, the Chapter 11 Cases and
> the Plan to the fullest extent permitted by law, including,
> among other items and matters, jurisdiction over those items
> and matters set forth in Article XIII of the Plan.

5.      This adversary proceeding is a core proceeding pursuant to

28 U.S.C. §§ 157(b)(2)(A), (L) and (O).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

### PARTIES

7.      Plaintiff, WTC, is the successor indenture trustee for the following

issues of senior notes and debentures issued by Delphi Corporation pursuant to an Indenture

dated as of April 28, 1999, all of which remain outstanding:  (i) $500,000,000 in aggregate

principal amount of 6.55% Notes Due 2006; (ii) $500,000,000 in aggregate principal amount

4

of 6½ % Notes Due May 1, 2009; (iii) $500,000,000 in aggregate principal amount of 6.50

Notes Due 2013; and (iv) $500,000,000 in aggregate principal amount of $7^1/_8$% Debentures

Due May 1, 2029.

        8.      Defendant Delphi Corporation ("Delphi") is a corporation organized

under the laws of the State of Delaware, with its principal place of business located at 5725

Delphi Drive, Troy, Michigan 48098. <u>See</u> Voluntary Petition of Delphi Corporation, Case

No. 05-44481, Docket No. 1.

        9.      Defendant ASEC Manufacturing General Partnership is a Delaware

general partnership, with its principal place of business located at 1301 Main Parkway,

Catoosa, Oklahoma 74015. <u>See</u> Voluntary Petition of ASEC Manufacturing General

Partnership, Case No. 05-44482, Docket No. 1.

        10.     Defendant ASEC Sales General Partnership is a Delaware general

partnership, with its principal place of business located at 1301 Main Parkway, Catoosa,

Oklahoma 74015. <u>See</u> Voluntary Petition of ASEC Sales General Partnership, Case No.

05-44484, Docket No. 1.

        11.     Defendant Aspire, Inc. is a Michigan corporation, with its principal

place of business located at U.S. Route 1, Morrisville, Pennsylvania 19067. <u>See</u> Voluntary

Petition of Aspire, Inc., Case No. 05-44618, Docket No. 1.

        12.     Defendant Delco Electronics Overseas Corporation is a Delaware

corporation, with its principal place of business located at 5725 Delphi Drive, Troy,

Michigan 48098. <u>See</u> Voluntary Petition of Delco Electronics Overseas Corporation, Case

No. 05-44610, Docket No. 1.

13.     Defendant Delphi Automotive Systems (Holding), Inc. is a Delaware corporation, with its principal place of business located at 5785 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Automotive Systems (Holding), Inc., Case No. 05-44596, Docket No. 1.

14.     Defendant Delphi Automotive Systems Global (Holding), Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy Michigan 48098.  See Voluntary Petition of Delphi Automotive Systems Global (Holding), Inc., Case No. 05-44636, Docket No. 1.

15.     Defendant Delphi Automotive Systems Human Resources LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Automotive Systems Human Resources LLC, Case No. 05-44639, Docket No. 1.

16.     Defendant Delphi Automotive Systems International, Inc. is a Delaware corporation with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Automotive Systems International, Inc., Case No. 05-44589, Docket No. 1.

17.     Defendant Delphi Automotive Systems Korea, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Automotive Systems Korea, Inc., Case No. 05-44580, Docket No. 1.

18.     Defendant Delphi Automotive Systems LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy,

6

Michigan 48098.  <u>See</u> Voluntary Petition of Delphi Automotive Systems LLC, Case No. 05-44640, Docket No. 1.

19.    Defendant Delphi Automotive Systems Overseas Corporation is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  <u>See</u> Voluntary Petition of Delphi Automotive Systems Overseas Corporation, Case No. 05-44593, Docket No. 1.

20.    Defendant Delphi Automotive Systems Risk Management Corp. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  <u>See</u> Voluntary Petition of Delphi Automotive Systems Risk Management Corp., Case No. 05-44570, Docket No. 1.

21.    Defendant Delphi Automotive Systems Services LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  <u>See</u> Voluntary Petition of Delphi Automotive Systems Services LLC, Case No. 05-44632, Docket No. 1.

