Hearing Date and Time: July 31, 2008 at 10:00 a.m. (Eastern)
Response Date and Time: July 24, 2008 at 4:00 p.m. (Eastern)

Robert Sidorsky (RS 2490)
Max J. Newman (*pro hac vice*)
BUTZEL LONG, a professional corporation
380 Madison Avenue
New York, New York 10017
(212) 818-1110
sidorsky@butzel.com
newman@butzel.com

*Attorneys for Pioneer Speakers, Inc.*

UNITED STATES BANRKUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11
                                                        :
DELPHI CORPORATION, <u>et al</u>.                       :    Case No.  05-44481-(RDD)
                                                        :    (Jointly Administered)
                         Debtors.                       :
                                                        :
------------------------------------------------------- x

**PIONEER SPEAKERS, INC.'S RESPONSE TO DEBTORS' THIRTIETH OMNIBUS
OBJECTION PURSUANT TO 11 U.S.C. § 502(B) AND FED. R. BANKR. P. 3007 TO
CERTAIN (A) AMENDED CLAIMS, (B) EQUITY CLAIMS, (C) UNTIMELY
INSUFFICIENTLY DOCUMENTED CLAIM, (D) BOOKS AND RECORDS CLAIMS,
(E) UNTIMELY CLAIMS AND (F) CLAIMS SUBJECT TO MODIFICATION
("THIRTIETH OMNIBUS CLAIMS OBJECTION")**

Pioneer Speakers, Inc. ("PSI") for its Response to Debtors' Thirtieth Omnibus Claims

Objection (the "Objection") states as follows:

### Introduction

The Objection to PSI's claim (Claim No. 16809) (the "Claim") as untimely is duplicative

of an objection that Delphi Corporation ("Delphi") has already made as part of its Twenty-Eighth

Omnibus Claims Objection.[1]  Delphi's prior objection was granted by an order dated April 30,

---

[1]  While the prior objection was with respect to Claim No. 16802, the two claims are in fact the same, and PSI filed a single claim in the amount of $153,750.00.  *See* ¶ 13 below.

2008 (the "Prior Order") as a result of PSI's inadvertent failure to respond. PSI has moved to set aside the Prior Order, and its Motion for (i) Relief Under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b) from Order Expunging Claim as Untimely, (ii) for Permission to File Claim After Bar Date and (iii) in the Alternative, for Allowance of Administrative Claim (the "Motion') has been scheduled to be heard at the September 4, 2008 claims hearing. For the reasons set forth below, and in the Motion, the Claim should be allowed.

## Factual Background

1.  PSI is a global leader in the manufacture of speakers and components for the automotive industry and others.

2.  For all relevant time periods, PSI and Delphi Automotive Systems, LLC ("DAS") have engaged in a substantial amount of business through DAS's Electronics and Safety Division.

3.  As part of an award of a new program (the GMX 381 program), on July 30, 2004, DAS issued Purchase Order 450066978 (the "Tooling PO", Exhibit "B") to PSI.[2]

4.  The Tooling PO called for PSI to manufacture 3 separate tools for DAS, specifically, GMX381 Coupe 6" and 3.5" Bracket Hard Tool, Speaker Housing Tool and GMX 381 Conv. Bracket Tool (together, the "Tools").

5.  Under the Tooling PO and DAS's General Terms and Conditions incorporated in the Tooling PO, DAS has no payment obligation for the Tools unless and until they are complete and they have received approval for manufacture of parts through the Production Part Approval Process ("PPAP").

6.  In fact, the Tooling PO expressly provides the following:

---

[2] Exhibit references are to the exhibits annexed to the accompanying Declaration of Max J. Newman, executed July 24, 2008.

>   Final Payment:  Final invoice for tools will not be accepted until full PPAP approval has been documented.  Supplier should therefore ensure that notification of approval has been received before submitting final invoice.  Refer also to payment terms on PO.

7. PSI completed the Tools prior to October 8, 2005, which was the date that DAS and its affiliates filed their Chapter 11 Petitions (the "Petition Date").  However, PSI did not receive PPAP approval for all of the Tools until November 9, 2005, i.e. after the Petition Date.

8. More specifically, both the Coupe 6" and 3.5" Bracket Hard Tool and the GMX 381 Conv. Bracket Tool were given PPAP approval prior to the Petition Date, but the Speaker Housing Tool was not approved until November 9, 2005.

9. PSI believed (and believes) that, based on the plain language of the Tooling PO, its Claim was a post-petition administrative claim entitled to priority under 11 U.S.C. § 503(b). Accordingly, this Claim was not included in the Proof of Claim (Claim No. 1420) filed by PSI's affiliate Pioneer North America, Inc. ("PNA") on January 3, 2006.[3]

10. Delphi has paid postpetition for the Speaker Housing Tool.  It has not paid for the Coupe 6" and 3.5" Bracket Hard Tool and the GMX 381 Conv. Bracket Tool (the "Unpaid Tools").  The total amount owed for the Unpaid Tools is $153,750.00.

11. PSI and Delphi have discussed the amounts owed for the Unpaid Tools several times.  Initially, Delphi took the position that the amounts owed for the Unpaid Tools were prepetition claims because those specific tools were given PPAP approval prior to the Petition Date (Herriott letter, exhibit "C").

---

[3] Claim No.1420 was later transferred by PNA to Credit Suisse First Boston, which transferred it to Whitebox Hedged High Yield Partners LP, the current holder of that claim.

