| | |
|---|---|
| TOGUT, SEGAL & SEGAL LLP<br>Conflicts Counsel for Delphi Corporation, *et al.*,<br>Debtors and Debtors in Possession<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000<br>Albert Togut (AT-9759)<br>Neil Berger (NB-3599) | HEARING DATE: August 26, 2008<br>AT: 10:00 A.M. |

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                   :
In re:                                         :
                                                   :        Chapter 11
DELPHI CORPORATION, *et al.*,              :        Case No. 05-44481 [RDD]
                                                   :
                               Debtors.         :        Jointly Administered
                                                   :
----------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY
RULE 9019 APPROVING SETTLEMENT AMONG THE DEBTORS, FURUKAWA
ELECTRIC NORTH AMERICA APD AND FURUKAWA ELECTRIC CO., LTD.**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors in possession, including Delphi Automotive Systems, LLC ("DAS LLC", together with Delphi, the "Debtors") in the above-captioned cases, by their undersigned counsel, as and for their motion (the "Motion") for an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement stipulation annexed hereto as Exhibit "1" (the "Settlement

Agreement") by and among the Debtors, Furukawa Electric North America APD ("Furukawa North America") and Furukawa Electric Co. Ltd. ("Furukawa Electric," together with Furukawa North America, "Furukawa") respectfully represent that:

## BACKGROUND

A. **The Debtors' Bankruptcy Cases**

1. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under Chapter 11 of Title 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' Chapter 11 cases.

2. On October 17, 2005, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors. No trustee or examiner has been appointed in the Debtors' cases. On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (the "Equity Committee").

3. On September 6, 2007, the Debtors filed the Joint Plan of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264). Subsequently, on December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors and Debtors-In-Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on

2

December 10, 2007 (Docket No. 11389).  On January 25, 2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359), which became a final order on February 4, 2008.

        4.      On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Plan) refused to participate in a closing that was commenced but not completed and refused to fund their Investment Agreement (as defined in the Plan) with Delphi.  On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments and refused to participate in the closing that would have led to Delphi's successful emergence form chapter 11.  The Debtors nevertheless continue to work with their stakeholders to achieve their goal of emerging from chapter 11 as soon as practicable.

## JURISDICTION

        5.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

        6.      The statutory predicate for the relief requested herein is Rule 9019 of the Bankruptcy Rules.

## RELIEF REQUESTED

        7.      The Debtors seek approval of the Settlement Stipulation in the form annexed as Exhibit "1" pursuant to Bankruptcy Rule 9019.  As described below, the Settlement Stipulation resolves all of the disputes among the Debtors and Furukawa concerning Furukawa claim numbers 10574 and 12347, the Counterclaim, the Furukawa Cure Objections and litigation in this Court and in the State Court (all as defined

3

below). Pursuant to the Settlement Stipulation, *inter alia*, Furukawa has agreed to: (a) pay the Debtors $16.5 million; (b) withdraw and have expunged proof of claim number 12347, which was filed in the approximate amount of $2.6 million; and (c) reduce proof of claim number 10547 from $5,069,133.35 to $4,874,679.52 and the parties have agreed to the cure portion of proof of claim number 10547.

8. Consequently, if approved, the Settlement Stipulation will enable the Debtors to recover $16.5 million, reduce claims against their estates by more than $2.7 million, and terminate costly litigation.

9. Based upon the foregoing, and the facts set forth below, the Debtors respectfully request entry of an order approving the Settlement Stipulation.

**BASIS FOR RELIEF**

A.  Background to the Proposed Settlement Agreement

   (I)  The Furukawa Contract and Purchase Orders

      i.  The Long Term Contract and Related Claim Litigation

10. Prior to the Petition Date, DAS LLC and Furukawa Electric entered into a Long Term Contract dated September 7, 2000 (the "Long Term Contract").

