1

1

2     UNITED STATES BANKRUPTCY COURT

3     SOUTHERN DISTRICT OF NEW YORK

4     Case No. 05-44481

5     Adversary Case No. 06-01902

6     - - - - - - - - - - - - - - - - - - - -x

7     In the Matter of:

8

9     DELPHI CORPORATION,

10

11          Debtor.

12    - - - - - - - - - - - - - - - - - - - -x

13

14               United States Bankruptcy Court

15               One Bowling Green

16               New York, New York

17

18               August 5, 2008

19               10:08 AM

20

21    B E F O R E:

22    HON. ROBERT D. DRAIN

23    U.S. BANKRUPTCY JUDGE

24

25

2

1

2    HEARING re Doc #9535; Claims Objection Regarding Claim of State

3    of Michigan, Department of Treasury - SBT Taxes as Objected to

4    on Debtors' Twenty-First Omnibus Objection.

5

6    HEARING re Doc #10445; Response to Motion for Omnibus Objection

7    to Claims Debtor's Twenty-First Omnibus Filed by State of

8    Michigan Department of Treasury.

9

10   HEARING re Doc #10713; Debtors' Omnibus Reply in Support of

11   Twenty-first Omnibus Objection.

12

13   HEARING re Doc #11296; State of Michigan Department of

14   Treasury's Supplemental Response to Debtors' Statement of

15   Disputed Issues With Respect to Proofs of Claim Numbers 6354,

16   6383, 9272 and 16633.

17

18   HEARING re Doc #11551; Debtors' Supplemental Reply with Respect

19   to Proofs of Claim Numbers 6354, 6383, 9272 and 16633.

20

21   HEARING re Doc #13724; State of Michigan Department of

22   Treasury's Supplemental Response to Debtors' Statement of

23   Disputed Issues with Respect to Proof of Claim Number 16633,

24   with respect to Michigan Single Business Taxes for the Period

25   of January 1, 2005 through October 7, 2005.

3

1

2     HEARING re Doc #13842; Debtors' Supplemental Reply with Respect

3     to Proof of claim Number 16633 with Respect to Michigan Single

4     Business Taxes for the Period of January 1, 2005 through

5     October 7, 2005.

6

7     06-01902 Adversary Proceeding - Delphi Corporation v. NYCH LLC

8

9     HEARING re Discovery Conference.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     Transcribed by:  Pnina Eilberg

4

1

2   A P P E A R A N C E S :

3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

4        Attorneys for Debtors

5        300 South Grand Avenue

6        Los Angeles, CA 90071

7

8   BY:   KURT RAMLO, ESQ.

9

10

11   STATE OF MICHIGAN

12   OFFICE THE ATTORNEY GENERAL

13        3030 W. Grand Boulevard

14        Detroit, MI 48202

15

16   BY:   PEGGY A. HOUSNER, First Assistant Attorney General

17

18

19   STATE OF MICHIGAN

20   DEPARTMENT OF TREASURY

21        Attorneys for Tax Compliance Bureau

22        7285 Parsons Drive

23        Dimondale, MI 48821

24

25   BY:   STAN WEBER, ADMINISTRATOR

5

1

2     LAZARUS & LAZARUS, P.C.

3          Attorneys for RCS Computer

4          240 Madison Avenue

5          New York, NY 10016

6

7     BY:   HARLAN M. LAZARUS, ESQ.

8

9

10    TOGUT, SEGAL & SEGAL LLP

11         Conflicts Counsel to Delphi Corporation

12         One Penn Plaza

13         New York, NY 10119

14

15    BY:   STEVEN S. FLORES, ESQ.

16

17

18

19

20

21

22

23

24

25

6

1              P R O C E E D I N G S

2              THE COURT:  Please be seated.  Good morning, Delphi

3    Corporation.

4              MR. RAMLO:  Good morning, Your Honor.  Kurt Ramlo,

5    Skadden, Arps, Slate, Meagher & Flom on behalf of the debtors.

6              Your Honor, we're here on the twenty-fifth claims

7    hearing in the Delphi matter and the first item we'd like to

8    cover which, although it's not on your agenda, is to indicate

9    to the Court that we will be handing up ten stipulations

10   resolving twelve proofs of claims that were noticed up through

11   the notice of presentment procedure.

12             THE COURT:  That's fine.

13             MR. RAMLO:  Your Honor, I also understand that it's

14   the debtors' practice to occasionally update the Court on the

15   status of the claims reconciliation process.  And I have

16   available today a chart that gives you the status of sub class

17   of the claims, tax claims in particular.

18             THE COURT:  Okay.

19             MR. RAMLO:  If I may approach and submit this?

20             THE COURT:  That's fine.

21             MR. RAMLO:  With me today, Your Honor, is Dean Unrue,

22   Delphi's claims administrator, and as you can see from the

23   chart, there were approximately -- or there were 532 tax claims

24   filed in an amount above 593 million.  And based on the

25   activity to date, that number has been reduced to approximately

7

1    22.7 million of allowed tax claims, and that includes a

2    combination of secured, priority and general unsecured claims.

3                THE COURT:  I got a little confused by the open and

4    adjourned items since the Michigan one is over a million it

5    doesn't seem to fit these two numbers.  Was the adjourned --

6    did that include the Michigan one?

7                MR. RAMLO:  I believe the adjourned does include the

8    Michigan one, Your Honor.

9                THE COURT:  Okay.

10                MR. RAMLO:  And the open claims are claims that are

11    still being reconciled.

12                THE COURT:  Okay.  Thank you.

13                MR. RAMLO:  All right.  And, Your Honor, we now turn

14    to the contested matter that's scheduled for today with respect

15    to Michigan Single Business Tax.

16                Again, Kurt Ramlo, Skadden, Arps, Slate, Meagher &

17    Flom, on behalf of the debtors.  With me today, Your Honor, is

18    Mr. Jim Whitson who is the chief tax officer of Delphi who has

19    submitted two declarations in support of the debtors' objection

20    to this claim under the Michigan Single Business Tax.  Also

21    with us is Ms. Denise Albrecht, who's the director of state and

22    local income taxes for Delphi.

23                Your Honor, the parties, Michigan and the debtors,

24    have prepared a joint exhibit binder which I understand is with

25    Your Honor.  There are nine exhibits.  The first exhibit is a

8

1    copy of the proof of claim asserting this SBT claim, and that's

2    in a separate confidential binder, Your Honor, with a salmon

3    tab.  The next two exhibits are the declarations of Mr.

4    Whitson, and then the remaining six exhibits are documents that

5    relate to the SBT tax and the federal tax returns.

6            We've conferred with Michigan about the exhibits, and

7    the parties agree that these exhibits are admissible.  Michigan

8    has indicated that it will not be cross-examining Mr. Whitson

9    and so there'll be no live testimony with respect to this

10   contested matter.  And based on that, the debtors move to have

11   these exhibits moved into evidence.

12           THE COURT:  Okay.  That's correct, ma'am?

13           MS. HOUSNER:  Yes, Your Honor.  Peg Housner from the

14   Michigan Department of Treasury, or from the Michigan Attorney

15   General's office on behalf of the Michigan Department of

16   Treasury.  And yes, I agree with Mr. Ramlo's summation.

17           THE COURT:  Then I'll admit these exhibits into

18   evidence.

19   (Proof of Claim Asserting SBT Claim, Debtors' Exhibit 1, was

20   hereby admitted into evidence, as of this date.)

21   (Declarations of Mr. Whitson, Debtors' Exhibits 2 and 3 were

22   hereby admitted into evidence, as of this date.)

23   (Documents Relating to SBT Tax and Federal Returns, Debtors'

24   Exhibits 4-9, were hereby admitted into evidence, as of this

25   date.)

