Hearing Date: **September 23, 2008, at 10:00 a.m. Eastern Time**
Objection Deadline: **September 16, 2008, at 4:00 p.m. Eastern Time**

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York  10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Email:  robert.rosenberg@lw.com
          mitchell.seider@lw.com
          mark.broude@lw.com
          michael.riela@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| DELPHI CORPORATION, et al., | ) Case No. 05-44481 (RDD) |
| Debtors. | ) (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
APPLICATION FOR INTERIM AND FINAL ORDERS UNDER SECTIONS
328 AND 1103 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014
APPROVING RETENTION OF MOELIS & COMPANY LLC AS CO-INVESTMENT
BANKER TO THE COMMITTEE *NUNC PRO TUNC* TO JULY 1, 2008**

The duly-appointed official committee of unsecured creditors (the "Committee") of the

above captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby applies

(this "Application") for an order under 11 U.S.C. §§ 328(a) and 1103 and Rules 2014, 2016 and

5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local

Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local

Rules") authorizing the retention and employment of Moelis & Company LLC ("Moelis"), as co-

NY\1428913.7

investment banker to the Committee (with Jefferies & Company, Inc. ("Jefferies"), effective *nunc pro tunc* to July 1, 2008. In support of this Application, the Committee submits the Declaration of William Q. Derrough (the "Derrough Declaration") attached hereto as Exhibit A. In further support of this Application, the Committee respectfully states as follows:

## BACKGROUND

1. On October 8, 2005, the Debtors each filed a voluntary petition for relief under chat under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 2005, the three remaining Debtors similarly filed voluntary petitions. The Debtors continue to manage their property and operate their businesses as debtors in possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409. No trustee or examiner has been appointed in this case.

2. The statutory predicates for the relief sought herein are sections 328 and 1102 of the Bankruptcy Code.

3. The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies as its investment banker. On June 19, 2006, this Court granted the Committee's amended application to appoint Jefferies as investment banker to the Committee.

4. On January 25, 2008, this Court entered an order confirming the Debtors' plan of reorganization (as modified) (the "Plan") (Docket No. 12359), which became a final order on

---

[1] The current members of the Committee are: (a) Capital Research and Management Company; (b) Freescale Semiconductor, Inc.; (c) IUE-CWA; (d) Wilmington Trust Company, as Indenture Trustee and (e) Tyco Electronics Corporation. The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

NY\1428913.7

February 4, 2008.  Since confirmation of the Plan, events have unfolded that have made the Plan impossible to consummate because of the absence of necessary financing.  The Debtors' chapter 11 cases are now at a critical juncture, and a successful reorganization and satisfactory recovery for the unsecured creditors depends upon swift and accurate assessment of alternative exit financing and restructuring proposals.

5. In recent weeks, the Jefferies employees primarily responsible for investment banking services to the Committee, including William Q. Derrough, have ceased to be employed by Jefferies and are now employed by Moelis.  These individuals have provided services to the Committee for many months now, and the Committee has determined that it requires their knowledge of the Debtors and these cases, as well as their expertise.  At this critical juncture, the Committee needs to be fully engaged in assessing the Debtors' reorganization alternatives without the delay or undue cost that would be incurred by losing the knowledge and expertise the Moelis professionals have.  Losing access to these professionals could hinder the Committee's ability to effectively respond to new developments and necessary modifications to the Plan.

6. The Committee has voted, subject to this Court's approval, to retain Moelis as its investment banker in this matter in cooperation with Jefferies so that the Committee can continue to benefit from the knowledge about the Debtors and these cases that the former Jefferies employees gained in the last 34 months.

7. The Moelis professionals who would be primarily responsible for providing services to the Committee are William Q. Derrough, Isaac Lee and David Groban.  The Jefferies professionals who will continue to be primarily responsible for providing services to the Committee are Tom Carlson, Tero Janne and Nathan Brawn.

3

8. The Committee seeks to continue to use the services of Jefferies as its co-investment banker. As discussed below, Jefferies and Moelis have entered into an agreement whereby they would allocate between themselves the fees earned from the services rendered to the Committee. This agreement is attached as <u>Annex 2</u> to the Derrough Declaration.[2] To be clear, the Debtors will not be obligated to pay any additional fees as a result of the Committee's decision to engage Moelis as its co-investment banker.

