**EXHIBIT A**

**Derrough Declaration**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DELPHI CORPORATION, et al., | ) Case No. 05-44481 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DECLARATION OF WILLIAM Q. DERROUGH IN SUPPORT
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
APPLICATION FOR ORDER UNDER SECTIONS 328 AND 1003 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 2014 APPROVING
RETENTION OF MOELIS & COMPANY LLC AS CO-INVESTMENT
BANKER TO THE COMMITTEE *NUNC PRO TUNC* TO JULY 1, 2008**

William Q. Derrough states as follows:

1.      I am a Managing Director of Moelis & Company LLC ("Moelis"), an investment banking firm with principal offices located at 245 Park Avenue, 32nd Floor, New York, NY 10167.

2.      I submit this Declaration (this "Derrough Declaration") in support of the application (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") of Delphi Corporation *et. al.* (collectively, the "Debtors") for an order authorizing the retention and employment of Moelis as co-investment banker (with Jefferies & Company, Inc. ("Jefferies")) *nunc pro tunc* to July 1, 2008 pursuant to the terms and conditions set forth in that certain engagement letter dated as of July 1, 2008 (the "Engagement Letter"), a copy of which is attached hereto as Annex 1 and an agreement between Moelis and Jefferies attached hereto as Annex 2. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

**Necessity for Employment**

3.        Moelis is an investment banking firm with its principal office located at 245 Park

Avenue, 32nd Floor, New York, New York 10167.  Moelis is a registered broker-dealer with the

United States Securities and Exchange Commission and is a member of the Financial Industry

Regulatory Authority and the Securities Investor Protection Corporation.  Moelis also maintains

a private equity business.  Moelis was founded in 2007 and is a wholly-owned subsidiary of

Moelis & Company Holdings LLC, a privately-owned company.  Moelis & Company Holdings

LLC, together with its subsidiaries, has approximately 125 employees located in offices in New

York, Los Angeles, Boston and Chicago.

4.        Moelis provides a broad range of corporate advisory services to its clients,

including, without limitation, services pertaining to: (i) general financial advice; (ii) mergers,

acquisitions, and divestitures; (iii) corporate restructurings; (iv) special committee assignments;

and (v) capital raising.  Moelis & Company Holdings LLC's private equity business ("Moelis

Capital Partners") holds investment positions in various entities, some of which may be parties in

interest in these chapter 11 cases.

5.        Moelis and its senior professionals have extensive experience in providing

advisory services to companies in the automotive industry and in the reorganization and

restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

6.        Since Moelis' registration as a broker-dealer in 2007, it has provided advisory

services to a number of clients, including Allied Waste Industries, Inc., Anheuser-Busch

Companies, Inc., Cannery Casino Resorts, LLC, Entravision Communications Corporation,

Invitrogen Corporation, NBTY, Inc., WCI Steel, Inc., Westwood One, Inc. and Yahoo! Inc.

Moelis' senior professionals have provided advisory services to an extensive number of

companies in the automotive industry prior to joining Moelis, including, but not limited to, Aston

Martin, Accubuilt, Borg Warner, Key Plastics, Penske and United Auto Group.  In addition,

Moelis' professionals have provided chapter 11 restructuring services to a number of companies

prior to joining Moelis, including, but not limited to, Adelphia Business Solutions, Inc., Bally

Total Fitness, Exide Technologies, Federal-Mogul Corporation, Foamex L.P., and Friedman's

Inc.

7.        On June 19, 2006, the Bankruptcy Court granted the Committee's amended

application to appoint Jefferies as its investment banker.  Thereafter, some Jefferies employees

primarily responsible for services to the Committee, including me, have ceased to be employed

by Jefferies and are now employed by Moelis.[1]

8.        I understand that the Committee sought to retain Moelis as its co-investment

banker because of its employees' prior experience in providing investment banking services to

the Committee in connection with the Debtors' chapter 11 cases, and because of Moelis'

professionals' expertise in providing investment banking services to debtors and creditors in

restructuring and distressed situations and its expertise in the automotive industry.

**<u>Services to be Rendered</u>**

9.        Subject to further order of the Court and in consideration for the compensation

contemplated herein, Moelis will provide the following services, among others:[2]

      a.      valuation of the Debtors' enterprise value, on a consolidated and division

         basis;

---

[1]        The former Jefferies (now Moelis) professionals who would be primarily responsible for providing services to the Committee are William Derrough, Isaac Lee and David Groban.

[2]        This summary is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the terms contained in this Derrough Declaration and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Unless otherwise defined, capitalized terms used in this summary shall have the meanings ascribed to them in the Engagement Letter.

    b.    pricing of any securities to be issued in the Restructuring, as well as evaluation of the terms of any such securities;

    c.    evaluation of any financing proposed as part of the Restructuring, including, without limitation, debtor in possession financing and exit financing;

    d.    assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness, labor costs or capital structure, including, without limitation, assessments of leverage and capital structure of the reorganized entities and evaluation of business acquisitions/divestures (including monitoring of any purchase/sale process);

    e.    analysis of restructuring proposals from various constituencies, including, without limitation, labor concession proposals, pension and OPEB restructuring plans;

    f.    assist and advise the Committee in evaluating and analyzing the proposed implementation of a Restructuring; and

    g.    render such other investment banking services as may from time to time be agreed upon by the Committee and Moelis, including, without limitation, providing expert testimony and other expert and investment banking support related to any threatened, expected or initiated litigation.

