Hearing Date:  September 23, 2008, at 10:00 a.m. Eastern Time
Objection Deadline:  September 20, 2008, at 4:00 p.m. Eastern Time

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Email: robert.rosenberg@lw.com
         mitchell.seider@lw.com
         mark.broude@lw.com
         michael.riela@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481(RDD) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**NOTICE OF RENEWED MOTION FOR AN ORDER AUTHORIZING THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PROSECUTE THE DEBTORS' CLAIMS AND DEFENSES AGAINST GENERAL MOTORS CORPORATION**

PLEASE TAKE NOTICE that on September 12, 2008, the Official Committee of

Unsecured Creditors (the "Committee") filed the *Renewed Motion for an Order Authorizing the*

*Official Committee of Unsecured Creditors to Prosecute the Debtors' Claims and Defenses*

*Against General Motors Corporation* (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider the Motion will be held

on **September 23, 2008 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing") before the

Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New

York (the "Bankruptcy Court"), One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the approval of the

Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the

Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Bankruptcy

Court in accordance with General Order M-242, as amended (registered users of the Bankruptcy

Court's case filing system must file electronically and all other parties-in-interest must file on a

3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format), (d) be submitted in hard-copy form directly to the

chambers of the Honorable Robert Drain, United States Bankruptcy Judge, and (e) served upon

(i) counsel to the Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n Robert J. Rosenberg and Mark A. Broude), (ii) Delphi Corporation, 5725 Delphi

Drive, Troy, Michigan 48098 (Att'n: General Counsel), (iii) counsel to the Debtors, Skadden,

Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: John Wm. Butler, Jr.), (iv) special counsel to the Debtors, Shearman & Sterling LLP, 599

Lexington Avenue, New York, New York 10022 (Att'n: Douglas Bartner), (v) counsel to the

agent under the Debtors' post-petition credit facility, Davis Polk & Wardwell, 450 Lexington

Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (vi) counsel

to the Official Committee of Equity Security Holders, Fried, Frank, Harris, Shriver & Jacobson

LLP, One New York Plaza, New York, New York (Att'n Bonnie Steingart), (vii) the Office of

the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100,

New York 10044 (Att'n: Alicia M. Leonhard and Brian S. Masumoto), and (viii) counsel to

General Motors Corporation, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New

NY\1450860.3

York 10152 (Att'n: Michael Kessler and Jeffrey L. Tanenbaum), in each case so as to be

**received** no later than **4:00 p.m. prevailing Eastern Time on September 20, 2008** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein

will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are

timely filed and served in accordance with the procedures set forth herein, the Bankruptcy Court

may enter an order granting the Motion without further notice.

Date:   New York, New York
         September 12, 2008

**LATHAM & WATKINS LLP**

By:  /s/ Robert J. Rosenberg
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone:  (212) 906-1200

Attorneys for the Official Committee of Unsecured
Creditors

NY\1450860.3

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York  10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Email: robert.rosenberg@lw.com
         mitchell.seider@lw.com
         mark.broude@lw.com
         michael.riela@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**RENEWED MOTION FOR AN ORDER AUTHORIZING THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS TO PROSECUTE THE DEBTORS'
CLAIMS AND DEFENSES AGAINST GENERAL MOTORS CORPORATION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 cases of Delphi Corporation ("Delphi") and certain of its affiliates (collectively, the

"Debtors"), by and through its undersigned counsel, hereby renews its *Motion For An Order*

*Authorizing the Official Committee of Unsecured Creditors to Prosecute the Debtors' Claims*

*and Defenses against General Motors Corporation and Certain Former Officers of the Debtors*

(the "STN Motion") with respect to General Motors Corporation, which was filed by the

Committee on July 28, 2006 and stayed pursuant to a confidential Stipulation and Consent Order

Addressing Estate Litigation Against General Motors Corporation (the "GM Estate Litigation

Consent Order") filed under seal on October 5, 2007.  By this Motion, the Committee requests

entry of an order authorizing it to prosecute the Debtors' claims and defenses against General

Motors Corporation ("GM").  Pursuant to this Court's Case Management Order, the Debtors

have consented to the filing of this Motion on an expedited basis (at least 10 days prior to the

date of the hearing thereon).  In support of this Motion, the Committee respectfully states as

follows:

**PRELIMINARY STATEMENT**

1.      While they profess to abide by their fiduciary duties to their bankruptcy estates

and unsecured creditors, the Debtors have completely abdicated their responsibilities to both by

reaching a one-sided agreement to amend the Global Settlement Agreement (the "GSA") and the

Master Restructuring Agreement (the "MRA").  Under the proposed amendments, the Debtors

would (a) grant GM an administrative expense claim that would be measured in the billions of

dollars, and (b) even more egregiously, grant GM a full release of all of the estates' claims

against it immediately, without regard to whether the Debtors ultimately reorganize and without

regard to what if any distributions unsecured creditors ultimately receive.  The Debtors are now

seeking this Court's approval of these amendments during the September 23, 2008 omnibus

hearing, despite the vociferous objections of the Committee.  The granting of a multi-billion

dollar administrative expense claim and the release before any revised plan of reorganization is

proposed would put GM in complete control of the Debtors' reorganization process.

2.      In support of their agreement with GM, the Debtors will probably tell this Court

that it has no other choice but to accede to GM's demands.  The Debtors' will point to the

December 31, 2008 maturity of the current post-petition debtor-in-possession financing facility

NY\1450860.3

_____") and the importance of documenting prior to September 30, 2008, a transfer of their pension assets and liabilities under section 414(l) of the Internal Revenue Code (a "Section 414(l) Transfer").  However, an astute observer may wonder how the Debtors reached the point where they felt obligated to turn over the keys of these cases to GM.  The answer is that the Debtors unjustifiably delayed creating a new business plan after it became clear that their confirmed chapter 11 plan of reorganization could not be consummated.  Moreover, during extended periods of time in recent months, GM refused to negotiate regarding a revised plan of reorganization.  Because the Debtors used none of the levers that would bring GM to the negotiating table, GM essentially "ran out the clock" on the Debtors, and forced them to give in to its demands because of the looming deadlines in these cases.

3.       The Debtors are at the most critical juncture of these cases.  The Debtors face liquidity shortfalls for 2008 and beyond, which, if not addressed, will likely imperil the continued viability of their North American operations.  The Debtors' liquidity shortfalls are primarily caused by losses on the Debtors' North American business with GM, coupled with the Debtors' failure to use their leverage to force GM to accept pricing modifications to compensate the Debtors for the costs of their business with GM.  There is no proposed revised plan of reorganization on the table, no extension of the DIP Facility past December 31, and no clear path toward emergence from chapter 11.  With a hefty administrative expense claim and a general release in hand, GM would have little incentive to assist the Debtors in exiting chapter 11 and terms that provide a meaningful recovery for any creditors other than GM.

4.       In support of their agreement with GM, the Debtors probably will tell this Court that GM is providing them with significant value (*i.e.*, the Section 414(l) Transfer), and that granting the huge administrative expense claim and release is worth that value.  However, many

of the obligations that GM would assume under a Section 414(l) Transfer are obligations that it already has under certain benefit guarantees between GM and the major unions representing the Debtors' employees, or are potential liabilities of GM arising from the Claims and Defenses (as defined below). Even more importantly, GM may already be liable for *all* of the underfunding in the Debtors' pension plans, as it could be determined that a principal purpose of the spin-off of the Debtors' pension plans from GM's plans was for GM to evade or avoid liability. In addition, GM is not providing the Debtors with any cash in connection with a Section 414(l) Transfer (so GM is not providing "new money" to the Debtors). Rather, in assuming the Debtors' pension obligations, GM simply would be using some of the massive overfunding in its own pension plans, which is an asset that GM cannot use for any other purpose. Because GM is receiving a multi-billion dollar administrative expense claim in return for the Section 414(l) Transfer, it is receiving the release for little or no consideration.

5.    Unfortunately, the Debtors' actions and failures to act have only proven that they are unwilling or incapable of going toe-to-toe with GM, of using the leverage that they had (and still have) to reach a negotiated deal with GM without prejudicing the interests of their estates and unsecured creditors. Despite the Committee's consistent urging and despite the threat of an impending crisis, the Debtors steadfastly refused to take any action that might possibly have strengthened their bargaining position with GM (such as unilaterally raising prices on goods that are shipped to GM under expired supply contracts, or seeking Court approval to reject unprofitable contracts). And of course, the Debtors have refused to reassert their estates' valuable claims and defenses against GM arising out of GM's 1999 spin-off of the Debtors (the "<u>Claims and Defenses</u>"), which Claims and Defenses the Debtors acknowledge are more than colorable. These actions should have been taken months ago.

NY\1450860.3

6.      As the Committee will argue in a later objection to the motion to approve the agreement with GM, that approval should be denied.  Moreover, because the Debtors have agreed to turn over substantially all the value of their estates to GM, and have thus demonstrated their inability or unwillingness to forcefully assert the estates' rights against GM, it is now even more incumbent on the Committee to stand up for the rights of the unsecured creditors.  For the reasons set forth herein, the Committee requests authority in its discretion to file, serve, and prosecute the Claims and Defenses on behalf of the Debtors' estates, as well as all other rights and remedies of the estates, against GM arising from or related to the Claims and Defenses.

## JURISDICTION

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.      The statutory predicates for the relief requested herein are sections 1103(c)(5), 1107(a), and 1109(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

## BACKGROUND

9.      On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On October 14, 2005, the three remaining Debtors also filed voluntary petitions.

10.      The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1]  Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel,

---

[1]   The current members of the Committee are: (a) Capital Research and Management Company; (b) Freescale Semiconductor, Inc.; (c) IUE-CWA; (d) Wilmington Trust Company, as Indenture Trustee and (e) Tyco Electronics Corporation.  The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

NY\1450860.3

Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its

investment banker.  On September 3, 2008, the Committee filed an application to retain Moelis

& Company LLC as its co-investment banker, along with Jefferies & Company, Inc.

11.    As described in more detail in the STN Motion, following its formation in these

chapter 11 cases, the Committee began to investigate GM's involvement in the Debtors' business

affairs.  Based on information that the Committee obtained in its investigation and information

produced by the Debtors, the Committee determined that GM's conduct leading up to and

following the 1999 spin-off of the Debtors gives rise to the Claims and Defenses.  The

Committee further determined that the Claims and Defenses are very significant assets of the

Debtors' estates and should be asserted against GM by or on behalf of the Debtors.  The

Committee sought this Court's approval to pursue the Claims and Defenses in the STN Motion

on July 28, 2006.

12.    The hearing on the STN Motion was adjourned from time to time while the

Committee engaged in plan negotiations with the Debtors, GM, and the Equity Committee.  The

parties entered into the Stipulation and Consent Order Addressing Estate Litigation Against

General Motors Corporation on October 5, 2007 (the "GM Estate Litigation Consent Order") to

pave the way for a consensual settlement with GM while maintaining the estates' ability to

prosecute the Claims and Defenses against GM if necessary.  The GM Estate Litigation Consent

Order suspended proceedings in connection with the STN Motion and tolled the running of the

any applicable statute of limitations with respect to both claims asserted by the Committee and

by GM.  Pursuant to the GM Estate Litigation Consent Order, the Debtors filed an adversary

complaint under seal against GM for the purpose of commencing action against GM within two

years of the orders for relief in these cases, thus preserving the estates' right to pursue the Claims

9

and Defenses, under the procedures set forth in the Preservation of Estate Claims Procedures

Order, entered by this Court on August 16, 2007.

13.     The GM Estate Litigation Consent Order expressly allows the Committee to file,

at its discretion, this Motion seeking to determine the STN Motion and for authorization to

prosecute the Claims and Defenses.

14.     The parties in interest proceeded down a path towards consensual reorganization

of the Debtors.  On January 25, 2008, the Court issued an order confirming the Debtors' Plan,

which became a final order on February 4, 2008.  The Plan included a global settlement of the

Debtors' potential claims against GM.  Regarding the settlement, the Debtors admitted in their

First Amended Disclosure Statement with Respect to First Amended Joint Plan of

Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession,

filed on December 10, 2007 (the "Disclosure Statement"):  "Without the resolution of the GM

Claims and Defenses and the substantial contributions made by GM under the Settlement

Agreement between Delphi and GM, the Debtors continue to believe they would be 'hopelessly

insolvent' (as the Debtors disclosed in December 2005), and unable to provide meaningful

distributions to junior stakeholders or a par plus accrued at Plan value recovery for holders of

unsecured claims."  (Disclosure Statement, at DS-163.)

15.     Unfortunately, as a result of the plan investors' purported termination of the

Equity Purchase and Commitment Agreement (the "EPCA"), the Plan was not consummated.[2]

At present, the Debtors need to develop an alternative emergence framework.  As a result of

---

[2]  The Plan was not consummated because of the refusal of the plan investors to perform under the EPCA.  Had the
Debtors proposed a "standalone" plan of reorganization without the participation by any plan investors (as the
Committee had long suggested), they more than likely would have emerged from chapter 11 already.  A principal
reason that the Debtors chose to pursue a reorganization plan that involved new money from plan investors was
GM's insistence on getting a multi-billion dollar cash distribution under the plan.  Thus, at least some of the
responsibility for the Debtors' failure to consummate a plan belongs to GM.

NY\1450860.3

delay in the effective date of the Plan, and accordingly a delay in the effective dates of the GSA and the MRA, GM has avoided providing the financial support to the Debtors that it agreed to make under those agreements. At this time, the Debtors' North American operations suffer unsustainable losses at the expense of all constituencies other than GM. Without near-term prospects for putting a plan of reorganization into effect, the Debtors are facing significant liquidity shortfalls in both the near and long term, primarily as a result of the Debtors' business with GM in North America. In addition, the Debtors face the upcoming December 31, 2008 maturity date of the DIP Facility. In short, the Debtors need a workable solution to their outstanding problems that does not prejudice their estates and unsecured creditors as soon as possible. On the other hand, the *status quo* benefits GM by allowing it to continue to purchase parts from the Debtors at advantageous pricing.

16.    The Debtors' most viable path out of chapter 11 has been (and still is) through a negotiated arrangement with GM. GM understands very well that unless the Debtors solve their outstanding liquidity, pension, and other issues, they will face negative consequences in the very near term. Accordingly, GM has done its best to use all its negotiating leverage by refusing to negotiate with the Debtors until the Debtors were facing important near-term deadlines and by making unacceptable demands against the Debtors when it decided to negotiate. GM's demands are even more egregious because many of the obligations that GM would assume under the Section 414(l) Transfer are obligations that it already has under certain benefit guarantees between GM and the major unions representing the Debtors' employees, or are potential liabilities of GM arising from the Claims and Defenses. Even more importantly, GM may already be liable for *all* of the underfunding in the Debtors' pension plans, because a principal

11

purpose of the spin-off of the Debtors' pension plans from GM's plans could have been for GM to evade or avoid liability.

17.    For their part, the Debtors permitted GM to delay and force them to accede to its demands.  The Debtors were well aware of the September 30, 2008 Section 414(l) Transfer deadline and the December 31, 2008 DIP Facility maturity date for a long time; yet they allowed GM to delay negotiations.  As time wore on, the Debtors' negotiating leverage weakened, and GM's strengthened.  Yet, all this time the Debtors failed to take any action to give themselves additional leverage over GM, such as raising prices to GM under expired supply contracts, seeking Court authority to reject unprofitable GM contracts, or asserting the Claims and Defenses.  The sorry result of the Debtors' failures is clear.  In breach of their fiduciary duties, they have now agreed to GM's demand for an administrative expense claim measured in the billions of dollars and for an immediate general release by the Debtors' estates, rather than in connection with a plan of reorganization.

18.    GM is the clear beneficiary of the Debtors' proposed agreement.  Even if this agreement is approved, there still would be no proposed revised plan of reorganization on the table, the DIP Facility still would expire on December 31, 2008, the estates would lose their Claims and Defenses against GM, and the unsecured creditors' recoveries will plummet as a result of the massive administrative expense claim that GM would receive.  GM would thus be in complete control of the outcome of these cases and could ensure that the Debtors' North American operations continue to run for GM's benefit.  The agreement represents a complete abdication by the Debtors of their control over the progress of these cases and a complete capitulation to all of GM's demands.

NY\1450860.3

19.    The Debtors' actions and failures to act have made it incumbent upon the Committee to seek authority at this time to prosecute the Claims and Defenses against GM.  The Committee desires to resolve the disputes with GM through consensual negotiation.  Nevertheless, unless negotiations with GM result in a deal that would not prejudice the Debtors' unsecured creditors, the Committee cannot fulfill its duties to creditors without prosecuting the Claims and Defenses alleged in the complaint attached to the STN Motion and filed under seal (the "Complaint").  The Committee must now be authorized, at this critical juncture, to file the Complaint and to prosecute the Claims and Defenses in its discretion.

## THE ESTATES' CLAIMS AND DEFENSES AGAINST GM

20.    The Committee's investigation of the Claims and Defenses is summarized in the STN Motion and the exhibits thereto, which are incorporated herein by reference.  The Claims and Defenses of which the Committee currently is aware, as well as the factual allegations in support of them, are discussed in detail in the Complaint.  The Claims and Defenses are more than colorable and are not repeated herein.

## RELIEF REQUESTED

21.    By this Motion, the Committee seeks entry of an order authorizing it in its discretion to file, serve, and prosecute on behalf of the Debtors' estates the Complaint, as it may be amended, against GM, and authorizing it in its discretion to file, serve, and prosecute all other actions, objections, and rights against GM arising from or related to the Claims and Defenses.

## BASIS FOR RELIEF

**A.    Applicable Legal Standards**

22.    Section 1107 of the Bankruptcy Code provides that a debtor in possession shall perform all of the functions and duties of a trustee serving in a chapter 11 reorganization and

NY\1450860.3

that, among these duties, are the duties to collect property of its estate, examine proofs of claim, and object to the allowance of any claim that is improper. *See* 11 U.S.C. § 1107(a). Property of the estate includes "all legal or equitable interests of the debtor," and these interests include all causes of action belonging to the debtor at the time the case is commenced. *See* 11 U.S.C. § 541(a)(1); *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987). Moreover, a debtor is obligated to maximize the value of its estate for the benefit of its creditors. *See, e.g.*, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985) ("The trustee is 'accountable for all property received,' . . . and has the duty to maximize the value of the estate."). Accordingly, a debtor is duty bound to pursue claims and defenses that will increase the value of its estate. *See, e.g.*, *In re Commodore Int'l Ltd.*, 262 F.3d 96, 99 (2d Cir. 2001) ("The [debtor in possession] has an obligation to pursue all actions that are in the best interests of creditors and the estate.") (citing *In re Spaulding Composites Co.*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997)); *Louisiana World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 249 (5th Cir. 1988) ("If a valid and potentially profitable cause of action exists . . . which the debtor-in-possession may assert on behalf of the corporation, *all* creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished.").

23.    "The primary purpose of [a] [creditors'] committee is to represent the interests of all general unsecured creditors and to maximize distribution to them." *In re Life Serv. Sys., Inc.*, 279 B.R. 504, 510 (Bankr. W.D. Pa. 2002). In this regard, section 1103(c)(5) of the Bankruptcy Code provides as follows:

(c) A committee appointed under section 1102 of this title may –

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of

14

the continuance of such business, and any other matter relevant to the case
or to the formulation of a plan.

* * *

(5)  perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c)(2), (5); *see also In re Advisory Comm. of Major Funding Corp.*, 109 F.3d

219, 224 (5th Cir. 1997) ("Section 1103 provides the tools with which . . . creditors'

committee[s] work.").  Additionally, section 1109(b) of the Bankruptcy Code provides that "[a]

party in interest, including the debtor, the trustee, *a creditors' committee* . . . may raise and may

appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109 (emphasis

added).

24.    As noted by the Second Circuit in *Unsecured Creditors Comm. v. Noyes (In re

STN Enter.)*, 779 F.2d 901, 904 (2d Cir. 1985), sections 1103 and 1109 of the Bankruptcy Code

imply a "qualified right for creditors' committees to initiate suit [on behalf of a debtor in

possession] with approval of the bankruptcy court."  Moreover, where a debtor is unable or

unwilling to fulfill its statutory obligation to maximize the value of its estate, "[t]he practice of

authorizing the prosecution of actions on behalf of an estate by committees . . ., upon a showing

that such is in the interests of the estate, is one of long standing, and nearly universally

recognized."  *In re Adelphia Comm'ns Corp.*, 330 B.R. 364, 373 (Bankr. S.D.N.Y. 2005)

(citations omitted).  This "provides creditors and other stakeholders with the comfort that

potentially valuable (and sometimes critical) claims on behalf of the estate will be prosecuted—

without requiring bankruptcy judges to . . . resort[] to much more draconian or ineffective

mechanisms to ensure the prosecution of those claims, with the destruction to going concern

value and creditor recoveries that would frequently be the result."  *Id.*  In *STN*, the Second

Circuit confirmed that a bankruptcy court's approval of a committee's prosecution of litigation

on behalf of a debtor that failed to pursue the litigation is appropriate when (a) the committee

presents a colorable claim for relief that, upon appropriate proof, would support recovery and (b)

the litigation is likely to benefit the debtor's estate.  *STN*, 779 F.2d at 905.  *See also Adelphia*,

330 B.R. at 374, n.19; *In re Sunbeam Corp.*, 284 B.R. 355, 374 (Bankr. S.D.N.Y. 2002).

25.      To establish a colorable claim, a committee need only provide minimal

evidentiary basis for its allegations, and the court need not conduct a mini-trial to determine

whether such a claim exists.  *See, e.g.*, *STN*, 779 F.2d at 905.  In this context, a court's analysis

of the claims involved is similar to that applied in assessing a motion to dismiss a complaint for

failure to state a claim.  *See, e.g.*, *In re KDI Holdings, Inc.*, 277 B.R. 493, 508 (Bankr. S.D.N.Y.

1999); *In re Am.'s Hobby Ctr., Inc.*, 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998); *In re iPCS, Inc.*,

297 B.R. 283, 291 (Bankr. N.D. Ga. 2003).  "[A] complaint should not be dismissed for failure

to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 47

(1957).  *See also Halperin v. eBanker USA.com, Inc.*, 295 F.3d 353, 356 (2d Cir. 2002) (In ruling

on a motion to dismiss under F.R.C.P. 12(b)(6), a court must accept all factual allegations in the

complaint as true and draw all inferences in the plaintiff's favor.  The court may dismiss the

complaint only if the plaintiff cannot prove any set of facts consistent with its allegations, which

would entitle plaintiff to the relief sought.); *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.

2001) ("[On motion to dismiss for failure to state a claim,] the issue is not whether a plaintiff

will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims.") (citation omitted).

26.      If a debtor fails to pursue litigation that is likely to benefit its estate, such failure

is unjustifiable.  *See, e.g.*, *STN*, 779 F.2d at 905.  An "'unjustifiable failure' of a debtor to bring .

. . suit does not require an improper motive for the failure.  Rather, a debtor's failure to bring a

NY\1450860.3

claim is deemed to be unjustifiable when the committee has presented a colorable claim that on

appropriate proof could support recovery, and the action is likely to benefit the reorganization

estate." *Adelphia*, 330 B.R. at 374, n.19 (citing *STN*, 779 F.2d at 905; *Sunbeam*, 284 B.R. at

374). In determining whether an action would be beneficial to the estate, courts perform a cost-

benefit analysis to determine whether the costs to the estate in pursuing the action would be

outweighed by the potential gain if the action is successful. *See, e.g.*, *STN,* 779 F.2d at 905. As

with the determination of whether the claims are colorable, the court need not hold a mini-trial

on the likelihood of success of the claim. *Id.* Rather, the court need only find a sufficient

likelihood of success to justify any delay and expense to the bankruptcy estate that the initiation

and continuation of the litigation may produce. *Id.* at 906; *Am.'s Hobby Ctr.*, 223 B.R. at 282.

**B.      The Committee Has Alleged Colorable Claims That Support Recovery and the
        Committee's Prosecution of the Complaint (as Amended, Modified or
        Supplemented) Will Benefit the Debtors' Estates and Creditors**

27.      The Claims and Defenses against GM are more than colorable. Indeed, the

Debtors, in filing a complaint under seal against GM pursuant to the GM Estate Litigation

Consent Order, have acknowledged that fact. The issue at this juncture is not the viability of the

Claims and Defenses, but instead whether the Debtors can afford to hold off any longer in

prosecuting the Complaint.

28.      The Claims and Defenses were not prosecuted by the Debtors or the Committee at

an earlier point in these cases because the threat of prosecution brought GM to cooperate in

formulating the Plan. Since confirmation of the Plan, however, GM has altered its course, and

the Claims and Defenses now represent a substantial asset to the estate, either directly, through

recovery against GM, or indirectly, as a threat of prosecution levied against GM as a means to

bring GM to cooperate towards a feasible reorganization of the Debtors.

NY\1450860.3

29.     The Debtors have statutory duties under section 1107 of the Bankruptcy Code to maximize the value of their estates for their creditors by, among other things, collecting the property of their estates and objecting to the allowance of improper claims.  The Claims and Defenses set forth in the Complaint are colorable, and the Debtors have declined to assert them. *See, e.g.*, *Louisiana World Exposition*, 858 F.2d at 253 ("Where the interests of an estate and its creditors are impaired by the refusal of a trustee or a debtor in possession to initiate adversary proceedings to recover property of the estate, … [that] refusal [is] unjustified").  The Debtors' failure to prosecute the Claims and Defenses is unjustifiable under *STN* because rather than prosecuting the Claims and Defenses, they are simply agreeing to a general release of the estates' claims before a revised plan of reorganization is on the table, and the outcome of the restructuring process is very much in doubt.

30.     Prosecution of the Claims and Defenses presents the best, and perhaps the only, means to secure feasible modifications of the Plan.  Absent any action against GM, GM has no incentive to be reasonable in its demands.  At this stage, the maximum possible leverage must be brought to bear against GM.  The Debtors' decision not to reassert the Claims and Defenses is unjustifiable while GM stands as a roadblock to the Debtors' reorganization, and it fails to account for the fact that it was the potential prosecution of the Claims and Defenses that brought GM to cooperate in forming the Plan in the first place.  The Committee takes action now to prevent the consummation of an agreement that would put GM in control of these cases and potentially wipe out unsecured creditors' recoveries.

31.     Accordingly, based on the foregoing, the Committee has satisfied both prongs of the *STN* test for authority to prosecute the Complaint against GM and to prosecute all other actions, objections, and rights against GM arising from or related to the Claims and Defenses.

NY\1450860.3

## NO PRIOR REQUEST

32.     No previous request for the relief sought herein has been made to this or any other Court.

## WAIVER OF MEMORANDUM OF LAW

33.     In accordance with Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, no separate memorandum of law is necessary as all authorities relied on in support of this Motion are set forth herein.

## NOTICE

34.     Notice of this Motion has been provided in accordance with this Court's Case Management Order, as amended or supplemented, and the Committee submits that no other or further notice is necessary.  No previous motion for the relief requested herein has been made to this or any other court.  Pursuant to this Court's Case Management Order, the Debtors have consented to the filing of this Motion on an expedited basis (at least 10 days prior to the date of the hearing thereon).

**WHEREFORE**, the Committee respectfully requests that this Court (a) enter an order, substantially in the form annexed hereto as <u>Exhibit A</u>, authorizing the Committee in its discretion to file, serve, and prosecute on behalf of the Debtors' estates the Complaint, as it may be amended, modified, or supplemented in any way, against GM, and authorizing the Committee in its discretion to file, serve, and prosecute all other actions, objections, and rights against GM arising from or related to the Claims and Defenses and (b) grant such other relief as is just and proper.

Dated: September 12, 2008
      New York, New York

                                        **LATHAM & WATKINS LLP**

                                        By:  /s/ Robert J. Rosenberg
                                            Robert J. Rosenberg (RR-9585)
                                            Mitchell A. Seider (MS-4321)
                                            Mark A. Broude (MB-1902)
                                            Michael J. Riela (MR-7829)
                                            885 Third Avenue, Suite 1000
                                          New York, New York 10022
                                          Telephone:  (212) 906-1200

                                        Counsel for the Official Committee
                                        of Unsecured Creditors

NY\1450860.3

**EXHIBIT A**

**Proposed Order**

NY\1450860.3

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481(RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### ORDER AUTHORIZING THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS TO PROSECUTE THE DEBTORS'
### CLAIMS AND DEFENSES AGAINST GENERAL MOTORS CORPORATION

Upon the Renewed Motion for an Order Authorizing the Official Committee of

Unsecured Creditors to Prosecute the Debtors' Claims and Defenses Against General Motors

Corporation (the "Motion")[1] and upon consideration of the supporting papers and the files and

records in these cases, and upon the arguments and testimony presented at the hearing before the

Court (if any), and any objections to the Motion having been withdrawn or overruled on the

merits, this Court finds and concludes that: (a) the Court has jurisdiction over the subject matter

of the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a

core proceeding pursuant to 28 U.S.C. § 157; (c) the legal and factual bases set forth in the

Motion and on the record at the hearing (if any) establish just cause for the relief granted herein;

(d) the Claims and Defenses against the Defendants set forth in the Complaint and other Claims

and Defenses represent colorable claims for relief that, on appropriate proof, would support

recovery to the benefit of the Debtors, their estates and their creditors; (e) the Debtors

unjustifiably failed to pursue the Claims and Defenses set forth in the Complaint and other

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed in the Motion or in the
Complaint attached to the Motion for an Order Authorizing the Official Committee of Unsecured Creditors to
Prosecute the Debtors' Claims and Defenses Against General Motors Corporation and Certain Former Officers of
the Debtors (the "Complaint").

Claims and Defenses against the Defendants; and (f) proper and adequate notice of the Motion has been provided and no other or further notice is necessary.

Based on the above findings and conclusions, and after due deliberation and good and sufficient cause appearing therefor, it is hereby:

**ORDERED** that the Motion is granted in its entirety; and it is further

**ORDERED** that pursuant to sections 1103(c)(5) and 1109(b) of the Bankruptcy Code, the Committee is authorized in its discretion to file, serve, and prosecute on behalf of the Debtors' estates the Complaint, as it may be amended, modified, or supplemented in any way, against General Motors Corporation, and is authorized in its discretion to file, serve, and prosecute all other actions, objections, and rights against General Motors Corporation arising from or related to the Claims and Defenses; and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: _____, 2008
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

NY\1450860.3