**Hearing Date: September 23, 2008, at 10:00 a.m. Eastern Time**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Albert L. Hogan
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DEBTORS' PRELIMINARY OBJECTION TO RENEWED MOTION FOR ORDER
AUTHORIZING OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PROSECUTE
DEBTORS' CLAIMS AND DEFENSES AGAINST GENERAL MOTORS CORPORATION

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this preliminary objection (the "Preliminary Objection") to the Renewed Motion For An Order Authorizing The Official Committee of Unsecured Creditors To Prosecute The Debtors' Claims And Defenses Against General Motors Corporation (the "Renewed STN Motion") (Docket No. 14167). In support of this Preliminary Objection, the Debtors respectfully represent as follows:

Background

1. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2. On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"). On April 28, 2006, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

3. Since the outset of these chapter 11 cases, the Debtors recognized that there may exist certain potential causes of action against General Motors ("GM"), and the Debtors scheduled those causes of action among the Debtors' assets. In addition, on March 31, 2006, the Debtors filed a motion to reject billions of dollars of unprofitable supply contracts with GM (Docket No. 3033) and a motion to reject the Debtors' collective bargaining agreements

2

(Docket No. 3035), some of the obligations of which are guaranteed by GM. In the summer of 2006, the Debtors entered into extensive negotiations with GM and the Debtors' labor unions in an effort to build support for a consensual plan of reorganization. Although the Creditors' Committee was informed and involved in this process, they apparently became unsatisfied with their level of control and involvement in the negotiations.

    4.  Accordingly, on July 28, 2006, the Creditors' Committee filed a motion requesting that the Court allow the Creditors' Committee to prosecute the Debtors' claims against GM pursuant to the qualified right recognized in <u>Unsecured Creditors Committee of Debtor STN Enterprises v. Noyes</u> (In re STN Enterprises), 779, F.2d 901 (2d Cir. 1985) (the "STN Motion") (Docket No. 4718). The Creditors' Committee sought the authority to pursue the Debtors' claims even though the Creditors' Committee conceded that negotiating a settlement with GM was preferable to litigation. (STN Motion ¶ 21.) Indeed, the Creditors' Committee admitted that, if granted the requested authority, it did not intend to immediately initiate suit. (<u>Id.</u>) Rather, the Creditors' Committee planned to leverage such authority in order to gain "a seat at the table in negotiations" between the Debtors and GM. (<u>Id.</u>)

    5.  On August 4, 2006, the Debtors filed a preliminary objection to the original STN Motion (the "Original Objection") (Docket No. 4859).[1] The Equity Committee also objected to the STN Motion (Docket No. 5070). The hearing on the STN Motion was adjourned from time to time while the Debtors, GM, the Equity Committee, and the Creditors' Committee engaged in negotiations with respect to the Debtors' plan of reorganization.

    6.  On September 6, 2007, the Debtors filed the Joint Plan of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No.

---

[1] The Debtors incorporate by reference their Original Objection, which is attached hereto as <u>Exhibit A</u>.

3

9263), and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264). The plan of reorganization included a settlement between the Debtors and GM embodied in the Global Settlement Agreement ("GSA") and Master Restructuring Agreement ("MRA"). At GM's insistence, most obligations set forth in the GSA and MRA were conditioned upon Delphi's emergence from chapter 11.

       7.     On October 5, 2007, the Debtors, GM, the Creditors' Committee, and the Equity Committee entered into the Stipulation And Consent Order Addressing Estate Litigation Against General Motors (the "Stipulation") (Docket No. 10480). The Stipulation suspended proceedings in connection with the STN Motion and tolled all applicable statutes of limitation and other time-based defenses concerning any of the Debtors' claims against GM and any of GM's claims against the Debtors. Also on October 5, 2007, the Debtors' filed under seal a Complaint against GM, as authorized by the Preservation of Estate Claims and Procedures Order (Docket No. 9105) and the Stipulation. The Complaint preserved the Debtors' claims against GM in the event that the Debtors were unable to consummate the GSA and the MRA.

       8.     On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386), and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Disclosure Statement described the Debtors' investigation into and evaluation of their claims and defenses against GM as well as the views of the statutory committees with respect to such claims and defenses. (DS at 54-61.) The Disclosure Statement also described the Debtors' business judgment that the consensual settlement with GM embodied in the plan of reorganization was clearly superior to any litigation

4

alternative.  (Id. at 61.)  The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389).

9. On January 25, 2008, the Court entered an order (the "Confirmation Order") confirming the plan filed on December 10, 2007 (as modified) (the "Plan") (Docket No. 12359).  In the Confirmation Order, the Court also approved the GSA (the "Approved GSA") and the MRA (the "Approved MRA") included within the Plan under Bankruptcy Rule 9019, finding that the proposed recoveries were the result of "good faith negotiations and arm's-length bargaining between the parties" and that such recoveries were "higher than reasonably foreseeable litigation outcomes."  (Confirmation Order Section QQ, pp. 22-23.)  The Confirmation Order became a final order on February 4, 2008.

10. On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Plan, Delphi's Plan Investors (as defined in the Plan) refused to participate in a closing that was commenced but not completed and refused to fund their Investment Agreement (as defined in the Plan) with Delphi.  The events of April 4 prevented the Debtors from consummating the Approved GSA and the Approved MRA.  Nonetheless, since that time, the Debtors diligently have continued to negotiate with GM regarding amendments to the Approved GSA and Approved MRA that should allow Delphi to pursue a reaffirmed emergence business plan and propose modifications to the Plan that should allow the Debtors to emerge from chapter 11 as soon as reasonably practicable.

11. Delphi finished its reaffirmed business planning process in late August 2008 and completed discussions concerning the amendments to the Approved GSA and Approved MRA as soon as practicable thereafter.  The results of this process are the Amended

5

GSA and Amended MRA, which are before this Court on Debtors' Expedited Motion For Order Authorizing Debtors To Implement Amended And Restated Global Settlement Agreement And Master Restructuring Agreement With General Motors Corporation (the "GSA and MRA Amendment Motion") (Docket No. 14164).  In the aggregate, through the Amended GSA and Amended MRA, GM is increasing its estimated net contribution to Delphi's transformation by approximately $4.6 billion.  Nevertheless, the Creditors' Committee is dissatisfied with the terms of the Amended GSA and Amended MRA and the Court will hear the Creditors' Committee's objection to the GSA and MRA Amendment Motion during the September 23, 2008 omnibus hearing.  Even though the Creditors' Committee admits that a settlement with GM is the preferred outcome of these cases – and, indeed, previously stipulated to suspend its STN Motion in favor of settlement – the Creditors' Committee filed the Renewed STN Motion, seeking to wrest settlement authority away from the Debtors in the event that the Court denies the GSA and MRA Amendment Motion.

Preliminary Objection

12.    If this Court grants the Debtors' GSA and MRA Amendment Motion, the Renewed STN Motion will be moot.  Even if the Court does not grant the GSA and MRA Amendment Motion, however, the Court should deny the Renewed STN Motion and allow the Debtors to remain in control of settlement negotiations with GM.

13.    The Creditors' Committee concedes that the Debtors' claims against GM are most appropriately resolved "through consensual negotiation" (Renewed STN Motion ¶ 19) – as opposed to litigation.  Thus, just as in 2006 when the Creditors' Committee first filed its STN Motion, the Creditors' Committee requests only the "discretion" to prosecute the Debtors claims (id. ¶¶ 6, 19, 21) in order to increase the Creditors' Committee's leverage to negotiate with GM. Nowhere in the Creditors' Committee's Renewed STN Motion does the Creditors' Committee

contend that actually prosecuting claims against GM to judgment will result in value to the Debtors' estates that is superior to the value obtained through consensual resolution.

    14.  The relief the Creditors' Committee seeks is not available under the law in these circumstances. <u>Unsecured Creditors Committee of Debtor STN Enterprises v. Noyes</u> (In re STN Enterprises), 779 F.2d 901 (2d Cir. 1985), and its progeny do not confer upon the Creditors' Committee an implied right to control settlement negotiations. Instead, the extraordinary relief the Creditors' Committee seeks is only available if a debtor unjustifiably fails to pursue claims that will add value to the estate. Given all of the facts and circumstances in these cases, the Debtors' approach in diligently asserting and preserving the estates' claims against GM while at the same time negotiating with GM to reach a fair settlement is more than justified. The Court should deny the Creditors' Committee's transparent request to substitute the Creditors' Committee's settlement "discretion" for that of the Debtors.

    15.  The Debtors intend to conduct discovery in connection with the Renewed STN Motion and are filing this Preliminary Objection to create a contested matter. The Debtors reserve the right to supplement this Preliminary Objection prior to the hearing on the Renewed STN Motion.

Conclusion

WHEREFORE, for the reasons set forth above, and reserving their right to submit a supplemental objection prior to the objection deadline, the Debtors respectfully request that this Court enter an order (a) denying the Renewed STN Motion and (b) granting such other and further relief as is just.

Dated: New York, New York
September 14, 2008

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    Albert L Hogan III
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
    Thomas J. Matz
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession