# **<u>Exhibit A</u>**

**Hearing Date and Time: August 17, 2006 at 10:00 a.m.**
**Objection Deadline: August 10, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Albert L. Hogan (AH 8807)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
   In re                                         :      Chapter 11
                                                             :
DELPHI CORPORATION, et al.,         :      Case No. 05-44481 (RDD)
                                                             :
                                                             :      (Jointly Administered)
                   Debtors.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' PRELIMINARY OBJECTION TO MOTION FOR ORDER
AUTHORIZING OFFICIAL COMMITTEE OF UNSECURED CREDITORS
TO PROSECUTE DEBTORS' CLAIMS AND DEFENSES AGAINST
<u>GENERAL MOTORS CORPORATION AND CERTAIN FORMER OFFICERS OF DEBTORS</u>



0544481060804000000000011

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this preliminary objection (the "Preliminary Objection") to the Motion for an Order Authorizing the Official Committee of Unsecured Creditors to Prosecute the Debtors' Claims and Defenses Against General Motors Corporation and Certain Former Officers of the Debtors (the "Motion") (Docket No. 4718). In support of this Preliminary Objection, the Debtors respectfully represent as follows:

### Preliminary Statement

1. In the Motion, the Official Committee of Unsecured Creditors (the "Committee") seeks to wrest from the Debtors' control (i) all of the estates' potential causes of action against General Motors Corporation ("GM"), whether known or unknown,[1] and (ii) all of the defenses to possible claims against the estates by GM, also whether known or unknown (collectively, the "GM Claims and Defenses").[2] This is so even though the Committee concedes that Delphi's Board of Directors was justified when it concluded, in its business judgment, that asserting such claims and defenses through the commencement of litigation <u>at this time</u> is <u>not</u> in the best interests of the Debtors' estates, and that negotiation is the best course of action. The Committee also concedes that it does <u>not</u> intend to prosecute the GM Claims and Defenses <u>at this</u>

---

[1] In its Motion, the Committee does not even attempt to address the legal rationale or legal authority for seeking permission to prosecute GM Claims and Defenses that are <u>unknown</u> to the Committee. Presumably even the Committee recognized that it could not persuasively apply controlling Second Circuit precedent to unknown claims and defenses and therefore decided to avoid the subject altogether except to inexplicably seek that relief. <u>See Unsecured Creditors' Comm. of Debtor STN Enters. v. Noyes</u> (In re STN Enters.), 779 F.2d 901, 904 (2d Cir. 1985). The Debtors' references in this Preliminary Objection to "STN," the "STN factors," a "STN Demand," etc. all relate to this Second Circuit decision.

[2] On July 31, 2006, which was subsequent to the date of the Motion and also was the bar date for filing general unsecured claims against the Debtors' estates, GM and its affiliates filed a 40 page multi-billion dollar proof of claim (with additional attachments) against various of the Debtors.

2

time, and that it seeks to take away the Debtors' statutory authority to manage the GM Claims and Defenses only to enhance the Committee's leverage in ongoing negotiations with GM, the Debtors, and the Debtors' unions.  Neither the Bankruptcy Code, nor the precedent of this Circuit regarding the implied, limited right of statutory committees to assert causes of action belonging to the estates, provides any support for the Committee's position.  Because the Committee does not allege, much less demonstrate, that the Debtors have abused their discretion in not litigating the GM Claims and Defenses at this time, the Court need not consider any of the other <u>STN</u> factors, such as whether the claims are colorable, in denying the Motion.[3]

2.      Although the limited information contained in the Motion itself makes plain that it must be denied, the Debtors reserve their rights to present a full and final objection after completion of discovery and prior to the objection deadline, and to take discovery from the Committee regarding the bases for the relief requested in the Motion.

<u>Background</u>

3.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

---

[3] The Debtors scheduled unliquidated claims against GM as an asset of the estates, and reserved their rights to assert claims against GM, and they have been actively assessing claims and defenses against GM.  In evaluating the Committee's <u>STN</u> demand, after conducting a privileged assessment of the GM Claims and Defenses, the Board elected to assume that the claims in the Committee's demand were colorable, but to deny the demand based on its business judgment that asserting these claims at the present time would be detrimental to Delphi's prospects for transformation and reorganization.  In reaching this conclusion, the Board determined that it would not be in the best interests of the estates for the co-fiduciaries to be in the position of publicly evaluating the colorability of the various GM Claims and Defenses.  As discussed herein, where a debtor objects to <u>STN</u> standing for reasons other than the merits of the claims, the Court should first evaluate the debtor's business judgment in so doing.  This is particularly true here, where the statute of limitations for the Debtors to assert pre-petition causes of action does not run until October 2007 under § 546 of the Bankruptcy Code, and no causes of action are being waived by the Debtors' judgment not to assert these claims at this time.

3

The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

4. On October 17, 2005, the Office of the United States Trustee appointed the Committee. On April 28, 2006, the U.S. Trustee appointed an official committee of equity security holders (the "Equity Committee").

5. The statute of limitations for the Debtors to assert prepetition claims does not run until at least October 2007 under § 546 of the Bankruptcy Code, and no causes of action are being waived by the Debtors' judgment not to assert these claims at this time.

6. Moreover, since the commencement of these chapter 11 cases, the Debtors have been supportive of the Committee's efforts to perform due diligence on, evaluate, and respond to a broad range of issues affecting the Debtors, including those related to GM. By way of illustration, the Debtors began providing voluminous and comprehensive information regarding GM to the Committee shortly after the Committee's formation and have continued to cooperate throughout the chapter 11 cases. For example, on March 24, 2006, following discussions with the Debtors, the Committee filed under Rule 2004 a motion seeking to compel GM to produce documents so that the Committee could analyze the viability of certain claims against GM as well as potential claims that GM might assert against the Debtors (Docket No. 2961).[4] The Debtors did not oppose the motion, and agreed not to interfere with the Committee's discovery from GM, subject only to the Debtors' right to receive copies of the documents

---

[4] No similar relief was sought against the Debtors since the Debtors had been fully cooperating with the Committee on GM related matters.

4

produced.  The Court entered a stipulation between the Committee and GM allowing the Rule 2004 examination on April 11, 2006 (Docket No. 3201).

    7.  Further, on March 28, 2006, the Debtors filed a motion seeking authority to enter into a joint interest agreement (the "Joint Interest Agreement") (Docket No. 3000) with the Committee that would enable the Debtors to share certain confidential investigatory information with the Committee without losing any privilege or protection.  The Court entered an order approving the Joint Interest Agreement on April 18, 2006 (Docket No. 3279), and the agreement was executed on April 19, 2006.  The Debtors have produced voluminous investigatory documents to the Committee under the terms of the Joint Interest Agreement, including information relating to GM that was included therein.  The Committee acknowledges that substantially all of the non-public information contained in the draft complaint that is now attached to the Motion (the "Complaint") came from the Debtors.

    8.  At the same time, the Debtors have demonstrated that they will not hesitate to assert claims against GM that are necessary to the reorganization, and that the Debtors are effectively managing their estates, including their legal claims against third parties and against GM specifically.  For example, on March 31, 2006, the Debtors filed their pending motion under section 365 of the Bankruptcy Code to reject billions of dollars of unprofitable supply contracts with GM (Docket No. 3033).

    9.  Also on March 31, 2006, the Debtors filed their pending motion under sections 1113 and 1114 of the Bankruptcy Code to reject their collective bargaining agreements (Docket No. 3035), some of the obligations of which are guaranteed by GM.  GM's participation in Delphi's labor transformation is a strategic element of the reorganization.

10. On May 11, 2006, the Committee delivered the demand letter that is now attached to the Motion (the "Demand Letter") to Delphi's Board of Directors, and on May 17, 2006, the Committee delivered to the Board a copy of the Complaint.

11. Delphi's Board of Directors conducted a meeting on May 16, 2006 to review the Demand Letter and discuss possible courses of action related thereto. On May 17, 2006, the Debtors informed the Committee that the Board had reviewed the Demand Letter and had directed the Debtors and their professionals to review the allegations contained in the Demand Letter and Complaint. The Debtors also requested access to the Committee's research memoranda, non-public documents, and any other work product to assist the Debtors in evaluating the lengthy Complaint.

12. In response to the Debtors' request for information, on May 23, 2006, the Committee delivered an annotated version of the Complaint containing footnote citations to public and non-public documents. The Committee declined, however, to provide any related research or other work product. That same day, the Debtors responded by advising the Creditors' Committee that their decision not to provide research memoranda and other work product would delay the Debtors' analysis and therefore their ability to respond to the demand.

13. Representatives of the Debtors and Creditors' Committee subsequently met on June 1 and June 8, 2006 and discussed, among other things, the Demand Letter and Complaint. Delphi's Board again discussed the Demand Letter at a Board meeting on June 15, 2006.

14. The Debtors have also been working actively to carry out important aspects of their labor transformation, which have involved intense negotiations with GM. The Debtors, GM, and the Debtors' unions have negotiated certain "soft landing" attrition programs

for Delphi's unionized hourly work force (the "Attrition Programs").  At Delphi's invitation, the Committee reviewed and provided input into the specific provisions of the first Attrition Program agreement before it was filed with the Court.  The Committee also negotiated specific provisions of the first Attrition Program order, which was the model for the subsequent Attrition Program. Nonetheless, the Committee objected to both of the major Attrition Programs, arguing in essence that the consideration given to GM with respect to certain claims against the estate was inappropriate.  Over the Committee's objections, this Court approved each of the Attrition Programs, and the Committee did not appeal (Docket Nos. 3648, 3754 and 4461).

15. On June 27, 2006, in its objection to the second of the major Attrition Programs (Docket No. 4378), the Committee disclosed the existence of the Demand Letter, and, at the hearing on June 29, 2006, sought authority to assert only those limited "defenses and other claims that the [Debtors'] estates may have with respect to any claims that come back through the [Attrition Programs] . . . to the extent that the Debtors have agreed that they will not, themselves, assert them." June 29, 2006 Transcript at 76.  In this limited context, the Court stated that the Debtors and the Committee should first attempt to reach a stipulation regarding standing for the Committee to assert limited claims against GM arising from the Attrition Programs.  Id.

16. On July 12, 2006, the Committee proposed to the Debtors a joint stipulation (the "Joint Stipulation") which, the Committee admits, went remarkably beyond its limited request at the June 29, 2006 hearing.   Indeed, the Joint Stipulation and the current Motion go beyond even the Committee's demand to prosecute the claims and defenses set forth in the Committee's Demand Letter and Complaint by seeking authority to file and pursue all other actions, objections, and rights constituting property of the Debtors' estates arising from or related to the GM Claims and Defenses, including presently unknown claims.  (Motion ¶ 10 n.4)

7

17. Separately on July 12, 2006, the Debtors and their professionals convened a previously scheduled meeting in Troy, Michigan to discuss in detail their analysis of the Complaint to date. At the end of the meeting, the Debtors contacted the Committee and scheduled a meeting for the following week in New York among the Debtors' and the Committees' professionals to share their analyses and observations regarding the allegations in the Complaint. The meeting took place on July 18, 2006.

18. At a subsequent meeting in New York on July 20, 2006 among the Debtors' management and counsel and representatives of the Committee, the Committee's representatives asserted that if the Debtors did not enter into the Joint Stipulation, the Committee would file a motion on July 28, 2006 seeking the authority to assert and prosecute the estates' claims and defenses against GM.

19. On July 25, 2006, the Board met to consider the Demand Letter, the Complaint, and the proposed Joint Stipulation. After due deliberation, the Board decided, without dissent, that in its business judgment it would not be in the best interests of the Debtors' estates to enter into the Joint Stipulation, authorize the Committee to pursue the GM Claims and Defenses on the Debtors' behalf, or independently pursue any of the claims and defenses in the Complaint at this time. While not required to do so, members of Delphi's Board who served during the first year after the spin-off, or who had any employment relationship with the Debtors during that time, abstained from voting with respect to the demand so that there could be no question that the Board's determination was made by entirely disinterested directors.

20. On July 27, 2006, the Debtors informed the Committee of the Board's decision, and the reasons therefore, through various conversations between or among Delphi's

8

lead independent director, Delphi's Chief Restructuring Officer, the Committee's chairperson and counsel to the Debtors and the Committee.

21.    On July 28, 2006, the Committee filed the Motion, and filed the Demand Letter and the Complaint under seal pursuant to the July 27, 2006 order granting the Committee's ex parte motion (the "Ex Parte Motion") (Docket No. 4689) for permission to do so.

### Preliminary Objection

22.    In the Demand Letter, the Committee asserted that "there exist significant affirmative causes of action against [GM]," and "request[ed] that <u>prompt legal action be taken by Delphi</u> to pursue these claims."  (Demand Letter at 1 (emphasis supplied)).  The Committee further requested, if for any reason Delphi's Board did not agree promptly to pursue such claims, that "the Board consent to have the Committee assert these claims on Delphi's behalf." (<u>Id</u>. at 5.).

23.    After analyzing the legal and factual merits of the GM Claims and Defenses and their impact on the reorganization as a whole, on July 25, 2006, the Board determined, without dissent, that it is not in the best interests of the estates to assert these causes of action against GM <u>at this time</u>.  The Debtors notified the Committee that the Board had determined that bringing these claims now would prejudice the Debtors' transformation plan and be harmful to the reorganization, and that the Board reserved the right to assert some or all of the GM Claims and Defenses in the future prior to the expiration of the statutory tolling period in October 2007.

24.    In the Motion, the Committee disavows the basis for its prior demand for prompt legal action against GM, stating that "the purpose of the requested authority <u>is not actually to file the Complaint at this time</u>." (Motion ¶ 21 (emphasis supplied)).  This is because, as the Committee acknowledges, "making all of the allegations and claims asserted in the Complaint public could well have a damaging effect on the negotiations with GM" (Ex Parte

9

Motion ¶ 5), and because "[t]he Committee hopes the claims and defenses can be negotiated with GM and other parties without the instigation of litigation."  (Motion ¶ 23 n.9).

25.     Thus, the purpose of the Motion is not actually to pursue litigation that the Debtors have "unjustifiably" refused to pursue.  See <u>Unsecured Creditors' Comm. of Debtor STN Enters. v. Noyes</u> (In re STN Enters.), 779 F.2d 901, 904 (2d Cir. 1985) (holding that a creditors' committee can acquire standing to sue on behalf of a debtor's estate "only when the trustee or debtor in possession unjustifiably failed to bring suit").  The Committee admits that it does not believe that claims against GM should be litigated now, and has thereby conceded that the Debtors are not unjustified in rejecting the Committee's <u>STN</u> demand to litigate these claims <u>at the present time</u>.  Second Circuit case law does not support, and this Court should not countenance, the Committee's request for discretionary authority to pursue <u>in the future</u> claims that the Committee concedes the Debtors are correct in not pursuing <u>today</u>.

26.     Rather, the Committee offers a wholly different stated purpose for the Motion – to give the Committee a seat at the negotiating table with GM.  (Motion ¶ 21).  But there is no "seat at the table" justification for committee standing under <u>STN</u>.  The Committee has not come forward with any case in this Circuit, and the Debtors are aware of none, in which a court has granted a statutory committee, over the objection of a chapter 11 debtor-in-possession, roving authority to usurp from the debtor causes of action that the Committee does not even have any present intention to pursue.  To do so would be wholly inconsistent with the Bankruptcy Code.

27.     Noting "[t]he numerous provisions of the Bankruptcy Code establishing the debtor's authority to manage the estate and its legal claims," the Second Circuit has explained that Congress "desire[d] to leave administration of the chapter 11 estate solely in the hands of the

debtor-in-possession." Smart World Techs. v. Juno Online Svcs. (In re Smart World Techs.), 423 F.3d 166, 174 (2d Cir. 2005). "In making the debtor-in-possession accountable for the estate's legal claims, Congress vested the debtor with the responsibility to determine how best to handle those claims." Id. at 175. This is "implicit in the debtor's role as the estate's only fiduciary." Id.

28. As the Committee correctly notes, the Bankruptcy Code provides authority for the Committee to investigate a broad range of matters relevant to the case, and to be heard on any issue. (Motion ¶ 25). The Committee does not contend that the Debtors are denying it information; indeed, the Committee concedes that most of the allegations in the Complaint came from information the Debtors provided to the Committee. Moreover, the Committee acknowledges in the Motion that it receives "[u]pdates, briefings and reports from the Debtors on their discussions with GM," and "that the Debtors have committed to consult with the Committee on any global deal with GM." (Motion ¶¶ 12, 20) Furthermore, the Debtors have supported and facilitated bilateral discussions directly between the Committee and GM, which have occurred on numerous occasions over the last number of months. Nevertheless, the Committee now demands through the Motion that the Committee alone be invested with (and the Debtors completely stripped of) a power that Congress gave to the Debtors in the Bankruptcy Code – the power to "manage the estate and its legal claims," including "to determine how best to manage those claims." In re Smart World at 174-75.

29. Displacing the debtor-in-possession, and substituting a creditors' committee to exercise the debtor's statutory discretion to manage claims of the estate, is an extraordinary measure. The Second Circuit has recognized that creditors' committees have an "implied, but qualified, right . . . to initiate adversary proceedings in the name of the debtor in

11

possession" . . . "with the approval of the bankruptcy court." In re STN, 779 F.2d at 904.  In the absence of consent by the debtor-in-possession, however, a committee can gain standing only if the court finds that the debtor-in-possession "unjustifiably failed" to bring the suit itself.  Id. (emphasis supplied).  As the Second Circuit recently explained, "STN thus makes clear that derivative standing in the bankruptcy context is analogous to derivative standing in shareholder suits; it arises when the debtor unjustifiably refuses to pursue a cause of action." In re Smart World, 423 F.3d at 176.

30. In support of the Motion, the Committee does not even allege that the Debtors have unjustifiably refused to pursue causes of action against GM.  Indeed, as discussed above, the Committee admits that it would be harmful to the estates to bring these causes of action at this time – ratifying the very business judgment that Delphi's Board itself reached.

31. Here, the Committee wants the authority to pursue the Debtors' claims and defenses against GM not actually to pursue them, but instead to take control of them from the Debtors as a bargaining chip – purportedly to "gain a seat at the table" in negotiations.

32. Even if the Court were to overlook the fact that the Committee itself does not wish to assert these claims at this time, the Committee relies on an overly simplistic analysis to support its extraordinary request.  The Committee suggests that because its claims would likely survive a motion to dismiss, and because the likely recovery would eclipse the likely litigation expenses, STN is satisfied.  That analysis, however, does not meet the circumstances of this case.

33. As former Chief Judge Brozman recognized, before even reaching a litigation cost/benefit analysis, "where the debtor actively opposes the creditors' committee's request to sue, the court must look at whether . . . there is a substantial reason why interposition

of the proposed suit would be harmful to the estate." America's Hobby Ctr., Inc. v. Official Comm. of Unsecured Creditors of America's Hobby Ctr., Inc. (In re America's Hobby Ctr., Inc.), 223 B.R. 275, 283 (Bankr. S.D.N.Y. 1998). Similarly, Judge Gonzalez rejected a creditors' committee's argument that a debtor's mere refusal to assert colorable claims provided the committee with STN standing. Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.), 284 B.R. 355, 374 (Bankr. S.D.N.Y. 2002) (noting that "a finding that allowing a committee to pursue a debtor's claim would be necessary and beneficial to the resolution of the bankruptcy proceeding is required in all instances").

34. Here, the Debtors' objection is not the ratio of litigation expenses to expected recovery, but rather the Debtors' conclusion that litigating these claims against GM at the present time is not the best strategy for maximizing the value of the estates. And, as noted above, the Committee itself concedes this point in an admission that must be fatal to the Motion.

<u>Conclusion</u>

        WHEREFORE, for the reasons set forth above, and reserving their right to submit a supplemental objection prior to the objection deadline, the Debtors respectfully request that this Court enter an order (a) denying the Motion and (b) granting such other and further relief as is just.

Dated: New York, New York
August 4, 2006

                SKADDEN, ARPS, SLATE, MEAGHER
                   & FLOM LLP

                By:   /s/ John Wm. Butler, Jr.
                     John Wm. Butler, Jr. (JB 4711)
                     Albert L Hogan III (AH 8807)
                     John K. Lyons (JL 4951)
                     Ron E. Meisler (RM 3026)
                333 West Wacker Drive, Suite 2100
                Chicago, Illinois  60606
                (312) 407-0700

                - and -

                By:   /s/ Kayalyn A. Marafioti
                     Kayalyn A. Marafioti (KM 9632)
                     Thomas J. Matz (TM 5986)
                Four Times Square
                New York, New York  10036
                (212) 735-3000

                Attorneys for Delphi Corporation, <u>et al.</u>,
                  Debtors and Debtors-in-Possession