**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Email:  robert.rosenberg@lw.com
    mitchell.seider@lw.com
    mark.broude@lw.com
    michael.riela@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481(RDD) |
| | ) | |
| Debtors. | ) ) | Jointly Administered |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE REQUEST BY CR INTRINSIC INVESTORS, LLC AND HIGHLAND CAPITAL MANAGEMENT, L.P. FOR THE APPOINTMENT OF AN EXAMINER**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation, *et al.* (collectively, the "Debtors"), by and through its counsel, hereby files this Objection to the request by CR Intrinsic Investors, LLC and Highland Capital Management, L.P. (together, the "Noteholders") for the appointment of an examiner in connection with the *Debtors' Motion for an Order Authorizing Amendment to Arrangement With General Motors Corporation Approved Pursuant To Second DIP Extension Order*.  In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  This Court is not required to appoint an examiner in these chapter 11 cases under section 1104(c) of title 11 of the United States Code (the "Bankruptcy Code"), because a plan of reorganization has already been confirmed by this Court. The Noteholders try their best to dance around this reality by making arguments that are not supported by the terms of the statute or by any caselaw. Ultimately, nothing *requires* the appointment of an examiner at this time.

2.  While this Court has the discretion to appoint an examiner at this time notwithstanding section 1104(c), it should not exercise that discretion here. The downside to appointing an examiner at this stage vastly outweighs the upside. An examiner would simply distract all parties from dealing with the important matters at hand in these cases. Indeed, the current focus of these cases is the Debtors' motion to approve an amendment to the Global Settlement Agreement ("GSA") and a Master Restructuring Agreement (the "MRA") with General Motors Corporation ("GM") and the Committee's objection thereto. Quite simply, because the Debtors seek in that motion to grant GM an administrative expense claim measured in the billions of dollars and a general release, the determination of what recoveries general unsecured creditors might receive in these cases will hinge on the outcome of that motion, regardless of whether or not an examiner is appointed. An examiner is therefore likely only to cause delay and increase expenses without providing any benefit to the Debtors or their creditors.

**BACKGROUND**

3.  On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 14, 2005, the three remaining Debtors also filed voluntary petitions.

4.     The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker. On September 3, 2008, the Committee filed an application to retain Moelis & Company LLC as its co-investment banker, along with Jefferies & Company, Inc.

5.     On January 5, 2007, this Court authorized the Debtors to enter into the current post-petition financing facility (the "DIP Facility") pursuant to the *Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed. R. Bankr. P. 2002, 4001 and 6004(g) (I) Authorizing Debtors to Obtain Post-Petition Financing And (II) Authorizing Debtors to Refinance Secured Post-Petition Financing and Prepetition Secured Debt*.

6.     On January 25, 2008, this Court entered an order confirming the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Plan"). The Plan has not become effective, because the plan investors have purported to terminate the Equity Purchase and Commitment Agreement that was a fundamental basis of the Plan. A central component of the Plan was that the GSA and MRA would rationalize the Debtors' business relationship with GM and put the Debtors on a path towards profitability. Since the Plan has yet to be consummated, the GSA and MRA have not yet been implemented.

---

[1] The current members of the Committee are: (a) Capital Research and Management Company; (b) Freescale Semiconductor, Inc.; (c) IUE-CWA; (d) Wilmington Trust Company, as Indenture Trustee and (e) Tyco Electronics Corporation. The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

NY\1450427.6

7. On April 30, 2008, this Court entered an order authorizing the Debtors to enter into an amendment and restatement of their debtor-in-possession credit agreement, and authorizing the Debtors to receive advances of up to $650,000,000 from GM pursuant to a liquidity support agreement between Delphi and GM (the "Original Delphi/GM Agreement"). The Original Delphi/GM Agreement was structured to provide a means by which GM would advance amounts already paid by the Debtors, for which the Debtors would have received reimbursement had the GSA and MRA become effective. Through the Original Delphi/GM Agreement, the Debtors intended to maintain a minimum of $500 million in "Available Funds" (as defined in the Original Delphi/GM Agreement), consistent with the terms of their debtor-in-possession credit agreement.

8. Under a proposed amended liquidity support agreement between Delphi and GM (the "Amended Delphi/GM Agreement"), GM would increase the aggregate principal amount available (via the Tranche B loans described therein) by a maximum of $300 million, as necessary for the Debtors to maintain a minimum of $300 million in "Available Funds." The hearing to consider the Debtors' motion to enter into the Amended Delphi/GM Agreement currently is scheduled for September 23, 2008.

9. On August 20, 2008, the Noteholders filed an objection to the Debtors' motion to enter into the Amended Delphi/GM Agreement. In their objection, the Noteholders requested the appointment of an examiner (a) to investigate the facts and circumstances behind the negotiation and documentation of the Original Delphi/GM Agreement and the Amended Delphi/GM Agreement and (b) to determine how the Original Delphi/GM Agreement and the Amended Delphi/GM Agreement would impact the different Debtor estates, and whether they will benefit certain Debtor estates to the detriment of others.

**OBJECTION**

**I.      Section 1104(c) of the Bankruptcy Code Does Not Require
         Appointment of an Examiner After the Confirmation of a Plan of Reorganization**

10.     Section 1104(c) of the Bankruptcy Code provides, in relevant part, as follows:

"If the court does not order the appointment of a trustee under this section, then ***at any time before the confirmation of a plan***, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate . . . if –

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debtors, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."

11 U.S.C. § 1104(c) (emphasis added).

11.     Section 1104(c) of the Bankruptcy Code requires appointment of an examiner in certain circumstances *before a plan of reorganization has been confirmed*. After confirmation of a plan, however, section 1104(c) of the Bankruptcy Code does not require this Court to appoint an examiner.

12.     The Noteholders argue that the temporal clause in section 1104(c) of the Bankruptcy Code should be disregarded because the Plan is incapable of becoming effective. While this may be a clever argument, the Noteholders cite no caselaw in support of their argument, and the statute says nothing about confirmed plans that do not become effective.[2]

13.     The Noteholders also argue that the temporal clause in section 1104(c) of the Bankruptcy Code should be disregarded because it would produce a result that the Noteholders deem "absurd." They argue that Congress' rationale for limiting the mandatory appointment of

---

[2] Indeed, the one bankruptcy court order appointing an examiner that the Noteholders cite was entered *before* the debtors' plan was confirmed. *See In re Enron Corp.*, No. 01-16034, Docket No. 1605.

5

an examiner to the pre-confirmation period is inapposite here. However, it is not this Court's duty to second-guess Congress. Section 1104(c) is unambiguous and certainly in the present case does not lead to an absurd result.[3]

## II.    An Examiner Should Not Be Appointed Here

14.    This Court should not exercise its discretion to appoint an examiner here for at least two reasons. First, the focus of this case currently is on the Debtors' motion to approve amendments to the GSA and MRA with GM, and the Committee's objection thereto. If that motion is granted, GM would receive an administrative expense claim measured in the billions of dollars, as well as a general release from the Debtors' estates. This would greatly impair unsecured creditors' recoveries under any plan of reorganization, regardless of whether an examiner is appointed.

15.    Second, the appointment of an examiner would cause indefinite delay in the ultimate resolution of these cases and force the Debtors' estates to bear needless and significant expenses, which costs would be borne by the Debtors' unsecured creditors. As noted above, the unsecured creditors' recovery will be determined in large part by the outcome of the Debtors' motion to amend the GSA and MRA, so these additional costs would be nothing but a waste of money. In light of this, the Court should refrain from appointing an examiner, so that the assets of the estates can be conserved.

---

[3]    The Noteholders also fail to cite authority in support of their assertion that section 1104(c) of the Bankruptcy Code produces an absurd result. Rather, the Noteholders simply cite two Supreme Court cases that have nothing to do with section 1104(c).

**WHEREFORE,** the Committee respectfully requests that this Court (a) deny the Noteholders' request for the appointment of an examiner, and (b) grant the Committee such relief that it deems just and proper.

Dated: September 16, 2008
      New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
    Robert J. Rosenberg (RR-9585)
    Mitchell A. Seider (MS-4321)
    Mark A. Broude (MB-1902)
    Michael J. Riela (MR-7829)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone: (212) 906-1200

    Counsel for the Official Committee
    of Unsecured Creditors