Hearing Date & Time: September 23, 2008 at 10:00 a.m. (prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Albert L. Hogan
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :
     In re                                :       Chapter 11
                                         :
DELPHI CORPORATION, et al.,   :       Case No. 05-44481 (RDD)
                                       :
                                       :       (Jointly Administered)
           Debtors.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTION TO RENEWED MOTION FOR ORDER
AUTHORIZING OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO PROSECUTE
DEBTORS' CLAIMS AND DEFENSES AGAINST GENERAL MOTORS CORPORATION

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the Renewed Motion for an Order Authorizing the Official Committee of Unsecured Creditors to Prosecute the Debtors' Claims and Defenses Against General Motors Corporation (the "Renewed STN Motion") (Docket No. 14167). This objection supersedes the Debtors' preliminary objection to the Renewed STN Motion filed September 14, 2008 (Docket No. 14172). In support of this Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1. If this Court grants the Debtors' Expedited Motion For Order Authorizing Debtors To Implement Amended And Restated Global Settlement Agreement And Master Restructuring Agreement With General Motors Corporation (the "GSA and MRA Amendment Motion") (Docket No. 14164), the Renewed STN Motion will be moot. In exchange for the consideration contained in the amended Global Settlement Agreement (the "Amended GSA") and the Amended Master Restructuring Agreement (the "Amended MRA"), the Debtors and GM are releasing their litigation claims against each other. Because the GSA and MRA Amendment Motion logically precedes the Renewed STN Motion, and the parties have agreed that the GSA and MRA Approval Motion should proceed first, the Court need not consider this motion at all if the Court grants the GSA and MRA Amendment Motion.

2. Even if the Court does not grant the GSA and MRA Amendment Motion, however, the Court should deny the Renewed STN Motion and allow the Debtors to remain in control of settlement negotiations with GM. The official committee of unsecured creditors (the "Creditors' Committee") concedes that the Debtors' claims against General Motors Corporation

2

("GM") are most appropriately resolved "through consensual negotiation" (Renewed STN Motion ¶ 19) rather than litigation.  Thus, the Creditors' Committee requests only the "discretion" to prosecute the Debtors' claims (id. ¶¶ 6, 19, 21) to increase the Creditors' Committee's leverage to negotiate with GM.  Nowhere in the Creditors' Committee's Renewed STN Motion, however, does the Creditors' Committee contend that actually prosecuting claims against GM to judgment would result in value to the Debtors' estates that is superior to the value obtained through a negotiated resolution.  Instead, in an admission that must be fatal to its motion, the Creditors' Committee concedes that settlement with GM provides the "most viable path out of chapter 11." (Id. ¶ 16 (emphasis added).)

    3. The relief the Creditors' Committee seeks is not available under the law in these circumstances.  Unsecured Creditors Committee of Debtor STN Enterprises v. Noyes (In re STN Enterprises), 779 F.2d 901 (2d Cir. 1985), and its progeny do not confer upon the Creditors' Committee an implied right to control settlement negotiations.  Instead, the extraordinary relief the Creditors' Committee seeks is available only if a debtor unjustifiably fails to pursue claims that will add value to the estate.  Given all of the facts and circumstances in these cases, the Debtors' approach in diligently asserting and preserving the estates' claims against GM while at the same time negotiating with GM to reach a fair settlement is more than justified.  The Court should deny the Creditors' Committee's transparent request to substitute the Creditors' Committee's settlement "discretion" for that of the Debtors.

Background

    4. Since the outset of these chapter 11 cases, the Debtors recognized that they have certain potential causes of action against GM, and the Debtors identified those causes of action on the financial schedules they filed with the Court.  In addition, on March 31, 2006, the Debtors filed a motion to reject billions of dollars of unprofitable supply contracts with GM

3

(Docket No. 3033) and a motion to reject the Debtors' collective bargaining agreements (Docket No. 3035), some of the obligations of which are guaranteed by GM. In the summer of 2006, the Debtors entered into extensive negotiations with GM and the Debtors' labor unions in an effort to build support for a consensual plan of reorganization. Although the Creditors' Committee was informed and involved in this process, it apparently became unsatisfied with its level of control and involvement in these negotiations.

5.  Accordingly, on July 28, 2006, the Creditors' Committee filed a motion requesting that the Court allow the Creditors' Committee to prosecute the Debtors' claims against GM pursuant to the qualified right recognized in In re STN Enterprises, 779 F.2d 901 (the "STN Motion") (Docket No. 4718). The Creditors' Committee sought the authority to pursue the Debtors' claims even though the Creditors' Committee conceded that negotiating a settlement with GM was preferable to litigation. (STN Motion ¶ 21.) Indeed, the Creditors' Committee admitted that, if granted the requested authority, it did not intend to immediately initiate suit. (Id.) Rather, the Creditors' Committee planned to leverage such authority in order to gain "a seat at the table in negotiations" between the Debtors and GM. (Id.)

6.  On August 4, 2006, the Debtors filed a preliminary objection to the original STN Motion (the "Original Objection") (Docket No. 4859).[1] The official committee of equity security holders (the "Equity Committee") also objected to the STN Motion (Docket No. 5070). The hearing on the STN Motion was adjourned from time to time while the Debtors, GM, the Equity Committee, and the Creditors' Committee engaged in negotiations with respect to the Debtors' plan of reorganization.

---

[1] The Debtors incorporate by reference their Original Objection, which is attached hereto as Exhibit A.

4

7. On September 6, 2007, the Debtors filed the Joint Plan of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In Possession (Docket No. 9263), and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 9264). The plan of reorganization included a settlement between the Debtors and GM embodied in the Global Settlement Agreement ("GSA") and Master Restructuring Agreement ("MRA"). At GM's insistence, most obligations set forth in the GSA and MRA were conditioned upon Delphi's emergence from chapter 11.

8. On October 5, 2007, the Debtors, GM, the Equity Committee, and the Creditors' Committee entered into the Stipulation And Consent Order Addressing Estate Litigation Against General Motors (the "Stipulation") (Docket No. 10480). The Stipulation suspended proceedings in connection with the STN Motion and tolled all applicable statutes of limitation and other time-based defenses concerning any of the Debtors' claims against GM and any of GM's claims against the Debtors. Also on October 5, 2007, the Debtors filed under seal a complaint against GM (the "Complaint"), as authorized by the Preservation of Estate Claims and Procedures Order (Docket No. 9105) and the Stipulation. The Complaint preserved the Debtors' claims against GM in the event that the Debtors were unable to consummate the GSA and the MRA.

9. On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386), and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388) (the "Disclosure Statement"). The Disclosure Statement described the Debtors' investigation into and evaluation of their claims and defenses against GM as well as the

views of the statutory committees with respect to such claims and defenses. (DS at 54-61.) The Disclosure Statement also described the Debtors' business judgment that the consensual settlement with GM embodied in the plan of reorganization was clearly superior to any litigation alternative. (Id. at 61.) The Court entered an order approving the adequacy of the Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389).

10. On January 25, 2008, the Court entered an order (the "Confirmation Order") confirming the plan filed on December 10, 2007 (as modified) (the "Plan") (Docket No. 12359). In the Confirmation Order, the Court also approved the GSA (the "Approved GSA") and the MRA (the "Approved MRA") included within the Plan under Bankruptcy Rule 9019, finding that the proposed recoveries were the result of "good faith negotiations and arm's-length bargaining between the parties" and that such recoveries were "higher than reasonably foreseeable litigation outcomes." (Confirmation Order Section QQ, pp. 22-23.) The Confirmation Order became final on February 4, 2008.

11. On April 4, 2008, the Debtors announced that although they had met the conditions required to substantially consummate the Plan, Delphi's Plan Investors (as defined in the Plan) refused to participate in a closing that was commenced but not completed and refused to fund their Investment Agreement (as defined in the Plan) with Delphi. The events of April 4 prevented the Debtors from consummating the Approved GSA and the Approved MRA. Nonetheless, since that time, the Debtors diligently have continued to negotiate with GM regarding amendments to the Approved GSA and Approved MRA that should permit Delphi to pursue a reaffirmed emergence business plan and propose modifications to the Plan that should allow the Debtors to emerge from chapter 11 as soon as reasonably practicable.

12. Delphi finished its reaffirmed business planning process in late August 2008 and completed discussions concerning amendments to the Approved GSA and Approved MRA as soon as practicable thereafter. The results of this process are the Amended GSA and Amended MRA, which are before this Court in connection with the Debtors' expedited GSA and MRA Amendment Motion. In the aggregate, through the Amended GSA and Amended MRA, GM is increasing its estimated net contribution to Delphi's transformation by approximately $4.6 billion. Nevertheless, the Creditors' Committee is dissatisfied with the terms of the Amended GSA and Amended MRA. Because the Creditors' Committee admits that a settlement with GM is the preferred outcome of these cases – and, indeed, previously stipulated to suspend its STN Motion in favor of settlement – the Renewed STN Motion is plainly designed to achieve nothing other than to wrest settlement authority from the Debtors in the event that the Court denies the GSA and MRA Amendment Motion.

## Objection

13. Displacing the debtor-in-possession and substituting a creditors' committee to exercise the debtor's statutory discretion to manage claims of an estate is an extraordinary measure. The Second Circuit has recognized that creditors' committees have an "implied, but qualified, right . . . to initiate adversary proceedings in the name of the debtor in possession . . . with the approval of the bankruptcy court." In re STN Enters., 779 F.2d at 904. In the absence of consent by the debtor-in-possession, however, a committee can gain standing only if the court finds that the debtor-in-possession "unjustifiably failed" to bring the suit itself. Id. As the Second Circuit recently explained, "STN thus makes clear that derivative standing in the bankruptcy context is analogous to derivative standing in shareholder suits; it arises when the debtor unjustifiably refuses to pursue a cause of action." Smart World Techs. v. Juno Online Servs. (In re Smart World Techs.), 423 F.3d 166, 176 (2d Cir. 2005).

7

14. A debtor-in-possession is obligated to pursue only those actions "that are in the best interests of the creditors and the estate." See Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 99 (2d Cir. 2001). Accordingly, to conclude that a debtor unjustifiably failed to litigate a cause of action, the court first must determine that institution of the action is "necessary and beneficial to the estate." Official Comm. of Unsecured Creditors of Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.), 284 B.R. 355, 374 (Bankr. S.D.N.Y. 2002) (finding that committee's pursuit of claims was not in best interests of estate where committee would have to overcome significant defenses and litigation would otherwise delay debtor's reorganization). In conducting this inquiry, the court "must evaluate, at the least, whether the prosecution of the claims is consistent with the maximization of the value of the estate." Adelphia Communications Corp. v. Bank of Am., N.A. (In re Adelphia Communications Corp.), 330 B.R. 364, 375 (Bankr. S.D.N.Y. 2005). Furthermore, the court should consider:

> whether the deputization of the committee would permit the debtor to concentrate its resources on rehabilitating its business; whether the committee's interests do not conflict with those of the estate; and whether the assignment would prejudice the equality of distribution amongst the debtor's creditors.

Id. The court also may be guided by "other common sense factors" as dictated by the circumstances of a particular case. Id.

15. First, on the facts here, there is no evidence that the Debtors failed to pursue their claims against GM, much less that the Debtors unjustifiably refused to do so. As explained above, even after the Debtors had reached the original GM settlement embodied in the Approved GSA and Approved MRA, the Debtors entered into a tolling agreement to preserve the estates' claims against GM and also filed a sealed Complaint against GM to insure that the claims

8

were timely asserted under the Bankruptcy Code. The Debtors' Complaint against GM remains pending.

16. Following the events of April 4, 2008, rather than actively prosecuting the Complaint, the Debtors determined that renegotiation of the terms of the Approved GSA and Approved MRA would provide the most value to the Debtors' estates. Although the Creditors' Committee may dislike the settlements embodied in those agreements, that does not provide a basis for the Creditors' Committee to usurp the Debtors' authority with respect to their claims against GM. See Official Comm. of Equity Sec. Holders of Solutia, Inc. v. Monsanto Co. (In re Solutia, Inc.), No. 03-17949 (PCB), 2006 WL 2640641, at *1 (Bankr. S.D.N.Y. Sept. 14, 2006) (finding that committee's dislike of settlement result was insufficient to confer standing on committee to pursue debtor's claim).

17. Moreover, the Creditors' Committee does not point to any facts suggesting that the Debtors are unjustified in proposing a settlement with GM. Indeed, the Creditors' Committee admits that "[t]he Debtors' most viable path out of chapter 11 has been (and still is) through a negotiated arrangement with GM." (Renewed STN Mot. ¶ 16 (emphases added).) This is because reaching a consensual settlement with GM undeniably maximizes the value of the Debtors' estates. As explained in the Debtors' GSA and MRA Amendment Motion, through the Amended GSA and Amended MRA, GM's net contributions to Delphi's transformation would increase by approximately $4.6 billion, from approximately $6.0 billion to $10.6 billion. In the context of the Plan, this Court concluded that such recoveries were "higher than reasonably foreseeable litigation outcomes" (Confirmation Order Section QQ, pp. 22-23), and the Creditors' Committee advances no reason why a different conclusion is warranted now, in light of the current circumstances of these cases. Cf. AppliedTheory Corp. v. Halifax Fund, L.P.

9

(In re AppliedTheory Corp.), 493 F.2d 82, 86 (2d Cir. 2007) (finding that committee provided no reason to disturb bankruptcy court's conclusion that litigation was unlikely to benefit estate). Moreover, the Amended GSA and Amended MRA enable the Debtors to avoid a scenario that could lead to potentially massive claims being asserted against Delphi by the Pension Benefit Guaranty Corporation, the Internal Revenue Service, and GM, and/or the requirement of making cash contributions to Delphi's pension plans upon emergence.  Finally, the support GM is providing for Delphi's business plan through the settlement is a necessary predicate to establishing a realistic stand-alone business plan, which is in turn a necessary predicate to entering the capital markets, without which there likely can be no meaningful recovery to stakeholders.

        18.     In short, there is no merit to the Creditors' Committee's contention that the Debtors unjustifiably failed to pursue the claims against GM.  This is betrayed by the obvious purpose of the Renewed STN Motion, which, as with the original STN Motion, does not seek authority to actually to pursue litigation that the Debtors have "unjustifiably" refused to pursue. See In re STN Enters., 779 F.2d at 904 (holding that creditors' committee can acquire standing to sue on behalf of debtor's estate "only when the trustee or debtor in possession unjustifiably failed to bring suit").  Rather, the transparent impetus for the Renewed STN Motion is to allow the Creditors' Committee, rather than the Debtors, to determine how to use the GM claims in negotiations with GM.  But STN confers limited standing only to litigate claims the Debtors have failed to bring.  The Creditors' Committee has not cited any case in this Circuit that expands the STN doctrine in this manner.

        19.     Noting "[t]he numerous provisions of the Bankruptcy Code establishing the debtor's authority to manage the estate and its legal claims," the Second Circuit has explained

10

that Congress "desire[d] to leave administration of the chapter 11 estate solely in the hands of the debtor-in-possession." In re Smart World Techs., 423 F.3d at 174 (commenting that it "is hardly surprising" that Rule 9019 gives authority to settle or compromise solely to the debtor-in-possession). "In making the debtor-in-possession accountable for the estate's legal claims, Congress vested the debtor with the responsibility to determine how best to handle those claims." Id. at 175. This is "implicit in the debtor's role as the estate's only fiduciary." Id. Accordingly, the party seeking to displace a debtor's settlement authority faces an even greater burden than the party seeking to actively litigate on behalf of a debtor. Cf. id. at 177 (finding that creditors lacked authority to settle cause of action over debtor's objection). The Creditors' Committee has not met its burden here.

20. Even if the Court were to overlook the Creditors' Committee's failure to show that the Debtors "unjustifiably failed" to pursue the GM claims, the Renewed STN Motion must be denied because the Creditors' Committee relies on an overly simplistic analysis to support its extraordinary request. The Committee suggests that because its claims would likely survive a motion to dismiss, and because the likely recovery would eclipse the likely litigation expenses, STN is satisfied. That analysis, however, does not meet the circumstances of this case.

21. As former Chief Judge Brozman recognized, before even reaching a litigation cost/benefit analysis, "where the debtor actively opposes the creditors' committee's request to sue, the court must look at whether . . . there is a substantial reason why interposition of the proposed suit would be harmful to the estate." America's Hobby Ctr., Inc. v. Official Comm. of Unsecured Creditors of America's Hobby Ctr., Inc. (In re America's Hobby Ctr., Inc.), 223 B.R. 275, 283 (Bankr. S.D.N.Y. 1998). Similarly, Judge Gonzalez rejected a creditors' committee's argument that a debtor's mere refusal to assert colorable claims provided the

committee with <u>STN</u> standing.  <u>In re Sunbeam Corp.</u>, 284 B.R. at 374 (noting that "a finding that allowing a committee to pursue a debtor's claim would be necessary and beneficial to the resolution of the bankruptcy proceeding is required in all instances").

      22.     Here, active prosecution of litigation against GM – by the Debtors or the Creditors' Committee – could imperil the Debtors' reorganization.  Indeed, proceeding in a manner adversarial to GM is, without question, utterly antithetical to GM's substantial consensual support of the Debtors' transformation efforts.  Without GM's support, the Debtors likely will be unable to establish a realistic stand-alone business plan or access the capital markets, jeopardizing, rather than rejuvenating, the Debtors' continued business operations.  In such circumstances, it is clear that litigation of the Debtors' claims is not beneficial to the estates.  Accordingly, deputization of the Creditors' Committee to pursue such claims "in its discretion" is wholly inappropriate.  <u>Cf.</u> <u>In re Adelphia Communications Corp.</u>, 330 B.R. at 375 (explaining that granting committee authority to prosecute debtor's claims may be appropriate where it would allow debtor to "concentrate its resources on rehabilitating its business").

      23.     Moreover, the prospects for success in litigation against GM are not free from doubt.  Although the Debtors concluded that some of the GM claims are colorable, the Debtors further concluded that GM also may have substantial complete or partial defenses to those claims.  Thus, any potential economic recovery to the Debtors from the GM claims carries with it a risk of significant uncertainty.  Additionally, litigation against GM would likely take years to resolve, consume millions of dollars of estate assets in fees and expenses, and would severely damage the Debtors' transformation plan.  For all practical purposes, the Debtors' reorganization would "be a hostage to the determination of [the] litigation" against GM.  <u>In re Adelphia Communications Corp.</u>, 330 B.R. at 385 (considering "whether prosecution of the

12

litigation would impede the Debtors' reorganization or assist it" in determining whether to authorize committee standing). This is why the Creditors' Committee admits that a consensual resolution with GM provides the "<u>most viable</u> path" to emergence (Renewed STN Mot. ¶ 16 (emphasis added)).

24.     The Creditor's Committee is using its Renewed STN Motion as a bargaining chip to object to the substance of the settlement agreement that the Debtors' negotiated. Such objections would be most appropriately addressed during the hearing on the Debtors' GSA and MRA Amendment Motion. In any event, there is no basis for the contention that the Debtors have abdicated their fiduciary duties in reaching the proposed settlement.

25.     The Creditors' Committee's accusations of dilatoriness on the part of the Debtors are similarly unfounded. The Creditors' Committee alleges that the Debtors "unjustifiably delayed" creating a reaffirmed business plan and allowed GM to "[run] out the clock" on the settlement negotiations. (Renewed STN Mot. ¶ 2.) To the contrary, the Debtors have worked diligently to develop a path toward emergence from chapter 11 protection on a standalone basis. For the last five months between April 4 and September 12, 2008, Delphi and GM have been engaged in near-continuous negotiations regarding potential economic support to facilitate the Debtors' emergence from chapter 11 and for Delphi's reaffirmed business plan. Even as Delphi strived to complete its reaffirmed business plan, however, Delphi continually had to reassess that plan in light of various events, including downward volume forecasts for the North American auto market and GM's announcement of a restructuring and the use of lower volumes estimates for planning purposes. Throughout this period, the Debtors also carefully considered all strategic alternatives and also weighed the costs and benefits of instituting countermeasures against GM. During this process, the Debtors consistently concluded, just as

13

the Creditors' Committee has concluded, that reaching a consensual resolution with GM is the "<u>most viable</u> path out of chapter 11" (Renewed STN Mot. ¶ 16 (emphasis supplied)).

26.     Indeed, it is the Debtors' business judgment that no strategic alternative other than an agreed settlement with GM is likely to produce a meaningful stakeholder recovery in these cases.  Because the Creditors' Committee has ratified that business judgment, and because the Creditors' Committee fails to make the showing required to gain authority to otherwise pursue the Debtors' claims against GM, the Renewed STN Motion must be denied.

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court enter an order (a) denying the Renewed STN Motion and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
September 19, 2008

                                          SKADDEN, ARPS, SLATE, MEAGHER
                                             & FLOM LLP

By: /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr.
     Albert L Hogan III
     John K. Lyons
     Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti
     Thomas J. Matz
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

15