Bonnie Steingart
Jennifer Rodburg
Richard Slivinski
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Delphi Corporation, et al., | : | Case No.  05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**STATEMENT OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS WITH RESPECT TO THE DEBTORS' EXPEDITED MOTION FOR ORDER AUTHORIZING DEBTORS TO IMPLEMENT AMENDED AND RESTATED GLOBAL SETTLEMENT AGREEMENT AND MASTER RESTRUCTURING AGREEMENT WITH GENERAL MOTORS CORPORATION**

TO:    THE HONORABLE JUDGE ROBERT D. DRAIN
        UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Equity Security Holders (the "Equity Committee") of Delphi Corporation and the other above-captioned debtors (collectively, the "Debtors") by and through its counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, files this statement (the "Statement") in connection with the Debtors' Expedited Motion For Order Authorizing Debtors To Implement Amended And Restated Global Settlement Agreement And Master Restructuring Agreement with General Motors Corporation [Docket No. 14164] (the "Motion"), and respectfully states as

follows:

## BACKGROUND

1.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

2.      No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed the Equity Committee.

3.      On September 6, 2007, the Debtors filed the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession [Docket No. 9263], and the Disclosure Statement With Respect To Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession [Docket No. 9264]. The Debtors and General Motors Corporation ("GM") also entered into the Delphi-GM Global Settlement Agreement (the "GSA") and the Delphi-GM Master Restructuring Agreement (the "MRA"), which were both filed as exhibits to the Debtors' chapter 11 plan.  In general, the GSA and MRA together set forth the terms of a global settlement between the Debtors and GM of the claims by and against the two parties and their business relationship going forward.

4.      On December 10, 2007, the Debtors filed revised versions of the GSA (the "Approved GSA") and the MRA (the "Approved MRA") with their First Amended Joint Plan

2

Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession [Docket No. 11386] (the "December Plan").

5.     On January 25, 2008, the Court entered an order confirming the December Plan (the "Confirmation Order") [Docket No. 11389], which became a final order on February 4, 2008.  The Court also approved the terms and conditions of the Approved GSA and the Approved MRA in the Confirmation Order.

6.     On April 4, 2008, the Debtors announced that the Debtors' plan investors had refused to participate in the closing of the Equity Purchase and Commitment Agreement (the "EPCA"), which was approved by the Court as amended on December 10, 2008 and which formed the basis of the December Plan.  Despite the non-implementation of the EPCA, the Debtors and GM did not terminate the Approved GSA or the Approved MRA, and the parties began discussions regarding modifications to the Debtors' December Plan and the settlement agreements.

7.     On September 12, 2008, the Debtors filed the Motion seeking an order approving amendments to the Approved GSA (as amended, the "Amended GSA") and the Approved MRA (as amended, the "Amended MRA" and, together with the Amended GSA, the "Amended Settlement Agreements").

**STATEMENT**

8.     The Equity Committee is not objecting to the Motion.  However, the Equity Committee hereby reserves the right to object to confirmation of any chapter 11 plan filed in the Debtors' chapter 11 cases, and any modification thereof, on any ground relating to any of the confirmation requirements.  In that regard, the Equity Committee hereby also specifically

3

reserves the right to object to confirmation of the Debtors' chapter 11 plan on the basis that the third party releases discussed in the Amended Settlement Agreements have not met the requirements for the grant of such releases. In particular and in any event, the Equity Committee reserves the right to object to confirmation of any chapter 11 plan that does not provide appropriate value to existing equity in exchange for the releases granted in favor of GM.

9. It is not lost on the Equity Committee that the proposed Amended Settlement Agreements are the lifeblood of the Debtors' chapter 11 cases. The Amended Settlement Agreements provide for the settlement of the substantial and critical claims of the Debtors against GM and GM's contributions to the Debtors' estates relating thereto. As noted below and throughout the Debtors' chapter 11 cases by the various stakeholder parties, the claims against GM collectively make up a significant portion of the Debtors' assets and the settlement of the claims, and GM's contributions relating thereto, establish a substantial portion of the Debtors' estates from which distributions will be allocated to the Debtors' stakeholders. As a result of the Amended Settlement Agreements, recoveries from GM in these chapter 11 cases will be fixed, and the Debtors' leverage to negotiate for more value in the future will be extinguished. For these reasons, it is imperative that approval of Motion and the Amended Settlement Agreements not be used to bludgeon and overtake the chapter 11 process.

10. The determination of distributions that will be made to stakeholders and whether the third party releases in favor of GM may be properly granted are matters for a hearing on confirmation of the Debtors' ultimate chapter 11 plan. Such important matters need to be determined, fully vetted and handled with care with adherence to the statutory requirements and timeframes for such relief. In that regard, while the Equity Committee is not objecting to the Motion, the Equity Committee reserves the right to object to confirmation of any chapter 11

4

plan filed in the Debtors' chapter 11 cases, and any modification thereof, on any ground relating to any of the confirmation requirements. The propriety of certain aspects of the Amended Settlement Agreements, including the distribution of the value contributed to the Debtors' estates by GM and the releases granted to GM by stakeholders in exchange for such value, cannot be approved in a vacuum or in the context of the Motion.

11.     Pursuant to the Motion and the Amended Settlement Agreements, the Debtors are seeking, among other things, to settle the massive claims, causes of action and defenses against and relating to GM in connection with its conduct prior to, during, and subsequent to the spin-off of the Debtors from GM. The Debtors' current circumstances are the direct result of a scheme perpetrated by GM pursuant to which GM used the Debtors to improperly prop up GM's balance sheet and operating performance at the expense of the Debtors' estates and the Debtors' existing equity holders. The Debtors have been harmed and damaged since their inception and every day thereafter by GM's domination and control.[1]

12.     The Debtors' existing equity holders are the parties most harmed by GM's bad conduct and, as such, existing equity must be protected. In that regard, any value from GM must be held for the benefit of equity and other harmed stakeholders. The Equity Committee understands that the allocation of value is not before the Court. By reason of GM's past acts and the resulting harm to existing equity, the absolute priority rule is irrelevant and does not and

---

[1]  Notwithstanding GM's bad acts since the inception of the Debtors, even under the protection of chapter 11 the Debtors have continued to operate for the benefit of GM to the detriment of their stakeholders. In that regard, the Debtors are now using pressure of overhanging deadlines from the PBGC and IRS to effectuate a transfer of pension assets from the Debtors' pension plans to GM's pension plans to justify their decision to seek expedited approval of a comprehensive settlement with GM, from which their ultimate chapter 11 plan will necessarily be based. Due to (i) the size and type of the claims that will be granted to GM pursuant to the Motion, (ii) the terms of the Amended Settlement Agreements and (iii) the contemplated recovery to GM, GM will remain in control of the Debtors after the effectuation of the Amended Settlement Agreements. The Debtors are effectively handing the keys back to GM in exchange for a fixed settlement from which all recoveries will be based.

will not apply to distributions of value from GM.

13. The Debtors' estates should and must be viewed as consisting of a least two sources of value. A first source of value is the value of the Debtors on a consolidated and stand-alone basis shorn of and absent the post chapter 11 support, benefits and consideration obtained from GM for the account of the Debtors to satisfy and release all claims against and liabilities of GM. Distributions of the stand-alone value should and must follow the absolute priority rule with creditors receiving all of the same in respect of creditor claims.

14. A second and independent source of value to the Debtors' estates is the enhanced value of the Debtors by reason of, and attributable to, the value of GM's post-chapter 11 support, benefits and contributions to the Debtors' estates.[2] Approval of the Motion will determine the amount of this source of value. The value of the Debtors' estates attributable to and as enhanced by the value of GM's support, benefits and contributions belongs to and must be for the account of all stakeholders harmed and damaged by GM without regard to the absolute priority rule. This is so because the recovery to Delphi's equity holders is derivative of the Debtors' claims and causes of action against GM. The Debtors' equity holders were and are the constituents most harmed and damaged by the wrongful conduct of GM prior to, during, and subsequent to GM's spin-off of the Debtors and have suffered the greatest losses.

15. Through the Amended Settlement Agreements, the Debtors assert that GM will make net contributions to the Debtors' transformation that comprise an estimated value of approximately $10.6 billion – a portion of which will be in satisfaction of the massive claims,

---

[2] A third source of value will be the proceeds recovered with respect to the claims against the so-called Plan Investors for post-petition, substantial and irreparable harm and damage to the Debtors and the Debtors' creditors and equity holders and the disallowance of the claims and equity interests of the Plan Investors.

6

causes of action and defenses the Debtors hold against GM.  The enhanced value of the Debtors' estates by reason of, and attributable to, the contributions and concessions made by GM under the Amended Settlement Agreements belong in part to and must be preserved and maintained for the benefit of existing equity holders pending the resolution among the Debtors and stakeholders of a modified chapter 11 plan.  The Debtors are selling assets of the estate free and clear to GM.  Any value received by the Debtors under the Amended Settlement Agreements represents the proceeds of a sale of the Debtors' assets to GM and, as such, the Debtors' claims, causes of action and defenses against GM should attach to those proceeds.  Allocation is not being approved in connection with the Court's determination with respect to the Motion, but instead it should be determined in connection with confirmation of a chapter 11 plan.  The Debtors will need to demonstrate to their stakeholders that all or a substantial portion of the value contributed by GM under the Amended Settlement Agreements will be allocated to constituents as recompense for the harm and damage caused by GM.  Any other allocation of this value would amount to a gross injustice.

16.    Existing equity was allocated a distribution under the December Plan.  Then as now, that allocation was derived from and was possible because of GM's contributions to the Debtors' estates.  Arguments on the Motion and in connection with confirmation of a revised chapter 11 plan that suggest that because economic forces have diminished the value of the Debtors, existing equity is no longer entitled to a recovery or a reduced recovery are wrong and baseless.  The Equity Committee notes that GM's contributions have increased since that time and, in fact, in the Motion the Debtors disclose that GM is increasing its estimated net contributions to the Debtors by approximately $4.6 billion through the Amended Settlement Agreements.

17. When the Debtors formulate a new chapter 11 plan that allocates the enhanced value of the Debtors' estates on account of the Amended Settlement Agreements, that chapter 11 plan must fully comply with the safeguards and requirements of the Bankruptcy Code. The Debtors are seeking approval to implement the Amended Settlement Agreements independent and in advance of the effectiveness of a modified chapter 11 plan, notwithstanding the uncertainty surrounding stakeholder recoveries. Disputes over allocation and the applicability of the absolute priority rule are not before the Court at this time. The allocation of the value received by the Debtors' estates must be subject to a solicitation and confirmation process that will enable stakeholders to pursue and defend their rights under the Bankruptcy Code.

18. Throughout the Debtors' chapter 11 cases, the Debtors have systematically put forth the proposition that the sky is falling and that it is therefore essential that the relief du jour that they are seeking must be granted immediately because dire ramifications will otherwise result. One constant in this Chicken Little process has been that when the sky starts to fall, the Debtors ensure that it falls on their existing equity holders; and once again, the Debtors and their stakeholders find themselves in a critical juncture in the chapter 11 cases. In granting the relief today, the Court should and must also hold that today brings to a close falling of the sky and due consideration and process must begin now.

19. The Equity Committee is filing this Statement so that all parties are aware of the aforementioned concerns at this time, and to expressly reserve its rights in connection with confirmation issues. The Statement sets forth the Equity Committee's views on certain specified issues and is in no way a waiver of any rights, claims, or objections, all of which are hereby expressly reserved. Without limiting the generality of the foregoing, the Equity Committee may object to any disclosure statement or confirmation of any plan on numerous

8

bases, including ones not discussed herein.

Dated:  September 22, 2008
New York, New York

                FRIED, FRANK, HARRIS, SHRIVER
                    & JACOBSON LLP

                /s/ Bonnie Steingart
                Bonnie Steingart
                Jennifer Rodburg
                Richard Slivinski
                One New York Plaza
                New York, New York 10004
                Phone: (212) 859-8000
                Fax:    (212) 859-4000

                *Counsel for the Official Committee of Equity*
                *Security Holders*

7097887