**Exhibit 1**

*OBJECTIONS TO THE GM ARRANGEMENT AMENDMENT APPROVAL MOTION*
*ORGANIZED BY OBJECTOR[1]*

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 1. | 14082 | CR Intrinsic Investors, LLC and Highland Capital Management,. L.P. | GM is entitled to repayment on the applicable termination date under the GM Arrangement Amendment. | Most postpetition financing arrangements appropriately provide for a repayment date. In addition, the agreement expressly provides that GM will generally not be repaid until after the DIP Lenders are repaid. Amendment § 6.01 (last paragraph). |
| | | | The term of the Amendment is too short (December 31, 2008). | The term matches, not inappropriately, the Debtors' current DIP Financing Facility. |
| | | | The Amendment requires the Debtors to borrow $300 million more to end up with $200 million less in liquidity. | The structure of the Amendment does not reflect the Debtors' actual liquidity position. It merely sets out that if the Debtors have fully drawn on the $650 million commitment, they must first draw on the DIP Financing Facility through a certain level before drawing on the $300 million commitment. |
| | | | If the Amendment motion is granted, GM will have complete control over the Debtors' plan process. | GM has no veto rights with respect to any plan. The filing of a plan reasonably satisfactory to GM is merely a condition to GM's obligation to make an advance. The proposed amended GSA provides that an acceptable plan is one that provides GM the consideration specified in the GSA, certain releases, and a provision that the GSA controls over the plan. And the Debtors have the ability to file a plan that is <u>reasonably</u> satisfactory to GM by October 31, 2008, which is the same plan deadline vis-à-vis the Creditors' Committee. |
| | | | GM continues to benefit from the pricing levels it receives from Delphi and those pricing benefits are not set off against advances by GM under the Amendment until the GSA/MRA becomes effective. | The Amendment is not designed to deal with pricing issues (which are the subject of separate agreements, i.e., the approved GSA and MRA and the amended GSA and MRA that are the subject of a motion for approval). Postpetition financing arrangements are not required to resolve all issues between the parties. |

---

[1] This chart reflects all objections received as of September 19, 2008.

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | The Debtors need to consider exiting unprofitable businesses and contracts. | The Debtors have fully explored and analyzed all strategic alternatives. The Debtors have also made a number of divestitures during these cases. In the due exercise of their business judgment, the Debtors have concluded that exiting core businesses is an inferior strategic alternative. The chairman of the Creditors' Committee has testified that exiting the North American operations is not an alternative that the Debtors should pursue. |
| | | | The equity value in Delphi's global affiliates is being stripped for the benefits of the North American operations. | Delphi is a global, integrated enterprise that operates along different business segments or divisions. The value of Delphi is premised on this cohesive enterprise. Without the assets and business operations of the Debtors' U.S. operations, as presently structured, the global affiliates would not be capable of existing as stand-alone entities. |
| | | | The shifting of assets, arising from making all Debtors responsible for repayment, is a de facto substantive consolidation. | There is no de facto substantive consolidation. It is customary for all debtors to be jointly and severally liable for postpetition financing, as done here in the DIP Financing Facility and the GM Arrangement. |
| | | | The borrowing under the Amendment will not benefit Debtors' estates because of ongoing losses in the U.S. | Delphi is a global, integrated enterprise that operates along different business segments or divisions. The value of Delphi is premised on this cohesive enterprise. Without the assets and business operations of the Debtors' U.S. operations, as presently structured, the global affiliates would not be capable of existing as stand-alone entities. |
| 2. | 14168 (Preliminary), 14205 | Creditors' Committee | The Creditors' Committee "reserves the right to supplement" its objection with grounds to be set forth in its objection to the motion to approve the amended GSA/MRA. | The objection deadline has passed and the Creditors' Committee has had plenty of time to craft its arguments with respect to this motion filed August 6, 2008. In fact, the Creditors' Committee filed its objection after the extended deadline to which the Debtors and the Creditors' Committee had agreed. |
| | | | Court review of this transaction is subject to heightened scrutiny because GM is an insider. | GM is not an insider. It does not control the Debtors. During these cases, GM has not selected the Debtors' management, has had access to Delphi that is no different than any of the Debtors' other customers under customary customer contracts, and has provided postpetition financing to the Debtors along with the many DIP Lenders, and has not influenced the Debtors' decisions except through contentious arm's-length negotiations leading to agreements that were approved by this Court. GM's access to information has been appropriate to the nature and magnitude of the transactions and proposed transactions between the Debtors and GM. Accordingly, the Court should apply the usual level of review to the proposed transaction. |

2

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| | | | GM's obligation to make advances is illusory because a plan must be acceptable to GM and the Debtors must continue to repatriate cash. | The fact that a condition might not be satisfied does not make a contract illusory.  GM has a limited set of rights with respect to Delphi's plan.  Section 5.04 of the proposed amended Global Settlement Agreement with GM provides that Delphi's plan must (a) provide for the consideration to be received by GM as set forth in the agreement, (b) include the release provisions set forth in the agreement, and (c) provide that any inconsistency between the Debtors' plan and the agreement will be governed by the agreement.  Thus, the Debtors have the ability to file a plan acceptable to GM and to repatriate cash, as they have done in the past.  The Debtors believe that they have valid grounds to effect such repatriation. |
| | | | The Amendment provides (a) that the interest rate automatically increases to the highest DIP Financing Facility interest rate if it exceeds the Amendment rate and (b) for reimbursement of GM's attorneys' fees and costs. | Interest rate adjustments and reimbursement of a lender's fees and costs are customary terms for postpetition financing arrangements, including the GM Arrangement to which the Creditors' Committee did not object.  If a plan of reorganization in accordance with the provisions of section 5.04 of the proposed amended Global Settlement Agreement becomes effective on or before the termination date of the Amendment, the interest is automatically cancelled. |
| | | | If the Amendment motion is granted, GM will have complete control over the Debtors' plan process. | GM has no veto rights with respect to any plan.  The filing of a plan reasonably satisfactory to GM is merely a condition to GM's obligation to make an advance. The proposed amended GSA provides that an acceptable plan is one that provides GM the consideration specified in the GSA, certain releases, and a provision that the GSA controls over the plan.  And the Debtors have the ability to file a plan that is <u>reasonably</u> satisfactory to GM by October 31, 2008, which is the same plan deadline vis-à-vis the Creditors' Committee. |

| DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|
| | | The conditions to the $300 million tranche are more stringent than those in the proposed amended GSA/MRA. | In contrast to the GM Arrangement's existing $650 million commitment, the Amendment's $300 million commitment is not reduced by any payments from GM under the proposed amended GSA or MRA. Thus, this aspect of the Amendment's additional liquidity is more favorable than the GM Arrangement to which the Creditors' Committee did not object. |

| DOCKET # | OBJECTING PARTY |
|---|---|
| 14082 | CR Intrinsic Investors, LLC and Highland Capital Management, L.P. |
| 14168 | Official Committee of Unsecured Creditors (preliminary objection) |
| 14205 | Official Committee of Unsecured Creditors (late filing) |