**Exhibit 1**

*OBJECTIONS TO HOURLY AND SALARIED PENSION PROGRAM MODIFICATION MOTION*
*ORGANIZED BY OBJECTOR*

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 1. | 14168, 14205 | Creditors' Committee | Replacement retirement plans are inappropriate when there is no revised plan of reorganization. | The Creditors' Committee concedes its support for the freezing of the Debtors' pension plans and implementation of replacement hourly and non-executive salaried plans. The Creditors' Committee also concedes that the relief requested in the Motion will save the estates money (millions of dollars per quarter, in fact). To maintain the competitiveness of their retirement programs, however, the Debtors need to implement follow-on plans in connection with the freeze of their existing plans. The Creditors' Committee's objection to implementation of the follow-on plans now, even though vesting and payments in respect of the plans would not take place until consummation of a reorganization plan, seems to be more a reflection of the Committee's disagreement with the GSA and MRA Amendment Motion, which is completely independent of this Motion. The Debtors have maintained retirement programs for their employees throughout their cases, and only seek the modifications described in the Motion to implement a replacement program that saves cash and thus preserves liquidity.<br><br>In sum, the Committee's objection does not present one legally cognizable basis for denying the relief requested in the Motion. |

| | DOCKET NO. | OBJECTOR | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|---|
| 2. | | | The Debtors' assets should not be used for the benefit of the Debtors' executives. | Although the Creditors' Committee's displeasure with the GSA/MRA Amendments is obvious, the Debtors' executives should not have their retirement benefits reduced for having pursued those amendments and achieved a settlement with GM. Whether or not the GSA/MRA Amendments are approved, the pension freeze will preserve assets of the Debtors' estates. The Creditors' Committee has not offered any evidence that implementing the pension plan freeze and the follow-on plans now is not a proper exercise of the Debtors' business judgment. Moreover, reducing retirement benefits for executives is not an effective means of keeping the management team motivated and focused on emergence from chapter 11 in the face of the dislocation in the capital markets and automotive sector. |
| 3. | | | The Unions may condition consent to the freeze on receipt of additional consideration. | Through the Motion, the Debtors are seeking very limited relief with respect to the Hourly Plan: the authority to implement negotiated modifications to their Union agreements as may be related to the freeze the Hourly Plan. If the Debtors were inclined to grant material concessions to the Unions to obtain an earlier freeze of the Hourly Plan, the Debtors would arguably need further Court relief, given that the Motion seeks no such authority. As a general matter, however, the Debtors do not believe that the proposed modifications with Union consent require court approval. See In re The Leslie Fay Cos., 168 B.R. 294, 303 (Bankr. S.D.N.Y. 1994) (debtors can enter into agreement modifying existing collective bargaining agreements postpetition without notice or hearing). |
| 4. | | | Estate assets should not be used to create the Amended SERP and Amended SRESP. | This objection is based on the Creditors' Committee's clear misreading of the Motion. First, the Amended SERP and Amended SRESP are not being "created" now – as the Committee acknowledges, the terms of these programs "are the same or very similar to the programs this Court approved for executives." Second, as the Motion makes plain, no estate assets will currently be used to fund these plans, and no benefits would vest or be payable until emergence from chapter 11. |

2

|  | **DOCKET NO.** | **OBJECTOR** | **SUMMARY OF OBJECTION** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|---|---|
| 5. |  |  | The Creditors' Committee claims that the Debtors have not provided the Committee and the Court with a current estimate for the annual cost of the Amended SERP and Amended SRESP once the Debtors emerge from chapter 11. | This assertion by the Committee is disingenuous because the Debtors and their professionals worked with the Creditors' Committee and its professionals to provide an open exchange of information even before the Debtors filed the Motion.<br><br>Although the Debtors provided the Creditors' Committee with an aggregate estimate for the annual cost of the salaried follow-on plans, due to an inadvertent oversight on account of the massive document production that took place during the course of last week, a break-down of costs was not provided to the Creditors' Committee until Saturday, September 20th. This information is included in more detail in the Debtors' Reply in support of the Motion. |
| 6. | 14176 | IUE-CWA | Limited objection aimed at discovering materials related to the 414(l) transfer. | The IUE-CWA has consent rights to any relief that might affect the IUE-CWA or its members. There is accordingly no basis to object. Nevertheless, the Debtors provided the IUE-CWA with thousands of pages of documents. It is noteworthy that in the IUE-CWA's supplemental objection, not even a sentence is dedicated to challenging this Motion. |
| 7. | 14216 | United Steelworkers of America | Limited objection based on the lack of implementation agreement filed with the motion. | This objection was filed on September 22, 2008 and is therefore untimely. In any event, the USW has consent rights to any relief that might affect the USW or its members. There is accordingly no basis to object. |
| 8. | Undocketed | Dawn M. Eaton | Letter objecting to service costs and aspects of the pension freeze and follow-on plans. | Ms. Eaton asserts that service of the Motion in accordance with bankruptcy law and this Court's Case Management Orders was a frivolous expense of $4 million. In actuality, the cost was approximately $400,000 and such service was necessary in any event.<br><br>Ms. Eaton also claims that the Defined Contribution Plan should be an administrative expense, apparently based on a misunderstanding with respect to the fact that the Defined Contribution Plan, unlike the other salaried follow-on plans, would be payable and effective on October 1, 2008. |