USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
In re DELPHI CORPORATION          :
et al.,                           :
                                  :
                                  :    08 Civ. 3752 (VM)
                                  :
              Debtors.            :
-----------------------------:        **DECISION AND ORDER**
AUTOMODULAR CORPORATION           :
a/k/a AUTOMODULAR ASSEMBLIES,     :
                                  :
         Plaintiff/Appellant,     :
                                  :
      -  against  -               :
                                  :
DELPHI CORPORATION,               :
                                  :
         Defendant/Appellee.      :
--------------------------------X

**VICTOR MARRERO, United States District Judge.**

Appellant Automodular Corporation ("Automodular") appealed, pursuant to 28 U.S.C. § 158(a)(1), from an order dated March 3, 2008 (the "Bankruptcy Order") of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") which denied Automodular's motion to compel assumption or rejection of executory contracts and to allow and direct payment of certain administrative expense claims as against appellee Delphi Corporation ("Delphi"). For the reasons set forth below, the Bankruptcy Order is AFFIRMED.

## I.  BACKGROUND

Automodular is in the business of sub-assembling and sequencing automotive modules, which are delivered to the original equipment manufacturers (the "OEM") on a just-in-time

basis.   Automodular receives directions only from the OEM's
final assembly plants, regardless of whether Automodular is
under contract to the OEM or a Tier 1 supplier to the OEM.
Delphi is a Tier 1 supplier to the OEM.

Automodular entered into various requirements contracts
with Delphi through its subsidiary Delphi Automotive Systems
LLC ("DAS").   In the instant matter, Delphi and Automodular
entered into a series of purchase orders beginning in June
2004, which obligated Delphi to purchase and Automodular to
provide all of Delphi's requirements for a particular
automobile part at the Lordstown, Ohio location (the
"Lordstown Contract").   Similarly, Delphi and Automodular
entered an agreement in June 2005, which obligated Delphi to
purchase and Automodular to provide all of Delphi's
requirements for a particular automobile part at the Oshawa,
Ontario location (the "Oshawa Contract") (collectively, the
Lordstown and Oshawa Contracts are referred to here as the
"Contracts").   The Contracts incorporated Delphi's General
Terms and Conditions (the "Terms").   Pursuant to the Terms,
the buyer could require Automodular to implement changes to
the specifications or design of the goods or to the scope of
any services covered by the Contracts.   General Motors
Corporation ("GM"), the relevant OEM in the instant matter,
informed Automodular that it needed fewer components and

directed Automodular to, among other requirements, reduce shifts, change the assembly line speed, and change the length of workers' shifts (the "Delphi Changes"). As a result of the Delphi Changes, Automodular requested from Delphi a price increase per unit assembled because Automodular believed that such an increase was warranted pursuant to the Terms's change-in-scope provision. Delphi, however, refused to negotiate any price increase. The Bankruptcy Order denied Automodular's motion seeking payment of an administrative expense claim in the amount of the requested price increase. Automodular has appealed the Bankruptcy Order to this Court.

## II.   **DISCUSSION**

A.   STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's findings of fact are subject to the clearly erroneous standard, and its conclusions of law are reviewed de novo. See In re Yohannes, No. 06 Civ. 461, 2007 WL 2034301, at *2 (S.D.N.Y. July 17, 2007) (citations and quotation marks omitted). In reviewing a lower court's contract interpretation, a de novo standard is used when the contract at issue is unambiguous, but a clearly erroneous standard is employed only where a court is reviewing an ambiguous agreement. See Hatalmud v. Spellings, 505 F.3d 139, 145-46 (2d Cir. 2007); see also In re Chateaugay Corp., 156 B.R. 391, 404-05 (S.D.N.Y. 1993). Finally, the Bankruptcy

Court's evidentiary rulings are subject to an abuse of discretion standard of review. See General Elec. Co. v. Joiner, 522 U.S. 136, 142-43 (1997).

B.   APPLICATION

After reviewing the relevant record and the parties' submissions, the Court affirms the Bankruptcy Order for substantially the reasons set forth by the Bankruptcy Court.

When interpreting the Contracts under Michigan law[1], the Court must look to the parties' intent as expressed by the words in the agreement, and where the words used are clear and unambiguous, the Court "does not have a right to make a different contract for the parties or to look to extrinsic testimony to determine their intent." UAW-GM Human Res. Ctr. v. KSL Recreation Corp., 579 N.W.2d 411, 414 (Mich. Ct. App. 1998) (citations and quotation marks omitted).

In the instant matter, it was the clear intent of the parties to enter into requirement contracts. In a requirement contract, the parties' do not fix a quantity term, but instead, the quantity will be the buyer's needs of the specific commodity over the contract's life. See J&B Sausage Co. v. Department of Mgmt. & Budget, No. 259230, 2007 WL 28409, at *3 (Mich. Ct. App. Jan. 4, 2007). Specifically, this intent is demonstrated by language in the Contracts

_____

[1] The Contracts are subject to Michigan law.

-4-

requiring Automodular to supply 100 percent of Delphi's particular subassembly needs, typically at a fixed price. Because the Contracts are requirement contracts, Delphi cannot generally be held liable under the Contracts for mere reductions in volume unless Delphi acted with bad faith. Automodular has not alleged that Delphi acted with bad faith in reducing its requirements, and the record clearly demonstrates that Delphi's reduced requirements were a result of GM's lowered demand, not bad faith on the part of Delphi.

Automodular counters that, although the Contracts may have been requirements contracts, it is entitled to an increase in price because the Delphi Changes altered the scope of services and were not merely reductions in requirements. Section 3 of the Terms states that:

> Buyer may at any time require [Automodular] to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control .... Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes ....

(The Terms § 3, attached as Ex. K to Automodular's Supplemental App.)  Automodular argues that by requiring the Delphi Changes, Delphi effectively altered the scope of the services or work covered by the Terms and that, pursuant to § 3 of the Terms, Automodular is entitled to a price adjustment. However, when the entirety of the Terms are reviewed,

-5-

particularly §§ 2.5, 2.7, and 29, it is clear that the parties
did not intend for alterations such as the Delphi Changes to
constitute changes to the "scope of any services or work
covered" by the Terms.  (Id.)

Section 2.5 states in relevant part that "[d]eliveries
will be made in the quantities, on the dates, and at the times
specified by Buyer in this Contract or any subsequent releases
or instructions Buyer issues under this Contract," and that
"[i]f the requirements of Buyer's customers or market,
economic or other conditions require changes in delivery
schedules, Buyer may change the rate of scheduled shipments or
direct temporary suspension of scheduled shipments without
entitling [Automodular] to a price adjustment or other
compensation." (Id. § 2.5.)  This provision demonstrates the
intent of the parties to allow the buyer to effectively
control the timing and quantity of deliveries without
entitling Automodular to an adjustment in price.

Section 2.7 states that:

Buyer may provide [Automodular] with estimates, forecasts
or projections of its future anticipated volume or
quantity requirements for goods. [Automodular]
acknowledges that any such forecasts are provided for
informational purposes only and, like any other forward
looking projections, are based on a number of economic
and business factors, variables and assumptions, some or
all of which may change over time. Buyer makes no
representation, warranty, guaranty or commitment of any
kind or nature, express or implied, regarding any such
forecasts provided to [Automodular], including with
respect to the accuracy or completeness of such

-6-

forecasts.

(Id. § 2.7.)   In the Court's reading, this provision unambiguously demonstrates the intent of parties not to enter into any commitments based on forecasts.

Section 29, the integration provision, states that the Terms, which the Contracts expressly incorporate, "constitutes the entire agreement between [Automodular] and Buyer" and "supersedes all prior oral or written representations and agreements."   (Id. § 29.)

Taking into account the entirety of the Terms, the Court does not find the scope change language in § 3 of the Terms to be ambiguous, and thus, the Bankruptcy Court properly excluded extrinsic evidence when determining the parties' intent.   The express language in the Terms clearly demonstrates that the parties entered into requirement contracts, which did not allow for adjustments to price terms based on reductions in requirements.   The Court finds that the Bankruptcy Order properly concluded that the Delphi Changes constituted a reduction in requirements, not changes in the scope of the services or work covered by the Terms, and as such, Automodular is not entitled to a price adjustment pursuant to the Terms.   Accordingly, the Court affirms the Bankruptcy Order for substantially the reasons set forth by the Bankruptcy Court.

## III.  ORDER

Accordingly, it is hereby

**ORDERED** that the Order of the United States Bankruptcy Court for the Southern District of New York dated March 3, 2008, from which Appellant Automodular Corporation appealed in this action (Docket No. 1), is AFFIRMED.

The Clerk of Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated: New York, New York
          22 September 2008

                                    _____
                                         Victor Marrero
                                           U.S.D.J.