Exhibit 1

Delphi Salaried Retirement Savings Program

***COMPLETE TEXT***

**Delphi Salaried Retirement
Savings Program**

**Formerly
Delphi Savings-Stock Purchase Program For Salaried Employees in the
United States**
*(Restatement Effective October 1, 2008)*

*DRAFT September 8, 2008*

## TABLE OF CONTENTS

**Page**

PURPOSE OF PROGRAM ........................................................................................... 1
DEFINITION OF TERMS ............................................................................................ 1

### ARTICLE I - General Provisions of the Program

**SECTION 1**    Eligibility ........................................................................................ 12
**SECTION 2**    Employee Deferrals and Contributions ........................................ 13
**SECTION 3**    Employee Rollovers from Other Qualified Plans ......................... 14
**SECTION 4**    Corporation Contributions ............................................................ 14
**SECTION 5**    Investment of Employee Contributions ....................................... 15
**SECTION 6**    Investment of Corporation Contributions .................................... 16
**SECTION 7**    Investment of Income Received on Participant Savings
and Corporation Contributions ..................................................... 16
**SECTION 8**    Exchange of Participant Assets .................................................... 16
**SECTION 9**    Formation of Classes ..................................................................... 17
**SECTION 10**   Vesting ........................................................................................... 17
**SECTION 11**   Withdrawal of Accounts Assets Prior to Separation From Employment ...... 17
**SECTION 12**   Settlement Upon Termination of Employment .............................. 18
**SECTION 13**   Distribution of Assets .................................................................... 19
**SECTION 14**   Election to Defer Distribution at Termination ............................... 20
**SECTION 15**   Attainment of Age 70-1/2 ............................................................. 21
**SECTION 16**   Undeliverable Assets .................................................................... 24
**SECTION 17**   Loans ............................................................................................. 24

### ARTICLE II - Trust Fund

**SECTION 1**    General ........................................................................................... 27
**SECTION 2**    Investment by Trustee .................................................................. 28

| TABLE OF CONTENTS |
| --- |

**ARTICLE III – Other Provisions of the Program**

| **SECTION 1** | Named Fiduciary and Adminstration | 28 |
| **SECTION 2** | Amendment, Modification, Suspension, or Termination | 29 |
| **SECTION 3** | Merger or Consolidation | 29 |
| **SECTION 4** | Distribution Upon Program Termination | 29 |
| **SECTION 5** | Corporation Contributions Not Vested | 29 |
| **SECTION 6** | Non-Assignability | 30 |
| **SECTION 7** | Designation of Beneficiaries in Event of Death | 30 |
| **SECTION 8** | Limitations on Contributions and Benefits | 31 |
| **SECTION 9** | Certain Provisions Required to Comply With Section 416 of the Internal Revenue Code | 34 |
| **SECTION 10** | Participant Statements | 36 |
| **SECTION 11** | Claim Denial Procedures | 37 |
| **SECTION 12** | Qualified Domestic Relations Order | 38 |
| **SECTION 13** | Treatment of Employees Who Are Employed by Foreign Business Entities in Which the Corporation Has a Substantial Ownership Interest | 39 |
| **SECTION 14** | Effective Date of Program | 39 |
| **SECTION 15** | Investment Decisions | 39 |
| **SECTION 16** | Confidential Information | 39 |
| **SECTION 17** | Service of Legal Process | 39 |
| **SECTION 18** | Special Provisions Regarding Veterans | 40 |

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

Delphi Corporation, on behalf of itself and as agent for its directly or indirectly wholly owned and substantially wholly-owned subsidiaries, established effective January 1, 1999, the Delphi Salaried Savings-Stock Purchase Program for Salaried Employees in the United States, as amended and subsequently restated and renamed to the Delphi Salaried Retirement Savings Program (SRSP) effective October 1, 2008.

## PURPOSE OF PROGRAM

The purpose of the Delphi Salaried Retirement Savings Program for Salaried Employees in the United States is to facilitate the accumulation of retirement savings by eligible Employees.

## DEFINITION OF TERMS

The definitions described herein will apply to all words and phrases listed below unless the context in which the word or phrase appears reasonably requires a broader, narrower, or different meaning.

The terms defined herein are capitalized in the text, which follows:

### Account

The term "Account" means an account established and maintained for a Participant under this Program, including subaccounts to reflect the value of pre-tax contributions, After-Tax Contributions, Matching Contributions, Roth 401(k) Contributions, IRA Contributions, and rollover contributions.

### Additional Savings

The term "Additional Savings" means Employee contributions (either on a pre-tax or after-tax basis) which exceed maximum Basic Savings, but when added to maximum Basic Savings may not exceed the sum of (1) 60% of Eligible Salary at any time during the Year of Formation, plus (2) for eligible Employees, the Flexible Compensation Payment amount contributed pursuant to Article I, Section 2(D).

### Administrator

The term "Administrator" means Delphi Corporation. The Administrator's address is Delphi Corporation, 5725 Delphi Drive, Troy, MI 48098-2815.

### After-Tax Contributions

The term "After-Tax Contributions" means the after-tax savings contributed by the Employee to the Trust and allocated to the Participant's Account.

### Annual Earnings Base

The term "Annual Earnings Base" means the Eligible Salary equivalent for certain Employees who are compensated wholly or in part on a commission basis determined under rules established from time to time by a committee appointed by the Board of Directors of Delphi Corporation.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

## Basic Savings

The term "Basic Savings" means Employee Elective Deferrals and/or After-Tax Savings that may not exceed 7% of Eligible Salary at any time during the Year of Formation (9% for those Employees with a service date on or before September 30, 2008 for a period of five years beginning on the October 1, 2008 and ending on September 30, 2013.)

## Business Day

The term "Business Day" means each day the New York Stock Exchange is open for business, except in the event of the occurrence on any day of government restrictions, exchange or market rulings, suspensions of trading, acts of civil or military authority, national emergencies, labor difficulties, fires, earthquakes, floods or other catastrophes, acts of God, wars, riots or failures of communication or power supply, or other circumstances beyond the reasonable control of the Trustee, the Trustee shall determine in its discretion the extent to which such day shall constitute a Business Day for any purpose of the Plan.  Any election, application, request, termination, or other event that occurs on a day that is not a Business Day or on a Business Day after the New York Stock Exchange has closed for business (normally 4:00 p.m. E.T.) will be treated as occurring on the next Business Day absent exceptional circumstances as determined by the Administrator in its sole discretion.

## Catch-Up Contributions

The term "Catch-Up Contributions" means pre-tax Elective Deferrals made by eligible Employees who are aged 50 or over before the close of the Plan Year in accordance with Section 414(v) of the Code.  Such Catch-Up Contributions are not to be taken into account for purposes of the Plan limitations under Sections 402(g) and 415 of the Code.

## Code

The term "Code" means the Internal Revenue Code of 1986, as amended.

## Compensation

The term "Compensation" means the total amount paid by the Corporation to the Employee with respect to salaried employment during any calendar year, as evidenced by Internal Revenue Service Form W-2 or its equivalent [limited as set forth in Article III, Section 8(B)], plus amounts not currently includable in income by reason of Sections 125, 132(f) and/or 402(e)(3) of the Code. Effective on and after January 1, 2006, "Compensation" does not include back pay awards.

Compensation shall exclude the following:

(1)    distributions from a plan of deferred compensation whether or not includible in the gross income of the Employee when distributed;

(2)    amounts realized from the exercise of a non-qualified stock option, or when restricted stock (or property) held by an Employee becomes freely transferable or is no longer subject to a substantial risk of forfeiture;

(3)    amounts realized from the sale, exchange or other disposition of stock acquired under a qualified stock option; and

(4)    other amounts which receive special tax benefits, such as premiums for group term life insurance (but only to the extent that the premiums are not includable in the gross income of the Employee).

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

### Contribution Percentage

The term "Contribution Percentage" means the ratio (expressed as a percentage) of a Participant's Contribution Percentage Amounts for the Plan Year to the Participant's total compensation (as defined in Section 414(s) of the Code), including any salary deferral amounts under Sections 401(k) or 125 of the Code, for the Plan Year in which the Plan is being tested for compliance with the nondiscrimination tests (whether or not the Employee was a Participant for the entire Plan Year).

### Contribution Percentage Amounts

The term "Contribution Percentage Amounts" means the sum of the After-Tax Savings, Matching Contributions, Qualified Nonelective Contributions, and Qualified Matching Contributions (to the extent not taken into account for purposes of the Actual Deferral Percentage (ADP) test) made on behalf of the Participant for the Plan Year.  Such Contribution Percentage Amounts shall include forfeitures of Excess Aggregate 401(m) Contributions or Matching Contributions allocated to the Participant's Account which shall be taken into account in the year in which such forfeiture is allocated.  The Employer also may elect to use Elective Deferrals in the Contribution Percentage Amounts so long as the ADP test is met before the Elective Deferrals are used in the Actual Contribution Percentage (ACP) test and continues to be met following the exclusion of those Elective Deferrals that are used to meet the ACP test.

### Corporation

The term "Corporation" means Delphi Corporation and each of its directly or indirectly wholly owned or substantially wholly owned subsidiaries.

### Corporation Contributions

The term "Corporation Contributions" means all Matching Contributions, the 1% Delphi Contribution, and the Delphi Retirement Contribution made by the Corporation.

### Date of Valuation

The term "Date of Valuation" means the Business Day that a Participant initiates an investment option election, a loan, a settlement upon termination of employment, an exchange of assets, or a withdrawal, and such date will be the Effective Date of Investment Option Election, Effective Date of Loan, Effective Date of Termination, Effective Date of Exchange of Assets, or Effective Date of Withdrawal, whichever is applicable.

### Delphi Matching Contribution

The term "Matching Contribution" means any contribution made by the Corporation pursuant to Article I, Section 4(A) for the Plan Year allocated to a Participant's Account by reason of the Participant's Basic Savings.

### Delphi Retirement Contribution

The term "Delphi Retirement Contribution" means the semi-monthly nonelective contribution made by the Corporation allocated to an eligible Employee's Account, equal to 4% of such Employee's Eligible Salary, Salaried Incentive Plan (SIP) payout, Short Term Incentive Plan payout and Recognition Award.  This Corporation Contribution is provided to eligible active Employees beginning October 1, 2008, effective with the first day of the month coinciding with or next following the completion of six months of service.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

### Direct Rollover

In general, a "Direct Rollover" means a tax-free transfer of cash from one qualified retirement plan to another, or from an individual retirement account that is established for the sole purpose of receiving a distribution from a qualified plan so that the assets can subsequently be rolled over into another qualified plan pursuant to Section 401(a)(31) of the Code.

A Direct Rollover also includes a taxable transfer of cash from a qualified retirement plan to a Roth IRA.

### Distributee

A "Distributee" includes an Employee or former Employee of the Corporation to whom assets are to be distributed. Additionally, the surviving spouse of the Employee or former Employee or an alternate payee to whom assets are to be distributed under a Qualified Domestic Relations Order (QDRO), as defined in Section 414(p) of the Code, are Distributees with regard to their interest.

### Effective Date of Investment Option Election

The term "Effective Date of Investment Option Election" means the Business Day on which appropriate direction to the Trustee is received and confirmed by the Program Recordkeeper for an investment option election.

### Effective Date of Loan

The term "Effective Date of Loan" means the Business Day on which appropriate direction to the Trustee is received and confirmed by the Program Recordkeeper for a loan request.

### Effective Date of Termination

The term "Effective Date of Termination" means the Business Day on which an Employee terminates salaried employment with the Corporation as determined by the Corporation.

### Effective Date of Exchange of Assets

The term "Effective Date of Exchange of Assets" means the Business Day on which appropriate direction to the Trustee is received and confirmed by the Program Recordkeeper for an exchange of assets request.

### Effective Date of Withdrawal

The term "Effective Date of Withdrawal" means the Business Day on which appropriate direction to the Trustee is received and confirmed by the Program Recordkeeper for a withdrawal, or in the event of a withdrawal because of Financial Hardship, the Business Day on which approval is granted by the Named Fiduciary or its delegate for a withdrawal because of Financial Hardship.

### Elective Deferrals

The term "Elective Deferrals" means amounts allocated during the Plan Year to a Participant's Account pursuant to a salary reduction agreement. No amount that has become currently available to an Employee or that is designated or treated, at the time of deferral or contribution, as an After-Tax Contribution may be treated as an Elective Deferral. With respect to any calendar year, a Participant's Elective Deferral is the sum of all amounts allocated pursuant to an election to defer under any qualified CODA as described in Code Section 401(k), any simplified employee pension cash or deferred arrangement as described in Code Section 402(h), any eligible deferred compensation plan under Code Section 457, and any employer contributions allocated to

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

a Participant's Account for the purchase of an annuity contract under Code Section 403(b) pursuant to a salary reduction agreement.

In no event shall the aggregate amounts deferred under the salary reduction agreement for any calendar year exceed $15,500 (as adjusted for cost-of-living increases as provided under Section 402(g) of the Code). Furthermore, no Participant shall be permitted to have Elective Deferrals made under this Plan, or any other qualified plan maintained by the Employer, during any calendar year in excess of the dollar limitation contained in Section 402(g) of the Code in effect at the beginning of such calendar year.

### Eligible Retirement Plan

An "Eligible Retirement Plan" is:

(1)  an individual retirement account or annuity as described in Section 408(a) of the Code;

(2)  an individual retirement plan as described in Section 408A of the Code;

(3)  an individual retirement annuity described in section 408(b) (other than an endowment contract);

(4)  a qualified defined contribution plan as described in Section 401(a) of the Code that accepts a Distributee's Eligible Rollover Distribution;

(5)  an eligible plan under Section 457(b) of the Code maintained by a state, political subdivision of a state or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Program;

(6)  an annuity plan described in section 403(a); or

(7)  an annuity contract described in Section 403(b) of the Code.

The definition of an Eligible Rollover Distribution applies in the case of a distribution to a surviving spouse or former spouse, or to a spouse or former spouse who is an alternate payee under a qualified domestic relations order as defined in Section 414(p) of the Code.

If any portion of an Eligible Rollover Distribution is attributable to payments or distributions from a designated Roth 401(k) account, an Eligible Retirement Plan must include a Roth 401(k) or Roth IRA account of such individual Distributee.

### Eligible Rollover Distribution

An "Eligible Rollover Distribution" is any distribution consisting of all or any portion of the Account of the Distributee, except that an Eligible Rollover Distribution does not include:

(1)  any distribution to the extent such distribution is required under Section 401(a)(9) of the Code;

(2)  any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life of (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or a specified period of ten years or more;

(3)  any distribution that is for a Financial Hardship; and

(4)  any other distribution(s) that is reasonably expected to total less than $200 during a year.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

A portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of After-Tax Contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Section 408(a) or (b) of the Code, or to a qualified defined contribution plan described in Section 401(a) of the Code that agrees to separately account for amounts so transferred, including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

### *Eligible Salary*

The term "Eligible Salary" means:

(1)  For Employees, other than those Employees compensated wholly or in part in a sales incentive compensation plan, regular base salary, Recognition Awards, Flexible Compensation Payment, and any Salaried Incentive Plan payout or Short Term Incentive Plan payout during such period or periods as the Employee is eligible to accumulate savings in the Program.

   The term does not include commissions, drawing accounts, overtime and night shift payments, seven-day operation premiums, any other special payments, fees, and allowances, and shall not exceed $230,000 per year, as adjusted for increases in cost-of-living under Section 401(a)(17) of the Code.

(2)  For Employees compensated wholly or in part in a sales incentive compensation plan, during such period or periods as the Employee is eligible to accumulate savings in the Program, the greater of:

   (A)  regular base salary;  or

   (B)  an Annual Earnings Base, or a pro rata portion thereof, with respect to any period or periods of eligibility of less than a year.

(3)  For Employees on a Corporation-approved disability leave of absence, the eligible salary continuation payments.

(4)  For Employees participating in the Deferred Employment/Graduate Study Program, the stipend amount.

### *Employees*

The term "Employees" means regular employees of the Corporation compensated by salary or by commission or partly by salary and partly by commission who are:

(1)  working in the United States or;

(2)  citizens of or domiciled in the United States and who have been or may hereafter be hired in the United States by the Corporation and who are sent out of the United States by the Corporation to work in foreign operations, and whose services, if discontinued, would be discontinued by recalling said employees to the United States and terminating their services in the United States.

Employees classified by the Corporation as Part-Time Employees, Cooperative Student Employees hired before January 1, 1999, and Flexible Service Employees will be regarded as Employees. Employees classified as Temporary Employees will be regarded as Employees following the completion of six months of service.

The term "Employees" will not include employees of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation acquired or formed by the Corporation, unless specifically designated for inclusion by the Delphi Board of Directors.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

The term "Employees" will not include Leased Employees.

The term "Employees" will not include employees compensated wholly or in part on a commission basis who are represented by a labor organization unless they are included through understandings between the Corporation and their collective bargaining representatives.

The term "Employees" will not include employees represented by a labor organization who are covered by a collective bargaining agreement, which incorporates or makes as a part thereof:

(1)    this Program as amended by the Collective Bargaining Agreement; or

(2)    a program or plan similar in purpose to this Program; or

(3)    some other plan or program acknowledged by the Corporation and the employee's bargaining agent to be a substitute for, or in lieu of, benefits provided by this Program; or

(4)    an understanding that this Program will cease prospectively to be available, applicable, or operative with respect to each salaried employee covered by such agreement.

Such employees will cease to be eligible for participation in this Program as of the effective date of, or at such other time as may be specified in, such collective bargaining agreement.  If such collective bargaining agreement expires or is terminated, and the employee remains a represented employee, such employee will continue to be ineligible for participation in this Program during the period required to conclude a new collective bargaining agreement.

The term "Employees" will not include members of the Board of Directors of Delphi Corporation or of the board of directors of any of its directly or indirectly wholly-owned or substantially wholly-owned subsidiaries, or of any committee appointed by any such board of directors who are not regular employees of the Corporation or such subsidiaries.

The term "Employees" will not include contract employees, bundled services employees, consultants, individuals who have represented themselves to be independent contractors, persons who the Corporation does not consider to be employees or other similarly situated individuals, regardless of whether the individual is a common law employee of the Corporation.  The purpose of this provision is to exclude from participation in the Program all persons who may actually be common law employees of the Corporation, but who are not paid as though they were employees of the Corporation regardless of whether that exclusion is correct.

### *Excess Aggregate 401(k) Contributions*

The term "Excess Aggregate 401(k) Contributions" means, with respect to any Plan Year, the excess of:

(1) the aggregate amount of contributions actually taken into account in computing the numerator of the Average Actual Deferral Percentage of Highly Compensated Employees, over

(2) the maximum amount of such contributions permitted by the Average Deferral Percentage tests under Section 401(k) of the Code (determined by hypothetically reducing contributions made on behalf of Highly Compensated Employees in order of the Actual Deferral Percentage beginning with the highest of such percentages).

### *Excess Aggregate 401(m) Contributions*

The term "Excess Aggregate 401(m) Contributions" means, with respect to any Plan Year, the excess of:

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(1)  the aggregate Contribution Percentage Amounts actually taken into account in computing the Contribution Percentage of Highly Compensated Employees, over

(2)  the maximum Contribution Percentage Amounts permitted by the Average Contribution Percentage test (determined by hypothetically reducing contributions made on behalf of Highly Compensated Employees in order of the Contribution Percentage Amounts beginning with the highest of such percentages).

### Excess Elective Deferrals

The term "Excess Elective Deferrals" means those Elective Deferrals that are includable in a Participant's gross income under Section 402(g) of the Code to the extent such Participant's Elective Deferrals for a taxable year exceed the dollar limitation under such Code Section.  In the event a Participant has Excess Elective Deferrals in any one calendar year, the Administrator will distribute the Excess Elective Deferrals, together with applicable earnings or losses thereon through the date of distribution, to the Participant by April 15th of the calendar year following the calendar year of the Excess Elective Deferrals.  Excess Elective Deferrals will be adjusted for any income or loss up to the date of distribution.

### Financial Hardship Distribution

The term "Financial Hardship Distribution" means a distribution of elective deferrals that may be made to a Participant in the event of a hardship. A Financial Hardship Distribution may only be made to a Participant on account of an immediate and heavy financial need of the Employee and where the distribution is necessary to satisfy the immediate and heavy financial need.

(1) The following are the only financial needs considered immediate and heavy:

   (A)  expenses incurred for medical care, described in Section 213(d) of the Code, of the Employee, the Employee's spouse or dependents;

   (B)  purchase (excluding mortgage payments) of the Employee's principal residence;

   (C)  payments necessary to prevent the eviction of the Employee from, or a foreclosure on the mortgage of, the Employee's principal residence;

   (D)  payment of tuition and related educational fees for the next 12 months of post-secondary education for the Employee, the Employee's spouse, children or dependents;

   (E)  payment of funeral or burial expenses for the Employee's deceased parent, spouse, child or dependent; and

   (F)  expenses to repair damage to the Employee's principal residence that would qualify for a casualty loss deduction under Section 165 (determined without regard to whether the loss exceeds 10 percent of adjusted gross income).

(2)  A distribution will only be considered necessary to satisfy an immediate and heavy need if:

   (A) the distribution is not in excess of the amount of the immediate and heavy financial need (including amounts necessary to pay any federal, state or local income taxes or penalties reasonably anticipated to result from the distribution); and

   (B) the Employee has obtained all distributions, other than hardship distributions, and all nontaxable loans under all plans maintained by the Corporation.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

### Flexible Compensation Payment

The term "Flexible Compensation Payment" means an annual compensation payment paid by the Corporation in an amount determined by and at the discretion of the Corporation, which Employees hired or with length of service dates prior to January 1, 2001, may elect to receive in a lump-sum amount or installment payments, or to contribute into their Account.

### Highly Compensated Employees

The term "Highly Compensated Employees" includes highly compensated active Employees and highly compensated former Employees who:

(1)  in the preceding year, received compensation (as defined in Section 414(q)(4) of the Code) from the Corporation in excess of $105,000 (as adjusted under Section 414(q)(1) the Code); or

(2)  are 5-percent owners at any time during the year or the preceding year.

### Leased Employees

The term "Leased Employee" means any person who (other than an employee of the Corporation), pursuant to an agreement between the Corporation and any leasing organization, has performed services for the Corporation on a substantially full-time basis for a period of at least one year, and such services are performed under the primary direction or control of the Corporation.  Contributions or benefits provided to a Leased Employee by the leasing organization which are attributable to services performed for the Corporation will be treated as provided by the Corporation.  A Leased Employee will not be considered an Employee of the Corporation if such employee is covered by the safe harbor requirements of Section 414(n)(5) of the Code.

### Named Fiduciary

The term "Named Fiduciary" means the Executive Committee of the Board of Directors of Delphi Corporation except as set forth in Article III, Sections 1(B) and 15.

### Normal Retirement Age

The term "Normal Retirement Age" means the attainment of age 65 by a Participant.

### Participant

The term "Participant" means an Employee, or former Employee, who has an Account under this Program.  An eligible spousal beneficiary as described in Article I, Section 12(B) may also be a Participant.

### Plan Year

The term "Plan Year" means the calendar year.

### Prime Rate

The term "Prime Rate" means the interest rate reported as the "Prime Rate" in the Eastern Edition of the *Wall Street Journal* in its general guide to money rates.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

### Program

The term "Program" means the Delphi Salaried Retirement Savings Program (formerly the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States).

### Program Recordkeeper

The term "Program Recordkeeper" means the party designated by the Administrator to maintain each Participant's individual Account records and to perform other services as agreed to by the Administrator and the Program Recordkeeper.

### Qualified Domestic Relations Order

The term "Qualified Domestic Relations Order" means a court order pursuant to Section 414(p) of the Code which provides for an apportionment of the Participant's accrued benefit between the Participant and any alternate payee.

### Recognition Award

The term "Recognition Award" means that element of direct pay that may be granted by the Corporation to the Employee in lump sum payments based upon the compensation guidelines established by the Corporation's division or staff.  Delphi may also grant recognition awards in lieu of, or in addition to, base salary increases when base pay is already at a competitive level.

### Roth Elective Deferrals

The term "Roth Elective Deferrals" means Participant elective deferrals that are includable in the Participant's gross income at the time deferred and have been irrevocably designated as Roth Elective Deferrals by the Participant in his or her deferral election.

### Salaried Incentive Plan

The "Salaried Incentive Plan" is a Corporation provided discretionary (at-risk) incentive compensation plan for eligible salaried classified Employees in the United States with payment dependent upon Delphi's business performance relative to pre-established performance metrics that are reviewed and determined for each performance period.  Incentive payouts are determined at the end of the performance period by Delphi's Board of Directors based upon Delphi's performance relative to the metrics target(s).

### Salaried Incentive Plan Payout

The term "Salaried Incentive Plan Payout" means for any Year of Formation the amount distributed to an eligible Employee under the Delphi Salaried Incentive Plan for Salaried Employees in the United States.

### Short Term Incentive Plan

The term "Short Term Incentive Plan" is a Corporation provided discretionary (at-risk) incentive compensation plan for eligible salaried executive Employees in the United States with payment dependent upon Delphi's business performance relative to pre-established performance metrics that are reviewed and determined for each performance period.  Incentive payouts are determined at the end of the performance period by Delphi's Board of Directors based upon Delphi's performance relative to the metrics target(s).

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

### Trust

The term "Trust" means the "Delphi Corporation Master Savings Trust."

### Trustee

The term "Trustee" means any person or entity appointed by the Named Fiduciary, or its delegate, to hold, invest, and distribute the assets of the Program.

### Year of Formation

The term "Year of Formation" means the calendar year in which Corporation Contributions and Employee contributions and deferrals are received.

### Year of Service

The term "Year of Service" means the following:

(1)   An Employee will complete one Year of Service when such Employee completes 750 hours of service in the 12 consecutive month period beginning with the Employee's employment commencement date. If an Employee fails to complete 750 hours of service in such period, such Employee will complete one year of service in the first 12 consecutive month period thereafter in which the Employee completes 750 hours of service, measured from each succeeding anniversary of the employment commencement date.  A year of service under this Section 18 will include service (i) with affiliated group members, (ii) rendered to the Corporation as a former Leased Employee (but only upon Employee application with substantiation of such service that is satisfactory to the Corporation), and (iii) rendered to the Corporation as an hourly-rate employee, in accordance with Section 414(b), (c), (m), (n), and (o) including all non-covered service with the Corporation.

(2)   An Employee will complete an hour of service under this Section for each hour paid by the Corporation for working or for having been entitled to work.  Any hours for which an Employee receives pay for having been entitled to work, irrespective of mitigation of damages, including back pay, will be credited to the period or periods so entitled, rather than to the period in which such pay is received.  There will be no duplication of any hours of service under this Section 18.  Each hour for which an Employee is paid, or entitled to payment, by the Corporation due to vacation, holiday, illness, disability, jury duty, military duty or leave of absence will be included.  The following periods of service will also be counted:

> (A)   an Employee's periods of service completed before and after an entity becomes an Affiliated Employer; and

> (B)   an Employee's periods of service with General Motors Corporation or its subsidiaries on or before January 1, 1999.

(3)   An Employee will incur a one year break-in-service in any consecutive 12 month period during which the Employee does not complete more than 375 hours of service, measured from the anniversary of the employment commencement date and each succeeding anniversary of the employment commencement date thereafter.  Any leave under the Family and Medical leave Act of 1993, as amended, of 500 hours of service or less will not be counted toward a break-in-service for purposes of vesting under this Plan.  An absence from work under the Family and Medical Leave Act of 1993 means, for example, an absence of no more than 12 weeks by reason of a maternity or paternity leave or serious health condition affecting the Employee or a family member.  Such hours of service will be credited in the year in which the absence commences if necessary to prevent incurring a one year break-in-service, otherwise such hours will be credited in the immediately following year.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(4)    Notwithstanding any of the foregoing provisions of this Section 18, effective January 1, 2000, an Employee will be credited with 95 hours of service for each semi-monthly pay period in which the Employee works and is compensated at any time during each such semi-monthly pay period.

**1% Delphi Benefit Contribution**

The term "1% Delphi Benefit Contribution" means the semi-monthly contribution made by the Corporation allocated to an eligible Employee's Account, equal to 1% of such Employee's Eligible Salary.  This Corporation Contribution is provided to certain Employees hired on or after January 1, 1993 and prior to January 1, 2001, effective with the first day of the month coinciding with or next following the completion of six months of service, except that if an Employee is rehired on or after January 1, 1993 with an adjusted service date prior to January 1, 1993, such Employee will not be eligible to receive a 1% Delphi Benefit Contribution amount.

---

**ARTICLE I**
**General Provisions of the Program**

**SECTION 1**
**Eligibility**

An Employee becomes eligible to participate and accumulate savings on the first day of employment. Employees transferred from General Motors Corporation prior to January 1, 2001 who, on the date of transfer, were eligible to participate in the General Motors Savings-Stock Purchase Program for Salaried Employees in the United States, were immediately eligible to participate in this Program.

A previously eligible Employee who returns to work following an earlier termination of employment will be eligible to participate immediately upon returning to work.

Employees on a Corporation-approved disability leave of absence, or certain special leaves of absence, continue to be eligible to accumulate savings while continuing to receive Eligible Salary continuation payments for a period not in excess of six months while on such leave.

Employees receiving payments under the Corporation's Separation Allowance Plan are ineligible to contribute to the Program. The following classes of individuals are ineligible to participate in the Program regardless of any other Program terms to the contrary, and regardless of whether the individual is a common law employee of the Employer:

(A)    Any worker who provides services to the Corporation where there is an agreement with a separate company under which the services are provided.  Such individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

(B)    Any worker who has signed an independent contractor agreement, consulting agreement, or other similar personal services contract with the Corporation; and

(C)    Any worker that the Corporation, in good faith, classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation in the Program all persons who may actually be common-law employees of the Corporation, but who are not paid as though they were employees of the Corporation regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

## SECTION 2
### Employee Deferrals and Contributions

(A)    Eligible Employees may elect to enter into a pre-tax salary reduction agreement with the Corporation which provides that the Employee accepts a reduction of up to 60% (in combination with any After-Tax Contributions) of their Eligible Salary in return for which the Corporation agrees to make Elective Deferrals to the Program on behalf of the Employee of equal amount. Any salary reduction elected by an Employee must be in whole percentages of the Employee's Eligible Salary, rounded to the nearest whole dollar.  The Corporation may limit the amount of salary reductions and corresponding Elective Deferrals to the Trust or deem such contributions to have been made as may be necessary to comply with Article III, Section 8, and provisions of the Code and the regulations thereunder.

The Employee may elect to change the salary reduction amount, or to have such reductions suspended at any time, or to withdraw contributions attributable to Elective Deferrals from the Program at any time after attaining age 59-1/2 without penalty, or prior to age 59-1/2 because of termination of employment, death, disability, Financial Hardship Distribution, or termination of the Program.

Employees hired on or after January 1, 2001, who have not entered into a salary reduction agreement within 90 days after their date of hire will be automatically enrolled in the Program 90 days after their date of hire at a pre-tax salary reduction rate of 3% of their Eligible Salary.   Elective Deferrals made pursuant to any such automatic salary reduction will be invested in the Pyramis Active Lifecycle investment option that coincides with the year in which the Participant attains age 65.  The automatic 3% salary reduction rate can be cancelled, increased, or decreased, or a change in the investment option election can be made upon the Employee's election, in the same manner as modifications may be made with respect to elective salary reductions, described above.

All Employees subject to automatic enrollment may withdraw without penalty the Elective Deferrals made pursuant to the automatic enrollment and related earnings if the withdrawal request is made no later than 90 days after the first payroll period in which automatic enrollment occurs.  Automatic salary reductions and corresponding Elective Deferrals otherwise are treated in all respects in the same manner, and subject to the same rules and restrictions, as salary reductions and corresponding Elective Deferrals made pursuant to elective salary deferrals.

(B)    In lieu of part, or all, of the pre-tax salary reductions an Employee otherwise may elect in accordance with subsection (A) of this Section 2, an eligible Employee may authorize the Corporation to deduct amounts from the Employee's paychecks on an after-tax basis for contribution to the Employee's Account.  Any such after-tax deductions are subject to the same rules and restrictions that apply with respect to salary reduction elections.

(C)    Any change in the rate of pre-tax salary reductions or After-Tax Contributions authorized by an Employee in accordance with this Section 2 will become effective as of the next pay period following the date appropriate direction is received and confirmed from the Employee by the Program Recordkeeper.

(D)    In addition to Elective Deferrals and After-Tax Contributions up to 60% of Eligible Salary as provided in subsections (A) and (B) of this Section 2, an eligible Employee (with an adjusted date of hire date before January 1, 2001) may elect, in lieu of receipt of a Flexible Compensation Payment to which such Employee is entitled, to have the Corporation contribute 100% of such amount to the Program, in 24 equal installments (or fewer if such payments terminate), as Additional Savings under this qualified cash or deferred arrangement.  Additional Savings are subject to the same requirements and limitations, and otherwise treated in all respects as, Elective Deferrals made pursuant to elective salary deferrals.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(E)   Each Employee will be fully vested in the Elective Deferrals, After-Tax Contributions, and Additional Savings when the amounts are credited to their Account, and no portion will be subject to forfeiture.


# SECTION 3
## Employee Rollovers from Other Qualified Plans

(A)   Once eligible to participate in the Program, an Employee may elect to make a rollover contribution to the Program, as permitted under Section 402(c) of the Code, in an amount not exceeding the total amount of taxable and non-taxable proceeds distributed by a similar qualified plan (1) maintained by a former employer or (2) under a Qualified Domestic Relations Order.  Rollover contributions of this kind may be invested in any of the funds offered under the Program.  Such contributions must be in cash and received by the Trustee (1) by a Direct Rollover from the trustee of the previous employer's qualified savings plan or (2) within 60 days following the Employee's receipt of the distribution from the former employer's plan. No Corporation Contributions will be credited on any such monies.

(B)   The Administrator may direct the Trustee to accept an Employee's funds transferred from a similar qualified plan and may direct the Trustee to transfer a Participant's funds to a similar qualified plan, provided such other qualified plan:

   (1)   is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer is a member; and

   (2)   permits such transfers.

(C)   Any funds transferred to this Program will be in cash  (with the exception of the one-time transfer relating to the establishment of this Program), accompanied by written instructions from the trustee setting forth the Employee for whose benefit such assets are being transferred and identifying the source of such accumulated funds.  No such transfers may be executed until:

   (1)   all outstanding loan amounts have been repaid, except (a) in the case of the one-time transfer relating to the establishment of this Program and (b) in the case of a transfer of assets from a qualified plan of a wholly owned subsidiary approved by the Corporation in which case any outstanding loan balances of an Employee under the transferring plan will be part of the transfer; and

   (2)   all of the Employee's account assets are fully vested.

   No Corporation Contributions will be credited on any such monies transferred to the Program.

   Notwithstanding the foregoing, the Program may not receive a transfer from another qualified plan if such other plan provides, or at any time had provided, benefits through alternative forms of distribution, including annuities, which are not available under this Program.

(D)   Rollover contribution amounts will be held by the Trustee pursuant to the provisions of this Program, and such amounts will not be subject to Forfeiture. All rollover contribution amounts allocated to a Participant's Account are subject to the Participant's investment direction.


# SECTION 4
## Corporation Contributions

(A)   The Corporation, at its sole discretion, may make a Matching Contribution on a portion of an Employee's Basic Savings to an eligible Employee's Account.  Effective October 1, the Corporation will make a Matching Contribution in an amount equal to 50% of the Employee's Basic Savings for those eligible

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

Employees who have completed six months of service. Notwithstanding the foregoing, the Corporation will not make any Matching Contributions with respect to any Basic Savings contributed by an Employee who is classified as Temporary.

(B)    The Corporation will not make any Matching Contributions with respect to any Additional Savings, rollover contributions, or transfer contributions made by Employees as provided for in Section 3 of this Article I.

(C)    With respect to Employees hired or rehired with a service date on or after January 1, 1993 and prior to January 1, 2001, the Corporation will make a nonelective contribution equal to 1% of such Employee's Eligible Salary (the 1% Delphi Benefit Contribution) effective with the first day of the month coinciding with or next following the completion of six months of service.  This 1% Delphi Benefit Contribution will be allocated to the Employee's Account whether or not such Employee elects to participate in the Program and it is subject to the Participant's investment direction. If an Employee has no investment option election in effect, the 1% Delphi Benefit Contribution will be invested in the Pyramis Active Lifecycle investment option that coincides with the year in which the Participant attains age 65. Notwithstanding the foregoing, Employees classified as Temporary or Flexible Service employees are not eligible to receive the 1% Delphi Benefit Contribution.

(D)    Effective October 1, 2008, for all eligible Employees, the Corporation will make a nonelective contribution (the Delphi Retirement Contribution) equal to 4% of such Employee's Eligible Salary, provided such Employee has completed six months of service.  This Delphi Retirement Contribution will be allocated to the Employee's Account whether or not such Employee elects to participate in the Program and is subject to the Participant's investment direction. If an Employee has no investment option election in effect, the Delphi Retirement Contribution will be invested in the Pyramis Active Lifecycle investment option that coincides with the year in which the Participant attains age 65.  Notwithstanding the foregoing, Employees classified as Temporary or Flexible Service employees are not eligible to receive the Delphi Retirement Contribution.

(E)    If any contribution by the Corporation to the Trust is:

(1)    made by reason of a good faith mistake of fact; or

(2)    believed by the Corporation in good faith to be deductible under Section 404 of the Code for the taxable year when paid (or treated as paid under Section 404(a)(6)), but the deduction is disallowed, the Trustee shall, upon request of the Corporation, return to the Corporation the excess of the amount contributed over the amount, if any, that would have been contributed had no mistake of fact occurred. Such excess will be reduced by the losses of the Trust attributable thereto, if and to the extent such losses exceed the gains and income attributable thereto. In no event is the return of contribution to cause any Participant's Account to be reduced to less than it would have been had the mistake or nondeductible amount not been contributed. No return of a contribution will be made more than one year after the mistaken payment of the contribution or disallowance of the deduction occurred.

## SECTION 5
### Investment of Employee Contributions

(A) The Trustee will invest an Employee's Basic Savings and Additional Savings, in 10% increments, as the Participant directs from among such investment options as the Administrator may make available from time to time.  The Plan Sponsor may change the investment options offered under the Program at any time, including with respect to already invested amounts. The Administrator shall prescribe the manner in which such directions may be made or changed, the dates as of which they will be effective and the allocation of Accounts with respect to which no directions are submitted.  Any other assets of the

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

Trust not specified in this Section will be invested by the Trustee in accordance with the Administrator's instructions. These investment elections will apply to the investment of Corporation Contributions in Section 6 below.

(B) Both (1) rollover contributions and (2) those Flexible Compensation Payments which, prior to distribution of such payment(s), an Employee elects to invest in the Program, will be invested in the same investment option(s) elected by the Employee for other Program contributions of Additional Savings. If an Employee has no investment option election in effect, the rollover contribution and/or Flexible Compensation Payment will be invested in the Pyramis Active Lifecycle Fund that coincides with the year in which the Participant attains age 65.

## SECTION 6
### Investment of Corporation Contributions

All Corporation Contributions for the Year of Formation will be invested in the available investment option chosen by the Participant as described in Section 6 above. If no election is made, the contributions will be invested entirely in the Pyramis Active Lifecycle Fund that coincides with the year in which the Participant attains age 65; except that Elective Deferrals made pursuant to an automatic salary reduction described in Section 2(A) of this Article I will be invested in the Pyramis Active Lifecycle Fund.

## SECTION 7
### Investment of Income Received on
### Participant Savings and Corporation Contributions

Dividends and other earnings attributable to the available investment funds in each Participant's Account will be reinvested in the respective funds.

## SECTION 8
### Exchange of Participant Assets

Assets being held in a Participant's Account may be exchanged from one investment option to another investment option, as follows:

(A)    A Participant may elect to exchange assets in their Account on any Business Day.

(B)    Any election to exchange Account assets will be as of the Effective Date of Exchange of Assets.

(C)    Any election to exchange Account assets will be irrevocable as of the close of business (normally 4:00 p.m. E.T.) on the Business Day such election is received and confirmed by the Program Recordkeeper.

(D)    Delphi reserves the right to modify/assess redemption fees and suspend exchanges involving any of the investment funds offered under the Program in those instances where trading in such fund(s) might adversely impact the operation or investment returns of such fund(s) or exceed the available liquidity for such fund(s).

(E)    The fund provider reserves the right to modify or suspend exchanges among the mutual funds as described in its prospectuses. The fund provider also reserves the right, under circumstances described in its prospectuses, to suspend or delay purchases and/or redemptions from its funds, which might, in turn, delay a Participant's exchanges to or from the funds.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

## SECTION 9
## Formation of Classes

A separate class will be formed during each Year of Formation into which the assets derived from each Employee's contributions and the related Corporation Contributions and all earnings thereon will be placed.

## SECTION 10
## Vesting

Account assets derived from Employee deferrals and contributions, all related Corporation Contributions, and all earnings thereon will vest immediately upon allocation to the Account of the Employee, except that for an Employee with less than three Years of Service, all Corporation Contributions and earnings thereon will vest on the January 1 immediately following completion of the Year of Formation. Once an Employee attains three Years of Service, all related Corporation Contributions and earnings thereon will vest immediately upon allocation to the Account of the Employee. For an Employee who is part of a divestiture, split-off, or spin-off with less than three Years of Service, all assets in such Employee's Account will be fully vested at the time of such transaction. Notwithstanding the above, all Corporation Contributions and earnings thereon will vest upon the Employee attaining Normal Retirement Age.

## SECTION 11
## Withdrawal of Account Assets Prior to Separation From Employment

(A)   At any time, an active Participant may withdraw all or any part of Employee contributions (both Elective Deferrals and After-Tax Contributions) and vested Corporation Contributions in their Account. However, a Participant under age 65 with less than three Years of Service may not withdraw all or any part of Corporation Contributions in their Account that were contributed within the 24 months preceding the month of withdrawal. The amount requested for withdrawal will be obtained (a) from the specific investment option(s) in which the Participant has assets, as the Participant may elect, or (b) if the Participant has not elected, pro rata from each fund in the Participant's Account in the following order:

(1) After-Tax Contributions;
(2) Rollover contributions;
(3) Vested Corporation Contributions; and
(4) Elective Deferrals

(B)   Before a Participant under the age of 59-1/2 may withdraw Elective Deferrals, all available After-Tax Contribution assets and vested Corporation Contributions must be withdrawn from the Participant's Account.

(C)   After a Participant under the age of 59-1/2 has withdrawn all assets other than Elective Deferrals from his or her Account, pursuant to subsection (A) of this Section 11, a Participant, other than an eligible spousal beneficiary, who encounters a Financial Hardship may withdraw Elective Deferrals from the Participant's Account upon the approval of the Named Fiduciary or its delegate, provided such Participant previously has taken all available asset distributions, withdrawals (except withdrawals of Part B contributions to the Retirement Program for Salaried Employees), and loans under all applicable plans maintained by the Corporation. The amount of Elective Deferrals that may be withdrawn for a Financial Hardship will be limited to the lesser of:

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

    (1)   the total amount of Elective Deferrals, excluding earnings, in the Participant's Account as of the Effective Date of Withdrawal; or

    (2)   the amount required to meet the need for the Financial Hardship Distribution, including any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal.

(D)   Subject to the claim denial procedures described in Section 11 of Article III, the determination by the Named Fiduciary, or its delegate, as to whether an event requires a "Financial Hardship Distribution" will be final and binding on all persons.

(E)   A Participant who withdraws assets for a Financial Hardship Distribution in accordance with subsection (B) of this Section 11:

    (1)   will be suspended from accumulating further savings under this Program, and all other applicable plans maintained by the Corporation, for a period of 12 months following such withdrawal; and

    (2)   will have their annual Elective Deferrals and After-Tax Contributions limited, for the Plan Year next following the year in which the hardship withdrawal was made, to $15,000 (as adjusted for increases in cost-of-living under Section 402(g) of the Code) minus the amount of any Elective Deferrals and After-Tax Contributions made during the year in which the hardship occurred.

(F)   A Participant age 59-1/2 or older may withdraw Elective Deferrals from their Account on the same basis as other assets in accordance with this Section 11.

(G)   A Participant who has an outstanding loan(s) in accordance with Section 17 of this Article I will be permitted to make a withdrawal in accordance with this Section 11.

(H)   Any election to withdraw assets will be irrevocable as of the close of business, normally 4:00 p.m. E.T., on the Business Day such election is received and confirmed by the Program Recordkeeper.

## SECTION 12
## Settlement Upon Termination of Employment

(A)   Upon termination of employment of a Participant, the Participant may elect to receive all assets represented by the Participant's own savings and the vested Corporation Contributions and earnings thereon.  Settlement will be made as soon as reasonably practicable following any such election, except as otherwise specifically provided in this Article I.

(B)   In the event of the death of any Participant, the beneficiary or beneficiaries designated pursuant to Section 7 of Article III will receive all assets represented by such deceased Participant's savings and the Corporation Contributions and all earnings thereon.  The Date of Valuation will be the Effective Date of Withdrawal.  For this purpose, the Effective Date of Withdrawal will be as of the Business Day on which the Program Recordkeeper determines the appropriate beneficiary, or beneficiaries, and is in receipt of all necessary information and directions to process the settlement.

    Notwithstanding the above, an eligible spousal beneficiary is able to retain a deceased Participant's Account assets in the Program to the same extent as if the spousal beneficiary was a Participant in the Program.  Such surviving spouse may elect to receive the assets in a lump sum at any time.  While assets remain in the Program, the surviving spouse may (1) exchange assets among the various available investment options; (2) elect a partial distribution; (3) elect to receive installment payments; (4) file with the Program Recordkeeper a written designation of a beneficiary or beneficiaries; and (5) initiate a loan. However, the eligible spousal beneficiary may not make contributions to the Program.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

## SECTION 13
## Distribution of Assets

(A)  Assets in a Participant's Account will be retained in the Program until distribution or withdrawal pursuant to this Article I.  Unless the Participant elects to defer a distribution to a later date, a distribution of a Participant's Account will commence no later than 60 days after the Plan Year in which the last of the following events occur: (1) attainment of Normal Retirement Age; (2) the 10th anniversary of the date the Participant began participating; or (3) the Participant's termination of employment.

(B)  Any assets in a Participant's Account, retained in the Program pursuant to subsection (A) of this Section 13, will be delivered to the Participant as soon as practicable following an appropriate election to withdraw such assets, except as otherwise may be specifically provided this Article I.  In case of termination of employment by reason of death, assets retained in the Program will be delivered, pursuant to Section 12(B) of this Article, to the Participant's beneficiary or beneficiaries designated pursuant to Section 7 of Article III.

(C)  If a Participant terminates employment, and on the Effective Date of Termination the value of the Participant's vested assets represented by the Participant's own savings and the Corporation Contributions and all earnings thereon is not, and was not at the time of a prior distribution, greater than $1,000, such Participant will receive a distribution of the entire amount of such assets pursuant to this Section 13, and such distribution will be made upon the earlier of (1) the Participant's request for a settlement, or (2) 60 days following the month in which the Participant's termination of employment with the Corporation occurs.

If a Participant terminates employment and the value of the Participant's vested assets represented by the Participant's own savings and the Corporation Contributions and all earnings thereon exceeds $1,000 on the Effective Date of Termination, such Participant may elect to receive a distribution of such assets pursuant to Section 12 of this Article I.  Unless a Participant otherwise elects, settlement of all of the assets in the Participant's Account will be made and distributed upon the later of 60 days following the month in which (1) the Participant's termination of employment with the Corporation occurs, or (2) the Participant attains age 65.

Any Corporation Contributions not vested on the Effective Date of Termination will be treated as a forfeiture in accordance with Section 5 of Article III.

During any period assets remain in the Program following termination of employment, the Participant may exchange all vested Account assets pursuant to provisions of the Program and may borrow against such assets as provided in Section 17 of this Article I.  If a Participant does not request a total distribution of their Account following termination of employment, such Participant subsequently may request a withdrawal of such assets pursuant to the provisions of the Program.  The Date of Valuation will be the Effective Date of Withdrawal.

(D)  If a Participant receives a distribution pursuant to subsection (C) of this Section 13, and the Participant subsequently becomes eligible to participate in the Program before incurring five consecutive one year breaks in service following the date of distribution, the Participant will have the right to restore any non-vested Corporation Contributions related to such distribution (excluding any gains), to the extent forfeited, upon the repayment to the Program of the full amount of the distribution (including all Employee savings and Corporation Contributions).

All repayments made pursuant to this provision must be made before the earlier of five years after the Participant is re-employed, or when the Participant incurs five consecutive one-year breaks in service following the date of the distribution.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

If a Participant does not receive a distribution pursuant to subsection (C) of this Section 13, and the Participant subsequently becomes eligible to participate in the Program before incurring five consecutive one year breaks in service following termination of employment, the Corporation Contributions not vested will be restored on behalf of such Participant upon receipt of appropriate direction from the Participant by the Program Recordkeeper.

Any such restored Corporation Contributions not vested on the earlier date of distribution will vest subsequently, in accordance with Section 10 of this Article I, provided that:

    (1)   all repaid contributions and restored Corporation Contributions have remained continuously in the Program; and

    (2)   the Participant was eligible to participate.

(E)   Notwithstanding any provisions of the Program to the contrary that would otherwise limit a Distributee's election under this Section 13, a Distributee may elect, at the time and in the manner prescribed by the Administrator, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

## SECTION 14
## Election to Defer Distribution at Termination

(A)   Upon a Participant's termination of employment (1) by retirement under any Delphi Corporation retirement program or pension plan maintained within the Delphi controlled group of corporations, or (2) for any other reason, the Participant may elect to defer continuously, to the extent permissible in subsection (C) of this Section 14, the distribution of all assets credited to their Account.  During such deferral period, the Participant may exchange all unrestricted assets pursuant to the provisions of the Program, and may borrow against such assets as provided in Section 17 of this Article I.  At any time during such deferral period, the Participant may withdraw part of such assets pursuant to the provisions of the Program.  In addition to any partial withdrawal, a Participant may elect, at any time during such deferral period, the complete distribution of all assets in their Account.  Any such election will be irrevocable as of the close of business (normally 4:00 p.m. E.T.) on the Business Day such election is received and confirmed by the Program Recordkeeper.

(B)   In addition to any partial withdrawal, the Participant may elect upon termination of employment or during the deferral period pursuant to subsection (A) of this Section 14, to have the assets in their Account distributed in installment payments.

    (1)   Installment payments will be made on a calendar month, calendar quarter, semi-annual, or annual basis, as elected by the Participant.

    (2)   Installments will be in whole dollar amounts, with $1,200 established as the minimum annual installment amount.

    (3)   The amount elected for installment payments will be obtained pro rata from each fund in the Participant's Account in the following order: (i) assets obtained with After-Tax Contributions until exhausted, and then (ii) assets obtained with rollover contributions, Corporation Contributions, and Elective Deferrals.

    (4)   The Participant may change the timing and amount of any installment elected, or discontinue installment payments, except as otherwise may be provided in subsection (C) of this Section 14.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

   (5)  If the Participant elects to receive installment payments, such payments will commence not sooner than the first of the month following the month in which the Program Recordkeeper receives the Participant's request in an appropriate form.

   (6)  Solely for purposes of this Section 14, the Current Market Value of a Participant's assets will be determined as of the first day of each monthly, quarterly, semi-annual, or annual installment payment. If the first day of the month is on a weekend or holiday observed by the New York Stock Exchange, the installment payment will be valued as of the prior Business Day.

(C)  If, as of the end of the year prior to the year in which any retired or terminated Participant attains age 70-1/2, the Participant has not withdrawn all assets in their Account, and the amount withdrawn for the year in which the Participant attains age 70-1/2 is less than the minimum annual installment amount, commencing not later than April 1 of the year following attainment of age 70-1/2, minimum annual installment amounts will be determined and paid to the Participant from their Account assets. The cumulative amount of any Participant-elected installment amounts or any partial withdrawal will first be used to satisfy the minimum annual installment amount applicable for such year and will be in accordance with regulations prescribed by the Secretary of the Treasury of the United States, including the statutory and incidental death benefit requirements of Section 401(a)(9) of the Code.

   (1)  The minimum annual installment amount will be calculated by dividing the Participant's Account balance as of December 31 of the year prior to the year for which such distribution is made by the Participant's remaining life expectancy based on the actuarial life expectancy tables published under the Code, or, if elected by such Participant, the combined life expectancy of the Participant and the Participant's beneficiary.

   (2)  If the Participant:

      (a)  has elected to have minimum installment amounts calculated based on the combined life expectancy of the Participant and the Participant's designated beneficiary; and

      (b)  such designated beneficiary is not the Participant's spouse; and

      (c)  such designated beneficiary is more than ten years younger than the Participant, then the designated beneficiary's life expectancy, solely for purposes of calculating the minimum installment amount, will be deemed to be the Participant's life expectancy, less ten years.

(D)  Any retired or terminated Participant who is subject to the minimum annual installment provisions under subsection (C) of this Section 14 will continue to be permitted to exchange Account assets among the Program investment options. Further, any such Participant may withdraw all or part of their Account assets, as provided under subsection (A) of this Section 14.

## SECTION 15
## Attainment of Age 70-1/2

(A)  All distributions required under this Program will be determined and made in accordance with Section 401(a)(9) of the Code and the corresponding Treasury regulations, including the incidental death benefit requirement of Section 401(a)(9)(G). The provisions of this Program reflecting the requirements of Section 401(a)(9) shall override any distribution options which are inconsistent with Section 401(a)(9).

(B)  If a Participant attains age 70-1/2 and such Participant has not terminated employment, a distribution of the Participant's assets will be made upon termination of employment pursuant to Section 13.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(C)  Definitions.

    (1) Beneficiary.  The individual who is designated as the Beneficiary under Section 7, Article III and is the designated Beneficiary under section 401(a)(9) of the Code and section 1.401(a)(9)-4 of the Treasury regulations.

    (2) Distribution calendar year.  A calendar year for which a minimum distribution is required.  For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's Required Beginning Date.  For the distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which distributions are required to begin under section (H).  The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's Required Beginning Date.  The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's Required Beginning Date occurs, will be made on or before December 31 of that distribution calendar year.

    (3) Life expectancy.  Life expectancy as computed by use of one of the following tables, as appropriate: (1) the Single Life Table, or (2) the Joint and last Survivor Table in section 1.401(a)(9)-9 of the Treasury regulations.

    (4) Participant's Account balance.  The Account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the Account balance as of dates in the valuation calendar year after the valuation date and decreased by distributions made in the valuation calendar year after the valuation date.  The Account balance for the valuation calendar year includes any amounts rolled over or transferred to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

    (5) Required Beginning Date.  A Participant's Required Beginning Date is the April 1st following the later of: (i) the calendar year in which the Participant attains age 70½ or (ii) the calendar year in which the Participant terminates employment with the Employer.  Notwithstanding the foregoing, the Required Beginning Date of a Participant who is a 5% owner within the meaning of Section 416 of the Code shall be April 1st following the calendar year in which the Participant attains age 70½.

(D)  Unless a Participant makes an affirmative written election stating otherwise, the minimum distribution required for the Participant's initial distribution calendar year shall be made by December 31st of that distribution year.  If a Participant makes an affirmative written election, the minimum distribution required for the Participant's initial distribution calendar year shall be made by April 1st of the subsequent calendar year.  The minimum distribution for other calendar years, including the minimum distribution for the distribution calendar year in which the Employee's required beginning date occurs, shall be made on or before December 31 of that distribution calendar year.

(E)  Death of Participant Before Distributions Begin.

    (1) If the Participant dies before distributions begin, the Participant's Account will be distributed, or begin to be distributed, no later than as follows:

        (a) If the Participant's surviving spouse is the Participant's sole Beneficiary, then distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died, or by December 31 of the calendar year in which the Participant would have attained age 70½ if later.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(b) If the Participant's surviving spouse is not the Participant's sole Beneficiary, the distributions to the Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

(c) If there is no Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's Account will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

(d) If the Participant's surviving spouse is the Participant's sole Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this subsection (E), other than subsection (E)(1), will apply as if the surviving spouse were the Participant.

(2) For purposes of this subsection (E) and subsection (H), unless subsection (E)(1)(d) applies, distributions are considered to begin on the Participant's Required Beginning Date. If section (E)(1)(d) applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under subsection (E)(1). If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's Required Beginning Date (or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under subsection (E)(1)), the date distributions are considered to begin is the date distributions actually commence.

(F) Forms of Distribution. Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the Required Beginning Date, as of the first distribution calendar year, distributions will be made in accordance with sections (G) and (H) of this Section 15. If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of section 401(a)(9) of the Code and the Treasury regulations.

(G) Amount of Required Minimum Distribution For Each Distribution Calendar Year During Participant's Lifetime. During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

(1) the quotient obtained by dividing the Participant's Account by the distribution period in the Uniform Lifetime Table set forth in Section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's age as of the Participant's birthday in the distribution calendar year; or

(2) if the Participant's sole Beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's Account by the number in the Joint and Last Survivor Table set forth in section 1.401(a)(9)-9 of the Treasury regulations, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

(H) Required Minimum Distributions After Participant's Death.

(1) Death On or After Date Distributions Begin and Participant Survived by Beneficiary. If the Participant dies on or after the date distributions begin and there is a Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's Beneficiary, determined as follows:

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(a) The Participant's remaining life expectancy is calculated in accordance with the Single Life Table found in Section 1.401(a)(9)-9 of the regulations, Q&A-1, using the age of the Participant in the year of death, reduced by one for each subsequent year.

(b) If the Participant's surviving spouse is the Participant's sole Beneficiary, the remaining life expectancy of the surviving spouse is calculated in accordance with the Single Life Table found in Section 1.401(a)(9)-9 of the regulations for each distribution calendar year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year.  For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

(c) If the Participant's surviving spouse is not the Participant's sole Beneficiary, the Beneficiary's remaining life expectancy is calculated under the Single Life Table using the age of the beneficiary in the year following the year of the Participant's death, reduced by one for each subsequent year.

(2) Death On or After Date Distributions Begin and No Beneficiary.  If the Participant dies on or after the date distributions begin and there is no Beneficiary as of the September 30 of the year after the year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account by the Participant's remaining life expectancy under the Single Life Table calculated using the age of the Participant in the year of death, reduced by one for each subsequent year.

## SECTION 16
## Undeliverable Assets

In the event a distribution to a Participant or the Participant's beneficiary cannot be made because the identity or location of such Participant or beneficiary cannot be determined after reasonable efforts, and if the Participant's settlement remains undistributed for a period of one year from the Date of Valuation, the Administrator may direct that the distribution of assets, and any earnings on such assets, be returned to the Trust fund and liquidated.  All liability for payment thereof terminates; provided, however, if the identity or location of the Participant or beneficiary is determined subsequently, the value of the assets at the Date of Valuation will be paid from the Trust to such person in a single sum. No interest will be paid on such assets after such Date of Valuation.  Any assets so liquidated will be:

(1)   paid to the Participant or beneficiary when the identity or location is determined; or

(2)   applied to reduce Corporation Contributions made pursuant to Section 4 of this Article I.

Upon settlement pursuant to this Section 16, a Participant will receive cash based on the Current Market Value of the assets in their account on the Date of Valuation.

## SECTION 17
## Loans

(A) The Trustee may, upon written request of and pursuant to the Participant loan program established by the Administrator, make loans to Participants under the following circumstances:

(1) Loans shall be made available to all Participants and Beneficiaries on a reasonably equivalent basis;

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(2)   Loans shall not be made available to Highly Compensated Employees in an amount greater than the amount made available to other Employees;

(3)   Loans must be adequately secured and bear a reasonable interest rate (comparable to rates charged by commercial lending institutions for loans of similar terms);

(4)   No Participant loan shall exceed the present value of the Participant's vested Account;

(5)   Loans will be granted in whole dollar amounts with $1,000 as the minimum loan amount;

(6)   In the event of default, foreclosure on the note and attachment of security will occur.

(B)   A Participant or a surviving spousal beneficiary, who has satisfied the eligibility requirements of this Program may borrow from assets in their Account.

(C)   Notwithstanding the provisions of Section 17(A), the maximum loan amount (when added to the outstanding balance of all loans under all applicable plans maintained by the Corporation) will be the lesser of:

(1)   fifty thousand dollars ($50,000) reduced by the excess (if any) of the highest outstanding balance of loans during the one year period ending on the day before the loan is made, over the outstanding balance of loans from the Plan on the date the loan is made; or

(2)   one-half of the Current Market Value of all vested assets in the Participant's Account.

For purposes of the above limitation, all loans from all plans maintained by the Corporation [or its subsidiaries in accordance with Section 414(b), (c), or (m) of the Code] will be aggregated.

(D)   Loans will be granted for a minimum term of six months, with additional increments of six months as the Participant may elect, to a maximum of five years, or to a maximum of ten years in the event the loan is for the purchase or construction of the principal residence of the Participant, provided a Participant may not elect a term which will result in monthly repayments of less than fifty dollars ($50).

(E)   Loans will bear a rate of interest which will be the Prime Rate as of the last Business Day of the calendar quarter immediately preceding the date the Participant gives appropriate direction for a loan to the Program Recordkeeper. The interest rate will remain the same throughout the term of the loan.

(F)   For purposes of this Section 17, the Current Market Value of a Participant's assets will be determined on the Effective Date of the Loan.

(G)   A Participant may be granted a loan no more frequently than one time each calendar year, or such longer period of time as the Administrator in its sole discretion may, from time to time, establish applicable to all Participants, provided a Participant who makes application for a loan prior to full repayment of a previous loan(s) will be granted an additional loan only if the total of the outstanding amount of all of the Participant's loans does not exceed the maximum amount permitted in accordance with subsection (C) of this Section 17.

(H)   A Participant may have no more than five loans outstanding at any one time.

(I)   Each loan will be evidenced by a written Participant loan agreement that specifies:

(1)   the amount of the loan;

(2)   the terms of the loan;

(3)   the duration of the loan; and

(4)   the repayment schedule, showing payments to be made in a level amount which will fully amortize the loan over its duration.

By endorsing and either cashing or depositing the check representing the loan, a Participant will acknowledge receipt of the Participant loan agreement and agree to the terms and conditions contained therein.

(J)   Cash equal to the value of any loan granted will be obtained by liquidating assets in the Participant's Account in the following order:

(1)   assets obtained with Elective Deferrals;

(2)   assets obtained with vested Corporation Contributions;

(3)   assets obtained with After-Tax Contributions;

(4)   any other assets in the Participant's account to the extent vested.

Assets in the Participant's Account will be liquidated, based on the hierarchy noted above, to the extent necessary for the loan amount requested.  Within each hierarchy, the assets will be liquidated pro rata.

(K)   Repayment of a loan will be through after-tax payroll deductions, except that if the Participant is not an active Employee of the Corporation, repayment will be through monthly loan payments. Payments of principal and interest will be applied to reduce the outstanding balance of a loan.  Loan repayment amounts will be allocated to the Participant's Account and invested into the same investment option(s) elected by the Participant for current contributions.

Investment option elections may be changed by the Participant on any Business Day of the month.  In accordance with rules established by the Administrator, a Participant will be entitled to prepay the total outstanding balance on any loan (including interest) granted under the Program or make partial prepayment on any Business Day without penalty.

(L)   A Participant with an outstanding loan who is placed on an unpaid leave of absence status for any reason will be entitled to:

(1)   make monthly loan payments equivalent in value to the payments deducted previously from the Participant's paycheck; or

(2)   suspend monthly loan payments (but not the accrual of interest) for a period of up to 12 months;

provided all loans will be due and payable no later than five years from the date the respective loans were granted (or ten years in the event of a loan for the purchase or construction of the principal residence of the Participant).

(M)   No earnings will accrue to the Participant's Account with respect to the outstanding balance of any loan.

(N)   All Participants who terminate employment for any reason (other than death), including retirement, will continue to make monthly loan payments or may make a lump-sum cash payment equal to the remaining outstanding balance of the loan(s), including interest.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

For any such Participant, loans will be due and payable as of the earlier of:

(1)   five years following the Effective Date of Loan (ten years in the event the loan is for the purchase or construction of the principal residence of the Participant); or

(2)   the Effective Date of Withdrawal by the Participant.

(O)   In the event a Participant fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the Participant will be irrevocably deemed to have received a distribution of assets on such last day of the calendar quarter in an amount equal to the remaining outstanding principal amount and accrued interest on the loan, calculated to the date of such deemed distribution.

(P)   Except as provided for in subsection (N) of this Section 17, a Participant who, prior to their repayment of the total outstanding balance of a loan (including interest) from the Trust, terminates employment with the Corporation (including termination due to death or retirement), or is terminated by the Corporation and requests a final settlement of all assets in their Account, will be deemed to have elected a withdrawal in an amount equal to the outstanding balance of the loan (including interest) as of the Effective Date of Termination.

(Q)   The foregoing subsections of this Section 17 to the contrary notwithstanding, the Administrator reserves the right to declare moratoriums on the granting of new loans to Participants.  Such moratoriums will not affect a Participant's obligation to repay any outstanding loan.

(R)   An election to borrow assets will be irrevocable as of the close of business, normally 4:00 p.m. E.T., on the Business Day such election is received and confirmed by the Program Recordkeeper.

| |
|---|
| **ARTICLE II**<br>***Trust Fund*** |

**SECTION 1**
**General**

Concurrent with the date that an Employee's contributions and loan repayments are deducted from the Employee's pay, such Employee contributions, plus the Corporation Contributions under this Program, will be paid to the Trustee who will invest and account for all such amounts and earnings thereon.  The Corporation may, upon request, reimburse the Trustee for expenses incurred by the Trustee in maintaining the Trust fund, including brokerage commissions and transfer taxes on the purchase and sale of certain Trustee fees, and certain other administrative expenses.

All Participant assets invested in the Promark Income Fund will earn a specified interest rate (yield).  The specific interest rate (yield) to be earned on each of the investment contracts and on the fixed income portfolios will be reduced by fees inherent to these contracts and/or portfolios.  Such fees include operating costs (investment management, custody, risk premiums) and costs of maintaining each contract or portfolio.  The resulting rate is the net contract rate or net portfolio rate (yield).  Collectively, the dollar weighted average of the net contract rates on all the investment contracts and the net portfolio rate (yield) on the short-term fixed income portfolio represent the specified interest rate for the Promark Income Fund.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

With respect to the mutual funds available under the Program for investments, the investment return on Participant assets invested in such Funds will be reduced by management fees and other fund operating expenses, including 12(b) fees as disclosed in each mutual fund prospectus.

With respect to the Promark Funds available under the Program for investment, the investment return on Participant assets invested in such Funds will be reduced by management fees and other operating expenses (with the exception of the Promark Large Cap Index Fund whose expenses are paid by the Corporation).

## SECTION 2
### Investment by Trustee

The Trustee is to invest in investment instruments and mutual funds held by an investment manager, or managers appointed by the Named Fiduciary or its delegate, under a management agreement which specifies the terms and conditions of such funds.

The Program is intended to be an "ERISA Section 404(c) plan" as described in Section 404(c) of ERISA and shall be administered and interpreted in a manner consistent with that intent. The investment direction requirements and requirements relating to investment alternatives under the Program are intended to be satisfied herein, taking into account related communications to Participants and beneficiaries under the summary plan description for the Program and other communications. For purposes of ERISA section 404(c), the "identified plan fiduciary" shall be the Administrator. The Administrator may decline to implement Participant and investment instructions which would result in a prohibited transaction described in Section 406 of ERISA or section 4975 of the Code that would generate income taxable to the Program.

---

| ARTICLE III |
|---|
| ***Other Provisions of the Program*** |

---

## SECTION 1
### Named Fiduciary and Administration

(A)   The Executive Committee of the Corporation's Board of Directors will be the Named Fiduciary with respect to the Program, except as set forth under Section 1(B) and Section 15 of this Article III. The Executive Committee may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by ERISA.

(B)   Except as set forth in Section 15 of this Article III, General Motors Investment Management Corporation (GMIMCo) is the Named Fiduciary of this Program for purposes of investment of Program assets. GMIMCo may delegate authority to carry out such of its responsibilities, as it deems proper, to the extent permitted by ERISA.

(C)   Delphi Corporation is the Administrator. The Administrator has discretionary authority to construe, interpret, apply, and administer the Program. This includes the authority to make factual determinations. The Administrator may delegate various aspects of the Program Administration as it deems appropriate.

(D)   Various aspects of Program administration have been delegated to the Program Recordkeeper. In carrying out its delegated responsibilities, the Program Recordkeeper will have discretionary authority to construe, interpret, apply, and administer the Program provisions. The discretionary authority delegated to the Program Recordkeeper will, however, be limited to Program terms relevant to its delegated responsibilities and will not permit the Program Recordkeeper to render a determination or make any representation concerning benefits which are not provided by the express terms of the Program. The

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

Program Recordkeeper's actions will be given full force and effect unless determined by the Program Administrator to be contrary to the Program provisions or arbitrary and capricious.

(E)    The Employee Benefit Plans Committee (EBPC), as expressly delegated by the Board of Directors of the Corporation, has final discretionary authority to construe, interpret, apply, and administer the Program and serves as the final step of the Program appeal procedure.  This includes the authority to make factual determinations.  Any interpretation or determination regarding the Program made by the EBPC will be given full force and effect, unless it is proven that the interpretation or determination was arbitrary and capricious.


## SECTION 2
## Amendment, Modification, Suspension, or Termination

The Corporation reserves the right to amend, modify, suspend, or terminate the Program in whole or in part, at any time, by action of its Board of Directors or other individual or committee expressly authorized by the Board to take such action.  No oral statements can change the terms of this Program.  This Program can only be amended, in writing, by the Board of Directors or an appropriate individual or committee as designated by the Board of Directors.  Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provision not provided for under the Program or to change the eligibility criteria or other provisions of the Program.

No amendment may restrict or reduce the benefits provided to any Participant, if such amendment violates Section 411(d)(6) of the Code.


## SECTION 3
## Merger or Consolidation

In the event of any merger or consolidation with or transfer of assets or liabilities to any other plan or program, each Participant in the Program would, if the Program then terminated, receive the assets in their Account immediately after the merger, consolidation, or transfer which are at least equal in value to the assets they would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Program had then terminated.


## SECTION 4
## Distribution Upon Program Termination

In the event of termination or partial termination of the Program, the Administrator may direct the Trustee to:

(1)    continue to administer the Trust fund and pay Account balances in accordance with Article I, Section 13, to Participants affected by the termination of the Program upon their termination of employment, or to beneficiaries upon such a Participant's death, until the Trust fund has been liquidated; or

(2)    distribute the assets remaining in the Trust fund in a lump sum to Participants and beneficiaries in proportion to their respective Account balances.

In the event of termination, partial termination, or a complete discontinuance of contributions under the Program, the account balance of each affected Participant will be non-forfeitable.


## SECTION 5
## Corporation Contributions Not Vested

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

Assets representing the Corporation Contributions made pursuant to subsections (A) and (C) under Section 4 of Article I, and earnings thereon which are not vested prior to a Participant's termination of employment, will be maintained for such Participant until the earlier of a voluntary withdrawal, a distribution under Article I, Section 13(C), or the fifth anniversary of the termination of employment; thereafter, the Assets will be applied to reduce any subsequent contributions by the Corporation under subsection (A) and (C) under Section 4 of Article I and pay certain administrative expenses of the Program.

### SECTION 6
### Non-Assignability

It is a condition of the Program, and all rights of each Participant will be subject thereto, that, except as provided by Article I, Section 17 of the Program, no right or interest of any Participant in the Program or in the Participant's Account will be assignable or transferable by the Participant, or anyone claiming through the Participant, in whole or in part, either directly or by operation of law or otherwise, including, but not by way of limitation, execution, levy, garnishment, attachment, pledge, bankruptcy, or in any other manner, except (1) in accordance with the provisions of Section 12 of this Article relating to qualified domestic relations orders, (2) pursuant to a Participant's voluntary assignment of an amount not in excess of 10% of a distribution from the Program, or (3) through devolution by death or mental incompetency. Federal, state, and local income tax and taxes related to imputed income, however, will be withheld pursuant to federal, state, and local statutes or regulations unless, where permitted by applicable law, a Participant makes an election in an appropriate form to not have such withholding. No right or interest of any Participant in the Program or in the Participant's Account will be liable for, or subject to, any obligation or liability of such Participant.

### SECTION 7
### Designation of Beneficiaries in Event of Death

(A)    A Participant may file with the Program Recordkeeper a written designation of a beneficiary or beneficiaries with respect to all or part of the assets in the Account of the Participant. For a married Participant who dies, the entire balance of the Account will be paid to the surviving spouse unless the written beneficiary designation, identifying a person(s) other than the spouse, with respect to all or part of the assets in the Account of the Participant includes the written consent of the spouse, witnessed by a notary public. The written beneficiary designation filed with the Program Recordkeeper may be changed or revoked at any time by the action of the Participant and, if necessary, the spouse. No designation or change of beneficiary or beneficiaries will be effective until it is determined to be in order by the Program Recordkeeper, but when so determined it will be effective retroactively to the date of the instrument making the designation or change. In carrying out their delegated responsibilities, the Program Recordkeeper will have discretionary authority to construe, interpret, apply, and administer the Program provisions. The discretionary authority delegated to the Program Recordkeeper will, however, be limited to Program terms relevant to its delegated responsibilities, and will not permit the Program Recordkeeper to render a determination or make any representation concerning benefits which are not provided by the express terms of the Program. The Program Recordkeeper's actions will be given full force and effect unless determined by the Administrator to be contrary to Program provisions or arbitrary and capricious.

(B)    In the event an unmarried Participant does not file a written beneficiary designation, such a Participant will be deemed to have designated as beneficiary or beneficiaries under this Program the person or persons designated to receive Basic Life Insurance proceeds upon the death of such Participant under the Corporation's Life and Disability Benefits Program for Salaried Employees, unless such Participant will have assigned such life insurance.

(C)    A beneficiary or beneficiaries will receive, subject to provisions of Article I, Section 12(B) and Section 17(P) in the event of the Participant's death, assets in the Participant's Account in accordance with the applicable designation. If the Corporation will be in doubt as to the right of any beneficiary to receive any

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

such assets, the Corporation may deliver such assets to the estate of the Participant, in which case the Corporation will not have any further liability to anyone.

## SECTION 8
## Limitations on Contributions and Benefits

(A)    *General Provisions*

For purposes of this Section:

(1)    The term "Limitation Year" will mean the calendar year.

(2)    No contribution to this Program may exceed the limits provided under Section 404 of the Code for current deductibility for federal income tax purposes.

(3)    Contributions made to the Trust by the Corporation pursuant to Section 2(D) of Article I will be allocated to a Participant's Account within the current Limitation Year.

(4)    All defined benefit plans or programs of the Corporation will be treated as one defined benefit plan or program, and all defined contribution plans or programs will be treated as one defined contribution plan or program.

(5)    For purposes of this Section, the term "Annual Addition" will mean the sum, for any Limitation Year, of Employee contributions and Corporation Contributions and forfeitures allocated to an Employee's account under all defined contribution plans plus any Employee contributions to all defined benefit plans.  In addition, the sum will include Corporation Contributions to an individual medical benefits account, as defined in Section 415(l)(2) of the Code, under a pension or annuity plan of the Corporation, and contributions which are attributable to post-retirement medical benefits allocated to the separate account of a Key Employee under a welfare benefit fund, as defined in Section 419(e) of the Code.

(6)    For purposes of this Section, the term "Compensation" will mean compensation as defined under Section 414(s) of the Code and regulations thereunder and limited by Section 401(a)(17).

(B)    In no event will contributions or benefits under this Program exceed the limits of Section 415 of the Code and the regulations thereunder. In no event will the sum of an Employee's Annual Additions exceed the lesser of $44,000 (as adjusted for increases in cost-of-living under the Code) or 100% of such Employee's Compensation for any Limitation Year.

(C)    *Cash or Deferred Arrangement Limitations*

(1)    The Elective Deferrals election percentage by the eligible Highly Compensated Employees under the Program for a calendar year must meet one of the following tests using the current year testing method:

(a)    the actual Elective Deferrals election percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual Elective Deferrals election percentage of all other eligible Employees; or

(b)    the actual Elective Deferrals election percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual Elective Deferrals election percentage for all other eligible Employees and is not more than two

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

times (or, such lesser amount as the Secretary of the Treasury of the United States will prescribe) the actual Elective Deferrals election percentage of all other eligible Employees.

(2) For purposes of this limitation, the actual Elective Deferrals election percentage for the eligible Highly Compensated Employees and all other eligible Employees for a calendar year is the average of the ratios (calculated separately for each eligible Employee) of:

   (a) the amount of Elective Deferrals actually paid over to the Program Trust not later than two and one-half months after the calendar year on behalf of such eligible Employee for the calendar year to:

   (b) the Employee's Compensation for such calendar year.

(3) The amount of Elective Deferrals for a Highly Compensated Employee that exceeds the percentage limitations of subsection (C)(1) of this Section 8 will be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution will be determined by the Administrator under applicable tax regulations and will include earnings attributable to the excess Elective Deferrals through the date of distribution (or for Plan Years beginning after December 31, 2007, through the end of the Plan Year in which contributions related to the Elective Deferrals were made).

(4) An Employee's annual Elective Deferrals may not exceed $15,500 for 2008 (or as may be adjusted for increases in the cost-of-living under Section 402(g) the Code). Current Year contributions above this limitation will be contributed as After-Tax Contributions. In the event an Employee identifies an amount of Elective Deferrals as exceeding this limitation, as applied to this Program and all other plans in which the Employee participated, such amount will be distributed to the Employee and will include earnings attributable to the excess Elective Deferrals through the date of the distribution. In the event the Administrator identifies an amount in excess of the Limitation, the Employee will be deemed to have notified the Administrator and such amount will be distributed to the Employee.

(5) Special Rules

   (a) In the event that this Program satisfies the requirements of Sections 401(k), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Program, then this subsection 8(C) will be applied by determining the actual Elective Deferrals percentage of eligible Employees as if all such plans were a single plan.

   (b) The actual Elective Deferrals percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(k) of the Code that are maintained by the Corporation, will be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans will be treated as separate if mandatorily disaggregated under regulations under Section 401(k) of the Code.

   (c) In the event the limits of paragraph (D)(1) are exceeded, then the ADP of those Highly Compensated Employees will be reduced (beginning with such Highly Compensated Employee whose contribution is the highest) so that the limits are not exceeded. The amount by which each Highly Compensated Employee's Elective Deferrals is reduced will be treated as an Excess Aggregate 401(k) Contribution. The ADP of the Highly Compensated Employees is determined after any corrections are made. Excess Aggregate 401(k) Contributions (including amounts recharacterized) will be treated as annual additions.

(D)   *Limitations on Employee After-Tax Contributions and Delphi Matching Contributions*

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(1) The amount of all After-Tax Contributions and Matching Contributions made by and on behalf of the eligible Highly Compensated Employees under the Program for a calendar year must meet one of the following tests using the current year testing method:

    (a) the average contribution percentage of the eligible Highly Compensated Employees may not exceed 1.25 times the average contribution percentage of all other eligible Employees; or

    (b) the average contribution percentage of the eligible Highly Compensated Employees may not exceed (1) two percentage points more than the average contribution percentage of all other eligible Employees and (2) not more than two times (or such lesser amount as the Secretary of the Treasury will prescribe) the average contribution percentage of all other eligible Employees.

(2) For purposes of this subsection, the average contribution percentage for a calendar year is the average of the ratios (calculated separately for each eligible Employee) of the:

    (a) amount of After-Tax and Matching Contributions actually paid over to the Program Trust on behalf of such eligible Employees for the calendar year to:

    (b) the Employee's Compensation for such calendar year.

(3) The amount of a Participant's After-Tax Contributions that exceeds the percentage limitations of subsection (D)(1) of this Section 8 will be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution will be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include earnings attributable to the excess After-Tax Contributions through the date of distribution (or for Plan Years beginning after December 31, 2007, through the end of the Plan Year in which contributions related to the Elective Deferrals were made).
.

(4) The amount of Matching Contributions that exceeds the percentage limitations of subsection (D)(1) of this Section 8 will be forfeited, along with their earnings, and will be applied to pay Program expenses or to reduce future Corporation Contributions to the Plan. Forfeitures will be made no later than two and one-half months following the end of the Plan Year.

(5) Special Rules

    (a) In the event that this Program satisfies the requirements of Sections 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Program, then this subsection 8(D) will be applied by determining the average contribution percentage of eligible Employees as if all such plans were a single plan.

    (b) For purposes of this Section, the average contribution percentage for an eligible Highly Compensated Employee who is eligible to participate in two or more plans subject to Section 401(m) of the Code will be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans will be treated as separate if mandatorily disaggregated under regulations under Section 401(m) of the Code.

    (c) Notwithstanding any other provision of the Plan, Excess Aggregate 401(m) Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Contributions were allocated. Excess Contributions are allocated to the Highly Compensated Employees with the largest amounts of Elective Deferrals taken into account for the year in which the excess arose,

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

beginning with such and continuing in descending order until all the Excess Contribution have been allocated.  For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Contributions.

## SECTION 9
### Certain Provisions Required to Comply
### With Section 416 of the Internal Revenue Code

In any Plan Year in which the Program is a "Top-Heavy Plan," as defined in Section 416 of the Code, the requirements of this Section are applicable and must be satisfied.

(A)  *Definitions*

(1)  "Cumulative Account" will mean the sum of an Employee's accounts under a defined contribution plan (for an unaggregated plan), or under all defined contribution plans included in an Aggregation Group (for aggregated plans), determined as of the most recent plan valuation date within a 12-month period ending on the Determination Date, increased by any contributions due after such valuation date and before the Determination Date.

(2)  "Cumulative Accrued Benefit" means the sum of benefits under a defined benefit plan (for an unaggregated plan), or under all defined benefit plans included in an Aggregation Group (for aggregated plans), determined under the actuarial assumptions set forth in such plan or plans, as of the most recent plan valuation date within a 12-month period ending on the Determination Date as if the Employee voluntarily terminated service as of such valuation date.

(3)  "Aggregation Group" means a plan or group of plans which includes all defined benefit and defined contribution plans maintained by the Corporation in which a Key Employee is a Participant or which enables any plan in which a Key Employee is a Participant to meet the requirements of Sections 401(a)(4) or 410 of the Code, as well as any other plan or plans of the Corporation which, when considered as a group with the required Aggregation Group, would continue to satisfy the requirements of Sections 401(a)(4) and 410 of the Code.

(4)  "Determination Date" means the last day of the preceding Plan Year.

(5)  "Valuation Date" means the last day of a Plan Year as of which date Participants' Accounts will be valued at fair market value.

(6)  "Key Employee" means any employee described in Section 416(i)(1) of the Code and regulations thereunder.

(B)  *Vesting*

For any Plan Year in which the Program is Top Heavy, all Corporation Contributions will vest in accordance with, and subject to, the provisions of Section 10 of Article I.

(C)  *Minimum Contributions*

Minimum Corporation Contributions for a Participant who is not a Key Employee will be required under the Program for the Plan Year, as follows:

(1)  The amount of the minimum contribution will be the lesser of the following percentages of Compensation:

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

   (a)  three percent; or

   (b)  the highest percentage at which such contributions are made under the Program for the Plan Year on behalf of a Key Employee.

      (i)  For purposes of this paragraph (b), all defined contribution plans required to be included in an Aggregation Group will be treated as one plan.

      (ii)  This paragraph (b) will not apply if the Program is required to be included in an Aggregation Group, and the Program enables a defined benefit plan required to be included in the Aggregation Group to meet the requirements of Sections 401(a)(4) or 410 of the Code.

      (iii)  For purposes of this paragraph (b), the calculation of the percentage at which contributions are made for a Key Employee will be based only on their Compensation not in excess of $225,000 (or as may be adjusted by section 401(a)(17) of the Code).

  (2)  There will be disregarded for purposes of this subsection (C) any contributions to a salary reduction or a similar arrangement or contributions or benefits under Chapter 21 of the Code (relating to the Federal Insurance Contributions Act), Title II of the Social Security Act, or any other federal or state law.

  (3)  For purposes of this subsection (C), the term "Participants" will be deemed to refer to all Participants who have not separated from service at the end of the Plan Year.

  (4)  To the extent such a Participant is covered under a defined benefit plan maintained by the Corporation that is top-heavy for the Plan Year, the minimum contribution or benefit requirements for the plans will be met by this Program.  For this purpose, such Participants will be entitled to minimum Corporation Contributions of at least 5% of Compensation (or whatever amount is necessary in this instance to satisfy the requirements of Section 416, taking into account contributions and benefits provided under this Program and other plans of the Corporation).

(D)  *Distributions for Certain Key Employees*

Notwithstanding any other provision of this Program, all After-Tax  Contributions, rollover and transfer contributions, contributions restored pursuant to Section 13(D), Article I, and Elective Deferrals of a Key Employee who is a 5% owner (as defined in Section 416 of the Code) in the Plan Year in which the Employee attains age 70-1/2 will be distributed no later than April 1 of the following Plan Year (whether or not the Employee has yet retired).

(E)  *"Top-Heavy Plans"*

For any Plan Year in which the Program is a "Top-Heavy Plan" or a "Super Top-Heavy Plan," for purposes of the Code Section 415 limitations, the dollar limitations in the Defined Benefit Plan fraction and the Defined Contribution Plan Fraction will be multiplied by 1.0 rather than 1.25.  If the application of the provisions of this subsection (E) would cause any Participant to exceed the combined Section 415 limitations on contributions and benefits, then the application of the provisions of this subsection (E) will be suspended as to such Participant until such time as the Participant no longer exceeds the combined Section 415 limitations as modified by this subsection (E).  During the period of such suspension, there will be no Corporation Contributions, forfeitures, or voluntary non-deductible contributions allocated to such Participant under this or any other defined contribution plan of the Corporation, and there will be no accruals for such Participant under any defined benefit plan of the Corporation.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(F)    *Determination of Top Heaviness*

The determination of whether a plan is "Top-Heavy" will be made as follows:

(1)    If the Program is not required to be included in an Aggregation Group with other plans, then it will be "Top-Heavy" only if, when considered by itself, it is a "Top-Heavy Plan" and it is not included in a permissive Aggregation Group that is not a "Top-Heavy Group."

(2)    If the Program is required to be included in an Aggregation Group with other plans, then it will be "Top-Heavy" only if the Aggregation Group, including any permissively aggregated plans, is "Top-Heavy."

(3)    If a plan is not "Top-Heavy" and is not required to be included in an Aggregation Group, then it will not be "Top-Heavy" even if it is permissively aggregated in an Aggregation Group which is a "Top-Heavy Group."

(G)    *Calculation of "Top-Heavy" Ratios*

A plan will be "Top-Heavy" and an Aggregation Group will be a "Top-Heavy Group" with respect to any Plan Year if, as of the Determination Date, the sum of the Cumulative Accrued Benefits and the Cumulative Accounts of Key Employees exceeds 60% of a similar sum determined for all Employees, excluding former Key Employees.

(H)    *Determination of Super Top Heaviness*

A Plan will be a "Super Top-Heavy Plan" if it would be a "Top-Heavy Plan" under the provisions of subsection (F) of this Section, but substituting "90%" for "60%" in the ratio test in subsection (G) of this Section 9.

(I)    *Cumulative Accounts and Cumulative Accrued Benefits*

The Cumulative Accounts and Cumulative Accrued Benefits for any Employee will be determined as follows:

(1)    Accounts and benefits will be calculated to include all amounts attributable to both Corporation and Employee contributions.

(2)    Accounts and benefits will be increased by the aggregate distributions during the one-year period ending on the Determination Date made with respect to an Employee under the plan or plans as the case may be or under a terminated plan which, if it had not been terminated, would have been required to be included in the Aggregation Group.  A five-year period will be considered instead of a one-year period in the case of distributions made for a reason other than severance from employment, death, or disability.


# SECTION 10
## Participant Statements

Each Participant will be furnished a statement four times per year in hard copy format or as otherwise may be elected by the Participant, and in electronic format as frequently as desired.  The hardcopy or electronic format provides the assets credited to their Account.  Participants electing electronic statements will continue to receive electronic statements until they elect to receive hard copy statements.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

## SECTION 11
## Claim Denial Procedures

(A)    A claim for benefits under the Program must be presented in writing to the Administrator.  The Administrator will provide adequate notice to the person making the claim ("Claimant") in writing granting or denying the claim no later than 90 days after the date on which the claim is received.  If special circumstances (including, but not limited to, the advisability of a hearing) require a longer period, the Claimant will be notified in writing, prior to the expiration of the 90-day period, of the reasons for an extension of time; provided, however, that no extensions will be permitted beyond 90 days after expiration of the initial 90-day period.

(B)    If the claim is granted, the appropriate distribution or payment will be made.

(C)    If the claim is denied in whole or in part, the Administrator will provide the Claimant with a dated and signed written notice of such denial signed by the Administrator.  The notice will set forth, in a manner calculated to be understood by the Claimant :

(1)  the specific reason or reasons for the denial;

(2)  specific reference to pertinent Plan provisions on which the denial is based;

(3)  a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4)  an explanation of the review procedure set forth below and a statement of Claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

If no written determination is furnished to the Claimant within the 90-day period, then the claim will be deemed denied and the review procedure described below will become available to the Claimant.

(D)    A Claimant may obtain review of an adverse benefit determination by filing a written notice of appeal with the EBPC within 60 days after the determination date or, if later, within 60 days after the receipt of a written notice denying the claim.  The Administrator has delegated to the EBPC the authority necessary to construe, interpret, and administer the Program, including the authority to consider and decide all questions (of fact or otherwise) in connection with claims arising under the Program.  The EBPC will conduct a full and fair review, which will provide for the Claimant's right:

(1)  to be represented by an individual whom the Corporation determines has been properly authorized to act on Claimant's behalf;

(2)  to present written comments, documents, records, and any other information relating to the Claimant's claim for benefits under the Plan;

(3)  to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits; and

(4)  to have all comments, documents, records, and other information submitted by the Claimant relating to the claim reviewed.

(E)    The  EBPC's decision will be rendered no more than 60 days after the request for review, except that such period may be extended for an additional 60 days if the EBPC determines that special circumstances (including, but not limited to, the advisability of a hearing) require such extension.

(E)    If the claim is granted, the appropriate distribution or payment will be made.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

(F)    If the claim is denied in whole or in part, the EBPC, or its delegate, will promptly provide a Claimant with a written decision in a manner calculated to be understood by the Claimant setting forth:

(1)  the findings of fact;

(2)  the specific reason or reasons for the denial;

(3)  specific reference to pertinent Program provisions on which the denial is based;

(4)  a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits; and

(5)  a statement of the Claimant's right to bring a civil action under Section 502(a) of ERISA.

A Claimant must follow the claims and appeal procedures described in this Section 11 before taking action in any other forum regarding a claim for benefits under the Program.  Any suit or legal action initiated by a Claimant under the Program must be brought no later than one year following a final decision on the claim by the EBPC.  This one-year limitation period on suits for benefits applies in any forum where a Claimant initiates such suit or legal action.

# SECTION 12
## Qualified Domestic Relations Order

(A)    Upon receipt of a Domestic Relations Order (DRO) by the Program Recordkeeper, procedures consistent with Section 414(p) of the Code will be followed to determine the qualified status of any Domestic Relations Order.

(B)    Notices, as required under Section 414(p) of the Code, will be provided to the Participant and the Alternate Payee with respect to any DRO.

(C)    Within a reasonable period of time after receipt of a DRO, the Program Recordkeeper will determine whether such order is a QDRO.

(D)    The Program Recordkeeper will administer distributions under any QDRO.

(E)    For purposes of this Section, definitions will be as follows:

(1)    "Alternate Payee" means any spouse, former spouse, child, or other dependent of the Participant who is recognized by a DRO as having a right to receive all or a portion of the benefits payable under the Program with respect to such Participant.

(2)    "Domestic Relations Order" means any judgment, decree, or order (including approval of a property settlement agreement) which:

(a)    relates to the provisions of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a Participant's; and

(b)    is made pursuant to a state domestic relations law (including a community property law).

(3)    "Qualified Domestic Relations Order" means a Domestic Relations Order which meets the requirements of Section 414(p)(1) of the Code.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

## SECTION 13
### Treatment of Employees Who Are Employed by Foreign Business
### Entities in Which the Corporation Has a Substantial Ownership Interest

Notwithstanding any other provision of this Program, an employee who, at the request of the Corporation, accepts an employment assignment with a foreign business entity in which the Corporation has a substantial ownership interest will be eligible to participate in this Program during the period of such assignment.  Such employee will be eligible to contribute to the Program on the basis of the employee's base salary rate that would otherwise be in effect in the absence of such assignment.

## SECTION 14
### Effective Date of Program

The effective date of the amended Program is <u>October 1, 2008,</u> except as otherwise may be indicated herein.

Implementation of the Delphi Salaried Retirement Savings Program is contingent upon receipt of tax qualification of the Program under Sections 401(a), 401(k), and 4975(e)(7) of the Code.

## SECTION 15
### Investment Decisions

Any Participant or beneficiary who makes an investment election permitted under the Program, or otherwise exercises control permitted under the Program over the assets in the Participant's account, will be deemed the Named Fiduciary under ERISA responsible for such decisions to the extent that such designation is permissible under applicable law and that the investment election, or other exercise of control, is not protected by Section 404(c) of ERISA, as amended.

## SECTION 16
### Confidential Information

The Administrator, or its delegate, will be responsible for ensuring that sufficient procedures are in place and followed to safeguard the confidentiality (except to the extent necessary to comply with federal laws or state laws not pre-empted by ERISA) of information relating to the purchase, holding, and sale of securities, and the exercise of voting, tender, and similar voting rights with respect to such securities by Participants and beneficiaries.  If deemed necessary by the Administrator due to potential for undue employer influence with regard to exercise of stockholder rights, an independent party will be appointed by the Administrator to carry out instructions of Participants or beneficiaries relating to such rights.

## SECTION 17
### Service of Legal Process

Service of legal process on Delphi Corporation may be made at any office of the CT Corporation.  The CT Corporation, which maintains offices in all 50 states, is the statutory agent for services of legal process on Delphi Corporation.  The procedure for making such service generally is known to practicing attorneys.  Services of legal process also may be made upon Delphi Corporation at the Service of Process Office, Delphi Legal Staff, 5725 Delphi Drive, Troy, MI 48098.

*SALARIED RETIREMENT SAVINGS PROGRAM (SRSP)*

# SECTION 18
## Special Provisions Regarding Veterans

(A)  In the event an Employee is rehired following qualified military service, as defined in the Uniformed Services Employment and Re-Employment Rights Act that was effective on or after December 15, 1994, such Employee will be entitled to have the Corporation make contributions to the Program from such Employee's current earnings that will be attributable to the period of time contributions were not otherwise allowable due to military service.  Such contributions will be in addition to contributions otherwise permitted under Sections 2(A) and 2(B) of Article I, and will be made as permitted under this Section and Section 414(u) of the Code.

(B)  Additional contributions permitted under this Section will be based on the amount of Eligible Salary that the Employee would have received from the Corporation but for the military service, and such contributions will be subject to the Program's terms and conditions in effect during the applicable period of military service.  Such contributions will be made during the period that begins upon re-employment and extends for the lesser of five years or the Employee's period of military service multiplied by three.

(C)  Additional contributions made under this Section will not be taken into account in the current year for purposes of calculating and applying any limitation or requirement identified in Section 414(u)(1) of the Code. However, in no event may such contributions, when added to actual contributions previously made, exceed the amount of contributions allowable under the applicable limits in effect during the year of military service if the Employee had continued to be employed by the Corporation.

(D)  If an Employee covered by this Section has an outstanding loan(s) during the period of qualified military service covered by this Section, such loan payments may be suspended during such period, and the time for repayment of such loan(s) will be extended for a period of time equal to the period of qualified military service.

(E)  If an Employee covered by this Section has an outstanding loan(s) during a period of qualified active military service that materially affects his or her ability to repay the loan(s), the interest rate on the loan(s) shall not exceed 6% during the period of the active service so long as he or she provides written notice and a copy of the military orders calling him or her to duty, and any orders further extending military service, to the Administrator no later than 180 days after the end of the active military service.

Exhibit 2

Amended Supplemental Executive Retirement Plan ("Amended SERP")

# DELPHI CORPORATION

## Supplemental Executive Retirement Program

The new Supplemental Executive Retirement Program (the "SERP") is an unfunded, nonqualified benefit program being implemented as a new program in connection with the Plan of Reorganization of Delphi Corporation (the "Corporation" or "Delphi") under Chapter 11 of the United States Bankruptcy Code.  The SERP is structured to qualify for certain exemptions from the eligibility, funding and other requirements of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  SERP benefits are computed without regard to compensation limits imposed under the Internal Revenue Code of 1986, as amended ("IRC").  The SERP is a frozen, defined benefit supplemental executive retirement plan that provides a benefit (the "SERP Benefit") in conjunction with the Delphi Retirement Program for Salaried Employees (the "SRP"), Delphi's tax-qualified defined benefit pension plan.

## SECTION I.      PURPOSE OF THE SERP

The purpose of the SERP is to assure that eligible retiring salaried executive employees of the Corporation are eligible to receive an overall level of retirement benefits which are competitive with the peer group of companies selected by the Compensation and Executive Development Committee (the "Committee").  To achieve this competitive objective, the retirement benefits determined under the SRP and certain other Delphi-provided benefit programs, may be supplemented by benefits, if any, provided under the formulas of this SERP.  It is intended that this SERP qualify as a plan "providing deferred compensation for a select group of management or highly compensated employees" under Section 201(2) of ERISA.

## SECTION II.      ADMINISTRATION OF THE SERP

(a)      The SERP will at all times be maintained, considered, and administered as a nonqualified plan that is wholly separate and distinct from the SRP.  Moreover, it will be maintained as an unfunded plan.

(b)      Benefits under this SERP are not guaranteed.

(c)      The Corporation administers the SERP (the "Program Administrator").  The Program Administrator may delegate various aspects of administration as it deems appropriate and to the extent permitted by applicable law.  Additionally, any committee or person delegated various aspects of administration may sub-delegate that authority as appropriate and as permitted by applicable law.  Committees or persons delegated various aspects of administration have discretionary authority to construe, interpret, apply, make factual determinations regarding, and administer the SERP in accordance with its terms.  Any interpretation or determination regarding the SERP made by the Program Administrator, or any committee or person(s) delegated the authority to make such an interpretation or determination, will be given full force and effect, unless it is proven that the interpretation or determination was arbitrary and capricious. Any claims with respect to determinations made under this SERP may be appealed to the Compensation and Executive Development Committee of Delphi's Board of Directors as described in Section XI hereunder.

1

(d)     The Committee has been delegated, among other powers, the discretionary authority to interpret, construe and make final determinations, including factual findings, of any and all claims under the SERP.  Any and all decisions of the Committee as to interpretation or application of the SERP will be final, conclusive, and binding upon all parties, including the Corporation, the stockholders, and the participants and beneficiaries of the SERP.  Any interpretation or determination regarding the SERP made by the Committee will be given full force and effect, unless it is proven that the interpretation or determination was arbitrary and capricious.

(e)     The Program Administrator, and any committee or person delegated authority regarding the SERP, has the full power to engage and employ such recordkeeping, legal, actuarial, auditing, tax, and other such agents, as it will determine, in its sole discretion, to be in the best interest of the Corporation, the SERP, and its participants and beneficiaries.

(f)     The expenses of administering this SERP will be borne by the Corporation and may not be charged against its participants and beneficiaries.

(g)     The SERP year is the calendar year.

## SECTION III.    EFFECTIVE DATE

(a)     This SERP shall become effective on October 1, 2008 (the "Effective Date").  The SERP Benefit shall be frozen based solely on service accrued before the Effective Date.  Notwithstanding the terms of this SERP, in no event shall a SERP Benefit be paid unless the consummation of Delphi's Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code (the "Emergence Date") shall have occurred.

## SECTION IV.    ELIGIBILITY TO PARTICIPATE IN THE SERP

To be eligible for a SERP Benefit under either the Regular or Alternative Formula, an executive employee must:

(a)     be a regular Active U.S. or U.S. Expatriate executive employee at the date of retirement, death, or onset of disability; and

(b)     have, as of the day immediately preceding retirement, death or onset of disability, if earlier:

(i)     at least 10 years of SRP Part B credited service and, as of the day immediately preceding the Effective Date, be contributing to Part B, or

(ii)     at least 10 years of SRP Part C credited service (i.e., the "Retirement Accumulation Plan"); or

2

      (iii)       at least 10 years combined credited service when Part B credited service and Part C credited service are added together ;

have attained 55 years of age; and
be an employee as of the Emergence Date; provided, however, Delphi, in its sole discretion, may explicitly waive such condition for an employee who voluntarily separates on or after the Effective Date and before the Emergence Date.

(c)      Following the Effective Date, credited service will continue to be earned for the purpose of eligibility only.  (No further SERP benefit will be accrued after the Effective Date).

(d)      Notwithstanding paragraph (b) of this Section IV, an executive employee will be eligible for a SERP Benefit under either the Regular or Alternative Formula if he or she is involuntarily separated from employment, regardless of age, on or after the Emergence Date; provided, that (1) at the time of the separation the executive employee would have satisfied the conditions of Section IV(a) and (b) above if the minimum credited service requirements in Section IV(b) were reduced to 5 years and (2) the involuntary separation is by the Company other than for Cause or, in the case of an executive employee who has entered into an employment agreement with the Corporation, by the executive employee for Good Reason (as defined in such employment agreement).  The term "Cause" shall mean (1) if the executive employee has entered into an employment agreement with the Corporation, the same definition as in the employment agreement or (2) if the executive employee has not entered into an employment agreement with the Corporation, the occurrence of any of the following, as reasonably determined by the Corporation, provided that, if the Corporation determines that the circumstances constituting Cause are curable, then such circumstances shall not constitute Cause unless and until the executive employee has been informed by the Corporation of the existence of Cause and given an opportunity of ten business days to cure, and such Cause remains uncured at the end of such ten-day period, (A) continued failure by the executive employee to satisfactorily perform his duties, (B) willful misconduct or gross negligence by the executive employee in the performance of his duties, including insubordination, (C) the executive employee's commission of any felony or his/her commission of any misdemeanor involving moral turpitude (including entry of a guilty or nolo contendere plea), or (D) the executive employee's commission of any act involving dishonesty that results in material financial, reputational or other harm, monetary or otherwise, to the Corporation or its affiliates and subsidiaries, including but not limited to an act constituting misappropriation or embezzlement of the property of the Corporation or its parent, affiliates or subsidiaries, as determined in good faith by the Committee.

(e)      For a two year period from the date of retirement, any retired executive employee receiving a SERP Benefit is prohibited from all activity which is competitive with the Corporation or otherwise acting in any manner inimical or contrary to the best interests of the Corporation.  SERP Benefits may be forfeited during the two-year period a retired executive does not respond to the Corporation's request for information under this paragraph.  If any such retired executive violates these

3

conditions precedent, the executive and his beneficiaries thereafter would lose any SERP Benefits commencing with the date of initial violation.

## SECTION V.    THE REGULAR FORMULA OF THE SERP

(a)    The Regular Formula of this SERP is equal to two percent (2%) of average monthly base salary multiplied by the total of the years of credited service used to determine the SRP Part B Supplementary Benefit and the years of service under the SRP Part C; less the sum of:

    (i)    the unreduced monthly SRP Part A and B benefits (prior to reduction for the cost of any survivor coverage and any reduction for age required under SRP)  and the unreduced monthly single lifetime annuity attributable to SRP Part C (as if payment was being commenced at age 65);

    (ii)    $42.32 (2% of $2,116.00, which is the maximum Primary Social Security benefit payable for 2007) multiplied by the total of the employee's years of SRP Part A credited service and years of service under SRP Part C as of the Effective Date; and

    (iii)    the value of any benefits received under the prior supplemental executive retirement plan which was frozen on September 30, 2008, expressed as a lifetime annuity using the actuarial assumptions described in Section VII(b)(ii).

Credited service accrued under SRP Part A and Part B and service earned under Part C as of the Effective Date will be used in the Regular Formula.

(b)    The "Special Benefit" provided under the Delphi Salaried Health Care Program, will not be taken into account in determining any monthly benefit amount payable hereunder.

(c)    For purposes of this Section V, average monthly base salary means the average of monthly base salary for the highest 48 months between January 1, 1999 and the Effective Date.

## SECTION VI.    THE ALTERNATIVE FORMULA OF THE SERP

(a)    The Alternative Formula of this SERP is equal to 1.5% of average total direct compensation (average monthly base salary plus average monthly annual incentive compensation, as defined in this Section VI(c) and (d) below), multiplied by the employee's years of credited service (not to exceed 35) used to determine the SRP Part B Supplementary Benefit and the years of service under SRP Part C as of the Effective Date, less the sum of:

    (i)    the unreduced monthly SRP Part A and B benefits payable (prior to reduction for the cost of any survivor coverage and any reduction

4

for age required under SRP) and the unreduced monthly single lifetime annuity attributable to SRP Part C (as if payment was being commenced at age 65);

    (ii)    $2,116.00 (which is the maximum Primary Social Security benefit payable for 2007); and

    (iii)    the value of any benefits received under the prior supplemental executive retirement plan which was frozen on September 30, 2008, expressed as a lifetime annuity using the actuarial assumptions described in Section VII(b)(ii).

Credited service accrued under SRP Part B and service earned under Part C as of the Effective Date will be used in the Alternative Formula.

(b)    The "Special Benefit" payable under the Delphi Salaried Health Care Program will not be taken into account in determining any monthly benefit amount payable hereunder.

(c)    For purposes of this Section VI, average monthly base salary means the average of monthly base salary for the highest 48 months between January 1, 1999 and the Effective Date.

(d)    Average monthly incentive compensation means an amount determined by dividing the total of the highest four years of annual incentive awards during the period 1999 through and including 2007, by 48. For this purpose, "annual incentive awards" shall include the sum of any such semi-annual awards earned during 2006 and 2007. Each annual incentive award amount is based on the total value related to the year for which it is awarded, not when the amount is subsequently paid. Moreover, neither Performance Achievement Plan awards, Stock Incentive Plan grants, Long Term Incentive Plan awards, nor any other form of payment, are eligible for inclusion in determining an Alternative Formula Benefit amount. Non-consecutive years within the period 1999 through 2007 may be used for determining the total monthly compensation consisting of (1) average monthly base salary, and (2) average monthly incentive compensation.

However, if an eligible participant has less than 48 months of participation as of the Effective Date, then for each missing month the monthly base salary and the incentive compensation will be equal to zero.

Example: As of the Effective Date, the participant only had 24 months of base salary and two years of incentive compensation. The 24 months of base salary would be added together and divided by 48 to determine the average monthly base salary. The two years of incentive compensation would be added together and divided by 48 to determine the average monthly incentive compensation.

5

**SECTION VII.   AMOUNT AND DISTRIBUTION FORM OF SERP BENEFIT**

(a)    The SERP Benefit is the five year monthly annuity form of payment described in this Section VII.

(b)    Calculation of five year monthly installment payments:

   (i)    The amount calculated using the Regular Formula will be compared to the amount calculated using the Alternate Formula and the higher amount will be used to determine the SERP Benefit.

   (ii)    Once the higher amount is determined, it may be further reduced depending on the participant's age at SERP Benefit commencement in years and months* based on the following schedule:

| age 62 or older | 100% | age 58 | 84% |
|---|---|---|---|
| age 61 | 96% | age 57 | 80% |
| age 60 | 92% | age 56 | 75% |
| age 59 | 88% | age 55 | 70% |

   *prorated for intermediate ages on the basis of complete calendar months, by which the participant is under the age attained at the participant's next birthday.

   (iii)    After the age reduction for early commencement, if any, the amount will represent a lifetime monthly benefit.  The lifetime monthly benefit will be actuarially converted into 60 equal consecutive monthly payments.  The conversion will use the mortality table and discount rate being used under the SRP for lump sum distributions at the time of the participant's retirement.  This calculation will determine the participant's monthly benefit, payable for 60 consecutive months.

(c)    Extended Disability Benefit Offset Calculation

   If an executive employee is eligible for Extended Disability Benefits (EDB) following his or her retirement date, such as in the case of a total and permanent disability retirement under Part A and B of the SRP, the SERP Benefit calculated under paragraph (b) will be reduced by any EDB.  Since EDB is payable only until age 65 the following methodology will be used:

   (i)    First, actuarially convert the EDB amounts that are payable during the same period as the monthly payments determined under paragraph (b) into equal monthly amounts payable over that same period, using the assumptions described in paragraph (b)(iii) above.

   (ii)    Second, offset the monthly payments payable under paragraph (b) through age 65 by the monthly amounts calculated under paragraph

6

(c)(i).  Any remaining monthly payments payable under paragraph (b) after age 65 would not be subject to offset.

(iii)     The amount calculated will not be adjusted for future changes in the EDB amount, regardless of the reason (Social Security Disability Insurance Benefit awards, death of the participant, etc.).

(d)     Post Retirement Increases

Any post-retirement increase under the SRP (including any increases attributable to adjustments under the IRC Section 415) will not reduce any benefit payable under this SERP.

## SECTION VIII. PAYMENT OF BENEFITS

(a)     Payment of the monthly SERP Benefit shall commence as of the latest of (i) the first day of the month that is at least 15 days following the participant's separation from service with the Corporation (within the meaning of IRC section 409A), (ii) the first day of the first month following the participant's 55th birthday, or (iii) the first day of the month following the Emergence Date.

For employees who are eligible under the proviso of Section IV(d) the SERP Benefit commencement will be deemed to be the employee's retirement date for purposes of the application of the age factors in Section VII(b)(ii) and the conversion in Section VII(b)(iii) will use the mortality table and discount rate used under the SRP for lump sum distributions at the time of the payment of the SERP Benefit.

If an employee qualifies for a SERP Benefit under Section IV(f), the SERP Benefit will commence the first day of the first month following the participant's 55th birthday.

(b)     Notwithstanding paragraph (a) above, any payment of the monthly SERP Benefit with respect to any individual who is a "specified employee" (within the meaning of IRC section 409A) shall commence no earlier than the earlier of (i) the first day of the first month commencing at least 6 months following the participant's separation from service with the Corporation (within the meaning of IRC section 409A) or (ii) the participant's date of death.  During the six month waiting period, all amounts payable under this SERP will accumulate without interest and be paid with the first monthly payment to be paid as described above.  Specified employees will be identified on December 31st with an effective date of March 1st.  The prior years' determination of specified employees will be used to determine IRC section 409A impact for employees who separate between January 1 and March 1.

(c)     The payment of benefits under the SERP will be reduced by the amount (no greater than $5,000 in any calendar year) that a participant owes the Corporation or any subsidiary, for any reason, including benefit overpayments, wage overpayments, and amounts due under all incentive compensation plans.  The participant will be

7

relieved of liability in the amount of the reduction following the payment to the
Corporation.

## SECTION IX.    DEATH BENEFITS

(a)     If at the time of death an executive employee is eligible for SERP Benefits a death
benefit under the SERP will be payable to the surviving spouse of the participant
identified under the SRP.  If there is no eligible spouse, a SERP death benefit will
be payable to the participant's beneficiary of record as indicated on either the SRP
Part B or Part C Beneficiary Designation Form.  If there is no named beneficiary
under SRP then the Basic Life Insurance beneficiary will be deemed to be the
beneficiary of record.  If there is no Basic Life Insurance beneficiary the SERP
death benefit will be made payable to the participant's estate.

(b)     If an executive employee commences a monthly SERP Benefit and subsequently
dies before receiving all 60 monthly payments, any SERP Benefit remaining will
be paid in a lump sum to the surviving spouse or beneficiary.  The SERP death
benefit will be equal to the present value of any remaining monthly SERP Benefit
payments paid in a lump sum as of the first day of the month following the date of
death.

(c)     If an executive employee dies after the Effective Date, during active service with
the Corporation and prior to the executive's attaining age 55, a benefit will be
payable from this SERP to the employee's eligible surviving spouse or beneficiary
provided that at the time of death the executive employee would have satisfied the
conditions of Section IV(a) and (b)(i)-(iii) above if the minimum credited service
requirements in Section IV(b) were reduced to 5 years.  The benefit will be paid to
the surviving spouse or beneficiary on the later of (i) the first day of the month
following the date the deceased participant would have attained age 55 or (ii) the
first day of the month following the Emergence Date.

## SECTION X.    AMENDMENT, MODIFICATION, SUSPENSION, OR TERMINATION

The Corporation reserves the right to amend, modify, suspend, or terminate this SERP in
whole or in part, at any time, by action of the Compensation and Executive Development
Committee of the Board of Directors, the Committee, or other committee(s) or person(s) expressly
authorized by the Corporation to take such action; provided, however, no amendment,
modification, suspension or termination shall adversely affect any SERP Benefit without the
written consent of the executive employee.  No oral statements can change the terms of this SERP.
This SERP can only be amended in writing.  Absent an express delegation of authority, no one has
the authority to commit the Corporation to any benefit or benefits provision not provided for under
this SERP or to change the eligibility criteria or other provisions of this SERP.

## SECTION XI.    CLAIM DENIAL PROCEDURES; APPEAL RIGHTS; LIMITATIONS
PERIOD

(a)     A claim for benefits under the SERP must be made within 180 days of the date
purportedly giving rise to the entitlement to benefits.  A written determination

8

granting or denying the claim will be furnished to the person making the claim ("Claimant") within 90 days of the date on which the claim is filed.  If special circumstances require a longer period, the Claimant will be notified in writing, prior to the expiration of the 90-day period, of the reasons for an extension of time; provided, however, that no extensions will be permitted beyond 90 days after expiration of the initial 90-day period.  Any denial or partial denial of a claim will be dated and signed by a person designated to speak on behalf of the Program Administrator and will clearly set forth:

(i)       the specific reason(s) for the denial;

(ii)      specific reference to pertinent SERP provision(s) on which the denial is based;

(iii)     a description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

(iv)     an explanation of the review procedures set forth below.

If no written determination is furnished to the Claimant, then the claim will be deemed denied and the review procedure described below will become available to the Claimant.

(b)      A Claimant may obtain review of an adverse benefit determination by filing a written notice of appeal with the Committee within sixty (60) days after the determination date or, if later, within sixty (60) days after the receipt of a written notice denying the claim.  Such an appeal may be initiated by forwarding the request to the Delphi Corporation Compensation and Executive Development Committee, Mail Code 483-400-606, Delphi World Headquarters, Troy, Michigan 48098.  As a part of this review, the participant or beneficiary must submit any written comments that may support their position.  The Committee will conduct a full and fair review, which will provide for the Claimant's right to:

(i)      be represented by an individual whom the Corporation determines has been properly authorized to act on Claimant's behalf;

(ii)     present written comments, documents, records, and any other information relating to the Claimant's claim for benefits under the SERP;

(iii)     receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits; and

(iv)     have all comments, documents, records, and other information submitted by the Claimant relating to the claim reviewed.

9

(c)     The Committee's decision will be rendered no more than sixty (60) days after the request for review, except that such period may be extended for an additional sixty (60) days if the Committee determines that special circumstances require such extension.

(d)     The Committee, or its delegate, will promptly provide a Claimant with a written decision in a manner calculated to be understood by the Claimant setting forth:

    (i)     the findings of fact;

    (ii)     the specific reason(s) for the denial;

    (iii)     specific reference to pertinent SERP provision(s) on which the denial is based;

    (iv)     a statement that the Claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claimant's claim for benefits; and

    (v)     a statement of the Claimant's right to bring an action under ERISA.

(e)     A Claimant must follow the claims and appeal procedures described in this section before taking action in any other forum regarding a claim for benefits under the SERP. Any suit or legal action initiated by a Claimant under the SERP must be brought no later than one year following a final decision on the claim by the Committee. This one-year limitation period on suits for benefits applies in any forum where a Claimant initiates such suit or legal action.

(f)     Any payment made to settle or otherwise resolve a claim, will be paid no later than the last day of the calendar year in which the resolution of the claim becomes final.

## SECTION XII.  MISCELLANEOUS

(a)     <u>SERP not an employment contract</u>.  The SERP does not restrict or limit any existing employment agreement by and between the Corporation and any participant, the at will status of any employee, or the right of the Corporation to discharge a participant with or without cause. Nor will any provision of this SERP be construed as conferring upon any participant the right to continue in the employ of the Corporation as an employee or in any other capacity.

(b)     <u>Non-assignment</u>.  Except as otherwise provided herein, the benefit provided under this SERP shall not be subject in any manner to anticipation, alienation, sale, transfer, hypothecation, mortgage, commutation, modification, encumbrance, assignment, pledge, charge, execution, attachment, garnishment or any other legal process. To the maximum extent permitted by the law, benefits will not be subject to seizure for the payment of any debts, judgments, alimony or separate maintenance owed by the participant or his beneficiary, nor will benefits be

10

transferable by operation of law in the event of bankruptcy, insolvency or otherwise.

(c)     Receipt or release. Any payment to a participant or the participant's beneficiary in accordance with the provisions of the SERP shall, to the extent thereof, be in full satisfaction of all claims against the Program Administrator or the Corporation. The Program Administrator may require such participant or beneficiary, as a condition precedent to such payment, to execute a receipt and release to such effect.

(d)     Payments on behalf of persons under incapacity. Except as otherwise specifically provided herein, in the event that any amount becomes payable under the SERP to a person who, in the sole judgment of the Program Administrator, is considered by reason of physical or mental condition to be unable to give a valid receipt therefore, the Program Administrator may direct that such payment be made to any person found by the Program Administrator, in his or her sole judgment, to have assumed the care of such person. Any payment made pursuant to such determination shall constitute a full release and discharge of the Program Administrator and the Corporation.

(e)     Effect of SERP. This SERP shall be binding upon and inure to the benefit of the Corporation, its successors and assigns, and the participant and their heirs, beneficiaries, executors, administrators and legal representatives.

(f)     Intent to comply with IRC Section 409A. This SERP shall be interpreted and administered, to the extent possible, in a manner that does not result in a "plan failure" within the meaning of IRC Section 409A(a)(1) of this SERP or any other plan or arrangement maintained by the Corporation. If a determination is made by the Internal Revenue Service that the benefit of any participant provided herein is subject to current income taxation under Section 409A of the IRC, such benefit will be immediately distributed to the participant (or the participant's beneficiary) to the extent of such taxable amount. Notwithstanding any provision of the SERP, no plan elections, modifications or distributions will be allowed or implemented if they would cause a plan participant to be subject to tax (including interest and penalties) under IRC section 409A.

(g)     Severability. If any provision of this SERP shall for any reason be invalid or unenforceable, the remaining provisions shall nevertheless remain in full force and effect.

(h)     Applicable law. This SERP shall be construed and administered in accordance with ERISA and the IRC, to the extent that ERISA and the IRC do not apply, by the laws of the State of Michigan.

(i)     Service of legal process. Service of legal process on the Corporation may be made at any office of C T Corporation. C T Corporation, which maintains offices in 50 states, is the statutory agent for services of legal process on the Corporation. The procedure for making such service generally is known to practicing attorneys.

11

Services of legal process also may be made upon Delphi Corporation at the Service
of Process Office, Delphi World Headquarters, Mail Code 483-400-126, 5725
Delphi Drive, Troy, Michigan 48098.

12

Exhibit 3

Amended Salaried Retirement Equalization Savings Program and Adoption
Agreement ("Amended SRESP")

# ADOPTION AGREEMENT

## 1.01   PREAMBLE

By the execution of this Adoption Agreement the Plan Sponsor
hereby [complete (a) or (b)]

(a) ☒   adopts a new plan as of <u>October 1, 2008</u> [month, day, year]  effective on the
consummation of Delphi's Plan of Reorganization under Chapter 11 of the United
States Bankruptcy Code (the "Effective Date").

(b) ☐   amends and restates its existing plan as of _____ [month, day, year]
which is the Amendment Restatement Date.

Original Effective Date: _____ [month, day, year]

Pre-409A Grandfathering:    ☐ Yes   ☐ No

## 1.02   PLAN

Plan Name: <u>Salaried Retirement Equalization Savings Program</u>

Plan Year: <u>1/1-12/31</u>

## 1.03   PLAN SPONSOR

| | |
|---|---|
| Name: | Delphi Corporation |
| Address: | 5725 Delphi Drive, Troy, Michigan 48098-2815 |
| Phone # : | 248-813-2000 |
| EIN: | 38-3430473 |
| Fiscal Yr: | 1/1-12/31 |

Is stock of the Plan Sponsor, any Employer or any Related Employer publicly traded on
an established securities market?

☒ Yes   ☐ No

## 1.04   EMPLOYER

The following entities have been authorized by the Plan Sponsor to participate in and
have adopted the Plan (insert "Not Applicable" if none have been authorized):

| Entity | Publicly Traded on Est. Securities Market | |
|---|---|---|
| | Yes | No |
| Not Applicable | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |
| _____ | ☐ | ☐ |

- 1 -

_____

_____          ☐          ☐

- 2 -

## 1.05   ADMINISTRATOR

The Plan Sponsor has designated the following party or parties to be responsible for the administration of the Plan:

| | |
|---|---|
| Name: | Compensation and Executive Development Committee |
| Address: | 5725 Delphi Drive, Troy, Michigan 48098-2815 |

Note:   The Administrator is the person or persons designated by the Plan Sponsor to be responsible for the administration of the Plan.  Neither Fidelity Employer Services Company nor any other Fidelity affiliate can be the Administrator.

## 1.06   KEY EMPLOYEE DETERMINATION DATES

The Employer has designated <u>December 31</u> as the Identification Date for purposes of determining Key Employees.

In the absence of a designation, the Identification Date is December 31.

The Employer has designated March <u>1</u> as the effective date for purposes of applying the six month delay in distributions to Key Employees. The prior year's determination of specified employees will be used to determine 409A impact for employees who separate between January 1 and March 1.

In the absence of a designation, the effective date is the first day of the fourth month following the Identification Date.

- 3 -

2.01    <u>**PARTICIPATION**</u>

(a) ☒    Employees [complete (i), (ii) or (iii)]

   (i)    ☐    Eligible Employees are selected by the Employer.

   (ii)   ☒    Eligible Employees are those employees of the Employer who satisfy the following criteria:

        Are selected by the Compensation and Executive

        Development Committee

   (iii)  ☐    Employees are not eligible to participate.

(b) ☒    Directors [complete (i), (ii) or (iii)]

   (i)    ☐    All Directors are eligible to participate.

   (ii)   ☐    Only Directors selected by the Employer are eligible to participate.

   (iii)  ☒    Directors are not eligible to participate.

- 4 -

3.01   **COMPENSATION**

For purposes of determining Participant contributions under Article 4 and Employer contributions under Article 5, Compensation shall be defined in the following manner [complete (a) or (b) and select (c) and/or (d), if applicable]:

(a)   ☒   Compensation is defined as:

Compensation as defined under the Salaried Retirement

Savings Plan ("SRP") without regard to the Section 401(a)(17) of

the Code limitation in effect for such Plan Year but only as

to amounts in excess of that limitation. Any amendment to the definition of compensation under the SRP during the plan year shall be disregarded for purposes of determining contributions under this plan.

(b)   ☐   Compensation as defined in _____ [insert name of qualified plan] without regard to the limitation in Section 401(a)(17) of the Code for such Plan Year.

(c)   ☐   Director Compensation is defined as:

(d)   ☐   Compensation shall, for all Plan purposes, be limited to $_____.

(e)   ☐   Not Applicable.

3.02   **BONUSES**

Compensation, as defined in Section 3.01 of the Adoption Agreement, includes the following type of bonuses:

| Type | Will be treated as Performance Based Compensation | |
|---|---|---|
| | Yes | No |
| STIP | ☐ | ☒ |
| | ☐ | ☐ |

☐   Not Applicable.

- 5 -

**4.01**    **PARTICIPANT CONTRIBUTIONS**

If Participant contributions are permitted, complete (a), (b), and (c).  Otherwise complete (d).

**(a)**    **Amount of Deferrals**

A Participant may elect within the period specified in Section 4.01(b) of the Adoption Agreement to defer the following amounts of remuneration.  For each type of remuneration listed, complete "dollar amount" and / or "percentage amount".

(i)  Compensation Other than Bonuses [do not complete if you complete (iii)]

| Type of Remuneration | Dollar Amount | | % Amount | | |
|---|---|---|---|---|---|
| | Min | Max | Min | Max | Increment |
| (a)      Other than Bonus | | | 1 | 60 | 1% |
| (b) | | | | | |
| (c) | | | | | |

Note:  The increment is required to determine the permissible deferral amounts.  For example, a minimum of 0% and maximum of 20% with a 5% increment would allow an individual to defer 0%, 5%, 10%, 15% or 20%.

(ii)  Bonuses [do not complete if you complete (iii)]

| Type of Bonus | Dollar Amount | | % Amount | | |
|---|---|---|---|---|---|
| | Min | Min | Min | Max | Increment |
| (a)      STIP | | | 1 | 60 | 1% |
| (b) | | | | | |
| (c) | | | | | |

(iii) Compensation [do not complete if you completed (i) and (ii)]

| Dollar Amount | | % Amount | | |
|---|---|---|---|---|
| Min | Max | Min | Max | Increment |
| | | | | |

(iv) Director Compensation

| Type of Compensation | Dollar Amount | | % Amount | | |
|---|---|---|---|---|---|
| | Min | Min | Min | Max | Increment |
| Annual Retainer | | | | | |
| Meeting Fees | | | | | |
| Other: | | | | | |
| Other: | | | | | |

**(b)    Election Period**

(i)    Performance Based Compensation

A special election period

☐    Does            ☒    Does Not

apply to each eligible type of performance based compensation referenced in Section 3.02 of the Adoption Agreement.

The special election period, if applicable, will be determined by the Employer.

(ii)   Newly Eligible Participants

An employee who is classified or designated as an Eligible Employee during a Plan Year

☒    May            ☐    May Not

elect to defer Compensation earned during the remainder of the Plan Year by completing a deferral agreement within the 30 day period beginning on the date he is eligible to participate in the Plan.

**(c)    Revocation of Deferral Agreement**

A Participant's deferral agreement

☒    Will
☐    Will Not

be cancelled for the remainder of any Plan Year during which he receives a hardship distribution of elective deferrals from a qualified cash or deferred arrangement maintained by the Employer.  If cancellation occurs, the Participant may resume participation in accordance with Article 4 of the Plan.

**(d)    No Participant Contributions**

☐    Participant contributions are not permitted under the Plan.

**5.01    <u>EMPLOYER CONTRIBUTIONS</u>**

If Employer contributions are permitted, complete (a) and/or (b).  Otherwise complete (c).

**(a)    Matching Contributions**

(i)    Amount

For each Plan Year, the Employer shall make a Matching Contribution on behalf of each Participant who defers Compensation for the Plan Year and satisfies the requirements of Section 5.01(a)(ii) of the Adoption Agreement equal to [complete the ones that are applicable]:

(A)  ☐    _____ [insert percentage] of the Compensation the Participant has elected to defer for the Plan Year

(B)  ☐    An amount determined by the Employer in its sole discretion

(C)  ☐    Matching Contributions for each Participant shall be limited to $_____ and/or _____% of Compensation.

(D)  ☒    Other:
<u>    See Attachment to Section 5.01(a)    </u>
_____

(E)  ☐    Not Applicable [Proceed to Section 5.01(b)]

(ii)    Eligibility for Matching Contribution

A Participant who defers Compensation for the Plan Year shall receive an allocation of Matching Contributions determined in accordance with Section 5.01(a)(i) provided he satisfies the following requirements [complete the ones that are applicable]:

(A)  ☒    Describe requirements:
<u>See Attachment to Section 5.01(a)    </u>
_____

(B)  ☐    Is selected by the Employer in its sole discretion to receive an allocation of Matching Contributions

(C)  ☐    No requirements

(iii)  Time of Allocation

Matching Contributions, if made, shall be treated as allocated [select one]:

(A)  ☐  As of the last day of the Plan Year

(B)  ☒  At such times as the Employer shall determine in its sole discretion

(C)  ☐  At the time the Compensation on account of which the Matching Contribution is being made would otherwise have been paid to the Participant

(D)  ☐  Other:
_____
_____

**(b)**     **Other Contributions**

(i)  Amount

The Employer shall make a contribution on behalf of each Participant who satisfies the requirements of Section 5.01(b)(ii) equal to [complete the ones that are applicable]:

(A)  ☒  An amount equal to 4% of the Participant's Compensation

(B)  ☐  An amount determined by the Employer in its sole discretion

(C)  ☐  Contributions for each Participant shall be limited to $_____

(D)  ☒  Other:
See Attachment to Section 5.01(b) (i)  (D)
_____
_____
_____

(E)  ☐  Not Applicable [Proceed to Section 6.01]

- 9 -

(ii)  Eligibility for Other Contributions

A Participant shall receive an allocation of other Employer contributions determined in accordance with Section 5.01(b)(i) for the Plan Year if he satisfies the following requirements [complete the one that is applicable]:

(A)  ☐  Describe requirements:
_____
_____

(B)  ☐  Is selected by the Employer in its sole discretion to receive an allocation of other Employer contributions

(C)  ☒  No requirements

(iii)  Time of Allocation

Employer contributions, if made, shall be treated as allocated [select one]:

(A)  ☐  As of the last day of the Plan Year

(B)  ☒  At such time or times as the Employer shall determine in its sole discretion

(C)  ☐  Other:
_____
_____
_____

**(c)      No Employer Contributions**

☐      Employer contributions are not permitted under the Plan.

::ODMA\PCDOCS\chisr01a\621221\1                    September 2007

**6.01**    **DISTRIBUTIONS**

The timing and form of payment of distributions made from the Participant's vested Account shall be made in accordance with the elections made in this Section 6.01 of the Adoption Agreement except when Section 9.6 of the Plan requires a six month delay for certain distributions to Key Employees of publicly traded companies.

**(a) Timing of Distributions**

(i)    All distributions shall commence in accordance with the following [choose one]:

    (A) ☐ As soon as administratively feasible following the distribution event
    (B) ☒ Monthly on specified day <u>15</u> [insert day]
    (C) ☐ Annually on specified month and day _____ [insert month and day]
    (D) ☐ Calendar quarter on specified month and day [_____month of quarter (insert 1,2 or 3); _____ day (insert day)]

(ii)    The timing of distributions as determined in Section 6.01(a)(i) shall be modified by the adoption of:

    (A) ☒ Event Delay – Distribution events other than those based on Specified Date or Specified Age will be treated as not having occurred for <u>60</u> days [insert number of days].

    (B) ☐ Hold Until Next Year – Distribution events other than those based on Specified Date or Specified Age will be treated as not having occurred for twelve months from the date of the event if payment pursuant to Section 6.01(a)(i) will thereby occur in the next calendar year or on the first payment date in the next calendar year in all other cases.

    (C) ☐ Immediate Processing – The timing method selected by the Plan Sponsor under Section 6.01(a)(i) shall be overridden for the following distribution events [insert events]:

        _____
        _____

    (D) ☐ Not applicable.

**(b) Distribution Events**

If multiple events are selected, the earliest to occur will trigger payment. For installments, insert the range of available periods (e.g., 5-15) or insert the periods available (e.g., 5,7,9).

| | | | Lump Sum | Installments |
|---|---|---|---|---|
| (i) | ☒ | Specified Date | X | _____ years |
| (ii) | ☐ | Specified Age | _____ | _____ years |
| (iii) | ☒ | Separation from Service | X | _____ years |
| (iv) | ☐ | Separation from Service plus 6 months | _____ | _____ years |
| (v) | ☐ | Separation from Service plus _____ months [not to exceed _____months] | _____ | _____ years |
| (vi) | ☐ | Retirement | _____ | _____ years |
| (vii) | ☐ | Retirement plus 6 months | _____ | _____ years |
| (viii) | ☐ | Retirement plus _____ months [not to exceed _____ months] | _____ | _____ years |
| (ix) | ☐ | Later of Separation from Service or Specified Age | _____ | _____ years |
| (x) | ☐ | Later of Separation from Service or Specified Date | _____ | _____ years |
| (xi) | ☐ | Disability | _____ | _____ years |
| (xii) | ☐ | Death | _____ | _____ years |
| (xiii) | ☐ | Change in Control | _____ | _____ years |

The minimum deferral period for Specified Date or Specified Age event shall be <u>one year for amounts deferred in accordance with Section 4.01(a)(i) of the Adoption Agreement and two years for amounts deferred in accordance with Section 4.01(a)(i) of the Adoption Agreement</u> years.

Installments may be paid [select each that applies]

☐ Monthly
☐ Quarterly
☐ Annually

(c) Specified Date and Specified Age elections may not extend beyond age <u>Not Applicable</u> [insert age or "Not Applicable" if no maximum age applies].

(d)  Payment Election Override

Payment of the remaining vested balance of the Participant's Account will automatically occur at the time specified in Section 6.01(a) of the Adoption Agreement in the form indicated upon the earliest to occur of the following events [check each event that applies and for each event include only a single form of payment]:

| | EVENTS | FORM OF PAYMENT | | | |
|---|---|---|---|---|---|
| ☐ | Separation from Service | _____ | Lump sum | _____ | Installments |
| ☐ | Separation from Service before Retirement | _____ | Lump sum | _____ | Installments |
| ☒ | Death | X | Lump sum | _____ | Installments |
| ☐ | Disability | _____ | Lump sum | _____ | Installments |
| ☐ | Not Applicable | | | | |

(e)  Involuntary Cashouts

☐       If the Participant's vested Account at the time of his Separation from Service does not exceed $_____ (insert dollar amount) distribution of the vested Account shall automatically be made in the form of a single lump sum in accordance with Section 9.5 of the Plan.

☒       There are no involuntary cashouts.

(f)  Retirement

☐       Retirement shall be defined as a Separation from Service that occurs on or after the Participant [insert description of requirements]:

_____
_____

☒       No special definition of Retirement applies.

(g)  Distribution Election Change

A Participant

☐  Shall
☒  Shall Not

be permitted to modify a scheduled distribution date and/or payment option in accordance with Section 9.2 of the Plan.

A Participant shall generally be permitted to elect such modification _____ number of times.

Administratively, allowable distribution events will be modified to reflect all options necessary to fulfill the distribution change election provision.

(h)  Frequency of Elections

The Plan Sponsor

☒  Has
☐  Has Not

Elected to permit annual elections of a time and form of payment for amounts deferred amounts under the Plan.

**7.01**   **VESTING**

### (a) Matching Contributions

The Participant's vested interest in the amount credited to his Account attributable to Matching Contributions shall be based on the following schedule:

| ☒ | Years of Service | Vesting % | |
|---|---|---|---|
| | 0 | <u>100</u> | (insert '100' if there is immediate vesting) |
| | 1 | _____ | |
| | 2 | _____ | |
| | 3 | _____ | |
| | 4 | _____ | |
| | 5 | _____ | |
| | 6 | _____ | |
| | 7 | _____ | |
| | 8 | _____ | |
| | 9 | _____ | |

☐   Other:

_____
_____

☐   Class year vesting applies.
_____

☐    Not applicable.

### (b) Other Employer Contributions

The Participant's vested interest in the amount credited to his Account attributable to Employer contributions other than Matching Contributions shall be based on the following schedule:

| ☒ | Years of Service | Vesting % | |
|---|---|---|---|
| | 0 | <u>100</u> | (insert '100' if there is immediate vesting) |
| | 1 | _____ | |
| | 2 | _____ | |
| | 3 | _____ | |
| | 4 | _____ | |
| | 5 | _____ | |
| | 6 | _____ | |
| | 7 | _____ | |
| | 8 | _____ | |
| | 9 | _____ | |

☐   Other:

_____
_____

☐   Class year vesting applies.
_____

☐    Not applicable.

- 15 -

**(c) Acceleration of Vesting**

A Participant's vested interest in his Account will automatically be 100% upon the occurrence of the following events: [select the ones that are applicable]:

(i)  ☐  Death

(ii)  ☐  Disability

(iii)  ☐  Change in Control

(iv)  ☐  Eligibility for Retirement

(v)  ☐  Other: _____
_____

(vi)  ☒  Not applicable.

**(d) Years of Service**

(i)  A Participant's Years of Service shall include all service performed for the Employer and

☐  Shall
☐  Shall Not

include service performed for the Related Employer.

(ii)  Years of Service shall also include service performed for the following entities:

_____
_____
_____
_____
_____
_____

(iii)  Years of Service shall be determined in accordance with (select one)

(A)  ☐  The elapsed time method in Treas. Reg. Sec.  1.410(a)-7

(B)  ☐  The general method in DOL Reg. Sec.  2530.200b-1 through b-4

(C)  ☐  The Participant's Years of Service credited under [insert name of plan] _____
_____

(D)  ☐  Other: _____
_____
_____

(iv)  ☒  Not applicable.

**8.01**    **UNFORESEEABLE EMERGENCY**

(a)    A withdrawal due to an Unforeseeable Emergency as defined in Section 2.24:

☐    Will
☒    Will Not [if Unforeseeable Emergency withdrawals are not
permitted, proceed to Section 9.01]

be allowed.

(b)    Upon a withdrawal due to an Unforeseeable Emergency, a Participant's deferral
election for the remainder of the Plan Year:

☐    Will
☐    Will Not

be cancelled.  If cancellation occurs, the Participant may resume participation in
accordance with Article 4 of the Plan.

::ODMA\PCDOCS\chisr01a\621221\1                    September 2007

**9.01**    **INVESTMENT DECISIONS**

Investment decisions regarding the hypothetical amounts credited to a Participant's Account shall be made by [select one]:

(a)    ☒    The Participant or his Beneficiary

(b)    ☐    The Employer

**10.01  GRANTOR TRUST**

The Employer [select one]:

☒        Does
☐        Does Not

intend to establish a grantor trust in connection with the Plan.

**11.01    TERMINATION UPON CHANGE IN CONTROL**

The Plan Sponsor

☐    Reserves
☒    Does Not Reserve

the right to terminate the Plan and distribute all vested amounts credited to Participant Accounts upon a Change in Control as described in Section 9.7.

**11.02    AUTOMATIC  DISTRIBUTION UPON CHANGE IN CONTROL**

Distribution of the remaining vested balance of each Participant's Account

☐    Shall
☒    Shall Not

automatically be paid as a lump sum payment upon the occurrence of a Change in Control as provided in Section 9.7.

**11.03    CHANGE IN CONTROL**

A Change in Control for Plan purposes includes the following [select each definition that applies]:

(a)    ☐    A change in the ownership of the Employer as described in Section 9.7(c) of the Plan.

(b)    ☐    A change in the effective control of the Employer as described in Section 9.7(d) of the Plan.

(c)    ☐    A change in the ownership of a substantial portion of the assets of the Employer as described in Section 9.7(e) of the Plan.

(d)    ☒    Not Applicable.

**12.01**  **GOVERNING STATE LAW**

The laws of Michigan shall apply in the administration of the Plan to the extent not preempted by ERISA.

# EXECUTION PAGE

The Plan Sponsor has caused this Adoption Agreement to be executed this
_____ day of _____, 20_____.


PLAN SPONSOR:    Delphi Corporation
                 _____

           By:   _____

        Title:   _____

## APPENDIX A

## SPECIAL EFFECTIVE DATES

**Not Applicable**

## ATTACHMENT TO SECTION 5.01(a)

## MATCHING CONTRIBUTIONS

Matching Contributions for a Plan Year shall equal 50% of a Participant's deferrals not exceeding 7% of Compensation for Participants who are not in the 'Grandfathered Group'. Matching Contributions for a Plan Year for Participants who are in the Grandfathered Group shall equal 50% of a Participant's deferrals not exceeding 9% of Compensation. A Participant is included in the 'Grandfathered Group' if he is has 25 years of continuous service as of September 30,2008.  A Participant in the 'Grandfathered Group' shall be eligible to receive the increased rate of Matching Contributions only for the period from October 1, 2008 through October 1, 2013.  Beginning on October 1, 2013, the rate of Matching Contributions for all Participants will equal 50% of a Participant's deferrals not exceeding 7% of Compensation.

For each Plan Year, the Employer, in its sole discretion, may make additional Matching Contributions.  The timing of, amount of and the Participants designated to receive such additional Matching Contributions shall be determined by the Employer in its sole discretion.

- 24 -

## ATTACHMENT TO SECTION 5.01(b)(i)(D)

## OTHER CONTRIBUTIONS

For each Plan Year the Employer shall credit each Participant hired or rehired with a service date on or after January 1, 1993 and prior to January 1, 2001 with an amount equal to 1% of Compensation.  Compensation, for this purpose, shall not include any Bonuses described in Section 3.02 of the Adoption Agreement or any Compensation received during the Participant's first six months of service with the Employer.

For each Plan Year, the Employer, in its sole discretion, may make additional Employer contributions.  The timing of, amount of and the Participants designated to receive such additional Employer contributions shall be determined by the Employer in its sole discretion.

Following the Effective Date, Delphi will calculate and contribute on a one-time basis a Delphi Matching Contribution to the accounts of eligible employees equal to the Matching Contributions Delphi would have made to such accounts using the Participant's deferral election under the normal provisions of the Plan for the period between October 1, 2008 and the Effective Date (the "Pre-Effective Date Period") as if the Plan had then been in effect in its entirety during such time; provided, however that:  1) the eligible employee contributes to the Plan, on an after-tax basis, an amount equal to what the Participant's deferrals would have been during the Pre-Effective Date Period based on his or her elected contribution percentage for that same period; and 2) the employee is employed by Delphi as of the Effective Date.

In addition following the Effective Date, Delphi will calculate and contribute on a one-time basis a Company Contribution to the accounts of eligible employees equal to the Company Contributions Delphi would have made to such accounts for the Pre-Effective Date Period as if the Plan had then been in effect in its entirety during such time; provided, however that the employee is employed by Delphi as of the Effective Date.

# Salaried Retirement Equalization Savings Program

::ODMA\PCDOCS\chisr01a\621221\1

# TABLE OF CONTENTS

**PREAMBLE**

**ARTICLE 1 – GENERAL**
**1.1**   Plan
**1.2**   Effective Dates
**1.3**   Amounts Not Subject to Code Section 409A

**ARTICLE 2 – DEFINITIONS**
**2.1**   Account
**2.2**   Administrator
**2.3**   Adoption Agreement
**2.4**   Beneficiary
**2.5**   Board or Board of Directors
**2.6**   Bonus
**2.7**   Change in Control
**2.8**   Code
**2.9**   Compensation
**2.10**  Director
**2.11**  Disabled
**2.12**  Eligible Employee
**2.13**  Employer
**2.14**  ERISA
**2.15**  Identification Date
**2.16**  Key Employee
**2.17**  Participant
**2.18**  Plan
**2.19**  Plan Sponsor
**2.20**  Plan Year
**2.21**  Related Employer
**2.22**  Retirement
**2.23**  Separation from Service
**2.24**  Unforeseeable Emergency
**2.25**  Valuation Date
**2.26**  Years of Service

**ARTICLE 3 – PARTICIPATION**
**3.1**   Participation
**3.2**   Termination of Participation

**ARTICLE 4 – PARTICIPANT ELECTIONS**
**4.1**    Deferral Agreement
**4.2**    Amount of Deferral
**4.3**    Timing of Election to Defer
**4.4**    Election of Payment Schedule and Form of Payment

**ARTICLE 5 – EMPLOYER CONTRIBUTIONS**
**5.1**    Matching Contributions
**5.2**    Other Contributions

**ARTICLE 6 – ACCOUNTS AND CREDITS**
**6.1**    Establishment of Account
**6.2**    Credits to Account

**ARTICLE 7 – INVESTMENT OF CONTRIBUTIONS**
**7.1**    Investment Options
**7.2**    Adjustment of Accounts

**ARTICLE 8 – RIGHT TO BENEFITS**
**8.1**    Vesting
**8.2**    Death
**8.3**    Disability

**ARTICLE 9 – DISTRIBUTION OF BENEFITS**
**9.1**    Amount of Benefits
**9.2**    Method and Timing of Distributions
**9.3**    Unforeseeable Emergency
**9.4**    Payment Election Overrides
**9.5**    Cashouts of Amounts Not Exceeding Stated Limit
**9.6**    Required Delay in Payment to Key Employees
**9.7**    Change in Control
**9.8**    Permissible Delays in Payment

**ARTICLE 10 – AMENDMENT AND TERMINATION**
**10.1** Amendment by Plan Sponsor
**10.2** Plan Termination Following Change in Control or Corporate Dissolution
**10.3** Other Plan Terminations

**ARTICLE 11 – THE TRUST**
**11.1** Establishment of Trust
**11.2** Grantor Trust
**11.3** Investment of Trust Funds

**ARTICLE 12 – PLAN ADMINISTRATION**
**12.1** Powers and Responsibilities of the Administrator
**12.2** Claims and Review Procedures
**12.3** Plan Administrative Costs

**ARTICLE 13 – MISCELLANEOUS**
**13.1** Unsecured General Creditor of the Employer
**13.2** Employer's Liability
**13.3** Limitation of Rights
**13.4** Anti-Assignment
**13.5** Facility of Payment
**13.6** Notices
**13.7** Tax Withholding
**13.8** Indemnification
**13.9** Permitted Acceleration of Payment
**13.10** Governing Law

# PREAMBLE

The Plan is intended to be a "plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees" within the meaning of Sections 201(2), 301(a)(3) and 401(a)(1) of the Employee Retirement Income Security Act of 1974, as amended, or an "excess benefit plan" within the meaning of Section 3(36) of the ERISA, or a combination of both.  The Plan is further intended to conform with the requirements of the Internal Revenue Code Section of 1986, as amended, ("the Code") 409A and the final regulations issued thereunder and shall be implemented and administered in a manner consistent therewith.

# ARTICLE 1 – GENERAL

**1.1**    **Plan.**  The Plan will be referred to by the name specified in the Adoption Agreement.

**1.2**    **Effective Dates.**

(a)    <u>Original Effective Date.</u>  The Original Effective Date is the date as of which the Plan was initially adopted.

(b)    <u>Amendment Effective Date.</u>  The Amendment Effective Date is the date specified in the Adoption Agreement as of which the Plan is amended and restated.  Except to the extent otherwise provided herein or in the Adoption Agreement, the Plan shall apply to amounts deferred and benefit payments made on or after the Amendment Effective Date.

(c)    <u>Special Effective Date.</u>  A Special Effective Date may apply to any given provision if so specified in Appendix A of the Adoption Agreement.  A Special Effective Date will control over the Original Effective Date or Amendment Effective Date, whichever is applicable, with respect to such provision of the Plan.

**1.3**    **Amounts Not Subject to Code Section 409A**

Except as otherwise indicated by the Plan Sponsor in Section 1.01 of the Adoption Agreement, amounts deferred before January 1, 2005 that are earned and vested on December 31, 2004 will be separately accounted for and administered in accordance with the terms of the Plan as in effect on December 31, 2004

# ARTICLE 2 – DEFINITIONS

Pronouns used in the Plan are in the masculine gender but include the feminine gender unless the context clearly indicates otherwise.  Wherever used herein, the following terms have the meanings set forth below, unless a different meaning is clearly required by the context:

**2.1**  **"Account"** means an account established for the purpose of recording amounts credited on behalf of a Participant and any income, expenses, gains, losses or distributions included thereon.  The Account shall be a bookkeeping entry only and shall be utilized solely as a device for the measurement and determination of the amounts to be paid to a Participant or to the Participant's Beneficiary pursuant to the Plan.

**2.2**  **"Administrator"** means the person or persons designated by the Plan Sponsor in Section 1.05 of the Adoption Agreement to be responsible for the administration of the Plan.  If no Administrator is designated in the Adoption Agreement, the Administrator is the Plan Sponsor.

**2.3**  **"Adoption Agreement"** means the agreement adopted by the Plan Sponsor that establishes the Plan.

**2.4**  **"Beneficiary"** means the persons, trusts, estates or other entities entitled under Section 8.2 to receive benefits under the Plan upon the death of a Participant.

**2.5**  **"Board" or "Board of Directors"** means the Board of Directors of the Plan Sponsor.

**2.6**  **"Bonus"** means an amount of incentive remuneration payable by the Employer to a Participant.

**2.7**  **"Change in Control"** means the occurrence of an event involving the Plan Sponsor that is described in Section 9.7.

**2.8**  **"Code"** means the Internal Revenue Code of 1986, as amended.

**2.9**  **"Compensation"** has the meaning specified in Section 3.01 of the Adoption Agreement.

**2.10**  **"Director"** means a non-employee member of the Board who has been designated by the Employer as eligible to participate in the Plan.

**2.11** **"Disabled"** means a determination by the Administrator that the Participant is either (a) unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, or (b) is, by reason of any medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than twelve months, receiving income replacement benefits for a period of not less than three months under an accident and health plan covering employees of the Employer.  A Participant will be considered Disabled if he is determined to be totally disabled by the Social Security Administration or the Railroad Retirement Board.

**2.12** **"Eligible Employee"** means an employee of the Employer who satisfies the requirements in Section 2.01 of the Adoption Agreement.

**2.13** **"Employer"** means the Plan Sponsor and any other entity which is authorized by the Plan Sponsor to participate in and, in fact, does adopt the Plan.

**2.14** **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

**2.15** **"Identification Date"** means the date as of which Key Employees are determined which is specified in Section 1.06 of the Adoption Agreement.

**2.16** **"Key Employee"** means an employee who satisfies the conditions set forth in Section 9.6.

**2.17** **"Participant"** means an Eligible Employee or Director who commences participation in the Plan in accordance with Article 3.

**2.18** **"Plan"** means the unfunded plan of deferred compensation set forth herein, including the Adoption Agreement and any trust agreement, as adopted by the Plan Sponsor and as amended from time to time.

**2.19** **"Plan Sponsor"** means the entity identified in Section 1.03 of the Adoption Agreement.

**2.20** **"Plan Year"** means the period identified in Section 1.02 of the Adoption Agreement.

**2.21** **"Related Employer"** means the Employer and (a) any corporation that is a member of a controlled group of corporations as defined in Code Section 414(b) that includes the Employer and (b) any trade or business that is under common control as defined in Code Section 414(c) that includes the Employer.

**2.22**  **"Retirement"** has the meaning specified in 6.01(f) of the Adoption Agreement.

**2.23**  **"Separation from Service"** All determinations of whether a Separation from Service has occurred will be made in a manner consistent with Code Section 409A and the final regulations thereunder.

**2.24**   **"Unforeseeable Emergency"** means a severe financial hardship of the Participant resulting from an illness or accident of the Participant, the Participant's spouse, the Participant's Beneficiary, or the Participant's dependent (as defined in Code Section 152, without regard to Code section 152(b)(i), (b)(2) and (d)(i)(B); loss of the Participant's property due to casualty; or other similar extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the Participant.

**2.25**  **"Valuation Date"** means each business day of the Plan Year.

**2.26**  **"Years of Service"** means each one year period for which the Participant receives service credit in accordance with the provisions of Section 7.01(d) of the Adoption Agreement.

## ARTICLE 3 – PARTICIPATION

3.1 **Participation.**  The Participants in the Plan shall be those Directors and employees of the Employer who satisfy the requirements of Section 2.01 of the Adoption Agreement.

3.2 **Termination of Participation.**  The Administrator may terminate a Participant's participation in the Plan in a manner that will not trigger income tax penalties under Code Section 409A.

# ARTICLE 4 – PARTICIPANT ELECTIONS

**4.1**    **Deferral Agreement.**  If permitted by the Plan Sponsor in accordance with Section 4.01 of the Adoption Agreement, each Eligible Employee and Director may elect to defer his Compensation within the meaning of Section 3.01 of the Adoption Agreement by executing in writing or electronically, a deferral agreement in accordance with rules and procedures established by the Administrator and the provisions of this Article 4.

A new deferral agreement must be timely executed for each Plan Year during which the Eligible Employee or Director desires to defer Compensation An Eligible Employee or Director who does not timely execute a deferral agreement shall be deemed to have elected zero deferrals of Compensation for such Plan Year.

A deferral agreement may be changed or revoked during the period specified by the Administrator.  Except as provided in Section 9.3 or in Section 4.01(c) of the Adoption Agreement, a deferral agreement becomes irrevocable at the close of the specified period.

**4.2**    **Amount of Deferral.**  An Eligible Employee or Director may elect to defer Compensation in any amount permitted by Section 4.01(a) of the Adoption Agreement.

**4.3**    **Timing of Election to Defer.**  Each Eligible Employee or Director who desires to defer Compensation otherwise payable during a Plan Year must execute a deferral agreement within the period preceding the Plan Year specified by the Administrator.  Each Eligible Employee who desires to defer Compensation that is a Bonus must execute a deferral agreement within the period preceding the Plan Year during which the Bonus is earned that is specified by the Administrator, except that if the Bonus can be treated as performance based compensation as described in Code Section 409A(a)(4)(B)(iii), the deferral agreement may be executed within the period specified by the Administrator, which period, in no event, shall end after the date which is six months prior to the end of the period during which the Bonus is earned or such earlier date as required under reg. sec 1.409A-2(a)(8) to avoid tax or penalties under code section 409A.. In addition, if the Compensation qualifies as 'fiscal year compensation' within the meaning of Reg. Sec. 1.409A -2(a)(6), the deferral agreement may be made not later than the end of the Employer's taxable year immediately preceding the first taxable year of the Employer in which any services are performed for which such Compensation is payable. Except as otherwise provided below, an employee who is classified or designated as an

Eligible Employee during a Plan Year or a Director who is designated as eligible to participate during a Plan Year may elect to defer Compensation otherwise payable during the remainder of such Plan Year in accordance with the rules of this Section 4.3 by executing a deferral agreement within the thirty (30) day period beginning on the date the employee is classified or designated as an Eligible Employee or the date the Director is designated as eligible, whichever is applicable, if permitted by Section 2.01 of the Adoption Agreement.  If Compensation is based on a specified performance period that begins before the Eligible Employee or Director executes his deferral agreement, the election will be deemed to apply to the portion of such Compensation equal to the total amount of Compensation for the performance period multiplied by the ratio of the number of days remaining in the performance period after the election over the total number of days in the performance period.  The rules of this paragraph shall not apply unless the Eligible Employee or Director can be treated as initially eligible in accordance with Reg. Sec. 1.409A-2(a)(7).

**4.4    Election of Payment Schedule and Form of Payment.**

All elections of a payment schedule and a form of payment will be made in accordance with rules and procedures established by the Administrator and the provisions of this Section 4.4.

(a)    If the Plan Sponsor has elected to permit annual distribution elections in accordance with Section 6.01(h) of the Adoption Agreement the following rules apply.  At the time an Eligible Employee of Director completes a deferral agreement, the Eligible Employee or Director must elect a distribution event (which includes a specified time) and a form of payment for the Compensation subject to the deferral agreement and for any Employer contributions that may be credited to the Participant's Account during the Plan Year from among the options the Plan Sponsor has made available for this purpose and which are specified in 6.01(b) of the Adoption Agreement.  If an Eligible Employee or Director fails to elect a distribution event, he shall be deemed to have elected Separation from Service as the distribution event.  If he fails to elect a form of payment, he shall be deemed to have elected a lump sum form of payment.

(b)    If the Plan Sponsor has elected not to permit annual distribution elections in accordance with Section 6.01(h) of the Adoption Agreement the following rules apply.  At the time an Eligible Employee or Director first completes a deferral agreement, the Eligible Employee or Director must elect a distribution event (which includes a specified time) and a form of payment for amounts credited to his Account from among the options the Plan Sponsor has made available for this purpose and which are specified in Section 6.01(b) of the Adoption Agreement.  If an Eligible Employee or Director fails to elect a distribution event, he shall be deemed to have

elected Separation from Service in the distribution event.  If the fails to elect a form of payment, he shall be deemed to have elected a lump sum form of payment.

.

## ARTICLE 5 – EMPLOYER CONTRIBUTIONS

**5.1**    **Matching Contributions.**  If elected by the Plan Sponsor in Section 5.01(a) of the Adoption Agreement, the Employer will credit the Participant's Account with a matching contribution determined in accordance with the formula specified in Section 5.01(a) of the Adoption Agreement.  The matching contribution will be treated as allocated to the Participant's Account at the time specified in Section 5.01(a)(iii) of the Adoption Agreement.

**5.2**    **Other Contributions.**  If elected by the Plan Sponsor in Section 5.01(b) of the Adoption Agreement, the Employer will credit the Participant's Account with a contribution determined in accordance with the formula or method specified in Section 5.01(b) of the Adoption Agreement.  The contribution will be treated as allocated to the Participant's Account at the time specified in Section 5.01(b)(iii) of the Adoption Agreement.

## ARTICLE 6 – ACCOUNTS AND CREDITS

6.1 **Establishment of Account.**  For accounting and computational purposes only, the Administrator will establish and maintain an Account on behalf of each Participant which will reflect the credits made pursuant to Section 6.2, distributions or withdrawals, along with the earnings, expenses, gains and losses allocated thereto, attributable to the hypothetical investments made with the amounts in the Account as provided in Article 7.  The Administrator will establish and maintain such other records and accounts, as it decides in its discretion to be reasonably required or appropriate to discharge its duties under the Plan.

6.2 **Credits to Account.**  A Participant's Account will be credited for each Plan Year with the amount of his elective deferrals under Section 4.1 at the time the amount subject to the deferral election would otherwise have been payable to the Participant and the amount of Employer contributions treated as allocated on his behalf under Article 5.

## ARTICLE 7 – INVESTMENT OF CONTRIBUTIONS

**7.1**  **Investment Options.**  The amount credited to each Account shall be treated as invested in the investment options designated for this purpose by the Administrator.

**7.2**  **Adjustment of Accounts.**  The amount credited to each Account shall be adjusted for hypothetical investment earnings, expenses, gains or losses in an amount equal to the earnings, expenses, gains or losses attributable to the investment options selected by the party designated in Section 9.01 of the Adoption Agreement from among the investment options provided in Section 7.1.  If permitted by Section 9.01 of the Adoption Agreement, a Participant (or the Participant's Beneficiary after the death of the Participant) may, in accordance with rules and procedures established by the Administrator, select the investments from among the options provided in Section 7.1 to be used for the purpose of calculating future hypothetical investment adjustments to the Account or to future credits to the Account under Section 6.2 effective as the Valuation Date coincident with or next following notice to the Administrator.  Each Account shall be adjusted as of each Valuation Date to reflect: (a) the hypothetical earnings, expenses, gains and losses described above; (b) amounts credited pursuant to Section 6.2; and (c) distributions or withdrawals.  In addition, each Account may be adjusted for its allocable share of the hypothetical costs and expenses associated with the maintenance of the hypothetical investments provided in Section 7.1.

## ARTICLE 8 – RIGHT TO BENEFITS

**8.1**   **Vesting.**  A Participant, at all times, has the 100% nonforfeitable interest in the amounts credited to his Account attributable to his elective deferrals made in accordance with Section 4.1.

A Participant's right to the amounts credited to his Account attributable to Employer contributions made in accordance with Article 5 shall be determined in accordance with the relevant schedule and provisions in Section 7.01 of the Adoption Agreement.

**8.2**   **Death.**  **A** Participant may designate a Beneficiary or Beneficiaries, or change any prior designation of Beneficiary or Beneficiaries in accordance with rules and procedures established by the Administrator.

A copy of the death notice or other sufficient documentation must be filed with and approved by the Administrator.  If upon the death of the Participant there is, in the opinion of the Administrator, no designated Beneficiary for part or all of the Participant's vested Account, such amount will be paid to his estate (such estate shall be deemed to be the Beneficiary for purposes of the Plan) in accordance with the provisions of Article 9.

**8.3**   **Disability.**  The Administrator, in its sole discretion, shall determine whether a Participant has experienced a Disability for purposes of this Section 8.3.  If the payment of all or any portion of the Participant's vested Account is being delayed in accordance with Section 9.6 at the time he incurs a Disability, the amount being delayed shall not be subject to the provisions of this Section 8.3 until the expiration of the six month period of delay required by Section 9.6.

# ARTICLE 9 – DISTRIBUTION OF BENEFITS

**9.1**    **Amount of Benefits.**  The vested amount credited to a Participant's Account as determined under Articles 6, 7 and 8 shall determine and constitute the basis for the value of benefits payable to the Participant under the Plan.

**9.2**    **Method and Timing of Distributions.**  Except as otherwise provided in this Article 9, distributions under the Plan shall be made in accordance with the elections made or deemed made by the Participant under Article 4. Subject to the provisions of Section 9.6 requiring a six month delay for certain distributions to Key Employees, distributions following a payment event shall commence at the time specified in Section 6.01(a) of the Adoption Agreement.  If permitted by Section 6.01(g) of the Adoption Agreement, a Participant may elect, at least twelve months before a scheduled distribution event, to delay the payment date for a minimum period of sixty months from the originally scheduled date of payment.  The distribution election change must be made in accordance with procedures and rules established by the Administrator.  The Participant may, at the same time the date of payment is deferred, change the form of payment but such change in the form of payment may not effect an acceleration of payment that would trigger tax or penalties under Code Section 409A or the provisions of Reg. Sec. 1.409A-2(b).  For purposes of this Section 9.2, a series of installment payments is always treated as a single payment and not as a series of separate payments.

**9.3**    **Unforeseeable Emergency.**  A Participant may request a distribution due to an Unforeseeable Emergency if the Plan Sponsor has elected to permit Unforeseeable Emergency withdrawals under Section 8.01(a) of the Adoption Agreement.  The request must be in writing and must be submitted to the Administrator along with evidence that the circumstances constitute an Unforeseeable Emergency. The Administrator has the discretion to require whatever evidence it deems necessary to determine whether a distribution is warranted.   Whether a Participant has incurred an Unforeseeable Emergency will be determined by the Administrator on the basis of the relevant facts and circumstances in its sole discretion, but, in no event, will an Unforeseeable Emergency be deemed to exist if the hardship can be relieved:  (a) through reimbursement or compensation by insurance or otherwise, (b) by liquidation of the Participant's assets to the extent such liquidation would not itself cause severe financial hardship, or (c) by cessation of deferrals under the Plan.  A distribution due to an Unforeseeable Emergency must be limited to the amount reasonably necessary to satisfy the emergency need and may include any amounts necessary to pay any federal, state or local income tax penalties

reasonably anticipated to result from the distribution.  The distribution will be made in the form of a single lump sum cash payment.  If permitted by Section 8.01(b) of the Adoption Agreement, a Participant's deferral elections for the remainder of the Plan Year will be cancelled upon a withdrawal due to Unforeseeable Emergency.  If the payment of all or any portion of the Participant's vested Account is being delayed in accordance with Section 9.6 at the time he experiences an Unforeseeable Emergency, the amount being delayed shall not be subject to the provisions of this Section 9.3 until the expiration of the six month period of delay required by section 9.6.

9.4    **Payment Election Overrides.**  If the Plan Sponsor has elected one or more payment election overrides in accordance with Section 6.01(d) of the Adoption Agreement, the following provisions apply.  Upon the occurrence of the first event selected by the Plan Sponsor, the remaining vested amount credited to the Participant's Account shall be paid in the form designated to the Participant or his Beneficiary regardless of whether the Participant had made different elections of time and /or form of payment or whether the Participant was receiving installment payments at the time of the event.

9.5    **Cashouts Of Amounts Not Exceeding Stated Limit.**  If the vested amount credited to the Participant's Account does not exceed the limit established for this purpose by the Plan Sponsor in Section 6.01(e) of the Adoption Agreement at the time he separates from service with the Related Employer for any reason, the Employer shall distribute such amount to the Participant at the time specified in Section 6.01(a) of the Adoption Agreement in a single lump sum cash payment following such termination regardless of whether the Participant had made different elections of time or form of payment as to the vested amount credited to his Account or whether the Participant was receiving installments at the time of such termination.  A Participant's Account, for purposes of this Section 9.5, shall include any amounts described in Section 1.3.

9.6    **Required Delay in Payment to Key Employees**.  Except as otherwise provided in this Section 9.6, a distribution made because of Separation from Service (or Retirement, if applicable) to a Participant who is a Key Employee as of the date of his Separation from Service (or Retirement, if applicable) shall not occur before the date which is six months after the Separation from Service (or Retirement, if applicable).

(a) A Participant is treated as a Key Employee if (i) he is employed by a Related Employer any of whose stock is publicly traded on an established securities market, and (ii) he satisfies the requirements of Code Section 416(i)(1)(A)(i), (ii) or (iii), determined without regard to Code Section

416(i)(5), at any time during the twelve month period ending on the Identification Date.

(b) A Participant who is a Key Employee on an Identification Date shall be treated as a Key Employee for purposes of the six month delay in distributions for the twelve month period beginning on the first day of a month no later than the fourth month following the Identification Date.  The Identification Date and the effective date of the delay in distributions shall be determined in accordance with Section 1.06 of the Adoption Agreement.

(c) The Plan Sponsor may elect to apply an alternative method to identify Participants who will be treated as Key Employees for purposes of the six month delay in distributions if the method satisfies each of the following requirements.  The alternative method is reasonably designed to include all Key Employees, is an objectively determinable standard providing no direct or indirect election to any Participant regarding its application, and results in either all Key Employees or no more than 200 Key Employees being identified in the class as of any date.  Use of an alternative method that satisfies the requirements of this Section 9.6(c ) will not be treated as a change in the time and form of payment for purposes of Reg. Sec. 1.409A-2(b).

(d) The six month delay does not apply to payments described in Section 13.9 or to payments that occur after the death of the Participant.

**9.7    Change in Control.**  If the Plan Sponsor has elected to permit distributions upon a Change in Control, the following provisions shall apply.  A distribution made upon a Change in Control will be made at the time specified in Section 6.01(a) of the Adoption Agreement in the form elected by the Participant in accordance with the procedures described in Article 4.  Alternatively, if the Plan Sponsor has elected in accordance with Section 11.02 of the Adoption Agreement to require distributions upon a Change in Control, the Participant's remaining vested Account shall be paid to the Participant or the Participant's Beneficiary at the time specified in Section 6.01(a) of the Adoption Agreement as a single lump sum payment.  A Change in Control, for purposes of the Plan, will occur upon a change in the ownership of the Plan Sponsor, a change in the effective control of the Plan Sponsor or a change in the ownership of a substantial portion of the assets of the Plan Sponsor, but only if elected by the Plan Sponsor in Section 11.03 of the Adoption Agreement.  The Plan Sponsor,

for this purpose, includes any corporation identified in this Section 9.7.  All distributions made in accordance with this Section 9.7 are subject to the provisions of Section 9.6.

If a Participant continues to make deferrals in accordance with Article 4 after he has received a distribution due to a Change in Control, the residual amount payable to the Participant shall be paid at the time and in the form specified in the elections he makes in accordance with Article 4 or upon his death or Disability as provided in Article 8.

Whether a Change in Control has occurred will be determined by the Administrator in accordance with the rules and definitions set forth in this Section 9.7.  A distribution to the Participant will be treated as occurring upon a Change in Control if the Plan Sponsor terminates the Plan in accordance with Section 10.2 and distributes the Participant's benefits within twelve months of a Change in Control as provided in Section 10.3.

(a)    **Relevant Corporations.**  To constitute a Change in Control for purposes of the Plan, the event must relate to (i) the corporation for whom the Participant is performing services at the time of the Change in Control, (ii) the corporation that is liable for the payment of the Participant's benefits under the Plan (or all corporations liable if more than one corporation is liable) but only if either the deferred compensation is attributable to the performance of services by the Participant for such corporation (or corporations) or there is a bona fide business purpose for such corporation (or corporations) to be liable for such payment and, in either case, no significant purpose of making such corporation (or corporations) liable for such payment is the avoidance of federal income tax, or (iii) a corporation that is a majority shareholder of a corporation identified in (i) or (ii), or any corporation in a chain of corporations in which each corporation is a majority shareholder of another corporation in the chain, ending in a corporation identified in (i) or (ii).  A majority shareholder is defined as a shareholder owning more than fifty percent (50%) of the total fair market value and voting power of such corporation.

(b)    **Stock Ownership.**  Code Section 318(a) applies for purposes of determining stock ownership.  Stock underlying a vested option is considered owned by the individual who owns the vested option (and the stock underlying an unvested option is not considered owned by the individual who holds the unvested option).  If, however, a vested option is exercisable for stock that is not substantially vested (as defined by Treasury Regulation Section 1.83-3(b) and (j)) the stock underlying the option is not treated as owned by the individual who holds the option.

(c)     **Change in the Ownership of a Corporation.**  A change in the ownership of a corporation occurs on the date that any one person or more than one person acting as a group, acquires ownership of stock of the corporation that, together with stock held by such person or group, constitutes more than fifty percent (50%) of the total fair market value or total voting power of the stock of such corporation.  If any one person or more than one person acting as a proxy is considered to own more than fifty percent (50%) of the total fair market value or total voting power of the stock of a corporation, the acquisition of additional stock by the same person or persons is not considered to cause a change in the ownership of the corporation (or to cause a change in the effective control of the corporation as discussed below in Section 9.7(d)).  An increase in the percentage of stock owned by any one person, or persons acting as a group, as a result of a transaction in which the corporation acquires its stock in exchange for property will be treated as an acquisition of stock. Section 9.7(c) applies only when there is a transfer of stock of a corporation (or issuance of stock of a corporation) and stock in such corporation remains outstanding after the transaction.  For purposes of this Section 9.7(c), persons will not be considered to be acting as a group solely because they purchase or own stock of the same corporation at the same time or as a result of a public offering. Persons will, however, be considered to be acting as a group if they are owners of a corporation that enters into a merger, consolidation, purchase or acquisition of stock, or similar business transaction with the corporation.  If a person, including an entity, owns stock in both corporations that enter into a merger, consolidation, purchase or acquisition of stock, or similar transaction, such shareholder is considered to be acting as a group with other shareholders in a corporation prior to the transaction giving rise to the change and not with respect to the ownership interest in the other corporation.

(d)     **Change in the effective control of a corporation.**  A change in the effective control of a corporation occurs on the date that either (i) any one person, or more than one person acting as a group, acquires (or has acquired during the twelve month period ending on the date of the most recent acquisition by such person or persons) ownership of stock of the corporation possessing thirty (30%) or more of the total voting power of the stock of such corporation, or (ii) a majority of members of the corporation's board of directors is replaced during any twelve month period by directors whose appointment or election is not endorsed by a majority of the members of the corporation's board of directors prior to the date of the appointment or election, provided that for purposes of this paragraph (ii), the term corporation refers solely to the relevant corporation identified in Section 9.7(a) for which no other corporation is a majority shareholder for purposes of

Section 9.7(a).  In the absence of an event described in Section 9.7(d)(i) or (ii), a change in the effective control of a corporation will not have occurred.  A change in effective control may also occur in any transaction in which either of the two corporations involved in the transaction has a change in the ownership of such corporation as described in Section 9.7(c) or a change in the ownership of a substantial portion of the assets of such corporation as described in Section 9.7(e).  If any one person, or more than one person acting as a group, is considered to effectively control a corporation within the meaning of this Section 9.7(d), the acquisition of additional control of the corporation by the same person or persons is not considered to cause a change in the effective control of the corporation or to cause a change in the ownership of the corporation within the meaning of Section 9.7(c).  For purposes of this Section 9.7(d), persons will or will not be considered to be acting as a group in accordance with rules similar to those set forth in Section 9.7(c) with the following exception.  If a person, including an entity, owns stock in both corporations that enter into a merger, consolidation, purchase or acquisition of stock, or similar transaction, such shareholder is considered to be acting as a group with other shareholders in a corporation only with respect to the ownership in that corporation prior to the transaction giving rise to the change and not with respect to the ownership interest in the other corporation.

(e)    **Change in the ownership of a substantial portion of a corporation's assets.**  A change in the ownership of a substantial portion of a corporation's assets occurs on the date that any one person, or more than one person acting as a group (as determined in accordance with rules similar to those set forth in Section 9.7(d)), acquires (or has acquired during the twelve month period ending on the date of the most recent acquisition by such person or persons) assets from the corporation that have a total gross fair market value equal to or more than forty percent (40%) of the total gross fair market value of all of the assets of the corporation immediately prior to such acquisition or acquisitions.  For this purpose, gross fair market value means the value of the assets of the corporation of the value of the assets being disposed of determined without regard to any liabilities associated with such assets.  There is no Change in Control event under this Section 9.7(e) when there is a transfer to an entity that is controlled by the shareholders of the transferring corporation immediately after the transfer.  A transfer of assets by a corporation is not treated as a change in ownership of such assets if the assets are transferred to (i) a shareholder of the corporation (immediately before the asset transfer) in exchange for or with respect to its stock, (ii) an entity, fifty percent (50%) or more of the total value or voting power of which is owned, directly or indirectly, by the corporation, (iii) a person, or more than one person acting as a

group, that owns, directly or indirectly, fifty percent (50%) or more of the total value or voting power of all the outstanding stock of the corporation, or (iv) an entity, at least fifty (50%) of the total value or voting power of which is owned, directly or indirectly, by a person described in Section 9.7(e)(iii).  For purposes of the foregoing, and except as otherwise provided, a person's status is determined immediately after the transfer of assets.

**9.8**    **Permissible Delays in Payment.**  Distributions may be delayed beyond the date payment would otherwise occur in accordance with the provisions of Articles 8 and 9 in any of the following circumstances as long as the Employer treats all payments to similarly situated Participants on a reasonably consistent basis.

(a)    The Employer may delay payment if it reasonably anticipates that its deduction with respect to such payment would be limited or eliminated by the application of Code Section 162(m).  Payment must be made during the Participant's first taxable year in which the Employer reasonably anticipates, or should reasonably anticipate, that if the payment is made during such year the deduction of such payment will not be barred by the application of Code Section 162(m) or during the period beginning with the Participant's Separation from Service and ending on the later of the last day of the Employer's taxable year in which the Participant separates from service or the 15th day of the third month following the Participant's Separation from Service.  If a scheduled payment to a Participant is delayed in accordance with this Section 9.8(a), all scheduled payments to the Participant that could be delayed in accordance with this Section 9.8(a) will also be delayed.

(b)    The Employer may also delay payment if it reasonably anticipates that the making of the payment will violate federal securities laws or other applicable laws provided payment is made at the earliest date on which the Employer reasonably anticipates that the making of the payment will not cause such violation.

(c)    The Employer reserves the right to amend the Plan to provide for a delay in payment upon such other events and conditions as the Secretary of the Treasury may prescribe in generally applicable guidance published in the Internal Revenue Bulletin.

## ARTICLE 10 – AMENDMENT AND TERMINATION

**10.1** **Amendment by Plan Sponsor.**  The Plan Sponsor reserves the right to amend the Plan (for itself and each Employer) through action of its Board of Directors or such other person or entity to whom the Board delegates the authority.  No amendment can directly or indirectly deprive any current Participant or Beneficiary of all or any portion of his Account which had accrued prior to the amendment.

**10.2** **Plan Termination Following Change in Control or Corporate Dissolution.**  If so elected by the Plan Sponsor in 11.01 of the Adoption Agreement, the Plan Sponsor reserves the right to terminate the Plan and distribute all amounts credited to all Participant Accounts within the 30 days preceding or the twelve months following a Change in Control as determined in accordance with the rules set forth in Section 9.7. For this purpose, the Plan will be treated as terminated only if all agreements, methods, programs and other arrangements sponsored by the Related Employer immediately after the Change in Control which are treated as a single plan under Reg. Sec. 1.409A-1(c)(2) are also terminated so that all participants under the Plan and all similar arrangements are required to receive all amounts deferred under the terminated arrangements within twelve months of the date the Plan Sponsor irrevocably takes all necessary action to terminate the arrangements. In addition, the Plan Sponsor reserves the right to terminate the Plan within twelve months of a corporate dissolution taxed under Code Section 331 or with the approval of a bankruptcy court pursuant to 11 U. S. C. Section 503(b)(1)(A) provided that amounts deferred under the Plan are included in the gross incomes of Participants in the latest of (a) the calendar year in which the termination occurs, (b) the first calendar year in which the amount is no longer subject to a substantial risk of forfeiture, or (c) the first calendar year in which payment is administratively practicable.

**10.3** **Other Plan Terminations.**  The Plan Sponsor retains the discretion to terminate the Plan if (a) all arrangements sponsored by the Plan Sponsor that would be aggregated with any terminated arrangement under  Code Section 409A and Reg. Sec. 1.409A-1(c)(2) are terminated, (b) no payments other than payments that would be payable under the terms of the arrangements if the termination had not occurred are made within twelve months of the termination of the arrangements, (c) all payments are made within twenty-four months of the termination of the arrangements, (d) the Plan Sponsor does not adopt a new arrangement that would be aggregated with any terminated arrangement under Code Section 409A and the regulations thereunder at any time within the three year period following the date of termination of the arrangement, and (e)

the termination does not occur proximate to a downturn in the financial
health of the Plan sponsor.  The Plan Sponsor also reserves the right to
amend the Plan to provide that termination of the Plan will occur under
such conditions and events as may be prescribed by the Secretary of the
Treasury in generally applicable guidance published in the Internal
Revenue Bulletin.

# ARTICLE 11 – THE TRUST

**11.1** **Establishment of Trust.**  The Plan Sponsor may but is not required to establish a trust to hold amounts which the Plan Sponsor may contribute from time to time to correspond to some or all amounts credited to Participants under Section 6.2.  If the Plan Sponsor elects to establish a trust in accordance with Section 10.01 of the Adoption Agreement, the provisions of Sections 11.2 and 11.3 shall become operative.

**11.2** **Grantor Trust.**  Any trust established by the Plan Sponsor shall be between the Plan Sponsor and a trustee pursuant to a separate written agreement under which assets are held, administered and managed, subject to the claims of the Plan Sponsor's creditors in the event of the Plan Sponsor's insolvency..  The trust is intended to be treated as a grantor trust under the Code, and the establishment of the trust shall not cause the Participant to realize current income on amounts contributed thereto.  The Plan Sponsor must notify the trustee in the event of a bankruptcy or insolvency.

**11.3** **Investment of Trust Funds.**  Any amounts contributed to the trust by the Plan Sponsor shall be invested by the trustee in accordance with the provisions of the trust and the instructions of the Administrator.  Trust investments need not reflect the hypothetical investments selected by Participants under Section 7.1 for the purpose of adjusting Accounts and the earnings or investment results of the trust need not affect the hypothetical investment adjustments to Participant Accounts under the Plan.

## ARTICLE 12 – PLAN ADMINISTRATION

**12.1    Powers and Responsibilities of the Administrator.**  The Administrator has the full power and the full responsibility to administer the Plan in all of its details, subject, however, to the applicable requirements of ERISA. The Administrator's powers and responsibilities include, but are not limited to, the following:

(a)    To make and enforce such rules and procedures as it deems necessary or proper for the efficient administration of the Plan;

(b)    To interpret the Plan, its interpretation thereof to be final, except as provided in Section 12.2, on all persons claiming benefits under the Plan;

(c)    To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;

(d)    To administer the claims and review procedures specified in Section 12.2;

(e)    To compute the amount of benefits which will be payable to any Participant, former Participant or Beneficiary in accordance with the provisions of the Plan;

(f)    To determine the person or persons to whom such benefits will be paid;

(g)    To authorize the payment of benefits;

(h)    To comply with the reporting and disclosure requirements of Part 1 of Subtitle B of Title I of ERISA;

(i)    To appoint such agents, counsel, accountants, and consultants as may be required to assist in administering the Plan;

(j)    By written instrument, to allocate and delegate its responsibilities, including the formation of an Administrative Committee to administer the Plan.

## 12.2    Claims and Review Procedures.

(a)    Claims Procedure.

If any person believes he is being denied any rights or benefits under the Plan, such person may file a claim in writing with the Administrator.  If any such claim is wholly or partially denied, the Administrator will notify such person of its decision in writing.  Such notification will contain (i) specific reasons for the denial, (ii) specific reference to pertinent Plan provisions, (iii) a description of any additional material or information necessary for such person to perfect such claim and an explanation of why such material or information is necessary, and (iv) a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the person's right to bring a civil action following an adverse decision on review.  Such notification will be given within 90 days (45 days in the case of a claim regarding Disability) after the claim is received by the Administrator.  The Administrator may extend the period for providing the notification by 90 days (30 days in the case of a claim regarding Disability) if special circumstances require an extension of time for processing the claim and if written notice of such extension and circumstance is given to such person within the initial 90 day period (45 day period in the case of a claim regarding Disability).  If such notification is not given within such period, the claim will be considered denied as of the last day of such period and such person may request a review of his claim.

(b)    Review Procedure.

Within 60 days (180 days in the case of a claim regarding Disability) after the date on which a person receives a written notification of denial of claim (or, if written notification is not provided, within 60 days (180 days in the case of a claim regarding Disability) of the date denial is considered to have occurred), such person (or his duly authorized representative) may (i) file a written request with the Administrator for a review of his denied claim and of pertinent documents and (ii) submit written issues and comments to the Administrator.  The Administrator will notify such person of its decision in writing.  Such notification will be written in a manner calculated to be understood by such person and will contain specific reasons for the decision as well as specific references to pertinent Plan provisions.  The notification will explain that the person is entitled to receive, upon request and free of charge, reasonable access to and copies of all pertinent documents and

has the right to bring a civil action following an adverse decision on review.  The decision on review will be made within 60 days (45 days in the case of a claim regarding Disability).  The Administrator may extend the period for making the decision on review by 60 days (45 days in the case of a claim regarding Disability) if special circumstances require an extension of time for processing the request such as an election by the Administrator to hold a hearing, and if written notice of such extension and circumstances is given to such person within the initial 60-day period (45 days in the case of a claim regarding Disability).  If the decision on review is not made within such period, the claim will be considered denied.

**12.3    Plan Administrative Costs.**  All reasonable costs and expenses (including legal, accounting, and employee communication fees) incurred by the Administrator in administering the Plan shall be paid by Plan to the extent not paid by the Employer.

## ARTICLE 13 – MISCELLANEOUS

**13.1    Unsecured General Creditor of the Employer.**  Participants and their Beneficiaries, heirs, successors and assigns shall have no legal or equitable rights, interests or claims in any property or assets of the Employer.  For purposes of the payment of benefits under the Plan, any and all of the Employer's assets shall be, and shall remain, the general, unpledged, unrestricted assets of the Employer.  Each Employer's obligation under the Plan shall be merely that of an unfunded and unsecured promise to pay money in the future.

**13.2    Employer's Liability.**  Each Employer's liability for the payment of benefits under the Plan shall be defined only by the Plan and by the deferral agreements entered into between a Participant and the Employer.  An Employer shall have no obligation or liability to a Participant under the Plan except as provided by the Plan and a deferral agreement or agreements.  An Employer shall have no liability to Participants employed by other Employers.

**13.3    Limitation of Rights.**  Neither the establishment of the Plan, nor any amendment thereof, nor the creation of any fund or account, nor the payment of any benefits, will be construed as giving to the Participant or any other person any legal or equitable right against the Employer, the Plan or the Administrator, except as provided herein; and in no event will the terms of employment or service of the Participant be modified or in any way affected hereby.

**13.4    Anti-Assignment.**  Except as may be necessary to fulfill a domestic relations order within the meaning of Code Section 414(p), none of the benefits or rights of a Participant or any Beneficiary of a Participant shall be subject to the claim of any creditor.  In particular, to the fullest extent permitted by law, all such benefits and rights shall be free from attachment, garnishment, or any other legal or equitable process available to any creditor of the Participant and his or her Beneficiary.  Neither the Participant nor his or her Beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber, or assign any of the payments which he or she may expect to receive, contingently or otherwise, under the Plan, except the right to designate a Beneficiary to receive death benefits provided hereunder.  Notwithstanding the preceding, the benefit payable from a Participant's Account may be reduced, at the discretion of the administrator, to satisfy any debt or liability to the Employer.

**13.5    Facility of Payment.**  If the Administrator determines, on the basis of medical reports or other evidence satisfactory to the Administrator, that the recipient of any benefit payments under the Plan is incapable of handling his affairs by reason of minority, illness, infirmity or other incapacity, the Administrator may direct the Employer to disburse such payments to a person or institution

4

designated by a court which has jurisdiction over such recipient or a person or institution otherwise having the legal authority under State law for the care and control of such recipient. The receipt by such person or institution of any such payments therefore, and any such payment to the extent thereof, shall discharge the liability of the Employer, the Plan and the Administrator  for the payment of benefits hereunder to such recipient.

13.6    **Notices.**  Any notice or other communication to the Employer or Administrator in connection with the Plan shall be deemed delivered in writing if addressed to the Plan Sponsor at the address specified in Section 1.03 of the Adoption Agreement and if either actually delivered at said address or, in the case or a letter, 5 business days shall have elapsed after the same shall have been deposited in the United States mails, first-class postage prepaid and registered or certified.

13.7    **Tax Withholding.**  If the Employer concludes that tax is owing with respect to any deferral or payment hereunder, the Employer shall withhold such amounts from any payments due the Participant, as permitted by law, or otherwise make appropriate arrangements with the Participant or his Beneficiary for satisfaction of such obligation.  Tax, for purposes of this Section 13.7 means any federal, state, local or any other governmental income tax, employment or payroll tax, excise tax, or any other tax or assessment owing with respect to amounts deferred, any earnings thereon, and any payments made to Participants under the Plan.

5

**13.8    Permitted Acceleration of Payment.**  The Plan may permit acceleration
of the time or schedule of any payment or amount scheduled to be paid pursuant
to a payment under the Plan provided such acceleration would be permitted by
the provisions of Reg. Sec. 1.409A-3(j)(4).

**13.9    Governing Law.**  The Plan will be construed, administered in accordance with
ERISA and the Code and, to the extent ERISA or the Code do not apply,
enforced according to the laws of the State of Michigan specified by the Plan
Sponsor in Section 12.01 of the Adoption Agreement.