Hearing Date & Time: September 25, 2008 at 9:00 a.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Albert L. Hogan III
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :
    In re                         :        Chapter 11
                                :
DELPHI CORPORATION, et al.,    :        Case No. 05-44481 (RDD)
                                :
            Debtors.    :        (Jointly Administered)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' SUPPLEMENT TO OMNIBUS REPLY
IN SUPPORT OF GSA AND MRA AMENDMENT MOTION

Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this supplement (the "Supplement") to the Debtors' omnibus reply in support of the Debtors' Expedited Motion For Order Authorizing Debtors To Implement Amended And Restated Global Settlement Agreement And Master Restructuring Agreement With General Motors Corporation, dated September 12, 2008 (the "GSA And MRA Amendment Motion" or "Motion").

### Preliminary Statement

1. This supplemental omnibus reply is submitted to further demonstrate the lack of merit of certain of the objections alleging that the Amended GSA[1] and the Amended MRA[2] constitute modifications to the Debtors' confirmed plan of reorganization subject to the requirements of section 1127 of the Bankruptcy Code.

2. The Approved GSA[3] and the Approved MRA[4] can be modified pursuant to the express terms of the Plan (as defined in the Confirmation Order[5]), Confirmation Order, the Approved GSA, and the Approved MRA. The Approved GSA and Approved MRA are incorporated by reference into the Debtors' confirmed Plan in their entirety and expressly allow for

---

[1] "Amended And Restated Global Agreement Between Delphi Corporation And General Motors Corporation, Dated September 12, 2008."

[2] "Amended And Restated Master Restructuring Agreement Between Delphi Corporation And General Motors Corporation, Dated September 12, 2008."

[3] "Global Settlement Agreement Between Delphi Corporation And General Motors Corporation, Dated September 6, 2008, As Amended December 7, 2007."

[4] "Master Restructuring Agreement Between Delphi Corporation And General Motors Corporation, Dated September 6, 2008, As Amended December 7, 2007."

[5] "Findings Of Fact, Conclusions Of Law, And Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession" (Docket No. 12359).

subsequent modification and amendment by the Debtors and GM.[6] (Approved GSA § 7.12; Approved MRA § 7.16.) In addition, Article 7.20 of the Plan states that "[i]n the event there are any conflicts between the terms and provisions of the Plan or Confirmation Order (and as each may be amended) and the terms and provisions of the [Approved GSA] and [Approved MRA], the terms of the [Approved GSA] and [Approved MRA] shall govern, which terms are deemed incorporated by reference into the Plan." (Plan § 7.20.) Because the Approved GSA and Approved MRA expressly provide for modification of the agreements by the parties and such provisions are controlling provisions, section 1127 is not implicated in the amendment of these settlement agreements. As described in detail below, the Amended GSA and the Amended MRA may be amended without implicating section 1127 because under applicable case law, when modifications are expressly authorized by a confirmed plan, those modifications do not require section 1127 relief.

        3.      Furthermore, even if the Court were to construe the documents in such a way that section 1127 would somehow be applicable, the Motion may still be granted because: (a) the Debtors, GM, or both can terminate the Approved GSA and Approved MRA in accordance with their terms,[7] (b) the Debtors can withdraw the Plan in accordance with their rights as reserved in Article 14.7(a) of the Plan, and (c) before entry of an order approving the Amended GSA and Amended MRA, the Court can vacate the Confirmation Order through the authority it reserved at the confirmation hearings. Accordingly, under all circumstances, there is no obstacle to the Court's addressing or granting the Motion on the merits.

---

[6] Relevant provisions of the Plan, Confirmation Order, Approved GSA, and Approved MRA are attached hereto as Appendix A.

[7] The Debtors' Board has not considered, and would have to approve, such an action.

Supplemental Authorities

A.  Amending The GSA And MRA Does Not Constitute A
    Section 1127 Modification Of The Plan

    4.   The Amended GSA and Amended MRA do not constitute a modification to the Plan under section 1127 of the Bankruptcy Code. The confirmed Plan expressly permits modification of the Approved GSA and Approved MRA in accordance with the terms of the confirmed Plan, as demonstrated immediately below. Case law holds that modifications expressly authorized in confirmed Plans do not constitute section 1127 modifications.

    (i)  The Confirmation Order, Confirmed Plan, And Exhibits Permit
         The GSA And MRA To Be Amended

    5.   The Amended GSA and the Amended MRA are not section 1127 modifications to the confirmed Plan because the amendments are specifically contemplated by each of the Confirmation Order, the Plan, the Approved GSA, and the Approved MRA[8] themselves. First, the Confirmation Order allows the Debtors to modify exhibits according to their terms. (Conf. Order ¶ 1.) The Approved GSA and the Approved MRA expressly allow for subsequent modification and amendment.[9] (Approved GSA § 7.12; Approved MRA § 7.16.) The provisions of the Approved GSA and the Approved MRA allowing amendment are authorized and approved by the Confirmation Order and are incorporated into the Plan. (Confirmation Order ¶ 58; Plan Art. 7.20.) Most importantly, the Approved GSA and the Approved MRA govern the modification or amendment of those agreements, notwithstanding any conflicting language in the Plan or Confirmation Order. "[I]n the event there are any conflicts between the terms and

---

[8]  Article 1.45 of the Plan defines the "Delphi-GM Definitive Documents" to include both the Delphi-GM Global Settlement Agreement (as defined in Plan Article 1.46, the "GSA") and the Delphi-GM Master Restructuring Agreement (as defined in Plan Article 1.47, the "MRA").

[9]  Section 7.12 of the Approved GSA and section 7.16 of the Approved MRA each provides that "this Agreement may not be modified, waived, amended or supplemented unless such modification, waiver, amendment or supplement is in writing and has been signed by each Party."

provisions of the Plan or Confirmation Order," the terms of the Approved GSA and the Approved MRA govern. (Plan Art. 7.20.) Accordingly, each of the Confirmation Order, Plan, the Approved GSA, and Approved MRA contemplate, provide for, and authorize the amendment of the Approved GSA and the Approved MRA.

      6.      Wilmington Trust Company's position that the Approved GSA and the Approved MRA cannot be amended without consent of the Official Committee of Unsecured Creditors (the "Creditors' Committee") is without merit. First, as indicated above, the terms of the Approved GSA and Approved MRA control over any contrary terms in the other Plan documents, including the Plan proper. Second, the Debtors are not seeking to waive any conditions to the Effective Date at this time, and the provisions of 12.3 of the Plan regarding consent rights relating to the waiver of conditions to effectiveness are therefore inapplicable. Finally, Wilmington Trust Company's objection, even if valid, can only be raised by the Creditors' Committee itself.

    (ii)    Amending Documents As Expressly Permitted By A Confirmed Plan Does Not Constitute A Section 1127 Modification Of That Plan

      7.      The Bankruptcy Code does not define "modification." <u>State Gov't Creditors' Committee For Property Damage Claims v. McKay</u> (In re Johns-Manville Corp.), 920 F.2d 121, 128 (2d Cir. 1990) (holding that post-consummation suspension of claims processing facility was not section 1127 modification of plan after turning to plan for guidance as to meaning of "modification"); <u>Cohen v. TIC Fin. Sys.</u> (In re Ampace Corp.), 279 B.R. 145, 152 (Bankr. D. Del. 2002) (post-consummation orders extending plan's deadline to commence avoidance actions because trustee had not complied with section 1127 where plan did not authorize requests for extensions found to be void); cf. <u>Doral Center, Inc. v. Ionosphere Clubs, Inc.</u> (In re Ionosphere Clubs, Inc.), 208 B.R. 812, 816 (S.D.N.Y. 1997) (noting that section 1127 modification is one that "alter[s] the legal relationship among the debtor and its creditors and other parties in interest").

5

8. Moreover, few cases discuss modifications to a plan after confirmation but prior to consummation. One of the few applicable cases is In re Johns-Manville Corp., 920 F.2d 121, in which the confirmed plan (the "Johns-Manville plan") established a trust to reconcile and pay claims asserted by various government-related persons. Id. at 123. After confirmation but before consummation, the trustees obtained a bankruptcy court order permitting them to apply for approval of a modification or suspension of the trust's claim processing facility during time periods when the trust was not expected to have sufficient income to make payments on claims. Id. at 123-24. Subsequently, after consummation, the trustees obtained a second bankruptcy court order permitting an anticipated 30-year suspension of the trust's claims processing facility. Id. at 124-25. A committee of state governments appealed the second order on the ground that it authorized a section 1127 plan modification in violation of section 1127. Id. 123-24, 125. The district court, however, affirmed the bankruptcy court's ruling after concluding that the suspension "was entirely consistent with and pursuant to the provisions of the reorganization plan." Id. at 125.

9. The Second Circuit also affirmed, holding the Johns-Manville plan expressly permitted suspension of the claims processing facility and thus that no section 1127 modification of the plan had occurred. The plan's definition of "PD Facility" (the claims processing facility) provided that the trustees "may amend, delete or add to the procedural provisions with respect to the operation of the PD Claims Resolution Facility except for Modifications, provided that no such amendment, deletion or addition may affect any of the substantive provisions set forth in [the guidelines] . . . ." Id. at 128. The guidelines permitted the PD Facility "to establish procedures to reduce administrative costs . . . ." Id. The court was not persuaded by the committee's argument that under an "outcome-determinative" test, the

6

suspension "would effectively destroy claimants' abilities to secure allowance of their claims." Id. (quoting the committee).

10. Many of the reported cases that address impermissible modifications deal with post-consummation scenarios in which the agreements contained in the plan did not have their own amending authority. For example, the Second Circuit later barred the post-consummation modification of a different trust created under the same confirmed plan, the Johns-Manville plan, in Findley v. Blinken (In re Joint Eastern & Southern Dist. Asbestos Litig.), 782 F.2d 721 (2d Cir. 1992). There, the particular annex entitled "Claim Resolution Procedures" was one of six trust agreement annexes, four of which had their own amending authority. The Findley court distinguished the Johns-Manville decision on the grounds that the Claims Resolution Procedures annex did not have its own amending authority, and the confirmed plan provided that the authority of various parties to amend or otherwise modify exhibits and annexes to exhibits would be as provided in those agreements and instruments. Id. at 746-49.

11. Similarly, the district court in In re Ionosphere Clubs, Inc., 208 B.R. 812 (S.D.N.Y. 1997), reversed a post-consummation order that had approved a settlement agreement permitting the revival of a right of first refusal which had been stricken from a lease by the confirmed plan. Although the prepetition lease in which the right of first refusal originally appeared contemplated consensual amendments by the parties to the lease "(as all contracts do)," the district court concluded that "the surrender of the right of first refusal was an integral part of the reorganization plan and confirmation order." Thus, the court held that the settlement approval

7

order was a "post-consummation modification of [the debtor's] reorganization plan prohibited by section 1127."[10]  Id. at 815-16.

12.    The confirmed plan in Ampace Corp. established a 90-day deadline for commencing avoidance actions, but contained no language permitting the trustee to obtain extensions of that deadline.  The trustee nevertheless obtained a series of extension orders on motions made without notice or hearing.  In one of the subsequently filed avoidance adversary proceedings, the bankruptcy court granted summary judgment to the defendant on the ground that the extensions sought and obtained by the trustee constituted section 1127 modifications, those modifications required notice and a hearing, the orders had been entered in error, and thus the orders were ineffective to extend the confirmed plan's deadline.  Id. at 151-54.

13.    The post-consummation modification case law is not instructive for the Debtors' situation.  The post-consummation case law addresses what are essentially contract rights, which are all creditors are left with after a plan has been consummated and a debtor's debts have been discharged and its assets have revested.[11]

14.    Here, the Debtors are addressing a pre-consummation modification pursuant to their Plan and Confirmation Order which expressly permit the amendment or

---

[10]  The court expressly declined to address whether the portions of the lease not expressly amended by the plan could be altered post-consummation.  Id. at 816 n.7.

[11]  Cf. In re Delta Air Lines, Inc., No. 05-B-17923, 2007 WL 3104216 (Bankr. S.D.N.Y. Oct. 22, 2007). Although the Delta Air Lines decision does not discuss section 1127, it held that after substantial consummation of a plan the debtors were nevertheless free to negotiate and amend settlements without court oversight because the order confirming the debtors' plan of reorganization specifically authorized such settlements.  Certain creditors had moved to require court approval of those settlements after learning that the number of unsecured claims being settled and renegotiated by the debtors exceeded estimates originally provided in the disclosure statement, thereby reducing the distribution to individual creditors under the plan.  The court, however, denied the creditors' motion, observing that provisions in the confirmation order and the plan authorizing the debtors to enter and amend settlements of unsecured claims had been "carefully conceived and drafted" to allow the debtors to exercise their business judgment.  Id. at *9.

8

termination of the Approved GSA and the Approved MRA, just as the <u>John-Mansville</u> plan permitted modifications of the procedures for one of its trusts. The plans in <u>Findley</u>, <u>Ionosphere Clubs</u>, and <u>Ampace</u>, in contrast, did not expressly permit the modifications sought. In <u>Ionosphere Clubs</u>, the plan apparently did not contain any language permitting the modification which revived the very right that had been stricken from the lease by the confirmed plan. In <u>Ampace</u>, the plan did not contain any provision permitting extension of the avoidance action filing deadline. Delphi's Plan, however, expressly permits amendment of the Approved GSA and Approved MRA. The GSA And MRA Amendment Motion seeks to do just that. Thus, the Amended GSA and Amended MRA are not modifications to the Plan under section 1127 of the Bankruptcy Code.

B.   <u>The Debtors Have The Unilateral Right To Withdraw The Plan</u>

15.   To the extent this Court would otherwise determine that the Plan's terms conflict with the Amended GSA and Amended MRA that would trigger the applicability of section 1127 of the Bankruptcy Code, any potentially adverse determination would be avoided by the Debtors' withdrawal of the Plan. The Plan provides that "[e]ach of the Debtors reserves the right to revoke or withdraw this Plan with respect to such Debtor at any time prior to the Effective Date." (Plan Art. 14.7(a).) Although this provision is a "reservation of rights," the surrounding circumstances demonstrate that the intention reflected in the Plan is that the Debtors have the power to withdraw. <u>Bartholomew v. Horan</u>, 37 A.D.2d 643, 645, 322 N.Y.S.2d 401, 404 (N.Y.A.D. 1971). For example, Article 14.7(b) of the Plan specifies the effect "[i]f any of the Debtors revokes or withdraws this Plan as to such Debtor prior to the Effective Date . . . ."

C.   The Confirmation Order, Confirmed Plan, And Exhibits Permit
     <u>The Approved GSA And The Approved MRA To Be Terminated</u>

16.   Termination of the Approved GSA and the Approved MRA is a second method by which any potential application of section 1127 determination would be avoided. The

9

terms of the Amended GSA and the Amended MRA permit termination, either by mutual consent, or unilaterally by either Delphi or GM, if certain conditions are satisfied. Section 7.03 of the Approved GSA provides, in relevant part, that the Approved GSA may be terminated "by mutual written consent of both Delphi and GM" (Approved GSA § 7.03(a)), or "by either Delphi or GM if the Effective Date has not occurred by March 31, 2008, or if the EPCA has not been terminated by such date, the first to occur of the termination of the EPCA or April 30, 2008." (Approved GSA § 7.03(d).) GM also has rights to unilaterally terminate the Approved GSA. Section 7.03(e) provides that GM may terminate the Approved GSA "if [GM] shall not have received the consideration by March 31, 2008 or, if the EPCA has not been terminated by such date, the first date to occur of the termination of the EPCA or April 30, 2008." (Approved GSA § 7.03(e).)

    17. Similarly, the Approved MRA may be terminated "by mutual written consent of both Delphi and GM" (Approved MRA § 7.02(a)), or "by GM or Delphi if, prior to the effectiveness of the [Approved GSA] pursuant to Article VI thereof, the [Approved GSA] is terminated pursuant to section 7.03 thereof."[12] (Approved MRA § 7.02(b).)

    18. If the Approved GSA and the Approved MRA were terminated in accordance with their terms, the Amended GSA and the Amended MRA could not conflict in any way with the Approved GSA or the Approved MRA that were incorporated into the Plan. Moreover, none of the provisions of the Approved GSA and the Approved MRA has become effective, so terminating the Approved GSA and the Approved MRA would have the same import as if those agreements had never been incorporated into the Plan in the first place. Thus, although the Plan that incorporated the Approved GSA and the Approved MRA will require modifications before it may ultimately be consummated, that is a separate issue which the Debtors would address

---

[12] The Approved MRA also terminates automatically on December 15, 2015. (Approved MRA § 7.02(c).)

at a later time. That issue is not relevant to the relief requested in the Motion because the Debtors are asking this Court now only to implement an agreement as between two parties: the Debtors and GM. Approval of the Amended GSA and the Amended MRA should, therefore, be analyzed or considered as any other settlement agreement between the Debtors and a third-party (i.e., under Fed. R. Bankr. P. 9019), not as a modification to the confirmed Plan under section 1127.

D.  This Court Has The Inherent Authority To Vacate The Confirmation Order

19.  As a general rule, a confirmation order cannot be revoked except under section 1144 of the Bankruptcy Code. That relief may be available in this case pursuant to the complaints filed by the Creditors' Committee and WTC. See Varde Inv. Partners, L.P. v. Comair, Inc. (In re Delta Air Lines, Inc.), 386 B.R. 518, 531-32 (Bankr. S.D.N.Y. 2008) (citing In re Longardner & Assocs., Inc., 855 F.2d 455, 460 (7th Cir. 1988)) (plaintiffs' [revocation] complaint relies solely on section 1144, "as of course [it] must"); In re Chipwich, Inc., 64 B.R. 670, 678 (Bankr. S.D.N.Y. 1986) (revocation complaint may be made only under and within the time set forth in section 1144).

20. Vacation of the confirmation order, on the other hand, is a remedy that this Court reserved for itself at the confirmation hearing[13] and is a power available to the Court to address a result that is either fundamentally unfair or is the product of an abuse of process in the bankruptcy court. See In re Rideout, 86 B.R. 523, 530 (Bankr. N.D. Ohio 1988) (vacating confirmation order for lack of notice under section 105 and Rule 60(b)); In re American Specialty Equip. Corp., No. 97-CV-1246, 1999 WL 97917, at *2 (E.D.N.Y. Feb. 5, 1999) (describing bankruptcy court's decision to vacate confirmation order based on "number of equitable considerations").

21. Thus, should this Court determine that it lacks the jurisdiction or authority to grant the GSA And MRA Amendment Motion under the present circumstances of an existing confirmed Plan, the Court has the reserved power to vacate the Confirmation Order and remedy those circumstances such that the Court would indisputably have the jurisdiction and authority to consider and grant the Motion.

---

[13] The Court made the following observations during the confirmation hearing: "I inherited a plan which unfortunately had no end to it, no end to its condition. That was a problem. I eventually dealt with it by a motion under 60(b) and maybe that's what will eventually happen here. . . . As I said during oral argument on this point, I do have some concern based on experience in a wholly different case where I had an irresponsible debtor in front of me, unlike here, that a confirmation order not be entered with an undue delay between confirmation and effectiveness. However, here the debtors have made it abundantly clear that they are proceeding as fast as they possibly can to emerge from Chapter 11." (Hr'g Tr., 45, 67-68, Jan. 17, 2008.) During a subsequent hearing on the Debtors' motion to extend the Plan's exclusive periods, the Court again referenced the issue. "I don't believe it's just a matter of an excess of caution. In other words, I don't think it's a moot motion, given the complaints to seek revocation of the plan, and also based on my recollection of colloquy during the confirmation hearing about the resolution of the concern about not having a specific drop dead date for consummation in the plan and the way that was left. So there's certainly a basis for filing the motion and it addresses, really, just the two committees. Neither committee has opposed the motion. So, clearly, the motion states cause and I'll approve it." (Hr'g Tr., 12, July 31, 2008.)

WHEREFORE the Debtors respectfully request that the Court enter an order (a) overruling the objections to the GSA And MRA Amendment Motion, (b) granting the GSA And MRA Amendment Motion, and (c) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         September 24, 2008

                SKADDEN, ARPS, SLATE, MEAGHER
                 & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr.
      John K. Lyons
      Albert L. Hogan, III
      Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti
      Thomas J. Matz
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

**Appendix A**

05-44481-rdd    Doc 14274    Filed 09/24/08    Entered 09/24/08 23:53:31    Main Document
Pg 14 of 20

**Appendix A**

Relevant Plan Provisions

**I.E.   Exhibits**   All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court on or before the Exhibit Filing Date.  After the Exhibit Filing Date, copies of Exhibits may be obtained upon written request to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), or Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Att'n: Kayalyn A. Marafioti), counsel to the Debtors, or by downloading such exhibits from the Debtors' informational website at www.delphidocket.com.  **To the extent any Exhibit is inconsistent with the terms of this Plan and unless otherwise provided for in the Confirmation Order, the terms of the Exhibit shall control as to the transactions contemplated thereby and the terms of this Plan shall control as to any Plan provision that may be required under the Exhibit other than the provisions of Section 9 of the Investment Agreement, which provisions shall control in all respects. (emphasis added)**

   **7.20   GM Settlement.**  This Plan constitutes a request to authorize and approve the (a) Delphi-GM Global Settlement Agreement, attached hereto as Exhibit 7.20(a), that shall resolve the GM Claim, and (b) the Delphi-GM Master Restructuring Agreement, attached hereto as Exhibit 7.20(b), that shall set forth the continuing obligations of GM and Delphi, which shall become effective on the Effective Date, subject to the terms contained therein.  Each of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement are incorporated by reference into this Plan in their entirety.  In that regard, the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement address issues specifically relating to the present and future relationship of Delphi, GM, and their Affiliates that are otherwise addressed in this Plan and as they are intended to relate to holders of other Claims and Interests.  For example, sections 4.01, 4.02, and 4.03 of the Delphi-GM Global Settlement Agreement require that the Plan contain the releases provided for therein; section 7.05 of the Delphi-GM Global Settlement Agreement and section 7.10 of the Delphi-GM Master Restructuring Agreement contain terms and provisions relating to the retention by the Bankruptcy Court of jurisdiction to hear and determine certain disputes arising under such agreements after the Effective Date; and Article 5 of the Delphi-GM Master Restructuring Agreement contains terms and provisions relating to the assumption and rejection of contracts by and among the parties thereto.  **In the event there are any conflicts between the terms and provisions of the Plan or Confirmation Order (and as each may be amended) and the terms and provisions of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement, the terms of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement shall govern, which terms are deemed incorporated by reference into the Plan. (emphasis added)**

   **12.2   Conditions To The Effective Date.**  The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 12.3 of this Plan:

2

. . .

**(e)** Each Exhibit, document, or agreement to be executed in connection with this Plan shall be in form and substance reasonably acceptable to the Debtors.

**12.3 Waiver Of Conditions To Confirmation Or Consummation. The conditions set forth in Articles 12.1(a), 12.2(c), and 12.2(e) of this Plan may be waived, in whole or in part, by the Debtors without any notice to any other parties-in-interest or the Bankruptcy Court and without a hearing; provided, however that in connection with the satisfaction or waiver of the condition set forth in Article 12.2(e) of this Plan, no material modification of the Investment Agreement, the Delphi-GM Definitive Documents, and the exhibits to each such agreements (except exhibits B and C to the Investment Agreement) that have a material adverse effect on the recoveries of unsecured creditors or existing equity holders may be made without the consent of the Creditors' Committee or the Equity Committee, as the case may be, and the respective non-Debtor counterparty to the agreement.** The condition set forth in Article 12.2(d) may be waived by the Debtors, provided that if any of Appaloosa, GM, or the Statutory Committees objects to such waiver, the waiver shall not become effective unless the Bankruptcy Court determines the effectiveness of such waiver (provided that such parties shall have waived their right to object to such waiver if the objection is not received within two Business Days from the time of the receipt of the written notice from the Debtors of such waiver of Article 12.2(d)); <u>provided</u>, <u>however</u>, that any such waiver shall not be deemed to waive or otherwise modify the rights of the parties under the Investment Agreement or the Delphi-GM Definitive Documents. Article 12.2(i) of this Plan may be waived jointly by the Debtors and Appaloosa (as lead Plan Investor), provided, however that no waiver of Article 12.2(i) of this Plan shall be effective unless notice is first given to the Creditors' Committee; provided further, however, that such waiver shall be effective upon the earlier of (i) the Creditors' Committee's consent and (ii) 12:00 noon New York time on the third Business Day after the notice is given to the Creditors' Committee unless the Creditors' Committee has provided written notice pursuant to Article 14.8 of this Plan that the Creditors' Committee has voted affirmatively to object to the effectiveness of the waiver solely on the basis that the recoveries of unsecured creditors would be materially adversely affected if the waiver were implemented (and in such case the waiver shall not become effective unless the Bankruptcy Court thereafter determines that the effectiveness of the waiver would not materially adversely affect unsecured creditors' recoveries). No other condition set forth in Articles 12.1 and 12.2 of this Plan may be waived. The failure of the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time. (emphasis added)

**14.7    Revocation, Withdrawal, Or Non-Consummation**.

**(a)    Right to revoke or withdraw.** Each of the Debtors reserves the right to revoke or withdraw this Plan with respect to such Debtor at any time prior to the Effective Date.

3

<u>Confirmation Order</u>

      1.      **Confirmation**. The Plan, which consists of the Amended Plan (and all exhibits and supplements thereto) and the modifications set forth in Exhibit A hereto, which are hereby incorporated into and constitute a part of the Plan, is hereby approved and confirmed under section 1129 of the Bankruptcy Code. The exhibits to the Plan (as may be modified pursuant to the terms of the Plan and/or such exhibit, as applicable) are incorporated by reference into and comprise an integral part of the Plan and this Confirmation Order.

      53.      **References To Plan Provisions.**  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence. **Notwithstanding the foregoing, in the event there are any conflicts between the terms and provisions of the Plan or this Confirmation Order (as either document may be amended) and the terms and provisions of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement, the terms of the Delphi-GM Global Settlement Agreement and Delphi-GM Master Restructuring Agreement (as appended to the Plan as Exhibits 7.20(a) and 7.20(b) and incorporated by reference in the Plan) shall govern**; provided, however, that notwithstanding the foregoing or anything to the contrary in this order, the Plan or the Delphi-GM Definitive Documents, and upon the consent of GM, which consent was acknowledged by GM's counsel on the record at the Confirmation Hearing, nothing in this order, the Plan, or the Delphi-GM Definitive Documents providing for the release of GM-Related Parties or an injunction of actions against GM-Related Parties shall apply to (i) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of the United States or any agency thereof, (ii) any claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities of any State or any agency of any State, under state or federal environmental laws; or (iii) any criminal liability under the laws of the United States or any State. In addition, nothing contained in the Plan or this Confirmation Order shall alter, amend, or modify the rights of the Plan Investors under the Investment Agreement, which remains binding and enforceable, unless such alteration, amendment, or modification has been agreed to in writing by each Plan Investor. **To the extent that any exhibit to the Plan is inconsistent with the terms of the Plan and unless otherwise provided in this Confirmation Order, the terms of the exhibit to the Plan shall control as to all transactions contemplated thereby and the terms of the Plan shall control as to any Plan provision that may be required under an exhibit to the Plan other than the provisions of Section 9 of the Investment Agreement, which provisions shall control in all respects.  (emphasis added)**

4

Approved GSA

**7.03   Termination**.  This Agreement may be terminated and the transactions contemplated hereby may be abandoned as follows:

**(a)**   by mutual written consent of both Delphi and GM;

**(b)**   by GM if Delphi files with, or presents to, the Bankruptcy Court without GM's prior written consent any of the following, but only to the extent that any of the following would have a material impact on GM, on the benefits GM reasonably is expected to receive under the Plan (including, without limitation, GM's distributions thereunder), the Restructuring Agreement, or this Agreement, or on the ability of any Debtors to fulfill any obligations to any GM-Related Parties under the Plan, the Restructuring Agreement, this Agreement, or any agreements assumed, reinstated, or ratified under the Restructuring Agreement: (i) amendments, supplements, or other modifications to the Plan; (ii) exhibits or other attachments to the Plan, or any amendments, supplements, or other modifications thereto; or (iii) the proposed Confirmation Order or any amendments, supplements, or other modifications thereto; provided, however, that GM shall provide Delphi with written notice of its intent to terminate this Agreement pursuant to this section 7.03(b), which notice shall indicate which item described in clauses (i) through (iii) of this sentence is the basis for GM's intent to terminate this Agreement pursuant to this section 7.03(b); provided further, however, that Delphi shall have thirty (30) days from the provision of such notice to (x) withdraw or amend such item in a manner that no longer gives rise to GM's termination right in respect of such item before GM may actually terminate this Agreement, and/or (y) obtain a determination by the Bankruptcy Court that GM does not have a right to terminate this Agreement pursuant to this section 7.03(b);

**(c)**   by GM if (i) any of the Chapter 11 Cases is converted into a case under chapter 7 of the Bankruptcy Code, or (ii) a trustee is appointed pursuant to section 1104 of the Bankruptcy Code in any of the Chapter 11 Cases;

**(d)**   by either Delphi or GM if the Effective Date has not occurred by March 31, 2008 or, if the EPCA has not been terminated by such date, the first to occur of the termination of the EPCA or April 30, 2008; or

**(e)**   by GM if it shall not have received the Consideration by March 31, 2008 or, if the EPCA has not been terminated by such date, the first to occur of the termination of the EPCA or April 30, 2008.

**7.12   Waiver; Modification Amendment**.

Except as otherwise specifically provided herein, this Agreement may not be modified, waived, amended or supplemented unless such modification, waiver, amendment or supplement is in writing and has been signed by each Party.  No waiver of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver.

**7.18    Interpretation**.

(b)    Notwithstanding anything to the contrary in the Plan (including any amendments, supplements or modifications thereto) or the Confirmation Order (and any amendments, supplements, or modifications thereto), in the event that any of the terms of the Plan (including any amendments, supplements or modifications thereto) or the Confirmation Order (including any amendments, supplements or modifications thereto) conflict with any terms of this Agreement, the terms of this Agreement shall govern.

6

<u>Approved MRA</u>

**7.02** **Termination Provisions**. This Agreement may be terminated or shall terminate immediately and automatically, as applicable, and the transactions contemplated hereby abandoned, upon the occurrence of any of the following:

(a) by mutual written consent of both Delphi and GM;

(b) by GM or Delphi if, prior to the effectiveness of the Settlement Agreement pursuant to Article VI thereof, the Settlement Agreement is terminated pursuant to section 7.03 thereof; or

(c) automatically on December 31, 2015.

**7.16** **Waiver; Modification; Amendment**. Except as otherwise specifically provided herein, this Agreement may not be modified, waived, amended, or supplemented unless such modification, waiver, amendment, or supplement is in writing and has been signed by each Party. No waiver of any of the provisions of this Agreement shall be deemed or constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any waiver be deemed a continuing waiver.

**7.22** **Interpretation**.

(b) Notwithstanding anything to the contrary in the Plan (including any amendments, supplements or modifications thereto) or the Confirmation Order (and any amendments, supplements or modifications thereto), in the event that any of the terms of the Plan (including any amendments, supplements or modifications thereto) or Confirmation Order (including any amendments, supplements or modifications thereto) conflict with any of the terms of this Agreement, the terms of this Agreement shall govern.

7