**Hearing Date And Time: October 23, 2008 at 10:00 a.m.**
**Objection Deadline: October 16, 2008 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
George N. Panagakis
Ron E. Meisler
Nathan L. Stuart

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
       In re                      :          Chapter 11
                                        :
DELPHI CORPORATION, et al.,      :          Case No. 05-44481 (RDD)
                                        :
                  Debtors.    :          (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER (I) APPROVING MODIFICATIONS TO DEBTORS'
FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED) AND
RELATED DISCLOSURES AND VOTING PROCEDURES AND (II) SETTING
FINAL HEARING DATE TO CONSIDER MODIFICATIONS TO CONFIRMED
FIRST AMENDED PLAN OF REORGANIZATION

("PLAN MODIFICATION APPROVAL MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") under 11 U.S.C. § 1127[1] for an order (i) approving certain modifications to the confirmed First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession, as amended on January 25, 2008 (the "Confirmed Plan"), related modifications to the First Amended Disclosure Statement with respect to the Confirmed Plan (Docket No. 11388) (the "December 10 Disclosure Statement"), and related voting procedures as set forth in the December 10 Solicitation Procedures Order (as defined below) (Docket No. 11389) and (ii) setting a final hearing date on approval of the Debtors' proposed plan modifications.

As further described herein, the Debtors are proposing modifications to the Confirmed Plan (the "Modified Plan") that the Debtors believe require resolicitation. Accordingly, pursuant to the Supplemental Case Management Order (as defined below), October 23, 2008 is set as the date for the hearing on this Motion (the "Preliminary Modification Hearing"). Additionally, the Debtors propose the following schedule related to resolicitation and approval of the modifications to the Confirmed Plan:

---

[1]    11 U.S.C. § 1127 provides, in relevant part:

> (b)    The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

> (c)    The proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified.

> (d)    Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

| DATE | EVENT |
|---|---|
| November 13, 2008 | Deadline to publish notice of hearing to approve modifications to Confirmed Plan |
| | Deadline to commence mailing of solicitation packages |
| November 26, 2008 | Deadline to distribute reclamation opt-out election notices |
| December 2, 2008 | Rule 3018(a) motion deadline |
| | Modified Plan exhibit filing deadline |
| December 12, 2008 | Voting deadline |
| | Deadline to object to modifications to Confirmed Plan |
| | Deadline to return reclamation opt-out  election notices |
| December 16, 2008 | Ballot report certification and filing deadline at 4:00 p.m. (prevailing Eastern time) |
| December 17, 2008 | Hearing to approve modifications to the Confirmed Plan and to approve such plan as Modified (the "Final Modification Hearing") |

In further support of this Motion, the Debtors respectfully represent as follows:

### Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint

administration of these cases.

2.        No trustee or examiner has been appointed in these cases.  On

October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed

an official committee of unsecured creditors (the "Creditors' Committee").  On April 28,

2006, the U.S. Trustee appointed an official committee of equity holders (together with

the Creditors' Committee, the "Statutory Committees").

3.        On September 6, 2007, the Debtors filed the Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In

Possession (Docket No. 9263) and the Disclosure Statement With Respect To Joint Plan

Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-

In Possession (Docket No. 9264).  Subsequently, on December 10, 2007, the Debtors

filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain

Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386) (the "December 10

Plan") and the December 10 Disclosure Statement.  The Court entered an order approving

the adequacy of the December 10 Disclosure Statement and granting the related

solicitation procedures motion on December 10, 2007 (Docket No. 11389) (the

"December 10 Solicitation Procedures Order").  On January 25, 2008, the Court entered

an order confirming the Confirmed Plan (Docket No. 12359) (the "Confirmation Order"),

which order became final on February 4, 2008.

4.        On April 4, 2008, the Debtors announced that although they had

met the conditions required to substantially consummate the Confirmed Plan, including

obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the

Confirmed Plan) refused to participate in a closing that was commenced but not

completed and refused to fund their Investment Agreement (as defined in the Confirmed

Plan) with Delphi.  On May 16, 2008, Delphi filed complaints for damages and specific

performance against the Plan Investors and related parties who refused to honor their

equity financing commitments and refused to participate in the closing that would have

led to Delphi's successful emergence from chapter 11.

       5.     This Court has jurisdiction over this motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter

is a core proceeding under 28 U.S.C. § 157(b)(2).

       6.     The statutory predicates for the relief requested herein are sections

502 and 1127 of the Bankruptcy Code and rule 2002 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

B.     Current Business Operations Of The Debtors

       7.     Delphi and its subsidiaries and affiliates (collectively, the

"Company") as of December 31, 2007 had global net sales of $22.3 billion and global

assets of approximately $13.7 billion.[2]  At the time of its chapter 11 filing, Delphi ranked

as the fifth largest public company business reorganization in terms of revenues and the

thirteenth largest public company business reorganization in terms of assets.  Delphi's

---

[2]    The aggregated financial data used herein generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on
February 19, 2008.

non-U.S. subsidiaries are not chapter 11 debtors and have continued their business

operations without supervision from the Court.[3]

8.    The Company is a leading global technology innovator with

significant engineering resources and technical competencies in a variety of disciplines,

and is one of the largest global suppliers of vehicle electronics, transportation

components, integrated systems and modules, and other electronic technology.    The

Company supplies products to nearly every major global automotive original equipment

manufacturer ("OEM").

9.    Delphi was incorporated in Delaware in 1998 as a wholly owned

subsidiary of General Motors Corporation ("GM").    Prior to January 1, 1999, GM

conducted the Company's business through various divisions and subsidiaries.    Effective

January 1, 1999, the assets and liabilities of these divisions and subsidiaries were

transferred to the Company in accordance with the terms of a Master Separation

Agreement between Delphi and GM.    In connection with these transactions, Delphi

accelerated its evolution from a North American-based, captive automotive supplier to a

global supplier of components, integrated systems, and modules for a wide range of

customers and applications.    Although GM is still the Company's single largest customer,

today more than half of Delphi's revenue is generated from non-GM sources.

---

[3]    On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a
non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish
insolvency proceeding, which was approved by the Spanish court on April 13, 2007.    On July 4, 2007,
DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a
social plan, the funding of which was approved by this Court on July 19, 2007.    The Spanish court
approved the social plan on July 31, 2007.    The Concurso proceeding is consistent with Delphi's
transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

6

C.      Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[4]  Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

11.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which had the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the

---

[4]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

7

end of the third quarter of 2005, the Company commenced these chapter 11 cases for its

U.S. businesses to complete its transformation plan and preserve value for its

stakeholders.

D.    Transformation Plan

13.    On March 31, 2006, Delphi announced its five-point

Transformation Plan:

- Labor:  Modify the Company's labor agreements to create a competitive arena in which to conduct business

- GM:  Conclude negotiations with GM to finalize GM's financial support for certain of the Debtors' legacy and labor costs and ascertain GM's business commitment to the Company

- Product Portfolio and Manufacturing Footprint:  Streamline the Company's product portfolio to capitalize on world-class technology and market strengths and make the necessary manufacturing alignment with its new focus

- Cost Structure:  Transform the Company's salaried workforce and reduce general and administrative expenses to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint

- Pension:  Devise a workable solution to the Company's pension funding situation

14.    Delphi has made significant progress in achieving the objectives of

its Transformation Plan and is now poised to emerge from chapter 11.  First, with respect

to the modification of its labor agreements, Delphi has been able to significantly lower its

hourly labor costs by entering into modified collective bargaining agreements with each

of its Unions in 2007.  These agreements have already become effective both prior to and

as a result of the consummation of the Amended GSA and Amended MRA, as defined

below, and Implementation Agreements with the six North American unions have

become effective.

8

15.    Second, Delphi has entered into comprehensive settlement and restructuring agreements with GM (the "Amended GSA" and the "Amended MRA") and the provisions of these agreements became effective on September 29, 2008.   Under the Amended GSA and Amended MRA, GM agreed to contribute additional value to the Debtors with fewer termination rights and conditionality provisions.  The net contributions provided to the Debtors from GM under the Amended GSA and Amended MRA increased from $6.0 billion under the Settlement Agreement and Restructuring Agreement to approximately $10.6 billion under the Amended GSA and Amended MRA, as demonstrated in the graph below.  This graph assumes that general unsecured creditors receive a recovery of 20% of their claims with contributions from GM.



16.    Third, with respect to its product portfolio and manufacturing

facility realignment, as shown by the illustration below, Delphi has also been successful

in streamlining its product portfolio, aligning its manufacturing capabilities to focus on

its market strengths, and developing "Safe, Green, & Connected" products.



17.    The Debtors have sold or wound down non-core product lines and

manufacturing sites identified in March 2006 and are continuing their efforts to sell

certain other non-core product lines.  For example, during the first six months of 2008

alone, Delphi obtained Court approval of bidding procedures and sales agreements for the

steering and halfshaft product line and closed on the sales of the interiors and closures

product line, the North American brake components machining and assembly assets, and

the global bearings business. Additionally, under an order providing Delphi with

authority to sell certain assets that do not exceed $10 million without further Court approval, Delphi entered into an agreement to sell its power products business.

18.    Fourth, Delphi has implemented and is continuing to implement restructuring initiatives in furtherance of the transformation of its salaried workforce to reduce selling, general and administrative expenses to support its realigned portfolio. These initiatives include financial services, information technology and certain sales administration outsourcing activities, reduction of its global salaried workforce by taking advantage of attrition and using salaried separation plans, and realignment of certain salaried benefit programs to bring them in line with more competitive industry levels. Although there is an investment required to implement these initiatives, Delphi expects to realize substantial savings in 2009 and beyond.

19.    Fifth, Delphi has substantially achieved its pension funding strategy objectives for hourly employees through the transaction under the Internal Revenue Code of 1986 (the "IRC"), Section 414(l), and Section 208 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461. With respect to its salaried employees, Delphi froze the salaried pension plan and implemented replacement plans that will be more cost-effective for the remainder of their chapter 11 cases and after emergence from chapter 11.

20.    The differences between the business operation of Delphi from the time of its chapter 11 filing in 2005, its present state of transformation in mid-2008, and its expected 2009 state on a post-emergence basis, are striking:

| | Pre-Transformation | Current Progress | Post-Transformation |
|---|---|---|---|
| Year | 2005[1] | June YTD 2008[1] | 2009 RPOR 8/08 |
| Product Line Businesses | 27 | 21 | 16 |
| U.S. Plants | 37[2] | 14 | 8 |
| U.S. Hourly Cost / Hour | $73 / hour | > $40 / hour | ~ $27 / hour |
| Manufacturing % of Revenue | 30% | 25% | 19% |
| U.S. Hourly Employment | 32,869 | 10,665[3] | < 5,000 |
| U.S. Salaried Employment | 14,542 | 10,243 | < 7,700 |
| SG&A Expense[4] | $1.64 B | $0.70 B | $1.07 B |
| Number of Suppliers | > 5,000 | ~ 3,200 | ~ 2,700 |
| Capital Investment | $1.1 B | $0.5 B | $0.7 B |
| GMNA % of Revenue | 40% | 22% | 18% |
| Non-GM % of Revenue | 52% | 67% | 74% |
| Non-N.A. % of Revenue | 32% | 56% | 61% |

[1] 2005 and June YTD 2008 metrics include total Delphi operations including those units classified as "Discontinued" for external financial reporting
[2] Excluding idled sites
[3] Excluding active pre-retirement program participants
[4] SG&A metrics exclude one-time transformation related charges

E.    Reaffirmed Business Plan

21.    When the closing on the Confirmed Plan was suspended on April 4, 2008, as part of Delphi's consideration of potential modifications to its Confirmed Plan to enable it to emerge from chapter 11 as soon as practicable, Delphi undertook a reaffirmation process with respect to the business plan attached as Appendix C to the December 2007 Disclosure Statement (the "POR Business Plan").  That reaffirmation process involved review and reaffirmation of the budget business plan (the "BBP") (which had been prepared as part of Delphi's annual business planning process and which had confirmed Delphi's prior commitment to the aggregate EBITDAR projections in the POR Business Plan).  By reaching agreements with GM embodied in the Amended GSA and Amended MRA, the Debtors were able to substantially accomplish two of their transformation goals of finalizing GM's support for Delphi's business and finding a workable solution to pension related issues.  The implementation of the Amended MRA,

12

along with the completion of the first step of the 414(l) Transfer, has allowed Delphi to move forward with a reaffirmed business plan for 2008-2011.  The reaffirmed POR business plan for 2008-2011 is attached to the Modified Disclosure Statement as Appendix C and is hereinafter referred to as the "RPOR."

22.    Among other changes, the RPOR includes revised actual and expected volumes for the North American automotive market, significant increases in commodities costs that are used as raw materials in certain of Delphi's products, and changes in the underfunded status of its pension plans as a result of negative plan asset returns.  The RPOR also reflects actual financial results for the first half of 2008, updated foreign exchange rates over the RPOR period, and other specific operational adjustments with respect to particular customer program volumes and timing, including the modifications embodied in the Amended GSA and Amended MRA.

23.    As described in greater detail in Appendix C, and described in summary form here, the RPOR projects 2008 EBITDARP at approximately $0.58 billion improving to $1.74 billion in 2009.  The main contributors of this improvement are: (a) the reduction of traditional hourly U.S. OPEB expense (substantially all of which has been assumed by GM), (b) GM labor subsidy and keep site facilitation support, (c) structural cost improvements in the areas of manufacturing, engineering and SG&A, and (d) increased profit related to new business wins outside of GM North America.  Material cost improvements are also anticipated in the RPOR, partially offset by anticipated year-over-year customer price reductions.

13

24.     Cash flow from operating activities is projected to increase from an inflow of $0.5 billion in 2008 to an inflow of $1.3 billion in 2011.  Significant sources and uses of cash from operations include:

- EBITDARPO improves from $1.0 billion in 2008 to $2.2 billion in 2011;

- Global restructuring cash outflows of approximately $0.3 billion, $0.5 billion, $0.2 billion and $0.2 billion in 2008, 2009, 2010, and  2011 respectively (the $0.3 billion included in 2008 is net of a $1.0 billion payment from GM);

- Projected net working capital monetization proceeds associated with the exit from certain Non-Continuing Businesses; and,

- Net Payments from GM of $1.7 billion in 2008 resulting from the implementation of the Amended MRA and Amended GSA (including $1.0 billion referred to above in global restructuring cash).

25.     Improved operating cash flows are generally the result of the implementation of the Debtors' Transformation Plan, including product portfolio rationalization and migration, SG&A cost reduction initiatives, reduction in personnel costs as a result of negotiations with labor groups, the freezing of U.S. legacy defined benefit pension plans, and agreement with GM regarding future business commitments and financial support for certain legacy costs, including hourly OPEB.

F.     Valuation Of Reorganized Delphi

26.     The RPOR provides the foundation for the value of the distributions proposed in the Modified Plan, which will be in the form of equity in the Reorganized Company.[5]  Because the proposed distributions under the Modified Plan are in the form of equity in the Reorganized Company, the value of the recovery is based on the enterprise value of Reorganized Delphi.  The RPOR was also necessary to allow the

---

[5]     Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Modified Plan.

Debtors' investment banker and financial advisor, Rothschild, Inc. ("Rothschild"), to perform a valuation of the Reorganized Debtors as a going concern and a valuation of the New Common Stock based on information and financial projections provided by the Debtors.

27.      Since the confirmation of the Confirmed Plan and the Debtors' delayed emergence from chapter 11 due to the Plan Investors' breach of the Investment Agreement, Rothschild has undertaken an updated valuation of the Reorganized Debtors as a going concern.  Based on many factors, including the RPOR projections and macroeconomic factors affecting the auto industry as a whole such as the current capital market conditions, weakened automotive outlook, and declining public trading multiples, the estimated total enterprise value of Reorganized Delphi ranges from $6.3 billion to $8.0 billion, with a midpoint of approximately $7.2 billion.  The Debtors believe that the recoveries provided by the Modified Plan will be at least as much as those realized through any other scenario or other feasible alternative available to the Debtors.

28.      Delphi anticipates raising approximately $3.75 billion of funded emergence capital through a combination of term bank debt and rights to purchase equity in Reorganized Delphi.  Delphi anticipates raising at least $2.75 billion in funded first and second lien debt plus an unfunded asset-backed revolving credit facility of up to $1.2 billion.  Delphi anticipates raising the remaining funded emergence capital through a combination of a Discount Rights Offering with a backstop and a direct subscription for New Common Stock in Reorganized Delphi.  The Debtors expect the principal sources of emergence capital to be their existing creditors and stakeholders.[6]  For GM to achieve the

---

[6]      The Debtors anticipate supplementing their Emergence Capital Funding disclosures on or prior to the preliminary hearing on modifications to the Confirmed Plan.

$2.055 billion recovery required under the Amended GSA, as defined below, and for the

holders of unsubordinated General Unsecured Claims to receive at least 20% in direct

recoveries in the form of New Common Stock, Delphi will be required to achieve its

projected $3.75 billion in funded emergence capital, including completing the Discount

Rights Offering at a discount not to exceed 40% on a fully diluted basis of Plan Equity

Value.  In the event that these metrics are not achieved, the Debtors would be required to

procure GM's consent pursuant to the Amended GSA with respect to any modified

recovery and the minimum recovery to holders of unsubordinated General Unsecured

Claims would be proportionally reduced.

29.    The Second Amended and Restated Credit Agreement, as defined

herein (which consists of a $1.1 billion Tranche A DIP Revolver, a $500 million Tranche

B DIP Term Loan and a $2.754 billion Tranche C DIP Term Loan) currently matures on

December 31, 2008.  The Debtors anticipate seeking an extension of the December 31,

2008 maturity date.

G.    Proposed Modifications To The Confirmed Plan

30.    Section 14.3 of the Confirmed Plan, to which no party objected

and which was approved by a substantial majority of creditors who voted on the

Confirmed Plan, remains in effect and provides that only the Debtors may seek

modifications of the Confirmed Plan pursuant to section 1127(b) of the Bankruptcy Code.

Moreover, the Debtors previously obtained an extension, subject to certain exceptions

described below, of their exclusive right under section 1121 of the Bankruptcy Code to

file one or more reorganization plans until 30 days after substantial consummation of the

Confirmed Plan or any modified plan and the exclusive right to solicit and obtain

acceptances for such plans until 90 days after substantial consummation of the Confirmed

16

Plan or any modified plan.[7]  The Debtors' exclusive right to file a plan, solely as between

the Debtors and the Statutory Committees (the "Plan Proposal Period"), has been

extended through and including October 31, 2008 and the right to solicit a plan, solely as

between the Debtors and the Statutory Committees (the "Solicitation Period," and,

together with the Plan Proposal Period, the "Exclusive Periods"), through and including

December 31, 2008.[8]  By separate motion filed concurrently herewith, the Debtors are

seeking further extensions of the Exclusive Periods to March 31, 2009 and January 31,

2009, respectively.  Neither of the Statutory Committees objects to this motion.

31.    Because the Debtors have the exclusive right to propose

modifications to the Confirmed Plan or file and solicit a new plan, the Debtors have taken

into consideration all of the factors described above, including the additional

Transformation Plan-related accomplishments, the RPOR, and the Reorganized Debtors'

projected capital structure, and are proposing the following appropriate modifications to

the Confirmed Plan for approval by this Court, which are outlined below:

|  | Confirmed Plan | Modified Plan |
|---|---|---|
| Plan Investor | Plan Investors commitment to invest up to $2.55 billion | No plan investor |
| Rights Offering | $1.75 billion discount rights offering | $1.0 billion discount rights offering |
| Net Funded Debt | $4.7 billion | $2.75 billion |

---

[7]    See Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, dated April 30, 2008 (Docket No. 13483) (the "Postconfirmation Exclusivity Order").

[8]    See Order, Solely As To Statutory Committees, Extending Under 11 U.S.C. § 1121(d) Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, dated July 31, 2008 (Docket No. 14009) (together with the Postconfirmation Exclusivity Order, the "Postconfirmation Exclusivity Orders").

| | **Confirmed Plan** | **Modified Plan** |
|---|---|---|
| Revolver | $1.4 billion | Up to $1.2 billion |
| Total Enterprise Value | Agreed plan value of $12.8 billion | $7.2 billion |
| Section 414(l) Transfer | $1.5 billion | - 414(l) Transfer was approved as part of the Amended GSA, which became effective on September 29, 2008 and accordingly such transfer is no longer a term of the Modified Plan.<br>- Transfer of approximately $2.2 billion in net unfunded liabilities was effective on September 29, 2008; the transfer of approximately $1.0 billion of additional net unfunded liabilities is to occur upon consummation of the Modified Plan |
| GM | $4.073 billion consisting of:<br><br>- $1.073 billion (in liquidation amount) in junior preferred securities<br><br>- $1.5 billion, of which at least $750 million will be in Cash and the remainder will be in a second lien note with market terms<br><br>- $1.5 billion in connection with the effectuation of the IRC Section 414(l) assumption | Approximately $2.095 billion consisting of:<br>- An allowed administrative claim of $2.055 billion, which will be satisfied with New Preferred Stock (subject to certain provisions under which value may be allocated to unsubordinated general unsecured creditors)<br><br>- An allowed general unsecured claim in the amount of $2.5 billion, which will be subordinated to the claims of other unsecured creditors until such creditors achieve a 20% recovery |

|  | **Confirmed Plan** | **Modified Plan** |
|---|---|---|
| Unsecured Creditors | Par plus accrued recovery at plan value of $12.8 billion consisting of:<br><br> -78.6% in New Common Stock at plan equity value<br><br>-21.4% through pro rata participation in discount rights offering at a 35.6% discount from plan equity value<br><br>-TOPrS Claims included in General Unsecured class with Senior Notes, trade claims, and SERP claims | Approximately 38.8% recovery for allowed general unsecured claimholders (excluding TOPrS Claims) consisting of:<br><br>- Approximate 20% recovery in the form of New Common Stock at plan equity value<br><br>- 18.8% through pro rata participation in Discount Rights Offering at a 40% discount from plan equity value<br><br>- TOPrS Claims included in General Unsecured class with Senior Notes, trade claims, and SERP claims, however, distributions on account of TOPrS Claims will be reallocated and redistributed due to the contractual subordination provision of the indenture governing the TOPrS Claims |
| Postpetition Interest | Postpetition Interest to be paid on certain General Unsecured Claims | No postpetition interest |
| Equity | Direct grant of New Common Stock of $28 million and Warrants valued at $321 million in the aggregate, plus the opportunity to participate in a Par Value Rights Offering | Opportunity to participate in Post-emergence Rights Offering through which New Common Stock will be offered at a discount (valued at approximately $108 million), the proceeds of which will be used to redeem up to 25% of the New Preferred Stock issued to GM |

Relief Requested

32.      By this Motion, the Debtors request entry of an order (the "Proposed Order") approving (i) certain modifications to the Confirmed Plan and related modifications to the December 10 Disclosure Statement and  related procedures and notices for resoliciting votes of affected classes on the Modified Plan and (ii) setting a final hearing date on approval of the Debtors ' proposed Modified Plan.

Basis For Relief

33.      As described above, since this Court approved the Confirmed Plan, a number of events have occurred as Delphi has continued to transform its business despite a profound economic downturn in the automotive industry and turbulent capital markets.  As a result of these exceptional efforts, the Debtors are now able to propose a Modified Plan that the Debtors believe should allow them to successfully emerge from chapter 11.  The Modified Plan is the culmination of Delphi's Transformation Plan within the chapter 11 context.  Delphi has determined that it has achieved those aspects of its Transformation Plan for which the chapter 11 reorganization process was necessary and that it is now time to emerge from chapter 11.  A copy of the Modified Plan, marked only to show additions to the Confirmed Plan, is attached hereto as Exhibit 1-A.  Similarly, a copy of the Modified Plan, marked to show all changes from the Confirmed Plan, is attached hereto as Exhibit 1-B.  The modifications are necessary and should facilitate the Debtors' emergence from chapter 11 while allowing for meaningful stakeholder recoveries in a very challenging macroeconomic climate.

34.      Pursuant to 11 U.S.C. § 1127(c) of the Bankruptcy Code, "[t]he proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified."  Under section 1125, as incorporated by section 1127 of the

20

Bankruptcy Code, the Debtors cannot solicit votes from the affected classes, "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."  11 U.S.C. § 1125(b).  Section 1125(a)(1) defines "adequate information" as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor of holders of claims or interests of the relevant class to make an informed judgment about the plan."  11 U.S.C. § 1125(a)(1).

35.    In December 2007, the Court found that the December 10 Disclosure Statement contained "adequate information," as that term is defined in section 1125 of the Bankruptcy Code, and approved the December 10 Disclosure Statement. Accordingly, the Debtors commenced their solicitation on the December 10 Plan.  The Debtors received overwhelming support for the December 10 Plan on a class by class basis. Due to the material modifications made to the Confirmed Plan on account of the Plan Investors' breach, the Debtors must once again solicit votes on the Confirmed Plan, as modified.  To comply with section 1127(c) as it incorporates 1125(b) of the Bankruptcy Code, the Debtors have revised the December 10 Disclosure Statement to provide holders of claims or interests with adequate information regarding the modifications (the "Modified Disclosure Statement").  Attached hereto as Exhibit 2-A is the Modified Disclosure Statement marked only to show additions from the December 10 Disclosure Statement.   Similarly, a copy of the Modified Disclosure Statement, marked

to show all changes to the Confirmed Plan, is attached hereto as <u>Exhibit 2-B</u>.[9]  The

Debtors propose to include the Modified Disclosure Statement in the Solicitation Package

(as defined in the December 10 Solicitation Procedures Order and modified herein) that

will be distributed.  Accordingly, pursuant to this Motion, the Debtors are seeking

approval of the Modified Disclosure Statement and a finding that the Modified

Disclosure Statement complies with section 1127(c) as it incorporates section 1125(b) of

the Bankruptcy Code.

H.    <u>Prior Approval Of Disclosure Statement And Procedures For Soliciting Votes On
      Plan</u>

           36.    Although confirmed by this Court, the Confirmed Plan has not yet

been consummated.  Due to the intervening events since confirmation, the Debtors seek

to modify the Confirmed Plan.  Given the nature of the proposed modifications, the

Debtors believe that resolicitation of votes is appropriate.  The Debtors, therefore,

propose to adopt substantially the same procedures as those that were approved by this

Court in the December 10 Solicitation Procedures Order, with the limited modifications,

as set forth below, which the Debtors believe are applicable and appropriate under the

circumstances.  The resolicitation timeline contemplated herein is intended to facilitate

the Debtors' emergence from bankruptcy protection as soon as reasonably practicable.  In

addition, now that the Debtors have formulated what they believe is a viable RPOR in the

current automotive and macroeconomic environment and have implemented the GSA and

MRA, the Debtors are seeking to move as quickly as possible to emerge from chapter 11

in order to limit their exposure to any further unknown event risks.

---

[9]    In addition, the following updated appendices to the Modified Disclosure Statement are attached hereto:
       Historical Financial Statements (as <u>Exhibit 2-C</u>), Reaffirmed 2008-2011 Financial Projections (as
       <u>Exhibit 2-D</u>), Updated Valuation Analysis (as <u>Exhibit 2-E</u>), Updated Liquidation Analysis (as <u>Exhibit
       2-F</u>).

I.    Adoption Of Previously Approved Procedures And Documents For Soliciting
      Votes On Modified Plan With Certain Modifications

            37.    The December 10 Solicitation Procedures Order approved

procedures for the Debtors to transmit through the Voting Agents various solicitation

materials to the classes of claims and interest holders entitled to vote on the December 10

Plan, as well as more limited documents to be sent to those not entitled to vote on the

December 10 Plan.  In addition, the December 10 Solicitation Procedures Order approved

certain forms of ballots to be used to solicit votes, established procedures in connection

with the tabulation of votes, and approved certain other procedures to facilitate and

streamline the solicitation process. The procedures and documents approved in the

December 10 Solicitation Procedures Order allowed the Debtors to efficiently and

effectively solicit the votes of, and provide notice to, more than 500,000 parties-in-

interest.

            38.    Accordingly, the Debtors propose to utilize the same procedures

and the same documents that were previously approved by this Court in the December 10

Solicitation Procedures Order in connection with the solicitation of votes on, and the

provision of notice regarding, various aspects of the Modified Plan, with the following

modifications and exceptions summarized here and explained in more detail below:

- Addition to certain ballots of provisions relating to 11 U.S.C. § 1127(d) and application of § 1127(d) to the tabulation of votes on the Modified Plan;
- Updates to notices previously provided to certain parties to reflect changes to the Modified Plan;
- Changes to dates and deadlines in the resolicitation process and associated procedures;
- Inclusion of Delphi's latest Form 10-K and subsequent Form 10-Q and removal of IRS forms W-9 and W-8BEN to the Solicitation Package;
- Eliminating the requirement to provide notice to holders of Class F or I claims or interests;

23

- Eliminating the requirement to provide special notice not required to be given Union employees, former employees, and certain non-represented hourly active employees and retires;
- Deemed acceptance by any class in which no class member votes;
- Intermediary Record Owners required to maintain Beneficial Owner voting data for one additional year;
- Adoption of Rights Offering participation amounts;
- Changes to the Cure Claim Procedures pursuant to Modified Plan;
- Changes to the Reclamation Claim Procedures pursuant to Modified Plan

J.    Updated General Procedures From December 10 Solicitation Procedures Order

39.    Final Modification Hearing Date.  By this Motion, the Debtors request that the Court set December 17, 2008 at 10:00 a.m. (prevailing Eastern time), as may be adjourned at the Court's direction, if necessary, as the hearing date to consider approval of the Modified Plan (the "Final Modification Hearing Date").  The Debtors also request that the Court order that the Final Modification Hearing Date may be adjourned from time to time by announcing the adjournment in open court or otherwise, all without further notice to parties-in-interest.

40.    Procedures For Filing Objections To Proposed Modifications To Confirmed Plan.  Because 11 U.S.C. § 1127(b) provides that a plan, as modified, becomes the plan if the "court, after notice and a hearing, confirms such plan as modified, under section 1129 of [the Bankruptcy Code]," Bankruptcy Rule 3020(b)(1) provides guidance in setting an objection deadline with respect to the modifications sought by the Debtors.  Specifically, Bankruptcy Rule 3020(b)(1) provides that objections to confirmation of a plan must be filed and served "within a time fixed by the court."  The Debtors request that the Court set 4:00 p.m. (prevailing Eastern time) on December 12, 2008 (the "Modified Plan Objection Deadline") as the last date and time for filing and serving objections to the approval of the Modified Plan ("Modified Plan Objections").

24

As discussed, the Debtors propose to send, or cause to be sent in the manner described

below, the Solicitation Packages and other notices on or before November 13, 2008.

Accordingly, the Modified Plan Objection Deadline would not occur until at least 29 days

after the date the Solicitation Packages and other notices are sent.  The Debtors request

that only timely-filed and served, written Modified Plan Objections be considered and

that Modified Plan Objections not timely-filed and served in the manner described in this

paragraph and the immediately following paragraph be overruled without consideration

by the Court.

    41.  The Debtors also request that the Court direct that Modified Plan

Objections, if any, must (i) be in writing, (ii) comply with the Bankruptcy Rules and the

Local Bankruptcy Rules for the Southern District of New York, (iii) set forth the name of

the objector and the nature and amount of any claim or interest asserted by the objector

against or in the Debtors, their estates, or their property, (iv) state with particularity the

legal and factual bases for the objection, and (v) be filed with the Court together with

proof of service, and served by personal service, overnight delivery, or first-class mail,

with a hard copy delivered to the chambers of the Honorable Robert D. Drain, so as to be

RECEIVED no later than the Modified Plan Objection Deadline, by the following

(collectively, the "Notice Parties"):

    Counsel For The Debtors

    Skadden, Arps, Slate, Meagher & Flom LLP
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois 60606
    Att'n: John Wm. Butler, Jr.
    Att'n: George N. Panagakis
    Att'n: Ron E. Meisler
    Att'n: Nathan L. Stuart

and

Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York 10036
Att'n: Kayalyn A. Marafioti
Att'n: Thomas J. Matz

United States Trustee

The Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004
Att'n: Brian Masumoto

Counsel For The Creditors' Committee

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Att'n: Robert J. Rosenberg
Att'n: Mitchell A. Seider
Att'n: Mark A. Broude

Counsel For The Equity Committee

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
Att'n: Brad E. Scheler
Att'n: Bonnie K. Steingart

Counsel For The Postpetition Lenders

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York  10022
Att'n:  Donald S. Bernstein
Att'n:  Brian M. Resnick

42.    Ballots.  The Debtors request that the Court approve the ballots for

voting on the Modified Plan in substantially the forms attached collectively to the

Proposed Order as Exhibit B, which are substantially the same as those used in the

solicitation of votes on the December 10 Plan and which this Court previously approved

in the December 10 Solicitation Procedures Order   The Ballots have been updated to

reflect the changes to the procedures set forth in this Motion and to conform with the

facts and circumstances of a § 1127 resolicitation, including substitutions of dates and

provisions relating to the § 1127(d) tabulation protocol as described in detail below.

43.    Notices.   Similarly, the Debtors also request that the Court

approve the Notices in substantially the forms attached collectively to the Proposed Order

as Exhibit C (Unimpaired Notice), Exhibit D (Non-Voting Status Notice), Exhibit E

(Notice To Parties Subject To A Post-Solicitation Date Objection), and Exhibit F (Notice

to Employees Regarding Multiple Solicitation Documents), which this Court previously

approved in the December 10 Solicitation Procedures Order, to be sent to various parties

in connection with the resolicitation of votes on the Modified Plan.  These notices remain

in substantially the same form in which they were previously approved by the Court, but

have been conformed to the facts and circumstances of a § 1127 resolicitation.

44.    Voting Certification.  Rule 3018-1 of the Local Bankruptcy Rules

for the United States Bankruptcy Court for the Southern District of New York requires

the certification of acceptance and rejections of the plan to be filed at least five days

before the hearing on confirmation of a chapter 11 plan.  Consistent with the December

10 Solicitation Procedure Order, the Debtors request that this five-day requirement be

modified to permit the Voting Agents to file their certifications no later than 4:00 p.m.

(prevailing Eastern time) on December 16, 2008, or one day prior to the hearing to

approve modifications to the Confirmed Plan.

45.    Notice Of Hearing On Approval Of Plan Modifications.  The Debtors propose to provide a notice of the Final Modification Hearing (the "Final Modification Hearing Notice"), substantially in the form attached to the Proposed Order as Exhibit G, in the same manner and on the same categories of parties as were provided the  Confirmation Hearing Notice pursuant to the December 10 Solicitation Procedures Order, and with the exceptions detailed in this Motion.  For avoidance of doubt, as described in this Motion the Debtors propose that holders of claims or interests in Classes F and I will not be sent a Final Modification Hearing Notice.

K.    Modifications To The December 10 Solicitation Procedures Order

46.    Key Dates and Deadlines.  In the motion requesting the relief granted in the December 10 Solicitation Procedures Order, the Debtors sought approval of a schedule for the Debtors to solicit votes on the December 10 Plan.  The chart below summarizes certain key dates and deadlines that the Debtors propose to use in connection with the resolicitation of votes on the Modified Plan.

| Event | Proposed Date Or Deadline Under Plan Modification Approval Order |
|---|---|
| Deadline By Which Trustees And Transfer Agents Must Provide Record Holder Information To Securities Voting Agent | • November 6, 2008 |
| Solicitation Mailing Deadline | • November 13, 2008<br>• 25 days before voting deadline and objection deadline |
| Deadline For Filing Of Plan Exhibits And Disclosure Statement Appendices (the "Exhibit Filing Date") | • December 2, 2008<br>• 10 days before voting deadline |
| Rule 3018(a) Motion Deadline | • Received no later than 4:00 p.m. (prevailing Eastern time) on December 2, 2008<br>• If the Debtors object to a claim or interest after November 23, 2008, the Rule 3018(a) Motion Deadline |

| Event | Proposed Date Or Deadline Under Plan Modification Approval Order |
|---|---|
|  | would be extended for that claim or interest such that the deadline would be ten days following the filing of the Debtors' objection |
| Plan Objection Deadline | • December 12, 2008, 4:00 p.m. (prevailing Eastern time)<br>• 29 days after Solicitation Mailing Deadline |
| Voting Deadline | • Received by the Voting Agents no later than 7:00 p.m. (prevailing Eastern time) on December 12, 2008<br>• 29 days after Solicitation Mailing Meadline |
| Final Modification Hearing Date | • To commence on December 17, 2008<br>• 34 days after anticipated mailing of solicitation documents |

47.    Content And Transmittal Of Solicitation Packages.  The contents of the Solicitation Package have been modified to include a copy or conformed printed version of the Final Modification Hearing Notice and a CD-ROM[10] including, along with similar materials provided with respect to the December 10 Solicitation Procedures Order, a copy of the Debtors' most recently filed Form 10-Q.  The Solicitation Package will not include an Internal Revenue Service form W-9 (Request for Taxpayer Identification Number and Certification) or form W-8BEN to be returned with a party's ballot.

48.    Notice Not Required For Holders of Claims and Interests In Classes F And I.  The Debtors propose that because the treatment of Class F in the Modified Plan is identical to the treatment that was provided to that class under the

---

[10]    The Modified Disclosure Statement and Modified Plan, including exhibits, are more than 1,000 pages in length.  Accordingly, to reduce substantially the administrative costs associated with printing and mailing such a voluminous document, the Debtors propose,  to serve the Modified Disclosure Statement and Modified Plan (including exhibits) via CD-ROM instead of in printed format to all parties.  This procedure was approved by this Court in the December 10 Solicitation Procedures Order with respect to the solicitation on the Confirmed Plan and has also been approved in several other large chapter 11 cases in this district. See, e.g., In re Delta Airlines, Inc., Case No. 05-17923 (Bankr. S.D.N.Y.); In re Adelphia Communications Corp., Case No. 02-41729 (Bankr. S.D.N.Y.); In re Enron Corp., Ch. 11 Case No. 01-16034 (Bankr. S.D.N.Y.).  The Modified Plan and Modified Disclosure Statement would also be available at no charge via the Internet at www.delphidocket.com.  In addition, the Debtors would provide parties in interest (at no charge) a hard copy of the Solicitation Package upon reasonable written or telephonic request as set forth below.

Confirmed Plan, the Debtors would not be required to solicit votes on the Modified Plan

from such class, and no solicitation materials would be sent to these parties. Similarly,

the Debtors propose that no notice of the Modified Plan, Modified Disclosure Statement,

and any hearings related thereto, shall be required to be provided to holders of claims or

interests in non-voting Class I. Under the Modified Plan, the "Other Interests" in Class I

will be deemed cancelled and the holders of "Other Interests" in Class I would not receive

or retain any property in account of their interests. The treatment of the holders of Class I

"Other Interests" under the Modified Plan is identical to the treatment afforded such

holders under the Confirmed Plan, and the Debtors have previously incurred significant

costs in providing notice to the members of Class I in connection with the solicitation of

votes on the Confirmed Plan. With respect to these parties, therefore, additional notice of

the Modified Plan would be redundant, and therefore, unnecessary.

      49.    <u>Notices To Union-Represented Employees And Former Employees</u>

<u>Not Required</u>. In connection with the solicitation on the December 10 Plan, the Debtors

sent specialized notices to the current and former employees represented by Unions (as

defined in the December 10 Disclosure Statement) and certain non-represented hourly

active employees and retirees. The Debtors believe that no special Union or non-

represented hourly active employee and retiree notices are required in connection with

solicitation of votes on the Modified Plan because the Modified Plan incorporates those

same underlying Union settlement agreements, even though certain aspects of those

agreements have been adjusted to effectuate the revised terms and timing provisions of

the Amended GSA and Amended MRA. The Unions, as representatives of the current

and former employees, are on notice of these adjustments and have already agreed to

them in the context and implementation of the Amended GSA and Amended MRA

       50.   <u>Maintaining Record Date Established In December 10 Solicitation</u>

<u>Procedures Order</u>  Section 1127(d) of the Bankruptcy Code provides that "[a]ny holder

of a claim or interest that has accepted or rejected a plan is deemed to have accepted or

rejected, as the case may be, such plan as modified, unless, within the time fixed by the

Court, such holder changes such holder's previous acceptance or rejection."

Implementation of the foregoing would require the Debtors to maintain the record date

(for voting purposes only) established by this Court under the December 10 Solicitation

Procedures Order.  That record date was established as November 26, 2007.  Deciding

the appropriate record date has required the Debtors to make a determination: comply

with section 1127(d) and not update the record date or seek this Court's permission to

refrain from applying section 1127(d).  The plain language of the statute permits the

Debtors to use the November 26, 2007 record date, and the legislative history of section

1127(d) notes that the purpose of section 1127(d) is to "simplif[y] [the] modification

procedure by deeming any creditor or equity security holder that has already accepted or

rejected the plan to have accepted or rejected the modification."  H.R. Rep. No. 95-595,

at 411 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6367.  Because the Debtors already

have the information necessary to implement solicitation using the November 26, 2007

record date, keeping that record date would simplify the Debtors' resolicitation effort,

which is consistent with Congress' intent and the purpose of section 1127(d).

       51.   Moreover, the Debtors are not aware of any reported decision

under section 1127(d) requiring a new record date for resoliciting votes on a modified

plan.[11]  In addition, to the extent a party purchased a claim or interest after the voting

record date, such party purchased the claim or interest subject to the record date

established by this Court.  The only way that the Debtors can feasibly satisfy the plain

language requirements of section 1127(d) is by maintaining the same record date used for

soliciting votes on the December 10 Plan.  Thus, using the November 26, 2007 record

date is logical and rational.

52.    Although the Debtors realize that more than ten months have

lapsed since the November 26, 2007 record date, the December 10 Solicitation

Procedures Order sets the record date at November 26, 2007 and any party who

purchased a claim or interest after that record date purchased the claim or interest subject

to the record date established by this Court.  This is similar to a situation in which a party

who purchases a security following the ex-dividend date is not entitled to receive the

dividend; instead, the dividend is payable to the seller of the security.  In a slightly

different context, this Court established record dates for claim and equity distributions

and made clear that purchasers of claims or interests following the distribution record

date would not need to be recognized by the Debtors.  (Confirmation Order ¶¶ 36-37.)

The principle here is the same and the Debtors believe that maintaining the voting record

date as previously established by this Court is similarly appropriate.

53.    Accordingly, application of section 1127(d) of the Bankruptcy

Code requires that if a holder of a claim or interest does not vote to accept or reject the

Modified Plan by the Voting Deadline, that holder's prior vote would count as it was

---

[11]    But see, e.g., In re American Banknote Corp., Case No. 99 B 11577 (Bankr. S.D.N.Y. 2002) (upon
modification of plan post-confirmation under 11 U.S.C. § 1127(b), court established new record date
for previously unsolicited class as well as class whose treatment under plan had been modified); cf. In
re Oakwood Homes Corp., Case No. 02-13396 (Bankr. D. Del. 2004) (upon modification of plan pre-
confirmation, court set new record date).

originally cast.  Continuing to count those votes as acceptances or rejections of the

Modified Plan will minimize the confusion, expense, and time necessary to complete the

solicitation of votes on the Modified Plan by allowing claimants and interest holders who

are satisfied with their prior vote to leave that vote in place, while affording them a

meaningful opportunity to change their vote in the event that they feel the modifications

to the Confirmed Plan so warrant.  This procedures is consistent with section 1127(d) of

the Bankruptcy Code and is the only feasible means of implementing section 11 U.S.C. §

1127(d).  The Debtors request, therefore, that this Court confirm November 26, 2007 as

the record date for purposes of determining members of Classes C, D, E, G-1, G-2, H for

soliciting votes on the Modified Plan.

       54.    <u>Effect Of Failure Of Class To Vote</u>. The Debtors also propose that

if no claim or interest holder of a particular class votes either to accept or reject the

Modified Plan, then that class would be deemed to have accepted the Modified Plan.

       55.    <u>Maintenance Of Records By Intermediary Record Holders</u>.

Pursuant to the procedures approved in the December 10 Solicitation Procedures Order,

Intermediary Record Owners (as that term in defined in that order) who were required to

use the Master Ballot (as that term in defined in that order) voting process were required

to retain for inspection by the Court the Beneficial Owner Ballots (as that term in defined

in that order) cast by Beneficial Owners (as that term in defined in that order) for one

year following the January 11, 2008 voting deadline set by that order, and Intermediary

Record Owners who were required to send Prevalidated Ballots (as that term in defined in

that order) to Beneficial Owners for direct return to the respective Voting Agent were

also required to retain for inspection by the Court a list of those Beneficial Owners to

whom the Prevalidated Ballots were sent for one year following the January 11, 2008

Voting Deadline.  To facilitate the Debtors' resolicitation of votes on the Modified Plan,

the Debtors request that this Court direct the Intermediary Record Owners to maintain

these records and any new or other data relating to Beneficial Owners, until January 11,

2010.

          56.    <u>Rights Offering Participation Amounts</u>.  The Confirmed Plan

included a discount rights offering in which unsecured creditors were entitled to purchase

shares of Reorganized Delphi (as defined in the Confirmed Plan) at a discount to the

value ascribed to those shares under the Confirmed Plan.  To reconcile the correct

participation amounts for unsecured creditors, on December 28, 2007, the Debtors filed

the Rights Offering Estimation Motion (Docket No. 11606).  The Rights Offering

Estimation Motion sought to estimate claims for the purpose of participation in the

discount rights offering, and the Court approved the motion and entered the Rights

Offering Estimation Order on January 24, 2008 (Docket No. 12334).  As with the

Confirmed Plan, the Modified Plan provides for unsecured creditors to participate in a

discount rights offering and the Debtors are thus again required to determine the correct

participation amounts for unsecured creditors.  Accordingly, subject to this Court's

approval, the Debtors intend to use the participation amounts set by the Rights Offering

Estimation Order, unless either (i) the claim has been adjudicated to a different amount in

the intervening period, or (ii) the Debtors and the individual claimholder agree to a

different amount.  Parties who wish to confirm their participation amount may contact the

Debtors' Creditor Voting Agent, Kurtzman Carson Consultants LLC, 2335 Alaska

Avenue, El Segundo, California 90245, Att'n: Delphi Corporation, <u>et al.</u>, (888) 249-2691.

L.      Modified Cure Claim Procedures

57.      To assume executory contracts and unexpired leases pursuant to the Modified Plan under 11 U.S.C. § 365, the Debtors will be required to cure certain defaults under those contracts.  In the December 10 Solicitation Procedures Order and the Confirmation Order, this Court approved certain procedures with respect to the assumption of executory contracts and unexpired leases under the Confirmed Plan and the payment of the related cure.  The Confirmed Plan provided for the cure of Material Supply Agreements in cash or plan currency at the counterparty's election.  Based upon the reduced recoveries anticipated in the Modified Plan, the Debtors now propose to make these cure payments in cash and not offer the plan currency election.  For the avoidance of doubt, the Debtors would not be sending out new or additional Cure Amount Notices under the Modified Plan.  The Debtors would continue to apply these previously established procedures to resolve the remaining disputed cure amounts.

58.      In addition, because the Cure Amount Notices were sent out more than nine months ago, certain of the Master Supply Agreements to be assumed and cured under the Confirmed Plan have since expired or terminated and thus are no longer executory.  For the avoidance of doubt, the Debtors propose to send a Notice of Non-Assumption of Executory Contracts, substantially in the form attached to the Proposed Order as Exhibit H, to counterparties to expired or terminated Material Supply Agreements that previously received a Cure Amount Notice so that they are aware that such contracts are no longer being assumed or cured.

M.      Modified Reclamation Claim Procedures

59.      The Debtors seek to implement the following procedures regarding reclamation claims ("Reclamation Claims") asserted by sellers of goods with a statutory

35

or common law right to reclamation or holders of such claims ("Sellers"). Because the

Modified Plan provides for reduced distributions to unsecured creditors, the Debtors

propose to rescind all elections made by Sellers pursuant to the procedures established by

this Court regarding Reclamation Claims in conjunction with the Confirmed Plan.[12]

Instead, the Debtors will seek a judicial determination at a contested hearing subsequent

to the effective date of the Modified Plan (the "Reclamation Hearing") that Reclamation

Claims are not entitled to priority treatment because the goods and/or the proceeds from

the sale of the goods that are the subject of Reclamation Claims are or were subject to,

among other things, a valid security interest (the "Prior Lien Defense"). Pursuant to a

separate personalized notice substantially in the form of Exhibit I attached to the

Proposed Order, (the "Reclamation Election Notice"), Sellers would be given the choice

to opt out of litigation and receive the treatment afforded to holders of general unsecured

claims under the Modified Plan, which notice the Debtors will transmit by November 26,

2008 and which must be returned no later than December 12, 2008. This election should

expedite distributions to holders of Reclamation Claims who would otherwise not receive

a distribution until their Reclamation Claim is resolved. Notwithstanding this procedure,

the Debtors reserve all rights in law and in equity to contest the amount of any

Reclamation Claim to the extent such amount has yet to be resolved pursuant to the

Second Reclamation Order. The Sellers would not receive any voting rights on the

Modified Plan on account of Reclamation Claims. If a Seller (i) elects to dispute its

Reclamation Claim on the Reclamation Election Notice, (ii) makes no election on the

---

[12]    See Second Amended And Restated Final Order Under 11 U.S.C. §§ 362, 503, And 546 And Fed. R.
Bankr. P. 9019 Establishing Procedures For Treatment Of Reclamation Claims (Docket No. 10409)
(the "Second Reclamation Order").

Reclamation Election Notice, or (iii) fails to return the Reclamation Election Notice by

December 12, 2008, then that Seller would have its Reclamation Claim litigated at the

Reclamation Hearing.

<u>Applicable Authority</u>

60.    Section 1127 of the Bankruptcy Code applies when a party seeks

to modify a plan of reorganization.  Specifically, 11 U.S.C. § 1127(b) provides that a

"proponent of a plan or the reorganized debtor may modify such a plan at any time after

confirmation of such a plan and before substantial consummation of such a plan."

However, the modifications, "may not modify such plan so that such plan as modified

fails to meet the requirements of sections 1122 and 1123 of this title."  <u>Id.</u>  The proponent

of a modified plan is also required to comply with the disclosure and solicitation

requirements outlined in section 1125 of the Bankruptcy Code.  11 U.S.C. § 1127(c).

Whether a debtor needs to resolicit votes on modifications to a plan of reorganization

depends on whether the modification is material or not and whether the creditors and

interest holders are adversely affected.  <u>See</u> <u>In re Am. Solar King Corp.</u>, 90 B.R. 808, 824

(Bankr. W.D. Tex. 1988) (finding that plan modification reducing distribution to

creditors by less than one percent did not require resolicitation); <u>In re Boroff</u>, 189 B.R. 53,

57 (D. Vt. 1995) (quoting <u>In re Frontier Airlines, Inc.</u>, 93 B.R. 1014, 1023 (Bankr. D.

Colo. 1988) ("If the modification adversely affects the interests of a creditor in more than

a purely ministerial, de minimis manner, that creditor should have the opportunity to

reconsider and change his or her vote.")).

61.    When a debtor resolicits acceptances of a modified plan, section

1127 of the Bankruptcy Code provides that a holder's prior vote on the December 10 Plan

may be counted as a vote on the Modified Plan.  11 U.S.C. § 1127(d) (holder may be

"deemed to have accepted or rejected, as the case may be, such plan as modified").  See,

e.g., In re McCommas LFG Processing Partners, LP, Nos. 07-32222-HDH-11, 07-32219-

DHD-11, 2007 WL 4234139, at *3 (Bankr. N.D. Tex. Nov. 29, 2007) ("[p]ursuant to

section 1127(d) of the Bankruptcy Code and Bankruptcy Rule 3019, all acceptances of

the Plan prior to such Modifications are deemed acceptances of the Plan"); Enron Corp v.

New Power Co. (In re New Power Co.), 438 F.3d 1113, 1117-18 (11th Cir. 2006) (court

may deem holder's prior vote of acceptance for original plan as acceptance of a modified

plan even without resoliciting "unless the modification materially and adversely changes

the way that claim or interest holder is treated").

       62.    As required by section 1127(c) of the Bankruptcy Code, the

Debtors believe that resolicitation of votes on the Modified Plan is required, and therefore

the Debtors have filed with this Court the Modified Disclosure Statement together with

the Modified Plan.  Section 1125(b) of the Bankruptcy Code, as incorporated by section

1127 of the Bankruptcy Code, prohibits postpetition solicitation of a reorganization plan

unless the plan and "a written disclosure statement approved, after notice and a hearing,

by the court as containing adequate information" are transmitted to those persons whose

votes are being solicited.  As previously stated, the Debtors filed the Modified Plan and

Modified Disclosure Statement, and are seeking this Court's approval to commence

solicitation of acceptances of the Modified Plan.

       63.    This Court previously approved the December 10 Disclosure

Statement as providing adequate information within the meaning of Section 1125(a)(1) of

the Bankruptcy Code.  Section 1125(a)(1) of the Bankruptcy Code defines "adequate

information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtors and the condition of the debtor's books and records, that
> would enable a hypothetical reasonable investor typical of holders
> of claims or interests of the relevant class to make an informed
> judgment about the plan. . . .

11 U.S.C. § 1125(a)(1).  Because certain events have subsequently transpired since the

approval of the December 10 Disclosure Statement and the confirmation of the

Confirmed Plan, the Debtors believed that modifications to the Confirmed Plan are

desirable and have updated the December 10 Disclosure Statement.  The Debtors believe

that the Modified Disclosure Statement contains "adequate information."  Accordingly

the Debtors request the Modified Disclosure Statement be approved for resolicitation of

votes on the Modified Plan in accordance with section 1127(b).

      64.     In examining the adequacy of the information contained in a

disclosure statement, a bankruptcy court has broad discretion.  See Texas Extrusion Corp.

v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); In

re Dakota Rail, Inc., 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (court has "wide

discretion to determine . . . whether a disclosure statement contains adequate information

without burdensome, unnecessary and cumbersome detail").  Accordingly, the

determination of whether a disclosure statement contains adequate information is to be

made on a case-by-case basis, focusing on the unique facts and circumstances of each

case.  In that regard, courts generally examine whether the disclosure statement contains

information including:

- the circumstances that gave rise to the filing of the bankruptcy petition;

- a complete description of the available assets and their value;

- the anticipated future of the debtor;

39

- the source of the information provided in the disclosure statement;

- a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized other than those set forth in the disclosure statement;

- the condition and performance of the debtor while in chapter 11;

- information regarding claims against the estate;

- a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

- the accounting and valuation methods used to produce the financial information in the disclosure statement;

- information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

- a summary of the plan of reorganization;

- an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

- the collectibility of any accounts receivable;

- any financial information, valuations, or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

- information relevant to the risks being taken by the creditors and interest holders;

- the actual or projected value that can be obtained from avoidable transfers;

- the existence, likelihood, and possible success of non-bankruptcy litigation;

- the tax consequences of the plan; and

- the relationship of the debtor with its affiliates.

In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); see also

Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24, 29 (S.D.N.Y. 1995)

(determination of whether disclosure statement contains adequate information must be made on case-by-case basis).

65.    The Debtors submit that the Modified Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and therefore satisfies the requirements of section 1127(b) of the Bankruptcy Code. Similar to the December 10 Disclosure Statement which was approved by this Court, the Modified Disclosure Statement is both extensive and comprehensive and satisfies each of the informational items outlined in In re Scioto Valley Mortgage Co.  Indeed, the Modified Disclosure Statement contains descriptions and summaries of, among other things, (i) the Modified Plan, (ii) the Debtors' history and prepetition capital structure, (iii) certain events leading to the commencement of the chapter 11 cases, (iv) the significant events during the chapter 11 cases,  (v) the claims asserted against the Debtors' estates, (vi) the new securities to be issued under the Modified Plan, (vii) various risk factors affecting the Modified Plan and the Debtors' restructuring, (viii) a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical chapter 7 case, (ix) financial information and valuations relevant to creditors' determinations of whether to accept or reject the Modified Plan, (x) certain securities law and tax law consequences of the Modified Plan, and (xi) a disclaimer indicating that no statements or information concerning the Debtors and their assets and securities are authorized other than those set forth in the Modified Disclosure Statement.  Accordingly, the Debtors submit that the Modified Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code as incorporated by section 1127 of the Bankruptcy Code and should be approved under section 1127(b) of the Bankruptcy Code.

05-44481-rdd    Doc 14310    Filed 10/03/08    Entered 10/03/08 21:22:46    Main Document
Pg 42 of 44

66.    The Debtors further request that the Court authorize them to (i) make non-material changes to the Modified Disclosure Statement and related documents (including the exhibits thereto and to this Motion) and (ii) revise the Modified Disclosure Statement and related documents (including the exhibits thereto) to add further disclosure concerning events occurring at or after the Preliminary Modification Hearing, before distributing it to each person and entity in accordance with the terms of the proposed order granting this Motion.  If so permitted, the Debtors would file copies with the Court of any changed pages marked to show the changes.

67.    Consistent with the Court's finding in connection with the December 10 Disclosure Statement, the Debtors also request that this Court find that, as far as the Court has been made aware, (i) all material information regarding the Debtors and their subsidiaries, their respective assets, affairs, and financial conditions, and the reorganization and restructuring provided for under the Modified Plan has been set forth in the Modified Disclosure Statement and the Debtors' public filings with the Securities and Exchange Commission before the date of the Preliminary Modification Hearing (or the exhibits or appendices thereto), or that all such material information has been disclosed fully and adequately thereby, and (ii) there is no material nonpublic information regarding the Debtors or their subsidiaries, their respective assets, affairs, or financial conditions, or the reorganization and restructuring provided for under the Modified Plan that has not been disclosed.

Notice Of Motion

68.    Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

42

05-44481-rdd    Doc 14310    Filed 10/03/08    Entered 10/03/08 21:22:46    Main Document
Pg 43 of 44


Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883)

(the "Supplemental Case Management Order") and the Twelfth Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And

9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered July 23, 2008 (Docket No. 13965).  The Debtors also

request that any party filing a timely objection to this Motion (i) make a good faith effort

to include in such objection proposed language that would resolve the objection and (ii)

participate in a meet and confer with the Debtors on the day after the objection deadline

to this Motion, or as soon thereafter as the Debtors determine, in an effort to resolve the

objection consensually.  In light of the nature of the relief requested, the Debtors submit

that no other or further notice is necessary.

43

WHEREFORE the Debtors respectfully request that the Court (a) enter an order

(i) approving certain modifications to the Confirmed Plan and related modifications to the

December 10 Disclosure Statement and  related procedures and notices for resoliciting

votes of affected classes on the Modified Plan and (ii) setting a final hearing date on

approval of the Debtors ' proposed Modified Plan and (b) grant them such other and

further relief as is just.

Dated:     New York, New York
           October 3, 2008

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                     & FLOM LLP

                               By:    /s/ John Wm. Butler, Jr.
                                      John Wm. Butler, Jr.
                                      George N. Panagakis
                                      Ron E. Meisler
                                      Nathan L. Stuart
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois 60606
                                    (312) 407-0700

                                          - and –

                               By:    /s/ Kayalyn A. Marafioti
                                      Kayalyn A. Marafioti
                                      Thomas J. Matz
                                    Four Times Square
                                    New York, New York 10036
                                    (212) 735-3000

                                    Attorneys for Delphi Corporation, et al.,
                                      Debtors and Debtors-in-Possession

44