**Hearing Date:  December 8, 2008**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                                                   :
    In re                                                                 :        Chapter 11
                                                                            :
DELPHI CORPORATION, et al.,        :        Case No. 05-44481 (RDD)
                                                                            :
                         Debtors.     :        (Jointly Administered)
                                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DEBTORS' STATEMENT OF DISPUTED ISSUES WITH RESPECT TO
PROOF OF CLAIM NUMBER 12446 (MARY H. SCHAFER)

("STATEMENT OF DISPUTED ISSUES – MARY H. SCHAFER")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Statement Of Disputed Issues (the "Statement Of Disputed Issues") With Respect To Proof Of Claim Number 12446 filed by Mary H. Schafer ("Ms. Schafer") and respectfully represent as follows:

Background

1.  On October 8 and 14, 2005 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.  On July 28, 2006, Ms. Schafer filed proof of claim number 12446 (the "Proof of Claim") against Delphi. The Proof of Claim asserts an unsecured non-priority claim in an unliquidated amount arising from certain compensation and benefits items allegedly accrued while Ms. Schafer was employed at Delphi (the "Claim").

3.  On January 19, 2007, Ms. Schafer resigned from her position (the "Quit Date") as SGA Initiative Lead for Delphi to pursue opportunities outside of Delphi.

4.  On June 27, 2008, the Debtors objected to the Proof of Claim pursuant to the Debtors' Thirtieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Amended Claims, (B) Equity Claims, (C) Untimely Insufficiently Documented Claim, (D) Books And Records Claims, (E) Untimely Claims, And (F) Claims Subject To Modification (Docket No. 13823) (the "Thirtieth Omnibus Claims Objection").

5. On July 24, 2008, Ms. Schafer, by and through her counsel, filed the Response Of Creditor Mary H. Schafer To Thirtieth Omnibus Claim Objection (Docket No. 13971) (the "Response").

6. On October 3, 2008, the Debtors filed their Notice Of Hearing With Respect To Debtors' Objection To Proof Of Claim No. 12446 (Mary H. Schafer) (Docket No. 14309), scheduling a claims objection hearing for the purposes of holding an evidentiary hearing on the merits of the Proof of Claim for December 8, 2008, at 10 a.m. (prevailing Eastern time) in the Bankruptcy Court.

7. In the Response and the Proof of Claim, Ms. Schafer asserts the following vested interests:

| **Description** | **Ms. Schafer's Asserted Amount** |
|---|---|
| (i)    2,582 RSUs (defined below) pursuant to annual and long-term incentive plans for 2003 | (i) Unliquidated |
| (ii)   6,773 RSUs pursuant to annual and long-term incentive plans for 2004 | (ii) Unliquidated |
| (iii)  6,773 RSUs pursuant to annual and long-term incentive plans for 2005 | (iii) Unliquidated |
| (iv)  Awarded and unpaid 2005 and 2006 recognition grant under annual incentive plan | (iv) $42,000.00 |
| (v)   Stock options which were awarded under long-term incentive plans | (v) Unliquidated |
| (vi)  Benefits under the Benefit Equalization Plan | (vi) Unliquidated |
| (vii) Benefits under the Supplemental Executive Retirement Plan, estimated to be not less that $730,000 | (vii) Not less than $730,000.00 |
| (viii) Claim to enforce indemnification rights as a former employee | (viii) Unliquidated |
| (ix)  Benefits under the supplemental group life insurance plan | (ix) Unliquidated |
| (x)   Litigation claim regarding Debtors' implementation of 401k Plan | (x) Unliquidated |
| (xi)  Undelivered and cancelled awards under annual and long-term incentive plans for years 2002-2006 | (xi) Unliquidated |
| (xii) Awards under the Performance Achievement Plan for years 2004-2006 and 2005-2007, in an amount estimated to be not less than $255,850.00 | (xii) Not less than $255,850.00 |
| **Total** | **$1,027,850.00 plus unliquidated amounts** |

## Disputed Issues

A.          Delphi Does Not Owe Claimant The Amount Asserted In The Proof Of Claim

8.          Ms. Schafer asserts in the Proof of Claim that Delphi is liable for an amount not less than $1,027,850.00 for certain items related to executive compensation and other

4

benefits. Delphi has reviewed the information attached to the Proof of Claim and the Response and disputes that it owes the amount asserted in the Proof of Claim.

9. <u>RSUs Not Vested At Time Of Quit</u>. Ms. Schafer claims an unliquidated amount for certain restricted stock units ("RSUs") pursuant to annual and long-term incentive plans for the years 2003 (the "2003 RSUs"), 2004 (the "2004 RSUs"), and 2005 (the "2005 RSUs"). RSUs are granted to employees and then subsequently vest on certain anniversary dates. However, once an employee leaves Delphi, any unvested RSUs are deemed forfeited.

10. In Ms. Schafer's case, the 2003 RSUs were granted on April 24, 2003, and subsequently 1,936 of the 2003 RSUs vested on April 24, 2004 (the "First Vest") and 2,008 of the 2003 RSUs vested on April 24, 2006 (the "Second Vest"). The third and final installment of the 2003 RSUs were scheduled to vest on April 24, 2008, after Ms. Schafer's Quit Date. The First Vest occurred and was delivered to all eligible employees, including to Ms. Schafer. The Second Vest occurred, but was not delivered to employees until after Ms. Schafer's Quit Date. The Debtors acknowledge the Second Vest is due and owing to Ms. Schafer. However, because the remaining 2003 RSUs, the 2004 RSUs, and the 2005 RSUs had not vested prior of the Quit Date, these RSUs were forfeited and should not be included in the Claim. The Debtors will take prompt steps to deliver the outstanding shares from the Second Vest to Ms. Schafer. Accordingly, no amounts are owed by Delphi to Ms. Schafer.

11. <u>Recognition And Retention Grant</u>. Ms. Schafer further asserts a claim of approximately $42,000.00 for a recognition and retention grant program for the years 2005 and 2006. In early 2005, the Debtors awarded salaried employees a recognition and retention grant (the "R&R Grant") which would vest and be paid in three different installments (the "Installments"). Ms Schafer was paid $21,000.00 on September 15, 2005 for the first Installment.

5

In connection with the filing of the Debtors' chapter 11 cases, the R&R Grant was cancelled as of the Petition Date and consequently the second and third Installments did not vest and were not paid to employees.

12. Additionally, Ms Schafer waived any further claims for R&R Grants. Beginning in 2006, pursuant the Order Under 11 U.S.C. Sections 105 and 363 Authorizing the Debtors to Implement a Short-Term Annual Incentive Program, entered February 17, 2006 (Docket No. 2441), as a condition of eligibility for key employee compensation program (the "KECP"), all executives were required to waive any and all claims related to the cancelled R&R Grants in order to receive the 2006 AIP Payment (as defined below in paragraph 20). Ms. Schafer signed such a waiver. Accordingly Ms. Schafer was not eligible for any further R&R Grant payments and no amounts are owed by Delphi.

13. <u>Stock Options</u>. Ms. Schafer claims unliquidated amounts for stock options under Delphi's long-term incentive plans. However, all stock options are forfeited upon the resignation of an employee. Therefore as of the Quit Date, Ms. Schafer is not entitled to any compensation on account of unexercised, cancelled stock options and no amounts are owed by Delphi to Ms. Schafer.

14. <u>BEP Benefits</u>. Ms. Schafer claims unliquidated amounts for Delphi's benefit equalization plan ("BEP") benefits. Once an executive separates from service and requests a final pay out of their BEP account, Delphi makes a distribution and issues a check in an amount equal to the market value of the BEP account at that time. In April 2007, Delphi paid Ms. Schafer $1,522.97, representing the total amount in her BEP account. Accordingly, such BEP benefits have been paid and no further amounts are owed by Delphi.

15. <u>SERP Benefits</u>.  Ms. Schafer claims Delphi is liable for an amount not less than $730,000.00 for Delphi's Supplemental Executive Retirement Plan ("SERP") benefits. SERP benefits vest at age 62 years with at least 10 years of service.  SERP benefits are forfeited if an employee separates from Delphi prior to vesting.  Ms. Schafer was under the prerequisite SERP age requirement on her Quit Date.  Consequently, Ms. Schafer's SERP benefits were not vested, and accordingly Ms. Schafer is not entitled to SERP benefits and no amounts are owed by Delphi.

16. <u>Indemnification Rights</u>.  Ms. Schafer asserts a contingent claim in an unliquidated amount for indemnification against Delphi.  To date, no events have required Ms. Schafer to seek indemnification from Delphi, consequently, the Debtors believe no amounts are owed for indemnification rights.

17. <u>Benefits Under Supplemental Life Insurance Plan</u>.  Ms. Schafer claims unliquidated amounts for supplemental life insurance.  Delphi does not extend supplemental life insurance benefits coverage to former employees.  Because Ms. Schafer is no longer an employee of Delphi, all benefits ceased as of the Quit Date, therefore no amounts are owed by Delphi.

18. <u>Litigation Claim Regarding Delphi's 401(k) Plan</u>.  Ms. Schafer asserts claims against the Debtors regarding the implementation and administration of, among other things, the Debtors' 401(k) program.  It appears that the asserted claim is covered by the settlement of certain multi-district litigation ("MDL") claims, as approved by the Bankruptcy Court.[1]  As part of the settlement, the Debtors obtained a release from liability. Accordingly, the MDL Settlements (as defined First Amended Joint Plan of Reorganization of Delphi Corporation

---

[1]  <u>See</u> Final Order Approving Multidistrict Litigation and Insurance Settlement (Docket No. 12358).

and Certain Affiliates, Debtors and Debtors-In-Possession, as amended on January 25, 2008 (Docket No. 12359) (the "Confirmed Plan")) release the Debtors from liability for the asserted litigation claim and no further amounts are owed by Delphi.

19. <u>Annual And Long-Term Incentive Plans For 2002-2006</u>. Ms. Schafer claims unliquidated amounts for annual and long-term incentive plans under KECP (the "KECP Incentive Plans"). To be eligible to receive a payment under any KECP Incentive Plan (the "KECP Payment") (i) Delphi must meet specified targets and (ii) the executive must be employed at the pay date. Any KECP Payment award terminates on the date of termination of employment.

20. In 2002, Delphi met the specified targets and an KECP Payment was earned and paid to employees (the "2002 KECP Payment"), including Ms. Schafer. Ms. Schafer received 2002 KECP Payment in the amount of $139,000.00. For calendar years 2003 - 2005, Delphi did not meet the specified targets to earn a payout, and, accordingly, no KECP Payment was earned, paid or owed to executives for such calendar years. For the first half of 2006 Delphi met the specified targets and an KECP Payment was earned and paid to employees (the "2006 AIP Payment"), including Ms. Schafer. Ms. Schafer received a 2006 AIP Payment of $135,000.00, which constituted her full AIP Payment for the first half of 2006. With respect to the second half of 2006, Ms. Schafer's Quit Date was before the KECP Payment pay date, and, accordingly, Ms. Schafer was not eligible for further payments and no amounts are owed by Delphi.

21. <u>PAP Awards</u>. Ms. Schafer asserts certain Performance Achievement Plan ("PAP") awards are due and owing for the years 2004-2006 and 2005-2007, in an amount estimated to be not less than $255,850.00. PAP awards (the "PAP Awards") are measured

8

throughout a given award period and vest at the conclusion of such period. PAP Awards terminate on the date of termination of employment. The PAP Awards were cancelled as of the Petition Date. Moreover, even if the PAP Award program had not been cancelled, such awards were not fully vested on Ms. Schafer's Quit Date and would have been forfeited. Accordingly, no amounts are owed on account of the PAP awards.

22. After taking into account the above-referenced deductions to the Proof of Claim, the Debtors reconciled the Proof of Claim as illustrated in the following chart:

| Claimant's Asserted Amount | | Not Less Than $1,027,850.00 |
|---|---|---|
| Reconciled Amounts | 2003 RSUs | $0.00 |
| | 2004 RSUs | $0 |
| | 2005 RSUs | $0 |
| | AIP for 2005 and 2006 | $0 |
| | Stock options | $0 |
| | BEP Benefits | $0 |
| | SERP Benefits | $0 |
| | Indemnification Rights | $0 |
| | Supplemental Life Insurance Benefits | $0 |
| | 401(k) Litigation Claim | $0 |
| | Annual And Long-Term Incentive Plans For 2002-2006 | $0 |
| | PAP Awards for 2004-2006 and 2005-2007 | $0 |
| Total Reconciled Amount | | $0.00 |

9

23.     Accordingly, Delphi seeks to have the Claim disallowed and expunged in its entirety.

## Reservation Of Rights

24.     This Statement Of Disputed Issues is submitted by the Debtors pursuant to paragraph 9(d) of the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections To Claims (Docket No. 6089) (the "Claims Objection Procedures Order").  Consistent with the provisions of the Claims Objection Procedures Order, the Debtors' submission of this Statement Of Disputed Issues is without prejudice to (a) the Debtors' right to later identify and assert additional legal and factual bases for disallowance, expungement, reduction, or reclassification of the Claim and (b) the Debtors' right to later identify additional documentation supporting the disallowance, expungement, reduction, or reclassification of the Claim.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) disallowing and expunging the Claim in its entirety and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
October 10, 2008

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti
Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession