**Hearing Date And Time: November 21, 2008 at 10:00 a.m. (prevailing Eastern time)**
**Response Date And Time: November 14, 2008 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   -   x
|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 TO (A) UNTIMELY
EQUITY CLAIM, (B) BOOKS AND RECORDS CLAIM THAT IS SUBJECT
TO PRIOR ORDER, (C) UNTIMELY BOOKS AND RECORDS CLAIMS,
(D) BOOKS AND RECORDS TAX CLAIM THAT IS SUBJECT TO PRIOR
ORDER, (E) UNTIMELY CLAIMS, AND (F) MODIFIED CLAIMS
ASSERTING RECLAMATION THAT ARE SUBJECT TO PRIOR ORDERS

("THIRTY-FIRST OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Thirty-First Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 3007 To (A) Untimely Equity Claim, (B) Books And Records Claim That Is Subject

To Prior Order, (C) Untimely Books And Records Claims, (D) Books And Records Tax Claim

That Is Subject To Prior Order, (E) Untimely Claims, And (F) Modified Claims Asserting

Reclamation That Are Subject To Prior Orders (the "Thirty-First Omnibus Claims Objection"),

and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors.  On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders (together with the official committee of unsecured creditors, the

"Statutory Committees").

3.    On December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

2

respect to the Plan (Docket No. 11388) (the "December 10 Disclosure Statement").  The Court

entered an order approving the adequacy of the Disclosure Statement and granting the related

solicitation procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008,

the Court entered an order (Docket No. 12359) (the "Confirmation Order") confirming the Plan

(as modified) (the "Confirmed Plan"), which order became final on February 4, 2008.  Although

the Debtors on April 4, 2008 had satisfied the conditions required to substantially consummate

the Confirmed Plan, including obtaining $6.1 billion of exit financing, Delphi's Plan Investors

(as defined in the Confirmed Plan) refused to participate in a closing that was commenced but

not completed and refused to fund their Investment Agreement (as defined in the Confirmed Plan)

with Delphi.

        4.       On October 3, 2008, the Debtors filed a motion (the "Plan Modification

Approval Motion") under 11 U.S.C. § 1127 for an order approving (i) certain modifications to

the Confirmed Plan and related modifications to the December 10 Disclosure Statement and (ii)

approving related procedures for re-soliciting votes on the Confirmed Plan as modified (the

"Modified Plan").

        5.       This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

        6.       The statutory predicates for the relief requested herein are sections 502(b)

of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      <u>Current Business Operations Of The Debtors</u>

        7.       Delphi and its subsidiaries and affiliates (collectively, the "Company") as

of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately

$13.7 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public

company business reorganization in terms of revenues and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors and have continued their business operations without supervision from the Court.[2]

8.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer ("OEM").

9.      Delphi was incorporated in Delaware in 1998 as a wholly owned

subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the

Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the

assets and liabilities of these divisions and subsidiaries were transferred to the Company in

accordance with the terms of a Master Separation Agreement between Delphi and GM.  In

connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's

---

[1]   The aggregated financial data used herein generally consists of consolidated information from Delphi and its
      worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2]   On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core
      automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency
      proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso
      receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of
      which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31,
      2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing
      footprint and to lower its overall cost structure.

4

single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

11.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which had the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

13.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business; second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company; third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus; fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable

solution to their current pension situation.

E.    Plan Confirmation And Postconfirmation Matters

14.    The Confirmed Plan is based upon a series of global settlements and

compromises that involve nearly every major constituency in the Debtors' reorganization cases.

The Confirmation Order approved the Global Settlement Agreement (the "Original GSA") and

the Master Restructuring Agreement (the "Original MRA"), which provided for a comprehensive

settlement with GM.  After the Plan was confirmed, the Debtors focused their efforts on

satisfying the conditions for the Confirmed Plan to become effective.  The Debtors satisfied

those conditions and on April 4, 2008 began a formal closing process attended by representatives

of GM, the exit lenders, and the Statutory Committees.

6

15.    The Plan Investors, however, refused to participate in the closing or fund their obligations under the Investment Agreement.  Instead, the Plan Investors delivered written notices purporting to terminate the Investment Agreement based on both alleged breaches by the Debtors and the failure of the Confirmed Plan's effective date to occur by April 4, 2008.  On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments and refused to participate in the closing that would have led to Delphi's successful emergence from chapter 11.

F.    Background Of The Modified Disclosure Statement And Modified Plan

16.    The Debtors nevertheless continued working with their stakeholders to evaluate their options to move forward with emerging from chapter 11 as soon as reasonably practicable.  On September 12, 2008, Delphi announced steps that they were taking to complete the successful restructuring of their U.S. operations, transformation of the company on a global basis, and emergence from chapter 11.  Those steps included reaching agreements with GM to amend the GSA and MRA, taking action to fund and preserve Delphi's hourly and salaried pension plans, and completing the reaffirmation process for Delphi's August 2008 Reaffirmed Plan Of Reorganization Business Plan (the "2008-2011 RPOR Business Plan").  Among other changes, the 2008-2011 RPOR Business Plan includes revised actual and expected volumes for the North American automotive market, significant increases in commodities costs that are used as raw materials in certain of Delphi's products, and changes in the underfunded status of its pension plans as a result of negative plan asset return.

17.    On September 23, 2008, this Court entered an order authorizing Delphi to take certain actions with respect to its pension plans and to implement replacement pension plans.  On September 26, 2008, this Court entered an order authorizing the Debtors' implementation of

the amended GSA (the "Amended GSA") and the amended MRA (the "Amended MRA"), which

agreements became effective on September 29, 2008.  Delphi estimates the value of the

consideration received under those agreements to be approximately $10.6 billion (increased from

approximately $6.0 billion in the Original GSA/MRA), which includes an increase of nearly $2

billion in connection with the amount of Delphi's net hourly pension liabilities transferred and to

be transferred to GM pursuant to section 414(l) of the Internal Revenue Code (increased from

$1.5 billion under the Original GSA to approximately $3.4 billion under the Amended GSA).

18.    The Amended GSA and Amended MRA allowed the Debtors to carry out

their transformation goals of (i) obtaining financial support from GM for certain of Delphi's

legacy and labor costs and GM's business commitments to Delphi going forward and (ii)

devising a workable solution to Delphi's pension funding situation.  Implementation of the

Amended GSA and Amended MRA also allowed the Debtors to move forward on the basis of

their reaffirmed emergence business plan to enter the capital markets and to be in a position to

negotiate with their stakeholders regarding funding of, and modifications to, the Confirmed Plan.

19.    The Debtors have accordingly formulated certain modifications to the

Confirmed Plan which are set forth in the Plan Modification Approval Motion filed on October 3,

2008.  Upon the conclusion of the reorganization process, the Debtors expect to emerge as a

stronger, more financially sound business with viable U.S. operations that are well-positioned to

advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to

continue to deliver high-quality products to its customers globally.  Additionally, the Company

will preserve and continue the strategic growth of its non-U.S. operations and maintain its

prominence as the world's premier auto supplier.

G.     Bar Date, Proofs Of Claim, And Omnibus Claims Objections

20.     On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"), against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such Claim.

21.     On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and Statements") and (b) the persons and entities included in the notice database compiled by the Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided Bar Date Notices to more than 500,000 persons and entities.

22.     In addition, the Debtors published the Bar Date Notice in the New York Times (National Edition), the Wall Street Journal (National, European, and Asian Editions), USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader, Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

9

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, the Tuscaloosa

News, and The Vindicator, and electronically through posting on the Delphi Legal Information

Website, www.delphidocket.com, on or before April 24, 2006.

23.    Approximately 16,825 proofs of claim (the "Proofs of Claim") have been

filed against the Debtors in these cases.  The Debtors have filed 30 omnibus Claims objections, [4]

pursuant to which this Court has disallowed and expunged 9,741 Claims and modified

approximately 3,726 Claims.  In addition, the hearings with respect to approximately 513 Claims

remain adjourned pursuant to the Claims Objection Procedures Order (as defined below).

24.    On October 31, 2006, the Debtors filed the Motion For Order Pursuant To

11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007,

And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims

And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or

Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among

other things, to approve certain procedures for contested claim objections.  On December 7, 2006,

---

[4]    The Debtors filed Claims objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos.
5451 and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and
6585), February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April
27, 2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket
Nos. 8270 and 8271), July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151),
September 21, 2007 (Docket No. 9535), October 26, 2007 (Docket No. 10738), November 19, 2007 (Docket
No. 10982), December 21, 2007 (Docket No. 11588), January 18, 2008 (Docket No. 12288), February 15, 2008
(Docket Nos. 12686 and 12687), March 27, 2008 (Docket Nos. 13269 and 13270), and June 27, 2008 (Docket
No. 13823).

the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m),

3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding

Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims

(Docket No. 6089) (the "Claims Objection Procedures Order").

   25. On November 30, 2007, the Debtors filed the Motion Under New

Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue

Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 11187).  In that motion, the Debtors requested this

Court, among other things, to authorize the Debtors to continue the current practices and

procedures for filing and serving notice of omnibus Claims objections pursuant to the Claims

Objection Procedures Order, including omnibus Claims objections to more than 100 Claims.  On

December 20, 2007, this Court granted this relief by entering the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

   26. In this Thirty-First Omnibus Claims Objection, the Debtors are objecting

to 11 Proofs of Claim, all of which are set forth on <u>Exhibit F</u> hereto in alphabetical order by

claimant and cross-referenced by proof of claim number and basis of objection.

<u>Relief Requested</u>

27.    By this Thirty-First Omnibus Claims Objection, the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging (a) the Claim set forth on <u>Exhibit A</u> because it was filed by a holder of Delphi common stock solely on account of stock holdings and was untimely filed pursuant to the Bar Date Order, (b) the Claim that is set forth on <u>Exhibit B-1</u> hereto, and which is subject to a prior order of this Court, because it asserts a liability or dollar amount that is not reflected on the Debtors' books and records, (c) the Claims set forth on <u>Exhibit B-2</u> hereto because they assert liabilities or dollar amounts that are not reflected on the Debtors' books and records and were untimely filed pursuant to the Bar Date Order, (d) the Claim filed by a taxing authority that is set forth on <u>Exhibit B-3</u> hereto, and which is subject to prior order of this Court, because it asserts a liability or dollar amount that is not reflected on the Debtors' books and records, and (f) the Claims set forth on <u>Exhibit C</u> hereto because they were untimely filed pursuant to the Bar Date Order.

28.    In addition, by this Thirty-First Omnibus Claims Objection the Debtors seek entry of an order pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 revising the asserted amount and/or changing the identity of the alleged Debtor with respect to the Claims set forth on <u>Exhibit D</u> hereto, which are subject to a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or the claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand.

12

<u>Objections To Claims</u>

H.    <u>Untimely Equity Claim</u>

29.    During their Claims review, the Debtors determined that a certain Proof of Claim filed against the Debtors represents a proof of interest that was filed by or on behalf of a person holding Delphi common stock and was received by the Debtors after the Bar Date[5] (the "Untimely Equity Claim").  The Debtors caused the Claims Agent to serve notice of the Bar Date on holders of Delphi common stock to ensure that holders of stock who wished to assert claims against any of the Debtors that were not based solely upon their ownership of Delphi common stock would be afforded the opportunity to file claims in these chapter 11 cases.

30.    The ownership of Delphi common stock constitutes an equity interest in Delphi, but does not constitute a "claim" against Delphi's estate as such term is defined in section 101(5) of the Bankruptcy Code.  Furthermore, as set forth in the Bar Date Notice that was approved by this Court, creditors and equity holders were notified that they were not required to file proofs of claim based exclusively on ownership interests in Delphi common stock.[6]

---

[5]    The Untimely Equity Claim listed on <u>Exhibit A</u> hereto was not included as part of the Motion For Order Under Fed. R. Bankr. P. 3003(c)(3) And 9006(b)(1) Deeming Certain Proofs Of Claim Timely Filed, dated September 29, 2006 (Docket No. 5238) (the "Claims Timeliness Motion").

[6]    The Bar Date Order provides, in relevant part:

Proofs of Claim are not required, at this time, to be filed by any Person or Entity asserting a Claim of any of the types set forth below:

*    *    *

(h)  Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or rescission based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

Bar Date Order ¶5 (emphasis added).

31.     Identified on <u>Exhibit A</u> is the Untimely Equity Claim that the Debtors have identified as representing solely a proof of interest that was untimely filed pursuant to the Bar Date Order.  The Debtors seek to have this claim reclassified from a Claim to an interest and be disallowed and expunged.  To the extent that the individual who filed the Untimely Equity Claim listed on <u>Exhibit A</u> holds valid equity interests in Delphi as of the applicable record date, the requested reclassification of the Untimely Equity Claim and disallowance of such Claim will not impair any entitlements the Claimant may ultimately have under a plan of reorganization with respect to such holders' equity interests.

32.     Accordingly, the Debtors (a) object to the Untimely Equity Claim and (b) seek entry of an order disallowing and expunging the Untimely Equity Claim in its entirety.

I.      <u>Books And Records Claims</u>

33.     During the Debtors' review of the Proofs of Claim, the Debtors determined that a Claim that was modified pursuant to a prior order on a Claims objection asserts a liability or dollar amount that is not owing pursuant to the Debtors' books and records (the "Books And Records Claim That Is Subject To Prior Order").  The Debtors have also determined that certain Proofs of Claim assert liabilities or dollar amounts that are not owing pursuant to the Debtors' books and records and, in addition, were not timely filed pursuant to the Bar Date Order (the "Untimely Books And Records Claims").  In addition, the Debtors have determined that a certain Proof of Claim filed by a taxing authority that was modified pursuant to a prior order of this Court asserts a liability or dollar amount that is not owing pursuant to the Debtors' books and records (the "Books And Records Tax Claim That Is Subject To Prior Order").  The Debtors believe that the parties asserting the Books And Records Claim That Is Subject To Prior Order, the Untimely Books And Records Claims, and the Books And Records Tax Claim That Is Subject To Prior Order are not creditors of the Debtors.  The Debtors determined that they are

14

not liable for the Books And Records Claim That Is Subject To Prior Order, the Untimely Books

And Records Claims, and the Books And Records Tax Claim That Is Subject To Prior Order

because the Debtors' books and records do not reflect the existence of the asserted Claims or of

the Claimants asserting such Claims.

        34.     A claimant's proof of claim is entitled to the presumption of <u>prima</u> <u>facie</u>

validity under Bankruptcy Rule 3001(f) only until an objecting party refutes "'at least one of the

allegations that is essential to the claim's legal sufficiency.'" <u>In re WorldCom, Inc.</u>, 2005 WL

3832065, at *4 (Bankr. S.D.N.Y. 2005) (quoting <u>In re Allegheny Int'l, Inc.</u>, 954 F.2d 167, 174

(3d Cir. 1992)). Once such an allegation is refuted, "'the burden reverts to the claimant to prove

the validity of the claim by a preponderance of the evidence.'" <u>Id.</u>

        35.     Identified on <u>Exhibit B-1</u> hereto is the Books And Records Claim That Is

Subject To Prior Order to which the Debtors object because the Debtors have no liability in

respect thereof. Attached hereto as <u>Exhibit B-2</u> is a list of the Untimely Books And Records

Claims to which the Debtors object not only because the Debtors have no liability in respect

thereof, but also because these Claims were not timely filed pursuant to the Bar Date Order.[7]

Identified on <u>Exhibit B-3</u> hereto is the Books And Records Tax Claim That Is Subject To Prior

Order to which the Debtors object because the Debtors have no liability in respect thereof. If this

Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of

their rights to further object to the Books And Records Claim That Is Subject To Prior Order, the

Untimely Books And Records Claims, and the Books And Records Tax Claim That Is Subject

To Prior Order at a later date on any basis whatsoever.

---

[7]    The Untimely Books And Records Claims listed on <u>Exhibit B-2</u> hereto was not included as part of the Claims
Timeliness Motion.

36.    Accordingly, the Debtors (a) object to the Books And Records Claim That Is Subject To Prior Order, the Untimely Books And Records Claims, and the Books And Records Tax Claim That Is Subject To Prior Order and (b) seek entry of an order disallowing and expunging the Books And Records Claim That Is Subject To Prior Order, the Untimely Books And Records Claims, and the Books And Records Tax Claim That Is Subject To Prior Order in their entirety.

J.    Untimely Claims

37.    Although the Bar Date passed more than two years ago, various parties have continued to file Proofs of Claim in these chapter 11 cases.  During the Debtors' continuing review of the Proofs of Claim since the filing of the Debtors' most recent Claims objection, the Debtors have identified certain Proofs of Claim that were received by the Debtors after the Bar Date (the "Untimely Claims").  The Debtors object to these Untimely Claims on the basis they were not timely filed pursuant to the Bar Date Order.  The Untimely Claims are identified on Exhibit C hereto.  If this Court does not disallow and expunge these Claims in full, the Debtors expressly reserve all of their rights to further object to the Untimely Claims at a later date on any basis whatsoever.

38.    Accordingly, the Debtors (a) object to the Untimely Claims[8] and (b) seek entry of an order disallowing and expunging the Untimely Claims in their entirety.

K.    Modified Claims Asserting Reclamation And Subject To Prior Orders

39.    In addition, the Debtors have also determined that certain Claims that were modified pursuant to prior orders (the "Modified Claims Asserting Reclamation That Are Subject To Prior Orders") (a)(i) state the incorrect amount or are overstated, including as a result

---

[8]    The Untimely Claims listed on Exhibit C hereto were not included as part of the Claims Timeliness Motion.

of the assertion of invalid unliquidated claims and/or (ii) were filed and docketed against the wrong Debtor and (b) assert a reclamation demand and either (i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each, a "Reclamation Agreement"), subject to the Debtors' right to seek, at any time and notwithstanding the Claimant's agreement or consent to the amount pursuant to the Reclamation Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses") with respect to the reclamation demand are valid.

40.     Set forth on Exhibit D hereto is a list of Modified Claims Asserting Reclamation That Are Subject To Prior Orders that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against the appropriate Debtor.  For each Modified Claim Asserting Reclamation That Is Subject To Prior Orders, Exhibit D reflects the amount, classification, and Debtor asserted in the Proof of Claim in a column titled "Claim As Docketed" and the proposed modified dollar amount and classification for the Modified Claim Asserting Reclamation That Is Subject To Prior Orders, and the Debtor against which such Claim should be asserted, in a column titled "Claim As Modified."

41.     The Debtors object to the amount and/or identity of the Debtor for each Modified Claim Asserting Reclamation That Is Subject To Prior Orders listed on Exhibit D and request that each such Claim be revised to reflect the amount, classification, and identity of the Debtor listed in the "Claim As Modified" column of Exhibit D.  Thus, no Claimant listed on Exhibit D would be entitled to (a) recover for any Modified Claim Asserting Reclamation That Is Subject To Prior Orders in an amount exceeding the dollar value listed as the "Modified Total"

17

for such Claim on Exhibit D, unless the Debtors obtain an order of this Court providing that any Reserved Defense is valid and denying priority status to such Claimant's reclamation demand, or (b) assert a classification that is inconsistent with that listed in the "Claim As Modified" column, or (c) assert a Claim against a Debtor whose case number is not listed in the "Claim As Modified" column on Exhibit D, subject to the Debtors' right to further object to each such Modified Claim Asserting Reclamation That Is Subject To Prior Orders. For clarity, Exhibit D refers to the Debtor entities by case number and Exhibit E displays the formal name of three Debtor entities and their associated bankruptcy case numbers referenced in Exhibit D.

42.    Accordingly, the Debtors (a) object to the amount and/or identity of the Debtor for the Modified Claims Asserting Reclamation That Are Subject To Prior Orders and (b) seek an order modifying the Modified Claims Asserting Reclamation That Are Subject To Prior Orders to reflect the Modified Total, classification, and/or identity of the Debtor against which such Claim should be asserted, as set forth on Exhibit D.

Separate Contested Matters

43.    Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Thirty-First Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Thirty-First Omnibus Claims Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014. Pursuant to the Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Thirty-First Omnibus Claims Objection will be deemed a separate order with respect to each Claim.

## Reservation Of Rights

44.    The Debtors expressly reserve the right to amend, modify, or supplement this Thirty-First Omnibus Claims Objection and to file additional objections to the Proofs of Claim or any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Thirty-First Omnibus Claims Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

## Responses To Objections

45.    Responses to the Thirty-First Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

L.    Filing And Service Of Responses

46.    To contest an objection, responses (each, a "Response"), if any, to the Thirty-First Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

19

for the Southern District of New York, One Bowling Green, Room 632, New York, New York

10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.,

John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00**

**p.m. (prevailing Eastern time) on November 14, 2008.**

M.      Contents Of Responses

      47.    Every Response to this Thirty-First Omnibus Claims Objection must

contain at a minimum the following:

      (a)    the title of the claims objection to which the Response is directed;

      (b)    the name of the Claimant and a brief description of the basis for
the amount of the Claim;

      (c)    a concise statement setting forth the reasons why the Claim should
not be disallowed and expunged, including, but not limited to, the specific factual and legal bases
upon which the Claimant will rely in opposing the claims objection;

      (d)    unless already set forth in the Proof of Claim previously filed with
the Court, documentation sufficient to establish a prima facie right to payment; provided,
however, that the Claimant need not disclose confidential, proprietary, or otherwise protected
information in the Response; provided further, however, that the Claimant must disclose to the
Debtors all information and provide copies of all documents that the Claimant believes to be
confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in
support of its Claim, subject to appropriate confidentiality constraints;

      (e)    to the extent that the Claim is contingent or fully or partially
unliquidated, the amount that the Claimant believes would be the allowable amount of such
Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

      (f)    the address(es) to which the Debtors must return any reply to the
Response, if different from the address(es) presented in the claim.

N.      Timely Response Required

      48.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on November

21, 2008 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims

Objection Procedures Order will apply to all Responses and hearings arising from this Thirty-

First Omnibus Claims Objection.

49.     Pursuant to the Claims Objection Procedures Order, only those Responses

made in writing and timely filed and received will be considered by the Court.  If a Claimant

whose Proof of Claim is subject to the Thirty-First Omnibus Claims Objection and who is served

with the Thirty-First Omnibus Claims Objection fails to file and serve a timely Response in

compliance with the Claims Objection Procedures Order, the Debtors may present to the Court

an appropriate order seeking relief with respect to such Claim consistent with the relief sought in

the Thirty-First Omnibus Claims Objection without further notice to the Claimant, provided that,

upon entry of such an order, the Claimant will receive notice of the entry of such order as

provided in the Claims Objection Procedures Order; provided further, however, that if the

Claimant files a timely Response which does not include the required minimum information

required by the Claims Objection Procedures Order, the Debtors may seek disallowance and

expungement of the relevant Claim or Claims only in accordance with the Claims Hearing

Procedures Order.

50.     To the extent that a Claim would be subject to estimation pursuant to

section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with

the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or

partially unliquidated and (b) provides the amount that the Claimant believes would be the

21

allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), <u>pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the Bankruptcy Code for all purposes other than allowance, but including voting and establishing reserves for purposes of distribution under a reorganization plan, subject to further objection and reduction as appropriate and section 502(j) of the Bankruptcy Code</u>, by providing notice as described more fully in the Claims Objection Procedures Order.

<u>Replies To Responses</u>

51.     Replies to any Responses will be governed by the Claims Objection Procedures Order.

<u>Service Of Thirty-First Omnibus Claims Objection Order</u>

52.     Service of any order with regard to this Thirty-First Omnibus Claims Objection will be made in accordance with the Claims Objection Procedures Order.

<u>Further Information</u>

53.     Questions about this Thirty-First Omnibus Claims Objection or requests for additional information about the proposed disposition of Claims hereunder should be directed to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton). Questions regarding the amount of a Claim or the filing of a Claim should be directed to the Claims Agent at 1-888-249-2691 or www.delphidocket.com.  <u>Claimants should not contact the Clerk of the Bankruptcy Court to discuss the merits of their Claims.</u>

<u>Notice</u>

54.    Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Twelfth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered July 23, 2008 (Docket No. 13965).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

55.    Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Thirty-

First Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits <u>A</u>, <u>B-1</u>, <u>B-2</u>, <u>B-3</u>,

and <u>C</u> is attached hereto as <u>Exhibit G</u>.  A form of the Notice Of Objection To Claim to be sent to

the Claimants listed on <u>Exhibit D</u> is attached hereto as <u>Exhibit H</u>.  Claimants will receive a copy

of this Thirty-First Omnibus Claims Objection without <u>Exhibits A</u> through <u>H</u> hereto.  Claimants

will nonetheless be able to review <u>Exhibits A</u> through <u>H</u> hereto free of charge by accessing the

Debtors' Legal Information Website (<u>www.delphidocket.com</u>).  In light of the nature of the relief

requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          October 17, 2008

                                SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM LLP

                                By:   /s/ John Wm. Butler, Jr.
                                      John Wm. Butler, Jr.
                                      John K. Lyons
                                      Ron E. Meisler
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606

                                      - and -

                                By:   /s/ Kayalyn A. Marafioti
                                      Kayalyn A. Marafioti
                                      Thomas J. Matz
                                Four Times Square
                                New York, New York 10036

                                Attorneys for Delphi Corporation, et al.,
                                    Debtors and Debtors-in-Possession