UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

DELPHI CORPORATION,

       Debtor.

- - - - - - - - - - - - - - - - - - - - - -x

        United States Bankruptcy Court

        One Bowling Green

        New York, New York

        October 23, 2008

        10:03 AM

B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

2

     HEARING re Motion to Permit Statutory Committee Members to
     Participate In Emergence Funding Structure.

     HEARING re Proposed Thirty-Sixth Omnibus Hearing Agenda.

     Transcribed by:  Pnina Eilberg

```
                                                              3
 1
 2    A P P E A R A N C E S :
 3    SKADDEN ARPS SLATE MEAGHER & FLOM LLP
 4         Attorneys for Delphi Corporation, Et Al
 5         333 West Wacker Drive
 6         Chicago, IL 60606
 7
 8    BY:   JOHN WM. BUTLER, JR., ESQ.
 9
10    SKADDEN, APRS, SLATE MEAGHER & FLOM LLP
11         Attorneys for Delphi Corporation, Et Al
12         Four Times Square
13         New York, NY 10036
14
15    BY:   KAYALYN A. MARAFIOTI, ESQ.
16
17    WACHTELL, LIPTON, ROSEN & KATZ
18         Attorneys for Capital Research & Management
19         51 West 52nd Street
20         New York, NY 10019
21
22    BY:   RICHARD G. MASON, ESQ.
23
24
25
```

1
2   LATHAM & WATKINS LLP
3        Attorneys for Creditors' Committee
4        885 Third Avenue
5        New York, NY 10022
6
7   BY:   MICHAEL RIELA, ESQ.
8
9   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
10       Attorneys for Official Committee
11       of Equity Security Holders
12       One New York Plaza
13       New York, NY 10004
14
15  BY:   JENNIFER L. RODBURG, ESQ.
16
17  WARNERSTEVENS L.L.P.
18       Attorneys for Official Committee of Unsecured Creditors
19       301 Commerce Street
20       Suite 1700
21       Fort Worth, TX 76102
22
23  BY:   JEFFREY A. RESLER, ESQ.
24       (TELEPHONICALLY)
25

5

1       P R O C E E D I N G S

2          THE COURT:  Delphi Corporation.

3          MR. BUTLER:  Your Honor, good morning.  Jack Butler

4   and Kayalyn Marafioti here on behalf of Delphi Corporation for

5   its thirty-sixth omnibus hearing.  We've filed an agenda.  It's

6   a light agenda this morning; it's uncontested.  There are,

7   however, a few things we need to place on the record and make

8   sure the Court is aware of as we consider these matters.

9          THE COURT:  Okay.

10         MR. BUTLER, JR.:  Your Honor, the first matter on the

11  agenda, agenda item 1 is the debtor's plan modification

12  approval motion and that was at docket 14310.  We filed a

13  notice last week, at docket 14351, to adjourn this matter to 11

14  a.m. on November 5th as the debtors continue to negotiate with

15  stakeholders regarding the proposed modifications and also

16  continue to work with stakeholders and third parties regarding

17  emergence funding capital structure.

18         The objection deadline as to all what I would call

19  the course day quarters has passed.  There have been two

20  objections filed by equity security holders and one filed by a

21  claims trader and there have been extensions granted to next

22  week for the what I'll call principal stakeholders, the ad hoc

23  committees, the statutory committees, and so forth, and the

24  indentured trustee it will continue to negotiate with.

25         THE COURT:  Okay.  All right.  Very well.

1       MR. BUTLER:  Your Honor, matter number 2 on the
2  agenda is the debtors' emergence funding participation motion
3  at docket 14311.  This is uncontested.
4       Pursuant to this motion, the debtors are asking the
5  Court to enter an order that permits the members of the
6  statutory committees to participate in the emergence funding
7  structure proposed by the debtors and the plan modifications
8  that were filed previously with the Court on October 3rd.
9       Your Honor, we brought this motion for two reasons,
10 one in light of the plan modifications and the changed proposed
11 emergence capital structure; we're no longer relying as
12 extensively on it as we were before on what was then a 6.1
13 billion dollar syndicated facility.  But instead, a capital
14 structure that includes a rights offering and first and
15 secondly in financing, some of which we do not expect to be
16 syndicated.  We think it's extremely important that we have the
17 opportunity to involve those members of our statutory
18 committees who may have an interest in participating in those
19 events and still have safeguards that would protect the
20 statutory committee process and we've outlined those which we
21 believe are consistent with this particular set of
22 circumstances.
23      Just to recap them briefly, if Your Honor were to
24 approve this motion there are specific conditions the statutory
25 committee members would have to observe in order to participate

05-44481-rdd   Doc 14385   Filed 10/31/08   Entered 10/31/08 12:38:59   Main Document
Pg 7 of 20

7

1   in this capital structure.  First, prior to any participation
2   they would have to make written disclosure of their potential
3   participation to the debtors, counsel to each of the statutory
4   committees and to the United States Trustee.
5           Just a note about the United States Trustee.  By this
6   motion, we've made very clear in the motion and papers that the
7   debtors do not seek any limitation on the U.S. Trustee's
8   authority to fulfill her statutory responsibilities as she sees
9   fit with oversight of these matters.
10          Second, Your Honor, the debtors propose that any
11  statutory committee member would be prohibited from discussing
12  or sharing any information with his or her institution or any
13  lender or other party involved in the emergence funding
14  structure discussions relating to the debtors or the statutory
15  committee's strategies regarding emergence funding structure
16  other than has already publicly been disclosed by the debtors.
17  Obviously, there's a fair amount that's now out in the
18  marketplace, but there would be that specific restriction.
19          And third, that we also make clear that nothing in
20  the order, if Your Honor was willing to grant this order, would
21  relieve any member of the statutory committees of their
22  obligations in our applicable securities laws, whatever those
23  obligations may be.
24          Your Honor, we think this is extremely important.  We
25  expect that the rights offering -- as our plan modification

VERITEXT REPORTING COMPANY
212-267-6868                                    516-608-2400

8

1   motion indicates, we expect that the rights offering and indeed
2   other elements of the emergence capital structure will involve
3   the participation of existing creditors of Delphi Corporation
4   and other stakeholders.  And, therefore, we believe it's
5   appropriate to get the relief that we've outlined in this
6   motion.
7              THE COURT:  Okay.  Does anyone have anything to say
8   on the motion?
9              MR. MASON:  Yes, Your Honor.  Richard Mason, Wachtel,
10  Lipton, Rosen & Katz for Capital Research and Management
11  Company, the chair of the creditors' committee.
12             Your Honor, I think, as has been mentioned at prior
13  hearings, Capital has extensive debt and equity holdings in the
14  auto industry in general and, frankly, all across America.  I
15  think Mr. Butler once jokingly referred to Capital as owning
16  ten percent of the United States.  That's probably now
17  something that can be attributed to the U.S. Treasury.  So I
18  think we've been supplanted there.  But in light of its
19  extensive debt and equity holdings in related companies, Your
20  Honor might recall that at the very beginning of this case
21  Capital decided to silo its representative on the creditors
22  committee, the chair of the creditors' committee, Mr. David
23  Daigle, that's D-A-I-G-L-E, and so Mr. Daigle filed an
24  acknowledgement with the Court and delivered it to the United
25  States Trustee that essentially said that he is the person

1    working on Delphi and he won't communicate with other folks in
2    his institution about Delphi.  And Mr. Daigle tells me, of
3    course, that he's adhered to that acknowledgment.
4         The issue that we have, Your Honor, is that if
5    Capital is -- if Your Honor grants the motion and Capital is to
6    consider a proposed new debt or equity investment or
7    backstopping the rights offering, whatever the structure
8    ultimately ends up being, Mr. Daigle can't make that decision
9    by himself.  So what I'd like to do, with Your Honor's
10   permission, is, frankly, to modify his acknowledgment on the
11   record to say that if Your Honor grants the motion he will be
12   communicating about the potential emergence funding with other
13   members of his institution.
14        We've worked carefully, Mr. Daigle and I, with
15   internal counsel at Capital.  And what I can tell Your Honor is
16   that those communications will be done pursuant to a monitored
17   and controlled procedure established by internal counsel at
18   Capital.  I believe that Mr. Daigle will be participating in
19   conference calls, of a set number, with different folks in
20   different divisions of Capital to talk to them about the
21   potential structure.  And then there may be follow-up
22   conversations with the participation of internal counsel in an
23   appropriate way.
24        All of this with Mr. Daigle and his institution
25   having in mind their responsibilities under the securities

1    laws.  So I wanted to make clear that we're modifying that

2    acknowledgement.  And I also wanted to say that if Your Honor

3    granted the motion, because of the requirement that Mr. Daigle

4    be an advocate, if you will, and a participant and a

5    negotiator, if it comes to pass that his institution

6    participates in the funding, on behalf of his institution I

7    believe that he may very well be one of the folks, perhaps the

8    only person on behalf of Capital, negotiating with the debtor

9    on the new money investment.

10              I think that was not the case with respect to the

11   last motion of a similar nature that Your Honor considered.

12   But with this change in circumstance, I don't see any other way

13   for Capital to -- if it decides to participate in the funding,

14   for Mr. Daigle to stand on the sidelines and let someone else

15   negotiate in its entirety.  It could happen, but I think it's

16   unlikely.  And we're mindful of Mr. Butler's statement on the

17   record and in the provision of the order that says that

18   Mr. Daigle, as a committee member, will obviously not be

19   sharing the debtors' strategy or the committee's strategy with

20   respect to others in his institution.  And, frankly, I don't

21   think he'll even know about it because it's our intent that if

22   the committee is going to talk about strategy with respect to

23   negotiating with outside investors on emergence funding, we

24   won't be part of those conversations.

25              THE COURT:  That last point went to my question which

11

1  is, obviously, the proposed order, for good reason, would

2  prohibit any disclosure of that type of information by a

3  committee member.  If that strategy, to the extent it's not

4  public, has not yet been shared with the committee, and more

5  specifically with Cap Re or Mr. Daigle, I understand your

6  point.

7           If it has already been shared with them and it's not

8  public, I think he would have a problem in negotiating.  That's

9  really up to him; I don't know what the answer is on that.  But

10 he's going to have to assess that, and I obviously can't give

11 him a free pass.

12          MR. MASON:  Understood, Your Honor.

13          THE COURT:  But it would seem to me that if

14 appropriate screening procedures are in place on the committee,

15 i.e., he would leave the room -- he and his representatives

16 would leave the room when that type of strategy was discussed,

17 and obviously he wouldn't have a vote on committee support of

18 any particular deal that he'd be involved in, then it seems to

19 me that those normal screening procedures where a committee

20 member has a particular interest in the matter that the

21 committee's deliberating on would be sufficient.

22          MR. BUTLER:  Your Honor, just a word on this.  The

23 debtors were comfortable with these disclosures that Mr. Mason

24 is making on the record and this approach for a number of

25 reasons.  One, we believe that Latham and the retained

12

1  financial advisors for the committee, on the one hand on
2  official committee business, and Mr. Mason and Wachtel
3  representing Cap Re on their own pecuniary interest, not only
4  have -- because we've all talked about this -- have these
5  issues and sensitivities clearly in mind.  But the reality is
6  we have seen this function over the last number of months and
7  believe that it will certainly be in the estate's interest for
8  Your Honor to grant the relief that the debtor is requesting
9  here and to permit the acknowledgments that Mr. Mason has
10 proposed to be made and to go forward controlling the
11 relationship of Cap Re in these cases.
12          The debtors believe that the realities of the
13 circumstance and the realities of the current capital markets,
14 as we face them, suggest that the major parties that have
15 believed it's appropriate to make investments in Delphi are
16 likely to be a source of continued financial support to Delphi
17 and it would not be in Delphi's interest, or in the interest of
18 any stakeholder of Delphi, frankly, to place any arbitrary
19 impediments to completing those discussions other than
20 appropriate prophylactic mechanisms that Your Honor has
21 previewed and has composed to make sure that the actual system
22 operates appropriately.
23          THE COURT:  Okay.  And just for the record, as I read
24 it, the only significant difference between this order and the
25 order that's in place is that this order would, unlike the

1   prior order, permit committee members to speak directly with
2   the debtor.  To negotiate directly.  And that's really not the
3   function of screening issues so much as -- or become lax on
4   screening issues, because it isn't; those issues are still
5   there.  But rather to recognize the difference between the
6   current structure which may not involve a lead investor or a
7   syndicate which the debtors would be dealing with directly.
8   But the possibility that there'll be individual loans and
9   individual investments and negotiations.
10              MR. BUTLER:  Yes, Your Honor.  And it also takes into
11  account the completion and implementation of the GSA and MRA
12  with General Motors and that piece of the case being behind us.
13              THE COURT:  Right.  Okay.  Anyone else?  All right.
14  Based on my review of the motion and the statements on the
15  record, I'll approve this motion.  The motion is careful to
16  state, as is the order, that the relief that the debtors seek
17  here does not give anyone a free pass under the securities laws
18  or a free pass with regard to the U.S. Trustee's oversight of
19  the proper functioning of a creditors' committee.
20              On the other hand, I am comfortable, based upon the
21  terms of the order, that the potential for a conflict of
22  interest on behalf of or experienced by a committee member is
23  appropriately dealt with by the protective provisions of this
24  order.  And further that the acknowledgment or statement by Cap
25  Re's counsel on the record with regard to Cap Re's intention,

1  how they would perform under this order, does not raise, in my

2  mind, an improper conflict or a disabling conflict if, in fact,

3  the order's complied with and the procedures discussed on the

4  record are complied with.  So I believe the order's

5  appropriate, and I'll enter it.

6           MR. BUTLER:  Your Honor, the last matter on this

7  morning's agenda is agenda item matter 3.  It's the second

8  Section 1121(d) statutory committee exclusivity extension

9  motion, filed at docket 14312.  There are no objections to this

10 matter.  In fact, both committees have indicated they do not

11 object to the relief being granted which, if Your Honor grants

12 it, would extend as to the committees only -- the extension of

13 exclusivity through January 31 of 2009 in terms of filing a

14 plan and March 31, 2009 for the solicitation of acceptances to

15 the plan.

16          The equity committee did file, at docket 14337, a

17 statement which previews that committee's views on the

18 substance of the proposed modified plan but which confirms the

19 equity committee has no objection to the relief sought by the

20 motions before the Court this morning

21          Just a word, Your Honor, since what's transpired

22 since July 31st of this year when we were last before you on

23 this subject matter.  In addition to operating the company's

24 businesses and achieving various of the accomplishments that

25 were set forth in the pleadings, there are three or four

1  significant things that have occurred.  First, the debtor has
2  completed the reaffirmation process for their 2008 to 2011 RPR
3  or reaffirmed the business plan, that has been filed publicly
4  beginning of September and again, in a more formal way, on
5  October 3rd.
6          Second, the debtors reached agreement with General
7  Motors and implemented the amended GSA and the amended MRA.
8  And the first of the two transfers of the U.S. hourly pension
9  liabilities to the GM hourly pension plan has become effective.
10         Third, the debtors have obtained authority to freeze
11 their existing hourly and salaried pension plans and to
12 provide, where applicable, replacement cash balance for defined
13 contribution benefit plans and other programs.
14         And, finally, the debtors were able to promulgate and
15 file a plan modification approval motion to implement --
16 propose implementing certain modifications to the confirmed
17 plan that should enable Delphi to emerge from Chapter 11 as
18 soon as reasonably practicable.
19         Now, we filed that motion on October 3rd only to
20 experience, since October 6th when the markets opened, the
21 unprecedented capital market situation that we have all
22 experienced, both professionally and personally, over the
23 course of the month of October.  And the debtors have continued
24 to evaluate their circumstances in connection with that plan.
25 We have met, as recently as Tuesday, with our statutory

16

1  committees.  We've been meeting with other stakeholders and
2  moving forward in our discussions regarding our emergence
3  capital structure and business plans consistent with what we
4  believe to be a reasonable and rational assessment of the
5  company's circumstances in light of the capital markets and the
6  pressures in the auto sector globally.
7           That was one of the reasons, Your Honor, that we
8  obviously asked and received permission to adjourn the plan
9  modification hearing to November 5th, to allow those
10 discussions to continue and the relief Your Honor's granted
11 today will facilitate those discussions.  I think there has
12 been an extraordinary amount accomplished here in the few
13 months since we were last before Your Honor on this subject
14 matter.  And I think the complexity of the current
15 circumstances is self-evident to everyone and therefore, I
16 believe, the debtors have met the necessary burdens, legal
17 burdens, under the statute and case law for Your Honor to grant
18 the relief that we're requesting.
19          I did want to point out, just on the record, one bit
20 of errata.  In paragraph 35 of the motion there were some
21 references made to the claims administration process.  And I
22 simply want to correct a couple of the numbers there, they're
23 not really material changes but I'd like to have the record be
24 correct.  And that is just to say that the proper statement in
25 that paragraph should have been that the debtors have objected

1   to approximately 13,400 claims, asserting a total of

2   approximately 10.1 billion.  Notwithstanding that errata, the

3   point remains that the debtors have made significant process in

4   this aspect of the reorganization.  And, in fact, but for some

5   3, 4, 500 claims, depending upon how you count the stipulations

6   we're working on, the claims process is substantially completed

7   in this case.

8           THE COURT:  I'm obviously very familiar with that

9   process and your colleagues -- growing out of the procedures

10  that they proposed, have really done a pretty amazing job.

11          MR. BUTLER:  So, Your Honor, that's the debtors'

12  comments on the motion.  We'd ask Your Honor to grant the

13  relief requested.

14          THE COURT:  Okay.  Does anyone have anything to say

15  on this motion?  Obviously the motion and I'm sure the -- in

16  private at least, the position of the two committees is clear

17  that the premise of the motion is to leave for another day what

18  hopefully are academic arguments in this area about the effect

19  of the exclusive period after a plan is confirmed.

20          But clearly the goal is appropriate, which is to,

21  under these circumstances, preserve rights that may exist while

22  everyone's working together to try to facilitate the debtors'

23  emergence from Chapter 11.

24          So in light of that, I'll approve the motion and

25  enter the order.  And obviously I wish you all luck on

1  concluding your negotiations and achieving some success in the
2  exit financing process.
3          To me, although I'm just a humble judge, it would
4  seem that major lenders could not send a better signal to the
5  market than to free up capital for a company like this.  But
6  I'm just a humble judge, so I don't know.  But it would seem
7  that that would be the case.
8          MR. BUTLER:  Thank you, Your Honor.  Appreciate it.
9  And that concludes the October agenda.
10         THE COURT:  Okay.  Thank you.
11    (Proceedings Concluded at 10:25 AM)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

19

```
 1
 2                          I N D E X
 3
 4                          RULINGS
 5                       Page     Line
 6   Motion to Permit     13       15
 7   Statutory Committee
 8   Members to Participate
 9   In Emergence Funding
10   Structure, Granted
11   Motion for Statutory 17       24
12   Committee Exclusivity
13   Extension, Granted
14
15
16
17
18
19
20
21
22
23
24
25
```

20

C E R T I F I C A T I O N

I, Pnina Eilberg, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

Pnina Eilberg


Veritext LLC

200 Old Country Road

Suite 580

Mineola, NY 11501


Date:   October 27, 2008