1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


DELPHI CORPORATION,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            One Bowling Green

            New York, New York


            October 24, 2008

            2:02 p.m.


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

1   DEBTORS' Objection to Bradford Industries, Inc. Motion for

2   Leave to File Late Claims

3

4   PROPOSED Twenty-Seventh Claims Hearing

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24   Transcribed By:  Esther Accardi

25

3

1    A P P E A R A N C E S :

2    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

3         Attorneys for Debtors

4         333 West Wacker Drive

5         Chicago, Illinois 60606

6

7    BY:   JOHN K. LYONS, ESQ.

8

9

10   SEYFARTH SHAW LLP

11        Attorneys for Bradford Industries

12        620 Eighth Avenue

13        New York, New York 10018

14

15   BY:   ROBERT W. DREMLUK, ESQ.

16

17

18   FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

19        Attorneys for Equity Committee

20        One New York Plaza

21        New York, New York 10004

22

23   BY:   RICHARD J. SLIVINSKI, ESQ.

24

25

4

```
1                         P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay.  Good afternoon.

3    Delphi Corporation.

4              MR. LYONS:  Good morning, Your Honor.  John Lyons on

5    behalf of the debtors.

6              Your Honor, there's only one matter on the agenda.

7    There had been a second matter, that of Pioneer Speakers.  That

8    matter has been adjourned.  The parties have reached an

9    agreement in principle and are currently just documenting the

10   settlement.

11             THE COURT:  Okay.

12             MR. LYONS:  So, Your Honor, the motion is the motion

13   of Bradford Industries.  So I will yield the podium to counsel

14   for Bradford Industries.

15             THE COURT:  Okay.

16             MR. DREMLUK:  Good afternoon, Your Honor.

17             THE COURT:  Good afternoon.

18             MR. DREMLUK:  Robert Dremluk, Seyfarth Shaw, on

19   behalf of Bradford Industries.

20             Your Honor, it's my understanding that counsel for

21   Delphi provided the Court with a binder.

22             THE COURT:  Is this an agreed exhibit book?

23             MR. DREMLUK:  Yes, it is.

24             THE COURT:  Okay.  Yes, I have that in front of me.

25             MR. DREMLUK:  And I'd like to direct your attention,
```

5

1    if I may, to Exhibit 16 which consists of two double-sided

2    pages.  And what I'd like to do is direct your specific

3    attention to the last page of that document.

4            Your Honor, this is a document that was produced by

5    Delphi with respect to the Bradford account.  This particular

6    document has a dating at the bottom of February 19, 2007.  So

7    that gives us at least a time frame as to when this document

8    may have been produced.

9            I'd also like to, if I may, Your Honor, hand up and

10   provide Delphi counsel with a chart that I have prepared which

11   will be helpful in understanding chronology of what had

12   transpired here.  And which will relate those events to the

13   various exhibits that have been put in the binder.  If I may?

14           THE COURT:  Okay.

15           MR. DREMLUK:  Your Honor, this is a motion to file a

16   late claim on behalf of Bradford Industries.  However, what's

17   significant here is that based on Delphi's own records, they

18   don't dispute our claim at all.  In fact, a meeting of the

19   minds was reached as to the amount of the claim sometime, based

20   on our records, in January of 2007.

21           So I want to walk the Court through, if I may, the

22   chronological events and what was going on between Delphi and

23   Bradford during this period, following the filing of the Delphi

24   bankruptcy cases.

25           In June of 2006, there are some communications, both

6

1    in e-mail and fax, with respect to providing Delphi with

2    various information regarding goods that had been sold.  The

3    information was in the nature of bills of lading, packing lists

4    and proofs of delivery, which is typical in terms of

5    establishing these kinds of claims.  So as we see it in the

6    chart, there are some e-mails and then two faxes that occurred

7    in June of 2006.

8         In late June 2006, there's a communication from

9    Delphi that the person who is handling this claim on behalf of

10   Delphi is going to be changing her position at Delphi, and

11   there may be some other people that will be involved in

12   handling the Bradford matter.  Within about two weeks after

13   that, there's an e-mail to Delphi again seeking to resolve open

14   issues and reiterating that there were proofs of delivery that

15   had been previously faxed to Delphi evidencing the claim.

16        At all times while this is going on, Bradford is

17   resolving this matter without counsel.  It is Bradford, based

18   on its business relationship with Delphi, in the ordinary

19   course of its relationship with Delphi, seeking to resolve this

20   matter.

21        THE COURT:  How do I know that?

22        MR. DREMLUK:  Because the communications that you

23   have indicate that there are -- there are no lawyers involved.

24   The communications that are going on are between the two

25   businesspeople.

7

1          THE COURT:  But I don't know whether the

2    businesspeople were talking to a lawyer.

3          MR. DREMLUK:  Well, we were retained as counsel until

4    after the bar date, Your Honor, so were not involved.

5          THE COURT:  I'm assuming Bradford has an in-house

6    lawyer, though, right?

7          MR. DREMLUK:  I don't think that they do.  In any

8    event, what was going on here, Judge --

9          THE COURT:  I don't see how I can infer anything on

10   that point.  I read the e-mails.

11         MR. DREMLUK:  Okay.

12         THE COURT:  The e-mails seem to be between

13   businesspeople, I agree with that.

14         MR. DREMLUK:  It's our position, Your Honor, that

15   this was a matter that was being negotiated at the business

16   level, between businesspeople.  And it was based on a

17   continuing business relationship that exists today.  So it's

18   not as though this was a situation where the parties had

19   stopped doing business with each other and didn't need to

20   communicate.  This was a good faith attempt to resolve an open

21   issue concerning claims.

22         On July 31 the bar date occurs.  In December of that

23   year, the communication picks up again.  There's a

24   communication from Delphi about some pre-petition receipts and

25   so forth.  In January, there's an e-mail from Delphi about some

8

1    postings to the Bradford account.  And on or around January 15,

2    there is a spreadsheet that is sent that establishes what the

3    pre-petition balance is.  And that spreadsheet is this document

4    prepared by Delphi indicating not only the amount that's owed,

5    but in the category under status there is a notation, and it

6    says repeatedly "ready to pay".

7            THE COURT:  Well, are these pre-petition debts?

8            MR. DREMLUK:  Yes.

9            THE COURT:  So it's obviously not ready to pay.

10           MR. DREMLUK:  Well, the indication, Your Honor, is

11   that Delphi is -- has acknowledged its obligation to pay.  And

12   at least I would interpret the terminology "ready to pay" to

13   mean that.

14           THE COURT:  There's something I'm not quite clear

15   about in the facts here.  One aspect of this motion is -- let's

16   see how it's phrased.  "Bradford Industries also requests that

17   this Court find that its notice of cure amount is conforming."

18   So was this debt debt that was incurred under an executory

19   contract?

20           MR. DREMLUK:  Yes.

21           THE COURT:  And has the executory contract been

22   assumed?

23           MR. DREMLUK:  Yes.

24           THE COURT:  Okay.  I mean, do the debtors agree with

25   that?

9

```
 1          MR. LYONS:  Your Honor, I don't know if this

 2    exeuctory contract was assumed.  If this was to be assumed

 3    under the plan then, obviously, we have not consummated and

 4    gone effective on the plan, so no contracts under the plan have

 5    been assumed.

 6          THE COURT:  Okay.

 7          MR. DREMLUK:  Then it's intended to be assumed, Your

 8    Honor.  The process of establishing the cure amount was a

 9    predicate in order to get to that point.

10          THE COURT:  Well, let me cut through all of this.

11          MR. DREMLUK:  Okay.

12          THE COURT:  I don't see a basis, given that fact that

13    it was an executory contract, for relief from the bar date if

14    it's not assumed.  I just don't see the fact that the parties

15    were negotiating over the amount owing before the date of the

16    bar date and continued to work on the amount owing after the

17    date of the bar date as being a good fact for your client.  In

18    fact, under the Second Circuit's Midlantic decision, it's a

19    very bad fact because that suggests -- since that's the only

20    reason I think it's offered that it's not even neglect, it's a

21    choice not to file a claim because the parties are negotiating.

22          On the other hand, if the contract is going to be

23    assumed, the parties -- you know, if it's an executory

24    contract, there's a perfectly good explanation as to why the

25    parties would still be focusing on the outstanding amount.  And
```

1    you may well have a very good basis for moving under Rule 60

2    from relief from the order on your cure being defective.  But

3    your client hasn't done that yet.  This isn't a Rule 60 motion.

4    But it just seems to me that because it's an executory contract

5    I don't see why, if it's going to be assumed, it still wouldn't

6    be cured.  Parties still wouldn't be talking about what the

7    cure amount would be post bar date.  And it does appear to me

8    that the order striking the -- I'm sorry, granting the

9    company's cure amount was entered, but there may be a basis

10   under Rule 60 in connection with getting relief from that

11   order.  I don't know.  But that's how I'm looking at this.

12          MR. DREMLUK:  I don't disagree with some of the

13   things you said, Your Honor.  But I'd like to make just a few

14   more points, if I may.

15          THE COURT:  Okay.

16          MR. DREMLUK:  What happened here is that in or about

17   January 2007, the parties finally resolved whatever issues they

18   had concerning their pre-petition obligations.  Proof of claim

19   was filed --

20          THE COURT:  But let me just stop you on that.  I

21   don't see how I can infer from this attachment to the proof of

22   claim that the parties resolved whatever issues they had about

23   the pre-petition claim.  They may have resolved what it would

24   take to cure the claim in connection with an assumption motion,

25   but the fact that they agreed about the amount doesn't

11

1   necessarily mean it would be an allowed pre-petition claim

2   months after the bar date had passed.  But I don't indicate any

3   sort of waiver of the bar date in connection with this, for

4   example.

5           MR. DREMLUK:  I think what it does show, Your Honor,

6   is that in January of 2007, there was an agreement reached as

7   to certain obligations that were owed.  A proof of claim was

8   filed by Bradford which is consistent with this understanding;

9   it was filed in March of 2007.

10          What happened after that is a little bit confusing

11  because in light of this information, a cure notice was sent

12  out listing the Bradford amount as zero.  And it strikes me as

13  a little bit unusual that given that Delphi had produced a

14  document indicating that it owed Bradford $60,000 that it would

15  list Bradford as having a cure amount of zero.

16          I think what the Court is saying, though, is that

17  based on those facts, maybe the procedure that we should be

18  following is a motion under Rule 60.

19          THE COURT:  I mean, another way to put it is I don't

20  see a basis for getting relief from the bar date in connection

21  with an unsecured pre-petition claim.  But you may have a right

22  under Rule 60 in connection with the cure issues.  I don't

23  know.  I mean, it's not before me.  But it just seems to me

24  that there's two different things going on here.  And that sort

25  of permeates why I don't think that you can say there's an

12

1   account stated or that there's -- you know, that Delphi's

2   somehow estopped generally because of this.  Because there are

3   two very different calculations for a debtor, one is where you

4   reject a contract or let it expire and the other is where you

5   assume one.  And it may be that they were doing this work.  I

6   mean, I just have to infer that they were doing this work

7   because they were still considering that the contract might be

8   assumed.  But as far as what's offered up as a basis for relief

9   from the bar date order, I'm not -- I mean, under the Second

10  Circuit law, I don't think it even constitutes neglect before

11  you get to the excuse.  Because I don't see -- it doesn't seem

12  to me to be inadvertent.  It just seems to be a conscious

13  decision that we were in these negotiations and we decided not

14  to file the claim.

15              MR. DREMLUK:  Can I talk about Pioneer for a moment?

16              THE COURT:  Okay.  But I'm guided by the Second

17  Circuit's Enron case.

18              MR. DREMLUK:  Okay.

19              THE COURT:  And it seems to me to be on all fours

20  here on the pre-petition claim part of it.

21              MR. DREMLUK:  Well, there are four or more points in

22  Pioneer that I think the Court spoke to about late claims.  But

23  I think a few of them do apply here.  And one is whether

24  there's any damage or prejudice to the debtor.  And I would

25  argue that there isn't because the debtors acknowledge this

13

1    indebtedness already.  So that it's not prejudicing the estate

2    to acknowledge that it owes the money already.

3           The length of delay or potential impact on judicial

4    proceedings.  This case has been going on for a while.  It

5    probably will go on for an additional period of time.  So I

6    don't think that this particular situation is going to have a

7    prejudicial impact.

8           The reason for delay.  It probably has to do with a

9    supplier's good faith belief that he could work out his

10   arrangements with Delphi without having to get into legal

11   issues.  If that's a bad thing, then that's it.  I mean, he may

12   have prejudiced himself by trying to negotiate something in

13   good faith.  If that's the message, then I guess we'll have to

14   live with that.

15          And whether the movant acted in good faith, I can't

16   think of a better example of a creditor who seeks to negotiate

17   to work out a consensual agreement with the company without

18   getting involved in legal issues or bringing in lawyers to

19   resolve it.  And my view, for what its worth, is that this is

20   the kind of thing that we should be encouraging and not

21   discouraging parties to do.

22          Now, having said that, there are some equitable

23   considerations here I think that may apply.  But I think that

24   the overriding equity here is that this particular claimant,

25   who has an ongoing relationship with this debtor, has acted

14

1    according to what it felt was its business interest in an

2    appropriate manner.  And at the end of the day, did resolve its

3    claim with Delphi.

4            THE COURT:  When does the contract expire?

5            MR. DREMLUK:  I don't have that detail, Your Honor.

6            MR. LYONS:  Here, Your Honor, let me check.

7            MR. DREMLUK:  It's not in the exhibit binder.

8        (Pause)

9            THE COURT:  Do we even know whether it's like a long-

10   term contract or a short-term contact?

11           MR. LYONS:  Your Honor, I think the only paper that

12   would help us would possibly be the exhibit attached to the

13   proof of claim form.  Which may have -- no, it does not have

14   the term on here.

15           THE COURT:  Okay.

16           MR. DREMLUK:  It's just when the debt was incurred.

17   I don't want to speculate, Your Honor, but what I understand,

18   however, is that there is an ongoing relationship and that

19   Bradford has been asked to continue to produce and supply goods

20   to Delphi.

21           THE COURT:  Okay.

22           MR. DREMLUK:  Thank you.

23           MR. LYONS:  Your Honor, I'll be very brief.  I mean,

24   the factors all in Pioneer, Your Honor, I just do not believe

25   that Bradford Industries has met those factors.  Primarily, the

15

1    most important factor, reasonable control of the claimant.  The

2    record is uncontroverted, they have the notice of the bar date.

3    The bar date was clear and unequivocal.  And, Your Honor, if

4    they did not file a proof of claim by the bar date, and we've

5    seen a number of claimants who have filed motions for leave to

6    file late claims, you know, again, the notice was very clear.

7    It's critical for this debtor -- even now, I know we're now in

8    the second phase of a modification to a plan, Your Honor, but

9    it is no less important today to make sure that the bar date is

10   enforced and is going to limit the general unsecured claims in

11   order for Delphi to enhance its chances at a successful

12   reorganization.

13        So for the main factors in Pioneer, including the

14   reason for delay and also the prejudice, Your Honor, I think

15   those factors clearly weigh in favor of denial of this motion.

16        As to the cure issue Your Honor identified, the

17   motion to strike the cure notice was granted.  That motion was

18   served on both counsel and also Bradford Industries directly,

19   the same address in the proof of claim form.  So in the event

20   that our 60(b) motion is filed, we will certainly reserve all

21   of our rights to contest that motion on the basis that the

22   order should be given res judicata effect.

23        THE COURT:  Right.  And I'm not suggesting otherwise,

24   I'm just suggesting that -- what I was doing was I was pointing

25   out the two different issues that the debtor faces with a claim

16

1    like this.  There's the issue in connection with a contract

2    that expires or -- in light of the particular order that's

3    rejected on the one hand and on the other the issue of an

4    executory contract that's assumed where you have to cure

5    defaults.  As I view it, there are really two different

6    considerations there.  But, obviously, there was an order

7    entered granting Delphi's motion fixing the cure claim.  And

8    that's obviously wearing the 365 hat, instead of the 502 hat.

9         MR. LYONS:  Your Honor, I have nothing further on

10   this particular matter, although I would like to hand up some

11   of our updated charts on the claims.

12        THE COURT:  Okay.  Why don't I deal with this matter

13   first.  Is there anything else?

14        MR. DREMLUK:  Not at this time, Your Honor.

15        THE COURT:  Okay.

16        MR. DREMLUK:  There were some things that were just

17   discussed that I think would be more appropriately addressed in

18   a Rule 60(b) motion which I'll deal with in that context.

19        THE COURT:  All right.  I have before me a motion by

20   Bradford Industries, Inc. under Bankruptcy Rule 9006(b)(1) for

21   an order deeming its proof of claim against Delphi Corporation,

22   claim number 16564, timely filed on the basis as set forth in

23   that rule of excusable neglect.

24        Alternatively, Bradford requests the Court to find

25   that its notice of cure amount, which it attaches as Exhibit A

17

1    to the motion, be deemed conforming.

2            Requested relief really does, I believe, conceptually

3    fall into two different -- or very different, actually,

4    categories, highlighted by the different rights of a debtor-in-

5    possession with regard to executory contracts.  The record is

6    not particularly clear whether the contract that gave rise to

7    the claim asserted by Bradford is still executory or, to the

8    contrary, has expired by its terms or if it is still executory;

9    whether it is still a contract that Delphi intends to assume.

10           Under Section 365 of the Bankruptcy Code, a debtor-

11   in-possession has the option to assume or to reject executory

12   contracts.  And the treatment of the claim -- of the nondebtor

13   party to the executory contract differs strikingly depending on

14   whether the contract's assumed or rejected.  If the contract is

15   rejected under 502(g) the breach claim, as well as the pre-

16   petition accrued claim, is a pre-petition claim.  If the

17   contract is assumed, it will only be assumed if the debtor

18   cures or provides adequate assurance or prompt cure of any pre-

19   petition defaults or the nondebtor party agrees to a different

20   treatment.

21           In the one case, the pre-petition claim gets paid

22   with tiny bankruptcy dollars.  In the other case, the pre-

23   petition claim becomes, in effect, a hundred cent claim, if the

24   contract's actually assumed.

25           The bar date order, which his attached as Exhibit 8

18

1    in the agreed exhibit binder, does not exempt parties to

2    executory contracts from their requirement of filing a proof of

3    claim in a timely manner.  And provides that if such a proof of

4    claim is not filed in a timely manner then under paragraph 11,

5    such person or entity shall be forever barred from asserting

6    any claim against the debtors other than in the amount that the

7    debtors have set forth on their schedules.  That is, their

8    official bankruptcy schedules as undisputed, noncontingent and

9    unliquidated.  And also barred from voting upon or receiving

10   distribution under a plan or plan of reorganization.

11        The bar date order also provides, in paragraph 8,

12   "notwithstanding anything in this order to the contrary, the

13   holder of any claim arising from the rejection of an executory

14   contract, pursuant to Section 365, shall be required to file

15   proof of claim on account of such claim against the debtors on

16   or before the later of the general bar date or thirty calendar

17   days after the effective date of such rejection."

18        Again, as far as I know, this contract has not been

19   rejected.  It may, in fact, have expired by its terms.  So in

20   the construct of the bar date order and the record before me,

21   it appears that the claim, which was filed several months after

22   the bar date, would be untimely.

23        The Supreme Court in the case of Pioneer Investment

24   Services Company v. Brunswick Associates Limited Partnership,

25   507 U.S. 380 (1993) recognized that the phrase "excusable

19

1   neglect" in Bankruptcy Rule 9006(b) permits, under certain

2   circumstances, the late filing of proofs of claim even where a

3   claimant was negligent as opposed to having been misled or not

4   having received notice and the like.  In those circumstances,

5   the Supreme Court set forth a four-factor inquiry to consider.

6   However, from the plain language of the rule, as well as its

7   construction by subsequent courts, excusable neglect is really

8   a two-part test.

9        First, a movant must show that its failure to file a

10  timely claim constitutes or constituted neglect as opposed to

11  willfulness or a knowing omission.  Neglect generally being

12  attributed to a movant's inadvertent mistake or carelessness,

13  Id. at 387-88.  Only after establishing neglect under that

14  definition may the movant then show, by a preponderance of the

15  evidence, that the neglect was excusable.  And that is where

16  the four-factor inquiry set forth by the Supreme Court comes

17  into play.

18        Here, although there could be read into the motion

19  itself a suggestion that the movant is claiming that it was

20  affirmatively misread by Delphi, based on my review of the e-

21  mail exhibits and the absence of anything else on the record to

22  the contrary, it appears clear to me that Delphi did not

23  mislead Bradford into thinking that it would be exempt from the

24  requirement of the bar date order to file a timely proof of

25  claim.  It also appears uncontroverted that Bradford was timely

20

1    served with the notice of the bar date, informing it of the

2    consequences of not filing a timely proof of claim.  And even

3    if it were controverted it's not successfully controverted

4    given the presumption of notice that arises from the

5    certificate of notice provided by Delphi.  See In re R.H. Macy

6    and Co., Inc., 161 B.R. 355, 360 (Bankr. S.D.N.Y. 1993), and In

7    re Dana Corporation, 2007 Bankr. LEXIS 1934 at page 13-15

8    (Bankr. S.D.N.Y. May 3, 2007).

9            Instead, it's suggested by Bradford that it was in

10   negotiations with Delphi, first exchanging information and then

11   trying to work out the amount of its claim, and it was for that

12   reason, that it did not file a claim, i.e., it felt that it

13   would be able to resolve the matter without the necessity of

14   preparing a proof of claim and potentially incurring the costs

15   of hiring a lawyer to do so.

16           Unfortunately for Bradford, even though it may have

17   formed that belief in good faith, it was still a conscious

18   decision in derogation of the bar date order.  Under those

19   circumstances, I believe the Second Circuit has spoken very

20   clearly that the failure to file a timely proof of claim is

21   simply not neglect as contemplated by Bankruptcy Rule 9006.

22   Rather, it was a voluntary omission within the claimant's sole

23   control.  See Midland Cogeneration Venture Limited Partnership

24   v. Enron Corp., In re Enron Corp., 419 F.3d 115 at 120 and 127

25   (2d Cir. 2005).  In that case, as here, the claimant said that

21

1    it, and in that case its counsel, were so heavily focused upon

2    and involved in negotiations with the debtor that it neglected

3    to include the proof of claim at issue in the proof of claim

4    that they filed.  They argued that because of those

5    negotiations the claim was clearly no surprise to Enron.  But,

6    again, as the Second Circuit held, that was a conscious

7    voluntary omission and, therefore, would not constitute

8    neglect.

9            Moreover, to the extent that one would find neglect

10   here as opposed to a conscious decision to assume that the

11   negotiations would play out successfully, the Second Circuit in

12   Midland Cogeneration reiterated its case law in which it

13   acknowledged, quote, "that we have taken a hard line in

14   applying the Pioneer tests.  The four Pioneer factors do not

15   carry equal weight.  The excuse given for the late filing must

16   have the greatest import."  This is because, as the Second

17   Circuit noted, in a typical case three of the Pioneer factors,

18   the length of delay, the danger of prejudice and the movant's

19   good faith usually weigh in favor of the party seeking the

20   extension.  Nevertheless, the Second Circuit has emphasized, as

21   I noted, that the reason for the late filing has the greatest

22   import.  And that generally speaking the claimant will lose a

23   Pioneer motion if the reason for the delay was in the movant's

24   reasonable control.

25           As in Midland Cogeneration, that is the case here.

22

1   And, therefore, as in Midland and Silivanch v. Celebrity

2   Cruises, discussed by Midland, in the ordinary course, the

3   party exclaiming excusable neglect will lose.

4        The other Pioneer factors here, although they are

5   less significant than the reason for delay under the Second

6   Circuit case law, are still to be analyzed, of course.  I don't

7   find here any bad faith on Bradford's part.  I do believe,

8   however, that the length of the delay was significant, a

9   several month delay.  And while there are a few courts who have

10  condoned such a delay, most would not.

11       Finally, on the issue of prejudice, the argument by

12  Bradford is that since Delphi appears to have been prepared to

13  acknowledge roughly $60,000 being owing to Bradford sometime

14  after the passing of the bar date, it would not be prejudiced

15  if that amount were, in fact, permitted to be filed as if the

16  bar date had not come and gone.

17       It's also that in the grand scheme of things in this

18  case where the allowed unsecured claims run into the billions

19  of dollars, a $60,000 claim could not have a significant

20  prejudice on the debtor.  As to the first point, as I noted

21  earlier, the acknowledgement by Delphi, in my mind, was at

22  least as likely in the context of analyzing the potential cure

23  amount in respect of a potentially assumable executory

24  contract.  And, therefore, one could not infer from the exhibit

25  attached to the proof of claim that Delphi had determined that

23

1    there should be a claim against it for $60,000 in the event

2    that the contract expired by its own terms or was to be

3    rejected.

4            As to the other point, it is true that $60,000 in the

5    grand scheme of things is dwarfed by the other allowed and

6    asserted timely filed claims against Delphi, however Delphi has

7    had its plan confirmed, it has rigorously contested claims,

8    including opposing a number of motions under Rule 9006, on the

9    basis that its plan hinged upon and was negotiated by the

10   parties in light of a condition to confirmation that allowed

11   unsecured claims be no greater than a certain cap.  And I have

12   been conscious throughout this case that if I were to loosen

13   the constraints imposed by Midlantic and the other Second

14   Circuit cases under Rule 9006, that the potential for other

15   parties either to come back who've already been ruled against

16   or to make motions in the future under Rule 9006 could greatly

17   increase the amount of claims that Delphi would have to deal

18   with.

19           So it would appear to me that even if one were to

20   find this late filing to be attributable to neglect, which I

21   don't find, it would appear to me that the Pioneer test, as

22   construed in 2005 by the Second Circuit, would lead me to deny

23   the motion.

24           That leaves the second part of the motion.  I don't

25   believe that given the different issues involved I could simply

24

1    deem Bradford's cure notice as satisfying the bar date.

2    However, Bradford would have the ability, under Rule 60, to

3    seek relief from my earlier order setting the cure amount in

4    respect of its executory contract cure claim.  Which, of

5    course, I haven't decided either way because it's not before

6    me.  I don't know whether that motion, at this point, would be

7    moot, because I don't know whether the contract is expired or

8    whether Delphi intends to assume it under its plan as modified.

9    But it appears to me that the issues in connection with cure

10   and assumption are very different than the issues that would

11   pertain to a claim under a contract that has expired.

12          And, finally, again, it also appears to me, under the

13   provisions of the bar date order, that the timeliness of the

14   claim also might be quite different if, in fact, the contract

15   has not expired by its terms and would be rejected instead by

16   Delphi under Section 365.  So let me be clear.  Unless there's

17   any further motion under Rule 60 in respect to the cure claim

18   for which my ruling's without prejudice, I would deny this

19   motion before me today.

20          On the other hand, if Delphi subsequently moves to

21   reject the contract, it's not clear to me whether my ruling

22   would apply to the claim in its timeliness under those

23   circumstances.  So the debtor should submit an order consistent

24   with my ruling.

25          You don't have to settle it, but you should give a

25

1   copy to counsel for Bradford before you submit it to court.

2         MR. LYONS:  I'd propose it be a very brief order just

3   for the reasons --

4         THE COURT:  For the reasons stated on the record.

5         MR. LYONS:  -- stated on the record.

6         THE COURT:  Okay.

7         MR. LYONS:  Your Honor, I'd like to hand up kind of a

8   chart showing the current progress on the claim.

9         THE COURT:  Okay.  Well, I gave you all a compliment

10  yesterday, I don't know if it was reported back to you.

11        MR. LYONS:  Well, thank you, Your Honor, I --

12        THE COURT:  Mr. Butler was talking about the things

13  that had been accomplished in the case and spent some time on

14  the claims process.  And I noted that you all had made really

15  pretty amazing progress on dealing with roughly 13,000 objected

16  to claims.

17        MR. LYONS:  Thank you, Your Honor.  And I'm sure my

18  client, Mr. Unruh, shares that gratitude as well.

19        MR. LYONS:  Well, Your Honor, I won't go into a lot

20  of detail.  But you can see we have filed thirty-one omnibus

21  claims objections, we've had twenty-five claims hearings

22  resulting in objection to over 13,000 claims, asserting the

23  total of ten billion dollars.  The objection chart reflects

24  that approximately 9,800 claims have been ordered expunged or

25  have been withdrawn.  With asserted amounts of approximately

26

1     9.7 billion dollars.

2          Your Honor, we still have 394 claims that have been

3     adjourned into the procedures.  And, actually, one of the

4     issues we're having, Your Honor, is we have a number of claims,

5     around 120,150 claims, where we've actually agreed on the

6     amounts.  But for whatever reason, I don't know if the

7     claimants lost interest or what have you, but we're having a

8     difficult time getting these to final stipulations and such.

9          And, Your Honor, we want to work within the

10    constraints of the claims procedures; these are already subject

11    to an omnibus objection.  One possible efficient way of dealing

12    with these is objecting again but requested they be allowed in

13    the agreed amount.  And then if the other parties have a

14    problem with that, they can come forward.  But I think that

15    might be an efficient way to get these claims to finally being

16    allowed, and we could take them off our pile of claims we need

17    to deal with.

18          THE COURT:  Okay.  That's probably fair.  A fair way

19    to deal with it.  I mean, I guess you could amend the schedules

20    too, but that would still raise the opportunity -- I think what

21    you've proposed would work.

22          MR. LYONS:  Then they would give an allowed claim at

23    the end of the day, which I think --

24          THE COURT:  Right.  You'd give specific

25    particularized notice to the claimant?

27

1          MR. LYONS:  Yes.

2          THE COURT:  Okay.

3          MR. LYONS:  Your Honor, one second.

4      (Pause)

5          MR. LYONS:  Okay, Your Honor, we have nothing

6      further.  Thank you for your time.

7          THE COURT:  I mean, obviously, you probably ought to

8      check the 3001 docket, make sure you've given notice to the

9      right person.

10         MR. LYONS:  Yes.

11         THE COURT:  But I think that works.  So if you did

12     that you'd be down to about 270, I guess.

13         MR. LYONS:  Maybe even less, Your Honor, because

14     we're still working a number through a separate process.  As

15     will be, there will probably be claims that will be left.  But

16     hopefully we want to keep that to the lowest possible number.

17         THE COURT:  Okay.

18         MR. LYONS:  Thank you, Your Honor.

19     (Proceedings concluded at 2:51 p.m.)

20

21

22

23

24

25

28

1

2                              I N D E X

3

4                              RULINGS

5                                                    PAGE LINE

6    Motion of Bradford Industries for Leave to       23    22

7    File Late Claims Denied

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

29

1

2                        C E R T I F I C A T I O N

3

4       I, Esther Accardi, certify that the foregoing transcript is a

5       true and accurate record of the proceedings.

6

7       _____

8       ESTHER ACCARDI

9

10      Veritext LLC

11      200 Old Country Road

12      Suite 580

13      Mineola, New York 11501

14

15      Date: October 27, 2008

16

17

18

19

20

21

22

23

24

25