SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
         In re                          :      Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :      Case No. 05-44481 (RDD)
                                        :
                        Debtor.         :      (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' RESPONSE TO THE LOUISIANA DEPARTMENT OF REVENUE'S BRIEF IN SUPPORT OF MOTION TO ALLOW LATE FILED CLAIM

1.      Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in

the above-captioned cases (collectively, the "Debtors"), hereby respond (this "Response Brief"),

pursuant to rule 9006 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"),

to the Motion To Allow Late Filed Claim (Docket No. 13535) (the "Motion") and the Brief In

Support Of Motion To Allow Late Filed Claim (Docket No. 14390) (the "Louisiana Brief") filed

by the Louisiana Department of Revenue (the "Department").

2.      In support of this Response Brief, the Debtors submit the Declaration Of

Noticing Agent In Support Of Debtors' Response To Brief In Support Of Louisiana Department

Of Revenue's Motion To Allow Late Filed Claim, executed and sworn to on November 11, 2008

by Evan Gershbein of Kurtzman Carson Consultants LLC ("KCC"), the claims and noticing

agent in these chapter 11 cases (the "Gershbein Declaration"), a copy of which is attached hereto

as Exhibit A.  In further support of this Response Brief, the Debtors respectfully represent as

follows:

Preliminary Statement

3.      The Department argues that its filing of proof of claim number 16707 (the

"Proof of Claim") more than 14 months after the Bar Date (as defined below) was the result of

excusable neglect within the meaning of Bankruptcy Rule 9006(b)(1).  The Department offers

three reasons to justify this extraordinary relief:  (a) the Department allegedly received

inadequate service of the notice of the commencement of the bankruptcy cases and of the notice

of Bar Date (together, the "Notices") because the Notices were mailed to the incorrect addresses,

(b) the Notices did not identify Delco Electronics LLC as a debtor entity or as an entity included

2

in the Debtors' jointly administered cases, and (c) the Department had insufficient time to file the Proof of Claim before the Bar Date.

4.    The Department offers only reasons, however, and provides no evidence that would excuse its 14-month-late filing under the excusable-neglect standard.  Instead, the factors for determining whether to excuse the untimely filing of the Proof of Claim favor the Debtors.  First, although the Debtors did not send either of the Notices to the two particular addresses identified in the Department's pleadings, the Debtors have submitted sworn testimony from KCC that the Notices were sent to numerous other recipients at the Department.  The Department has not shown that these addresses were somehow inadequate or otherwise rebutted the presumption that the Department received the Notices.  In fact, the Department's timely filing of other proofs of claims in these chapter 11 cases indicates that the Department had actual knowledge of the Bar Date.  Second, contrary to the Department's assertion that it did not learn that Delco Electronics Corporation was wholly owned by DAS LLC or that Delco Electronics LLC had merged into DAS LLC until more than a year after the Bar Date, the Department had access long before the Bar Date to tax returns and the global notes filed with the Debtors' schedules of assets and liabilities, all of which contained that information.  Third, despite the Department's assertion that it had insufficient time to file the Proof of Claim, the Department's failure to file a protective proof of claim before the Bar Date was entirely within its own control.

5.    For these reasons, and as described in greater detail below, the Department should not be allowed to file a late claim.  This Court should, therefore, disallow the Proof of Claim with prejudice.

<u>Background</u>

6.    On or about November 7, 2004, Delco Electronics Corporation, a subsidiary of Delphi, filed its final 2003 tax return (the "2003 Tax Return"), attached as

3

Exhibit B hereto, with the Department.  As part of the documentation submitted with the 2003

Tax Return, Delco Electronics Corporation disclosed that (a) Delco Electronics Corporation had

changed its name to Delco Electronics LLC, (b) effective January 1, 2004, Delco Electronics

LLC became a single-member limited liability company with its sole member being Delphi

(through its single-member limited liability company, DAS LLC, a disregarded entity for

income-tax purposes), and (c) for tax years subsequent to 2003, Delco Electronics LLC's activity

would be reported by Delphi under its FEIN of 38-3430473.

       7.     On or about October 28, 2005, the Department was served the Notice of

Commencement of Chapter 11 Bankruptcy Cases And Meeting of Creditors (the "Notice of

Commencement") which provided that Delphi and certain of its affiliates, including DAS LLC,

filed voluntary petitions for chapter 11 relief.

       8.     On or about November 15, 2005, Delco Electronics Corporation filed a

2004 tax return (the "2004 Tax Return"), attached as Exhibit C hereto, with the Department

indicating no tax liabilities for Delco Electronics Corporation.  As part of the documentation

submitted with the 2004 Tax Return, Delco Electronics Corporation again disclosed that (a)

Delco Electronics Corporation had changed its name to Delco Electronics LLC, (b) effective

January 1, 2004, Delco Electronics LLC became a single-member limited liability company with

its sole member being Delphi (through its single member limited liability company, DAS LLC, a

disregarded entity for tax income-tax purposes), and (c) for tax years subsequent to 2003, Delco

Electronics LLC's activity would be reported by Delphi under its FEIN of 38-3430473.

       9.     On April 20, 2006, the Department was served with notice (the "Notice of

Bar Date"), attached hereto as Exhibit D, of the Order Under 11 U.S.C. §§ 107(b), 501, 502, And

1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates

For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof, entered by

4

this Court on April 12, 2006 (Docket No. 3206) setting a bar date of July 31, 2006 (the "Bar Date") for creditors to file proofs of claim in the Debtors' chapter 11 cases.

10.     On or about May 30, 2006, the Department filed proofs of claim numbers 7092 and 7093 against Debtors Delphi Automotive Systems Human Resources LLC and Delphi Automotive Systems Corporation, respectively.

11.     On or about June 28, 2006, Delco Electronics Corporation filed a 2002 tax return (the "2002 Tax Return"), attached as <u>Exhibit E</u> hereto, with the Department indicating no tax liabilities for Delco Electronics Corporation.  As part of the documentation submitted with the 2004 Tax Return, Delco Electronics Corporation further disclosed that (a) the Debtors had filed petitions for reorganization under chapter 11 of the Bankruptcy Code and that the automatic stay provision of section 362 prohibited the Debtors from making payments on prepetition taxes while in bankruptcy, (b) Delco Electronics Corporation had changed its name to Delco Electronics LLC, (c) effective January 1, 2004, Delco Electronics LLC became a single-member limited liability company with its sole member being Delphi (through its single member limited liability company, DAS LLC, a disregarded entity for tax income-tax purposes), and (d) on September 30, 2005, Delco Electronics LLC was liquidated and became a subsidiary of DAS LLC.

12.     On September 17, 2007, more than 14 months after the Bar Date, the Department filed the Proof of Claim in the amount of $7,436.36 for the 2002 tax year assessed by the State of Louisiana.  On February 15, 2008, the Debtors objected to the Proof of Claim pursuant to the Debtors' Twenty-Sixth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Untimely Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To Modification And Modified Claim Asserting Reclamation (Docket No. 12686).  On March 11,

2008, the Department filed its Response To Twenty-Sixth Objection To Claims, Particularly To

The Louisiana Department Of Revenue's Claim (Claim 16707) (Docket No. 13077).

13.    Pursuant to this Court's protocol for untimely proofs of claim filed in

these cases without leave of this Court, on April 22, 2008, the Debtors filed the Notice Of

Deadline To File Motion For Leave To File Late Claim With Respect To Late Claim Filed By

The Louisiana Department Of Revenue (Proof Of Claim No. 16707) (Docket No. 13448).  On

May 6, 2008, the Department filed the Motion.  In accordance with the Order Establishing

Schedule For Briefing Regarding Proof Of Claim Number 16707 (Louisiana Department Of

Revenue Scheduling Order) (Docket No. 14398) entered by this Court on November 3, 2008, the

Department filed the Louisiana Brief.

Argument

A.    The Department Was Properly Served With And Is Presumed To Have Received The
Notice Of Commencement And The Notice Of Bar Date

14.    The Department does not assert that it did not receive the Notices, but that

the Notice of Commencement was sent to an incorrect division of the Department.  Nevertheless,

the Debtors provided adequate service of the Notices and the Department was obligated to file

the Proof of Claim before the Bar Date.

(i)    A Proper Mailing Constitutes Effective Service

15.    On or before October 28, 2005, KCC served the Department with several

copies of the Notice of Commencement.  These documents were served by KCC on the

Department by First Class mail at each of the seven addresses below.  (Gershbein Declaration ¶5.)

| Louisiana Department Of Revenue & Taxation<br>PO Box 91017<br>Baton Rouge, LA 70821-9017 | Louisiana Department Of Revenue Eft Processing<br>PO Box 4018<br>Baton Rouge, LA 70821-4018 |
|---|---|

| | |
|---|---|
| Louisiana Dept Of Rev & Taxation<br>1555 Poydras St Ste 900<br>New Orleans, LA 70112 | State Of Louisiana Dept Of Rev<br>Acct Of Terry Adams Case 438907715<br>PO Box 31706<br>Shreveport, LA 43890-7715 |
| Louisiana Dept Of Revenue<br>Acct Of Ida W Lee Levy 438 72 6792<br>PO Box 31706<br>Attn M Eddins<br>Shreveport, LA 43872-6792 | Louisiana Dept Of Revenue Thibodaux<br>Regional Office<br>PO Box 1429<br>Thibodaux, LA 70302-1429 |
| Louisiana State Of Dept Of Revenue<br>PO Box 201<br>Baton Rouge, LA 70821-0201 | |

16.    Likewise, on April 20, 2006, KCC also served the Department with several copies of the Notice of Bar Date.  These documents were served by KCC on the Department by First Class mail on each of the 17 recipients identified below.  (Gershbein Declaration ¶6.)

| | |
|---|---|
| Louisiana Department Of Revenue &<br>Taxation<br>PO Box 91017<br>Baton Rouge, LA 70821-9017 | Louisiana Department Of Revenue<br>and Taxation<br>PO Box 91017<br>Baton Rouge, LA 70821-9017 |
| Louisiana Department Of Revenue Eft<br>Processing<br>PO Box 4018<br>Baton Rouge, LA 70821-4018 | Louisiana Dept Of Rev & Taxation<br>1555 Poydras St Ste 900<br>New Orleans, LA 70112 |
| State Of Louisiana Secretary Of Revenue<br>And Taxation<br>Box 91010<br>Baton Rouge, LA 70821-9010 | Louisiana Dept Of Revenue<br>Acct Of Ida W Lee Levy 438 72<br>6792<br>PO Box 31706<br>Attn M Eddins<br>Shreveport, LA 43872-6792 |
| Louisiana Dept Of Revenue Acct Of Ida W<br>Lee<br>Levy 438 72 6792 PO Box 31706<br>Attn M Eddins<br>Shreveport, LA 71130 | Louisiana Dept Of Revenue<br>Thibodaux<br>Regional Office<br>PO Box 1429<br>Thibodaux, LA 70302-1429 |
| Louisiana Dept Of Revenue Thibodaux<br>Regional Office<br>PO Box 1429<br>Thibodaux, LA 70302-1429 | Louisiana State Of Dept Of Revenue<br>PO Box 201<br>Baton Rouge, LA 70821-0201 |

| | |
|---|---|
| Rpt Louisiana Dept Of Revenue Unclaimed Property Div Box 91010 Baton Rouge, LA 70821-9010 | State Of Louisiana Department Of Rev and Tax Box 91010 Baton Rouge, LA 70821-9010 |
| State Of Louisiana Dept Of Rev Acct Of Terry Adams Case 438907715 PO Box 31706 Shreveport, LA 43890-7715 | State Of Louisiana Dept Of Rev Acct Of Case 438907715 PO Box 31706 Shreveport, LA 71130 |
| State Of Louisiana Dept Of Revenue Unclaimed Property Baton Rouge, LA 70821-9010 | State Of Louisiana Sec Of Revenue and Taxation Unclaimed Property Section Baton Rouge, LA 70821-9010 |
| State Of Louisiana Secretary Of Revenue And Taxation Baton Rouge, LA 70821-9010 | |

17.    Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail.  See e.g., Hagner v. United States, 285 U.S. 427, 430 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); Leon v. Murphy, 988 F.2d 303, 309 (2d Cir.1993) (finding, under New York law, that a presumption of receipt arises when sender "presents proof of office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed"); In re R.H. Macy Co., Inc., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) ("Mail properly addressed, stamped and deposited in the mail system is presumed to have been received by the party to whom it has been addressed.").

18.    Accordingly, the Debtors provided the Department timely, proper, and sufficient service of the Notice of Commencement and the Notice of Bar Date.

(ii)    The Department Has Failed To Rebut The
Presumption That Service Was Proper

19.     The Department has failed to present any objective evidence to rebut the presumption that the Department was properly served with either the Notice of Commencement or the Notice of Bar Date.  "While the presumption is a rebuttable one, it is a <u>very strong presumption</u> and can only be rebutted by specific facts <u>and not by invoking another presumption</u> and not by a mere affidavit to the contrary."  <u>In re Dana Corp.</u>,  No. 06-10354, 2007 WL 1577763, *3 (Bankr. S.D.N.Y. 2007) (emphasis added); <u>see also</u> <u>Hagner</u>, 285 U.S. at 430 ("proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed"); <u>In re Mid-Miami Diagnostics, L.L.P.</u>, 195 B.R. 20, 22-23 (Bankr. S.D.N.Y. 1996) ("A creditor's denial of receipt, standing alone, does not rebut the presumption that the mail was received, but merely creates a question of fact.").

20.     "The presumption can only be overcome by clear and convincing evidence that the mailing was not, in fact, accomplished."  <u>Moody v. Bucknum</u>, 951 F.2d 204, 207 (9th Cir. 1991); <u>In re Dana Corp.</u>, 2007 WL 1577763, at *3.  The Department bears the burden of rebutting the presumption of receipt of the personalized notice.  <u>In re Alexander's Inc.</u>, 176 B.R. 715, 721 (Bankr. S.D.N.Y. 1995).  To rebut the presumption of proper service, the claimant must prove that the "regular office procedure was not followed or was carelessly executed so that the presumption that notice was mailed becomes unreasonable."  <u>Id.</u> (citing <u>Meckel v. Cont'l Res. Co.</u>, 758 F.2d 811, 817 (2d Cir. 1985)).  It is established in the Second Circuit that the "mere denial of receipt does not rebut the presumption that notice was properly addressed and mail is received."  <u>Capital Data Corp. v. Capital Nat'l Bank</u>, 778 F. Supp. 669, 675-76 (S.D.N.Y. 1991); <u>In re Alexander's</u>, 176 B.R. at 721 ("It is black letter law that once an item is properly mailed, the law presumes that it is received by the addressee.").

9

21.     In the Louisiana Brief, the Department asserts that the Notice of

Commencement was sent to only one recipient—Louisiana Department of Revenue, Acct. of Ida

W. Lee—and was, therefore, not brought to the attention of the proper parties within the

Department.  The Department further asserts, without explanation, that the Debtors should have

sent the Notices to either the Lake Charles Regional Office or the Collections Division for the

Louisiana Department of Revenue.  Contrary to the Department's assertions, however, the

Debtors provided service of the Notices at numerous addresses identified in the Gershbein

Declaration and set forth above.  The Debtors assembled these addresses based on payment and

notice contacts from their ordinary-course dealings with the Department, and includes the

Department's headquarters in Baton Rouge, Louisiana and regional offices in New Orleans and

Thibodaux, Louisiana.[1]  The Department has not suggested that service at these addresses was

improper.  Moreover, the filing of proofs of claim numbers 7092 and 7093 by the Department

before the Bar Date indicates that the Department had actual knowledge of the Bar Date.

22.     Accordingly, the Department is presumed to have received service of

the Notices and was obligated to file a claim before the Bar Date or risk losing its claim.  The

Court should, therefore, deny the Department's Motion.

B.     The Department Has Not Met Its Burden Of Proof For Establishing Excusable Neglect

23.     Because the Department received proper notice of the Bar Date, the

Department is forced to assert excusable neglect pursuant to Bankruptcy Rule 9006.  The

Department has not met its burden for reconsideration under the test announced in Pioneer

Investment Services Co. vs. Brunswick Associates Limited Partnership, 507 U.S. 380 (1993).  In

---

[1]     The mailing addresses for the Department headquarters and the regional offices are among the 12 revenue
offices listed on the "Contact Us" page of the Department's website.  See Louisiana Department of Revenue,
http://www.rev.state.la.us/sections/aboutus/offices.aspx (last visited Nov. 6, 2008).

Pioneer, the Supreme Court held that excusable neglect is the failure to comply with a filing

deadline because of negligence.  Id. at 394.  In examining whether a creditor's failure to file a

claim by the bar date constituted excusable neglect, the Supreme Court found that the factors

include "(1) the danger of prejudice to the debtor, (2) the length of the delay and its potential

impact on judicial proceedings, (3) the reason for the delay, including whether it was within the

reasonable control of the movant, and (4) whether the movant acted in good faith."  Id. at 395.

The Second Circuit has held the most important factor is the reason for the delay, including

whether it was within the reasonable control of the movant.  In re Enron Corp., 419 F.3d 115,

122-24 (2d Cir. 2005).  The Second Circuit has taken a "hard line" when applying the Pioneer

factors and has held that the equities will rarely favor a party who does not follow the clear

dictates of a court rule or order.  See Hearing Tr. 27, Feb. 14, 2007 (Docket No. 7446).

Furthermore, "where the rule is entirely clear, the Second Circuit continues to expect that a party

claiming excusable neglect will, in ordinary course, lose under the Pioneer test."  Id.

(i)    Danger Of Prejudice To The Debtor

24.    Allowing the Department to pursue its late-filed claim will prejudice the

Debtors, as well as other creditors in these cases, by opening the floodgates to any potential

claimant that failed to file a claim before the Bar Date.  Courts often have recognized the danger

of opening the floodgates to potential claimants.  See, e.g., In re Enron Corp., 419 F.3d at 132; In

re Kmart Corp., 381 B.R. 709, 714 (7th Cir. 2004) (noting that if court allowed all similar late-

filed claims, "Kmart could easily find itself faced with a mountain of such claims"); Enron

Creditors Recovery Corp., 370 B.R. 90, 103 (Bankr. S.D.N.Y. 2007) ("It can be presumed in a

case of this size with tens of thousands of filed claims, there are other similarly-situated potential

claimants. . . . Any deluge of motions seeking similar relief would prejudice the Debtors'

11

reorganization process.'" (citation omitted)); <u>In re Dana Corp.</u> 2007 WL 1577763, at *6 ("the floodgates argument is a viable one").

25.    Debtors have relied in part upon the current state of claims register to calculate postemergence liquidity needs to satisfy tax claims and otherwise formulate and prosecute a plan of reorganization.  Allowing the Department to prevail may inspire many other similarly situated potential claimants to file similar motions.  The Department did not file the Proof of Claim until September 17, 2007—more than 14 months after the Bar Date.  Any potential claimant who, by its own error, failed to file a timely proof of claim may seek to follow the Department's lead.  Accordingly, establishing a precedent for allowing untimely claims without a compelling justification would greatly prejudice the Debtors, their estates, and their creditors and undermine the Debtors' restructuring efforts.

(ii)    <u>Length Of The Delay</u>

26.    Courts considering excusable neglect in this jurisdiction have characterized delays of six months as "substantial."  <u>See</u> <u>In re Dana Corp.</u>, 2007 WL 1577763, at *5, citing <u>In re Enron</u>, 419 F.3d at 125 (delay of more than six months after bar date was "substantial").  Yet, the Department waited more than 14 months after the Bar Date to file the Proof of Claim.  The Department's extensive delay was sufficiently long to interfere with the Debtors' administration of their bankruptcy proceedings and to have a disparate impact on the chapter 11 cases.

(iii)    <u>Reason For The Delay</u>

27.    The third and most important factor—the reason for the delay—weighs heavily in favor of the Debtors.  The Department received notice of the Bar Date but failed to file a timely claim.  The Louisiana Brief provides no explanation which excuses the late filing of the Proof of Claim.

12

28.     The Department argues that it did not learn until August 21, 2007, that (a) Delco Electronics Corporation had become Delco Electronics LLC, a single member limited liability company owned by Delphi through DAS LLC and (b) Delco Electronics LLC had merged into DAS LLC on September 30, 2005.  (Louisiana Brief 3.)  Both of the Department's assertions, however, are unfounded.  First, the 2002 Tax Return, 2003 Tax Return, and the 2004 Tax Return each instructed the Department that Delco Electronics Corporation had converted to a single-member limited liability company, Delco Electronics LLC.  The tax returns named Delphi, through DAS LLC, as the sole member of Delco Electronics LLC.  Second, the 2002 Tax Return also instructed the Department that Delco Electronics LLC was liquidated on September 30, 2005.  Finally, the Global Notes And Statement Of Limitations, Methodology And Disclaimer Regarding Debtors' Schedules And Statements filed along with the Debtors' Schedules Of Assets And Liabilities, filed January 20, 2006 (Docket No. 1854) (the "Schedules"), attached hereto as Exhibit F, explain that several division names, including "Delco Electronics," fall within the Delphi's primary operating subsidiary, DAS LLC, that Delco Electronics LLC had merged into DAS LLC on September 30, 2005, and that "all information relating to Delco Electronics LLC is included in the Schedules and Statements for DAS LLC."  Schedules at ¶¶ 16-17.  The Notice of Bar Date directed the Department to view the Schedules at either PACER or at the Debtors' Legal Information Website, http://www.delphidocket.com.  The Department, therefore, was on notice that Delphi, through DAS LLC, owned Delco Electronics Corporation and that liabilities relating to Delco Electronics were attributable to debtor entities in the Debtors' chapter 11 cases, but nevertheless failed to file a timely proof of claim.

29.     The Department further argues that it had insufficient time to file the Proof of Claim after the Debtors filed the 2002 Tax Return on June 28, 2006.  Again, the Department's argument is without merit.  As described in the immediately preceding paragraph, the

13

Department was on notice long before the Bar Date that the liabilities of Delco Electronics were attributable to the Debtors.  Moreover, this Court has already ruled that the filing of a protective proof of claim is common practice in bankruptcy cases, such that the Department had the burden to file a protective claim before the Bar Date to preserve its rights.  (Hearing Tr. 39, Apr. 18, 2008.)  But instead of filing a timely protective claim, the Department chose to file the Proof of Claim more than 14 months after the Bar Date.  Consequently, the Department's failure to file a proof of claim before the Bar Date was entirely within the Department's control.

30.    Accordingly, the Department has not proven excusable neglect under the <u>Pioneer</u> test.

<u>Conclusion</u>

31.    The Department has failed to provide any evidence of circumstances justifying the extraordinary relief it seeks under the excusable-neglect standard and has not met its burden for establishing excusable neglect.  The Motion should, therefore, be denied.

32.    WHEREFORE the Debtors respectfully request that this Court enter an

order (a) denying the Motion, (b) disallowing and expunging proof of claim number 16707, and

(c) granting them such other and further relief as is just.


Dated: New York, New York
       November 11, 2008


SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

                - and –


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
    Thomas J. Matz
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

# Exhibit A

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
                          :
       In re                     :     Chapter 11
                          :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                          :
                          :     (Jointly Administered)
            Debtors.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

DECLARATION OF NOTICING AGENT IN SUPPORT OF
DEBTORS' RESPONSE TO MOTION OF THE LOUISIANA
DEPARTMENT OF REVENUE TO ALLOW LATE FILED CLAIM

I, Evan Gershbein, state as follows:

1.    I am over eighteen years of age and not a party to the above-captioned

cases.  I believe the statements contained herein are true based on my personal

knowledge.  I am one of the Senior Consultants employed by Kurtzman Carson

Consultants LLC ("KCC") and my business address is 2335 Alaska Avenue, El Segundo,

California 90245.  KCC was retained as the noticing agent pursuant to the Final Order

Under 28 U.S.C. § 156(c) Authorizing Retention And Appointment Of Kurtzman Carson

Consultants LLC As Claims, Noticing, And Balloting Agent for Clerk Of Bankruptcy

Court entered by this Court on December 1, 2005 (Docket No. 1374) in the chapter 11

cases of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors").  I am

familiar with KCC's routine practices and procedures for the mailing of notices and other

pleadings.  This declaration is based upon my personal knowledge, except as to such

matters as are stated upon information and belief.

2.    KCC has been the claims and noticing agent for numerous large

bankruptcy cases.  To fulfill this role, we have established a number of safeguards to

make certain that notices and other pleadings are served in a proper manner.  Our service

procedures are specifically designed to insure that documents are always properly

addressed and mailed.  Our procedures for mailing documents, including bar date notices

in chapter 11 cases, are generally outlined as follows:

       a.    <u>Placement Of Documents Into An Envelope</u>:  When mailing out

notices of a bar date ("Bar Date Notices"), KCC generates a

personalized proof of claim form for each party on a relevant

2

service list, collates that personalized proof of claim form with a
Bar Date Notice, and places both documents into an envelope.
These tasks are performed by the KCC Production Department.
Similarly, after carefully reviewing the printed versions of a notice
of the commencement of a bankruptcy ("Notice of
Commencement"), the notice is collated and placed into envelopes.

b.    <u>Affixing Of The Proper Postage</u>:  Once we review and approve
random samples of completed packages, employees assigned to the
KCC Production Department apply the proper postage to all
completed packages prior to mailing.

c.    <u>Placing Of Letter Into An Outgoing Mail Receptacle</u>:  Depending
upon the completion time of the mailing, we either direct our
regular courier to take the mail directly to a post office (or post
offices, if necessary) or we physically deliver it to a post office
ourselves.  KCC served the Debtors' Notice of Commencement on
or before October 28, 2005.  In serving the Debtors' Bar Date
Notice in the above-captioned cases, KCC's regular courier
delivered the Bar Date Notice packages to a post office facility in
Los Angeles, California on April 20, 2006.

d.    <u>Retention Of Electronic Data Files</u>:  KCC retains the electronic
data files used to create the personalized proof of claim forms and
to address the envelopes.

3

e.    <u>Records Of Each Mailing</u>:  I execute and file affidavits of service for most mailings.  I include a specific service list containing a listing of all parties to receive a notice of an order in my notarized and filed affidavits of service.

f.    <u>Monitoring Of Returned Mail</u>:  We preprint the return address (<u>i.e.</u>, KCC's address) on our envelopes.  We receive and carefully maintain the mail sent out and returned to our office.

3.    In preparation of the mailing of the Debtors' Notice of Commencement, I personally supervised the following:

a.    <u>Creation Of Data Files Used To Merge Address Information Into Notices</u>:  I directed the reformatting of the Debtors' Notice of Commencement data files, including the extraction and incorporation of the various parties' address information from KCC's database into those data files.

b.    <u>Submit Data Files And Notice Of Commencement To Production Staff</u>:  My colleagues and I provided the data files and the Debtors' Notice of Commencement to a technological programming consultant, an employee who is trained to operate the software used by KCC to generate personalized envelopes to mail the Notices of Commencement.

c.    <u>Monitor Preparation Of Merge Project</u>:  I monitored the creation of the process by which we merged the data files to prepare the envelopes containing the Debtors' Notices of Commencement for

4

mailing.  I instructed a programming consultant to print hard
copies of the Debtors' Notice of Commencement for the service.

d.    <u>Review printed documents</u>:  I reviewed and approved samples of
the printed copies of the Debtors' Notice of Commencement for
service.

e.    <u>Collating and inserting documents into windowed envelopes</u>:
After receiving approval, the KCC Production Department inserted
the Debtors' Notice of Commencement into envelopes with the
parties' addresses printed directly onto the envelopes.

f.    <u>Review and finalize completed packages</u>:  I reviewed samples of
completed packages.  Afterwards, my colleagues and I provided
KCC's Production Department with the approval for sealing,
applying postage, and delivering all packages to the post office.  It
is KCC's procedure to notify me of any problems with or deviation
from KCC's normal procedures in relation to the service of any
documents in the above-captioned case.  With respect to the
mailing of the Notice of Commencement to the appropriate parties,
including the Louisiana Department of Revenue, I was not notified
of any such problem or deviation.

4.    In preparation of the mailing of the Debtors' Bar Date Notice, I personally
supervised the following:

a.    <u>Creation Of Data Files Used To Merge Address Information Into
Notices</u>:  I directed the reformatting of the Debtors' Bar Date

5

Notice data files, including the extraction and incorporation of the various claimants' address information from KCC's database into those data files.

b.    <u>Submit Data Files And Bar Date Notice To Production Staff</u>:  My colleagues and I provided the data files and the Debtors' Bar Date Notices to a technological programming consultant, an employee who is trained to operate the software used by KCC to generate personalized proof of claim forms.

c.    <u>Monitor Preparation Of Merge Project</u>:  I monitored the creation of the process by which we merged the data files to prepare the envelopes containing the Debtors' Bar Date Notices for mailing.  I, along with another KCC employee, reviewed and approved samples of printed copies of proof of claim forms with the merged mailing addresses and instructed a technological programming consultant to print hard copies of the Debtors' Bar Date Notices for the service.

d.    <u>Review printed documents</u>:  I reviewed and approved samples of the printed copies of the Debtors' Bar Date Notice for service.

e.    <u>Collating and inserting documents into windowed envelopes</u>: After receiving approval, the KCC Production Department collated and inserted the proof of claim forms and the Debtors' Bar Date Notice into windowed envelopes, with the claimants' addresses showing through the windowed section of the envelopes.

6

  f. <u>Review and finalize completed packages</u>:  I reviewed samples of completed packages.  Afterwards, my colleagues and I provided our Production Department with the approval for sealing, applying postage and delivering all packages to the post office.  Throughout the merging, printing and inserting portions of the project, all packages to be sent to foreign addresses are processed and metered separately.  It is KCC's procedure to notify me of any problems with or deviation from KCC's normal procedures in relation to the service of any Delphi documents.  With respect to the mailing of the Bar Date Notice to the appropriate parties, including the Louisiana Department of Revenue, I was not notified of any such problem or deviation.

  5. On or before October 28, 2005, KCC served copies of the Notice of Commencement on the following recipients:

| | |
|---|---|
| Louisiana Department Of Revenue & Taxation<br>PO Box 91017<br>Baton Rouge, LA 70821-9017 | Louisiana Department Of Revenue Eft Processing<br>PO Box 4018<br>Baton Rouge, LA 70821-4018 |
| Louisiana Dept Of Rev & Taxation<br>1555 Poydras St Ste 900<br>New Orleans, LA 70112 | State Of Louisiana Dept Of Rev<br>Acct Of Terry Adams Case 438907715<br>PO Box 31706<br>Shreveport, LA 43890-7715 |
| Louisiana Dept Of Revenue<br>Acct Of Ida W Lee Levy 438 72 6792<br>PO Box 31706<br>Attn M Eddins<br>Shreveport, LA 43872-6792 | Louisiana Dept Of Revenue Thibodaux Regional Office<br>PO Box 1429<br>Thibodaux, LA 70302-1429 |
| Louisiana State Of Dept Of Revenue<br>PO Box 201<br>Baton Rouge, LA 70821-0201 | |

6.     On April 20, 2006, KCC served copies of the Bar Date Notice on the

following recipients:

| | |
|---|---|
| Louisiana Department Of Revenue & Taxation<br>PO Box 91017<br>Baton Rouge, LA 70821-9017 | Louisiana Department Of Revenue and Taxation<br>PO Box 91017<br>Baton Rouge, LA 70821-9017 |
| Louisiana Department Of Revenue Eft Processing<br>PO Box 4018<br>Baton Rouge, LA 70821-4018 | Louisiana Dept Of Rev & Taxation<br>1555 Poydras St Ste 900<br>New Orleans, LA 70112 |
| State Of Louisiana Secretary Of Revenue And Taxation<br>Box 91010<br>Baton Rouge, LA 70821-9010 | Louisiana Dept Of Revenue<br>Acct Of Ida W Lee Levy 438 72 6792<br>PO Box 31706<br>Attn M Eddins<br>Shreveport, LA 43872-6792 |
| Louisiana Dept Of Revenue Acct Of Ida W Lee<br>Levy 438 72 6792 PO Box 31706<br>Attn M Eddins<br>Shreveport, LA 71130 | Louisiana Dept Of Revenue Thibodaux Regional Office<br>PO Box 1429<br>Thibodaux, LA 70302-1429 |
| Louisiana Dept Of Revenue Thibodaux Regional Office<br>PO Box 1429<br>Thibodaux, LA 70302-1429 | Louisiana State Of Dept Of Revenue<br>PO Box 201<br>Baton Rouge, LA 70821-0201 |
| Rpt Louisiana Dept Of Revenue Unclaimed Property Div<br>Box 91010<br>Baton Rouge, LA 70821-9010 | State Of Louisiana Department Of Rev and Tax<br>Box 91010<br>Baton Rouge, LA 70821-9010 |
| State Of Louisiana Dept Of Rev Acct Of Terry Adams Case 438907715<br>PO Box 31706<br>Shreveport, LA 43890-7715 | State Of Louisiana Dept Of Rev Acct Of Case 438907715<br>PO Box 31706<br>Shreveport, LA 71130 |
| State Of Louisiana Dept Of Revenue Unclaimed Property<br>Baton Rouge, LA 70821-9010 | State Of Louisiana Sec Of Revenue and Taxation<br>Unclaimed<br>Property Section<br>Baton Rouge, LA 70821-9010 |
| State Of Louisiana Secretary Of Revenue And Taxation<br>Baton Rouge, LA 70821-9010 | |

These names and addresses were provided by the Debtors as a part of the "creditor

matrix" (the "Creditor Matrix"), which is a list of each entity and person that was listed

8

on the Debtors' Schedules Of Assets And Liabilities (the "Schedules") filed in the above-caption cases, or was identified by the Debtors as potentially having a claim against the Debtors.

7.      KCC sent the Bar Date Notice to every entity listed on the Creditor Matrix.  If potentially duplicate entries on the Creditor Matrix did not contain exactly the same name and address, the Bar Date Notice was sent to both entries.

8.      None of the packages sent to the recipients identified in the tables above were returned to KCC as undeliverable.

9.      In addition to mailing the Debtors' Bar Date Notices to recipients at the address listed above, KCC arranged to have the Debtors' Bar Date Notices published in 38 newspapers, including the European edition of the Wall Street Journal and the international edition of USA Today.   We also posted the Debtors' Bar Date Notices on the informational website established and maintained by KCC for the Debtors' cases, which is found at www.delphidocket.com.

10.      To the best of my knowledge, information and belief, I hereby declare and state that the foregoing information is true and correct.

Executed on November 11, 2008, at Los Angeles, California.

  /s/ Evan Gershbein
Evan Gershbein

# Exhibit B

Software Code

CIFT-620SD (01-04) **1100**

**Louisiana Department of Revenue**

Post Office Box 91011
Baton Rouge, LA 70821-9011

☐ Mark if this is an amended return.

☐ Mark if your address has changed.

Please enter your Revenue Account Number here: 5786595001

Please print corporation name, and complete mailing address below.

| For use of office only | Louisiana Corporation **Income Tax** Return for **2003** or Fiscal Year Begun _____, 2003 Ended _____, 2004 | Louisiana Corporation **Franchise Tax** Return for **2004** or Fiscal Year Begun _____, 2004 Ended _____, 2005 |
|---|---|---|

Calendar year returns are due **April 15.**
See instructions for fiscal year.

Delco Electronics Corporation
P. O. Box 5086

Troy                    MI      48007-5086

| | | | |
|---|---|---|---|
| A. Federal Employer Identification Number ▶ | A. | 38-2633811 | |
| B. Federal taxable income ▶ | B. $ | -115,947,493. | 00 |
| C. Federal income tax ▶ | C. $ | 0. | 00 |
| D. Inc tax apportionment percentage (two dec. places) ▶ | D. | 0.66 % | |
| E. Gross revenues ▶ | E. $ | 4,575,360,995. | 00 |

| | | | | |
|---|---|---|---|---|
| F. Total assets ▶ | F. $ | 2,269,623,883. | 00 | |
| G. Business code number ▶ | G. | 336300 | | |
| H. Was the income of this corporation included in a consolidated federal income tax return? ▶ | | | H. | Yes X No |
| I. Is an Apportionment and Allocation Schedule (CIFT-620A) included with this return? ▶ | | | I. | X |

**Computation of Income Tax**

| | | | | |
|---|---|---|---|---|
| 1A. Louisiana net income before loss adjustments and federal income tax ded. (Sch. D, Line 14, or Sch. P, Line 33) ▶ | 1A. | -952,651. | 00 | |
| 1B. S corporation exclusion (See instructions). **Attach schedule.** | 1B. | 0. | 00 | |
| 1C. Loss Carryforward ($ 0.) less applicable to loss ($ 0.) **Attach schedule.** ▶ | 1C. | 0. | 00 | |
| 1D. Loss Carryback ($ 952,651.) less federal tax refund applicable to loss ($ 0.) **Attach schedule.** ▶ | 1D. | 0. | 00 | |
| 1E. Federal income tax deduction (See instructions.) ▶ | 1E. | 0. | 00 | |
| 1F. Louisiana taxable income (Subtract Lines 1B, 1C, 1D, and 1E from Line 1A.) ▶ | 1F. | -952,651. | 00 | |
| 2. Louisiana income tax (Schedule E, Line 4) ▶ | 2. | 0. | 00 | |
| 3. Credits: A. New Jobs Credit (Limited to 50% of net tax. See instr.) ▶ | 3A. | 0. | 00 | |
| B. Enterprise Zone Credit ▶ | 3B. | 0. | 00 | |
| C. Louisiana Capital Companies Credit ▶ | 3C. | 0. | 00 | |
| D. Other credits. Explain. (Do not include ad valorem tax credit. See Line 15.) ▶ | 3D. | 0. | 00 | |
| E. Total nonrefundable credits (Add Lines 3A through 3D.) ▶ | 3E. | 0. | 00 | |
| 4. Income tax after credits (Subtract Line 3E from Line 2.) | 4. | 0. | 00 | |
| 5. Less prepayments (Schedule I, Line 7) ▶ | 5. | 425,000. | 00 | |
| 6. Amount of income tax due or overpayment (Subtract Line 5 from Line 4.) ▶ | 6. | -425,000. | 00 | |

**Computation of Franchise Tax**

| | | | | |
|---|---|---|---|---|
| 7A. Total capital stock, surplus, undivided profits, & borrowed capital (Sch A, Line 32, Col. 3) ▶ | 7A. | 1,901,764,080. | 00 | |
| 7B. Franchise tax apportionment % (Sch N, Line 5, of CIFT-620A) (Carry to 2 decimal places or 100.00%.) ▶ | 7B. | 0.97 % | | |
| 7C. Franchise taxable base (Multiply Line 7A by Line 7B.) ▶ | 7C. | 18,447,112. | 00 | |
| 8. Amount of assessed value of real and personal property in Louisiana in 2003 ▶ | 8. | 0. | 00 | |
| 9. Louisiana franchise tax (Schedule F, Line 6) ▶ | 9. | 54,891. | 00 | |
| 10. Credits: A. Enterprise Zone Credit ▶ | 10A. | 0. | 00 | |
| B. Other credits. Explain. (Do not include ad valorem tax credit. See Line 15.) ▶ | 10B. | 0. | 00 | |
| C. Total credits (Add Lines 10A and 10B.) ▶ | 10C. | 0. | 00 | |
| 11. Franchise tax after credits (Subtract Line 10C from Line 9.) ▶ | 11. | 54,891. | 00 | |
| 12. Less previous payments ▶ | 12. | 0. | 00 | |
| 13. Amount of franchise tax due or overpayment (Subtract Line 12 from Line 11.) ▶ | 13. | 54,891. | 00 | |

**Net Amount Due**

| | | | | |
|---|---|---|---|---|
| 14. Total income and franchise tax due or overpayment (Add Lines 6 and 13.) ▶ | 14. | -370,109. | 00 | |
| 15. Refundable Credits (See instructions.) | | | | |
| A. Inventory Credit ▶ | 15A. | 0. | 00 | |
| B. Telephone Company Property Credit ▶ | 15B. | 0. | 00 | |
| C. Prison Industry Enhancement (PIE) ▶ | 15C. | 0. | 00 | |
| D. Total refundable credits ▶ | 15D. | 0. | 00 | |
| 16. Net income and franchise tax due or overpayment (Subtract Line 15D from Line 14.) ▶ | 16. | -370,109. | 00 | |
| 17. Penalties (See instructions.) ▶ | 17. | 0. | 00 | |
| 18. Interest (Enter 1.25% per month from due date of return to date of payment.) ▶ | 18. | 0. | 00 | |
| 19. Total amount due (Add Lines 16 through 18.) Make payment to Louisiana Dept of Revenue. **DO NOT SEND CASH.** ▶ | 19. | 0. | 00 | |
| 20. Amount of overpayment you want **REFUNDED** ▶ | 20. | 370,109. | 00 | |
| 21. Amount of overpayment you want **CREDITED** to 2004 tax ▶ | 21. | 0. | 00 | |

2003 Deloitte & Touche Tax Technologies LLC    LA620P01

2411

24117    5786595001  24    12312003  00000000  5786595001  0000000000  8

**ALL APPLICABLE SCHEDULES MUST BE COMPLETED.**

## SCHEDULE A - BALANCE SHEET AND CORPORATION FRANCHISE TAXABLE BASE

| ASSETS | | 1. Beginning of year | 2. End of year | 3. End of year |
|---|---|---|---|---|
| 1. | Cash | 470,640. | 1,081,741. | |
| 2. | Trade notes and accounts receivable | 517,294,269. | 529,288,969. | |
| 3. | Reserve for bad debts | ( 3,180,411. ) | ( 3,147,236. ) | |
| 4. | Inventories | 348,536,989. | 310,518,631. | |
| 5. | Investment in United States government obligations | 0. | 0. | |
| 6. | Other current assets (Attach schedule.)   STATEMENT 1 | 27,615,596. | 19,754,642. | |
| 7. | Loans to stockholders | 0. | 0. | |
| 8. | Stock and obligations of subsidiaries | | | |
| 9. | Other investments (Attach schedule.)   STATEMENT 2 | 684,193,636. | 695,514,281. | |
| 10. | Buildings and other fixed depreciable assets | 1,800,495,627. | 1,847,859,523. | |
| 11. | Accumulated amortization and depreciation | ( 1,420,811,672. ) | ( 1,352,743,025. ) | |
| 12. | Depletable assets | 0. | 0. | |
| 13. | Accumulated depletion | ( 0. ) | ( 0. ) | |
| 14. | Land | 1,045,734. | 936,967. | |
| 15. | Intangible assets | 263,443,494. | 184,697,057. | |
| 16. | Accumulated amortization | ( 230,190,831. ) | ( 113,647,216. ) | |
| 17. | Other assets (Attach schedule.)   STATEMENT 3 | 293,579,552. | 149,509,549. | |
| 18. | Excessive reserves or undervalued assets (Attach schedule.) | | | **TOTAL FRANCHISE TAXABLE BASE** (Extend to Column 3, amounts in Col 2 that are includable in the franchise taxable base.) |
| 19. | Totals (Add Lines 1 through 18.) | 2,282,492,623. | 2,269,623,883. | |

### LIABILITIES AND CAPITAL

| | | | | |
|---|---|---|---|---|
| 20. | Accounts payable | 997,577,771. | 1,104,823,267. | 676,118,343. |
| 21. | Mortgages, notes, and bonds payable (one year old or less at balance sheet date and having a maturity of one year or less from original date incurred) (Complete Schedule B) | 0. | 0. | 0. |
| 22. | Other current liabilities (Attach schedule.)   STATEMENT 4 | -43,644,872. | -60,845,121. | 0. |
| 23. | Loans from stockholders (Attach schedule.) | 0. | 0. | 0. |
| 24. | Due to subsidiaries and affiliates | 0. | 0. | 0. |
| 25. | Mortgages, notes, and bonds payable (more than one year old at balance sheet date or having a maturity of more than one year from original date incurred) | 0. | 0. | 0. |
| 26. | Other liabilities (Attach schedule.)   STATEMENT 5 | -21,241,656. | -11,586,215. | -11,586,215. |
| 27. | Capital stock:   a. Preferred stock | 0. | 0. | 0. |
| | b. Common stock | 25,005. | 25,005. | 25,005. |
| 28. | Paid-in or capital surplus | 999,632,395. | 920,195,457. | 920,195,457. |
| 29. | Surplus reserves (Attach schedule.) | 0. | 0. | 0. |
| 30. | Earned surplus and undivided profits | 350,143,980. | 317,011,490. | 317,011,490. |
| 31. | Excessive reserves or undervalued assets | | | |
| 32. | Totals (Add Lns 20 - 31. Enter the Col 3 total on Pg 1, Ln 7A. Round to nearest dollar.) | 2,282,492,623. | 2,269,623,883. | 1,901,764,080. |

## SCHEDULE B - ANALYSIS OF SCHEDULE A, COLUMN 2, LINES 21, 23, AND 26

| Original date of inception | Due date | Payee | Installment amount | Balance due | Taxable amount |
|---|---|---|---|---|---|
| | | | 0. | 0. | 0. |
| | | | 0. | 0. | 0. |
| | | | 0. | 0. | 0. |

## SCHEDULE C - ANALYSIS OF SCHEDULE A, COLUMN 2, LINE 30 (EARNED SURPLUS AND UNDIVIDED PROFITS PER BOOKS)

| | | | | |
|---|---|---|---|---|
| 1. Balance at beginning of year | 354,975,982. | 5. Distributions:  a. Cash | 0. | |
| 2. Net income per books | -14,470,633. | b. Stock | 0. | |
| 3. Other increases (Itemize.) | 0. | c. Property | 0. | |
| | 0. | 6. Other decreases (Itemize.) | 0. | |
| | 0. | STATEMENT 6 | 15,367,427. | |
| | 0. | 7. Total (Add Lines 5 and 6.) | 15,367,427. | |
| 4. Total (Add Lines 1, 2, and 3.) | 340,505,349. | 8. Balance at end of year (Sub Ln 7 from Ln 4.) | 325,137,922. | |

Under the penalties of perjury, I declare that I have examined this return, including all accompanying documents, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which he has any knowledge.

Signature

*Denise C. Olbrecht*  11/7/04

Signature of officer
**DENISE C. OLBRECHT**
**DIRECTOR, STATE INCOME TAX**
**DULY AUTHORIZED AGENT**
2488138050

| Signature of preparer | | Date |
|---|---|---|
| | | |
| Firm name | | |

2412

Telephone

LA620P02

**ALL APPLICABLE SCHEDULES MUST BE COMPLETED.** (Schedule D need not be completed if Schedule P of Form CIFT-620A is filed with this return)

## SCHEDULE D - COMPUTATION OF LOUISIANA TAXABLE INCOME

| | | | |
|---|---|---|---|
| 1. | Federal net income | 1. | 0. |
| | **ADDITIONS TO FEDERAL NET INCOME** | | |
| 2. | Net operating loss deduction claimed on federal return | 2. | 0. |
| 3. | Dividends received deduction claimed on federal return | 3. | 0. |
| 4. | Louisiana income tax deducted on federal return | 4. | 0. |
| 5. | Interest on obligations of other states or their political subdivisions | 5. | 0. |
| 6. | Other additions to federal net income (Attach schedule.) | 6. | 0. |
| 7. | Total additions (Add Lines 2 through 6.) | 7. | 0. |
| | **SUBTRACTIONS FROM FEDERAL NET INCOME** | | |
| 8. | Refunds of Louisiana income tax reported on federal return | 8. | 0. |
| 9. | Corporate dividends that have borne Louisiana income tax | 9. | 0. |
| 10. | Louisiana depletion in excess of federal depletion (Attach schedule.) | 10. | 0. |
| 11. | Expenses not deducted on the federal return due to Internal Revenue Code Section 280(C) | 11. | 0. |
| 12. | Other subtractions (Attach schedule.) | 12. | 0. |
| 13. | Total subtractions (Add Lines 8 through 12.) | 13. | 0. |
| 14. | Louisiana net income before S corporation exclusion, loss adjustments, and federal income tax deduction (Line 1 plus Line 7, less Line 13. Enter here and on Page 1, Line 1A. Round to the nearest dollar.) | 14. | 0. |

## SCHEDULE E - CALCULATION OF INCOME TAX

1. Enter the net taxable income from Page 1, Line 1F.      0.

| 2. Calculation of tax | Column 1 | | Column 2 |
|---|---|---|---|
| | Net income in each bracket | RATE | TAX |
| a. First $25,000 of net income | 0. | x 4% = | 0. |
| b. Next $25,000 | 0. | x 5% = | 0. |
| c. Next $50,000 | 0. | x 6% = | 0. |
| d. Next $100,000 | 0. | x 7% = | 0. |
| e. Over $200,000 | 0. | x 8% = | 0. |

3. Add Lines 2a through 2e of Column 1 and enter here.      0.

4. Add Lines 2a through 2e of Column 2. Enter here and on Page 1, Line 2. Round to the nearest dollar.      0.

## SCHEDULE F - CALCULATION OF FRANCHISE TAX

| | | |
|---|---|---|
| 1. Enter amount from Page 1, Line 7C or 8, whichever is greater. | 18,447,112. | |
| 2. Enter first $300,000 of Line 1 above. | 300,000. | |
| 3. Multiply the amount on Line 2 by $1.50 for each $1,000 or major fraction thereof and enter here. | | 450. |
| 4. Subtract Line 2 from Line 1 and enter here. | 18,147,112. | |
| 5. Multiply the amount on Line 4 by $3.00 for each $1,000 or major fraction thereof and enter here. | | 54,441. |
| 6. Add Lines 3 and 5. Enter the result or $10.00, whichever is greater, here and on Page 1, Line 9. Round to the nearest dollar. | | 54,891. |

## SCHEDULE G - RECONCILIATION OF FEDERAL AND LOUISIANA NET INCOME
(Complete Schedule G only if filing an apportionment and allocation schedule [Form CIFT-620A] with this return.)

| | | |
|---|---|---|
| 1. Enter total net income calculated under federal law before special deductions. | | -115,188,983. |
| 2. Additions to federal net income: | a. Louisiana income tax | 425,000. |
| | b. Interest on obligations of other states and their political subdivisions | 0. |
| | c. Other | 0. |
| | | 0. |
| | FOREIGN DIVIDEND GROSS-UP EXPENSES | 29,148. |
| | CHARITABLE CONTRIBUTION ADJUSTMENT | 1,790,460. |
| Subtractions from federal net income: | a. Dividends that have borne Louisiana income tax | 0. |
| | b. United States government interest | 0. |
| | c. Other | 0. |
| | | 0. |
| | | 0. |
| | SECTION 78 GROSS-UP | 582,954. |
| 3. Louisiana net income from all sources (same as Schedule P, Line 28, of CIFT-620A) | | -113,527,329. |

**2413**

**ALL APPLICABLE SCHEDULES MUST BE COMPLETED.**

## SCHEDULE H - RECONCILIATION OF INCOME PER BOOKS WITH INCOME PER RETURN

| | | | |
|---|---|---|---|
| 1. Net income per books | -14,470,633. | 7. Income recorded on books this year, | |
| 2. Louisiana income tax | 425,000. | but not included in this return (Itemize.) | |
| 3. Excess of capital loss over capital gains | 0. | | 0. |
| 4. Taxable income not recorded on books this year | | STATEMENT 9 | 4,818,616. |
| (Itemize.) | | 8. Deductions in this tax return not charged | |
| 0. | | against book income this year: | |
| 0. | | a. Depreciation | 114,097,896. |
| 0. | | b. Depletion | 0. |
| STATEMENT 7 | 41,053,305. | c. Other | 0. |
| 5. Expenses recorded on books this year, but not | | | 0. |
| deducted in this return: | | | 0. |
| a. Depreciation | 134,541,755. | | 0. |
| b. Depletion | 0. | STATEMENT 10 | 73,351,521. |
| c. Other | 0. | 9. Total (Add Lines 7 and 8.) | 192,268,033. |
| | 0. | 10. Net income from all sources per return | |
| STATEMENT 8 | -82,808,723. | (Subtract Line 9 from Line 6.) | |
| 6. Total (Add Lines 1 through 5.) | 78,740,704. | | -113,527,329. |

## SCHEDULE I - SUMMARY OF ESTIMATED TAX PAYMENTS

| | Check number | Date | | Amount |
|---|---|---|---|---|
| 1. Credit from prior year return | | | | 0. |
| 2. First quarter estimated payment | EFT | 04 | 2003 | 125,000. |
| 3. Second quarter estimated payment | EFT | 06 | 2003 | 150,000. |
| 4. Third quarter estimated payment | EFT | 09 | 2003 | 150,000. |
| 5. Fourth quarter estimated payment | | | | 0. |
| 6. Payment made with extension request | | | | 0. |
| 7. Total | | | | 425,000. |

## ADDITIONAL INFORMATION REQUIRED

1. Indicate principal place of business.   KOKOMO, INDIANA
2. Describe the nature of your business activity and specify your principal
   product or service, both in Louisiana and elsewhere.
   Louisiana:   SALE OF AUTOMOTIVE ELECTRONIC
   COMPONENTS

   Elsewhere:  MANUFACTURE AND SALE OF AUTOMOTIVE
   ELECTRONIC COMPONENTS

3. Indicate the date and state of incorporation.   DE   08/09/1985
4. Indicate parishes in which property is located.
   N/A

5. At the end of the taxable year, did you directly or indirectly own 50% or
   more of the voting stock of any corporation?  [X] Yes   [ ] No
   If "yes," show name, address, and percentage owned.

   SEE ATTACHED STATEMENT

6. At the end of the taxable year, did any corporation, individual, partner-
   ship, trust, or association directly or indirectly own 50% or more of your
   voting stock?  [X] Yes   [ ] No
   If "yes," show name, address, and percentage owned.
   DELPHI CORPORATION
   PO BOX 5086
   TROY, MI 48007-5086
   FEIN: 38-3430473
   PERCENTAGE OWNED: 100%

**2414**

CIFT-620ASD (01-04)

**State of Louisiana**
**Department of Revenue**
# Corporation Apportionment and Allocation Schedules
## COMPLETE ALL APPLICABLE SCHEDULES.

| Name as shown on CIFT-620 | Income taxable period covered |
|---|---|
| Delco Electronics Corporation | 01 01 2003        12 31 2003 |

## SCHEDULE M – COMPUTATION OF CORPORATE FRANCHISE TAX AND INCOME TAX PROPERTY RATIOS

| * STATEMENT 11 | Located everywhere | | Franchise tax property factor | Income tax property factor | |
|---|---|---|---|---|---|
| 1. Items | 2. Beginning of year | 3. End of year | 4. End of year | 5. Beginning of year | 6. End of year |
| **Intangible assets** | | | | | |
| 1. Cash | 470,640. | 1,081,741. | 0. | | |
| 2. Notes and accounts receivable | 517,294,269. | 529,288,969. | 6,892,457. | | |
| 3. Reserve for bad debts | ( 3,180,411.) | ( 3,147,236.) | ( 0.) | | |
| 4. Investment in U.S. govt. obligations | 0. | 0. | 0. | | |
| 5. Stock and obligations of subsidiaries | 0. | 0. | 0. | | |
| * 6. Other investments (Attach schedule.) | 684,193,636. | 695,514,281. | 0. | | |
| 7. Loans to stockholders | 0. | 0. | 0. | | |
| 8. Other intangible assets (Attach schedule.) | 584,638,642. | 353,961,248. | 0. | | |
| 9. Accumulated depreciation | ( 230,190,831.) | ( 113,647,216.) | ( 0.) | | |
| 10. Total intangible assets (Add Lines 1–9.) | 1,553,225,945. | 1,463,051,787. | 6,892,457. | | |
| **Real and tangible assets** | | | | | |
| 11. Inventories | 348,536,989. | 310,518,631. | 0. | 0. | 0. |
| 12. Bldgs. and other depreciable assets | 1,800,495,627. | 1,847,859,523. | 0. | 0. | 0. |
| 13. Accumulated depreciation | ( 1,420,811,672.) | ( 1,352,743,025.) | ( 0.) | ( 0.) | ( 0.) |
| 14. Depletable assets | 0. | 0. | 0. | 0. | 0. |
| 15. Accumulated depletion | ( 0.) | ( 0.) | ( 0.) | ( 0.) | ( 0.) |
| 16. Land | 1,045,734. | 936,967. | 0. | 0. | 0. |
| 17. Other real & tangible assets (Attach sch.) | 0. | 0. | 0. | 0. | 0. |
| 18. Excessive reserves, assets not reflected on books, or undervalued assets | 0. | 0. | 0. | 0. | 0. |
| 19. Total real and tangible assets (Add Lines 11 through 18.) | 729,266,678. | 806,572,096. | 0. | 0. | 0. |
| 20. **Total assets (Add Lines 10 and 19.)** | 2,282,492,623. | 2,269,623,883. | 6,892,457. | | |
| 21. Enter amount from Line 19 above. | 729,266,678. | 806,572,096. | | 0. | 0. |
| 22. Less real and tangible assets **not** used in production of net apportionable income (Attach schedule.) | 0. | 0. | | 0. | 0. |
| 23. Balance | 729,266,678. | 806,572,096. | | 0. | 0. |
| 24. Beginning of year balance | | 729,266,678. | | | 0. |
| 25. Total (Add Lines 23 and 24.) | | 1,535,838,774. | | | 0. |
| 26. Franchise tax property ratio (Line 20, Column 4 / Line 20, Column 3) | | | 0.30 % | | |
| 27. Income tax property ratio (Line 25, Column 6 / Line 25, Column 3) | | | | | 0.00 % |

## SCHEDULE N – COMPUTATION OF CORPORATE FRANCHISE TAX APPORTIONMENT PERCENTAGE

| 1. Description of Items used as ratios | 2. Total amount | 3. Louisiana amount | 4. Percent (Col. 3 / Col. 2) |
|---|---|---|---|
| 1. Net sales of merchandise, charges for services, and other revenues | | | |
| A. Sales (See instructions.) | 4,575,360,995. | 60,103,752. | |
| B. Charges for services (See instructions.) | 0. | 0. | |
| C. Other Revenues: Itemize. (See instructions.) | | | |
| (i) Rents and royalties | 0. | 0. | |
| (ii) Dividends and interest from subsidiaries | 0. | 0. | |
| (iii) Other dividends and interest | 5,014,338. | 0. | |
| (iv) All other revenues          STATEMENT 12 | 837,961. | 0. | |
| D. Total (Total the amounts in Cols. 2 and 3. Enter ratio in Column 4.) | 4,581,213,294. | 60,103,752. | 1.31 % |
| 2. Franchise tax property ratio (Enter in Col. 4 the percent from Line 26, Sch M.) | | | 0.30 % |
| 3. Net sales of corporations engaged in the business of manufacturing (See inst) | 4,575,360,995. | 60,103,752. | 1.31 % |
| 4. Total of applicable percents in Column 4 | | | 2.92 % |
| 5. Average of percents (Divide Line 4 by applicable number of ratios. Enter here and on Page 1, Line 7B of CIFT-620.) | | | 0.97 % |

**2415**

2003 Deloitte & Touche Tax Technologies LLC          LA620AP1

## SCHEDULE P – COMPUTATION OF LOUISIANA NET INCOME

**Column 3 must be completed. Column 2 must also be completed if the separate accounting method is used.**

| 1. Items | 2. LA amounts (Lines 1 through 27) | 3. Totals |
|---|---|---|
| 1. Gross receipts  4,575,360,995. Less returns and allowances  0. | 0. | 4,575,360,995. |
| 2. Less: Cost of goods sold and/or operations (Attach schedules.) | 0. | 3,496,322,838. |
| 3. Gross profit | 0. | 1,079,038,157. |
| 4. Dividends  2,873,148. Less: Dividends that have borne LA income tax (Attach schedule.)  0. Balance | 0. | 2,873,148. |
| 5. Interest | 0. | 2,141,190. |
| 6. Gross rents | 0. | 0. |
| 7. Gross royalties | 0. | 0. |
| 8. Net gains from sale of capital assets (Attach schedule.) | 0. | 0. |
| 9. Net gains (loss) from sale of property other than capital assets (Attach schedule.) | 0. | -17,854,780. |
| 10. Other income (Attach schedule.)   SEE STATEMENT 13 | 0. | 44,595,492. |
| 11. Total income (Add Lines 3 through 10.) | 0. | 1,110,793,207. |
| 12. Compensation of officers | 0. | 4,391,581. |
| 13. Salaries and wages (not deducted elsewhere) | 0. | 266,809,244. |
| 14. Repairs (Do not include cost of improvements or capital expenditures.) | 0. | 1,254,960. |
| 15. Bad debts | 0. | 398,222. |
| 16. Rent | 0. | 198,588,515. |
| 17. Taxes (Attach schedule.) | 0. | 13,043,329. |
| 18. Interest | 0. | -11,903. |
| 19. Contributions | 0. | 1,790,460. |
| 20. Depreciation (Attach schedule.) | 0. | 114,097,896. |
| 21. Depletion (Attach schedule.) | 0. | 0. |
| 22. Advertising | 0. | 0. |
| 23. Pension, profit sharing, stock bonus, and annuity plans | 0. | 75,461,870. |
| 24. Other employee benefit plans | 0. | 106,549,350. |
| 25. Other deductions (Attach schedule.) | 0. | 441,947,012. |
| 26. Total deductions (Add Lines 12 through 25.) | 0. | 1,224,320,536. |
| 27. Net income from Louisiana sources (If separate [direct] method of reporting is used, enter here and on Line 33) | 0. | |
| 28. Net income from all sources (Subtract Line 26, Column 3 from Line 11, Column 3.) | | -113,527,329. |
| 29. Less: Allocable income from all sources (See instructions.) Attach schedule supporting each amount. | | |
| A.   Net rents and royalties | 0. | |
| B.   Net profits or losses from sales or exchanges of property not made in the regular course of business | -17,497,684. | |
| C.   Other net allocable income    SEE ALLOC. SCHEDULE | 48,311,342. | 30,813,658. |
| 30. Net income subject to apportionment (Subtract Lines 29A, B, and C from Line 28.) | | -144,340,987. |
| 31. Net income apportioned to Louisiana (See instructions.) | | -952,651. |
| 32. Add: Allocable income from Louisiana sources (See instructions.) Attach schedule supporting each amount. | | |
| A.   Net rents and royalties | 0. | |
| B.   Net profits or losses from sales or exchanges of property not made in the regular course of business | 0. | |
| C.   Other net allocable income | 0. | 0. |
| 33. Louisiana net income before loss adjustments and federal income tax deduction (Add Lines 31, 32A, B, and C or enter amount from Line 27, whichever is applicable, here and on Page 1, Line 1A of Form CIFT- 620. Round to nearest dollar.) | | -952,651. |

## SCHEDULE Q – COMPUTATION OF INCOME TAX APPORTIONMENT PERCENTAGE

| 1. Description of items used as ratios | 2. Total amount | 3. Louisiana amount | 4. Percent (Col. 3 / Col. 2) |
|---|---|---|---|
| 1. Net sales of merchandise and/or charges for services | | | |
| A. Sales (See instructions.) | 4,575,360,995. | 60,103,752. | |
| B. Charges for services (See instructions.) | 0. | 0. | |
| C. Other gross apportionable income | 837,961. | 0. | |
| D. Total (Enter total of Lines A, B, and C in Col. 2 and Col. 3.) | 4,576,198,956. | 60,103,752. | |
| (Enter ratio in Col. 4.) | | | 1.31 % |
| 2. Wages, salaries, and other personal service compensation paid during the year (Enter amounts in Column 2 and Column 3, and ratio in Column 4.) | 359,370,203. | 46,042. | 0.01 % |
| 3. Income tax property ratio (Enter percentage from Line 27, Schedule M.) | | | 0.00 % |
| 4. ONLY corporations primarily in the business of manufacturing or merchandising, enter ratio from Line 1D, Column 4 (See instructions.) | | | 1.31 % |
| 5. Total of percents in Column 4 | | | 2.63 % |
| 6. Average of percents (Use this result in determining income apportioned to Louisiana on Line 31, Schedule P.) | | | 0.66 % |

Delco Electronics Corporation
FEIN: 38-2633811

The 2003 tax return is the final return being filed for Delco Electronics Corporation.

Delco Electronics Corporation was converted to a limited liability company in a conversion transaction pursuant to section 266 of the Delaware General Corporation Law, effective as of 11:59 p.m. December 31, 2003, and changed its name at that time to Delco Electronics LLC.

Effective January 1, 2004, Delco Electronics LLC is a single-member limited liability company.  Its sole member is Delphi Corporation (through its single member limited liability company, Delphi Automotive Systems LLC, a disregarded entity), which was also the sole shareholder of Delco Electronics Corporation.  For tax years subsequent to 2003, Delco Electronics LLC's activity, as a single-member disregarded entity, will be reported by Delphi Corporation under its FEIN of 38-3430473.

# Exhibit C

CIFT-620-SD (01-05)

**Louisiana Department of Revenue**
Post Office Box 91011
Baton Rouge, LA 70821-9011

You **must** enter your Revenue Account Number here: `5786595001`

1100

| | For name change, mark box. ☐ |
| | For address change, mark box. ☐ |
| | For amended return, mark box. ☐ |
| | For final return, mark box. ☒ |
| | For short period return, mark box. ☒ |
| | Extension ☐ |
| | Entry is not required to file franchise tax ☐ |

| F o r   o f f i c e   o n l y | Louisiana Corporation Income Tax Return for 2004 or Fiscal Year Begun _____, 2004 Ended _____, 2005 | Louisiana Corporation Franchise Tax Return for 2005 or Fiscal Year Begun _____, 2005 Ended _____, 2006 |
|---|---|---|

Calendar year returns are due April 15. See instructions for fiscal years.

Delco Electronics Corporation
P. O. Box 5086

Troy                    MI   48007-5086

Please print corporation name, and complete mailing address above.

| | | | |
|---|---|---|---|
| A. Federal Employer Identification Number ▶ | A. | 38-2633811 | |
| B. Louisiana taxable income ▶ | B. $ | 0. 00 | |
| C. Federal income tax ▶ | C. $ | 0. 00 | |
| D. Inc tax apportionment percentage (two dec. places) ▶ | D. | 0.00 % | |
| E. Gross revenues ▶ | E. $ | 0. 00 | |

| | | |
|---|---|---|
| F. Total assets ▶ | F. $ | 0. 00 |
| G. NAICS ▶ | G. | 336300 |
| H. Was the income of this corporation included in a consolidated federal income tax return? ▶ | H. | Yes / No   X |
| I. Is an Apportionment and Allocation Schedule (CIFT-620A) included with this return? ▶ | I. | X |

**Computation of Income Tax**

| | | | |
|---|---|---|---|
| 1A. Louisiana net income before loss adjustments and federal income tax ded. (Sch. D, Line 14, or Sch. P, Line 33) ▶ | 1A. | 0. | 00 |
| 1B. Subchapter S corporation exclusion (See instructions.) **Attach schedule.** ▶ | 1B. | 0. | 00 |
| 1C. Loss carryforward ($ 0.) less federal tax refund applicable to loss ($ 0.) **Attach schedule.** ▶ | 1C. | 0. | 00 |
| 1D. Loss carryback ($ 0.) less federal tax refund applicable to loss ($ 0.) **Attach schedule.** ▶ | 1D. | 0. | 00 |
| 1E. Federal income tax deduction (See instructions.) ▶ | 1E. | 0. | 00 |
| 1F. Louisiana taxable income (Subtract Lines 1B, 1C, 1D, and 1E from Line 1A.) ▶ | 1F. | 0. | 00 |
| 2. Louisiana income tax (Schedule E, Line 4) ▶ | 2. | 0. | 00 |
| 3. Total nonrefundable credits (From Schedule NRC, Line 29) ▶ | 3. | 0. | 00 |
| 4. Income tax after nonrefundable credits (Subtract Line 3 from Line 2.) ▶ | 4. | 0. | 00 |
| 5. Less prepayments (Schedule I, Line 7) ▶ | 5. | 0. | 00 |
| 6. Amount of income tax due or overpayment (Subtract Line 5 from Line 4.) ▶ | 6. | 0. | 00 |

**Computation of Franchise Tax**

| | | | |
|---|---|---|---|
| 7A. Total capital stock, surplus, undivided profits, & borrowed capital (Sch A, Sch 2, Col 3) ▶ 7A. 0. 00 | | | |
| 7B. Franchise tax apportionment % (Sch N, Line 5, of CIFT-620A) (Carry to 2 decimal places or 100.00%.) ▶ | 7B. | 0.00 | % |
| 7C. Franchise tax base (Multiply Line 7A by Line 7B.) ▶ | 7C. | 0. | 00 |
| 8. Amount of assessed value of real and personal property in Louisiana in 2004 ▶ | 8. | 0. | 00 |
| 9. Louisiana franchise tax (Schedule F, Line 6) ▶ | 9. | 0. | 00 |
| 10. Total nonrefundable credits (From Schedule NRC, Line 30) ▶ | 10. | 0. | 00 |
| 11. Franchise tax after nonrefundable credits (Subtract Line 10 from Line 9.) ▶ | 11. | 0. | 00 |
| 12. Less previous payments ▶ | 12. | 0. | 00 |
| 13. Amount of franchise tax due or overpayment (Subtract Line 12 from Line 11.) ▶ | 13. | 0. | 00 |

**Net Amount Due**

| | | | |
|---|---|---|---|
| 14. Total income and franchise tax due or overpayment (Add Lines 6 and 13.) ▶ | 14. | 0. | 00 |
| 15. Total refundable credits (From Schedule RC, Line 5) ▶ | 15. | 0. | 00 |
| 16. Net income and franchise tax due or overpayment (Subtract Line 15 from Line 14.) ▶ | 16. | 0. | 00 |
| 17. Delinquent filing penalty ▶ | 17. | 0. | 00 |
| 18. Delinquent payment penalty ▶ | 18. | 0. | 00 |
| 19. Interest (Enter 1.25% per month from due date of return to date of payment.) ▶ | 19. | 0. | 00 |
| 20. Total amount due (Add Lines 16 through 19.) Make payment to Louisiana Dept of Revenue. **Do not send cash.** ▶ | 20. | 0. | 00 |
| 21. Amount of overpayment you want REFUNDED ▶ 21. 0. 00 | | | |
| 22. Amount of overpayment you want CREDITED to 2005 tax ▶ 22. 0. 00 | | | |

Under the penalties of perjury, I declare that I have examined this return, including all accompanying documents, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which he has any knowledge.

*Denise C. Albrecht*
DENISE C. OLBRECHT
DIRECTOR, STATE INCOME TAX
DULY AUTHORIZED AGENT

Signature of officer
Title of officer
Date   11/15/05
Telephone

Signature of preparer
Firm name
Telephone
Date

www.revenue.louisiana.gov   2004 Deloitte & Touche Tax Technologies LLC   LA620P01   2509

25098    5786595001  244    12312004  00000000  5786595001  00000000000  2

### Schedule NRC – Nonrefundable Tax Credits, Exemptions, and Rebates

| | For all credits, please see instructions for documentation requirements. | Corporation Income Tax (A) | | Franchise Tax (B) | |
|---|---|---|---|---|---|
| 1. | Credit for contributions of tangible property of a sophisticated and technological nature to educational institutions | 0. | .00 | | |
| 2. | Credit for converting vehicles to alternative fuels usage | 0. | .00 | | |
| 3. | Credit for bone marrow donor expenses | 0. | .00 | | |
| 4. | Credit for the employment of certain first-time drug offenders | 0. | .00 | | |
| 5. | Credit for employment in a qualified motion picture production | 0. | .00 | 0. | .00 |
| 6. | Credit for employment of the previously unemployed | 0. | .00 | 0. | .00 |
| 7. | Credit for investments in state certified motion picture productions | 0. | .00 | | |
| 8. | Credit for donations to assist qualified playgrounds | 0. | .00 | 0. | .00 |
| 9. | Louisiana basic skills training tax credit | 0. | .00 | 0. | .00 |
| 10. | Research and development credit | 0. | .00 | 0. | .00 |
| 11. | New markets credit | 0. | .00 | 0. | .00 |
| 12. | Credit for debt issuance costs | 0. | .00 | 0. | .00 |
| 13. | Credit for rehabilitation of historic structures | 0. | .00 | 0. | .00 |
| 14. | Louisiana capital companies credit | 0. | .00 | | |
| 15. | Credit for cash donations to the dedicated research investment fund | 0. | .00 | | |
| 16. | Credit for insurance company premium tax | 0. | .00 | | |
| 17. | Credit for new jobs | 0. | .00 | | |
| 18. | Credit for neighborhood assistance | 0. | .00 | | |
| 19. | Credit for refunds by utilities | 0. | .00 | | |
| 20. | Credit for hiring eligible re-entrants | 0. | .00 | | |
| 21. | Credit for donations to public schools | 0. | .00 | | |
| 22. | Technology Commercialization Credit | 0. | .00 | 0. | .00 |
| 23. | Atchafalaya Trace Heritage Area Development Zone Tax Exemption | 0. | .00 | 0. | .00 |
| 24. | Biomedical Research and Development Park | 0. | .00 | 0. | .00 |
| 25. | Tax Equalization Credit | 0. | .00 | 0. | .00 |
| 26. | Manufacturing Establishments Credit | 0. | .00 | 0. | .00 |
| 27. | Enterprise Zone Credit | 0. | .00 | 0. | .00 |
| 28. | Quality Jobs Program Credit | 0. | .00 | 0. | .00 |
| 29. | Total Income Tax Credits: Add amounts in Col A. Enter here and on CIFT-620, Line 3. | 0. | .00 | | |
| 30. | Total Franchise Tax Credits: Add amounts in Col B. Enter here and on CIFT-620, Line 10. | | | 0. | .00 |

### Schedule RC – Refundable Tax Credits

| | | | |
|---|---|---|---|
| 1. | Inventory tax credit | 0. | .00 |
| 2. | Ad valorem tax credit for offshore vessels | 0. | .00 |
| 3. | Telephone Company Property Tax Credit | 0. | .00 |
| 4. | Prison Industry Enhancement Credit | 0. | .00 |
| 5. | Add Lines 1 through 4. Print the result here and on Line 15 of Form CIFT-620. | 0. | .00 |

FOR OFFICE USE ONLY.



Field flag

2510

2004 Deloitte & Touche Tax Technologies LLC

LA620P02

All applicable schedules must be completed.

## Schedule A – Balance Sheet and Corporation Franchise Taxable Base

| ASSETS | 1. Beginning of year | 2. End of year | 3. End of year |
|---|---|---|---|
| 1.  Cash | 0. | 0. | |
| 2.  Trade notes and accounts receivable | 0. | 0. | |
| 3.  Reserve for bad debts | ( 0. ) | ( 0. ) | |
| 4.  Inventories | 0. | 0. | |
| 5.  Investment in United States government obligations | 0. | 0. | |
| 6.  Other current assets (Attach schedule.) | 0. | 0. | |
| 7.  Loans to stockholders | 0. | 0. | |
| 8.  Stock and obligations of subsidiaries | 0. | 0. | |
| 9.  Other investments (Attach schedule.) | 0. | 0. | |
| 10. Buildings and other fixed depreciable assets | 0. | 0. | |
| 11. Accumulated amortization and depreciation | ( 0. ) | ( 0. ) | |
| 12. Depletable assets | 0. | 0. | |
| 13. Accumulated depletion | ( 0. ) | ( 0. ) | |
| 14. Land | 0. | 0. | |
| 15. Intangible assets | 0. | 0. | |
| 16. Accumulated amortization | ( 0. ) | ( 0. ) | |
| 17. Other assets (Attach schedule.) | 0. | 0. | |
| 18. Excessive reserves or undervalued assets (Attach schedule.) | 0. | 0. | **Total Franchise Taxable Base** (Extend to Column 3, amounts in Col 2 that are includable in the franchise taxable base.) |
| 19. Totals (Add Lines 1 through 18.) | 0. | 0. | |

### Liabilities and Capital

| | | | |
|---|---|---|---|
| 20. Accounts payable | 0. | 0. | 0. |
| 21. Mortgages, notes, and bonds payable (one year old or less at balance sheet date and having a maturity of one year or less from original date incurred)(Complete Schedule B.) | 0. | 0. | 0. |
| 22. Other current liabilities (Attach schedule.) | 0. | 0. | 0. |
| 23. Loans from stockholders (Attach schedule.) | 0. | 0. | 0. |
| 24. Due to subsidiaries and affiliates | 0. | 0. | 0. |
| 25. Mortgages, notes, and bonds payable (more than one year old at balance sheet date or having a maturity of more than one year from original date incurred) | 0. | 0. | 0. |
| 26. Other liabilities (Attach schedule.) | 0. | 0. | 0. |
| 27. Capital stock:    a. Preferred stock | 0. | 0. | 0. |
|                      b. Common stock | 0. | 0. | 0. |
| 28. Paid-in or capital surplus | 0. | 0. | 0. |
| 29. Surplus reserves (Attach schedule.) | 0. | 0. | 0. |
| 30. Earned surplus and undivided profits | 0. | 0. | 0. |
| 31. Excessive reserves or undervalued assets | 0. | 0. | 0. |
| 32. Totals (Add Lns 20 – 31. Enter the Col 3 total on Pg 1, Ln 7A. Round to nearest dollar.) | 0. | 0. | 0. |

## Schedule B – Analysis of Schedule A, Column 2, Lines 21, 23, and 26

| Original date of inception | Due date | Payee | Installment amount | Balance due | Taxable amount |
|---|---|---|---|---|---|
| | | | 0. | 0. | 0. |
| | | | 0. | 0. | 0. |
| | | | 0. | 0. | 0. |

## Schedule C – Analysis of Schedule A, Column 2, Line 30 (Earned surplus and undivided profits per books)

| | | | |
|---|---|---|---|
| 1. Balance at beginning of year | 0. | 5. Distributions:  a. Cash | 0. |
| 2. Net income per books | 0. |                   b. Stock | 0. |
| 3. Other increases (Itemize.) | 0. |                   c. Property | 0. |
| | 0. | 6. Other decreases (Itemize.) | 0. |
| | 0. | | 0. |
| | 0. | 7. Total (Add Lines 5 and 6.) | 0. |
| 4. Total (Add Lines 1, 2, and 3.) | 0. | 8. Balance at end of year (Sub Ln 7 from Ln 4.) | 0. |

**2511**

**All applicable schedules must be completed.** (Schedule D need not be completed if Schedule P of Form CIFT–620A is filed with this return)

### Schedule D – Computation of Louisiana taxable income

| | | | |
|---|---|---|---|
| 1. | Federal net income | 1. | 0. |
| | **Additions to Federal Net Income** | | |
| 2. | Net operating loss deduction claimed on federal return | 2. | 0. |
| 3. | Dividends received deduction claimed on federal return | 3. | 0. |
| 4. | Louisiana income tax deducted on federal return | 4. | 0. |
| 5. | Interest on obligations of other states or their political subdivisions | 5. | 0. |
| 6. | Other additions to federal net income (Attach schedule.) | 6. | 0. |
| 7. | Total additions (Add Lines 2 through 6.) | 7. | 0. |
| | **Subtractions from Federal Net Income** | | |
| 8. | Refunds of Louisiana income tax reported on federal return | 8. | 0. |
| 9. | Corporate dividends that have borne Louisiana income tax | 9. | 0. |
| 10. | Louisiana depletion in excess of federal depletion (Attach schedule.) | 10. | 0. |
| 11. | Expenses not deducted on the federal return due to Internal Revenue Code Section 280(C) | 11. | 0. |
| 12. | Other subtractions (Attach schedule.) | 12. | 0. |
| 13. | Total subtractions (Add Lines 8 through 12.) | 13. | 0. |
| 14. | Louisiana net income before S corporation exclusion, loss adjustments, and federal income tax deduction (Line 1 plus Line 7, less Line 13. Enter here and on Page 1, Line 1A. Round to the nearest dollar.) | 14. | 0. |

| Schedule E – Calculation of income tax | | | Schedule F – Calculation of franchise tax | |
|---|---|---|---|---|
| 1. Enter the net taxable income from Page 1, Line 1F. | | 0. | 1. Enter amount from Page 1, Line 7C or 8, whichever is greater. | 0. |
| 2. Calculation of tax | **Column 1** | **Column 2** | 2. Enter first $300,000 of Line 1 above. | 0. |
| | Net income in each bracket | RATE — TAX | 3. Multiply the amount on Line 2 by $1.50 for each $1,000 or major fraction thereof and enter here. | |
| a. First $25,000 of net income | 0. | x 4% = — 0. | | |
| b. Next $25,000 | 0. | x 5% = — 0. | | 0. |
| c. Next $50,000 | 0. | x 6% = — 0. | 4. Subtract Line 2 from Line 1 and enter here. | |
| d. Next $100,000 | 0. | x 7% = — 0. | | |
| e. Over $200,000 | 0. | x 8% = — 0. | | 0. |
| 3. Add Lines 2a through 2e of Column 1 and enter here. | 0. | | 5. Multiply the amount on Line 4 by $3.00 for each $1,000 or major fraction thereof and enter here. | 0. |
| 4. Add Lines 2a through 2e of Column 2. Enter here and on Page 1, Line 2. Round to the nearest dollar. | | 0. | 6. Add Lines 3 and 5. Enter the result or $10.00, whichever is greater, here and on Page 1, Line 9. Round to the nearest dollar. | 0. |

### Schedule G – Reconciliation of Federal and Louisiana net income
(Complete Schedule G only if filing an apportionment and allocation schedule [Form CIFT–620A] with this return.)

| | | |
|---|---|---|
| 1. Enter total net income calculated under federal law before special deductions. | | 0. |
| 2. Additions to federal net income: | a. Louisiana income tax | 0. |
| | b. Interest on obligations of other states and their political subdivisions | 0. |
| | c. Other | 0. |
| | | 0. |
| | | 0. |
| | | 0. |
| Subtractions from federal net income: | a. Dividends that have borne Louisiana income tax | 0. |
| | b. United States government interest | 0. |
| | c. Other | 0. |
| | | 0. |
| | | 0. |
| | | 0. |
| 3. Louisiana net income from all sources (same as Schedule P, Line 28, of CIFT–620A) | | 0. |

2512

**All applicable schedules must be completed.**

### Schedule H – Reconciliation of Income Per Books with Income Per Return

| | | | |
|---|---|---|---|
| 1. Net income per books | 0. | 7. Income recorded on books this year, | |
| 2. Louisiana income tax | 0. | but not included in this return (Itemize.) | |
| 3. Excess of capital loss over capital gains | 0. | | 0. |
| 4. Taxable income not recorded on books this year (Itemize.) | | | 0. |
| | 0. | 8. Deductions in this tax return not charged against book income this year: | |
| | 0. | a. Depreciation | 0. |
| | 0. | b. Depletion | 0. |
| | 0. | c. Other | 0. |
| 5. Expenses recorded on books this year, but not deducted in this return: | | | 0. |
| a. Depreciation | 0. | | 0. |
| b. Depletion | 0. | | 0. |
| c. Other | 0. | 9. Total (Add Lines 7 and 8.) | 0. |
| | 0. | 10. Net income from all sources per return | |
| | 0. | (Subtract Line 9 from Line 6.) | |
| 6. Total (Add Lines 1 through 5.) | 0. | | 0. |

### Schedule I – Summary of Estimated Tax Payments

| | Check number | Date | Amount |
|---|---|---|---|
| 1. Credit from prior year return | | | 0. |
| 2. First quarter estimated payment | | | 0. |
| 3. Second quarter estimated payment | | | 0. |
| 4. Third quarter estimated payment | | | 0. |
| 5. Fourth quarter estimated payment | | | 0. |
| 6. Payment made with extension request | | | 0. |
| 7. Total | | | 0. |

### Additional Information Required

1. Indicate principal place of business.   KOKOMO, INDIANA

2. Describe the nature of your business activity and specify your principal product or service, both in Louisiana and elsewhere.

   Louisiana:   SALE OF AUTOMOTIVE ELECTRONIC
   COMPONENTS

   Elsewhere:   MANUFACTURE AND SALE OF AUTOMOTIVE
   ELECTRONIC COMPONENTS

3. Indicate the date and state of incorporation.   DE   08/09/1985

4. Indicate parishes in which property is located.
   N/A

5. At the end of the taxable year, did you directly or indirectly own 50% or more of the voting stock of any corporation? [X] Yes [ ] No
   If "yes," show name, address, and percentage owned.

   SEE ATTACHED STATEMENT

6. At the end of the taxable year, did any corporation, individual, partnership, trust, or association directly or indirectly own 50% or more of your voting stock? [X] Yes [ ] No
   If "yes," show name, address, and percentage owned.

   DELPHI CORPORATION
   P.O. BOX 5086
   TROY, MI 48007-5086
   FEIN: 38-3430473
   PERCENTAGE OWNED: 100%

2513

CIFT-620A (01-05)

## Louisiana Department of Revenue
## Corporation Apportionment and Allocation Schedules
### COMPLETE ALL APPLICABLE SCHEDULES.

| Name as shown on CIFT-620 | Income taxable period covered |
|---|---|
| Delco Electronics Corporation | 01 01 2004    01 16 2004 |

## SCHEDULE M – COMPUTATION OF CORPORATE FRANCHISE TAX AND INCOME TAX PROPERTY RATIOS

| 1. Items | Located everywhere | | Franchise tax property factor | Income tax property factor | |
|---|---|---|---|---|---|
| | 2. Beginning of year | 3. End of year | 4. End of year | 5. Beginning of year | 6. End of year |
| **Intangible assets** | | | | | |
| 1. Cash | 0. | 0. | 0. | | |
| 2. Notes and accounts receivable | 0. | 0. | 0. | | |
| 3. Reserve for bad debts | ( 0.) | ( 0.) | ( 0.) | | |
| 4. Investment in U.S. govt. obligations | 0. | 0. | 0. | | |
| 5. Stock and obligations of subsidiaries | 0. | 0. | 0. | | |
| 6. Other investments (Attach schedule.) | 0. | 0. | 0. | | |
| 7. Loans to stockholders | 0. | 0. | 0. | | |
| 8. Other intangible assets (Attach schedule.) | 0. | 0. | 0. | | |
| 9. Accumulated depreciation | ( 0.) | ( 0.) | ( 0.) | | |
| 10. Total intangible assets (Add Lines 1-9.) | 0. | 0. | 0. | | |
| **Real and tangible assets** | | | | | |
| 11. Inventories | 0. | 0. | 0. | 0. | 0. |
| 12. Bldgs. and other depreciable assets | 0. | 0. | 0. | 0. | 0. |
| 13. Accumulated depreciation | ( 0.) | ( 0.) | ( 0.) | ( 0.) | ( 0.) |
| 14. Depletable assets | 0. | 0. | 0. | 0. | 0. |
| 15. Accumulated depletion | ( 0.) | ( 0.) | ( 0.) | ( 0.) | ( 0.) |
| 16. Land | 0. | 0. | 0. | 0. | 0. |
| 17. Other real & tangible assets (Attach sch.) | | | | | |
| 18. Excessive reserves, assets not reflected on books, or undervalued assets | 0. | 0. | 0. | 0. | 0. |
| 19. Total real and tangible assets (Add Lines 11 through 18.) | 0. | 0. | 0. | 0. | 0. |
| 20. **Total assets (Add Lines 10 and 19.)** | 0. | 0. | 0. | | |
| 21. Enter amount from Line 19 above. | 0. | 0. | | 0. | 0. |
| 22. Less real and tangible assets **not** used in production of net apportionable income (Attach schedule.) | 0. | 0. | | 0. | 0. |
| 23. Balance | 0. | 0. | | 0. | 0. |
| 24. Beginning of year balance | | 0. | | | 0. |
| 25. Total (Add Lines 23 and 24.) | | 0. | | | 0. |
| 26. Franchise tax property ratio (Line 20, Column 4 / Line 20, Column 3) | | | 0.00 % | | |
| 27. Income tax property ratio (Line 25, Column 6 / Line 25, Column 3) | | | | | 0.00 % |

## SCHEDULE N – COMPUTATION OF CORPORATE FRANCHISE TAX APPORTIONMENT PERCENTAGE

| 1. Description of Items used as ratios | 2. Total amount | 3. Louisiana amount | 4. Percent (Col. 3 / Col. 2) |
|---|---|---|---|
| 1. Net sales of merchandise, charges for services, and other revenues | | | |
| A. Sales (See instructions.) | 0. | 0. | |
| B. Charges for services (See instructions.) | 0. | 0. | |
| C. Other Revenues: Itemize. (See instructions.) | | | |
| (i) Rents and royalties | 0. | 0. | |
| (ii) Dividends and interest from subsidiaries | 0. | 0. | |
| (iii) Other dividends and interest | 0. | 0. | |
| (iv) All other revenues | 0. | 0. | |
| D. Total (Total the amounts in Cols. 2 and 3. Enter ratio in Column 4.) | 0. | 0. | 0.00 % |
| 2. Franchise tax property ratio (Enter in Col. 4 the percent from Line 26, Sch M.) | | | 0.00 % |
| 3. Net sales of corporations engaged in the business of manufacturing (See inst) | 0. | 0. | 0.00 % |
| 4. Total of applicable percents in Column 4 | | | 0.00 % |
| 5. Average of percents (Divide Line 4 by applicable number of ratios. Enter here and on Page 1, Line 7B of CIFT-620.) | | | 0.00 % |

2515

2004 Deloitte & Touche Tax Technologies LLC                    LA620AP1

## SCHEDULE P – COMPUTATION OF LOUISIANA NET INCOME

**Column 3 must be completed. Column 2 must also be completed if the separate accounting method is used.**

| 1. Items | 2. LA amounts (Lines 1 through 27) | 3. Totals |
|---|---|---|
| 1. Gross receipts 0. Less returns and allowances 0. | 0. | 0. |
| 2. Less: Cost of goods sold and/or operations (Attach schedules.) | 0. | 0. |
| 3. Gross profit | 0. | 0. |
| 4. Dividends 0. Less: Dividends that have borne LA income tax (Attach schedule.) 0. Balance | 0. | 0. |
| 5. Interest | 0. | 0. |
| 6. Gross rents | 0. | 0. |
| 7. Gross royalties | 0. | 0. |
| 8. Net gains from sale of capital assets (Attach schedule.) | 0. | 0. |
| 9. Net gains (loss) from sale of property other than capital assets (Attach schedule.) | 0. | 0. |
| 10. Other income (Attach schedule.) SEE STATEMENT 13 | 0. | 0. |
| 11. Total income (Add Lines 3 through 10.) | | 0. |
| 12. Compensation of officers | 0. | 0. |
| 13. Salaries and wages (not deducted elsewhere) | 0. | 0. |
| 14. Repairs (Do not include cost of improvements or capital expenditures.) | 0. | 0. |
| 15. Bad debts | 0. | 0. |
| 16. Rent | 0. | 0. |
| 17. Taxes (Attach schedule.) | 0. | 0. |
| 18. Interest | 0. | 0. |
| 19. Contributions | 0. | 0. |
| 20. Depreciation (Attach schedule.) | 0. | 0. |
| 21. Depletion (Attach schedule.) | 0. | 0. |
| 22. Advertising | 0. | 0. |
| 23. Pension, profit sharing, stock bonus, and annuity plans | 0. | 0. |
| 24. Other employee benefit plans | 0. | 0. |
| 25. Other deductions (Attach schedule.) | 0. | 0. |
| 26. Total deductions (Add Lines 12 through 25.) | 0. | 0. |
| 27. Net income from Louisiana sources (If separate [direct] method of reporting is used, enter here and on Line 33.) | 0. | |
| 28. Net income from all sources (Subtract Line 26, Column 3 from Line 11, Column 3.) | | 0. |
| 29. Less: Allocable income from all sources (See instructions.) Attach schedule supporting each amount. | | |
| A. Net rents and royalties | 0. | |
| B. Net profits or losses from sales or exchanges of property not made in the regular course of business | 0. | |
| C. Other net allocable income | 0. | 0. |
| 30. Net income subject to apportionment (Subtract Lines 29A, B, and C from Line 28.) | | 0. |
| 31. Net income apportioned to Louisiana (See instructions.) | | 0. |
| 32. Add: Allocable income from Louisiana sources (See instructions.) Attach schedule supporting each amount. | | |
| A. Net rents and royalties | 0. | |
| B. Net profits or losses from sales or exchanges of property not made in the regular course of business | 0. | |
| C. Other net allocable income | 0. | 0. |
| 33. Louisiana net income before loss adjustments and federal income tax deduction (Add Lines 31, 32A, B, and C or enter amount from Line 27, whichever is applicable, here and on Page 1, Line 1A of Form CIFT- 620. Round to nearest dollar.) | | 0. |

## SCHEDULE Q – COMPUTATION OF INCOME TAX APPORTIONMENT PERCENTAGE

| 1. Description of items used as ratios | 2. Total amount | 3. Louisiana amount | 4. Percent (Col. 3 / Col. 2) |
|---|---|---|---|
| 1. Net sales of merchandise and/or charges for services | | | |
| A. Sales (See instructions.) | 0. | 0. | |
| B. Charges for services (See instructions.) | 0. | 0. | |
| C. Other gross apportionable income | 0. | 0. | |
| D. Total (Enter total of Lines A, B, and C in Col. 2 and Col. 3.) (Enter ratio in Col. 4.) | 0. | 0. | 0.00 % |
| 2. Wages, salaries, and other personal service compensation paid during the year (Enter amounts in Column 2 and Column 3, and ratio in Column 4.) | 0. | 0. | 0.00 % |
| 3. Income tax property ratio (Enter percentage from Line 27, Schedule M.) | | | 0.00 % |
| 4. ONLY corporations primarily in the business of manufacturing or merchandising, enter ratio from Line 1D, Column 4 (See instructions.) | | | 0.00 % |
| 5. Total of percents in Column 4 | | | 0.00 % |
| 6. Average of percents (Use this result in determining income apportioned to Louisiana on Line 31, Schedule P.) | | | 0.00 % |

2516

# DELCO ELECTRONICS CORPORATION
## LOUISIANA CORPORATION INCOME/FRANCHISE TAX RETURN
### FOR YEAR 2004

### PAGE 5, QUESTION 5

| Name | Mailing Address | Percentage Interest |
|---|---|---|
| Delco Electronics Overseas Corporation | ** | 100.00 % |
| Delphi Delco Electronics de Mexico, S.A. de C.V. | Foreign | 99.99 % |
| Delphi Electronics (Holding) LLC | ** | 100.00 % |
| Delphi Liquidation Holding Company | ** | 100.00 % |
| Delphi Technologies, Inc. | ** | 100.00 % |
| Famar do Brasil Comercio e Representacao Ltda. | Foreign | 66.67 % |
| HE Microwave LLC | ** | 50.00 % |
| Holdcar S.A. | Foreign | 99.90 % |
| Mecel AB | Foreign | 100.00 % |
| MobileAria, Inc. | ** | 71.20 % |

**  P.O. BOX 5086
     Troy, MI 48007-5086

Delco Electronics Corporation
FEIN: 38-2633811

The 2003 tax return is the final return being filed for Delco Electronics Corporation.

Delco Electronics Corporation was converted to a limited liability company in a conversion transaction pursuant to section 266 of the Delaware General Corporation Law, effective as of 11:59 p.m. December 31, 2003, and changed its name at that time to Delco Electronics LLC.

Effective January 1, 2004, Delco Electronics LLC is a single-member limited liability company. Its sole member is Delphi Corporation (through its single member limited liability company, Delphi Automotive Systems LLC, a disregarded entity), which was also the sole shareholder of Delco Electronics Corporation. For tax years subsequent to 2003, Delco Electronics LLC's activity, as a single-member disregarded entity, will be reported by Delphi Corporation under its FEIN of 38-3430473.



### UNITED STATES OF AMERICA
### State of Louisiana

## Fox McKeithen
### SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*
an Amended Application form of

DELCO ELECTRONICS CORPORATION

Organized under the laws of DELAWARE,

Converting the corporation to a limited liability company,
and changing the name to

DELCO ELECTRONICS LLC

Was filed and recorded in this Office on January 16, 2004.

*In testimony whereof, I have hereunto set
my hand and caused the Seal of my Office
to be affixed at the City of Baton Rouge on,*

January 16, 2004

*Fox McKeithen*

MBE 34211229Q 35629231

*Secretary of State*



## United States of America
## State of Louisiana

### Fox McKeithen
### SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*

DELCO ELECTRONICS LLC

A DELAWARE limited liability company domiciled at
WILMINGTON,

Filed charter and qualified to do business in this State on
June 18, 1986,

I further certify that the records of this Office indicate
the company has paid all fees due the Secretary of State,
and so far as the Office of the Secretary of State is
concerned, is in good standing and is authorized to do
business in this State.

I further certify that this certificate is not intended to
reflect the financial condition of this company since this
information is not available from the records of this
Office.

*In testimony whereof, I have hereunto set
my hand and caused the Seal of my Office
to be affixed at the City of Baton Rouge on,*

February 5, 2004

MBE 34211229Q

*Secretary of State*

CERTIFICATE SS 102 PRINTED SEAL (08/03)

APPLICATION FOR AUTHORITY
TO TRANSACT BUSINESS IN LOUISIANA
(R.S. 12:1345)

W. Fox McKeithen
Secretary of State

Foreign Limited Liability Company
Enclose $125.00 filing fee
Make remittance payable to
Secretary of State
Do Not Send Cash

Return to: Commercial Division
P. O. Box 94125
Baton Rouge, LA 70804-9125
Phone (225) 925-4704
Web site: www.sec.state.la.us

Check one: ( ) Non Profit   ( ) Business

Check one: ( ) Original Application   (X) Amended Application

STATE OF Indiana

PARISH/COUNTY OF Howard

1. Limited liability company name: Delco Electronics LLC

2. Previous company name: Delco Electronics Corporation

3. Date of organization: 08/09/1985   Period of duration: Perpetual

4. Principal office address in state or country of organization:

1209 Orange Street, Wilmington, DE 19801

5. Principal business office address (outside Louisiana):

5725 Delphi Drive, Troy, MI 48098-2815

PLEASE INCLUDE COMPLETE STREET ADDRESSES FOR THE FOLLOWING.

6. Principal business establishment in Louisiana:

8550 United Plaza Boulevard, Baton Rouge, LA 70809

FOX McKEITHEN
SECRETARY OF STATE
RECEIVED & FILED
DATE JAN 16 2004

7. Registered office address in Louisiana:

8550 United Plaza Boulevard, Baton Rouge, LA 70809

8. Registered agent's name and address in Louisiana:

C T CORPORATION SYSTEM, 8550 United Plaza Boulevard, Baton Rouge, LA 70809

9. Nature of business to be transacted in Louisiana: automotive parts manufacturing

Manager

Title and Date

To be signed by a Member/Manager
Jeffrey J. Owens

Sworn to and subscribed before me, the undersigned Notary Public on this date   1-14-2004

Sarah A. Buli
Notary

OMAR A BERLIN
NOTARY PUBLIC OAKLAND COUNTY
MY COMMISSION EXPIRES JUN 3, 2006
ACTING IN OAKLAND COUNTY

AGENT'S ACCEPTANCE AND ACKNOWLEDGEMENT OF APPOINTMENT

I hereby acknowledge and accept the appointment of registered agent for and on behalf of the above named limited liability

DORIS JEAN DONATI
Notary Public, Wayne County, MI
My Commission Expires Mar. 3, 2007
ACTING IN Oakland CHY

CT CORPORATION SYSTEM

Claudia N. Reese
Registered Agent

Claudia L. Saab
Asst. Secretary

1-15-04
(Date)

Sworn to and subscribed before me on this date

Doris Jean Donati
(Notary)

DORIS JEAN DONATI
Notary Public, Wayne County, MI
My Commission Expires Mar. 3, 2007



# Delaware

PAGE  1

## The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE DO HEREBY CERTIFY THAT THE CERTIFICATE OF CONVERSION OF A DELAWARE CORPORATION "DELCO ELECTRONICS CORPORATION" TO A DELAWARE LIMITED LIABILITY COMPANY OF "DELCO ELECTRONICS LLC", WAS FILED IN THIS OFFICE ON THE EIGHTEENTH DAY OF DECEMBER, A.D. 2003, AT 1:44 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF CONVERSION IS THE THIRTY-FIRST DAY OF DECEMBER, A.D. 2003, AT 11:59 O'CLOCK P.M.



_Harriet Smith Windsor_
Harriet Smith Windsor, Secretary of State

2068534  8317

040028604

AUTHENTICATION: 2870223

DATE: 01-14-04

** TOTAL PAGE.07 **

# Exhibit D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :
      In re                     :     Chapter 11
                           :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                           :
               Debtors.   :     (Jointly Administered)
                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF BAR DATE FOR FILING PROOFS OF CLAIM

TO ALL CREDITORS OF THE DEBTORS, AND OTHER PARTIES-IN-INTEREST:

PLEASE TAKE NOTICE THAT:

        In accordance with an order entered on April ___, 2006 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in the above-captioned chapter 11 cases (the "Bar Date Order"), **5:00 p.m. Eastern Time on July 31, 2006** (the "General Bar Date") has been established as the last date for each person or entity (including individuals, partnerships, corporations, limited liability companies, estates, trusts, unions, indenture trustees, the United States Trustee, and governmental units) (individually, a "Person" or "Entity," and collectively, "Persons" or "Entities") to file a proof of claim in the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").  A list of all Debtors in these chapter 11 cases is attached hereto as Exhibit A.

        On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions in the Bankruptcy Court for reorganization relief under the Bankruptcy Code.  The term "Petition Date" shall mean the date on which each Debtor filed its chapter 11 bankruptcy petition as set forth on Exhibit A attached hereto.  The General Bar Date and the procedures set forth below for filing proofs of claim apply to all claims against the Debtors that arose before the applicable Petition Date, except for those holders of the claims listed in Section 4 below which are specifically excluded from the General Bar Date filing requirement.

### 1.      Who Must File A Proof Of Claim

        You MUST file a proof of claim to vote on a chapter 11 plan filed by the Debtors or to share in distributions from the Debtors' bankruptcy estates if you have a claim against any of the Debtors that arose prior to the applicable Petition Date, and such claim is not one of the types of claim described in Section 4 below.  Claims based on acts or omissions of the Debtors that occurred before the applicable Petition Date must be filed on or prior to the General Bar Date, even if such claims are not now fixed,

liquidated, or certain or did not mature or become fixed, liquidated, or certain before the applicable Petition Date.

Under section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

## 2.      What To File

The Debtors are enclosing a proof of claim form which you may use to file any claim you may have in these cases.  If the Debtors scheduled you as a creditor in any of the Debtors' schedules of assets and liabilities (as amended from time to time, the "Schedules"), the form sets forth the amount of your claim as scheduled and whether the claim is scheduled as disputed, contingent, or unliquidated.  Additional proof of claim forms may be obtained at http://www.uscourts.gov/bkforms/index.html or at http://www.delphidocket.com.

All proofs of claim must be signed by the claimant or, if the claimant is not an individual, by a claimant's authorized agent.  All proofs of claim must be written in English and be denominated in United States currency.  You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

If any supporting documentation provided with any proof of claim contains confidential information, such documentation will be subject to examination only by the party asserting the claim, the Debtors, the Debtors' counsel and advisers, the United States Trustee, counsel and advisers to the official committee of unsecured creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC, the claims and noticing agent in these chapter 11 cases, and any personnel of the United States Bankruptcy Court for the Southern District of New York in the performance of their official duties, and such entities have been ordered to maintain the confidentiality of all supporting documentation to any proof of claim and the information contained therein.

Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and each holder of a claim must identify on its proof of claim the specific Debtor against which its claim is asserted and the case number of that Debtor's reorganization case.  A list of the names of the Debtors and their reorganization case numbers is attached hereto as Exhibit A.

## 3.      When And Where To File

Except as provided for herein, all proofs of claim must be filed so as to be received no later than **5:00 p.m. Eastern Time on July 31, 2006** at the following address:

If sent by mail:                             If sent by messenger or overnight courier:

United States Bankruptcy Court               United States Bankruptcy Court
Southern District of New York                Southern District of New York
Delphi Corporation Claims                    Delphi Corporation Claims
Bowling Green Station                        One Bowling Green
P.O. Box 5058                                Room 534
New York, New York 10274-5058                New York, New York 10004-1408

**Proofs of claim will be deemed filed only when actually received at the addresses above on or before the General Bar Date.** Proofs of claim may not be delivered by facsimile, telecopy, or electronic mail transmission.

Governmental units must file proofs of claims in these chapter 11 cases on or prior to the General Bar Date.

**4.      Who Need Not File A Proof Of Claim**

You do not need to file a proof of claim on or prior to the General Bar Date if you are:

(a)      Any Person or Entity (i) which agrees with the nature, classification, and amount of its Claim set forth in the Schedules and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

(b)      Any Person or Entity which has already properly filed a proof of claim against the correct Debtor;

(c)      Any Person or Entity which asserts a Claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' chapter 11 cases;

(d)      Any Person or Entity which asserts a Claim solely on the basis of future pension or other post-employment benefits, including, without limitation, retiree health care and life insurance; provided, however, that any such Person or Entity which wishes to assert a Claim against any of the Debtors based on anything other than future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;[1]

(e)      Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

---

[1] The bar date for the filing of Proofs of Claim on account of Claims arising from modification to or termination of future pension or other post-employment benefits will be determined pursuant to an order of the Bankruptcy Court approving such modification or termination.

(f)    Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of the Bankruptcy Court;

(g)    Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior unsecured debt (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033 (collectively, the "Senior Unsecured Securities"), other than the indenture trustees of the Senior Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Senior Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)    Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

This notice is being sent to many persons and entities which have had some relationship with or have done business with the Debtors but may not have an unpaid claim against the Debtors.  The fact that you have received this Notice does not necessarily mean that you have a claim or that the Debtors or the Bankruptcy Court believe that you have a claim against the Debtors.

## 5.    Executory Contracts And Unexpired Leases

Any person or entity which has a claim arising from the rejection of an Executory Contract must file a proof of claim on account of such claim against the Debtors on or before the later of (a) the General Bar Date or (b) 30 calendar days after the effective date of such rejection or such other date as fixed by the Bankruptcy Court in an order authorizing such rejection.

## 6.    Amended Schedule Bar Date

4

If the Debtors amend the Schedules on or after the date of this Notice (listed below) to reduce the undisputed, noncontingent, and liquidated amounts or to change the nature or classification of a claim against a Debtor reflected therein, the bar date for filing a proof of claim in respect of such amended schedule claim is the later of (a) the General Bar Date or (b) 30 calendar days after a claimant is served with notice that the Debtors have amended their Schedules.

**7.      Consequences Of Failure To File A Proof Of Claim By The General Bar Date**

ANY HOLDER OF A CLAIM WHICH IS NOT EXCEPTED FROM THE REQUIREMENTS OF THIS NOTICE, AS SET FORTH IN SECTION 4 ABOVE, AND WHICH FAILS TO TIMELY FILE A PROOF OF CLAIM IN THE APPROPRIATE FORM, WILL BE BARRED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR CHAPTER 11 ESTATES, FROM VOTING ON ANY PLAN OF REORGANIZATION FILED IN THESE CASES, AND FROM PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CASES ON ACCOUNT OF SUCH CLAIM.

**8.      The Debtors' Schedules And Access Thereto**

You may be listed as the holder of a claim against the Debtors in any of the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases.

To determine if and how you are listed on any of the Schedules, please refer to the descriptions set forth on the enclosed proof of claim forms regarding the nature, amount, and status of your claim(s).

As set forth above, if you agree with the nature, amount, and status of your claim as listed in any of the Debtors' Schedules, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a proof of claim. Otherwise, or if you decide to file a proof of claim, you must do so before the General Bar Date in accordance with the procedures set forth in this Notice.

Copies of any of the Debtors' Schedules are available for inspection online at http://www.delphidocket.com or on the Court's Internet Website at http://www.nysb.uscourts.gov.  A login and password to the Court's Public Access to Electronic Court Records ("PACER") are required to access this information on the Court's Internet Website and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov.  No login or password is required to access this information on the Debtors' Legal Information Website (http://www.delphidocket.com). Copies of any of the Schedules may also be examined between the hours of 9:00 a.m. and 4:30 p.m., Monday through Friday at the Office of the Clerk of the Bankruptcy Court, One Bowling Green, Room 511, New York, New York 10004-1408.

A holder of a possible claim against any of the Debtors should consult an attorney regarding any matters not covered by this Notice, such as whether the holder should file a proof of claim.

Dated:  New York, New York                          BY ORDER OF THE COURT
        April___, 2006

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        John Wm. Butler, Jr.
        John K. Lyons
        Ron E. Meisler
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois  60606
        (312) 407-0700

          - and -


         Kayalyn A. Marafioti (KM 9632)
         Thomas J. Matz (TM 5986)
         Four Times Square
         New York, New York 10036
         (212) 735-3000

        Attorneys for Delphi Corporation, et al.,
           Debtors and Debtors-in-Possession

## EXHIBIT A

|  | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 1. | Delphi NY Holding Corporation | 20-3383408 | 05-44480 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 2. | Delphi International Holdings Corp. | 38-3449527 | 05-44591 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 3. | Delphi Corporation | 38-3430473 | 05-44481 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 4. | Delphi Automotive Systems Overseas Corporation | 38-3318021 | 05-44593 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 5. | ASEC Manufacturing General Partnership | 73-1474201 | 05-44482 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 6. | Delphi Automotive Systems (Holding), Inc. | 38-3422378 | 05-44596 | 5785 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 7. | ASEC Sales General Partnership | 73-1474151 | 05-44484 | 1301 Main Parkway Catoosa, OK 74015 | October 8, 2005 |
| 8. | Delco Electronics Overseas Corporation | 38-2638990 | 05-44610 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 9. | Environmental Catalysts, LLC | | 05-44503 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 10. | Delphi Diesel Systems Corp. | 38-3505001 | 05-44612 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 11. | Delphi Medical Systems Colorado Corporation | 84-1524184 | 05-44507 | 4300 Road 18 Longmont, CO 80504 | October 8, 2005 |

7

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 12. | Delphi LLC | 37-1438255 | 05-44615 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 13. | Delphi Medical Systems Texas Corporation | 20-2885110 | 05-44511 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 14. | Aspire, Inc. | 36-4392806 | 05-44618 | U.S. Route 1 Morrisville, PA 19067 | October 8, 2005 |
| 15. | Delphi Medical Systems Corporation | 32-0052827 | 05-44529 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 16. | Delphi Integrated Service Solutions, Inc. | 38-3473261 | 05-44623 | 1322 Rankin Street Troy, MI 48083 | October 8, 2005 |
| 17. | Specialty Electronics International Ltd. | 66-0522490 | 05-44536 | 69A Kronprindsens Gade (Third Floor) P.O. Box 1858 St. Thomas, VI | October 8, 2005 |
| 18. | Delphi Connection Systems | 95-2563022 | 05-44624 | 17150 Von Karman Avenue Irvine, CA 92614 | October 8, 2005 |
| 19. | Specialty Electronics, Inc. | 57-0755068 | 05-44539 | 19200 Asheville Highway P.O. Box 519 Landrum, SC 29356 | October 8, 2005 |
| 20. | Packard Hughes Interconnect Company | 33-0595219 | 05-44626 | 17150 Von Karman Avenue Irvine, CA 92614-0901 | October 8, 2005 |
| 21. | Delphi Liquidation Holding Company | 95-4359324 | 05-44542 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 22. | DREAL, Inc. | 38-3457411 | 05-44627 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 23. | Delphi Electronics (Holding) LLC | 95-4554161 | 05-44547 | One Corporate Center Kokomo, IN 46904-9005 | October 8, 2005 |

8

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 24. | Delphi Automotive Systems Services LLC | 38-3568834 | 05-44632 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 25. | Delphi Technologies, Inc. | 38-3430681 | 05-44554 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 26. | Delphi Services Holding Corporation | 20-0577653 | 05-44633 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 27. | Delphi Automotive Systems Tennessee, Inc. | 38-3319836 | 05-44558 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 28. | Delphi Automotive Systems Global (Holding), Inc. | 38-3547659 | 05-44636 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 29. | Delphi Mechatronic Systems, Inc. | 38-3589834 | 05-44567 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 30. | Delphi Foreign Sales Corporation | 66-0564421 | 05-44638 | Chase Trade, Inc. Post Office Box 309420 55-11 Conacao Gade Charlotte Amalie St. Thomas, VI 00803-9420 | October 8, 2005 |
| 31. | Delphi Automotive Systems Risk Management Corp. | 38-3575299 | 05-44570 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 32. | Delphi Automotive Systems Human Resources LLC | 38-3547664 | 05-44639 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |
| 33. | Exhaust Systems Corporation | 38-3211473 | 05-44573 | 4800 S. Saginaw Street Flint, MI 48501 | October 8, 2005 |
| 34. | Delphi Automotive Systems LLC | 38-3431131 | 05-44640 | 5725 Delphi Drive Troy, MI 48098 | October 8, 2005 |

9

| | Entity | Tax / Federal ID Number | Case Number | Address | Date Of Petition Filing |
|---|---|---|---|---|---|
| 35. | Delphi China LLC | 38-3196159 | 05-44577 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 36. | Delphi Furukawa Wiring Systems LLC | 20-2478586 | 05-47452 | 5725 Delphi Drive Troy, MI 48098-281 | October 14, 2005 |
| 37. | Delphi Automotive Systems Korea, Inc. | 38-2849490 | 05-44580 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 38. | Delphi Receivables LLC | 61-1446224 | 05-47459 | 5725 Delphi Drive Troy, MI 48098-2815 | October 14, 2005 |
| 39. | Delphi International Services, Inc. | 38-3439894 | 05-44583 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 40. | MobileAria, Inc. | 31-1695929 | 05-47474 | 800 West El Camino Real Suite 240 Mountain View, CA 94040 | October 14, 2005 |
| 41. | Delphi Automotive Systems Thailand, Inc. | 38-3379709 | 05-44586 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |
| 42. | Delphi Automotive Systems International, Inc. | 38-3280289 | 05-44589 | 5725 Delphi Drive Troy, MI 48098-2815 | October 8, 2005 |

# Exhibit E

CIFT-620 (01-03)
**Louisiana Department of Revenue**
Post Office Box 91011
Baton Rouge, LA 70821-9011

Please enter your Revenue Account Number here: **5786595001**

Please print corporation name, and complete mailing address below.

For office use only.

| Louisiana Corporation **Income Tax** Return for **2002** or Fiscal Year | Louisiana Corporation **Franchise Tax** Return for **2003** or Fiscal Year |
|---|---|
| Begun _____, 2002 Ended _____, 2003 | Begun _____, 2003 Ended _____, 2004  [x] |

Mark if this is an amended return.

Mark if your address has changed. [ ]

Calendar year returns are due April 15. See instructions for fiscal years.

DELCO ELECTRONICS CORPORATION
P.O. BOX 5086

TROY, MI 48007-5086

# COPY

| | | |
|---|---|---|
| A. Federal Employer Identification Number ▶ | A. | 38-2633811 |
| B. Federal taxable income ▶ | B. $ | 19,518,129 00 |
| C. Federal income tax ▶ | C. $ | 0 00 |
| D. Income tax apportionment percentage (two decimal places) ▶ | D. | 1.04 % |
| E. Gross revenues ▶ | E. $ | 4,742,928,284 00 |

| | | |
|---|---|---|
| F. Total assets ▶ | F. $ | 2,282,492,623 00 |
| G. Business code number ▶ G. | 336300 | |

H. Was the income of this corporation included in a consolidated federal income tax return? ▶ H. [x Yes]

I. Is an Apportionment and Allocation Schedule (CIFT-620A) included with this return? ▶ I. [x Yes]

## Computation of Income Tax

| | | |
|---|---|---|
| 1A. Louisiana net income before loss adjustments and federal income tax deduction (Sch. D, Line 14, or Sch. P, Line 33) ▶ | 1A. | 3,493,788 00 |
| 1B. S corporation exclusion (See instructions.) Attach schedule. ▶ | 1B. | 0 00 |
| 1C. Loss carryforward ($ 550,347 ) less federal tax refund applicable to loss ($ 0) Attach schedule. ▶ | 1C. | 550,347 00 |
| 1D. Loss carryback ($ 771,327 ) less federal tax refund applicable to loss ($ 0) Attach schedule. ▶ | 1D. | 771,327 00 |
| 1E. Federal income tax deduction (See instructions.) ▶ | 1E. | 0 00 |
| 1F. Louisiana taxable income (Subtract Lines 1B, 1C, 1D, and 1E from Line 1A.) ▶ | 1F. | 2,172,114 00 |
| 2. Louisiana income tax (Schedule E, Line 4) ▶ | 2. | 170,019 00 |
| 3. Credits: A. New Jobs Credit (Limited to 50% of net tax. See instructions.) ▶ 3A. | 0 00 | |
| B. Enterprise Zone Credit ▶ 3B. | 0 00 | |
| C. Louisiana Capital Companies Credit ▶ 3C. | | |
| D. Other credits. Explain (Do not include ad valorem credit. See Line 15.) ▶ 3D. | 0 00 | |
| E. Total nonrefundable credits (Add Lines 3A through 3D.) ▶ | 3E. | 0 00 |
| 4. Income tax after credits (Subtract Line 3E from Line 2.) ▶ | 4. | 170,019 00 |
| 5. Less prepayments (Schedule I, Line 6)   TAX PAID WITH ORIGINAL RETURN ▶ | 5. | 164,600 00 |
| 6. Amount of income tax due or overpayment (Subtract Line 5 from Line 4.) ▶ | 6. | 5,419 00 |

## Computation of Franchise Tax

| | | |
|---|---|---|
| 7A. Total capital stock, surplus, undivided profits, & borrowed capital (Sch. A, Line 32, Col. 3) ▶ 7A. | 1,375,411,006 00 | |
| 7B. Franchise tax apportionment percentage (Schedule N, Line 5, of CIFT-620A) (Carry to 2 decimal places or 100.00%.) ▶ | 7B. | 1.54 % |
| 7C. Franchise taxable base (Multiply Line 7A by Line 7B.) ▶ | 7C. | 21,181,329 00 |
| 8. Amount of assessed value of real and personal property in Louisiana in 2002 ▶ | 8. | 0 00 |
| 9. Louisiana franchise tax (Schedule F, Line 6) ▶ | 9. | 63,094 00 |
| 10. Credits: A. Enterprise Zone Credit ▶ 10A. | 0 00 | |
| B. Other credits. Explain. (Do not include ad valorem credit. See Line 15.) ▶ 10B. | 0 00 | |
| C. Total credits (Add Lines 10A and 10B.) ▶ | 10C. | 0 00 |
| 11. Franchise tax after credits (Subtract Line 10C from Line 9.) ▶ | 11. | 63,094 00 |
| 12. Less previous payments ▶ | 12. | 63,094 00 |
| 13. Amount of franchise tax due or overpayment (Subtract Line 12 from Line 11.) ▶ | 13. | 0 00 |

## Net Amount Due

| | | |
|---|---|---|
| 14. Total income and franchise tax due or overpayment (Add Lines 6 and 13.) ▶ | 14. | 5,419 00 |
| 15. Refundable credits (See instructions.) | | |
| A. Inventory Credit ▶ 15A. | 0 00 | |
| B. Telephone Company Property Credit ▶ 15B. | 0 00 | |
| C. Prison Industry Enhancement (PIE) ▶ 15C. | 0 00 | |
| D. Total refundable credits ▶ | 15D. | 0 00 |
| 16. Net income and franchise tax due or overpayment (Subtract Line 15D from Line 14.) ▶ | 16. | 5,419 00 |
| 17. Penalties (See instructions.) ▶ | 17. | 00 |
| 18. Interest (Enter 1.25% per month from due date of return to date of payment.) ▶ | 18. | 00 |
| 19. Total amount due (Add Lines 16 through 18.) Make payment to Louisiana Department of Revenue. DO NOT SEND CASH. ▶ | 19. | SEE STMT. 5,419 00 |
| 20. Amount of overpayment you want REFUNDED ▶ 20. | 0 00 | |
| 21. Amount of overpayment you want CREDITED to 2003 tax ▶ 21. | 00 | |



**2301**

STF
STF LA34811F.1

ALL APPLICABLE SCHEDULES MUST BE COMPLETED.                                                                                  Page 2

## SCHEDULE A — BALANCE SHEET AND CORPORATION FRANCHISE TAXABLE BASE

| ASSETS | 1. Beginning of year | 2. End of year | 3. End of year |
|---|---|---|---|
| 1. Cash | SAME | AS | |
| 2. Trade notes and accounts receivable | | | |
| 3. Reserve for bad debts | ( ) | ( ) | |
| 4. Inventories | LAST | FILED | |
| 5. Investment in United States government obligations | | | |
| 6. Other current assets (Attach schedule.) | | | |
| 7. Loans to stockholders | | | |
| 8. Stock and obligations of subsidiaries | | | |
| 9. Other investments (Attach schedule.) | | | |
| 10. Buildings and other fixed depreciable assets | | | |
| 11. Accumulated amortization and depreciation | ( ) | ( ) | |
| 12. Depletable assets | | | |
| 13. Accumulated depletion | ( ) | ( ) | |
| 14. Land | | | |
| 15. Intangible assets | | | |
| 16. Accumulated amortization | ( ) | ( ) | |
| 17. Other assets (Attach schedule.) | | | **TOTAL FRANCHISE TAXABLE BASE** (Extend to Column 3, amounts in Column 2 that are includable in the franchise taxable base.) |
| 18. Excessive reserves or undervalued assets (Attach schedule.) | | | |
| 19. Totals (Add Lines 1 through 18.) | 0 | 0 | |

### LIABILITIES AND CAPITAL

| | 1. Beginning of year | 2. End of year | 3. End of year |
|---|---|---|---|
| 20. Accounts payable | | | |
| 21. Mortgages, notes, and bonds payable (one year old or less at balance sheet date and having a maturity of one year or less from original date incurred) (Complete Schedule B.) | | | |
| 22. Other current liabilities (Attach schedule.) | | | |
| 23. Loans from stockholders (Attach schedule.) | | | |
| 24. Due to subsidiaries and affiliates | | | |
| 25. Mortgages, notes, and bonds payable (more than one year old at balance sheet date or having a maturity of more than one year from original date incurred) | | | |
| 26. Other liabilities (Attach schedule.) | | | |
| 27. Capital stock:   a.  Preferred stock | | | |
|            b.  Common stock | | | |
| 28. Paid-in or capital surplus | | | |
| 29. Surplus reserves (Attach schedule.) | | | |
| 30. Earned surplus and undivided profits | | | |
| 31. Excessive reserves or undervalued assets | | | |
| 32. Totals (Add Lines 20 through 31. Enter the Column 3 total on Page 1, Line 7A. Round to the nearest dollar.) | | | |

## SCHEDULE B — ANALYSIS OF SCHEDULE A, COLUMN 2, LINES 21, 23, AND 26

| Original date of inception | Due date | Payee | Installment amount | Balance due | Taxable amount |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

## SCHEDULE C — ANALYSIS OF SCHEDULE A, COLUMN 2, LINE 30 (EARNED SURPLUS AND UNDIVIDED PROFITS PER BOOKS)

| | | | |
|---|---|---|---|
| 1. Balance at beginning of year | | 5. Distributions:  a.  Cash | |
| 2. Net income per books | | b.  Stock | |
| 3. Other increases (Itemize.) | | c.  Property | |
| | | 6. Other decreases (Itemize.) | |
| | | 7. Total (Add Lines 5 and 6.) | |
| 4. Total (Add Lines 1, 2, and 3.) | | 8. Balance at end of year (Subtract Line 7 from Line 4.) | |

Under the penalties of perjury, I declare that I have examined this return, including all accompanying documents, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which he has any knowledge

**Signature**

Signature: *Denise C. Olbrecht*   DENISE C. OLBRECHT    Date  6/28/06
DIRECTOR, STATE INCOME TAXES
Title of officer
248-813-8050
Telephone

Signature of preparer                     Date

Firm name

Telephone

**2302**

STF LA34811F 2

ALL APPLICABLE SCHEDULES MUST BE COMPLETED. (Schedule D need not be completed if Schedule P of Form CIFT-620A is filed with this return.)

## SCHEDULE D — COMPUTATION OF LOUISIANA TAXABLE INCOME

| | | |
|---|---|---|
| 1. Federal net income | 1. | |
| **ADDITIONS TO FEDERAL NET INCOME** | | |
| 2. Net operating loss deduction claimed on federal return | 2. | |
| 3. Dividends received deduction claimed on federal return | 3. | |
| 4. Louisiana income tax deducted on federal return | 4. | |
| 5. Interest on obligations of other states or their political subdivisions | 5. | |
| 6. Other additions to federal net income (Attach schedule.) | 6. | |
| 7. Total additions (Add Lines 2 through 6.) | 7. | |
| **SUBTRACTIONS FROM FEDERAL NET INCOME** | | |
| 8. Refunds of Louisiana income tax reported on federal return | 8. | |
| 9. Corporate dividends that have borne Louisiana income tax | 9. | |
| 10. Louisiana depletion in excess of federal depletion (Attach schedule.) | 10. | |
| 11. Expenses not deducted on the federal return due to Internal Revenue Code Section 280(C) | 11. | |
| 12. Other subtractions (Attach schedule.) | 12. | |
| 13. Total subtractions (Add Lines 8 through 12.) | 13. | |
| 14. Louisiana net income before S corporation exclusion, loss adjustments, and federal income tax deduction (Line 1 plus Line 7, less Line 13. Enter here and on Page 1, Line 1A. Round to the nearest dollar.) | 14. | |

## SCHEDULE E — CALCULATION OF INCOME TAX / SCHEDULE F — CALCULATION OF FRANCHISE TAX

**SCHEDULE E — CALCULATION OF INCOME TAX**

1. Enter the net taxable income from Page 1, Line 1F.  **2,172,114**

2. Calculation of tax

| | Column 1 | | Column 2 |
|---|---|---|---|
| | Net income in each bracket | RATE | TAX |
| a. First $25,000 of net income | 25,000 | ×4% = | 1,000 |
| b. Next $25,000 | 25,000 | ×5% = | 1,250 |
| c. Next $50,000 | 50,000 | ×6% = | 3,000 |
| d. Next $100,000 | 100,000 | ×7% = | 7,000 |
| e. Over $200,000 | 1,972,114 | ×8% = | 157,769 |

3. Add Lines 2a through 2e of Column 1 and enter here.  **2,172,114**

4. Add Lines 2a through 2e of Column 2. Enter here and on Page 1, Line 2. Round to the nearest dollar.  **170,019**

**SCHEDULE F — CALCULATION OF FRANCHISE TAX**

1. Enter amount from Page 1, Line 7C or 8, whichever is greater.  **21,181,329**

2. Enter first $300,000 of Line 1 above.  **300,000**

3. Multiply the amount on Line 2 by $1.50 for each $1,000 or major fraction thereof and enter here.  **450**

4. Subtract Line 2 from Line 1 and enter here.  **20,881,329**

5. Multiply the amount on Line 4 by $3.00 for each $1,000 or major fraction thereof and enter here.  **62,644**

6. Add Lines 3 and 5. Enter the result or $10.00, whichever is greater, here and on Page 1, Line 9. Round to the nearest dollar.  **63,094**

## SCHEDULE G — RECONCILIATION OF FEDERAL AND LOUISIANA NET INCOME
(Complete Schedule G only if filing an apportionment and allocation schedule [Form CIFT-620A] with this return.)

| | | |
|---|---|---|
| 1. Enter total net income calculated under federal law before special deductions. | | 366,245,240 |
| 2. Additions to federal net income: | a. Louisiana income tax | 300,000 |
| | b. Interest on obligations of other states and their political subdivisions | |
| | c. Other | |
| | FOREIGN DIVIDEND GROSS-UP EXPENSES | 7,343 |
| Subtractions from federal net income: | a. Dividends that have borne Louisiana income tax | |
| | b. United States government interest | |
| | c. Other | |
| | SECTION 78 GROSS-UP | 146,861 |
| 3. Louisiana net income from all sources (same as Schedule P, Line 28, of CIFT-620A) | | 366,405,722 |

2303

STF LA34811F.3

**DELCO ELECTRONICS CORPORATION**
F.E.I.N. 38-26338-11

**THIS SCHEDULE SUMMARIZES CHANGES MADE TO FEDERAL TAXABLE INCOME**

**LOUISIANA**

**2002 TAX YEAR**

|  | AS LAST FILED | RAR ADJUSTMENTS | PER AMENDED |
|---|---|---|---|
| FEDERAL TAXABLE INCOME(BEFORE SPECIAL DEDUCTIONS) | 296,983,223 | 69,262,017 | 366,245,240 |
| ADDITIONS: |  |  |  |
| LOUISIANA INCOME TAX | 300,000 | 0 | 300,000 |
| CHARITABLE CONTRIBUTION LIMITATION | 0 | 0 | 0 |
| EXPENSES - FOREIGN DIVIDEND GROSS-UP | 7,343 | 0 | 7,343 |
| TOTAL ADDITIONS | 307,343 | 0 | 307,343 |
| SUBTRACTIONS: |  |  |  |
| CHARITABLE CONTRIBUTION ADJUSTMENT | 211,415 | (211,415) | 0 |
| SECTION 78 GROSS-UP | 146,861 | 0 | 146,861 |
| TOTAL SUBTRACTIONS | 358,276 | (211,415) | 146,861 |
| LOUISIANA NET INCOME FROM ALL SOURCES | 296,932,290 | 69,473,432 | 366,405,722 |
| LESS: ALLOCABLE INCOME FROM ALL SOURCES |  |  |  |
| NET RENTS AND ROYALTIES | 749,104 | 0 | 749,104 |
| NET PROFITS OR LOSSES FROM SALES OR EXCHANGES OF PROPERTY | (4,330,859) | 0 | (4,330,859) |
| OTHER NET ALLOCABLE INCOME | 34,095,803 | (49,505) | 34,046,298 |
| TOTAL ALLOCABLE INCOME | 30,514,048 | (49,505) | 30,464,543 |
| NET INCOME SUBJECT TO APPORTIONMENT | 266,418,242 | 69,522,937 | 335,941,179 |
| APPORTIONMENT FACTOR | 1.0400% | 0 | 1.0400% |
| NET INCOME APPORTIONED TO LOUISIANA | 2,770,750 | 723,039 | 3,493,788 |
| ADD: ALLOCABLE INCOME FROM LOUISIANA SOURCES |  |  |  |
| NET RENTS AND ROYALTIES | 0 | 0 | 0 |
| NET PROFITS OR LOSSES FROM SALES OR EXCHANGES OF PROPERTY | 0 | 0 | 0 |
| OTHER NET ALLOCABLE INCOME | 0 | 0 | 0 |
| TOTAL ALLOCABLE INCOME | 0 | 0 | 0 |
| LOUISIANA NET INCOME BEFORE LOSS AND FEDERAL INCOME TAX DEDUCTION | 2,770,750 | 723,039 | 3,493,788 |
| LESS:  NOL CARRYFORWARD FROM 2001 | 666,373 | (116,026) | 550,347 |
| LESS:  NOL CARRYBACK FROM 2003 | 0 | 771,327 | 771,327 |
| LESS: FEDERAL INCOME TAX DEDUCTION | 0 | 0 | 0 |
| LOUISIANA TAXABLE INCOME | 2,104,377 | 67,738 | 2,172,114 |
| LOUISIANA INCOME TAX | 164,600 | 5,419 | 170,019 |
| LESS PAYMENTS | 164,600 | 0 | 164,600 |
| NET TAX DUE(REFUND) | 0 | 5,419 | 5,419 |

DELCO ELECTRONICS CORPORATION
2002

38-2633811

Louisiana Form 620A, Page 2 - Sch P Detail

Line 29c - Other Net Allocable Income

| TYPE | GROSS AMOUNT | EXPENSES | NET AMOUNT |
|------|-------------:|---------:|-----------:|
| DIVIDENDS | 1,638,457 | 32,769 | 1,605,688 |
| INTEREST | 631,433 | 12,629 | 618,804 |
| PARTNERSHIP INCOME | 32,472,241 | 650,435 | 31,821,806 |
| | 34,742,131 | 695,833 | 34,046,298 |

Allocation Schedule

Delco Electronics Corporation
38-2633811

Summary of Taxable Income
1/1/2002 - 12/31/2002

| Form 1120, Page 1, Line: | | As Previously Filed | Adjustments | Per Amended |
|---|---|---:|---:|---:|
| | | $ | $ | $ |
| 1 | Gross receipts or gross sales | 4,742,928,284 | - | 4,742,928,284 |
| 2 | Less: Cost of goods sold | 3,543,417,729 | - | 3,543,417,729 |
| 3 | Gross profit | 1,199,510,555 | - | 1,199,510,555 |
| 4 | Dividends | 1,785,318 | - | 1,785,318 |
| 5 | Other interest | 631,433 | - | 631,433 |
| 6 | Gross rents | - | - | - |
| 7 | Gross royalties | 805,488 | - | 805,488 |
| 8 | Net capital gains | - | - | - |
| 9 | Ordinary gain or loss | (4,419,244) | - | (4,419,244) |
| 10 | Other income | 29,156,598 | (49,505) | 29,107,093 |
| 11 | Total income | 1,227,470,148 | (49,505) | 1,227,420,643 |
| 12 | Compensation of officers | 2,981,598 | - | 2,981,598 |
| 13 | Salaries and wages (not deducted elsewhere) | 251,828,750 | - | 251,828,750 |
| 14 | Repairs | 1,674,927 | - | 1,674,927 |
| 15 | Bad Debts | 2,052,038 | - | 2,052,038 |
| 16 | Rents | 201,005,462 | - | 201,005,462 |
| 17 | Taxes | 16,281,002 | 425,000 | 16,706,002 |
| 18 | Interest | (17,300) | - | (17,300) |
| 19 | Contributions | 262,284 | - | 262,284 |
| 20 | Depreciation | 93,447,622 | - | 93,447,622 |
| 21 | Depr. claimed elsewhere | - | - | - |
| 22 | Depletion | - | - | - |
| 23 | Advertising | - | - | - |
| 24 | Pension, profit sharing, stock bonus, etc. | 67,979,517 | - | 67,979,517 |
| 25 | Employee benefit plans | 51,567,441 | - | 51,567,441 |
| 26 | Other deductions | 241,423,584 | (69,736,522) | 171,687,062 |
| 27 | Total deductions | 930,486,925 | (69,311,522) | 861,175,403 |
| 28 | Taxable income before net operating deduction and special deduction | 296,983,223 | 69,262,017 | 366,245,240 |
| 29 | Less: | | | |
| | (a) Net operating loss deduction | - | 345,350,533 | 345,350,533 |
| | (b) Special deduction | 1,376,578 | - | 1,376,578 |
| 30 | Taxable income | 295,606,645 | (276,088,516) | 19,518,129 |

## Delphi Corporation & Subsidiaries
### 38-3430473

On October 8, 2005, Delphi Corporation and its U.S. Subsidiaries filed voluntary petitions for reorganization under Chapter 11 of the Federal Bankruptcy Code. As such, federal law prohibits payment by Delphi for taxes billed for periods prior to the date of filing ["Pre-petition Taxes"]. According to the automatic stay provision of Section 362(a) of the Bankruptcy Code, payment of pre-petition taxes is prohibited until after a plan of reorganization is accepted by our creditors, and is approved by the bankruptcy court.

Delco Electronics Corporation was converted to a limited liability company in a conversion transaction pursuant to section 266 of the Delaware General Corporation Law, effective as of 11:59 p.m. December 31, 2003, and changed its name at that time to Delco Electronics LLC.

Effective January 1, 2004, Delco Electronics LLC became a single-member limited liability company. Its sole member is Delphi Corporation (through its single member limited liability company, Delphi Automotive Systems LLC, a disregarded entity), which was also the sole shareholder of Delco Electronics Corporation.

On September 30, 2005 Delco Electronics LLC was liquidated, becoming a division of Delphi Automotive Systems LLC.

Information regarding the Delphi reorganization, including court documents, claim forms and instructions for filing claims with the court, is located at the Delphi reorganization website at www.delphidocket.com.

| Form 4549<br>(Rev. 9-2001) | Department of the Treasury - Internal Revenue Service<br>Income Tax Examination Changes | Page 1 | of |
|---|---|---|---|

| Name and Address of Taxpayer | Taxpayer Identification Number<br>38-3430473 | Return Form No.<br>1120 |
|---|---|---|
| DELPHI CORPORATION & SUBSIDIARIES<br>P.O. Box 5086<br>Troy, Mi 48007-5086 | Person with<br>whom examination<br>changes were<br>discussed | Name and Title<br>Mary Lewis<br>Dir., Federal Tax Operations |

| | Year: 12/2001 | Year: 12/2002 | Year: 12/2003 |
|---|---|---|---|
| 1. Adjustments to Income | | | |
| a. Per RAR - Form 4549-B's | 11,071,642 | 978,764,570 | 1,894,305,967 |
| 2. Total Adjustments | 11,071,642 | 978,764,570 | 1,894,305,967 |
| 3. Taxable Income Per Return or as Previously Adjusted | (1,174,216,673) | (1,133,490,485) | (1,897,552,105) |
| 4. Corrected Taxable Income | (1,163,145,031) | (154,725,915) | (3,246,138) |
|     Tax Method<br>    Filing Status | | | |
| 5. Tax | | | |
| 6. Alternative Taxes, If Applicable | 0 | 0 | 0 |
| 7. Alternative Minimum Tax (Starting 2000) | 0 | | 0 |
| 8. Corrected Tax Liability | 0 | 0 | 0 |
| 9. Less Credits:<br>  a. Foreign Tax Credit<br>  b. Other Subpart B Credits<br>  c. General Business Credit<br>  d. Minimum Tax Credit/Academy Bond | <br>0<br>0<br>0<br>0 | <br>0<br>0<br>0<br>0 | <br>0<br>0<br>0<br>0 |
| 10. Balance (Line 8 less total of 9a-9d) | 0 | 0 | 0 |
| 11. Plus Other Taxes:<br>  a. Miscellaneous Tax/Recapture<br>  b. Alternative Minimum Tax (Before 2000)<br>  c. Environmental Tax<br>  d. Other Taxes | <br>0<br>N/A<br>N/A<br>N/A | <br>0<br>N/A<br>N/A<br>N/A | <br>0<br>N/A<br>N/A<br>N/A |
| 12. Total Corrected Income Tax Liability<br>    (Line 10 plus Lines 11a-11d) | 0 | 0 | 0 |
| 13. Total Tax Shown on Return or as Previously Adjusted | 0 | 0 | 0 |
| 14. Adjustments to:<br> a. F1139 Refund-Susp R&E Cr.<br> b.<br> c.<br> d. | <br>0<br>0<br>0<br>0 | <br>0<br>0<br>0<br>0 | <br>0<br>0<br>0<br>0 |
| 15. Deficiency - Increase in Tax<br>    (Overassessment - Decrease in Tax)<br>    (Line 12 less Lines 13 & 14a-14d) | 0 | 0 | 0 |
| 16. Adjustment to Prepayment Credits - incr (decr) | 0 | 0 | 0 |
| 17. Balance Due or (Overpayment) (Line 15 less Line 16)<br>    Excluding interest and penalties | 0 | 0 | 0 |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is shared with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms. You may be subject to backup withholding if you don't report all of the interest, dividend, or patronage dividend income you earned and if you don't pay the required tax. Once the tax has been assessed, you will be issued four notices over a 120-day period. If you don't pay the assessed tax, the IRS may require the payers to withhold a percentage of your dividend and/or interest payments.

| Form 4549<br>(Rev. 9-2001) | Department of the Treasury - Internal Revenue Service<br>Income Tax Examination Changes | Page 2    of |
|---|---|---|

| Name of Taxpayer<br>DELPHI CORPORATION & SUBSIDIARIES | Taxpayer Identification Number<br>38-3430473 | Return Form No.<br>1120 |
|---|---|---|

| 18.  Penalties    Code Section | Year: 12/2001 | Year: 12/2002 | Year: 12/2003 |
|---|---|---|---|
| a. | 0 | 0 | 0 |
| b. | 0 | 0 | 0 |
| c. | 0 | 0 | 0 |
| d. | 0 | 0 | 0 |
| e. | 0 | 0 | 0 |
| f. | 0 | 0 | 0 |
| g. | 0 | 0 | 0 |
| h. | 0 | 0 | 0 |
| i. | 0 | 0 | 0 |
| j. | 0 | 0 | 0 |
| k. | 0 | 0 | 0 |
| l. | 0 | 0 | 0 |
| m. | 0 | 0 | 0 |
| 19.  Total Penalties | 0 | 0 | 0 |
| Underpayment attributable to negligence: (1981-1987)<br>A tax addition of 50 percent of the interest due on<br>underpayment will accrue until paid or assessed. | 0 | 0 | 0 |
| Underpayment attributable to fraud: (1981-1987) A tax<br>addition of 50 percent of the interest due on<br>underpayment will accrue until paid or assessed. | 0 | 0 | 0 |
| Underpayment attributable to Tax Motivated<br>Transactions. (TMT). The interest will accrue and be<br>assessed at 120% of underpayment rate in accordance<br>with IRC Sec. 6621(c) | 0 | 0 | 0 |
| 20. Summary of Taxes Penalties and Interest:<br>a. Balance Due/(Overpayment)  (Line 17)<br>b. Penalties (Line 19) computed to<br>c. Interest (IRC 6601) computed to<br>d. TMT Interest computed to          on TMT Underpayment<br>e. Amount due (refund) - (sum of Lines a-d) | 0<br>0<br>0<br>0<br>0 | 0<br>0<br>0<br>0<br>0 | 0<br>0<br>0<br>0<br>0 |

Other Information:

---

Examiner's Signature

*Wesley S. Bulik*

Name: Wesley S. Bulik

| 38-01110<br>Employee ID | LMSB Gr 1694<br>Office | Date **5-3-06** |
|---|---|---|

Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties shown above, plus additional interest as provided by law. I accept any decrease in tax and penalties shown above. I understand that this report is subject to acceptance by the appropriate IRS official.

PLEASE NOTE: If a joint return was filed, BOTH taxpayers must sign.

| Signature of Taxpayer<br>By<br>JAMES P. WHITSON<br>CHIEF TAX OFFICER | Date<br>19 MAY 2006 | Signature of Taxpayer | Date |
|---|---|---|---|
| | | Title | Date |

FORM 4549 SUPPLEMENT

| Name and Address of Taxpayer | Soc. Sec. or Empoyer Ident. Number |
|---|---|
| Delphi Corporation & Subsidiaries<br>P.O. Box 5086<br>Troy, MI 48007-5086 | 38-3430473<br><br>DELPHI & SUBS. |

SUMMARY OF AUDIT ADJUSTMENTS

| FORM 5701 NO. | ENTITY | DESCRIPTION | 1120 Ln. No. | DR/(CR) 2001 |
|---|---|---|---|---|
| 1 | Delco | Partnership Loss HE Microwave | 10 | (819,314) |
| 2 | Delco | Interest charges related to State tax payments | 5 | (347,019) |
| 2 | Delco | State Tax Payments | 17 | (4,115,986) |
| 3 | DC | Training Fund Expense | 26 | 4,665,831 |
| 4 | DC | State Tax Payments | 17 | 1,936,493 |
| 5 | DC | Depreciation - GM Rollover | 20 | 37,856 |
| 6 | DC | Amort. Of SAP Software Exp | 20 | 2,000,000 |
| 7 | DC | Depreciation - NVA | 20 | 748,664 |
| 8 | DC | Deprec. - NVA GM Rollover | 20 | 3,694,015 |
| 9 | DC | MACRS vs. ADS Deprec. | 20 | (2,479,639) |
| 10 | DC | COGS LIFO Inven. | 2 | 24,000 |
| 11 | DC | Co. Cars revaluated loss | 9 | 12,713,977 |
| 12 | DC | Capitalized Interest | 5 | 877,949 |
| 13 | DAS Tenn | Partnership Inc. Das Tenn | 10 | (5,177,740) |
| 14 | Aspire | State Tax Payments | 17 | 583 |
| 14 | DASRM | State Tax Payments | 17 | 25,000 |
| 14 | DC | State Tax Payments | 17 | 106,484 |
| 14 | Delco | State Tax Payments | 17 | 16,016 |
| 14 | Diesel | State Tax Payments | 17 | 34,775 |
| 14 | Mechatronis | State Tax Payments | 17 | 125,000 |
| 14 | PHIC | State Tax Payments | 17 | (9,701) |
| 14 | PHICS | State Tax Payments | 17 | 3,000 |
| 14 | PHIWS | State Tax Payments | 17 | (15) |
| 14 | Specialty | State Tax Payments | 17 | 6,500 |
| 15 | DASHI | Subpart F Income recapture | 4 | (837,152) |
| 17 | DC | UCC LIFO Adj. | 2 | (131,468) |
| 18 | DC | WOC Wage reduction | 13 | (17,788) |
| 20 | DC | Officer's Compensation | - | - |
| 21 | DC | Deprec. Exp SAP SI Conversion | - | - |
| 22 | Delco | Deprec. Exp. Software | 20 | (1,028,818) |
| 23 | DC | Deprec. Exp. Software | - | - |
| 24 | DC | Deprec. Exp. Software | 20 | (3,595,090) |
| 25 | DC | K-1 Ashimori | - | - |
| 26 | DC | Lightsource Int exp GM Rollover | 18 | 9,294,276 |
| 28 | DC | Delphi NVA Capitalized | 26 | (2,372,842) |
| 29 | DC | Delphi NVA Capitalized | 26 | 237,287 |
| 30 | Delco | Delco NVA Capitalized | 26 | (1,253,883) |
| 31 | Delco | Delco NVA Capitalized | 26 | 125,388 |
| 32 | DC | Delphi SAP Software Capitalized | 26 | (5,349,012) |
| 33 | DC | Delphi SAP Amortized | 26 | 1,783,004 |
| 34 | DC | Patent Contributions 02 & 03 | - | - |
| 35 | DC | Consigned Assets Corrected Deprec. | 20 | (5,418,183) |
| 36 | DTI | Professional Fees Capitalized | - | - |
| 37 | DTI | Professional Fees Amortization | - | - |
| 38 | DC | Policy & warranty Capitalized | 26 | (402,549) |
| 39 | DC | Enviormental Cost Capitalized | 26 | (1,493,545) |
| 40 | DC | Misc. Exp. Capitalized | 26 | (155,525) |
| 41 | DC | Professional Fees Capitalized | 26 | (49,750) |
| 42 | DC | Amortization - Capitalized Costs | 20 | 175,972 |
| 43 | Delco | Professional Fees Capitalized | 26 | - |
| 44 | Delco | Professional Fees Amortization | 26 | - |
| 45 | DC | UNICAP | 26 | - |
| 46 | Delco | UNICAP | 26 | - |
| 47 | DC | Bad Debt Exp | 15 | (140,097) |
| 49 | Various | ETI Recalculation | 26 | (12,720,479) |
| 50 | DC | Inventory Related Restatement Adjustment | 2 | 4,200,000 |
| 50 | DC | Restatement Adjustments | 26 | (1,900,986) |
| 50 | DTI | Restatement Adjustments | 26 | (123,377) |
| 50 | Exhaust | Restatement Adjustments | 26 | (892,738) |
| 51 | DC | NOL Deduction | 29 | - |
| - | DC | 59(e) Amortization | 26 | 279,555 |
| - | DC | Additional 59 (e) Amortizaton | 26 | |
| | | NOL Deduction | | (3,350,577) |
| | | TOTALS | | (11,071,648) |

FORM 4549 SUPPLEMENT

| Name and Address of Taxpayer | Soc. Sec. or Empoyer Ident. Number |
|---|---|
| Delphi Corporation & Subsidiaries<br>P.O. Box 5086<br>Troy, MI 48007-5086 | 38-3430473<br><br>DELPHI & SUBS. |

### SUMMARY OF AUDIT ADJUSTMENTS

| FORM 5701 NO. | ENTITY | DESCRIPTION | 1120 Ln. No. | DR/(CR) 2002 |
|---|---|---|---|---|
| 1 | Delco | Partnership Loss HE Microwave | 10 | 49,505 |
| 2 | Delco | State Tax Payments | 17 | 425,000 |
| 3 | DC | Training Fund Expense | 26 | 14,174,890 |
| 4 | DC | State Tax Payments | 17 | 1,705,000 |
| 5 | DC | Depreciation - GM Rollover | 20 | 37,196 |
| 6 | DC | Amort. Of SAP Software Exp | 20 | 1,333,333 |
| 7 | DC | Depreciation - NVA | 20 | 748,664 |
| 8 | DC | Deprec. - NVA GM Rollover | 20 | 2,341,441 |
| 9 | DC | MACRS vs. ADS Deprec. | 20 | (3,740,125) |
| 10 | DC | COGS LIFO Inven. | 2 | 8,000 |
| 11 | DC | Co. Cars revaluated loss | 9 | 40,893 |
| 12 | DC | Capitalized Interest | 5 | 717,223 |
| 13 | DAS Tenn | Partnership Inc. Das Tenn | 10 | (586,049) |
| 14 | DC | State Tax Payments | 17 | 30,002 |
| 14 | Diesel | State Tax Payments | 17 | 45,000 |
| 14 | Mechatronis | State Tax Payments | 17 | 128,001 |
| 14 | PHICS | State Tax Payments | 17 | 1,500 |
| 14 | Specialty | State Tax Payments | 17 | 16,500 |
| 15 | DASHI | Subpart F Income recapture | 4 | (39,996) |
| 17 | DC | UCC LIFO Adj. | 2 | 60,371 |
| 24 | DC | Deprec. Exp. Software | 20 | (3,838,430) |
| 26 | DC | Lightsource Int exp GM Rollover | 18 | 9,294,276 |
| 28 | DC | Delphi NVA Capitalized | 26 | (2,757,808) |
| 29 | DC | Delphi NVA Amortized | 26 | 750,329 |
| 30 | Delco | Delco NVA Capitalized | 26 | (918,574) |
| 31 | Delco | Delcod NVA Amortized | 26 | 342,834 |
| 32 | DC | Delphi SAP Software Capitalized | 26 | (3,094,894) |
| 33 | DC | Delphi SAP Amortized | 26 | 2,814,835 |
| 34 | DTI | Patent Contributions 02 & 03 | 19 | - |
| 35 | DC | Consigned Assets Corrected Deprec. | 20 | (5,182,840) |
| 36 | DTI | Professional Fees Capitalized | 26 | (807,729) |
| 37 | DTI | Professional Fees Amortization | 26 | 115,424 |
| 38 | DC | Policy & warranty Capitalized | 26 | - |
| 39 | DC | Enviornmental Cost Capitalized | 26 | (134,715) |
| 40 | DC | Misc. Exp. Capitalized | 26 | (121,225) |
| 41 | DC | Professional Fees Capitalized | 26 | (109,635) |
| 42 | DC | Amortization - Capitalized Costs | 26 | 366,278 |
| 43 | Delco | Professional Fees Capitalized | 26 | (72,991) |
| 44 | Delco | Professional Fees Amortization | 26 | 10,430 |
| 47 | DC | Bad Debt Exp | 15 | (445,245) |
| 49 | Various | ETI Recalculation | 26 | 10,198,401 |
| 50 | DC | Inventory Related Restatement Adjustment | 2 | 2,300,002 |
| 50 | DC | Restatement Adjustments | 26 | 12,970,633 |
| 50 | DTI | Restatement Adjustments | 26 | (1,335,878) |
| 50 | Exhaust | Restatement Adjustments | 26 | (2,312,309) |
| 51 | DC | NOL Deduction | 29 | - |
| 52/53 | DC | 59(e) Amortization | 26 | 279,555 |
| 52/53 | DC | Additional 59 (e) Adjustments | 26 | (865,293,899) |
| 52/53 | DTI | Additional 59 (e) Adjustments | 26 | (29,362,460) |
| 52/53 | Exhaust | Additional 59 (e) Adjustments | 26 | (16,615,443) |
| 52/53 | PHIC | Additional 59 (e) Adjustments | 26 | (438,186) |
| 52/53 | Mechatronis | Additional 59 (e) Adjustments | 26 | (10,497,267) |
| 52/53 | Delco | Additional 59 (e) Adjustments | 26 | (81,292,745) |
| 52/53 | DC | Additional 59 (e) Amortizaton | 26 | - |
| | | NOL Deduction | | (11,071,642) |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | TOTAL ADJ. B4 C.C. ADJ. & NOL DEDUCTION | | (978,764,569) |

FORM 4549 SUPPLEMENT

| Name and Address of Taxpayer | Soc. Sec. or Empoyer Ident. Number |
|---|---|
| Delphi Corporation & Subsidiaries<br>P.O. Box 5086<br>Troy, MI 48007-5086 | 38-3430473<br><br>DELPHI & SUBS. |

SUMMARY OF AUDIT ADJUSTMENTS

| FORM<br>5701<br>NO. | ENTITY | DESCRIPTION | 1120<br>Ln. No. | DR/(CR)<br><br>2003 |
|---|---|---|---|---|
| 20 | DC | Officer's Compensation | 12 | (5,026,945) |
| 21 | DC | Deprec. Exp SAP SI Conversion | 20 | (39,203,942) |
| 23 | DC | Deprec. Exp. Software | 20 | (2,162,554) |
| 25 | DC | K-1 Ashimori | 10 | (49,683) |
| 28 | DC | Delco NVA Capitalized | 26 | (3,387,746) |
| 29 | DC | Delco NVA Capitalized | 26 | 1,364,865 |
| 30 | Delco | Delphi NVA Capitalized | 26 | (1,089,756) |
| 31 | Delco | Delphi NVA Capitalized | 26 | 543,467 |
| 32 | DC | Delphi SAP Software Capitalized | 26 | (678,898) |
| 33 | DC | Delphi SAP Amortized | 26 | 3,040,935 |
| 34 | DTI | Patent Contributions 02 & 03 | 19 | - |
| 35 | DC | Consigned Assets Corrected Deprec. | 20 | (6,291,798) |
| 37 | DTI | Professional Fees Amortization | 26 | 197,813 |
| 40 | DC | Misc. Exp. Capitalized | 26 | (193,114) |
| 41 | DC | Professional Fees Capitalized | 26 | (173,904) |
| 42 | DC | Amortization - Capitalized Costs | 26 | 389,875 |
| 44 | Delco | Professional Fees Amortization | 26 | 17,875 |
| 45 | DC | UNICAP | 2 | (30,884,632) |
| 46 | Delco | UNICAP | 2 | (1,849,351) |
| 47 | DC | Bad Debt Exp | 15 | (1,034,127) |
| 49 | Various | ETI Recalculation | 26 | 4,965,518 |
| 50 | DC | Inventory related Restatements | 2 | (4,151,439) |
| 50 | DC | Restatement Adjustments | 26 | (307,056) |
| 50 | Delco | Restatement Adjustments | 26 | 1,333,240 |
| 50 | DTI | Restatement Adjustments | 26 | 260,427 |
| 50 | Exhaust | Restatement Adjustments | 26 | 1,632,802 |
| 52/53 | DC | 59(e) Amortization | 26 | 279,555 |
| 52/53 | DC | Additional 59 (e) Adjustments | 26 | (773,677,000) |
| 52/53 | DTI | Additional 59 (e) Adjustments | 26 | (20,418,858) |
| 52/53 | Exhaust | Additional 59 (e) Adjustments | 26 | (10,321,340) |
| 52/53 | PHIC | Additional 59 (e) Adjustments | 26 | (572,816) |
| 52/53 | Mechatronics | Additional 59 (e) Adjustments | 26 | (8,714,004) |
| 52/53 | Delco | Additional 59 (e) Adjustments | 26 | (30,595,982) |
| | | NOL Deduction | | (967,792,934) |
| | | 2003 Absorbed Contribution | | 245,540 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | TOTAL ADJ. | | (1,894,305,967) |

FORM 4549 SUPPLEMENT

| Name and Address of Taxpayer | Soc. Sec. or Empoyer Ident. Number |
|---|---|
| Delphi Corporation & Subsidiaries<br>P.O. Box 5086<br>Troy, MI 48007-5086 | 38-3430473<br><br>DELCO |

## SUMMARY OF AUDIT ADJUSTMENTS

| FORM 5701 NO. | ENTITY | DESCRIPTION | 1120 Ln. No. | DR/(CR) 2002 |
|---|---|---|---|---|
| 1 | Delco | Partnership Loss HE Microwave | 10 | 49,505 |
| 2 | Delco | State Tax Payments | 17 | 425,000 |
| 30 | Delco | Delphi NVA Capitalized | 26 | (918,574) |
| 31 | Delco | Delphi NVA Capitalized | 26 | 342,634 |
| 43 | Delco | Professional Fees Capitalized | 26 | (72,991) |
| 44 | Delco | Professional Fees Amortization | 26 | 10,430 |
| 49 | Delco | ETI Recalculation | 26 | 12,194,724 |
| 52/53 | Delco | Additional 59 (e) Adjustments | 26 | (81,292,745) |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | TOTALS | | (69,262,017) |

# Exhibit F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

In re                            :       Chapter 11

                                   :

DELPHI CORPORATION, et al.,     :       Case No. 05-44481 (RDD)

                                   :

                  Debtors.     :       (Jointly Administered)

                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


GLOBAL NOTES AND STATEMENT OF LIMITATIONS,
METHODOLGY AND DISCLAIMER REGARDING
<u>DEBTORS' SCHEDULES AND STATEMENTS</u>

- ALL DEBTORS; CONSOLIDATED -


      The Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules and Statements") filed by Delphi Corporation ("Delphi") and 41 of its direct and indirect subsidiaries and affiliates (collectively, with Delphi, the "Debtors"),[1] in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), were prepared pursuant to 11 U.S.C. § 521 and Federal Rule of Bankruptcy Procedure 1007 by management of the Debtors and are unaudited. The Schedules and Statements remain subject to further review and verification by the Debtors. Subsequent information may result in material changes in financial and other data contained in the Schedules and Statements. The Debtors reserve the right to amend their Schedules and Statements from time to time as may be necessary or appropriate. These Global Notes and Statement of Limitations, Methodology and Disclaimer Regarding Debtors' Schedules and Statements (the "Global Notes") are incorporated by reference in, and comprise an integral part of, the Schedules and Statements, and should be referred to and reviewed in connection with any review of the Schedules and Statements.

---

[1]     In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Furukawa Wiring Systems LLC, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Receivables LLC, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, MobileAria, Inc., Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

1.      Description of the Cases and "As Of" Information Date.  On October 8, 2005, 39 of 42 Debtors, and on October 14, 2005 (collectively with October 8, 2005, the "Petition Dates") the remaining Debtors, filed voluntary petitions in the Bankruptcy Court for reorganization relief under chapter 11 of title 11 of the United States Code, (11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The cases have been consolidated for the purpose of joint administration under case number 05-44481 (RDD).  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Each Debtor's fiscal year ends on December 31.  All asset information, except where otherwise noted, is as of September 30, 2005.  The liability information, except where otherwise noted, is as of the close of business on October 7, 2005 or October 14, 2005, as appropriate.

2.      Basis of Presentation.  Delphi is a publicly-held corporation, the common shares of which traded prior to the Petition Dates on the New York Stock Exchange under the "DPH" symbol.[2]  For financial reporting purposes, the Debtors, along with their subsidiaries which have not filed voluntary petitions for reorganization relief under the Bankruptcy Code, prepare consolidated financial statements that are filed with the Securities and Exchange Commission (the "SEC") and that are audited annually.  On June 30, 2005, Delphi filed its annual report on Form 10-K for the year ended December 31, 2004.  On November 9, 2005, Delphi filed its most recent quarterly report on Form 10-Q.  Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each individual Debtor, except where otherwise noted.  These Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP") in the United States, nor are they intended to fully reconcile to the consolidated financial statements filed by Delphi Corporation with the SEC.

3.      Totals.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included on the Schedules.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

4.      Excluded Assets and Liabilities.  The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: goodwill, intangible pension assets, accrued liabilities including, but not limited to, accrued salaries and employee benefits, tax accruals, and accrued accounts payable.  Other immaterial assets and liabilities may also have been excluded.

5.      Interest in Subsidiaries and Affiliates.  Delphi owns directly or indirectly all or part of the 41 subsidiaries and affiliates that are also Debtors.  In addition, Delphi indirectly owns all or part of numerous subsidiaries and affiliates that are not Debtors.  Interests in subsidiaries arise from stock ownership or from interests in partnerships.  Each Debtor's Schedule B - Personal Property schedules its ownership interests, if any, in subsidiaries, affiliates and partnerships.  As recorded in the Debtors' Monthly Operating Report for the period from October 8, 2005 through November 30, 2005, the net book value of the Debtors' interests in non-Debtor subsidiaries, affiliates and partnerships was approximately $3.46 billion as of November 30, 2005.  The fair market value of such stock or other ownership interests is dependent upon numerous variables and factors, and may differ materially from net book values.  Approximately $2.89 billion of the net book value of the Debtors' interests in non-Debtor subsidiaries, affiliates and partnerships is attributable to the value of stock and ownership interests in non-Debtor subsidiaries, affiliates and partnerships held by Delphi Automotive Systems (Holding), Inc. and the Debtors have listed the aggregate net book value of such interests on Schedule B for Delphi Automotive Systems (Holding), Inc.  However, the Debtors have not allocated such aggregate net book value to stock or other ownership interests in individual non-Debtor subsidiaries,

---

[2]      Delphi's common shares currently trade on the over-the-counter market under the "DPHIQ" symbol.

affiliates and partnerships, but rather have listed the value of each as "undetermined" for purposes of Schedule B.

6.    <u>Summary of Significant Reporting Policies</u>.  The following is a summary of significant reporting policies:

(a)    <u>Foreign Currency</u>.  All amounts are reflected in U.S. dollars unless otherwise indicated.

(b)    <u>Book value</u>.  Unless otherwise noted, the Debtors' assets and liabilities are shown on the basis of their net book value as of September 30, 2005 or the appropriate Petition Date, respectively, in accordance with the Debtors' books and records.  Thus, unless otherwise noted, the Schedules and Statements reflect the carrying value of the assets and liabilities as recorded on the Debtors' books, and are not based upon any estimate of their current market value.

(c)    <u>Consolidated Accounts Payable and Disbursements System</u>.  Certain of the Debtors use a consolidated accounts payable and disbursements system through which such Debtors pay substantially all business-related expenses.  All such payments are made by Delphi Automotive Systems LLC ("DAS LLC") and are then charged to the appropriate entity through intercompany accounts.  Payments made by DAS LLC to third parties on behalf of other affiliated entities are reflected as payments to creditors in Question 3a of DAS LLC's Statement of Financial Affairs.

(d)    <u>Intercompany Accounts</u>.  The Debtors record intercompany assets and liabilities through three types of accounts: intercompany trade (includes trade and other business-related transactions), intercompany notes, and cross-charge accounts.  Intercompany trade accounts record sales-type transactions between Delphi's subsidiaries and affiliates.  Intercompany notes reflect loans made between affiliated entities.  Intercompany notes payable exclude accrued interest relating to the period subsequent to September 30, 2005.  Cross-charge accounts are employed to capture a variety of intercompany allocations, charges, and other ordinary course transactions and are tracked on a net receivable/payable basis.  The cross-charge accounts net to zero on a consolidated global basis.  The Debtors have eliminated intra-company activity within each legal entity.

(e)    <u>Accounts Receivable</u>.  Accounts receivable are presented as of September 30, 2005.  Such balances have been adjusted to reflect the assignment of receivables from Delphi Receivables LLC (a Debtor in these cases) to certain other entities as a result of the Termination and Assignment Agreement, dated October 7, 2005 (<u>see</u> Delphi Receivables LLC, below).  In addition, most of the Debtors' customers pay under MNS-2 terms.[3]  The Debtors received approximately $1.2 billion of payments against the receivables that existed on September 30, 2005 on or about October 4, 2005.

(f)    <u>Inventories; Property and Equipment</u>.  Inventories are stated at the lower of cost, determined on a first-in, first-out ("FIFO") basis, or market value.  Property and equipment is stated at cost, net of accumulated depreciation.  All inventories, as well as all property and equipment, are presented without consideration of any mechanics' liens.  For a further description of the Debtors' accounting policies, please refer to the Debtors' financial filings with the SEC described in Basis of Presentation, above.

(g)    <u>Leases</u>.  The Debtors have not included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an amount outstanding as

---

[3]    "MNS-2" refers to the payment terms under Delphi's General Terms and Conditions, whereby payment for goods supplied is generally due on the second business day of the second month following the receipt of such goods.

of the relevant Petition Date, the creditor has been included in Schedule F of the Schedules and Statements. Similarly, any asset accounted for as a capital lease has been excluded from the Schedules and Statements.

(h)    Contingent Assets. The Debtors believe that they may possess certain claims and causes of action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of Chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws to recover assets. With limited exceptions, the Debtors have not set forth claims or causes of action against third parties or avoidance actions as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, causes of action or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions or causes of action or in any way prejudice or impair the assertion of such claims. In addition to those claims against General Motors Corporation ("GM") listed in Schedule B for Delphi and DAS LLC, all of the Debtors reserve all of their rights to assert claims against GM or any of its subsidiaries and affiliates.

The Debtors may also possess contingent and unliquidated claims against affiliated entities (both debtor and non-debtor) for various financial accommodations and similar benefits they have extended from time to time, including, but not limited to, contingent and unliquidated claims for contribution, reimbursement, and/or indemnification arising from various (i) letters of credit, (ii) surety bonds, (iii) guarantees, (iv) indemnities, (v) tax sharing agreements and (vi) warranties.

Additionally, prior to the relevant Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages for business-related losses. Refer to each Statement of Financial Affairs, item 4(a), for lawsuits commenced prior to the relevant Petition Date in which the Debtor was a plaintiff.

(i)    Schedule D. Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge validity, perfection or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim. In certain instances, a Debtor may be a co-obligor, co-mortgagor or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

(j)    Schedule E. All claims listed on the Debtors' Schedule E are claims owing to various taxing authorities to which the Debtors may potentially be liable. However, certain of such claims may be subject to on-going audits and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the remaining claims listed on Schedule E. Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of on-going audits or other outstanding issues.

(k)     Schedule G.  The businesses of the Debtors are complex.  While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts at each of the Debtors and every effort has been made to ensure the accuracy of the Schedule of Executory Contracts and Unexpired Leases, inadvertent errors or omissions may have occurred.  The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements or leases set forth in Schedule G and to amend or supplement such Schedule as necessary.  The contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda and other documents, instruments and agreements which may not be listed therein.  Certain of the real property leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights.  Such rights, powers, duties and obligations are not set forth on Schedule G.  Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.  The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease.  The Debtors reserve all of their rights, claims and causes of action with respect to the contracts and agreements listed on the Schedule, including the rights to dispute or challenge the characterization or the structure of any transaction document or instrument.  Certain executory agreements may not have been memorialized and could be subject to dispute.  Generally, executory agreements that are oral in nature have not been included in the Schedule.  Additionally, the Debtors have not listed confidentiality agreements on the Schedule and have excluded agreements with approximately 1,500 employees of Delco Electronics Overseas Corporation where each agreement was a condition of employment.  Due to the large number of supply agreements with certain suppliers and purchase agreements with certain customers, the Debtors have provided summary information with respect to agreements with those suppliers and customers with which an individual Debtor was party to over 1,000 such agreements (determined according to the primary supplier or customer name, as appropriate, reflected in the Debtors' books and records).  Additional detail with respect to any such agreement is available upon written request to the Debtors' counsel.

7.      Claims.  All general unsecured claims against the Debtors have been listed on Schedule F based upon the Debtors' existing books and records.  The Debtors have, however, independently reviewed each claim scheduled in an amount equal to or greater than $100,000.00 and have adjusted the Debtor obligated for such claim to the extent that the Debtors determined that such claim was more properly an obligation of another legal entity other than as reflected in the existing books, records and financial systems.  The Debtors acknowledge that certain parties may potentially assert their scheduled claims against an entity other than the Debtor that listed such claim in its Schedules and Statements.  Note that substantially all trade debt of the Debtors' non-U.S. subsidiaries, which are not chapter 11 debtors in these cases, represents obligations of such non-U.S. subsidiaries and the payment of such trade debt is not affected by these chapter 11 cases.

8.      Claims of Third-Party Related Entities.  While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third-party related entities on account of the Debtors' obligations to both such entity and its affiliates.  Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

9.      Effect of Payments Made Pursuant to "First Day" Orders on Scheduled Claim Amount.  The Bankruptcy Court has authorized the Debtors to pay various outstanding prepetition claims, including, but not limited to, payments to certain customers, employees, financially-distressed sole

source suppliers, foreign creditors, lienholders, shippers, and taxing authorities.  Where the Schedules list creditors and set forth the Debtors' scheduled amount of such claims, such scheduled amounts reflect amounts owed as of the Petition Dates, adjusted for any postpetition payments made on account of such claims pursuant to the authority granted to the Debtors by the Bankruptcy Court, subject to further adjustment as described in Claims of Third-Party Related Entities, above.  However, the estimate of claims set forth in the Schedules may not reflect assertions by the Debtors' creditors of a right to have such claims paid or reclassified under the Bankruptcy Code or orders of the Bankruptcy Court, including, without limitation, the Bankruptcy Court's "first day" order regarding payment of reclamation claims, to the extent that the Debtors have not agreed to such assertions as of the date hereof.

10.     Employee Claims.  The Bankruptcy Court entered "first day" orders granting authority to the Debtors to pay certain prepetition human capital obligations in the ordinary course of business, including, but not limited to, employees' prepetition and postpetition wages and salaries, including any commissions and bonuses for which the employees are eligible; vacation, sick leave, personal leave, expense reimbursements, and severance; health, insurance, retirement, and other employee benefit programs; defined contribution, defined benefit, tax-qualified, and non-tax-qualified retirement plans; workers' compensation programs; and other benefits to, or for the benefit of, the employees.  The Debtors employed more than 50,000 staff in the United States as of the filing of the chapter 11 cases.  In general, only employee claims for items not authorized to be paid by order of the Bankruptcy Court have been included in the Schedules and Statements.

11.     Claims Related to Pension and Other Postretirement Benefits.  Certain of the Debtors' largest potential liabilities as of the Petition Dates were on account of Delphi's domestic pension and other post-employment benefits, including, without limitation, retiree health care and life insurance (collectively, "OPEB") that, as of the filing of the Schedules and Statements were contingent, disputed and unliquidated.  Specifically, as recorded in Delphi's Annual Report on Form 10-K as of December 31, 2004, which is the date of the most recent actuarial valuation, the consolidated Debtors were exposed to $4.3 billion in unfunded pension obligations and $9.6 billion of unfunded OPEB obligations on a financial reporting basis for their hourly and salaried employees, retirees, surviving spouses and alternate payees.  Consistent with the treatment of the Debtors' collective bargaining agreements described below, obligations related to unfunded pension and OPEB are primarily obligations of Delphi and the majority of the above amounts have been listed on Delphi's Schedule F.  The underfunded pension obligations of Delphi are related to various pension plans that it sponsors.  The terms of those plans permit that eligible employees of related employers within the Delphi control group may participate in those plans.  Related employers include Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems LLC, Delphi Automotive Systems Services LLC, and Delphi International Services Inc., and Delphi Technologies, Inc.  Delphi is ultimately liable for contributions to the plans.  Certain Debtors other than those listed above also sponsor pension and benefit plans for their employees, and those plans and related trusts are included on the Schedules and Statements applicable to those Debtors.  The Debtors have made no attempt to disaggregate such liabilities on an individual-by-individual basis for purposes of Schedule F.

12.     Collective Bargaining Agreements. National agreements between Delphi and its unions, including the United Auto Workers ("UAW"),  International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America ("IUE-CWA"), and United Steelworkers of America govern a majority of Delphi's local bargaining unit agreements.  Because the national agreements were negotiated and signed by Delphi, all related local agreements have been listed on Schedule G of Delphi as well, notwithstanding that the particular signatory to such local bargaining unit agreements may have been an operating division of DAS LLC or another affiliated Debtor.  In addition to its national agreements, Delphi has site-specific agreements with other unions,

including the International Association of Machinists and Aerospace Workers ("IAM"), International Brotherhood of Electrical Workers ("IBEW"), and International Union of Operating Engineers ("IUOE"). All IAM, IBEW and IUOE agreements are listed on Schedule G of Delphi.

In certain specific instances, collective bargaining agreements are not governed by an agreement to which Delphi is a party and such agreements are listed on Schedule G of the Debtor that is the signatory to the agreement. In particular, Delphi Connection Systems separately contracted with the Electronic and Space Technicians ("EAST") and thus the EAST agreements are listed on Delphi Connection System's Schedule G. Moreover, certain of Delphi's UAW bargaining units and IUE-CWA bargaining units are not governed by the national agreements between Delphi and the unions. Those agreements appear on Schedule G of Delphi Connection Systems or ASEC Manufacturing General Partnership, as appropriate.

13.    Union Grievances, Workers' Compensation Claims and Other Employment-related Actions and Charges. The Debtors have excluded listing individual employee union grievances in the Schedules and Statements. In addition, workers' compensation claims and other employment-related actions and charges are excluded from the Debtors' Statement of Financial Affairs. All such actions, claims and grievances have been excluded based on both the large volume of such actions, claims and grievances and the Debtors' belief that the majority of such actions, claims and grievances will generally not result in actual litigation.

14.    Insiders. Each Debtor has included all distributions made over the twelve months preceding the filing to any individual deemed an Insider (defined below) when the Debtor has either made or been charged for such payments. For purposes of the Schedules and Statements, the Debtors define Insiders as (i) directors, (ii) Section 16(b) officers, (iii) Delphi Strategy Board officers, (iv) the president of each Debtor, (v) the most senior finance and operations officers of each Debtor, and (vi) officers who have received over $300,000.00 in the one-year period preceding the Petition Date. To the extent that former officers do not qualify as Insiders as defined above, such benefits and payments are not included in the Schedules and Statements. To the extent that such benefits and payments are provided pursuant to a written agreement, such agreement is included in Schedule G. Included in the payments are deferred stock units, valued at the cash payout date, vested restricted stock, valued at the vesting date, and unliquidated deferred stock units and unvested restricted stock units, which have not been valued for purposes of the Schedules and Statements. Amounts categorized as "Other" in Exhibit 3b.2 include payments or imputed income relating to signing bonuses, severance, vehicle allowances, flexible compensation, sickness and accident, amounts relating to the personal use of corporate aircraft, consulting services, recognition and retention awards, relocation costs, life insurance, personal umbrella life insurance and relocation costs and taxes advances for employees on international assignment.

In addition, certain Debtors have made payments to, charged or incurred charges from various affiliated entities during the twelve months preceding the relevant Petition Date. These transactions have been reflected in the Schedules and Statements as the net change in beginning and ending intercompany trade payables, intercompany notes payable and cross-charge balances (these accounts are more fully described under Intercompany Accounts, above). To measure the net change, September 30, 2004 was used as the beginning balance for all three types of intercompany accounts. The relevant Petition Date for each Debtor was used as the ending balance for the intercompany notes payable and intercompany trade payables accounts, while ending cross-charge balances were reflected as of September 30, 2005.

15.    Disputed, Contingent and/or Unliquidated Claims. Schedules D, E and F permit each of the Debtors to designate a claim as disputed, contingent and/or unliquidated. A failure to designate a

claim on any of these Schedules as disputed, contingent and/or unliquidated does not constitute an admission that such claim is not subject to objection.  The Debtors reserve the right to dispute, or assert offsets or defenses to, any claim reflected on these Schedules as to amount, liability or status.

16.    <u>Divisional Units</u>.  Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Debtors' businesses through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates.  As such, the Debtors' primary business operations continue to be organized into operating divisions, many of which fall within Delphi's primary domestic operating subsidiary, DAS LLC.  A significant number of transactions entered into by the Debtors refer to these operating divisions and the counterparty to these transactions on a creditor's books may indicate one of the Debtors' operating divisions, rather than a legal entity.  Common division names that are included within DAS LLC are Automotive Holdings Group ("AHG"), Delco Electronics ("Delco") (<u>see</u> Corporate Reorganization, below), Delphi Electrical & Safety ("Delphi E&S"), Delphi Energy & Chassis ("Delphi E&C"), Delphi Thermal & Interior Systems ("Delphi T&I"), and Saginaw Steering ("Saginaw" or "Steering").  A common division name that is included within Delphi Diesel Systems Corp. is Delphi Product and Service Solutions ("DPSS").

17.    <u>Corporate Reorganization</u>.  On September 30, 2005, Delco Electronics LLC was merged into DAS LLC.  As such, all information relating to Delco Electronics LLC is included in the Schedules and Statements for DAS LLC.

18.    <u>Delphi Receivables LLC</u>.  Pursuant to a Termination and Assignment Agreement, dated October 7, 2005, between Delphi Receivables LLC, Delphi and DAS LLC, a certain Receivables Sale Agreement (the "Agreement"), dated March 31, 2003, was terminated.  As a result of the termination of the Agreement, certain intercompany loans issued by Delphi Receivables LLC were cancelled in exchange for the assignment of certain accounts receivable and assets to Delphi and DAS LLC.

19.    <u>Consolidated Books and Records</u>.  Certain of the Debtors maintain consolidated books and records.  Specifically, the books and records for Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General Partnership, and ASEC Sales General Partnership are maintained in this manner.  The financial information for these entities has been consolidated for purposes of the Schedules and Statements and such consolidated financial information has been included in the Schedules and Statements of each of Exhaust Systems Corporation, Environmental Catalysts LLC, ASEC Manufacturing General Partnership, and ASEC Sales General Partnership.

20.    <u>Setoffs</u>.  The Debtors routinely incur setoffs from customers during the ordinary course of business.  Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, warranties, and other disputes between the Debtors and their customers or suppliers.  These normal setoffs are consistent with the ordinary course of business in the Debtors' industries and can be particularly voluminous, making it unduly burdensome and costly for the Debtors to list all such normal setoffs.  Therefore, such normal setoffs are excluded from the Debtors' responses to Question 13 of the Statement of Financial Affairs.

21.    <u>90-Day Payments</u>.  The Debtors have responded to Question 3a of the Statement of Financial Affairs in a summary format by creditor, excluding information regarding the creditor's address and detailed payment information.  Such information is available upon written request to the Debtors' counsel.

22.    <u>Indemnification</u>.  Delphi's Bylaws provide for the mandatory indemnification of (a) executives and managerial employees of Delphi; (b) directors, officers, executives and managerial employees of wholly-owned subsidiaries of Delphi; and (c) directors, officers, executives and managerial employees of entities in which Delphi has less than a 100% ownership interest who are also employees of Delphi or wholly-owned subsidiaries of Delphi.  The Debtors have not reached the determination as to whether certain indemnified persons are ineligible for indemnification under the terms of Delphi's Bylaws and such persons are therefore listed on Schedule F for the appropriate Debtor.  To the extent that the Debtors have entered into a separate agreement with an employee providing for indemnification of such employee, such agreement is listed on Schedule G for the appropriate Debtor.  In addition, all persons receiving payment pursuant to the indemnification provisions of Delphi's Bylaws are required to execute an undertaking acknowledgement as a condition of receiving payment thereunder.  The Debtors have separately listed all such undertaking acknowledgements entered into prior to the Petition Dates on Schedule G for the appropriate Debtors, but reserve all rights with respect thereto including, without limitation, the right to assert that any such acknowledgements may not constitute executory contracts.

23.    <u>Property Held for Others.</u>  In the ordinary course of business and in accordance with industry custom, certain Debtors retain a significant number of molds, tooling, dies, cores, components used for remanufacture and other equipment, which are owned by the Debtors' customers.  In addition, a portion of raw materials and supplies that are located at certain of the Debtors' plants may have been delivered by vendors pursuant to consignment agreements, which generally set forth the terms and conditions under which the raw materials and supplies are to be used and paid for by the Debtors.  Such a Debtor generally agrees to pay its vendors if and when such raw materials are actually used by the Debtor, as determined by periodic reconciliation of such amounts between such vendors and the Debtor.  Finally, in the ordinary course of certain of the Debtors' businesses, such Debtors sell inventory to their customers, may hold deposits or advance payments from their customers, and may hold for rework, certain products that have been returned to such Debtors for nonconformity with applicable specifications or warranties.  These ordinary course items have been excluded from the Debtors' responses to Question 14 of the Statement of Financial Affairs.