original



NOV 1 0 2008

United States Bankruptcy Court
Southern District of New York
Delphi Corporation Claims
One Bowling Green
Room 534
New York, New York 10004-1408

NUNC PRO TUNC
CONSENT JUDGEMENT
August 4, 2007

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
              In re                                       :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                                        Debtors.          :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Dear Clerk.

Please Time Stamp ⚊ Copy enclosed in the Self Address
Envelope, and return to Me. *2 Copies*

Respectfully Submitted

*Paul C Mathis*
42416 Brownstone Dr.
Novi, Mi 48377

November 10, 2005

To Whom It May Concern:

RE:  Paul C. Mathis

I, Rhonda L. Jacobs-Sturges has helped Mr. Mathis on several occasions in typing and organizing documents to be filed with the court.  I started helping Mr. Mathis August 30, 2004 - present. Should you have any questions or comments, please contact me at (248) 320-8986.

Sincerely,

Rhonda L. Jacobs-Sturges

## AFFIDAVIT IN SUPPORT

STATE OF MICHIGAN)
                 )ss
OAKLAND COUNTY   )

NON CULPA NEGLIGENCE

    I, Paul C. Mathis, being first duly sworn, swear under Oath, believe in good faith, that I am entitled to the relief sought pursuant to the Consent Agreement made on July 27, 2007, filed before the Clerk of this Court and transfer of document made on or about August 4, 2007, signed as to form Jim Yenzer, agent for obligor. That issuances of the Judgement not exceed 60 Days on the Hearing for Summary Judgement or according to Law for such Hearing.

_Paul C. Mathis_
PAUL C. MATHIS


Subscribed and sworn to before me
this __4__ day of ~~October~~, 2008.
        NOVEMBER

_Geredine Simbeni_

GERALDINE SIMBENI
Notary Public, Oakland County, MI
Acting in __Oakland__ County
My Commission Expires December 10, 2013

UNITED STATES OF AMERICA
UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, NEW YORK

Hon. Robert D. Drain
Atten: Clerk                            CASE NO. 05-44481
One Bowling Green, Rm. 610
New York, NY 10004                      Fisher Body, Fleetwood
                                        Cadillac - 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
NUNC PRO TUNC

**PRAECIPE**

RE:  **Summary Judgment, Mathis v. Fisher Body, General Motors
     and Delphi Corporation**

Dear Clerk:              NUNC PRO TUNC

     Please find enclosed, Motion for Summary Judgment on the
attached Consent Agreement Fisher Body, General Motors, Delphi
Corporation Motion for hearing according to law

                         Respectfully submitted:

                         Paul C. Mathis
                         42416 Brownstone Drive
                         Novi, MI 48377

Dated:


cc: Metropolitan Life Insurance Co
    One Madison Ave.
    New York, NY 10010

    General Motors Disability Claims
    P.O. Box 3031
    Utica, NY 13504-Cisco, 19600

1

UNITED STATES OF AMERICA
UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, NEW YORK

IN THE MATTER OF
PAUL C. MATHIS, Obligee                    CASE NO. 05-44481

v.                                         Filed as to substance
                                           Clerk of the Court
FISHER BODY, GENERAL MOTORS,               500 Pearl Street
DELPHI CORPORATION, et al                  U. S. Bankruptcy Court
                                           New York, NY 10004
                Obligor          /         NUNC PRO TUNC
_____

### PAYMENT DEMAND/CONSENT AGREEMENT

### SUMMARY JUDGMENT, FINAL DECISION RULE 28 U.S.C.A. 1291

TO:   Metropolitan Life Insurance Company 380572515031/3799900DA23
      Atten: Accounting Department
      One Madison Avenue
      New York, NY 10010

To Whom It May Concern:

      You are hereby to issue payment pursuant to Consent
Agreement dated and filed June 6, 2006, consent agreed July 27,
2007, pursuant to 11 U.S.C. § 503 of the United States Bankruptcy
Court for the Southern Division, New York, NY.

                        Respectfully submitted:


                        Paul C. Mathis
                        42416 Brownstone Drive
                        Novi, MI 48377


Dated:


2

Conclusion of law and fact

. . . Agent for defendants, by Consent Agreement on
July 27, 2007 Obligee Paul C. Mathis made transfer of
documents August 4, 2007 (Attached) under Hensen Secured
Transactions ₰ 7-7-11 U.S.C. ₰ 547(b) (1979) 28 U.S.C.₰ 1331
Jurisdictional Review before the Court United States Constitution
Art, VI ₰ 2- legal detriment 255 N.E. 2d 793

Nunc Pro Tunc see also 11 U.S.C. ₰ 503 Obligee right to Judgment
before the Honorable Court on the Consent Agreementby defendant(s)

Respectfully Submitted

*Paul C. Mathis*

Paul C. Mathis
42416 Brownstone Dr.
Novi Mi 48377

## JURISDICTION BASIS ON AGREEMENT

47 Am Jur; 2d Judgment § 108.5 Fed. R. Civ. Proc. 56; Consent Agreement final decision Rule 28 U.S.C. A. 1291 11 U.S.C. § 503.

Court Prepare Order Payment to obligee, Paul C. Mathis in the amount of $428,448.71 per Consent Agreement dated July 27, 2007, within 21 days return of process to Paul C. Mathis.NUNC PRO TUNC

Respectfully submitted:

(ATTACHMENTS).

_____
Paul C. Mathis
42416 Brownstone Drive
Novi, MI 48377

Dated:

PRAYER FOR RELIEF SOUGHT

Wherefore Petitioner, Paul C. Mathis Prays the Honorable Court enter an Order on the request for Summary Judgement on the Consent Agreement Dated August 4, 2007 between Liquidity Solutions Inc Agent for Defendant(s) in the entitled cause General Motors/ Delphi Corporation et. Al,. on the Proof(s) submitted herein forthwith! Punitive Damages in excess of 10,000.000 Millions Dollars

Respectfully Submitted,        Further he sayeth not

Paul C. Mathis
42416 Brownstone Dr
Novi, Mi 48377

4

# UNITED STATES BANKRUPTCY COURT   Southern   District of   New York

**PROOF OF CLAIM**

| Name of Debtor | Case Number |
|---|---|
| Delphi Corporation | 05-44481 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

Paul C Mathis

Name and address where notices should be sent:

Paul C Mathis
17265 Coral Gables St
Southfield MI 48076-4784

Telephone number:

- ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
- ☐ Check box if you have never received any notices from the bankruptcy court in this case.
- ☐ Check box if the address differs from the address on the envelope sent to you by the court.

RECEIVED
JUN 15 2006

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor: GM
3805 725 15 031 (Cadillac Detroit)

Check here ☑ if this claim ☑ replaces / ☑ amends   a previously filed claim, dated: 10-10-84

**1. Basis for Claim**
- ☐ Goods Sold / Services Performed
- ☐ Customer Claim
- ☐ Taxes
- ☐ Money Loaned
- ☑ Personal Injury   General Motors Corp   Workers Compensation Detroit   ALJ order
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☑ Wages, salaries, and compensation (fill out below)   Claim began (pen)
  Last four digits of SS #: 782-9
  Unpaid compensation for services performed
  from 10-03-78 to 10-10-84
       (date)          (date)

**2.** Date debt was incurred: 10-10-84  $415,989.82

**3.** If court judgment, date obtained: 1-30-86 — Nov 03 1990 final order (pen)

**4.** Total Amount of Claim at Time Case Filed: $   $415,989.82

| $ (unsecured) | $ (secured) | $ (priority) | # 415,989.82 (Total) |
|---|---|---|---|

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
- ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
- ☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate   ☐ Motor Vehicle   # 2
- ☑ Other

Value of Collateral: $

Amount of arrearage and other charges at time case filed included in secured claim, if any: $

**6. Unsecured Nonpriority Claim** $
- ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
- ☐ Check this box if you have an unsecured priority claim.
Amount entitled to priority $
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(   ).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. On file

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. Ms. Turlock Esq.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 5-29-06 | Paul C Mathis   Paul C. Mathis 07 |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

054448106041019280744727S

# LIQUIDITY SOLUTIONS, INC.

One University Plaza, Suite 312
Hackensack, NJ 07601
Tel: (201) 968-0001 Fax: (201) 968-0010

July 27, 2007

Paul C Mathis
17265 Coral Gables St
Southfield, MI 48076-4784

Attn: Accounting Dept. /Collections

RE:     **DELPHI CORPORATION et Al.**
Jointly Administered Case No. 05-44481
(US Bankruptcy Court, Southern District of New York)

Dear Creditor:

We are writing you to express an indication of our interest in your allowed and undisputed claim of $415,969.62 for a payment of **$428,448.71.** This indication is valid through August 10, 2007 and is subject to further due diligence and mutually agreeable documents of transfer.

This indication of interest is on a first come first serve basis. This may be rescinded for any reason whatsoever without further notice or obligation from either party. We are not responsible for typographical errors.

*If you are interested in offering your claim, please sign twice on the last page where indicated and return the two page agreement to us.*

Sincerely,

*Please find necessary signature on form enclosed*

*Thank you*
*Paul C Mathis*

*August 4, 2007 mailing date*

Jim Yenzer
jyenzer@liquiditysolutions.com
(201) 968-0001 Ext. 114

Paul C Mathis, having offices at 17265 Coral Gables St, Southfield, MI 48076-4783 ("Assignor") in consideration of the sum of $428,448.71 ("Purchase Price"), does hereby transfer to Liquidity Solutions, Inc., as agent for _____ ("Assignee"), having offices at One University Plaza, Suite 312, Hackensack, NJ 07601, all of the Assignor's right, title and interest in, to and under the claim or claims of Assignor, as more specifically set forth below (the "Claim"), against DELPHI CORPORATION et Al., Debtor or Debtors in the currently outstanding amount of not less than $15,969.62 (the "Purchased Amount"), and all rights and benefits of the Assignor relating to the Claim, including without limitation the Proof of Claim identified below (if any) and the Assignor's rights to receive payment principal, and interest, penalties and fees, which may be paid with respect to or in satisfaction of the Claim, all cash, securities, instruments and other property which may be paid or issued by Debtor or any other party with respect to or in satisfaction of the Claim, and all voting rights with respect to any of the foregoing. The Claim includes the foregoing rights and benefits and the right to receive all payments in respect thereof. The Claim is based on amounts, not less than the Purchased Amount, owed to Assignor by Debtor for services rendered and/or goods delivered by Assignor to Debtor. This Assignment of Claim (this "Assignment") shall be deemed an absolute and unconditional assignment of the Claim for the purpose of collection and shall not be deemed to create a security interest except as may be otherwise provided herein. Assignee is assuming no liabilities or obligations of the Assignor under this Agreement.

Assignor represents and warrants that *[check one of the following]*:   *upon payment to Paul C Mathis (PCM) $428,448.71*

[  ] A Proof of Claim has not been filed in respect of the Claim.
[X] A Proof of Claim in the amount of $4/5,969.6 has been duly and timely filed in the Proceedings, and a true copy of such Proof of Claim is attached to this Assignment. If the Proof of Claim amount differs from the Claim amount set forth above, Assignee shall nevertheless be deemed the owner of that Proof of Claim subject to the terms of this Assignment and shall be entitled to identify itself as owner of such Proof of Claim on the records of the Court.

Assignor further represents and warrants that the Claim is a valid and allowed claim in the Proceedings in an amount not less than the Purchased Amount, and the Claim is not subject to any defense, counterclaim, offset, setoff, dispute or objection. Assignor further represents and warrants that no payment has been received by Assignor, or by any third party claiming through Assignor, in full or partial satisfaction of the Claim, that Assignor has not previously assigned, sold or pledged the Claim to any third party in whole or in part, that Assignor solely owns and has good title to the Claim free and clear of any and all liens, claims, security interests or encumbrances of any kind or nature whatsoever, and that there are no offsets or defenses or preferential payment demands that have been or may be asserted by or on behalf of Debtor or any other party to reduce or subordinate the amount of the Claim or to otherwise impair its value. Assignor represents that it is solvent and has no other relationship the Debtor or any of its affiliates or principals other than as a creditor of the Debtor. Assignor is not an insider of the Debtor within the meaning of section 101(31) of Title 11 of the United States Code (the "Bankruptcy Code") and is not, and has not been, a member of any committee appointed in the Proceedings. All terms of this Assignment will be kept confidential. *PCM*

Assignor is aware that the Purchase Price may differ from the amount ultimately distributed in the Proceedings with respect to the Claim and that such amount may not be absolutely determined until entry of a final order confirming a plan of reorganization or liquidation. Assignor acknowledges that, except as set forth in this Assignment neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of the Debtor (financial or otherwise) or any other matter relating to the Proceedings, the Debtor or the Claim.

Assignor represents that it has adequate information concerning the business and financial condition of Debtor and the status of the Proceedings to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate (including information available from the files of the Court of the Proceedings), made its own analysis and decision to enter into this Assignment of Claim. Assignor and Assignee each hereby acknowledge to the other that (i) it currently has, or may in the future have, information with respect to the Claim, the Debtor or any of its affiliates and/or the Proceedings that is not known to the other party and that may be material to a decision to sell or purchase the Claim (as applicable) ("Excluded Information"), (ii) it has determined to sell or purchase the Claim (as applicable) notwithstanding its lack of knowledge of the Excluded Information and (iii) neither Assignor nor Assignee shall have any liability to the other or any other party whatsoever with respect to the nondisclosure of the Excluded Information in connection with the transactions contemplated hereby.   *upon payment of this Claim (PCM)*

Assignor agrees to make to Assignee immediate proportional restitution and repayment of the Purchase Price (i) to the extent that the Claim is disallowed, reduced, subordinated, offset, setoff, objected to or otherwise impaired or (ii) at Assignee's option, to the extent that the Claim is not treated as a general unsecured claim in the Proceedings (by virtue of assumption of a related contract and cure under section 365 of the Bankruptcy Code, or otherwise) (each of the events in clauses (i) and (ii) of this sentence, an "Impairment") (and for any reason whatsoever, in whole or in part, together with interest at the rate of ten percent (10%) per annum on the amount repaid on account of an Impairment for the period from the date of payment of the Purchase Price by Assignee through the date such repayment is made. Assignor further agrees to reimburse Assignee for all losses, costs and expenses, including reasonable legal fees and costs, incurred by Assignee as a result of such Impairment or any objection to the transfer of the Claim by Assignor. IN THE EVENT ASSIGNOR HAS PREVIOUSLY ASSIGNED OR PLEDGED THIS CLAIM TO ANY THIRD PARTY, OR OTHERWISE LACKS SOLE TITLE THERETO, ASSIGNOR AGREES TO IMMEDIATELY PAY ASSIGNEE UPON DEMAND OF ASSIGNEE, LIQUIDATED DAMAGES IN AN AMOUNT EQUAL TO DOUBLE THE AMOUNT PAID TO ASSIGNOR HEREUNDER.

In the event the Claim is ultimately allowed in amount greater than the Purchased Amount, at Assignee's sole option and after written notice (the "Notice") provided to Assignor by Assignee, Assignor shall, and is hereby deemed to, sell to Assignee, and Assignee hereby purchases, all, oany portion specified in the Notice, of such excess claim at the same price (expressed as a percentage of claim) provided for hereunder. Assignee shall remit such payment to Assignor after delivery to Assignor of the Notice and upon Assignee's satisfaction that the Claim has been allowed in the higher amount and is not subject to any Impairment.

Assignor hereby irrevocably appoints Assignee as its true and lawful agent and attorney-in-fact, solely with respect to the Claim, with the full power and authority to act in Assignor's name, place and stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim and to exercise all elections, voting rights and all other rights and remedies with respect thereto. Assignor further grants unto Assignee full authority to do al things necessary to enforce the Claim and its rights thereunder pursuant to this Assignment. Assignor agrees that the powers granted by this paragraph are coupled with an interest, and are therefore irrevocable, and are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defendthe Claim's validity or amount in the Proceedings. Assignor agrees to take such further actions, at its own expense, as requested by Assignee as necessary or desirable to effect the transfer of the Claim to Assignee (or its designees) and any payments odistributions on account of the Claim including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

Assignor agrees to forward to Assignee all notices received from Debtor, the Court or any third party with respect to the Claim assigned herein, to vote the Claim assigned herein and to take such action with respect to the Claim in the Proceedings, as Assignee may from time to time request. Assignor further agrees that any distribution received by Assignor on account of the Claim, whether in the form of cash, securities, instrument or any other property, shall constitute property of the Assignee to which the Assignee has an absolute right, and that (if received by Assignor) Assignor will hold such property in trust for the benefit of Assignee and will, at its own expense promptly deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

The terms of this Assignment shall be binding upon, and shall inure to the benefit of, Assignor, Assignee and their respective successors and permitted assigns.




Assignor hereby acknowledges that Assignee may at any time reassign the Claim, together with all right, title and interest of Assignee in and to this Assignment, or any portion thereof or interest therein, without notice to or the consent of Assignor. Assignor may not assign the Claim or any of its right, title and interest in, to and under this Assignment, or any portion thereof or interest therein, without the prior written consent of Assignee, which the Assignee may grant or withhold in its discretion. All representations and warranties made herein shall survive the execution and delivery of this Assignment and any such re-assignment. This Assignment may be executed in multiple counterparts, and all such counterparts taken together shall be deemed to constitute a single agreement.

This Assignment shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Assignment must be brought in Federal court located in the State of New York or the State of New Jersey, and Assignor consents to and confers personal jurisdiction over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set forth in this Assignment, and in any action hereunder, Assignor waives any right to demand a trial by jury.

*upon Payment of this Claim (pcm)*

### CONSENT AND WAIVER

Upon Assignor's delivery to Assignee of its executed signature page to this Assignment, Assignor hereby authorizes Assignee to file a notice of transfer pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure ("FRBP") with respect to the Claim while Assignee performs its due diligence on the Claim. Assignee, in its sole and absolute discretion, may subsequently transfer the Claim back to the Assignor if the due diligence results are not satisfactory, in Assignee's sole and absolute discretion, by filing a notice pursuant Rule 3001(e) of FRBP transferring the Claim back to Assignor or withdrawing the transfer, and automatically at such time and in such event, each of Assignor and Assignee hereby release the other from all and any obligation or liability regarding this Assignment provided, however, that upon such re-transfer or withdrawal of transfer of the Claim, Assignor shall be obligated promptly to return to Assignee any payment made in respect of the Purchase Price. Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment and hereby waives (i) its right to raise any objection hereto, and (ii) its right to receive notice pursuant to Rule 3001(e) of the FRBP.

*upon Payment of this Claim (pcm)*

IN WITNESS WHEREOF, the undersigned Assignor hereto sets his hand this _4_ day of _August_, 2007

Paul C Mathis

By: _Paul C Mathis_
Signature

_PAUL C. MATHiS_
Print Name/Title

Telephone # _248 - 443 - 1463_

IN WITNESS WHEREOF, the undersigned Assignee hereto sets his hand this _____ day of _____, 2007

Jim Yenzer
Liquidity Solutions, Inc. as agent for _____
201-968-0001

--------------------------------------------------------------------------------

### TRANSFER NOTICE

Paul C Mathis ("Assignor"), transfers and assigns unto Liquidity Solutions, Inc., as agent for _____, with an address at One University Plaza, Suite 312, Hackensack, New Jersey 07601, its successors and assigns ("Assignee"), pursuant to the terms of an ASSIGNMENT OF CLAIM between Assignor and Assignee (the "Agreement"), all of Assignor's right, title and interest in, to and under the Claim of Assignor as set forth in the Agreement against **DELPHI CORPORATION et Al.** (the "Debtor"), in the aggregate amount of **$415,969.62**, representing all claims of Assignor pending against the Debtor in the United States Bankruptcy Court, Southern District of New York, administered as Jointly Administered Case No. 05-44481.

IN WITNESS WHEREOF, Assignor has signed below as of the _____ day of _____, 2007

Paul C Mathis

REVENUE MANAGEMENT

_____
(Signature)

_____
(Signature)

_____
(Print Name and Title)

_____
(Print Name of Witness)

DELPHI CORPORATION et Al.
Paul C Mathis
Claim#: 8058

922784

# HB 5084 Passes House

Legislation which would prohibit the coordination of workers compensation benefits for Michigan workers injured prior to Mar. 31, 1982 was passed 87-14 by the Michigan House of Representatives on January 29.

HB 5084, sponsored by Rep. Michael Griffin (D-Jackson), now is being studied by the Senate Labor Committee.

Prior to HB 5084's passage, the House approved an amendment to the legislation offered by Griffin and Rep. Nick Ciaramitaro (D-Roseville). The amendment, which in reality is the substance of the bill, provides that:

• Coordination of benefits is to be applied only to workers' compensation payments made to workers injured prior to Mar. 31, 1982.

• Workers' compensation payments that have not been coordinated as of HB 5084's effective date for workers injured prior to Mar. 31, 1982 are not to be coordinated; shall not be considered as overpayments, and shall not be subject to reimbursement to employers or insurance carriers.

• Workers' compensation payments that have been coordinated for workers injured prior to Mar. 31, 1982 are to be considered underpayments, and the amounts withheld because of coordination are to be reimbursed to the worker by the employer or insurance carrier.



• Any worker injured prior to Mar. 31, 1982 who has paid an employer or insurance carrier money alleged by the employer or carrier to be owed them because the worker's benefits had not been coordinated, shall be reimbursed that money by the employer or carrier.

Before the adoption of the Griffin-Ciaramitaro amendment, Rep. John Maynard (D-St. Clair Shores) offered two amendments to the amendment which were adopted.

Maynard's amendments require that injured workers who have been under-paid because of coordination of benefits, or who repaid their employer or insurance carrier money, shall be reimbursed that money with interest within 60 days of the effective date of the legislation.

Republicans offered a substitute for HB 5084 prior to the vote on HB 5084 itself. The substitute, which was defeated 40-60, would have permitted coordination of benefits for workers who have not yet settled their claims even if the injuries occurred before Mar. 31, 1982. The substitute, like the original bill, also prohibited employers and insurance carriers from collecting reimbursements from injured workers for alleged overpayments.

After the defeat of the Republican substitute, the House passed HB 5084 87-14.

HB 5084 effectively reverses the October Chambers decision of the Michigan Supreme Court, which upheld coordination of benefits for all workers, regardless of date of injury. That ruling clearly contradicted the Michigan Legislature's intent as expressed in a resolution that coordination of benefits apply only to workers injured prior to Mar. 31, 1982. These workers, unlike those injured afterward, were not granted benefit increases when the 1981 workers' compensation act.

Coordination of benefits means an injured worker's compensation payments are reduced by specified amounts of his or her Social Security, pension and certain other benefits

---

*Handwritten notes:*

Workers Protection Section 301(11)
(29 U.S.C. #1132a(1)(B))
to Recover Benefits States Owed
Federal C.L. 600.5807(24)
Colo. of law 449 U.S. 24, 87-28 101 S. Ct.
83, 386 L.D. 2d 185(1980)
93 Mich. App. 103 - 457 Mich. 74-191 and 440.03
Breached Collective Bargaining HB 5084 —
Michigan Legislation against Coordination



WEIS-1976-HOURLY

UNIT ID - 19600

PLANT - 020      P C MATHIS

78-40-7829

DIVISION - BUICK-OLDSMOBILE-CADILLAC GRP      PLANT - FLEETWOOD PLANT

W O R K E R S   C O M P E N S A T I O N
HOURLY/SALARY WEEKLY LEDGER REPORT

PERIOD ENDING 06-30-91
PROCESSED ON  07-02-91 AT 18:3(

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
PAUL C
MATHIS

OPEN

INJURY DATE:    10/10/84
INJURY TIME:    00:00 PM
FIRST NOTICE:   12/13/84
HOURLY RATE:    9.630

ICD DATE:
ICD CODE:
ACCIDENT TYPE:
LOCATION:
OBJECT INVOLVED:
UNITS OWN USE:

19215  RUTHERFORD
DETROIT              MI, 48235

BIRTH DATE:     08/31/59
SENIORITY DATE: 09/06/84
OGM DATE:       10/23/78

DEPARTMENT OF INJURY:
OCCUPAT. AT INJURY:
AVERAGE WEEKLY WAGE:
FULL WEEKLY WAGE:
AVG WKLY WAGE / WEEKS:

                /HAND

32/25 OTHER
R, RIGHT
23, OTHER

****
****
474.87

05.00
10/10/84
868   SPRAIN NEC
R, RIGHT
23, OTHER

CLOCK NUMBER:   11  0000
CURRENT OCCUPATION: 0007
STATUS:         R22  05/09/9(

CASE NUMBER:    84113
CASE STATUS & DATE: OPEN
FOREMAN/SUPERVISOR:  DOE
CERTIFIED HANDICAP:

MINORITY CD: 2

12/10/84

TEMP. TOTAL     01
PENDING

COMMENCE DATE:  10/10/84
FIRST DUE DATE:
SYSTEM START:
SYSTEM STOP:
FIRST NOTICE:   05/28/91
LAST DAY WORKED:10/10/84

CURRENT ACCOUNT:    5418

BENEFIT REASON:
DEPENDENTS:
LIT. STATUS & DATE  0(  05/29/91

MAXIMUM WEEKS:
ATTENTION CODE:
ATTENTION DATE:
RTM CODE:
RTM DATE:

TEMP. TOTAL     02
OPEN

COMMENCE DATE:  10/11/84
FIRST DUE DATE: 02/18/86
SYSTEM START:
SYSTEM STOP:
FIRST NOTICE:   12/13/84
LAST DAY WORKED:10/10/84

CURRENT PERIOD:

CURRENT ACCOUNT:    5418

BENEFIT REASON:     0A
DEPENDENTS:         01
LIT. STATUS & DATE  N  02/15/91

MAXIMUM WEEKS:
ATTENTION CODE:
ATTENTION DATE:
RTM CODE:
RTM DATE:

| | PERIOD 1 | | PERIOD 2 | | PERIOD 3 | | PERIOD 4 | | PERIOD 5 |
|---|---|---|---|---|---|---|---|---|---|---|
| FROM DATE: | 10/11/84 | | 10/18/84 | | 04/18/85 | | 10/17/85 | | 02/16/86 |
| THRU DATE: | 10/17/84 | | 04/17/85 | | 10/16/85 | | 02/15/86 | | 99/99/99 |
| GROSS BASIC BENEFIT: | 286.75 | | 286.75 | | 286.75 | | 286.75 | | 286.75 |
| REDUCTION # 1: | | SA | | SA | | EB | | RTM | |
| REDUCTION # 2: | | 231.90 | | 251.33 | | 108.95 | | | |
| REDUCTION # 3: | | | | | | | | | |
| REDUCED BASIC BENEFIT: | 286.75 | | 56.85 | | 35.42 | | 177.80 | | 286.75 |
| REIMBURSEMENT # 1: | | | | | | | | | |

Doc 1440

S-1976-HOURLY

**W O R K E R S   C O M P E N S A T I O N**
HOURLY/SALARY WEEKLY LEDGER REPORT

ID - 19600 - DIVISION - BUICK-OLDSMOBILE-CADILLAC GRP   PLANT - FLEETWOOD PLANT

PLANT - 020

PERIOD ENDING 06-30-91   ROLL 27   PAGE REF 4
PROCESSED ON 07-02-91 AT 18.36

196000201

P C MATHIS
-7829

REIMBURSEMENT #2;
REIMBURSEMENT #3;
NET WEEKLY BENEFIT;
WEEKS/DAYS;
TOTAL LIABILITY DUE;
TOTAL REIMBURSABLE DUE;

TOTAL EXPECTED WEEKS;
TOTAL EXPECTED DAYS;

10/10/84

TOTAL EXPECTED LIABILITY PAID-TO-DATE;
TOTAL EXPECTED REIMBURSABLE PAID-TO-DATE;

| ID-001 EMP NUMBER | T P | PAY THRU DATE | D Y | D K | OTHER EARNINGS | ACCT | NO. DEP | GROSS DENF OR ACCR LIAB | WEEKLY AMT | ADJ CD | NET BENEFIT | DRAFT DATE | DRAFT NUMBER | ACCRUED LIABILIT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | L | 12/18/04 | 5 | 0 | | 5418 | 1 | 5,000.00 | .00 | | | | ARCHIVE | 5,000. |
| | 2 | 12/31/86 | 5 | 44 | .00 | 5418 | 1 | 4,473.99 | .00 | | 9,032.40 | 12/31/86 | SUMMARY | 9,473. |
| | M | 12/31/86 | 5 | | | 5418 | 1 | 9,032.40 | .00 | | .00 | | SUMMARY | 441. |
| | 2 | 12/31/87 | 5 | 0 | .00 | 5418 | 1 | 10,116.29 | .00 | | .00 | | SUMMARY | 10,557. |
| | X | 12/31/87 | 5 | 52 | | 5418 | 1 | 10,437.44 | .00 | | 10,437.44 | 12/31/87 | SUMMARY | 120. |
| | 9 | 12/31/87 | 5 | | | 5418 | 0 | 8,075.24 | .00 | | .00 | | SUMMARY | 7,954. |
| | 2 | 12/31/87 | 5 | | | 5418 | 1 | 3,572.82 | .00 | | .00 | | SUMMARY | 11,527. |
| | | 12/31/08 | 0 | 52 | .00 | 5418 | 1 | 34,014.56 | .00 | | .00 | | SUMMARY | 22,486. |
| | 2 | 12/31/08 | 0 | | | 5418 | 0 | 10,437.44 | .00 | | 10,437.44 | 12/31/88 | SUMMARY | 22,049. |
| | | 12/31/89 | 5 | | | 5418 | 1 | 24,802.69 | .00 | | .00 | | SUMMARY | 36,852. |
| | | 05/31/90 | 5 | 21 | | 5418 | 1 | 10,437.44 | .00 | | 10,437.44 | 12/31/89 | SUMMARY | 26,414. |
| | | 05/27/90 | 5 | | | 5418 | 1 | 4,215.12 | .00 | | 4,215.12 | 05/31/90 | SUMMARY | 26,199. |
| | | 06/03/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 06/01/90 | SUMMARY | 21,998. |
| | | 06/10/90 | 5 | | .00 | 5418 | 1 | 200.72 | .00 | | 200.72 | 06/08/90 | SUMMARY | 21,798. |
| | | 06/17/90 | 5 | | .00 | 5418 | 1 | 200.72 | .00 | | 200.72 | 06/15/90 | SUMMARY | 21,597. |
| | | 06/24/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 06/22/90 | SUMMARY | 21,396. |
| | | 07/01/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 06/29/90 | SUMMARY | 21,196. |
| | | 07/08/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 07/06/90 | SUMMARY | 20,995. |
| | | 07/15/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 07/13/90 | SUMMARY | 20,794. |
| | | 07/22/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 07/20/90 | SUMMARY | 20,593. |
| | | 07/29/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 07/27/90 | SUMMARY | 20,393. |
| | | 08/05/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 08/03/90 | SUMMARY | 20,192. |
| | | 08/12/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 08/10/90 | SUMMARY | 19,991. |
| | | 08/19/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 08/17/90 | SUMMARY | 19,790. |
| | | 08/26/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 08/24/90 | SUMMARY | 19,590. |
| | | 09/02/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 08/31/90 | SUMMARY | 19,389. |
| | | 09/09/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 09/07/90 | SUMMARY | 19,188. |
| | | 09/16/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 09/14/90 | SUMMARY | 18,988. |
| | | 09/23/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 09/21/90 | SUMMARY | 18,787. |
| | | 09/30/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 09/28/90 | SUMMARY | 18,586. |
| | | 10/07/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 10/05/90 | SUMMARY | 18,385. |
| | | 10/14/90 | 5 | | | 5418 | 1 | 200.72 | .00 | | 200.72 | 10/12/90 | SUMMARY | 18,185. |
| | | 10/21/90 | 5 | | .00 | 5418 | 1 | 200.72 | .00 | | 200.72 | 10/19/90 | 08299777 | 17,984. |
| | | 10/23/90 | 5 | | .00 | 5418 | 1 | 200.72 | .00 | | 200.72 | 10/26/90 | 08301564 | 17,783. |
| | | | | | .00 | 5418 | 1 | 200.72 | .00 | | 200.72 | 11/02/90 | 08300357 | 17,583. |

350
2

266.75 / 266.75
26. 54.85
1,426.10
26. 35.42
920.92
177.80
3,093.72

86,017.49

266.75
280,290.00

*Pension Amount never received Court order*
*3 year full consent Agreement*
*$28,448.71*
*August 4 07*
*(fcw) 08*

Exhibit A

| Retired With Benefits Payable Commencing | Monthly Temporary Benefit Amount* Per Year of Credited Service | Maximum |
|---|---|---|
| October 1, 1996 and prior to October 1, 1997 | 35.75 | $ 1,072.50 |
| October 1, 1997 and prior to October 1, 1998 | 37.00 | 1,110.00 |
| October 1, 1998 and prior to October 1, 1999 | 38.65 | 1,159.50 |

*Benefit payable for months commencing October 1, 1999.

(c) (1) An employee who retired under Article II of this Plan with 30 or more years of credited service who is receiving a monthly early retirement supplement which commenced prior to October 1, 1999 shall receive an increase to such monthly supplement as follows:

| Effective Date of Increase | Amount of Increase* | |
|---|---|---|
| | Payable to Age 62 and One Month | Payable Between Age 62 and One Month - 65 |
| October 1, 1999 | $ 90.00 | $ 45.00 |

*This increase will not result in a total monthly benefit of less than $1,425.00 for months prior to age 62 and one month, or $712.50 for months between ages 62 and one month and 65.

The amount of any monthly supplement payable to an employee who retired under Article II of the Plan with benefits commencing prior to October 1, 1999 shall be redetermined to the amount of supplement which would have been payable had the applicable

970314-1056-7082-884198            CISCO: 18900              TPD-CAH (Rev 3/95)


### NOTICE OF CORPORATION APPROVAL OF
### APPLICATION FOR TOTAL AND PERMANENT DISABILITY BENEFITS
### THE GENERAL MOTORS HOURLY-RATE EMPLOYEES PENSION PLAN


**Paul C Mathis**                                                        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


Mr. Paul Mathis
17285 Coral Gables St.
Southfield, MI 48076-4784


March 14, 1997


Your application for total and permanent disability benefits under the General Motors Hourly-Rate Employees Pension Plan has been reviewed. On the basis of the medical evidence submitted, the Corporation has determined that you ARE totally and permanently disabled. Once we have compiled the necessary data on your case, you will receive an Hourly Pension Plan Retirement Estimate Package. This package will contain the forms needed to initiate your retirement.

Our GM Pension Administration Center representatives, along with your union benefit representative, are dedicated to helping you throughout the retirement process and we will continue to serve you as a General Motors retiree. You can call the GM Pension Administration Center Monday through Friday from 7:00 a.m. - 7:00 p.m. eastern time by dialing one of our convenient toll-free numbers - 1-800-659-2000 (or 1-800-659-8811 for hearing or speech impaired). Please have your social security number available when calling the Center so that our Customer Service Representatives can assist you efficiently.


Sincerely,

GM Pension Administration Center


Distribution:        Employee            Union Benefit Representative

*Administrative Law Judge Order*
*Trial Court Transcript Page 4*

## Who is considered totally and permanently disabled?

Section 361(3) provides that a worker is totally and permanently disabled if he or she has suffered:

(a)   Total and permanent loss of sight of both eyes.
(b)   Loss of both legs or both feet at or above the ankle.
(c)   Loss of both arms or both hands at or above the wrist.
(d)   Loss of any 2 of the members or faculties in subdivisions (a),(b), or (c).
(e)   Permanent and complete paralysis of both legs or both arms or of 1 leg and 1 arm.
(f)    Incurable insanity or imbecility.
(g)   Permanent and total loss of industrial use of both legs or both hands or both arms or 1 leg and 1 arm; for the purpose of this subdivision such permanency shall be determined not less than 30 days before the expiration of 500 weeks from the date of injury.

It is relatively easy to determine whether a person has lost a leg or an eye (in the case of an eye, vision of 20/200 or less is considered a loss). Questions sometimes arise, however, concerning other categories. For the category of incurable insanity or imbecility, the worker must have a mental condition so severe that it affects the quality of the worker's personal non-vocational life in a significant manner comparable to the loss of two members or sight of both eyes, and it must be likely that normal functioning cannot be restored.



OMB NO. 1545-0008    UNION DUES    85    Form W-2 Wage and Tax Statement · 1985

Department of the Treasury — IRS
Copy C
For employe's records
This information is being furnished to the Internal Revenue Service

2 Employer's name, address and ZIP code
GENERAL MOTORS CORPORATION
BUICK-OLDSMOBILE-CADILLAC GRP
W FORT AND W END
DETROIT    MI   48209

3 Employer's identification number
3H-0572615

6* LIFE INS    65.04
7 Advance EIC payment    .00

8 Employe's social security number    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
9 Federal income tax withheld    22.96
10 Wages, tips, other compensation    179.87
11 Social security tax withheld    8.09

12 Employe's name, address and ZIP code
19020 11   06415   1   05687
PAUL C MATHIS
19215 RUTHERFORD
DETROIT    MI   48235

13 Social security wages    114.83
14 Social security tips    00

16MI    # KH-730-14-40

17 State or local income tax withheld    0.1?
18 State or local wages, tips, etc.    179.87
19 Name of State or locality    UNION

20 State or local income tax withheld    3.49
21 State or local wages, tips, etc.    179.87
22 Name of State or locality    DET.

---

OMB NO. 1545-0008

Form W-2 Wage and Tax Statement · 1985

Department of the Treasury — IRS
Copy B To be filed with Employe's FEDERAL tax return.
This information is being furnished to the Internal Revenue Service

Employer's name, address and ZIP code
BUICK-OLDSMOBILE-CADILLAC GRP
W FORT AND W END
DETROIT    MI   48209

3 Employer's identification number
3H-0572615

6*

7 Advance EIC payment

8 Employe's social security number    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
9 Federal income tax withheld    0.00
10 Wages, tips, other compensation    4,095.12
11 Social security tax withheld    330.76

12 Employe's name, address and ZIP code
19020 11   06415
PAUL C MATHIS
19215 RUTHERFORD
DETROIT    MI   48235

13 Social security wages    4,690.50

16 SICK PAY

17 State or local income tax withheld
18 State or local wages, tips, etc.
19 Name of State or locality

20 State or local income tax withheld
21 State or local wages, tips, etc.
22 Name of State or locality

General Motors Corp - W2 1985 (Paul)

ID - 19600   DIVISION - BUICK-OLDSMOBILE-CADILLAC GRP     PLANT - FLEETWOOD PLANT

PLANT - 020

19600020I

4G-7829      P C MATHIS          10/10/84

| Code | Date | | 5418 | | Amount | | YTD PAID | | Date | Code | Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0253 | 11/04/90 | 5 | 5418 | 1 | .00 | 200.72 | YTD PAID: | 200.72 | 11/09/90 | 0830521 | 17,382 |
| 0254 | 11/11/90 | 5 | 5418 | 1 | .00 | 200.72 | | 200.72 | 11/16/90 | 0830704 | 17,381 |
| 0255 | 11/18/90 | 5 | 5418 | 1 | .00 | 200.72 | | 200.72 | 11/23/90 | 0830888 | 16,980 |
| 0256 | 11/25/90 | 5 | 5418 | 1 | .00 | 200.72 | | 200.72 | 11/30/90 | 0831071 | 16,780 |
| 0237 | 12/02/90 | 0 | 5418 | 1 | .00 | 192.11 | | | | | 23,972 |
| 0238 | 12/02/90 | 0 | 5418 | 1 | .00 | 147,266.16 | | 147,264.16 | | 999999 | 173,236 |
| 0239 | | X | 5418 | 1 | .00 | 27,148.96 | | 35,462.65 | 12/06/90 | 0831256 | 135,813 |
| 0261 | 12/12/90 | | 5418 | 1 | .00 | 11,737.10 | | | 12/07/90 | | 135,527 |
| 0214 | 12/16/90 | | 5418 | 1 | .00 | 286.75 | | 286.75 | 12/14/90 | 0831439 | 147,264 |
| 0213 | 12/23/90 | 10 | 5418 | 1 | .00 | 573.50 | | 573.50 | 12/21/90 | 0831622 | 146,977 |
| 0212 | 12/30/90 | | 5418 | 1 | .00 | 286.75 | | 286.75 | 01/04/91 | 0831804 | 146,403 |
| 0611 | 01/06/91 | 5 | 5418 | 1 | .00 | 286.75 | | 286.75 | 01/11/91 | 0831986 | 146,117 |
| 0616 | 01/13/91 | 5 | 5418 | 1 | .00 | 286.75 | | 286.75 | 01/18/91 | 0832169 | 145,830 |
| 0667 | 01/20/91 | 5 | 5418 | 1 | .00 | 286.75 | | 286.75 | 01/25/91 | 0832348 | 145,543 |
| 0668 | 01/27/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 02/01/91 | 0832548 | 145,256 |
| 0059 | 02/03/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 02/08/91 | 0832531 | 144,970 |
| 0169 | 02/10/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 02/08/91 | 0832712 | 144,683 |
| 0271 | 02/17/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 02/15/91 | 0832894 | 144,396 |
| 0272 | 02/24/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 02/22/91 | 0833076 | 144,109 |
| 0273 | 03/03/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 03/01/91 | 0833254 | 143,823 |
| 0373 | 03/10/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 03/08/91 | 0833433 | 143,556 |
| 0612 | 03/17/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 03/15/91 | 0833612 | 143,249 |
| 0271 | 03/24/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 03/22/91 | 0833790 | 142,962 |
| 0270 | 03/31/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 03/29/91 | 0833968 | 142,676 |
| 0170 | 04/07/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 04/05/91 | 0834163 | 142,389 |
| 0171 | 04/14/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 04/12/91 | 0834342 | 142,102 |
| 0141 | 04/21/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 04/19/91 | 0834494 | 141,815 |
| 0142 | 04/28/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 04/26/91 | 0834669 | 141,529 |
| 0212 | 05/05/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 05/03/91 | 0834847 | 141,242 |
| 0213 | 05/12/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 05/10/91 | 0835024 | 140,955 |
| 0214 | 05/19/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 05/17/91 | 0835201 | 140,668 |
| 0035 | 05/26/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 05/24/91 | 0835377 | 140,382 |
| 0086 | 06/02/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 05/31/91 | 0835550 | 140,095 |
| 0237 | 06/09/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 06/07/91 | 0835723 | 139,808 |
| 0238 | 06/16/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 06/14/91 | 0835896 | 139,521 |
| 0239 | 06/23/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 06/21/91 | 0836070 | 139,235 |
| 0218 | 06/25/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 06/28/91 | 0836243 | 138,948 |
| 0269 | 06/30/91 | 0 | 5418 | 1 | .00 | 286.75 | | 286.75 | 07/05/91 | 0836416 | 138,661 |

-TOTALS FOR TT02--

INDEMNITY
TOTAL TO EMPLOYE  -  PAID TO DATE:      94,291.18   YTD PAID:    7,742.25
TOTAL TO EMPLOYE  -  PAID TO DATE:      94,291.18   YTD PAID:    7,742.25

-TOTALS FOR INJURY--

T.T. INDEMNITY    -  PAID TO DATE:      94,291.18   YTD PAID:    7,742.25
TOTAL INDEMNITY   -  PAID TO DATE:      94,291.18   YTD PAID:    7,742.25
TOTAL TO EMPLOYE  -  PAID TO DATE:

MEDICAL EXPENSE   -  PAID TO DATE:          .00                     .00
OTHER OUTSIDE EXP -  PAID TO DATE:          .00                     .00

DEC. # 1391

# S T A T E   O F   M I C H I G A N

## WORKERS' COMPENSATION APPEAL BOARD



Paul C. Mathis
17265 Coral Gables St.
Southfield, MI 48076

**PAUL C. MATHIS,**
    **SS # 378 40 7829,**
        **PLAINTIFF,**

        VS.

**GENERAL MOTORS CORPORATION,**
**FISHER BODY DIVISION,**
**FLEETWOOD PLANT,**
        **DEFENDANT.**

                    This cause having come before the
Appeal Board on appeal by defendant from the decision, mailed on
February 18, 1986, of Administrative Law Judge Matulewicz, granting
compensation benefits; after due consideration of the evidence
taken and the brief(s) of counsel, the Board having made a finding
of facts and law, and it appearing to the undersigned Members of
the Board that the decision made as aforesaid should be affirmed
with modification, Now, Therefore;

                    IT IS ORDERED, That the decision
of the administrative law judge in this cause shall be and it
hereby is affirmed with modification. Interest shall be paid on
all unpaid benefits from the due dates until paid at the rate of
10% per annum. In all other respects, the decision of the ad-
ministrative law judge is affirmed.

Michigan, this  3rd

Dated and entered at Lansing,
day of November   , A.D. 1990;

WORKERS' COMPENSATION APPEAL BOARD

## MAILED

NOV 03 1990

WORKERS' COMPENSATION
APPEAL BOARD

Jeffrey M. Young

Stephen R. King                    Members

JMY:gsl

Exhibit 1A

## DECISION

Paul C. Mathis                          GMC-Fisher Body
SS# 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

_Plaintiff_                                        _Defendant_

**Type of Claim**  ☒ 1-Total Disability  ☐ 2-Partial  ☐ 3-Specific Loss  ☐ 4-Death  ☐ 5-Total & Permanent  ☐ 6-Other

**Award Entered**  ☒ 1-Granted  ☐ 2-Denied  ☐ 3-Withdrawn  ☐ 4-Dismissed  ☐ 5-Stipulated Agreement  ☐ 6-Volt Payme

Hearing date(s) _January 22, 1986_                    Injury date(s) established _October 10,_

Date(s) deposition taken _Pl. Ex. 1, 2; Def. Ex.1,2,_      ~~Class~~ Unskilled employment _Unskille_

Date submitted for decision _January 22, 1986_            Gross wages _$475.00_

Dependent(s) date of marriage-birth        _Wife: Ruthie_        _(Married April, 1980_

_Sons not found to be dependents_

IT IS FOUND that the employee is partially/totally disabled and therefore it is ordered that the defe shall pay compensation as follows:

| | | | |
|---|---|---|---|
| At the rate of _$286.75_ | from _Oct. 11, 1984_ | to _Jan. 24, 1986_ | inclusive |
| At the rate of _____ | from _____ | to _____ | inclusive |
| At the rate of _____ | from _____ | to _____ | inclusive |
| At the rate of _____ | from _____ | to _____ | inclusive |
| At the rate of _____ | from _____ | to _____ | inclusive |
| At the rate of _____ | from _____ | to _____ | inclusive |

IT IS FURTHER FOUND that the employee is still partially/totally disabled and therefore it is ordered that the defendant(s) shall pay compensation at the rate of _$286.75_ per week, until further order of the Bureau.

IT IS ORDERED that Defendant(s) shall pay compensation at the rate of $_____ from _____ 19___ for the specific period of _____ weeks for the loss of _____

IT IS ORDERED that Defendant(s) shall pay compensation at the rate of $_____ from _____ 19____ until further order of the Bureau not to exceed 500 weeks from the date of death of said employee. With interest thereon, in accordance with Section 801(5) from date each payment was due until paid.

IT IS FURTHER ORDERED that the defendant(s) shall be responsible for medical expense(s) pursuant to Section 315 as follows: _Dr. Kafi and Dr. Rosenberg_

IT IS FURTHER ORDERED that the maximum authorized attorney fee shall not exceed _30%_ percent of the compensation accrued. (Subject to maximum established in Rule 14, R408.44)

IT IS FURTHER ORDERED that (Subject to the provision of Section 858 (412.858)).

_(see attached sheets)_

Dennis Matulewicz
_Administrative Law Judge_

FEB 1 8 1986
BU OF WORKERS' DIS. COMP.
LANSING, MICHIGAN

RECEIVED
FEB 2 1 1986
Workers' Disability Compensation Dept
Lansing, Michigan

Signed this _24th_ day of _January_ A.D. 19 _86_ at _____, Michigan

Unless a Claim for Review is filed with the Workers' Compensation Appeal Board, P.O. Box 30015, Lansing, MI 48909 by either party _within fifteen_ days from the date stamped hereon as "Mailing Date" this decision shall stand as the final decision of the Bureau of Workers' Disability Compensation.

(3)

Paul C. Mathis,
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,

Vs.

GMC-Fisher Body,
continued,

*No Employment for GM in 1982 or 1983*

## MEDICAL

Norman M. Rosenberg, D.O. examined plaintiff and found him to be disabled because of a carpal tunnel syndrome of the right wrist and an acute tramatic cervical myofascitis. The doctor further found that this disability was caused by and significantly aggravated by his employment. Dr. Sinha, an orthopedist, examined plaintiff on several occasions and disabled plaintiff because of an acute carpal tunnel syndrome in his right wrist and a moderate one in his left wrist.

Doctor Bhama, a psychiatrist, examined plaintiff and found him to be suffering from schizophrenia, schizo affective type, which condition does not have much to do with life circumstances and situations. Doctor Colman, a psychiatrist, examined plaintiff twice, once in January and once in May of 1985. The doctor diagnosed paranoid state and schizophrenia, paranoid type, respectively. The doctor also found substance abuse which had no significance in his findings. The doctor did not find any relationship to his employment.

Dr. Kafi, plaintiff's treating psychiatrist since January 8, 1985, found the plaintiff to be disabled from a major psychotic depression associated with a carpal tunnel syndrome of the right hand. The doctor attributes all of plaintiff's symptoms as being job related.

Dr. Gowda examined the plaintiff and found numerous subjective complaints which he could not substantiate with objective findings. He had difficulty in making a diagnosis because of plaintiff's complex symptomatology and emotional overlay.

(4)

Paul C. Mathis,
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,

Vs.

GMC-Fisher Body,

continued,

## CONCLUSION

Plaintiff has sustained the burden of proof by a preponderance of the evidence that he is disabled as a result of employment resulting in major depression and carpal tunnel syndrome of both hands.  In October of 1984 plaintiff developed carpal tunnel syndrome because of the use of a vibrating air gun.  Plaintiff was not allowed to transfer to another job and was not given restrictions.  Because of this treatment he became angry and developed a major psychotic depression.  Although there are other incidents in plaintiff's life the treating psychiatrist, Dr. Kafi, testified that plaintiff's psychiatric condition was still significantly related to his carpal tunnel syndrome and the way that he was treated by his foreman on the job.  Dr. Sinha found carpal tunnel syndrome and plaintiff's testimony at trial is convincing that it arose out of his employment.

## ORDER

IT IS FOUND that the plaintiff has sustained the burden of proof by a preponderance of the evidence that he is disabled as a result of the above injury (carpal tunnel syndrome of both hands and depression) arising out of and in the course of his employment.  The defendant shall pay benefits as ordered above.

Defendant shall be liable for reasonable and necessary medical care in accordance with the Act.

Administrative law judge order
finding Sec. 361 (3)
Total permanently disabled



(5)

Paul C. Mathis,
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,

Vs.

GMC-Fisher Body,

continued,

Defendant is given credit for wages and benefits paid under
the Act.

BUREAU OF WORKERS' DISABILITY COMPENSATION

DENNIS MATULEWICZ          (#34)
ADMINISTRATIVE LAW JUDGE

Signed this 26th day of January A.D. 1986, At Detroit, Michigan

MAILED
FEB 1 8 1986
BU OF WORKERS DIS. COMP.
LANSING, MICHIGAN


RECEIVED
FEB 11 1986

STATEMENT OF EMPLOYEE'S PHYSICIAN
(Please Complete Fully)

1. Full name of the patient PAUL CLARENCE MATHIS   Age 52   Height 6 Ft-2   Weight 180

2. On what date were you first consulted on account of the present injury or sickness described herein? November 15, 1984

3. What are the patient's present symptoms or complaints? Cervical myofascitis and carpal tunnel syndrome of the right hand

4. What past history was given to you? while working at G.M. Corp in was involved in an accident while working with an airgun

Give the date of the onset of the illness aprx. 10/84

5. (A) On what date did you last give treatment? 9/16/91 (B) What was the total number of treatments given on account of this injury or sickness? 205
   (C) Are you the present attending physician? yes   (D) Date of last examination 7-16-91
6. (A) What is the diagnosis? Carpal tunnel syndrome — cerv. project.
   (B) What is the prognosis? Poor

7. (A) State the causes of this disability   see #4

   (B) Give physician findings that support your diagnosis   Pain of I from in neck of hand

   (C) Were x-rays or laboratory tests employed in making diagnosis? NO ☐   YES ☑   If "YES", indicate which
      EMG
   Date of such test(s) 12-69   By whom made Dr Cohen
   Findings Compatible c carpal tunnel syndrome

8. Is an operation advisable? YES ☐ NO ☑   Has it been advised? YES ☐ NO ☐   Is one contemplated? YES ☐ NO ☑
   If one is contemplated, when? ___   If an operation is not contemplated, why? ___

9. (A) How has the patient reacted to treatment? Poor
   (B) Is the patient confined to bed, at home or hospitalized? No   If so, how long will such confinement be necessary? ___

10. (A) Is the patient able to engage in any occupation or employment for wage or profit? Involvement neck & rt hand
    (B) If "NO" or answer is qualified, from what date to your personal knowledge, has the patient been continuously so disabled? ___
    (C) If "YES" or answer is qualified, describe any work limitations? Invovement of rt hand & neck

11. Give the approximate date on which gainful employment of any kind may be expected to be resumed. (If not expected to be able to resume any kind of gainful employment, indicate "NEVER".) Never

12. (A) Are you currently providing this patient any medical treatment? yes
    (B) If "YES", how long have you been treating this patient for this condition? 1984
    (C) Are you his regular family physician? No
    (D) If "YES" how long have you been such? ___

13. Is the patient mentally capable of transacting his personal affairs — for instance, the endorsing of checks — with the realization of the nature and consequence of his acts? yes

Physician Name (Please Print) Norman M. Rosenberg, D.O.
Address: Number and Street 17000 West 8 Mile #102   Southfield   Mi 48075

City ___   State ___   Zip Code ___
Date Signed 7/24/91   19___ Signature of Physician ___   Office Phone (313). 559-2400
Graduate of Des Moines College of Osteopathic Medicine & Surgery   Year Graduated 1963

EXHIBIT D
Form HRP-21
(Rev. 12-92)

(For  Reproduction  Locally)
**DETERMINATION  OF  TOTAL  AND  PERMANENT  DISABILITY**
**THE  GENERAL  MOTORS  HOURLY-RATE  EMPLOYES  PENSION  PLAN**

To:
UNIVERSITY OF MICHIGAN
1500 E. MEDICAL CENTER DRIVE
ANN ARBOR, MI  48109-0352

Date  _Oct. 7, 1993_

Employe Name  _Paul  Mathis_

Appointment Date and Time  _Feb. 14, 1994 (1:00pm)_

The employe named above is being referred to you for examination to determine whether he shall be deemed to be totally and permanently disabled, pursuant to the following definition:

"An employe shall be deemed to be totally and permanently disabled when on the basis of medical evidence satisfactory to the Corporation the employe is found to be wholly and permanently prevented from engaging in any occupation or employment for wage or profit as a result of bodily injury or disease, either occupational or non-occupational in cause."

This referral is made to your clinic pursuant to agreement between General Motors Corporation and its unions.  Your determination that this employe is, or is not, totally and permanently disabled, as defined above, will be binding upon both parties to the agreement.

When you have completed your examination, please forward one copy of your findings, along with the attached completed "Summary of Medical Determination", to the following address:

The Secretary
Pension Board of Administration
Room 8-227 General Motors Building
3044 W. Grand Boulevard
Detroit, Michigan  48202

Also send one copy of "Summary of Medical Determination" to the GM Pension Administrator who requested the examination, along with your invoice for payment related to your services, to the address shown below.

Very truly yours,

_Malcolm V.A. Moulton_
GM Pension Administrator

_Detroit Regional Benefit Center_
Plant and Division

_8045 Second Ave._
Number and Street

_Detroit, Mi  48202-2403_
City, State  Zip Code

Distribution: Original – Clinic
Copy 1 – Employe
Copy 2 – Management Member of Local Pension Committee
     3    UAW

*Now on 12-15-04 They did it again*
*Evil people ~ Sept 08 (Paul)*

# Metropolitan Life Insurance Company

One Madison Avenue
New York, N.Y. 10010

| Claim Number | Group Number | Social Security Number or Social Insurance Number | First Payment Due | | | Maximum Gross Monthly Benefit (Subject to Deductions) | |
|---|---|---|---|---|---|---|---|
| 85269480 | 15500 | 371407529 | 10 | 31 | 85 | $830 | 00 |

Date 10/24/85

PAUL C MATHIS
19215 RUTHERFORD
DETROIT          MI          48235

Paul C Mathis
17265 Coral Gables St
Southfield, MI 48076

Name of Insured  MATHIS                    PAUL

Your claim for Extended Disability Benefits has been approved with an effective date of  10-17-85

Please see paragraph checked below.   *Unusual Punishment See next Page (Paul) 08*

[X]  Enclosed is a check for benefits payable for the period from  10-17-85  through  10-31-85 . Monthly benefits will continue to be paid subject to the terms of the Group Policy, including receipt of due proof of continued total disability upon request.

[ ]  Your claim for Extended Disability Benefits has been approved but no monthly benefits are payable at present because the total allowable deductions under the terms of the Group Policy exceed your gross monthly benefit.
If your allowable deductions decrease while you remain totally disabled, entitling you to monthly benefits, you will be informed.

## EXPLANATION OF BENEFITS TO DATE

### SCHEDULE OF DEDUCTIONS

| Items | Amount Per Month | Period for Which Deductions Made From | Through |
|---|---|---|---|
| Overpayment | 401.00 | 10-31-85 | 1-20-87 |

### SCHEDULE OF NET PAYMENTS

| Period for Which Payments Made From | Through | Amount of Each Net Monthly Payment | Total Payments |
|---|---|---|---|
| 10-17-1985 | 10-31-1985 | $401.61 | $401.61 |
| IF A FULL MONTHS BENEFITS HAD BEEN PAID, THE AMOUNT WOULD BE | | $830.00 | |

| Amount Due To Date |
|---|
| $401.61 |

If you have any questions, please contact the Insurance Office at your Plant.

NOTE: If any Net Monthly Payment is for a period which is less than a full calendar month, such Payment has been determined on the basis of the ratio of the number of calendar days of eligibility to the number of calendar days in the month.

Disability Claims Section
Group Life Claims Division

# NATIONAL BENEFITS CENTER
## Integrated Disability Activity

9/20/2004

*[handwritten: gross Malice]*

*[handwritten: Medicare Verification unit]*
*[handwritten: + 859 28 16295]*

Paul Mathis
17265 Coral Gables
Southfield, MI  48076

*[handwritten: Undisputed Truth]*

*[handwritten: Worker's Compensation unit]*
*[handwritten: Hourly Benefit]*
*[handwritten: P.O. Box 14607]*

Re:  Paul Mathis
Claim #8518122433

*[handwritten: Lexington Ky]*
*[handwritten: Coded see #9854]*

*[handwritten: I was laid-off Oct 5, 1982 (letter attached)]*
*[handwritten: I received Social Security Benefit Sept 30, 1985 — Coded Injured]*

Dear  Mr. Mathis : *[handwritten: Proves these People are incorrect and owe me Retro Benefits — Paul C Mathis]*

Public Act 357 of 1980, which became effective January 1, 1982, provides that Workers'
Compensation benefits shall be reduced by certain Social Security benefits received for
(the same period.) Accordingly and pursuant to Section 418.354 of the Act, you are
required to establish proof of your application for old age Social Security benefits.  If you
have applied for or are currently receiving Social Security benefits, you are required by
law to provide this information to your employer within 30 days of receipt of this notice.
Your failure to fulfill these requirements may result in your benefits being modified or
discontinued.

On the back of this letter is your notice to your employer, General Motors, regarding
Social Security benefits.  Please complete and return in the envelope provided within 30
days.

If you should have any questions regarding this matter, please contact the undersigned.

*[handwritten: Retirement Income Security Act]*
Sincerely,   *[handwritten: Clear Violation C.L 600-5807(24)]*
*[handwritten: 29 U.S.C.A § 1132(a)(1)(B)]*

A. Donaldson   *[handwritten: Recover Benefit]*

Workers' Compensation Representative   *[handwritten: Michigan House Bill HB5084]*
Ext.

*[handwritten: Prior to March 31 1982 I was not receiving Workman Comp or SSA]*

Certified Mailing



**Fisher Body**
Division of General Motors Corporation

GM

Detroit Central Plants
6051 Hastings Street
Detroit, Michigan 48211

October 5, 1982

Mr. Paul C. Mathis
19215 Rutherford
Detroit, MI    48235

Dear Mr. Mathis:

The following information is given to you per your recent
request:

You were hired by the Fisher Body Division, Plant #21,
General Motors Corporation on April 14, 1978. During
your employment with us you have held the classifica-
tions of metal finisher (production), spotwelder and
sweeper/janitor. You have received average and above
average on the quality and quantity of your work, your
dependability and attitude by your immediate supervisor.

You are currently laid off due to a reduction in the
work force.

Very truly yours,

FISHER BODY DIVISION
Detroit Central Plants

John M. Grogan (MH)

John M. Grogan
Supervisor-Employment

JMG / mw

*Reference — letter for Job search
after laid off — form (Sept 08 — dated)*

*hired date Reported — 10-23-78*
*② years*

*I was Not Receiving Worker Comp in 1982
not in 1983 Nor was I receiving Social Security*



State of Michigan
Department Of Labor
Michigan Employment Security Commission
7310 Woodward
Detroit, Michigan 48202

Type- or print
PAYER'S
name, address,
ZIP code, and
Federal
identifying
number.

Statement for
Recipients of **1983**
Unemployment
Compensation
Payments
Copy B
For Recipient

Federal Number
38-6000134 W

Recipient's identifying number

38-60-782__

4. Unemployment compensation
4,925.00

2. Income tax refund

3. Refund is for tax-year
1983

Federal income tax withheld

Discharge of indebtedness

Taxable grants

RECIPIENT'S name, address, and ZIP code below.

C MATHIS
10292 RUSSELL
DETROIT MI 48211

Agriculture payments

This information is being furnished to the Internal Revenue Service.

I was laid-off from 1982-1983
Called back too Fleetwood Cadellac 1984 injurie
HD says prior too 1982 March 1982- General motors incorrect

# Official Report of Test Results
# Tests of General Educational Development

### The General Educational Development Testing Service
### of the American Council on Education

**ged**

**Examinee:**

MATHIS, PAUL C

| | |
|---|---|
| **Date of Birth:** 10/31/1939 | **Test Format:** English Print |
| **Social Security Number:** 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 | **Date Scored:** 12/05/1974 |
| | **Date Reported:** 05/07/2002 |

**Tested at:** 9000000000
GEDTS

**Reported to:** MONTANA
Debbie Casey
OFFICE OF PUBLIC INSTRUCTION
1300 11TH AVENUE
BOX 202501
HELENA, MT  59620

| | | Test Date | Form | Standard Score | Percentile Rank |
|---|---|---|---|---|---|
| Test 1: | Writing Skills | 12/05/1974 | BE | 49 | 46 |
| Test 2: | Social Studies | 12/05/1974 | BE | 60 | 84 |
| Test 3: | Science | 12/05/1974 | BE | 57 | 76 |
| Test 4: | Interpreting Literature and the Arts | 12/05/1974 | BE | 54 | 66 |
| Test 5: | Mathematics | 12/05/1974 | BE | 46 | 34 |

The scores on this report are the *highest* scores achieved by the examinee and not necessarily the most recent. If the latest scores are lower than scores previously achieved, the retest scores are not reported.

**Total Standard Score:** 266
**Avg. Standard Score:** 53

**PASS**

**Signature of Chief Examiner:** *[signature]*

Copies of this report may be obtained from the GED Testing Service.
One Dupont Circle NW   Washington, DC 20036-1163   (202) 939-9490

GEDR0101

**Opinion**

Chief Justice
Conrad L. Mallett, Jr.

Justices
James H. Brickley
Michael F. Cavanagh
Patricia J. Boyle
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor

*3 Year Rule*
*Pension Amount 1,426.10*
*Consent Agreement never paid*
*Court order not paid Benefits*
*The Benefit Claimed are Accural from 1990*

FILED JULY 28, 1998

SCHOOL DISTRICT FOR THE CITY
OF ADRIAN, et al,

     Plaintiffs-Appellees,

v                              No. 107733

MICHIGAN PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM and MICHIGAN
PUBLIC SCHOOL EMPLOYEES RETIREMENT
BOARD,

     Defendants-Appellants.

BEFORE THE ENTIRE BENCH

Kelly, J.

    We granted leave in this case to review a 1993
declaratory ruling of the Michigan Public School Employees
Retirement Board.  The board concluded that worker's
compensation payments made to an injured employee, who was
unable to work between March 13, 1992, and June 12, 1996, [1]
constitute sick leave pay and thus are
reportable compensation.  We affirm that ruling.

        I.  FACTUAL AND PROCEDURAL BACKGROUND

    On September 5, 1990, Ms. Bessie Traylor, age fifty-
eight, fell and broke her hip while at work.  At the time, she
was employed by one of the plaintiff school districts and had
earned  29.8 years of retirement service credit.  She began
receiving worker's compensation payments for her injury and,
later, sought regular service retirement benefits from the

Michigan Public School Employees Retirement System in lieu of
unemployment compensation benefits. Consequently, none of
her worker's compensation payments were considered
"compensation" for purposes of calculating her retirement
service credit.

As a consequence, Ms. Traylor would have received less
than thirty years of service credit, greatly reducing her
lifetime retirement benefits.  Had she been given credit for
the time she collected worker's compensation payments, she
would have retired with 30.8 years' service and her full
retirement package.  Ms. Traylor contested the retirement
system's denial of one year of retirement service credit and
received an adverse ruling.

She then filed an exception with the Michigan Public
School Employees Retirement Board. The board unanimously
granted her request.  It ordered her account credited for both
the compensation and service time lost while she received
worker's compensation benefits, beginning September 6, 1990,
the date of her injury.

On March 13, 1992, the retirement board adopted a policy
consistent with this decision and, later, notified the school
districts.[2]  The districts sought and
received a hearing from the retirement board, which issued a
declaratory ruling affirming its policy on July 30, 1993.  It
stated that employees were to receive retirement credit for
the time they received worker's compensation payments due to
an injury incurred in the employment of a member school
district.

The school districts appealed to the Ingham Circuit
Court, which affirmed the declaratory ruling.  They next
appealed to the Court of Appeals, which reversed the circuit
court's order.[3]

The Court held that retirement system members were not
entitled to retirement service credit for periods during which
they received worker's compensation benefits.[4]
We granted defendants' application for
leave to appeal.[5]

## II.  ANALYSIS

The issue before us is whether the term "compensation"
includes worker's compensation payments received for an injury
suffered by a public school employee between March 13, 1992,
and June 12, 1996.

### A

The definition of "compensation" under consideration in
this case appeared at MCL 38.1304(1); MSA 15.893(114)(1)[6]:

> "Compensation" means the remuneration earned
> by a member for service performed as a public
> school employee.  If part of a member's
> remuneration is not paid in money, the retirement
> board shall fix the value of that part of the
> remuneration not paid in money.  Compensation
> includes, on a current basis, investments made in a
> tax sheltered annuity  for a public school employee
> as remuneration for service under this act.  The
> remuneration shall be valued at the amount of money
> actually paid into the annuity.  Compensation
> includes all amounts deducted from the pay of a

public school employee, including amounts deducted

*Compensation includes* longevity pay, overtime pay, vacation pay, and holiday pay while absent from work, *sick leave pay while absent from work,* and items of deferred compensation, exclusive of employer contributions to the retirement system. Compensation does not include terminal payments for unused sick leave, annual leave, bonus payments, hospitalization insurance and life insurance premiums, other fringe benefits paid by and from the funds of employers of public school employees, and remuneration paid for the specific purpose of increasing the final average compensation. [Emphasis added.]

The Court of Appeals determined that the phrase "sick leave pay while absent from work" did not include worker's compensation payments made to a public school employee injured while at work. To support its conclusion, it cited two statutes that specifically enumerate instances when a member may receive credit for periods worker's compensation benefits are drawn.[7] The Court concluded that, had the Legislature intended that all members receive service credit while drawing worker's compensation benefits, the statutory exceptions would be rendered nugatory. We disagree.

In scrutinizing the declaratory ruling of the retirement board, we keep in mind the limits of judicial review. The Michigan Constitution provides that review of matters, including declaratory rulings, "shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law . . . ." Const 1963, art 6, § 28.

We will set aside the legal rulings of administrative agencies *if* they violate the constitution or a statute or contain a substantial and material error of law. MCL 24.306(1)(a), (f); MSA 3.560(206)(1)(a), (f); *Amalgamated Transit Union v SEMTA*, 437 Mich 441, 450; 473 NW2d 249 (1991). Declaratory rulings are subject to the same judicial review as an agency's final decision or order in a contested case. MCL 24.263; MSA 3.560(163). We give them deference, provided they are consistent with the purpose and policies of the statute in question. *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 416; 565 NW2d 844 (1997).

In reviewing statutes, our primary goal is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). If a statute's wording is certain and unambiguous, we do not interpret it. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). However, if reasonable minds can differ regarding its meaning, then judicial construction is appropriate. *Yaldo v North Pointe Ins Co*, 457 Mich 341; ___ NW2d ___ (1998). In this case, we find that reasonable minds can differ regarding the statutory meaning of "compensation." Therefore, judicial construction is appropriate.

The question presented here is whether the retirement

worker's compensation benefits are fundamentally the same as sick leave pay. It reasoned that the benefits are no less remuneration than is sick leave paid while the employee is absent from work. We agree. We find that the retirement board made a faithful reading of the Legislature's intent when it interpreted the statutory language.

As this Court stated in *McAvoy v H B Sherman Co*, 401 Mich 419, 437; 258 NW2d 414 (1977):

> The objective of the social legislation [worker's disability compensation legislation] is to provide the disabled worker with benefits during the period of his disability so that the worker and his dependents may survive (literally) the catastrophe which the temporary cessation of necessary income occasions. [Emphasis deleted.]

To the extent that worker's disability compensation benefits are intended to replace wages, they are a form of remuneration.

The United States Supreme Court has articulated the public policy objective underlying the furnishing of retirement benefits. It is to provide assistance to aged individuals who, having rendered long and valuable employment service, are no longer able to labor productively. *Helvering v Davis*, 301 US 619; 57 S Ct 904; 81 L Ed 1307 (1937). The retirement board's interpretation of the retirement act clearly supports the policy of providing financial security to public school employees who qualify for retirement.

The Legislature's use of the term "compensation" in the retirement act suggests that a broad interpretation is appropriate in crediting remuneration received by public school employees. The Legislature could have chosen words having a nonrestrictive meaning. It could have selected the word "salary" as the basis for retirement credit. "Salary" has been defined as a periodic payment made to a person for official or professional services or for regular work. See *People v Lay*, 193 Mich 476, 488; 160 NW 467 (1916).

In this case, the plaintiff school districts argued, and the Court of Appeals agreed, that the appropriate rule of statutory construction is *expressio unius est exclusio alterius.*[8] They point out that worker's disability compensation benefits were not *expressly* listed as a form of "compensation" in subsection 4(1) of the retirement act. Therefore, they urge that the Legislature must have intended to exclude them from being treated as creditable compensation under the act.

This interpretation is inappropriate for two reasons. First, included in the items comprising "compensation" is "sick leave pay while absent from work." Worker's disability compensation benefits are a form of sick leave pay because they are compensation for illness or injury suffered by a public school employee while on the job. Accordingly, a reasonable interpretation of "sick leave pay" encompasses worker's disability compensation benefits.

Second, subsection 4(1) specifically identifies what

types of remuneration are not included in the definition of compensation under the retirement act.

Compensation does not include terminal payments for unused sick leave, annual leave, bonus payments, hospitalization insurance and life insurance premiums, other fringe benefits paid by and from the funds of employers of public school employees, and remuneration paid for the specific purpose of increasing the final average compensation. [MCL 38.1304(1); MSA 15.893(114)(1).]

Worker's disability compensation is not an expressly excluded form of remuneration. Hence, it must be viewed as falling within the expansive definition of compensation. Common sense dictates that it must be included in the phrase "sick leave pay while absent from work." The Legislature provided a list of inclusive phrases to outline types of remuneration included in the term "compensation," such as the phrase "sick leave pay while absent from work." It seems likely that it chose that terminology because, had it done otherwise, the retirement act would have to be amended *each time* a new form of compensation is negotiated.

The retirement board's interpretation of the retirement act is supported, also, by legislative history. In 1980, the chapters dividing school districts into two separate classes were consolidated. The consolidation provided benefits to all school districts that earlier had been available only to school employees in the Detroit public schools. A legislative analysis of Senate Bill 104, which became 1980 PA 300, provided the following:

Outstate members would also gain the right to count time spent on sabbatical leave and time receiving worker's compensation as service credit. Both these benefits are now enjoyed by Detroit members. [Senate Legislative Analysis, SB 104, September 23, 1980.]

Thus, in making its declaratory ruling that disability payments are a form of sick leave pay that earn retirement service credit the retirement board gave effect to the Legislature's intent.[9]

In 1986, the retirement system issued a memorandum stating that worker's compensation benefits do not qualify as reportable compensation for retirement purposes. The school districts claim that the retirement board suddenly reversed its policy with its decision in *Traylor v MPSERS*. However, it must be noted that the 1986 memorandum provided the retirement system's interpretation of sick leave pay, not the retirement board's position. The retirement board governs and administers the retirement system, subject to the provisions of the retirement act. The retirement board's interpretation of "compensation" and resulting decision in *Traylor* superseded the retirement system staff's interpretation. *Traylor* provided the retirement board with its first opportunity to address this issue.

The public policy that allows agencies to establish new principles through contested case proceedings is premised on

conceivable situation. The agency must interpret the statute
it administers, and its interpretations are entitled to great
weight. *Magreta v Ambassador Steel Co*, 380 Mich 513;
158 NW2d 473 (1968).

                              B
      While this case was pending in the Court of Appeals, the
Legislature amended the definition of "compensation" to
expressly include the retirement board's interpretation. It
defined the term "compensation" as
      salary and wages and all of the following:

                          * * *

      Pay for vacation, holiday, and sick leave
      while absent from work. As used in this
      subdivision, "sick leave" includes weekly worker's
      disability compensation payments received for
      personal injury in the employ of and while employed
      by a reporting unit.[[10]]

*Sub Judice*

      The Court of Appeals opinion in this case maintained that
the Legislature's action actually supported the school
districts' position. On the contrary, the action of the
Legislature in amending the definition of "compensation" must
be interpreted as a ratification of the position of the
retirement board. We have long and repeatedly held that, when
a legislative amendment is enacted soon after a controversy
arises regarding the meaning of an act, "'"it is logical to
regard the amendment as a legislative interpretation of the
original act . . . ."'" *Detroit v Walker*, 445 Mich
682, 697; 520 NW2d 135 (1994), quoting *Detroit Edison Co v
Revenue Dep't*, 320 Mich 506, 520; 31 NW2d 809 (1948),
quoting 1 Sutherland Statutory Construction (3d ed), §
1931, p 418. In this case, the Legislature's amendment of the
retirement act clarifies its consistent intent.
      Therefore, we find that the retirement board properly
applied the statute when it issued its declaratory ruling.[11]
Worker's compensation payments made
between March 13, 1992, and June 12, 1996, are compensation,
and retirement service credit should be granted for them.

                    III.  CONCLUSION
      We reverse that portion of the Court of Appeals decision
that reversed part of the declaratory ruling of the Michigan
Public School Employees Retirement Board. We hold that weekly
worker's compensation payments made between March 13, 1992,
and June 12, 1996, are sick leave pay for retirement purposes.

      Mallett, C.J., and Cavanagh and Boyle, JJ., concurred with
Kelly, J.



1 This time frame represents the period
between the implementation of the Michigan Public School
Employees Retirement Board decision in *Traylor v
MPSERS,* and the effective date of 1996 PA 268.

A memorandum dated September 25, 1992 from Barbara Grover of the Michigan Public School Employees Retirement System advised member reporting units that

> [t]he Michigan Public School Employees Retirement Board has acted to recognize Weekly Worker's Compensation payments as sick leave pay while absent from work and grant retirement credit for the time a member is receiving Weekly Worker's Compensation. Previously, school employees were not granted credit while receiving these payments.



3
The Court affirmed the retirement board's findings with respect to worker's compensation payments made to retirement system members on or after June 12, 1996, pursuant to 1996 PA 268. It also found that a declaratory ruling by a state board is not a rule for the purpose of the rule-making requirements of the Administrative Procedures Act. These issues are not before this Court.

4
219 Mich App 456; 556 NW2d 524 (1996).

5
456 Mich 917 (1998).

6
Amended by 1996 PA 268, MCL 38.1303a; MSA 15.893(113a).

7
A member totally and permanently disabled by a work-related injury may receive service credit for the time worker's compensation benefits are paid if the member recovers and returns to work. MCL 38.1387; MSA 15.893(197). Also, if a member dies from a work-related injury for which the member receives worker's compensation benefits, the surviving spouse is entitled to a retirement allowance. It is computed as if the deceased member had retired on the day preceding the date of the member's death. MCL 38.1390; MSA 15.893(200).

8
The expression of one thing is the exclusion of all others.

9
We disagree with the assertion in the dissent that we are relying on legislative history as authority to abrogate the clear language of a statute. Rather, we provide the legislative analysis to demonstrate the retirement board's proper interpretation of the Legislature's intent to provide service credit for time spent receiving worker's compensation.

10
Subsection 3a(2)(f) of 1996 PA 268, MCL 38.1303a; MSA 15.893(113a).