COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY  10036
Telephone:     (212) 479-6000
Ronald R. Sussman
Jeffrey L. Cohen
Richelle Kalnit

*Counsel to Greywolf Capital Management, LP*, in its capacity as Tranche C Lender

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
: 
In re: : Case No. 05-44481 (RDD)
: 
DELPHI CORPORATION, et al. : Chapter 11
: 
Debtors. : (Jointly Administered)
: 
: 
------------------------------------- X

**OBJECTION BY GREYWOLF CAPITAL MANAGEMENT, LP TO DEBTORS' EXPEDITED MOTION FOR ORDER (I) SUPPLEMENTING JANUARY 5, 2007 DIP REFINANCING ORDER (DOCKET NO. 6461) AND AUTHORIZING DEBTORS TO ENTER INTO AND IMPLEMENT ACCOMMODATION AGREEMENT WITH AGENT AND PARTICIPATING LENDERS AND (II) AUTHORIZING DEBTORS TO (A) ENTER INTO RELATED DOCUMENTS AND (B) PAY FEES IN CONNECTION THEREWITH**

TO: THE HONORABLE ROBERT D. DRAIN
  UNITED STATES BANKRUPTCY JUDGE

Greywolf Capital Management, LP ("Greywolf"), in its capacity as Tranche C Lender under the DIP Credit Agreement,[1] by and through its counsel Cooley Godward Kronish LLP, hereby submits this objection (the "Objection") to the Debtors' Expedited Motion for Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) and Authorizing Debtors to Enter Into and Implement Accommodation Agreement with Agent and Participating

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the DIP Credit Agreement.

Lenders and (II) Authorizing Debtors to (A) Enter into Related Documents and (B) Pay Fees in Connection Therewith (the "Motion"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

No matter how the Debtors characterize the requested relief, there is one inescapable reality – the Debtors are requesting an extension of the Maturity Date of the DIP Credit Agreement and are seeking the Court's permission to be excused from the requirement imposed in the DIP Credit Agreement that all of the DIP Lenders consent to such an extension. Greywolf does not consent.

On two prior occasions in these bankruptcy cases, the Debtors sought and received unanimous approval from the DIP Lenders to extend the Maturity Date of the DIP Credit Agreement. Now, because the Debtors expect that unanimous consent of the DIP Lenders is unlikely in the current credit market, they seek to force Greywolf into indentured servitude by holding in excess of $100 million of its funds hostage for an additional six months, in direct contravention of the terms of the DIP Credit Agreement.[2]

The Debtors' struggle to emerge from bankruptcy in light of the status of the capital markets is understandable and regrettable. That said, it provides no basis to shift the risk to Greywolf of continuing to lend to a distressed business past the Maturity Date.

## BACKGROUND

1. The Court is painfully aware of the status of these cases. Certain events, however, bear emphasizing as relevant to the relief requested in the Motion. More than three

---

[2] If approved, the Accommodation Agreement would not only result in an impermissible extension of the Maturity Date, but would likewise, among other things: (i) impermissibly prime the Tranche C Lenders; (ii) drain the Debtors of exorbitant levels of cash (projected to be no less than $1.3 billion); and (iii) subject the DIP Lenders' collateral to a variety of macroeconomic and case-specific factors, which will expose the Tranche C Lenders to a greater degree of risk relative to the likelihood of payment in full, in cash. To avoid burdening the Court with duplication, Greywolf hereby incorporates and adopts as if fully stated herein, the arguments advanced by Tranche C Lenders, set forth in the Response and Cross-Motion filed by the Tranche C Collective, dated November 18, 2008 (the "Tranche C Collective Response") (ECF No. 14459) insofar as they highlight the prejudice to be suffered by the Tranche C Lenders and, to the extent they adversely impact Greywolf, the unfair benefits to the Administrative Agent and other Tranche A Lenders.

years ago, in October 2005, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Under the Pre-Petition Credit Agreement, dated June 14, 2005, the Debtors were indebted to a syndicate of lenders in the aggregate amount of $2,579,783,051.85. Motion, ¶24.

2. After the Debtors commenced these cases, this Court authorized the Debtors to enter into the Original DIP Facility in the aggregate amount of $2 billion, priming the liens of the Pre-Petition Secured Lenders under the Pre-Petition Credit Agreement. Motion, ¶25.  In late 2006, the Debtors refinanced their existing Pre-Petition Credit Agreement and the Original DIP Facility, by entering into the DIP Credit Agreement that currently governs the Debtors' post-petition financing arrangement. Motion ¶26-28.  The Pre-Petition Credit Agreement was rolled into the DIP Facility as a $2.495 billion secured priority term loan ("Tranche C").  Greywolf thereafter acquired an interest in the Tranche C Loan, thereby becoming a DIP Lender.

3. The Maturity Date of the DIP Credit Agreement was originally December 31, 2007.  On two prior occasions, the Debtors sought and received unanimous consent from the DIP Lenders and Court approval to extend the Maturity Date.  First, in November 2007, the Debtors sought to extend the Maturity Date to afford the Debtors additional time for approval of the Disclosure Statement and confirmation of the Plan.  As required by the DIP Credit Agreement, the Debtors sought and received the unanimous consent of the DIP Lenders to extend the Maturity Date from December 31, 2007 to July 1, 2008 (the "First DIP Extension "). Motion, ¶31.  Second, in April 2008, following the Plan Investors' refusal to close the exit financing under the Plan, the Debtors sought and received the unanimous consent of the DIP Lenders to further extend the Maturity Date from July 1, 2008 to December 31, 2008 (as supplemented in May 2008, the "Second DIP Extension"). Id., ¶32-33.  Greywolf consented to both the First DIP Extension and the Second DIP Extension.

4. Now, the Debtors state that they require a third extension of the Maturity Date of the DIP Credit Agreement because they have been unable to procure the requisite financing to

emerge from chapter 11 prior to the Maturity Date of December 31, 2008. Rather than seek the unanimous consent of the DIP Lenders – which the Debtors admit is required by the DIP Credit Agreement – the Debtors have concocted the proposed Accommodation Agreement, which attempts to spin their request for an extension of the Maturity Date into an agreement of the Requisite Lenders to forebear from foreclosing on their collateral, which right would be triggered by the passage of the Maturity Date without full satisfaction of the outstanding indebtedness under the DIP Credit Agreement.

5.  Of course, the Debtors have only resorted to such intellectual gymnastics because the required unanimous lender consent is unlikely as several lenders are undoubtedly anxious to receive payment in full of their outstanding indebtedness on the Maturity Date for a variety of case-related and macro-economic reasons.

## THE DIP CREDIT AGREEMENT –TRANCHE C LENDER VOTING RIGHTS

6.  The Debtors correctly note that the Debtors and DIP Lenders carefully negotiated their respective rights under the DIP Credit Agreement, including significantly narrowing the voting rights of the Tranche C Lenders. The DIP Credit Agreement provides that DIP Lenders holding more than 50% of the Tranche A and Tranche B commitments by exposure and amount – defined as "Required Lenders" – have the right to vote to direct the Agent to take certain actions in response to an Event of Default. Motion, ¶30; DIP Credit Agreement, § 7.01.

7.  That said, the DIP Lenders were equally careful in identifying the circumstances in which the unanimous vote of all DIP Lenders, rather than just the Required Lenders, is mandatory. One such circumstance is extending the Maturity Date, as the Debtors seek to do in the Motion. In fact, the Debtors do not dispute that unanimous consent is required to extend the Maturity Date. Motion, ¶36.

8.  The Debtors seek to deprive the Tranche C Lenders of their contractually negotiated right to vote whether or not to extend the Maturity Date. By doing so, the Debtors

seek to force the Tranche C Lenders, including Greywolf, to continue to provide financing to the Debtors beyond the term of their commitment.[3]

## OBJECTION

**A. Extension of the Maturity Date of the DIP Credit Agreement is Prohibited by the Plain Terms of the DIP Credit Agreement, Absent Unanimous Consent of All Lenders**

9. It is well-settled by courts in this District interpreting New York law that if a contract is unambiguous, it should be read according to its terms. See Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir. 1990) ("Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation[….]  The court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning.") (citations and quotations omitted); In re Petker & Buran Fur Corp., 201 B.R. 861, 865 (S.D.N.Y. 1996) ("An agreement does not become ambiguous because one of the parties later asserts that it subjectively intended a different meaning."); In re Ionosphere Clubs, Inc., 147 B.R. 855, 862 (Bankr. S.D.N.Y. 1992) (finding agreement to be unambiguous based on its plain language and citing Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.).

10. The Debtors do not argue that the DIP Credit Agreement is ambiguous. In fact, the Debtors unequivocally state that:

> **[t]o extend the Maturity Date of the DIP Facility, the Debtors are required to obtain the unanimous consent of the DIP Lenders.**

Motion, ¶36 (emphasis added).

---

[3] Moreover, as discussed in greater detail in the Tranche C Collective Response, the Debtors seek to, among other things, further subordinate the Tranche C Lenders' position in the Debtors' capital structure to hundreds of millions of dollars in new secured debt related to Hedging Agreements, permit the Debtors to drain their estates by more than $1.3 billion and subject the DIP Lenders' collateral to greater risk of depreciation, all without providing any adequate protection to Greywolf.

11. Instead, the Debtors contend that the proposed Accommodation Agreement is not an extension of the Maturity Date, but rather an agreement by the requisite Tranche A and Tranche B Lenders to "accommodate the Debtors by allowing the Debtors to continue [to] use the proceeds of the DIP Facility, to the extent already drawn by the Maturity Date, notwithstanding the passing of the Maturity Date of December 31, 2008." Motion, ¶35. Greywolf submits this is a distinction without a difference. Irrespective of its title, the so-called Accommodation Agreement is an agreement to extend the Maturity Date.

12. The Debtors make this contention with the hope that this Court will permit them to cram a square peg (an extension of the Maturity Date) into a round hole (less than unanimous consent of the DIP Lenders). Rather than entertain the fiction cooked up by the Debtors, the request for approval of the Accommodation Agreement should be analyzed for its true identity – a request to reform the DIP Credit Agreement. The Debtors are seeking this Court's blessing to extend the Maturity Date of the DIP Credit Agreement with only the requisite number of Tranche A and Tranche B Lenders consenting (greater than 50%) required for lesser actions, in lieu of the unanimous consent of all DIP Lenders (including Tranche C Lenders) required by the DIP Credit Agreement.

13. New York courts have widely and unequivocally held that "it is clear that reformation of a contract should be allowed [only] where mutual mistake or fraud is clearly established, particularly when the negotiations were conducted by sophisticated, counseled business people." Briand Parenteau Assocs. Inc. v. HMC Assocs., et al., 638 N.Y.S.2d 817, 819 (N.Y. App. Div. 3d 1996) (dismissing cause of action for reformation); see also Young v. Chiu, 853 N.Y.S.2d 575, 575 (N.Y. App. Div. 2d 2008) (plaintiff failed to show mutual mistake or unilateral mistake induced by fraudulent misrepresentation). A party is not entitled to reformation to avoid the consequences of its drafting or to correct an oversight. See, e.g., Keiser v. Goetz, 652 N.Y.S.2d 153, 155 (N.Y. App. Div. 3d 1997) (denying plaintiffs' request for reformation and noting that "it appears that plaintiffs, realizing they had made a bad deal, sought

to extricate themselves by rewriting the contract that they themselves had drafted."); Kinville v. Jarvis Real Estate Holdings, LLC, 833 N.Y.S.2d 773, 775 (N.Y. App. Div. 4th 2007) ("It is not for the court to enlarge the meaning of the words in the contract so as to correct an oversight") (citation and quotation omitted).

14.     The Debtors make no allegation of mutual mistake or fraud. To the contrary, the Debtors foreclose any finding of mutual mistake or fraud by stating quite clearly that "the Debtors bargained for this right under the DIP Facility and are now utilizing it for the benefit of the Debtors and their stakeholders." Motion, ¶36. Unfortunately, the right the Debtors and the DIP Lenders bargained for under the DIP Credit Agreement, requires the unanimous consent of all DIP Lenders to extend the Maturity Date. The Accommodation Agreement fails in that regard.[4]

### B. In the Event the Court Decides to Grant the Motion, There is No Basis to Waive the Ten-Day Stay Provided by Bankruptcy Rule 6004

15.     As the Debtors correctly state in the Motion, absent an evidentiary showing of a "business exigency" requiring a waiver of the ten-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, such a waiver should not be granted. See, e.g., In re Dana Corp., 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006) (finding that "[n]o specific exigencies sufficient to support the Debtors' request have been demonstrated"); see also Fed. R. Bankr. P. 6004, Advisory Comm. Note ("Subdivision [(h)] is added to provide sufficient time for a party to request a stay pending appeal of an order authorizing the use, sale, or lease of property under § 363(b) of the Code before the order is implemented."). In fact, similar to the case *sub judice*, in one of the cases cited by the Debtors, the Court denied a request to waive the stay, noting that

---

[4] In the event the Court approves the Accommodation Agreement, the Debtors have failed to adequately protect Greywolf during the Accommodation Period, as required by the Bankruptcy Code. Subjecting Greywolf's outstanding indebtedness to the "ongoing, unprecedented turbulence in the capital markets and the automobile industry," as articulated by the Debtors, bears an inherent incalculable risk. In fact, the Debtors have failed to provide any indication that their fortunes will change between now and June 2009, for reasons discussed more fully in the Tranche C Collective Response. Consequently, Greywolf is hard-pressed to identify any form of adequate protection that will sufficiently protect its interest during the Accommodation Period, aside from payment in full, in cash, at the Maturity Date.

the debtors therein "made no evidentiary showing of a business exigency requiring a closing within 10 days of an approval order". See In re PSINet Inc., 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) ("the Motion contained no more than […] a generalized assertion that the Debtors require 'an expedited closing' after all closing conditions have been met or waived."). The Debtors fail to meet such a standard. Accordingly, to the extent the Court grants the relief requested in the Motion, the ten-day stay should remain in place to provide Greywolf and other parties in interest with sufficient time to appeal from such an order.

## CONCLUSION

Accordingly, Greywolf submits that an extension of the Maturity Date of the DIP Credit Agreement – whether styled as an "accommodation" or otherwise – violates the terms of the DIP Credit Agreement absent unanimous lender consent and should not be sanctioned by this Court. To the extent the Court grants the Motion, Greywolf submits that the Debtors have not met their burden to demonstrate that a waiver of the ten-day stay required by the Bankruptcy Code is appropriate.

WHEREFORE, Greywolf respectfully requests that the Court issue an order sustaining its Objection and granting such additional relief as just.

| | |
|---|---|
| Dated: New York, New York<br>November 19, 2008 | **COOLEY GODWARD KRONISH LLP**<br>1114 AVENUE OF THE AMERICAS<br>NEW YORK, NY  10036<br>(212) 479-6000<br><br>By: /s/ Ronald R. Sussman<br>     Ronald R. Sussman<br>     Jeffrey L. Cohen<br>     Richelle Kalnit<br><br>*Counsel to Greywolf Capital Management, LP*,<br>in its capacity as Tranche C Lender |