Hearing Date: November 24, 2008 at 10:00 a.m. ET
Objection Deadline: November 20, 2008 at 4:00 p.m. ET

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to M.D. Sass Re/Enterprise Portfolio Company, L.P.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:                                :    Chapter 11
                                      :
DELPHI CORP., et al.,                 :    Case No. 05-44481 (RDD)
                                      :    Jointly Administered
                                      :
                Debtors.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

# RESPONSE OF M.D. SASS RE/ENTERPRISE PORTFOLIO COMPANY, L.P. TO DEBTORS' MOTION TO SUPPLEMENT DIP FINANCING ORDER AND APPROVE ACCOMMODATION AGREEMENT

M.D. Sass Re/Enterprise Portfolio Company, L.P. ("MD Sass"), a Tranche C Lender under the Credit Agreement[1], by its undersigned counsel Andrews Kurth LLP, for its objection (the "Objection") to the Debtors' Expedited Motion For Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) and Authorizing Debtors to Enter Into and Implement Accommodation Agreement With Agent and Participating Lenders (the "Accommodation Agreement") and (II) Authorizing Debtors to (A) Enter Into Related Documents and (B) Pay Fees in Connection Therewith (the "Motion"), respectfully represents:

---

[1] Amended and Restated Revolving Credit Agreement, Term Loan Agreement and Guaranty Agreement among Delphi Corporation, as Borrower, and JPMorgan Chase bank, N.A., as Administrative Agent, dated May 9, 2008 (the "Credit Agreement" or the "DIP Loan"). Capitalized terms not otherwise defined herein shall have the meaning set forth in the Credit Agreement.

NYC:183713.2

1.      By the Accommodation Agreement and the Motion, the Debtors seek to accomplish indirectly - - an extension of the DIP Loan's maturity - - what they cannot do directly without the unanimous consent of lenders.  The Debtors' attempt to "prime" the Tranche C Lenders by $200 million adds insult to injury.  The Debtors' perceived (or apparent) need to pay the Tranche A and Tranche B lenders to consent to the Accommodation Agreement in no way justifies such "priming" of Tranche C.

2.      The Debtors have received two extensions of the Maturity Date under the Credit Agreement, the second of which extended the Maturity Date through December 31, 2008 (the "Final Maturity Date").  The Debtors need additional time to formulate and consummate a plan of reorganization.  Well aware that they would be unable to obtain the <u>unanimous consent required</u> by the Credit Agreement to further extend the maturity date, the Debtors seek approval of the Accommodation Agreement whereby a majority of Tranche A and Tranche B Lenders agree to forbear from exercising remedies when the loans become due and payable on the Final Maturity Date.  By doing so, the Debtors have effectively extended the maturity date without the unanimous consent of all Lenders as, thereafter, non-consenting Lenders have no available remedies under the Credit Agreement, given that the Agent has been "placed" in forbearance mode.

3.      In order to further induce the Tranche A and Tranche B Lenders to "sign on" to the Accommodation Agreement, the Debtors are attempting to prime the Tranche C Lenders by elevating certain unsecured hedging claims of the Tranche A Lenders to first-priority lien status.  This "trade" unjustifiably harms the Tranche C Lenders without any factual or legal basis therefor.

4. Clearly, the Debtors have a problem. They were unable to obtain third party financing on market terms after confirmation of their Chapter 11 plan of reorganization in January 2008. The Debtors' enterprise value, under any standard, has been materially diminished and it appears that the Debtors will sustain further deterioration in value.

5. At this juncture excess cash should be used to pay down Tranche A and Tranche B of the DIP loan. At the very least, interest on the Tranche C loan must continue to be paid.

6. The DIP loan is not a pre-petition claim that can be dealt with, i.e., compromised, under a Chapter 11 plan. The DIP loan needs to be paid in full on the Final Maturity Date, and it would appear that a sale (or other disposition) of the Debtors' businesses or a transaction to effect such payment needs to be accomplished forthwith.

**WHEREFORE,** MD Sass respectfully requests that the Court deny the Motion and grant such other relief as the Court deems appropriate.

Dated: November 20, 2008
New York, New York

**ANDREWS KURTH LLP**

By: /s/ Paul N. Silverstein
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to M.D. Sass Re/Enterprise
Portfolio Company, L.P.

- 3 -

NYC:183713.2