| | |
|---|---|
| WINSTON & STRAWN LLP <br> David Neier (DN-5391) <br> Carey D. Schreiber (CS-3896) <br> 200 Park Avenue <br> New York, New York 10166 <br> (212) 294-6700 <br> Facsimile: (212) 294-4700 | Hearing Date: November 24, 2008 <br> Objections Due: November 20, 2008 <br> (extended to November 21, 2008, <br> 10 a.m. ET pursuant to agreement <br> with Debtors) |

Attorneys for Ad Hoc Group of Tranche A & B DIP Lenders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
In re:                                                       :
                                                             : Chapter 11
**DELPHI CORP.**, *et al.*,                                  : Case No. 05-44481 (RDD)
                                                             : Jointly Administered
                              Debtors.                       :
------------------------------------------------------------ x

## RESPONSE AND LIMITED OBJECTION OF THE
## AD HOC GROUP OF TRANCHE A & B DIP LENDERS (I) TO
## DEBTORS' MOTION TO SUPPLEMENT DIP FINANCING ORDER
## AND APPROVE ACCOMMODATION AGREEMENT AND
## (II) REQUEST OF TRANCHE A & B DIP LENDERS FOR ADEQUATE PROTECTION

The Ad Hoc Group of Tranche A & B DIP Lenders with respect to the DIP Credit Agreement[1] in the above captioned cases (together, the "A/B Lender Group"),[2] by and through their undersigned counsel, submit this Response and Limited Objection (the "Response") to the

---

[1] Amended and Restated Revolving Credit Agreement, Term Loan and Guaranty Agreement among Delphi Corporation, as Borrower, and JPMorgan Chase Bank, N.A., as Administrative Agent (the "Administrative Agent"), dated May 9, 2008, (as amended, supplemented and otherwise modified from time to time, the "DIP Credit Agreement"). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to those terms in the DIP Credit Agreement, the Motion and the Accommodation Agreement, as applicable.

[2] The A/B Lender Group is being represented by undersigned counsel as a group. The A/B Lender Group is not an official or unofficial committee and is not acting in any representative or fiduciary capacity, including without limitation with respect to other Tranche A and B Lenders under the DIP Credit Agreement (collectively, the "A/B Lenders"). Members of the A/B Lender

Emergency Motion For Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) And Authorizing Debtors To Enter Into And Implement Accommodation Agreement With Agent And Participating Lenders And (II) Authorizing Debtors To (A) Enter Into Related Documents And (B) Pay Fees In Connection Therewith (the "Motion"), dated November 7, 2008 and filed by Delphi Corp. and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors").  In addition, the A/B Lender Group requests, pursuant to sections 105(a), 361 and 363(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), adequate protection for the use of collateral in which the A/B Lender Group have an interest.  In support hereof, the A/B Lender Group respectfully represents as follows:

**Preliminary Statement**

1.      The A/B Lender Group supports the Debtors' efforts to enter into an accommodation agreement in aid of the Debtors' reorganization.  However, the proposed revised accommodation agreement filed by the Debtors on November 18, 2008 [Docket No. 14456] (as same may be amended, supplemented or otherwise modified from time to time prior to the hearing on the Motion, the "Accommodation Agreement") should not be approved in its current form, and the Motion should be denied unless the Accommodation Agreement is modified, for the following reasons:

- The Debtors seek to provide liens for $200 million of presently unsecured Hedging Obligations of the Debtors, and such liens will be *pari passu* with the DIP liens granted to A/B Lenders, even though the Debtors will be in default of the DIP Credit Agreement on the maturity date, December 31, 2008.

---

Group are listed in Exhibit A to the Response.

- The Debtors seek to change the Borrowing Base to allow for cash collateralization of Hedging Obligations without obtaining the approval of the Supermajority First Priority Lenders as required under the DIP Credit Agreement.

- The proposed Accommodation Agreement can be terminated if the Debtors' unsecured and secured Hedging Obligations exceed $500 million, effectively placing control over the Accommodation Agreement in hands of entities that are not parties to the DIP Credit Agreement.

- The Debtors propose to allow an unlimited amount of liens to be imposed on their Foreign Subsidiaries with respect to certain Hedging Obligations in violation of the DIP Credit Agreement.

- The Debtors propose to modify certain voting provisions in violation of the DIP Credit Agreement.

- In addition, there are certain provisions of the Accommodation Agreement that require clarification, including (i) the fees being charged by the Administrative Agent, (ii) the cash collateralization of Letters of Credit, (iii) increasing fees for issuing new Letters of Credit, and (iv) whether funds from the proposed Tranche C Segregated Account will be paid to DIP Lenders in the order of priority set forth in the DIP Credit Agreement.

2. If these concerns are consensually resolved, the A/B Lender Group will support an Accommodation Agreement that generally provides for a limited forbearance, subject to certain milestones and limitations intended to preserve DIP Collateral and maintain -- at least as best as possible -- the *status quo*, until June 30, 2009, so as to allow the Debtors sufficient time to file and confirm a plan of reorganization.

## Background

### The DIP Credit Agreement and DIP Refinancing Order

3. The DIP Credit Agreement provides for three tranches of DIP commitments and DIP loans ("DIP Loans"): a $1.1 billion first priority revolving credit facility ("Tranche A"); a $500 million first priority term loan ("Tranche B"); and, a $2.75 billion second priority term loan ("Tranche C").

3

4.      The DIP Credit Agreement defines "Required Lenders" as DIP Lenders holding more than 50% of the Tranche A and Tranche B Commitments and exposure by amount. DIP Credit Agreement §1.01, at 27. The approximate amounts outstanding on the DIP Loans are $397 million for Tranche A (plus $116.9 million of LC exposure), $500 million for Tranche B and $2.75 billion for Tranche C.

5.      The DIP Credit Agreement further permits a maximum of $150 million of Hedging Obligations to be secured *pari passu* with the Tranche A and Tranche B Lenders. DIP Credit Agreement §6.01(xvi).

6.      The Debtors were authorized to enter into the DIP Loans pursuant to Orders of this Court, including, among others, the Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And Fed. R. Bankr. P. 2002, 4001 And 6004(g) (I) Authorizing Debtors To Obtain Post-Petition Financing And (II) Authorizing Debtors To Refinance Secured Post-Petition Financing And Prepetition Secured Debt [Docket No. 6461] (the "DIP Refinancing Order").

7.      The DIP Refinancing Order provides that:

> No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Agent and the DIP Lenders . . . shall be granted or allowed while any portion of the Financing . . . or the DIP Obligations remain outstanding, and the DIP Liens . . . shall not be . . . subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than as specifically provided for in this Order).

DIP Refinancing Order ¶13(a).

**The Accommodation Agreement**

8.      The DIP Credit Agreement matures on December 31, 2008. DIP Credit Agreement §1.01, at 24. In order to forestall an exercise of rights and remedies on the Maturity Date, the Debtors have proposed to enter into the Accommodation Agreement. The Debtors

have stated that the Accommodation Agreement is intended "to preserve liquidity under the DIP Facility without the unanimous consent of all of the DIP Lenders." Motion ¶36.

9. Although the intent of the Accommodation Agreement may very well be to prevent an exercise of rights and remedies by the Administrative Agent, the Accommodation Agreement seeks to create an additional $200 million in liens for Hedging Obligations *pari passu* with the existing liens of the A/B Lenders. Accommodation Agreement §20(b).

10. In addition, the Accommodation Agreement seeks to modify the Borrowing Base in favor of Hedging Counterparties by cash collateralizing their exposure. Accommodation Agreement §3(e)(ii). As the Debtors admit in their Motion, modifications to the Borrowing Base of this nature can only be approved by the Supermajority First Priority Lenders; i.e., 66 2/3% of such lenders. Motion at p. 21; DIP Credit Agreement §10.09(a)(i)(A).

11. Moreover, although the Accommodation Agreement is supposed to prevent an exercise of rights and remedies by the Administrative Agent, if Hedging Obligations exceed $500 million, the Accommodation Agreement can be immediately terminated. Accommodation Agreement §2(a)(ii).

12. The Accommodation Agreement provides certain protections for the DIP Lenders, including that liens on the assets of Foreign Subsidiaries will be limited to $1 billion. However, the Accommodation Agreement seeks to allow an *unlimited* amount of liens to be created in favor of certain Hedging Obligations. Accommodation Agreement §20.

13. The Accommodation Agreement provides certain changes to voting provisions. The Debtors to propose to add three entirely new voting provisions to replace Required Lenders with respect to the Accommodation Agreement:

5

>"Participant Lender" shall mean (a) any Lender and (b) any Person that is owed any Secured Domestic Hedging Obligations or Cash Management Obligations, in each case that executes this Accommodation Agreement and any of such Lender's or other Person's successors and assigns that execute a Joinder to this Accommodation Agreement.
>
>"Required First Priority Participant Lenders" shall mean, at any time, Participant Lenders holding Tranche A Loans, LC Exposure and a portion of the Tranche B Loan in each case at such time representing in excess of 50% of the sum of (x) the Tranche A Total Commitment Usage held by all Participant Lenders at such time plus (y) the Total Tranche B Commitment held by all Participant Lenders at such time.
>
>"Required Total Participant Lenders" shall mean, at any time, Participant Lenders holding Tranche A Loans, LC Exposure, a portion of the Tranche B Loan and a portion of the Tranche C Loan, in each case at such time representing in excess of 50% of the sum of (x) the Tranche A Total Commitment Usage held by all Participant Lenders at such time plus (y) the Total Tranche B Commitment held by all Participant Lenders at such time plus (z) the Total Tranche C Commitment held by all Participant Lenders at such time.

Accommodation Agreement §1.

14. The Accommodation Agreement seeks to modify the DIP Credit Agreement to allow for up to $135 million for Letters of Credit senior to all liens in favor of DIP Lenders. Accommodation Agreement §20(c).

15. The Accommodation Agreement provides for the payment of certain unspecified fees to the Administrative Agent. Accommodation Agreement §12.

16. The Accommodation Agreement seeks to create a Segregated Tranche C Interest Account which would not be subject to the Carve-Out. Accommodation Agreement §15.

**Argument and Request for Adequate Protection**

17. The DIP Lenders are entitled to adequate protection, as a matter of right, not merely as a matter of discretion, particularly when the Debtors propose to create liens that will be *pari passu* with the liens of the DIP Lenders on the eve of the maturity date of the DIP Loans. 11 U.S.C. §§ 361, 363(e); *Metromedia Fiber Network Servs. v. Lexent, Inc. (In re Metromedia*

6

*Fiber Network, Inc.)*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("Section 363(e) is not permissive or discretionary -- it states that the court 'shall' grant the relief specified, at any time, on the request of secured entity."); *In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992); 3 *Collier On Bankruptcy* ¶ 361.02 (17th rev. ed. 2008) ("An entity is entitled to adequate protection as a matter of right, not merely as a matter of discretion . . . when the estate proposes to use, sell or lease property in which the entity has an interest.") (*citing* H.R. Rep. No. 95-595, at 340, 343-44 (1977). This protection is provided both as a matter of policy and, arguably, as a matter of constitutional law. *In re Townley*, 256 B.R. 697, 700 (Bankr. D. N.J. 2000) ("The right of a secured creditor to the value of its collateral is a property right protected by the Fifth Amendment.").

        18.      Indeed, Bankruptcy Code section 363(e) mandates adequate protection of a creditor's interest if the debtor seeks to use its collateral. Bankruptcy Code section 363(e) provides, in relevant part, as follows:

> [A]t any time, on request of an entity that has an interest in property used . . . or proposed to be used . . . by the trustee [or debtor in possession], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

        19.      The use of cash and liens that presently secure the senior DIP liens of the A/B Lenders to secure junior unsecured Hedging Obligations whose claims may be entirely or partially "out of the money" results in an impairment of the senior DIP liens of the A/B Lenders and disgorgement of any such payments would be required. 11 U.S.C. §507(b); *United States v. National Westminster Bank USA (In re Q-C Circuits Corp.)*, 231 B.R. 506, 510 (E.D.N.Y. 1999) (ordering disgorgement of post-petition interest improperly paid as adequate protection to junior creditor ahead of senior creditor holding "superior interest" in same collateral). Accordingly, the

7

liens being proposed in the Accommodation Agreement in favor of presently unsecured parties should be rejected.

20.     Moreover, the burden of proof as to the "adequacy" of adequate protection rests solely with the Debtors.  11 U.S.C. § 363(e); *Matter of Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992); *In re Grant Broadcasting of Philadelphia, Inc.*, 75 B.R. 819, 822 (E.D. Pa. 1987) ("[T]he Debtor has the burden of proof on all issues except the validity, priority, and extent of the alleged secured party's security interest, including all other component elements relevant to the 'issue of adequate protection.'"); *First Bank of Miller v. Wieseler*, 45 B.R. 871, 878 (D.S.D. 1985); 3 *Collier on Bankruptcy* ¶ 363.05[2] ("If adequate protection cannot be offered, such use, sale or lease of the collateral must be prohibited.").  Here, in light of the maturity of the DIP Loans on December 31, 2008, the Debtors cannot demonstrate that DIP Lenders are adequately protected with respect to liens being provided with respect to unsecured Hedging Obligations.

## Request for Adequate Protection

21.     The Accommodation Agreement should be modified to adequately protect the DIP Lenders as follows:

- Elimination of any liens for $200 million of presently unsecured Hedging Obligations of the Debtors *pari passu* with the DIP liens granted to Tranche A and B Lenders.

- Elimination of changes to the Borrowing Base unless approved by the Supermajority First Priority Lenders as required under the DIP Credit Agreement.

- Elimination of the right of Hedging Counterparties to terminated the Accommodation Agreement if the Debtors' unsecured and secured Hedging Obligations exceed $500 million.

- Impose a limitation of $1 billion on the amount of liens to be imposed on Foreign Subsidiaries, whether for Hedging Obligations or otherwise.

8

- Elimination of any modifications to voting provisions set forth in the DIP Credit Agreement.

- Disclosure on a confidential basis of the fees being charged by the Administrative Agent.

- Elimination of any requirement to cash collateralize any obligations that are not DIP Obligations.

- Elimination of any increases in fees for issuing Letters of Credit.

- Clarification that the Tranche C Segregated Account will be paid to DIP Lenders in the order of priority set forth in the DIP Credit Agreement.

### **Reservation of Rights and Request for Conformed Loan Documents**

22.     The A/B Lender Group reserves all of its rights to address additional concerns as they continue to review the various iterations of the Accommodation Agreement, including those that have only recently been filed. The Accommodation Agreement is drafted in such a confusing manner that it is virtually impossible to discern its actual meaning. Accordingly, the A/B Lender Group requests that the Debtors provide a conformed copy of all Loan Documents.

### **Waiver of Memorandum of Law**

23.     No new or novel issue of law is presented with respect to the matters contained herein and therefore the A/B Lender Group requests that the requirement of service and filing of a memorandum of law under Local Bankruptcy Rule 9013-1(b) be deemed satisfied.

## **Conclusion**

WHEREFORE, the A/B Lender Group requests that the Court enter an order: (i) denying the Motion; (ii) modifying the Accommodation Agreement as set forth herein; (iii) approving the request of the A/B Lender Group for adequate protection as set forth herein; and (iv) granting such other relief as the Court finds just and proper.

Dated:  November 21, 2008　　　　　　　　　　　　*Respectfully submitted,*
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　WINSTON & STRAWN LLP


　　　　　　　　　　　　　　　　　　　　　　　　/s/ David Neier
　　　　　　　　　　　　　　　　　　　　　　　　David Neier (DN-5391)
　　　　　　　　　　　　　　　　　　　　　　　　Carey D. Schreiber (CS-3896)
　　　　　　　　　　　　　　　　　　　　　　　　200 Park Avenue
　　　　　　　　　　　　　　　　　　　　　　　　New York, NY 10166
　　　　　　　　　　　　　　　　　　　　　　　　(212) 294-6700

　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Ad Hoc Group of Tranche A &
　　　　　　　　　　　　　　　　　　　　　　　　B DIP Lenders

## Exhibit A

The following financial institution and their affiliated entities are part of the Ad Hoc Group of Tranche A & B DIP Lenders:

Global Fixed Income Unit, California Public Employees' Retirement System
Marathon Asset Management
WCAS Fraser Sullivan Investment Management, LLC
Whippoorwill Associates, Inc.
WhiteHorse Capital Partners, L.P.

(Numerous other financial institutions that are Tranche A and Tranche B DIP Lenders have indicated their opposition to the Motion but have declined to publicly oppose the Motion)