DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile:  (212) 450-6501
Donald S. Bernstein (DB 6681)
Michael S. Flynn (MF 0505)
Brian M. Resnick (BR 4687)

*Counsel to JPMorgan Chase Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
**In re:**                                :
                                          :  **Chapter 11 Case No.**
                                          :
**DELPHI CORP., et al.,**                 :  **05-44481 (RDD)**
                                          :
                                          :  **(Jointly Administered)**
**Debtors.**                              :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JPMORGAN CHASE BANK, N.A.'S RESPONSE TO THE TRANCHE C COLLECTIVE'S RESPONSE TO DEBTORS' MOTION TO SUPPLEMENT DIP FINANCING ORDER AND APPROVE ACCOMMODATION AGREEMENT**

JPMorgan Chase Bank, N.A., ("**JPMC**"), the Administrative Agent (the "**Administrative Agent**") for the Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement (the "**Credit Agreement**") and a Lender thereunder, respectfully submits this Response to the Tranche C Collective's Response to Debtors' Motion to Supplement DIP Financing Order and Approve Accommodation Agreement (the "**Objection**").  JPMC is compelled to submit this brief response in order to address unfounded accusations and innuendos levied against JPMC in the Objection and to correct the record for the Court.

In their Objection, the Tranche C Collective does not dispute that forbearance by the Credit Agreement Lenders is in the interest of all the Lenders. However, notwithstanding their apparent belief that forbearance is a sensible course of action, the Tranche C Collective objects to the Accommodation Agreement. JPMC, on the other hand, supports and has voted in favor of the Accommodation Agreement, which it plainly has a right to do, both in its capacity as the Administrative Agent and as a Lender under the Credit Agreement (see, e.g., § 8.02).

Instead of acknowledging that there is a good faith difference of opinions between JPMC and the Tranche C Collective regarding the merits of the Accommodation Agreement, the Tranche C Collective has asserted that JPMC's support for the Accommodation Agreement and its efforts, at the express request of the Debtors, to solicit the signatures of other Lenders to the Accommodation Agreement was improper because JPMC (and other Lenders who are hedging counterparties) are somehow boxing the Debtors into increasing the hedging basket. (See Objection at 3, 4 & n.5, 6-7 & n.11, 8.) These accusations regarding JPMC are entirely false.

The focus of the Tranche C Collective's Objection, both in terms of its substantive opposition to the Accommodation Agreement and its innuendos against JPMC, is the increase in the hedging collateral basket from $150 million to $350 million. This increase, it should be noted, would not be offered for free to the hedging counterparties. It would only become effective if each and every one of the Debtors' hedging counterparties agrees to forbear from exercising its contractual right to terminate its hedging transactions and from enforcing various remedies in respect of such transactions. (Accommodation Agreement §2(a)(iii)). Thus, under the Accommodation

2

Agreement as proposed, it is entirely possible that, despite signing, JPMC will not benefit from any increase in hedging collateral.

As the conditional nature of the increase in hedging collateral makes apparent, despite the assertions of the Tranche C Collective, it was not JPMC who insisted on an increase in the hedging basket as a condition to its support of the Accommodation Agreement. Instead, it was the Debtors who, for their own business reasons, insisted on including an increase in the hedging collateral basket to encourage the Debtors' hedging counterparties to agree to forego their termination and enforcement rights.

The Tranche C Collective's innuendos are especially surprising in view of the fact that JPMC and its representatives informed representatives of the Tranche C Collective on several occasions (including on the night before the Objection was filed) that JPMC was willing to sign the Accommodation Agreement regardless of whether there was any increase in the hedging basket. JPMC remains willing to support the forbearance as provided in the Accommodation Agreement without such an increase.

The Tranche C Collective's inaccurate assertion that the Accommodation Agreement is the product of self-dealing by JPMC and the other hedging counterparties is nothing more than an attempt to distract the Court from the purely voluntary nature of the Accommodation Agreement, with its bargained for concessions from all parties (including the hedging counterparties), and from the fact that the concessions and agreements contained in the Accommodation Agreement are entirely consistent with and permitted under the Credit Agreement entered into by each of the members of the Tranche C Collective.[1] It is entirely appropriate in JPMC's role as agent for it to seek to

---

[1] JPMC is not in any way restricted in its rights as a Lender by virtue of its position as Agent. The Credit Agreement expressly provides that JPMC "shall have the same rights and powers in its capacity as a

3

reconcile the various and diverse views and interests of the Debtors and their Lenders in an attempt to broker a compromise. The Accommodation Agreement put forward by the Debtors is a good faith effort to balance these views and interests in order to permit the Debtors more time to accomplish their reorganization.

For the reasons stated above, in considering the Motion on its merits, the Court should ignore the Tranche C Collective's repeated and baseless insinuations regarding JPMC, and focus instead on what each of the parties, including the members of the Tranche C Collective, voluntarily agreed to in the contracts to which they are parties.[2]

---

Lender as any other Lender and may exercise the same as though it were not an Agent." (Credit Agreement § 8.02.) Furthermore, contrary to the Tranche C Collective's suggestion, JPMC's conduct in negotiating the Accommodation Agreement does not fall outside the scope of the Credit Agreement's Agent exculpation clause. (See Credit Agreement § 8.03(a) (emphasis added).) While that clause does provide that "No Agent shall be liable for any action taken or not taken by it with the consent or at the request of the Required Lenders" (id.), the Tranche C Collective is simply wrong in asserting that the opposite is true and that the clause "does not cover actions taken without the consent or direction of the Required Lenders" (Objection at 14 n.20). Rather, the clause's plain text also clearly exempts the Agent from liability for "any action taken or not taken by it . . . in the absence of its own gross negligence or willful misconduct" (Credit Agreement § 8.03(a)), regardless of whether such actions were taken with the Required Lenders' request or consent. Here, JPMC cannot be found to have acted with gross negligence or willful misconduct. See, e.g., First Nat'l Bank Assoc. v. Canadian Imperial Bank of Commerce, No. 3-93-366, 1995 U.S. Dist. LEXIS 12105, at *18-*19 (D. Minn. June 9, 1995) (citing New York law). Even more fundamentally, the Credit Agreement is explicit that "No Agent shall have any duties or obligations except those expressly set forth herein" (§ 8.03(a)), and nothing in the Credit Agreement prescribes how the Agent should or should not go about trying to negotiate an amendment to that agreement.

[2] The Tranche C Collective also requests that the Debtors "disclose the amount and proposed beneficiaries" of the fee letter referenced in the Accommodation Agreement, suggesting that the Debtors and JPMBC have some sinister motive for keeping the letter confidential. (Objection at 8.) In fact, such fee letters are typically not disclosed because they contain confidential and proprietary information of the administrative agent and the debtor. For this reason, when bankruptcy courts (including this one) have required such letters to be produced at all, they have often ordered them to be filed under seal pursuant to § 107(b) of the bankruptcy code. See, e.g., In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. Jan. 29, 2007) [Dkt. No. 3494]; In re Adelphia Commc'ns Corp., Case No. 02-41729 (REG) (Mar. 24, 2004) [Dkt. No. 4260]; see also In re LandSource Communities Dev. LLC, Case No. 08-11111 (KJC) (Bankr. D. Del. July 19, 2008) [Dkt. No. 306 ¶ 25, at p. 62]; In re Federal –Mogul Global Inc., Case No. 01-10578 (JKF) (Bankr. D. Del. May 15, 2007) [Dkt. No. 12379]. Courts likewise have limited the parties that may access fee letters, and have required those parties to execute confidentiality agreements prior to viewing the letters' terms. See, e.g., In re Calpine Corp., supra, ¶ 3; In re Adelphia Commc'ns Corp., supra, at p. 2. Consistent with these cases, the fee letter will be provided, upon request, to the Court, the U.S. Trustee and counsel to the Debtors' statutory committees. JPMC has also agreed to produce the fee letter to the Tranche C Collective's counsel and members of the Tranche C Collective, provided that counsel for the Collective and such members of the Collective execute a confidentiality agreement representing that

New York, New York
Dated: November 21, 2008

          By:  /s/ Donald S. Bernstein
                Donald S. Bernstein (DB 6681)
                Michael S. Flynn (MF 0505)
                Brian M. Resnick (BR 4687)

                DAVIS POLK & WARDWELL
                450 Lexington Avenue
                New York, New York 10017
                Telephone: (212) 450-4000
                Facsimile:  (212) 450-6501

                *Counsel to JPMorgan Chase Bank, N.A.*

---

they will treat the information as highly confidential, will not disclose it publicly or use it in connection with any other matter unrelated to this case.