# Exhibit 3

**Glossary Of Key Provisions Of
Second Amended And Restated DIP Agreement (DIP),
Security And Pledge Agreement (SPA), And Other Related Documents**

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Section 1.01 *Defined Terms* (DIP) | Required Lenders are those DIP Lenders holding more than 50% of the Tranche A and Tranche B commitments and exposure by amount. | "'Required Lenders' shall mean, at any time, Lenders having Tranche A Commitments as such time . . . and Lenders holding a portion of the Tranche B Loan at such time . . . representing in excess of 50% of the sum of (x) the Total Tranche A Commitment at such time . . . plus (y) the Total Tranche B Commitment at such time." |
| Section 6.01 *Liens* (DIP)<br><br>Section 20 *Additional Secured Obligations* (SPA) | Debtors can incur liens under hedging obligations up to an approved amount, which liens are senior to those of the Tranche C Lenders. | ". . . the Borrower and each of the Guarantors will not, and will not permit any of their respective Subsidiaries to (and will not apply, unless in connection with an amendment to the Agreement that is reasonably likely to be approved by the Lenders required to approve such amendment, to the Bankruptcy Court for authority to) . . . [i]ncur, create, assume or suffer to exist any Lien on any asset of the Borrower or any of its Subsidiaries, whether now owned or hereafter acquired, other than: . . . (xvi) (A) Liens securing Indebtedness in respect of Hedging Agreements, which Indebtedness is permitted . . . , so long as the aggregate amount of Indebtedness so secured (determined on a marked-to-market basis) does not exceed $150,000,000 and . . . such Liens shall rank <u>pari passu</u> with the Liens created under the Loan Documents in favor of the Administrative Agent, the Tranche A Lenders and the Tranche B Lenders). . . ."<br><br>"Unless otherwise provided by the Borrower in writing to the Administrative Agent, obligations under any Hedging Agreement between any Grantor and a Lender or an Affiliate of a Lender (or a Person who was a Lender or an Affiliate of a Lender on the trade date with respect to such obligations) shall automatically constitute additional Secured Obligations hereunder (such obligations, "Secured Hedging Obligations"); <u>provided</u> that at no time shall the aggregate amount of all Secured Hedging Obligations exceed $150,000,000, determined on a marked-to-market basis. The Borrower shall include a line item in each Borrowing Base Certificate showing the aggregate amount of all outstanding Secured Hedging Obligations determined on a marked-to-market basis. In addition, the Borrower shall provide to the Administrative Agent, concurrently with each delivery of a Borrowing Base Certificate (or, if the Administrative Agent reasonably requests, more frequently), a summary of outstanding Secured Hedging Obligations as of the period covered in such Borrowing Base Certificate (or such other date reasonably requested by the Administrative Agent), showing the aggregate amount of such obligations determined on a marked-to-market basis by counterparty and such other information reasonably requested by the Administrative Agent. . . ." |

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Section 2.19 *Payments Generally; Pro Rata Treatment* (DIP) | Waterfall provision – Tranche A and B Lenders are to be paid all amounts due to them at any time before Tranche C Lenders. | "If . . . insufficient funds are received by and available to the Administrative Agent to pay fully all amounts of principal, unreimbursed LC Disbursements, interest, fees and expenses then due hereunder, such funds shall be applied (i) <u>first</u>, towards [fees and expenses of the Administrative Agent] (ii) <u>second</u>, towards payment of interest, Tranche A Commitment Fees and Letter of Credit Fees then due on account of Tranche A Loans, Tranche B Loan, Unused Total Tranche A Commitment, unreimbursed LC Disbursements and Letters of Credit (including [default interest]), ratably among the parties . . . (iii) <u>third</u>, towards payment of principal of the Tranche A Loans, Tranche B Loan, and unreimbursed LC Disbursements then due hereunder, ratably among the parties . . . (iv) <u>fourth</u>, towards the Cash Collateralization of Letters of Credit then outstanding in an aggregate amount equal to 105% of the Uncollateralized LC Exposure, (v) <u>fifth</u>, solely on and after the First-Priority Tranches Payout Date has occurred, towards payment of interest (including [default interest]) and the Tranche C Commitment Fees then due on account of the Tranche C Loan, ratably among the parties entitled thereto in accordance with the amounts of interest then due to such parties and (vi) <u>sixth</u>, solely on and after the First-Priority Tranches Payout Date has occurred . . . towards payment of principal of the Tranche C Loan then due hereunder, ratably among the parties . . . ; <u>provided</u>, <u>however</u>, that (A) funds may be applied towards payment of the interest then due on account of the Tranche C Loan prior to the occurrence of the First-Priority Tranches Payout Date if all payments then due described in clauses first through fourth, inclusive, have been made in full in cash and (B) the proceeds from the foreclosure of any Collateral shall be applied as set forth in the Security and Pledge Agreement." |
| Section 15 (g) *Remedies* (SPA) | | "(g) All cash proceeds received by the Agent in respect of any sale of, collection from, or other realization upon all or any part of the Collateral shall be applied (after payment of any amounts payable to the Agent pursuant to [the Agent indemnification provisions hereof] (i) <u>first</u>, towards [fees and expenses of the Administrative Agent], (ii) <u>second</u>, towards payment of interest (including [default interest]), Commitment Fees and Letter of Credit Fees then due on account of Tranche A Loans, Tranche B Loan, Unused Total Tranche A Commitment, unreimbursed LC Disbursements and Letters of Credit . . ., (iii) <u>third</u>, towards payment of principal of the Tranche A Loans, Tranche B Loan and unreimbursed LC Disbursements, and the payment of Cash Management Obligations and Secured Hedging Obligations then due . . . unreimbursed LC Disbursements, Cash Management Obligations and Secured Hedging Obligations then due to such parties, (iv) <u>fourth</u>, towards the Cash Collateralization of Letters of Credit then outstanding and in an aggregate amount equal to 105% of the Uncollateralized LC Exposure and towards the cash collateralization of any contingent Cash Management Obligations . . . and contingent Secured Hedging Obligations (as reasonably determined by the holder of such contingent Secured Hedging Obligations) in an aggregate amount equal to 105% of such obligations, ratably among the parties entitled thereto in accordance with the obligations being collateralized, (v) <u>fifth</u>, solely on and after the First-Priority Tranches Payout Date has occurred and all actions required by clause (iv) above has been taken and if a Tranche C Payment Event (as defined below) has occurred, towards payment of interest (including [default interest]) then due on account of the Tranche C Loan . . . to the extent of the Available Tranche C Payment Amount (as defined below), and (vi) <u>sixth</u>, solely on and after the First-Priority Tranches Payout Date has occurred and if a Tranche C Payment Event has occurred, towards payment of principal of the Tranche C Loan then due hereunder . . . to the extent of the Available Tranche C Payment Amount." |

2

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Section 2.25 *Priority and Liens* (DIP) | The DIP Liens will be junior to liens or security interests arising after the Refinancing Date and permitted under the DIP Credit Agreement to be senior to DIP Liens. | "(a) Subject to the Approval Order and the Security and Pledge Agreement, the Borrower and each of the Guarantors hereby covenants, represents and warrants that, upon entry of the Approval Order, the Obligations and the other Secured Obligations (including the obligations of the Borrower and the Guarantors in respect of any hedging obligations permitted hereunder . . . in each case owing to JPMCB, any other Lender or any of their respective banking Affiliates) . . . (i) pursuant to Section 364(c)(1) of the Bankruptcy Code, shall at all times constitute allowed claims in the Cases having priority over any and all administrative expenses, diminution claims (including the Replacement Liens and Junior Adequate Protection Liens) and all other claims against the Borrower and the Guarantors, now existing or hereafter arising, of any kind whatsoever, including all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code; provided, however, that such claims granted under the Approval Order in respect of Obligations under the Tranche A Facility and the Tranche B Loan shall be senior in priority to such claims granted under the Approval Order in respect of Obligations under the Tranche C Loan. . . ." |
| Paragraph 6 of DIP Refinancing Order *DIP Liens* | | "(d) Liens Senior To Certain Other Liens. The DIP Liens, the Replacement Liens and the Junior Adequate Protection Liens . . . shall not be subject or subordinate to (i) solely in the case of the DIP Liens, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Refinancing Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than with respect to any liens or security interests arising after the Refinancing Date and permitted under the DIP Credit Agreement to be senior to the DIP Liens." |
| Paragraph 13(a) of DIP Refinancing Order *Preservation Of Rights Granted Under This Order.* | | "(a) No claim or lien having a priority superior to or <u>pari passu</u> with those granted by this Order to the Agent and the DIP Lenders or to the Setoff Claimants, respectively, shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations remain outstanding, and the DIP Liens, the Replacement Liens and the Junior Adequate Protection Liens shall not be (i) solely in the case of the DIP Liens, subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise (other than as specifically provided for in this Order). Nothing in this paragraph 13(a) shall limit (x) the rights of the Debtors to refinance the Financing in compliance with the DIP Credit Agreement or (y) the rights of any party in interest with respect to any such refinancing." |

3

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Section 2.28 *Payment of Obligations* (DIP) | Payment obligations are subject to the provisions in the Credit Agreement that delegate the power to exercise remedies upon default to the Administrative Agent. | "Subject to the provisions of Section 7.01, upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement or any of the other Loan Documents of the Borrower and the Guarantors, the Lenders shall be entitled to immediate payment of such Obligations without further application to or order of the Bankruptcy Court." |
| Section 6.03 *Indebtedness* (DIP) | Debtors are permitted to enter into hedging agreements only with Lenders under the Credit Agreement and hedging must be within the ordinary course. | ". . . the Borrower . . . will not . . . incur . . . Indebtedness, except for . . . (x) Indebtedness incurred after the Filing Date by the Borrower or any Guarantor in connection with Hedging Agreements, in each case to the extent that (A) the counterparty to such agreement is a Lender or a banking Affiliate of a Lender (or was a Lender or a banking Affiliate of a Lender at the time such Indebtedness was incurred) and (B) such agreement or contract is entered into in the ordinary course of business and not for speculative purposes. . . ." |
| Section 7.01 *Events of Default* (DIP) | Lenders surrendered the power to exercise remedies upon default to the Administrative Agent. The Required Lenders have the right to direct the Administrative Agent's exercise of remedies. | "In the case of the happening of any of the following events and continuance thereof . . . then . . . the Administrative Agent may, and at the request of the Required Lenders, shall, . . . take one or more of the following actions . . .: (i) terminate or suspend forthwith the Total Commitment; (ii) declare the Loans or any portion thereof then outstanding to be forthwith due and payable . . . (iv) set-off amounts in the Letter of Credit Account or any other accounts maintained with the Administrative Agent . . . and (v) exercise any and all remedies under the Loan Documents and under applicable law available to the Administrative Agent and the Lenders." |
| Section 8.01 *Appointments, Administration of Administrative Agent* (DIP) | Each Lender, including Tranche C Lenders, irrevocably appointed Administrative Agent as its agent. | "Each of the Lenders and the Issuing Lender hereby irrevocably appoints each Agent as its agent and authorizes such Agent to take such actions on its behalf and to exercise such powers as are delegated to such Agent by the terms hereof, together with such actions and powers as are reasonably incidental thereto. . . . The general administration of the Loan Documents shall be by the Administrative Agent. . . ." |

4

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Section 10.09 *Amendments, etc.* (DIP) | With limited exceptions, only consent of Required Lenders is required to modify, amend, or waive any provision of Credit Agreement or Security and Pledge Agreement. | "No modification, amendment or waiver of any provision of this Agreement or the Security and Pledge Agreement, and no consent to any departure by the Borrower or any Guarantor therefrom, shall in any event be effective unless the same shall be in writing and signed by the Required Lenders . . . <u>provided</u>, <u>however</u>, that no such modification or amendment shall without the written consent of (i) the Super-majority First Priority Lenders (A) increase the advance rates set forth in the definition of the term Borrowing Base, add new asset categories to the Borrowing Base or otherwise cause the Borrowing Base or availability under the credit facilities provided for herein to be increased, (B) release any of the Liens granted to the Administrative Agent hereunder, under the Approval Order or under any other Loan Document, other than Liens on assets that are sold or otherwise disposed of in transactions permitted pursuant to the Loan Documents, or (C) release any of the Guarantors, other than as expressly permitted pursuant to the Loan Documents, (ii) the Lender affected thereby (A) increase the Commitment of a Lender (it being understood that a waiver of an Event of Default shall not constitute an increase in the Commitment of a Lender), or (B) reduce the principal amount of any Loan or the rate of interest payable thereon, or extend any date for the scheduled payment of interest hereunder or reduce any Fees payable hereunder or extend any date for the scheduled payment of any such Fees, or extend the final maturity of the Borrowers' obligations hereunder, (iii) all of the Lenders (A) amend or modify any provision of this Agreement which provides for the unanimous consent or approval of the Lenders, (B) amend this Section . . . the definition of Super-majority Lenders or the definition of Requisite Supermajority Entities, (C) amend or modify the Superpriority Claim status of the Lenders contemplated by [section herein discussing priority and liens], (D) release all or substantially all of the Liens granted to the Administrative Agent hereunder, under the Approval Order or under any other Loan Document, or release all or substantially all of the Guarantors or (E) amend any provision that sets forth the priority of payment as among the Tranche A Lenders, the Tranche B Lenders and the Tranche C Lenders, (iv) all of the Tranche A Lenders and the Tranche B Lenders, amend the definition of Required Lenders or the definition of Super-majority First-Priority Lenders or (v) all of the Lenders of the applicable Class, amend the definition of Super-majority Class Lenders in respect of such Class. No such amendment or modification may adversely affect the rights and obligations of the Administrative Agent or any Issuing Lender hereunder . . . without its prior written consent. No notice to or demand on the Borrower or any Guarantor shall entitle the Borrower or any Guarantor to any other or further notice or demand in the same, similar or other circumstances. Each assignee . . . shall be bound by any amendment, modification, waiver, or consent authorized as provided herein, and any consent by a Lender shall bind any Person subsequently acquiring an interest on the Loans held by such Lender. No amendment to this Agreement shall be effective against the Borrower or any Guarantor unless signed by the Borrower or such Guarantor, as the case may be. As used herein, the term Super-majority First Priority Lenders shall mean, at any time, Lenders having Tranche A Commitments at such time (or, if the Total Tranche A Commitment has been terminated, Lenders holding Tranche A Loans and LC Exposure at such time) and Lenders holding the Tranche B Loan at such time (or, if the Tranche B Loan is not outstanding, Lenders holding Tranche B Commitments at such time) representing in excess of 66-2/3% of the sum of the Total Tranche A Commitment at such time (or, if the Total Tranche A Commitment has been terminated, the Tranche A Total Commitment Usage at such time) plus the Total Tranche B Commitment at such time." |

5

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Paragraph 3(e) of DIP Refinancing Order *Findings Regarding The Financing* | The hedging obligations of the Debtors, as permitted under the DIP Credit Agreement, are granted superpriority status pursuant to section 364(c)(1). | "The Financing has been negotiated in good faith and at arm's length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation . . . (ii) any "Obligations" and all other "Secured Obligations" (as each such term is defined in the DIP Credit Agreement), including any hedging obligations of the Debtors permitted under the DIP Credit Agreement (the "Secured Hedging Obligations") . . . in each case owing to JPMCB, any DIP Lender or any of their respective banking affiliates (all of the foregoing . . . the "DIP Obligations") . . . shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise." |
| Paragraph 5(a) of DIP Refinancing Order *Superpriority Claims* | | "Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses . . . Replacement Liens and Junior Adequate Protection Liens (each as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), . . . which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out (defined below) to the extent specifically provided for herein. . ." |
| Section 8.03 *Liability of Agents* (DIP) | Administrative Agent is permitted to forebear from exercising discretionary rights and powers unless directed to do so by the Required Lenders. | "(a) No Agent shall have any duties or obligations except those expressly set forth herein. Without limiting the generality of the foregoing, (i) no Agent shall be subject to any fiduciary or other implied duties, regardless of whether an Event of Default has occurred and is continuing, (ii) no Agent shall have any duty to take any discretionary action or exercise any discretionary powers, except discretionary rights and powers expressly contemplated hereby that the Administrative Agent is required to exercise in writing as directed by the Required Lenders (or such other number or percentage of the Lenders as shall be necessary under the circumstances as provided in Section 10.09). . . ." |
| Section 1 *Grant of Security and Pledge* (SPA) | Liens securing the Credit Agreement were granted to Administrative Agent | "Each of the Grantors hereby grants and pledges to the Agent for its benefit and the ratable benefit of the Lenders, a perfected pledge and security interest in all of each Grantors right, title and interest in and to the following (the Collateral ). . . ." |

6

| Section | Significance Of Provision | Text Of Provision |
|---|---|---|
| Section 15(a) *Remedies* (SPA) | Administrative Agent is vested with discretion to exercise remedies. | "If any Event of Default shall have occurred and be continuing, and subject to the provisions of Section 7 of the Credit Agreement and the priorities and other terms set forth in Section 2.25 of the Credit Agreement and the Approval Order: . . . (a) The [Administrative] Agent may exercise in respect of the Collateral, in addition to other rights and remedies provided herein or otherwise available to it, and without application to or order of the Bankruptcy Court all the rights and remedies of a secured party on default under the Uniform Commercial Code . . . ." |

.