**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Email: robert.rosenberg@lw.com
       mitchell.seider@lw.com
       mark.broude@lw.com
       michael.riela@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Delphi Corporation, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO EXPEDITED MOTION FOR ORDER (I) SUPPLEMENTING THE JANUARY 5, 2007 DIP REFINANCING ORDER AND AUTHORIZING THE DEBTORS TO ENTER INTO AND IMPLEMENT ACCOMMODATION AGREEMENT AND (II) AUTHORIZING DEBTORS TO (A) ENTER INTO RELATED DOCUMENTS AND (B) PAY FEES IN CONNECTION THEREWITH**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation and certain of its affiliates (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement with respect to the Debtors' *Expedited Motion For Order (I) Supplementing the January 5, 2007 DIP Refinancing Order and Authorizing the Debtors to Enter Into and Implement Accommodation*

NY\1473338.2

*Agreement and (II) Authorizing Debtors to (A) Enter Into Related Documents and (B) Pay Fees in Connection Therewith* (the "Motion"). The Committee respectfully states as follows:

### STATEMENT

1. The Committee supports the Debtors' efforts to continue their use of proceeds from their post-petition debtor-in-possession loan facility (the "DIP Facility") through June 30, 2009 through an accommodation agreement (an "Accommodation Agreement") among the Debtors, JPMorgan Chase Bank (the "Agent") and the DIP lenders. Except for one major exception described herein, the Committee believes that the decision to enter into the Accommodation Agreement is a valid exercise of the Debtors' business judgment, and generally does not object to the terms of the Accommodation Agreement. Quite simply, if the Debtors cannot enter into an Accommodation Agreement with their DIP lenders, their reorganization prospects will be greatly hindered.

2. There is a solid basis for the Debtors' contention that the DIP credit agreement permits the Debtors to continue using the proceeds of the DIP Facility after the maturity date by obtaining the consent of the Tranche A lenders and the Tranche B lenders. First, only the votes of the Tranche A lenders and the Tranche B lenders are necessary to direct the Agent to take action (or not to take action) upon the occurrence of an Event of Default under the DIP Facility. In addition, upon an Event of Default under the DIP Facility, only the Agent (rather than individual lenders) may exercise remedies against the Debtors. These are provisions for which the Debtors specifically bargained (and to which all DIP lenders, including the Tranche C lenders, agreed), to maximize their flexibility while in chapter 11. The Tranche C lenders knew about (or should have known about) these provisions when they entered into, or subsequently purchased their interests in, the DIP Facility.

3.       The Motion originally was filed on November 7, 2008, with an initial version of the Accommodation Agreement attached as an exhibit.  On November 18, 2008, the Debtors filed a revised version of the Accommodation Agreement that makes a number of additional concessions to the DIP lenders (including Tranche C lenders).  The stated purpose of these concessions was to garner additional DIP lender support for the Accommodation Agreement.  One new concession the Debtors seek to provide to the Tranche C lenders under the November 18 version of the Accommodation Agreement is to grant them voting rights that they do not currently have.  Under the DIP Facility, the Tranche C lenders are specifically excluded from the definition of "Required Lenders," and thus do not have any say on a large number of issues where only Required Lender consent is required.[1]  The Debtors' modification to the Accommodation Agreement for the first time seeks to provide the Tranche C lenders with material voting rights.  Specifically, the Debtors introduced the concept of "Required Total Participant Lenders" into the Accommodation Agreement.  This is defined as the Participant Lenders holding Tranche A Loans, LC Exposure, a portion of the Tranche B Loan and a portion of the Tranche C loan, representing a majority of the sum of (x) the Tranche A Total Commitment Usage held by all Participant Lenders, plus (b) the Total Tranche B Commitment held by all Participant Lenders, *plus (c) the Total Tranche C Commitment held by all Participant Lenders.*[2]  Since the outstanding Tranche C loan is approximately $2.75 billion, while the sum of the outstanding Tranche A revolver and Tranche B loan is only approximately $716 million, the

---

[1] The proceeds of the Tranche C loan were used to pay in full all obligations under the 5-Year Third Amended and Restated Credit Agreement, dated as of June 14, 2005, a pre-petition credit agreement.  The absence of voting rights was a bargained-for *quid pro quo* in exchange for being elevated to administrative expense status.

[2] Capitalized terms used but not defined in this paragraph have the meanings given to them in the November 18, 2008 version of the Accommodation Agreement.

NY\1473338.2

Tranche C lenders will effectively control the vote on certain important issues like the termination or modification of the Accommodation Agreement.[3]

4.  The Committee believes that this new right provides the Tranche C lenders too much power to delay or possibly derail the Debtors' reorganization efforts, and there is no valid reason for the Debtors to give this right to the Tranche C lenders gratuitously.  The Tranche C lenders currently do not have voting rights under the DIP Facility, nor did they have voting rights under the version of the Accommodation Agreement that was filed with this Court on November 7.  Moreover, one of the Debtors' main rationales for volunteering this right to the Tranche C lenders – obtaining their consent to the Accommodation Agreement –has not been realized, as a number of Tranche C lenders have objected to the Motion.  While the Committee does not object to other concessions the Debtors propose to make to the DIP lenders (including to the Tranche C lenders) in the Accommodation Agreement, the Committee submits that granting voting rights where none currently exist makes little sense and increases the risk that actions of the Tranche C lenders may negatively affect the Debtors' restructuring efforts.

---

[3] The issues on which the Tranche C lenders would be permitted to vote under the November 18 version of the Accommodation Agreement include: (a) the right to determine whether any plan of reorganization that does not provide for the payment of the DIP lenders in full is a "satisfactory" plan of reorganization, and if any such plan is not "satisfactory," then the Accommodation Period would end on May 5, 2009 rather than June 30, 2009; (b) upon the occurrence of an Accommodation Default or an Automatic Accommodation Termination Default, the right to instruct the Agent to deliver a notice to the Debtors, terminating the Accommodation Period; and (c) the Debtors' ability to amend the Accommodation Agreement.

4

**WHEREFORE,** the Committee respectfully requests that this Court grant it such relief as is just and proper.

Dated: November 21, 2008
New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200

Attorneys for the Official Committee
of Unsecured Creditors

NY\1473338.2