IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

In re                     :    Chapter 11
                       :

DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                       :

               Debtors.   :    (Jointly Administered)
                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

      I, Darlene Calderon, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

      On December 4, 2008, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via electronic notification and (ii) upon the parties listed on Exhibit B hereto via postage pre-paid U.S. mail:

    1)   Order Authorizing Debtors To Enter (I) Second Amendment To Arrangement With General Motors Corporation Approved Pursuant To Second Dip Extension Order (Docket No. 13489) And (II) Partial Temporary Accelerated Payment Agreement ("GM Arrangement Second Amendment Agreement Approval Order") (Docket No. 14514) [a copy of which is attached hereto as Exhibit C]

    2)   Order (I) Supplementing January 5, 2007 DIP Refinancing Order (Docket No. 6461) And Authorizing Debtors To Enter Into And Implement Accommodation Agreement With Agent And Participating Lenders And (II) Authorizing Debtors To (A) Enter Into Related Documents And (B) Pay Fees In Connection Therewith ("Dip Accommodation Order") (Docket No. 14515) [a copy of which is attached hereto as Exhibit D]

    3)   Joint Stipulation And Agreed Order Reducing And Allowing Claim Number 13183 (Yazaki North America, Inc.) (Docket No. 14516) [a copy of which is attached hereto as Exhibit E]

    4)   Joint Stipulation And Agreed Order Allowing Claim Number 11132 (Marco Manufacturing Co.) (Docket No. 14517) [a copy of which is attached hereto as Exhibit F]

5) Joint Stipulation And Agreed Order Compromising And Allowing Proofs Of Claim Numbers 14125, 14126, 14127, 14128, 14129, 14130, 14042 (FCI Canada Inc., FCI Automotive Deutschland GmbH, FCI Italia S.p.A., FCI Electronics Mexido [sic], S. De R.L. De C.V., FCI Automotive France, S.A., FCI USA, Inc. And FCI Austria GmbH) (Docket No. 14518) [a copy of which is attached hereto as Exhibit G]

6) Joint Stipulation And Agreed Order Disallowing And Expunging Proof Of Claim Number 16292 (Portage County Water Resources) (Docket No. 14519) [a copy of which is attached hereto as Exhibit H]

7) Joint Stipulation And Agreed Order Compromising And Allowing Proofs Of Claim Numbers 2447, 2448, 2449, 2450, 2451, 2452, 2453, 2454, 2455, And 2456 (Tecnomec S.R.L.) (Docket No. 14520) [a copy of which is attached hereto as Exhibit I]

8) Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 12223 (Wesco Distribution, Inc.) (Docket No. 14521) [a copy of which is attached hereto as Exhibit J]

9) Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 11279 (CTS Of Canada Co. And Bear Stearns Investment Products Inc.) (Docket No. 14522) [a copy of which is attached hereto as Exhibit K]

10) Thirteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 14534) [a copy of which is attached hereto as Exhibit L]

On December 4, 2008, I caused to be served the document listed below upon the party listed on Exhibit M hereto via postage pre-paid U.S. mail:

11) Joint Stipulation And Agreed Order Reducing And Allowing Claim Number 13183 (Yazaki North America, Inc.) (Docket No. 14516) [a copy of which is attached hereto as Exhibit E]

On December 4, 2008, I caused to be served the document listed below upon the party listed on Exhibit N hereto via postage pre-paid U.S. mail:

12) Joint Stipulation And Agreed Order Allowing Claim Number 11132 (Marco Manufacturing Co.) (Docket No. 14517) [a copy of which is attached hereto as Exhibit F]

2

On December 4, 2008, I caused to be served the document listed below upon the party listed on <u>Exhibit O</u> hereto via postage pre-paid U.S. mail:

13) Joint Stipulation And Agreed Order Compromising And Allowing Proofs Of Claim Numbers 14125, 14126, 14127, 14128, 14129, 14130, 14042 (FCI Canada Inc., FCI Automotive Deutschland GmbH, FCI Italia S.p.A., FCI Electronics Mexido [sic], S. De R.L. De C.V., FCI Automotive France, S.A., FCI USA, Inc. And FCI Austria GmbH) (Docket No. 14518) [a copy of which is attached hereto as <u>Exhibit G</u>]

On December 4, 2008, I caused to be served the document listed below upon the party listed on <u>Exhibit P</u> hereto via postage pre-paid U.S. mail:

14) Joint Stipulation And Agreed Order Disallowing And Expunging Proof Of Claim Number 16292 (Portage County Water Resources) (Docket No. 14519) [a copy of which is attached hereto as <u>Exhibit H</u>]

On December 4, 2008, I caused to be served the document listed below upon the party listed on <u>Exhibit Q</u> hereto via postage pre-paid U.S. mail:

15) Joint Stipulation And Agreed Order Compromising And Allowing Proofs Of Claim Numbers 2447, 2448, 2449, 2450, 2451, 2452, 2453, 2454, 2455, And 2456 (Tecnomec S.R.L.) (Docket No. 14520) [a copy of which is attached hereto as <u>Exhibit I</u>]

On December 4, 2008, I caused to be served the document listed below upon the parties listed on <u>Exhibit R</u> hereto via postage pre-paid U.S. mail:

16) Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 12223 (Wesco Distribution, Inc.) (Docket No. 14521) [a copy of which is attached hereto as <u>Exhibit J</u>]

On December 4, 2008, I caused to be served the document listed below upon the parties listed on <u>Exhibit S</u> hereto via postage pre-paid U.S. mail:

17) Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 11279 (CTS Of Canada Co. And Bear Stearns Investment Products Inc.) (Docket No. 14522) [a copy of which is attached hereto as <u>Exhibit K</u>]

Dated: December 9, 2008

_____/s/ Darlene Calderon_____
Darlene Calderon

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 9th day of December, 2008, by Darlene Calderon, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature:_____/s/ Vanessa R. Quiñones_____

Commission Expires:__3/20/11_____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | sreisman@cm-p.com | Counsel to Flextronics International, Inc.; Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | patrick.healy@lawdeb.com | Indenture Trustee |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Karen L. Morris, John Menke, Ralph L. Landy, Beth A. Bangert | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | landy.ralph@pbgc.gov morris.karen@pbgc.gov menke.john@pbfgc.gov bangert.beth@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

12/8/2008 4:23 PM
Master Service List 081119 Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/8/2008 4:23 PM
Master Service List 081119 Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-902-6028 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Akebono Brake Corporaton | Brandon J. Kessinger | 310 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5580 | bkessinger@akebono-usa.com | Representative for Akebono Corporation |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | One Bryant Park | | New York | NY | 10036 | | 212-872-1000 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Company, Ltd., and Furukawa Electric North America APD, Inc. |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Anthony Ostlund & Baer PA | John B Orenstein | 3600 Wells Fargo Ctr | 90 S 7th St | Minneapolis | MN | 55402 | | 612-349-6969 | jorenstein@aoblaw.com | Attorneys for Whitebox Hedged High Yield Partners, LP |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc.; GKN Sinter Metals, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Bingham McHale LLP | Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | mrichards@blankrome.com | Counsel to DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Michael A Trentadue Carina M de la Torre | 111 Monument Circle Ste 2700 | | Indianapolis | IN | 46204 | | 317-684-5000 | mtrentadue@boselaw.com cdelatorre@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Manufacturing Compnay Southwest, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimiliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Buchanan Ingersoll & Rooney | Mary Caloway | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | mary.caloway@bipc.com | Counsel to Fiduciary Counselors |
| Buchanan Ingersoll & Rooney | William H. Schorling, Esq. | 1835 Market St. 14th Floor | | Philadelphia | PA | 19103 | | 215-665-5326 | william.schorling@bipc.com | Counsel to Fiduciary Counselors |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | rusadi@cahill.com | Counsel to Engelhard Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio Robert Calinoff | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | dhriggio@gmail.com rcalinoff@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, I |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | japplebaum@clarkhill.com | Counsel to 1st Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge Wall Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Ceompany; Attorneys for Columbia Industrial |
| Covington & Burling | Susan Power Johnston Aaron R. Marcu | 620 Eighth Ave | | New York | NY | 10018 | | 212-841-1005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Cindi Eilbott | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6936 | ceilbott@curtis.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| David P. Martin | | 519 Energy Center Blvd | Ste 1104 | Northport | AL | 35401 | | 205-343-1771 | davidpmartin@erisacase.com davidpmartin@bellsouth.net | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Dykema Gossett PLLC | Douglas S Parker | 39577 Woodward Ave | Suite 300 | Bloomfield Hills | MI | 48304 | | 248-203-0703 | dparker@dykema.com | Counsel for Federal Screw |
| Dykema Gossett PLLC | Morgan Smith | 10 South Wacker Dr | Suite 2300 | Chicago | IL | 60606 | | 312-627-5679 | mmsmith@dykema.com | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Sharon A. Salinas | 10 South Wacker Dr | Suite 2300 | Chicago | IL | 60606 | | 312-627-2199 | ssalinas@dykema.com | Counsel to Tremont City Barrel Fill PRP Group |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Farrell Fritz PC | Louis A. Scarcella Patrick T. Collins | 1320 RexCorp Plaza | | Uniondale | NY | 11556-1320 | | 516-227-0700 | lscarcella@farrellfritz.com pcollins@farrellfritz.com | Counsel to Official Committee of Equity Holders |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Genovese Joblove & Battista, P.A. | David C. Cimo | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | dcimo@gjb-law.com | Counsel to Ryder Integrated Logistics, Inc. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg Segalla LLP | Attn Bruce W Hoover | 665 Main St Ste 400 | | Buffalo | NY | 14203 | | 716-566-5400 | bhoover@goldbergsegalla.com | Attorneys for MasTec Inc. |
| Goodwin Procter LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | abrilliant@goodwinprocter.com | Counsel to UGS Corp. |
| Goodwin Procter LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | cdruehl@goodwinprocter.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | James J Sabella | 485 Lexington Ave | | New York | NY | 10017 | | 646-722-8520 | jsabella@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | mrr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbeler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | diconzam@gtlaw.com | Counsel to Samtech Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hinckley Allen & Snyder LLP | Michael J Pendell | 185 Asylum St CityPlace I | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | mpendell@haslaw.com | Counsel to Barnes Group, Inc. |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 60 E 42nd St 37th Fl | | New York | NY | 10165-0150 | | 212-661-3535 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation, Co-Counsel for Yazaki North America, Inc. |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Lawrence J. Murphy | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226 | | 313-465-7488 | lmurphy@honigman.Com | Attorneys for Guide Corporation and Lightsource Parent Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jackson Walker LLP | Bruce J. Ruzinsky Desiree K. Killen | 1401 McKinney St Ste 1900 | | Houston | TX | 77010 | | 713-751-4200 | bruzinsky@jw.com dkillen@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jackson Walker LLP | Heather M. Forrest | 901 Main St Ste 600 | | Dallas | TX | 75202 | | 214-953-6000 | hforrest@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jason, Inc. | Will Schultz, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | 414-277-2110 | wschultz@jasoninc.com | General Counsel to Jason Incorporated |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | gerdekomarek@bellsouth.net | Counsel to Peggy C. Brannon, Bay County Tax Collector |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Jones Day | Corinne Ball | 222 East 41st Street | | New York | NY | 10017 | | 212-326-7844 | cball@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Jones Day | Peter J. Benvenutti Michaeline H. Correa | 555 California St 26th Floor | | San Francisco | CA | 94104 | | 415-626-3939 | pjbenvenutti@jonesday.com mcorrea@jonesday.com | Attorneys for Symantec Corporation, Successor-in-Interest to Veritas Corporation |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Craig A. Wolfe | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | cwolfe@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Joseph Boyle | 200 Kimball Dr | | Parsippany | NJ | 07054 | | 973-503-5900 | jboyle@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Merrill B. Stone | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | mstone@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | lmagarik@kimlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | Daniel Egan | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | degan@kslaw.com | Counsel to KPMG LLP |
| King & Spalding, LLP | H. Slayton Dabney, Jr. | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | sdabney@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrysler Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert, Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | mitchell.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | robert.rosenberg@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Locke Lord Bissell & Liddell | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8304 | kwalsh@lockelord.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 22

12/8/2008 4:18 PM
Email (401)

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Locke Lord Bissell & Liddell | Timothy S. McFadden | 111 South Wacker Drive | | Chicago | IL | 60606 | | 312-443-0370 | tmcfadden@lockelord.com | Counsel to Methode Electronics, Inc. |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | Gary O. Ravert | 340 Madison Avenue | | New York | NY | 10017-1922 | | 212-547-5477 | gravert@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDermott Will & Emery LLP | Steven P. Handler Monica M. Quinn | 227 W Monroe St | | Chicago | IL | 60606 | | 312-372-2000 | shandler@mwe.com mquinn@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| McGuireWoods LLP | Daniel F Blanks | One James Center | 901 East Cary Street | Richmond | VA | 23219 | | 804-775-1000 | dblanks@mcguirewoods.com | Counsel for CSX Transportation, Inc. |
| McGuireWoods LLP | John H Maddock III | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | jmaddock@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc.; Counsel for CSX Transportation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Attn Thomas R Slome Esq | 990 Stewart Ave Ste 300 | PO Box 9194 | Garden City | NY | 11530-9194 | | 516-741-6565 | tslome@msek.com | Counsel for Pamela Geller |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers Law Group, P.C. | Merle C. Meyers | 44 Montgomery Street | Suite 1010 | San Francisco | CA | 94104 | | 415-362-7500 | mmeyers@mlg-pc.com | Counsel to Alps Automotive, Inc. |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Miami-Dade County Tax Collector | April Burch | Paralegal Unit | 140 West Flagler St Ste 1403 | Miami | FL | 33130 | | 305-375-5314 | mdtcbkc@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | jdonahue@miheritage.com | Counsel to Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller & Martin PLLC | Dale Allen | 150 Fourth Ave North | Ste 1200 | Nashville | TN | 37219 | | | vjones@millermartin.com | Counsel to Averitt Express |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | greenj@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | fusco@millercanfield.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | piricotta@mintz.com pricotta@mintz.com | Counsel to Molex Connector Corp |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | Jeff.Ott@molex.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | agottfried@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | mzelmanovitz@morganlewis.com | Counsel to Sumitomo Corporation |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | resterkin@morganlewis.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | lberkoff@moritthock.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | mdallago@morrisoncohen.com | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| National Renewable Energy Laboratory | Marty Noland Principal Attorney | 1617 Golden Blvd | Legal Office, Mail Stop 1734 | Golden | CO | 80401 | | 303-384-7550 | marty_noland@nrel.gov | Counsel for National Renewable Energy Laboratory |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael Moody | 55 W Wacker Dr | Ste 1400 | Chicago | IL | 60615 | | 312-849-2020 | mmoody@orourkeandmoody.com | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Raniero D'Aversa, Jr. | 666 Fifth Avenue | | New York | NY | 10103-0001 | | 212-506-3715 | Rdaversa@orrick.com | Counsel to Bank of America, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | Rfeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul H. Spaeth Co. LPA | Paul H. Spaeth | 130 W Second St Ste 450 | | Dayton | OH | 45402 | | 937-223-1655 | spaethlaw@phslaw.com | Attorneys for F&G Multi-Slide Inc and F&G Tool & Die Co. Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | arosenberg@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | emcolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423-2700 | | 937-223-1130 | scarter@pselaw.com | |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | jh@previant.com mgr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | jkp@qad.com | Counsel to QAD, Inc. |
| Quarles & Brady LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady LLP | John J. Dawson | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | jdawson@quarles.com | Counsel to Semiconductor Components Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Quarles & Brady LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation; Flambeau Inc. |
| Quarles & Brady LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Reed Smith | Ann Pille | 10 South Wacker Drive | | Chicago | IL | 60606 | | 312-207-1000 | apille@reedsmith.com | Counsel to Infineon; Infineon Technologies |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Republic Engineered Products, Inc. | Joseph A Kaczka | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3215 | jkaczka@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Roberto Carrillo | 230 Park Avenue | Suite 1130 | New York | NY | 10169 | | 212-818-9200 | rcarrillo@ssbb.com | Attorney's for Tecnomec S.r.l. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Michael R Wernette | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | mwernette@schaferandweiner.com shellie@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | egeekie@schiffhardin.com | Counsel to  Means Industries |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Kathleen M. LaManna | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5603 | bankruptcy@goodwin.com | |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 22

12/8/2008 4:18 PM
Email (401)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Simon, Stella & Zingas, PC | Stephen P. Stella | 422 W Congress Ste 400 | | Detroit | MI | 48226 | | 313-962-6400 X225 | attorneystella@sszpc.com | Counsel to Motor City Electric |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | G. Christopher Meyer | 4900 Key Tower | 127 Public Sq | Cleveland | OH | 44114 | | 216-479-8692 | cmeyer@ssd.com | Counsel to Furukawa Electric Co., Ltd.; Counsel for the City of Dayton, Ohio |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | sarah.morrison@doj.ca.gov | Attorneys for the State of the California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | madison.cashman@stites.com | Counsel to Setech, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |
| Stutman Treister & Glatt Professional Corporation | Christine M. Pajak Eric D. Goldberg Isaac M. Pachulski Esq Jeffrey H Davidson Esq | 1901 Avenue of the Stars | 12th Floor | Los Angeles | CA | 90067 | | 310-228-5600 | cpajak@stutman.com egoldberg@stutman.com ipachulski@stutman.com jdavidson@stutman.com | Counsel to CR Intrinsic Investors, LLC, Elliot Associates, L.P., Highland Capital Management, L.P. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Teitelbaum & Baskin LLP | Jay Teitelbaum Ron Baskin | 3 Barker Avenue | 3rd Floor | White Plains | NY | 10601 | | 914-437-7670 | jteitelbaum@tblawllp.com rbaskin@tblawllp.com | Counsel to Mary H. Schaefer |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | agbanknewyork@ag.tn.gov | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | niizeki.tetsuhiro@furukawa.co.jp | The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | robert.morris@timken.com | Representative for Timken Corporation |
| Thelen Reid Brown Raysman & Steiner LLP | Marcus O. Colabianchi | 101 Second St Ste 1800 | | San Francisco | CA | 94105-3606 | | 415-369-7301 | mcolabianchi@thelen.com | Counsel to Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thompson Coburn Fagel Haber | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | lnewman@tcfhlaw.com | Counsel to Aluminum International, Inc. |
| Thompson Coburn LLP d/b/a Thompson Coburn Fagel Haber | Dennis E. Quaid Esq | 55 E Monroe 40th Fl | | Chicago | IL | 60603 | | 312-580-2215 | dquaid@tcfhlaw.com efiledocketgroup@fagelhaber.com | Counsel for Penn Aluminum International Inc |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| TI Group Automotive Systms LLC | Timothy M. Guerriero | 12345 E Nine Mile Rd | | Warren | MI | 48089 | | 586-755-8066 | tguerriero@us.tiauto.com | General Counsel and Company Secretary to TI Group Automotive Systems LLC |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | jwilson@tylercooper.com | Counsel to Barnes Group, Inc. |
| U.S. Department of Justice | Matthew L Schwartz Joseph N Cordaro | Assistant United States Attorneys | 86 Chambers Street 3rd Fl | New York | NY | 10007 | | 212-637-1945 | matthew.schwartz@usdoj.gov | Counsel to Enviromental Protection Agency; Internal Revenue Service; Department of Health and Human Services; and Customs and Border Protection |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | hzamboni@underbergkessler.com | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO David Jury, Esq. | | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2546 | djury@usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | tscobb@vorys.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation; Counsel to Daewoo International Corp and Daewoo International (America) Corp |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Allen Grumbine | 550 South Main St | | Greenville | SC | 29601 | | 864-255-5402 | agrumbine@wcsr.com | Counsel to Armacell |
| Woods Oviatt Gilman LLP | Ronald J. Kisinski | 700 Crossroads Bldg | 2 State St | Rochester | NY | 14614 | | 585-362-4514 | rkisicki@woodsoviatt.com | |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 22 of 22

12/8/2008 4:18 PM
Email (401)

# EXHIBIT B

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | Counsel to Flextronics International, Inc.; Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | Debtors |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | Noticing and Claims Agent |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

12/8/2008 4:22 PM
Master Service List 081119 US Mail

Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Israel Goldowitz | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Karen L. Morris, John Menke, Ralph L. Landy, Beth A. Bangert | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)        Page 2 of 3        12/8/2008 4:22 PM
Master Service List 081119 US Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 07960 | 973-656-8365 | 973-656-8805 | Creditor Committee Member |
| United States Trustee | Brian Masumoto | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/8/2008 4:22 PM
Master Service List 081119 US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | Counsel to APS Clearing, Inc. |
| Bingham McHale LLP | John E Taylor Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | 302-425-0430 | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | General Counsel to Jason Incorporated |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | Counsel to Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

12/8/2008 4:19 PM
US Mail (32)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | Counsel to Rotor Clip Company, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | Counsel to Ambrake Corporation; Akebono Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3000 | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | Counsel to SKF USA, Inc. |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | Corporate Secretary for Professional Technologies Services |
| Quinn Emanuel Urquhart Oliver & Hedges LLP | Susheel Kirpalani James C Tecce Scott C Shelley | 51 Madison Ave 22nd Fl | | New York | NY | 10010 | 212-849-7199 | Counsel For Collective Of Tranche C DIP Lenders |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | 617-951-7000 | Attorneys for D-J, Inc. |
| Sachnoff & Weaver, Ltd | Arlene Gelman Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | Counsel to Dott Industries, Inc. |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

12/8/2008 4:19 PM
US Mail (32)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Thaler & Gertler LLP | Andrew M. Thaler Esq | 90 Merrick Ave Ste 400 | | East Meadow | NY | 11554 | 516-228-3533 | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | 212-603-2000 | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | Conflicts counsel to Debtors |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | 714-966-1000 | Counsel to Toshiba America Electronic Components, Inc. |
| WL Ross & Co., LLC | Stephen Toy | 1166 Avenue of the Americas | | New York | NY | 10036-2708 | 212-826-1100 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/8/2008 4:19 PM
US Mail (32)

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
      In re                                   :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                    Debtors.         :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER AUTHORIZING DEBTORS TO ENTER (I) SECOND AMENDMENT TO
ARRANGEMENT WITH GENERAL MOTORS CORPORATION APPROVED
PURSUANT TO SECOND DIP EXTENSION ORDER (DOCKET NO. 13489) AND
(II) PARTIAL TEMPORARY ACCELERATED PAYMENT AGREEMENT

("GM ARRANGEMENT SECOND AMENDMENT AGREEMENT APPROVAL ORDER")

           Upon the unopposed motion, dated November 7, 2008 (the "Motion"), of Delphi

Corporation (the "Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for an order authorizing (i)

a second amendment to the arrangement with General Motors Corporation approved pursuant to

the Second DIP Extension Order (Docket No. 13489) and (ii) the Debtors' entry into a partial

temporary accelerated payment agreement with General Motors Corporation; and due and

appropriate notice of the Motion, the relief requested therein, and the opportunity for a hearing

on the Motion having been served by the Debtors in accordance with the Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Twelfth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management,

and Administrative Procedures, entered July 23, 2008 (Docket No. 13965), and no other or

1

further notice being necessary; and the Court having held a hearing on the Motion on December

1, 2008 (the "Hearing"); and upon the record of the Hearing and after due deliberation thereon,

and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.        This Court has core jurisdiction over these chapter 11 cases and the parties and

property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue of this proceeding

and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The Motion is hereby granted in its entirety.

3.        The Debtors are hereby authorized, effective December 1, 2008, but not directed,

to execute, deliver, and perform their obligations under the Amended GM Arrangement,[1] as

modified by the Second Amendment Agreement (the "Second Amended GM Arrangement")

substantially in the form attached as Exhibit A hereto.  Without limiting the foregoing, such

authorization shall include authorization for Delphi to receive, pursuant to section 364(b) of the

Bankruptcy Code, advances of up to $300,000,000 pursuant to the terms of the Second Amended

GM Arrangement and to pay any and all fees and expenses provided for by the Second Amended

GM Arrangement.  Upon the effectiveness of the Second Amended GM Arrangement, the

Second DIP Extension Order is hereby deemed amended by replacing Exhibit B thereto with the

Second Amended GM Arrangement, and all provisions of the Second DIP Extension Order (as

supplemented by the GM Arrangement Amendment Approval Order) applicable to the form of

Delphi-GM Agreement (as defined in the Second DIP Extension Order) attached thereto, and all

other documentation executed in connection therewith shall be deemed to apply to the Second

Amended GM Arrangement attached hereto.

---

[1]        Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4.      The Debtors are hereby authorized, effective December 1, 2008, but not directed, to execute, deliver, and perform their obligations under the Partial Temporary Accelerated Payment Agreement substantially in the form attached as <u>Exhibit B</u> hereto.

5.      Without limiting the generality of the foregoing, upon effectiveness of the Second Amendment Agreement, GM and its relevant Affiliates (as defined in the Amended GM Arrangement, the "GM Affiliates") shall have (a) allowed claims with administrative expense priority pursuant to section 503(b)(1) of the Bankruptcy Code against Delphi and the GM Guarantors for all Obligations (as defined in the Second Amended GM Arrangement, the "GM Arrangement Obligations") owing to GM or any applicable GM Affiliates and (b) all other rights under the Second Amended GM Arrangement and Partial Temporary Accelerated Payment Agreement, including, without limitation, the ability to exercise the right to set off and apply, subject to the terms of the Second Amended GM Arrangement, any indebtedness or liabilities owing by GM or the GM Affiliates to or for the credit or the account of Delphi or the GM Guarantors against any and all GM Arrangement Obligations of Delphi or the GM Guarantors without the need to seek additional modification of the automatic stay imposed pursuant to section 362 of the Bankruptcy Code and without further order of the Court.

6.      Notwithstanding anything to the contrary in the Second Amended GM Arrangement, (a) neither GM nor any GM Affiliates shall exercise any Set-Off Right (as defined in the Second Amended GM Arrangement) with respect to any GM Arrangement Obligations (except with respect to any prepayments due and payable under Section 2.09 of the Second Amended GM Arrangement) against any amounts payable by GM or any GM Affiliate (other than amounts payable by GM or the GM Affiliates to or for the credit or the account of any of the Debtors under the Master Restructuring Agreement and the Global Settlement Agreement (as

3

each such term is defined in the Second Amended GM Arrangement)) to or for the credit or the

account of any of the Debtors (or defer, delay, or suspend the payment of any other amounts

payable by GM or any GM Affiliates to or for the credit or the account of any of the Debtors)

until after the DIP Termination Date (as defined in the Second Amended GM Arrangement), and

(b) until after the DIP Termination Date, the Debtors shall not make any payment to GM or any

GM Affiliates with respect to the GM Arrangement Obligations (except (i) with respect to any

prepayments due and payable under Section 2.09 of the Amended Delphi-GM Agreement,

whether in cash or through any Set-Off Right (as defined in the Amended Delphi-GM

Agreement) exercised by GM, (ii) interest to the extent paid in kind under Section 2.05(b) of the

Amended Delphi-GM Agreement, and (iii) any GM Arrangement Obligations paid through any

Set-Off Right (as defined in the Amended Delphi-GM Agreement) exercised by GM against

amounts payable by GM or GM Affiliates to or for the credit or the account of any of the

Debtors pursuant to the Global Settlement Agreement or Master Restructuring Agreement as

permitted under the Amended Delphi-GM Agreement).

       7.      Each of the Second Amendment Agreement and the Partial Temporary

Accelerated Payment Agreement have been negotiated in good faith and at arm's-length between

the Debtors and GM, and all of the GM Arrangement Obligations and obligations under the

Partial Temporary Accelerated Payment Agreement as authorized by this order have been

incurred in good faith as that term is used in section 364(e) of the Bankruptcy Code.  In

accordance with section 364(e) of the Bankruptcy Code, in the event that any or all provisions of

this order, the Second Amendment Agreement, or the Partial Temporary Accelerated Payment

Agreement are hereinafter modified, amended, or vacated by a subsequent order of this Court or

any other court, no such modification, amendment, or vacation shall affect the validity,

enforceability, or priority of any lien (including any rights of setoff of GM or any GM Affiliate permitted by the Second Amendment Agreement, the Partial Temporary Accelerated Payment Agreement, and this order) or claim authorized or created hereby or thereby.  Notwithstanding any such modification, amendment, or vacation, any claim granted to GM or any GM Affiliate hereunder, under the Second Amendment Agreement, or under the Partial Temporary Accelerated Payment Agreement arising prior to the effective date of such amendment, modification, or vacation shall be governed in all respects by the original provisions of this order, the Second Amendment Agreement, or the Partial Temporary Accelerated Payment Agreement, as the case may be, and GM and the GM Affiliates shall be entitled to all of the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and therein, with respect to any such claim.

8.      A sound business purpose exists for the Debtors to incur all obligations under each of the Second Amendment Agreement and the Partial Temporary Accelerated Payment Agreement in accordance with the requirements of 11 U.S.C. § 363(b).

9.      In the event of any inconsistency between the provisions of this order and either the Second Amendment Agreement or the Partial Temporary Accelerated Payment Agreement, the provisions of this order shall govern.

10.      This Court shall retain jurisdiction to enforce and implement the terms and provisions of the Second Amendment Agreement and the Partial Temporary Accelerated Payment Agreement in all respects.

11.      Notwithstanding Bankruptcy Rule 6004(g) or any other provision of the Bankruptcy Rules or Bankruptcy Code, the terms and conditions of this order shall be immediately effective and enforceable upon its entry.

5

Dated:    New York, New York
       December <u>3</u>, 2008

                    /s/Robert D. Drain
                    UNITED STATES BANKRUPTCY JUDGE

# **Exhibit A**

### AMENDMENT NO. 2 TO GM-DELPHI AGREEMENT

**AMENDMENT NO. 2**, dated as of December [__], 2008 (this "<u>Amendment</u>"), among DELPHI CORPORATION, a Delaware corporation (the "<u>Borrower</u>"), a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code, and the subsidiaries of the Borrower signatory hereto (each a "<u>Guarantor</u>" and collectively the "<u>Guarantors</u>"), each of which Guarantors is a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the cases of the Borrower and the Guarantors, each a "<u>Case</u>" and collectively, the "<u>Cases</u>"), and GENERAL MOTORS CORPORATION ("<u>GM</u>").

## RECITALS:

**WHEREAS**, the Borrower, the Guarantors and GM have previously entered into that certain agreement, dated as of May 9, 2008 and as amended by that certain Amendment No. 1 effective as of October 6, 2008 (as such may be further amended or otherwise modified, the "<u>GM-Delphi Agreement</u>");

**WHEREAS**, Delphi is seeking certain accommodations from the DIP Lenders; and

**WHEREAS**, the Borrower, the Guarantors and GM wish to enter into this Amendment to amend the GM-Delphi Agreement as set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.      <u>Defined Terms</u>.  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the GM-Delphi Agreement.

2.      <u>Amendments</u>.  Subject to the terms and conditions set forth herein, effective as of the Effective Date (as defined below), the GM-Delphi Agreement (together with the Exhibits and Schedules thereto) is hereby amended in its entirety to read as <u>Exhibit A</u> attached hereto.

3.      <u>Conditions to Effectiveness of this Amendment</u>.  This Amendment shall become effective on the first date on which each of the following conditions precedent are satisfied (or otherwise waived by GM in its sole discretion) on or prior to December 4, 2008 (the "<u>Effective Date</u>"):

(a)      <u>Execution of Amendment</u>.  This Amendment shall have been executed by the Borrower and each of the Guarantors.

(b)      <u>Documents and Certificates</u>.  GM shall have received such documents and certificates as GM or its counsel may reasonably request relating to the organization, existence and good standing of the Borrower and each of the Guarantors, the authorization of the transactions under this Amendment and any other legal matters relating to the Borrower and each of the Guarantors, this Amendment or the transactions contemplated hereunder, all in form and substance reasonably satisfactory to GM and its counsel.

(c)      <u>DIP Accommodation Agreement</u>.  The Bankruptcy Court shall have entered an order (the "<u>Accommodation Agreement Order</u>") approving the Accommodation Agreement, which agreement shall have become effective on or before December 4, 2008 and pursuant to which the DIP

Lenders shall have agreed to a forbearance with respect to the Maturity Date until a date no earlier than as set forth in the draft Accommodation Agreement dated November 26, 2008; *provided*, that the Accommodation Agreement shall be on terms reasonably acceptable to GM and that such order shall have been entered on or before December 4, 2008.

(d)    Approval Order. The Bankruptcy Court shall have entered an order, on or before December 4, 2008, approving this Amendment (the "Approval Order"), which Approval Order (a) shall authorize the payment by the Borrower of all fees and expenses provided for herein and in the Existing Agreement and (b) shall be in form and substance acceptable to GM.

(e)    No Default.  (i) No Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default shall have occurred and be continuing under the GM-Delphi Agreement and (ii) no Automatic Accommodation Termination Default and no Accommodation Default, and no event which upon notice or lapse of time or both would constitute an Automatic Accommodation Termination Default or an Accommodation Default, shall have occurred and be continuing under the Accommodation Agreement, in each case, unless such event has been waived or amended by the DIP Lenders and (iii) no amendments or other modifications to the DIP Credit Agreement with the effect of reducing the aggregate commitments or amounts available thereunder (except in accordance with the terms of the Accommodation Agreement) shall have become effective.

(f)    Fees and Expenses.  GM shall have received the payment by the Borrower of all fees and expenses referred to herein and in the GM-Delphi Agreement.

4.    Representations and Warranties.  The Borrower and each Guarantor hereby represents and warrants to GM, on and as of the date hereof, both prior to and after giving effect to this Amendment, (i) the Borrower and each Guarantor has taken all necessary action to authorize the execution, delivery and performance of this Amendment, (ii) this Amendment has been duly executed and delivered by the Borrower and each Guarantor, respectively, and (iii) this Amendment is the legal, valid and binding obligation of the Borrower and each Guarantor, enforceable against it in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

5.    Continuing Effect; Guaranties.

(a)    Except as expressly set forth in this Amendment, all of the terms and provisions of the GM-Delphi Agreement are and shall remain in full force and effect and the Borrower and each Guarantor shall continue to be bound by all of such terms and provisions.  The Amendment provided for herein is limited to the specific provisions of the GM-Delphi Agreement specified herein and shall not constitute an amendment of, or an indication of GM's willingness to amend or waive, any other provisions of the GM-Delphi Agreement or the same sections for any other date or purpose.

(b)    The Borrower and each Guarantor hereby consents to this Amendment, including all increases in commitments and extensions of additional credit pursuant hereto and the execution, delivery and performance of the other documents (if any) to be executed in connection herewith.  The Borrower and each Guarantor hereby acknowledges and agrees that all of its obligations, including all Guaranties granted to GM under the GM-Delphi Agreement, are reaffirmed and that such Guaranties shall continue in full force and effect on and after Effective Date to secure and support the Obligations of the Borrower and the Guarantors.

6.    Expenses.  The Borrower and each Guarantor jointly and severally agree to pay and reimburse GM for all its reasonable out-of-pocket costs and expenses incurred in connection with the

negotiation, preparation, execution and delivery of this Amendment, and other documents prepared in connection herewith, and the transactions contemplated hereby, including, without limitation, reasonable fees and disbursements and other charges of counsel to GM.

7.     Choice of Law.  This Amendment and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with the law of the State of New York.

8.     Counterparts.  This Amendment may be executed in any number of counterparts and by different parties and separate counterparts, each of which when so executed and delivered, shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Amendment by facsimile or e-mail shall be effective as delivery of a manually executed counterpart of this Amendment.

9.     Integration.  This Amendment, together with the GM-Delphi Agreement, incorporates all negotiations of the parties hereto with respect to the subject matter hereof and is the final expression and agreement of the parties hereto with respect to the subject matter hereof.

10.    Severability.  In case any provision in this Amendment shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this Amendment and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

11.    Waiver of Jury Trial.  Each of the parties hereto irrevocably waives trial by jury in any action or proceeding with respect to this Amendment and the GM-Delphi Agreement.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties have entered into this Amendment No. 2 as of the date first above written.

**BORROWER**

DELPHI CORPORATION

By:

_____
　　　Name:　John Sheehan
　　　Title:　Vice President and Chief Financial
　　　　　　　Officer

**GUARANTORS:**

DELPHI AUTOMOTIVE SYSTEMS (HOLDING),
INC.,
a Delaware corporation

By: _____
Name: John D. Sheehan
Title: President

DELPHI AUTOMOTIVE SYSTEMS GLOBAL
(HOLDING), INC.,
a Delaware corporation

By: _____
Name: John D. Sheehan
Title: President

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By: _____
Name: John D. Sheehan
Title: Vice President & Chief Financial
Officer

DELPHI AUTOMOTIVE SYSTEMS RISK
MANAGEMENT CORP.,
a Delaware corporation

By: _____
Name: John D. Sheehan
Title: Vice President & Treasurer

[SIGNATURE PAGE TO AMENDMENT NO. 2]

DELPHI FOREIGN SALES CORPORATION,
a Virgin Islands corporation


By: _____
Name: John D. Sheehan
Title: Controller


DELPHI INTERNATIONAL HOLDINGS CORP.,
a Delaware corporation


By: _____
Name: John D. Sheehan
Title: President


DELPHI LIQUIDATION HOLDING COMPANY,
a Delaware corporation


By: _____
Name: John D. Sheehan
Title: President

DELPHI LLC,
a Delaware limited liability company


By: _____
Name: John D. Sheehan
Title: President


DELPHI NY HOLDING CORPORATION,
a New York corporation


By: _____
Name: John D. Sheehan
Title: President

[SIGNATURE PAGE TO AMENDMENT NO. 2]

ASEC MANUFACTURING,
a Delaware general partnership

By: _____
     Name: John P. Arle
     Title: Treasurer

ASEC SALES,
a Delaware general partnership

By: _____
     Name: John P. Arle
     Title: Treasurer

DELCO ELECTRONICS OVERSEAS
CORPORATION,
a Delaware corporation

By: _____
     Name: John P. Arle
     Title: Assistant Treasurer

DELPHI AUTOMOTIVE SYSTEMS KOREA, INC.,
a Delaware corporation

By: _____
     Name: John P. Arle
     Title: Chief Executive Officer & President

DELPHI AUTOMOTIVE SYSTEMS HUMAN
RESOURCES LLC,
a Delaware limited liability company

By: _____
     Name: John P. Arle
     Title: Vice President & Treasurer

DELPHI AUTOMOTIVE SYSTEMS
INTERNATIONAL, INC.,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS OVERSEAS
CORPORATION,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS SERVICES
LLC,
a Delaware limited liability company

By: _____
Name: John P. Arle
Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS TENNESSEE,
INC.,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS THAILAND,
INC.,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Treasurer


[SIGNATURE PAGE TO AMENDMENT NO. 2]

DELPHI CONNECTION SYSTEMS,
a California corporation


By: _____
        Name: John P. Arle
        Title: Treasurer


DELPHI ELECTRONICS (HOLDING) LLC,
a Delaware limited liability company


By: _____
        Name: John P. Arle
        Title: Assistant Treasurer


DELPHI INTERNATIONAL SERVICES, INC.,
a Delaware corporation


By: _____
        Name: John P. Arle
        Title: Chief Financial Officer & Treasurer


DELPHI MECHATRONIC SYSTEMS, INC.,
a Delaware corporation


By: _____
        Name: John P. Arle
        Title: Treasurer


DELPHI SERVICES HOLDING CORPORATION,
a Delaware corporation


By: _____
        Name: John P. Arle
        Title: Treasurer

EXHAUST SYSTEMS CORPORATION,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Assistant Treasurer

ASPIRE, INC.,
a Michigan corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI CHINA LLC,
a Delaware limited liability company

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI DIESEL SYSTEMS CORP.,
a Delaware corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI INTEGRATED SERVICE SOLUTIONS,
   INC.,
   a Michigan corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

SPECIALTY ELECTRONICS, INC.,
a South Carolina corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

[SIGNATURE PAGE TO AMENDMENT NO. 2]

SPECIALTY ELECTRONICS INTERNATIONAL LTD.,
a Virgin Islands corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer


PACKARD HUGHES INTERCONNECT COMPANY,
a Delaware corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer


ENVIRONMENTAL CATALYSTS, LLC,
a Delaware limited liability company

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

[SIGNATURE PAGE TO AMENDMENT NO. 2]

DELPHI MEDICAL SYSTEMS COLORADO
   CORPORATION,
   a Colorado corporation


By: _____
       Name: Allan F. Seguin
       Title: Treasurer


DELPHI MEDICAL SYSTEMS CORPORATION,
a Delaware corporation


By: _____
       Name: Allan F. Seguin
       Title: Treasurer


DELPHI MEDICAL SYSTEMS TEXAS
CORPORATION,
a Delaware corporation


By: _____
       Name: Allan F. Seguin
       Title: Treasurer

DELPHI TECHNOLOGIES, INC.,
a Delaware corporation

By: _____
      Name: Thomas N. Twomey
      Title: Vice President Intellectual Property

DREAL, INC.,
a Delaware corporation

By its Sole Shareholder Delphi Corporation

_____

Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

**LENDER**

GENERAL MOTORS CORPORATION

By: _____

   Name: Walter G. Borst
   Title: Treasurer

# AGREEMENT

**AGREEMENT**, dated as of May 9, 2008, among DELPHI CORPORATION, a Delaware corporation and a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the "Borrower"), the subsidiaries of the Borrower signatory hereto (each a "Guarantor" and collectively the "Guarantors"), each of which Guarantors is a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the cases of the Borrower and the Guarantors, each a "Case" and collectively, the "Cases"), and GENERAL MOTORS CORPORATION ("GM"), as amended by Amendment No. 1, effective as of October 6, 2008, and Amendment No. 2, effective as of [_____], 2008.

## RECITALS:

**WHEREAS**, on October 8, 2005, the Borrower and the Guarantors filed voluntary petitions with the Bankruptcy Court initiating the Cases and have continued in the possession of their assets and in the management of their businesses pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, the Borrower, the Guarantors hereunder and certain financial institutions from time to time party thereto (the "DIP Lenders"), JPMorgan Chase Bank, N.A., as administrative agent for the DIP Lenders, and Citicorp USA, Inc., as syndication agent for certain DIP Lenders, have previously entered into that certain Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement, dated as of November 20, 2007 (as such may be amended, modified, refinanced or replaced from time to time, in each case, except upon the effectiveness of a Reorganization Plan, the "DIP Credit Agreement");

**WHEREAS**, in connection with the Master Restructuring Agreement and the Global Settlement Agreement, the Borrower has requested and, subject to the terms and conditions set forth herein, GM has agreed, to make the accommodations to the Borrower described in this Agreement, which accommodations relate to the advances to the Borrower by GM, on a net basis, in anticipation of the effectiveness of the Master Restructuring Agreement and the Global Settlement Agreement; and

**WHEREAS**, the Guarantors have agreed to guarantee the obligations of Borrower hereunder.

**NOW, THEREFORE**, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.01.    **Defined Terms.**  Capitalized terms that are not otherwise defined herein shall have the meaning set forth in the DIP Credit Agreement, including as set forth in Section 8.15.

"Accommodation Agreement" shall mean that certain Accommodation Agreement, dated [_____], among the Borrower, the Guarantors hereunder, the DIP Lenders and JPMorgan Chase Bank, N.A., as administrative agent for the DIP Lenders, as such agreement may be amended or otherwise modified from time to time; *provided*, that, in the event such agreement is amended or otherwise modified in a manner adverse to GM, the definitions and other references to the Accommodation Agreement herein shall be deemed references to such agreement without giving effect to any such amendment or modification.

"Accommodation Agreement Approval Order" shall have the meaning set forth in the Second Amendment Agreement.

"<u>Accommodation Default</u>" shall have the meaning set forth in the Accommodation Agreement.

"<u>Adjusted DIP Pricing</u>" shall have the meaning set forth in <u>Section 2.05(a)</u>.

"<u>Administrative Claims</u>" shall have the meaning set forth in <u>Section 2.11</u>.

"<u>Advance</u>" shall mean any Tranche A Advance and any Tranche B Advance.

"<u>Advance Request</u>" shall mean a written request executed and delivered by the Borrower for an Advance in accordance with <u>Section 2.02</u>.

"<u>Affiliates</u>" shall have the meaning set forth in the Global Settlement Agreement.

"<u>Agreement</u>" shall mean this Agreement, dated as of May 9, 2008, as amended by Amendment No. 1, effective as of October 6, 2008, and as further amended by Amendment No. 2, effective as of [_____], 2008 and as it may be further amended, supplemented or otherwise modified from time to time.

"<u>Approval Order</u>" shall have the meaning set forth in <u>Section 4.01(f)</u>.

"<u>Automatic Accommodation Termination Default</u>" shall have the meaning set forth in the Accommodation Agreement.

"<u>Borrower</u>" shall have the meaning set forth in the preamble to this Agreement.

"<u>Case</u>" and "<u>Cases</u>" shall have the meaning set forth in the preamble to this Agreement.

"<u>Commitments</u>" shall mean the Tranche A Commitment and the Tranche B Commitment.

"<u>DIP Credit Agreement</u>" shall have the meaning set forth in the recitals to this Agreement.

"<u>DIP Extension Order</u>" shall have the meaning set forth in <u>Section 4.01(c)</u>.

"<u>DIP Lenders</u>" shall have the meaning set forth in the recitals to this Agreement.

"<u>DIP Termination Date</u>" shall mean the date on which the commitments under the DIP Credit Agreement have been terminated, the Borrower's obligations thereunder (other than contingent obligations for which no demand has been made) have been paid in full and any outstanding Letters of Credit have been cash collateralized or backstopped by other letters of credit in accordance with the DIP Credit Agreement, whether pursuant to a Reorganization Plan or otherwise (other than pursuant to a refinancing or replacement, except upon the effectiveness of a Reorganization Plan, of the DIP Credit Agreement).

"<u>Effective Date</u>" shall have the meaning set forth in <u>Section 4.01</u>.

"<u>Event of Default</u>" shall have the meaning set forth in <u>Section 6.01</u>.

"<u>Existing Confirmed Plan</u>" shall mean the First Amended Joint Plan of Reorganization of the Borrower and certain affiliates, debtors and debtors-in-possession, as modified, which was confirmed by order of the United States Bankruptcy Court for the Southern District of New York entered January 25, 2008 (docket no. 12359).

"<u>Global Settlement Agreement</u>" shall mean that certain Amended and Restated Global Settlement agreement between the Borrower and GM dated September 12, 2008.

2

"GM" shall have the meaning set forth in the preamble to this Agreement.

"GM-Related Parties" shall have the meaning set forth in the Global Restructuring Agreement.

"Guarantor" and "Guarantors" shall have the meaning set forth in the preamble to this Agreement.

"Indemnitee" shall have the meaning set forth in Section 8.04(b).

"Interest Payment Date" shall mean the last day of each March, June, September and December, commencing on September 30, 2008.

"Loan" and "Loans" shall have the meaning set forth in Section 2.01(b).

"Master Restructuring Agreement" shall mean that certain Amended and Restated Master Restructuring Agreement between the Borrower and GM dated September 12, 2008.

"Obligations" shall mean the Tranche A Obligations and the Tranche B Obligations.

"Reorganization Plan" shall mean a chapter 11 plan of reorganization or liquidation, including any amendment thereto, in any of the Cases.

"Second Amendment Agreement" shall mean Amendment No. 2 to this Agreement, dated as of December [__], 2008, among the parties hereto.

"Second Amendment Approval Order" shall mean the "Approval Order", as defined in the Second Amendment Agreement.

"Second Amendment Effective Date" shall mean the "Effective Date", as defined in the Second Amendment Agreement.

"Set-Off Right" shall mean the right of GM to set-off and apply any and all indebtedness and other liabilities at any time owing by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor against any and all of the Obligations of such Borrower or Guarantor then existing under this Agreement in accordance with Section 6.01.

"Specified Availability" shall mean, on any date of determination, with respect to (a) Tranche A Loans, the amount by which the Tranche A Available Funds is less than $500,000,000 on such date and (b) Tranche B Loans, (i) the amount projected by the Borrower on such date to be the net use of cash by the Borrower and the Guarantors for the period commencing on such date through the next Monday or Thursday, as the case may be, *plus* (ii) $25,000,000 *minus* (iii) the Tranche B Available Funds as of the close of business on the Business Day immediately preceding the date of such determination.

"Specified Availability Certificate" shall mean a certificate in a form reasonably acceptable to GM signed by a Financial Officer of the Borrower, certifying (a) the amount of the Tranche B Available Funds as of the close of business on the Business Day immediately preceding the date of such certificate and (b) the Specified Availability as of such date and, in each case, reflecting the calculation thereof (based on day-to-day monthly cash projections consistent with past practice).

"Specified Default" shall have the meaning set forth in the Accommodation Agreement; provided that for purposes of this Agreement, a default, event or condition shall constitute a Specified Default only if the provisions of the Accommodation Agreement (in effect as of the Second Amendment Effective Date)

3

relating to the DIP Lenders' agreement to forbear from the exercise of remedies under the DIP Credit Agreement in respect of such Specified Default have not been terminated, modified or otherwise amended in a manner adverse to GM.

"<u>Tranche A Advance</u>" shall mean any Tranche A Loans made pursuant to this Agreement on a single date.

"<u>Tranche A Available Funds</u>" shall mean, on any date of determination, the sum of (i) all unrestricted cash and cash equivalents of the Borrower and the Guarantors (as reflected on a consolidated balance sheet of the Borrower and the Guarantors) *plus* (ii) the Available Amount (as defined under the DIP Credit Agreement on the date hereof) *plus* (iii) the GM Prepayment Reserve (as defined under the DIP Credit Agreement on the date hereof) *plus* (iv) on and after the first date on which the Subsequent Tranche C Commitment becomes available to the Borrower for borrowings under the DIP Credit Agreement in accordance with the terms and conditions thereof, any unused portion of the Subsequent Tranche C Commitment.

"<u>Tranche A Availability Certificate</u>" shall have the meaning set forth in <u>Section 4.02(a)</u>.

"<u>Tranche A Commitment</u>" shall mean the commitment of GM to make loans from time to time (a) prior to June 1, 2008 in an aggregate outstanding principal amount not to exceed $200,000,000, (b) from and after June 1, 2008 and prior to July 1, 2008 in an aggregate outstanding principal amount not to exceed $300,000,000 and (c) from and after July 1, 2008 in an aggregate outstanding principal amount not to exceed $650,000,000; *provided* that on and after the effectiveness of the amendments to each of the Master Restructuring Agreement and the Global Settlement Agreement referred to in <u>Section 5.03</u>, such Tranche A Commitment shall be permanently reduced from time to time by the aggregate amount paid by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor from and after the Effective Date (whether through the exercise of the Set-Off Right hereunder or otherwise paid in cash) under such agreements.

"<u>Tranche A Excess Availability</u>" shall have the meaning set forth in <u>Section 2.09(a)</u>.

"<u>Tranche A Loans</u>" shall have the meaning set forth in <u>Section 2.01(a)</u>.

"<u>Tranche A Obligations</u>" shall mean (a) the due and punctual payment of principal of and interest on (subject to the provisos to <u>Section 2.05(b)</u>) the Tranche A Loans and (b) the due and punctual payment of all other present and future, fixed or contingent, monetary obligations of the Borrower and the Guarantors to GM with respect to the Tranche A Loans under this Agreement.

"<u>Tranche A Scheduled Termination Date</u>" shall mean the earliest of (a) December 31, 2008; *provided*, that, in the event the Bankruptcy Court shall have entered a final and non-appealable order approving the extension of the DIP Credit Agreement on substantially the same terms (other than pricing) as the DIP Credit Agreement in effect on the date hereof or on terms otherwise reasonably acceptable to GM, upon request by the Borrower, and if mutually agreed by GM and the Borrower, such date may be extended to the earlier of (i) June 30, 2009 and (ii) the Termination Date (as defined in the DIP Credit Agreement and as such term may be amended, replaced or otherwise modified pursuant to such order), (b) the date on or after the effectiveness of the amendments to each of the Master Restructuring Agreement and the Global Settlement Agreement referred to in <u>Section 5.03</u> on which GM or its Affiliates has paid (whether through the exercise of the Set-Off Right hereunder or otherwise paid in cash) to or for the credit or the account of the Borrower or any Guarantor from and after the Effective Date an amount equal to or greater than $650,000,000 in the aggregate under such agreements and (c) the date on which a Reorganization Plan becomes effective.

"Tranche A Termination Date" shall mean the earlier of the Tranche A Scheduled Termination Date and the date on which Tranche A Obligations become due and payable in accordance with Section 6.01.

"Tranche B Advance" shall mean any Tranche B Loans made pursuant to this Agreement on a single date.

"Tranche B Available Funds" shall mean, on any date of determination, all unrestricted cash and cash equivalents of the Borrower and the Guarantors (as reflected on a consolidated balance sheet of the Borrower and the Guarantors) on such date.

"Tranche B Commitment" shall mean the commitment of GM to make loans from time to time (a) from and after October 1, 2008 and prior to November 1, 2008 in an aggregate outstanding principal amount not to exceed $200,000,000 and (b) from and after November 1, 2008 in an aggregate outstanding principal amount not to exceed $300,000,000.

"Tranche B Excess Availability" shall have the meaning set forth in Section 2.09(b).

"Tranche B Loans" shall have the meaning set forth in Section 2.01(b).

"Tranche B Obligations" shall mean (a) the due and punctual payment of principal of and interest on (subject to the provisos to Section 2.05(b)) the Tranche B Loans and (b) the due and punctual payment of all other present and future, fixed or contingent, monetary obligations of the Borrower and the Guarantors to GM with respect to the Tranche B Loans under this Agreement.

"Tranche B Scheduled Termination Date" shall mean the earliest of (a) June 30, 2009, (b) the date on which the Borrower or any Guarantor files any motion or other pleading seeking to amend or otherwise modify the Reorganization Plan and Disclosure Statement filed by Delphi on October 3, 2008 (the "Existing Plan") in a manner not reasonably satisfactory to GM, (c) the DIP Termination Date, (d) the expiration or termination of the Accommodation Agreement or the Accommodation Period (as defined in the Accommodation Agreement) and (e) the date on which a Reorganization Plan becomes effective.

"Tranche B Termination Date" shall mean the earlier of the Tranche B Scheduled Termination Date and the date on which Tranche B Obligations become due and payable in accordance with Section 6.01.

"Weekly Cash Projection" shall mean a certificate in a form reasonably acceptable to GM signed by a Financial Officer of the Borrower, certifying the amount projected by the Borrower to be the net use of cash by the Borrower and the Guarantors for the seven-day period (including an interim projection through next Monday or Thursday, as the case may be) commencing on the date of such certificate and reflecting the calculation thereof (based on day-to-day monthly cash projections consistent with past practice).

Any reference herein to the effectiveness of the amendments to each of the Master Restructuring Agreement and the Global Settlement Agreement referred to in Section 5.03, or the date on which each of the Master Restructuring Agreement and the Global Settlement Agreement shall have become effective pursuant to Section 5.03, shall be deemed to be September 12, 2008.

## ARTICLE II
## AMOUNT AND TERMS OF ADVANCES

Section 2.01.    <u>Commitment</u>.  GM agrees, on and after the Effective Date, and upon the terms and subject to the conditions set forth herein, to make available to the Borrower:

(a)        during the period commencing May 9, 2008 and ending on the Tranche A Termination Date, loans in an aggregate outstanding principal amount not to exceed the Tranche A Commitment (all such loans, collectively, the "<u>Tranche A Loans</u>"), which Tranche A Loans may be repaid and reborrowed in accordance with the provisions of this Agreement; *provided* that (a) the amount of any Tranche A Advance shall not exceed the least of (i) the unused portion of the Tranche A Commitment, (ii) without giving effect to such Tranche A Advance, the sum of (y) Specified Availability as of the close of business on the Business Day immediately preceding the date of such Tranche A Advance *plus* (z) the amount, if any, necessary to round up to the nearest minimum or integral multiple amount required by <u>Section 2.02(a)</u> and (iii) the aggregate amount requested by the Borrower in the applicable Advance Request in accordance with <u>Section 2.02(a)</u> and (b) the aggregate amount of all outstanding Tranche A Loans shall not exceed the Tranche A Commitment.  The Tranche A Commitment shall terminate immediately and without further action on the Tranche A Termination Date.

(b)        during the period commencing October 1, 2008 and ending on the Tranche B Termination Date, loans in an aggregate outstanding principal amount not to exceed the Tranche B Commitment (all such loans, collectively, the "<u>Tranche B Loans</u>" and together with all Tranche A Loans, the "<u>Loans</u>"), which Tranche B Loans may be repaid and reborrowed in accordance with the provisions of this Agreement; *provided* that (a) the amount of any Tranche B Advance shall not exceed the least of (i) the unused portion of the Tranche B Commitment, (ii) without giving effect to such Tranche B Advance, the sum of (y) Specified Availability as of the date of the applicable Advance *plus* (z) the amount, if any, necessary to round up to the nearest minimum or integral multiple amount required by <u>Section 2.02(a)</u> and (iii) the aggregate amount requested by the Borrower in the applicable Advance Request in accordance with <u>Section 2.02(a)</u> and (b) the aggregate amount of all outstanding Tranche B Loans shall not exceed the Tranche B Commitment.  The Tranche B Commitment shall terminate immediately and without further action on the Tranche B Termination Date.

Section 2.02.    <u>Requests for Advances</u>.  To request an Advance of Loans, the Borrower shall deliver an Advance Request to GM no later than 11:00 a.m., New York City time (a) for an Advance that is requested to be made on a Monday (or if such date is not a Business Day, the next succeeding Business Day), on the immediately preceding Thursday (or if such date is not a Business Day, the next succeeding Business Day), (b) for an Advance that is requested to be made on a Thursday (or if such date is not a Business Day, the next succeeding Business Day), on the immediately preceding Monday (or if such date is not a Business Day, the next succeeding Business Day) and (c) for an Advance of $25,000,000 or less, on the date that is two (2) Business Days before the date of the proposed Advance.  Such Advance Request shall be in a form reasonably acceptable to GM, signed and certified by a Financial Officer of the Borrower and delivered in accordance with the notice provisions set forth in <u>Section 8.01</u>; *provided* that, notwithstanding anything in <u>Section 8.01</u> to the contrary, Advance Requests may be delivered in .pdf or similar format by electronic mail.  Such Advance Request shall specify the following information:

(a)        whether the requested Advance is a Tranche A Advance and/or Tranche B Advance;

(b)        the aggregate amount of the requested Tranche A Advance and/or Tranche B Advance, which shall be in an aggregate amount that is in an integral multiple of $5,000,000 and not less than $10,000,000;

(c)        the date of such Advance, which, with respect to Tranche A Loans shall be a Business Day on or after May 9, 2008 and with respect to Tranche B Loans shall be a Business Day on or after October 1, 2008; and

(d)        the initial Interest Period applicable thereto, which shall be a period contemplated by the definition of the term "*Interest Period*."

If no Interest Period is specified with respect to any portion of the Loan, then the Borrower shall be deemed to have selected an Interest Period of one month's duration.

Section 2.03.    **Funding of Advances**. Upon satisfaction or waiver of the applicable conditions precedent specified herein, GM shall make the proceeds of the Loans available to Borrower by wire transfer of immediately available funds by 2:00 p.m., New York City time, to the account of the Borrower most recently designated by it for such purpose by written notice to GM.

Section 2.04.    **Interest Elections**. Each Advance of Loans shall have an initial Interest Period as specified in such Advance Request. Thereafter, the Borrower may elect to continue such Advance and may elect Interest Periods therefor, in accordance with the provisions set forth in Section 2.06(b), (c) and (e) of the DIP Credit Agreement (which provisions have been duly incorporated by reference by Section 8.14 herein); *provided* that there shall be no more than ten (10) Interest Periods outstanding at any time.

Section 2.05.    **Interest on the Loans**.

(a)        Subject to the provisions of <u>Section 2.06</u>, each Advance shall be comprised entirely of Eurodollar Loans and shall bear interest (computed on the basis of the actual number of days elapsed over a year of 360 days) at a rate per annum equal, during each Interest Period applicable thereto, to the Adjusted LIBO Rate for such Interest Period in effect for such Advance plus 5.25%; *provided* that if the applicable Adjusted LIBO Rate at the time of determination of the interest rate for an Advance is below 3.25%, the Adjusted LIBO Rate for such Advance for such Interest Period shall be deemed to be 3.25%; *provided*, *further*, that, in the event the DIP Credit Agreement is amended, modified, refinanced or replaced so that the pricing for the tranche bearing the highest pricing under the DIP Credit Agreement (the "Adjusted DIP Pricing") is greater than the rates set forth above, then the rates set forth above in this <u>Section 2.05(a)</u> shall be automatically adjusted so that the pricing for the Advances is the same as such Adjusted DIP Pricing.

(b)        Accrued interest on all of the Loans shall be payable in arrears on each Interest Payment Date applicable thereto, on the applicable Scheduled Termination Date and after such Scheduled Termination Date on demand and upon any repayment or prepayment thereof, other than a prepayment pursuant to <u>Section 2.09</u> hereof (on the amount prepaid); *provided* that until the DIP Termination Date, all interest, including amounts owing pursuant to <u>Section 2.06</u>, shall be paid in kind by increasing the principal amount of the Loans then outstanding in an aggregate amount equal to the interest due on each Interest Payment Date; and *provided*, *further*, that (A) with respect to all Tranche A Loans, if the Master Restructuring Agreement and the Global Settlement Agreement become effective on or before the Tranche A Termination Date, then all interest accrued and owing hereunder, whether before or after the effectiveness of the Master Restructuring Agreement and the Global Settlement Agreement, including amounts owing pursuant to <u>Section 2.06</u> and any amounts which have been previously added to the principal amount of the Loans outstanding pursuant to the preceding proviso, shall be automatically cancelled and shall not be included in the Borrower's Tranche A Obligations hereunder and (B) with respect to all Tranche B Loans, if a Reorganization Plan reasonably satisfactory to GM become effective on or before the Tranche B Termination Date, then all interest accrued and owing hereunder, whether before or after such effectiveness, including amounts owing pursuant to <u>Section 2.06</u> and any amounts which have been previously added to the principal

amount of the Loans outstanding pursuant to the preceding proviso, shall be automatically cancelled and shall not be included in the Borrower's Tranche B Obligations hereunder.

Section 2.06.    **Default Interest**. If the Borrower or any Guarantor, as the case may be, shall default in the payment of the principal of or interest on any Loan becoming due hereunder, whether at stated maturity, by acceleration or otherwise, the Borrower or such Guarantor, as the case may be, shall on demand from time to time pay interest, to the extent permitted by law and subject to and in accordance with Section 2.05(b), on all Loans up to (but not including) the date of actual payment (after as well as before judgment) at a rate per annum (computed on the basis of the actual number of days elapsed over a year of 360 days) equal to the rate then applicable for such Advances plus 2.0%; *provided* that if the Adjusted DIP Pricing then in effect includes default interest pursuant to Section 2.09 of the DIP Credit Agreement, the additional 2.0% shall not apply.

Section 2.07.    **Repayment of Obligations**. The Borrower hereby unconditionally promises to pay to GM the then unpaid Tranche A Obligations on the Tranche A Scheduled Termination Date and the then unpaid Tranche B Obligations on the Tranche B Scheduled Termination Date or, in each case, earlier, if otherwise required by the terms hereof; *provided* that, subject to Section 6.01, such Obligations shall be paid as a set-off by GM of amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor pursuant to the Global Settlement Agreement and the Master Restructuring Agreement, as and when such amounts become payable.  GM shall maintain in accordance with customary practice an account or accounts evidencing the indebtedness of the Borrower to GM resulting from each Loan made by GM, including (i) the amount of each Loan made hereunder and the Interest Period applicable thereto, (ii) the amount of any principal or interest due and payable or to become due and payable from the Borrower to GM, (iii) the amount of any interest paid in kind pursuant to Section 2.05(b) and (iv) the amounts of principal and interest paid by the Borrower to GM from time to time hereunder.  The entries made in such accounts shall be prima facie evidence of the existence and amounts of the obligations recorded therein; *provided* that the failure of GM to maintain such accounts or any error therein shall not in any manner affect the obligation of the Borrower to repay the Loans in accordance with the terms of this Agreement.

Section 2.08.    **Optional Termination or Reduction of Commitments**. Upon at least one (1) Business Day's prior written notice to GM, the Borrower may at any time in whole permanently terminate, or from time to time in part permanently reduce, the unused portions of the Commitments. Each such reduction of the Tranche A Commitment or the Tranche B Commitment shall be in the principal amount of $25,000,000 or any integral multiple of $5,000,000 in excess thereof.

Section 2.09.    **Mandatory Prepayment**.

(a)    Tranche A Loans.  If the aggregate amount of the Tranche A Available Funds exceeds $500,000,000 (such excess amount at any time, the "Tranche A Excess Availability") and such excess is greater than $5,000,000 (i) if the Borrowing Base Certificate is delivered on a weekly basis, on the date such Borrowing Base Certificate is delivered and (ii) otherwise, on the last Business Day of any calendar week, the Borrower shall prepay the Loans (excluding any portion of the Loans comprising interest that is paid in kind on such Loans pursuant to Section 2.05(b)) within one (1) Business Day of such date in an amount equal to the Tranche A Excess Availability.  Notwithstanding anything to the contrary contained in this Agreement, from and after the effectiveness of the amendments to each of the Master Restructuring Agreement and the Global Settlement Agreement referred to in Section 5.03, on each date, the Borrower shall immediately repay, as a set-off by GM in accordance with Section 2.07, an amount equal to the lesser of (x) the Tranche A Obligations outstanding hereunder on such date and (y) any amounts due and payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor under such agreements on such date.

8

(b)     Tranche B Loans.  If, on any Monday or Thursday of any calendar week, the aggregate amount of the Tranche B Available Funds exceeds the amount projected by the Borrower on such date to be the net use of cash by the Borrower and the Guarantors for the period commencing on such date through the next Monday or Thursday, as the case may be, *plus* $25,000,000 (such excess amount at any time, the "Tranche B Excess Availability"), the Borrower shall prepay the Loans (excluding any portion of the Loans comprising interest that is paid in kind on such Loans pursuant to Section 2.05(b)) within one (1) Business Day of such date in an amount equal to the Tranche B Excess Availability.  Notwithstanding anything to the contrary contained in this Agreement, from and after the later of (A) the effectiveness of the amendments to each of the Master Restructuring Agreement and the Global Settlement Agreement referred to in Section 5.03 and (B) the Tranche B Termination Date, on each date, the Borrower shall immediately repay, as a set-off by GM in accordance with Section 2.07, an amount equal to the lesser of (x) the Tranche B Obligations outstanding hereunder on such date and (y) any amounts due and payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor under such agreements on such date.

**Section 2.10.     Payments Generally**.

(a)     The Borrower shall make each payment or prepayment required to be made by it hereunder (whether of principal, interest, fees or other amounts payable hereunder) prior to 2:00 p.m., New York City time, on the date when due, in immediately available funds, without set-off or counterclaim. Any amounts received after such time on any date may, in the discretion of GM, be deemed to have been received on the next succeeding Business Day for purposes of calculating interest thereon. All such payments shall be made to GM at its offices at 767 Fifth Avenue, 14th Floor, New York, New York, except that payments pursuant to Section 8.04 shall be made directly to the Persons entitled thereto. If any payment hereunder shall be due on a day that is not a Business Day, the date for payment shall be extended to the next succeeding Business Day and, in the case of any payment accruing interest, interest thereon shall be payable for the period of such extension. All payments hereunder shall be made in Dollars.

(b)     If at any time insufficient funds are received by and available to GM to pay fully all amounts of principal, interest, fees and expenses then due hereunder, such funds shall be applied (i) *first*, towards payment of fees and expenses then due under Section 8.04, (ii) *second*, towards payment of interest accrued and then due hereunder on account of the Loans (including any interest payable pursuant to Section 2.06) and (iii) *third*, towards payment of principal of the Loans then due hereunder.

(c)     Notwithstanding anything to the contrary set forth herein, GM shall have the right to exercise the Set-Off Right, subject to Section 6.01, against any amounts owed under this Agreement in such order as it shall elect in its sole discretion.

**Section 2.11.     Priority**.  The Borrower and each of the Guarantors hereby covenants, represents and warrants that, upon entry of the Approval Order, the Obligations owing to GM or its Affiliates shall at all times constitute allowed claims in the Cases having administrative expense priority pursuant to Section 503(b)(1) of the Bankruptcy Code (such allowed claims, the "Administrative Claims").  The parties hereto agree that GM's Set-Off Rights shall rank ahead of general unsecured claims at all times.

**Section 2.12.     Payment of Obligations**. Subject to the provisions of Section 2.07 and Section 6.01, upon the maturity (whether by acceleration or otherwise) of any of the Obligations under this Agreement, GM shall be entitled to payment of such Obligations in accordance with the terms hereof without further application to or order of the Bankruptcy Court.

**Section 2.13.     No Discharge; Survival of Claims**. Each of the Borrower and the Guarantors agrees that, except to the extent that GM shall have been paid in full (whether by exercising its Set-Off Rights or otherwise), (i) its obligations hereunder shall not be discharged by the entry of an order confirming

9

a Reorganization Plan (and each of the Borrower and the Guarantors, pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge) and (ii) the Administrative Claims granted to GM pursuant to the Approval Order and described in <u>Section 2.11</u> shall not be affected in any manner by the entry of an order confirming a Reorganization Plan.

**ARTICLE III**
**REPRESENTATIONS AND WARRANTIES**

In order to induce GM to make the Loans hereunder, the Borrower and each of the Guarantors jointly and severally represent and warrant as follows:

**Section 3.01.    <u>Organization and Authority</u>**. Each of the Borrower and the Guarantors (i) is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, (ii) is duly qualified as a foreign corporation or other organization and in good standing in each jurisdiction where the conduct of its business requires such qualification, except to the extent that all failures to be duly qualified and in good standing could not, in the aggregate, reasonably be expected to have a Material Adverse Effect, (iii) subject to the entry by the Bankruptcy Court of the Approval Order and the Second Amendment Approval Order has the requisite power and authority to effect the transactions contemplated hereby, and (iv) subject to the entry by the Bankruptcy Court of the Approval Order and the Second Amendment Approval Order has all requisite power and authority and the legal right to own, pledge, mortgage and operate its properties, and to conduct its business as now or currently proposed to be conducted, except where the failure thereof could not reasonably be expected to have a Material Adverse Effect.

**Section 3.02.    <u>Due Execution</u>**. Upon the entry by the Bankruptcy Court of the Approval Order and the Second Amendment Approval Order, the execution, delivery and performance by each of the Borrower and the Guarantors of this Agreement (i) are within the respective powers of each of the Borrower and the Guarantors, have been duly authorized by all necessary action including the consent of shareholders where required, and do not (A) contravene the charter or by-laws of any of the Borrower or the Guarantors, (B) violate any law (including the Securities Exchange Act of 1934) or regulation (including Regulations T, U or X of the Board), or any order or decree of any court or Governmental Authority, conflict with or result in a breach of, or constitute a default under, any material contractual obligation entered into prior to the Filing Date binding on the Borrower or the Guarantors or any of their properties except to the extent that all such violations, conflicts or breaches could not, in the aggregate, reasonably be expected to have a Material Adverse Effect, or (C) conflict with or result in a breach of, or constitute a default under, any material contractual obligation entered into after the Filing Date binding on the Borrower or the Guarantors or any of their properties; and (ii) do not require the consent, authorization by or approval of or notice to or filing or registration with any Governmental Authority other than (A) the entry of the Approval Order and the Second Amendment Approval Order and (B) other consents, authorizations, approvals, notices, filings or registrations the failure to obtain or make which could not, in the aggregate, reasonably be expected to have a Material Adverse Effect. Upon the entry by the Bankruptcy Court of the Approval Order and the Second Amendment Approval Order, this Agreement has been duly executed and delivered by each of the Borrower and the Guarantors. This Agreement is a legal, valid and binding obligation of the Borrower and each Guarantor, as the case may be, enforceable against the Borrower and the Guarantors, as the case may be, in accordance with its terms and the Approval Order and the Second Amendment Approval Order.

**Section 3.03.    <u>Use of Proceeds</u>**. The proceeds of the Loans shall be used for working capital and for other general corporate purposes of the Borrower and its Subsidiaries.

10

# ARTICLE IV
# CONDITIONS OF LENDING

**Section 4.01.    Conditions Precedent to Effectiveness**. This Agreement shall become effective on the date (the "Effective Date") on which each of the following shall have occurred and GM shall have received evidence reasonably satisfactory to it of such occurrence:

(a)    Execution of Agreement. This Agreement shall have been executed by the Borrower and each of the Guarantors.

(b)    Documents and Certificates.  GM shall have received such documents and certificates as GM or its counsel may reasonably request relating to the organization, existence and good standing of each of the Borrower and the Guarantors, the authorization of the transactions under this Agreement and any other legal matters relating to each of the Borrower and the Guarantors, the Agreement or the transactions contemplated hereunder, all in form and substance reasonably satisfactory to GM and its counsel.

(c)    DIP Extension.  The Bankruptcy Court shall have entered an order approving an amendment of the DIP Credit Agreement (the "DIP Extension Order"), which shall have become effective, and which amendment shall extend the termination date thereunder to a date no earlier than December 31, 2008; _provided_ that the terms of any other amendments or modifications to the DIP Credit Agreement shall be on terms reasonably acceptable to GM, and the DIP Extension Order shall have become final and non-appealable.  The DIP Lenders shall have consented to this Agreement.

(d)    Modifications to Existing Confirmed Plan.  No motion or other pleading shall have been filed seeking the approval of a Reorganization Plan which contains modifications to the Existing Confirmed Plan which would have a material impact on GM, on the benefits GM reasonably expected to receive under the Existing Confirmed Plan (including, without limitation, GM's distributions thereunder), the Global Settlement Agreement, the Master Restructuring Agreement, or on the ability of the Borrower and its subsidiaries and Affiliates operating as debtors and debtors-in-possession in the Cases to fulfill any obligations to any GM-Related Parties under the Existing Confirmed Plan, the Global Settlement Agreement, the Master Restructuring Agreement, or any agreements assumed, reinstated, or ratified under the Master Restructuring Agreement; _provided_ that the parties to this Agreement agree that, among other things, any increase in the amount of distributions (or change in the form of distributions) to holders of claims or equity interests under the Existing Confirmed Plan, any change in any of the provisions of section 4.01, 4.02, or 4.03 of the Global Settlement Agreement, or any change in the identity of the Plan Investors (as defined in the Existing Confirmed Plan) other than as permitted by the EPCA shall be deemed to have a material impact on GM, on the benefits GM reasonably expected to receive under the Existing Confirmed Plan (including, without limitation, GM's distributions thereunder), the Global Settlement Agreement, the Master Restructuring Agreement, or on the ability of the Borrower and its subsidiaries and Affiliates operating as debtors and debtors-in-possession in the Cases to fulfill any obligations to any GM-Related Parties under the Existing Confirmed Plan, the Global Settlement Agreement, the Master Restructuring Agreement, or any agreements assumed, reinstated, or ratified under the Master Restructuring Agreement.

(e)    Other Contracts.  The Borrower or any Guarantor shall not, to the extent that the Global Settlement Agreement or Master Restructuring Agreement have not been terminated by GM, have filed a motion or other pleading seeking to reject any executory contract between the Borrower or any Guarantor and GM or any of its Affiliates.

(f)    Approval Order.  The Bankruptcy Court shall have entered an order approving this Agreement and the Administrative Claims as described in Section 2.11 (the "Approval Order"), which Approval Order (i) shall authorize extensions of credit in the amount of $650,000,000, (ii) shall authorize the

payment by the Borrower of all fees and expenses provided for herein, (iii) shall be in form and substance acceptable to GM and (iv) shall have become final and non-appealable.

(g)    No Default.  (i) No Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default shall have occurred and be continuing under this Agreement and (ii) no Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default, shall have occurred and be continuing under the DIP Credit Agreement, in each case, unless such event has been waived (or deemed waived) or amended by the DIP Lenders.

(h)    Fees and Expenses.  GM shall have received the payment by the Borrower of all fees and expenses referred to herein.

Section 4.02.    Conditions Precedent to Each Tranche A Loan.  The obligation of GM to make each Tranche A Loan is subject to the satisfaction (or waiver in accordance with Section 8.07) of the following conditions precedent:

(a)    Advance Request and Availability Certificate. GM shall have received (i) an Advance Request with respect to such Tranche A Loan as required by Article 2 and (ii) a certificate in a form reasonably acceptable to GM signed by a Financial Officer of the Borrower, certifying the amount of the Specified Availability as of the close of business on the Business Day immediately preceding the date of such Advance and reflecting the calculation thereof (a "Tranche A Availability Certificate").

(b)    Representations and Warranties. All representations and warranties contained in this Agreement shall be true and correct in all material respects on and as of the date of each Advance hereunder with the same effect as if made on and as of such date except to the extent such representations and warranties expressly relate to an earlier date.

(c)    No Default.  On the date of each Advance hereunder (i) no Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default shall have occurred and be continuing under this Agreement, (ii) no Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default, shall have occurred and be continuing under the DIP Credit Agreement, in each case, unless such event has been waived (or deemed waived) or amended by the DIP Lenders and (iii) no amendments or other modifications to the DIP Credit Agreement with the effect of reducing the aggregate commitments or amounts available thereunder (except in accordance with the terms of the DIP Credit Agreement in effect on the date hereof) shall have become effective.

(d)    Modifications to Existing Confirmed Plan.  No motion or other pleading shall have been filed seeking the approval of a Reorganization Plan which contains modifications to the Existing Confirmed Plan which would have a material impact on GM, on the benefits GM reasonably expected to receive under the Existing Confirmed Plan (including, without limitation, GM's distributions thereunder), the Global Settlement Agreement, the Master Restructuring Agreement, or on the ability of the Borrower and its subsidiaries and Affiliates operating as debtors and debtors-in-possession in the Cases to fulfill any obligations to any GM-Related Parties under the Existing Confirmed Plan, the Global Settlement Agreement, the Master Restructuring Agreement, or any agreements assumed, reinstated, or ratified under the Master Restructuring Agreement; provided that the parties to this Agreement agree that, among other things, any increase in the amount of distributions (or change in the form of distributions) to holders of claims or equity interests under the Existing Confirmed Plan, any change in any of the provisions of section 4.01, 4.02, or 4.03 of the Global Settlement Agreement, or any change in the identity of the Plan Investors (as defined in the Existing Confirmed Plan) other than as permitted by the EPCA shall be deemed to have a material impact on GM, on the benefits GM reasonably expected to receive under the Existing Confirmed Plan (including, without limitation, GM's distributions thereunder), the Global Settlement Agreement, the Master

12

Restructuring Agreement, or on the ability of the Borrower and its subsidiaries and Affiliates operating as debtors and debtors-in-possession in the Cases to fulfill any obligations to any GM-Related Parties under the Existing Confirmed Plan, the Global Settlement Agreement, the Master Restructuring Agreement, or any agreements assumed, reinstated, or ratified under the Master Restructuring Agreement.

(e)    Other Contracts.  The Borrower or any Guarantor shall not, to the extent that the Global Settlement Agreement or Master Restructuring Agreement have not been terminated by GM, have filed a motion or other pleading seeking to reject any executory contract between the Borrower or any Guarantor and GM or any of its Affiliates.

The request by the Borrower for, and the acceptance by the Borrower of, each extension of credit hereunder shall be deemed to be a representation and warranty by the Borrower that the conditions specified in this Section have been satisfied or waived at that time.

**Section 4.03.    Conditions Precedent to Each Tranche B Loan**.  The obligation of GM to make each Tranche B Loan is subject to the satisfaction (or waiver in accordance with Section 8.07) of the following conditions precedent:

(a)    Advance Request and Financial Officer's Certificates.  GM shall have received (i) an Advance Request with respect to such Tranche B Loan as required by Article 2, together with the Weekly Cash Projection, and (ii) the Specified Availability Certificate dated the date of the Advance.

(b)    Representations and Warranties. All representations and warranties contained in this Agreement shall be true and correct in all material respects on and as of the date of each Advance hereunder with the same effect as if made on and as of such date except to the extent such representations and warranties expressly relate to an earlier date.

(c)    No Default.  On the date of each Advance hereunder (i) no Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default shall have occurred and be continuing under this Agreement, (ii) no Automatic Accommodation Termination Default and no Accommodation Default, and no event which upon notice or lapse of time or both would constitute an Automatic Accommodation Termination Default or an Accommodation Default, shall have occurred and be continuing under the Accommodation Agreement, in each case, unless such event has been waived or amended by the requisite DIP Lenders, (iii) no amendments or other modifications to the DIP Credit Agreement with the effect of reducing the aggregate commitments or amounts available thereunder (except in accordance with the terms of the DIP Credit Agreement in effect on the Second Amendment Effective Date (after giving effect to the Accommodation Agreement)) shall have become effective and (iv) no amendments or other modifications to the Accommodation Agreement in a manner materially adverse to GM shall have become effective.

(d)    Reorganization Plan.  No motion or other pleading shall have been filed by the Borrower or any Guarantor seeking to amend or otherwise modify such Reorganization Plan and Disclosure Statement in a manner not reasonably satisfactory to GM.

The request by the Borrower for, and the acceptance by the Borrower of, each extension of credit hereunder shall be deemed to be a representation and warranty by the Borrower that the conditions specified in this Section have been satisfied or waived at that time.

13

**ARTICLE V**
**COVENANTS**

From the Effective Date and for so long as the Commitments shall be in effect or any amount shall remain outstanding or unpaid under this Agreement, the Borrower and each of the Guarantors agree that they will, and will cause each of their respective Subsidiaries to:

Section 5.01.    **Existence**. Preserve and maintain in full force and effect all governmental rights, privileges, qualifications, permits, licenses and franchises necessary in the normal conduct of its business except (i) (A) if in the reasonable business judgment of the Borrower it is no longer necessary for the Borrower and the Guarantors to preserve and maintain such rights, privileges, qualifications, permits, licenses and franchises, and (B) such failure to preserve the same could not, in the aggregate, reasonably be expected to have a Material Adverse Effect and (ii) as otherwise permitted in connection with sales of assets permitted by Section 6.10 of the DIP Credit Agreement.

Section 5.02.    **Notice of Event of Default, etc**. Promptly give to GM notice in writing of any Accommodation Default, any Automatic Accommodation Termination Default or the occurrence of any event or circumstance which with the passage of time or giving of notice or both would constitute such event under the Accommodation Agreement or an Event of Default hereunder.

Section 5.03.    **[Reserved]**

Section 5.04.    **Financial Officer's Certificates**.  As long as any Advances shall be outstanding, on each Monday and Thursday of each calendar week (or, if not a Business Day, on the next succeeding Business Day) and, if more frequent, on each date on which an Advance Request is delivered and on each date an Advance is made, deliver to GM the Weekly Cash Projection and the Specified Availability Certificate.

Section 5.05.    **Information**.  Deliver to GM all financial statements, reports, documents and other information that it provides to the DIP Lenders pursuant to the DIP Credit Agreement, at the same time such information is delivered to the DIP Lenders, in each case subject to compliance with the terms and conditions of confidentiality arrangements entered into with the Borrower.

**ARTICLE VI**
**EVENTS OF DEFAULT**

Section 6.01.    **Events of Default**. In the case of the happening of any of the following events and the continuance thereof beyond the applicable grace period, if any (each, an "Event of Default"):

(a)    any material representation or warranty made by the Borrower or any Guarantor in this Agreement or in connection with this Agreement or the credit extensions hereunder or any material statement or representation made in any report, financial statement, certificate or other document furnished by the Borrower or any Guarantor to GM under or in connection with this Agreement, shall prove to have been false or misleading in any material respect when made; or

(b)    default shall be made in the payment of any (i) interest on the Loans payable hereunder when due (other than amounts set forth in clause (ii) hereof), and such default shall continue unremedied for more than three (3) Business Days or (ii) principal of the Loans when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof or by acceleration thereof or otherwise; or

14

(c)       default shall be made by the Borrower or any Guarantor in the due observance or performance of any covenant, condition or agreement herein and, with respect to <u>Section 5.01</u> (but only with respect to any Guarantor) and <u>Section 5.05</u> only, such default shall continue unremedied for more than ten (10) days; or

(d)       any of the Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code or the Borrower or any Guarantor shall file a motion or other pleading seeking the dismissal of any of the Cases under Section 1112 of the Bankruptcy Code or otherwise; a trustee under Chapter 7 or Chapter 11 of the Bankruptcy Code, a responsible officer or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code shall be appointed in any of the Cases and the order appointing such trustee, responsible officer or examiner shall not be reversed or vacated within thirty (30) days after the entry thereof; or

(e)       any material provision of this Agreement shall, for any reason, cease to be valid and binding on the Borrower or any of the Guarantors, or the Borrower or any of the Guarantors shall so assert in any pleading filed in any court; or

(f)       an order of the Bankruptcy Court shall be entered (i) reversing, staying for a period in excess of ten (10) days, or vacating the Approval Order, the DIP Extension Order, the Second Amendment Approval Order or the Accommodation Approval Order or (ii) without the written consent of GM, otherwise amending, supplementing or modifying the Approval Order, the DIP Extension Order, the Second Amendment Approval Order or the Accommodation Approval Order in a manner that is reasonably determined by GM to be adverse to GM; or

(g)       a default, event or condition (other than a Specified Default) arising under the Loan Documents, including the Accommodation Agreement, relating to the DIP Credit Agreement, and such event or condition results in such Indebtedness becoming due prior to its stated maturity or remedies being exercised in respect of the collateral securing such Indebtedness;

then, and in every such event and at any time thereafter during the continuance of such event, and to the fullest extent permitted by law and without further order of or application to the Bankruptcy Court, GM may, by notice to the Borrower (with a copy to counsels for the Official Creditors' Committee and the Official Equity Committee appointed in the Cases, to counsel for the Administrative Agent under the DIP Credit Agreement and to the United States Trustee for the Southern District of New York), take one or more of the following actions, at the same or different times (*provided* that with respect to clause (iv) below, GM shall provide the Borrower (with a copy to counsels for the Official Creditors' Committee and the Official Equity Committee in the Cases, to counsel for the Administrative Agent under the DIP Credit Agreement and to the United States Trustee Southern District of New York) with five (5) Business Days' written notice prior to taking the action contemplated thereby: (i) terminate or suspend forthwith the Commitments; (ii) declare the Loans or any portion thereof then outstanding to be forthwith due and payable, whereupon the principal of such Loans together with accrued interest thereon and any unpaid accrued fees and all other liabilities of the Borrower accrued hereunder, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Borrower and the Guarantors, anything contained herein to the contrary notwithstanding; (iii) exercise the Set-Off Right against all amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor (including, without limitation, against any amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor under the Master Restructuring Agreement and the Global Settlement Agreement), which Set-Off Right shall be in addition to other rights and remedies which GM may have; and (iv) exercise any and all remedies under applicable law otherwise available to GM; *provided* that, notwithstanding anything to the contrary contained in this Agreement, GM

15

hereby agrees not to exercise any Set-Off Right pursuant to this Section 6.01 or otherwise (which rights, with respect to any Obligations owing under this Agreement, may only be exercised against the Borrower and the Guarantors) with respect to the Obligations arising under this Agreement (A) against any amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor under the Master Restructuring Agreement and the Global Settlement Agreement (1) with respect to any Tranche A Obligations and any prepayments due and payable under Section 2.09, until the effective date of the amendments to such agreements referred to in Section 5.03 and (2) with respect to any Tranche B Obligations (other than any prepayments due and payable under Section 2.09), until the later of (x) the effective date of the amendments to such agreements referred to in Section 5.03 and (y) the Tranche B Termination Date and (B) except with respect to any prepayments due and payable under Section 2.09, against all other amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor (or defer, delay or suspend the payment of any other amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor) until after the DIP Termination Date. Any payment received as a result of the exercise of remedies hereunder shall be applied in accordance with Section 2.10(b).

It is understood and agreed among the parties hereto that, except as expressly provided herein, no default or breach by the Borrower or any of its Subsidiaries under any other agreement entered into with GM or its Affiliates shall give rise to a default hereunder, and neither GM nor its Affiliates shall exercise any rights under any such other agreement as against any other such party as a result of a default hereunder.

Notwithstanding anything to the contrary contained in this Agreement, until after the DIP Termination Date, the Borrower and the Guarantors shall not make any payment to GM or its Affiliates with respect to the Obligations hereunder (except (a) any prepayments due and payable under Section 2.09, whether in cash or through any Set-Off Right exercised by GM or its Affiliates, (b) interest to the extent paid in kind under Section 2.05(b), and (c) any Obligations due hereunder paid through any Set-Off Right exercised by GM or its Affiliates against amounts payable by GM or its Affiliates to or for the credit or the account of the Borrower or any Guarantor pursuant to the Global Settlement Agreement or Master Restructuring Agreement as permitted hereunder).

## ARTICLE VII
## GUARANTY

**Section 7.01.    Guaranty**.

(a)    Each of the Guarantors unconditionally and irrevocably guarantees the due and punctual payment by the Borrower of the Obligations. Each of the Guarantors further agrees that the Obligations may be extended or renewed, in whole or in part, without notice to or further assent from it, and it will remain bound upon this guaranty notwithstanding any extension or renewal of any of the Obligations. The Obligations of the Guarantors shall be joint and several.

(b)    Each of the Guarantors waives presentation to, demand for payment from and protest to the Borrower or any other Guarantor, and also waives notice of protest for nonpayment. The Obligations of the Guarantors hereunder shall not be affected by (i) the failure of GM to assert any claim or demand or to enforce any right or remedy against the Borrower or any other Guarantor under the provisions of this Agreement or otherwise; (ii) any extension or renewal of any provision hereof or thereof, (iii) any rescission, waiver, compromise, acceleration, amendment or modification of any of the terms or provisions of this Agreement; (iv) the release, exchange, waiver or foreclosure of any security held by GM for the Obligations or any of them; (v) the failure of GM to exercise any right or remedy against any other Guarantor; or (vi) the release or substitution of the Borrower or any other Guarantor.

16

(c)      Each of the Guarantors further agrees that this guaranty constitutes a guaranty of payment when due and not just of collection, and waives any right to require that any resort be had by GM to any security held for payment of the Obligations or to any balance of any deposit, account or credit on the books of GM in favor of the Borrower or any other Guarantor, or to any other Person.

(d)      Each of the Guarantors hereby waives any defense that it might have based on a failure to remain informed of the financial condition of the Borrower and of any other Guarantor and any circumstances affecting the ability of the Borrower to perform under this Agreement.

(e)      Each Guarantor's guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Obligations or any other instrument evidencing any Obligations, or by the existence, validity, enforceability, perfection, or extent of any collateral therefor or by any other circumstance relating to the Obligations which might otherwise constitute a defense to this Guaranty. GM makes no representation or warranty in respect to any such circumstances or shall have any duty or responsibility whatsoever to any Guarantor in respect of the management and maintenance of the Obligations.

(f)      Subject to the provisions of <u>Section 6.01</u>, upon the Obligations becoming due and payable (by acceleration or otherwise), GM shall be entitled to immediate payment of such Obligations by the Guarantors upon written demand by GM without further application to or order of the Bankruptcy Court.

Section 7.02.    **No Impairment of Guaranty**. The obligations of the Guarantors hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense or set-off, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Obligations. Without limiting the generality of the foregoing, the obligations of the Guarantors hereunder shall not be discharged or impaired or otherwise affected by the failure of GM to assert any claim or demand or to enforce any remedy under this Agreement or any other agreement, by any waiver or modification of any provision thereof, by any default, failure or delay, willful or otherwise, in the performance of the Obligations, or by any other act or thing or omission or delay to do any other act or thing which may or might in any manner or to any extent vary the risk of the Guarantors or would otherwise operate as a discharge of the Guarantors as a matter of law, unless and until the Obligations are paid in full.

Section 7.03.    **Subrogation**. Upon payment by any Guarantor of any sums to GM hereunder, all rights of such Guarantor against the Borrower arising as a result thereof by way of right of subrogation or otherwise, shall in all respects be subordinate and junior in right of payment to the prior final and indefeasible payment in full of all the Obligations. If any amount shall be paid to such Guarantor for the account of the Borrower in respect of the Loans, such amount shall be held in trust for the benefit of GM and shall forthwith be paid to GM to be credited and applied to the Obligations, whether matured or unmatured.

## ARTICLE VIII
## MISCELLANEOUS

Section 8.01.    **Notices**.

(a)      Subject to paragraph (b) below, all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

(i)      if to the Borrower, to it at 5725 Delphi Drive, Troy, Michigan 48098, Attention: Treasurer (Telecopy No. 248-813-2648; Telephone No. 248-813-2592; with a copy to Deputy

General Counsel, Transactional and Restructuring (Telecopy No. 248-816-2491; Telephone No. 248-813-2492); and

(ii)     if to General Motors Corporation, to it at 767 Fifth Avenue, 14th floor, New York, New York 10153, Attention: Treasurer, with a copy to General Motors Corporation, 767 Fifth Avenue, 14th floor, New York, New York 10153, Attention: Director, Business Development.

(b)     GM or the Borrower may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; *provided* that approval of such procedures may be limited to particular notices or communications. Any party hereto may change its address or telecopy number for notices and other communications hereunder by notice to the other parties hereto. All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt.

Section 8.02.     **Survival of Agreement, Representations and Warranties, etc**.  All warranties, representations and covenants made by the Borrower or any Guarantor herein or in any certificate or other instrument delivered by it or on its behalf in connection with this Agreement shall be considered to have been relied upon by GM and shall survive the making of the Loans herein contemplated regardless of any investigation made by GM or on its behalf and shall continue in full force and effect (in the case of any representations and warranties, as of the date when made or deemed to be made) so long as any amount due or to become due hereunder is outstanding and unpaid and so long as the Commitments have not been terminated.

Section 8.03.     **Successors and Assigns**.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that no party hereto may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of (a) in the case of the Borrower or any Guarantor, GM, and (b) in the case of GM, the Borrower and to the extent reasonably necessary or advisable, by the Administrative Agent under the DIP Credit Agreement (in each case, in connection with the assignment of outstanding Loans, but not the Commitments, such consent not to be unreasonably withheld or delayed), (and any attempted assignment or transfer without such consent shall be null and void); *provided* that the consent of the Borrower or the Administrative Agent under the DIP Credit Agreement shall not be required for GM to assign or otherwise transfer (i) its rights and obligations hereunder to any of its Affiliates that have the ability to perform hereunder or (ii) its rights and obligations with respect to the outstanding Loans, but not the Commitments, to another Person following the occurrence of an Event of Default which is continuing; and *provided*, *further* that (i) for purposes of this agreement, the term "GM" shall include GM's successors and assigns hereunder, (ii) such assignee shall have no greater rights than GM would have had under this agreement, including as to rights to payment, enforcement and collection, and (iii) any such assignee shall agree in writing to be bound by the provisions of this agreement as if such assignee were GM.

Section 8.04.     **Expenses; Indemnity; Damage Waiver**.

(a)     The Borrower shall pay or reimburse: (A) all reasonable fees and reasonable out-of-pocket expenses of GM (including the reasonable fees, disbursements and other charges of counsel) associated with this Agreement, and the preparation, execution, delivery and administration of this Agreement and any amendments, modifications or waivers of the provisions hereof (whether or not the transactions contemplated hereby or thereby shall be consummated); and (B) all fees and expenses of GM (including the fees, disbursements and other charges of counsel) incurred in connection with the enforcement of this Agreement. All payments or reimbursements pursuant to this clause shall be payable promptly upon written demand together with back-up documentation supporting such reimbursement request. GM's right to reimbursement pursuant to this clause or any other provision of this Agreement shall not be construed to limit GM's rights to

18

reimbursement under any other agreement or arrangement it may have with the Borrower or any of its Subsidiaries.

(b)      The Borrower shall indemnify GM and each Related Party of any of the foregoing Persons (each such Person being called an "Indemnitee") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses, including the reasonable fees, charges and disbursements of any counsel for any Indemnitee (it being understood that claims for expense reimbursement hereunder shall be accompanied by back-up documentation supporting such request), incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution or delivery of this Agreement or any agreement or instrument contemplated hereby, the performance by the parties hereto of their respective obligations hereunder or the consummation of the transactions contemplated hereby or (ii) any Loan or the use of the proceeds therefrom; _provided_ that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the bad faith, gross negligence or willful misconduct of such Indemnitee (or such Indemnitee's officers, directors, employees or affiliates).

(c)      To the extent permitted by applicable law, the Borrower shall not assert, and hereby waives, any claim against any Indemnitee, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement or any agreement or instrument contemplated hereby, the transactions hereunder, any Loan or the use of the proceeds thereof.

**Section 8.05.    CHOICE OF LAW**. THIS AGREEMENT SHALL IN ALL RESPECTS BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

**Section 8.06.    No Waiver**.  No failure on the part of GM to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

**Section 8.07.    Amendments, etc**.  No modification, amendment or waiver of any provision of this Agreement, and no consent to any departure by the Borrower or any Guarantor herefrom, shall in any event be effective unless the same shall be in writing and signed by GM and the Borrower, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Borrower or any Guarantor shall entitle the Borrower or any Guarantor to any other or further notice or demand in the same, similar or other circumstances. No amendment to this Agreement shall be effective against the Borrower or any Guarantor unless signed by the Borrower or such Guarantor, as the case may be.

**Section 8.08.    Severability**.  Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof, and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

**Section 8.09.    Headings**.  Section headings used herein are for convenience only and are not to affect the construction of or be taken into consideration in interpreting this Agreement.

Section 8.10.    **Survival**. All covenants, agreements, representations and warranties made by the Borrower herein and in the certificates or other instruments delivered in connection with or pursuant to this Agreement shall be considered to have been relied upon by the other parties hereto and shall survive the execution and delivery of this Agreement and the making of any Loans, regardless of any investigation made by any such other party or on its behalf and notwithstanding that GM may have had notice or knowledge of any Event of Default or incorrect representation or warranty at the time any credit is extended hereunder, and shall continue in full force and effect as long as the principal of or any accrued interest on any Loan or any fee or any other amount payable under this Agreement is outstanding and unpaid and so long as the Commitments have not expired or terminated. The provisions of Sections 2.16, 2.17, 2.18 and 10.04 of the DIP Credit Agreement (which provisions have been duly incorporated by reference by <u>Section 8.14</u> herein) and <u>Section 8.04</u> herein shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Loans, the expiration or termination of the Commitments or the termination of this Agreement or any provision hereof.

Section 8.11.    **Execution in Counterparts; Integration; Effectiveness**. This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement constituted the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof. This Agreement shall become effective on the Effective Date, and thereafter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Delivery of an executed counterpart of a signature page of this Agreement by telecopy shall be effective as delivery of a manually executed counterpart of this Agreement.

Section 8.12.    **Further Assurances**. Whenever and so often as reasonably requested by GM, the Borrower and the Guarantors will promptly execute and deliver or cause to be executed and delivered all such other and further instruments, documents or assurances, and promptly do or cause to be done all such other and further things as may be necessary and reasonably required in order to further and more fully vest in GM all rights, interests, powers, benefits, privileges and advantages conferred or intended to be conferred by this Agreement.

Section 8.13.    **WAIVER OF JURY TRIAL**. EACH OF THE BORROWER, THE GUARANTORS AND GM HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 8.14.    **Incorporation by Reference**.  The terms and conditions of the following sections of the DIP Credit Agreement are hereby incorporated by reference into, and form integral parts of, this Agreement, *mutatis mutandis*, and GM, for purposes hereunder, shall be deemed a "Lender" and/or the "Administrative Agent", as applicable:   Section 1 (Definitions); Section 2.06(b), (c) and (e) (Interest Elections); Section 2.10 (Alternate Rate of Interest); Section 2.16 (Increased Costs); Section 2.17 (Break Funding Payments); Section 2.18 (Taxes); and Section 10.04 (Confidentiality).

[Signature Pages Follow]

IN WITNESS WHEREOF, the parties have entered into this Amendment No. 2 as of the date first above written.

**BORROWER**

DELPHI CORPORATION

By:

_____

Name:   John Sheehan
Title:   Vice President and Chief Financial
           Officer

**GUARANTORS:**


DELPHI AUTOMOTIVE SYSTEMS (HOLDING),
  INC.,
  a Delaware corporation


By: _____
      Name: John D. Sheehan
      Title: President


DELPHI AUTOMOTIVE SYSTEMS GLOBAL
(HOLDING), INC.,
a Delaware corporation


By: _____
      Name: John D. Sheehan
      Title: President


DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company


By: _____
      Name: John D. Sheehan
      Title: Vice President & Chief Financial
      Officer


DELPHI AUTOMOTIVE SYSTEMS RISK
  MANAGEMENT CORP.,
  a Delaware corporation


By: _____
      Name: John D. Sheehan
      Title: Vice President & Treasurer

DELPHI FOREIGN SALES CORPORATION,
a Virgin Islands corporation

By: _____
       Name: John D. Sheehan
       Title: Controller

DELPHI INTERNATIONAL HOLDINGS CORP.,
a Delaware corporation

By: _____
       Name: John D. Sheehan
       Title: President

DELPHI LIQUIDATION HOLDING COMPANY,
a Delaware corporation

By: _____
       Name: John D. Sheehan
       Title: President

DELPHI LLC,
a Delaware limited liability company

By: _____
       Name: John D. Sheehan
       Title: President

DELPHI NY HOLDING CORPORATION,
a New York corporation

By: _____
       Name: John D. Sheehan
       Title: President

[SIGNATURE PAGE TO GM-DELPHI AGREEMENT]]

ASEC MANUFACTURING,
a Delaware general partnership


By: _____
       Name: John P. Arle
       Title: Treasurer


ASEC SALES,
a Delaware general partnership


By: _____
       Name: John P. Arle
       Title: Treasurer


DELCO ELECTRONICS OVERSEAS
CORPORATION,
a Delaware corporation


By: _____
       Name: John P. Arle
       Title: Assistant Treasurer


DELPHI AUTOMOTIVE SYSTEMS KOREA, INC.,
a Delaware corporation


By: _____
       Name: John P. Arle
       Title: Chief Executive Officer & President


DELPHI AUTOMOTIVE SYSTEMS HUMAN
RESOURCES LLC,
a Delaware limited liability company


By: _____
       Name: John P. Arle
       Title: Vice President & Treasurer

DELPHI AUTOMOTIVE SYSTEMS
    INTERNATIONAL, INC.,
    a Delaware corporation


By: _____
    Name: John P. Arle
    Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS OVERSEAS
CORPORATION,
    a Delaware corporation


By: _____
    Name: John P. Arle
    Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS SERVICES
LLC,
    a Delaware limited liability company


By: _____
    Name: John P. Arle
    Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS TENNESSEE,
INC.,
    a Delaware corporation


By: _____
    Name: John P. Arle
    Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS THAILAND,
    INC.,
    a Delaware corporation


By: _____
    Name: John P. Arle
    Title: Treasurer


[SIGNATURE PAGE TO GM-DELPHI AGREEMENT]]

DELPHI CONNECTION SYSTEMS,
a California corporation


By: _____
         Name: John P. Arle
         Title: Treasurer


DELPHI ELECTRONICS (HOLDING) LLC,
a Delaware limited liability company


By: _____
         Name: John P. Arle
         Title: Assistant Treasurer


DELPHI INTERNATIONAL SERVICES, INC.,
a Delaware corporation


By: _____
         Name: John P. Arle
         Title: Chief Financial Officer & Treasurer


DELPHI MECHATRONIC SYSTEMS, INC.,
a Delaware corporation


By: _____
         Name: John P. Arle
         Title: Treasurer


DELPHI SERVICES HOLDING CORPORATION,
a Delaware corporation


By: _____
         Name: John P. Arle
         Title: Treasurer

[SIGNATURE PAGE TO GM-DELPHI AGREEMENT]]

EXHAUST SYSTEMS CORPORATION,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Assistant Treasurer

ASPIRE, INC.,
a Michigan corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI CHINA LLC,
a Delaware limited liability company

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI DIESEL SYSTEMS CORP.,
a Delaware corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI INTEGRATED SERVICE SOLUTIONS,
   INC.,
   a Michigan corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

SPECIALTY ELECTRONICS, INC.,
a South Carolina corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

[SIGNATURE PAGE TO GM-DELPHI AGREEMENT]]

[SIGNATURE PAGE TO GM-DELPHI AGREEMENT]]

SPECIALTY ELECTRONICS INTERNATIONAL LTD.,
a Virgin Islands corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

PACKARD HUGHES INTERCONNECT COMPANY,
a Delaware corporation

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

ENVIRONMENTAL CATALYSTS, LLC,
a Delaware limited liability company

By its Sole Shareholder Delphi Corporation

_____
Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

DELPHI MEDICAL SYSTEMS COLORADO
    CORPORATION,
    a Colorado corporation

By: _____
         Name: Allan F. Seguin
         Title: Treasurer

DELPHI MEDICAL SYSTEMS CORPORATION,
a Delaware corporation

By: _____
         Name: Allan F. Seguin
         Title: Treasurer

DELPHI MEDICAL SYSTEMS TEXAS
CORPORATION,
a Delaware corporation

By: _____
         Name: Allan F. Seguin
         Title: Treasurer

[SIGNATURE PAGE TO GM-DELPHI AGREEMENT]]

DELPHI TECHNOLOGIES, INC.,
a Delaware corporation

By: _____

Name: Thomas N. Twomey
Title: Vice President Intellectual Property

DREAL, INC.,
a Delaware corporation

By its Sole Shareholder Delphi Corporation

_____

Name: John D. Sheehan
Title: Vice President and Chief Financial Officer

# **Exhibit B**

**EXECUTION COPY**

<u>PARTIAL TEMPORARY ACCELERATED PAYMENT AGREEMENT</u>

THIS PARTIAL TEMPORARY ACCELERATED PAYMENT AGREEMENT (this "<u>Agreement</u>"), is dated as of December [__], 2008, by and between Delphi Corporation ("<u>Delphi</u>"), on behalf of itself and its subsidiaries and Affiliates operating as debtors and debtors in possession in the Chapter 11 Cases (together with Delphi, the "<u>Debtors</u>"), and General Motors Corporation ("<u>GM</u>").

WHEREAS, Delphi, the Debtors and GM have entered into that certain Agreement, dated as of May 9, 2008, as amended by that certain Amendment No. 1 dated October 6, 2008, and as further amended by that certain Amendment No. 2 dated December [__], 2008 (the "<u>GM-Delphi Agreement</u>");

WHEREAS, GM and Delphi, on behalf of itself and the Debtors, have entered into that certain Amended and Restated Global Settlement Agreement, dated September 12, 2008 (the "<u>Global Settlement Agreement</u>");

WHEREAS, GM and Delphi, on behalf of itself and the Debtors, have entered into that certain Amended and Restated Master Restructuring Agreement, dated September 12, 2008, which is attached as an exhibit to the Global Settlement Agreement (the "<u>Master Restructuring Agreement</u>");

WHEREAS, on September 26, 2008, the United States Bankruptcy Court for the Southern District of New York entered an order approving the Global Settlement Agreement and the Master Restructuring Agreement;

WHEREAS, in connection with the GM-Delphi Agreement, the Master Restructuring Agreement and the Global Settlement Agreement, Delphi has requested and, subject to the terms and conditions set forth herein, GM has agreed, among other things, to make certain accelerated payments to Delphi as described in this Agreement;

NOW, THEREFORE, in consideration of the mutual promises, agreements, and covenants contained herein, each of the parties hereto hereby agrees as follows:

1.      <u>Definitions</u>.

    (a)      "Acceleration Conditions" shall mean (A) the GM-Delphi Agreement remains in effect and the Tranche B Termination Date has not occurred, (B) all conditions set forth in Section 4.03 (other than Section 4.03(a)) of the GM-Delphi Agreement have been satisfied, (C) at least $100,000,000 has been drawn and remains outstanding under the GM-Delphi Agreement on the applicable Test Date, and (D) the MRA Consummation Date has not occurred.

    (b)      "DAS" shall mean Delphi Automotive Systems LLC, a Delaware limited liability company.

(c)  "MRA Consummation Date", "Component Part", "GMNA" and "GMSPO" shall each have the respective meanings set forth for such terms in the Master Restructuring Agreement.

(d)  "MNS-2" shall mean GM's Multilateral Netting System.

(e)  "Test Date" shall mean the Thursday before the date on which a Pull-Forward Payment is payable under this Agreement.

(f)  "Tranche B Obligations" shall have the meaning set forth in the GM-Delphi Agreement.

(g)  "Tranche B Termination Date" shall have the meaning set forth in the GM-Delphi Agreement.

2.  <u>Conditions Precedent to Effectiveness</u>.  This Agreement will become effective on the date (the "<u>Effective Date</u>") on which (a) all of the conditions precedent set forth in Section 3 of Amendment No. 2 to the GM-Delphi Agreement dated December [\_\_], 2008 between GM, Delphi, and certain subsidiaries of Delphi have been satisfied or waived in accordance with the terms thereof, and (b) the Bankruptcy Court shall have entered an order approving this Agreement, which order shall be in form and substance acceptable to GM, and such order shall have become final and non-appealable unless otherwise agreed upon by the parties in writing.

3.  <u>Temporary Acceleration of Payment Terms</u>.

(a)  <u>Pull-Forward Payments</u>.

(i)  Provided that the Acceleration Conditions are satisfied, on the date in March 2009 that GM makes its March 2009 MNS-2 payment to DAS (or, if later, the first date the Acceleration Conditions are satisfied that is either the 15th date of a month prior to July 2009 or the MNS-2 payment date in a month prior to July 2009), GM will make a payment to DAS of $100,000,000 (in addition to its otherwise scheduled payments on the applicable date) representing a partial temporary acceleration of accounts payable to DAS for Component Parts supplied to GMNA and GMSPO by DAS (the "<u>First Pull-Forward Payment</u>") with the effect of decreasing the GM payables to DAS by the amount paid.

(ii)  Provided that the Acceleration Conditions are satisfied, on the date in April 2009 that GM makes its April 2009 MNS-2 payment to DAS (or, if later, the first date the Acceleration Conditions are satisfied that is either the 15th date of a month prior to July 2009 or the MNS-2 payment date in a month prior to July 2009), GM will make an additional payment to DAS of $100,000,000 (in addition to its otherwise scheduled payments on the applicable date and without regard to any payment previously paid or then due under clause (i) above) representing a partial temporary acceleration of accounts payable to DAS for Component Parts supplied to GMNA and GMSPO by DAS (the "<u>Second Pull-Forward Payment</u>") with the effect of decreasing the GM payables to DAS by the amount paid.

(iii)        Provided that the Acceleration Conditions are satisfied, on the day following the date in May 2009 that GM makes its May 2009 MNS-2 payment to DAS (or, if later, the first date the Acceleration Conditions are satisfied that is either the 15th date of a month prior to July 2009 or the MNS-2 payment date in a month prior to July 2009), GM will make an additional payment to DAS of $100,000,000 (in addition to its otherwise scheduled payments on the applicable date and without regard to any payment previously paid or then due under clauses (i) or (ii) above) representing a partial temporary acceleration of accounts payable to DAS for Component Parts supplied to GMNA and GMSPO by DAS (the "<u>Third Pull-Forward Payment</u>") with the effect of decreasing the GM payables to DAS by the amount paid.   As used herein the term "<u>Pull-Forward Payments</u>" means the aggregate amount of the First Pull-Forward Payment, the Second Pull-Forward Payment and the Third Pull-Forward Payment paid by GM to DAS.

(b)        <u>Pull-Forward Recovery</u>.

(i)        If, on the Tranche B Termination Date, provided that such Tranche B Termination Date does not occur as a result of the occurrence of the MRA Consummation Date (which is addressed in section 3(c) below), the outstanding balance of the Tranche B Obligations is less than $300,000,000, a portion of the outstanding balance of Pull-Forward Payments, if any, in an amount up to the difference between (x) $300,000,000 and (y) the outstanding balance of the Tranche B Obligations, will be deemed to be advances under the GM-Delphi Agreement, with the outstanding balances of the Tranche B Obligations and the Pull-Forward Payments adjusted accordingly.   For example, if, on the Tranche B Termination Date, the outstanding balance of the Tranche B Obligations is $200,000,000, and the outstanding balance of Pull-Forward Payments is $200,000,000, $100,000,000 of Pull-Forward Payments will be deemed to be advances under the GM-Delphi Agreement, increasing the balance of the Tranche B Obligations to $300,000,000 and reducing the balance of the Pull-Forward Payments to $100,000,000. Likewise, if, on the Tranche B Termination Date, the outstanding balance of the Tranche B Obligations is $100,000,000, and the outstanding balance of Pull-Forward Payments is $100,000,000, $100,000,000 of Pull-Forward Payments will be deemed to be advances under the GM-Delphi Agreement, increasing the balance of the Tranche B Obligations to $200,000,000 and reducing the balance of Pull-Forward Payments to $-0-.

(ii)        Provided that (A) the MRA Consummation Date has not occurred, and (B) there remains a balance of Pull-Forward Payments made by GM to DAS after giving effect to clause (i) above, GM will offset the remaining balance of Pull-Forward Payments, in an amount not to exceed $100,000,000, from its first MNS-2 payment to DAS following the Tranche B Termination Date (or subsequent MNS-2 payments to DAS), or on the Tranche B Termination Date if the Tranche B Termination Date falls on an MNS-2 payment date, with the effect of increasing the GM payables to DAS by the amount so offset.

(iii)        Provided that (A) the MRA Consummation Date has not occurred, and (B) there remains a balance of Pull-Forward Payments made by GM to DAS after giving effect to clause (i) above, GM will offset the remaining balance of Pull-Forward Payments, in an amount not to exceed $100,000,000, from its second MNS-2 payment to

3

DAS following the Tranche B Termination Date (or subsequent MNS-2 payments to DAS) with the effect of increasing the GM payables to DAS by the amount so offset.

(iv)    Provided that (A) the MRA Consummation Date has not occurred, and (B) there remains a balance of Pull-Forward Payments made by GM to DAS after giving effect to clause (i) above, GM will offset the remaining balance of Pull-Forward Payments from its third MNS-2 payment to DAS following the Tranche B Termination Date (or subsequent MNS-2 payments to DAS) with the effect of increasing the GM payables to DAS by the amount so offset.

(c)    Upon the MRA Consummation Date, to the extent the Pull-Forward Payments have not been fully recovered by GM under Subsections 3(a)(iv), (v), or (vi) above, GM will offset the remaining balance of Pull-Forward Payments, if any, against its accounts payable to DAS simultaneously with giving effect to Section 3.13 of the Master Restructuring Agreement.    Thereafter, the terms and conditions of the Master Restructuring Agreement shall govern the respective rights and obligations of the parties hereto in connection with accelerated payment terms with respect to Component Parts supplied to GMNA and GMSPO by DAS and the partial temporary acceleration of payment terms under this Agreement shall cease.

4.    Notices.    (a) Subject to paragraph (b) below, all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

(i)    if to Delphi, to it at 5725 Delphi Drive, Troy, Michigan 48098, Attention: Treasurer (Telecopy No. 248-813-2648; Telephone No. 248-813-2592; with a copy to Deputy General Counsel, Transactional and Restructuring (Telecopy No. 248-816-2491; Telephone No. 248-813-2492); and

(ii)    if to GM, to it at 767 Fifth Avenue, 14th floor, New York, New York 10153, Attention: Treasurer, with a copy to General Motors Corporation, 767 Fifth Avenue, 14th floor, New York, New York 10153, Attention: Director, Business Development.

(b)    GM or Delphi may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; provided that approval of such procedures may be limited to particular notices or communications. Any party hereto may change its address or telecopy number for notices and other communications hereunder by notice to the other parties hereto. All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt.

5.    Successors and Assigns.    The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns permitted hereby, except that no party hereto may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the parties hereto (and any attempted assignment or transfer without such consent shall be null and void).

6.    CHOICE OF LAW. THIS AGREEMENT SHALL IN ALL RESPECTS BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

7.    No Waiver.   No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

8.    Amendments, etc.   No modification, amendment or waiver of any provision of this Agreement, and no consent to any departure by the party herefrom, shall in any event be effective unless the same shall be in writing and signed by all of the parties hereto, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on any party shall entitle such party to any other or further notice or demand in the same, similar or other circumstances. No amendment to this Agreement shall be effective against any party unless signed by the such party, as the case may be.

9.    Severability. Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof, and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

10.   Execution in Counterparts; Integration; Effectiveness. This Agreement may be executed in counterparts (and by different parties hereto on different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement and the GM-Delphi Agreement constitute the entire contract among the parties relating to the subject matter hereof and, except as specifically provided for herein, supersedes any and all previous agreements and understandings, oral or written, relating to the subject matter hereof, provided however, that this Agreement does not amend or supersede the terms of the Master Restructuring Agreement or the Global Settlement Agreement.   This Agreement shall become effective on the Effective Date, and thereafter shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Delivery of an executed counterpart of a signature page of this Agreement by telecopy or in "pdf" or similar format by electronic mail shall be effective as delivery of a manually executed counterpart of this Agreement.

11.   WAIVER OF JURY TRIAL. EACH OF DELPHI, THE DEBTORS AND GM HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

[Signature Page Follows]

5

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective officers thereunto duly authorized, all as of the date first written above.

**DELPHI CORPORATION,**
including on behalf of its Debtor subsidiaries
and Debtor Affiliates

**GENERAL MOTORS CORPORATION**

By: _____

By: _____

    Name:  John D. Sheehan
    Title:   Vice President, Chief
           Financial Officer

    Name:  Walter G. Borst
    Title:   Treasurer

DETROIT.3385711.8

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
    In re                       :   Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :   Case No. 05-44481 (RDD)
                                        :
                Debtors.   :   (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER (I) SUPPLEMENTING JANUARY 5, 2007 DIP REFINANCING ORDER
(DOCKET NO. 6461) AND AUTHORIZING DEBTORS TO ENTER INTO AND
IMPLEMENT ACCOMMODATION AGREEMENT WITH AGENT AND
PARTICIPATING LENDERS AND (II) AUTHORIZING DEBTORS TO (A) ENTER
INTO RELATED DOCUMENTS AND (B) PAY FEES IN CONNECTION
THEREWITH

("DIP ACCOMMODATION ORDER")

Upon the motion, dated November 7, 2008 (the "Motion"), of Delphi Corporation

(the "Borrower") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an

order supplementing the January 5, 2007 DIP Refinancing Order (Docket No. 6461) (as

supplemented by the November 16, 2007 DIP Order (Docket No. 10957) (the "DIP

Extension Order") and the April 30, 2008 DIP Order (Docket No. 13489) (as supplemented

by the May 30, 2008 Supplemental Second DIP Extension Order (Docket No. 13699)) (the

"Second DIP Extension Order"); hereinafter referred to as the "DIP Order") and authorizing

the Debtors to (i) enter into and implement an accommodation agreement with the

Participating Lenders,[1] the form of which is attached hereto as Exhibit A (the

---

[1]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the
Motion.

"Accommodation Agreement") which, <u>inter alia</u>, (a) provides certain accommodations to

the Debtors to enable them to continue to operate, notwithstanding the occurrence and

continuance of any Specified Defaults during the Accommodation Period (as each such term

is defined in the Accommodation Agreement), (b) amends the Second Amended and

Restated DIP Credit Agreement (as amended, supplemented, waived, or otherwise modified

from time-to-time, including, without limitation, pursuant to the Accommodation

Agreement, the "Amended DIP Credit Agreement") and (c) amends and restates the

Security and Pledge Agreement, dated as of January 9, 2007, by and among the Borrower

and the subsidiaries of the Borrower signatory thereto, each of the Debtors, and JPMorgan

Chase Bank, N.A., as administrative agent (the "Security and Pledge Agreement," and

together with the Accommodation Agreement, the Amended DIP Credit Agreement and all

other agreements and documentation related to the foregoing (including, without limitation,

any reimbursement agreement relating to letters of credit issued after the Accommodation

Effective Date (as defined in the Accommodation Agreement) for the account of the

Debtors or any of their subsidiaries to replace Letters of Credit issued under and as defined

in the DIP Credit Agreement); hereinafter referred to as the "Accommodation Documents")

and (ii) pay the fees in accordance with the Accommodation Documents (the

"Accommodation Fees"); and due and appropriate notice of the Motion, the relief requested

therein, and the opportunity for a hearing on the Motion having been served by the Debtors

in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain

Notice, Case Management, and Administrative Procedures, entered March 20, 2006

(Docket No. 2883), and the Twelfth Supplemental Order Under 11 U.S.C. §§ 102(1) And

2

105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing

Dates and Certain Notice, Case Management, and Administrative Procedures, entered July

23, 2008 (Docket No. 13965), and no other or further notice being necessary; and the Court

having held a hearing on the Motion and the objections thereto on December 1, 2008 (the

"Hearing"), and upon the record of the Hearing and after due deliberation thereon, and

sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      This Court has core jurisdiction over these chapter 11 cases and the parties

and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue of this

proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and

1409.

2.      The Motion is hereby granted with the exception of the Debtors' request for

a waiver of the stay under Bankruptcy Rule 6004(h).

3.      The Accommodation Documents are hereby authorized and approved, and

the Debtors are hereby authorized, effctive December 1, 2008, but not directed, to perform,

and take all actions necessary to make, execute and deliver, all of the Accommodation

Documents with any other instruments and documents in connection therewith, including,

without limitation, to pay the Accommodation Fees and all interest payable under the DIP

Credit Agreement (including, without limitation, at the default rate of interest on overdue

amounts to the extent provided in the DIP Credit Agreement ).  Upon execution and

delivery of each of the Accommodation Documents and such other instruments and

documents, and the effectiveness thereof in accordance with the terms thereof, such

3

instruments and documents shall constitute valid and binding obligations of (i) the Debtors,

enforceable against each Debtor party thereto in accordance with their respective terms and

(ii) the Lenders, enforceable against each Lender in accordance with their respective terms.

4.      The Debtors have a need to obtain certain accommodations in respect of

their current financing under the terms set forth in the Accommodation Documents  and are

unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the

Bankruptcy Code as an administrative expense, or secured credit allowable under sections

364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code, without the continuation of

the liens and claims granted pursuant to the DIP Order and incorporated by reference

herein to secure the DIP Facility, as amended by the Accommodation Documents (the

"Amended DIP Credit Facility") and any obligations in respect thereof.

5.      The DIP Order shall be deemed supplemented by this Order, and shall

continue in full force and effect as supplemented hereby, by the DIP Extension Order, and

the Second DIP Extension Order.  Without limiting the generality of the foregoing, but

subject to the terms of the Accommodation Documents (a) for all obligations and

indebtedness arising under the Amended DIP Credit Facility, the Agent and the DIP

Lenders and any other secured creditor granted rights under the DIP Order are each granted

each and every right and remedy granted to such secured creditor under the DIP Order (the

relevant provisions of the DIP Order being incorporated herein by reference), and (b)

nothing herein shall adversely affect any of the rights and remedies granted to the Agent

and the DIP Lenders or any other secured creditor under the DIP Order, which rights and

remedies shall continue in full force and effect and shall be deemed applicable to the

Amended DIP Credit Facility to the same extent applicable to the existing DIP Facility.

4

Consistent with and not in any way limiting the generality of the foregoing, (a) the definitions of "DIP Credit Agreement" and "DIP Documents" contained in the DIP Order shall be deemed to include the Accommodation Documents, as applicable, (b) the definition of "DIP Obligations" contained in the DIP Order shall be deemed to include all obligations and indebtedness arising under, in respect of, or in connection with the Amended DIP Credit Facility (including, without limitation, all "Obligations" as defined in the Second Amended and Restated DIP Credit Agreement, as amended by the Accommodation Documents), and (c) subject to the Accommodation Agreement, all liens, security interests, priorities, and all other rights, remedies, benefits, privileges, and protections provided in the DIP Order shall apply with equal force and effect to the Amended DIP Credit Facility and all obligations in connection therewith or related thereto.

6.      Paragraphs 5(b) and 6 of the DIP Order are hereby amended by deleting each reference to the term "Event of Default" and replacing it with the term "Other Event of Default."

7.      Paragraph 5(b) of the DIP Order is hereby further amended by deleting the phrase "Letter of Credit Account (as defined in the DIP Credit Agreement)" and replacing it with the phrase "Letter of Credit Account or in the Segregated Tranche C Interest Account (as each such term is defined in the DIP Credit Agreement)".

8.      Paragraph 5(b) of the DIP Order is hereby further amended by adding the following sentence at the end of such subsection: "The term "Other Event of Default" shall mean any Event of Default, other than a Specified Default occurring and continuing during the Accommodation Period (as each such term is defined in the Accommodation Agreement)."

5

9.      Paragraph 6(a) of the DIP Order is hereby amended by deleting the proviso to the first sentence thereof, and replacing it with the following *proviso*:  "*provided, however*, that the Borrower and the Guarantors shall not be required to pledge to the Agent any voting capital stock or interests of its indirect Foreign Subsidiaries if, in the good faith judgment of the Borrower, adverse tax consequences would result to the Borrower".

10.     Paragraph 6(d) of the DIP Order is hereby amended by adding the following phrase at the end of such subsection:  ", including, without limitation, the liens on cash collateral permitted by clauses (xxi) and (xxii) of Section 6.01 of the Credit Agreement."

11.     Paragraph 16 of the DIP Order is hereby amended by (a) inserting the following phrase after "To the extent that a customer or supplier of the Debtors":  "(other than General Motors Corporation or any of its affiliates, to whom this paragraph 16, including all subparagraphs hereof, does not apply)" and (b) deleting the *proviso* set forth in paragraph 16(a)(3).  Furthermore, GM and all GM Affiliates are hereby deemed to have waived any rights, liens and claims granted to GM or any GM Affiliate pursuant to paragraph 16 of the DIP Order, including all subparagraphs thereof, and paragraph 18 of the Existing DIP Order (as defined in the DIP Order), including all subparagraphs thereof, prior to the date hereof.

12.     Notwithstanding anything herein to the contrary, this Order shall not modify the August 2, 2007 Order Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Pursuant to 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) (Docket No. 8856), the December 10, 2007 Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b) and 507(a) Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement Amendment (Docket No. 11382) (the "EPCA Amendment

6

Order"), the Amended Investment Agreements (as defined in the EPCA Amendment

Order), or any rights of the parties under any of the foregoing, including without limitation

with respect to (i) the propriety, allowance, or payment of any unpaid Transaction

Expenses or Post-Order Transaction Expenses or the timing thereof or (ii) the Delphi-GM

Agreement (as defined below), as to which the rights of all parties are hereby expressly

reserved.

13.    The Accommodation Documents have been negotiated in good faith and at

arm's-length between the Debtors and the Agent, and all of the Debtors' obligations under

the Amended DIP Credit Agreement as authorized by the DIP Order and this Order,

including, without limitation, the obligation to pay the Accommodation Fees, have been

incurred in good faith as that term is used in section 364(e) of the Bankruptcy Code.  In

accordance with and to the extent provided in section 364(e) of the Bankruptcy Code, in

the event that any or all of the provisions of this Order, the DIP Order, or any

Accommodation Document are hereinafter modified, amended, or vacated by a subsequent

order of this Court or any other court, no such modification, amendment, or vacation shall

affect the validity, enforceability, or priority of any lien or claim authorized or created

hereby or thereby.  Notwithstanding any such modification, amendment, or vacation, any

claim granted to the Agent and/or the DIP Lenders hereunder or under any DIP Document

(as defined in the DIP Order) arising prior to the effective date of such modification,

amendment, or vacation shall be governed in all respects by the original provisions of this

Order, the DIP Order, and the other DIP Documents (as defined in the DIP Order); and the

Agent and the DIP Lenders shall be entitled to all of the rights, remedies, privileges, and

7

benefits, including the liens and priorities granted herein and therein, with respect to any

such claim.

14.     A sound business purpose exists for the Debtors to enter into the

Accommodation Documents for purposes of the authorization and approval thereof

pursuant to 11 U.S.C. § 363(b).

15.     The provisions of the Accommodation Documents that by their terms are

not applicable to any DIP Lenders other than Participant Lenders (as defined in the

Accommodation Agreement) shall be binding upon the Agent, the Participant Lenders, and

the Debtors and their respective successors and assigns (including any chapter 7 or chapter

11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and inure to

the benefit of the Agent, the Participant Lenders, and the Debtors and their respective

successors and assigns.  All other provisions of the Accommodation Documents (including,

without limitation, the Amended DIP Credit Agreement), and the provisions of this Order,

shall be binding upon the Agent, the DIP Lenders, and the Debtors and their respective

successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed

or elected for the estate of any of the Debtors) and inure to the benefit of the Agent, the DIP

Lenders, and the Debtors and their respective successors and assigns.  The GSA Side Letter

(as defined in the Accommodation Agreement) shall be binding upon GM and its Affiliates

(as defined in the Amended GSA as in effect on the date hereof, "Affiliates") and Delphi

and its Affiliates, and shall inure to the benefit of, and be enforceable by, Delphi and its

Affiliates, any successor to Delphi or any of its Affiliates (including, without limitation, a

chapter 7 or chapter 11 trustee appointed or elected for Delphi or any of its Affiliates), the

Agent and the DIP Lenders.

8

16.    Without limiting the generality of paragraph 7(b) of the DIP Order, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Agent and the DIP Lenders to deliver any notification or direction contemplated by the Accommodation Agreement.

17.    Section 8 of the Credit Agreement shall apply to the Accommodation Documents and each other DIP Document and all actions taken or not taken by the Agent or any Participant Lender contemplated thereby.

18.    For the avoidance of doubt, each Accommodation Document shall constitute a "Loan Document" under and as defined in the Amended DIP Credit Agreement.

19.    In the event of any inconsistency between the provisions of this Order and the DIP Order, or the DIP Documents (including, without limitation, the Accommodation Documents), the provisions of this Order shall govern.

20.    This Court shall retain jurisdiction to enforce and implement the terms and provisions of the DIP Order, this Order and the DIP Documents (including, without limitation, the Accommodation Documents).

21.    The applicability of Bankruptcy Rule 6004(h) to this Order shall not constitute a stay of this Order within the meaning of the condition to effectiveness of the Accommodation Agreement set forth in Section 35(iv) thereof.

22.    Any objection to the Motion that has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.  The Cross-Motion filed by the Tranche C Collective pursuant to 11 U.S.C. §§ 105(a), 361, 363(e), and 1107(a) of the Bankruptcy Code for entry of an order providing adequate protection in exchange for forbearance, and

9

the Motion filed by the Tranche C Collective pursuant to 11 U.S.C. § 105(d) of the

Bankruptcy Code for a chambers conference (Docket No. 14459) are hereby denied.


Dated:   New York, New York
         December 3, 2008

                                    /s/Robert D. Drain
                                    UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

## ACCOMMODATION AGREEMENT

**ACCOMMODATION AGREEMENT** (this "Accommodation Agreement") dated as of [          ], 2008, and effective as of the Accommodation Effective Date (as defined below), among DELPHI CORPORATION, a Delaware corporation (the "Borrower"), a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code, and the subsidiaries of the Borrower signatory hereto (each a "Guarantor" and collectively the "Guarantors"), each of which Guarantors is a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code, the Lenders and other Persons party hereto, JPMORGAN CHASE BANK, N.A., as administrative agent for the Lenders (in such capacity, the "Administrative Agent").

### W I T N E S S E T H :

WHEREAS, the Borrower, the Guarantors, the Lenders, the Administrative Agent and Citicorp USA, Inc., as Syndication Agent, are parties to that certain Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement, dated as of May 9, 2008 (as the same has been and may be further amended, modified or supplemented from time to time, the "Credit Agreement");

WHEREAS, in connection with the Credit Agreement, the Borrower and certain of its subsidiaries are parties to the Security and Pledge Agreement, dated as of January 9, 2007 (as the same has been and may be further amended, modified or supplemented from time to time, the "Security and Pledge Agreement" and together with the Credit Agreement, the "Existing Agreements"); and

WHEREAS, to permit completion of the negotiation of the Reorganization Plan and the exploration of other possible strategic transactions and to facilitate the Borrower's and the Guarantors' emergence from chapter 11, the Participant Lenders are willing, as an accommodation to the Borrower and the Guarantors for a limited period of time upon the terms and conditions set forth herein, to enable them to continue to operate, notwithstanding the occurrence and continuance of any Specified Defaults during the Accommodation Period.

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

1.      **Defined Terms; References**.  (a)  Unless otherwise specifically defined herein, each term used herein which is defined in any Existing Agreement has the meaning assigned to such term in such Agreement.  Each reference herein to the Administrative Agent, Participant Lenders and Lenders is meant to refer to such Persons solely in such capacity.

(b)  As used in this Accommodation Agreement, the following terms have the meanings specified below:

"Automatic Accommodation Termination Default" shall mean any Event of Default or other event in each case listed on Schedule I hereto.

"Accommodation Default" shall mean the occurrence of any of the following events and the continuance thereof:

(i) the Borrower or any Guarantor shall breach any covenant, condition or agreement contained in this Accommodation Agreement (except to the extent constituting an Automatic Accommodation Termination Default), after giving effect to any applicable grace periods contained in (x) the Credit Agreement (in the case of any covenant, condition, or agreement set forth in the Loan Documents (other than in the Accommodation Agreement) required to be complied with pursuant to Section 3(a)) or (y) this Accommodation Agreement;

(ii) any Event of Default other than a Specified Default or an Automatic Accommodation Termination Default shall have occurred and be continuing; or

(iii) the Borrower or any Guarantor shall have made payments outside the ordinary course of business on account of terminated Hedging Agreements (including any "Transactions" under and defined in any such Hedging Agreement) on or after the Accommodation Effective Date in excess of $175,000,000 in the aggregate.

"Accommodation Period" shall mean the period beginning on the Accommodation Effective Date and ending on the earliest to occur of:

(i) June 30, 2009; provided, that if the Borrower shall not have either (a) received, on or prior to February 27, 2009, binding commitments, subject to customary conditions, for debt and equity financing sufficient for the Borrower and the Guarantors to emerge from Chapter 11 pursuant to a Qualifying Reorganization Plan or (b) (x) filed with the Bankruptcy Court, on or prior to February 27, 2009, a Reorganization Plan that becomes a Satisfactory Reorganization Plan within 10 Business Days after such filing and (y) obtained entry by the Bankruptcy Court of a Plan Order, on or prior to March 31, 2009, with respect to such Satisfactory Reorganization Plan, then the date set forth in this clause (i) shall be May 5, 2009;

(ii) the occurrence of an Automatic Accommodation Termination Default and the continuance of such Automatic Accommodation Termination Default for more than five (5) Business Days; and

(iii) the delivery by the Administrative Agent to the Borrower of a written notice terminating the Accommodation Period pursuant to Section 2(b) hereof.

"Borrowing Base Cash Collateral Account" shall mean any Full Control Deposit Account or Full Control Securities Account into which Borrowing Base Cash Collateral shall have been deposited, over which the Administrative Agent shall have sole and exclusive dominion and control, including the exclusive right of withdrawal.

"Borrowing Base Cash Collateral" shall mean cash collateral (but excluding any cash collateral in the Letter of Credit Account) and Permitted Investments of the types specified in clauses (a), (b) and (c) of the definition thereof, in an aggregate amount not to exceed $200,000,000, pledged to the Administrative Agent by the Borrower or any Guarantor for the benefit of the Lenders and held on the Accommodation Effective Date in one or more Borrowing Base Cash Collateral Accounts, as reduced from time to time pursuant to Section 3(e)(iii).

"Borrower Liquidity Availability" shall mean, at any time, an amount equal to the sum of (i) the unrestricted cash and cash equivalents of the Borrower and the Guarantors (as reflected on a consolidated balance sheet of the Borrower and the Guarantors) at such time and (ii) the amount of GM Undrawn Availability at such time.

"Existing Reorganization Plan" shall mean the Borrower's and the Guarantors' First Amended Joint Plan of Reorganization substantially in the form filed with the Bankruptcy Court on October 3, 2008.

"Foreign PBGC Lien" shall mean any Lien held by the PBGC on any assets of a Foreign Subsidiary, which Lien is filed, valid and enforceable in a non-U.S. jurisdiction.

"GM Advances" shall mean "Tranche B Loans" as defined under the GM-Delphi Agreement.

"GM Undrawn Availability" shall mean, at any time, the amount by which the GM Commitment then in effect exceeds the aggregate amount of all outstanding GM Advances at such time; provided that the GM Undrawn Availability shall be deemed to be zero at any time that any condition to funding under the GM Commitment set forth in Section 4.03 of the GM-Delphi Agreement (other than the condition set forth in Section 4.03(a) thereof as in effect on the Accommodation Effective Date), is not satisfied at such time.

"GSA Side Letter" shall mean a letter in form and substance substantially in the form attached as Exhibit E to the Borrower's motion to approve the GM-Delphi Agreement Second Amendment, filed with the Bankruptcy Court on November 7, 2008.

"Hedging Agreement Termination Forbearance Election" shall mean a written notice by a Person that is party to a Hedging Agreement with a Loan Party, delivered by such Person to the Borrower and the Administrative Agent on or prior to the Accommodation Effective Date, in form and substance substantially in the form attached hereto as Annex I.

"Hedging Certification" shall mean a certificate delivered by the Borrower to the Administrative Agent on the Accommodation Effective Date pursuant to Section 35(xiii) stating either that (a) each Person that is party to a Hedging Agreement with any Loan Party is party to this Accommodation Agreement and has executed and delivered to the Borrower a Hedging Agreement Termination Forbearance Election or (b) at least one Person that is party to a Hedging Agreement with a Loan Party is not party to this Accommodation Agreement or has not executed and delivered to the Borrower a Hedging Agreement Termination Forbearance Election.

"Hedging Requirement" shall be satisfied if the Hedging Certification delivered by the Borrower to the Administrative Agent on the Accommodation Effective Date pursuant to Section 35(xiii) states that each Person that is party to a Hedging Agreement with any Loan Party is party to this Accommodation Agreement and has executed and delivered to the Borrower a Hedging Agreement Termination Forbearance Election.

"Participant Lender" shall mean (a) any Lender and (b) any Person that is owed any Secured Domestic Hedging Obligations or Cash Management Obligations, in each case that executes this Accommodation Agreement and any of such Lender's or other Person's successors and assigns that execute a Joinder to this Accommodation Agreement.  For the avoidance of doubt, any party may, by so indicating on its signature page, execute this Accommodation Agreement solely in its capacity as a Participant Lender under clause (b) of this definition, and not as a Lender for any purposes of this Accommodation Agreement.

"Plan Order" shall mean an order, inter alia, approving a disclosure statement or modifications to a disclosure statement and authorizing re-solicitation or solicitation, as the case may be, of votes.

"Qualifying Reorganization Plan" shall mean any Reorganization Plan that provides for the same treatment of the Loans, the Commitments, the Administrative Agent and the DIP Lenders as the treatment provided in the Existing Reorganization Plan.

"Required First Priority Participant Lenders" shall mean, at any time, Participant Lenders holding Tranche A Loans, LC Exposure and a portion of the Tranche B Loan in each case at such time representing in excess of 50% of the sum of (x) the Tranche A Total Commitment Usage held by all Participant Lenders at such time plus (y) the Total Tranche B Commitment held by all Participant Lenders at such time.

"Required Total Participant Lenders" shall mean, at any time, Participant Lenders holding Tranche A Loans, LC Exposure, a portion of the Tranche B Loan and a portion of the Tranche C Loan, in each case at such time representing in excess of 50% of the sum of (x) the Tranche A Total Commitment Usage held by all Participant Lenders at such time plus (y) the Total Tranche B Commitment held by all Participant Lenders at such time plus (z) the Total Tranche C Commitment held by all Participant Lenders at such time.

"Satisfactory Reorganization Plan" shall mean any new Reorganization Plan or modifications to the Existing Reorganization Plan, unless within 10 Business Days after such Reorganization Plan or modifications to the Existing Reorganization Plan have been filed with the Bankruptcy Court, the Administrative Agent shall have notified the Borrower in writing that such Reorganization Plan or modifications to the Existing Reorganization Plan are not satisfactory to either (a) the Required Lenders or (b) the Required Total Participant Lenders.

"Segregated Account" shall mean any Borrowing Base Cash Collateral Account, any Segregated Tranche C Interest Account and the Letter of Credit Account.

"Specified Defaults" shall mean any Event of Default listed on Schedule II hereto.

"Specified Litigation Proceeds" shall mean in connection with any final award or settlement in whole or in part of the litigation between the Borrower and its Affiliates and the "Investors" and/or "Commitment Parties" (as each such term is defined in the Equity Purchase and Commitment Agreement, dated as of August 3, 2007 (as amended by the Second Restated First Amendment approved by the Bankruptcy Court on December 7, 2007 and as further amended, supplemented or otherwise modified from time, the "EPCA") in connection with the

4

EPCA (including, without limitation, the litigation bearing the caption <u>Delphi Corp. v. Appaloosa Mgmt. L.P., et al. (In re Delphi Corp.)</u>, Adv. Proc. 08-1232 (RDD) (Bankr. S.D.N.Y.) and <u>Delphi Corp. v. UBS Securities LLC (In re Delphi Corp.)</u>, Adv. Proc. 08-1233 (RDD) (Bankr. S.D.N.Y.), the proceeds thereof, received from any Person, in the form of cash and Permitted Investments, net of attorneys' fees and other customary fees and expenses actually incurred in connection therewith following the Accommodation Effective Date and net of taxes paid or reasonably estimated to be payable following the Accommodation Effective Date as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements) and a reasonable reserve for indemnification payments that could reasonably be expected to arise in respect thereof following the Accommodation Effective Date.

2. **Accommodation**.    (a) Each Participant Lender agrees that until the expiration or termination     of the Accommodation Period, such Participant Lender will forbear (subject to the terms hereof) from (i) directing, voting to direct or requesting that the Administrative Agent take or exercise, and hereby directs the Administrative Agent not to take or exercise, any of the actions set forth in clauses (ii), (iv) and (v) of Section 7.01 of the Credit Agreement or any other remedies under the Credit Agreement, the Loan Documents (including, without limitation, pursuant to Sections 9 and 15 of the Security and Pledge Agreement) or otherwise (including, without limitation, enforcement or collection actions or other remedies available pursuant to applicable law), (ii) demanding repayment of any amount due under the Credit Agreement or from exercising such Participant Lender's other remedies, if any, under the Credit Agreement, the Loan Documents (including, without limitation, pursuant to Sections 9 and 15 of the Security and Pledge Agreement) or otherwise (including, without limitation, enforcement or collection actions, the exercise of rights of setoff or other remedies available pursuant to applicable law), (iii) if and only if the Hedging Requirement has been satisfied, terminating any Hedging Agreement with the Borrower or any Guarantor (including any "Transactions" under and defined in any such Hedging Agreement) and demanding repayment or exercising any other remedies thereunder or otherwise; <u>provided</u> that if at any time the aggregate amount of Swap Exposure of Indebtedness in respect of Secured Domestic Hedging Obligations exceeds $500,000,000, such Participant Lender shall be entitled to terminate any such Hedging Agreement (including any "Transactions" under and defined in any such Hedging Agreement) but shall otherwise continue to forbear, subject to the terms hereof, from demanding repayment or otherwise exercising any other remedy thereunder or otherwise (including, without limitation, enforcement or collection actions, the exercise of rights of setoff or other remedies available pursuant to applicable law); (iv) demanding repayment or exercising any other remedies with respect to (A) any Cash Management Obligations with the Borrower or any Guarantor or (B) otherwise (including, without limitation, enforcement or collection actions or other remedies available pursuant to applicable law) and (v) directing, voting to direct or requesting that the Administrative Agent take or exercise, and hereby directs the Administrative Agent not to take or exercise, any of the actions set forth in Section 2.26 of the Credit Agreement, or any other rights of setoff under the Credit Agreement, the Loan Documents or otherwise (including, without limitation, pursuant to applicable law); in the case of clauses (i), (ii), (iii), (iv) and (v) above, solely to the extent the availability of such rights or remedies arise from any Specified Default (or in the case of clauses (iii) and (iv), from a cross-default (including resulting from any event of default or termination event under any Hedging Agreement) resulting from any Specified Default); <u>provided</u> that, except with respect to those provisions, limitations, restrictions and prohibitions under any of the

Loan Documents, the breach, noncompliance or nonperformance of which results in any Specified Default, the Borrower and the Guarantors shall comply during the Accommodation Period with all provisions, limitations, restrictions or prohibitions that would otherwise be effective or applicable under any of the Loan Documents (as amended by this Accommodation Agreement).  Notwithstanding the foregoing, this Accommodation Agreement shall not prohibit any Participant Lender from terminating any Hedging Agreement (including any "Transaction" under and defined in any such Hedging Agreement) with the consent of the Borrower or Guarantor party thereto if there is no amount due and owing by the Borrower or any Guarantor upon such termination.

(b)  Upon the occurrence and during the continuance of any Accommodation Default or Automatic Accommodation Termination Default, the Administrative Agent shall, at the request of the Required First Priority Participant Lenders in the case of any Accommodation Default under clause (iii) of the definition thereof, and, at the request of the Required First Priority Participant Lenders or the Required Total Participant Lenders in the case of any other Accommodation Default or any Automatic Accommodation Termination Default, deliver to the Borrower a notice terminating the Accommodation Period.  For the avoidance of doubt, upon the occurrence and during the continuance of any Automatic Accommodation Termination Default, and prior to the termination of the Accommodation Agreement, delivery of such notice is not a condition to termination of the Accommodation Agreement under clause (ii) of the definition of Accommodation Period, but will immediately operate to terminate the Accommodation Period under clause (iii) of the definition of Accommodation Period.

(c)  Upon the expiration or termination of the Accommodation Period, the agreement of the Participant Lenders pursuant to Section 2(a) above to forbear from inter alia exercising their remedies, and the direction to the Administrative Agent not to take or exercise certain actions or remedies pursuant to Sections 2(a)(i) and 2(a)(v) above, shall immediately terminate without the requirement of any demand, presentment, protest or notice of any kind, all of which the Borrower and the Guarantors hereby waive.  The Borrower and the Guarantors agree that the Administrative Agent and the Participant Lenders may at any time thereafter proceed to exercise any and all of their respective rights and remedies under any or all of the Loan Documents and/or applicable law, including, without limitation, their respective rights and remedies in connection with any or all of the defaults and Events of Default, including, without limitation, the Specified Defaults.

(d)  For the avoidance of doubt, nothing herein (i) limits the right of the Administrative Agent or the Lenders, including during the Accommodation Period, to take any action to preserve or exercise or enforce rights or remedies nor (ii) constitutes a waiver of such rights, in either case against parties other than the Borrower and the Guarantors ("Third Party Rights").  For purposes of the foregoing, the Borrower and the Guarantors acknowledge and agree that execution and delivery of this Accommodation Agreement shall constitute the making of any necessary demand or the giving of any necessary notice for purposes of preserving and/or permitting the exercise of any such Third Party Rights of the Administrative Agent and the Lenders.

(e)  Execution of this Accommodation Agreement constitutes a direction by the Participant Lenders that the Administrative Agent act in accordance with its terms.

Notwithstanding the foregoing (and without limitation to the rights of the Borrower and the Guarantors to pursue all available remedies available in each case thereto under applicable law which may result from breach or non-performance by any Participant Lender of this Agreement or any of such Participant Lender's obligations hereunder), the Administrative Agent shall have no liability to the Borrower, any Guarantor, or any Lender, for taking any action at the request of the Required Lenders, even if such action is inconsistent with this Accommodation Agreement. Notwithstanding the foregoing, each Participant Lender hereby agrees not to take any action, including without limitation directing the Administrative Agent to take any action, inconsistent with or in breach of this Accommodation Agreement.  The parties acknowledge and agree that any actions taken or not taken by the Administrative Agent in accordance with this Accommodation Agreement are at the request of and with the consent of the Required Lenders under the Credit Agreement, and the Administrative Agent may rely thereon for purposes of Article 8 of the Credit Agreement.

(f)  The Borrower and the Guarantors acknowledge and agree that the agreement of the Participant Lenders hereunder to forbear from, and to request the Administrative Agent to forbear from, exercising their remedies with respect to the Specified Defaults shall not constitute a waiver of such Specified Defaults, and that except as expressly provided herein, the Lenders expressly reserve all rights and remedies that the Administrative Agent and the Lenders now or may in the future have under any or all of the Loan Documents and/or applicable law in connection with all defaults and Events of Default (including without limitation the Specified Defaults).

3.    **Accommodation Covenants**.    (a)    Notwithstanding the occurrence of the Maturity Date or any Specified Default, the Borrower and the Guarantors hereby agree to comply with all of the terms and conditions of the Loan Documents, as amended by this Accommodation Agreement, during the Accommodation Period, except to the extent that the breach, noncompliance or nonperformance of any such term or condition results in a Specified Default.

(b)    During the Accommodation Period, the Borrower shall promptly give to the Administrative Agent notice in writing of the occurrence of any Automatic Accommodation Termination Default or Accommodation Default, or the occurrence of any event or circumstance which with the passage of time or giving of notice or both would constitute an Automatic Accommodation Termination Default or Accommodation Default.

(c)    The Borrower and each of the Guarantors shall not, and shall not permit any of their respective Subsidiaries to, permit cumulative Global EBITDAR for the Global Entities for each rolling twelve (12) fiscal month period ending on the last day of each fiscal month set forth below to be less than the amount appearing opposite such month for such entity:

| Period Ending | Global Entities Global EBITDAR |
|---|---|
| December 31, 2008 | $450,000,000 |
| January 31, 2009 | $400,000,000 |
| February 28, 2009 | $325,000,000 |
| March 31, 2009 | $350,000,000 |

7

|                 | Global      Entities |
| Period Ending   | Global EBITDAR       |
| April 30, 2009  | $350,000,000         |
| May 31, 2009    | $350,000,000         |

(d)  During the Accommodation Period, (i) Borrower Liquidity Availability shall at no time be less than $100,000,000 and (ii) together with the delivery to the Administrative Agent of the information required to be delivered pursuant to Section 5.01(c) of the Credit Agreement, the Borrower shall deliver to the Administrative Agent a certificate signed by a Financial Officer of the Borrower, certifying in reasonable detail that the amount of Borrower Liquidity Availability is greater than or equal to $100,000,000.

(e)  (i)   If at any time during the Accommodation Period, the aggregate principal amount of the outstanding Tranche A Loans plus the aggregate principal amount of the outstanding Tranche B Loan plus the Uncollateralized LC Exposure exceeds the amount (the "Maximum Amount") equal to (A) the Accommodation Period Borrowing Base, minus (B) $200,000,000 (any such excess amount, the "Excess Drawn Amount"), the Borrower will within the Prepayment Period repay Obligations pursuant to Section 2.19(b) of the Credit Agreement and/or Cash Collateralize Letters of Credit pursuant to Section 2.19(b) of the Credit Agreement in an aggregate amount, if any, necessary to cause the aggregate principal amount of the outstanding Tranche A Loans plus the aggregate principal amount of the outstanding Tranche B Loan plus the Uncollateralized LC Exposure to be equal to or less than the Maximum Amount.

(ii)   For purposes hereof, (A) "Prepayment Period" shall mean within one Business Day or, if a Qualifying GM Borrowing Notice has been delivered by the Borrower to General Motors Corporation, within three Business Days, (B) a "Qualifying GM Borrowing Notice" shall mean a notice of borrowing delivered by the Borrower to General Motors Corporation requesting a borrowing under the GM-Delphi Agreement in accordance with the terms of the GM-Delphi Agreement in an amount at least equal to the Excess Drawn Amount so long as, at such time, such amount shall then be fully available and permitted to be drawn by the Borrower under the GM-Delphi Agreement and (C) "Accommodation Period Borrowing Base" shall mean, on any date, an amount (calculated based on the most recent Borrowing Base Certificate delivered to the Administrative Agent in accordance with the Credit Agreement) that is equal to the sum of (i) Available Receivables, plus (ii) Available Inventory, plus (iii) the Fixed Asset Component, plus (iv) the value of Borrowing Base Cash Collateral in an amount not to exceed $200,000,000, minus (v) the Carve-Out, minus (vi) an amount (not less than zero) equal to (A) the aggregate amount of Swap Exposure of all Pari Secured Hedging Obligations, minus (B) $75,000,000, minus (vii) the GM Prepayment Reserve outstanding on such date; provided that the aggregate amount of the Fixed Asset Component shall at no time account for more than thirty percent (30%) of the aggregate amount of the Borrowing Base (it being understood that, solely for purposes of this proviso, the aggregate amount of the Borrowing Base shall be calculated without giving effect to the addition described in clause (iv) and the deductions described in clauses (v) and (vi) above).   For the avoidance of doubt, for purposes of this definition, (A) the amount described in clause (iii) of the definition of Carve-Out shall be deemed at all times to be equal to $35,000,000 and (B) the amount described in clause (iv)(y) of the definition of Carve-Out shall be deemed at all times to be equal to $10,000,000.   Borrowing Base standards may be fixed and

revised from time to time by the Administrative Agent in its reasonable discretion; provided that any change that increases the advance rates set forth in the definition of the term Accommodation Period Borrowing Base, adds new asset categories to the Accommodation Period Borrowing Base or otherwise causes the Accommodation Period Borrowing Base to be increased, shall be subject to the written consent of the Required First Priority Participant Lenders.

(iii)   Upon the request of the Borrower, the Administrative Agent shall transfer to the Borrower any Borrowing Base Cash Collateral included in the Accommodation Period Borrowing Base out of the applicable Borrowing Base Cash Collateral Account; provided that, after giving effect to such transfer, (1) the Borrower shall be in compliance with Section 3(e)(i) of this Accommodation Agreement and (2) no Event of Default or any event (including any default under the Accommodation Agreement) which upon notice or lapse of time or both would constitute an Event of Default, other than a Specified Default, shall have occurred and be continuing; and provided further, that any amounts transferred out of any Borrowing Base Cash Collateral Account (other than to another Borrowing Base Cash Collateral Account) shall permanently reduce the value of the Borrowing Base Cash Collateral by a corresponding amount and once transferred out of such Borrowing Base Cash Collateral Account, the balances in such account shall not be reinstated.  Investments of funds deposited in any Borrowing Base Cash Collateral Account may be selected by the Borrower but shall consist only of Permitted Investments of the types specified in clauses (a), (b) and (c) of the definition thereof and shall be at the Borrower's risk and reasonable expense.

(f)      Accrued interest (including default interest under Section 2.09 of the Credit Agreement) on all Tranche A Loans and the Tranche B Loan shall be payable in arrears on each Interest Payment Date applicable thereto (it being understood that such interest shall not, pursuant to this Section 3(f), be paid on demand during the Accommodation Period).

(g)      On the Accommodation Effective Date, the Borrower shall establish the Segregated Tranche C Interest Account.  On each date on which the Borrower would otherwise be obligated to pay interest in respect of the Tranche C Loan pursuant to Section 2.08(c) of the Credit Agreement, the Borrower shall deposit the amount of interest that it would otherwise be required to pay to the Tranche C Lenders into the Segregated Tranche C Interest Account.

(h)      The Borrower shall not repatriate cash from its Foreign Subsidiaries during the Accommodation Period through the payment of cash dividends in respect of, or cash otherwise distributed in redemption of or in exchange for, the Equity Interests of the Foreign Subsidiaries (other than joint ventures), or through the repayment of notes (other than any notes owed by joint ventures), in each case except to the extent such cash is used to repay Obligations pursuant to Section 2.19(b) of the Credit Agreement and/or Cash Collateralize Letters of Credit pursuant to Section 2.19(b) of the Credit Agreement.

(i)      If on any date (a "Specified Litigation Proceeds Receipt Date") during the Accommodation Period, the Borrower or any Guarantor shall receive Specified Litigation Proceeds, the Borrower shall, on or prior to the date that is the earlier of ten days after such Specified Litigation Proceeds Receipt Date and the Consummation Date, repay Obligations pursuant to Section 2.19(b) of the Credit Agreement and/or Cash Collateralize Letters of Credit

9

pursuant to Section 2.19(b) of the Credit Agreement in an aggregate amount equal to 100% of such Specified Litigation Proceeds received on such Specified Litigation Proceeds Receipt Date.

(j)    The Borrower shall use commercially reasonable efforts to diligently contest and cause the Foreign Subsidiaries to contest any action by the PBGC in a non-U.S. jurisdiction in which the PBGC seeks to obtain a Foreign PBGC Lien.

(k)    So long as the applicable officers, managers or directors, as the case may be, shall have determined that there exists a sufficient corporate benefit under applicable law, the Loan Parties shall use their commercially reasonable efforts to cause Delphi International Holdings Corporation Luxembourg S.C.S. ("Luxembourg Holdco I") to grant security interests in the intercompany loans made by Luxembourg Holdco I in favor of Delphi Holdings Luxembourg Sarl ("Luxembourg Holdco II") and evidenced by one or more promissory notes (the "Luxembourg Intercompany Notes"), on terms to be reasonably agreed between the Borrower and the Administrative Agent, to secure any intercompany loans made by the Loan Parties in favor of Luxembourg Holdco I existing on the date hereof and evidenced by one or more promissory notes; it being understood that no grant of any security interest pursuant to the foregoing shall be required to the extent that such grant would be reasonably likely to result in (i) a breach of applicable law or applicable corporate or managers' or directors' duties or require a prior consent or approval from a Governmental Authority or a third party which has neither been obtained nor can reasonably be obtained or (ii) a material adverse effect on the tax, cash management and/or other operating arrangements of Luxembourg Holdco I and its Subsidiaries.

(l)    On each date set forth in the table below, the Borrower shall repay Obligations pursuant to Section 2.19(b) of the Credit Agreement in an aggregate amount, if any, necessary to cause the sum of the aggregate principal amount of the outstanding Tranche A Loans plus the principal amount of the outstanding Tranche B Loan to be equal to or less than the amount set forth below appearing opposite such date:

| Date | Amount |
| --- | --- |
| January 31, 2009 | $857,000,000 |
| February 28, 2009 | $847,000,000 |
| March 31, 2009 | $837,000,000 |
| April 30, 2009 | $827,000,000 |
| May 31, 2009 | $817,000,000 |

4.    **Amendment of Existing Agreements**.  The parties hereto hereby agree that upon their execution and delivery of this Accommodation Agreement and subject to the other terms and conditions set forth herein, including the terms and conditions set forth in Section 35 hereof with respect to the effectiveness of this Accommodation Agreement, (i) the Existing Agreements shall be amended as set forth herein and shall be binding upon all parties thereto, subject to the terms hereof and (ii) each reference to "hereof", "hereunder", "herein" and "hereby" and each other similar reference and each reference to "this Agreement" and each other similar reference contained in the Existing Agreements shall, after the Accommodation Effective Date, refer to such agreements as amended by this Accommodation Agreement.

10

5.    **Addition of Certain New Definitions to Credit Agreement**.  Section 1.01 of the Credit Agreement is hereby amended by adding the following definitions in alphabetical order to said Section 1.01:

"Accommodation Agreement Order" shall mean order of the Bankruptcy Court dated [_____], 2008 approving, *inter alia*, the Borrower's entry into the Accommodation Agreement.

"Accommodation Agreement" shall mean the Accommodation Agreement, dated as of [_____], 2008, among the Borrower, the Guarantors, the Lenders and other Persons party thereto and the Administrative Agent, as amended, restated, or otherwise modified from time to time.

"Accommodation Effective Date" shall mean the "Accommodation Effective Date" of and as defined in the Accommodation Agreement.

"Accommodation Period" shall have the meaning given such term in the Accommodation Agreement.

"Domestic EBITDAR" shall mean, for the Domestic Entities in any period, all as determined in accordance with GAAP, the consolidated net income (or net loss) of the Domestic Entities for such period excluding the equity income from any Foreign Subsidiary, plus (a) to the extent deducted in the calculation of consolidated net income, without duplication, the sum of (i) income tax expense, (ii) interest expense, (iii) depreciation and amortization expense, (iv) amortization of intangibles (including, but not limited to, goodwill) and organization costs, (v) any Restructuring Costs of such Person and its domestic Subsidiaries accounted for in such period, minus (b) to the extent included in the calculation of consolidated net income, the sum of interest income.

"EBITDAR" shall mean, for the Global Entities in any period, all as determined in accordance with GAAP, the consolidated net income (or net loss) of such Person for such period, plus (a) to the extent deducted in the calculation of consolidated net income, without duplication, the sum of (i) income tax expense, (ii) interest expense, (iii) depreciation and amortization expense, (iv) amortization of intangibles (including, but not limited to, goodwill) and organization costs, (v) any Restructuring Costs of such Person and its domestic Subsidiaries accounted for in such period, minus (b) to the extent included in the calculation of consolidated net income, the sum of interest income.

"Excluded Foreign Subsidiary" shall mean:

(a)  each first-tier Foreign Subsidiary specified on part A of Schedule 5.12 hereto, so long as such Foreign Subsidiary continues to qualify subsequent to the Accommodation Effective Date as an Excluded Foreign Subsidiary pursuant to clause (d) below;

11

(b)  each first-tier Foreign Subsidiary specified on part B of Schedule 5.12 hereto, to the extent that perfection of any Loan Party's pledge of or grant of security interests in the Equity Interests of such first-tier Foreign Subsidiary under the laws of any foreign jurisdiction applicable to such first-tier Foreign Subsidiary pursuant to Section 5.12 would result in a breach of applicable law or applicable corporate or managers' or directors' duties or  require a prior consent or approval from a Governmental Authority or a third party which has neither been obtained nor can reasonably be obtained;

(c)  each first-tier Foreign Subsidiary specified on part C of Schedule 5.12 hereto, to the extent that the Administrative Agent shall determine that the costs of perfecting any such pledge or security interest in such jurisdiction are excessive in relation to the benefits provided to the Lenders therefrom;

(d)   subsequent to the Accommodation Effective Date, any first-tier Foreign Subsidiary, including any first-tier Foreign Subsidiary specified on part A of Schedule 5.12, with (i) EBITDAR attributable to such first-tier Foreign Subsidiary or (ii) EBITDAR attributable to any direct or indirect Subsidiary of such first-tier Foreign Subsidiary, in each case, on a standalone basis for the rolling twelve (12) month period ending on the last day of any fiscal quarter, of not more than $5,000,000;

(e)   any first-tier Foreign Subsidiary created or acquired after the Accommodation Effective Date, if perfection of such Loan Party's pledge of or grant of security interests in, the Equity Interests of such first-tier Foreign Subsidiary under the laws of any foreign jurisdiction applicable to such first-tier Foreign Subsidiary pursuant to Section 5.12 would (i) result in a breach of applicable law or applicable corporate or managers' or directors' duties, (ii) require a prior consent or approval from a Governmental Authority or a third party which has neither been obtained nor can reasonably be obtained, or (iii) result in excessive costs incurred in relation to the benefits provided to the Lenders thereby as determined by the Administrative Agent to the extent that such jurisdiction (and the laws thereof) applicable to the perfection of the pledge of the Equity Interests of such first-tier Foreign Subsidiary is specified in part C of Schedule 5.12; and

(f)  each first-tier Foreign Subsidiary that is a joint venture specified on part D of Schedule 5.12 on the Accommodation Effective Date, and subsequent to the Accommodation Effective Date, any first-tier Foreign Subsidiary created or acquired after the Accommodation Effective Date that is a joint venture.

"Foreign EBITDAR" shall mean EBITDAR less Domestic EBITDAR.

"Full Control Deposit Account" shall mean any deposit account of the Borrower or any Guarantor subject to an agreement, in form and substance reasonably satisfactory to the Administrative Agent, between any Loan Party and the Administrative Agent, providing for the exclusive collection and control by

the Administrative Agent of all deposits and balances held in such deposit account.

"Full Control Securities Account" shall mean any securities account of the Borrower or any Guarantor subject to an agreement, in form and substance reasonably satisfactory to the Administrative Agent, between any Loan Party and the Administrative Agent, providing for the exclusive collection and control by the Administrative Agent of all assets held in such securities account.

"Fully Pledged Foreign Subsidiary" shall mean each first-tier Foreign Subsidiary, of which 100% of the Equity Interests of such first-tier Foreign Subsidiary owned by the applicable Loan Party shall have been pledged to the Administrative Agent for the benefit of the Lenders, and the pledge of, or grant of security interest in, such Equity Interests shall have been perfected pursuant to Section 5.12.

"GM-Delphi Agreement Second Amendment" shall mean the second amendment to the GM-Delphi Agreement, dated as of [_____], 2008.

"GM-Delphi Pull-Forward Agreement" shall mean the Temporary Accelerated Payments Agreement dated as of [_____], 2008 by and between the Borrower and GM.

"GM Pull-Forward Payments" shall have the meaning set forth in the GM-Delphi Pull-Forward Agreement.

"Other Event of Default" shall mean any Event of Default, other than a Specified Default occurring and continuing during the Accommodation Period.

"Pari Secured Hedging Obligations" shall have the meaning specified in Section 6.01(xvi)(A).

"Segregated Tranche C Interest Account" shall mean any Full Control Deposit Account or Full Control Securities Account pledged to the Administrative Agent for the benefit of the Lenders into which interest pursuant to and in accordance with Section 2.31 shall be deposited by the Borrower from time to time, and over which the Administrative Agent shall have sole and exclusive control, including the exclusive right of withdrawal.

"Specified Default" shall have the meaning given such term in the Accommodation Agreement.

"Swap Exposure" shall mean, in respect of any Hedging Agreement relating to Indebtedness permitted by Section 6.03(x), after taking into account the effect of any legally enforceable netting agreement relating to such Hedging Agreement, (a) for any date on or after the date such Hedging Agreement has been closed out and termination value(s) determined in accordance therewith, such termination value(s), and (b) for any date prior to the date referenced in

13

clause (a), the amount(s) determined as the mark-to-market value(s) on a weekly basis for such Hedging Agreement, as determined based upon the applicable forward rate (discounted at a customary LIBO rate consistent with past practice) obtained from Reuters or another nationally-recognized service.

6.    **Certain Amended Definitions to Credit Agreement**.  (a)  Section 1.01 of the Credit Agreement is hereby amended by amending and restating the following definitions in their entirety as follows:

"Alternate Base Rate" shall mean, for any day, a rate per annum equal to the greater of (a) the Prime Rate in effect on such day, (b) the Federal Funds Effective Rate in effect on such day plus 1/2 of 1%, and (c) the Adjusted LIBO Rate for a one month Interest Period on such day plus 1%, subject to the proviso set forth in Section 2.08(a) with respect to any Tranche A Loan ABR Borrowing, Tranche B Loan ABR Borrowing or any Tranche C Loan ABR Borrowing.  Any change in the Alternate Base Rate due to a change in the Prime Rate or, the Federal Funds Effective Rate or the Adjusted LIBO Rate shall be effective from and including the effective date of such change in the Prime Rate or, the Federal Funds Effective Rate or the Adjusted LIBO Rate, respectively.

"Approval Order" shall have the meaning given such term in Section 4.01(b) of the Original Credit Agreement, as supplemented from time to time thereafter, including by the Fourth Amendment Approval Order, the Supplemental Approval Order, and the Accommodation Agreement Order.

"Asset Sale" shall mean (i) any reasonably identifiable Disposition of property or series of related reasonably identifiable Dispositions of property by the Borrower or any Guarantor (excluding any such Disposition permitted by clauses (ii), (iii), (v), (vii), (viii) and (ix) of Section 6.10) and (ii) any Disposition described on Schedule 6.10.

"Fees" shall collectively mean the Tranche A Commitment Fee, the Tranche C Commitment Fee, Letter of Credit Fees, fees referred to in Section 2.21 of the Original Credit Agreement, fees referred to in Section 35 of the Accommodation Agreement and other fees referred to in Sections 2.21, 2.22, 2.23, 4.01 and 4.03.

"Global EBITDAR" shall mean, for any period, all as determined in accordance with GAAP, the consolidated net income (or net loss) of the Global Entities for such period, plus (a) to the extent deducted in the calculation of consolidated net income, without duplication, the sum of (i) income tax expense, (ii) interest expense, (iii) amortization or write-off of debt discount and debt issuance costs and commissions, discounts and other fees and charges associated with Indebtedness (including the Loans), (iv) depreciation and amortization expense, (v) amortization of intangibles (including, but not limited to, goodwill) and organization costs, (vi) any extraordinary, unusual or non-recurring non-cash expenses or losses (other than (1) Restructuring Costs and (2) all expenses arising

14

out of, or in relation to, the U.S. Securities and Exchange Commission multidistrict litigation settlement of the Borrower or any of the Guarantors, recorded for accounting purposes in the fiscal quarters ended June 30, 2007 and September 30, 2007) and one-time write-downs of assets, (vii) any expenses accounted by the Borrower or any of it Subsidiaries in such period for post-retirement or post-employment benefits under FAS 106 or FAS 112, (viii) pension expenses attributable to Delphi's hourly retirement programs, (ix) any Restructuring Costs of the Borrower and its Subsidiaries accounted for in such period, (x) professional fees and other "Chapter 11 expenses" (or "administrative costs reflecting Chapter 11 expenses") attributable to the Borrower and the Guarantors for such period as shown on the Borrower's consolidated statement of income for such period, (xi) the cumulative effect of any change in accounting principles, and (xii) any non-cash losses under FAS 52 due to foreign currency fluctuations on intercompany loans or notes, <u>minus</u> (b) to the extent included in the calculation of consolidated net income, the sum of (1) interest income and (2) any extraordinary, unusual or non-recurring gains, all as determined on a consolidated basis, <u>minus</u> (c) any cash payments made during such period in respect of expenses described in clauses (vii) and (viii) above (solely in the case of such clause (viii), to the extent such cash payments are not reimbursed or reimbursable by GM), <u>minus</u> (d) income from Delphi's hourly retirement programs, <u>minus</u> (e) any non-cash gains under FAS 52 due to foreign currency fluctuations on intercompany loans or notes.

"<u>GM Commitment</u>" shall mean the "Tranche B Commitment" as defined in the GM-Delphi Agreement.

"<u>GM-Delphi Agreement</u>" shall mean the agreement dated as of May 9, 2008 among the Borrower, the Guarantors and General Motors Corporation, as amended by Amendment No. 1, dated as of October 6, 2008, and Amendment No. 2, dated as of [          ], 2008.

"<u>GM Scheduled Termination Date</u>" shall mean the earlier of (a) June 30, 2009 and (b) the date on which a Reorganization Plan becomes effective.

"<u>Guarantor</u>" shall mean each Subsidiary of the Borrower which is a signatory to this Agreement and each other Subsidiary of the Borrower that is required to become a Guarantor under Section 5.11.

"<u>LIBO Rate</u>" shall mean, with respect to any Eurodollar Borrowing for any Interest Period, or any ABR Borrowing for any day, the rate equal to the British Bankers Association LIBOR Rate appearing on Telerate Successor Page 3750, as published by Reuters (or other commercially available source providing quotations of BBA LIBOR as designated by the Administrative Agent from time to time) at approximately 11:00 a.m., London time, (A) in the case of Eurodollar Borrowings, two Business Days prior to the commencement of such Interest Period and (B) in the case of ABR Borrowings, on such day (or if such day is not a Business Day, the immediately preceding Business Day), as the rate for dollar

deposits with a maturity comparable to such Interest Period (or in the case of ABR Borrowings, for a one-month Interest Period). In the event that such rate is not available at such time for any reason, then the "LIBO Rate" with respect to such Eurodollar Borrowing for such Interest Period or ABR Borrowing for such day shall be the rate at which dollar deposits of $5,000,000 and for a maturity comparable to such Interest Period (or in the case of ABR Borrowings, for a one-month Interest Period) are offered by the principal London office of the Administrative Agent in immediately available funds in the London interbank market at approximately 11:00 a.m., London time, (X) in the case of Eurodollar Borrowings, two Business Days prior to the commencement of such Interest Period and (Y) in the case of ABR Borrowings, on such day (or if such day is not a Business Day, the immediately preceding Business Day)."

"Loan Documents" shall mean this Agreement, the Accommodation Agreement, the Letters of Credit, the Security and Pledge Agreement, and any other instrument or agreement executed and delivered by the Borrower or any Guarantor to the Administrative Agent or any Lender in connection herewith.

"Security and Pledge Agreement" shall mean the Amended and Restated Security and Pledge Agreement dated as of [_____], 2008 by and among the Loan Parties and the Administrative Agent.

(b)  The defined term "Carve-Out" is hereby amended by deleting each reference to the term "Event of Default" and replacing it with the term "Other Event of Default".

(c)  The defined term "Eligible Inventory" is hereby amended by deleting the reference to the word "(m)" and replacing it with the word "(l)".

(d) (i)  Clause (ii) of the defined term "Eligible Receivables" is hereby amended by deleting the reference to the word "(t)" and replacing it with the word "(r)".

(ii)    Clause (n) of the defined term "Eligible Receivables" is hereby amended by deleting subpart (y) therein and adding the following clause as subpart (y):

"(y) otherwise may not be currently exercised pursuant to the terms of the Approval Order, the Fourth Amendment Approval Order or the Accommodation Agreement Order); or"

(e)  The defined term "GM Obligation Satisfaction Date" set forth in Section 1.01 of the Credit Agreement is hereby deleted in its entirety and any and all references to "GM Obligation Satisfaction Date" are hereby deleted and replaced with the defined term "GM Scheduled Termination Date".

(f)  The defined term "GM Permitted Commitment Reduction" set forth in Section 1.01 of the Credit Agreement is hereby deleted in its entirety.

16

(g)  The defined term "<u>GM Permitted Prepayment</u>" set forth in Section 1.01 of the Credit Agreement is hereby amended by deleting the reference to "the date hereof" and replacing it with the phrase "the Accommodation Effective Date".

(h) The defined term "<u>Material Adverse Effect</u>" is hereby amended by deleting the reference to "May 2, 2008" in clause (y) of the proviso thereto and replacing it with "November 17, 2008".

(i)  The defined term "<u>Net Cash Proceeds</u>" is hereby amended by deleting the proviso thereto in its entirety and replacing it with the following:

"<u>provided</u> that, from and after the Accommodation Effective Date, in the case of any Recovery Event in respect of which the Net Cash Proceeds do not exceed $2,500,000, such Net Cash Proceeds shall not be deemed to constitute "Net Cash Proceeds" for purposes of Section 2.13 until the aggregate amount of all such excluded Net Cash Proceeds is at least $10,000,000."

7.    **Amendment of Section 2.03(i) of the Credit Agreement.** Section 2.03(i) of the Credit Agreement is hereby amended by deleting the reference to "Section 2.22" and replacing with the reference "Section 2.23"

8.    **Amendment of Section 2.06(e) of the Credit Agreement.** Section 2.06(e) of the Credit Agreement is hereby amended and restated to read as follows:

"If the Borrower fails to deliver a timely Interest Election Request with respect to a Eurodollar Borrowing prior to the end of the Interest Period applicable thereto, then, unless such Borrowing is repaid as provided herein, at the end of such Interest Period such Borrowing shall be continued as a Eurodollar Borrowing having an Interest Period of one month.  Notwithstanding any contrary provision hereof, (i) no outstanding Borrowing may be converted to or continued as a Eurodollar Borrowing with an Interest Period that ends after the Accommodation Effective Date, and (ii) on and after the Accommodation Effective Date, each Eurodollar Borrowing shall be converted to an ABR Borrowing at the end of the Interest Period applicable thereto."

9.    **Amendment of Section 2.08 of the Credit Agreement**.    Sections 2.08(a) and 2.08(b) of the Credit Agreement are hereby amended by adding a reference to "Tranche A Loan," immediately prior to each reference to "Tranche B Loan" in each instance such reference is made in the provisos at the end of each such subsection.

10.    **Amendment of Section 2.13 of the Credit Agreement**.    Section 2.13 of the Credit Agreement is hereby amended by adding Section 2.13(d) to read as follows:

"(d)   On the Accommodation Effective Date, the Total Tranche A Commitment shall automatically terminate, and the Borrower hereby

17

acknowledges that no more Loans shall be made or Letters of Credit issued after such date."

11.    **Amendment of Section 2.13(a) of the Credit Agreement**.  Section 2.13(a) of the Credit Agreement is hereby amended by deleting the phrase "Lesser Amount" and replacing it with "Maximum Amount."

12.    **Amendment of Section 2.13(b) of the Credit Agreement**.  Section 2.13(b) of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

> "If on any date the Borrower or any Guarantor shall receive Net Cash Proceeds from (x) any Recovery Event (except to the extent that Net Cash Proceeds received in connection with such Recovery Event are applied within 180 days of receipt thereof to the replacement or repair of the assets giving rise thereto), and the aggregate amount of all Net Cash Proceeds from Asset Sales and Recovery Events received by the Borrower and the Guarantors from Asset Sales and Recovery Events occurring on and after the Closing Date exceeds $125,000,000, (y) any Asset Sale (other than an Asset Sale resulting from a Disposition described on Schedule 6.10) and the aggregate amount of all Net Cash Proceeds from such Asset Sales received by the Borrower and the Guarantors from such Asset Sales occurring on and after the Accommodation Effective Date exceeds $15,000,000, or (z) any Asset Sale resulting from a Disposition described on Schedule 6.10, then, in each case, an amount equal to 100% of such excess Net Cash Proceeds received on such date (less any Net Cash Proceeds applied to repay the Obligations or Cash Collateralize Letters of Credit as a result of a reduction in the Borrowing Base in connection with such Asset Sale or Recovery Event) shall be promptly, and in any event, within 10 days after such date, (i) <u>first</u>, applied to the prepayment of the Tranche B Loan, (ii) <u>second</u>, applied to the prepayment of the Tranche A Loans (with a corresponding permanent reduction of the Total Tranche A Commitments) and (iii) <u>third</u>, solely on and after the First-Priority Tranches Payout Date has occurred and to the extent permitted by the Approval Order, applied to the prepayment of the Tranche C Loan."

13.    **Amendments to Section 2.21 of the Credit Agreement**.  Section 2.21 of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

> "**Certain Fees**. The Borrower shall pay the fees set forth in that certain Fee Letter among, JPMorgan, JPMCB and the Borrower dated as of November 5, 2008."

14.    **Amendment of Section 2.23 of the Credit Agreement.**    Section 2.23 of the Credit Agreement is hereby amended by deleting the word "4.00%" and replacing it with "6.00%".

15.    **Amendment of Section 2.25(a) of the Credit Agreement**.  Section 2.25(a) of the Credit Agreement is hereby amended by amending and restating clauses (x), (y) and (z) of the proviso to read as follows:

>"(x) the Borrower and the Guarantors shall not be required to pledge to the Administrative Agent any voting capital stock or interests of its indirect Foreign Subsidiaries if, in the good faith judgment of the Borrower, adverse tax consequences would result to the Borrower; (y) no portion of the Carve-Out may be utilized to fund prosecution or assertion of any claims against the Administrative Agent, the Lenders or the Issuing Lenders and (z) following the Accommodation Effective Date, amounts in the Letter of Credit Account and amounts in the Segregated Tranche C Interest Account shall not be subject to the Carve-Out."

16.    **Addition of Section 2.31 to the Credit Agreement**.  Section 2.31 is hereby added to the Credit Agreement to read as follows:

>"SECTION 2.31    **Segregated Tranche C Interest Account**.    The Borrower shall not be entitled to transfer or otherwise access any funds on deposit or investments held in any Segregated Tranche C Interest Account. Investments may be selected by the Borrower but shall consist only of Permitted Investments of the type set forth in clauses (a), (b) or (c) of the definition of Permitted Investments and shall be at the Borrower's risk and reasonable expense.  Interest or profits, if any, on such investments shall accumulate in such account.  The Administrative Agent shall not transfer any funds on deposit in any Segregated Tranche C Interest Account (except to another Segregated Tranche C Interest Account) prior to the earlier to occur of the First-Priority Tranches Payout Date and the date that is six months after the Remedies Exercise Date (the earlier to occur, the "Tranche C Interest Payment Date"). On the Tranche C Interest Payment Date, the Administrative Agent shall apply all funds then on deposit in the Segregated Tranche C Interest Accounts to the Obligations in accordance with the applicable priorities set forth in the Loan Documents.  For purposes hereof, the term "Remedies Exercise Date" shall mean the date, which date shall be determined by the Administrative Agent in its sole and absolute discretion, on which the Administrative Agent shall commence the exercise of any remedies pursuant to Section 15 of the Security and Pledge Agreement or the Borrower shall commence any action to sell all or substantially all of its and its Subsidiaries' assets (excluding, for the avoidance of doubt, any Dispositions described on Schedule 6.10)."

17.    **Amendments to Section 3 of the Credit Agreement**.  (a) Section 3.01 of the Credit Agreement is hereby amended by deleting the references to "the Fourth Amendment Approval Order, and, in the case of the Borrower's obligations with respect to the Subsequent Tranche C Loan and the Total Subsequent Tranche C Fees, the Supplemental Approval Order" and replacing them with "the Accommodation Agreement Order".

(b)     Section 3.02 of the Credit Agreement is hereby amended by deleting the reference to "the Fourth Amendment Approval Order, and, in the case of the Borrower's obligations with respect to the Subsequent Tranche C Loan and the Total Subsequent Tranche C Fees, the Supplemental Approval Order" and replacing it with "the Accommodation Agreement Order".

(c)     Section 3.04 of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

"**Financial Statements**. The Borrower has furnished the Lenders with copies of (a) the audited consolidated financial statements of the Global Entities for the fiscal year ended December 31, 2007, and, (b) the unaudited consolidated financial statements of the Global Entities for the fiscal quarter and six month period ended June 30, 2008. Such financial statements present fairly in all material respects, in accordance with GAAP, the financial condition and results of operations of the Global Entities on a consolidated basis as of such date and for such period; such balance sheets and the notes thereto disclose all liabilities, direct or contingent, of the Global Entities as of the date thereof required to be disclosed by GAAP; such financial statements were prepared in a manner consistent with GAAP (subject, in the case of the financials described in clause (b) above, to normal year-end adjustments and the absence of footnotes). Since the audited financial statements for the fiscal year ended December 31, 2007 delivered to the Lenders prior to the Effective Date, no development or event has occurred that has had or is reasonably expected to have a Material Adverse Effect."

(d)     Section 3.05 of the Credit Agreement is hereby amended by deleting the phrase "Effective Date" and replacing it with the phrase "Accommodation Effective Date".

(e)     Section 3.12 of the Credit Agreement of the Credit Agreement is hereby amended by deleting the first sentence thereof and replacing it with the following sentence:

"On the Accommodation Effective Date, the Accommodation Approval Order shall have been entered, and shall not have been reversed, stayed, vacated or, without the Administrative Agent's consent, amended, supplemented or modified."

18.     **Amendments to Section 5.01 of the Credit Agreement**.  Effective on and after December 1, 2008, Sections 5.01(c) through (e) of the Credit Agreement are hereby amended by amending and restating such sections to read as follows:

"(c)     as soon as practicable, but in no event later than 30 days after the end of each fiscal month of the Borrower thereafter, (i) monthly unaudited consolidated balance sheets of the Domestic Entities and the Global Entities and related consolidated statements of income and consolidated cash flows of such entities for the prior fiscal month (in the case of

20

Domestic Entities, in a form consistent with the form provided to the lenders under the Existing DIP Credit Agreement prior to the Closing Date), the then elapsed portion of the fiscal year and on a rolling twelve (12) fiscal month period, which balance sheets shall also include a line item on the Indebtedness of Foreign Subsidiaries as at the end of such fiscal month, each certified by a Financial Officer of the Borrower, (ii) a monthly report, consistent with the form required to be filed with the Bankruptcy Court, detailing professional fees and expenses that have been billed and paid or billed but unpaid to date and the accumulated "hold-back" of professional fees and expenses to date and (iii) a report with supporting documentation, detailing the then outstanding Swap Exposure on the Hedging Agreements of the Domestic Entities and the Global Entities;

(d)      as soon as practicable, but (i) in no event later than 30 days after the end of each fiscal month of the Borrower, monthly financial projections and variance reports of the Domestic Entities and the Global Entities for the period from the date of such projections through the first date set forth in clause (i) of the definition of Accommodation Period in the Accommodation Agreement in a form consistent with the form of projections provided to the Administrative Agent prior to the Closing Date, such projections to be updated and delivered to the Administrative Agent at such times as such projections are updated by the Borrower, (ii) in no event later than 30 days after the end of each fiscal month of the Borrower, reports on Global EBITDAR, Foreign EBITDAR and Domestic EBITDAR as at the end of such fiscal month and on a rolling twelve (12) fiscal month period (which report for Global EBITDAR shall also include a reconciliation of Global EBITDAR to EBITDAR, Foreign EBITDAR and Domestic EBITDAR), and (iii) in no event later than 10 Business Days after the end of each fiscal month of the Borrower, a statement of projected cash receipts and cash disbursements for the Domestic Entities for each week in the period of thirteen continuous weeks commencing with the immediately following week, in a form consistent with the form provided to the Administrative Agent prior to the Closing Date, and in each case of new or updated projections, monthly Global EBITDAR, Domestic EBITDAR and Foreign EBITDAR reports furnished pursuant to clauses (i) and (ii) as applicable and any statements of projected cash receipts and cash disbursements pursuant to clause (iii), certified by a Financial Officer of the Borrower (it being understood that such certification in respect of projections shall be consistent with the representation and warranty as to projections in Section 3.03);

(e)      concurrently with any delivery of financial statements under clauses (a), (b) and (c) above, a certificate of the Financial Officer of the Borrower certifying such statements (i) certifying that no Event of Default or event which upon notice or lapse of time or both would constitute an

Event of Default has occurred, or, if such an Event of Default or event has occurred, specifying the nature and extent thereof and any corrective action taken or proposed to be taken with respect thereto and (ii) setting forth computations in reasonable detail satisfactory to the Administrative Agent demonstrating compliance with the provisions of Section 6.04 (including a calculation of the impact on the last twelve months of Global EBITDAR of the GM Restructuring Agreement and GM Global Settlement Agreement executed on September 12, 2008);"

19.     **Amendment of Section 5.10 of the Credit Agreement.**    Section 5.10 of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

"Concurrently with (i) a delivery of an Advance Request (as defined in the GM-Delphi Agreement) and an Availability Certificate (as defined in the GM-Delphi Agreement) to GM under Section 4.03(a) of the GM-Delphi Agreement and (ii) any notice to GM under Section 3 of the GM-Delphi Pull-Forward Agreement, the Borrower shall deliver a copy of such Advance Request and such Availability Certificate or such notice, as applicable, to the Administrative Agent."

20.     **Amendment of Section 5.08 of the Credit Agreement**.    Section 5.08 of the Credit Agreement is hereby amended by addition of the following sentence immediately at the end of such section to read as follows:

"Each Borrowing Base Certificate required to be delivered pursuant to clauses (a) and (b) above shall contain a reconciliation of the calculation of the Borrowing Base to the calculation of the Accommodation Period Borrowing Base as set forth in the Accommodation Agreement."

21.     **Addition of Sections 5.12 and 5.13 to the Credit Agreement**.    Sections 5.12 and 5.13 are hereby added to the Credit Agreement to read as follows:

"SECTION 5.12    **Foreign Equity Interests**. By no later than thirty (30) days after the Accommodation Effective Date, in the case of any first-tier Foreign Subsidiary in existence on the Accommodation Effective Date, and by no later than thirty (30) days after the date of the acquisition or creation of any first-tier Foreign Subsidiary acquired or created after the Accommodation Effective Date,  pledge or cause to be pledged to the Administrative Agent for the benefit of the Lenders, all outstanding Equity Interests of such first-tier Foreign Subsidiary pursuant to such security documents as the Administrative Agent shall reasonably request, and deliver or cause to be delivered to the Administrative Agent (x) all certificates or other instruments representing such Equity Interests, together with stock powers or other instruments of transfer with respect thereto endorsed in blank, if, pursuant to applicable law, the delivery to the Administrative Agent of such certificates and instruments is necessary or desirable in order to create or perfect the Liens intended to be created on

22

such Equity Interests pursuant to the Security and Pledge Agreement and any other applicable security documents, (y) such legal opinions in form and substance and of such counsel reasonably satisfactory to the Administrative Agent in each case with respect to the validity, effectiveness and, to the extent customary, the priority, of the security interests contemplated by the foregoing stock pledges, and (z) an updated Schedule 5 to the Security and Pledge Agreement (and upon the delivery of such updated Schedule 5 to the Administrative Agent, the Security and Pledge Agreement shall be deemed to be amended to incorporate such updated Schedule 5 without further notice or action by the parties hereto or thereto); provided that no Loan Party shall be required to perfect its pledge of, or the grant of a security interest in, the Equity Interests of any Excluded Foreign Subsidiary under the laws of any foreign jurisdiction applicable to any such first-tier Foreign Subsidiary. By no later than 30 days after the Accommodation Effective Date or 30 days after the date of the acquisition or creation of any first-tier Foreign Subsidiary acquired or created  after the Accommodation Effective Date as applicable, or in each case such longer period of time as may be agreed to by the Administrative Agent in accordance with the terms hereof, the Borrower shall deliver to the Administrative Agent an updated Schedule 5.12 to the Credit Agreement (and upon the delivery of such updated Schedule 5.12 to the Administrative Agent, the Credit Agreement shall be deemed to be amended to incorporate such updated Schedule 5.12 without further notice or action by the parties hereto).  The Administrative Agent may grant extensions of time for the creation and perfection of security interests pursuant to this Section 5.12 where it determines in its discretion (not acting unreasonably), in consultation with the Borrower, that such action cannot be accomplished, within the time required by this Section 5.12, to the extent that the Borrower is diligently pursuing the same, it being acknowledged that additional time may be required to satisfy applicable foreign expiration periods or other foreign legal restrictions relating to perfection requirements with respect to the foregoing stock pledges.

SECTION 5.13  **Lenders Meeting.**  By no later than five (5) Business Days after the delivery of such financial statements and reports required pursuant to Section 5.01(c) and (d), host a meeting of the Lenders to provide the Lenders with an update on the matters set forth in Section 5.01, the Cases, the Reorganization Plan and the bankruptcy exit process."

22.    **Amendment of Section 6.01 of the Credit Agreement.**    (a)    Section 6.01(xiv) of the Credit Agreement is hereby amended by deleting the figure "$1,500,000,000" and replacing it with "$1,000,000,000 (which Liens shall not be permitted to secure Indebtedness in respect of Hedging Agreements)".

(b)    (i)  If and only if the Hedging Requirement shall have been satisfied as of the Accommodation Effective Date, Section 6.01(xvi) of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

"(xvi) (A) Liens securing Indebtedness in respect of Hedging Agreements, which Indebtedness is permitted by Section 6.03(x) (of which (I) up to $350,000,000 in aggregate amount of Swap Exposure of such Indebtedness so secured shall rank pari passu with the Liens created under the Loan Documents in favor of the Administrative Agent, the Tranche A Lenders and the Tranche B Lenders pursuant to Section 15 of the Security Agreement (such Indebtedness, "Pari Secured Hedging Obligations") and (II) an incremental amount of Indebtedness so secured in excess of the Pari Secured Hedging Obligations shall rank after the Liens created under the Loan Documents in favor of the Tranche C Lenders pursuant to Section 15 of the Security Agreement), and (B) Liens securing Indebtedness permitted by Section 6.03(viii), which Liens shall rank pari passu with the Liens created under the Loan Documents in favor of the Administrative Agent, the Tranche A Lenders and the Tranche B Lenders pursuant to Section 15 of the Security Agreement;"

(ii)  If and only if the Hedging Requirement shall not have been satisfied as of the Accommodation Effective Date, Section 6.01(xvi) of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

"(xvi) (A) Liens securing Indebtedness in respect of Hedging Agreements, which Indebtedness is permitted by Section 6.03(x) (of which (I) up to $150,000,000 in aggregate amount of Swap Exposure of such Indebtedness so secured shall rank pari passu with the Liens created under the Loan Documents in favor of the Administrative Agent, the Tranche A Lenders and the Tranche B Lenders pursuant to Section 15 of the Security Agreement (such Indebtedness, "Pari Secured Hedging Obligations") and (II) an incremental amount of Indebtedness so secured in excess of the Pari Secured Hedging Obligations shall rank after the Liens created under the Loan Documents in favor of the Tranche C Lenders pursuant to Section 15 of the Security Agreement), and (B) Liens securing Indebtedness permitted by Section 6.03(viii), which Liens shall rank pari passu with the Liens created under the Loan Documents in favor of the Administrative Agent, the Tranche A Lenders and the Tranche B Lenders pursuant to Section 15 of the Security Agreement;"

(c)        Section 6.01 of the Credit Agreement is hereby amended by renumbering clause (xxi) as clause (xxii) and adding new clause (xxi) to read as follows:

"(xxi) Liens on cash collateral in an aggregate amount of up to $135,000,000 securing Indebtedness permitted by Section 6.03(xiii), which Liens shall be permitted to be senior to the Liens created under the Loan Documents in favor of the Administrative Agent and the Lenders; and

23.    **Amendment of Section 6.02 of the Credit Agreement.**    (a)        Section 6.02(iii) of the Credit Agreement is hereby amended and restated to read as follows:

"(iii) any Foreign Subsidiary may merge or consolidate with any other Foreign Subsidiary, provided that (A) if either such Foreign Subsidiary is a Wholly-Owned Subsidiary, the surviving entity must be a Wholly-Owned Subsidiary, (B) if either such Foreign Subsidiary is a first-tier Foreign Subsidiary, the surviving entity must be a first-tier Foreign Subsidiary, (C) if either such Foreign Subsidiary is a Fully Pledged Foreign Subsidiary, the surviving entity must be a Fully Pledged Foreign Subsidiary, and (D) if the direct or indirect parent of such Foreign Subsidiary is a Fully Pledged Foreign Subsidiary, the surviving entity must be either a Fully Pledged Foreign Subsidiary or any of its direct or indirect Subsidiaries,"

(b)     Section 6.02(v) of the Credit Agreement is hereby amended and restated to read as follows:

"(v)     any Foreign Subsidiary may dispose of any or all of its assets to another Foreign Subsidiary; provided that (A) any such disposition by a Wholly-Owned Foreign Subsidiary must be to a Wholly-Owned Subsidiary, (B) any such disposition by a first-tier Foreign Subsidiary must be to a first-tier Foreign Subsidiary, (C) any such disposition by a Fully Pledged Foreign Subsidiary must be to a Fully Pledged Foreign Subsidiary; and (D) any such disposition by a Subsidiary whose direct or indirect parent is a Fully Pledged Foreign Subsidiary must be to either a Fully Pledged Subsidiary or any of its direct or indirect Subsidiaries;"

24.     **Amendments of Section 6.03 of the Credit Agreement.**   (a) Section 6.03(vi) of the Credit Agreement is hereby amended by (i) deleting the figure "$1,500,000,000" and replacing it with "$1,000,000,000 (which Indebtedness shall not include Swap Exposure in respect of Hedging Agreements, it being understood that, for the avoidance of doubt, the Loan Parties shall not permit any Foreign Subsidiary to incur any Swap Exposure)" and (ii) deleting the phrase "Foreign Receivables Financings, sale-leaseback transactions and Hedging Agreements" immediately prior to the end of the parenthetical in such clause (vi) and replacing it with the phrase "Foreign Receivables Financings and sale-leaseback transactions".

(b)     Section 6.03 of the Credit Agreement is hereby amended by renumbering clause (xiii) as clause (xiv) and adding a new clause (xiii) to read as follows:

"(xiii) Indebtedness incurred in the aggregate amount of up to $125,000,000 in respect of letters of credit that are issued to replace outstanding Letters of Credit on the Accommodation Effective Date;"

25.     **Amendment of Section 6.04 of the Credit Agreement**.   Section 6.04 of the Credit Agreement is hereby amended by deleting the figure "$675,000,000" set forth opposite "November 30, 2008" and replacing it with "$525,000,000".

26.    **Amendment of Section 6.05 of the Credit Agreement.**    (a) Section 6.05(i) of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

> "(i) amend, waive, modify or supplement any term of the GM-Delphi Agreement or the GM-Delphi Pull-Forward Agreement in a manner that (a) has the effect of restricting or reducing (i) the availability of Advances (as defined in the GM-Delphi Agreement) thereunder or (ii) the availability of the GM Pull-Forward Payments, (b) reduces or eliminates any restriction on set-off rights of GM set forth in Section 6.01 of the GM-Delphi Agreement, (c) modifies the last paragraph of Section 6.01 of the GM-Delphi Agreement and Section 3(b)(i) of the GM Pull-Forward Agreement, (d) amends Section 8.03 of the GM-Delphi Agreement, (e) has the effect of requiring any repayment or prepayment of Advances on any earlier date, or permits the accelerated payment terms to be otherwise extended, (f) adds or makes more restrictive any default or event of default thereunder, or (g) is otherwise materially adverse to the Lenders;"

(b) Section 6.05(iii) of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

> "(iii) voluntarily reduce any GM Commitment or the right to receive accelerated payment terms under the GM Pull-Forward Agreement; or"

27.    **Amendment of Section 6.09 of the Credit Agreement.**    (a) Section 6.09(iv) of the Credit Agreement is hereby amended and restated to read as follows:

> "(iv) advances and loans made by any Foreign Subsidiary to any other Foreign Subsidiary, provided that any advances and loans made by a Fully Pledged Foreign Subsidiary or its direct or indirect Subsidiaries to an Excluded Foreign Subsidiary or any of its direct or indirect Subsidiaries shall be in the ordinary course of business;"

(b) Section 6.09(vi) of the Credit Agreement is hereby amended and restated to read as follows:

> "(vi) investments by Wholly-Owned Foreign Subsidiaries in other Wholly-Owned Foreign Subsidiaries, provided that any investments made by a Fully Pledged Foreign Subsidiary or its direct or indirect Subsidiaries to an Excluded Foreign Subsidiary or any of its direct or indirect Subsidiaries shall be in the ordinary course of business;"

28.    **Amendment of Section 6.10 of the Credit Agreement.**    Section 6.10 of the Credit Agreement is hereby amended by adding the following proviso to clause (v):

> "provided that if the direct or indirect parent of such Foreign Subsidiary is a Fully Pledged Foreign Subsidiary, such issuance or contribution of capital stock of such Foreign Subsidiary shall be to (A) a Wholly-Owned

Subsidiary of the Borrower which is a Fully Pledged Foreign Subsidiary or its direct or indirect Subsidiaries or (B) a Wholly-Owned Guarantor;"

29.    **Amendment of Section 7.01 of the Credit Agreement**.  (a)  Section 7.01(j) of the Credit Agreement is hereby amended and restated as follows:

"an order of the Bankruptcy Court shall be entered (i) reversing, staying for a period in excess of 10 days, or vacating the Approval Order, the GM Approval Order or the GM Second Amendment Approval Order or (ii) without the written consent of the Administrative Agent and the Required Lenders, otherwise amending, supplementing or modifying the Approval Order, the GM Approval Order or the GM Second Amendment Approval Order in a manner that is reasonably determined by the Agents to be adverse to the Agents and the Lenders, or (iii) terminating the use of cash collateral by the Borrower or the Guarantors pursuant to the Approval Order (for purposes hereof, "GM Approval Order" shall mean "Approval Order" as defined under the GM-Delphi Agreement and "GM Second Amendment Approval Order" shall mean "Approval Order" as defined under the GM-Delphi Agreement Second Amendment); or"

(b)    Section 7.01(r) of the Credit Agreement is hereby amended and restated to read as follows:

"(r) any event or condition occurs that results in (i) the GM Commitment or the commitment of GM to provide GM Pull-Forward Payments under the GM Pull-Forward Agreement, in each case being terminated or reduced on a date prior to the GM Scheduled Termination Date, (ii) any Advances (as defined in the GM-Delphi Agreement) not being funded by GM due to the inability to satisfy any condition to such funding set forth under Section 4.03 of the GM-Delphi Agreement (a "Funding Default"), which Funding Default shall be continuing for more than 3 (three) Business Days from the proposed date of any such Advance, and during the continuance thereafter of such Funding Default, the Required Lenders shall have declared such Funding Default to be an Event of Default by written notice to the Borrower, (iii) any GM Obligations, other than GM Permitted Prepayments, becoming due prior to the GM Scheduled Termination Date or (iv) GM exercising any remedy to enforce any GM Obligations other than GM Permitted Prepayments, including seeking or receiving payment of any GM Obligations other than GM Permitted Prepayments; or"

(b)    Section 7.01(t) of the Credit Agreement is hereby amended by deleting the word "or" at the end of paragraph and replacing it with "; or".

(c)    Section 7.01(u) is hereby added to the Credit Agreement to read as follows:

"the GM Global Settlement Agreement or the GM Master Restructuring Agreement is repudiated in writing or terminated by any party thereto, or

27

either party shall fail to perform any obligation thereunder, which failure shall materially impair the rights of the Borrower thereunder, or"

(d)     Section 7.01(v) is hereby added to the Credit Agreement to read as follows:

"during the Accommodation Period, any judgment or order as to any Loan shall be rendered against any Global Entity and (i) any Person has succeeded in enforcing any aspect of such judgment or order, under or consistent with the provisions for the enforcement of judgments under Article 52 of the New York Civil Practice Law and Rules or any other similar state or federal statute, with respect to any property of the Borrower or the Guarantors or (ii) the enforcement of such judgment or order shall not have been stayed within five (5) Business Days after entry thereof; or"

(e)     Section 7.01(w) is hereby added to the Credit Agreement to read as follows:

"the Borrower or any Guarantor shall obtain approval of the Bankruptcy Court for any amendment, waiver, supplement or modification of the GM Global Settlement Agreement or the GM Master Restructuring Agreement that, taken as a whole, materially impairs the Borrower's or any Guarantor's rights under either such agreement or materially reduces the amount, or decelerates the timing of, any material payments under either such agreement, if the Administrative Agent, at the request of the Required Lenders, shall have provided written notice to the Borrower prior to the commencement of the hearing before the Bankruptcy Court to approve such transaction(s), that the Required Lenders object to the Borrower's or any Guarantor's, as applicable, entry into such amendment, waiver, supplement or modification,"

30.     **Amendment of Section 10.05(a)(1) of the Credit Agreement.**     Section 10.05(a)(i) of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

"(a)(i) The Borrower shall pay or reimburse: (A) all reasonable fees and reasonable out-of-pocket expenses of the Agents and the Arrangers/Bookrunners (including the reasonable fees, disbursements and other charges of Davis Polk & Wardwell ("DPW"), special counsel to the Administrative Agent and the Arrangers/Bookrunners, and any local counsel retained by DPW or the Administrative Agent or the Arrangers/Bookrunners) associated with the syndication of the credit facilities provided for herein, and the preparation, execution, delivery and administration of the Loan Documents and any amendments, modifications or waivers of the provisions hereof (whether or not the transactions contemplated hereby or thereby shall be consummated); (B) all reasonable fees and reasonable out-of-pocket expenses of internal and

third party consultants, accountants, financial advisors, investment banks and appraisers retained by the Administrative Agent (or its counsel), in each case to conduct such appraisals, evaluations and prepare such reports on such matters as the Administrative Agent (or its counsel) may reasonably request (including, without limitation, the fees and out-of pocket expenses of third party consultants, accountants and appraisers retained pursuant to Section 5.09), and any additional amounts that may be owed by the Borrower from time to time pursuant to any customary indemnification agreements executed in connection with such retentions, and (C) all fees and expenses of the Agents and the Arrangers/Bookrunners (including the fees, disbursements and other charges of DPW, special counsel to the Administrative Agent and the Arrangers/Bookrunners, and any local counsel retained by DPW or the Administrative Agent or the Arrangers/Bookrunners) and the Lenders in connection with the enforcement of the Loan Documents.  In connection with the foregoing, it is understood that, subject to customary exceptions for conflicts of interest, special counsel and local counsel, the Agents and the Arrangers/Bookrunners shall be represented by a single lead counsel."

31.    **Amendment of Section 10.14 of the Credit Agreement.**  Section 10.14 of the Credit Agreement is hereby amended by amending and restating such section to read as follows:

"**Prior Agreements.** This Agreement and the Accommodation Agreement represent the entire agreement of the parties with regard to the subject matter hereof and the terms of any letters and other documentation entered into between the Borrower or a Guarantor and any Lender or the Administrative Agent prior to the effectiveness of this Agreement which relate to Loans to be made hereunder shall be replaced by the terms of this Agreement and the Accommodation Agreement (except as otherwise expressly provided in the Commitment Letter, the fee letters referred to therein and in Section 10.13, the Fee Letter referenced in Section 2.21 and the Fee Letter referenced in Section 35 of the Accommodation Agreement)."

32.    **Amendments to Security and Pledge Agreement**. (a) The Security and Pledge Agreement is hereby amended and restated by inserting each of the provisions which appear with computerized underscoring and by deleting each of the provisions which appear with computerized strike-through in the document annexed hereto as <u>Exhibit A</u> (the Security and Pledge Agreement as so amended and restated, the "<u>Amended and Restated Security and Pledge Agreement</u>").

33.    **Addition and Updating of Schedules to the Credit Agreement and Schedules to the Security and Pledge Agreement**.  (a) The Credit Agreement is hereby amended by adding the document annexed hereto as <u>Annex 2</u> as Schedule 5.12 to the Credit Agreement.

(b)    Each of Schedule 3.05 and Schedule 6.10 of the Credit Agreement and Schedules 1, 2, 3, 4, 5 and 6 of the Security and Pledge Agreement is hereby replaced in its respective

entirety by Schedule 3.05 and Schedule 6.10 of the Credit Agreement and Schedules 1, 2, 3, 4, 5, 6 and 7, attached as <u>Annexes 3 through 9</u> respectively hereto.

34.    **Representation and Warranty**.    The Borrower and the Guarantors hereby represent and warrant that (i) all representations and warranties in the Credit Agreement and the other Loan Documents are true and correct in all material respects on and as of the Accommodation Effective Date except to the extent such representations and warranties expressly relate to an earlier date and (ii) after giving effect to the amendment set forth in Section 25 above as if such amendment had been in effect on November 30, 2008, no Event of Default has occurred and is continuing on the date hereof.

35.    **Conditions to Effectiveness**.    This Accommodation Agreement, the amendments to the Credit Agreement contained herein, and the Amended and Restated Security and Pledge Agreement shall become effective in accordance with their terms on the date (the "<u>Accommodation Effective Date</u>") on which each of the following shall have occurred and the Administrative Agent shall have received evidence reasonably satisfactory to it of such occurrence:

(i)    this Accommodation Agreement shall have been executed by the Borrower, the Guarantors and the Required Lenders;

(ii)    the Administrative Agent shall have received such documents and certificates as the Administrative Agent or its counsel may reasonably request relating to the organization, existence and good standing of each of the Borrower and the Guarantors, the authorization of the transactions under the Loan Documents and any other legal matters relating to each of the Borrower and the Guarantors, the Loan Documents or the transactions contemplated under the Loan Documents, all in form and substance satisfactory to the Administrative Agent and its counsel;

(iii)    the Administrative Agent shall have received the favorable written opinion of (A) Shearman & Sterling, LLP, counsel to the Loan Parties and (B) in-house counsel to the Borrower, in each case, dated the Accommodation Effective Date and in form and substance reasonably satisfactory to the Administrative Agent and its counsel;

(iv)    the Bankruptcy Court shall have entered, on or before December 4, 2008, one or more orders reasonably satisfactory in form and substance to the Administrative Agent (I) authorizing (A) the Accommodation Agreement and the amendment of each Existing Agreement as set forth herein and (B) the payment by the Borrower to the Administrative Agent of all fees referred to herein or in that certain Fee Letter dated as of November 5, 2008, and (II) providing for the waiver of certain setoff rights, liens and claims by GM substantially as set forth in paragraph 10 of the proposed order exhibited to the motion to approve this Accommodation Agreement, filed with the Bankruptcy Court on November 7, 2008, and such order or orders shall not have been reversed, stayed or vacated;

(v)      an amendment to the GM-Delphi Agreement that is in form and substance satisfactory to each Participant Lender (the "GM-Delphi Agreement Second Amendment") shall have become effective pursuant to the terms thereof;

(vi)      the Bankruptcy Court shall have entered, on or before December 4, 2008, an order reasonably satisfactory in form and substance to the Administrative Agent authorizing the GM-Delphi Agreement Second Amendment, and such order shall not have been reversed, stayed or vacated;

(vii)      the GM-Delphi Pull-Forward Agreement, in form and substance satisfactory to each Participant Lender, shall have become effective pursuant to the terms thereof;

(viii)      the Administrative Agent shall have received a fully executed copy of the GSA Side Letter, which shall have become effective pursuant to the terms thereof;

(ix)      the Borrower shall have executed and delivered a letter of credit reimbursement agreement in form and substance satisfactory to the Issuing Lender;

(x)      the Administrative Agent shall have received an amendment fee (an "Amendment Fee") for the account of each Lender that has executed and delivered a signature page hereto to the Administrative Agent no later than 5:00 p.m. (New York City time) on November 26, 2008 in an amount equal to 200 basis points of the Tranche A Commitments, Tranche B Loans and Tranche C Loans of each Participant Lender as of such date;

(xi)      the Administrative Agent shall have received payment in cash in full of any fees owing to the Administrative Agent or any other person pursuant to, or referenced in, that certain Fee Letter dated as of November 5, 2008;

(xii)      the aggregate outstanding principal amount of Tranche A Loans shall not exceed, on the Accommodation Effective Date, $377,000,000;

(xiii)      immediately prior to the effectiveness of this Accommodation Agreement, but after giving effect to the amendment set forth in Section 25 above as if such amendment had been in effect on November 30, 2008, no Event of Default shall have occurred and be continuing;

(xiv)      the Borrower shall have delivered to the Administrative Agent a Hedging Certification; and

(xv)      the Borrower shall have paid any accrued but unpaid interest and Fees owing to the Lenders and the Administrative Agent as of the Accommodation Effective Date.

36.    **Release**.  To the fullest extent permitted by applicable law, in consideration of the Agents' and the Participant Lenders' execution of this Accommodation Agreement, the Borrower and the Guarantors each, on behalf of itself and each of its successors and assigns (including, without limitation, any receiver or trustee, collectively, the "Releasors"), does hereby forever release, discharge and acquit the Agents, each Participant Lender and each of their respective parents, subsidiaries and affiliate corporations or partnerships, and their respective officers, directors, partners, trustees, shareholders, agents, attorneys and employees, and their respective successors, heirs and assigns, in the case of each of the foregoing solely in their capacities as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, rights, responsibilities, disputes, causes of action (whether at law or equity), indebtedness and obligations (collectively, "Claims"), of every type, kind, nature, description or character, and irrespective of how, why or by reason of what facts, whether such Claims have heretofore arisen, are now existing or hereafter arise, or which could, might, or may be claimed to exist, of whatever kind or name, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, each as though fully set forth herein at length, which in any way arise out of, are connected with or in any way relate to actions or omissions which occurred on or prior to the date hereof with respect to the Obligations, this Accommodation Agreement, the Credit Agreement or any other Loan Document.  This Section 36 shall survive (i) the expiration or termination of the Accommodation Period and of this Accommodation Agreement and (ii) the termination of the Credit Agreement, the payment in full of all Obligations and the termination of all Commitments.

37.    **Assignments.**  Each Participant Lender hereby agrees not to assign or otherwise transfer, during the Accommodation Period, all or a portion of its rights and obligations under the Credit Agreement (including all or a portion of its Loans at the time owing to it) except to a Person who (i) is already a Participant Lender or (ii) contemporaneously with any such assignment or transfer, agrees to be fully bound as a Participant Lender by executing and delivering to the Administrative Agent a Joinder to this Agreement in the form attached hereto as Exhibit B.  Each Participant Lender agrees that, notwithstanding anything to the contrary in the Credit Agreement, (x) any purported assignment or transfer that fails to comply with this Section 37 shall be null and void and (y) the Administrative Agent shall be entitled to withhold its consent to, and shall not be required to give effect to, any purported assignment of a Participant Lender's Loans or other rights or obligations under the Loan Documents if the conditions set forth in this Section 37 are not satisfied.

38.    **Amendments.**  Except as expressly provided herein, no modification, amendment or waiver of any provision of this Accommodation Agreement shall be effective unless the same shall be in writing and signed by the Borrower, the Guarantors, the Required First Priority Participant Lenders and the Required Total Participant Lenders.  Notwithstanding the foregoing, any modification, amendment or waiver of the first date set forth in clause (i) of the definition of Accommodation Period to a date beyond June 30, 2009 shall be effective if it is in writing and signed by the Borrower, the Guarantors and the Required Lenders.  For the avoidance of doubt, any modifications, amendments or waivers of any provisions of the Credit Agreement (including, without limitation, as amended herein) shall continue to be governed by the applicable provisions of the Credit Agreement.

39.    **Miscellaneous**.

(a)    Except to the extent hereby amended, each Loan Party hereby affirms that the terms of the other Loan Documents (i) secure, and shall continue to secure, and (ii) guarantee, and shall continue to guarantee, in each case, the Obligations and acknowledges and agrees that each Loan Document is, and shall continue to be, in full force and effect and is hereby ratified and affirmed in all respects.

(b)    The amendments to the Credit Agreement and Security Agreement shall survive the termination of this Accommodation Agreement and the expiration of the Accommodation Period.

(c)    From and after the Accommodation Effective Date, (i) principal of and interest on the Loans and all overdue fees and other amounts payable by the Borrower shall bear interest at the rate applicable from and after the occurrence of a payment default, including without limitation at the default rate set forth in Section 2.09 of the Credit Agreement, without any further demand or notice, and (ii) (A) no outstanding Borrowing may be converted to or continued as a Eurodollar Borrowing and (B) unless repaid, each Eurodollar Borrowing shall be converted to an ABR Borrowing at the end of the Interest Period applicable thereto.

(d)    Each Participant Lender that is owed any Secured Domestic Hedging Obligations that is also a depository institution or institution at which any Segregated Account is held or is a banking Affiliate of any such Person hereby agrees to waive any rights of banker's lien or setoff that it may have against any such Segregated Account arising out of, on account of or relating to any Secured Domestic Hedging Obligations owed to it.

(e)    By delivery of its signature page hereto, each Participant Lender acknowledges and agrees that each of the GM-Delphi Agreement Second Amendment and the GM-Delphi Pull-Forward Agreement, substantially in the form most recently provided to such Participant Lender prior to the Accommodation Effective Date, is in form and substance satisfactory to such Participant Lender.

(f)    No Person other than the parties hereto and any other Lender, and, in the case of Section 36 hereof, the Releasees, shall have any rights hereunder or be entitled to rely on this Accommodation Agreement, and all third-party beneficiary rights (other than the rights of the Releasees under Section 36 hereof and any other Lender) are hereby expressly disclaimed.

(g)    The Borrower agrees that its obligations set forth in Section 10.05 of the Credit Agreement shall extend to the preparation, execution and delivery of this Accommodation Agreement, including the reasonable fees and disbursements of special counsel to the Administrative Agent and the Arrangers.

(h)    The parties hereto hereby agree that Section 8 of the Credit Agreement shall apply to this Accommodation Agreement and each other Loan Document and all actions taken or not taken by the Administrative Agent or any Participant Lender contemplated hereby.

(i)    Nothing in this Accommodation Agreement shall be deemed, asserted or construed to impair or prejudice the rights of the Administrative Agent and the Participant

Lenders to appear and be heard on any issue, or to object to any relief sought, in the Bankruptcy Court, except to the extent that such actions would constitute a breach of the Administrative Agent's or any Participant Lender's obligations under this Accommodation Agreement.

(j)    Any provision of this Accommodation Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof, and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

(k)    Section headings used herein are for convenience only and are not to affect the construction of or be taken into consideration in interpreting this Accommodation Agreement.

(l)    This Accommodation Agreement may be executed in any number of counterparts and by the different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument.  A facsimile or .pdf copy of a counterpart signature page shall serve as the functional equivalent of a manually executed copy for all purposes.

(m)    THIS ACCOMMODATION AGREEMENT SHALL IN ALL RESPECTS BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND (TO THE EXTENT APPLICABLE) THE BANKRUPTCY CODE.

(n)    EACH OF THE BORROWER, THE GUARANTORS, THE AGENTS AND EACH PARTICIPANT LENDER HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS ACCOMMODATION AGREEMENT.

**Name of Lender:**

By: _____

    Name:
    Title:

**Name of Lender:**

By: _____
       Name:
       Title:


By: _____
       Name:
       Title:

**Schedule I**

**Automatic Accommodation Termination Defaults**

1. Any Event of Default occurring under Section 7.01(b) (except as a result of a default in the payment of (a) principal of the Loans pursuant to Section 2.13(a) or, on the Maturity Date, pursuant to 2.11(a), 2.13(c) or 2.28 of the Credit Agreement, (b) interest on the Tranche C Loan pursuant to Section 2.08 or 2.09 of the Credit Agreement or (c) interest on any Tranche A Loans or the Tranche B Loan, solely to the extent such interest is not paid on demand pursuant to Section 2.08 or Section 2.09 of the Credit Agreement (but for the avoidance of doubt this exception is not intended to exclude a failure to pay interest under Section 3(f) of the Accommodation Agreement which shall be governed by Item 2 below)), (e), (g), (i) and (j) of the Credit Agreement.

2. Any breach of Section 3(e), (f), (g), (i) or (l) of the Accommodation Agreement.

3. The PBGC shall have obtained any Foreign PBGC Lien, and either the Required Lenders or the Required Total Participant Lenders shall have notified the Borrower that they have determined that such Foreign PBGC Lien materially impairs the Lenders' interest in the Collateral.

Schedule II

**Specified Defaults**

1.  Any Event of Default occurring under the Credit Agreement solely as a result of the failure by the Borrower to pay (a) the principal of the Loans pursuant to Section 2.13(a) or, on the Maturity Date, pursuant to Section 2.11(a), 2.13(c) or 2.28 of the Credit Agreement, (b) interest on the Tranche C Loan pursuant to Section 2.08 or Section 2.09 of the Credit Agreement, (c) interest on the Tranche A Loans and the Tranche B Loan, solely to the extent such interest is not paid on demand in accordance with Section 2.08 or Section 2.09 of the Credit Agreement (and for the avoidance of doubt expressly excluding from the definition of Specified Default a failure to pay interest under Section 3(f) of the Accommodation Agreement), and (d) any Swap Exposure then due under a Hedging Agreement as required pursuant to Section 5.04 solely as a result of a termination of such Hedging Agreement or any Transaction under and defined in any Hedging Agreement prior to the otherwise scheduled termination  or maturity date resulting exclusively from a Specified Default (or a cross-default to such Specified Default), but in each case excluding any other act or omission by the Borrower or any other Person, or any other event or condition, which exclusion includes, without limitation, those acts, omissions, events and conditions specifically set forth in the Credit Agreement.

**Annex I**

<u>Form of Hedging Agreement Termination Forbearance Election</u>

     Reference is made to the Accommodation Agreement dated as of [     ], 2008 (the "<u>Accommodation Agreement</u>") among Delphi Corporation, the Guarantors party thereto, the Lenders and other Persons party thereto and JPMorgan Chase Bank, N.A., as administrative agent for the Lenders.  Capitalized terms used, but not defined, herein shall have the meaning ascribed to such terms in the Accommodation Agreement.

     The undersigned Participant Lender hereby agrees not to terminate any Hedging Agreements at any time (including any "Transactions" under and defined in any such Hedging Agreement) pursuant to and in accordance with Section 2(a)(iii) of the Accommodation Agreement, provided (i) that the Hedging Requirement shall have otherwise been satisfied and (ii) the aggregate amount of Swap Exposure of Indebtedness in respect of Secured Domestic Hedging Obligations at such time is less than equal to $500,000,000.

Date: _____ ___, _____

          By:  _____

                Name:

                Title:

# EXHIBIT E

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x
                                          :
In re:                                    :
                                          :        Chapter 11
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 [RDD]
                                          :
                        Debtors.          :        Jointly Administered
                                          :
--------------------------------------------------------------x

## JOINT STIPULATION AND AGREED ORDER REDUCING AND ALLOWING CLAIM NUMBER 13183 (YAZAKI NORTH AMERICA, INC.)

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC") and Delphi Mechatronics Systems, Inc. ("Mechatronics"), debtors and debtors-in-possession in the above-captioned cases (the "Debtors") and Yazaki North America, Inc. ("Claimant") respectfully submit this Joint Stipulation And Agreed Order Reducing And Allowing Claim Number 13183 (the "Stipulation") and agree and state as follows:

**WHEREAS,** on October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§

101-1330, as amended, in the United States Bankruptcy Court for the Southern District of New York;  and

WHEREAS, on July 31, 2006, Claimant timely filed proof of claim number 13183 against DAS LLC, asserting an unsecured non-priority claim in the amount of $1,084,784.98 and a claim secured by right of setoff in the amount of $399,727.94 (the "Claim").

WHEREAS, the books and records of the Debtors reflect a prepetition payment obligation from Claimant to the Debtors (the "Receivable") of $201,834.27.

WHEREAS, on or about April 12, 2006, Claimant asserted rights of setoff and/or recoupment under section 553 of the Bankruptcy Code in the amount of $384,734.18 (the "Setoff Request").

WHEREAS, On October 29, 2007 the Debtors objected to the Claim pursuant to the Debtors' Twenty-Second Omnibus Objection Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Duplicate or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected on Debtors' Books and Records, (E) Untimely Claims, and (F) Claims Subject to Modification, Tax Claims Subject to Modification, Modified Claims Asserting Reclamation, Claims Subject to Modification that are Subject to Prior Orders, and Modified Claims Asserting Reclamation that are Subject to Prior Orders (Docket No. 10738) (the "Twenty-Second Omnibus Claims Objection").

**WHEREAS**, to resolve the Setoff Request and Receivable, DAS LLC and Claimant have agreed to enter into a Settlement Agreement dated as of October 29, 2008 (the "Settlement Agreement");  and

**WHEREAS,** DAS LLC is authorized to enter into the Settlement Agreement either because the Claims involve ordinary course controversies or pursuant to that certain Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 4414) entered by this Court on June 29, 2006.;  and

**WHEREAS,** pursuant to the Settlement Agreement, the Claim shall be allowed as a general unsecured claim in the amount of $355,869.93 against DAS and as a general unsecured claim against Mechatronics in the amount of $28,864.18;  and

**NOW, THEREFORE**, in consideration of the foregoing, the Debtors and Claimant stipulate and agree as follows:

1.      The Claim shall be allowed as a general unsecured claim in the amount of $355,869.93 against DAS and as a general unsecured claim against Mechatronics in the amount of $28,864.18.

3

Dated:  New York, New York
        November 12, 2008

                              DELPHI CORPORATION, et al.,
                              Debtors and Debtors-in-Possession,
                              By their Bankruptcy Conflicts Counsel,
                              TOGUT, SEGAL & SEGAL LLP,
                              By:

                              /s/ Neil Berger
                              NEIL BERGER (NB-3599)
                              A Member of the Firm
                              One Penn Plaza, Suite 3335
                              New York, New York 10119
                              (212) 594-5000

Dated:  New York, New York
        October 30, 2008

                              YAZAKI NORTH AMERICA, INC.
                              By its counsel
                              HODGSON RUSS LLP
                              By:

                              /s/ Stephen H. Gross
                              STEPHEN H. GROSS
                              60 East 42nd Street, 37th Floor
                              New York, New York 10165
                              (212) 661-3535

**SO ORDERED**

This 3rd day of December, 2008
in New York, New York

_____/s/ Robert D. Drain_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT F

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                        :
In re:                                                  :
                                                        :        Chapter 11
DELPHI CORPORATION, et al.,                             :        Case No. 05-44481 [RDD]
                                                        :
                        Debtors.                        :        Jointly Administered
                                                        :
----------------------------------------------------------------x

## JOINT STIPULATION AND AGREED ORDER
## ALLOWING CLAIM NUMBER 11132 (MARCO MANUFACTURING CO.)

Delphi Corporation ("Delphi") and certain of its subsidiaries and

affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and

debtors-in-possession in the above-captioned cases (the "Debtors") and Marco

Manufacturing Co. ("Claimant") respectfully submit this Joint Stipulation And Agreed

Order Reducing And Allowing Claim Number 11132 (the "Stipulation") and agree and

state as follows:

WHEREAS, on October 8, 2005 (the "Petition Date"), the Debtors filed

voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§

101-1330, as amended, in the United States Bankruptcy Court for the Southern District

of New York;  and

WHEREAS, on July 26, 2006, Claimant filed proof of claim number 11132

(the "Proof of Claim") against DAS LLC, asserting an unsecured non-priority claim in

the amount of $182,065 and a priority claim in the amount of $78,973.54 (the "Claim");;

and

WHEREAS, on or about November 22, 2007, Claimant asserted rights of

setoff and/or recoupment under section 553 of the Bankruptcy Code (the "Setoff

Request");  and

WHEREAS, in the Setoff Request Claimant asserted a payment obligation

to DAS LLC in the amount of $490,502.09 (the "Receivable");  and

WHEREAS, on May 22, 2007 the Debtors objected to the Claim pursuant

to the Debtors' Debtors' Fifteenth Omnibus Objection (Substantive) Pursuant to 11

U.S.C. Section 502(b) and Fed. R. Bankr. P. 3007 to Certain (A) Insufficiently

Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, (C)

Untimely Claims and Untimely Tax Claim, and (D) Claims Subject to Modification, Tax

Claims Subject to Modification, and Modified Claims Asserting Reclamation (Docket

No.  7999) (the "Fifteenth Omnibus Claims Objection");  and

WHEREAS, to resolve the Setoff Request and Receivable, DAS LLC and

Claimant have agreed to enter into a Settlement Agreement dated as of October 29, 2008

(the "Settlement Agreement");  and

2

**WHEREAS,** DAS LLC is authorized to enter into the Settlement Agreement either because the Claims involve ordinary course controversies or pursuant to that certain Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 4414) entered by this Court on June 29, 2006.; and

**WHEREAS,** pursuant to the Settlement Agreement, the Claim shall be allowed as a general unsecured claim in the amount of $261,038.88 against DAS; and

**NOW, THEREFORE**, in consideration of the foregoing, the Debtors and Claimant stipulate and agree as follows:

1.      The Claim shall be allowed as a general unsecured claim in the amount of $261,038.88 against DAS.

Dated:    New York, New York
        November 12, 2008

                DELPHI CORPORATION, et al.,
                Debtors and Debtors-in-Possession,
                By their Bankruptcy Conflicts Counsel,
                TOGUT, SEGAL & SEGAL LLP,
                By:

                /s/ Neil Berger
                NEIL BERGER (NB-3599)
                A Member of the Firm
                One Penn Plaza, Suite 3335
                New York, New York 10119
                (212) 594-5000

Dated:    New York, New York
        October 30, 2008

                MARCO MANUFACTURING, INC.
                By its counsel
                BUCKINGHAM, DOOLITTLE &
                BURROUGHS LLP
                By:

                /s/ Patrick J. Keating
                PATRICK J. KEATING
                3800 Embassy Parkway, Suite 300
                Akron, Ohio 44333
                (330) 258-6554

**SO ORDERED**

This 3rd day of December, 2008
in New York, New York

    /s/Robert D. Drain
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT G

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
                                                 :
In re:                                           :
                                                 :        Chapter 11
DELPHI CORPORATION, et al.,                      :        Case No. 05-44481 [RDD]
                                                 :
                        Debtors.                 :        Jointly Administered
                                                 :
----------------------------------------------------------------x

## JOINT STIPULATION AND
## AGREED ORDER COMPROMISING AND ALLOWING
## PROOFS OF CLAIM NUMBERS 14125, 14126, 14127, 14128, 14129, 14130, 14042
## (FCI CANADA INC., FCI AUTOMOTIVE DEUTSCHLAND GMBH,
## FCI ITALIA S.P.A, FCI ELECTRONICS MEXIDO [*sic*], S. DE R.L. DE C.V.,
## FCI AUTOMOTIVE FRANCE, S.A., FCI USA, INC., AND FCI AUSTRIA GMBH)

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-

possession in the above-captioned cases (the "Debtors"), FCI Canada Inc., FCI

Automotive Deutschland GmbH, FCI Italia S.p.A., FCI Electronics Mexido [*sic*], S. de

R.L. de C.V., FCI Automotive France, S.A., FCI USA, Inc. and FCI Austria GmbH

(collectively, the "Claimants"), respectfully submit this Joint Stipulation and Agreed

Order Compromising and Allowing Proofs Of Claim Numbers 14125, 14126, 14127,

1418, 14129, 14130, 14042 (the "Stipulation") and agree and state as follows:

WHEREAS, on October 8, 2005 (the "Petition Date"), Delphi Corporation,

together with certain of its U.S. affiliates, including DAS LLC (collectively, the

"Debtors"), filed voluntary petitions under chapter 11 of the United States Code, 11

U.S.C. §§ 101-1330, as then amended, (the "Bankruptcy Code"), in the United States

Bankruptcy Court for the Southern District of New York (the "Delphi Bankruptcy

Court");  and

WHEREAS, on October 14, 2005, Claimants submitted a demand to the

Debtors asserting a reclamation claim in the amount of $232,321.92 (the "Reclamation

Demand");  and

WHEREAS, on July 31, 2006, FCI Canada Inc. filed proof of claim number

14125 against DAS LLC, asserting an unsecured non-priority claim in the amount of

$76,964.21 ("Claim 14125");  and

WHEREAS, on July 31, 2006, FCI Automotive Deutschland GmbH filed

proof of claim number 14126 against DAS LLC, asserting an unsecured non-priority

claim in the amount of $376,357.61 ("Claim 14126");  and

WHEREAS, on July 31, 2006, FCI Italia S.p.A. filed proof of claim number

14127 against DAS LLC, asserting an unsecured non-priority claim in the amount of

$361.40 ("Claim 14127");  and

WHEREAS, on July 31, 2006, FCI Electronics Mexido [*sic*], S. de R.L. de

C.V. filed proof of claim number 14128 against DAS LLC, asserting an unsecured non-

priority claim in the amount of $294,001.77 ("Claim 14128");  and

3

**WHEREAS,** on July 31, 2006, FCI Automotive France, S.A. filed proof of claim number 14129 against DAS LLC, asserting an unsecured non-priority claim in the amount of $15,945.87 ("Claim 14129"); and

**WHEREAS,** on July 31, 2006, FCI USA, Inc. filed proof of claim number 14130 against DAS LLC, asserting an unsecured non-priority claim in the amount of $407,299.95 ("Claim 14130"); and

**WHEREAS,** on July 31, 2006, FCI Austria GmbH filed proof of claim number 14042 against DAS LLC, asserting an unsecured non-priority claim in the amount of $711.42 ("Claim 14042" and collectively with Claims 14125, 14126, 14127, 14128, 14129 and 14130, the "Claims"); and

**WHEREAS,** on August 24, 2007, the Debtors objected to the Claims pursuant to the Debtors' Twentieth Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate Or Amended Claims, (B) Equity Claims, (C) Insufficiently Documented Claims, (D) Claims Not Reflected On Debtors' Books And Records, (E) Untimely Claims, And (F) Claims Subject To Modification, Tax Claims Subject To Modification, Modified Claims Asserting Reclamation, Claims Subject To Modification That Are Subject To Prior Orders, And Modified Claims Asserting Reclamation That Are Subject To Prior Orders (Docket No. 9151) (the "Twentieth Omnibus Claims Objection"); and

**WHEREAS,** September 20, 2007, Claimants filed a Response to the Twentieth Omnibus Claims Objection (Docket No. 9446) (the "Response"); and

**WHEREAS**, on December 19, 2007, pursuant to the Second Amended and

4

Restated Final Order Under 11 U.S.C. §§ 362, 503, and 546 and Fed. R. Bankr. P. 9019

Establishing Procedures for Treatment of Reclamation Claims (Docket No. 10409) (the

"Second Amended Reclamation Order"), entered by the Delphi Bankruptcy Court on

October 2, 2007, the Debtors served a copy of a personalized Notice Of Treatment Of

Reclamation Claim Under Plan Of Reorganization (the "Reclamation Election Notice")

on Claimants with respect to the Reclamation Claim, whereby the Debtors presented

the Claimants with the option of electing either (i) to take a general unsecured claim for

the amount of the Reclamation Claim to the extent that such claim is allowed or (ii) to

continue to assert administrative priority status for the Reclamation Claim and have its

Reclamation Claim automatically adjourned to a future contested hearing at which the

Debtors would seek a judicial determination that the Reclamation Claim is subject to all

of the Debtors' reserved defenses (the "Reserved Defenses") with respect to the

Reclamation Claim as set forth in the Second Amended Reclamation Order, including,

without limitation, the Debtors' Reserved Defense that the Reclamation Claim is not

entitled to administrative priority status on the grounds that, among other things, the

goods and/or the proceeds form the sale of the goods for which the Claimants are

seeking a Reclamation Claim are or were subject to a valid security interest ( the "Prior

Lien Defense"); and

      **WHEREAS**, the Debtors' records indicate that Claimants failed to return

the Reclamation Election Notice; and

      **WHEREAS,** pursuant to the Second Amended Reclamation Order, the

Debtors reserve the right to assert that Claimants have been deemed to have waived

5

their right to assert administrative priority status for its Reclamation Claim based upon

Claimants' failure to return the Reclamation Election Notice (the "<u>Reclamation Claim</u>

<u>Waiver Defense</u>"), and to the extent that such claim is allowed, it will be treated as a

prepetition general unsecured claim; and

  **WHEREAS,** on November 6, 2008, to resolve the Reclamation Demand

and the Twentieth Omnibus Claims Objection with respect to the Claims, DAS LLC and

the Claimants entered into a settlement agreement (the "Settlement Agreement");  and

  **WHEREAS,** pursuant to the Settlement Agreement, DAS LLC

acknowledges and agrees that the Claims shall be allowed against DAS LLC in the total

amount of $864,500;  and

  **WHEREAS,** DAS LLC is authorized to enter into the Settlement

Agreement either because the Claims involve ordinary course controversies or pursuant

to that certain Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b)

Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And

Allow Claims Without Further Upon Court Approval (Docket No. 4414) entered by this

Court on June 29, 2006.

  **NOW, THEREFORE**, in consideration of the foregoing, the Debtors and

the Claimants stipulate and agree as follows:

  1.  The Claims shall be allowed against DAS LLC in the total amount

of Eight Hundred Sixty-Four Thousand Five Hundred Dollars ($864,500) and each claim

shall be treated and allocated as follows:

  (a) Claim 14125 shall be expunged;

(b) Claim 14126 shall be allowed as a $232,500 general unsecured non-priority claim;

(c) Claim 14127 shall be expunged;

(d) Claim 14128 shall be expunged;

(e) Claim 14129 shall be expunged;

(f) Claim 14130 shall be allowed as a $632,500 general unsecured non-priority claim (the "Agreed-Upon Claim 14130"); and

(g) Claim 14042 shall be expunged.

2.    Without further order of the Court, DAS LLC is authorized to reduce the Claims for purposes of distribution to holders of allowed claims entitled to receive distributions under any plan of reorganization of the Debtors to the extent that amounts comprising the Claims are paid to any of the Claimants as cure payments made on account of the assumption, pursuant to section 365 of the Bankruptcy Code, of an executory contract or unexpired lease to which any of the Claimants is a party.

3.    Notwithstanding anything in paragraph 1 of this Stipulation to the contrary, DAS LLC and Claimants further acknowledge and agree that Claimants reserve the right, pursuant to section 503(b) of the Bankruptcy Code, to seek administrative priority status for $32,040.63 of Agreed-Upon Claim 14130 on the grounds that Claimants hold a valid reclamation claim in the amount of $32,040.63 and that the Debtors reserve the right to seek, at any time, a judicial determination (a) that the Reclamation Claim Waiver Defense and/or the Reserved Defenses, including, without limitation, the Prior Lien Defense, are valid;  and (b) that such reclamation claim is not entitled to priority status.

7

4.      The Reclamation Demand and the Twentieth Omnibus Claims

Objection, solely as it relates to the Claims, and the Response are hereby withdrawn.

Dated:  New York, New York
        November 6, 2008

DELPHI CORPORATION, et al.,
Debtors and Debtors-in-Possession,
By their Bankruptcy Conflicts Counsel,
TOGUT, SEGAL & SEGAL LLP,
By:

/s/ Neil Berger
NEIL BERGER (NB-3599)
A Member of the Firm
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

Dated:  Portland, Maine
        November 6, 2008

FCI CANADA INC., FCI AUTOMOTIVE
DEUTSCHLAND GMBH, FCI ITALIA S.P.A.,
FCI ELECTRONICS MEXIDO [*sic*], S. DE R.L.
DE C.V., FCI AUTOMOTIVE FRANCE, S.A.,
FCI USA, INC. and FCI AUSTRIA GMBH,
By its Counsel,
PIERCE ATWOOD LLP,

/s/ Keith J. Cunningham
KEITH J. CUNNINGHAM
One Monument Square
7th Floor
Portland, Maine 04101
(207) 791-1187

**SO ORDERED**

This 3rd day of December, 2008
in New York, New York

/s/ Robert D. Drain
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler


        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz


Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
                                              :
        In re                                 :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :      Case No. 05–44481 (RDD)
                                              :
                Debtors.       :      (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER DISALLOWING AND
EXPUNGING PROOF OF CLAIM NUMBER 16292
(PORTAGE COUNTY WATER RESOURCES)

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in

the above-captioned cases (collectively, the "Debtors"), and Portage County Water Resources

("Portage County") respectfully submit this Joint Stipulation And Agreed Order Disallowing

And Expunging Proof Of Claim Number 16292 (Portage County Water Resources) (the "Joint

Stipulation") and agree and state as follows:

WHEREAS, on October 8, 2005 (the "Petition Date"), the Debtors filed voluntary

petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then

amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on April 18, 2006, DAS LLC filed its Amended And Restated

Schedules Of Assets And Liabilities – Schedule(s) D, E, And F, listing an unsecured non-priority

scheduled amount of $17,547.46 (the "Scheduled Amount") in favor of Portage County.

WHEREAS, on November 8, 2006, Portage County filed proof of claim number

16292 against DAS LLC, which asserts an unsecured non-priority claim in the amount of

$17,967.88 (the "Claim") stemming from services provided.

WHEREAS, on January 12, 2007, the Debtors objected to the Claim pursuant to

the Debtors' Seventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed.

R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected

On Debtors' Books And Records, And (C) Untimely Claims (Docket No. 6585) (the "Seventh

Omnibus Claims Objection").

WHEREAS, on February 8, 2007, Portage County filed its Response of the

Portage County Water Resources Department to Debtors' Seventh Omnibus Objection

(Substantive) Pursuant to 11 U.S.C. §502(B) and Fed. R. Bankr. P. 3007 to Certain (A)

2

Insufficiently Documented Claims, (B) Claims Not Reflected on Debtors' Books and Records, and (C) Untimely Claims (Docket No. 6909) (the "Response").

WHEREAS, pursuant to this Joint Stipulation, DAS LLC and Portage County acknowledge and agree that the Claim shall be disallowed and expunged in its entirety.

WHEREAS, DAS LLC is authorized to enter into this Joint Stipulation either because the Claim involves ordinary course controversy or pursuant to that certain Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) entered by this Court on June 26, 2007.

THEREFORE, the Debtors and Portage County stipulate and agree as follows:

1.      The Claim shall be disallowed and expunged in its entirety.

2.      Portage County shall withdraw its Response to the Seventh Omnibus Claims Objection with prejudice.

So Ordered in New York, New York, this 3rd day of December, 2008

        ___/s/Robert D. Drain_____
        UNITED STATES BANKRUPTCY JUDGE

3

AGREED TO AND
APPROVED FOR ENTRY:

/s/ John K. Lyons
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700

           - and –

  Kayalyn A. Marafioti
  Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

/s/ Leigh S. Prugh
Leigh S. Prugh
Portage County Prosecutor's Office
466 S. Chestnut Street
Ravenna, Ohio 44266
(330) 297-3850

Attorneys for Portage County Water Resources

# EXHIBIT I

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :
                              :
       In re                   :    Chapter 11
                              :
DELPHI CORPORATION, et al.,     :    Case No. 05–44481 (RDD)
                              :
             Debtors.   :    (Jointly Administered)
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER COMPROMISING
AND ALLOWING PROOFS OF CLAIM NUMBERS 2447, 2448,
2449, 2450, 2451, 2452, 2453, 2454, 2455, AND 2456
(TECNOMEC S.R.L.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC") debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") and Tecnomec S.R.L. ("Tecnomec") respectfully submit this Joint Stipulation And Agreed Order Compromising And Allowing Proofs Of Claim Numbers 2447, 2448, 2449, 2450, 2451, 2452, 2453, 2454, 2455, And 2456 (Tecnomec S.R.L.) (the "Joint Stipulation") and agree and state as follows:

WHEREAS, on October 8, 2005, (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on March 29, 2006, Tecnomec filed the following proofs of claim asserting the following amounts (the "Asserted Amount"), each against DAS LLC, stemming from goods sold and the cost of materials (collectively, the "Claims"):

| Proof of Claim No. | Asserted Amount |
|---|---|
| 2447 ("Claim No. 2447") | $1,635.00 |
| 2448 ("Claim No. 2448") | $1,880.39 |
| 2449 ("Claim No. 2449") | $642.11 |
| 2450 ("Claim No. 2450") | $3,788.49 |
| 2451 ("Claim No. 2451") | $24,742.00 |
| 2452 ("Claim No. 2452") | $1,442.59 |
| 2453 ("Claim No. 2453") | $360.65 |
| 2454 ("Claim No. 2454") | $4,082.43 |
| 2455 ("Claim No. 2455") | $7,291.83 |
| 2456 ("Claim No. 2456") | $1,076.77 |

WHEREAS, on March 16, 2007 the Debtors objected to the Claims pursuant to the Debtors' (i) Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims, And (D) Claims Subject To

2

Modification (Docket No. 7301) (the "Eleventh Omnibus Claims Objection").

WHEREAS, on April 16, 2007 Tecnomec filed Tecnomec S.R.L.'s Response To Debtors' Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims And (D) Claims Subject To Modification (Docket No. 4697) (the "Response").

WHEREAS, on August 3, 2006, Tecnomec assigned its interest in the Claims to Liquidity Solutions, Inc. d/b/a Capital Markets ("Liquidity") pursuant to a Notice of Transfer (Docket No. 4838).

WHEREAS, on April 12, 2007 Liquidity filed the Response of Liquidity Solutions, Inc., As Assignee, To Debtors' Eleventh Omnibus Objection (Substantive) Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected On Debtors' Books And Records, (C) Untimely Claims And (D) Claims Subject To Modification (Docket No. 7649) (the "Response").

WHEREAS, on June 17, 2008, Liquidity terminated its assigned interest in the Claims pursuant to a Notice of Withdrawal of Transfer (Docket No. 13777).

WHEREAS, on August 20, 2008, Liquidity withdrew with prejudice its Response to the Eleventh Omnibus Claims Objection with respect to the Claims (Docket No. 14081).

WHEREAS, to resolve the Eleventh Omnibus Claims Objection with respect to the Claims, DAS LLC and Tecnomec entered into this Joint Stipulation.

WHEREAS, pursuant to this Joint Stipulation, DAS LLC acknowledges and agrees that each of the Claims shall be allowed against DAS LLC in the following amounts (the "Allowed Amount") as general unsecured non-priority claims against the estate of DAS LLC:

| Claim No. | Allowed Amount |
|---|---|
| Claim No. 2447 | $1,621.84 |
| Claim No. 2448 | $1,855.50 |
| Claim No. 2449 | $627.85 |
| Claim No. 2450 | $3,711.01 |
| Claim No. 2451 | $24,236.00 |
| Claim No. 2452 | $1,410.51 |
| Claim No. 2453 | $347.53 |
| Claim No. 2454 | $3,988.91 |
| Claim No. 2455 | $7,142.71 |
| Claim No. 2456 | $1,054.75 |

WHEREAS, DAS LLC is authorized to enter into the Joint Stipulation either because the Claims involve ordinary course controversies or pursuant to that certain Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) entered by this Court on June 26, 2007.

THEREFORE, the Debtors and Tecnomec stipulate and agree as follows:

1.      Claim No. 2447 shall be allowed in the amount of $1,621.84 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

2.      Claim No. 2448 shall be allowed in the amount of $1,855.50 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

3.      Claim No. 2449 shall be allowed in the amount of $627.85 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

4.      Claim No. 2450 shall be allowed in the amount of $3,711.01 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

5.      Claim No. 2451 shall be allowed in the amount of $24,236.00 and shall be

4

treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

6.    Claim No. 2452 shall be allowed in the amount of $1,410.51 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

7.    Claim No. 2453 shall be allowed in the amount of $347.53 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

8.    Claim No. 2454 shall be allowed in the amount of $3,988.91 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

9.    Claim No. 2455 shall be allowed in the amount of $7,142.71 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

10.    Claim No. 2456 shall be allowed in the amount of $1,054.75 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

11.    Allowance of each of Claim No. 2447, Claim No. 2448, Claim No. 2449, Claim No. 2450, Claim No. 2451, Claim No. 2452, Claim No. 2453, Claim No. 2454, Claim No. 2455, Claim No. 2456, and Claim No. 2457 is in full satisfaction of each of Claim No. 2447, Claim No. 2448, Claim No. 2449, Claim No. 2450, Claim No. 2451, Claim No. 2452, Claim No. 2453, Claim No. 2454, Claim No. 2455, Claim No. 2456, and Claim No. 2457, respectively. Tecnomec on its of own behalf and on behalf of its predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and its former, current, and future officers, directors, owners, employees, and other agents (the "Releasing Parties"), hereby waives any and all rights to assert, against any and all of the Debtors, that each of the Claims is anything but a prepetition general unsecured non-priority claim against DAS LLC.  The Releasing Parties further release and waive any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether

or not known or suspected at this time, which relate to the Claims or which the Releasing Parties

have, ever had, or hereafter shall have against the Debtors based upon, arising out of, related to,

or by reason of any event, cause, thing, act, statement, or omission occurring before the Petition

Date with respect to the Claims.


So Ordered in New York, New York, this 3<u>rd</u> day of December, 2008


    <u>/s/Robert D. Drain                        </u>
      UNITED STATES BANKRUPTCY JUDGE


AGREED TO AND
APPROVED FOR ENTRY:

| <u>/s/ John K. Lyons</u> | <u>/s/ Robert Carillo</u> |
|---|---|
| John Wm. Butler, Jr. | Robert Carrillo |
| John K. Lyons | SATTERLEE SEPHENS BURKE & BURKE |
| Ron E. Meisler |   LLP |
| SKADDEN, ARPS, SLATE, MEAGHER | 230 Park Avenue |
|   & FLOM LLP | Suite 1130 |
| 333 West Wacker Drive, Suite 2100 | New York, New York 10169 |
| Chicago, Illinois  60606-1285 | (212) 818-9200 |
| (312) 407-0700 | |
| | Attorney for Tecnomec S.R.L. |
|       - and – | |
| | |
|   Kayalyn A. Marafioti | |
|   Thomas J. Matz | |
| Four Times Square | |
| New York, New York  10036 | |
| (212) 735-3000 | |
| | |
| Attorneys for Delphi Corporation, et al., | |
|   Debtors and Debtors-in-Possession | |

# EXHIBIT J

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　In re　　　　　　　　　　　　　:　　　Chapter 11
　　　　　　　　　　　　　　　　　　　:
DELPHI CORPORATION, et al.,　　　　　:　　　Case No. 05–44481 (RDD)
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Debtors.　　　　:　　　(Jointly Administered)
　　　　　　　　　　　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER COMPROMISING
AND ALLOWING PROOF OF CLAIM NUMBER 12223
(WESCO DISTRIBUTION, INC.)

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Automotive Systems LLC ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), and Wesco Distribution, Inc. ("Wesco") respectfully submit this Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 12223 (Wesco Distribution, Inc.) (the "Joint Stipulation") and agree and state as follows:

WHEREAS, on October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on July 28, 2006, Wesco filed proof of claim number 12223 against Delphi, which asserts an unsecured non-priority claim in the amount of $59,964.21 (the "Claim") stemming from the sale of goods or services performed.

WHEREAS, on November 19, 2007, the Debtors objected to the Claim pursuant to the Debtors' Twenty-Third Omnibus Objection Pursuant To 11 U.S.C. Section 502(b) And Fed. R. Bankr. P. 3007 To (A) Duplicate Claim, (B) Certain Equity Claims, (C) Insufficiently Documented Claim, (D) Certain Claims Not Reflected On Debtors' Books And Records, And (E) Certain Claims Subject To Modification, Modified Claims Asserting Reclamation, Claim Subject To Modification That Is Subject To Prior Order, And Modified Claim Asserting Reclamation That Is Subject To Prior Order (Docket No. 10982) (the "Twenty-Third Omnibus Claims Objection").

WHEREAS, on December 13, 2007, Wesco filed its Response and Limited Objection of WESCO Distribution, Inc. to Debtors' Twenty-Third Omnibus Objection (Docket No. 11441) (the "Response").

2

WHEREAS, on November 5, 2008, to resolve the Twenty-Third Omnibus Claims Objection with respect to the Claim, DAS LLC and Wesco entered into this Joint Stipulation.

WHEREAS, pursuant to this Joint Stipulation, DAS LLC acknowledges and agrees that the Claim shall be allowed against DAS LLC in the amount of $57,118.82.

WHEREAS, DAS LLC is authorized to enter into this Joint Stipulation either because the Claim involves ordinary course controversies or pursuant to that certain Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) entered by this Court on June 26, 2007.

THEREFORE, the Debtors and Wesco stipulate and agree as follows:

1.    The Claim shall be allowed in the amount of $57,118.82 and shall be treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

2.    Allowance of the Claim is in full satisfaction of the Claim and Wesco, on its own behalf and on behalf of its predecessors, successors, assigns, parents, subsidiaries, and affiliated companies, and each of its former, current, and future officers, directors, owners, employees, and other agents (the "Wesco Releasing Parties"), hereby waives any and all rights to assert, against any and all of the Debtors, that the Claim is anything but a prepetition general unsecured non-priority claim against DAS LLC.  The Wesco Releasing Parties further release and waive any right to assert any other claim, cause of action, demand, or liability of every kind and nature whatsoever, including those arising under contract, statute, or common law, whether or not known or suspected at this time, which relate to the Claim or which the Wesco Releasing Parties have, ever had, or hereafter shall have against the Debtors based upon, arising out of,

3

related to, or by reason of any event, cause, thing, act, statement, or omission occurring before the Petition Date which relate to the Claim.

        3.      Wesco shall withdraw its Response to the Twenty-Third Omnibus Claims Objection with prejudice.

So Ordered in New York, New York, this <u>3rd</u> day of December, 2008

          <u>/s/Robert D. Drain</u>
          UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

<u>/s/ John K. Lyons</u>

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700

       - and –

  Kayalyn A. Marafioti
  Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

<u>/s/ David A. Murdoch</u>

David A. Murdoch
K&L GATES LLP
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222

       - and –

  Robert N. Michaelson,
599 Lexington Avenue
New York, New York 10022-6030
(212) 536-3900

Attorneys for Wesco Distribution, Inc.

4

# EXHIBIT K

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :
                                :

      In re                    :     Chapter 11
                                :
DELPHI CORPORATION, et al.,    :     Case No. 05–44481 (RDD)
                                :
            Debtors.     :     (Jointly Administered)
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOINT STIPULATION AND AGREED ORDER COMPROMISING
AND ALLOWING PROOF OF CLAIM NUMBER 11279
(CTS OF CANADA CO. AND BEAR STEARNS INVESTMENT PRODUCTS INC.)

Delphi Corporation and certain of its subsidiaries and affiliates, including Delphi Automotive Systems ("DAS LLC"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), and CTS of Canada Co. ("CTS of Canada") and Bear Stearns Investment Products Inc. ("Bear Stearns Investment Products") (collectively, the "Claimants") respectfully submit this Joint Stipulation And Agreed Order Compromising And Allowing Proof Of Claim Number 11279 (CTS of Canada Co. And Bear Stearns Investment Products Inc.) (the "Joint Stipulation") and agree and state as follows:

WHEREAS, on October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended, in the United States Bankruptcy Court for the Southern District of New York.

WHEREAS, on October 11, 2005, CTS of Canada submitted a demand to the Debtors asserting a reclamation claim in the amount of $3,120.45 (the "Reclamation Demand").

WHEREAS, on July 13, 2006, the Debtors and CTS of Canada entered into a letter agreement (the "Reclamation Letter Agreement") with respect to the Reclamation Demand, whereby the Debtors and CTS of Canada acknowledge and agree that the valid amount of the Reclamation Demand is $3,120.00 (the "Reclamation Claim"), subject to the Debtors' right to seek, at any time and notwithstanding CTS of Canada's agreement to the amount set forth in the Reclamation Letter Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses") to the Reclamation Claim are valid.

WHEREAS, on July 27, 2006, CTS of Canada filed proof of claim number 11279 against DAS LLC, which asserts an unsecured non-priority claim in the amount of $34,432.00 (the "Claim") stemming from the sale of goods.

WHEREAS, on January 11, 2007, CTS of Canada assigned its interest in the

2

Claim to Bear Stearns Investment Products pursuant to a Notice of Transfer (Docket No. 6553).

WHEREAS, on April 27, 2007, the Debtors objected to the Claim pursuant to the

Debtors' (i) Thirteenth Omnibus Objection (Substantive) Pursuant to 11 U.S.C. 502(b) and Fed.

R. Bank. P 3007 to Certain (A) Insufficiently Documented Claims, (B) Claims Not Reflected on

Debtors' Books and Records, (C) Protective Insurance Claims, (D) Insurance Claims Not

Reflected on Debtors' Books and Records, (E) Untimely Claims and Untimely Tax Claims, and

(F) Claims Subject to Modification, Tax Claims Subject to Modification, and Claims Subject to

Modification and Reclamation Agreement (Docket No. 7825) (the "Thirteenth Omnibus Claims

Objection").

WHEREAS, on May 21, 2007, CTS of Canada filed its Response to the

Thirteenth Omnibus Objection to Claims (Docket No. 8085) (the "Response").

WHEREAS, on December 19, 2007, pursuant to the Second Amended and

Restated Final Order Under 11 U.S.C. §§ 362, 503, and 546 and Fed. R. Bankr. P. 9019

Establishing Procedures for Treatment of Reclamation Claims (Docket No. 10409) (the "Second

Amended Reclamation Order"), entered by the Delphi Bankruptcy Court on October 2, 2007, the

Debtors served a copy of a personalized Notice Of Treatment Of Reclamation Claim Under Plan

Of Reorganization (the "Reclamation Election Notice") on CTS of Canada with respect to the

Reclamation Claim, whereby the Debtors presented CTS of Canada with the option of electing

either (i) to take a general unsecured claim for the amount of the Reclamation Claim to the extent

that such claim is allowed or (ii) to continue to assert administrative priority status for the

Reclamation Claim and have its Reclamation Claim automatically adjourned to a future

contested hearing at which the Debtors would seek a judicial determination that the Reclamation

Claim is subject to the Debtors' Reserved Defense that the Reclamation Claim is not entitled to

3

administrative priority status on the grounds that the goods and/or the proceeds form the sale of

the goods for which CTS of Canada is seeking a Reclamation Claim are or were subject to a

valid security interest ( the "Prior Lien Defense").

WHEREAS, CTS of Canada returned the Reclamation Election Notice and chose

to continue to assert administrative priority status for the Reclamation Claim.

WHEREAS, pursuant to this Joint Stipulation, DAS LLC acknowledges and

agrees that the Claim shall be allowed against DAS LLC in the amount of $29,372.00.

WHEREAS, DAS LLC is authorized to enter into this Joint Stipulation either

because the Claim involves ordinary course controversies or pursuant to that certain Amended

And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b)

Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow

Claims Without Further Court Approval (Docket No. 8401) entered by this Court on June 26,

2007.

THEREFORE, the Debtors and Claimants stipulate and agree as follows:

1.      The Claim shall be allowed in the amount of $29,372.00 and shall be

treated as an allowed general unsecured non-priority claim against the estate of DAS LLC.

2.      CTS of Canada and Bear Stearns Investment Products, on each of their

own behalves and on behalf of each of their own predecessors, successors, assigns, parents,

subsidiaries, and affiliated companies, and each of their own former, current, and future officers,

directors, owners, employees, and other agents (the "Releasing Parties"), hereby acknowledges

that, except as set forth in paragraph 3 hereof, the allowance of the Claim is in full satisfaction of

the Claim and, except as set forth in paragraph 3 hereof, the Releasing Parties waive any and all

rights to assert, against any and all of the Debtors, that the Claim is anything but a prepetition

4

general unsecured non-priority claim against DAS LLC.  The Releasing Parties further release

and waive any right to assert any other claim, cause of action, demand, or liability of every kind

and nature whatsoever, including those arising under contract, statute, or common law, whether

or not known or suspected at this time, which relate to the Claim or which the Releasing Parties

have, ever had, or hereafter shall have against the Debtors based upon, arising out of, related to,

or by reason of any event, cause, thing, act, statement, or omission occurring before the Petition

Date and arising out of or relating to the Claim.

        3.      Notwithstanding anything in paragraph 2 of this Joint Stipulation, Bear

Stearns Investment Products reserves the right, pursuant to section 503(b) of the Bankruptcy

Code, to seek administrative priority status for $3,120.45 of the Claim on the grounds that Bear

Stearns Investment Products, as the assignee of CTS of Canada with respect to the Reclamation

Demand, has a valid reclamation claim in the amount of $3,120.45.

        4.      The Debtors reserve the right to seek, at any time and notwithstanding

CTS of Canada's agreement to the amount set forth in the Reclamation Letter Agreement, a

judicial determination that the Reserved Defenses are valid.

        5.      CTS of Canada shall withdraw its Response to the Thirteenth Omnibus

Claims Objection with prejudice.


So Ordered in New York, New York, this 3rd day of December, 2008


       ___/s/Robert D. Drain_____
        UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND
APPROVED FOR ENTRY:

/s/ John K. Lyons

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606-1285
(312) 407-0700

- and –

Kayalyn A. Marafioti
Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

/s/ Elizabeth Bottorff Ahlemann

Elizabeth Bottorff Ahlemann
CTS Corporation
905 West Boulevard N.
Elkhart, IN 46514
(574) 293-7511

/s/ Samantha Hammerman

Samantha Hammerman
Bear Stearns Investment Products Inc.
383 Madison Avenue
New York, New York 10179

Attorneys for CTS of Canada and Bear Stearns
Investment Products Inc., Claimants

# EXHIBIT L

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                    :
        In re                       :        Chapter 11
                                    :
DELPHI CORPORATION, <u>et al.</u>,         :        Case No. 05-44481 (RDD)
                                    :
                        Debtors.    :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


THIRTEENTH SUPPLEMENTAL ORDER UNDER 11 U.S.C. §§ 102(1) AND 105
AND FED. R. BANKR. P. 2002(m), 9006, 9007, AND 9014 ESTABLISHING
OMNIBUS HEARING DATES AND CERTAIN NOTICE, CASE
<u>MANAGEMENT, AND ADMINISTRATIVE PROCEDURES</u>

("THIRTEENTH SUPPLEMENTAL CASE MANAGEMENT ORDER")

Upon the motion, dated October 8, 2005 (the "Case Management Motion"),[1] of

Delphi Corporation and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for an order under 11

U.S.C. §§ 102(1), 105(a), and 105(d) and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014

establishing (a) omnibus hearing dates, (b) certain notice, case management, and administrative

procedures in the Debtors' chapter 11 cases, and (c) scheduling an initial case conference in

accordance with Rule 1007-2(e) of the Local Bankruptcy Rules for the United States Bankruptcy

Court for the Southern District of New York; and this Court having entered an order granting the

Case Management Motion on October 14, 2005 (Docket No. 245), a supplemental order on

March 20, 2006 (Docket No. 2883) (the "Supplemental Order"), a second supplemental order on

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Case
Management Motion.

March 28, 2006 (Docket No. 2995), a third supplemental order on April 20, 2006 (Docket No.

3293), a fourth supplemental order on May 3, 2006 (Docket No. 3589), a fifth supplemental

order on May 5, 2006 (Docket No. 3629), a sixth supplemental order on May 11, 2006 (Docket

No. 3730), a seventh supplemental order on May 19, 2006 (Docket No. 3824), an eight

supplemental order on October 26, 2006 (Docket No. 5418), a ninth supplemental order on

October 19, 2007 (Docket No. 10661), a tenth supplemental order on February 4, 2008 (Docket

No. 12487), an eleventh supplemental order on July 15, 2008 (Docket No. 13920), and a twelfth

supplemental order on July 23, 2008 (Docket No. 13965) (collectively, the "Prior Supplemental

Orders"); and this Court having scheduled additional omnibus hearing dates (the "Omnibus

Hearing Dates") in these cases; it is hereby

      ORDERED THAT:

      1.     This Court shall conduct the following omnibus hearings in these cases, to

be held in Courtroom 610, United States Bankruptcy Court, Alexander Hamilton Custom House,

One Bowling Green, New York, New York 10004 unless the Debtors are otherwise notified by

the Court.  The following dates and times have been scheduled as Omnibus Hearing Dates in

these chapter 11 cases:

          December 17, 2008 at 10:00 a.m. (prevailing Eastern time)

          January 27, 2009 at 10:00 a.m. (prevailing Eastern time)

          February 24, 2009 at 10:00 a.m. (prevailing Eastern time)

          March 24, 2009 at 10:00 a.m. (prevailing Eastern time)

          April 23, 2009 at 10:00 a.m. (prevailing Eastern time)

          May 21, 2009 at 10:00 a.m. (prevailing Eastern time)

          June 16, 2009 at 10:00 a.m. (prevailing Eastern time)

2.      Omnibus Hearing Dates thereafter may be scheduled by this Court.  All matters requiring a hearing in these cases shall be set for and be heard on Omnibus Hearing Dates unless alternative hearing dates are approved by the Court for good cause shown.

3.      If this Court changes any of the Omnibus Hearing Dates set forth in Paragraph 1 above, the Debtors are authorized to provide a notice of change of hearing (the "Notice") in accordance with paragraph 15 of the Supplemental Order.  The terms of such Notice shall be binding upon all parties-in-interest in these chapter 11 cases and no other or further notice or order of this Court shall be necessary.

4.      Except as set forth herein, the Prior Supplemental Orders shall continue in full force and effect.

Dated: New York, New York
         December 4, 2008

         /s/Robert D. Drain                                          
         UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT M

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Hodgson Russ LLP | Counsel To Yazaki | Stephien H Gross | 60 E 42nd St 37th Fl | New York | NY | 10165 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2008 4:38 PM
Various Stipulations Special Parties
Yazaki Special Parties

# EXHIBIT N

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Buckingham Doolittle & Burroughs | Counsel to Marco Mfg | Patrick J Keating | 3800 Embassy Pkwy Ste 300 | Akron | OH | 44333 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2008 4:41 PM
Various Stipulations Special Parties
Marco Manufacturing Special Parties

# EXHIBIT O

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Pierce Atwood LLP | Counsel to FCI | Keith J Cunningham | One Monument Sq 7th Fl | Portland | ME | 04101-0000 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2008 4:44 PM
Various Stipulations Special Parties
FCI Special  Parties

# EXHIBIT P

Delphi Corporation
Special Parties

| Company | Contact | Address1 | City | State | Zip |
|---|---|---|---|---|---|
| Portage County Prosecutors Office | Leigh S Prugh | 466 S Chestnut St | Ravenna | OH | 44266 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2008 4:45 PM
Various Stipulations Special Parties
Portage County Water Resources Special  Parties

# EXHIBIT Q

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Satterlee Sephens Burke & Burke | Counsel to Tecnomec | Robert Carillo | 230 Park Ave Ste 1130 | New York | NY | 10169 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2008 4:47 PM
Various Stipulations Special Parties
Tecnomec Special  Parties

# EXHIBIT R

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| K&L Gates LLP | David A Murdoch | Henry W Oliver Bldg | 535 Smithfield St | Pittsburgh | PA | 15222 |
| K&L Gates LLP | Robert N Michaelson | 599 Lexington Ave | | New York | NY | 10022-6030 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

12/8/2008 4:49 PM
Various Stipulations Special Parties
Wesco Special  Parties

# EXHIBIT S

Delphi Corporation
Special Parties

| Company | Contact | Address1 | City | State | Zip |
|---|---|---|---|---|---|
| CTS Corporation | Elizabeth Bottorff Ahlemann | 905 W Boulevard N | Elkhart | IN | 46514 |
| Bear Stearns Investment Products | Samantha Hammerman | 383 Madison Ave | New York | NY | 10179 |

12/8/2008 4:50 PM
In re. Delphi Corporation, et al.                                                  Various Stipulations Special Parties
Case No. 05-44481 (RDD)                          Page 1 of 1          CTS and Bear Stearns Special Parties