**Hearing Date And Time: January 27, 2009 at 10:00 a.m. (prevailing Eastern time)**
**Response Date And Time: January 20, 2009 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -   -   x
                             :
      In re                        :     Chapter 11
                             :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                             :
                             :     (Jointly Administered)
             Debtors.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DEBTORS' THIRTY-THIRD OMNIBUS OBJECTION PURSUANT TO
11 U.S.C. § 502(b) AND FED. R. BANKR. P. 3007 REGARDING
(A)  SERP CLAIMS AND SCHEDULED LIABILITIES SUBJECT TO
MODIFICATION, (B) DUPLICATE OR AMENDED SERP CLAIMS, (C)
CLAIMS SUBJECT TO MODIFICATION, AND (D) CLAIM TO BE
EXPUNGED PURSUANT TO SETTLEMENT

("THIRTY-THIRD OMNIBUS CLAIMS OBJECTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Thirty-Third Omnibus Objection Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 3007 Regarding (A) SERP Claims And Scheduled Liabilities Subject To Modification,

(B) Duplicate Or Amended SERP Claims, (C) Claims Subject To Modification, And (D) Claim

To Be Expunged Pursuant To Settlement (the "Thirty-Third Omnibus Claims Objection" or the

"Objection"), and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this

Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§§ 101-1330, as then amended (the "Bankruptcy Code"). The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections

1107(a) and 1108. This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases. On October 17,

2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official

committee of unsecured creditors. On April 28, 2006, the U.S. Trustee appointed an official

committee of equity holders (together with the official committee of unsecured creditors, the

"Statutory Committees").

3.    On December 10, 2007, the Debtors filed the First Amended Joint Plan Of

Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-

Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with

respect to the Plan (Docket No. 11388) (the "December 10 Disclosure Statement"). The Court

2

entered an order approving the adequacy of the Disclosure Statement and granting the related

solicitation procedures motion on December 10, 2007 (Docket No. 11389).  On January 25, 2008,

the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the

"Confirmation Order"), and the order became final on February 4, 2008.  Although the Debtors

on April 4, 2008 had satisfied the conditions required to substantially consummate the Plan, as

confirmed by this Court (the "Confirmed Plan"), including obtaining $6.1 billion of exit

financing, Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in a

closing that was commenced but not completed and refused to fund their Investment Agreement

(as defined in the Confirmed Plan) with Delphi.  On May 16, 2008, Delphi filed complaints for

damages and specific performance against the Plan Investors and related parties who refused to

honor their equity financing commitments and refused to participate in the closing that would

have led to Delphi's successful emergence from chapter 11.  On October 3, 2008, the Debtors

filed a motion (Docket No. 14310) (the "Plan Modification Approval Motion") under 11 U.S.C.

§ 1127 for an order approving (i) certain modifications to the Confirmed Plan and related

modifications to the December 10 Disclosure Statement and (ii) related procedures for re-

soliciting votes on the Confirmed Plan, as modified.  In light of the current crisis in the global

debt and equity markets, however, the Debtors filed a notice adjourning the hearing on the Plan

Modification Motion to the regularly-scheduled omnibus hearing on March 24, 2009 (Docket No.

14580) pending further discussions with emergence capital funding parties and an assessment of

which supplemental plan modifications are warranted in the current conditions to enable the

Debtors to emerge from chapter 11 as soon as practicable.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested herein are sections 502(b) of the Bankruptcy Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

6.      Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[1]  At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[2]

7.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

---

[1]     The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[2]     On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007.  On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007.  The Spanish court approved the social plan on July 31, 2007.  The Concurso proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

8.    Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM").  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

9.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[3] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion.  Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

10.    The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational

---

[3]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which

had the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production

environment for domestic OEMs resulting in the reduced number of motor vehicles that GM

produces annually in the United States and related pricing pressures, and (iii) increasing

commodity prices.

11.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005,

the Company commenced these chapter 11 cases for its U.S. businesses to complete its

transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

12.    On March 31, 2006, the Company outlined the key tenets of a

transformation plan that it believed would enable it to return to stable, profitable business

operations.  The Debtors stated that they needed to focus on five key areas: first, modifying the

Company's labor agreements to create a competitive arena in which to conduct business; second,

concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy

and labor costs and to ascertain GM's business commitment to the Company; third, streamlining

their product portfolio to capitalize on their world-class technology and market strengths and

make the necessary manufacturing alignment with their new focus; fourth, transforming their

salaried workforce to ensure that the Company's organizational and cost structure is competitive

and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable

solution to their pension situation.

E.    Plan Confirmation And Postconfirmation Matters

13.    The Confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases, including Delphi's labor unions and GM.  After the Plan was confirmed, the Debtors focused their efforts on satisfying the conditions for the Confirmed Plan to become effective.  On April 4, 2008, having satisfied those conditions, the Debtors began a formal closing process attended by representatives of GM, the exit lenders, and the Statutory Committees.  The Plan Investors, however, refused to participate in the closing or fund their obligations under the Investment Agreement.  Following April 4, the Debtors nevertheless continued working with their stakeholders to evaluate their options to move forward with emerging from chapter 11 as soon as reasonably practicable.

14.    On September 12, 2008, Delphi announced steps that it was taking to complete the successful restructuring of its U.S. operations, transformation of the company on a global basis, and emergence from chapter 11.  Those steps included implementing amended, comprehensive settlement agreements with GM, taking action to fund and preserve Delphi's hourly and salaried pension plans, and completing the reaffirmation process for Delphi's August 2008 Reaffirmed Plan Of Reorganization Business Plan.

15.    Concurrently with the announcement on September 12, 2008, the Debtors filed a motion for approval of two comprehensive agreements with GM: the Amended and Restated Global Settlement Agreement (the "Amended GSA") and the Amended and Restated Master Restructuring Agreement (the "Amended MRA").  On September 26, 2008, this Court entered an order authorizing the Debtors' implementation of the Amended GSA and the Amended MRA, the provisions of which became effective on September 29, 2008.

16.    Through the Amended GSA and Amended MRA, the Debtors addressed two fundamental tenets of their Transformation Plan: (i) obtaining financial support from GM for certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going forward and (ii) devising a workable solution to Delphi's pension funding situation.  Under the Amended GSA and Amended MRA, GM agreed to contribute substantial additional value to the Debtors and eliminate significant elements of conditionality to the performance of GM's obligations.  Delphi estimates the value of the net consideration received under the Amended GSA and Amended MRA to be approximately $10.6 billion (increased from approximately $6.0 billion under the Original GSA and Original MRA), which includes an increase of nearly $2 billion in connection with the amount of Delphi's net hourly pension liabilities transferred and to be transferred to GM pursuant to section 414(l) of the Internal Revenue Code (increased from $1.5 billion under the Original GSA to approximately $3.4 billion under the Amended GSA).  As part of the approval process of the Amended GSA and Amended MRA, Delphi, GM, and the Creditors' Committee negotiated a consensual first amendment to the Amended GSA which sets forth the circumstances under which GM would allocate a portion of its recovery to unsubordinated general unsecured creditors.

17.    Through the transfer of pension assets and liabilities to GM described above and the freezing of Delphi's hourly pension plan (which was also approved as part of the Amended GSA with the consent of Delphi's U.S. unions), Delphi has substantially achieved its pension funding strategy objectives for hourly employees.  In addition, on  September 23, 2008, this Court entered an order authorizing the Debtors to take certain actions with respect to certain of its pension plans and to implement replacement pension plans (the "Pension Order").  With respect to its salaried employees, pursuant to the Pension Order, on September 30, 2008, Delphi

froze the applicable salaried pension plans and implemented replacement plans that will be more

cost-effective for the remainder of their chapter 11 cases and after emergence from chapter 11.

18.    As a result of all the factors described above, the Debtors were able to

formulate certain modifications to the Confirmed Plan, which are set forth in the Plan

Modification Approval Motion filed on October 3, 2008, and which are currently under review in

light of the current condition of the global capital markets and global automotive industry.

19.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will seek to preserve and continue the strategic growth of its non-U.S. operations

and maintain its prominence as the world's premier auto supplier.

F.    Bar Date, Proofs Of Claim, And Omnibus Claims Objections

20.    On April 12, 2006, this Court entered an Order Under 11 U.S.C. §§ 107(b),

501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a)

Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice

Thereof (Docket No. 3206) (the "Bar Date Order").  Among other things, the Bar Date Order

established July 31, 2006 (the "Bar Date") as the last date for all persons and entities holding or

wishing to assert "Claims," as such term is defined in 11 U.S.C. § 101(5) (each, a "Claim"),

against a Debtor (collectively, the "Claimants") to file a proof of claim with respect to each such

Claim.

21.    On or prior to April 20, 2006, Kurtzman Carson Consultants LLC, the

claims and noticing agent in these cases (the "Claims Agent"), provided notice of the Bar Date

by mailing a notice of Bar Date approved by this Court (the "Bar Date Notice"), together with a

proof of claim form, to (a) the persons or entities set forth in the Debtors' Schedules of Assets

and Liabilities and Statements of Financial Affairs filed with this Court on January 20, 2006 (and

subsequently amended on February 1, 2006 and April 18, 2006) (collectively, the "Schedules and

Statements")[4] and (b) the persons and entities included in the notice database compiled by the

Debtors, but not listed on any of the Schedules and Statements.  In total, the Debtors provided

Bar Date Notices to more than 500,000 persons and entities.

   22. In addition, the Debtors published the Bar Date Notice in the New York

Times (National Edition), the Wall Street Journal (National, European, and Asian Editions),

USA Today (Worldwide Edition), the Automotive News (National Edition), and in local editions

of the following publications: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo

News, the Chicago Sun Times, the Clinton News, the Columbia Dispatch, the Daily Leader,

Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, the

Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greenville News, the Indianapolis

Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader,

the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, the Mobile

Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the

Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, the Tuscaloosa

News, and The Vindicator, and electronically through posting on the Delphi Legal Information

Website, www.delphidocket.com, on or before April 24, 2006.

---

[4] The Schedules and Statement were subsequently amended on October 12, 2007, January 17, 2008, and October 10, 2008.

23.      Approximately 16,825 proofs of claim (the "Proofs of Claim") have been filed against the Debtors in these cases.  The Debtors have filed 32 omnibus Claims objections,[5] pursuant to which this Court has disallowed and expunged 9,884 Claims and modified approximately 3,888 Claims.  In addition, the hearings with respect to approximately 155 Claims remain adjourned pursuant to the Claims Objection Procedures Order (as defined below).

24.      On October 31, 2006, the Debtors filed the Motion For Order Pursuant To 11 U.S.C. §§ 502(b) And 502(c) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Disallowance Or Estimation Of Claims And (ii) Certain Notices And Procedures Governing Hearings Regarding Disallowance Or Estimation Of Claims (Docket No. 5453), in which the Debtors requested this Court, among other things, to approve certain procedures for contested claim objections.  On December 7, 2006, the Court entered the Order Pursuant To 11 U.S.C. § 502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (i) Dates For Hearings Regarding Objections To Claims And (ii) Certain Notices And Procedures Governing Objections to Claims (Docket No. 6089) (the "Claims Objection Procedures Order").

25.      On November 30, 2007, the Debtors filed the Motion Under New Bankruptcy Rule 3007(c) And 11 U.S.C. § 105(a) For Order Authorizing Debtors To Continue Claims Objection Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. §

---

[5]     The Debtors filed Claims objections on September 19, 2006 (Docket No. 5151), October 31, 2006 (Docket Nos. 5451 and 5452), December 8, 2006 (Docket Nos. 6099 and 6100), January 12, 2007 (Docket Nos. 6571 and 6585), February 15, 2007  (Docket Nos. 6962 and 6968), March 16, 2007 (Docket Nos. 7300 and 7301), April 27, 2007 (Docket Nos. 7824 and 7825), May 22, 2007 (Docket Nos. 7998 and 7999), June 15, 2007 (Docket Nos. 8270 and 8271), July 13, 2007 (Docket Nos. 8616 and 8617), August 24, 2007 (Docket No. 9151), September 21, 2007 (Docket No. 9535), October 26, 2007 (Docket No. 10738), November 19, 2007 (Docket No. 10982), December 21, 2007 (Docket No. 11588), January 18, 2008 (Docket No. 12288), February 15, 2008 (Docket Nos. 12686 and 12687), March 27, 2008 (Docket Nos. 13269 and 13270), June 27, 2008 (Docket No. 13823), October 17, 2008 (Docket No. 14349), and November 14, 2008 (Docket No. 14442).

502(b) And Fed. R. Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I)

Dates For Hearings Regarding Objections To Claims And (II) Certain Notices And Procedures

Governing Objections To Claims (Docket No. 11187).  In that motion, the Debtors requested this

Court, among other things, to authorize the Debtors to continue certain of their current practices

and procedures for filing and serving notice of omnibus Claims objections pursuant to the Claims

Objection Procedures Order, including omnibus Claims objections to more than 100 Claims.  On

December 20, 2007, this Court granted this relief by entering the Order Under New Bankruptcy

Rule 3007 And 11 U.S.C. § 105(a) Authorizing Debtors To Continue Claims Objection

Procedures Under Order Dated December 7, 2006 Pursuant To 11 U.S.C. § 502(b) And Fed. R.

Bankr. P. 2002(m), 3007, 7016, 7026, 9006, 9007, And 9014 Establishing (I) Dates For Hearings

Regarding Objections To Claims And (II) Certain Notices And Procedures Governing

Objections To Claims (Docket No. 11561).

      26.     In this Objection, the Debtors are objecting to 133 Proofs of Claim and 18

Claims listed on the Debtors' Schedules and Statements, as currently amended (the "Scheduled

Liabilities"), all of which are set forth on Exhibit F hereto in alphabetical order by claimant and

cross-referenced by proof of claim number and basis of objection.

Relief Requested

      27.     By this Objection, the Debtors seek entry of an order pursuant to section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 modifying and allowing (a) the

Claims for liabilities owing in connection with the Debtors' Supplemental Executive Retirement

Program (the "SERP")[6] (each, a "SERP Claim" and, collectively, the "SERP Claims") set forth

---

[6]    Since the separation from GM, Delphi has maintained the SERP for certain senior level salaried employees to
provide retirement benefits that are comparable to those provided to their industry peers.  The SERP is a non-

*(cont'd)*

on Exhibit A-1 hereto as "SERP Claims Subject To Modification" because the Debtors have

reached a settlement in principle with the holder (each, a "SERP Claim Holder" and, collectively,

the "SERP Claim Holders") of each such SERP Claim in the amount set forth on Exhibit A-1 and

(b) the Scheduled Liabilities set forth on Exhibit A-2 hereto as "SERP Scheduled Liabilities

Subject To Modification" because the Debtors have reached a settlement in principle with each

party (each, a "SERP Scheduled Party" and, collectively, the "SERP Scheduled Parties") to

whom a Scheduled Liability is owing arising from the SERP (each, a "SERP Scheduled

Liability") in the amount set forth on Exhibit A-2.

> 28.    Second, the Debtors seek entry of an order pursuant to section 502(b) of

the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging the SERP Claims

set forth on Exhibit B hereto as "Claims To Be Expunged" because they are duplicative of other

Claims or have been amended or superseded by later-filed Claims (the "Duplicate Or Amended

SERP Claims").

> 29.    Third, the Debtors seek entry of an order pursuant to section 502(b) of the

Bankruptcy Code and Bankruptcy Rule 3007 modifying and allowing the Claims set forth on

Exhibit C hereto because the Debtors have reached a settlement in principle with the holders of

such Claims in the amount of each such Claim set forth on Exhibit C.

> 30.    Finally, by this Objection, the Debtors seek entry of an order pursuant to

section 502(b) of the Bankruptcy Code and Bankruptcy Rule 3007 disallowing and expunging

---

*(cont'd from previous page)*

qualified defined benefit plan under the Internal Revenue Code (the "IRC") that is separate from, but is
integrated with, the Delphi Retirement Program for Salaried Employees, which is the defined benefit pension
plan under the IRC that Delphi maintains for its salaried employees.  In connection with obligations allegedly
owing under the SERP, certain claimants filed proofs of claim against the Debtors and certain other creditors
were listed as scheduled creditors on the Debtors' statements of schedules and liabilities.  By this Objection, the
Debtors seek, among other things, to modify and allow those SERP Claims (including both Proofs of Claim and
Scheduled Liabilities) that have been settled in principle.

the Claim set forth on Exhibit D hereto as "Claim To Be Expunged Pursuant To Settlement"

because the Debtors have reached a settlement in principle with the holder of such Claim that the

Claim should be disallowed and expunged.

## Objections To Claims

G.    SERP Claims And Scheduled Liabilities Subject To Modification

31.    During their Claims review, the Debtors determined that certain SERP

Claims Subject To Modification state the incorrect amount or are overstated.  The Debtors have

also determined that certain SERP Scheduled Liabilities Subject To Modification reflect

liabilities or dollar amounts that are incorrect or overstated.

(a)    SERP Claims Subject To Modification

32.    In reconciling the SERP Claims Subject To Modification, the Debtors,

together with the SERP Claim Holders, have reached a settlement in principle with respect to the

proper amount and classification of each SERP Claim Subject To Modification as well as the

proper Debtor which is liable for each such SERP Claim Subject To Modification.

33.    The Debtors, having reached a settlement in principle with each SERP

Claim Holder, seek to convert the amount of each SERP Claim Subject To Modification to a

fully liquidated amount agreed to between the Debtors and the SERP Claim Holder and seek to

have such SERP Claim Subject To Modification allowed in that agreed-upon amount as an

unsecured Claim against the agreed-upon Debtor.

34.    Set forth on Exhibit A-1 is a list of SERP Claims Subject To Modification

that the Debtors believe should be modified solely to assert a properly classified, fully liquidated

claim amount against a Debtor that, in some instances, may be different from the one identified

by the SERP Claim Holder in the Proof of Claim.  For each SERP Claim Subject To

14

Modification, Exhibit A-1 reflects the amount,[7] classification, and Debtor asserted in the SERP

Claim Holder's Proof of Claim in a column titled "SERP Claim As Docketed." The Debtors and

each SERP Claim Holder now agree that the amount owed in respect of each SERP Claim

Subject To Modification is the proposed modified dollar amount for the SERP Claim set forth on

Exhibit A-1 in a column titled "SERP Claim As Modified," and that the named Debtor identified

in that column is the sole obligor for the SERP Claim.

       35.     The Debtors object to the asserted amount of each SERP Claim Subject To

Modification listed on Exhibit A-1 and request that each such SERP Claim be allowed the

amount listed in the "SERP Claim As Modified" column of Exhibit A-1, provided, however, that

each such claim will be automatically adjusted, as necessary, to account for, among other things,

actual payments received by the SERP Claim Holder during these chapter 11 cases pursuant to

the Order Under 11 U.S.C. §§ 105(a), 363, 507, 1107, And 1108 (I) Authorizing Debtors To Pay

Prepetition Wages And Salaries To Employees And Independent Contractors; (II) Authorizing

Debtors To Pay Prepetition Benefits And Continue Maintenance Of Human Capital Benefit

Programs In The Ordinary Course; And (III) Directing Banks To Honor Prepetition Checks For

Payment Of Prepetition Human Capital Obligations (Docket No. 198) (the "Human Capital

Order") entered by this Court on October 13, 2005.[8] Thus, no SERP Claim Holder listed on

Exhibit A-1 would be entitled to receive a distribution on any SERP Claim Subject To

Modification in an amount exceeding the dollar value listed as the "Modified Total" for such

Claim on Exhibit A-1.

---

[7]    The asserted amounts for SERP Claims Subject To Modification on Exhibit A-1 reflect only asserted liquidated claims.

[8]    The amounts set forth on Exhibit A-1 reflect payments made pursuant to the Human Capital Order prior to the filing of this Objection.

36.    The Debtors are authorized to seek allowance of each of the SERP Claims Subject To Modification because either (a) the SERP Claims involve ordinary course controversies or (b) they have authority to do so under the Amended And Restated Order Under 11 U.S.C. §§ 363, 502, And 503 And Fed. R. Bankr. P. 9019(b) Authorizing Debtors To Compromise Or Settle Certain Classes Of Controversy And Allow Claims Without Further Court Approval (Docket No. 8401) entered on June 26, 2007 (the "Amended And Restated Settlement Procedures Order").

37.    Accordingly, the Debtors (a) object to the asserted amount for each SERP Claim Subject To Modification set forth on Exhibit A-1 and (b) seek an order modifying and allowing each SERP Claim Subject To Modification to reflect the Modified Total and, where applicable, the appropriate Debtor, as set forth on Exhibit A-1.

(b)    SERP Scheduled Liabilities Subject To Modification

38.    During the Debtors' review of liabilities owed in connection with the SERP, the Debtors reached settlements in principle with each SERP Scheduled Party to whom a SERP Scheduled Liability Subject To Modification is owing.  Accordingly, the Debtors seek to convert the amount of each SERP Scheduled Liability Subject To Modification to a fully liquidated amount agreed to between the Debtors and the relevant SERP Scheduled Party and seek to have such SERP Scheduled Liability Subject To Modification allowed in that agreed-upon amount as an unsecured Scheduled Liability against the agreed-upon Debtor.

39.    Set forth on Exhibit A-2 is a list of SERP Scheduled Liabilities Subject To Modification that the Debtors believe should be allowed as a properly classified, fully liquidated Claim.  Accordingly, the Debtors object to the amount for each SERP Scheduled Liability Subject To Modification listed on Exhibit A-2 and request that each such SERP Claim be revised to reflect the amount listed in the "SERP Scheduled Liability As Modified" column of Exhibit A-

2, provided, however, that each such claim will be automatically adjusted, as necessary, to

account for, among other things, actual payments received by the SERP Scheduled Party during

these chapter 11 cases pursuant to the Human Capital Order.[9] Thus, no SERP Scheduled Party

listed on Exhibit A-2 would be entitled to receive a distribution on any SERP Scheduled

Liability Subject To Modification in an amount exceeding the dollar value listed as the

"Modified Total" for such Claim on Exhibit A-2.

       40.      For clarity, Exhibits A-1 and A-2 refer to a Debtor entity by case number

and Exhibit E sets forth the formal name of the Debtor entity and its associated bankruptcy case

number referenced in Exhibits A-1 or A-2.

       41.      The Debtors are authorized to seek allowance of each of the SERP

Scheduled Liabilities Subject To Modification because either (a) the SERP Scheduled Liabilities

Subject To Modification involve ordinary course controversies or (b) they have authority to do

so under the Amended And Restated Settlement Procedures Order.

H.     Duplicate Or Amended SERP Claims

       42.      During their Claims review, the Debtors determined that certain Proofs of

Claim in fact assert a duplicate SERP Claim (the "Duplicate SERP Claims") for a single liability.

In such instances, a Duplicate SERP Claim arose when a Claimant filed two Proofs of Claim

against the same Debtor entity for the same liability.  In an effort to eliminate the Duplicate

SERP Claims, the Debtors reviewed the Proofs of Claim, the supporting documentation provided

in those Proofs of Claim, and the Debtors' Schedules and Statements to determine which

Duplicate SERP Claim should be the surviving claim.

---

[9]    The amounts set forth on Exhibit A-2 reflect payments made pursuant to the Human Capital Order prior to the filing of this Objection.

43.     Additionally, the Debtors determined that certain SERP Claims evidenced by Proofs of Claim were subsequently amended or superseded by other Proofs of Claim filed by creditors with respect to the same liabilities (the "Amended SERP Claims").  For instance, the Amended SERP Claims were filed to (a) amend an amount previously asserted in an earlier Proof of Claim (the "Original Claim") and/or (b) to amend the classification of an earlier Original Claim.

44.     It is axiomatic that creditors are not entitled to multiple recoveries for a single liability against a debtor.  Accordingly, the Debtors wish to eliminate (a) the Duplicate SERP Claims and (b) Original Claims for which Amended SERP Claims were subsequently filed.

45.     Set forth on Exhibit B is a list of SERP Claims that the Debtors have identified as Duplicate Or Amended SERP Claims.  For each Duplicate Or Amended SERP Claim, Exhibit B classifies a Proof of Claim as either a "SERP Claim To Be Expunged" or as a "Surviving SERP Claim."  The current status of each Surviving SERP Claim is set forth on Exhibit B.  The Debtors request that each Claim identified as a SERP Claim To Be Expunged on Exhibit B be disallowed and expunged in its entirety.

I.     Claims Subject To Modification

46.     During their Claims review, the Debtors determined that certain Claims for liabilities, other than liabilities owing in connection with the SERP, state an incorrect amount or are overstated (collectively, the "Claims Subject To Modification").  In reconciling the Claims Subject To Modification, the Debtors, together with the current holders of such Claims and, as applicable, the original claimants asserting such Claims (the "Claimants"), have reached a settlement in principle with respect to the proper amount and classification of each Claim Subject To Modification as well as the proper Debtor which is liable for each such Claim.

47.    The Debtors, having reached a settlement in principle with each Claimant, seek to convert the amount of each Claim Subject To Modification to a fully liquidated amount agreed to between the Debtors and the Claimant and seek to have such Claim allowed in that agreed-upon amount as an unsecured Claim against the agreed-upon Debtor.

48.    Set forth on Exhibit C is a list of Claims Subject To Modification that the Debtors believe should be modified solely to assert a properly classified, fully liquidated claim amount against a Debtor that, in some instances, may be different from the one identified by the Claimant.  For each Claim Subject To Modification, Exhibit C reflects the amount, classification, and Debtor asserted in the Claimant's Proof of Claim in a column titled "Claim As Docketed."[10] The Debtors and each Claimant now agree that the amount asserted in each Claim Subject To Modification is owed only in the proposed modified dollar amount for the Claim set forth on Exhibit C in a column titled "Claim As Modified," and that the named Debtor identified in that column is the sole obligor on the Claim.

49.    The Debtors object to the amount for each Claim Subject To Modification listed on Exhibit C and request that each such Claim be revised to reflect the amount listed in the "Claim As Modified" column of Exhibit C.  Thus, no Claimant listed on Exhibit C would be entitled to receive a distribution on any Claim Subject To Modification in an amount exceeding the dollar value listed as the "Modified Total" for such Claim on Exhibit C.  For clarity, Exhibit C refers to a Debtor entity by case number and Exhibit D sets forth the formal name of the Debtor entity and its associated bankruptcy case number referenced in Exhibit C.

---

[10]    The "Asserted Claim Amounts" on Exhibit C reflect only asserted liquidated claims.

50.     As stated above, the Debtors are authorized to seek allowance of each of the Claims Subject To Modification because either (a) the Claims involve ordinary course controversies or (b) the Debtors have authority to do so under the Settlement Procedures Order.

51.     Accordingly, the Debtors (a) object to the asserted amount for each Claim Subject To Modification set forth on Exhibit C and (b) seek an order modifying and allowing each Claim Subject To Modification to reflect the Modified Total and, where applicable, the appropriate Debtor as set forth on Exhibit C.

J.     Claim To Be Expunged Pursuant To Settlement

52.     During their Claims review, the Debtors determined that a certain Proof of Claim asserts liabilities and a dollar amount that are not owing as a result of a settlement in principle with the holder of the Claim (the "Claim To Be Expunged Pursuant To Settlement"). Accordingly, the Debtors wish to eliminate the Claim To Be Expunged Pursuant To Settlement.

53.     Set forth on Exhibit D is the Claim that the Debtors have identified as the Claim To Be Expunged Pursuant To Settlement.  The Debtors request that the Claim marked as the Claim To Be Expunged Pursuant To Settlement on Exhibit D be disallowed and expunged in its entirety.

54.     Accordingly, the Debtors (a) object to the Claim To Be Expunged Pursuant To Settlement listed on Exhibit D and (b) seek entry of an order disallowing and expunging in its entirety the Claim To Be Expunged Pursuant To Settlement.

Separate Contested Matters

55.     Pursuant to the Claims Objection Procedures Order, to the extent that a response is filed with respect to any Claim listed in this Thirty-Third Omnibus Claims Objection, each such Claim and the objection to such Claim asserted in this Objection will be deemed to constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Pursuant to the

20

Claims Objection Procedures Order, any order entered by the Court with respect to an objection asserted in this Objection will be deemed a separate order with respect to each Claim.

<u>Releases And Reservation Of Rights</u>

56.    The Debtors expressly reserve the right to amend, modify, or supplement this Thirty-Third Omnibus Claims Objection and to file additional objections to any other Claims (filed or not) which may be asserted against the Debtors, including without limitation the right to object to any Claim not objected to in this Objection on the basis that it has been asserted against the wrong Debtor entity.  Should one or more of the grounds for objection stated in this Objection be dismissed, the Debtors reserve their rights to object on other stated grounds or on any other grounds that the Debtors discover during the pendency of these cases.  In addition, the Debtors reserve the right to seek further reduction of any Claim to the extent that such Claim has been paid.

57.    For each Claim the Debtors seek to allow pursuant to this Objection, <u>such allowance is conditioned upon the following releases and reservations of rights</u>:

(a)    The allowance of the Claim shall act as an injunction against any "Person" (as that term is defined in 101(41) of the Bankruptcy Code) commencing any action, employment of process, or act to collect, offset, or recover with respect to each such Claim.  This injunction specifically includes all Actions under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination in Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age.  Nothing contained herein is intended to preclude Delphi from continuing the

21

benefits provided under the Delphi Life And Disability Benefits Program For Salaried Employees and the Salaried Health Care Plan (or Claimant's rights, if any, to receive benefits thereunder), subject to the terms thereof and Delphi's rights and defenses thereto. Furthermore, nothing contained herein shall alter (a) the Claimant's right(s) to continue to receive benefits related to the Delphi Retirement Program for Salaried Employees and (b) Delphi's reciprocal rights and defenses thereto.

(b)     The allowance of each such Claim subject to this Thirty-Third Omnibus Claims Objection will hereby resolve all of the responses filed by Claimants to prior omnibus claims objections with respect to each such Claim subject to this Thirty-Third Omnibus Claims Objection.

58.     For each Claim Subject To Modification the Debtors seek to allow pursuant to this Objection, such allowance is further conditioned upon the following releases and reservations of rights:

(a)     Without further order of this Court, the Debtors are authorized to offset or reduce the Claim Subject To Modification for purposes of distribution to holders of allowed claims entitled to receive distributions under any plan of reorganization of the Debtors by the amount of any cure payments made on account of the assumption, pursuant to section 365 of the Bankruptcy Code, of an executory contract or unexpired lease to which the counterparty associated with the Proof of Claim is a party.

(b)     To the extent that a Claim Subject To Modification also incorporates a reclamation demand with respect to which either (i) the Debtors and the Claimant have entered into a letter agreement whereby the Debtors and the Claimant agreed upon the valid amount of the reclamation demand or (ii) the Claimant is deemed to have consented to the Debtors' determination of the valid amount of the reclamation demand (with respect to (b)(i) and (ii), each, a "Reclamation Agreement"), the Claimant holding such Claim Subject To Modification reserves the right, pursuant to section 503(b) of the Bankruptcy Code, to seek administrative priority status for that portion of the Claim Subject To Modification subject to such Reclamation Agreement, subject to the Debtors' right to seek, at any time and notwithstanding a Claimant's agreement to the amount pursuant to the Reclamation Agreement, a judicial determination that certain reserved defenses (the "Reserved Defenses") with respect to the reclamation demand are valid and the classification set forth on Exhibit C for such Claim Subject To Modification shall not

22

be deemed to waive or in any way impair the foregoing right of the Claimant to seek administrative expense priority status for that portion of the Claim Subject To Modification subject to such Reclamation Agreement.

Responses To Objections

59.     Responses to the Thirty-Third Omnibus Claims Objection are governed by the provisions of the Claims Objection Procedures Order.  The following summarizes the provisions of that Order, but is qualified in all respects by the express terms thereof.

K.     Filing And Service Of Responses

60.     To contest an objection, responses (each, a "Response"), if any, to the Thirty-Third Omnibus Claims Objection must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Claims Objection Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel) and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton), in each case so as to be **received no later than 4:00 p.m. (prevailing Eastern time) on January 20, 2009**.

L.    <u>Contents Of Responses</u>

61.    Every Response to this Thirty-Third Omnibus Claims Objection must

contain at a minimum the following:

(a)    the title of the claims objection to which the Response is directed;

(b)    the name of the Claimant and a brief description of the basis for the amount of the Claim;

(c)    a concise statement setting forth the reasons why the Claim should not be disallowed and expunged, including, but not limited to, the specific factual and legal bases upon which the Claimant will rely in opposing the claims objection;

(d)    unless already set forth in the Proof of Claim previously filed with the Court, documentation sufficient to establish a prima facie right to payment; <u>provided</u>, <u>however</u>, that the Claimant need not disclose confidential, proprietary, or otherwise protected information in the Response; <u>provided</u> <u>further</u>, <u>however</u>, that the Claimant must disclose to the Debtors all information and provide copies of all documents that the Claimant believes to be confidential, proprietary, or otherwise protected and upon which the Claimant intends to rely in support of its Claim, subject to appropriate confidentiality constraints;

(e)    to the extent that the Claim is contingent or fully or partially unliquidated, the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate; and

(f)    the address(es) to which the Debtors must return any reply to the Response, if different from the address(es) presented in the claim.

M.    <u>Timely Response Required</u>

62.    If a Response is properly and timely filed and served in accordance with

the foregoing procedures, the hearing on the relevant Claims covered by the Response will be

adjourned to a future hearing, the date of which will be determined by the Debtors, by serving

notice to the Claimant as provided in the Claims Objection Procedures Order.  With respect to all

uncontested objections, the Debtors request that this Court conduct a final hearing on January 27,

2009 at 10:00 a.m. (prevailing Eastern time).  The procedures set forth in the Claims Objection

Procedures Order will apply to all Responses and hearings arising from this Thirty-Third Omnibus Claims Objection.

63.    Pursuant to the Claims Objection Procedures Order, only those Responses made in writing and timely filed and received will be considered by the Court.  If a Claimant whose Proof of Claim is subject to the Thirty-Third Omnibus Claims Objection and who is served with the Thirty-Third Omnibus Claims Objection fails to file and serve a timely Response in compliance with the Claims Objection Procedures Order, the Debtors may present to the Court an appropriate order seeking relief with respect to such Claim consistent with the relief sought in the Thirty-Third Omnibus Claims Objection without further notice to the Claimant, provided that, upon entry of such an order, the Claimant will receive notice of the entry of such order as provided in the Claims Objection Procedures Order; provided further, however, that if the Claimant files a timely Response which does not include the required minimum information required by the Claims Objection Procedures Order, the Debtors may seek disallowance and expungement of the relevant Claim or Claims only in accordance with the Claims Objection Procedures Order.

64.    To the extent that a Claim would be subject to estimation pursuant to section 502(c) of the Bankruptcy Code, if the Claimant has filed a Response in accordance with the procedures outlined above which (a) acknowledges that the Claim is contingent or fully or partially unliquidated and (b) provides the amount that the Claimant believes would be the allowable amount of such Claim upon liquidation of the Claim or occurrence of the contingency, as appropriate (the "Claimant's Asserted Estimated Amount"), pursuant to the Claims Objection Procedures Order the Debtors may elect to accept provisionally the Claimant's Asserted Estimated Amount as the estimated amount of such Claim pursuant to section 502(c) of the

25

Bankruptcy Code for all purposes other than allowance, but including voting and establishing

reserves for purposes of distribution under a reorganization plan, subject to further objection and

reduction as appropriate and section 502(j) of the Bankruptcy Code, by providing notice as

described more fully in the Claims Objection Procedures Order.

Replies To Responses

65.     Replies to any Responses will be governed by the Claims Objection

Procedures Order.

Service Of Thirty-Third Omnibus Claims Objection Order

66.     Service of any order with regard to this Thirty-Third Omnibus Claims

Objection will be made in accordance with the Claims Objection Procedures Order.

Further Information

67.     Questions about this Thirty-Third Omnibus Claims Objection or requests

for additional information about the proposed disposition of Claims hereunder should be directed

to the Debtors' counsel by e-mail to delphi@skadden.com, by telephone at 1-800-718-5305, or in

writing to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., John K. Lyons, and Joseph N. Wharton).

Questions regarding the amount of a Claim or the filing of a Claim should be directed to the

Claims Agent at 1-888-249-2691 or www.delphidocket.com. Claimants should not contact the

Clerk of the Bankruptcy Court to discuss the merits of their Claims.

Notice

68.     Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

26

And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Thirteenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered December 4, 2008 (Docket No. 14534).  In light of the

nature of the relief requested, the Debtors submit that no other or further notice is necessary.

          69.      Pursuant to the Claims Objection Procedures Order, the Debtors will

provide each Claimant whose Proof of Claim is subject to an objection pursuant to this Thirty-

Third Omnibus Claims Objection with a personalized Notice Of Objection To Claim which

specifically identifies the Claimant's Proof of Claim that is subject to an objection and the basis

for such objection as well as a copy of the Claims Objection Procedures Order.  A form of the

Notice Of Objection To Claim to be sent to the Claimants listed on Exhibits A-1 and C is

attached hereto as Exhibit G.  A form of the Notice Of Objection To Claim to be sent to the

Claimants listed on Exhibits B and D is attached hereto as Exhibit H.  A form of the Notice Of

Objection To Claim to be sent to the Claimants listed on Exhibit A-2 is attached hereto as

Exhibit I.  Claimants will receive a copy of this Thirty-Third Omnibus Claims Objection without

Exhibits A through I hereto.  Claimants will nonetheless be able to review Exhibits A through I

hereto free of charge by accessing the Debtors' Legal Information Website

(www.delphidocket.com).  In light of the nature of the relief requested, the Debtors submit that

no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) granting the relief requested herein and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          December 22, 2008

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr.
     John K. Lyons
     Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

- and -

By:  /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti
     Thomas J. Matz
Four Times Square
New York, New York 10036

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession