IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
     In re                          :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                  Debtors.    :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

       I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

       On December 22, 2008, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via electronic notification and (ii) upon the parties listed on Exhibit B hereto via postage pre-paid U.S. mail:

          Order Under 11 U.S.C. §§ 363, 365, 1123, and 1146 and Fed.R.Bankr.P.2002, 6004, 6006, and 9014 Authorizing and Approving (I) Sale of Certain of Debtors' Assets Comprising Substantially All Assets of Debtors' Exhaust Emissions Business Free and Clear of Liens, Claims, and Encumbrances, (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Assumption of Certain Liabilities ("Exhaust Sale Approval Order") (Docket No. 14604) [a copy of which is attached hereto as Exhibit C]

Dated: December 24, 2008

                          /s/ Evan Gershbein
                          Evan Gershbein

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me on this 24th day of December, 2008, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: /s/ Shannon J. Spencer

Commission Expires: 6/20/10

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | rstark@brownrudnick.com | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | bsimon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | sreisman@cm-p.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | donald.bernstein@dpw.com brian.resnick@dpw.com | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | cschiff@flextronics.com | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | paul.anderson@flextronics.com | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | trey.chambers@freescale.com | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | rodbuje@ffhsj.com sliviri@ffhsj.com | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | lhassel@groom.com | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | richard.duker@jpmorgan.com | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | susan.atkins@jpmorgan.com | Postpetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | sbetance@kccllc.com | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | robert.rosenberg@lw.com | Counsel to Official Committee of Unsecured Creditors |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

12/23/2008 12:19 PM
Master Service List 081119 Email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | jdejonker@mwe.com | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | pclark@mwe.com | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | conh@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | bmctigue@mctiguelaw.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | gbray@milbank.com tkreller@milbank.com jtill@milbank.com | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | jmoldovan@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | william.dornbos@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Karen L. Morris, John Menke, Ralph L. Landy, Beth A. Bangert | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | landy.ralph@pbgc.gov morris.karen@pbgc.gov menke.john@pbfgc.gov bangert.beth@pbgc.gov efile@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | ddoyle@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | nfranke@spencerfane.com | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | cp@stevenslee.com cs@stevenslee.com | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | mwarner@warnerstevens.com | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | harvey.miller@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/23/2008 12:19 PM
Master Service List 081119 Email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Adalberto Cañadas Castillo | | Avda Ramon de Carranza | 10-1° | Cadiz | | 11006 | Spain | 34 956 226 311 | adalberto@canadas.com | Representative to DASE |
| Adler Pollock & Sheehan PC | Joseph Avanzato | One Citizens Plz 8th Fl | | Providence | RI | 02903 | | 401-274-7200 | javanzato@apslaw.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-902-6028 | david.boyle@airgas.com | Counsel to Airgas, Inc. |
| Akebono Brake Corporaton | Brandon J. Kessinger | 310 Ring Road | | Elizabethtown | KY | 42701 | | 270-234-5580 | bkessinger@akebono-usa.com | Representative for Akebono Corporation |
| Akin Gump Strauss Hauer & Feld, LLP | David M Dunn | 1333 New Hampshire Ave NW | | Washington | DC | 20036 | | 202-887-4000 | ddunn@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Ira S Dizengoff | One Bryant Park | | New York | NY | 10036 | | 212-872-1000 | idizengoff@akingump.com | Counsel to TAI Unsecured Creditors Liquidating Trust |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | pgurfein@akingump.com | Counsel to Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | mgreger@allenmatkins.com | Counsel to Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | craig.freeman@alston.com | Counsel to Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | dconnolly@alston.com dwender@alston.com | Counsel to Cadence Innovation, LLC, PD George Co, Furukawa Electric Company, Ltd., and Furukawa Electric North America APD, Inc. |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | gogimalik@andrewskurth.com | Counsel to ITW Mortgage Investments IV, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | mtf@afrct.com | Counsel to Stanley Electric Sales of America, Inc. |
| Anthony Ostlund & Baer PA | John B Orenstein | 3600 Wells Fargo Ctr | 90 S 7th St | Minneapolis | MN | 55402 | | 612-349-6969 | jorenstein@aoblaw.com | Attorneys for Whitebox Hedged High Yield Partners, LP |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | Cohen.Mitchell@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | Hirsh.Robert@arentfox.com | Counsel to Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | joel_gross@aporter.com | Counsel to CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | cgalloway@atsautomation.com | Company |
| Balch & Bingham LLP | Eric T. Ray | PO Box 306 | | Birmingham | AL | 35201 | | 205-251-8100 | eray@balch.com | Attorney for Alabama Power Company |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | Kimberly J. Robinson | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | kim.robinson@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum & Nagelberg LLP | William J. Barrett | 200 W Madison St Ste 3900 | | Chicago | IL | 60606 | | 312-984-3100 | william.barrett@bfkn.com | Counsel to Motion Industries, Inc., EIS, Inc. and Johnson Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | alan.mills@btlaw.com | Counsel to Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | mark.owens@btlaw.com | Counsel to Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | michael.mccrory@btlaw.com | Counsel to Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | wendy.brewer@btlaw.com | Counsel to Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | 9th Floor | Boston | MA | 02110 | | 617-422-0200 | ffm@bostonbusinesslaw.com | Counsel to Iron Mountain Information Management, Inc. |
| Beeman Law Office | Thomas M Beeman | 33 West 10th Street | Suite 200 | Anderson | IN | 46016 | | 765-640-1330 | tom@beemanlawoffice.com | Counsel to Madison County (Indiana) Treasurer |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | hannah@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | sean@blbglaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Wallace A. Showman | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1429 | wallace@blbglaw.com | Counsel to SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | murph@berrymoorman.com | Counsel to Kamax L.P.; Optrex America, Inc.; GKN Sinter Metals, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Bingham McHale LLP | Whitney L Mosby | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-635-8900 | wmosby@binghammchale.com | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | mrichards@blankrome.com | Counsel to Freudenberg-NOK; DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | rmcdowell@bodmanllp.com | Counsel to Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | chill@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | csullivan@bsk.com | Counsel to Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | sdonato@bsk.com | Counsel to Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Michael A Trentadue Carina M de la Torre | 111 Monument Circle Ste 2700 | | Indianapolis | IN | 46204 | | 317-684-5000 | mtrentadue@boselaw.com cdelatorre@boselaw.com | Counsel to Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Manufacturing Compnay Southwest, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | amcmullen@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | rjones@bccb.com | Counsel to Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brembo S.p.A. | Massimilliano Cini | Administration Department via Brembo 25 | 24035 Curno BG | Bergamo | | | Italy | 00039-035-605-529 | massimiliano_cini@brembo.it | Creditor |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | dludman@brownconnery.com | Counsel to SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | schristianson@buchalter.com | Counsel to Oracle USA, Inc.; Oracle Credit Corporation |
| Buchanan Ingersoll & Rooney | Mary Caloway | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | mary.caloway@bipc.com | Counsel to Fiduciary Counselors |
| Buchanan Ingersoll & Rooney | William H. Schorling, Esq. | 1835 Market St. 14th Floor | | Philadelphia | PA | 19103 | | 215-665-5326 | william.schorling@bipc.com | Counsel to Fiduciary Counselors |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Cadwalader Wickersham & Taft LLP | Jeannine D'Amico | 1201 F St NW Ste 1100 | | Washington | DC | 20004 | | 202-862-2452 | jeannine.damico@cwt.com | Attorneys for the Audit Committee of Delphi Corporation |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | jonathan.greenberg@BASF.COM | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | rusadi@cahill.com | Counsel to Engelhard Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Calfee, Halter & Griswold LLC | Jean R. Robertson, Esq. | 1400 McDonald Investment Ctr | 800 Superior Ave | Cleveland | OH | 44114 | | 216-622-8404 | jrobertson@calfee.com | Counsel to Brush Engineered materials |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio Robert Calinoff | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | dhriggio@gmail.com rcalinoff@candklaw.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminium Rockledge, Inc., Norsk Hydro Canada, I |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | rweisberg@carsonfischer.com | Counsel to Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | cahn@clm.com | Counsel to STMicroelectronics, Inc. |
| Chadbourne & Parke LLP | Douglas Deutsch, Esq. | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-408-5100 | ddeutsch@chadbourne.com | Counsel to EagleRock Capital Management, LLC |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | japplebaum@clarkhill.com | Counsel to 1st  Choice Heating & Cooling, Inc.; BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Shannon Deeby | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | sdeeby@clarkhill.com | Counsel to BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | rgordon@clarkhill.com | Counsel to ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | maofiling@cgsh.com | Counsel to Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | tmaxson@cohenlaw.com | Counsel to Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale Babette Ceccotti | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | jvitale@cwsny.com bceccotti@cwsny.com | Counsel to International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge Wall Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | Pretekin@coollaw.com | Counsel to Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company; Attorneys for Columbia Industrial |
| Covington & Burling | Susan Power Johnston Aaron R. Marcu | 620 Eighth Ave | | New York | NY | 10018 | | 212-841-1005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Cox, Hodgman & Giarmarco, P.C. | Sean M. Walsh, Esq. | Tenth Floor Columbia Center | 101 W. Big Beaver Road | Troy | MI | 48084-5280 | | 248-457-7000 | swalsh@chglaw.com | Counsel to Nisshinbo Automotive Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | dpm@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | rsz@curtinheefner.com | Counsel to SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Cindi Eilbott | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6936 | ceilbott@curtis.com | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | wsavino@damonmorey.com | Counsel to Relco, Inc.; The Durham Companies, Inc. |
| David P. Martin | | 519 Energy Center Blvd | Ste 1104 | Northport | AL | 35401 | | 205-343-1771 | davidpmartin@erisacase.com davidpmartin@bellsouth.net | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Day Pitney LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | rmeth@daypitney.com | Counsel to Marshall E. Campbell Company |
| Day Pitney LLP | Ronald S. Beacher Conrad K. Chiu | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | rbeacher@daypitney.com cchiu@daypitney.com | Counsel to IBJTC Business Credit Corporation, as successor to IBJ Whitehall Business Credit Corporation |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Co-Counsel to Tower Automotive, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | john.persiani@dinslaw.com | Counsel to The Procter & Gamble Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | richard.kremen@dlapiper.com | Counsel to Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Dreier LLP | Maura I. Russell Wendy G. Marcari | 499 Park Ave | 14th Fl | New York | NY | 10022 | | 212-328-6100 | jguerrier@dreierllp.com | Counsel to SPCP Group LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Drinker Biddle & Reath LLP | Janice B. Grubin | 140 Broadway 39th Fl | | New York | NY | 10005-1116 | | 212-248-3140 | janice.grubin@dbr.com | Counsel to Vanguard Distributors, Inc. |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | jhlemkin@duanemorris.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; and Hosiden America Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Dykema Gossett PLLC | Douglas S Parker | 39577 Woodward Ave | Suite 300 | Bloomfield Hills | MI | 48304 | | 248-203-0703 | dparker@dykema.com | Counsel for Federal Screw |
| Dykema Gossett PLLC | Morgan Smith | 10 South Wacker Dr | Suite 2300 | Chicago | IL | 60606 | | 312-627-5679 | mmsmith@dykema.com | Attorneys for Tremond City Barrel Fill PRP Group |
| Dykema Gossett PLLC | Sharon A. Salinas | 10 South Wacker Dr | Suite 2300 | Chicago | IL | 60606 | | 312-627-2199 | ssalinas@dykema.com | Counsel to Tremont City Barrel Fill PRP Group |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 639 Loyola Ave 26th Fl | | New Orleans | LA | 70113 | | | akatz@entergy.com | Assistant General Counsel to Entergy Services, Inc |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | gettelman@e-hlaw.com | Counsel to Jon Ballin |
| Farrell Fritz PC | Louis A. Scarcella Patrick T. Collins | 1320 RexCorp Plaza | | Uniondale | NY | 11556-1320 | | 516-227-0700 | lscarcella@farrellfritz.com pcollins@farrellfritz.com | Counsel to Official Committee of Equity Holders |
| Filardi Law Offices LLC | Charles J. Filardi, Jr., Esq. | 65 Trumbull Street | Second Floor | New Haven | CT | 06510 | | 203-562-8588 | charles@filardi-law.com | Counsel to Federal Express Corporation |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | tdonovan@finkgold.com | Counsel to Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | David G Dragich | 500 Woodward Ave Suite 2700 | | Detroit | MI | 48226-3489 | | 313-234-7100 | ddragich@foley.com | Counsel to Intermet Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | jmurch@foley.com | Counsel to Kuss Corporation |
| Foley & Lardner LLP | John A. Simon | One Detroit Center | 500 Woodward Ave Suite 2700 | Detroit | MI | 48226-3489 | | 313-234-7100 | jsimon@foley.com | Counsel to Ernst & Young LLP |
| Foley & Lardner LLP | Michael P. Richman | 90 Park Avenue | 37th Floor | New York | NY | 10016-1314 | | 212-682-7474 | mrichman@foley.com | Counsel to Ernst & Young LLP |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | ftrikkers@rikkerslaw.com | Counsel to Southwest Metal Finishing, Inc. |
| Fulbright & Jaworski LLP | David A Rosenzweig | 666 Fifth Avenue | | New York | NY | 10103-3198 | | 212-318-3000 | drosenzweig@fulbright.com | Counsel to Southwest Research Institute Attorney for Solvay Fluorides, LLC |
| Fulbright & Jaworski LLP | Michael M Parker | 300 Convent St Ste 2200 | | San Antonio | TX | 78205 | | 210-224-5575 | mparker@fulbright.com | Counsel to Southwest Research Institute |
| Genovese Joblove & Battista, P.A. | David C. Cimo | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | dcimo@gjb-law.com | Counsel to Ryder Integrated Logistics, Inc. |
| Gibbons P.C. | David N. Crapo | One Gateway Center | | Newark | NJ | 07102-5310 | | 973-596-4523 | dcrapo@gibbonslaw.com | Counsel to Epcos, Inc. |
| Goldberg Segalla LLP | Attn Bruce W Hoover | 665 Main St Ste 400 | | Buffalo | NY | 14203 | | 716-566-5400 | bhoover@goldbergsegalla.com | Attorneys for MasTec Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | abrilliant@goodwinproctor.com | Counsel to UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | cdruehl@goodwinproctor.com | Counsel to UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | bmehlsack@gkllaw.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | James J Sabella | 485 Lexington Ave | | New York | NY | 10017 | | 646-722-8520 | jsabella@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | jeisenhofer@gelaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | mrr@previant.com | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | mdebbeler@graydon.com | Counsel to Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greenberg Traurig, LLP | Maria J. DiConza | MetLife Bldg | 200 Park Avenue | New York | NY | 10166 | | 212-801-9200 | diconzam@gtlaw.com | Counsel to Samtech Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Greenberg Traurig, LLP | Shari L. Heyen | 1000 Louisiana | Suite 1800 | Houston | TX | 77002 | | 713-374-3500 | heyens@gtlaw.com | Counsel to Samtech Corporation |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | ckm@greensfelder.com jpb@greensfelder.com | Counsel to ARC Automotive, Inc. |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc |
| Hancock & Estabrook LLP | R John Clark Esq | 1500 Tower I | PO Box 4976 | Syracuse | NY | 13221-4976 | | 315-471-3151 | rjclark@hancocklaw.com | Counsel to Alliance Precision Plastics Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | hleinwand@aol.com | Counsel to Baker Hughes Incorporated; Baker Petrolite Corporation |
| Haynes and Boone, LLP | Judith Elkin | 153 East 53rd Street | Suite 4900 | New York | NY | 10022 | | 212-659-7300 | judith.elkin@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Haynes and Boone, LLP | Lenard M. Parkins Kenric D. Kattner | 1 Houston Center | 1221 McKinney, Suite 2100 | Houston | TX | 77010 | | 713-547-2000 | lenard.parkins@haynesboone.com kenric.kattner@haynesboone.com | Counsel to Highland Capital Management, L.P. |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | prubin@herrick.com | Counsel to Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | sharon.petrosino@hp.com | Counsel to Hewlett-Packard Financial Services Company |
| Hinckley Allen & Snyder LLP | Michael J Pendell | 185 Asylum St CityPlace I | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | mpendell@haslaw.com | Counsel to Barnes Group, Inc. |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | echarlton@hiscockbarclay.com | Counsel to GW Plastics, Inc. |
| Hodgson Russ LLP | Julia S. Kreher | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1330 | jkreher@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 60 E 42nd St 37th Fl | | New York | NY | 10165-0150 | | 212-661-3535 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation, Co-Counsel for Yazaki North America, Inc. |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | amoog@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | ecdolan@hhlaw.com | Counsel to Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | sagolden@hhlaw.com | Counsel to XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | elizabeth.flaagan@hro.com | Counsel to CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | dbaty@honigman.com | Counsel to Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | tsable@honigman.com | Counsel to Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Lawrence J. Murphy | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226 | | 313-465-7488 | lmurphy@honigman.Com | Attorneys for Guide Corporation and Lightsource Parent Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | Seth A Drucker | 2290 First National Building | 660 Woodward Avenue Ste 2290 | Detroit | MI | 48226 | | 313-465-7626 | sdrucker@honigman.com | Counsel for Valeo Climate Control, Corp. |
| Howard & Howard Attorneys PC | Lisa S Gretchko | 39400 Woodward Ave | Ste 101 | Bloomfield Hills | MI | 48304-5151 | | 248-723-0396 | lgretchko@howardandhoward.com | Intellectual Property Counsel for Delphi Corporation, et al. |
| Howick, Westfall, McBryan & Kaplan, LLP | Louis G. McBryan | 3101 Tower Creek Parkway | Ste 600 One Tower Creek | Atlanta | GA | 30339 | | 678-384-7000 | lmcbryan@hwmklaw.com | Counsel to Vanguard Distributors, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | jrhunter@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | tomschank@hunterschank.com | Counsel to ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | mmassad@hunton.com | Counsel to RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | sholmes@hunton.com | Counsel to RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | aee@hurwitzfine.com | Counsel to Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | Ben.Caughey@icemiller.com | Counsel to Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America Corporation |
| InPlay Technologies Inc | Heather Beshears | 234 South Extension Road | | Mesa | AZ | 85201 | | | heather@inplaytechnologies.com | Creditor |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | rgriffin@iuoe.org | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jackson Walker LLP | Bruce J. Ruzinsky Desiree K. Killen | 1401 McKinney St Ste 1900 | | Houston | TX | 77010 | | 713-751-4200 | bruzinsky@jw.com dkillen@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jackson Walker LLP | Heather M. Forrest | 901 Main St Ste 600 | | Dallas | TX | 75202 | | 214-953-6000 | hforrest@jw.com | Counsel to Constellation NewEnergy, Inc. |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | pbarr@jaffelaw.com | Counsel to Trutron Corporation |
| James R Scheuerle | Parmenter O'Toole | 601 Terrace Street | PO Box 786 | Muskegon | MI | 49443-0786 | | 231-722-1621 | JRS@Parmenterlaw.com | Counsel to Port City Die Cast and Port City Group Inc |
| Jason, Inc. | Will Schultz, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | 414-277-2110 | wschultz@jasoninc.com | General Counsel to Jason Incorporated |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | rpeterson@jenner.com | Counsel to SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC, Tenneco Inc. and Contech LLC |
| Johnston, Harris Gerde & Komarek, P.A. | Jerry W. Gerde, Esq. | 239 E. 4th St. | | Panama City | FL | 32401 | | 850-763-8421 | gerdekomarek@bellsouth.net | Counsel to Peggy C. Brannon, Bay County Tax Collector |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Jones Day | Corinne Ball | 222 East 41st Street | | New York | NY | 10017 | | 212-326-7844 | cball@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Jones Day | Peter J. Benvenutti Michaeline H. Correa | 555 California St 26th Floor | | San Francisco | CA | 94104 | | 415-626-3939 | pjbenvenutti@jonesday.com mcorrea@jonesday.com | Attorneys for Symantec Corporation, Successor-in-Interest to Veritas Corporation |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | sjfriedman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kaye Scholer LLP | Richard G Smolev | 425 Park Avenue | | New York | NY | 10022-3598 | | 212-236-8000 | rsmolev@kayescholer.com | Counsel to InPlay Technologies Inc |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | kcookson@keglerbrown.com | Counsel to Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | ggotto@kellerrohrback.com | Counsel to Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Craig A. Wolfe | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | cwolfe@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Joseph Boyle | 200 Kimball Dr | | Parsippany | NJ | 07054 | | 973-503-5900 | jboyle@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Merrill B. Stone | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | mstone@kelleydrye.com | Counsel to the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | lmagarik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | sjennik@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | tkennedy@kjmlabor.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | Daniel Egan | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | degan@kslaw.com | Counsel to KPMG LLP |
| King & Spalding, LLP | H. Slayton Dabney, Jr. | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | sdabney@kslaw.com | Counsel to KPMG LLP |
| Kirkland & Ellis LLP | Jim Stempel | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | jstempel@kirkland.com | Counsel to Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutak Rock LLP | Jay Selanders | 1010 Grand Blvd Ste 500 | | Kansas City | MO | 64106 | | 816-502-4617 | jay.selanders@kutakrock.com | Counsel to DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | ekutchin@kutchinrufo.com | Counsel to Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | Two Center Plaza | Suite 620 | Boston | MA | 02108-1906 | | 617-542-3000 | knorthup@kutchinrufo.com | Counsel to Parlex Corporation |
| Lambert, Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | smcook@lambertleser.com | Counsel to Linamar Corporation |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | mitchell.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1370 | robert.rosenberg@lw.com | UCC Professional |
| Law Offices of Michael O'Hayer | Michael O'Hayer Esq | 22 N Walnut Street | | West Chester | PA | 19380 | | 610-738-1230 | mkohayer@aol.com | Counsel to A-1 Specialized Services and Supplies Inc |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | General Counsel for Linear Technology Corporation | 1630 McCarthy Blvd. | Milpitas | CA | 95035-7417 | | 408-432-1900 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | dallas.bankruptcy@publicans.com | Counsel to Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities: Cypress-Fairbanks Independent School District, City of Houston, Harris County |
| Locke Lord Bissell & Liddell | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8304 | kwalsh@lockelord.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Locke Lord Bissell & Liddell | Timothy S. McFadden | 111 South Wacker Drive | | Chicago | IL | 60606 | | 312-443-0370 | tmcfadden@lockelord.com | Counsel to Methode Electronics, Inc. |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | whawkins@loeb.com | Counsel to Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | bnathan@lowenstein.com | Counsel to Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | ilevee@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | krosen@lowenstein.com | Counsel to Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | metkin@lowenstein.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | scargill@lowenstein.com | Counsel to Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | vdagostino@lowenstein.com | Counsel to AT&T Corporation |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | egc@lydenlaw.com | Counsel to Metro Fibres, Inc. |
| Maddin, Hauser, Wartell, Roth & Heller PC | Alexander Stotland Esq | 28400 Northwestern Hwy | Third Floor | Southfield | MI | 48034 | | 248-354-4030 | axs@maddinhauser.com | Attorney for Danice Manufacturing Co. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | lmc@ml-legal.com | Counsel to Venture Plastics |
| Mastromarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | vmastromar@aol.com | Counsel to H.E. Services Company and Robert Backie and Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | gsantella@masudafunai.com | Counsel to NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC and Hosiden America Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McCarter & English, LLP | Eduardo J. Glas, Esq. | Four Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4096 | | 913-622-4444 | eglas@mccarter.com | Counsel to General Products Delaware Corporation |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel to Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | Gary O. Ravert | 340 Madison Avenue | | New York | NY | 10017-1922 | | 212-547-5477 | gravert@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDermott Will & Emery LLP | James M. Sullivan | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5477 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 340 Madison Avenue | | New York | NY | 10017 | | 212-547-5400 | sselbst@mwe.com | Counsel to National Semiconductor Corporation |
| McDermott Will & Emery LLP | Steven P. Handler Monica M. Quinn | 227 W Monroe St | | Chicago | IL | 60606 | | 312-372-2000 | shandler@mwe.com mquinn@mwe.com | Counsel for Temic Automotive of North America, Inc. |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Aaron G McCollough Esq | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1000 | amccollough@mcguirewoods.com | Counsel to Siemens Energy & Automation, Inc. |
| McGuireWoods LLP | Daniel F Blanks | One James Center | 901 East Cary Street | Richmond | VA | 23219 | | 804-775-1000 | dblanks@mcguirewoods.com | Counsel for CSX Transportation, Inc. |
| McGuireWoods LLP | John H Maddock III | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | jmaddock@mcguirewoods.com | Counsel to Siemens Logistics Assembly Systems, Inc.; Counsel for CSX Transportation, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Attn Thomas R Slome Esq | 990 Stewart Ave Ste 300 | PO Box 9194 | Garden City | NY | 11530-9194 | | 516-741-6565 | tslome@msek.com | Counsel for Pamela Geller |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | hkolko@msek.com | Counsel to The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers Law Group, P.C. | Merle C. Meyers | 44 Montgomery Street | Suite 1010 | San Francisco | CA | 94104 | | 415-362-7500 | mmeyers@mlg-pc.com | Counsel to Alps Automotive, Inc. |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | emeyers@mrrlaw.net | Counsel to Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | rrosenbaum@mrrlaw.net | Counsel to Prince George County, Maryland |
| Miami-Dade County Tax Collector | April Burch | Paralegal Unit | 140 West Flagler St Ste 1403 | Miami | FL | 33130 | | 305-375-5314 | mdtcbkc@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | miag@michigan.gov | Attorney General for State of Michigan, Department of Treasury |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Heritage Bank | Janice M. Donahue | 28300 Orchard Lake Rd | Ste 200 | Farmington Hills | MI | 48334 | | 248-538-2529 | jdonahue@miheritage.com | Counsel to  Michigan Heritage Bank; MHB Leasing, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | trenda@milesstockbridge.com | Counsel to Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller & Martin PLLC | Dale Allen | 150 Fourth Ave North | Ste 1200 | Nashville | TN | 37219 | | vjones@millermartin.com | Counsel to Averitt Express |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | greenj@millercanfield.com | Counsel to Wells Operating Partnership, LP |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | fusco@millercanfield.com | Counsel to Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | piricotta@mintz.com pricotta@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | Jeff.Ott@molex.com | Counsel to Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | agottfried@morganlewis.com | Counsel to ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | mzelmanovitz@morganlewis.com | Counsel to Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | lberkoff@morithock.com | Counsel to Standard Microsystems Corporation and its direct and indirect subsidiares Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interst to Oasis Silicon Systems, Inc.) |
| Morrison Cohen LLP | Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8757 | mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel to Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | sandy@nlsg.com | Counsel to Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | Knathan@nathanneuman.com | Counsel to 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel to National City Commercial Capital |
| National Renewable Energy Laboratory | Marty Noland Principal Attorney | 1617 Golden Blvd | Legal Office, Mail Stop 1734 | Golden | CO | 80401 | | 303-384-7550 | marty_noland@nrel.gov | Counsel for National Renewable Energy Laboratory |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | george.cauthen@nelsonmullins.com | Counsel to Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| New Jersey Attorney General's Office Division of Law | Tracy E Richardson Deputy Attorney General | R.J. Hughes Justice Complex | 25 Market St P.O. Box 106 | Trenton | NJ | 08628-0106 | | 609-292-1537 | tracy.richardson@dol.lps.state.nj.us | Deputy Attorney General - State of New Jersey Division of Taxation |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | dgheiman@jonesday.com | Counsel to WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | cahope@chapter13macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | jay.hurst@oag.state.tx.us | Counsel to The Texas Comptroller of Public Accounts |
| Ohio Environmental Protection Agency | c/o Michelle T. Sutter | Principal Assistant Attorney General Environmental Enforcement Section | 30 E Broad St 25th Fl | Columbus | OH | 43215 | | 614-466-2766 | msutter@ag.state.oh.us | Attorney for State of Ohio, Environmental Protection Agency |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | michaelz@orbotech.com | Company |
| O'Rourke Katten & Moody | Michael Moody | 55 W Wacker Dr | Ste 1400 | Chicago | IL | 60615 | | 312-849-2020 | mmoody@orourkeandmoody.com | Counsel to Ameritech Credit Corporation d/b/a SBC Capital Services |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | jguy@orrick.com | Counsel to Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Raniero D'Aversa, Jr. | 666 Fifth Avenue | | New York | NY | 10103-0001 | | 212-506-3715 | Rdaversa@orrick.com | Counsel to Bank of America, N.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|-----------------|
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | Columbia Center | 1152 15th St NW | Washington | DC | 20005-1706 | | 202-339-8400 | rwyron@orrick.com | Counsel to Westwood Associates, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Michael R. Seidl | 919 N. Market Street, 17th Floor | P.O. Box 8705 | Wilmington | DE | 19899-8705 | | 302-652-4100 | mseidl@pszjlaw.com | Counsel for Essex Group, Inc. |
| Pachulski Stang Ziehl & Jones LLP | Robert J. Feinstein Ilan D. Scharf | 780 Third Avenue, 36th Floor | | New York | NY | 10017-2024 | | 212-561-7700 | Rfeinstein@pszjlaw.com Ischarf@pszjlaw.com | Counsel for Essex Group, Inc. |
| Patterson Belknap Webb & Tyler LLP | David W. Dykhouse Phyllis S. Wallitt | 1133 Avenue of the Americas | | New York | NY | 10036-6710 | | 212-336-2000 | dwdykhouse@pbwt.com | Attorneys for Fry's Metals Inc. and Specialty Coatings Systems Eft |
| Paul H. Spaeth Co. LPA | Paul H. Spaeth | 130 W Second St Ste 450 | | Dayton | OH | 45402 | | 937-223-1655 | spaethlaw@phslaw.com | Attorneys for F&G Multi-Slide Inc and F&G Tool & Die Co. Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Andrew N. Rosenberg | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | arosenberg@paulweiss.com | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | ddavis@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | emccolm@paulweiss.com | Counsel to Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | sshimshak@paulweiss.com | Counsel to Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | housnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pepe & Hazard LLP | Kristin B. Mayhew | 30 Jelliff Lane | | Southport | CT | 06890-1436 | | 203-319-4022 | kmayhew@pepehazard.com | Counsel for Illinois Tool Works Inc., Illinois Tool Works for Hobart Brothers Co., Hobart Brothers Company, ITW Food Equipment Group LLC and Tri-Mark, Inc. |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | aaronsona@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | lawallf@pepperlaw.com | Counsel to Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | jaffeh@pepperlaw.com | Counsel to SKF USA, Inc. |
| Pickrel Shaeffer & Ebeling | Sarah B. Carter Esq | 2700 Kettering Tower | | Dayton | OH | 45423-2700 | | 937-223-1130 | scarter@pselaw.com | |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | jmanheimer@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | kcunningham@pierceatwood.com | Counsel to FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pietragallo Bosick & Gordon LLP | Richard J. Parks | 54 Buhl Blvd | | Sharon | PA | 16146 | | 724-981-1397 | rjp@pbandg.com | Counsel to Ideal Tool Company, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | karen.dine@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | margot.erlich@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | Ste 550 | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | mark.houle@pillsburylaw.com | Counsel to Clarion Corporation of America, Hyundai Motor Company and Hyundai Motor America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | richard.epling@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | robin.spear@pillsburylaw.com | Counsel to MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley and Marianne G. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | jh@previant.com mgr@previant.com | Counsel to International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| PriceWaterHouseCoopers | Enrique Bujidos | Almagro | 40 | Madrid | | 28010 | Spain | 34 915 684 356 | enrique.bujidos@es.pwc.com | Representative to DASE |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | jkp@qad.com | Counsel to QAD, Inc. |
| Quarles & Brady LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | jharris@quarles.com | Counsel to Semiconductor Components Industries, Inc. |
| Quarles & Brady LLP | John J. Dawson | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | jdawson@quarles.com | Counsel to Semiconductor Components Industries, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Quarles & Brady LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | knye@quarles.com | Counsel to Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation; Flambeau Inc. |
| Quarles & Brady LLP | Roy Prange | 33 E Main St Ste 900 | | Madison | WI | 53703-3095 | | 608-283-2485 | rlp@quarles.com | Counsel for Flambeau Inc. |
| Reed Smith | Ann Pille | 10 South Wacker Drive | | Chicago | IL | 60606 | | 312-207-1000 | apille@reedsmith.com | Counsel to Infineon; Infineon Technologies |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | elazarou@reedsmith.com | Counsel to General Electric Capital Corporation, Stategic Asset Finance. |
| Republic Engineered Products, Inc. | Joseph A Kaczka | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3215 | jkaczka@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | jshickich@riddellwilliams.com | Counsel to Microsoft Corporation; Microsoft Licensing, GP |
| Rieck and Crotty PC | Jerome F Crotty | 55 West Monroe Street | Suite 3390 | Chicago | IL | 60603 | | 312-726-4646 | jcrotty@rieckcrotty.com | Counsel to Mary P. O'Neill and Liam P. O'Neill |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | mscott@riemerlaw.com | Counsel to ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | amathews@robinsonlaw.com | Counsel to Blue Cross Blue Shield of South Carolina |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | marc.hirschfield@ropesgray.com | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLP | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | tslome@rsmllp.com | Counsel to JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Roberto Carrillo | 230 Park Avenue | Suite 1130 | New York | NY | 10169 | | 212-818-9200 | rcarrillo@ssbb.com | Attorney's for Tecnomec S.r.l. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | dweiner@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | hborin@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Michael R Wernette | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | mwernette@schaferandweiner.com shellie@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | rheilman@schaferandweiner.com | Counsel to Dott Industries, Inc. |
| Schiff Hardin LLP | Eugene J. Geekie, Jr. | 7500 Sears Tower | | Chicago | IL | 60606 | | 312-258-5635 | egeekie@schiffhardin.com | Counsel to  Means Industries |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | myarnoff@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | shandler@sbclasslaw.com | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | james.bentley@srz.com | Counsel to Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | michael.cook@srz.com | Counsel to Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | carol.weiner.levy@srz.com | Counsel to D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | | 212-218-5500 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | whanlon@seyfarth.com | Counsel to  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Bruce A. Harwood | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-3701 | | 603-627-8139 | bharwood@sheehan.com | Counsel to Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | lawtoll@comcast.net | Counsel to Milwaukee Investment Company |
| Sheppard Mullin Richter & Hampton LLP | Eric Waters | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | ewaters@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Malani J. Sternstein | 30 Rockefeller Plaza | 24th Floor | New York | NY | 10112 | | 212-332-3800 | msternstein@sheppardmullin.com | Counsel to International Rectifier Corp. and Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theodore A. Cohen | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | tcohen@sheppardmullin.com | Counsel to Gary Whitney |
| Sheppard Mullin Richter & Hampton LLP | Theresa Wardle | 333 South Hope Street | 48th Floor | Los Angeles | CA | 90071 | | 213-620-1780 | twardle@sheppardmullin.com | Counsel to International Rectifier Corp. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | rthibeaux@shergarner.com | Counsel to Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Kathleen M. LaManna | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5603 | bankruptcy@goodwin.com | |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | asherman@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | jzackin@sillscummis.com | Counsel to Hewlett-Packard Financial Services Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Valerie A Hamilton Simon Kimmelman | 650 College Rd E | | Princeton | NJ | 08540 | | 609-227-4600 | vhamilton@sillscummis.com skimmelman@sillscummis.com | Counsel to Doosan Infracore America Corp. |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | cfortgang@silverpointcapital.com | Counsel to Silver Point Capital, L.P. |
| Simon, Stella & Zingas, PC | Stephen P. Stella | 422 W Congress Ste 400 | | Detroit | MI | 48226 | | 313-962-6400 X225 | attorneystella@sszpc.com | Counsel to Motor City Electric |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | bellis-monro@sgrlaw.com | Counsel to Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | kmiller@skfdelaware.com | Counsel to Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | fyates@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. and United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Monika J. Machen | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | mmachen@sonnenschein.com | Counsel to United Plastics Group |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | rrichards@sonnenschein.com | Counsel to Molex, Inc. and INA USA, Inc. |
| Squire, Sanders & Dempsey L.L.P. | G. Christopher Meyer | 4900 Key Tower | 127 Public Sq | Cleveland | OH | 44114 | | 216-479-8692 | cmeyer@ssd.com | Counsel to Furukawa Electric Co., Ltd.; Counsel for the City of Dayton, Ohio |
| State of California Office of the Attorney General | Sarah E. Morrison | Deputy Attorney General | 300 South Spring Street Ste 1702 | Los Angeles | CA | 90013 | | 213-897-2640 | sarah.morrison@doj.ca.gov | Attorneys for the State of the California Department of Toxic Substances Control |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | jmbaumann@steeltechnologies.com | Counsel to Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | rkidd@srcm-law.com | Counsel to Excel Global Logistics, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta Michael A Spero Simon Kimmelman Valerie A Hamilton | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-392-2100 | jposta@sternslaw.com jspecf@sternslaw.com | Counsel to Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | madison.cashman@stites.com | Counsel to Setech, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 20 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 502-587-3400 | wbeard@stites.com loucourtsum@stites.com | Counsel to WAKO Electronics (USA), Inc.,Ambrake Corporation, and Akebona Corporation (North America) |
| Stutman Treister & Glatt Professional Corporation | Christine M. Pajak Eric D. Goldberg Isaac M. Pachulski Esq Jeffrey H Davidson Esq | 1901 Avenue of the Stars | 12th Floor | Los Angeles | CA | 90067 | | 310-228-5600 | cpajak@stutman.com egoldberg@stutman.com ipachulski@stutman.com jdavidson@stutman.com | Counsel to CR Intrinsic Investors, LLC, Elliot Associates, L.P., Highland Capital Management, L.P. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | ferrell@taftlaw.com | Counsel to Wren Industries, Inc. |
| Taft, Stettinius & Hollister LLP | W Timothy Miller Esq | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202 | | 513-381-2838 | miller@taftlaw.com | Counsel to Select Industries Corporation and Gobar Systems, Inc. |
| Teitelbaum & Baskin LLP | Jay Teitelbaum Ron Baskin | 3 Barker Avenue | 3rd Floor | White Plains | NY | 10601 | | 914-437-7670 | jteitelbaum@tblawllp.com rbaskin@tblawllp.com | Counsel to Mary H. Schaefer |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | agbanknewyork@ag.tn.gov | Tennesse Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | ddraper@terra-law.com | Counsel to Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | jforstot@tpw.com | Counsel to TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | lcurcio@tpw.com | Counsel to TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | niizeki.tetsuhiro@furukawa.co.j | Counsel to The Furukawa Electric Co., Ltd. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706-0927 | | 330-438-3000 | robert.morris@timken.com | Representative for Timken Corporation |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | rhett.campbell@tklaw.com | Counsel to STMicroelectronics, Inc. |
| Thompson & Knight LLP | Ira L. Herman | 919 Third Avenue | 39th Floor | New York | NY | 10022-3915 | | 212-751-3045 | ira.herman@tklaw.com | Counsel to Victory Packaging |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 3300 | Dallas | TX | 75201-4693 | | 214-969-1505 | john.brannon@tklaw.com | Counsel to Victory Packaging |
| Thompson Coburn Fagel Haber | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | lnewman@tcfhlaw.com | Counsel to Aluminum International, Inc. |
| Thompson Coburn LLP d/b/a Thompson Coburn Fagel Haber | Dennis E. Quaid Esq | 55 E Monroe 40th Fl | | Chicago | IL | 60603 | | 312-580-2215 | dquaid@tcfhlaw.com efiledocketgroup@fagelhaber.c om | Counsel for Penn Aluminum International Inc |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | ephillips@thurman-phillips.com | Counsel to Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| TI Group Automotive Systms LLC | Timothy M. Guerriero | 12345 E Nine Mile Rd | | Warren | MI | 48089 | | 586-755-8066 | tguerriero@us.tiauto.com | General Counsel and Company Secretary to TI Group Automotive Systems LLC |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| U.S. Department of Justice | Matthew L Schwartz Joseph N Cordaro | Assistant United States Attorneys | 86 Chambers Street 3rd Fl | New York | NY | 10007 | | 212-637-1945 | matthew.schwartz@usdoj.gov | Counsel to Environmental Protection Agency; Internal Revenue Service; Department of Health and Human Services; and Customs and Border Protection |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | hzamboni@underbergkessler.c om | Counsel to McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | mkilgore@UP.com | Counsel to Union Pacific Railroad Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 21 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy | Allied Industrial and Service Workers, Intl Union (USW), AFL-CIO David Jury, Esq. | | Five Gateway Center Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2546 | djury@usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | tscobb@vorys.com | Counsel to America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | EAKleinhaus@wlrk.com | Counsel to Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | RGMason@wlrk.com | Counsel to Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | gtoering@wnj.com | Counsel to Robert Bosch Corporation; Counsel to Daewoo International Corp and Daewoo International (America) Corp |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | growsb@wnj.com | Counsel to Behr Industries Corp. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | aordubegian@weineisen.com | Counsel to Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | Glenn Kurtz Gerard Uzzi Douglas Baumstein | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | gkurtz@ny.whitecase.com guzzi@whitecase.com dbaumstein@ny.whitecase.com | Counsel to Appaloosa Management, LP |
| White & Case LLP | Thomas Lauria Frank Eaton | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | tlauria@whitecase.com featon@miami.whitecase.com | Counsel to Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | barnold@whdlaw.com | Counsel to Schunk Graphite Technology |
| Wickens Herzer Panza Cook & Batista Co | James W Moennich Esq | 35765 Chester Rd | | Avon | OH | 44011-1262 | | 440-930-8000 | jmoennich@wickenslaw.com | Counsel for Delphi Sandusky ESOP |
| Winston & Strawn LLP | David Neier Carey D. Schreiber | 200 Park Avenue | | New York | NY | 10166-4193 | | 212-294-6700 | dneier@winston.com cschreiber@winston.com | Counsel to Ad Hoc Group of Tranche A & B DIP Lenders |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | mwinthrop@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | sokeefe@winthropcouchot.com | Counsel to Metal Surfaces, Inc. |
| Womble Carlyle Sandridge & Rice, PLLC | Allen Grumbine | 550 South Main St | | Greenville | SC | 29601 | | 864-255-5402 | agrumbine@wcsr.com | Counsel to Armacell |
| Woods Oviatt Gilman LLP | Ronald J. Kisinski | 700 Crossroads Bldg | 2 State St | Rochester | NY | 14614 | | 585-362-4514 | rkisicki@woodsoviatt.com | |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | pjanovsky@zeklaw.com | Counsel to Toyota Tsusho America, Inc. and Karl Kufner, KG aka Karl Kuefner, KG |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 22 of 23

12/23/2008 11:54 AM
Email (400)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-------|------------------|
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | skrause@zeklaw.com | Counsel to Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 23 of 23

12/23/2008 11:54 AM
Email (400)

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | Indenture Trustee |
| Cohen, Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | Counsel to Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Davis, Polk & Wardwell | Donald Bernstein Brian Resnick | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 212-450-4213 | 212-450-3092 212-450-3213 | Counsel to Debtor's Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2491 | Debtors |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | Counsel to Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | Counsel to Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | Creditor Committee Member |
| Fried, Frank, Harris, Shriver & Jacobson | Brad Eric Sheler Bonnie Steingart Vivek Melwani Jennifer L Rodburg Richard J Slivinski | One New York Plaza | | New York | NY | 10004 | 212-859-8000 | 212-859-4000 | Counsel to Equity Security Holders Committee |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | Counsel to Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 1540 Broadway | 24th Fl | New York | NY | 10036 | 212-751-4300 | 212-751-0928 | Counsel to Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | Michigan IRS |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | IRS |
| IUE-CWA | Conference Board Chairman | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | Prepetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Susan Atkins, Gianni Russello | 277 Park Ave 8th Fl | | New York | NY | 10172 | 212-270-0426 | 212-270-0430 | Postpetition Administrative Agent |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

12/23/2008 12:13 PM
Master Service List 081119 US Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | Sheryl Betance | 2335 Alaska Ave | | El Segundo | CA | 90245 | 310-823-9000 | 310-823-9133 | Noticing and Claims Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | Counsel to Official Committee of Unsecured Creditors |
| Law Debenture Trust of New York | Daniel R. Fisher | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 400 Madison Ave | Fourth Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Jason J. DeJonker | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McDermott Will & Emery LLP | Peter A. Clark | 227 West Monroe Street | Suite 5400 | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | Counsel to Recticel North America, Inc. |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | UCC Professional |
| Milbank Tweed Hadley & McCloy LLP | Gregory A Bray Esq Thomas R Kreller Esq James E Till Esq | 601 South Figueroa Street | 30th Floor | Los Angeles | CA | 90017 | 213-892-4000 | 213-629-5063 | Counsel to Cerberus Capital Management LP and Dolce Investments LLC |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | Counsel to Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | New York Attorney General's Office |
| O'Melveny & Myers LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | Special Labor Counsel |
| O'Melveny & Myers LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Israel Goldowitz | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | Chief Counsel to the Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Karen L. Morris, John Menke, Ralph L. Landy, Beth A. Bangert | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | Counsel to Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | Counsel to Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | Financial Advisor |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

12/23/2008 12:13 PM
Master Service List 081119 US Mail

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Seyfarth Shaw LLP | Robert W. Dremluk | 620 Eighth Ave | | New York | NY | 10018-1405 | 212-218-5500 | 212-218-5526 | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | Counsel to Debtor's Prepetition Administrative Agent, JPMorgan Chase Bank, N.A. |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | Counsel to Movant Retirees and Proposed Counsel to The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | Counsel to Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 07960 | 973-656-8365 | 973-656-8805 | Creditor Committee Member |
| United States Trustee | Brian Masumoto | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | Counsel to United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | Proposed Conflicts Counsel to the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Harvey R. Miller | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8500 | 212-310-8077 | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/23/2008 12:13 PM
Master Service List 081119 US Mail

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | 212-867-6395 | |
| APS Clearing, Inc. | Andy Leinhoff Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | 512-314-4416 | 512-314-4462 | Counsel to APS Clearing, Inc. |
| Bingham McHale LLP | John E Taylor Michael J Alerding | 10 West Market Street | Suite 2700 | Indianapolis | IN | 46204 | 317-635-8900 | 317-236-9907 | Counsel to Universal Tool & Engineering co., Inc. and M.G. Corporation |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | | Counsel to DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Eckert Seamans Cherin & Mellott LLC | Michael G. Busenkell | 300 Delaware Avenue | Suite 1360 | Wilmington | DE | 19801 | 302-425-0430 | 302-425-0432 | Counsel to Chicago Miniature Optoelectronic Technologies, Inc. |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | Counsel to International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Jason, Inc. | Beth Klimczak, General Counsel | 411 E. Wisconsin Ave | Suite 2120 | Milwaukee | WI | 53202 | | | General Counsel to Jason Incorporated |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth Jeffrey J. Angelovich Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | Counsel to Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | 908-722-0755 | Counsel to Rotor Clip Company, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | 212-373-2053 | Counsel to Ambrake Corporation; Akebono Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Justin G. Brass | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3000 | 212-757-3990 | Counsel to Merrill Lynch, Pierce, Fenner & Smith, Incorporated |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | Counsel to SKF USA, Inc. |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | 989-754-7690 | Corporate Secretary for Professional Technologies Services |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

12/23/2008 11:56 AM
US Mail (32)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Quinn Emanuel Urquhart Oliver & Hedges LLP | Susheel Kirpalani James C Tecce Scott C Shelley | 51 Madison Ave 22nd Fl | | New York | NY | 10010 | 212-849-7199 | 212-849-7100 | Counsel For Collective Of Tranche C DIP Lenders |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | 330-670-3020 | Counsel to Republic Engineered Products, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | 213-312-2001 | Counsel to Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | 617-951-7000 | 617-951-7050 | Attorneys for D-J, Inc. |
| Sachnoff & Weaver, Ltd | Arlene Gelman Charles S. Schulman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | 312-207-6400 | Counsel to Infineon Technologies North America Corporation |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | | Counsel to Dott Industries, Inc. |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | 860-251-5218 | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | | Counsel to Sony Electronics, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | 415-393-9887 | Counsel to Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | 248-352-4488 | Counsel to Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Thaler & Gertler LLP | Andrew M. Thaler Esq | 90 Merrick Ave Ste 400 | | East Meadow | NY | 11554 | 516-228-3533 | 516-228-3396 | Co-Counsel for David Gargis, Jimmy Mueller, and D. Keith Livingston |
| Thelen Reid Brown Raysman & Steiner LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | 212-603-2000 | 212-603-2001 | Counsel to American Finance Group, Inc. d/b/a Guaranty Capital Corporation and Oki Semiconductor Company |
| Thelen Reid Brown Raysman & Steiner LLP | Marcus O. Colabianchi | 101 Second St Ste 1800 | | San Francisco | CA | 94105-3606 | 415-369-7301 | 415-369-8764 | Counsel to Oki Semiconductor Company |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | Conflicts counsel to Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | 185 Asylum Street | CityPlace I 35th Floor | Hartford | CT | 06103-3488 | 860-725-6200 | 860-278-3802 | Counsel to Barnes Group, Inc. |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | 614-719-8676 | |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

12/23/2008 11:56 AM
US Mail (32)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | Counsel to Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | 714-966-1000 | 714-966-1002 | Counsel to Toshiba America Electronic Components, Inc. |
| WL Ross & Co., LLC | Stephen Toy | 1166 Avenue of the Americas | | New York | NY | 10036-2708 | 212-826-1100 | 212-317-4893 | Counsel to WL. Ross & Co., LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/23/2008 11:56 AM
US Mail (32)

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| ENVIRONMENTAL PROTECTION AGENCY | MARCUS PEACOCK DEPUTY ADMINISTRATOR | ARIEL RIOS BUILDING | 1200 PENNSYLVANIA AVE NW | WASHINGTON | DC | 20460 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 1 | 1 CONGRESS ST SUITE 1100 | | BOSTON | MA | 02114-2023 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 10 | 1200 SIXTH AVENUE | | SEATTLE | WA | 98101 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 2 | 290 BROADWAY | | NEW YORK | NY | 10007-1866 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 3 | 1650 ARCH ST | | PHILADELPHIA | PA | 19103-2029 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 4 | ATLANTA FEDERAL CENTER | 61 FORSYTH ST SW | ATLANTA | GA | 30303-3104 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 5 | 77 WEST JACKSON BLVD | | CHICAGO | IL | 60604-3507 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 6 | FOUNTAIN PLACE 12TH FL STE 1200 | 1445 ROSS AVE | DALLAS | TX | 75202-2733 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 7 | 901 NORTH 5TH ST | | KANSAS CITY | KS | 66101 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 8 | 999 18TH ST SUITE 500 | | DENVER | CO | 80202-2466 |
| ENVIRONMENTAL PROTECTION AGENCY | REGION 9 | 75 HAWTHORNE ST | | SAN FRANSISCO | CA | 94105 |
| ENVIRONMENTAL PROTECTION AGENCY | | ARIEL RIOS BUILDING | 1200 PENNSYLVANIA AVE NW | WASHINGTON | DC | 20460 |
| EPA HAZARDOUS SUBSTANCE | SUPERFUND EPA REGION III | SUPERFUND ACCTG PO BOX 360515 | | PITTSBURGH | PA | 15251 |
| EPA HAZARDOUS SUBSTANCE | SUPERFUND YORK OIL SITE | US EPA REG II SUPERFUND ACCT | PO BOX 360188M | PITTSBURGH | PA | 15251 |
| EPA HAZARDOUS SUBSTANCE | SUPERFUND YORK OIL SITE | US EPA REG II SUPERFUND ACCT | PO BOX 360188M | PITTSBURGH | PA | 15251 |
| EPA HAZARDOUS SUBSTANCE SF | RELIABLE EQUIPMENT MI | ACCT NO 05297T126A SITE LE | PO BOX 70753 | CHICAGO | IL | 60673 |
| EPA HAZARDOUS SUBSTANCE SF | RELIABLE EQUIPMENT MI | ACCT NO 05297T126A SITE LE | PO BOX 70753 | CHICAGO | IL | 60673 |
| EPA HAZARDOUS SUBSTANCE SUPERF | | C O MELLON BANK RM 153 2713 | 3 MELLON BANK CTR | PITTSBURGH | PA | 15259 |
| EPA HAZARDOUS SUBSTANCE SUPERFUND | US EPA RGN IV SUPERFUND ACCTG | PO BOX 100142 | | ATLANTA | GA | 30384 |
| EPA HAZARDOUS SUBSTANCE SUPERFUND | | PO BOX 360582M | | PITTSBURGH | PA | 15251 |
| EPA TRI DATA PROCESSING | | PO BOX 1513 | | LANTHAM | MD | 20703 |
| US ENVIRO PROTECTION AGENCY REG 2 | JANE M KENNY | REGIONAL ADMINISTRATOR | 290 BROADWAY 26TH FL | NEW YORK | NY | 10007 |
| US ENVIRONMENTAL PROTECTION | AGENCY REGION II YORK OIL CO | SITE 83 CV 1623 | PO BOX 360188M | PITTSBURGH | PA | 15251 |
| US ENVIRONMENTAL PROTECTION | AGENCY REGION II YORK OIL CO | SITE 83 CV 1623 | PO BOX 360188M | PITTSBURGH | PA | 15251 |
| US ENVIRONMENTAL PROTECTION AGENCY | DAVID J KENNEDY | ASSISTANT US ATTORNEY SDNY | 86 CHAMBERS ST 3RD FL | NEW YORK | NY | 10007 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

12/23/2008 11:58 AM
Environmental Notice Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| US ENVIRONMENTAL PROTECTION AGENCY | REGION 5 | BLAURA RIPLEYSPRFUND EACT SECT | 77 WEST JACKSON BLVD | CHICAGO | IL | 60604 |
| US ENVIRONMENTAL PROTECTION AGENCY | REGION 5 | PO BOX 70753 | | CHICAGO | IL | 60673 |
| US ENVIRONMENTAL PROTECTION AGENCY | | K W ZANK TRUST DIV A C5115114 | 611 WOODWARD AVE | DETROIT | MI | 48226 |
| US EPA | DIANA EMBIL | REGION 5 77 WEST JACKSON BLVD | | CHICAGO | IL | 60604-3590 |
| US EPA | REGINALD PALLESEN | REGION 5 77 WEST JACKSON BLVD | | CHICAGO | IL | 60604-3590 |
| US EPA | TOM NASH | REGION 5 77 WEST JACKSON BLVD | | CHICAGO | IL | 60604-3590 |
| US EPA | | C O RTP FINANCE | MAIL DROP D143 02 | DURHAM | NC | 27711 |
| US EPA | | | | ANN ARBOR | MI | 48105 |
| US EPA  REGION 3 | | 1650 ARCH ST | 3PM52 | PHILADELPHIA | PA | 19103-2029 |
| US EPA  REGION 5 | WILLIAM D MESSENGER | 77 WEST JACKSON BLVD | | CHICAGO | IL | 60604-3590 |
| US EPA  REGION 8 | | 999 18TH ST | SUITE 200 | DENVER | CO | 80202-2466 |
| US EPA  REGION4 ATLANTA FEDERAL CTR | | 61 FORSYTH ST SW | | ATLANTA | GA | 30303-3104 |
| US EPA MAIL CODE 6205J | | 1200 PENNSYLVANIA AVE NW | | WASHINGTON | DC | 20460 |
| USEPA REGION IV | GAIL GINSBERG REG ADMIN | 77 W JACKSON | | CHICAGO | IL | 60604 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

12/23/2008 11:58 AM
Environmental Notice Parties

Delphi Corporation
Exhaust Sale Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | ZIP | Country |
|---|---|---|---|---|---|---|---|
| AEA Investors LLC | Mr Alan W Wilkinson | Managing Director | 55 East 52nd St 35th Fl | New York | NY | 10055 | |
| AEA Investors LLC | Mr John F Cozzi Managing Director | 55 East 52nd St 35th Fl | | New York | NY | 10055 | |
| AEA Investors LLC | Ms Amy C Bevacqua Vice President | 55 East 52nd St 35th Fl | | New York | NY | 10055 | |
| American Industrial Partners | Mr Dino Cusumano Partner | 535 Fifth Ave 32nd Fl | | New York | NY | 10017 | |
| American Industrial Partners | Mr Kim A Marvin Partner | 535 Fifth Ave 32nd Fl | | New York | NY | 10017 | |
| American Industrial Partners | Mr Paul J Bamatter Partner & CFO | 535 Fifth Ave 32nd Fl | | New York | NY | 10017 | |
| AT&E | Glenn Paraskevin | 12255 Delta St | | Taylor | MI | 48180 | |
| Audax Management Company LLC | Mr Alex Nies | 101 Huntington Ave 24th Fl | | Boston | MA | 02199 | |
| Audax Management Company LLC | Mr Edward A Feuerstein | Principal Business Development | 101 Huntington Ave 24th Fl | Boston | MA | 02199 | |
| Audax Management Company LLC | Mr Jay C Jester Managing Director | Director of Business Development | 101 Huntington Ave 24th Fl | Boston | MA | 02199 | |
| Aurelius AG | Dr Dirk Markus CEO | Bavariaring 15 | | Munich | | 80336 | Germany |
| Aurelius AG | Mr Donatus Albrecht Vice President | Bavariaring 15 | | Munich | | 80336 | Germany |
| Baird Capital Partners Mgmt Company | Mr C Andrew Brickman Partner | 227 West Monroe St Ste 1900 | | Chicago | IL | 60606 | |
| Baird Capital Partners Mgmt Company | Mr Matthew Parsons Analyst | 227 West Monroe St Ste 1900 | | Chicago | IL | 60606 | |
| Bavaria Industriekapital AG | c/o York Investment Holdings | Mr Brendan Doyle Director | 13 Upper Baggot Street Second Fl | Dublin | | 4 | Ireland |
| BERU Aktiengesellschaft | Mr Marco Freiherr von Maltzan | Chairman Management Board | Morikestrabe 155 | Ludwigsburg | | 71636 | Germany |
| BERU Aktiengesellschaft | Mr Ulrich Ruetz CEO | Morikestrabe 155 | | Ludwigsburg | | D-71636 | Germany |
| BERU Aktiengesellschaft | Mr Wolf Friedle | Sitz Ludwigsburg Registergericht | | Stuttgart | | 205087 | Germany |
| Bienes Turgon | Mr Carlos Turner | Director of Business Development | Manuel Ordoñez 601 Col Centro | Santa Catarina | NL | 66350 | Mexico |
| BlackEagle Partners LLC | Mr Garrett P Kanehann Partner | 6905 Telegraph Rd Ste 205 | | Bloomfield Hills | MI | 48301 | |
| BlackEagle Partners LLC | Mr Michael M Wheatley | 6905 Telegraph Rd Ste 205 | | Bloomfield | MI | 48301 | |
| Blue Wolf Capital Management | Haranjeet Narulla Associate | 48 Wall St 31st Fl | | New York | NY | 10005 | |
| Blue Wolf Capital Management | Mr Josh Wolf Powers Partner | 48 Wall St 31st Fl | | New York | NY | 10005 | |
| Borla Monolith LLC | Mr Alexander Borla | 101 North Fairfield Dr | | Dover | DE | 19901 | |
| Borla Performance Industries Inc | Mr Alex Borla CEO | 5901 Edison Dr | | Oxnard | CA | 93033 | |
| Borla Romcat SA | Gheorghe Badea General Manager | Grupul Industrial Componente | Strada Street George Cosbuc No 35 | Judetul Arges | Pitesti | Postal Code 0300 | Romania |
| Bosal Nederland BV | Mr Karel Bos | p/a Dellestraat 20 3560 Lummen | | | | | Belgium |
| Butzel Long | Michael F Golab | Counsel to Bienes Turgon | Stoneridge West 41000 Woodward Ave | Bloomfield Hills | MI | 48304 | |
| Castle Harlan Inc | Mr Howard Weiss CFO | 150 East 58th St 37th Fl | | New York | NY | 10155 | |
| Castle Harlan Inc | Mr Marcel Fournier | Managing Director | 150 East 58th St 37th Fl | New York | NY | 10155 | |
| Catco Catalytic Converters | Mr Matthew Bapple VP Finance | PO Box 428 4410 W 37th Ave | | Hobart | IN | 46342 | |
| Chalmers Group | Mr Joseph Jeyanayagam CFO | 6400 Northam Dr | | Mississauga | ON | L4V 1J1 | Canada |
| Chicago Growth Partners | Mr Jeffery M Farrero Vice President | 303 West Madison St Ste 2500 | | Chicago | IL | 60606 | |
| Chicago Growth Partners | Mr Robert P Healy Partner | 303 West Madison St Ste 2500 | | Chicago | IL | 60606 | |
| CI Capital Partners LLC | Mr Joost F Thesseling Principal | 500 Park Ave 8th Fl | | New York | NY | 10022 | |
| CI Capital Partners LLC | Ms Karla Nielson | 500 Park Ave 8th Fl | | New York | NY | 10022 | |
| CITIC Provident | Mr Boon L Chew Director | 1120 Ave of the Americas Ste 1501 | | New York | NY | 10036 | |
| Cooper Standard Automotive Group | Mr Larry Beard | Director Corporate Development | 39550 Orchard Hill Pl PO Box 8034 | Novi | MI | 48375 | |
| Crimson Investment | Mr Ian Morton Partner | 530 Lytton Ave 2nd Fl | | Palo Alto | CA | 94301 | |
| Duke Equity Partners | Mr Eric Brenner | Director Business Development | 10866 Wilshire Blvd Ste 740 | Los Angeles | CA | 90024 | |
| Eastern Manufacturing Inc | Mr George Schafer President | 2151 Cabot Boulevard West | | Langhorne | PA | 19047 | |
| EMCON Technologies | Mr Lee M Gardner | Chairman CEO and President | 1050 Wilshire Dr Ste 200 | Troy | MI | 48084 | |

Delphi Corporation
Exhaust Sale Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Englefield Capital | Mr Nico Marx | Michelin House 81 Fulham Rd | | London | | SW3 6RD | United Kingdom |
| Faurecia | Mr Dominique Trancart Strategy and | Business Development VP | 2 rue Hennape 92735 Nanterre Cedex | | | | France |
| GenNx360 Capital Partners | Mr Ian D Haft Principal | 300 Park Ave 17th Fl | | New York | NY | 10022 | |
| Graham Partners Inc | Mr Robert A Newbold | Managing Principal Ste 200 | 3811 West Chester Pike Bldg 2 | Newtown Square | PA | 19073 | |
| Graham Partners Inc | Mr Tyler Griffin Associate | 3811 West Chester Pike Building 2 | Ste 200 | Newtown Square | PA | 19073 | |
| Greenbriar Equity Group LLC | Mr Arvin Krishnamurthy Director | 555 Theodore Fremd Ave Ste A 201 | | Rye | NY | 10580 | |
| Greenbriar Equity Group LLC | Mr John J Daileader | Managing Director | 555 Theodore Fremd Ave Ste A 201 | Rye | NY | 10580 | |
| Greenbriar Equity Group LLC | Mr Mohit Talwar Associate | 555 Theodore Fremd Ave Ste A 201 | | Rye | NY | 10580 | |
| Gryphon Investors | Mr John M Rogers Principal | 1 Market Plz Steuart Tower 24th Fl | | San Francisco | CA | 94105 | |
| Gryphon Investors | Mr Patrick J Fallon Partner | 1 Market Plz Steuart Tower 24th Fl | | San Francisco | CA | 94105 | |
| Gryphon Investors | Ms Simona Golebiowska | 1 Market Plz Steuart Tower 24th Fl | | San Francisco | CA | 94105 | |
| Haldex AB | Mr Stefan Johansson CFO | Biblioteksgatan 11 Box 7200 | | Stockholm | | 10388 | Sweden |
| Haldex AB | Mr Thomas Holm | VP Sales Europe and China | Biblioteksgatan 11 Box 7200 | Stockholm | | 10388 | Sweden |
| Harbour Group Ltd | Mr Zachary T Waltz | Director Corporate Development | 7701 Forsyth Boulevard Ste 600 | St Louis | MO | 63105 | |
| Hess Engineering Inc | | 191 Fir Rd | | Niles | MI | 49120 | |
| HIG Capital LLC | Mr John Curtis | Associate Business Development | 1001 Brickell Bay Dr | Miami | FL | 33131 | |
| HIG Capital LLC | Mr John R Black Managing Director | 855 Boylston St 11th Fl | | Boston | MA | 02116 | |
| HIG Capital LLC | Mr William J Nolan Principal | 1650 Market St 36th Fl | | Philadelphia | PA | 19103 | |
| Hilite Industries Inc | c/o KeyBanc Capital Markets | Mr Jeffrey Johnston Director | 127 Public Square 6th Fl | Cleveland | OH | 44114 | |
| Hilite Industries Inc | Mr Joseph Carreras CEO | 4100 Key Center 127 Public Square | | Cleveland | OH | 44114 | |
| Hilite Industries Inc | Mr Michael T Kestner CFO | 4100 Key Center 127 Public Square | | Cleveland | OH | 44114 | |
| Hunt Special Situations Group | Mr Benjamin D Nelson | VP and General Counsel | 1900 North Akard St | Dallas | TX | 75201 | |
| Hunt Special Situations Group | Mr Philip A Arra President | 1900 North Akard St | | Dallas | TX | 75201 | |
| Hunt Special Situations Group | Mr Steve Muns Senior Associate | 1900 North Akard St | | Dallas | TX | 75201 | |
| Industrial Growth Partners | Mr Eric D Heglie Partner | 100 Spear St Ste 1500 | | San Francisco | CA | 94105 | |
| Industrial Opportunity Partners | Mr Ken M Tallering | Senior Managing Director | 1603 Orrington Ave Ste 700 | Evanston | IL | 60201 | |
| Insight Equity | Mr Jimmy Crain Analyst | 1400 Civic Place Ste 250 | | Southlake | TX | 76092-7641 | |
| Insight Equity | Mr Robert M Strauss Principal | 1400 Civic Place Ste 250 | | Southlake | TX | 76092-7641 | |
| J Eberspächer GmbH & Co | Mr Thomas Wuensche CEO Exhaust Tech | and Member of the Executive Board | Homburger StraBe 95 | Neunkirchen | | 66539 | Germany |
| Jefferies Capital Partners | E Austin Johnsen Analyst | 520 Madison Ave 12th Fl | | New York | NY | 10022 | |
| Jefferies Capital Partners | Mr Nicholas Daraviras | Managing Director | 520 Madison Ave 12th Fl | New York | NY | 10022 | |
| Jilin Dongguang Group | c/o Kaytek International | Mr Mike Porter | 5935 Sunridge Ct | Clarkston | MI | 48348 | |
| JPMorgan Chase Bank NA | As Administrative Agent | Lien Perfection Unit | PO Box 2558 | Houston | TX | 77252 | |
| Katcon SA de CV | | Av Manuel Ordonez 601 | | Centro Santa Catarina | Nuevo Leon | 66350 | Mexico |
| Kettering University | | 1700 W 3rd Ave | | Flint | MI | 48504 | |
| Klarius Group Limited | Mr Tony Wilson Chairman | Squires Gate Lane | Squires Gate Industrial Estate | Blackpool | | FY4 3RN | United Kingdom |
| KPS Capital Partners LP | Mr Michael G Psaros | Managing Partner | 485 Lexington Ave 31st Fl | New York | NY | 10017 | |
| KPS Capital Partners LP | Mr Ryan Baker Associate | 485 Lexington Ave 31st Fl | | New York | NY | 10017 | |
| Laurian Capital Corporation | Mr David C Sinclair President | 265 Woodland Ave | | Winnetka | IL | 60093 | |
| Linamar Corporation | Mr Brian Ahlborn | VP Corporate Development | Travelers Tower 1 26555 Evrgreen Rd | Southfield | MI | 48076 | |
| Lincolnshire Management Inc | Mr Ottavio Serena di Lapigio | Managing Director | 780 Third Ave 40th Fl | New York | NY | 10017 | |
| M J D Aniello and Associated LLC | | 239 Ravineside Dr | | Milford | MI | 48381-2865 | |
| Marathon Asset Management | Mr Gregory Resnick | One Bryant Park | | New York | NY | 10036 | |
| Marathon Asset Management | Mr Wray T Thorn | Managing Director   Private Equity | One Bryant Park | New York | NY | 10036 | |
| Marlin Equity Partners LLC | Mr Peter Spasov | Director Business Development | 2121 Rosecrans Ave Ste 2370 | El Segundo | CA | 90245 | |
| Marlin Equity Partners LLC | Mr Ryan T Laurin | 2121 Rosecrans Ave Ste 4325 | | El Segundo | CA | 90245 | |
| Minda Group | Mr Vikas Jain Gen Manager Finance | Village Nawada Fatehpur | PO Sikanderpur Badda Distt Gurgaon | Haryana | | 122004 | India |
| Monomoy Capital Partners LLC | Mr Nathan R Richey Vice President | 142 W 57th St 17th Fl | | New York | NY | 10019 | |
| Monomoy Capital Partners LLC | Mr Stephen Presser Partner | 142 W 57th St 17th Fl | | New York | NY | 10019 | |

Delphi Corporation
Exhaust Sale Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | ZIP | Country |
|---|---|---|---|---|---|---|---|
| Morgenthaler Partners | Mr Alfred Stanley Partner | Terminal Tower 50 Public Square | Ste 2700 | Cleveland | OH | 44113 | |
| Morgenthaler Partners | Mr Joe Machado Principal | 222 Berkeley St 20th Fl | | Boston | MA | 02116 | |
| Morgenthaler Partners | Mr John D Lutsi General Partner | 222 Berkeley St 20th Fl | | Boston | MA | 02116 | |
| MPC Partners LLP | Mr Greg MacLeod | 3rd Fl Albemarle House | 1 Albemarle Street | London | | W1S 4HA | England |
| Nautic Partners LLC | Mr James A Beakey Vice President | 50 Kennedy Plaza 12th Fl | | Providence | RI | 02903 | |
| Nautic Partners LLC | Mr Michael W Joe Managing Director | 50 Kennedy Plaza 12th Fl | | Providence | RI | 02903 | |
| Nicolet Capital Investors LLC | Mr Brett A Snyder CFA President | 980 North Michigan Ave Ste 1400 | | Chicago | IL | 60611 | |
| Nogales Investors Management LLC | Mr Omar Karame Principal | 9229 West Sunset Blvd Ste 900 | | Los Angeles | CA | 90069 | |
| OpenGate Capital | Mr Dionisio Lucchesi Director | 8383 Wilshire Boulevard Ste 950 | | Beverly Hills | CA | 90211 | |
| Orlando Management GMBH | Dr Henrik Fastrich | Am Platzl 4 Orlandohaus | | Munchen | | 80331 | Germany |
| Orlando Management GMBH | Mr Florian Pape Partner | Am Platzl 4 Orlandohaus | | Munchen | | 80331 | Germany |
| Orlando Management GMBH | Mr Hans Gottwald | Am Platzl 4 Orlandohaus | | Munchen | | 80331 | Germany |
| Performance Holdings Group | Mr JM Bardia Managing Partner | 71 North Greenwich Rd | | Armonk | NY | 10504 | |
| Platinum Equity LLC | Mr Dan Krasner | 250 Park Ave 3rd Fl | | New York | NY | 10177 | |
| Platinum Equity LLC | Mr Jordan Roker | Manager Business Development | 360 North Crescent Dr South Bldg | Beverly Hills | CA | 90210 | |
| Platinum Equity LLC | Mr Luke J Johnson Senior VP | 360 North Crescent Dr S Building | | Beverly Hills | CA | 90210 | |
| Pouschine Cook Capital Management | Mr Daniel Balzora Associate | 375 Park Ave Ste 3408 | | New York | NY | 10152 | |
| Pouschine Cook Capital Management | Mr John L Pouschine | Managing Director | 375 Park Ave Ste 3408 | New York | NY | 10152 | |
| Pridgeon and Clay | Al Bolt | 50 Cottage Grove SW | | Grand Rapids | MI | 49507-1685 | |
| Quad C Management Inc | Mr Matthew Engel | Director of Corporate Development | 230 East High St | Charlottesville | VA | 22902 | |
| Quad C Management Inc | Mr Richard W Wiltshire III | Senior Associate | 230 East High St | Charlottesville | VA | 22902 | |
| Quilvest Private Equity | Mr Alex Latushkin Analyst | 598 Madison Ave 8th Fl | | New York | NY | 10022 | |
| Quilvest Private Equity | Mr Elan A Schultz Managing Partner | 598 Madison Ave 8th Fl | | New York | NY | 10022 | |
| Resilience Capital Partners LLC | Mr Bassem A Mansour | Managing Partner | 25201 Chagrin Blvd Ste 360 | Cleveland | OH | 44122 | |
| Resilience Capital Partners LLC | Mr Klaus D Luhta Legal Intern | 25201 Chagrin Blvd Ste 360 | | Cleveland | OH | 44122 | |
| Resilience Capital Partners LLC | Mr Steven H Rosen Managing Partner | 25201 Chagrin Blvd Ste 360 | | Cleveland | OH | 44122 | |
| Roche Investment Holdings AG | Mr Robert Roche Managing Director | 12 Upjohn Road | | Toronto | ON | M3B 2V9 | Canada |
| Sango Co Ltd | Karen Miyashiro Masahi Ota | Overseas Project Development | 3 Fukuta Miyoshi cho Nishikamo gun | Aichi Ken | | 470-0224 | Japan |
| Saw Mill Capital LLC | Mr Scott Rubino Associate | 555 Pleasantville Rd S Bldg Ste 220 | | Briarcliff Manor | NY | 10510 | |
| Saw Mill Capital LLC | Mr Timothy J Nelson Principal | 555 Pleasantville Rd S Bldg Ste 220 | | Briarcliff Manor | NY | 10510 | |
| Sejong Industrial Co Ltd | c/o Hana Investment Bank | Mr Chan Keun Lee Kevin Presidnt CEO | 23 3 Yeouido Dong Youngdeungpo Gu | Seoul | | 150-709 | Korea |
| Sejong Industrial Co Ltd | c/o Hana Investment Bank | Mr Jung Han Choi | 23 3 Yeouido Dong Youngdeungpo Gu | Seoul | | 150-709 | Korea |
| Sejong Industrial Co Ltd | Mr Saewan Kim | Sejong B/D 11F 97 23 | Nonhyun dong Kangnam gu | Seoul | | 135-010 | South Korea |
| Sengton Transportation Implement | Company Ltd | 32616 No 32 Gong 5 Road | Lungten Taoyuan | Taiwan | | | China |
| Servintec co Burnham Securities Inc | Mr Jay Linde Managing Director | 1325 Ave of the Americas 26th Fl | | New York | NY | 10019 | |
| Sorenson Capital Partners LP | Mr Michael Scott Senior Associate | 3098 W Executive Parkway Ste 200 | | Lehi | UT | 84043 | |
| Sun Capital Partners Inc | Mr Kevin E Feinblum Principal | 100 Park Ave 33rd Fl | | New York | NY | 10017 | |
| Sun Capital Partners Inc | Mr Michael Ching | 100 Park Ave 33rd Fl | | New York | NY | 10017 | |
| Tenneco Automotive Inc | Ms Maritza Gibbons CFA | VP Strategic Planning & Bsiness Dev | 500 North Field Dr | Lake Forest | IL | 60045 | |
| The Gores Group LLC | Mr Daniel J Gray | Director Business Development | 10877 Wilshire Blvd Ste 1805 | Los Angeles | CA | 90024 | |
| The Gores Group LLC | Mr Dave Leeney | 10877 Wilshire Blvd Ste 1805 | | Los Angeles | CA | 90024 | |
| The Renco Group Inc | Mr Marvin M Koenig Executive VP | 30 Rockefeller Plaza 42nd Fl | | New York | NY | 10112 | |
| The Sterling Group Inc | Mr Brad Staller | Eight Greenway Plaza Ste 702 | | Houston | TX | 77046 | |
| The Sterling Group Inc | Mr Francis Carr Senior Associate | Eight Greenway Plaza Ste 702 | | Houston | TX | 77046 | |
| Tooling Technologies Inc | | 10179 South 57th St | | Franklin | WI | 53132 | |

Delphi Corporation
Exhaust Sale Motion Special Parties

| Company | Contact | Address1 | Address2 | City | State | ZIP | Country |
|---------|---------|----------|----------|------|-------|-----|---------|
| Triton Beteiligungsberatung GmbH | Mr Duncan S Zheng | Rathenauplatz 1 | | Frankfurt | | D-60313 | Germany |
| Ultra Fit | Mr Don Hockin President | 1840 Courtneypark Dr E | | Mississauga | ON | | Canada |
| Valeo SA | Mr Stephane Dupuy | 43 Rue Bayen | | Paris Cedex 17 | | 75848 | France |
| Valeo SA | Mr Zyad Bahsoun Mergers/Acquisition | 43 Rue Bayen | | Paris Cedex 17 | | 75848 | France |
| Vconverter Corporation | Mark Midgley | 10505 Plaza Dr Bldg C | | Whitmore Lake | MI | 48189 | |
| Versa Capital Management Inc | Mr Jeffrey B Armbrister | Cira Centre 2929 Arch St | | Philadelphia | PA | 19104-2868 | |
| Versa Capital Management Inc | Mr Seth E Lemler | Operating Principal | 535 Madison Ave 5th Fl | New York | NY | 10022 | |
| Versa Capital Management Inc | Thomas A Kennedy Esq | Cira Centre 2929 Arch St | | Philadelphia | PA | 19104-2868 | |
| Wanxiang America Corporation | Mr Gary Wetzel | 88 Airport Rd | | Elgin | IL | 60123 | |
| Wanxiang America Corporation | Mr Pin Ni President | 88 Airport Rd | | Elgin | IL | 60123 | |
| Wynnchurch Capital | Mr Derek Ferguson Senior Associate | 6250 North River Rd Ste 10 100 | | Rosemont | IL | 60018 | |
| Wynnchurch Capital | Mr Frank G Hayes Partner | 6250 North River Rd Ste 10 100 | | Rosemont | IL | 60018 | |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Assistant United States Attorney | Matthew L Schwartz | Southern District of New York | 86 Chambers St 3rd Fl | New York | NY | 10007 |
| Department of Justice | Michael Garcia | 1 St Andrews Plaza | | New York | NY | 10007 |
| US Attorneys Office | Michael Garcia | 1 St Andrews Plaza | | New York | NY | 10007 |
| Varnum Riddering Schmidt & Howlett | Michael S McElwee | 333 Bridge St NW | PO Box 352 | Grand Rapids | MI | 49501-0352 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Adair Co Mo | Adair Co Collector | County Courthouse | 106 W Washington St | Kirksville | MO | 63501 |
| Adams County In | Adams County Treasurer | 313 W Jefferson St | | Decatur | IN | 46733 |
| Addison Village Of | Treasurer | 211 N Steer St | | Addison | MI | 49220 |
| Adrian City Of Lenawee | Treasurers Office | 100 E Church St | | Adrian | MI | 49221 |
| Aiken Co Sc | Aiken Co Tax Treasurer | PO Box 636 | | Aiken | SC | 29802 |
| Alabama Department Of Revenue | Business Privilege Tax Unit | PO Box 327431 | | Montgomery | AL | 36132-7431 |
| Alabama Department Of Revenue | Individual & Corporate Tax Division | Corporate Income Section | PO Box 327430 | Montgomery | AL | 36132-7430 |
| Alabama Dept Of Revenue | Sales Use & Business Tax Division | PO Box 327710 | | Montgomery | AL | 36132 |
| Alabama Etowah County | Sales Tax Division Lgrec Inc | PO Box 1324 | | Hartselle | AL | 35640 |
| Alameda County Tax Collector | | 1221 Oak St Room 131 | | Oakland | CA | 94612 |
| Alatax | | PO Box 830725 | | Birminham | AL | 35683 |
| Alief Isd Tx | Alief Isd Tax Office | 14051 Bellaire Blvd | | Houston | TX | 77803 |
| Allen County In | Treasurer Of Allen County | PO Box 2540 | | Fort Wayne | IN | 46801 |
| Allen County Treasurer | | One East Main St Room 100 | | Fort Wayne | IN | 46801-2540 |
| Allen County Treasurer | | PO Box 123 | | Lima | OH | 45802 |
| Alma City Of Gratiot | | 525 E Superior St | Box 278 | Alma | MI | 48801 |
| Anderson Co Sc | Anderson Co Treasurer | PO Box 8002 | | Anderson | SC | 29622 |
| Anderson Co Tn | Anderson County Trustee | 101 N Main St | Room 203 | Clinton | TN | 37716 |
| Angelina Co Tx | Angelina Co Tax Assessor Collector | PO Box 1344 | | Lufkin | TX | 75902 |
| Angelina County | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 |
| Annual Report Processing Center | Secretary Of State North Dakota | 600 E Blvd Ave Dept 108 | PO Box 5513 | Bismarck | ND | 58506-5513 |
| Arizona Corporation Commission | C/o Annual Reports | Corporations Division | 1300 W Washington | Phoenix | AZ | 85007-2929 |
| Arizona Department Of Revenue | | PO Box 29079 | | Phoenix | AZ | 85038-9079 |
| Arkansas Secretary Of State | Business And Commercial Services | PO Box 8014 | | Little Rock | AR | 72203-8014 |
| Ashtabula County Treasurer | | 25 W Jefferson St | | Jefferson | OH | 44047 |
| Autauga County Al | Autauga County Revenue Commissioner | 218 North Court St | | Prattville | AL | 36067 |
| Baldwin County Al | Baldwin County Revenue Commissioner | PO Box 1549 | | Bay Minette | AL | 36507 |
| Bangor Twp Bay | Treasurer | 180 State Pk Dr | | Bay City | MI | 48706 |
| Bartholomew County In | Bartholomew County Treasurer | PO Box 1986 | | Columbus | IN | 47202 |
| Bay City City Of Bay | Treasurer | 301 Washington Ave | | Bay City | MI | 48708 |
| Bay County Tax Collector | Co Jerry W Gerde Esq | 239 E 4th St | | Panama City | FL | 32401 |
| Bd Of Ed South Western City Sch Dst | Treasurer | 3805 Marlane Dr | | Grove City | OH | 43123 |
| Bedford Co Tn | Bedford County Trustee | 102 North Side Square | | Shelbyville | TN | 37160 |
| Ben Hill County Ga | Ben Hill County Tax Commissioner | PO Box 1393 | | Fitzgerald | GA | 31750 |
| Berkley City Of Oakland | | 3338 Coolidge Hwy | | Berkley | MI | 48072 |
| Bexar Co Tx | Bexar Co Tax Assessor / Collector | PO Box 2903 | | San Antonio | TX | 78299 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Bexar County | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 |
| Blackford County In | Blackford County Treasurer | PO Box 453 | | Hartford City | IN | 47348 |
| Board Of County Commissioners Of Johnson County Kansas | Johnson County Legal Dept | Johnson County Admin Bldg | 111 S Cherry St Ste 3200 | Olathe | KS | 66061-3441 |
| Board Of Equalization | | PO Box 942879 | | Sacramento | CA | 94279 |
| Boone Co Ky | Boone County Sheriff | PO Box 198 | | Burlington | KY | 41005 |
| Boulder Co Co | Boulder County Treasurer | PO Box 471 | | Boulder | CO | 80306 |
| Boulder County Treasurer | Bob Hullinghorst | PO Box 471 | | Boulder | CO | 80306 |
| Bourbon Co Ky | Bourbon County Sheriff | 301 Main St | | Paris | KY | 40361 |
| Bowie Independent School District | Andrew Dylan Wood | Ray Wood & Bonilla Llp | PO Box 165001 | Austin | TX | 78716 |
| Brevard County Tax Collector | | PO Box 2020 | | Titusville | FL | 32781 |
| Brighton City Of Livingston | Treasurer | 200 N First St | | Brighton | MI | 48116 |
| Brighton Twp Livingston | Treasurer | 4363 Buno Rd | | Brighton | MI | 48114 |
| Brownsville Isd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 | PO Box 17428 7428 | Austin | TX | 78760-7428 |
| Brownsville Isd Tx | Brownsville Isd Tax Office | PO Box 4050 | | Brownsville | TX | 78523 |
| Buena Vista Twp Saginaw | Buena Vista Twp Treasurer | 1160 S Outer Dr | | Saginaw | MI | 48601 |
| Bureau Of Customs Border Protection | Commisioner | Department Of Homeland Security | 1300 Pennsylvania Ave Nw | Washington | DC | 20229 |
| Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 |
| Burkburnett Isd Tx | Burkburnett Isd Tax Office | PO Box 608 | | Burkburnett | TX | 76364 |
| Burton City Of Genesee | Treasurer | 4303 S Ctr Rd | | Burton | MI | 48519 |
| Butler Co Ky | Butler County Sheriff | PO Box 100 | | Morgantown | KY | 42261 |
| Butler Co Mo | Butler Co Courthouse | 100 N Main | | Poplar Bluff | MO | 63901 |
| Butler County Treasurer | Government Services Building | 315 High St 10th Fl | | Hamilton | OH | 45011 |
| Byron Twp Kent | Treasurer | 8085 Byron Ctr Ave Sw | | Byron Ctr | MI | 49315 |
| Cabarrus Co Nc | Cabarrus Co Tax Collector | 65 Church St Se | | Concord | NC | 28026 |
| California Secretary Of State | Statement Of Information Unit | PO Box 944230 | | Sacramento | CA | 94244-2300 |
| Cameron Co Tx | Cameron Co Tax Assessor/collector | PO Box 952 | | Brownsville | TX | 78522 |
| Cameron County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Campbell Co Va | County Of Campbell Treasurer | PO Box 37 | | Rustburg | VA | 24588 |
| Campbell County Treasurers Office | | PO Box 37 | | Rustburg | VA | 24588 |
| Canada Border Service Agency | Mr Alain Jolicoeur | 191 Laurier Ave West | 15th Fl | Ottawa | ON | K1A 0L8 |
| Canada Customs And Revenue Agency | | 275 Pope Rd Ste 103 | | Summerside Pe | | C1N 6A2 |
| Canton Twp | Treasurer | PO Box 87010 | | Canton | MI | 48187 |
| Carolyn P Bowers Montgomery County Trustee | | PO Box 1005 | | Clarksville | TN | 37041 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Carrollton Farmers Branch Independent School District | Andrea Sheehan | Law Offices Of Robert E Luna P C | 4411 N Central Expressway | Dallas | TX | 75205 |
| Carrollton Farmers Branch Isd Tx | School Tax Assessor / Collector | PO Box 110611 | | Carrollton | TX | 75011 |
| Cass County In | Cass County Treasurer | 200 Court Pk | | Logansport | IN | 46947 |
| Catawba Co Nc | Catawba Co Tax Collector | PO Box 368 | | Newton | NC | 28658 |
| Cca Municipal Income Tax | | 1701 Lakeside Ave | | Cleveland | OH | 44114-1179 |
| Charter Township Of Brighton | Harris & Literski | 822 E Grand River | | Brighton | MI | 48116 |
| Chelsea | | 305 S Main St | Ste 100 | Chelsea | MI | 48118 |
| Cherokee Co Ga | Cherokee Bd Of Collector | 100 North St | | Canton | GA | 30114 |
| Chesterfield Co Sc | Chesterfield Co Tax Treasurer | PO Box 750 | | Chesterfield | SC | 29709 |
| Chris Hughes Okaloosa County Tax Collector | Philip A Bates Pa | PO Box 1390 | | Pensacola | FL | 32591-1390 |
| Christian Co Ky | Christian County Sheriff | 501 S Main St | | Hopkinsville | KY | 42240 |
| Cincinnati Income Tax Division | | 805 Central Ave | Ste 600 | Cincinnati | OH | 45202-5756 |
| City & County Of Denver Co | Treasury Division | 144 W Colfax Ave / PO Box 17420 | | Denver | CO | 80217 |
| City And County Of Denver Treasury | Attn Karen Katros Bankruptcy Analys | Mcnichols Civic Ctr Bldg | 144 W Colfax Ave Room 384 | Denver | CO | 80202-5391 |
| City If Bristol Ct | City If Bristol Tax Collector | PO Box 1040 | | Bistol | CT | 06011 |
| City Income Tax | Room G 29 | 142 W Michigan Ave | | Lansing | MI | 48933-1697 |
| City Of Akron Ohio | Income Tax Division | 1 Cascade Plaza 11th Fl | | Akron | OH | 44308-1100 |
| City Of Bowling Green Ky | Treasury Division | PO Box 430 | | Bowling Green | KY | 42102-0430 |
| City Of Brookhaven Ms | City Tax Collector | PO Box 560 | | Brookhaven | MS | 39602 |
| City Of Brownsville Tn | City Clerk | PO Box 375 | | Brownsville | TN | 38012 |
| City Of Chester Ct | City Of Chester Tax Collector | PO Box 314 | | Chester | CT | 06412 |
| City Of Clinton Tn | Clinton City Recorder | 100 Bowling St | City Hall | Clinton | TN | 37716 |
| City Of Columbia | | 707 N Main St | | Columbia | TN | 38401 |
| City Of Columbia Ms | City Of Columbia Tax Office | 201 2nd St | | Columbia | MS | 39429 |
| City Of Coopersville | Law Weathers & Richardson Pc | 333 Bridge St Ste 800 | | Grand Rapids | MI | 49504 |
| City Of Dayton | Attn Tax Collections | City Of Dayton Finance Department | 101 W Third St | Dayton | OH | 45402 |
| City Of Dayton | Department Of Finance | Division Of Revenue & Taxation | PO Box 1830 | Dayton | OH | 45401-1830 |
| City Of Dayton Income Tax | | PO Box 2806 | | Dayton | OH | 45401-2806 |
| City Of Dearborn | James J Oconnor Treasurer | City Hall | 13615 Michigan Ave | Dearborn Michigan | | |
| City Of Derby Ct | City Of Derby | 35 5th St | City Hall | Derby | CT | 06418 |
| City Of Dry Ridge Ky | City Of Dry Ridge | PO Box 145 | 31 Broadway | Dry Ridge | KY | 41035 |
| City Of Dunn Nc | City Of Dunn Tax Collector | PO Box 1107 | | Dunn | NC | 28335 |
| City Of El Paso | David G Aelvoet | Linebarger Goggan Blair & Sampson L | 711 Navarro Ste 300 | San Antonio | TX | 78205 |
| City Of Fitzerald Ga | City Of Fitzgerald | Minicipal Building | 116 N Johnston St | Fitzgerald | GA | 31750 |
| City Of Flint | Douglas Bingaman | 1101 S Saginaw St | | Flint | MI | 48502 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| City Of Flint Eft | Douglas M Philpott | 503 S Saginaw St Ste 1415 | | Flint | MI | 48502 |
| City Of Franklin | Tax Collector | PO Box 705 | | Franklin | TN | 37065 |
| City Of Franklin Tn | City Of Franklin | Property Tax Office | 109 3rd Ave S Ste 143 | Franklin | TN | 37064 |
| City Of Gallatin Tn | Gallatin City Recorder | 132 W Main St | Room 111 | Gallatin | TN | 37066 |
| City Of Germantown Tn | City Of Germantown | PO Box 38809 | | Germantown | TN | 38183 |
| City Of Gordonsville Tennessee | Jamie D Winkler Esq Bellar & Winkler | 212 Main St N | PO Box 332 | Carthage | TN | 37030 |
| City Of Gordonsville Tn | Gordonsville City Clerk | PO Box 357 | 105 S Main St | Gordonsville | TN | 38563 |
| City Of Harlingen | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| City Of Harlingen Tx | Harlingen Tax Office | 305 E Jackson Ste 102 | PO Box 1343 | Harlingen | TX | 78551 |
| City Of Hazlehurst Ms | City Of Hazlehurst Tax Office | PO Box 314 | | Hazlehurst | MS | 39083 |
| City Of Henderson Ky | City Of Henderson Collector | PO Box 716 | | Henderson | KY | 42419 |
| City Of Hendersonville Tn | City Of Hendersonville | Property Tax Collector | One Executive Pk Dr | Hendersonville | TN | 37075 |
| City Of Jasper Ga | City Of Jasper Tax Dept | 200 Burnt Mountain Rd | | Jasper | GA | 30143 |
| City Of Kettering Tax Division | | PO Box 293100 | | Kettering | OH | 45429-9100 |
| City Of Knoxville Tn | City Of Knoxville | PO Box 59031 | | Knoxville | TN | 37950 |
| City Of Lake City | City Of Lake City Tax Dept | 5455 Jonesboro Rd | | Lake City | GA | 30260 |
| City Of Laredo | C O Laura L Gomez | 212 Flores Ave | | Laredo | TX | 78040 |
| City Of Laredo Tx | City Of Laredo Tax Assessor | / Collector | PO Box 6548 | Laredo | TX | 78042 |
| City Of Lebanon Tn | Commissioner Of Finance | 200 Castle Heights Ave | | Lebanon | TN | 37087 |
| City Of Lockport Ny | City Of Lockport | 1 Locks Plaza | | Lockport | NY | 14094 |
| City Of Lordstown Ohio | | 1455 Salt Springs Rd | | Warren | OH | 44481 |
| City Of Lynchburg Va | City Of Lynchburg | PO Box 9000 | | Lynchburg | VA | 24505 |
| City Of Mcallen Tx | City Of Mcallen Tax Office | PO Box 3786 | | Mcallen | TX | 78502 |
| City Of Monroe Mo | City Of Monroe City | PO Box 67 | | Monroe | MO | 63456 |
| City Of Moraine | Department Of Taxation | 4200 Dryden Rd | | Moraine | OH | 45439-1495 |
| City Of N Kansas Mo | City Hall / City Collector | PO Box 7468 | 2010 Howell St | N Kansas City | MO | 64116 |
| City Of Naugatuck Ct | City Of Naugatuck Tax Collector | 229 Church St | | Naugatuck | CT | 06770 |
| City Of New Brunswick Nj | City Of New Brunswick | 78 Bayard St | | New Brunswick | NJ | 08901 |
| City Of North Kansas City | | 2010 Howell St | | North Kansas City | MO | 64116 |
| City Of Norwich Ct | City Of Norwich Tax Collector | 100 Broadway | | Norwich | CT | 06360 |
| City Of Oak Creek Wi | City Of Oak Creek | 8640 S Howell Ave | | Oak Creek | WI | 53154 |
| City Of Poplar Bluff Mo | City Of Poplar Bluff Mo | 191 Oak St | | Poplar Bluff | MO | 63901 |
| City Of Portland | | 111 Sw Columbia St | Ste 600 | Portland | OR | 97201-5840 |
| City Of Portland Tn | Portland Tax Collector | 100 S Russell | | Portland | TN | 37148 |
| City Of Pulaski | | PO Box 633 | | Pulaski | TN | 38478 |
| City Of Radford Va | Treasurer City Of Radford | 619 2nd St | Room 164 | Radford | VA | 24141 |
| City Of Rochester Ny | City Of Rochester Treasurer | 30 Church St | | Rochester | NY | 14614 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| City Of San Marcos | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| City Of Selmer Tn | City Tax Collector | 144 N 2nd St | | Selmer | TN | 38375 |
| City Of Shelbyville Tn | Shelbyville Treasurer | 201 N Spring St | | Shelbyville | TN | 37160 |
| City Of Southington Ct | City Of Southington Tax Collector | PO Box 579 | | Southington | CT | 06489 |
| City Of Toledo | Division Of Taxation | One Government Ctr Ste 2070 | | Toledo | OH | 43604-2280 |
| City Of Torrington Ct | City Of Torrington Tax Collector | PO Box 839 | | Torrington | CT | 06790 |
| City Of Tuscaloosa | Revenue Dept | PO Box 2089 | | Tuscaloosa | AL | 35603 |
| City Of Vandalia | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 |
| City Of Walker | Income Tax Administrator | PO Box 153 | | Grand Rapids | MI | 49501-0153 |
| City Of Warren Income Tax | | PO Box 230 | | Warren | OH | 44482 |
| City Of Waterbury Ct | City Of Waterbury Tax Collector | PO Box 2556 | | Waterburry | CT | 06723 |
| City Of Watertown Ct | City Of Watertown Tax Collector | PO Box 224 | | Watertown | CT | 06795 |
| City Of Wentzville Mo | City Collector | 310 W Pearce Blvd | | Wentzville | MO | 63385 |
| City Of Wichita Falls Tx | Director Of Finance | City Of Wichita Falls | PO Box 1431 | Wichita Falls | TX | 76307 |
| Clark Co Nv | Clark County Assessor | 500 S Grand Central Pkwy | PO Box 551401 | Las Vegas | NV | 89155 |
| Clark Co Wa | Clark County Treasurer | PO Box 9808 | | Vancouver | WA | 98666 |
| Clark County Ar | Clark County Courthouse | 401 Clay St | | Arkadelphia | AR | 71923 |
| Clark County Treasurer | | 31 N Limestone St | PO Box 1305 | Springfield | OH | 45502 |
| Clay Co Mo | Clay County Collector | PO Box 219808 | | Kansas City | MO | 64121 |
| Clayton County Ga | Clayton County Tax Commissioner | 121 S Mcdonough St | Courthouse Annex 3 2nd Fl | Jonesboro | GA | 30236 |
| Cleveland Co Nc | Cleveland Co Tax Collector | PO Box 370 | | Shelby | NC | 28151 |
| Clinton City Recorder | | 100 Bowling St City Hall | | Clinton | TN | 37716 |
| Clinton County In | Clinton County Treasurer | 220 Courthouse Sq | | Frankfort | IN | 46041 |
| Clio City Of Genesee | City Treasurer | 505 W Vienna St | | Clio | MI | 48420 |
| Cobb County Ga | Cobb County Tax Commissioner | 100 Cherokee St | Ste 250 | Marietta | GA | 30090 |
| Collector Of Revenue | | 41 S Central Ave | | Clayton | MO | 63105 |
| Collin Co Tx | Collin Co Tax Assessor / Collector | PO Box 8006 | | Mckinney | TX | 75070 |
| Collin County Tax | Gay Mccall Isaacks Et Al | 777 E 15th St | | Plano | TX | 75074 |
| Colorado Department Of Revenue | | | | Denver | CO | 80261-0006 |
| Columbiana County Treasurer | | PO Box 469 | | Lisbon | OH | 44432-1255 |
| Comal Co Tx | Comal Co Tax Assessor / Collector | 311445 | | New Braunfels | TX | 78131 |
| Commissioner Of Revenue Services | Department Of Revenue Services | PO Box 2936 | | Hartford | CT | 06104-2936 |
| Commonwealth Of Kentucky Department Of Revenue | Wendy L Stephens Kentucky Department Of Revenue | 100 Fair Oaks 5th Fl | PO Box 491 | Frankfort | KY | 40602-0491 |
| Commonwealth Of Massachusetts Department Of Revenue | Anne Chan | Bankruptcy Unit Mdor | PO Box 9564 | Boston | MA | 02114-9564 |
| Comptroller Of Maryland | | Revenue Administration Division | | Annapolis | MD | 21411-0001 |
| Comptroller Of Public Accounts | Texas Sales & Use Tax Division | 111 E 17th St | | Austin | TX | 78774 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Connecticut Department Of Revenue Services | C&e Division Bankruptcy Section | 25 Sigourney St | | Hartford | CT | 06106-5032 |
| Connecticut Secretary Of State | Document Review | 30 Trinity St PO Box 150470 | | Hartford | CT | 06106-0470 |
| Contra Costa County Collector | | PO Box 631 | | Martinez | CA | 94553 |
| Coopersville City Of Ottawa | | 289 Danforth St | | Coopersville | MI | 49404 |
| Copiah County | Tax Collector | PO Box 705 | | Hazlehurst | MS | 39083 |
| Corporation Income Tax Section | | PO Box 919 | | Little Rock | AR | 72203-0919 |
| Corporation Tax Return Processing | Iowa Department Of Revenue | PO Box 10468 | | Des Moines | IA | 50306-0468 |
| County Of Comal | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 |
| County Of Denton | | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 |
| County Of Hays | Mccreary Veselka Bragg & Allen Pc | 5929 Balcones Dr Ste 200 | PO Box 26990 | Austin | TX | 78755 |
| County Of San Bernardino | Office Of The Tax Collector | 172 W 3rd St | | San Bernardino | CA | 92415 |
| County Of Santa Clara | Tax Collector | County Government Ctr E Wing | 70 W Hedding St | San Jose | CA | 95110 |
| County Of Tuscaloosa | Use Tax Return | PO Box 20738 | | Tuscaloosa | AL | 35402 |
| Crawford County Treasurer | | PO Box 565 | | Bucyrus | OH | 44820 |
| Customs Counsel Us & Canada | Chet Wilson Delphi Corporation | 5825 Delphi Dr | M/c 480 410 228 | Troy | MI | 48098 |
| Cuyahoga County Treasurer | | 1219 Ontario St Rm 112 | | Cleveland | OH | 44113-1697 |
| Cypress Fairbanks Isd | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 |
| Dallas County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 |
| Dallas County Tx | Dallas County Tax Assessor | / Collector | 500 Elm St | Dallas | TX | 75202 |
| Darke County Treasurer | | 504 S Broadway | | Greenville | OH | 45331 |
| Davidson Co Tn | Davidson County Trustee | 800 2nd Ave N | Ste 2 | Nashville | TN | 37201 |
| Daviess Co Ky | Daviess County Sheriff | 212 St Ann St | | Owensboro | KY | 42303 |
| Dc Office Of Tax & Revenue | Corporation Estimated Franchise Tax | PO Box 96019 | | Washington | DC | 20090-6019 |
| Dc Office Of Tax & Revenue | | 6th Fl 941 North Capitol St Ne | | Washington | DC | 20002-4265 |
| Dc Treasurer | Dept Of Consumer And Regulatory Affairs Business & Professional | Licensing Admin PO Box 92300 | Corporations Division PO Box 92300 | Washington | DC | 20090 |
| Dearborn City Of Wayne | | PO Box 4000 | | Dearborn | MI | 48126 |
| Dearborn Countyin | Dearborn County Treasurer | 215b W High St | New Adminstration Blgd | Lawrenceburg | IN | 47025 |
| Dekalb County Al | Dekalb County Revenue Commissioner | 206 Grand Ave Sw | | Fort Payne | AL | 35967 |
| Dekalb County In | Dekalb County Treasurer | 100 S Main St Courthouse | | Auburn | IN | 46706 |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 |
| Delaware County In | Delaware County Treasurer | 100 W Main St | Room 102 | Muncie | IN | 47305 |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015-1799 |
| Delaware County Treasurer | | 91 N Sandusky St | | Delaware | OH | 43015 |
| Delaware Division Of Revenue | | PO Box 8719 | | Wilmington | DE | 19899-8719 |
| Delaware Division Of Revenue | | PO Box 8751 | | Wilmington | DE | 19899-8751 |
| Delta Twp Eaton | Treasurer | 7710 W Saginaw Hwy | | Lansing | MI | 48917 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Denton Co Tx | Denton Co Tax Assessor/collector | PO Box 1249 | | Denton | TX | 76202 |
| Department Of Licensing | | PO Box 9048 | | Olympia | WA | 98507-9048 |
| Department Of Revenue Services | | PO Box 2974 | | Hartford | CT | 06104-2974 |
| Department Of The Treasury Internal Revenue Service | Internal Revenue Service | 290 Broadway 5th Fl | | New York | NY | 10007 |
| Detroit City Income Tax | | 2 Woodward | Room B 3 | Detroit | MI | 48226 |
| Detroit City Of Wayne | Department 268301 | City Of Detroit Property Tax | PO Box 55000 | Detroit | MI | 48255 |
| Director Department | Office Of The Illinois State Treasu | 1 West Old State Capitol Plaza | | Springfield | IL | 62701 |
| Director Of Finance | City Of Elizabethtown | PO Box 550 | | Elizabethtown | KY | 42702-0550 |
| Division Of Corporations | Annual Report Section | PO Box 6850 | | Tallahassee | FL | 32314 |
| Division Of Corporations | Nys Department Of State | 41 State St | | Albany | NY | 12231-0002 |
| Donetta Davidson Secretary Of State | Department Of State | 1560 Broadway Ste 200 | | Denver | CO | 80202 |
| Doug Belden Hillsborough County Tax Collector | Attn Doug Belden | 601 E Kennedy Blvd 14th Fl | | Tampa | FL | 33602 |
| Dubois County In | Dubois County Treasurer | 1 Courthouse Sq | | Jasper | IN | 47546 |
| Dyer Co Tn | Dyer County Trustee | PO Box 1360 | Courthouse | Dyersburg | TN | 38025 |
| Dyer County Trustee | C O J Michael Gauldin | PO Box 220 | | Dyersburg | TN | 38025 |
| East Tawas City Of | Treasurer | 760 Newman | PO Box 672 | East Tawas | MI | 48730 |
| Edgefield Co Sc | Edgefield Co Treasurer | PO Box 22 | | Edgefield | SC | 29824 |
| El Paso County Tx | El Paso Co Tax Assessor /collector | PO Box 313 | | El Paso | TX | 79999 |
| Elkhart County In | Elkhart County Treasurer | 117 N 2nd St | Room 201 | Goshen | IN | 46526 |
| Erie County Treasurer | | 247 Columbus | | Sandusky | OH | 44870 |
| Essexville City Of Bay | | | | Essexville | MI | |
| Etowah County Al | Etowah County Revenue Commissioner | 800 Forrest Ave | Room G 15 | Gadsden | AL | 35901 |
| Fairfield County Treasurer | | 210 East Main St | Room 206 | Lancaster | OH | 43130 |
| Fayette County Ga | Fayette County Tax Commissioner | PO Box 70 | | Fayetteville | GA | 30214 |
| Fayette County In | Fayette County Treasurer | Courthouse | | Connersville | IN | 47331 |
| Fenton City Of | Treasurer | 301 S Leroy St | | Fenton | MI | 48430 |
| Finanzamt Bonn Innenstadt | | Welschnonnenstr 15 | | Bonn | | 53111 |
| Flint Charter Twp | Treasurer | 1490 S Dye Rd | | Flint | MI | 48532 |
| Flint City Of Genesee | Treasurer | PO Box 2056 | | Flint | MI | 48501 |
| Florida Department Of Revenue | | 5050 W Tennessee St | | Tallahassee | FL | 32399 |
| Florida Department Of State | Division Of Corporations | PO Box 6478 | | Tallahassee | FL | 32314 |
| Forrest Butch Freeman Oklahoma County Treasurer | | 320 Robert S Kerr Rm 307 | | Oklahoma City | OK | 73102 |
| Forsyth Twp Marquette | | | | Gwinn | MI | |
| Franchise Tax Board | | PO Box 942857 | | Sacramento | CA | 94257-0500 |
| Franklin Co Mo | Franklin Co Collector | 300 E Main St | Room 103 | Union | MO | 63084 |
| Franklin County Ohio Treasurer | | 373 S High St 17th Fl | | Columbus | OH | 43215 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Fulton County Ga | Fulton County Tax Commissioner | PO Box 105052 | | Atlanta | GA | 30348 |
| Fulton County In | Fulton County Treasurer | 125 E 9th St | | Rochester | IN | 46975 |
| Gaston Co Nc | Gaston Co Tax Collector | Drawer M | | Gaston | NC | 27832 |
| Genesee Twp/genesee Co Genesee | Treasurer | 7244 N Genesee Rd | | Genesee | MI | 48437 |
| Georgia Department Of Revenue | Department Of Revenue Compliance Division | Bankruptcy Section | PO Box 161108 | Atlanta | GA | 30321 |
| Georgia Income Tax Division | | PO Box 49432 | | Atlanta | GA | 30359-1432 |
| Gibson County In | Gibson County Treasurer | 101 N Main St | | Princeton | IN | 47670 |
| Giles Co Tn | Giles County Trustee | PO Box 678 | Courthouse | Pulaski | TN | 38478 |
| Gleyn Twilla | City Tax Collector | 425 W Court St | | Dyersburg | TN | 38024 |
| Grand Blanc Twp Genesee | | 5371 S Saginaw St | Box 1833 | Grand Blanc | MI | 48480 |
| Grand Rapids Income Tax Department | | PO Box 347 | | Grand Rapids | MI | 49501-0347 |
| Grant Co Ky | Grant County Sheriff | 101 N Main St | Courthouse | Williamston | KY | 41097 |
| Grayson County | F R Young Jr Treasurer | PO Box 127 | | Independence | VA | 24348 |
| Green Oak Twp | Treasurer | 10001 Silver Lake Rd | | Brighton | MI | 48116 |
| Greene Co Nc | Greene Co Tax Collector | 229 Kingold Blvd | Ste B | Snow Hill | NC | 28580 |
| Greene Co Tn | Greene County Trustee | PO Box 115 | | Greeneville | TN | 37744 |
| Greenwood Co Sc | Greenwood Co Tax Collector | 528 Monument St | R 101 | Greenwood | SC | 29646 |
| Guilford Co Nc | Guilford Co Tax Dept | PO Box 3328 | | Greensboro | NC | 27402 |
| Gwinnett Co Ga | Gwinnett Bd Of Collector | 75 Langley Dr | | Lawrenceville | GA | 30045 |
| Habersham County Ga | Habersham County Tax Commissioner | 555 Monroe St | Unit 25 | Clarkesville | GA | 30523 |
| Hamilton Co Tn | Hamilton County Trustee | 210 7th St | Room 210 | Chattanooga | TN | 37402 |
| Hamilton County In | Hamilton County Treasurer | 33 N 9th St 112 | Old Courthouse | Noblesville | IN | 46060 |
| Hamilton County Treasurer | | 138 E Court St | Room 408 | Cincinnati | OH | 45202 |
| Hardin Co Ky | Hardin County Sheriff | 100 Public Square | Ste 101 | Elizabethtown | KY | 42701 |
| Harlingen Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Harnett Co Nc | Harnett Co Tax Collector | Po 58509 | | Charlotte | NC | 28258 |
| Harris Co Tx | Harris Co Tax Assessor / Collector | PO Box 4622 | | Houston | TX | 77210 |
| Harris County City Of Houston | John P Dillman | Linebarger Goggan Blair & Sampson L | PO Box 3064 | Houston | TX | 77253-3064 |
| Hawes Twp | Treasurer | 1369 N Gehres Rd | | Lincoln | MI | 48742 |
| Hawkins Co Tn | Hawkins County Trustee | 110 E Main St | Room 203 | Rogersville | TN | 37857 |
| Hays Co Tx | Hays Co Tax Assessor / Collector | 102 N Lbj Dr | | San Marcos | TX | 78666 |
| Haywood Co Tn | Haywood County Trustee | Courthouse | | Brownsville | TN | 38012 |
| Henderson Co Ky | Henderson County Sheriff | 20 N Main St | Courthouse | Henderson | KY | 42420 |
| Hendricks County In | Hendricks County Treasurer | 355 S Washington St | Ste 215 | Danville | IN | 46122 |
| Henry County In | Henry County Treasurer | 101 S Main St | | New Castle | IN | 47362 |
| Hidalgo Co Tx | Hidalgo County Tax Assessor | / Collector | PO Box 4290 | Edinburg | TX | 78540 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Hidalgo County | Diane W Sanders | Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 PO Box 1742 | Austin | TX | 78760-7428 |
| Hillsborough County Tax Collector | | PO Box 172920 | | Tampa | FL | 33602 |
| Hinds Co Ms | Hinds Co Tax Collector | PO Box 1727 | | Jackson | MS | 39215 |
| Hinds County Tax Collector | | PO Box 1727 | Add Chg 1 08 04 Cp | Jackson | MS | 39215-1727 |
| Howard County In | Howard County Treasurer | 226 N Main St | 2nd Fl | Kokomo | IN | 46901 |
| Howard County Indiana | Michael K Mccrory | Barnes & Thornburg Llp | 11 South Meridian St | Indianapolis | IN | 46204 |
| Huntington County In | Huntington County Treasurer | 201 N Jefferson | Room 104 | Huntington | IN | 46750 |
| Huron County Treasurer | Huron County Auditors Office | 16 East Main St | | Norwalk | OH | 44857 |
| Illinois Department Of Revenue | | PO Box 19008 | | Springfield | IL | 62794-9008 |
| Illinois State Treasurer Unclaimed Property Div | | PO Box 19496 | | Springfield | IL | 62794-9496 |
| Income Tax Office | | PO Box 727 | 333 Je Bohanen Memorial Dr | Vandalia | OH | 45377-0727 |
| Income Tax Office | | 1315 S Washington | | Saginaw | MI | 48601 |
| Indiana Department Of Revenue | Bankruptcy Section Room N 203 | 100 N Senate Ave | | Indianapolis | IN | 46204 |
| Indiana Department Of Revenue | | PO Box 7218 | | Indianapolis | IN | 46207 |
| Indiana Secretary Of State | | 302 W Washington St | Room E 018 | Indianapolis | IN | 46204 |
| Indiana Secretary Of State | | PO Box 7097 | | Indianapolis | IN | 46207 |
| Internal Revenue Service | Insolvency | 290 Broadway 5th Fl | | New York | NY | 10007 |
| Jackson Co Mo | Jackson County | Manager Of Finance | PO Box 219747 | Kansas City | MO | 64121 |
| Jackson Co Ms | Jackson Co Tax Collector | Courthouse | PO Box 998 | Pascagoula | MS | 39567 |
| Jackson County | Manager Of Finance | Collection Department | 415 E 12th St | Kansas City | MO | 64106-8401 |
| Jasper County In | Jasper County Treasurer | 115 W Washington St | Ste 201 | Rensselaer | IN | 47978 |
| Jay County In | Jay County Treasurer | 120 Court St | | Poerland | IN | 47371 |
| Jefferson Co Ky | Jefferson County Sheriff | PO Box 70300 | | Louisville | KY | 40270 |
| Jennings County In | Jennings County Treasurer | Government Ctr | PO Box 368 | Vernon | IN | 47282 |
| Jesse White Secretary Of State | Department Of Business Services | 501 S 2nd St | | Springfield | IL | 62756-5510 |
| Joe G Tedder Tax Collector | | PO Box 1189 | | Bartow | FL | 33830 |
| Johnson Co Mo | Johnson Co Collector | 300 N Holden | Ste 201 | Warrensburg | MO | 64039 |
| Johnson County In | Johnson County Treasurer | Courthuse Annex | 86 W Court St | Franklin | IN | 46131 |
| Johnson County Ks | Johnson County Treasurer | 111 S Cherry St | Ste 1500 | Olather | KS | 66061 |
| Johnson County Treasurer Courthouse Annex | | 86 W Court St | | Franklin | IN | 46131 |
| Johnston Co Nc | Johnston Co Tax Collector | PO Box 451 | | Smithfield | NC | 27577 |
| Jones Co Ms | Jones Co Tax Collector | PO Box 511 | | Laurel | MS | 39441 |
| Judy Pitts Revenue Commissioner Etowah County Alabama | Etowah County Courthouse | 800 Forrest Ave Rm 5 | | Gadsden | AL | 35901 |
| Kansas Corporate Tax | Kansas Department Of Revenue | 913 Sw Harrison St | | Topeka | KS | 66699-4000 |
| Kansas Department Of Revenue | Sales Tax Division | 915 Sw Harrison St | | Topeka | KS | 66625 |
| Kansas Secretary Of State | Memorial Hall 1st Fl | 120 S W 10th Ave | | Topeka | KS | 66612-1594 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Ken Burton Jr Cfc | Tax Collector Manatee County | PO Box 25300 | | Bradenton | FL | 34206-5300 |
| Kentucky Department Of Revenue | | | | Frankfurt | KY | 40619-0007 |
| Kentucky Revenue Cabinet | | | | Frankfurt | KY | 40620 |
| Killam Development Ltd | | PO Box 499 | | Laredo | TX | 78042 |
| King Co Wa | King County Tax Collector | 500 4th Ave | Room 600 | Seattle | WA | 98104 |
| King County Tax Collector Room 600 | | 500 4th Ave | | Seattle | WA | 98104-2340 |
| Knox Co Tn | Knox County Trustee | PO Box 70 | | Knoxville | TN | 37901 |
| Knox County Trustee | Mike Lowe Knox Co Trustee C O Attorney Dean B Farmer | Hodges Doughty Carson Pllc | PO Box 869 | Knoxville | TN | 37901-0869 |
| Kosciusko County In | Kosciusko County Treasurer | 100 W Ctr St | | Warsaw | IN | 46580 |
| Lagrange County In | Lagrange County Treasurer | 114 W Michigan St | Ste 4 | Lagrange | IN | 46761 |
| Lake County Treasurer | | 105 Main St | | Painesville | OH | 44077 |
| Lakeview Local Sch Dst Board Of Education | Treasurer | 300 Hillman Dr | | Cortland | OH | 44410 |
| Lansing City Of Eaton | Treasurer | 1st Fl City Hall | 124 W Michigan Ave | Lansing | MI | 48933 |
| Laporte County In | Laporte County Treasurer | 813 Lincolnway Ste 205 | | Laporte | IN | 46360-3491 |
| Laporte County In | Laporte County Treasurer | PO Box J | | Michigan City | IN | 46361 |
| Laurens Co Sc | Laurens Co Taxtreasurer | PO Box 1049 | | Laurens | SC | 29360 |
| Lawrence Co Ky | Lawrence County Sheriff | PO Box 38 | | Louisa | KY | 41230 |
| Lawrence County In | Lawrence County Treasurer | 916 15th St | Ste 27 | Bedford | IN | 47421 |
| Lee Co Nc | Lee Co Tax Collector | PO Box 1968 | | Sanford | NC | 27331 |
| Lexington Co Sc | Lesington Co Treasurer | Dept Of Treasurer | PO Box 3000 | Lexington | SC | 29071 |
| Lexington County | | 212 S Lake Dr | | Lexington | SC | 29072 |
| Lexington Fayette Urban County Government Ky | Lexington Fayette | Urban County Government | PO Box 1333 | Lexington | KY | 40588 |
| Limestone County Al | Limestone County Revenue Commissioner | 200 W Washington St | County Courthouse 2nd Fl | Athens | AL | 35611 |
| Limestone County Revenue Commissioner | | 100 S Clinton St Ste A | | Athens | AL | 35611 |
| Lincoln Co Ms | Lincoln County Tax Collector | 301 South 1st St | Room 109 | Brookhaven | MS | 39601 |
| Lincoln County Tax | | 301 South 1st Room 109 | | Brookhaven | MS | 39601 |
| Lockport City School District Ny | Lockport City School District | School Tax Collector | 1 Locks Plaza | Lockport | NY | 14094 |
| Logan Co Ky | Logan County Sheriff | PO Box 113 | | Russellville | KY | 42276 |
| Logan County Ar | Logan County Tax Collector | Logan County Courthouse | 25 West Walnut | Paris | AR | 72855 |
| Logan County Treasurer | | 100 South Madriver St | Room 104 | Bellefontaine | OH | 43311 |
| Lorain County Treasurer | | 226 Middle Ave | | Elyria | OH | 44035 |
| Los Angeles County Collector | | PO Box 54027 | | Los Angeles | CA | 90054 |
| Los Angeles County Treasurer And Tax Collector | Revenue And Enforcement | PO Box 54110 | | Los Angeles | CA | |
| Louisiana Department Of Revenue | Eft Processing | PO Box 4018 | | Baton Rouge | LA | 70821-4018 |
| Louisiana Secretary Of State | Commercial Division | PO Box 94125 | | Baton Rouge | LA | 70804-9125 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Louisville Jefferson County Metro Government | Jefferson County Attorneys Office | Fiscal Court Building | 531 Court Pl Ste 1001 | Louisville | KY | 40202 |
| Lowndes C Ms | Lowndes Co Tax Collector | PO Box 1077 | | Columbus | MS | 39703 |
| Lubbock Central Appraisal District | Laura J Monroe | Perdue Brandon Fielder Collins & Mo | PO Box 817 | Lubbock | TX | 79408-0817 |
| Lubbock Co Tx | Lubbock Co Tax Assessor /collector | PO Box 10568 | | Lubbock | TX | 79408 |
| Lucas County Treasurer | | One Government Ctr 500 | | Toledo | OH | 43604 |
| Lula Lunsford Huff Muscogee County Tax Commissioner | Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902-1441 |
| Lumpkin Co Ga | Lumpkin Bd Of Collector | 99 Courthouse Hill | | Dahlonega | GA | 30533 |
| Lynda Hall Tax Collector Madison County Courthouse | | 100 Northside Sq | | Huntsville | AL | 95808 |
| Macon Co Nc | Macon Co Tax Collector | 5 West St | | Franklin | NC | 28734 |
| Madison Co Ky | Madison County Sheriff | 101 West Main St | | Richmond | KY | 40475 |
| Madison Co Ms | Madison Co Tax Collector | PO Box 113 | | Canton | MS | 39046 |
| Madison Co Tn | Madison County Trustee | 100 E Main | Rm 107 | Jackson | TN | 38301 |
| Madison County Al | Madison County Collector | 100 Northside Square | County Courthouse | Huntsville | AL | 35801 |
| Madison County In | Madison County Treasurer | 16 E 9th St | | Anderson | IN | 46016 |
| Madison County Indiana Treasurer | C O Thomas M Beeman | 33 W 10th St Ste 200 | | Anderson | IN | 46016 |
| Madison Heights City Of Oakland | | 300 W 13 Mile Rd | | Madison Heights | MI | 48071 |
| Madison Twp Lenawee | Lenawee County Treasurer | 301 N Main St Old Courthouse | | Adrian | MI | 49221 |
| Manager Of Finance | Jackson County Manager Of Finance | Bankruptcy 415 E 12th St | | Kansas City | MO | 64106 |
| Manatee Tax County Collector | | PO Box 25300 | | Sarasota | FL | 25300 |
| Maricopa Co Az | Maricopa County Treasurer | PO Box 78574 | | Phoenix | AZ | 85062 |
| Maricopa County Treasurers Office | Barbara Lee Caldwell | Herbert Schenk Pc | 4742 N 24th St Ste 100 | Phoenix | AZ | 85016 |
| Marion Co Ky | Marion County Sheriff | 102 W Main St | Courthouse | Lebanon | KY | 40033 |
| Marion Co Ms | Marion Co Tax Collector | 250 Board St | Ste 3 | Columbia | MS | 39429 |
| Marion Co Sc | Marion Co Tax Treasurer | PO Box 275 | | Marion | SC | 29571 |
| Marion Co Treasurer | | PO Box 275 | | Marion | SC | 29571 |
| Marion County In | Marion County Treasurer | 200 E Washington St Rm 1001 | | Indianapolis | IN | 46204 |
| Marion County Tax Collector | | PO Box 970 | | Ocala | FL | 34478-0970 |
| Marshall County Al | Marshall County Revenue Commissioner | Marshall County Courthouse | 424 Blount Ave Ste 124 | Guntersville | AL | 35976 |
| Marshall County In | Marshall County Treasurer | 112 W Jefferson St | Room 206 | Plymouth | IN | 46563 |
| Massachusetts Department Of Revenue | | PO Box 7025 | | Boston | MA | 02204 |
| Mathews Local School District | | 4434 B Warren Sharon Rd | | Vienna | OH | 44473 |
| Maury Co Tn | Maury County Trustee | One Public Square | | Columbia | TN | 38401 |
| Maury County Trustee | | One Public Square | | Columbia | TN | 38401 |
| Mcdonald County Collector Cloteel Atkins | | Box 725 | | Pineville | MO | 64856 |
| Mcnairy Co Tn | Mcnairy County Trustee | Courthouse | | Selmer | TN | 38375 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Medina County Treasurer | | 144 N Broadway St | | Medina | OH | 44256 |
| Metropolitan Trustee Tn | Metropolitan Trustee | PO Box 305012 | | Nashville | TN | 37230 |
| Miami County Treasurer | | 201 W Main St | Safety Building | Troy | OH | 45373-3263 |
| Miami Dade County Tax Collector | C O Metro Dade County Paralegal Uni | 140 W Flagler St Ste 1403 | | Miami | FL | 33130 |
| Mich Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30768 | Lansing | MI | 48909 |
| Michigan Department Of Treasury | | PO Box 30059 | | Lansing | MI | 48909 |
| Michigan Dept Of Labor & Economic Growth | Bureau Of Commercial Services | Corp Div | PO Box 30702 | Lansing | MI | 48909 |
| Milford Township | Milford Township Treasurer | 1100 Atlantic | | Milford | MI | 48381 |
| Minnesota Department Of Revenue | Corporate Estimated Tax | Mail Station 1260 | | St Paul | MN | 55145-1260 |
| Minnesota Revenue | | Mail Station 1250 | | St Paul | MN | 55145-1250 |
| Mississippi Corporate Tax Division | | PO Box 1033 | | Jackson | MS | 39215-1033 |
| Mississippi State Tax Commission | Bankruptcy Section | PO Box 23338 | | Jackson | MS | 39225-3338 |
| Mississippi Tax Commission | Use Tax Return | PO Box 960 | | Jackson | MS | 39205 |
| Missouri Department Of Revenue | | PO Box 700 | | Jefferson City | MO | 65105-0700 |
| Monitor Township Treasurer | | 2483 Midland Rd | | Bay City | MI | 48706 |
| Monitor Twp | Treasurer | 2483 Midland Rd | | Bay City | MI | 48706 |
| Monroe Co Mo | Monroe Co Collector | 300 N Main | PO Box 245 | Paris | MO | 65275 |
| Monroe Co Ny | Monroe County Treasurer | PO Box 14420 | | Rochester | NY | 14614 |
| Monroe County In | Monroe County Treasurer | Courthuse Room 204 | | Bloomington | IN | 47404 |
| Monroe County Treasurer | | 101 N Main St | Room 21 | Woodsfield | OH | 43793 |
| Montague Co Tx | Montague Co Tax Assessor Collector | PO Box 8 | | Montague | TX | 76251 |
| Montague County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 |
| Montgomery Co Tn | Montgomery County Trustees Office | 350 Pageant Ln | Ste 101 A | Clarksville | TN | 37041 |
| Montgomery Co Tx | Montgomery Co Tax Assessor / Collector | PO Box 201582 | PO Box 2233 | Houston | TX | 77216 |
| Montgomery Co Va | County Of Montgomery | 755 Roanoke St | Ste 1b | Christianburg | VA | 24073 |
| Montgomery County | John P Dillman | Linebarger Goggan Blair & Sampson | PO Box 3064 | Houston | TX | 77253-3064 |
| Montgomery County Al | Montgomery County Collector | PO Box 1667 | | Montgomery | AL | 36102 |
| Montgomery County Treasurer | | 451 W Third St | | Dayton | OH | 45422-0476 |
| Montgomery County Treasurer | | PO Box 817600 | | Dayton | OH | 45481 |
| Montgomery County Treasurer | | PO Box 972 | | Dayton | OH | 45422-0475 |
| Morgan County Al | Morgan County Tax Collector | PO Box 696 | | Decatur | AL | 35602 |
| Morgan County Revenue Commissioner | Amanda G Scott Cpa | PO Box 696 | | Decatur | AL | 35602 |
| Muscogee County Ga | Muscogee County Tax Commissioner | PO Box 1441 | | Columbus | GA | 31902 |
| Nacogdoches Co Tx | Nacogdoches C Tax Assessor | / Collector | 216 W Hospital St | Nacogdoches | TX | 75961 |
| Nacogdoches County Cad | | 220 W Hospital St | | Nacogdoches | TX | 75963-1668 |
| Nebraska Department Of Revenue | Attn Bankruptcy Unit | PO Box 94818 | | Lincoln | NE | 68509-4818 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Nemaha County Ks | Nemaha County Treasurer | 607 Nemaha St | PO Box 233 | Seneca | KS | 66538 |
| Nemaha County Treasurer | | 607 Nemaha | PO Box 233 | Seneca | KS | 66538 |
| Nevada Legal Press | | 3301 S Malibou Ave | | Pahrump | NV | 89048-6489 |
| New Hampshire Department Of State | Annual Reports | PO Box 9529 | | Manchester | NH | 03108-9529 |
| New Jersey Sales Tax | Division Of Taxation | PO Box 999 | | Trenton | NJ | 08646 |
| New Mexico Taxation & Revenue Dept | Corporate Income & Franchise Tax | PO Box 25127 | | Santa Fe | NM | 87504-5127 |
| New York State Department Of Taxation And Finance | Bankruptcy Section | PO Box 5300 | | Albany | NY | 12205-0300 |
| New York State Sales Tax Processing | | PO Box 1208 | | New York | NY | 10116 |
| Newton Co Ms | Newton Co Tax Collector | PO Box 7 | | Decatur | MS | 39327 |
| Newton County In | Newton County Treasurer | Courthouse | | Kentland | IN | 47951 |
| Nh Dept Of Revenue Administration | Document Processing Division | PO Box 637 | | Concord | NH | 03302-0637 |
| Niles City Income Tax Department | | 34 W State St | | Niles | OH | 44446 |
| Nj Department Of Treasury Unclaimed Property | | PO Box 214 | | Trenton | NJ | 08646-0214 |
| Noble County In | Noble County Treasurer | 101 N Orange St | | Albion | IN | 46701 |
| North Carolina Dept Of Revenue | | PO Box 25000 | | Raleigh | NC | 27640-0500 |
| North Carolina Secretary Of State | Corporations Division | PO Box 29525 | | Raleigh | NC | 27626-0525 |
| North Muskegon City Of Muskegon | | 1502 Ruddiman Dr | | North Muskegon | MI | 49445 |
| Novi City Of Oakland | Tax Collection Processing | Drawer 3050 | PO Box 79001 | Detroit | MI | 48279 |
| Nueces Co Tx | Nueces Co Tax Assessor / Collector | PO Box 2810 | | Corpus Christi | TX | 78403 |
| Nueces County | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Nys Corporation Tax | Processing Unit | PO Box 22038 | | Albany | NY | 12201-2038 |
| Nys Estimated Corporation Tax | Processing Unit | PO Box 22109 | | Albany | NY | 12201-2109 |
| Oak Park City Of Oakland | City Treasurer | 13600 Oak Pk Blvd | | Oak Pk | MI | 48237 |
| Oconee Co Sc | Oconee Co Tax Treasurer | PO Box 429 | | Walhalla | SC | 29691 |
| Office Of Secretary Of State | Annual Registration Filings | PO Box 23038 | | Columbus | GA | 31902-3038 |
| Office Of Tax & Revenue | | PO Box 601 | | Washington | DC | 20044-0601 |
| Office Of Tax Commissioner | | 600 E Blvd Ave | Dept 127 | Bismarck | ND | 58505-0599 |
| Ohio Department Of Revenue | | PO Box 16561 | | Columbus | OH | 43216 |
| Ohio Department Of Taxation | Rebecca L Daum | 30 E Broad St | | Columbus | OH | 43215 |
| Ohio Department Of Taxation | | PO Box 27 | | Columbus | OH | 43216-0027 |
| Ohio Department Of Taxation | | PO Box 804 | | Columbus | OH | 43216-0804 |
| Ohio Treasurer Of State | | PO Box 182101 | | Columbus | OH | 43218-2101 |
| Okaloosa County Tax Collector | | PO Box 1029 | | Crestview | FL | 32536 |
| Oklahoma County Ok | Oklahoma County Treasurer | PO Box 268875 | | Oklahoma City | OK | 73126 |
| Oklahoma Secretary Of State | | 2300 N Lincoln Blvd Room 101 | | Oklahoma City | OK | 73105-4897 |
| Oklahoma Tax Commission | | PO Box 26800 | | Oklahoma City | OK | 73126-0800 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Orange County Collector | | PO Box 1982 | | Santa Ana | CA | 92702 |
| Orange County Treasurer Tax Collector | | PO Box 1438 | | Santa Ana | CA | 92702 |
| Oregon Department Of Revenue | | PO Box 14790 | | Salem | OR | 97309-0470 |
| Oregon Secretary Of State | Corporation Division | PO Box 4353 | | Portland | OR | 97208-4353 |
| Orion Twp Oakland | | 2525 Joslyn Rd | | Lake Orion | MI | 48360 |
| Ottawa County Treasurer | | 315 Madison | | Port Clinton | OH | 43452 |
| Oxford Twp Oakland | Treasurer | 18 W Burdick St | | Oxford | MI | 48371 |
| Pa Department Of Revenue | Bureau Of Corporation Taxes | Dept 280427 | | Harrisburg | PA | 17128-0427 |
| Palm Beach County Tax Collector | Tangible Personal Property | PO Box 3353 | | West Palm Beach | FL | 33402 |
| Palm Beach County Tax Collector | | PO Box 3715 | | West Palm Beach | FL | 33402-3715 |
| Parker Co Tx | | Parker Co Tax Assessor / Collector | 1108 Santa Fe Dr | Weatherford | TX | 76086 |
| Pennsylvania Department Of Revenue | Bankruptcy Division | PO Box 280946 | | Harrisburg | PA | 17128-0946 |
| Peyton C Cochrane Tax Collector | | 714 Greensboro Ave Rm 124 | | Tuscaloosa | AL | 35401 |
| Pickaway County Treasurer | Court House | 207 South Court St | | Circleville | OH | 43113 |
| Pickens County Ga | Pickens County Tax Commissioner | 35 West Church St | Ste 100 | Jasper | GA | 30143 |
| Pima Co Az | | Pima County Treasurer | 115 N Church Ave | Tucson | AZ | 85701 |
| Pima County Treasurer Pima County Assessor Pima County Arizona | Pima County Attorneys Office Civil | 32 N Stone Ave Ste 2100 | | Tucson | AZ | 85701 |
| Pinal County Treasurer | Dolores J Doolittle | PO Box 729 | | Florence | AZ | 85232-0729 |
| Pinellas County Tax Collector | | PO Box 10832 | | Clearwater | FL | 33757 |
| Plymouth Twp Wayne | Treasurer | PO Box 8040 | | Plymouth | MI | 48170 |
| Polk County Tax Collector | | PO Box 1189 | | Lakeland | FL | 33831 |
| Pontiac City Of Oakland | | PO Box 431406 | | Pontiac | MI | 48343 |
| Pope County Ar | Pope County Tax Collector | 100 West Main St | | Russellville | AR | 72801 |
| Portage County Treasurer | | 449 S Meridian 1st Fl | PO Box 1217 | Ravenna | OH | 44266 |
| Prairie County Ar | Prairie County Sheriff / Collector | PO Box 1021 | | Des Arc | AR | 72040 |
| Prince Georges County Maryland | C O Meyers Rodbell And Rosenbaum Pa | 6801 Kenilworth Ave Ste 400 | | Riverdale | MD | 20737-1385 |
| Rankin Co Ms | Rankin County Tax Collector | 211 E Govt St | Ste B | Brandon | MS | 39042 |
| Rankin County | | 211 E Govt St | Ste B | Brandon | MS | 39042 |
| Ray Valdes Seminole County Tax Collector | | 1101 E First St | PO Box 630 | Sanford | FL | 32772 |
| Ripley County In | Ripley County Treasurer | PO Box 176 | | Versailles | IN | 47042 |
| Riverside County Collector | | P O 12005 | | Riverside | CA | 92502 |
| Robertson Co Tn | Robertson County Trustee | 515 S Brown St | | Springfield | TN | 37172 |
| Rochester Hills City Of Oakland | Drawer 7783 | PO Box 79001 | | Detroit | MI | 48279 |
| Rogers County Treasurer | | PO Box 699 | | Claremore | OK | 74018 |
| Ronald A Leggett Collector Of Rev | Ronald A Leggett Collector Of Reven | 109 City Hall | | St Louis | MO | 63103 |
| Roseville City Of Macomb | City Treasurer | PO Box 290 | | Roseville | MI | 48066 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Royal Oak City Of Oakland | Treasurers Office | PO Box 64 | | Royal Oak | MI | 48066 |
| Russell Co Va | Russell Co Treasurer | PO Box 121 | | Lebanon | VA | 24266 |
| Saginaw City Of Saginaw | Treasurer | 1315 S Washington Ave | | Saginaw | MI | 48601 |
| Saint Johns City Of Clinton | | PO Box 477 | | Saint Johns | MI | 48879 |
| Saint Johns County Tax Collector | | PO Box 9001 | | Saint Augustine | FL | 32085 |
| Salis Inc Formerly Colonial Tax Compliance | Chris Albrecht | 300 Colonial Ctr Pkwy Ste 300 | | Roswell | GA | 30076 |
| San Benito Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 S Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| San Benito Isd Tx | San Benito Cisd Tax Office | 152 E Rowson St | | San Benito | TX | 78586 |
| San Bernardino County Collector | | 172 W Third St 1st Fl | | San Bernardino | CA | 92415 |
| San Diego County Collector | | PO Box 129009 | | San Diego | CA | 92112 |
| San Joaquin County Collector | | PO Box 2169 | | Stockton | CA | 95201 |
| San Marcos Cisd | Diane W Sanders Linebarger Goggan Blair & Sampson L | 1949 South Ih 35 78741 | PO Box 17428 | Austin | TX | 78760-7428 |
| Santa Clara County Collector | County Government Ctr E Wing | 70 W Hedding St | | San Jose | CA | 95110 |
| Santa Rosa County Tax Collector | Attn Cindy Grimes Delinquent Tax De | PO Box 7100 | | Milton | FL | 32572 |
| Sarasota County Tax Collector | | 101 Washington Blvd S | | Sarasota | FL | 34236 |
| Sc Department Of Revenue | | Corporation Return | | Columbia | SC | 29214-0100 |
| Scott County In | Scott County Treasurer | 1 E Mcclain Ave | Room 140 | Scottsburg | IN | 47170 |
| Screven County Ga | Screven County Tax Commissioner | PO Box 86 | | Sylvania | GA | 30467 |
| Secretary Of State | | 1500 11th St | PO Box 944230 | Sacramento | CA | 94244-2300 |
| Secretary Of State | | 202 N Carson St | | Carson City | NV | 89701-4201 |
| Seminole County Tax Collector | | PO Box 630 | | Sanford | FL | 32772 |
| Shelby Co Tn | Shelby County Trustee | PO Box 2751 | | Memphis | TN | 38101 |
| Shelby County In | Shelby County Treasurer | 25 W Polk St | Room 102 | Shelbyville | IN | 46176 |
| Shelby County Trustee | | PO Box 2751 | | Memphis | TN | 38101-2751 |
| Shelby Twp Macomb | Treasurer | 52700 Van Dyke | | Shelby Twp | MI | 48316 |
| Smith Co Ms | Smith County Tax Collector | PO Box 157 | | Raleigh | MS | 39153 |
| Smith Co Tn | Smith County Trustee | 122 Turner High | Ste 104 | Carthage | TN | 37030 |
| Smith Co Trustee | | 122 Turner High Cir Ste 104 | | Carthage | TN | 37030 |
| Smith County Trustee | Jamie D Winkler | PO Box 332 | | Carthage | TN | 37030 |
| South Carolina Dept Of Revenue | | Corporation | | Columbia | SC | 29214-0006 |
| Spalding County Ga | Spalding County Tax Commissioner | PO Box 509 | | Griffin | GA | 30224 |
| Spartanburg Co Sc | Spartanburg Co Treasurer | PO Box 5807 | | Spartanburg | SC | 29304 |
| Spartanburg Co Tax Collector | Glenda Qwright | Drawer 3060 | | Spartanburg | SC | 29304 |
| St Charles Co Mo | St Charles Co Tax Collector | 201 N Second St | Room 134 | St Charles | MO | 63301 |
| St Charles County Collector | | 201 N Second St Rm 134 | | St Charles | MO | 63301-2789 |
| St Johns County Tax Collector | Dennis W Hollingsworth | PO Box 9001 | | St Augustine | FL | 32085-9001 |
| St Joseph County In | St Joseph County Treasurer | 227 W Jefferson Blvd | | South Bend | IN | 46601 |

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| St Louis Co Mo | St Louis Co Government | Collector Of Revenue | PO Box 11491 | St Louis | MO | 63105 |
| Stanly Co Nc | Stanly Co Tax Collector | 201 S 2nd St | | Albemarle | NC | 28001 |
| Starpoint Ny | Starpoint Tax Collector | PO Box 3000 | | Buffalo | NY | 14240 |
| State Corporation Commission | Clerks Office | PO Box 85577 | | Richmond | VA | 23285-5577 |
| State Of Alabama Department Of Revenue | Legal Division | PO Box 320001 | | Montgomery | AL | 36132-0001 |
| State Of Colorado | Division Of Insurance | 1560 Broadway Ste 850 | | Denver | CO | 80202 |
| State Of Delaware | Division Of Corporations | PO Box 74072 | | Baltimore | MD | 21274-4072 |
| State Of Georgia | Department Of Revenue | PO Box 105284 | | Atlanta | GA | 30348 |
| State Of Louisiana | Louisiana Department Of Revenue | PO Box 66658 | | Baton Rouge | LA | 70896 |
| State Of Louisiana Department Of Revenue | | PO Box 66658 | | Baton Rouge | LA | 70896 |
| State Of Maryland Comptroller Of Treasury | Mary T Carr | State Office Bldg Rm 409 | 301 W Preston St | Baltimore | MD | 21201 |
| State Of Maryland Md | Maryland State Dept Of Assessments & Taxation | Personal Property Division | 301 W Preston St | Baltimore | MD | 21201 |
| State Of Michigan | Department Of Treasury | PO Box 77003 | | Detroit | MI | 48277 |
| State Of Michigan | Motor Fuel Tax Division | Department 77692 | | Detroit | MI | 48277 |
| State Of Michigan | Sales & Use Tax Division | PO Box 77003 | | Detroit | MI | 48277 |
| State Of Michigan Department Of Treasury | Attn Peggy A Housner Assistant Attorney General | Cadillac Pl | 3030 W Grand Blvd Ste 10 200 | Detroit | MI | 48202 |
| State Of Michigan Department Of Treasury | Peggy A Housner | Department Of Treasury Revenue Ag | PO Box 30456 | Lansing | MI | 48909-7955 |
| State Of New Jersey | Bureau Of Commercial Recording | PO Box 34089 | | Newark | NJ | 07189-0001 |
| State Of New Jersey | Division Of Taxation | Compliance Activity | PO Box 245 | Trenton | NJ | 08695 |
| State Of New Jersey | Division Of Taxation | Revenue Processing Ctr | PO Box 666 | Trenton | NJ | 08646-0666 |
| State Of New Jersey Department Of Treasury | Division Of Taxation | PO Box 245 | | Trenton | NJ | 08695-0245 |
| State Of New Jersey Division Of Taxation | Compliance Activity | PO Box 245 | | Trenton | NJ | 08695 |
| State Of New Mexico Taxation And Revenue Department | | PO Box 8575 | | Albuquerque | NM | 87198-8575 |
| State Of Wisconsin Department Of Revenue | | PO Box 8901 | | Madison | WI | 53708-8901 |
| State Processing Center | | PO Box 6100 | | Albany | NY | 12261-0001 |
| Sterling Heights City Of | Property Taxes | PO Box 55000 | | Detroit | MI | 48255 |
| Steuben County In | Steuben County Treasurer | 317 S Wayne St | Room 2k | Angola | IN | 46703 |
| Sturgis City Of Saint Joseph | | Treasurers Office | | Sturgis | MI | 49091 |
| Summit County Treasurer | John A Donofrio Marvin D Evans Assistant Prosecutin | Summit County Prosecutors Office Ta | 220 S Balch Ste 220 | Akron | OH | 44302-1606 |
| Summit County Treasurer | Ohio Building | 175 S Main St Ste 320 | | Akron | OH | 44308 |
| Sumner Co Tn | Sumner County Trustee | 355 N Belvedere Dr | Room 107 | Gallatin | TN | 37066 |
| Sumner County Trustee | | 355 Belvedere Dr Rm 107 | | Gallatin | TN | 37066 |
| Switzerland County In | Switzerland County Treasurer | 212 W Main St Courthouse | | Vevay | IN | 47043 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Sylvan Twp Washtenaw | Treasurer | 18027 Old Us 12 | | Chelsea | MI | 48118 |
| Tarrant Co Tx | Tarrant County Co Tax Assessor | PO Box 961018 | | Fort Worth | TX | 76161 |
| Tarrant County | Elizabeth Weller | Linebarger Goggan Blair & Sampson L | 2323 Bryan St Ste 1600 | Dallas | TX | 75201 |
| Tawas City City Of Iosco | Treasurer | PO Box 568 | | Tawas City | MI | 48764 |
| Tax Collector | Tax Collector Town Of Watertown | PO Box 224 | | Watertown | CT | 06795 |
| Tax Collector Pinellas County | Attn Betty A Gramley Tax Manager | PO Box 2943 | | Clearwater | FL | 33757-2943 |
| Tax Collector Santa Clara County | Deborah Nichols County Administration Building | 70 W Hedding St | East Wing 6th Fl | San Jose | CA | 95110-1767 |
| Tax Collector Santa Rosa County | Attn Carol Watford Supervisor Delin | PO Box 7100 | | Milton | FL | 32572 |
| Tax Collector Santa Rosa County | Attn Cindy Grimes Delinquent Tax De | Robert Mcclure Santa Rosa Tax Colle | PO Box 7100 | Milton | FL | 32572 |
| Tax Commissioner Of The State Of Ohio | | 30 E Broad St | | Columbus | OH | 43215 |
| Taxation And Revenue Department | | PO Box 630 | | Santa Fe | NM | 87504-0630 |
| Taylor Co Ga | Taylor County Tax Commissioner | PO Box 446 | | Butler | GA | 31006 |
| Tennessee Department Of Revenue | Andrew Jackson State Office Bldg | 500 Deaderick Stret | | Nashville | TN | 37242 |
| Tennessee Department Of Revenue | Attorney General | PO Box 20207 | | Nashville | TN | 37202-0207 |
| Tennessee Secretary Of State | Annual Report | 312 Eighth Ave North 6th Fl | William R Snodgrass Tower | Nashville | TN | 37243 |
| Terrell County Ga | Terrell County Tax Commissioner | PO Box 484 | | Dawson | GA | 31742 |
| Texas Comptroller Of Public Accounts | Office Of The Attorney General | Bankruptcy Collections Division | PO Box 12548 | Austin | TX | 78711-2548 |
| Texas Comptroller Of Public Accounts On Behalf Of The State Of Texas | Office Of The Attorney General | Bankruptcy Collection Division | PO Box 12548 | Austin | TX | 78711-2548 |
| The Commonwealth Of Massachusetts | Secretary Of The Commonwealth | One Ashburton Pl | | Boston | MA | 02108-1512 |
| Tippecanoe County In | Tippecanoe County Treasurer | 20 N 3rd St | | Lafayette | IN | 47901 |
| Tipton County In | Tipton County Treasurer | Courthouse | | Tipton | IN | 46072 |
| Town Of Berlin Ct | Town Of Berlin Tax Collector | 240 Kensington Rd | | Berlin | CT | 06037 |
| Town Of Burlington | | PO Box 376 | | Burlington | MA | 01803 |
| Town Of Coaling Alabama | Alatax | 3001 Second Ave South | | Birmingham | AL | 35233 |
| Town Of Decatur Ms | Town Of Decatur Ms | PO Box 307 | | Decatur | MS | 39327 |
| Town Of Hingham Ma | Town Of Hingham | 210 Central St | | Hingham | MA | 02043 |
| Town Of Lebanon Va | Town Of Lebanon | 244 W Main St | | Lebanon | VA | 24266 |
| Town Of Lockport Ny | Town Of Lockport | Receiver Of Taxes | PO Box 4610 | Buffalo | NY | 14240 |
| Town Of Snow Hill Nc | Town Of Snow Hill Tax Collector | 201 North Greene St | | Snow Hill | NC | 28580 |
| Town Of South Windsor Ct | Town Of South Windsor | Collector Of Revenue | PO Box 30002 | Hartford | CT | 06150 |
| Traverse City Of Grand Traverse | City Treasurer | Governmental Ctr | 400 Boardman Ave | Traverse City | MI | 49684 |
| Travis Co Tx | Travis Co Tax Assessor /collector | PO Box 970 | | Austin | TX | 78767 |
| Treasurer City Of Flint | Income Tax Office | PO Box 1800 | | Flint | MI | 48501-1800 |
| Treasurer City Of Pontiac | Income Tax Division | 47450 Woodward Ave | | Pontiac | MI | 48342 |
| Treasurer Of Kosciusko County | | 100 W Ctr St | | Warsaw | IN | 46580 |
| Treasurer Of Tipton County | | Courthouse | | Tipton | IN | 46072 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Treasurer Of Vigo County | David Crockett | PO Box 1466 | | Indianapolis | IN | 46206-1466 |
| Trey Grayson | Secretary Of State | PO Box 1150 | | Frankfort | KY | 40602-1150 |
| Troup County Ga | Troup County Tax Commissioner | 100 Ridley Ave | | La Grange | GA | 30240 |
| Troy City Of Oakland | Drawer 0101 | PO Box 33321 | | Detroit | MI | 48232 |
| Trumbull County Treasurer | | 160 High St Nw | | Warren | OH | 44481-1090 |
| Tuscaloosa County Al | Tuscaloosa County Tax Collector | 714 Greensboro Ave | Room 124 | Tuscaloosa | AL | 35401 |
| U S Customs And Border Protection | | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 |
| Unemployment Insurance Agency Department Of Labor & Economic Growth | State Of Michigan | 3024 W Grand Blvd Ste 11 500 | | Detroit | MI | 48202-6024 |
| United Independent School District | C O Ornelas Castillo & Ornelas Pllc | 401 East Hillside Rd 2nd Fl | | Laredo | TX | 78041 |
| United Isd Tx | United Isd Tax Assessor / Collector | 3501 E Saunders | | Laredo | TX | 78041 |
| United States Council For International Business | | 1212 Ave Of The Americas | | New York | NY | 10036-1689 |
| Us Customs And Border Protection | Robert B Hamilton Jr Director Reven | 6650 Telecom Dr | PO Box 68911 | Indianapolis | IN | 46268 |
| Utah Division Of Corporations & Commercial Code | | PO Box 25125 | | Salt Lake City | UT | 84125-0125 |
| Utah State Tax Commission | | 210 North 1960 West | | Salt Lake City | UT | 84134-0180 |
| Valwood Improvement Authority Tx | Valwood Improvement Authority Tx | 1430 Valwood Pkwy | Ste 160 | Carrollton | TX | 75006 |
| Van Buren Co Tn | Van Buren County Trustee | PO Box 176 | | Spencer | TN | 38585 |
| Van Buren Twp Wayne | Treasurer | 46425 Tyler Rd | | Belleville | MI | 48111 |
| Vandalia City Of Oh | | 333 James E Bohanan Memorial Dr | | Vandalia | OH | 45377 |
| Vanderburgh County In | Vanderburgh County Collector | 1 Nw Ml King Jr Blvd | 210 | Evansville | IN | 47708 |
| Vassar City Of Tuscola | Treasurers Office | 287 E Huron Ave | | Vassar | MI | 48768 |
| Ventura County Collector | | 800 South Victoria Ave | | Ventura | CA | 93009 |
| Vermont Department Of Taxes | | 109 State St | | Montpelier | VT | 05609-1401 |
| Vigo County In | Vigo County Treasurer | 191 Oak St | Vigo County Annex | Terre Haute | IN | 47807 |
| Virginia Department Of Taxation | Taxing Authority Consulting Service | PO Box 2156 | | Richmond | VA | 23218-2156 |
| Virginia Department Of Taxation | | PO Box 1500 | | Richmond | VA | 23218-1500 |
| Wabash County In | Wabash County Treasurer | Courthouse 1 W Hill St | Ste 4b | Wabash | IN | 46992 |
| Wake Co Nc | Wake Co Tax Collector | PO Box 2331 | | Raleigh | NC | 27602 |
| Walthall Co Ms | Walthall Co Tax Collector | 200 Ball Ave | | Tylertown | MS | 39667 |
| Warren City Of Macomb | Treasurer | PO Box 2113 | | Warren | MI | 48090 |
| Warren Co Ky | Warren County Sheriff | 429 E 10th St | Courthouse | Bowling Green | KY | 42101 |
| Warren County Ga | Warren County Tax Commissioner | PO Box 189 | | Warrenton | GA | 30828 |
| Warren County Tax Commissioner | | PO Box 189 | | Warrenton | GA | 30828-0189 |
| Washington Co Ky | Washington County Sheriff | PO Box 127 | | Springfield | KY | 40069 |
| Washington Co Ms | Washington Co Tax Collector | PO Box 9 | | Greenville | MS | 38702 |
| Washington County In | Washington County Treasurer | 99 Public Sq | Ste 101 | Salem | IN | 47167 |
| Watertown Twp Clinton | Treasurer | 12803 South Wacousta Rd | | Grand Ledge | MI | 48837 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 18 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

Delphi Corporation
Special Parties

| Company | Contact | Address1 | Address2 | City | State | Zip |
|---------|---------|----------|----------|------|-------|-----|
| Wayne County In | Wayne County Treasurer | 401 E Main St | County Adminstration Bldg | Richmond | IN | 47374 |
| Wayne Twp Cass | Treasurer | 51327 Atwood Rd | | Dowagiac | MI | 49047 |
| Webb County Tx | Webb County Tax Assessor /collector | PO Box 420128 | | Laredo | TX | 78042 |
| Webber Co Ut | Weber County Assessor | PO Box 9700 | | Ogden | UT | 84409 |
| Wells County In | Wells County Collector | 102 W Market St | Ste 204 | Bluffton | IN | 46714 |
| White Co Tn | White County Trustee | 1 East Bockman Way | Room 102 | Sparta | TN | 38583 |
| Whitley County In | Whitley County Treasurer | 2nd Fl Courthouse | | Columbia City | IN | 46725 |
| Wichita County Burkburnett Independent School District | Harold Lerew | Perdue Brandon Fielder Collins & Mo | PO Box 8188 | Wichita Falls | TX | 76307 |
| Wichita County Tx | Wichita County Tax Assessor | / Collector | PO Box 1471 | Wichita Falls | TX | 76307 |
| Williamson Co Tn | Williamson County Trustee | 1320 W Main St Ste 3 | PO Box 1365 | Franklin | TN | 37065 |
| Wilson Co Nc | Wilson Co Tax Collector | PO Box 1162 | | Wilson | NC | 27894 |
| Wilson Co Tn | Wilson County Trustee | PO Box 865 | | Lebanon | TN | 37088 |
| Wisconsin Department Of Revenue | James Polkowski | 2135 Rimrock Rd | | Madison | WI | 53713 |
| Wisconsin Department Of Revenue | | PO Box 8908 | | Madison | WI | 53708-8908 |
| Wisconsin Department Of Revenue | | PO Box 93389 | | Milwaukee | WI | 53293 |
| Wisconsin Dept Of Financial Inst | Div Of Corporate And Consumer Svcs | PO Box 7846 | | Madison | WI | 53707-7846 |
| Woodstock Twp Lenawee | Treasurer | 6486 Devils Lake Hwy | | Addison | MI | 49220 |
| Wv Secretary Of State | Bldg 1 Rm 157 K | 1900 Kanawha Blvd East | | Charleston | WV | 225305 |
| Wv State Tax Department | Internal Auditing Division | PO Box 2666 | | Charleston | WV | 25330-2666 |
| Wv State Tax Department | Rd Eft | PO Box 11895 | | Charleston | WV | 25339-1895 |
| Wv State Treasurers Office | | One Players Club Dr | | Charleston | WV | 25311 |
| Wyandotte County Ks | Wyandotte County Treasurer | 710 N 7th St | 2nd Fl | Kansas City | KS | 66101 |
| Wyoming City Of Kent | Treasurers Office | 1155 28th St Sw | PO Box 905 | Wyoming | MI | 49509 |
| Yazoo Co Ms | Yazoo County Tax Collector | PO Box 108 | | Yazoo | MS | 39194 |
| York Co Sc | York Co Tax Treasurer | PO Box 116 | | York | SC | 29745 |
| York County Tax Collector | | 1070 Heckle Beva Box 14 | | Rock Hill | SC | 29732-2863 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 19 of 19

12/23/2008 12:29 PM
Taxing Authorities Special Parties

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                          :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363, 365, 1123, AND 1146 AND FED. R. BANKR. P. 2002,
6004, 6006, AND 9014 AUTHORIZING AND APPROVING (I) SALE OF CERTAIN OF
DEBTORS' ASSETS COMPRISING SUBSTANTIALLY ALL ASSETS OF DEBTORS'
EXHAUST BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS,
AND ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
(III) ASSUMPTION OF CERTAIN LIABILITIES

("EXHAUST SALE APPROVAL ORDER")

Upon the motion, dated November 14, 2008 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

1123, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a) (i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a sale hearing date (the "Sale Hearing") and (b) authorizing and approving

(i) the sale (the "Sale") of certain of the Debtors' assets (the "Acquired Assets") comprising

substantially all the assets exclusively used in the Debtors' global exhaust emissions business (the

"Exhaust Business"), free and clear of liens, claims, encumbrances, and interests to Bienes Turgon

S.A. de C.V. and certain of its affiliates (the "Buyers") pursuant to the Master Sale And Purchase

Agreement, dated November 10, 2008 (such Master Sale And Purchase Agreement, including all schedules, exhibits, and related agreements and documents, the "Agreement," a copy of which (without such schedules, exhibits, and related agreements and documents) is attached hereto as Exhibit 1), by and between Delphi and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities")[1] and the Buyers, or to the party submitting the highest or otherwise best bid (the "Successful Bidder"), (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Assumed U.S. Contracts") and the assignment of certain postpetition executory contracts and unexpired leases (the "Post-Petition Contracts," and collectively with the Assumed U.S. Contracts, the "Assumed and Assigned Contracts") to the Buyers or the Successful Bidder, and (iii) the assumption of certain liabilities (the "Assumed Liabilities") by the Buyers or the Successful Bidder; and the Court having entered an order on November 25, 2008 (the "Bidding Procedures Order") (Docket No. 14490) (a) approving bidding procedures, (b) approving the bid protections, (c) approving the form and manner of sale and assumption and assignment notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held on December 17, 2008, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion and the arguments of counsel made, and the evidence proffered or adduced at and on the record of the Sale Hearing; and there being no objection to the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Selling Debtor

---

[1]    Under the Agreement, the Selling Debtor Entities are comprised of Delphi Automotive Systems LLC, Delphi Technologies, Inc., and Delphi Corporation.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

2

Entities, their estates, their stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 363, 365, 1123, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, and the assumption and assignment of the Assumed U.S. Contracts, and the Cure Amounts as approved herein has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, or the assumption and assignment of the Assumed U.S. Contracts or assignment of the Postpetition Contracts as provided herein is necessary or shall be required.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

3

D.     As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entities have marketed the Acquired Assets and conducted the sale process in compliance with the Bidding Procedures Order and in a manner that afforded a full, fair, and reasonable opportunity for any party to make a higher or better offer to purchase the Acquired Assets.  Notwithstanding a lengthy and thorough sales process and the opportunity for an auction, there were no higher and better offers for the Acquired Assets.

E.     The Selling Debtor Entities (i) have full power and authority to execute the Agreement and all other applicable documents contemplated thereby, and the transfer and conveyance of the Acquired Assets by the Selling Debtor Entities has been duly and validly authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and authority necessary to consummate the transactions contemplated by the Agreement, and (iii) have taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby, and no consents or approvals, other than those expressly provided for in the Agreement, are required for the Selling Debtor Entities to consummate such transactions.

F.     The Selling Debtor Entities have demonstrated (i) good, sufficient, and sound business purposes and justification for the Sale, because, among other things, the Selling Debtor Entities and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Acquired Assets and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to Buyers of the Acquired Assets pursuant to the terms of the Agreement, and (c) the Purchase Price agreed to as reflected in the Agreement

4

are all fair and reasonable and together constitute the highest or otherwise best value obtainable

for the Acquired Assets, and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C.

§ 363(b) prior to the effective date of a plan of reorganization exist because, among other things,

absent the Sale the value of the Acquired Assets will be substantially diminished.

           G.      A reasonable opportunity to object or be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including

without limitation: (i) the Office of the United States Trustee for the Southern District of New

York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors

appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the official

committee of equity security holders appointed in these chapter 11 cases, (v) all entities known

to have expressed an interest in a transaction with respect to the Acquired Assets during the past

six months, (vi) all entities known to have asserted any Interests and/or Claims (as defined below)

in, upon or against the Acquired Assets, (vii) all United States federal, state, and local regulatory

or taxing authorities or recording offices, including but not limited to environmental regulatory

authorities, which have a reasonably known interest in the relief requested by the Motion, (viii)

all counterparties to Assumed and Assigned Contracts, (ix) the United States Attorney's office, (x)

the United States Department of Justice, (xi) the Securities and Exchange Commission, (xii) the

Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management

Order")), and (xiv) such other entities as are required to be served with notices under the

Supplemental Case Management Order.

   H.  The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Buyers without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Buyers have engaged in any

conduct that would cause or permit the Sale or any part of the transactions contemplated by the

Agreement to be avoidable under 11 U.S.C. § 363(n).

   I.  The Buyers are good faith purchasers under 11 U.S.C. § 363(m) and, as

such, are entitled to all of the protections afforded thereby.  The Buyers will be acting in good

faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the

Agreement at all times after the entry of this order.

   J.  The consideration provided by the Buyers for the Acquired Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Acquired Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

stakeholders than would be provided by any other practical available alternative, and (iv)

constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States, any state, territory, or possession thereof, or the District of

Columbia.

   K.  The Sale must be approved and consummated promptly to preserve the

viability of the Exhaust Business as a going concern. The Sale is consistent with and is

contemplated under the terms of the First Amended Plan Of Reorganization Of Delphi

Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (as

amended, the "Plan") confirmed by order of this Court on January 25, 2008 (the "Confirmation

Order") (Docket No. 12359), and, accordingly, constitutes a transfer to which section 1146(c) of

the Bankruptcy Code applies.

        L.      The transfer of the Acquired Assets to the Buyers will be a legal, valid,

and effective transfer of the Acquired Assets and shall vest the Buyers with all right, title, and

interest of the Selling Debtor Entities to the Acquired Assets free and clear of any and all liens,

claims, interests, and encumbrances (including, without limitation, Encumbrances as defined in

the Agreement, but excluding Permitted Encumbrances and Assumed Liabilities, each as defined

in the Agreement) of any type whatsoever (whether known or unknown, secured or unsecured or

in the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or

unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or

disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured,

material or non-material, disputed or undisputed, whether arising prior to or subsequent to the

commencement of the chapter 11 cases, and whether imposed by agreement, understanding, law,

equity, or otherwise, including claims otherwise arising under doctrines of successor liability),

including but not limited to those (i) that purport to give to any party a right or option to effect

any forfeiture, modification, right of first refusal, or termination of the Selling Debtor Entities' or

the Buyers' interest in the Acquired Assets, or any similar rights, and (ii) relating to taxes arising

under or out of, in connection with, or in any way relating to the operation of the Exhaust

Business prior to the Closing Date, including the transfer of the Acquired Assets to the Buyers

(all such liens, claims, interests, and encumbrances listed herein, the "Interests and/or Claims").

7

M.    If the Sale of the Acquired Assets with respect to the Selling Debtor Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and this order, or if the Buyers would, or in the future could, be liable for any of the Interests and/or Claims as set forth in the Agreement and this order, the Buyers would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their stakeholders.

N.    The Selling Debtor Entities may sell their interests in the Acquired Assets free and clear of all Interests and/or Claims because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims who did not object, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2), and all holders of Interests and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest and/or Claim with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale.

O.    The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assumed and Assigned Contracts as applicable to the Buyers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assumed and Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assumed and Assigned Contracts being assigned to, and the liabilities being assumed by, the Buyers are an integral part of the Acquired

8

Assets being purchased by the Buyers and, accordingly, such assumption and/or assignment of Assumed and Assigned Contracts and liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

P.    The Selling Debtor Entities have (i) cured, or have provided adequate assurance of cure, of any default existing prior to the Closing of the Sale under all of the Assumed and Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed and Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Buyers have provided adequate assurance of their future performance of and under the Assumed and Assigned Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). Pursuant to 11 U.S.C. § 365(f), the Assumed and Assigned Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyers notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

Q.    Approval of the Agreement and consummation of the Sale of the Acquired Assets and assignment of the Assumed and Assigned Contracts at this time are in the best interests of the Selling Debtor Entities, their stakeholders, their estates, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

9

General Provisions

1.      The Motion is GRANTED.

Approval Of The Agreement

2.      Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3.      Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized, but not directed, to perform their obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.      Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this order.

5.      The Selling Debtor Entities are authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Buyers for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyers or reducing to possession the Acquired Assets, the Assumed and Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

10

6.      This order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Debtors, all affiliates and subsidiaries of the Selling Debtor Entities (including the reorganized or reconstituted Debtors after the effective date of the Plan), and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.  To the extent that any provision of this order is inconsistent with the terms of the Agreement, this order shall govern.

7.      The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Selling Debtor Entities' estates in the good faith business judgment of the Selling Debtor Entities.

<u>Sale And Transfer Of The Acquired Assets</u>

8.      Except as expressly permitted or otherwise specifically provided for in the Agreement or this order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Selling Debtor Entities' right, title, and interest in the Acquired Assets shall be transferred to the Buyers free and clear of all Interests and/or Claims, with all such Interests and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they had as against the Acquired Assets immediately before

11

such transfer, subject to any claims and defenses the Selling Debtor Entities may possess with

respect thereto.

9.    The transfer of the Acquired Assets to the Buyers pursuant to the

Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest

the Buyers with all right, title, and interest of the Selling Debtor Entities in and to the Acquired

Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

10.    If any person or entity that has filed financing statements, mortgages,

mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or

Claims against or in the Acquired Assets shall not have delivered to the Selling Debtor Entities

prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, or releases of all Interests and/or Claims that

the person or entity has with respect to the Acquired Assets, or otherwise, then (a) the Selling

Debtor Entities are hereby authorized to execute and file such statements, instruments, releases,

and other documents on behalf of the person or entity with respect to the Acquired Assets and (b)

the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this

order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence

of the release of all Interests and/or Claims in the Acquired Assets of any kind or nature

whatsoever.

11.    This order (a) shall be effective as a determination that, upon the Closing

of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling

Debtor Entities or the Acquired Assets of the Selling Debtor Entities prior to the Closing of the

12

Sale have been unconditionally released, discharged, and terminated (other than any surviving

obligations), and that the conveyances described herein have been effected and (b) shall be

binding upon and shall govern the acts of all entities including, without limitation, all filing

agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,

registrars of deeds, administrative agencies, United States governmental departments, secretaries

of state, federal, state, and local officials, and all other persons and entities who may be required

by operation of law, the duties of their office, or contract to accept, file, register, or otherwise

record or release any documents or instruments, or who may be required to report or insure any

title or state of title in or to any of the Acquired Assets.

> 12.    All persons and entities, including, but not limited to, all debt security

holders, equity security holders, United States Federal, state, and local governmental, tax, and

regulatory authorities, lenders, trade creditors, and other stakeholders, holding Interests and/or

Claims of any kind or nature whatsoever against or in the Selling Debtor Entities or the Acquired

Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or

non-contingent, senior or subordinated), arising under or out of, in connection with, or in any

way relating to, the Exhaust Business, the Acquired Assets, the operation of the Exhaust

Business by the Selling Debtor Entities prior to the Closing of the Sale, or the transfer of the

Acquired Assets to the Buyers, hereby are forever barred, estopped, and permanently enjoined

from asserting against the Buyers, their successors or assigns, their property, or the Acquired

Assets, such persons' or entities' Interests and/or Claims.  Nothing in this order or the Agreement

releases or nullifies any Liability to any United States federal, state, or local governmental

agency under any environmental laws and regulations that any entity would be subject to as

owner or operator of any Acquired Assets after the date of entry of this order.  Nothing in this

order or the Agreement bars, estops, or enjoins any United States federal, state, or local

governmental agency from asserting or enforcing, outside the Court, any liability described in

the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit

any United States federal, state, or local governmental agency to obtain penalties from the

Buyers for days of violation of environmental laws and regulations prior to Closing.

13.    All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with the ability of the Selling Debtor

Entities to sell and transfer the Acquired Assets to the Buyers, in each case in accordance with

the terms of the Agreement or this order.

Assumption And Assignment Of The Assumed And Assigned Contracts To The Buyers

14.    Pursuant to 11 U.S.C. § 365, and subject to and conditioned upon the

Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the Buyers, and

the Buyers' assumption on the terms set forth in the Agreement, of the Assumed U.S. Contracts

is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect

thereto are hereby deemed satisfied; provided, however, that in the event the effective date of the

Plan occurs prior to the Closing of the Sale, then the Assumed U.S. Contracts shall be assumed

pursuant to the Plan and assigned in accordance with 11 U.S.C. §§ 365 and 1123 and the

provisions of this order pursuant to the terms set forth in the Agreement.

15.    The Selling Debtor Entities are hereby authorized in accordance with 11

U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Buyers, effective upon the

14

Closing of the Sale, the Assumed and Assigned Contracts free and clear of all Interests and/or

Claims of any kind or nature whatsoever and (b) execute and deliver to the Buyers such

documents or other instruments as may be necessary to assign and transfer the Assumed and

Assigned Contracts and Assumed Liabilities to the Buyers.

16.    The Assumed and Assigned Contracts shall be transferred to, and remain

in full force and effect for the benefit of, the Buyers in accordance with their respective terms,

notwithstanding any provision in any such Assumed and Assigned Contract (including those of

the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts,

or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor

Entities shall be relieved from any further liability with respect to the Assumed and Assigned

Contracts after such assignment to and assumption of such contracts by the Buyers.

17.    All defaults or other obligations of the Selling Debtor Entities under the

Assumed and Assigned Contracts arising or accruing prior to the Closing of the Sale (without

giving effect to any acceleration clauses or any default provisions of the kind specified in section

365(b)(2) of the Bankruptcy Code) shall be cured by the Selling Debtor Entities at the Closing of

the Sale or as soon thereafter as practicable or in the event the effective date of the Plan occurs

prior to the Closing of the Sale, in accordance with the terms of the Plan, or absent an agreement

as to the Cure Amount between the Selling Debtor Entities and the non-Debtor counterparty to

an Assumed U.S. Contract, by order of this Court, in the amounts as set forth on Exhibit 2 hereto,

and the Buyers shall have no liability or obligation arising or accruing prior to the date of the

Closing of the Sale, except as otherwise expressly provided in the Agreement.  Cure shall be

15

payable only to the counterparty to any Assumed U.S. Contract. Each non-Debtor counterparty

to any Assumed U.S. Contract shall be deemed to have consented to the assumption and

assignment of the Assumed U.S. Contract to the Buyers and shall be forever barred, estopped,

and permanently enjoined from asserting against the Selling Debtor Entities or the Buyers, or the

property of any of them, any default existing, arising, or accruing as of the date of the Closing or

any purported written or oral modification to such Assumed U.S. Contract. Each non-Debtor

counterparty to any Assumed U.S. Contract shall be forever barred, estopped, and permanently

enjoined from asserting against the Buyers (or their property, including the Acquired Assets) any

claim, counterclaim, defense, breach, condition, or setoff asserted or assertable against the

Debtors. The failure of the Selling Debtor Entities or the Buyers to enforce prior to the Closing

of the Sale one or more terms or conditions of any Assumed and Assigned Contracts shall not be

a waiver of such terms or conditions or of the Selling Debtor Entities' or Buyers' rights to enforce

every term and condition of any such Assumed and Assigned Contracts. There shall be no rent

accelerations, assignment fees, increases (including of rates), or any other fees charged to the

Buyers as a result of the assumption and assignment of the Assumed U.S. Contracts.

<u>Additional Provisions</u>

18.     The transactions contemplated by the Agreement, and the execution,

delivery, and/or recordation of any and all documents or instruments necessary or desirable to

consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt

from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section

1146(c) of the Bankruptcy Code.

16

19.     The consideration provided by the Buyers for the Acquired Assets under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the laws of the United States and any state, territory, or possession thereof, or the District of Columbia.

20.     Upon the Closing of the Sale, this order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets and Assumed and Assigned Contracts or a bill of sale transferring good and marketable title in such Acquired Assets and Assumed and Assigned Contracts to the Buyers pursuant to the terms of the Agreement.

21.     Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release their respective Interests and/or Claims against the Acquired Assets, if any, as such Interests and/or Claims may have been recorded or may otherwise exist.

22.     Each and every United States federal, state, and local governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

23.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to

17

the Agreement are hereby directed to surrender possession of the Acquired Assets to the Buyers upon the Closing of the Sale.

24.    All entities holding Interests and/or Claims against or in the Selling Debtor Entities or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Buyers, their property, their successors and assigns, or the Acquired Assets with respect to any Interest and/or Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their estates, their officers, their directors, their shareholders, or the Acquired Assets.  Following the Closing of the Sale, no holder of an Interest and/or Claim in or against the Selling Debtor Entities shall interfere with the Buyers' title to or use and enjoyment of the Acquired Assets based on or related to such Interest and/or Claim or any actions that the Selling Debtor Entities may take, or have taken, in their chapter 11 cases.

25.    The transactions contemplated by the Agreement are undertaken by the Buyers in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Acquired Assets shall not affect the validity of the Sale to the Buyers, unless such authorization is duly stayed pending such appeal.  The Buyers are purchasers in good faith of the Acquired Assets pursuant to section 363(m) of the Bankruptcy Code, and are entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

18

26.     The consideration provided by the Buyers for the Acquired Assets under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

27.     The purchase price shall be and hereby is allocated between the Selling Debtor Entities and the non-Debtor Sellers as set forth on <u>Exhibit 3</u> hereto.  To the extent that indemnification obligations arise under the Agreement on account of the liability of a non-Debtor Seller, such indemnity shall be paid from the proceeds of the Sale allocated to such non-Debtor Seller.

28.     The Selling Debtor Entities, including, but not limited to, their officers, employees, and agents, are hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this order.

29.     The terms and provisions of the Agreement and this order shall be binding in all respects upon the Selling Debtor Entities, their estates, and their stakeholders, the Buyers and their affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all entities asserting an Interest and/or Claim against or in the Acquired Assets to be sold to the Buyers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

19

30.     Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates or of the other Sellers, such as funds that are trust funds under any applicable state lien laws.

31.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

32.     The failure specifically to include or to reference any particular provision of the Agreement in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

33.     This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Buyers, (b) compel delivery of the purchase price or performance of other obligations owed pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this order, (e) protect the Buyers against any Interests and/or Claims against or in the Selling Debtor Entities or the Acquired Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (f) determine all disputes among the

20

Selling Debtor Entities, the Buyers, and any non-Debtor parties to any Assumed and Assigned

Contracts concerning, <u>inter alia</u>, the Selling Debtor Entities' assumption and/or assignment of

any Assumed and Assigned Contract to the Buyers under the Agreement.

Dated: New York, New York
       December 17, 2008

                            _____/s/Robert D. Drain_____
                                UNITED STATES BANKRUPTCY JUDGE

# Exhibit 1

**EXECUTION COPY**

**MASTER SALE AND PURCHASE AGREEMENT**

**AMONG**

**DELPHI CORPORATION**

**AND**

**BIENES TURGON S.A. DE C.V.**

**DATED AS OF**

**NOVEMBER 10, 2008**

## TABLE OF CONTENTS

**PAGE NO.**

| | | |
|---|---|---|
| 1. | Definitions | 1 |
| | 1.1 Certain Defined Terms | 1 |
| | 1.2 Other Interpretive Provisions | 16 |
| | | |
| 2. | Purchase and Sale | 16 |
| | 2.1 Transfers by Sellers and their Affiliates | 16 |
| | 2.1.1 Purchase and Sale of the Sale Securities | 16 |
| | 2.1.2 Purchase and Sale of the Acquired Assets | 16 |
| | 2.1.3 Excluded Assets | 17 |
| | 2.1.4 Post-Closing Asset deliveries | 19 |
| | 2.2 Assumption of Liabilities | 19 |
| | 2.3 Retained Liabilities | 21 |
| | 2.4 Deferred Items | 22 |
| | 2.4.1 Non-Assignability | 22 |
| | 2.4.2 Efforts to Obtain Necessary Consents | 22 |
| | 2.4.3 If Consents Cannot be Obtained | 22 |
| | 2.4.4 Obligation of Buyer to Perform | 22 |
| | 2.4.5 Standard of Care | 22 |
| | | |
| 3. | Purchase Price; Adjustment; Allocation | 23 |
| | 3.1 Deposit Amount | 23 |
| | 3.2 Preliminary Purchase Price | 23 |
| | 3.3 Preparation of Closing Working Capital Statement | 24 |
| | 3.4 Purchase Price Adjustments | 26 |
| | 3.5 Allocation of Purchase Price | 26 |
| | | |
| 4. | Representations and Warranties of Sellers | 27 |
| | 4.1 Organization | 27 |
| | 4.2 Authorization; Enforceability | 27 |
| | 4.3 Capital Stock of Delphi South Africa and Katcon | 27 |
| | 4.4 No Conflicts or Approvals | 28 |
| | 4.5 Sufficiency of Acquired Assets | 28 |
| | 4.6 Compliance with Law; Permits | 28 |
| | 4.7 Proceedings | 29 |
| | 4.8 Absence of Certain Changes | 29 |
| | 4.9 Tax Matters | 29 |
| | 4.10 Employment; Employee Benefits | 29 |
| | 4.11 Intellectual Property | 31 |
| | 4.12 Contracts | 32 |
| | 4.13 Personal Property; Inventory | 33 |
| | 4.14 Real Property | 33 |
| | 4.14.1 Leased Properties | 33 |
| | 4.14.2 Owned Properties | 34 |
| | 4.15 No Brokers' Fees | 34 |
| | 4.16 No Other Representations or Warranties | 34 |
| | 4.17 Fair Disclosure | 34 |

i

| | | | |
|---|---|---|---|
| 5. | | Representations and Warranties of Buyers | 34 |
| | 5.1 | Organization | 34 |
| | 5.2 | Authorization; Enforceability | 35 |
| | 5.3 | No Conflicts or Approvals | 35 |
| | 5.4 | Proceedings | 35 |
| | 5.5 | Solvency | 35 |
| | 5.6 | Anti-Money Laundering | 36 |
| | 5.7 | Investment Representations | 36 |
| | 5.8 | No Inducement or Reliance; Independent Assessment | 37 |
| | 5.9 | Financial Ability | 37 |
| | 5.10 | Adequate Assurance of Future Performance | 37 |
| | 5.11 | No Brokers' Fees | 37 |
| | 5.12 | Compliance with Laws | 38 |
| | 5.13 | Buyer Entities | 38 |
| 6. | | Covenants and Agreements | 38 |
| | 6.1 | Conduct of Business between Signing and Closing | 38 |
| | 6.2 | Bankruptcy Actions | 39 |
| | 6.3 | Assumed U.S. Contracts; Cure Amount | 40 |
| | 6.4 | Non-Competition | 40 |
| | 6.5 | Tax Matters; Cooperation; Preparation of Returns | 41 |
| | 6.6 | Employees; Benefit Plans; Labor Matters | 43 |
| | | 6.6.1   U.S. Employees | 43 |
| | | 6.6.2   European Employees | 46 |
| | | 6.6.3   Asia Pacific Employees | 50 |
| | | 6.6.4   South Africa Employees | 53 |
| | | 6.6.5   Contact with Employees | 53 |
| | 6.7 | Contact with Customers and Suppliers | 54 |
| | 6.8 | Technical Documentation | 54 |
| | 6.9 | Books and Records and Litigation Assistance from and after Closing | 54 |
| | 6.10 | Corporate Names | 55 |
| | 6.11 | Intellectual property Licences | 56 |
| | | 6.11.1   License to Buyers | 56 |
| | | 6.11.2   License to Sellers | 56 |
| | | 6.11.3   Right to Sublicense | 57 |
| | 6.12 | Competition Clearance | 57 |
| | 6.13 | Further Actions | 58 |
| | 6.14 | Further Assurances | 58 |
| | 6.15 | Guarantee by Buyer Parent | 59 |
| | 6.16 | Government Subsidies | 59 |
| | | 6.16.1   India Capital Subsidy | 59 |
| | | 6.16.2   Other Government Subsidies | 59 |
| | 6.17 | Customs Duties | 59 |
| | 6.18 | Buyers' Financing Activities | 60 |
| | 6.19 | Personal Property | 60 |
| | 6.20 | Transition Services | 60 |
| | 6.21 | Reimbursement for Pre-Closing Matters | 60 |
| | 6.22 | China Share Sale | 61 |
| | 6.23 | Milwaukee Asset Sale | 61 |

| 7. | Conditions to Closing | | | 61 |
|----|----|----|----|----|
| | 7.1 | Conditions to Obligations of Seller and Buyer | | 61 |
| | | 7.1.1 | Sale Approval Order and Bidding Procedures Order | 61 |
| | | 7.1.2 | No Law, Judgment, etc | 61 |
| | | 7.1.3 | Governmental Approvals | 61 |
| | | 7.1.4 | No Material Adverse Effect | 61 |
| | 7.2 | Conditions to Obligations of Buyer | | 61 |
| | | 7.2.1 | Accuracy of Warranties | 61 |
| | | 7.2.2 | Performance of Covenants | 62 |
| | | 7.2.3 | Delivery of Ancillary Agreements | 62 |
| | 7.3 | Conditions to Obligations of Sellers | | 62 |
| | | 7.3.1 | Accuracy of Warranties | 62 |
| | | 7.3.2 | Performance of Covenants | 62 |
| | | 7.3.3 | Delivery of Ancillary Agreements | 62 |
| | | 7.3.4 | Local Legal Entity | 62 |
| 8. | Closing | | | 62 |
| | 8.1 | Closing time and Date | | 62 |
| | 8.2 | Ancillary Agreements | | 63 |
| | 8.3 | Seller's Deliveries at Closing | | 63 |
| | 8.4 | Buyer's Deliveries at Closing | | 64 |
| 9. | Termination | | | 64 |
| | 9.1 | Termination | | 64 |
| | 9.2 | Break-Up Fee, Expense Reimbursement | | 66 |
| | 9.3 | Procedure and Effect of Termination | | 67 |
| 10. | Bidding Procedures | | | 67 |
| | 10.1 | Delphi Initial Bankruptcy Actions | | 67 |
| | 10.2 | Qualified Bidder | | 67 |
| | 10.3 | Bid Deadline | | 68 |
| | 10.4 | Due Diligence | | 69 |
| | 10.5 | Bid Requirements | | 69 |
| | 10.6 | Qualified Bids | | 69 |
| | 10.7 | Bid Protection | | 70 |
| | 10.8 | Auction, Bidding Increments and Bids Remaining Open | | 71 |
| | 10.9 | Acceptance of Qualified Bids | | 72 |
| | 10.10 | Sale Hearing | | 72 |
| | 10.11 | Return of Good Faith Deposit | | 72 |
| | 10.12 | Reservation of Rights | | 73 |
| 11. | Liability, Indemnification | | | 73 |
| | 11.1 | Limitations of Liability | | 73 |
| | 11.2 | Survival | | 73 |
| | 11.3 | Indemnification | | 73 |
| | | 11.3.1 | Buyers' Indemnification of Delphi | 73 |
| | | 11.3.2 | Sellers' Indemnification of Buyers | 74 |
| | | 11.3.3. | Limitations | 74 |
| | 11.4 | Environmental Matters | | 75 |
| | | 11.4.1 | Indemnification of Seller and Buyer | 75 |
| | | 11.4.2 | Limitations on Liability | 76 |

|  |  | 11.4.3   Exclusion for Katcon Facilities | 76 |
|  |  | 11.4.4   Remediation of Environmental Damage | 77 |
|  | 11.5 | Indemnification Procedure | 78 |
|  | 11.6 | Mitigation | 79 |
| 12. | Miscellaneous |  | 79 |
|  | 12.1 | Fees and Expenses | 79 |
|  | 12.2 | Bulk Sales Laws | 79 |
|  | 12.3 | Payments in Dollars | 79 |
|  | 12.4 | Amendment | 79 |
|  | 12.5 | Assignment | 79 |
|  | 12.6 | Waiver | 79 |
|  | 12.7 | Notices | 80 |
|  | 12.8 | Entire Agreement | 81 |
|  | 12.9 | Counterparts | 81 |
|  | 12.10 | Publicity | 81 |
|  | 12.11 | Headings | 81 |
|  | 12.12 | Severability | 81 |
|  | 12.13 | Third Parties | 81 |
|  | 12.14 | Governing Law | 81 |
|  | 12.15 | Dispute Resolution | 81 |
|  | 12.16 | No Right of Setoff | 82 |
|  | 12.17 | Risk of Loss | 82 |
|  | 12.18 | Prorations | 82 |
|  | 12.19 | Enforcement of Agreement | 83 |

## MASTER SALE AND PURCHASE AGREEMENT

**THIS MASTER SALE AND PURCHASE AGREEMENT**, dated as of November 10, 2008 between DELPHI CORPORATION, a Delaware corporation ("**Delphi**") on behalf of itself and the other entities set forth on Schedule 1 (each a "**Seller**," and, collectively with Delphi, the "**Sellers**"), and BIENES TURGON S.A. DE C.V., a Mexican corporation ("**Buyer Parent**"), on behalf of itself or a company to be formed and the other buyers set forth on Schedule 1 (each a "**Buyer**," and, collectively with Buyer Parent, the "**Buyers**"):

**WHEREAS,** Delphi, through its Affiliates referred to in this Agreement, is engaged in the Business (as hereinafter defined);

**WHEREAS,** the Sellers own the Acquired Assets and, directly or indirectly, the Sale Securities (each as hereinafter defined);

**WHEREAS,** on October 8, 2005 (the "**Petition Date**"), the Filing Affiliates (as hereinafter defined) filed voluntary petitions for relief (the "**Bankruptcy Cases**") under Chapter 11 of Title 11, U.S.C. §§ 101 et seq. (as amended) (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"); and

**WHEREAS,** as contemplated by Sections 363, 365 and 1146 of the Bankruptcy Code and pursuant to Section 7.29 and 8.5 of the Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, as modified, the Sellers desire to sell to the Buyers all of their right, title and interest in and to the Acquired Assets, and Buyers desire to make such purchase, subject to and in accordance with the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** in consideration of the premises and the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, and intending to be legally bound, the Parties agree as follows:

## 1.    DEFINITIONS:

### 1.1    Certain Defined Terms.

As used in this Agreement, the following terms have the meanings set forth below or in the sections referred to below:

"**Accounts Payable**" means all trade accounts payable and other obligations to pay suppliers and third parties to the extent arising exclusively from the conduct of the Business, including intercompany payables, to the extent not settled prior to the Closing Date.

"**Accounts Receivable**" means all trade accounts receivable and other rights to payment from customers to the extent arising from the conduct of the Business or relating to the Acquired Assets, including accounts or notes receivable and the full benefit of all security for such accounts or notes, including intercompany receivables, to the extent not paid prior to the Closing Date.

"**Acquired Assets**" – Section 2.1.2.

1

"**Acquired Intellectual Property**" means Sellers' right, title and interest in Owned Intellectual Property that is used or held for use exclusively for the Business, including the Intellectual Property listed in Schedule 4.11.1.

"**Administrative Assets**" mean books, records and other administrative assets exclusively used or held for use in the Business, including advertising and promotional materials, catalogues, price lists, correspondence, mailing lists, customer lists, vendor lists, photographs, production data, sales materials and records, purchasing materials and records, bill of materials, personnel records of employees, billing records, accounting records, other financial records and sale order files; provided, however, that Administrative Assets does not include Intellectual Property or Technical Documentation.

"**Affiliate**" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such specified Person. For purposes of this definition, "control" means ownership of more than fifty percent (50%) of the shares or other equity interest and having power to elect a majority of the members of the board of directors or similar body governing the affairs of such Person.

"**Agreement**" means this Master Sale and Purchase Agreement (including the Schedules and Exhibits referred to herein, each of which is incorporated herein by reference), as amended, modified or supplemented from time to time.

"**Allocation**" – Section 3.5.1.

"**Alternate Bid(s)**" – Section 10.10.

"**Alternate Bidder(s)**" – Section 10.10.

"**Alternative Transaction**" – Section 9.2.1.

"**Ancillary Agreement(s)**" – Section 8.2.

"**Asia Pacific Employees**" means the employees who are employed by Sellers primarily in the Business in Australia, India or China immediately prior to the Closing Date.

"**Asset Seller(s)**" means Sellers listed as Assets Sellers on Schedule 1, with respect to the Acquired Assets located at the Manufacturing Facilities described on such Schedule.

"**Assumed Liabilities**" – Section 2.2.

"**Assumed U.S. Contracts**" – Section 6.3.

"**Auction**" – Section 10.8.

"**Australia Employee**" – Section 6.6.3(A)(i).

"**Bankruptcy Cases**" – Recitals.

"**Bankruptcy Code**" – Recitals.

2

"**Bankruptcy Court**" – Recitals.

"**Bankruptcy Rules**" mean the U.S. Federal Rules of Bankruptcy Procedure.

"**Benchmark Working Capital**" means twenty Million dollars ($20,000,000).

"**Bid Deadline**" – Section 10.3.

"**Bidding Procedures**" – Section 10.1.

"**Bidding Procedures Order**" means the order of the Bankruptcy Court approving the Bidding Procedures and certain provisions of this Agreement, including, but not limited to, Buyers' right, under the terms and conditions set forth hereafter, to a Break-Up Fee or Expense Reimbursement.

"**Bidding Process**" – Section 10.1.

"**Break-Up Fee**" – Section 9.2.1.

"**Business**" means the global exhaust emission systems business segment consisting of (i) the Sellers' catalytic converter product line; and (ii) the design, testing, manufacture, development, marketing and sale of the Products by the Sellers at the Manufacturing Facilities and Technical Centers; in each instance, (a) except for the Excluded Assets; (b) as of the Closing Date; and (c) to the extent carried out, either directly or indirectly through Delphi South Africa, Katcon and/or the Asset Sellers as more fully detailed in this Agreement.

"**Business Day**" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by law to be closed in the City of New York.

"**Buyer Employee Benefit Plans**" means Buyers' pension, savings, profit sharing, retirement, bonus, incentive, health, dental, death, accident, disability, stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, severance, vacation, sick leave, fringe or welfare benefits, any employment or consulting Contracts, collective bargaining agreements, "employee benefit plans" (as defined in Section 3(3) of ERISA), employee manuals, and written statements of policies, practices or understandings relating to employment.

"**Buyer Parent**" – Recitals.

"**Buyer(s)**" – Recitals.

"**Cap Amount**" – Section 11.3.2.B.

"**Cash**" means the sum of cash, cash equivalents and liquid investments plus all deposited but uncleared bank deposits and less all outstanding checks and electronic payments of the Business.

"**China Employee**" – Section 6.6.3(A)(i).

"**Claims**" mean all Losses, Liabilities, claims (as defined in Section 101 of the Bankruptcy Code), damages or expenses (including reasonable legal fees and expenses)

3

whatsoever, whether known or unknown, fixed, liquidated, contingent or otherwise.

"**Closing**" – Section 8.1.

"**Closing Date**" – Section 8.1.

"**Closing Working Capital Statement**" means the statement of Working Capital of the Business (as adjusted in accordance with this Agreement) as of 11:59 P.M. (Eastern Standard Time) on the Closing Date, which statement shall be prepared and delivered in accordance with Section 3.3, and will separately set forth the Working Capital for the Business.

"**Closing Date Payment**" – Section 3.2.1.

"**Collective Bargaining Agreements**" mean all collective bargaining agreements with any labor union, works council or other representative of Global Sale Employees (including material local agreements, individual workplace agreements, amendments, supplements, letters and memoranda of understanding of any kind).

"**Committee**" – Section 10.3.

"**Competent Authority**" means a person, agency, department or subdivision thereof having governmental authority under an applicable Environmental Law, and/or a court or tribunal of competent jurisdiction.

"**Competition/Investment Law**" means any Law that is designed or intended to prohibit, restrict or regulate: (i) foreign investment; or (ii) antitrust, monopolization, restraint of trade or competition.

"**Competitive Business**" – Section 6.4.1.

"**Compliance Matter**" means an event, condition, activity, practice, action or omission at the Manufacturing Facility which gives rise to a breach or violation of an Environmental Law.

"**Confidential Information Memorandum**" means the Confidential Information Memorandum dated Summer, 2008, furnished by Lincoln International Advisors LLC, relating to the Business.

"**Confidentiality Agreement**" means the confidentiality agreement between Buyer Parent and Delphi relating to the Sale, dated May 7, 2008.

"**Consent**" means any consent, approval, authorization, waiver, permit, agreement, license, certificate, exemption, order, registration, declaration, filing or notice of, with or to any Person, or the expiration or termination of the waiting period under any Competition/Investment Law, in each case required to permit the consummation of any of the transactions contemplated by this Agreement.

"**Contracts**" mean purchase orders, sales agreements, service contracts, distribution agreements, sales representative agreements, employment or consulting agreements, leases, product warranty or service agreements and other binding commitments, agreements, arrangements and undertakings of any nature.

4

"**Controlled Group**" – Section 4.10.8.

"**Copyrights**" mean: (i) copyrights existing anywhere (registered, statutory or otherwise) and registrations, renewals, revivals, reissuances, extensions and applications for registration thereof, and all rights therein provided by international treaties or conventions; (ii) moral rights (including rights of paternity and integrity), and waivers of such rights by others; (iii) database and data protection rights whether or not based on copyright; (iv) semiconductor chip mask work registrations and applications therefor; and (v) rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Corporate Trademark Rights**" means Trademark Rights used both in the Business and in other businesses conducted directly or indirectly by Delphi.

"**CPA Firm**" – Section 3.3.3.

"**Cure Amounts**" mean all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Asset Sellers and assignment to (and assumption by) Buyers of the Assumed U.S. Contracts under the Sale Approval Order.

"**Data Room**" means the data room(s) (including virtual data rooms) in which the documents and information related to the Business and the Acquired Assets were disclosed to Buyer Parent and its representatives and counsel.

"**Debt Obligations**" - as applied to any Person, mean obligations for borrowed money as evidenced by bonds, debentures, notes, financing or capital (as opposed to operating) leases and other similar instruments, and all guaranties of such obligations.

"**Deductible Amount**" - Section 11.3.2.B.

"**Defending Party**" – Section 12.15.1.

"**Deferred Item(s)**" – Section 2.4.1.

"**Delphi**" – Recitals.

"**Delphi India**" – Section 6.16.1.

"**Delphi South Africa**" means Delphi South Africa (Proprietary) Ltd., a company registered in accordance with the laws of the Republic of South Africa under registration number 2005/030075/07.

"**Demanding Party**" – Section 12.15.1.

"**Deposit Amount**" – Section 3.1.

"**Deposit Escrow Agreement**" means the Deposit Escrow Agreement dated as of the date hereof, executed by and among Buyer Parent, Delphi and Escrow Agent concurrently with this Agreement.

5

"**EC Merger Regulation**" means Council Regulation (EEC) 4064/89 of the European Community, as amended.

"**Encumbrance**" means with respect to (i) the Sale Securities or any other shares of capital stock owned by Sellers, Buyers or their respective Affiliates: any voting trust, shareholder agreement, proxy or other similar restriction; and (ii) any property or asset (including the Acquired Assets, Sale Securities or any other shares of capital stock owned by Sellers, Buyers or their respective Affiliates): any lien, charge, claim, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction or a similar law relating to security interests in and over personal property).

"**Environment**" means the following media (whether individually or commingled): air, water, surface water, groundwater (whether an aquifer or water below the surface of the ground), and ground (whether at the surface or below the surface) and all organisms, ecosystems, flora, and natural resources.

"**Environmental Claim**" means a Proceeding by any Person alleging Liability arising from the existence of or a Release of Hazardous Materials, or a noncompliance with any Environmental Law.

"**Environmental Contamination**" means the presence, in excess of applicable clean-up standards or in violation of applicable Environmental Laws, of a Hazardous Material at, in, under, on or about the Environment at the Manufacturing Facility.

"**Environmental Damages**" means losses, liabilities, costs, damages, fines, penalties and expenses (including reasonable expenses of investigation and attorneys' fees) arising out of an Environmental Contamination, but in all cases excluding losses, liabilities, costs, damages and expenses deemed consequential or loss of profit, and also excluding expenses of investigating information for the purposes of making a claim for indemnification under this Agreement.

"**Environmental Law**" means all Laws applicable to the conduct and the operation of the Business in force on or prior to the Closing Date, and relating to pollution or the protection of the Environment.

"**Environmental Permits**" mean any licenses, permits, authorizations and approvals issued by any Governmental Authority and required to be obtained by the Business in respect of the Acquired Assets under Environmental Laws material to the conduct and the operation of the Business.

"**Equityholders' Committee**" – Section 10.3.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

"**Escrow Agent**" means the escrow agent under the Deposit Escrow Agreement.

"**European Employees**" means the employees who are employed by Sellers primarily in the Business in Poland or Luxembourg immediately prior to the Closing Date.

"**Excluded Assets**" – Section 2.1.3.

"**Excluded Intellectual Property**" – Section 2.1.3.C.

"**Excluded Software**" means the Software identified on Schedule 2.1.3.N.

"**Expense Reimbursement**" – Section 9.2.2.

"**Filing Affiliates**" mean Delphi and the following Affiliates of Delphi, each of which are included in the Bankruptcy Cases and operate certain portions of the Business or are Sellers: Delphi Automotive Systems LLC and Delphi Technologies, Inc.

"**Final Statement of Working Capital**" – Section 3.3.3.

"**GAAP**" means United States generally accepted accounting principles and practices as in effect from time to time.

"**Global Sale Employees**" means all U.S. Employees, European Employees, Asia Pacific Employees and South Africa Employees who are employees of any Asset Seller-listed on Schedule 1 or of Delphi South Africa, except for Inactive U.S. Employees unless and until they transfer to Buyer.

"**GM**" means General Motors Corporation.

"**Good Faith Deposit**" – Section 10.5.3.

"**Governmental Approval**" means any Consent of, with or to any Governmental Authority.

"**Governmental Authority**" means any United States or foreign federal, state, provincial or local government or other political subdivision thereof, any entity, authority or body exercising executive, legislative, judicial, regulatory or administrative functions of any such government or political subdivision, and any supranational organization of sovereign states exercising such functions for such sovereign states.

"**Governmental Order**" means, with respect to any Person, any judgment, order, writ, injunction, decree, stipulation, agreement, determination or award entered or issued by or with any Governmental Authority and binding on such Person.

"**Hardware Contracts**" – Section 2.1.2.I.

"**Hazardous Materials**" means any element, mixture, chemical, material, constituent, waste, pollutant, contaminant, or material including petroleum or petroleum-based or petroleum-derived, polychlorinated biphenyls, noxious, radioactive, flammable, corrosive or caustic compound (whether solid, liquid or gaseous) which are regulated or can give rise to Liabilities or Losses under an Environmental Law or an Environmental Permit.

"**HSR Act**" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations promulgated thereunder.

7

"**Inactive U.S. Employees**" – Section 6.6.1.B.

"**Indemnifiable Losses**" – All Losses actually incurred by the Party or their Affiliates and their respective directors, officers, employees, advisors, representatives and agents, including in connection with any actions, suits, demands, assessments, judgments, lawsuits and settlements, and any such case reduced by the amount of insurance proceeds recovered by said Party from any Person or entity with respect thereto.

"**Indemnification Claim**" – Section 11.5.

"**India Capital Subsidy**" – Section 6.16.1.

"**Individual Claim Amount**" – Section 11.3.2.B.

"**Intellectual Property**" means Patent Rights, Trademark Rights, Copyrights, Software, Trade Secrets and Know-How.

"**Inventory**" means finished goods, raw materials, work-in-process, packaging, stores, stock, supplies and other inventory, exclusively used or held for use in the Business, wherever located.

"**IRC**" means the Internal Revenue Code, as amended, and the rules and regulations promulgated thereunder.

"**KDAC**" means Korea Delphi Automotive Systems Corporation, a Korean company.

"**Katcon**" means Katcon S.A. de C.V., a Mexican company.

"**Know-How**" means proprietary technical and business knowledge and information, regardless of whether recorded and, if recorded, regardless of the media in which it is recorded, such knowledge and information including specifications, designs, methodologies, processes and production techniques resulting from research and development, technology, manufacturing and production processes, research and development information, drawings, specifications, designs, plans, proposals, technical data, vendor and marketing and business data and customer and vendor lists and information, whether or not confidential.

"**Knowledge of Buyers**" or "**Buyers' Knowledge**" (or a similar phrase) means the actual, conscious knowledge of the individuals listed on Schedule 1.1.A with respect to the matters specified for such individuals on Schedule 1.1.A.

"**Knowledge of Sellers**" or "**Sellers' Knowledge**" (or a similar phrase) means the actual, conscious knowledge of the individuals listed on Schedule 1.1.B with respect to the matters specified for such individuals on Schedule 1.1.B.

"**Law**" means any and all applicable laws, rules, regulations, directives, decrees, treaties, statutes, provisions of any constitution and principles (including principles of the common law) of any Governmental Authority, as well as any applicable Governmental Order.

"**Leased Real Property**" – Section 4.14.1.

8

"**Liabilities**" mean any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on- or off- balance sheet, including those arising under any Law, Claim, Governmental Order, Contract or otherwise.

"**Licensed Intellectual Property**" means Sellers' rights with respect to Intellectual Property licensed or sublicensed to Sellers from a third party, and that is exclusively used or held for use by the Business.

"**Losses**" mean any and all claims, Liabilities, losses, damages, fines, penalties and costs (in each case including reasonable out-of-pocket expenses (including reasonable attorneys', accountants', technical consultants', engineers' and experts' fees and expenses)).

"**Management Presentations**" mean the presentations, expert meetings, site visits and question and answer sessions, provided by Delphi and Sellers (and their advisers and counsel) to Buyer Parent and the other Buyers (and their advisers and counsel), with respect to the Business, in view of the transactions contemplated herein.

"**Manufacturing Cost**" means costs incurred within the Manufacturing Facilities in carrying out the manufacturing and assembly of replacement Products, including direct material and labor, inbound freight, outbound freight, where applicable, as well as manufacturing overhead directly attributable to the manufacture and assembly of Products, such as utilities, but excluding indirect costs that may be allocated to but are not directly related to the manufacturing and assembly of Products.

"**Manufacturing Facilities**" means the Business' manufacturing assembly facilities located at Blonie, Poland; Shanghai, China; Clayton, Australia; Gurgaon, India; Port Elizabeth, South Africa; and the Katcon locations in Monterrey, Mexico (Santa Catarina and Guadalupe) and Valencia, Venezuela, each of which is singly referred to as a "**Manufacturing Facility**."

"**Marked Agreement**" – Section 10.5.2.

"**Material Adverse Effect**" means any change, occurrence or development that has a material adverse effect on the business, assets, Liabilities (except to the extent assumed or retained by Sellers' hereunder), results of operations or financial condition of the Business, taken as a whole, including (notwithstanding anything to the contrary contained in this definition) any change, occurrence or development: (a) resulting from a bankruptcy or Chapter 11 filing of GM, unless cured or lifted before Closing, or (b) GM notifying Delphi in writing of a loss of business from GM, awarded to Delphi South Africa as of the date of this Agreement, of greater than five hundred thousand (500,000) catalytic converters, on an annualized basis, for 2009 or 2010; but excluding any change, occurrence or development: (i) resulting from general economic or business conditions; (ii) resulting from strikes or acts of God (e.g. flooding, earthquake, volcano), (iii) resulting from material increases in raw materials or other operating costs that cannot be passed through to customers; (iv) affecting companies in the industry or markets of the Business generally;(v) resulting from any changes in any Law, or in GAAP or any foreign generally accepted accounting principles; (vi) resulting from any existing event, occurrence or circumstance with respect to the Business to which the Buyers have Knowledge as of the date hereof; (vii) that is cured or for which an offer to cure has been made by the Sellers before the date of any termination of this Agreement by Buyer Parent pursuant to Section 9.1 hereof; (viii) resulting from the negotiation, announcement or performance of this

9

Agreement or the transactions contemplated hereby, including by reason of the identity of any Buyer or communication by any Buyer or its Affiliates of its plans or intentions regarding operation of the Business; (ix) resulting from any act or omission of any Seller taken with the prior consent of any Buyer; (x) resulting from any actions required under this Agreement to obtain any Consent; (xi) resulting from the filing of the Bankruptcy Cases or from any action approved by the Bankruptcy Court; (xii) resulting from the regulatory status of any Buyer, or (xiii) resulting from acts of war or terrorism, whether or not directed at the Business or Buyer.

"**Material Contracts**" – Section 4.12.1.

"**Notice**" – Section 12.15.1.

"**Non-Filing Sellers**" means Sellers not subject to the Bankruptcy Cases.

"**Objection**" – Section 3.3.2.

"**OEM**" means automotive original equipment manufacturer.

"**OFAC**" – Section 5.6.

"**Ordinary Course of Business**" means, in all material respects, the usual, regular and ordinary course of a business consistent with the past practice thereof, provided that where the Sellers' past practices were modified following filing of the Bankruptcy Cases, such term means the ordinary course consistent with custom and practice of the Sellers' from and after the Petition Date to the extent consistent with orders issued in the Bankruptcy Cases.

"**Organizational Document**" means, as to any Person, its certificate or articles of incorporation, its regulations or by-laws or any equivalent documents under the law of such Person's jurisdiction of incorporation or organization.

"**Owned Intellectual Property**" means Intellectual Property in and to which Sellers hold, or have a right to hold, in whole or in part, any right, title and interest.

"**Owned Real Property**" – Section 4.14.2.

"**Party(ies)**" means any Seller or Sellers and any Buyer, Buyers or Buyer Parent.

"**Patent Rights**" mean: (i) patentable inventions, whether or not reduced to practice, and whether or not yet made the subject of a pending patent application or applications; (ii) designs, ideas and conceptions of patentable subject matter, including any invention disclosures and inventor certificates, whether or not reduced to practice and whether or not yet made the subject of a pending patent application or applications; (iii) national (including the United States) and multinational statutory invention and design registrations, patents and patent applications (including provisionals, substitutions, reissues, divisions, continuations, continuations-in-part, extensions and reexaminations) and all rights therein provided by international treaties or conventions; and (iv) rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Permits**" – Section 4.6.

"**Permitted Encumbrance**" means: (i) purchase money security interests arising in the

10

Ordinary Course of Business; (ii) security interests relating to progress payments created or arising pursuant to government contracts; (iii) security interests relating to vendor tooling arising in the Ordinary Course of Business; (iv) Encumbrances in favor of any Sellers' pre-Petition Date secured lenders and post-Petition Date secured lenders which, upon Closing, will attach to the proceeds of the Sale attributable to the sale of the assets of the Filing Affiliates in the same order and priority that the Encumbrances attached to the assets of the Filing Affiliates, subject to all existing defenses and other objections; (v) any Encumbrance that may be created by or on behalf of Buyers; and (vi) in relation to Real Property: (a) Encumbrances relating to any current real estate or ad valorem taxes or assessments not yet delinquent or being contested in good faith by appropriate Proceedings; (b) mechanic's, materialmen's, laborer's and carrier's liens and other similar liens arising by operation of law or statute in the Ordinary Course of Business for obligations which are not delinquent and which will be paid or discharged in the Ordinary Course of Business; (c) matters which an ALTA survey, or a similar survey in any other country, would disclose; (d) rights of the public and adjoining property owners in streets and highways abutting and adjacent to the Real Property; (e) easements, covenants, restrictions and other encumbrances of public record; and (f) such other Encumbrances, the existence of which, in the aggregate, would not materially interfere with or materially affect the use of the respective underlying asset to which such Encumbrances relate as used on the Closing Date.

"**Person**" means any individual, partnership, firm, corporation, association, trust, unincorporated organization, joint venture, limited liability company, Governmental Authority or other entity.

"**Personal Property**" means tangible personal property other than Inventory, owned by an Asset Seller and exclusively used in or held for use in the Business, including production machinery, dunnage, equipment, tools, dies, jigs, molds, patterns, gauges, production fixtures, material handling equipment, related spare parts, business machines, computer hardware and other information technology assets, office furniture and fixtures, in-factory vehicles, trucks, model shop equipment, laboratory test fixtures and other tangible personal property, whether located on the Real Property, at the place of business of a vendor or elsewhere; provided, however, that Personal Property does not include personal property owned by any third party or that is part of Shared Assets, Intellectual Property or Technical Documentation.

"**Petition Date**" – Recitals.

"**PGM**" means precious group metals, including platinum, palladium and rhodium.

"**Post-Closing Compliance Matter**" means a Compliance Matter occurring after the Closing Date.

"**Post-Closing Environmental Contamination**" means Environmental Contamination occurring after the Closing Date and any subsequent migration.

"**Post-Petition Contracts**" mean the Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates on or after the Petition Date.

"**Potential Bidder**" – Section 10.2.

"**Pre-Closing Compliance Matter**" means a Compliance Matter occurring at prior to the Closing Date.

"**Pre-Closing Environmental Contamination**" means Environmental Contamination occurring prior to the Closing Date and any subsequent migration.

"**Pre-Petition Contracts**" mean the Contracts of the Filing Affiliates relating to the Business entered into by such Filing Affiliates before the Petition Date.

"**Preliminary Purchase Price**" means the Deposit Amount, the Closing Date Payment and the SDECSC Closing Date Payment.

"**Price Adjustment**" – Section 3.2.3.

"**Proceeding**" means any action, claim, demand, suit, proceeding, citation, summons, subpoena, inquiry or investigation of any nature, civil, criminal, regulatory or otherwise, in law or in equity, by or before any Governmental Authority.

"**Product(s)**" means catalytic converter and exhaust assemblies and components, except for assemblies and components related to selective NOx reduction in diesel exhaust aftertreatment systems such as diesel fuel reformation and urea injection distribution.

"**Product Warranty Claims**" means Liabilities arising out of, resulting from or relating to product warranty or product return, including all Liabilities arising from, caused by or related to any obligation to implement any replacement, field fix, retrofit, modification or recall campaign with respect to any Product.

"**Property Taxes**" – Section 6.5.1.

"**Purchase Price**" – Section 3.4.4.

"**Qualified Bid**" – Section 10.6.

"**Qualified Bidder**" – Section 10.2.

"**Real Property**" means the Owned Real Property and the Leased Real Property.

"**Release**" means any spill, emission, leaking, placement, burial or discharge of any Hazardous Materials at, in, onto, under or through the Real Property or the Environment.

"**Relevant Items**" – Section 3.3.2.

"**Relevant Transfer**" means a relevant transfer under the Transfer Regulations.

"**Remedial Works**" means the works, designs, investigations and activities carried out by a Party in relation to Environmental Contamination, but excluding expenses of investigating information for the purposes of making a claim for indemnification under this Agreement.

"**Remediation Standards**" means standards which are: (i) the minimum standards based on a risk assessment permitted under Environmental Laws; (ii) applicable to the industrial use and operations at the Real Property as carried out at the Closing Date; (iii) reasonable; and (iv) would be reasonably anticipated to be acceptable (or is acceptable), to a relevant Competent Authority lawfully exercising its powers under Environmental Laws, in each case as in existence as of the Closing Date.

12

"**Remedy**" - Section 11.4.4.

"**Required Bid Documents**" – Section 10.5.

"**Retained Liabilities**" – Section 2.3.

"**Return Date**" – Section 10.11.

"**Sale**" means the sale, assignment and transfer of the Acquired Assets and Sale Securities from Sellers to Buyers in accordance with this Agreement and the relevant Transfer Agreements.

"**Sale Approval Order**" means an order or orders of the Bankruptcy Court entered pursuant to Sections 363 and 365 of the Bankruptcy Code, the form and substance of which is reasonably satisfactory to Buyer, authorizing and approving, among other things, the Sale free and clear of all Encumbrances on Acquired Assets sold by a Filing Affiliate, other than Permitted Encumbrances

"**Sale Hearing**" – Section 10.9.

"**Sale Motion**" means the motion filed by Delphi with the Bankruptcy Court for entry of the Sale Approval Order.

"**Sale Securities**" mean the shares of the Delphi South Africa and Katcon, respectively, as set forth in more detail on Schedule 4.3 to this Agreement.

"**SDECSC**" means Shanghai Delphi Emission Control Systems Company Limited, a Chinese company.

"**SDECSC Closing Date Payment**" – Section 3.2.1.

"**SDN List**" – Section 5.6.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"**Securities Seller**" means Sellers listed as Securities Sellers on Schedule 1, with respect to the Sale Securities described on such Schedule.

"**Security Purchase and Transfer Agreement(s)**" means the agreement(s) for the transfer and sale of the Sale Securities, substantially in the form attached as Exhibit 8.2.2.A and Exhibit 8.2.2.E.

"**Seller Employee Benefit Plans**" means Asset Sellers' and Delphi South Africa's pension, savings, profit sharing, retirement, bonus, incentive, health, dental, death, accident, disability, stock purchase, stock option, stock appreciation, stock bonus, executive or deferred compensation, hospitalization, severance, vacation, sick leave, paid or unpaid time off, jubilee awards, fringe or welfare benefits, any employment or consulting Contracts, collective bargaining agreements, "employee benefit plans" (as defined in Section 3(3) of ERISA), employee manuals, and written or binding oral statements of policies, practices or

13

understandings relating to employment.

"**Seller(s)**" – Recitals.

"**Shared Assets**" means the Personal Property that is not exclusively used by the Business but shared with other business of Asset Sellers.

"**Shared Intellectual Property**" means Intellectual Property (other than Corporate Trademark Rights and Excluded Software) owned by Delphi or any of its Affiliates that is used in the Business and used or held for use in one or more other businesses conducted directly or indirectly by Delphi or an Affiliate but is not used exclusively in the Business.

"**Software**" means computer software and programs, including source code, shareware, firmware, middleware, courseware, open source code, operating systems and specifications, system data, record and table layouts, databases, files documentation, storage media, manuals and other materials related thereto.

"**South Africa Employees**" means the employees who are employed by Delphi South ᴗa immediately prior to the Closing and identified on Schedule 4.10.1.

"**Straddle Period**" – Section 6.5.4.

"**Subsequent Bid**" – Section 10.6.

"**Successful Bid(s)**" – Section 10.8.6.

"**Successful Bidder(s)**" – Section 10.8.6.

"**Tax**" or "**Taxes**" means any taxes of any kind, including but not limited to those measured on, measured by or referred to as, income, alternative or add-on minimum, gross receipts, escheat, capital, capital gains, sales, use, *ad valorem*, franchise, profits, license, privilege, transfer, withholding, payroll, employment, social, excise, severance, stamp, occupation, premium, goods and services, value added, property, environmental or windfall profits taxes, customs, duties or similar fees, assessments, charges or recapture of any kind whatsoever, together with any interest and any penalties, additions to tax or additional amounts imposed by any Governmental Authority.

"**Tax Claim**" means any Claim related to Tax or Taxes.

"**Tax Return**" means any return, report, declaration, form, election letter, statement or other information required to be filed with any Governmental Authority with respect to Taxes, including any schedule or attachment thereto or amendment thereof.

"**Taxing Authority**" means, with respect to any Tax, the Governmental Authority thereof that imposes such Tax and the agency, court or other body (if any) charged with the interpretation, administration or collection of such Tax for such Governmental Authority.

"**Technical Centers**" means the prototype, technical, application engineering, and customer support centers used by the Business and which are located at Luxembourg, Luxembourg; Flint, Michigan; and Auburn Hills, Michigan.

14

"**Technical Documentation**" means all documented technical information owned by Sellers that is currently in the files of the Business or primarily used in the Business, in each case pertaining to the design or manufacture of the Products.

"**Third Party**" means any person not a Party or a Competent Authority.

"**Trade Secrets**" mean: (i) all forms and types of financial, business, scientific, technical, economic, manufacturing or engineering information, including patterns, plans, compilations, specifications, tooling, program devices, formulas, designs, prototypes, testing plans, methods, techniques, processes, procedures, programs, customer and vendor lists, pricing and cost data, whether tangible or intangible, and regardless of whether or how stored, compiled or memorialized physically, electronically, graphically, photographically or in writing, if: (a) the owner thereof has taken reasonable measures to keep such information secret; and (b) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public, and (ii) confidential technical and business information (including ideas, formulas, compositions, inventions and conceptions of inventions whether patentable or un-patentable and whether or not reduced to practice); and (iii) all rights to sue or recover and retain damages, costs and attorneys' fees for present and past misappropriation of any of the foregoing.

"**Trademark Rights**" mean: (i) trademarks, trade names and service marks; (ii) the goodwill associated with trademarks, trade names and service marks; (iii) registrations and applications for registration of trademarks, trade names and service marks; and (iv) all rights to sue or recover and retain damages and costs and attorneys' fees for present and past infringement of any of the foregoing.

"**Transfer Agreement(s)**" – Section 8.2.2.

"**Transfer Regulation**" means any Law pursuant to which the employment of any employee of an Asset Seller (or any employee of any other Affiliate of Delphi, except for Delphi South Africa and Katcon) who is dedicated to the Business will transfer to a Buyer in connection with the transactions contemplated by this Agreement, including pursuant to Directive 77/187/EC as amended by Council Directive 98/50 EEC and consolidated in Council Directive 2001/23/EEC of the European Parliament and Council and any Law adopted pursuant thereto, as well as the Indian Industrial Disputes Act of 1948, and any Law, works council or union agreement otherwise relating to such transfer of employment and the delivery of information to or consultation with employees or their representatives in connection with the transactions contemplated by this Agreement.

"**Transfer Taxes**" – Section 6.5.5.

"**Transferred Asia Pacific Employee**" means any Transferred Australia Employee, Transferred China Employee and Global Sale Employee in India, and "**Transferred Asia Pacific Employees**" means all Transferred Australia Employees, Transferred China Employees and Global Sale Employees in India.

"**Transferred Australia Employee**" means any Australia Employee who accepts an offer of employment from the local Buyer pursuant to Section 6.6.3(A)(ii).

"**Transferred China Employee**" means any China Employee who accepts an offer of employment from the local Buyer pursuant to Section 6.6.3(A)(ii).

15

"**U.S. Employees**" means the employees who are employed by Sellers primarily in the Business in the United States immediately prior to the Closing and identified on <u>Schedule 4.10.1</u>.

"**USA PATRIOT Act**" – Section 5.6.

"**Working Capital**" means the addition of usable and marketable Inventory (net of applicable reserves for obsolete or slow moving inventories) from the Manufacturing Facilities located at Blonie, Poland; Shanghai, China; Clayton, Australia; Gurgaon, India; and Port Elizabeth, South Africa plus Accounts Receivable (net applicable allowances for doubtful accounts) from the Manufacturing Facilities located at Blonie, Poland; Clayton, Australia; Gurgaon, India; and Port Elizabeth, South Africa less Accounts Payable from the Manufacturing Facilities located at Blonie, Poland; Clayton, Australia; Gurgaon, India; and Port Elizabeth, South Africa. All Working Capital calculations shall be determined in accordance with GAAP, except for PGM components in SDECSC's Inventory which will be valued based on pass through cost to customers. For the avoidance of doubt, Accounts Receivable and Accounts Payable from the Shanghai, China Manufacturing Facility, as well as Accounts Receivable, Accounts Payable, and Inventory from Katcon will be excluded.

**1.2   Other Interpretive Provisions.** The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement refer to this Agreement as a whole (including any Schedules hereto) and not to any particular provision of this Agreement, and all Article, Section, Schedule and Exhibit references are to this Agreement unless otherwise specified. The words "include," "includes" and "including" are deemed to be followed by the phrase "without limitation." The meanings given to terms defined herein are equally applicable to both the singular and plural forms of such terms. Whenever the context may require, any pronoun includes the corresponding masculine, feminine and neuter forms. Except as otherwise expressly provided herein, all references to "dollars" or "$" are deemed references to the lawful money of the United States of America, and all references to "euros" or "€" are deemed references to the lawful money of the European Economic and Monetary Union. References to undertakings by the "Buyer(s)" or the "Seller(s)" are understood to be undertakings by Delphi and Buyer Parent to cause the relevant Buyer to perform, and the relevant Seller to perform, as the case may be; provided, however, that for Katcon and SDECSC undertakings by the "Seller(s)" are understood to be undertakings by Delphi to use best efforts to cause Katcon or SDECSC, respectively, to perform.

**2.   PURCHASE AND SALE:**

**2.1   Transfers by Sellers and their Affiliates:**

**2.1.1   Purchase and Sale of the Sale Securities.** With respect to Delphi South Africa and Katcon, upon the terms and subject to the conditions set forth in this Agreement as modified or supplemented by any applicable Transfer Agreement, on the Closing Date, the Sellers will sell, transfer, assign, convey and deliver to the Buyers the Sale Securities; and the Buyers will purchase, accept and acquire such Sale Securities, in each case as set forth in Schedule 1.

**2.1.2   Purchase and Sale of the Acquired Assets.** Upon the terms and subject to the conditions set forth in this Agreement as modified or supplemented by any applicable Transfer Agreement, on the Closing Date the Asset Sellers will sell, transfer, assign,

convey and deliver to the Buyers, and the Buyers will purchase, accept and acquire from the Asset Sellers, free and clear of all Encumbrances except Permitted Encumbrances, all of the assets and properties described below (collectively, the "Acquired Assets"), subject in each case to Section 2.1.3. Except for the Acquired Assets, the Asset Sellers will retain all other assets, properties, rights and interests owned, used or held by the Asset Sellers. The Acquired Assets consist of all of Asset Sellers' right, title and interest in and to the assets exclusively used or held for use in the Business (other than the Excluded Assets), including:

      **A.**    Administrative Assets.

      **B.**    Personal Property, the machinery and equipment portion of which is set forth on Schedule 2.1.2.B;

      **C.**    Permits.

      **D.**    Inventory.

      **E.**    Contracts.

      **F.**    Real Property set forth on Schedule 2.1.2.F.

      **G.**    Acquired Intellectual Property and Technical Documentation (provided that, with respect to the Technical Centers, the Acquired Assets will consist only of the assets specifically set forth in Schedule 2.1.2.G), including all rights to receive royalties and fees from parties under licenses and technical assistance agreements for the Acquired Intellectual Property.

      **H.**    Accounts Receivable.

      **I.**    Notwithstanding Section 2.1.3.N of this Agreement, individual IT hardware leases primarily relating to the Business, including the leases for the hardware identified on Schedule 2.1.2.G as Acquired Assets, are Contracts included in the Acquired Assets in accordance with the terms of this Agreement (the **"Hardware Contracts"**), although the master or regional lease agreements relating to such hardware are Excluded Assets. Sellers shall be responsible for the transfer of such Hardware Contracts to Buyers.

      **2.1.3**  **Excluded Assets.**  Notwithstanding anything to the contrary in this Agreement or in any Ancillary Agreements, the following properties and assets will not be included in the Acquired Assets (the "**Excluded Assets**"):

      **A.**    **Third Party Assets.**  Any machinery, equipment, tools, Inventory, tooling, dies, molds, patterns, jigs, gauges, production fixtures, special material handling equipment, customer dunnage and containers owned by an OEM or any other third party, including third party bailed assets, provided, however, that any Contracts or other rights the Sellers have pertaining to such bailed assets will be transferred as part of the Acquired Assets.

      **B.**    **Shared Assets**.

      **C.**    **Excluded Intellectual Property.**  All Intellectual Property not

17

exclusively used, exclusively arising from, or exclusively relating to the Business as currently conducted, including Corporate Trademark Rights (collectively, "**Excluded Intellectual Property**") (subject to the limited rights granted to the Buyers pursuant to Sections 6.10 and 6.11).

**D.**     **Insurance.**  Insurance coverage and insurance policies relating to the operations of the Business, including any and all claims and rights thereunder and the proceeds thereof and all prepaid insurance premiums.

**E.**     **Records.**  Any books, records and other materials that any Seller is required by Law to retain, all Tax Returns of any Seller for time periods prior to Closing, and related work papers, and all "Delphi" marked sales and promotional materials and brochures.

**F.**     **Claims.**  All rights, claims, defenses, causes of action or claims of any kind relating to either Excluded Assets or Retained Liabilities or any business of the Sellers other than the Business as well as all rights and causes of action against third parties arising out of events occurring before or in connection with the Closing to the extent such rights and causes of action relate to the ownership of the Acquired Assets or the operation of the Business prior to or arising out of Closing, but excluding any of the foregoing which are related to any Assumed Liabilities.

**G.**     **Tax Refunds; Duties.**  All tax refunds, credits, prepayments or deferrals and any duty, VAT, or other similar refunds or rights to such refunds relating to any customs transactions occurring prior to the Closing.

**H.**     **Bankruptcy Rights.**  All of the rights and claims of the Filing Affiliates available to Filing Affiliates under the Bankruptcy Code, of whatever kind or nature, as set forth in Sections 544 through 551, inclusive, 553, 558 and any other applicable provisions of the Bankruptcy Code, and any related claims and actions arising under such sections by operation of law or otherwise, including any and all proceeds of the foregoing.

**I.**     **Personnel Records.**  All work histories, personnel and medical records of employees of any Seller who worked at any time for any reason at the Business for whom a record exists at the Business at the time of Closing; provided, however, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws, the appropriate Buyer(s) will be provided the originals of all personnel and medical records of all Global Sale Employees after posted written notice or other appropriate notice to such Global Sale Employees if legally required or if Sellers so elects. All such personnel and medical records of Global Sale Employees are books and records governed by Section 6.9 of this Agreement. Upon written request of Sellers (or an Affiliate of Sellers), Buyer will promptly return or cause to be returned any and all of these records to Sellers (or an Affiliate of Sellers as directed) at which time Sellers, so far as legally permissible under applicable data protection, medical confidentiality or similar Laws, will provide the appropriate Buyer(s) with copies of the personnel and medical records of such employees. If an employee objects to provision of personnel or medical records to any Buyer, the records will not be provided, except to the extent Sellers determine that provision of the records to such Buyer

18

over the objections by the employee is permitted by the applicable local law without adverse consequences to Sellers or to any Affiliate of Sellers.

**J.     Privileged Information and Materials.**  Information and materials protected by the attorney-client privilege (or its equivalent in jurisdictions outside the United States), or that, in the case of environmental-related documents, Sellers consider to be proprietary information.

**K.     Technical Centers.**  All real property (including any improvements located thereon) and Personal Property located at the Technical Centers, other than those assets which are specifically set forth on Schedule 2.1.2.G.

**L.     Certain Real Property.**  Real property not set forth on Schedule 2.1.2.F.

**M.     Common Delphi Services.**  Common Delphi services and agreements, including legal, human resources, purchasing, customs, insurance, assets management, finance, tax, and information technology and support.

**N.     Inventory and Other Assets.**  (i) All Inventory, products, rights, properties, assets and businesses of the Business which will have been transferred or disposed of by Sellers prior to Closing in the Ordinary Course of Business; (ii) any document, information, Permit, Contract, Intellectual Property or other asset the transfer of which is prohibited by any Law; (iii) equipment, Excluded Software and other assets listed in Schedule 2.1.3.N; and (iv) Global Sale Employee vehicles of any engineering pool.

**O.     Permits.**  Any and all permits, licenses and utilities and other Contracts currently used which are non-transferable, or that are shared with other businesses within the legal entity that currently operates the local portion of the Business.

**P.     SDECSC Excluded Net Assets.**  Accounts Payable and Accounts Receivable of SDECSC that cannot be included in Acquired Assets per local Law and Tax regulations, along with associated Accounts Receivable and Accounts Payable between SDECSC and other Sellers.

**Q.     KDAC Excluded Assets.**  Any and all assets, properties, rights and interests of, in or to KDAC, whether or not relating to the Business.

**2.1.4  Post-Closing Asset Deliveries.**  Should Sellers, in their reasonable discretion, determine after the Closing that books, records or other materials constituting Acquired Assets are still in the possession of Sellers or any of its Affiliates, Sellers will or will cause such Affiliates to promptly deliver them to Buyers at no cost to Buyers.  Should Sellers or Buyers, in their reasonable discretion, determine after the Closing that books, records or other materials constituting Excluded Assets were delivered to Buyers, Buyers will promptly return them to Sellers at no cost to Sellers.

**2.2     Assumption of Liabilities.**  The Buyers will assume, and will thereafter pay, perform and discharge as and when due, and will be liable with respect to only the following Liabilities of the Asset Sellers, exclusively arising out of the Business on an arm's length basis

19

and any Liabilities otherwise assumed by Buyers pursuant to the terms of this Agreement, a Transfer Agreement, any other Ancillary Agreement, or by operation of Law in the course of acquiring the Business (collectively, the "**Assumed Liabilities**"):

      **2.2.1** All Liabilities of the Asset Sellers arising on or after Closing under any Contracts, licenses, Permits, leases and other agreements included in the Acquired Assets and assigned or otherwise transferred to Buyers or any relevant Buyer Affiliate pursuant to the terms of this Agreement or the Transfer Agreements and other obligations relating to any Buyer's ownership or use of the Acquired Assets;

      **2.2.2** All Liabilities relating to the Acquired Assets arising on or after the Closing Date, including Claims and other obligations relating to any Buyer's ownership or use of the Acquired Assets;

      **2.2.3** Obligations to pay for assets, goods or services relating to the Business which are ordered in the Ordinary Course of Business by any Asset Seller on or prior to the Closing that are received by the relevant Buyer, Delphi South Africa or Katcon after Closing;

      **2.2.4** All Product Warranty Claims and Liabilities in the nature of product liability, including any Liability for Claims made for injury to persons and/or property arising from, caused by or arising out of the design, manufacture or assembly of any Product manufactured, assembled or shipped on or after Closing (regardless of whether any such Products are designed before or after Closing), and any Liability arising from, caused by or arising out of any defective or insufficient warnings, labeling or instructions contained on or provided in connection with any such Products; provided, however, that after Closing the relevant Buyer will supply replacement parts to the relevant Seller on a Manufacturing Costs basis with respect to pre-closing Product Warranty Claims if and to the extent Buyer at such time has the capability to make such replacement parts without design, manufacturing or other changes not paid for by Seller. Until the earlier of Closing or when Delphi shall have determined pursuant to Section 10.9 that Buyer Parent has not submitted the highest or otherwise best Qualified Bid, Buyer shall have access to all Manufacturing Facilities and may have a representative of Buyer, at Buyer's expense, monitor the manufacturing process and quality control process regarding the manufacture of Products to be included in the Inventory.

      **2.2.5** Any and all Environmental Claims, Losses or Liabilities relating to (i) the existence of or a Release of Hazardous Materials at, on, in, or under the Environment at any Real Property arising on or after Closing or (ii) compliance with or failure to comply with any Environmental Laws or any Environmental Permit related to the operation of the Business arising on or after Closing in respect of the Acquired Assets, whether in effect prior to or after the Closing Date;

      **2.2.6** All obligations to fulfill orders relating to Products of the Business outstanding on the Closing Date;

      **2.2.7** Any and all Tax Claims, to the extent that they arise out of or relate to the period after Closing;

**2.2.8**  Liabilities with respect to Global Sale Employees except as otherwise set forth in Section 6.6;

**2.2.9**  All Liabilities that any Buyer assumes or agrees to pay for or be responsible for pursuant to the terms of this Agreement or any Ancillary Agreement or as required by Law due to the transfer of the Business to the Buyers.

**2.2.10**  Tax Liabilities related to the debonding or other change in customs status of the Acquired Assets resulting from the Buyer not establishing the required legal entities and obtaining the necessary authorizations from the relevant Governmental Authority to receive the Acquired Assets in their customs status.

**2.2.11**  Accounts Payable.

**2.2.12**  All Liabilities and obligations of Seller, arising on or after the Closing, with respect to any license rights granted to third parties under the Acquired Intellectual Property, including but not limited to license rights granted to Katcon and KDAC, and any Contracts granting such license rights that relate exclusively to the Acquired Intellectual Property shall be included among the Contracts acquired by Buyer pursuant to Section 2.1.2.E.

**2.3**     **Retained Liabilities.**  Except as referred to in Section 2.2, Buyer will not assume or be deemed to have assumed, and will have no Liability with respect to, any Liabilities of any Asset Seller and such Asset Seller will continue to be responsible for such Liabilities (collectively, "**Retained Liabilities**") including the following:

**2.3.1**  All Product Warranty Claims and Liabilities in the nature of product liability, including any Liability for Claims made for injury to persons and/or property, arising from, caused by or arising out of the manufacture or assembly of any Product manufactured or assembled before Closing, and any liability arising from, caused by or arising out of any defective or insufficient warnings, labeling or instructions contained on or provided in connection with any such Products;

**2.3.2**  Any and all Environmental Claims, Environmental Contamination, Environmental Damages or Liabilities for which Asset Sellers have indemnification obligations to Buyers pursuant to Section 11.4 of this Agreement, including the liabilities referred to in Schedule 2.3.2.

**2.3.3**  Liabilities in respect of employment performed prior to the Closing, except as provided in Section 6.6;

**2.3.4**  Tax Liabilities for periods ending on or before the Closing Date;

**2.3.5**  Subject to Section 2.2.3, any Liability of Asset Sellers arising prior to the Closing Date for administrative fees and expenses that are "allowed administrative expenses" under Section 503(b) of the Bankruptcy Code;

**2.3.6**  Liabilities related to the Excluded Assets;

**2.3.7**  Any Liability arising out of any Proceeding pending as of the Closing Date, relating to a Retained Liability; and

21

**2.3.8** Except as expressly provided in Section 2.2, any Liability of the Asset Sellers arising out of, relating to, or incurred in connection with the businesses retained by the Asset Sellers and which are not arising out of, relating to or incurred exclusively in connection with the Business.

## 2.4 Deferred Items:

**2.4.1 Non-Assignability.** To the extent that any Contract or Permit included in the Acquired Assets is not capable of being assigned (whether pursuant to Section 365 of the Bankruptcy Code or, if inapplicable, then pursuant to the terms of such Contract or other applicable law) to Buyer at the Closing without the Consent of the issuer thereof or the other party thereto or any third party (including a Governmental Authority), or if such assignment or attempted assignment would constitute a breach thereof, or a violation of any Law ("**Deferred Item(s)**"), this Agreement will not constitute an assignment thereof, or an attempted assignment, unless any such Consent is obtained.

**2.4.2 Efforts to Obtain Necessary Consents.** At the applicable Buyer's request, the applicable Seller will, at its expense, use commercially reasonable efforts, and the applicable Buyer will, at its expense, cooperate with Sellers, to obtain the necessary Consents and to resolve the impracticalities of assignment referred to in Section 2.4.1 before or after the Closing.

**2.4.3 If Consents Cannot be Obtained.** To the extent that the Consents referred to in Section 2.4.1 are not obtained by the applicable Seller, or until the impracticalities of assignment referred to therein are resolved, Sellers' sole responsibility with respect to such matters, notwithstanding Section 2.1.2, will be to use, during the twelve (12) month period commencing with the Closing, commercially reasonable efforts, at no cost to Sellers, to: (i) provide to Buyer the benefits of any Deferred Item; (ii) cooperate in any reasonable and lawful arrangement designed to provide such benefits to Buyer, without incurring any financial obligation to Buyer; and (iii) enforce for the account of Buyer and at the cost of Buyer (including attorneys' fees) any rights of Sellers arising from any Deferred Item referred to in Section 2.4.1 against such issuer thereof or other party or parties thereto; provided, that Buyer shall not incur fees or expenses for services performed by Seller under this Section 2.4.3.

**2.4.4 Obligation of Buyer to Perform.** To the extent that any Buyer is provided the benefits pursuant to Section 2.4.3 of any Deferred Item, such Buyer will perform, on behalf of Sellers, for the benefit of the issuer thereof or the other party or parties thereto (including payment obligations) the obligations of Sellers thereunder or in connection therewith and if such Buyer fails to perform to the extent required herein, Sellers, without waiving any rights or remedies that they may have under this Agreement or applicable Laws, may suspend their performance under Section 2.4.3 in respect of the instrument which is the subject of such failure to perform unless and until such situation is remedied; or Sellers may perform at Buyer's sole cost and expense, in which case Buyer will reimburse Sellers' costs of such performance immediately upon receipt of an invoice therefor.

**2.4.5 Standard of Care.** Sellers will have no Liability to any Buyer arising

22

out of the provision of the benefits of the Deferred Items other than for gross negligence or willful misconduct and will have no Liability for actions taken in accordance with the request or direction of Buyer Parent or its Affiliates. Buyers will reimburse Sellers and will hold Sellers harmless from and against all Liabilities, incurred or asserted as a result of Sellers' post-Closing direct or indirect ownership, management or operation of the Deferred Items.

## 3.   PURCHASE PRICE; ADJUSTMENT; ALLOCATION:

**3.1    Deposit Amount.** Buyer Parent has delivered to the Escrow Agent pursuant to the terms of the Deposit Escrow Agreement One Million Seven Hundred Thousand dollars ($1,700,000) (ten (10%) percent of the Preliminary Purchase Price) in immediately available funds (such amount, together with the interest accrued thereon prior to the Closing less any escrow fees, the "**Deposit Amount**"), to be held by the Escrow Agent in an interest bearing account reasonably acceptable to Buyer Parent to serve as an earnest money deposit under this Agreement, and to be released in accordance with the following procedures (which procedures will be set forth in the Deposit Escrow Agreement):

> **3.1.1** Delphi and Buyer Parent will jointly instruct the Escrow Agent to deliver the Deposit Amount on the Closing Date, by wire transfer of immediately available funds, to an account designated by Delphi in the Deposit Escrow Agreement;

> **3.1.2** Upon any breach by a Buyer of this Agreement or the Bidding Procedures, whether or not such breach results in termination of this Agreement, Delphi and Buyer Parent will jointly instruct the Escrow Agent to deliver the Deposit Amount, in accordance with the terms of the Deposit Escrow Agreement, by wire transfer of immediately available funds, to an account designated by Delphi in the Deposit Escrow Agreement, to be retained by Delphi; or

> **3.1.3** Upon termination of this Agreement in accordance with the termination provisions set forth in Article 9 for any reason other than a Buyer breach, then, on: (i) the date which is sixty (60) days after such termination; or (ii) in the event that an Alternative Transaction is completed, the Return Date (which ever is earlier) Delphi and Buyer Parent will jointly instruct the Escrow Agent to deliver the Deposit Amount, by wire transfer of immediately available funds, to an account designated by Buyer Parent in the Deposit Escrow Agreement, to be retained by Buyer Parent.

### 3.2    Preliminary Purchase Price:

**3.2.1** On the Closing Date and subject to the terms and conditions of this Agreement, the Preliminary Purchase Price shall be paid as follows:

**A.**    Buyer Parent, on behalf of Buyers, will pay to Delphi or the Sellers designated by Delphi an amount equal to Seventeen Million dollars ($17,000,000), less the Deposit Amount and less the SDECSC Closing Date Payment (the "**Closing Date Payment**") by wire transfer of immediately available funds, to one or more accounts designated by Delphi.

**B.**    Buyer or Buyer Affiliate of the Acquired Assets of SDECSC

23

located in Shanghai, China shall pay directly to SDECSC an amount equal to Four Million Two Hundred Thousand dollars ($4,200,000) reflecting the part of the Preliminary Purchase Price allocated to such Acquired Assets, by wire transfer of immediately available funds, to an account designated by SDECSC, in local currency of China, Renminbi, or US Dollars and in accordance with the foreign exchange control Law applicable to legal entities in WGQ Free Trade Zone and the China Sale Agreement entered into between such Buyer or Buyer Affiliate and SDECSC, substantially in the form set forth in Exhibit 8.2.2.C (the "**SDECSC Closing Date Payment**").

      **C.** Subject to the terms and conditions of the Deposit Escrow Agreement, the Deposit Amount shall be released to Delphi or the Sellers designated by Delphi pursuant to Section 3.1.1.

      **3.2.2** The Preliminary Purchase Price shall be subject only to an adjustment equal to the difference between the amount of the Benchmark Working Capital and the Final Statement of Working Capital pursuant to Section 3.4 (the "**Price Adjustment**").

### 3.3   Preparation of Closing Working Capital Statement:

      **3.3.1** Within forty (40) days after the Closing Date, Delphi will prepare and deliver to Buyer Parent a Closing Working Capital Statement. The Closing Working Capital Statement shall be prepared in accordance with Schedule 3.3.1, applied on a basis consistent with the financial statements of the Sellers. In addition, the Closing Working Capital Statement will be based on a physical inventory of the Inventory of the Business, and utilizing a methodology, and accounting therefor, in accordance with GAAP, except for PGM components in SDECSC's Inventory which would be valued based on pass through cost to customers, within thirty (30) days before or after the Closing Date. Each Party's out-of-pocket costs associated with such physical inventory count will be borne separately by such Party. Buyers will, after Closing and pending agreement or final determination of the Closing Working Capital Statement, allow Delphi and its Affiliates and their accountants, agents and advisers such access to the Business, all relevant employees and all relevant records, information and other documentation (and will, upon request, provide copies thereof) as is reasonably necessary to enable Sellers to prepare the Closing Working Capital Statement and to settle the Final Closing Working Capital Statement, including access to and the services of key personnel.

      **3.3.2** Buyer Parent will, within thirty (30) days after the delivery by Delphi of the Closing Working Capital Statement, complete its review of such statement. If Buyer Parent disagrees with the Closing Working Capital Statement, Buyer Parent will, on or before the last day of such thirty (30) day period, inform Delphi in writing (the "**Objection**") of disagreements which, on an item by item basis (individually) or in relation to a series of related items, in the aggregate exceed $100,000 (collectively, "**Relevant Items**"). The Parties agree that the Objection will not include objections to the valuation process used to arrive at the Closing Working Capital Statement unless Buyer can demonstrate that the valuation process used was inconsistent with the methodology referenced in Section 3.3.1. Any Objection will specify in reasonable detail the nature of any disagreement so

24

asserted, and include all supporting schedules, analyses, working papers and other documentation. If: (i) no such Objection has been timely provided to Seller; or (ii) the sum of all Relevant Items fails to exceed $100,000, then: (a) the Closing Working Capital Statement will be deemed to be the Final Working Capital Statement; and (b) Sellers' calculations will be final and binding on the Parties of all items therein.

     **3.3.3** If Buyer Parent delivers an Objection set forth in Section 3.3.2, then Delphi will have thirty (30) days following the date it receives the Objection to review and respond to the Objection. If Delphi and Buyer Parent are unable to resolve all of their disagreements with respect to the determination of the foregoing items by the fifteenth (15th) day following Delphi's response thereto, after having used their good faith efforts to reach a resolution, they will refer their remaining differences to a mutually agreed accounting firm (the "**CPA Firm**"), who will, acting as experts in accounting and not as arbitrators, determine on a basis consistent with the requirements of Section 3.3, and only with respect to the specific Relevant Items remaining disputed, whether and to what extent, if any, the Closing Working Capital Statement requires adjustment. Delphi and Buyer Parent will request the CPA Firm to use its commercially reasonable efforts to render its determination within thirty (30) days. In resolving any disputed item, the CPA Firm: (i) will be bound by the principles set forth in this Section 3.3 and Schedule 3.3.1; (ii) will limit its review to matters specifically set forth in the Objection that remain disputed; and (iii) will not assign a value to any item greater than the greatest value for such item claimed by either Party or less than the smallest value for such item claimed by either Party. The CPA Firm's determination will be conclusive and binding upon Delphi and Buyers. Delphi and Buyers will make reasonably available to the CPA Firm all relevant books and records, any work papers (including those of the Parties' respective accountants subject to any conditions such accountants may impose) and supporting documentation relating to the Closing Working Capital Statement, and all other items reasonably requested by the CPA Firm. The "**Final Statement of Working Capital**" shall be: (i) the Closing Working Capital Statement if the Parties so agree or if so determined in accordance with Section 3.3.2; or (ii) if an Objection is made under Section 3.3.2, the Closing Working Capital Statement, as adjusted pursuant to the agreement of the Parties, or as adjusted by the CPA Firm. The fees, costs and expenses of the CPA Firm under this Section 3.3.3: (i) will be borne by Buyer Parent in the proportion that the aggregate dollar amount of such disputed items so submitted that are unsuccessfully disputed by Buyer Parent (as finally determined by the CPA Firm) bears to the aggregate dollar amount of such items so submitted; and (ii) will be borne by Delphi in the proportion that the aggregate dollar amount of such disputed items so submitted that are successfully disputed by Buyers' Parent (as finally determined by the CPA Firm) bears to the aggregate dollar amount of such items so submitted. Whether any dispute is resolved by agreement among the Parties or by the CPA Firm, changes to the Closing Working Capital Statement may be made only for items as to which Buyer Parent has taken exception in the Objection. Except as set forth above, each Party will bear its own expenses incurred in this dispute resolution process, including fees of its accountants, attorneys and other agents.

25

## 3.4   Purchase Price Adjustments:

**3.4.1**   If the Final Statement of Working Capital is less than the amount of the Benchmark Working Capital, Delphi will pay to Buyer Parent an amount equal to such deficiency.  If the Final Statement of Working Capital is greater than the amount of the Benchmark Working Capital, Buyer Parent will pay to Delphi an amount equal to such excess.  Such deficiency or excess payment will be paid in immediately available funds within three (3) Business Days after the ultimate determination of the Final Statement of Working Capital as provided in this Section 3.4.

**3.4.2**   Notwithstanding the foregoing provisions of this Article 3, if any assets or businesses of Delphi South Africa or Katcon or any Acquired Assets are divested or sold in order to secure the Governmental Approvals contemplated by Section 6.12.1 (Competition Clearance) in one or more transactions that, had such transactions occurred prior to Closing, would have impacted the amount of the Benchmark Working Capital, then the amount of the Benchmark Working Capital shall be reduced to give effect to such divestiture or sale as if such divestiture or sale occurred prior to Closing and the Purchase Price shall be adjusted accordingly.  In that event, all calculations pursuant to this Section 3.4 will be effected using such adjusted amount of the Benchmark Working Capital.

**3.4.3**   Notwithstanding the foregoing provisions of this Article 3, any adjustment referred to in this Section 3.4 which is allocated to the Acquired Assets of SDECSC located in Shanghai, China shall be paid to, or refunded by, SDECSC directly according to Section 3.4.1.  The China Sale Agreement shall reflect such adjustment of the SDECSC Closing Date Payment.

**3.4.4**   The Preliminary Purchase Price plus or minus the Price Adjustment pursuant to Section 3.4 is referred to as the "**Purchase Price**."

## 3.5   Allocation of Purchase Price:

**3.5.1**   The Parties agree to allocate the Purchase Price among the Business and the agreements provided herein for transfer of the Business to Buyers and their Affiliates, for all purposes (including financial, accounting and tax purposes) (the "**Allocation**") in a manner consistent with the Allocation Schedule attached as Schedule 3.5.1.

**3.5.2**   Buyer Parent and Delphi will each report the federal, state and local income and other Tax consequences of the purchase and sale contemplated hereby in a manner consistent with the Allocation, including, if applicable, the preparation and filing of Forms 8594 under Section 1060 of the IRC (or any successor form or successor provision of any future tax law) with their respective federal income Tax Returns for the taxable year which includes the Closing Date, and neither will take any position inconsistent with the Allocation unless otherwise required under applicable law.  Delphi will provide Buyer Parent and Buyer Parent will provide Delphi with a copy of any information required to be furnished to the Secretary of the Treasury under IRC Section 1060.

## 4.    REPRESENTATIONS AND WARRANTIES OF SELLERS:

Each Seller represents and warrants, as of the date hereof, severally, to Buyers with respect to the Acquired Assets being sold by such Seller, Delphi South Africa or Katcon, as the case may be (except that the Filing Affiliates represent and warrant, jointly and severally, with respect to the Acquired Assets of the Filing Affiliates), as follows:

**4.1    Organization.**  Each Asset Seller, Delphi South Africa and Katcon is a legal entity duly incorporated or organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization.  Each Seller, Delphi South Africa and Katcon has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted, and is duly qualified or licensed to do business and in good standing in the jurisdictions in which the ownership of its property or the conduct of its business requires such qualification or license, except where the failure to be so qualified or licensed: (i) would not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect on the ability of Sellers to consummate the transactions contemplated by this Agreement; or (ii) with respect to Delphi South Africa or Katcon, would not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

**4.2    Authorization; Enforceability.**  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, as applicable, each Seller has the requisite corporate or other organizational power and authority to: (i) execute and deliver this Agreement and the Ancillary Agreements to which such Seller is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the applicable Ancillary Agreements.  Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, if applicable, the execution and delivery of this Agreement and the Ancillary Agreements by each Seller that is a party to any of such agreements, and the performance by each of them of their respective obligations under any of such agreements, in the case of Delphi have been, and in the case of the other Sellers, prior to the Closing Date will be, duly authorized by all necessary corporate action on the part of such Seller.  This Agreement has been duly executed and delivered by Delphi, and the Ancillary Agreements will be duly executed and delivered by Delphi and each Seller, as applicable, and, assuming due authorization, execution and delivery by Buyer Parent and Buyers, constitutes, or will constitute, a valid and binding agreement of Delphi and each Seller, as applicable, enforceable against each of them in accordance with their respective terms, except: (a) as enforceability may be limited by applicable bankruptcy, reorganization, insolvency, moratorium and other Laws affecting the enforcement of creditors' rights generally from time to time in effect and by general equitable principles relating to enforceability; (b) that enforceability of the provisions of this Agreement requiring consummation of the Sale is subject to entry and effectiveness of the Sale Approval Order; and (c) that enforceability of all other provisions of this Agreement is subject to entry and approval of the Bidding Procedures Order.

### 4.3    Capital Stock of Delphi South Africa and Katcon.

**4.3.1**  Except as set forth on Schedule 4.3: (i) Sellers' one hundred percent (100%) equity stake in Delphi South Africa is owned, directly or indirectly, by the relevant Seller as set forth on Schedule 1 to the Agreement; (ii) the Sale Securities of Delphi South Africa are duly authorized, validly issued, fully paid up and non-assessable and are not subject to any preemptive rights; and (iii) there are no voting trust agreements or other contracts, agreements or arrangements, to

27

which any Seller is a party, restricting voting or dividend rights or transferability with respect to the Sale Securities of Delphi South Africa.

**4.3.2** Except as set forth on Schedule 4.3: (i) Sellers' forty percent (40%) equity stake in Katcon is owned, directly or indirectly, by the relevant Seller as set forth on Schedule 1 to the Agreement; (ii) the Sale Securities of Katcon held by the relevant Seller are duly authorized, validly issued, fully paid up and non-assessable and are only subject to the preemptive right of the joint venture partner in Katcon as set forth in Schedule 4.3; and (iii) there are no voting trust agreements or other contracts, agreements or arrangements, to which any Seller is a party, restricting voting or dividend rights or transferability with respect to the Sale Securities of Katcon.

**4.3.3** Except as set forth on Schedule 4.3, there is no outstanding security, right, subscription, warrant, option, privilege or other agreement, commitment or contract, preemptive, contractual or otherwise that gives the right to: (i) purchase or otherwise receive or be issued any share capital of Delphi South Africa and Katcon or any security of any kind convertible into or exchangeable or exercisable for any share capital of Delphi South Africa or Katcon; or (ii) receive or exercise any benefits or rights similar to any rights enjoyed by or accruing to a holder of share capital of Delphi South Africa or Katcon, including any rights to participate in the equity or income of Delphi South Africa or Katcon, or to participate in or direct the election of any directors of Delphi South Africa or Katcon or the manner in which any share capital of Delphi South Africa or Katcon are voted.

**4.4     No Conflicts or Approvals.** Subject to entry and effectiveness of the Bidding Procedures Order and the Sale Approval Order, except as set forth on Schedule 4.4, the execution, delivery and performance of this Agreement and the Ancillary Agreements by Delphi and each Seller that is a party thereto do not: (i) violate the Organizational Documents of any of the Sellers; (ii) violate any Governmental Order or Law applicable to any of the Sellers or Delphi South Africa, or any of their respective properties or assets; or (iii) require any Governmental Approval, except as set forth in this Agreement and in each case for consents, approvals, authorizations of, declarations or filings with the Bankruptcy Court, except: (x) as would not, individually or in the aggregate, have a Material Adverse Effect or a material adverse effect on the ability of Sellers to consummate the transactions contemplated by this Agreement; or (y) are excused by or unenforceable as a result of the filing of the Bankruptcy Cases or the applicability of any provision of or any applicable law of the Bankruptcy Code.

**4.5     Sufficiency of Acquired Assets.** The Acquired Assets, the assets of Delphi South Africa and Katcon and the Intellectual Property rights to be licensed from Sellers to Buyers pursuant to Section 6.11.1, together with the Excluded Assets set forth on Schedule 4.5, which Sellers will provide within 10 days from signing this Agreement, comprise all of the assets reasonably necessary to carry on the Business in all material respects as it is now being conducted. Buyer acknowledges and agrees that the Sellers have prepared Schedule 4.5 to the best of Sellers' Knowledge and Sellers have included all Excluded Assets they deem material.

**4.6     Compliance with Law; Permits.** Except as set forth on Schedule 4.6 to the Knowledge of Sellers, the Business is currently in material compliance with all Laws, except where noncompliance would not reasonably be expected to have a Material Adverse Effect. To the Knowledge of Sellers, the Sellers possess all material licenses, consents, approvals,

28

permits and other Governmental Approvals ("**Permits**") necessary to own, lease and operate the Acquired Assets and Delphi South Africa, except where the failure to have such Permits would not have a Material Adverse Effect.

     **4.7**    **Proceedings**. Except for claims raised in connection with the pendency of the Bankruptcy Cases, and for the Claims and other items set forth in Schedule 4.7 (and except with respect to compliance with Environmental Laws, which is covered by Section 4.13), there are no material Proceedings pending or, to the Knowledge of Sellers, threatened in writing against any of the Acquired Assets or Delphi South Africa.

     **4.8**    **Absence of Certain Changes**. Except as set forth in Schedule 4.8 or as otherwise contemplated or expressly permitted by this Agreement, since September 10, 2008: (i) the Business has been conducted only in the Ordinary Course of Business; and (ii) there has not been any change or development in or affecting the Business that has had, or would reasonably be expected to have, a Material Adverse Effect.

     **4.9**    **Tax Matters**:

        **4.9.1**  Delphi South Africa has duly and timely filed with the appropriate federal, state, local and foreign authorities or governmental agencies, all material Tax Returns required to be filed with respect to Delphi South Africa and, when filed, to Seller's Knowledge were true, correct and complete.

        **4.9.2**  Delphi South Africa is not a party to any tax allocation, tax sharing agreement or tax indemnity arrangement, except as provided in this Agreement, under which Buyer Parent could be subject to tax or other Liability after the Closing.

        **4.9.3**  Except as disclosed in Schedule 4.9, or as reflected in the financial statements of Delphi South Africa, Delphi South Africa has not received any: (i) notice of underpayment of Taxes or other deficiency that has not been paid with respect to, in connection with, associated with or related to, Delphi South Africa; or (ii) any objection to any Tax Return, with respect to, in connection with, associated with or related to, Delphi South Africa. Except as disclosed in Schedule 4.9, all deficiencies asserted or assessments made as a result of any examinations with respect to, in connection with, associated with or related to, Delphi South Africa have been fully paid or are fully reflected as a liability in the financial statements of Delphi South Africa.

        **4.9.4**  The Sellers have withheld and paid all material Taxes required to have been withheld and paid in connection with amounts paid or owing to any Global Sale Employee.

     **4.10**    **Employment; Employee Benefits**. Regarding the Global Sale Employees:-

        **4.10.1**  Schedule 4.10.1 contains a true and complete list of all Global Sale Employees, including: (i) each such person's title or job/position/job code; (ii) each such person's job designation (i.e., salaried or hourly); (iii) each such person's location of employment; (iv) each such person's employment status (i.e., actively employed or not actively at work (due to, e.g., illness, short-term disability, sick leave, authorized leave or absence, etc.)); (v) each such person's current annual

base rate of compensation; (vi) each person's date of hire; (vii) employee number/identifier; (viii) name of employer/division; (ix) date of birth; (x) gender; (xi) variable pay; (xii) hours of work and (xiii) any material, individual specific provisions relating to such person's employment (e.g., non-compete agreement, separation pay agreement, etc.) to the extent permitted to be disclosed under applicable Law (including local privacy laws).

**4.10.2** Schedule 4.10.2 sets forth a list of each Seller Employee Benefit Plan.

**4.10.3** Copies of the following materials have been delivered or made available to Buyer Parent with respect to each Seller Employee Benefit Plan to the extent applicable: (i) current plan documents; (ii) the most recent determination letter from the Internal Revenue Service; (iii) the most recent summary plan description and summary of material modifications to the extent not included in the summary plan description in each case distributed to employees; (iv) current agreements and other documents relating to the funding or payment of benefits; and (v) the most recent actuarial valuation report, if applicable.

**4.10.4** Except as set forth in Schedule 4.10.4, or where the failure to comply would not reasonably be expected to have a Material Adverse Effect, the Seller Employee Benefit Plans are in substantial compliance with their terms and applicable requirements of ERISA, the IRC and other Laws (if applicable). Each Seller Employee Benefit Plan and related trust which is intended to be qualified within the meaning of Section 401 or 501, as applicable, of the IRC has received a favorable determination letter as to its qualification and, to the Knowledge of Sellers, nothing has occurred that could reasonably be expected to adversely affect such determination.

**4.10.5** Except: (i) as set forth in Schedule 4.10.5 and (ii) routine claims for benefits by participants and beneficiaries, there are no pending or, to the Knowledge of Sellers, threatened Proceedings with respect to any Seller Employee Benefit Plans that would result in a Liability that would have a Material Adverse Effect.

**4.10.6** Except as set forth in Schedule 4.10.6, no event or condition has occurred in connection with which any of the Sellers could be subject to any Liability or Encumbrance under Title IV of ERISA that would have a Material Adverse Effect.

**4.10.7** None of the Filing Affiliates currently have or for the past five (5) years have had an obligation to contribute to a "multiemployer plan" as defined in Section 3(37) of ERISA or Section 414(f) of the IRC.

**4.10.8** With respect to each group health plan that is subject to Section 4980B of the IRC maintained by any entity described in this Section 4.10.8, each member of the Controlled Group (as defined below) have complied with the continuation coverage requirements of Section 4980B of the IRC and Part 6 of Subtitle B of Title I of ERISA, except where the failure to so comply would not reasonably be expected to have a Material Adverse Effect. For purposes of this Agreement, "**Controlled Group**" means any trade or business (whether or not

30

incorporated): (i) under common control within the meaning of Section 4001(b)(1) of ERISA with any of the Sellers; or (ii) which together with any of the Sellers is treated as a single employer under Section 414(t) of the IRC.

**4.10.9** Schedule 4.10.9 lists all or substantially all Collective Bargaining Agreements. Seller has given access or delivered to Buyer true, correct and complete copies of each of the Collective Bargaining Agreements. Except as disclosed on Schedule 4.10.9, Seller is in material compliance with each Collective Bargaining Agreement.

**4.10.10** Except as disclosed on Schedule 4.10.10, or as reflected in the Collective Bargaining Agreements, with respect to the Business: (I) there is no labor strike, dispute, slowdown or stoppage actually pending or, to Sellers' Knowledge, threatened against or involving any Asset Seller or Delphi South Africa; (ii) no Asset Seller nor Delphi South Africa has in the past three (3) years experienced any work stoppage or other labor difficulty or organizational activity; (iii) no labor grievance is pending as of the date of Schedule 4.10.10; and (iv) no Asset Seller nor Delphi South Africa has any labor negotiations in process with any labor union or other labor organization, in each case relating to the Global Sale Employees. Except as set forth on Schedule 4.10.10, or as would not have a Material Adverse Effect, there are no pending claims with respect to the Business against any Asset Seller or Delphi South Africa whether under applicable Laws, employment agreements or otherwise asserted by any Global Sale Employee, including claims on account of or for: (a) overtime pay, other than overtime pay for work done during the current payroll period; (b) wages or salary for any period other than the current payroll period; (c) any amount of vacation pay or pay in lieu of vacation or time off; or (d) any violation of any statute, ordinance or regulation relating to minimum wages or maximum hours at work, and, to Sellers' Knowledge, there are no such claims which have yet to be asserted.

## 4.11   Intellectual Property:

**4.11.1** Schedule 4.11.1 lists all patents and patent applications and all trademark registrations and applications therefor included in the Acquired Intellectual Property. Except: (i) as set forth in Schedule 4.11.1; (ii) instances in which such patents or patent applications are jointly owned with a third party; or (iii) rights retained by employee-inventors pursuant to Law, and subject to Permitted Encumbrances and the rights and limitations established by the Material Contracts, Sellers own the entire right, title and interest in such patents, trademark registrations and applications, and have the right to transfer Sellers' right, title and interest in them as set forth in this Agreement.

**4.11.2** Schedule 4.11.2 lists all internet domain names, registrations, mask work registrations, copyright registrations and all software development agreements and technology development agreements exclusively used in the Business.

**4.11.3** Subject to Permitted Encumbrances and the rights and limitations established by the Material Contracts, Sellers own or otherwise have the right to transfer all other Acquired Intellectual Property and license the Shared Intellectual Property as set forth in this Agreement.

31

**4.11.4** Except as set forth in Schedule 4.11.4, Sellers have no Knowledge of any written claim or notice of or by any third party of infringement or misappropriation arising out of Seller's use of the Acquired Intellectual Property, resulting from the operation of the Business during the last three (3) years, that would have a Material Adverse Effect.

**4.11.5** Except as set forth in Schedule 4.11.5, there is no third-party software utilized by the Business.

**4.12   Contracts:**

**4.12.1** Schedule 4.12.1 sets forth a list as of the dates set forth therein of each of the following Contracts, which are included in the Acquired Assets or to which Delphi South Africa is party and bound as of the date of this Agreement, other than Seller Employee Benefit Plans (collectively, the "**Material Contracts**"):

**A.** Partnership, joint venture agreements or other agreements involving a sharing of profits or expenses by Delphi South Africa or the relevant Seller party thereto with respect to the Business;

**B.** Indentures, mortgages, loan agreements, capital leases, security agreements or other agreements for the incurrence of Debt Obligations, other than letters of credit, overdrafts and other current-account credit facilities entered into in the Ordinary Course of Business, in each case exceeding $250,000;

**C.** Guarantees of the obligations of other Persons involving the potential expenditure by the Sellers in respect of the Business after the date of this Agreement of more than $250,000 in any instance;

**D.** Contracts under which any Seller has licensed material Acquired Intellectual Property to, or material Licensed Intellectual Property from, any other Person;

**E.** Contracts involving the expenditure by the Sellers or Delphi South Africa in respect of the Business of more than $250,000 in any instance for the purchase of materials, supplies, equipment or services, excluding any such Contracts that are terminable by the Sellers without penalty on not more than one hundred eighty (180) days notice; and

**F.** Contracts providing that Delphi South Africa or any Seller in respect of the Business will receive future payments aggregating more than $250,000 per annum or $1,000,000 in the aggregate prior to the expiration of such Contract.

**4.12.2** Except as set forth in Schedule 4.12.2, and other than with respect to monetary defaults by Sellers under Material Contracts that are curable by payment of all Cure Amounts, if applicable, to the Knowledge of Sellers: (i) no event has occurred that constitutes (or with notice or lapse of time would constitute) a default (except with respect to defaults that need to be cured under Section 365 of the Bankruptcy Code for Sellers to assume and assign such

32

Material Contracts to Buyer, if applicable) that would reasonably be expected to have a Material Adverse Effect on: (a) Delphi South Africa or any Seller under any Material Contract; or (b) to the Knowledge of Sellers, any other party to any Material Contract; (ii) there are no material unresolved disputes under any of the Material Contracts; and (iii) the assignment of any Material Contract pursuant to this Agreement will not result in termination of, or result in a right of termination under, any such Material Contract, except where such termination of, or right of termination thereunder, would not have a Material Adverse Effect.

**4.12.3** Except as set forth on Schedule 4.12.3, Sellers have no contracts with any United States Governmental Authority or to Seller's Knowledge, any government contractor, with regard to any Products sold by the Business.

**4.12.4** No Material Contract was entered into on other than an arm's length basis. Except as set forth on Schedule 4.12.4, Sellers have not assigned any of their rights under any of the Material Contracts to any person or entity.

### 4.13 Personal Property.

**4.13.1** Except as set forth on Schedule 4.13.1, the Asset Sellers and Delphi South Africa have good title to, or hold by valid and existing lease or license, all Personal Property reflected in the Businesses' books of account, except with respect to assets disposed of in the Ordinary Course of Business.

**4.13.2** Delphi South Africa and the Asset Sellers, with respect to the Acquired Assets, will own, or have valid leasehold interests in, all Personal Property and Inventory being transferred to Buyers under this Agreement, and to Sellers' Knowledge, all transferred Personal Property used by the Business are in such condition (considering age and purpose for which they are used) as to enable the Business to be conducted as currently conducted without material disruption.

**4.13.3** Schedule 4.13.3 sets forth a list of substantially all machinery, equipment and capitalized tools with a book value greater than $100,000 included in the Acquired Assets or owned by Delphi South Africa.

### 4.14 Real Property:

**4.14.1 Leased Properties.** Schedule 4.14.1 lists all real property leased or subleased by Delphi South Africa or any Asset Seller constituting Acquired Assets (the "**Leased Real Property**"). Delphi has made available to Buyer Parent true and complete copies of the leases and subleases covering the Leased Real Property (as amended to the date of this Agreement). With respect to each lease and sublease and except as otherwise specified on Schedule 4.14.1 or where the failure of any of the following to be true and correct would not reasonably be expected to have a Material Adverse Effect:

**A.** Such lease or sublease is, to the Knowledge of Sellers, in all material respects, enforceable in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting creditors' rights generally and general equitable principles (whether

33

considered in a Proceeding in equity or at law);

**B.**       (i) None of Delphi South Africa or the Asset Sellers is in material breach under any such lease or sublease and, to the Knowledge of Sellers, no event has occurred which, with the passage of time or expiration of any grace period would constitute a material breach of Delphi South Africa's or any Asset Seller's obligations under such lease or sublease (except with respect to breaches that need not be cured under Section 365 of the Bankruptcy Code for the Filing Affiliates to assume and assign such leases or subleases to Buyer, if applicable); and (ii) none of Delphi South Africa or the Asset Sellers has received a notice of material breach with respect to such lease or sublease; and

**4.14.2 Owned Properties.** Schedule 4.14.2 lists all real property owned by an Asset Seller, which constitutes Acquired Assets, or of Delphi South Africa (the "**Owned Real Property**").

**4.15    No Brokers' Fees.** Sellers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the transactions contemplated hereby for which Buyers would be liable.

**4.16    No Other Representations or Warranties.** Except for the representations and warranties contained in this Article 4, neither Delphi nor any other Person makes any other express or implied representation or warranty to Buyers, and in particular (but without limitation) no Seller is making any representations with respect to any plan(s) of Buyers for the future conduct of the Business, or any implied warranties of merchantability or fitness for a particular purpose. For the avoidance of doubt, no warranty or representation is given on the contents of the documents provided in due diligence or with respect to the information contained in the Confidential Information Memorandum, Data Room, Management Presentations, reports or any financial forecasts or projections or other information furnished by Delphi or any Seller or their officers, directors, employees, agents or representatives or in any other documents or other information not contained in this Agreement or the Ancillary Agreements.

**4.17    Fair Disclosure.** Any matter disclosed in any Schedule to this Agreement will be deemed an exception for all other representations and warranties contained in this Agreement whether or not such other representations, warranties or Schedules contain a reference to such Schedule. Any information obtained by any Buyer or any of its advisers during the course of any investigation by or on behalf of Buyer into the affairs of the Business, the Acquired Assets or Delphi South Africa or Katcon shall be deemed to have been disclosed to Buyer Parent as if set forth in the relevant Schedule(s) to this Agreement.

## 5.    REPRESENTATIONS AND WARRANTIES OF BUYERS:

Each Buyer hereby represents and warrants, severally, to each of the Sellers, as of the date hereof and of the Closing Date, as follows:

**5.1    Organization.** Each Buyer is a legal entity duly incorporated or organized, validly existing and in good standing under the Laws of its jurisdiction of incorporation or organization. Each Buyer has the requisite corporate or other organizational power and authority to own, lease and operate its assets and to carry on its business as now being conducted and is duly qualified or licensed to do business and is in good standing in the jurisdictions in which the ownership of its property or the conduct of its business requires such

34

qualification or license, except where the failure to be so qualified or licensed would not reasonably be expected, individually or in the aggregate, to have a material adverse effect on the ability of Buyers to consummate the transactions contemplated by this Agreement.

**5.2    Authorization; Enforceability.** Each Buyer has the requisite corporate or other organizational power and authority to: (i) execute and deliver this Agreement and each Ancillary Agreement to which such Buyer is a party; (ii) perform its obligations hereunder and thereunder; and (iii) consummate the transactions contemplated by this Agreement and the applicable Ancillary Agreements. The execution and delivery of this Agreement and the Ancillary Agreements by each Buyer that is a party to any of such agreements, and the performance by each of them of their respective obligations under any such agreements, in the case of Buyer Parent have been, and in the case of the other Buyers prior to the Closing Date will be, duly authorized by all necessary corporate action on the part of such Buyer. This Agreement has been duly executed and delivered by Buyer Parent, and the Ancillary Agreements will be duly executed and delivered by the applicable Buyers and, assuming due authorization, execution and delivery by Sellers, constitutes, or will constitute, a valid and binding agreement of the applicable Buyers, enforceable against each of them in accordance with their respective terms, except as may be limited by applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar Laws relating to or affecting creditors' rights generally and general equitable principles (whether considered in a proceeding in equity or at law).

**5.3    No Conflicts or Approvals.** The execution, delivery and performance by Buyers of this Agreement and each Ancillary Agreement to which such Buyer is a party and the consummation by Buyers of the transactions contemplated hereby and thereby do not and will not: (i) violate, conflict with or result in a breach by any Buyer of the Organizational Documents of any Buyer; (ii) violate, conflict with or result in a breach of, or constitute a default by any Buyer (or create an event which, with notice or lapse of time or both, would constitute a default) or give rise to any right of termination, cancellation or acceleration under, any note, bond, mortgage, indenture, deed of trust, license, franchise, permit, lease, contract, agreement or other instrument exclusively related to the Business to which any Buyer or any of their properties or assets may be bound; (iii) violate or result in a breach of any Governmental Order or Law applicable to any Buyer or any of their respective properties or assets; or (iv) except for applicable requirements of the HSR Act, the EC Merger Regulation and other applicable Competition/Investment Law, require any Governmental Approval, except, with respect to the foregoing clauses (ii), (iii) and (iv) above, as would not, individually or in the aggregate, have a Material Adverse Effect on the ability of Buyers to consummate the transactions contemplated by this Agreement.

**5.4    Proceedings.** There are no Proceedings pending or, to the Knowledge of Buyers, threatened against any of the Buyers that could reasonably be expected to restrain, delay or inhibit the ability of Buyers to consummate the transactions contemplated by this Agreement. None of the Buyers is subject to any Governmental Order that could reasonably be expected to restrain, delay or otherwise inhibit the ability of Buyers to consummate the transactions contemplated by this Agreement.

**5.5    Solvency.** Upon the consummation of the transactions contemplated by this Agreement: (i) none of the Buyers will be insolvent; (ii) none of the Buyers or the other legal entities constituting the Business will be left with unreasonably small capital; (iii) none of the Buyers or the Business will have incurred debts beyond its ability to pay such debts as they mature; (iv) the capital of Buyers and the other legal entities constituting the Business will not be

35

impaired; and (v) immediately following Closing, Buyers individually and in the aggregate will have sufficient capital to continue the Business as a going concern.

     **5.6**   **Anti-Money Laundering.**  Buyers are in compliance with: (i) all applicable provisions of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (Public Law 107-57) (**"USA PATRIOT Act"**) as amended and all regulations issued pursuant to it; (ii) Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibited Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism; (iii) the International Emergency Economic Power Act (50 U.S.C. 1701 et seq.), and any applicable implementing regulations; (iv) the Trading with the Enemies Act (50 U.S.C. 50 et seq.), and any applicable implementing regulations; and (v) all applicable legal requirements relating to anti-money laundering, anti-terrorism and economic sanctions in the jurisdictions in which any Buyer operates or does business. Neither any Buyer nor any of its directors, officers or affiliates is identified on the United States Treasury Department Office of Foreign Asset Control's (**"OFAC"**) list of "Specially Designated Nationals and Blocked Persons" (the **"SDN List"**) or otherwise the target of an economic sanctions program administered by OFAC, and no Buyer is affiliated in any way with, or providing financial or material support to, any such persons or entities. Buyer Parent agrees that should it or any other Buyer, or any of their directors, officers or affiliates be named at any time in the future on the SDN List, or any other similar list maintained by the U.S. Government, Buyer Parent will inform Delphi in writing immediately.

     **5.7**   **Investment Representations.**

         **5.7.1**  Each Buyer who is acquiring Sale Securities is acquiring such Sale Securities for such Buyer's own account solely for investment and not with a view to, or for sale in connection with, any distribution thereof in violation of the Securities Act or the applicable securities Laws of any other jurisdiction. Each Buyer agrees that it will not transfer any of the Sale Securities, except in compliance with the Securities Act and with the applicable securities Laws of any other jurisdiction.

         **5.7.2**  Each Buyer who is acquiring Sale Securities is an "accredited investor" as defined in Rule 501(a) promulgated under the Securities Act.

         **5.7.3**  Each Buyer who is acquiring Sale Securities understands that the acquisition of the Sale Securities to be acquired by it pursuant to the terms of this Agreement involves substantial risk. Each such Buyer and its officers have experience as an investor in securities and equity interests of companies such as the ones being transferred pursuant to this Agreement and acknowledges that it can bear the economic risk of its investment and has such knowledge and experience in financial or business matters that such Buyer is capable of evaluating the merits and risks of its investment in the Sale Securities to be acquired by it pursuant to the transactions contemplated hereby.

         **5.7.4**  Each Buyer further understands and acknowledges that the Sale Securities have not been registered under the Securities Act or under the applicable securities Laws of any other jurisdiction and agrees that the Sale Securities may not be transferred unless such transfer is pursuant to an effective registration statement under the Securities Act or under the applicable securities Laws of any other jurisdiction, or, in each case, an applicable exemption therefrom.

**5.7.5**    Each Buyer who is acquiring Sale Securities acknowledges that the offer and sale of the Sale Securities has not been accomplished by the publication of any advertisement.  Neither Buyer Parent nor any other Buyer has any plan or intent to sell any of the Acquired Assets or the assets of Delphi South Africa or Katcon outside the Ordinary Course of Business.

**5.8**    **No Inducement or Reliance; Independent Assessment:**

**5.8.1**    With respect to the Sale Securities, the Acquired Assets, the Business or any other rights or obligations to be transferred hereunder or under the Transfer Agreements or pursuant hereto or thereto, Buyers have not been induced by and have not relied upon any representations, warranties or statements, whether express or implied, made by Delphi, any of its Affiliates, or any agent, employee, attorney or other representative of Delphi representing or purporting to represent Delphi or any Seller that are not expressly set forth herein or in the Transfer Agreements (including the Schedules and Exhibits hereto and thereto), whether or not any such representations, warranties or statements were made in writing or orally, and none of Delphi, any Affiliate of Delphi, or any agent, employee, attorney, other representative of Delphi or other Person will have or be subject to any Liability to Buyer Parent, any Buyer or any other Person resulting from the distribution to Buyer Parent, or Buyer Parent's use of, any such information, including the Confidential Information Memorandum and any information, documents or material made available in the Data Room or any Management Presentations or in any other form in expectation of the transactions contemplated by this Agreement.

**5.8.2**    Each Buyer acknowledges that it has made its own assessment of the present condition and the future prospects of the Business and is sufficiently experienced to make an informed judgment with respect thereto.  Each Buyer acknowledges that neither Delphi nor any of its Affiliates has made any warranty, express or implied, as to the prospects of the Business or its profitability for any Buyer, or with respect to any forecasts, projections or business plans prepared by or on behalf of Delphi and delivered to any Buyer in connection with Buyers' review of the Business and the negotiation and the execution of this Agreement.

**5.9**    **Financial Ability.**  Buyers have the financial ability and will have available at Closing sufficient Cash in immediately available funds to pay the Preliminary Purchase Price and thereafter to pay the Purchase Price if greater than the Preliminary Purchase Price, and all costs, fees and expenses necessary to consummate the transactions contemplated by this Agreement.  In particular, Buyer Parent has provided to Sellers evidence of its financial ability to consummate this Agreement and the transactions contemplated hereby.

**5.10**    **Adequate Assurance of Future Performance.**  Each Buyer has provided or will be able to provide, at or prior to Closing, adequate assurance of its future performance under each Assumed U.S. Contract to the parties thereto (other than Sellers) in satisfaction of Section 365(f)(2)(B) of the Bankruptcy Code, and no other or further assurance will be necessary thereunder with respect to any Assumed U.S. Contract.

**5.11**    **No Brokers' Fees.**  Buyers have employed no finder, broker, agent or other intermediary in connection with the negotiation or consummation of this Agreement or any of the

transactions contemplated hereby for which Sellers would be liable.

**5.12 Compliance with Laws.** Buyers are in compliance with all Laws applicable to Buyers, except with respect to those violations that could not reasonably be expected to result in the issuance of an order restraining, enjoining or otherwise prohibiting Buyer from consummating the transactions contemplated by this Agreement.

**5.13 Buyer Entities**. Buyers have existing legal entities in place at each of the jurisdictions where the assets of the Business will be acquired, or if legal entities do not exist in one or more jurisdictions, Buyers will have formed legal entities such that the representations in Sections 5.1, 5.2, and 5.3, above, are accurate with respect to such Buyer affiliated entities within sixty (60) days after this Agreement is signed (but in no event later than ten (10) business days before Closing) for all jurisdictions other than China. The parties recognize that the establishment of an entity in China may take longer than sixty (60) days. Buyer shall use its best efforts to establish an entity in China as soon as reasonably possible, but no later than ten (10) business days before Closing. Anything contained herein to the contrary notwithstanding, the parties acknowledge that the Closing on the purchase of the Acquired Assets of SDECSC may occur at a date later than the Closing set forth in Section 8.

## 6. COVENANTS AND AGREEMENTS:

**6.1 Conduct of Business between Signing and Closing:** Except as: (i) contemplated by this Agreement; (ii) disclosed on Schedule 6.1; (iii) required by, arising out of, relating to or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court; (iv) required by or resulting from any changes of applicable Laws; or (v) set forth in the disclosure of this Agreement or the transactions contemplated hereby, from and after the date of this Agreement and until the Closing, Delphi will cause the Asset Sellers and Delphi South Africa to conduct the operations of the Business in the Ordinary Course of Business, or, if applicable, in accordance with orders entered by the Bankruptcy Court, and use commercially reasonable efforts to maintain and preserve relations with customers, suppliers, employees and others having business relationships with the Business. During the period from the date of this Agreement until Closing or until Delphi shall have determined pursuant to Section 10.9 that Buyer Parent has not submitted the highest or otherwise best Qualified Bid, whichever is earlier, upon reasonable advance notice, the Sellers shall afford to the Buyers, their officers, employees and authorized representatives reasonable access during normal business hours to the offices, properties, employees and business and financial records of the Sellers exclusively with respect to the Business and to the extent Buyers and Sellers shall mutually agree to be reasonably necessary for the purpose of, and in order that Buyers may begin to provide for, the transition of the Business from Sellers to Buyers after the Closing Date. Except: (x) as contemplated by this Agreement or as disclosed on Schedule 6.1; or (y) as required by, arising out of, relating to or resulting from the Bankruptcy Cases or otherwise approved by the Bankruptcy Court, from and after the date of this Agreement and until the Closing, Delphi will cause the Sellers and Delphi South Africa, with respect to the Business, to refrain from doing any of the following without the prior written consent of Buyer Parent (which consent will not be unreasonably withheld or delayed):

> **6.1.1** Purchase or sell any capital stock or other equity interests of Delphi South Africa or grant or make any option, subscription, warrant, call, commitment or agreement of any character in respect of any such capital stock or other equity interests; provided, however, that this shall not limit the ability of Delphi South Africa to issue new capital stock or other equity interests or pay cash dividends or

38

distributions to Delphi or any of its Affiliates, or to repurchase or redeem capital stock or other equity interests held by Delphi or any of its Affiliates, between the date hereof and the Closing Date in accordance with this Agreement in order to make Delphi South Africa cash- and debt-free as of Closing;

**6.1.2** Sell or otherwise dispose of Acquired Assets or assets of Delphi South Africa having an aggregate value exceeding $50,000, excluding sales of Inventory and sales of receivables to financial institutions or credit collection agencies, in each case in the Ordinary Course of Business;

**6.1.3** Merge or consolidate Delphi South Africa with or into any other Person or enter into any agreement requiring any such merger or consolidation;

**6.1.4** Incur, assume or guarantee any Debt Obligation that would become an Assumed Liability;

**6.1.5** Incur any Encumbrance on any material assets of Delphi South Africa or any material Acquired Assets, in each case, other than Permitted Encumbrances;

**6.1.6** Increase the compensation of the Global Sale Employees other than: (i) in the Ordinary Course of Business; or (ii) as required by any agreement in effect as of the date hereof or as required by Law;

**6.1.7** Make any material change in the accounting methods or practices followed by the Business (other than such changes that are: (i) required by Law; (ii) made in conformance with GAAP; or (iii) required in connection with the preparation of the financial statements of Delphi South Africa);

**6.1.8** Terminate or make any material amendment to a Material Contract;

**6.1.9** Enter into or renew any collective bargaining agreements, companywide collective agreements, severance agreements, social plans, special works contracts or compensation arrangements (including any such contracts or agreements that provide for benefits or compensation in the event of a reduction in force or relocation of work) covering Global Sale Employees, except for renewals in the Ordinary Course of Business on terms not materially inconsistent with prior practice;

**6.1.10** Fail to maintain insurance in a manner consistent with Sellers' past practice; or

**6.1.11** Agree or commit to do any of the foregoing.

## 6.2 **Bankruptcy Actions:**

**6.2.1** As soon as practicable after the execution of this Agreement, Delphi will, and will cause the other Sellers that are Filing Affiliates to, file a motion or motions (and related notices and proposed orders) with the Bankruptcy Court seeking approval of the Bidding Procedures Order and entry of a Sale Approval Order, each such order in form and content reasonably acceptable to Buyers.

39

**6.2.2** Delphi will use commercially reasonable efforts to comply (or obtain an order from the Bankruptcy Court waiving compliance) with all requirements under the Bankruptcy Code and Federal Rules of Bankruptcy Procedure in connection with obtaining approval of the sale of the Acquired Assets under the Agreement, including serving on all required Persons in the Bankruptcy Cases, notice of the Sale Motion, the Sale Hearing (as hereinafter defined) and the objection deadline in accordance with Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (as modified by orders of the Bankruptcy Court), the Bidding Procedures Order or other orders of the Bankruptcy Court, and any applicable local rules of the Bankruptcy Court.

**6.3    Assumed U.S. Contracts; Cure Amount.** No later than as soon as practicable after the Auction, Delphi will, pursuant to a motion (which motion may be incorporated into the Sale Motion), move to assume and assign to Buyers the Pre-Petition Contracts listed on Schedule 6.3 (collectively, the "**Assumed U.S. Contracts**") and will provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court. To the extent Cure Amounts exist, Delphi will pay such Cure Amounts as agreed to by Delphi and each party to an Assumed U.S. Contract or, absent such agreement, by order of Bankruptcy Court in the time and manner specified by the Sale Approval Order.

**6.4    Non-Competition:**

**6.4.1** Delphi undertakes and agrees with Buyer Parent that for a period of four (4) years after the Closing Date, except with the consent of Buyer Parent, Delphi will not, and will cause each Affiliate of Delphi to not, either on its own account or in conjunction with or on behalf of any person, firm or company, whether by sales, marketing or other activities, carry on or be engaged, whether as a shareholder, director, employee, investor, partner or agent in carrying on any business which is engaged in the design, development, manufacture, remanufacture or sale of Products as carried on by the Business at the Closing Date (a "**Competitive Business**"); provided, however, that the restrictions contained in this Section 6.4.1 will not prohibit, in any way: (i) the acquisition of a controlling interest or merger with any Person, or a division or business unit thereof, which is not primarily engaged in a Competitive Business, provided that Delphi will use commercially reasonable efforts to divest, as soon as practicable after such acquisition or merger, any portion of the Business of such Person that constitutes a Competitive Business, if the Competitive Business accounts for more than fifteen (15%) percent of the sales of the acquired business; (ii) the acquisition by Delphi or any of its Affiliated companies, directly or indirectly, of a non-controlling ownership interest in any Person or a division or business unit thereof, or any other entity engaged in a Competitive Business, if the Competitive Business accounts for fifteen (15%) percent or less of the sales or fifteen (15%) percent or less of the value of the acquired business at the date of such acquisition (whichever is the greater); (iii) the acquisition by Delphi or any of its Affiliated companies, directly or indirectly, of less than five (5%) percent of the publicly traded stock of any Person engaged in a Competitive Business; (iv) provision of consulting services to, the license of any technology that Delphi or any Delphi Affiliate owns or has license to use to, or the financing (on its own behalf or on behalf of any other Person) of any Person, for the purpose of designing or manufacturing on behalf of Delphi or any Delphi Affiliate or selling to Delphi or any

Delphi Affiliate components and parts for automotive applications other than the Business; (v) consistent with Delphi's troubled supplier practices, any direct or indirect activities of Delphi or any Delphi Affiliate to advise, operate, manage or finance a troubled supplier of Delphi or its Affiliates; or (v) any business or activity conducted by Delphi or any Affiliate, joint venture, subsidiary or division of Delphi (excluding the Business) and any natural extensions thereof as of the Closing Date (each of which will be deemed not to breach this Section 6.4.1), including (a) any activity conducted using the Excluded Assets, and (b) any activity performed by KDAC.

**6.4.2** In the event that the covenants contained in Section 6.4.1 are more restrictive than permitted by Law, the Parties agree that the covenants contained in Section 6.4.1 will be enforceable and enforced to the extent permitted by Law.

## 6.5     Tax Matters; Cooperation; Preparation of Returns:

**6.5.1** Except for Tax Returns related to real and personal property Taxes or other similar ad valorem obligations (collectively "**Property Taxes**"), each Security Seller will be responsible for the preparation and filing of all Tax Returns relating to the Sale Securities for all Tax Returns due on or prior to the Closing Date, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds. Each Security Seller will make all payments required with respect to any such Tax Returns, except as may be prohibited by the Bankruptcy Code. Sellers shall not file any amended or supplements to Tax Returns which would cause a Material Adverse Effect to Buyers without the advance written consent of Buyers. Sellers shall provide copies of Tax Returns at least one (1) week in advance of filing of such Tax Returns to Buyer.

**6.5.2** Except for Tax Returns relating to Property Taxes, Buyers will be responsible for the preparation and filing of all Tax Returns for the Acquired Assets for all periods beginning after the Closing Date, including amended returns, applications for loss carryback refunds and applications for estimated tax refunds. Buyers will make all payments required with respect to any such Tax Returns.

### 6.5.3     Delphi South Africa.

**A.** Sellers will prepare or cause to be prepared and filed all Tax Returns that are required to be filed for Delphi South Africa for all taxable periods ending on or prior to the Closing Date that are required to be filed on or prior to the Closing Date. Sellers will cause Delphi South Africa to make any Tax payments due with these Tax Returns.

**B.** Buyers will prepare or cause to be prepared and file or cause to be filed all Tax Returns that are required to be filed for Delphi South Africa for all taxable periods ending on or prior to the Closing Date that are required to be filed after the Closing Date. Buyers will cause Delphi South Africa to make any Tax payments due with these Tax Returns.

**C.** Each Buyer acknowledges and agrees that Delphi South Africa is sold AS IS, WHERE IS for all Tax purposes.

41

**6.5.4** Buyer shall prepare and file all Tax Returns relating to Property Taxes levied with respect to the Acquired Assets for any taxable period that begins before the Closing Date and ends after the Closing Date (each such taxable period, a "**Straddle Period**"), whether imposed or assessed before or after the Closing Date, other than Straddle Period Tax Returns that Seller is required to file by applicable Law. Seller shall be liable for and shall indemnify Buyer, its Affiliates and each of their respective officers, directors, employees, stockholders, agents and representatives against all Liability for the entire amount of Property Taxes levied for the Straddle Period multiplied by a fraction the numerator of which is the number of days in the Tax period ending on the Closing Date and the denominator of which is the number of days in the entire Tax period. Buyer shall be liable for and shall indemnify Seller, its Affiliates and each of their respective officers, directors, employees, stockholders, agents and representatives against all Liability for the entire amount of Property Taxes levied for the Straddle Period multiplied by a fraction the numerator of which is the number of days in the Tax period beginning on the day following the Closing Date and the denominator of which is the number of days in the entire Tax period. Any credits relating to a Straddle Period shall be taken into account as though the relevant Straddle Period ended on the Closing Date. All determinations necessary to give effect to the foregoing allocations shall be made in a manner that does not accelerate deductions or defer income. With respect to any such Straddle Period returns or filings, the non-filing party shall pay to the filing party, not later than five (5) Business Days before the due date for payment of such Property Taxes levied for the Straddle Period, provided that the non-filing Party has received notice of the allocation at least thirty (30) Business Days prior to the due date for payment under this Section 6.5.4, an amount equal to the portion of such Property Taxes levied for the Straddle Period for which the non-filing party is liable under this Section 6.5.4, and the filing party shall, promptly following the filing thereof, provide the non-filing party with a copy of such return or other filing and a copy of a receipt showing payment of any such Property Taxes levied for the Straddle Period. If notice of the allocation is not provided to the non-filing party at least fifteen (15) Business Days prior to the due date for payment under this Section 6.5.4, the non-filing party shall pay fifteen (15) days after receipt of notice, but shall have no additional liability if the payment is not made at least five (5) Business Days before the due date for payment of such Property Taxes levied for the Straddle Period. For any Tax Returns relating to Property Taxes for the Straddle Period which the Seller was required by Law to file prior to the Closing Date, the Seller shall provide an allocation between Seller and Buyer of the Property Taxes reflected on such returns, applying this Section 6.5.4 and taking into account all payments made as of the Closing Date, as soon as practicable following Closing. The Party with a net liability to the other Party shall make a payment in settlement of the net liability within thirty (30) days following the date on which the allocation is provided. Any payments under this Section 6.5.4 shall be treated as Price Adjustments under Section 3.4.

### 6.5.5 Transfer Taxes.

**A.** Sellers and Buyers will use commercially reasonable efforts and cooperate in good faith to exempt the sale, conveyance, assignments, transfers, and deliveries to be made to the Buyers hereunder from any transfer, documentary, sales, use, registration, recording, stamp, value-added, recapture (such as Chinese VAT and duty recapture on the sale of assets) and other such

taxes (including all applicable real estate transfer taxes, but excluding any taxes based on or attributable to income or gains) and related fees (including notarial fees as well as any penalties, interest and additions to tax) ("**Transfer Taxes**") payable in connection with such sale, conveyance, assignments, transfers and, deliveries, to the extent provided in the Sale Approval Order, in accordance with Section 1146(c) of the Bankruptcy Code. If Bankruptcy Court approval is granted for such exemption, then any instrument transferring the Acquired Assets to the Buyers will contain the following endorsement:

> *Because this [indicate instrument] has been authorized pursuant to Order of the United States Bankruptcy Court for the Southern District of New York relating to a chapter 11 plan of [indicate Seller], it is exempt from transfer taxes, stamp taxes, or similar taxes pursuant to 11 U.S.C. § 1146(c).*

**B.** To the extent not exempt under Section 1146 of the Bankruptcy Code and approved in the Sale Approval Order, all Transfer Taxes arising out of or incurred in connection with this Agreement will be borne by the party upon whom the applicable law, regulation or custom of the jurisdiction imposes the obligation to pay or, where no law, regulation or custom exists, shall be borne by the Buyer. The party that is legally required to file a Tax Return relating to Transfer Taxes will be responsible for preparing and timely filing such Tax Return.

**6.5.6** Delphi and Buyer Parent will cooperate in connection with: (i) the preparation and filing of any Tax Return, Tax election, Tax consent or certification or any claim for a Tax refund; (ii) any determination of liability for Taxes; and (iii) any audit, examination or other proceeding in respect of Taxes related to the Business or the Acquired Assets; provided that, Buyer Parent shall not be obligated to agree to a Tax election, consent or certification or amendment or supplement to a Tax Return which would cause a Material Adverse Effect. Such cooperation includes, but is not limited to, direct access to accounting and finance personnel.

## 6.6 **Employees; Benefit Plans; Labor Matters:**

**6.6.1** **U.S. Employees:** Schedule 6.6.1 sets forth the U.S. Employees to which Buyer will offer employment pursuant to this Section 6.6.

### A. **Transfer of U.S. Employees.**

(i) Subject to Section 6.6.1.A(ii), effective as of the Closing, the relevant Buyer will offer employment to all Active U.S. Employees set forth on Schedule 6.6.1 with such new employment to commence (if accepted, whether by reporting to work or otherwise) with effect from the Closing. For purposes of this Section 6.6, "**Active U.S. Employees**" means those salaried or hourly Employees who are actively employed as of the Closing Date. "**Inactive U.S. Employees**" means those U.S. Employees set forth on Schedule 6.6.1 who, as of the Closing Date, are on a leave of absence, sick leave, or short term disability or otherwise not actively performing their work during all normally scheduled business

43

hours. The relevant Buyer will offer employment to all Inactive U.S. Employees who, within one year following the Closing Date, return to active status in accordance with Seller's policies and procedures.

(ii) For all Active U.S. Employees and, when appropriate, Inactive U.S. Employees set forth on Schedule 6.6.1 (i) Buyers' offer of employment shall be on terms substantially comparable in the aggregate to those in place immediately prior to Closing (provided, however, that only those of Seller's Employee Benefit Plans in which U.S. Employees set forth on Schedule 6.6.1 are eligible to participate in and that have been in effect for at least one year and have not been suspended, delayed or terminated in any way, shall be included in the comparison) and shall include a waiver and release by the U.S. Employee with respect to any and all severance payments by any Seller and (ii) Buyer will maintain Sellers' vacation policy in effect as of the Closing Date for a minimum period of one (1) year following the Closing Date provided, however, that Buyer assumes no liability for unpaid vacation or other benefits accrued prior to the Closing Date. Prior to tendering such offers, Buyers will provide Sellers with information sufficient to satisfy Sellers (not to be unreasonably withheld) that such offers meet the "substantially comparable in the aggregate" requirement. For all such U.S. Employees, Buyers will maintain the requisite level of compensation and benefits (including the vacation policy described above) for a minimum of one (1) year following the Closing Date.

(iii) Sellers will retain responsibility for all Liabilities for workers' compensation benefits related to injuries or illnesses incurred by U.S. Employees set forth on Schedule 6.6.1 prior to the Closing.

(iv) Seller will remain responsible for all employment rights of U.S. Employees set forth on Schedule 6.6.1 incurred or vesting prior to the Closing.

**B. Employee Benefit Plans:**

(i) U.S. Employees' (set forth on Schedule 6.6.1) and their dependents' and beneficiaries' participation in and eligibility for benefits under the Seller Employee Benefit Plans (other than vested pension benefits) will cease as of the Closing. Notwithstanding the preceding sentence, the Seller Employee Benefit Plans which are welfare plans as defined under ERISA will retain liability for all claims incurred by the U.S. Employees set forth on Schedule 6.6.1 and their dependents and beneficiaries prior to the Closing, including claims which are not submitted until after the Closing. A claim will be deemed incurred, as applicable:

(1) On the date of the occurrence of death or dismemberment in the case of claims under life insurance and accidental death and dismemberment Seller Employee Benefit Plans;

(2) On the date on which the service or treatment is

44

provided in the case of claims under medical, hospital, dental and similar Seller Employee Benefit Plans; or

(3) On the date immediately following a U.S. Employee's last day worked on which a physician legally licensed to practice medicine certifies to total disability under the applicable disability Seller Employee Benefit Plans.

(ii) Active U.S. Employees who accept employment with Buyer and Inactive U.S. Employees when they accept employment with Buyer (set forth on Schedule 6.6.1) and their dependents' and beneficiaries' participation in and eligibility for benefits under the Buyer Employee Benefit Plans will commence as of the date they are first employed by Buyer.

(iii) Buyer will recognize each U.S. Employee's (set forth on Schedule 6.6.1) pre-closing length of service and credited service with Seller or its Affiliates for eligibility and vesting purposes but not benefit accrual purposes with respect to Buyer's Employee Benefit Plans but only to the extent recognized under Seller's comparable Employee Benefit Plan. In no case, however, would credited service be recognized under this provision if such recognition would cause a duplication of compensation or benefits as between Buyer and Seller.

(iv) Except as provided in Section 6.6.1C(ii), Seller retains all liabilities and obligations arising under or pursuant to Seller's Employee Benefit Plans. Seller shall indemnify and hold Buyer harmless from and against any and all liabilities arising under or pursuant to Seller's Employee Benefit Plans.

## C. Severance.

(i) Sellers will retain all obligations and liabilities relating to any claims for severance, termination (actual or constructive), redundancy or change in control agreements by U.S. Employees not set forth on Schedule 6.6.1 triggered by, arising in connection with or resulting from the transactions contemplated under this Agreement and by U.S. Employees listed in Schedule 6.6.1 who are offered employment by Buyer on terms substantially comparable in the aggregate to those in place immediately prior to Closing as more fully provided in Section 6.6.1A(ii) but who do not accept such employment.

(ii) Except as provided in Section 6.6.1C(i) Buyer will assume all obligations and liabilities relating to any claims for severance, termination (actual or constructive), redundancy, or change in control agreements by U.S. Employees set forth on Schedule 6.6.1 arising after Closing. If a Buyer terminates the employment of a U.S. Employee set forth on Schedule 6.6.1 during the one (1) year period following the Closing Date under circumstances that would have rendered such U.S. Employee eligible for severance benefits had such termination occurred prior to Closing Date, provide such employee the greater of (a) the severance benefits provided for under the terms of Seller's severance

45

plan applicable as of the Closing Date, taking into account such U.S. Employee's combined service with Buyer or (b) the severance benefits under any applicable Buyers' severance plan or policy.  After the Closing, neither Delphi nor any Seller or any of their Affiliates will have any liability for severance, redundancy, termination or otherwise for U.S. Employees set forth on Schedule 6.6.1 who accept employment with Buyer in connection with the transactions contemplated herein, except as required by applicable law, in which case Buyer will indemnify and hold Seller harmless for any claims or liabilities.

**D.**   **COBRA.**  Seller retains all obligations relating to compliance with the continuation health care coverage requirements of Code Section 4980B and Sections 601 through 608 of ERISA regarding qualifying events in regard to U.S. Employees set forth on Schedule 6.6.1 arising from the transactions contemplated under this Agreement.  Sellers will retain responsibility for all Liabilities, obligations, commitments, costs and expenses for claims of the U.S. Employees (or dependents thereof who become a "qualified beneficiary" within the meaning of Section 4980B(g)(1) of the Code) related to compliance with the requirements of continuation coverage under Section 4980B of the Code or Section 601 of ERISA or as the result of any "qualifying event" within the meaning of Section 4980B(f)(3) of the Internal Revenue Code which occurs prior to the Closing.

**E.**   **WARN Act.**  Buyers will assume all obligations and liabilities relating to the WARN Act or other similar notice Laws, if any, related to any post-Closing actions of the Buyer.  Sellers will retain all obligations and liabilities relating to the WARN Act or other similar notice Laws, if any, related to any pre-Closing actions of the Seller.

**F.**   **Cooperation.**  Sellers and Buyers will provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Section 6.6.1.

**G.**   **401(k) Plans.**  To the extent allowed under applicable Law, U.S. Employees set forth on Schedule 6.6.1 who become eligible for a distribution of their account balances in the Seller's Savings-Stock Purchase Plan (a 401(k) plan) will be permitted, at their discretion, to transfer such account balances to Buyer's defined contribution plan.  The manner of such transfer will be a direct rollover.

**6.6.2   European Employees:**   Except as otherwise provided in the relevant Transfer Agreement, the Parties agree as follows:

### A.   Transfer of European Employees:

(i)   Delphi and Buyer Parent intend and acknowledge that the transfer of the relevant Business to the relevant local Buyer on Closing shall, with respect to the European Employees, constitute a Relevant Transfer, and agree that as a consequence of that Relevant Transfer, the contracts of employment made between the relevant local Sellers and the

46

relevant European Employees and the Collective Bargaining Agreements listed in Schedule 4.10.9, if applicable, (save insofar as such contracts relate to benefits for old age, invalidity or survivors under any occupational pension scheme) will have effect from and after Closing as if originally made between the relevant local Buyer and the relevant European Employees.

(ii)     The relevant local Buyer shall treat the period of continuous service of each relevant European Employee employment with the relevant local Seller or its Affiliates up to Closing as continuous with such relevant European Employee's service with the relevant local Buyer after Closing.  All employee benefits of each relevant European Employee shall transfer to the Buyer by operation of Law.  To the extent contemplated by applicable Law and local agreements setting forth specific benefits for employees, all current employment terms and conditions of the European Employees will continue with the relevant local Buyer.

## B.     Union and/or Works Council Notifications

(i)     The relevant local Buyers and relevant local Sellers shall comply with their obligations to notify and consult with the relevant employees, employees' representatives, works councils, unions, labour boards and relevant governmental agencies and governmental officials in accordance with applicable laws, concerning the transactions contemplated by this Agreement and the relevant Transfer Agreement, if applicable.

(ii)     The relevant local Buyers shall cooperate and provide to the relevant local Sellers the documents and information required in the course of the works council and union notifications. The relevant local Buyers and relevant local Sellers shall also attend meetings with employees, employees' representatives, works councils, unions, labour boards when required.

## C.     European Employees Remaining Employed by the Relevant Local Sellers. If it is found or alleged that any of the European Employees remains an employee of the relevant local Seller after Closing due to the fact that the Transfer Regulations are not applicable for any reason to such European Employees:

(i)     The relevant local Seller shall notify the relevant local Buyer of that finding or allegation as soon as reasonably practicable after becoming aware of it;

(ii)     in consultation with the relevant local Seller, the relevant local Buyer shall within seven (7) days of becoming aware of the finding or allegation make that person a written offer of employment to commence immediately on the same terms and conditions as the relevant local Buyer would be obligated to provide to that person if his employment had transferred pursuant to the Transfer Regulations and under which the

47

relevant local Buyer agrees to recognise that person's period of service
with the relevant local Seller, and the relevant local Seller shall give all
reasonable assistance requested by the relevant local Buyer to persuade
that person to accept the offer;

(iii)    if the offer of employment made by the relevant local Buyer
is accepted by that person, the relevant local Seller agrees to permit that
person to leave the relevant local Seller's employment without having
worked his full notice period, if that person or the relevant local Buyer so
requests;

(iv)    the relevant local Seller may within twenty eight (28) days
after becoming aware of that allegation or finding, if that person is still or
still claims to be an employee of the relevant local Seller and has not
accepted an offer of employment with the relevant local Buyer, dismiss
that person with immediate effect in accordance with applicable law; and

(v)    in accordance with Section 11.5, the relevant local Buyer
shall indemnify and keep indemnified the relevant local Seller against all
costs, claims, liabilities and expenses (including reasonable legal
expenses) which the relevant local Seller may suffer or incur in respect of
that dismissal provided that the relevant local Seller takes all reasonable
steps to minimize such costs, claims, liabilities and expenses (including,
for the avoidance of doubt, by following the statutory dispute resolution
procedures where applicable).

**D.    Other Transferring European Employees.** If as a result of the
sale of the relevant Business and/or the Transfer Regulations, it is found or
alleged that the employment of any person other than the European Employees,
or any liability associated with the employment of such persons or their
termination, have transferred to the relevant local Buyers on or after Closing
pursuant to the Transfer Regulations:

(i)    the relevant local Buyer shall notify the relevant local Seller
of that finding or allegation as soon as reasonably practicable after
becoming aware of it;

(ii)    in consultation with the relevant local Buyer, the relevant
local Seller shall within seven (7) days of becoming aware of that
allegation or finding make that person a written offer of employment, to
commence immediately, on the same terms and conditions as that person
was employed prior to the transfer (actual or alleged), and under which
the relevant local Seller agrees to recognise that person's seniority status
and prior service with the relevant local Seller and any Affiliate of Seller,
and relevant local Buyer shall give all reasonable assistance requested
by the relevant local Seller to persuade that person to accept the offer,
provided however, at least ten (10) Business Days before such offers are
to be given to any such employees, the Buyer shall present the draft offer
letter to Delphi for examining the terms and conditions contained therein
in order to verify the compliance by the relevant Buyer with the terms and
conditions of this Section 6.6.2.D;

48

(iii)     the relevant local Buyer may within twenty eight (28) days after becoming aware of that allegation or finding, if that person is still or still claims to be an employee of the relevant local Buyer and has not accepted an offer of employment with the relevant local Seller, dismiss that person with immediate effect; and

(iv)     in accordance with Section 11.5, the relevant local Seller shall indemnify and keep indemnified the relevant local Buyer against all costs, claims, liabilities and expenses (including reasonable legal expenses) which the relevant local Buyer may suffer or incur in respect of that dismissal and the employment of that person at any time up to the date of the dismissal and any other claim brought by that person (or any representative of that person), in each case:

(1)     provided that the relevant local Buyer takes all reasonable steps to minimise such costs, claims, liabilities and expenses (including, for the avoidance of doubt, by following the statutory dispute resolution procedures where applicable); and

(2)     save to the extent that the relevant local Buyer is able to claim successfully in respect of any such costs, claims, liabilities and expenses under the terms of an employer's liability insurance policy transferring by operation of law from the relevant local Seller to the relevant local Buyer.

**E.     Buyer Employee Benefit Plans**. The Buyer shall retain and shall not change the Seller Employee Benefit Plans offered to the European Employees by the relevant Sellers prior to the Closing for a period contemplated by applicable Law and local agreements setting forth specific benefits for employees.

**F.     Workers' Compensation**. Sellers will retain responsibility for Liabilities for all workers' compensation benefits related to injuries or illnesses incurred by the European Employees prior to the Closing, provided that claims for such Liabilities are filed within twelve (12) months of the Closing Date. All other such Liabilities will be the responsibility of the Buyer.

**G.     Vacation, Holiday Pay and Social Fund**.   Buyer will assume Seller's outstanding obligations in respect of accrued holiday entitlements and accrued holiday remuneration of the European Employees at Closing. In addition the relevant Buyer will assume the relevant part of the social fund from the relevant Seller if it is required by Law.

**H.     Severance and Redundancy**.     Except with respect to the European Employees who are terminated by the relevant local Seller or any of its Affiliates prior to the Closing Date, neither Seller nor any of its Affiliates shall have any liability to any European Employees for severance, redundancy, termination, or otherwise after Closing. Buyer shall be responsible for any liability to any European Employees in connection with the transactions contemplated by this Agreement.  When Seller is required to pay severance to the European Employees who reject an offer of employment from the relevant local Buyer in situations where the Transfer Regulations do not apply or the employees object

49

to the transfer of their employment to the relevant Buyer when permitted by applicable law, the Buyers are restricted from recruiting or hiring such employees until the first anniversary of the Closing. The relevant Buyer shall reimburse the relevant Seller for any and all such severance pay paid by relevant Seller immediately but not less than ten (10) Business Days after any such employee is hired by the relevant Buyer in violation of the preceding sentence.

**6.6.3 Asia Pacific Employees:** Schedule 6.6.3.1 sets forth a table listing the aggregate actual annual costs to Sellers for the benefits provided to the Global Sale Employees in Australia. Schedule 6.6.3.2 sets forth a table listing the aggregate actual annual costs to Sellers for the benefits provided to the Global Sale Employees in China. Each of Schedules 6.6.3.1 and 6.6.3.2 provides the total aggregate liability of Sellers for severance costs associated with the termination of each Global Sale Employee in Australia and China, and shall be updated to reflect any attrition as of the day prior to Closing (the "Total Australia/China Severance Liability").

### A. Transfer of Asia Pacific Employees.

(i) No later than forty-five (45) days after the date hereof, the Buyer Parent will determine and notify Delphi as to which Global Sale Employees in Australia (the "**Australia Employees**") and China (the "**China Employees**"), respectively, it will make an offer of employment.

(ii) No later than thirty (30) days prior to Closing, the relevant local Buyers will make an offer of employment to the Australia Employees, the China Employees and all Global Sale Employees in India with such new employment to commence (if accepted, whether by reporting to work or otherwise) with effect from the Closing Date; provided however, that (a) the offer shall include a waiver and release by the Transferred Asia Pacific Employee with respect to any and all severance payments by any Seller and (b) at least ten (10) Business Days before such offers are to be given to any of the Asia Pacific Employees, the Buyer shall present the draft offer letter to Delphi for examining the terms and conditions contained therein in order to verify the compliance by the relevant Buyer with the terms and conditions of this Section 6.6.3. The offer of employment shall be in accordance with the governing Law in the jurisdiction where such Asia/Pacific Employee is located. If applicable, the relevant local Buyer will assume the employment contracts of any Transferred Asia Pacific Employees in accordance with the Transfer Regulations and the relevant Transfer Agreement. Buyers will comply with all requirements of the Transfer Regulations, if applicable, and will, in any event, assume and recognize the seniority status and prior service of all Transferred Asia Pacific Employees for the entire period of each employee's accumulated service years with the respective Seller and any Affiliate of the Seller for all purposes of the continued employment with the relevant local Buyer, including with respect to any Buyer Employer Benefit Plan as if every benefit or entitlement had been accrued by the respective Transferred Asia/Pacific Employee while in the employment of the relevant local Buyer.

50

(iii) For all Asia Pacific Employees, Buyer's offer of employment (or assumption of employment contract as applicable) will be on the same terms, at the same level of compensation and with the same benefits in place immediately prior to Closing and all employment terms and conditions existing as of the Closing Date shall remain unchanged for one (1) year after the Closing Date. The specific terms governing the offer of employment to any Asia/Pacific Employee will be agreed between the parties and set forth in the applicable Transfer Agreements and/or in compliance with applicable Transfer Regulations.

(iv) SDECSC shall take no action intended to cause any China Employee to not accept employment with the local Buyer.

(v) Effective from the Closing Date, the Buyer will assume and will be solely responsible for:

(1) all accrued, unpaid and untaken long service leave, sick/personal leave and rostered day off leave entitlements of the Transferred Asia Pacific Employees attributable to the period prior to Closing and the liability balance sheet provisions set out in Schedule 6.6.3; and

(2) all wages and salary, long service leave, sick/personal leave, rostered day off leave and contributions to personal pension schemes to which any Transferred Asia Pacific Employees are entitled, all statutory contributions and all income tax and national insurance contribution deductibles and all other entitlements of the Transferred Asia Pacific Employees from and after the Closing Date.

(vi) For Asia Pacific Employees employed by a Seller in India, the assets and associated liabilities of the Delphi Provident Trust Funds, the Delphi Employees Gratuity Trust Fund and the Delphi Superannuation Fund shall be transferred to Buyer as set forth in the India Sale Agreement.

## B. Severance and Redundancy Payments.

(i) Neither Seller nor any of its Affiliates shall have any liability to any Transferred Asia Pacific Employee for severance, redundancy, termination or otherwise (i) after Closing or (ii) before Closing so long as such liability is triggered in any way by the transactions contemplated by this Agreement. For the avoidance of doubt, Buyer shall be responsible for any liability to any Transferred Asia/Pacific Employee in connection with the transactions contemplated by this Agreement.

(ii) To the extent that Australia Employees and China Employees shall accept fewer offers by the relevant local Buyers to absorb, in the aggregate, sixty percent (60%) of the Total Australia/China Severance Liability, Buyers shall indemnify and hold Sellers harmless for any Shortfall (as hereinafter defined) through the payment of cash within ten (10) days of invoice. For the avoidance of doubt, if an Australia Employee or a China Employee rejects an offer from Buyer, Buyer shall indemnify and hold Seller harmless from and against any severance or

51

redundancy Losses as if Buyer had not made an offer to such Australia Employee or China Employee (i.e. to the extent that Transferred Australia Employees and Transferred China Employees absorb, in the aggregate, less than sixty percent (60%) of the Total Australia/China Severance Liability). For the purposes of this Section, "Shortfall" shall mean the difference between the amount absorbed based on offer acceptance and sixty percent (60%) of the Total Australia/China Severance Liability, as exemplified in Schedule 6.6.3.B(ii).

(iii)     Seller shall retain responsibility for any liability to any Global Sale Employee listed on Schedules 6.6.3.1 and 6.6.3.2 to which Buyer shall not make an offer. In the event Seller shall be required to pay severance to Asia Pacific Employees, Buyers are restricted from recruiting or hiring such employees until the first (1st) anniversary of the Closing unless Buyer shall reimburse Seller for any and all such severance paid by it to any of such subsequently recruited or hired Asia/Pacific Employee.

**C.     Buyer Employee Benefit Plans.** Buyer shall retain and shall not change the Seller Employee Benefit Plans offered to the Asia Pacific Employees by the relevant Seller prior to Closing for a period of one (1) year after the Closing Date. If required by law, the relevant local Buyer will offer the Transferred Asia Pacific Employees a choice of superannuation fund in accordance with local Law.

**D.     Workers' Compensation.** Except with respect to Transferred Australia Employees, Liabilities, obligations, commitments, costs and expenses for workers' compensation benefits related to injuries or illness incurred by Transferred Asia Pacific Employees on or after the Closing or filed more than twelve (12) months after the Closing (even if related to a pre-Closing injury or illness), shall be the responsibility of the relevant local Buyer. In the case of Transferred Australia Employees, only Liabilities, obligations, commitments, costs and expenses for workers' compensation benefits related to injuries or illness incurred on or after the Closing shall be the responsibility of the relevant local Buyer.

**E.     Cooperation.** Sellers and Buyers shall provide each other with such records and information as may be reasonably necessary, appropriate and permitted under applicable Law to carry out their obligations under this Section 6.6.3.

**F.     Collective Bargaining Agreements.** Buyers will assume the terms and conditions of all of the Collective Bargaining Agreements (or their equivalent under applicable Law) applicable to the Transferred Asia Pacific Employees.

**G.     Union and Works Council Notifications.** Sellers and Buyers will reasonably cooperate in connection with any notification required by Law to, or any required consultation with, or the provision of documents and information to, the employees, employee representatives, work councils, unions, labor boards and relevant government agencies and governmental officials concerning the

52

transactions contemplated by this Agreement.

### 6.6.4  South Africa Employees:

**A.     Continued Employment of South Africa Employees.**  Seller and Buyer will collectively update Schedule 4.10.1 as of the day prior to Closing with respect to the South Africa Employees.

(i)     All South Africa Employees shall remain employed by Delphi South Africa. Buyer will, in any event, assume and recognize the seniority status and prior service of all South Africa Employees for the entire period of each employee's accumulated service years with Delphi South Africa and any Affiliate of Delphi South Africa for all purposes of the continued employment with Delphi South Africa, including with respect to any Buyer Employer Benefit Plan, if applicable, in accordance with local law.

(ii)     For all Global Sale Employees designated on Schedule 4.10.1 as South Africa Employees, their continued employment will be on the same terms, at the same level of compensation and with the same benefits in place immediately prior to Closing and all employment terms and conditions existing as of the Closing Date shall remain unchanged for one (1) year after the Closing Date (save for increases in or adjustments to remuneration in the Ordinary Course of Business).

**B.     Severance and Redundancy Payments.**  Neither Seller nor any of its Affiliates shall have any liability to any South Africa Employees for severance, redundancy, termination or otherwise after Closing. Buyer shall be responsible for any liability to any South Africa Employees in connection with the transactions contemplated by this Agreement or otherwise required by Law.

**C.     Employee Benefit Plans.**  Save as required by and subject to local Law, Buyer shall retain and shall not change any Employee Benefit Plans offered at Delphi South Africa prior to Closing for a period of one (1) year after the Closing Date.

**D.     Collective Bargaining Agreements.**  Subject to the terms of any applicable Collective Agreement, Buyer shall retain and shall not change any Collective Bargaining Agreement (or its equivalent under applicable Law) applicable to the South Africa Employees.

**E.     Union and Works Council Notifications.**  Sellers and Buyers will reasonably cooperate in connection with any notification required by Law to, or any required consultation with, or the provision of documents and information to, the employees, employee representatives, work councils, unions, labor boards and relevant government agencies and governmental officials concerning the transactions contemplated by this Agreement.

**6.6.5  Contact with Employees.**  With respect to any Global Sale Employee, no Party shall take any action or make any statement that is intended to discourage the employees attributable to the Business to transfer their employment

53

> relationship. No Party shall send any written communication to or otherwise communicate with any Global Sale Employee regarding such employee's post-Closing status with the Buyer without first submitting to the other Party for pre-approval (which approval shall not be unreasonably withheld or delayed) (i) copies of all written documents to be delivered to employees; and (ii) a summary of all talking points.

**6.7   Contact with Customers and Suppliers.**   Prior to the Closing, except in the Ordinary Course of Business as a supplier to certain customers and without discussing the Sale, Buyer Parent and its Affiliates and their respective representatives will contact and communicate with the Global Sale Employees, customers, suppliers and licensors of the Business in connection with the transactions contemplated by this Agreement only with the prior written consent of Delphi, which consent may be conditioned upon a designee of Delphi being present at any such meeting or conference.

**6.8   Technical Documentation.**   Sellers have delivered, or will deliver on or before the Closing, to the Buyer, a copy of all Technical Documentation included in the Acquired Assets.  For a period of not less than ten (10) years commencing at the Closing, Buyers will use reasonable efforts to maintain all Technical Documentation applicable to Product design, test, release and validation at a location at which it will be reasonably accessible to Delphi upon request.  During such ten (10) year period, Buyers will not destroy or give up possession of the final copy of such Technical Documentation without offering Delphi the opportunity to obtain a copy of such documentation at Delphi's expense but without any payment to Buyers.

**6.9   Books and Records and Litigation Assistance From and After Closing:**

> **6.9.1**   Buyer Parent will preserve and keep all books, records, computer files, software programs and any data processing files delivered to Buyer by Seller and its Affiliates pursuant to the provisions of this Agreement for a period of not less than five (5) years from the Closing Date, or for any longer period as may be required by any Law, Governmental Order or in connection with any litigation, audit or appeal of Taxes, or Tax examination, at Buyer's sole cost and expense.  During such period, Buyer will: (i) provide Seller with such documents and information as necessary to complete the accounting books and records of each facility included within the Business, consistent with past practice; and (ii) make such books and records available to Seller and its Affiliates as may be reasonably required by Seller and its Affiliates in connection with any legal proceedings against or governmental investigations of Seller and its Affiliates or in connection with any Tax examination, audit or appeal of Taxes of Seller and its Affiliates, the Business or the Acquired Assets.   Seller or its Affiliates will reimburse Buyer for the reasonable out-of-pocket expenses incurred in connection with any request by Seller to make available records pursuant to the foregoing sentence.  In the event Buyer wishes to destroy or dispose of such books and records after five (5) years from the Closing Date, it will first give not less than ninety (90) days' prior written notice to Seller, and Seller will have the right, at its option, upon prior written notice given to Buyer within sixty (60) days of receipt of Buyer's notice, to take possession of said records within ninety (90) days after the date of Buyer's notice to Seller hereunder.

> **6.9.2**   Buyers will, at the reasonable request of Sellers, cooperate fully with Sellers in providing Sellers and their Affiliates (as appropriate) (to the extent

54

possible through Global Sale Employees) with technical assistance and information in respect of any claims brought by or against Sellers and their Affiliates involving the conduct of the Business prior to Closing, including consultation and/or the appearance(s) of such persons on a reasonable basis as expert or fact witnesses in trials or administrative proceedings. Sellers will reimburse Buyers and their Affiliates for their reasonable out-of-pocket costs (travel, hotels, etc.) of providing such services and reasonable, actual direct employee time costs for any appearances. Buyers, for themselves and on behalf of their Affiliates, agree to: (i) retain all documents required to be maintained by Law and all documents that may be reasonably required to establish due care or to otherwise assist Sellers and their Affiliates in pursuing, contesting or defending such claims; (ii) make available their documents and records in connection with any pursuit, contest or defense, including documents that may be considered to be "confidential" or subject to trade secret protection (except that: (a) no documents or records protected by the attorney client privilege in favor of Buyers and their Affiliates must be made available if making these documents or records available would cause the loss of this privilege (in any case, however, Buyers must notify Sellers of the existence of such privileged documents); and (b) Sellers and their Affiliates will agree to keep confidential documents and records that are confidential or are subject to trade secret protection); (iii) promptly respond to discovery requests in connection with such claim, understanding and acknowledging that the requirements of discovery in connection with litigation require timely responses to interrogatories, requests to produce and depositions and also understanding and acknowledging that any delays in connection with responses to discovery may result in sanctions; (iv) make available, as may be reasonably necessary and upon reasonable advance notice and for reasonable periods so as not to interfere materially with Buyers' business, mutually acceptable engineers, technicians or other knowledgeable individuals to assist Sellers and their Affiliates in connection with such claim, including investigation into claims and occurrences described in this section and preparing for and giving factual and expert testimony at depositions, court proceedings, inquiries, hearings and trial; and (v) make available facilities and exemplar parts for the sole and limited use of assisting Sellers and their Affiliates in the contest or defense.

## 6.10  Corporate Names:

**6.10.1** Buyers will have the right (including the right to authorize its relevant Affiliates) to continue to sell or dispose of any existing inventories or service materials of the Business in existence at the Closing and bearing any trademark, service mark, trade name or related corporate name of Delphi or any Affiliate of Delphi for a period of no more than ninety (90) days after the Closing Date in a manner consistent with past practice of the Business and the name and reputation associated therewith, provided that Buyers and their Affiliates will clearly indicate on all written materials related to such sale or disposition, including business cards, stationery, purchase orders, invoices and the like, that the Business is owned by Buyers and their Affiliates and is no longer affiliated with, and Buyer and its Affiliates do not represent, the Sellers or any Affiliate of Seller.

**6.10.2** After such ninety (90) day period, Buyers will neither use nor permit any of Delphi South Africa or Katcon, or the Business, to use the name "Delphi" and any trademarks, trade names, brandmarks, brand names, trade dress or logos

55

relating or confusingly similar (including on any signs, billboards, advertising materials, telephone listings, web sites, labels, stationery, office forms, packaging or other materials of Delphi South Africa or Katcon) in connection with the Business or otherwise.

**6.10.3** Immediately following the Closing, Buyers shall cause Delphi South Africa to amend its certificate of incorporation, partnership agreement, limited liability company agreement and other applicable documents, in order to change its name to a name not containing the word "Delphi," such change to take effect pursuant to the terms of the respective transfer deed governing the sale of Delphi South Africa. Buyer shall make all required filings with Governmental Authorities to effect such amendments.

**6.10.4** Each of the Parties acknowledges and agrees that the remedy at Law for any breach of the requirements of this Section 6.10 would be inadequate, and agrees and consents that without intending to limit any additional remedies that may be available, temporary and permanent injunctive and other equitable relief may be granted without proof of actual damage or inadequacy of legal remedy in any Proceeding which may be brought to enforce any of the provisions of this Section 6.10.

## 6.11   Intellectual Property Licenses:

**6.11.1 License to Buyers.** Delphi, on behalf of itself and its Affiliates, hereby grants to Buyers, as of the Closing Date, a worldwide, perpetual, fully paid, royalty free, non-exclusive license to use the Shared Intellectual Property to develop, manufacture, use, import, export, offer to sell and sell Products and services and future products and services of the type provided by the Business prior to Closing and to use, reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith, subject to any restrictions arising from rights granted to third parties prior to the Closing Date. Further, Delphi, on behalf of itself and its Affiliates, hereby grants to Buyers, as of the Closing Date, a sub-license to the extent permitted by and subject to the terms and conditions of the agreements listed in Schedule 6.11.1, to develop, manufacture, import, export, offer to sell and sell Products and services and to use, reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith. The license and any sub-license granted to Buyer under this Section 6.11.1 is not assignable in whole or in part except to a purchaser of all or substantially all of the Business to which the license pertains.

**6.11.2 License to Sellers.** Buyer Parent, on behalf of itself and its Affiliates, hereby grants to Seller as of the Closing Date, (i) a worldwide, perpetual, paid-up, royalty free, non-exclusive license to develop, manufacture, use, import, export, offer to sell and sell products and services of the type provided by Sellers and their Affiliates as of the Closing Date (other than the Products), and to reproduce, prepare derivative works, distribute copies, perform and display copyrighted works in connection therewith, using any Acquired Intellectual Property, subject to any restrictions existing prior to the Closing Date, and (ii) a non-exclusive, world-wide, irrevocable license (including the right to grant sublicenses to GM Affiliates) under the Acquired Intellectual Property to make,

56

have made, use, have used, offer to sell, sell, import, export, reproduce, copy, prepare derivative works, and distribute products, subject to any restrictions existing prior to the Closing Date, solely for and limited to the purpose of sublicensing to the licensees of Seller according to the terms and conditions of the agreements listed in Schedule 6.11.2. Buyer and its Affiliates shall provide for continuation of Seller's license rights under this Section 6.11.2 in the terms and conditions of any sale or other assignment of the Acquired Intellectual Property to a third party.

**6.11.3 Right to Sublicense.** The licenses granted above in this Section 6.11: (i) include the right for the licensed party to sub-license to any of its Affiliates, to its and their successors, and to suppliers, customers to the extent of the license granted in this Section 6.11; (ii) do not include any right to use any Trademark Rights; and (iii) are subject to any restrictions existing prior to the Closing Date.

## 6.12 Competition Clearance:

**6.12.1** Subject to the terms hereof, Buyers and Delphi agree to cooperate and to use their reasonable best efforts to obtain, as promptly as practicable following the date hereof, any Governmental Approvals required for the Closing under the HSR Act, EC Merger Regulation and any other applicable Competition/Investment Law, to respond to any government requests for information thereunder, to contest and resist in good faith any action thereunder, and to have lifted or overturned any Governmental Order that restricts, prevents or prohibits the consummation of the transactions contemplated by this Agreement. In this respect, Buyers will make (or continue to prosecute, if made previously) all the competition filings set forth in Schedule 6.12.1 no more than five (5) Business Days after the date hereof, and Buyer Parent will: (i) promptly inform Delphi of all oral and written communications with any Governmental Authority in respect of any required Governmental Approval; (ii) give Delphi the opportunity to comment on all filings and any response prepared by Buyers prior to Buyers' submitting such response to the relevant Governmental Authority; and (iii) afford Delphi or any Seller designated by Delphi the opportunity to attend any meetings, telephone conferences or video conferences organized with the Governmental Authorities in relation to any required Governmental Approval. Notwithstanding the foregoing, the Parties agree that neither of them will make any voluntary filing under applicable foreign antitrust laws or regulations unless advised by legal counsel in such jurisdiction that the failure to make a filing could result in a Material Adverse Effect or otherwise be in violation of applicable Law. Each party hereto will promptly inform the other of any oral or other communication from any Governmental Authority regarding any of the transactions contemplated by this Agreement and the Ancillary Agreements. If the competition authority in any such country: (i) imposes conditions upon its approval of the transactions contemplated by this Agreement; or (ii) files a Proceeding before a Governmental Agency seeking to restrain or prohibit, or to obtain damages or other relief in connection with, the consummation of the transactions contemplated by this Agreement, the Parties will take commercially reasonable steps to negotiate with the competition authority regarding, and comply with, any conditions or modifications requested by such competition authority, consistent with the general intention of this Agreement (that ownership of the Business will be vested in the Buyers). Such compliance may require modifications in structure, economic and other relationships. Each

57

Party will bear its own costs and expenses incurred in negotiating and agreeing to the required conditions or modifications with the competition authorities.

**6.12.2** Buyers will not acquire or agree to acquire by merging or consolidating with, or by purchasing a substantial portion of the assets of or equity in, or by any other manner, any business or any corporation, partnership, association or other business organization or division thereof, or otherwise acquire or agree to acquire any assets if the entering into of a definitive agreement relating to or the consummation of such acquisition, merger or consolidation would reasonably be expected to: (i) impose any delay in the obtaining of, or significantly increase the risk of not obtaining, any authorizations, consents, orders, declarations or approvals of any Governmental Authority necessary to consummate the transactions contemplated by this Agreement or the Transfer Agreements or the expiration or termination of any applicable waiting period; (ii) increase the risk of any Governmental Authority entering an order prohibiting the consummation of the transactions contemplated by this Agreement or the Transfer Agreements; (iii) significantly increase the risk of not being able to remove any such order on appeal or otherwise; or (iv) delay or prevent the consummation of the transactions contemplated by this Agreement or the Transfer Agreements.

**6.13   Further Actions:**

**6.13.1** Buyer will use commercially reasonable efforts to facilitate a Closing not more than sixty (60) days after the entry of the final Sale Approval Order by taking actions which include but are not limited to establishing legal entities, securing tax payer identification numbers, procuring DUNS numbers and securing employees sufficient in expertise and number to run the Business after Closing.

**6.13.2** Within three (3) Business Days after the entry of an unstayed Sale Approval Order by the Bankruptcy Court, the Parties will use commercially reasonable efforts to take all actions and to do all things necessary, proper or advisable under Law to consummate the transactions contemplated hereby and by the Transfer Agreements. In furtherance of the foregoing, the Parties will consult and cooperate with one another, and consider in good faith the views of one another, in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any party hereto in connection with the transactions contemplated by this Agreement.

**6.13.3** At all times prior to the Closing: (i) Delphi will notify Buyer Parent in writing of any fact, condition, event or occurrence that will result in the failure of any of the conditions contained in Article 7 to be satisfied, promptly upon any Seller becoming aware of the same; and (ii) Buyer Parent will notify Delphi in writing of any fact, condition, event or occurrence that will result in the failure of any of the conditions contained in Article 7 to be satisfied, promptly upon Buyer becoming aware of the same.

**6.14   Further Assurances.** If at any time after the Closing Date any further action is necessary or desirable to carry out the purposes of this Agreement, the parties hereto shall take or cause to be taken all such necessary action, including, without limitation, the execution and delivery of such further instruments and documents as may be reasonably requested by the

other party for such purposes or otherwise to consummate and make effective the transactions contemplated hereby; provided that, to the extent not indemnified or required hereunder the cost of such action or of such instruments and documents related thereto shall be borne by the party requesting them. The foregoing covenant will survive the Closing of the transactions contemplated herein.

**6.15   Guarantee by Buyer Parent.**   Buyer Parent unconditionally guarantees all obligations of each Buyer pursuant to the terms of this Agreement, including payment of the Purchase Price and any indemnification obligations. Buyer Parent will also reimburse Sellers for all fees and expenses (including reasonable fees of counsel) incurred in successfully enforcing the guarantee obligations set forth in this Section 6.15.

**6.16   Government Subsidies.**

**6.16.1   India Capital Subsidy.**

**A.**   Buyer agrees and covenants to abide by all the conditions under Rule 28C of the Haryana General Sales Tax Rules, 1975, under which the Government of Haryana, India has granted to Delphi Automotive Systems Pvt. Ltd. ("**Delphi India**") a capital subsidy of INR 16.64 million (approx. $0.41million) from January 2002 until September 2004 (the "**India Capital Subsidy**"), including the conditions that (i) the relevant local Buyer shall continue the production of converters at a manufacturing facility located in the State of Haryana from the Closing Date through 30 September 2009; (ii) the goods manufactured at such manufacturing facility shall not be stock transferred, stored or consigned to a place outside the State of Haryana until after 30 September 2009; (iii) the relevant local Buyer shall sell all goods directly from such manufacturing facility in the State of Haryana; (iv) the relevant local Buyer shall be VAT registered in State of Haryana; and (v) the relevant local Buyer shall pay central sales tax or state VAT in State of Haryana on sales made by it.  Buyer acknowledges that it is aware in the event it does not comply with such conditions that the capital subsidy received by Delphi India would need to be fully refunded to the Government authorities.

**B.**   If Buyer fails to comply with the conditions of the India Capital Subsidy set forth above, then Buyer shall be liable to repay the amount of India Capital Subsidy which Delphi India is obliged to repay the government along with all costs, interests, penalties and expenses which Delphi India may incur on refunding the India Capital Subsidy to the Government authorities.

**6.16.2   Other Government Subsidies.**   Buyer agrees and covenants to abide by any and all of the conditions of any other subsidy of any Governmental Authority listed in Schedule 6.16.2.

**6.17   Customs Duties.**   Buyers expressly agree to reimburse Sellers for all customs-related duties, fees, and associated costs incurred by Sellers on behalf of Buyers following the Closing which are exclusive to the Business, including all such duties, fees, and costs incurred in connection with co-loaded containers that clear customs intentionally or unintentionally under Sellers' importer/exporter identification numbers and bonds/guarantees post-Closing.

59

**6.18     Buyers' Financing Activities.**  Buyers acknowledge and agree that: (i) Sellers and their Affiliates have no responsibility for any financing that Buyers may raise in connection with the transactions contemplated hereby including with respect to any offering materials and other documents prepared by or on behalf of or utilized by Buyers or their Affiliates, or Buyers' financing sources, in connection with Buyers' financing activities in connection with the transactions contemplated hereby which include any information provided by Sellers or any of their Affiliates; and (ii) Buyers' obligations to consummate and to cause to be consummated the transactions contemplated by this Agreement and the Transfer Agreements are not subject to any condition or contingency with respect to the financing, except that, upon reasonable requests from Buyers, Sellers will provide reasonable assistance to Buyers in the compilation of any information concerning the Business and the Acquired Assets that is required to be disclosed in any financing documents.

**6.19     Personal Property.**  Prior to Closing, each Asset Seller shall use commercially reasonable efforts to monitor and control the Personal Property held by such Asset Seller.

**6.20     Transition Services.**  Buyer acknowledges that Seller is not prepared to provide any transition services for any of the Manufacturing Facilities.  Anything contained herein to the contrary notwithstanding, except for the Manufacturing Facility in Shanghai, China, Seller may consider providing certain transition services post-Closing at Buyer's request and on a case-by-case basis for a period of up to six (6) months; provided, that Buyer will reimburse Sellers for any fees, costs and expenses incurred in connection therewith, including without limitation any one-time set up costs and monthly service costs.

**6.21     Reimbursement for Pre-Closing Matters.**

      **6.21.1**  Seller will provide Buyer with Schedule 6.21 setting forth the open customer reimbursement obligations as of Closing for any machinery, equipment and tooling that was delivered prior to Closing.  Buyer shall be obligated to pursue collection of any customer reimbursements set forth on Schedule 6.21, if and when due, and will pay and transmit to Seller within ten (10) days of receipt pay and all funds collected.  Until all customer reimbursements set forth on Schedule 6.21 are collected, Buyer shall inform Seller periodically and shall assign and transfer, upon Seller's request, any collectable rights and interests to Seller.  For the avoidance of doubt, customer reimbursements subject to this Section 6.21.1 shall not include any Accounts Receivables that have been recorded and are reflected in the Closing Working Capital Statement.

      **6.21.2**  Seller shall reimburse Buyer for the following:

      **A.**     accrued annual leave for Transferred Australia Employees;

      **B.**     accrued long service leave for Transferred Australia Employees; and

      **C.**     any unfunded supplementary pension plan book reserve or other pension obligation for Global Sale Employees in Luxembourg;

in each case to the extent earned by the respective Global Sale Employees during their employment with any Seller prior to Closing.

60

**6.22**     **China Share Sale.**  Delphi agrees to consider structuring the China Sale Agreement referred to in Section 8.2.2(C) hereof as a sale of the securities in SDECSC held by Delphi or its Affiliates.

**6.23**     **Milwaukee Asset Sale.**  Buyer Parent acknowledges and agrees, on its behalf and on behalf of Katcon, that Katcon remains obligated to make, and Buyer Parent will cause Katcon to make, payments in the amounts of $743,500 and $2,221,763 due to Delphi Automotive Systems LLC for the assets acquired pursuant to that certain Asset Sale Agreement (RFTD) between Katcon, Delphi Automotive Systems LLC and Delphi Technologies, Inc.

## 7.   CONDITIONS TO CLOSING:

**7.1**     **Conditions to Obligations of Seller and Buyer.**  The respective obligations of each Party to effect the transactions contemplated by this Agreement will be subject to the satisfaction or waiver by both Parties at or prior to the Closing Date of the following conditions precedent:

> **7.1.1  Sale Approval Order and Bidding Procedures Order.**  The Sale Approval Order and Bidding Procedures Order will be entered by the Bankruptcy Court and will not be subject to a stay or injunction or, if the Sale Approval Order is not received prior to the Filing Affiliates" emergence from the Bankruptcy Cases, then written affirmation of this Agreement by the reorganized or reconstituted Filing Affiliates shall satisfy this condition.

> **7.1.2  No Law, Judgments, etc.**  No provisions of any applicable Law, Governmental Order or any third party legal proceeding that restrains, prohibits, makes illegal or enjoins the consummation of the transactions contemplated by this Agreement will be in effect, or significantly modifies the terms thereof (each Party taking any and all steps required by Sections 6.12 and 6.13 of this Agreement).

> **7.1.3  Governmental Approvals.**  All required Governmental Approvals (including approvals under any Competition/Investment Law, as identified on Schedule 6.12.1) regarding the Sale will have been granted in writing by the appropriate Governmental Authorities or, as applicable by Law, the waiting period with respect to any such filings will have expired or been terminated.  The lack of response or clearance from the competent antitrust Governmental Authority after the waiting period provided by the applicable Law shall not be deemed a failure to meet a condition to Closing under this Agreement and the Parties shall proceed with Closing unless a preliminary ruling prohibiting the transaction contemplated hereby is issued by such competent antitrust Governmental Authority.

> **7.1.4  No Material Adverse Effect.**  Since the date of this Agreement, no Material Adverse Effect shall have occurred and is continuing at Closing.

**7.2**     **Conditions to Obligations of Buyer.**  The obligation of Buyers to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Buyer):

> **7.2.1  Accuracy of Warranties.**  Except as otherwise permitted by this Agreement or a Transfer Agreement, and after giving effect to the Sale Approval

Order, the representations and warranties of Sellers contained in Article 4 of this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein) will be true and correct as of the Closing Date as if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time) except where the failure of such representations and warranties to be true and correct would not have a Material Adverse Effect.

**7.2.2 Performance of Covenants.** Each Seller will have performed and complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it at or prior to the Closing.

**7.2.3 Delivery of Ancillary Agreements.** Sellers will have delivered duly executed copies of each of the Ancillary Agreements.

**7.3 Conditions to Obligations of Sellers.** Except as otherwise permitted by this Agreement or a Transfer Agreement, the obligation of Sellers to consummate the transactions contemplated by this Agreement will be subject to the fulfillment at or prior to the Closing of the following conditions (any one or more of which may be waived in whole or in part by Sellers):

**7.3.1 Accuracy of Warranties.** The representations and warranties of Buyer contained in Article 5 of this Agreement (without taking into account any materiality or Material Adverse Effect qualification therein), will be true and correct as of the Closing Date if made on such date (except for representations and warranties that speak as of a specific date or time, which will be true and correct only as of such date or time), except where the failure of such representation and warranty to be true and correct would not have a material adverse effect on Buyer's ability to consummate the transactions contemplated by this Agreement.

**7.3.2 Performance of Covenants.** Each Buyer and each of its Affiliates will have performed and complied in all material respects with all agreements and obligations required by this Agreement to be performed or complied with by it at or prior to the Closing.

**7.3.3 Delivery of Ancillary Agreements.** Buyers will have delivered duly executed copies of each of the Ancillary Agreements.

**7.3.4 Local Legal Entity.** Buyers have, or will have set up, a legal entity in every jurisdiction required by Law, including in China and Mexico, in order for such entity to buy the Acquired Assets or Sale Securities, as the case may be, located in such jurisdiction.

## 8. CLOSING:

**8.1 Closing Time and Date.** Subject to the terms and conditions of this Agreement, the closing (the **"Closing"**) of the transactions contemplated by this Agreement will take place at the offices of Delphi at 10:00 a.m. on the second Business Day after the conditions set forth in Article 7 will have been satisfied or waived (other than conditions which by their nature can be satisfied only at the Closing), or on such other date or at such other time as the Parties may agree (the **"Closing Date"**). For tax and accounting purposes, the effective time of the transaction will be 11:59 p.m. Eastern time on the Closing Date. The Closing of the Transfer

Agreements will take place simultaneously with the Closing or on a later date if mutually agreed by the relevant Seller and relevant Buyer.

**8.2** **Ancillary Agreements.** At or prior to the Closing, the Sellers will duly execute and deliver to the Buyers, and the Buyers will duly execute and deliver to Sellers, each of the following agreements (each, an "**Ancillary Agreement**" and collectively, "**Ancillary Agreements**") to which they are to be a party:

**8.2.1** A Patent Assignment substantially in the form of <u>Exhibit 8.2.1.A</u> and a Trademark Assignment substantially in the form of <u>Exhibit 8.2.1.B</u>, as well as any other instruments necessary to transfer the Acquired Intellectual Property.

**8.2.2** The following Transfer Agreements (each a "**Transfer Agreement**" and collectively, "**Transfer Agreements**"):

**A.** South Africa Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.A</u>.

**B.** Poland Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.B.</u>

**C.** China Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.C</u>.

**D.** Australia Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.D</u>.

**E.** Mexico Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.E</u>.

**F.** India Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.F.</u>

**G.** Luxembourg Sale Agreement, substantially in the form set forth in <u>Exhibit 8.2.2.G.</u>

**8.2.3** Bills of Sale, substantially in the form set forth in <u>Exhibit 8.2.3</u>.

**8.2.4** Assignment and Assumption Agreements, substantially in the form set forth in <u>Exhibit 8.2.4</u>.

**8.2.5** Poland Sublease, if applicable, substantially in the form set forth in <u>Exhibit 8.2.5</u>.

**8.2.6** Deposit Escrow Agreement, substantially in the form set forth in <u>Exhibit 8.2.6</u>.

**8.3** **Seller's Deliveries at Closing.** At or prior to the Closing, the appropriate Sellers will deliver or cause to be delivered to the relevant Buyer:

**8.3.1** Where required by applicable Law in the jurisdiction concerned,

63

copies of the resolutions (or local equivalent) of the boards of directors of each Seller and, where required, the stockholders/owners of each Seller, authorizing and approving this Agreement, Ancillary Agreements and the transactions contemplated hereby and thereby;

**8.3.2** Certified copies of all orders of the Bankruptcy Court pertaining to the transactions contemplated by this Agreement and the Ancillary Agreements, including the Bidding Procedures Order and the Sale Approval Order;

**8.3.3** An officer's certificate, dated as of the Closing Date, executed on behalf of Sellers, certifying that the conditions specified in Section 7.2 applicable to Sellers have been fulfilled; and

**8.3.4** All other documents and papers reasonably requested by Buyer to transfer title to the Acquired Assets and Sale Securities in accordance with this Agreement or to otherwise effect the transactions contemplated by this Agreement or the Ancillary Agreements.

**8.4 Buyer's Deliveries at Closing.** At or prior to the Closing, Buyer will deliver or cause to be delivered to Delphi and each Seller designated by Delphi the following:

**8.4.1** The balance of the Preliminary Purchase Price by wire transfer of immediately available funds to an account or accounts designated by Delphi and acceptable to Buyers not less than two (2) Business Days prior to the Closing;

**8.4.2** Where required by applicable Law in the jurisdiction concerned, copies of the resolutions (or local equivalent) of the boards of directors of each Buyer and, where required, the stockholders/owners of each Buyer, authorizing and approving this Agreement, the Ancillary Agreements and the transactions contemplated hereby and thereby; and

**8.4.3** An officer's certificate, dated as of the Closing Date, executed on behalf of Buyers, certifying that the conditions specified in Section 7.3 have been fulfilled.

## 9. TERMINATION:

**9.1 Termination.** This Agreement may be terminated at any time prior to the Closing:

**9.1.1** By the mutual written consent of Delphi and Buyer Parent.

**9.1.2** By either Delphi or Buyer Parent:

**A.** Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Closing will not have occurred within one hundred twenty (120) days after entry of the Sale Approval Order for any reason other than (i) a failure of the conditions set forth in Section 7.1.2 or (ii) if, in Seller's reasonable discretion, additional time is needed for transition planning required to facilitate the consummation of this Agreement.

64

**B.**     If Seller consummates an Alternative Transaction.

**C.**     Provided the terminating Party is not in material breach of its obligations under this Agreement, if any Governmental Authority of competent jurisdiction (other than the Bankruptcy Court) will have issued a Governmental Order or taken any other action restraining, enjoining or otherwise prohibiting the transactions contemplated hereby and such Governmental Order or other action has become final and nonappealable, or in the reasonable opinion of the terminating Party is likely to become final and nonappealable.

**D.**     Provided the terminating Party is not in material breach of its obligations under this Agreement, if the Bankruptcy Court has not entered the Sale Approval Order, on or before the date that is one hundred twenty (120) days after the date of this Agreement, or if such Sale Approval Order is subject to a stay or injunction on such date.

**E.**     Provided the terminating Party is not in material breach of its obligations under this Agreement, at any time prior to Closing, if a Material Adverse Effect has occurred, either Party may terminate within ten (10) Business Days after becoming aware of such event so long as such event is continuing at the time of any such termination and not reasonably capable of being cured within ninety (90) days after entry of the Sale Approval Order or the date of this Agreement, whichever is later.

**9.1.3** By Buyer Parent, upon written notice to Delphi and provided that Buyer Parent is not then in material breach of any representation, warranty, covenant or other agreement contained in this Agreement, if Delphi has breached or failed to perform in any respect any of its representations, warranties, covenants or other agreements contained in this Agreement, the result of which has been or will be a Material Adverse Effect, or if a Material Adverse Effect has otherwise occurred provided that: (i) if a Material Adverse Effect has occurred, such termination occurs while such effect is continuing; and (ii) in the case of a Delphi breach where no Material Adverse Effect has actually occurred, then Buyer Parent will only be entitled to terminate if such material breach or failure to perform: (y) is not cured within thirty (30) days after written notice thereof or, in the case where the date or period of time specified for performance has lapsed, promptly following written notice thereof from the non-breaching party; or (z) is incapable of being cured by Delphi or any Seller;

**9.1.4** By Delphi, upon written notice to Buyer Parent and provided that Delphi is not then in material breach of any representation, warranty, covenant or other agreement contained in this Agreement, if the Buyer Parent or any Buyer has breached or failed to perform in any material respect any of its obligations or covenants contained in this Agreement, and such breach or failure to perform: (i) is not cured within thirty (30) days after written notice thereof or, in the case where the date or period of time specified for performance has lapsed, promptly following written notice thereof from the non-breaching party; or (ii) is incapable of being cured by Buyer Parent or any Buyer.

65

## 9.2    Break-Up Fee, Expense Reimbursement:

**9.2.1**  In the event this Agreement is terminated prior to Closing (i) pursuant to Section 9.1.2.B, in the event that Delphi sells, transfers, leases or otherwise disposes, directly or indirectly, including through an asset sale, stock sale, merger or other similar transaction, of all or substantially all of the Business or the Acquired Assets in a transaction or a series of transactions with one or more parties other than Buyer Parent or its Affiliates (such event being an "**Alternative Transaction**") in accordance with the Bidding Procedures, or (ii) pursuant to Sections 9.1.2.A, 9.1.2.D, or 9.1.3 and an Alternative Transaction is consummated within six (6) months after termination of this Agreement, Delphi will, upon the consummation of the Alternative Transaction(s), pay to Buyer Parent an amount equal to three percent (3%) of the Preliminary Purchase Price (the "**Break-Up Fee**"), provided that: (x) Buyer is not in breach of this Agreement or the Bidding Procedures; (y) this Agreement is not terminable under Section  9.1.2.C, and (z) in the case of Sections 9.1.2.A and 9.1.2.D, the failure or occurrence of the event giving rise to any such termination results solely from the status of Delphi  or Sellers or any action or conduct of Delphi or Sellers and not from the status of Buyer Parent or its Affiliates or any action or conduct or market position of Buyer Parent or any of its Affiliates.

**9.2.2**  In the event this Agreement is terminated pursuant to Section 9.1.2.A prior to Closing and, provided that Buyer Parent is not then in breach of this Agreement, in the case of Section 9.1.2.D, the failure or occurrence of the event giving rise to any such termination results solely from the status of Delphi or Sellers or any action or conduct of Delphi or Sellers and not from the status of Buyer Parent or any action or conduct of Buyers, then Delphi shall be obligated to pay Buyer Parent an amount equal to Buyers' reasonable, actual out-of-pocket fees and expenses (including, without limitation, reasonable attorneys' fees, expenses of its financial advisors, and expenses of other consultants) incurred in connection with the transactions contemplated by this Agreement (the "**Expense Reimbursement**") up to a maximum of US $600,000.   Any Expense Reimbursement payable upon termination of this Agreement shall be immediately earned upon such termination and payable by Delphi to Buyer Parent promptly upon the delivery of an invoice related to such Expense Reimbursement to Delphi by Buyer Parent to be delivered to Delphi within ten (10) Business Days of termination of this Agreement; provided, however, that if Delphi believes, in good faith, that the amount of the Expense Reimbursement sought by Buyer Parent is not reasonable, then Delphi shall have the right to seek Bankruptcy Court review thereof prior to paying such amount.   Delphi shall seek court review following receipt of such Expense Reimbursement invoice from Buyer and shall pay to Buyer all portions of the Expense Reimbursement not in dispute, and shall pay the balance within ten (10) business days following entry of an appropriate order from the Bankruptcy Court.

**9.2.3**  Buyer Parent acknowledges and agrees that, in the event that it terminates this Agreement prior to Closing or Delphi terminates this Agreement prior to Closing and Buyer Parent becomes entitled to receive or receives any Expense Reimbursement, Buyer Parent shall not be entitled to receive nor shall it receive the Break-Up Fee or any portion thereof, and, conversely, that in the event that Buyer Parent becomes entitled to receive or receives any Break-Up Fee, it

66

shall not be entitled to receive nor shall it receive the Expense Reimbursement or any portion thereof.  If Buyer Parent becomes entitled to receive any Break-Up Fee or Expense Reimbursement, then such Break-Up Fee or Expense Reimbursement shall be the sole and exclusive remedy of Buyers, whether at law or in equity, for any breach by Delphi or any of its Affiliates of the terms and conditions of this Agreement or the Deposit Escrow Agreement.  The parties agree that the amounts payable pursuant to this Section shall be in the nature of liquidated damages.

**9.3**   **Procedure and Effect of Termination.**   In the event of the termination of this Agreement and the abandonment of the transactions contemplated hereby pursuant to Section 9.1, written notice thereof will forthwith be given to all other Parties.  If this Agreement is terminated and the transactions contemplated by this Agreement are abandoned as provided herein:

**9.3.1**   Buyers will redeliver to Sellers all documents, work papers and other material of any of Sellers relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof;

**9.3.2**   The provisions of the Confidentiality Agreement and any supplemental agreements relating to sensitive data will continue in full force and effect as stated therein;

**9.3.3**   The following sections of this Agreement will survive any termination of this Agreement and remain in full force and effect: (i) Article 9 (Termination); and (ii) Sections 3.1 (Deposit Amount), 12.1 (Fees and Expenses), 12.5 (Assignment), 12.6 (Waiver), 12.7 (Notices), 12.8 (Entire Agreement), 12.10 (Publicity), 12.14 (Governing Law) and 12.15 (Dispute Resolution); and

**9.3.4**   No party to this Agreement will have any Liability under this Agreement to any other except: (i) that nothing herein will relieve any party from any Liability for any breach of any of the representations, warranties, covenants and agreements set forth in this Agreement occurring before such termination, and, except as provided by Section 9.2.3 above, no Party waives any Claim with respect thereto; and (ii) as contemplated by Section 9.3.3 above.

## 10.   BIDDING PROCEDURES:

**10.1**   **Delphi Initial Bankruptcy Actions.**   This Article 10 sets forth the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the Agreement and the Sale of the Acquired Assets.  The Sale is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court in the Sale Approval Order.  The following overbid provisions and related bid protections are designed to compensate Buyers for their efforts and agreements to date and to facilitate a full and fair process (the "**Bidding Process**") designed to maximize the value of the Acquired Assets for the benefit of Sellers' and their Affiliates' creditors, shareholders and bankruptcy estate.

**10.2**   **Qualified Bidder.** Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by Sellers in their sole discretion, in order to participate in the Bidding Process, each Person (a "**Potential Bidder**"), other than Buyer, must deliver (unless previously delivered) to Delphi, its counsel, its in-house counsel, and its financial advisors at the addresses provided in Section 10.3:

**10.2.1** An executed Confidentiality Agreement in form and substance satisfactory to Delphi.

**10.2.2** Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets and the Business, current audited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to Delphi and its financial advisors; and

**10.2.3** A preliminary (non-binding) written proposal regarding: (i) the purchase price range; (ii) any assets and/or equity interests expected to be excluded; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) any conditions to closing that it may wish to impose in addition to those set forth in this Agreement; and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence will be completed.

A Potential Bidder that delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the Sale and perform post-Closing, if selected as a successful bidder, and that Delphi determines in its sole discretion is likely (based on availability of financing, experience and other considerations) to be able to consummate the Sale within the time frame provided by this Agreement will be deemed a "**Qualified Bidder.**" As promptly as practicable, after a Potential Bidder delivers all of the materials required above, Delphi will determine, and will notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder. At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi will allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets and the Business as provided in Section 10.4 below. Buyer Parent will be deemed a Qualified Bidder for purposes of the Bidding Process.

**10.3     Bid Deadline.** A Qualified Bidder that desires to make a bid will deliver written copies of its bid to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steve Olsen, M&A, with copies to: (i) Delphi's counsel, Skadden, Arps, Slate, Meagher & Flom LLP, at 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: John K. Lyons and Ron E. Meisler; (ii) Delphi's in-house counsel, Delphi European Headquarters – Legal Department, ZAC Paris Nord II, 64, avenue de la Plaine de France, BP 65059 – Tremblay en France, 95972 Roissy CDG Cedex, France, Attn: General Counsel Europe; (iii) Delphi's financial advisor, Lincoln International Advisors LLC, 500 West Madison Street, Suite 3900, Chicago, Illinois 60661, Attn: Robert Satow; (iv) counsel to the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "**Committee**"), Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Mark A. Broude; and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick; so as to be received not later than 11:00 A.M. (EST), on a date to be determined by Delphi that is at least five (5) Business Days before date of Sale Hearing (the "**Bid Deadline**"). Delphi may extend the Bid Deadline once or successively, but is not obligated

to do so. If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension. As soon as reasonably practicable following receipt and qualification of each Qualified Bid, Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the Official Committee of Equity Security Holders (the "**Equityholders' Committee**").

**10.4    Due Diligence.** Delphi will afford each Qualified Bidder due diligence access to the Acquired Assets and the Business. Due diligence access may include Management Presentations as may be scheduled by Delphi, access to data rooms, on site inspections and such other matters which a Qualified Bidder may request and as to which Delphi, in its sole discretion, may agree. Delphi will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence will not continue after the Bid Deadline. Delphi may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at Management Presentations or site inspections. Neither Delphi nor any of its Affiliates (nor any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets and the Business to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

**10.5    Bid Requirements.** All bids must include the following documents (the "**Required Bid Documents**"):

**10.5.1** A letter stating that the bidder's offer is irrevocable until two (2) Business Days after the Closing of the Sale of the Acquired Assets.

**10.5.2** An executed copy of this Agreement, together with all Schedules and Exhibits to this Agreement (a "**Marked Agreement**"), marked to show those amendments and modifications to such agreement that the Qualified Bidder proposes, including the Preliminary Purchase Price (as defined in this Agreement).

**10.5.3** A good faith deposit (the "**Good Faith Deposit**") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as Delphi may determine) in an amount equal to ten percent (10%) of the Preliminary Purchase Price.

**10.5.4** Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Delphi and its advisors.

**10.6    Qualified Bids.** A bid will be considered only if the bid:

**10.6.1** Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

**10.6.2** Proposes a transaction on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that Delphi determines, in its sole discretion, are similar to, and are not materially more burdensome or conditional than the terms of the Agreement and that has a value, either individually or, when evaluated in conjunction with any other Qualified Bid,

greater than or equal to the sum of the Preliminary Purchase Price plus the amount of the Break-Up Fee, plus: (i) in the case of the initial Qualified Bid, $650,000; and (ii) $250,000 in the case of any subsequent Qualified Bids, over the immediately preceding highest Qualified Bid.

**10.6.3** Is not conditioned upon (i) any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment; and (ii) or such bid being deemed the Successful Bid by the Sellers.

**10.6.4** Includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Acquired Assets in making its bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

**10.6.5** Includes a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required Governmental Approvals) within not more than fifteen (15) days after entry of an order by the Bankruptcy Court approving such purchase, subject to the receipt of any Governmental Approvals which must be obtained within sixty (60) days after entry of such order.

**10.6.6** Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "**Qualified Bid**" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, that Delphi will have the right, in its sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. Notwithstanding the foregoing, Buyer Parent will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the bidding process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of Buyer Parent is referred to as a "**Subsequent Bid**." If Delphi does not receive any Qualified Bids other than the Agreement received from Buyer Parent, Delphi will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of this Agreement.

**10.7    Bid Protection.**  Recognizing Buyer Parent's expenditure of time, energy and resources, Delphi has agreed to provide certain bidding protections to Buyer Parent. Specifically, Delphi has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor that all other Potential Bids must exceed. As a result, Delphi has agreed that if Delphi does not close with Buyer Parent because Delphi consummates an Alternative Transaction and Buyer Parent and/or Buyer Parent's Affiliates are not in breach of the Agreement or the Bidding Procedures, Delphi will pay to Buyer Parent the Break-Up Fee to the extent required under Section 9.2.1 hereof. The payment of the Break-Up Fee will be governed by the provisions of the Agreement and the order of the Bankruptcy Court approving the Bidding Procedures.

**10.8    Auction, Bidding Increments and Bids Remaining Open.** If Delphi receives at least one (1) Qualified Bid in addition to the Agreement, Delphi will conduct an auction (the "**Auction**") of the Acquired Assets and the Business upon notice to all Qualified Bidders who have submitted Qualified Bids at 10:00 a.m. EST on or before the second (2nd) Business Day prior to the Sale Hearing, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285 or Four Times Square, New York, New York 10036 (at Delphi's election) or such later time or other place as Delphi will notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second (2nd) Business Day prior to the Sale Hearing), in accordance with the following procedures:

**10.8.1** Only Delphi, Buyer Parent, any representative of the Committee and the Equityholders' Committee, any representative of Delphi's secured lenders (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only Buyer Parent and the other Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

**10.8.2** At least two (2) Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least one (1) Business Day prior to the Auction, Delphi will provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer going into the Auction to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction. Notwithstanding such determination, Delphi reserves the right, in its sole discretion, to determine which bid, or subsequent bid, is the Successful Bid (as defined below), following the conclusion of the Auction based upon a number of factors and other considerations.

**10.8.3** All Qualified Bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

**10.8.4** Sellers may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in connection herewith.

**10.8.5** Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $250,000 higher than the previous bid or bids. The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge and written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by Buyer Parent), Delphi may give effect to any Break-Up Fee that may be payable to Buyer Parent under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

10.8.6 At the conclusion of the Auction, or as soon thereafter as practicable, Sellers, in consultation with its financial advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale; and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Business received at the Auction (the "**Successful Bid(s)**" the bidder(s) making such bid, the "**Successful Bidder(s)**").

**10.9   Acceptance of Qualified Bids.**   Sellers will sell the Acquired Assets for the highest or otherwise best Qualified Bid, as determined by Delphi, upon the approval of such Qualified Bid by the Bankruptcy Court after the hearing (the "**Sale Hearing**"). If, after an Auction in which Buyer Parent: (i) will have bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement; and (ii) is the Successful Bidder, it will, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid; less (b) the Break-Up Fee. Delphi's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute Delphi's acceptance of the bid. Delphi will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

**10.10   Sale Hearing.**   The Sale Hearing will be held before the Honorable Judge Robert Drain on December 17, 2008 at 10.00 a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, located in New York, New York, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court Approval, as necessary, without further notice by an announcement of the adjourned date at the Sale Hearing. If Delphi does not receive any Qualified Bids (other than the Qualified Bid of Buyer Parent), Delphi will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to Buyer Parent following entry of the Sale Order. If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, Delphi will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "**Alternate Bid(s)**" and such bidder(s), the "**Alternate Bidder(s)**"). Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of: (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder; or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Delphi will effectuate a sale to the Alternate Bidder(s) without further order of the Bankruptcy Court.

**10.11   Return of Good Faith Deposit.**   The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two (2) Business Days following the Closing of the Sale (the "**Return Date**"). Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon Closing of the Sale to the Successful Bidder(s). If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of Delphi. On the Return Date, Delphi will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

**10.12** **Reservation of Rights.** Delphi, after consultation with the agents for its secured lenders and the Committee: (i) may determine, which Qualified Bid, if any, is the highest or otherwise best offer; and (ii) may reject at any time, any bid (other than Buyer Parent's initial bid) that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures or the terms and conditions of the Sale; or (c) contrary to the best interests of Sellers, its estate and creditors as determined by Delphi in its sole discretion.

## 11.   **LIABILITY, INDEMNIFICATION:**

**11.1** **LIMITATIONS OF LIABILITY.** SELLERS AND BUYERS SHALL NOT UNDERTAKE OR BE RESPONSIBLE FOR ANY LIABILITY FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, INDIRECT OR PUNITIVE DAMAGES; DELPHI WILL NOT BE LIABLE FOR ANY, AND BUYERS ASSUME LIABILITY FOR ALL, PERSONAL INJURY AND PROPERTY DAMAGE CONNECTED WITH BUYERS INVESTIGATION AND EXAMINATION OF THE ACQUIRED ASSETS, THE HANDLING, TRANSPORTATION, POSSESSION, PROCESSING, FURTHER MANUFACTURE OR OTHER USE OR RESALE OF ANY OF THE ACQUIRED ASSETS AFTER THE CLOSING DATE, WHETHER SUCH ACQUIRED ASSETS ARE USED OR RESOLD ALONE OR IN COMBINATION WITH OTHER ASSETS OR MATERIALS; AND BUYERS ACKNOWLEDGE THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE ACQUIRED ASSETS ARE BEING SOLD IN THEIR PRESENT STATE AND CONDITION, "AS IS, WHERE IS," WITH ALL FAULTS, AND BUYERS' ARE PURCHASING AND ACQUIRING SUCH ACQUIRED ASSETS ON THAT BASIS PURSUANT TO BUYERS' OWN INVESTIGATION AND EXAMINATION AFTER HAVING BEEN PROVIDED WITH AN ADEQUATE OPPORTUNITY AND ACCESS TO SUCH ACQUIRED ASSETS TO COMPLETE SUCH INVESTIGATION OR EXAMINATION.

**11.2** **Survival.** Except for Section 4.9 (Tax Matters) which will expire at Closing, the representations and warranties of Sellers will survive until the first (1st) anniversary of the Closing Date; provided, however that the representations and warranties set forth in Section 4.11 (Intellectual Property) will survive until the third (3rd) anniversary of the Closing Date. Notwithstanding anything to the contrary, the representations and warranties of Delphi and the Filing Affiliates shall not survive Closing. The representations and warranties of Buyers will survive Closing until the first (1st) anniversary of the Closing Date. The covenants and agreements of the Parties in this Agreement will survive the Closing in accordance with their terms.

**11.3** **Indemnification.** Except as may be expressly set forth in this Agreement (including Section 11.4 Environmental Matters) or in an Ancillary Agreement, no Seller or Buyer will be required to indemnify any other party to any of such agreements.

**11.3.1** **Buyer's Indemnification of Delphi.** From and after the Closing, Buyers will, severally and not jointly indemnify, defend and hold harmless Sellers and their Affiliates and their respective directors, officers, employees, advisors, representatives and agents from and against all Indemnifiable Losses relating to, resulting from or arising out of: (i) a breach of any representation or warranty made by any Buyer contained in this Agreement (ii) the Assumed Liabilities or the Acquired Assets; (iii) a breach of any agreement or covenant of any Buyer contained in this Agreement or any Ancillary Agreements; or (iv) the conduct of the Business or the ownership of the Acquired Assets after Closing.

73

**11.3.2 Sellers' Indemnification of Buyers.** Subject to the limitations set forth in this Article 11, from and after the Closing, (i) each Non-Filing Seller of Acquired Assets will (solely with respect to the Retained Liabilities and representations, warranties, and covenants related to such Acquired Assets), severally and not jointly, indemnify, defend and hold harmless Buyers and their Affiliates and their respective directors, officers, employees, partners, advisors, representatives and agents from and against all Indemnifiable Losses relating to, resulting from or arising out of: (a) a breach of any representation or warranty made by such Seller contained in this Agreement (other than with respect to Inventory for which a Price Adjustment is made) (b) the Retained Liabilities that are retained by such Seller (to the extent arising out of the operation of the Business at and from each applicable Manufacturing Facility), (c) a breach of any agreement or covenant of such Seller contained in this Agreement or any Ancillary Agreements; or (d) the failure by such Seller to pay any amount owing with respect to any purchase money security interests, that are Permitted Encumbrances, with respect to the Acquired Assets; and (ii) to the extent that the Sale Approval Order or other applicable provisions of the Bankruptcy Code fails to discharge Liability with respect to any claims relating to Products shipped by a Filing Affiliate prior to Closing, the Sellers that are Filing Affiliates (jointly and severally with Delphi) agree to indemnify the relevant Buyer for Indemnifiable Losses.

**11.3.3 Limitations.** The following limitations shall apply to both Buyers' and Sellers' indemnification obligations under Sections 11.3.1 and 11.3.2 above.

**A.** Either Party's obligation to indemnify for Indemnifiable Losses shall apply only to those Claims which are notified to the indemnifying Party on or before the date that is twelve (12) months after the Closing Date with the exception of (i) any claims for indemnification made for a breach of Section 4.11 (Intellectual Property), which must be notified to a Seller on or before the third (3rd) anniversary of the Closing Date and (ii) any claim for environmental indemnification which is addressed in Section 11.4.2.

**B.** No Party shall be liable for Indemnifiable Losses pursuant to this Section 11.3.2 or otherwise until: (i) an individual claim or occurrence is greater than Twenty-Five Thousand Dollars ($25,000.00) ("**Individual Claim Amount**"); and (ii) the amount of all Indemnifiable Losses (which exceeds the Individual Claim Amount) in the aggregate exceeds Two Hundred Thousand Dollars ($200,000.00) ("**Deductible Amount**"), after which point the indemnifying Party will be obligated to indemnify the indemnified Party from and against Indemnifiable Losses exceeding the Individual Claim Amounts that are in excess of the Deductible Amount; provided, however, that no Party shall in any event be obligated to indemnify the other Party for more than the Cap Amount. The term "**Cap Amount**" means (x) for Sellers the lesser of (a) twenty five percent (25%) of the Preliminary Purchase Price for Indemnifiable Losses paid or payable by all Sellers, in the aggregate, and (b) one hundred percent (100%) of the Purchase Price for the Acquired Assets sold by an individual Seller calculated in accordance with the Purchase Price allocation amongst the Sellers for Indemnifiable Losses paid or payable by such Seller; and (y) for Buyers twenty five percent (25%) of the Preliminary Purchase Price for Indemnifiable Losses paid or payable by all Buyers, in the aggregate; provided, however, that no Cap

74

Amount shall apply to claims relating to any fraud or intentional breach by a Party or its Affiliates.

**C.** The indemnification provided in this Section 11.3.2 is the exclusive remedy for a breach by any Party of any representations or warranties contained in this Agreement, a breach by any Party of any agreement or covenant contained in this Agreement or any Ancillary Agreements, that, by its terms, is intended to be performed by a Party after the Closing Date, arising from any Retained Liabilities, or the failure by such Party to pay any amount owing with respect to any purchase money security interests that are Permitted Encumbrances, with respect to the Acquired Assets, and that there shall be no remedy for any breach by any Party of any breach of a covenant or agreement that, by its terms, is intended to be performed by such Party on or prior to the Closing Date.

**D.** In calculating amounts payable hereunder, the amount of any Indemnifiable Losses shall be determined without duplication of any other Losses for which a Claim has been made by a Party or could be made under any other representation, warranty, covenant or agreement included herein, i.e., an indemnified Party may not recover more than once for a particular Indemnifiable Loss.

## 11.4   Environmental Matters:

### 11.4.1   Indemnification of Seller and Buyer:

**A.** Subject to the provisions of this Agreement, and solely with respect to the Manufacturing Facilities, each Seller shall indemnify the appropriate Buyer for Environmental Damages arising solely from Pre-Closing Environmental Contamination and Pre-Closing Compliance Matters at the Manufacturing Facility operated by such Seller.

**B.** Subject to the provisions of this Agreement, and solely with respect to the Manufacturing Facilities, Buyer shall indemnify the appropriate Seller for Environmental Damages arising solely from Post-Closing Environmental Contamination and Post-Closing Compliance Matters at the respective Manufacturing Facility.

**C.** Subject to the provisions of this Agreement, including, without limitation, the next sentence, for those Environmental Damages arising from circumstances that may be considered both: (i) Pre-Closing Environmental Contamination and Post-Closing Environmental Contamination; or (ii) Pre-Closing Compliance Matters and Post-Closing Compliance Matters, such Environmental Damages shall be allocated between the Parties in proportion to the extent that such Environmental Damages arose pre- or post-Closing due to Sellers' or Buyers' actions or omissions, and each Party shall indemnify the other for its share as determined by such allocation.

**D.** Section 12.15 shall apply to any disputes between the parties as to environmental matters.

75

**11.4.2** **Limitations on Liability.** Claims relating to environmental matters are subject to the limitations of this Section 11.4.2 and to the Deductible Amounts and Cap Amounts of Sections 11.3.2. Sellers shall not be liable under this Agreement for Environmental Claims or Environmental Damages:

**A.** Arising from Pre-Closing Compliance Matters, unless written notice of such claim has been served on the Sellers on or before eighteen (18) months following the Closing Date.

**B.** Arising from Pre-Closing Environmental Contamination, unless written notice of such claim has been served on the non-claiming Party on or before three (3) years following the Closing Date.

**C.** Arising from Pre-Closing Environmental Contamination, unless the claiming Party discovers the facts and circumstances giving rise to such claim through the conduct of a environmental investigation in order to comply with a binding order from the Competent Authority or an investigation required by law.

**D.** Where the indemnified party uses the Manufacturing Facility for a use other than or more sensitive than the industrial use in effect at the Closing, or seeks to or changes the zoning or land use classification of the Manufacturing Facility to a classification more sensitive than the industrial classification in effect at Closing.

**E.** Where such Environmental Claims or Environmental Damages would not have arisen or were increased or made more costly as a result of the Buyers or any of their respective employees, agents or contractors volunteering or disclosing information to any Competent Authority or third party without the prior written consent of the Seller.

The following shall not be deemed to be or to have been volunteering or disclosing of information for the purpose of Section 11.4.2.E:

(i) Where the disclosure is required by any law (including any Environmental Law);

(ii) Where the disclosure is specifically and formally required by any securities exchange or regulatory or other Competent Authority to which either Party is subject or submits wherever situated;

(iii) Where the information is clearly in the public domain through no fault of the claiming Party; or

(iv) Where the Seller has given prior written approval to the disclosure.

**F.** To the extent the Buyers did not take reasonable steps to avoid or mitigate any Environmental Damages, acting in a reasonable and cost-effective manner.

**11.4.3** **Exclusion for Katcon Facilities**. Notwithstanding anything to the contrary contained in this Agreement, in no event shall Sellers be liable for, and Buyers shall indemnify, defend and hold harmless from and against, Environmental Claims or Environmental Damages arising from Pre-Closing Compliance Matters or

76

Pre-Closing Environmental Contamination incurred in respect of or related to any of the Manufacturing Facilities of Katcon.

### 11.4.4 Remediation of Environmental Damage:

**A.** Where an Environmental Damage arises out of Environmental Contamination, the non-claiming Party shall be responsible for Remedial Works or the redressing of a Compliance Matter ("**Remedy**") to no less but no more than the Remediation Standards allowed by applicable Environmental Laws; such Remedial Works may be determined, in compliance with applicable Environmental Laws using risk assessment and related risk evaluation methods. Remedial work may be conducted using the most cost-effective and reasonable methods of investigation, corrective measures, remediation, abatement, and/or containment including, to the extent reasonably necessary, the use of institutional and engineering controls or deed restrictions for industrial purposes only, provided that such controls or restrictions do not unreasonably prevent or inhibit any uses of the Manufacturing Facilities that occurred as of the Closing Date, including any construction or expansion for industrial use and operations.

**B.** Where a Remedy is required pursuant to this Agreement, the non-claiming Party shall conduct such Remedy.

**C.** The conduct of a Remedy shall be as follows:

(i) The non-claiming Party shall prepare appropriate work plans or scopes of work to satisfactorily undertake and complete the Remedy under this Agreement; such Party will provide the other Party with an opportunity to review and comment on such work plans or scopes of work, which comments the non-claiming Party may elect to adopt where such comments do not significantly increase any cost or liability of the Remedy;

(ii) When requested, the claiming Party shall cooperate with the non-claiming Party in any communications with the appropriate Competent Authority;

(iii) Where the Seller is the non-claiming Party, Seller shall undertake the Remedy promptly, Seller will take all reasonable steps to avoid interfering with Buyer's operation or use of the Manufacturing Facility, and Buyer will reasonably cooperate with Seller including providing access to the Manufacturing Facility and the use of utilities in the conduct of the Remedy;

(iv) Where applicable the non-claiming Party shall provide to the claiming party copies of all relevant correspondence sent to and received from a Competent Authority, and keep the claiming Party reasonably apprised of the progress of the conduct of the Remedy; and

(v) The conduct of the Remedy shall be deemed complete when, as the case may be:

77

> (1) The non-claiming Party has received approval at the completion of the Remedy by an applicable Competent Authority; or

> (2) Subject to Section 11.4.4.A of this Agreement, the remedy meets the Remediation Standards which are allowed by applicable Environmental Laws.

**11.5 Indemnification Procedure.** The obligations of any indemnifying party to indemnify any indemnified party under Sections 11.3.1 or 11.3.2 with respect to Indemnifiable Losses resulting from the assertion of liability by third parties (including Governmental Authorities) (an **"Indemnification Claim"**), shall be subject to the following terms and conditions:

> **11.5.1** Any party against whom any Indemnification Claim is asserted shall give the party required to provide indemnity hereunder written notice of any such Indemnification Claim promptly after learning of such Indemnification Claim (with such notice satisfying the requirements of this Section 11.5.1), and the indemnifying party may, at its option, undertake the defense thereof by representatives of its own choosing and shall provide written notice of any such undertaking to the indemnified party. Failure to give prompt written notice of an Indemnification Claim hereunder shall not affect the indemnifying party's obligations under this Article 11, except to the extent that the indemnifying party is actually prejudiced by such failure to give prompt written notice. Any written notice delivered by the indemnified party to the indemnifying party seeking indemnification pursuant to this Agreement with respect to Indemnifiable Losses shall set forth, with as much specificity as is reasonably practicable, the basis of the claim for Indemnifiable Losses, the sections of this Agreement which form the basis for the claim, copies of all material written materials relating to such claim and, to the extent reasonably practicable, a reasonable estimate of the amount of the Losses that have been or may be sustained by the indemnified party. The indemnified party shall, and shall cause its employees and representatives to, cooperate with the indemnifying party in connection with the settlement or defense of such Indemnification Claim and shall provide the indemnifying party with all available information and documents concerning such Indemnification Claim. If the indemnifying party, within ninety (90) days after written notice of any such Indemnification Claim, fails to assume the defense of such Indemnification Claim, the indemnified party against whom such claim has been made shall (upon further written notice to the indemnifying party) have the right to undertake the defense, compromise or settlement of such claim on behalf of and for the account and risk, and at the expense, of the indemnifying party, subject to the right of the indemnifying party to assume the defense of such Indemnification Claim at any time prior to settlement, compromise or final determination thereof upon written notice to the indemnified party.

> **11.5.2** Anything in this Section 11.5 to the contrary notwithstanding: (i) the indemnified party shall not settle a claim for which it is indemnified without the prior written consent of the indemnifying party, which consent shall not be unreasonably withheld, conditioned or delayed; and (ii) the indemnifying party shall not enter into any settlement or compromise of any action, suit or proceeding, or consent to the entry of any judgment for relief other than monetary damages to be borne by the

78

indemnifying party, without the prior written consent of the indemnified party, which consent shall not be unreasonably withheld, conditioned or delayed.

**11.5.3 Indemnification Payments.** All payments under this Article 11 shall be treated as adjustments to the Purchase Price.

**11.6  Mitigation.** Notwithstanding any other provision of this Agreement, in no event shall a Party be entitled to indemnification pursuant to this Agreement to the extent any Indemnifiable Losses were attributable to such Party's own gross negligence or willful misconduct or to the extent such Indemnifiable Losses could have reasonably been avoided by an indemnified party, or the damage to such indemnified party from such Indemnifiable Losses reasonably could have been mitigated.

## 12.  MISCELLANEOUS:

**12.1  Fees and Expenses.** Delphi, on behalf of Sellers, on the one hand, and Buyer Parent, on behalf of Buyers, on the other hand, will each bear its own expenses and the expenses of its Affiliates in connection with the preparation and negotiation of this Agreement and the consummation of the transactions contemplated hereby, including their respective brokers' or finders' fees and all fees and expenses of their respective counsel, auditors, consultants and other representatives. Buyer Parent, on behalf of each Buyer, will be solely responsible for: (i) all expenses in connection with its due diligence review of the Business, including, without limitation, surveys, title work, title inspections, title searches, environmental testing or inspections, building inspections, UCC lien and other searches; and (ii) any cost in connection with notarization, registration or recording of this Agreement or an Ancillary Agreement required by applicable Law.

**12.2  Bulk Sales Laws.** Buyer Parent on behalf of each Buyer waives compliance by Delphi and Sellers with any applicable bulk sales Law.

**12.3  Payments in Dollars.** Except as otherwise provided in this Agreement or an Ancillary Agreement, all payments pursuant hereto will be made by wire transfer in U.S. Dollars in same day or immediately available funds.

**12.4  Amendment.** This Agreement may not be amended, modified or supplemented except upon the execution and delivery of a written agreement executed by the duly authorized representative or officer of the Parties.

**12.5  Assignment.** This Agreement will be binding on and inure to the benefit of the successors and assigns of each Party, provided, that no assignment of any rights or obligations hereunder will be made by any Seller or Buyer without the written consent of the other Party, except the assignment of this Agreement by a Filing Affiliate to a succeeding entity following such Filing Affiliate's emergence from Chapter 11 (which assignment will not require the other Party's consent).

**12.6  Waiver.** Any waiver by Sellers or Buyers of any breach or of a failure to comply with any provision of this Agreement: (i) will be valid only if set forth in a written instrument signed by the Party to be bound; and (ii) will not constitute, or be construed as, a continuing waiver of such provision, or a waiver of any other breach of, or failure to comply with, any provision of this Agreement. At any time prior to the Closing Date, the Parties may: (a) extend the time for the performance of any of the obligations or other acts of the other Parties; (b)

waive any inaccuracies in the representations and warranties contained in this Agreement or in any document delivered pursuant hereto; and (c) waive compliance with any of the agreements or conditions contained herein. Except as otherwise expressly provided in this Agreement, any agreement on the part of a Party to any such extension or waiver will be valid only if set forth in an instrument in writing signed on behalf of such Party.

    **12.7    Notices.**   Any notice, request, consent or other communication required or permitted to be given under this Agreement will be in writing and will be deemed to have been sufficiently given or served for all purposes: (i) when personally delivered; (ii) on the first (1st) Business Day after sent by a nationally or internationally recognized overnight courier service with signature to the recipient at the address below indicated; (iii) on the third (3rd) Business Day after sent by registered or certified mail, return receipt requested, postage prepaid; or (iv) when sent if sent by facsimile with confirmation of receipt:

|  |  |
|---|---|
| **If to any Buyer:** | **BIENES TURGON S.A. de C.V.**<br>Manuel Ordonez<br>Santa Catarina, Nuevo Leon, Mexico 66350<br>Attn: Carlos Turner<br>Tel.: (52) 81 80 44 40 24<br>Fax.: (52) 81 83 90 90 97 |
| **With a copy to:** | **BUTZEL LONG**<br>Stoneridge West<br>41000 Woodward Avenue<br>Bloomfiled Hills, Michigan 48304<br>Attn: Michael F. Golab<br>Tel.: (248) 258-7854<br>Fax.: (248) 258-1439 |
| **If to Delphi:** | **DELPHI CORPORATION**<br>5725 Delphi Drive<br>Troy, Michigan 48098<br>Attn: Steve Olsen, M&A<br>Fax No.: +1 248-813-2599 |
| **With a copy to:** | **DELPHI CORPORATION**<br>European Headquarters – Legal Department<br>ZAC Paris Nord II<br>64, avenue de la Plaine de France<br>BP 65059 – Tremblay en France<br>95972 Roissy CDG Cedex<br>France<br>Attn: General Counsel Europe<br>Fax No.: +33 1-5648-6939 |

provided, however, if either Party will have designated a different addressee by notice, then to the last addressee so designated.

80

**12.8   Entire Agreement.**  This Agreement, together with the Ancillary Agreements and the Confidentiality Agreement contain the entire agreement and understanding of the Parties with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof and thereof.

**12.9   Counterparts.**  This Agreement may be executed in two or more counterparts, each of which will be deemed an original, and all of which will constitute one and the same Agreement.  Facsimile signatures will be treated as originals.

**12.10  Publicity.**  Except as required by Law (and then only after prior consultation with the other Party) or in connection with the Bankruptcy Cases, neither Party (nor any of the other Buyers and Sellers) will issue any press release or make any public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the other Party (not to be unreasonably withheld, delayed or conditioned).  Any press release or public announcement will take into account the obligation to provide prior information to Sellers' relevant works council and union representatives, in accordance with applicable law and past practice of Seller.

**12.11  Headings.**  The headings contained in this Agreement are for convenience only, do not constitute a part of this Agreement and will not be deemed to limit or affect any of the provisions hereof.

**12.12  Severability.**  The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision will not affect the validity or enforceability of the other provisions hereof.  If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable: (i) a suitable and equitable provision will be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision; and (ii) the remainder of this Agreement and the application of such provision to other Persons or circumstances will not be affected by such invalidity or unenforceability, nor will such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

**12.13  Third Parties.**  Nothing expressed or implied in this Agreement is intended or will be construed to confer upon or give to any Person, other than the Parties, their Affiliates (whether incorporated or yet to be incorporated after this Agreement) and their respective permitted successors or assigns, any Claims, rights or remedies under or by reason of this Agreement.

**12.14  Governing Law.**  This Agreement will in all respects be governed by and construed in accordance with the laws of the State of Michigan, and to the extent applicable the Bankruptcy Code, without giving effect to rules governing the conflict of laws.

**12.15  Dispute Resolution:**

**12.15.1**  Seller and Buyer will, in the first instance, attempt to settle any and all claims or disputes arising in connection with this Agreement by good faith negotiations by senior management of each party.  If the dispute is not resolved by senior management within thirty (30) days after delivery of a written request for

81

such negotiation by either party to the other, either party may make a written demand (the "**Demanding Party**") for formal dispute resolution (the "**Notice**") and specify therein in reasonable detail the nature of the dispute. Within fifteen (15) business days after receipt of the Notice, the receiving party (the "**Defending Party**") shall submit to the other a written response. The Notice and the response shall include: (i) a statement of the respective party's position and a summary of arguments supporting that position; and (ii) the name and title of the executive who will represent that party and of any other person who will accompany the executive to meetings of the parties. Within fifteen (15) business days after such written notification, the executives (and others named in the Notice or response) will meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to attempt to resolve the dispute. All reasonable requests for information made by one party to the other will be honored promptly. All negotiations pursuant to this Section 12.15.1 are confidential and shall be treated as compromise and settlement negotiations for purposes of applicable rules of evidence.

**12.15.2** To the extent they remain unresolved through the procedure set forth in Section 12.15.1 above, all disputes arising out of or in connection with this Agreement or any of the Ancillary Agreements shall be submitted to the Bankruptcy Court. The Parties agree that the Bankruptcy Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Agreement and of each of the Ancillary Agreements. Notwithstanding anything in this Agreement or any Ancillary Agreement to the contrary, to the extent (i) both parties agree or (ii) the Bankruptcy Court refuses to hear any case arising out of or in connection with this Agreement or any Ancillary Agreement, such dispute shall then be finally settled under the Rules of Arbitration of the International Chamber of Commerce by three (3) arbitrators appointed in accordance with the said Rules. The place of arbitration shall be in Detroit, Michigan and the proceedings shall be conducted in English.

**12.16 No Right of Setoff.** Neither Party nor any of its Affiliates may deduct from, set off, holdback or otherwise reduce in any manner whatsoever any amount owed to it under this Agreement or any Ancillary Agreement against any amounts owed under this Agreement or any Ancillary Agreement by such Person to the other Party or any of such other Party's Affiliates.

**12.17 Risk of Loss**. Prior to the Closing, all risk of loss, damage or destruction to all or any part of the Acquired Assets or the Business will be borne exclusively by Sellers.

**12.18 Prorations.**

**12.18.1** To the extent that any Seller makes any payment relating to the Business prior to, on or after the Closing Date with respect to any item listed in Section 12.18.2 below relating to periods on or after the Closing Date, Buyer will reimburse such Seller for a portion of such payment equal to the amount paid by such Seller multiplied by a fraction the numerator of which is the number of days in the applicable billing period from and including the Closing Date to the end of the billing period and the denominator of which is the entire number of days in the applicable billing period; and

**12.18.2** To the extent Buyer is required to make any payment relating to

82

the Business following the Closing Date with respect to any item listed below relating to periods prior to the Closing Date, Seller will reimburse such Buyer for a portion of such payment equal to the amount paid by such Buyer multiplied by a fraction the numerator of which is the number of days in the applicable billing period ending on the Closing Date and the denominator of which is the entire number of days in the applicable billing period:

**A.** Water, wastewater treatment, sewer charges and other similar types of charges with respect to the Business;

**B.** Electric, fuel, gas, telephone and other utility charges;

**C.** Regarding Global Sale Employees, payroll expenses (excluding vacation pay) and other employee-related payments (of whatsoever kind) or assessments and installments on special benefit assessments;

**D.** Reimbursable employee business expenses of Global Sale Employees ; and

**E.** Payments and charges due under any Contract (other than pursuant to Collective Bargaining Agreements, Employee Benefit Plans and employee payroll-related items except as set forth in Sections 6.6), Permit, commitment or other binding arrangement to which any Seller is a party or is obligated and which are being assigned to a Buyer pursuant to this Agreement.

**12.19 Enforcement of Agreement.** The Parties agree that irreparable damage would occur in the event that any provision of this Agreement was not performed in accordance with its specific terms or were otherwise breached. It is accordingly agreed that the Parties will be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions hereof, this being in addition to all other remedies available at law or in equity.

*[Remainder of the page left Intentionally blank.]*

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By: _____
Name:   Stephan H. Olsen
Title:    M+A Director

**BIENES TURGON S.A. de C.V.**

By: _____
Name:
Title:

The following U.S. Persons sign this Agreement solely with respect to the Acquired Assets being bought or sold by such Person.

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By: _____
Name: :  Stephan H. Olsen
Title:    M+A Director

**DELPHI TECHNOLOGIES, INC.**

By: _____
Name:  Stephen H. Olsen
Title:    M+A Director

84

**IN WITNESS WHEREOF,** each of the Parties hereto has caused this Agreement to be executed by its duly authorized officer, in each case as of the date first above written.

**DELPHI CORPORATION**

By: _____
Name:
Title:

**BIENES TURGON S.A. de C.V.**

By: _____
Name:                CARLOS TURNER
Title:                DIRECTOR, BUSINESS DEVELOPMENT

The following U.S. Persons sign this Agreement solely with respect to the Acquired Assets being bought or sold by such Person.

**DELPHI AUTOMOTIVE SYSTEMS LLC**

By:_____
      Name: :
      Title:

**DELPHI TECHNOLOGIES, INC.**

By:_____
      Name:
      Title:

## SCHEDULES

| | |
|---|---|
| Schedule 1 | Detail of Sellers and Buyers |
| Schedule 1.1.A | Buyers Knowledge |
| Schedule 1.1.B | Sellers Knowledge |
| Schedule 2.1.2.B | Acquired Assets - Machinery and Equipment |
| Schedule 2.1.2.F | Real Property |
| Schedule 2.1.2.G | Technical Center Assets |
| Schedule 2.1.3.N | Excluded Computer Hardware, Equipment, Software and Other Assets |
| Schedule 2.3.2 | Retained Environmental Liabilities |
| Schedule 3.3.1 | Closing Working Capital Statement |
| Schedule 3.5.1 | Allocation of Preliminary Purchase Price |
| Schedule 4.3 | Shares of Sale Companies |
| Schedule 4.4 | No Conflicts or Approvals |
| Schedule 4.5 | Sufficiency of Acquired Assets |
| Schedule 4.6 | Compliance with Laws; Permits |
| Schedule 4.7 | Proceedings against Sellers |
| Schedule 4.8 | Absence of Certain Changes |
| Schedule 4.9 | Tax Notices/Deficiencies |
| Schedule 4.10.1 | Global Sale Employees |
| Schedule 4.10.2 | Seller Employee Benefit Plans |
| Schedule 4.10.4 | ERISA, IRC and Other Laws Compliance |
| Schedule 4.10.5 | Proceedings relating to Sellers Employee Benefit Plans |
| Schedule 4.10.6 | ERISA Liabilities |
| Schedule 4.10.9 | Collective Bargaining Agreements |
| Schedule 4.10.10 | Labor Matters |
| Schedule 4.11.1 | Patents and Trademarks |
| Schedule 4.11.2 | Internet Domain Names |
| Schedule 4.11.4 | Infringement Claims by 3rd Parties |
| Schedule 4.11.5 | Third-Party Software |
| Schedule 4.12.1 | Material Contracts |
| Schedule 4.12.2 | Default/Post-Petition Contracts |
| Schedule 4.12.3 | Government Contracts |
| Schedule 4.12.4 | Assignment of Rights |
| Schedule 4.13.1 | Defects in Title for Personal Property Assets |
| Schedule 4.13.3 | Machinery, Equipment, Tools |
| Schedule 4.14.1 | Leased Real Property |
| Schedule 4.14.2 | Owned Real Property |
| Schedule 6.1 | Exceptions to Covenants Regarding Conduct of Business prior to the Closing |
| Schedule 6.3 | Assumed U.S. Contracts |
| Schedule 6.6.1 | U.S. Employees Selected by Buyer |
| Schedule 6.6.3 | Liability Balance Sheet Provisions |
| Schedule 6.6.3.1 | Employee Benefit and Severance Costs Australia |
| Schedule 6.6.3.2 | Employee Benefit and Severance Costs China |
| Schedule 6.6.3B(ii) | Shortfall |
| Schedule 6.11.1 | Intellectual Property Licensed Contracts to be Sub-Licensed to Buyers |
| Schedule 6.11.2 | License Grant From Buyer to Seller |
| Schedule 6.12.1 | Competition Filings |
| Schedule 6.16.2 | Other Government Subsidies |
| Schedule 6.21 | Open Customer Reimbursement Obligations as of Closing |

**SCHEDULE 1**

**DETAILS OF SELLERS AND BUYERS**

| | ASSET/ SHARE | ASSET SELLER | SECURITIES SELLER | SALE COMPANY | BUYER |
|---|---|---|---|---|---|
| **MANUFACTURING FACILITIES** | | | | | |
| Mexico: Santa Catarina District, Monterrey Guadalupe District, Monterrey | Share | n/a | Delphi Controladora, S.A. de C.V. (40% JV) | Katcon, S.A. de C.V. | To be provided 10 days prior to Closing |
| Valencia, Venezuela | | | | | |
| Port Elizabeth, South Africa | Share | n/a | Delphi Holdings Luxembourg S.àr.l. (100%) | Delphi South Africa (Proprietary) Ltd. | To be provided 10 days prior to Closing |
| Shanghai, China | Asset | Shanghai Delphi Emission Control Systems Co., Ltd. | n/a | n/a | To be provided 10 days prior to Closing |
| Clayton, Australia | Asset | Delphi Automotive Systems Australia Limited | n/a | n/a | To be provided 10 days prior to Closing |
| Gurgaon, India | Asset | Delphi Automotive Systems Private Ltd. | n/a | n/a | To be provided 10 days prior to Closing |
| Bionie, Poland | Asset | Delphi Poland S.A. | n/a | n/a | To be provided 10 days prior to Closing |
| **TECHNICAL CENTERS:** | | | | | |
| Bascharage, Luxembourg | Asset | Delphi Automotive Systems Luxembourg S.A. | n/a | n/a | To be provided 10 days prior to Closing |
| Flint/Auburn Hills, Michigan | Asset | Delphi Automotive Systems LLC | n/a | n/a | To be provided 10 days prior to Closing |
| **TECHNOLOGY:** | | | | | |
| Troy, Michigan | Asset | Delphi Technologies, Inc. | n/a | n/a | To be provided 10 days prior to Closing |

## SCHEDULE 3.5.1

### ALLOCATION OF PRELIMINARY PURCHASE PRICE

The Preliminary Purchase Price shall be allocated as follows`

|    |                                                                                    | Purchase Price Allocation $ USD MM |
|----|------------------------------------------------------------------------------------|:--:|
| 1. | Katcon, S.A. de C.V. - Sale of Shares                                               | 2.4 |
| 2. | Delphi South Africa (Proprietary) Ltd. Sale of Shares                              | 2.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets      | 4.2 |
| 4. | Delphi Automotive Systems Australia Ltd. Sale of Asset                             | 3.3 |
| 5. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of Assets             | 0.2 |
| 6. | Delphi Poland S.A.                                                                  | 4.7 |
| 7. | Delphi Automotive Systems Luxembourg S.A.                                           | 0.05 |
| 8. | All Acquired Assets of Filing Affiliates.                                           | 0.15 |
|    | **Total**                                                                          | 17.0 |

# Exhibit 2

# Schedule of Cure Amounts

| Party | Contract | Cure Amount |
|---|---|---|
| Borla Romcat S.A. | License and Technical Assistance Agreement between Delphi Automotive Systems LLC and Borla Romcat S.A., dated February 28, 1999 | $0 |
| Sango Co., Ltd. | License Agreement between Sango Co., Ltd. and Delphi Automotive Systems LLC, dated March 14, 2003 | $0 |
| Katcon S.A. de C.V. | Technical Information and Assistance Agreement Amendment between Delphi Technologies, Inc and Katcon, S.A. de C.V. dated May 2, 2000 | $0 |

## **Exhibit 3**

**SCHEDULE 3.5.1**

**ALLOCATION OF PRELIMINARY PURCHASE PRICE**

The Preliminary Purchase Price shall be allocated as follows`

|    |    | Purchase Price Allocation $ USD MM |
|----|----|------------------------------------|
| 1. | Katcon, S.A. de C.V.  -  Sale of Shares | 2.4 |
| 2. | Delphi South Africa (Proprietary) Ltd. Sale of Shares | 2.0 |
| 3. | Shanghai Delphi Emission Control Systems Company, Ltd. (China) Sale of Assets | 4.2 |
| 4. | Delphi Automotive Systems Australia Ltd. Sale of Asset | 3.3 |
| 5. | Delphi Automotive Systems Pvt. Ltd. Maharashtra, India Sale of  Assets | 0.2 |
| 6. | Delphi Poland S.A. | 4.7 |
| 7. | Delphi Automotive Systems Luxembourg S.A. | 0.05 |
| 8. | All Acquired Assets of Filing Affiliates. | 0.15 |
|    | **Total** | 17.0 |