UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - x
                                :
            In re               :   Chapter 11
                                :
DELPHI CORPORATION, et al.,     :   Case No. 05-44481 (RDD)
                                :
                                :   (Jointly Administered)
Debtors.                        :
- - - - - - - - - - - - - - - x

Appearances:

For Louisiana Department of Revenue: David M. Hansen, Esq.,
Florence Bonaccorso-Saenz, Esq.

For Debtors: Skadden, Arps, Slate, Meagher & Flom LLP, by John
Wm. Butler, Esq., John K. Lyons, Esq.


### MEMORANDUM OF DECISION ON MOTION UNDER BANKRUPTCY RULE 9006(b)(1)


**ROBERT D. DRAIN**, United States Bankruptcy Judge

The Bankruptcy Code provides that a duly filed claim shall be allowed unless a party in interest objects. 11 U.S.C. § 502(a). If objected to, an untimely claim shall be disallowed unless the claim was "tardily filed as permitted . . . under the Federal Rules of Bankruptcy Procedure." Id. § 502(b)(9).

After the debtors objected to a claim of the Louisiana Department of Revenue (the "Department") because it was filed approximately thirteen-and-a-half months late, the Department moved under Bankruptcy Rule 9006(b)(1) for an order deeming it

timely because of the Department's "excusable neglect."[1]  For the following reasons, the motion should be denied and the Department's claim disallowed.

## Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B).

## Background

On October 8, 2005, Delphi Corporation ("Delphi Corp.") and certain of its subsidiaries, including Delphi Automotive Systems ("DAS LLC;" with the other debtors herein, the "Debtors"), filed petitions under chapter 11 of the Bankruptcy Code.

On April 12, 2006, this Court issued an order under Fed. R. Bankr. P. 3003(c)(3) (the "Bar Date Order") setting July 31, 2006 (the "Bar Date") as the deadline, with exceptions not relevant to this dispute, for filing proofs of claim against the Debtors.  The Debtors' noticing agent served a notice of the Bar Date on the Department at sixteen different addresses.

---

[1] Bankruptcy Rule 9006(b)(1) provides,

> [W]hen an act is required . . . to be done at or within a specified period by these rules . . ., the court for cause shown may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1).

The Department timely filed two proofs of claim against certain of the Debtors. However, it did not file a proof of claim for 2002 taxes incurred by Delco Electronics Corporation ("DEC") (the "2002 Tax Claim" or the "Claim") until September 18, 2007, approximately thirteen-and-a-half months after the Bar Date. It filed the Claim against DEC's corporate successor, Delco Electronics LLC.[2] On February 15, 2008, the Debtors objected to the Claim as being untimely, and the Department responded with the present motion.

## Discussion

The Department makes three arguments. First, it asserts that it did not receive proper notice of the Bar Date because the Bar Date notice failed to identify by account number and name the responsible taxpayer-entity (DEC) that incurred the debt, as opposed to the Debtor owing it (its corporate successor, DAS LLC). Second, it contends that the Debtors served notice of the Bar Date on the incorrect division and/or individual at the Department. Third, it asserts that the Department's bankruptcy section did not reasonably learn of the Bar Date's applicability to DEC's 2002 tax obligation until August 2007, and, once it did, it promptly filed the Claim.

1.    There was Proper Notice of the Bar Date

---

[2] Delco Electronics LLC is not a Debtor, but, rather, only a division of DAS LLC. The Debtors have not objected to the Claim on this basis, however.

Although the Department has moved under Bankruptcy Rule 9006(b)(1), its first two arguments really do not fall within Rule 9006(b)(1)'s "excusable neglect" framework. They involve, instead, the question of whether the Department received proper notice of the Bar Date. As a matter of due process, "[k]nown creditors . . . must be afforded notice 'reasonably calculated, under all the circumstances to apprise' them of the pendency of the bar date." In re R.H. Macy & Co., 161 B.R. 355, 359 (Bankr. S.D.N.Y. 1993) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)); In re XO Commc'ns, Inc., 301 B.R. 782, 791-92 (Bankr. S.D.N.Y. 2003); see also 11 U.S.C. § 342; Fed. R. Bankr. P. 2002(a) (setting forth statutory notice requirements).

Contrary to the Department's assertions, however, it received proper notice of the Bar Date. Uncontroverted affidavits of the Debtors' noticing agent establish that on April 20, 2006, the Debtors caused notice of the Bar Date to be served on the Department at sixteen different addressees.[3] The Department has offered no evidence, let alone evidence sufficient to overcome the affidavits of mailing, that it did not receive the notices. Nor does the Department deny the

---

[3]    The Debtors also have submitted an uncontroverted affidavit by their noticing agent that the Department was served with several copies of the notice of commencement of the chapter 11 cases.

4

addresses' validity. The Court must presume, therefore, that the Department actually received the Bar Date notice. In re R.H. Macy & Co., 161 B.R. at 359 (citing Hagner v. United States, 285 U.S. 427, 430 (1932)); In re Dana Corp., 2007 Bankr. LEXIS 1934, at *13-15 (Bankr. S.D.N.Y. May 30, 2007).

The Bar Date notice also did not have to include an account number related to DEC, the original obligor. Indeed, it did not have to include an account number at all. Congress rejected a proposal that debtors provide creditors with account numbers in bar date notices. See 3-342 Collier on Bankruptcy (15th ed.) ¶ 342.04 (citing Bankruptcy Amendments Act of 1994, S. 540, 103d Cong. § 221 (1994)); see also In re Cable & Wireless USA, Inc. 338 B.R. 609, 616 (Bankr. D. Del. 2006) (noting that "[a] bar date notice will not contain the account numbers of the debtor or any of the entities of the debtors"). Instead, section 342(c)(1) of the Bankruptcy Code provides that any notice required "to be given by the debtor to a creditor . . . shall contain . . . [the] last 4 digits of the taxpayer identification number of the debtor." 11 U.S.C. § 342(c)(1).

As is clear from the language quoted above, section 342(c)(1) of the Bankruptcy Code also does not require provision of the last four digits of a corporate predecessor's tax identification number, only the last four digits of the debtor's tax identification number. The Department does not argue that

5

the Debtors failed to provide this information in their Bar Date
notice with regard to DAS LLC, the Debtor against whom the 2002
Tax Claim would be recoverable if it had been timely filed. DAS
LLC thus clearly and unambiguously gave the Department notice of
the need to file claims against it before the Bar Date.

Perhaps more directly to the Department's argument,
neither due process nor the notice provisions of the Bankruptcy
Code and Rules required DAS LLC also to advise the Department of
any claims that the Department might have against it, including
claims against DAS LLC (or Delco Electronics LLC, for that
matter)[4] as a result of their being DEC's successors pursuant to
a corporate reorganization. It was up to the Department, having
been notified of the Bar Date, to determine if it had any claims
against the Debtors. See In re Cable & Wireless USA, Inc., 338
B.R. at 617; In re National Steel Corp., 316 B.R. 510, 518
(Bankr. N.D. Ill. 1994).[5]

---

[4] See Note 2, above.

[5]  This is not to say that the Department's ability to interpret
the Bar Date notice is irrelevant to the motion's request for
relief under Bankruptcy Rule 9006(b)(1) based on "excusable
neglect."  It is irrelevant only as to whether the Debtors
properly notified the Department of the Bar Date. Not only may
an unclear notice support a finding of excusable neglect,
Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507
U.S. 380, 398-99 (1993), but also the recipient of a clear
notice may be excused under certain circumstances from not
understanding it well enough to be able to act on it.  For
example, assume Mr. X hit Mr. Y's car while Mr. Y was buying
groceries. Although Mr. X notifies Mr. Y of the bar date for
asserting any claims against him, Mr. Y may be excused from

Nor were the Debtors required, as the Department argues, to send the Bar Date notice to the Department's Lake Charles Regional Office, or, alternatively, the Collections Division in Baton Rouge. The Bankruptcy Code puts the onus on the creditor to specify a particular division or subdivision to receive notice:

> If [a] creditor designates . . . an organizational subdivision . . . to be responsible for receiving notices under this title and establishes reasonable procedures so that such notices receivable by such creditor are to be delivered to . . . such subdivision, then a notice provided to such creditor other than in accordance with this section . . . shall not be considered to have been brought to the attention of such creditor until such notice is received by such person or such subdivision.

11 U.S.C. § 342(g)(1). The Department has offered no evidence that it designated any particular office or division to receive notice in these jointly administered cases as contemplated by section 342(g)(1), or that the Debtors were aware that only the Lake Charles regional office or the Baton Rouge Collections Division were capable of acting on the Bar Date notice with regard to the 2002 Tax Claim (it has not even offered evidence that the Department actually suffered under such an impediment).

The Department acknowledges, moreover, that it has personnel who specialize in claims against debtors in bankruptcy cases – a "bankruptcy section" – yet it fails to assert that

_____

filing a late claim if he has no reason to link Mr. X to the accident. See discussion of "excusable neglect" below.

7

people capable of forwarding the Bar Date notice to the appropriate personnel did not receive the notice, or why it did not at least have in place procedures to apprise all branches of the need to forward bar date notices to designated people for further action. See 3-342 Collier on Bankruptcy (15th ed.) ¶ 342.09 ("[I]f such reasonable procedures do not exist, any actual notice given to a creditor should be deemed brought to the creditor's attention.").

2.    The Department has not Established Excusable Neglect

The claims bar date is an important milestone in most chapter 11 cases. See First Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs. Corp.), 937 F.2d 833, 840 (2d Cir. 1991) ("[A] bar order does not 'function merely as a procedural gauntlet,' . . . but as an integral part of the reorganization process." (quoting United States v. Kolstad (In re Kolstad), 928 F.2d 171, 173 (5th Cir. 1991))); In re Musicland Holdings Corp., 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006). The Debtors' cases were no exception: creditors filed over 16,000 proofs of claim before the Bar Date, over 13,000 thousand of which have been subject to the claims objection process governed by the Court's case management orders. Nevertheless, the bankruptcy court may enlarge the time for filing proofs of claim "where the failure to act was the result of excusable neglect." Fed. R. Civ. P. 9006(b)(1).

8

The United States Supreme Court has adopted a two-part framework for the movant to establish its "excusable neglect" under Rule 9006(b)(1).[6] Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993). First, the failure to file the proof of claim must have been caused by "neglect," which the Court defined as "inadvertence, mistake, or carelessness," including "intervening circumstances beyond the party's control." Pioneer, 507 U.S. at 388. A tactical, or simply a knowing, decision not to file a timely claim will not suffice. Second, the movant's neglect must have been "excusable," which is to be determined in the exercise of the court's equitable discretion taking into account all relevant circumstances surrounding the failure to file a timely claim, id. at 395, guided, however, by the following four factors: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.

The Second Circuit has taken a "hard line" when applying the Pioneer factors to motions under Bankruptcy Rule 9006(b)(1) and other federal rules premised on "excusable

---

[6] The movant has the burden to demonstrate excusable neglect. Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 121 (2d Cir. 2005).

neglect."[7]  In re Enron Corp., 419 F.3d at 122 (citing Silivanch

v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003)).

Although all four Pioneer factors should be considered, the

Second Circuit places the greatest weight on the reason for the

delay, and whether it was in the movant's reasonable control; In

re Musicland Holdings Corp., 356 B.R. at 607.

> [I]n the typical case, three of the Pioneer factors –
> the length of the delay, the danger of prejudice, and
> the movant's good faith – usually weigh in favor of
> the party seeking the extension. . . . [W]e and other
> circuits have focused on the third factor: the reason
> for the delay, including whether it was within the
> reasonable control of the movant. . . . [T]he equities
> will rarely if ever favor a party who fails to follow
> the clear dictates of a court rule. . . . [W]here the
> rule is entirely clear, we continue to expect that a
> party claiming excusable neglect will, in the ordinary
> course, lose under the Pioneer test.

In re Enron Corp., 419 F.3d at 122-123 (internal quotations and

citations omitted); see also Canfield v. Van Atta Buick/GMC

Truck, Inc., 127 F.3d 248, 250-51 (2d Cir. 1997).  Factors other

than the reason for the delay usually are relevant, therefore,

only in close cases.  In re Musicland Holdings Corp., 356 B.R.

at 608.

   a.  The Reason for the Delay was in the Department's Control

        This Court does not accept the Department's contention

that the 2002 Tax Claim's tardy filing may be excused under Rule

9006(b)(1) because the Department's bankruptcy section filed the

---

[7]    See Fed R. Civ. P. 6(b)(1)(B), 60(b)(1); Fed. R. App. P.
4(a)(5)(A)(ii).

Claim promptly after it learned, in August 2007, of DEC's corporate transformation. There are several problems with the Department's argument.

First, the Debtors had for years put the Department on notice that DEC, the entity that incurred the tax liability covered by the 2002 Tax Claim, had been transformed into Delco Electronics LLC (against which the Claim was eventually filed) and then into a division of DAS LLC, certainly with enough notice to have prompted the Department to file a protective proof of claim by the Bar Date.

Thus in November 2004 Delphi Corp. attached the following notice (the "Conversion Notice") to DEC's 2003 corporate income and franchise tax return filed with the Department:

> Delco Electronics Corporation was converted to a limited liability company in a conversion transaction . . . effective as of 11:59 p.m. December 31, 2003, and changed its name at that time to Delco Electronics LLC.

> Effective January 1, 2004, Delco Electronics LLC is a single-member limited liability company. Its sole member is Delphi Corporation (through its single member limited liability company, Delphi Automotive Systems LLC, a disregarded entity), which was also the sole shareholder of Delco Electronics Corporation. For tax years subsequent to 2003, Delco Electronics LLC's activity, as a single-member disregarded entity, will be reported by Delphi Corporation under its [tax identification number].

In November 2005 Delphi Corp. also attached the Conversion
Notice to DEC's 2004 corporate tax return, which claimed no
assets or revenues (which, when compared to in excess of $2.28
billion of assets and $4.74 billion of gross revenues that were
claimed in the 2002 return, is another reason why the Department
should have known that DEC had been succeeded by a another
entity).

Delphi Corp. then filed an amended 2002 tax return
(the "Amended 2002 Tax Return") for DEC on June 28, 2006,
approximately a month before the Bar Date, which also included
the Conversion Notice. The Amended 2002 Tax Return stated,
moreover, that Delco Electronics LLC was liquidated on September
30, 2005 and became a division of DAS LLC.  It also referenced
the Debtors' chapter 11 cases and explained that the automatic
stay under section 362(a) of the Bankruptcy Code prohibited the
Debtors from paying pre-petition tax obligations until the
bankruptcy court confirmed a plan of reorganization.

Moreover, the notice of the Bar Date directed
creditors (including the Department) to view the Debtors'
Statement of Limitations, Methodology, and Disclaimer regarding
the Debtors' Schedules and Statements filed under Bankruptcy
Rule 1007 (the "Schedules and Statements"), stating that "[o]n
September 30, 2005, Delco Electronics LLC was merged into DAS
LLC. As such, all information relating to Delco Electronics LLC

12

is included in the Schedules and Statements for DAS LLC." The Schedules and Statements also explain that several divisions, including "Delco Electronics," are part of Debtor DAS LLC. Schedules and Statements ¶¶ 16-17. The Bar Date notice then directed the Department to the Schedules and Statements on this Court's electronic docketing system or the Debtors' bankruptcy website, providing instructions to access PACER and/or the website.

The Department had sufficient information within its control, therefore, to determine that the Bar Date applied to the 2002 Tax Claim for the taxes originally incurred by DEC. See In re Cable & Wireless USA, Inc., 338 B.R. at 616-17 (finding, in the light of a similar record of prior notices of a corporate transformation, that the reason for the creditor's delay in filing its claim was within the creditor's control and denying it relief under Rule 9006(b)(1)).

Second, the Department's explanation for its delay in filing the Claim is not factually consistent. The Department contends that it did not learn of DEC's corporate transformation until May 16, 2007, when the Debtors notified the Department that the Department's notice of intended seizure, which had been sent to Delco Electronics LLC, violated the automatic stay under section 362(a) of the Bankruptcy Code. Therefore, the Department must have known at least that DEC had become Delco Electronics

13

LLC, because it would not have otherwise notified that entity of the intended seizure. And, as noted above, the Debtors have not objected to the Claim on the basis that it was filed against Delco Electronics LLC, a division of DAS LLC, rather than against DAS LLC.

In sum, given the tax filings discussed above, including the Amended 2002 Tax Return that explained the consequences of the Debtors' chapter 11 filing and Delco Electronics LLC's having become a division of DAS LLC, the Department has not offered a valid reason why it did not understand well before the Bar Date that DEC's debts were owed by Debtor DAS LLC.

Relatedly, the Department also offers no valid explanation why it waited from May 16, 2007 – when the Debtors responded to the notice of seizure by yet again informing the Department that DEC had become a division of DAS LLC, a chapter 11 debtor – until September 17, 2007, four months later, to file the Claim. The only reason it offers for the delay after allegedly learning of DEC's corporate transformation is the large number of communications and notices that it processes, notwithstanding, as discussed above, that it knew of the Bar Date and has a special "bankruptcy section" to which its branches could promptly forward notices. This is not a valid excuse. In re Cable & Wireless, 338 B.R. at 617 ("[The

14

creditor] cannot argue persuasively that because it receives a high volume of customers it is excused from disregarding the Bar Date Notice."); In re Walker, 332 B.R. 820, 831 (Bankr. D. Nev. 2005) ("Mistakes resulting from institutionalized procedures, or lack of quality control type of procedures, are not excusable.").

b. The Other *Pioneer* Factors do not Support a Finding of "Excusable Neglect"

The fourth *Pioneer* factor, whether the creditor acted in good faith, weighs, as is usually the case with motions under Rule 9006(b)(1), in the Department's favor. There is no basis to question the Department's good faith.

The two remaining factors do not weigh in its favor, however. This is so even though with respect to the first factor (the danger of prejudice to the debtor) the amount of the 2002 Tax Claim, in and of itself, is not material to the Debtors' chapter 11 cases, because the decision to allow the Claim now could nevertheless adversely affect the cases. The Court has previously entered an order confirming the Debtors' chapter 11 plan, which was expressly premised, among other conditions, on allowed unsecured claims not exceeding an aggregate cap. There is a legitimate concern that if the Court permitted the late filing of the Department's Claim, it would establish a precedent

for the late filing of numerous other claims that would, in the aggregate, jeopardize the claims cap under the chapter 11 plan.

The plan has not yet gone effective. If the plan is amended to remove the aggregate cap on allowed claims (although there is no indication that this is likely), the Department would have a stronger argument that the late filing of the Claim would not materially impact the Debtors' cases. Even if the plan did not contain an aggregate allowed claims cap, however, the Debtors have a valid concern about encouraging other late claims at this juncture, when almost all of the thousands of claims against them have been liquidated. See In re Enron Corp., 419 F.3d at 132 (recognizing the risk of opening the door to late claims in a case with a similarly large number of claims); In re Kmart Corp., 381 F.3d 709, 714 (7th Cir. 2004) (same); In re Dana Corp., 2007 Bankr. LEXIS 1934, at *19 (same). The Department's motion is far from unique. The Court has denied several motions under Rule 9006(b)(1) in the Debtors' cases that were made on comparable grounds.

The remaining Pioneer factor, the length of the delay, also weighs against the Department's motion. As noted, the Claim was filed well over thirteen months after the Bar Date, and, even under the Department's questionable rationale, over four months after the Debtors' response to the Department's notice of seizure. See In re Enron Corp., 419 F.3d at 125 (upholding

16

bankruptcy court's conclusion that a delay of six months was "substantial"); <u>In re Dana Corp.</u>, 2007 Bankr. LEXIS 1934, at *17-18 (six month's delay "substantial"); <u>In re XO Commc'ns, Inc.</u>, 30 B.R. at 797 (four month's delay "substantial").

## Conclusion

For the foregoing reasons, the Department's motion that its late proof of claim be deemed timely should be denied and the 2002 Tax Claim should be disallowed. The Debtors should submit a proposed order in accordance with this Memorandum.

Dated:    New York, New York
          January 20, 2009

                              /s/Robert D. Drain
                              Robert D. Drain
                              United States Bankruptcy Judge