## Exhibit C

**Sale Approval Order**

05-44481-rdd    Doc 14701-3    Filed 02/04/09    Entered 02/04/09 19:25:21    Exhibit C - Sale Order    Pg 1 of 18

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
    In re                                 :        Chapter 11
:
DELPHI CORPORATION, et al.,        :        Case No. 05-44481 (RDD)
:
                      Debtors.      :        (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363, 365, 1123, AND 1146 AND
FED. R. BANKR. P. 2002, 6004, 6006, AND 9014 AUTHORIZING AND
APPROVING (I) SALE BY DELPHI AUTOMOTIVE SYSTEMS LLC OF
CERTAIN REAL PROPERTY LOCATED IN ANAHEIM, CALIFORNIA AND (II)
<u>ASSUMPTION AND ASSIGNMENT OF RELATED EXECUTORY CONTRACT</u>

("ANAHEIM SALE APPROVAL ORDER")

       Upon the motion, dated February 4, 2009 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders under 11 U.S.C. §§ 363, 365, 1123, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving the bidding procedures (the "Bidding Procedures"), (ii) granting certain Bid Protection (as hereinafter defined), (iii) approving the form and manner of sale notices (the "Notice Procedures"), and (iv) setting a date for the sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of an asset of Delphi Automotive Systems LLC ("DAS LLC" or the "Selling Debtor Entity") comprising a certain improved parcel of real property of approximately 21.6 acres and located in Anaheim, California (the "Anaheim Property" or "Acquired Asset"), free and clear of liens, claims, encumbrances, and interests to [_____] the Purchaser or Successful Bidder, as the case may be, pursuant to the Real Property Purchase Agreement, dated

[_____] (the "Agreement"), a copy of which is attached hereto as <u>Exhibit 1</u> and (ii) the assumption and assignment of a certain prepetition executory contract (the "Assumed Contract") to the Purchaser or the Successful Bidder, as the case may be, in connection with the Sale; and the Court having entered on [____], 2009, the Order Under 11 U.S.C. §§ 363, 365, 1123, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protection, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date (the "Bidding Procedures Order") (Docket No.___); and the Sale Hearing having been held on March 24, 2009, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion and the arguments of counsel made, and the evidence proffered or adduced at, and on the record of, the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

   A.  The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

   B.  The statutory predicates for the relief sought in the Motion are sections 363, 365, 1123, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

---

[1] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. <u>See</u> Fed. R. Bankr. P. 7052. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, the assumption and assignment of the Assumed Contract, and the Cure Amounts as approved herein has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, or the assumption and assignment of the Assumed Contract as provided herein is necessary or shall be required.

D.    As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Selling Debtor Entity has marketed the Anaheim Property and conducted the sale process in compliance with the Bidding Procedures Order.

E.    The Selling Debtor Entity has full power and authority to execute the Agreement and all other applicable documents contemplated thereby. The transfer and conveyance of the Anaheim Property by the Selling Debtor Entity have been duly and validly authorized by all necessary action of the Selling Debtor Entity. The Selling Debtor Entity has all of the power and authority necessary to consummate the transactions contemplated by the Agreement and has taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Selling Debtor Entity to consummate such transactions.

    F. The Selling Debtor Entity has demonstrated (i) good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Selling Debtor Entity and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Anaheim Property and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Anaheim Property pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Anaheim Property.

    G. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Purchaser, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Anaheim Property during the past six months, (vi) all entities known to have asserted any Liens (as defined below) in or upon the Anaheim Property, (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (viii) the United States Attorney's office, (ix) the United States Department of Justice, (x) the Securities and Exchange Commission, (xi) the Internal Revenue Service, (xii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the

"Supplemental Case Management Order")), (xii) the party to the Assumed Contract, and (xiii) such other entities as are required to be served with notices under the Supplemental Case Management Order.

    H.  The Purchaser is not an "insider" of any of the Debtors as that term is defined in 11 U.S.C. § 101(31).

    I.  This Sale Order and the consummation of the contemplated transactions are supported by good business reasons, and will serve the best interests of the Debtors, their estates and creditors by maximizing the values to be obtained from the Anaheim Property.

    J.  The Agreement was negotiated, proposed, and entered into by the Selling Debtor Entity and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Selling Debtor Entity nor the Purchaser has engaged in any conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

    K.  The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby.  The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Agreement at all times after the entry of this Sale Approval Order.

    L.  The consideration provided by the Purchaser for the Anaheim Property pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Anaheim Property, (iii) will provide a greater recovery for the Selling Debtor Entity's stakeholders than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

        M.    The Sale must be approved and consummated promptly to obtain the value provided under the terms of the Agreement.  The Sale is consistent with and in the contemplation of the terms of the First Amended Plan of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, As Modified (as amended, the "Plan") confirmed by order of this Court on January 25, 2008 (the "Confirmation Order") (Docket No. 12359), and, accordingly, constitutes a transfer to which section 1146(c) of the Bankruptcy Code applies.

        N.    The transfer of the Anaheim Property to the Purchaser is a legal, valid, and effective transfer of the Anaheim Property, and shall vest the Purchaser with all right, title, and interest of the Selling Debtor Entity to the Anaheim Property free and clear of any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) (collectively, the "Liens") and any monetary amounts which are secured by any Lien.

        O.    If the Sale of the Anaheim Property by the Selling Debtor Entity were not free and clear of any Liens as set forth in the Agreement and this Sale Approval Order, or if the Purchaser would, or in the future could, be liable for any of the Liens as set forth in the Agreement and this Sale Approval Order, the Purchaser would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor Entity, its estate, and its stakeholders.

P.  The Selling Debtor Entity may sell its interest in the Anaheim Property free and clear of all Liens because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object or withdrew their objections to the Sale are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an interest with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale.

Q.  Except as expressly provided in the Agreement, the (i) transfer of the Anaheim Property to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assumed Contract will not subject the Purchaser to any liability whatsoever with respect to the Anaheim Property prior to the Closing of the Sale, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

R.  The Selling Debtor Entity has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assumed Contract as applicable to the Purchaser in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contract is in the best interests of the Selling Debtor Entity, its estate, and its creditors.  The Assumed Contract being assigned to the Purchaser is an integral part of the Anaheim Property being purchased by the Purchaser and, accordingly, such assumption and assignment of the Assumed Contract and liabilities is reasonable and enhances the value of the Selling Debtor Entity's estate.

S.    The Selling Debtor Entity has (i) cured, or provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under the Assumed Contract, within the meaning of 11 U.S.C. § 365(b)(1)(A) and (ii) provided compensation or adequate assurance of compensation to the party to the Assumed Contract for any actual pecuniary loss to such party resulting from a default prior to the date hereof under the Assumed Contract, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Purchaser has provided adequate assurance of its future performance of and under the Assumed Contract, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assumed Contract to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

T.    Approval of the Agreement and consummation of the Sale of the Anaheim Property and assignment of the Assumed Contract at this time are in the best interests of the Selling Debtor Entity, its stakeholders, its estate, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

General Provisions

1.    The Motion is GRANTED.  Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise resolved herein are hereby overruled and denied with prejudice.

Approval Of The Agreement

2. Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3. Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entity is authorized, but not directed, to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4. Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5. The Selling Debtor Entity is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Anaheim Property or the Assumed Contract, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6. This Sale Approval Order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Selling Debtor Entity (including the reorganized or reconstituted Debtors after the effective date of the Plan), all affiliates and subsidiaries of the Selling Debtor Entity, and any subsequent trustees appointed in the Selling Debtor Entity's chapter 11 case or upon a conversion to chapter 7 under the

Bankruptcy Code, and shall not be subject to rejection, and Selling Debtor Entity's obligations (including but not limited to all post-closing obligations) under this Sale Approval Order and the Agreement (including all exhibits, schedules, and ancillary agreements) shall survive discharge of claims under the Plan.  To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

7.  The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Selling Debtor Entity's estate, in the good faith business judgment of the Selling Debtor Entity.

Sale And Transfer Of The Anaheim Property

8.  Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Selling Debtor Entity's right, title, and interest in the Anaheim Property shall be transferred to the Purchaser free and clear of all Liens, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Anaheim Property immediately before such transfer, subject to any claims and defenses the Selling Debtor Entity may possess with respect thereto.  In addition, upon the consummation of the Agreement, the Debtors shall be authorized to pay the Brokerage Fee at the settlement and upon delivery of the deed to the Purchaser or Successful Bidder, as the case may be.

9.  The transfer of the Anaheim Property to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Anaheim Property, and shall vest the Purchaser with all right, title, and interest of the Selling Debtor Entity in and to the Anaheim Property free and clear of all Liens of any kind or nature whatsoever.

10. If any person or entity which has filed financing statements, mortgages, mechanic's liens, <u>lis pendens</u>, or other documents or agreements evidencing Liens on or against the Anaheim Property shall not have delivered to the Selling Debtor Entity prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Anaheim Property, or otherwise, then (a) the Selling Debtor Entity is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Anaheim Property and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on or against the Anaheim Property of any kind or nature whatsoever.

11. This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Liens of any kind or nature whatsoever existing as to the Selling Debtor Entity or the Anaheim Property being sold by the Selling Debtor Entity prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of

state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Anaheim Property.

12. All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Selling Debtor Entity or the Anaheim Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Anaheim Property prior to the Closing of the Sale, or the transfer of the Anaheim Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Anaheim Property, such persons' or entities' Liens.  Nothing in this Sale Approval Order or the Agreement releases or nullifies any liability to a governmental agency under any environmental laws and regulations that any entity would be subject to as owner or operator of the Anaheim Property after the date of entry of this Sale Approval Order. Nothing in this Sale Approval Order or the Agreement bars, estops, or enjoins any governmental agency from asserting or enforcing, outside the Court, any liability described in the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to obtain penalties from the Purchaser for days of violation of environmental laws and regulations prior to Closing.

Assumption And Assignment To The Purchaser Of The Assumed Contract

13.     Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, and subject to paragraph 14 herein, the Selling Debtor Entity's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Agreement, of the Assumed Contract is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied.

14.     The Selling Debtor Entity is hereby authorized in accordance with the Plan and 11 U.S.C. §§ 105(a), 363, and 365, as applicable, to (a) assume and assign to the Purchaser, effective upon the Closing of the Sale, the Assumed Contract free and clear of all Interests and Claims of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contract to the Purchaser.

15.     The Assumed Contract shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in the Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor Entity shall be relieved from any further liability with respect to the Assumed Contract after such assignment to and assumption of such contract by the Purchaser.

16.     All defaults or other obligations of the Selling Debtor Entity under the Assumed Contract arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of

13

the Bankruptcy Code) shall be cured by the Selling Debtor Entity in accordance with the terms of the Agreement or, in the event the effective date of the Plan occurs prior to the Closing of the Sale, in accordance with the terms of the Plan, and the Purchaser shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement.  The non-Debtor party to the Assumed Contract is hereby deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchaser and shall be forever barred, estopped, and permanently enjoined from asserting against the Selling Debtor Entity or the Purchaser, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing or any purported written or oral modification to the Assumed Contract.  The non-Debtor party to the Assumed Contract shall be forever barred, estopped, and permanently enjoined from asserting against the Purchaser (or its property, including the Anaheim Property) any claim, counterclaim, defense, breach, condition, or setoff asserted or assertable against the Debtors.  The failure of the Selling Debtor Entity or the Purchaser to enforce prior to the Closing of the Sale one or more terms or conditions of the Assumed Contract shall not be a waiver of such terms or conditions or of the Selling Debtor Entity's or Purchaser's rights to enforce every term and condition of the Assumed Contract.  There shall be no rent accelerations, assignment fees, increases (including of rates), or any other fees charged to the Purchaser as a result of the assumption and assignment of the Assumed Contract.

Additional Provisions

      17.    The transactions contemplated by the Agreement, and the execution, delivery, and recordation of any and all documents or instruments necessary or desirable to consummate the transactions contemplated by the Agreement shall be, and hereby are, exempt

from the imposition and payment of all stamp taxes or any other similar taxes pursuant to section 1146(c) of the Bankruptcy Code.

18.  The consideration provided by the Purchaser for the Anaheim Property under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

19.  Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all the Anaheim Property and the Assumed Contract or a bill of sale transferring good and marketable title in the Anaheim Property and Assumed Contract to the Purchaser pursuant to the terms of the Agreement.

20.  Upon the Closing of the Sale, each of the Selling Debtor Entity's creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release its respective Liens against the Anaheim Property, if any, as such Liens may have been recorded or may otherwise exist.

21.  Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

22. The transactions contemplated by the Agreement are undertaken by the Selling Debtor Entity and the Purchaser at arm's-length, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Anaheim Property shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith, within the meaning of section 363(m) of the Bankruptcy Code, of the Anaheim Property, and is, and shall be, entitled to all of the protections afforded by such section in accordance therewith.

23. The consideration provided by the Purchaser for the Anaheim Property under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

24. The Selling Debtor Entity, including, but not limited to its officers, employees, and agents, is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this Sale Approval Order. The Selling Debtor Entity shall be, and it hereby is, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Approval Order.

25. The terms and provisions of the Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Selling Debtor Entity, its estate, and its stakeholders, the Purchaser and its affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting a Lien in the Anaheim Property to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent

appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

26. The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

27. This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Anaheim Property to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Selling Debtor Entity pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, (d) interpret, implement, and enforce the provisions of this Sale Approval Order, and (e) protect the Purchaser against any Lien against the Selling Debtor Entity or the Anaheim Property, of any kind or nature whatsoever, which Liens, valid and timely perfected, shall attach to the proceeds of the Sale.

Dated: New York, New York
      February ___, 2009

                                          _____
                                          UNITED STATES BANKRUPTCY JUDGE