## Exhibit D

**Asset Purchase Agreement**

EXECUTION COPY

# REAL PROPERTY PURCHASE AGREEMENT
## AND ESCROW INSTRUCTIONS

**THIS REAL PROPERTY PURCHASE AGREEMENT** (this "**Agreement**") is being entered into on **December** _18_, **2008,** between **DELPHI AUTOMOTIVE SYSTEMS LLC,** a Delaware limited liability company, whose principal address is 5725 Delphi Drive, Troy, Michigan 48098-2815 ("**Seller**"), and **BIRTCHER ANAHEIM MAGNOLIA AVENUE, LLC**, a California limited liability company, whose principal address is 18201 Von Karman Avenue, Irvine, California 92612 ("**Purchaser**") based upon the following:

    A.    On October 8, 2005, Seller and certain of its U.S. subsidiaries (the "**Initial Filers**") filed voluntary petitions for reorganization under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), and on October 14, 2005, three additional U.S. subsidiaries of Delphi Corporation (together with the Initial Filers, collectively, the "**Debtors**") filed voluntary petitions for reorganization under the Bankruptcy Code. The Debtors continue to operate their business as "debtors-in-possession" under the jurisdiction of the Bankruptcy Court and in accordance with the applicable provisions of the Bankruptcy Code and orders of the Bankruptcy Court.

    B.    Seller owns a parcel of real property that is located in the City of Anaheim, County of Orange, State of California (the "**State**"), and contains approximately 21.641 acres (collectively with any related property agreements and all rights, easements and entitlements, the "**Property**"). An outline of the Property (the "**Site Plan**") is attached to this Agreement as **Exhibit A**.

    C.    Purchaser desires to purchase, and Seller desires to sell, the Property in accordance with the provisions of this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants, promises, and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Seller and Purchaser agree as follows:

1.    **Agreement to Purchase and Sell**.  Seller agrees to sell to Purchaser, and Purchaser agrees to purchase from Seller, the Property, upon the terms set forth in this Agreement and the Sale Order.  The "**Sale Order**" means the final and non-appealable order to be entered by the Bankruptcy Court pursuant to Sections 363 and/or 365, as applicable, of the Bankruptcy Code authorizing the sale of the Property to Purchaser, which shall be substantially similar and materially in the form attached to this Agreement as **Exhibit B**.  The "**Bankruptcy Code**" means Title 11 and applicable portions of Titles 18 and 28 of the United States Code, as amended from time to time.

2.    **Purchase Price**.  The purchase price to be paid by Purchaser to Seller for the Property (the "**Purchase Price**") is Twenty Million Dollars ($20,000,000) (U.S. currency).  The Purchase Price will be paid in full by Purchaser to Seller at the time of Closing by means of, at Seller's option, a certified or cashier's check made payable to Seller and drawn on a bank which is acceptable to Seller, or a federal wire transfer of immediately available funds to an account designated by Seller.

3.    **Deposit and Escrow Instructions**.  Simultaneously with the expiration of the "Inspection Period" (as defined below), Purchaser will deliver to LandAmerica Commonwealth Land Title Insurance Company at 1050 Wilshire Drive, Suite 310, Troy, Michigan 48084 ("**Escrow Agent**") the sum of One Million Five Hundred Thousand Dollars ($1,500,000) (U.S. currency) (the "**Deposit**").  Any interest on the Deposit shall be deemed to be a part of the Deposit.  The Deposit shall be held in escrow by Escrow Agent as a deposit against the Purchase Price in accordance with the terms and provisions of this Agreement.  Escrow Agent shall place the Deposit in an interest-bearing account approved by Seller, until disbursed in accordance with the provisions of this Agreement.  If the closing occurs, the Deposit will be applied to the Purchase Price. If this Agreement is terminated for any reason, the Deposit will be disbursed in accordance with Paragraph 3(e) of this Agreement.

(b)    If either Seller or Purchaser makes a demand upon Escrow Agent to release the Deposit, Escrow Agent shall immediately give written notice to the other party (the "**Notified Party**") of such demand.  If Escrow Agent does not receive written objection from the Notified Party to the proposed release within ten (10) business days after the Notified Party receives notice of the proposed release, Escrow Agent shall comply with

**Anaheim, CA**

the demand received by Escrow Agent.  If Escrow Agent receives a written objection within the ten (10) business day period, Escrow Agent may either:  (i) retain the Deposit in escrow pending resolution of the disagreement regarding the disbursement of the Deposit; or (ii) file an action in interpleader and deposit the Deposit and all documents delivered to Escrow Agent in connection with this Agreement with a court of competent jurisdiction.   Upon the filing of such action, Escrow Agent shall be released and discharged from all obligations to further perform the duties or obligations otherwise imposed by this Agreement.

(c)    Seller and Purchaser acknowledge that Escrow Agent:  (i) is acting solely as a stakeholder at their request and for their convenience; (ii) shall not be deemed to be the agent of either party hereto; and (iii) shall not be liable to either party for any act or omission on its part, unless taken or suffered in bad faith, in willful disregard of this Agreement, in breach of fiduciary duties or as a result of Escrow Agent's negligence. Except for those matters for which Seller and Purchaser are not responsible pursuant to the preceding sentence, Seller and Purchaser shall jointly and severally indemnify and hold Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred by Escrow Agent in connection with the performance of its duties under this Agreement; provided, however, that if any matter which gives rise to Seller's and Purchaser's indemnification obligations under this sentence arises as a result of a breach of this Agreement by Seller or Purchaser, the breaching party shall be fully responsible for the indemnity required under this sentence. Seller and Purchaser shall each be responsible for one-half (1/2) of any fees of Escrow Agent for its services under this Paragraph 3. Seller and Purchaser shall execute and deliver such supplemental escrow instructions as may be reasonably requested by Escrow Agent provided the supplemental instructions: (i) conform with the provisions of this Agreement; (ii) do not impose costs, obligation or liabilities on Seller or Purchaser that are not otherwise contemplated under this Agreement; and (iii) are otherwise reasonably satisfactory to each of Seller and Purchaser.

(d)    This Agreement constitutes both an agreement between Purchaser and Seller and escrow instructions to Escrow Agent.  By executing this Agreement, Escrow Agent acknowledges its agreement to fulfill its obligations as set forth herein.  No separate or additional instructions shall modify or amend the provisions of this Agreement unless

**Anaheim, CA**

otherwise expressly set forth by mutual agreement of Purchaser and Seller.  As used in this Agreement, "**Opening of Escrow**" means:  (i) the delivery of a fully-executed copy, or counterparts, of this Agreement to Escrow Agent; and (ii) acceptance of this Agreement by Escrow Agent.  Escrow Agent shall immediately provide Purchaser and Seller with written notice of the date on which the Opening of Escrow occurs.

(e)    IF THE SALE OF THE PROPERTY SHALL NOT BE CLOSED BECAUSE PURCHASER TERMINATES THIS AGREEMENT PURSUANT TO SUBPARAGRAPHS 5(c), 8(b), 13(a)(i), (iv) AND (v), 13(b) AND 14(b) OF THIS AGREEMENT, OR THERE IS A FAILURE OF ANY CONDITION TO CLOSING, AND PURCHASER IS NOT AT THAT TIME IN DEFAULT UNDER THIS AGREEMENT BEYOND THE CURE PERIOD SET FORTH IN SUBPARAGRAPH 14(a) (PROVIDED THAT IF SUCH DEFAULT BY PURCHASER IS A BREACH OF PURCHASER'S CONFIDENTIALITY OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT DATED JULY 24, 2007, EXECUTED BY PURCHASER (THE "**CONFIDENTIALITY AGREEMENT**"), THEN SELLER SHALL BE ENTITLED TO THE DAMAGES SET FORTH IN SECTION 10 OF THE CONFIDENTIALITY AGREEMENT AND PURCHASER SHALL BE ENTITLED TO THE BALANCE OF THE DEPOSIT), THEN THE DEPOSIT SHALL BE RETURNED TO PURCHASER, SELLER SHALL PAY THE EXPENSE REIMBURSEMENT AMOUNT TO PURCHASER (APPLICABLE ONLY IF SUCH TERMINATION IS PURSUANT TO SUBPARAGRAPH 13(b) OR 14(b)), AND NEITHER PARTY SHALL HAVE ANY FURTHER OBLIGATION OR LIABILITY TO THE OTHER (EXCEPT AS OTHERWISE SET FORTH IN THIS AGREEMENT).  IF THE SALE OF THE PROPERTY SHALL NOT BE CLOSED BECAUSE SELLER OR PURCHASER TERMINATES THIS AGREEMENT PURSUANT TO PARAGRAPH 13(a)(iii), 13(a)(iv) AND 13(a)(v), AND PURCHASER IS NOT AT THAT TIME IN DEFAULT UNDER THIS AGREEMENT  BEYOND THE CURE PERIOD SET FORTH IN SUBPARAGRAPH 14(a) (PROVIDED THAT IF SUCH DEFAULT BY PURCHASER IS A BREACH OF PURCHASER'S CONFIDENTIALITY OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT, THEN SELLER SHALL BE ENTITLED TO THE DAMAGES SET FORTH IN SECTION 10 OF THE CONFIDENTIALITY AGREEMENT AND PURCHASER SHALL BE ENTITLED TO THE BALANCE OF THE DEPOSIT), THEN THE DEPOSIT SHALL BE RETURNED TO PURCHASER, SELLER SHALL PAY THE EXPENSE REIMBURSEMENT AMOUNT TO PURCHASER, AND

**Anaheim, CA**

NEITHER PARTY SHALL HAVE ANY FURTHER OBLIGATION OR LIABILITY TO THE OTHER EXCEPT AS SET FORTH IN THIS AGREEMENT.  IF THE SALE OF THE PROPERTY SHALL FAIL TO CLOSE SOLELY BY REASON OF PURCHASER'S TERMINATION OF THIS AGREEMENT FOR SELLER'S DEFAULT UNDER THE TERMS OF THIS AGREEMENT, AND PURCHASER IS NOT AT THAT TIME IN DEFAULT UNDER THIS AGREEMENT BEYOND THE CURE PERIOD SET FORTH IN SUBPARAGRAPH 14(a) (PROVIDED THAT IF SUCH DEFAULT BY PURCHASER IS A BREACH OF PURCHASER'S CONFIDENTIALITY OBLIGATIONS UNDER THE CONFIDENTIALITY AGREEMENT, THEN SELLER SHALL BE ENTITLED TO THE DAMAGES SET FORTH IN SECTION 10 OF THE CONFIDENTIALITY AGREEMENT AND PURCHASER SHALL BE ENTITLED TO THE BALANCE OF THE DEPOSIT), THEN PURCHASER SHALL BE ENTITLED EITHER TO (i) TERMINATE THIS AGREEMENT, RECEIVE A REFUND OF THE DEPOSIT, AND SELLER SHALL PAY THE EXPENSE REIMBURSEMENT AMOUNT TO PURCHASER, OR (ii) SPECIFICALLY ENFORCE THIS AGREEMENT.  IN THE EVENT THE SALE OF THE PROPERTY SHALL NOT CLOSE SOLELY BY REASON OF PURCHASER'S DEFAULT UNDER THE TERMS OF THIS AGREEMENT, THEN THE DEPOSIT SHALL BE DELIVERED TO SELLER AS FULL COMPENSATION AND LIQUIDATED DAMAGES UNDER AND IN CONNECTION WITH THIS AGREEMENT AS SELLER'S SOLE AND EXCLUSIVE REMEDY.  IN CONNECTION WITH THE FOREGOING, THE PARTIES RECOGNIZE THAT SELLER WILL INCUR EXPENSE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT AND THAT IT IS EXTREMELY DIFFICULT AND IMPRACTICABLE TO ASCERTAIN THE EXTENT OF DETRIMENT TO SELLER THAT WILL BE CAUSED BY THE BREACH BY PURCHASER UNDER THIS AGREEMENT OR THE AMOUNT OF COMPENSATION SELLER SHOULD RECEIVE AS A RESULT OF PURCHASER'S BREACH OR DEFAULT.  THE PAYMENT OF SUCH DEPOSIT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677.

**Please initial:**

**Anaheim, CA**

EXECUTION COPY

**Seller**                    **Purchaser**

4.      <u>Closing</u>.  The closing of the sale of the Property to Purchaser (the "**Closing**") will occur within ten (10) days following the later of:  (a) the Sale Order becomes final and non-appealable; or (b) the date on which Seller notifies Purchaser and Purchaser notifies Seller that the conditions to such party's obligations to close as set forth in Paragraph 9 of this Agreement have been satisfied or waived; provided that Seller will have the right to extend the closing date for up to thirty (30) days in connection with the curing of any "Defects" in accordance with Paragraph 5 of this Agreement; provided that the Sale Order shall become final and non-appealable no later than one hundred fifty (150) days after the date of this Agreement.  Possession of the Property shall be given to the Purchaser at Closing.  The Closing will occur on a date designated by Seller and Purchaser (at least two (2) days before the Closing) and will be accomplished through an escrow closing at the offices of the Escrow Agent of this Agreement) unless Purchaser and Seller otherwise agree.

5.      <u>Survey and Evidence of Title</u>:

(a)      Seller has obtained and made available to Purchaser an ALTA survey of the Property dated June 2005 (the "**2005 Survey**").  The 2005 Survey was prepared by Thienes Engineering, 14349 Firestone Blvd., La Mirada, CA 90638 (the "**Surveyor**"). Purchaser, at its sole cost and expense, has obtained and delivered to Seller an update of the 2005 Survey (the "**Survey**").

(b)      Seller has obtained and made available to Purchaser a commitment for an owner's policy of title insurance (the "**Title Commitment**") with respect to the Property issued by the Escrow Agent.  The Title Commitment contains the standard exceptions included by the Escrow Agent in commitments for owner's policies of title insurance issued in the State.  Purchaser and Seller will each  pay one-half of the premium for the standard owner's title insurance policy and to the extent the Purchaser elects to procure an extended ALTA title insurance policy, Purchaser will pay all costs to upgrade from the standard to the extended policy and all costs for any and all endorsements requested by Purchaser.

**Anaheim, CA**

**EXECUTION COPY**

(c)    Purchaser has approved the current Title Commitment and the Survey.  Any exceptions or matters which are recorded or revealed after the date of the Title Commitment and/or are not reflected in the Title Commitment shall be subject to Purchaser's approval in the manner set forth in this Paragraph 5(c).  Notwithstanding anything to the contrary in this Agreement, Purchaser hereby disapproves any and all deeds of trust, mortgages, mechanic or materialmen liens, judgment liens and any other liens evidencing monetary encumbrances created or caused by Seller (other than liens for non-delinquent real property taxes), and Seller agrees to use its commercially reasonable efforts to cause all such liens to be eliminated, at Seller's sole cost and expense, prior to or concurrently with the Closing; provided, however, in the event Seller fails to remove such liens on or prior to the Closing, Purchaser's sole remedy will be to: (i) waive the defect by written notice to Seller and proceed to close as provided in this Agreement; or (ii) terminate this Agreement.

6.    **Deliveries at the Closing**.  At the Closing:  (i) Seller will convey to Purchaser title to the Property by a quit claim deed in the form attached to this Agreement as **Exhibit C** (the "**Deed**"); (ii) Seller shall deliver the entered final and non-appealable Sale Order to Purchaser; (iii) Purchaser and Seller will execute a closing statement setting forth the Purchase Price and any prorations or other disbursements and payments; (iv) Purchaser will pay to Seller the Purchase Price in the manner provided in this Agreement; (v) Purchaser and Seller will each pay one-half of any title insurance premiums for a standard owner's policy and any closing fees charged by the Escrow Agent (other than escrow fees under Paragraph 3); and (vi) Purchaser will pay any title insurance premiums to upgrade the policy and the costs of any endorsements requested by Purchaser.  Seller and Purchaser will also execute and deliver any further documents or instruments as are necessary to accomplish the Closing so long as any additional documents to be executed will not increase any liability of Seller or Purchaser.

7.    **Prorations; Costs**:

(a)    Seller will be responsible for the payment of all taxes and assessments with respect to the Property which are due and payable prior to the date of Closing and Seller shall have the right to net any amounts so owed by Seller against the Purchase Price.

05-44481-rdd   Doc 14701-4   Filed 02/04/09   Entered 02/04/09 19:25:21   Exhibit D -
Asset Purchase Agreement   Pg 9 of 112
**Anaheim, CA**

**EXECUTION COPY**

Current taxes and assessments for the period in which the Closing occurs will be prorated in accordance with prevailing local practice on a per diem basis as of the date of Closing based upon the most recent tax bills.  If the Property is assessed as a part of a tract that includes other land, the taxes and assessments will be allocated to the Property and the other land based upon the respective acreage of the Property and the other land (and any improvements on the Property and the other land).  No adjustments will be made after Closing.

(b)     Seller will pay for the preparation of the Deed and any other closing documents deemed necessary by Seller.

(c)     Purchaser and Seller will each pay one-half of any local or state transfer taxes, revenue or documentary stamps, recording fees for recording the Deed and any and all title costs.

(d)     Any fees charged by the Escrow Agent (other than Seller's portion of any escrow fees under Paragraph 3) will be paid by Purchaser no later than the time of closing.

8.     _Inspection Period_:

(a)     Subject to the terms and conditions of the "Protective Agreements" identified in Paragraph 8(c) of this Agreement, Purchaser will have the right to enter upon the Property to investigate the Property and to conduct environmental studies, engineering studies, land use and planning feasibility studies and other investigations that Purchaser desires, including financing feasibility, at Purchaser's sole cost and expenses, for a period through and including December 24, 2008 (the "**Inspection Period**").

(b)     If Purchaser determines, in Purchaser's sole discretion, not to acquire the Property on or before the expiration of the Inspection Period, then Purchaser may, at its option, terminate this Agreement by written notice to Seller on or before the expiration of the Inspection Period.  Upon termination of this Agreement by Purchaser pursuant to this Paragraph 8(b), and delivery by Purchaser to Seller of the results of all Purchaser Reports (as defined in Paragraph 9(a)), unless Purchaser is in default under this Agreement at that time beyond the cure period set forth in Subparagraph 14(a), Seller

will direct that the Escrow Agent return the Deposit to Purchaser, as Purchaser's sole remedy, in which event Seller and Purchaser will be relieved of any liability under this Agreement, except as otherwise set forth in this Agreement.  If Purchaser does not deliver a notice of termination to Seller pursuant to this Paragraph 8(b) on or before the expiration of the Inspection Period, Purchaser will be deemed to have waived its right to terminate this Agreement pursuant to this Paragraph 8(b) and to have elected to proceed to the closing.

Purchaser executed and delivered to Seller the Confidentiality Agreement, a copy of which is attached to this Agreement as **Exhibit D** (collectively, the "**Protective Agreement**").  A default by Purchaser under the Protective Agreement shall be deemed a default of this Agreement by Purchaser and a default by Purchaser of this Agreement by Purchaser shall be deemed a default of the Protective Agreement.  Notwithstanding anything contained herein or in the Protective Agreement to the contrary, Purchaser's indemnity obligations under the Protective Agreement shall survive any termination of this Agreement and the Closing of the transaction contemplated under this Agreement.

9.    **Conditions to Closing.**  Seller's and Purchaser's obligation to sell and purchase the Property, as applicable, are expressly contingent upon and subject to the satisfaction of the following conditions for such party's benefit:

(a)    As a condition to Closing for Seller's benefit, Purchaser must have delivered to Seller the results of all soil borings, soil boring tests, and all other physical tests, inspections and analyses concerning the Property conducted by Purchaser ("**Purchaser Reports**").  Seller acknowledges that Purchaser has already complied with the requirements of this Section 9(a).

(b)    As a condition to Closing for Seller and Purchaser's benefit, Seller must have received all necessary Bankruptcy Court approvals, including (i) the entry by the Bankruptcy Court of the Sale Order and the Sale Order becoming final and non-appealable (final and non-appealable meaning that the time period in which to appeal has lapsed and either no appeal has been filed or if any appeal was filed, such appeal has been dismissed or finally resolved in favor of affirming the Sale

9

**Anaheim, CA**

Order in its entirety); and (ii) the entry by the Bankruptcy Court of the final and non-appealable Assumption Order.

(c)    As a condition to Closing for Purchaser's benefit, the Title Company shall be unconditionally committed to issue its ALTA extended coverage owner's policy (the "**Title Policy**") in the amount of the purchase price showing title to the Property vested in Purchaser.

(d)    As a condition to Closing for Seller's benefit, Purchaser will provide the certificates of insurance evidencing the Insurance Policies, as described in Paragraph 11(f), below.

(e)    As a condition to Closing for Seller's benefit, Purchaser shall have performed all of the obligations required by the terms of this Agreement to be performed by Purchaser, and all of Purchaser's representations and warranties shall be true and correct in all material respects on the date of Closing.

(f)    As a condition to Closing for Purchaser's benefit, Seller shall have performed all of the obligations required by the terms of this Agreement to be performed by Seller, and all of Seller's representations and warranties shall be true and correct in all material respects on the date of Closing.

The conditions set forth in this Paragraph 9 will not be deemed to be waived unless and until the benefited party notifies the other in writing that they have been waived.  If any Conditions other than condition (b) are not satisfied on or before the date of Closing, the benefited party of such condition will have the right to waive the unsatisfied conditions and proceed to Closing, or to terminate this Agreement, in which case Seller and Purchaser will be relieved of any liability under this Agreement, except as otherwise set forth in this Agreement, and so long as Purchaser is not at that time in default under this Agreement beyond the cure period set forth in Subparagraph 14(a), Seller will direct the Escrow Agent return the Deposit to Purchaser, as Purchaser's sole remedy (unless and to the extent Paragraph 13(b) applies).  If condition (b) is not satisfied on or before one hundred fifty (150) days from the date of this Agreement, then either Seller or Purchaser shall have the right to terminate this Agreement, in which case Seller and Purchaser will

**Anaheim, CA**

be relieved of any liability under this Agreement, except as otherwise set forth in this Agreement, and Seller will direct that the Escrow Agent return the Deposit to Purchaser, as Purchaser's sole remedy (unless and to the extent Paragraph 13(b) applies); provided, however, if Seller is in default for failing to use its commercially reasonable best efforts to obtain Bankruptcy Court approval of the Sale Order, then Purchaser shall also be entitled to the Expense Reimbursement.

10.    **Environmental Matters.**  Purchaser shall assume all responsibility for the operation of the Property, including complying with the Operation and Maintenance Agreement dated July 21, 2008 ("**O&M Agreement**") entered into between Seller and the California Department of Toxic Substances Control ("**DTSC**") and complying with the Encroachment License which was recorded on March 11, 2008 ("**Encroachment License**") and entered into between Seller and the City of Anaheim.  A copy of the O&M Agreement is attached as **Exhibit E**.  A copy of the Encroachment License is attached as **Exhibit F**.  Operation and Maintenance activities under the O&M Agreement include, but may not be limited to, operating the Soil Vapor Extraction ("**SVE**") system, performing groundwater monitoring, providing DTSC with any required progress or monitoring reports, dismantling and removing the SVE system when it is no longer necessary, and excavating and properly disposing of soil and concrete in the vicinity of the SVE system to the extent required by the DTSC.  All reports that must be provided to DTSC shall be prepared by Purchaser and provided to Seller for review and comment (but not approval) at least ten (10) days before they are due to DTSC.  Purchaser's obligations under the Encroachment License include, but may not be limited to, operating, maintaining and removing the relevant monitoring wells in compliance with all laws, and indemnifying and holding harmless Seller and the City of Anaheim for any damages, claims, or injury caused by Purchaser or Purchaser's invitees.

11.    **Seller's Disclaimer of Warranties and Purchaser's Release and Indemnifications**:

(a)    EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT, PURCHASER ACKNOWLEDGES THAT NEITHER SELLER NOR ANY AGENT, EMPLOYEE, ATTORNEY OR REPRESENTATIVE OF SELLER HAS MADE ANY STATEMENTS, AGREEMENTS, PROMISES, ASSURANCES, REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS,

**Anaheim, CA**

EXECUTION COPY

IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE, REGARDING SELLER, THE CONDITION OF THE PROPERTY, THE SUITABILITY OF THE PROPERTY FOR ANY USES OR PURPOSES CONTEMPLATED BY PURCHASER, THE ZONING OF THE PROPERTY, THE RIGHT TO OCCUPY THE PROPERTY, THE ENVIRONMENTAL CONDITION OF THE PROPERTY, THE STATE OF TITLE TO THE PROPERTY, OR ANY OTHER MATTER PERTAINING TO THE PROPERTY OR SELLER, INCLUDING, BUT IN NO WAY LIMITED TO, ANY WARRANTY OF HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(b)    Purchaser agrees that:  (i) at closing Purchaser will have fully examined and investigated to its full satisfaction the physical nature and condition of the Property and all other matters pertaining to the Property, including, without limitation, the environmental condition of the Property; (ii) Purchaser will acquire the Property in an "AS IS" "WHERE IS" "WITH ALL FAULTS" condition including those faults relating to environmental conditions; (iii) Seller will not be responsible for making (or contributing in any way to the cost of making) any changes or improvements to the Property; (iv) Purchaser has not relied upon any statement, promise, representation or warranty that is not expressly set forth in this Agreement which has been made or given directly or indirectly, orally or in writing, by Seller or any person or entity acting on behalf of Seller or whose acts or statements are attributable to or binding upon Seller.  Purchaser waives any and all claims for damages by reason of any statement, representation, warranty, assurance, promise or agreement that is not expressly contained in this Agreement, except that Purchaser reserves all rights against Seller for intentional material misrepresentation and/or fraud.  Purchaser further releases and discharges Seller from any and all claims or cause of action which Purchaser may now or ever have against Seller which relate to the Property.

(c)    Purchaser, on behalf of itself and its successors and assigns, agrees to waive and release any environmentally-related claims, actions, losses, penalties, liabilities, damages, judgments, cost and expenses, pertaining to the Property that it may now have or have in the future against the General Motors Corporation or its successors or assigns with respect to the condition of the Property.

(d)    Purchaser's waivers, releases and indemnification obligations under this Agreement will survive the closing of the sale of the Property to Purchaser or the termination of this Agreement.

(e)    Purchaser, for itself and its agents, affiliates, successors and assigns, hereby releases and forever discharges Seller, its agents, affiliates, successors and assigns from, and waives any right to proceed against Seller for, any cost, claim, demand, cause of action, damage, liability and expense of any nature whatsoever (including reasonable attorneys' fees) at law or in equity, whether known or unknown, arising out of the physical, environmental, economic, legal or other condition of the Property, which Purchaser or Purchaser's agents, affiliates, successors or assigns has or may have in the future.  The foregoing waiver shall not apply to any covenant, representation or warranty set forth in this Agreement.  Without limiting the foregoing, Purchaser hereby specifically waives the provisions of Section 1542 of the California Civil Code which provide:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Purchaser hereby specifically acknowledges that Purchaser has carefully reviewed this paragraph, and discussed its import with legal counsel, is fully aware of its consequences, and that the provisions of this paragraph are a material part of this Agreement.

(f)    Insurance.  Purchaser shall obtain and maintain consistent with the provisions of this Agreement, at its sole expense, the following types of insurance coverage ("**Insurance Policies**"), to remain in force for ten (10) years, with minimum limits as set forth below:

1.    Commercial General Liability covering liability arising from premises, operations, independent contractors, products-completed operations,

personal and advertising injury, and blanket contractual liability - US$ 1 Million each occurrence

2. Pollution Legal Liability covering claims arising from environmental conditions, whether preexisting or not – US$10 Million per occurrence and in the aggregate.

All policies of insurance procured by Purchaser herein shall be written as primary policies, not contributing with or in excess of coverage that Seller may carry. If Purchaser's liability policies do not contain the standard separation of insureds provision, or a substantially similar clause, they shall be endorsed to provide cross-liability coverage. Purchaser shall agree to waive their insurer's right of subrogation as to Seller (but not other third-parties) under its policies. Seller shall be an additional insured under Purchaser's insurance policies, and at Seller's request, Purchaser shall provide Seller with a certificate of insurance evidencing compliance with the limits, insurance requirements and waiver of subrogation set forth above. Such certificate shall be in a form acceptable to, and underwritten by an insurance company reasonably satisfactory to Seller and with an A.M. Best Company rating of A- or above.

12. **Bankruptcy Actions**:

(a)    Notwithstanding anything to the contrary contained herein, Purchaser acknowledges that prior to the hearing of the Bankruptcy Court related to the entry of the Sale Order (the "**Sale Hearing**"), this transaction will be subject to higher and better offers ("**Superior Offer**") and Seller shall have the right to conduct an auction for the sale of the Property (the "**Auction**") following the expiration of the Inspection Period. Seller may solicit additional bids for the Property in connection with or prior to the Auction.  The Auction would be conducted in accordance with bidding procedures (the "**Bidding Procedures**") to be approved by an order to be entered by the Bankruptcy Court (the "**Bidding Procedures Order**") or other Bidding Procedures as approved by the Bankruptcy Court.  The Bidding Procedures Order, including the Bidding Procedures attached as **Exhibit A** to the Bidding Procedures Order, shall be substantially similar and materially in the form attached to this Agreement as **Exhibit G**.  The Seller agrees to submit this Agreement to the Bankruptcy Court and seek approval of the Bidding Procedures Order as soon as commercially reasonable following the expiration of the

Inspection Period pursuant to Paragraph 8(a) and the title review period in Paragraph 5 (so long as Purchaser does not elect to terminate this Agreement pursuant to Paragraphs 5 or 8(b)). The Bidding Procedures to be submitted to the Bankruptcy Court are attached to this Agreement as **Exhibit G**. The Purchaser and Seller acknowledge and agree that this Agreement shall remain binding on the Purchaser and Seller, subject to the terms and conditions contained herein, until the first (1st) business day after the entry of a final non-appealable order by the Bankruptcy Court approving the sale of the Property to a third party purchaser in accordance with any Superior Offer ("**Superior Offer Sale Order**"); provided, however, that nothing in this Paragraph 12(a) shall limit the Purchaser's right to terminate this Agreement pursuant to the provisions of this Agreement. Seller shall exercise its commercially reasonable best efforts to conduct the Auction and seek Bankruptcy Court approval of the Sale Order on or before the date that is 150 days after the date of this Agreement.

(b)     Licenses. As soon as reasonably practicable after entry into this Agreement, Seller will, pursuant to a motion (which motion may be incorporated into the Sale Motion), move for an order (the "**Assumption Order**") approving Seller's assumption and assignment to Purchaser of the licenses related to the Property entered into by Seller prior to the Petition Date, listed on **Exhibit H** (collectively, the "**Assumed Licenses**"); provided, however, Seller may, at its sole discretion, include the Assumption Order as a part of the Sale Order. Seller will provide notice thereof in accordance with all applicable Bankruptcy Rules as modified by orders of the Bankruptcy Court, which assignment shall not be effective until the Closing. Seller will pay Cure Amounts (as defined below) as agreed to by Seller and each party to an Assumed License or, absent such agreement, by order of the Bankruptcy Court. "**Cure Amounts**" means all cure amounts payable in order to cure any monetary defaults required to be cured under Section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Purchasers of the Assumed Licenses.

13.   **Termination:**

(a)     In addition to the express termination events set forth in this Agreement, this Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time, but not later than the date of Closing:

05-44481-rdd    Doc 14701-4    Filed 02/04/09    Entered 02/04/09 19:25:21    Exhibit D -
Asset Purchase Agreement    Pg 17 of 112
**Anaheim, CA**

**EXECUTION COPY**

(i)      By mutual written consent of Purchaser and Seller;

(ii)     By Seller if Purchaser fails to pay the Deposit in accordance with the provisions of this Agreement;

(iii)    By Seller or Purchaser if a condition to Closing for such party's benefit is not satisfied or waived on or prior to the date of Closing;

(iv)    By Purchaser or Seller if the Bankruptcy Court shall not have entered the Sale Order and Assumption Order on or before one hundred fifty (150) days after the date of this Agreement ("**Outside Bankruptcy Court Approval Date**") unless such failure resulted from Seller's failure to use its commercially reasonable best efforts to obtain Bankruptcy Court approval of the Sale Order; or

(v)     By Purchaser or Seller, if Seller enters into an agreement to sell the Property pursuant to a Superior Offer, but only following the entry of a Superior Offer Sale Order ("**Superior Offer Termination Event**").

(b)      Upon a termination of this Agreement as the result of a Superior Offer Termination Event, Seller shall, within five (5) business days after such termination, in addition to the return of the Deposit, as consideration for Purchaser's due diligence efforts in pursuit of the transaction described by this Agreement, pay to Purchaser an amount equal to Purchaser's documented out-of-pocket due diligence expenses and other costs incurred by Purchaser (including attorneys' fees), up to Four Hundred Fifty Thousand Dollars ($450,000) (the "**Expense Reimbursement**").  Notwithstanding the foregoing, Purchaser shall not be entitled to the Expense Reimbursement if Purchaser is at that time in material default of this Agreement and Seller has provided written notice of such material default prior to such termination and such default was not remedied within  the cure period set forth in Subparagraph 14(a).

(c)      In the event of the termination of this Agreement as above provided, except as a result of a material default by Purchaser or Seller for which Seller has provided written notice of such material default prior to such termination and such default was not remedied within the cure period set forth in Subparagraph 14(a):  (i) this Agreement shall terminate; (ii) the Deposit and Expense Reimbursement (if the termination is pursuant to

Subparagraphs 13(a)(iii), 13(a)(iv) and 13(a)(v)) shall be delivered to Purchaser; (iii) no party shall have any further liability hereunder, including any liability for damages; and (iv) each party shall bear its own expenses which shall also survive the termination of this Agreement. In the event that a condition precedent to its obligation is not met, nothing contained herein shall be deemed to require any party to terminate this Agreement rather than to waive (without further Bankruptcy Court order or notice to any Person) such condition precedent and proceed with the Closing.

14. **Default**:

(a)    If Purchaser defaults under any material term of this Agreement, and such default is not remedied within ten (10) days after Seller notifies Purchaser in writing, then Seller may, as its sole and exclusive remedy, terminate this Agreement, in which event the Deposit will be delivered to Seller as liquidated damages and not as a penalty (it being understood that Seller's actual damages may be extremely difficult to calculate) after which neither party will have any further obligation or liability under this Agreement (except as may be otherwise expressly provided in this Agreement).

(b)    If Seller defaults under any material terms of this Agreement, and such default is not remedied within ten (10) days after Purchaser notifies Seller in writing, then Purchaser shall elect either to (i) terminate this Agreement, in which event the Deposit and Expense Reimbursement will be delivered to Purchaser and neither party will have any further obligation or liability under this Agreement (except as may be otherwise expressly provided in this Agreement), or (ii) bring any action for specific performance of Seller's obligations under this Agreement.

15. **Brokers**. Purchaser and Seller represent and warrant to each other that neither party has had dealings with any broker or agent in connection with this transaction other than Seller's brokers, Colliers International, Inc. ("**Colliers**") and DREAL, Inc. Colliers and DREAL, Inc. are parties to a separate agreement regarding commission. Each party agrees to indemnify and hold the other party harmless from all costs, claims, damages, causes of action, liabilities and expenses of any nature whatsoever (including reasonable attorney's fees) which are suffered or incurred as a result of the breach of this representation and warranty. The provisions of this paragraph will survive any

termination of this Agreement and the Closing of the transaction contemplated under this Agreement.

16. **Seller's Representations and Warranties**.  As a material inducement for Purchaser to enter into this Agreement, Seller makes the following representations and warranties to Purchaser.  These representations and warranties will be true and correct:  (i) on the date of this Agreement; and (ii) on the date of the Closing as though made at and as of the date of the Closing.  The representations and warranties of Seller in this Agreement shall survive beyond the date of the Closing for a period of six (6) months.

(a)    Subject to the entry and effectiveness of the Sale Order and the Assumption Order, Seller has the full power and authority to execute and deliver this Agreement and all other documents or instruments that this Agreement obligates Seller to execute or deliver (collectively, the "**Seller's Documents**") and to perform and carry out all covenants and obligations arising under this Agreement and Seller's Documents.

(b)    Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and subject to any required approval of the Bankruptcy Court, has the requisite power and authority to enter into this Agreement and into Seller's Documents and to carry out the transactions contemplated by this Agreement, subject to applicable bankruptcy, reorganization, insolvency, moratorium and other laws effecting creditor's rights generally from time to time in effect.  The person that signs this Agreement on behalf of Seller has, and any person that signs Seller's Documents on behalf of Seller will have, full power and authority to bind Seller.

(c)    Seller has duly authorized:  (i) the execution and delivery of this Agreement and the Seller's Documents; (ii) the sale and transfer of the Property to Purchaser pursuant to this Agreement; and (iii) the performance of the other covenants and obligations to be performed by Seller under this Agreement.

(d)    The execution, delivery and performance of this Agreement and Seller's Documents by Seller do not and will not result in any violation of, conflict with or constitute a default under any provision of Seller's Articles of Organization.

(e)      Subject to the entry and effectiveness of the Sale Order and the Assumption Order, this Agreement and Seller's Documents do not and will not conflict with or contravene any provision of any present judgment, order, decree, writ, or injunction, or any provision of any currently applicable law or regulation affecting Seller.  On the date of the Closing, the conveyance of the Property and the execution, delivery and performance of this Agreement and Seller's Documents by Seller will not result in a breach of, constitute a default under, interfere with or require consent pursuant to any credit agreement, lease, indenture, mortgage, deed of trust, purchase agreement, guaranty, security agreement or other instrument to which Seller is presently a party or by which Seller or Seller's assets are bound or affected.

(f)      Other than as disclosed to Purchaser during the Inspection Period, Seller has no Knowledge of any written notice and has no Knowledge of any violation of any applicable laws, ordinance, rules, requirements or regulations of any governmental agency, body or subdivision regarding the Property (excluding applicable environmental laws), that has not been previously corrected.

(g)      There are no pending, and to Seller's Knowledge, no threatened litigation, actions, claims, suits or proceedings, at law, in equity or otherwise, related to, against or affecting the Property.

(h)      Except as disclosed in **Exhibit I**, to Seller's Knowledge, the Property is in material compliance with all applicable environmental law.  Except as may be delivered by Seller to Purchaser during the Inspection Period, Seller has not received written notice of any litigation or administrative agency or governmental proceeding pending with respect to the Property.

For the purposes of this Agreement, Seller's "Knowledge" means the actual Knowledge of Don Sokol, Seller's Global Disposition Manager of the site, without any investigation. If Purchaser makes any claim for a breach of the foregoing representations based on a breach of Seller's Knowledge, then Purchaser bears the burden of proof to demonstrate Seller's Knowledge.

17.    **Purchaser's Representations and Warranties.**  As a material inducement for Seller to enter into this Agreement, Purchaser makes the following representations and

warranties to Seller.  These representations and warranties will be true and correct: (i) on the date of this Agreement; and (ii) on the date of the Closing as though made at and as of the date of the Closing.

(a)     Purchaser has the financial resources to consummate the transactions contemplated herein and pay the Purchase Price.

(b)     Purchaser has the full power and authority to execute and deliver this Agreement and all other documents or instruments that this Agreement obligates Purchaser to execute or deliver (collectively, the "**Purchaser's Documents**") and to perform and carry out all covenants and obligations arising under this Agreement and Purchaser's Documents.

(c)     Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of the State of California and has the requisite power and authority to enter into this Agreement and into Purchaser's Documents and to carry out the transactions contemplated by this Agreement.  The persons signing this Agreement on behalf of Purchaser have, and any person that signs Purchaser's Documents on behalf of Purchaser will have, full power and authority to bind Purchaser.

(d)     Purchaser has duly authorized:  (i) the execution and delivery of this Agreement and Purchaser's Documents; (ii) the purchase of the Property from Seller pursuant to this Agreement; and (iii) the performance of the other covenants and obligations to be performed by Purchaser under this Agreement.

(e)     The execution, delivery and performance of this Agreement and Purchaser's Documents by Purchaser do not and will not result in any violation of, conflict with or constitute a default under any provision of Purchaser's Articles of Organization.

(f)     This Agreement and Purchaser's Documents do not and will not conflict with or contravene any provision of any judgment, order, decree, writ or injunction, or any provision of any currently applicable law or regulation affecting Purchaser.  The purchase of the Property and the execution, delivery and performance of this Agreement and Purchaser's Documents by Purchaser will not result in a breach of, constitute a

default under, interfere with or require consent pursuant to any credit agreement, lease, indenture, mortgage, deed of trust, purchase agreement, guaranty, security agreement or other instrument to which Purchaser is presently a party or by which Purchaser or Purchaser's assets are bound or affected.

18.    **Agreement Not to be Recorded.**  Each party agrees that it will not cause or permit this Agreement or any notice of this Agreement to be recorded.

19.    **Notices.**  All notices or other communications provided for under this Agreement must be in writing and signed on behalf of the party that sends the notice or other communication.  Notices and other communications must be personally delivered, sent by certified or registered mail, return receipt requested, or sent by a reputable national overnight delivery service, and will be effective upon the earlier of receipt or refusal or failure to accept receipt if sent to the following addresses:

<u>If to Seller:</u>    **Delphi Automotive Systems LLC**
5825 Delphi Drive
MC:  480-410-172
Troy, Michigan  48098
Attention:  Executive Director, Facilities Services Group

<u>With a copy to:</u>    **Delphi Automotive Systems**
5725 Delphi Drive
MC:  483-400-603
Troy, Michigan  48098
Attention:  Deputy General Counsel - Commercial & Restructuring

<u>If to Purchaser:</u>    **Birtcher Development & Investments, LLC**
18201 Von Karman Avenue, Suite 1170
Irvine, California  92612
Attention:  Shannon Hondl

<u>With a copy to:</u>    **Cornerstone Real Estate Advisers LLC**
100 Wilshire Boulevard, Suite 700
Santa Monica, California  90401
Attention:  Kelly Kinnon, Esq.

<u>With a copy to:</u>    **Allen Matkins Leck Gamble Mallory & Natsis LLP**
1900 Main Street, 5th Floor
Irvine, California  92614
Attention:  John W. Kittleson, Esq.

**Anaheim, CA**

Each party will have the right to designate other addresses or addressees for the delivery of notices, by notifying the other party to this Agreement.

20.    **Entire Agreement.**  This Agreement represents the entire understanding between the parties with respect to the subject matter of this Agreement, and all prior agreements and understandings between the parties with respect to the subject matter of this Agreement are merged in this Agreement.  The exhibits attached to this Agreement are made a part of and incorporated in this Agreement.

21.    **No Oral Amendment or Modification.**  No amendments, waivers or modifications of this Agreement will be made or deemed to have been made unless in writing and executed by both Seller and Purchaser.

22.    **Assignability.**  Neither this Agreement nor the rights of Purchaser under this Agreement may be assigned or transferred, in whole or in part, to any other party without the prior written consent of Seller, which consent may be withheld for any reason or for no reason.

23.    **Successors and Assigns.**  Subject to Paragraph 22, this Agreement will be binding upon and inure to the benefit of the parties to this Agreement and their respective heirs, representatives, successors and assigns.

24.    **Captions for Convenience.**  All headings and captions used in this Agreement are for convenience only and have no meaning in the interpretation or effect of this Agreement.

25.    **Applicable Law.**  This Agreement will be interpreted and enforced according to the laws of the State of California.

26.    **Continuing Jurisdiction.**  The parties agree that the Bankruptcy Court shall retain jurisdiction over the enforcement of the obligations and transactions contemplated hereunder.

27.   **No Waivers.**  Any waiver of a breach of any provision contained in this Agreement must be in writing.  No waiver of any breach will be deemed a waiver of any preceding or succeeding breach, nor of any other breach of a provision contained in this Agreement.

28.   **Construction.**  Seller and Purchaser acknowledge that both parties participated equally in the negotiation of this Agreement and that no court construing this Agreement will construe it more stringently against one party than against the other, regardless of which party's counsel drafted this Agreement.

29.   **Time of the Essence.**  Time is of the essence with respect to performance required under this Agreement.

30.   **Survival.**  The covenants and agreements of Seller and Purchaser set forth in this Agreement will survive the Closing of the transaction contemplated under this Agreement.

31.   **Binding Effect.**  This document is not an offer by Seller, and under no circumstances will this Agreement have any binding effect upon Seller unless and until Seller will have executed this Agreement and delivered executed counterpart hereof to Purchaser.

32.   **Counterparts.**  This Agreement may be executed in counterparts, each of which shall constitute an original although not fully executed, but all of which when taken together, shall constitute but one agreement.  Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof.

33.   **Legal Fees.**  In the event of the bringing of any action or suit by a party hereto against another party hereunder by reason of any breach of any of the covenants or agreements or any inaccuracies in any of the representations and warranties on the part of the other party arising out of this Agreement, then in that event, the prevailing party in such action or dispute, whether by final judgment, or out of court settlement shall be entitled to have and recover of and from the other party all reasonable costs and expenses of suit, including reasonable attorneys' fees.

Anaheim, CA

**EXECUTION COPY**

34.  **Business Days**.  In the event any date described in this Agreement relative to the performance of actions hereunder by Purchaser, Seller and/or Escrow Holder falls on a Saturday, Sunday or legal holiday, such date shall be deemed postponed until the next business day thereafter.

**IN WITNESS WHEREOF,** Seller and Purchaser have signed this Real Property Purchase Agreement as of the day and year first above written.

In the presence of:

**DELPHI AUTOMOTIVE SYSTEMS LLC,**
a Delaware limited liability company

Print Name: JEFF BEALDOEN

By: _____

Print Name: _____ John A. Jaffurs

Print Name: Donna Kustow

Its:  Authorized Signatory   Executive Director
Operations Support Group

In the presence of:

**BIRTCHER ANAHEIM MAGNOLIA AVENUE,
LLC,** a California limited liability company

By: _____

Brandon R. Birtcher, Manager

Print Name: _____

Print Name: _____

962907

24

## CONSENT OF ESCROW AGENT

**THE UNDERSIGNED** Escrow Agent hereby agrees to: (i) accept the foregoing Agreement; (ii) be Escrow Agent under said Agreement; and (iii) be bound by said Agreement in the performance of its duties as Escrow Agent; provided, however, the undersigned shall have no obligations, liability or responsibility under: (a) this consent or otherwise unless and until said Agreement, fully signed by the parties, has been delivered to the undersigned; or (b) any amendment to said Agreement unless and until the same shall be accepted by the undersigned in writing.

Dated: _____, 2008 (the "**Opening of Escrow**")

**LandAmerica Commonwealth Land Title Insurance Company** ("**Escrow Agent**")

By: _____

Its: _____

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

25

# EXHIBITS

Exhibit A        Site Plan

Exhibit B        Sale Order

Exhibit C        Quit Claim Deed

Exhibit D        Confidentiality Agreement

Exhibit E        Operation and Maintenance Agreement

Exhibit F        Encroachment License

Exhibit G        Bidding Procedures

Exhibit H        Assumed Licenses

Exhibit I        Environmental Compliance

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property

26

## EXHIBIT A

## SITE PLAN
[DEPICTION OF THE PROPERTY]

### *[See attached page]*

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name. /Error! Unknown document property name.

27

**EXHIBIT B**

**SALE ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x
                          :

In re                         :       Chapter 11
                          :

DELPHI CORPORATION, et al.,    :       Case No. 05-44481 (RDD)
                          :

             Debtors.     :       (Jointly Administered)
                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004, 6006 AND 9014 AUTHORIZING AND APPROVING (I) SALE BY DELPHI AUTOMOTIVE SYSTEMS LLC OF CERTAIN PROPERTY LOCATED IN ANAHEIM, CALIFORNIA AND (II) ASSUMPTION AND ASSIGNMENT OF <u>CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

("ANAHEIM SALE APPROVAL ORDER")

Upon the motion, dated [_____], 2008 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (i) approving bidding procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale notices, (iv) setting a sale hearing date (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of an asset of Delphi Automotive Systems LLC ("DAS LLC" or the "Seller") comprising a certain improved parcel of real property containing approximately 21.6 acres and located in Anaheim, California (the "Property") for approximately $27.1 million, free and clear of liens, claims, encumbrances, and interests to [_____] (the "Purchaser") pursuant to the Real Property Purchase Agreement, dated [_____], 2008, by and between the Seller and the Purchaser (the "Agreement"), a copy of which is attached hereto as <u>Exhibit A</u> and (ii) the assumption and assignment of certain prepetition executory contracts and/or unexpired leases (the "Assumed Contracts") and the assignment of certain postpetition executory contracts and/or

Error! Unknown document property name. Error! Unknown document property name./Error! Unknown document property name. Error! Unknown document property name. Error! Unknown document property name./12-16-08/Error! Unknown document property name./Error! Unknown document property name.

28

unexpired leases (the "Postpetition Contracts," and collectively with the Assumed Contracts, the "Assigned Contracts") to the Purchaser or the Successful Bidder in connection with the sale; and the Court having entered an order on [_____], 2008 (the "Bidding Procedures Order") (Docket No.___) (a) approving bidding procedures, (b) granting certain bid protections, (c) approving the form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing having been held on [_____], 2008, at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having reviewed and considered the Motion and the arguments of counsel made, and the evidence proffered or adduced at and on the record of the Sale Hearing; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their stakeholders, and all other parties-in-interest; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[1]

A.    The Court has jurisdiction over the Motion and the transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections 363 and 365 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    As evidenced by the affidavits of service previously filed with the Court, and based on the representations of counsel at the Sale Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, and the assumption and assignment of the Assumed Contracts, and the Cure Amounts as approved herein has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the Auction, or the assumption and assignment of the Assumed Contracts or assignment of the Postpetition Contracts as provided herein is necessary or shall be required.

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name /Error! Unknown document property name

D.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Seller has marketed the Property and conducted the sale process in compliance with the Bidding Procedures Order.

E.      The Seller has full power and authority to execute the Agreement and all other applicable documents contemplated thereby.  The transfer and conveyance of the Property by the Seller have been duly and validly authorized by all necessary action of the Seller. The Seller has all of the power and authority necessary to consummate the transactions contemplated by the Agreement and has taken all action necessary to authorize and approve the Agreement and to consummate the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for in the Agreement, are required for the Seller to consummate such transactions.

F.      The Seller has demonstrated (i) good, sufficient, and sound business purpose and justification for the Sale because, among other things, the Seller and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Property and determined that (a) the terms and conditions set forth in the Agreement, (b) the transfer to the Purchaser of the Property pursuant thereto, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Property.

G.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Purchaser, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Property during the past six months, (vi) all entities known to have asserted any Liens (as defined below) in or upon the Property, (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (viii) the United States Attorney's office, (ix) the United States Department of Justice, (x) the Securities and

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.                    30

Exchange Commission, (xi) the Internal Revenue Service, (xii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")), (xii) all parties to Assigned Contracts, and (xiii) such other entities as are required to be served with notices under the Supplemental Case Management Order.

H.    The Purchaser is not an "insider" of any of the Debtors as that term is defined in 11 U.S.C. § 101(31).

I.    This Sale Order and the consummation of the contemplated transactions are supported by good business reasons, and will serve the best interests of the Debtors, their estates and creditors by maximizing the values to be obtained from the Property.

J.    The Agreement was negotiated, proposed, and entered into by the Seller and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions. Neither the Seller nor the Purchaser has engaged in any conduct that would cause or permit the Sale to be avoidable under 11 U.S.C. § 363(n).

K.    The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby. The Purchaser will be acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions contemplated by the Agreement at all times after the entry of this Sale Approval Order.

L.    The consideration provided by the Purchaser for the Property pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Property, (iii) will provide a greater recovery for the Seller's stakeholders than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.

M.    The Sale must be approved and consummated promptly to obtain the value provided under the terms of the Agreement.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

31

N.    The transfer of the Property to the Purchaser is a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of the Seller to the Property free and clear of any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) (collectively, the "Liens") and any monetary amounts which are secured by any Lien.

O.    If the Sale of the Property by the Seller were not free and clear of any Liens as set forth in the Agreement and this Sale Approval Order, or if the Purchaser would, or in the future could, be liable for any of the Liens as set forth in the Agreement and this Sale Approval Order, the Purchaser would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Seller, its estate, and its stakeholders.

P.    The Seller may sell its interest in the Property free and clear of all Liens because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Liens who did not object or withdrew their objections to the Sale are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2) and all holders of Liens are adequately protected by having their Liens, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an interest with the same priority, validity, force, and effect as they attached to such property immediately before the closing of the Sale.

Q.    Except as expressly provided in the Agreement, the (i) transfer of the Property to the Purchaser and (ii) assumption and/or assignment to the Purchaser of the Assigned Contracts will not subject the Purchaser to any liability whatsoever with respect to the operation of the Property prior to the Closing of the Sale, or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any theory of equitable law, antitrust, or successor or transferee liability.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name. /Error! Unknown document property name

32

R.    The Seller has demonstrated that it is an exercise of its sound business judgment to assume and/or assign the Assigned Contracts as applicable to the Purchaser in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Seller, its estate, and its creditors. The Assigned Contracts being assigned to the Purchaser are an integral part of the Property being purchased by the Purchaser and, accordingly, such assumption and/or assignment of Assigned Contracts and liabilities is reasonable and enhances the value of the Seller's estate.

S.    The Seller has (i) cured, or have provided adequate assurance of cure of, any default existing prior to the Closing of the Sale under all of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A) and (ii) provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B). The Purchaser has provided adequate assurance of its future performance of and under the Assumed Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). Pursuant to 11 U.S.C. § 365(f), the Assumed Contracts to be assumed and assigned under the Agreement shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer.

T.    Approval of the Agreement and consummation of the Sale of the Property and assignment of the Assigned Contracts at this time are in the best interests of the Seller, its stakeholders, its estate, and other parties-in-interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## General Provisions

1.    The Motion is GRANTED. Any and all objections to the Motion not waived, withdrawn, settled, adjourned or otherwise resolved herein are hereby overruled and denied with prejudice.

## Approval Of The Agreement

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

33

2.    Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3.    Pursuant to 11 U.S.C. § 363(b), the Seller is authorized, but not directed, to perform its obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement.

4.    Each of the signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this Sale Approval Order.

5.    The Seller is authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to possession the Property or the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

6.    This Sale Approval Order and the Agreement shall be binding in all respects upon all stakeholders (whether known or unknown) of the Seller, (including the reorganized or reconstituted Debtors after the effective date of the Plan), all affiliates and subsidiaries of the Seller, and any subsequent trustees appointed in the Seller's chapter 11 case or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection, and Seller's obligations (including but not limited to all post-closing obligations) under this Sale Approval Order and the Agreement (including all exhibits, schedules, and ancillary agreements) shall survive discharge of claims under the Plan.  To the extent that any provision of this Sale Approval Order is inconsistent with the terms of the Agreement, this Sale Approval Order shall govern.

7.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

34

Court; provided that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Seller's estate, in the good faith business judgment of the Seller.

## Sale And Transfer Of The Property

8.      Pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Seller's right, title, and interest in the Property shall be transferred to the Purchaser free and clear of all Liens, with all such Liens to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they had as against the Property immediately before such transfer, subject to any claims and defenses the Seller may possess with respect thereto.

9.      The transfer of the Property to the Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Property, and shall vest the Purchaser with all right, title, and interest of the Seller in and to the Property free and clear of all Liens of any kind or nature whatsoever.

10.      If any person or entity which has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Liens on or against the Property shall not have delivered to the Seller prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Liens that the person or entity has with respect to the Property, or otherwise, then (a) the Seller is hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Property and (b) the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on or against the Property of any kind or nature whatsoever.

11.      This Sale Approval Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Liens of any kind or nature whatsoever existing as to the Seller or the Property being sold by the Seller prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations), and

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.                    35

that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

12.    All persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens of any kind or nature whatsoever against or in the Seller or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Property prior to the Closing of the Sale, or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property, or the Property, such persons' or entities' Liens.  Nothing in this Sale Approval Order or the Agreement releases or nullifies any liability to a governmental agency under any environmental laws and regulations that any entity would be subject to as owner or operator of any Property after the date of entry of this Sale Approval Order.  Nothing in this Sale Approval Order or the Agreement bars, estops, or enjoins any governmental agency from asserting or enforcing, outside the Court, any liability described in the preceding sentence.  Notwithstanding the above, nothing herein shall be construed to permit a governmental agency to obtain penalties from the Purchaser for days of violation of environmental laws and regulations prior to Closing.

<u>Assumption And Assignment To The Purchaser Of The Assumed Contracts</u>

13.    Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing of the Sale, and subject to paragraph 14 herein, the Seller's assumption and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the Agreement, of the Assumed Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

36

14.     The Seller is hereby authorized in accordance with the Plan, 11 U.S.C. §§ 105(a), 363, and 365, as applicable, to (a) assume and/or assign to the Purchaser, effective upon the Closing of the Sale, the Assigned Contracts free and clear of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Purchaser.

15.     The Assumed Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Seller shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption of such contracts by the Purchaser.

16.     All defaults or other obligations of the Seller under the Assumed Contracts arising or accruing prior to the Closing of the Sale (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Seller in accordance with the terms of the Agreement or, in the event the effective date of the Plan occurs prior to the Closing of the Sale, in accordance with the terms of the Plan, and the Purchaser shall have no liability or obligation arising or accruing prior to the date of the Closing of the Sale, except as otherwise expressly provided in the Agreement. Each non-debtor party to any Assumed Contracts is hereby deemed to have consented to the assumption and assignment of the Assumed Contracts to the Purchaser and shall be forever barred, estopped, and permanently enjoined from asserting against the Seller or the Purchaser, or the property of any of them, any default existing, arising, or accruing as of the date of the Closing or any purported written or oral modification to the Assumed Contracts. Each non-debtor party to any Assumed Contract shall be forever barred, estopped, and permanently enjoined from asserting against the Purchaser (or its property, including the Property) any claim, counterclaim, defense, breach, condition, setoff asserted or assertable against the Debtors. The failure of the Seller or the Purchaser to enforce prior to the Closing of the Sale one or more terms or conditions of any Assumed Contracts shall not be a waiver of such terms or conditions or of

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.- Error!
Unknown document property name./12-16-
08/Error! Unknown document property

37

the Seller' or Purchaser's rights to enforce every term and condition of any such Assumed Contracts. There shall be no rent accelerations, assignment fees, increases (including of rates), or any other fees charged to the Purchaser as a result of the assumption and assignment of the Assumed Contracts.

<u>Additional Provisions</u>

17.    The consideration provided by the Purchaser for the Property under the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, or possession thereof, or the District of Columbia.

18.    Upon the Closing of the Sale, this Sale Approval Order shall be construed as and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all the Property and the Assigned Contracts or a bill of sale transferring good and marketable title in the Property and Assigned Contracts to the Purchaser pursuant to the terms of the Agreement.

19.    Upon the Closing of the Sale, each of the Seller's creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release its respective Liens against the Property, if any, as such Liens may have been recorded or may otherwise exist.

20.    Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

21.    The transactions contemplated by the Agreement are undertaken by the Seller and the Purchaser at arm's-length, without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Property shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending

Error! Unknown document property name. Error! Unknown document property name./Error! Unknown document property name. Error! Unknown document property name. Error! Unknown document property name./12-16- 08/Error! Unknown document property name./Error! Unknown document property name.

38

such appeal. The Purchaser is a purchaser in good faith, within the meaning of section 363(m) of the Bankruptcy Code, of the Property, and is, and shall be, entitled to all of the protections afforded by such section and in accordance therewith.

22.     The consideration provided by the Purchaser for the Property under the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

23.     The Seller, including, but not limited to, its officers, employees, and agents, is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and conditions of the Agreement and this Sale Approval Order. The Seller shall be, and it hereby is, authorized to take all such actions as may be necessary to effectuate the terms of this Sale Approval Order.

24.     The terms and provisions of the Agreement and this Sale Approval Order shall be binding in all respects upon, and shall inure to the benefit of, the Seller, its estate, and its stakeholders, the Purchaser, and its affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting a Lien in the Property to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

25.     The failure specifically to include or to reference any particular provision of the Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

26.     This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this Sale Approval Order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Property to the Purchaser, (b) compel delivery of the purchase price or performance of other obligations owed to the Seller pursuant to the Agreement,

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.·Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

39

(c) resolve any disputes arising under or related to the Agreement, (d) interpret, implement, and enforce the provisions of this Sale Approval Order, and (e) protect the Purchaser against any Lien against the Seller or the Property, of any kind or nature whatsoever, which Liens, valid and timely perfected, shall attach to the proceeds of the Sale.

Dated: New York, New York

_____, 2009

_____

UNITED STATES BANKRUPTCY JUDGE

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property

40

## EXHIBIT C

## QUIT CLAIM DEED

RECORDING REQUESTED BY

MAIL    TAX    STATEMENTS,    AND    WHEN
RECORDED MAIL, TO:

GRANTEE

SPACE    ABOVE    THIS    LINE    FOR
RECORDER'S USE

### QUIT CLAIM DEED

A.P. Nos. _____

DOCUMENTARY TRANSFER TAX $_____

(  ) Computed on full value of property conveyed;
    or
(  ) Computed on full value less value of liens and
    encumbrances remaining at time of sale
(  ) Unincorporated area:  (X) City of Anaheim,
    and

---

**THIS QUIT CLAIM DEED** dated as of _____, **2009** (this "**Deed**"), is entered into between **DELPHI AUTOMOTIVE SYSTEMS LLC,** a Delaware limited liability company ("**Grantor**") and **BIRTCHER ANAHEIM MAGNOLIA AVENUE, LLC,** a California limited liability company ("**Grantee**"), with reference to the following facts and understandings:

**WHEREAS,** Grantor is the owner of certain real property (the "**Property**") located in the City of Anaheim, County of Orange, State of California, more particularly described on **Exhibit A** attached hereto.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor hereby REMISES, RELEASES AND QUIT CLAIMS to Grantee the Property.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

41

**IN WITNESS WHEREOF**, this instrument is executed as of the date set forth below.

Dated: _____, **2009**

WITNESSES:

GRANTOR:

**DELPHI AUTOMOTIVE SYSTEMS LLC**,
a Delaware limited liability company

_____
Signature (Type or Print Name in Black Ink)

By:_____
Signature (Type or Print Name in Black Ink)

_____
Signature (Type or Print Name in Black Ink)

Its:  Authorized Signatory

STATE OF MICHIGAN      )
                             ) ss.
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, **2008**, by _____, the Authorized Signatory of Delphi Automotive Systems LLC, a Delaware limited liability company, on behalf of it.

_____

_____, Notary Public

_____ County, Michigan

My commission expires: _____

**Error! Unknown document property name. Error!**
**Unknown document property name./Error!**
**Unknown document property name.**
**Error! Unknown document property name.·Error!**
**Unknown document property name.**/12-16-
08/**Error! Unknown document property**
**name.**/**Error! Unknown document property name**

42

## EXHIBIT A to Quit Claim Deed

## THE PROPERTY

All that certain real property situated in the County of Orange, State of California, described as follows:

Parcel I, in the City of Anaheim, County of Orange, State of California, as per Map filed in Book 50, Page 21 of Parcel Maps, in the Office of the County Recorder of said County.

Except therefrom that portion described in the deed to the City of Anaheim, California, a California Municipal Corporation recorded July 17, 2001 as Instrument No. 483040, of Official Records, is said County Recorders' Office, described as follows:

Beginning at the Northeast corner of said Parcel 1;
Thence South 6° 50' 44" East, along the Easterly line of said Parcel 1, a distance of 221.57 feet;
Thence South 89° 45' 24" West, 486.20 feet to a point on a line parallel with and 45.00 feet Easterly of, measured at right angles to that certain course of the Westerly line of said Parcel 1, shown on said parcel map as "North 00° 14' 36" West, 230.11 feet":
Thence North 00° 14' 36" West along said parallel line, 524.65 feet to a point on the Northerly line of said Parcel 1.
Thence South 56° 46' 40" East, along the Northerly line of said Parcel 1, a distance of 552.28 feet to the point of beginning of this description.

Assessor's Parcel Number: **070-781-03** ; **070--801-28**

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

43

## EXHIBIT D

## CONFIDENTIALITY AGREEMENT

### [*SEE ATTACHED DOCUMENT*]

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name. /Error! Unknown document property name.

44

1-949-502-5505   Birtcher Development   04:22:11 p.m.   07-28-2008   5/7

## FOR SALE   1201 N. Magnolia Avenue, Anaheim, CA 92801

### CONFIDENTIALITY AGREEMENT

Re: Proposed Sale by Delphi Automotive Systems LLC ("Seller") and Colliers International ("Agent") to **S. Hondl** ("Purchaser") of approximately 21.641 acres of Land located in Anaheim, California (the "Property")

In connection with the proposed sale of the Property, all Property Information (collectively, "Information") provided by Seller or Agent is intended solely for the prospective Purchasers limited use and benefit in determining whether you desire to express any further interest in the purchase of the Property. Based upon receipt of the Information contained herein, you are hereby bound by this Confidentiality Agreement and further represent and agree as follows:

1. All Information, whether written or verbal, regarding the physical, environmental or any other condition of the Property which is provided to or obtained by Purchaser under this Confidentiality Agreement shall be the sole and exclusive property of Seller, is considered and will be kept confidential by Purchaser in perpetuity and will not be discussed with or provided to any third party, other than those agents, consultants or attorneys of Purchaser who are retained to complete the purchase of the Property, unless Seller consents in writing.

2. Neither Seller nor Agent nor any of their respective officers, have made any representation or warranty, expressed or implied, as to the accuracy or completeness of this Information nor any of its contents, and no legal commitments or obligations shall arise by reason of this Information nor its contents.. No Information provided by Seller or Agent to Purchaser is intended to be relied upon by Purchaser as a substitute for a complete and thorough investigation of the Property by Purchaser.

3. All Information relating to any environmental or other condition affecting the Property that Purchaser obtains as a result of Purchaser's inspection of the Property or Information shall be deemed confidential and subject to the terms of this Confidentiality Agreement.

4. Purchaser will not, and will cause your Representatives to not, copy or duplicate the Information (except that you may copy Information for your Representatives). You will immediately return, and will cause your representatives to immediately return, the Information to the entity from which you received such Information (Seller or Agent, as appropriate) promptly if you decide not to go forward with discussions or if return is requested by Seller. Seller shall be entitled to injunctive relief if Purchaser fails to deliver the Information to Seller or Agent promptly after request.

5. Before any employees, agents, consultants or attorneys of Purchaser receive access to any Information which is subject to this Confidentiality Agreement, Purchaser shall cause them to execute the attached "Acknowledgment of Confidentiality." Purchaser shall promptly provide copies of each signed acknowledgment to Seller.

6. Your obligations to keep the Information confidential shall not include Information that is

or becomes publicly available other than as a result of acts by you or your Representatives in breach of this agreement. Notwithstanding anything contained to the contrary in this Confidentiality Agreement, if Purchaser is required to disclose any information regarding the Property to any governmental entity, then, before Purchaser discloses the Information, Purchaser shall notify Seller in writing and provide Seller with copies of all information which Purchaser intends to disclose. Purchaser shall deliver the notice and information to Seller in writing at least five (5) business days before any disclosure to any governmental authority and shall fully cooperate with Seller in any efforts to limit or obtain confidential treatment of the confidential Information.

7. If Purchaser visits the Property, Purchaser shall indemnify and hold Seller harmless from and against any and all damage to property or injury or death to persons, and from and against any and all costs, claims, damages, causes of action, liabilities and expenses of any nature whatsoever (including reasonable attorneys' fees) arising out of or in connection with Purchaser's inspection of the Property. Seller does not assume any risk, liability, responsibility or duty of care to Purchaser, its employees, agents or contractors when on the Property. Purchaser acknowledges and agrees that Purchaser, its employees, agents or contractors enter the Property and conduct their investigations at their own risk.

8. Seller expressly reserves the right, at its sole discretion, to reject any or all expressions of interest or offers to purchase the Property and/or to terminate discussions with any entity at any time with or without notice. Seller shall have no legal commitment or obligation to any entity reviewing this Information or making an offer to purchase the Property unless and until a written commitment to purchase the Property has been fully executed, delivered, and approved by Seller and any conditions to Seller's obligations there under have been satisfied or waived.

9. If Purchaser, its employees, agents, consultants or attorneys of Purchaser who are provided Information which is subject to this Confidentiality Agreement disclose any Information in violation of this Confidentiality Agreement, then Purchaser shall pay to Seller, as liquidated damages, the amount of TEN THOUSAND DOLLARS ($10,000) for each disclosure. Purchaser acknowledges that although Seller will suffer substantial damages if any confidential Information is wrongfully disclosed, the exact amount of the damages would be difficult or impossible to precisely ascertain. Accordingly, Purchaser agrees that the TEN THOUSAND DOLLARS ($10,000) liquidated damages amount is reasonable in light of all relevant facts available to the parties. Seller shall also be entitled to injunctive relief to prevent disclosure of any information in violation of this Confidentiality Agreement.

**If you have no further interest in the Property, please return the Information and all other materials furnished to you forthwith and continue to abide by the provisions herein.**

10. All notices or other communications provided for under this Confidentiality Agreement must be in writing and signed on behalf of the party that sends the notice or other communication. Notices and other communications must be personally delivered, sent by certified or registered mail, return receipt requested, or sent by a reputable national overnight delivery service, and will be effective upon the earlier of receipt or refusal or failure to accept receipt if sent to the following addresses:

| IF TO SELLER: | WITH A COPY TO: | IF TO PURCHASER: |
|---|---|---|
| Delphi Automotive Systems LLC | Delphi Corporation | Shannon Hondl |
| 5825 Delphi Drive | 5725 Delphi Drive | Birtcher Development |
| MC: 480-410-172 | MC: 483-400-603 | 1830 + Van Karmen |
| Troy, Michigan 48098 | Troy, Michigan 48098 | Suite 1170, Irvine CA |
| Attention: Executive Director | Attention: Deputy General Counsel | Attention: |
| Operations Support Group | Transactional & Restructuring | |

**Each party will have the right to designate other addresses or addressees for the delivery of notices, by notifying the other party to this Confidentiality Agreement. If the foregoing is acceptable to you, please confirm your agreement by signing this letter in the space provided below, and return it to the following:**

DELPHI AUTOMOTIVE SYSTEMS LLC

Signature: _Glen Haward_

By: _Glenn Howarth_
Its: _Director CEG, Global Env Health + Safety, MS Region_ _Thermal + DPSS Division_

BUYER

Signature: _Shannon Hondl_

By: _SVP_

Title: _SVP_     Date: _7/21/07_

Representing Brokers must include client signature and all contact information. Please execute and return a facsimile (with a cover page), including all pertinent contact information to:

Colliers International
Christy Son
Fax 213.327.3294
christy.son@colliers.com



No warranty or representation is made to the accuracy of the foregoing information. Terms of sale or lease and availability are subject to change or withdrawal without notice.

1-949-502-5505    Birtcher Development    04:21:42 p.m.    07-28-2008    4/7

**FOR SALE**    1201 N. Magnolia Avenue, Anaheim, CA 92801

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _Shannon Handl_, confirm that I have read the Confidentiality Agreement (the "Agreement") entered into by Delphi Automotive Systems LLC ("Seller") and _Birtcher Development, LLC_ I understand the terms of the Agreement, agree to keep confidential all information, whether written or verbal, which is subject to the Agreement, and agree to promptly return to Seller, as directed by Seller, any and all information I have received which is subject to the Agreement, in each case as if I were an original party to the Agreement.

### RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: _Shannon Handl_

Title: _SVP_

Date: _7/24/08_

COLLIERS

No warranty or representation is made to the accuracy of the foregoing information. Terms of sale or lease and availability are subject to change or withdrawal without notice.

1-949-502-5505      Birtcher Development      12:23:19 p.m.      07-28-2008      6/7

**FOR SALE**   1201 N. Magnolia Avenue, Anaheim, CA 92801

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _SUE ARNOLD_ , confirm that I have read the Confidentiality Agreement (the "Agreement")
entered into by Delphi Automotive Systems LLC ("Seller") and _BIRTCHER DEVELOPMENT LLC_. I understand the
terms of the Agreement, agree to keep confidential all information, whether written or verbal, which is subject to the Agreement,
and agree to promptly return to Seller, as directed by Seller, any and all information I have received which is subject to the Agreement,
in each case as if I were an original party to the Agreement.

### RECEIPT AND ACCEPTANCE ACKNOWLEDGED

_Sue Arnold_

By:

_ADMINISTRATIVE ASST._

Title:

_7/23/08_

Date

**COLLIERS**
INTERNATIONAL

No warranty or representations made to the accuracy of the foregoing information. Terms of sale or lease and availability are subject to change or withdrawal without notice.

**FOR SALE**

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, Christopher Black, confirm that I have read the Confidentiality Agreement (the "Agreement") entered into ... and ... I understand the ...

## RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: _____

Title: _____

Date: _____

## FOR SALE

### ACKNOWLEDGMENT OF CONFIDENTIALITY



# FOR SALE

## ACKNOWLEDGMENT OF CONFIDENTIALITY

RECEIPT AND ACCEPTANCE ACKNOWLEDGED

# FOR SALE

## ACKNOWLEDGMENT OF CONFIDENTIALITY

RECEIPT AND ACCEPTANCE ACKNOWLEDGED

_ROBERT FULMER_

_PRESIDENT_

_Vitals_

_Robert A. Fulmer_
_Pres._
_7/31/08_



**FOR SALE**

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _De Smet Slott_ confirm that I have read the Confidentiality Agreement (the "Agreement") entered into by and between Security Resources and _aps Corporation_. I understand the terms of the Agreement. I agree to treat as confidential all information, whether written or verbal, which is subject to the Agreement, and agree to promptly return to Seller as directed by them any and all information I have received which is subject to the Agreement, in each case all in accordance with the terms of the Agreement.

### RECEIPT AND ACCEPTANCE ACKNOWLEDGED

_AB Slott_

By

_Principal Geologist_

Title:

_July 30, 2008_

Date

COLLIERS

**FOR SALE**

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I have read the Confidentiality Agreement (the "Agreement"). I understand the

HPA #2

RECEIPT AND ACCEPTANCE ACKNOWLEDGED

Project Manager
Title

7-30-2008
Date

COLLIERS

**FOR SALE**

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _____ acknowledge that I have received a copy of the Marketing Confidentiality Agreement (the "Agreement") entered into by Delphi Corporation as Seller and _EUTONEL DEVELOPMENT_. I understand the terms of the Agreement and agree to keep confidential all information, whether written or verbal, which is subject to the Agreement, and agree to promptly return all documents and other data and all information I have received which is subject to the Agreement, in exchange for this copy, an original party of the Agreement.

RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: _____

Title: _____

Date: _____

COLLIERS

**FOR SALE**    1201 N. Magnolia Avenue, Anaheim, CA 92801

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, *Brad Anderson* _____, confirm that I have read the Confidentiality Agreement (the "Agreement") entered into by Delphi Automotive Systems LLC ("Seller") and *Fullmer Construction* _____. I understand the terms of the Agreement, agree to keep confidential all information, whether written or verbal, which is subject to the Agreement, and agree to promptly return to Seller, as directed by Seller, any and all information I have received which is subject to the Agreement, in each case as if I were an original party to the Agreement.

### RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: _____

VICE PRESIDENT OF CONSTRUCTION

Title: _____

7-31-08

Date

COLLIERS
INTERNATIONAL

No warranty or representation is made as to the accuracy of the foregoing information. Terms of sale or lease and availability are subject to change or withdrawal without notice.

**FOR SALE**

## ACKNOWLEDGMENT OF CONFIDENTIALITY

RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: Robert N. Bittenfeld

Managing Manager - Variance Management Risk & Insurance Services, LLC

Date

**FOR SALE**   1201 N. Magnolia Avenue, Anaheim, CA 92801

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _Alan J. Tuntland_, confirm that I have read the Confidentiality Agreement (the "Agreement")
entered into by Delphi Automotive Systems LLC ("Seller") and _BIRTCHER DEVELOPMENT_. I understand the
terms of the Agreement, agree to keep confidential all information, whether written or verbal, which is subject to the Agreement,
and agree to promptly return to Seller, as directed by Seller, any and all information I have received which is subject to the Agreement,
in each case as if I were an original party to the Agreement.

### RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: _____

_SR  VP_

Title: _____

_8/7/08_

Date

**COLLIERS**
INTERNATIONAL

No warranty or representation is made to the accuracy of the foregoing information. Terms of sale or lease and availability are subject to change or withdrawal without notice.

**FOR SALE**  1201 N. Magnolia Avenue, Anaheim, CA 92801

## ACKNOWLEDGMENT OF CONFIDENTIALITY

I, _Scott Spensiero_____, confirm that I have read the Confidentiality Agreement (the "Agreement")
entered into by Delphi Automotive Systems LLC ("Seller") and _____. I understand the
terms of the Agreement, agree to keep confidential all information, whether written or verbal, which is subject to the Agreement,
and agree to promptly return to Seller, as directed by Seller, any and all information I have received which is subject to the Agreement,
in each case as if I were an original party to the Agreement.

### RECEIPT AND ACCEPTANCE ACKNOWLEDGED

By: _____  Scott Spensiero

Title: _Norcal Engineering / Project Manager_

Date: _9/30/08_

No warranty or representation is made to the accuracy of the foregoing information. Terms of sale or lease and availability are subject to change or withdrawal without notice.

## EXHIBIT E

## OPERATION AND MAINTENANCE AGREEMENT

| | |
|---|---|
| In the matter of: | ) Docket SRPD: SRPD05/06SCC- 4344 |
| | ) |
| Delphi Automotive Systems LLC | ) OPERATION AND MAINTENANCE |
| 1201 N. Magnolia Avenue | ) AGREEMENT |
| Anaheim, CA 92801 | ) |
| EPA ID#: CAD 008 323 396 | ) |
| | ) |
| Respondent: | ) Health and Safety Code Section 25187 |
| | ) |

The California Department of Toxic Substances Control (DTSC) enters into this Operation and Maintenance Agreement (Agreement) with Delphi Automotive Systems LLC, a Delaware limited liability company (Respondent) for the Facility located at 1201 N. Magnolia Avenue, Anaheim, California (Facility). A Facility location map and the assessor's parcel map are attached as Exhibit A and Exhibit B. DTSC and Respondent agree as follows:

1. <u>Jurisdiction.</u> This Agreement is entered into by DTSC and Respondent pursuant to Health and Safety Code section 25187 which authorizes DTSC to require corrective action to address a release or threatened release of any hazardous waste or hazardous constituent at or from the Facility, and to oversee the operation and maintenance of any remediation and/or monitoring system at the Facility.

2. <u>Approved Final Remedy for Corrective Action.</u> Respondent submitted to DTSC a Corrective Measures Proposal (CMP) dated August 10, 2007, presenting the proposed final remedy for the Facility. After conducting a 30-day public review and comment period, DTSC approved the CMP as the final remedy for the Facility and Respondent has implemented the approved remedy. The proposed final remedy includes a soil vapor extraction system to reduce the concentration of volatile organic compounds in onsite subsurface soils and a groundwater monitoring system to monitor groundwater quality and flow conditions onsite and offsite.

3. <u>Remediation System.</u> Respondent installed soil vapor extraction wells and a soil vapor extraction and treatment unit (Remediation System). A figure showing the location of the Remediation System is attached as Exhibit C. Respondent is required to operate and monitor the performance of the Remediation System and provide Remediation System progress and monitoring reports to DTSC by May 31st and November 30th of each year. Respondent may modify and/or expand the Remediation System to achieve the approved site-specific cleanup goals. Respondent is required to continue operation of the Remediation System until the site-specific cleanup goals have been met, or Respondent may discontinue operation of the Remediation System with the prior written approval from DTSC.

4. <u>Groundwater Monitoring System.</u> Respondent installed onsite and offsite groundwater monitoring wells to monitor groundwater quality and flow conditions (Groundwater Monitoring System). A figure of the Facility showing the location of the

1

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

45

groundwater monitoring wells is attached as Exhibit D. Respondent is required to continue semi-annual groundwater monitoring according to the schedule in the approved CMP and maintain the integrity of the Groundwater Monitoring System. Respondent is required to submit to DTSC groundwater quality monitoring reports by May 31st and November 30th of each year. Respondent may modify and/or terminate the Groundwater Monitoring System with the prior written approval from DTSC.

5. <u>DTSC-Required Modification</u>. DTSC may require modification, replacement, or additions to the Remediation System or Groundwater Monitoring System if DTSC determines these Systems, or any part of thereof, are not achieving the remediation objectives, or are not protecting human health or the environment. DTSC may require additional evaluation, design and the construction and operation of facilities to achieve these objectives.

6. <u>Quality Control/Quality Assurance (QC/QA)</u>. All sampling and analysis conducted by Respondent under this Agreement shall be performed in accordance with the QC/QA procedures submitted by Respondent and approved by DTSC pursuant to this Agreement.

7. <u>Financial Assurance.</u> Respondent must assure that sufficient funds are available to implement all the requirements of this Agreement including costs of overseeing the work performed by Respondent, and in responding to any contamination at the Facility. Respondent has established a letter of credit (No. TPTS-316947) and corresponding Standby Trust (No.304882917) issued by J.P. Morgan Chase Bank on March 20, 2007, and March 30, 2007, respectively, in the amount of $219,000.00 as a financial assurance mechanism that meets DTSC's requirements pursuant to California Code of Regulations, title 22, section 66265.143.

8. <u>Cost Recovery and Payment</u>.

8.1. Respondent is liable for all of DTSC's costs incurred in implementing this Agreement. The estimated cost to be incurred by DTSC for the implementation of this Agreement is $20,000.00. Respondent shall pay the total amount of the estimated costs ($20,000.00) in advance within 30 days after the effective date of this Agreement. Cost recovery may be pursued by DTSC pursuant to applicable state or federal laws or common law. DTSC will invoice Respondent on a quarterly basis if DTSC has incurred costs during the previous quarter, and will provide cost documentation together with the quarterly invoice.

8.2. DTSC shall retain all cost records associated with the work performed under this Agreement as may be required by state law. DTSC will make all documents that support DTSC's cost determination available for inspection upon request in accordance with the Public Records Act, Government Code section 6250 et seq.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

9.  Endangerment During Implementation.

9.1. Respondent shall notify DTSC's Project Manager immediately upon learning of any condition that may pose an immediate threat to public health or safety or the environment. Within seven days of the onset of such a condition, Respondent shall furnish a report to DTSC, signed by Respondent's Project Manager, setting forth the conditions and events that occurred and the measures taken in response thereto.

9.2. In the event DTSC determines that any activity (whether or not pursued in compliance with this Agreement) may pose an imminent or substantial endangerment to the health or safety of people on the Facility or in the surrounding area or to the environment, DTSC may order Respondent to conduct additional activities or to stop further implementation of this Agreement for such period of time as may be needed to abate the endangerment. DTSC may request that Respondent implement interim measures to address any immediate threat or imminent or substantial endangerment.

10.  Facility Access. Respondent shall provide, and/or obtain access to the Facility and take all reasonable efforts to obtain access to off Facility areas to which access is necessary to implement the Agreement. Such access shall be provided to DTSC's employees, contractors, and consultants at all reasonable times. Nothing in this paragraph is intended or shall be construed to limit in any way the right of entry or inspection that DTSC or any other agency may otherwise have by operation of law.

11.  Sampling, Data and Document Availability. When requested by DTSC, Respondent shall make available for DTSC's inspection, and shall provide copies of all data and information generated or developed pursuant to this Agreement, including technical records and contractual documents, sampling and monitoring information and photographs and maps. For all final reports, Respondent shall submit one hard (paper) copy and one electronic copy with all applicable signatures and certification stamps as a text-readable Portable Document Formatted (PDF) file Adobe Acrobat or Microsoft Word formatted file.

12.  Record Preservation. Respondent shall retain, during the implementation of this Agreement and for a minimum of six years after its termination, all data, reports, and other documents that relate to the performance of this Agreement. If DTSC requests that some or all of these documents be preserved for a longer period of time, Respondent shall comply with the request, deliver the documents to DTSC, or permit DTSC to copy the documents at Respondent's expense prior to destruction.

13.  Notification of Field Activities. Respondent shall inform DTSC at least seven days in advance of all field activities pursuant to this Agreement and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by Respondent pursuant to this Agreement.

14.  Project Managers. Within 14 days of the effective date of this Agreement, DTSC and Respondent shall each designate a Project Manager and shall notify each

3

Error! Unknown document property name..Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name /Error! Unknown document property name
47

other in writing of the Project Manager selected. Each Project Manager shall be responsible for overseeing the implementation of this Agreement and for designating a person to act in his/her absence. All communications between DTSC and Respondent, and all notices, documents and correspondence concerning the activities performed pursuant to this Agreement shall be directed through the Project Managers. Each party may change its Project Manager with at least seven days prior written notice.

15. Respondent's Consultant and Contractor. All work performed pursuant to this Agreement shall be under the direction and supervision of a professional engineer or professional geologist, licensed in California, with expertise in hazardous waste site cleanup. Respondent's Project Manager, contractor or consultant shall have the technical expertise sufficient to fulfill his or her responsibilities. Within 14 days of the effective date of this Agreement, Respondent shall notify DTSC's Project Manager in writing of the name, title, and qualifications of the professional engineer or professional geologist and of any contractors or consultants and their personnel to be used in carrying out the work under this Agreement in conformance with applicable state law, including but not limited to, Business and Professions Code sections 6735 and 7835.

16. DTSC Review and Approval. All work performed pursuant to this Agreement is subject to DTSC's review and approval. If DTSC determines that any report, plan, schedule or other document submitted for approval pursuant to this Agreement fails to comply with this Agreement or fails to protect public health or safety or the environment, DTSC may (a) return comments to Respondent with recommended changes and a date by which the Respondent must submit to DTSC a revised document incorporating or addressing the recommended changes; or (b) modify the document in consultation with Respondent and approve the document as modified. All DTSC approvals and decisions made regarding submittals and notifications will be communicated to Respondent in writing by DTSC's Performance Manager or his/her designee. No informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by the Respondent shall be construed to relieve Respondent of the obligation to obtain such written approvals.

17. Amendments. This Agreement may be amended in writing by mutual agreement of DTSC and Respondent. Such amendment shall be effective the third business day following the day the last party signing the amendment sends its notification of signing to the other party. The parties may agree to a different effective date.

18. Incorporation of Exhibits, Plans and Reports. All exhibits are incorporated into this Agreement by reference. All plans, schedules and reports that require DTSC's approval and are submitted by Respondent pursuant to this Agreement are incorporated in this Agreement upon DTSC's approval.

19. Reservation of Rights. DTSC reserves all of its statutory and regulatory powers, authorities, rights, and remedies under applicable laws to protect public health or the environment, including the right to recover its costs incurred therefore.

4

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

48

Respondent reserves all of its statutory and regulatory rights, defenses and remedies available to Respondent under applicable laws.

20. Non-Admission of Liability. By entering into this Agreement, Respondent does not admit to any finding of fact or conclusion of law set forth in this Agreement or any fault or liability under applicable laws.

21. Respondent Liabilities. Nothing in this Agreement shall constitute or be considered a covenant not to sue, release or satisfaction from liability by DTSC for any condition or claim arising as a result of Respondent's past, current, or future operations or ownership of the Facility.

22. Government Liabilities. The State of California or DTSC shall not be liable for any injuries or damages to persons or property resulting from acts or omissions by Respondent or by related parties in carrying out activities pursuant to this Agreement, nor shall the State of California or DTSC be held as a party to any contract entered into by Respondent or its agents in carrying out the activities pursuant to this Agreement.

23. California Law. This Agreement shall be governed, performed and interpreted under the laws of the State of California.

24. Severability. If any portion of this Agreement is ultimately determined not to be enforceable, that portion will be severed from the Agreement and the severability shall not affect the enforceability of the remaining provisions of the Agreement.

25. Parties Bound. This Agreement applies to and is binding, jointly and severally, upon Respondent and its agents, receivers, trustees, successors and assignees, and upon DTSC and any successor agency that may have responsibility for and jurisdiction over the subject matter of this Agreement. Respondent shall ensure that its contractors, subcontractors and agents receive a copy of this Agreement and comply with this Agreement.

26. Effective Date. The effective date of this Agreement is the date Respondent receives the signature by DTSC's authorized representative after this Agreement is first signed by Respondent's authorized representative. Except as otherwise specified, "days" means calendar days.

27. Representative Authority. Each undersigned representative of the party to this Agreement certifies that she or he is fully authorized to enter into the terms and conditions of this Agreement and to execute and legally bind the party to this Agreement.

//
//
//
//
//

5

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

49

28. _Counterparts_. This Agreement may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

Date: 7-21-2008

Nebu John
Project Manager, Cypress Office
Brownfield and Environmental Revitalization Program
Department of Toxic Substances Control

Date: 7-9-2008

**John A. Jeffers**
**Executive Director**
**Operations Support Group**
Name and Title, representing
Delphi Automotive Systems LLC

6

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

# EXHIBIT A

## FACILITY LOCATION MAP

**Error! Unknown document property name. Error!**
**Unknown document property name./Error!**
**Unknown document property name.**
**Error! Unknown document property name. Error!**
**Unknown document property name.**/12-16-
08/**Error! Unknown document property**
name./Error! Unknown document property name.



**Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property**

52



EXHIBIT B

ASSESSOR'S PARCEL MAP

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property



DELPH-I

The Property consists of two parcels.

APN: 070-781-03
21.141 Acres

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property



## II. PROPERTY DESCRIPTION

APN: 070-801-28
0.50 Acres

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.



EXHIBIT C

REMEDIATION SYSTEM

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

56



Error! Unkno
Unknown do
Unknown do
Error! Unkn
Unknown document property name./12-16-
08/Error! Unknown document property
name /Error! Unknown document property name

EXHIBIT D

GROUNDWATER MONITORING WELLS

**Error! Unknown document property name. Error!**
**Unknown document property name./Error!**
**Unknown document property name.**
**Error! Unknown document property name. Error!**
**Unknown document property name.**/12-16-
08/**Error! Unknown document property**
name /**Error! Unknown document property name**

58



LEGEND

PROPERTY LINE

GROUNDWATER MONITORING WELL
LOCATION

SITE PLAN SHOWING GROUNDWATER
MONITORING WELL LOCATIONS

FIGURE 1

**Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.**

59

## EXHIBIT F

## ENCROACHMENT LICENSE

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

60

RECORIDNG REQUESTED BY:

CITY OF ANAHEIM

WHEN RECORDED MAIL TO:
**CITY CLERK**
**CITY OF ANAHEIM**
**P.O. BOX 3222**
**ANAHEIM, CA 92803**



EXEMPT-GOVERNMENT AGENCY Per Gov't Code
6103

This Document was electronically recorded by
City of Anaheim

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ NO FEE
2008000112042 11:02am 03/11/08
117 92 A12 10
0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

(Space Above Line For Recorder's Use Only

**TITLE OF DOCUMENT:**

**ENCROACHMENT LICENSE**
**ENC2008-00099**

**THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMAITON**

**Error! Unknown document property name. Error!**
**Unknown document property name./Error!**
**Unknown document property name.**
**Error! Unknown document property name. Error!**
**Unknown document property name./12-16-**
**08/Error! Unknown document property**
name /Error! Unknown document property name

ORIGINAL

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-0123

1    **ENCROACHMENT LICENSE**

2    LICENSE NO. ENC 2008-00099

3    THIS ENCROACHMENT LICENSE AGREEMENT is made and entered into

4    by and between the

5    CITY OF ANAHEIM, a chartered city and
     municipal corporation, hereinafter referred to as "ANAHEIM,"
6

7    A
     N
     D
8

9    DELPHI AUTOMOTIVE SYSTEMS, LLC., a Delaware limited
     liability company, hereinafter referred to as "LICENSEE."

10    RECITALS

11    THIS LICENSE is granted by ANAHEIM in contemplation of the following recitals:

12    WHEREAS, ANAHEIM owns an easement, right-of-way, or fee title to that property

13    described on Exhibit "A" attached hereto and incorporated herein by reference (hereinafter

14    "PROPERTY"); and,

15    WHEREAS, LICENSEE wishes to utilize a certain portion of PROPERTY for the

16    purposes particularly described in Exhibit "B" attached hereto and incorporated herein by reference

17    (hereinafter "ENCROACHMENT"); and,

18    WHEREAS, LICENSEE is the owner in fee title of that certain real property

19    described in Exhibit "C" attached hereto and incorporated by reference herein; and

20    WHEREAS, the proposed ENCROACHMENT, if properly installed, maintained and

21    removed will not interfere with the present use of PROPERTY by ANAHEIM or the public

22    generally.

23    NOW, THEREFORE, in consideration of the foregoing and in the exercise of

24    ANAHEIM'S police power and its ownership powers in PROPERTY, the following LICENSE is

25    granted subject to the following conditions.

26    1.    ANAHEIM does hereby grant to LICENSEE, and its invitees, a LICENSE, personal

27    to the LICENSEE, to enter upon and use PROPERTY of ANAHEIM for the purpose of constructing

28    and maintaining ENCROACHMENT on that portion of PROPERTY in the manner and at the

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

62

1    location herein described.

2        2.        LICENSEE agrees that ENCROACHMENT shall be placed at the location

3    designated on Exhibit "B" and in strict accordance with the conditions set forth in this LICENSE.

4        3.        LICENSEE hereby agrees to, and does hereby, indemnify and hold

5    ANAHEIM, its officers and employees harmless from any liability for any damage, claims, or injury

6    of any kind to any person or property by reason of the placement of ENCROACHMENT by

7    LICENSEE upon PROPERTY or any negligent acts by LICENSEE or others for whom LICENSEE

8    is responsible, excluding therefrom only liability arising from the sole negligence of ANAHEIM.

9    This indemnity shall survive the termination of this LICENSE.

10       4.        LICENSEE agrees to so maintain ENCROACHMENT so as not to cause any

11   interference whatsoever with the use of PROPERTY by ANAHEIM and to maintain such clearances

12   required by law or ordered by ANAHEIM from other ANAHEIM or other private or public utilities.

13   LICENSEE agrees to comply with all applicable State and local laws in the installation, operation,

14   maintenance and removal or destruction of ENCROACHMENT. LICENSEE shall remove said

15   ENCROACHMENT upon termination of this license or discontinuance of the use of ANAHEIM

16   property for the ENCROACHMENT.

17       5.        The term of this LICENSE shall be for a period of three (3) years

18   commencing on the effective date of this LICENSE; provided however, ANAHEIM reserves the

19   right to revoke all privileges granted by this LICENSE upon giving LICENSEE written notice of

20   cancellation of this LICENSE; provided, however, ANAHEIM will give thirty (30) days notice of

21   cancellation. Upon such written notice being given by ANAHEIM to LICENSEE, LICENSEE shall

22   remove ENCROACHMENT from PROPERTY and restore PROPERTY to its unobstructed and

23   pre-existing condition. LICENSEE hereby irrevocably grants to ANAHEIM the right to remove

24   ENCROACHMENT at LICENSEE's expense in the event LICENSEE should fail to remove

25   ENCROACHMENT as required herein.

26       6.        LICENSEE agrees that the use of the portion of PROPERTY for

27   ENCROACHMENT will in no way create any right whatsoever in LICENSEE which is adverse to

28   any rights of ANAHEIM or the public; that the rights of LICENSEE are the rights herein given by

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5167

-2-

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

63

1   this LICENSE and no other rights whatsoever; that no contractual relationship is entered between

2   the parties; and that LICENSEE'S rights are not coupled with any interest.

3            7.    Any privilege conferred by this LICENSE is personal to the LICENSEE and

4   is not assignable or transferable without ANAHEIM's express prior written consent, which consent

5   shall not be unreasonably withheld.

6            8.    ANAHEIM may require LICENSEE to cause this LICENSE to be recorded

7   in the Office of the County Recorder of the County of Orange; provided, however, that any such

8   recordation shall serve only as notice to successors or assigns of LICENSEE of the limitations and

9   burdens of the LICENSE and shall not extend the benefits of the LICENSE to any successors or

10  assigns of LICENSEE.

11           9.    LICENSEE acknowledges that this LICENSE, if granted by the Director of

12  Public Works (Director), is granted subject to the limitations imposed in the Resolution of the City

13  Council wherein the authority to issue such LICENSE is delegated to the Director.

14           10.   LICENSEE shall provide to ANAHEIM a bond in the amount of Ten

15  Thousand Dollars ($10,000), in a form approved by ANAHEIM.

16           11.   Unless a different date is provided in this LICENSE, the effective date of this

17  LICENSE shall be the Date of Acceptance by LICENSEE set forth below.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

-3-

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property

1    DATE OF EXECUTION:                    CITY OF ANAHEIM

2    _____               By _____
                                              Natalie Meeks, Director of
3                                             Public Works

4                                             "ANAHEIM"

5

6

7                                          DELPHI AUTOMOTIVE SYSTEMS, LLC., a
                                           Delaware limited liability company
8

9
                                           By: _____
10   DATE OF EXECUTION:

11   _____

12
                                              "LICENSEE"
13   DATE OF EXECUTION:

14   _____

15

16

17   APPROVED AS TO FORM:
     JACK L. WHITE, CITY ATTORNEY
18

19
     By _____
20      Bryn M. Morley
        Deputy City Attorney
21

22   Date   3/3/08
         _____
23   67730.2/bmorley

24

25

26

27

28

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

-4-

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name /Error! Unknown document property name



**EXHIBIT A**

**PROPERTY OF ANAHEIM**

That certain right-of-way on North Knollwood Circle north of Woodland Drive and adjacent to 1200 and 1210 North Knollwood Circle.

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5125

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./ 12-16-
08/Error! Unknown document property**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5103

**EXHIBIT B**

**ENCROACHMENT**

The installation of two (2) ground water monitoring wells identified as well sites MW-12 and MW-13 on the attached site plan.  MW-12 and MW-13 will be approximately 10' west of existing curb pursuant to street improvement plan No. 10969 and 10970.

The Licensee's encroachment shall maintain a minimum twelve (12) inch vertical separation and a minimum five (5) feet horizontal separation from existing facilities.

-6-

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name



### EXHIBIT C

### PROPERTY OF LICENSEE

Parcel 1 in the City of Anaheim, County of Orange, State of California, as per map filed in book 50, page 21 of Parcel Maps, in the Office of the County Recorder of said County.

OFFICE OF THE CITY ATTORNEY
CITY OF ANAHEIM
200 S. ANAHEIM BOULEVARD, SUITE 356
ANAHEIM, CALIFORNIA 92805
(714) 254-5169
FAX (714) 254-5123

-7-

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

STATE OF MICHIGAN             §
                              §
COUNTY OF OAKLAND             §

    The foregoing instrument was acknowledged before me this 27th day of February, 2008
by J.A. Jaffurs the Authorized Signatory of Delphi Automotive Systems LLC.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the 27th day of February,
2008.

Notary Public, State of Michigan, County of _Oakland_

My commission expires: _April 1, 2012_

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

69

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___Orange___ }

On _3·11· 2008_ before me, ___Noelani F. Middenway, Notary Public___
     Date                                 Here Insert Name and Title of the Officer

personally appeared _natalie meeks_
                                    Name(s) of Signer(s)

_____

NOELANI F. MIDDENWAY
Commission # 1554892
Notary Public - California
Orange County
My Comm. Expires Feb 25, 2009

Place Notary Seal Above

who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____
                     Signature of Notary Public

─────────── **OPTIONAL** ───────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _Encroachment license  2008-00099_

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer(s)

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| | |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5907    Reorder: Call Toll-Free 1-800-876-6827

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

## EXHIBIT G

## BIDDING PROCEDURES

### DELPHI AUTOMOTIVE SYSTEMS LLC
### ANAHEIM, CALIFORNIA ASSET BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the proposed sale (the "**Sale**") of certain assets of Delphi Automotive Systems LLC ("**DAS LLC**" or the "**Seller**") comprising an improved parcel of real property containing approximately 21.6 acres and located in the City of Anaheim and the County of Orange, State of California (the "**Property**"). On [_____], 2008, the Seller executed that certain Real Property Purchase Agreement (together with any amendments thereto, the "**Agreement**") with [_____] (the "**Purchaser**"). The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "**Bankruptcy Code**"), and certain other closing conditions.

On [_____], 2008, the Seller and certain of its affiliates (collectively, the "**Debtors**") filed a Motion For Orders Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002, 6004, And 9014 (A)(I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form and Manner of Sale Notices, and (IV) Setting Sale Hearing Date and (B) Authorizing and Approving (I) Sale of a Certain Debtor Asset Free and Clear of Liens, Claims, and Encumbrances and (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (the "**Sale Motion**"). On [_____], 2008, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered an Order Under 11 U.S.C. §§ 363 And 365 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Real Property Located In Anaheim, California (the "**Bidding Procedures Order**").

Pursuant to the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to authorize the Seller to enter into and perform under the Agreement on [_____], 2008.

All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the asset available for sale, the manner in which bidders and bids become Qualified, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), the ultimate selection of the Successful Bidder(s) (as defined herein), and the Bankruptcy Court's approval thereof (collectively, the "**Bidding Process**"). The Seller intends to consult with, among others, the official committee of unsecured

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

creditors (the **"Creditors' Committee"**) throughout the Bidding Process.  In the event that the Seller and any other party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### Free Of Any And All Liens

Except to the extent otherwise set forth in the Agreement or the relevant purchase agreement of a Successful Bidder, as applicable, all of the Seller's right, title, and interest in and to the Property, or any portion thereof, to be acquired will be sold free and clear of any lien (including tax liens and any statutory or common law liens, possessory or otherwise), charge, pledge, security interest, conditional sale agreement or other title retention agreement, lease, mortgage, security interest, option or other encumbrance (including the filing of, or agreement to give, any financing statement under the Uniform Commercial Code of any jurisdiction) (the **"Liens"**) and any monetary amounts which are secured by any Lien.

### Participation Requirements

Unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi in its sole discretion, to participate in the bidding process, each person (a **"Potential Bidder"**), other than the Purchaser, must deliver (unless previously delivered) to the Seller and its counsel at the addresses provided below:

(a) An executed confidentiality agreement in form and substance acceptable to the Seller;

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, current audited financial statements of the equity holders of the Potential Bidder who must guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement as may be acceptable to the Seller and its financial advisors;

(c) A preliminary (non-binding) written proposal regarding (i) the purchase price, (ii) any property to be excluded, (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing of the Purchase Price (as defined in the Agreement) and the requisite financial assurances), (iv) any anticipated regulatory approvals required to close the transaction, the anticipated time frame, and any anticipated impediments for obtaining such approvals, (v) any conditions to closing that it may wish to impose in addition to those set forth in the Agreement, and (vi) the nature and extent of additional due diligence it may wish to conduct and the date by which such due diligence must be completed; and

(d) A good faith deposit in the amount of $1,500,000 (the **"Good Faith Deposit"**).

A Potential Bidder who delivers the documents described in the previous subparagraphs above and whose financial information and credit-quality support demonstrate the financial capability of such Potential Bidder to consummate the Sale, if selected as a successful bidder, and who the Seller determines in its sole discretion is likely (based on availability of financing,

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a **"Qualified Bidder."** As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Seller will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder. At the same time when the Seller notifies the Potential Bidder that it is a Qualified Bidder, the Seller will allow the Qualified Bidder to commence due diligence with respect to the Property as provided below. Notwithstanding the foregoing, the Purchaser shall be deemed a Qualified Bidder for purposes of the Bidding Process.

## Due Diligence

The Seller will afford each Qualified Bidder due diligence access to the Property. Due diligence access may include such management presentations as may be scheduled by the Seller, access to data rooms, on-site inspections, and such other matters as a Qualified Bidder may request and as to which the Seller, in its sole discretion, may agree. The Seller will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. Any additional due diligence may not continue after the Bid Deadline. The Seller may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. Neither the Seller nor any of its affiliates (or any of its respective representatives) will be obligated to furnish any information relating to the Property to any person other than to Qualified Bidders which make an acceptable preliminary proposal.

Each Qualified Bidder will be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property or the completeness of any information provided in connection therewith, the Bidding Process, or the Auction (as defined herein), except as expressly stated in the definitive agreement with the Successful Bidder approved by the Bankruptcy Court.

## Bid Deadline

A Qualified Bidder, other than the Purchaser, which desires to make a bid must deliver written copies of its bid to: Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098, Attention: Executive Director, Operations Support Group, with copies to: (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan, 48098, Attention: Karen J. Craft, Managing Restructuring Counsel; (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and T. Kellan Grant; (iii) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention: Robert J. Rosenberg and Mark A. Broude; (iv) the Creditors' Committee's financial advisor, Mesirow Financial Consulting LLC, 666 Third Avenue, 21st Floor, New York, New York 10017, Attention: Ben Pickering; (v)

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

counsel for the Debtors' postpetition credit facility, Davis, Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald Bernstein and Brian Resnick; and (vi) the Purchaser, [_____], Attention:_____, and [_____], Attention:_____, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on [_____], 2008 (the "Bid Deadline"). The Seller may extend the Bid Deadline once or successively, but is not obligated to do so. If the Seller extends the Bid Deadline, it must promptly notify all Qualified Bidders of such extension.

## Bid Requirements

All bids must include the following documents (the "**Required Bid Documents**"):

(a) A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Property.

(b) An executed copy of the Agreement, together with all schedules, marked to show those amendments and modifications to such Agreement that the Qualified Bidder proposes, including the Purchase Price (as defined in the Agreement) (a "**Marked Agreement**").

(c) The Good Faith Deposit in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to the Seller in its sole discretion) payable to the order of the Seller (or such other party as the Seller may determine) in the amount of $1,500,000.

(d) Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transactions that is satisfactory to the Seller and its advisors.

## Qualified Bids

A bid will be considered only if the bid:

(a) is on terms and conditions (other than the amount of the consideration) that are substantially similar to, and are not materially more burdensome or conditional to the Seller than, those contained in the Agreement;

(b) is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder;

(c) proposes a transaction that the Seller determines, in its sole discretion, has a value, either individually or, in conjunction with any other Qualified Bid, greater than or equal to the sum of the Purchase Price and the amount of the Expense Reimbursement, plus (i) in the case of the initial Qualified Bid, $500,000.00, and (ii) in the case of any subsequent Qualified Bids, $250,000.00 over the immediately-preceding highest Qualified Bid;

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

(d) is not conditioned upon any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment;

(e) an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Property in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Property, the completeness of any information provided in connection therewith, or the Auction, except as expressly stated in the Agreement or the Marked Agreement;

(f) includes a commitment to consummate the purchase of the Property (including the receipt of any required governmental or regulatory approvals) within not more than ten days after entry of an order by the Bankruptcy Court approving such purchase; and

(g) is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a **"Qualified Bid"** only if it includes all of the Required Bid Documents and meets all of the above requirements; <u>provided, however</u>, that the Seller will have the right, in its sole discretion, to entertain bids for the Property that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale. A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction. Each Qualified Bid other than that of the Purchaser is referred to as a **"Subsequent Bid."**

If the Seller does not receive any Qualified Bids other than the Agreement received from the Purchaser, the Seller will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

## <u>Bid Protection</u>

Recognizing the Purchaser's expenditure of time, energy, and resources, the Seller has agreed to provide certain bidding protections to the Purchaser. Specifically, the Seller has determined that the Agreement will further the goals of the Bidding Procedures by setting a floor which all other potential bids must exceed. As a result, the Seller has agreed that if the Seller terminates the Agreement to close an alternative transaction and sell the Property to a Successful Bidder other than the Purchaser, the Seller will, in certain circumstances, be obligated to pay the Purchaser an Expense Reimbursement of up to $450,000 (the **"Expense Reimbursement"**). The payment of the Expense Reimbursement will be governed by the provisions of the Agreement and the Bidding Procedures Order.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

75

## Auction

If the Seller receives at least one Qualified Bid in addition to the Agreement, the Seller will conduct an auction (the "**Auction**") of the Property upon notice to all Qualified Bidders which have submitted Qualified Bids at 10:00 a.m. (prevailing Eastern time) on or before [_____], 2008, at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or Four Times Square, New York, New York 10036 (at the Seller's election), or such later time or other place as the Seller may notify all Qualified Bidders which have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing) in accordance with the following procedures:

(a) Only the Seller, Purchaser, any representative of the Creditors' Committee and the Equityholders' Committee, any representative of Seller's secured lender (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid shall be entitled to attend the Auction, and only the Purchaser and the other Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b) At least two Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Seller whether it intends to participate in the Auction and at least one Business Day prior to the Auction, the Seller shall provide copies of the Qualified Bid or combination of Qualified Bids which the Seller believes is the highest or otherwise best offer going into the Auction (the "**Lead Bid**") to all Qualified Bidders who have informed the Seller of their intent to participate in the Auction. Notwithstanding this determination of the Lead Bid, the Seller reserves the right, in its sole discretion, to determine which bid, or subsequent bid, is the Successful Bid (as defined below), following the conclusion of the Auction based upon a number of factors and other considerations.

(c) All bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d) The Seller may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith.

(e) Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of $250,000.00 higher than the previous bid or bids. The Auction will continue in one or more rounds of bidding and will conclude after each participating bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property

76

Subsequent Bid by Purchaser), the Seller will give effect to any Expense Reimbursement as well as any assets to be retained by the Seller.

## Selection Of Successful Bid

At the conclusion of the Auction, or as soon thereafter as practicable, the Seller, in consultation with its advisors, will: (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Property received at the Auction (the "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder(s)**").

The Seller will sell the Property for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. If, after an Auction in which the Purchaser: (i) has bid an amount in excess of the consideration currently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) is the Successful Bidder, the Purchaser must, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to: (a) the amount of the Successful Bid less (b) the Expense Reimbursement.

The Seller's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Seller's acceptance of the bid. The Seller will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Bankruptcy Court will conduct a Sale Hearing on [_____], 2008 at 10:00 a.m. (prevailing Eastern time).

The Sale Hearing will take place before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Sale Hearing may be adjourned or rescheduled by the Seller without notice other than by an announcement of the adjourned date at the Sale Hearing.

If the Seller does not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Seller will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Property to the Purchaser following entry of the Sale Approval Order. If the Seller does receive additional Qualified Bids, then at the Sale Hearing the Seller will seek approval of the Successful Bid(s), as well as the second highest or best Qualified Bid(s) (the "**Alternate Bid(s)**," and such bidder(s), the "**Alternate Bidder(s)**"). The Seller's presentation to the Bankruptcy Court of the Successful Bid(s) and Alternate Bid(s) will not constitute the Seller's acceptance of either or any such bid(s), which acceptance will occur only upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing. Following approval of the sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

(i) failure of a condition precedent beyond the control of either the Seller or the Successful Bidder or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Seller will be permitted to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court.

## Return Of Good Faith Deposits

Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders), until two Business Days following the closing of the Sale (the "**Return Date**").  Notwithstanding the foregoing, the Good Faith Deposit submitted by the Successful Bidder(s), together with interest thereon, if any, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, the Seller will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of the Seller.  Subject to the preceding sentence, on the Return Date, the Seller will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon, if any.

## Reservations Of Rights

The Seller, after consultation with, among others, the Creditors' Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may reject at any time any bid (other than the Purchaser's bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Seller, its estate, or its stakeholders as determined by the Seller in its sole discretion.

**Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property**

78

## EXHIBIT A

### BIDDING PROCEDURES ORDER

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - -    x
                                :
      In re                      :      Chapter 11
                                  :
  DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                  :
                    Debtors.      :      (Jointly Administered)
                                  :
- - - - - - - - - - - - - - - - - - - - - - - -    x

ORDER UNDER 11 U.S.C. §§ 363 AND 365 AND FED. R. BANKR. P. 2002, 6004,
AND 9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF
SALE NOTICES, AND (IV) SETTING SALE  HEARING DATE IN
CONNECTION WITH SALE OF
REAL PROPERTY LOCATED IN ANAHEIM, CALIFORNIA

("ANAHEIM BIDDING PROCEDURES ORDER")

Upon the motion, dated [_____], 2008 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for Orders Pursuant to 11 U.S.C. §§ 363 and

365 and Fed. R. Bankr. P. 2002, 6004, and 9014 (a)(i) approving the bidding procedures set forth

herein and attached hereto as Exhibit 1, (ii) granting certain bid protections, (iii) approving form

and manner of sale notices, and (iv) setting sale hearing date and (b) authorizing and approving

(i) the sale (the "Sale") of an asset of Delphi Automotive Systems LLC ("DAS LLC" or the

"Seller") comprising a certain improved parcel of real property containing approximately 21.6

acres and located in Anaheim, California (the "Property") for approximately $27.1 million, free

and clear of liens, claims, encumbrances, and interests to [_____] (the "Purchaser")

pursuant to the Real Property Purchase Agreement, dated [_____], 2008, by and between

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.-Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name /Error! Unknown document property name

the Seller and the Purchaser (the "Agreement") and (ii) the assumption and assignment of certain

prepetition executory contracts and/or unexpired leases (the "Assumed Contracts") and the

assignment of certain postpetition executory contracts and/or unexpired leases (the "Postpetition

Contracts," and collectively with the Assumed Contracts, the "Assigned Contracts") to the

Purchaser or the Successful Bidder in connection with the Sale; and upon the record of the

[___], 2008 Hearing on the Motion; and after due deliberation thereon, and sufficient cause

appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

    A.    The Court has jurisdiction over this matter and over the property of the

Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

    B.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and

(O).

    C.    The relief requested in the Motion is in the best interests of the Seller, its

estate, its stakeholders, and other parties-in-interest.

    D.    The notice given by the Seller of the Motion and the Hearing constitutes

due and sufficient notice thereof.

    E.    The Seller has articulated good and sufficient reasons for the Court to (i)

approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement

and in this order, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the

assumption and/or assignment of the Assigned Contracts, (iv) approve the form of notice of the

Motion and the Sale Hearing to be distributed to stakeholders and other parties-in-interest,

including prospective bidders, (v) approve the form of notice of the Cure Amounts (as defined

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

**Error! Unknown document property name. Error! Unknown document property name./Error! Unknown document property name. Error! Unknown document property name.-Error! Unknown document property name./12-16-08/Error! Unknown document property**

below) and the assumption of the Assumed Contracts to be filed with the Court and served on parties to each Assumed Contract, and (v) set the Sale Hearing.

F.    The Expense Reimbursement[3] may be paid in accordance with the terms, conditions, and limitations of the Agreement as modified by this order and (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Seller's estate, within the meaning of sections 503 and 507(b) of the Bankruptcy Code, (ii) is of substantial benefit to the Seller's estates, (iii) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Purchaser notwithstanding that the proposed Sale is subject to higher or better offers for the Property, (iv) was negotiated by the parties at arms' length and in good faith, and (v) is necessary to ensure that the Purchaser will continue to pursue its proposed acquisition of the Property.  The Expense Reimbursement was a material inducement for, and condition of, the Purchaser 's entry into the Agreement.  The Purchaser is unwilling to commit to hold open its offer to purchase the Property under the terms of the Agreement unless it is assured of payment of the Expense Reimbursement.  Thus, assurance to the Purchaser of payment of the Expense Reimbursement promoted more competitive bidding by inducing the Purchaser to hold its bid open.  Without the Expense Reimbursement, other bidding would have been limited.  Further, because the Expense Reimbursement induced the Purchaser to research the value of the Property and to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Purchaser has provided a benefit to the Seller's estate by increasing the likelihood that the price at which the Property is sold will reflect its true worth.  Finally, absent authorization of the Expense

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name. /Error! Unknown document property name.

Reimbursement, the Seller may lose the opportunity to obtain the highest or otherwise best available offer for the Property.

G.    The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Property.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1.    The Bidding Procedures, as set forth on Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern all proceedings relating to the Agreement and any subsequent bids for the Property and the Auction, if applicable.

2.    The Seller may: (a) determine, in its business judgment, which Qualified Bid is the highest or otherwise best offer, (b) consult with the representative of any official committee or significant constituency in connection with the Bidding Procedures, and (c) reject at any time, before entry of an order of the Court approving a Qualified Bid, any bid (other than the Purchaser's bid) which, in the Seller's sole discretion, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (iii) contrary to the best interests of the Seller, its estate, or its stakeholders.  The Seller is authorized (x) to terminate the Bidding Process or the Auction at any time if it determines, in its business judgment, that the Bidding Process will not maximize the value of the Property to be realized by the Seller's estate and (y) seek Bankruptcy Court approval of the Agreement with Purchaser.

Sale Hearing

3.    Subject to paragraph 5 below, the Court shall hold a Sale Hearing on

[_____] at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for

Error! Unknown document property name. Error! Unknown document property name./Error! Unknown document property name. Error! Unknown document property name. Error! Unknown document property name./ 12-16-08/Error! Unknown document property name./Error! Unknown document property

82

the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at which time the Court shall consider the sale aspect of the Motion. Objections to the Motion, if any, shall be filed and served no later than 4:00 p.m. (prevailing Eastern time) on [_____], 2008 (the "Objection Deadline").

4. The failure of any objecting person or entity to timely file its objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Sale, the Auction, or the Seller's consummation and performance of the Agreement (including the transfer of the Property free and clear of liens), if authorized by the Court.

5. The Sale Hearing, or any portion thereof, such as with respect to the proposed assumption and assignment of a particular executory contract, may be adjourned by the Debtors from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

## Expense Reimbursement

6. The Expense Reimbursement, as more fully described in the Motion and the Agreement, but as modified herein, is hereby approved. The Seller shall be authorized to pay the Expense Reimbursement to the Purchaser in accordance with the terms of the Agreement without further order of the Court.

## Notice

7. Notice of (i) the Motion, including the proposed Sale of the Property to the Purchaser, (ii) the Sale Hearing, the Bid Deadline, and the Auction, and (iii) the proposed

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name.- Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

83

assumption and assignment of the Assumed Contracts to the Purchaser pursuant to the

Agreement or to a Successful Bidder (and any deadlines for objections associated therewith)

shall be good, sufficient, and timely notice, and no other or further notice shall be required, if

notice is given as follows:

(a)    <u>Notice Of Sale Hearing</u>. Within five days after entry of this order, the Seller (or its agent) shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of the Bidding Procedures Order by first-class mail, postage prepaid, upon (i) all entities known to have expressed an interest in a transaction with respect to the Property during the past six months, (ii) all entities known to have asserted any lien in or upon the Property, (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion, (iv) the United States Attorney's office, (v) the United States Department of Justice, (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service, (viii) all entities which filed a notice of appearance or request for notice in these cases, (ix) all parties to Assigned Contracts, and (x) counsel to the official committee of unsecured creditors and the official committee of equity security holders appointed in these cases.

(b)    <u>Assumption/Assignment Notice For Purchaser</u>. At least 20 days prior to the Sale Hearing, the Seller shall file with the Court and serve on all non-Debtor parties to the Assigned Contracts a notice (the "Purchaser Assumption/ Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 2</u>, identifying the Purchaser as the party which will be assigned all of the Seller's right, title, and interest in the Assigned Contracts, subject to completion of the bidding process provided under the Bidding Procedures. The non-Debtor party to an Assumed Contract shall have ten days from the service of the Purchaser Assumption/ Assignment Notice to object to the proposed assumption and assignment to the Purchaser and shall state in its objection, with specificity, the legal and factual basis of its objection. If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to the assumption and assignment of the Assumed Contract to the Purchaser and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(c)    <u>Assumption/Assignment Notice For Qualified Bidders</u>. At least 20 days prior to the Sale Hearing or on the business day following the Bid Deadline, whichever is later, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 3</u>, to be sent to each non-Debtor party to an Assigned Contract identifying all Qualified Bidders (except the Purchaser, which notice shall be governed by the Purchaser Assumption/Assignment Notice set forth above). The non-Debtor party to an Assumed Contract shall have ten days from the service of the Qualified Bidder Assumption/Assignment Notice to object to the proposed assumption and assignment to any Qualified Bidder and shall state in its objection, with specificity, the legal and factual basis of its objection. If no objection is timely received, the non-Debtor party to the Assumed Contract shall be deemed to have consented to

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

the assumption and assignment of the Assumed Contract to any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)    Publication Notice.  Within five days after entry of this order, or as soon thereafter as is practicable, the Debtors or their agents shall publish notice of the Sale substantially in the form of the notice attached hereto as Exhibit 2 in the Wall Street Journal, the New York Times, and the Los Angeles Times.

8.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

Dated:    New York, New York

_____, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name.

85

## EXHIBIT H

## ASSUMED LICENSES

  D 5685

### ASSIGNMENT AND ASSUMPTION

Know all men by these presents that for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, GENERAL MOTORS CORPORATION, whose address is 3044 West Grand Boulevard, Detroit, Michigan 48202 ("Assignor"), hereby assigns, upon the terms and conditions herein contained, to DELPHI AUTOMOTIVE SYSTEMS LLC, whose address is 5725 Delphi Drive, Troy, Michigan 48098 ("Assignee"), its entire right, title and interest, as licensor, in and to that certain License more particularly described on Exhibit "A" hereto (the "License"). The terms and conditions above referred to are as follows:

A.     This Assignment shall be effective as of January 1, 1999 (the "Effective Date").

B.     Assignee hereby assumes and agrees to perform all of the obligations of Assignor, as licensor, under the License from and after the Effective Date.

C.     Assignor shall indemnify Assignee, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of licensor under the License and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the License arising prior to the Effective Date.

D.     Assignee shall indemnify Assignor, its officers, directors, stockholders, representatives, agents and employees and save them harmless from and against any and all claims, actions, damages, liability, costs and expenses, including reasonable attorney's fees, in connection with any obligations of licensor under the License and all losses, including loss of life, personal injury and/or damage to property, arising from or out of any occurrence in, upon or at the premises covered by the License from and after the Effective Date.

Dated: December 17, 1998

GENERAL MOTORS CORPORATION

By _____
    JOHN J. DUES, General Director
    Worldwide Real Estate

DELPHI AUTOMOTIVE SYSTEMS LLC

By _____

Its _____

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property




## EXHIBIT "A"

License, dated October 2nd, 1952, between GENERAL MOTORS CORPORATION as Licensor, and SOUTHERN CALIFORNIA EDISON COMPANY, as Licensee, to construct, operate and maintain electrical lines and necessary fixtures on Licensor's property in Anaheim, California.

125.06048
Prepared 12/02/08

**Error! Unknown document property name. Error!**
**Unknown document property name./Error!**
**Unknown document property name.**
**Error! Unknown document property name.-Error!**
**Unknown document property name./12-16-**
**08/Error! Unknown document property**
**name /Error! Unknown document property name**

87

D5483

## LICENSE AND PERMIT

AGREEMENT, made this 2nd day of October , A. D. 1953, between GENERAL MOTORS CORPORATION, a Delaware corporation, duly authorized to do business in the State of California, having a principal place of business at 3044 West Grand Boulevard, Detroit 2, Michigan, LICENSOR, and SOUTHERN CALIFORNIA EDISON COMPANY, a California corporation, having a principal place of business at 601 West Fifth Street, Los Angeles, California , LICENSEE.

GENERAL MOTORS CORPORATION gives to SOUTHERN CALIFORNIA EDISON COMPANY, its successors and assigns, a License and Permit to construct, use, maintain, alter, add to, repair, replace and remove an electric line or lines consisting of poles, necessary guys and anchors, cross-arms, wires, and other fixtures and appliances for the conveying of electrical energy to be used for light, heat, power and telephone, said line or lines to be constructed on poles to be erected and maintained within 1 foot of the following described line:

Located in the County of Orange, State of California upon that part of the West 1/2 of the Southeast 1/4 of the Southeast 1/4 of Section 1, Township 4 South, Range 11 West, San Bernardino Base and Meridian; The Southwest 1/4 of the Northeast 1/4 of the Southeast 1/4 of said Section 1; and the North 1/2 of the Northeast 1/4 of the Southeast 1/4 of said Section 1, WHICH LINE IS MORE PARTICULARLY DESCRIBED AND LOCATED AS: Beginning at a point in the North line of LaPalma Avenue, as now established 60 feet wide along the South line of said Section 1, which point is 5 feet Easterly and measured thereon from the West line of said property of First Party; Thence Northerly parallel with the

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property
name./Error! Unknown document property name

West line of said property 2040 feet;
Thence Easterly at right angles with
said West line 790 feet to a point,
hereinafter referred to as Point "A"
in the Westerly line of a sub-station,

and a License and Permit to construct and maintain a 41 foot by
21 foot sub-station with necessary appliances, said sub-station
to be erected and maintained on a parcel of land described as:

Beginning at said Point "A" herein-
before described; Thence Northerly
parallel with said West line 8 feet;
Thence East at right angles with said
line 21 feet; Thence South parallel
with said West line 41 feet; Thence
West at right angles with said West
line 21 feet; Thence North parallel
with said West line 33 feet to said
Point "A".

It is mutually agreed between the parties hereto:

1.  During the construction or repair of said electrical
facilities, proper safeguards, such as barricades, shall be
erected, and on completion of the repair, maintenance, or removal
of said electrical facilities, the property is to be restored to
its original condition.

2.  All State and City laws, ordinances, and regulations
shall be complied with relative to the construction and mainten-
ance of said electrical facilities.

3.  LICENSEE and its agents and employees shall have
free access to said electric line and every part thereof, at all
times, for the purpose of exercising the rights herein granted,
and shall have the right to trim or top such trees as may endanger
or interfere with said electric line.

- 2 -

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property

4. LICENSEE shall hold the LICENSOR free and harmless from any liability arising out of the negligence of the LICENSEE in the occupancy and use of the property described herein, and the LICENSEE shall be responsible for any damage to the property of the LICENSOR by reason of any negligent act or omission on the part of said LICENSEE arising out of such work of repairing, constructing, maintaining, replacing, altering, and/or removing said electrical facilities.

5. LICENSEE agrees that in the event said electrical line is not needed to serve GENERAL MOTORS CORPORATION, then within ninety (90) days after the receipt from the LICENSOR of a written notice so to do, remove or abandon its electrical facilities without cost to the LICENSOR.

6. LICENSEE agrees that in the event said electric line shall interfere with the future improvement of the above described land, then the LICENSEE will within ninety (90) days after the receipt from the LICENSOR of a written notice so to do relocate said electric line in a feasible location on the said property of the LICENSOR and so as to conform to such future improvement, provided that the LICENSOR shall fully reimburse the LICENSEE for the cost of such relocation and shall furnish the LICENSEE with a good and sufficient License for said electric line in such new location.

IN WITNESS WHEREOF, said GENERAL MOTORS CORPORATION has caused these presents to be signed by a Vice President and sealed

- 3 -

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property



STATE OF CALIFORNIA,
County of Los Angeles

On this ___4th___ day of ___November___ A.D., 18 53, before me,
___WILLIAM C. CALNEX___
a Notary Public in and for said County and State, personally appeared
___J. S. HATALL___
___WILLIAM C. CALNEX___ known to me,
to be the person whose name is subscribed to the within
Instrument, and acknowledged to me that he executed the same.
In Witness Whereof, I have hereunto set my hand and affixed my official seal
the day and year in this certificate first above written.

___William C. Calnex___
Notary Public in and for said County and State
My Commission Expires January 1, 1921

ACKNOWLEDGMENT — GENERAL — WOLCOTTS FORM 232

**Error! Unknown document property name. Error!**
**Unknown document property name. /Error!**
**Unknown document property name.**
**Error! Unknown document property name. Error!**
**Unknown document property name.** /12-16-
08/**Error! Unknown document property**
**name./Error! Unknown document property name.**

with its corporate seal the day and year first above written.

Signed, Sealed and Delivered
In Presence of:

_Loretta A. McDermott_

_Genevieve I. Rogers_

GENERAL MOTORS CORPORATION

By _J. J. Cronin_
J. J. Cronin
Vice President

Attest _J. C. Davidson_
J. C. Davidson
Assistant Secretary

ACCEPTED:

SOUTHERN CALIFORNIA EDISON COMPANY

By _J. Mayall_

STATE OF MICHIGAN }
COUNTY OF WAYNE  } ss.

On this 2nd day of October , A. D. 1953, personally
appeared before me   J. J. Cronin     and   J. C. Davidson
to me personally known, who being by me severally duly sworn, did
say that they are respectively a Vice President and an Assistant
Secretary of GENERAL MOTORS CORPORATION, a corporation created
and existing under the laws of the State of Delaware, and that the
seal affixed to the foregoing instrument is the corporate seal of
the said corporation, and that the said instrument was signed and
sealed in behalf of said corporation by authority of its Board of
Directors; and the said   J. J. Cronin    and   J. C. Davidson
acknowledged the said instrument to be the free act and deed of
the said GENERAL MOTORS CORPORATION.

_Genevieve I. Rogers_
Genevieve I. Rogers
Notary Public, Wayne County, Michigan
My Commission Expires: April 2, 1957

- 4 -

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property

STATE OF CALIFORNIA }
COUNTY OF LOS ANGELES } ss.

On this       day of           , A. D. 1953, before me,
e Notary Public in and for said County and State, personally
appeared                      , known to me to be the Vice
President, and                      , known to me to be the
Assistant Secretary of SOUTHERN CALIFORNIA EDISON COMPANY, the
corporation that executed the within instrument, and known to me
to be the persons who executed the within instrument on behalf of
the corporation herein named, and acknowledged to me that such
corporation executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and
affixed my official seal the day and year in this certificate
first above written.

_____
Notary Public in and for said County and State
My Commission Expires: _____

- 5 -

**Error! Unknown document property name. Error!**
**Unknown document property name./Error!**
**Unknown document property name.**
**Error! Unknown document property name. Error!**
**Unknown document property name./12-16-**
**08/Error! Unknown document property**

93

# EXHIBIT I

## ENVIRONMENTAL COMPLIANCE

Not Applicable.

Error! Unknown document property name. Error!
Unknown document property name./Error!
Unknown document property name.
Error! Unknown document property name. Error!
Unknown document property name./12-16-
08/Error! Unknown document property

## REINSTATEMENT AND FIRST AMENDMENT TO REAL PROPERTY PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS

This REINSTATEMENT AND FIRST AMENDMENT TO REAL PROPERTY PURCHASE AGREEMENT AND ESCROW INSTRUCTIONS ("Amendment") is entered into effective as of January 5, 2009, by and between DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company ("Seller"), and BIRTCHER ANAHEIM MAGNOLIA AVENUE, LLC, a California limited liability company ("Purchaser"), with respect to the following:

### R E C I T A L S

A.    Seller and Purchaser have previously entered into that certain Real Property Purchase Agreement and Escrow Instructions dated as of December 18, 2008 (the "Agreement") wherein Seller has agreed to sell to Purchaser and Purchaser has agreed to purchase from Seller certain real property located in the City of Anaheim, County of Orange, State of California (the "Property").

B.    Pursuant to the terms of the Agreement, the Inspection Period (as defined therein) was to expire on December 24, 2008.

C.    On December 24, 2008, Purchaser sent written notice to Seller electing to terminate the Agreement.

D.    Purchaser and Seller desire to reinstate and to amend the Agreement in certain respects, all as hereinafter provided.  Terms not defined herein shall have the meaning for such terms set forth in the Agreement.

### A G R E E M E N T

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained in this Amendment, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Seller hereby agree to reinstate and to amend the Agreement as follows:

1.    Reinstatement.  This Agreement is hereby reinstated and is in full force and effect.

2.    Extension of Inspection Period.  The Inspection Period is hereby extended until 5:00 p.m. Pacific Time on January 26, 2009 (the "Extended Inspection Date").

3.        Extension Consideration.  Within three (3) business days following execution of this Amendment by all parties, as consideration for Seller's agreement to extend the Inspection Period, (a) Purchaser shall deliver to Escrow Agent the sum of Seven Hundred Fifty Thousand Dollars ($750,000), representing one-half of the Deposit, and (b) notwithstanding anything to the contrary contained in the Purchase Agreement, Purchaser shall instruct Escrow Agent to immediately release to Seller One Hundred Thousand Dollars ($100,000) of such amount (the "Non-Escrowed Portion"), which Non-Escrowed Portion shall be non-refundable to Purchaser (except in the event of a Seller default or failure of any condition to closing set forth in subparagraphs (b), (c) or (f) of Paragraph 9 of the Agreement).  The Non-Escrowed Portion shall be applicable to the Purchase Price upon the closing of the sale of the Property if, and only if, the Closing occurs as and when required by the Purchase Agreement, as amended by this Amendment.

4.        Insurance.  Notwithstanding anything to the contrary set forth in Subparagraph 11(f)(1) of the Agreement, Purchaser shall only be required to carry Commercial General Liability coverage during the period of time Purchaser owns the Property.

5.        Miscellaneous.

(a)        Effect of Amendment.  Except to the extent the Agreement is modified by this Amendment, the remaining terms and conditions of the Agreement shall remain unmodified and in full force and effect.  In the event of conflict between the terms and conditions of the Agreement and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall prevail.

(b)        Entire Agreement.  The Agreement, together with this Amendment, embodies the entire understanding between Seller and Purchaser with respect to its subject matter and can be changed only by an instrument in writing signed by Seller and Purchaser.

(c)        Time of Essence.  Time is of the essence of each and every term, condition, obligation and provision hereof.

(d)        Counterparts.  This Amendment may be executed in one or more counterparts, including facsimile counterparts, each of which shall be deemed an original but all of which, taken together, shall constitute the same Amendment.

(e)        Applicable Law.  This Amendment shall be governed by and construed and enforced in accordance with the laws of the State of California without regard to conflicts of law principles.

IN WITNESS WHEREOF, this Amendment has been executed as of the day and year set forth above.

"Seller"  

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By: _____

Name: _____
    John A. Jaffurs

Title: _____
    Executive Director
    Operations Support Group

"Purchaser"  

BIRTCHER ANAHEIM MAGNOLIA AVENUE, LLC,
a California limited liability company

By: _____

Brandon R. Birtcher, Manager