Hearing Date And Time: February 24, 2009 at 10:00 a.m. (prevailing Eastern time)
Objection Deadline: February 17, 2009 at 4:00 p.m. (prevailing Eastern time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698
Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

MOTION FOR ORDER UNDER 11 U.S.C. § 362(d)(1) AND FED. R. BANKR. P. 4001(d)(1)
APPROVING AGREEMENT TO MODIFY AUTOMATIC STAY TO ALLOW
LAUTZENHISER TECHNOLOGIES, LLC TO ASSERT CLAIMS AGAINST DELPHI
MEDICAL SYSTEMS CORPORATION IN PENDING PATENT LITIGATION

("LAUTZENHISER TECHNOLOGIES, LLC STAY MODIFICATION MOTION")

Delphi Medical Systems Corporation ("Delphi Medical"), debtor and debtor-in-possession in the above-captioned cases, hereby submits this motion (the "Motion") for an order pursuant to 11 U.S.C. § 362(d)(1) and Fed. R. Bankr. P. 4001(d)(1) approving an agreement between Delphi Medical and Lautzenhiser Technologies, LLC ("Lautzenhiser") to modify the automatic stay for the sole and limited purpose of allowing Lautzenhiser to advance its alleged patent infringement claims against Delphi Medical by seeking (i) a determination of liability, (ii) if necessary, a quantification of damages, including the potential for enhanced damages as a result of willful infringement, if at all, and (iii) a finding with respect to the appropriateness of injunctive relief against Delphi Medical in an action pending in the United States District Court for the Southern District of Indiana (the "Indiana District Court").  In support of the Motion, Delphi Medical respectfully represents as follows:

## Background

A.    The Chapter 11 Filings

       1.    On October 8 and 14, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, including Delphi Medical, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

       2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders (together with the Creditors' Committee, the "Statutory Committees").

2

3.  On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure Statement with respect to the Plan (Docket No. 11388) (the "December 10 Disclosure Statement"). The Court entered an order approving the adequacy of the December 10 Disclosure Statement and granting the related solicitation procedures motion on December 10, 2007 (Docket No. 11389). On January 25, 2008, the Court entered an order confirming the Plan (as modified) (Docket No. 12359) (the "Confirmation Order"), and the order became final on February 4, 2008.  Although the Debtors on April 4, 2008 had satisfied the conditions required to substantially consummate the Plan, as confirmed by this Court (the "Confirmed Plan"), including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as defined in the Confirmed Plan) refused to participate in a closing that was commenced but not completed and refused to fund their Investment Agreement (as defined in the Confirmed Plan) with Delphi.[1]  On May 16, 2008, Delphi filed complaints for damages and specific performance against the Plan Investors and related parties who refused to honor their equity financing commitments or participate in the closing that would have led to Delphi's successful emergence from chapter 11.  The Debtors nevertheless have continued to work with their stakeholders to achieve their goal of emerging from chapter 11 as soon as practicable. On October 3, 2008, Delphi filed a motion (Docket No. 14310) (the "Plan Modification Approval Motion") under 11 U.S.C. § 1127 for an order approving (i) certain modifications to the Confirmed Plan and related modifications to the December 10 Disclosure Statement and (ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified.  In light of the

---

[1]  Although two parties-in-interest (the Creditors' Committee and Wilmington Trust Company, as indenture trustee) commenced actions to revoke the Confirmation Order, those adversary proceedings have been stayed indefinitely by stipulated orders between those parties and the Debtors.  In addition, at the confirmation hearing the Court reserved for itself the remedy of vacating the Confirmation Order (see Hr'g Tr., 45, 67-68, Jan. 17, 2008), which is a power available to the Court to address a result that is either fundamentally unfair or is the product of an abuse of process in the bankruptcy court.

unprecedented decline in global automotive production volumes and the deepening of the crisis in global debt and equity markets, the Debtors adjourned the hearing on the Plan Modification Approval Motion to March 24, 2009 (Docket No. 14580). The adjournment has facilitated the Debtors' consideration of further supplemental plan modifications required by the current economic environment.

    4.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

    5.  The statutory predicates for the relief requested herein are section 362(d)(1) of the Bankruptcy Code and rule 4001(d)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.  Current Business Operations Of The Debtors

    6.  Delphi and its subsidiaries and affiliates (collectively, the "Company") as of December 31, 2007 had global net sales of $22.3 billion and global assets of approximately $13.7 billion.[2] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and have continued their business operations without supervision from the Court.[3]

    7.  The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the

---

[2] The aggregated financial data used herein generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates as disclosed in the Company's Form 10-K filed on February 19, 2008.

[3] On March 20, 2007, Delphi Automotive Systems Espana S.L. ("DASE"), whose sole operation is a non-core automotive component plant in Cadiz, Spain, filed a "Concurso" application for a Spanish insolvency proceeding, which was approved by the Spanish court on April 13, 2007. On July 4, 2007, DASE, its Concurso receivers, and the Cadiz workers councils and unions reached a settlement on a social plan, the funding of which was approved by this Court on July 19, 2007. The Spanish court approved the social plan on July 31, 2007. The Concurso
*(cont'd)*

4

largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer ("OEM").

        8.    Delphi was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation ("GM"). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    <u>Events Leading To The Chapter 11 Filing</u>

        9.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[4] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.4 billion on net sales of $26.9 billion. Moreover, in 2006 the Debtors incurred a net loss of $5.5 billion, $3.0 billion of which comprised charges related to the U.S. employee special attrition programs, and in 2007, the Debtors incurred a net loss of $3.1 billion.

---

*(cont'd from previous page)*
    proceeding is consistent with Delphi's transformation plan to optimize its manufacturing footprint and to lower its overall cost structure.

[4]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

5

10. The Debtors believe that the Company's financial performance deteriorated because of (i) increasingly unsustainable U.S. legacy liabilities and operational restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which had the effect of creating largely fixed labor costs, (ii) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (iii) increasing commodity prices.

11. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major stakeholders had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete its transformation plan and preserve value for its stakeholders.

D.    <u>The Debtors' Transformation Plan</u>

12. On March 31, 2006, the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations. The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements to create a competitive arena in which to conduct business; second, concluding their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company; third, streamlining their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus; fourth, transforming their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint; and fifth, devising a workable solution to their pension situation.

6

E.       Plan Confirmation And Postconfirmation Matters

13.       The Confirmed Plan is based upon a series of global settlements and compromises that involve nearly every major constituency in the Debtors' reorganization cases, including Delphi's labor unions and GM. The effectiveness of certain of these agreements, including the Debtors' two comprehensive agreements with GM (the "Original GSA" and the "Original MRA"), was conditioned on consummation of the Confirmed Plan. After the Plan Investors refused to fund their obligations under the Investment Agreement, the Debtors nevertheless continued working with their stakeholders to evaluate their options to move forward to emerge from chapter 11 as soon as reasonably practicable.

14.       On September 12, 2008, Delphi announced steps that it was taking to complete the successful restructuring of its U.S. operations and transformation of the Company on a global basis. Those steps included implementing amended, comprehensive settlement agreements with GM, taking action then intended to fund and preserve Delphi's hourly and salaried pension plans, and completing the reaffirmation process for Delphi's August 2008 Reaffirmed Plan Of Reorganization Business Plan.

15.       Concurrently with the announcement on September 12, 2008, the Debtors filed a motion for approval of two comprehensive agreements with GM: the Amended and Restated Global Settlement Agreement (the "Amended GSA") and the Amended and Restated Master Restructuring Agreement (the "Amended MRA"). On September 26, 2008, this Court entered an order authorizing the Debtors' implementation of the Amended GSA and the Amended MRA, the provisions of which became effective on September 29, 2008.

16.       Through the Amended GSA and Amended MRA, the Debtors addressed two fundamental tenets of their Transformation Plan: (i) obtaining financial support from GM for certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going forward and (ii) devising a workable solution to Delphi's pension funding situation. Under the

7

Amended GSA and Amended MRA, GM agreed to contribute substantial additional value to the Debtors and eliminate significant elements of conditionality to the performance of GM's obligations. Delphi estimated the value of the net consideration received under the Amended GSA and Amended MRA to be approximately $10.6 billion (increased from approximately $6.0 billion under the Original GSA and Original MRA).

17.     By transferring nearly $2 billion of pension liabilities to GM through the Amended GSA and Amended MRA and freezing Delphi's hourly pension plan (which was also approved as part of the Amended GSA with the consent of Delphi's North American unions), Delphi has made substantial progress towards achieving its pension funding strategy objectives for hourly employees. In addition, on September 23, 2008, this Court entered an order authorizing the Debtors to take certain actions with respect to its pension plans for salaried employees and to implement replacement pension plans that will be more cost-effective for the remainder of their chapter 11 cases and after emergence from chapter 11.

18.     As a result of all the factors described above, the Debtors were able to formulate certain modifications to the Confirmed Plan, which are set forth in the Plan Modification Approval Motion filed on October 3, 2008. Since October 3, 2008, however, the automotive industry has suffered dramatic declines. The Debtors are working to make appropriate changes to their business plan and supplemental modifications to the Confirmed Plan in furtherance of their reorganization efforts. In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally. Additionally, the Company will seek to preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

### Relief Requested

19.     By this Motion, Delphi Medical seeks entry of a stipulation and agreed order under section 362(d)(1) of the Bankruptcy Code and Bankruptcy Rule 4001(d)(1) in the form attached as Exhibit A (the "Proposed Agreed Order") to modify the automatic stay on a limited basis to allow Lautzenhiser to advance its alleged patent infringement claims in the Patent Infringement Litigation (as defined below).

### Basis For Relief

20.     The Proposed Agreed Order is a good-faith compromise that will allow Delphi Medical to (i) avoid having to litigate Lautzenhiser's attempt to modify the stay and (ii) obtain Lautzenhiser's waiver of potential administrative expense claims for alleged infringing activity by Delphi Medical between October 8, 2005 and July 28, 2008.[5]  Importantly, although Delphi Medical does not believe that it is infringing any Lautzenhiser patents, modifying the stay for the limited purposes of determining whether Delphi Medical engaged in infringing activity, if at all, for the period after July 28, 2008 will also allow Delphi Medical to cease any such activity the Indiana District Court deems infringing upon adjudication, thereby reducing the amount of any potential administrative expense claims against Delphi Medical and its estates.

21.     In addition, in exchange for Delphi Medical's consent to modify the automatic stay under the terms of the Proposed Agreed Order would allow Delphi Medical to quantify any administrative expense liability for alleged infringing activity by Delphi Medical after July 28, 2008.  This Proposed Agreed Order therefore strikes an appropriate balance with

---

[5]  Lautzenhiser did not file a proof of claim in these cases, and therefore is precluded from asserting a claim for prepetition infringement against the Debtors. See Order Under 11 U.S.C. §§ 107(b), 501, 502, And 1111(a) And Fed R. Bankr. P. 1009, 2002(a)(7), 3003(c)(3), And 5005(a) Establishing Bar Dates For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof (Docket No. 3206) (establishing July 31, 2006 as the bar date for as the last date for all persons and entities holding or wishing to assert claims, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor).

respect to the competing interests surrounding the automatic stay in the Patent Infringement Litigation.

F.     Background To The Proposed Agreed Order

22.    On June 18, 2007, Lautzenhiser filed a complaint in the Indiana District Court against Sunrise Medical, one of Delphi Medical's customers, alleging infringement of various patents relating to wheelchair (the "Patent Infringement Litigation").  See Lautzenhiser Techs., LLC v. Sunrise Med. HHG, Inc., Case No. 4:07-cv-0084 (S.D. Ind. June 18, 2007).  On April 24, 2008, Lautzenhiser filed a motion for leave to file a second amended complaint (the "Second Amended Complaint") adding Delphi Medical as a defendant to the Patent Infringement Litigation.  On July 11, 2008, the Indiana District Court granted this motion and on July 28, 2008, Lautzenhiser served Delphi Medical with the summons and Second Amended Complaint.

23.    On August 15, 2008, shortly after receiving service of the Second Amended Complaint, Delphi Medical timely filed its Suggestion Of Bankruptcy And Notice Of Operation Of Automatic Stay (the "Notice of Operation of Stay") with the Indiana District Court, asserting that action against Delphi Medical was stayed pursuant to section 362(a) of the Bankruptcy Code.  Delphi Medical believes that, pursuant to Lautzenhiser's theory of liability articulated in the Patent Infringement Litigation, the claim arose prepetition and therefore should be subject to the automatic stay.  On December 30, 2008, Lautzenhiser filed a motion (the "Lautzenhiser Motion") with the Indiana District Court for a determination that the automatic stay under section 362(a) of the Bankruptcy Code does not apply to its patent infringement claims against Delphi Medical.  After negotiations, Delphi Medical and Lautzenhiser on February 4, 2009 reached an agreement to modify the automatic stay to allow Lautzenhiser to proceed with the Patent Infringement Litigation against Delphi Medical on a limited basis.

10

G.      Summary Of The Terms Of The Proposed Agreed Order

24.     The agreement between Delphi Medical and Lautzenhiser with respect to modification of the automatic stay is set forth in the Proposed Agreed Order, which is attached hereto as Exhibit A. A summary of the salient provisions of the Proposed Agreed Order are as follows:[2]

(a)     The automatic stay of 11 U.S.C. § 362 would be modified for the sole and limited purpose of allowing Lautzenhiser to advance its alleged patent infringement claims by seeking a determination on the alleged liability and quantification of damages, including the potential for enhanced damages as a result of willful infringement, if at all, and a finding as to the appropriateness of injunctive relief in the Patent Infringement Litigation;

(b)     Except as provided in subsection (a) above, the automatic stay would remain in full force and effect for any other purpose. In particular, in the event that the Indiana District Court found Delphi Medical liable to Lautzenhiser, Lautzenhiser would be required to return to this Court for any further relief from the automatic stay, including but not limited to Lautzenhiser's attempt to enforce any judgment in the patent litigation against any of the Debtors, including Delphi Medical, and/or to seek enforcement of any injunction against Delphi Medical or the Debtors;

(c)     Upon entry of the Proposed Agreed Order, Lautzenhiser would waive its right to seek and/or enforce any claim(s) and/or judgment for damages against Delphi Medical, the Debtors, or any affiliated entity of the Debtors to which Lautzenhiser may have been entitled to seek any damages with respect to its claims in the Patent Infringement Litigation that might have arisen from or accrued as a result of any actions of Delphi Medical, the Debtors, or any affiliates of the Debtors, occurring before July 28, 2008;

(d)     Subject to subsection (c) above, Lautzenhiser's rights to seek further relief from the automatic stay would be preserved in full, and the Debtors would reserve all rights to object to any further relief requested by Lautzenhiser; and

(e)     The "Effective Date" of the Proposed Agreed Order would be the date on which the Proposed Agreed Order became a final and non-appealable order; provided, however, that if this Court denies entry of the Proposed Agreed Order or enters an order declining to approve the Proposed Agreed Order, then the Proposed Agreed Order as submitted would become null and void at that time.

25.     In the exercise of their business judgment, Delphi Medical has agreed to settle the Lautzenhiser Motion under the terms of the Proposed Agreed Order. The Proposed

---

[2]  The discussion of the terms of the Proposed Agreed Order herein is only intended as a summary. To the extent this summary differs in any way from the terms of the Proposed Agreed Order, the terms of the Proposed Agreed Order control.

11

Agreed Order is a fair and equitable compromise of Lautzenhiser's contention that the automatic stay is inapplicable to the Patent Infringement Litigation because such litigation concerns only postpetition activity. Although Delphi Medical and Lautzenhiser have reached an agreement with respect to advancing the Patent Infringement Litigation to enable (i) a determination of liability, (ii) if necessary, a quantification of damages, including the potential for enhanced damages as a result of willful infringement, if at all, and (iii) a finding with respect to the appropriateness of injunctive relief with respect to alleged infringing activity as set forth in Lautzenhiser's Second Amended Complaint, Delphi Medical and the Debtors explicitly reserve all rights with respect to any further relief from the automatic stay, including but not limited to any attempt by Lautzenhiser to enforce any judgment in the Patent Infringement Litigation against the Debtors. The automatic stay would remain in place in all other respects.

<u>Applicable Authority</u>

26.    Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." The term "cause" is not defined in the Bankruptcy Code, but the Second Circuit applies a 12-factor test to determine whether cause exists to modify or lift the automatic stay. <u>See</u> <u>Sonnax Indus. v. Tri Component Prods. Corp.</u> (In re Sonnax Indus.), 907 F.2d 1280, 1286 (2d Cir. 1990). In this case, the impact of the stay on the parties involved is one of the factors that weighs heavily in favor of modifying the stay. <u>See</u> <u>id.</u> at 1286. Here, if the Indiana District Court were to find that Delphi Medical is infringing Lautzenhiser's patents (which the Delphi Medical dispute), then modifying the stay allows Delphi Medical to cease any activity the Indiana District Court deems infringing earlier than if the stay remained unmodified, thereby minimizing the accrual of potential administrative expenses.

27.    To avoid unnecessary, burdensome, or uncertain stay relief litigation, Rule 4001(d)(1) of the Bankruptcy Rules permits a debtor to file "[a] motion for approval of an agreement . . . (C) to modify or terminate the automatic stay provided for in § 362." As noted

herein, the Proposed Agreed Order is a good faith compromise of the parties' positions with respect to stay relief and should be approved in accordance with Bankruptcy Rule 4001(d)(1)(C).

28.  As noted above, the Debtors filed their Notice of Operation of Stay in response to Lautzenhiser naming Delphi Medical as a party to the Patent Infringement Litigation. Although Delphi Medical believes that it would be able to counter the Lautzenhiser Motion filed in the Indiana District Court seeking to modify the stay, the Proposed Agreed Order provides for a modification of the automatic stay that (i) waives Lautzenhiser's right to seek or enforce any judgment for damages for allegedly infringing conduct by the Debtors prior to July 28, 2008, (ii) allows the Patent Infringement Litigation to proceed to determine a determination of infringement, which allows Delphi Medical to quantify damages, if any, for the period after July 28, 2008, (iii) in the event of a determination of infringement, allows Delphi Medical to cease any activity the Indiana District Court deems infringing upon adjudication earlier than if the stay remained unmodified,[6] thereby minimizing the accrual of potential administrative expenses, and (iv) does not unduly burden the estates.  For these reasons, it is in the best interest of Delphi Medical to enter into the Proposed Agreed Order to modify the stay with respect to the Patent Infringement Litigation.

## Notice Of Motion

29.  Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures entered by this Court on March 17, 2006 (Docket No. 2883) and the Thirteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

---

[6]  As noted above, Delphi Medical does not believe it is infringing any Lautzenhiser patents.

Management, And Administrative Procedures, entered December 4, 2008 (Docket No. 14534) and Fed. R. Bankr. P. 4001(d)(1). In light of the nature of the relief requested, Delphi Medical submits that no other or further notice is necessary.

WHEREFORE Delphi Medical respectfully requests that this Court enter an order (a) approving an agreement between Delphi Medical and Lautzenhiser to modify the automatic stay to permit Lautzenhiser to advance its alleged patent infringement claims in the Patent Infringement Litigation by seeking (i) a determination of liability, (ii) if necessary, a quantification of damages, including the potential for enhanced damages as a result of willful infringement, and (iii) a finding with respect to the appropriateness of injunctive relief against Delphi Medical in the Patent Infringement Litigation and (b) granting Delphi Medical such other and further relief as is just.

Dated:     New York, New York
           February 4, 2009

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By:     */s/ John Wm. Butler, Jr.*
        John Wm. Butler, Jr.
        Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

                - and –

By:     */s/ Kayalyn A. Marafioti*
        Kayalyn A. Marafioti
        Thomas J. Matz
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**Exhibit A**
**Proposed Agreed Order**