UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -    x
                                                          :
      In re                :    Chapter 11
                                                          :
  DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                                          :
             Debtors.    :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - -    x

ORDER AUTHORIZING DEBTORS TO ENTER (I) THIRD AMENDMENT
TO ARRANGEMENT WITH GENERAL MOTORS CORPORATION
APPROVED PURSUANT TO SECOND DIP EXTENSION ORDER
(DOCKET NO. 13489) AND (II) FIRST AMENDMENT TO
PARTIAL TEMPORARY ACCELERATED PAYMENT AGREEMENT

("GM ARRANGEMENT THIRD AMENDMENT AGREEMENT APPROVAL ORDER")

           Upon the motion, dated February 4, 2009 (the "Motion"), of Delphi Corporation

(the "Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession

in the above-captioned cases (collectively, the "Debtors"), for an order approving (i) a third

amendment to the arrangement with General Motors Corporation approved pursuant to the

Second DIP Extension Order (Docket No. 13489) and (ii) a first amendment to the partial

temporary accelerated payment agreement with General Motors Corporation; and due and

appropriate notice of the Motion, the relief requested therein, and the opportunity for a hearing

on the Motion having been served by the Debtors in accordance with the Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Thirteenth

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management,

and Administrative Procedures, entered December 4, 2008 (Docket No. 14534), and no other or

further notice being necessary; and the Court having held a hearing on the Motion on February

____, 2009 (the "Hearing"); and upon the record of the Hearing and after due deliberation

thereon, and sufficient cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.      This Court has core jurisdiction over these chapter 11 cases and the parties and

property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue of this proceeding

and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Motion is hereby granted in its entirety.

3.      The Debtors are hereby authorized, but not directed, to execute, deliver, and

perform their obligations under the Amended GM Arrangement,[1] as modified by the Third

Amendment Agreement substantially in the form attached as <u>Exhibit A</u> hereto (as so amended,

the Third Amended GM Arrangement").  Without limiting the foregoing, such authorization

shall include authorization for Delphi to receive, pursuant to section 364(b) of the Bankruptcy

Code, advances of up to $300,000,000 pursuant to the terms of the Third Amended GM

Arrangement and to pay any and all fees and expenses provided for by the Third Amended GM

Arrangement.  The Second DIP Extension Order is hereby deemed amended by replacing Exhibit

B thereto with the Third Amended GM Arrangement, and all provisions of the Second DIP

Extension Order (as supplemented by the GM Arrangement Amendment Approval Order)

applicable to the form of Delphi-GM Agreement (as defined in the Second DIP Extension Order)

attached thereto, and all other documentation executed in connection therewith shall be deemed

to apply to the Third Amended GM Arrangement.

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4.       The Debtors are hereby authorized, but not directed, to execute, deliver, and perform their obligations under the Partial Temporary Accelerated Payment Agreement, as modified by the First Amendment to the Partial Temporary Accelerated Payment Agreement substantially in the form attached as Exhibit B hereto.

5.       Without limiting the generality of the foregoing, upon effectiveness of the Third Amendment Agreement, GM and its relevant Affiliates (as defined in the Amended GM Arrangement, the "GM Affiliates") shall have (a) allowed claims with administrative expense priority pursuant to section 503(b)(1) of the Bankruptcy Code against Delphi and the GM Guarantors for all Obligations (as defined in the Third Amended GM Arrangement, the "GM Arrangement Obligations") owing to GM or any applicable GM Affiliates and (b) all other rights under the Third Amended GM Arrangement and First Amendment to the Partial Temporary Accelerated Payment Agreement, including, without limitation, the ability to exercise the right to set off and apply, subject to the terms of the Third Amended GM Arrangement, any indebtedness or liabilities owing by GM or the GM Affiliates to or for the credit or the account of Delphi or the GM Guarantors against any and all GM Arrangement Obligations of Delphi or the GM Guarantors without the need to seek additional modification of the automatic stay imposed pursuant to section 362 of the Bankruptcy Code and without further order of the Court.

6.       Notwithstanding anything to the contrary in the Third Amended GM Arrangement, (a) neither GM nor any GM Affiliates shall exercise any Set-Off Right (as defined in the Third Amended GM Arrangement) with respect to any GM Arrangement Obligations (except with respect to any prepayments due and payable under Section 2.09 of the Third Amended GM Arrangement) against any amounts payable by GM or any GM Affiliate (other than amounts payable by GM or the GM Affiliates to or for the credit or the account of any of the Debtors

3

under the Master Restructuring Agreement and the Global Settlement Agreement (as each such

term is defined in the Third Amended GM Arrangement)) to or for the credit or the account of

any of the Debtors (or defer, delay, or suspend the payment of any other amounts payable by GM

or any GM Affiliates to or for the credit or the account of any of the Debtors) until after the DIP

Termination Date (as defined in the Third Amended GM Arrangement) and (b) until after the

DIP Termination Date, the Debtors shall not make any payment to GM or any GM Affiliates

with respect to the GM Arrangement Obligations (except (i) with respect to any prepayments due

and payable under Section 2.09 of the Amended Delphi-GM Agreement, whether in cash or

through any Set-Off Right (as defined in the Amended Delphi-GM Agreement) exercised by GM,

(ii) interest to the extent paid in kind under Section 2.05(b) of the Amended Delphi-GM

Agreement, and (iii) any GM Arrangement Obligations paid through any Set-Off Right (as

defined in the Amended Delphi-GM Agreement) exercised by GM against amounts payable by

GM or GM Affiliates to or for the credit or the account of any of the Debtors pursuant to the

Global Settlement Agreement or Master Restructuring Agreement as permitted under the

Amended Delphi-GM Agreement).

       7.      Each of the Third Amendment Agreement and the First Amendment to the Partial

Temporary Accelerated Payment Agreement have been negotiated in good faith and at arm's-

length between the Debtors and GM, and all of the GM Arrangement Obligations and obligations

under the First Amendment to the Partial Temporary Accelerated Payment Agreement as

authorized by this order have been incurred in good faith as that term is used in section 364(e) of

the Bankruptcy Code.  In accordance with section 364(e) of the Bankruptcy Code, in the event

that any or all provisions of this order, the Third Amendment Agreement, or the First

Amendment to the Partial Temporary Accelerated Payment Agreement are hereinafter modified,

amended, or vacated by a subsequent order of this Court or any other court, no such modification,

amendment, or vacation shall affect the validity, enforceability, or priority of any lien (including

any rights of setoff of GM or any GM Affiliate permitted by the Third Amendment Agreement,

the First Amendment to the Partial Temporary Accelerated Payment Agreement, and this order)

or claim authorized or created hereby or thereby.  Notwithstanding any such modification,

amendment, or vacation, any claim granted to GM or any GM Affiliate hereunder, under the

Third Amendment Agreement, or under the First Amendment to the Partial Temporary

Accelerated Payment Agreement arising prior to the effective date of such amendment,

modification, or vacation shall be governed in all respects by the original provisions of this order,

the Third Amendment Agreement, or the First Amendment to the Partial Temporary Accelerated

Payment Agreement, as the case may be, and GM and the GM Affiliates shall be entitled to all of

the rights, remedies, privileges, and benefits, including the liens and priorities granted herein and

therein, with respect to any such claim.

8.      A sound business purpose exists for the Debtors to incur all obligations under

each of the Third Amendment Agreement and the First Amendment to the Partial Temporary

Accelerated Payment Agreement in accordance with the requirements of 11 U.S.C. § 363(b).

9.      In the event of any inconsistency between the provisions of this order and either

the Third Amendment Agreement or the First Amendment to the Partial Temporary Accelerated

Payment Agreement, the provisions of this order shall govern.

10.     This Court shall retain jurisdiction to enforce and implement the terms and

provisions of the Third Amendment Agreement and the First Amendment to the Partial

Temporary Accelerated Payment Agreement in all respects.

11.    Notwithstanding Bankruptcy Rule 6004(h) or any other provision of the

Bankruptcy Rules or Bankruptcy Code, the terms and conditions of this order shall be

immediately effective and enforceable upon its entry.

Dated:    New York, New York
         February ___, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

# **<u>EXHIBIT A</u>**

### AMENDMENT NO. 3 TO GM-DELPHI AGREEMENT

AMENDMENT NO. 3, dated as of January 30, 2009 (this "Amendment"), among DELPHI CORPORATION, a Delaware corporation (the "Borrower"), a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code, and the subsidiaries of the Borrower signatory hereto (each a "Guarantor" and collectively the "Guarantors"), each of which Guarantors is a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the cases of the Borrower and the Guarantors, each a "Case" and collectively, the "Cases"), and GENERAL MOTORS CORPORATION ("GM").

### RECITALS:

WHEREAS, the Borrower, the Guarantors and GM have previously entered into that certain agreement, dated as of May 9, 2008 and as amended by that certain Amendment No. 1 effective as of October 6, 2008, and as further amended by that certain Amendment No. 2 effective as of December 12, 2008 (as such may be further amended or otherwise modified, the "GM-Delphi Agreement");

WHEREAS, Delphi is seeking certain accommodations from the DIP Lenders; and

WHEREAS, the Borrower, the Guarantors and GM wish to enter into this Amendment to amend the GM-Delphi Agreement as set forth herein.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1.    Defined Terms.  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the GM-Delphi Agreement.

2.    Amendments.  Subject to the terms and conditions set forth herein, effective as of the Effective Date (as defined below), the GM-Delphi Agreement is hereby amended as set forth below:

(a)    Section 1.01 is hereby amended as follows:

(i)    The definition of "Accommodation Agreement" is hereby amended and restated in its entirety to read as follows:

"Accommodation Agreement" shall mean that certain Accommodation Agreement, dated as of December 12, 2008, among the Borrower, the Guarantors hereunder, the DIP Lenders and JPMorgan Chase Bank, N.A., as administrative agent for the DIP Lenders, as amended by the Accommodation Agreement First Amendment, and as such agreement may be further amended or otherwise modified from time to time; provided that, in the event such agreement is amended or otherwise modified in a manner adverse to GM, the definitions and other references to the Accommodation Agreement herein shall be deemed references to such agreement without giving effect to any such amendment or modification.

(ii)    The definition of "Accommodation Agreement First Amendment" is hereby added in alphabetical order to Section 1.01 to read as follows:

"Accommodation Agreement First Amendment" shall mean the First Amendment to the Accommodation Agreement, dated as of January 30, 2009.

(iii)    The definition of "GM-Delphi Pull-Forward Agreement" is hereby added in alphabetical order to Section 1.01 to read as follows:

(iv)    "GM-Delphi Pull-Forward Agreement" shall mean the Partial Temporary Accelerated Payment Agreement, dated as of December 12, 2008, by and between the Borrower, on behalf of itself and its subsidiaries and Affiliates operating as debtors and debtors in possession in the Chapter 11 Cases, and GM, as amended by the GM-Delphi Pull Forward Agreement First Amendment.

(v)    The definition of "GM-Delphi Pull-Forward Agreement First Amendment" is hereby added in alphabetical order to Section 1.01 to read as follows:

"GM-Delphi Pull-Forward Agreement First Amendment" shall mean the First Amendment to the GM-Delphi Pull-Forward Agreement, dated as of January 30, 2009.

(vi)    The definition of "Minimum Liquidity Amount" is hereby added in alphabetical order to Section 1.01 to read as follows:

"Minimum Liquidity Amount" shall have the meaning set forth in the Accommodation Agreement.

(b)    The definition of "Specified Availability" is hereby amended and restated in its entirety to read as follows:

"Specified Availability" shall mean, on any date of determination, with respect to (a) Tranche A Loans, the amount by which the Tranche A Available Funds is less than $500,000,000 on such date and (b) Tranche B Loans, (i) the amount projected by the Borrower on such date to be the net use of cash by the Borrower and the Guarantors for the period commencing on such date through the next Monday or Thursday, as the case may be, *plus* (ii) (x) $25,000,000 or (y) $50,000,000 at any time when the Minimum Liquidity Amount is equal to $50,000,000 *minus* (iii) the Tranche B Available Funds as of the close of business on the Business Day immediately preceding the date of such determination.

(c)    Section 2.09(b) is hereby modified by deleting the reference to "$25,000,000" and replacing it with "(i) $25,000,000 or (ii) $50,000,000 at any time when the Minimum Liquidity Amount  is equal to $50,000,000"

3.    Conditions to Effectiveness of this Amendment.  This Amendment shall become effective on the first date on which each of the following conditions precedent are satisfied (or otherwise waived by GM in its sole discretion) on or prior to February 2, 2008 (the "Effective Date"):

(a)    Execution of Amendment.  This Amendment shall have been executed by the Borrower and each of the Guarantors.

(b)    <u>Documents and Certificates</u>.  GM shall have received such documents and certificates as GM or its counsel may reasonably request relating to the organization, existence and good standing of the Borrower and each of the Guarantors, the authorization of the transactions under this Amendment and any other legal matters relating to the Borrower and each of the Guarantors, this Amendment or the transactions contemplated hereunder, all in form and substance reasonably satisfactory to GM and its counsel.

(c)    <u>Other Amendments</u>.  The Accommodation Agreement First Amendment and the GM-Delphi Pull Forward Agreement First Amendment, each in form and substance satisfactory to GM, shall have become effective pursuant to their respective terms.

(d)    <u>No Default</u>.  (i) No Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default shall have occurred and be continuing under the GM-Delphi Agreement and (ii) no Automatic Accommodation Termination Default and no Accommodation Default, and no event which upon notice or lapse of time or both would constitute an Automatic Accommodation Termination Default or an Accommodation Default (in each case, after giving effect to the Accommodation Agreement First Amendment), shall have occurred and be continuing under the Accommodation Agreement, in each case, unless such event has been waived or amended by the DIP Lenders and (iii) no amendments or other modifications to the DIP Credit Agreement with the effect of reducing the aggregate commitments or amounts available thereunder (except in accordance with the terms of the Accommodation Agreement) shall have become effective.

(e)    <u>Fees and Expenses</u>.  GM shall have received the payment by the Borrower of all fees and expenses referred to herein and in the GM-Delphi Agreement.

4.    <u>Condition Subsequent</u>.  This Amendment shall automatically be null and void and of no further force and effect on the date (the "<u>Termination Date</u>") that is 28 days (as computed pursuant to Rule 9006(a) of the Federal Rules of Bankruptcy Procedure) following the Effective Date, unless the Bankruptcy Court shall have entered, prior to such date, one or more orders reasonably satisfactory in form and substance to GM authorizing (A) this Amendment (it being understood and agreed by the parties hereto that such approval is not required for this Amendment to become effective, but will be sought by the Borrower solely for the avoidance of doubt), (B) the Accommodation Agreement First Amendment (the Borrower hereby representing that it is understood and agreed between the Administrative Agent and the Borrower that such approval is not required for the Accommodation Agreement First Amendment to become effective, but will be sought by the Borrower solely for the avoidance of doubt), (C) the GM-Delphi Pull-Forward Agreement First Amendment (it being understood and agreed by the parties hereto that such approval is not required for the GM-Delphi Pull-Forward Agreement First Amendment to become effective, but will be sought by the Borrower solely for the avoidance of doubt) and (D) the payment by the Borrower of all fees and expenses referred to herein or in the GM-Delphi Agreement, and such order or orders shall not have been reversed or vacated, and shall not be stayed (other than contemplated by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure) on such day.

5.    <u>Representations and Warranties</u>.  The Borrower and each Guarantor hereby represents and warrants to GM, on and as of the date hereof, both prior to and after giving effect to this Amendment, (i) the Borrower and each Guarantor has taken all necessary action to authorize the execution, delivery and performance of this Amendment, (ii) this Amendment has been duly executed and delivered by the Borrower and each Guarantor, respectively, and (iii) this Amendment is the legal, valid and binding obligation of the Borrower and each Guarantor, enforceable against it in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

6.     <u>Continuing Effect; Guaranties</u>.

(a)     Except as expressly set forth in this Amendment, all of the terms and provisions of the GM-Delphi Agreement are and shall remain in full force and effect and the Borrower and each Guarantor shall continue to be bound by all of such terms and provisions.  The Amendment provided herein is limited to the specific provisions of the GM-Delphi Agreement specified herein and shall not constitute an amendment of, or an indication of GM's willingness to amend or waive, any other provisions of the GM-Delphi Agreement or the same sections for any other date or purpose.

(b)     The Borrower and each Guarantor hereby consents to this Amendment, including all increases in commitments and extensions of additional credit pursuant hereto and the execution, delivery and performance of the other documents (if any) to be executed in connection herewith.  The Borrower and each Guarantor hereby acknowledges and agrees that all of its obligations, including all Guaranties granted to GM under the GM-Delphi Agreement, are reaffirmed and that such Guaranties shall continue in full force and effect on and after Effective Date to secure and support the Obligations of the Borrower and the Guarantors.

7.     <u>Expenses</u>.  The Borrower and each Guarantor jointly and severally agree to pay and reimburse GM for all its reasonable out-of-pocket costs and expenses incurred in connection with the negotiation, preparation, execution and delivery of this Amendment, and other documents prepared in connection herewith, and the transactions contemplated hereby, including, without limitation, reasonable fees and disbursements and other charges of counsel to GM.

8.     <u>Choice of Law</u>.  This Amendment and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with the law of the State of New York.

9.     <u>Counterparts</u>.  This Amendment may be executed in any number of counterparts and by different parties and separate counterparts, each of which when so executed and delivered, shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Amendment by facsimile or e-mail shall be effective as delivery of a manually executed counterpart of this Amendment.

10.     <u>Integration</u>.  This Amendment, together with the GM-Delphi Agreement, incorporates all negotiations of the parties hereto with respect to the subject matter hereof and is the final expression and agreement of the parties hereto with respect to the subject matter hereof.

11.     <u>Severability</u>.  In case any provision in this Amendment shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this Amendment and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

12.     <u>Waiver of Jury Trial</u>.  Each of the parties hereto irrevocably waives trial by jury in any action or proceeding with respect to this Amendment and the GM-Delphi Agreement.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties have entered into this Amendment No. 3 as of the date first above written.

**BORROWER**

DELPHI CORPORATION

By: _____

Name: John D. Sheehan
Title: Vice President and Chief Financial
    Officer

[SIGNATURE PAGE TO AMENDMENT NO. 3]

GUARANTORS:

DELPHI AUTOMOTIVE SYSTEMS (HOLDING),
    INC.,
a Delaware corporation

By: _____
    Name: John D. Sheehan
    Title: President


DELPHI AUTOMOTIVE SYSTEMS GLOBAL
    (HOLDING), INC.,
a Delaware corporation

By: _____
    Name: John D. Sheehan
    Title: President


DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By: _____
    Name: John D. Sheehan
    Title: Vice President & Chief Financial
    Officer


DELPHI AUTOMOTIVE SYSTEMS RISK
    MANAGEMENT CORP.,
a Delaware corporation

By: _____
    Name: John D. Sheehan
    Title: Vice President & Treasurer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

DELPHI FOREIGN SALES CORPORATION,
a Virgin Islands corporation

By:    _____
       Name: John D. Sheehan
       Title: Controller


DELPHI INTERNATIONAL HOLDINGS CORP.,
a Delaware corporation

By:    _____
       Name: John D. Sheehan
       Title: President


DELPHI LIQUIDATION HOLDING COMPANY,
a Delaware corporation

By:    _____
       Name: John D. Sheehan
       Title: President


DELPHI LLC,
a Delaware limited liability company

By:    _____
       Name: John D. Sheehan
       Title: President


DELPHI NY HOLDING CORPORATION,
a New York corporation

By:    _____
       Name: John D. Sheehan
       Title: President


[SIGNATURE PAGE TO AMENDMENT NO. 3]

ASEC MANUFACTURING,
a Delaware general partnership

By: _____
Name: John P. Arle
Title: Treasurer


ASEC SALES,
a Delaware general partnership

By: _____
Name: John P. Arle
Title: Treasurer


DELCO ELECTRONICS OVERSEAS
    CORPORATION,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Assistant Treasurer


DELPHI AUTOMOTIVE SYSTEMS KOREA, INC.,
    a Delaware corporation

By: _____
Name: John P. Arle
Title: Chief Executive Officer & President


DELPHI AUTOMOTIVE SYSTEMS HUMAN
    RESOURCES LLC,
a Delaware limited liability company

By: _____
Name: John P. Arle
Title: Vice President & Treasurer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

DELPHI AUTOMOTIVE SYSTEMS
   INTERNATIONAL, INC.,
a Delaware corporation

By: _____
   Name: John P. Arle
   Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS OVERSEAS
   CORPORATION,
a Delaware corporation

By: _____
   Name: John P. Arle
   Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS SERVICES LLC,
a Delaware limited liability company

By: _____
   Name: John P. Arle
   Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS TENNESSEE,
   INC.,
a Delaware corporation

By: _____
   Name: John P. Arle
   Title: Treasurer


DELPHI AUTOMOTIVE SYSTEMS THAILAND,
   INC.,
a Delaware corporation

By: _____
   Name: John P. Arle
   Title: Treasurer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

DELPHI CONNECTION SYSTEMS,
a California corporation

By:    _____
Name: John P. Arle
Title: Treasurer


DELPHI ELECTRONICS (HOLDING) LLC,
a Delaware limited liability company

By:    _____
Name: John P. Arle
Title: Assistant Treasurer


DELPHI INTERNATIONAL SERVICES, INC.,
a Delaware corporation

By:    _____
Name: John P. Arle
Title: Chief Financial Officer & Treasurer


DELPHI MECHATRONIC SYSTEMS, INC.,
a Delaware corporation

By:    _____
Name: John P. Arle
Title: Treasurer


DELPHI SERVICES HOLDING CORPORATION,
a Delaware corporation

By:    _____
Name: John P. Arle
Title: Treasurer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

EXHAUST SYSTEMS CORPORATION,
a Delaware corporation

By: _____
Name: John P. Arle
Title: Assistant Treasurer

[SIGNATURE PAGE TO AMENDMENT NO. 3]

ASPIRE, INC.,
a Michigan corporation

By: _____
      Name: James P. Whitson
      Title: Vice President


DELPHI CHINA LLC,
a Delaware limited liability company

By: _____
      Name: James P. Whitson
      Title: Chief Tax Officer


DELPHI DIESEL SYSTEMS CORP.,
a Delaware corporation

By: _____
      Name: James P. Whitson
      Title: Chief Tax Officer


DELPHI INTEGRATED SERVICE SOLUTIONS,
   INC.,
a Michigan corporation

By: _____
      Name: James P. Whitson
      Title: Vice President


SPECIALTY ELECTRONICS, INC.,
a South Carolina corporation

By: _____
      Name: James P. Whitson
      Title: Chief Tax Officer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

SPECIALTY ELECTRONICS INTERNATIONAL
  LTD.,
a Virgin Islands corporation

By: _____
      Name: James P. Whitson
      Title: Chief Tax Officer


PACKARD HUGHES INTERCONNECT COMPANY,
a Delaware corporation

By: _____
      Name: James P. Whitson
      Title: Chief Tax Officer


ENVIRONMENTAL CATALYSTS, LLC,
a Delaware limited liability company

By: _____
      Name: James P. Whitson
      Title: Chief Tax Officer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

DELPHI MEDICAL SYSTEMS COLORADO
  CORPORATION,
a Colorado corporation

By: _____
      Name: Allan F. Seguin
      Title: Treasurer


DELPHI MEDICAL SYSTEMS CORPORATION,
a Delaware corporation

By: _____
      Name: Allan F. Seguin
      Title: Treasurer


DELPHI MEDICAL SYSTEMS TEXAS
  CORPORATION,
a Delaware corporation

By: _____
      Name: Allan F. Seguin
      Title: Treasurer


[SIGNATURE PAGE TO AMENDMENT NO. 3]

DELPHI TECHNOLOGIES, INC.,
a Delaware corporation

By: _____

Name: Thomas N. Twomey
Title: Vice President Intellectual Property

DREAL, INC.,
a Delaware corporation

By: _____
Name: John Jaffurs
Title: President

**LENDER**

GENERAL MOTORS CORPORATION

By: _____

      Name: Walter G. Borst
      Title: Treasurer

# EXHIBIT B

**EXECUTION COPY**

<u>FIRST AMENDMENT TO PARTIAL TEMPORARY
ACCELERATED PAYMENT AGREEMENT</u>

THIS FIRST AMENDMENT TO PARTIAL TEMPORARY
ACCELERATED PAYMENT AGREEMENT (this "<u>Amendment No. 1</u>"), is dated as of
January 30, 2009, by and between Delphi Corporation ("<u>Delphi</u>"), on behalf of itself and its
subsidiaries and Affiliates operating as debtors and debtors in possession in the Chapter 11
Cases (together with Delphi, the "<u>Debtors</u>"), and General Motors Corporation ("<u>GM</u>").
Capitalized terms not defined herein shall have the meanings ascribed to such terms in the
Agreement (as defined below).

WHEREAS, Delphi, on behalf of itself and its subsidiaries and Affiliates
operating as debtors and debtors in possession in the Chapter 11 Cases, and GM have entered
into a Partial Temporary Accelerated Payment Agreement dated as of December 12, 2008 (the
"<u>Agreement</u>"); and

WHEREAS, Delphi and GM have agreed to amend the Agreement pursuant to
this Amendment No. 1.

NOW, THEREFORE, in consideration of the mutual promises, agreements,
and covenants contained herein, each of the parties hereto hereby agrees as follows:

1. <u>Conditions Precedent to Effectiveness</u>.   This Amendment No. 1 will become
effective on the "Effective Date" as defined in Amendment No. 3 to GM-Delphi
Agreement dated January 30, 2009.

2. Section 1 of the Agreement is hereby amended by adding the following definition in
its correct alphabetical order:

"<u>President's Designee</u>" shall have the meaning assigned such term in the Loan
and Security Agreement by and between GM and The United States Department of the
Treasury, dated as of December 31, 2008, as may be amended from time to time (the
"<u>GM-Treasury LSA</u>").

3. The following new Section 12 is hereby added to the Agreement:

"12.   <u>Accelerated Pull-Forward Payments</u>.   Notwithstanding anything in this
Agreement to the contrary:

(a)   <u>Initial Payables Advance</u>.   (i) On the Effective Date, GM will pay to DAS
$50,000,000 of the Third Pull-Forward Payment (irrespective of whether the
Acceleration Conditions are satisfied on such date) (the "<u>First Earlier PFP</u>") and (ii)
the balance of the Pull-Forward Payments will be paid in accordance with Section 3(a)
of this Agreement.

(b)     February 27, 2009 Condition.   If GM and Delphi have not, on or before February 27, 2009, irrevocably executed and delivered an amendment to the GM-Delphi Agreement that increases the Tranche B Commitment to an aggregate amount no less than $350,000,000 (the "GM-Delphi Agreement Commitment Increase Amendment"), then (i) on February 27, 2009, GM will pay to DAS an additional $50,000,000 of the Third Pull-Forward Payment) (irrespective of whether the Acceleration Conditions are satisfied on such date) (the "Second Earlier PFP") and (ii) the balance of the Pull-Forward Payments will be paid in accordance with Section 3(a) of this Agreement.

(c)     March 25, 2009 Condition.   If GM and Delphi have irrevocably executed and delivered the GM-Delphi Agreement Commitment Increase Amendment on or before February 27, 2009, then GM will pay to DAS the Second Earlier PFP (with the balance of the Pull-Forward Payments to be paid in accordance with Section 3(a) of this Agreement) on the earlier of (x) the date, if any, on which the President's Designee has notified GM that the GM-Delphi Agreement Amendment is not permitted, in accordance with the terms of the GM-Treasury LSA and (y) March 25, 2009, unless the GM-Delphi Agreement Commitment Increase Amendment shall have become effective prior to such date.

(d)     Conversion of Advance Payments.   GM may, at its option and in its sole discretion, convert the First Earlier PFP and/or the Second Earlier PFP referenced in Sections 12(a), (b) and (c) above that have been paid to DAS into Tranche B Advances under the GM-Delphi Agreement; provided that the Tranche B Commitment under the GM-Delphi Agreement is simultaneously increased by any amount of the First Earlier PFP and the Second Earlier PFP so converted.   Upon any such conversion of the First Earlier PFP or the Second Earlier PFP to Tranche B Advances, the GM payables owing to DAS shall automatically be reinstated by the aggregate amount of the First Earlier PFP and the Second Earlier PFP so converted and GM shall remain obligated to make Pull Forward Payments pursuant to Section 3(a) as if the First Earlier PFP or the Second Earlier PFP, as applicable, had never been accelerated pursuant to Sections 12(a), (b) and/or (c), as the case may be.

(e)     Termination Date.   Sections 12(b), 12(c) and 12(d) of this Agreement shall automatically be null and void and of no further force and effect on the Termination Date (as defined in Amendment No. 3 to GM-Delphi Agreement dated January 30, 2009 (the "GM-Delphi Agreement Third Amendment")) in the event that the GM-Delphi Agreement Third Amendment is rendered null and void on the Termination Date in accordance with Section 4 thereof.

4.     Effect of Amendment.   On and after the date hereof, each reference in the Agreement to "this Agreement, " "hereunder, " "hereof, " "herein" or words of like import referring to the Agreement shall be deemed to mean the Agreement as amended by this Amendment No. 1.   This Amendment No. 1 shall operate as an amendment of the provisions of the Agreement   referred to specifically herein.   The amendments

2

to the Agreement contemplated by this Amendment No. 1 are limited precisely as written and shall not be deemed to be an amendment to any other terms or conditions of the Agreement.   Except as specifically amended by this Amendment No. 1 and as set forth in the preceding sentence, the Agreement shall remain in full force and effect. Except as expressly provided herein, this Amendment No. 1 shall not be deemed to be a waiver of, or consent to, or a modification or amendment of, any other term or condition of any other agreement between the parties.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 1 to be signed by their respective officers thereunto duly authorized, all as of the date first written above.

**DELPHI CORPORATION,**
including on behalf of its Debtor subsidiaries
and Debtor Affiliates

By: _____
    Name:  John D. Sheehan
    Title:  Vice President, Chief Financial
          Officer

**GENERAL MOTORS CORPORATION**

By:_____
    Name:  Walter G. Borst
    Title:  Treasurer

IN WITNESS WHEREOF, the parties hereto have caused this Amendment No. 1 to be signed by their respective officers thereunto duly authorized, all as of the date first written above.

**DELPHI CORPORATION,**
including on behalf of its Debtor subsidiaries
and Debtor Affiliates

By: _____
    Name:  John D. Sheehan
    Title:   Vice President, Chief
           Financial Officer

**GENERAL MOTORS CORPORATION**

By: _____
    Name:  Walter G. Borst
    Title:   Treasurer