Dan W. Pitcock
15120 Romalong Lane
Carmel, IN 46032
PH. 317-573-0071

February 9, 2009

RE: Delphi Corporation Case No. 05-44481

Honorable Robert D. Drain
United States Bankruptcy Judge
Room 610 of the U.S. Bankruptcy Court SDNY
Alexander Hamilton Custom House
One Bowling Green
New York, NY 10004-1408

Dear Honorable Robert D. Drain:

**Subject: Delphi Motion to Terminate Employer-Paid Post-Retirement Health Care Benefits and Employer-Paid Post-Retirement Life Insurance Benefits for Retirees**

I know this letter is not in the formal format this is desired by the court but I do not have the resources to fulfill these expectations. I plead with you to use all your legal power to forgive this issue and instead act on the content, not lack of format, of this letter.

I OBJECT to this motion.

Secondly, I request the court to appoint a committee of retired employees or for the court itself to serve as authorized representative per Section 1114 of the Bankruptcy Code.

<u>Preliminary Statement</u>

1. I am an affected party to this Motion. In 2008 calendar year downsizing activities at the Electronics and Safety Division of Delphi Corp., I was told my job was being eliminated and was not offered an opportunity to search for another position. The only choices presented were to accept separation under voluntary procedures or in-voluntary procedures. I was fifty-three (53) years old, but had over thirty-six (36) years of service, when faced with these choices. After consulting with legal counsel, I chose the voluntary procedure.

2. After separation, I chose to begin retirement, health care, and life insurance benefits under long-standing salaried employee policies.

3. My retirement check, after deductions for health and life insurance co-payments, is approximately thirty (30) percent of my prior salary.

4. Since I chose to initiate these retirement benefits, I am not eligible for any state or federal program aid such as unemployment benefits, food assistance, re-training benefits, etc.

## Background

1. I was hired by the Delco-Remy Division of General Motors Corporation on May 22, 1972 as a General Motors Institute co-op student/salaried employee. At that time my father was an hourly employee at the same location and held a UAW Local 663 position as District Committeeman. We began to have many animated discussions about the usefulness/harm caused by unions. My father had lived through the brutal company activities against employees that occurred in the '50s and '60s as well as the union-backed excesses that were occurring more frequently in the early '70s. These union excesses actually drove my father to resign his position as a District Committeeman because he could not stomach representing hourly employees desiring to benefit from these union excesses. By 1990 companies had built plants in U.S. right-to-work states, Mexico, and many other foreign countries, moving the company/union pendulum back in favor of the company and against the union. Now we stand in the next century '00s and the company excesses are at such a magnitude that it appears our government will be taking many actions to allow union strength to grow once more and begin the pendulum back in the other direction.

   a. Examples of the recent company excesses abound. The current U.S. bankruptcy law is a stark example. Why is Delphi allowed to utilize U.S. based salaried employees in roles clearly described as "global" in their titles and evident in their daily activities but under these statutes the company can say these employees are U.S. legal entity employees only and therefore their entire cost based expense is captured in this bankruptcy process but none of the "global value" they earn for the company can be used to offset this expense?

   b. Further, companies are allowed to leave all "earnings" in the foreign legal entity of their choice completely keeping them out of the reach of any affected party in the U.S. to lay claim to their value in generating these earnings.

   c. Why shouldn't non-executive management salaried employees automatically be granted unique representation in bankruptcy cases? It appears to me that we are the only unprotected class in this bankruptcy case.

## Basis for Relief

1. General Motors management "created" the Delphi entity and then placed into all leadership and all Board of Directors positions their favored choices. This assured that no "arms length" negotiations regarding the Delphi legal entity creation and operation could be manifested till it was too late to truly evolve into an independently operated company. Based on prior court cases against GM and Delphi it is clear GM undercapitalized Delphi, forced non-performing contracts on Delphi through requiring common union agreements as well as not

allowing manufacturing practice changes or manufacturing site changes, etc., etc. I believe all Delphi salaried employees remained defacto GM employees but did not receive equivalent pay and benefits. On the other hand, hourly employees represented by unions were able to achieve these "arms length" agreements that allowed them to prosper for many years under the Delphi banner and also assure they had a "fall back into GM's arms agreement" when Delphi finally failed under the weight of the GM deceptions.

   a. Refer to Delphi's 2000 annual report where it says ….entered into an agreement with GM in September 2000, resolving certain issues, related primarily to changes in assumptions for employee benefit obligations…..**This is absolutely an example where GM still had the ability to get Delphi managers to falsify annual report documents that directly affected the long-term benefits of Delphi salaried employees so that Delphi could "pay" GM $200 Million dollars in warranty claims even though Delphi contended they were not responsible.**

2. There are other examples of GM business divestitures where they "sold" businesses to prior existing business entities. Therefore, "arms length" negotiations occurred and GM was often held liable for employee pay and benefits in case of business failure due to unforeseen circumstances. I believe these are called FIN 46(R) activities. Why shouldn't Delphi be treated in exactly the same manner?

3. There is evidence of unfair actions even in this court. For example, why do union employees hired as late as 2005, more than six years after the GM/Delphi separation in 1999, have more rights to pay, benefits, and movement to GM than a salaried employee hired in 1972? Why is **GM being allowed to selectively "reward" Delphi salaried employees** that continue working in certain plants, i.e. those plants that only make parts for GM vehicles and are deemed as critical to GM.

4. Why has GM openly paid billions of dollars to the benefit of Delphi hourly employees for early retirement incentives, benefit guarantees, and other non-specified incentives but have not been required to do the same for Delphi salaried employees that have as much or longer service to the GM/Delphi entity?

5. Why are Delphi salaried employees not being treated exactly like UAW represented employees? It should be obvious that salaried employees' actions at Delphi are at minimum just as valuable to GM in keeping that part of the GM/Delphi entities operating.

6. Delphi salaried employees, both current and retired, already had their health care benefits modified in 2005 that "saved" Delphi over $0.8 Billion dollars as documented in Delphi's 2004 annual report. No Delphi union employee was affected by this change in benefits decision. Further, GM salaried employees were also not affected at that time.