Hearing Date: February 24, 2009 at 10:00 a.m.

Trent P. Cornell, Esq. (IL 6242712), *Pro Hac Vice* (pending)
Jon D. Cohen, Esq. (IL 6206666), *Pro Hac Vice* (to be filed)
STAHL COWEN CROWLEY LLC
55 West Monroe Street, Suite 1200 Chicago, Illinois 60603
(312) 641-0060
(312) 641-6959 facsimile

Barry R. Lax, Esq.
Brent A. Burns, Esq.
LAX & NEVILLE LLP
1412 Broadway, Ste 1407
New York, NY 10018
(212) 696-1999 x220
(212) 566-4531 facsimile

Counsel for Paul Higgins, James Conger, Doug Kittle
and Joni Walls and on behalf of other Delphi Non-Union
Salaried Retirees

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                                     :
        In re                                        :
                                                     :
        DELPHI CORPORATION, et al.,                  :
                                                     :
                                                     :
-----------------------------------------------------x

OBJECTION TO MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), AND
1108 CONFIRMING DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID
POSTRETIREMENT HEALTH CARE BENEFITS AND EMPLOYER-PAID
POST-RETIREMENT LIFE INSURANCE BENEFITS FOR CERTAIN (A) SALARIED
EMPLOYEES AND (B) RETIREES AND THEIR SURVIVING SPOUSES

Paul M. Higgins, James Conger, Doug A. Kittle, Joni Walls and other Non-Union

Salaried retirees of Delphi Corporation and its affiliated Debtor entities ("Debtors"),[1] as

---

[1] Attached as Exhibit A is a list of salaried Delphi retirees that have individually contacted this law firm as of the date of filing and expressed support for the formation of an Official Retiree Committee and that this

individuals receiving retiree benefits from the Debtors respectfully request that the Court
(1) deny the Debtors' Motion to Terminate Employer-Paid Postretirement Healthcare
Benefits and Employer-Paid Post-Retirement Life Insurance Benefits for Certain (A)
Salaried Employees and (B) Retirees and their Surviving Spouses (hereinafter "Motion to
Terminate Benefits") and (2) that the Court instruct the United States Trustee for the
Southern District of New York to appoint an Official Non-Union Retiree Committee
pursuant to 11 U.S.C. §1114(d).    In support thereof, the Affected Retirees state as
follows:

### INTRODUCTION

1.      On February 4, 2009, the Debtors filed their Motion to Terminate Retiree
Benefits.    If successful, this action would swiftly and permanently eliminate retiree
benefit obligations covering approximately 15,000 retirees (the "Affected Retirees").

2.      While the Debtors recognize that their actions will cause "real hardship" to
the Affected Retirees, they go on to conclude that these same Affected Retirees have no
right to the protections afforded by Section 1114 of the Bankruptcy Code ("Section
1114") because of an asserted right of "unilateral termination."    *This assertion is
incorrect.*    Indeed, the Debtors' approach harkens back to the days of LTV Steel before
Congress enacted Section 1114 and it is an improper attempt to end-run Section 1114.

3.      It cannot be overstated that it is fundamentally contrary to Section 1114
for a debtor to simply conclude—by itself—that there is a unilateral termination right and
therefore no obligation to comply with the protections afforded retirees under Section
1114.    The Debtors' Motion to Terminate Retiree Benefits serves as a perfect example of

---

law firm represent them in the Delphi bankruptcy with respect to their retiree benefits.    This list continues
to grow rapidly and is expected encompass hundreds more retirees by the hearing on February 24th.

the fox guarding the hen house.  Here, the Debtors' *entire basis* for asserting the "right" of unilateral termination is wholly predicated on two "example" sentences purportedly lifted from some unattached and unspecified benefit plan documents. (See Motion to Terminate Benefits, pp. 23-24).  On the basis of these two sentences the Debtors hope to cut-off 15,000 retirees who earned and depend upon their retiree benefits—while at the same time denying them a voice to at least defend themselves against this onslaught.

4.    With only minimal time to respond, documents showing that certain of the benefits subject to termination in the Debtors' Motion to Terminate Benefits are lifetime in nature and therefore *not* subject to unilateral termination have already been found.  For example a letter apparently sent to most or all of the Affected Retirees from Delphi states that "Our insurance records, as of the date of this letter, show the Continuing Life Insurance has now fully reduced to the ultimate amount of [].  *This ultimate amount will remain in effect for the rest of your life and is provided by Delphi at no cost to you.*" (Example copies of this letter are attached hereto as Exhibit B, emphasis supplied).  With adequate time and with a Retiree Committee to speak for them, the Affected Retirees believe that they will be able to find further evidence to rebut the Debtors' claims of a unilateral termination right with respect to the Affected Retirees' benefits in other areas too.

5.    Moreover, as set forth below, courts in the Second Circuit have repeatedly held that debtors cannot simply point to unilateral termination language in their most recent benefit plans (as the Debtors appear to be doing here) without examination of the plans that the Affected Retirees worked under as part of their employment consideration.

6.      In this vein, again in only a brief time, historical documents have already been located that not only contradict the purported unilateral termination right, they clearly state that retiree benefits are "Vested."  (A copy of a 1980 Salaried Employee benefit handbook is attached hereto as Exhibit C).[2]  This information is critical to the legal analysis used in the Second Circuit to determine what rights vested as part of the employment benefits that formed part of the consideration paid to employees before they retired.  There is no doubt that many more such documents will be located when and if the Affected Retirees are afforded the opportunity to have statutory representation.

7.      As will be set out further below, the Debtors' counsel themselves should know that the Affected Retirees have the right to a Retiree Commitee based on the results of the *Ames Department Stores* case when the Debtor vigorously—and unsuccessfully— opposed the formation of a Retiree Committee on the basis of an asserted right of unilateral termination.  *Ames Department Stores, Inc. v. Employees' Committee of Ames Department Stores*, 1992 U.S. Dist. LEXIS 18275 (S.D.N.Y. 1992).

8.      The Affected Retirees are not arguing the ultimate conclusion at this point. Indeed they cannot, just as the Debtors cannot, because there has been no process to determine exactly what rights the Affected Retirees have or do not have.  And that is exactly the point.  No finding that would affect this number of people in this way should be made until an Official Retiree Committee is appointed by the Court so that Debtors' assertion of a unilateral termination right can be legally and factually vetted.  Further, if these plans are not unilaterally terminable, then the Affected Retirees have rights that

---

[2] As the Court is well aware, Delphi was "spun-off" from General Motors Corporation.  The Debtors assumed the retiree obligations for the salaried employees when it was "spun-off."  Accordingly, the Debtors assumed these obligations and are responsible for the vested component of the retiree obligations that they assumed.

cannot be summarily denied because, at worst, they are entitled to an unsecured claim in the amount of any benefit reduction.[3]

9.      It should be noted that it is not uncommon for Debtors in chapter 11 cases to initially assert that they have maintained the right of unilateral termination in their plan documents only to have that claim later rebutted by evidence found during discovery. The undersigned lead counsel had the privilege of representing the Non-Union Retiree Committee in the Dana Corporation bankruptcy and this exact scenario played out there. *See, In re Dana Corporation* (Case No. 06-10354, S.D.N.Y.).

10.      Dana asserted that Section 1114 did not create any substantive rights for the Non-Union Retirees because, based on its own "exhaustive search of records," it claimed to have the "contractual right to terminate" the retiree benefits at issue. (See Excerpts from pleadings attached hereto as Exhibit D).

11.      However, because an Official Retiree Committee was formed and investigation undertaken, the Committee was able to locate many documents that demonstrated that Dana had actually represented that many of its retiree benefits were vested, and therefore not subject to unilateral termination.  (See Excepts for pleadings attached hereto as Exhibit E).  This formed a strong, and in some cases, unassailable defense against the Debtors' earlier *conclusion* that they possessed a unilateral termination ability.  This is but one example, but suffice it to say that the unilateral termination argument is almost always raised, or at least reserved, but not often

---

[3] Congressional intent and case law makes clear that "retirees will . . . have an unsecured claim payable in accordance with the provisions of the Bankruptcy Code and the reorganization plan, for those retiree benefits lost as a result of section 1114 modification." RBBPA, S. Rep. No. 100-119, at 689 (1988) ("RBBPA Senate Report"); *In re Ionosphere Clubs*, 134 B.R. at 527*; In re GF Corp.*, 120 B.R. 421, 423 n.1 (Bankr. N.D. Ohio 199); *Official Comm. of Unsecured Creditors of Tower Auto. v. Debtors & Debtors in Possession (In re Tower Auto. Inc.*, 241 F.R.D. 162, 167 (S.D.N.Y. 2006) ") ("Any required payment [due as a result of modification] is treated as an administrative expense; any benefits lost due to modification remain unsecured claims.").

successful because of the evolution of retiree benefit plans over time and the temporally late inclusion of unilateral termination language.

12.    Every case is different, of course, but without the protections provided by Section 1114, including the appointment of an Official Retiree Committee, there will be no basis to look behind the curtain constructed by Debtors' to terminate the rights of the retirees and to "relieve" themselves of a $1.1 billion liability.  Section 1114 is neither optional nor imposed at the sole discretion of the Debtors.  Accordingly, the Affected Retirees respectfully request that the Court deny the Debtors' Motion to Terminate Benefits and that it appoint an Official Retiree Committee as soon as practicable.

## PROCEDURAL CONTEXT

13.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in these cases.

14.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors. On April 28, 2006, the U.S Trustee appointed an official committee of equity holders.

15.    On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession and the First Amended Disclosure Statement. The Court entered an order approving the adequacy of the First Amended Disclosure Statement and granted the solicitation procedures motion on December 10, 2007.  On January 25, 2008, the Court

6

entered an order confirming the Plan (as modified) and the order became final on February 4, 2008.

16.    On February 4, 2009, the Debtors filed the Motion to Terminate Benefits at issue here.

## STATUTORY FRAMEWORK OF SECTION 1114

17.    The "statutory scheme and Congress' expressed intent indicates that [Section 1114] was enacted to achieve the very specific and focused objective of protecting retiree rights from unilateral termination." *Nelson v. Stewart*, 422 F.3d 463, 474 (7th Cir. 2005).  Indeed, in one of the earliest Section 1114 cases, Judge Lifland stated that "[i]t is inescapable that through § 1114, Congress has sought to establish a priority for retirees in bankruptcy cases that assures that they receive a measure of enhanced treatment that is consistent with a bankruptcy court's role as a court of equity." *In re Ionosphere Clubs*, 134 B.R. 515, 527 (S.D.N.Y. 1991).

18.    Stated another way, Congress's purpose in enacting Section 1114 was to ensure that the debtors did not seek to effect reorganization "on the backs of the retirees" for the benefit of other parties in interest.  *See In re Tower Automotive Inc.*, 2006 U.S. Dist. LEXIS 91958, *12 (S.D.N.Y. December 15, 2006) (Section 1114 "clearly evidences Congress's special concern for the rights of retirees."), *citing to Ionosphere*.  This policy was poignantly explained in yet another Section 1114 case: "retirees are particularly vulnerable when their former employer goes bankrupt, because of their ages, their reduced incomes and their inability to replace the benefits . . . that are being terminated." *In re Farmland Industries, Inc.*, 294 B.R. 903, 918 (Bankr. W.D. Mo. 2003).

**THE FATE OF 15,000 RETIREES SHOULD NOT BE
DETERMINED BY TWO SENTENCES ASSERTED BY DEBTORS
TO PROVIDE THE RIGHT OF UNILATERAL TERMINATION**

19.    The Debtors' Motion to Terminate Benefits screams out for the formation

of a Section 1114 Retiree Committee.  While it is acknowledged that a debtor can, under

some limited circumstances, terminate retiree benefits without a resulting unsecured

claim, that can only happen when it has been fully and finally established that the benefit

plans at issue "*unambiguously*" allow for termination (s*ee In re Ionosphere*, 134 B.R.

515, 517 (S.D.N.Y. 1991), emphasis supplied), such a conclusion cannot be reached by

the Debtors' mere assertion of that right.

20.    The Debtors did not even attach a full copy of the plan documents they

lifted the "example" termination language from. (Id. at 23-24).   More importantly,

however, even if Debtors had attached the full retiree plan(s) to their Motion to

Terminate Benefits, that would constitute only one fact out of a universe of evidence that

must be considered by the Court before reaching the legal conclusion that Debtors have

the right of unilateral termination.

21.    In cases where claims of unilateral termination have been substantively

addressed, it has been repeatedly held that the mere inclusion of unilateral termination

language in recent retiree benefit plans documents does not trump other writings

previously provided to retirees.  *See e.g., Devlin* v. *Empire Blue Cross and Blue Shield,*

274 F.3d 76, 80 & 84 (2nd Cir. 2001) (the court rejected the use of recent summary plan

documents argued by Debtor as controlling, looking instead to prior plan documents that

did not contain unilateral termination language); *Feifer v. Prudential Insurance

Company,* 306 F.3d 1202, 1211 (2nd Cir. 2002) (noting that if an employee was promised

future benefits that would vest in the future before the introduction of later documents purporting to provide the right of unilateral termination, the later documents *cannot* diminish the rights of the employees who accepted the earlier terms by continuing in the employ of their employer) (emphasis supplied); *Abbruscato v. Empire Blue Cross and Blue Shield*, 2004 U.S. Dist. LEXIS 18286 *21 (S.D.N.Y. September 10, 2004) (language in plan documents pre-1987 reflected vested benefits that could not be un-vested by inclusion in unilateral termination language in subsequent retiree plan documents); *Aleo v. Keyspan Corp*., 2006 U.S. Dist. LEXIS 55049 at *18 (E.D.N.Y. Aug. 7, 2006) (finding that documents external to retiree plan implying a lifetime or vested benefit made unilateral termination reservation in plan documents inapplicable).

22.    Accordingly, the Debtors' citation to what is certainly a recent retiree plan document does not trump other promises and/or documents given by Debtors' to their employees or retirees.  Indeed, any language found in the same plan documents or in other writings provided by Debtors (and/or other extrinsic evidence) reflecting communications that would have given Debtors' employees a reasonable belief that their future benefits would vest—usurps any right to unilateral termination.  *See Feifer,* 306 F.3d at 1211; *Devlin*, 274 F.3d at 76.

23.    As stated at the outset of this brief, while the Affected Retirees are not yet organized through any official committee, and no discovery has yet been taken regarding retiree benefits, in only a few days documents have already been located that show that the Debtors have a contractual obligation regarding life insurance benefits that were guaranteed for life to the Affected Retirees.  Further, again in that constrained time period, historical documents have already been found that clearly state that the retiree

benefits at issue are vested—and there is no reservation of a termination ability.  (See Exhibits B and C).

24.    These writings already serve by themselves to cast significant factual and legal doubt as to the eventual application of "unilateral termination" here.  It is expected that formal discovery, as allowed through the Section 1114 process, would no doubt yield even more evidence to dispute Debtors' claims. Accordingly, the formation of a Retiree Committee is absolutely required before this Court substantively considers any claims by Debtors to reduce or eliminate retiree benefits.

**NOTWITHSTANDING ANY UNILATERAL TERMINATION RIGHT ASSERTED, SECTION 1114 REQUIRES THE FORMATION OF AN <u>OFFICIAL RETIREE COMMITTEE</u>**

25.    Section 1114 prohibits a debtor from modifying retiree benefits during a chapter 11 case unless a debtor complies with Section 1114—even if Debtor appears to have a right of unilateral termination (something that does not appear to even be the case here.)  *In re Farmland Indus., Inc.*, 294 B.R. 903 (Bankr. W.D. Mo. 2003).

26.    The requirement of complying with Section 1114 and the formation of an Official Retiree Committee was squarely affirmed in *Ames Department Stores, Inc. v. Employees' Committee of Ames Department Stores*, 1992 U.S. Dist. LEXIS 18275 (S.D.N.Y. 1992), a case where Debtors' current legal counsel unsuccessfully made the *same* legal arguments with respect to the inapplicability of Section 1114 on behalf of another debtor.

27.    In *Ames,* the Bankruptcy Court granted a motion for an order appointing an Official Retiree Committee over the objections of the Debtor. *Id.* at *2-3.  The Debtor asserted that Section 1114 was not applicable on the basis that it had language in its

retiree plan documents giving it the right to unilaterally terminate the retiree benefits at issue. *Id*. When Debtor appealed the order granting the formation of an Official Retiree Committee, the District Court upheld the bankruptcy court ruling indicating that the debtor "must follow the requirements of § 1114 of the Bankruptcy Code if it seeks to terminate…" retiree benefits. *Id*. at 4.[4] This precedent has not been overturned in this District and Debtors have cited no controlling or compelling authorities to the contrary.

28.    The rationale applied in *Farmland* and *Ames* is even more compelling in light of the Congressional Amendment to Section 1114 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), wherein language was added language to Section 1114 reinforcing that the Section 1114 process must apply to *all* retiree welfare plans—notwithstanding any asserted rights of unilateral termination.

29.    BAPCPA amended Section 1114(l) to provide that:

> If the debtor, during the 180-day period ending on the date of the filing of
> the petition—
> (1) modified retiree benefits; and
> (2) was insolvent on the date such benefits were modified;
> the court, on motion of a party in interest, and after notice and a hearing,
> shall issue an order reinstating as of the date the modification was made,
> such benefits as in effect immediately before such date unless the court
> finds that the balance of the equities clearly favors such modification.

While Congress certainly contemplated that many retiree plans contain unilateral termination language, the recent amendment to Section 1114 contains no carve-outs or

---

[4] The District Court was so taken aback by the lack of merits in Debtors' argument (that unilateral termination language would wholly trump the Section 1114 process) that the Court twice ordered that Debtors' counsel reduce its legal fees associated with such arguments. (*See Id* at 5; *In re Ames Department Stores, Inc.*, 1995 U.S. Dist. LEXIS 7761 *4-7 (S.D.N.Y. June 7, 1995). While the order disgorging these fees was subsequently reversed, the Court of Appeals carefully noted that it was <u>not</u> overturning the orders that found Section 1114 to be applicable.

exceptions on this basis.   Notably, Colliers Bankruptcy Manual now indicates that Congress' revision to Section 1114 makes is applicable even when there is clear unilateral termination language in a benefit plan.  (Collier Bankruptcy Manual, 15th Ed., Rev. P 1114.03 (2006).  While this applies to Section 1114(l), it is notable that Congress appears to be increasing the breadth of Section 1114 to more closely comport with the original legislative intent of the statute.

## CONCLUSION

30.    The formation of a Section 1114 Retiree Committee does not guarantee any result or recovery for retirees.  When Congress enacted Section 1114, however, it did so to make sure that the retirement benefits that retirees worked their lives for are not simply cut-off at the whim of a debtor.  The retirees must have a voice to speak for them, and it must be through an Official Committee that is sanctioned by the Court.

31.    Application of Section 1114 would provide a mechanism to ensure that the Debtors' asserted right of unilateral termination is not based on a fiction, nor a selective review of self-serving materials proffered by a party with the intent to shed $1.1 billion dollars of obligations.   Forming a Section 1114 Retiree Committee would also ensure that the retirees are provided access to paid professionals with the experience and ability to represent their interests before the Bankruptcy Court, a critical factor for individuals living on a fixed income.  Finally, under Section 1114 it would be incumbent on the Debtors to demonstrate the "necessity" of their proposed actions; as opposed to simply wanting to eliminate a liability—especially when that "liability" directly affects the lives of many thousands of people, some of whom will be left uninsurable and without access to the healthcare they need to live.  To state these benefits are "life or death" is not

hyperbole, as the Court itself can see from the letters that have already come in from retirees. All the Affected Retirees are seeking is a full and fair ability to defend themselves, i.e. the statutory protections afforded them by Congress pursuant to Section 1114. This is a modest request in the face of the Debtors' desire to completely cut off all of their benefits in order to improve their books by $1.1 billion.

## **MEMORANDUM OF LAW**

32.     It is respectfully requested that the Court waive the requirement contained in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be submitted.

## **NOTICE**

33.     Notice of this Opposition and all supporting Exhibits is being provided on the date hereof by electronic filing and hard copy delivery to the Parties set forth in the Notice of the Motion to Terminate Benefits.

WHEREFORE, the Affected Retirees respectfully request that Debtors' Motion to Terminate Employer-Paid Postretirement Healthcare Benefits and Employer-Paid Post-Retirement Life Insurance Benefits for Certain (A) Salaried Employees and (B) Retirees and their Surviving Spouses Motion to Terminate Employer-Paid Postretirement Healthcare Benefits and Employer-Paid Post-Retirement Life Insurance Benefits for Certain (A) Salaried Employees and (B) Retirees and their Surviving Spouses be denied and further, that this Court order that an Official Retiree Committee be formed.

Dated: New York, New York
February 13, 2009

On behalf of Paul Higgins, James Conger, Doug Kittle & Joni Walls and other Delphi Non-Union Salaried Retirees

/s/ Barry R. Lax
Local Counsel

Local Counsel
Barry R. Lax, Esq.
Brent A. Burns, Esq.
LAX & NEVILLE LLP
1412 Broadway, Ste 1407
New York, NY 10018
(212) 696-1999 x220
(212) 566-4531 facsimile
blax@laxneville.com

Lead Counsel
Trent P. Cornell, Esq. (IL 6242712), *Pro Hac Vice* (pending)
Jon D. Cohen, Esq. (IL 6206666), *Pro Hac Vice* (to be filed)
STAHL COWEN CROWLEY LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603
(312) 641-0060
(312) 641-6959 facsimile
tcornell@stahlcowen.com