# United States Bankruptcy Court
## Southern District Of New York

```
─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─x
```

| | |
|---|---|
| In re | : Chapter 11 |
| DELPHI CORPORATION, et al., | |
| | : Case No. 05-44481 (RDD) |
| Debtors | : (Jointly Administered) |

```
─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ x
```

Address: Delphi Corporation
5725 Delphi
Drive, Troy, Michigan 48098

**NOTICE OF OBJECTION BY JAMES B. SUMPTER, CURRENT CREDITOR RETIREE TO**

"MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), AND 1108 CONFIRMING DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID POST RETIREMENT HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-RETIREMENT LIFE INSURANCE BENEFITS FOR CERTAIN (A) SALARIED EMPLOYEES AND (B) RETIREES AND THEIR SURVIVING SPOUSES ("SALARIED OPEB TERMINATION MOTION")", Document #14705 filed February 4, 2009 and delivered to James B. Sumpter on **February 6, 2009.**

I, James B Sumpter, have filed written papers with the court to object to said motion no later than the date and time in the motion of February 17, 2009 at 4:00PM and per all requirements stated. I am requesting the court to consider the following objections:

1. I object to the debtors **February 17, 2009 date** set for objections to be submitted. Basis: From the date of receipt of the motion (February 5, 2009) with NO prior knowledge, that leaves 6 working days to develop and submit an objection (Presidents day is February 16, 2009). That is insufficient time to research and form a well refined objection.

2. I object to a **March 31, 2009 termination date.** This termination date does not allow sufficient time to investigate alternatives to Delphi's petition.

    Furthermore, through its pattern, throughout the years, Delphi has established the de facto termination date in any plan year to be December 31. Delphi and retirees inter to a contract each year, in which retirees are an unequal partner. Except for specific events such as births, deaths and marriage no changes can be made except during the specified enrollment period, which occurs in October of each year. I believe that this view is confirmed by the fact that Delphi proposes to have retirees participate in existing plan arrangements, beginning on April 1, 2009, as 100% self payers. In addition this suggest that Delphi is attempting to manipulate retirees to avoid penalties and fees that it would incur due to contractual arrangements with insurance providers, which have likely based their fees to Delphi on the number of participants in the plan.

3. In addition, Between July 1985 and February 1989, I work as a highly compensated Independent contractor to Delphi. On February 4, 1989, I became a salaried employee of Delco electronics (the predecessor to Delphi automotive.). I accepted a $20,000 per year salary cut (along with the loss of significant tax benefits) to become a salaried employee. I accepted this employment offer, in part, because of the compensation package, which included hiring in at the pay grade of what is termed an 8th level engineer, health insurance and life insurance for my family and me, stock savings and a retirement program, which

2

included pension, health care and life insurance. I have attached my employment offer letter a separate attachment file, document (1).

The company received exceptional benefit from my engineering expertise, innovation and leadership. Should the court grant Delphi's request, Delphi will have managed to secure my services for an amount substantially below market value. Therefore, eliminating any part of my retirement benefits becomes an unconscionable an unfair exploitation of my position. I am retired on full disability. I have systemic Lupus. I am fifty-seven years old. I am not able to work in my profession or otherwise. I have a fixed income. Therefore I have no means to generate income to mitigate the effects of Delphi's action. I have a pre-existing chronic medical condition, therefore alternative life insurance and health insurance is not available to me.

Therefore I object to Granting Delphi's request as it will result in an unfair catastrophic reduction in the quality of my life and a probable financial collapse. It is **unfair** to sacrifice my financial stability (and that of other retires like me) in order to save money for Delphi.

The court should also note that the offer of employment from Delphi made no reference to the idea that these benefits could be eliminated at any time.

4. In consideration of the compensation (which included, salary, health insurance, life insurance and retirement benefits) paid for services I performed for Delphi Automotive Systems Corporation I assigned to Delco and succeeding companies all rights to all patents, utility models, industrial designs, trademarks, service marks, semiconductor chip mask works and copyrights on all writings,

designs, inventions and works that I conceived, made, invented or suggested during the time of my employment that were connected with my work or are otherwise related to the business of Delphi.

I (and many other salaried employees, who are now retired) assigned intellectual property to Delphi in exchange for salary and benefits. Delphi now seeks to eliminate a substantial portion of my retirement package while retaining all intellectual rights to innovations, designs and writings I produced at the company. Some of these innovations were transferred to General Motors. In some other cases Delphi took possession of the innovations, but chose to issue defensive publications in lieu of seeking patents. The income and benefit that Delphi receives from intellectual property that I conceived is substantial and will likely continue past my lifetime. Permitting Delphi to avoid its obligations established in my retirement package will transform a mutually beneficial agreement into an **unfair exploitation** of a former, dedicated employee.

5. It was the intent of Congress Bankruptcy law requires that creditors including retirees be treated fairly. However, Delphi proposes to eliminate its monthly supplement to Medicare part B, Delphi has abandoned its promise to provide a medical savings account, Delphi is seeking to abandon medical and life insurance coverage for disable employees and surviving spouses among others. However, The Delphi disability retirement plan prohibits me from any gainful employment or occupation. The Plan also requires that any payments that Delphi makes are reduced by any social security disability benefit for which I might become eligible. Delphi has proposed to make no adjustments in any of it requirements. Delphi seeks to secure all advantage for the company at the expense of my security and well being.

4

Therefore I object to Delphi's petition as being completely unfair and in opposition to bankruptcy law and the intent of congress.

6. The Summary Plan Document (SPD) in effect when I retired on disability has the following language:

> Delphi will continue contributions towards your health care coverage's while you remain totally and continuously disabled and you remain on an approved disability leave. (See page 81 column 1 in the SPD, shown in attachment file, document ( 2).)
>
> If you have 10 or more years of participation at the commencement of your disability, your Basic Life Insurance will be continued at no cost to you
> while you are totally and permanently disabled prior to age 65. (See page 81 column 1 in the SPD — shown in attachment file, document (2) .)
>
> If your most recent date of hire (or adjusted service date) with Delphi was prior to January 1, 1993, your Basic Life Insurance will immediately reduce upon retirement, as shown on **page** 101. **If you retire under the total and permanent disability provisions of the Retirement Program, your Basic Life Insurance will continue, unreduced, until age** 65. (See page 97 column 2 in the SPD — shown in attachment file, document (3) .)

Delphi claimed no specific right to change these disability benefits. However, had they reserved such a right, the changes would apply only if made prior to my retirement.
   Since, these benefits were codified at the time that I was retired on disability by the company; the commitment contained in these paragraphs requires Delphi to continue to pay

5

for my benefits until age 65. If Delphi eliminates its insurance program then based on the language in the SPD, Delphi continues to be obligated to pay for the same coverage, wherever I can find it. Therefore I object to Delphi's efforts to terminate its obligations as it pertains to any part of my retirement benefits.

7. I object to Delphi's petition because it is cruelly unfair to surviving spouses, particularly the surviving spouses (if they have remained unmarried) of four Delphi employees from Kokomo Indiana, who were killed (while on company business) when their flight (American Eagle 4148) Crashed in Northern Indiana, on October 31, 1994.

8. Delphi has behaved in bad faith, undertaking a cynical strategy to deny congressionally mandated benefits and protections to retirees. The first part of this strategy was to eliminate health care benefits for retirees past age 65. In dropping its post "age sixty five" health care coverage, Delphi offered retirees a medical spending account. The proposal to provide the spending account was a ploy to mute objections by retirees, since it's now clear Delphi never intended to maintain these accounts long term. Once the terms of the plan were accepted by the court, Delphi has "now" decided that it is in its business interest to drop the saving account. I believe this because Delphi has access to economist and experienced financial experts that should have been able to predict some of the condition now present in the economy. They certainly should have been able to predict these conditions as a risk factor. Furthermore the senior management and directors of the company should have been aware of the automotive market cycle and anticipated challenges in this time frame.

6

Therefore I am convinced that riffling retirees' benefits has always been a major component of the reorganization plan.

This is especially apparent when we consider that any set of directors or managers committed to a healthy reorganization would have leveraged Delphi's considerable engineering, development and manufacturing resources to diversify its product portfolio so as to introduce products with shorter development cycles and cost. They would have also diversified their product portfolio to be less dependent on one dominant customer in an over- supplied automobile market segment.

I believe that this is sufficient reason, alone, for the court to deny Delphi's petition. Therefore, for all the reasons stated above, I respectfully ask the court not to grant any part of Delphi's petition and to establish an 11-14 committee so that the retirees are in a better position to monitor Delphi's behavior and protect our earned benefits.

Per the instructions in the referenced motion, this written **NOTICE OF OBJECTION BY JAMES B. SUMPTER** is being filed with the bankruptcy court as a PDF document on a 3.5 inch disk.

1. It is also being submitted as a hard copy directly to:

    The Honorable Robert D. Drain
    United States Bankruptcy Court for the Southern District of New York
    One Bowling Green
    Room 610
    New York, New York 10004

2. Separate copies have also been mailed to:

    Delphi Corporation
    5725 Delphi Drive
    Troy, Michigan 48098

(Attn: General Counsel)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive
Suite 2100
Chicago, Illinois 60606
Attn: John Wm. Butler, Jr.

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
(Attn: Donald Bernstein and Brian Resnick)

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
(Attn: Robert J. Rosenberg and Mark A. Broude)

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
(Attn: Bonnie Steingart)

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street
Suite 2100
New York , New York 1004
(Att'n: Brian Masumoto)