(Updated revision A)

James W. Albrecht
709 Stacie Ct.
Naperville, IL 60563
February 15, 2009

United States Bankruptcy Court
One Bowling Green
New York, New York 10004

Attn: Dorothy Li and the Honorable Judge Robert D. Drain

Case Number:  05-44481 filed October 8, 2005
Debtor: Delphi Corporation, et al.
Document # 14705 to Cancel OPEB (Health Insurance Benefits for all Retires)

Dear Judge Drain:

This letter expresses my concern with Document #14705 filed by Delphi Corporation on February 4, 2009 asking the court to cancel health insurance benefits (OPEB) for over 15,000 retirees of Delphi Corporation.

Please note that this letter is an **OBJECTION** to that document and file it as a motion to object to document #14705.  There are three parts to this objection:

Part 1:   (Salaried OPEB benefits were actually paid for by the salaried employees of General Motors and Delphi Corporation.) Most of my career was with General Motors as my OPEB benefits were accumulated between 1972 and 1999 when Delphi was formed.

The OPEB benefits cited in this motion were not paid for by the employer (General Motors or Delphi).  Each year, salaried employees received a salary and benefits package as opposed to

contract employees who received a larger salary in lieu of these benefits.

All salaried employees received a lower salary to enable both General Motors and Delphi to set aside money in a trust fund out of which future OPEB benefits would be paid.

Delphi obviously placed a value on these benefits since salaried employees hired after January 1, 1993 were given an additional 1% of base pay in lieu of the OPEB retirement benefits.  Furthermore, the 1993 change was done as a cost reduction so it is obvious that Delphi valued these benefits at some level greater than 1% of base pay.

It is not the fault of the salaried employees that this trust fund was never set up and that the money saved by Delphi was used for other purposes including construction of plants in foreign countries.  In fact, this borders on mismanagement and malfeasance on the part of Delphi.

Therefore, I believe it is incumbent upon this court to reject this motion from  debtor Delphi.

Part 2:  (Delphi breached their contract with salaried employees.)

The provisions of this motion represent a "BREACH OF CONTRACT" with the salaried employees of Delphi.  Employees were recruited by Delphi based on a salary and benefit package that implied, if not directly stated in writing, that the salary and benefits were comparable or better than those paid by other companies and that they were a part of the employment contract with Delphi.

Each year, salaried employees were required to sign a document accepting the new salary and benefit package that Delphi offered.  Again, the salary was lower than what it would have been were no benefits included in the package.  And… the conversation that took place during the signing session to accept the yearly changes

implied that these benefits would be provided as described in the benefits manual that Delphi provided each year.  A large portion of this benefits manual was devoted to retirement income and salaried benefits after retirement.

Each year, the salaried benefits package was compared both verbally and in writing to the hourly benefits package to show that the salaried employees were treated as well as the represented hourly employees.  This was done to prevent salaried employees from demanding union representation.  **Hourly benefits are not being subjected to this motion to cancel retiree benefits** because of the contract between Delphi and the various unions.  Since these comparisons were made by Delphi, it is clear that the benefits were meant to have similar longevity to those specified by the hourly contract.

I, like many other salaried employees, was given the opportunity to retire early.  Here again, a package was prepared showing the retirement income and benefits that would be provided if the employee elected to retire.  **NO EMPLOYEE** would have signed the early retirement documents if there were any hint either verbally or otherwise that these benefits would not be paid in the future.

All retiring salaried employees (early retirees and normal retirees) signed documents accepting the income and benefits provisions again with the implication (verbal) that these benefits would continue during retirement.  Again, **NO EMPLOYEE** would have signed the retirement document if there were any hint either verbally or otherwise that these benefits would not be paid in the future.

Effective January 1, 2007, after many employees retired, Delphi discontinued health care benefits "after" age 65.  A number of meetings were held to describe a "Wageworks pot" of $20,000 that was to be used to minimize the trauma caused by this change.  This action would indicate that Delphi truly felt some responsibility for the past promises and contracts with their employees.

This "pot" is now being eliminated along with the other benefits. However, during the numerous meetings that took place when this modification was originally made, an implication was again made that the health care and life insurance benefits would now continue "until age 65."

Part 3:  Elimination of benefits for seniors
I believe that this is one of the potentially biggest age discrimination cases that I have witnessed.  Those retirees affected that are between the ages of 55 and 65 when medicare coverage would be initiated will be left without coverage while the younger Delphi executives will continue to receive bonuses once Delphi emerges from bankruptcy.  Most of that retiree group will have a very difficult time finding employment the pays healthcare and life insurance benefits.  Cutting their OPEB benefits will leave them without insurance or will perhaps force them to utilize emergency room services followed by non-payments.  It will also risk causing more government aid (welfare, food stamps, and other) to help cover living expenses if much of their pension is forced to be redistributed to pay for health insurance and life insurance.  The executives and other management personnel would be far more able to sustain the costs of increased contributions to health care.  Delphi is taking advantage of those that contributed much to the growth of General Motors prior to the Delphi spin off.

I helped General Motors grow their component business in operations around the world.  Delphi would later benefit from these operations in South America, Asia, and Europe.  My time growing and working to lead those operations during their growth means that my OPEB benefits grew as a result of those overseas operations.  As a result of that issue, the overseas operations that were separated from the Delphi bankruptcy proceedings should not be separated from a financial responsibility for my OPEB financial support.

For the numerous reasons cited above, I contend that both General Motors and Delphi broke their contracts with its salaried employees and should be held accountable for that action.  Delphi should not

be allowed to opt out of this obligation and this motion should be rejected by the court.

Respectfully submitted by:




James W. Albrecht
216-288-1931
cc:

Att'n: Brian Masumoto
Office of the United States Trustee for the Southern District of New York
33 Whitehall Street – Suite 2100
New York, New York 10004

Att'n: General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098

Att'n: John Wm. Butler, Jr.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive - Suite 2100
Chicago, Illinois 60606

Att'n: Donald Berstein and Brian Resnick
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

Att'n: Robert J. Rosenberg and Mark A. Broude
Latham & Watkins LLP
885 Third Avenue

New York, New York 10022

Att'n: Bonnie Steingart
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004