Joseph S. Kramer
4932 Bonnie Road
Dayton, Ohio 45440-2143

Phone: (937) 435-7932
E-mail: jskramer1@woh.rr.com

Representing self and spouse

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                        :
   In re                                       :    Chapter 11
                                                        :
DELPHI CORPORATION, <u>et al.</u>,               :    Case No. 05-44481 (RDD)
                                                        :
                              Debtors. :    (Jointly Administered)
                                                        :
-------------------------------------------------------x

NOTICE OF OBJECTION TO NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. 105, 363(b)(1), AND 1108 CONFIRMING DEBTOR'S AUTHORITY TO TERMINATE EMPLOYER-PAID POST-RETIREMENT HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-RETIREMENT LIFE INSURANCE BENEFITS FOR CERTAIN <u>(A) SALARIED EMPLOYEES AND (B) RETIREES AND THEIR SURVIVING SPOUSES</u>

Joseph S. Kramer (SSN XXX-XX-4122) previous employee and current retiree of Delphi Corporation ("Delphi"), hereby submits this objection to the motion filed February 4, 2009 by Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") filed to Confirm Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (A) Salaried Employees And (B) Retirees And Their Surviving Spouses under a Motion For Order Under 11 U.S.C. 105(a), 363(b)(1) And 1108.

1

Preliminary Statement

1.      Elimination of the above Delphi Corporation ("Delphi") current recorded obligation will place a significant burden and immediate financial obligation upon on the most senior group of current employees and retirees without any financial recourse available to those employees and retirees specifically in the loss of Employer-Paid Post-Retirement Health Care Benefits.  Estimated projections of the annual impact of this elimination on an individual Eligible Salaried Retiree who began working for GM prior to January 1, 1993 (the "Pre-1993 Salaried Employees") carrying Medical, Dental, Vision, and Extended Care Insurance and not currently Medicare eligible (born after February 4, 1944) with a spouse is as follows:

| Retiree and Spouse: | | |
|---|---|---|
| Medical | $13,000.00 | Annual |
| Dental | $912.00 | Annual |
| Vision | $72.00 | Annual |
| Extended Care | $94.00 | Annual |
| Total | $14,078.00 | Annual |

In addition, these classes of retirees (the "Pre-1993 Salaried Employees"), will depending on their retirement date lose, access to Retiree Health Reimbursement Accounts ("RHRAs") for Medicare-eligible salaried retirees.  Depending on retirement date the individual economic impact would be a one-time loss of either $10,000.00 for those employees still employed on the date of the implementation of the RHRA and up

2

to $20,000.00 for those employees and surviving spouses already in retirement on the date of the implementation of the RHRA. Most of these obligations are currently less than $20,000.00 due to current reimbursements.

2.   These particular classes of retirees (the "Pre-1993 Salaried Employees") were employees of General Motors Corporation ("GM") prior to the separation of Delphi Corporation ("Delphi") on January 1, 1999 and General Motors Corporation ("GM") should bear some responsibility and liability for these retirees (the "Pre-1993 Salaried Employees").

3.   These particular classes of retirees (the "Pre-1993 Salaried Employees") are the most senior retirees currently on fixed incomes (Social Security, Delphi Corporation Pensions, Individual Retirement Accounts and/or IRA's). There are no viable alternatives for them to diffuse this economic impact. Furthermore, this class of retirees views the current environment to contain significant risks with a high probability of our pensions being placed by Delphi Corporation ("Delphi") and the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") into the Pension Benefit Guarantee Corporation ("PBGC") with a resulting significant deterioration of currently paid pension benefits for those under age 65. In some cases, elimination of Employer-Paid Post-Retirement Health Care Benefits and the potential placement of pensions with the Pension Benefit Guarantee Corporation ("PBGC") could result in 100% loss of an existing pension and could even exceed the value of the monthly pension. Most would lose up 40% of their current monthly pension benefit. This could result in a number of individuals becoming dependent on Medicaid, welfare, and/or filing for individual bankruptcy protection.

      4.      Early separation and retirement was offered by Delphi Corporation ("Delphi") and encouraged in discussions with long-term employees as a means of aiding Delphi Corporation ("Delphi") to reduce and rationalize their staffing structure. Discussions with human resource personnel often highlighted the fact that we were of a class of employees entitled to Employer-Paid Post-Retirement Health Care Benefits and the Retiree Health Reimbursement Accounts ("RHRAs") for Medicare-eligible salaried retirees. In fact, it was implied at the implementation of the Retiree Health Reimbursement Accounts ("RHRAs") that this was going to be a funded program administered outside of Delphi. Obviously, if this was the case, the motion to remove it indicates that it was never fully funded and this placed this program at risk.

      5.      These particular classes of retirees (the "Pre-1993 Salaried Employees") are likewise a class of individuals who are most like to have pre-existing conditions or are under current treatment for significant health concerns. While Delphi Corporation ("Delphi") and the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") offer the option of continuing the current health-care policies and providers with the retirees (the "Pre-1993 Salaried Employees") bearing 100% of the cost, the elimination of the Employer-Paid Post-Retirement Health Care Benefits Program and the timing of the current proposed elimination date of April 1, 2009 precludes the pursuit of lower-cost alternatives per communications from alternate insurers. Most insurers are quoting 4-6 weeks to determine qualification of an applicant for their insurance plan (specifically AARP/Aetna). Some retirees currently with employed spouses may be able to and qualify for the spouse's current employer medical insurance plans. Many plans require a 30-day period from the receipt of a letter

4

or court notification of the formal signed court ordered implementation of the proposed motion for termination of Delphi Corporation ("Delphi") plan (Reference Fidelity National Financial /Aetna plan). This notification is required to be attached to the application for the change in the employee's (spouse's) benefit status.  The current motion interval between court hearing, potential order, and proposed termination is only 35 days.

      6.    While Employer-Paid Post-Retirement Health Care Benefits were never a guaranteed program, over a significant period of years these benefits were always implied and documented as salaried employee benefits of both Delphi Corporation ("Delphi") and General Motors Corporation ("GM") and considered by employees to be deferred compensation.  These benefit documents were also used to encourage employees to take early retirement to the benefit of the corporations.  These corporations made significant demands upon these employees to make sacrifices for the corporations in the name of retaining their employment and employee benefits.  These sacrifices have been made and the corporations benefited.  Salaried employee benefits were also often used as a lever to force concessions in the union contracts, which have by this court, either upheld or transferred to General Motors Corporation ("GM").  Therefore, recognition of these implied obligations is imperative by both Delphi Corporation ("Delphi") and General Motors Corporation ("GM").

      7.    Elimination of Employer-Paid Post-Retirement Life Insurance Benefits is not a concern of the magnitude or the economic burden upon the retirees as is the elimination of Employer-Paid Post-Retirement Health Care Benefits. In specific instances this may be an issue, but most retirees have other insurance or other insurance options readily available and at affordable rates.

5

8.      Concurring with the Current Challenges To The Global Economy, Capital Markets, and Auto Industry, there is a legitimate issue of the current salaried employees and retirees about the continued lack of progress in resolving the bankruptcy filing, particularly in Delphi and GM funding salaried pension obligations and benefits. The failure of the "Confirmed Plan" in April 2008 to emerge from bankruptcy by the backing out of the agreement by Investors currently under law suit for damages and specific performance have resulted in Salaried Employees and Retirees being forced into positions to bear the economic burden of this bankruptcy.  This failure to exit has continued with significant costs to Delphi to continue to pay legal and interest fees that potentially would not have drained the necessary financial resources to fund the Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (A) Salaried Employees And (B) Retirees And Their Surviving Spouses.  Funding for the Salaried Pension Program for these employees has incurred significant delays and additional risks that otherwise it would not have incurred if a stronger positions would have been enforced regarding commitments and agreements for exiting bankruptcy.  These obligations and burdens should not be transferred to the Salaried Employees and Retirees.

<u>Relief Requested</u>

9.      The following alternatives are sought in an order for relief for the salaried retirees:

10.     First alternative, the motion should not be granted with Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

6

in-possession in the above-captioned cases (collectively, the "Debtors") and they should be instructed to develop alternatives to protect these classes of employees including transfer of all or a portion of the liability to General Motors Corporation ("GM") as a committed debt or obligation.

11.    Second alternative, if the motion is to be granted with none of the obligation transferred to GM, revise the plan to reduce the immediate impact on the Salaried Retirees currently in retirement or those subsequently separated in the Pre-1993 Salaried Employees class.  The proposal should contain a phase-in of the proposed elimination and retention of the Retiree Health Reimbursement Accounts ("RHRAs") under the assumption that this program was funded at its implementation.  Recommendation is to reduce Delphi's obligation for Employer-Paid Post-Retirement Health Care Benefits by 33% for the balance of 2009 effective May 1, 2009, 66% for the year 2010, with 100% termination on January 1, 2011.  This is the most impacted group of salaried retirees without economic options for recovery.   Eliminate the Employer-Paid Post-Retirement Life Insurance Benefits to benefit Delphi.

12.    Third alternative, if the motion is to be granted as stated in the motion, 100% elimination of Employer-Paid Post-Retirement Health Care Benefits and Employer-Paid Post-Retirement Life Insurance Benefits to Delphi and the Debtors, we seek a motion to extend the effective date to be effective the first of the month following a minimum interval of 90 days after the court decision date.  This requirement would grant current salaried retirees adequate time to pursue medical insurance with alternate insurance carriers.  The current proposed implementation date of April 1, 2009 is

7

inadequate and clearly reduces options available to the current 15,000 retirees.  (See Paragraph 5. Above).

        13.    Finally, if the motion is granted, Joseph S. Kramer is seeking an order of specific individual relief by filing this formal notification of objection to the motion which recognizes the implied financial obligation detailed prior to my retirement on August 1, 2007 by Delphi of the Employer-Paid Post-Retirement Health Care Benefits for the retiree and his spouse until age 65 (Retiree Age 65 - September 24, 2011) and Medicare eligible under the present selected health insurance provider United Health Care and for the continuation of spouse's benefits until age 65 ( Spouse Age 65 - January 5, 2015) and Medicare eligible under the current program's requirement to switch to the Enhanced Medical Plan.  Obligation also seeks an order for compliance to fund Joseph S. Kramer's RHRA with the full commitment of $10,000.00. The order I am seeking is to identify a Delphi Corporation obligation for payment, with no tax liability to Joseph S. Kramer of:

<u>Motion for Specific Individual Relief</u>

| | | |
|---|---|---|
| April 1, 2009 – September 24, 2011 | $1157.05 / mth. | $34,711.50 |
| September 24, 2011 – January 5, 2015 | $666.00 / mth | $26,640.00 |
| Retiree Health Reimbursement Account | | $10,000.00 |
| Gross-Up for Income Taxes (Calculated @ 28% Rate) | | <u>$19,978.42</u> |

(Current Delphi payments are Non-Taxable or Pre-Tax)

{Rates from Estimated Delphi 2009 Retiree Self-Pay
    Rates less Retiree Payments – 25839.pdf Enclosed}

                Total Order    $91,329.92

8

Notice

14.     Notice of this Objection to the Motion is being provided to the United States Bankruptcy Court Southern District Of New York in accordance the Supplemental Order Under 11 U.S.C. 102(1) And 105 And Fed. R. Bankr. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered December 4, 2008 (Docket No 14534). In addition, a complete copy of this objection has been served via mail to Honorable Robert D. Drain, United States Bankruptcy Judge, and (i) Delphi Corporation 5725 Delphi Drive Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.). (iii) counsel for the agent under the post petition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (iv) counsel for the official committee of unsecured creditor Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A Broude), (v) counsel for the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), and (vi) the office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Brian Masumoto).

[THIS PAGE INTENTIONALLY LEFT BLANK]

# DELPHI

## Estimated 2009 Retiree Self-Pay Rates

| Health Plan Name | Rates shown below are Monthly Rates | | | | | | |
|---|---|---|---|---|---|---|---|
| | Employee Only | Employee and Spouse | Employee and Child(ren) | Family | Spouse Only | Child(ren) Only | Spouse & Child(ren) |
| Enhanced Medical Plan | $666.00 | $1,332.00 | $1,198.80 | $1,864.80 | $666.00 | $666.00 | $1,198.80 |
| Point-of-Service Plan | $636.00 | $1,272.00 | $1,144.80 | $1,780.80 | $636.00 | $636.00 | $1,144.80 |
| Comprehensive Health Savings Plan | $332.00 | $664.00 | $597.60 | $929.60 | $332.00 | $332.00 | $597.80 |
| Health Net (Southern CA) | $520.99 | $1,094.08 | $989.88 | $1,458.77 | N/A | N/A | N/A |
| Advantage Health Plan (IN) | $502.72 | $1,055.77 | $955.17 | $1,407.62 | N/A | N/A | N/A |
| HAP (MI) | $333.43 | $700.21 | $633.52 | $933.60 | N/A | N/A | N/A |
| Priority Health West (MI) | $507.89 | $1,066.57 | $965.02 | $1,422.20 | N/A | N/A | N/A |
| Blue Care Network (Southeast Michigan) | $312.81 | $656.90 | $594.34 | $875.87 | N/A | N/A | N/A |
| Priority Health East (MI) | $377.92 | $793.67 | $718.07 | $1,058.22 | N/A | N/A | N/A |
| Health Plus of Michigan (MI-Flint) | $386.05 | $810.70 | $733.49 | $1,080.93 | N/A | N/A | N/A |
| Health Plus of Michigan (MI-SE Mich) | $304.99 | $640.48 | $579.48 | $853.97 | N/A | N/A | N/A |
| Health Plus of Michigan (MI-Saginaw) | $399.75 | $839.49 | $759.54 | $1,119.32 | N/A | N/A | N/A |
| Blue Care Network (MI-East/Saginaw) | $404.59 | $849.64 | $768.73 | $1,132.85 | N/A | N/A | N/A |
| Blue Care Network (Mid-Michigan) | $404.59 | $849.64 | $768.73 | $1,132.85 | N/A | N/A | N/A |
| Blue Care Network (East/Flint Michigan) | $368.60 | $774.06 | $700.34 | $1,032.08 | N/A | N/A | N/A |
| Blue Point 2 (NY-Rochester) | $370.98 | $853.26 | $934.13 | $983.10 | N/A | N/A | N/A |
| United HealthCare (Dayton/Cinci) | $600.59 | $1,261.24 | $1,141.12 | $1,681.64 | N/A | N/A | N/A |
| Kaiser Permanente (OH) | $419.44 | $880.82 | $796.94 | $1,174.43 | N/A | N/A | N/A |
| Health Assurance - Warren/Youngstown (OH) | $550.38 | $1,155.79 | $1,045.72 | $1,541.06 | N/A | N/A | N/A |
| | | | | | | | |
| Dental | $44.00 | $88.00 | $79.20 | $123.20 | N/A | N/A | N/A |
| Vision | $3.00 | $6.00 | $5.40 | $8.40 | N/A | N/A | N/A |
| Extended Care Coverage | $11.00 | $22.00 | $19.80 | $30.80 | N/A | N/A | N/A |

Notes:  Rates are evaluated on an annual basis and are subject to change.

Spouse Only, Child(ren) Only, Spouse & Child(ren) are available only to retirees who are Medicare eligible and age 65 or older.