The Honorable Judge Robert D. Drain
United States Bankruptcy Court for the Southern District of New York
One Bowling Green - Room 610
New York, New York 10004
Case Number: 05-44481
Debtor: Delphi Corp.

Objection to Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), and 1108 Confirming Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (A) Salaried Employees And (B) Retires And Their Surviving Spouses (the "Motion").

There are two parts to this objection:

Part 1: (OPEB benefits were actually paid for by the salaried employees of Delphi Corporation.)

The OPEB benefits cited in this motion were not paid for by the employer (Delphi). Each year, salaried employees received a salary and benefits package as opposed to contract employees that received a larger salary in lieu of these benefits. All salaried employees received a lower salary to enable the Delphi to set aside money in a trust fund out of which these OPEB benefits would be paid in the future.

Delphi obviously placed a value on these benefits since salaried employees hired after January 1, 1993 were given an additional 1% of base pay in lieu of the OPEB retirement benefits. Furthermore, the 1993 change was done as a cost reduction so it is obvious that Delphi valued these benefits at some level greater than 1 % of base pay.

It is not the fault of the salaried employees that this trust fund was never set up and that the money saved by Delphi was used for other purposes. In fact, this borders on mismanagement and malfeasance on the part of Delphi . Therefore, I believe it is incumbent upon this court to reject this motion from Delphi.

Part 2: (Delphi breached their contract with salaried employees.)

The provisions of this motion represent a "BREACH OF CONTRACT" with the salaried employees of Delphi. Employees were recruited by Delphi based on a salary and benefit package that implied, if not directly stated, that the salary and benefits were comparable or better than those paid by other companies and that they were a part of the employment contract with Delphi.

Each year, salaried employees were required to sign a document accepting the new salary and benefit package that Delphi offered. Again, the salary was lower than what it would have been were no benefits included in the package. And. the conversation that took place during the signing session to accept the yearly changes implied that these benefits would be provided as described in the benefits manual that Delphi provided each year. A large portion of this benefits manual was devoted to retirement income and salaried benefits after retirement. Each year, the salaried benefits package was compared both verbally and in writing to the hourly benefits package to show that the salaried employees were treated as well as the represented hourly employees. This was done to prevent salaried employees from demanding union representation. Hourly benefits are not being subjected to

this motion to cancel retiree benefits because of the contract between Delphi and the various unions. Since these comparisons were made by Delphi, it is clear that the benefits were meant to have similar longevity to those specified by the hourly contract.

Some salaried employees were given the opportunity to retire early. Here again, a package was prepared showing the retirement income and benefits that would be provided if the employee elected to retire. NO EMPLOYEE would have signed the early retirement documents if there were any hint either verbally or otherwise that these benefits would not be paid in the future. All retiring salaried employees (early retirees and normal retirees) signed documents accepting the income and benefits provisions again with the implication (verbal) that these benefits would continue during retirement. Again, NO EMPLOYEE would have signed the retirement document if there were any hint either verbally or otherwise that these benefits would not be paid in the future.

After many employees retired, Delphi discontinued health care benefits after age 65. A number of meetings were held describing a "Wage works pot" of $20,000 that was to be used to minimize the trauma caused by this change. This action would indicate that Delphi truly felt some responsibility for the past promises and contracts with their employees. This "pot" is now being eliminated along with the other benefits. However, during the numerous meetings that took place when this modification was originally made, an implication was again made that the health care and life insurance benefits would now continue until age 65.

For the numerous reasons cited above, I contend that Delphi broke its contract with its salaried employees and should be held accountable for that action. Delphi should not be allowed to opt out of this obligation and this motion should be rejected by the court.

Respectfully submitted by:

Patsy Long
978 Boulder Way
Kokomo, Indiana 46902
(765) 452-7243

cc:

Attn: Brian Masumoto
Office of the United States Trustee for the Southern District of New York
33 Whitehall Street
New York, New York 10004

Attn: General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098

Attn: John Wm. Butler, Jr.

Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive - Suite 2100
Chicago, Illinois 60606


Attn: Donald Berstein and Brian Resnick
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

Attn: Robert J. Rosenberg and Mark A. Broude
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022

Attn: Bonnie Steingart
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004

February 12, 2009

Honorable Judge Robert D. Drain:

As a widow for the past 15 years, I have worked very hard and have not really had the time to plan much for my retirement because of raising my sons and getting them an education as well as caring for my elderly parents until their passing. My husband and I had just built a new home and moved into it only for him to pass away suddenly 3 months later which we were just recently able to trace to his exposure to Asian Orange during his tour of duty for our country in Viet Nam. Since he was a small business owner and was not able to run his business because of being ill, we had to close it which also meant there was no huge inheritance to take care of me and the children.

At a time in my life where I expected to work towards paying my mortgage off and getting myself in a financial position where I might be able to actually retire and not have a lot of debt, my company told me I would be retiring in 42 days which has given me no time to prepare. I am struggling now just trying to pay for my house and car that would have been paid off had I been able to continue with my plan for myself for retirement. I can honestly say that I have no extra monies in my budget to pay for health care and life insurance which at age 58 is a time I need to especially have both. My city is listed as one of the top 3 dying cities in the country so I can't even sell my home and with so many people out of work, there are no jobs.

I am a proud woman and have worked since I was a little girl. While experiencing the death of my spouse, raising my boys, and caring for my elderly parents, I also managed to complete a Graduate Degree. It is just so unbelievable how in the last few months my entire life, my hopes, and my dreams are all being taken away by the company that I had put so much faith and hard work into for 30 years.

I am part of the Baby Boomer generation. We have all been hard and dedicated workers who believed in our companies and supported and built them. We trusted them to keep their word with us and trusted them with the funds for both our health care and life insurance and were secure in the thought that it would be there for us when we retired, only to realize that it wasn't. We also hired in as employees of General Motors and I find it hard to believe that there is not something out there somewhere in the fine print that does not still tie us to the mother company.

I would be curious to know how all of this is suppose to play out for our country and help with President Obahma's plans. This certainly is only going to make the economy even weaker. If people now have to dig into their savings, their bank accounts or investments the help pay for health care, that is monies that will not be going back into the economy to help stimulate it. I can only see this adding more momentum to the downward spiral that we are already experiencing.

**Please note that this letter is an OBJECTION and file it as a motion to object to document #14705.**

This document was filed with no previous warning to any of the retirees of Delphi Corporation and was only made known to us via letter on February 5, 2009 and gave us a mere twelve days to file our objections, which once again does not allow us any time to react.

Many of the most recent retirees of Delphi were retired **BY** the company and **NOT** by the choice of the employee. We were given no decision to make, just told we would be retiring on a specific date. We had little time to prepare for retirement, and little time to adjust to a significantly reduced income before we were hit with this latest development (loss of health care) which will cause financial hardship for every retiree. It will have huge impacts not only on the retirees, but also every community where retirees live.

With the current state of the economy, retirees who had saved for retirement in their Stock Savings Plans, have lost almost 40% of their savings. As you know, the cost of living has increased significantly in the last two years. This coupled with the loss of health care benefits would have a crippling effect on the lives of every retiree of Delphi Corporation.

It is my belief that there are other ways to restructure the company and still retain health care for retirees. Health care benefits are currently scheduled to stop at the age of 65 for all retirees. This cost is a decreasing cost to the company as each of us reaches that 65 age milestone.

Please know that each of the 15,000 retirees who will be negatively impacted by this action will be looking to you for your consideration when making the decision concerning Document #14705 dated February 4, 2009.

I sincerely hope that you will give this considerable thought before making your decision. Thank you and I pray that God will guide you through this process, especially when there are so many lives that will be affected.

## We ask you to REJECT this motion.