Honorable Judge Robert D. Drain,                                                                                            February 16th, 2009

I am providing this letter in objection to the Motion to Confirm Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care Benefits and Employer-Paid Post-Retirement Life Insurance Benefits for certain (A) Salaried Employees and (B) Retirees and their surviving spouses ("the Motion") filed by Delphi CORPORATION ("Delphi") Chapter 11, CASE NO. 05-44481 (RDD). I would like to present my employment history from which I can draw my objections to the Motion, secondly provide rebuttals to some of the opinions provided within the Motion.

I was a Salaried Employee with Delphi beginning August 1989 until I accepted a Separation Allowance Package effective February 1st, 2009, terminating, at the time, my disability benefits filed for on September 2008 that would have carried forth until September 2009, which places me in the category of the Pre-1993 Salaried Employees[1].

On September 22nd, 2008 I became disabled and filed for medical leave for disability. On December 8th, 2008, I receive a letter from Delphi Human Resource Manager sent by Mary Hutchinson, my position was "...identified for elimination." In that letter (Attachment "A") I was offered two options, (1) to accept the Delphi Separation Allowance Package, which provided for medical and dental insurance and retirement or (2) separate from employment, but remain on disability until September 2009 with the option to re-apply. I accepted the Separation Allowance Package on January 20th, 2009, and based on the conversation and correspondence by Mary Hutchinson, a week prior to making the decision, that I would keep my health and dental benefits until Social Security and Medicare is activated[2], which was the key reason for electing to take the Salary Separation Package over maintain the disability benefits. Also based on the Delphi Separation Allowance Plan (Attachment "A"), Delphi states that "...and a $2,000 payment (if the employee is not eligible to retire with Corporate contribution for health care in retirement at the time of separation)." has yet to be received, providing that I should receive health and dental

---

[1] the Motion, page 20, Section 38 (i)
[2] as in the Motion, page 22, "Active Salaried Employees Hired by GM Prior to 1993"

1

than 16 days, they are requesting in the Motion that you retract the legal and contractual obligation they entered into with me. I was not privy to the Motion at the time of agreeing to the Separation Allowance Plan, which is requesting to eliminate a benefit that I was told at the same time I would have going into retirement. This appears to demonstrate that Delphi had previous knowledge of the Motion and failed to disclose a relevant factor for my decision, which would have altered my decision to accept Delphi Separation Allowance Package.

Secondly, statements and opinions provided with in the Motion, such as "The projected cash costs associated with these programs would be saved if these programs were eliminated exceeds $70 million per year."[3] are projections and fail to provide an accurate accounting of the true savings. These figures can be overstated to entice the court in perceiving that there exists a large benefit to be had should the Motion be carried forward. Also, top of page 9 in the Motion, the estimated cash saving of $200,000,000 between 2009 and 2011 could be reduce by identifying appropriate priorities as defined by 11 U.S.C Section 507 paragraph 4a and the Amendments' provided Wage Priorities supported by 359 U.S 29 (1958) by the House and Senate, identifying employee health benefit plans as wage, increasing their priority above other creditors. This again demonstrates that the appropriate steps to find real solutions to the issues Delphi faces have not been thought out and they are grasping for the easy and quick fix.

Throughout the Motion, it is clear that Delphi has "...always retained the authority to modify or terminate these discretionary programs unilaterally...", yet they are spending time and moneys to request that the court take on the actions filed in the Motion. This demonstrates the inability of Delphi to make and enact "sound business" judgments and plans, as they clearly fail to execute sound business principals by they themselves terminating the coverage. This is brings into question and supports the argument that their projections in the Motion are unsound and should not be used in the decision making process to put into

---

[3] 1 Preliminary Statement page 3.

decree the Motion. Also, while GM is a primary customer to Delphi, they fail to provide other customer bases that are still operating in this market. Companies such as Toyota, BMW, Ford, Nissan, Caterpillar, and Harley Davison and the fact that they solely focus on the automotive industry and not include other business sector such as Health care and consumer electronics, provides a narrow view of the Delphi's business standing that cannot be used to accept the Motion.

Continuing forward based on the comments provided section 8 pages 7, it appears that they fail to examine other discretionary benefit programs, such as the corporate jet, executive compensation reduction except when mandated by the courts [4] saving the company nearly $70.5 million, and existing discretionary employee benefits such as a company provided vehicle allowance.

The Debtors clearly state opinion regarding the term of plan and the applicability of Section 1114 of the Bankruptcy code given that Section 1102 and 1103 provide for in 1114 and 1129(a)(13)[5], provided in the Motion on pages 24 and 25, as there is not basis by which they provide for such claim. It is clear that they failed to provide further option relating to the inapplicability of 11 USC Sec. 1114, as it is critical to the evaluation of the Motion. The impression provided on page 25, section 47 of the Motion, provide that payment of insurance benefits to retired employees a same as "...welfare plans.")" per 524 U.S 73, 79, which under TITLE 29—LABOR CHAPTER 18--EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM SUBCHAPTER I--PROTECTION OF EMPLOYEE BENEFIT RIGHTS Subtitle B-- Regulatory Provisions part 5 Section 1143(a) (1) -- administration and enforcement, clearly delineates between employee benefit plans, and welfare plans.

Also the case provided in regarding <u>Federated Dept. Stores, Inc.</u>, 132 B.R. 572, 574 section 1129(a) (13) discusses the creations of "...no new substantive rights to benefits for prepetition retirees...", by which it's not new substantive rights are requested, merely those provided within 1114, which are not new, but have been in existence for the duration for those retirees as defined in pages 22 and 23 of the Motion.

---

[4] http://www.crainsdetroit.com/apps/pbcs.dll/article?AID=/20080128/SUB/801280311/1033/-/-/delphi-executive-payout-cutback-a-victory-for-unions-many-say Delphi executive payout cutback a victory for unions, many say By Mark Bruno

[5] Title 11 Section 1114

3

Again in section 48 of the Motion page 26, regarding 130 B.R. at 875, there is no new obligation being imposed with regards to the retiree benefit plan, simply the adherence to the plan that has been in place in my case for over 19 years.

In rebuttal to Section 50 of the Motion, starting on page 26, it become obvious when the company has to have a judge step in an reduce executive compensation that they are clearly not using clear business judgment nor following the priorities as stated in 11 USC 507. Also, page 27 of the Motion, section 50, calls out the 363(b) (1), that requires "…some articulated business justification for using, selling, or leasing, the property outside the ordinary course of business." First one must agree that benefits provided for are "property". Secondly if one agrees that they are "property", then it can be argued that they are part of ordinary course of business by their own admission, as stated in the Motion on page 8 Section 11.

Section 52 of the Motion on page 28, clearly calls out a cost savings, but fails to clearly provide for sound business projections, to quantify the savings, that could similarly be achieved by restricting the executive compensation and other related employee benefits such as company car allowance and corporate jets. All of which could provide for "significant savings" to the Debtors' estates and stakeholders.

In closing, it is clear that throughout the Motion, the Debtors fail to provide substantiated projections, facts, and case law that would provide a foundation for the basis to accept the motion and enter into order the confirmation of the Debtors' authority to terminate Salaried OPEB.

Respectfully,

*[signature]*

Alicia Vertiz
632 Shelley Drive
Rochester Hills, Michigan 48073
248-299-1266

# DELPHI (Attachment "A")

Date: December 8, 2008

Subject: Delphi Separation Allowance Plan

From: Mary Hutchison
Delphi Product & Service Solutions
Human Resource Management

To: Alicia Vertiz

This letter is to inform you that, in connection with the Delphi Product & Service Solutions ongoing restructuring and transformation activity, your position has been identified for elimination.

Regular active salaried employees whose positions have been eliminated in connection with the restructuring and transformation activity are eligible for the Delphi Separation Allowance Plan, which includes a severance pay based on length of service and monthly base salary, along with other transition assistance, consisting of outplacement services and a $2,000 payment (if the employee is not eligible to retire with Corporate contributions for health care in retirement at the time of separation).

However, employees who are on approved disability leaves of absence at the time their position is identified for elimination have two options: (1) Accept the Separation Allowance Plan. An employee who selects this option will fully separate from Delphi, and will cease salary continuation or other disability benefits under any of the Corporation's benefit plans, programs, or policies (other than benefits under applicable workers' compensation laws); **or** (2) separate from employment, but remain on disability leave until such time as the disability leave ends in accordance with the terms of the applicable benefit program(s). Employees choosing option (2) will receive the applicable benefit payment(s) and other benefits (e.g., health care, life insurance, etc). Moreover, because their positions have been eliminated, such employees will not be eligible to return to work at the conclusion of the leave. Instead, employees will be offered the Separation Allowance Plan (or its equivalent) that is in effect at that time.

Because you are on an approved disability leave of absence at the time your position has been identified for elimination, you must decide whether to exit under the Separation Allowance Plan now, or to remain on disability leave of absence. The basics of the Separation Allowance Plan are outlined in the enclosed materials. If you choose to accept the Separation Allowance Program at this time, you must execute the enclosed Separation Allowance Plan Release of Claims Form and return it within 45 days of receipt. If you do not return the forms within 45 days, your disability leave of absence status will be unchanged.

If you have any questions or would like additional details, please contact your local Human Resources Manager, Mary Hutchison, at 248-813-3114.

ATTACHMENT A

## ADEA List

### Certification/Age Summary of Candidates
Human Factors
February, 2009

| Job Title Classification(s) | Ages of Candidates Selected | Number of Candidates Selected |
|---|---|---|
| Staff Product Engineer | 36 | 1 |
| Sr. Staff Research Scientist | 60 | 1 |

---

### Certification/Age Summary of Non Candidates
Human Factors
February, 2009

| Job Title Classification(s) | Ages of Non Candidates | Number of (Not Eligible or Selected) Candidates |
|---|---|---|
| N/A | | |

## POLICY PROVISIONS

### Eligibility
Separation Allowance Plan benefits are payable to U.S. employees compensated as regular or flexible service salaried employees, who are separated from employment as the result of an Eligible Termination which includes without limitation:
- Mutually Satisfactory Release;
- Certain Special Separations which may include:
    - The closing of an office or business location;
    - A reduction in force;
    - Downsizing;
    - Restructuring, reorganization or re-engineering of a business group, unit or department;
    - Job elimination; or
    - Other circumstances Delphi determines which may or may not be characterized as a Limited Program of Terminations

Separation Allowance Plan benefits are not payable in the event of employment termination as a result of:
- Retirement;
- Quit (which includes an employee's failure to accept a suitable offer of employment);
- Discharge (for personal misconduct);
- Voluntary termination of employment unless the termination results from participation in a special incentive separation program which treats the separation as an Eligible Termination.
- Transfers between the Corporation and any of its wholly owned or substantially wholly owned domestic and foreign subsidiaries or other entity owned by Delphi;
- Separation arising out of outsourcing, the sale of a corporate unit, merger or other combination, spin-off, reorganization, liquidation, dissolution, or other winding up involving Delphi where the employee continues or is offered the opportunity to continue employment;
- A court decree;
- Death;
- Release due to unsatisfactory performance while in the Orientation and Development period;
- Final Release.

### Severance Pay
Eligible Employees who <u>do not</u> sign a Release of Claims will be eligible to receive one (1) month's base pay.

Eligible Employees who <u>sign and do not</u> revoke a Release of Claims will be eligible to receive Severance Pay according to the following schedule:

| Length of Service | Months of Severance Pay |
|---|---|
| 0 but less than 5 | 3 months |
| 5 but less than 10 | 4 months |
| 10 but less than 15 | 6 months |
| 15 but less than 20 | 8 months |
| 20 but less than 25 | 10 months |
| 25 or more | 12 months |

Severance Pay will be:
- Based on the employee's unbroken length of service, calculated on full, 12 month, years of service.
- Calculated on the last monthly base salary except for those employees returning to "regular active" from "flexible service" status. An Employee who, at the time he or she is notified of their Eligible Termination, was a "flexible service" employee for less than 60 days and who, immediately prior to being classified "flexible service", was a "regular active" employee will be returned to "regular active" status for purposes of determining Severance Pay.
- Paid in semi-monthly payments based on the above table
- Taxable

- Severance Payments will begin the first regularly scheduled payroll following the date of separation if Human Resources received the signed Release of Claims and the seven-day revocation period has expired prior to the payroll processing cutoff. Otherwise, the Severance Payments will begin on the first available payroll processing date following receipt of the signed Release of Claims and expiration of the seven-day revocation period
- Payments may be reduced by any amount owed by the Employee to the Corporation.
- Severance Payments are issued as payroll live check, direct deposit will discontinue

### Other Transition Assistance

Other Transition Assistance consists of (1) the opportunity to utilize Delphi-provided outplacement services to assist employees in obtaining employment outside the Corporation and (2) a $2,000 payment included in the last regularly scheduled payroll check which the Employee, at his or her discretion, may use toward COBRA health care continuation coverage through Delphi if the employee is not eligible to retire with Corporate contributions for health care in retirement at the time of the separation. Employees who are eligible to retire with corporate contributions for health care in retirement at the time of the separation are not eligible for this $2,000 payment. The local HR Representative will assist in scheduling outplacement service. Use of the outplacement service should commence within sixty days of separation and will generally be limited to six months in duration.

- Eligible Employees who sign a Release of Claims will receive Severance Pay and Other Transition Assistance.
- Eligible Employees who do not sign a Release of Claims will not be eligible for Other Transition Assistance.

### Vacation

- During Transformation employees impacted by involuntary programs will vest vacation on a monthly basis. Employees may use or receive payment for vacation based on last month worked. Example: Separation effective 5/1/2009, vacation vested four (4) months or 33.3%. Vacation for an employee with 5 yrs service = 120 hours, (120 x .333=39.96) hours vested, round to nearest whole or 40 hours of entitlement.
- Retirement-eligible employees will receive 100% of their annual vacation entitlement, if effective date of retirement is on or after March 1. For retirements effective February 1, the maximum allowable vacation days is equal to number of working days for the month of January.
- Employees impacted by the involuntary programs will be allowed to revoke their deductions for purchased days with their final regularly scheduled paycheck. Employees may use or receive payment for days purchased through payroll deductions; however no payment may be received after the plan year. Employees who have used more days than deducted through payroll will have the remaining dollars deducted from their last regularly scheduled paycheck. Vested vacation must be utilized prior to purchase days.

### Company Car Allowance

- Company car allowances will be discontinued at the end of the pay period in which the last day of work occurred.

### Tuition Assistance

- The tuition assistance program is suspended for 2009, employees will not be eligible for reimbursement of courses started after January 1, 2009.

### Incentive Compensation
- Employees must be on the active roll on date of the incentive compensation payout to be eligible to receive incentive compensation. Eligible employees who retire or accept a separation payment under Separation Allowance Plan guidelines prior to the payout maintain their eligibility to receive a prorated award.

### Flexible Compensation Payment
- The Flexible Compensation payment program is suspended for 2009 and will not be paid.



### Benefits
The information provided on the next two pages is intended as a guide to the potential impact the separation may have on benefits provided under the plans identified. Employees must contact the appropriate plan administrator for complete details.

| BENEFIT IMPACT FOR SEPARATED EMPLOYEES NOT ELIGIBLE TO RETIRE AND THOSE ELIGIBLE FOR DEFERRED VESTED RETIREMENT ||||
|---|---|---|---|
| This material presents general information only and is based on policy and benefit plan provisions in effect as of this date. It is not intended to nor does it provide all details about each program and policy. Complete descriptions of each are contained in official plan documents that are the governing plans over other oral or written statements. Furthermore, Delphi Corporation reserves the right to amend, change, or terminate any program, benefit, or policy at any time. Only the Board of Directors, or its delegate, has this authority. The information contained herein and any specific item described does not imply any guarantee. ||||
| **Benefit Plan/Program** | **Benefit Plan Impact for Employees with a Length of Service Date on or before 12/31/00** | **Benefit Plan Impact for Employees with a Length of Service Date on or after 1/1/01** | **Contact Numbers for Employee Questions** |
| Health Care | Coverage terminates at the end of month of separation provided Employee contribution, if any was paid. COBRA or Conversion available. * | Coverage terminates at the end of month of separation provided Employee contribution, if any was paid. COBRA or Conversion available. | National Benefit Center 1.866.335.7444. The NBC will send out the appropriate paperwork |
| Health Care Spending Account | Contributions for remainder of the calendar year are taken from final active paycheck and are available for claims for services in that year. Claims can be submitted through 3/31 of the following year. | Contributions for remainder of the calendar year are taken from final active paycheck and are available for claims for services in that year. Claims can be submitted through 3/31 of the following year. | National Benefit Center 1.866.335.7444 |
| Dependent Care Spending Account | Contributions terminate with final active paycheck and balance of account is available for claims in that calendar year. Claims can be submitted through 3/31 of the following year. | Contributions terminate with final active paycheck and balance of account is available for claims in that calendar year. Claims can be submitted through 3/31 of the following year. | National Benefit Center 1.866.335.7444 |
| Basic Life Insurance | Coverage terminates at end of month of separation. Conversion available.* | Coverage terminates at end of month of separation. Conversion available. | National Benefit Center 1.866.335.7444 |
| Optional Life Insurance | Coverage terminates at end of month of separation. Conversion available.* | Coverage terminates at end of month of separation. Conversion available. | National Benefit Center 1.866.335.7444 |
| Dependent Life Insurance | Coverage terminates at the end of the month of separation. Conversion available.* | Coverage terminates at the end of the month of separation. Conversion available. | National Benefit Center 1.866.335.7444 |
| Personal Accident Insurance | Coverage terminates at the end of the month of separation. Conversion not available.* | Coverage terminates at the end of the month of separation. Conversion not available. | National Benefit Center 1.866.335.7444 |
| Sickness & Accident Benefits | Coverage terminates at the end of the month of separation. No additional coverage is available.* | Coverage terminates at the end of the month of separation. No additional coverage is available. | National Benefit Center 1.866.335.7444 |
| Extended Disability Benefits | Coverage terminates at the end of the month of separation. No additional coverage is available.* | N/A | National Benefit Center 1.866.335.7444 |
| Long Term Disability | N/A | Coverage terminates at the end of the month of separation. No additional coverage is available. | National Benefit Center 1.866.335.7444 |
| Supplemental Extended Disability Benefits | Coverage terminates at the end of the month of separation. No additional coverage is available.* | N/A | National Benefit Center 1.866.335.7444 |
| Retirement Program | Part A - If the employee has 5 or more years of credited service they are eligible for a deferred vested monthly retirement benefit at age 65 or earlier on an age reduced basis. The employee should check on retirement eligibility.<br><br>Part B – If the employee has 5 or more years of credited service they can elect to leave their contributions in Part B and commence receiving a monthly retirement benefit at age 65 or earlier on an age reduced basis. The employee also has the option of withdrawing all their contributions plus interest to the date of such election. | Retirement Accumulation Plan – If the employee has 5 or more years of credited service they have the option of leaving their assets in the Plan where they will continue to earn interest credits each year until they take a distribution, or take the balance with them, or roll it over into an IRA or another employer's plan.<br><br>*See attached PPA Notice | Fidelity Benefit Center 1.877.389.2374 |
| Stock Options | Employee retains vested options, with three (3) years to exercise. | Employee retains vested options, with three (3) years to exercise. | Contact Salomon Smith Barney 1.877.4Delphi |
| Savings-Stock Purchase Program (Renamed SRSP effective 10-1-08) | Employee may elect to receive full distribution of all assets, or if assets are greater than $5,000, they may be left in program until age 70 1/2. Employee retains ability to manage account. Employee with less than 3 years forfeits Delphi contributions that are not vested. | Employee may elect to receive full distribution of all assets, or if assets are greater than $5,000, they may be left in program until age 70 1/2. Employee retains ability to manage account. Employee with less than 3 years forfeits Delphi contributions that are not vested. | Fidelity Benefit Center 1.877.389.2374 |
| New Vehicle Purchase Program | Program eligibility dependent on vendor program. Generally, must be an active Employee. | Program eligibility dependent on vendor program. Generally, must be an active Employee. | Call the manufacturer 800 number for discount. |

*Generally, for benefit impact purposes separation means the last day worked.*

*Health, benefits*
*Verify contract*

| Benefit Plan/Program | Benefit Plan Impact | Contact Numbers for Employee Questions |
|---|---|---|
| | **Benefit Impact For Employees Eligible to Retire with a Length of Service Date on or Before 12/31/2000** (Does Not Include Employees Eligible for a Deferred Vested Retirement) This material presents general information only and is based on policy and benefit plan provisions in effect as of this date. It is not intended to nor does it provide all details about each program and policy. Complete descriptions of each are contained in official plan documents that are the governing plans over other oral or written statements. Furthermore, Delphi Corporation reserves the right to amend, change, or terminate any program, benefit, or policy at any time. Only the Board of Directors, or its delegate, has this authority. The information contained herein and any specific item described does not imply any guarantee. | |
| Retirement Program | Eligible employees for retirement must contact the Fidelity Retirement Center to begin processing of benefits, recommendation is to apply 60 to 90 days in advance of effective date | Fidelity Benefit Center 1.877.389.2374 |
| Health Care ✗ (circled) | Election of coverages available (including dental) if hired prior to 1/1/93. Extended Care Coverage (ECC) is a separate election in retirement. Retiree must make a timely decision regarding the ECC election. Waiver or refusal of coverage may result in permanent loss of opportunity to enroll in ECC. Monthly contributions may apply. Corporate contributions in retirement are not applicable to Employees hired after 1/1/93. COBRA or conversion is available. Options may change when retiree becomes Medicare eligible. | National Benefit Center 1.866.335.7444 |
| Health Care Spending Account | Contributions for remainder of the calendar year are taken from final active paycheck and are available for claims for services in that year. Claims can be submitted through 3/31 of the following year. | National Benefit Center 1.866.335.7444. |
| Dependent Care Spending Account | Contributions terminate with final active paycheck and balance of account is available for claims in that calendar year. Claims can be submitted through 3/31 of the following year. | National Benefit Center 1.866.335.7444 |
| Basic Life Insurance | Coverage of 1X average base salary (ABS) will revert to 2X ABS at retirement. Coverage of 2X ABS reduces according to rules in effect on last day worked. | National Benefit Center 1.866.335.7444 |
| Optional Life Insurance | Coverage, if in force while active, may be continued in retirement at retiree's cost until age 75. This may only be decreased or cancelled. Reductions of 10% per year from age 66 to cancellation at age 75. Conversion is not available. | National Benefit Center 1.866.335.7444 |
| Dependent Life Insurance | Coverage, if in force while active, may continue in retirement at the retiree's cost until the age of 70. This may only be decreased or cancelled. This coverage terminates when the retiree reaches age 70. Conversion is not available. | National Benefit Center 1.866.335.7444 |
| Personal Accident Insurance | Coverage, if in force while active, may be continued in retirement at the retiree's cost. Maximum coverage reduces to $150,000 at age 70. | National Benefit Center 1.866.335.7444 |
| Sickness & Accident Benefits | Coverage terminates at the end of the month prior to retirement. No additional coverage is available. | National Benefit Center 1.866.335.7444 |
| Extended Disability Benefits ✗ | Coverage terminates at the end of the month prior to retirement. No additional coverage is available. | National Benefit Center 1.866.335.7444 |
| Supplemental Extended Disability Benefits | Coverage terminates at the end of the month prior to retirement. No additional coverage is available. | National Benefit Center 1.866.335.7444 |
| Savings-Stock Purchase Program (Renamed SRSP effective 10-1-08) | Employee may elect to receive full distribution of all assets, or, if assets are greater than $5,000, they may be left in program until age 70 1/2. Employee retains ability to manage account. Employee with less than 3 years participation forfeits Delphi contributions that are not vested. | Fidelity Benefit Center 1.877.389.2374 |
| Stock Options | Employee retains vested options, with five (5) years to exercise or end of plan whichever comes first. | Salomon Smith Barney 1.877.4Delphi |
| New Vehicle Purchase Program | Program eligibility dependent on vendor program. Generally, must be an active Employee. | Call the manufacturer 800 number for discount. |



**Dr. Alicia Vertiz,** C.P.E.
Senior Staff Research Scientist / Manager
Human Factors-Ergonomics, Advanced Development
Group

World Headquarters
M/C 483.400.121
5725 Delphi Drive
Troy, Michigan
48098-2815
USA

Tel:   [1] 248.813.3080
Fax:   [1] 248.813.3085
Pager:[1] 810.870.2164
Email:
alicia.m.vertiz@
delphiauto.com

cc - Delphi Co - LEGAL.
5725 Delphi DRive
TROY - MI 48098 -