February 12, 2009

The Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:  DELPHI CORPORATION, et al., Case No. 05-44481 (RDD)

OBJECTION OF ROBERT W. DICKENS TO DEBTOR'S MOTION TO CONFIRM
DEBTOR'S AUTHORITY TO TERMINATE EMPLOYER-PAID POST-RETIREMENT
HEALTH CARE AND EMPLOYER-PAID POST-RETIREMENT LIFE INSURANCE
BENEFITS FOR CERTAIN (A) SALARIED EMPLOYEES AND (B) RETIREES AND THEIR
SURVIVING SPOUSES
(SALARIED OPEB TERMINATION MOTION)

Dear Judge Drain,

I am a 54-year old salaried retiree of Delphi Corporation with a wife of age 44, son age 9, and daughter age 7. At this time we are heavily dependent on Delphi retirement benefits including health care and life insurance.

I object to the Salaried OPEB Termination motion on several grounds.

### I. The motion comes against the backdrop of factors that in my opinion and belief are true and which in the aggregate should shock the judicial conscience. To wit:

1) A questionable if not fraudulent spin-off of Delphi from General Motors where among other things General Motors - Delphi's nearly exclusive customer, fixed Delphi prices while on other fronts agreeing to fund pension programs if Delphi ran into financial difficulty.

2) In Delphi's formative years corrupt corporate management stripped millions from the Delphi coffers while "cooking the books", eventually running afoul of the SEC and the DOJ incurring liability on both fronts, as well as driving the company into alleged bankruptcy.

3) During the formative years Delphi gutted the North American facilities while investing billions of dollars overseas and across our southern border in operations that remain profitable yet due to creative corporate structuring the assets of these operations are not part of the bankruptcy calculus.

4) During the course of the bankruptcy, billionaire investors in their bid for control of the company agreed to exit financing, only to breach their agreement in the same week - damaging Delphi and thereby putting the pension program at risk. (Delphi has filed a suit against the investors for damage).

5) Over the course of these events special consideration has been made by the SEC, IRS, and ERISA in corporate maneuvers that allowed Delphi to encourage and coerce salaried employees to take early retirements and incentives at an age too early to be eligible for Medicare, with nothing else to rely on for health care and life insurance but the company plan.

6) General Motors, and Delphi - through payments by GM, either have received or are in line to receive billions of taxpayer dollars in federal bailout money without regard to the retirement programs that thousands are relying on. On other fronts Wall Street billionaires are receiving bonuses and billions in bailout money despite their dismal performance.

7) On equitable consideration - who is better able to bear the burden of health care for the generation that is caught between the "defined benefit - company plan" era and the era of "defined contribution" plans? The billionaires and corporations, or thousands of individuals like me?

On the whole, the issues of piercing the corporate veil with respect to the GM / Delphi spin-off, estopple in the face of corporate malfeasance during and after the spin-off to the eventual detriment of the salaried pension plan, estopple in the face of Delphi coercing a large class to retire prior to age 62 in reliance of the retirement program, damages on the part of the balking investors, and public policy considerations in the current political climate - all seem to me to be fertile ground upon which to take a stand in opposition to Delphi's motion to terminate post-retirement salaried benefits.

I also understand that the 6th circuit has addressed whether an employer may terminate post-retirement benefits in a case involving General Motors but I do not know the particulars and do not have the wherewithal to find further at this point.

I respectfully ask that you deny Delphi's motion to confirm Delphi's authority to terminate its post-retirement health care and insurance benefits.

## II. The objection deadline is too short to allow a harmed class sufficient opportunity to make a meaningful objection and as applied is a violation of their Due Process.

There are over 15,000 individual salaried retirees scattered throughout the nation who have entered retirement in reliance on the Delphi retirement plan. Terminating the health care and life insurance benefits of these people will impose severe hardship causing harm. The effected individuals are neither organized nor represented by counsel in these proceedings. Notice of the motion was sent on February 5, 2009 and the deadline for filing an objection is February 17, 2009, allowing a scant 12 days to organize and respond.

In my case, just covering the lost health care alone will take 52 percent of my age-reduced retirement pension. Add in the house payment and I will be approximately $30.00 short. This is the making of a true hardship. I have not been able to find suitable employment since separating from Delphi on May 13, 2008. Similar circumstances lie before many if not most of the calss.

 I prepared for my separation from Delphi by acquiring a law degree, graduating in the top 15% of my class at MSU College of law. Not only have I been unable to find suitable post-retirement employment, but despite the legal education I am not equipped to deal with the complexity of the issues at hand involving Bankruptcy, Corporate Law, Employment Law, and ERISA; and massive corporations and law firms to defend my case.

 Further, my attempts to secure counsel in this matter have been unsuccessful to date. In my search so far the issues are too complicated for plaintiff-oriented firms, while large firms are unwilling to participate and jeopardize relationships with their corporate clients. Further, in this complex matter I fear the cost of representing individual salaried employees is prohibitive, even under a contingency arrangement and neither have I seen representation on behalf of the Delphi retirees who have filed objections up to this point.

 In a court proceeding "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v Elridge 424 U.S. 319 (1976). With the complexities of the world's largest bankruptcy impacting so many areas of law and with so many people facing such harsh consequences, twelve days notice to a class of people who will suffer serious hardship should this motion carry can not be called meaningful in time. Without capable representation on the part of the class, neither can the manner be meaningful.

 If a hearing on this motion must proceed then I respectfully ask that you provide sufficient time for the class to respond, or in the alternative appoint counsel to represent the salaried Delphi retirees, or both.

Thank you for your consideration,


Robert W. Dickens
1181 Fernridge Avenue
Grand Rapids, Michigan 49546