685 Rambling Dr.
Saginaw, Mich. 48609
February 16, 2009

The Honorable Robert D. Drain
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY   10004-1408

Re:    DELPHI CORPORATION, et al., Case No. 05-44481  (RDD)

OBJECTION OF JAMES L. MURPHY TO DEBTORS' MOTION TO CONFIRM
DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID-POST-RETIREMENT
HEALTH CARE BENEFITS AND EMPLOYER-PAID-POST –RETIREMENT LIFE
INSURANCE BEBEFITS FOR CERTAIN (A) SALARIED EMPLOYEES AND (B)
RETIREES AND THEIR SURVIVING SPOUSES
(SALARIED OPEB TERMINATION MOTION)

I, James Murphy, am a salaried retiree of Delphi Corporation.  I have five objections to the Salaried OPEB Termination Motion:

1.     I object to the short time to the Objection Deadline.  Employees and retirees were notified of this motion on February 5, 2009 and the Objection Deadline has been set as February 17, 2009.   Retirees were notified by a FedEx package delivered to their home.  It is obvious that the Debtors' have had their army of attorneys working for some time preparing the Motion.  It is only fair to offer the retirees sufficient time to prepare an objection to the motion.  This has been one of the coldest and snowiest winters that the midwest and northeast United States has experienced in the past fifty years.  Many retirees are away from their home and spending time in a warmer climate (i.e., Florida, Arizona, etc).  Some may be away for a week or two and others for a longer time period. Thus many retirees may not receive notification of the motion on a timely basis and may not be able to file an objection before the deadline.  Judge Drain, I am asking you to extend the Objection Deadline for this motion to May 1 or later to allow all affected parties adequate time to prepare their objections.


2.     I object to the termination of Salaried OPEB for Health Care and Life Insurance.  Please note the following:
    a)  Initially, Delphi Salaried Retirees were granted Health Care Benefits for life when the separation from GM occurred.  A few years later, Dlphi changed their policy such that retiree Health Care Benefits would cease at age 65 when the retiree became eligible for Medicare.  This revised policy also provided for a $10,000 or $20,000 (depending on retirement date) Retiree Health Reimbursement Account (RHRA) to help with medi-gap insurance or other health care expenses after their Delphi Health Care Benefits were terminated at age 65.  That policy change alone was a great cost reduction benefit to Delphi, significantly reducing their "legacy" costs.

    b)  Since Delphi's 2005 bankruptcy filing, Delphi has already made changes to the Salaried Retiree Health Care benefits.  These changes have significantly impacted the Salaried Retirees, while the UAW represented Retirees have had no such impact.  The Salary Retirees have no "seat at the table" in the Bankruptcy proceedings, unlike the UAW which has managed to negotiate little or no changes to the Hourly Retiree benefits through negotiations with the Delphi and General Motors. General Motors has previously agreed to "take over" the Delphi Hourly Retirees Plan.  It seems extremely unethical and immoral that the Delphi Salaried Retirees that spent nearly their entire career ( 34 of  42+ years in my case) as an employee of General Motors are being treated so unfairly.

    c)  As the Debtor mentions in their motion, one of the big factors that is affecting increasing health care costs is "the aging population of the United States."  The 2006 termination of Salary Retiree Health Care Benefits at age 65 eliminated the effect of an aging population on Delphi's health costs.  It will cost Delphi no more if I live to age 90 than if I live to age 66 with that policy change.  Any further reduction in Retiree Health Care Benefits should not be approved.   Elimination of the Retiree Health Care benefits will place a significant burden on a group of people with the least ability to recover financially, since they are no longer employed.

    d)  As you know, General Motors spun off its component group operations resulting in the creation of Delphi in 1999.  The spin off, though hyped as great opportunity for the new company and its employees, was obviously flawed in its creation and financed in a way that the company would not be viable long term.  This is evidenced by the fact that the company filed for bankruptcy less that 6 years after start up in a period of exceptional vehicle sales (14 – 16 million annual sales during the period).  It seems ironic that General Motors is now in discussions with Delphi to "take back" some or all Delphi North American operations that supply General Motors.

3.     I object to the termination on the grounds that is not "fair and equitable" with respect to how the Delphi hourly retirees and current workers have been handled.  They have lost no health care coverage and have, at most, been made subject to slightly higher co-payments.  This was done by transferring their "legacy costs" back to General Motors.  GM also has recently made changes to their salary retiree health care benefits but provided additional pension income to offset a portion of the cost.  As you may or may not know, most Delphi employees were given no choice as to whether to stay with GM or go with Delphi.  In fact, many were prevented from moving back to GM as their skill set was deemed to be "critical" to Delphi.  Had the Delphi hourly retirees and current workers been subject to the same new policy that is being proposed for the salary workers, I sincerely believe this change would not have even been considered.

4.     I object to the termination as it is presented in the <u>letter dated Feb 5, 2009</u> to Delphi Salaried employees from John Sheehan and Kevin Butler, and the accompanying <u>Employee Questions and Answers dated Feb 2009.</u>

- The letter states that pay "bonus" plans will be suspended, reduced or re-timed for later in 2009 **"BASED UPON MARKET CONDITIONS"**.
- The Q&A question #9 asks if the post retirement benefits will be reinstated when the "**BUSINESS OUTLOOK IMPROVES**" ?  The answer is "**No… it is necessary for Delphi to discontinue these plans permanently .**"
- Isn't it ironic …. and very unfair…. That bonus plans **CAN** be reinstated when things improve, but the retirement benefits **CANNOT** be reinstated when things improve.
- Or, looking at this from a slightly different angle:  the previous company leaders  (who are now retired) that made the decisions that kept the company profitable during hard times are **permanently damaged**, but the current set of leaders who are unable to make these good decisions during hard times are only **temporarily damaged**.  This is unfair and unethical !!

5. I would like the opportunity to provide a better objection to the Debtors' motion, but I do not have an army of accountants and lawyers, and I need more time than is allowed by the unreasonably short notice.  Judge Drain, I am asking you again to extend the Objection Deadline for this motion to May 1 or later to allow all affected parties adequate time to prepare their objections.

Honorable Robert D. Drain, thank you for the opportunity to share my views and raise my objections to this swift motion by the debtor. The debtor needs our help and we can help, as we did for many years as employees. My objections are intended to raise a point of view of the people (United States Citizens) personally affected by this motion in the context of very difficult financial times for not only the debtor but for 15,000 retirees.

Thank you,

*James L. Murphy*
James L. Murphy

Per the instructions in the referenced motion, this written **NOTICE OF OBJECTION BY James L. Murphy**
1. Is being filed with the bankruptcy court as a word document (.doc) on a 3.5 inch disk
2. Is being submitted as a hard copy directly to the Honorable Robert D. Drain at:
   United States Bankruptcy Court for the Southern District of New York
   One Bowling Green
   Room 610
   New York, New York 10004

I have also caused copies to be served on the following parties via first class mail on February 16, 2009.

| | |
|---|---|
| Delphi Corporation | Skadden, Arps, Slate, Meagher & Flom LLP |
| Attn: General Counsel | 333 West Wacker Drive |
| 5725 Delphi Drive | Suite 2100 |
| Troy, MI  48098 | Chicago, IL  60606 |
| | Attn:   John W. Butler, Jr. |