February 10, 2009



United States Bankruptcy Court
One Bowling Green
New York, NY 10004

Attn: Honorable Judge Robert D. Drain

Ref:
Delphi Corp Case # 05-44481 filed October 8, 2005
Document # 14705 to Cancel OPEB (Life & Health Insurance Benefits) for Salaried Retirees

Dear Judge Drain:

This letter is to express my concerns with Document #14705 filed by Delphi Corporation on February 4, 2009 asking the court to cancel life and health insurance benefits (OPEB) for over 15,000 people who are retirees of Delphi Corporation.

**Please note that this letter is an OBJECTION to that document and file it as a motion to object to document #14705.**

This document was filed with no previous warning to any of the current employees and retirees of Delphi Corporation and was only made known to us via letter on February 5, 2009 and gave us a mere twelve days to file our objections. The company's notification letter states that this will absolutely happen, so they either already have the court's approval or they think the court has no authority to block or delay this action. Even so, I must file my objection as I am sure many others will also do.

With the current state of the economy, retirees who had saved for retirement in their Stock Savings Plans, have lost 40 – 60 % of their savings. As you know, the cost of living has increased significantly in the last two years based upon rising energy costs alone. This coupled with the loss of health care benefits would have a crippling effect on the lives of every salaried retiree of Delphi Corporation.

It is my belief that there are other ways to restructure the company and still retain some level of life insurance and health care support for salaried retirees. Delphi lost an average of $4 billion each of the last 4 years. I'm sure they have done the financial studies of how much could possibly be saved with all the possible initiatives. This initiative (terminating our benefits) seems to be worth $200 million over 3 years or $67 million per year. That's a drop in the bucket compared to the $4 billion. So what else are they doing? As stated in the motion "On March 31, 2006 the Company outlined the key tenets of a transformation plan that it believed would enable it to return to stable, profitable business operations. The Debtors stated that they needed to focus on five key areas: first, modifying the Company's labor agreements…" What progress has been made in these three years on this issue? I think, if they had gone aggressively after the bigger ticket items (hourly wages, benefits, etc.), they might not have needed to do this to us at all.

1

I am not an attorney but there must be something I will call an "implied contract" that a court or jury would say carry as much or more weight as the company's reserve clause allowing them to "amend, modify, suspend, or terminate..." Repeatedly, over the past 50 years, whenever the company and the union negotiated some new or expanded benefit for the hourly folks (health care, paid holidays, etc.), the company passed it on to the salaried folks, to be fair. Isn't that an implied contract, and over the years, haven't they essentially promised us the same or similar benefits as they negotiated with the union. And didn't they use their superior benefit plans as a powerful recruiting tool when they got all of us to come to work for GM? If we salaried workers had thought it could ever come to this - termination of the plan - as opposed to amend and modify slightly over time, I think we would have demanded they change the wording of the reserve clause, even if we had had to form a union to protect our rights. Because the company's actions over time created an implied contract, a court or jury should not allow the company to make a significant benefit change to salaried retirees unless it is consistent with changes to the hourly contract.

Please know that each of the 15,000 + retirees and soon-to-retire, who will be negatively impacted by this action, will be looking to you for your consideration when making the decision concerning Document #14705 dated February 4, 2009.

## We ask you to REJECT this motion.

Sincerely yours,

Steven L. Hull
1022 Villa Vista Pl
Dayton, Ohio 45458
(937) 885-7059

Cc: Dorothy Li
    Courtroom Deputy

2