Official Form 20A
(12/03)

PAGE 1 of 3

# United States Bankruptcy Court
## Southern District Of New York

---------------------------------x
In re                            :
DELPHI CORPORATION, et al.,      : Case No. 05-44481 (RDD)
Debtors.                         : Chapter 11
                                 : (Jointly Administered)
                                 :
---------------------------------x

Address: Delphi Corporation
5725 Delphi
Drive, Troy, Michigan 48098

RECEIVED
FEB 17 2009
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

**NOTICE OF OBJECTION BY JEROME E. BIERSACK, CURRENT DEBTOR RETIREE, TO "MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 363(b)(1), AND 1108 CONFIRMING DEBTORS' AUTHORITY TO TERMINATE EMPLOYER-PAID POST RETIREMENT HEALTH CARE BENEFITS AND EMPLOYER-PAID POST-RETIREMENT LIFE INSURANCE BENEFITS FOR CERTAIN (A) SALARIED EMPLOYEES AND (B) RETIREES AND THEIR SURVIVING SPOUSES ("SALARIED OPEB TERMINATION MOTION")",** Document #14705 filed February 4, 2009 and delivered to Jerome E. Biersack on February 5, 2009.

I, Jerome E. Biersack, have filed written papers with the court to object to said motion prior to the date in the motion of February 17, 2009 at 4:00PM and per all requirements stated. I, Jerome E. Biersack, would like the court to consider my views on the motion and consider this as an objection to the motion. My views and objections for consideration are as follows:

- I *object* to the Debtors **February 17, 2009 date** set for objections to be submitted. From the date of receipt of the motion (February 5, 2009) and having NO prior knowledge of its content, that leaves 6 working days to develop and submit an objection (Presidents day is February 16, 2009). That is insufficient time to research and form a well-refined objection. It is clear that the Debtors and their attorneys had spent considerable time in preparing the document sent out on February 4, 2009. Since the "Retiree Group" is the only stakeholder negatively impacted by this Motion, it would only be fair to extend the deadline for filing an objection.

- I *object* to the Debtors *selection of termination* of the post-retirement health and life insurance benefits (referred in the motion as "Salaried OPEB") as the only option. Other options that were also defined in the benefits offerings while employed, and when retired were to amend or to modify the Plan. Since the "Retiree Group" has NO representation in the Bankruptcy proceedings, it is not known whether these options were also investigated. Over the years, the employee funding participation has continued to increase to help in offsetting increasing health care costs. In 2006, the debtor already "Modified" the Retiree health care benefits program for all Retirees at age 65. At 65, all health care benefits were eliminated with the exception of a one time funding of a "Health Reimbursement Account" for each retiree, to be set up to draw down on miscellaneous health care costs. This Motion also seeks to eliminate those accounts. As the Debtor states in their Motion, one of the reasons for proposing their total action is because "OPEB obligations will continue to increase due to, among other things, medical advancements that increase life span, the increasing costs of medical treatment and prescription drugs and the aging population of the United States." (See page 8) Once a retiree reaches 65 the health care costs to the Debtor will NOT INCREASE. As it is today, it will not matter if I am 65, 75 or 90 the Debtors cost would be exactly the same, which is the initial funding of the "Health Reimbursement Account".

- I *object* to the Debtors ***termination of Salaried OPEB for current retirees*** who were forced to retire or chose to retire based on personal financial situations and plans that included debtor commitments at the time of retirement. Almost since the Company was formed, the debtor chose to retire people for short term cost savings with a commitment to retirement payment, health care and insurance. With the many years that GM and also Delphi have supplied health care benefits to its "Retiree Group" it has in essence become an "Implied Contract". The proposed medical and insurance benefits in retirement table, page 22 and 23 in the motion, are not what were offered when retirement decisions were made. When I agreed to retire, I believed I had earned the Benefits that were proposed to me when I left the Company after 30+ years of service (over 27 years with GM). Shareholders and suppliers have assumed certain risks for continuing to do business in light of the Debtors position, whereas the retirees have had no choice in the matter. And again, the group being harmed financially is not represented by anyone in the bankruptcy proceedings that can determine whether or not this is reasonable or necessary for emergence from bankruptcy.

- I *object* to the Debtors ***March 31, 2009 termination date.*** This is not enough time under the current economic conditions for current retirees to accumulate the funds to accommodate this extra financial burden. Further, it has only been less than two months since each active employee, and every retiree selected his or her choices for health and benefit coverage for the calendar year 2009. It is a process that has taken place every October and November for many years at GM and at Delphi.

- I *object* to the Debtors ***claim, page 24 in the motion, that section 1114(d) of the Bankruptcy Code is inapplicable.*** Salaried retirees are not covered by a collective bargaining agreement and this is not a welfare plan as noted in the motion. GM provided the debtor OPEB funds when it was spun off in 1999 to cover those salaried employees with GM service. Many of the salaried employees who were transferred to Delphi at its inception had more than 25 years of service with GM, some more than 30. I had more than 27 years. The debtor needs to provide transparency to the GM commitment and funded OPEB, especially to those who worked for GM and were not given a choice as to whether they stayed with GM or were moved to Delphi. The Debtor has asked for assistance and received from GM, support for added finances for the hourly retirement programs. Many retirees felt that the spin-off from GM in 1999 was flawed from the start, and was financed and set up in such a way so that long-term viability was improbable. This is evidenced in the fact that the Company, Delphi filed for Bankruptcy less than six years after startup. The unions representing the hourly workers at Delphi were solely on Delphi contracts. The fact that GM has now provided assistance to the Debtors unions indicates a level of responsibility to past GM workers whether they were hourly or salary. It also would indicate that GM has a degree of culpability in the issues that have confronted the Debtor organization. This is further evidenced in the recent discussions between GM and Delphi about GM reacquiring certain Delphi locations. Again the "Retiree Group" is not represented by anyone to refute or agree with Delphi's claims in the motion. Because of this involvement with GM, both past and present, I take great exception to the fact that the Debtor believes they may have "to jump through hoops" or that it is "irrelevant" to meet the requirements defined for representation in Section 1114 of the Bankruptcy Code.

As stated in the document on page 11 item 17 – "The company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology." On a worldwide basis, the majority of the Debtors facilities in and out of North America were set up with product, process and facility designs created and developed by many of these Retirees. They have been compensated fairly over the years, and we are thankful for the opportunities that working for GM and Delphi presented to us. On the flip side, these employees also gave much, and because of their long time loyalty and dedication, surely they deserve a voice in their future and what affects this Motion may have on them.

Honorable Robert D. Drain, I would like to thank you for the opportunity to share my views and present my objections to this very quick Motion by the Debtor. As with many of our "Retiree Group", I would be willing to serve on a Representative Committee.

Signature: *Jerome E. Biersack*    Date: Feb. 12, 2009
Name:    Jerome E. Biersack
Address: 2711 Sycamore Ridge Ct.
         Dayton, Ohio 45431        Phone: 937-426-2083

Per the instructions in the referenced motion, this written **NOTICE OF OBJECTION BY JEROME E. BIERSACK**

    Is being filed with the bankruptcy court as a Word document on a CD
    Is being submitted as a hard copy directly to:

    Honorable Robert D. Drain at:
    United States Bankruptcy Court for the Southern District of New York
    One Bowling Green
    Room 610
    New York, New York 10004

    And with copies mailed to:
    Deborah Li
    Court Deputy
    United States Bankruptcy Court for the Southern District of New York
    One Bowling Green
    Room 610
    New York, New York 10004

    Office of the United States Trustee for the Southern District of New York
    33 Whitehall Street
    Suite 2100
    New York, New York 10004
    (Attn: Brian Masumoto)

    Delphi Corporation
    5725 Delphi Drive
    Troy, Michigan 48098
    (Attn: General Counsel)

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    333 West Wacker Drive
    Suite 2100
    Chicago, Illinois 60606
    Attn: John Wm. Butler, Jr.

    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    Four Times Square
    New York, New York 10036
    Attn: Kayalyn A. Marafioti

    Davis Polk & Wardwell
    450 Lexington Avenue
    New York, New York 10017
    (Attn: Donald Bernstein and Brian Resnick)

    Latham & Watkins LLP
    885 Third Avenue
    New York, New York 10022
    (Attn: Robert J. Rosenberg and Mark A. Broude)

    Fried, Frank, Harris, Shriver & Jacobson LLP
    One New York Plaza
    New York, New York 10004
    (Attn: Bonnie Steingart)