To: Judge Robert Drain

Re: Delphi Automotive cancellation of salaried employee benefits

February 9, 2009

Your Honor:

    I just want to make you aware of the disastrous consequences for my family, and other families like ours, that cancellation of our insurance benefits will have, and offer a few suggestions for some possible alternatives. If this proposal is approved, Delphi has given us the option to pay the entire premium ourselves. If we were to choose to do so, our monthly premiums would rise from approximately $125 per month to just over $2,000 per month, an increase of 1,600%! This new cost almost equals my monthly pension income and would leave next to nothing for us to live on if we were to pay it. Obviously, we would no longer be able to afford insurance coverage. Now I understand that Delphi Automotive is in the throes of bankruptcy and incurring financial difficulties. But the details of their plan are particularly troubling. Why does this motion target only *salaried* retirees? Salaried employees and retirees have always paid higher premiums and co-pays than UAW hourly employees and retirees have for comparable coverage. Yes, UAW members have a contract with Delphi which covers these and other issues. However, at the time of my retirement, representatives of the company and I both signed a binding agreement ("contract") stating that my insurance benefits would continue until the date of my eligibility for Medicare and Medicaid. My understanding of the Chapter 11 process is that the company can petition the Court for relief from any and all contracts, including labor agreements. So why have only *salaried* retirees been targeted as the victims of this action? There certainly are far fewer numbers of salaried than hourly retirees. Sir, Delphi Automotive has not paid into any pension benefits plan for salaried employees hired since 2001. Those hired after that point are on their own. The rest of us aren't getting any younger, I'm quite sure. In other words, we're slowly dying off and the company's obligations to us are diminishing every day. A little over three years from now I'll be eligible for Social Security and Medicare and Delphi's obligations to me will drop significantly; this no doubt is typical of other salaried retirees. I understand that times are tough and money is scarce. But where is the loyalty to the employees who helped this company succeed during their good years? It is also worth noting that the "15,000" number quoted by Delphi includes current active employees (and only those hired prior to 2001) in addition to those already retired. So the company is not obligated to currently fund retirement benefits for the entire 15,000.

    I'd also like to briefly mention another issue which contributes to my feelings of being "thrown under the bus." I was a proud employee of Delphi Automotive (previously Delco Electronics Division of General Motors) for most of my life. When great pressure for sweeping numbers of employees to retire was imposed in 2000, I reluctantly retired

knowing that my severely reduced income would impose a financial hardship for my family. Furthermore, 9-11 and the flood of newly retired individuals from Delphi in a relatively small community eliminated nearly all new job opportunities. The *major factor* in accepting the retirement contract with Delphi was the continuation of health benefits for me and my family.

I do understand the economic predicament Delphi is currently facing and the desire to find ways to trim expenses to keep the company afloat. However, a better solution would be to impose smaller sacrifices to all employees (including UAW workers) and/or retirees rather than to hurt so severely the salaried (only) retirees who so loyally stuck with the company for most of their lives. This seems to be a more fair solution, whereas approval of this motion would be about as inequitable as anything I've ever imagined. I am also concerned that once the economy and Delphi recover, the Delphi administration will see fit to reward themselves with bonuses while the retirees that helped build the company will have lost everything.

Delphi wants to jettison only its salaried retirees, and so quickly that we really have inadequate time to try to find some affordable alternative. Yes, our economy is in recession and many entities are in distress. But no recession is permanent. At some point in the future most companies will recover from this. Our government has given relief to the auto companies to help them and, in turn, the companies they do business with (including Delphi Corporation). Additionally, just today it was announced by the news media that General Motors is going to reacquire at least some divisions of Delphi Corporation. If that is true, why should Delphi punish salaried retirees, at least in part, before a company given 13.4 billion tax dollars in federally backed loans has been given the chance to use that money and consequently help Delphi improve and meet its obligations?

I'd like to suggest a few possible alternative scenarios:

1.) Instead of just eliminating benefits for current retirees suddenly, increase the retiree contribution of the premiums to a more reasonable, manageable amount and make the transition over a period of months or years. This would at least give us the chance to "come up for air" and attempt to explore all of our options of how to handle this new financial burden. It might also enable some retirees to secure employment again (especially if our economy experiences a recovery), which may include accompanying benefits that would replace those currently obtained through Delphi. It also gives the government loans to the auto companies, General Motors acquisitions, and the stimulus package a chance to work and hopefully enable Delphi to meet its financial obligations concerning retiree healthcare.
2.) Insist that contributions be made by UAW union member retirees be equal to salaried retirees. The choice to eliminate retirement benefits only for salaried and non-UAW represented hourly employees is a choice made purely by Delphi

Automotive and not a specific provision or requirement of Chapter 11. Doing so would equalize the sacrifice amongst all retirees, especially if UAW retirees' benefits were aligned uniformly with those of the salaried retirees.

3.) Slightly raise the cost of premiums paid by all employees and retirees, including UAW workers and retirees, so that the cost burden is spread across the board as a small increase for everyone rather than a radical unrecoverable financial hardship that will literally destroy the lives of a few.

4.) Coordinate benefit premium payment requirements with the company's actual financial health, as determined by some standard accounting practices. After determining benefit contribution requirements from all retirees and employees, adjust them up or down depending upon the company's current financial conditions. No one can accurately predict the exact effects that the Economic Stimulus Plan will have on automotive and component sales. But the addition of one *trillion* dollars into the U.S. will certainly have effects, some of them quite positive. In all probability, automotive sales will rebound to some degree and money will become available to fund our promised benefits. In the interest of fairness, any executive bonuses should be postponed until *after* these benefits are paid.

5.) Provide current salaried retirees with the opportunity to work at local Delphi plants again, in either salaried or hourly assignments at the new lower paid second-tier UAW wage rates, including benefits, until they reach eligibility age for Medicare. Due to the nature of age discrimination the older folks would need preferential hiring treatment. In my particular case, I'd be more than willing to work in most any capacity at a wage of about $14/hr.+benefits for the next three and a half years, until age 65.

6.) Explore some combination of the aforementioned. Any management group can just slash employees and costs. The application of a little thought and creativity in this case could be the best long term solution.

I am aware there are specific procedures prescribed in the brief mailed to us in this case regarding filing of an objection. However, I do not understand the legalese contained in the brief, and under the circumstances, I can't begin to afford professional legal assistance in this matter. So I solicit your understanding and hope this letter will suffice.

Thank you for your consideration,
Bruce Hardyniec

*Bruce Hardyniec*
5615 E. Woodland Way
Bringhurst, Indiana
saranje@aol.com
765-566-3003