

The Honorable Judge Robert D. Drain
United States Bankruptcy Court for the Southern District of New York
One Bowling Green - Room 610
New York, New York 10004

Case Number: 05-44481
Debtor: Delphi Corp.

Objection to Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), and 1108
Confirming Debtors' Authority To Terminate Employer-Paid Post-Retirement
Health Care Benefits And Employer-Paid Post-Retirement Life Insurance
Benefits For Certain (A) Salaried Employees And (B) Retires And Their
Surviving Spouses (the "Motion").

I am one of the 30% of the Dephi Salary workforce that were retired or were let go
at the end of last year. The retirement package included health care. I have a spouse
who is 3 years younger that I am. At no time during the process was there any
indication that health insurance would be eliminated. As a matter of fact I was told
that my wife would have insurance until she reached 65 years of age. O find this
typical of the unethical behavior that caused Delphi to go into bankruptcy in the first
place.

I would rather see Delphi take away to bonuses of the incompetent executives and
use that money to fulfill the broken promises of the company

There are two parts to this objection:

Part 1:   (OPEB benefits were actually paid for by the salaried employees of
Delphi Corporation.)

The OPEB benefits cited in this motion were not paid for by the employer
(Delphi). Each year, salaried employees received a salary and benefits
package as opposed to contract employees that received a larger salary in
lieu of these benefits.

All salaried employees received a lower salary to enable the Delphi to set
aside money in a trust fund out of which these OPEB benefits would be paid
in the future.

Delphi obviously placed a value on these benefits since salaried employees
hired after January 1, 1993 were given an additional 1% of base pay in lieu
of the OPEB retirement benefits. Furthermore, the 1993 change was done as a
cost reduction so it is obvious that Delphi valued these benefits at some
level greater than 1 % of base pay.

It is not the fault of the salaried employees that this trust fund was never
set up and that the money saved by Delphi was used for other purposes. In
fact, this borders on mismanagement and malfeasance on the part of Delphi .

Therefore, I believe it is incumbent upon this court to reject this motion from Delphi.

Part 2: (Delphi breached their contract with salaried employees.)

The provisions of this motion represent a "BREACH OF CONTRACT" with the salaried employees of Delphi. Employees were recruited by Delphi based on a salary and benefit package that implied, if not directly stated, that the salary and benefits were comparable or better than those paid by other companies and that they were a part of the employment contract with Delphi.

Each year, salaried employees were required to sign a document accepting the new salary and benefit package that Delphi offered. Again, the salary was lower than what it would have been were no benefits included in the package. And, the conversation that took place during the signing session to accept the yearly changes implied that these benefits would be provided as described in the benefits manual that Delphi provided each year. A large portion of this benefits manual was devoted to retirement income and salaried benefits after retirement.

Each year, the salaried benefits package was compared both verbally and in writing to the hourly benefits package to show that the salaried employees were treated as well as the represented hourly employees. This was done to prevent salaried employees from demanding union representation. Hourly benefits are not being subjected to this motion to cancel retiree benefits because of the contract between Delphi and the various unions. Since these comparisons were made by Delphi, it is clear that the benefits were meant to have similar longevity to those specified by the hourly contract.

Some salaried employees were given the opportunity to retire early. Here again, a package was prepared showing the retirement income and benefits that would be provided if the employee elected to retire. NO EMPLOYEE would have signed the early retirement documents if there were any hint either verbally or otherwise that these benefits would not be paid in the future.

All retiring salaried employees (early retirees and normal retirees) signed documents accepting the income and benefits provisions again with the implication (verbal) that these benefits would continue during retirement. Again, NO EMPLOYEE would have signed the retirement document if there were any hint either verbally or otherwise that these benefits would not be paid in the future.

After many employees retired, Delphi discontinued health care benefits after age 65. A number of meetings were held describing a "Wageworks pot" of $20,000 or $10,000, depending on your retirement date, that was to be used to minimize the trauma caused by this change.
This action would indicate that Delphi truly felt some responsibility for the past promises and contracts with their employees.

This "pot" is now being eliminated along with the other benefits. However, during the numerous meetings that took place when this modification was originally made, an implication was again made that the health care and life insurance benefits would now continue until age 65.

For the numerous reasons cited above, I contend that Delphi broke its contract with its salaried employees and should be held accountable for that action. Delphi should not be allowed to opt out of this obligation and this motion **should be rejected by the court**.

Respectfully submitted by:

*Ronald H. LaLonde*

Ronald H. LaLonde
3605 Robin Ct
Kokomo, IN 46902
765-453-7652
cc:

Attn: Brian Masumoto
Office of the United States Trustee for the Southern District of New York
33 Whitehall Street
New York, New York 10004

Attn: General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098

Attn: John Wm. Butler, Jr.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive  - Suite 2100
Chicago, Illinois 60606

Attn: Donald Berstein and Brian Resnick
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

Attn: Robert J. Rosenberg and Mark A. Broude
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022

Attn: Bonnie Steingart
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004