February 12, 2009

The Honorable Judge Robert D. Drain
United States Bankruptcy Court for the Southern District of New York
One Bowling Green - Room 610
New York, New York 10004

RECEIVED
FEB 17 2009
U.S. BANKRUPTCY COURT, SDNY

Case Number: 05-44481     Debtor: Delphi Corp.

Objection to Motion For Order Under 11 U.S.C. §§ 105(a), 363(b), and 1108 Confirming Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (A) Salaried Employees And (B) Retirees And Their Surviving Spouses.

Dear Judge Drain:

Please accept this letter as my official objection to the motion filed by Delphi Corporation on February 4, 2009 (ref. Document 14705).

Delphi Salaried Retirees, unlike most other groups directly impacted by this bankruptcy, are not an organized group. This group is made up of individuals who had worked decades for Delphi (and previously General Motors) in good faith and without concern that in their most vulnerable time of life they would be stripped of all insurance benefits. These are not entitlements, but rather benefits that had taken them a lifetime to vest. Unlike other stakeholders, such as investors and suppliers, they will have no "second chance" opportunity when (and if) Delphi emerges from bankruptcy. Delphi has chosen to take this action while openly acknowledging it would impose real hardship on these individuals.

I retired effective January 1, 2009 on my own initiative. If there would have been any indication Delphi would eliminate retiree benefits I would never have retired. As I did my exit interview there was absolutely no mention of this potential action. There are many others who were encouraged to accept an early retirement like myself in the last several months that now face the same dilemma. Again, these people were dedicated employees who acted in good faith and in the belief that Delphi would honor its post retirement promises. Within three to six months after leaving, these people in their late 50's and early 60's are now facing the high probability of losing all health care, dental, vision, and life insurance. If Delphi management knowingly made these offers while considering this latest course of action in the Court, it would appear that these offers were made fraudulently.

In the motion, Delphi states that "projected cash associated with these programs exceeds $70M per year." That is less than $6M per month. Their operating report ending September 30, 2008, lists the total operating expense for the prior eight months at $6.63B, or about $829M per month. In other words, the cost of the Salaried OPED is less than one percent of total operating cost. Surely, there are better areas to explore for cost reduction.

Hopefully, it will be clear to the Court that current Delphi management and their legal teams have specifically targeted the Salaried Retirees, in lieu of others, because of their apparent vulnerability and lack of organization. This group heretofore has not been organized nor does it have focused legal representation. Thus, the February 17, 2009, deadline does not allow sufficient time to generate a collective and comprehensive response.

Judge Drain, I respectfully request that you weigh the severe impact of this motion on a relatively small group (as compared to Hourly retirees who are unaffected) versus the minimal overall affect that it would make in Delphi's ability to save the business. Further, I respectfully request that you reject Delphi's motion.

Thank you for your consideration,

*Michael D. Williams*

Michael D. Williams
4105 Ryan Court
Kokomo, IN 46902