Honorable Robert D. Drain
United States Bankruptcy Court for the
Southern District of New York
One Bowling Green
Room #610
New York, New York 10004


Re: Delphi Corporation Chapter 11, Case 05-4481 (RDD) in the Notice of Motion for Order Under 11 U.S.C 105(a),363(b) (1), and 1108 Confirming Debtors' Authority to Terminate Employer-Paid Post Retirement Health Care Benefits and Employer-Paid Post-Retirement Life Insurance Benefits for Certain (A) Salaried Employees and (B) Retirees and Their Surviving Spouses


To Whom It May concern!

As a Delphi salaried retiree, I wish to object to the Motion to terminate Employer-Paid Post Retirement Health Care Benefits, and Employer-Paid Post Retirement Life Insurance for certain (A) Salaried Employees and (B)Retirees and their Surviving spouses.

I am a third generation General Motors employee. My grandfather was one of the originating workers which helped start Delco Remy in Anderson Indiana and he retired as Works Manager. My father was the Personnel Director at the Anderson Delco plant. I worked in middle management at Guide Division of General Motors and later as a Sales Manager in Detroit for General Motors, and later Delphi, after General Motors split off the Component Divisions..

During the first 20 years of my employment, I was always proud to say that I was a General Motors employee. I often helped recruit new employees, but most of the time my major responsibilities were to supervise and train others. I felt proud to tell prospective and current salaried employees, that the total compensation package that they would receive as a General Motors salaried employee would stand among the best offered in the

business world. Often employees would discuss other outside opportunities that were available to them, and after discussions with many of General Motors top Personnel people, I felt comfortable in carrying back the message, " You can make more money on the outside, but when you add up all your lifetime health and insurance benefits, the G.M. package would be hard to top." During those early years, I can only remember one direct employee in the hundreds I supervised (during my career), that left for an outside opportunity.

Unfortunately, the last few years of my career were not nearly as rewarding. General Motors decided to split off the Component Divisions under the name of Delphi Corporation. They made a unilateral decision that all Component Divisions employees, <u>without exception</u>, would no longer be G.M. employees and would be designated as Delphi Employees with Delphi benefits. (Actually several top executives were given tie back rights to G.M. at later dates. ) Then G.M. required Delphi products be sold back to G.M. at a cost structure equal to the lowest priced like commodity in the world. Obviously Delphi could not make a profit on these products due to the union wage and benefits package that G.M. had strapped Delphi with. Then the real problems started to surface.. General Motors and Delphi top management got together and decided to sell off parts of the Delphi's Business structure. They first sold off the Seating and Lighting Business Units. When these business failed, due to the G.M. labor cost structure, (even under outside management), they would let "certain chosen people" retire under the G.M. retirement plans while other Delphi employees were still not given an opportunity to retire under G.M.

Delphi employees were always told that their benefits would always be comparable to G.M. employees and actually in the beginning they even shared employment pamphlets and the programs were administered by the same people. (I'm not sure if this is still the case.) Delphi employees who took early outs were given an opportunity to get a lump sum buyout, or a retirement program which included lifetime pension and health benefits. It was usually pointed out that G.M. and Delphi still had a strong connected working relationship and never had reneged on any of it retirement plan benefits. Therefore, long-term elderly salaried employees almost always chose the retirement programs over the buyouts.

I would ask the legalities of discontinuing the medical benefits and insurance programs be challenged for the following reasons:

      1. Spin-off of Delphi from General Motors without regard for employee time in service and preferential treatment for some employees.

      2. Initial spin off was really a ploy to renegotiate union agreements.

      3. Several employees involved in the spin-offs were able to retire under the G.M. retirement, while other Delphi employees were not given that opportunity.

      4. Delphi salaried Retirement programs are being eliminated while the hourly employees retain their benefits. It should be known, salaried employees were told that if they went to any salaried union organization meetings they would be captured in photographs and that would probably result in job loss.

      5. G.M. salaried employee retirees have retained their health and insurance programs.

      6. The "good old boy" concept took place where some employees were given special retirement opportunities.

      7. Delphi salaried retirees were told last year, under the restructure plan, that their health care would be provided until age 65, when they would be able to obtain Medicare and would be given a lump sum-- to buy Part B and gap insurance.

      8. Some people have not received their packages yet, and if it weren't for other retirees phone calls, would not even know of the changes. I live the winter months in Florida and did not receive any notification.

      9. An April 1st start time does not give retirees ample time to make alternate plans.

10. Delphi sent perspective retirees ( at Delphi's expense) to outside consultants who would run numbers concerning the employees financial status, including company supplied Health and Insurance benefits, and those consultants would then advise you on your ability to comfortably retire. I am sure the recommendation given to me and other retirees would have been much different if we were not going to receive our life time benefits.

11. Retirees are on a fixed budget, and are in an economy where businesses offering benefits and comparable pay are not recruiting 55+ people.

12. I was an officer in the Air Force. When I was hired by G.M., they were given Government credits for my hiring. I could have received Government health Care and been paid by G.M. for not spending my health benefits. Since I received company Benefits, I never applied to the government for my Veteran Benefits, as I felt a responsibility to my country to reduce expenses. Since 2003 the Government has closed down enrollment to Veterans who are not considered to be in poverty. Do people really believe that I would not have applied for these benefits in 2001 when I retired, if I was not assured by Delphi I would keep my lifetime benefits.

The tragedy of the situation is that this proposal doesn't even affect those employees who created the financial problems within Delphi and General Motors. To really understand why G.M. and Delphi are near bankrupt, you have to take a close look at the employee structure within the two companies. These structures contain (3) main levels of employment. To simplify, lets call the unionized labor force the worker bees who do the hands on labor to produce the actual products. Then there is upper management, whose job is to set policy and set the corporate direction. These people within G.M. and Delphi are called unclassified or bonus eligible employees, ( their actual bonus is suppose to correlate and should be based on the actual bottom line profits). The third group is called middle management, and those people are charged with planning workload, supervising production, accounting, engineering etc.. The portion of the workforce that this motion affects is the <u>salaried middle management</u>. The irony of the situation is that they are the only people who didn't create the problem. The bottom line financial problem is the union employee labor and benefit cost. This is a problem that should have been addressed by upper management over the past 30 years. But, their bonuses were based on

bottom line profit, so they were not willing to fight through the strikes and shutdown production, which would result in short term losses, and would in turn decrease their bonuses. I am not currently sure of the actual cost, but the general guideline used when I was working, was for every hour an assembly plant line was down, the bottom line cost to G.M. was million dollars . Therefore, you can see the cost of a strike would greatly affect the bottom line profit of the corporation during negotiation years.

The people who had no control over this situation were those middle managers who are now being asked to give up there benefits. These are 30+ year, loyal employees, whose total compensation was based on studies made by the Corporation comparing similar work done in other large companies. In other words their total compensation, including benefits, was comparable to the outside workforce. Merits for work beyond the requirements were paid as stock options which were absolutely worthless. The benefit package you are being asked to discontinue, was not only promised to employees, but was figured in the compensation range for comparable pay for equal work.

Finally, I would like to challenge the motion made by Delphi because they contend that the benefit program has always stated that "OPEB programs may be amended, modified, suspended, or terminated by Delphi and General Motors at any time". I believe this statement first surfaced in the 1990's on merit statements and retirement proposals. When this statement was challenged, we were told that we must sign off on this statement to qualify for merit increases and retirement programs. This was signature under coercion and should be illegal.

Thank you for your consideration on this matter.

Jack E. Hulse
20922 Edgewater Drive
Noblesville, Indiana 46062
Ph. 317-513-2203


Florida Address:  19 Whispering Sands Drive, #906
                  Sarasota, Florida 34242




Cc. Delphi Corporation, Skadden Arps, Slate, Meagher & Flom LLP, Davis Polk & Wardwell, Latham and Watkins LLP, Fried Frank Harris Shriver & Jacobson LLP, Office of the United States Trustee for the Southern District of New York