**Exhibit A**

*Objections To OPEB Termination Motion Of Delphi Corporation And The Affiliate Debtors*

*Organized By Nature Of Objection[1]*

| | OBJECTION ASSERTED | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|
| | **I.    Objections To OPEB Termination** | |
| | **Objections Related To Notice, Timing, And Process** | |
| 1. | • Notice of the Debtors' Motion For Order Under 11 U.S.C. §§ 105(a), 363(b)(1), And 1108 Confirming Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (A) Salaried Employees And (B) Retirees And Their Surviving Spouses (the "Motion") was insufficient because it was filed with no previous notice to retirees.  The notice does not give affected individuals a meaningful opportunity to be heard. | Notice of the Motion was served in accordance with this Court's Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883) (the "Case Management Order") and the Thirteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered December 4, 2008 (Docket No. 14534) (the "Thirteenth Scheduling Order").  No other notice was required under existing rules or orders.<br><br>As set forth in the Affidavit of Service (Docket No. 14705), a complete copy of the Motion and the Notice of Motion were served via overnight mail upon each Eligible Salaried Retiree in compliance with paragraph 17(d) of the Case Management Order.  In addition, the February 5, 2009 letter was sent to each Eligible Salaried Retiree as follow up correspondence to advise each Eligible Salaried Retiree of his options to purchase Medical and Insurance Benefits through the Company's plans. |
| | • Notice of the Motion was insufficient because only current employees were informed of the Motion by the February 5, 2009 Letter. The first actual notice to retirees was in an article in the Kokomo Tribune on February 6, 2009.  This notice does not give affected individuals a meaningful opportunity to be heard. | In an effort to communicate the outlined in the Motion to Eligible Salaried Retirees, on February 5, 2009, the Debtors sent certain information to Eligible Salaried Retirees, including a letter from the Debtors concerning the proposed changes, an Estimated 2009 Retiree Self-Pay Rates chart, and a brochure entitled "Health Care and Life Insurance: Questions and Answers, February 2009."  (See Gebbia Decl. Ex. 1.) |

---

[1]    This chart reflects all objections entered on the docket as of 12:30 p.m. (prevailing Eastern time) on February 23, 2009.

|   | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|
|   | • Parties-in-interest had only 12 days in which to draft and file objections to the Motion. This does not give affected individuals a meaningful opportunity to be heard. | The Objection Deadline was properly set for the seventh calendar day before the applicable Omnibus Hearing Date. (See Case Management Order ¶ 13.) In addition, the number of objections filed belies this concern. |
|   | **Objections Related To The Applicability Of Section 1114 Of The Bankruptcy Code** | |
| 2. | • Section 1114 of the Bankruptcy Code applies to any modification of retiree benefits and requires the formation of a retiree committee before modifying retiree benefits unless the Court orders otherwise, even if it appears that Debtors have a unilateral right of termination. (See, e.g., Docket No. 14822.)<br><br>• Salaried retirees are not adequately represented before the Court. Formation of a retiree committee is required before the Court can substantively consider the claims by the Debtors. | Formation of a retiree committee is not required here. The plan documents and Summary Plan Descriptions ("SPDs") unambiguously reserve the right to terminate Salaried OPEB at will. Therefore, section 1114(f) of the Bankruptcy Code does not apply and (i) no retiree committee need be appointed under section 1114(d) and (ii) no claims arise from such termination. See generally In re Doskocil Cos., 130 B.R. 870, 876-78 (Bankr. D. Kan. 1991) (section 1114 does not operate with respect to "claims for which the debtor has no contractual or other legal liability").<br><br>"The majority of courts addressing the issue have found that a debtor in possession need not comply with the procedures and requirements of section 1114 if it has a right to unilaterally terminate retiree benefits under the retirement plan in question and applicable nonbankruptcy law." See 7 Collier on Bankruptcy ¶ 1114.03[1] at p. 1114-15 (15th rev. ed. 2008). |
| 3. | • By adding section 1114(l) through the BAPCPA amendment, Congress expanded the scope of section 1114 of the Bankruptcy Code and confirmed that section 1114 governs agreements that are "amendable" or terminable at will. | Amended section 1114(l) of the Bankruptcy Code applies only to prepetition modifications of retiree benefits and thus does not apply here. Furthermore, the majority of courts hold that the definition of "retiree benefits" in section 1114(a) does not include benefits under contracts that may be terminated at will. |
| 4. | • Reading section 1129(a)(13) of the Bankruptcy Code together with section 1114 of the Bankruptcy Code demonstrates Congress' intent that section 1114 governs any attempt by the Debtor to modify retirement benefits. | If sections 1114 and 1129(a)(13) of the Bankruptcy Code together prevent termination of a welfare benefits contract by the debtor, as allowed by the terms of such contract, then the effect of filing a chapter 11 case and the confirmation of a plan would vest benefits, a result contrary to ERISA. See In re North American Royalties, Inc., 276 B.R. 860, 867 (Bankr. E.D. Tenn. 2002) (holding that sections 1114 and 1129(a)(13) of the Bankruptcy Code "were enacted against the backdrop of ERISA, which allows a contract for retiree welfare benefits to provide the employer the right to terminate.").<br><br>Furthermore, the plan documents and SPDs unambiguously reserve the right to terminate Salaried OPEB at will. Therefore, section 1114(f) of the Bankruptcy Code does not apply and (i) no retiree committee need be appointed under section 1114(d) and (ii) no claims arise from such termination. See generally In re Doskocil Cos., 130 B.R. 870, 876-78 (Bankr. D. Kan. 1991) (section 1114 does not operate with respect to "claims for which the debtor has no contractual or other legal liability"). |
| 5. | • The process and protections for individuals provided under 11 U.S.C. § 1114 are applicable to the relief requested in the Motion because the retiree benefits are vested. | The retiree benefits are not vested. See Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999) (stating general rule that benefit plans are not vested and that employers have right to unilaterally terminate at any time). The plan documents |

| | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|
| | | unambiguously reserve the right to terminate Salaried OPEB at will. Therefore, section 1114 of the Bankruptcy Code does not apply and (i) no retiree committee need be appointed under section 1114(d) and (ii) no claims arise from such termination. See generally In re Doskocil Cos., 130 B.R. 870, 876-78 (Bankr. D. Kan. 1991) (section 1114 does not operate with respect to "claims for which the debtor has no contractual or other legal liability"). |
| | **Objections Asserting That Benefits Were Promised And/Or Vested** | |
| 6. | • Delphi agreed to provide healthcare to the salaried employees and their spouses until age 65.<br><br>• Delphi promised to reimburse retirees by establishing Retiree Health Reimbursement Accounts in the amount of $20,000 (or $10,000) toward the cost of replacement healthcare coverage after age 65. | Delphi did not make any such agreements or promises. Delphi has consistently communicated its reservation of rights to the Eligible Salaried Retirees in its summary plan descriptions and other employee communications. The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), governs the nature of Delphi's obligations to its employees. Delphi's plan documents and Summary Plan Descriptions SPDs are the controlling documents under ERISA, and these documents consistently reserve the Debtors' unilateral right to modify or terminate Salaried OPEB. See 29 U.S.C. §§ 1102(a)-(b), 1022(b).<br><br>The communications from GM and from Delphi's agents or employees raised by the objectors are legally insufficient to modify unambiguous provisions of the plan documents under ERISA. See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 489 (2d Cir. 1988) (holding that "unambiguous provisions of the plan must govern, because altering a welfare benefit plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA."). Furthermore, the summary plan descriptions provide that "[t]he Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors. No other oral or written statements can change the terms of a benefit Plan or Program." (See, e.g., Gebbia Decl., Exh. 9 at pp. (ii) and 91 and Exh. 10 at pp. (ii) and 128.) |
| 7. | • The Debtors' written promises set forth in the Retiree Servicing Center correspondence (see, e.g., Exhibit B to Docket No. 14765) and/or the Wage Works correspondence (see, e.g., Docket No. 14786) state that life insurance and disability programs will remain in effect for the rest of the individual's life. | See the response in section 6 above. In any event, the letters from the Retiree Servicing Center (Delphi's plan administrator) are legally insufficient to modify the plan documents under ERISA. The Wage Works letter makes no representation or promise regarding the vesting of the health insurance benefit plan and is legally insufficient to modiy the plan documents under ERISA. See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 489 (2d Cir. 1988) (holding that "unambiguous provisions of the plan must govern, because altering a welfare benefit plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA."). |

| | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|
| 8. | • Salaried OPEB benefits have vested; therefore, the Debtors do not have the unilateral contractual right to terminate Salaried OPEB. Communications by the Debtors to individuals gave those individuals a reasonable belief that future benefits would vest and this defeats any claim that the Debtors have a contractual right to unilateral termination.<br><br>• Delphi orally agreed to provide healthcare to salaried employees and their spouses until age 65. | The retiree benefits are not vested. See Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999) (stating general rule that benefit plans are not vested and that employers have right to unilaterally terminate at any time). Delphi's plan documents and SPDs are the controlling documents under ERISA, and these documents consistently reserve the Debtors' right to modify or terminate Salaried OPEB. See 29 U.S.C. §§ 1102(a)-(b), 1022(b).<br><br>Delphi has consistently communicated its reservation of rights to the Eligible Salaried Retirees in its summary plan descriptions and other employee communications. The summary plan descriptions provide that "[t]he Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors. No other oral or written statements can change the terms of a benefit Plan or Program." (See, e.g., Gebbia Decl., Exh. 9 at pp. (ii) and 91 and Exh. 10 at pp. (ii) and 128.) In any event, oral communications from Delphi's agents or employees are legally insufficient to modify the plan documents under ERISA. See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 489 (2d Cir. 1988) (holding that "unambiguous provisions of the plan must govern, because altering a welfare benefit plan on the basis of non-plan documents and communications, absent a particularized showing of conduct tantamount to fraud, would undermine ERISA.").<br><br>The "extraordinary circumstances" required for promissory estoppel claims for ERISA plans do not exist here. Under ERISA, a plaintiff must satisfy not only the four elements of promissory estoppel – "'(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced'" – but must also "satisfy an 'extraordinary circumstances' requirement as well." See Devlin v. Empire Blue Cross And Blue Shield, 274 F.3d 76, 85-86 (2d Cir. 2001). |
| 9. | • Without the promise of health care and life insurance, the former employee would not have retired before age 65.<br><br>• The Debtors compared benefits of salaried employees to those of hourly employees to show that the benefits received by salaried employees were comparable to the benefits received by hourly employees, such that the Debtors cannot now terminate OPEB only for salaried retirees. | See the response in section 8 above regarding promissory estoppel. ERISA law governs the nature of Delphi's obligations to its employees. Delphi's plan documents and SPDs are the controlling documents under ERISA, and these documents consistently reserve the Debtors' unilateral right to modify or terminate Salaried OPEB. See 29 U.S.C. §§ 1102(a)-(b), 1022(b). |
| | **Objections Related To Business Judgment** | |
| 10. | • The business judgment of Debtors' management in connection with the termination of Salaried OPEB benefits is not sound.<br><br>• The decision to terminate Salaried OPEB benefits was not being made | Although the Debtors have always retained the authority to modify or terminate these discretionary programs unilaterally, the Debtors had intended to seek to continue these programs in an economic climate where the total enterprise value associated with the Debtors' go-forward business plan provided a reasonable basis for such business |

4

| | | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|---|
| | | in good faith or was made in bad faith. | judgment. Subsequent to the filing of the Plan Modification Motion, the global economic environment has continued to deteriorate, placing severe pressure on all industries, but especially on automotive manufacturers and their suppliers due to limited consumer credit and lack of financing for both OEMs and suppliers. In these circumstances, the Debtors' reasonable business judgment no longer permits them to maintain discretionary benefit programs such as Salaried OPEB that would cost hundreds of millions of dollars over the business plan period and burden the Debtors' reorganized balance sheet with a billion dollars or more of associated liabilities.<br><br>The Debtors anticipate that upon the effectiveness of the proposed terminations there will be cash savings to the Debtors of approximately $200,000,000 in the aggregate from 2009 through 2011 as well as the elimination of balance sheet liabilities in excess of $1.1 billion. These cost savings strongly support the Debtors' business judgment. |
| 11. | | • The relief requested in the Motion should be postponed.<br><br>• Termination of Salaried OPEB should be temporary until the Debtors are financially able to resume administration of the programs.<br><br>• Because Salaried OPEB benefits are terminated for retirees at age 65, the cost of continuing health insurance benefits to retirees until age 65 is de minimis and not material to the Debtors' restructuring compared to the hardship that individuals would suffer upon such termination. | See the response in section 10 above. In addition, the Debtors' short-term liquidity needs require marshaling available cash as quickly as possible. (See Miller Decl. ¶ 19.) The projected cash savings associated with eliminating these programs exceeds $70 million per year. (See Miller Decl. ¶ 9.) The Debtors have given proper notice of the Salaried OPEB termination and postponing the relief sought will harm Delphi's financial position.<br><br>In addition to near term cash savings, terminating Salaried OPEB would eliminate more than $1.1 billion from the Debtors' reorganization balance sheet. (See Miller Decl. ¶ 9.) The Debtors believe that termination of Salaried OPEB must be permanent. |
| 12. | | • Total global value of Delphi, not just North American assets, should be considered in connection with the bankruptcy process. | The Debtors considered the total global value of Delphi when determining to terminate Salaried OPEB. Calculations of total enterprise value are based on a valuation of "Reorganized Delphi" and include the value of global non-Debtor subsidiaries. (See Disclosure Statement Ex. D.) |
| 13. | | • Granting the Motion could create immense administrative expense claims against the Debtors' estates. | The cancellation of a benefit provided under a contract that is terminable at will does not give rise to a "claim" as defined in section 101(5) of the Bankruptcy Code because the retiree has no "right to payment." The retiree benefits are not vested. See Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999) (stating general rule that benefit plans are not vested and that employers have right to unilaterally terminate at any time). The plan documents and SPDs unambiguously reserve the right to terminate Salaried OPEB at will. Therefore, section 1114 of the Bankruptcy Code does not apply and (i) no retiree committee need be appointed under section 1114(d) and (ii) no claims arise from such termination. See generally In re Doskocil Cos., 130 B.R. 870, 876-78 (Bankr. D. Kan. 1991) (section 1114 does not operate with respect to "claims for which the debtor has no contractual or other legal liability"). |

|     | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|-----|------------------------|---------------------------------------|
| 14. | • Retirees are obligated to purchase Delphi vehicles but are no longer obligated to do so if the Motion is granted. Customer loyalty to the General Motors Corporation ("GM") brand and the consequential purchase of automobiles from GM will further erode if the relief is granted. Therefore, the Debtors' business judgment is not sound. | Eligible Salaried Retirees are not legally obligated to purchase GM vehicles. |
| | **Objections Based On Policy Arguments Or Undue Hardship** | |
| 15. | • Active employees' benefits should be reduced or terminated – salaried retirees should not bear the burden of less-than-adequate management.<br><br>• Sacrifices should be equitable and made by all Delphi management and employees – whether active or retired, salaried, or hourly. Furthermore, terminating only Salaried OPEB discriminates against salaried employees.<br><br>• Terminating Salaried OPEB creates a domino effect, whereby retiree disposable income is spent for medical care rather than retail and service providers in the 3rd District of Ohio. The Court should postpone granting the relief requested until Congress and the President can take action to mitigate the collapse of the U.S. Auto Industry. | The Debtors have exercised reasonable business judgment in taking steps to address their liquidity needs and balance sheet liabilities. Furthermore, the plan documents and SPDs unambiguously reserve the right to terminate Salaried OPEB at will.<br><br>Delphi acknowledges and recognizes the hardships that terminating Salaried OPEB as proposed in the Motion will impose on the former beneficiaries of these programs. Indeed, recognition of such hardships was a motivating factor in Delphi's effort and success in maintaining these programs throughout Delphi's restructuring while Delphi's go-forward business plan provided a reasonable basis for doing so. Regrettably, Delphi can no longer justify maintaining these programs in the current economic climate.<br><br>ERISA law governs the nature of Delphi's obligations to its employees. Hourly employees have different contractual rights provided under applicable CBAs and the Debtors have no obligation to conform treatment of hourly employees to that of salaried employees. |
| 16. | • The relief sought in the Motion places an undue hardship on retirees. In many instances, the Debtors forced employees into early retirement and now seek to terminate retirement benefits. The current economic climate and the inability of retirees to obtain any or affordable individual health insurance on the open market serves to place an undue hardship on retirees. | Delphi did not "force" any retirees into early retirement. Over the years, however, Delphi has offered certain Eligible Salaried Retirees the opportunity to participate in various early retirement programs. (See Gebbia Decl. ¶ 21.) |
| 17. | • Terminating Salaried OPEB means that individuals with preexisting conditions will be unable to obtain replacement health or life insurance. | Eligible Salaried Retirees can continue existing Medical Benefits, provided that Eligible Salaried Retirees pay 100% of the cost. |

6

| | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|
| | Other Objections | |
| 18. | • The Debtors have not provided all of the plan and disclosure documents for the Salaried OPEB plans they seek to terminate. Therefore, parties do not know if the plans are terminable at will. | Copies of all relevant plan documents and SPDs are attached as exhibits to the Gebbia Declaration. |
| 19. | • GM should indemnify the OPEB benefits of those Debtor employees who previously worked for GM before the spin off.<br><br>• GM is liable for Salaried OPEB benefits on alter-ego and implied indemnity causes of action.<br><br>• GM required that contributions to individual retirement accounts include a portion of company stock that was later converted to Delphi stock. This, in turn, caused the individual retirement account to have little present value. | These objections are not bases for denying the relief sought by Delphi in the Motion. |
| 20. | • GM promised healthcare benefits and life insurance to those employees hired before 1993. Monies for these benefits should have been paid into the salaried employees' pension plan and/or a trust. The cost of health insurance should be transferred from future obligations to the Delphi salaried employees' pension plan. Because monies for these benefits should have been paid into the pension plan and/or a trust, the Motion essentially seeks a reduction of the retirement pension payment. | The Salaried OPEB plans operate on a pay-as-you-go basis. ERISA funding rules apply only to pension benefit plans, not to OPEB plans. See 29 U.S.C. §§ 1061-1084. Accordingly, there is no trust maintained by the Debtors for OPEB liabilities and these benefits have not vested. See Joyce v. Curtiss-Wright Corp., 171 F.3d 130, 133 (2d Cir. 1999) (stating general rule that benefit plans are not vested and that employers have right to unilaterally terminate at any time). The Debtors anticipate that upon the effectiveness of the proposed terminations there will be cash savings to the Debtors of approximately $200,000,000 in the aggregate from 2009 through 2011 as well as the elimination of balance sheet liabilities in excess of $1.1 billion. |
| 21. | • Terminating Salaried OPEB before terminating the Debtors' pension plans is prejudicial to retirees under age 65 because they will lose possible eligibility for the Health Care Coverage Tax Credit (the "HCTC"). | Because Eligible Salaried Retirees are not currently receiving payments from the PBGC, they are not "eligible individuals" for the purposes of receiving the HCTC. See 6 U.S.C. § 35(c)(a)(C). Although it is unfortunate that, absent a change in the tax laws, Eligible Salaried Retirees will not qualify for this particular credit, no claim arises against the Debtors because no duty was breached and retirees do not have a recognized right to receive the HCTC. |
| 22. | • Retirees who served the Company should be considered senior to business creditors. | The cancellation of a benefit provided under a contract that is terminable at will does not give rise to a "claim" as defined in section 101(5) of the Bankruptcy Code because the retiree has no "right to payment." See, e.g., In re Ionosphere Clubs, Inc., 134 B.R. 515, 519 n. 4 (noting without deciding creditors' committee's argument that under Dockosil and Chateaugay, terminating plans which are terminable at will gave rise to no claims whatsoever); In re Wellman, Inc., No. 08-10595, slip op. at 6 (Bankr. S.D.N.Y. Jan. 23, 2009) (sustaining Debtors' objection to disallow portion of claims for modified severance benefits that exceeded amounts owed under amended severance plan, reasoning that because old severance plan was terminable at will, claims under old |

7

| | | **OBJECTION ASSERTED** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|---|
| | | | severance plan were not enforceable).  Unenforceable claims are not entitled to priority over allowed claims.  See 11 U.S.C. § 502. |
| 23. | • | Terminating Salaried OPEB constitutes an act that improperly discriminates on the basis of age. | Terminating Salaried OPEB in accordance with plan documents and SPDs which unambiguously reserve the right to terminate Salaried OPEB at will does not constitute age discrimination. |
| 24. | • | Although retirees can pay the actual cost of the company-provided insurance, the premiums are substantially higher than those calculations used in the Motion. | The Motion does not contain calculations of insurance premiums.  In an effort to communicate changes to Salaried OPEB, on February 5, 2009, the Debtors sent certain information to Eligible Salaried Retirees, including a letter from the Debtors concerning the proposed changes, an Estimated 2009 Retiree Self-Pay Rates chart, and a brochure entitled "Health Care and Life Insurance: Questions and Answers, February 2009." (See Gebbia Decl. Ex. 1.) |
| 25. | • | The Creditors' Committee supports the Debtors' business judgment and supports the relief requested in the Motion.  The Creditors' Committee asks, however, that the Court waive the bar date for claims and allow Eligible Salaried Employees a reasonable amount of time to file proofs of claim solely for the purpose of asserting claims stemming from the termination of Salaried OPEB. | Because section 1114 of the Bankruptcy Code does not apply, no claims would arise upon termination of Salaried OPEB.  Accordingly, granting Eligible Salaried Retirees the right to file such claims would waste judicial resources, needlessly burden the estate with an unnecessary administration process, and create an unjust expectation of remuneration among Eligible Salaried Retirees. |
| | • | Eligible Salaried Retirees should be allowed to file proofs of claim for the purpose of asserting claims stemming from the termination of Salaried OPEB. | |
| | | **Motions Related To Notice, Timing, And Process** | |
| 26. | • | A retiree committee should be appointed pursuant to 11 U.S.C. § 1114.  The Motion should be adjourned until this committee can meet with the Debtors as prescribed by statute. | As stated above, section 1114 of the Bankruptcy Code is inapplicable to the relief requested in the Motion.

Even if the Court should find section 1114 applicable, however, this Court nonetheless should not appoint a retiree committee because the motions are premature.  First, the Debtors clearly have not sought relief under section 1114.  Because they believe section 1114 to be inapplicable, the Debtors have – as the objectors point out – made no effort to comply with the procedures or standards set forth in section 1114.  If the Court were to find section 1114 applicable, therefore, the correct action would be to deny the Debtors' motion.  The Debtors would then have to reevaluate whether and when to proceed with a motion under section 1114.  There would be no benefit to the estates from paying fees to another statutory committee in the meantime.  Second, none of the motions seeking the appointment of a retiree committee complies with the Case Management Order because each was filed with less than the required 20 days' notice. |

8