# EXHIBIT A

**EXECUTION VERSION**

**AMENDMENT NO. 4 TO GM-DELPHI AGREEMENT**

**AMENDMENT NO. 4**, dated as of February 27, 2009 (this "Amendment"), among DELPHI CORPORATION, a Delaware corporation (the "Borrower"), a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code, and the subsidiaries of the Borrower signatory hereto (each a "Guarantor" and collectively the "Guarantors"), each of which Guarantors is a debtor and debtor-in-possession in a case pending under Chapter 11 of the Bankruptcy Code (the cases of the Borrower and the Guarantors, each a "Case" and collectively, the "Cases"), and GENERAL MOTORS CORPORATION ("GM").

**RECITALS:**

**WHEREAS**, the Borrower, the Guarantors and GM have previously entered into that certain agreement, dated as of May 9, 2008 and as amended by that certain (i) Amendment No. 1 effective as of October 6, 2008, (ii) Amendment No. 2 effective as of December 12, 2008, and (iii) Amendment No. 3 effective as of January 30, 2009 (as such may be further amended or otherwise modified, the "GM-Delphi Agreement");

**WHEREAS**, Delphi is seeking certain accommodations from the DIP Lenders; and

**WHEREAS**, the Borrower, the Guarantors and GM wish to enter into this Amendment to amend the GM-Delphi Agreement as set forth herein.

**NOW, THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

1. Defined Terms. Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the GM-Delphi Agreement.

2. Amendments. Subject to the terms and conditions set forth herein, effective as of the Effective Date (as defined below), the GM-Delphi Agreement is hereby amended as set forth below:

(a) Section 1.01 is hereby amended as follows:

(i) The definition of "Accommodation Agreement" is hereby amended and restated in its entirety to read as follows:

"Accommodation Agreement" shall mean that certain Accommodation Agreement, dated as of December 12, 2008, among the Borrower, the Guarantors hereunder, the DIP Lenders and JPMorgan Chase Bank, N.A., as administrative agent for the DIP Lenders, as amended by the Accommodation Agreement First Amendment and as further amended by the Supplemental Amendment to Accommodation Agreement, and as such agreement may be further amended or otherwise modified from time to time; *provided* that, in the event such agreement is amended or otherwise modified in a manner adverse to GM, the definitions and other references to the Accommodation Agreement herein shall be deemed references to such agreement without giving effect to any such amendment or modification.

(ii)    The definition of "Converted Loan" is hereby added in alphabetical order to Section 1.01 to read as follows:

"Converted Loan" shall have the meaning set forth in Section 2.14.

(iii)    The definition of "First Earlier PFP" is hereby added in alphabetical order to Section 1.01 to read as follows:

"First Earlier PFP" shall have the meaning set forth for such term in the GM-Delphi Pull-Forward Agreement.

(iv)    The definition of "Fourth Amendment Effective Date" is hereby added in alphabetical order to Section 1.01 to read as follows:

"Fourth Amendment Effective Date" shall have the meaning set forth for the term "Effective Date" set forth in that certain Amendment No. 4 to the GM-Delphi Agreement, dated as of February 27, 2009, by and between GM and the Borrower.

(v)    The definition of "Supplemental Amendment to Accommodation Agreement" is hereby added in alphabetical order to Section 1.01 to read as follows:

"Supplemental Amendment to Accommodation Agreement" shall mean the Supplemental Amendment to Accommodation Agreement, dated as of February 24, 2009.

(vi)    The definition of "Tranche B Commitment" is hereby amended and restated in its entirety to read as follows:

"Tranche B Commitment" shall mean the commitment of GM to make loans from time to time (a) from and after October 1, 2008 and prior to November 1, 2008 in an aggregate outstanding principal amount not to exceed $200,000,000, (b) from and after November 1, 2008 and prior to the Fourth Amendment Effective Date in an aggregate outstanding principal amount not to exceed $300,000,000 and (c) from and after the Fourth Amendment Effective Date in an aggregate outstanding principal amount not to exceed $350,000,000; *provided* that on the Fourth Amendment Effective Date, the First Earlier PFP shall be converted into, and deemed for all purposes under this Agreement to be, Tranche B Loans in accordance with Section 12(d) of the GM-Delphi Pull-Forward Agreement and Section 2.14 hereof.

(b)    Article 2 of the GM-Delphi Agreement is hereby amended by adding the following new Section 2.14:

**2.14    Conversion of Pull-Forward Payments**.  Any conversion by GM of a Pull-Forward Payment (as defined in the GM-Delphi Pull-Forward Agreement) into a Loan hereunder (each such Loan, a "Converted Loan") shall be made without regard to clause (a) of the proviso of Section 2.01(b) and Sections 2.02, 2.03, and 4.03 hereof and shall also be deemed to be an Advance of Loans made on the date of such conversion.  With respect to any Converted Loan, the Borrower will, within one Business Day of such conversion, designate in writing to GM a new Interest Period applicable to such Converted Loan, and the reference in Section 2.04 to an initial Interest Period specified in an Advance Request will be deemed to refer to such designation.

3. Conditions to Effectiveness of this Amendment. This Amendment shall become effective on the first date on which each of the following conditions precedent are satisfied (or otherwise waived by GM in its sole discretion) (the "Effective Date"):

(a) On or prior to February 27, 2009:

(i) Execution of Amendment. This Amendment shall have been executed by the Borrower and each of the Guarantors.

(ii) Documents and Certificates. GM shall have received such documents and certificates as GM or its counsel may reasonably request relating to the organization, existence and good standing of the Borrower and each of the Guarantors, the authorization of the transactions under this Amendment and any other legal matters relating to the Borrower and each of the Guarantors, this Amendment or the transactions contemplated hereunder, all in form and substance reasonably satisfactory to GM and its counsel.

(iii) No Default. (i) No Event of Default or event which upon notice or lapse of time or both would constitute an Event of Default shall have occurred and be continuing under the GM-Delphi Agreement and (ii) no Automatic Accommodation Termination Default and no Accommodation Default, and no event which upon notice or lapse of time or both would constitute an Automatic Accommodation Termination Default or an Accommodation Default, shall have occurred and be continuing under the Accommodation Agreement, in each case, unless such event has been waived or amended by the DIP Lenders and (iii) no amendments or other modifications to the DIP Credit Agreement with the effect of reducing the aggregate commitments or amounts available thereunder (except in accordance with the terms of the Accommodation Agreement) shall have become effective.

(iv) Fees and Expenses. GM shall have received the payment by the Borrower of all fees and expenses referred to herein and in the GM-Delphi Agreement.

(b) President's Designee Approval. The President's Designee (as such term is defined in that certain Loan and Security Agreement by and between GM and The United States Department of the Treasury, dated as of December 31, 2008, as may be amended from time to time (the "GM-Treasury LSA")), shall have not notified GM, on or before March 23, 2009 that the increase in the Tranche B Commitment to $350,000,000 is not permitted in accordance with the terms of the GM-Treasury LSA.

(c) Approval Order. The Bankruptcy Court shall have entered an order, on or before March 24, 2009, approving this Amendment (the "Approval Order"), which Approval Order (i) shall authorize extensions of credit hereunder up to an aggregate principal amount of $350,000,000, (ii) shall authorize the payment by the Borrower of all fees and expenses provided for herein and in the GM-Delphi Agreement and (iii) shall be in form and substance acceptable to GM.

4. Representations and Warranties. The Borrower and each Guarantor hereby represents and warrants to GM, on and as of the date hereof, both prior to and after giving effect to this Amendment, (i) the Borrower and each Guarantor has taken all necessary action to authorize the execution, delivery and performance of this Amendment, (ii) this Amendment has been duly executed and delivered by the Borrower and each Guarantor, respectively, and (iii) this Amendment is the legal, valid and binding obligation of the Borrower and each Guarantor, enforceable against it in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles.

5. Continuing Effect; Guaranties.

(a) Except as expressly set forth in this Amendment, all of the terms and provisions of the GM-Delphi Agreement are and shall remain in full force and effect and the Borrower and each Guarantor shall continue to be bound by all of such terms and provisions. The Amendment provided for herein is limited to the specific provisions of the GM-Delphi Agreement specified herein and shall not constitute an amendment of, or an indication of GM's willingness to amend or waive, any other provisions of the GM-Delphi Agreement or the same sections for any other date or purpose.

(b) The Borrower and each Guarantor hereby consents to this Amendment, including all increases in commitments and extensions of additional credit pursuant hereto and the execution, delivery and performance of the other documents (if any) to be executed in connection herewith. The Borrower and each Guarantor hereby acknowledges and agrees that all of its obligations, including all Guaranties granted to GM under the GM-Delphi Agreement, are reaffirmed and that such Guaranties shall continue in full force and effect on and after Effective Date to secure and support the Obligations of the Borrower and the Guarantors.

6. Expenses. The Borrower and each Guarantor jointly and severally agree to pay and reimburse GM for all its reasonable out-of-pocket costs and expenses incurred in connection with the negotiation, preparation, execution and delivery of this Amendment, and other documents prepared in connection herewith, and the transactions contemplated hereby, including, without limitation, reasonable fees and disbursements and other charges of counsel to GM.

7. Choice of Law. This Amendment and the rights and obligations of the parties hereto shall be governed by, and construed and interpreted in accordance with the law of the State of New York.

8. Counterparts. This Amendment may be executed in any number of counterparts and by different parties and separate counterparts, each of which when so executed and delivered, shall be deemed an original, and all of which, when taken together, shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Amendment by facsimile or e-mail shall be effective as delivery of a manually executed counterpart of this Amendment.

9. Integration. This Amendment, together with the GM-Delphi Agreement, incorporates all negotiations of the parties hereto with respect to the subject matter hereof and is the final expression and agreement of the parties hereto with respect to the subject matter hereof.

10. Severability. In case any provision in this Amendment shall be invalid, illegal or unenforceable, such provision shall be severable from the remainder of this Amendment and the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

11. Waiver of Jury Trial. Each of the parties hereto irrevocably waives trial by jury in any action or proceeding with respect to this Amendment and the GM-Delphi Agreement.

[SIGNATURE PAGES FOLLOW]

**[SIGNATURE PAGES OMITTED]**