# **<u>EXHIBIT B</u>**

regulations promulgated thereunder, and the Bank's Customer Identification Program and authorizes Bank to verify information as per the USA Patriot Act Regulation.

(f) Applicant acknowledges that this Agreement and each Credit is entered into (or will be entered into) for commercial purposes. To the extent that Applicant may now or hereafter be entitled, in any jurisdiction in which judicial proceedings may at any time be commenced with respect to this Agreement or any Credit, to claim for itself or its revenues or properties any immunity from the jurisdiction of any court or from legal process (whether from service or notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise), and to the extent that in any such jurisdiction there may be attributed to the Applicant any such immunity (whether or not claimed), Applicant hereby irrevocably agrees not to claim, and hereby waives, such immunity in respect of its obligations under this Agreement or any Credit.

5. **Representations and Warranties.** Applicant hereby represents and warrants as of the date of this Agreement (and with each Instruction for the issuance of a Credit represents and warrants as of the date of the Instruction) that: (a) it has all necessary power and authority to enter into and perform this Agreement; (b) it has obtained all authorizations, consents and approvals required for it to enter into and perform this Agreement in accordance with its terms; (c) this Agreement constitutes the legal, valid and binding obligation of Applicant, enforceable against it in accordance with its terms; (d) the execution, delivery and performance of this Agreement by Applicant does not and will not contravene (i) its charter, by-laws or other organizational documents, (ii) any order or writ binding on or affecting Applicant or its properties, or (iii) any agreement or arrangement to which Applicant is a party or by which it or its properties may otherwise be bound, the contravention of which agreement or arrangement would have a material adverse effect on Applicant; (e) no information now or hereafter furnished by Applicant to Bank in connection with this Agreement or any Credit is or shall be materially false or misleading when furnished; and (f) Applicant is acting for itself and for no other Person or entity in requesting issuance of each Credit.

6. **Pledge and Assignment of Security**. (a) All obligations and liabilities of Applicant to Bank in respect of any and all Existing Letters of Credit shall be secured by the Collateral (as defined in the Credit Agreement) to the extent set forth in, and subject to the terms and conditions contained in, the Loan Documents (as defined in the Credit Agreement).

(b) As security for the payment and performance of all obligations and liabilities of Applicant to Bank in respect of any and all Replacement Letters of Credit issued hereunder (if any) and under this Agreement, whether matured or unmatured, absolute or contingent, now existing or hereafter incurred ("**Obligations**"), Applicant hereby grants to Bank a continuing lien and security interest in, and pledges and assigns to Bank all of Applicant's present and future right, title and interest in, to and under all LC Cash Collateral Accounts and all products and proceeds of the foregoing (collectively, the "**Collateral**").

(c) Applicant shall hold all payments of the Obligations and all proceeds of Collateral in trust for Bank. Bank shall be deemed to have possession, custody or control of all Collateral actually in transit to or set apart for it (or any of its agents, correspondents or others acting in its behalf), it being understood that the receipt at any time by Applicant (or any of its agents, correspondents, or others acting in its behalf), of Collateral of whatever nature, including cash, shall not be deemed a waiver of any of Bank's rights or powers.

(d) If at any time the cash held (A) in the LC Cash Collateral Accounts isand (B) by Bank pursuant to the exercise by Bank of remedies in respect of unmatured or contingent Obligations under Section 7 hereof, is in the aggregate less than 105% of the US Dollar equivalent of the aggregate face amount of the issued and outstanding Replacement Letters of Credit, then, Applicant shall, upon Bank's demand, deliver to Bank, as additional security for the Obligations, cash in an amount equal to the difference between (X) 105% of the US Dollar equivalent of the aggregate face amount of the issued and outstanding Replacement Letters of Credit and (Y) the cash then held (1) in the LC Cash Collateral Accounts and (2) by Bank pursuant to the exercise by Bank of remedies in respect of unmatured or contingent Obligations under Section 7 hereof.

(e) Bank is authorized to file financing statements, naming Applicant as debtor and Bank as secured party, with respect to any or all of the Collateral hereunder. Bank is authorized to take any action necessary to protect its rights in the Collateral. Applicant will, at its own expense upon request by Bank from time to time, sign any other instrument or document (including any security agreement, or control agreement) and take any other action Bank may reasonably deem necessary or desirable to preserve, perfect, protect or maintain the Collateral and the priority

of Bank's security interest therein and to realize upon Bank's rights and remedies as a secured party.  For the avoidance of doubt and not in limitation of the rights of Bank under Sections 9-104(a)(1), 9-106(a) and 8-106(e) of the Code as adopted by the State of New York, Applicant and Bank (acting as a bank with respect to all LC Cash Collateral Accounts) agree that Bank may direct disposition of the funds in any LC Cash Collateral Account without the consent of Applicant.

(f) To the extent Bank honors a presentation for which Bank remains unpaid, Bank may assert rights of Applicant and Applicant shall cooperate with Bank in its assertion of Applicant's rights against the beneficiary, the beneficiary's rights against Applicant and any other rights that Bank may have by subordination, subrogation, reimbursement, indemnity or assignment.

(g) If Bank shall agree to honor (accept) Drawing Documents under a Credit on a time draft or deferred payment basis, Applicant shall not take possession of the Drawing Documents or the underlying Property except for the purpose of loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with such Property in a manner preliminary to its sale or exchange. An Instruction to release any such Drawing Document or Property shall be deemed a representation by Applicant to Bank that Applicant seeks such release for one of said purposes.  In each such case, Applicant immediately shall apply the sale proceeds of such Property to the Obligations relating to the applicable Credit (to the extent that such Obligations have not been reimbursed with proceeds from the LC Cash Collateral Accounts).

7.  **Events of Default; Obligations Due; Remedies**.  (a) Each of the following shall be an "**Event of Default**" under this Agreement: (i) Applicant shall fail to pay any sum payable upon or in respect of any of the Obligations when due and such default shall continue unremedied for more than two Business Days; (ii) Applicant shall fail to perform any agreement contained herein and such default shall continue unremedied for ten days; (iii) the Obligations of Applicant hereunder shall cease to be secured by a first priority lien on and the perfected pledge and security interest in the Collateral; (iv) an order of the Bankruptcy Court (as defined in the Credit Agreement) shall be entered (A) reversing, staying for a period in excess of 10 days, or vacating the order of the Bankruptcy Court entered on or about March 24, 2009 approving, inter alia, this Agreement, or (B) without the written consent of Bank, otherwise amending, supplementing or modifying such order in a manner that is reasonably determined by Bank to be adverse to Bank; (v) at any time prior to the emergence of Applicant and its subsidiaries from their respective Chapter 11 bankruptcy cases, the expiration or termination of the Accommodation Agreement (as defined in the Accommodation Agreement) or the Accommodation Period (as defined in the Accommodation Agreement); (~~v~~vi) any other Event of Default under and as defined in the Credit Agreement shall have occurred and be continuing; and (~~vi~~vii) any other Event of Default set forth in Appendix C hereto shall have occurred and be continuing; provided that, in no event shall any Specified Default (as defined in the Accommodation Agreement) constitute an Event of Default under this Agreement for so long as the Accommodation Agreement has not been terminated in accordance with its terms.

(b) Upon an Event of Default, (A) all of the Obligations (other than unmatured or contingent Obligations) shall be immediately due and payable without notice or demand and (B) upon written notice by Bank to such effect, all or any portion of the unmatured or contingent Obligations shall be immediately due and payable (whether or not a drawing or claim had in fact been made or paid) and Bank may, in addition to all other rights and remedies it may have at law or in equity, (i) exercise any remedies of a secured party under applicable law, including under the Code, (ii) charge, debit and/or set-off against any general or special account of Applicant maintained at any office of Bank (whether matured or unmatured) for the amount of the Obligations and all obligations in respect of Existing Letters of Credit, other than the Borrowing Base Cash Collateral Account and the Segregated Tranche C Interest Account, (iii) amend or terminate, or transfer drawing rights or cure one or more discrepancies under, any Credit, and/or (iv) make payment in satisfaction of the Obligations then due and payable and all obligations in respect of Existing Letters of Credit or hold all amounts, proceeds and Collateral as security for each Credit.  Upon an Event of Default, Bank shall be authorized to apply the balance of deposits and any sums credited by or due from Bank to Applicant in the LC Cash Collateral Accounts, in the case of the Replacement Letters of Credit, to the payment of any and all of the Obligations in respect of the Replacement Letters of Credit, and in the Letter of Credit Account (as defined under the Credit Agreement), in the case of the Existing Letters of Credit, to the payment of any and all of the obligations in respect of Existing Letters of Credit, in each case all without prejudice to the rights of Bank against Applicant with respect to any and all amounts which may be or remain unpaid.  If at any time Bank shall have applied any deposits and any sums credited by or due from Bank to Applicant in any account of the Applicant to the payment of all or any portion of the contingent or unmatured Obligations in respect of the Replacement

Letters of Credit, and at such time the cash held (1) in the LC Cash Collateral Accounts and (2) by Bank pursuant to such application of the Applicant's funds to the payment of such Obligations, is in the aggregate greater than 105% of the US Dollar equivalent of the aggregate face amount of the issued and outstanding Replacement Letters of Credit, then, Bank shall, upon Applicant's request, promptly remit to Applicant cash in an amount equal to the difference between (X) the cash then held (1) in the LC Cash Collateral Accounts and (2) by Bank pursuant to such application of the Applicant's funds to the payment of contingent or unmatured Obligations and (Y) 105% of the US Dollar equivalent of the aggregate face amount of the issued and outstanding Replacement Letters of Credit.

8. **Continuing Rights and Obligations.** Bank's rights and liens hereunder shall continue unimpaired, and Applicant shall be and remain obligated in accordance with the terms and provisions hereof, notwithstanding the release and/or substitution of any Property which may be held as security hereunder at any time, or of any rights or interest therein. Applicant waives any defense whatsoever which might constitute a defense available to, or discharge of, a surety or a guarantor. If more than one Person signs this Agreement or an Application hereunder, each of them shall be jointly and severally liable hereunder and thereunder and all the terms and provisions regarding liabilities, obligations and Property of such Persons shall apply to any liabilities, obligations and Property of any and all of them.

9. **Electronic Transmissions.** Bank is authorized to accept and process any Application and any amendments, transfers, assignments of proceeds, Instructions, consents, waivers and all documents relating to the Credit or the Application which are sent to Bank by electronic transmission, including SWIFT, electronic mail, telex, telecopy, telefax, courier, mail or other computer generated telecommunications and such electronic communication shall have the same legal effect as if written and shall be binding upon and enforceable against the Applicant. Bank may, but shall not be obligated to, require authentication of such electronic transmission or that Bank receives original documents prior to acting on such electronic transmission. If it is a condition of the Credit that payment may be made upon receipt by Bank of an electronic transmission advising negotiation, Applicant hereby agrees to reimburse Bank on demand for the amount indicated in such electronic transmission advice, and further agrees to hold Bank harmless if the documents fail to arrive, or if, upon the arrival of the documents, Bank should determine that the documents do not comply with the terms and conditions of the Credit.

10. **Jurisdiction; Waiver of Jury Trial.** (a) Applicant submits to the nonexclusive jurisdiction of any state or federal court located in the Borough of Manhattan, City of New York, State of New York, for itself and its Property and agrees that any such court shall be a proper forum for any action or suit brought by Bank. Service of process in any legal action or proceeding arising out of or in connection with this Agreement, any Instruction or any Credit may be made upon Applicant by mailing a copy of the summons to Applicant either at the address set forth in the applicable Application or at Applicant's last address appearing in Bank's records. In addition, if Applicant is organized or incorporated in a jurisdiction outside the United States of America, Applicant designates the CT Corporation located at 111 8th Avenue, New York, New York 10011 as the true and lawful agent and attorney-in-fact of Applicant for receipt of the summons, writs and notices in connection with any such action or suit.

(b) No legal action or proceeding arising out of or in connection with this Agreement, any Instruction or any Credit may be brought by Applicant against Bank (i) except in a state or federal court located in the Borough of Manhattan, City of New York, State of New York and (ii) unless commenced within one (1) year after (X) the expiration date of the applicable Credit or (Y) the alleged breach shall have purportedly occurred, whichever is earlier.

(c) **THE PARTIES HERETO WAIVE (I) THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL ACTION OR PROCEEDING IN WHICH BANK AND APPLICANT ARE PARTIES (WHETHER OR NOT THE ONLY PARTIES) ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, ANY INSTRUCTION OR ANY CREDIT AND (II) THE RIGHT TO INTERPOSE ANY CLAIM, SETOFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION.**

11. **Applicable Law; Severability. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflict of laws.** The UCP and the ISP are incorporated by reference into this Agreement and are evidence of Standard Letter of Credit Practice with respect to matters covered therein provided, however, that to the extent permitted by applicable law, this Agreement shall prevail in case of a conflict between this Agreement, the Uniform Commercial Code (the "**Code**"), and/or Standard Letter of Credit Practice and the UCP shall prevail in case of conflict between the UCP and the Code or other Standard Letter of Credit Practice, if the Credit is governed by the UCP and the ISP shall prevail in case of a