Hearing Date and Time: February 24, 2009 (prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
Ron E. Meisler (RM 3026)

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x | | |

DECLARATION OF STEVEN GEBBIA IN SUPPORT
OF DEBTORS' SALARIED OPEB TERMINATION MOTION

I, Steven Gebbia, declare and state as follows:

1.  I submit this declaration in support of the Motion For Order Under 11 U.S.C. §§ 105, 363(b)(1), And 1108 Confirming Debtors' Authority To Terminate Employer-Paid Post-Retirement Health Care Benefits And Employer-Paid Post-Retirement Life Insurance Benefits For Certain (A) Salaried Employees And (B) Retirees And Their Surviving Spouses (the "Motion") filed by Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion. All facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my experience with and knowledge of Delphi's employee benefit programs, or knowledge obtained from Delphi employees reporting to me within the scope of their duties.

2.  I am employed by Delphi Corporation as Executive Director, Benefits & Policy.  I joined Delphi in 1998 as Executive Director, Employee Benefits.  I also am the Chairman of Delphi's Employee Benefit Plans Committee ("EBPC").  Prior to joining Delphi, I was employed by General Motors Corporation ("GM") as Director, Life & Disability Benefits and had worked at GM in various capacities since 1971.  In 1985, I began working in GM's benefits department.  In my current position with Delphi, I am responsible for directing activities regarding the administration of Delphi's global employee benefit plans and programs and Delphi's U.S. salaried policies, procedures, practices, and administration guidelines.  I personally will be adversely affected by the modification or termination of the employee benefit plans and programs that provide post-retirement health and life insurance benefits.

A.   Current Salaried Retiree Benefits

3.   The Debtors currently maintain employee benefit plans and programs to provide retirement benefits to certain of the Debtors' current active salaried employees, retirees, and their surviving spouses (collectively, the "Eligible Salaried Retirees"):[1] (i) employer-paid health benefits, including medical, prescription drug, dental, mental health, vision, extended care, and hearing (the "Medical Benefits") and (ii) employer-paid life insurance benefits (the "Insurance Benefits," and together with the Medical Benefits, the "Salaried OPEB "). In total, Delphi currently provides approximately 15,000 Eligible Salaried Retirees with Salaried OPEB. The Debtors fund Salaried OPEB through Company contributions, Eligible Salaried Retirees' contributions, and private insurance arrangements.

4.   Eligibility for Salaried OPEB in retirement is based upon an Eligible Salaried Retiree's date of hire and the plans or programs of the particular Debtor employer.[2] Generally, those Eligible Salaried Retirees who began working for GM prior to January 1, 1993 (the "Pre-1993 Salaried Employees") are currently eligible for employer-paid Salaried OPEB. Salaried employees hired by Delphi or GM on or after January 1, 1993, and on or prior to December 31,

---

[1]   Eligible Salaried Retirees include those salaried employees who retire in accordance with the Debtors' policies. Employees may retire under various eligibility provisions including, but not limited to, (i) attaining 30 years of credited service, (ii) attaining age 55 with at least 10 years of credited service, or (iii) attaining age 65 with at least one year of credited service. Eligible Salaried Retirees include similarly-qualified retirees of several of Delphi's subsidiaries and affiliates which are also debtors in these jointly administered chapter 11 cases, and which includes Packard Hughes Interconnect Company ("PHI"), Delphi Mechatronic Systems, Inc. ("D-MS"), ASEC Manufacturing General Partnership, and ASEC Sales General Partnership (collectively "ASEC"). Eligible Salaried Retirees also include employees, retirees, and surviving spouses from certain Delphi-divested business units. Finally, Eligible Salaried Retirees include eligible non-union hourly and timesheet employees who are employed by Delphi Diesel Systems Corp. ("Delphi Diesel"). Delphi Diesel is a subsidiary of Delphi and a debtor in these jointly-administered chapter 11 cases. Delphi Diesel does not have any union employees or retirees and maintains only one benefit plan for all of its hourly and salaried employees and retirees. The Debtors' records reflect that four Delphi Diesel retirees and eighty-seven active Delphi Diesel employees, including thirty-one hourly and seventeen timesheet employees, would be affected by the relief sought by the Motion.

[2]   Although the eligibility of certain Eligible Salaried Retirees was originally determined by the employee benefit plans or programs of the particular Debtor employer, Delphi currently provides Salaried OPEB to the Eligible Salaried Retirees who retired from PHI, D-MS, and ASEC through the same employee benefit plans and programs through which Delphi delivers Salaried OPEB to its Eligible Salaried Employees.

3

Declaration of Steven Gebbia

2000 (the "1993 to 2000 Salaried Employees"), and salaried employees who began working for Delphi on or after January 1, 2001 (the "Post-2000 Salaried Employees") are not currently eligible for employer-paid Salaried OPEB.[3]

5.   Salaried OPEB currently available to each group of Eligible Salaried Retirees is as follows:

   a.   <u>Pre-1993 Salaried Employees</u>.  Pre-1993 Salaried Employees are eligible for employer-paid Salaried OPEB until they become eligible for Medicare benefits in the normal course at age 65.  At that point, they are no longer eligible for coverage under the Delphi Salaried Health Care Program, even on a self-pay basis.  Rather, Delphi makes available to them a notional Retiree Health Reimbursement Account ("RHRA") (of $10,000 or $20,000 depending on retirement date) which the Eligible Salaried Retiree can use to defray the costs of purchasing medical insurance supplemental to Medicare.[4]  Pre-1993 Salaried Employees are also eligible to receive a Medicare special benefit (the "Medicare Special Benefit") that partially reimburses them for the Medicare Part B premiums they pay if they are enrolled in Medicare Part B.[5]  Pre-1993 Salaried Employees also remain eligible for employer-paid Insurance Benefits in retirement.

---

[3]   The 1993 to 2000 Salaried Employees are, however, eligible to receive the 1% employer contribution to the Salaried Retirement Savings Program.  By the Motion, the Debtors seek authority to terminate this contribution.

[4]   The Debtors currently maintain approximately 1,300 RHRAs for current Eligible Salaried Retirees.  Additionally, there are approximately 10,500 current and future Eligible Salaried Retirees for which the Debtors would have to establish accounts under the current provisions for such accounts.  On a yearly basis, the Debtors reimburse approximately $3.2 million to Eligible Salaried Retirees.

[5]   The Medicare Special Benefit amounts to an additional $76.20 per month ($914.40 per annum) to each Eligible Salaried Retiree's pension check.  As of today approximately 1,300 Eligible Salaried Retirees receive the Medicare Part B premium reimbursement.  Accordingly, the Debtors currently spend in the aggregate approximately $1.2 million per year on the Medicare Special Benefit.

4

   b. <u>1993 to 2000 Salaried Employees</u>.  In lieu of employer-paid Salaried OPEB, 1993 to 2000 Salaried Employees currently receive a 1% employer contribution into their defined contribution plan, the Delphi Salaried Retirement Savings Program (formerly known as the Savings-Stock Purchase Program or S-SPP), while they are actively employed.[6]  They are eligible post-retirement to continue Medical Benefits at 100% of the cost.  They are also eligible to continue Insurance Benefits after retirement, provided they pay the full cost.

   c. <u>Post-2000 Salaried Employees</u>.  The Post-2000 Salaried Employees may continue Medical Benefits from Delphi after they retire, so long as they pay 100% of the cost.  They are not, however, eligible for the 1% Salaried Retirement Savings Program contribution.  They are eligible to convert their Insurance Benefits to an individual policy after retirement provided they pay the full cost.

  6. During the course of these chapter 11 cases, the Debtors have been providing Salaried OPEB to Eligible Salaried Retirees as authorized by the Human Capital Obligations Order entered by this Court on October 13, 2005 (Docket No. 198).  The Human Capital Obligations Order authorized, but did not direct, the Debtors to continue their various benefit plans and programs as described in the Human Capital Motion, including the various programs constituting Salaried OPEB.

B. <u>Proposed Salaried Retiree Benefits</u>

  7. In early 2009, I was asked to provide certain information regarding Salaried OPEB that was to be used in connection with a presentation to the Delphi Strategy Board ("DSB").  The requested information concerned Salaried OPEB, proposed changes thereto, and information concerning the Debtors' reservation of the right to make changes to Salaried OPEB.

---

[6] Currently, approximately 2,500 of the 1993 to 2000 Salaried Employees receive a 1% employer contribution.  On a yearly basis, this amounts to approximately $2 million.

Ultimately, on February 3, 2009, the information that I was asked to provide was discussed at a DSB meeting that I attended.

8.    Included in the information that I provided to the DSB was the information contained in the chart below, which accurately compares, by employee status, the current retiree Medical and Insurance Benefits, and the Debtors' proposed treatment of the various groups:

| Employee Status | Current Retiree Medical and Insurance Benefits | Proposed Treatment |
| --- | --- | --- |
| Active Salaried Employees Hired By GM Prior To 1993 (approx. 5,100) | Eligible for Delphi-paid Medical and Insurance Benefits in retirement | Not eligible for Delphi-paid Medical and Insurance Benefits in retirement<br><br>May continue their existing Medical Benefits in retirement, provided 100% self-paid. May also convert Insurance Benefits to individual policy at retirement |
| | Eligible for RHRA at Medicare eligibility | No RHRA at Medicare eligibility |
| | Eligible for Medicare Special Benefit | No Medicare Special Benefit |
| Active Salaried Employees Hired By GM Or Delphi Between 1993 And 2000 (approx. 2,500) | Not eligible for Delphi-paid Medical or Delphi-paid Insurance Benefits in retirement; may continue Medical Benefits in retirement, provided 100% self-paid; and may convert Insurance Benefits to individual policy at retirement, provided 100% self-paid | No changes |
| | Delphi contributes 1% of base into Delphi Salaried Retirement Savings Program | 1% contribution cancelled |
| Active Post-2000 Salaried Employees Hired By Delphi (approx. 1,300) | Not Eligible for Delphi-paid Medical or Delphi-paid Insurance Benefits in retirement; may continue Medical Benefits in retirement, provided 100% self-paid; and may convert Insurance Benefits to individual policy at retirement, provided 100% self-paid | No changes |

| Employee Status | Current Retiree Medical and Insurance Benefits | Proposed Treatment |
|---|---|---|
| Retired Salaried Employees Who Were Hired By GM Prior To 1993<br><br>(approx. 6,300) | Delphi subsidizes Medical Benefits until Medicare eligible (i.e., age 65) and Insurance Benefits for life | Subsidies for Medical and Insurance Benefits terminated<br><br>May continue their existing Medical Benefits in retirement, provided 100% self-paid<br><br>Will be offered one-time ability to enroll in or increase coverage (subject to proof of good health) under Optional Life Plan, provided 100% self-paid. May elect an increase of one times annual base salary at retirement |
| | Eligible for RHRA at Medicare eligibility | Cancelled |
| | Eligible for Medicare Special Benefit | Cancelled |
| Retired Salaried Employees Hired By GM Or Delphi Between 1993 And 2000<br><br>(approx. 200) | No subsidy for Medical Benefits; may continue Medical Benefits in retirement, provided 100% self-paid; and may convert active Insurance Benefits to individual policy at retirement, provided 100% self-paid | No changes |
| Retired Post-2000 Salaried Employees Hired By Delphi<br><br>(minimal) | No subsidy for Medical and Insurance Benefits; may continue Medical Benefits in retirement, provided 100% self-paid; and may convert active Insurance Benefits to individual policy at retirement, provided 100% self-paid | No changes |

9. In an effort to communicate these changes, on February 5, 2009, the Debtors sent certain information to Eligible Salaried Retirees, including a letter from the Debtors concerning the proposed changes, an Estimated 2009 Retiree Self-Pay Rates chart, and a brochure entitled "Health Care and Life Insurance: Questions and Answers, February 2009" (the "2009 Materials," a copy of which is attached as <u>Exhibit 1</u>). The Debtors sent the 2009 Materials by U.S. mail to retirees, sent it by e-mail to active employees, and posted the 2009 Materials on the Debtors' internal and external benefits websites. With respect to health care coverages, the 2009 Materials convey the point that the proposed changes would not change what is covered under

the existing Salaried OPEB, just who will pay for the coverage. The letter reiterates that retirees "may continue heath coverages on a self-pay basis by paying the full cost of any coverages continued" and attaches "a chart showing the estimated cost of the various coverages." See Exhibit 1 at 1. If eligible retirees or surviving spouses elect to continue existing health coverages under Salaried OPEB, then there will be no interruption in coverage and any health condition that would have been covered under the existing health care plan would continue to be covered after the proposed changes to Salaried OPEB. As discussed below, the Debtors continue to reserve the right to further amend, modify, suspend or terminate the benefit plans in whole or in part, at any time.

C.      Current Salaried OPEB Can Be Modified Or Terminated By Debtors At Any Time

10.     Between 1985 and Delphi's spin-off from GM on January 1, 1999, I worked in GM's employee benefits department. Prior to January 1, 1999, GM offered the following Salaried OPEB to Eligible Salaried Retirees: (i) Salaried Health Care Program, (ii) Life and Disability Benefits Program, and (iii) Savings-Stock Purchase Program (the "1998 GM Plans"). In December 1998, shortly before Delphi's spin-off from GM, Delphi established plans that were substantially identical to the 1998 GM Plans (the "1999 Delphi Plans"). Both the 1998 GM Plans and the 1999 Delphi Plans included a provision that expressly reserved the Debtors' unilateral right to modify or terminate each of the respective programs.

11.     Also around that time, in early 1999, the Debtors sent to Eligible Salaried Retirees a letter stating that the terms of Delphi's plans would be substantially the same as the terms of the plans GM had in place at the time of Delphi's spin-off from GM (the "1999 Letter," a copy of which is attached as Exhibit 2). The letter enclosed a booklet containing general information about Eligible Salaried Retirees' benefits. As did the 1998 GM Plans and 1999 Delphi Plans, the

8

Declaration of Steven Gebbia

booklet expressly noted Delphi's reservation of rights:

> Delphi reserves the right to amend, modify, suspend, increase, decrease or terminate any of its employee benefits plans or programs by action of its Board of Directors (Board) or other committee or individuals expressly delegated by the Board to take such action. The benefits to which an employee is entitled are determined solely by the provisions of the applicable benefit plan or program. Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not provided for under the applicable benefit program, or to change the eligibility criteria or any other provisions of such program.

See Exhibit 2, page 6.

12.     Since that time through the present, Delphi has consistently included Delphi's express reservation of rights in the Salaried OPEB plans subject to the Motion. The following chart highlights the language in the existing Salaried OPEB plans:

| Current Plan or Program Affected By Motion[7] | Provision Permitting Modification or Termination |
|---|---|
| Delphi Salaried Health Care Program | "The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of Directors or other committee expressly authorized by the Board to take such action." (Art. I, Sec. 1(b)(1).) |
| Delphi Salaried Life and Disability Benefits Program | "The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of Directors or other committee expressly authorized by the Board to take such action." (Art. III, Sec. 3.05(b)(1).) |
| Salaried Retirement Savings Program | "The Corporation reserves the right to amend, modify, suspend, or terminate the Program in whole or in part, at any time, by action of its Board of Directors or other individual or committee expressly authorized by the Board to take such action." (Art. III, Sec. 2.) |

13.     In sum, the reservation-of-rights language was part of the 1998 GM Plans, was continued by the Debtors in the 1999 Delphi Plans, and has continued to be included in the Salaried OPEB plans to the present. I am not aware of any provision in any of the plans or

---

[7]     True and accurate copies of the existing plans and programs affected by the Motion are attached hereto as follows: Delphi Salaried Health Care Program (Exhibit 3), Delphi Salaried Life and Disability Benefits Program (Exhibit 4), and the Salaried Retirement Savings Program (Exhibit 5).

programs covered by the Motion that would either restrict the Debtors' unilateral right to modify or terminate the plans or programs or require the Debtors to refrain from effectuating the proposed termination.

D.  Delphi Consistently Communicated Right To Modify Or Terminate Salaried OPEB

14.  As discussed above, the 1998 GM Plans, the 1999 Delphi Plans, and the 1999 Letter all contained language that expressly reserved the Debtors' right to unilaterally modify or terminate each of the respective programs. Since that time, Delphi has consistently communicated its right to modify or terminate Salaried OPEB.

15.  Starting in fall 1999, Delphi began sending to Eligible Salaried Retirees annual enrollment forms for the 2000 benefit enrollment period. Delphi sent annual enrollment materials by U.S. mail to retirees in September 1999 (a copy of which is attached at Exhibit 6) and to active employees in October 1999 (a copy of which is attached at Exhibit 7) (collectively, "2000 Enrollment Materials"). The 2000 Enrollment Materials contain the same reservation-of-rights language:

> Delphi Automotive Systems reserves the right to amend, modify, suspend or terminate any of its benefits plans or programs by the action of its Board of Directors, or individual or other committee expressly authorized by the Board to take such action. . . . Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not provided for under the applicable benefit program, or to change the eligibility criteria or any other provisions of such program.

See Exhibit 6 at 27; Exhibit 7 at 43. Since then, Delphi has consistently included a substantially similar reservation of rights in its subsequent annual enrollment materials to Eligible Salaried Retirees.[8]

---

[8]  In 2003, the Debtors transitioned from sending annual enrollment materials by U.S. mail to posting the materials on the Debtors' internal website and public website used by the Debtors to communicate benefit information.

16.     In addition, in early 2000 through early 2004, Delphi annually sent active salaried employees a Personal Benefits Summary concerning their benefits for the preceding calendar year, which included then-existing Salaried OPEB (each a "Benefits Summary").  A representative sample of Benefits Summaries for each year that Delphi issued them is attached as <u>Exhibit 8</u>.  The Benefits Summaries consistently reflected the Debtors' express reservation of the right to unilaterally modify or terminate benefits programs, including Salaried OPEB.  <u>See</u> Exhibit 8 at 5 (1999),  15 (2000), 25 (2001), 34 (2002), and 43 (2003).[9]

17.     In 2001, Delphi issued new formal Summary Plan Descriptions ("SPDs") to all Eligible Salaried Retirees.  Delphi issued an SPD covering Post-2000 Salaried Employees in July 2001 (a copy of which is attached as <u>Exhibit 9</u>) and a separate SPD covering Pre-1993 Salaried Employees and 1993 to 2000 Salaried Employees in December 2001 (a copy of which is attached as <u>Exhibit 10</u>) (collectively, the "2001 SPDs").  Both 2001 SPDs contain the same express reservation-of-rights language:

> Delphi Automotive Systems reserves the right to amend, change, or terminate the Plans and Programs described in this booklet. The Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors. No other oral or written statements can change the terms of a benefit Plan or Program.
>
> *     *     *
>
> *Right to Amend, Modify, Suspend or Terminate.*  Delphi Automotive Systems reserves the right to amend, modify, suspend, increase, decrease or terminate any of its employee benefit plans or programs by action of its Board of Directors (Board) or other committee or individual expressly authorized by the Board to take such action. The benefits to which an employee is entitled are determined solely by the provisions of the applicable benefit plan or program. Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not

---

[9]     In early 2000, the Debtors sent the Eligible Salaried Retirees their 1999 Benefit Summary by U.S. mail.  In early 2001 through early 2004, the Debtors made Eligible Salaried Retirees' Benefits Summaries for the preceding calendar year available electronically.

11

>provided for under the applicable benefit plan or program, or to change the eligibility criteria or any other provisions of such plan or program.

See Exhibit 9 at (ii) and 91; Exhibit 10 at (ii) and 128.

18.   In March 2005, the Company decided to modify its Delphi Heath Care Program with the modifications having an effective date of January 1, 2007.  The change eliminated Delphi's payment for health care coverage for life and instead provided that Delphi would pay for retiree heath care only until age 65 when the retiree was eligible for Medicare.  To communicate and explain the change, later that month, Delphi sent by U.S. mail to all Eligible Salaried Retirees a bulletin entitled "Changes In 2007 Post-Retirement Health Care Coverage U.S. Salaried Health Care Program" (the "2005 Bulletin," a copy of which is attached as Exhibit 11).  The 2005 Bulletin states:

>Delphi reserves the right to amend, modify, suspend, increase, decrease or terminate any of its salaried employee benefit plans or programs, including the Salaried Health Care Program, at any time.

See Exhibit 11 at 12.

19.   After the March 2005 modification of the Delphi Health Care Program, Delphi posted information concerning the changes on their internal website as well as the public website that Delphi used to communicate benefit information.  In April 2005, the Debtors made available to Eligible Salaried Retirees a document entitled "Post-Employment Health Care Changes For 2007: Frequently Asked Questions" (attached as Exhibit 12).  In October 2006, the Debtors made available to Eligible Salaried Retirees another related document entitled "Frequently Asked Questions: Salaried Retiree Health Care Update Meetings, October 2006" (attached as Exhibit 13).  These documents both contain the same footer on each page that reads:  "The information presented is a summary only. Eligibility for benefits is determined by actual plan provisions. Delphi reserves the right to amend, modify, suspend, increase, decrease or terminate any of its

salaried benefit plans and programs at any time." See Exhibits 12 and 13.

20.     In addition, the Debtors created presentations to communicate the March 2005 change. In March and April 2005, the Debtors used presentations during Web meetings with Eligible Salaried Retirees who were still working at the time (a copy of which is attached as Exhibit 14) and at "road shows" in areas with significant populations of Eligible Salaried Retirees who no longer worked at Delphi (a copy of which is attached as Exhibit 15). In October 2006, shortly before the changes became effective, the Debtors created another Power Point presentation to further communicate the changes (a copy of which is attached as Exhibit 16). All of these presentations were posted on the Debtors' internal and public websites and contain the same footer on each page that reads: "The information presented is a summary only. Eligibility for benefits is determined by actual plan provisions. Delphi reserves the right to amend, modify, suspend, increase, decrease or terminate any of its salaried benefit plans and programs at any time." See Exhibits 14 through 16.[10]

21.     Over the years, Delphi has offered certain Eligible Salaried Retirees the opportunity to participate in various early retirement programs (the "Salaried Retirement Incentive Programs"). My understanding is that these programs generally have been coordinated from Delphi headquarters. At least with respect to these, I am aware of the following: (a) 1999 Delphi Window Retirement Program, effective January 1, 1999; (b) 1999 Delphi Window Retirement Program, effective February 1, March 1, or April 1, 1999; (c) 2001 Delphi Salaried Retirement Incentive Program, effective February 1, 2001; (d) 2001 Delphi Delco Salaried

---

[10] In addition to the changes made in March 2005, the Company made other changes from time to time between 1999 and the present, such as in rates and premiums. The Company's communications regarding such changes were accompanied with the Company's standard reservation-of-rights language which confirmed the Company's ability to terminate Salaried OPEB or did not waive the Debtors' right to modify or terminate Salaried OPEB.

Retirement Incentive Program Agreement, effective April 1, 2001; (e) 2002 Delphi U.S. Salaried Retirement Incentive Program, effective January 1, February 1, March 1, 2002; (f) 2004 Delphi U.S. Targeted Salaried Retirement Incentive Program, effective February 1 or March 1, 2004; (g) 2004 Delphi U.S. IT Targeted Salaried Retirement Incentive Program, effective April 1 or May 1, 2004; and (h) 2005 Delphi Packard Special Salaried Transitional Retirement Opportunity, effective July 1 or August 1, 2005.  As a condition of eligibility for these Salaried Retirement Incentive Programs, an active salaried employee needed to sign a form agreement.  Each of the form agreements expressly reserved Delphi's unilateral right to modify or terminate benefits programs, including Salaried OPEB.[11]

22.    I have reviewed the Objection to the Motion filed by Paul M. Higgins, James Conger, Doug A. Kittle, Joni Walls, and other Non-Union Salaried retirees (the "Higgins Objection").  Attached as Exhibit B to the Higgins Objection are two letters to retirees of Delphi regarding Continuing Life Insurance.  These letters were sent by Delphi's Plan Administrator and not the Debtors.  Under the terms of the Life Insurance program in place at that time, the amount of the Company-paid life insurance as a percentage of final base salary "stepped down" at retirement and again thereafter.  The purpose of letters such as these was to convey to Eligible Salaried Retirees that the last "step down" had occurred under the terms of the then-existing program.

23.    I also reviewed the Response And Limited Objection Of International Union, UAW To Debtors' Salaried OPEB Termination Motion (Docket No. 14822) (the "UAW Objection").  In footnote 2 of the UAW Objection, the UAW seeks clarity as to the date on which salaried retirees' coverage would be cancelled and the steps that retirees may be able to

---

[11]    Form agreements for each of the Salaried Retirement Incentive Programs listed above are attached as Exhibit 17.

14

take to continue their health insurance.  As discussed above, in the 2009 Materials, the Debtors noted that the changes would be effective April 1, 2009, and the Debtors provided very specific instructions for those retirees wanting to continue their health insurance coverages.  (See Exhibit 1.)  The UAW also inquired into the impact of the changes on payments of certain claims.  If Eligible Salaried Retirees comply with the requirements for continuing their health care coverages on a self-pay basis by paying the full cost of any coverages continued, then their existing health care coverages remain intact.

I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 20th day of February 2009.

>    */s/ Steven Gebbia*
>    STEVEN GEBBIA