1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 05-44481

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   DELPHI CORPORATION, ET AL.,

9

10          Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                  U.S. Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  February 24, 2009

19                  10:08 a.m.

20

21   B E F O R E:

22   HON. ROBERT D. DRAIN

23   U.S. BANKRUPTCY JUDGE

24

25

2

1   MOTION to Approved (I) Approving Bidding Procedures, (II)

2   Granting Certain Bid Protection, (III) Approving Form and

3   Manner of Sale Notices, and (IV) Setting Sale Hearing Date

4

5   MOTION to Approve Agreement to Modify Automatic Stay to Allow

6   Lautzenhiser Technologies, LLC to Assert Claims Against Delphi

7   Medical Systems Corporation in Pending Patent Litigation

8

9   MOTION for Order Authorizing Debtors to (I) Enter Into

10   Amendment to Accommodation Agreement With Certain Participating

11   DIP Lenders and (II)(A) Enter Into Related Documents and (B)

12   Pay  Fees and Expenses in Connection Therewith

13

14   MOTION for Order Authorizing Debtors to Enter Into (I) Third

15   Amendment to Arrangement With General Motors Corporation and

16   (II) Amendment to Partial Temporary Accelerated Payment

17   Agreement With General Motors Corporation

18

19   MOTION for Order Under 11 U.S.C. Sections 105, 363(b)(1), and

20   1108 Confirming Debtors' Authority to Terminate Employer-Paid

21   Postretirement Health Care Benefits and Employer-Paid Post-

22   Retirement Life Insurance Benefits

23

24   MOTION to Confirm Engagement and Retention of Special Counsel

25   in Connection With Plan Investor Litigation

3

1   APPLICATION to Appoint an Official Committee of Retired

2   Employees Receiving Retiree Benefits not Covered by Collective

3   Bargaining Agreement

4

5   MOTION to Shorten Notice with Respect to Affected Retirees'

6   Motion to Appoint Official Retiree Committee

7

8   MOTION to Appoint Official Retiree Committee

9

10   NOTICE of Supplement Amendment to Accommodation Agreement

11

12   NOTICE of Filing of Revised Proposed Accommodation Amendment

13   Order

14

15

16

17

18

19

20

21

22

23

24   Transcribed By:  Esther Accardi

25

4

```
 1   A P P E A R A N C E S :

 2   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

 3        Attorneys for Debtors

 4        333 West Wacker Drive

 5        Chicago, Illinois 60606

 6

 7   BY:   JOHN WM. BUTLER, ESQ.

 8        AL HOGAN, ESQ.

 9

10

11   SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

12        Attorneys for Debtors

13        4 Times Square

14        New York, New York 10036

15

16   BY:   KAYALYN A. MARAFIOTI, ESQ.

17

18

19   LATHAM & WATKINS, LLP

20        Attorneys for Creditors' Committee

21        885 Third Avenue

22        New York, New York 10022

23

24   BY:   ROBERT ROSENBERG, ESQ.

25        MICHAEL RIELA, ESQ.
```

5

1   A P P E A R A N C E S : (continued)

2   FARELLA BRAUN & MARTEL, LLP

3        Attorneys for Salaried Retirees Association

4        235 Montgomery Street

5        San Francisco, California 94104

6

7   BY:   DEAN M. GLOSTER, ESQ.

8

9

10  STAHL COWEN CROWLEY ADDIS, LLC

11        Attorneys for Higgins Group

12        55 West Monroe Street

13        Chicago, Illinois 60603

14

15  BY:   TRENT P. CORNELL, ESQ.

16

17

18  MCTIGUE & PORTER, LLP

19        Attorneys for Nicholson Group

20        4530 Wisconsin Avenue, NW

21        Washington, D.C. 20016

22

23  BY:   BRYAN T. VEIS, ESQ.

24

25

6

1    A P P E A R A N C E S : (continued)

2    SPENCER FANE BRITT & BROWNE, LLP

3         Attorneys for Nicholson Group

4         1 North Brentwood Blvd.

5         St. Louis, Missouri 63105

6

7    BY:    DANIEL D. DOYLE, ESQ.

8

9

10    COHEN WEISS AND SIMON, LLP

11         Attorneys for UAW

12         330 West 42nd Street

13         New York, New York   10036

14

15    BY:    BABETTE CECCOTTI, ESQ.

16

17

18    FRIEDMAN KAPLAN SEILER & ADELMAN, LLP

19         1633 Broadway

20         New York, New York 10019

21

22    BY:    WILLIAM P. WEINTRAUB, ESQ.

23

24

25

7

1   A P P E A R A N C E S : (continued)

2   WEIL GOTSHAL & MANGES, LLP

3        767 Fifth Avenue

4        New York, New York 10153

5

6   BY:   JOLEE ADAMICH, ESQ.

7

8

9   U.S. DEPARTMENT OF JUSTICE

10   OFFICE OF THE U.S. TRUSTEE

11        33 Whitehall Street

12        New York, New York 10004

13

14   BY:   DIANA G. ADAMS, ESQ.

15

16

17   DELPHI CORPORATION

18   BY:   MARK WEBER, ESQ.

19        BETH SAX, ESQ.

20        (Telephonically)

21

22

23   PENTWATER CAPITAL MANAGEMENT

24   BY:   JORDAN FISHER

25        (Telephonically)

8

1                    P R O C E E D I N G S

2           THE COURT:  Be seated.  Okay, Delphi Corporation.

3           MR. BUTLER:  Your Honor, good morning.  Jack Butler,

4    Kayalyn Marafioti and Al Hogan here for the debtors, for their

5    fortieth omnibus hearing.

6                There are ten matters, Your Honor, on today's agenda.

7    We propose to take them in the order on the agenda.

8           THE COURT:  Okay.

9           MR. BUTLER:  Your Honor, the first matter on the

10   agenda is the debtors' salaried OPEB termination motion, at

11   docket number 14705.  Your Honor, there have been approximately

12   a little over 1600 objections that have been filed to this

13   motion.  Of those objections there are five that have been

14   filed by either entities or groups that are represented by

15   counsel, either objections or statements.  I'll discuss those

16   in a minute.

17                We have reviewed each of the balance of the

18   objections, which were filed in pro se, by affected parties.

19   And we have summarized those objections in the exhibit to our

20   reply that we filed last evening.  There are approximately

21   twenty-six, if you will, of subject matter objections that have

22   been made to the -- separate objections that have been made to

23   the motion, and we have dealt with those in our response.

24                Of the five that are here, that are represented by

25   counsel, those objections are docket number 14765, the Higgins

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 9 of 205

9

1    Group, which is a group of retirees, which we'll refer to as

2    the Higgins Group.  And Mr. Trent Cornell is in the courtroom

3    today representing their interests.

4            There is an objection at docket number 14782 filed by

5    a group of retirees headed by Mr. Nicholson and we'll refer to

6    them as the Nicholson Group.  And Mr. Bryan Veis and Mr. Dan

7    Doyle are here to represent their interests.

8            There was also an objection filed at docket number

9    14819 by an entity that was denominated the Delphi Salary

10   Retirees Association.  This is an unincorporated association,

11   it was formed earlier this month in response to the motion.

12   And they're interests are being represented by Mr. Dean

13   Gloster, who is here in the courtroom today.

14           In addition, there was a limited objection filed by

15   the UAW.  Ms. Ceccotti is here today and Mr. Rosenberg filed a

16   statement on behalf of the creditors' committee.  The UAW

17   limited objection is at docket number 14822 and Mr. Rosenberg's

18   statement is at docket number 14881.

19           As we do, Your Honor, in contested matters where

20   there's an evidentiary record, we won't make any opening

21   arguments today, but rather proceeding, with Your Honor's

22   permission, to the record.

23           THE COURT:  Okay.

24           MR. BUTLER:  First, Your Honor, I'd like to deal with

25   the evidence -- excuse me, the exhibits -- the documentary

10

1   evidence.  We have met and conferred with counsel.  There are

2   some ninety proposed joint exhibits.  The uncontested exhibits

3   consist of the objectors declaration at what will be Exhibits

4   Number 3 and 4.  My understanding is that Mr. Beach was unable

5   to be here today and that counsel's withdrawing Mr. Beach's

6   declaration.

7           MR. VEIS:  That's correct, Your Honor.  Bryan Veis

8   from the McTigue & Porter, Washington D.C.  Mr. Beach had a

9   medical emergency, was unable to attend.  We are withdrawing

10  Exhibit 5.

11          THE COURT:  Okay.

12          MR. BUTLER:  And, Your Honor, as a practical matter,

13  the substance of Mr. Beach's testimony in, in our view,

14  subsumed in declarations 3 and 4 that we are not objecting to.

15          THE COURT:  Okay.

16          MR. BUTLER:  Your Honor, the salaried OPEB plan

17  documents, Exhibit 6 through 13 are not objected to.  The

18  salaried OPEB summary plan descriptions and employee

19  communications are Exhibits 14 through 39, they're not objected

20  to.  The board materials of Exhibits 40 through 48 are not

21  objected to.  The materials issued by General Motors

22  Corporation, Exhibits 49 through 51 are not objected to.  The

23  Court documents at Exhibits 52 through 64 are, similarly, not

24  objected to.  And certain of the documents offered by objectors

25  at Exhibits 65, 86, 87, 88 and 90 also were not objected to.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 11 of 205

11

1    These documents I've just described, these exhibits, have no

2    objection and we move for their admission, Your Honor, into the

3    evidentiary record, and be admitted subsequently for all

4    purposes the Court may choose to use them.

5              THE COURT:  Okay.  Hearing no objection to the

6    admission of those exhibits, I'll admit them.

7    (Salaried OPEB Plan Documents were hereby received as Hearing

8    Exhibit 6-13 for identification, as of this date.)

9    (Salaried OPEB Summary Plan Description and Employee

10   Communications were hereby received as Hearing Exhibit 14-39

11   for identification, as of this date.)

12   (Board Materials were hereby received as Hearing Exhibit 40-48

13   for identification, as of this date.)

14   (Court Documents were hereby received as Hearing Exhibit 52-64

15   for identification, as of this date.)

16   (Documents by Objectors were hereby received as Hearing

17   Exhibits 65, 86, 87, 88, 90 for identification, as of this

18   date.)

19             MR. BUTLER:  I'd like now, Your Honor, to cover some

20   evidentiary agreements that have been reached.  The debtors had

21   objected to Exhibit 66, which was a letter from Delphi's plan

22   administrator to the retirees on hearsay grounds.  There is an

23   agreement that Exhibit 66 can be admitted to show that the

24   communication exists and that it was sent to certain retirees

25   by Delphi's plan administrator.

12

1          THE COURT:  Okay.

2          MR. BUTLER:  With respect to Exhibits 67 through 75

3  and 79 through 85, which consists of benefit books and plan

4  communications from General Motors to retirees, there was an

5  objection on hearsay grounds.  Again, there is an agreement

6  that these can come in to represent that they reflect that

7  these communications existed, and that they were sent to

8  certain retirees by General Motors.

9          THE COURT:  Okay.

10          MR. CORNELL:  Your Honor, if I may be heard on that?

11          Your Honor, Trent Cornell on behalf of the Higgins

12  Group, as we're referring to it.

13          We had agreed that the documents at 66 through 75 --

14  excuse me, 67 through 75 were -- the debtors had agreed to the

15  authenticity of the documents, and we've reached that agreement

16  and we did not reach any further agreement beyond the

17  authenticity.  I'd like to offer that just for clarification.

18          THE COURT:  Well, is there still a hearsay objection

19  as well, or --

20          MR. BUTLER:  Yeah.  I mean, our hearsay objection was

21  settled based on the view that they can be admitted to show

22  that the communications existed and that they were sent to

23  certain retirees by General Motors.

24          MR. CORNELL:  Your Honor, under Federal Rule of

25  Evidence 80316, once the admissibility -- or the authentication

13

1   has been admitted to then -- these are documents that are over

2   twenty years old, they're no longer hearsay.  We had an

3   agreement on the authentication on it.  I don't know that we're

4   even going to go to the truth of the matter asserted, but I

5   just wanted to be clear as to what our position was.

6          THE COURT:  Well, do they make assertions as to facts

7   in the documents?

8          MR. CORNELL:  Your Honor, the documents speak for

9   themselves.  And what we're putting them in for is the notice

10  of information that was sent to retirees.  So I don't think

11  that we're even going to have a disagreement on it, but I

12  wanted to be clear as to what the agreement was that we had

13  reached.

14         MR. BUTLER:  Again, I think that the purpose of it --

15  and I think what counsel says, and I think we're agreeable to

16  this, they can be admitted to show that those communications

17  existed and they were sent to certain retirees of General

18  Motors.  We're settling our hearsay objection on that basis.  I

19  don't know what else -- and it sounds to me is what counsel

20  wants to use them for.

21      (Pause)

22         THE COURT:  Well, if, indeed, they're twenty years

23  old or older, then they would be covered by 80316.  So as long

24  as you're agreeing to their authenticity --

25         MR. BUTLER:  We are, Your Honor.  I'm only reporting

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 14 of 205

14

1    the agreement that we believe we had confirmed in writing with

2    counsel.  And we can produce the e-mails.  But, you know, I'm

3    not disputing the fact that some of these documents are more

4    than twenty years old.

5              THE COURT:  Okay.  All right.

6              MR. BUTLER:  Your Honor, with respect to Exhibit 79,

7    which has Bates numbers DSRA 164-168, that document is

8    incomplete.  And we objected to it because it was incomplete.

9    However, in reviewing the documents we determined that Exhibit

10   Number 71 at Bates number AR 121 through AR 126 represents a

11   complete version of this document.  So we're not going to

12   object to Exhibit 79 coming in so long as it's supplemented by

13   Exhibit 71, which is the complete document.

14             THE COURT:  Okay.

15             MR. BUTLER:  Your Honor, based on these agreements

16   that have been reached as to the exhibits I just discussed, I

17   would move their admission subject to the terms of the

18   agreements placed on the record.

19             THE COURT:  All right, they're admitted.

20   (Letter from Delphi Plan Administrator was hereby received as

21   Hearing Exhibit 66 for identification, as of this date.)

22   (Benefit Books and Plan Communications from GM Retirees were

23   hereby received as Hearing Exhibit 67-75 and 79-85 for

24   identification, as of this date.)

25             MR. BUTLER:  Your Honor, there are some contested

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 15 of 205

15

1  items that were not agreed to.  I should say there's one more

2  that  we just settled before the hearing.  We had objected to

3  Exhibits 76 through 78.  These were exhibits offered by the

4  association consisting of GAO reports and Congressional

5  testimony with regards to retiree health insurance availability

6  and health coverage tax credits.  We've agreed that they can

7  come in, be viewed by Your Honor as to whatever weight of the

8  evidence should be attached to them.  But they're not admitted

9  to the truth of the matter asserted in those documents.  That's

10  our agreement that's been reached.

11          THE COURT:  Okay.

12          MR. GLOSTER:  Good morning, Your Honor.  Dean

13  Gloster, Farella Braun & Martel on behalf of the Delphi

14  Salaried Retirees' Association.  Those are, essentially,

15  legislative materials and they would come in in exception of

16  the hearsay rule.

17          But as a practical matter, Your Honor, we're simply

18  offering them like one would offer any other legislative

19  materials.  We're not -- obviously, the man who testified in

20  front of Congress is not here for cross examination.  But we

21  think they help the Court in the understanding of what actually

22  happens upon benefit determination.  And, as well, they help

23  the Court understand the difficulty that's created because of

24  the failure to coordinate with the health coverage tax credit

25  here.

16

1           THE COURT:  Okay.

2           MR. BUTLER:  Your Honor, I think the only debtor

3   objection that's not been resolved, is we objected to Exhibits

4   83 to 85 -- 83 and 85 on completeness grounds.  These were

5   offered by the Retirees' Association.  They're excerpts,

6   apparently, of General Motor's Corporation benefit booklets for

7   the years 1988 and 1995.  Exhibit 83 contains only three pages

8   of what we believe is a fifty-four page document.  And Exhibit

9   85 contains only two pages of what we believe was 102 page

10  document.  We, therefore, object on the grounds of

11  completeness because the entire documents were not offered by

12  the objector.  And we, also, on that basis, because of there

13  only be excerpts, and photocopies of excerpted documents, we've

14  also objected based on Federal Rule of Evidence 901 as to

15  authentication.

16          THE COURT:  Okay.

17          MR. GLOSTER:  Your Honor, Dean Gloster.

18          With regard to authentication, I believe that those

19  documents are self-authenticating.  If you view them in

20  connection with the other materials sent by GM, they are in the

21  same format, they have the same sort of -- those documents are

22  self-authenticating.  With respect to completeness, Your Honor,

23  we are representing hundreds of retirees, who, on short notice,

24  have sent us faxes and e-mails and are difficult to reach over

25  a weekend, and difficult to reach to get their benefit books.

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 17 of 205

17

1  We are happy to supplement the record hereafter with complete

2  copies of those.  But as a practical matter, it is the debtor

3  who likely has complete copies of these records, and so we

4  would seek to supplement the record with complete copies of

5  these if it becomes important to the Court.

6           THE COURT:  Okay.  I will admit them subject to

7  supplementation.  And with a further proviso that the debtors

8  use good faith efforts to assist you in supplementing the

9  books, if they're available at the debtors.  If they're not,

10  then you don't have to go beyond that.

11           MR. BUTLER:  Your Honor, we've already done that.  We

12  tried to locate these versions.  These are old General Motors'

13  documents and not Delphi documents.

14           THE COURT:  Okay.

15           MR. BUTLER:  And we were not able to locate them.

16           THE COURT:  All right.  So I'll admit them but only

17  on the condition that the record be subsequently supplemented

18  with the full book.

19  (GAO Report, Congressional Testimony with Regard to Retiree

20  Health Insurance and Health Coverage Tax Credits were hereby

21  received as Exhibit 76-78 for identification, as of this date.)

22           MR. GLOSTER:  Thank you, Your Honor.

23           MR. BUTLER:  Your Honor, I think the only other

24  evidentiary matter is that the association has an objection to

25  paragraph 23 of Mr. Miller's declaration, which is Exhibit 1,

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 18 of 205

18

1  Hearing Exhibit 1.  And they have objections to paragraphs 8,

2  9, 21, and 23 of Mr. Gebbia's declaration, which is Exhibit 2.

3  If counsel wants to present those objections.

4          THE COURT:  I'm sorry, what paragraph of the

5  Miller --

6          MR. BUTLER:  Start with Mr. Miller's, Your Honor,

7  there was an objection -- an unresolved objection by the

8  Association as to paragraph 23 of Mr. Miller's declaration.

9  Exhibit 1 having to -- regarding his understanding of the

10  debtors' right to terminate the plan.

11          MR. GLOSTER:  Your Honor, Dean Gloster.

12          Our objection is that there's lack of foundation,

13  there's no basis for his understanding stated here.  In

14  addition to the extent that his understanding relies on other

15  people, it is hearsay to the extent that it relies on

16  documents.  It's the best evidence rule.  It is also a legal

17  conclusion and an attempt to introduce expert opinion through

18  lay testimony.

19          THE COURT:  The documents speak for themselves.  I

20  will admit this, though, for the limited basis that Mr.

21  Miller's a member of the board and a member of the bodies that

22  deliberated on this proposal.  And he reflects in his affidavit

23  or his declaration that those groups were informed by various

24  parties, including professionals, with regard to these issues,

25  and made their deliberations accordingly.  So I'll admit it for

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 19 of 205

19

1   that purpose.  But the agreements will speak for themselves.

2   And, obviously, as far as the statement is one being asserted

3   for the truth of the matter as opposed to what he understood, I

4   won't consider it.

5   (Mr. Miller's Declaration was hereby received as Hearing

6   Exhibit 1 for identification, as of this date.)

7           MR. BUTLER:  Your Honor, the next unresolved

8   objection, all four of these deal with Mr. Gebbia's declaration

9   at Exhibit 2, Trial Exhibit 2.  And that is the first objection

10  the Association had was with respect to paragraph 8 of the

11  declaration.

12          MR. GLOSTER:  Your Honor, we withdraw that objection.

13          THE COURT:  Okay.

14          MR. BUTLER:  The next objection that the Association

15  had unresolved, was the final two sentences of paragraph 9 of

16  Mr. Gebbia's declaration.

17          MR. GLOSTER:  Your Honor, this is a testimony as to a

18  legal conclusion by a lay individual.  It is also inconsistent

19  with his understanding of the benefits that he states

20  throughout here where he says that they are, in fact,

21  terminable and modifiable in the future.  And misstates the law

22  with respect to COBRA continuation coverage, because if the

23  debtor does not have any program for health benefits then COBRA

24  continuation coverage, which allows retirees to pay 104 percent

25  of the cost of the premiums to continue COBRA, simply doesn't

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 20 of 205

20

1    give them any right to continue coverage if there is no medical

2    plan at all.   So it misstates the law, it's an attempt to

3    testify about a legal conclusion, it is inaccurate, it does not

4    match the witness' own understanding of the benefit programs.

5           MR. BUTLER:  Your Honor, to the extent that counsel

6    would be correct, that somehow there's a difference of view in

7    Mr. Gebbia's own testimony, that objection really goes to the

8    weight of the evidence not the admissibility of the evidence.

9    And counsel is going to be free to cross Mr. Gebbia on this.

10          There's no applicable hearsay objection here.   This

11   is a Court statement.   I think this objection really does go to

12   the weight of the evidence and not admissibility.   And,

13   finally, there's no legal conclusions here.   This is Mr.

14   Gebbia's statement as one of the Delphi executives responsible

15   for the administration of his plans, about his understanding of

16   the rights and obligations of the plans.   And that is a fact

17   and not a legal conclusion.   And it's not testimony that would

18   require specialized or scientific knowledge.   And they'll be

19   free to cross examine him as to his understandings in a few

20   moments.

21          THE COURT:  Okay.  Well, I -- the second sentence is

22   just a reservation of rights, which is clearly something that

23   the debtors are doing -- are free to do.   The first sentence

24   that's objected to is a statement of Mr. Gebbia's belief and

25   representing the debtors' believe as to what will happen if the

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings   Pg 21 of 205

21

1   eligible retirees or surviving spouse elect to continue

2   existing health coverage under salary at OPEB.  I believe that

3   should be in the records as a statement of the debtors' belief.

4   And it could be subject to, obviously, parties showing me it's

5   wrong either as a matter of fact or law.

6          MR. BUTLER:  Your Honor, the next objection of the

7   Association relates to paragraph 21 of Mr. Gebbia's

8   declaration, regarding the offering of early retirement and the

9   conditions associated with that?

10          THE COURT:  The whole paragraph?

11          MR. BUTLER:  I believe the objection was to the whole

12  paragraph.

13          MR. GLOSTER:  Your Honor, we have no objection so

14  long as it is limited simply to discussing these programs.

15          MR. BUTLER:  I'm not sure what that limitations me.

16  The word -- the testimony is what it is.

17          MR. GLOSTER:  To the extent he's talking about just

18  these programs, then we don't have an objection.  To the extent

19  that he is attempting to reach a conclusion as to other

20  programs that are not these and says my understanding is that

21  the programs generally have been coordinated from Delta

22  headquarters.  To the extent he's attempting to testify about

23  other programs of which he has no personal knowledge, it is

24  hearsay and there is no foundation.

25          MR. BUTLER:  He's not.

22

1          THE COURT:  Okay.  I don't -- I think there's really

2    no basis for this objection given what I read in this

3    paragraph.  If you want to clarify that further you can ask him

4    about it.  But I don't see -- I think the meaning of this

5    paragraph is clear.

6          MR. BUTLER:  Your Honor, the final unresolved

7    objection that I'm aware of this morning, is the Association's

8    objection to the final two sentences of paragraph 23 of Mr.

9    Gebbia's declaration, regarding those -- the subject matter of

10   those two sentences.

11         MR. GLOSTER:  Your Honor, you've already ruled with

12   respect to paragraph 9, which disposes of this objection.  It's

13   the same issue about him stating what the consequences are.

14         THE COURT:  Okay.

15         MR. GLOSTER:  Your Honor's already ruled.

16         THE COURT:  That ruling will apply to this paragraph,

17   too.

18         MR. BUTLER:  You Honor, I think that deals with all

19   of the written evidence.  We'd now move to the cross

20   examination on the declarations.

21         MR. CORNELL:  Your Honor, may I be heard this

22   morning?

23         Your Honor, we had agreed that the evidence that

24   would be used would cross all of the various motions that have

25   been filed today.  But we are making an objection to the order

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 23 of 205

23

1   of this proceeding, in that the debtor is putting on its case

2   in it's motion to terminate the benefits prior to the two

3   motions for the formation of a Section 1114 committee.  Your

4   Honor, we would proffer that that is putting the cart before

5   the horse.  The issue is -- ultimately what the debtors are

6   trying to argue is that there is unilateral termination and

7   they're going to be putting on evidence of it.  What we are

8   arguing in our motion and the motion filed by the Spencer Fane

9   firm, is that there needs to be a retiree committee so the

10  retirees can defend themselves against that very same motion.

11  So we're objecting to the procedural order, Your Honor.

12          MR. BUTLER:  Your Honor, the order of the agenda --

13  and 1114 is certainly something that has been dealt with across

14  all the motions, including the objectors have asserted 1114 in

15  their responses to this motion, so it's at issue here.  They

16  are in agenda order, they did file their motions after we filed

17  our motion for termination.  And, again, I think the -- there

18  is -- I think the case law here is pretty clear, that if we

19  have the unilateral right to terminate there's no right for

20  1114 committee.  And we think that this evidentiary record,

21  which we've agreed with counsel, would apply to all motions,

22  all these motions, and needs to come in prior to the argument

23  on any of the motions.

24          THE COURT:  Okay.  I believe the debtors' motion

25  should be heard first.  One of the objections to that motion is

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 24 of 205

24

1    that it puts the cart before the horse, and that objection

2    certainly will be raised as part of this -- of my hearing their

3    motion.  But in my view, the same objection could be made by

4    the debtors if I heard the motion for a committee first.  And

5    I'm not inclined to prejudge those motions by appointing a

6    committee to defend against the debtors' motion, which would

7    be the only reason to hear the motion for a committee first.

8    So I'll hear the debtors' motion first.  And I'm fully aware of

9    the objection, though, which is that this is the type of action

10   that would require the appointment of a representative and a

11   committee in going through the steps required by Section 1114.

12   And that objection, obviously, is made to this motion and is

13   part of the process that I'll consider in ruling on the

14   debtors' motion.

15           MR. BUTLER:  Your Honor, I just also want for clarity

16   of the record.  We did, when we filed our response, file

17   objections to the motions in the omnibus reply.  And we agree

18   with counsel that the evidentiary record would apply to all the

19   motions so that the matters will be essentially before Your

20   Honor before we finish the record.

21           THE COURT:  Okay.

22           MR. BUTLER:  Your Honor, the first declaration that

23   we're presenting for cross examination is the declaration of

24   Mr. Miller, who has provided, but stated the concurrence by the

25   board of directors, and made the substantive determination on

25

1   behalf of the Delphi Strategy Board, the Delphi Strategy

2   Investment Group, the two bodies that made the determinations

3   and the business judgment that's in the motion before you.

4           THE COURT:  Okay.  Does anyone want to cross examine

5   Mr. Miller?

6           MR. VEIS:  Yes, Your Honor.

7           THE COURT:  Okay.  So you can come up to the stand,

8   please.

9       (Pause)

10          THE COURT:  Would you raise your right hand, please.

11      (Witness is sworn)

12   CROSS EXAMINATION

13   BY MR. VEIS:

14   Q.   Good morning, Mr. Miller.  My name is Bryan Veis.

15   A.   Good morning.

16   Q.   I'm with the law firm of McTigue & Porter in Washington

17   D.C.  I represent the group that's filed an objection, the lead

18   name on that objection is Mr. Nicholson.

19       I'd like to ask you a few questions about your

20   declaration, if I may get to it here.  First, I'd like you to

21   take a look -- do you have your declaration in front of you?

22   A.   No, I do not.

23       (Pause)

24   A.   Thank you.

25   Q.   I'd like you to take a look, if you would, please, at

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 26 of 205

26

1  paragraph 9, which is on page 4.

2  A.    Yes, sir.

3  Q.    That paragraph relates to projected cash savings, and the

4  elimination of a liability from the debtors' balance sheet,

5  correct?

6  A.    Correct.

7  Q.    And those numbers are listed as a savings in excess of

8  seventy million dollars per year?

9  A.    Yes, sir.

10 Q.    And the --

11         THE COURT:  You said seventy?

12         MR. VEIS:  Sorry?

13         THE COURT:  Seventy?

14         THE WITNESS:  Yes.

15 Q.    Seventy million dollars per year.  And it also says cash

16 savings of approximately 200 million dollars in the aggregate

17 during the business plan period?

18 A.    Correct.

19 Q.    All right.  And it also represents that there is a

20 liability that will be eliminated of 1.1 million dollars,

21 correct?

22 A.    Correct.

23 Q.    Now, in your -- let me ask you this.  Did you perform the

24 calculations that underlay those numbers?

25 A.    No, I did not, personally.  Our staff did.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 27 of 205

27

1  Q.   I'm sorry, you what?

2  A.   The Delphi financial staff prepared that analysis.

3  Q.   Did the financial -- in connection with your declaration

4  have you presented the underlying calculations for the Court to

5  review?

6  A.   No.

7  Q.   So the anticipated savings that you're testifying about

8  are savings that you have no personal knowledge of, correct?

9  A.   The reasonableness of the projections is based on the fact

10 that we have had this program in place for many years.  And we

11 have a run rate we can look at at the continuing health care

12 expense.  It is -- there's no particular assumption as to the

13 adjustment in those costs, other than in normal business

14 projection.  But it's based on the historical facts that had

15 been occurring for the duration of this program.

16 Q.   But you have no personal knowledge of that, do you, sir?

17 A.   No.

18 Q.   And you haven't provided the Court with any of the

19 analyses that underlie those projections, have you?

20 A.   I have not.

21 Q.   Now, let me invite your attention -- well, no.  First, in

22 your  declaration at paragraph 24, if you would take a look at

23 page 8.  You discuss the detailed presentation you received?

24 A.   Yes.

25 Q.   And you discuss the consideration of the impact of such

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 28 of 205

28

1   termination on retirees, correct?

2   A.   Correct.

3   Q.   And where is the impact on retirees reflected in the

4   materials attached to your declaration?

5   A.   There is a reference in the declaration acknowledging, we

6   understand, the hardship that this may entail for many of our

7   retirees.  The basis for the presentation was the harsh

8   economic reality facing this company as it seeks to

9   restructure.

10  Q.   Well, let me address your attention to a document that's

11  set forth at Tab 45, which is the 2009 recommended action

12  impacting U.S. seller and employees.

13              THE COURT:  Do you know what binder that's in?

14              MR. VEIS:  I'm not sure which binder

15              MR. BUTLER:  I have it at 3, Your Honor.

16              THE WITNESS:  Volume 3 it appears to be.

17  Q.   I'd like to ask you, sir, to look at the page that's been

18  marked DPHOTM 0001681.

19              MR. BUTLER:  I'm sorry, do you mean Exhibit 47 or 45?

20              MR. VEIS:  I'm sorry, did I get the wrong number.  I

21  have 45 in my list.  Is it --

22              MR. BUTLER:  It's 47.

23              MR. VEIS:  I apologize.  Apparently, it's Tab 47 in

24  the --

25  A.   The number ending in?

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 29 of 205

29

1   Q.    1681.

2   A.    I have it.

3   Q.    Now, you see the first bullet point, you see a line with

4   "discussions?"

5   A.    Yes.

6   Q.    And now do you see the second sentence and the third, the

7   one that starts "further, based on management?"

8   A.    Yes.

9   Q.    Could you read that aloud, please?

10  A.    "Further, based on management and advisor analysis OPEB

11  cessation, in particular, is necessary to address balance sheet

12  issues to enable a plan of reorganization.  Stakeholder input

13  provided to management and outside advisor, strongly reinforces

14  this conclusion."

15  Q.    Now, in your declaration you discussed stakeholders in

16  several places, don't you?

17  A.    Correct.

18  Q.    Now, for example, in paragraph 18, could you take a look

19  at that, please?  You see where it says "the debtors are

20  currently engaged in discussions," are you there, sir?

21  A.    Yes, sir.

22  Q.    Do you see where it says "the debtors are currently

23  engaged in discussions with their stakeholders who have a

24  continuing economic interest in the debtors' reorganization

25  cases to formulate further plan modifications," you see that

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 30 of 205

30

1    sentence?

2    A.    Yes, sir.

3    Q.    And in paragraph 8, you have another statement concerning

4    stakeholders, correct?  If you can take a look at the sentence

5    that begins in the seventh line.  Actually, the sentence starts

6    above that.

7    A.    Correct.

8    Q.    It says "Delphi has been working and continues to work

9    closely with its advisors and stakeholders," do you see that?

10   A.    Yes.

11   Q.    You haven't had any discussions with retirees, have you?

12   A.    No.

13   Q.    Does that indicate that you do not consider retirees to be

14   stakeholders of the debtors?

15   A.    I should amend my statement.  I do have some friends who

16   are retirees who have expressed their concerns to me.  I do

17   have from time to time written letters or e-mails that have

18   come to me from retirees, but I have not spoken to retirees as

19   an organized group.

20   Q.    Nor have you been working with any retirees to resolve

21   issues, have you?

22   A.    No, sir.

23   Q.    Now, does that indicate that you do not consider retirees

24   to be stakeholders, is that what you're telling me?

25   A.    I do consider retirees to be stakeholders.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 31 of 205

31

1   Q.   Well, you recognize that retirees do have the continuing

2   economic interest in the debtors' reorganization?

3   A.   Yes.

4   Q.   Well, don't you think that being told that they're giving

5   up their OPEB coverage to generate hundreds of millions of

6   dollars in projected cost savings gives the salaried employees

7   a very significant economic interest?

8   A.   Yes, they have an economic interest in that.

9   Q.   Now, in paragraph 3 of your declaration, and this has been

10  discussed earlier in connection with the evidentiary

11  objections, you state that you understand that the terms of the

12  plans and programs that provide the OPEB reserve the right to

13  amend, modify, suspend or terminate the plans at any time,

14  correct?

15  A.   Correct.

16  Q.   Now, is that understanding based on Mr. Gebbia's

17  declaration?

18  A.   Well, it's based on the reviews that I had made in our

19  internal discussions looking at the documentation.

20  Particularly, all the plan documents which have consistently

21  reserved the right of the corporation to amend or terminate

22  OPEB.

23  Q.   If you would, please, turn to Exhibit 80.

24       (Pause)

25            THE COURT:  If you can, if you would let me know what

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 32 of 205

32

1   binder the exhibits are in?

2          MR. BUTLER:  Yes.  80 is in volume 5.

3          THE WITNESS:  5.

4   A.   Yes, sir.

5   Q.   Number 80 is the General Motors 1980 summary plan

6   description, is it not?

7   A.   Correct.

8   Q.   Now, do you know if anyone working for Delphi looked at

9   the 1980 General Motors summary plan description prior to the

10  filing of the motion to terminate?

11         MR. BUTLER:  Objection.  Your Honor, we have an

12  objection as to relevance as to lines of questioning dealing

13  with Exhibit 80.  This is a 1980 plan document.  It proceeds --

14  from General Motors Corporation.  It proceeds the decision made

15  in the Sprague case in the Sixth Circuit in 1988, where the

16  Sixth Circuit determined that all these GM plans had specific

17  reservation of rights.  And it was those plans, the plans that

18  were determined by Sprague, or the plans that Delphi took over

19  when Delphi was spun out.  There is no relevance to any

20  document from General Motors preceding the Sprague case in

21  connection with this hearing.

22         MR. VEIS:  Your Honor, if I may.  Mr. Doyle will be

23  presenting a more detailed analysis of the inapplicability of

24  the Sprague case in this matter.  But suffice it to say that

25  the law set out in Sprague is not the law in the Second

33

1  Circuit.  Mr. Doyle will be discussing that subsequently.  I'd

2  like to proceed at least to question Mr. Miller on this for a

3  couple of more questions, just to establish whether or not it

4  was looked at.

5           MR. BUTLER:  The Sprague case was out in 1998, no

6  '88.  It is what Delphi took  -- the plans that are before this

7  Court are the plans that Delphi has expressly reserved rights

8  for and that General Motors reserves rights for.  And that

9  Sprague determined in 1998 when these were General Motors'

10 plans that there were absolute reservation of rights to

11 terminate.  And so we have taken these plans subject to the

12 Sprague decision.  Trying to go back in history beyond the 1998

13 decision to point to anything which the Sprague Court

14 conclusively resolved, as to the plans that Delphi took,

15 because that was the controlling authority as to what Delphi

16 took in 1999 is irrelevant to these proceedings.

17           THE COURT:  Okay.  I'll let you ask the question.

18           MR. VEIS:  Thank you, Your Honor.

19           THE COURT:  Which was did you consider this 1980

20 plan?

21           THE WITNESS:  I don't recall specifically looking at

22 this 1980 plan.  I was generally aware of the Sprague case and

23 generally aware of the consistent documentation provided in

24 plan documents and made available to all of our salaried

25 employees from the inception of Delphi Corporation.

34

1   Q.   But this predates the inception of Delphi Corporation,

2   correct?

3   A.   I understand.

4   Q.   And I believe Mr. Gebbia's declaration discusses the

5   transition from General Motors to Delphi, but I'd like to talk

6   to you now about the 1980 summary plan description.  You don't

7   know whether the 1980 summary plan description contains a

8   reservation of rights, do you?

9            THE COURT:  He just said he didn't consider it.

10           MR. VEIS:  I'm sorry, Your Honor?

11           THE COURT:  He just said he didn't consider it.

12           MR. VEIS:  Thank you, Your Honor.

13   Q.   Now, the proposed termination of salaried retiree OPEB

14   benefits eliminates all benefits, isn't that correct?

15   A.   Well, all OPEB benefits, yes.

16   Q.   The documents that the debtors have submitted to the Court

17   contain no sensitivity analyses that would tell us whether

18   there were intermediate steps that could be taken to reduce

19   expenses without complete termination, do they?

20   A.   No.

21   Q.   And the documents don't mention, for example, modifying

22   the benefits to, say, half the current level, do they?

23           MR. BUTLER:  Objection, asked and answered?

24           THE COURT:  Sustained.

25           MR. VEIS:  I have no further questions, Your Honor.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 35 of 205

35

1          MR. GLOSTER:  Your Honor, I have one brief question.

2          THE COURT:  Okay.  You can stay there if you want.

3    CROSS EXAMINATION

4    BY MR. GLOSTER:

5    Q.   Mr. Miller, the analysis performed of the cost savings,

6    what assumption was made about what percentage of the retirees

7    would elect COBRA continuation coverage?

8    A.   I'm not aware that we came to any conclusion as to how

9    many would elect the coverage.

10   Q.   Was there any discussion of the likely outcome of what

11   percentage of the retirees would elect COBRA continuation

12   coverage?

13   A.   I would only say that we were very aware that this would

14   be a significant hardship imposed on all of our retirees.  We

15   were very concerned about it, we discussed it at length, but we

16   came to the conclusion that we had no reasonable basis for a

17   business judgment to continue the program beyond the end of

18   March.  We are aware that there may be some who would elect to

19   forego continuing the coverage that is available because of

20   economic hardship that this may impose upon some families.  But

21   we did not make any kind of estimate as to how many -- any

22   estimate that I was aware of as to how many would choose to

23   continue coverage, and how many would forego coverage.

24   Q.   Was there any discussion of terminating the benefits

25   before GM purchased plants specifically to cut off any

36

1   potential COBRA continuation coverage responsibility of GM?

2   A.   We are in discussions with General Motors about the

3   possibility of their taking possession of the plants.  But

4   that -- those discussions are far from complete and far from

5   any certainty that that will occur.  In the meantime, the

6   debtor is under severe liquidity challenges.  Every week, every

7   month is a challenge.  We have to go back to renew our --

8   Q.   Mr. Miller, I understand that the debtor is under

9   substantial financial stress, but I'm asking a yes or no

10  question.  Was there a discussion of terminating these benefits

11  prior to any transaction with GM for the purpose of avoiding

12  any COBRA continuation coverage responsibility of GM?

13  A.   I do not recall that being part of the discussion.

14  Q.   Thank you, sir.

15        MR. GLOSTER:  No further questions.

16        MR. CORNELL:  If I may, briefly, Your Honor?

17        THE COURT:  Sure.

18  CROSS EXAMINATION

19  BY MR. CORNELL:

20  Q.   Mr. Miller, Trent Cornell on behalf of certain salaried

21  retirees.  Mr. Miller, you testified that it's your business

22  judgment that Delphi needs to eliminate this liability in order

23  to save 1.1 billion dollars, correct?

24  A.   Yes.

25  Q.   Are you aware that counsel for the debtors filed a

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 37 of 205

37

1   response to the various objections and motions that have been

2   brought with respect to Section 1114?

3   A.    Yes.

4   Q.    Are you aware that in that response brief, the debtors set

5   up that "if the Court were to find Section 1114 applicable,

6   therefore, the correct action would be to deny the debtors'

7   motion.  The debtors would then have to reevaluate whether and

8   when to proceed with the motion under Section 1114," is that

9   correct?

10  A.    Well, yes.

11  Q.    So are you saying then that if an 1114 committee is

12  appointed it would no longer be your business judgment to

13  eliminate this liability?

14  A.    No, sir.

15          MR. CORNELL:  Thank you.

16          THE COURT:  Okay.  Any other cross?  Any redirect?

17          MR. BUTLER:  No, Your Honor.

18          THE COURT:  Mr. Miller, let me ask you just in terms

19  of this question -- are you the right person to ask you or is

20  Mr. Gebbia?

21          The motion contemplates terminating these benefits as

22  of April 1.  Is that -- was that date picked just for

23  administrative convenience or is there a large payment coming

24  due at that time, or is this sort of a steady state of

25  payments?  And, again, if you're not the right person and Mr.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 38 of 205

38

1   Gebbia is, I can save that question for him.

2            THE WITNESS:  No.  The -- I mean, I believe I'm

3   somewhat capable of answering this question.  This is a --

4   typically, a very steady stream of payments.  And -- however,

5   even as of the cutoff date there would continue to be bills

6   that would come in related to certain provider arrangements

7   that had occurred prior to that -- prior to that cutoff date.

8   So there will be a little bit of an expense tail even beyond

9   the end of March.  But there is no particular bulge that -- you

10  know, we're not aware of any -- you know, outbreak of a disease

11  or something that would cause there to be a big expense in

12  April that we're trying to forego.  It's simply whatever date

13  we pick there will be a tail, but it should be relatively flat

14  up to then except for, in my experience in one other situation

15  I was involved in with a termination of retiree health care

16  there tends to be a upward spike in utilization between the

17  time of notice and the time of the actual cutoff date.  And

18  that's the only caveat I would say.  But that would occur not

19  matter what cutoff date we have picked.

20            THE COURT:  Okay.  So there's no quarterly payment

21  coming due or anything like that?

22            THE WITNESS:  No.  No.

23            THE COURT:  Okay.  All right.  You can step down

24  then, sir.

25            THE WITNESS:  Thank you.

39

1          MR. BUTLER:  Your Honor, we now would provide

2    Mr. Steven Gebbia for cross examination in connection with his

3    declaration, which has been admitted as Hearing Exhibit number

4    2.

5          THE COURT:  Okay.  And I heard someone wanted to

6    cross examine Mr. Gebbia.

7          MR. VEIS:  Yes, Your Honor, I do.

8          THE COURT:  Okay.  So why don't you take the seat up

9    here, sir.

10       (Witness is sworn)

11         THE COURT:  And, for the record, could you spell your

12   name?

13         THE WITNESS:  Steven Gebbia.

14   S-T-E-V-E-N  G-E-B-B-I-A.

15         THE COURT:  Okay.  You can go ahead.

16         MR. VEIS:  Thank you, Your Honor.

17   CROSS EXAMINATION

18   BY MR. VEIS:

19   Q.   Good morning, Mr. Gebbia.

20   A.   Good morning.

21   Q.   How are you today?

22   A.   I'm well, thank you.

23   Q.   You heard me introduce myself to Mr. Miller, I think, so I

24   won't go through that.  Now, in your declaration you discuss

25   the 1998 General Motors plan and the 1999 Delphi plan, correct?

40

1   A.   Correct.

2   Q.   And you state that they contained language that reserved

3   the debtors' right to unilaterally modify or terminate the

4   salaried to OPEB.   Do you recall that?

5   A.   Yes.

6   Q.   Now, you didn't mention any earlier similar document of

7   plan descriptions, did you?

8   A.   I did not.

9   Q.   Did you ever look at the General Motors 1980 summary plan

10  description?

11  A.   I don't recall.

12  Q.   Did you ever look at any summary plan descriptions prior

13  to the 1999 Delphi plan?

14  A.   Yes, I did.   I was an employee for General Motors for

15  twenty-eight years, so as an employee I'm sure that I've looked

16  at those documents from time to time from the eyes of an

17  employee.

18  Q.   But you didn't look at them with respect to whether there

19  was a reservation of rights provision in those earlier

20  documents, did you?

21  A.   I don't recall specifically looking for them with that

22  frame of mind.   I don't recall specifically looking for them

23  with that frame of mind.

24       MR. VEIS:  No further questions, Your Honor.

25       THE COURT:  Okay.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 41 of 205

41

1  CROSS EXAMINATION

2  BY MR. GLOSTER:

3  Q.   Good morning, Mr. Gebbia.  Dean Gloster, Farella Braun &

4  Martel.

5  A.   Good morning.

6  Q.   You mentioned that you had been an employee of GM for

7  twenty-eight years before joining Delphi.

8  A.   Correct.

9  Q.   There are many other employees of Delphi who spent decades

10  at General Motors.  Is that correct?

11  A.   Yes.

12  Q.   And some of them are now retired.  Is that correct?

13  A.   Yes.

14  Q.   And did some of those people retire not on an early

15  retirement program like you mention in paragraph 21 of your

16  declaration but rather simply upon reaching eligible retirement

17  age?

18  A.   Yes.

19  Q.   And those people would not have signed the specific

20  waivers that you reference in paragraph 21 of your declaration

21  accepting an early retirement program, correct?

22  A.   That is correct.

23  Q.   Thank you.  With regard to another group, which is people

24  who left the company under a determination that they were

25  disabled, would those people have signed the early retirement

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 42 of 205

42

1   package waivers in those four early retirement programs?

2   A.   No.

3   Q.   Are you aware of what the benefit commitments is to people

4   who retire on permanent disability?

5   A.   I understand their eligibility for benefits that are

6   driven by the type of retirement.   Yes.

7   Q.   And what is the nature of the disclosure made to those

8   disabled individuals?

9   A.   In the summary plan description there is a section that

10  would go to medical or life insurance coverages for employees

11  who retire, for example, under a total and permanent disability

12  retirement.

13  Q.   Thank you.   And did the debtor during this bankruptcy

14  case, previously, in 2007 or earlier, terminate life insurance

15  programs for salaried retirees?

16  A.   Not to my knowledge.   No.

17  Q.   Terminate any policies with respect to --

18  A.   We made a change with respect to health care in

19  retirement.   We eliminated company contributions toward retiree

20  health care for the salaried health care plan upon the

21  participant reaching Medicare eligibility, age sixty-five, but

22  we made no change to life insurance that I recall at that time.

23  Q.   Okay.   So my next question was to talk about what you just

24  covered, which is the change in benefits where you changed the

25  payments made for people over sixty-five who were Medicare

43

1   eligible.  Did the debtor seek Court authorization for that

2   change or the appointment of an 1114 committee?

3   A.   Not to my knowledge.

4            MR. GLOSTER:  Thank you.  No further questions.

5   CROSS EXAMINATION

6   BY MR. CORNELL:

7   Q.   Mr. Gebbia, good morning.

8   A.   Good morning.

9   Q.   My name is Trent Cornell on behalf of certain of the

10  retirees.  With respect to paragraph 21 of your declaration,

11  Mr. Gebbia, have you ever heard, or are you aware, of any

12  retirees being told that if they did not sign this document or

13  these types of documents that they would lose their pensions?

14  A.   No.

15  Q.   Never heard that?

16  A.   No.

17  Q.   You started at GM in 1971.  Is that correct?

18  A.   It is.

19  Q.   Do you remember getting documents like this mailed to you

20  by GM?

21  A.   Yes.

22  Q.   Let's see.  If you could look to Exhibit 68, please.

23           MR. BUTLER:  This is Binder 5, Your Honor.

24  Q.   Mr. Gebbia, I do recall from when you got these documents

25  originally they're large, so we've tendered them into an

44

1   original size.

2           MR. CORNELL:  If it would be easier we've tendered

3   that copy to the Court, to the debtors.  Your Honor, if you'd

4   like, I have the originals.  I could tender a copy to the

5   witness as well.

6           THE COURT:  Okay.

7   Q.   Now, you got these personal statements when you were a GM

8   employee.  Is that correct?

9   A.   I did.

10          MR. BUTLER:  Objection, Your Honor.  This is a 1975

11  statement.  Same statement, the same issue.

12          THE COURT:  I'll let you ask a few questions on this,

13  but I may cut you off depending on where you're going.

14          MR. CORNELL:  I'm not going to go cumulative on it,

15  Your Honor --

16          THE COURT:  Okay.

17          MR. CORNELL:  -- but I do want to ask --

18          THE COURT:  That's fine.

19  Q.   Mr. Gebbia, is there reservation of rights language in

20  this document?

21  A.   I don't know.  I'm not that familiar with this specific

22  document.  It -- going back this far.

23  Q.   Well, you're being proffered here for your experience in

24  employee benefits, and you're testifying that Delphi had

25  reservation of rights language in its documents.  Isn't that

45

1   correct?

2   A.   Yes.

3   Q.   Do you see such language in this document?

4           THE COURT:  Well, rather than have him read this you

5   can point out to me whether there is or isn't --

6           MR. CORNELL:  Okay.

7           THE COURT: -- and Mr. Butler can point out to me

8   whether there is or isn't.

9           MR. CORNELL:  Okay.  Your Honor, I'd proffer that

10  it's not, but we can go ahead and do that in argument if that's

11  the way you'd prefer.

12          THE COURT:  That's fine.

13          MR. CORNELL:  Okay.  Thank you.

14          THE COURT:  Any other cross?  Okay.  Any redirect?

15          MR. BUTLER:  No, Your Honor.  We have none.

16          THE COURT:  Okay.

17          MR. BUTLER:  Your Honor, that completes the debtors'

18  evidentiary case with respect to this motion.  The objectors

19  have offered two declarations that they're going to want to

20  present, and we have very brief questions on those.

21          THE COURT:  Okay.

22          MR. VEIS:  Your Honor, I'd first like to present the

23  declaration of Mark E. Thornburg.

24          THE COURT:  What's that?  3?

25          MR. VEIS:  Yes.  That would be Exhibit 3.  And

46

1   subsequent to --

2          THE COURT:  I'm sorry.

3          MR. VEIS:  Subsequent to the cross examination of

4   Mr. Thornburg --

5          THE COURT:  Is it in the confidential volume?

6          MR. VEIS:  No, Your Honor.

7          THE COURT:  Oh, I see it.

8          MR. BUTLER:  It's way in the back, Your Honor.  These

9   declarations will be 3 and 4, which are the far back of Volume

10  1.

11         THE COURT:  I see.  I was looking at an exhibit to

12  another exhibit.  I have it.

13         MR. VEIS:  Sorry.  And subsequent to Mr. Thornburg's

14  examination we would proffer the declaration of Mr. McGrath,

15  which is in number 4.

16         THE COURT:  Okay.  And Mr. Thornburg is here?

17         MR. VEIS:  Yes, he is.

18         THE COURT:  Okay.  And do the debtors want to cross

19  examine him?

20         MR. BUTLER:  Briefly, Your Honor.

21         THE COURT:  Okay.  Could you take the stand, sir?

22      (Witness is sworn)

23         THE COURT:  And, just for the record, could you spell

24  your name?

25         THE WITNESS:  Mark, M-A-R-K, Thornburg,

47

1    T-H-O-R-N-B-U-R-G.

2    CROSS EXAMINATION

3    BY MR. BUTLER:

4    Q.   Mr. Thornburg, my name is Jack Butler.  I am counsel to

5    Delphi Corporation in connection with this motion.  Good

6    morning.

7    A.   Good morning.

8         MR. BUTLER:  Your Honor, I just remembered.

9    Q.   I just have a couple of questions about your declaration.

10   Do you have it in front of you?

11   A.   I do not.

12        MR. BUTLER:  Could we get it for him, please?

13   A.   Okay.

14   Q.   I'd like you to look at paragraph 4 of your declaration,

15   and in paragraph 4 you say, among other things, that you have

16   routinely and consistently received written communications from

17   Delphi that you would enjoy benefits offered for the employment

18   for the rest of your life.  Do you see that?

19   A.   Yes.

20   Q.   You don't attach any written communications from Delphi

21   that says that to your declaration, do you, sir?

22   A.   No.

23   Q.   Can I ask you where are the written communications from

24   Delphi that you routinely and consistently received that said

25   you'd enjoy benefits for employment for the rest of your life?

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 48 of 205

48

1   A.   The communications from Delphi didn't provide that.

2   They're available on the Fidelity website.

3   Q.   But you make a statement here you received written

4   communications from Delphi that routinely and consistently said

5   that you would get these benefits for the employment for the

6   rest of your life.  Correct?

7   A.   Yes.

8   Q.   That would mean to you that there'd be no reservation of

9   rights in any of those written communications.  Would that be

10   right?

11   A.   I'm not a lawyer.  I just read it from what it said, like,

12   you get, like, health care benefits for the rest of your life.

13   Q.   All right.  And if that document also said that Delphi

14   could terminate those benefits at any time would you have read

15   that section too or would you probably not have read that?

16   A.   I read -- what I read was is that they could be modified.

17   You want to know my interpretation of that or --

18   Q.   I just want to understand.  You made a statement here that

19   Delphi gave you written communications routinely and

20   consistently that said that you'd have these benefits for the

21   rest of your life.  I'm just trying to find out where those

22   written communications are and what they said.

23   A.   Okay.  I didn't present them, but what they said was that

24   I would have health care and life insurance for me and my

25   survivor for the rest of my life.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 49 of 205

49

1  Q.    And did those written communications have reservation of

2  rights provisions in them that they could modify or terminate

3  it at Delphi's discretion?

4  A.    They had some wiggle words in them, that this -- what I

5  had viewed that to be was they could make corrections to the

6  document that maybe were put in there by mistake or they could,

7  like they did in 1993, quit offering that benefit.

8  Q.    Now, you're aware, Mr. Thornburg, in 2005 that Delphi

9  modified these plans to, as Mr. Gebbia had testified, eliminate

10 Delphi contributions for coverage beyond the age of sixty-five.

11 Correct?

12 A.    I couldn't tell you the exact date, but, yes, I'm aware of

13 that.

14 Q.    So in 2005 Delphi stopped providing benefits, at Delphi's

15 cost, for the rest of your life, didn't they?

16 A.    At -- when I was eligible for Medicare they quit providing

17 health care insurance.  They continued to provide life

18 insurance.

19 Q.    So, in fact, you'd agree with me that Delphi modified

20 these programs, acting on its discretion to do so, back in

21 2005, so that you wouldn't have those benefits from Delphi for

22 the rest of your life.  Would you agree with that --

23 A.    I agree with that.

24        MR. VEIS:  Objection, Your Honor.  That's compound,

25 because he's built in multiple clauses including assuming that

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 50 of 205

50

1   Mr. Thornburg agrees with Delphi's discretion, and I think

2   there's a legal matter, we believe, that the 1980 summary plan

3   document

4           THE COURT:  I'll overrule that objection.  I think

5   Mr. Thornburg understood the question.  I don't think it was a

6   trick question.

7   Q.   Mr. Thornburg, I also want to ask, in terms of General

8   Motors written communications, you attached a 1980 document to

9   your declaration, correct?

10  A.   Yes.

11  Q.   Did you receive any other documents after 1980 from

12  General Motors that would have had those wiggly words in them,

13  as you call them, those reservation of rights?

14  A.   The -- I received one of those compensation statements

15  annually, and the -- through 19 -- I can't remember.  I believe

16  it was 1987.  They didn't, they were completely without the

17  whatever we call those words.

18  Q.   But at some point did General Motors send you documents

19  that you recall that had those words in them?

20  A.   They -- they -- I believe they did, but I don't recall

21  which one first -- where they first appeared.

22  Q.   But you do recall receiving those communications from

23  General Motors.  Correct?

24  A.   Yes.

25           MR. BUTLER:  I have no further questions, Your Honor.

51

1              THE COURT:  Okay.  Any redirect?

2              MR. VEIS:  No, Your Honor.

3              THE COURT:  Okay.  You can step down, sir.  Okay.

4  And then there's the declaration of Mr. McGrath, and he's here

5  in the courtroom?

6              MR. VEIS:  Yes, Your Honor.  Mr. McGrath is here.

7              THE COURT:  Okay.  And do the debtors wish to cross

8  examine him?

9              MR. BUTLER:  Briefly, Your Honor.

10             THE COURT:  Okay.  If you could come up then,

11  Mr. McGrath.

12       (Witness is sworn)

13             THE COURT:  And, for the record, could you spell your

14  name?

15             THE WITNESS:  John McGrath.  J-O-H-N

16  Capital M-C-G-R-A-T-H.

17             THE COURT:  Okay.

18  CROSS EXAMINATION

19  BY MR. BUTLER:

20  Q.   Mr. McGrath, my name is Jack Butler.  I represent Delphi

21  Corporation.  Good morning.  Okay.  Do you have your

22  declaration in front of you, Mr. McGrath?

23  A.   No.  This is it?  Oh, yes, I have this one.  Yeah.

24  Q.   Great.

25  A.   Not the original.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 52 of 205

52

1   Q.   No.  Just the copy of it.  Can you turn to paragraph 6?

2   In paragraph 6 you say that you always understood that in order

3   for Delphi or GM to modify your benefits you'd have to consent

4   to the modification.  Correct?

5   A.   Correct.

6   Q.   Mr. McGrath, you didn't consent to the 2005 modification

7   where Delphi changed the program to eliminate benefits for the

8   rest of your life that they were paying for but, instead,

9   stopping them at age sixty-five.

10  A.   I --

11  Q.   You never consented to that?

12  A.   No, I never did.

13        MR. BUTLER:  I have no further questions, Your Honor.

14        THE COURT:  Any redirect?

15        MR. VEIS:  No, Your Honor.

16        THE COURT:  Okay.  You can sit down, sir.

17        MR. BUTLER:  Your Honor, unless the objectors have

18  anything else I think that completes the evidentiary record.

19        MR. VEIS:  Nothing further, Your Honor.

20        THE COURT:  Okay.

21        MR. BUTLER:  Now, in terms of argument, Your Honor,

22  we have submitted fairly exhaustive papers on this subject.  I

23  think, if it's acceptable to the Court, in terms of making an

24  extended oral argument I'd rather respond to objectors than

25  repeat what I said in the papers, if that's okay?

53

1          THE COURT:  Okay.  I've reviewed the papers, so

2    that's fine.

3      MR. DOYLE:  Good morning, Your Honor.  Dan Doyle, Spencer

4    Fane Britt & Browne, St. Louis, for the Nicholson objectors.

5    Your Honor, I don't think there can be a more empathetic group

6    in any bankruptcy then the retirees of the debtor.  These are

7    the folks who've already provided the consideration for their

8    retiree benefits, who no longer can go on strike, stop work,

9    generally are on fixed incomes, may have health issues, and, in

10   most bankruptcy cases, would be totally unrepresented in terms

11   of formulating or negotiating in a plan of reorganization

12   absent Section 1114.  I'll submit to you that I think, in terms

13   of the legally and functionally, this is a case that Congress

14   envisioned when it passed 1114 and then later amended it in

15   2005 under BAPCPA.  We've got 15,000 retirees.  We've got

16   potential savings of a billion dollars.  We have competing

17   interests in this case, Tranche A, B and C bondholders.  We

18   have joint discussions over plans of reorganizations and how

19   it's going to be financed.  We've got financial projections.

20   We've got reorganization values.  But we don't have any

21   retirees in that mix to help decide whether or not the proposed

22   cuts to their benefits are fair and equitable and whether

23   they're actually necessary to permit reorganization.  As the

24   debtors' own witnesses concede, retiree benefit calculations

25   were more or less an afterthought.  They went with the run

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 54 of 205

54

1   rate.  They figured out what they could save.  And then they

2   all collectively decided that's what we're going to do.  We're

3   going to eliminate all benefits.  There's no halfway here.

4   There was no analysis in terms of what if they decide to reduce

5   the amount of the Part B subsidy that they currently offer.

6   What would happen if they capped the life insurance at 5,000

7   dollars apiece so at least their spouses can have a burial

8   policy?  What is the effect if GM does come to the rescue in

9   the case or the federal government?  Because once these

10  benefits are eliminated, which the debtor seeks to do today,

11  there is no snapback provision, unlike in 1114.  Under 1114, of

12  course, a retirees' committee can come back and say the

13  economics has changed, we need to restore some of the retiree

14  benefits.  The debtor here hangs his hat --

15          THE COURT:  But let me take that through.  There was

16  a lengthy period in this case where the debtors, supported by

17  the creditors' committee and the other lenders, determined to

18  keep welfare benefits in place.  They did that in the exercise

19  of their business judgment thinking that the elimination of

20  such benefits would hurt them more than it would help them.

21  And what is to prevent, for example, them from reinstating

22  health benefits if, for example, Congress does say, as Congress

23  is certainly within its power to say, as part of an automotive

24  bailout we want to specifically protect retirees?  That money

25  is not going to go anywhere else.  We think it's a good thing

55

1    to help out retirees.  Why wouldn't the debtor then, in the

2    exercise of its judgment, take that money?

3            MR. DOYLE:  Your Honor, because it's not in the plan.

4    And it's not in the plan because there are no retiree

5    representatives.  There is --

6            THE COURT:  As far as I can tell there is no Chapter

7    11 plan, at this point, that's before the Court.  I'm talking

8    more about the scenario you just spun out, which is that

9    there's a return to viability of the debtors or a, not

10   viability, a return to more of the conditions that they

11   experienced before the bottom fell out of the automotive market

12   or, specifically, congressional action that would earmark money

13   for retirees.

14           MR. DOYLE:  Well, Your Honor, as you and I both know,

15   and everybody in this room, the debtor is not its own man in

16   this case.  I mean, there are pressures from other

17   constituencies to pull value out of the estate and into their

18   constituent's pockets.

19           THE COURT:  Well, I understand that.  But for --

20           MR. DOYLE:  The --

21           THE COURT:  But for two and a half more years those

22   people did not pressure the debtor into terminating these

23   benefits.

24           MR. DOYLE:  No, Your Honor, they do not.  And I think

25   that speaks to how these are.  I know the debtor would like to

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 56 of 205

56

1   say these are generous benefits, but I don't believe they are.

2   And obviously people came into this case with rosier

3   expectations than proved to be true.  The key difference is

4   with a retirees' committee and a compliance with 1114 if the

5   economics change the retirees would have a way to get in front

6   of this Court to seek a restoration of benefits rather than to

7   be left up to the goodness or the kind intentions of the

8   debtor, assuming that it's other competing constituencies

9   permit it.

10          THE COURT:  Okay.  I understand that.  But that

11  presumes the main point that the debtors disagree with, which

12  is that the 1114 regime does, in fact, apply here to these

13  benefits.

14          MR. DOYLE:  That's right, Your Honor.

15          THE COURT:  I mean, I think the debtors concede that

16  if, in fact, 1114 did apply to these benefits then you'd

17  definitely have a committee.

18          MR. DOYLE:  That's right.  And you have moved right

19  on to my next point, which is that 1114 does apply, and let me

20  be clear.  I think Skadden, Arps is a great law firm.  I'm from

21  the Midwest, and we look out here to get our cues on what to

22  argue --

23          THE COURT:  I think there are many people from the

24  Midwest at Skadden, Arps so --

25          MR. DOYLE:  But Mr. Butler said that the law is clear

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 57 of 205

57

1   on this.  And I think it should be especially clear to Skadden,

2   Arps, because they represented the appellant in Ames Department

3   Store in which Judge Lifland ruled that 1114 applied despite

4   the reservation of rights.

5           THE COURT:  No, it was Judge Conrad.

6           MR. DOYLE:  I'm sorry.

7           THE COURT:  And that's important, given his later

8   ruling in Drexel.

9           MR. DOYLE:  Which then went up to Judge Duffy who

10  decided that the bankruptcy court was right.  The case that the

11  debtor relies most on is Doskocil, which is out of Kansas City,

12  Kansas, which two years later, ten miles away, in Kansas City,

13  Missouri, Judge Benners (ph.) ruled the other way.  So plain

14  language is plain language.  You read the statute, as we all

15  must do, to start, and it says that the debtor shall timely pay

16  and shall not modify retiree benefits.  It doesn't say they

17  shall timely pay but can modify unvested retiree benefits,

18  which is exactly what the debtor is arguing here.

19          Judge Flannagan, in the Doskocil decision, basically

20  held that Congress did not express a clear enough intent, for

21  his purposes, that the rights are modified under 1114,

22  notwithstanding what I think is plain language.  And

23  Judge Benners found the other way a couple of years later.

24  Under BAPCPA, I think, an argument that makes this even more

25  interesting is Congress went back and added Subsection L which

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 58 of 205

58

1   allows the Court under particular circumstances to go back 180

2   days and restore benefits that had been unilaterally modified,

3   probably under a reservation of rights pre-petition.  It's

4   counterintuitive to think that Congress would not offer even

5   more protection post-petition than pre-petition.

6           One thing that I don't think anybody in the courtroom

7   would disagree with is the heart of bankruptcy is modification

8   and alteration of contract rights.  Here Congress has clearly

9   expressed an intent that those debtors that had reserved rights

10  under their benefit plans for retirees cannot exercise those

11  rights absent going through the 1114 process, so as to make the

12  retirees stakeholders, real stakeholders with real voices, in

13  any Chapter 11 reorganization.  In other words, what Congress

14  intended is full disclosure under 1114 so that the retiree sees

15  everybody's cards, that it's not a black box process with the

16  constituencies in closed session all deciding well, let's

17  eliminate retiree rights in their totality.

18          In other words, if the numbers, once a retirees'

19  committee looks at it, justifies some elimination of retiree

20  benefits that can be crafted so as to provide the least amount

21  of impact on those retirees who are most at risk, such as

22  potentially providing bridge coverage for those who are not yet

23  Medicare eligible who may be uninsurable such as, you know,

24  lowering the coverage limits on life insurance.

25          But the debtor has done exactly what Congress

59

1    anticipated debtors do in this case.  Well, you know, we're

2    running out of cash.  Let's cut all retiree benefits.  And,

3    Your Honor, 1114 doesn't make it that simple, because in that

4    case every debtor in every case can plead poverty and say I'm

5    justifying exercising my reservation of rights.  Let's just

6    throw the retirees under the -- well, I won't say bus, but

7    they'll throw them under the locomotive and use that to provide

8    additional benefits to the other stakeholders.

9            And, Your Honor, in our papers we also attach an

10   order from Judge Beatty in Solutia which found that the debtor

11   in that case could not exercise its reservation of rights

12   against those Solutia retirees.

13           And, Your Honor, with regard to the Sprague case, I

14   believe there's --

15           THE COURT:  Before you go on there, let me ask you

16   about 1114(l).

17           MR. DOYLE:  Yes, Your Honor.

18           THE COURT:  If you're just counting cases the

19   majority of the cases goes in favor of the debtors' position

20   with regard to unvested benefits and rights to terminate.  And

21   I'm leaving aside the issue of whether these are, in fact,

22   unvested benefits and the debtors do have the right to

23   terminate.  I understand you all have made a different point on

24   that issue.  But given that you had that, and including the

25   view in Collier's, if Congress really wanted to make it clear

60

1    in BAPCPA that it was actually prohibiting a debtor from

2    exercising its pre-bankruptcy right once it went into

3    bankruptcy, why wouldn't it have done that as opposed to have

4    enacted 1114(l)?

5           MR. DOYLE:  Because, Your Honor, I think Congress

6    thought that it had already said it plainly when it said thou

7    shalt timely pay and thou shalt not modify retiree benefits.

8    How much plainer can it be?  Vested, unvested, contingent,

9    uncontingent --

10          THE COURT:  Well, you know, some good judges,

11   including judges from this district and elsewhere, have thought

12   it wasn't that clear.  So there's the issue.  I'm just trying

13   to figure out how much to take away from 1114, (l) and BAPCPA.

14          MR. DOYLE:  Well, Your Honor, this is what I'd take

15   away from it, which is --

16          THE COURT:  I mean, certainly Congress didn't

17   hesitate after the LTV ruling to act.

18          MR. DOYLE:  Yes, Your Honor, which is the Retiree

19   Benefit Protection Act.

20          THE COURT:  Right.

21          MR. DOYLE:  Rather than the Vested Retiree Protection

22   Act.

23          THE COURT:  Right.

24          MR. DOYLE:  But, Your Honor, yes, with LTV that, of

25   course, involved the expiration of a collective bargaining

61

1    agreement that provided retiree benefits.  With regard to

2    1114(l) --

3              THE COURT:  No, I'm talking about -- I'm sorry.  I'm

4    talking about the original LTV where Congress reacted --

5              MR. DOYLE:  Right.

6              THE COURT: -- to specific cases that --

7              MR. DOYLE:  That's right.  Well, and --

8              THE COURT: -- took positions against retirees that

9    raised the congressional hackles.

10             MR. DOYLE:  That's right.

11             THE COURT:  The Doskocil line of cases, perhaps,

12   didn't receive the notoriety that the original LTV case did

13   have, but it's hard to imagine Congress wasn't aware of that

14   line of cases starting in 1993 and going forward to 2005 when

15   it enacted BAPCPA.  And since they did focus on 1114 why

16   shouldn't I infer that they knew what they were doing when they

17   didn't overrule those cases?

18             MR. DOYLE:  Your Honor, well, LTV, of course, had to

19   do with the rejection of a collective bargaining agreement to

20   end retiree benefits there under 365.  Of course, back then

21   there was no 1114.  The stopgap legislation was the Retiree

22   Benefits Protection Act.  During the LTV case the CBO expired.

23   A careful reading, and even Doskocil acknowledges this, the LTV

24   really didn't fit its analysis because LTV has to do with

25   expiration of a collective bargaining agreement that contained

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 62 of 205

62

1   retiree benefits.  And that was also reflected in the Federated

2   Department Stores case out of the Southern District of Ohio

3   when the LTV cases involved the restoration, so to speak, of

4   retiree benefits under that collective bargaining agreement

5   that had expired.  And I think that if you look at, and this is

6   not in our brief because I didn't think we'd get into this kind

7   of detail, but if you look at the LTV decision by the Second

8   Circuit 945 F.2d 1205, 1211 you'll see that it really has to do

9   with whether or not a bankruptcy court can revive an expired

10  contract, which, I think, we all know it cannot do, so as to

11  create retiree benefits.  Here we don't have a retired benefits

12  contract.  Here we have benefits that were in place pre-

13  petition and continue to be in place until the debtor can get

14  authority through the 1114 process to modify those benefits.

15  And I think particularly telling is the dissent by

16  Judge Restani who said that the District Court affectedly had

17  decided that the salaried employees' benefits terminable at

18  will were protected by the Retiree Benefits Protection Act.

19  And that's, you know, in a decision that's had the CBO, and

20  those benefits can't be restored because that contract has

21  expired.

22           THE COURT:  But isn't that decision, isn't the

23  Chateaugay decision one that really goes on what the parties

24  intended to contract to?  There is no intimation that the

25  parties intended LTV's obligation to continue beyond the life

63

1   of the wage agreement.  The Court's looking at what the parties

2   intended in their contract to be bound by.

3           MR. DOYLE:  That's right, Your Honor.  In other

4   words, when the contract expired there was nothing to keep it

5   alive.  There was no renewal option and there was no reopener.

6           THE COURT:  Right.

7           MR. DOYLE:  You know, Your Honor, it reminds me of

8   the cases you read about bankruptcy court jurisdiction back in

9   the seventies.

10          THE COURT:  Well, I mean, before we get to that.

11          MR. DOYLE:  All right.

12          THE COURT:  I mean, they continue to say that the

13  plan, the benefit plan, does not require LTV to pay for

14  benefits after the 1984 wage agreement expired LTV Steel and

15  the mining companies therefore are not obligated by the wage

16  agreement or by statute to continue to pay for retiree

17  benefits.  So I understand they were focusing on the wage

18  agreement.  But if they really read the language, which was the

19  '88 language, to override any termination of benefits, then

20  wouldn't that be a statute that would override that?  I mean,

21  they seem to be looking at --

22          MR. DOYLE:  Well, Your Honor --

23          THE COURT:  -- the pre-petition relationship between

24  the parties.

25          MR. DOYLE:  Your Honor, the subsequent cases that

64

1    have looked at LTV have decided that 1114 says that the debtor

2    shall not, shall timely pay and shall not modify retiree

3    benefits.  How they distinguish LTV was if the underlying

4    agreement expires on its own terms the debtor has done nothing

5    to modify benefits.  So it was not a modification that fell

6    under the statute.  And here, obviously, that's not the case.

7           And so, Your Honor, I've enjoyed our discussion, and

8    I believe that, as I opened with, this is a case --

9           THE COURT:  Let me ask you one other --

10          MR. DOYLE:  All right.

11          THE COURT:  -- other statutory interpretation

12   question.  The same judge who issued the Ames decision in the

13   bankruptcy court, Judge Conrad, in the Drexel case cited

14   Doskocil and Chateaugay favorably in confirming a plan that

15   provided that under the plan, this is under the plan now and

16   dealing with 1129, 813, the retiree payments may be terminated

17   at will, and, therefore, that was sufficient protection of the

18   retirees to get the plan confirmed.

19          MR. DOYLE:  Your Honor, obviously Drexel carried

20   through the benefits, carried the plan past the confirmation to

21   the effective, or intended to, and so there was no modification

22   of retiree benefits during the case.  And I think the cases are

23   very clear that 1114 only applies during the pendency of the

24   bankruptcy case, and part of the reason why 1114 is there is to

25   allow retirees, through an authorized representative, to

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 65 of 205

65

1   bargain for and negotiate treatment under the plan.  And that

2   is certainly, you know, the issue in Drexel is one that I think

3   you see in Doskocil too, which, I think, is a misinterpretation

4   of the statute which is 1129(a)(13), is that if the plan comes

5   through the bankruptcy process unmodified, and it's adopted

6   wholesale under the plan, then magically it becomes vested.

7   And that is certainly not the case.  And that is the narrow

8   issue that I think Drexel addressed.

9           THE COURT:  I'm sorry.  Let me make sure I understand

10  this.

11          MR. DOYLE:  Right.

12          THE COURT:  That 1114 creates a federal override of

13  modification of invested benefits only during the Chapter 11

14  preplan period.

15          MR. DOYLE:  No, Your Honor.  It's through the

16  effective date.  I think there's the Ormed (ph.) case out

17  there.

18          THE COURT:  All right.  Until the plan goes

19  effective?

20          MR. DOYLE:  Yes, Your Honor.  It's to allow the

21  retirees to have a voice in what the plan ultimately is going

22  to look like.

23          THE COURT:  But if the plan -- if it snaps back to a

24  right to terminate at will, what good is giving them that

25  voice?

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 66 of 205

66

1          MR. DOYLE:  I --

2          THE COURT:  What is there to negoti -- why would

3   anyone, other than for business reasons, say I will waive that

4   right?

5          MR. DOYLE:  Your Honor, are you talking about pre-

6   effective date snap back or post --

7          THE COURT:  What is there to negotiate -- yes.

8          MR. DOYLE:  Because obviously --

9          THE COURT:  I mean, you prefaced all this by saying

10  everyone has leverage to negotiate a plan --

11          MR. DOYLE:  That's right, Your Honor --

12          THE COURT:  -- except for the retirees.  And that's

13  why Congress wanted to protect them.  But if, in fact,

14  1129(a)(13) kicks one back to a OPEB plan that is terminable or

15  modifiable at will, what is there to negotiate over?

16          MR. DOYLE:  Well, Your Honor, first of all, there's

17  the benefits during the case.

18          THE COURT:  Well, no, I understand that.

19          MR. DOYLE:  Secondly, assuming that everybody has

20  done their job in the bankruptcy case, the other constituencies

21  will have agreed to treatment of their claim in a payout over

22  time or, you know, additional collateral.  And, if the

23  reorganization actually works, at least in theory, the debtor

24  should be in the position where Delphi was at the beginning of

25  the case, in other words, finding that the cost benefit favors

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 67 of 205

67

1    keeping the retirees happy rather than cutting them off at the

2    knees.

3              THE COURT:  But, I guess Delphi is saying to me, and

4    I know you --

5              MR. DOYLE:  Let me --

6              THE COURT:  -- so one of you may dispute this, or

7    more of you may dispute this.  They're saying to me, to get to

8    a plan here, they need to show their funding source that they

9    won't have a 1.1 billion dollar liability on their balance

10   sheet for OPEB.

11             MR. DOYLE:  That's right, Your Honor.  That's what

12   they're --

13             THE COURT:  And --

14             MR. DOYLE:  -- that is what they're saying.  But 1114

15   gives the retirees the right to cut the deck and make sure

16   they're holding the high hand.

17             THE COURT:  But in connection with plan negotiations?

18             MR. DOYLE:  Yes, Your Honor.  Because 1114 requires

19   financial disclosures far beyond what's been disclosed here.

20   We don't have a financial advisor.  We --

21             THE COURT:  But where does --

22             MR. DOYLE:  -- don't have an actuary to double-check

23   their math.

24             THE COURT:  -- but if 1129(a)(13) gives the debtor

25   the right to spring back to the plan as not interrupted, if you

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 68 of 205

68

1  will, by 1114, then where is that right?

2         MR. DOYLE:  Your Honor, 1129(a)(13) simply says that

3  whatever the deal is that's cut with the committee of the

4  retirees under 1114 has to be integrated into a plan.  Now --

5         THE COURT:  It doesn't say that.  It says that the

6  plan must provide for the continuation after the effective date

7  of payment of all the retiree benefits as that term is defined

8  for the duration of the period the debtor has obligated itself

9  to provide such benefits.

10        MR. DOYLE:  That's right, Your Honor.  And so if the

11  retirees committee has negotiated a certain amount of time in

12  which those benefits will continue post-effective date, the

13  plan has to reflect that.  If the --

14        THE COURT:  But the debtor doesn't have to negotiate

15  that, right?  The debtor doesn't have to -- if the debtor was

16  willing, under your interpretation of 1114, not to modify the

17  plan during the course of the case, pre-effective date, then

18  once the Chapter 11 plan is confirmed, it can do whatever it

19  wants, right?

20        MR. DOYLE:  That is what the case law appears to say,

21  Your Honor.

22        THE COURT:  Okay.

23        MR. DOYLE:  And that's assuming they have a

24  reservation of rights and they haven't contracted that away

25  during the -- modified that during the --

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 69 of 205

69

1              THE COURT:  Right.

2              MR. DOYLE:  -- bankruptcy process.

3              THE COURT:  Right.

4              MR. DOYLE:  And the reason why that is, is because

5    everybody expects a successful reorganization, including

6    continuation of retiree benefits.  In other words, the debtor

7    would continue to be economically able to provide those

8    benefits post-effective date.  The real issue comes in a case

9    like this, when the debtor believes that it cannot economically

10   maintain those benefits.  Then the issue becomes what level of

11   benefits should there be with regard to a modification through

12   the 1114 process and how is that going to be reflected in the

13   plan under 1129(a)(13).

14              And that can run, as I've already described, that can

15   run the gamut in terms of lowered benefits to meet the

16   financial model that the debtor might need to formulate in

17   order to be effective.  I mean, the whole thrust of 1114 is

18   that the retirees need a voice in this Court, absent agreement

19   with the debtor and the committee, needs to find that it's fair

20   and equitable to the parties and that it's necessary to permit

21   a reorganization.  And obviously, those are being lost over

22   here today.

23              THE COURT:  Okay.

24              MR. DOYLE:  So, Your Honor, as I said, I enjoyed the

25   discussion and I would ask that the Court deny the motion and

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 70 of 205

70

1    order that 1114 apply.

2              THE COURT:  Okay.  You were going to talk about the

3    Sixth Circuit case, but maybe one of your colleagues is going

4    to cover that subject, so.

5              MR. DOYLE:  I'll clear the podium.

6              THE COURT:  Okay.

7              MR. GLOSTER:  Your Honor, I'd like to cover three

8    things briefly.  First, I'd like to respond to Your Honor's

9    questions about how the statute works, because we've done this

10   in other cases.  1114 simply protects amendable benefits for

11   the duration of the bankruptcy case until confirmation.  Then

12   1129(a)(13) says the debtor is not obligated to provide

13   amendable benefits going forward, unless the debtor has made a

14   commitment during the case to say I'll maintain these things

15   for a period of time.

16             What that means is, the debtor absolutely has a

17   choice.  They can say we don't want to modify retiree benefits

18   during the bankruptcy case, we'll simply terminate the

19   amendable benefits going forward upon confirmation.  Or they

20   can say we would like to negotiate with an 1114 committee

21   because we want to reduce our cash flow expenses today.  We're

22   not sure if we're going to be lingering in bankruptcy for

23   another two years.  We would like to save 70 million dollars a

24   year or some sizeable fraction of that, but we want to do it in

25   a way that's fair to retirees.  So we'd like to sit down and

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 71 of 205

71

1   negotiate with you over changes.

2           And in other cases, like this one, what we typically

3   find is, there is actually a mixture of amendable benefits and

4   benefits which, in fact, are vested.  And so those typically

5   get treated different, and there's a compromise by a committee,

6   and there's clarity for the debtor about what actually exists,

7   and it works all around.

8           There's a critical reason for doing it in this case,

9   Your Honor.  The debtor, in its Exhibit 49, that's the GM

10  restructuring plan, on page 33 it discusses Delphi.  And it

11  says that Delphi is "unlikely" to be able to make the payments

12  in the future for its pension plan for the salaried retirees

13  who are sitting in this room and protected by 1114.  So what

14  happens is, if that pension is turned over to the PBGC, under

15  Section 35 of the Internal Revenue Code, they have the right to

16  a health coverage tax credit where the federal government will

17  pay sixty-five percent of their health premiums for qualified

18  coverage.  Qualified coverage includes, at that point, COBRA

19  continuation coverage and it also includes, according to the

20  IRS, a follow-on plan negotiated by an 1114 committee, which is

21  more affordable than COBRA continuation coverage.

22          But you have to go out and get a private letter

23  ruling from the IRS.  You have to come up with a health plan

24  for the retirees that 's going to be cheaper than what the

25  debtor is providing today.  And you have to coordinate it so

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 72 of 205

72

1   that that is in place at the time that the pensions are

2   terminated.  And then the federal government pays sixty-five

3   percent of the health care costs for retirees who are fifty-

4   five to sixty-five.  And those are the expensive people that

5   we're talking about.

6          So there's a reason for it.  And Congress provided

7   very simple protection.  1114(a) says, "A plan, fund, or

8   program."  Your Honor asked, well, you know, couldn't Congress,

9   as part of this bail-out say you have to protect retirees?

10  Congress already did.  It said, during the bankruptcy case, you

11  cannot modify these benefits without going through the 1114

12  process.  To the extent that there was questions, and as you

13  look at each of these cases, Drexel's an 1129(a)(13) case.  It

14  simply says look at that statute.  The way the statutory

15  framework works is if the debtor doesn't want to agree to

16  extend coverage beyond a certain period of time, if those

17  benefits are truly amendable, they can just not do it.

18          THE COURT:  Of course, he cited to 1114 cases, not

19  1129 cases.

20          MR. GLOSTER:  Well, Your Honor, Your Honor is a

21  bankruptcy judge.  Bankruptcy judges are practical.  If this

22  case was converted to liquidation a week from Monday and Your

23  Honor knew it, there'd be no point in appointing an 1114

24  committee.  If the only basis for benefits had expired prior to

25  bankruptcy under a collective bargaining agreement, and there

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 73 of 205

73

1   wasn't a benefit that existed at the time of the bankruptcy

2   filing, there's no point, if you've already got a union there

3   protecting the workers, to go have an 1114 committee.

4           THE COURT:  But in Chateaugay, the benefit did exist

5   at the time of the filing.

6           MR. GLOSTER:  And then Congress passed 1114(L).  And

7   a couple of clarifications about that, Your Honor.

8           THE COURT:  Okay.

9           MR. GLOSTER:  First, at the time of 2005, Colliers

10  was not so radical in its interpretation of 1114 in favor of

11  the employers.  I know this because it was rewritten while we

12  were representing the 1114 committee in the Delta bankruptcy

13  and while our opposing counsel was a contributing editor to

14  Colliers.  That in fact, at the time Congress passed the 2005

15  amendments, the statute was clear, the cases were scattered,

16  and only a fraction of bankruptcy court cases end up being

17  reported.  And then as to the point of well, why didn't

18  Congress clear this up, Congress --

19          THE COURT:  But this issue --

20          MR. GLOSTER:  -- absolutely did.

21          THE COURT:  -- this issue had been highlighted since

22  1993.

23          MR. GLOSTER:  And Congress solved the problem,

24  because the question is, does 1114 apply to benefits that the

25  debtor can amend?  Answer:  Section 1114(L) says, unmistakably,

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 74 of 205

74

1    with no question, it absolutely applies to benefits the debtor

2    did amend in the 180 days before bankruptcy.  Therefore, it

3    must apply to benefits that the debtor can amend.  There is

4    just no factual circumstance under which the debtor -- if the

5    debtor said well, I've just violated ERISA and changed vested

6    benefits, there's a remedy under ERISA.  That is not the kind

7    of thing that Skadden Arps will recommend to their clients.

8    Generally, do not violate ERISA in clear fashion.

9            So 1114(L) says, for 180 days before bankruptcy, if

10   you modified these retiree benefits as defined by the statute,

11   then if the debtor was insolvent at the time, the 1114 process

12   applies.

13           THE COURT:  Well, no, it doesn't.  It's a different

14   standard.  It doesn't apply.  It's whatever's fair and

15   equitable.

16           MR. GLOSTER:  Well --

17           THE COURT:  And one could argue that if you agreed in

18   your contract to let it be modifiable, that's fair and

19   equitable.

20           MR. GLOSTER:  Well, but, Your Honor, if you look at

21   the case law under fair and equitable, under both 1113 and

22   1114, about clearly favored by a balance of the equities, you

23   look at whether one group is suffering disproportionate harm to

24   another group, and that's the In re Delta Airlines case

25   involving the Comair benefits for flight attendants.  It's a

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 75 of 205

75

1    fair and equitable analysis.  You ask who's being asked to --

2              THE COURT:  Well, actually this is just a balance of

3    the equities analysis.

4              MR. GLOSTER:  Well, it's a balance of the equities

5    analysis in the 1114 statute.  Congress says we're protecting

6    benefits which are retiree benefits, which are defined as a

7    plan, fund or program which provides these benefits.  1114(a)

8    is clear.  To the extent that there is case law that departs

9    from the reality, most of those cases are distinguishable on

10   their facts, and frankly, Your Honor, as between the statute

11   and the clear legislative history and the statutory framework

12   where 1114(a) gives very limited protection to retirees.

13             And let's put a human face on it.  When GM says that

14   they are facing hardship -- Delphi says that we're all facing a

15   harsh economic reality, Your Honor.  But harsh economic reality

16   for a retiree means, when you terminate paying for those

17   benefits, I have to choose between paying my rent or getting my

18   medication.  And when --

19             THE COURT:  And you pointed out, for many people

20   there's a gap, if they're not eligible for Medicaid yet.

21             MR. GLOSTER:  Right.  And those are the most

22   expensive benefits, Your Honor.  We -- people who are getting

23   up there in years and hurting ourselves are more expensive to

24   insure than twenty-eight year-olds.  And then when Mr. Miller

25   talked about a "upward spike in utilization", let's sort of

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 76 of 205

76

1    talk about what that means.  That means trying to schedule your

2    cancer surgery before your benefits expire and while you still

3    have life insurance.  That's what it means.  And that's why

4    1114 protects benefits only for the case.

5              It says look, get a retiree committee in there.

6    There will be a committee that represents people that can

7    actually sort out, and not in twenty days, not over a weekend,

8    not while you're trying to reach retirees in all different

9    parts of the country and people are sending faxes of two pages

10   of their benefit summary from GM.  You can actually find out

11   what was amendable and what was a commitment that the debtor

12   made.  And then you can negotiate something fair.  And we are

13   not under an illusion that Delphi just has stacks of money we

14   haven't found yet.

15             The retirees are going to have to take sacrifices

16   along with everybody else.  But 1114 says you can't force them

17   to make those sacrifices during the case without going through

18   that 1114 process.  And the debtor has a lot of leverage.

19   Because 1114 is only going to protect through the confirmation

20   of a bankruptcy plan.  But let's also be practical, Your Honor.

21   That might not be for a while, given the duration of this case

22   and what's happening in the automotive industry.  And in the

23   meantime, people are going to need to see their doctors, and

24   they're going to need to pay for their medications.  And the

25   consequences for them are life-threatening.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 77 of 205

77

1              Let's talk about the factual issue, Your Honor.

2    Because the Sprague case, in fact, doesn't apply here.  The

3    Sprague case was a Sixth Circuit decision.  And when you look

4    at the descent of the Sprague case, the descent of the Sprague

5    case is essentially the rule that is applied in the Second

6    Circuit.  The Devlin case, which is 274 F.3d. 76, and the

7    Feifer case, which is 306 F.3d. 1202, have a different analysis

8    in the Second Circuit of how you resolve conflicts between

9    earlier plans that said that you get lifetime benefits, and

10   subsequent plan documents that say the employer's reserving the

11   right to change those benefits.

12             What the Second Circuit law is, is once the employer

13   makes those commitments that says you get lifetime health

14   benefits, and you worked for that employer for a period of

15   time, you obtain a contractual benefit.  And the mere fact that

16   later plan documents say that the employee -- that the benefits

17   are now subject to modification, amendment and termination,

18   does not change the underlying vested right.

19             So these employees, who were there since the 1970s,

20   who had that language, when they came over to Delphi and Delphi

21   said you get the rights you did under the GM plan last year,

22   last year those people had vested rights.  Now, some of them

23   may have given those up when they signed agreements and took

24   early retirement programs.  There are some pretty clear waivers

25   in some of those programs and they may have waived.  But a lot

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 78 of 205

78

1   of the retirees who retired because they reached the applicable

2   age, didn't do that.

3            In addition, it's the debtor who bears the burden of

4   proof to establish that all of these benefits are amendable,

5   and they simply come here and say, Your Honor, we have this

6   language about retaining the right to modify change, we're not

7   going to cover every early retirement program, we're simply

8   going to put in evidence about four of them.  We're not going

9   to talk about what commitments are made to people who retire

10  under an early disability, and we're not going to address the

11  fact that these people who retired, who were thirty-year

12  employees of GM came over to Delphi for two years and then

13  retired, how we're going to deal with that.  So they have the

14  burden of proof.

15           THE COURT:  Well, but the Second Circuit law -- I'm

16  reading the Bouboulis case, now -- seems to differ only

17  slightly from Sprague, given the emphasis on the need for an

18  actual promise.  I mean, the language in Bouboulis was pretty,

19  to my unlettered eye, promissory, and yet the Second Circuit

20  didn't really see it that way.  So I guess I have to say, I

21  still haven't really seen -- and I appreciate that this is on

22  twenty-days' notice.  But for a group of people who basically

23  got this out of the blue twenty days notice is short.  But I

24  still haven't really seen language that would satisfy, I think,

25  the Second Circuit standard as set out in Bouboulis.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings   Pg 79 of 205

79

1           MR. GLOSTER:  Well, Your Honor, a couple of things.

2     First, I think when you look at the earlier cases, Devlin and

3     Feifer, they say that the employees ought to be given the

4     benefit of the doubt as to whether there's a genuine disputed

5     issue of fact given sort of contradictory language.  So

6     actually, the Second Circuit cases, which are all subsequent to

7     Sprague, specifically say look, you know, if you introduced a

8     promise, you ought to be able to do this.

9           And then second, Your Honor, my client's organization

10    was formed after this motion was filed.  We were contacted as

11    their counsel shortly before the opposition was due.  We

12    happened to be able to do that because we had represented,

13    successfully, the Delta retirees on the same legal issue of

14    amendable benefits and understood the Health Care Tax Credit,

15    how it would apply here.  But the reality is, Your Honor, one

16    of the reasons you don't see language that's clear about this

17    is that Delphi is doing this on twenty-days' notice.

18          And frankly, the retirees, who are about to lose

19    lifetime benefits -- and to me, Your Honor, GM said you will

20    get lifetime medical benefits unless you retire early.  They

21    said that.  That was the disclosure.  It said, you will get

22    lifetime medical benefits.  And it strikes me that the

23    recipient of that disclosure would have concluded I will get

24    lifetime medical benefits unless I take early retirement.

25          So I think, Your Honor, there actually was clear

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 80 of 205

80

1   statements that prior to 1980 GM committed, you're going to get

2   lifetime benefits.  And under the Second Circuit analysis that

3   that ought to answer the question.  Your Honor --

4           THE COURT:  Spend a moment with me on the people who

5   retired on full disability.  What is the factual point there as

6   far as their either having some separate promise or promissory

7   estoppel or if you want --

8           MR. GLOSTER:  Yes.  If you say to those people we're

9   going to provide you with life insurance until you turn

10  seventy-five, you in fact are going to be provided with life

11  insurance until you turn seventy-five.  And the issue is --

12          THE COURT:  I'm sorry.  And that's in the record?

13          MR. GLOSTER:  Your Honor, I think that the question

14  is, sort of, what is the disclosure made to a specific retiree

15  going out on early retirement.

16          THE COURT:  Right.  Is there anything in the record

17  to suggest that the debtor varied the SPD and --

18          MR. GLOSTER:  No, Your Honor.  But there's nothing in

19  the record regarding what other early retirement programs there

20  are and what specific disclosures were made to retirees.  You

21  know, the difficult that we have is, we get contacted by the

22  retirees who say gee, you know, I've got to go track down my

23  booklets, but I know that back three years ago, I was told I

24  would get this for life, and I'm not about to, on three-days'

25  notice, present that statement to this Court and put on

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 81 of 205

81

1    evidence.  But if there is an 1114 committee here, then we can

2    absolutely sort that out.  And, Your Honor --

3            THE COURT:  But doesn't the 11 -- I think when you

4    use the phrase 1114 committee, you are thinking of a committee

5    that immediately gets into the process of the 1114 give and

6    take on modifying benefits.

7            MR. GLOSTER:  If the debtor wishes.  Look --

8            THE COURT:  No, but --

9            MR. GLOSTER:  -- Your Honor, I --

10           THE COURT:  -- that would, in essence -- and leaving

11   aside the statutory issue, you and your co-counsel there

12   discussed that issue, I think, as well as it could be

13   discussed.  Just on the factual issue, doesn't appointing a

14   full-fledged 1114 committee prejudge that issue, the factual

15   issue?

16           MR. GLOSTER:  Well, Your Honor, first, I would

17   argue --

18           THE COURT:  I'm not being clear.  Assume for the

19   moment that the debtors are right and that Doskicil is right,

20   and I know you're not -- just assume for the moment that's the

21   case.  And so that the only time the 1114 bargaining regime for

22   the pre-Chapter 11 plan period is in effect is where there's a

23   vested right.  Doesn't appointing a committee that gets into

24   that bargaining regime before the Court's satisfied that

25   there's a vested right prejudge that issue?

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 82 of 205

82

1          MR. GLOSTER:  Your Honor, I have to say, if you're

2     prepared to rule that 1114 doesn't apply to benefits that the

3     debtor has reserved the right to amend, respectfully, I think

4     that that would be an incorrect legal determination --

5          THE COURT:  No, I understand --

6          MR. GLOSTER:  -- and I think the statute's clear.

7          THE COURT:  -- you all have been very cogent on that

8     point.

9          MR. GLOSTER:  But to be clear, the debtor does have

10    language in their summary of plan documents today that says

11    benefits are amendable.  Their employees continue to work for

12    them today, who are future retirees.  And the people who went

13    out under four specific early retirement program did, in fact,

14    sign fairly extensive waivers giving up their rights to vested

15    benefits, contractually under ERISA.  So that I would guess

16    that the universe of people who actually have a very strong

17    claim that they have vested benefits is relatively small.

18    And --

19          THE COURT:  But how -- what evidence do I have that

20    anyone has a very strong claim?  I think if you were able to

21    give me evidence that someone had a very strong claim, then --

22          MR. GLOSTER:  Well, there's the --

23          THE COURT:  -- we wouldn't be spending our time on

24    this.

25          MR. GLOSTER:  -- there's the evidence in the record

83

1   of the 1980 benefits book from GM, which says you have a right

2   for lifetime healthcare benefits.  There's the disclosures made

3   from --

4            THE COURT:  Could you show me that specific

5   paragraph?  I just want to make sure it says -- it has that

6   promissory language in it as opposed to "you have these

7   benefits."

8            MR. GLOSTER:  So that would be Exhibit 80, the

9   1980 --

10           THE COURT:  And that's volume 5 again?

11           MR. GLOSTER:  On page 20, Your Honor, I'm told.

12           THE COURT:  In which volume are we here?

13           MR. GLOSTER:  It's page 20 of Exhibit 80, Your Honor.

14           UNIDENTIFIED ATTORNEY:  Page 20 under Healthcare

15   Coverages.

16           THE COURT:  Okay.  Okay, "You may continue your basic

17   healthcare coverage for your lifetime provided you pay the full

18   monthly cost."  Is that the --

19           MR. GLOSTER:  That's the applicable language, Your

20   Honor.  And there's no language here that says we reserve the

21   right to modify, amend, and my understanding, and frankly, Your

22   Honor, if you look at the descent in the Sprague case, it

23   actually goes through and talks about what disclosures were

24   made to GM retirees in earlier plans.  So what really happened

25   was that GM early on said we will give you lifetime healthcare

84

1   benefits at our expense unless you retire early.

2             And then later on, they provided disclosure documents

3   to the employees that, well, actually we reserve the right to

4   modify.  And under the Sixth Circuit standard well, the Sprague

5   Court said gee, I think you don't have a vested right.  Under

6   the Second Circuit standard, they do have a vested right, and

7   the debtor here has chosen not to file its bankruptcy case in

8   the Sixth Circuit.  They chose to file in the Second Circuit

9   for their reasons.  But one of the things they're stuck with is

10  Second Circuit law on these issues.

11            THE COURT:  And why is that?

12            MR. GLOSTER:  That is because, Your Honor, Second

13  Circuit law applies, and because --

14            THE COURT:  Why?  To construing a pre-petition --

15  again, I'm not --

16            MR. GLOSTER:  Well, to construing --

17            THE COURT:  -- don't assume I'm ruling against you on

18  the first point, but I'm assuming now that we're covering the

19  point where the debtors' right and 1114 doesn't abrogate or

20  amend pre-petition agreements.  So I'm looking at rights under

21  pre-petition agreements.  Why --

22            MR. GLOSTER:  Sure.

23            THE COURT:  -- doesn't Sixth Circuit law apply to

24  that, since Delphi is headquartered in the Sixth Circuit?

25            MR. GLOSTER:  Well, because, Your Honor, that the

85

1    retirees are everywhere, and the determination is what are the

2    retirees' vested benefits for purposes in your analysis,

3    assuming we lose on the amendable benefits issue under 1114 and

4    bankruptcy law.

5             THE COURT:  Well, no.  But I'm looking at -- but that

6    would be a Butner analysis.  I'm looking at pre-petition

7    rights.  I mean, I'm assuming the Sixth Circuit applied Sixth

8    Circuit law, because --

9             MR. GLOSTER:  Well --

10            THE COURT:  -- they had the same employees for GM

11   were all over the --

12            MR. GLOSTER:  -- although, Your Honor, that's a

13   collateral estoppel issue.  Delphi is not General Motors.  And

14   the Delphi employees are not --

15            THE COURT:  No, no, I understand that.

16            MR. GLOSTER:  -- General Motors employees who are

17   litigating that.

18            THE COURT:  But just in terms of the choice of law

19   analysis, I'm not sure that Second Circuit law would apply.

20            MR. GLOSTER:  Well, I would encourage you to apply

21   it, Your Honor.  All right?

22            THE COURT:  Okay.  All right.

23            MR. GLOSTER:  So, Your Honor, just in closing.  These

24   benefits are critically important.  And, Your Honor, nothing

25   bad happens if you rule our way, if you say that the debtor is

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 86 of 205

86

1   free to leave these benefits in place or if the debtor wants to

2   cut those benefits on April 1 or May 1 or June 1.  And the

3   testimony from Mr. Miller is, there's no urgency about that

4   other than it would be good to start saving money two months

5   earlier rather than later.

6            Then the debtor can appoint an 1114 committee.  And

7   frankly, Your Honor can put them and the U.S. Trustee can put

8   them on a tight rein.  They ought not to be spending a whole

9   lot of money.  It's a discrete issue.  It's a quick

10  negotiation.  This is not raise the union flag from the halyard

11  of salaried employees.  This is simply protect the critical

12  benefits for people for some number of months and be practical

13  about it.

14           And if the debtor, frankly, is going to quickly

15  confirm a revised plan of reorganization, and I wish them the

16  best, and in fact, they think that they can be out of this

17  process in a few months, then they'll say, we'll let the

18  retirees keep their health benefits for a few months, and then

19  if they truly are amendable, we will terminate them post-

20  bankruptcy.

21           And the short answer, Your Honor, to your question

22  about well, couldn't the retirees ever get their benefits back.

23  That will never happen until the sun is gone and is a cinder.

24  Because the way it works is, the revested and reorganized

25  debtor will have a fiduciary duty to its shareholders, and it

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 87 of 205

87

1    will no more say that someone who worked here a decade ago

2    ought to be given some of my shareholders' money even though

3    I'm not obligated to pay them, any more than it would say, what

4    I'd really like to do is give money to the shareholders of the

5    pre-petition debtor, who lost all of their investment before we

6    went into bankruptcy.  It's simply not going to happen.  Once

7    these retirees lose their benefits, they lose them forever.

8              THE COURT:  Well, I think I agree with you with one

9    exception, which was actually, to my mind, a legitimate

10   exception, though.  Which is, that if -- and this was actually

11   raised by one of the objectors who is a congressman -- that if

12   Congress actually earmarks funds for this, then I don't see why

13   any company wouldn't take the earmark.

14             MR. GLOSTER:  They did, Your Honor.  It's called the

15   Health Care Tax Credit.

16             THE COURT:  Okay.

17             MR. GLOSTER:  And I'm just fighting so that these

18   folks can get some of that money.

19             THE COURT:  No, I understand that point.

20             MR. GLOSTER:  And then --

21             THE COURT:  By the way, the debtors are -- well, I'll

22   ask Mr. Butler about that.  It's the analysis of what would be

23   necessary to preserve that tax credit and the cost of it.

24   Because, after all, what the debtors are seeking here is

25   authority to do this.  And I want to see how much they've

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 88 of 205

88

1    explored something like that, not you, but that you've outlined

2    on that point.

3           MR. GLOSTER:  Your Honor, my understanding is, very

4    little.  This is sort of news to them, and it's news typically

5    to counsel for debtors in these big cases, because it's arcane.

6    And the issue really is, if you elect COBRA continuation

7    coverage that's qualified coverage under the Health Coverage

8    Tax Credit, but very, very few retirees do.  It's expensive.

9    If we came up with a cheaper benefit and had the retirees pay

10   for it, then there would be enough of them who had elected

11   that, that there would be some of them who were actually

12   getting this, and then not all states have qualifying coverage.

13          So some are just going to be ineligible.  And of the

14   states that do have qualified coverage, that's typically the

15   kind of thing where it's very minimal coverage with a high

16   deductible, and so Uncle Sam is going to be paying sixty-five

17   cents for a benefit that's not worth very much.  So for all of

18   those reasons, Your Honor, I would encourage you to deny the

19   debtors' motion.  Thank you.

20          THE COURT:  Okay.  Thanks.

21          MR. CORNELL:  Your Honor, again, my name is Trent

22   Cornell.  And I'll do my best not to go over ground that's

23   already been covered.

24          THE COURT:  Okay.

25          MR. CORNELL:  Your Honor, there is an objection early

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 89 of 205

89

1    as to the proceeding.  The reason for that was a threshold

2    issue, and what is the threshold that is required for the

3    formation of an 1114 committee.  As we've gone further into

4    this hearing, it's become more of an issue of what do you have;

5    what have you found; what have you located; rather than is

6    there an obligation to create a committee in the first instance

7    to come up with answers like those questions.

8           If you look to -- the biggest case that is out there

9    on the line is obviously the Doskicil in favor of the debtors'

10   position.  But it's very interesting.  The Court in Doskicil

11   noted a couple things.  It noted that "The retirees concede the

12   matter before the Court is a question of law with no genuine

13   issue of material fact.  The objection identifies the

14   committee's membership by attaching an exhibit listing 181

15   members' names.  All are said to be salaried non-union

16   retirees, not covered by a collective bargaining agreement at

17   the time of their retirement.  No other exhibits or affidavits

18   are presented."  Doskicil has a group of retirees that

19   presented no evidence, and in fact, agreed that the company had

20   a right of unilateral termination.

21          So that case has gone on, and it's been cited for a

22   little bit more than that.  And the debtors now are trying to

23   use it for a little bit more than that.  What they're trying to

24   say is, well, take that in conjunction with other cases out

25   there to come up with the proposition that in order to first

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 90 of 205

90

1    form the committee, you have to prove, beyond a standard it

2    seems of a summary judgment standard in the Second Circuit,

3    that there's no right of unilateral termination or a right of

4    unilateral termination from the debtors' perspective.

5         What we've tried to do is respond to that.  We've

6    tried to reach out to retirees.  We've e-mailed -- probably

7    about 1,200 retirees have contacted us at this point.  We did

8    this in a period of only a couple of days.  And in that time

9    frame we filed an objection, we had a couple documents.  We

10   filed a motion to form an 1114 committee.  We had a few more

11   documents.  Today we appeared to argue, and we have as evidence

12   a few more documents.  Is that the universe?  Absolutely not.

13   There are few things I can guarantee to a judge, but I can

14   guarantee that if this hearing were to take place, as it

15   should, with a retiree committee having done some of the work

16   that we've just begun, it might be a far different result.

17        The Sprague case is something else that the debtors

18   would like to hang their hat on, for obvious reasons.  There

19   were certain plans that were looked at.  But if you look to the

20   descent of Chief Judge Martin, he says something very

21   interesting.  And I'm sort of behind the eight-ball as are the

22   other attorneys, because we haven't seen any of these

23   documents.  He has.  What he noted was, "The factual recitation

24   will show that General Motors repeatedly promised retirees

25   lifetime healthcare in a variety of written materials and only

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 91 of 205

91

1   occasionally included a reservation of its right to change

2   retiree benefits."  That's someone who's actually looked at the

3   documents.  I haven't.  Also --

4            THE COURT:  But he --

5            MR. CORNELL:  -- it goes a little further.

6            THE COURT:  -- he was on that losing side, though.

7            MR. CORNELL:  Well, that all goes to the issue of the

8   choice of law.

9            THE COURT:  Right.

10           MR. CORNELL:  It also goes to an issue of different

11   people looking at different evidence.  We don't know what they

12   put in.  Clearly he's seen more than I have to this point.  And

13   it sounds like he's seen a lot more than the debtors have at

14   this point.

15           THE COURT:  But so did the judges on bank, who -- but

16   it was all in the record -- the ones who ruled in favor of GM

17   had also seen it.

18           MR. CORNELL:  And we don't --

19           THE COURT:  I have to assume.

20           MR. CORNELL:  -- I have to -- I can only assume,

21   because I don't have what they were looking at.  But what is

22   interesting, too, is --

23           THE COURT:  Well, I'm sure that the descender wasn't

24   looking at material that wasn't in the record.

25           MR. CORNELL:  Oh, no.  He clearly was.  It's just a

92

1   matter of how much was actually put into the record.  That I

2   don't know.

3              THE COURT:  Okay.

4              MR. CORNELL:  But I would note that the chief judge

5   goes on to state that, "It is true that from 1977 to 1985 "your

6   benefits and retirement" did include a reservation of right

7   clause.  It bears noting, though, that these clauses were the

8   rather tepid statements that benefits "have been changed from

9   time to time through the years and are subject to change in the

10  future"."  Taking that statement and applying it to the case

11  law of the Second Circuit of Devlin and Feifer, that doesn't

12  cut it.

13             THE COURT:  I disagree.  When you read Bouboulis, it

14  cuts it completely.  You're just out of luck.  If that's really

15  the case, if that's what you're relying on -- and I'm not

16  saying you are -- because I understand your point.  There may

17  be documents that will come to light.  But I just --

18             MR. GLOSTER:  Well the --

19             THE COURT:  -- I can't read -- even if Second Circuit

20  law were to apply, I can't read the cases as saying that that

21  type of statement wouldn't be sufficient.

22             MR. GLOSTER:  -- well, the language in Devlin

23  appeared to be fairly bold too, in some of the other courts.

24  And what Devlin and what Feifer did, is they allowed --

25             THE COURT:  Because there was other language --

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 93 of 205

93

1             MR. GLOSTER:  Right.

2             THE COURT:  -- that induced someone to take action.

3    And since then, including in Bouboulis and in -- there was one

4    from December of 2008, Warren Pearl Construction, Southern

5    District.  It has to be -- for the promissory estoppel to

6    apply, you have to have a lot.

7             MR. CORNELL:  And we don't --

8             THE COURT:  I mean, Devlin, they cite Devlin for that

9    proposition.  So, anyway, I don't want to argue with you,

10   because I think I understand your basic point, which is that

11   there may be more.

12            MR. CORNELL:  Well, what we have, what we've located

13   so far, are documents that, without reservation language, say

14   these benefits are lifetime.

15            THE COURT:  This is the 1980 and going back?

16            MR. CORNELL:  No, Your Honor.  What I'm looking at --

17   well, let me start there.

18            THE COURT:  Well, there was the one from '75.

19            MR. CORNELL:  If we go back to the 1980 plan

20   document, which is the only one that I personally have, but I

21   believe Your Honor may have looked to language that was not the

22   language that I would have cited to the judge.

23            THE COURT:  Okay.

24            MR. CORNELL:  If I heard you read this correctly,

25   Your Honor.

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 94 of 205

94

1              THE COURT:  It this still on page 20, or --

2              MR. CORNELL:  It's still on page 20, but it is the

3    first sentence under "Healthcare Coverages".  "Your basic

4    healthcare coverages, except vision, prior to October 1, 1980,

5    will be provided at GM expense for your lifetime."  I think if

6    I heard Your Honor correctly, you read the second paragraph.

7    First, up front, more powerful, for your lifetime.

8              THE COURT:  Okay.

9              MR. CORNELL:  Now, beyond that document, we have

10   tendered in -- and I showed this to Mr. Gebbia.  It was these

11   large foldout maps.

12             THE COURT:  That was the '75, I think.

13             MR. CORNELL:  They started -- they came yearly.  And

14   there's 1975, we've got, '76, '77, '78 -- excuse me -- '77,

15   '79, '80, '83, '84, '88.  They all have the same language in

16   them.  Under "Retirement Benefits", and this is any of the

17   exhibits, if you look at under the section "Retirement

18   Benefits", there's a bullet point:  "Your healthcare coverages

19   will be continued for your lifetime."

20             Now that's the type of evidence that, at least in the

21   Second Circuit, we'd be looking at against the plans or other

22   SPDs other documents out there.  If GM followed suit with other

23   companies, it's likely that that language of the termination

24   language which first was introduced, it seems, around 1988,

25   probably did start coming in in fits and starts from that

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 95 of 205

95

1   point.  And then it probably was universal at the time of

2   Delphi.

3            Bu the question is ,what was there before, what was

4   there even at Delphi?  We still don't know.  And to get to the

5   end result before there was a chance to vet it out, it does,

6   Your Honor, respectfully, abrogate Section 1114.  Because there

7   has been no ability on any type of a cohesive basis to search

8   for these documents and search for anything else that would be

9   beneficial to this group.

10            Your Honor, this is the fourth time I've represented

11   retirees in an automotive supplier case.  Every single time the

12   debtors said that there was a right of unilateral termination.

13   And in every other one of the cases, we were able to find

14   documents that disputed or rebutted that.  It's --

15            THE COURT:  Well, in Dana, there was a mixed -- the

16   debtors acknowledged it was mixed.

17            MR. CORNELL:  Well, that comes up. And I think that

18   Mr. Gloster mentioned that.  They did say that there was a

19   right of unilateral termination as to certain documents --

20            THE COURT:  But not -- only as to certain people.

21            MR. CORNELL:  -- but that's only because -- they

22   initially said that there was a right of unilateral termination

23   across the board.  As the process went forward --

24            THE COURT:  Didn't Dana actually move for the

25   formation of a committee?

96

1          MR. CORNELL:  They did.  But they said that they had

2    a right of unilateral termination from day one.

3          THE COURT:  Well, they wouldn't have moved for the

4    committee -- I read the motion papers.  They say that some are

5    covered and some aren't.

6          MR. CORNELL:  And when that motion was filed, Your

7    Honor, about two months after the formation of the committee,

8    where we had gotten documentation that showed that there was

9    subsets of the main group that did have different rights.

10          THE COURT:  Then that was consistent with Dana's

11   motion?

12          MR. CORNELL:  It was consistent with the motion they

13   filed at that time.  What they filed originally in the motion

14   for form an 1114 committee, they said that there was a right of

15   unilateral termination across the board.  As the time went on,

16   it came more to there are certain groups.  And that's what came

17   out because of the process of finding documentation that we

18   were able to establish that there were more groups, that there

19   was not a right of unilateral termination over them.

20          THE COURT:  I guess I -- I didn't read --

21          MR. CORNELL:  That was the --

22          THE COURT:  -- their motion that way, but.

23          MR. CORNELL:  Well, Your Honor, you wouldn't, seeing

24   solely that motion -- the context was --

25          THE COURT:  I did.  That's what I read.

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 97 of 205

97

1          MR. CORNELL:  -- I know.  You wouldn't see it because

2     the first motion is what set out the right across all groups.

3     By the time that they filed that motion for unilateral

4     termination, there was certain groups that we had

5     established -- that the committee had established, had

6     different rights than others.  And I would suspect that's the

7     case in almost every one of these cases, at least the ones that

8     I've seen, that a large retiree group, certain benefits were

9     changed over time, certain promises were made.  So, I have yet

10    to see, with one exception, a group where there was a universal

11    language that was used at all times for all people within the

12    group.

13          Your Honor, at the end of the day, this is a court of

14    equity, of course.  And what I would point out to the Court is,

15    if a committee is formed, and if it turns out that Delphi is

16    correct in the position that they're asserting today, and that

17    in this type of a hearing, if it takes place in a month or two

18    months, that there is no more information that what we've

19    already found, then at worst, the debtors have paid some money

20    for a committee to do an investigation to protect these 15,000

21    people.

22          If the debtors are incorrect, then today, 15,000

23    people lose their -- forever, lose their retiree benefits, and

24    there would have been no chance for them to have a committee to

25    speak up for them.  And that's exactly what 1114 is for.  I

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 98 of 205

98

1   urge Your Honor not to look to the end issue at this point,

2   when the retirees haven't been able to defend themselves, but

3   first to look to the threshold issue of does there need to be a

4   committee?  Is there a basis for a committee to be formed?  And

5   if so, I suggest that 1114 demands that it be formed.  Thank

6   you, Your Honor.

7          MS. CECCOTTI:  Good afternoon, Your Honor.  Babette

8   Ceccotti, Cohen Weiss and Simon for the UAW.  The UAW filed a

9   relatively limited pleading in response to the debtors' motion,

10  in part to serve as a clarification, really, regarding the two

11  small salaried units that UAW has represented.  They were

12  mentioned briefly in the debtors' papers, and we felt that it

13  was important just to clarify the record.  I don't believe

14  there's any dispute with the debtor on this point that the

15  benefits that are the subject of today's hearing are not

16  collectively bargained with the UAW.  They are subject to the

17  policies and programs that the debtor has in place for

18  similarly situated salaried --

19          THE COURT:  Sort of ride-along.

20          MS. CECCOTTI:  -- yes.  However, we anticipated,

21  correctly so, that there would be objections filed and that the

22  1114 issue would be raised.  So we wanted to make sure that if

23  the Court decided that 1114 applied, that these salaried

24  retirees would be included in whatever process the Court ruled

25  would be appropriate.

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings    Pg 99 of 205

99

1           Now, the UAW does affirmatively contend, and we did

2   so in our limited objection, that 1114 does apply.  And we have

3   based our contentions squarely on the Farmland case.  You have

4   already heard this morning from three sets of very able

5   objectors here, and I do not need to go over all of that.  So

6   we are content to rest on our papers.

7           The only contribution that I will make, really goes

8   back to your colloquy with Mr. Doyle on 1114(L), the recently

9   enacted provision.  And I would just observe that, I don't know

10  that there is a legal basis for drawing an inference about

11  Congress amending a portion of a statute while not touching

12  another portion.  I have heard judges do this from time to

13  time, and I think that there is really -- absent a very clear

14  statement in the legislative history, and I haven't looked at

15  it lately, so I don't know that there is one, one could find

16  almost any reason for having a particular provision change one

17  piece of a statute but not another.  And I'm simply not aware

18  of anything that legally would give rise to any sort of legally

19  permissible inference on that point.  So I would urge the Court

20  not to read too much into the enactment of -- at least as a

21  legal matter -- into the enactment of 1114(L), without

22  touching, for example, some other section of the statute.

23          THE COURT:  That's probably fair.  Having been

24  involved, in a prior life, in amending the Bankruptcy Code.

25          MS. CECCOTTI:  Other than that, Judge, again, I think

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 100 of 205

100

1    we are able to simply rest on the arguments in the papers.

2    Thank you.

3              THE COURT:  Okay.  Thank you.

4              MR. ROSENBERG:  Good morning, Your Honor.

5              THE COURT:  Good morning.

6              MR. ROSENBERG:  On behalf of the committee, I've been

7    advised that perhaps our pleading was less than crystal clear

8    as to what our position is, so let me try very briefly to set

9    it forth for you.  Your Honor, the committee understands the

10   human pain and suffering involved in this motion and yet,

11   really feels we have no choice but to support the debtors'

12   business judgment that a termination of these plans is

13   appropriate.

14             Having said that, number one, we will take no

15   position on whether or not the 1114 arguments are correct or

16   not.  But secondly, we do believe that these people should have

17   the right, hereafter, to file claims in this case pursuant to

18   some kind of a revised bar date, to make that possible.  Now,

19   the claims we have in mind are not inconsistent with a ruling

20   by this Court, for example, that there is a right of

21   termination, and therefore no executory contract type damages,

22   but rather we are concerned that there will be people, either

23   presently or between now and April 11th, who get medical

24   treatments that have not yet been compensated for and are left

25   out of pocket for treatments that they should have been covered

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 101 of 205

101

1  for, and they should have the right to file claims for that

2  sort of thing in an appropriate --

3          THE COURT:  But those would be administrative

4  expenses, wouldn't they?

5          MR. ROSENBERG:  They may well be, Your Honor.  We

6  won't take a position on that.  If that's Your Honor's ruling,

7  then --

8          THE COURT:  Well, I'm --

9          MR. ROSENBERG:  -- that may not be a bar date.

10          THE COURT:  -- I mean, it seemed to me -- I mean, if

11  that was the committee's concern, I understand it.  It seemed

12  to me that if the committee really believed that people might

13  have claims based upon the termination of these benefits, then

14  we should be doing 1114.  But if the point is that you're

15  worried about people, notwithstanding what Mr. Miller said

16  about there will be bills submitted after April 1st that will

17  cover the prior period and those bills aren't paid, I think

18  1114 would be pretty clear that those would have to be paid.

19          MR. ROSENBERG:  That, Your Honor, is the committee's

20  concern.

21          THE COURT:  Okay.

22          MR. ROSENBERG:  If -- thank you, sir.

23          THE COURT:  All right.

24          MR. BUTLER:  Your Honor, let me start with

25  Mr. Rosenberg's statement and then work backwards, because

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 102 of 205

102

1   having heard the clarification on the record, and I do

2   appreciate it, Mr. Rosenberg, I don't know that there's an

3   issue between the company and the committee as to claims.

4   Because the company would expect that it would have an

5   obligation to continue to pay the claims prior to termination,

6   even if those claims are submitted subsequent to the

7   termination date.  And certainly, if we didn't do that --

8           THE COURT:  Yes, it's (e)(2) -- 1114(e)(2).

9           MR. BUTLER:  -- right.  Without admitting as to

10  whether those are -- what type of priority those claims have,

11  we would nonetheless expect that people ought to be able to

12  come to court if we don't do that.

13          THE COURT:  Okay.

14          MR. BUTLER:  And our only point is, with respect to

15  anything post-termination, if the debtors' position is

16  sustained by the Court, we think, under the Ionosphere Club's

17  case, among others, we don't believe that the cancellation of a

18  benefit at an on-will basis gives rise to a claim as defined in

19  Section 1015 of the Bankruptcy Code.

20          So we would oppose a claims process for any post-

21  termination claims for several reasons.  The main reason,

22  frankly, from my perspective, is I don't think that anyone

23  ought to be giving expectations to retirees that if they go

24  through the painful process of submitting claims, that they're

25  going to actually, then have to go through a claims objection

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 103 of 205

103

1   process and we would argue at that point in time that the

2   claims, as other courts in this district have done, would find

3   that those claims should be denied.

4        And I see no reason to go through the pain and the

5   expense of the process.  It's a waste of, I think, judicial

6   resources and state resources, and frankly an inappropriate

7   burden on retirees, just to make claims that have no

8   opportunity to have a chance of being allowed.  Because if our

9   position is correct that these are at-will benefits, I think

10  the authority in this district alone would indicate that

11  there's no claim.  So that was the purpose of our response to

12  the committee's statements.

13       THE COURT:  Okay, but --

14       MR. BUTLER:  But as to the gap period up to

15  termination, understand that.

16       THE COURT:  Okay.

17       MR. BUTLER:  And I think Ms. Ceccotti also said it

18  correctly, I don't think there's a basic difference of view

19  between the UAW and the company with respect to, I think it's

20  four people or whatever number of people there are who is

21  distinct bargaining units.  It is a me-too arrangement and they

22  will be dealt with.  And I think Ms. Ceccotti was concerned

23  that they be dealt with in the same way that everybody else is

24  dealt with, and they will be dealt with in that way.  So I

25  don't think there's a basic disagreement between Ms. Ceccotti

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 104 of 205

104

1   and the company in terms of that particular issue.

2            Let me just try to address and then answer any

3   questions the Court may have.  But let me just try and address

4   a couple of points that have been made in the oral argument.

5   The first, I think, is dealing with -- let me deal with 1114

6   first.  If you assume for a moment that these are at-will

7   benefits, and I will argue that in a few moments, then we think

8   the controlling authority -- the majority authority, not

9   controlling -- the majority authority supports the debtors'

10  position that an 1114 committee is not required or compelled by

11  the statute.

12           And Your Honor pointed out in oral argument that in

13  fact since, at least I think '93, maybe even earlier, Congress

14  has been aware of the issues associated with the split of

15  authority on this subject.  And I point out that Colliers

16  actually commented on this in Colliers recently in which

17  Colliers says, quote, "Congress is presumed to note prevailing

18  judicial interpretation.  It did not change operative parts of

19  1114 in BAPCPA."

20           And while I think I'd also agree with Ms. Ceccotti

21  that I don't think that there should be huge inferences drawn

22  either way on the subject because I think it's more complicated

23  than that.  Congress certainly knows how to overrule,

24  particularly in this area -- knows how to overrule judicial

25  interpretations if it chooses to do so.  It did not do so.  And

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 105 of 205

105

1   even the major commentators have recognized that fact that it

2   did not do so when 1114(l) was enacted.

3           It seems to us, as we've thought about this process,

4   that to appoint an 1114 committee when the debtors' issue here

5   is, as we have described it in the exercise of the company's

6   business judgment, that we believe that the liability that's in

7   excess of a billion dollars in the reorganized balance sheet

8   has to go away in order to be able to obtain the financial

9   support from our stakeholders with a continuing economic

10  interest -- and I want to talk about that phrase in a minute --

11  but that those stakeholders with that interest would continue

12  to support the company.  That's really where the company is at

13  right now.  And that's why after having provided some forty-two

14  months of welfare coverage here on an at-will basis the company

15  has concluded that this motion is necessary.

16          Now, the reference, however inarticulate it may be in

17  hindsight, of stakeholders with an economic interest, what that

18  reference is meant by the company to mean is we're really

19  talking about people who, given the declining valuation of the

20  business enterprise values in the automotive sector and the

21  lack of capital available in the capital markets to companies

22  seeking to reorganize, as one looks to try and put together

23  plan modifications that are in fact confirmable and feasible,

24  the company has been spending a great deal of time in

25  discussions with the parties that have the most direct economic

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 106 of 205

106

1    interest here.  That starts with the DIP lenders and the DIP

2    steering committee that's been formed.

3            And those lenders have made it very clear to the

4    company that they will not support -- and there's evidence in

5    the record, including something called a half-time report --

6    that's one of the exhibits in the record.  They made it very

7    clear.  In their view, actually, they think the company has a

8    fiduciary duty to terminate these at-will benefits.  We have

9    pushed back on their interpretation, but nonetheless it is

10   clear to the company, as Mr. Miller testified to in his

11   declaration, that the stakeholders with the economic interest

12   at the top of the absolute priority waterfall that have to be

13   dealt with in this case, in the circumstances we find ourselves

14   in, simply will not support and will not countenance having

15   discretionary liabilities of this magnitude on the reorganized

16   balance sheet of the company -- reorganized company's balance

17   sheet.

18            THE COURT:  But again, that's -- let me parse through

19   that.

20            MR. BUTLER:  Yes.

21            THE COURT:  That's a plan point, right, when you're

22   talking about the reorganized balance sheet?

23            MR. BUTLER:  Yes.  Your Honor, the billion-one --

24            THE COURT:  I don't know if all of the objectors

25   concede this point, but I think it's pretty clear that

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 107 of 205

107

1   1129(a)(13) lets you deal with that issue in a plan.  Even if I

2   were to accept the argument that 1114 overrides a right in a

3   pre-petition contract to terminate, I think it only would do so

4   for the pre-plan period.  So for that period you're talking

5   about the cash flow that would go to pay these benefits after

6   April 1st.

7          MR. BUTLER:  Right.  And that's the second point,

8   Your Honor, which is as the testimony, which hasn't been

9   controverted in any way, I think, is compelling is that Mr.

10  Miller has testified and our papers indicate the company is

11  liquidity constrained.  And we are working very diligently

12  every day with our administrative creditors, including our

13  suppliers and customers, among others, to continue to provide

14  them with a sufficiently transparent liquidity runway that they

15  will continue to support the company.

16          That's coming largely, at the moment, at the expense

17  of exposure to administrative creditors.  That is to say,

18  General Motors is being asked to continue to increase its

19  support of the company financially, which it does and can only

20  do on a discretionary and consensual basis.  And there's an

21  amendment before the Court later today on that issue, on the

22  liquidity support agreement.  And the DIP lenders are being

23  asked to make material modifications to the accommodation

24  agreements, which they have agreed to do, that provides

25  additional liquidity to the company.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 108 of 205

108

1          THE COURT:  Do either of those two agreements contain

2   any conditions or requirements that these benefits be

3   terminated as of April 1st?

4          MR. BUTLER:  No, they do not.  And although both of

5   those parties understood, at the time we negotiated these

6   amendments, what the debtors were doing with respect to this

7   issue.

8          THE COURT:  But you'd be seeking this relief?

9          MR. BUTLER:  Absolutely.  And I think, frankly, the

10  half-time report that's in one of the exhibits, which comes

11  directly from one of the tranches of lenders in the

12  confidential documents, indicates what their positions are on

13  these issues including this one.

14          And so the company is liquidity constrained.  And the

15  important point here is that the company is trying to take

16  steps to make sure that it can, week by week, month by month,

17  provide sufficient information to those parties who are

18  providing continuing administrative support of the company.

19  That wouldn't just be the DIP lenders and General Motors, but

20  it's all of our suppliers, and it's other creditors who do

21  business with us who provide us continued credit.  But they are

22  comfortable, or at least willing to continue to do that as we

23  sort through these plan modifications.

24          And the problem that we have as a matter of business

25  judgment here is to be spending a million and a half dollars a

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 109 of 205

109

1   week on completely discretionary expenses, at least in the

2   company's view, that those creditors have told us they don't

3   believe are benefiting the continuing reorganization of the

4   company and they oppose us doing when we are essentially, at

5   this point in the case, using other people's money to fund the

6   case.  And they're providing it to us not in large lines that

7   sustain us for the next year or eighteen months, but as Your

8   Honor has come to understand, measured in months and sometimes

9   even in weeks to make sure that we are moving in a consensual

10  direction.

11          It is, in the company's view, as the company weighs

12  all of the various issues here, and the company is extremely --

13  Mr. Miller testified to it -- extremely sensitive about all of

14  these issues and sensitive to them.  The fact of the matter is

15  the company thinks it would be irresponsible to not seek to

16  move to terminate these on April 1st.  And frankly, that

17  provided somewhat of a runway to provide additional financing.

18  Certainly some of our stakeholders believe we should have done

19  it even more abruptly than we did.

20          And there's certainly a threshold question here as to

21  whether or not we even need a court authority to do this

22  because it's an at-will right of ours to do this and not clear

23  that we need any authority from the Court to do it.  Your

24  Honor's gotten to know, I think, the management team and the

25  advisors in this case well enough during the life of this case

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 110 of 205

110

1   that we simply weren't going to do this without creating this

2   forum and opportunity for there to be a complete record here.

3           And I think, frankly, the fact that there were some

4   1,600 filings in connection with this, the fact that three very

5   capable counsel who represent and have represented other large

6   retiree groups in other large cases, are here before Your

7   Honor, I think is evidence to the fact that there is a complete

8   record here for purposes of this motion.

9           THE COURT:  Well, on that score, let me just make

10  sure I understand on the notice point.  Did all current

11  employees who are affected by this motion get a copy of the

12  motion?

13          MR. BUTLER:  Yes.

14          THE COURT:  And also all retirees?

15          MR. BUTLER:  Yes.  I think overnight courier,

16  actually.

17          THE COURT:  Okay.

18          MR. BUTLER:  So, Your Honor, in dealing with 1114, I

19  can simply -- you know, our papers lay out, both in our

20  original motion and in our response, the fact that we think the

21  Court ought to follow the majority rule here.  And we believe

22  it is appropriate.  And I would note, my understanding --

23          THE COURT:  Can you remind me, what did you say about

24  Judge Beatty's case?

25          MR. BUTLER:  Are you talking about Solutia?

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 111 of 205

111

1          THE COURT:  Yes.

2          MR. BUTLER:  Well, in the Solutia case, we went back

3  and actually looked at the transcript in that case to see it

4  because the order did provide for an 1114 committee, but when

5  you read the transcript for that case, Judge Beatty indicated

6  in her ruling that in her view the benefits there were subject

7  to some form of a settlement agreement.  And her concern was

8  that she was uncertain over the degree the settlement agreement

9  created an obligation with respect to those benefits.  So

10  certainly there was some issue there about whether or not there

11  had been a vesting through that settlement agreement, which is

12  not the circumstance here.

13          And I think it's also the case in Delta, where

14  counsel indicated he was representing the 1114 committee, that

15  there was no 1114 determination made when that committee was

16  formed.  That issue was reserved when the committee was formed

17  as to whether it was required.

18          THE COURT:  Well, that's their point, I think.  I

19  mean, that's the same case in Dana  --

20          MR. BUTLER:  Right.

21          THE COURT:  -- that issue was reserved.

22          MR. DOYLE:  Your Honor, if I just might comment?

23  This is Dan Doyle.  I represented the committee in Solutia.

24  And yes, that was a concern, but she did not limit the

25  committee to just dealing with those groups of retirees who

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 112 of 205

112

1   were subject to an earlier settlement.  It covered every

2   retiree.

3                THE COURT:  Okay.

4                MR. GLOSTER:  And Your Honor, with regard to Delta

5   Airlines, at the time the 1114 committee was appointed, the

6   debtor had indicated that they did not have a current intention

7   to modify vested benefits.  But the committee was then

8   appointed in any event and dealt with both vested and unvested

9   benefits which we preserved for a period of time after the

10  confirmation.

11               THE COURT:  But Delta sought that committee, right?

12               MR. GLOSTER:  Delta opposed --

13               THE COURT:  The appointment of the committee.

14               MR. GLOSTER:  -- the appointment of the 1114

15  committee.  It was appointed over the objection of Delta.

16               THE COURT:  Okay.

17               MR. BUTLER:  Your Honor, moving to what at least two

18  counsel have indicated in their arguments, is sort of the

19  argument that the company's got the cart before the horse

20  because in fact if these were vested benefits, there would be

21  an 1114 committee.  And there's an open question as to whether

22  these are vested benefits so you need an 1114 committee

23  appointed under any circumstance to find out whether they're

24  vested, even though if you follow the majority rule, you only

25  appoint an 1114 committee if there are vested benefits.  And

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 113 of 205

113

1    they say let us go out and find that and find out whether there

2    are vested benefits.  And there are at least two -- this is, I

3    think, something that is not complex but I think clear, there

4    are all of the statements that General Motors made or didn't

5    make over a period of decades.  And then there are the plans

6    that the company took from General Motors in 1989.

7              And the plans that Delphi took -- and there is, by

8    the way, no document that has been put in by the objectors and

9    nothing in the record to suggest that Delphi documents don't

10   clearly have this reservation of rights in them in all the

11   documents.  And there are no other plans we're seeking to

12   modify other than the plans that are before the Court.  When

13   you're talking about someone on disability, as Mr. Gebbia

14   testified, you know, if someone went on disability, that might

15   affect what their eligibility was to participate in these

16   plans, the plans before this Court that have these reservation

17   of rights in them.

18             There are not seventeen other plans that we haven't

19   put before the Court.  These are the plans.  These are the

20   plans that the groups participate in.  And since Delphi has had

21   them, these plans have consistently and routinely had these

22   reservation of rights in there.  And --

23             THE COURT:  But what about the testimony that around

24   the time of the spin-off that the employees were told that it

25   essentially would be a rollover from GM as far as your

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings   Pg 114 of 205

114

1    benefits?

2          MR. BUTLER:  Well, I think in fact the documents

3    speak for themselves.  I'll give you the exhibit number in a

4    minute of the document that was provided in 1989 in connection

5    with the transfer -- Your Honor can read the document for

6    himself -- that too includes the reservation of rights language

7    in it.  And my point in this is that those plans, when they

8    came over from General Motors, came over subject to Sprague.

9    Meaning, I accept the fact that there was a contested issue

10   between this group of retirees and General Motors before Delphi

11   was spun off about what those plan right were.  And that was

12   litigated and conclusively determined that all the things that

13   happened in the 1950s and '60s and '70s and '80s and '90s

14   leading up to the decision in 1998 -- those plans, the plans

15   that came here, are subject to these reservation of rights.

16   And so going back, the reason I objected to the relevance

17   during the evidentiary record of what was said in 1975 or 1980

18   to me is completely irrelevant to this Court when in fact

19   there's a final judicial determination that bound the people to

20   this plan when it was at General Motors, that we then took as

21   it was spun out to us, as to what occurred during the General

22   Motors history.

23          I mean, Sprague is very clear.  When you read

24   Sprague -- Your Honor made the point in oral argument that the

25   judges had all of the facts.  You read Sprague.  Sprague talks

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 115 of 205

115

1   about the fact that General Motors didn't have that language in

2   the 1980 plan but it was in three other pre-dated plans and

3   they call them out, they give the years.  And the 1980 SPD was

4   really an outlier to many of the other statements that have

5   been made.  When you read it, they actually call them out

6   factually and have them talk about it.  And the court in the

7   Sixth Circuit quotes a reservation of rights in 1965, '68 and

8   '71.

9           So this issue that counsel urge you now to sort of

10  re-litigate is, in our view -- was when the plans were spun out

11  from General Motors to Delphi they were spun out essentially

12  subject to the Sixth Circuit order that had determined that

13  there was a reservation of rights.  And the reservation of

14  rights has been maintained ever since.  I find it a bit

15  incredible that people would say no, what we now need to do is

16  go back and develop essentially the same evidentiary record

17  dating back to the 1960s and now we'll apply some other law to

18  it because somehow that determination, which was the basis upon

19  which this plan was spun out to Delphi and the basis upon which

20  all the representations were made to these same retirees, was

21  made based on Sprague.  They can't write Sprague out of the

22  chain of events here.

23          So from our perspective, we believe that there has

24  been -- and I think the evidence here supports, without

25  contravention, that since Sprague the chain since Sprague of

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 116 of 205

116

1   these reservation of rights has been unbroken.  And even the

2   declarants in support of the objectors basically acknowledge

3   that the categorical statements that they made in their

4   declarations I think were probably, on reflection, not complete

5   because they acknowledged that in fact, as one of the

6   declarants did the wiggle words were in some of the General

7   Motors documents and the wiggle words were in the Delphi

8   documents.  And the other who said no, we always needed our

9   consent, acknowledged that we made modifications over the last

10  decade that have been put in place without their consent.

11  And so I don't think the Court can attach any weight, frankly,

12  probative weight, to those declarations.

13          THE COURT:  Let me ask you, and I think this is

14  really a point.  The debtors' motion is under 363(b).  Given

15  the objections, which are based on 1114, I have to make some

16  analysis of whether these are retiree benefits, as defined in

17  1114, which has its own regime, or something else.  And the

18  debtors argue that something else and I should, in reviewing

19  their business judgment, conclude that that business judgment

20  is properly exercised and grant the relief.

21          It seems to me that if that's the premise I'm taking,

22  I can't, under Orion, definitively rule that there isn't some

23  retiree out there who doesn't have a vested right.  They're not

24  all before me.  There are facts that may come up at some point.

25          MR. BUTLER:  I'm sorry, Your Honor, I don't follow

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 117 of 205

117

1    that.  They are before you.

2              THE COURT:  Well --

3              MR. BUTLER:  Every retiree of this company is a party

4    to this motion.

5              THE COURT:  No, I understand that.  But so were the

6    parties to the executory contracts in Orion.  And under Orion,

7    if this is properly a 363(b) motion, I can, since it's a

8    summary proceeding, say that this makes sense, this is the

9    debtors' business judgment and permit the debtor to terminate

10   these plans.  It seems to me I can't adjudicates each

11   individual retiree's rights, right?  Or does the tie-in to

12   1114, the either/or analysis mean that I have to adjudicate

13   each employee's rights by saying that they don't have any

14   vested rights?

15             MR. BUTLER:  Your Honor, I think that from the

16   debtors' perspective we believe that there are no vested

17   rights, which gives us the right under 1114 and under the

18   Bankruptcy Code to exercise the business judgment we did under

19   363.

20             THE COURT:  Right.

21             MR. BUTLER:  We believe that to be the case.  The

22   evidentiary record from you, even with the 1,600 objections and

23   the information that was put in there, does not -- there's no

24   material dispute to that except for the pre-Sprague evidence.

25   And there's been no evidence introduced into this record other

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 118 of 205

118

1   than pre-Sprague documents that suggests, you know, that there

2   has been any communication by Delphi that would provide the

3   right to suggest that these somehow become vested.  And I do

4   think it's important to understand under ERISA that -- and I

5   think the Court gets this -- that absent a showing that's

6   tantamount to fraud where the burden really on that is on the

7   objectors, not on the company.  It's not my job to prove there

8   wasn't a fraud.

9           THE COURT:  For the promissory estoppel?

10          MR. BUTLER:  Right.  It's not my job to prove there

11  wasn't a fraud.  It's their job to prove that there was.  An

12  ERISA plan is not subject to modification as a result of

13  informal communications.  Congress intended the plans of the

14  SPD documents to control.  And that's a Second Circuit case I

15  think the Court's familiar with, the Moore case.  And so the

16  point here is that in exercising the business judgment it is

17  one of the premises of the business judgment that the company

18  had, and we freely admit, is that we believe this to be an at-

19  will determination and discretionary liability.

20          And that is a fundamental part of our calculus that

21  these were not discretionary liabilities.  These were, in fact,

22  contractual liabilities.  They would have to be evaluated

23  differently, as you pointed out, by the committee, by us, by

24  other parties and other stakeholders.  In our view, these are

25  not, and we think we're correct and we think the record

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 119 of 205

119

1    supports this, there is nothing to suggest that these are not

2    discretionary liabilities.

3            And as such, one of our prongs of our business

4    judgment, and it seems to me that Your Honor, in exercising

5    your own review under Orion, you have to be satisfied that our

6    business judgment is correct.  And I think it is.  Look, there

7    is an economic reality to this case.  There is a legal reality

8    to this case.  And there is a human/emotional desire reality to

9    this case.  There's nobody in this room, frankly, I think, who

10   regrets more being here than I do with respect to this

11   particular motion.  But the fact of the matter is, and we

12   fought for forty-two months to keep these discretionary

13   benefits in place.

14           THE COURT:  What about the --

15           MR. BUTLER:  The reality is we simply cannot do that

16   any more in light of where we are and what we need to do in

17   order to be able to preserve this company, and in preserving

18   this company, preserve the continuity of supply in the global

19   automotive business.  If we don't do this right, there's going

20   to be a real problem.

21           THE COURT:  What about the federal tax credit point?

22           MR. BUTLER:  Well, I've heard the point.

23           THE COURT:  Do the debtors think there's a material

24   cost to that?

25           MR. BUTLER:  First of all, there is -- and I'm not a

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 120 of 205

120

1    tax attorney, I don't hold myself out as one in understanding

2    all of this.  And part of what was talked about here was we're

3    talking about whether or not these were COBRA events.  What

4    we're talking about in this motion is not a COBRA event.  This

5    isn't going to be a COBRA event.  We're not terminating -- just

6    to be clear, we used the word termination because we wanted to

7    make clear what the effect of this was doing.

8              But we're not terminating the plans here.  What we're

9    doing is modifying the plans here so that the cost has to be

10   borne by the retirees.  And as I understand COBRA, this is not

11   a COBRA event.  And, you know, we had a lot stuff tossed out

12   there about how this was COBRA, and you know, this is not a

13   COBRA event.  If Your Honor approves this thing, I don't think

14   anyone --

15             THE COURT:  But I think what the suggestion was --

16   maybe I'm wrong about this -- is that you could structure it in

17   a way to preserve the right to the tax credit.  Is that --

18             MR. GLOSTER:  Could I speak to that for thirty

19   seconds, Your Honor?

20             THE COURT:  Yes, very briefly.

21             MR. GLOSTER:  Two things, Your Honor.  One, there's a

22   statute that says if you modify benefits during a bankruptcy,

23   it is a COBRA event.  But there is a reasonable dispute over

24   whether simply terminating a plan not in part of the 1114

25   process does, so if opposing counsel says that the company's

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 121 of 205

121

1    position is that this is not a COBRA event, I would disagree

2    legally.  But if they're right, all of the folks that are the

3    retirees fifty-five to sixty-five would lose COBRA continuation

4    coverage as a qualified coverage under the health care tax

5    credit, and that would be a disaster.

6            And then second, the IRS has said that if an 1114

7    committee negotiates a follow-on plan in lieu of COBRA

8    continuation coverage as part of the 1114 process, that can be

9    qualified coverage for purposes of the health care tax credit.

10   And we have a timing issue here because the debtor has not yet

11   turned their plan over to the Pension Benefit Guaranty

12   Corporation.  Had they done that, frankly, Your Honor, last

13   month, I think that there would be more enthusiasm for trying

14   to preserve the health coverage tax credit for the retirees.

15           MR. BUTLER:  Your Honor, we are still -- on the

16   pension point, as we have made clear in our pleadings, we are

17   still searching for a solution --

18           THE COURT:  That's not a done deal.

19           MR. BUTLER:  No, we are still searching for a

20   solution pension.  And it's not a done deal.  And I can't make

21   any representation to the Court about what will happen

22   ultimately with the pension programs other than to suggest that

23   I believe that at the end of the day the federal government's

24   going to make that call because at the end of the day, the

25   federal government's going to have to make some determinations

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 122 of 205

122

1    about how it's going to support the automotive industry in

2    whether it wants to see these pensions continue.

3            We certainly hope that we can find a solution that

4    involves the support of the government in continuing these

5    pensions.  But that really is for another day.  And that

6    doesn't change the problems I have now for this company in

7    trying to be able to address the issues that our current

8    liquidity constraints provide.  And this is not, you know, just

9    to say it, this is not -- the legal standards for us, this is

10   not a but-for test that we're dealing with.  This is a business

11   judgment test about whether, given the extremely important

12   objectives of preserving liquidity and providing liquidity

13   transparency to our administrative creditors as we are

14   essentially getting support from our DIP lenders and from

15   General Motors to do that, as I've said before, on a week by

16   week and month by month basis, can the company, in working with

17   those stakeholders, continue to spend a million and a half

18   dollars a week on discretionary at-will expenses?  And the

19   conclusion the company has had after consulting with the

20   stakeholders is no, we can't.

21           THE COURT:  Let me run an idea by you.  I tend to

22   agree with you that the record for today suggests to me pretty

23   clearly that not only do the plan documents provide this right

24   but that there's nothing, under either a Sixth Circuit or a

25   Second Circuit law, that would override that right that exists

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 123 of 205

123

1   in the plan documents.

2           On the other hand, the Code in 1114(d), in addition

3   to having a mandatory order of the appointment of a committee,

4   gives the Court discretion to appoint one if it's appropriate.

5   And the consequence of the Court being wrong on the issue of

6   whether anyone is vested or not, at least for that person, is

7   pretty serious because that person, if he or she is vested,

8   would have the rights specified in 1114.

9           And so given that this relief would not kick in until

10  April 1st, consider the possibility of an order today granting

11  the debtors' motion subject to the Court's review of the

12  results of a committee appointed for the sole purpose of

13  determining whether any group, such as, for example, those who

14  retired on disability, in a more thorough look at the documents

15  which would occur over the next two weeks, would have a vested

16  right.  I would probably set a budget for that committee.  It

17  would give the debtor someone to talk with and employees

18  someone to coordinate with.

19          MR. BUTLER:  But the only --

20          THE COURT:  And let me just say one other thing too.

21  And perhaps this is anathema to someone who I've just told may

22  well win his motion, these issues are all issues that --

23  particularly the statutory construction issues are all issues

24  that are nicely subject to appellate rights.  So you would have

25  a committee to talk to about that sort of thing too.  And

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 124 of 205

124

1   perhaps also about the federal tax plan, which frankly, I think

2   I'm as mystified about as you are.

3          MR. BUTLER:  Well, Your Honor, the one reservation

4   I'd have about that approach is that I can see that committee

5   coming in and then saying okay, all the legal standards are the

6   1114 standards here.  And so we need to -- I mean, as you know,

7   under 1114 there's a whole process.

8          THE COURT:  I know.  I think the language -- or if

9   the court otherwise determines that it is appropriate, it gives

10  me the authority to circumscribe the duties of that committee.

11         MR. BUTLER:  And the legal standards that would be

12  imposed on the company?

13         THE COURT:  Right.

14         MR. BUTLER:  That's a --

15         THE COURT:  It would clearly not be a committee

16  authorized -- and in fact, the flip side of that would be the

17  company required to bargain under 1114.  That's not what I have

18  in mind.  Because again, I think there's an issue of putting

19  the cart before the horse here.  And given this record, I think

20  that the debtor has sustained its burden to show that these are

21  terminable-at-will or modifiable-at-will rights.  It's not like

22  the situation where there's a mix, as far as I can see on this

23  record.

24         But again, I am clearly cognizant of the fact that

25  there are 15,000 thousand individuals, some of whom have been

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 125 of 205

125

1   able to hire capable lawyers, but they've only been able to do

2   that very recently.  And again, I think the difference as far

3   as how one comes out on this issue is significant, although

4   ultimately I'm not sure how significant because again, if it's

5   necessary for a plan, it doesn't appear to me that 1114 even

6   really kicks in in that sense.

7        But as far as cash flow management is concerned, it

8   would seem to me that even there the debtor has its rights for

9   interim relief as well if that becomes an emergency.  But

10  leaving all that aside, I guess I'm really not at the point to

11  see that 1114 generally kicks in.  But it's all premised upon

12  the notion that there are no vested rights here.  And the

13  record on that is clear today, but it's a record that was built

14  up on very short notice from the objector's side and I still

15  have some questions about how Orion fits into all of this as

16  far as it being a summary proceeding.

17       So my inclination, I think, is to authorize the

18  appointment of a committee with the marching instructions

19  limited to doing investigation on the vesting for particular

20  groups.  And I suppose also negotiating with the debtor, if

21  either side thinks it's advisable, on a settlement of any of

22  these issues ultimately, and it would be the settlement, I

23  guess, on an appellate basis.

24       MR. BUTLER:  Your Honor, if that would be without

25  imposing the 1114 regime?

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 126 of 205

126

1          THE COURT:  Right.  Right.  Correct.

2          MR. BUTLER:  And I know Your Honor's got a very full

3   docket today --

4          THE COURT:  No, I --

5          MR. BUTLER:  -- can I literally have two minutes to

6   talk to the people --

7          THE COURT:  That's fine because I need to collect my

8   thoughts for a ruling anyway, so I'll give you all five

9   minutes.

10          MR. BUTLER:  Thank you, Your Honor.

11          THE COURT:  Oh, before you go, the U.S. Trustee is

12   here.  I have a question, which is does the U.S. Trustee -- let

13   me sit down -- does the U.S. Trustee believe that you have the

14   duty of appointing -- if I order the appointment of a

15   committee, is it you who appoints it or is it me?  And if it's

16   me, can I delegate it to you?

17          MS. ADAMS:  Your Honor, we asked ourselves these same

18   questions last evening.  Our very quick research indicates that

19   there are no temporal limits in 1114.  And if Your Honor

20   directs, we would appoint.

21          THE COURT:  All right.

22          MS. ADAMS:  My one request or inquiry would be, given

23   that there are 15,000, and obviously we want to do this very

24   rapidly, if we could limit in some manner the solicitation

25   process to those represented by people in the courtroom?

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 127 of 205

127

1              THE COURT:  My taste -- and frankly I think there are

2    more than 1,600 objections because some of them may not have

3    gotten docketed or it's late by a day or so -- is that this

4    group of lawyers here represents a pretty representative body

5    of retirees.  So I think you can limit it, yes.

6              MS. ADAMS:  Thank you, Your Honor.

7              MR. BUTLER:  And that was actually what I wanted to

8    talk to the trustee about before if that could be a part of the

9    order.

10             THE COURT:  I envision this as a quick process and I

11   think that it can be quick because a lot of the initial work in

12   forming a committee has sort of been done by the participants.

13             MS. ADAMS:  Thank you, Your Honor.

14             MR. BUTLER:  Thank you, Judge.

15        (Recess from 1:10 p.m. until 1:19 p.m.)

16             THE COURT:  We're back on the record in Delphi.

17             MR. BUTLER:  Your Honor, thank you for that brief

18   recess.  Not that Your Honor is looking for Delphi's view

19   particularly on this, but we did use the recess to try to

20   review the suggestions made on the record.  I wanted to note,

21   Your Honor, that subject to a couple of items I want to put on

22   the record, the company would be affirmatively supportive of

23   the suggestion that the Court was considering because, just

24   like the Court, the company wants to make sure we've got a

25   right too.  We're fiduciaries and we want to make sure that

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings   Pg 128 of 205

128

1    this is appropriate; we think that it is.

2            A couple of items.  In order for us to be able to

3    implement this on April 1st, we would need to have this

4    order -- if Your Honor determines that this is going to be

5    provisionally approved today, we would need to have the order

6    include a provision that would allow us to begin the

7    administrative processes which would include communicating with

8    retirees and giving them the election options and the paperwork

9    that they need because they need to consider, over a thirty day

10   period, what they might want to do.

11           And we ultimately, in the second week of March, are

12   going to have to make a definitive determination about whether

13   we push the switch for April 1st because it affects the checks

14   that go out to pensioners because there are deductions being

15   taken out right now which would have to change as well as

16   other -- the notices that we have to give to the health care

17   system.  So we would need to have the final hearing relatively

18   early in the week of March 9th.  That would give two weeks for

19   this committee to move forward.

20           And I would tell Your Honor, even before -- and we've

21   spoken with the U.S. Trustee to talk about how we might do

22   this, they are already speaking to counsel, and I would tell

23   Your Honor we will commit, as a company, to obviously work

24   with, as we have been, with the counsel that have appeared here

25   today, pending the formation of that committee by the U.S.

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 129 of 205

129

1    Trustee.

2              We would like, Your Honor, the order, if you're

3    inclined to enter it in that way, to have language that the

4    U.S. Trustee's office signs off on, about the implementation of

5    the appointment so that we're all comfortable about how the

6    language works for the appointment.

7              We also, Your Honor -- and I don't know whether Your

8    Honor's prepared to address this in the ruling today, but the

9    company would certainly urge that Your Honor address the

10   Sprague issue today because the question on vesting, it's a

11   whole different question, it seems to us, whether the focus is

12   post-1998 to today, the last ten years or eleven years, or

13   whether we're going back six decades, five decades.  And that

14   has to do with the issue that's before the Court involving

15   Sprague.

16             But I think that subject to those issues, Your Honor,

17   we would be very supportive of this and we would hope Your

18   Honor would set a budget for this committee, because we are

19   cash constrained.  But we would pledge, Your Honor, to work

20   with the committee on the limited appointment idea that Your

21   Honor has asked us to consider.

22             THE COURT:  Okay.  Any additional thoughts from the

23   U.S. Trustee?

24             MS. ADAMS:  Thank you, Your Honor.  We did speak

25   briefly during the recess.  We have asked those present to get

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 130 of 205

130

1   us information tomorrow by 5 o'clock, not just on those willing

2   to serve, but particular characteristics of their termination

3   and their other issues so that we can form, as quickly as

4   possible, a representative committee.  And I would ask, as Mr.

5   Butler did, that the order delineate that we would be permitted

6   to solicit those -- only those attorneys and I think there were

7   a few other representatives in the courtroom, to form this

8   committee.

9            THE COURT:  Okay.  I have before me a motion by the

10  debtors in this case for authority under Section 363(b) of the

11  Bankruptcy Code to modify, in various significant measure, what

12  they refer to as OPEB but what also can be described as welfare

13  plans, including health and insurance plans under ERISA.  The

14  debtors take the position that notwithstanding that the subject

15  matter of these plans involves reimbursing or providing for the

16  reimbursement of payments for retired employees and their

17  spouses and dependants for medical, surgical or hospital care

18  and benefits or benefits in the event of sickness, accident,

19  disability or death, that their request need not, and in fact

20  should not, be governed by Section 1114 of the Bankruptcy Code.

21  The language I was quoting appears in Section 1114(a) which

22  defines, for purposes of that section, the term retiree

23  benefits.

24            Section 1114(e) provides that the Court shall -- I'm

25  sorry, notwithstanding any other provision of this title, the

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 131 of 205

131

1   debtor-in-possession shall timely pay and shall not modify any

2   retiree benefits except as provided in 1114(e)(1)(a) under

3   Sections 1114(g) or (h) or alternatively if the debtor-in-

4   possession and the authorized representative of the recipients

5   of those benefits agree to the modification of such payments.

6           The debtor contends that that regime does not apply

7   to the present request because the various welfare plans are,

8   under the terms of the plan documents, modifiable at will.  The

9   debtor contends that under Section 1114(a), therefore, the

10  benefits accorded under those plans are not retiree benefits

11  because the plans themselves, as maintained by the debtor,

12  permit such action.

13          The debtor has approximately 15,000 present and

14  former employees who would be affected by this motion, many of

15  whom would clearly be affected in very dire ways.  The debtor

16  provided notice of the motion by actually sending a copy of the

17  motion to all of these individuals.  And under the Court's case

18  management order, that notice was sufficient, although it fell

19  within the bear minimum of the twenty days set forth therein in

20  the bankruptcy rule.

21          The motion was objected to by approximately 1,600

22  individuals.  There have been, in addition, many slightly

23  untimely objections.  Most of those objections were by

24  unrepresented individuals.  However, individuals or groups of

25  individuals have retained quite able counsel to represent them,

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 132 of 205

132

1   and I have considered their objections at length, both as

2   submitted in writing and made orally at this hearing.

3          The objectors essentially make two objections.

4   First, they contend that under the plan language of Section

5   1114, as well as principles of statutory construction, the

6   debtors' interpretation of what constitutes a retiree benefit

7   that is required to be dealt with under 1114 is wrong and that

8   instead Congress, in Section 1114(a) and (e) overrode the pre-

9   petition contracts between companies such as Delphi and the

10   beneficiaries of health and welfare plans and required that

11   before those contracts could be modified, and notwithstanding

12   the language in those contracts permitting modification, during

13   the course of a Chapter 11 case at least prior to the effective

14   date of a Chapter 11 plan, the debtor must go through the

15   process set forth in 1114 and meet the requirements of either

16   1114(g) for interim relief or 1114(h).

17          They also contend, as a factual matter, that the

18   debtors' assertion that the OPEB benefits are modifiable at

19   will is incorrect.  Therefore, they contend that even if the

20   debtor is right in its interpretation of Section 1114, the

21   debtors' motion should be denied because in fact it does not

22   have the right to modify these benefits unilaterally under the

23   applicable non-bankruptcy law.  Perhaps a little more

24   specifically stated, the objectors contend that there may well

25   be retirees who have benefits that are not modifiable at will

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 133 of 205

133

1   and are instead vested.

2             As I think I noted, at least it was implicit during

3   oral argument, the first issue is an issue that has long been

4   identified by courts and commentators and it is one, as the

5   parties have pointed out, where there is conflicting authority.

6   The leading commentator on bankruptcy law, Collier on

7   Bankruptcy, analyzes this issue at some length in Collier on

8   Bankruptcy, paragraph 1114.03[1] and [2], and I believe cites

9   the applicable case law, and to the extent there is meaningful

10  commentary, most of the commentary as well, and concludes that

11  the majority of the courts addressing the issue have found that

12  a debtor-in-possession need not comply with the procedures and

13  requirements of Section 1114 if it has a right to unilaterally

14  terminate retiree benefits under the retirement plan in

15  question and applicable non-bankruptcy law.  It notes, however,

16  that there is conflicting authority and potentially conflicting

17  arguments.

18            The starting point for my analysis must be the plain

19  language of the statute.  But I conclude, particularly in light

20  of the two fundamental principals underlying all of the

21  Bankruptcy Code, as well as my review of the statute, that the

22  plain language does not compel the interpretation given by the

23  objectors.

24            And again, that interpretation is that Section 1114,

25  in essence, creates a federal law overriding pre-petition

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 134 of 205

134

1   contractual rights of the debtor when it comes to modifying

2   health and welfare benefits during the course of a Chapter 11

3   case.  Frankly, I cannot think of a substantive provision of

4   the Bankruptcy Code that would create such a federal right

5   other than limitations type of provisions like Section 546 that

6   permits one to perfect an interest post-bankruptcy.  And even

7   that type of limitation includes an appreciation of the

8   interruption of normal conduct by the bankruptcy.  Congress

9   arguably entered such a provision when it amended another

10  section of 546, 546(c) under the 2005 amendments, BAPCPA.

11  However, that provision, which referred to a forty-five day

12  right has been interpreted, I think, correctly and, again, by

13  the majority of courts as not creating, generally, a federal

14  right particularly given, as Judge Lifland stated in the Dana

15  case that such a right would be contrary to the purpose of the

16  Bankruptcy Code in enhancing the rights of one set of creditors

17  at the expense of other creditors simply because a bankruptcy

18  petition has been filed, citing, among other cases, Butner v.

19  United States, 440 U.S. 48 (1979) which states that property

20  interests are defined by state law unless some federal interest

21  requires a different result.  There is no reason why such

22  interests should be analyzed differently simply because an

23  interested party is involved in a bankruptcy proceeding.  See

24  also In re Pittsburgh Canfield Corporation, 309 B.R. 277, 287,

25  388 (6th Cir. B.A.P. 2004) in which the Court said permitting a

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 135 of 205

135

1   creditor whose claim outside of bankruptcy is nothing more than

2   a general unsecured claim to elevate its claim to

3   administrative or secured status in bankruptcy would give it a

4   windfall.

5            That's, again, especially the case, as we've been

6   reminded recently by the Supreme Court in the Second Circuit

7   where parties in interest are claiming rights to priority

8   treatment since ultimately bankruptcy is a zero sum game and

9   whatever's taken out of one constituent's pocket to go into

10  another constituent's pocket is hurting someone.

11           As the Second Circuit said in In re Bethlehem Steel

12  Corp, 479 F.3d 167, 172 (2nd Cir. 2007), because the

13  presumption in bankruptcy cases is that the debtors' limited

14  resources will be equally distributed among its creditors.

15  Statutory priorities are narrowly construed.  See also Howard

16  Delivery Service, Inc. v. Zurich American Insurance Company,

17  547 U.S. 651 (2006).

18           I believe that when amending the Bankruptcy Code

19  Congress is fully aware of these fundamental principles and

20  that as Dewsnup case state, when it amends the bankruptcy laws

21  it does not write on a clean slate.  The Supreme Court has,

22  therefore, been reluctant to accept arguments that would

23  interpret the code to affect a major change in pre-code

24  practice.  It is not the subject of at least some discussion in

25  the legislative history.  Dewsnup v. Timm, 502 U.S. 410, 419

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 136 of 205

136

1   (1992).

2          Everyone understands the origin of Section 1114.  It

3   grew out of the termination of health and welfare benefits by

4   LTV Corporation after it filed its bankruptcy case.  And the

5   belief -- in the belief of LTV that it had the right to do so

6   because 1113 of the Bankruptcy Code didn't apply and therefore

7   it could breach its agreements, fundamentally bankruptcy is all

8   about breaching agreements and generally speaking the means to

9   do so are very easy and fall within the debtors' business

10  judgment.

11          Congress reacted to that by drafting what eventually

12  became 1114.  But as was made clear over sixteen years ago the

13  issue of whether the amendment went beyond permitting a debtor

14  to breach its agreements and actually precluded a debtor from

15  exercising rights it had under those agreements was an open

16  issue under the statute.

17          The case that took this issue on directly was in re

18  Doskocil Companies, Inc., 130 B.R. 870 (Bankr. D. Kan 1991).

19  It relied, however, significantly although not entirely, about

20  In re Chateaugay Corporation, 945 F.2d 1205 (2nd Cir. 1991)

21  cert denied 502 U.S. 1093 (1992).  Chateaugay involves, as the

22  objectors point out, not a modifiable agreement but an

23  agreement that post bankruptcy terminated by its terms.

24          However, its analysis focuses on, consistent with

25  Butner, the pre-petition non-bankruptcy law rights of the

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 137 of 205

137

1   parties and did not envision, except in the decent, that

2   Congress created a new federal right under the predecessor of

3   Section 1114 which, for all intents and purposes, I view as

4   equivalent to 1114 on this issue.

5           Doskocil has been cited favorably by a number of

6   cases, perhaps most on point being the District Court of New

7   Jersey in In re New Valley Corporation 1993 U.S. Dist. LEXIS

8   21420 (D.N.J. Jan. 28, 1993) as well as In re CF&I Fabricators

9   of Utah, Inc., 163 B.R. 858 (Bankr. D. Utah 1994) and In re

10  North American Royalties, Inc., 276 B.R. 860 (Bankr. E.D. Tenn.

11  2002).  It was, however, rejected by the analysis of the

12  Bankruptcy Court for the Western District of Missouri in In re

13  Farmland Industries 294 B.R. 903 (2003).

14          It was also rejected in an unpublished opinion in the

15  Ames Corporation Department Stores case by Bankruptcy Judge

16  Conrad as well as by the District Court in that case.  However,

17  in the context of a ruling on a fee application related to that

18  dispute in the Ames case the Second Circuit pointed out that

19  both of those decisions were made without any reference to any

20  of the case law or analysis that I've just gone through.  And

21  that while the Second Circuit did not rule, since this was a

22  fee dispute, as to how it would come out on the interpretation

23  of 1114 to unvested rights, it noted the numerous authorities

24  supporting the debtors' position.  In addition, Bankruptcy

25  Judge Conrad in In re Drexel Burnham Inc., 138 B.R. 723 (Bankr.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 138 of 205

138

1   S.D.N.Y. 1992) favorably cited both Doskocil and Chateauguay in

2   approving confirmation of Drexel's plan that permitted the

3   modification of plan -- of welfare plan benefits consistent

4   with the pre-petition plan documents.

5         The objectors have pointed out that Judge Conrad's

6   ruling was properly viewed as one under Section 1129(a)(13)

7   which arguably, and I think this is how it has been

8   consistently interpreted, notes or can be read to say that no

9   matter how 1114 applies to OPEB benefits arising before the

10  effective date of a plan.  A plan itself need only preserve the

11  benefits as they exist in that welfare plan that is a Chapter

12  11 plan itself and they preserve those benefits only as they

13  exist in the OPEB plan and go no further.  That is a legitimate

14  and I think correct interpretation.

15        How it relates to the proper interpretation of

16  Section 1114, I think, is another matter.  It strikes me as odd

17  that 1114 would give broader rights to the beneficiaries of

18  welfare plans for the limited pre-confirmation period and I

19  would rather harmonize the two provisions, that is 1129(a)(13)

20  and 1114, and take the view that they both recognize that plans

21  that are modifiable at will are not overridden by any provision

22  of the Bankruptcy Code that would restrict debtors' right to

23  seek approval under 363(b) or in the ordinary course if the

24  change was in the ordinary course to modify the plan pursuant

25  to its terms.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 139 of 205

139

1              The objectors also point to another provision of the

2    Bankruptcy Code, Section 1114(l) which was enacted, again,

3    pursuant to the BAPCIPA amendments in 2005 which permits a

4    Court on the motion of a party in interest and after notice and

5    hearing to reinstate benefits that were modified during the 180

6    day period preceding the filing of the bankruptcy petition.

7    Based on the balance of the equities clearly favoring -- I'm

8    sorry -- unless the Court finds that the balance of the

9    equities clearly favor such modification.

10             The objectors rightly argue that this provision can

11   be viewed as an intrusion by congress and contrary to the

12   principle laid out in Butner into pre-petition contractual

13   relations.  And not like such intrusions under 547 and 544 and

14   548 of the Code for the benefit of the debtors' estate

15   generally but rather, potentially, for the benefit of a

16   discrete group that is retirees and those who are governed

17   by -- who have rights under benefit plans.

18             The provision, again however, does not specifically

19   deal with the issue of modifiable plans as of right and even if

20   one can read, and I cede much merit in the argument that

21   generally speaking a debtor would not breach and ERISA governed

22   contract and therefore is likely only to modify such a contract

23   as opposed to breach it.  But even if one were to read the

24   provision as covering otherwise contractually permissible

25   modifications, I do not view that provision as overruling

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 140 of 205

140

1   Doskocil and the line of cases that take its position nor does

2   there appear to me to be any legislative history or other

3   policy accompanying the 2005 amendments that would clearly set

4   forth Congress' intention generally in 1114 to override the

5   fundamental principle that bankruptcy does not create new

6   rights in individual parties in interest and thus cut back on

7   the basic tenets set forth in the Butner case.

8           For those reasons I believe that the debtors'

9   interpretation, which is the majority view, is the correct one.

10  And that if in fact the debtor has the unilateral right to

11  modify a collective bargaining agreement that is -- I'm

12  sorry -- modify a health plan or a welfare plan, that is the

13  plan that's maintained and the right is not abrogated by the

14  requirements of Section 1114.

15          The second issue is an interesting issue to put in

16  context, given the Second Circuit's guidance with regard to

17  summary of proceedings in In re Orion Pictures Corporation 4 F.

18  3d 1095.  I believe, given the interplay with Section 1114 that

19  before a Court is to permit a debtor to modify a health or

20  welfare plan under Section 363(b), on the theory that it has

21  the right to do so under the plan documents, the debtor must

22  make a significant showing that it in fact has that right.

23          That is what the debtor has done here.  Given the

24  plan, the summary -- the plans -- excuse me, the plan documents

25  including the summary of the plan documents and the absence of

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 141 of 205

141

1   any evidence on this record that would indicate that the

2   debtors otherwise promised or the debtors' predecessors

3   otherwise promised to the beneficiaries of those plans who are

4   affected by this motion, that notwithstanding the language in

5   the Delphi plans' documents those plans are not modifiable at

6   will.

7        The only evidence that has been submitted to counter

8   the language in the Delphi plan documents has pertained to plan

9   documents of GM Corporation, the debtors' predecessor.

10  Moreover, those documents all, it appears to me, predate the

11  decision of the Sixth Circuit in Sprague v. General Motors

12  Corporation, 133 F.3d, 388 (6th Cir. 1993).  Given that record,

13  it appears to me that the debtor has very clearly made the

14  showing that it has the right to modify the plan documents at

15  will.

16       The objectors have contended that since this Court

17  sits in the second circuit it should be bound by second circuit

18  law on this issue.  And that second circuit law, at least in

19  some respects, particularly pertaining to equitable estoppel,

20  promises by a predecessor corporation such as GM differs from

21  the holding of the Court of Appeals in the Sprague case of the

22  sixth circuit.  No one has briefed for me the choice of law

23  issue and I've not considered it at length.  But it appears to

24  me that given Delphi's headquarters in sixth circuit it's not

25  clear to me that I would be governed by second circuit law

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 142 of 205

142

1   here.

2         More importantly, I have two observations.  The first

3   is that after the issuance of the Sprague on bank opinion in

4   January of 1998, it would seem to me that any subsequent

5   employee of Delphi who had been covered by a GM plan would

6   clearly be on notice as to the Sprague decision and how to

7   interpret the language that existed in the GM plans prior to

8   his or her transfer to Delphi.  And that that notice would be,

9   I believe, clear that they types of language that have been so

10  far submitted to me, for example in Exhibit 80, would not

11  suffice to create a vested benefit right.

12        Secondly, as set forth, I believe most recently by

13  the second circuit in Bouboulis v. Transport Workers Union of

14  America, 442 F.3d 55 (2nd Cir. 2006) but also in a number of

15  District Court decisions that have come down since then,

16  including Warren Pearl Construction Corp. v. Guardian Life

17  Insurance Company of America, 2008 U.S. District LEXIS 101780

18  (S.D.N.Y. Dec. 9, 2008) and Eagan v. Marsh & McLennan

19  Companies, Inc. (2008) U.S.D. 6647 (S.D.N.Y. Jan. 29, 2008).

20        The law in the Second Circuit, although it may differ

21  somewhat from the Sixth Circuit, is still very restrictive in

22  giving beneficiaries of welfare plans rights that are not set

23  forth in a clear, affirmative promise in the plan documents

24  through, for example, a theory of promissory estoppel.

25        So again, on this record, it appears to me clear that

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 143 of 205

143

1   the debtors have met their factual burden, which I view as a

2   serious one, to take this motion outside of the ambit of

3   Section 1114.  I view the burden to be so serious and also

4   recognize that the notice here, while sufficient as a legal

5   matter, was sufficient only to permit fairly recent involvement

6   by counsel in an area that is fairly abstruse to pursue the

7   actual record that I believe I should exercise my authority

8   under 1114(d) to appoint a committee of retirees to act as a

9   representative.  Notwithstanding my belief that the debtor, on

10  the basis of this record, is not bound by the 1114 regime

11  generally.  I believe that it would be appropriate, given the

12  importance of the factual issues and the timing of this motion,

13  to give that committee a specific charge which is to review the

14  factual record to determine whether, under the logic that I've

15  just set forth with regard to vesting under ERISA, and

16  notwithstanding the language in the plan documents there is any

17  group of beneficiaries of these plans, any retirees who would

18  have vested rights, notwithstanding the language of the plan

19  documents and notwithstanding the Court's conclusion that

20  following Sprague they were on notice as to the inefficacy of

21  the argument that the documents addressed in Sprague overrode

22  the ability of GM to terminate the benefits at will or to

23  modify them at will.

24          I believe, given the very clear expertise and active,

25  although recent, involvement of the three counsel for objector

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 144 of 205

144

1   groups and the intense number or the great number of objectors

2   that the trustee can -- the U.S. trustee can form such a

3   committee out of the people who are participating in the

4   courtroom today and that that committee can move promptly to

5   conduct its analysis and meet and confer with the debtor on

6   whether in fact there would be, under my logic, a retiree or

7   retirees who would be covered by 1114.

8           I should make it clear that service as a

9   representative on this committee would not preclude any

10  individual party's right to appeal my ruling.  So that although

11  they would be fulfilling this task, they would not be deemed to

12  have agreed with the first part of my ruling which is that 1114

13  doesn't apply to this motion unless there is a vested benefit.

14          The work of that committee on this point should be

15  done so that any argument that would be made to modify my

16  provisional ruling would be heard on Wednesday, March 11th at

17  10 o'clock.  And I'm assuming that would mean that some formal

18  pleading would be filed in the preceding week and that there

19  would be a dialogue with the debtors.  I take the debtors at

20  their word that if in fact retirees are identified who do have

21  vested benefits, that they would go through an 1114 process

22  with them.  And so I think there should be an ongoing dialogue

23  with the debtors on that point.

24          I also believe that this committee should be

25  authorized to at least explore with the debtors the cost and

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 145 of 205

145

1   ability to utilize the federal tax credit identified by one of

2   the objectors.

3          I have debated whether setting a finite budget for

4   the committee's action in this regard or merely a budget that I

5   believe would be sufficient in giving them the ability to

6   convince me of their -- of the merits of exceeding that budget

7   in a subsequent fee application.  I've decided to do the later

8   and that the budget which I don't view as a license to spend

9   but merely as what I believe would be sufficient for this task

10  would be 200,000 dollars.

11         As far as the preliminary grant of the motion, having

12  dealt with what I believe are the two mail legal issues, let me

13  ultimately deal with the standard that I believe falls from

14  that analysis, which is whether the debtor has satisfied good

15  business judgment in modifying the OPEB programs as set forth

16  in its motion.

17         It is crystal clear to me, on this record and my

18  understanding of the case, that at this time and for the

19  foreseeable future the debtor will not -- the debtors' well

20  within his business judgment in assuming that it will need to

21  eliminate the accumulated OPEB projected liability, which is

22  projected in excess of 1.1 billion dollars from its balance

23  sheet, in order to reorganize.  So clearly that's within its

24  business judgment.

25         I also believe, on this record, that given the

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 146 of 205

146

1   debtors' serious need to conserve cash and all of the other

2   steps that it has taken to do so, as detailed primarily in

3   Mr. Miller's declaration as well as my knowledge of the current

4   funding of the debtors, that every dollar counts for these

5   debtors and therefore that the savings of 1.5 million a week

6   and projected cash savings of seventy million a year for the

7   pre-bankruptcy -- I'm sorry -- preplanned period, the period

8   prior to the effective date of reorganization plan, is also of

9   extreme importance to the debtor.  And that actions taken by

10  the debtor to save such money, including by modifying these

11  benefits, is supported by good business judgment in light of

12  the rights, as I see them, of the retirees.

13          The debtors, I believe properly, did not take the

14  step for almost three years in light of their assessment of the

15  business realities of their business and the inducement to

16  employees of having such benefits plans in place and their

17  relations with their retirees.  But over the last two or three

18  months their business, as the auto business generally has gone

19  through such enormous adverse changes that I recognize the

20  changed circumstances as a business matter, lead them to make

21  this decision now.

22          So I will enter an order granting the motion,

23  including permitting the debtors to take the initial steps to

24  implement it.  Those initial steps, as far as they consist of

25  giving notice to employees, should also note that there is this

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 147 of 205

147

1    procedure in place to determine if anyone is, in fact, vested.

2    And also the order will provide for an opportunity for a

3    hearing on March 11th to convince me, consistent with the

4    parameters that I've outlined in this ruling, that there are

5    individuals or groups of individuals who in fact are properly

6    vested and therefore would be covered by Section 1114.

7            Given the time constraints here, I'm not going to

8    require the debtors to settle that order but I think you should

9    work it out first with the U.S. Trustee and then promptly

10   circulate it to the counsel who've been active in this hearing

11   and then submitted to court.  Okay.  Thank you.

12           MR. BUTLER:  Yes, Your Honor.  We will.

13           THE COURT:  Okay.  Thank you.

14           MR. BUTLER:  Your Honor, mindful of the Court's

15   docket this afternoon, could we take about a five minute recess

16   so we can change out the folks here and get ready for the

17   balance of the hearing?

18           THE COURT:  Yes.

19           MR. BUTLER:  Thank you very much.

20           THE COURT:  And I'm probably saying the obvious but

21   if counsel or observers do not want to stay for the rest of the

22   Delphi hearing on the uncontested matters, they're certainly

23   free to leave.

24           MR. BUTLER:  Thanks, Judge.

25       (Recess from 2:13 p.m. until 2:22 p.m.)

148

1          THE COURT:  Please be seated.  Okay.  We're back on

2    the record in Delphi.

3          MR. BUTLER:  Yes, Your Honor.  Moving now to the

4    remainder of the docket, matter number six is the Anaheim sale

5    motion filed at Docket No. 14701.  There are exhibits we

6    provided the Court five of them including the declaration of

7    Keith Stipp in support of this and the proposed purchase and

8    sale agreement.  I'd move admission of Exhibits 1

9    through 5.

10          THE COURT:  Okay.  They're admitted.

11    (Hearing Exhibits 1-5 were hereby received, as of this date.)

12          MR. BUTLER:  Your Honor, all we're asking for today

13    is the approval of the first step of a two-step sale process.

14    We'll come back at the March 24th hearing to actually get the

15    sale approved to the Bercher (ph.) Anaheim Magnolia Avenue LLC,

16    the proposed purchaser, for twenty million dollars as proposed

17    or the successful bidder, as may be the case, if an auction

18    becomes necessary based on getting another qualified bid.

19          We're proposing a March 9, 2009 bid deadline.  An

20    auction on March 13, 2009 and a sale hearing on March 24, 2009.

21    This does involve 21.6 acres of now vacant land in Anaheim,

22    California for a purchase price of twenty million from the

23    seller being the debtor, Delphi Automotive Systems, LLC.  The

24    bid protection is capped at 450,000 dollars, subject to the

25    terms and conditions of the proposed asset purchase agreement.

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings   Pg 149 of 205

149

1    There are no objections that have been filed to the motion.

2          THE COURT:  Okay.  As far as the interim relief is

3    concerned, it's appropriate.  The expense reimbursement is well

4    within what I and other judges have approved in the past.  So

5    I'll grant the interim relief that the debtors are seeking.

6          MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

7    next matter on the agenda, matter 7, is the Lautzenhiser

8    Technologies LLC stay modification motion, filed at Docket No.

9    14702.  This involves some patent litigation that has been

10   filed against Delphi Medical in an action that's currently

11   pending in the United States District Court for the Southern

12   District of Indiana.  And this arises out of a lawsuit that

13   began back in 2007 against Sunrise Medical, one of Delphi's

14   medical customers, alleging infringement of various patents

15   relating to wheelchair technologies.

16          On April 24th of last year the plaintiffs filed a

17   motion for leave to amend a second amended complaint adding

18   Delphi Medical as a defendant.  That was approved by the State

19   Court and the summons and second amended complaint were served

20   on Delphi on July 28, 2008.  That's an important date for

21   purposes of the settlement we're asking you to approve today.

22          We're proposing to have the automatic stay, with

23   respect to this matter, lifted, or modified I should say, for

24   the sole limited purpose of allowing the plaintiffs to advance

25   their alleged patent infringement claims by seeking a

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 150 of 205

150

1    determination on the alleged liability and quantification of

2    damages including the potential for enhanced damages as a

3    result of willful infringement if at all and a finding as to

4    the appropriateness of injunctive relief in the State Court

5    patent infringement litigation.

6          Except for that, however, the automatic stay would

7    remain in full force and effect.  So in the event that the

8    Indiana District Court found in favor of the plaintiffs and

9    against Delphi Medical, they would be required to return to

10   this Court for any further relief from the automatic stay,

11   including any effort to enforce any judgment in the patent

12   litigation against any of the debtors including Delphi Medical.

13   Or to seek an even enforcement of any injunction that was

14   entered against Delphi Medical or any of the debtors.

15         Important as part of this modification arrangement,

16   the plaintiffs have agreed to waive their ability to seek any

17   damages with respect to claims in that litigation that might

18   have arisen from or accrued as a result of any actions of

19   Delphi Medical, the debtors or any of the affiliates of the

20   debtors that occurred on or before July 28, 2008.  That is the

21   date that we received the actual second amended complaint

22   served on us.

23         And there is various other relief with respect to the

24   terms of the agreement which are set forth in the order.  But I

25   think those are the material terms I wanted to bring to Your

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 151 of 205

151

1   Honor's attention.  Your Honor, given the nature of this

2   particular litigation the various factors, the Sonnax factors

3   that we all look at, the debtors believe that this was an

4   appropriate settlement of the effort on behalf of the

5   plaintiffs here, to seek a stay modification.  We'd ask that

6   Your Honor approve it.

7           THE COURT:  I think under Sonnax this is appropriate.

8   So I'll sign the stipulation and order.

9           MR. BUTLER:  Thank you, Your Honor.  Your Honor,

10  matter number 8 on the agenda is the accommodation amendment

11  motion at Docket No. 14703.  And matter 9 on the agenda is the

12  GM arrangement third amendment approval motion at Docket No.

13  14704.  We have an evidentiary record that applies to both of

14  these motions that have been submitted to Your Honor.  There

15  are twenty-three items in the Exhibits.  Exhibits 1-26, except

16  for Exhibits 20, 21 and 22 which we'll withdraw and so there

17  are twenty-three exhibits that deal -- outline the evidentiary

18  record in support of these motions, including the declarations

19  of John Sheehan as Exhibit 1 and the declaration of Keith Stipp

20  at Exhibit 2.  I'd ask Your Honor to move admission of this

21  record as to both motions but I'll deal with them separately.

22          THE COURT:  Okay.  Any objection?  All right.

23  They're admitted.

24  (Hearing Exhibits 1-26 were hereby received, as of this date.)

25          MR. BUTLER:  Your Honor, with respect to the

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 152 of 205

152

1    accommodation motion, I'd like to present Mr. Sheehan with

2    respect to his declaration for cross examination by any party.

3          THE COURT:  Does anyone want to cross examine

4    Mr. Sheehan on his affidavit?  And Mr. Sheehan, that affidavit

5    still would be your testimony?

6          MR. SHEEHAN:  Yes, sir.  I signed it last night.

7          THE COURT:  Okay.

8          MR. BUTLER:  So, Your Honor, in dealing then with the

9    -- let me just address, then, a few items with respect to the

10   amendments to the accommodation agreement.

11         THE COURT:  There's a supplement to this too.

12         MR. BUTLER:  There is.

13         THE COURT:  Right.  Okay.

14         MR. BUTLER:  I want to address that and the

15   supplement.

16         THE COURT:  Okay.

17         MR. BUTLER:  And explain to Your Honor where we are.

18   Your Honor, the accommodation amendment itself was entered on

19   January 30th, 2009.  It received ninety-seven percent of the

20   support of the participating lenders and became effective on

21   that date subject to the subsequent approval of this Court at

22   this hearing.

23         Importantly, in connection with the accommodation

24   amendment, that amendment addressed our liquidity runway which,

25   when we had gotten the accommodation agreement approved back on

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 153 of 205

153

1   December 1st, we thought we had worked out through the first

2   half of this year only to have the automotive industry and the

3   production by customers decline precipitously in December and

4   January.  And the estimates for production for the balance of

5   2009 declined precipitously from what had been the case.  And

6   we came to court back on December 1st, which has an implication

7   for liquidity throughout the automotive industry and including

8   at Delphi.  And therefore we have sought additional support

9   from General Motors and we sought additional concessions from

10  our DIP lenders in terms of whether we were required to make

11  certain pay downs on the DIP loan agreement.

12          And effectively what's happened here, one of the

13  major affects of this amendment, is that the DIP lenders that

14  amounts that would otherwise have been paid down for a period

15  of time have been put into a cash collateral account.  And

16  under the terms and conditions of the amendment, if the debtors

17  are able to meet various milestones and do certain things, that

18  liquidity, if the borrowing base continues and when the

19  borrowing base continues to improve, we essentially can get

20  that money back out of the cash collateral account.

21          We couldn't pay it down and re-borrow because there's

22  no longer borrowings permitted under the revolver.  So what the

23  participating lender said was, you put the cash into a cash

24  account and depending on what occurs in these cases over the

25  next several months, you either are going to be able to take

05-44481-rdd   Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 154 of 205

154

1   the money back and use it or we're going to require it be paid

2   down against the DIP loans.  And what the amendment does is

3   address the circumstances associated with that 117 million

4   dollars worth of cash collateral as well as, frankly, taking on

5   and resetting the global EBITDAR covenants consistent with

6   revised projections and addressing how the minimum liquidity

7   availability requirements of the accommodation agreement ought

8   to be modified in connection with the timetable for seeking a

9   consensual resolution of these cases with the DIP lenders and

10  our other stakeholders.

11          That amendment also required that we deliver some

12  reports to the DIP steering committee and the DIP lenders on

13  February 17th and 20th of this year.  Those reports, in fact,

14  were delivered.

15          And we have been performing under this amendment

16  since January 30th, subject to Your Honor's approval of that

17  And one of the elements, obviously, here we're seeking is,

18  under 363, is the approval of our agreement to pay some fees,

19  under those as outlined in the motion, to our lenders which

20  we've not paid pending Your Honor's approval.

21          During the course of the last three weeks we have

22  also been negotiating with General Motors and our DIP lenders

23  on potential modifications to our business plan and to various

24  transactions that would be included in a modified plan of

25  reorganization.  And as I think we advised Your Honor at the

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 155 of 205

155

1   last time we were here in January, we had been negotiating with

2   them about how that timetable would work and seeking their

3   report for modifying milestones where appropriate.

4           I should point out that I think that the DIP lenders

5   here and the DIP steering committee that's been formed that

6   we've been meeting with every week have been seeking to provide

7   the company with a sufficient runway to provide confidence to

8   other administrative creditors to continue to support the

9   company but also trying to keep the company on a fairly focused

10  path to reaching a consensual settlement that the DIP lenders

11  at the end of the day can support.

12          That led to the negotiation of the supplement -- the

13  supplemental amendment or the supplement to the amendment.

14  It's technically a supplemental amendment because it does amend

15  the accommodation agreement.  But it was intended to, among

16  other things, move the February 27th milestone date, this

17  Friday, having to do with filing a modified plan to April 2nd.

18  That's, in part, to address issues that I think even this Court

19  has recognized which indicates that at least presently, under

20  the TARP arrangements with General Motors, there is a very

21  important milestone with General Motors on March 31st that

22  General Motors and its stakeholders, including Delphi, are

23  moving towards.  And that I think there is an agreement among

24  the parties here that it would be difficult to get the kind of

25  clarity we need to make those plan modifications being filed

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 156 of 205

156

1   publicly until we understand how that's going to play out, if

2   you would.

3            THE COURT:  Right.

4            MR. BUTLER:  And so consequently we have reached an

5   agreement with them to change that date to April 2nd.  There's

6   also a series of agreements here to basically set additional

7   milestones and reporting requirements, much of which are

8   centered around whether the cash collateral account is able to

9   be used by Delphi or paid down by the lenders.  A series, if

10  you might think of them Your Honor, as a series of incentives

11  and disincentives on how we might conduct ourselves as we

12  continue to negotiate matters with them.  And the accommodation

13  supplement contains other terms and conditions into it.  I am

14  pleased to report that earlier today we received sufficient

15  affirmative votes from the participating lenders to make that

16  supplement effective.

17            And we believe, Your Honor, the reason we filed it

18  last night and because of the nature of the supplement, that we

19  wanted to ask Your Honor to approve both the amendment and the

20  supplement today.  We think, actually I would point out that

21  the supplement does have a failsafe in it that could allow the

22  supplement to be re-noticed out separately and heard in March.

23            THE COURT:  But it seems to me it is an improvement

24  for the estate so there's no reason to do that.

25            MR. BUTLER:  Well thank you, Your Honor.  We think

157

1   it's important -- we're filing our 10-K within the next week or

2   so we believe.  We're obligated to file it to the end of March

3   but we're probably going to file a 10-K in the next week or so.

4   And we'd like to be able to have the clarity of all of these

5   matters if we can.

6             THE COURT:  Okay.

7             MR. BUTLER:  So that's the -- and there are fees,

8   obviously, paid under the supplement too, which are outlined in

9   the affidavit and in the separate letters we provided the Court

10   in the confidential exhibit books.

11            With that in mind, Your Honor, that represents the

12   accommodation agreement.  There is no opposition to it of which

13   I'm aware.

14            MR. RIELA:  Your Honor, Michael Riela from the firm

15   of Latham & Watkins for the committee.  We certainly have

16   reviewed the accommodation agreement, the original amendment.

17   The advisors looked at the supplement agreement as well, had no

18   issues with it.  I just saw it for the first time a few minutes

19   ago with respect to one of the fees that is described in the

20   Sheehan affidavit, not something that was broached with the

21   committee but I think given the nature of the fees and the

22   amount, the committee would be supportive I would assume.  I

23   don't have authority from the committee to see -

24            THE COURT:  That was the ten basis points fee?

25            MR. RIELA:  No, the one on paragraph 24 --

158

1          THE COURT:  Okay.

2          MR. RIELA:  -- of the affidavit, I'm being vague.

3    But I don't have direct authority to say that we consent to

4    that but I have no basis at this point, in my own mind, to

5    object.

6          THE COURT:  All right.  I'll approve the amendment as

7    well as the supplement.  I believe that the fees are

8    reasonable.

9          MR. BUTLER:  Thank you, Your Honor.  Your Honor, then

10   turning to the GM arrangement third amendment approval motion.

11   With respect to the GM arrangement third amendment approval

12   motion, it's the same evidentiary record except I would present

13   Mr. Stipp who's here to testify with respect to his declaration

14   which is Exhibit 2, if anyone wants to cross examine him or if

15   the Court has any questions.

16         THE COURT:  Does anyone want to cross examine Mr.

17   Stipp?  I don't have any questions.  And I guess I have the

18   same question, other than that which is this declaration still

19   good as of today?

20         MR. STIPP:  Yes, Your Honor.

21         THE COURT:  Okay.  Thanks.

22         MR. BUTLER:  Your Honor, with respect to this motion,

23   we're asking -- again, these are amendments that became

24   effective, I believe, back also on January 30th when they were

25   entered into with GM at the same time we received the effective

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 159 of 205

159

1    accommodation agreement amendment.  They amend -- there's a

2    third amendment to the GM arrangement and there is -- which

3    changes certain definitions and provides certain additional

4    increased liquidity to the company.  And there is a pull

5    forward amendment that also enhanced the debtor's liquidity by

6    accelerating up to a hundred million dollars of the 300 million

7    of trade payments under that agreement from May 2009 to the

8    current quarter.

9            That agreement continues to be operative.  There is a

10    milestone or a decision point in that agreement where by the

11    end of this week GM needs to make an election in terms of

12    additional liquidity support for the company.  We're

13    negotiating with them about that and we'd expect that they'll

14    make that election on Friday as scheduled under the amendment.

15    And we are moving forward, Your Honor, in our negotiations with

16    them over the broader potential transactions that we'd work out

17    with them and with our DIP lenders that would be embodied in

18    proposed modifications to the plan.

19            THE COURT:  Okay.  Are there any other conditions to

20    the effectiveness of this?

21            MR. BUTLER:  No.  I'm not aware of any other

22    conditions to effectiveness.  It just looks to this Court's

23    approval at this point in time.

24            THE COURT:  Okay.

25            MR. BUTLER:  We're otherwise operating under it.

160

1           THE COURT:  All right.  Does anyone have anything to

2    say on this motion?  All right.  In light of that, as well as

3    my review of the motion, I'll approve it.

4           MR. BUTLER:  Thank you, Your Honor.  Your Honor, the

5    very last matter we have on the uncontested docket is the

6    special counsel retention confirmation motion that was filed at

7    Docket No. 14706.  The creditors' committee filed a statement

8    at Docket No. 14883 simply indicating they wanted the

9    opportunity to review and if necessary to object to the

10   expenditure of counsel fees in the debtors' business judgment

11   in doing so under those.  I'm pleased to report to Your Honor

12   that we've worked out an agreement between the committee and

13   the company and special counsel that would provide a mechanism

14   that would provide for a review process so the committee can

15   review those and if they have issues can object.

16           THE COURT:  Okay.

17           MR. BUTLER:  And there's a letter agreement that's

18   been signed between the company and the committee and approved

19   by both special counsel dealing with this.

20           As Your Honor recalls, we believe we have the

21   authority and in fact have been operating in the ordinary

22   course with respect to these retention matters since January

23   25th of last year, there was a desire to get something before

24   the Court, as I've advised the Court on earlier occasions,

25   about Freidman Kaplan and the Zussman firms with respect to

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 161 of 205

161

1    their retention by the debtors which occurred last year.  And

2    we simply are asking, in this motion, for confirmation of the

3    exercise of our business judgment in doing so and the use of

4    estate property subject to the terms and conditions of the

5    motion and proposed order.

6              THE COURT:  Is the agreement with the committee going

7    to be referenced in the order?

8              MR. BUTLER:  No, it's a side letter, Your Honor.

9              THE COURT:  But it's understood that that's part of

10   it?

11             MR. BUTLER:  Absolutely.  There's a side letter

12   agreement that's binding -- that binds the special counsel.

13             MR. RIELA:  The committee hasn't signed on to the

14   debtors' argument about do you need a confirmation order --

15             THE COURT:  But it's preserved its rights to raise --

16             MR. RIELA:  It's reserved its rights and basically --

17             THE COURT:  -- issues with the Court.

18             THE COURT:  -- what the side letter would do would

19   provide for our ability to review monthly statements, the

20   statements that are provided to the committee would allow us

21   until the effective date of a plan of reorganization to submit

22   an objection to the debtors.  We'd try to work it out and then

23   to the extent that we can't work it out, either special counsel

24   or the committee could bring the dispute to this Court for

25   final resolution.

162

1          THE COURT:  Okay.  All right.  I will approve that

2    arrangement and enter the order approving the retention of the

3    two firms.

4          MR. BUTLER:  Thank you, Your Honor.  That's all we

5    had on the docket.

6          THE COURT:  Okay.  Thank you.

7      (Proceedings concluded at 2:43 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 163 of 205

163

1

2                          I N D E X

3

4                      T E S T I M O N Y

5  WITNESS              EXAMINATION BY              PAGE

6  Mr. Miller           Mr. Veis                    25

7  Mr. Miller           Mr. Gloster                 34

8  Mr. Miller           Mr. Cornell                 36

9  Mr. Gebbia           Mr. Veis                    39

10  Mr. Gebbia          Mr. Gloster                 41

11  Mr. Gebbia          Mr. Cornell                 43

12  Mr. Thornburg       Mr. Butler                  47

13  Mr. McGrath         Mr. Butler                  51

14

15                      E X H I B I T S

16  HEARING             DESCRIPTION                 PAGE

17  6-13                Salaried OPEB Plan Documents  11

18  14-39               Salaried OPEB Summary Plan    11

19                      Description and Employee

20                      Communications

21  40-48               Board Materials             11

22  52-64               Court Documents             11

23  65, 86, 87, 88, 90  Documents by Objectors      11

24  66                  Letter from Delphi Plan     14

25                      Administrator

1

2                        I N D E X

3                       (continued)

4

5                     E X H I B I T S

6    HEARING              DESCRIPTION                    PAGE

7    67-75 and 79-85      Benefit Books and Plan          14

8                         Communications

9                         from GM Retirees

10   2                    Mr. Gebbia's Declaration        19

11   76-78                GAO Report, Congressional       17

12                        Testimony with Regard to

13                        Retiree Health Insurance

14                        and Health Coverage Tax

15                        Credits

16   1                    Mr. Miller's Declaration        19

17   1-5                                                 148

18   1-26                                                151

19

20                     R U L I N G S

21                                              PAGE  LINE

22   Motion for Order Under 11 U.S.C. Sections 105,   146   22

23   363(b)(1) and 1108, Approved

24   Motion to Approve Bidding Procedures,           149   5

25   etc., Approved

165

1

2                         I N D E X

3                       (continued)

4

5                      R U L I N G S

6                                                    PAGE  LINE

7  Motion to Approve Agreement to Modify          151   8

8  Automatic Stay, Approved

9  Motion to Approve Authorizing Debtors to       158   6

10 Enter into Amendment to Accommodation

11 Agreement, Approved

12 Motion Authorizing Debtors to Enter into       160   3

13 Third Amendment to Arrangement with GM,

14 Approved

15 Motion to Confirm Engagement and Retention     162   1

16 Of Special Counsel, Approved

17

18

19

20

21

22

23

24

25

166

1

2                     C E R T I F I C A T I O N

3

4     I, Esther Accardi, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7     _____

8     ESTHER ACCARDI

9

10    Veritext LLC

11    200 Old Country Road

12    Suite 580

13    Mineola, New York 11501

14

15    Date: February 26, 2009

16

17

18

19

20

21

22

23

24

25

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 167 of 205

1

**A**

**ability** 95:7 143:22
145:1,5 150:16
161:19
**able** 17:15 69:7
71:11 79:8,12
82:20 95:13 96:18
98:2 99:4 100:1
102:11 105:8
119:17 122:7
125:1,1 128:2
131:25 153:17,25
156:8 157:4
**abrogate** 84:19 95:6
**abrogated** 140:13
**abruptly** 109:19
**absence** 140:25
**absent** 53:12 58:11
69:18 99:13 118:5
**absolute** 33:10
106:12
**absolutely** 70:16
73:20 74:1 81:2
90:12 108:9
161:11
**abstruse** 143:6
**Accardi** 3:24 166:4
166:8
**Accelerated** 2:16
**accelerating** 159:6
**accept** 107:2 114:9
135:22
**acceptable** 52:23
**accepting** 41:21
**accident** 130:18
**accommodation**
2:10 3:10,12
107:23 151:10
152:1,10,18,23,25
154:7 155:15
156:12 157:12,16
159:1 165:10
**accompanying**
140:3
**accorded** 131:10

**account** 153:15,20
153:24 156:8
**accrued** 150:18
**accumulated** 145:21
**accurate** 166:5
**acknowledge** 116:2
**acknowledged** 95:16
116:5,9
**acknowledges** 61:23
**acknowledging** 28:5
**acres** 148:21
**act** 60:17,19,22
61:22 62:18 143:8
**acting** 49:20
**action** 24:9 28:11
37:6 55:12 93:2
131:12 145:4
149:10
**actions** 146:9 150:18
**active** 143:24 147:10
**actual** 38:17 78:18
143:7 150:21
**actuary** 67:22
**ADAMICH** 7:6
**ADAMS** 7:14
126:17,22 127:6
127:13 129:24
**added** 57:25
**adding** 149:17
**ADDIS** 5:10
**addition** 9:14 18:14
78:3 123:2 131:22
137:24
**additional** 59:8
66:22 107:25
109:17 129:22
153:8,9 156:6
159:3,12
**address** 28:10 29:11
78:10 104:2,3
122:7 129:8,9
152:9,14 154:3
155:18
**addressed** 65:8
143:21 152:24
**addressing** 133:11

154:6
**ADELMAN** 6:18
**adjudicate** 117:12
**adjudicates** 117:10
**adjustment** 27:13
**administration**
20:15
**administrative**
37:23 101:3
107:12,17 108:18
122:13 128:7
135:3 155:8
**administrator** 11:22
11:25 14:20
163:25
**admissibility** 12:25
20:8,12
**admission** 11:2,6
14:17 148:8
151:20
**admit** 11:6 17:6,16
18:20,25 118:18
**admitted** 11:3,23
12:21 13:1,16
14:19 15:8 39:3
148:10 151:23
**admitting** 102:9
**adopted** 65:5
**advance** 149:24
**adverse** 146:19
**advisable** 125:21
**advised** 100:7
154:25 160:24
**advisor** 29:10,13
67:20
**advisors** 30:9
109:25 157:17
**affect** 113:15 135:23
**affectedly** 62:16
**affidavit** 18:22
152:4,4 157:9,20
158:2
**affidavits** 89:17
**affiliates** 150:19
**affirmative** 142:23
156:15

**affirmatively** 99:1
127:22
**affordable** 71:21
**afternoon** 98:7
147:15
**afterthought** 53:25
**age** 41:17 42:21
49:10 52:9 78:2
**agenda** 8:6,7,10
23:12,16 149:7
151:10,11
**aggregate** 26:16
**ago** 80:23 87:1
136:12 157:19
**agree** 24:17 49:19
49:22,23 72:15
87:8 104:20
122:22 131:5
**agreeable** 13:15
**agreed** 12:13,14
15:1,6 22:23 23:21
66:21 74:17 89:19
107:24 144:12
150:16
**agreeing** 13:24
**agreement** 2:5,10,17
3:3,10 11:23 12:5
12:15,16 13:3,12
14:1 15:10 61:1,19
61:25 62:4 63:1,14
63:16,18 64:4
69:18 72:25 89:16
107:22 111:7,8,11
136:22,23 140:11
148:8,25 150:24
152:10,25 153:11
154:7,18 155:15
155:23 156:5
157:12,16,17
159:1,7,9,10
160:12,17 161:6
161:12 165:7,11
**agreements** 11:20
14:15,18 19:1
77:23 84:20,21
107:24 108:1

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 168 of 205

2

136:7,8,14,15
156:6
**agrees** 50:1
**ahead** 39:15 45:10
**Airlines** 74:24 112:5
**Al** 1:8 4:8 8:4
**alive** 63:5
**alleged** 149:25 150:1
**alleging** 149:14
**allow** 2:5 64:25
65:20 128:6
156:21 161:20
**allowed** 92:24 103:8
**allowing** 149:24
**allows** 19:24 58:1
**aloud** 29:9
**alteration** 58:8
**alternatively** 131:3
**ambit** 143:2
**amend** 30:15 31:13
31:21 73:25 74:2,3
82:3 83:21 84:20
149:17 155:14
159:1
**amendable** 70:10,13
70:19 71:3 72:17
76:11 78:4 79:14
82:11 85:3 86:19
**amended** 53:14
134:9 149:17,19
150:21
**amending** 99:11,24
135:18
**amendment** 2:10,15
2:16 3:10,12 77:17
107:21 136:13
151:10,12 152:18
152:24,24 153:13
153:16 154:2,11
154:15 155:13,13
155:14 156:19
157:16 158:6,10
158:11 159:1,2,5
159:14 165:10,13
**amendments** 73:15
108:6 134:10

139:3 140:3
152:10 158:23
**amends** 135:20
**America** 142:14,17
**American** 135:16
137:10
**Ames** 57:2 64:12
137:15,18
**amount** 54:5 58:20
68:11 157:22
**amounts** 153:14
**Anaheim** 148:4,15
148:21
**analyses** 27:19
34:17
**analysis** 27:2 29:10
32:23 35:5 54:4
61:24 75:1,3,5
77:7 80:2 85:2,6
85:19 87:22
116:16 117:12
133:18 136:24
137:11,20 144:5
145:14
**analyzed** 134:22
**analyzes** 133:7
**anathema** 123:21
**annually** 50:15
**answer** 73:25 80:3
86:21 104:2
**answered** 34:23
**answering** 38:3
**answers** 89:7
**anticipated** 27:7
59:1 98:20
**anybody** 58:6
**anyway** 93:9 126:8
**apiece** 54:7
**apologize** 28:23
**apparently** 16:6
28:23
**appeal** 144:10
**Appeals** 141:21
**appear** 125:5 140:2
**appeared** 50:21
90:11 92:23

128:24
**appears** 28:16 68:20
130:21 141:10,13
141:23 142:25
**appellant** 57:2
**appellate** 123:24
125:23
**applicable** 20:10
37:5 78:1 83:19
132:23 133:9,15
**application** 3:1
137:17 145:7
**applied** 57:3 77:5
85:7 98:23
**applies** 64:23 74:1
74:12 84:13 138:9
151:13
**apply** 22:16 23:21
24:18 56:12,16,19
70:1 73:24 74:3,14
77:2 79:15 82:2
84:23 85:19,20
92:20 93:6 99:2
115:17 131:6
136:6 144:13
**applying** 92:10
**appoint** 3:1,6,8 86:6
105:4 112:25
123:4 126:20
143:8
**appointed** 37:12
112:5,8,15,23
123:12
**appointing** 24:5
72:23 81:13,23
126:14
**appointment** 24:10
43:2 112:13,14
123:3 125:18
126:14 129:5,6,20
**appoints** 126:15
**appreciate** 78:21
102:2
**appreciation** 134:7
**approach** 124:4
**appropriate** 98:25

100:13 101:2
110:22 123:4
124:9 128:1
143:11 149:3
151:4,7 155:3
**appropriateness**
150:4
**approval** 138:23
148:13 151:12
152:21 154:16,18
154:20 158:10,11
159:23
**approve** 2:5 149:21
151:6 156:19
158:6 160:3 162:1
164:24 165:7,9
**approved** 2:1 128:5
148:15 149:4,18
152:25 160:18
164:23,25 165:8
165:11,14,16
**approves** 120:13
**approving** 2:1,2
138:2 162:2
**approximately** 8:11
8:20 26:16 131:13
131:21
**April** 37:22 38:12
86:2 100:23
101:16 107:6
108:3 109:16
123:10 128:3,13
149:16 155:17
156:5
**AR** 14:10,10
**arcane** 88:5
**area** 104:24 143:6
**arguably** 134:9
138:7
**argue** 23:6 56:22
74:17 81:17 90:11
93:9 103:1 104:7
116:18 139:10
**arguing** 23:8 57:18
**argument** 23:22
45:10 52:21,24

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 169 of 205

3

57:24 104:4,12
107:2 112:19
114:24 133:3
139:20 143:21
144:15 161:14
**arguments** 9:21
100:1,15 112:18
133:17 135:22
**arisen** 150:18
**arises** 149:12
**arising** 138:9
**Arps** 4:2,11 56:20
56:24 57:2 74:7
**arrangement** 2:15
103:21 150:15
151:12 158:10,11
159:2 162:2
165:13
**arrangements** 38:6
155:20
**aside** 59:21 81:11
125:10
**asked** 34:23 72:8
75:1 107:18,23
126:17 129:21,25
**asking** 36:9 148:12
149:21 158:23
161:2
**Assert** 2:6
**asserted** 13:4 15:9
19:2 23:14
**asserting** 97:16
**assertion** 132:18
**assertions** 13:6
**assessment** 146:14
**asset** 148:25
**assist** 17:8
**associated** 21:9
104:14 154:3
**association** 5:3 9:10
9:10 15:4,14 16:5
17:24 18:8 19:10
19:14 21:7
**Association's** 22:7
**assume** 81:18,20
84:17 91:19,20

104:6 157:22
**assuming** 49:25 56:8
66:19 68:23 84:18
85:3,7 144:17
145:20
**assumption** 27:12
35:6
**attach** 47:20 59:9
116:11
**attached** 15:8 28:4
50:8
**attaching** 89:14
**attempt** 18:17 20:2
**attempting** 21:19,22
**attend** 10:9
**attendants** 74:25
**attention** 27:21
28:10 151:1
**attorney** 83:14
120:1
**attorneys** 4:3,12,20
5:3,11,19 6:3,11
90:22 130:6
**at-will** 103:9 104:6
105:14 106:8
109:22 122:18
**auction** 148:17,20
**authentication**
12:25 13:3 16:15
16:18
**authenticity** 12:15
12:17 13:24
**authorities** 137:23
**authority** 2:20 33:15
62:14 87:25
103:10 104:8,9
104:15 109:21,23
124:10 130:10
133:5,16 143:7
157:23 158:3
160:21
**authorization** 43:1
**authorize** 125:17
**authorized** 64:25
124:16 131:4
144:25

**Authorizing** 2:9,14
165:9,12
**auto** 146:18
**automatic** 2:5
149:22 150:6,10
165:8
**automotive** 54:23
55:11 76:22 95:11
105:20 119:19
122:1 148:23
153:2,7
**availability** 15:5
154:7
**available** 17:9 33:24
35:19 48:2 105:21
**Avenue** 4:21 5:20
7:3 148:15
**avoiding** 36:11
**aware** 22:7 24:8
33:22,23 35:8,13
35:18,22 36:25
37:4 38:10 42:3
43:11 49:8,12
61:13 99:17
104:14 135:19
157:13 159:21
**a.m** 1:19

---

**B**

**B** 1:21 2:11 53:17
54:5 163:15 164:5
**Babette** 6:15 98:7
**back** 33:12 36:7
44:22 46:8,9 49:20
54:12 57:25 58:1
61:20 63:8 65:23
66:6,14 67:25
80:23 86:22 93:15
93:19 99:8 106:9
111:2 114:16
115:16,17 127:16
129:13 140:6
148:1,14 149:13
152:25 153:6,20
154:1 158:24
**backwards** 101:25

**bad** 85:25
**bailout** 54:24
**bail-out** 72:9
**balance** 8:17 26:4
29:11 67:9 74:22
75:2,4 105:7
106:16,16,22
139:7,8 145:22
147:17 153:4
**bank** 91:15 142:3
**Bankr** 136:18 137:9
137:10,25
**bankruptcy** 1:2,14
1:23 42:13 53:6,10
57:10 58:7 60:3
62:9 63:8 64:13,24
65:5 66:20 69:2
70:11,18,22 72:10
72:21,21,25 73:1
73:12,16 74:2,9
76:20 84:7 85:4
86:20 87:6 99:24
102:19 117:18
120:22 130:11,20
131:20 133:6,7,8
133:21 134:4,8,16
134:17,23 135:1,3
135:8,13,18,20
136:4,6,7,23
137:12,15,24
138:22 139:2,6
140:5
**BAPCIPA** 139:3
**BAPCPA** 53:15
57:24 60:1,13
61:15 104:19
134:10
**bar** 100:18 101:9
**bargain** 65:1 124:17
**bargained** 98:16
**bargaining** 3:3
60:25 61:19,25
62:4 72:25 81:21
81:24 89:16
103:21 140:11
**base** 153:18,19

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 170 of 205

4

**based** 12:21 14:15
16:14 27:9,14 29:7
29:10 31:16,18
99:3 101:13
115:21 116:15
139:7 148:18
**basic** 83:16 93:10
94:3 103:18,25
140:7
**basically** 57:19
78:22 116:2 156:6
161:16
**basis** 13:18 16:12
18:13,20 22:2 28:7
35:16 72:24 95:7
98:4 99:10 102:18
105:14 107:20
115:18,19 122:16
125:23 143:10
157:24 158:4
**Bates** 14:7,10
**Beach** 10:4,8
**Beach's** 10:5,13
**bear** 131:19
**bears** 78:3 92:7
**Beatty** 59:10 111:5
**Beatty's** 110:24
**began** 149:13
**beginning** 66:24
**begins** 30:5
**begun** 90:16
**behalf** 9:16 12:11
15:13 25:1 36:20
43:9 100:6 151:4
**belief** 20:24 21:3
136:5,5 143:9
**believe** 14:1 16:8,9
16:18 20:25 21:2
21:11 23:24 34:4
38:2 50:2,15,20
56:1 59:14 64:8
93:21 98:13
100:16 102:17
105:6 109:3,18
110:21 115:23
117:16,21 118:18

121:23 126:13
133:8 135:18
140:8,18 142:9,12
143:7,11,24
144:24 145:5,9,12
145:13,25 146:13
151:3 156:17
157:2 158:7,24
160:20
**believed** 101:12
**believes** 69:9
**beneficial** 95:9
**beneficiaries** 132:10
138:17 141:3
142:22 143:17
**benefit** 12:3 14:22
15:22 16:6,25 20:4
42:3 49:7 53:24
58:10 60:19 63:13
66:25 73:1,4 76:10
77:15 79:4 88:9,17
102:18 121:11
132:6 139:14,15
139:17 142:11
144:13 164:7
**benefiting** 109:3
**benefits** 2:21,22 3:2
19:19,23 23:2
34:14,14,15,22
35:24 36:10 37:21
42:5,24 44:24
47:17,25 48:5,12
48:14,20 49:14,21
52:3,7 53:8,22
54:3,10,14,18,20
54:22 55:23 56:1,6
56:13,16 57:16,17
58:2,20 59:2,8,20
59:22 60:7 61:1,20
61:22 62:1,4,11,11
62:12,14,17,18,20
63:14,17,19 64:3,5
64:20,22 65:13
66:17 68:7,9,12
69:6,8,10,11,15
70:10,13,17,19

71:3,4 72:11,17,24
73:24 74:1,3,6,10
74:25 75:6,6,7,17
75:22 76:2,4 77:9
77:11,14,16 78:4
79:14,19,20,22,24
80:2 81:6 82:2,11
82:15,17 83:1,2,7
84:1 85:2,3,24
86:1,2,12,18,22
87:7 91:2 92:6,8
93:14 94:16,18
97:8,23 98:15
101:13 103:9
104:7 106:8 107:5
108:2 111:6,9
112:7,9,20,22,25
113:2 114:1
116:16 119:13
120:22 130:18,18
130:23 131:2,5,10
131:10 132:18,22
132:25 133:14
134:2 136:3 138:3
138:9,11,12 139:5
143:22 144:21
146:11,16
**Benners** 57:13,23
**Bercher** 148:15
**best** 18:16 86:16
88:22
**BETH** 7:19
**Bethlehem** 135:11
**beyond** 12:16 17:10
33:12 35:17 38:8
49:10 62:25 67:19
72:16 90:1 94:9
136:13
**bid** 2:2 148:18,19,24
**bidder** 148:17
**Bidding** 2:1 164:24
**big** 38:11 88:5
**biggest** 89:8
**billion** 36:23 53:16
67:9 105:7 145:22
**billion-one** 106:23

**bills** 38:5 101:16,17
**binder** 28:13,14
32:1 43:23
**binding** 161:12
**binds** 161:12
**bit** 38:8 89:22,23
115:14
**black** 58:15
**blue** 78:23
**Blvd** 6:4
**board** 10:20 11:12
18:21 24:25 25:1
95:23 96:15
163:21
**bodies** 18:21 25:2
**body** 127:4
**bold** 92:23
**bondholders** 53:17
**book** 17:18 83:1
**booklets** 16:6 80:23
**books** 12:3 14:22
16:25 17:9 157:10
164:7
**borne** 120:10
**borrowing** 153:18
153:19
**borrowings** 153:22
**bottom** 55:11
**Bouboulis** 78:16,18
78:25 92:13 93:3
142:13
**bound** 63:2 114:19
141:17 143:10
**Bowling** 1:15
**box** 58:15
**Braun** 5:2 15:13
41:3
**breach** 136:7,14
139:21,23
**breaching** 136:8
**Brentwood** 6:4
**bridge** 58:22
**brief** 35:1 37:4
45:20 62:6 127:17
**briefed** 141:22
**briefly** 36:16 46:20

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 171 of 205

5

51:9 70:8 98:12
100:8 120:20
129:25
**bring** 150:25 161:24
**Britt** 6:2 53:4
**broached** 157:20
**broader** 138:17
159:16
**Broadway** 6:19
**brought** 37:2
**Browne** 6:2 53:4
**Bryan** 5:23 9:6 10:7
25:14
**Bu** 95:3
**budget** 123:16
129:18 145:3,4,6,8
**built** 49:25 125:13
**bulge** 38:9
**bullet** 29:3 94:18
**burden** 78:3,14
103:7 118:6
124:20 143:1,3
**burial** 54:7
**Burnham** 137:25
**bus** 59:6
**business** 25:3 26:17
27:13 35:17 36:21
37:12 54:19 66:3
100:12 105:6,20
108:21,24 116:19
116:19 117:9,18
118:16,17 119:3,6
119:19 122:10
136:9 145:15,20
145:24 146:11,15
146:15,18,20
154:23 160:10
161:3
**Butler** 4:7 8:3,3,9
9:24 10:12,16
11:19 12:2,20
13:14,25 14:6,15
14:25 16:2 17:11
17:15,23 18:6 19:7
19:14 20:5 21:6,11
21:15,25 22:6,18

23:12 24:15,22
28:15,19,22 32:2
32:11 33:5 34:23
37:17 39:1 43:23
44:10 45:7,15,17
46:8,20 47:3,4,8
47:12 50:25 51:9
51:19,20 52:13,17
52:21 56:25 87:22
101:24 102:9,14
103:14,17 106:20
106:23 107:7
108:4,9 110:13,15
110:18,25 111:2
111:20 112:17
114:2 116:25
117:3,15,21
118:10 119:15,22
119:25 121:15,19
123:19 124:3,11
124:14 125:24
126:2,5,10 127:7
127:14,17 130:5
147:12,14,19,24
148:3,12 149:6
151:9,25 152:8,12
152:14,17 156:4
156:25 157:7
158:9,22 159:21
159:25 160:4,17
161:8,11 162:4
163:12,13
**Butner** 85:6 134:18
136:25 139:12
140:7
**but-for** 122:10
**B.A.P** 134:25
**B.R** 134:24 136:18
137:9,10,13,25

_____
**C**
**C** 4:1 5:1 6:1 7:1 8:1
53:17 166:2,2
**calculations** 26:24
27:4 53:24
**calculus** 118:20

**California** 5:5
148:22
**call** 50:13,17 115:3,5
121:24
**called** 87:14 106:5
**cancellation** 102:17
**cancer** 76:2
**Canfield** 134:24
**capable** 38:3 110:5
125:1
**capital** 7:23 51:16
105:21,21
**capped** 54:6 148:24
**cards** 58:15
**care** 2:21 27:11
38:15 42:18,20,20
48:12,24 49:17
72:3 79:14 87:15
121:4,9 128:16
130:17
**careful** 61:23
**carried** 64:19,20
**cart** 23:4 24:1
112:19 124:19
**case** 1:4 23:1,18
32:15,20,24 33:5
33:22 42:14 45:18
53:13,17 54:9,16
55:16 56:2 57:10
59:1,4,4,11,13
61:12,22 62:2 64:6
64:8,13,22,24 65:7
65:16 66:17,20,25
68:17,20 69:8 70:3
70:11,14,18 71:8
72:10,13,22 74:21
74:24 75:8 76:4,17
76:21 77:2,3,4,5,6
77:7 78:16 81:21
83:22 84:7 89:8,21
90:17 92:10,15
95:11 97:7 99:3
100:17 102:17
106:13 109:5,6,25
109:25 110:24
111:2,3,5,13,19

117:21 118:14,15
119:7,8,9 130:10
131:17 132:13
133:9 134:3,15
135:5,20 136:4,17
137:15,16,18,20
140:7 141:21
145:18 148:17
153:5
**cases** 29:25 53:10
59:18,19 61:6,11
61:14,17 62:3 63:8
63:25 64:22 70:10
71:2 72:13,18,19
73:15,16 75:9 79:2
79:6 88:5 89:24
92:20 95:13 97:7
110:6 134:18
135:13 137:6
140:1 153:24
154:9
**cash** 26:3,15 59:2
70:21 107:5 125:7
129:19 146:1,6
153:15,20,23,23
154:4 156:8
**categorical** 116:3
**cause** 38:11
**caveat** 38:18
**CBO** 61:22 62:19
**Ceccotti** 6:15 9:15
98:7,8,20 99:25
103:17,22,25
104:20
**cede** 139:20
**centered** 156:8
**cents** 88:17
**cert** 136:21
**certain** 2:2,10 10:24
11:24 12:8,23
13:17 36:20 38:6
43:9 68:11 72:16
90:19 95:19,20
96:16 97:4,8,9
153:11,17 159:3,3
**certainly** 23:13 24:2

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 172 of 205

6

54:23 60:16 65:2,7
102:7 104:23
109:18,20 111:10
122:3 129:9
147:22 157:15
**certainty** 36:5
**certify** 166:4
**cessation** 29:11
**CF&I** 137:8
**chain** 115:22,25
**challenge** 36:7
**challenges** 36:6
**chance** 95:5 97:24
103:8
**change** 42:18,22,24
43:2 56:5 77:11,18
78:6 91:1 92:9
99:16 104:18
122:6 128:15
135:23 138:24
147:16 156:5
**changed** 42:24 52:7
54:13 74:5 92:8
97:9 146:20
**changes** 71:1 146:19
159:3
**Chapter** 55:6 58:13
65:13 68:18
132:13,14 134:2
138:11
**characteristics**
130:2
**charge** 143:13
**Chateaugay** 62:23
64:14 73:4 136:20
136:21
**Chateauguay** 138:1
**cheaper** 71:24 88:9
**checks** 128:13
**Chicago** 4:5 5:13
**chief** 90:20 92:4
**choice** 70:17 85:18
91:8 100:11
141:22
**choose** 11:4 35:22
75:17

**chooses** 104:25
**chose** 84:8
**chosen** 84:7
**cinder** 86:23
**Cir** 134:25 135:12
136:20 141:12
142:14
**circuit** 32:15,16
33:1 62:8 70:3
77:3,6,8,17 78:15
78:19,25 79:6 80:2
84:4,6,8,8,10,13
84:23,24 85:7,8,19
90:2 92:11,19
94:21 115:7,12
118:14 122:24,25
135:6,11 137:18
137:21 141:11,17
141:17,18,22,24
141:25 142:13,20
142:21
**Circuit's** 140:16
**circulate** 147:10
**circumscribe**
124:10
**circumstance** 74:4
111:12 112:23
**circumstances** 58:1
106:13 146:20
154:3
**cite** 93:8
**cited** 64:13 72:18
89:21 93:22 137:5
138:1
**cites** 133:8
**citing** 134:18
**City** 57:11,12
**claim** 66:21 82:17
82:20,21 102:18
103:11 135:1,2,2
**claiming** 135:7
**claims** 2:6 100:17,19
101:1,13 102:3,5,6
102:10,20,21,24
102:25 103:2,3,7
149:25 150:17

**clarification** 12:17
98:10 102:1
**clarifications** 73:7
**clarify** 22:3 98:13
**clarity** 24:15 71:6
155:25 157:4
**clause** 92:7
**clauses** 49:25 92:7
**clean** 135:21
**clear** 13:5,12 22:5
23:18 56:20,25
57:1,20 59:25
60:12 64:23 70:5
73:15,18 74:8 75:8
75:11 77:24 79:16
79:25 81:18 82:6,9
99:13 100:7
101:18 106:3,7,10
106:25 109:22
113:3 114:23
120:6,7 121:16
125:13 136:12
141:25 142:9,23
142:25 143:24
144:8 145:17
**clearly** 20:22 58:8
74:22 91:12,25
113:10 122:23
124:15,24 131:15
139:7,9 140:3
141:13 142:6
145:23
**clients** 74:7
**client's** 79:9
**closed** 58:16
**closely** 30:9
**closing** 85:23
**Club's** 102:16
**COBRA** 19:22,23
19:25 35:7,11 36:1
36:12 71:18,21
88:6 120:3,4,5,10
120:11,12,13,23
121:1,3,7
**code** 71:15 99:24
102:19 117:18

123:2 130:11,20
133:21 134:4,16
135:18,23 136:6
138:22 139:2,14
**cogent** 82:7
**cognizant** 124:24
**Cohen** 6:10 98:8
**cohesive** 95:7
**collateral** 66:22
85:13 153:15,20
154:4 156:8
**colleagues** 70:3
**collect** 126:7
**collective** 3:2 60:25
61:19,25 62:4
72:25 89:16
140:11
**collectively** 54:2
98:16
**Collier** 133:6,7
**Colliers** 73:9,14
104:15,16,17
**Collier's** 59:25
**colloquy** 99:8
**Comair** 74:25
**come** 12:6 15:7,15
23:22 25:7 30:18
38:6 51:10 54:8,12
71:23 78:5 89:7,25
92:17 102:12
109:8 116:24
137:22 142:15
148:14
**comes** 65:4 69:8
95:17 108:10
125:3 134:1
**comfortable** 108:22
129:5
**coming** 14:12 37:23
38:21 94:25
107:16 124:5
**comment** 111:22
**commentary** 133:10
133:10
**commentator** 133:6
**commentators**

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 173 of 205

7

105:1 133:4
**commented** 104:16
**commit** 128:23
**commitment** 70:14
76:11
**commitments** 42:3
77:13 78:9
**committed** 80:1
**committee** 3:1,6,8
4:20 9:16 23:3,9
23:20 24:4,6,7,11
37:11 43:2 54:12
54:17 56:4,17
58:19 68:3,11
69:19 70:20 71:5
71:20 72:24 73:3
73:12 76:5,6 81:1
81:4,4,14,23 86:6
89:3,6 90:1,10,15
95:25 96:4,7,14
97:5,15,20,24 98:4
98:4 100:6,9
101:12 102:3
104:10 105:4
106:2 111:4,14,15
111:16,23,25
112:5,7,11,13,15
112:21,22,25
118:23 121:7
123:3,12,16,25
124:4,10,15
125:18 126:15
127:12 128:19,25
129:18,20 130:4,8
143:8,13 144:3,4,9
144:14,24 154:12
155:5 157:15,21
157:22,23 160:7
160:12,14,18
161:6,13,20,24
**committee's** 89:14
101:11,19 103:12
145:4
**communicating**
128:7
**communication**

11:24 118:2
**communications**
10:19 11:10 12:4,7
12:22 13:16 14:22
47:16,20,23 48:1,4
48:9,19,22 49:1
50:8,22 118:13
163:20 164:8
**companies** 63:15
94:23 105:21
132:9 136:18
142:19
**company** 28:8 41:24
42:19 87:13 89:19
102:3,4 103:19
104:1 105:12,12
105:14,18,24
106:4,7,10,16
107:10,15,19,25
108:14,15,18
109:4,11,12,15
113:6 117:3 118:7
118:17 119:17,18
122:6,16,19
124:12,17 127:22
127:24 128:23
129:9 135:16
142:17 155:7,9,9
159:4,12 160:13
160:18
**company's** 105:5
106:16 109:2,11
112:19 120:25
**compel** 133:22
**compelled** 104:10
**compelling** 107:9
**compensated** 100:24
**compensation** 50:14
**competing** 53:16
56:8
**complaint** 149:17,19
150:21
**complete** 14:11,13
17:1,3,4 34:19
36:4 110:2,7 116:4
**completely** 50:16

92:14 109:1
114:18
**completeness** 16:4
16:11,22
**completes** 45:17
52:18
**complex** 113:3
**compliance** 56:4
**complicated** 104:22
**comply** 133:12
**compound** 49:24
**compromise** 71:5
**concede** 53:24 56:15
89:11 106:25
**concern** 101:11,20
111:7,24
**concerned** 35:15
100:22 103:22
125:7 149:3
**concerning** 30:3
**concerns** 30:16
**concessions** 153:9
**conclude** 116:19
133:19
**concluded** 79:23
105:15 162:7
**concludes** 133:10
**conclusion** 18:17
19:18 20:3,17
21:19 29:14 35:8
35:16 122:19
143:19
**conclusions** 20:13
**conclusively** 33:14
114:12
**concurrence** 24:24
**condition** 17:17
**conditions** 21:9
55:10 108:2
148:25 153:16
156:13 159:19,22
161:4
**conduct** 134:8 144:5
156:11
**confer** 144:5
**conferred** 10:1

**confidence** 155:7
**confidential** 46:5
108:12 157:10
**confirm** 2:24 86:15
165:15
**confirmable** 105:23
**confirmation** 64:20
70:11,19 76:19
112:10 138:2
160:6 161:2,14
**confirmed** 14:1
64:18 68:18
**confirming** 2:20
64:14
**conflicting** 133:5,16
133:16
**conflicts** 77:8
**congress** 15:20
53:13 54:22,22
57:20,25 58:4,8,13
58:25 59:25 60:5
60:16 61:4,13
66:13 72:6,8,10
73:6,14,18,18,23
75:5 87:12 99:11
104:13,17,23
118:13 132:8
134:8 135:19
136:11 137:2
139:11 140:4
**congressional** 15:4
17:19 55:12 61:9
164:11
**congressman** 87:11
**conjunction** 89:24
**connection** 2:12,25
16:20 27:3 31:10
32:21 39:2 47:5
67:17 110:4 114:4
152:23 154:8
**Conrad** 57:5 64:13
137:16,25
**Conrad's** 138:5
**consensual** 107:20
109:9 154:9
155:10

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 174 of 205

8

**consent** 52:3,6 116:9
116:10 158:3
**consented** 52:11
**consequence** 123:5
**consequences** 22:13
76:25
**consequently** 156:4
**conserve** 146:1
**consider** 19:4 24:13
30:13,23,25 33:19
34:9,11 123:19
128:9 129:21
**consideration** 27:25
53:7
**considered** 132:1
141:23
**considering** 127:23
**consist** 10:3 146:24
**consistent** 33:23
96:10,12 136:24
138:3 147:3 154:5
**consistently** 31:20
47:16,24 48:4,20
113:21 138:8
**consisting** 15:4
**consists** 12:3
**constituencies** 55:17
56:8 58:16 66:20
**constituent's** 55:18
135:9,10
**constitutes** 132:6
**constrained** 107:11
108:14 129:19
**constraints** 122:8
147:7
**construction** 93:4
123:23 132:5
142:16
**construed** 135:15
**construing** 84:14,16
**consulting** 122:19
**contacted** 79:10
80:21 90:7
**contain** 34:17 108:1
**contained** 40:2
61:25

**contains** 16:7,9 34:7
156:13
**contemplates** 37:21
**contend** 99:1 132:4
132:17,19,24
**contended** 141:16
**contends** 131:6,9
**content** 99:6
**contentions** 99:3
**contested** 9:19 14:25
114:9
**context** 96:24
137:17 140:16
**contingent** 60:8
**continuation** 19:22
19:24 35:7,11 36:1
36:12 68:6 69:6
71:19,21 88:6
121:3,8
**continue** 19:25 20:1
21:1 35:17,23 38:5
62:13,25 63:12,16
68:12 69:7 82:11
83:16 102:5
105:11 107:13,15
107:18 108:22
122:2,17 155:8
156:12
**continued** 5:1 6:1
7:1 49:17 94:19
108:21 164:3
165:3
**continues** 30:8
153:18,19 159:9
**continuing** 27:11
29:24 31:1 35:19
105:9 108:18
109:3 122:4
**continuity** 119:18
**contract** 58:8 62:10
62:12,20,24 63:2,4
74:18 100:21
107:3 139:22,22
**contracted** 68:24
**contracts** 117:6
132:9,11,12

**contractual** 77:15
118:22 134:1
139:12
**contractually** 82:15
139:24
**contradictory** 79:5
**contrary** 134:15
139:11
**contravention**
115:25
**contributing** 73:13
**contribution** 99:7
**contributions** 42:19
49:10
**control** 118:14
**controlling** 33:15
104:8,9
**controverted** 107:9
**convenience** 37:23
**converted** 72:22
**convince** 145:6
147:3
**coordinate** 15:24
71:25 123:18
**coordinated** 21:21
**copies** 17:2,3,4
**copy** 44:3,4 52:1
110:11 131:16
**Cornell** 5:15 9:2
12:10,11,24 13:8
22:21 36:16,19,20
37:15 43:6,9 44:2
44:14,17 45:6,9,13
88:21,22,25 91:5,7
91:10,18,20,25
92:4 93:7,12,16,19
93:24 94:2,9,13
95:17,21 96:1,6,12
96:21,23 97:1
163:8,11
**Corp** 135:12 142:16
**corporation** 1:8 2:7
2:15,17 7:17 8:2
10:22 16:6 31:21
32:14 33:25 34:1
47:5 51:21 121:12

134:24 136:4,20
137:7,15 140:17
141:9,12,20
**correct** 10:7 20:6
26:5,6,18,21,22
27:8 28:1,2 29:17
30:4,7 31:14,15
32:7 34:2,14 36:23
37:6,9 39:25 40:1
41:8,10,12,21,22
43:17 44:8 45:1
48:6 49:11 50:9,23
52:4,5 97:16
100:15 103:9
118:25 119:6
126:1 138:14
140:9
**corrections** 49:5
**correctly** 93:24 94:6
98:21 103:18
134:12
**cost** 19:25 31:6 35:5
49:15 66:25 83:18
87:23 119:24
120:9 144:25
**costs** 27:13 72:3
**counsel** 2:24 8:15,25
10:1 13:15,19 14:2
18:3 20:5,9 23:21
24:18 36:25 47:4
73:13 79:11 88:5
110:5 111:14
112:18 115:9
120:25 128:22,24
131:25 143:6,25
147:10,21 160:6
160:10,13,19
161:12,23 165:16
**counsel's** 10:5
**countenance** 106:14
**counter** 141:7
**counterintuitive**
58:4
**counting** 59:18
**country** 76:9 166:11
**counts** 146:4

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 175 of 205

9

| | | | |
|---|---|---|---|
| **couple** 33:3 47:9 | 67:21,24 68:5,14 | 142:15 147:11,13 | **COWEN** 5:10 |
| 57:23 73:7 79:1 | 68:22 69:1,3,18,23 | 147:18,20 148:1,6 | **co-counsel** 81:11 |
| 89:11 90:8,9 104:4 | 69:25 70:2,6 72:18 | 148:10 149:2,11 | **crafted** 58:20 |
| 127:21 128:2 | 73:4,8,16,19,21 | 149:19 150:4,8,10 | **create** 62:11 89:6 |
| **courier** 110:15 | 74:13,17 75:2,19 | 151:7,22 152:3,7 | 134:4 140:5 |
| **course** 54:12 60:25 | 78:15 80:4,12,16 | 152:11,13,16,21 | 142:11 |
| 61:18,20 68:17 | 80:25 81:3,8,10,18 | 153:6 155:18 | **created** 15:23 111:9 |
| 72:18 97:14 | 82:5,7,19,23 83:4 | 156:3,23 157:6,9 | 137:2 |
| 132:13 134:2 | 83:10,12,16 84:5 | 157:24 158:1,6,15 | **creates** 65:12 133:25 |
| 138:23,24 154:21 | 84:11,14,17,23 | 158:16,21 159:19 | **creating** 110:1 |
| 160:22 | 85:5,10,15,18,22 | 159:24 160:1,16 | 134:13 |
| **court** 1:2,14 8:2,8 | 87:8,16,19,21 | 160:24,24 161:6,9 | **credit** 15:24 71:16 |
| 9:23 10:11,15,23 | 88:20,24 89:10,12 | 161:15,17,17,18 | 79:14 87:15,23 |
| 11:4,5,14 12:1,9 | 91:4,6,9,15,19,23 | 161:24 162:1,6 | 88:8 108:21 |
| 12:18 13:6,22 14:5 | 92:3,13,19,25 93:2 | 163:22 | 119:21 120:17 |
| 14:14,19 15:11,21 | 93:8,15,18,23 94:1 | **courtroom** 9:2,13 | 121:5,9,14 145:1 |
| 15:23 16:1,16 17:5 | 94:8,12 95:15,20 | 51:5 58:6 126:25 | **creditor** 135:1 |
| 17:6,14,16 18:4,19 | 95:24 96:3,10,20 | 130:7 144:4 | **creditors** 4:20 9:16 |
| 19:13 20:11,21 | 96:22,25 97:13,14 | **courts** 92:23 103:2 | 54:17 107:12,17 |
| 21:10 22:1,14,16 | 98:19,23,24 99:19 | 133:4,11 134:13 | 108:20 109:2 |
| 23:24 24:21 25:4,7 | 99:23 100:3,5,20 | **Court's** 63:1 81:24 | 122:13 134:16,17 |
| 25:10 26:11,13 | 101:3,8,10,21,23 | 118:15 123:11 | 135:14 155:8 |
| 27:4,18 28:13 | 102:8,12,13,16 | 131:17 143:19 | 160:7 |
| 31:25 33:7,13,17 | 103:13,16 104:3 | 147:14 159:22 | **credits** 15:6 17:20 |
| 33:19 34:9,11,16 | 106:18,21,24 | **covenants** 154:5 | 164:15 |
| 34:24 35:2 36:17 | 107:21 108:1,8 | **cover** 11:19 70:4,7 | **critical** 71:8 86:11 |
| 37:5,16,18 38:20 | 109:21,23 110:9 | 78:7 101:17 | **critically** 85:24 |
| 38:23 39:5,8,11,15 | 110:14,17,21,23 | **coverage** 15:6,24 | **cross** 15:20 20:9,19 |
| 40:25 43:1 44:3,6 | 111:1,18,21 112:3 | 17:20 19:22,24 | 22:19,24 24:23 |
| 44:12,16,18 45:4,7 | 112:11,13,16 | 20:1 21:2 31:5 | 25:4,12 35:3 36:18 |
| 45:12,14,16,21,24 | 113:12,16,19,23 | 35:7,9,12,19,23,23 | 37:16 39:2,6,17 |
| 46:2,5,7,11,16,18 | 114:18 115:6 | 36:1,12 49:10 | 41:1 43:5 45:14 |
| 46:21,23 50:4 51:1 | 116:11,13 117:2,5 | 58:22,24 71:16,18 | 46:3,18 47:2 51:7 |
| 51:3,7,10,13,17 | 117:20 118:5,9 | 71:18,19,21 72:16 | 51:18 152:2,3 |
| 52:14,16,20,23 | 119:14,21,23 | 83:17 88:7,7,7,12 | 158:14,16 |
| 53:1 54:15 55:6,7 | 120:15,20 121:18 | 88:14,15 105:14 | **CROWLEY** 5:10 |
| 55:19,21 56:6,10 | 121:21 122:21 | 121:4,4,8,9,14 | **crystal** 100:7 145:17 |
| 56:15,23 57:5,7,10 | 123:4,5,20 124:8,9 | 164:14 | **cues** 56:21 |
| 58:1 59:15,18 | 124:13,15 126:1,4 | **coverages** 42:10 | **cumulative** 44:14 |
| 60:10,16,20,23 | 126:7,11,21 127:1 | 83:15 94:3,4,18 | **current** 34:22 |
| 61:3,6,8,11 62:9 | 127:10,16,23,24 | **covered** 3:2 13:23 | 110:10 112:6 |
| 62:16,22 63:6,8,10 | 129:14,22 130:9 | 42:24 88:23 89:16 | 122:7 146:3 159:8 |
| 63:12,23 64:9,11 | 130:24 134:25 | 96:5 100:25 112:1 | **currently** 29:20,22 |
| 64:13 65:9,12,18 | 135:6,21 137:6,12 | 142:5 144:7 147:6 | 54:5 149:10 |
| 65:23 66:2,7,9,12 | 137:16 139:4,8 | **covering** 84:18 | **customers** 107:13 |
| 66:18 67:3,6,13,17 | 140:19 141:16,21 | 139:24 | 149:14 153:3 |

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 176 of 205

10

**cut** 35:25 44:13 59:2
67:15 68:3 86:2
92:12 140:6
**cutoff** 38:5,7,17,19
**cuts** 53:22 92:14
**cutting** 67:1

**D**

**D** 1:22 6:7 8:1
136:18 137:9
163:2 164:2 165:2
**damages** 100:21
150:2,2,17
**Dan** 9:6 53:3 111:23
**Dana** 95:15,24
111:19 134:14
**Dana's** 96:10
**DANIEL** 6:7
**date** 2:3 11:8,11,13
11:15,18 14:21,24
17:21 19:6 37:22
38:5,7,12,17,19
49:12 65:16 66:6
68:6,12,17 69:8
100:18 101:9
102:7 132:14
138:10 146:8
148:11 149:20
150:21 151:24
152:21 155:16
156:5 161:21
166:15
**dating** 115:17
**day** 96:2 97:13
107:12 121:23,24
122:5 127:3 128:9
134:11 139:6
155:11
**days** 58:2 74:2,9
76:7 78:23 90:8
131:19
**deadline** 148:19
**deal** 9:24 19:8 68:3
78:13 104:5
105:24 107:1
121:18,20 139:19

145:13 151:17,21
**dealing** 32:12 64:16
104:5 110:18
111:25 122:10
152:8 160:19
**deals** 22:18
**dealt** 8:23 23:13
103:22,23,24,24
106:13 112:8
132:7 145:12
**Dean** 5:7 9:12 15:12
16:17 18:11 41:3
**death** 130:19
**debated** 145:3
**debtor** 16:2 17:2
19:23 23:1 36:6,8
42:13 43:1 53:6
54:10,14 55:1,15
55:22,25 56:8
57:11,15,18 58:25
59:4,10 60:1 62:13
64:1,4 66:23 67:24
68:8,14,15,15 69:6
69:9,16,19 70:12
70:13,16 71:6,9,25
72:15 73:25 74:1,3
74:4,5,11 76:11,18
78:3 80:17 81:7
82:3,9 84:7 85:25
86:1,6,14,25 87:5
98:14,17 112:6
117:9 121:10
123:17 124:20
125:8,20 131:6,9
131:11,13,15
132:14,20 134:1
136:13,14 139:21
140:10,19,21,23
141:13 143:9
144:5 145:14,19
146:9,10 148:23
**debtors** 1:10 2:9,14
2:20 4:3,12 8:4,10
11:20 12:14 17:7,9
18:10 20:23,25
21:3 23:5,24 24:4

24:6,8,14 26:4
29:19,22,24 30:14
31:2 34:16 36:25
37:4,6,7 40:3 44:3
45:17 46:18 51:7
53:24 54:16 55:9
56:11,15 58:9 59:1
59:19,22 81:19
84:19 87:21,24
88:5,19 89:9,22
90:4,17 91:13
95:12,16 97:19,22
98:9,12 100:11
102:15 104:9
105:4 108:6
116:14,18 117:9
117:16 119:23
123:11 130:10,14
132:6,18,21
135:13 136:9
137:24 138:22
139:14 140:8
141:2,2,9 143:1
144:19,19,23,25
145:19 146:1,4,5
146:13,23 147:8
149:5 150:12,14
150:19,20 151:3
153:16 160:10
161:1,14,22 165:9
165:12
**debtor's** 159:5
**debtor-in** 131:3
**debtor-in-possessi...**
131:1 133:12
**Dec** 142:18
**decade** 87:1 116:10
**decades** 41:9 113:5
129:13,13
**December** 93:4
153:1,3,6
**decent** 137:1
**decide** 53:21 54:4
**decided** 54:2 57:10
62:17 64:1 98:23
145:7

**deciding** 58:16
**decision** 32:14 33:12
33:13 57:19 62:7
62:19,22,23 64:12
77:3 114:14
141:11 142:6
146:21 159:10
**decisions** 137:19
142:15
**deck** 67:15
**declarants** 116:2,6
**declaration** 10:3,6
17:25 18:2,8,23
19:5,8,11,16 21:8
22:9 24:22,23
25:20,21 27:3,22
28:4,5 29:15 31:9
31:17 34:4 39:3,24
41:16,20 43:10
45:23 46:14 47:9
47:14,21 50:9 51:4
51:22 106:11
146:3 148:6
151:19 152:2
158:13,18 164:10
164:16
**declarations** 10:14
22:20 45:19 46:9
116:4,12 151:18
**decline** 153:3
**declined** 153:5
**declining** 105:19
**deductible** 88:16
**deductions** 128:14
**deemed** 144:11
**defend** 23:10 24:6
98:2
**defendant** 149:18
**defined** 68:7 74:10
75:6 102:18
116:16 134:20
**defines** 130:22
**definitely** 56:17
**definitions** 159:3
**definitive** 128:12
**definitively** 116:22

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 177 of 205

11

**degree** 111:8
**delegate** 126:16
**deliberated** 18:22
**deliberations** 18:25
**delineate** 130:5
**deliver** 154:11
**delivered** 154:14
**Delivery** 135:16
**Delphi** 1:8 2:6 7:17
8:2 9:9 14:20
15:13 17:13 20:14
25:1,1 27:2 30:8
32:8,18,19 33:6,7
33:14,15,25 34:1,5
36:22 39:25 40:13
41:7,9 44:24 47:5
47:17,20,24 48:1,4
48:13,19 49:8,10
49:14,19,21 51:20
52:3,7 66:24 67:3
71:10,11 75:14
76:13 77:20,20
78:12 79:17 84:24
85:13,14 95:2,4
97:15 113:7,9,20
114:10 115:11,19
116:7 118:2
127:16 132:9
141:5,8 142:5,8
147:22 148:2,23
149:10,18,20
150:9,12,14,19
153:8 155:22
156:9 163:24
**Delphi's** 11:21,25
49:3,14 50:1
127:18 141:24
149:13
**Delta** 21:21 73:12
74:24 79:13
111:13 112:4,11
112:12,15
**demands** 98:5
**denied** 103:3 132:21
136:21
**denominated** 9:9

**deny** 37:6 69:25
88:18
**Department** 7:9
57:2 62:2 137:15
**departs** 75:8
**dependants** 130:17
**depending** 44:13
153:24
**descender** 91:23
**descent** 77:4,4 83:22
90:20
**described** 11:1
69:14 105:5
130:12 157:19
**description** 11:9
32:6,9 34:6,7
40:10 42:9 163:16
163:19 164:6
**descriptions** 10:18
40:7,12
**desire** 119:8 160:23
**despite** 57:3
**detail** 62:7
**detailed** 27:23 32:23
146:2
**determination**
15:22 24:25 41:24
82:4 85:1 111:15
114:19 115:18
118:19 128:12
150:1
**determinations** 25:2
121:25
**determine** 143:14
147:1
**determined** 14:9
32:16,18 33:9
54:17 114:12
115:12
**determines** 124:9
128:4
**determining** 123:13
**develop** 115:16
**Devlin** 77:6 79:2
92:11,22,24 93:8,8
**Dewsnup** 135:20,25

**dialogue** 144:19,22
**DIANA** 7:14
**differ** 78:16 142:20
**difference** 20:6 56:3
103:18 125:2
**different** 59:23 71:5
74:13 76:8 77:7
90:16 91:10,11
96:9 97:6 129:11
134:21
**differently** 118:23
134:22
**differs** 141:20
**difficult** 16:24,25
80:21 155:24
**difficulty** 15:23
**diligently** 107:11
**DIP** 2:11 106:1,1
107:22 108:19
122:14 153:10,11
153:13 154:2,9,12
154:12,22 155:4,5
155:10 159:17
**dire** 131:15
**direct** 105:25 158:3
**direction** 109:10
**directly** 108:11
136:17
**directors** 24:25
**directs** 126:20
**disability** 42:4,11
78:10 80:5 113:13
113:14 123:14
130:19
**disabled** 41:25 42:8
**disagree** 56:11 58:7
92:13 121:1
**disagreement** 13:11
103:25
**disaster** 121:5
**disclosed** 67:19
**disclosure** 42:7
58:14 79:21,23
80:14 84:2
**disclosures** 67:19
80:20 83:2,23

**discrete** 86:9 139:16
**discretion** 49:3,20
50:1 123:4
**discretionary**
106:15 107:20
109:1 118:19,21
119:2,12 122:18
**discuss** 8:15 27:23
27:25 39:24
**discussed** 14:16
29:15 31:10 35:15
81:12,13
**discusses** 34:4 71:10
**discussing** 21:14
33:1
**discussion** 35:10,24
36:10,13 64:7
69:25 135:24
**discussions** 29:4,20
29:23 30:11 31:19
36:2,4 53:18
105:25
**disease** 38:10
**disincentives** 156:11
**disposes** 22:12
**disproportionate**
74:23
**dispute** 67:6,7 98:14
117:24 120:23
137:18,22 161:24
**disputed** 79:4 95:14
**disputing** 14:3
**dissent** 62:15
**Dist** 137:7
**distinct** 103:21
**distinguish** 64:3
**distinguishable** 75:9
**distributed** 135:14
**district** 1:3 60:11
62:2,16 93:5 103:2
103:10 137:6,12
137:16 142:15,17
149:11,12 150:8
**docket** 8:11,25 9:4,8
9:17,18 126:3
147:15 148:4,5

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 178 of 205

12

149:8 151:11,12
160:5,7,8 162:5
**docketed** 127:3
**doctors** 76:23
**document** 14:7,11
14:13 16:8,10
28:10 32:13,20
40:6 43:12 44:20
44:22 45:3 48:13
49:6 50:3,8 93:20
94:9 113:8 114:4,5
**documentary** 9:25
**documentation**
31:19 33:23 96:8
96:17
**documents** 2:11
10:17,23,24 11:1,7
11:14,16 12:13,15
13:1,7,8 14:3,9
15:9 16:11,13,19
16:21 17:13,13
18:16,19 31:20
33:24 34:16,21
40:16,20 43:13,19
43:24 44:25 50:11
50:18 77:10,16
82:10 84:2 90:9,11
90:12,23 91:3
92:17 93:13 94:22
95:8,14,19 108:12
113:9,11 114:2
116:7,8 118:1,14
122:23 123:1,14
131:8 138:4
140:21,24,25
141:5,8,9,10,14
142:23 143:16,19
143:21 163:17,22
163:23
**doing** 20:23 61:16
71:8 79:17 101:14
108:6 109:4 120:7
120:9 125:19
160:11 161:3
**dollar** 67:9 146:4
**dollars** 26:8,15,16

26:20 31:6 36:23
53:16 54:7 70:23
105:7 108:25
122:18 145:10,22
148:16,24 154:4
159:6
**Doskicil** 81:19 89:9
89:10,18
**Doskocil** 57:11,19
61:11,23 64:14
65:3 136:18 137:5
138:1 140:1
**double-check** 67:22
**doubt** 79:4
**downs** 153:11
**Doyle** 6:7 9:7 32:22
33:1 53:3,3 55:3
55:14,20,24 56:14
56:18,25 57:6,9
59:17 60:5,14,18
60:21,24 61:5,7,10
61:18 63:3,7,11,22
63:25 64:10,19
65:11,15,20 66:1,5
66:8,11,16,19 67:5
67:11,14,18,22
68:2,10,20,23 69:2
69:4,24 70:5 99:8
111:22,23
**DPHOTM** 28:18
**drafting** 136:11
**DRAIN** 1:22
**drawing** 99:10
**drawn** 104:21
**Drexel** 57:8 64:13
64:19 65:2,8
137:25
**Drexel's** 72:13 138:2
**Drive** 4:4
**driven** 42:6
**DSRA** 14:7
**due** 37:24 38:21
79:11
**Duffy** 57:9
**duration** 27:15 68:8
70:11 76:21

**duties** 124:10
**duty** 86:25 106:8
126:14
**D.C** 5:21 10:8 25:17
**D.N.J** 137:8

---

E

**e** 1:21,21 4:1,1 5:1,1
6:1,1 7:1,1 8:1,1
45:23 102:8 132:8
163:2,4,15 164:2,5
165:2 166:2
**Eagan** 142:18
**earlier** 9:11 31:10
40:6,19 42:14 77:9
79:2 83:24 86:5
104:13 112:1
156:14 160:24
**early** 21:8 41:14,21
41:25 42:1 77:24
78:7,10 79:20,24
80:15,19 82:13
83:25 84:1 88:25
128:18
**earmark** 55:12
87:13
**earmarks** 87:12
**easier** 44:2
**easy** 136:9
**EBITDAR** 154:5
**economic** 28:8 29:24
31:2,7,8 35:20
75:15,15 105:9,17
105:25 106:11
119:7
**economically** 69:7,9
**economics** 54:13
56:5
**editor** 73:13
**effect** 54:8 81:22
120:7 150:7
**effective** 64:21
65:16,19 66:6 68:6
69:17 132:13
138:10 146:8
152:20 156:16

158:24,25 161:21
**effectively** 153:12
**effectiveness** 159:20
159:22
**effort** 150:11 151:4
**efforts** 17:8
**eighteen** 109:7
**eight-ball** 90:21
**either** 8:14,15 21:5
80:6 100:22
104:22 108:1
122:24 125:21
132:15 153:25
161:23
**either/or** 117:12
**elect** 21:1 35:7,9,11
35:18 88:6
**elected** 88:10
**election** 128:8
159:11,14
**elements** 154:17
**elevate** 135:2
**eleven** 129:12
**eligibility** 42:5,21
113:15
**eligible** 21:1 41:16
43:1 49:16 58:23
75:20
**eliminate** 36:22
37:13 49:9 52:7
54:3 58:17 145:21
**eliminated** 26:20
42:19 54:10
**eliminates** 34:14
**elimination** 26:4
54:19 58:19
**embodied** 159:17
**emergency** 10:9
125:9
**empathetic** 53:5
**emphasis** 78:17
**employee** 10:18 11:9
40:14,15,17 41:6
44:8,24 77:16
142:5 163:19
**employees** 3:2 28:12

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 179 of 205

13

31:6 33:25 41:9
42:10 62:17 77:19
78:12 79:3 82:11
84:3 85:10,14,16
86:11 110:11
113:24 123:17
130:16 131:14
146:16,25
**employee's** 117:13
**employer** 77:12,14
**employers** 73:11
**employer's** 77:10
**Employer-Paid** 2:20
2:21
**employment** 47:17
47:25 48:5
**enable** 29:12
**enacted** 60:4 61:15
99:9 105:2 139:2
**enactment** 99:20,21
**encourage** 85:20
88:18
**enforce** 150:11
**enforcement** 150:13
**engaged** 29:20,23
**Engagement** 2:24
165:15
**enhanced** 150:2
159:5
**enhancing** 134:16
**enjoy** 47:17,25
**enjoyed** 64:7 69:24
**enormous** 146:19
**entail** 28:6
**enter** 2:9,11,14
129:3 146:22
162:2 165:10,12
**entered** 134:9
150:14 152:18
158:25
**enterprise** 105:20
**enthusiasm** 121:13
**entire** 16:11
**entirely** 136:19
**entities** 8:14
**entity** 9:9

**envision** 127:10
137:1
**envisioned** 53:14
**equally** 135:14
**equitable** 53:22
69:20 74:15,19,21
75:1 141:19
**equities** 74:22 75:3
75:4 139:7,9
**equity** 97:14
**equivalent** 137:4
**ERISA** 74:5,6,8
82:15 118:4,12
130:13 139:21
143:15
**especially** 57:1
135:5
**ESQ** 4:7,8,16,24,25
5:7,15,23 6:7,15
6:22 7:6,14,18,19
**essence** 81:10
133:25
**essentially** 15:14
24:19 77:5 109:4
113:25 115:11,16
122:14 132:3
153:19
**establish** 33:3 78:4
96:18
**established** 97:5,5
**estate** 55:17 139:14
156:24 161:4
**Esther** 3:24 166:4,8
**estimate** 35:21,22
**estimates** 153:4
**estoppel** 80:7 85:13
93:5 118:9 141:19
142:24
**ET** 1:8
**evaluated** 118:22
**evening** 8:20 126:18
**event** 112:8 120:4,5
120:11,13,23
121:1 130:18
150:7
**events** 115:22 120:3

**eventually** 136:11
**everybody** 55:15
66:19 69:5 76:16
103:23
**everybody's** 58:15
**evidence** 9:25 10:1
12:25 15:8 16:14
18:16 20:8,8,12
22:19,23 23:7 78:8
81:1 82:19,21,25
89:19 90:11 91:1
94:20 106:4 110:7
115:24 117:24,25
141:1,7
**evidentiary** 9:20
11:3,20 17:24
23:20 24:18 31:10
45:18 52:18
114:17 115:16
117:22 151:13,17
158:12
**exact** 49:12
**exactly** 57:18 58:25
97:25
**examination** 15:20
22:20 24:23 25:12
35:3 36:18 39:2,17
41:1 43:5 46:3,14
47:2 51:18 152:2
163:5
**examine** 20:19 25:4
39:6 46:19 51:8
152:3 158:14,16
**example** 29:18
34:21 42:11 54:21
54:22 99:22
100:20 123:13
142:10,24
**exceeding** 145:6
**exception** 15:15
87:9,10 97:10
**excerpted** 16:13
**excerpts** 16:5,13
**excess** 26:7 105:7
145:22
**excuse** 9:25 12:14

94:14 140:24
**executives** 20:14
**executory** 100:21
117:6
**exercise** 54:18 55:2
58:10 59:11 105:5
117:18 143:7
161:3
**exercised** 116:20
**exercising** 59:5 60:2
118:16 119:4
136:15
**exhaustive** 52:22
**exhibit** 8:19 10:10
10:17 11:8,10,12
11:14,21,23 14:6,9
14:12,13,21,23
16:7,8 17:21,25
18:1,2,9 19:6,9,9
28:19 31:23 32:13
39:3 43:22 45:25
46:11,12 71:9 83:8
83:13 89:14 114:3
142:10 151:19,20
157:10 158:14
**exhibits** 9:25 10:2,2
10:3,19,20,22,23
10:25 11:1,6,17
12:2 14:16 15:3,3
16:3 32:1 89:17
94:17 106:6
108:10 148:5,8,11
151:15,15,16,17
151:24
**exist** 73:4 138:11,13
**existed** 12:7,22
13:17 73:1 142:7
**existing** 21:2
**exists** 11:24 71:6
122:25
**expect** 102:4,11
159:13
**expectations** 56:3
102:23
**expects** 69:5
**expenditure** 160:10

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 180 of 205

14

**expense** 27:12 38:8
  38:11 84:1 94:5
  103:5 107:16
  134:17 149:3
**expenses** 2:12 34:19
  70:21 101:4 109:1
  122:18
**expensive** 72:4
  75:22,23 88:8
**experience** 38:14
  44:23
**experienced** 55:11
**expert** 18:17
**expertise** 143:24
**expiration** 60:25
  61:25
**expire** 76:2
**expired** 61:22 62:5,9
  62:21 63:4,14
  72:24
**expires** 64:4
**explain** 152:17
**explore** 144:25
**explored** 88:1
**exposure** 107:17
**express** 57:20
**expressed** 30:16
  58:9
**expressly** 33:7
**extend** 72:16
**extended** 52:24
**extensive** 82:14
**extent** 18:14,15 20:5
  21:17,18,22 72:12
  75:8 133:9 161:23
**extreme** 146:9
**extremely** 109:12,13
  122:11
**eye** 78:19
**eyes** 40:16
**e-mailed** 90:6
**e-mails** 14:2 16:24
  30:17
**E.D** 137:10

————————————
            **F**
————————————

**F** 1:21 140:17 166:2
**Fabricators** 137:8
**face** 75:13
**facing** 28:8 75:14,14
**fact** 14:3 19:20
  20:16 21:5 27:9
  49:19 56:12,16
  59:21 66:13 71:4
  73:14 77:2,15
  78:11 79:5 80:10
  82:13 86:16 89:13
  89:19 104:13
  105:1,23 109:14
  110:3,4,7,20
  112:20 114:2,9,18
  115:1 116:5
  118:21 119:11
  124:16,24 130:19
  132:21 140:10,22
  144:6,20 147:1,5
  154:13 160:21
**factors** 151:2,2
**facts** 13:6 27:14
  75:10 114:25
  116:24
**factual** 74:4 77:1
  80:5 81:13,14
  90:23 132:17
  143:1,12,14
**factually** 115:6
**failsafe** 156:21
**failure** 15:24
**fair** 53:22 69:19
  70:25 74:14,18,21
  75:1 76:12 99:23
**fairly** 52:22 82:14
  92:23 143:5,6
  155:9
**faith** 17:8
**fall** 136:9
**falls** 145:13
**familiar** 44:21
  118:15
**families** 35:20
**Fane** 6:2 23:8 53:4
**far** 19:2 36:4,4

44:22 46:9 55:6
  67:19 80:6 90:16
  93:13 113:25
  124:22 125:2,7,16
  142:10 145:11
  146:24 149:2
**Farella** 5:2 15:13
  41:3
**Farmland** 99:3
  137:13
**fashion** 74:8
**favor** 59:19 73:10
  89:9 91:16 139:9
  150:8
**favorably** 64:14
  137:5 138:1
**favored** 74:22
**favoring** 139:7
**favors** 66:25
**faxes** 16:24 76:9
**feasible** 105:23
**February** 1:18
  154:13 155:16
  166:15
**federal** 12:24 16:14
  54:9 65:12 71:16
  72:2 119:21
  121:23,25 124:1
  133:25 134:4,13
  134:20 137:2
  145:1
**Federated** 62:1
**fee** 137:17,22 145:7
  157:24
**feels** 100:11
**fees** 2:12 154:18
  157:7,19,21 158:7
  160:10
**Feifer** 77:7 79:3
  92:11,24
**fell** 55:11 64:5
  131:18
**felt** 98:12
**Fidelity** 48:2
**fiduciaries** 127:25
**fiduciary** 86:25

106:8
**Fifth** 7:3
**fifty** 72:3
**fifty-five** 121:3
**fifty-four** 16:8
**fighting** 87:17
**figure** 60:13
**figured** 54:1
**file** 23:16 24:16 84:7
  84:8 100:17 101:1
  157:2,3
**filed** 8:12,14,18,20
  9:4,8,14,15 22:25
  23:8,16 24:16
  25:17 36:25 79:10
  90:9,10 96:6,13,13
  97:3 98:8,21
  134:18 136:4
  144:18 148:5
  149:1,8,10,16
  155:25 156:17
  160:6,7
**filing** 3:12 32:10
  73:2,5 139:6
  155:17 157:1
**filings** 110:4
**final** 19:15 22:6,8
  114:19 128:17
  161:25
**finally** 20:13
**financed** 53:19
**financial** 27:2,3 36:9
  53:19 67:19,20
  69:16 105:8
**financially** 107:19
**financing** 109:17
**find** 37:5 48:21
  69:19 71:3 76:10
  95:13 99:15 103:2
  106:13 112:23
  113:1,1 115:14
  122:3
**finding** 66:25 96:17
  150:3
**finds** 139:8
**fine** 44:18 45:12

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 181 of 205

15

53:2 126:7
**finish** 24:20
**finite** 145:3
**firm** 23:9 25:16
56:20 157:14
**firms** 160:25 162:3
**first** 8:9 9:24 19:9
20:23 23:25 24:4,7
24:8,22 25:20
27:21 29:3 45:22
50:21,21 66:16
70:8 73:9 79:2
81:16 84:18 89:6
89:25 94:3,7,24
97:2 98:3 104:5,6
119:25 132:4
133:3 142:2
144:12 147:9
148:13 153:1
157:18
**FISHER** 7:24
**fit** 61:24
**fits** 94:25 125:15
**five** 8:13,24 72:4
126:8 129:13
147:15 148:6
**fixed** 53:9
**flag** 86:10
**Flannagan** 57:19
**flat** 38:13
**flight** 74:25
**flip** 124:16
**FLOM** 4:2,11
**flow** 70:21 107:5
125:7
**focus** 61:15 129:11
**focused** 155:9
**focuses** 136:24
**focusing** 63:17
**foldout** 94:11
**folks** 53:7 87:18
121:2 147:16
**follow** 110:21
112:24 116:25
**followed** 94:22
**following** 143:20

**follow-on** 71:20
121:7
**force** 76:16 150:7
**forego** 35:19,23
38:12
**foregoing** 166:4
**foreseeable** 145:19
**forever** 87:7 97:23
**form** 2:2 90:1,10
96:14 111:7 130:3
130:7 144:2
**formal** 144:17
**format** 16:21
**formation** 23:3 89:3
95:25 96:7 128:25
**formed** 9:11 79:10
97:15 98:4,5 106:2
111:16,16 155:5
**former** 131:14
**forming** 127:12
**formulate** 29:25
69:16
**formulating** 53:11
**forth** 28:11 100:9
131:19 132:15
140:4,7 142:12,23
143:15 145:15
150:24
**fortieth** 8:5
**forty-five** 134:11
**forty-two** 105:13
119:12
**forum** 110:2
**forward** 61:14 70:13
70:19 95:23
128:19 159:5,15
**fought** 119:12
**found** 57:23 59:10
76:14 89:5 97:19
133:11 150:8
**foundation** 18:12
21:24
**four** 19:8 42:1 78:8
82:13 103:20
**fourth** 95:10
**fraction** 70:24 73:16

**frame** 40:22,23 90:9
**framework** 72:15
75:11
**Francisco** 5:5
**frankly** 75:10 79:18
83:21 86:7,14
102:22 103:6
108:9 109:16
110:3 116:11
119:9 121:12
124:1 127:1 134:3
154:4
**fraud** 118:6,8,11
**free** 20:9,19,23 86:1
147:23
**freely** 118:18
**Freidman** 160:25
**Friday** 155:17
159:14
**FRIEDMAN** 6:18
**friends** 30:15
**front** 15:20 25:21
47:10 51:22 56:5
94:7
**fulfilling** 144:11
**full** 17:18 58:14 80:5
83:17 126:2 150:7
**fully** 24:8 135:19
**full-fledged** 81:14
**functionally** 53:13
**fund** 72:7 75:7 109:5
**fundamental** 118:20
133:20 135:19
140:5
**fundamentally**
136:7
**funding** 67:8 146:4
**funds** 87:12
**further** 12:16 17:7
22:3 29:7,10,25
34:25 36:15 40:24
43:4 50:25 52:13
52:19 89:3 91:5
138:13 150:10
**future** 19:21 71:12
82:12 92:10

145:19
**F.2d** 62:8 136:20
**F.3d** 77:6,7 135:12
141:12 142:14

**G**

**G** 7:14 8:1 164:20
165:5
**game** 135:8
**gamut** 69:15
**GAO** 15:4 17:19
164:11
**gap** 75:20 103:14
**Gebbia** 20:9 37:20
38:1 39:2,6,13,19
41:3 43:7,11,24
44:19 49:9 94:10
113:13 163:9,10
163:11
**Gebbia's** 18:2 19:8
19:16 20:7,14,24
21:7 22:9 31:16
34:4 164:10
**gee** 80:22 84:5
**general** 2:15,17
10:21 12:4,8,23
13:17 16:6 17:2
32:5,9,14,20 33:8
33:9 34:5 36:2
39:25 40:9,14
41:10 50:7,12,18
50:23 85:13,16
90:24 107:18
108:19 113:4,6
114:8,10,20,21
115:1,11 116:6
122:15 135:2
141:11 153:9
154:22 155:20,21
155:22
**generally** 21:21
33:22,23 53:9 74:8
125:11 134:13
136:8 139:15,21
140:4 143:11
146:18

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 182 of 205

16

**generate** 31:5
**generous** 56:1
**genuine** 79:4 89:12
**getting** 43:19 75:17
75:22 88:12
122:14 148:18
**give** 20:1 81:5 82:21
83:25 87:4 99:18
114:3 115:3
123:17 126:8
128:16,18 135:3
138:17 143:13
**given** 22:2 57:7
59:24 76:21 77:23
78:17 79:3,5 87:2
105:19 116:14
122:11 123:9
124:19 126:22
133:22 134:14
140:16,18,23
141:12,24 143:11
143:24 145:25
147:7 151:1
157:21
**gives** 31:6 67:15,24
75:12 102:18
117:17 123:4
124:9
**giving** 31:4 65:24
82:14 102:23
128:8 142:22
145:5 146:25
**global** 119:18 154:5
**Gloster** 5:7 9:13
15:12,13 16:17,17
17:22 18:11,11
19:12,17 21:13,17
22:11,15 35:1,4
36:15 41:2,3 43:4
70:7 72:20 73:6,9
73:20,23 74:16,20
75:4,21 79:1 80:8
80:13,18 81:7,9,16
82:1,6,9,22,25
83:8,11,13,19
84:12,16,22,25

85:9,12,16,20,23
87:14,17,20 88:3
92:18,22 93:1
95:18 112:4,12,14
120:18,21 163:7
163:10
**GM** 14:22 16:20
32:16 35:25 36:1
36:11,12 41:6
43:17,20,4 44:7 52:3
54:8 71:9 75:13
76:10 77:21 78:12
79:19 80:1 83:1,24
83:25 85:10 91:16
94:5,22 113:25
141:9,20 142:5,7
143:22 151:12
158:10,11,25
159:2,11 164:9
165:13
**go** 13:4 17:10 20:11
33:12 36:7 39:15
39:24 42:10 44:14
45:10 53:8 54:25
58:1 59:15 71:22
73:3 80:22 88:22
93:19 99:5 102:23
102:25 103:4
105:8 107:5 113:1
115:16 126:11
128:14 132:14
135:9 138:13
144:21
**goes** 20:7 59:19
62:23 65:18 83:23
91:5,7,10 92:5
99:7
**going** 13:4,11 14:11
20:9 23:7 24:11
44:13,14,22 45:19
53:19 54:2,3,25
58:11 61:14 65:21
69:12 70:2,3,13,19
70:22 71:24 72:11
76:15,17,19,23,24
78:7,8,8,10,13

80:1,9,10,15 86:14
87:6 88:13,16
93:15 102:25
110:1 114:16
119:19 120:5
121:24,25 122:1
128:4,12 129:13
147:7 153:25
154:1 156:1 157:3
161:6
**good** 8:3 15:12 17:8
25:14,15 39:19,20
41:3,5 43:7,8 47:5
47:7 51:21 53:3
54:25 60:10 65:24
86:4 98:7 100:4,5
145:14 146:11
158:19
**goodness** 56:7
**GOTSHAL** 7:2
**gotten** 96:8 109:24
127:3 152:25
**governed** 130:20
139:16,21 141:25
**government** 54:9
71:16 72:2 122:4
**government's**
121:23,25
**grant** 116:20 145:11
149:5
**granting** 2:2 123:10
146:22
**great** 51:24 56:20
105:24 144:1
**Green** 1:15
**grew** 136:3
**ground** 88:22
**grounds** 11:22 12:5
16:4,10
**group** 5:11,19 6:3
9:1,1,2,5,6 12:12
25:2,17 30:19
41:23 53:5 74:23
74:24 78:22 89:18
95:9 96:9 97:8,10
97:12 114:10

123:13 127:4
139:16 143:17
**groups** 8:14 18:23
96:16,18 97:2,4
110:6 111:25
113:20 125:20
131:24 144:1
147:5
**guarantee** 90:13,14
**Guaranty** 121:11
**Guardian** 142:16
**guess** 67:3 78:20
82:15 96:20
125:10,23 158:17
**guidance** 140:16
**G-E-B-B-I-A** 39:14

**H**

**h** 131:3 163:15
164:5
**hackles** 61:9
**half** 34:22 55:21
108:25 122:17
153:2
**halfway** 54:3
**half-time** 106:5
108:10
**halyard** 86:10
**hand** 25:10 67:16
123:2
**hang** 90:18
**hangs** 54:14
**happen** 20:25 54:6
86:23 87:6 121:21
**happened** 79:12
83:24 114:13
153:12
**happening** 76:22
**happens** 15:22
71:14 85:25
**happy** 17:1 67:1
**hard** 61:13
**hardship** 28:6 35:14
35:20 75:14
**harm** 74:23
**harmonize** 138:19

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 183 of 205

17

**harsh** 28:7 75:15,15
**hat** 54:14 90:18
**headed** 9:5
**headquartered**
84:24
**headquarters** 21:22
141:24
**health** 2:21 15:5,6
15:24 17:20,20
19:23 21:2 27:11
38:15 42:18,20,20
48:12,24 49:17
53:9 54:22 71:16
71:17,23 72:3
77:13 79:14 86:18
87:15 88:7 121:4,9
121:14 128:16
130:13 132:10
134:2 136:3
140:12,19 164:13
164:14
**healthcare** 83:2,14
83:17,25 90:25
94:3,4,18
**hear** 24:7,8
**heard** 12:10 22:21
23:25 24:4 39:5,23
43:11,15 93:24
94:6 99:4,12 102:1
119:22 144:16
156:22
**hearing** 2:3 8:5 11:5
11:7,10,12,14,16
14:21,23 15:2 18:1
19:5 24:2 32:21
39:3 89:4 90:14
97:17 98:15
128:17 132:2
139:5 147:3,10,17
147:22 148:11,14
148:20 151:24
152:22 163:16
164:6
**hearsay** 11:22 12:5
12:18,20 13:2,18
15:16 18:15 20:10

21:24
**heart** 58:7
**held** 57:20
**help** 15:21,22 53:21
54:20 55:1
**hesitate** 60:17
**Higgins** 5:11 8:25
9:2 12:11
**high** 67:16 88:15
**highlighted** 73:21
**hindsight** 105:17
**hire** 125:1
**historical** 27:14
**history** 33:12 75:11
99:14 114:22
135:25 140:2
**Hogan** 4:8 8:4
**hold** 120:1
**holding** 67:16
141:21
**HON** 1:22
**Honor** 8:3,6,9,11
9:19,24 10:7,12,16
11:2,19 12:10,11
12:24 13:8,25 14:6
14:15,25 15:7,12
15:17 16:2,17,22
17:11,22,23 18:6
18:11 19:7,12,17
20:5 21:6,13 22:6
22:11,18,21,23
23:4,11,12 24:15
24:20,22 25:6
28:15 32:11,22
33:18 34:10,12,25
35:1 36:16 37:17
39:1,7,16 40:24
43:23 44:3,10,15
45:9,15,17,22 46:6
46:8,20 47:8 49:24
50:25 51:2,6,9
52:13,15,17,19,21
53:3,5 55:3,14,24
56:14 59:3,9,13,17
60:5,14,18,24
61:18 63:3,7,22,25

64:7,19 65:15,20
66:5,11,16 67:11
67:18 68:2,10,21
69:24 70:7 71:9
72:8,20,20,23 73:7
74:20 75:10,15,22
76:20 77:1 78:5
79:1,9,15,19,25
80:3,13,18 81:2,9
81:16 82:1 83:11
83:13,20,22 84:12
84:25 85:12,21,23
85:24 86:7,21
87:14 88:3,18,21
88:25 93:16,21,25
94:6 95:6,10 96:7
96:23 97:13 98:1,6
98:7 100:4,9 101:5
101:19,24 104:12
106:23 107:8
109:8 110:7,18
111:22 112:4,17
114:5,24 116:25
117:15 119:4
120:13,19,21
121:12,15 124:3
125:24 126:10,17
126:19 127:6,13
127:17,18,21
128:4,20,23 129:2
129:7,9,16,18,19
129:21,24 147:12
147:14 148:3,12
149:6,6 151:1,6,9
151:9,14,20,25
152:8,17,18
154:25 156:10,17
156:19,25 157:11
157:14 158:9,9,20
158:22 159:15
160:4,4,11,20
161:8 162:4
**Honor's** 9:21 22:15
70:8 101:6 109:24
126:2 129:8 151:1
154:16,20

**hope** 122:3 129:17
**horse** 23:5 24:1
112:19 124:19
**hospital** 130:17
**Howard** 135:15
**huge** 104:21
**human** 75:13 100:10
**human/emotional**
119:8
**hundred** 159:6
**hundreds** 16:23
31:5
**hurt** 54:20
**hurting** 75:23
135:10

**I**

**idea** 122:21 129:20
**identification** 11:8
11:11,13,15,17
14:21,24 17:21
19:6
**identified** 133:4
144:20 145:1
**identifies** 89:13
**II** 2:1,11,16
**III** 2:2
**Illinois** 4:5 5:13
**illusion** 76:13
**imagine** 61:13
**immediately** 81:5
**impact** 27:25 28:3
58:21
**impacting** 28:12
**implement** 128:3
146:24
**implementation**
129:4
**implication** 153:6
**implicit** 133:2
**importance** 143:12
146:9
**important** 17:5 57:7
85:24 98:13
108:15 118:4
122:11 149:20

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 184 of 205

18

150:15 155:21
157:1
**importantly** 142:2
152:23
**impose** 35:20
**imposed** 35:14
124:12
**imposing** 125:25
**improve** 153:19
**improvement**
156:23
**inaccurate** 20:3
**inapplicability**
32:23
**inappropriate** 103:6
**inarticulate** 105:16
**incentives** 156:10
**inception** 33:25 34:1
**inclination** 125:17
**inclined** 24:5 129:3
**include** 92:6 128:6,7
**included** 91:1 98:24
154:24
**includes** 71:18,19
114:6 134:7
**including** 18:24
23:14 49:25 59:24
60:11 69:5 93:3
106:5 107:12
108:13 130:13
140:25 142:16
146:10,23 148:6
150:2,11,12
151:18 153:7
155:22
**incomes** 53:9
**incomplete** 14:8,8
**inconsistent** 19:18
100:19
**incorrect** 82:4 97:22
132:19
**increase** 107:18
**increased** 159:4
**incredible** 115:15
**Indiana** 149:12
150:8

**indicate** 30:13,23
103:10 107:10
141:1
**indicated** 111:5,14
112:6,18
**indicates** 108:12
126:18 155:19
**indicating** 160:8
**individual** 19:18
117:11 140:6
144:10
**individuals** 42:8
124:25 131:17,22
131:24,24,25
147:5,5
**induced** 93:2
**inducement** 146:15
**Industries** 137:13
**industry** 76:22
122:1 153:2,7
**inefficacy** 143:20
**ineligible** 88:13
**infer** 61:16
**inference** 99:10,19
**inferences** 104:21
**informal** 118:13
**information** 13:10
97:18 108:17
117:23 130:1
**informed** 18:23
**infringement**
149:14,25 150:3,5
**initial** 127:11 146:23
146:24
**initially** 95:22
**injunction** 150:13
**injunctive** 150:4
**input** 29:12
**inquiry** 126:22
**insolvent** 74:11
**instance** 89:6
**instructions** 125:18
**insurance** 2:22 15:5
17:20 42:10,14,22
48:24 49:17,18
54:6 58:24 76:3

80:9,11 130:13
135:16 142:17
164:13
**insure** 75:24
**integrated** 68:4
**intended** 58:14
62:24,25 63:2
64:21 118:13
155:15
**intense** 144:1
**intent** 57:20 58:9
**intention** 112:6
140:4
**intentions** 56:7
**intents** 137:3
**interest** 29:24 31:2,7
31:8 105:10,11,17
106:1,11 134:6,20
135:7 139:4 140:6
**interested** 134:23
**interesting** 57:25
89:10 90:21 91:22
140:15
**interests** 9:3,7,12
53:17 134:20,22
**interim** 125:9
132:16 149:2,5
**intermediate** 34:18
**internal** 31:19 71:15
**interplay** 140:18
**interpret** 135:23
142:7
**interpretation** 48:17
64:11 68:16 73:10
104:18 106:9
132:6,20 133:22
133:24 137:22
138:14,15 140:9
**interpretations**
104:25
**interpreted** 134:12
138:8
**interrupted** 67:25
**interruption** 134:8
**intimation** 62:24
**introduce** 18:17

39:23
**introduced** 79:7
94:24 117:25
**intrusion** 139:11
**intrusions** 139:13
**invested** 65:13
**investigation** 97:20
125:19
**investment** 25:2
87:5
**Investor** 2:25
**invite** 27:21
**involve** 148:21
**involved** 38:15
60:25 62:3 99:24
100:10 134:23
**involvement** 143:5
143:25
**involves** 122:4
130:15 136:21
149:9
**involving** 74:25
129:14
**Ionosphere** 102:16
**irrelevant** 33:16
114:18
**irresponsible**
109:15
**IRS** 71:20,23 121:6
**issuance** 142:3
**issue** 22:13 23:5,15
44:11 59:21,24
60:12 65:2,8 69:8
69:10 73:19,21
77:1 79:5,13 80:11
81:11,12,13,14,15
81:25 85:3,13 86:9
88:6 89:2,4,13
91:7,10 98:1,3,22
102:3 104:1 105:4
107:1,21 108:7
111:10,16,21
114:9 115:9
121:10 123:5
124:18 125:3
129:10,14 133:3,3

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 185 of 205

19

133:7,11 136:13
136:16,17 137:4
139:19 140:15,15
141:18,23
**issued** 10:21 64:12
**issues** 18:24 29:12
30:21 53:9 84:10
104:14 108:13
109:12,14 122:7
123:22,22,23,23
125:22 129:16
130:3 143:12
145:12 155:18
157:18 160:15
161:17
**items** 15:1 127:21
128:2 151:15
152:9
**IV** 2:3

**J**

**Jack** 8:3 47:4 51:20
**Jan** 137:8 142:19
**January** 142:4
152:19 153:4
154:16 155:1
158:24 160:22
**Jersey** 137:7
**job** 66:20 118:7,10
118:11
**John** 4:7 51:15
151:19
**joining** 41:7
**joint** 10:2 53:18
**JOLEE** 7:6
**JORDAN** 7:24
**judge** 1:23 57:3,5,9
57:13,19,23 59:10
62:16 64:12,13
72:21 90:13,20
92:4 93:22 99:25
110:24 111:5
127:14 134:14
137:15,25 138:5
147:24
**judges** 60:10,11

72:21 91:15 99:12
114:25 149:4
**judgment** 25:3
35:17 36:22 37:12
54:19 55:2 90:2
100:12 105:6
108:25 116:19,19
117:9,18 118:16
118:17 119:4,6
122:11 136:10
145:15,20,24
146:11 150:11
160:10 161:3
**judicial** 103:5
104:18,24 114:19
**July** 149:20 150:20
**June** 86:2
**jurisdiction** 63:8
**JUSTICE** 7:9
**justifies** 58:19
**justifying** 59:5
**J-O-H-N** 51:15

**K**

**Kan** 136:18
**Kansas** 57:11,12,12
**Kaplan** 6:18 160:25
**Kayalyn** 4:16 8:4
**keep** 54:18 63:4
86:18 119:12
155:9
**keeping** 67:1
**Keith** 148:7 151:19
**key** 56:3
**kick** 123:9
**kicks** 66:14 125:6,11
**kind** 35:21 56:7 62:6
74:6 88:15 100:18
155:24
**knees** 67:2
**knew** 61:16 72:23
**know** 13:3,19 14:2
28:13 31:25 32:8
34:7 38:10,10
44:21 48:17 55:14
55:25 58:23 59:1

60:10 62:10,19
63:7 65:2 66:22
67:4 72:8 73:11
79:7 80:21,22,23
81:20 91:11 92:2
95:4 97:1 99:9,15
102:2 106:24
109:24 110:19
113:14 118:1
120:11,12 122:8
124:6,8 126:2
129:7
**knowledge** 20:18
21:23 27:8,16
42:16 43:3 146:3
**knows** 104:23,24

**L**

**l** 57:25 60:13 164:20
165:5
**lack** 18:12 105:21
**laid** 139:12
**land** 148:21
**language** 40:2 44:19
44:25 45:3 57:14
57:14,22 63:18,19
77:20 78:6,18,24
79:5,16 82:10 83:6
83:19,20 92:22,25
93:13,21,22 94:15
94:23,24 97:11
114:6 115:1 124:8
129:3,6 130:21
132:4,12 133:19
133:22 141:4,8
142:7,9 143:16,18
**large** 37:23 43:25
94:11 97:8 109:6
110:5,6
**largely** 107:16
**late** 127:3
**lately** 99:15
**Latham** 4:19 157:15
**Lautzenhiser** 2:6
149:7
**law** 19:21 20:2 21:5

23:18 25:16 32:25
32:25 56:20,25
68:20 74:21 75:8
77:12 78:15 84:10
84:13,23 85:4,8,18
85:19 89:12 91:8
92:11,20 115:17
122:25 132:23
133:6,9,15,25
134:20 136:25
137:20 141:18,18
141:22,25 142:20
**laws** 135:20
**lawsuit** 149:12
**lawyer** 48:11
**lawyers** 125:1 127:4
**lay** 18:18 19:18
110:19
**lead** 25:17 146:20
**leading** 114:14
133:6
**leave** 86:1 147:23
149:17
**leaving** 59:21 81:10
125:10
**led** 155:12
**left** 41:24 56:7
100:24
**legal** 18:16 19:18
20:3,13,17 50:2
79:13 82:4 99:10
99:21 119:7 122:9
124:5,11 143:4
145:12
**legally** 53:13 99:18
99:18 121:2
**legislation** 61:21
**legislative** 15:15,18
75:11 99:14
135:25 140:2
**legitimate** 87:9
138:13
**lender** 153:23
**lenders** 2:11 54:17
106:1,3 107:22
108:11,19 122:14

152:20 153:10,13
154:9,12,19,22
155:4,10 156:9,15
159:17
**length** 35:15 132:1
133:7 141:23
**lengthy** 54:16
**letter** 11:21 14:20
71:22 160:17
161:8,11,18
163:24
**letters** 30:17 157:9
**let's** 43:22 58:16
59:2,5 75:13,25
76:20 77:1
**level** 34:22 69:10
**leverage** 66:10
76:18
**LEXIS** 137:7 142:17
**liabilities** 106:15
118:21,22 119:2
**liability** 26:4,20
36:22 37:13 67:9
105:6 118:19
145:21 150:1
**license** 145:8
**lieu** 121:7
**life** 2:22 42:10,14,22
47:18,25 48:6,12
48:21,24,25 49:15
49:17,22 52:8 54:6
58:24 62:25 76:3
80:9,10,24 99:24
109:25 142:16
**lifetime** 77:9,13
79:19,20,22,24
80:2 83:2,17,25
90:25 93:14 94:5,7
94:19
**life-threatening**
76:25
**Lifland** 57:3 134:14
**lifted** 149:23
**light** 92:17 119:16
133:19 146:11,14
160:2

**limit** 111:24 126:24
127:5
**limitation** 134:7
**limitations** 21:15
134:5
**limited** 9:14,17
18:20 21:14 75:12
98:9 99:2 125:19
129:20 135:13
138:18 149:24
**limits** 58:24 126:19
**line** 29:3 30:5 61:11
61:14 89:9 140:1
164:21 165:6
**lines** 32:12 109:6
**lingering** 70:22
**liquidation** 72:22
**liquidity** 36:6
107:11,14,22,25
108:14 122:8,12
122:12 152:24
153:7,18 154:6
159:4,5,12
**list** 28:21
**listed** 26:7
**listing** 89:14
**literally** 126:5
**litigated** 114:12
**litigating** 85:17
**litigation** 2:7,25
149:9 150:5,12,17
151:2
**little** 8:12 38:8 88:4
89:22,23 91:5
132:23
**LLC** 2:6 5:10
148:15,23 149:8
166:10
**LLP** 4:2,11,19 5:2
5:18 6:2,10,18 7:2
**loan** 153:11
**loans** 154:2
**locate** 17:12,15
**located** 89:5 93:12
**locomotive** 59:7
**logic** 143:14 144:6

**long** 13:23 14:12
21:14 133:3
**longer** 13:2 37:12
53:8 153:22
**look** 25:21,25 27:11
27:22 28:17 29:18
30:4 40:9,12,18
43:22 47:14 56:21
62:5,7 65:22 72:13
72:14 74:20,23
76:5 77:3 79:2,7
81:7 83:22 89:8
90:19 94:17 98:1,3
119:6 123:14
151:3
**looked** 32:8 33:4
40:15 64:1 90:19
91:2 93:21 99:14
111:3 157:17
**looking** 31:19 33:21
40:21,22 46:11
63:1,21 84:20 85:5
85:6 91:11,21,24
93:16 94:21
127:18
**looks** 58:19 105:22
159:22
**lose** 43:13 79:18
85:3 87:7,7 97:23
97:23 121:3
**losing** 91:6
**lost** 69:21 87:5
**lot** 76:18 77:25 86:9
91:13 93:6 120:11
127:11
**Louis** 6:5 53:4
**lowered** 69:15
**lowering** 58:24
**LTV** 60:17,24 61:4
61:12,18,22,23,24
62:3,7 63:13,14
64:1,3 136:4,5
**LTV's** 62:25
**luck** 92:14

———————
**M**
———————

**M** 5:7 163:4
**magically** 65:6
**magnitude** 106:15
**Magnolia** 148:15
**mail** 145:12
**mailed** 43:19
**main** 56:11 96:9
102:21
**maintain** 69:10
70:14
**maintained** 115:14
131:11 140:13
**major** 105:1 135:23
153:13
**majority** 59:19
104:8,9 110:21
112:24 133:11
134:13 140:9
**making** 22:25 52:23
**man** 15:19 55:15
**management** 7:23
29:7,10,13 109:24
125:7 131:18
**mandatory** 123:3
**MANGES** 7:2
**manner** 2:3 126:24
**maps** 94:11
**Marafioti** 4:16 8:4
**March** 35:18 38:9
128:11,18 144:16
147:3 148:14,19
148:20,20 155:21
156:22 157:2
**marching** 125:18
**Mark** 7:18 45:23
46:25
**marked** 28:18
**market** 55:11
**markets** 105:21
**Marsh** 142:18
**Martel** 5:2 15:13
41:4
**Martin** 90:20
**match** 20:4
**material** 89:13
91:24 107:23

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 187 of 205

21

117:24 119:23
150:25
**materials** 10:20,21
11:12 15:15,19
16:20 28:4 90:25
163:21
**math** 67:23
**matter** 1:6 8:9,21
10:12 13:4 15:9,17
17:2,24 19:3 21:5
22:9 32:24 38:19
50:2 89:12 92:1
99:21 108:24
109:14 119:11
130:15 132:17
138:9,16 143:5
146:20 148:4
149:7,7,23 151:10
151:11 160:5
**matters** 8:6 9:19
24:19 147:22
156:12 157:5
160:22
**McGrath** 46:14 51:4
51:6,11,15,20,22
52:6 163:13
**McLennan** 142:18
**McTigue** 5:18 10:8
25:16
**MEAGHER** 4:2,11
**mean** 12:20 28:19
38:2 48:8 55:16
56:15 60:16 63:10
63:12,20 66:9
69:17 78:18 85:7
93:8 101:10,10
105:18 111:19
114:23 117:12
124:6 144:17
**meaning** 22:4 114:9
**meaningful** 133:9
**means** 70:16 75:16
76:1,1,3 136:8
**meant** 105:18
**measure** 130:11
**measured** 109:8

**mechanism** 160:13
**Medicaid** 75:20
**medical** 2:7 10:9
20:1 42:10 79:20
79:22,24 100:23
130:17 149:10,13
149:14,18 150:9
150:12,14,19
**Medicare** 42:21,25
49:16 58:23
**medication** 75:18
**medications** 76:24
**meet** 69:15 132:15
144:5 153:17
**meeting** 155:6
**member** 18:21,21
**members** 89:15
**membership** 89:14
**mention** 34:21 40:6
41:15
**mentioned** 41:6
95:18 98:12
**mere** 77:15
**merely** 145:4,9
**merit** 139:20
**merits** 145:6
**met** 10:1 143:1
**me-too** 103:21
**Michael** 4:25 157:14
**Midwest** 56:21,24
**miles** 57:12
**milestone** 155:16,21
159:10
**milestones** 153:17
155:3 156:7
**Miller** 18:5 24:24
25:5,14 33:2 35:5
36:8,20,21 37:18
39:23 75:24 86:3
101:15 106:10
107:10 109:13
113:6,7,8
**Miller's** 17:25 18:6
18:8,21 19:5 146:3
164:16
**million** 26:8,15,16

26:20 70:23
108:25 122:17
146:5,6 148:16,22
154:3 159:6,6
**millions** 31:5
**mind** 40:22,23 87:9
100:19 124:18
157:11 158:4
**mindful** 147:14
**Mineola** 166:13
**minimal** 88:15
**minimum** 131:19
154:6
**mining** 63:15
**minute** 8:16 105:10
114:4 147:15
**minutes** 126:5,9
157:18
**misinterpretation**
65:3
**Missouri** 6:5 57:13
137:12
**misstates** 19:21 20:2
**mistake** 49:6
**mix** 53:21 124:22
**mixed** 95:15,16
**mixture** 71:3
**model** 69:16
**modifiable** 19:21
66:15 74:18 131:8
132:18,25 136:22
138:21 139:19
141:5
**modifiable-at-will**
124:21
**modification** 52:4,6
58:7 64:5,21 65:13
69:11 77:17
118:12 131:5
132:12 138:3
139:9 149:8
150:15 151:5
**modifications** 29:25
105:23 107:23
108:23 116:9
139:25 154:23

155:25 159:18
**modified** 48:16 49:9
49:19 57:21 58:2
68:25 74:10
132:11 139:5
149:23 154:8,24
155:17
**modify** 2:5 31:13
40:3 49:2 52:3
57:16,17 60:7
62:14 64:2,5 68:16
70:17 72:11 78:6
83:21 84:4 112:7
113:12 120:22
130:11 131:1
132:22 138:24
139:22 140:11,12
140:19 141:14
143:23 144:15
165:7
**modifying** 34:21
81:6 120:9 134:1
145:15 146:10
155:3
**moment** 80:4 81:19
81:20 104:6
107:16
**moments** 20:20
104:7
**Monday** 72:22
**money** 54:24 55:2
55:12 76:13 86:4,9
87:2,4,18 97:19
109:5 146:10
153:20 154:1
**Monroe** 5:12
**Montgomery** 5:4
**month** 9:11 36:7
97:17 108:16,16
121:13 122:16,16
**monthly** 83:18
161:19
**months** 86:4,12,17
86:18 96:7 97:18
105:14 109:7,8
119:12 146:18

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 188 of 205

22

153:25
**Moore** 118:15
**morning** 8:3 15:12
22:7,22 25:14,15
39:19,20 41:3,5
43:7,8 47:6,7
51:21 53:3 99:4
100:4,5
**motion** 2:1,5,9,14,19
2:24 3:5,6,8 8:10
8:13,23 9:11 23:2
23:8,8,10,15,17,24
23:25 24:3,4,6,7,8
24:12,14 25:3
32:10 37:7,8,21
45:18 47:5 69:25
79:10 88:19 90:10
96:4,6,11,12,13,22
96:24 97:2,3 98:9
100:10 105:15
110:8,11,12,20
116:14 117:4,7
119:11 120:4
123:11,22 130:9
131:14,16,17,21
132:21 139:4
141:4 143:2,12
144:13 145:11,16
146:22 148:5
149:1,8,17 151:11
151:12 152:1
154:19 158:10,12
158:22 160:2,3,6
161:2,5 164:22,24
165:7,9,12,15
**motions** 22:24 23:3
23:14,16,21,22,23
24:5,17,19 37:1
151:14,18,21
**Motors** 2:15,17
10:21 12:4,8,23
13:18 17:12 32:5,9
32:14,20 33:8,9
34:5 36:2 39:25
40:9,14 41:10 50:8
50:12,18,23 85:13

85:16 90:24
107:18 108:19
113:4,6 114:8,10
114:20,22 115:1
115:11 116:7
122:15 141:11
153:9 154:22
155:20,21,22
**Motor's** 16:6
**move** 11:2 14:17
22:19 95:24
109:16 128:19
144:4 148:8
151:20 155:16
**moved** 56:18 96:3
**moving** 109:9
112:17 148:3
155:23 159:15
**multiple** 49:25
**mystified** 124:2
**M-A-R-K** 46:25
**M-C-G-R-A-T-H**
51:16

_____

**N**

**N** 4:1 5:1 6:1 7:1 8:1
163:2,4 164:2,20
165:2,5 166:2
**name** 25:14,18
39:12 43:9 46:24
47:4 51:14,20
88:21
**names** 89:15
**narrow** 65:7
**narrowly** 135:15
**nature** 42:7 151:1
156:18 157:21
**necessary** 29:11
53:23 69:20 87:23
105:15 125:5
148:18 160:9
**need** 54:13 67:8
69:16,18 76:23,24
78:17 98:3 99:5
109:21,23 112:22
115:15 119:16

124:6 126:7 128:3
128:5,9,9,17
130:19 133:12
138:10 145:20
146:1 155:25
161:14
**needed** 116:8
**needs** 23:9,22 36:22
69:19 159:11
**negoti** 66:2
**negotiate** 65:1 66:7
66:10,15 68:14
70:20 71:1 76:12
156:12
**negotiated** 68:11
71:20 108:5
**negotiates** 121:7
**negotiating** 53:11
125:20 154:22
155:1 159:13
**negotiation** 86:10
155:12
**negotiations** 67:17
159:15
**never** 43:15 52:11
52:12 86:23
**new** 1:3,16,16 4:14
4:14,22,22 6:13,13
6:20,20 7:4,4,12
7:12 137:2,6,7
140:5 166:13
**news** 88:4,4
**nicely** 123:24
**Nicholson** 5:19 6:3
9:5,6 25:18 53:4
**night** 152:6 156:18
**ninety** 10:2
**ninety-seven** 152:19
**non-bankruptcy**
132:23 133:15
136:25
**non-union** 89:15
**normal** 27:13 134:8
**North** 6:4 137:10
**note** 92:4 104:17
110:22 127:20

146:25
**noted** 89:11,11
90:23 133:2
137:23
**notes** 133:15 138:8
**notice** 3:5,10,12
13:9 16:23 38:17
78:22,23 79:17
80:25 110:10
125:14 131:16,18
139:4 142:6,8
143:4,20 146:25
**notices** 2:3 128:16
**noting** 92:7
**notion** 125:12
**notoriety** 61:12
**notwithstanding**
57:22 101:15
130:14,25 132:11
141:4 143:9,16,18
143:19
**number** 8:11,25 9:4
9:8,17,18 10:4
14:10,10 28:20,25
32:5 39:3 46:15
86:12 100:14
103:20 114:3
137:5 142:14
144:1,1 148:4
151:10
**numbers** 14:7 26:7
26:24 58:18
**numerous** 137:23
**NW** 5:20

_____

**O**

**O** 1:21 8:1 163:4
166:2
**object** 14:12 16:10
158:5 160:9,15
**objected** 10:17,19
10:21,22,24,25
11:21 14:8 15:2
16:3,14 20:24
114:16 131:21
**objecting** 10:14

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 189 of 205

23

23:11
**objection** 9:4,8,14
  9:17 11:2,5 12:5
  12:18,20 13:18
  16:3 17:24 18:7,7
  18:12 19:8,9,12,14
  20:7,10,11 21:6,11
  21:13,18 22:2,7,8
  22:12,25 24:1,3,9
  24:12 25:17,18
  32:11,12 34:23
  44:10 49:24 50:4
  88:25 89:13 90:9
  99:2 102:25
  112:15 151:22
  161:22
**objections** 8:12,13
  8:15,18,19,21,22
  8:25 18:1,3 23:25
  24:17 31:11 37:1
  98:21 116:15
  117:22 127:2
  131:23,23 132:1,3
  149:1
**objectives** 122:12
**objector** 16:12
  143:25
**objectors** 10:3,24
  11:16 23:14 45:18
  52:17,24 53:4
  87:11 99:5 106:24
  113:8 116:2 118:7
  132:3,24 133:23
  136:22 138:5
  139:1,10 141:16
  144:1 145:2
  163:23
**objector's** 125:14
**obligated** 63:15 68:8
  70:12 87:3 157:2
**obligation** 62:25
  89:6 102:5 111:9
**obligations** 20:16
**observations** 142:2
**observe** 99:9
**observers** 147:21

**obtain** 77:15 105:8
**obvious** 90:18
  147:20
**obviously** 15:19
  19:2 21:4 24:12
  56:2 64:6,19 66:8
  69:21 89:9 126:23
  128:23 154:17
  157:8
**occasionally** 91:1
**occasions** 160:24
**occur** 36:5 38:18
  123:15
**occurred** 38:7
  114:21 150:20
  161:1
**occurring** 27:15
**occurs** 153:24
**October** 94:4
**odd** 138:16
**offer** 12:17 15:18
  54:5 58:4
**offered** 10:24 15:3
  16:5,11 45:19
  47:17
**offering** 15:18 21:8
  49:7
**office** 7:10 129:4
**Official** 3:1,6,8
**Oh** 46:7 51:23 91:25
  126:11
**Ohio** 62:2
**okay** 8:2,8 9:23
  10:11,15 11:5 12:1
  12:9 14:5,14 15:11
  16:1,16 17:6,14
  19:13 20:21 22:1
  22:14 23:24 24:21
  25:4,7 33:17 35:2
  37:16 38:20,23
  39:5,8,15 40:25
  42:23 44:6,16 45:6
  45:9,13,14,16,21
  46:16,18,21 47:13
  48:23 51:1,3,3,7
  51:10,17,21 52:16

52:20,25 53:1
  56:10 68:22 69:23
  70:2,6 73:8 83:16
  83:16 85:22 87:16
  88:20,24 92:3
  93:23 94:8 100:3
  101:21 102:13
  103:13,16 110:17
  112:3,16 124:5
  129:22 130:9
  147:11,13 148:1
  148:10 149:2
  151:22 152:7,13
  152:16 157:6
  158:1,21 159:19
  159:24 160:16
  162:1,6
**old** 13:2,23 14:4
  17:12 166:11
**older** 13:23
**omnibus** 8:5 24:17
**once** 12:25 54:9
  58:18 60:2 68:18
  77:12 87:6
**ones** 91:16 97:7
**ongoing** 144:22
**on-will** 102:18
**OPEB** 8:10 10:16,18
  11:7,9 21:2 29:10
  31:5,12,22 34:13
  34:15 40:4 66:14
  67:10 130:12
  132:18 138:9,13
  145:15,21 163:17
  163:18
**open** 112:21 136:15
**opened** 64:8
**opening** 9:20
**operating** 159:25
  160:21
**operative** 104:18
  159:9
**opinion** 18:17
  137:14 142:3
**opportunity** 103:8
  110:2 147:2 160:9

**oppose** 102:20 109:4
**opposed** 19:3 60:3
  83:6 112:12
  139:23
**opposing** 73:13
  120:25
**opposition** 79:11
  157:12
**option** 63:5
**options** 128:8
**oral** 52:24 104:4,12
  114:24 133:3
**orally** 132:2
**order** 2:9,14,19 3:13
  8:7 22:25 23:11,12
  23:16 36:22 52:2
  59:10 69:17 70:1
  89:25 105:8 111:4
  115:12 119:17
  123:3,10 126:14
  127:9 128:2,4,5
  129:2 130:5
  131:18 145:23
  146:22 147:2,8
  150:24 151:8
  161:5,7,14 162:2
  164:22
**ordinary** 138:23,24
  160:21
**organization** 79:9
**organized** 30:19
**origin** 136:2
**original** 44:1 51:25
  61:4,12 110:20
  157:16
**originally** 43:25
  96:13
**originals** 44:4
**Orion** 116:22 117:6
  117:6 119:5
  125:15 140:17
**Ormed** 65:16
**ought** 79:3,8 80:3
  86:8 87:2 102:11
  102:23 110:21
  154:7

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 190 of 205

24

outbreak 38:10
outcome 35:10
outlier 115:4
outline 151:17
outlined 88:1 147:4
 154:19 157:8
outside 29:13 135:1
 143:2
overnight 110:15
overridden 138:21
override 63:19,20
 65:12 122:25
 140:4
overrides 107:2
overriding 133:25
overrode 132:8
 143:21
overrule 50:4 61:17
 104:23,24
overruling 139:25
o'clock 130:1 144:17

**P**

**P** 4:1,1 5:1,1,15 6:1
 6:1,22 7:1,1 8:1
package 42:1
page 16:8,9 26:1
 27:23 28:17 71:10
 83:11,13,14 94:1,2
 163:5,16 164:6,21
 165:6
pages 16:7,9 76:9
paid 97:19 101:17
 101:18 153:14
 154:1,20 156:9
 157:8
pain 100:10 103:4
painful 102:24
papers 52:22,25
 53:1 59:9 96:4
 98:12 99:6 100:1
 107:10 110:19
paperwork 128:8
paragraph 17:25
 18:4,8 19:10,15
 21:7,10,12 22:3,5

22:8,12,16 26:1,3
 27:22 29:18 30:3
 31:9 41:15,20
 43:10 47:14,15
 52:1,2 83:5 94:6
 133:8 157:25
paragraphs 18:1
parameters 147:4
parse 106:18
part 24:2,13 36:13
 54:5,23 64:24 72:9
 98:10 118:20
 120:2,24 121:8
 127:8 144:12
 150:15 155:18
 161:9
Partial 2:16
participant 42:21
participants 127:12
participate 113:15
 113:20
participating 2:10
 144:3 152:20
 153:23 156:15
particular 27:12
 29:11 38:9 58:1
 99:16 104:1
 119:11 125:19
 130:2 151:2
particularly 31:20
 62:15 104:24
 123:23 127:19
 133:19 134:14
 141:19
parties 8:18 18:24
 21:4 62:23,25 63:1
 63:24 69:20
 105:25 108:5,17
 117:6 118:24
 133:5 135:7 137:1
 140:6 155:24
parts 76:9 104:18
party 117:3 134:23
 139:4 152:2
party's 144:10
passed 53:14 73:6

73:14
patent 2:7 149:9,25
 150:5,11
patents 149:14
path 155:10
Pause 13:21 25:9,23
 31:24
pay 2:12 19:24
 57:15,17 60:7
 63:13,16 64:2
 71:17 76:24 83:17
 87:3 88:9 102:5
 107:5 131:1
 153:11,21 154:18
paying 52:8 75:16
 75:17 88:16
payment 2:16 37:23
 38:20 68:7
payments 37:25
 38:4 42:25 64:16
 71:11 130:16
 131:5 159:7
payout 66:21
pays 72:2
PBGC 71:14
Pearl 93:4 142:16
pendency 64:23
pending 2:7 128:25
 149:11 154:20
pension 71:12,14
 121:11,16,20,22
pensioners 128:14
pensions 43:13 72:1
 122:2,5
PENTWATER 7:23
people 18:15 41:14
 41:19,23,25 42:3
 42:25 55:22 56:2
 56:23 72:4 75:19
 75:22 76:6,9,23
 77:22 78:9,11,22
 80:4,8 82:12,16
 86:12 91:11 95:20
 97:11,21,23
 100:16,22 101:12
 101:15 102:11

103:20,20 105:19
 114:19 115:15
 126:6,25 144:3
people's 109:5
percent 19:24 71:17
 72:3 152:19
percentage 35:6,11
perfect 134:6
perform 26:23
performed 35:5
performing 154:15
period 26:17 54:16
 65:14 68:8 70:15
 72:16 77:14 81:22
 90:8 101:17
 103:14 107:4,4
 112:9 113:5
 128:10 138:18
 139:6 146:7,7
 153:14
permanent 42:4,11
permissible 99:19
 139:24
permission 9:22
permit 53:23 56:9
 69:20 117:9
 131:12 140:19
 143:5
permits 134:6 139:3
permitted 130:5
 138:2 153:22
permitting 132:12
 134:25 136:13
 146:23
person 37:19,25
 123:6,7
personal 21:23 27:8
 27:16 44:7
personally 26:25
 93:20
perspective 90:4
 102:22 115:23
 117:16
pertained 141:8
pertaining 141:19
petition 62:13 132:9

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 191 of 205

25

134:18 139:6
**ph** 57:13 65:16
148:15
**photocopies** 16:13
**phrase** 81:4 105:10
**pick** 38:13
**picked** 37:22 38:19
**Pictures** 140:17
**piece** 99:17
**Pittsburgh** 134:24
**place** 27:10 54:18
62:12,13 72:1 86:1
90:14 97:17 98:17
116:10 119:13
146:16 147:1
**placed** 14:18
**places** 29:16
**plain** 57:13,14,22
133:18,22
**plainer** 60:8
**plainly** 60:6
**plaintiffs** 149:16,24
150:8,16 151:5
**plan** 2:25 10:16,18
11:7,9,21,25 12:3
14:20,22 18:10
20:2 26:17 29:12
29:25 31:20 32:5,9
32:13 33:20,22,24
34:6,7 39:25,25
40:7,9,12,13 42:9
42:20 50:2 53:11
55:3,4,7 63:13,13
64:14,15,15,18,20
65:1,4,6,18,21,23
66:10,14 67:8,17
67:25 68:4,6,13,17
68:18 69:13 71:10
71:12,20,23 72:7
75:7 76:20 77:10
77:16,21 81:22
82:10 86:15 93:19
105:23 106:21
107:1 108:23
114:11,20 115:2
115:19 118:12

120:24 121:7,11
122:23 123:1
124:1 125:5 131:8
132:4,14 133:14
138:2,3,3,4,10,10
138:11,12,13,24
140:12,12,13,20
140:21,24,24,25
141:8,8,14 142:5
142:23 143:16,18
146:8 154:23,24
155:17,25 159:18
161:21 163:17,18
163:24 164:7
**plans** 20:15,16 31:12
31:13 32:16,17,17
32:18 33:6,7,10,11
33:14 49:9 53:18
58:10 77:9 83:24
90:19 94:21
100:12 113:5,7,11
113:12,16,16,18
113:19,20,21
114:7,14,14 115:2
115:10 117:10
118:13 120:8,9
130:13,13,15
131:7,10,11
132:10 138:18,20
139:17,19 140:24
141:3,5,5 142:7,22
143:17 146:16
**plants** 35:25 36:3
**play** 156:1
**plead** 59:4
**pleading** 98:9 100:7
144:18
**pleadings** 121:16
**please** 25:8,10,25
29:9,19 31:23
43:22 47:12 148:1
**pleased** 156:14
160:11
**pledge** 129:19
**pocket** 100:25 135:9
135:10

**pockets** 55:18
**podium** 70:5
**point** 29:3 33:13
45:5,7 50:18 55:7
56:11,19 59:23
71:18 72:23 73:2
73:17 80:5 82:8
84:18,19 87:19
88:2 90:7 91:12,14
92:16 93:10 94:10
95:1 97:14 98:1,14
99:19 101:14
102:14 103:1
104:15 106:21,25
107:7 108:15
109:5 110:10
111:18 114:7,24
116:14,24 118:16
119:21,22 121:16
125:10 133:18
136:22 137:6
139:1 144:14,23
155:4 156:20
158:4 159:10,23
**pointed** 75:19
104:12 118:23
133:5 137:18
138:5
**points** 104:4 157:24
**policies** 42:17 98:17
**policy** 54:8 140:3
**Porter** 5:18 10:8
25:16
**portion** 99:11,12
**position** 13:5 59:19
66:24 89:10 97:16
100:8,15 101:6
102:15 103:9
104:10 121:1
130:14 137:24
140:1
**positions** 61:8
108:12
**possession** 36:3
131:4
**possibility** 36:3

123:10
**possible** 100:18
130:4
**post** 2:21 66:6 86:19
102:20 136:23
**Postretirement** 2:21
**post-bankruptcy**
134:6
**post-effective** 68:12
69:8
**post-petition** 58:5
**post-termination**
102:15
**post-1998** 129:12
**potential** 36:1 53:16
150:2 154:23
159:16
**potentially** 58:22
133:16 139:15
**poverty** 59:4
**power** 54:23
**powerful** 94:7
**practical** 10:12
15:17 17:2 72:21
76:20 86:12
**practice** 135:24
**pre** 62:12 66:5 132:8
**preceding** 32:20
139:6 144:18
**precipitously** 153:3
153:5
**preclude** 144:9
**precluded** 136:14
**predate** 141:10
**predates** 34:1
**predecessor** 137:2
141:9,20
**predecessors** 141:2
**prefaced** 66:9
**prefer** 45:11
**prejudge** 24:5 81:14
81:25
**preliminary** 145:11
**premise** 116:21
**premised** 125:11
**premises** 118:17

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 192 of 205

26

**premiums** 19:25
71:17
**prepared** 27:2 82:2
129:8
**preplan** 65:14
**preplanned** 146:7
**present** 18:3 45:20
45:22 48:23 80:25
129:25 131:7,13
152:1 158:12
**presentation** 27:23
28:7
**presented** 27:4
89:18,19
**presenting** 24:23
32:23
**presently** 100:23
155:19
**preserve** 87:23
119:17,18 120:17
121:14 138:10,12
**preserved** 112:9
161:15
**preserving** 119:17
122:12
**pressure** 55:22
**pressures** 55:16
**presumed** 104:17
**presumes** 56:11
**presumption** 135:13
**pretty** 23:18 77:24
78:18 101:18
106:25 122:22
123:7 127:4
**prevailing** 104:17
**prevent** 54:21
**previously** 42:14
**pre-bankruptcy**
60:2 146:7
**pre-Chapter** 81:22
**pre-code** 135:23
**pre-confirmation**
138:18
**pre-dated** 115:2
**pre-effective** 68:17
**pre-petition** 58:3,5

63:23 84:14,20,21
85:6 87:5 107:3
133:25 136:25
138:4 139:12
**pre-plan** 107:4
**pre-Sprague** 117:24
118:1
**price** 148:22
**primarily** 146:2
**principals** 133:20
**principle** 139:12
140:5
**principles** 132:5
135:19
**prior** 23:2,22 32:9
36:11 38:7,7 40:12
72:24 80:1 94:4
99:24 101:17
102:5 132:13
142:7 146:8
**priorities** 135:15
**priority** 102:10
106:12 135:7
**private** 71:22
**pro** 8:18
**probably** 48:15 58:3
90:6 94:25 95:1
99:23 116:4
123:16 147:20
157:3
**probative** 116:12
**problem** 73:23
108:24 119:20
**problems** 122:6
**procedural** 23:11
**procedure** 147:1
**procedures** 2:1
133:12 164:24
**proceed** 33:2 37:8
**proceeding** 9:21
23:1 89:1 117:8
125:16 134:23
**proceedings** 33:16
140:17 162:7
166:5
**proceeds** 32:13,14

**process** 24:13 58:11
58:15 62:14 65:5
69:2,12 72:12
74:11 76:18 81:5
86:17 95:23 96:17
98:24 102:20,24
103:1,5 105:3
120:25 121:8
124:7 126:25
127:10 132:15
144:21 148:13
160:14
**processes** 128:7
**produce** 14:2
**production** 153:3,4
**professionals** 18:24
**proffer** 23:4 45:9
46:14
**proffered** 44:23
**program** 19:23
27:10,15 35:17
41:15,21 52:7 72:8
75:7 78:7 82:13
**programs** 20:4
21:14,18,20,21,23
31:12 42:1,15
49:20 77:24,25
80:19 98:17
121:22 145:15
**prohibiting** 60:1
**projected** 26:3 31:6
145:21,22 146:6
**projection** 27:14
**projections** 27:9,19
53:19 154:6
**promise** 78:18 79:8
80:6 142:23
**promised** 90:24
141:2,3
**promises** 97:9
141:20
**promissory** 78:19
80:6 83:6 93:5
118:9 142:24
**promptly** 144:4
147:9

**prongs** 119:3
**proof** 78:4,14
**proper** 138:15
**properly** 116:20
117:7 138:6
146:13 147:5
**property** 134:19
161:4
**proposal** 18:22
**propose** 8:7
**proposed** 3:12 10:2
34:13 53:21 148:7
148:16,16,25
159:18 161:5
**proposing** 148:19
149:22
**proposition** 89:25
93:9
**protect** 54:24 66:13
72:9 76:19 86:11
97:20
**protected** 62:18
71:13
**protecting** 73:3 75:5
**protection** 2:2 58:5
60:19,21 61:22
62:18 64:17 72:7
75:12 148:24
**protects** 70:10 76:4
**prove** 90:1 118:7,10
118:11
**proved** 56:3
**provide** 31:12 39:1
48:1 49:17 58:20
59:7 68:6,9 69:7
70:12 80:9 107:13
108:17,21 109:17
111:4 118:2 122:8
122:23 147:2
155:6,7 160:13,14
161:19
**provided** 24:24
27:18 29:13 33:23
53:7 61:1 64:15
72:6 80:10 83:17
84:2 94:5 105:13

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 193 of 205

27

109:17 114:4
131:2,16 148:6
157:9 161:20
**provider** 38:6
**provides** 75:7
107:24 130:24
159:3
**providing** 49:14,16
58:22 71:25
108:18 109:6
122:12 130:15
**provision** 40:19
54:11 99:9,16
128:6 130:25
134:3,9,11 138:21
139:1,10,18,24,25
**provisional** 144:16
**provisionally** 128:5
**provisions** 49:2
134:5 138:19
**proviso** 17:7
**publicly** 156:1
**pull** 55:17 159:4
**purchase** 148:7,22
148:25
**purchased** 35:25
**purchaser** 148:16
**purpose** 13:14 19:1
36:11 103:11
123:12 134:15
149:24
**purposes** 11:4 57:21
85:2 110:8 121:9
130:22 137:3
149:21
**pursuant** 100:17
138:24 139:3
**pursue** 143:6
**push** 128:13
**pushed** 106:9
**put** 49:6 75:13 78:8
80:25 86:7,7 91:12
92:1 105:22 113:8
113:19 116:10
117:23 127:21
140:15 153:15,23

**puts** 24:1
**putting** 13:9 23:1,4
23:7 124:18
**p.m** 127:15,15
147:25,25 162:7

---

**Q**

**qualified** 71:17,18
88:7,14 121:4,9
148:18
**qualifying** 88:12
**quantification** 150:1
**quarter** 159:8
**quarterly** 38:20
**question** 33:2,17
35:1 36:10 37:19
38:1,3 42:23 50:5
50:6 64:12 73:24
74:1 80:3,13 86:21
89:12 95:3 109:20
112:21 126:12
129:10,11 133:15
158:18
**questioning** 32:12
**questions** 25:19 33:3
34:25 36:15 40:24
43:4 44:12 45:20
47:9 50:25 52:13
70:9 72:12 89:7
104:3 125:15
126:18 158:15,17
**quick** 86:9 126:18
127:10,11
**quickly** 86:14 130:3
**quit** 49:7,16
**quite** 131:25
**quote** 104:17
**quotes** 115:7
**quoting** 130:21

---

**R**

**R** 1:21 4:1 5:1 6:1
7:1 8:1 164:20
165:5 166:2
**radical** 73:10
**raise** 25:10 86:10

161:15
**raised** 24:2 61:9
87:11 98:22
**rapidly** 126:24
**rate** 27:11 54:1
**reach** 12:16 16:24
16:25 21:19 76:8
90:6
**reached** 11:20 12:15
13:13 14:16 15:10
78:1 156:4
**reaching** 41:16
42:21 155:10
**reacted** 61:4 136:11
**read** 22:2 29:9 45:4
48:11,14,15,16,16
57:14 63:8,18
92:13,19,20 93:24
94:6 96:4,20,25
99:20 111:5 114:5
114:23,25 115:5
115:8 139:20,23
**reading** 61:23 78:16
**ready** 147:16
**real** 58:12,12 69:8
119:20
**realities** 146:15
**reality** 28:8 75:9,15
75:15 79:15 119:7
119:7,8,15
**really** 20:7,11 22:1
59:25 61:24 62:8
62:23 63:18 78:20
78:21,24 83:24
87:4 88:6 92:14
98:10 99:7,13
100:11 101:12
105:12,18 115:4
116:14 118:6
122:5 125:6,10
**reason** 24:7 64:24
69:4 71:8 72:6
89:1 99:16 102:21
103:4 114:16
134:21 156:17,24
**reasonable** 35:16

120:23 158:8
**reasonableness** 27:9
**reasons** 66:3 79:16
84:9 88:18 90:18
102:21 140:8
**rebutted** 95:14
**recall** 33:21 36:13
40:4,11,21,22
42:22 43:24 50:19
50:20,22
**recalls** 160:20
**receive** 50:11 61:12
**received** 11:7,10,12
11:14,16 14:20,23
17:21 19:5 27:23
47:16,24 48:3
50:14 148:11
150:21 151:24
152:19 156:14
158:25
**receiving** 3:2 50:22
**recess** 127:15,18,19
129:25 147:15,25
**recipient** 79:23
**recipients** 131:4
**recitation** 90:23
**recognize** 31:1
138:20 143:4
146:19
**recognized** 105:1
155:19
**recommend** 74:7
**recommended** 28:11
**record** 9:20,22 11:3
14:18 17:1,4,17
23:20 24:16,18,20
39:11 46:23 51:13
52:18 80:12,16,19
82:25 91:16,24
92:1 98:13 102:1
106:5,6 110:2,8
113:9 114:17
115:16 117:22,25
118:25 122:22
124:19,23 125:13
125:13 127:16,20

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 194 of 205

28

127:22 141:1,12
142:25 143:7,10
143:14 145:17,25
148:2 151:13,18
151:21 158:12
166:5
**records** 17:3 21:3
**redirect** 37:16 45:14
51:1 52:14
**reduce** 34:18 54:4
70:21
**reevaluate** 37:7
**refer** 9:1,5 130:12
**reference** 28:5 41:20
105:16,18 137:19
**referenced** 161:7
**referred** 134:11
**referring** 12:12
**reflect** 12:6 68:13
**reflected** 28:3 62:1
69:12
**reflection** 116:4
**reflects** 18:22
**regard** 16:18 17:19
18:24 41:23 59:13
59:20 61:1 69:11
112:4 140:16
143:15 145:4
164:12
**regarding** 18:9 21:8
22:9 80:19 98:10
**regards** 15:5
**regime** 56:12 81:21
81:24 116:17
125:25 131:6
143:10
**regrets** 119:10
**reimbursement**
130:16 149:3
**reimbursing** 130:15
**rein** 86:8
**reinforces** 29:13
**reinstate** 139:5
**reinstating** 54:21
**rejected** 137:11,14
**rejection** 61:19

**related** 2:11 38:6
137:17
**relates** 21:7 26:3
138:15
**relating** 149:15
**relations** 139:13
146:17
**relationship** 63:23
**relatively** 38:13
82:17 98:9 128:17
**relevance** 32:12,19
114:16
**relied** 136:19
**relief** 108:8 116:20
123:9 125:9
132:16 149:2,5
150:4,10,23
**relies** 18:14,15
57:11
**reluctant** 135:22
**relying** 92:15
**remain** 150:7
**remainder** 148:4
**remedy** 74:6
**remember** 43:19
50:15
**remembered** 47:8
**remind** 110:23
**reminded** 135:6
**reminds** 63:7
**renew** 36:7
**renewal** 63:5
**rent** 75:17
**reopener** 63:5
**reorganization**
29:12,24 31:2
53:11,20,23 58:13
66:23 69:5,21
86:15 109:3 146:8
154:25 161:21
**reorganizations**
53:18
**reorganize** 105:22
145:23
**reorganized** 86:24
105:7 106:15,16

106:22
**repeat** 52:25
**repeatedly** 90:24
**reply** 8:20 24:17
**report** 17:19 106:5
108:10 155:3
156:14 160:11
164:11
**reported** 73:17
**reporting** 13:25
156:7
**reports** 15:4 154:12
154:13
**represent** 9:7 12:6
25:17 51:20 110:5
131:25
**representation**
121:21
**representations**
115:20
**representative**
24:10 64:25 127:4
130:4 131:4 143:9
144:9
**representatives** 55:5
130:7
**represented** 8:14,24
9:12 57:2 79:12
95:10 98:11 110:5
111:23 126:25
**representing** 9:3
16:23 20:25 73:12
111:14
**represents** 14:10
26:19 76:6 127:4
157:11
**request** 126:22
130:19 131:7
**require** 20:18 24:10
63:13 147:8 154:1
**required** 24:11 89:2
104:10 111:17
124:17 132:7,10
150:9 153:10
154:11
**requirements** 108:2

132:15 133:13
140:14 154:7
156:7
**requires** 67:18
134:21
**rescue** 54:8
**research** 126:18
**reservation** 20:22
32:17 33:10 34:8
40:19 44:19,25
48:8 49:1 50:13
57:4 58:3 59:5,11
68:24 91:1 92:6
93:13 113:10,16
113:22 114:6,15
115:7,13,13 116:1
124:3
**reserve** 31:12 83:20
84:3
**reserved** 31:21 33:7
40:2 58:9 82:3
111:16,21 161:16
**reserves** 33:8
**reserving** 77:10
**resetting** 154:5
**resolution** 154:9
161:25
**resolve** 30:20 77:8
**resolved** 16:3 33:14
**resources** 103:6,6
135:14
**respect** 3:5 12:2
14:6 16:22 19:10
19:22 22:12 37:2
40:18 42:17,18
43:10 45:18
102:14 103:19
108:6 111:9
119:10 149:23
150:17,23 151:25
152:2,9 157:19
158:11,13,22
160:22,25
**respectfully** 82:3
95:6
**respects** 141:19

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 195 of 205

29

**respond** 52:24 70:8
  90:5
**response** 8:23 9:11
  24:16 37:1,4 98:9
  103:11 110:20
**responses** 23:15
**responsibility** 36:1
  36:12
**responsible** 20:14
**rest** 47:18,25 48:6
  48:12,21,25 49:15
  49:22 52:8 99:6
  100:1 147:21
**Restani** 62:16
**restoration** 56:6
  62:3
**restore** 54:13 58:2
**restored** 62:20
**restrict** 138:22
**restrictive** 142:21
**restructure** 28:9
**restructuring** 71:10
**result** 90:16 95:5
  118:12 134:21
  150:3,18
**results** 123:12
**retained** 131:25
**retaining** 78:6
**retention** 2:24 160:6
  160:22 161:1
  162:2 165:15
**retire** 41:14 42:4,11
  78:9 79:20 84:1
**retired** 3:1 41:12
  62:11 78:1,11,13
  80:5 123:14
  130:16
**retiree** 3:2,6,8 15:5
  17:19 23:9 34:13
  38:15 42:19 53:8
  53:24 54:13 55:4
  57:16,17 58:14,17
  58:19 59:2 60:7,18
  60:21 61:1,20,21
  62:1,4,11,18 63:16
  64:2,16,22 68:7

69:6 70:17 74:10
  75:6,16 76:5 80:14
  90:15 91:2 97:8,23
  110:6 112:2
  116:16,23 117:3
  130:22 131:2,10
  132:6 133:14
  144:6 164:13
**retirees** 3:5 5:3 9:1,5
  9:10 11:22,24 12:4
  12:8,23 13:10,17
  14:22 15:14 16:5
  16:23 19:24 21:1
  23:10 28:1,3,7
  30:11,13,16,18,18
  30:20,23,25 31:1
  35:6,11,14 36:21
  42:15 43:10,12
  53:6,15,21 54:12
  54:24 55:1,13 56:4
  56:5 58:10,12,18
  58:21 59:6,12 61:8
  64:18,25 65:21
  66:12 67:1,15 68:4
  68:11 69:18 70:25
  71:12,24 72:3,9
  75:12 76:8,15 78:1
  79:13,18 80:20,22
  82:12 83:24 85:1,2
  86:18,22 87:7 88:8
  88:9 89:11,16,18
  90:6,7,24 95:11
  98:2,24 102:23
  103:7 110:14
  111:25 114:10
  115:20 120:10
  121:3,14 127:5
  128:8 132:25
  139:16 143:8,17
  144:7,20 146:12
  146:17 164:9
**retiree's** 117:11
**retirement** 2:22
  21:8 41:15,16,21
  41:25 42:1,6,12,19
  77:24 78:7 79:24

80:15,19 82:13
  89:17 92:6 94:16
  94:17 133:14
**return** 55:9,10 150:9
**Revenue** 71:15
**revested** 86:24
**review** 27:5 119:5
  123:11 127:20
  133:21 143:13
  160:3,9,14,15
  161:19
**reviewed** 8:17 53:1
  157:16
**reviewing** 14:9
  116:18
**reviews** 31:18
**revised** 3:12 86:15
  100:18 154:6
**revive** 62:9
**revolver** 153:22
**rewritten** 73:11
**re-borrow** 153:21
**re-litigate** 115:10
**re-noticed** 156:22
**ride-along** 98:19
**Riela** 4:25 157:14,14
  157:25 158:2
  161:13,16
**right** 14:5,19 17:16
  18:10 20:1 23:19
  23:19 25:10 26:19
  31:12,21 37:19,25
  38:23 40:3 48:10
  48:13 56:14,18,18
  57:10 59:22 60:2
  60:20,23 61:5,7,10
  63:3,6,11 64:10
  65:11,18,24 66:4
  66:11 67:11,15,25
  68:1,10,15,19 69:1
  69:3 71:15 75:21
  77:11,18 78:6
  80:16 81:19,19,23
  81:25 82:3 83:1,21
  84:3,5,6,19 85:21
  85:22 89:20 90:3,3

91:1,9 92:6 93:1
  95:12,19,22 96:2
  96:14,19 97:2
  100:17,20 101:1
  101:23 102:9
  105:13 106:21
  107:2,7 109:22
  111:20 112:11
  114:11 116:23
  117:11,17,20
  118:3,10 119:19
  120:17 121:2
  122:23,25 123:16
  124:13 126:1,1,21
  127:25 128:15
  132:20,22 133:13
  134:4,12,14,15
  136:5 137:2
  138:22 139:19
  140:10,13,21,22
  141:14 142:11
  144:10 151:22
  152:13 156:3
  158:6 160:1,2
  162:1
**rightly** 139:10
**rights** 20:16,22
  32:17 33:7,8,10
  34:8 40:19 44:19
  44:25 48:9 49:2
  50:13 57:4,21 58:3
  58:8,9,11,17 59:5
  59:11,20 68:24
  77:21,22 82:14
  84:20 85:7 96:9
  97:6 113:10,17,22
  114:6,15 115:7,13
  115:14 116:1
  117:11,13,14,17
  123:8,24 124:21
  125:8,12 134:1,16
  135:7 136:15,25
  137:23 138:17
  139:17 140:6
  142:22 143:18
  146:12 161:15,16

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 196 of 205

30

**rise** 99:18 102:18
**risk** 58:21
**Road** 166:11
**ROBERT** 1:22 4:24
**rollover** 113:25
**room** 55:15 71:13
    119:9
**Rosenberg** 4:24
    9:15 100:4,6 101:5
    101:9,19,22 102:2
**Rosenberg's** 9:17
    101:25
**rosier** 56:2
**routinely** 47:16,24
    48:4,19 113:21
**Royalties** 137:10
**rule** 12:24 15:16
    16:14 18:16 77:5
    82:2 85:25 110:21
    112:24 116:22
    131:20 137:21
**ruled** 22:11,15 57:3
    57:13 91:16 98:24
**ruling** 22:16 24:13
    57:8 60:17 71:23
    84:17 100:19
    101:6 111:6 126:8
    129:8 137:17
    138:6 144:10,12
    144:16 147:4
**run** 27:11 53:25
    69:14,15 122:21
**running** 59:2
**runway** 107:14
    109:17 152:24
    155:7

**S**

**s** 4:1 5:1 6:1 7:1 8:1
    71:24 163:4,15
    164:5,20 165:5
**sacrifices** 76:15,17
**salaried** 5:3 8:10
    10:16,18 11:7,9
    15:14 31:6 33:24
    34:13 36:20 40:4

42:15,20 62:17
71:12 86:11 89:15
98:11,18,23
163:17,18
**salary** 9:9 21:2
**sale** 2:3,3 148:4,8,13
    148:15,20
**Sam** 88:16
**San** 5:5
**satisfied** 81:24 119:5
    145:14
**satisfy** 78:24
**save** 36:23 38:1 54:1
    70:23 146:10
**saving** 86:4
**savings** 26:3,7,16
    27:7,8 31:6 35:5
    53:16 146:5,6
**saw** 157:18
**SAX** 7:19
**saying** 37:11 66:9
    67:3,7,14 92:16,20
    117:13 124:5
    147:20
**says** 13:15 19:20
    21:20 26:15 29:19
    29:22 30:8 47:21
    57:15 64:1 68:2,5
    70:12 71:11 72:7
    72:14 73:25 74:9
    75:5,13,14 76:5,16
    77:13 82:10 83:1,5
    83:20 90:20
    104:17 120:22,25
**scattered** 73:15
**scenario** 55:8
**schedule** 76:1
**scheduled** 159:14
**scientific** 20:18
**score** 110:9
**se** 8:18
**search** 95:7,8
**searching** 121:17,19
**seat** 39:8
**seated** 8:2 148:1
**second** 20:21 29:6

32:25 62:7 77:5,8
77:12 78:15,19,25
79:6,9 80:2 84:6,8
84:10,12 85:19
90:2 92:11,19 94:6
94:21 107:7
118:14 121:6
122:25 128:11
135:6,11 137:18
137:21 140:15,16
141:17,17,18,25
142:13,20 149:17
149:19 150:21
**secondly** 66:19
    100:16 142:12
**seconds** 120:19
**section** 23:3 24:11
    37:2,5,8 42:9
    48:15 53:12 71:15
    73:25 94:17 95:6
    99:22 102:19
    130:10,20,21,22
    130:24 131:9
    132:4,8,20 133:13
    133:24 134:5,10
    136:2 137:3 138:6
    138:16 139:2
    140:14,18,20
    143:3 147:6
**Sections** 2:19 131:3
    164:22
**sector** 105:20
**secured** 135:3
**see** 22:4 29:3,3,6,19
    29:22,25 30:9
    43:22 45:3 46:7,11
    47:18 62:8 65:3
    76:23 78:20 79:16
    87:12,25 97:1,10
    103:4 111:3 122:2
    124:4,22 125:11
    134:23 135:15
    146:12 157:23
**seeing** 96:23
**seek** 17:4 43:1 56:6
    109:15 138:23

150:13,16 151:5
**seeking** 87:24
    105:22 108:8
    113:11 149:5,25
    154:8,17 155:2,6
**seeks** 28:8 54:10
**seen** 78:21,24 90:22
    91:12,13,17 97:8
**sees** 58:14
**SEILER** 6:18
**self-authenticating**
    16:19,22
**seller** 28:12 148:23
**send** 50:18
**sending** 76:9 131:16
**sense** 117:8 125:6
**sensitive** 109:13,14
**sensitivity** 34:17
**sent** 11:24 12:7,22
    13:10,17 16:20,24
**sentence** 20:21,23
    29:6 30:1,4,5 94:3
**sentences** 19:15 22:8
    22:10
**separate** 8:22 80:6
    157:9
**separately** 151:21
    156:22
**series** 156:6,9,10
**serious** 123:7 143:2
    143:3 146:1
**serve** 98:10 130:2
**served** 149:19
    150:22
**service** 135:16 144:8
**session** 58:16
**set** 28:11 32:25 37:4
    78:25 97:2 100:8
    123:16 129:18
    131:19 132:15
    134:16 140:3,7
    142:12,22 143:15
    145:15 150:24
    156:6
**sets** 99:4
**setting** 2:3 145:3

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 197 of 205

31

**settle** 147:8
**settled** 12:21 15:2
**settlement** 111:7,8
  111:11 112:1
  125:21,22 149:21
  151:4 155:10
**settling** 13:18
**seventeen** 113:18
**seventh** 30:5
**seventies** 63:9
**seventy** 26:8,11,13
  26:15 146:6
**seventy-five** 80:10
  80:11
**severe** 36:6
**shalt** 60:7,7
**shareholders** 86:25
  87:2,4
**Sheehan** 151:19
  152:1,4,4,6 157:20
**sheet** 26:4 29:11
  67:10 105:7
  106:16,17,22
  145:23
**short** 16:23 78:23
  86:21 125:14
**Shorten** 3:5
**shortly** 79:11
**show** 11:23 12:21
  13:16 67:8 83:4
  90:24 124:20
**showed** 94:10 96:8
**showing** 21:4 118:5
  140:22 141:14
**sickness** 130:18
**side** 91:6 124:16
  125:14,21 161:8
  161:11,18
**sign** 43:12 82:14
  151:8
**signed** 41:19,25
  77:23 152:6
  160:18 161:13
**significant** 31:7
  35:14 125:3,4
  130:11 140:22

**significantly** 136:19
**signs** 129:4
**similar** 40:6
**similarly** 10:23
  98:18
**Simon** 6:10 98:8
**simple** 59:3 72:7
**simply** 15:17 19:25
  21:14 38:12 41:16
  68:2 70:10,18
  72:14 78:5,7 86:11
  87:6 99:17 100:1
  106:14 110:1,19
  119:15 120:24
  134:17,22 160:8
  161:2
**single** 95:11
**sir** 26:2,9 27:16
  28:17 29:20,21
  30:2,22 32:4 36:14
  37:14 38:24 39:9
  46:21 47:21 51:3
  52:16 101:22
  152:6
**sit** 52:16 70:25
  126:13
**sits** 141:17
**sitting** 71:13
**situated** 98:18
**situation** 38:14
  124:22
**six** 129:13 148:4
**sixteen** 136:12
**sixth** 32:15,16 70:3
  77:3 84:4,8,23,24
  85:7,7 115:7,12
  122:24 141:11,22
  141:24 142:21
**sixty-five** 42:21,25
  49:10 52:9 71:17
  72:2,4 88:16 121:3
**size** 44:1
**sizeable** 70:24
**Skadden** 4:2,11
  56:20,24 57:1 74:7
**slate** 4:2,11 135:21

**slightly** 78:17
  131:22
**small** 82:17 98:11
**snap** 66:6
**snapback** 54:11
**snaps** 65:23
**sole** 123:12 149:24
**solely** 96:24
**solicit** 130:6
**solicitation** 126:24
**Solutia** 59:10,12
  110:25 111:2,23
**solution** 121:17,20
  122:3
**solved** 73:23
**somewhat** 38:3
  109:17 142:21
**Sonnax** 151:2,7
**sorry** 18:4 26:12
  27:1 28:19,20
  34:10 46:2,13 57:6
  61:3 65:9 80:12
  116:25 130:25
  139:8 140:12
  146:7
**sort** 16:21 37:24
  75:25 76:7 79:5
  80:14 81:2 88:4
  90:21 98:19 99:18
  101:2 108:23
  112:18 115:9
  123:25 127:12
**sought** 112:11 153:8
  153:9
**sounds** 13:19 91:13
**source** 67:8
**Southern** 1:3 62:2
  93:4 149:11
**SPD** 80:17 115:3
  118:14
**SPDs** 94:22
**speak** 13:8 18:19
  19:1 62:3 97:25
  114:3 120:18
  129:24
**speaking** 128:22

**136:8 139:21**
**speaks** 55:25
**special** 2:24 160:6
  160:13,19 161:12
  161:23 165:16
**specialized** 20:18
**specific** 32:16 41:19
  44:21 61:6 80:14
  80:20 82:13 83:4
  143:13
**specifically** 33:21
  35:25 40:21,22
  54:24 55:12 79:7
  132:24 139:18
**specified** 123:8
**spell** 39:11 46:23
  51:13
**Spencer** 6:2 23:8
  53:3
**spend** 80:4 122:17
  145:8
**spending** 82:23 86:8
  105:24 108:25
**spent** 41:9
**spike** 38:16 75:25
**spin-off** 113:24
**split** 104:14
**spoken** 30:18 128:21
**spouse** 21:1
**spouses** 54:7 130:17
**Sprague** 32:15,18,20
  32:24,25 33:5,9,12
  33:13,22 59:13
  77:2,3,4,4 78:17
  79:7 83:22 84:4
  90:17 114:8,23,24
  114:25,25 115:21
  115:21,25,25
  129:10,15 141:11
  141:21 142:3,6
  143:20,21
**spring** 67:25
**spun** 32:19 55:8
  114:11,21 115:10
  115:11,19
**Square** 4:13

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 198 of 205

32

**squarely** 99:3
**St** 6:5 53:4
**stacks** 76:13
**staff** 26:25 27:2
**STAHL** 5:10
**Stakeholder** 29:12
**stakeholders** 29:15
29:23 30:4,9,14,24
30:25 58:12,12
59:8 105:9,11,17
106:11 109:18
118:24 122:17,20
154:10 155:22
**stand** 25:7 46:21
**standard** 74:14
78:25 84:4,6 90:1
90:2 145:13
**standards** 122:9
124:5,6,11
**start** 18:6 57:15
86:4 93:17 94:25
101:24
**started** 43:17 94:13
**starting** 61:14
133:18
**starts** 29:7 30:5
94:25 106:1
**state** 31:11 37:24
40:2 92:5 103:6
134:20 135:20
149:18 150:4
**stated** 18:13 24:24
132:24 134:14
**statement** 9:16,18
19:2 20:11,14,24
21:3 30:3,15 44:11
44:11 48:3,18
80:25 92:10,21
99:14 101:25
160:7
**statements** 8:15
44:7 50:14 80:1
92:8 103:12 113:4
115:4 116:3
161:19,20
**states** 1:2 19:19

88:12,14 134:19
134:19 149:11
**stating** 22:13
**status** 135:3
**statute** 57:14 63:16
63:20 64:6 65:4
70:9 72:14 73:15
74:10 75:5,10
99:11,17,22
104:11 120:22
133:19,21 136:16
**statute's** 82:6
**statutory** 64:11
72:14 75:11 81:11
123:23 132:5
135:15
**stay** 2:5 35:2 147:21
149:8,22 150:6,10
151:5 165:8
**steady** 37:24 38:4
**Steel** 63:14 135:11
**steering** 106:2
154:12 155:5
**step** 38:23 51:3
146:14 148:13
**steps** 24:11 34:18
108:16 146:2,23
146:24
**Steven** 39:2,13
**Stipp** 148:7 151:19
158:13,17,20
**stipulation** 151:8
**stop** 53:8
**stopgap** 61:21
**stopped** 49:14
**stopping** 52:9
**Store** 57:3
**Stores** 62:2 137:15
**Strategy** 25:1,1
**stream** 38:4
**Street** 5:4,12 6:12
7:11
**stress** 36:9
**strike** 53:8
**strikes** 79:22 138:16
**strong** 82:16,20,21

**strongly** 29:13
**structure** 120:16
**stuck** 84:9
**stuff** 120:11
**subject** 8:21 14:17
17:6 21:4 22:9
33:11 52:22 70:4
77:17 92:9 98:15
98:16 104:15,22
111:6 112:1 114:8
114:15 115:12
118:12 123:11,24
127:21 129:16
130:14 135:24
148:24 152:21
154:16 161:4
**submit** 53:12 161:21
**submitted** 34:16
52:22 101:16
102:6 132:2 141:7
142:10 147:11
151:14
**submitting** 102:24
**Subsection** 57:25
**subsequent** 46:1,3
46:13 63:25 77:10
79:6 102:6 142:4
145:7 152:21
**subsequently** 11:3
17:17 33:1
**subsets** 96:9
**subsidy** 54:5
**substance** 10:13
**substantial** 36:9
**substantive** 24:25
134:3
**subsumed** 10:14
**successful** 69:5
148:17
**successfully** 79:13
**suffering** 74:23
100:10
**suffice** 32:24 142:11
**sufficient** 64:17
92:21 108:17
131:18 143:4,5

145:5,9 155:7
156:14
**sufficiently** 107:14
**suggest** 80:17 98:5
113:9 118:3 119:1
121:22
**suggestion** 120:15
127:23
**suggestions** 127:20
**suggests** 118:1
122:22
**suit** 94:22
**Suite** 166:12
**sum** 135:8
**summarized** 8:19
**summary** 10:18
11:9 32:5,9 34:6,7
40:9,12 42:9 50:2
76:10 82:10 90:2
117:8 125:16
140:17,24,25
163:18
**summons** 149:19
**sun** 86:23
**Sunrise** 149:13
**supplement** 3:10
17:1,4 152:11,15
155:12,13 156:13
156:16,18,20,21
156:22 157:8,17
158:7
**supplemental**
155:13,14
**supplementation**
17:7
**supplemented** 14:12
17:17
**supplementing** 17:8
**supplier** 95:11
**suppliers** 107:13
108:20
**supply** 119:18
**support** 100:11
105:9,12 106:4,14
107:15,19,22
108:18 116:2

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 199 of 205

33

122:1,4,14 148:7
151:18 152:20
153:8 155:8,11
159:12
**supported** 54:16
146:11
**supporting** 137:24
**supportive** 127:22
129:17 157:22
**supports** 104:9
115:24 119:1
**suppose** 125:20
**Supreme** 135:6,21
**sure** 21:15 28:14
36:17 40:15 65:9
67:15 70:22 83:5
84:22 85:19 91:23
98:22 108:16
109:9 110:10
125:4 127:24,25
**surgery** 76:2
**surgical** 130:17
**surviving** 21:1
**survivor** 48:25
**suspect** 97:6
**suspend** 31:13
**sustain** 109:7
**sustained** 34:24
102:16 124:20
**switch** 128:13
**sworn** 25:11 39:10
46:22 51:12
**system** 128:17
**Systems** 2:7 148:23
**S-T-E-V-E-N** 39:14
**S.D.N.Y** 138:1
142:18,19

**T**
**T** 5:23 163:4,4,15
164:5 166:2,2
**Tab** 28:11,23
**tail** 38:8,13
**take** 8:7 25:21,25
27:22 29:18 30:4
39:8 46:21 54:15

55:2 60:13,14
76:15 79:24 81:6
87:13 89:24 90:14
93:2 100:14 101:6
108:15 130:14
138:20 140:1
143:2 144:19
146:13,23 147:15
153:25
**taken** 33:11 34:18
128:15 135:9
146:2,9
**takes** 97:17
**talk** 34:5 42:23 70:2
76:1 77:1 78:9
105:10 115:6
123:17,25 126:6
127:8 128:21
**talked** 75:25 120:2
**talking** 21:17 55:7
61:3,4 66:5 72:5
105:19 106:22
107:4 110:25
113:13 120:3,4
**talks** 83:23 114:25
**tantamount** 118:6
**TARP** 155:20
**task** 144:11 145:9
**taste** 127:1
**tax** 15:6,24 17:20
71:16 79:14 87:15
87:23 88:8 119:21
120:1,17 121:4,9
121:14 124:1
145:1 164:14
**team** 109:24
**technically** 155:14
**technologies** 2:6
149:8,15
**Telephonically** 7:20
7:25
**tell** 34:17 49:12 55:6
128:20,22
**telling** 30:24 62:15
**temporal** 126:19
**Temporary** 2:16

**ten** 8:6 57:12 129:12
157:24
**tend** 122:21
**tender** 44:4
**tendered** 43:25 44:2
94:10
**tends** 38:16
**tenets** 140:7
**Tenn** 137:10
**tepid** 92:8
**term** 68:7 130:22
**terminable** 19:21
62:17 66:14
**terminable-at-will**
124:21
**terminate** 2:20
18:10 23:2,19
31:13,21 32:10
33:11 40:3 42:14
42:17 48:14 49:2
59:20,23 65:24
70:18 75:16 86:19
106:8 107:3
109:16 117:9
133:14 143:22
**terminated** 64:16
72:2 108:3 136:23
**terminating** 35:24
36:10 37:21 55:22
120:5,8,24
**termination** 8:10
23:6,17 28:1 34:13
34:19 38:15 63:19
77:17 89:20 90:3,4
94:23 95:12,19,22
96:2,15,19 97:4
100:12,21 101:13
102:5,7,21 103:15
120:6 130:2 136:3
**terms** 14:17 31:11
37:18 50:7 52:21
52:23 53:10,12
54:4 64:4 69:15
85:18 104:1 131:8
136:23 138:25
148:25 150:24,25

153:10,16 156:13
159:11 161:4
**test** 122:10,11
**testified** 15:19 36:21
49:9 106:10
107:10 109:13
113:14
**testify** 20:3 21:22
158:13
**testifying** 27:7 44:24
**testimony** 10:13
15:5 17:19 18:18
19:17 20:7,17
21:16 86:3 107:8
113:23 152:5
164:12
**thank** 17:22 25:24
33:18 34:12 36:14
37:15 38:25 39:16
39:22 41:23 42:13
43:4 45:13 88:19
98:5 100:2,3
101:22 126:10
127:6,13,14,17
129:24 147:11,13
147:19 149:6
151:9 156:25
158:9 160:4 162:4
162:6
**Thanks** 88:20
147:24 158:21
**theory** 66:23 140:20
142:24
**Therewith** 2:12
**thing** 54:25 58:6
74:7 88:15 101:2
120:13 123:20,25
**things** 47:15 70:8,14
79:1 84:9 89:11
90:13 114:12
120:21 153:17
155:16
**think** 13:10,14,15,15
15:21 16:2 17:23
20:11 22:1,4,18
23:17,18,20 31:4

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 200 of 205

34

39:23 50:1,4,5
52:18,23 53:5,12
54:25 55:24 56:15
56:20,23 57:1,22
57:24 58:4,6 60:5
62:5,6,10,15 64:22
65:2,3,8,16 78:24
79:2,25 80:13 81:3
81:12 82:3,6,20
84:5 86:16 87:8
93:10 94:5,12
95:17 99:13,25
101:17 102:16,22
103:5,9,17,18,19
103:22,25 104:5,7
104:13,20,21,22
106:7,25 107:3,9
108:9 109:24
110:3,7,15,20
111:13,18 113:3,3
114:2 115:24
116:4,11,13
117:15 118:4,5,15
118:25,25 119:6,9
119:23 120:13,15
121:13 124:1,8,18
124:19 125:2,17
127:1,5,11 128:1
129:16 130:6
133:2 134:3,12
138:7,14,16
144:22 147:8
150:25 151:7
154:25 155:4,18
155:23 156:10,20
156:25 157:21
**thinking** 54:19 81:4
**thinks** 109:15
125:21
**third** 2:14 4:21 29:6
151:12 158:10,11
159:2 165:13
**thirty** 120:18 128:9
**thirty-year** 78:11
**Thornburg** 45:23
46:4,16,25 47:4

49:8 50:1,5,7
163:12
**Thornburg's** 46:13
**thorough** 123:14
**thou** 60:6,7
**thought** 60:6,11
105:3 153:1
**thoughts** 126:8
129:22
**thousand** 124:25
**three** 16:7 70:7
80:23 99:4 110:4
115:2 143:25
146:14,17 154:21
**three-days** 80:24
**threshold** 89:1,2
98:3 109:20
**throw** 59:6,7
**thrust** 69:17
**tie-in** 117:11
**tight** 86:8
**time** 30:17,17 31:13
37:24 38:17,17
40:16,16 42:22
48:14 66:22 68:11
70:15 72:1,16 73:1
73:5,9,14 74:11
77:15 81:21 82:23
89:17 90:8 92:9,9
95:1,10,11 96:13
96:15 97:3,9 99:12
99:13 103:1
105:24 108:5
112:5,9 113:24
145:18 147:7
153:15 155:1
157:18 158:25
159:23
**timely** 57:15,17 60:7
64:2 131:1
**times** 4:13 97:11
**timetable** 154:8
155:2
**timing** 121:10
143:12
**Timm** 135:25

**title** 130:25
**today** 9:3,13,15,21
10:5 22:25 39:21
54:10 69:22 70:21
71:25 82:10,12
90:11 97:16,22
107:21 122:22
123:10 125:13
126:3 128:5,25
129:8,10,12 144:4
148:12 149:21
156:14,20 158:19
**today's** 8:6 98:15
**told** 31:4 43:12
80:23 83:11 109:2
113:24 123:21
**tomorrow** 130:1
**top** 106:12
**tossed** 120:11
**total** 42:11
**totality** 58:17
**totally** 53:10
**touching** 99:11,22
**track** 80:22
**trade** 159:7
**Tranche** 53:17
**tranches** 108:11
**transaction** 36:11
**transactions** 154:24
159:16
**Transcribed** 3:24
**transcript** 111:3,5
166:4
**transfer** 114:5 142:8
**transition** 34:5
**transparency**
122:13
**transparent** 107:14
**Transport** 142:13
**treated** 71:5
**treatment** 65:1
66:21 135:8
**treatments** 100:24
100:25
**Trent** 5:15 9:2 12:11
36:20 43:9 88:21

**Trial** 19:9
**trick** 50:6
**tried** 17:12 90:5,6
**true** 56:3 92:5 166:5
**truly** 72:17 86:19
**trustee** 7:10 86:7
126:11,12,13
127:8 128:21
129:1,23 144:2,2
147:9
**Trustee's** 129:4
**truth** 13:4 15:9 19:3
**try** 100:8 104:2,3
105:22 127:19
161:22
**trying** 23:6 33:12
38:12 48:21 60:12
76:1,8 89:22,23
108:15 121:13
122:7 155:9
**turn** 31:23 52:1 80:9
80:11
**turned** 71:14 121:11
**turning** 158:10
**turns** 97:15
**twenty** 13:2,22 14:4
76:7 78:23 131:19
148:16,22
**twenty-days** 78:22
79:17
**twenty-eight** 40:15
41:7 75:24
**twenty-six** 8:21
**twenty-three** 151:15
151:17
**two** 16:9 19:15 22:8
22:10 23:2 25:2
45:19 55:21 57:12
70:23 76:9 78:12
86:4 96:7 97:17
98:10 108:1
112:17 113:2
120:21 123:15
126:5 128:18
132:3 133:20
138:19 142:2

05-44481-rdd  Doc 16424-42  Filed 03/05/09  Entered 03/05/09 20:11:43
Transcript of February 24  2009 Proceedings  Pg 201 of 205

35

145:12 146:17
162:3
**two-step** 148:13
**type** 24:9 42:6 92:21
94:20 95:7 97:17
100:21 102:10
134:5,7
**types** 43:13 142:9
**typically** 38:4 71:2,4
88:4,14
**T-H-O-R-N-B-U-...**
47:1

———————
**U**
**U** 164:20 165:5
**UAW** 6:11 9:15,16
98:8,8,11,16 99:1
103:19
**ultimately** 23:5
65:21 121:22
125:4,22 128:11
135:8 145:13
**unable** 10:4,9
**unbroken** 116:1
**uncertain** 111:8
**Uncle** 88:16
**uncontested** 10:2
147:22 160:5
**uncontingent** 60:9
**underlay** 26:24
**underlie** 27:19
**underlying** 27:4
64:3 77:18 133:20
**understand** 15:23
28:6 31:11 34:3
36:8 42:5 48:18
55:19 56:10 59:23
63:17 65:9 66:18
82:5 85:15 87:19
92:16 93:10
101:11 103:15
109:8 110:10
117:5 118:4
120:10 156:1
**understanding** 10:4
15:21 18:9,13,14

19:19 20:4,15
21:20 31:16 83:21
88:3 110:22 120:1
145:18
**understandings**
20:19
**understands** 100:9
136:2
**understood** 19:3
50:5 52:2 79:14
108:5 161:9
**UNIDENTIFIED**
83:14
**unilateral** 23:6,19
89:20 90:3,4 95:12
95:19,22 96:2,15
96:19 97:3 140:10
**unilaterally** 40:3
58:2 132:22
133:13
**unincorporated**
9:10
**uninsurable** 58:23
**union** 73:2 86:10
142:13
**United** 1:2 134:19
149:11
**units** 98:11 103:21
**universal** 95:1 97:10
**universe** 82:16
90:12
**unlettered** 78:19
**unmistakably** 73:25
**unmodified** 65:5
**unpublished** 137:14
**unrepresented**
53:10 131:24
**unresolved** 18:7
19:7,15 22:6
**unsecured** 135:2
**untimely** 131:23
**unvested** 57:17
59:20,22 60:8
112:8 137:23
**upward** 38:16 75:25
**urge** 98:1 99:19

115:9 129:9
**urgency** 86:3
**use** 11:4 13:20 17:8
59:7 81:4 89:23
127:19 154:1
161:3
**Utah** 137:9,9
**utilization** 38:16
75:25
**utilize** 145:1
**U.S** 1:14,23 7:9,10
28:12 86:7 126:11
126:12,13 128:21
128:25 129:4,23
134:19 135:17,25
136:21 137:7
142:17 144:2
147:9
**U.S.C** 2:19 164:22
**U.S.D** 142:19

———————
**V**
**v** 134:18 135:16,25
141:11 142:13,16
142:18
**vacant** 148:21
**vague** 158:2
**Valley** 137:7
**valuation** 105:19
**value** 55:17
**values** 53:20 105:20
**varied** 80:17
**variety** 90:25
**various** 18:23 22:24
37:1 109:12
130:11 131:7
149:14 150:23
151:2 153:17
154:23
**Veis** 5:23 9:6 10:7,7
25:6,13,14 26:12
28:14,20,23 32:22
33:18 34:10,12,25
39:7,16,18 40:24
45:22,25 46:3,6,13
46:17 49:24 51:2,6

52:15,19 163:6,9
**Veritext** 166:10
**version** 14:11
**versions** 17:12
**vested** 60:8,21 65:6
71:4 74:5 77:18,22
81:23,25 82:14,17
84:5,6 85:2 112:7
112:8,20,22,24,25
113:2 116:23
117:14,16 118:3
123:6,7,15 125:12
133:1 142:11
143:18 144:13,21
147:1,6
**vesting** 111:11
125:19 129:10
143:15
**vet** 95:5
**viability** 55:9,10
**view** 10:13 12:21
16:19 20:6 24:3
59:25 103:18
106:7 109:2,11
111:6 115:10
118:24 127:18
137:3 138:20
139:25 140:9
143:1,3 145:8
**viewed** 15:7 49:5
138:6 139:11
**violate** 74:8
**violated** 74:5
**vision** 94:4
**voice** 65:21,25 69:18
**voices** 58:12
**volume** 28:16 32:2
46:5,9 83:10,12
**votes** 156:15

———————
**W**
**Wacker** 4:4
**wage** 63:1,14,15,17
**waive** 66:3 150:16
**waived** 77:25
**waivers** 41:20 42:1

VERITEXT REPORTING COMPANY

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 202 of 205

36

77:24 82:14
**want** 22:3 24:15
25:4 35:2 44:17
45:19 46:18 48:17
48:18 50:7 54:24
70:17,21,24 72:15
80:7 83:5 87:25
93:9 105:10
126:23 127:21,25
128:10 147:21
152:3,14 158:16
**wanted** 13:5,12 39:5
59:25 66:13 98:22
120:6 127:7,20
150:25 156:19
160:8
**wants** 13:20 18:3
68:19 86:1 122:2
127:24 158:14
**Warren** 93:4 142:16
**Washington** 5:21
10:8 25:16
**wasn't** 60:12 61:13
73:1 91:23,24
118:8,11
**waste** 103:5
**waterfall** 106:12
**Watkins** 4:19
157:15
**way** 45:11 46:8 56:5
57:13,23 70:25
72:14 78:20 85:25
86:24 87:21 96:22
103:23,24 104:22
107:9 113:8
120:17 129:3
**ways** 131:15
**WEBER** 7:18
**website** 48:2
**Wednesday** 144:16
**week** 36:6 72:22
108:16,16 109:1
122:15,16,18
128:11,18 144:18
146:5 155:6 157:1
157:3 159:11

**weekend** 16:25 76:7
**weeks** 109:9 123:15
128:18 154:21
**weighs** 109:11
**weight** 15:7 20:8,12
116:11,12
**WEIL** 7:2
**WEINTRAUB** 6:22
**Weiss** 6:10 98:8
**welfare** 54:18
105:14 130:12
131:7 132:10
134:2 136:3 138:3
138:11,18 140:12
140:20 142:22
**went** 53:25 57:9,25
60:2 82:12 87:6
95:23 96:15 111:2
113:14 136:13
**weren't** 110:1
**West** 4:4 5:12 6:12
**Western** 137:12
**we'll** 9:1,5 70:18
86:17 115:17
148:14 151:16
**we're** 12:12 13:3,9
13:11,15,18 14:11
15:17,19 23:11
24:23 38:10,12
54:2,2 59:1 70:21
70:22 72:5 75:5,14
78:6,7,8,10,13
80:8 84:18 105:18
113:11 118:25
120:2,4,5,8,8
122:10 127:16,25
129:5,13 148:1,12
148:19 149:21,22
154:1,17 157:1,2,3
158:23 159:12,25
**we've** 12:15 15:6
16:13 17:11 23:21
43:25 44:2 53:15
53:15,19,20 70:9
89:3 90:5,5,6,16
93:12 94:14 97:18

105:3 127:24
128:20 135:5
154:20 155:6
160:12
**whatever's** 74:14
135:9
**wheelchair** 149:15
**Whitehall** 7:11
**wholesale** 65:6
**who've** 53:7 147:10
**wiggle** 49:4 116:6,7
**wiggly** 50:12
**willful** 150:3
**WILLIAM** 6:22
**willing** 68:16 108:22
130:1
**win** 123:22
**windfall** 135:4
**Wisconsin** 5:20
**wish** 51:7 86:15
**wishes** 81:7
**withdraw** 19:12
151:16
**withdrawing** 10:5,9
**witness** 20:4 25:11
26:14 28:16 32:3
33:21 38:2,22,25
39:10,13 44:5
46:22,25 51:12,15
163:5
**witnesses** 53:24
**WM** 4:7
**word** 21:16 120:6
144:20
**words** 49:4 50:12,17
50:19 58:13,18
63:4 66:25 69:6
116:6,7
**work** 30:8 53:8
82:11 90:15
101:25 127:11
128:23 129:19
144:14 147:9
155:2 159:16
161:22,23
**worked** 77:14 87:1

153:1 160:12
**workers** 73:3 142:13
**working** 30:8,20
32:8 107:11
122:16
**works** 66:23 70:9
71:7 72:15 86:24
129:6
**worried** 101:15
**worst** 97:19
**worth** 88:17 154:4
**wouldn't** 49:21 55:1
60:3 63:20 82:23
87:13 92:21 96:3
96:23 97:1 101:4
108:19
**write** 115:21 135:21
**writing** 14:1 132:2
**written** 22:19 30:17
47:16,20,23 48:3,9
48:19,22 49:1 50:8
90:25
**wrong** 21:5 28:20
120:16 123:5
132:7

---
**X**
---
**x** 1:5,12 163:2,15
164:2,5 165:2

---
**Y**
---
**Y** 163:4
**Yeah** 12:20 51:23
**year** 26:8,15 70:24
77:21,22 109:7
146:6 149:16
153:2 154:13
160:23 161:1
**yearly** 94:13
**years** 13:2,22 14:4
16:7 27:10 40:15
41:7 55:21 57:12
57:23 70:23 75:23
78:12 80:23 92:9
115:3 129:12,12
136:12 146:14

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24    2009 Proceedings    Pg 203 of 205

37

**year-olds** 75:24
**York** 1:3,16,16 4:14
    4:14,22,22 6:13,13
    6:20,20 7:4,4,12
    7:12 166:13

**Z**

**zero** 135:8
**Zurich** 135:16
**Zussman** 160:25

**0**

**0001681** 28:18
**05-44481** 1:4

**1**

**1** 6:4 17:25 18:1,9
    19:6 37:22 46:10
    86:2,2,2 94:4
    148:8 151:19
    164:16 165:15
**1st** 101:16 107:6
    108:3 109:16
    123:10 128:3,13
    153:1,6
**1,200** 90:7
**1,600** 110:4 117:22
    127:2 131:21
**1-26** 151:15,24
    164:18
**1-5** 148:11 164:17
**1.1** 26:20 36:23 67:9
    145:22
**1.5** 146:5
**1:10** 127:15
**1:19** 127:15
**10** 144:17
**10-K** 157:1,3
**10:08** 1:19
**10004** 7:12
**10019** 6:20
**10022** 4:22
**10036** 4:14 6:13
**1015** 102:19
**10153** 7:4
**101780** 142:17

**102** 16:9
**104** 19:24
**105** 2:19 164:22
**1093** 136:21
**1095** 140:18
**11** 2:19 55:7 58:13
    65:13 68:18 81:3
    81:22 132:13,14
    134:2 138:12
    163:17,18,21,22
    163:23 164:22
**11th** 100:23 144:16
    147:3
**1108** 2:20 164:23
**1113** 74:21 136:6
**1114** 23:3,13,14,20
    24:11 37:2,5,8,11
    43:2 53:12,14
    54:11,11 56:4,12
    56:16,19 57:3,21
    58:11,14 59:3
    60:13 61:15,21
    62:14 64:1,23,24
    65:12 67:14,18
    68:1,4,16 69:12,17
    70:1,10,20 71:13
    71:20 72:11,18,23
    73:3,10,12,24
    74:11,22 75:5 76:4
    76:16,18,19 81:1,4
    81:5,14,21 82:2
    84:19 85:3 86:6
    89:3 90:10 95:6
    96:14 97:25 98:5
    98:22,23 99:2
    100:15 101:14,18
    104:5,10,19 105:4
    107:2 110:18
    111:4,14,15 112:5
    112:14,21,22,25
    116:15,17 117:12
    117:17 120:24
    121:6,8 123:8
    124:6,7,17 125:5
    125:11,25 126:19
    130:20 132:5,7,15

**132:**20 133:13,24
    136:2,12 137:3,4
    137:23 138:9,16
    138:17,20 140:4
    140:14,18 143:3
    143:10 144:7,12
    144:21 147:6
**1114(a)** 72:7 75:7,12
    130:21 131:9
    132:8
**1114(d)** 123:2 143:8
**1114(e)** 130:24
**1114(e)(1)(a)** 131:2
**1114(e)(2)** 102:8
**1114(g)** 131:3
    132:16
**1114(h)** 132:16
**1114(l)** 59:16 60:4
    61:2 73:6,25 74:9
    99:8,21 105:2
    139:2
**1114.03[1** 133:8
**1129** 64:16 72:19
**1129(a)(13)** 65:4
    66:14 67:24 68:2
    69:13 70:12 72:13
    107:1 138:6,19
**11501** 166:13
**117** 154:3
**1202** 77:7
**1205** 62:8 136:20
**121** 14:10
**1211** 62:8
**126** 14:10
**13** 10:17 148:20
**130** 136:18
**133** 141:12
**138** 137:25
**14** 10:19 163:24
    164:7
**14-39** 11:10 163:18
**146** 164:22
**14701** 148:5
**14702** 149:9
**14703** 151:11
**14704** 151:13

**14705** 8:11
**14706** 160:7
**14765** 8:25
**14782** 9:4
**148** 164:17
**14819** 9:9
**14822** 9:17
**14881** 9:18
**14883** 160:8
**149** 164:24
**15,000** 53:15 97:20
    97:22 124:25
    126:23 131:13
**151** 164:18 165:7
**158** 165:9
**160** 165:12
**1600** 8:12
**162** 165:15
**163** 137:9
**1633** 6:19
**164-168** 14:7
**167** 135:12
**1681** 29:1
**17** 164:11
**17th** 154:13
**172** 135:12
**18** 29:18
**180** 58:1 74:2,9
    139:5
**181** 89:14
**19** 50:15 164:10,16
**1950s** 114:13
**1960s** 115:17
**1965** 115:7
**1970s** 77:19
**1971** 43:17
**1975** 44:10 94:14
    114:17
**1977** 92:5
**1979** 134:19
**1980** 32:5,9,13 33:19
    33:22 34:6,7 40:9
    50:2,8,11 80:1
    83:1,9 93:15,19
    94:4 114:17 115:2
    115:3

05-44481-rdd    Doc 16424-42    Filed 03/05/09    Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings    Pg 204 of 205

38

**1984** 63:14
**1985** 92:5
**1987** 50:16
**1988** 16:7 32:15
   94:24
**1989** 113:6 114:4
**1991** 136:18,20
**1992** 136:1,21 138:1
**1993** 49:7 61:14
   73:22 137:7,8
   141:12
**1994** 137:9
**1995** 16:7
**1998** 33:5,9,12 39:25
   114:14 142:4
**1999** 33:16 39:25
   40:13

———————
**2**
**2** 18:2 19:9,9 39:4
   102:8 133:8
   151:20 158:14
   164:10
**2nd** 135:12 136:20
   142:14 155:17
   156:5
**2:13** 147:25
**2:22** 147:25
**2:43** 162:7
**20** 83:11,13,14 94:1
   94:2 151:16
**20th** 154:13
**200** 26:16 166:11
**200,000** 145:10
**20016** 5:21
**2002** 137:11
**2003** 137:13
**2004** 134:25
**2005** 49:8,14,21 52:6
   53:15 61:14 73:9
   73:14 134:10
   139:3 140:3
**2006** 135:17 142:14
**2007** 42:14 135:12
   149:13
**2008** 93:4 142:17,18

142:19,19 149:20
   150:20
**2009** 1:18 28:11
   148:19,20,20
   152:19 153:5
   159:7 166:15
**21** 18:2 21:7 41:15
   41:20 43:10
   151:16
**21.6** 148:21
**21420** 137:8
**22** 151:16 164:22
**23** 17:25 18:2,8 22:8
**235** 5:4
**24** 1:18 27:22 148:20
   157:25
**24th** 148:14 149:16
**25** 163:6
**25th** 160:23
**26** 166:15
**27th** 155:16
**274** 77:6
**276** 137:10
**277** 134:24
**28** 137:8 149:20
   150:20
**287** 134:24
**29** 142:19
**294** 137:13

———————
**3**
**3** 10:4,14 28:15,16
   31:9 45:24,25 46:9
   165:12
**3d** 140:18
**30th** 152:19 154:16
   158:24
**300** 159:6
**306** 77:7
**309** 134:24
**31st** 155:21
**33** 7:11 71:10
**330** 6:12
**333** 4:4
**34** 163:7
**35** 71:15

**36** 163:8
**363** 117:19 154:18
**363(b)** 116:14 117:7
   130:10 138:23
   140:20
**363(b)(1)** 2:19
   164:23
**365** 61:20
**388** 134:25 141:12
**39** 10:19 163:9

———————
**4**
**4** 4:13 10:4,14 26:1
   46:9,15 47:14,15
   140:17
**40** 10:20
**40-48** 11:12 163:21
**41** 163:10
**410** 135:25
**419** 135:25
**42nd** 6:12
**43** 163:11
**440** 134:19
**442** 142:14
**45** 28:11,19,21
**450,000** 148:24
**4530** 5:20
**47** 28:19,22,23
   163:12
**479** 135:12
**48** 10:20 134:19
**49** 10:22 71:9

———————
**5**
**5** 10:10 32:2,3 43:23
   83:10 130:1 148:9
   164:24
**5,000** 54:6
**502** 135:25 136:21
**51** 10:22 163:13
**52** 10:23
**52-64** 11:14 163:22
**544** 139:13
**546** 134:5,10
**546(c)** 134:10
**547** 135:17 139:13

**548** 139:14
**55** 5:12 142:14
**580** 166:12

———————
**6**
**6** 10:17 52:1,2 165:9
**6th** 134:25 141:12
**6-13** 11:8 163:17
**60s** 114:13
**60603** 5:13
**60606** 4:5
**63105** 6:5
**64** 10:23
**65** 10:25 11:17
   163:23
**651** 135:17
**66** 11:21,23 12:13
   14:21 163:24
**6647** 142:19
**67** 12:2,14
**67-75** 14:23 164:7
**68** 43:22 115:7

———————
**7**
**7** 149:7
**70** 70:23
**70s** 114:13
**71** 14:10,13 115:8
**723** 137:25
**75** 12:2,13,14 93:18
   94:12
**76** 15:3 77:6 94:14
**76-78** 17:21 164:11
**767** 7:3
**77** 94:14,14
**78** 15:3 94:14
**79** 12:3 14:6,12
   94:15
**79-85** 14:23 164:7

———————
**8**
**8** 18:1 19:10 27:23
   30:3 151:10 165:7
**80** 31:23 32:2,5,13
   83:8,13 94:15
   142:10

05-44481-rdd   Doc 16424-42   Filed 03/05/09   Entered 03/05/09 20:11:43
Transcript of February 24   2009 Proceedings   Pg 205 of 205

39

**80s** 114:13
**80316** 12:25 13:23
**813** 64:16
**83** 16:4,4,7 94:15
**84** 94:15
**85** 12:3 16:4,4,9
**858** 137:9
**86** 10:25 11:17
    163:23
**860** 137:10
**87** 10:25 11:17
    163:23
**870** 136:18
**88** 10:25 11:17 33:6
    63:19 94:15
    163:23
**885** 4:21

**9**

**9** 18:2 19:15 22:12
    26:1 142:18
    148:19 151:11
**9th** 128:18
**90** 10:25 11:17
    163:23
**90s** 114:13
**901** 16:14
**903** 137:13
**93** 104:13
**94104** 5:5
**945** 62:8 136:20