1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 05-44481

Adv. Case No. 08-01232

- - - - - - - - - - - - - - - - - - - -x

DELPHI CORPORATION,

                Plaintiff,

    -against-


APPALOOSA MANAGEMENT L.P. ET AL.

                Defendants.


- - - - - - - - - - - - - - - - - - - -x


         United States Bankruptcy Court

         One Bowling Green

         New York, New York


         March 3, 2009

         10:08 AM


B E F O R E:

HON. ROBERT D. DRAIN

U.S. BANKRUPTCY JUDGE

Hearing re:  Notice of Motion to Quash Subpoena Directed to Howard Kaminsky of Columbus Hill Capital Management, L.P.

Transcribed by:  Hana Copperman

```
                                                                    3
 1
 2   A P P E A R A N C E S :
 3   FRIEDMAN, KAPLAN, SEILER & ADELMAN, LLP
 4        Attorneys for Delphi Corporation
 5        1633 Broadway
 6        New York, NY 10019
 7
 8   BY:  ANDREW W. SCHILLING, ESQ.
 9
10   ANDREWS KURTH LLP
11        Attorneys for Columbus Hill
12        450 Lexington Avenue
13        New York, NY 10017
14
15   BY:  LYNNE M. FISCHMAN UNIMAN, ESQ.
16        PAUL N. SILVERSTEIN, ESQ.
17
18   WHITE & CASE LLP
19        Attorneys for Appaloosa
20        1155 Avenue of the Americas
21        New York, NY 10036
22
23   BY:  DOUGLAS P. BAUMSTEIN, ESQ.
24
25
```

4

P R O C E E D I N G S

THE COURT: Okay. This is Columbus Hill's motion to quash.

MR. SILVERSTEIN: Yes, Your Honor. Good morning, Your Honor. Paul Silverstein and Lynne Uniman from Andrews Kurth for Columbus Hill. We are here, as Your Honor noted, on, of all things, a discovery dispute, which we don't take lightly. But the problem, Your Honor, is that under, I guess, this Court's aegis, the plaintiffs, apparently, with a blank check, have just gone over the top. I'm going to just introduce the matter and Ms. Uniman, who's a true litigator, will address some of the true legal issues. And I'm not trying to be facetious at all, Your Honor.

THE COURT: Okay.

MR. SILVERSTEIN: Actually, someone just stole my coat, so I'm not in a good mood at the moment.

THE COURT: It's cold out.

MR. SILVERSTEIN: Everything happens in the bankruptcy court, you know? Your Honor, our client, Columbus Hill, agreed to sign up to be what is called their additional investor in these cases, which I'm sure you're far more aware of than I am. Your Honor has before him some, for lack of a better -- it's nasty litigation involving the underlying transaction, again, which I don't purport to know all that much about other than the fact that from public reports there's some

1  ugly stories about quote, unquote, "jaw-dropping behavior".

2  Debtors sought to depose one plaintiff in the action,
3  sought to depose Columbus Hill not once, but twice.  They've
4  had two deposition of Columbus Hill.  Columbus Hill is run by
5  two individuals, Howard Kaminsky and Kevin Eng.  They were both
6  deposed.  Now they want to depose Mr. Kaminsky a second time.
7  And although this is just a parenthetical aside, the second
8  deposition, which was of Mr. Eng, was at my office where there,
9  I think, there were thirty people.  Had conflicts counsel from
10 every possible constituency in the world, so I guess it must be
11 a good thing to be a professional in the Delphi case these
12 days.  We've asked plaintiff what are you now looking for.
13 What do you want?  And their response has basically been
14 because we can.  So, you know, I don't know what to say.
15 Obviously there comes a point, Your Honor, where one has to say
16 enough, and we've said enough.  And I think Ms. Uniman will
17 address the details, but that's really what's going on here.
18 Again, we all know the judicial view of discovery disputes.
19 But we're here.  And we're here for a reason, and we're not
20 here lightly, and we're not here cavalierly.

21 MS. UNIMAN:  Thank you, Your Honor.  Lynne Uniman.
22 Mr. Silverstein summarized the situation quite well, but I
23 would like to flush out a few of the details.  Mr. Kaminsky was
24 noticed first under 2004 of the Bankruptcy Code.  And his
25 deposition was not limited in any regard.  Indeed, at the

6

1   beginning of the deposition, it was said that Mr. Kaminsky was
2   going to be asked all questions concerning conduct by Delphi
3   Plan Investors and additional investors.  It doesn't get any
4   broader than that, Your Honor.
5           Now, the debtors have said that they need
6   Mr. Kaminsky's deposition yet again because certain things from
7   his deposition were useful to their complaint.  Well, Your
8   Honor, I hate to say this, but that's quite impossible since
9   while we were at the deposition of Mr. Kaminsky we got
10  notification from ECF that the complaint in this action was
11  filed.  So, clearly, Your Honor, there was nothing about
12  Mr. Kaminsky's deposition that was useful or found its way into
13  the complaint.
14          Now, Columbus Hill engaged in an extensive document
15  search in connection with the 2004 examination.  We then
16  received another subpoena after the complaint was filed in the
17  case, this one pursuant to Rule 45 and the Federal Rules.
18  Again, an extensive document production was undertaken.
19          THE COURT:  Are the debtors seeking any additional
20  documents in connection with Mr. Kaminsky's Rule 45 deposition?
21          MS. UNIMAN:  Not that we know of at this point.  They
22  haven't.
23          THE COURT:  Are you looking for any others?
24          MR. SCHILLING:  No, Your Honor.
25          THE COURT:  All right.  So that's a red herring,

1  right?
2           MS. UNIMAN:  Yes.  I'm just talking about the
3  amount --
4           THE COURT:  Okay.
5           MS. UNIMAN:  -- of time and expense that this nonparty
6  has gone through and yet is being asked to go through some
7  more.
8           THE COURT:  How long was Mr. Kaminsky's first
9  deposition?
10          MS. UNIMAN:  About four hours.
11          THE COURT:  The debtors say three hours and sixteen
12 minutes.
13          MS. UNIMAN:  Okay.  It could be three hours and
14 sixteen minutes.
15          THE COURT:  Okay.  Well, I'm just trying to figure
16 out how countless hours were involved.
17          MS. UNIMAN:  Well, Your Honor, the discovery demands
18 were very, very broad.
19          THE COURT:  Okay.
20          MS. UNIMAN:  And, indeed, we did narrow them, but
21 when we asked for some guidance on the document production we
22 were given a protocol that was used for the main investors in
23 the case not the additional investors.  And yes, while the
24 debtors did eventually narrow it somewhat, that, nonetheless,
25 meant going through thousands upon thousands of documents in

8

1  order to then tell them we're pulling up things that you could
2  not possibly be interested in.
3          THE COURT:  Let me ask the debtors.  Do you intend to
4  call Mr. Kaminsky or Mr. Eng at trial?
5          MR. SCHILLING:  At this point we would, yes, Your
6  Honor.
7          THE COURT:  Because you can't use Mr. Kaminsky's
8  deposition at trial?
9          MR. SCHILLING:  That's the problem, Your Honor.
10         THE COURT:  If you had the deposition under Rule 45
11 would you call him at trial?
12         MR. SCHILLING:  If we had the deposition -- sorry,
13 Your Honor?
14         THE COURT:  If you had the deposition under Rule 45
15 would you call him at trial?
16         MR. SCHILLING:  We would, Your Honor.
17         THE COURT:  You think you would?
18         MR. SCHILLING:  If he testified to certain
19 conversations with Mr. Tepper that we would want to establish
20 at trial.  And we're not able to use his Rule 2004
21 transcript --
22         THE COURT:  No, I'm saying if you took his Rule 45
23 deposition did you think you would call him at trial?
24         MR. SCHILLING:  I assume that we would, Your Honor.
25 Yes.

1             THE COURT:  Okay.

2             MS. UNIMAN:  Well, Your Honor, on that basis I don't

3   see any need for this deposition, but what we -- we understood

4   the issue with the 2004.  And what we said to the debtors'

5   counsel was okay, listen, what we will do is we will go and see

6   whether any of the defendants have any problem with stipulating

7   that Mr. Kaminsky's deposition can be used as if it were a Rule

8   45 deposition.

9             THE COURT:  Right.

10            MS. UNIMAN:  And the defendants have no problem, but

11  the debtor said well, no.  Even if you do that we still want

12  his deposition.  And then we said okay --

13            THE COURT:  How do I know that the defendants are

14  ready to stipulate to the use of the deposition at trial?

15            MS. UNIMAN:  Well, Your Honor, we have spoken to some

16  of them and we can get -- if we can't get the consent then it's

17  a very different issue.  But --

18            THE COURT:  But you have the burden and you haven't

19  gotten the consent so far, right?

20            MR. SILVERSTEIN:  Your Honor, we -- excuse me, it's

21  Paul Silverstein, for the record.  We reached out to some

22  defendant's counsel, the lead defendant's counsel, and they

23  said of course.  So we didn't feel it was incumbent upon us to

24  get a stipulation circulated because these guys said no.  We

25  can take a deposition.  And we can take a seven hour

1  deposition.  And we can torture you some more.  So we didn't
2  feel it was necessary, at that point, to circulate a
3  stipulation when we're representing to the Court that we went
4  out and they basically said yes.  And we can get that.  So if
5  we need to delay this a day so we can get a stipulation sure,
6  we'll do that.  It may take more than a day.
7           THE COURT:  Okay.
8           MS. UNIMAN:  Finally, what we did after trying to
9  solicit the consents for the 2004, which I am virtually certain
10 we can secure in very short order, we then asked the debtors
11 well, what else is it that you need?  The conversation with
12 Mr. Tepper was gone into extensively in both depositions.  We
13 said what else is it that you need?  Articulate something.  And
14 the answer was we're going to take the deposition because we
15 can.
16          Your Honor, under those circumstances we really don't
17 think that this nonparty should be subjected to yet a third
18 deposition.
19          THE COURT:  Okay.
20          MR. BAUMSTEIN:  Your Honor, just, I know I'm standing
21 from the back.  Doug Baumstein from White & Case on behalf of
22 Appaloosa.  Just to report, at least from Appaloosa's
23 perspective, I think we have representatives from each of the
24 defendants here.  We did, in fact, consent to the use of the
25 transcript.  I think the subject has to be able to add

11

1    objections to form as may be the case because we were not

2    originally intending that we'll do this for a transcript.

3                   THE COURT:  Okay.

4                   MR. SCHILLING:  Good morning, Your Honor.

5    Andrew Schilling from Friedman, Kaplan for Delphi.  With

6    respect to the undue burden the first deposition was a little

7    over three hours.  I have represented to counsel for Columbus

8    Hill that we are not looking to make this difficult for

9    Mr. Kaminsky.  We will hold the deposition at a time and place

10   of his choosing, and we will limit it such that the two

11   depositions together would not be longer than seven hours.  I'm

12   sure Your Honor doesn't want to hear a lot of back-and-forth

13   rebutting the statements that were made about the conversations

14   that we've had, but the conversations were not in the nature of

15   because we can.  I've explained to Ms. Uniman several times the

16   procedural problem we had with using the Rule 2004 deposition

17   in our case, and this is the first time hearing that they

18   obtained the consent of the defendants.  When I spoke to

19   Mr. Baumstein many months ago and asked whether or not, with

20   respect to the broader issue of Rule 2004 depositions, they

21   were just going to permit us to use them in the adversary

22   proceeding the answer was no.  So we have gone forward with a

23   protocol that we think is quite reasonable under the

24   circumstances.

25                   THE COURT:  Well, but now that you have the

1  representation in an open court that they're willing to,
2  subject to objections to form, to treat the 2004 deposition as
3  being admissible for purposes of the trial, isn't that off the
4  table at this point, that issue?
5             MR. SCHILLING:  That issue, yes, Your Honor, it would
6  be, although what we have been doing in the depositions is when
7  they give us their objections to form in advance we're able to
8  review those and decide whether or not we want to clean up any
9  of the transcript record to eliminate any of those objections
10 to form.  But I agree that that takes a substantial issue off
11 the table.
12            Regardless of the permissible scope of the Rule 2004
13 investigation, however, as a factual matter the investigation
14 that was done was limited in terms of time frame and scope, and
15 I've also explained that to Ms. Uniman, other than
16 notwithstanding her representation of our remarks and, for
17 example, when Mr. Kaminsky was asked did you have any
18 conversations with Mr. Tepper about this transaction he was
19 specifically asked for a particular time frame.  He said
20 November 1 forward.  With respect to all the conversations that
21 Mr. Kaminsky was asked about by the Togut firm when they were
22 doing the Rule 2004 investigation they were limiting it to a
23 time frame of November 1st forward.  We would ask questions
24 that go back beyond that.  They had entered into this
25 transaction in July, and there were conversations in July about

13

1   the nature of the transaction, what the additional investor

2   agreement's terms were, what the EPCA's terms were, and we have

3   been, in our additional investor depositions, exploring those

4   conversations. Mr. Eng could not remember participating in

5   those conversations.

6           THE COURT: Well, when he couldn't remember did he

7   say he thought Kaminsky had?

8           MR. SCHILLING: Yes, Your Honor. That's my

9   recollection of the testimony, Your Honor, which I read

10  yesterday. I believe the testimony of Mr. Eng was I believe

11  Howard or I would have had the conversations with Appaloosa at

12  the time we entered into this transaction. Question: Do you

13  remember the conversations? No, I don't. That leaves

14  Mr. Kaminsky. Again, even this area of questioning, Your

15  Honor, is not extensive. That's why we estimate that the

16  deposition wouldn't take two hours. We've done nine other

17  additional investor witnesses who were previously deposed in

18  the Rule 2004. We followed this protocol and the depositions

19  lasted, on average, two and a half hours. And this one, I

20  imagine, would be similar. There have been a total of fourteen

21  additional investor depositions. Columbus Hill is not the only

22  additional investor who would be subject to more than one

23  deposition. Columbus Hill is the only additional investor

24  raising this particular objection.

25          THE COURT: Are they the only ones who would be

1   subject to three?

2            MR. SCHILLING:  Three, Your Honor?

3            THE COURT:  Well?

4            MR. SCHILLING:  I mean, counting the -- well, no.

5   Let me check my notes, but I believe there are others that have

6   had more than two.  Yes, there's at least one other that had

7   three depositions, Your Honor.  I'll correct that.  There was

8   one other that had three depositions.  But, again, in terms of

9   their burden, I just don't see it, Your Honor.

10           THE COURT:  Is it your position that Mr. Eng and

11  Mr. Kaminsky had equal responsibility for this deal or that

12  Kaminsky had more responsibility or --

13           MR. SCHILLING:  I think the testimony was that they

14  were co-managing directors, and I don't think one had more

15  responsibility than the other.  In terms of Mr. Eng's

16  deposition, his recollection of the conversations that we would

17  be interested in was quite limited.  There are basically three

18  conversations that would be the focus of our deposition, one

19  with Mr. Tepper and --

20           THE COURT:  Were they his conversation or

21  Mr. Kaminsky's?

22           MR. SCHILLING:  The one with Mr. Tepper, Mr. Eng and

23  Mr. Kaminsky were both on the phone.  And the Rule 2004

24  testimony of Mr. Kaminsky was slightly different from the

25  testimony of Mr. Eng at his deposition in this case.  And so

1    we'd rather not be saddled with just Mr. Eng's recollection of

2    the conversation with Mr. Tepper.  Mr. Kaminsky also

3    participated in conversations that Mr. Eng did not with two of

4    the other additional investors that we would be interested in.

5            THE COURT:  And was he deposed on that subject

6    before?

7            MR. SCHILLING:  He was.  Yes.

8            THE COURT:  So why do you need it again?

9            MR. SCHILLING:  Well, with the ability to use the

10   transcript in our proceeding that wouldn't be an issue.

11           THE COURT:  So you already have him on the three --

12   I'm still confused as to what's left.

13           MR. SCHILLING:  The only thing that would be left,

14   assuming we have that deposition, Your Honor, is just the time

15   period scope.

16           THE COURT:  Okay.

17           MR. SCHILLING:  We would go back and ask questions

18   beyond that.

19           THE COURT:  Okay.  You mean prior to November?

20           MR. SCHILLING:  Correct.

21           THE COURT:  Okay.

22           MR. SCHILLING:  And, frankly, we would look at the

23   transcript and follow up with respect to any questions that we

24   did not think were sufficiently explored at the Rule 2004.

25           THE COURT:  Okay.

1       MR. SCHILLING:  Thank you, Your Honor.

2       MS. UNIMAN:  Your Honor, I would just like to say one

3  thing about the time frame.  As to Mr. Eng the time frame was

4  not limited at all.  And as to Mr. Kaminsky, we have no idea

5  why the debtors decided to pick that time frame, but the fact

6  that they picked one and now want another doesn't justify a

7  third deposition.

8       THE COURT:  Well, but it's different.  There were

9  different issues involved.

10      MS. UNIMAN:  Your Honor, I don't think there were.

11      THE COURT:  I think they were.  My concern, and the

12 debtors' concern with the 2004 exam, was that people were

13 violating the securities laws, trading on inside information

14 and, perhaps, subjecting themselves to subordination for

15 conduct in the bankruptcy case that'd be improper.  That

16 involved more recent trading.

17      MS. UNIMAN:  Your Honor --

18      THE COURT:  This case involves an adversary

19 proceeding.

20      MS. UNIMAN:  Your Honor, that was one of the issues

21 that was gone into in the 2004.  But, indeed, the 2004 asked

22 were there any conversations about the commitments under the

23 AIA?  Were there any discussions with Mr. Tepper about not

24 going through with the AIA?

25      THE COURT:  But, I mean, there were three iterations

1    of this agreement.
2            MS. UNIMAN:  Correct.
3            THE COURT:  Two of which I approved.  How was it
4    defined in the deposition?  The last iteration or any of them?
5            MS. UNIMAN:  It was any of them, Your Honor.
6            MR. SILVERSTEIN:  Your Honor, it was a very broad
7    deposition.  It was not limited in scope and, basically, it
8    was --
9            THE COURT:  Well, I --
10           MR. SILVERSTEIN:  If you want to read the transcript,
11   Your Honor, we'll give you the transcript.  It's easy.  I mean,
12   I think, the problem is that --
13           THE COURT:  Yes, I want to read the transcript.
14           MR. SILVERSTEIN:  That's fine.
15           THE COURT:  And I don't know why this was brought up
16   in this fashion, frankly, without any of this attached, just
17   allegations about countless hours.
18           MR. SILVERSTEIN:  Okay.  That's --
19           THE COURT:  And trying to consider something and
20   then --
21           MR. SILVERSTEIN:  That's --
22           THE COURT:  I'm now told that there is agreement.
23           MR. SILVERSTEIN:  Well, I thought we --
24           THE COURT:  My inclination is to let the deposition
25   go forward on the limited topics for three hours.  And my

18

1   belief is that that will preclude or obviate the need to have
2   him come to the trial, which, I think, is something that would
3   be a benefit to everybody.
4           MR. SILVERSTEIN:  Can we define what the scope is,
5   Your Honor?
6           THE COURT:  It's on --
7           MR. SILVERSTEIN:  Because they haven't.
8           THE COURT:  It's on matters that they have not asked
9   about before and matters where he and Eng disagree.
10          MR. SILVERSTEIN:  That's fine.  So, I guess, the
11  other matters, those are not the subject of the deposition.
12  That's fine.  Thank you.
13          THE COURT:  Okay.
14          MR. SCHILLING:  Thank you, Your Honor.
15          THE COURT:  Okay.
16      (Proceedings concluded at 10:26 AM)

19

# I N D E X

## RULINGS

| | Page | Line |
|---|---|---|
| Granting of Motion to Quash Subpoena Directed to Howard Kaminsky | 17 | 24 |

20

C E R T I F I C A T I O N

I, Hana Copperman, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

HANA COPPERMAN

Veritext LLC

200 Old Country Road

Suite 580

Mineola, NY 11501

Date:   March 5, 2009