**Proposed Hearing Date:  March 11, 2009 at 10:00 a.m. (prevailing Eastern Time)**
**Proposed Objection Date:  March 10, 2009 at 4:00 p.m. (prevailing Eastern Time)**

Neil A. Goteiner (NG 1644)
Dean M. Gloster, *Pro Hac Vice* (pending)
Kelly A. Woodruff, *Pro Hac Vice* (pending)
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

          – and –

Trent P. Cornell, *Pro Hac Vice* (pending)
Jon D. Cohen, *Pro Hac Vice* (pending)
STAHL COWEN CROWLEY LLC
55 West Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:  (312) 641-0060
Facsimile:  (312) 641-6959

Attorneys for Delphi Salaried Retirees Association
and Other Non-Union Salaried Retirees of Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------x    Chapter 11 Case No. 05-44481 (RDD)
                                                 :
In re:                                           :    (Jointly Administered)
                                                 :
DELPHI CORPORATION, et. al.,                     :
                                                 :
         Debtors.                                :
                                                 :
                                                 :
-------------------------------------------------x
```

## EXPEDITED MOTION FOR STAY PENDING APPEAL

The Delphi Salaried Retirees Association ("DSRA") and other non-union salaried retirees of Delphi Corporation and its affiliated debtor entities (collectively "Delphi Retirees") hereby request, pursuant to the provisions of Rule 8005 of the Federal Rules of Bankruptcy Procedure, an expedited stay of the Court's Order declining to appoint an official retiree committee pursuant to Section 1114(d) of the Bankruptcy Code, 11 U.S.C. § 1114(d).[1] That Order held that the protections of Section 1114 do not apply to Debtors' motion to terminate employee retiree benefit plans and programs that Delphi reserved the right to amend or modify, and authorized Debtors to terminate all subsidies for amendable retiree benefit plans and programs, effective April 1, 2009 and without complying with Section 1114(e).  The Delphi Retirees seek this stay, for no more than 90 days, pending resolution of an expedited appeal of the Court's order to the United States District Court for the Southern District of New York.  The Delphi Retirees further request that the stay be granted on an expedited basis and ask that the Court rule on this motion at the already scheduled hearing in connection with this matter on March 11, 2009.

This application is based on the following grounds:

1.    Debtors filed their voluntary petitions for reorganization relief under Chapter 11 of the Bankruptcy Code on October 8, 2005 and October 14, 2005.  As one of their first day motions, Debtors filed a Motion for Order (I) Appointing Unions As Authorized Representatives For Union-Represented Retirees Under 11 U.S.C. §§ 1114(c) And 1114(d) Or, In the Alternative, (II) Establishing Procedures For Solicitation, Nomination, And Appointment of Committee of Retired Employees [Docket No. 15].  In that motion, Debtors asserted that they "do not at this time plan to eliminate retiree health care for salaried and management retirees because these retirees are differently situated than the Union-represented retirees. . . .  The Debtors will continue to monitor the need to eliminate these benefits, however, and reserve the right to seek appointment of a retiree committee for non-union retirees later in these cases."  *Id.* at ¶ 18.

---

[1]  All further statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2.      On November 4, 2005 certain retirees of Debtors filed a Motion or Appointment of Official Committee of Retirees Pursuant to 11 U.S.C. § 1114(d) Consisting of Persons Receiving Retiree Benefits Not Covered by a Collective Bargaining Agreement ("Original Motion to Appoint Section 1114 Committee") [Docket No. 874].  The retirees argued that a "Retiree Committee composed of non-hourly retirees appropriately should be established now, rather than on the Debtors' strategic timetable for modifying or eliminating those benefits later in the case.  Establishing a Committee now would be more efficient that [sic] awaiting the Debtors' later rush to modify retiree benefits, with the Retirees Committee similarly rushing to hire professionals, gauge the adequacy of and review Debtor's financial disclosures, and ensure compliance with section 1114(f) procedures."  *Id.* ¶ 10.  The retirees' further argued that, since Debtors contended that they had a unilateral right to terminate or modify salaried retirees' benefits, fairness and judicial efficiency called for appointment an official Section 1114(d) committee sooner rather than later to begin investigating those contentions.  *Id.* ¶ 11.

3.      Debtors opposed the Original Motion to Appoint Section 1114 Committee on the ground that it was premature because Debtors had not determined if, and to what extent, they would seek to modify the benefits of the non-union salaried retirees, and there was no need to appoint a committee because they would provide adequate notice in advance before seeking to modify benefits.  [Docket No. 1486, ¶¶ 1, 7.]

4.      Relying on the Debtors' representations in their opposition, the retirees who filed the Original Motion to Appoint Section 1114 Committee withdrew their motion.  [Docket No. 1295.]

5.      As predicted in the Original Motion to Appoint Section 1114 Committee, without any forewarning, on February 4, 2009 Debtors filed a motion seeking to eliminate all subsidies for retiree benefit plans and programs for non-union salaried retirees effective April 1, 2009 (the "Termination Motion").  [Docket No. 14705.]  Debtors argued they did not need to comply with Section 1114 because they retained the right to amend or terminate the retiree benefits outside of bankruptcy, and therefore Section 1114 did not apply.  *Id.* at ¶¶ 46-48.  They further argued that,

because Section 1114 did not apply to amendable benefits, no official committee of retirees
should be appointed pursuant to Section 1114(d).  *Id.*¶ 49.

6.      In response, three groups of retirees and approximately 1,500 individually
affected retirees opposed the Termination Motion.  In addition, the retirees who filed the Original
Motion to Appoint Section 1114 Committee renewed their motion, and several other retirees also
sought the appointment of an official Section 1114(d) Committee.  [Docket Nos. 14882
(incorporating Docket No. 874), 14886, 15283, 16297.]

7.      Debtors again objected to the motions to appoint a retirees committee, this time
on the grounds that Section 1114 does not apply to employee retiree benefit plans and programs
that Debtors reserved the right to amend or modify, and therefore that the Debtors were under no
obligation to propose less draconian modifications to the benefit programs than outright
termination, and no Committee should be appointed.  [Docket No. 16327, ¶¶ 33-42.]

8.      The Court heard argument on February 24, 2009.  At the hearing, the Court
concluded that the protections of Section 1114 do not apply to employee benefit plans and
programs that may be unilaterally modified or terminated outside of bankruptcy, and therefore
that no Section 1114(d) Committee need be appointed.  The Court thus granted the Debtors'
motion and authorized the Debtors' to terminate – as soon as April 1, 2009 – all subsidies for
amendable retiree benefit plans and programs.

9.      The Court issued its written ruling on February 25, 2009.  [Docket No. 16380.]
Although the Court authorized a limited retiree committee, the committee's limited purpose is
(a) to gather and present evidence that the benefits of any individual or group of retirees have
vested, and (b) to meet and confer with the Debtors concerning preserving access to replacement
benefits or to negotiate consensual modifications of the Court's order with Delphi in return for
giving up (on behalf of all retirees) the right to appeal.  The Committee was ordered to produce a
report to the Court on these issues no later than March 6, 2009.

10.     The Committee was appointed on February 26, 2009, and engaged counsel on
February 27, 2009, exactly one week before the report concerning the investigation into whether

any of the approximately 15,000 non-union salaried retirees have vested as opposed to amendable benefits.  [Docket No. 16384.]

11.    On March 4, 2009, the Delphi Retirees filed a Notice of Appeal of that portion of the Court's order (1) concluding that the protections of Section 1114 do not apply to amendable employee retiree benefit plans and programs, (2) refusing to appoint a full-purpose official retiree committee pursuant to Section 1114(d), and (3) authorizing Debtors to terminate **all** non-union salaried retiree benefit plans and programs unless any individual or group of retirees could establish that their benefits are vested.  [Docket No. 16404.]

12.    As noted above, the Court's February 25 Order authorizes the Debtors to terminate all subsidies for retiree benefit plans and programs for non-union salaried retirees effective April 1, 2009.  Although the Delphi Retirees are requesting the appeal of that Order to be expedited in the District Court, it will not be possible to have the appeal heard and decided before the Delphi Retirees' benefits are terminated.

13.    If this Court refuses to stay the February 25 Order, the Delphi Retirees will be seriously and irreparably harmed by (a) the lack of an official retirees' committee under Section 1114(d) to represent their interests and negotiate over consensual modifications to the retiree benefit plans, (b) the inability to protect against unilateral termination of all benefits with very little notice as prohibited by Section 1114(e), (c) the loss of all subsidies for health and life insurance benefits, (d) the failure of the Debtors to propose Section 1114(f) modifications to the benefit plans that are necessary, but less harmful to Delphi Retirees than outright termination, and fair and equitable within the meaning of Section 1114(g), and (e) the risk of benefit loss – including inadvertent loss of benefits – because retirees are unaware their benefits will lapse.

14.    In fact, the Delphi Retirees are already harmed by Debtors' lack of notice of the intent to terminate benefits and lack of a representative and the 1114 process to protect their interests.    There is a serious risk that numerous retirees will lose their health benefits because of the lack of advanced notice about the elimination of subsidized health and life insurance benefits.

15.     First, retirees who are traveling or who have moved may not get the notice that their benefits will lapse in time to take action by March 27, 2009 to continue those benefits, even, at the retiree's cost.

16.     Second, Debtors' notice to its retirees of the ability to continue benefits was seriously misleading.  The original notice to retirees stated that registered or express mail responses would not be sufficient to elect to continue coverage and then included an incorrect facsimile number to which the retirees could respond, in an incorrect area code.

17.     Third, Debtors' notice to retirees inaccurately did not inform most of them that they were entitled to lifetime COBRA continuation coverage, despite the provisions of 29 U.S.C. § 1163(6) (modification of benefits during a bankruptcy is a COBRA "qualifying event") and 29 U.S.C. § 1162(2)(A)(iii) (COBRA continuation coverage is provided for life if the qualifying event is modification of benefits in bankruptcy).  That is critical, because retirees are wrongfully not even being given the opportunity to elect lifetime COBRA continuation coverage.  COBRA continuation coverage, in turn, would entitle retirees aged 55-65 to a subsidy of 65% to 80% of their health care premium costs under the Health Coverage Tax Credit in the event that the PBGC takes over their pensions, which appears increasingly likely in the near future for debtors' retirees.  See 26 U.S.C. § 35.  Because of the short time involved and the inaccurate and misleading notice, thousands of retirees may miss out on up to a decade of subsidized medical care through the Health Coverage Tax Credit because of the rushed timing and improper implementation of these benefit subsidy cuts.

18.     Fourth, retirees may not have the resources to continue critical medical benefits or time to transition without interruption to a more affordable program.

19.     Finally, because of the lack of notice, the misleading notice, and short time before termination of Debtors' subsidies, there is a danger that a large number of retirees will lose coverage and not reinstate that coverage until several months go by and they are faced with urgent medical needs.  By then, it will be too late for them to get pre-existing medical problems covered by a replacement group health plans.  Under 29 U.S.C. § 1181, if there is a lapse of more

than 63 days in coverage under a group health plan, any subsequent group health plan can exclude coverage for extensive categories of preexisting conditions for up to twelve months.  If the lapse in health coverage lasts more than 63 days, retirees with pre-existing conditions would not be able to obtain health coverage for those preexisting conditions for 12 months under another group plan and would not have any insurance coverage for those conditions for that period.

20.    At least some stay is also necessary to permit the Section 1114 Committee to have the opportunity to negotiate some modification of this Court's order consensually with the debtors in return for giving up appeal rights on behalf of the retirees.

21.    Additionally, a stay is necessary to avoid large administrative claims from being incurred, particularly if the Court's ruling is reversed upon appeal.

22.    If the February 25 order is stayed pending an expedited appeal and the Delphi Retirees are unsuccessful in their appeal, no party to this action will have been injured.  The Delphi Retirees have already filed their Statement of Issues and Designation of Record, and will request that the appeal be expedited in the District Court.  Even if such request is not granted by the District Court, bankruptcy appeals are, under the Federal Rules of Bankruptcy Procedure, expedited.  If the appeal is unsuccessful, Debtors may then terminate the retiree benefits in accordance with the Court's order without having incurred a lengthy delay.

23.    Because the Court's order allows Debtors' to terminate **all** Delphi Retiree benefits that are amendable outside of bankruptcy (and the Court concluded that all the retiree plans and programs are amendable, subject to proof by any individual or group of retirees that such plans and programs are vested) as soon as April 1, 2009, the Delphi Retirees respectfully request the stay pending appeal on an expedited basis without the need for hearing and in the alternative ask that the Court rule on this motion at the already scheduled hearing in connection with this matter on March 11, 2009.

## **Memorandum of Law**

24.    The legal points and authorities upon which this Motion to Stay relies are
incorporated herein, and therefore, the Delphi Retirees respectfully request that the requirement
of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be
deemed satisfied..

WHEREFORE the Delphi Retirees respectfully request that this Court enter an order in
the form attached hereto granting the relief requested herein, and such other and further relief as
may be just, necessary and appropriate.

Dated:        San Francisco, California
              March 5, 2009

Attorneys for Delphi Salaried Retirees Association
and Other Non-Union Salaried Retirees of Debtors

By:        _____*/s/ Neil A. Goteiner*_____
          Neil A. Goteiner

Neil A. Goteiner (NG 1644)
Dean M. Gloster, *Pro Hac Vice* (pending)
Kelly A. Woodruff, *Pro Hac Vice* (pending)
FARELLA BRAUN & MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480
ngoteiner@fbm.com

    -and-

Trent P. Cornell, *Pro Hac Vice* (pending)
Jon D. Cohen, *Pro Hac Vice* (pending)
STAHL COWEN CROWLEY LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603
Telephone:  (312) 641-0060
Facsimile:  (312) 641-6959
tcornell@stahlcowen.com