Hearing Date & Time: March 17, 2009 at 10:00 a.m. (prevailing Eastern Time)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Albert L. Hogan
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>DEBTORS' OPPOSITION TO EXPEDITED MOTION FOR STAY PENDING APPEAL</u>

Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this response (the "Response") in opposition to the Delphi Salaried Retirees Association's (the "Association") Expedited Motion for Stay Pending Appeal (Docket No. 16426) (the "Motion")  In opposition to the Motion, the Debtors respectfully represent as follows:

## Preliminary Statement

For three and a half years after the commencement of these chapter 11 cases the Debtors maintained discretionary, at-will retirement welfare benefit plans for their salaried employees and retirees at a cost of approximately $250 million.  Throughout that time, while working to formulate and then finance an emergence from chapter 11, the Debtors maintained on their balance sheet a liability that grew to more than $1 billion related to the estimated future expense for such discretionary spending.  In late 2008 and early 2009, however, the global economy deteriorated into what is generally regarded as the most severe downturn since World War II, and the U.S. automotive industry absorbed unprecedented reductions in demand.  As these events unfolded the Debtors and their stakeholders became increasingly aware that, regretfully, Delphi is no longer in a position to continue discretionary benefits of this scope either on a balance sheet or short-term cash flow basis.  Indeed, at the hearing on the Debtors' Salaried OPEB Termination Motion (Docket No. 14705), this Court recognized, based on the evidence presented, that the projected savings of approximately $1.5 million per week are of extreme importance given the Debtors' substantial short-term liquidity issues, and that the Debtors are well within their business judgment in believing that they need to eliminate the balance sheet liability related to salaried OPEB to support their reorganization.

2

At the hearing on the Debtors' Motion, this Court also found that the Debtors had established, even under a heavy burden standard, that they maintained at all times the authority to modify or terminate salaried OPEB. Nonetheless, and notwithstanding the obvious financial imperatives of the Debtors' current situation, the Association through its Motion seeks to force the Debtors to pay up to another $20 million for benefits that the Debtors have no legal obligation to provide. The Association simply ignores this fact and claims that if its Motion is granted "no party" would be injured.

In contrast, the Association contends that if the Debtors are permitted to implement the authority approved by this Court, its members may possibly suffer harms related to a loss of coverage under Delphi's welfare benefit plans. The Association ignores the fact that every affected retiree has the option to continue participation in such plans with no lapse in coverage on a self-pay basis. Indeed, based on the Debtors' own proposal as reflected in this Court's Final OPEB Termination Order (Docket No. 16448), affected retirees who do not elect to continue coverage by March 28, 2009 will receive a further "second chance" notice and opportunity to continue their coverage without interruption.

The Association also fails to even address the statutory requirement for a substantial bond in the event the Court were inclined to grant the Motion. Under the law of this Circuit, the Association should be required to post a bond commensurate with the threatened loss to Delphi. Moreover, the failure to post a required bond would provide cause to vacate an otherwise proper stay order.

The Debtors recognize that the increased cost of health coverage and other benefits will be a burden to retirees, but the issue at the center of the Association's Motion is ultimately about who will bear the economic cost of such coverage over the next 90 days. Because the

3

Association fails to meet any of the elements of the "heavy burden" it must bear to obtain a stay, there is no basis to simply shift the cost of discretionary spending back on the Debtors pending the Association's appeal. The Association's Motion should be denied.

Argument

A.    The Motion Is Deficient On Its Face And Must Be Denied

The Association fails to sustain the "heavy burden" necessary to obtain a stay pending appeal pursuant to Federal Rule of Bankruptcy Procedure 8005. See In re Adelphia Commc'ns Corp., 333 B.R. 649, 659 (S.D.N.Y. 2005) (noting that "[a] party seeking a stay pending appeal carries a heavy burden"). To obtain a stay pending appeal, the Association must demonstrate that (1) the Association's members would suffer irreparable injury if a stay were denied; (2) the Debtors would suffer no substantial injury if the stay were granted; (3) public interest favors a stay; and (4) there is a substantial possibility of success on the merits of the Association's appeal. See, e.g., Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993); In re Adelphia Commc'ns Corp., 333 B.R. at 659.

"All four criteria must be satisfied to some extent before a stay is granted." In re Adelphia Commc'ns Corp., 333 B.R. at 659. The "[f]ailure to satisfy one prong of this standard for granting a stay will doom the motion." Turner v. Citizens Nat'l Bank of Hammond (In re Turner), 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997); see also, e.g., ePlus, Inc. v. Katz (In re Metiom, Inc.), 318 B.R. 263, 271 (S.D.N.Y. 2004) (explaining that failure to satisfy one prong "dooms the motion"); cf. ACC Bondholder Group v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.), 361 B.R. 337, 347 (S.D.N.Y. 2004) (balancing four factors instead of adopting "rigid rule").

In its Motion, the Association fails even to acknowledge the substantial injury that Delphi would suffer if a stay were granted. Indeed, the Association merely makes the unsupported

4

allegation that "[i]f the February 25 order is stayed pending an expedited appeal and the Delphi Retirees are unsuccessful in their appeal, no party to this action will have been injured." (Mot. ¶ 22.) The evidence is clearly to the contrary. In particular, a delay in the Debtors' termination of contributions to salaried OPEB for three months at a cost approaching $20 million (i.e., approximately $200,000 per day, $1.5 million per week) would significantly impact the Debtors' liquidity at a time of severe short-term liquidity issues. Furthermore, delayed termination would introduce uncertainties into the marketplace and threaten the Debtors' efforts to satisfy their emergence capital funding needs. (See Modified Bench Ruling at 21-22 (Docket 16443).) The reality of the global economy and Delphi's financial situation mandates that the Debtors terminate salaried OPEB without delay. Indeed, the Association has not contested that Delphi's projected cash savings from elimination of salaried OPEB will exceed $70 million per year. (Miller Decl. ¶ 9 (Docket No. 16421).) Thus, if the Association's stay is granted, the Debtors will incur approximately $6 million per month in costs that it will never recover, and which will place a further liquidity strain on the Company. The Court already recognized the importance to the Debtors of saving this money. (Modified Bench Ruling at 21-22 (Docket 16443).) The Association's failure to address the injury to the Debtors is fatal to its Motion. See Triple Net Invs. IX, LP v. DJK Residential, LLC (In re DJK Residential, LLC), Nos. 08-10375 (JMP), M-47 (GEL), 2008 WL 650389, at *4 (S.D.N.Y. Mar. 7, 2008) (denying stay when movant failed to refute that debtor would be harmed by stay).

Similarly, the Association fails to adequately demonstrate that, in the absence of a stay, its members will suffer irreparable harm that is "'neither remote nor speculative, but actual and imminent.'" E.g., In re Calpine Corp., No. 05-60200 (BRL), 2008 WL 207841, at *4 (Bankr. S.D.N.Y. Jan 24, 2008) (citations omitted). This failure is especially noteworthy because in

5

order to warrant associational standing, the Association must prove that each of its members has standing in his or her own right. See, e.g., Bano v. Union Carbide Corp., 361 F.3d 696, 713 (2d Cir. 2004).

Nevertheless, the Association makes only speculative allegations regarding harms to unidentified retirees. For example, the Association claims that "retirees who are traveling or who have moved may not get the notice that their benefits will lapse in time to take action." (Mot. ¶ 15 (emphasis added).) Similarly, the Association speculates that "thousands of retirees may miss out" on the Health Coverage Tax Credit (id. ¶ 17 (emphasis added)), "retirees may not have the resources to continue critical medical benefits" (id. ¶ 18 (emphasis added)), and retirees may lose coverage and, as a result of possibly not reinstating coverage for several months, may not be able to obtain coverage for pre-existing conditions (id. ¶ 19). The Debtors' follow-up notice to all retirees who have not elected continuation of coverage by March 28, 2009, which will offer retirees a second and final chance to elect continuation of coverage (see Final OPEB Termination Order ¶ 7 (Docket No. 16448)), addresses many if not all of the concerns raised by the Association. The fact is, affected retirees will be able to continue their health coverage, on a self-pay basis, while the Association pursues its appeal. And, if the Association is ultimately successful, members will assert whatever rights to compensation for costs of coverage incurred during the appeal that they believe exist.

The Association's remaining assertions of "irreparable harm" similarly fail. First, in an apparent attempt to relitigate the merits of the timing of the OPEB termination notice, the Association asserts that the "short" notice period amounts to irreparable harm. (See Mot. ¶¶ 17, 19.) This Court already found, however, that the timing of the notice was proper. (Provisional Salaried OPEB Termination Order ¶ 3 (Docket No. 16380).) Moreover, the Court formed the

6

Retirees' Committee and provided additional time and a supplemental hearing for the Retirees' Committee to come forward with additional evidence. Therefore, the retirees are not in jeopardy of being harmed by the notice period itself.[1]  Second, the Association claims that the notice was "misleading" because it contained an incorrect facsimile number.  (Mot. ¶ 16.)  The Association cannot seriously contend that this clerical error by the Debtors' agent amounts to irreparable harm, however, because the Debtors quickly identified the error and corrected it in a supplemental notice.  Moreover, as discussed above, the "second chance" notice to be mailed at the end of March further ensures that no one was irreparably harmed by the incorrect fax number.

Additionally, the Association incorrectly asserts that the notice was "inaccurate and misleading" because it did not inform retirees of their entitlement to lifetime COBRA continuation coverage.  (Id. ¶ 17.)  However, lifetime COBRA continuation coverage is triggered only when a loss of coverage occurs "within one year before or after the date of commencement of [a bankruptcy] proceeding."  I.R.C. § 4980B(f)(3)(F); see also id. § 4980B(f)(2)(B)(i)(III) (providing for lifetime COBRA continuation coverage "[i]n the case of a qualifying event described in [I.R.C. § 4980B(f)(3)(F)] (relating to bankruptcy proceedings)").  Because the retirees did not lose coverage within the 24-month period surrounding the Debtors' commencement of these bankruptcy proceedings in October 2005, they do not qualify for lifetime COBRA continuation coverage. The Court indicated agreement with the Debtors' position on this issue during the March 11, 2009 hearing and factored that into the finding on the

---

[1] Indeed, the facts demonstrate that the Debtors have sufficiently and repeatedly provided notice of their intention to terminate OPEB. Specifically, the Debtors sent a copy of the OPEB Termination Motion via overnight delivery to each retiree on February 4, 2009, mailed a letter notification regarding OPEB termination to all retirees on February 5, 2009, mailed coverage election packages to each retiree on February 25, 2009, mailed a letter regarding the administrative process of the OPEB termination to all retirees on February 26, 2009, and posted information regarding OPEB termination on www.delphidocket.com on February 28, 2009.  It is also worth noting that numerous newspapers throughout the country have published articles regarding Delphi's intention to terminate OPEB.

7

Debtors' proper exercise of their business judgment. Accordingly, the Association has failed to demonstrate that its members will suffer irreparable harm in the absence of stay.[2]

The Association also fails to demonstrate that there is a substantial possibility of success on the merits of its appeal and fails to show that the public interest favors a stay. Indeed, the Association does not even address — and the record demonstrates that the Association cannot meet it burden to prove — these factors. In fact, the Association is unlikely to succeed on the merits of its appeal. This Court's well-reasoned decision that section 1114 of the Bankruptcy Code does not abrogate the Debtors' pre-bankruptcy right to terminate salaried OPEB is the same result reached by the majority of courts. Moreover, this Court imposed on the Debtors a heavy burden to prove that retirees' benefits had not vested, which the Debtors satisfied. In contrast, the Association "simply rehash[es] the same arguments . . . that this Court previously rejected" and fails to show any likelihood of success on the merits of its appeal. In re Calpine Corp., 2008 WL 207841, at *6. Accordingly, this Court must deny the Association's Motion. See In re Metiom, Inc., 318 B.R. at 271 (denying motion for stay when movant failed to show substantial possibility of success on merits of its appeal); T.R. Acquisition Corp. v. Marx Realty & Improvement Co. (In re T.R. Acquisition Corp.), 208 B.R. 635, 637 (S.D.N.Y. 1997) (same); Green Point Bank v. Treston, 188 B.R. 9, 12 (S.D.N.Y. 1995) (same).

Finally, it is evident that the public interest does not favor a stay in these circumstances because a stay would require Delphi to make significant cash outlays and retain a balance sheet liability that would further place the Debtors' reorganization in jeopardy to the detriment of all

---

[2] The Association also claims that "a stay is necessary to avoid large administrative claims from being incurred [in the event that] the Court's ruling is reversed on appeal." (Mot. ¶ 21.) The Debtors' incurring administrative claims would not harm the Association or its members and therefore is not a valid consideration. Similarly, allowing extra time for consensual resolution (id. ¶ 20) is not a valid reason to impose a stay.

8

stakeholders. Because the Association fails to come forward with any evidence to the contrary, this Court should deny the Motion. See In re DJK Residential, 2008 WL 650389, at *4 (denying motion for stay when movant failed to show, inter alia, that public interest favored stay).

B.    If A Stay Is Granted, The Association Must Post A Supersedeas Bond

Assuming arguendo that the Association is entitled to a stay, the Association "'has the burden of demonstrating why the court should deviate from the ordinary full security requirement.'" In re DJK Residential, 2008 WL 650389, at *2 (citation omitted).

> [T]he party seeking [a] stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment. The bond requirement should not be eliminated or reduced unless doing so "does not unduly endanger the judgment creditor's interest in ultimate recovery."

De La Fuente v. DCI Telecomms., Inc., 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (citations omitted); see also In re Adelphia Commc'ns Corp., 361 B.R. at 368 (conditioning stay on posting of $1.3 billion bond); In re Adelphia Commc'ns Corp., 367 B.R. 84, 90 (S.D.N.Y. 2007) (explaining that stay was vacated when appellants failed to post required bond).

The Association fails to make any such showing (and, indeed, completely fails to address this issue). No one, including the Debtors, takes any satisfaction in having obtained the judgments embodied in this Court's OPEB Termination Orders. However, the fact that the Association's members comprise a sympathetic class does not provide sufficient legal justification for the elimination of the full security requirement. Moreover, under the circumstances, a stay without a bond is tantamount to a reversal of this Court's Provisional and Final OPEB Termination Orders (Docket Nos. 16380, 16448) because, if the Association loses on appeal, there is no real party in interest to redress the Debtors' interim losses. Thus, in the event that the Court grants the Motion and stays the OPEB Termination Orders for 90 days, the

9

Association must post a supersedeas bond of at least $20 million dollars to cover the Debtors' monetary losses throughout the duration of a 90-day stay.

## Conclusion

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that this Court enter an order (i) denying the Association's Expedited Motion for Stay Pending Appeal (Docket No. 16426) and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
March 13, 2009

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP

By: /s/ John Wm. Butler, Jr.
 John Wm. Butler, Jr.
 Albert L Hogan III
 Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
 Kayalyn A. Marafioti
 Thomas J. Matz
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession