SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

          - and -

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5300
Robert A. Siegel
Tom A. Jerman

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
      In re                         :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-_____ (___)
                                    :
                   Debtors.    :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER (I) APPOINTING UNIONS AS AUTHORIZED REPRESENTATIVES
FOR UNION-REPRESENTED RETIREES UNDER 11 U.S.C. §§ 1114(c) AND 1114(d) OR,
IN THE ALTERNATIVE, (II) ESTABLISHING PROCEDURES FOR SOLICITATION,
NOMINATION, AND APPOINTMENT OF COMMITTEE OF RETIRED EMPLOYEES

("RETIREE COMMITTEE MOTION")

           Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11

U.S.C. § 1114 and Fed. R. Bankr. P. 2002(m) and 9006 (a) appointing the International Unions[2]

as authorized representatives for Union-represented retirees under sections 1114(c) and (d) of the

---

[1]      In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing
General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas
Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding),
Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc.,
Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems
Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems
Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc.,
Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics
(Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi
International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company,
Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi
Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings
Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc.,
Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company,
Specialty Electronics, Inc., and Specialty Electronics International Ltd.

[2]      The International Unions, as that term is used herein, are the United Auto Workers, the International Union
Of Electronic, Electrical, Salaried, Machine And Furniture Workers-Communications Workers Of
America, the United Steelworkers Of America, the International Association Of Machinists And Aerospace
Workers, the International Brotherhood Of Electrical Workers, and the International Union of Operating
Engineers.

Bankruptcy Code, or, in the alternative, (b) establishing procedures for solicitation, nomination, and appointment of a committee of retired hourly employees in the Debtors' chapter 11 cases to represent such retirees.  In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005. In further support of this Motion, the Debtors respectfully represent as follows:

<div align="center">Background</div>

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have moved this Court for an order for joint administration of these chapter 11 cases.

2.    No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 1114 of the Bankruptcy Code, Rules 2002(m) and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-2 and 9006-1.

B.        Current Business Operations Of The Debtors

5.        With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1

billion,[3] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.        Over the past century, the operations which are now owned by Delphi have

become a leading global technology innovator with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company is arguably the single

largest global supplier of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology. The Company's technologies and products are present

in more than 75 million vehicles on the road worldwide.  The Company supplies products to

nearly every major global automotive original equipment manufacturer with 2004 sales to its

former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to

each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company,

Ltd., and Volkswagen Group exceeding $850 million.

7.        As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  In the U.S., the Debtors employ

approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites

---

[3]        The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

4

and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base.  The Debtors also believe that this must be accomplished in advance of  the expiration of certain

5

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company

generated more than $2 billion in net income.  Every year thereafter, however, with the exception

of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net

operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the

marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005.

The Company experienced net operating losses of $608 million for the first six months of

calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion

less in sales than during the same time period in calendar year 2004.[4]

11.    The Debtors believe that three significant issues have largely contributed to

the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

legacy liabilities and operational restrictions driven by collectively bargained agreements,

including restrictions preventing the Debtors from exiting non-strategic, non-profitable

operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive

U.S. vehicle production environment for domestic OEMs resulting in the reduced number of

motor vehicles that GM produces annually in the United States and related pricing pressures, and

(c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

---

[4]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

portfolio, operational issues and forward looking revenue requirements. Having concluded that

pre-filing discussions with its Unions and GM were not leading to the implementation of a plan

sufficient to address the Debtors' issues on a timely basis, the Company determined to commence

these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

businesses. This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan. The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    To successfully reorganize, the Debtors require significant cost reductions

and labor modifications, including elimination of retiree medical and life insurance benefits for

its hourly active employees and current hourly retirees whose benefits were covered by a collective bargaining agreement.  Under section 1114 of the Bankruptcy Code, the Debtors may eliminate retiree medical and life insurance benefits only if the Debtors and the "authorized representative" of the current hourly retirees agree to an elimination of retiree medical and life insurance benefits, or if the Debtor and the authorized representative do not reach an agreement and this Court authorizes elimination of such benefits pursuant to the standards set forth in sections 1114(g) and/or (h).  Thus, to reach an agreement or to seek relief from the Court, an "authorized representative" of the current hourly retirees must be recognized and/or appointed.  Although section 1114(c) deems that "[a] labor organization shall be the authorized representative of persons receiving any retiree medical and life insurance benefits covered by any collective bargaining agreement to which that labor organization is signatory," in the event that a labor organization elects not to serve as the authorized representative, this Court must appoint a committee of retired employees from among such persons to serve as their authorized representative.

16.    In this case, the Debtors believe that the International Unions representing the various employee groups will agree to serve as the authorized representatives for their respective current retirees for purposes of section 1114.  In the event, however, that one or more of the International Unions refuse to serve as the authorized representatives of retired hourly employees, the Debtors request an order pursuant to section 1114 of the Bankruptcy Code approving procedures for the solicitation, nomination, and appointment of members to a committee to serve as the "authorized representative" of those retired hourly employees of the Debtor who are entitled to receive "retiree benefits" within the meaning of section 1114(a) of the Bankruptcy Code, and who are not represented in these bankruptcy cases by a labor organization

acting as their authorized representative (the "Retiree Committee"). The Debtors further request a hearing on this Motion at the first day hearing because any delay in authorizing the procedural relief requested in this Motion would force the Debtors to incur substantial costs related to maintaining the existing retiree medical and life insurance benefit plans.

A.    The Need For Cost Reductions And Labor Modifications

17.    The Debtors are intent on achieving a successful reorganization with the full and voluntary participation of the International Unions and local unions representing the employees of the Debtors (collectively, the "Unions"). To carry out their restructuring plans, the Debtors must obtain cost reductions and labor modifications, including elimination of retiree medical and life insurance benefits for hourly active employees and current retirees whose benefits were covered by a collective bargaining agreement.[5] A vast majority of the Debtors' union-represented employees and retirees are enrolled in company-sponsored medical and insurance benefits plans that are self-insured. There is no guarantee, however, that the Debtors' efforts to obtain cost reductions and labor modifications on a consensual basis will be successful. Accordingly, because these cost reductions and labor modifications are necessary for the Debtors' successful reorganization, the Debtors intend to file, on or about December 16, 2005, various motions to (a) reject the collective bargaining agreements of those Unions with which, as of that date, the Debtors do not have ratified, signed, agreements for modifications to their collective bargaining agreements, and (b) eliminate retiree medical and life insurance benefits of existing Union-represented retirees.

---

[5]    11 U.S.C. § 1114(a) defines "retiree benefits," which shall be referred to herein as "retiree medical and life insurance benefits," to mean: payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title. 11 U.S.C. § 1114(a).

18.    The Debtors do not at this time plan to eliminate retiree health care for salaried and management retirees because these retirees are differently situated than the Union-represented retirees.  The Debtors have the right unilaterally to eliminate health care for retirees, and earlier this year eliminated health care benefits for salaried and management retirees over age 65.  Furthermore, such retirees are not entitled to benefits under the General Motors benefit guarantee, and the savings achieved by elimination of pre-65 health care would be significantly offset by the costs associated with the legal requirement to offer such retirees lifetime COBRA benefits.  The Debtors will continue to monitor the need to eliminate these benefits, however, and reserve the right to seek appointment of a retiree committee for non-union retirees later in these cases.

19.    Therefore, by this Motion, the Debtors ask this Court to (a) appoint the International Unions as the authorized representatives for their respective retiree groups and (b) in the event that one or more International Union refuses to serve as the authorized representative, to establish procedures for the solicitation, nomination, and approval of a Retiree Committee to represent those retirees without representation in negotiations for the elimination of retiree medical and life insurance benefits.

B.    Request For Procedures For Solicitation,
       Nomination, And Approval Of A Retiree Committee.

20.    Section 1114(e)(1) of the Bankruptcy Code provides generally that a chapter 11 debtor shall timely pay and not eliminate retiree medical and life insurance benefits. Elimination of such benefits, however, is permitted if the debtor and the "authorized representative" of the retirees agree to an elimination of retiree medical and life insurance benefits, or if the debtor and the authorized representative do not reach an agreement and the Court authorizes

elimination of such benefits pursuant to the standards set forth in sections 1114(g) and/or (h) of the Bankruptcy Code.

21.    In the event that the Debtors proceed under section 1114 of the Bankruptcy Code, section 1114(f) requires the Debtors to "make a proposal to the authorized representative of the retirees" and to "meet . . . with the authorized representative to confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits."

22.    Section 1114(c) of the Bankruptcy Code provides that "[a] labor organization shall be the authorized representative of persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is signatory, unless (A) such labor organization elects not to serve as the authorized representative of such persons, or (B) the court, upon a motion by any party-in-interest, after notice and a hearing, determines that different representation of such persons is appropriate."

23.    In the event that a labor organization elects not to serve as the authorized representative of those persons receiving retiree medical and life insurance benefits covered by the relevant collective bargaining agreement, section 1114(c)(2) provides, inter alia, that the court shall, upon a motion by any party-in-interest, appoint a committee of retired employees from among such persons to serve as their authorized representative.

24.    In the instant case, the Debtors believe that the International Unions representing the various employee groups will agree to serve as the authorized representatives for their respective retirees for purposes of section 1114.  In the event, however, that one or more of the International Unions refuse to serve as the authorized representatives, the Debtors request an order pursuant to section 1114 of the Bankruptcy Code approving procedures for the solicitation, nomination, and appointment of members to a Retiree Committee to serve as the

"authorized representative" of those retired hourly employees of the Debtor who are entitled to receive "retiree benefits" within the meaning of Bankruptcy Code section 1114(a), and who are not represented in these bankruptcy proceedings by a labor organization acting as their authorized representative.

25.    The Debtors seek approval of certain procedures as set forth in this Motion, a summary of which follows:

(a)    Retirees (and, to the extent applicable, their surviving spouses, dependants, and beneficiaries)[6] whose retiree medical and life insurance benefits were initially conferred by a collective bargaining agreement between the Debtors and International Unions ("Union Retirees") will be deemed to be represented by the International Unions as their authorized representative for purposes of section 1114, unless any such International Union gives written notice to the Debtors that it will not serve as such retirees' authorized representative, such written notice being delivered so as to be actually received by the Debtors' counsel (and others as set forth below) on or before October 18, 2005.

(b)    Any International Union that will serve as the authorized representative of its respective Union Retirees pursuant to section 1114(e) will not be represented on the Retiree Committee.

(c)    In the event that an International Union elects not to represent its respective Union Retirees for purposes of section 1114, and gives notice of such election in accordance with the foregoing subparagraph 17(a), the Debtors will solicit Union Retirees from each such "Unrepresented Union" to serve as an authorized representative on the Retiree Committee. Nominations for representative(s) will be solicited from all Union Retirees for each Unrepresented Union (the "Unrepresented Union Retirees").

(d)    Once the Debtors have received nominations for representatives from any Unrepresented Union Retirees, the Debtors will review the nominations with the Office of the United States Trustee (the "U.S. Trustee"), who may choose to recommend nominees to this Court. Upon completing their review of nominees, on November 8, 2005, the Debtors will file with this Court a list of proposed candidates to serve on the Retiree Committee for appointment by this Court. All Unrepresented Union Retirees will have received a notice (attached as Exhibit A), indicating that the list of proposed candidates will be available at www.delphidocket.com or by contacting the Debtors' claims agent,

---

[6]    Section 1114(a) includes payments to surviving spouses and dependents of retired employees.

whose contact information will be contained in the notice. In addition, service of such list will be made to the Debtors' unions, the U.S. Trustee, the official committee of unsecured creditors (the "Creditors' Committee"), and other parties that have requested service of all pleadings in these cases. If no party files an objection to the proposed slate of candidates and serves such objection upon the Debtors, the U.S. Trustee, and the Creditors' Committee on or before November 15, 2005, this Court may order the appointment of such candidates to the Retiree Committee without further notice or hearing.

(e)     The Debtors will request that this Court appoint a single Retiree Committee to represent all Unrepresented Union Retirees for all purposes under section 1114. The Debtors will consult with the U.S. Trustee to determine the appropriate membership of the Retiree Committee to best reflect the composition of the retirees to be represented by the Retiree Committee.

C.     Internal Unions' Option To Elect Not To Serve As Authorized Representative

15.     The procedures proposed by the Debtors are consistent with the presumption embodied in the statute: unless a labor organization gives notice to the Debtors that it will not serve as an authorized representative, section 1114(c)(1) of the Bankruptcy Code provides that such union shall be the authorized representative of persons receiving retiree medical and life insurance benefits pursuant to a collective bargaining agreement to which the union is a party.

16.     With respect to any International Union which elects not to serve as an authorized representative, the relief requested by the Debtors would require that such International Union submit written notice of its election on or before October 18, 2005. The Debtors respectfully request that this Court direct that the International Unions shall give such notice of their election to the Debtors, their counsel, and the U.S. Trustee via overnight mail or facsimile at the following addresses:

Kevin M. Butler
Vice President, Human Resource Management
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815
Facsimile: (248) 813-2670

John Wm. Butler, Jr.
John K. Lyons
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
Facsimile: (312) 407-0411

Robert Siegel
Tom Jerman
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Facsimile: (202) 383-5414

Alicia M. Leonhard
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Facsimile: (212) 668-2255

17.    The ten calendar day period for an International Union to elect not to serve

as an authorized representative is reasonable because in the event that it becomes necessary for

the Debtors to proceed under section 1114, and an International Union does not wish to serve as

an authorized representative in that process, the Debtors will need sufficient time to solicit,

nominate, and seek the appointment of individual representative(s) of the appropriate retiree

constituency.  As is clear from the pleadings filed in these cases, the Debtors have a limited

period of time within which to implement cost reductions and labor modifications.  Should it be

necessary to proceed under section 1114, it will be important to move quickly through the

preliminary stages of constituting a Retiree Committee.  Setting a ten calendar day period during

which unions may opt-out gives the International Unions a reasonable time to make an election

under section 1114(c)(2), and at the same time does not unduly handicap the Debtors' efforts to

quickly constitute a Retiree Committee and seek an elimination in retiree medical and life

insurance benefits under section 1114.

D.    Notice To Union Retirees If A Union Elects Not To Serve As Authorized Representative

18.    If an International Union elects not to represent Union Retirees pursuant to

the procedures set forth above, on or before October 21, 2005, the Debtors will serve by regular

mail a "Request for Nominations to Retiree Committee," a "Response to Request for

Nominations to Retiree Committee," substantially in the form of Exhibit A, attached hereto,

and a copy of the order granting the Motion, on all Unrepresented Union Retirees.

19.    Unrepresented Union Retirees who wish to nominate an individual to serve

on the Retiree Committee will have until no later than November 4, 2005, to return nominations

to the Debtors.  The Request for Nominations will prominently state both (a) the deadline for

Unrepresented Union Retirees to return Responses to the Debtors (the "Response Deadline") and

(b) the address and/or facsimile number to which such Responses must be submitted.

E.    Selection Of Nominees

20.    On or before November 8, 2005, the Debtors will review the nominations

that are received by the Response Deadline, confer with the U.S. Trustee, and file with this Court

a list of proposed candidates to serve on the Retiree Committee for appointment by this Court.

All Unrepresented Union Retirees will have received a notice indicating that the list of

proposed candidates will be available at www.delphidocket.com or may be obtained by

contacting the Debtors' claims agent, whose contact information will be contained in the

notice.  In addition, service of such list shall be made to the Debtors' International Unions, the

U.S. Trustee, the Creditors' Committee (if then appointed), and other parties that have requested service of all pleadings on these cases.

21.    If no party files an objection to the proposed slate of candidates and serves such objection upon the Debtors, the U.S. Trustee, and the Creditors' Committee on or before November 15, 2005, this Court may order the appointment of such candidates to the Retiree Committee without further notice or hearing.  If any objection is filed, then this Court may order an expedited hearing to determine the composition of the Retiree Committee.

22.    The Debtors further request that this Court expressly limit the appointment of an International Union and/or a Retiree Committee pursuant to the procedures set forth herein for the sole purpose of representing retirees in connection with their rights arising under sections 1114 and 1129(a)(13) of the Bankruptcy Code and for no other purpose.

F.    <u>A Single Retiree Committee Is Sufficient Under Section 1114</u>

24.    A single Retiree Committee will adequately represent the interests of all Unrepresented Union Retirees and it will permit the Debtors to conduct focused negotiations with one entity.  Moreover, a single Retiree Committee will lessen the financial burden on the Debtors' estates.  Pursuant to section 1114(b)(2) of the Bankruptcy Code, a Retiree Committee may seek to have its reasonable out-of-pocket expenses, as well as the fees and costs of its advisors, paid out of the assets of the Debtors' estates.  More than one Retiree Committee would multiply the amount of costs and fees sought from the Debtors' estates.  Moreover, multiple Retiree Committees would needlessly complicate the negotiation process.

<div align="center">Applicable Authority</div>

25.    In the context of retiree medical and life insurance benefits, the retirees' interests are likely to be aligned, and there will not be any prejudice in appointing a single

<div align="center">16</div>

Retiree Committee.  To the extent that retirees' interests are not aligned, the Debtors submit that it is a far more efficient process for those differences to be reconciled within the Retiree Committee, rather than leaving to the Debtors the task of drafting proposals and conducting negotiations with multiple committees.  In this respect, the formation of a Retiree Committee is analogous to the formation of a creditors' committee.  Section 1114(b)(2) of the Bankruptcy Code supports this analogy by its references to sections 1102 and 1103, which govern creditors' and equity security holders' committees and establish the powers and duties of such committees. Even though unsecured creditors typically have disparate and conflicting interests in a bankruptcy case, it is highly unusual for more than one unsecured creditors' committee to be appointed.  See In re Sharon Steel Corp., 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989) ("In recognition of the Bankruptcy Code scheme that the reconciliation of differing interests of creditors within a single committee is the norm, the appointment of a separate committee is an extraordinary remedy ...").

26.    The Debtors' proposed procedures thus contemplate a single Retiree Committee to represent the interests of all retirees who do not have an authorized representative. Other courts have approved the single-committee structure.  See In re Ionosphere Clubs, Inc., 134 B.R. 515, 518 (Bankr. S.D.N.Y. 1991) (noting appointment of Retiree Committee to represent both retirees receiving benefits under union collective bargaining agreement and non-union management and clerical retirees); In re Patrick Cudahy Inc., 88 B.R. 895, 898 (Bankr. E.D. Wis. 1988) (appointing Retiree Committee to represent union and non-union retirees).

27.     In consideration of the foregoing, and in recognition of the exigent circumstances present here, the Debtors respectfully request that this Court enter an order as follows:

(a)     granting the International Unions until October 18, 2005, to deliver to the Debtors a notice of election not to serve as an authorized representative pursuant to section 1114(c) following the Entry Date;

(b)     appointing any International Union that fails to deliver such written notice prior to such date as an authorized representative of persons receiving any retiree benefits covered by any collective bargaining agreement to which that labor organization is a signatory pursuant to 11 U.S.C. § 1114(c) and directing that such International Union shall not be a member of the Retiree Committee;

(c)     approving the form of the "Request for Nominations to Retiree Committee" and "Response to Request for Nominations to Retiree Committee," which are attached hereto as Exhibit A, and which will be served by the Debtors by regular mail on or before October 21, 2005, if necessary; and

(d)     approving the proposed number, form, and method to determine the composition of the Retiree Committee.

<u>Notice</u>

28.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the relevant unions, (b) the Office of the United States Trustee, (c) the Debtors' 50 largest unsecured creditors, (d) counsel for the agent under the Debtors' prepetition credit facility, and (e) counsel for the agent under Debtors' proposed postpetition credit facility.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

18

Memorandum Of Law

29.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) establishing that the International Unions shall have until October 18, 2005, to deliver to the Debtors a notice of election not to serve as an authorized representative pursuant to section 1114(c), (b) appointing any International Union that does not deliver such a notice of election as the authorized representative of that International Union's respective retirees, and directing such International Union not to be a member of the Retiree Committee, (c) approving the form of the "Request for Nominations to Retiree Committee" and "Response to Request for Nominations to Retiree Committee," which are attached hereto as Exhibit A, and

which will be served by the Debtors on or before October 21, 2005, if necessary, (d)

approving the proposed form and method to determine the composition of the Retiree

Committee, and (e) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        October 8, 2005

<div style="margin-left:40%;">

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: s/ John Wm. Butler, Jr.    _____
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

   - and -

By: s/ Kayalyn A. Marafioti    _____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

</div>

EXHIBIT A

Request For Nominations To Retiree Committee
In re Delphi Corporation, et al., Case No. - ---, et al.

Attention Delphi Union Retirees:

Delphi has announced that it may seek to eliminate its retiree medical and life insurance benefits pursuant to section 1114 of the United States Bankruptcy Code. We regret having to make this decision, but we've determined that these changes are necessary to reorganize successfully.

In the event it elects to seek elimination of retiree medical and life insurance benefits under section 1114, Delphi will negotiate with a committee composed of "authorized representative(s)" of the various employee groups, as provided for in Section 1114 of the Bankruptcy Code.  It is expected that negotiations will take place over several weeks after the bankruptcy court appoints the Committee and that Committee members will need to be available for the entire timeframe.

**Representatives Of Union Retirees**
Section 1114 generally provides that the union is the authorized representative of individuals who retired from a job classification represented by that union.
In Delphi's case**, [---]** have elected to represent their retirees.  If the job classification you retired from is now represented by one of these unions, that union will serve as your authorized representative.

[---] have declined to serve as an "authorized representative;" accordingly, if the job classification you retired from is now represented by one of these unions, you are eligible to seek to serve on the Committee.

**The Application Process For Eligible Retirees**
Although the bankruptcy court will appoint a Retiree Committee, Delphi will furnish this Court with a list of eligible union retirees who have expressed an interest in serving on the Retiree Committee for the Court's consideration and recommend to this court specific nominees to be appointed as members. If you are a retired employee receiving medical and life insurance benefits pursuant to a collective bargaining agreement to which one of the unions listed above is a signatory, and would be interested in serving on such a committee, please complete the attached response form and send it to _____ by facsimile ((###) ###-####) or by e-mail to (_____@___.com).

**TO BE CONSIDERED FOR SERVICE ON SUCH A COMMITTEE, YOU MUST RETURN THE ATTACHED RESPONSE FROM SO THAT IT IS RECEIVED BY DELPHI NO LATER THAN NOVEMBER 4, 2005.**

The list of proposed candidates will be available for your review at www.delphidocket.com or may be obtained by contacting the Debtors' notice and claims agent, Kurtzman, Carson Consultants, LLC, at (310) 751-1500 on and after November 8, 2005.  The Court's order appointing the Retiree Committee will also be available through these sources following the Court's entry of the order.

Thank you for your interest in the section 1114 process.

Response to Request for Nominations to Retiree Committee

<u>IN RE DELPHI CORPORATION, et al.</u>    CASE NO. [####]

1.    NAME AND ADDRESS (Please Print):

   Name                Address        Phone Number, Fax And E-Mail

   _____

2.    JOB TITLE HELD WITH DELPHI AT TIME OF RETIREMENT:

   _____

3.    EMPLOYEE NUMBER:  _____

4.    YEARS OF SERVICE WITH DELPHI:  _____

5.    DATE AND REASON FOR TERMINATION WITH DELPHI:  _____
   _____

6.    ARE YOU CURRENTLY RECEIVING RETIREE BENEFITS FROM
   DELPHI?  _____

7.    PLEASE PROVIDE ANY OTHER INFORMATION OR BACKGROUND
   AS TO WHY YOU SHOULD BE APPOINTED TO THE SECTION 1114(d)
   COMMITTEE INCLUDING ANY SPECIFIC SKILLS THAT YOU HAVE
   THAT WOULD BE VALUABLE TO THE COMMITTEE.

   _____
   _____
   _____
   _____
   _____
   _____
   _____

Signature:  _____

Print Name:  _____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :
In re                   :     Chapter 11
                    :
DELPHI CORPORATION, et al.,   :     Case No. 05-_____ (___)
                    :
           Debtors.   :     (Jointly Administered)
                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER (I) APPOINTING UNIONS AS AUTHORIZED REPRESENTATIVES FOR UNION-
REPRESENTED RETIREES UNDER 11 U.S.C. §§ 1114(c) AND 1114(d) OR, IN THE
ALTERNATIVE, (II) ESTABLISHING PROCEDURES FOR SOLICITATION,
NOMINATION, AND APPOINTMENT OF COMMITTEE OF RETIRED EMPLOYEES

("RETIREE COMMITTEE ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation

and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §

1114 and Fed. R. Bankr. P. 2002(m) and 9006 (the "Bankruptcy Rules") (a) appointing the

International Unions[1] as authorized representatives[2] for Union-represented retirees under

sections 1114(c) and (d) of the Bankruptcy Code,[3] or, in the alternative, (b) establishing

procedures for solicitation, nomination, and appointment of a committee of retired hourly

employees to serve as the authorized representative of those retired hourly employees of the

Debtor who are entitled to receive "retiree benefits" within the meaning of section 1114(a) of the

---

[1] The International Unions, as that term is used herein, are the United Auto Workers, the International Union Of Electronic, Electrical, Salaried, Machine And Furniture Workers-Communications Workers Of America, the United Steelworkers Of America, the International Association Of Machinists And Aerospace Workers, the International Brotherhood Of Electrical Workers, and the International Union of Operating Engineers.

[2] As used herein, the term "authorized representative" is as defined in 11 U.S.C. § 1114(b).

[3] As used herein, the term "Bankruptcy Code" means chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended.

Bankruptcy Code, and who are not represented in these bankruptcy cases by a labor organization

acting as their authorized representative (the "Retiree Committee"); and upon the Affidavit Of

Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October

8, 2005; and upon the record of the hearing held on the Motion; and this Court having

determined that the relief requested in the Motion is in the best interests of the Debtors, their

estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate

notice of the Motion has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is GRANTED.

2.    Retirees (and, to the extent applicable, their surviving spouses, dependants,

and beneficiaries)[4] whose retiree medical and life insurance benefits[5] were initially

conferred by a collective bargaining agreement between the Debtors and an International

Union ("Union Retirees") shall be deemed to be represented by their respective

International Unions as their authorized representative for purposes of section 1114, and

shall not be a member of any Retiree Committee appointed in these cases, until further

order of this Court, unless any such International Union gives written notice to the

Debtors that it will not serve as such retirees' authorized representative, such written

---

[4]      Section 1114(a) includes payments to surviving spouses and dependents of retired employees.

[5]      11 U.S.C. § 1114(a) defines "retiree benefits" which shall be referred to herein as "retiree medical and life
insurance benefits" to mean: payments to any entity or person for the purpose of providing or reimbursing
payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care
benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program
(through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor
prior to filing a petition commencing a case under this title. 11 U.S.C. § 1114(a).

notice being delivered so as to be actually received by the Debtors' counsel (and others

as set forth in paragraph 3, below) on or before October 18, 2005.

  3. The International Unions shall give such notice of their election to the

Debtors, their counsel, and the U.S. Trustee via overnight mail or facsimile at the

following addresses:

  Kevin M. Butler
  Vice President, Human Resource Management
  Delphi Corporation
  5725 Delphi Drive
  Troy, Michigan 48098-2815
  Facsimile: (248) 813-2670

  John Wm. Butler, Jr.
  John K. Lyons
  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
  333 West Wacker Drive, Suite 2100
  Chicago, Illinois 60606
  Facsimile: (312) 407-0411

  Robert Siegel
  Tom Jerman
  O'MELVENY & MYERS LLP
  1625 Eye Street, NW
  Washington, DC  20006
  Facsimile: (202) 383-5414

  Alicia M. Leonhard
  Office of the United States Trustee
  33 Whitehall Street, 21st Floor
  New York, New York 10004
  Facsimile: (212) 668-2255

  4. In the event that an International Union elects not to represent its respective

Union Retirees for purposes of section 1114, and gives notice of such election in

accordance with the foregoing paragraphs 2 and 3, the Debtors shall solicit Union

Retirees from each such "Unrepresented Union" to serve as an authorized representative

on the Retiree Committee.  Nominations for representative(s) shall be solicited from all

Union Retirees for each Unrepresented Union (the "Unrepresented Union Retirees").

5.   The form of the "Request for Nominations to Retiree Committee" and

"Response to Request for Nominations to Retiree Committee," attached hereto as Exhibit

A, are hereby approved and shall be served by regular mail to all "Unrepresented Union

Retirees" on or before October 21, 2005, if necessary.

6.   Unrepresented Union Retirees receiving retiree medical and life insurance

benefits covered by a collective bargaining agreement shall have until November 4, 2005,

to submit to the Debtors a Response to Request for Nominations to Retiree Committee.

7.   Once the Debtors have received nominations for representatives from any

Unrepresented Union Retirees, the Debtors shall review the nominations with the Office

of the United States Trustee (the "U.S. Trustee"), who may choose to recommend

nominees to the Court.  The Debtors shall consult with the U.S. Trustee to determine the

appropriate membership of the Retiree Committee to best reflect the composition of the

retirees to be represented by the Retiree Committee.

8.   On or before November 8, 2005, the Debtors shall file with this Court a list of

proposed candidates to serve on the Retiree Committee for appointment by this Court.

All Unrepresented Union Retirees shall have received a notice substantially in the form

of Exhibit A, attached hereto, indicating that the list of proposed candidates will be

available at www.delphidocket.com or may be obtained by contacting the Debtors' claim

agent, whose contact information shall be contained in the notice.  In addition, service of

such list shall be made to the Debtors' International Unions, the U.S. Trustee, the official

committee of unsecured creditors (the "Creditors' Committee"), and other parties that

have requested service of all pleadings on these cases.

9.   If no party files an objection to the proposed slate of candidates and serves

such objection upon the Debtors, the U.S. Trustee, and the Creditors' Committee on or

before November 15, 2005, this Court will order the appointment of such candidates to a

single Retiree Committee to represent all Unrepresented Union Retirees under section

1114 of the Bankruptcy Code without further notice or hearing.

10. If any objection is filed and such objection is served upon the Debtors, the

U.S. Trustee, and the Creditors' Committee, then this Court may order an expedited

hearing to determine the composition of the Retiree Committee.

11. The appointment of an International Union and/or a Retiree Committee

pursuant to the procedures set forth hereunder shall be for the sole purpose of

representing retirees in connection with their rights arising under sections 1114 and

1129(a)(13) of the Bankruptcy Code and for no other purpose.

12. This court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

13. The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Motion.

Dated:      New York, New York
            October __, 2005


_____
   UNITED STATES BANKRUPTCY JUDGE

EXHIBIT A

Request For Nominations To Retiree Committee
In re Delphi Corporation, et al., Case No. - ---, et al.

Attention Delphi Union Retirees:

Delphi has announced that it may seek to eliminate its retiree medical and life insurance benefits pursuant to section 1114 of the United States Bankruptcy Code. We regret having to make this decision, but we've determined that these changes are necessary to reorganize successfully.

In the event it elects to seek elimination of retiree medical and life insurance benefits under section 1114, Delphi will negotiate with a committee composed of "authorized representative(s)" of the various employee groups, as provided for in Section 1114 of the Bankruptcy Code.  It is expected that negotiations will take place over several weeks after the bankruptcy court appoints the Committee and that Committee members will need to be available for the entire timeframe.

**Representatives Of Union Retirees**
Section 1114 generally provides that the union is the authorized representative of individuals who retired from a job classification represented by that union.
In Delphi's case**, [---]** have elected to represent their retirees.  If the job classification you retired from is now represented by one of these unions, that union will serve as your authorized representative.

[---] have declined to serve as an "authorized representative;" accordingly, if the job classification you retired from is now represented by one of these unions, you are eligible to seek to serve on the Committee.

**The Application Process For Eligible Retirees**
Although the bankruptcy court will appoint a Retiree Committee, Delphi will furnish this Court with a list of eligible union retirees who have expressed an interest in serving on the Retiree Committee for the Court's consideration and recommend to this court specific nominees to be appointed as members. If you are a retired employee receiving medical and life insurance benefits pursuant to a collective bargaining agreement to which one of the unions listed above is a signatory, and would be interested in serving on such a committee, please complete the attached response form and send it to _____ by facsimile ((###) ###-####) or by e-mail to (_____@___.com).

**TO BE CONSIDERED FOR SERVICE ON SUCH A COMMITTEE, YOU MUST RETURN THE ATTACHED RESPONSE FROM SO THAT IT IS RECEIVED BY DELPHI NO LATER THAN NOVEMBER 4, 2005.**

The list of proposed candidates will be available for your review at www.delphidocket.com or may be obtained by contacting the Debtors' notice and claims agent, Kurtzman, Carson Consultants, LLC, at (310) 751-1500 on and after November 8, 2005.  The Court's order appointing the Retiree Committee will also be available through these sources following the Court's entry of the order.

Thank you for your interest in the section 1114 process.

Response to Request for Nominations to Retiree Committee

IN RE DELPHI CORPORATION, et al.          CASE NO. [####]

8.      NAME AND ADDRESS (Please Print):

   Name                 Address          Phone Number, Fax And E-Mail

   _____

9.      JOB TITLE HELD WITH DELPHI AT TIME OF RETIREMENT:

   _____

10.     EMPLOYEE NUMBER:  _____

11.     YEARS OF SERVICE WITH DELPHI:  _____

12.     DATE AND REASON FOR TERMINATION WITH DELPHI:  _____
   _____

13.      ARE YOU CURRENTLY RECEIVING RETIREE BENEFITS
        FROM DELPHI?  _____

14.      PLEASE PROVIDE ANY OTHER INFORMATION OR
        BACKGROUND AS TO WHY YOU SHOULD BE APPOINTED
        TO THE SECTION 1114(d) COMMITTEE INCLUDING ANY
        SPECIFIC SKILLS THAT YOU HAVE THAT WOULD BE
        VALUABLE TO THE COMMITTEE.

   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

   Signature:  _____

   Print Name:  _____