**Hearing Date And Time: March 11, 2009 at 10:00 a.m. (prevailing Eastern time)**
**Objection Deadline: March 10, 2009 at 4:00 p.m. (prevailing Eastern time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
     In re                          :    Chapter 11
                                                :
DELPHI CORPORATION, et al.,                     :    Case No. 05-44481 (RDD)
                                                :
                                                :    (Jointly Administered)
              Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' RESPONSE TO RETIREE COMMITTEE REPORT

      Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby respond

to the Supplement And Report In Support Of Motions To Appoint An Official Retiree



Committee Pursuant To Section 1114 Of The Bankruptcy Code And In Opposition To Debtors' Motion To Terminate Salaried Retiree Benefits (the "Report") filed by the official committee of Eligible Salaried Retirees (the "Retiree Committee") on March 6, 2009 (Docket No. 16426).

<u>Preliminary Statement</u>

Despite its 33-page length, the Report does not proffer any additional evidence that <u>Delphi</u> promised vested benefits to any retirees. Instead, the Retiree Committee attaches as additional Delphi documents only two additional examples of the half-page form letter from Delphi's third-party life insurance administrator that was part of the record of the February 24, 2009 hearing (the "1114 Hearing") and comprehended within the Court's bench ruling and the Provisional Salaried OPEB Termination Order (the "Provisional Order," Docket No. 16380). (<u>Compare</u> Report at pp. 27-28 & Exh. F <u>with</u> Higgins Obj., Docket No. 14765, at pp. 9-10 & Exh. B.) The Retiree Committee concedes that informal communications are relevant as "extrinsic evidence" of the meaning of plan terms under applicable Second Circuit law only if there is ambiguity in the plan documents. (<u>See</u> Report at p. 18). Moreover, the Retiree Committee does not contend that there is any ambiguity in Delphi's plan documents, and the 1114 Hearing Declaration of Steven Gebbia established that there is not and has never been any such ambiguity.

Relying entirely on its bid to relitigate <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388 (6th Cir. 1998)(en banc), the Retiree Committee asserts that <u>GM's documents</u> from 1974 through 1985 promised lifetime welfare benefits to salaried retirees. That precise issue was fully litigated (and the Retiree Committee's position rejected) in <u>Sprague</u>. Moreover, during the 1114 Hearing this Court already determined that <u>Sprague</u> put all parties on notice of the scope of GM's obligations at the time Delphi created its welfare benefit plans, which plans Delphi has

consistently and unambiguously reserved the right to modify or terminate.[1]  In addition, as discussed below, Sprague is entitled to preclusive effect under principles of res judicata.

Finally, the Committee purports to identify two "subsets" of Delphi retirees who have additional vesting arguments – Frigidaire Division retirees and American Axle & Manufacturing, Inc. retirees.  (Report at pp. 28-32.)  Although this section of the Report hews most closely to the Debtors' understanding of the purpose of the Report, it is factually flawed. The Retiree Committee first speculates incorrectly that responsibility for certain retirees of GM's former Frigidaire Division (which division GM divested in 1979) was transferred to Delphi through a "mechanism" that "is not yet apparent."  (Report at p. 28.)  However, Delphi never assumed responsibility for retirees from GM's former Frigidaire division and the Retiree Committee offers no evidence for its assertion.

The Retiree Committee next incorrectly asserts that further investigation is needed to learn how Delphi acquired retirement obligations for certain retirees of business units GM divested to American Axle in 1994.  Delphi agrees that it provides OPEB to certain American Axle retirees, but there is no mystery as to why this is so.  Under the Master Separation Agreement (and the Employee Matters Agreement attached thereto), Delphi plainly assumed certain responsibilities for Delphi-related businesses that GM had divested prior to the separation

---

[1]    Although the Report does attach a couple of GM documents from the 1970s that were not part of the record at the 1114 Hearing, nothing in these additional documents provides any incremental support for the Retiree Committee's position.  (See Report Exh. A (1974 "Your GM Benefits" Handbook), Exh. E (1978 Memorandum), and Exh. G (1979 "Your Benefits Following The Closing Of Operations At Frigidaire Division").  The Debtors addressed the 1980 SPD (Exh. B) and various GM Personal Benefit Summaries (Exh. D) in the Omnibus Reply.  (Docket No. 16327, ¶¶ 27-30 & fn. 11.)  The 1985 SPD (attached to the Report as Exh. C) contains GM's express reservation of rights.  No other documents are submitted with the Report.

of Delphi and GM.  The businesses divested to American Axle fall into that category.[2]  One such

responsibility was for OPEB in connection with employees of divested business units who were

still active employees at the time of the separation of Delphi and GM.  To the extent such

employees had been retirement eligible with GM at the time GM divested their business unit,

Delphi agreed with GM to provide them OPEB.  As further discussed below (see pp. 6-7),

Delphi's agreement with GM under the Employee Matters Agreement was in all respects

expressly subject to Delphi's right to modify or terminate such plans.

Accordingly, there is no new evidence upon which to have an additional hearing.

There can be no dispute that the Retiree Committee did not report "sufficient and competent

evidence not presented at the Hearing to establish . . . that Salaried OPEB benefits have vested

with respect to any [retiree] or group."  (See Provisional Order ¶ 9.)  As contemplated by the

Provisional Order, the Court should finalize its ruling that the Debtors' Salaried OPEB benefits

have not vested and that the Debtors are authorized, but not directed, to terminate Salaried OPEB

as provided in the Motion.  (Id. at ¶¶ 5, 7.)  Upon entry of such order, the Debtors' will take the

necessary steps to cease paying for Salaried OPEB effective April 1, 2009.

A.    The Court Should Not Reconsider Its Ruling That Section 1114 Does Not Apply to
      Retiree Welfare Benefit Plans That Reserve Modification And Termination Rights

Although the main thrust of the supplemental hearing called for in the Provisional

Order was to consider any additional evidentiary materials that may establish whether any

---

[2]    The Retiree Committee incorrectly states that "[a]s of this [March 6, 2009] filing, the Debtors still have not
responded to" a March 2, 2009 discovery request regarding the manner in which some American Axle retirees
came to be Delphi retirees rather than GM retirees.  In fact, on March 3, 2009, the Debtors produced the Master
Separation Agreement and the Employee Matters Agreement, which contain the provisions regarding Delphi's
responsibility for divested Delphi-related businesses.  On March 5, 2009, the Debtors produced the 1994 Asset
Purchase Agreement for the divestiture to American Axle and also produced an additional possibly responsive
schedule from the Master Separation Agreement on March 5, 2006.  In response to a subsequent question from
counsel, Debtors' counsel specifically identified those four documents as being responsive to the request.

retirees' benefits have vested, the Retiree Committee instead has essentially presented a motion

for reconsideration.  (See Report at p. 7 (stating that "[t]he threshold issue before the Court is

whether the Debtors need to follow . . . Section 1114" and that "a dangerous precedent has been

set").)  While such a motion may not be procedurally appropriate at this time,[3] the Court should

deny the Committee's implicit invitation to reconsider its ruling that the procedures set forth for

modification of retiree benefits in section 1114 of the Bankruptcy Code are inapplicable to

benefits that have not vested.  (See Provisional Order ¶ 4.)  The Retiree Committee has not come

forward with any new authority to impugn the Court's well-reasoned bench ruling on the proper

interpretation of section 1114 of the Bankruptcy Code.

B.    The Retiree Committee's Report Presents No New Evidence And The Court Should
Finalize Its Provisional Ruling That Delphi's Retiree Welfare Benefits Are Unvested

Based on the record at the February 24, 2009 hearing, the Court provisionally

ruled that the Debtors' Salaried OPEB benefits have not vested and that the Debtors have

reserved the right to modify or terminate Salaried OPEB benefits.  (Provisional Order ¶ 5.)  The

Court appointed the Retiree Committee pursuant to discretionary authority, however, for the

primary purpose of determining whether there is sufficient and competent evidence not presented

at the February 24, 2009 hearing to establish, consistent with the Court's bench ruling and

applicable law, that Salaried OPEB benefits have vested with respect to any Eligible Salaried

Retiree or group thereof.  (Id. ¶ 8-9.)  To the extent the Retiree Committee asserts that such

evidence exists, the order directs that the Report set forth all such contentions and the bases

---

[3]    In addition to being beyond the intended scope of the supplemental hearing, that issue is also the subject of a
notice of appeal filed by a retiree group (represented by the lead counsel of the Retiree Committee) (see Docket
No. 16404) and therefore may not be subject to reconsideration while the appeal is pending.  The Debtors take
no position here regarding whether the Retiree Committee's appeal of the Provisional Order is an unauthorized
interlocutory appeal.

therefor with specificity.  (Id. ¶ 11.)  Although the Retiree Committee did file a Report, it

contains no new evidence beyond the scope of the evidence considered at the 1114 Hearing.

(a)    There Is No Evidence That Delphi Created Vested Benefits

As discussed above, the Retiree Committee does not contend that there is any

ambiguity in Delphi's plan documents.  The only new documents attached to the Report are two

additional examples of a half-page form letter that is already in the record.  As set forth in the

Debtors' Omnibus Reply (see Docket No. 16327, ¶¶ 24-26), this informal communication is not a

plan document.  Informal communications are relevant as "extrinsic evidence" of plan terms only

if the plan documents are ambiguous, and such informal communications cannot amend plan

documents "absent a showing tantamount to proof of fraud."  See Moore v. Metro. Life Ins. Co.,

856 F.2d 488, 492 (2d Cir. 1988); see also Am. Fed'n of Grain Millers, AFL-CIO v. Int'l

Multifoods Corp., 116 F.3d 976, 980-81 (2d Cir. 1997).[4]  Here, it is uncontested that Delphi's

plan documents are unambiguous, and the Retiree Committee alleges no fraud.  The retirees'

understanding that benefits are not vested under Delphi's welfare benefit plans is further

demonstrated by Delphi's implementation of material changes to its health care program in the

past.  Effective as of January 1, 2007, Delphi ceased providing health care coverage to Medicare

eligible retirees pursuant to the same reservation of its right to modify or terminate benefits.

---

[4]    The Debtors and the Retiree Committee agree that the law of the Second Circuit governs the Court's
determination of whether Delphi's Salaried OPEB Plans provide vested benefits under the Employee Retirement
Income Security Act of 1974 ("ERISA").  29 U.S.C. § 1001 et seq.  Lower courts within the Second Circuit are
bound by its interpretations of federal law, and cannot defer to a foreign circuit's interpretation of federal law.
See Factors Etc. Inc v. Pro Arts, Inc., 652 F.2d 278 (2d Cir. 1981).  Although a lower court should defer to a
foreign circuit's interpretation of the law of a state within its geographic boundaries (see id. at 283), the issue
here does not turn on state law.

(b)    GM Documents From The 1970s And 1980s Are Irrelevant

Although essentially conceding that Delphi itself did not promise vested benefits, the Retiree Committee rests on its allegation that "for at least eleven years [i.e., 1974 to 1985], and likely more, GM promised lifetime benefits at the cost of the Company with no reservation of rights whatsoever" (see Report at p. 8) and "Delphi assumed those obligations."  (See Report at p. 16.)  As discussed in the Omnibus Reply, however, in 1998 the Sixth Circuit in Sprague rejected the contention that GM created vested benefits during this alleged gap in GM's reservation of rights.  (Docket No. 16327, ¶¶ 27-29.)  Approximately one year after Sprague settled that question, Delphi created the plans at issue here and modeled them so as to be substantially identical to the GM plans – including preserving the express right to modify or terminate benefits thereunder.

The Debtors do not believe that to decide this Motion the Court has to relitigate the facts in Sprague or decide it again under Second Circuit law.  The Sprague decision conclusively established the scope of GM's OPEB liability just prior to the creation of Delphi's plans.  When Delphi agreed to establish plans "substantially identical" to GM's and to assume liability for Delphi employees under such plans (see Employee Matters Agreement § 6), Sprague represented the parties' understanding regarding the scope of that contractual obligation between GM and Delphi.  The Employee Matters Agreement also expressly provided that (except as to certain severance agreements not relevant here) "nothing in this Agreement shall prohibit Delphi from amending, modifying or terminating Delphi Employee Benefit Plans . . . ." (Id.)

The fact that all parties were on notice of Sprague immediately prior to formation of the Delphi plans should dispose of the issue.  But in any event, Sprague is entitled to preclusive effect.  "When an asserted claim is identical to the one that has been previously

7

litigated," and where "the precluded parties' interests have been represented in the previous

lawsuit," a subsequent litigant may be bound by the prior judgment, notwithstanding his non-

involvement in the prior litigation.  <u>Chase Manhattan Bank, N.A. v. Celotex Corp.</u>, 56 F.3d 343,

345 (2d Cir. 1995).

> Res judicata may bar non-parties to earlier litigation not only when there was a
> formal arrangement for representation in, or actual control of, the earlier action
> but also when the interests involved in the prior litigation are virtually identical to
> those in later litigation.  <u>See</u> Allan D. Vestal, <u>Res Judicata/Preclusion V</u>, 125-26
> (1969).  As Professor Vestal has written, "the key seems to be that [the] interests
> [of the non-party] have been adequately represented by others who have litigated
> the matter and have lost . . ."  <u>Id.</u> at 128.  Federal courts have sometimes called
> this "virtual representation."  <u>See</u> <u>Aerojet General Corp. v. Askew</u>, 511 F.2d 710,
> 719 (5th Cir.) (person can be bound by prior judgment "if one of the parties to the
> suit is so closely aligned with his interests as to be his virtual representative"),
> <u>cert. denied</u>, 423 U.S. 908, 96 S. Ct. 210 46 L. Ed. 2d 137 (1975).

<u>Id.</u> at 345-46.  In appropriate circumstances it does not matter whether the former case involved

the same parties, or had a class certified.  When the interests and involvement of the prior parties

are sufficiently similar to those of the current parties, and when "the rights sought to be

vindicated remain the same," denying the preclusive effect of the prior judgment "would elevate

form over substance."  <u>See</u> <u>Jackson v. Hayakawa</u>, 605 F.2d 1121, 1125-26 & fn. 6, 7 (9th Cir.

1979).  This doctrine is drawn from considerations of public policy that are fully applicable here,

including judicial economy, certainty in the legal system, and the well-founded principle that a

prevailing party should be permitted "to enjoy the benefits of its victory and avoid further costs."

<u>See</u> <u>Chase</u>, 56 F.3d at 345; <u>see also, e.g.</u>, <u>Allen v. McCurry</u>, 449 U.S. 90, 94-95 (1980).

 As a review of the several opinions in <u>Sprague</u> reveals, one hundred and fourteen

individual plaintiffs filed a putative class action on behalf of approximately 85,000 salaried GM

retirees.[5]  Plaintiffs in that action sought a judgment that GM was obligated to provide them with basic health care coverage at no cost to themselves for their lifetimes, and for the lifetimes of their surviving spouses.  See Sprague v. General Motors Corp., 768 F. Supp. 605, 606-09 (E.D. Mich. 1991) ("Sprague I").  Prior to trial, the district court granted GM's motion for summary judgment on the general retirees' claim that that their post-employment health and welfare benefits had vested, but denied GM's motion to dismiss the early retirees' vesting claims.  The district court permitted all retirees to proceed on a theory that GM was estopped from amending its retiree health care benefits, and certified a class of early retirees to proceed with their claims. See id. at 611-12; see also Sprague v. General Motors Corp., 843 F. Supp. 266, 270 (E.D. Mich. 1994) ("Sprague II").

In preparation for trial, the Sprague court conducted an extensive analysis of GM's welfare benefit plans for the period between 1964 and 1988, including a review of the historical development of both health care benefits and early retirement at GM.  See Sprague II, 843 F. Supp. at 274-78.  The district judge also considered a voluminous record gleaned from a broad range of sources, including both GM retirees and GM personnel still employed at the company's principal divisions and operating groups.  The record included but was not limited to the following:

- Brochures, booklets, and summary plan descriptions ("SPDs") dated 1965 ("The General Motors Insurance Program"), 1966 ("Your GM Benefits"), 1968 ("The General Motors Insurance Program"), 1971 (same), 1974 ("Highlights of Your GM Benefits:  A Handbook for Salaried Employees in the U.S."), 1977 ("Your

---

[5]    "The putative class included approximately 34,000 general retirees and approximately 50,000 early retirees. General retirees are individuals who were entitled to retire without General Motors' consent either at age sixty-five or after thirty years' service with the company.  Early retirees are individuals who participated in one of the early retirement programs offered by General Motors between 1974 and 1988 which required that both the company and the employee consent to the retirement."  Sprague v. General Motors Corp., 92 F.3d 1525, 1528 n.1 (6th Cir.), vacated, 102 F.3d 204 (6th Cir. 1996).

GM Benefits" (revised)), 1980 ("Your GM Benefits" and "Your Benefits in Retirement"), 1985 ("Your GM Benefits" (revised) and "Your Benefits in Retirement" (revised)), and 1988 ("Your GM Benefits" (revised) and "Your Benefits in Retirement" (revised)), id. at 298-99; see also Sprague I, 768 F. Supp. at 608-09;

- A "compendium" of documents describing retirement benefits received by members of a sample group of 318 retirees, including documents intended for distribution to retirees, as well as internal staff documents. This compendium consisted of plan documents, personal benefit summaries and statements, letters, booklets, memoranda, and other attachments sent between GM personnel, GM employees contemplating retirement, and GM retirees. Sprague II, 843 F. Supp. at 281-85, 290, 294-95, 297-99; see also Sprague I, 768 F. Supp. at 608-09; and

- Trial testimony from at least twenty members of the plaintiff class (plus the pre-trial testimony of over three hundred witnesses the district judge considered to ensure that documents, communications, testimony, and other evidence would be representative) as well as testimony from GM officers and plan personnel. See Sprague II, 843 F. Supp. at 278-99.

Following the close of trial, the district court concluded in two separate opinions that GM was not estopped from amending the health care benefits of its general retirees, whose benefits had not vested. Nevertheless, the district court ruled that GM had entered into a bilateral contract with each early retiree to provide lifetime healthcare benefits, and that the early retirees were entitled to relief in connection with their estoppel claims. See id. at 299; see also Sprague v. General Motors Corp., 857 F. Supp. 1182, 1184, 1188-90, 1192-93 (E.D. Mich. 1994) ("Sprague III").

On appeal, however, the Sixth Circuit, sitting en banc, ultimately affirmed the district court's decision not to certify the class of general retirees, and reversed the district court's decision to certify the class of early retirees. Sprague v. General Motors Corp., 133 F.3d 388, 397-99 (6th Cir. 1998) (en banc). The Sixth Circuit further determined that the district court had erred in concluding that GM was estopped from amending its health plan, holding generally that

10

regardless of whether the original 114 plaintiffs purported to represent a class or whether their

claims were considered individually,

- "[T]he plan documents, including the summary plan descriptions, effectively reserved a right on GM's part to amend or terminate" its welfare plan and to change the plan's terms, regardless of the fact that some of the SPDs did not including language expressly reserving GM's right to amend or terminate its plan, id. at 400-02;

- "Neither the GM plan itself nor any of the various summaries of the plan states or even implies that the plaintiffs' benefits were vested," id. at 399, 401-02;

- Neither by its conduct nor its various representations (oral or written) had GM entered into a series of bilateral agreements to modify or amend the original GM plan documents so as to provide lifetime welfare benefits for retirees and their spouses, id. at 402-03; and

- In light of GM's "clearly-stated right to amend – a right contained in the plan to which the plaintiffs had access and in many of the summaries they were given – reliance on statements allegedly suggesting the contrary was not, and could not be, reasonable or justifiable," id. at 404.

Thus, the Retiree Committee cannot credibly suggest that the issues in Sprague

are not "virtually identical" to the Retiree Committee's allegations regarding the vesting status of

GM's plan documents during the period 1974 through 1985 or that retirees interests were not

adequately represented by the retirees who litigated Sprague.  And the relevant considerations of

judicial efficiency, certainty in the legal system, and fairness to the prevailing party all support

giving preclusive effect to Sprague.

      (c)      The Debtors Cooperated With Retiree Committee Discovery

The Retiree Committee urges the Court to overlook the paucity of its evidentiary

presentation by stating that it has had "no meaningful opportunity to contact retirees" and that "it

has been hampered by not getting access to the full list of all Affected Retirees (despite

request)."  Therefore, it is important to note that the Debtors' efforts to cooperate with the Retiree

Committee's search for additional documentary evidence to support its "vesting" claim:

- The Debtors provided the Notice of Motion to all Eligible Salaried Retirees;

- The Debtors provided a copy of the Provisional Order to all objectors to the Motion;

- As contemplated in the Court's bench ruling, the Debtors mailed a communication to all Eligible Salaried Retirees informing them of the appointment of the Retiree Committee and instructing them to view delphidocket.com for more information (see Exh. A attached hereto);

- The Debtors posted contact information and a document request drafted by the Retiree Committee on delphidocket.com (see Exh. B attached hereto);

- The Debtors allowed the Retiree Committee to use KCC for mailings within the budget set by the Court; and

- The Debtors produced over 850 additional pages of documents and 2 Excel spreadsheets in response to formal discovery requests from the Retiree Committee, including as requested an excel file with the addresses for all retirees.

C.    Retiree Committee's Report on Health Care Tax Credit

Although issues relating to the Health Care Tax Credit are not relevant to the Court's determination whether any retirees have vested benefits, the Retiree Committee's scope of authority includes "exploring the efficacy of potentially preserving any applicable federal tax credits for retirees," including the Health Care Coverage Tax Credit (the "HCTC") (See Provisional Order ¶ 9.)  As an initial matter, because Delphi's retirees are not currently receiving payments from the PBGC, they are not presently "eligible individuals" for the purposes of receiving the HCTC.  See  6 U.S.C. § 35(c)(a)(C).  Although Delphi's salaried pension plan is underfunded and such underfunding must be addressed, Delphi has not made a determination to terminate the plan.[6]  The Debtors recognize, however, that creating a structure for ongoing health

---

[6]    Although the Retiree Committee incorrectly paraphrases GM's February 17, 2009 Restructuring Plan to imply that if Delphi does not make up the funding deficits "the pension plan will be terminated and turned over to the PBGC," (Report at p. 3), the document states GM's view that GM "has no obligation" to absorb the plan and that Delphi "may need to terminate" it.  The Debtors are in discussions with their stakeholders regarding options

insurance for retirees which would qualify for the HCTC in the event of termination of the

pension plan is a desirable outcome.

To that end, the Debtors have engaged in discussions with counsel for the Retiree

Committee regarding avenues for preserving the availability of the HCTC in the event Delphi

later must terminate the salaried pension plan.  For example, the Debtors have worked to provide

data to the Retiree Committee to enable them to explore alternative health care options that

might presumptively qualify for the HCTC and remain committed to doing so.[7]  The Debtors

would also support reasonable requests from the Retiree Committee regarding their obtaining a

private letter ruling from the IRS that a retiree-created health care plan for retirees satisfies the

requirements for a "qualified plan" under the HCTC.  And, as for the concern raised by the

Committee that the present termination of Delphi's payment of OPEB benefits will cause lapses

in coverage or other administrative problems which might threaten the viability of a follow-on

plan, as discussed above, the Debtors have also taken steps to inform retirees of their options to

prevent such breaks or lapses in coverage.  (See pp. 11-12.)

Although sharing the Retiree Committee's goal of preserving the availability of

the HCTC if it is possible to do so, the Debtors disagree with some of the legal conclusions set

forth in the Report.  Most notably, the Debtors do not believe that their cessation of OPEB

triggers lifetime COBRA coverage under the applicable statute and regulations.  The Debtors'

position is that provision for lifetime COBRA coverage is limited to the "substantial elimination

of coverage" that occurs "within one year before or after the date of commencement of a

---

to preserve rather than terminate the pension plan but there can be no assurances regarding the outcome of these
negotiations.

[7]    Since the Retiree Committee made its information requests, the Debtors have been working to provide data to
the Retiree Committee and its brokers to enable them to explore market alternatives.  Additional data was
provided on March 9, 2009.

bankruptcy proceeding." See 26 U.S.C. § 1163. The Debtors also believe that they are correctly providing COBRA notices to retirees who have retired since November 1, 2007, and are therefore still within the 18-month COBRA period following their retirement. Even if the Retiree Committee were correct in its assertions, however, the time for mailing COBRA notices has not yet run with respect to the changes Delphi contemplates making effective on April 1, 2009.[8]

Notwithstanding the Debtors' and the Committee's mutual goal with respect to the HCTC structure, the Court should reject any suggestion that any uncertainty over the outcome of those negotiations or the ability to achieve a plan structure that preserves the HCTC is a reason to reconsider its prior ruling.

WHEREFORE, the Court should enter an order (i) finalizing its ruling that the Debtors' Salaried OPEB benefits have not vested and that the Debtors are authorized, but not directed, to terminate Salaried OPEB as provided in the Motion, and (ii) granting such other further relief as is just.

---

[8] The Debtors are also considering the effect of the American Recovery and Reinvestment Act of 2009 that was signed into law on February 17, 2009 and are willing to discuss that statute with the Retiree Committee. However, the Debtors do not concede that the COBRA provisions are applicable to any of its retirees.

Dated:      New York, New York
            March 10, 2009

                                    SKADDEN, ARPS, SLATE, MEAGHER
                                    & FLOM LLP

                                    By:    /s/ John Wm. Butler, Jr.
                                           John Wm. Butler, Jr.
                                           Ron E. Meisler
                                    333 West Wacker Drive, Suite 2100
                                    Chicago, Illinois 60606
                                    (312) 407-0700

                                                - and –

                                    By:    /s/ Kayalyn A. Marafioti
                                           Kayalyn A. Marafioti
                                           Thomas J. Matz
                                    Four Times Square
                                    New York, New York 10036
                                    (212) 735-3000

                                    Attorneys for Delphi Corporation, et al.,
                                      Debtors and Debtors-in-Possession

**Exhibit A**

# DELPHI

February 26, 2009

To Delphi Health and Life Program Participants

As we advised in our letter dated February 5, 2009, the US Bankruptcy Court conducted a hearing on February 24, 2009 concerning Delphi's motion seeking to terminate certain health care and life insurance benefits for retirees ("OPEB ").  At the conclusion of the hearing, during which the Bankruptcy Court considered evidence submitted by the company and counsel for three retiree groups (as well as the objections filed by over 1,600 individual retirees), the Bankruptcy Court provisionally approved Delphi's motion to cease providing OPEB after March 31, 2009.  The Court also authorized Delphi to immediately begin the administrative process to implement these modifications.

The information package we recently sent to you is the first step in the administrative process.  Included in that mailing was the election kit and forms that you will need to complete and submit if you wish to continue health care coverage on a self-pay basis or convert your life insurance coverage to a personal policy.  *If you wish to continue your coverages on a self-pay basis, you must complete and return those forms as directed in the instructions in that packet.*

*Please note that if you filed a timely objection to Delphi's Salaried OPEB Termination Motion, the completion and return of those forms will not waive any rights that you may have to appeal the Bankruptcy Court's decision.  Your appellate rights are governed exclusively by the Bankruptcy Code and Bankruptcy Rules.  You should consult a qualified lawyer regarding your appellate rights, if any.*

At the February 24 2009 hearing, the Bankruptcy Court ruled that "at will" (or discretionary, unvested) benefits can be modified or terminated by Delphi without the company following any further procedures under the Bankruptcy Code.  But, on the other hand, if any benefits were determined to be "vested" (or contractual) benefits, Delphi would not be able to modify or terminate those benefits without taking additional steps that have not yet been completed.  Based on the evidence presented at the hearing, the Bankruptcy Court provisionally determined that the OPEB Benefits at issue are "at will."  However, the Court ordered the appointment of a Retirees' Committee for the primary purpose of determining whether the Retirees' Committee can establish to the Court's satisfaction that any of the affected programs involve "vested" (or contractual) OPEB Benefits as opposed to "at will" (or discretionary, unvested) OPEB Benefits.

The Bankruptcy Court scheduled a hearing on March 11, 2009 to finalize its provisional ruling unless the Retirees' Committee is able to establish that certain retirees should be excluded from the ruling because their benefits were "vested" (or contractual) benefits.  The Retirees' Committee also was given other limited responsibilities to meet and confer with Delphi.

*Delphi expects that the Retirees' Committee will have been appointed by the time that you receive this mailing.  Once appointed, Delphi will post the names of the Retirees' Committee's members and counsel (and their contact information) on www.delphidocket.com.  If you believe that you have evidence that the OPEB Benefits that you are receiving are "vested" (or contractual) benefits as opposed to "at will" (or discretionary, unvested) benefits, you should contact the Retirees' Committee at your earliest convenience.  Please note that neither the Retirees' Committee nor its counsel are ERISA fiduciaries under the relevant benefit plans, and will not be making any benefit determinations.*

Delphi Corporation



0544481090228000000000001

**Exhibit B**

Delphi Corporation, et al.



| Home | Bankruptcy Industry Links | Proof Of Claim Form | Claim/Creditor Search | Submit an Inquiry |

> Adversary Proceedings
> Case Management Orders
> Court Documents
> Creditors' Committee
> Delphi-GM Settlement
> Disclosure Statement
> Equity Security Holders' Committee
> First Day Motions
> First Day Orders
> GSA and MRA Amendment Motion
> Monthly/Quarterly Operating Reports
> Notice Lists
> Omnibus Hearing Dates
> Omnibus Hearing Orders
> Pension Program Modification Order
> Plan Modification Approval Motion Materials
> Plan of Reorganization
> Presentations: First Day, Organizational, 341
> Press Releases
> Schedules/ Statements
> Voluntary Petitions

**Delphi Corporation, et al.**

In re Delphi Corporation, et al., Case No. 05-44481 (RDD) Jointly Administered
United States Bankruptcy Court, Southern District of New York (http://www.nysb.uscourts.gov)

**Attention:  On March 4, 2009, Delphi filed a motion to approve the Fourth and Fifth Amendments to the GM Arrangement to provide for, among other things, an increase of the amounts available under the GM Arrangement from $300 million to $450 million, subject to certain terms and conditions. The motion is scheduled to be heard on March 24, 2009 at 10:00 a.m. (prevailing Eastern time). For a copy of the GM Arrangement Fourth and Fifth Amendment Approval Motion click here. For a copy of the proposed order granting the GM Arrangement Fourth and Fifth Amendment Approval Motion click here.**

**The GM Arrangement was originally approved on April 30, 2008 as part of the Second DIP Extension Order. On September 26, 2008, the Bankruptcy Court entered an order approving a first amendment to the GM Arrangement pursuant to which GM agreed to make available to the Debtors an additional $300 million in advances. On December 3, 2008, the Bankruptcy Court entered an order approving (i) a second amendment to the GM Arrangement that extended the availability of liquidity support under the GM Arrangement from December 31, 2008 to June 30, 2009 and (ii) Delphi's entry into a Partial Temporary Accelerated Payment Agreement with GM, which provided for GM to accelerate the payment of up to $300 million in trade accounts payable to Delphi. On February 25, 2009, the Bankruptcy Court entered an order approving a third amendment to the GM Arrangement and a first amendment to the Partial Temporary Accelerated Payments Agreement. Generally, these amendments (i) made technical adjustments to the GM Arrangement to conform it to the amendments to the Accommodation Agreement that the Bankruptcy Court approved concurrently on February 25, 2009 and (ii) further accelerated $100 million of GM trade accounts payable to Delphi. For a copy of the prior approval orders and the prior agreement and amendments, click here click here.**

■ **Attention:  On March 3 2009,** Delphi and GM reached an option exercise agreement pursuant to which GM will exercise its option to purchase Delphi's Steering business, as contemplated under the Amended Master Restructuring Agreement between Delphi and GM dated September 12, 2008. On March 4, 2009, the Debtors filed a motion seeking authorization and approval of the option exercise agreement. For a copy of the motion, please click here. For a copy of the proposed order, please click here.

■ **Attention:  On December 3, 2008,** the Bankruptcy Court entered an order granting Delphi's motion for an order approving the Accommodation Agreement, which allows the Debtors, among other things, to continue using certain of the proceeds of the postpetition financing facility through June 30, 2009. For a copy of the DIP Accommodation Order, click here. For a copy of the Accommodation Motion, click here.

On February 25, 2009, the Bankruptcy Court entered an order approving certain amendments to Delphi's Accommodation Agreement with its DIP lenders, which, among other things and subject to the continued satisfaction by Delphi of a number of covenants and conditions, allows Delphi to continue using the proceeds of its DIP credit facility until June 30, 2009 (or May 5, 2009 if Delphi does not achieve certain milestones in its reorganization cases). Generally, these amendments (a) provide for a new cash collateral basket of up to $117 to be included in the Delphi's Accommodation Period borrowing base that may be released to the Debtors if certain conditions are met, (b) reset the EBITDAR covenant to take into account the current global economic and automotive environment, (c) reduce the liquidity covenant from $100 million to $50 million if certain conditions are met, and (d) reset certain of the milestone deadlines required under the Accommodation Agreement. For a copy of the Accommodation Amendment Order click here. For a copy of the Accommodation Amendment Motion click here.

■ **Attention:  On February 25, 2009,** the Bankruptcy Court entered an order provisionally approving Delphi's motion seeking to terminate certain health care and life insurance benefits for retirees ("OPEB ") after March 31, 2009. For a copy of the order, click here. The Court also authorized Delphi to immediately begin the administrative process to implement these modifications. For a copy of Delphi's February 26, 2009 letter regarding the administrative process, click here. The Bankruptcy Court also directed the United States Trustee to appoint a Retirees' Committee for the primary purpose of determining whether the Retirees' Committee can establish to the Court's satisfaction that any of the affected programs involve "vested" (or contractual) OPEB Benefits as opposed to "at will" (or discretionary, unvested) OPEB Benefits. For a copy of the US Trustee's Notice of Appointment including the identity of the members of the Retirees' Committee, click here. The Retirees' Committee is represented by the following legal counsel:

Neil A. Goteiner
Dean M. Gloster
Nan E. Joesten
Farella Braun & Martel LLP
235 Montgomery St., 17th Floor
San Francisco, CA 94104
(415) 954-4400

Trent P. Cornell
Jon D. Cohen
Stahl Cowen Crowley Addis, LLC
55 W. Monroe St., Suite 1200
Chicago, IL 60603
(312) 641-0060

The Bankruptcy Court scheduled a hearing on March 11, 2009, at 10:00 a.m.
(prevailing Eastern time) to finalize its provisional ruling unless the Retirees' Committee
is able to establish that certain retirees should be excluded from the ruling because
their benefits were "vested" (or contractual) benefits. In connection with the
upcoming hearing, the Retirees' Committee has requested Delphi to convey the
following information:

The Official Delphi Retirees' Committee has requested that all retirees (or
employees receiving disability benefits) having documents in their possession from
Delphi or General Motors that include language stating or implying that health insurance
or life insurance benefits were "vested," or "lifetime" immediately forward them (in
their entirety) to the Retiree Committee by sending in electronic format
to **delphiretirees@stahlcowen.com** or mailing via Federal Express or other
expedited delivery to:

The Official Delphi Retirees' Committee
c/o Trent Cornell
Stahl Cowen Crowley Addis, LLC
55 W. Monroe St., Suite 1200
Chicago, IL 60603
(312) 641-0060

Delphi Corporation, et al.

**General Information:**

On October 8, 2005, and subsequently October 14, 2005, the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The forty-two Debtors are being jointly administered under Delphi Corporation, Case No. 05-44481. The Bankruptcy Cases are pending before the Honorable Robert D. Drain, Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York.

Pursuant to the Bankruptcy Code (specifically including, but not limited to, 11 U.S.C. § 362), a debtor is afforded certain protection against its creditors; the Bankruptcy Code prohibits creditors from taking certain actions related to debts that may have been owing prior to the commencement of the Bankruptcy Cases. If you believe that you might be a creditor of the Debtors based upon debts arising prior to their respective filing dates, and you are considering taking action based upon your status as a creditor, you may wish to seek legal advice. The staff of the Clerk's Office of the Bankruptcy Court and the staff of Kurtzman Carson Consultants LLC are not permitted to give legal advice.

**Resources:**

| Delphi Corporation Information | Contact Information | |
|---|---|---|
| • Press Releases and Media Information<br>• About Chapter 11<br>• Supplier Information<br>• Customer Information<br>• Investor Information<br>• Case Information | Delphi Legal Information Hotline:<br><br>Supplier Support Center:<br><br>Claims and Noticing Agent: | Toll Free: (800) 718-5305<br>International: (248) 813-2698<br>Toll Free: (866) 688-8679<br>International: (248) 813-2601<br>Toll Free: (888) 249-2691 |

**Meeting of Creditors:**

A meeting of creditors pursuant to section 341 of the Bankruptcy Code was conducted by the United States Trustee for the Southern District of the New York on February 3, 2006. At the conclusion of the meeting, the United States Trustee formally closed the meeting.

Please click here to view the presentation given by Delphi at the Section 341 Meeting of Creditors on February 3, 2006.

**Important Dates, Deadlines & Documents:** Some dates, deadlines and documents in the Debtors' Bankruptcy Cases that may be relevant to interested parties are set forth below:

Delphi Corporation, et al.

| Date of Filing | PDFs of Voluntary Petitions | October 8 & 14, 2005 |
|---|---|---|
| Bridge Order Hearing | > PDF of Notice of Hearing on Bridge Orders![PDF]<br>> PDF of Bridge Orders | October 8, 2005<br>(4:00 p.m. EDT) |
| Hearing on First Day Motions | > PDF of Proposed Second Amended First Day Agenda![PDF] | October 11, 2005<br>(4:00 p.m. EDT) |
| First Omnibus Hearing | > Proposed First Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved October 27, 2005 | October 27, 2005<br>(10:00 a.m. EDT) |
| Hearing for Adjourned Matters | > PDF of List of Adjourned Matters![PDF]<br>> PDF of Proposed Hearing Agenda![PDF]<br>> PDFs of Orders approved November 4, 2005 | November 4, 2005<br>(10:00 a.m. EST) |
| Second Omnibus Hearing | > Proposed Second Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved November 29, 2005 | November 29, 2005<br>(10:00 a.m. EST) |
| Third Omnibus Hearing | > Proposed Third Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved January 5, 2006 | January 5, 2006<br>(10:00 a.m. EST) |
| Final Trading Order Notices | > Final Trading Order Notices in MS Word Format<br>> Notice of Entry of Final Trading Order![PDF] | January 6, 2006 |
| Meeting of Creditors | > PDF of Notice of Commencement![PDF] | February 3, 2006<br>(1:30 p.m. EST) |
| Fourth Omnibus Hearing | > Proposed Fourth Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved February 9, 2006 | February 9, 2006<br>(10:00 a.m. EST) |
| Fifth Omnibus Hearing | > Proposed Fifth Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved March 9, 2006 | March 9, 2006<br>(10:00 a.m. EST) |
| Sixth Omnibus Hearing | > Proposed Sixth Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved April 7, 2006 | April 7, 2006<br>(10:00 a.m. EDT) |
| Seventh Omnibus Hearing | > Proposed Seventh Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved May 30, 2006 | May 30, 2006<br>(11:00 a.m. EDT) |
| Eighth Omnibus Hearing | > Proposed Eighth Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved June 19, 2006 | June 19, 2006<br>(10:00 a.m. EDT) |
| Ninth Omnibus Hearing | > Proposed Ninth Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved July 19, 2006 | July 19, 2006<br>(10:00 a.m. EDT) |
| Deadline to File Proofs of Claim | > Bar Date Order![PDF] | July 31, 2006<br>(5:00 p.m. EDT) |
| Tenth Omnibus Hearing | > Proposed Tenth Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved August 17, 2006 | August 17, 2006<br>(10:00 a.m. EDT) |
| Eleventh Omnibus Hearing | > Proposed Eleventh Omnibus Hearing Agenda![PDF]<br>> PDFs of Orders approved September 14, 2006 | September 14, 2006<br>(10:00 a.m. EDT) |

| | | |
|---|---|---|
| Twelfth Omnibus Hearing | > Proposed Twelfth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved October 19, 2006 | October 19, 2006<br>(10:00 a.m. EDT) |
| Thirteenth Omnibus Hearing | > Proposed Thirteenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved November 30, 2006 | November 30, 2006<br>(10:00 a.m. EST) |
| Fourteenth Omnibus Hearing | > Proposed Fourteenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved January 12, 2007 | January 12, 2007<br>(10:00 a.m. EST) |
| Fifteenth Omnibus Hearing | > Proposed Fifteenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved February 15, 2007 | February 15, 2007<br>(10:00 a.m. EST) |
| Sixteenth Omnibus Hearing | > Proposed Sixteenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved March 22, 2007 | March 22, 2007<br>(10:00 a.m. EDT) |
| Seventeenth Omnibus Hearing | > Proposed Seventeenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved April 20, 2007 | April 20, 2007<br>(10:00 a.m. EDT) |
| Eighteenth Omnibus Hearing | > Proposed Eighteenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved May 31, 2007 | May 31, 2007<br>(10:00 a.m. EDT) |
| Nineteenth Omnibus Hearing | > Proposed Nineteenth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved June 26, 2007 | June 26, 2007<br>(10:00 a.m. EDT) |
| Twentieth Omnibus Hearing | > Proposed Twentieth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved July 19, 2007 | July 19, 2007<br>(10:00 a.m. EDT) |
| Twenty-First Omnibus Hearing | > Proposed Twenty-First Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved August 15, 2007 | August 16, 2007<br>(10:00 a.m. EDT) |
| Twenty-Second Omnibus Hearing | > Proposed Twenty-Second Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved September 27, 2007 | September 27, 2007<br>(10:00 a.m. EDT) |
| Twenty-Third Omnibus Hearing | > Proposed Twenty-Third Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved October 25, 2007 | October 25, 2007<br>(10:00 a.m. EDT) |
| Twenty-Fourth Omnibus Hearing | > Proposed Twenty-Fourth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved November 16, 2007 | November 16, 2007<br>(10:00 a.m. EST) |
| Twenty-Fifth Omnibus Hearing | > Proposed Twenty-Fifth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved November 29, 2007 | November 29, 2007<br>(10:00 a.m. EST) |
| Disclosure Statement and Solicitation Procedures Hearing | > EPCA and Solicitation Procedures Motion Agenda 📄 | December 6, 2007<br>(10:00 a.m. EST) |
| Twenty-Sixth Omnibus Hearing | > Proposed Twenty-Sixth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved December 20, 2007 | December 20, 2007<br>(10:00 a.m. EST) |
| Voting Deadline | | January 11, 2008<br>(7:00 p.m. EST) |
| Confirmation Hearing | > Confirmation Hearing Notice 📄<br>> Proposed Confirmation Hearing Agenda 📄<br>> Confirmation Order 📄 | January 17, 2008<br>(10:00 a.m. EST) |

| Twenty-Seventh Omnibus Hearing | > Proposed Twenty-Seventh Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved January 25, 2008 | January 25, 2008<br>(10:00 a.m. EST) |
|---|---|---|
| Twenty-Eighth Omnibus Hearing | > Proposed Twenty-Eighth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved February 21, 2008 | February 21, 2008<br>(10:00 a.m. EST) |
| Twenty-Ninth Omnibus Hearing | > Proposed Twenty-Ninth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved March 19, 2008 | March 19, 2008<br>(10:00 a.m. EDT) |
| Thirtieth Omnibus Hearing | > Proposed Thirtieth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved April 30, 2008 | April 30, 2008<br>(10:00 a.m. EDT) |
| Thirty-First Omnibus Hearing | > Proposed Thirty-First Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved May 29, 2008 | May 29, 2008<br>(10:00 a.m. EDT) |
| Thirty-Second Omnibus Hearing | > Proposed Thirty-Second Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved June 24, 2008 | June 24, 2008<br>(10:00 a.m. EDT) |
| Thirty-Third Omnibus Hearing | > Proposed Thirty-Third Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved July 31, 2008 | July 31, 2008<br>(10:00 a.m. EDT) |
| Thirty-Fourth Omnibus Hearing | > Proposed Thirty-Fourth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved August 26, 2008 📄 | August 26, 2008<br>(10:00 a.m. EDT) |
| Thirty-Fifth Omnibus Hearing | > Proposed Thirty-Fifth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved September 23, 2008 | September 23, 2008<br>(10:00 a.m. EDT) |
| Thirty-Sixth Omnibus Hearing | > Proposed Thirty-Sixth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved October 23, 2008 | October 23, 2008<br>(10:00 a.m. EDT) |
| Thirty-Seventh Omnibus Hearing | > Proposed Thirty-Seventh Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved November 24, 2008 | November 24, 2008<br>(10:00 a.m. EST) |
| Thirty-Eighth Omnibus Hearing | > Proposed Thirty-Eighth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved December 17, 2008 | December 17, 2008<br>(10:00 a.m. EST) |
| Thirty-Ninth Omnibus Hearing | > Proposed Thirty-Ninth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved January 27, 2009 📄 | January 27, 2009<br>(10:00 a.m. EST) |
| Fortieth Omnibus Hearing | > Proposed Fortieth Omnibus Hearing Agenda 📄<br>> PDFs of Orders approved February 24, 2009 | February 24, 2009<br>(10:00 a.m. EST) |
| Forty-First Omnibus Hearing | | March 24, 2009<br>(10:00 a.m. EDT) |
| Preliminary Plan Modification Hearing | | March 24, 2009<br>(10:00 a.m. EDT) |
| Forty-Second Omnibus Hearing | | April 23, 2009<br>(10:00 a.m. EDT) |
| Forty-Third Omnibus Hearing | | May 21, 2009<br>(10:00 a.m. EDT) |

Delphi Corporation, et al.

05-44481-rdd    Doc 16465-27    Filed 03/16/09    Entered 03/16/09 14:16:24    D-43
Forty-Fourth Omnibus Hearing
Pg 26 of 27

June 16, 2009
(10:00 a.m. EDT)

■ **Parties and Addresses:**

| Court Address | Location to File **Proof(s) of Claim** |
| --- | --- |
| United States Bankruptcy Court Southern District of New York One Bowling Green New York, NY 10004 T: 212-668-2870 http://www.nysb.uscourts.gov | United States Bankruptcy Court Delphi Corporation Claims Bowling Green Station, PO Box 5058 New York, NY 10274-5058 Please file proof(s) of claim, if any, via US Mail (at the address listed above) or in person, via courier, or via other hand delivery system (at the adjacent Court Address). Facsimile and other electronic delivery methods are not acceptable. You must file an originally executed proof of claim. If you would like a copy of your claim returned to you as proof of receipt, please enclose an additional copy and a self-addressed postage-paid envelope. |

| Attorneys' Addresses | |
| --- | --- |
| Counsel for the Debtors John Wm. Butler Jr., Partner John K. Lyons, Partner Ron E. Meisler, Partner Skadden, Arps, Slate, Meagher & Flom LLP 333 West Wacker Drive Suite 2100 Chicago, IL 60606 T: 800-718-5305 F: 312-407-0411 http://www.skadden.com | Counsel for the Debtors Kayalyn A. Marafioti, Partner Thomas J. Matz, Counsel Skadden, Arps, Slate, Meagher & Flom LLP Four Times Square New York, NY 10036 T: 800-718-5305 F: 212-735-2000 http://www.skadden.com |
| Counsel to Creditors' Committee Robert J. Rosenberg, Partner Latham & Watkins LLP 885 Third Avenue, Suite 1000 New York, NY 10022-4834 | United States Trustee Brian S. Masumoto, Trial Attorney U.S. Department of Justice Office of the United States Trustee 33 Whitehall Street, 21st Floor New York, NY 10004-2111 T: 212-510-0500 F: 212-668-2255 http://www.usdoj.gov/ust/r02/ |

T: 212-906-1200
F: 212-751-4864
http://www.lw.
com

**Additional Links:**
Delphi Corporation http://www.delphi.com

**Note:** Kurtzman Carson Consultants LLC ("KCC") maintains this website at the direction of Delphi Corporation. While KCC makes every attempt to assure the accuracy of the information contained herein, this website is not the website of the United States Bankruptcy Court and does not contain the complete, official record of the Bankruptcy Court. All documents filed with the Court are available for inspection at the United States Bankruptcy Court, Southern District of New York.