CELESTE R. GILL
ASSISTANT ATTORNEY GENERAL
ENVIRONMENT, NATURAL RESOURCES AND AGRICULTURE DIVISION
525 W. Ottawa, 6th Floor, G. Mennen Williams Building
P.O. Box 30755
Lansing, MI 48909
Telephone: 517-373-7540
Facsimile: 517-373-1610
E-mail: gillc1@michigan.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE:

DELPHI CORPORATION, *et al*,

Debtors.

Chapter 11
Case No. 05-44481 (RDD)

-----------------------------------------------------------x

## MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY'S LIMITED OBJECTION TO THE MOTION FOR ORDER UNDER 11 USC 363 AND FED. R. BANKR, P 6005 AUTHORIZING AND APPROVING OPTION EXERCISE AGREEMENT WITH GENERAL MOTORS CORPORATION ("STEERING OPTION EXERCISE MOTION")

The Michigan Department of Environmental Quality (MDEQ), by and through its attorneys, Michael A. Cox, Attorney General and Celeste R. Gill, Assistant Attorney General, files this limited objection to the Steering Option Exercise Motion (Motion). MDEQ states the following in support of its objection:

### Background

1. Delphi Corporation (hereinafter Delphi or Debtors) was incorporated in Delaware in 1998 as a wholly owned subsidiary of General Motors Corporation (GM). Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries which resulted in environmental contamination at various sites or facilities.

2.      Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi, in particular a subsidiary, Delphi Automotive Systems, LLC (DAS) in accordance with the terms of a Master Separation Agreement (MSA) between Delphi and GM. As part of the Agreement, DAS assumed primary responsibility for environmental investigation and remediation at the former GM divisions and subsidiaries. (Attached as Exhibit 1 is a partial list of Delphi Facilities previously owned by GM.)

3.      Section 20126 of the Michigan's Natural Resources and Environmental Protection Act (NRPEA), 1994 PA 451, as amended, provides in part:

> (1) Notwithstanding any other provision or rule of law and except as provided in subsection (2), (3), (4), and (5) and section 20128, the following persons are liable under this part:
>
> > (a) The owner[1] or operator[2] of a facility[3] *at the time of disposal*[4] of a hazardous substance if the owner is responsible for an activity causing a release or threat of release.
> >                           * * *
> > (c) An owner or operator of a facility who becomes an owner or operator on or after June 5, 1995, unless the owner or operator complies with both of the following:
> >
> > > (i) A baseline environmental assessment is conducted prior to or within 45 days after the earlier of the date of purchase, occupancy, or foreclosure. For purpose of this section, assessing property to

---

[1] Owner means a person who owns a facility. MCL 324.20101(1)(z).

[2] Operator means a person who is in control of or responsible for the operation of the facility [with some exceptions]. MCL 324.20101(y).

[3] Facility means any area, place, or property where a hazardous substance in excess of the concentrations which satisfy the requirements of section 20120a(1)(a) or (17) or the cleanup criteria for unrestricted residential use under Part 213 has been released, deposited, disposed of, or other wise comes to be located. Facility does not include any area, place, or property at which response activities have been completed which satisfy the cleanup criteria for the residential category provided for in Sections 20120a(1)(a) and (17) or at which corrective action has been completed under Part 213 which satisfies the cleanup criteria for unrestricted residential use. MCL 324.20101(1)(o).

[4] Disposal means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any hazardous substance into or on any land or water so that the hazardous substance or any constituent of the hazardous substance may enter into the environment or be emitted into the air or discharged into any groundwater or surface water. MCL 324.20101(i).

2

        conduct a baseline environmental assessment does not constitute
occupancy.
(ii) The owner discloses the results of a baseline environmental
assessment to the department and subsequent purchaser or
transferee if the baseline environmental assessment confirms that
the property is a facility. (Emphasis added.)

4.     Delphi became the owner and operator of the former GM division and subsidiaries in 1999 and contamination has been confirmed at many of these facilities above Part 201 cleanup criteria, including several facilities related to GM/Delphi's Steering operations in Saginaw, Michigan.

5.     To the extent Delphi was responsible for an activity causing a release at each of these facilities, Delphi is liable under Section 20126(1)(a) of the NREPA. Further, Delphi became the owner and operator of the facilities, as defined by Part 201 of the NREPA after 1995 and did not conduct nor disclose a BEA for each facility and therefore is a liable person under Section 20126(1)(c) of the NREPA for the contamination at these facilities and has ongoing obligations under Part 201.

6.     Delphi also has ongoing obligations at its facilities under Part 213 of NREPA related to corrective actions for releases from underground storage tanks; under Part 111 of NREPA as a number of its properties are considered hazardous waste facilities; and under Part 31 of NREPA related to water quality.[5]

7.     In addition, GM remains directly liable under Section 20126(1)(a) of the NREPA to the extent that GM was responsible for an activity causing a release at each of the Delphi facilities prior to Delphi's separation from GM notwithstanding the terms of the MSA. Section 20130(1) provides in part that "[a]n indemnification, hold harmless, or similar agreement or conveyance *is not effective to transfer* from a person who is liable under section 20126 to the

---

[5] MCL 324.21301 *et seq.*, MCL 324.11101 *et seq*, and MCL 324.3101 *et seq.*, respectively.

state for evaluation or response activity costs or damages for a release or threat of release to any other person *the liability imposed under this part.*"  MCL 324.20130(1) (emphasis added).

8. Further, under Section 20126a of the NREPA, a liable person is *jointly and severally* liable for all costs of response activity lawfully incurred by the state of Michigan relating to the selection and implementation of response activity or corrective action under Part 201.

9. In October, 2005, Delphi filed for bankruptcy under Chapter 11 of the Bankruptcy Code 11 USC 101 *et seq.*

10. On or about January 25, 2008, Delphi's First Amended Plan was confirmed by this Court, but it was never consummated. And, according to Delphi it is currently negotiating possible modifications to its Plan with undisclosed parties.

### Steering Option Motion

11. Delphi is asking the Court to grant a Motion to allow GM to exercise an option contained in the Amended Master Restructuring Agreement (Amended MRA) to purchase Delphi's global Steering business. The MDEQ is aware of at least two facilities (or former facilities) located in Saginaw, Michigan (1400 and 3900 Holland Avenue), that had been used for by GM and Delphi for the Steering Business. Both facilities are now sites of environmental contamination.[6]

12. In addition to authorizing the exercise of the option, the Motion seeks Court approval of any sale free and clear of all liens, claims, and encumbrances, although it is contemplated that a separate sale motion will be filed once an agreement is signed between the Delphi and GM and/or the Business Optionee.

---

[6] It is not clear which assets (including land and buildings) will be transferred as part of the Global Steering Business.

4

## Objection

13. GM owned and operated several Steering Plants in Saginaw, Michigan prior to their transfer to Delphi. Releases from these facilities were confirmed and reported during GM's ownership and operation. Under Part 201 of the NREPA, a party that causes a release or threat of release remains liable even if it transfers the property or facility on which contamination is located. As stated above, GM remains directly and independently liable under Part 201 and/or Part 213 of the NREPA for contamination, notwithstanding the subsequent transfer of these properties to Delphi.

14. GM has already acknowledged and this Court has provided in its September 26, 2008, Order approving the Amended Global Settlement Agreement and the Amended MRA that nothing in those documents, "any Delphi Plan, including amendments, supplements, or modifications, or any Confirmation Order with respect to any Delphi Plan shall provide for the release or injunction, with respect to the GM-Related Parties, of any ... (ii) claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, or liabilities of any State or any agency of any State, under state or federal environmental laws. ..."

15. The MDEQ is filing this limited objection to assert its position that GM is and will remain jointly and severally liable for contamination at the Michigan properties that are likely to be the subject of the option and subsequent sale and that any order approving the exercise of the option should include provision that makes it clear that the contemplated transaction will not relieve GM of its independent liabilities and obligations with regard to any contamination at the steering facilities.

16. The MDEQ is also objecting because the sale is taking place outside of a confirmed plan. As stated above, Delphi's confirmed plan was never consummated, cannot now

be implemented, and Delphi is currently in negotiations to modify the plan. The rights, duties, and relationships, that are usually determined as part of the plan confirmation process, may be settled, at least with regard to the Global Steering Business, and its related facilities, as part of, and under the terms of GM's exercise of its option and yet to be disclosed sales documents, without the protections afforded by the plan confirmation process.

17.    Delphi must comply with state and local laws that are protective of the environment, public health and safety and, therefore, must perform and continue to comply with state regulations.[7]

18.    The MDEQ requests that any order approving the Motion require Delphi to agree to make adequate provisions in any modified plan to ensure that any response activities that are required at any of the steering facilities is completed

19.    MDEQ reserves the right to assert further objections to the Motion.

## Memorandum of Law

20.    Because the relevant authorities in support of the requested relief are cited in this Objection, the MDEQ requests that the requirement of a separate memorandum of law under Local Bankruptcy Rule 9013-1 (b) be deemed satisfied.

---

[7] *Midlantic Nat'l Bank v New Jersey Dep't of Envtl Protection*, 474 US 494, 505, 106 S Ct 755, 761-63 (1986). *See also,* 28 USC 959.

WHEREFORE, the MDEQ respectfully requests that this Court deny the Motion unless the issues raised here are addressed, and grant such other and further relief as is just had appropriate.

>Respectfully submitted,
>
>Michael A. Cox
>Attorney General
>
>/s/   Celeste R. Gill
>Celeste R. Gill (Admitted Pro Hac Vice)
>Assistant Attorney General
>Environment, Natural Resources
>and Agriculture Division
>6th Floor, Williams Building
>525 W. Ottawa
>P.O. Box 30755
>Lansing, MI   48909
>(517) 373-7540
>E-mail:  gillcr@michigan.gov

Dated:  March 16, 2009
s: NR/cases/2006/Delphi/objection to option motion
LF:Delphi/Objection to option motion

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing MICHIGAN DEPARTMENT OF ENVIRONMENTAL QUALITY'S LIMITED OBJECTION TO THE STEERING OPTION EXERCISE MOTION has been served by electronic and/or overnight mail on the parties listed below on this 16th day of March, 2009.

Honorable Robert D. Drain (Overnight Mail)
US Bankruptcy Judge
One Bowling Green
Room 632
New York, NY 10004
US BANKRUPTCY JUDGE

Delphi Corporation, *et al* (Overnight Mail)
Attn: General Counsel
5725 Delphi Drive
Troy, MI 48098
DEBTOR

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: John Wm. Butler, Jr.
333 West Wacker Drive, Suite 2100
Chicago, IL 60606
COUNSEL FOR THE DEBTORS

Davis Polk & Wardwell
Attn: Donald Bernstein & Brian Resnick
450 Lexington Avenue
New York, NY 10017
COUNSEL FOR THE AGENT UNDER THE
POSTPETITION CREDIT FACILITY

Latham & Watkins LLP
Attn: Robert J. Rosenberg & Mark A. Broude
885 Third Avenue
New York, NY 10022
COUNSEL FOR THE CREDITORS' COMMITTEE

Fried, Frank, Harris, Shriver & Jacobson LLP
Attn: Bonnie K. Steingart
One New York Plaza
New York, NY 10004
COUNSEL FOR THE EQUITY COMMITTEE

8

Weil, Gotshal & Manges LLP
Attn: Robert J. Lemons
767 Fifth Avenue
New York, NY 10153
COUNSEL FOR GENERAL MOTORS CORPORATION

The Office of the United States Trustee (Overnight Mail)
Attn: Brian Masumoto
33 Whitehall Street, Suite 2100
New York, NY 10004
US TRUSTEE

/s/ Celeste R. Gill
Celeste R. Gill
Assistant Attorney General
Environment, Natural Resources
and Agriculture Division
6th Floor, Williams Building
525 W. Ottawa
P.O. Box 30755
Lansing, MI 48909
(517) 373-7540
E-mail: gillcr@michigan.gov