**Hearing Date and Time: March 24, 2009 at 10:00 a.m.**
                                          **Objection Deadline: March 17, 2009 at 4:00 p.m.**

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION | KELLEY DRYE & WARREN LLP |
| Israel Goldowitz, Chief Counsel | Merrill B. Stone |
| Karen L. Morris, Deputy Chief Counsel | Craig A. Wolfe |
| John A. Menke, Assistant Chief Counsel | 101 Park Avenue |
| Ralph L. Landy, Attorney | New York, NY  10178 |
| C. Wayne Owen, Jr., Attorney | Tel:  (212) 808-7800 |
| 1200 K Street, N.W. | Fax: (212) 808-7897 |
| Washington, D.C.  20005 | |
| Tel: (202) 326-4020 | KELLEY DRYE & WARREN LLP |
| Fax: (202) 326-4112 | Joseph A. Boyle |
| | 200 Kimball Drive |
| Attorneys for Pension Benefit Guaranty Corporation | Parsippany, NJ  07054 |
| | Tel:  (973) 503-5920 |
| | Fax: (973) 503-5930 |
| | |
| | Attorneys for Pension Benefit Guaranty Corporation |

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 (RDD) |
| | ) | |
|                 Debtors. | ) | (Jointly Administered) |
| | ) | |

**RESPONSE OF PENSION BENEFIT GUARANTY CORPORATION
TO DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 363 AND
FED. R. BANKR. P. 6004 AUTHORIZING AND APPROVING OPTION
EXERCISE AGREEMENT (THE "STEERING OPTION EXERCISE MOTION")**

        Pension Benefit Guaranty Corporation ("PBGC") hereby responds to the Steering Option Exercise Motion (the "Motion"). In support of the response, PBGC respectfully represents as follows:

## PRELIMINARY STATEMENT

The Motion seeks approval for the Debtors to enter into the Option Exercise Agreement[1] with GM under the terms of the Amended MRA. The transactions under the Option Exercise Agreement are intended to result in the transfer of the Debtors' global Steering Business subject to a further sale motion. The global Steering Business includes assets that are subject to the PBGC's statutory liens on assets of the Debtors' foreign affiliates ("Foreign Affiliates"), and PBGC intends to reserve all its rights with respect to those liens. Because the Foreign Affiliates are not debtors in a case under the Bankruptcy Code, they are not entitled to transfer their assets under the "free and clear sale" provisions of section 363(f) of the Bankruptcy Code. PBGC does not intend to release its liens on the assets of the Foreign Affiliates without the Debtors or GM first providing for the satisfaction of the obligations underlying the liens. Absent that, PBGC's liens will follow the foreign assets even if they are transferred to GM. This Court lacks authority or jurisdiction to order otherwise.

## BACKGROUND

**A.    General Background**

1. On October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code") and commenced the above-captioned chapter 11 cases.

2. Delphi is the plan sponsor of the Delphi Hourly-Rate Employees Pension Plan (the "Hourly Plan") and the Delphi Retirement Program for Salaried Employees (the "Salaried Plan" and, collectively with the Hourly Plan, the "Plans"). Each of the Plans is a

---

[1]   Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Motion.

2

single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301-1461 (2006). Neither of the Plans has been terminated. Certain other Debtors are plan sponsors of four smaller defined benefit pension plans covered by Title IV of ERISA.

**B.    Background of Pension Liability**

3.    PBGC is a wholly owned United States government corporation that administers and enforces the nation's defined benefit pension plan termination insurance program under ERISA. The termination insurance program protects nearly 44 million workers participating in over 29,000 private sector pension plans. *See* PBGC 2008 Annual Report at (i);[2] *see generally PBGC v. LTV Corp.,* 496 U.S. 633 (1990).

**1.    Minimum Funding Requirements**

4.    An employer's decision to establish a defined benefit pension plan is entirely voluntary. Once established, however, federal law requires the employer to fund the plan in accordance with the minimum funding standards prescribed by the Internal Revenue Code ("IRC") and ERISA. 26 U.S.C. § 412 ("IRC § 412"), 26 U.S.C.A. § 430 ("IRC § 430"); 29 U.S.C. §§ 1082, 1083. A pension plan must be funded until it is terminated in accordance with ERISA. Rev. Rul. No. 79-237, 1979-2 C.B. 190.

**2.    PBGC's Proofs of Claim**

5.    PBGC timely filed three claims regarding each of the Plans against each of the Debtors for: (1) unpaid minimum funding contributions required under IRC § 412 and 29 U.S.C. §§ 1082 and 1362(c); (2) unpaid premiums owed to PBGC under 29 U.S.C. § 1307; and (3) contingent termination liability to PBGC under 29 U.S.C. § 1362(a) and (b). Each of the

---

[2]    This Annual Report is available on PBGC's website at: http://www.pbgc/gov/doc/2008_annual_report.pdf.

3

claims filed by PBGC, on behalf of itself and on behalf of the Plans, is asserted against each of the Debtors for joint and several liability.[3]

6. ERISA provides that the plan sponsor and each member of the plan sponsor's "controlled group" are jointly and severally liable for the unpaid minimum funding contributions owed to the pension plan. IRC § 412(b)(2). "Controlled group" is defined in IRC § 430(k)(6)(C) and 29 U.S.C. § 1301(a)(14) and, among other things, includes families of corporations having at least 80 percent common ownership. 26 U.S.C. § 1563(a). Therefore, Delphi, as the contributing sponsor of the Plans, and each member of its controlled group, including all the Debtors and their Foreign Affiliates, are jointly and severally liable to the Plans for the contributions necessary to satisfy the minimum funding standard under the IRC and ERISA, IRC § 412(b)(2), and, if the Plans are terminated, 29 U.S.C. § 1362(c), for the unfunded benefit liabilities discussed below.

### 3. PBGC Liens

7. IRC §§ 412(n) and 430(k) impose a statutory lien in favor of a pension plan. The statutory lien arises by operation of law immediately on the day following the date on which unpaid contributions first exceed $1 million and is for the aggregate unpaid balance of the funding contributions (plus interest). IRC §§ 412(n)(3), (4), and (5), 430(k)(3), (4) and (5). PBGC has exclusive authority governing enforcement of the lien. IRC §§ 412(n)(5), 430(k)(5) ("Any lien created under [§§ 412(n)(1) or 430(k)(1)] may be perfected and enforced only by the Pension Benefit Guaranty Corporation . . ."). The statutory lien attaches to all property of the plan sponsor and each member of its controlled group. IRC §§ 412(n)(1), 430(k)(1).

---

[3] On June 27, 2006, this Court approved a stipulation between PBGC and the Debtors allowing PBGC to file consolidated claims against the Debtors. Pursuant to the stipulation, the filing of a claim by PBGC in these proceedings is deemed to constitute the filing of such claim in all of the cases jointly administered under the above case caption. Therefore, each claim PBGC filed represents a separate claim asserted against each of the Debtors.

4

8. Pursuant to IRC § 6323(f)(2)(B), PBGC has recorded Notices of Federal Lien with the Recorder of Deeds for the District of Columbia (the "<u>Notices</u>") with respect to the liens under IRC § 412(n) of each Plan against all property and rights to property of the Debtors' Foreign Affiliates. PBGC has filed Notices for liens in excess of $165 million for unpaid contributions to the Salaried Plan and for more than $9 million for three of the Debtors' smaller plans. As a result of the transfer to GM of certain pension liabilities of the Hourly Plan, PBGC withdrew the lien Notices previously filed on behalf of Hourly Plan. *See* discussion of the Delphi/GM MRA in paragraph 10 below.

9. In connection with PBGC's asserted liens against the Foreign Affiliates, the Court has granted PBGC adequate protection for cash repatriated by the Debtors from the Foreign Affiliates through certain intercompany transfers on three occasions (Docket Nos. 13694, 13733 and 14005).

**C.      Delphi's Proposed Sale of the Steering Business**

10. The Motion is framed as a request for approval to enter an option exercise agreement for the sale of the Debtors' global Steering Business to GM. As explained fully in the Motion, GM's option is part of the Amended MRA. The Court approved Amended MRA in September 2008. When originally presented to the Court for approval, the Amended MRA proposed to effect the transfer of billions of dollars in net pension liabilities from the Hourly Plan to GM's Hourly Plan, thereby relieving the Debtors of billions of dollars of liability for contributions that would otherwise have been due to its Hourly Plan and that would have to be satisfied, probably in a cash lump sum, before the Debtors could emerge from bankruptcy. The MRA and resulting transfer of Hourly Plan liabilities allowed PBGC to release approximately $1.2 billion in liens against the assets of the Foreign Affiliates. The Motion refers to this benefit for Debtors as follows:

5

> By transferring nearly $2 billion of hourly pension liabilities to GM through the Amended GSA and Amended MRA and freezing Delphi's hourly pension plan (which was also approved as part of the Amended GSA with the consent of Delphi's U.S. unions), Delphi made substantial progress towards achieving its pension funding strategy objectives for hourly employees.

*See* Motion at ¶ 19. In addition to the immediate transfer of Hourly Plan liabilities, the MRA also provided that the remaining half of the Hourly Plan would be assumed by GM when and if the Debtors successfully reorganized and emerged from their Chapter 11 bankruptcy. In their filings in support of the MRA, Debtors stated that upon emergence they intended to pay the overdue funding contributions to the Salaried Plan and continue to sponsor that Plan.

11. While PBGC supported the approval of the Amended MRA based on the foregoing, the economic realities of the case have changed substantially over the past six months. As the Debtors acknowledge in the Motion, the global economic crisis has taken its toll on Delphi's business. *See* Motion at ¶ 20. Even more disquieting is the Debtors' statement that there is an "extremely low volume production environment in the global automotive industry." *See* Motion at ¶ 21. There are now substantial concerns about whether GM will satisfy its commitments under the Amended MRA to undertake the Debtors' Hourly Plan pension liabilities and whether Debtors have the ability to satisfy their obligations to fund the Salaried Plan.

12. While the Motion sufficiently describes the relevant provisions of the Amended MRA and its place in the Debtors' plan to emerge from bankruptcy, it does not describe the Steering Business. The Motion does not contain a schedule of assets, nor is PBGC aware of any such schedule in the related documents (the Amended MRA or the Option Exercise Agreement). The Debtors state that they will seek approval of the Master Sale and Purchase Agreement in a separate motion, but PBGC is left with significant concerns about whether the Debtors will attempt to transfer assets of the Foreign Affiliates free and clear of PBGC's liens.

6

13. PBGC understands that the Steering Business, being a global operation, includes assets of certain Foreign Affiliates that are not debtors in chapter 11 cases under the Bankruptcy Code. PBGC's Notices extend its liens to the foreign assets of those Foreign Affiliates. Any sale of the foreign assets free and clear of liens would therefore diminish PBGC's ability to recover on its claims both for unpaid minimum funding contributions and for the underfunding of the Plans if the Plans terminate.

## ARGUMENT

### A. The Court Lacks Authority to Approve Sale of the Assets of the Foreign Affiliates Free and Clear of Liens and Encumbrances

14. The Foreign Affiliates are not debtors under the Bankruptcy Code, and thus the Debtors cannot use section 363(f) or any other provision of the Bankruptcy Code to cause the transfer the Foreign Affiliates' assets free and clear of PBGC's liens. Section 363(f) states: "The trustee may sell property [of the estate] free and clear of any interest in such property of an entity other than the estate, only if – [one of five conditions is met]." 11 U.S.C. § 363(f). Nothing in section 363, nor the rest of the Bankruptcy Code, extends this specific benefit beyond a debtor and its estate.

15. A recent Delaware case demonstrates the limits of section 363 with potentially costly results for the purchaser. In *Amphenol Corp. v. Shandler (In re Insilco Technologies, Inc.)*, 351 B.R. 313 (Bankr. D. Del. 2006), the purchaser (Amphenol) bought the stock of one of the debtor's wholly-owned non-debtor subsidiaries (PMC) in a section 363 sale. Amphenol mistakenly thought that it was buying PMC's assets free and clear of any liens and encumbrances. However, when that position was challenged, the court found that Amphenol received the *stock* free and clear, *not* the assets, because PMC was not a debtor in the bankruptcy case and its assets were not part of the bankruptcy estate. *Id*. at 321-322.

7

16.     Similarly, this Court cannot approve a sale of the assets free and clear of any liens because the Foreign Affiliates are not debtors in a bankruptcy case and their assets are not part of the Debtors' bankruptcy estates. Any sale of the foreign assets would necessarily remain subject to PBGC's liens, which remain in place.

**B.     The Sale of the Steering Business Could Not Meet the Standard for the Sale of Assets Free and Clear of Liens**

17.     Even if the Court had authority to approve a section 363 sale of the assets of the Foreign Affiliates, the Debtors could not meet the standard for the sale of assets free and clear of liens. "The standards that must be met before there can be a sale free and clear of liens or other interests are set forth in section 363(f) of the [Bankruptcy] Code." 3 Lawrence P. King, Collier on Bankruptcy § 363.06 (15th ed. 2008); *see* 11 U.S.C. § 363(f). Those situations arise when: (1) non-bankruptcy law permits the sale of such property free and clear; (2) the lien holder consents; (3) the sale price of the property is greater than the aggregate value of all liens on the property; (4) the lien is subject to a bona fide dispute; or (5) the lien holder could otherwise be compelled to take money in exchange for its lien on the property. *Id.*

18.     In addition, section 363(e) states that, at the request of a lien holder, the court must prohibit or condition the sale of the property on which the lien exists as is necessary to "provide adequate protection of such [lien]." 11 U.S.C. § 363(e). Adequate protection is defined as cash payments, additional or replacement liens, or other relief that will give the lien holder the "indubitable equivalent" of its interest. 11 U.S.C. § 361. Frequently, the replacement liens are attached to the proceeds of the collateral. "If adequate protection cannot be offered, such … sale must be prohibited." 3 Lawrence P. King, Collier on Bankruptcy § 363.05[2] (15th ed. 2008); 11 U.S.C. § 363(e).

19.     The Motion states that according to the terms of the Amended MRA, the Steering Business will be sold free and clear of all liens and encumbrances; however, it fails to

8

state how it could meet the standard of section 363. The consideration to be paid by GM for the Steering Business is essentially a reduction in the Debtor's obligations to the debtor-in-possession lenders and GM without any cash being paid to the Debtors. Accordingly, there are no proceeds to which PBGC's liens could attach. Furthermore, even if PBGC's liens were subject to a bona fide dispute, PBGC's liens are entitled to adequate protection in the form of liens on the proceeds to the same extent, priority and validity as currently exists. Without proceeds, the Debtors cannot meet the requirements of the Bankruptcy Code. PBGC raises this issue now in order to preserve its right to object to any future sale motion seeking approval of the Master Sale and Purchase Agreement.

      WHEREFORE, PBGC requests that this Court condition any approval of the Option Exercise Agreement on the preservation of PBGC's right to object to the sale of the Steering Business that purport to be free and clear of PBGC's liens on the assets of the Foreign Affiliates.

| | |
|---|---|
| Dated: Washington, D.C.<br>March 17, 2009 | PENSION BENEFIT GUARANTY<br>CORPORATION<br><br>By: */s/ John A. Menke*<br>    Israel Goldowitz, Chief Counsel<br>    Karen L. Morris, Deputy Chief Counsel<br>    John A. Menke, Assistant Chief Counsel<br>    Ralph L. Landy, Attorney<br>    C. Wayne Owen, Jr., Attorney<br>1200 K Street, N.W.<br>Washington, D.C. 20005<br>Tel: (202) 326-4020<br>Fax: (202) 326-4112<br><br>-and- |
| Dated: New York, New York<br>March 17, 2009 | KELLEY DRYE & WARREN LLP<br><br>By: */s/ Craig A. Wolfe*<br>    Merrill B. Stone<br>    Craig A. Wolfe<br>101 Park Avenue<br>New York, NY 10178<br>Tel: (212) 808-7800<br>Fax: (212) 808-7897<br><br>KELLEY DRYE & WARREN LLP<br>Joseph A. Boyle<br>200 Kimball Drive<br>Parsippany, NJ 07054<br>Tel: (973) 503-5920<br>Fax: (973) 503-5930<br><br>Attorneys for Pension Benefit Guaranty Corporation |

## CERTIFICATE OF SERVICE

        I, Marie Vicinanza, certify that on the 17th day of March, 2009, caused to be served to the parties listed below, a true and correct copy of the foregoing *Statement of Pension Benefit Guaranty Corporation Regarding Debtors' Expedited Motion for an Order Authorizing Debtor to Implement the Amended and Restated Global Settlement Agreement and Master Restructuring Agreement with General Motors Corporation (the "GSA and MRA Amendment Motion"),* via hand delivery and/or electronic mail as indicated.

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP, <br> John Wm. Butler, Jr. <br> 333 West Wacker Drive <br> Suite 2100 <br> Chicago, Illinois 60606 <br> **Electronic Mail** <br> jack.butler@skadden.com | Kayalyn A. Marafioti <br> Thomas J. Matz <br> Skadden, Arps, Slate, Meagher & Flom LLP, <br> Four Times Square <br> New York, New York 10036 <br> **Via Hand Delivery and Electronic Mail** <br> kayalyn.marafioti@skadden.com <br> thomas.j.matz@skadden.com |
| Office of the United States Trustee <br> Brian Masumoto, Esq. <br> 33 Whitehall Street <br> New York, New York 10004 <br> **Via Hand Delivery** | Honorable Robert D. Drain <br> United States Bankruptcy Court <br> Southern District of New York <br> One Bowling Green <br> New York, NY 10004 <br> **Via Hand Delivery** |

Dated:  March 17, 2008             /s/ *Marie Vicinanza*
        New York, New York       Marie Vicinanza