**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Michael J. Riela (MR-7829)
Email: robert.rosenberg@lw.com
         mitchell.seider@lw.com
         mark.broude@lw.com
         michael.riela@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 363 AND FED R. BANKR. P. 6004 AUTHORIZING AND APPROVING OPTION EXERCISE AGREEMENT WITH GENERAL MOTORS CORPORATION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation, *et al.* (collectively, the "Debtors"), by and through its counsel, hereby files this Limited Objection to the Debtors' motion for an order authorizing and approving an option exercise agreement with General Motors Corporation (the "Motion"). In support of this Limited Objection, the Committee respectfully states as follows:

**BACKGROUND**

1.   On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On October 14, 2005, the three remaining Debtors also filed voluntary petitions.

2.   The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker. Moelis & Company LLC has been retained as the Committee's co-investment banker.

3.   Pursuant to the Amended Master Restructuring Agreement between Delphi Corporation ("Delphi") and General Motors Corporation ("GM") dated September 12, 2008 (the "Amended MRA"), GM agreed that ownership of the Debtors' global steering and halfshaft businesses (the "Steering Business") would transfer to GM if it is not sold to a third party by December 31, 2010. In addition, the Amended MRA provides that upon the occurrence of particular conditions prior to December 31, 2010, GM would have the option to purchase the Steering Business on the terms generally set forth in the Amended MRA.

4.   On March 4, 2009, the Debtors filed the Motion, seeking approval of an agreement (the "Option Exercise Agreement") dated March 3, 2009, pursuant to which GM would exercise its purchase option with respect to the Steering Business (with certain amendments to the terms provided under the Amended MRA), to allow a wholly-owned

---

[1] The current members of the Committee are: (a) Freescale Semiconductor, Inc.; (b) IUE-CWA; (e) Wilmington Trust Company, as Indenture Trustee and (d) Tyco Electronics Corporation. The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America are *ex officio* members of the Committee.

2

subsidiary of GM to purchase that business.[2] The Debtors and GM contemplate that the actual purchase by GM of the Steering Business will take place pursuant to a definitive purchase agreement (such agreement, a "<u>Definitive Purchase Agreement</u>") for which the Debtors will seek approval pursuant to a separate motion. The Debtors intend for the hearing with respect to that separate motion to take place on April 23, 2009. Thus, the Debtors state that this Motion requests only the approval of the Option Exercise Agreement, and not the sale of the Steering Business itself.

## **LIMITED OBJECTION**

5.     At this time, the Committee has not seen any Definitive Purchase Agreement involving the sale of the Steering Business – and indeed the Committee understands that such an agreement may not have been finalized. Thus, the Committee lacks sufficient information to reach a conclusion as to whether the terms of the sale of the Steering Business to GM are objectionable. In addition, the Motion states that GM and Delphi had committed to reaching an agreement on a term sheet (the "<u>Asset Transfer Term Sheet</u>") covering the transfer of certain other Delphi facilities on or prior to March 9, 2009, which would be a fundamental part of the Debtors' chapter 11 plan modifications. The Committee has not seen the Asset Transfer Term Sheet, and understands that such term sheet may not yet have been finalized either.

6.     The Committee understands that the Debtors simply seek the approval of the Option Exercise Agreement through the Motion, and not the approval of a Definitive Purchase Agreement (which the Debtors contemplate would be considered during the April 23 omnibus hearing). Furthermore, the Committee recognizes that the terms of the Option Exercise Agreement, if viewed in isolation, are in fact more favorable to the Debtors than the terms of the

---

[2] Delphi previously entered into a purchase and sale agreement with respect to the Steering Business with an affiliate of Platinum Equity, LLC. That agreement has been terminated.

NY\1511292.3

Amended MRA under which GM has already agreed to take ownership of the Steering Business. So long as the Committee's rights to object to the Definitive Purchase Agreement on any grounds would not be impacted by the entry of an order approving this Motion, the Committee does not object to this Motion. On the other hand, if the Debtors or this Court believe that the entry of an order approving the Option Exercise Agreement would in any way impair the Committee's ability to object to a Definitive Purchase Agreement, the Committee requests that the hearing on the Motion be adjourned to the date in which this Court considers approval of such Definitive Purchase Agreement and after the Asset Transfer Term Sheet has been finalized and circulated to the Committee. The Committee simply is not in a position to agree that the terms of the sale of the Steering Business to GM are reasonable and in the best interests of the Debtors and their unsecured creditors, without having seen a Definitive Purchase Agreement or the Asset Transfer Term Sheet.

7.      As an isolated matter, the Committee does not object to the sale of the Steering Business to GM. The circumstances involving the Steering Business are unique (the Debtors attempted, but failed, to sell that business to a third party, and GM and Delphi specifically contemplated the sale of that business to GM under the Amended MRA). However, as the Motion makes amply clear, one cannot in fact analyze the proposed Option Exercise Agreement and sale of the Steering business as an isolated matter. As the Motion describes, GM and the Debtors are in the process of negotiating the Asset Transfer Term Sheet, which the Debtors state would be a fundamental part of their plan modifications, but the Committee has not yet seen that term sheet. In that context, the Committee is gravely concerned that the sale of the Steering Business to GM may be just the first of many future allegedly separate transfers of additional Delphi businesses and facilities to GM outside the context a chapter 11 plan, and that the Debtors

4

may not receive adequate consideration from GM in exchange for those additional businesses if the transfers are done on a "one-off" basis. Such future transfers to GM may negatively impact recoveries to unsecured creditors, and may render the Debtors incapable of proposing a confirmable chapter 11 plan.

8. Accordingly, the Committee submits that this Court should be deeply skeptical of any proposed future asset transfers to GM outside the context a chapter 11 plan. Because future transfers of assets to GM will impact unsecured creditors' recoveries, as well as the contours of any modified chapter 11 plan that the Debtors may propose (and, indeed, whether such a plan could be confirmed and consummated), it is essential that the Committee and this Court be fully informed before irreversible steps are taken without the protections afforded by the plan process and section 1125 disclosure. The Debtors should not simply give to GM everything it wants from them, as GM would then lose any incentive to assist the Debtors in emerging from chapter 11 under a viable plan of reorganization.

9. As noted above, the relief sought in the Motion on its face is limited to the approval of the Option Exercise Agreement. While the Committee does not object to that relief on its own, and believes that nothing in the requested order should affect or prejudice the Committee's ability to object to the sale of the Steering Business at the subsequent hearing, the Committee requests that the order expressly provide that the approval of the Motion and the Option Exercise Agreement is without prejudice to the Committee's right to object to the sale of the Steering Business at the subsequent hearing and will not affect the Court's determination with respect to such sale. There is as of yet no Definitive Purchase Agreement and no Asset Transfer Term Sheet to provide greater context. Thus, this Court, the Committee, and other parties are unable to understand the proposed sale within the broader context – and this Court

should not approve the sale of the Steering Business until the Asset Transfer Term Sheet has been finalized and the Committee has had a chance to review it.

10.     If this Court believes that the order approving this Motion will or could have an effect on any party's right to object to the sale or on this Court's ability to review the propriety of the sale of the Steering Business, the Committee respectfully requests that the Court either adjourn the hearing on the Motion, or reserve its ruling on the Motion until a subsequent hearing at which the sale itself would be considered.

**WHEREFORE,** the Committee respectfully requests that this Court grant it all relief that it deems just and proper.

Dated:  March 17, 2009
        New York, New York

                                                    **LATHAM & WATKINS LLP**

                                                    By: /s/ Robert J. Rosenberg
                                                        Robert J. Rosenberg (RR-9585)
                                                        Mitchell A. Seider (MS-4321)
                                                        Mark A. Broude (MB-1902)
                                                        Michael J. Riela (MR-7829)
                                                        885 Third Avenue, Suite 1000
                                                        New York, New York 10022
                                                        Telephone:  (212) 906-1200

                                                    Counsel for the Official Committee
                                                    of Unsecured Creditors

NY\1511292.3