USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/09

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re                                    Chapter 11
                                         Case No. 05-44481
DELPHI CORPORATION, et al.,                              (RDD)

                    Debtors.            Jointly Administered
------------------------------------X
UNITED STATES OF AMERICA,

                    Appellant,

     - against -                         MEMORANDUM AND ORDER

DELPHI CORPORATION,                      08 Civ. 3753 (NRB)

                    Appellee.
------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before this Court, pursuant to 28 U.S.C. § 158(a)(1), is the United States of America's appeal of U.S. Bankruptcy Judge Robert D. Drain's March 6, 2008 "Order Pursuant to 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3007 (1) Denying United States of America's Motion for Leave to File Late Claim and (2) Disallowing and Expunging Proof of Claim Number 16727." For the reasons stated herein, the decision below is affirmed.

### BACKGROUND

This case arises from the voluntary petitions in the Bankruptcy Court for reorganization under 11 U.S.C. §§ 101-1330 of Delphi Corporation ("Delphi") filed on October 8

and 14, 2005. (Appellant's Record on Appeal ("Appellant's R.") at 2.) Delphi is a large automotive supplier. (Id. at 5.) On April 12, 2006, the Bankruptcy Court set July 31, 2006 as the bar date, in other words the last date on which "claims," as defined under 11 U.S.C § 101(5), could be filed. (Id. at 9.)

On August 28, 2006, Stanley Straughter, a Delphi employee in Rochester, New York, contacted the Equal Employment Opportunity Commission ("EEOC") National Call Center. (Id. at 297.) Straughter claims he was fired from Delphi "for not showing [his] medical history" after taking two days of sick leave. (Id. at 297-98.) Straughter provided a doctor's note and eventually agreed to release his medical history for the days he was sick, but Delphi insisted that he execute the release of his full medical history. (Id. at 298.) After Straughter refused to execute a full release, he was terminated. (Id.)

On September 22, 2006, Straughter formally filed a Complaint of Discrimination with the EEOC alleging that Delphi's sick leave policy violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") (Id. at 323.) On October 2, 2006, the EEOC informed Delphi of Straughter's Charge of Discrimination. (Id. at 298.) On November 6, 2006, Delphi responded to the Charge of

2

Discrimination by claiming they were permitted to ask for medical releases to determine the validity of the doctor's note. (Id. at 299.) From November, 2006 through June, 2007, the EEOC investigated Delphi's policy and engaged in negotiations with Delphi. (Id. at 300-02.)

After negotiations failed, appellants filed a complaint in the Western District of New York alleging that Delphi's sick-leave policy violated the ADA on September 28, 2007. (Id. at 303.) About two weeks later, they filed two notices of claim with the Bankruptcy Court on October 16, 2007. (Id. at 303.) Claim number 16727, the claim at issue, asserts an unliquidated priority claim corresponding to damages caused by Delphi's pre-petition conduct. (Id. at 304.) Claim number 16728, not at issue, asserts an unliquidated priority administrative expense claim arising out of Delphi's post-petition conduct. (Id.) This claim is not subject to the bar date. (Id.)

Appellants argued below that the EEOC's organic statute precluded it from filing a notice of claim before the commencement of an action in a district court. In its March 6, 2008 Order, the Bankruptcy Court denied this construction of the EEOC's organic statute. (Id. at 801-02.) Further, the Bankruptcy Court ruled that appellant's claim was untimely and denied appellant's motion to file a

3

late claim. (Id. at 806.) Specifically, it ruled that although appellant did not learn of Straughter's allegation until after the bar date, it did not "adequately address the delay between the date it learned it had a claim and the date it eventually filed its proof of claim." (Id. at 795.) For these reasons, inter alia, the Bankruptcy Court ruled that appellants did not qualify for an "excusable neglect" exception to the bar date. (Id.)

Additionally, the Bankruptcy Court included an analogy to Federal Rule of Civil Procedure 23. (Id. at 805-06.) Specifically, it noted that individuals who were subject to this alleged discrimination and did not file a timely notice of claim would be barred from receiving class action relief, as such relief would circumvent the bar date. (Id.) Judge Drain noted that relief from the bar date here would have similar effect. (Id.)

Finally, Judge Drain explicitly stated that his ruling was made in the context of the Equity Purchase and Commitment Agreement ("EPCA") that governed the Debtor's exit financing. (See generally id.) Judge Drain expressed concern that allowing late claims would undermine the Bankruptcy Court's exit financing efforts. (See id. at 805.) The United States appealed the Bankruptcy Court's decision.

4

## DISCUSSION

This appeal seeks to overturn the Bankruptcy Court's well-reasoned decision, despite well-established case law that a bankruptcy judge's excusable neglect determination should not be overturned unless "no reasonable man could agree with the bankruptcy judge's decision." Integrated Res., Inc. v. Ameritrust Co. Nat. Ass'n et al. (In re Integrated Res., Inc.), 157 B.R. 66, 72 (S.D.N.Y. 1993); see Midland Cogeneration Venture L.P. v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 124 (2d Cir. 2005) ("Bankruptcy court decisions to deny a request to file late are reviewed for abuse of discretion."). The opinion of the Judge Drain more than meets this standard, which no doubt reflects a determination that district courts ought not to involve themselves in the micromanagement of bankruptcy courts' dockets.[1] Moreover, even if there were a less deferential standard, we would likely affirm the Bankruptcy Court's decision.

Appellant asks that we allow the filing of a notice of claim more than one year after the July 31, 2006 bar date has passed because: (1) 42 U.S.C. § 2000e-5 requires that the EEOC keep its investigations confidential and (2) any

---

[1] Analogously, when a district court reviews the determination of magistrate judges in non-dispositive motions, a district court shall only reverse a magistrate's order where that order has been shown to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

5

failure to file by that date constituted excusable neglect. Additionally, appellant argues that the bankruptcy judge erred as a matter of law by applying Rule 23 principles to this case. Finally, appellants argue that the case should be remanded in light of changed circumstances in the debtor's exit financing arrangements. We briefly address why each of these arguments is unpersuasive.

**A. The Confidentiality Requirement of 42 U.S.C. § 2000e-5**

Appellant argues that the EEOC's statutory mandate to keep charges or investigations confidential before the filing of a district court action prohibited it from filing a timely notice of claim in this action. See 42 U.S.C. § 2000e-5(b) ("Nothing said or done during and as part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned."); see also 42 U.S.C. § 2000e-8(e). Appellant endeavors to create a definition of "made public" under the statute that would include the filing, under seal or in some other confidential manner, of a notice of claim in a bankruptcy court. We believe that this is too broad a definition of "made public." The Supreme Court quoted Senator Humphrey, a cosponsor of the legislation which became 42 U.S.C. § 2000e-5, as writing, "[T]his is a ban on

6

<u>publicizing</u> and not on such disclosure as is necessary to the carrying out of the Commission's duties under the statute. . . . The amendment is not intended to hamper Commission investigations or proper cooperation with other State and Federal agencies, but rather is aimed at the making available to <u>the general public</u> of unproven charges." <u>Equal Employment Opportunity Comm'n, v. Associated Dry Goods Corp.</u>, 449 U.S. 590, 599 (citing 110 Cong. Rec. 12819, 12723 (1964) (emphasis added)). A confidential filing in a bankruptcy court of notices of claim would not undermine this purpose of the statute, which, analogously to Federal Rule of Evidence 408, is crafted to avoid disclosure of informal efforts to resolve complaints. Consequently, even analyzing the issue <u>de novo</u>, we hold that 42 U.S.C. § 2000e-5 does not prevent the EEOC from filing before the relevant bar date notices of claim in a bankruptcy proceeding, under seal or in some other manner than ensures confidentiality.

**B. Excusable Neglect**

The EEOC further argues that even if the Court finds, as it does here, that it was permissible under the statutory confidentiality requirement for the EEOC to file a notice of claim in this case before the filing of a complaint, such failure was excusable. The Supreme Court's

7

balancing test from <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993) to determine whether a bankruptcy court should grant a motion to file a late proof of claim due to "excusable neglect" pursuant to Bankruptcy Rule 9006(b)(1) requires a bankruptcy court to balance, "(1) the danger of prejudice to the debtor, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."

Here the Bankruptcy Court's analysis was once again sound. The Bankruptcy Court identified several sources of prejudice, including a concern that allowing late filings would open the door to other late claimants seeking relief. (Appellant's R. at 805.) It also found that the EEOC could have filed there notice of claim as early as November, 2006 and consequently the 11-month delay was excessive. (<u>Id.</u> at 798.) Additionally, the Bankruptcy Court did not believe that the reason offered for not filing a protective claim, namely that EEOC was forbidden from doing so under 42 U.S.C. § 2000e-5, was persuasive. (<u>Id.</u> at 801-02.) On all grounds, the Bankruptcy Court's analysis was reasonable and

8

we have no basis to find that "no reasonable man could agree" with it.

## C. Analogy to Rule 23

Appellants also argue that the Bankruptcy Court's analogy to Rule 23 was an error of law and consequently its decision should be overturned. The basis for this argument is that the EEOC does not bring suits purely as a proxy for its victims, but also in an enforcement capacity and consequently should not be subject to Rule 23's constraints. See General Tel. Co. of Northwest, Inc. v. EEOC, 446 U.S. 318, 326 (1980). Reviewing the record, it appears that Judge Drain was analogizing to Rule 23 to note that in that context, individuals who did not file timely notices of claim could not recover in bankruptcy. (Appellant's R. 805.) Even assuming that the analogy was flawed, we find that it is not grounds to reject the Bankruptcy Court's reasoned determination, based on numerous independent grounds, that no excusable neglect was present here.

## D. Remand to the Bankruptcy Court in Light of Recent Developments

Appellants argue that remand is appropriate here since the financing in place at the time of the Bankruptcy Court's decision, the "EPCA," has fallen through and a new

9

financing plan has been enacted. (See Appellants Nov. 6, 2008 Letter.) We find this argument unpersuasive. Delphi notes that any new plans will be based on the universe of claims allowed by the original bar date. (See Appellee's Dec. 2, 2008.) The Bankruptcy Court's determination not to allow more claims despite the falling through of Delphi's original exit financing seems not only reasonable, but necessary. If the size of the claims at issue were a moving target, to be renegotiated every time financing fell through, it would greatly increase the difficulty of securing exit financing. Consequently, we do not remand this case back to the Bankruptcy Court.

## CONCLUSION

For the reasons set forth above, we affirm the Bankruptcy Court's March 6, 2008 Order denying the United States of America leave to file a late notice of claim and disallowing and expunging Proof of Claim Number 16727.

Dated:   New York, New York
         March 24, 2009

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

Matthew L. Schwartz, Esq.
Joseph N. Cordaro, Esq.
Assistant United States Attorney
Civil Division
86 Chambers Street
New York, NY 1000

John K. Lyons, Esq.
Albert L. Hogan, Esq.
Lisa B. Diaz, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Kayalyn A. Marafioti, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Alicia M. Leonhard, Esq.
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004