# Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                          :
         In re                            :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                       Debtors.           :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

ORDER UNDER 11 U.S.C. §§ 363 AND 1123 AND FED. R. BANKR. P. 2002
AND 9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF
SALE NOTICES, AND (IV) SETTING SALE HEARING DATE
IN CONNECTION WITH SALE OF BRAKES AND RIDE DYNAMICS BUSINESSES

("BRAKES AND RIDE DYNAMICS BIDDING PROCEDURES ORDER")

Upon the motion, dated March 31, 2009 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

1123, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving the bidding

procedures set forth herein and attached hereto as Exhibit 1 (the "Bidding Procedures"), (ii)

granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv)

setting a date for the sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the

sale (the "Sale") of certain of the Selling Debtor Entities' (defined below) assets (the "Acquired

Assets") comprising substantially all of the assets primarily used in the Selling Debtor Entities'

brakes business (the "Brakes Business") and ride dynamics business (the "Ride Dynamics

Business," together with the "Brakes Business, the "Sale Businesses"), free and clear of liens,

claims, and encumbrances, to BeijingWest Industries Co., Ltd. and certain of its affiliates (the

"Buyers"), pursuant to the Master Sale And Purchase Agreement, dated March 30, 2009, by and

between the Buyers and Delphi and certain of its affiliates, including certain affiliated chapter 11

Debtors as set forth in the Agreement (the "Selling Debtor Entities")[1] (the "Agreement"), or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases as defined in the Agreement (the "Assumed U.S. Contracts") and the assignment of certain postpetition executory contracts and unexpired leases as defined in the Agreement (the "Postpetition Contracts," and collectively with the Assumed U.S. Contracts, the "Assigned Contracts,") to the Buyers or to the party submitting the highest or otherwise best bid (the "Successful Bidder"), and (iii) the assumption of certain liabilities as defined in the Agreement (the "Assumed Liabilities") by the Buyers or the Successful Bidder; and upon the record of the hearing held on April 23, 2009 (the "Bidding Procedures Hearing"); and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.    The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

B.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

C.    The relief requested in the Motion and granted herein is in the best interests of the Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

---

[1]    Under the Agreement, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Technologies, Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

D.      The relief requested in the Motion and granted herein is in furtherance of the Debtors' confirmed plan of reorganization, as it may be modified.

E.      The notice of the Motion and the Bidding Procedures Hearing given by the Selling Debtor Entities constitutes due and sufficient notice thereof.

F.      The Selling Debtor Entities have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement and this order, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Assumed U.S. Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to stakeholders and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the assumption and assignment of the Assumed U.S. Contracts to be filed with the Court and served on the non-Debtor counterparties thereto, and (vi) set the Sale Hearing.

G.      The break-up fee, as described in the Agreement (the "Break-Up Fee"), (i) may be payable in accordance with the terms, conditions, and limitations of the Agreement, (ii) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Selling Debtor Entities' estates, within the meaning of sections 503 and 507 of the Bankruptcy Code, (iii) is of substantial benefit to the Selling Debtor Entities' estates, (iv) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Buyers notwithstanding that the proposed Sale is subject to higher or better offers for the Acquired Assets, (v) was negotiated by the parties at arms' length and in good faith, and (vi) is necessary to ensure that the Buyers will continue to pursue the proposed acquisition of the Acquired Assets.  The Break-Up Fee was a material inducement for, and condition of, the Buyers' entry into the Agreement.  The Buyers are unwilling to commit to hold open their offer

4

to purchase the Acquired Assets under the terms of the Agreement unless they are assured of

payment of the Break-Up Fee. Thus, assurance to the Buyers of payment of the Break-Up Fee

should promote more competitive bidding by inducing the Buyers to hold their bid open.

Without the Break-Up Fee, other bidding would be limited.  Further, because the Break-Up Fee

induced the Buyers to submit a bid that will serve as a minimum or floor bid on which other

bidders can rely, the Buyers have provided a benefit to the Selling Debtor Entities' estates by

increasing the likelihood that the price at which the Acquired Assets are sold will reflect their

true worth.  Finally, absent authorization of the Break-Up Fee, the Selling Debtor Entities may

lose the opportunity to obtain the highest or otherwise best available offer for the Acquired

Assets.

H.      The Bidding Procedures are reasonable and appropriate and represent the

best method for maximizing the realizable value of the Acquired Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1.      The Bidding Procedures, substantially in the form as set forth on Exhibit 1

attached hereto and incorporated herein by reference as if fully set forth herein, are hereby

approved and shall govern all events relating to the Agreement, any subsequent bids for the

Acquired Assets in these cases, and the Auction, if applicable.

2.      The Selling Debtor Entities may: (i) determine, in their business judgment,

which Qualified Bid is the highest or otherwise best offer, (ii) consult with the representative of

any official committee or significant constituent in connection with the Bidding Procedures, and

(iii) reject, at any time before entry of an order of the Court approving a Qualified Bid, any bid

(other than the Buyers' bid) which, in the Selling Debtor Entities' sole discretion, is (a)

inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code

or the Bidding Procedures, or (c) contrary to the best interests of the Selling Debtor Entities, their

estates, or their stakeholders.  The Selling Debtor Entities are authorized (x) to terminate the

bidding process or the Auction at any time if they determine, in their business judgment, that the

bidding process will not maximize the value of the Acquired Assets to be realized by the Selling

Debtor Entities' estates and (y) to seek Bankruptcy Court approval of the Agreement.  If the

Sellers do not receive any Qualified Bids other than the Agreement received from the Buyers or

should the Selling Debtor Entities terminate the bidding process or the Auction as set forth

above, the Selling Debtor Entities shall report the same to the Bankruptcy Court and shall

proceed with the Sale pursuant to the terms of the Agreement.

Sale Hearing

3.      The Court shall hold a Sale Hearing on May 21, 2009 at 10:00 a.m.

(prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New

York, 300 Quarropas Street, Courtroom 520, White Plains, NY 10601, at which time the Court

shall consider the remainder of the Motion not approved by this order (the "Sale Motion"), and

may approve the sale to the Buyers or the Successful Bidder, as the case may be, and confirm the

results of the Auction, if any.  The Sale Hearing or any portion thereof, such as with respect to

the proposed assumption and assignment of a particular executory contract, may be adjourned by

the Debtors from time to time without further notice to creditors or parties-in-interest other than

by announcement of the adjournment in open court or on the Court's calendar on the date

scheduled for the Sale Hearing or any adjourned date.

4.      Objections to the Sale Motion, if any, shall be filed and served no later

than 4:00 p.m. (prevailing Eastern time) on May 14, 2009 (the "Objection Deadline").  The

6

failure of any objecting person or entity to timely file and serve its objection by the Objection

Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the

Sale Motion, the Sale, or the Selling Debtor Entities' consummation and performance of the

Agreement (including the transfer of the Acquired Assets and the Assigned Contracts free and

clear of liens, claims, and encumbrances), with the exception of any objection to the conduct of

the Auction or the Selling Debtor Entities' selection of the Successful Bidder, which may be

made two business days following the end of the Auction or at the Sale Hearing, whichever is

earlier.

       5.     If a non-Debtor counterparty to any Assumed U.S. Contract fails to file

and serve an objection to the notice of assumption/assignment authorized in paragraph 10 of this

order, in accordance with the instructions in the notice of assumption/assignment, the Court may

authorize the assumption and assignment of the applicable Assumed U.S. Contract at the Sale

Hearing.

       6.     In accordance with this Court's prior orders in connection with

confirmation of the Debtors' Plan, a non-Debtor counterparty to an Assumed U.S. Contract shall

be entitled to recover only the cure amounts listed on the individualized schedule attached as

Exhibit 1 to the Buyer Assumption/Assignment Notice (defined below), except that any party

who preserved the right to object to cure amounts in accordance with the Debtors' Plan may

object to the cure amount asserted by the Debtors, which objection shall be heard at the Sale

Hearing unless adjourned in accordance with decretal paragraph 3 hereof.  Any counterparty who

did not preserve this objection right, or who did preserve such right but does not file an objection

to Buyer Assumption/Assignment Notice, shall be barred and enjoined from asserting at the Sale

Hearing or otherwise that any other amounts are owing.  In addition, should a non-Debtor

7

counterparty to an Assumed U.S. Contract assert that a postpetition default exists which must be cured pursuant to section 365, such counterparty must file an objection as set forth in paragraph 10(b) below.

### Bid Protections

7.      The Break-Up Fee is hereby approved.

8.      The Selling Debtor Entities' obligation to pay the Break-Up Fee pursuant to the terms of the Agreement shall survive termination of the Agreement and, until paid in accordance with the Agreement, shall constitute an administrative expense claim in favor of the Buyers.  The Selling Debtor Entities shall be authorized to pay the Break-Up Fee to the Buyers in accordance with the terms of the Agreement without further order of the Court. Notwithstanding any other language in this order, the Selling Debtor Entities and the non-Debtor Sellers shall be obligated to pay the Break-Up Fee only if the Buyers are not in material breach of the Agreement.

9.      To the extent payment of the Break-Up Fee is triggered, the Sellers shall allocate payment of the Break-Up Fee such that the Selling Debtor Entities shall not incur more than their proportionate share of such Break-Up Fee.

### Notice

10.      Notice of (i) the Motion, including the proposed Sale of the Acquired Assets to the Buyers, (ii) the Sale Hearing, and (iii) the proposed assumption and assignment of the Assumed U.S. Contracts to the Buyers pursuant to the Agreement or to a Successful Bidder shall be good, sufficient, and timely notice, and no other or further notice shall be required, if notice is given as follows:

8

(a)  <u>Notice Of Sale Hearing</u>.  Within two business days after entry of this order (the "Mailing Date"), the Debtors (or their agent) shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of this order by overnight mail, postage prepaid, upon (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) counsel for the agent under the Debtors' postpetition credit facility, (vi) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (vii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Acquired Assets, (viii) all United States federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (ix) all counter-parties to the Assigned Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice, (xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, and (xiv) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883), as amended from time to time (collectively, the "Case Management Orders")).

(b)  <u>Assumption/Assignment Notice For Buyers</u>.  At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on all non-Debtor counterparties to the Assumed U.S. Contracts a notice (the "Buyer Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 2</u>, identifying the Buyers as the parties which will be assigned all of the Selling Debtor Entities' right, title, and interest in the Assumed U.S. Contracts, subject to completion of the bidding process provided under the Bidding Procedures.  The non-Debtor counterparty to an Assumed U.S. Contract shall have ten days from the service of the Buyer Assumption/Assignment Notice to object to the proposed assumption and assignment to the Buyers, including an objection on account of a postpetition default, and must state in its objection, with specificity, the legal and factual basis of its objection.  If no objection is timely received, the non-Debtor counterparty to the Assumed U.S. Contract shall be deemed to have consented to the assumption and assignment of the Assumed U.S. Contract to the Buyers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(c)  <u>Assumption/Assignment Notice For A Qualified Bidder</u>.  To the extent that on the business day following the Bid Deadline, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 3</u>, to be sent to each non-Debtor party to an Assumed U.S. Contract identifying all Qualified Bidders.  Each non-Debtor counterparty to an Assumed U.S. Contract shall have until two days prior to the Sale Hearing to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection.  An objection to the assumption and assignment of an Assumed U.S. Contract to any Qualified Bidder shall be entertained only if such objection raises issues unique to a Qualified Bidder that could not have been brought earlier in response to the previously-served Buyer Assumption/Assignment Notice.  If no objection is timely received

(which objection raises issues unique to the Qualified Bidder), the non-Debtor party to the Assumed U.S. Contract shall be deemed to have consented to the assumption and assignment of the Assumed U.S. Contract to the Buyers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d)    Publication Notice.  Within five business days following entry of this order, or as soon as reasonably practicable thereafter, the Debtors shall cause notice substantially in the form of the notice attached hereto as Exhibit 4 to be published in the Wall Street Journal (U.S. and International Editions), the Financial Times, and China Automotive News.

11.    Notwithstanding rules 6004(h), 6006(d), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other Bankruptcy Rule or rule 62(a) of the Federal Rules of Civil Procedure, this order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this order.

12.    To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or in any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this order, the provisions of this order shall control.  The Debtors' obligations under this order and the portions of the Agreement pertaining to the Break-Up Fee shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon Debtors and the reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed plan or plans in the Debtors' cases.

13.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

Dated:    New York, New York
          _____, 2009


                              _____
                              UNITED STATES BANKRUPTCY JUDGE

Exhibit 1

# DELPHI CORPORATION
## BRAKES AND RIDE DYNAMICS BUSINESSES BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets primarily used in the Selling Debtor Entities' brakes business (the "Brakes Business") and ride dynamics business (the "Ride Dynamics Business," and together with the Brakes Business, the "Sale Businesses") of Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities").[1]  On March 30, 2009, the Sellers executed that certain Master Sale And Purchase Agreement (the "Agreement") with BeijingWest Industries Co., Ltd. ("Buyer Parent") and certain of its affiliates (together with Buyer Parent, the "Buyers").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On March 31, 2009, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed the Motion For Order Under 11 U.S.C. §§ 363, 365, 1123, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Debtors' Assets Comprising Debtors' Brakes And Ride Dynamics Businesses Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (the "Sale Motion").  On April [__] 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. §§ 363 And 1123 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Brakes And Ride Dynamics Businesses (the "Bidding Procedures Order ").  The Bidding Procedures Order set May 21, 2009 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement.  All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Bids, respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), and the ultimate selection of the Successful Bidder(s) (as defined herein).  The Debtors intend to consult with, among others, the

---

[1]    Under the Agreement, attached as Exhibit D to the Sale Motion, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Technologies, Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding Process.  In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Sale Businesses (the "Acquired Assets").

### "As Is, Where Is"

The sale of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Buyers, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

### Free Of Any And All Encumbrances

Except, with respect to the Buyers, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of all Encumbrances except Permitted Encumbrances (as such terms are defined in the Agreement), and such Encumbrances will attach to the net proceeds of the sale of such Acquired Assets.

### Participation Requirements

Any person who wishes to participate in the bidding process (a "Potential Bidder") must become a Qualified Bidder.  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Buyers, must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below, unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi in its sole discretion:

(a)    An executed confidentiality agreement in form and substance satisfactory to Delphi;

(b)    Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, including a portion of the Acquired Assets, current audited financial statements of the equity holders of the Potential Bidder, who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Sellers and their financial advisors; and

(c)      A preliminary (non-binding) proposal reflecting:  (i) the purchase price range, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing of the transaction, (iv) any anticipated regulatory approvals required to close the transaction, (v) the anticipated time frame and any anticipated impediments for obtaining such approvals, (vi) any additional conditions to closing that the qualified bidder may wish to impose, and (vii) the nature and extent of any additional due diligence that the qualified bidder may wish to conduct and the date by which such due diligence would be completed.

A Potential Bidder who satisfies the requirements above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale if selected as a Successful Bidder, and who Delphi determines in its sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a "Qualified Bidder."  Notwithstanding the foregoing, the Buyers will be deemed Qualified Bidders for purposes of the Bidding Process.  As promptly as practicable after a Potential Bidder delivers all of the materials required above, Delphi will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi will then promptly allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets and the Sale Businesses as described below.

### Due Diligence

Delphi will afford each Qualified Bidder due diligence access to the Acquired Assets and the Sale Businesses.  Due diligence access may include such management presentations as may be scheduled by Delphi, access to data rooms, on site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree.  Delphi will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence will not continue after the Bid Deadline.  Delphi may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither Delphi nor any of its Affiliates (nor any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets and the Sale Businesses to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

### Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steve Olsen, Mergers & Acquisitions, with copies to:  (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Allison K. Verderber Herriott, (ii) Delphi's in-house counsel, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Attn: Deputy General Counsel – Transactional & Restructuring, (iii) Delphi's financial advisor, W.Y. Campbell & Company, One Woodward

4

Avenue, 26th Floor, Detroit, Michigan 48226, Attention: Clifton Roesler, (iv) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attention:  Mark A. Broude, and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on **May 11, 2009** (the "Bid Deadline").  Delphi may extend the Bid Deadline once or successively, but is not obligated to do so.  If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension.  As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the official committee of equity security holders (the "Equity Committee").

## Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)      A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Acquired Assets.

(b)      An executed copy of the Agreement, together with all schedules and exhibits to this Agreement marked (a "Marked Agreement") to show those amendments and modifications to such Agreement and schedules that the Qualified Bidder proposes, including the Preliminary Purchase Price (as defined in the Agreement).

(c)      A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as the Sellers may determine) in an amount equal to $20 million.

(d)      Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that is satisfactory to the Sellers and their advisors.

## Qualified Bids

A bid will be considered only if the bid:

(a)      Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(b)      Proposes a transaction on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that Delphi determines, in its sole discretion, are similar to and are not materially more burdensome or conditional than those contained in the Agreement and that has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Preliminary Purchase Price, plus the amount of the Break-Up Fee, plus the aggregate amount of the China Advance Payment, plus: (i) in the case of the initial Qualified Bid,

$1,000,000, and (ii) in the case of any subsequent Qualified Bids, $500,000 over the immediately preceding highest Qualified Bid.

(c)        Is not conditioned upon (i) any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment and (ii) such bid being deemed the Successful Bid by the Sellers.

(d)        Includes an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

(e)        Include a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required Governmental Approvals) within not more than 15 days after entry of the Sale Approval Order, or in the case of any governmental approvals, 60 days after entry of such order.

(f)        Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, the Sellers will have the right, in their sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified in subparagraphs (a)-(f) of this "Qualified Bids" section, and may deem such bids to be Qualified Bids, including bids for a portion of the Acquired Assets.  Notwithstanding the foregoing, the Buyer Parent will be deemed Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Buyers is referred to herein as a "Subsequent Bid."

If Delphi does not receive any Qualified Bids other than the Agreement received from the Buyer Parent, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

### Bid Protection

Recognizing the Buyer Parent's expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Buyer Parent. Specifically, the Selling Debtor Entities have determined that the Agreement furthers the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed.  As a result, the Selling Debtor Entities have agreed that if Delphi does not close with the Buyer Parent

because the Sellers consummate an Alternative Transaction and the Buyer Parent is not in breach of the Agreement or the Bidding Procedures, Delphi will, in certain circumstances, pay to the Buyer Parent a Break-Up Fee. The payment of the Break-Up Fee will be governed by the provisions of the Agreement and the Bidding Procedures Order.


### Auction

If the Delphi receives one or more Qualified Bids in addition to the Agreement, Delphi will conduct an auction (the "Auction") of the Acquired Assets and the Sale Businesses upon notice to all Qualified Bidders who have submitted Qualified Bids at **11:00 a.m.** (prevailing Eastern time) on **May 15, 2009** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or Four Times Square, New York, New York 10036 or such later time or other place as Delphi will notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing), in accordance with the following procedures:

(a)    Only Delphi, the Buyer Parent, any representative of the Creditors' Committee and the Equity Committee, any representative of Delphi's secured lenders under their postpetition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Buyer Parent and other Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b)    At least two Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least one Business Day prior to the Auction, Delphi will provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction. Notwithstanding such determination, Delphi reserves the right, in their sole discretion, to determine which bid, or subsequent bid, is the Successful Bid, following the conclusion of the Auction based upon a number of factors and other considerations.

(c)    All Qualified Bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d)    Delphi may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids), provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, General Order M-331 issued by the United States Bankruptcy Court for the Southern District of New York, or any order of the Bankruptcy Court entered in connection herewith.

(e)    Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least $500,000 higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each Qualified Bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Buyers), Delphi may give effect to any Break-Up Fee that may be payable to the Buyer Parent under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

## Selection Of Successful Bid

At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Business received at the Auction (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Sellers will sell the Acquired Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  If, after an Auction in which the Buyer Parent:  (i) has bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) is the Successful Bidder, it will, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to:  (a) the amount of the Successful Bid less (b) the Break-Up Fee.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Court for approval does not constitute the Sellers' acceptance of the bid.  Delphi will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

## The Sale Hearing

The Sale Hearing will be held before the Honorable Judge Robert Drain on May 21, 2009, at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 520, White Plains, NY 10601, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court approval, as necessary, without further notice other than an announcement of the adjourned date at the Sale Hearing.  If Delphi does not receive any Qualified Bids (other than the Qualified Bid of the Buyer Parent), the Selling Debtor Entities will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Buyer Parent following entry of the Sale Order.  If Delphi does receive additional Qualified Bids, then, at the Sale

Hearing, the Selling Debtor Entities will seek approval of the Successful Bid(s) as well as the second highest or best Qualified Bid(s) (the "Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder(s) or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Delphi will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

## Return Of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders) until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s). If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of Delphi.  On the Return Date, Delphi will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

## Reservations Of Rights

The Sellers, after consultation with the agents for their secured lenders and the Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may at any time reject any bid (other than the Buyers Parent's initial bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates, and their stakeholders as determined by the Delphi in its sole discretion.

9

Exhibit 2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
　　　In re                                    :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
　　　　　　　　　　　　Debtor.                :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO BUYERS IN CONNECTION
WITH SALE OF BRAKES AND RIDE DYNAMICS BUSINESSES

PLEASE TAKE NOTICE THAT:

　　　　　　1.　　　　Pursuant to the Order Under 11 U.S.C. §§ 363 And 1123 And Fed. R.

Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid

Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale

Hearing Date In Connection With Sale Of Brakes And Ride Dynamics Businesses, entered on

**[April __, 2009]** (the "Bidding Procedures Order "), Delphi Corporation ("Delphi") and

certain of its affiliates, including certain affiliated chapter 11 debtors as set forth in the

Agreement (the "Selling Debtor Entities"),[1] have entered into a Master Sale And Purchase

Agreement (the "Agreement") with Beijing West Heavy Industries Co., Ltd. and certain of its

affiliates (the "Buyers") on March 30, 2009 for the purchase of substantially all of the Selling

Debtor Entities' assets (the "Acquired Assets") primarily used in the brakes and ride

dynamics businesses of the Selling Debtor Entities (the "Sale Businesses").

       2.      Pursuant to the terms of the Agreement and subject to completion of a

competitive bidding process described in the Bidding Procedures Order and the attachments

thereto, the Selling Debtor Entities will seek to assume and assign the prepetition contracts

(the "Assumed U.S. Contracts") listed on Exhibit 1 hereto to the Buyers at the hearing to be

held at 10:00 a.m. (prevailing Eastern time) on May 21, 2009 (the "Sale Hearing") before the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, 300 Quarropas Street, Courtroom 520, White Plains,

NY 10601.

       3.      In accordance with this Court's prior orders in connection with

confirmation of the Debtors' Plan, unless otherwise noted on Exhibit 1, non-Debtor

counterparties to Assumed U.S. Contracts will be entitled to recover only the Cure Amounts[2]

---

[1]    Under the Agreement, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Technologies, Inc.  For the purpose of convenience, references to the "Sellers" herein (including in all exhibits) means, as the context requires, (i) the Selling Debtors Entities to the extent such references implicates assets of the Selling Debtor Entities or (ii) non-debtor affiliates to the extent such reference implicates assets of the non-debtor affiliates.  Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  For convenience, use of the term "Selling Debtor Entities" means, as the context requires, specific debtor entity undertaking the transaction referenced to the extent such transaction affects the assets of such entity.

[2]    "Cure Amounts" are those amounts that the Selling Debtor Entities believe are necessary to assume contracts or leases under section 365 of the Bankruptcy Code.

as listed on <u>Exhibit 1</u> hereto and will be barred and enjoined from asserting at the Sale

Hearing or otherwise that any other amounts are owing on account of any prepetition default.

Cure amounts, if any, will only be paid to the non-Debtor counterparty to such Assumed U.S.

Contract.  Unless otherwise noted in <u>Exhibit 1</u>, a non-Debtor counterparty to an Assumed

U.S. Contract has the right to object only to the adequate assurance of future performance by

the Buyers.  In addition, should a non-Debtor counterparty to an Assumed U.S. Contract

assert that a postpetition default exists which must be cured pursuant to section 365 of the

Bankruptcy Code, such counterparty must file an objection as set forth in paragraph 4 below.

        4.      Objections, if any, to the assumption and assignment of an Assumed

U.S. Contract, including objections asserting the existence of a postpetition default that must

be cured under section 365 of the Bankruptcy Code, must (a) be in writing, (b) state with

specificity the reasons for such objection, (c) conform to the Federal Rules of Bankruptcy

Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case

Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883),

and the Thirteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered December 4, 2008

(Docket No. 14534), (d) be filed with the Bankruptcy Court in accordance with General

Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system

must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (e) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court

for the Southern District of New York, 300 Quarropas Street, Room 530, White Plains, NY

10601, and (f) be served in hard-copy form so that it is actually received by May 11, 2009 by

(i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal

Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy

General Counsel, Transactional & Restructuring), (iii) counsel to the Debtors, Skadden, Arps,

Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606

(Att'n: Ron E. Meisler and Allison K. Verderber Herriott), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official

committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York,

New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vii) counsel for the

official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson LLP,

One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (viii) counsel

for the Buyers, Honigman, Miller, Schwartz & Cohn LLP, 444 West Michigan Avenue,

Kalamazoo, Michigan 49007 (Att'n: Phillip D. Torrence) and Vinson & Elkins LLP, 20/F,

Beijing Silver Tower, No. 2 Dong San Huan Bei Lu, Chaoyang District, Beijing 100027,

China (Att'n: Xiao Yong), and (ix) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:

Brian Masumoto).

   5.  If an objection to the assumption and assignment of a Assumed U.S.

Contract is timely filed and received, a hearing with respect to the objection will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 520,

White Plains, NY 10601, at the Sale Hearing or such other date and time as the Court may

schedule.  If no objection is timely received, each non-Debtor party to an Assumed U.S.

Contract will be deemed to have consented to the assumption and assignment of the Assumed

U.S. Contract to the Buyers and will be forever barred from asserting any other claims,

including, but not limited to, the propriety or effectiveness of the assumption and assignment

of the Assumed U.S. Contract, against the Selling Debtor Entities or the Buyers, or the

property of either of them.

6.      Pursuant to 11 U.S.C. § 365, the Selling Debtor Entities assert there is

adequate assurance of future performance that the Cure Amount set forth on Exhibit 1 hereto

will be paid in accordance with the terms of the Sale Approval Order.  Further, the Selling

Debtor Entities assert that there is adequate assurance of the Buyers' future performance

under the executory contract or unexpired lease to be assumed and assigned because of the

significant resources of the Buyers.

7.      In the event that the Selling Debtor Entities emerge from these chapter 11

cases prior to the closing of the Sale, then the Assumed U.S. Contracts listed on Exhibit 1 would

not be assumed under the Sale Approval Order.  Instead, the Assumed U.S. Contracts listed on

Exhibit 1 would be assumed pursuant to the Debtors' plan of reorganization (the "Plan"), and any

Cure Amounts would be paid in accordance with the confirmed Plan, as it may be modified.

Even if the Assumed U.S. Contracts listed on Exhibit 1 are assumed pursuant to the Debtors'

Plan, the Selling Debtor Entities would assign such contracts to the Buyers under the terms of the

order approving the sale of the Sale Businesses.

8.      Prior to the Closing Date, the Selling Debtor Entities may revise their

decision with respect to the assumption and/or assignment of any Assumed U.S. Contract and

provide a new notice amending the information provided in this notice.

Dated:  New York, New York
_____, 2009

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _____
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: _____
Kayalyn A. Marafioti
Thomas J. Matz
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, <u>et al.</u>,
Debtors and Debtors-in-Possession

Exhibit 3

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti
Thomas J. Matz

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :

      In re                        :    Chapter 11
                                      :

DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                      :

                  Debtor.    :    (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF ASSUMPTION AND ASSIGNMENT OF EXECUTORY
CONTRACT OR UNEXPIRED LEASE TO QUALIFIED BIDDERS
WITH SALE OF BRAKES AND RIDE DYNAMICS BUSINESSES

PLEASE TAKE NOTICE THAT:

          1.        Pursuant to the Order Under 11 U.S.C. §§ 363 And 1123 And Fed. R.

Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid

Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale

Hearing Date In Connection With Sale Of Brakes And Ride Dynamics Businesses, entered on

**[April __, 2009]** (the "Bidding Procedures Order"), Delphi Corporation ("Delphi") and

certain of its affiliates, including certain affiliated chapter 11 debtors as set forth in the

Agreement (the "Selling Debtor Entities"),[1] entered into a Master Sale And Purchase

Agreement (the "Agreement") with Beijing West Heavy Industries Co., Ltd. and certain of its

affiliates (the "Buyers") on March 30, 2009, for the purchase of substantially all of the Selling

Debtor Entities' assets (the "Acquired Assets") primarily used in the brakes and ride

dynamics businesses of the Selling Debtor Entities (the "Sale Businesses").

        2.      Pursuant to the Bidding Procedures set forth in the Bidding Procedures

Order and the attachments thereto, the following parties, in addition to the Buyers, have

submitted Qualified Bids for the Acquired Assets and will participate in an Auction to be

held on May 15, 2009 at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333

West Wacker Drive, Chicago, Illinois 60606 or Four Times Square, New York, New York

10036, or such later time or other place as the Selling Debtor Entities notify all Qualified

Bidders who have submitted Qualified Bids (but in no event later than the second Business

Day prior to the Sale Hearing).

| Qualified Bidders |
|---|
| |
| |

        3.      Pursuant to the terms of the Agreement (or any asset sale and purchase

agreement that the Selling Debtor Entities may enter into with the Successful Bidder), the

Selling Debtor Entities will seek to assume and assign the prepetition contracts (the

---

[1]    Under the Agreement, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Technologies, Inc.  For the purpose of convenience, references to the "Sellers" herein (including in all exhibits) means, as the context requires, (i) the Selling Debtors Entities to the extent such references implicates assets of the Selling Debtor Entities or (ii) non-debtor affiliates to the extent such reference implicates assets of the non-debtor affiliates.  Certain assets will be sold under the Agreement by non-debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  For convenience, use of the term "Selling Debtor Entities" means, as the context requires, the specific debtor entity undertaking the transaction referenced to the extent such transaction affects the assets of such entity.

"Assumed U.S. Contracts") listed on Exhibit 1 hereto to the Buyers or the Successful Bidder,

as case may be, subject to approval at the hearing to be held at 10:00 a.m. (prevailing Eastern

time) on May 21, 2009 (the "Sale Hearing") before the Honorable Robert D. Drain, United

States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New

York, 300 Quarropas Street, Courtroom 520, White Plains, NY 10601.

4.    In accordance with this Court's prior orders in connection with

confirmation of the Debtors' Plan, unless otherwise noted on Exhibit 1, non-Debtor

counterparties to Assumed U.S. Contracts will be entitled to recover only the Cure Amounts[2]

as listed on Exhibit 1 hereto and will be barred and enjoined from asserting at the Sale

Hearing or otherwise that any other amounts are owing on account of any prepetition default.

Cure amounts, if any, will only be paid to the non-Debtor counterparty to such Assumed U.S.

Contract.  Unless otherwise noted in Exhibit 1, a non-Debtor counterparty to an Assumed

U.S. Contract has the right to object only to the adequate assurance of future performance by

the Buyers.  In addition, should a non-Debtor counterparty to an Assumed U.S. Contract

assert that a postpetition default exists which must be cured pursuant to section 365, such

counterparty must file an objection as set forth in paragraph 6 below.

5.    The Selling Debtor Entities assert that pursuant to 11 U.S.C. § 365,

there is adequate assurance that the Cure Amount set forth on Exhibit 1 hereto will be paid in

accordance with the terms of the Sale Approval Order.  Further, the Selling Debtor Entities

assert that there is adequate assurance of the Qualified Bidders' future performance under the

executory contract or unexpired lease to be assumed and assigned because of the significant

resources of the Qualified Bidders.

6.    Objections, if any, to the assumption and assignment of an Assumed

U.S. Contract to a Qualified Bidder, who may ultimately become the Successful Bidder, must

---

[2]    "Cure Amounts" are those amounts that the Selling Debtor Entities believe are necessary to assume
contracts or leases under section 365 of the Bankruptcy Code.

(a) be in writing, (b) state with specificity the reasons for such objection, (c) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Thirteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered December 4, 2008 (Docket No. 14534), (d) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (e) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 530, White Plains, NY 10601, and (f) be served in hard-copy form so that they are actually received by May 19, 2009 by (i) Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Legal Staff), (ii) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: Deputy General Counsel, Transactional & Restructuring), (iii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: Ron E. Meisler and Allison K. Verderber Herriott), (iv) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (v) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) counsel for

the official committee of equity security holders, Fried, Frank, Harris, Shriver & Jacobson

LLP, One New York Plaza, New York, New York 10004 (Att'n: Bonnie Steingart), (vii)

counsel for the Buyers, Honigman, Miller, Schwartz & Cohn LLP, 444 West Michigan

Avenue, Kalamazoo, Michigan 49007 (Att'n: Phillip D. Torrence) and Vinson & Elkins LLP,

20/F, Beijing Silver Tower, No. 2 Dong San Huan Bei Lu, Chaoyang District, Beijing

100027, China (Att'n: Xiao Yong), and (viii) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004

(Att'n:  Brian Masumoto).

       7.     An objection to the assumption and assignment of an Assumed U.S.

Contract to any Qualified Bidder will be entertained only if such objection raises issues

unique to a Qualified Bidder that could not have been brought earlier in response to the

previously-served notice of assumption and assignment to the Buyers.

       8.     If an objection to the assumption and assignment of an Assumed U.S.

Contract to any Qualified Bidder set forth above is timely filed and received (and raises

issues unique to the Qualified Bidder), a hearing with respect to the objection will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge, United States

Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Room 520,

White Plains, NY 10601, at the Sale Hearing or such other date and time as the Court may

schedule.  If no objection is timely filed and received, each non-Debtor counterparty to an

Assumed U.S. Contract will be deemed to have consented to the assumption and assignment

of the Assumed U.S. Contract to the Qualified Bidder that is selected as the Successful

Bidder and will be forever barred from asserting any other claims as to such Assumed U.S.

Contract, including, but not limited to, the propriety or effectiveness of the assumption and

assignment of the Assumed U.S. Contract, against the Selling Debtor Entities or the

Successful Bidder, or the property of either of them.

9.       In the event that the Selling Debtor Entities emerge from these chapter 11 cases prior to the closing of the Sale, then the Assumed U.S. Contracts listed on <u>Exhibit 1</u> would not be assumed under the Sale Approval Order.  Instead, the Assumed U.S. Contracts listed on <u>Exhibit 1</u> would be assumed pursuant to the Debtors' plan of reorganization (the "Plan"), and any Cure Amounts would be paid in accordance with the confirmed Plan, as it may be modified.  Even if the Assumed U.S. Contracts listed on <u>Exhibit 1</u> are assumed pursuant to the Debtors' Plan, the Selling Debtor Entities would assign such contracts to the Buyers under the terms of the order approving the sale of the Sale Businesses.

10.       Prior to the Closing Date, the Selling Debtor Entities may revise their decision with respect to the assumption and/or assignment of any Assumed U.S. Contract and provide a new notice amending the information provided in this notice.

Dated:  New York, New York
            _____, 2009

SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP

By: _____
        John Wm. Butler, Jr.
        John K. Lyons
        Ron E. Meisler
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois  60606
    (312) 407-0700

                - and -

By: _____
        Kayalyn A. Marafioti
        Thomas J. Matz
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    Attorneys for Delphi Corporation, <u>et al.</u>,
        Debtors and Debtors-in-Possession

7

Exhibit 4

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                              :
     In re                                  :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                       Debtor.              :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

<u>NOTICE OF SALE OF CERTAIN ASSETS AT AUCTION</u>

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the Order Under 11 U.S.C. §§ 363 And 1123 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Brakes And Ride Dynamics Businesses, entered on **[April __, 2009]** (the "Bidding Procedures Order"), Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities"), entered into a Master Sale And Purchase Agreement (the "Agreement") with Beijing West Heavy Industries Co., Ltd. and certain of its affiliates (the "Buyers") on March 30, 2009, for the purchase of substantially all of the Selling Debtor Entities' assets (the "Acquired Assets") primarily used in the brakes and ride dynamics businesses of the Selling Debtor Entities (the "Sale Businesses") free and clear of liens, claims, encumbrances, and interests.  Capitalized terms used but not otherwise defined in this notice have the meanings ascribed to them in the Sale Motion.

        2.      All interested parties are invited to make an offer to purchase the Acquired Assets in accordance with the terms and conditions approved by the Bankruptcy Court (the "Bidding Procedures") by **11:00 a.m.** (prevailing Eastern time) on **May 11, 2009**.  Pursuant to the Bidding Procedures, the Sellers may conduct an auction for the Acquired Assets (the "Auction") beginning at **10:00 a.m.** (prevailing Eastern time) on **May 15, 2009** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or Four Times Square New York, New York 10036.

        3.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.  A copy of the Bidding Procedures is available by contacting the undersigned counsel to the Selling Debtor Entities or by accessing Delphi's Legal Information Website, www.delphidocket.com.

        4.      A hearing to approve the Sale of the Acquired Assets to the highest and best bidder will be held on **May 21, 2009** at 10:00 a.m. (prevailing Eastern time) at the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 520, White Plains, NY 10601, before the Honorable Robert D. Drain, United States Bankruptcy Judge. The hearing on the Sale may be adjourned without notice other than an adjournment in open court.

5.      Objections, if any, to the proposed Sale must be filed and served in accordance with the Bidding Procedures Order and **actually received** no later than **4:00 p.m.** (prevailing Eastern time) on **May 14, 2009**.

This notice is qualified in its entirety by the Bidding Procedures Order.

Dated: _____, 2009
      New York, New York

BY ORDER OF THE COURT

John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

Kayalyn A. Marafioti
Thomas J. Matz
SKADDEN, ARPS, SLATE, MEAGHER
    & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession