Richard A. Devers
705 S Linwood Beach Rd
Linwood, MI   48634
(989) 697-1037

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                                      )
    In re                              )    Chapter 11
                                                      )    Case No. 05-44481 (RDD)
    DELPHI CORPORATION, et al.,    )    (Jointly Administered)
                                                      )    Hon. Robert D. Drain
                                                      )
---------------------------------------------------------x

DECLARATION OF RICHARD A. DEVERS IN SUPPORT
OF DELPHI SALARIED RETIREES ASSOCIATION REPLY IN SUPPORT OF
EXPEDITED MOTION FOR STAY PENDING APPEAL
(DOCKET # 16468)

I, Richard A. Devers, declare as follows:

1. I submit this declaration in support of granting a stay of the Court's Order declining to appoint an official committee pursuant to section 1111(d) of the Bankruptcy Code, 11 U.S.C. § 1114(d), and allowing the Debtors to terminate all subsidies for amendable retiree benefit plans and programs without complying with Section 1114(e).

2. Without proper representation, it is impossible for an individual retiree to keep up with the proceedings of this court. The document filed as Docket # 11182, shows then number of attorneys and law clerks and paraprofessionals working on this case from only one of several law firms representing the Debtor. The following is "cut and pasted" from that document:

TIME SUMMARY TO SIXTH INTERIM FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
JUNE 1, 2007 – SEPTEMBER 30, 2007

| Name | Year Of Admission | Rate[2] | Hours | Amount |
|---|---|---|---|---|
| **PARTNERS** | | | | |
| Butler, Jr., John (Jack) Wm. | 1980 | $801 | 1,187.5 | $950,661 |
| Cochran, Eric L. | 1987 | $845 | 750.0 | $633,755 |
| Hogan, III, Albert L. | 1997 | $668 | 807.6 | $539,780 |
| Marafioti, Kayalyn A. | 1980 | $830 | 639.2 | $530,536 |
| Panagakis, George N. | 1990 | $766 | 670.4 | $513,379 |
| Lyons, John K. | 1989 | $706 | 670.6 | $473,685 |
| Meisler, Ron E. | 1999 | $606 | 776.2 | $470,705 |
| Furfaro, John P. | 1981 | $810 | 272.6 | $220,806 |
| Hiestand, N. Lynn | 1981 | $816 | 190.8 | $155,620 |
| Berlin, Kenneth | 1974 | $810 | 131.2 | $106,272 |
| Berke, Jay S. | 1972 | $810 | 107.1 | $86,751 |
| Gross, Cliff | 1989 | $830 | 87.0 | $72,210 |
| Leff, Neil M. | 1981 | $830 | 70.7 | $58,681 |
| Frishman, Lawrence D. | 1989 | $810 | 24.6 | $19,926 |
| Saggese, Nick P. | 1980 | $875 | 14.1 | $12,338 |
| Brewster, Jody J. | 1983 | $775 | 13.8 | $10,695 |
| Noel, Gregg A. | 1982 | $845 | 11.0 | $9,296 |
| **Partner Total** | | **$757** | **6,424.4** | **$4,865,096** |
| **COUNSEL** | | | | |
| Matz, Thomas J. | 1976 | $625 | 779.1 | $486,949 |
| Ramlo, Kurt | 1993 | $620 | 692.4 | $429,633 |
| MacDonald, F. Neil | 1997 | $570 | 382.7 | $218,130 |
| Garner, Lee P. | 1995 | $609 | 201.6 | $122,875 |
| Gasaway, Michelle | 1998 | $625 | 177.5 | $110,940 |
| Amodeo, John A. | 1977 | $625 | 106.6 | $66,626 |
| Sensenbrenner, Eric B. | 1996 | $625 | 81.9 | $51,189 |
| Ko, Jonathan B. | 1998 | $595 | 19.3 | $11,484 |
| Schneider, David A. | 1986 | $595 | 12.3 | $7,319 |
| Daniels, Steven J. | 1996 | $595 | 11.5 | $6,843 |
| **Counsel Total** | | **$613** | **2,464.9** | **$1,511,988** |

| Name | Year Of Admission | Rate[2] | Hours | Amount |
|---|---|---|---|---|
| **ASSOCIATES** | | | | |
| Ganitsky, Daniel I. | 2001 | $585 | 868.1 | $507,841 |
| Hardin, Adlai S. | 1998 | $585 | 857.2 | $501,467 |
| Wharton, Joseph N. | 1998 | $528 | 928.1 | $490,030 |
| Stuart, Nathan L. | 2002 | $480 | 1,019.2 | $488,817 |
| Fern, Brian M. | 1996 | $556 | 824.5 | $458,105 |
| Connors, Christopher P. | 1999 | $574 | 699.8 | $401,487 |
| Ogunsanya, Gregory O. | 2004 | $495 | 738.0 | $365,311 |
| Grant, T. Kellan | 2000 | $467 | 720.5 | $336,144 |
| Campanario, Nick D. | 2002 | $523 | 633.7 | $331,178 |
| Diaz, Lisa B. | 2006 | $360 | 884.6 | $318,280 |
| Hill, Laverne F. | 2005 | $388 | 806.5 | $312,722 |
| Houston, Brent M. | 2003 | $435 | 697.2 | $303,287 |
| Perl, Michael W. | 2004 | $427 | 704.5 | $300,611 |
| Howe, Eric J. | 2005 | $380 | 742.2 | $282,283 |
| Samole, Rena M. | 2000 | $562 | 499.8 | $280,898 |
| Herriott, Allison V. | 2004 | $435 | 615.4 | $267,707 |
| Gartner, Matthew | 2006 | $353 | 749.3 | $264,530 |
| Halper, Adam | 2005 | $390 | 671.7 | $261,963 |
| Platt, Sarah J. | 2006 | $353 | 687.7 | $242,697 |
| Kohut, Ronald D. | 2004 | $470 | 502.9 | $236,363 |
| Kaloudis, Denise | 2003 | $495 | 464.3 | $229,830 |
| Van Gelder, Amy | 2003 | $452 | 432.4 | $195,498 |
| Kahn, Melissa T. | 2003 | $470 | 408.7 | $192,089 |
| Bolton, Ian S. | 2005 | $379 | 498.4 | $188,742 |
| Suber, Karen M. | 2007 | $355 | 388.2 | $137,815 |
| Guzzardo, John | 2004 | $435 | 272.9 | $118,715 |
| Feinberg, Aaron S. | 2002 | $535 | 195.8 | $104,754 |
| Park, Young M. | 2001 | $542 | 133.5 | $72,349 |
| De Elizalde, Dolores | 2003 | $495 | 126.0 | $62,370 |
| Arkuss, Brett | 2007 | $355 | 165.8 | $58,860 |
| Ketchens, Jason P. | 2000 | $513 | 56.1 | $28,788 |
| Pilkington, Christian | Foreign (1999) | $585 | 48.6 | $28,432 |
| Garcia, Kara R. | 2003 | $495 | 56.7 | $28,067 |
| Boden Adams, Julie | 2005 | $435 | 54.3 | $23,621 |
| Louko, Tero | 2000 | $585 | 25.0 | $14,625 |
| Duncomb, Brandon M.* | 2007 | $315 | 45.8 | $14,427 |
| Jjingo, M. Janine | 2006 | $390 | 34.5 | $13,455 |
| Schockett, Paul | 2006 | $390 | 26.6 | $10,374 |
| Belin, Rita Sinkfield | 1996 | $585 | 17.7 | $10,355 |
| Horstmann, Britta | 2005 | $390 | 23.4 | $9,126 |
| Tullson, Carl T.* | 2007 | $315 | 26.9 | $8,474 |
| Phillips, Karen E. | 2001 | $495 | 13.8 | $6,831 |
| Malone, Elizabeth A. | 2002 | $495 | 12.4 | $6,138 |
| **Associate Total** | | **$463** | **18,378.7** | **$8,515,456** |

| Name | Year Of Admission | Rate[2] | Hours | Amount |
|---|---|---|---|---|
| **PARAPROFESSIONALS** | | | | |
| Demma, Jeffrey | N/A | $250 | 579.7 | $144,925 |
| Zsoldos, Andrew F. | N/A | $190 | 580.2 | $110,238 |
| Klimek, Marsha V. | N/A | $250 | 262.4 | $65,600 |
| Chavali, Aruna | N/A | $160 | 387.2 | $61,952 |
| Shrago, Rebecca | N/A | $160 | 204.2 | $32,672 |
| Worscheck, Toby M. | N/A | $80 | 235.3 | $18,824 |
| Rivera, Maira | N/A | $80 | 153.2 | $12,256 |
| Gilchrist, Julie M. | N/A | $250 | 29.3 | $7,325 |
| Roman, Joseph J. | N/A | $80 | 72.0 | $5,760 |
| Kim, Anne S. | N/A | $160 | 31.1 | $4,976 |
| Donnelly, Neal P. | N/A | $225 | 21.4 | $4,816 |
| Nowicki, John A. | N/A | $250 | 18.1 | $4,525 |
| Robinson, Susan J. | N/A | $190 | 23.6 | $4,484 |
| Bower, Julie | N/A | $160 | 24.4 | $3,904 |
| Woodfield, Joseph | N/A | $160 | 24.3 | $3,888 |
| Angelica, Christopher L. | N/A | $160 | 23.5 | $3,760 |
| Seacor, Kirsten L. | N/A | $190 | 13.6 | $2,584 |
| Zylich, A. Kaitlin | N/A | $160 | 13.5 | $2,160 |
| **Paraprofessional Total** | | $183 | 2,697.0 | $494,649 |
| **TOTAL ALL PROFESSIONALS** | | | 29,965.0 | $15,387,189 |

This summary excludes voluntary fee reductions of $1,684,077, of which $1,626,931 was reduced on the monthly statements and $57,146[3] is an additional accommodation made to this Interim Application.

It is difficult to understand that Judge Drain and the Debtors really believe that the retirees do not need any representation in this matter.

3. The retirees have been at a time disadvantage right from the onset of this issue of Health Care and Life Insurance termination. The retirees were notified by a FedEx letter on February 5, 2009 that the Motion to terminate benefits had been filed by the Debtors on February 4, 2009. The Objection Deadline for this motion was set as February 17, 2009 and the Hearing Date was set as February 24, 2009. This was not adequate notice for the retirees to collect data and documents and prepare a proper Objection. Many objections were filed, but they objections were hurried due to time constraints.

4. The Debtors, on the other hand, had all the time they wanted or needed, as they were in control of the clock and they gave themselves a generous head start. In Mr. Miller's Declaration, Docket # 16421, he stated  (item 24 in Mr. Miller's Declaration):

> 24. I and other members of the Delphi Strategy Board discussed the proposed termination of salaried OPEB at several meetings and received a detailed presentation regarding cost savings to be realized from terminating Salaried OPEB and the impact of such termination on retirees. After due consideration, the Delphi Strategy Board approved the termination of Salaried OPEB on February 3, 2009. Although a formal resolution of the Board of Directors was not required to terminate Salaried OPEB, the Board of Directors also received the presentation and was fully apprised. At a meeting of the Board of Directors on February 3, 2009, the Board unanimously concurred with the decision of the Delphi Strategy Board to terminate Salaried OPEB.

You can see that the Debtors had adequate time. They discussed the proposed termination of benefits at "several" meetings and received a detailed "presentation" (no mention of who prepared the presentation or how long they had to do it). Then the Delphi Strategy Board and the Board of Directors approved of the decision to pursue the termination of benefits on February 3, 2009. It is obvious that much time and thought went into the Debtor's decision prior to February 3. The fact that the Motion was ready to file on February 4 and that the FedEx material was printed and packaged on or before February 4 for delivery on February 5, indicates that the decision had been made some time before February 3 and that the February 3 "decision and approval" was merely a formal confirmation of the prior decision. In this court of equity, does it not seem equitable that the retiree group should have adequate time and resources to prepare and present their side of the case? The Court should grant the 90 day stay that was requested by the retiree group.

5. In the recent past, the Debtor has acknowledged that employees and retirees require adequate time to prepare for changes in benefits. In March 2005, Delphi prepared a booklet titled "Changes in 2007 Post Retirement Health Care Coverage U.S. Salaried Health Care Program." This booklet was distributed to employees and retirees with a letter of transmittal dated March7, 2005. The debtor recognized the need for timely notification and the need for time to prepare for these changes. Employees and retirees were given more than 21 months notice for those changes that were to become effective January 1, 2007. In addition to the booklet and letter of transmittal, the Debtor prepared a sheet of Questions and Answers to go along with the distribution and discussion of the booklet. One of the Questions was "why do some retirees get a $20,000 Health Savings Account and others get a $10,000 Health Savings Account?" The answer was that Delphi recognized that those people who were already retired had less time to prepare for this change in benefits than younger employees and, therefore, needed the larger account to help them through the change. Why does the Debtor now think that the retirees do not need or deserve adequate time? The retirees DO NEED adequate time and the Court should grant the 90 day stay that was requested by the retiree group.

6. Here is a timetable of the proposed termination of benefits so far:

Feb 4, 2009    Debtor filed the Motion To Terminate Benefits

Feb 5, 2009    FedEx delivered notice to employees and retirees – the FedEx notices were not forwarded to retirees that were not at their home address (i.e., snowbirds).

Feb 23, 2009   Debtor (through their law firm Skadden, et.al.) filed the "DEBTORS' OMNIBUS REPLY IN SUPPORT OF SALARIED OPED TERMINATION MOTION AND OBJECTION TO MOTIONS TO APPOINT OFFICIAL COMMETTEE OF RETIRED EMPLOYEES."   The hearing was scheduled for the next day;  this left no time for any response.  Their "OMNIBUS" was hardly "omnibus"  it did not respond to all objections that had been filed and most of their responses to objections were not supported by fact.  I have many comments about the "OMNIBUS REPLY" but that is not the subject of this Declaration, so I will not present them now.

Feb 24, 2009   The Motion was heard by the court.

c.Feb 28, 2009  (postmarked 02/27/2009)  My wife, the owner of my life insurance, received two identical but confusing documents from the National Benefit Center regarding Life Insurance continuation.

c.Feb 28, 2009    I received a letter dated February 24, 2009 and postmarked 02/26/2009 from the National Benefit Center, Delphi Benefits.  This letter said that Delphi will no longer provide Corporation contributions toward health care coverages in retirement for Delphi Salaried Retirees.  It also included election forms for retirees to select continuing health care benefits at their own expense.  The letter also stated that "For employees who retired from Delphi Corporation on or after October 1, 2007, you have the ability to elect COBRA Continuation Coverage and a COBRA Coverage election form has been included with this letter."   I am one of the retirees who is eligible for the COBRA Coverage, but there was no COBRA Coverage election form in my package.    This package also included a mailing address for the retirees to send their election form and a FAX number that could be used instead of mail.

c.March 2, 2009   I received a letter dated February 26, 2009 and postmarked 02/27/2009 from DELPHI.  This letter referenced the election package that had been sent.  It also notified retirees about the limited Retirees Committee and the March 1, 2009 hearing date.

March 5, 2009  I received yet another letter from the National Benefit Center; this one was dated March 2, 2009 and postmarked 03/03/2009.  The purpose of this letter was to inform retirees that the fax number provided in the earlier letter is incorrect.  This letter provided the correct number for employees to use.  It appears that the Debtors are also having problems keeping up with the accelerated implementation of this unethical change in benefits, even with their multitudes of service providers.

c. March 12, 2009   I received a document dated March 6, 2009 and postmarked 03/10/2009 from the National Benefit Center clarifying the confusing Life Insurance correspondence received circa February 28.  Even though they sent the confusing information package to my wife, since she is the owner of the life insurance, they sent the clarification to me.

March 16, 2009  I phoned the National Benefit Center to inquire about my missing COBRA Coverage Election Form.  The person I spoke with told me that the form had been mailed to me on March 12, then added that maybe is was late afternoon of March 12 and might not have gone out until March 13.

March 18, 2009   My March 18 mail has just been delivered, but my COBRA form has still not arrived.

March 18,2009   The delphisalariedretirees.org web site has posted:

***COBRA KITS FOR THOSE THAT QUALIFY WILL BE OUT EARLY THIS WEEK (3/16/09). THE US GOVERNMENT HAS PROMISED INFORMATION ON THE STIMULUS PACKAGE SUBSIDIES BY 3/19/09***

> Apparently there is some information in the Stimulus Package that could affect the decisions of the retirees.  This information has not been provided to the retirees.  This is just one more reason that the retirees need and deserve more time and that the Court should grant the 90 day stay that was requested by the retiree group.

This Declaration is dated March 18, 2009

_____

Richard A. Devers

I will also send copies of this via first class mail to:

| | |
|---|---|
| Delphi Corporation | Skadden, Arps, Slate, Meagher & Flom LLP |
| Attn: General Counsel | 333 West Wacker Drive |
| 5725 Delphi Drive | Suite 2100 |
| Troy, MI 48098 | Chicago, IL 60606 |
| | Attn: John W. Butler, Jr. |