# Exhibit A

```
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF NEW YORK


                                    .
IN RE:                              .   Case No. 05-44481
                                    .
DELPHI CORPORATION, et al,          .   New York, New York
                                    .   Wednesday, March 22, 2006
              Debtors.              .   2:18 p.m.
. . . . . . . . . . . . . .


        TRANSCRIPT OF SECTION 1102(a)(2) EVIDENTIARY HEARING
              BEFORE THE HONORABLE ROBERT D. DRAIN
                   UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            John Wm. Butler, Jr., Esq.
                            David E. Springer, Esq.
                            Dhananjai Shivakumar, Esq.
                            SKADDEN, ARPS, SLATE, MEAGHER
                             & FLOM, LLP
                            333 West Wacker Drive, Suite 2100
                            Chicago, Illinois  60606

                            Kayalyn A. Marafioti, Esq.
                            SKADDEN, ARPS, SLATE, MEAGHER
                             & FLOM, LLP
                            Four Times Square
                            New York, New York  10036

(Appearances continued)

Audio Operator:             Electronically Recorded
                            by Greg White, ECRO

Transcription Company:      Rand Transcript Service, Inc.
                            311 Cheyenne Road
                            Lafayette, New Jersey  07848
                            (973) 383-6977


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```



```
 1  A P P E A R A N C E S:    (Continued)

 2  For Appaloosa
    Management, LP:                 Thomas E. Lauria, Esq.
 3                                  Rudolph F. Aragon, Esq.
                                    Frank L. Eaton, Esq.
 4                                  WHITE & CASE, LLP
                                    Wachovia Financial Center
 5                                  200 South Biscayne Boulevard
                                    Suite 4900
 6                                  Miami, Florida 33131

 7                                  Glenn M. Kurtz, Esq.
                                    Douglas P. Baumstein, Esq.
 8                                  WHITE & CASE, LLP
                                    1155 Avenue of the Americas
 9                                  New York, New York 10036

10
    For the U.S. Trustee:           Alicia M. Leonhard, Esq.
11                                  U.S. DEPARTMENT OF JUSTICE
                                    Office of the U.S. Trustee
12                                  33 Whitehall Street, Suite 2100
                                    New York, New York 10004
13

14  For the Official Committee
    of Unsecured Creditors:         Robert J. Rosenberg, Esq.
15                                  John W. Weiss, Esq.
                                    LATHAM & WATKINS, LLP
16                                  53rd at Third, 885 Third Avenue
                                    New York, New York 10022

17

18  For JPMorgan, et al:            Kenneth S. Ziman, Esq.
                                    Robert Trust, Esq.
19                                  SIMPSON, THACHER & BARTLETT, LLP
                                    425 Lexington Avenue
20                                  New York, New York 10017

21  For Brandes Investment
    Partners, LP:                   Daniel A. Lowenthal, Esq.
22                                  THELEN, REID & PRIEST, LLP
                                    875 Third Avenue
23                                  New York, New York 10022

24

25
```

3

1                                    I N D E X

2                                                                           Page
    MOTION TO STRIKE REPORT/OPINION
3   (Re:  Kenneth S. Williams)
         Argument by Mr. Baumstein                                             4
4        Argument by Mr. Butler                                                8
         Court Decision                                                       10
5


6                                 DIRECT   CROSS   REDIRECT   RECROSS

7   WITNESSES FOR THE DEBTORS
    KEITH S. WILLIAMS
8        By Mr. Kurtz           12                              71
         By Mr. Butler                              60
9
    DAVID L. RESNICK
10       By Mr. Aragon          86

11

12  MOTION TO STRIKE REPORT/OPINION                                         Page
    (Re:  David L. Resnick)
13       Argument by Mr. Aragon                                               74
         Argument by Mr. Butler                                               82
14       Court Decision                                                       85

15
    CLOSING ARGUMENTS
16       By Mr. Lauria                                                       120
         By Mr. Lowenthal                                                    138
17       By Mr. Butler                                                       140
         By Mr. Rosenberg                                                    152
18       By Mr. Ziman                                                        154
         By Ms. Leonhard                                                     156
19

20
    COURT DECISION                                                           156
21

22

23

24

25

```
                       Argument - Baumstein                        4
 1        (Proceedings commence at 2:19 p.m.)
 2            THE COURT:  Please be seated.
 3        Okay.  We're back on the record from yesterday in
 4   Delphi Corporation.
 5        Mr. Butler, you have your next witness on rebuttal?
 6            MR. BUTLER:  Thank you, Your Honor, and good
 7   afternoon.
 8        Your Honor at this time we'd like to present the --
 9   for cross-examination Keith S. Williams, whose expert report
10   and declaration have been admitted as Exhibit Number 12.
11            MR. KURTZ:  Your Honor, we filed a motion with
12   respect to the witness.  Would now be a good time to present
13   it?
14            THE COURT:  Yes.  You're looking to strike his
15   report?
16            MR. KURTZ:  Correct.  It's going to be argued by Mr.
17   Baumstein?
18            MR. BAUMSTEIN:  Good afternoon, Your Honor.  Doug
19   Baumstein here.
20        The motion is basically about a very simple
21   prospect.  During examinations of both Mr. Williams and Mr.
22   Sheehan, a number of questions were asked about the current
23   status of the negotiations at -- I guess at that point
24   ongoing negotiations between Delphi and the unions, which, as
25   everyone recognizes in this bankruptcy, would largely affect
```

Closing Argument - Leonhard and Court Decision          156

1  I think others involved in this matter will have an
2  opportunity to weigh in after the fact and Appaloosa, as Mr.
3  Rosenberg pointed out, will have that opportunity, too, as
4  would Brandes, given its substantial resources.
5          I think with that, Your Honor, I'll step down and
6  let Ms. Leonhard make her remarks.  Again, I would propose
7  granting the motion.
8          THE COURT:  Okay.
9              **CLOSING ARGUMENT FOR THE U.S. TRUSTEE**
10         MS. LEONHARD:  Good evening, Your Honor.  Alicia
11 Leonhard for the United States Trustee.
12         Last, but not least, Your Honor, the United States
13 Trustee joins in the comments and the arguments of the
14 objectors and requests that the Court deny the motion.  Thank
15 you very much.
16         THE COURT:  Okay.  All right.  I'll take a five-
17 minute break and then I'll be back.  Well, I'll be back at
18 6:15.
19     (Recess taken at 6:01 p.m.)
20         THE COURT:  Please be seated.
21         I have in front of me a motion by Appaloosa
22 Management, LP, a substantial shareholder of the parent
23 Delphi entity, for the appointment of an official committee
24 of equity security-holders under Section 1102(a)(2) of the
25 Bankruptcy Code.

1    The motion is opposed by the debtors, the Official
2  Unsecured Creditors' Committee, the agent for the pre-
3  petition lenders, and the United States Trustee.
4    It has been joined in by another large and
5  sophisticated management company, Brandes, which unlike
6  Appaloosa, was a pre-petition holder of the debtor's equity
7  interests and represents to the Court that it has, under
8  management with authority to vote, again, a substantial stake
9  in the debtor's equity interests.  I believe, if you add the
10 two of them together, they own or control approximately
11 fifteen or sixteen percent of the outstanding shares.
12   Those shares are widely held.  There was no
13 testimony on this point, but I believe the record is clear
14 that there are approximately 300,000 shareholders of the
15 publicly traded equity interests.  In light of that fact, I
16 believe that it is relevant that the SEC has not taken a
17 position on this motion.  There were perhaps contrary
18 representations made to the Court as to why the SEC had not
19 done that, made by counsel to the U.S. Trustee on the one
20 hand, saying that the SEC did not support the motion; and by
21 counsel for Appaloosa, saying the SEC did not support the
22 motion, absent a showing, which it was not taking a position
23 on -- that is, that the SEC was not taking a position on,
24 with regard to whether the debtors at this point are
25 insolvent.

Court Decision                                                             158

1     This is an important motion because it affects the
2  cost of this case, both directly--that is, the cost of an
3  equity committee and its professionals if I grant the motion-
4  -as well as indirectly, in connection with both the cost of
5  the estate and other estate-compensated professionals,
6  including the Creditors' Committee, in dealing with
7  litigation and other matters raised by an equity committee;
8  and then, in addition, also indirectly, in respect of
9  potential delay that the existence of an equity committee
10 might cause at various stages in the case.
11    Because of its importance, and because of the desire
12 by all parties, at least as initially expressed by all
13 parties, including Appaloosa, to have this matter heard and
14 decided by me quickly, so that if I rule in favor of an
15 equity committee, an equity committee could be appointed
16 quickly before passage of much more time in this case, I have
17 decided to rule from the bench.
18    As I often do with long bench rulings, however,
19 particularly where I cite extensive case law, I reserve the
20 right to correct the ruling based on my review of the
21 transcript.
22    This is a core proceeding under the Bankruptcy Code,
23 as it deals with a committee's appointment under the Code.
24 And one begins, as one must, with the statute, which provides
25 at Section 1102(a)(2) that:

1    "On request of a party in interest, the Court may
2    order the appointment of additional committees of
3    creditors or of equity security-holders, if
4    necessary to assure adequate representation of
5    creditors or of equity security-holders. The United
6    States Trustee shall appoint any such committee once
7    the Court has ordered the appointment."
8        It's well recognized that there is no statutory test
9    for "adequacy of representation," as used in Section
10   1102(a)(2). See, for example, In Re: Johns Manville
11   Corporation, 68 B.R. 155 (SDNY 1986), appeal dismissed 824
12   F.2d 176 (2d Cir. 1987).
13       In light of the absence of a statutory definition of
14   "adequacy of representation," and in light further of the
15   fact that the statute says the Court "may" order the
16   appointment of an additional committee besides the Official
17   Creditors' Committee, the courts have made such
18   determinations on a case-by-case basis in the exercise of the
19   Bankruptcy Court's discretion. See, again, In Re: Johns
20   Manville, 68 B.R. 155, as well as In Re: Becker Industries
21   Corporation, 55 B.R. 945, 948, (Bankruptcy, SDNY 1985), for
22   lists of the factors that the courts have employed in
23   exercising their discretion on a case-by-case basis.
24       I should further note that the case law is clear
25   that the burden of showing a lack of adequacy of

1   representation is upon the movant. Again, see In Re: Johns
2   Manville Corporation, 68 B.R. 155.
3        The factors that the Court is to consider on a case-
4   by-case basis are, by this time, fairly well established,
5   although I should say first and foremost, again, they are
6   merely factors informing the Court's discretion. It is not a
7   litmus test, and no particular factor's absence precludes the
8   appointment of a committee; and, conversely, although if all
9   the factors were present, one would assume a committee would
10  be appointment, the Court still has discretion under the
11  statute, in light of other factors that might be present and
12  relevant, not to appoint a committee. The case law has in
13  large measure developed out of cases decided in the Southern
14  District of New York, but the factors are employed throughout
15  the country. They are laid out in the Becker Industries
16  case, and in the Johns Manville case that I have cited.
17  They're also discussed in, for example, In Re: Kalvar
18  Microfilm, Inc., 195 B.R. 599 (Bankruptcy, District Court of
19  Delaware 1996), and numerous other cases throughout the
20  country. They include:
21       Whether the shares are widely held and publicly
22  traded.
23       The size and complexity of the Chapter 11 case.
24       The delay and additional cost that would result if
25  the Court grants the motion.

1      The likelihood of whether the debtors are insolvent.
2      The timing of the motion relative to the status of
3 the Chapter 11 case.
4      And other factors relevant to the issue of adequate
5 representation, including:
6      The role of the board and management acting on
7 behalf of shareholders.
8      The role of other estate-compensated parties,
9 including the Official Creditors' Committee, and whether they
10 can be said in large measure to be acting on behalf of
11 shareholders, at least insofar as maximizing the value of the
12 estate.
13      And according to some courts, the sophistication of
14 the shareholders, particularly those who have made the
15 motion, and their ability to retain counsel and other
16 advisors.
17      And according to some courts, the right of such
18 parties, if they do make a substantial contribution in the
19 case, to be compensated under Section 503(b) of the
20 Bankruptcy Code.
21      Before discussing those factors in more detail,
22 however, and particularly focusing upon the factor dealing
23 with the debtors' financial condition, which has occupied a
24 great deal of the hearing in front of me, I believe it's
25 relevant and significant also to quote the legislative

1  history of Section 1102(a)(2), because, given the lack of a
2  statutory definition of "adequacy of representation," I
3  believe congressional intent is relevant.
4      The relevant legislative history on the section is
5  not only quoted, but astutely critiqued in Johns Manville at
6  68 B.R. 155 at 160.  As noted in that case, one of the
7  purposes of the legislation was, quote:
8      "-- to counteract the natural tendency of a debtor
9      in distress to pacify large creditors with whom the
10     debtor would expect to do business at the expense of
11     small and scattered public investors."
12     That's from S. Rep. No. 989, 95th Congress, Second
13 Session at 10 (1978).
14     The Congressional Report went on to state:
15     "The committee believes that it should be emphasized
16     that investor protection is most critical when the
17     company in which the public invested is in financial
18     difficulties and is forced to seek relief under the
19     bankruptcy laws.  A fair and equitable
20     reorganization as provided in the bill is literally
21     the last clear chance to conserve for them values
22     that corporate financial stress or insolvency have
23     placed in jeopardy.  As public investors are likely
24     to be junior or subordinated creditors or debt-
25     holders, it is essential for them to have

1   legislative assurance that their interests will be
2   protected. Such assurance should not be left to a
3   plan negotiated by a debtor in distress and senior
4   or institutional debtors who will have their own
5   best interests to look after." Id.
6       The Court in Manville noted, however, that because
7   Congress made the appointment discretionary in the Bankruptcy
8   Court, finding that the Court "may" appoint a committee if
9   necessary to assure adequate representation, it obviously did
10  not take this principle beyond the meaning of the statute.
11      I believe there has been a development in the case
12  law since the Congressional Report was issued, and, frankly,
13  since the Becker Industries case, which was one of the first
14  cases to deal with the appointment of a committee under
15  1102(a)(2), although starting, frankly, with an earlier case,
16  Judge Beatty's case in Emons Industries.
17      The Courts have recognized that even where a Chapter
18  11 case involves a substantial number of public shareholders
19  and is large and complex, the Court should not appoint an
20  equity committee if the debtor appears to be clearly
21  insolvent. That is because, in the words of Judge Beatty in
22  Emons, which appears at 50 B.R. 692 (Bankruptcy SDNY 1985):
23  to do so would, in effect, give the equity committee and the
24  shareholders a gift. And that is because the cost of the
25  committee is borne by the estate.

1  And if it appears, in the words of Emons, that
2  the debtor is hopelessly insolvent, that cost should not be
3  borne.
4  Courts, I believe, because of their experience of
5  cases where equity committees were formed, where equity
6  committees were inordinately litigious and active in such
7  cases and ultimately obtained for their constituents what
8  might charitably be described as a gift, that is, an
9  inducement to go away through a plan, have come to emphasize
10 the point.  It's discussed in some detail and with some
11 candor in the Wang Laboratories decision by Judge Hillman at
12 149 B.R. 1 (Bankruptcy, District of Massachusetts 1992), in
13 which Judge Hillman recognized the need not to legitimize
14 what he called the, quote, "blackmail factor" inherent in the
15 presence of an equity committee where, in fact, it appears
16 that the debtor is hopelessly insolvent.
17 The Bankruptcy Code gives parties in interest
18 considerable access to the Court and considerable issues to
19 raise, if they choose, in front of the Court, which obviously
20 has the effect potentially of delaying the prosecution of a
21 Chapter 11 case and causing other parties to incur
22 substantial costs.  The benefit to a litigant of controlling
23 an equity committee, or any other official committee, is
24 that, subject of course to Court review, the cost of such
25 litigation is borne by the estate, which raises the stakes

1  and makes it tempting to implement the "blackmail factor"
2  strategy.
3      I believe these are legitimate concerns in this area
4  and they have been recognized by numerous courts, and
5  specifically, in what I believe today to be the leading
6  decision in this area, they were recognized by Judge Lifland
7  in In Re: Williams Communications Group, Inc., 281 B.R. 216
8  (Bankruptcy SDNY 2002), in which he repeated Judge Beatty's
9  concern that an equity committee where the debtor appears to
10 be hopelessly insolvent should not be warranted because, this
11 is a quote:
12      "-- because neither the debtor nor the creditor
13      should have to bear the expense of negotiating over
14      the terms of what is in essence a gift."
15      Judge Lifland used in that quote Judge Beatty's
16 phrase, "appears to be hopelessly insolvent." He also used
17 it at Page 222 -- I'm sorry, at 221 of his opinion.
18      Interestingly, in his conclusion, however, he
19 provides for a somewhat different test than "hopelessly
20 insolvent." He states:
21      "The appointment of official equity committees
22      should be the rare exception. Such committees
23      should not be appointed unless equityholders
24      establish that (i) there is a substantial likelihood
25      that they will receive a meaningful distribution in

1       the case under a strict application of the absolute
2       priority rule, and (ii) they are unable to represent
3       their interests in the bankruptcy case without an
4       official committee." Id. at 223.
5           That is, as to the first prong of his test, it
6   requires more of the movant for an official equity committee
7   to establish than that there are signs of hope of solvency,
8   at least in the general run of such applications.
9           That formulation has since been picked up by another
10  court. Judge Case, whom I certainly respect as a very astute
11  scholar of bankruptcy law, applied the same test in In Re:
12  Northwestern Corporation, 2004 Westlaw 1077913 (Bankruptcy,
13  District of Delaware, May 13, 2004).
14          Now I say that without necessarily accepting it as
15  an ironclad test myself because I believe that all of the
16  courts that look at these issues, including Judge Lifland and
17  Judge Case, would say first and foremost that the various
18  factors enunciated by the Courts are to be applied on a case-
19  by-case basis, in light of the statute and the congressional
20  policy. And that's what I have done in my balancing analysis
21  of all of the factors; that is, I have not imposed upon the
22  movant here the burden of showing "a substantial likelihood
23  that it will receive a meaningful distribution in the case."
24          I do that because this motion is filed early in the
25  case, as opposed to at the time a plan is to be negotiated

1  and/or litigated at confirmation.  And I believe that it is,
2  as a result, important for me to give the benefit of the
3  doubt to the movants here.
4          As the debtors have acknowledged candidly, it is too
5  early to formulate a business plan.  It is, consequently, too
6  early to formulate a going concern valuation with any
7  credibility; and, finally, it is too early to negotiate a
8  chapter 11 plan.  Consequently, all of the analysis of
9  solvency or insolvency here has around it a substantial
10 amount of speculation and doubt.  And I believe it would be
11 unfair to impose upon a movant in that context the burden of
12 doing a full-scale going-concern valuation to show a
13 "substantial likelihood of a meaningful distribution."
14         Moreover, I believe that such a full-blown valuation
15 at this time is not what is called for in connection with a
16 motion for the appointment of an equity committee.  As Judge
17 Lifland made quite clear in Williams, this is a summary
18 proceeding.  The valuation that the Court performs in
19 connection with the proceeding is not binding in any respect
20 on any party with respect to any future valuation of the
21 debtor or its assets, including, most importantly of course,
22 a valuation for chapter 11 plan confirmation purposes.
23         There's an obvious reason for that.  It's tied into
24 both the strengths of Congressional policy in permitting
25 equity committees to be appointed under the proper

1   circumstances as well as the potential for abuse of that
2   right; that is, on the one hand, it's unfair to impose the
3   burden of a full-scale valuation on public shareholders in
4   all circumstances, although the burden may be increased in
5   certain circumstances.  It is also unfair to the debtor and
6   the other parties whose money is very clearly at risk in the
7   bankruptcy case, namely the creditors, and in this case the
8   workers, of, in essence, causing the motion for the
9   appointment of an equity committee to take over the entire
10  case so that under the rubric of "valuation" the movant for an
11  equity committee can use all of the cost and delay leverage
12  that an equity committee might have even before the equity
13  committee is appointed, to engage the parties in litigation
14  on the merits of the key issues in the case.
15          That would be an absurd result.  I believe, frankly,
16  that's why I was so angry at Appaloosa's attempt repeatedly
17  to turn this matter into such a proceeding and why the case
18  law is crystal-clear that that is not what the Court is to
19  consider.
20          Now let me -- before that, let me note that although
21  Judge Lifland makes that crystal-clear in his opinion, he's
22  not the only judge to have done so.  In fact, Judge Case in
23  Northwestern didn't have an evidentiary hearing at all.  He
24  did not believe it was appropriate.  The Court in Leap
25  Wireless, 295 B.R. 135 (Bankr. S.D. Cal. 2003) was frustrated

1  as to the lack of substance behind the debtors' schedules,
2  but, again, only treated the matter as a summary proceeding
3  and took whatever evidence she had and weighed that into her
4  analysis with respect to whether a committee should be
5  appointed.
6          So I believe, both logically and under the case law,
7  there is no basis to expand the inquiry that I need to
8  undertake here to force parties to conduct full-blown
9  valuations on either side of the solvency issue.
10         Now, to apply the various factors.  As I noted
11 before, this is a large public company.  There's over 500
12 million of issued and outstanding common shares and over
13 300,000 public shareholders.  This is obviously also a large
14 and complex bankruptcy case.  The docket is already
15 substantial, and it is clear to me that far more than is
16 reflected in the docket is being done by the debtor and other
17 parties behind the scenes in respect to resolving the key
18 issues in this case.
19         Those issues are complex, both in terms of the
20 negotiating and human dynamics, as well as the qualitative
21 and quantitative analysis in regard to the underlying
22 documentation, the parties' rights under the Bankruptcy Code
23 and other law, including labor law and ERISA; and they
24 ultimately involve numerous important judgment calls that in
25 the first instance the debtor must make in consultation with

1  key constituencies in the case, and that ultimately I must
2  make when the debtor goes to seek approval of what it has
3  negotiated. So those factors clearly call for the
4  appointment of an equity committee.
5       It is also argued that the debtors' management and
6  board is not actually representing the interests of the
7  shareholders as well as those of all of the other
8  constituencies for which they are fiduciaries; and, to some
9  extent, it is argued that they cannot represent those
10 interests.
11      As to the latter point, to the extent it's made, I
12 do not accept that analysis. Clearly, the board of a public
13 company and its management owes a duty in a bankruptcy case
14 not only to the creditors, assuming that the debtor is
15 insolvent, but also to the shareholders. And there is no
16 built-in bias there against shareholders. As noted by Judge
17 Robinson in Edison Brothers Stores, 1996 Westlaw 534, 853
18 (District Court of Delaware, 1996), a movant needs to show
19 more than simply speculation as to such a conflict.
20      It's additionally argued that the very fact of the
21 complexity of this case and the debtors' natural desire to
22 resolve the case may lead the debtor to give short shrift to
23 shareholders' views. That, I believe, has some merit to it;
24 and, frankly, the argument is, I believe, consistent with the
25 legislative history that I quoted earlier.