**Bidding Procedures Hearing Date and Time: April 23, 2009 at 10:00 a.m.**
**Bidding Procedures Objection Deadline: April 16, 2009 at 4:00 p.m.**
**Sale Hearing Date and Time: May 21, 2009 at 10:00 a.m.**
**Sale Objection Deadline: May 14, 2009 at 4:00 p.m.**

| | |
|---|---|
| PENSION BENEFIT GUARANTY CORPORATION | KELLEY DRYE & WARREN LLP |
| Israel Goldowitz, Chief Counsel | Merrill B. Stone |
| Karen L. Morris, Deputy Chief Counsel | Craig A. Wolfe |
| John A. Menke, Assistant Chief Counsel | 101 Park Avenue |
| Ralph L. Landy, Attorney | New York, NY 10178 |
| C. Wayne Owen, Jr., Attorney | Tel: (212) 808-7800 |
| 1200 K Street, N.W. | Fax: (212) 808-7897 |
| Washington, D.C. 20005 | |
| Tel: (202) 326-4020 | KELLEY DRYE & WARREN LLP |
| Fax: (202) 326-4112 | Joseph A. Boyle |
| | 200 Kimball Drive |
| Attorneys for Pension Benefit Guaranty Corporation | Parsippany, NJ 07054 |
| | Tel: (973) 503-5920 |
| | Fax: (973) 503-5930 |
| | |
| | Attorneys for Pension Benefit Guaranty Corporation |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**RESPONSE OF PENSION BENEFIT GUARANTY CORPORATION
TO DEBTORS' BIDDING PROCEDURES FOR BRAKES AND RIDE
DYNAMICS BUSINESS SALE MOTION**

Pension Benefit Guaranty Corporation ("PBGC") hereby responds to the Brakes and Ride Dynamics Business Sale Motion (Docket No. 16,533) (the "Motion"). In support of the response, PBGC respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Motion seeks approval of the Debtors' proposed bidding procedures for the sale of the Brakes Business[1] and Ride Dynamics Business (collectively, the "Sale Businesses"). The Sale Businesses include property that is subject to the PBGC's statutory liens on assets of the Debtors' foreign affiliates ("Foreign Affiliates"). Because the Foreign Affiliates are not debtors in a case under the Bankruptcy Code, they cannot transfer their assets under the "free and clear sale" provisions of section 363(f) of the Bankruptcy Code. PBGC does not intend to release its lien on the assets of the Foreign Affiliates without the Debtors first satisfying the obligations underlying the liens. Absent that, PBGC's liens will follow the foreign assets even if they are transferred to Beijingwest Industries Co,. Ltd. or the successful bidder at any auction. This Court lacks authority or jurisdiction to order otherwise. PBGC raises this issue now to ensure that estate assets are not wasted securing a buyer who could ultimately terminate the purchase agreement because the Debtors failed to disclose that the Sale Businesses cannot be sold free and clear of all liens.

**BACKGROUND**

**A.    General Background**

1.    On October 8 and 14, 2005 (the "Petition Dates"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code") and commenced the above-captioned chapter 11 cases.

2.    Delphi is the plan sponsor of the Delphi Hourly-Rate Employees Pension Plan (the "Hourly Plan") and the Delphi Retirement Program for Salaried Employees (the

---

[1]    Capitalized terms not otherwise defined shall have the meaning as those ascribed to them in the Motion.

2

"Salaried Plan" and, collectively with the Hourly Plan, the "Plans"). Each of the Plans is a single-employer defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1301-1461 (2006). Neither of the Plans has been terminated. Certain other Debtors are plan sponsors of four smaller defined benefit pension plans covered by Title IV of ERISA.

B.      **Background of Pension Liability**

3.      PBGC is a wholly owned United States government corporation that administers and enforces the nation's defined benefit pension plan termination insurance program under ERISA. The termination insurance program protects nearly 44 million workers participating in over 29,000 private sector pension plans. *See* PBGC 2008 Annual Report at (i);[2] *see generally PBGC v. LTV Corp.,* 496 U.S. 633 (1990).

1.      **Minimum Funding Requirements**

4.      An employer's decision to establish a defined benefit pension plan is entirely voluntary. Once established, however, federal law requires the employer to fund the plan in accordance with the minimum funding standards prescribed by the Internal Revenue Code ("IRC") and ERISA. 26 U.S.C. § 412 ("IRC § 412"), 26 U.S.C.A. § 430 ("IRC § 430"); 29 U.S.C. §§ 1082, 1083. A pension plan must be funded until it is terminated in accordance with ERISA. Rev. Rul. No. 79-237, 1979-2 C.B. 190.

2.      **PBGC's Proofs of Claim**

5.      PBGC timely filed three claims regarding each of the Plans against each of the Debtors for: (1) unpaid minimum funding contributions required under IRC § 412 and 29 U.S.C. §§ 1082 and 1362(c); (2) unpaid premiums owed to PBGC under 29 U.S.C. § 1307; and (3) contingent termination liability to PBGC under 29 U.S.C. § 1362(a) and (b). Each of the

---

[2]      This Annual Report is available on PBGC's website at: http://www.pbgc/gov/doc/2008_annual_report.pdf.

3

claims filed by PBGC, on behalf of itself and on behalf of the Plans, is asserted against each of the Debtors based on joint and several liability.[3]

    6. ERISA provides that the plan sponsor and each member of the plan sponsor's "controlled group" are jointly and severally liable for the unpaid minimum funding contributions owed to the pension plan. IRC § 412(b)(2). "Controlled group" is defined in IRC § 430(k)(6)(C) and 29 U.S.C. § 1301(a)(14) and, among other things, includes families of corporations having at least 80 percent common ownership. 26 U.S.C. § 1563(a). Therefore, Delphi, as the contributing sponsor of the Plans, and each member of its controlled group, including all the Debtors and their Foreign Affiliates, are jointly and severally liable to the Plans for the contributions necessary to satisfy the minimum funding standard under the IRC and ERISA, IRC § 412(b)(2), and, if the Plans are terminated, 29 U.S.C. § 1362(c), for the unfunded benefit liabilities discussed below.

**3. PBGC Liens**

    7. IRC §§ 412(n) and 430(k) impose a statutory lien in favor of a pension plan. The statutory lien arises by operation of law immediately on the day following the date on which unpaid contributions first exceed $1 million and is for the aggregate unpaid balance of the funding contributions (plus interest). IRC §§ 412(n)(3), (4), and (5); 430(k)(3), (4) and (5). PBGC has exclusive authority to enforce this lien. IRC §§ 412(n)(5), 430(k)(5) ("Any lien created under [§§ 412(n)(1) or 430(k)(1)] may be perfected and enforced only by the Pension Benefit Guaranty Corporation . . ."). The statutory lien attaches to all property of the plan sponsor and each member of its controlled group. IRC §§ 412(n)(1), 430(k)(1).

---

[3] On June 27, 2006, this Court approved a stipulation between PBGC and the Debtors allowing PBGC to file consolidated claims against the Debtors. Pursuant to the stipulation, the filing of a claim by PBGC in these proceedings is deemed to constitute the filing of such claim in all of the cases jointly administered under the above case caption. Therefore, each claim PBGC filed represents a separate claim asserted against each of the Debtors.

8. Pursuant to IRC § 6323(f)(2)(B), PBGC has recorded Notices of Federal Lien with the Recorder of Deeds for the District of Columbia (the "<u>Notices</u>") with respect to the liens under IRC § 412(n) of each Plan against all property and rights to property of the Debtors' Foreign Affiliates. PBGC has filed Notices for liens in excess of $165 million for unpaid contributions to the Salaried Plan and for more than $9 million for three of the Debtors' smaller plans. As a result of a transfer to General Motors of certain pension liabilities of the Hourly Plan, PBGC withdrew the lien Notices previously filed on behalf of the Hourly Plan.

9. On three occasions, the Court granted PBGC adequate protection of PBGC's asserted liens against the Foreign Affiliates in connection with the Debtors' motions involving the repatriation of cash from the Foreign Affiliates (Docket Nos. 13694, 13733 and 14005). Furthermore, PBGC asserted the same interest in the assets of the Foreign Affiliates in its *Response of Pension Benefit Guaranty Corporation to Debtors' Motion for Order under 11 U.S.C. § 363 and Fed. R. Bankr. P. 6004 Authorizing and Approving Option Exercise Agreement (the "Steering Option Exercise Motion")* filed on March 17, 2009 (Docket No. 16475).

C. **Delphi's Proposed Bidding Procedure
for the Sale of the Sale Businesses**

10. Although the Bidding Procedures generally describe the Sale Businesses, they do not disclose the existence of PBGC's liens on the assets of the Foreign Affiliates that are included in the sale. The Sale Businesses, being global operations, include many assets of the Foreign Affiliates which are not debtors in chapter 11 cases under the Bankruptcy Code. The Motion states that approximately two-thirds of the value of the assets is located in twelve (12) foreign countries. According to the Purchase Price Allocation attached to the Agreement as Schedule 3.6.1, the Debtors' assets being transferred account for $29.16 million of the $90

5

million purchase price.  The remaining $61.84 million of the sale price is attributable to the transfer of the Foreign Affiliates' assets subject to PBGC's liens.

11. PBGC's Notices extend its liens to the assets of those Foreign Affiliates, including those being sold with the Sale Businesses.  Any sale of the assets of Foreign Affiliates free and clear of liens would therefore diminish PBGC's ability to recover on its claims for the unpaid minimum funding contributions.

## ARGUMENT

### A. The Court Lacks Authority to Approve Sale of the Assets of the Foreign Affiliates Free and Clear of Liens and Encumbrances

12. The Foreign Affiliates are not debtors under the Bankruptcy Code, and thus the Debtors cannot use section 363(f) or any other provision of the Bankruptcy Code to cause the transfer the Foreign Affiliates' assets free and clear of PBGC's liens.  Section 363(f) states: "The trustee may sell property [of the estate] free and clear of any interest in such property of an entity other than the estate, only if – [one of five conditions is met]." 11 U.S.C. § 363(f).  Nothing in section 363, or in the rest of the Bankruptcy Code, extends this specific benefit beyond a debtor and its estate.

13. A recent Delaware case demonstrates the limits of section 363, with potentially costly results for the purchaser.  In *Amphenol Corp. v. Shandler (In re Insilco Technologies, Inc.)*, 351 B.R. 313 (Bankr. D. Del. 2006), the purchaser (Amphenol) bought the stock of one of the debtor's wholly owned non-debtor subsidiaries (PMC) in a section 363 sale. Amphenol mistakenly thought that it was buying PMC's assets free and clear of any liens and encumbrances.  However, when that position was challenged, the court found that Amphenol received the *stock* free and clear, *not* the assets, because PMC was not a debtor in the bankruptcy case and its assets were not part of the bankruptcy estate.  *Id*. at 321-322.

6

14. Similarly, this Court cannot approve a sale of the Sale Businesses' assets free and clear of any liens, because the Foreign Affiliates are not debtors in a bankruptcy case and their assets are not part of the Debtors' bankruptcy estates. As discussed above, the Court does not have authority to sell the Foreign Affiliates' assets free and clear of liens. However, neither the Motion nor the Agreement acknowledges PBGC's interest in this property. The Bidding Procedures must make clear to all potential buyers that any sale of the assets of Foreign Affiliates would necessarily remain subject to PBGC's liens, which remain in place.

## RESERVATION OF RIGHTS

15. By this response, PBGC requests that the Debtors provide any and all bidders for the Sale Businesses actual notice of PBGC's liens and the fact that these assets cannot be sold free and clear of such liens. Furthermore, PBGC expressly reserves its right to raise all claims, defenses and objections to the sale of the Sale Businesses once a final purchaser has been selected. PBGC will file a response to such sale by the Sale Objection Deadline set forth in the Motion.

WHEREFORE, PBGC requests that this Court condition any approval of the Bidding Procedures on the disclosure of PBGC's liens on the assets of the Foreign Affiliates and of the fact that they cannot be sold free and clear of PBGC's liens.

Dated:  Washington, D.C.
        April 16, 2009

PENSION BENEFIT GUARANTY CORPORATION

By: */s/ John A. Menke*
    Israel Goldowitz, Chief Counsel
    Karen L. Morris, Deputy Chief Counsel
    John A. Menke, Assistant Chief Counsel
    Ralph L. Landy, Attorney
    C. Wayne Owen, Jr., Attorney
1200 K Street, N.W.
Washington, D.C. 20005
Tel: (202) 326-4020
Fax: (202) 326-4112

-and-

Dated:  New York, New York
        April 16, 2009

KELLEY DRYE & WARREN LLP

By: */s/ Craig A. Wolfe*
    Merrill B. Stone
    Craig A. Wolfe
101 Park Avenue
New York, NY 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

KELLEY DRYE & WARREN LLP
Joseph A. Boyle
200 Kimball Drive
Parsippany, NJ 07054
Tel: (973) 503-5920
Fax: (973) 503-5930

Attorneys for Pension Benefit Guaranty Corporation

# **CERTIFICATE OF SERVICE**

I, Marie Vicinanza, certify that on the 16th day of April, 2009, I caused to be served to the parties listed below, a true and correct copy of the foregoing *Statement of Pension Benefit Guaranty Corporation Regarding Debtors' Expedited Motion for an Order Authorizing Debtor to Implement the Amended and Restated Global Settlement Agreement and Master Restructuring Agreement with General Motors Corporation (the "GSA and MRA Amendment Motion"),* via hand delivery and/or electronic mail as indicated.

| | |
|---|---|
| Skadden, Arps, Slate, Meagher & Flom LLP, John Wm. Butler, Jr. 333 West Wacker Drive Suite 2100 Chicago, Illinois 60606 **Electronic Mail** jack.butler@skadden.com | Kayalyn A. Marafioti Thomas J. Matz Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square New York, New York 10036 **Via Hand Delivery and Electronic Mail** kayalyn.marafioti@skadden.com thomas.j.matz@skadden.com |
| Office of the United States Trustee Brian Masumoto, Esq. 33 Whitehall Street New York, New York 10004 **Via Hand Delivery** | Honorable Robert D. Drain United States Bankruptcy Court Southern District of New York One Bowling Green New York, NY 10004 **Via Hand Delivery** |

Dated: April 16, 2009     /s/ *Marie Vicinaza*
      New York, New York     Marie Vicinanza