UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
    In re                                 :          Chapter 11
:
DELPHI CORPORATION, et al.,         :          Case No. 05-44481 (RDD)
:
                          Debtors.   :          (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363 AND 1123 AND FED. R. BANKR. P. 2002
AND 9014 (I) APPROVING BIDDING PROCEDURES, (II) GRANTING
CERTAIN BID PROTECTIONS, (III) APPROVING FORM AND MANNER OF
SALE NOTICES, AND (IV) SETTING SALE HEARING DATE
IN CONNECTION WITH SALE OF BRAKES AND RIDE DYNAMICS BUSINESSES

("BRAKES AND RIDE DYNAMICS BIDDING PROCEDURES ORDER")

        Upon the motion, dated March 31, 2009 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365, 1123, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving the bidding procedures set forth herein and attached hereto as Exhibit 1 (the "Bidding Procedures"), (ii) granting certain bid protections, (iii) approving the form and manner of sale notices, and (iv) setting a date for the sale hearing (the "Sale Hearing") and (b) authorizing and approving (i) the sale (the "Sale") of certain of the Selling Debtor Entities' (defined below) assets (the "Acquired Assets") comprising substantially all of the assets primarily used in the Selling Debtor Entities' brakes business (the "Brakes Business") and ride dynamics business (the "Ride Dynamics Business," together with the "Brakes Business, the "Sale Businesses"), free and clear of liens, claims, and encumbrances, to BeijingWest Industries Co., Ltd. and certain of its affiliates (the "Buyers"), pursuant to the Master Sale And Purchase Agreement, dated March 30, 2009, by and

between the Buyers and Delphi and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities")[1] (as may be amended, the "Agreement"), or to the Successful Bidder (as hereinafter defined) submitting a higher or otherwise better bid, (ii) the assumption and assignment of certain prepetition executory contracts and unexpired leases as defined in the Agreement (the "Assumed U.S. Contracts") and the assignment of certain postpetition executory contracts and unexpired leases as defined in the Agreement (the "Postpetition Contracts," and collectively with the Assumed U.S. Contracts, the "Assigned Contracts,") to the Buyers or to the party submitting the highest or otherwise best bid (the "Successful Bidder"), and (iii) the assumption of certain liabilities as defined in the Agreement (the "Assumed Liabilities") by the Buyers or the Successful Bidder; and upon the record of the hearing held on April 23, 2009, including the recitations and representations by the parties thereon (the "Bidding Procedures Hearing"); and after due deliberation thereon, and sufficient cause appearing therefor,

        IT IS HEREBY FOUND AND DETERMINED THAT:[2]

    A.    The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.

    B.    This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

---

[1] Under the Agreement, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Technologies, Inc. Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement. The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

    C.    The response filed by the Pensions Benefit Guaranty Corporation (the "PBGC") found at docket number 16563 (the "PBGC Response") was withdrawn without prejudice by the PBGC on the record at the Bidding Procedures Hearing.

    D.    The relief requested in the Motion and granted herein is in the best interests of the Selling Debtor Entities, their estates, their stakeholders, and other parties-in-interest.

    E.    The relief requested in the Motion and granted herein is in furtherance of the Debtors' confirmed plan of reorganization, as it may be modified.

    F.    The notice of the Motion and the Bidding Procedures Hearing given by the Selling Debtor Entities constitutes due and sufficient notice thereof.

    G.    The Selling Debtor Entities have articulated good and sufficient reasons for the Court to (i) approve the Bidding Procedures, (ii) grant certain bid protections as provided in the Agreement and this order, (iii) approve the manner of notice of the Motion, the Sale Hearing, and the assumption and assignment of the Assumed U.S. Contracts, (iv) approve the form of notice of the Motion and the Sale Hearing to be distributed to stakeholders and other parties-in-interest, including prospective bidders, (v) approve the form of notice of the assumption and assignment of the Assumed U.S. Contracts to be filed with the Court and served on the non-Debtor counterparties thereto, and (vi) set the Sale Hearing.

    H.    As generally articulated at the Bidding Procedures Hearing in connection with clarifying the Buyers' eligibility for the Break-Up Fee as provided in decretal paragraph 8(b) of this Order, the Sellers and the Buyers have agreed to modify the Agreement such that, solely with respect to the PBGC's purported liens (as described in the PBGC Response) (the-"Purported Liens"), the indemnifications with respect to the title and Encumbrance portions

3

of the representations in Sections 4.15.1, 4.15.2, 4.16.1, 4.16.2, and 4.17 of the Agreement shall survive until the expiration of the local and applicable statute of limitations to enforce the PBGC's Purported Liens in the non-U.S. jurisdictions where the acquired assets owned by the non-Debtor Sellers are located, and such amendment to the Agreement shall be incorporated into the stalking horse bid and accordingly shall be circulated to Qualified Bidders at the auction. Further, the Sellers and Buyers will continue to work together in good faith to seek to reach a resolution to the Purported Liens issue prior to Closing.

    I.    The break-up fee, as described in the Agreement (the "Break-Up Fee"), (i) may be payable in accordance with the terms, conditions, and limitations of the Agreement subject to the provisions of paragraph 8(b) of this Order, (ii) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Selling Debtor Entities' estates, within the meaning of sections 503 and 507 of the Bankruptcy Code, (iii) is of substantial benefit to the Selling Debtor Entities' estates, (iv) is reasonable and appropriate, including in light of the size and nature of the Sale and the efforts that have been and will be expended by the Buyers notwithstanding that the proposed Sale is subject to higher or better offers for the Acquired Assets, (v) was negotiated by the parties at arms' length and in good faith, and (vi) is necessary to ensure that the Buyers will continue to pursue the proposed acquisition of the Acquired Assets. The Break-Up Fee was a material inducement for, and condition of, the Buyers' entry into the Agreement. The Buyers are unwilling to commit to hold open their offer to purchase the Acquired Assets under the terms of the Agreement unless they are assured of payment of the Break-Up Fee. Thus, assurance to the Buyers of payment of the Break-Up Fee should promote more competitive bidding by inducing the Buyers to hold their bid open. Without the Break-Up Fee, other bidding would be limited. Further, because the Break-Up Fee

induced the Buyers to submit a bid that will serve as a minimum or floor bid on which other bidders can rely, the Buyers have provided a benefit to the Selling Debtor Entities' estates by increasing the likelihood that the price at which the Acquired Assets are sold will reflect their true worth. The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Acquired Assets.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

Bidding Procedures

1. The Bidding Procedures, substantially in the form as set forth on Exhibit 1 attached hereto and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern all events relating to the Agreement, any subsequent bids for the Acquired Assets in these cases, and the Auction, if applicable.

2. The Selling Debtor Entities may: (i) determine, in their business judgment, which Qualified Bid is the highest or otherwise best offer, (ii) consult with the representative of any official committee or significant constituent in connection with the Bidding Procedures, and (iii) reject, at any time before entry of an order of the Court approving a Qualified Bid, any bid (other than the Buyers' bid) which, in the Selling Debtor Entities' sole discretion, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Selling Debtor Entities, their estates, or their stakeholders. The Selling Debtor Entities are authorized (x) to terminate the bidding process or the Auction at any time if they determine, in their business judgment, that the bidding process will not maximize the value of the Acquired Assets to be realized by the Selling Debtor Entities' estates and (y) to seek Bankruptcy Court approval of the Agreement. If the Sellers do not receive any Qualified Bids other than the Agreement received from the Buyers or

should the Selling Debtor Entities terminate the bidding process or the Auction as set forth above, the Selling Debtor Entities shall report the same to the Bankruptcy Court and shall proceed with the Sale pursuant to the terms of the Agreement.

Sale Hearing

3. Subject to the Debtors' unilateral right to adjourn, or otherwise not proceed with, the Sale Hearing, which shall not be because of the matters related to the Purported Liens unless there is no Successful Bidder and the Buyer Parent consents in writing to such adjournment for such reason (if there is a Successful Bidder, then no consent is required), the Court shall hold a Sale Hearing on May 21, 2009 at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, at which time the Court shall consider the remainder of the Motion not approved by this order (the "Sale Motion"), and may approve the sale to the Buyers or the Successful Bidder, as the case may be, and confirm the results of the Auction, if any. The Sale Hearing or any portion thereof, such as with respect to the proposed assumption and assignment of a particular executory contract, may be adjourned by the Debtors from time to time without further notice to creditors or parties-in-interest other than by announcement of the adjournment in open court or on the Court's calendar on the date scheduled for the Sale Hearing or any adjourned date.

4. Objections to the Sale Motion, if any, shall be filed and served no later than 4:00 p.m. (prevailing Eastern time) on May 14, 2009 (the "Objection Deadline"). The failure of any objecting person or entity to timely file and serve its objection by the Objection Deadline shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale Motion, the Sale, or the Selling Debtor Entities' consummation and performance of the

Agreement (including the transfer of the Acquired Assets and the Assigned Contracts free and clear of liens, claims, and encumbrances), with the exception of any objection to the conduct of the Auction or the Selling Debtor Entities' selection of the Successful Bidder, which may be made two business days following the end of the Auction or at the Sale Hearing, whichever is earlier.

5. If a non-Debtor counterparty to any Assumed U.S. Contract fails to file and serve an objection to the notice of assumption/assignment authorized in paragraph 10 of this order, in accordance with the instructions in the notice of assumption/assignment, the Court may authorize the assumption and assignment of the applicable Assumed U.S. Contract at the Sale Hearing.

6. In accordance with this Court's prior orders in connection with confirmation of the Debtors' Plan, a non-Debtor counterparty to an Assumed U.S. Contract shall be entitled to recover only the cure amounts listed on the individualized schedule attached as Exhibit 1 to the Buyer Assumption/Assignment Notice (defined below), except that any party who preserved the right to object to cure amounts in accordance with the Debtors' Plan may object to the cure amount asserted by the Debtors, which objection shall be heard at the Sale Hearing unless adjourned in accordance with decretal paragraph 3 hereof. Any counterparty who did not preserve this objection right, or who did preserve such right but does not file an objection to Buyer Assumption/Assignment Notice, shall be barred and enjoined from asserting at the Sale Hearing or otherwise that any other amounts are owing. In addition, should a non-Debtor counterparty to an Assumed U.S. Contract assert that a postpetition default exists which must be cured pursuant to section 365, such counterparty must file an objection as set forth in paragraph 10(b) below.

7

### Bid Protections

7.  The Break-Up Fee is hereby approved.

8.  (a) The Selling Debtor Entities' obligation to pay the Break-Up Fee pursuant to the terms of the Agreement shall survive termination of the Agreement and, until paid in accordance with the Agreement, shall constitute an administrative expense claim in favor of the Buyers. The Selling Debtor Entities shall be authorized to pay the Break-Up Fee to the Buyers in accordance with the terms of the Agreement without further order of the Court. Notwithstanding any other language in this order, the Selling Debtor Entities and the non-Debtor Sellers shall be obligated to pay the Break-Up Fee only if the Buyers are not in material breach of the Agreement.

(b)  For the avoidance of doubt, the existence of the Purported Liens or termination on account thereof is not, and could never be, grounds in any way to trigger, or make the Buyers eligible for, the Break-Up Fee, unless such Purported Liens are enforceable in the local and applicable jurisdictions. Notwithstanding the foregoing, the existence of the Purported Liens is not meant to and does not affect or address the Buyer's right to terminate the Agreement on such grounds; rather subject to the cure rights set forth in section 9.1.4 of the Agreement (i) prior to the Sale Approval Hearing, the Buyer and Seller agree that the Purported Liens give the Buyer the absolute right to terminate the Agreement (with no entitlement to the Break-Up Fee), and (ii) after the Sale Approval Hearing, if such Purported Liens are enforced in the local and applicable jurisdiction, the Purported Liens only then do constitute an Encumbrance (as defined in the Agreement) solely for the purpose of entitling Buyer to terminate the Agreement and entitling the Buyer to the Break-Up Fee and the Sellers make no admission as to the extent, validity, priority, or enforceability of such Purported Liens asserted by the PBGC.

9. To the extent payment of the Break-Up Fee is triggered, the Sellers shall allocate payment of the Break-Up Fee such that the Selling Debtor Entities shall not incur more than their proportionate share of such Break-Up Fee.

Notice

10. Notice of (i) the Motion, including the proposed Sale of the Acquired Assets to the Buyers, (ii) the Sale Hearing, and (iii) the proposed assumption and assignment of the Assumed U.S. Contracts to the Buyers pursuant to the Agreement or to a Successful Bidder shall be good, sufficient, and timely notice, and no other or further notice shall be required, if notice is given as follows:

(a) Notice Of Sale Hearing. Within two business days after entry of this order (the "Mailing Date"), the Debtors (or their agent) shall serve the Motion, the Agreement, the proposed Sale Approval Order, the Bidding Procedures, and a copy of this order by overnight mail, postage prepaid, upon (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases, (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) counsel for the agent under the Debtors' postpetition credit facility, (vi) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (vii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Acquired Assets, (viii) all United States federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (ix) all counter-parties to the Assigned Contracts, (x) the United States Attorney's office, (xi) the United States Department of Justice, (xii) the Securities and Exchange Commission, (xiii) the Internal Revenue Service, and (xiv) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures (Docket No. 2883), as amended from time to time (collectively, the "Case Management Orders")).

(b) Assumption/Assignment Notice For Buyers. At least 20 days prior to the Sale Hearing, the Selling Debtor Entities shall file with this Court and serve on all non-Debtor counterparties to the Assumed U.S. Contracts a notice (the "Buyer Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as Exhibit 2, identifying the Buyers as the parties which will be assigned all of the Selling Debtor Entities' right, title, and interest in the Assumed U.S. Contracts, subject to completion of the bidding process provided under the Bidding Procedures. The non-Debtor counterparty to an

9

Assumed U.S. Contract shall have ten days from the service of the Buyer Assumption/Assignment Notice to object to the proposed assumption and assignment to the Buyers, including an objection on account of a postpetition default, and must state in its objection, with specificity, the legal and factual basis of its objection. If no objection is timely received, the non-Debtor counterparty to the Assumed U.S. Contract shall be deemed to have consented to the assumption and assignment of the Assumed U.S. Contract to the Buyers and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(c) <u>Assumption/Assignment Notice For A Qualified Bidder</u>. To the extent that on the business day following the Bid Deadline, the Selling Debtor Entities shall cause a notice (the "Qualified Bidder Assumption/Assignment Notice"), substantially in the form of the notice attached hereto as <u>Exhibit 3</u>, to be sent to each non-Debtor party to an Assumed U.S. Contract identifying all Qualified Bidders. Each non-Debtor counterparty to an Assumed U.S. Contract shall have until two days prior to the Sale Hearing to object to the proposed assumption and assignment to any Qualified Bidder and must state in its objection, with specificity, the legal and factual basis of its objection. An objection to the assumption and assignment of an Assumed U.S. Contract to any Qualified Bidder shall be entertained only if such objection raises issues unique to a Qualified Bidder that could not have been brought earlier in response to the previously-served Buyer Assumption/Assignment Notice. If no objection is timely received (which objection raises issues unique to the Qualified Bidder), the non-Debtor party to the Assumed U.S. Contract shall be deemed to have consented to the assumption and assignment of the Assumed U.S. Contract to the Buyers or any Qualified Bidder and shall be forever barred from asserting any objection with regard to the assumption and assignment.

(d) <u>Publication Notice</u>. Within five business days following entry of this order, or as soon as reasonably practicable thereafter, the Debtors shall cause notice substantially in the form of the notice attached hereto as <u>Exhibit 4</u> to be published in the <u>Wall Street Journal</u> (U.S. and International Editions), the <u>Financial Times</u>, and <u>China Automotive News</u>.

11. Notwithstanding rules 6004(h), 6006(d), 7062, or 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any other Bankruptcy Rule or rule 62(a) of the Federal Rules of Civil Procedure, this order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of this order.

12. To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or in any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with, or derogates from the provisions of this order, the provisions of this order shall

10

control.  The Debtors' obligations under this order and the portions of the Agreement pertaining to the Break-Up Fee shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon Debtors and the reorganized or reconstituted debtors, as the case may be, after the effective date of the confirmed plan or plans in the Debtors' cases.

        13.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

Dated:   New York, New York
           April 30, 2009

                                                  /s/Robert D. Drain
                                                  UNITED STATES BANKRUPTCY JUDGE