22.    Defendant Delphi Automotive Systems Tennessee, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  <u>See</u> Voluntary Petition of Delphi Automotive Systems Tennessee, Inc., Case No. 05-44558, Docket No. 1.

23.    Defendant Delphi Automotive Systems Thailand, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  <u>See</u> Voluntary Petition of Delphi Automotive Systems Thailand, Inc., Case No. 05-44586, Docket No. 1.

24.    Defendant Delphi China LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan, 48098. See Voluntary Petition of Delphi China LLC, Case No. 05-44577, Docket No. 1.

25.    Defendant Delphi Connection Systems is a California corporation, with its principal place of business located at 17150 Von Karman Avenue, Irvine, California 92614.  See Voluntary Petition of Delphi Connection Systems, Case No. 44624, Docket No. 1.

26.    Defendant Delphi Diesel Systems Corp. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Diesel Systems Corp., Case No. 05-44612, Docket No. 1.

27.    Defendant Delphi Electronics (Holding) LLC is a Delaware limited liability company, with its principal place of business located at One Corporate Center, Kokomo, Indiana 46904.  See Voluntary Petition of Delphi Electronics (Holding) LLC, Case No. 05-44547, Docket No. 1.

28.    Defendant Delphi Foreign Sales Corporation is a U.S. Virgin Islands corporation, with its principal place of business located at Chase Trade, Inc., Post Office Box 309420, 55-11 Conacao Gade, Charlotte Amalie, St. Thomas, Virgin Islands 00803.  See Voluntary Petition of Delphi Foreign Sales Corporation, Case No. 05-44638, Docket No. 1.

29.    Defendant Delphi Integrated Service Solutions, Inc. is a Michigan corporation, with its principal place of business located at 1322 Rankin Street, Troy, Michigan 48083.  See Voluntary Petition of Delphi Integrated Service Solutions, Inc., Case No. 05-44623, Docket No. 1.

30.    Defendant Delphi International Holdings Corp. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098. <u>See</u> Voluntary Petition of Delphi International Holdings Corp., Case No. 05-44591, Docket No. 1.

31.    Defendant Delphi International Services, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098. <u>See</u> Voluntary Petition of Delphi International Services, Inc., Case No. 05-44583, Docket No. 1.

32.    Defendant Delphi Liquidation Holding Company is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098. <u>See</u> Voluntary Petition of Delphi Liquidation Holding Company, Case No. 05-44542, Docket No. 1.

33.    Defendant Delphi LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098. <u>See</u> Voluntary Petition of Delphi LLC, Case No. 05-44615, Docket No. 1.

34.    Defendant Delphi Mechatronic Systems, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098. <u>See</u> Voluntary Petition of Delphi Mechatronic Systems, Inc., Case No. 05-44567, Docket No. 1.

35.    Defendant Delphi Medical Systems Colorado Corporation is a Delaware corporation, with its principal place of business located at 4300 Road 18, Longmont, Colorado 80504. <u>See</u> Voluntary Petition of Delphi Medical Systems Colorado Corporation, Case No. 05-44507, Docket No. 1.

36.     Defendant Delphi Medical Systems Corporation is a Delaware corporation, with its principal place of business located at 5825 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Medical Systems Corporation, Case No. 05-44529, Docket No. 1.

37.     Defendant Delphi Medical Systems Texas Corporation is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Medical Systems Texas Corporation, Case No. 05-44511, Docket No. 1.

38.     Defendant Delphi NY Holding Corporation is a New York corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi NY Holding Corporation, Case No. 05-44480, Docket No. 1.

39.     Defendant Delphi Services Holding Corporation is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Services Holding Corporation, Case No. 05-44633, Docket No. 1.

40.     Defendant Delphi Technologies, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Technologies, Inc., Case No. 05-44554, Docket No. 1.

41.     Defendant DREAL, Inc. is a Delaware corporation, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of DREAL, Inc., Case No. 05-44627, Docket No. 1.

42.    Defendant Environmental Catalysts, LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Environmental Catalysts, LLC, Case No. 05-44503, Docket No. 1.

43.    Defendant Exhaust Systems Corporation is a Delaware corporation, with its principal place of business located at 4800 S. Saginaw Street, Flint, Michigan 48501. See Voluntary Petition of Exhaust Systems Corporation, Case No. 05-44573.

44.    Defendant Packard Hughes Interconnect Company is a Delaware corporation, with its principal place of business located at 17150 Von Karman Avenue, Irvine, California 92614.  See Voluntary Petition of Packard Hughes Interconnect Company, Case No. 05-44626, Docket No. 1.

45.    Defendant Specialty Electronics International Ltd. is a U.S. Virgin Islands corporation, with its principal place of business located at 69A Kronprindsens Gade, 3rd Floor, P.O. Box 1858, St. Thomas, Virgin Islands.  See Voluntary Petition of Specialty Electronics International Ltd., Case No. 05-44536, Docket No. 1.

46.    Defendant Specialty Electronics, Inc. is a South Carolina corporation, with its principal place of business located at 19200 Asheville Highway, P.O. Box 519, Landrum, South Carolina 29356.  See Voluntary Petition of Specialty Electronics, Inc., Case No. 05-44539, Docket No. 1.

47.    Defendant Delphi Furukawa Wiring Systems LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Furukawa Wiring Systems LLC, Case No. 05-47452, Docket No. 1.

48.    Defendant Delphi Receivables LLC is a Delaware limited liability company, with its principal place of business located at 5725 Delphi Drive, Troy, Michigan 48098.  See Voluntary Petition of Delphi Receivables LLC, Case No. 05-47459, Docket No. 1.

49.    Defendant MobileAria, Inc. is a Delaware corporation, with its principal place of business located at 800 West El Camino Real, Suite 240, Mountain View, California 94040.  See Voluntary Petition of MobileAria, Inc., Case No. 05-47474, Docket No. 1.

## FACTUAL ALLEGATIONS

### General Background

50.    On October 8, 2005 (the "Filing Date"), Delphi and thirty-eight (38) of its subsidiaries and affiliates filed voluntary petitions for relief pursuant to Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").

51.    On October 14, 2005, three (3) additional subsidiaries and affiliates of Delphi filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

52.    Since the Filing Date, the Debtors have operated their businesses and managed their assets as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

53.    On January 25, 2008, the Court entered the Confirmation Order, confirming the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Plan").

**The Equity Purchase and Commitment Agreement**

54.    During 2006, the Debtors interviewed potential investors to provide equity or other financing for their contemplated plan of reorganization.  See Complaint filed by Delphi Corporation in the United States Bankruptcy Court for the Southern District of New York on May 16, 2008 against Appaloosa Management, L.P., A-D Acquisition Holdings, LLC, Harbinger Del-Auto Investment Company, Ltd., Pardus DPH Holding LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Goldman Sachs & Co., Harbinger Capital Partners Master Fund I, Ltd. and Pardus Special Opportunities Master Fund L.P. (the "Complaint"), Adv. Pro. No. 08-01232, at ¶ 33.

55.    On or about November 16, 2006, a group of investors consisting of A-D Acquisition Holding, LLC ("ADAH") (an affiliate of Appaloosa Management L.P. ("Appaloosa")), Cerberus Capital Management LP ("Cerberus"), Harbinger Del-Auto Investment Company, Ltd. ("Harbinger"), Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill") and UBS Securities LLC ("UBS," together with ADAH, Cerberus, Harbinger and Merrill, the "Original Investors") emerged as the winner of the opportunity to invest in the Debtors' reorganization.  See Complaint at ¶ 33; Disclosure Statement With Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession dated December 10, 2007 (the "Disclosure Statement") at 38.

56.    Thereafter, the Debtors and the Original Investors proceeded to negotiate the terms of a Plan Framework Support Agreement (the "PSA") and an Equity Purchase and Commitment Agreement (the "Original EPCA"), each dated as of December 18, 2006.  See Disclosure Statement at 39.

13

57.    Pursuant to the Original EPCA, the Original Investors committed to provide up to $3.4 billion of equity financing to the reorganized Debtors by (a) committing to purchase certain preferred and common stock in the reorganized Debtors, and (b) agreeing to backstop a rights offering of new common stock to existing holders of Delphi common stock.  Id. at 117.

58.    The Court approved the PSA and Original EPCA on January 12, 2007.  See Order Authorizing and Approving the Equity Purchase and Commitment Agreement Pursuant to Sections 105(a), 363(b), 503(b) and 507(a) of the Bankruptcy Code and the Plan Framework Support Agreement Pursuant to Sections 105(a), 363(b) and 1125(e) of the Bankruptcy Code, Case No. 05-44481, Docket No. 6589.

59.    On July 7, 2007, the Original EPCA was terminated.  See Disclosure Statement at 118.

60.    In response to the termination of the Original EPCA, the Debtors received (a) an amended investment proposal from ADAH, as lead investor for, and on behalf of, the Plan Investors, and (b) a proposed investment agreement from Highland Capital LP.  Id.

61.    Under the Plan Investors' proposal, the Plan Investors agreed to provide up to $2.55 billion in equity financing to the reorganized Debtors.  Specifically, the Plan Investors proposed to (a) purchase $975 million in preferred and common stock of the reorganized Debtors, and (b) backstop up to $1.575 billion of a rights offering of new common stock to the Debtors' general unsecured creditors.  Id. at 119.

62.    On or about July 18, 2007, the Debtors accepted the Plan Investors' proposal, and the Debtors and the Plan Investors agreed to a revised form of the Original EPCA that memorialized the terms of their agreement (the "July EPCA").  Id. at 118-19.

63.    On August 2, 2007, the Court entered an Order approving the July EPCA (the "July EPCA Order").  See Order Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a), Case No. 05-44481, Docket No. 8856.

64.    Among other things, in the July EPCA Order, the Court expressly found that the Plan Investors' investment was an "integral . . . component of the Plan." July EPCA Order at ¶ (i).

65.    In the fall of 2007, after the July EPCA Order was entered, the Plan Investors and the Debtors agreed to various modifications to the July EPCA.  See Disclosure Statement at 120.

66.    During the period from October 2007 through December 7, 2007, the Debtors and the Plan Investors circulated several forms of EPCA amendments and, on or about December 7, 2007, after negotiations with the Debtors' statutory committees, the Debtors and the Plan Investors agreed to enter into a Second Restated First Amendment to the Equity Purchase and Commitment Agreement (the "EPCA Amendment").  Id. at 120-21.

67.    Pursuant to the EPCA Amendment, the Plan Investors obtained valuable concessions from the Debtors, including, inter alia, a significantly reduced buy-in price to be paid by the Plan Investors for their shares in the reorganized Debtors.  See, e.g., Objection of Wilmington Trust Company, as Indenture Trustee, to Expedited Motion for

Order Under 11 U.S.C. §§ 105, 363(b), 503(b), and 507(a) Authorizing and Approving

Amendment to Delphi-Appaloosa Equity Purchase and Commitment Agreement, Case No.

05-44481, Docket No. 11040.

68.    On December 10, 2007, the Court entered an Order approving the

EPCA Amendment.  See Order Under 11 U.S.C. § 105(a), 363(b), 503(b), and 507(a)

Authorizing and Approving Delphi—Appaloosa Equity Purchase and Commitment

Agreement Amendment, Case No. 05-44481, Docket No. 11382.

**ADAH Assures the Court, the Debtors and Their
Stakeholders that it Intends to Perform and Consummate the EPCA**

69.    As set forth below, from the negotiation of the Original EPCA

through the execution and approval of the EPCA Amendment and confirmation of the

Debtors' Plan, ADAH assured the Debtors, the Debtors' stakeholders and the Court that

ADAH was committed to fully performing its obligations to the Debtors under the July

EPCA, as amended by the EPCA Amendment (collectively, the "EPCA").

70.    ADAH, along with the other Plan Investors, executed several

successive agreements, including the July EPCA, the EPCA Amendment and, in the case of

ADAH, among others, commitment letter agreements, that expressly obligate ADAH and

the other Plan Investors to provide equity financing to the reorganized Debtors.  Among

other things, the July EPCA expressly obligated ADAH and the other Plan Investors to

"use [their] reasonable best efforts to take all actions, and do all things, reasonably

necessary, proper or advisable on [their] part under this Agreement and applicable laws to

cooperate with the Company to consummate and make effective the transactions

contemplated by this Agreement, the Preferred Term Sheet, the GM Settlement and the

Plan."  July EPCA at ¶ 6(b); Complaint at ¶ 45.

16

71.    Additionally, on December 6, 2007, at the hearing to consider approval of the EPCA Amendment, and as part of the Debtor's and ADAH's efforts to secure the Court's approval, David Tepper, the principal of ADAH and Appaloosa, testified that the Plan Investors were obligated to live by the terms of the EPCA, and that ADAH was committed to consummating the transactions outlined therein.  Specifically, Mr. Tepper stated:

> Q:    Okay.  Okay.  Are you familiar with the reasonable best efforts clause in the EPCAs?
>
> A:    Reasonable best efforts to try and get the deal done by both parties?
>
> Q:    Correct.
>
> A:    Yeah.
>
> Q:    That each investor shall use it's [sic] reasonable best effort to take all actions and do all things reasonably necessary, proper or advisable on its part – on it's [sic] part of this agreement and applicable laws to cooperate with the company and to consummate and make effective the transactions—
>
> A:    I – I generally know – I'm trying – you have to use my reasonable best efforts.  I don't know the exact language but yes.
>
> Q:    And you have understood that language to say to other co-claim investors hey, that means we're working on this plan.  You don't go working on some other plan because you're committed to doing this plan, correct?
>
> A:    Yes.

Transcript of December 6, 2007 Hearing (hereinafter, Tr. at ___) 122:17-123:10, (Case No. 05-44481 (RDD)).

72.    Mr. Tepper also testified at the December 6, 2007 hearing that:

17

> MR. MOUSTAKAS:    I'm asking, generally, if he understands that there is a provision in the plan investors' agreement that was drafted by Appaloosa that essentially commits all the plan investors to do a number of things that are inconsistent with alternate transactions.  That are – that keep people bound together or as colloquially referred to as locked up.

> THE WITNESS:  I understand that when I give my word to somebody and shake somebody's hand I have a deal, I have a deal.  That's what I understand.  And that – that language basically says that, as I understand it.

Tr. at 124:5-15.

73.    Upon questioning by the Debtor, Mr. Tepper further confirmed his commitment to the Debtors by stating:

> Q:    My question to you, and my last question sir, is the question of why.  Why did you invest this level of personal time and commitment in working with Delphi?

> A:    I just asked my wife that question last night.  So, I don't know.  I guess at some point, you know, its – I guess we made a deal.  We're trying to figure out how to get this deal done.  We have some relationship with the parties in the case.  We'd like to see this thing come out of bankruptcy if we can.  We have fiduciary responsibilities to a lot of different people and our own investors so we can't every [sic] violate that.  But in the fact that, and the same thing I said before, you know, you make a handshake you make a handshake, it's what it is.  That's why.  I don't know – I don't know how else to say that."

Tr. at 161:6-18.

**The Court Relied on ADAH's Assurances to Confirm the Plan**

74.    The Court, in approving the EPCA and thereafter confirming the

Plan, relied on Mr. Tepper's statements that ADAH fully intended to honor its

commitments under the EPCA.

75.    During the hearing on December 7, 2007 to consider approval of the

Debtors' Expedited Motion for Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) and

507(a) Authorizing and Approving Amendment to Delphi-Appaloosa Equity Purchase and

Commitment Agreement, the Court confirmed its reliance on ADAH's affirmative

assurances to approve the EPCA, stating:

> In that regard, let me observe two or three things.
> First, I believe that the debtors do have, as stated by
> Mr. Resnick, some flexibility in dealing with their
> post reorganization interest expense.  Secondly, I
> believe that the actual economic effect of the type of
> increase, if it occurs, that the committee is concerned
> about upon the plan investors' investment would
> indeed be minimal as Mr. Resnick testified.  Thirdly,
> as I said before, when a financial institution that
> expects to continue to be able to negotiate
> transactions refuses to do so in such a highly public
> context where hundreds of thousands of people have
> relied on them acting in good faith, I believe,
> ultimately that if in fact the condition is exceeded in
> the range that Mr. Rosenberg was proposing that it be
> incumbent for both legal and reputational reasons for
> the plan investors to respond to that situation in good
> faith with a reasonable concession.
>
> I make that observation partly from my own
> experience as a judge.  There are investors out there
> who have a reputation which I assume they deserve
> who go into every deal with a strike against them
> even though they have lots of cash and that's because
> it's perceived that at the end of the day their
> handshake won't be trusted and that they won't deal
> in good faith as a business person would expect.

> Frankly, I believe that Appaloosa's response to this whole set of circumstances doesn't put them in that category at all. I don't believe Mr. Tepper was blowing smoke at me yesterday when he said a handshake is a handshake, a deal is a deal. Given that and given that I believe all of the other plan investors want to continue to fall in the category where you don't have a strike against you whenever you come into court and say we want to bid for this company or we want to bid against those people that they will deal in good faith if in fact the debtors don't have room to manage this condition.
>
> Consequently, I will approve the debtors' entry into the amended EPCA agreement.

Tr. at 38:5-39:14, (Case No. 05-44481(RDD)).

76.    Thereafter, on January 25, 2008, the Court confirmed the Plan, which was predicated on the EPCA approved by the Court on December 7, 2007, and entered the Confirmation Order.

**ADAH's Fraud**

77.    Unfortunately, upon information and belief, ADAH defrauded the Debtors, the Court and creditors and parties in interest by falsely stating its intention to perform its obligations under the EPCA when, in fact, it did not intend to do so if equity was out of the money. See Complaint at ¶ 83.

78.    On May 16, 2008, the Debtors filed the Complaint against ADAH and other Plan Investors, asserting, inter alia, a cause of action against ADAH for fraud based on (a) ADAH's having defrauded the Court when ADAH assured the Court that it intended to honor its commitment to the Debtors under the EPCA, and (b) ADAH's bad faith efforts to scuttle the Debtors' ability to obtain exit financing, thereby ensuring the EPCA would fail. See Complaint ¶¶ 128-134.

79.    Upon information and belief, before the Plan was confirmed on January 25, 2008, ADAH engaged in efforts to avoid its obligations to the Debtors and undermine the consummation of the Plan.  <u>Id.</u> at ¶ 71.

80.    Upon information and belief, during November and December 2007, and before the Court approved the EPCA Amendment, ADAH determined that performing the EPCA would be a poor investment.  <u>Id.</u> at ¶¶ 72, 74.

81.    Upon information and belief, ADAH entered into the EPCA Amendment to obtain additional commitment fees from the Debtors, and always intended to avoid performing under the EPCA if equity was out of the money at the time of closing. <u>Id.</u> at ¶ 75.

82.    Upon information and belief, on or about January 18, 2008, ADAH communicated with certain investors to devise a plan to avoid having to close under the EPCA.  <u>Id.</u> at ¶ 76.

83.    Upon information and belief, ADAH knew it legally did not have the right to terminate the EPCA.  <u>Id.</u> at ¶ 80.

84.    Upon information and belief, instead of performing its obligations under the EPCA in good faith, ADAH requested that its lawyers concoct a reason for which it could claim the EPCA was terminated.  <u>Id.</u> at ¶ 81.

85.    Upon information and belief, ADAH endeavored, both before and after the Confirmation Order was entered, to avoid its obligations under the EPCA, notwithstanding its outward statements of support of the Debtors and its earlier expressed intention to perform under the EPCA.  <u>Id.</u> at ¶ 83.

86.    Accordingly, upon information and belief, and as stated by the

Debtors in the Complaint:

at a time when to all outward appearances Appaloosa
was fully committed to the consummation of the Plan,
just the opposite was true.  Delphi was deceived as a
result of its trust in Mr. Tepper in Appaloosa.  Delphi
reasonably believed that Appaloosa had the intention to
honor its funding commitment—as Mr. Tepper had
explicitly stated in open court [].  During Appaloosa's
involvement as lead equity investor for Delphi, tens of
millions of dollars were spent developing the Plan, and
then taking steps to implement it.  Complex settlements
were negotiated and approved by the Bankruptcy Court
because Appaloosa conditioned its investment on
resolutions with many parties such as General Motors,
Delphi's labor unions and the IRS.  Changes were made
to the Investment Agreement after it had been approved
by the Court in August 2007—over strenuous
objections—to improve the economics for Appaloosa.
Contested court hearings were held in December of
2007 and January of 2008 as Delphi fulfilled its
obligations to obtain Court approval for the EPCA and
the Plan.  Thousands of hours and millions of dollars
were spent readying for the exit from chapter 11.
Documents were drafted and redrafted.  The Plan and
solicitation materials were prepared and sent out.
Filings were made with the SEC.  The rights offering
was prepared and completed.  The exit financing was
arranged and documented.  Creditors and shareholders
read the voluminous plan materials and voted on the
Plan.  Only when it was too late did Delphi learn that
Appaloosa never intended to fulfill its commitment if
the equity investment was under water at the time of
closing, and that after the Investment Agreement was
signed, Appaloosa and its allies were secretly working
behind the scenes to undermine all of the efforts to
achieve Plan consummation that the Debtors and their
employees and other stakeholders were trying so hard
to complete in good faith.

Id. at ¶ 83.

## COUNT I:  REVOCATION OF THE CONFIRMATION
## ORDER PURSUANT TO 11 U.S.C. § 1144

87.    WTC realleges and restates Paragraphs 1 through 86 as if each such

paragraph were set forth in its entirety herein.

88.    Pursuant to 11 U.S.C. § 1144,

[o]n request of a party in interest at any time before 180
days after the date of the entry of the order of confirmation,
and after notice and a hearing, the court may revoke such
order if and only if such order was procured by fraud[.]

11 U.S.C. § 1144.

89.    As acknowledged and conceded by the Debtors in the Complaint, the

Confirmation Order was procured by fraud.

90.    The fraud the Debtors acknowledge and concede ADAH committed

was a fraud on the Court, as well as a fraud against the Debtors and their various

stakeholders, including WTC and senior bondholders.

91.    Although a party seeking to revoke a confirmation order does not

need to prove reliance, upon information and belief, the Court reasonably relied on

ADAH's false statements in confirming the Plan and entering the Confirmation Order.

92.    Although a party seeking to revoke a confirmation order does not

need to prove reliance, the Debtors and their various stakeholders reasonably relied on

ADAH's false statements in seeking approval of and/or otherwise supporting the Plan.

93.    Although a party seeking to revoke a confirmation order does not

need to establish damages, the Debtors' estates have been damaged as a result of ADAH's

fraud, and judicial resources have been wasted.

94.    The Court should revoke the Confirmation Order.

23

## COUNT II:  REVOCATION OF THE CONFIRMATION
## ORDER PURSUANT TO FED. R. CIV. P. 60(b)(1),
## <u>APPLICABLE PURSUANT TO  FED. R. BANKR. P. 9024</u>

95.    WTC realleges and restates Paragraphs 1 through 94 as if each such

paragraph were set forth in its entirety herein.

96.    Federal Rule of Bankruptcy Procedure 9024 states:

> Rule 60 F.R.Civ.P. applies in cases under the Code
> except that, (1) a motion to reopen a case under the Code
> or for the reconsideration of an order allowing or
> disallowing a claim against the estate entered without a
> contest is not subject to the one year limitation prescribed
> in Rule 60(b), (2) a complaint to revoke a discharge in a
> chapter 7 liquidation case may be filed only within the
> time allowed by § 727(e) of the Code, and (3) a
> complaint to revoke an order confirming a plan of may be
> filed only within the time allowed by § 1144, § 1230, or §
> 1330.

Fed. R. Bankr. P. 9024.[1]

97.    Pursuant to Fed. R. Civ. P. 60(b)(1),

> On motion and just terms, the court may relieve a party or
> its legal representative from a final judgment, order, or
> proceeding for the following reasons:
>
> *        *        *
>
> (1) mistake, inadvertence, surprise, or excusable neglect[.]

Fed. R. Civ. P. 60(b)(2).

98.    When the Confirmation Order was entered, WTC could not have

known that ADAH would not close the transactions under the EPCA if equity was out of

the money.

---

[1] Although Fed. R. Civ. P. 60 states that relief may be had "on motion," <u>see</u> Fed. R. Civ. P. 60(b), Fed. R.
Bankr. P. 9024 and Fed. R. Bankr. P. 7001(5) require a party to seek relief from a confirmation order
pursuant to a complaint.  Therefore, WTC has raised its claims for relief by way of this adversary
complaint.  To the extent relief under Fed. R. Civ. P. 60(b) should be sought by motion rather than by
adversary proceeding, however, WTC requests that the Court treat this complaint as a motion for purposes
of satisfying the requirement of Fed. R. Civ. P. 60(b).

99.     Because of the failure of the transactions under the EPCA to close, the Debtors lack the equity financing necessary to consummate the Plan.

100.     If ADAH's true intentions were known, the Court would not have entered the Confirmation Order.

101.     If ADAH's plan to repudiate the EPCA were known, the Court would not have entered the Confirmation Order.

102.     The Debtors cannot consummate the Plan and, therefore, will not be prejudiced if the Confirmation Order is revoked.

103.     Entry of the Confirmation Order on the expectation or assumption that the transactions under the EPCA would close, thus allowing the Plan to become effective, constitutes mistake, inadvertence or surprise sufficient to relieve creditors and parties in interest of the effects of the Confirmation Order.

104.     As a result of the failure of the transactions under the EPCA to close, the Debtors could not, and cannot, consummate the Plan.  Consequently, the Court should revoke the Confirmation Order.

**COUNT III:  REVOCATION OF THE CONFIRMATION
ORDER PURSUANT TO FED. R. CIV. P. 60(b)(5),
APPLICABLE PURSUANT TO  FED. R. BANKR. P. 9024**

105.     WTC realleges and restates Paragraphs 1 through 104 as if each such paragraph were set forth in its entirety herein.

106.     Pursuant to Fed. R. Civ. P. 60(b)(5),

> On motion and just terms, the court may relieve a party or
> its legal representative from a final judgment, order, or
> proceeding for the following reasons:

*          *          *

> (5) the judgment has been satisfied, released, or discharged;

> it is based on an earlier judgment that has been reversed or
> vacated; or applying it prospectively is no longer
> equitable[.]

Fed. R. Civ. P. 60(b)(5).

107.    Because of the failure of the transactions under the EPCA to close,

the Debtors lack the equity financing necessary to consummate the Plan.

108.    Accordingly, the Debtors cannot consummate the Plan.

109.    The Debtors' creditors and parties in interest should not be bound *ad*

*infinitem* to a Plan that can never become effective.  Accordingly, prospective application of

the Confirmation Order is no longer equitable, and the Confirmation Order should be revoked.

### COUNT IV:  REVOCATION OF THE CONFIRMATION
### ORDER PURSUANT TO FED. R. CIV. P. 60(b)(6),
### APPLICABLE PURSUANT TO  FED. R. BANKR. P. 9024

110.    WTC realleges and restates Paragraphs 1 through 109 as if each such

paragraph were set forth in its entirety herein.

111.    Pursuant to Fed. R. Civ. P. 60(b)(6),

> On motion and just terms, the court may relieve a party or
> its legal representative from a final judgment, order, or
> proceeding for the following reasons:

> *        *        *

> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(6).

112.    The failure of the transactions under the EPCA to close, and the

Debtors' inability, therefore, to consummate the Plan and deliver the recoveries promised

to creditors, justify relief from the Confirmation Order.

### PRAYER FOR RELIEF

WHEREFORE, WTC respectfully requests that the Court:

26

        A.        Revoke the Confirmation Order pursuant to 11 U.S.C. § 1144.

        B.        Revoke the Confirmation Order pursuant to Fed. R. Civ. P. 60(b)(1),

applicable herein pursuant to Fed. R. Bankr. P. 9024.

        C.        Revoke the Confirmation Order pursuant to Fed. R. Civ. P. 60(b)(5),

applicable herein pursuant to Fed. R. Bankr. P. 9024.

        D.        Revoke the Confirmation Order pursuant to Fed. R. Civ. P. 60(b)(6),

applicable herein pursuant to Fed. R. Bankr. P. 9024.

        E.        Grant such other and further relief to WTC as the Court deems

equitable and just.


Dated: New York, New York
       July 22, 2008

                K&L GATES LLP


                By:___*/s/ Edward M. Fox*_____
                   Edward M. Fox (EF1619)
                   A Member of the Firm
                Attorneys for Wilmington Trust
                Company, as Indenture Trustee
                599 Lexington Avenue
                New York, NY 10022
                (212) 536-3900