12. After further discussions, the Delphi legal team took the position that the amounts due for the Unpaid Tools technically came due post-petition, but were pre-petition obligations because they did not provide any benefit to the bankruptcy estate.

13. PSI disputes this position. However, as a result of this position, in order to avoid litigation and because DAS's Chapter 11 Plan offered a generous distribution to unsecured creditors, on January 28, 2008, PSI filed an unsecured claim against DAS (Proof of Claim, Exhibit "E").

14. On March 11, 2008, Douglas Cassidy, a Delphi Proof of Claims Analyst sent PSI's counsel an e-mail (Exhibit "F") suggesting that he believed that PSI's Claim was properly a post-petition claim.

15. On March 24, 2008, PSI's counsel e-mailed Mr. Cassidy a response (Exhibit "G") indicating that PSI believed it held a post-petition claim, but that it wished to avoid litigation, particularly over the "benefit to the estate" issue and had agreed to file the Claim as a prepetition claim.

16. PSI's Claim is a meritorious claim. Throughout the many discussion of the Claim, DAS never denied the validity of the Claim. The discussion has merely been about priority and timing of the Claim.

## Late Proof of Claim

17. Under *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), and *In re Enron*, 419 F.3d 115 (2d Cir. 2005), a late claim should be allowed if it results from excusable neglect, rather than willfulness or unjustifiable conduct.

18.     Here, PSI's Claim was filed late entirely due to a good-faith dispute as to whether the Claim arose prior to, or after the Petition Date, a dispute that would impact the priority of the Claim (and the propriety of filing a Proof of Claim for its allowance).[4]

19.     In considering whether to allow PSI's Claim, the Court should consider:  (i) the danger of prejudice to the debtor, (ii) the length of the delay and whether or not it would impact the case, (iii) the reason for the delay, including whether it was within the control of the movant, and (iv) whether the movant acted in good faith.

20.     The first factor favors PSI – at this time, there is no danger of prejudice for DAS. PSI's Claim amounts to approximately 0.01% of the total unsecured claims against the estate, and the formerly existing cap on allowed unsecured debt imposed by the equity investors appears not to be relevant.

21.     The second factor also favors PSI – PSI's delay was not long, and this case has not been fully administered.  In fact, at present, the Debtors have confirmed a Plan, but whether that Plan will become effective is in doubt.  Neither the allowance nor the disallowance of PSI's Claim will likely impact the status of the Plan.

22.     The fourth factor also favors PSI – its interpretation of the Purchase Order and the impact of its post-petition claim is reasonable, PSI has negotiated about its claim with DAS in good faith, and PSI's ultimate decision to file a Proof of Claim, rather than seek an administrative claim, demonstrates its willingness to compromise.

23.     In prior hearings in this case, the Court has held that the third factor – the reason for the delay -- is the most important.  This factor also favors PSI.  Admittedly, there may well have been things PSI could have done to bring this issue to a head (such as filing an earlier

---

[4] PSI believes that the Bar Date Order does not apply to it at all because it only affects "Creditors" – i.e., those whose claims arose at the time of, or prior to, the Petition Date.

Administrative Claim Motion). However, PSI did not take this action because (a) it was expressly addressing this issue with DAS's operational, financial and legal management teams during the case, and (b) through those discussions, it sought to reach a consensual resolution with DAS in order to avoid legal fees for each side.

24. This is not a typical pre-petition claim, as DAS's obligation to pay amounts to PSI only became payable after the Petition Date, and the allowance of this Claim, at this time, would not prejudice the Debtors.

25. Instead, it is similar to the allowance of a rejection damage claim for a lessor or party to a rejected executory contract – each of which is not covered by the Bar Date Order and arises after the Petition Date.

26. This is not a case where allowance of PSI's Claim would force the renegotiation of a myriad of settlements. In fact, PSI is not aware of any portion of Debtors' Confirmed Plan that would change as a result of the allowance of this Claim.

27. PSI knew of the Bar Date, but it did not believe that the Bar Date applied to it because its Claim arose post-petition (and thus PSI was not a "Creditor" subject to the Bar Date and/or PSI's Claim was entitled to administrative expense priority).

28. PSI has not "ducked" this issue or delayed resolution of this matter. Instead, throughout this case, it has been engaged in attempts to obtain payment through its commercial relationship with DAS.

### Allowance of Administrative Claim

29. As alternative relief in its Motion, PSI sought the allowance of its Claim as an administrative claim. This issue is not addressed in Delphi's Objection.

WHEREFORE PSI respectfully requests that this Court enter an order denying Debtors' Thirtieth Omnibus Objection as to PSI's Claim No. 16809, allowing PSI's Claim No. 16809, and granting PSI such other relief as is just and equitable.

Dated: New York, New York
July 24, 2008

>BUTZEL LONG, a professional corporation
>
>By:     /s/ Robert Sidorsky
>         Robert Sidorsky (RS 2490)
>          Max J. Newman (*pro hac vice*)
>380 Madison Avenue
>22nd Floor
>New York, New York 10017
>(212) 818-1110
>sidorsky@butzel.com
>newman@butzel.com
>
>*Attorneys for Pioneer Speakers, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served this 24th day of July 2008 upon all parties of record through the Court's Electronic Case Filing System.

>/s/ Robert Sidorsky
>Robert Sidorsky (RS2490)