11. Pursuant to the Long Term Contract, DAS LLC issued Purchase Order No. SAG90I4710 to Furukawa North America (together with the Long Term Contract, the "Sensor Agreement"), and Furukawa agreed to sell to DAS LLC approximately 100% of DAS LLC's requirements for torque and position sensors (the "Sensors").

12. On October 14, 2004, DAS LLC filed a complaint (the "Complaint") against Furukawa in the Circuit Court for the County of Saginaw Michigan, and asserted that Furukawa breached the Sensor Agreement, and DAS LLC sought damages on account of that alleged breach (the "State Court Action").

4

13. Furukawa did not file a counterclaim in the State Court Action. Instead, on July 26, 2006, Furukawa filed proof of claim number 12347 in this case and asserted an unsecured non-priority claim in the amount of $2,589,684.56 for alleged breach of contract damages in connection with the Sensor Agreement ("Claim 12347").

14. On October 31, 2006, the Debtors objected to Claim 12347 pursuant to the Debtors' (I) Third Omnibus Objection (Substantive) Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 To Certain (A) Claims With Insufficient Documentation, (B) Claims Unsubstantiated By Debtors' Books And Records, and (C) Claims Subject To Modification and (II) Motion to Estimate Contingent And Unliquidated Claims Pursuant To 11 U.S.C. § 502(c) (Docket No. 5452) (the "Third Omnibus Claims Objection"). On November 22, 2006, Furukawa responded and objected to the Debtors' Third Omnibus Claims Objection (Docket No. 5788).

15. Thereafter, on March 23, 2007, Furukawa filed a motion for (a) Abstention Pursuant to 28 U.S.C. § 1334(c); (b) Relief From the Automatic Stay Pursuant to Bankruptcy Code § 362(d); and (c) an Order Limiting the Scope of the Third Omnibus Claim Objection Hearing (Docket No. 7140) so that it could continue the parties' dispute in the State Court Action. The Debtors opposed that motion and it was denied by the Court by an Order dated July 31, 2007.

16. Thereafter, on September 26, 2007, the Debtors filed and served their Claim for Affirmative Relief against Furukawa pursuant to Bankruptcy Rule 3007 in connection with Claim 12347 and asserted a claim against Furukawa of not less than $24 million in damages on account of Furukawa's breach of the Sensor Agreement (the "Counterclaim") (Docket No. 9613).

17. On February 6, 2008, Furukawa filed and served its Response and Affirmative Defenses to the Counterclaim (the "Answer") (Docket No. 12537), and the

5

parties conducted discovery concerning the allegations contained in the Counterclaim and the Answer, including document production, expert reports and depositions of witnesses.

18. The parties attended a mediation (the "Mediation") that was conducted and supervised by William Sankbiel with the goal of reaching a resolution of issues among the parties concerning Claim 12347, the Complaint in the State Court Action, the Counterclaim and the Answer.

ii. <u>The Non-Sensor Claims and Steering Cure Objections</u>

19. Prior to the Petition Date, certain of the Debtors and Furukawa entered into Purchase Order Nos. SAG90I4073, SAG90I5645, SAG50I5496, and SAG90I5497 (the "Purchase Orders") under which Furukawa would provide certain products to the Debtors other than the Sensors.

20. After the Petition Date, on July 25, 2006, Furukawa filed proof of claim number 10574 against DAS LLC for goods sold under the Purchase Orders, and asserted a claim of $5,069,133.35, consisting of (a) an unsecured non-priority claim in the amount of $4,756,206.56 (the "General Unsecured Claim") and (b) a secured claim for $312,926.79 (the "Secured Claim," together with the General Unsecured Claim, "Claim 10574").

21. Furukawa subsequently transferred the General Unsecured Claim to SPCP Group, L.L.C., as agent for Silver Point Capital Fund L.P. and Silver Point Capital Offshore Fund, Ltd. (collectively "SPCP"), as evidenced by that certain Notice of Transfer filed on January 31, 2007 (Docket No. 6766). SPCP thereafter transferred $4,000,000 of the General Unsecured Claim to Goldman Sachs Credit Partners L.P. ("Goldman Sachs"), as evidenced by that certain Notice of Partial Transfer filed on April 2, 2007 (Docket No. 7540).

22.     On July 13, 2007, the Debtors objected to Claim 10574 pursuant to the Nineteenth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That Are Subject To Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To Prior Orders (Docket No. 9535) (the "Nineteenth Omnibus Claims Objection").  Furukawa filed a Response To the Nineteenth Omnibus Objection (Docket No. 8986) on August 8, 2007.

23.     On December 10, 2007, the Debtors filed Debtors' Expedited Motion For Orders Under 11 U.S.C. §§ 363, 365, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date, (B) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Comprising Substantially All Assets Primarily Used In Debtors' Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities, And (C) Authorizing And Approving Transaction Facilitation Agreement (the "Steering Motion").

24.     On or about January 23, 2008, the Debtors served (i) Notices Of Assumption And/Or Assignment Of Executory Contract Or Unexpired Lease To Buyers In Connection With Sale Of Steering And Halfshaft Business (Docket No. 12323) (the "Assumption Notice") and (ii) Notice of Cure Amount With Respect To Executory Contract Or Unexpired Lease To Be Assumed And Assigned In Connection With Sale

7

Of Steering And Halfshaft Business (Docket No. 12324) (the "Cure Notices").  The Cure Notices stated, among other things, that the Debtors seek to assume and/or assign the Purchase Orders to Steering Solutions Corporation and certain of its affiliates.

25. On January 30, 2008, Furukawa Electric filed the Response of Furukawa Electric Company Ltd. To Debtors' Notices of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases to Buyers in Connection with Sale of Steering and Halfshaft Business and to Proposed Cure Amounts in Connection Therewith  (Docket No. 12391), and on January 31, 2008, Furukawa Electric filed the Amended Response of Furukawa Electric Company Ltd. To Debtors' Notices of Assumption and/or Assignment of Certain Executory Contracts and Unexpired Leases to Buyers in Connection with Sale of Steering and Halfshaft Business and to Proposed Cure Amounts in Connection Therewith (Docket No. 12424).

26. On the same day, Furukawa North America filed the Objection Of Furukawa North America To (I) Debtors' Notice of Cure Amount With Respect to Executory Contract Or Unexpired Lease to be Assumed and Assigned in Connection with Sale of Steering and Halfshaft Business and (II) Debtors' Notice of Cure Amount With Respect to Executory Contract to be Assumed and Assigned under Plan of Reorganization (Docket No. 12426) (jointly with Furukawa's responses to the Cure Notices, the "Furukawa Cure Objections").

27. On February 25, 2008, the Court entered an Order Under 11 U.S.C. §§ 363, 365, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (A) Authorizing And Approving (I) Sale Of Certain Of Debtors' Assets Compromising Substantially All Of The Assets Of Steering And Halfshaft Business Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Lease, And (III) Assumption Of Certain Liabilities And (B) Authorizing

8

And Approving Transaction Facilitation Agreement (Docket No. 12868) (the "Sale Approval Order"). The Sale Approval Order, among other things, adjourned the Furukawa Cure Objections.

28. The Debtors and Furukawa continued their reconciliations and negotiations concerning the objections to Claim 10574 and the Furukawa Cure Objections after entry of the Sale Approval Order.

B. The Proposed Settlement Agreement

29. After conducting diligence and engaging in arms-length negotiations, and the Mediation, the Debtors and Furukawa have negotiated the Settlement Stipulation, subject to Bankruptcy Court approval, the significant portions of which are[1]:

    a) Condition Precedent. The Settlement Stipulation will be effective upon the entry of an Order by this Court approving the Settlement Stipulation and such Order becoming a Final Order (the "Effective Date");

    b) Payment to DAS LLC. Not later than three (3) calendar days after the Effective Date, Furukawa will pay $16.5 million to DAS LLC;

    c) Claim 12347. On the Effective Date, Claim 12347 will be expunged;

    d) Reduction of and Allowance of Claim 10574 and Waiver of Rights. The parties acknowledge and agree that Claim 10574 will be allowed against DAS LLC in the amount of $4,874,679.52. With exception only to the Cure Amounts, Claim 10574 will be treated as a pre-petition general unsecured non-priority claim. Furukawa, SPCP and Goldman Sachs, on each of their behalves and on behalf of each of their predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of their former, current, and future officers, directors, owners, employees, and other agents (the "Releasing Parties"), acknowledge that the allowance of Claim 10574 is in full satisfaction of Claim 10574 and they waive any and all rights to assert that Claim 10574 is anything but a pre-petition general unsecured non-priority claim against any and all of the Debtors other than DAS LLC and any of their officers, directors, owners, employees and agents;

---

[1] This Motion provides a summary of the parties' Settlement Stipulation. The provisions of the Settlement Stipulation annexed hereto as Exhibit 1 govern the parties' agreement. Capitalized terms which are not defined herein shall have the defined meanings set forth in the Settlement Stipulation.

9

e) <u>Allocation of Claim 10574</u>. Claim 10574 will be allocated: $4 million to Goldman Sachs; $756,206.56 to SPCP; and $118,472.96 to Furukawa;

f) <u>Resolution of Furukawa Cure Objections</u>. The cure amount for Purchase Order number SAG90I4073 is $2,752,655.73 (the "4073 Cure Amount"); the cure amount for Purchase Order number SAG90I5645 is $8,840.80 (the "5645 Cure Amount"); the cure amount for Purchase Order number SAG90I5496 is $3,550.71 (the "5496 Cure Amount"); the cure amount for Purchase Order number SAG90I5497 is $28,805.43 (the "5497 Cure Amount" and, together with the 4073 Cure Amount, the 5645 Cure Amount, and the 5496 Cure Amount, the "Cure Amount"). The 4073 and 5645 Cure Amounts will be credited against, and reduce the allowed amount of Claim 10574 when those amounts are paid to Furukawa, and the 5496 and 5497 cure amounts will be credited against, and satisfy, the Allowed Amount of Claim 16555, which was fixed by an Order of the Court dated September 4, 2007, when those Cure Amounts are paid to Furukawa;

g) <u>Releases</u>. As of the Effective Date, Delphi and Furukawa shall be deemed to have released and discharged each other, their agents, attorneys and assignees and waived any right to assert any other claim, cause of action, demand, or liability of any kind and nature whatsoever against each other, their agents, attorneys and assignees based upon, arising out of, related to, or by reason of any event, cause, thing, act, statement, or omission whether known or unknown as of the Effective Date which relate to Claim 12347, the Long Term Contract, the Sensor Agreement and/or the Sensors. This release shall not affect the parties' respective payment obligations pursuant to the Settlement Stipulation.

h) <u>Withdrawal of Responses</u>. On the Effective Date, Furukawa's Responses to the Third and Nineteenth Omnibus Claims Objections and the Furukawa Cure Objections will be deemed withdrawn, with prejudice, and without the need for any further writing;

i) <u>Withdrawal of Michigan State Court Action</u>. Promptly after the Effective Date and Furukawa's payment to DAS LLC, each of the Parties will file such documents and do such things necessary to withdraw, with prejudice, the State Court Action, including, without limitation, all complaints, counter-claims and cross-claims, and they will stipulate to the discontinuance of the State Court Action with prejudice, with each Party to bear its own costs and expenses, including, without limitation, attorneys' fees;

30. Given the significant cost of litigation regarding the Counterclaim, the Debtors' Objections to the Furukawa Proofs of Claim and the Furukawa Cure Objections, the Debtors have concluded that the Settlement Stipulation, which provides for, among other things, the recovery of $16.5 million by DAS LLC, the elimination and reduction of nearly $3 million of claims against the Debtors' estates and the termination

10

of the State Court Action, is fair and reasonable and in the best interests of the Debtors and their creditors.

### Applicable Authority

31. The Debtors respectfully request the entry of an Order pursuant to Rule 9019(a) of the Bankruptcy Rules approving the Settlement Stipulation and the settlement terms contained therein. Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are "a normal part of the process of reorganization..." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Commc'ns Corp., 327 B.R. 143, 159 (decision to accept or reject settlement lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

32. Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of a debtor's estate. See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Comm'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it."). In general, compromises in the bankruptcy context should be approved unless they "'fall below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

11

33.     The Supreme Court in <u>TMT Trailer Ferry</u> set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors.  <u>TMT Trailer Ferry</u>, 390 U.S. at 424-25; <u>see also</u> <u>Nellis</u>, 165 B.R. at 122; <u>Fry's Metals, Inc. v. Gibbons</u> (<u>In re RFE Indus., Inc.</u>), 283 F.3d 159, 165 (3d Cir. 2002).

34.     Courts in this district have further elaborated on these factors to consider, including:  (a) the balance between the likelihood of plaintiffs' or defendants' success should the case go to trail vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the competency and experience of counsel who support the settlement, and (d) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.  <u>Adelphia Commc'ns</u>, 327 B.R. at 159-60; <u>accord</u> <u>In re Texaco Inc.</u>, 84 B.R. 893, 802 (Bankr. S.D.N.Y. 1988).

35.     The Bankruptcy Court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances. <u>See</u> <u>Adelphia Commc'ns</u>, 327 B.R. at 159-60;  <u>see also</u> <u>Penn Centr.</u>, 596 F.2d at 1114.  Instead, the court's proper "role is to determine whether the settlement as a whole is fair and equitable, "<u>In re Lee Way Holding Co.</u>, 120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities'."  <u>In re Telesphere Commc'ns, Inc.</u>, 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).  To that end,

courts should not substitute their own judgment for that of the debtor, but rather should "'canvas the issues'" to affirm that the proposed settlement falls above "'the lowest point in the range of reasonableness.'" Adelphia Comc'ns, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust Co., 17 F.3D 600 (2d Cir. 1994).

36.     The Settlement Agreement provides for the immediate consensual resolution of the objections to Furukawa's Claims, the Furukawa Cure Objections, the Counterclaim and related litigation in this Court and in the State Court and obviates the cost and delay of those litigations. The disputes that are implicated by the Counterclaim and the Answer include breach of contract allegations that would require a trier of fact to consider the testimony of fact witnesses concerning events that occurred years ago, and the opinions of expert witnesses concerning metallurgical components of the Sensors.

37.     The proposed settlement provides for significant benefits to the Debtors and their estates, including a $16.5 million payment to DAS LLC and the elimination of nearly $3 million of claims against the Debtors' estates and the risks attendant to litigation of objections of those Claims. The settlement of the Counterclaim was in part the product of the Mediation, which was supervised by an independent mediator.

38.     Based upon the foregoing, the Debtors respectfully submit that the Settlement Stipulation is an appropriate exercise of the their business judgment and represents a fair, reasonable and extensively negotiated settlement that falls within the range of reasonableness, and which is in the best interests of the Debtors' estates.

13

**Notice**

39.     Notice of this Motion has been provided in accordance with the Amended Supplemental Order Under 11 U.S.C. Sections 102(a) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures (Docket No. 5418), as amended and the Settlement Procedures Order. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

**Memorandum of Law**

40.     Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order (a) authorizing and approving the Settlement Stipulation and (b) granting them such other and further relief as is just.

Dated:  New York, New York
        August 6, 2008

                                        DELPHI CORPORATION, *et al.*
                                        By their attorneys,
                                        TOGUT, SEGAL & SEGAL LLP
                                        By:

                                        /s/ Neil Berger
                                        ALBERT TOGUT (AT-9759)
                                        NEIL BERGER (NB-3599)
                                        Members of the Firm
                                        One Penn Plaza
                                        New York, New York 10119
                                        (212) 594-5000