9

1          MR. RAMLO:  Thank you, Your Honor.  Your Honor, the

2     parties have also conferred about one of the figures that

3     appears in the parties briefs with respect to the amount of the

4     proof of the claim if Michigan were to prevail on the first

5     issue, the issue of whether the debtors can account for R&E

6     expenses in a different manner under federal returns as opposed

7     to their state returns.

8          And in the debtors' papers we had indicated that if

9     Michigan prevailed that that number would be about 946,000.

10    Upon further consultation with the State of Michigan, the

11    parties have now agreed, and have stipulated, that that amount

12    would be 916,157 dollars.  And I believe Michigan will openly

13    stipulate to that.

14         MS. HOUSNER:  Yes, Your Honor, we also agree.

15         THE COURT:  Okay.

16         MR. RAMLO:  Your Honor, Michigan's proof of claim

17    rises under the Michigan Single Business Tax.  It arises from

18    Michigan's contention that the debtors, under the SBT, are not

19    permitted to account for their research and experimental

20    expenses that are either capitalized and amortized on their

21    federal return or can be deducted in full; that whatever

22    election the debtors make with respect to those expenses the

23    debtors must make the same election on their SBT return.

24         The SBT statute, however, very plainly says that the

25    debtors must calculate their tax base under the SBT by

10

1   reference to business income which is defined as federal

2   taxable income as defined in Section 63 of the Internal Revenue

3   Code.  And that is precisely what the debtors did.

4           THE COURT:  Is there any dispute that if the debtors

5   had taken the full deduction on their federal return that that

6   would count as income under the Michigan statute?

7           MR. RAMLO:  Yes.

8           THE COURT:  Is the issue truly just consistency of

9   the federal return and the same position for the Michigan SBT?

10          MR. RAMLO:  With respect to the first issue, yes,

11  Your Honor.

12          THE COURT:  Okay.

13          MR. RAMLO:  And Michigan basically raises two

14  challenges with respect to that.  One is that they take the

15  position that a portion of the statute that requires a taxpayer

16  to submit a copy of their federal return when read in

17  conjunction with the definition of business income requires --

18  indicates that the statute requires the taxpayer to take the

19  number that appears on the federal return and transpose that

20  number over to the SBT return.

21          Another argument proffered by Michigan is that the

22  instructions that accompany the SBT return indicate that you

23  take the number off a certain line item on your federal return

24  and input that number on your SBT return.  Again, as the

25  statute would indicate, the statute does not state that you

11

1    just take a number from your federal return and transpose it

2    over.  What it says is that your federal taxable income is as

3    defined in the Internal Revenue Code, not as found in your

4    federal return or not as calculated on your federal return

5    submitted to the IRS.

6           The notion that a taxpayer can calculate their

7    federal taxable income for state purposes differently than for

8    federal purposes is supported by other parts of the statute.

9    The first is that when calculating federal taxable income the

10   debtors -- the taxpayer can choose to either use the 1999

11   version of the Internal Revenue Code or use the current tax

12   year of the Internal Revenue Code with respect to the tax

13   period at issue.

14          Another aspect of the statute is that with respect to

15   accounting for compensation, the State of Michigan wanted to

16   indicate that you must follow the same method that you use on

17   the federal level; Michigan knew how to do that.  With respect

18   to compensation, the statute makes clear that if the debtor

19   uses a cash or accrual basis of accounting for compensation,

20   they must use the same method on the state return.

21          Another aspect of why just merely transposing over a

22   number from the federal return to the state return is not

23   workable, Your Honor, is as you have here, there is a different

24   set of taxpayers that are on the federal return that are on the

25   SBT return here.  Here only four of the debtors that appear on

12

1    the SBT return and to just merely transpose that number over

2    doesn't work.  There has to be some kind of reconciliation

3    between those two numbers.

4         I'm kind of weaving back a little bit, Your Honor.

5    As I've indicated, Michigan says that the instructions that

6    come with the SBT return require the taxpayer to just insert

7    this number.  It's important to note that under Michigan law,

8    the SBT instructions are not promulgated under its

9    Administrative Procedures Act, does not have the force of law,

10   at most provides guidance and it cannot impose any requirement

11   not found in the SBT statute.  And as we indicated, there's

12   nothing in the statute that requires the transposition of the

13   number from the federal return.

14        The requirement that a taxpayer supply a copy of the

15   federal return or if there's an amendment or an adjustment,

16   modification of the federal return requires the taxpayer to

17   file an amended SBT return, is wholly consistent with the

18   method that the debtors have taken here.  Michigan suggests

19   that the requirement for submitting that return indicates that

20   the taxpayer must follow that federal return.  But the

21   supplying of that federal return has utility and meaning in

22   this context.  The IRS is going to audit the federal return;

23   they will make adjustments based on whether certain activity on

24   that return is permissible under the Internal Revenue Code.

25   That, in turn, would affect the calculations of the pro forma

13

1   federal taxable income that the debtors have made on their SBT

2   return.  For example, if the debtors had affiliant (ph.) of

3   what they consider R&E expenses on their federal return but

4   after audit the IRS determined that only 900 million of those

5   expenses were, in fact, falling under the category of R&E, that

6   would obviously affect the SBT return when the debtors go to do

7   their pro forma calculation of what their expense is.  On the

8   federal return, after audit, you would have to capitalize and

9   amortize 900 million.  On the SBT return, your full deduction

10  in the year incurred would be similarly limited to 900 million.

11  So the providing of the return does not indicate that you

12  cannot do a pro forma calculation of federal taxable income for

13  SBT purposes.

14          As I indicated earlier, Your Honor, if Michigan were

15  to prevail on this theory, the parties have stipulated that the

16  amount is 916,157 dollars.

17          I'd like to turn to Michigan's second argument.  The

18  SBT was repealed effective as of the end of 2007.  When the

19  debtors calculated their federal taxable income for state

20  purposes, rather than prepare pro forma federal tax returns

21  from scratch, they took their federal return, as filed with the

22  IRS, and they did a one-sheet reconciliation to take that

23  number over to the number that would result if they fully

24  deducted R&E expenses in the year incurred.  But rather than

25  fill out a whole new set of returns, they did this one page

1    reconciliation.  That reconciliation involved terminology on

2    the form called addbacks.  The first line of that form was to

3    reverse the capitalization and amortization on the federal

4    return, it's on this one-page reconciliation, turn that into a

5    deduction.  But because there was also a one-tenth amortization

6    of that amount for the same year on the federal return, you

7    needed to add that back for your pro forma calculation.  There

8    was a tail off of amortization from R&E expenses taken in prior

9    years, 1999, 2000-2004.  One-tenth of those amounts also

10   appeared on the 2005 federal return as filed.  The

11   reconciliation sheet added back those amounts so that you came

12   to an accurate calculation of federal taxable income as if

13   there was a return from scratch that fully deducted R&E

14   expenses in the year incurred.

15          Michigan views those addbacks, which were made on the

16   2002-2004 returns and on the return at issue here, the 2005

17   return, as somehow making Michigan whole or somehow a recapture

18   of some tax benefit that has to be given back.  But when seen

19   in the light of the purpose of those addbacks, they're just

20   really computational shortcuts, a way to do on one page what

21   would otherwise require preparation of whole new pro forma

22   returns.

23          Taking those addbacks and viewing them as somehow of

24   a make-whole mechanism, Michigan then points to the termination

25   of the SBA in 2007 and the fact that there's nothing under the

15

1    new tax scheme, called the Michigan Business Tax, as implicitly

2    requiring that those addbacks all be exhausted by the end of

3    2007.  So, for instance, 2007 would normally be amortized over

4    ten years, but if you had to add those back before 2007, you'd

5    have to do that in six years.  So Michigan's position, with

6    respect to the number that's in the briefs, I forget the pro

7    rata number for pre-petition but for 2005 their assertion of

8    what the liability would be on this theory is 1.44 million.

9            The 2002 addbacks would be taken over six years.  So

10   they would require one sixth of the 2002 R&E expenses to be

11   added back on the 2005 return, one fifth for 2003, one fourth

12   for 2004.  For 2005, one third.  And based on this accelerated

13   addback theory, Michigan comes up with the 1.44 million number.

14   But by doing the addbacks in this manner, ironically you come

15   up with a calculation that does not fit under any version of

16   the Internal Revenue Code, not the '99 version permitted by the

17   SBT and not any other version of the Internal Revenue Code.

18   There's no statutory basis in the SBT or the Internal Revenue

19   Code that would require this calculation.

20           To that extent, it's inconsistent with Michigan's

21   first issue that you must account for R&E expenses in the same

22   way on both returns; either way complies with the Internal

23   Revenue Code.  The accelerated addback theory has no basis and

24   actually conflicts with the Internal Revenue Code.

25           Now, the repeal of the SBT really should be of no

16

1    moment because the nature of the SBT tax is fundamentally

2    different than the Michigan Business Tax.  The Single Business

3    Tax is a value added tax that takes into account labor, capital

4    and other items.  The Michigan Business Tax is a combination of

5    two types of tax, one based on gross receipts and the other

6    based on income.

7            Given those fundamentally different natures of the

8    taxes and given the examples of other statutory transition

9    rules, indicating that certain items that were not fully

10   exhausted or taken care of under the SBT have some utility

11   under the MBT or some limited utility, through percentages or

12   otherwise or certain time limits, there's nothing in the MBT

13   that requires or permits the addbacks or the amortization to

14   occur under the MBT.  Michigan is concerned that the addbacks

15   that have been done -- and this is again, this is assuming the

16   addbacks have some independent tax significance, which they do

17   not, they were computational shortcuts.  But assuming they did,

18   there's nothing in the SBT or the MBT that indicates that

19   because those were not exhausted at the end of 2007 that they

20   must be accounted for before the end of 2007 or that they must

21   be accounted for under the MBT.

22           And Michigan knows how to do that kind of thing if it

23   wants to.  Under the SBT there was a provision that permitted

24   taxpayers to fully deduct, in the year incurred, certain

25   tangible asset cuts rather than depreciating them over time.

17

1   When you did that, however, on subsequent returns you had to

2   make adjustments that in essence made additions to your tax

3   base in order to account for, in essence, permitting the early

4   deduction of those amounts.

5        The MBT doesn't have any kind of scheme like that.

6   There's just no statutory basis and no really logical basis to

7   require these addbacks to be exhausted before the end of 2007.

8        And, Your Honor, based on that we ask that the Court

9   find that the way the debtors have calculated their returns and

10  submitted their returns is permissible under the Single

11  Business Tax and that Michigan's theory for accelerated

12  addbacks lacks merit and that the claim be disallowed.

13       THE COURT:  Okay.  Just a couple of questions on the

14  addback issue.  You say that in the past Delphi would add back

15  the pro rata share of the depreciation and you say that was

16  just for convenience sake?

17       MR. RAMLO:  For computational convenience, Your

18  Honor.

19       THE COURT:  Am I wrong, there was a cost to doing

20  that that was not minimal, right, to Delphi?

21       MR. RAMLO:  Your Honor, when you did the addbacks the

22  end result of going from a federal taxable income, as filed

23  with the IRS, you do these adjustments, that end number is the

24  same exact number that you would get if you just did not do

25  those reconciliations, you just prepared a new set of tax

18

1    forms.

2        THE COURT:  Because you depreciated one-tenth of the

3    year?

4        MR. RAMLO:  On the federal return.

5        THE COURT:  On the federal return, okay.  Because

6    that reflected that you did that one-tenth payment?

7        MR. RAMLO:  Yes.

8        THE COURT:  You paid on one-tenth?

9        MR. RAMLO:  Yes, you amortize one-tenth per year.

10       THE COURT:  I understand.  My second question is, I

11   didn't see it in the record, but I'm going to ask both of you

12   if I missed something.  Is there anything in the record that

13   deals with the -- whether the position that Michigan is taking

14   here with regard to the SBT having to be based on the federal

15   return, whether that position is one that has been consistently

16   taken by the State of Michigan, not just with Delphi but always

17   with other taxpayers?  Is there anything in the record on that

18   point?

19       MR. RAMLO:  There is something in the record, Your

20   Honor.  Mr. Whitson's first declaration indicates that a

21   predecessor-in-interest to one of the debtors had done the

22   calculations in this same manner and that those calculations

23   survived audit on more than one occasion.

24       THE COURT:  Meaning in the same manner, i.e., the

25   federal return was different than the basis for federal income

1    on the state SBT?

2            MR. RAMLO:  That's correct, Your Honor.

3            THE COURT:  Okay.  All right.

4            MR. RAMLO:  I think it's fair to note, Your Honor,

5    that the debtors explored and briefed, in their first set of

6    papers, the issue of equal protection based on the results of

7    discovery and perhaps a bit of compromise; the debtors are not

8    pursuing that argument today.

9            THE COURT:  Let me just -- oh, I see, paragraph 9.

10   Okay.  I see it.

11           MR. RAMLO:  Your Honor, if I may return briefly to

12   your prior question about the one-tenth amortization?  On page

13   11 of the most recent supplemental reply and in Mr. Whitson's

14   second declaration, paragraph 11, we provided three charts that

15   attempted to illustrate, a little more visually, what the

16   purpose of that reconciliation sheet was.  And the first chart

17   shows how the R&E expenses were capitalized on the federal

18   return, and then one-tenth of those amounts were amortized in

19   each of those years.  And that would be the first chart in

20   paragraph 24.

21           The second chart seeks to illustrate, more visually,

22   the function of the schedule that was attached to the SBT

23   return.  It shows that the amortizations in the top third are

24   what, in essence, inherent and subsumed within the federal

25   return.  Then the next line shows the reversal of the

20

1    capitalization and amortization so it becomes a deduction in

2    full.  But because of the inherent deductions on the federal

3    taxable income on the federal return we needed to have

4    reversing entries so, in essence, that we were not deducting

5    more than our expenses.  Without the second set of addbacks, if

6    we had a billing of R&E expenses we would be, actually,

7    deducting on our SBT return more than a billion in R&E

8    expenses.  But these cancelling entries, the entries on the

9    bottom third cancel the entries on the top third so that all

10   that you're left with is the middle line of a deduction in full

11   of R&E expenses in the year incurred.

12           The third chart seeks to illustrate how it would

13   appear, a part of the return, if you had prepared pro forma

14   federal returns from scratch to demonstrate federal taxable

15   income for SBT purposes.

16           Thank you, Your Honor.

17           THE COURT:  Okay.

18           MS. HOUSNER:  Good morning, Your Honor.

19           THE COURT:  Good morning.

20           MS. HOUSNER:  Peg Housner from the Michigan Attorney

21   General's office on behalf of the Michigan Department of

22   Treasury.  I know that you've had your peek at the Michigan

23   Single Business Tax, I'm going to try to at least give you some

24   explanation as to, obviously, our position on this and some of

25   the historical information on the Michigan Single Business Tax

21

1    as it relates to Delphi and some of the other automotive

2    suppliers in the State of Michigan.  But I think that the first

3    issue that the Court needs to look at is number one, this is a

4    Michigan tax.  It was enacted by the Michigan legislature.

5    It's been enforced and -- to the rules, policies and procedures

6    of the Michigan Department of Treasury as enacted by the

7    legislature.

8            The treatment that Delphi is asking you to take today

9    is in contradiction to the historical analysis and historical

10   procedures and policies that the Michigan Department of

11   Treasury has established in regards to this tax.

12           Delphi is asking this Court to reinterpret our

13   statute in a manner that is contrary to the practices and the

14   policies that have been established by the Michigan Department

15   of Treasury.

16           Michigan has historically and consistently demanded

17   that all taxpayers filing a Michigan Single Business Tax use

18   the same federal taxable income as their Michigan business

19   income for that same reported tax year.  Mr. Ramlo has made

20   references this morning that there may have been something in

21   the past wherein someone else was allowed to take this

22   specialized treatment or provide one federal tax return that

23   calculated the R&E expense one way, filing another Michigan tax

24   return with the R&E expense being handled another way, either

25   the full deduction or the amortization.  But historically

22

1   Michigan has not allowed that.

2          THE COURT:  What's in the record beyond the form, the

3   tax form, that has the instruction on it to support that

4   proposition?

5          MS. HOUSNER:  Well, Your Honor, Michigan Department

6   of Treasury has established many revenue administrative

7   bulletins and procedures, but for argument's sake, Your Honor,

8   I can try to give you some other examples.  I understand that

9   the argument's being made by us that because a tax return

10  requires that, that we're looking that information coming from

11  the tax return right into the -- from the federal tax return

12  into the Michigan Single Business Tax return.  But, Your Honor,

13  when you read that in relationship to the statute and the

14  history of the statute and the policies that Michigan has

15  enacted, that is not a correct interpretation of our statute.

16         Your Honor, to continue with my presentation to the

17  Court today, Delphi is now asserting that the treatment that it

18  receives from the Michigan Department of Treasury is not

19  authorized by statute.  That the treatment is not fair or equal

20  in relationship to other taxpayers.  This is a business that

21  has benefitted, in the past, from many of the practices and

22  policies of the Michigan Department of Treasury in the state.

23  And it's a state that has extended itself to this business in

24  many ways to assist the financial viability of the automotive

25  industry in Michigan.

23

1          In these trying economic times Michigan has tried to

2    be innovative and tried to facilitate the needs of some of the

3    taxpayers there.  But Michigan has an obligation to all its

4    taxpayers that it must continue to equally enforce all its laws

5    and regulations in a consistent and legal manner.  It appears

6    very disingenuous now for Delphi to complain that it's not

7    being properly and fairly treated under the law.

8          Specifically, the Court is being asked to interpret

9    the provisions of the Internal Revenue Code, as described by

10   Mr. Ramlo, specifically Section 63, Sections 174, which is the

11   R&E expense, and 59(e) which gave the taxpayer some options as

12   to amortizing or taking a full deduction of their expenses.

13         We're taking those in conjunction with the Michigan

14   Single Business Tax and its definitional provisions, as also

15   discussed by Mr. Ramlo earlier, in that -- the relationship

16   between the Internal Revenue Code, and its requirements, and

17   the Michigan Single Business Tax Code.  This Court is being

18   asked to reinterpret that relationship.

19         Delphi argues that the state's interpretation of the

20   statute is wrong; it's not supported by past policy and

21   practice.  Delphi says that our longstanding requirement that

22   federal taxable income is filed and reported and Michigan

23   business income must be the same is not supportable.  But in

24   that Delphi will assert that the interpretation of Michigan

25   compiles laws allows them to pick and choose the provisions of

24

1    the Internal Revenue Code that they choose when they complete

2    their federal tax return, which provisions of the Internal

3    Revenue Code they use when they -- that they're using two

4    different, separate types of computations.  When they're filing

5    their federal income tax return they're calculating their

6    expenses in one way.  When they reformulate and file in

7    Michigan they're using another standard which, again, Michigan

8    states is not the correct way to calculate that.

9            THE COURT:  Let me make sure I understand that.  If,

10   in fact, Delphi had reported on its federal tax form the full

11   deduction for R&E that it's using as the basis for the income

12   on the SBT form, if there was parallelism in both forms, then

13   Michigan wouldn't have a problem with that?

14           MS. HOUSNER:  No, the income as reported in the

15   federal return would fall through to the Michigan Single

16   Business Tax return.

17           THE COURT:  Okay.

18           MS. HOUSNER:  But what happens, Your Honor, with that

19   situation when Delphi does not do that, as was somewhat

20   explained by Mr. Ramlo, is that you have a federal tax return

21   wherein they've taken this full deduction -- I mean, they've

22   amortized their R&E expenses over the next ten years.  And on

23   the Michigan return they have fully deducted that expense.  In

24   that way -- number one, we have a contradiction.  And our

25   position in Michigan is that that's not an allowable

25

1    contradiction.  That the state has not allowed other taxpayers

2    to file the same return or for the same tax year -- I'm sorry,

3    different reported incomes.  We have consistently not allowed

4    that.

5           I know that part of the argument that Delphi makes

6    goes back to the Michigan statute about the allowance of

7    whether they want to file pursuant to the Internal Revenue Code

8    in effect at 1999 or the present year.  Our position with that

9    is, is that Delphi, when they choose or when they say that

10   they're choosing to file their tax return specific to one year

11   or the other, in essence what they're really doing is trying to

12   cherry-pick those provisions of the Internal Revenue Code that

13   fit them at that particular circumstance.  Michigan's policy

14   has been that the returns need to be consistent.  And when we

15   get away from that -- I mean, Michigan's Single Business Tax

16   statute and the Internal Revenue Code are very much entwined.

17   When we start to deviate from that, we end up with situations

18   wherein we have a problem.

19          THE COURT:  Does the Michigan form say use the number

20   from this year's federal form or does it say use the number

21   from this year's federal form or what you could have deducted

22   under the 1999 version of the code?

23          MS. HOUSNER:  It doesn't say that, Your Honor.

24          THE COURT:  It doesn't say the latter?

25          MS. HOUSNER:  Right.

26

1        THE COURT:  Okay.

2        MS. HOUSNER:  This whole section of our code, the

3   Michigan -- compiled law Section 208.5 which is this whole

4   definitional section that the state relies on, or that Delphi's

5   relying on, to validate their computation of two different

6   amounts, this part of the -- our position is this part of the

7   statute was enacted to protect the Michigan statute from

8   changes and updates in the Internal Revenue Code.

9        Since the Michigan Single Business Tax reportable

10  business income is based on federal taxable income, the Single

11  Business Tax Code needed to have the ability to be somewhat

12  flexible to allow the adjustment to the Internal Revenue Code

13  changes to be effective within Michigan.  So we created --

14  otherwise the state would be constantly being forced to amend

15  that part of the code.  So Michigan is consistent with the

16  legislation set in baseline business income in attempting to

17  keep the Michigan Single Business Tax Act reasonably current

18  with federal tax developments.  Hence, those provisions in the

19  code which, in this particular case, is which Delphi -- that's

20  what they're resting their arguments on.  That they have this

21  ability to double calculate federal taxable income based on

22  this one provision in the code.  At least that's the basis of

23  where it starts.

24       The Michigan Single Business Tax Act or the Michigan

25  Single Business Tax under the act describes business income

27

1    from a corporation means federal taxable income.  Federal

2    taxable income means taxable income is defined in Section 63 of

3    the Internal Revenue Code.  The Internal Revenue Code means the

4    United States Internal Revenue Code, in effect as of 1999 or at

5    the option of the taxpayer.  That's in the statute.

6              THE COURT:  Right.  I thought it was slightly

7    different, that they could do it either as in effect on the

8    date of the filing of the tax or as in effect of 1999.

9              MS. HOUSNER:  That's correct, Your Honor.  That's

10   correct.  If I misspoke, I'm sorry.

11             THE COURT:  Okay.

12             MS. HOUSNER:  Yes, that is correct.  But our position

13   is, is that in essence Delphi didn't really -- that's the

14   position they're taking but our position is, is that when

15   there's a contradiction the statute doesn't allow for that in

16   the reported incomes.  They're using it for a different

17   purpose, and our position is that they're cherry-picking

18   different provisions from the Internal Revenue Code to get them

19   the best tax deal they can get in Michigan.  And when we do

20   that, due to the nature of the taxes being so intertwined, we

21   end up with a result that we're dealing with today in this

22   court.

23             THE COURT:  What is your response to the debtor's

24   argument that for the federal return as a consolidated return

25   dealing with many taxpayers who aren't subject to the Michigan

28

1    SBT so you can't really have parallelism anyway in respect of

2    the two returns.

3            MS. HOUSNER:  That's correct, Your Honor.  Our

4    position is, is that the treatments and the code provisions

5    that the taxpayer is using on one should be similar to the ones

6    that they're using on the Michigan business income tax return.

7    Even though they may have other entities and things that may

8    come into play with the Michigan Single Business Tax; those

9    needs to be reflected.  The consistency is in the processing,

10   in the deductions and on the returns.

11           Your Honor, I think that, like I said, under the code

12   provisions, that Michigan has consistently tried to interpret

13   and treat taxpayers similarly situated in a similar manner.

14   And we have not allowed other taxpayers in the State of

15   Michigan to do this type of calculation between their federal

16   taxable income and their Michigan business income.

17           THE COURT:  But again, as far as the record is

18   concerned, I know the state has taken that position and I know

19   what's on the form but other than that, is there anything else

20   on the consistency point in the record?

21           MS. HOUSNER:  Not that I'm aware of, Your Honor.

22           THE COURT:  Can we turn to the accelerated addback

23   issue?

24           MS. HOUSNER:  Yes, Your Honor.  In this particular

25   case, and at issue in our claims objection, is the treatment of

29

1    the research and experimental expenditures.  The relationship

2    between that and the 59(e) deduction allowed under the Internal

3    Revenue Code.

4            Michigan's position on that issue is that once we get

5    into this situation wherein we have allowed or accepted or

6    there had been an aberration in the policy of how we've treated

7    that particular deduction, the State of Michigan in the past

8    when that situation may have occurred and the taxpayer did take

9    the amortized -- took a ten-year amortization on their R&E

10   expenses on their federal tax return and in turn did a full

11   deduction on the Michigan business tax return, there was this

12   calculation, this addback of the one-tenth.  And the reasoning

13   behind that --

14           THE COURT:  I'm sorry.

15           MS. HOUSNER:  I'm trying to do historically, Your

16   Honor.

17           THE COURT:  So there have been times when there's

18   been a difference, i.e., one-tenth under the federal return and

19   the full under the Michigan?

20           MS. HOUSNER:  Yes, Your Honor.  At one point in time

21   the Michigan, and I will call it a misinterpretation, a

22   modification to the policy extremely limited but yes.

23   Obviously, and Delphi asserts in their own statement that at

24   one point in time that may have, in fact, happened.

25           THE COURT:  Okay.

30

1          MS. HOUSNER:  That is an aberration.  And the state's

2    position is even at that point in time if the state did

3    something to try to accommodate a taxpayer or this aberration

4    occurred, once the state recognized that this was not a

5    workable solution, we had to correct that.  And our position

6    is, is that even if that were to have happened, the state's

7    position is that once we realized that that's not a proper

8    interpretation we make the correction to our interpretation and

9    we go back to consistently following through in making those

10   corrections consistently and equally with all other taxpayers;

11   that we needed to do that.

12         The arguments that Delphi makes in regards to the

13   amortization and its effect on Michigan's Single Business

14   Taxes, if in fact that happened and there was a provision under

15   the Internal Revenue Code which tells them they can do one of

16   two choices under 5090; fully deduct, amortize.  They take one

17   treatment on the federal return, a second treatment on the

18   Michigan return.  What happens to Michigan is that there isn't

19   a way to add that back; Michigan ends up taking a double hit.

20   They take fully deducted every year after that, as Delphi's

21   filing their returns for the next nine or ten years, they're

22   basing the Michigan business income on the federal taxable

23   income which has been reduced by -- they've taken the one-tenth

24   deduction.

25         THE COURT:  Right.

31

1      MS. HOUSNER:  So Michigan takes another hit because

2  now we've taken it fully on the first year, the next year when

3  they report they've taken it again.  So this theory evolved

4  where Delphi added it back.  That wasn't authorized by statute

5  either, not a Michigan statute.  Delphi's reliance is that the

6  Internal Revenue Code allowed them to do that.  But the only

7  way to compensate or make the state whole on that issue without

8  having to take or allow them to take the deduction twice was to

9  do an addback.

10      Our position now on this issue is if and when this

11  has happened, and we are at the end of the Michigan Single

12  Business Tax, the tax has been repealed.  It ended at the end

13  of 2007.  That for those taxpayers who may find themselves in a

14  situation where they have done the double treatment, they filed

15  one dollar amount with the federal government, they filed the

16  second dollar amount with Michigan, based on that R&E expense

17  where they've amortized it on one and fully deducted on the

18  other, the State of Michigan will allow those taxpayers -- if

19  there's not some way to accelerate that addback to have a

20  windfall that other taxpayers are not going to be allowed.

21      THE COURT:  Well, but let me make sure I understand

22  that because, and maybe I got this wrong, but I thought that

23  Delphi was adding back the portion that it would have

24  previously deducted if you had a total deduction.  And what

25  it's disputing is the acceleration or the adding in of addbacks

32

1   for years after the repeal of the statute.

2          MS. HOUSNER:  We're talking about adding the

3   accelerated addbacks during the life of the statute, not after

4   the statute expires, which is part of the issue.

5          THE COURT:  Maybe another way to ask the question is

6   given the repeal of the statute so that a new statute is now in

7   effect that has its own requirements --

8          MS. HOUSNER:  Right.

9          THE COURT:  -- what within what Delphi is proposing

10  to do would lead to Michigan being double deducted on the SBT

11  tax?

12         MS. HOUSNER:  There are no provisions in the new tax

13  to do this, even the one-tenth addback.

14         THE COURT:  Well, I understand, but it's a new tax.

15         MS. HOUSNER:  Okay.

16         THE COURT:  I fully understand the rationale of

17  saying that you obviously have to add back the portion that you

18  deducted under your federal tax for that year because otherwise

19  having taken the full deduction in a prior year you really

20  wouldn't be entitled to deduct again the one-tenth depreciation

21  that you did in the subsequent year.

22         MS. HOUSNER:  Right.

23         THE COURT:  But that's assuming you're paying the SBT

24  tax for that year.  If you don't have to pay it anymore it

25  seems to me to be apples and oranges at that point.  You don't

                                                                    33

1      do this -- as I understand it, the Michigan Business Tax

2      doesn't have the same type of mechanism for calculating income

3      and making a deduction.

4                  MS. HOUSNER:  It does not.

5                  THE COURT:  Another way to ask that question is,

6      you're not asserting that this would avoid double relief for

7      Delphi -- Delphi's mechanism that they're proposing would avoid

8      double relief for Delphi under the Michigan Business Tax,

9      right?  Because that's apples to oranges.

10                 MS. HOUSNER:  Right.

11                 THE COURT:  So how is Delphi getting a windfall on

12     the SBT for what it's proposing to do on the addbacks?

13                 MS. HOUSNER:  Your Honor, I think the first problem

14     that we have, at least statutorily is, is that number one,

15     there was no provision to even do the one-tenth addback.  It

16     happened; Michigan had to do something.

17                 THE COURT:  No, but it does make sense.

18                 MS. HOUSNER:  Right.

19                 THE COURT:  Because you can't --

20                 MS. HOUSNER:  They had to do something.

21                 THE COURT:  Right.

22                 MS. HOUSNER:  Once we allowed or once that return was

23     not audited or corrected --

24                 THE COURT:  Right.

25                 MS. HOUSNER:  -- then Michigan had to do something.

34

1          THE COURT:  Right.

2          MS. HOUSNER:  To me, the theory follows through that

3    if Delphi is not somehow made to bring that R&E expense back

4    into the tax base, then Michigan has foregone the collection of

5    a portion of a single business tax that statutorily it was

6    entitled to collect.

7          THE COURT:  Again, since the statute was repealed,

8    doesn't it become a moot issue because you're not -- Delphi

9    wouldn't be taking that extra deduction based on the next

10   year's depreciation.

11         MS. HOUSNER:  And, Your Honor, and I will plead to

12   you that I am just slowly starting to learn the new tax

13   structure, but my understanding is that some of the new

14   Michigan Business Tax does have a component in it that relates

15   to federal taxable income.

16         THE COURT:  But that's not what's at issue here,

17   though, right?

18         MS. HOUSNER:  Absolutely not.  None of the tax

19   here's --

20         THE COURT:  If that comes up in connection with

21   Delphi's taxes next year in connection with those statutes then

22   it would stand to reason that Michigan would say to Delphi you

23   already took this deduction.

24         MS. HOUSNER:  Right.  I think it's twofold.  Number

25   one, the Michigan Department of Treasury cannot allow -- cannot

35

1    compromise a tax.  They have no authority to compromise a tax,

2    the Michigan Department of Treasury.  And I think when you look

3    at that in relationship to what happened or may have happened

4    in the past in the one-tenth, Michigan -- when that occurred

5    and we were able to get it back over ten years, Michigan was

6    able to get that income back and hence the respective Single

7    Business Tax.  It became a timing issue and the state could or

8    felt that it was not in any way compromising the amount of tax

9    that would have been paid had we not allowed the double

10   computation; had we not allowed Delphi to do a federal, taxable

11   income that was different than its Michigan Single Business Tax

12   or business income.

13          But once that happened and we had to find a way to

14   make sure that there was no compromise of the tax.  And I think

15   Michigan is trying to take that into this next stage saying

16   okay, yeah, we are at the end of the Michigan Single Business

17   Tax.  But if we have allowed Delphi to take that full deduction

18   up front, single business tax, if we don't find some way to

19   collect we have, in fact, compromised the amount of tax we

20   should have collected.  So in an effort to prevent that from

21   happening, we have tried to accelerate the addbacks to make

22   sure that the entire amount is recollected or has become

23   calculated back into the Michigan Single Business Tax.

24          THE COURT:  All right.  I guess the problem I have

25   with that is I don't see where it's a compromise when the

36

1    legislature changed the tax.  I mean, you're right if it had

2    stayed the same then the logic fits.

3            MS. HOUSNER:  Right.

4            THE COURT:  But I just don't see where it's a

5    compromise at this point.

6            MS. HOUSNER:  I don't know if I can explain it any

7    better to the Court.

8            THE COURT:  Okay.  All right.

9            MS. HOUSNER:  I think that, like I said, I think that

10   the Michigan Single Business Tax as a value added tax and

11   everything else that's gone with it, additions and deductions

12   and things that go into play there, it's complex and I think

13   that the State of Michigan has done its best effort to try to

14   maintain some kind of equity between the taxpayers and not

15   allowing some taxpayer to, as we see it, have this windfall

16   from this double calculation of the tax that they have.

17           THE COURT:  Okay.

18           MS. HOUSNER:  Just in closing, Your Honor, I would

19   ask that the Court deny the relief that Delphi has asked for,

20   that they uphold the Michigan Single Business Tax claim for

21   2005 as capped at 1.44 million.  And I think that's everything.

22   Do you have any other questions at this point?

23           THE COURT:  No, I think that's it.  Thank you.

24           MS. HOUSNER:  Uh-huh.

25           MR. RAMLO:  Your Honor, may I briefly respond?

37

1          THE COURT:  Briefly, yes.

2          MR. RAMLO:  Your Honor, assuming there were some sort

3    of independent tax significance to the accelerated addbacks --

4    excuse me, to the addbacks themselves, Michigan seeking to

5    accelerate the addbacks is contrary to what they assert is the

6    policy of the addbacks and which the Court has recognized to

7    avoid double-dipping, or as Your Honor states it, double

8    relief.

9          By accelerating the addbacks, Michigan is asking

10   Delphi to do an addback in 2005 to prevent potential double-

11   dipping in 2006, 2007 and later.  Yet when Delphi filed its

12   2006 return it did a similar schedule.  When it goes to 2007 it

13   might do a similar schedule, assuming it does another split

14   election.  Then again, it might do the same accounting on the

15   federal return that it does on the state return.

16         THE COURT:  Well, but if it does the same accounting

17   in both then you'd think that at that point they would have to

18   avoid the double counting; you'd have to take an addback.

19         MR. RAMLO:  There would still have to be a pro forma

20   calculation or --

21         THE COURT:  Right.

22         MR. RAMLO:  -- federal taxable income for SBT

23   purposes to make sure it's consistent with prior --

24         THE COURT:  Right.

25         THE COURT:  -- that the handling of those expenses in

38

1    prior years.  Absolutely, Your Honor.

2              THE COURT:  Right.

3              MR. RAMLO:  Yes.

4              THE COURT:  So all you're fighting is the accelerated

5    part?

6              MR. RAMLO:  Yes.  The accelerated -- Your Honor's

7    recognized it to a certain extent; it's just to prevent double-

8    dipping.  But by accelerating it you destroy that purpose.

9    You're trying to avoid double-dipping that's hypothetically in

10   the future.  And it assumes that Delphi won't make the

11   appropriate adjustments in the future, and there's no evidence

12   that that'll be the case.

13             Michigan briefly states that the addbacks themselves

14   are not authorized by statute.  But as we've indicated

15   previously, addbacks don't have any independent tax

16   significance, they're just computational shortcuts.  What they

17   did -- what the debtors did was deduct R&E expenses in full in

18   the year incurred.  How they calculated that number is

19   irrelevant as long as that number represents the full

20   deduction.

21             With respect to the first issue, Michigan

22   characterizes Delphi's position as cherry-picking.  And this

23   isn't cherry-picking, Your Honor.  The debtors are taking

24   advantage of an election granted them under the federal

25   Internal Revenue Code and a method that is granted to them

1    under the SBT.  And in the facts of this particular case, it's

2    definitely not cherry-picking.  Defendants allow these foreign

3    tax credits to be used in certain circumstances, and that's

4    what's been driving the elections that have been made in 2002-

5    2005.  And the debtors had a valid business justification for

6    organizing their affairs in the way they did on their federal

7    return.  And they're entitled to account for those expenses in

8    the method that they have done under the SBT.  They're

9    following the statute.  There's no cherry-picking.

10           Finally, Your Honor, Michigan has indicated that this

11   is their policy, no split election.  But the only place that

12   policy appears, other than perhaps in the instructions to the

13   SBT, is in the briefs before your Court.  And as with the

14   instruction and the briefs before your Court they don't have

15   the force of law, they're not promulgated under the Michigan

16   APA; they cannot impose a requirement not found in the APA.

17   And there is a proposition of tax law that says when the

18   government first asserts its policy in a brief during

19   litigation, courts do not give much credence to that policy.

20   It's a little bit too self-serving.  That's certainly a

21   doctrine under federal tax law and Michigan law actually

22   incorporates, to a great extent, federal tax precedent into its

23   law.  We didn't reference that in the brief, Your Honor, but

24   there's an unpublished decision called Eden v. Michigan

25   Department of Treasury; it's docket number 174092.  It's a

40

1    Michigan tax break deal that holds that the Michigan SBT

2    incorporates federal precedent with respect to tax

3    propositions.

4           So I'd ask the Court to appropriately valuate the

5    policy of Michigan by when it was brought up and when it was

6    published.  It was published in briefs before your Court when

7    this issue was in the middle of litigation.

8           Thank you, Your Honor.

9           THE COURT:  Okay.  I have before me the remaining

10   contested portion of the debtors' objection to the pre-petition

11   claims of the Michigan Department of Treasury.  It pertains to

12   proof of claim 16633 in which, among other things, the treasury

13   asserted a claim for unpaid pre-petition tax liability for 2005

14   under its subsequently repealed single business tax or SBT.

15          The parties have agreed upon the amount at issue as

16   previously set forth on the record.  Their dispute centers on

17   two issues.  The facts are otherwise stipulated.  During the

18   2005 tax year the debtors made over approximately billion-six

19   in expenditures that constituted research and experimental

20   expenditures, or R&E, under Internal Revenue Code Section 174.

21   On their federal taxable return for 2005 they elected to

22   capitalize over a billion dollars of these R&E expenditures and

23   amortize them over ten years, which therefore permitted them to

24   deduct approximately a hundred million in each of those ten

25   years.

41

1          The rationale for that is set forth in the

2   declaration of Mr. Whitson, his first declaration, in support

3   of the objection.  In essence the debtors had other deductions

4   that they could take using foreign tax credits that made the

5   ten-year amortization of the R&E expenditures most tax

6   efficient for them on their federal return.

7          This is relevant because under the SBT Act a

8   corporation begins computing its SBT liability with its

9   "business income".  Mich. Comp Laws, Section 208.9(1).

10  Business income, then, is defined as "federal, taxable income",

11  Michigan Comp Laws, Section 208.3(3).

12         The parties agree that the debtors' full deduction of

13  their R&E would constitute an appropriate deduction for

14  purposes of setting their federal taxable income for 2005.

15  Where they disagree is that Delphi contends that that is all

16  that is required, i.e., since that would fit into a proper view

17  of federal taxable income for 2005 it can serve as a base under

18  the SBT Act as business income.

19         The treasury, on the other hand, contends that the

20  SBT Act requires the debtors to follow the same treatment for

21  SBT business income purposes as they did on their 2005 federal

22  return.  The former method, the method adopted by Delphi, would

23  lead to no SBT owing for 2005.  The latter would lead to the

24  amount as agreed upon -- the dollar amount as agreed upon, of

25  liability, as stated at the beginning of this hearing.

1          Delphi supports its argument, in addition to pointing

2     to the simple definition of business income found in Mich. Comp

3     Laws, Section 208.3(3) by also pointing to the same statute at

4     Section 208.5(3) which states that federal taxable income means

5     taxable income as defined in Section 63 of the Internal Revenue

6     Code and then further provides, in Section 4, Internal Revenue

7     Code means the United States Internal Revenue Code of 1986 in

8     effect on January 1, 1999 or at the option of the taxpayer in

9     effect for the tax year for which the return is filed.

10          Delphi contends that this additional section reflects

11     that not only does the definition of business income refer only

12     to federal taxable income and not to the federal return but

13     also the definition of the code gives the option of using one

14     of two different years for purposes of calculating the amount

15     of income.

16          The treasury points to two other sections of the

17     Michigan Comp Laws, which it contends makes it clear that the

18     focus must be on using the same return as opposed to federal

19     taxable income generally.  Mich. Comp Laws, Section 208.75

20     states "A  taxpayer required to file a return under this act,"

21     i.e. the SBT, "may be required to furnish a true and correct

22     copy of any return, or portion of any return, which he has

23     filed under the provisions of the Internal Revenue Code."

24          And then two, "A taxpayer shall file an amended

25     return with the department showing any alteration in or

43

1    modification of his federal income tax return which affects his

2    tax base under this act.  The amended return shall be filed

3    within 120 days after the final determination by the Internal

4    Revenue Service."

5            The court here, obviously, is applying Michigan law

6    since this is a Michigan tax.  And under Michigan law, the

7    primary goal of judicial interpretation of statutes is to

8    ascertain and give effect to the legislature's intent.  The

9    first criterion in determining intent is the specific language

10   of the statute.  The legislature is presumed to have intended

11   the meaning plainly expressed.  If the plain and ordinary

12   meaning of the language is clear, judicial construction is

13   normally neither necessary nor permitted, Guardian Photo, Inc.

14   v. Department of the Treasury, 621 N.W.2d 233, 237 (Mich. Ct.

15   App. 2001).

16           If, however, a statute is susceptible to more than

17   one interpretation, judicial construction is proper due to term

18   and legislative intent, Twentieth Century Fox Home

19   Entertainment, Inc. v. Department of Treasury, 716 N.W.2d 591,

20   601 (Mich. Ct. of App. 2006).

21           In respect of construing ambiguous statutes,

22   statutory language should be construed reasonably keeping in

23   mind the purpose of the act, id.  And secondly, where, as is

24   the case here, the agency responsible for administering an act

25   has taken a position on how the act should be construed, it is

44

1    entitled, or its position is entitled, to "respectful"

2    consideration where the statute may be viewed as ambiguous.

3    And it ought not to be overruled without cogent reasons,

4    Oakland Schools Board of Education v. Superintendent of Public

5    Instruction, 757 N.W. 2d 73 at 75 (1977).

6            However, that degree of respect is far less than the

7    the deference that would be given to a promulgated rule in

8    conformity with the act, which the Department of the Treasury

9    is authorized to do under Section 208.80(3) of the act.  It's

10   acknowledged here that the treasury's interpretation is not the

11   subject of a properly promulgated rule and accordingly it does

12   not carry the force of a properly promulgated rule, see A.Z.

13   Shmina, S-H-M-I-N-A, & Sons Co. v. Department of Treasury, 512

14   N.W.2d 57, 59 (Mich. Ct. App. 1993) and AC Plastics, Inc. v.

15   Department of Treasury, 2006 W.L. 208, 5040, 3 (Mich. Ct. App.

16   July 27, 2006).

17           Moreover, as described in the Open Schools case, the

18   respect one should give to an agency's construction of the

19   statute for which it's supposed to administer is bolstered by

20   the fact that while it is not only a possible interpretation

21   and not unreasonable, it is also one that is consistent with

22   prior practice.  See also Oakland Schools Board of Education v.

23   Superintendent of Public Instruction, 257 N.W.2d 75.

24           The record here shows that the treasury's position

25   with regard to its contention that the federal forms use or

1   application of income needs to apply or be applied on the SBT

2   is in addition to the statements in the briefs saying that this

3   is the treasury's position bolstered only by an instruction in

4   the SBT form which instructs the taxpayer to use the income

5   number as derived from the federal form.  I note that that

6   instruction itself is not consistent with the statute itself

7   which gives the taxpayer the election to use either the current

8   form or the form as in effect in 1999 or the calculation that

9   would be applicable as to the IRC in effect in 1999.

10          Moreover, based on this record, the instruction is

11  not consistent with prior practice as set forth in paragraph 9

12  of Mr. Whitson's affidavit.  In the past, the treasury has not

13  audited and accordingly accepted an SBT form that used albeit a

14  correct interpretation of federal income, a different

15  calculation than what was set forth on the federal form.

16          Moreover, counsel for the treasury has acknowledged

17  at oral argument that Michigan has done this in the past, in

18  other instances, and that that is what has lead to the so-

19  called addbacks issue that is the second issue in connection

20  with this claim objection.

21          In light of all of the foregoing, I conclude that the

22  claim, as asserted by the treasury, is not consistent with the

23  clear language of the statute and in some respects contrary to

24  the language of the statute.  The statute does not refer, in

25  its definitions, to a requirement that the same return be used

1    for the SBT as was used for the federal form.  Instead, the

2    statute refers simply to the definition of federal taxable

3    income and it is agreed by both parties that this is an

4    acceptable position that Delphi is taking in respect of its

5    federal taxable income.  Moreover, the statute itself permits

6    variations from the current year's form.

7            And finally, I don't believe that the requirement

8    that the taxpayer provide a copy of its federal return goes as

9    far as the treasury would want it to go but can easily be read

10   as simply providing for provision of the returns so that the

11   treasury can verify the position taken by the taxpayer in the

12   federal return and then follow up with regard to any further

13   adjustments or modifications for consistency's sake.

14           The position, then, of the treasury should not be

15   adopted here, see A.Z. Shmina & Sons Co. v. Department of

16   Treasury, 512 N.W.2d 59.

17           The second issue raised by the proof of claim is the

18   treasury's contention that in light of the repeal of the SBT,

19   which has occurred since the date of the tax, the addbacks to

20   reflect subsequent federal deductions based on depreciation

21   should be accelerated.  Delphi does not dispute that it is

22   appropriate to add back a portion of the deduction, that is the

23   portion that would be in for that year, so that in effect it

24   would not be getting an extra deduction for that amount, having

25   taken it all in a prior year based on the 2005 SBT.

47

1          What Delphi objects to, however, is acceleration of

2     the addbacks to the amount.  The purpose of the parties having

3     engaged in such addbacks in the past makes perfect sense, it's

4     to avoid the taxpayer having a windfall in that it would have

5     already received the benefit of the deduction under the SBT and

6     therefore shouldn't be able to charge an inconsistent deduction

7     subsequently taken based on the amortization under the position

8     it took on its federal return.

9          However, I don't see a basis for a windfall argument

10    beyond that, i.e. the statute has been repealed and so by

11    definition for the subsequent years after the repeal Delphi

12    wouldn't be having a windfall because there would be no tax

13    covered at that point, no tax subject to the SBT.  It may be

14    that under other statutes the logic of not having a double

15    deduction would apply, but that's not what is covered by this

16    proof of claim.  And it has been asserted to me, and I accept,

17    that there is no true successor to the SBT.

18          So without prejudice to the treasury's right to avoid

19    true double deductions or a true windfall to Delphi in respect

20    of some other tax in the future, I conclude that the

21    accelerated addback element of this proof of claim is not

22    justified and therefore that that portion of the proof of claim

23    also should be disallowed.

24          So based on the foregoing, I'll grant the debtor's

25    objection to the claim and you should submit an order to that

48

1   effect to chambers.  You don't need to settle it, but you

2   should send it to counsel for a day or so, so she can verify

3   that it's consistent with my ruling and then provide it to

4   chambers.

5            MR. RAMLO:  Yes, Your Honor.  We will do that.

6            THE COURT:  Okay.  Thank you.

7            MR. RAMLO:  Thank you, Your Honor.

8            THE COURT:  And that concludes the matters before me

9   on Delphi?  There are no further Delphi matters on?

10           MR. FLORES:  Your Honor, we had --

11           THE COURT:  Yes, we have the -- all right.  This is

12  the discovery issue?

13           MR. FLORES:  That's right.

14           THE COURT:  Has there been any further resolution of

15  this matter?  This is Delphi vs RCS Computer.

16           MR. LAZARUS:  Harlan Lazarus for the debtor -- excuse

17  me, Your Honor, for the defendant.  Mr. Flores and I have, in

18  the past week, had multiple discussions about the settlement of

19  the entire claim.  I have supplied some documents.  There's a

20  40,000 dollar issue as to how much is owed.  The principal

21  issue is the defendant's ability to pay any amount and over

22  what period of time.  And that is where we have focused in the

23  last week.  I have made, as recently as late yesterday, a

24  further proposal responding to reaction from the debtor and I

25  am waiting to hear, at this point, from Mr. Flores, who I

1    understand is waiting to hear from his client.

2            MR. FLORES:  Your Honor, this is Steven Flores from

3    Togut, Segal & Segal.  We are conflicts counsel to Delphi.  And

4    I basically agree with Mr. Lazarus.  There is a pending offer,

5    but I would only add that based on my understanding of where

6    things are there's still a lot of distance between the parties.

7    So we feel this conference is necessary.

8            The defendant has produced about three dozen pages of

9    documents since we wrote the letter to the Court.  Before we

10   wrote the letter to the Court --

11           THE COURT:  We don't need to get into that.

12           MR. FLORES:  So we have received about three dozen

13   pages of documents from the defendants.  We believe that that

14   production does not satisfy the outstanding discovery

15   obligations.  And while we are happy to continue settlement

16   discussions, we do believe that a dual track approach is

17   appropriate here because we think Court ordered discovery will

18   go a long way towards keeping the defendant focused on

19   resolving this action.

20           THE COURT:  All right.  Well, I take it that you've

21   never extended the discovery deadline as a condition to the

22   settlement discussions?

23           MR. FLORES:  There has been no extension, that's

24   correct.

25           THE COURT:  Okay.  Well, is it true that there's only

50

1   40,000 dollars at issue here or is that the difference between

2   you all?  I don't understand.

3              MR. LAZARUS:  I apologize, Your Honor.  That's the

4   difference.  The books and records of my client reflect a

5   balance of approximately 211.

6              THE COURT:  All right.  You should comply with the

7   discovery request, in full, twenty-one days from today.

8   That'll give the debtors time to assess the settlement and you

9   time to assemble the documents, and that's the discovery

10  cutoff.  Any questions?

11             MR. LAZARUS:  No, Your Honor.

12             THE COURT:  Okay.

13             MR. FLORES:  No, Your Honor, thank you.

14             THE COURT:  Okay.

15             MR. RAMLO:  Your Honor, that concludes the Delphi

16  calendar.  May we have the Delphi related personnel excused

17  from the courtroom?

18             THE COURT:  Certainly.

19             MR. RAMLO:  And may I present the stipulations with

20  respect to the claims?

21             THE COURT:  Yes, you can hand those up.

22             MR. RAMLO:  Thank you, Your Honor.

23             THE COURT:  Okay.

24       (Proceedings Concluded at 11:33 AM)

25

51

1

2                           **I N D E X**

3

4                        **E X H I B I T S**

5      DEBTOR'S              DESCRIPTION          PAGE

6      1                     Proof of Claim        8

7                            Asserting SBT

8                            Claim

9      2, 3                  Declarations of       8

10                           Mr. Whitson

11     4-9                   Documents Relating    8

12                           to SBT Tax and

13                           Federal Returns

14

15                            RULINGS

16                                        Page        Line

17     Debtors' Objection to              77           24

18     Claim, Granted

19

20

21

22

23

24

25

**VERITEXT REPORTING COMPANY**

212-267-6868                              516-608-2400

52

1

2                           C E R T I F I C A T I O N

3

4        I, Pnina Eilberg, certify that the foregoing transcript is a

5        true and accurate record of the proceedings.

6

7        _____

8        Pnina Eilberg

9

10       Veritext LLC

11       200 Old Country Road

12       Suite 580

13       Mineola, NY 11501

14

15       Date:  August 6, 2008

16

17

18

19

20

21

22

23

24

25