9. Moelis has agreed with Jefferies to divide their respective areas of responsibilities and services to be provided to the Debtors' estates to avoid duplication of efforts. Pursuant to this agreement, Moelis' primary services to the Committee will include, but are not limited to, the following: (1) analysis of potential or proposed strategies for restructuring; (2) analysis of restructuring proposals from various constituencies (including valuation considerations as appropriate); (3) evaluation of considerations for General Motors Corporation in any restructuring and (4) analysis of exit financing alternatives. Jefferies will be primarily responsible for services related to asset sales, analysis of debtor in possession financing and labor, pension and OPEB issues.

10. The Committee decided to continue its retention of Jefferies because of the institutional knowledge Jefferies gained about the Debtors and their estates since it originally was retained in October 2005, and because it would continue to be able to access the knowledge

---

[2] The agreement between Jefferies and Moelis provides that Monthly Fees and Transaction Fees would be allocated as follows:

(a) Beginning with the Monthly Fee due July 1, 2008, Monthly Fees shall be apportioned with three-quarters (3/4) being paid to Moelis and one-quarter (1/4) being paid to Jefferies. Jefferies and Moelis agree that this apportionment reflects a reasonable estimate of the respective services each party expects to perform for Delphi going forward.

(b) The Transaction Fee, if any, shall be apportioned with one-third (1/3) being paid to Moelis and two-thirds (2/3) being paid to Jefferies. Jefferies and Moelis agree that this apportionment reflects a reasonable estimate of the respective services each party expects to have performed overall for Delphi by the time the Delphi assignment is completed.

4

NY\1428913.7

and expertise of the restructuring professionals who remain at Jefferies. In light of the fact that the Debtors will not be obligated to pay any additional fees as a result of its dual retention of Jefferies and Moelis, the Committee believes that this decision redounds to the benefit of itself and the Debtors. To the extent that issues arise in the course of Jefferies and Moelis providing services to the Committee in which their respective areas of responsibilities, Jefferies and Moelis will communicate to divide responsibilities and avoid duplication of their services to the Committee. Moreover, to the extent possible, Moelis and Jefferies will coordinate with each other to reduce expenses to be reimbursed by the Debtors.

## RELIEF REQUESTED

11.     By this Application, the Committee requests that the Court enter interim and final orders pursuant to sections 328(a) and 1003 of the Bankruptcy Code and Bankruptcy Rule 2014, authorizing it to retain and employ Moelis as its co-investment banker (together with Jefferies), effective *nunc pro tunc* to July 1, 2008, pursuant to the terms of the engagement letter annexed to the Derrough Declaration as Annex 1 (the "Engagement Letter").

## BASIS FOR RELIEF

### Moelis' Qualifications

12.     The Committee respectfully submits that the services of Moelis are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Debtors' reorganization proceedings and to effectively fulfill its statutory duties. The Committee selected Moelis because of its employees' experience in providing investment banking services to the Committee in connection with the Debtors' chapter 11 cases, and because of Moelis' expertise in providing investment banking services to debtors and creditors in restructuring and distressed situations and its expertise in the automotive industry. Indeed, without the benefit of

Moelis' employees' experience in the Debtors' chapter 11 cases, the Committee would be without adequate investment banking advisory services until new Jefferies employees could become familiar with the complexities of these cases.

13. Moelis is an investment banking firm with its principal office located at 245 Park Avenue, 32nd Floor, New York, New York 10167. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. Moelis was founded in 2007 and is a wholly-owned subsidiary of Moelis & Company Holdings LLC. Moelis & Company Holdings LLC, together with its subsidiaries, has approximately 125 employees located in offices in New York, Los Angeles, Boston and Chicago.

14. Moelis provides a broad range of corporate advisory services to its clients, including, without limitation, services pertaining to: (i) general financial advice; (ii) mergers, acquisitions, and divestitures; (iii) corporate restructurings; (iv) special committee assignments; and (v) capital raising. Moelis and its senior professionals have extensive experience in providing advisory services to broadcasting companies and in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

15. Since Moelis' registration as a broker-dealer in 2007, it has provided advisory services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch Companies, Inc., Cannery Casino Resorts, LLC, Entravision Communications Corporation, Invitrogen Corporation, NBTY, Inc., WCI Steel, Inc., Westwood One, Inc. and Yahoo! Inc. Moelis' professionals have provided advisory services to a number of automotive companies while employed by Moelis and prior to joining Moelis, including, but not limited to, Aston Martin, Accubuilt, Borg Warner, Key Plastics, Penske and United Auto Group. In addition, prior

6

to joining Moelis, Moelis' professionals provided restructuring and other advisory services in a number of chapter 11 cases, including, but not limited to, those of Adelphia Business Solutions, Inc., Bally Total Fitness, Exide Technologies, Federal-Mogul Corporation, Foamex L.P., and Friedman's Inc.

16. The individual Moelis employees that will be responsible for services to the Committee already have provided services to the Committee on behalf of Jefferies and are extremely familiar with the Debtors' estates and the complex issues presented by these chapter 11 cases. The Committee has requested that those individuals continue to render investment banking and other services together with Jefferies.

### Services to Be Rendered

17. The Committee selected Moelis as its investment banker for the purpose of assisting and advising the Committee, in cooperation with Jefferies, with respect to any potential strategy for restructuring the Debtors' outstanding indebtedness, labor costs or capital structure, whether pursuant to a plan of reorganization, a sale of assets pursuant to section 363 of the Bankruptcy Code, a liquidation or otherwise (a "Restructuring").

18. Pursuant to the terms of the Engagement Letter, in its capacity as the Committee's investment banker, Moelis is prepared to provide certain post-petition services including, without limitation, the following:

   a. valuation of the Debtors' enterprise value, on a consolidated and division basis;
   b. pricing of any securities to be issued in the Restructuring, as well as evaluation of the terms of any such securities;
   c. evaluation of any financing proposed as part of the Restructuring, including, without limitation, debtor in possession financing and exit financing;
   d. assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness, labor costs or capital structure, including, without limitation,

7

  assessments of leverage and capital structure of the reorganized entities and evaluation of business acquisitions/divestures (including monitoring of any purchase/sale process);

 e. analysis of restructuring proposals from various constituencies, including, without limitation, labor concession proposals, pension and OPEB restructuring plans;

 f. assist and advise the Committee in evaluating and analyzing the proposed implementation of a Restructuring; and

 g. render such other investment banking services as may from time to time be agreed upon by the Committee and Moelis, including, without limitation, providing expert testimony and other expert and investment banking support related to any threatened, expected or initiated litigation.

19. To perform these services in a cost-effective manner, Moelis has represented to the Committee that it will endeavor to coordinate all its services to the Committee with Jefferies and the other professionals retained in these cases so as to minimize (and wherever possible, avoid) any unnecessary duplication of services and any potential burden on the Debtors and their professional advisors. Specifically, representatives of Moelis have met with representatives of Jefferies and have worked out an appropriate and efficient division of responsibilities going forward. Nevertheless, because Jefferies and Moelis would not be earning fees based on hourly billings, the Debtors would not be obligated to pay additional fees as a result of any duplication of work.

## Disinterestedness of Professional

20. To the best of the Committee's knowledge, information, and belief, and except and to the extent disclosed herein or in the Derrough Declaration, Moelis and its professional(s) (a) are not creditors, equity security holders or insiders of the Debtors, (b) are not and were not, within two (2) years prior to the Petition Date, directors, officers or employees of the Debtors, (c) do not hold or represent any interest materially adverse to the interest of the Debtors' estates

8

and (d) are not related to any judge of this Court, the U.S. Trustee for this District or any employee of the U.S. Trustee for this District.

21.     Accordingly, the Committee submits that Moelis and its professionals are "disinterested persons" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and its employment is permissible under section 328(a) of the Bankruptcy Code and is in the best interests of all parties-in-interest.

22.     Moelis will continue to monitor for any matters that might affect its disinterested status. In the event that additional disclosure become necessary, Moelis will file a supplemental statement.

## Professional Compensation

23.     As set forth in the Engagement Letter and herein, Moelis would be entitled to receive from the Debtors' estates, as compensation for its services in these cases: (a) a monthly fee (the "Monthly Fee") of $131,250 per month and (b) a transaction fee (the "Transaction Fee") in an amount equal to one third of (i) 0.50% of Total Consideration (as defined below) greater than $0.50 and up to including $0.75 per $1.00 of allowed unsecured claim and (ii) 0.75% of Total Consideration greater than $0.75 per $1.00 of allowed unsecured claim (such fee arrangement is hereinafter referred to as the "Fee Structure").[3] The Transaction Fee shall not be less than $0.67 million or greater than $3.33 million (the "Cap"), however Moelis has reserved the right to request modification of the Cap. Any request by Moelis or Jefferies to modify or waive the Cap, as defined in (a) the Engagement Letter and (b) the engagement letter between Jefferies and the Committee, shall be analyzed by this Court under the standards applicable to professional fee enhancement requests.

---

[3] This summary is presented for convenience purposes only. The terms set forth in the Engagement Letter are controlling in all respects.

9

24. The Engagement Letter defines "Total Consideration" as:

"[T]he total aggregate consideration paid by the Debtors on account of allowed unsecured claims against the Debtors pursuant to a plan or plans of reorganization in the Cases (including any amounts in escrow), but excluding any unsecured claims of, and consideration paid by the Debtors on account of claims of, the Pension Benefit Guaranty Corporation (the "PBGC") or any assignee of the PBGC. Total Consideration shall include, without limitation: (i) cash; (ii) notes, securities and other property; (iii) payments made in installments; and (iv) contingent payments (whether or not related to future earnings or operations). For purposes of computing any fees payable to Moelis hereunder, non-cash consideration shall be valued as follows: (x) publicly traded securities shall be valued at the ten day volume weighted average price (as reported in The Wall Street Journal) commencing on the sixty-first trading day after the closing of the transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof on the day prior to closing as determined in good faith by the Committee and Moelis. If the parties are unable to agree on the value of any other property, its value will be determined by arbitration in a manner consistent with any order entered by the Bankruptcy Court and in accordance with the rules of the American Arbitration Association and judgment upon the award entered by the arbitrators may be entered in any court having jurisdiction. Each party will pay its own costs in connection with the arbitration, and the cost of the arbitration itself will be borne equally by the parties."

25. To the extent the Total Consideration is paid in cash, the Transaction Fee is also payable in cash. To the extent the Total Consideration will consist of non-cash consideration, in the Committee's sole discretion, the Transaction Fee may be payable in like consideration.

26. The terms above do not modify the total amount of Monthly Fees and possible Transaction Fees that would be payable by the Debtors under the Jefferies engagement letter with the Committee. Rather, these terms simply reflect the agreement between Jefferies and Moelis regarding the allocation of those fees between themselves. A copy of the agreement between Jefferies and Moelis is attached as Annex 2 to the Derrough Declaration.[4]

---

[4] The agreement between Jefferies and Moelis provides that Monthly Fees and Transaction Fees would be allocated as follows:

(a) Beginning with the Monthly Fee due July 1, 2008, Monthly Fees shall be apportioned with three-quarters (3/4) being paid to Moelis and one-quarter (1/4) being paid to Jefferies. Jefferies and Moelis agree that this apportionment reflects a reasonable estimate of the respective services each party expects to perform for Delphi going forward.

(b) The Transaction Fee, if any, shall be apportioned with one-third (1/3) being paid to Moelis and two-thirds (2/3)

10

NY\1428913.7

27. At any time during the time of Moelis' engagement, the Committee may, in its sole discretion, on at least 15 days' prior notice to Moelis, require Moelis to cease to provide services in these cases for one or more consecutive months, not to exceed three months in the aggregate (a "<u>No-Service Period</u>"). Moelis shall not be entitled to the Monthly Fee with respect to the No-Service Period. One half of the Monthly Fees actually paid by the Debtors commencing with the 19th Monthly Fee paid to Jefferies shall be credited against the Transaction Fee. The Debtors' estates paid the first monthly fee to Jefferies as of October 18, 2005. Crediting of Monthly Fees has been effective after payment to Jefferies of the March 2007 Monthly Fee (the April 2007 Monthly Fee was the 19th Monthly Fee).

28. The Debtors and their estates will also reimburse Moelis, subject to the approval of this Court, for all reasonable out-of-pocket expenses, including, without limitation, all reasonable travel expenses, duplicate charges, messenger services, long distance telephone calls and other customary expenditures incurred by Moelis in performing its investment banking services.

29. As set forth more fully in the Engagement Letter and herein, the Debtors and their estates are to indemnify and hold harmless Moelis, its agents, principals and employees for all claims, damages, liabilities and expenses to which such parties may have been subject to as a result of their involvement with providing investment banking services, except to the extent that such claims, damages, liabilities and expenses resulted, in whole or part, from gross negligence or willful misconduct.

---

being paid to Jefferies. Jefferies and Moelis agree that this apportionment reflects a reasonable estimate of the respective services each party expects to have performed overall for Delphi by the time the Delphi assignment is completed.

11

NY\1428913.7

30. For the reasons stated above, the retention of Moelis as co-investment banker to the Committee is necessary and in the best interests of the Debtors' estates.

31. Moelis has indicated to the Committee that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. Moelis' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these chapter 11 cases will, keep time records in one-hour increments describing their daily activities and the identity of persons who performed such tasks. Also, Moelis will supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep the records in the same manner. In addition, apart from the time recording practices described above, Moelis' restructuring personnel do not maintain their time records on a "project category" basis. The Committee has been advised that to have Moelis recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record its time as prescribed by the Local Rules would be, in each case, unduly burdensome and time-consuming. As such, the Committee submits that the time descriptions that Moelis' restructuring personnel will provide should be sufficient for any review of the time entries in connection with a subsequent application for compensation.

32. The number of hours that will be shown on Moelis' time records in these cases likely will be fewer than the number of hours Moelis' restructuring professionals and non-restructuring professionals will spend on this matter. Moelis does not normally maintain hourly time records in connection with its non-chapter 11 services, and consequently some restructuring professionals may understate the number of hours they have worked on this matter because they

12

do not keep time as a matter of course. Moreover, Moelis' non-restructuring professionals who work on this matter will not maintain hourly time records.

33. Except as otherwise provided herein and in the Derrough Declaration, Moelis intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the United States Trustee and the Local Rules and orders of this Court, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

34. In the spirit of the foregoing, the Committee has asked for, and Moelis has agreed to, additional conditions and procedures in connection with the allowance and payment of compensation and the reimbursement of expenses sought in connection with this Application, in substantially the same form negotiated with, or otherwise agreeable to, the United States Trustee and approved by this Court in *PSINet Inc., et al.*, Case No. 01-13213 (Bankr. S.D.N.Y. July 11, 2001) and in *In re Delphi Corp., et al.*, Case No. 05-4481 (RDD) (Bankr. S.D.N.Y. June 19, 2006) (Docket No. 4268), which provides for the following, notwithstanding anything to the contrary in the Engagement Letter:

    a. the fees and expenses described in the Engagement Letter (including any amounts sought in connection with the Indemnity) will in all cases be subject to approval of the Court under section 328(a)[5] of the Bankruptcy Code (and not under section 330 of the Bankruptcy Code) upon a proper application by Moelis in accordance with the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines established by the United States Trustee, the Local

---

[5] *See In re Int'l Gypsum Co.*, 123 F.2d 861 (5th Cir. 1997) (concerning pre-approval of professional fees pursuant to section 328(a) of the Bankruptcy Code).

13

NY\1428913.7

>    Rules and the orders of the Court, <u>provided</u>, <u>however</u>, that only the United States Trustee retains all rights to object to Moelis' interim and final fee applications (including expense reimbursement) on any grounds including, without limitation, the reasonableness standard provided for in section 330 of the Bankruptcy Code;
>
> b. any and all fees will be paid to Moelis upon specific approval from the Court or in accordance with any other procedures for the compensation of professionals established by the Court in these cases; and
>
> c. any fees or expenses paid to Moelis but disapproved by the Court will be promptly returned by Moelis to the Debtors' estates.

35. The Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Moelis and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation of the services to be provided as contemplated in the Engagement Letter. Moelis and Jefferies also believe that the Fee Structure fairly reflects the division of labor between them in providing services to the Committee.

36. The hours worked, the results achieved and the ultimate benefit to the Committee of the work performed by Moelis in connection with this engagement may vary and the Committee and Moelis have taken this into account in setting the above fees.

37. The Committee acknowledges and agrees that (a) Moelis' restructuring capabilities, mergers and acquisitions expertise, (b) the expertise that Moelis' professionals have gained in the last 34 months in providing services to the Committee while at Jefferies and (c) Moelis' capital markets knowledge, financing skills and automotive industry knowledge, some

14

or all of which may be required by the Committee during the term of Moelis' engagement hereunder, were important factors in its decision to retain Moelis as co-investment banker. The ultimate benefit to the Committee from Moelis' services hereunder could not be measured merely by reference to the number of hours to be expended by Moelis' professionals in the performance of such services.

38. The Committee also acknowledges and agrees that the Fee Structure has been agreed upon by Jefferies and Moelis in anticipation that a substantial commitment of professional time and effort will be required of Moelis, Jefferies and their respective professionals hereunder, and in light of the fact that such commitment may foreclose other opportunities for Moelis and that the actual time and commitment required of Moelis and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

39. In sum, in light of the foregoing and given the numerous issues which Moelis may be required to address in the performance of its services hereunder, Moelis' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market price for Moelis' services for engagements of this nature in an out-of-court context, the Committee acknowledges and agrees that the Fee Structure is both fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## INDEMNITY

40. As mentioned above and as set forth in the Engagement Letter, the Committee believes that the Debtors and their estates should provide Moelis and the other Indemnified Persons (as that term is defined in the Engagement Letter) with an indemnity. The Committee has requested that the indemnification provisions of the Engagement Letter be modified to

15

reflect, in substantially the same form, indemnification provisions negotiated with, or otherwise agreeable to, the United States Trustee and approved by courts including in the following cases heard in this District: In re Nextwave Personal Communications, Inc. et al., Case No. 98-21529 (ASH) (Bankr. S.D.N.Y. Oct. 1, 2001) and In re PSINet Inc. et al., Case No. 01-013213 (REG) (Bankr. S.D.N.Y. July 11, 2001). Moelis having so agreed, the Committee and Moelis seek approval of the indemnification provisions in the Engagement Letter, subject to the following:

    a. all requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to review by this Court to ensure that such payment conforms to the terms of the Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules and the orders of this Court, and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, subject to the condition that in no event shall an Indemnified Person be indemnified or receive contribution in the case of bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person;

    b. in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtors, their estates or the Committee asserts a claim for, and the Court determines by final order that such claim arose out of, bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person; and

16

      c.   in the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Moelis' own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code.

The indemnity set forth in full in the Engagement Letter as modified by the subparagraphs in this paragraph is hereinafter referred to as the "Indemnity".

      41.   The Indemnity is a reasonable term and condition of the Moelis engagement. See In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. Dec. 6, 2000); In re AI Realty Marketing of N.Y., Inc. (In re Sunbeam), No. 01-40291 (AJG) (Bankr. S.D.N.Y. Apr. 17, 2001). While there are no standards of reasonableness in terms of retentions in bankruptcy, courts focus on who provides the services and the cost of comparable services in a non-bankruptcy context. See In re Busy Beaver Building Ctrs., Inc., 19 F.3d 833, 848-49 (3d Cir. 1994). Unlike the market for other professionals that a creditors' committee may retain, indemnification is a standard term of the market for investment bankers and financial advisors. In fact, the Indemnity is comparable to those generally obtained by financial advisory and investment banking terms of similar stature to Moelis and for comparable engagements, both in and out of court.

## APPLICABLE AUTHORITY

42. The Committee seeks approval of Moelis' retention and employment as set forth in the Engagement Letter pursuant to section 328(a) of the Bankruptcy Code.

43. Section 328(a) of the Bankruptcy Code provides, in relevant part, as follows:

> "The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."

11 U.S.C. § 328(a).

44. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> "An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee."

Fed. R. Bankr. P. 2014.

45. The Committee respectfully submits that the terms of the proposed retention are reasonable and based on the customary compensation charged by Moelis and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, and have been approved and implemented in not just this jurisdiction but also in chapter 11 cases elsewhere. Indeed, the entire engagement as set forth in the Engagement Letter (as modified herein) is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings, in each case, in light of Moelis' experience in reorganizations and the scope of the work to be performed pursuant to its retention. In particular,

18

the Committee believes that the proposed Fee Structure creates a proper balance between fixed Monthly Fees and the contingency Transaction Fee based on the success of the Restructuring. Accordingly, the Committee respectfully submits that the terms of the proposed engagement of Moelis including, without limitation, the Fee Structure and the Indemnity should be approved.

46. For the reasons set forth in this Application, section 328(a) therefore permits the Court to approve, on an interim basis, the terms of the proposed engagement of Moelis as set forth in the Engagement Letter (as modified herein) including the Monthly Fee portion of the Fee Structure and the Indemnity.

## NOTICE

47. Notice of this Application has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures entered by this Court on March 20, 2006 (Docket No. 2883). In light of the nature of the relief requested, the Committee submits that no other or further notice need be given.

## NO PRIOR REQUEST

48. Because the legal points and authorities upon which this Application relies are incorporated herein, the Committee respectfully requests that the requirement of a memorandum of law, pursuant to Local Rule 9013-1(b), be deemed satisfied.

49. No previous request for the relief sought herein has been made to this or any other Court.

19

NY\1428913.7

**WHEREFORE**, the Committee respectfully requests that the Court enter an order (a) authorizing the retention and employment of Moelis as its co-investment banker *nunc pro tunc* to July 1, 2008, and (b) granting the Committee such other relief as is just and proper.

Dated:  September 3, 2008
       New York, New York

Respectfully submitted,
**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DELPHI CORPORATION ET AL.,**

By:  /s/ David Daigle
David Daigle
Capital Research and Management Company
Committee Chairperson