10.    Moelis has agreed with Jefferies to divide their respective areas of responsibilities and services to be provided to the Debtors' estates to avoid duplication of efforts. Pursuant to this agreement, Moelis' primary services to the Committee will include, but are not limited to, the following: (1) analysis of potential or proposed strategies for restructuring; (2) analysis of restructuring proposals from various constituencies (including valuation considerations as appropriate); (3) evaluation of considerations for General Motors Corporation in any restructuring and (4) analysis of exit financing alternatives. Jefferies will be primarily responsible for services related to asset sales, analysis of debtor in possession financing and labor, pension and OPEB issues. To the extent that issues arise in the course of Jefferies and Moelis providing services to the Committee in which their respective areas of responsibilities,

Jefferies and Moelis will communicate to divide responsibilities and avoid duplication of their services to the Committee.

### **Moelis' Connections with the Debtors and Other Parties**

11.     In light of the financial complexity of these chapter 11 cases, Moelis has made a considerable effort to identify all of Moelis' connections, if any, with the Debtors, their primary creditors, shareholders and other parties-in-interest, as well as their respective attorneys and accountants.  This process is on-going and Moelis will supplement this Declaration in the future if additional connections become known to it.

12.     To the best of my knowledge, neither I, Moelis, nor any of its professionals or investors holds or represents any interest adverse to the Debtors.

13.     In preparing this Declaration in accordance with Bankruptcy Rule 2014(a), Moelis has (a) researched its accounting records and (b) issued a general inquiry to all of its members, investors and professionals, relying on information provided by the Debtors, to determine whether Moelis has any connections with the Debtors, creditors and other parties in interest, or their respective attorneys or accountants.

14.     Except as provided herein, based on the results of this due diligence, the members and professionals of Moelis do not have any connections with the Debtors, creditors or any other parties-in-interest, and their respective attorneys or accountants, except as follows:

> a.    Certain parties in interest are investors in Moelis & Company Holdings LLC and Moelis Capital Partners (as defined below).
>
> b.     Kaye Scholer LLP represents Moelis in matters unrelated to the Debtors and their chapter 11 cases.
>
> c.    O'Melveny & Meyers LLP is a client of Moelis in matters unrelated to the Debtors and their chapter 11 cases.

I do not believe any of these connections would constitute a conflict with respect to any parties-in-interest in these cases.

15.    In addition, given the large number of unsecured creditors and other parties in interest in these chapter 11 cases, there may be other unsecured creditors and parties in interest that are served by Moelis.  While Moelis may have provided or may in the future provide services to the parties above and other parties in interest in these chapter 11 cases, none of those relationships or matters have or will have any connection with these chapter 11 cases.  Despite the efforts described above to identify and disclosed Moelis' relationships with parties in interest in these cases, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed.  Moelis will file supplementary declarations regarding its retention if additional relevant information is obtained.

16.    Moelis & Company Holdings LLC's private equity business ("Moelis Capital Partners") holds investment positions in various entities, some of which may be parties in interest in these chapter 11 cases.  To the best of my knowledge, Moelis Capital Partners does not hold any investment positions that constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.  Furthermore, Moelis Capital Partners does not share any information relating to its investment activities with the Moelis professionals seeking retention in these cases, and the Moelis professionals providing services to the Debtors will not share confidential or otherwise non-public information it receives in the course of this engagement with Moelis Capital Partners.  Accordingly, Moelis Capital Partners' investment activities do not constitute a conflict of interest that would disqualify Moelis from providing services described in the Engagement Letter.

17.    Except as otherwise set forth herein, to the best of my knowledge, neither I, Moelis, nor any of its professionals thereof:

    a.    is a creditor, equity security holder or insider of the Debtors (including by reason of unpaid fees);

    b.    is or has been an investment banker for any security (outstanding or otherwise) of the Debtors;

    c.    is or has been, within three years before the Petition Date, an investment banker of a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors; or a director, officer or employee of an investment banker for any security (outstanding or otherwise) of the Debtors;

    d.    is or has been within two years before the Petition Date, an officer, director or employee of the Debtors or of an investment banker specified in subparagraphs (b) or (c) of this paragraph;

    e.    presently represents, or represented within the last three years, a creditor or equity security holder of the Debtors, or a person otherwise adverse or potentially adverse to the Debtors, on any matter that is related to the Debtors or the Debtors' estates; or

    f.    has any other interest, direct or indirect, which may affect or be affected by the proposed representation.

Accordingly, to the best of my knowledge, information and belief, Moelis is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code (prior to the effectiveness of the BAPCPA).

### Professional Compensation

18.    Subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and further orders of the Court, the Committee and Moelis have agreed that Moelis shall be entitled to receive, from the Debtors' estates, as compensation for its services in these cases:  (a) a monthly fee (the "Monthly Fee") of $131,250 per month and (b) a transaction fee (the "Transaction Fee") in an amount equal to one third of (i) 0.50% of Total Consideration (as defined in the Engagement Letter) greater than $0.50 and up to including $0.75 per $1.00 of allowed unsecured claim and (ii) 0.75% of Total Consideration greater than $0.75 per $1.00 of

allowed unsecured claim.[3]   The Transaction Fee shall not be less than $0.67 million or greater

than $3.33 million (the "Cap"), however Moelis has reserved the right to request modification of

the Cap.

19.     To the extent the Total Consideration is paid in cash, the Transaction Fee is also

payable in cash.  To the extent the Total Consideration will consist of non-cash considerations, in

the Committee's sole discretion, the Transaction Fee may be payable in like consideration.

20.     The terms above do not alter the total amount of Monthly Fees and possible

Transaction Fees that would be payable by the Debtors.  Rather, these terms simply reflect the

agreement between Jefferies and Moelis regarding the allocation of those fees between

themselves.[4]

21.     At any time during the time of Moelis' engagement, the Committee may, in its

sole discretion, on at least 15 days' prior notice to Moelis, require Moelis to cease to provide

services in these cases for one or more consecutive months, not to exceed three months in the

aggregate (a "No-Service Period").  Moelis shall not be entitled to the Monthly Fee with respect

to the No-Service Period.  One half of the Monthly Fees actually paid by the Debtors

---

[3]     This summary is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the terms contained in this Derrough Declaration and those set forth in the Engagement Letter, the terms of the Engagement Letter shall control.  Unless otherwise defined, capitalized terms used in this summary shall have the meanings ascribed to them in the Engagement Letter.

[4]     The agreement between Jefferies and Moelis provides that Monthly Fees and Transaction Fees would be allocated as follows:

(a) Beginning with the Monthly Fee due July 1, 2008, Monthly Fees shall be apportioned with three-quarters (3/4) being paid to Moelis and one-quarter (1/4) being paid to Jefferies.  Jefferies and Moelis agree that this apportionment reflects a reasonable estimate of the respective services each party expects to perform for Delphi going forward.

(b) The Transaction Fee, if any, shall be apportioned with one-third (1/3) being paid to Moelis and two-thirds (2/3) being paid to Jefferies.  Jefferies and Moelis agree that this apportionment reflects a reasonable estimate of the respective services each party expects to have performed overall for Delphi by the time the Delphi assignment is completed.

commencing with the 19th Monthly Fee paid to Jefferies shall be credited against the

Transaction Fee. The Debtors' estates paid the first monthly fee to Jefferies as of October 18,

2005. Crediting of Monthly Fees has been effective after payment to Jefferies of the March 2007

Monthly Fee (the April 2007 Monthly Fee was the 19th Monthly Fee).

22.      The Debtors and their estates will also reimburse Moelis, subject to the approval

of this Court, for all reasonable out-of-pocket expenses, including, without limitation, all

reasonable travel expenses, duplicate charges, messenger services, long distance telephone calls

and other customary expenditures incurred by Moelis in performing its investment banking

services.

23.      As set forth more fully in the Moelis Engagement Letter, the Debtors and their

estates are to indemnify and hold harmless Moelis, its agents, principals and employees for all

claims, damages, liabilities and expenses to which such parties may have been subject to as a

result of their involvement with providing investment banking services, except to the extent that

such claims, damages, liabilities and expenses resulted, in whole or part, from gross negligence

or willful misconduct.

24.      It is not the general practice of investment banking firms to keep detailed time

records similar to those customarily kept by attorneys. Moelis' restructuring professionals, when

formally retained in chapter 11 cases, and when required by local rules, do, and in these chapter

11 cases will, keep time records in one-hour increments describing their daily activities and the

identity of persons who performed such tasks. Also, Moelis will supplement this information

with a list of the non-restructuring professionals who assist the restructuring department on this

matter but who do not, as a matter of general practice, keep the records in the same manner. In

addition, apart from the time recording practices described above, Moelis' restructuring

personnel do not maintain their time records on a "project category" basis. To have Moelis recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record its time as prescribed by the Local Rules would be, in each case, unduly burdensome and time-consuming. As such, the detailed time descriptions that Moelis' restructuring personnel will provide should be sufficient for any review of the time entries in connection with a subsequent application for compensation.

25.     The number of hours that will be shown on Moelis' time records in these cases likely will be fewer than the number of hours Moelis' restructuring professionals and non-restructuring professionals will spend on this matter. Moelis does not normally maintain hourly time records in connection with its non-chapter 11 services, and consequently some restructuring professionals may understate the number of hours they have worked on this matter because they do not keep time as a matter of course. Moreover, Moelis' non-restructuring professionals who work on this matter will not maintain hourly time records.

26.     Except as otherwise provided in the Application and herein, Moelis intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the United States Trustee and the Local Rules and orders of this Court, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

27.     In the spirit of the foregoing, the Committee has asked for, and Moelis has agreed to, additional conditions and procedures in connection with the allowance and payment of compensation and the reimbursement of expenses sought in connection with this Application,

which provides for the following, notwithstanding anything to the contrary in the Engagement
Letter:

a.      the fees and expenses described in the Engagement Letter (including any amounts
sought in connection with the Indemnity) will in all cases be subject to approval
of the Court under section 328(a) of the Bankruptcy Code (and not under section
330 of the Bankruptcy Code) upon a proper application by Moelis in accordance
with the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines
established by the United States Trustee, the Local Rules and the orders of the
Court, provided, however, that the United States Trustee only retains all rights to
object to Moelis' interim and final fee applications (including expense
reimbursement) on any grounds including, without limitation, the reasonableness
standard provided for in section 330 of the Bankruptcy Code;

b.      any and all fees will be paid to Moelis upon specific approval from the Court or in
accordance with any other procedures for the compensation of professionals
established by the Court in these cases; and

c.      any fees or expenses paid to Moelis but disapproved by the Court will be
promptly returned by Moelis to the Debtors' estates.

28.     The terms and conditions of Moelis' employment are reasonable and comparable
to compensation generally charged by financial advisors and investment bankers of similar
stature for comparable engagements, both in and out-of-court.  Given the numerous issues that
Moelis may be required to address in these chapter 11 cases, Moelis' commitment to the variable
level of time and effort necessary to address all such issues as they arise and the market prices

for Moelis' services for engagements of this nature in both out-of-court and chapter 11 contexts,

I believe that the fee arrangements in the Engagement Letter are reasonable.

29.     The terms of Moelis' employment and compensation, as described in the

Engagement Letter, are consistent with employment and compensation arrangements typically

entered into by Moelis when providing such investment banking services.  Moelis' employment

and compensation arrangements are competitive with those entered into by other investment

banking firms when rendering comparable services.  I believe that the foregoing compensation

requirements are both reasonable and market-based.  I believe that the fee structure defined

herein fairly reflects the division of labor between Moelis and Jefferies in providing services to

the Committee.

30.     No promises have been received by Moelis as to compensation in connection with

these chapter 11 cases other than as outlined in the Engagement Letter and Moelis has no

agreement with any other entity (other than Jefferies, as set forth in the agreement annexed to the

Application) to share any compensation received with any person other than the principals and

employees of Moelis, pursuant to section 504 of the Bankruptcy Code.

31.     It is currently anticipated that I will be primarily responsible for rendering

services on Moelis' behalf.

32.     To the best of my knowledge, information and belief, Moelis is a "disinterested

person," as that phrase is defined in section 101(14) of the Bankruptcy Code.  The statements

made herein are based on the initial conflicts checks outlined above and inquiries of Moelis'

professionals.  Continued inquiry will be made following the presentment of the Application, on

a periodic basis, with additional disclosures to the Court if appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

By: _/s/ William Q. Derrough_____
      William Q. Derrough

Dated: September 3, 2008

**ANNEX 1**

**Engagement Letter**

10877 WILSHIRE BOULEVARD
SUITE 600
LOS ANGELES, CALIFORNIA 90024

T 310.443.2300
F 310.443.8700

M O E L I S  &  C O M P A N Y

July 1, 2008

**Official Committee of Unsecured Creditors**
**of Delphi Corporation, et al.**
c/o Latham & Watkins LLP
885 Third Avenue
New York, New York  10022

Attention:  Robert J. Rosenberg, Esq.

Re: <u>Financial Restructuring Advisory Services</u>

      This agreement (the "<u>Agreement</u>") will confirm the arrangements under which Moelis & Company LLC ("<u>Moelis</u>," and, together with its affiliates and subsidiaries, "we," "our" or "us") has been engaged by the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), appointed in the bankruptcy cases (the "<u>Cases</u>") of Delphi Corporation and its debtor affiliates (collectively, the "<u>Debtors</u>" or the "<u>Company</u>"), which are now pending in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), to act as financial restructuring advisor, in cooperation with Jefferies & Company, Inc. and its affiliates (collectively, "<u>Jefferies</u>"), to the Committee in the Cases.

1.     <u>Services</u>.  In connection with the Cases, Moelis will perform the following financial advisory services, among others, for the Committee:  (a) become familiar, to the extent Moelis deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors; (b) advise the Committee on the current state of the "restructuring market"; (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness, labor costs or capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "<u>Restructuring</u>"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring; (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and (e) render such other financial advisory services as may from time to time be agreed upon by the Committee and Moelis, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.  It is expressly agreed that, other than as set forth above, Moelis will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.  Moelis shall agree with Jefferies upon a division of the areas of responsibility and services to be provided to the

MOELIS & COMPANY

Committee between Moelis and Jefferies to ensure that there is no duplication of services to the Committee and no additional fees incurred by the Debtors' estates unless provided for under the terms of this Agreement.

2.    Cooperation.

(a)    The Committee will furnish or use its best effort to cause the Debtors to furnish Moelis with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or which Moelis requests (all such information gathered or furnished being the "Information"). The Committee will or will use its best effort to cause the Debtors to advise Moelis promptly of the occurrence of any event or any other change in fact or circumstance prior to the closing of any Restructuring upon which Moelis formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b)    Moelis (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors (provided that Moelis will, if requested by the Committee, conduct a going concern valuation of the Debtors in accordance with standard investment banking practices), and (iv) retains the right to perform due diligence during the course of this engagement.

3.    Use of Name, Advice, etc.

(a)    Moelis' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other entity including, but not limited to, any member of the Committee in its individual capacity, any other security holder, employee or creditor of the Debtors and may not be used or relied upon for any other purpose. No advice or opinion rendered by Moelis, whether formal or informal, may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without its prior written consent. In addition, Moelis may not be otherwise referred to without its prior written consent, which shall not be unreasonably withheld. It is understood, however, that if Moelis is requested to render an opinion, the opinion may be included in its entirety (including all attachments thereto) in any communication by the Committee to parties in interest in the Bankruptcy Cases; provided, however, that Moelis has had the opportunity to review such communication prior to any filing with the Securities and Exchange Commission and prior to its dissemination to parties in interest in the Bankruptcy Cases. Furthermore, if requested by Moelis, the Committee shall include a mutually acceptable reference to Moelis in any press release or other public announcement made by the Committee regarding the matters described in this agreement

MOELIS & COMPANY

(b)    The Committee acknowledges that Moelis will act as an independent contractor hereunder, and that Moelis' responsibility to the Committee is solely contractual in nature and that Moelis does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Moelis and the Indemnified Persons (as defined in Schedule A hereto) shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have, nor be held out to third parties as having, the authority to legally bind any of the foregoing.

4.    <u>Compensation</u>. Pursuant to an agreement between Jefferies and Moelis, Moelis will receive 75% of the total monthly fee and 33% of the total transaction fee, as those fees are provided in the Jefferies' engagement letter with the Committee, dated December 19, 2005. Based on this fee arrangement, the Committee agrees to promptly seek approval of the following:

(a)    The Debtors' estates shall pay to Moelis a monthly fee (the "<u>Monthly Fee</u>") equal to $131,250 per month beginning on July 1, 2008. If this Agreement becomes effective on a day other than July 1, 2008, Moelis will be paid a Monthly Fee pro rated from the Effective Date (as defined below) of this Agreement to the end of the first month. Each Monthly Fee will be fully accrued, due and payable on the first day of each month (subject to Bankruptcy Court approval), provided, however, that the first Monthly Fee shall be payable on the date that this Agreement becomes effective. At any time during the term of this Agreement, the Committee may, in its sole discretion, require Moelis to cease providing services in these cases for one or more consecutive calendar months, not to exceed three (3) months in the aggregate (a "<u>No Service Period</u>"). The Committee must provide Moelis with at least 15 days' prior notice of the commencement of a No Service Period. Moelis shall not be entitled to receive any Monthly Fee with respect to a No Service Period. One-half (50%) of the aggregate Monthly Fees actually paid by the Debtors' estates commencing with the 19th Monthly Fee shall be credited against the Transaction Fee otherwise payable to Moelis pursuant to Section 4(b). The Debtors' estates first paid a Monthly Fees to Jefferies effective as of October 18, 2005. Thus, 50% of the Monthly Fees paid by the Debtors' estates after payment of the March 2007 Monthly Fee are to be credited against the Transaction Fee (the April 2007 Monthly Fee was the 19[th] Monthly Fee).

(b)    In addition, in consideration of the services rendered by Moelis hereunder, the Debtors' estates shall pay to Moelis a transaction fee (the "<u>Transaction Fee</u>") equal to one third of: (i) 0.50% of Total Consideration (as defined below), if any, received by unsecured creditors in the Cases greater than $0.50 up to and including $0.75 per $1.00 of allowed claim, and (ii) 0.75% of Total Consideration, if any, received by unsecured creditors in the Cases greater than $0.75 per $1.00 of allowed claim. The Transaction Fee shall not be less than $0.67 million or greater than $3.33 million (the "<u>Cap</u>"), however, Moelis reserves the right to request a modification or waiver of the Cap. The Transaction Fee is fully earned and accrued upon approval of this Agreement by the Bankruptcy Court in accordance with Section 8 below, and is due and payable on the

MOELIS & COMPANY

earlier of (i) the date of receipt of initial distributions by unsecured creditors in the Cases, or (ii) the effective date of the Plan; provided, however, that any portion of the Transaction Fee arising from any contingent payments shall be due and payable on the date such contingent payment is made to unsecured creditors.

For the purposes hereof, "Total Consideration" shall mean the total aggregate consideration paid by the Debtors on account of allowed unsecured claims against the Debtors pursuant to a plan or plans of reorganization in the Cases (including any amounts in escrow), but excluding any unsecured claims of, and consideration paid by the Debtors on account of claims of, the Pension Benefit Guaranty Corporation (the "PBGC") or any assignee of the PBGC. Total Consideration shall include, without limitation: (i) cash; (ii) notes, securities and other property; (iii) payments made in installments; and (iv) contingent payments (whether or not related to future earnings or operations). For purposes of computing any fees payable to Moelis hereunder, non-cash consideration shall be valued as follows: (x) publicly traded securities shall be valued at the ten day volume weighted average price (as reported in The Wall Street Journal) commencing on the sixty-first trading day after the closing of the transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof on the day prior to closing as determined in good faith by the Committee and Moelis. If the parties are unable to agree on the value of any other property, its value will be determined by arbitration in a manner consistent with any order entered by the Bankruptcy Court and in accordance with the rules of the American Arbitration Association and judgment upon the award entered by the arbitrators may be entered in any court having jurisdiction. Each party will pay its own costs in connection with the arbitration, and the cost of the arbitration itself will be borne equally by the parties.

To the extent that the Total Consideration to unsecured creditors in the Cases consists of cash consideration, then the Transaction Fee shall be payable in cash. To the extent that the Total Consideration consists of non-cash consideration, then the Transaction Fee described herein may be paid in like consideration, at the Committee's sole discretion.

(c)      The Committee acknowledges that in light of Moelis' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Moelis in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Moelis' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Moelis for its services.

(d)      Notwithstanding the Debtors' obligations hereunder to pay the fees and expenses of Moelis, to indemnify Moelis and to provide Moelis with information, it is understood and agreed that Moelis' sole and exclusive client is the Committee, and Moelis will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

M O E L I S  &  C O M P A N Y

5.    Expenses.  In addition to any fees that may be paid to Moelis hereunder, whether or not any Restructuring occurs, the Committee shall cause the Debtors' estates to reimburse Moelis, in accordance with the terms of any applicable orders of the Bankruptcy Court, for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Moelis in connection with the engagement contemplated hereunder.

6.    Termination.  Moelis' engagement hereunder will run from the date of Moelis' selection by the Committee, subject to approval by an order of the Bankruptcy Court that is acceptable to Moelis in its sole and absolute discretion (the "Effective Date"), to the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to the Plan that has been confirmed by the Bankruptcy Court and has become effective, or (B) Moelis' services hereunder are terminated by written notice by either Moelis or the Committee on fifteen days' notice to the other.  Upon any termination of this Agreement, the Debtors' estates shall pay Moelis any accrued but unpaid fees hereunder, and shall reimburse Moelis for any unreimbursed expenses that are reimbursable hereunder.  In the event Moelis' services hereunder are terminated by the Committee and a Restructuring is completed within one year of such termination, then the Debtors' estates shall pay Moelis in cash, the Transaction Fee.  Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 3-5, 6, 7, 9, and 11-14 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Debtors, their estates, the Committee, Moelis, and the Indemnified Persons, and any chapter 7 trustee appointed in the Cases.

7.    Indemnification, etc.  As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.  If Moelis is asked to act for the Committee in any additional capacity relating to this engagement but not specifically addressed in this agreement, then such activities shall constitute separate engagements and the terms of any such additional engagements will be embodied in one or more separate written agreements, containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions.  The indemnity provisions in Schedule A shall apply to any such additional engagements, unless superseded by an indemnity provision set forth in a separate agreement applicable to any such additional engagements, and shall remain in full force and effect regardless of any completion, modification or termination of our engagement(s).

8.    Bankruptcy Court Approval.

M O E L I S  &  C O M P A N Y

(a)  The Committee shall use its reasonable best efforts to seek an interim and final order of the Bankruptcy Court authorizing the employment of Moelis as its investment banker pursuant to the terms of this agreement (including, without limitation, the fee, expense, and indemnification provisions hereof) pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date first written above.  In agreeing to seek Moelis' retention under section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Moelis' general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Moelis' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees set forth in section 4 herein are reasonable, regardless of the number of hours to be expended by Moelis' professionals in the performance of the services to be provided hereunder.

(b) The Committee shall file an application to retain Moelis as soon as practicable, and shall use its reasonable best efforts to cause such application to be considered on the most expedited basis reasonably possible.  The retention application and the proposed interim and final orders authorizing Moelis' retention must be acceptable to Moelis in its sole discretion.

(c)  Moelis shall have no obligation to provide services under this or any agreement, unless Moelis' retention under such agreement is approved by final non-appealable order of the Bankruptcy Court (acceptable to Moelis in its sole discretion, which order must also approve the indemnification provisions in Schedule A of this agreement) under section 328(a) of the Bankruptcy Code, within 75 days of the date first written above.  If the final non-appealable order authorizing the employment of Moelis is not obtained within such 75-day period, or such order is later reversed, vacated or set aside for any reason, Moelis may terminate this agreement, and the Committee shall be obligated to reimburse Moelis for all fees and expenses incurred prior to the date of termination, subject to the requirements of any applicable orders of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules, guidelines and Bankruptcy Court orders.  Following entry of the interim order authorizing the retention of Moelis, the Committee shall pay as promptly as possible all fees and expenses due pursuant to this agreement, as approved by the Bankruptcy Court and in accordance with the terms of this agreement, the Bankruptcy Code, the Bankruptcy Rules, and applicable local rules, guidelines and Bankruptcy Court orders.

(d)  The Committee agrees that Moelis' post-petition compensation as set forth herein and payments made pursuant to the expense reimbursements and indemnification provisions of this agreement (including, without limitation, Schedule A hereto) shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court.  The Committee also agrees to assist

MOELIS & COMPANY

Moelis in preparing, filing and serving all required fee statements, interim fee applications, and final fee application. The Committee agrees to support Moelis' fee applications during any Bankruptcy Court hearing on such fee applications, so long as the fees and expenses sought by Moelis therein are consistent with this agreement.

(e) The terms of this Section 8 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

9.    No Assurances; Other Transactions; Disclaimer.

(a)    This Agreement does not constitute a commitment or obligation by Moelis or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring. By signing this Agreement, the Committee expressly acknowledges that Moelis does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or achieve any other result.

(b)    Moelis is a securities firm engaged in a number of merchant banking and investment banking activities. Information which is held elsewhere by Moelis, but of which none of the individuals involved in providing services contemplated by this agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Moelis' responsibilities to the Committee under this agreement. Moelis will have no duty to disclose to the Committee or utilize for the Committee's benefit any nonpublic information acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on Moelis' business.

10.    Construction and Governing Law.

(a)    The obligations of the Debtors hereunder shall be the joint and several obligations of the entities comprising the Debtors. Despite the Debtors' obligations under this engagement, we are acting as an independent contractor and not in any other capacity, with duties owing solely to the Committee. All aspects of the relationship created by this agreement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein. All actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction we and the Committee hereby irrevocably submit. WE HEREBY AGREE, AND THE COMMITTEE HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM,

M O E L I S & C O M P A N Y

COUNTERCLAIM OR ACTION ARISING OUT OF THE AGREEMENT OR OUR
PERFORMANCE THEREUNDER.

(b)    This agreement (including all Annexes hereto) embodies the entire
agreement and understanding between the parties hereto and supersedes all prior
agreements and understandings relating to the subject matter hereof.  If any term,
provision, covenant or restriction herein is held by a court of competent jurisdiction
(including the Bankruptcy Court) to be invalid, void, unenforceable, or against public
policy, the remainder of the terms, provisions and restrictions contained herein shall
remain in full force and effect and shall in no way be affected, impaired or invalidated.
This agreement may not be amended or otherwise modified or waived except by an
instrument in writing signed by both us and the Committee.  This agreement may be
executed in two or more counterparts, each of which shall be deemed an original, but all
of which shall constitute one and the same agreement.  This agreement shall be binding
upon the Committee and us and its and our respective successors and permitted assigns.

11.    Payments.  All payments to be made to Moelis hereunder shall be the joint and
several liability of each of the Debtors' estates in the Cases, and, unless otherwise agreed
by Moelis in its sole and absolute discretion, shall be made in cash by wire transfer of
immediately available U.S. funds, without deduction for any tax, subject to any necessary
Bankruptcy Court approval.  Except as expressly set forth herein, no fee payable to
Moelis hereunder shall be credited against any other fee due to Moelis.  Subject to
Bankruptcy Court approval, the obligation of the Debtors' estates to pay any fee or
expense set forth herein shall be absolute and unconditional and shall not be subject to
reduction by way of setoff, recoupment or counterclaim.

12.    Announcements.  The Committee and the Debtors agree that Moelis may,
following any Restructuring, place an announcement in such newspapers, electronic
media and periodicals as it may choose, stating Moelis' role and other material terms of
the Restructuring.  Moelis shall be entitled to identify the Committee and use the
Debtors' name and logo, if any, in connection therewith.  The Committee agrees, and will
use its reasonable best efforts to cause the Debtors to agree, that any press release it may
issue announcing the Restructuring will, at Moelis' request, contain a reference to
Moelis' role in the Restructuring.

13.    Notices.  Notice given pursuant to any of the provisions of this Agreement shall
be in writing and shall be mailed or delivered (a) if to the Committee, at the address set
forth above, and (b) if to Moelis, at 245 Park Avenue, 32nd Floor, New York, New York
10167.

14.    Assignment.  We acknowledge and agree that we may not assign our obligations
and rights under, and our consideration pursuant to, this Agreement to another registered
broker-dealer without the prior written consent of the Committee which may be granted
or withheld in the Committee's sole discretion.

08/15/2008 11:47 209-863-1543 1788 CAPITAL FEDEX KINKO'S 0278 NO.000 P.3/4
AUG.15.2008 11:00AM 212 641 1788 CAPITAL NO.797 P.4/7

Official Committee of Unsecured Creditors of Delphi Corporation, et al,
July 1, 2008
Page 9

Sincerely,

MOELIS & COMPANY LLC

By
Name: William Q. Derrough
Title: Managing Director

Accepted and Agreed:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF DELPHI CORPORATION, ET AL.

By
Name: David Daigle
Title: Chairperson

MOELIS & COMPANY

# SCHEDULE A

In further consideration of the agreements contained in our engagement letter dated the date hereof (the "engagement"), in the event that Moelis & Company LLC or any of our divisions, affiliates, the respective directors, officers, partners, agents or employees of any of our affiliates, or any other person controlling us or any of our affiliates (collectively, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person (including, without limitation, creditors of Delphi Corporation or any of its affiliated debtors (collectively, the "Debtors"), stockholders of the Debtors, a receiver, a custodian, a trustee appointed the bankruptcy cases involving the Debtors (the "Cases"), or a litigation trust, liquidating trust or similar vehicle created in connection with the Cases (or a trustee of such trust or similar vehicle)), in connection with or as a result of the engagement or any matter referred to in the engagement, the Debtors will reimburse such Indemnified Person for its reasonable and customary legal and other expenses (including, without limitation, the costs and expenses incurred in connection with investigating, preparing for and responding to third-party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred. The Debtors will also indemnify and hold harmless any Indemnified Person from and against, and the Debtors agree that no Indemnified Person shall have any liability to the Debtors or their owners, parents, affiliates, security holders or creditors for, any losses, claims, damages or liabilities (including actions or proceedings in respect thereof) (collectively, "Losses") (A) related to or arising out of (i) the Debtors' actions or failures to act (including statements or omissions made or information provided by the Company or its agents) or (ii) actions or failures to act by an Indemnified Person with the Debtors' consent or in reliance on the Debtors' actions or failures to act or (B) otherwise related to or arising out of the engagement or our performance thereof, except that this clause (B) shall not apply to any Losses that are finally determined by a court or arbitral tribunal to have resulted primarily from the bad faith, willful misconduct or gross negligence of any Indemnified Person.

If such indemnification for any reason (other than such Indemnified Person's bad faith, willful misconduct or gross negligence being finally determined by a court or arbitral tribunal to have primarily caused the Losses) is not available or is insufficient to hold an Indemnified Person harmless, the Debtors agree to contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Debtors and the Committee, on the one hand, and by us, on the other hand, with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations, such as the relative fault of the Debtors and the Committee on the one hand and of us on the other hand; provided, however, that, to the extent permitted by applicable law, the Indemnified Persons shall not be responsible for amounts which, in the aggregate, are in excess of the amount of all fees actually received by us from the Debtors in connection with the engagement. Relative benefits to the Debtors and the Committee, on the one hand, and us, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Debtors, its creditors and its equityholders, as the case may be, pursuant to the transaction(s), whether or not consummated,

M O E L I S  &  C O M P A N Y

contemplated by the engagement, bears to (ii) all fees actually received by us in connection with the engagement.

The Debtors and the Committee will not, without our prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a release of each Indemnified Person from any liabilities arising out of such action, claim, suit, investigation or proceeding. The Debtors and the Committee will not permit any such settlement, compromise, consent or termination to include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of an Indemnified Person, without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Debtors' prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors and the Committee set forth herein, the Debtors and the Committee will notify us in writing thereof (if not previously so notified) and, if requested by us, shall arrange in connection therewith alternative means of providing for the obligations of the Debtors and the Committee set forth herein, including the assumption of such obligations by another party, insurance, surety Notes or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to the Debtors, the Committee and us.

The Debtors' and the Committee's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise. The Debtors and the Committee acknowledge that in connection with the engagement we are acting as an independent contractor and not in any other capacity, with duties owing solely to the Committee. This agreement and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York, applicable to contracts made and to be performed therein. All actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction we and the Debtors hereby irrevocably submit. Solely for purposes of enforcing the Debtors' and the Committee's obligations hereunder, the Debtors and the Committee consent to personal jurisdiction, service and venue in any court proceeding in which any claim subject to this agreement is brought by or against any Indemnified Person. WE HEREBY AGREE, AND THE DEBTORS HEREBY AGREE TO WAIVE ANY RIGHT TO

**MOELIS & COMPANY**

TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR OUR PERFORMANCE THEREOF.

The provisions of this Schedule A shall apply to the engagement referred to in the engagement letter dated the date hereof (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement. If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable, or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

MOELIS & COMPANY LLC

By: _____

Name: William Q. Derrough

Title: Managing Director

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DELPHI CORPORATION, ET AL.

By: _____

Name: David Daigle

Title: Chairperson

**ANNEX 2**

**Jefferies/Moelis Agreement**

**Jefferies** ▨

July 2, 2008

## AGREEMENT

      This agreement is between Moelis & Company Holdings LLC, on behalf of itself and its affiliates (collectively, "Moelis") and Jefferies & Company, Inc., on behalf of itself and its affiliates (collectively, "Jefferies") (a "Party" and collectively the "Parties"), with respect to a restructuring assignment for the Official Committee of Unsecured Creditors (the "Delphi Committee") of Delphi Corporation ("Delphi"), relating to the bankruptcy action *In re Delphi Corporation*, No. 05-44481 (Bankr. S.D.N.Y.) (the "Delphi Court").

      By July 15, 2008, the employees involved in the Delphi assignment (the "Delphi Team"), formerly employed by Jefferies, will have ended their employment at Jefferies and commenced employment with Moelis. Due to the advanced status of the Delphi assignment, which began in 2005, the Parties anticipate that Jefferies will continue to perform services for the Delphi Committee after July 15, 2008, notwithstanding the movement of the Delphi Team to Moelis.

      To the extent they can do so between themselves, the Parties intend to agree on a retention structure to propose to the Delphi Committee and the Delphi Court that will reasonably apportion fees for the Delphi assignment between Moelis and Jefferies, without increasing the existing cost to Delphi.

      The Parties agree as follows:

      1. To the extent reasonably practicable, the Parties will cooperate and attempt in good faith to obtain any requisite approvals from the Delphi Committee, Delphi and the Delphi Court of the following retention structure with respect to the Delphi assignment (the terms "Monthly Fee," "Transaction Fee," and "Expenses" have the same meaning as in the Jefferies-Delphi engagement letter, dated December 19, 2005):

      (a) Beginning with the Monthly Fee due July 1, 2008, Monthly Fees shall be apportioned with three-quarters (3/4) being paid to Moelis and one-quarter (1/4) being paid to Jefferies. The Parties agree that this apportionment reflects a reasonable estimate of the respective services each Party expects to perform for Delphi going forward.

      (b) The Transaction Fee, if any, shall be apportioned with one-third (1/3) being paid to Moelis and two-thirds (2/3) being paid to Jefferies. The Parties agree that this apportionment reflects a reasonable estimate of the respective services each Party expects to have performed overall for Delphi by the time the Delphi assignment is completed.

**Jefferies** ▨

(c) Each Party shall seek reimbursement of its own respective Expenses.

2. To the extent reasonably practicable, the Parties agree to negotiate in good faith, both with each other and during the course of retention negotiations with the Delphi Committee, regarding other terms or matters necessary to implement the terms set forth in Paragraph 1, provided, however, that nothing herein shall be construed (a) to limit the Delphi Committee's ability to retain Moelis or Moelis' ability to accept such retention, or as binding on the Delphi Committee in any way; or (b) to obligate either Party to (i) take or advocate a position adverse to that of Delphi or the Delphi Committee on behalf of the other Party; (ii) contravene the letter or the spirit of any order of the Delphi Court or any statute or law, or (iii) accept any terms that differ materially from the terms in Paragraph 1. Each Party remains solely responsible for making any requisite fee applications to the Delphi Court in accordance with the terms of an applicable retention agreement.

3. Jefferies shall release to each member of the Delphi Team documents, records, research, analyses or other materials relating to the Delphi assignment (the "Delphi Materials"), or copies thereof, so that each member of the Delphi Team shall have access to Delphi Materials and be able to continue work on the Delphi assignment without interruption upon commencement of employment with Moelis. Moelis agrees to keep the Delphi Materials confidential and to use them only for purposes of the Delphi assignment. As soon as practicable after the date hereof, Moelis will seek to enter into an appropriate confidentiality agreement with Delphi. Nothing herein shall obligate Jefferies to provide any materials to Moelis in violation of any duty of confidentiality that Jefferies may owe to Delphi or the Delphi Committee.

4. Other than a claim for breach of this Agreement, the Parties shall have no recourse to each other with respect to any claim relating to the Delphi assignment, including any claim for compensation for services rendered to Delphi or the Delphi Committee. Nothing herein shall be construed as a guarantee by one Party to the other Party of any payments relating to the Delphi assignment.

Jefferies & Company, Inc.

By: _M. GRANT STEVENS_
Title: _EVP_

Agreed and accepted:

Moelis & Company Holdings LLC

By: _____
Title: