# DELPHI CORPORATION
# BRAKES AND RIDE DYNAMICS BUSINESSES BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale (the "Sale") of substantially all of the assets primarily used in the Selling Debtor Entities' brakes business (the "Brakes Business") and ride dynamics business (the "Ride Dynamics Business," and together with the Brakes Business, the "Sale Businesses") of Delphi Corporation ("Delphi") and certain of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the "Selling Debtor Entities").[1]  On March 30, 2009, the Sellers executed that certain Master Sale And Purchase Agreement (the "Agreement") with BeijingWest Industries Co., Ltd. ("Buyer Parent") and certain of its affiliates (together with Buyer Parent, the "Buyers").  The transaction contemplated by the Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court (as defined herein) pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code"), and certain other closing conditions.

On March 31, 2009, the Selling Debtor Entities and certain of their affiliates (collectively, the "Debtors") filed the Motion For Order Under 11 U.S.C. §§ 363, 365, 1123, And 1146 And Fed. R. Bankr. P. 2002, 6004, 6006, And 9014 (A) (I) Approving Bidding Procedures (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date And (B) Authorizing And Approving (I) Sale Of Debtors' Assets Comprising Debtors' Brakes And Ride Dynamics Businesses Free And Clear Of Liens, Claims, And Encumbrances, (II) Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases, And (III) Assumption Of Certain Liabilities (the "Sale Motion").  On April [__] 2009, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an Order Under 11 U.S.C. §§ 363 And 1123 And Fed. R. Bankr. P. 2002 And 9014 (I) Approving Bidding Procedures, (II) Granting Certain Bid Protections, (III) Approving Form And Manner Of Sale Notices, And (IV) Setting Sale Hearing Date In Connection With Sale Of Brakes And Ride Dynamics Businesses (the "Bidding Procedures Order ").  The Bidding Procedures Order set May 21, 2009 as the date when the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to authorize the Selling Debtor Entities to enter into the Agreement.  All capitalized terms used but not otherwise defined in these Bidding Procedures have the meanings ascribed to them in the Agreement.

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which bidders and bids become Qualified Bidders and Bids, respectively, the coordination of diligence efforts among bidders, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined herein), and the ultimate selection of the Successful Bidder(s) (as defined herein).  The Debtors intend to consult with, among others, the official committee of unsecured creditors (the "Creditors' Committee") throughout the Bidding

---

[1] Under the Agreement, attached as Exhibit D to the Sale Motion, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC, and Delphi Technologies, Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-Debtor affiliates are collectively referred to as the "Sellers."

Process. In the event that the Debtors and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.

### Assets To Be Sold

The assets proposed to be sold include substantially all of the assets primarily used in the Sale Businesses (the "Acquired Assets").

### "As Is, Where Is"

The sale of the Acquired Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except, with respect to the Buyers, to the extent set forth in the Agreement and, with respect to a Successful Bidder, to the extent set forth in the relevant purchase agreement of such Successful Bidder approved by the Bankruptcy Court.

### Free Of Any And All Encumbrances

Except, with respect to the Buyers, to the extent otherwise set forth in the Agreement and, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder, all of the Sellers' right, title, and interest in and to the Acquired Assets, or any portion thereof, to be acquired will be sold free and clear of all Encumbrances except Permitted Encumbrances (as such terms are defined in the Agreement), and such Encumbrances will attach to the net proceeds of the sale of such Acquired Assets.

### Participation Requirements

Any person who wishes to participate in the bidding process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder, other than the Buyers, must deliver (unless previously delivered) to the Selling Debtor Entities and their counsel at the addresses provided below, unless otherwise ordered by the Bankruptcy Court or as otherwise determined by Delphi in its sole discretion:

(a) An executed confidentiality agreement in form and substance satisfactory to Delphi;

(b) Current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Assets, including a portion of the Acquired Assets, current audited financial statements of the equity holders of the Potential Bidder, who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement acceptable to the Sellers and their financial advisors; and

(c) A preliminary (non-binding) proposal reflecting: (i) the purchase price range, (ii) any assets and/or equity interests expected to be excluded, (iii) the structure and financing

of the transaction, (iv) any anticipated regulatory approvals required to close the transaction, (v) the anticipated time frame and any anticipated impediments for obtaining such approvals, (vi) any additional conditions to closing that the qualified bidder may wish to impose, and (vii) the nature and extent of any additional due diligence that the qualified bidder may wish to conduct and the date by which such due diligence would be completed.

A Potential Bidder who satisfies the requirements above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Sale if selected as a Successful Bidder, and who Delphi determines in its sole discretion is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Sale within the time frame provided by the Agreement, will be deemed a "Qualified Bidder."  Notwithstanding the foregoing, the Buyers will be deemed Qualified Bidders for purposes of the Bidding Process.  As promptly as practicable after a Potential Bidder delivers all of the materials required above, Delphi will determine, and will notify the Potential Bidder, whether such Potential Bidder is a Qualified Bidder.  At the same time that Delphi notifies the Potential Bidder that it is a Qualified Bidder, Delphi will then promptly allow the Qualified Bidder to begin to conduct due diligence with respect to the Acquired Assets and the Sale Businesses as described below.

## Due Diligence

Delphi will afford each Qualified Bidder due diligence access to the Acquired Assets and the Sale Businesses.  Due diligence access may include such management presentations as may be scheduled by Delphi, access to data rooms, on site inspections, and such other matters which a Qualified Bidder may request and as to which the Sellers, in their sole discretion, may agree.  Delphi will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  Any additional due diligence will not continue after the Bid Deadline.  Delphi may, in its discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.  Neither Delphi nor any of its Affiliates (nor any of their respective representatives) will be obligated to furnish any information relating to Acquired Assets and the Sale Businesses to any Person other than to Qualified Bidders who make an acceptable preliminary proposal.

## Bid Deadline

A Qualified Bidder who desires to make a bid must deliver the Required Bid Documents to:  Delphi Automotive Systems LLC, 5725 Delphi Drive, Troy, Michigan 48098 Attention: Steve Olsen, Mergers & Acquisitions, with copies to:  (i) Sellers' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60601-1285, Attention: Ron E. Meisler and Allison K. Verderber Herriott, (ii) Delphi's in-house counsel, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Attn: Deputy General Counsel – Transactional & Restructuring, (iii) Delphi's financial advisor, W.Y. Campbell & Company, One Woodward Avenue, 26th Floor, Detroit, Michigan 48226, Attention: Clifton Roesler, (iv) counsel to the Creditors' Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022,

Attention: Mark A. Broude, and (v) counsel for the agent under Delphi's postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attention: Donald S. Bernstein and Brian Resnick, so as to be received not later than 11:00 a.m. (prevailing Eastern time) on **May 11, 2009** (the "Bid Deadline"). Delphi may extend the Bid Deadline once or successively, but is not obligated to do so. If Delphi extends the Bid Deadline, it will promptly notify all Qualified Bidders of such extension. As soon as reasonably practicable following receipt of each Qualified Bid, the Sellers will deliver complete copies of all items and information enumerated in the section below entitled "Bid Requirements" to counsel for the official committee of equity security holders (the "Equity Committee").

### Bid Requirements

All bids must include the following documents (the "Required Bid Documents"):

(a)    A letter stating that the bidder's offer is irrevocable until two Business Days after the closing of the Sale of the Acquired Assets.

(b)    An executed copy of the Agreement, together with all schedules and exhibits to this Agreement marked (a "Marked Agreement") to show those amendments and modifications to such Agreement and schedules that the Qualified Bidder proposes, including the Preliminary Purchase Price (as defined in the Agreement).

(c)    A good faith deposit (the "Good Faith Deposit") in the form of a certified bank check from a U.S. bank or by wire transfer (or other form acceptable to Delphi in its sole discretion) payable to the order of Delphi (or such other party as the Sellers may determine) in an amount equal to $20 million.

(d)    Written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that is satisfactory to the Sellers and their advisors.

### Qualified Bids

A bid will be considered only if the bid:

(a)    Is not conditioned on obtaining financing or on the outcome of unperformed due diligence by the bidder.

(b)    Proposes a transaction on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that Delphi determines, in its sole discretion, are similar to and are not materially more burdensome or conditional than those contained in the Agreement and that has a value, either individually or, when evaluated in conjunction with any other Qualified Bid, greater than or equal to the sum of the Preliminary Purchase Price, plus the amount of the Break-Up Fee, plus the aggregate amount of the China Advance Payment, plus: (i) in the case of the initial Qualified Bid, $1,000,000, and (ii) in the case of any subsequent Qualified Bids, $500,000 over the immediately preceding highest Qualified Bid.

4

(c)     Is not conditioned upon (i) any bid protections, such as a break-up fee, termination fee, expense reimbursement, or similar type of payment and (ii) such bid being deemed the Successful Bid by the Sellers.

(d)     Includes an acknowledgement and representation that the bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Acquired Assets prior to making its offer, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Assets in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement.

(e)     Include a commitment to consummate the purchase of the Acquired Assets (including the receipt of any required Governmental Approvals) within not more than 15 days after entry of the Sale Approval Order, or in the case of any governmental approvals, 60 days after entry of such order.

(f)     Is received by the Bid Deadline.

A bid received from a Qualified Bidder will constitute a "Qualified Bid" only if it includes all of the Required Bid Documents and meets all of the above requirements; provided, however, the Sellers will have the right, in their sole discretion, to entertain bids for the Acquired Assets that do not conform to one or more of the requirements specified in subparagraphs (a)-(f) of this "Qualified Bids" section, and may deem such bids to be Qualified Bids, including bids for a portion of the Acquired Assets.  Notwithstanding the foregoing, the Buyer Parent will be deemed Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.  A Qualified Bid will be valued based upon factors such as the net value provided by such bid and the likelihood and timing of consummating such transaction.  Each Qualified Bid other than that of the Buyers is referred to herein as a "Subsequent Bid."

If Delphi does not receive any Qualified Bids other than the Agreement received from the Buyer Parent, the Selling Debtor Entities will report the same to the Bankruptcy Court and will proceed with the Sale pursuant to the terms of the Agreement.

**Bid Protection**

Recognizing the Buyer Parent's expenditure of time, energy, and resources, the Selling Debtor Entities have agreed to provide certain bidding protections to the Buyer Parent. Specifically, the Selling Debtor Entities have determined that the Agreement furthers the goals of the Bidding Procedures by setting a floor which all other Qualified Bids must exceed.  As a result, the Selling Debtor Entities have agreed that if Delphi does not close with the Buyer Parent because the Sellers consummate an Alternative Transaction and the Buyer Parent is not in breach of the Agreement or the Bidding Procedures, Delphi will, in certain circumstances, pay to the

Buyer Parent a Break-Up Fee. The payment of the Break-Up Fee will be governed by the provisions of the Agreement and the Bidding Procedures Order.

### Auction

If the Delphi receives one or more Qualified Bids in addition to the Agreement, Delphi will conduct an auction (the "Auction") of the Acquired Assets and the Sale Businesses upon notice to all Qualified Bidders who have submitted Qualified Bids at **11:00 a.m.** (prevailing Eastern time) on **May 15, 2009** at the offices of Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 or Four Times Square, New York, New York 10036 or such later time or other place as Delphi will notify all Qualified Bidders who have submitted Qualified Bids (but in no event later than the second Business Day prior to the Sale Hearing), in accordance with the following procedures:

(a)    Only Delphi, the Buyer Parent, any representative of the Creditors' Committee and the Equity Committee, any representative of Delphi's secured lenders under their postpetition credit facility (and the legal and financial advisers to each of the foregoing), and any Qualified Bidder who has timely submitted a Qualified Bid will be entitled to attend the Auction, and only the Buyer Parent and other Qualified Bidders will be entitled to make any subsequent Qualified Bids at the Auction.

(b)    At least two Business Days prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Delphi whether it intends to participate in the Auction and at least one Business Day prior to the Auction, Delphi will provide copies of the Qualified Bid or combination of Qualified Bids which Delphi believes is the highest or otherwise best offer to all Qualified Bidders who have informed Delphi of their intent to participate in the Auction. Notwithstanding such determination, Delphi reserves the right, in their sole discretion, to determine which bid, or subsequent bid, is the Successful Bid, following the conclusion of the Auction based upon a number of factors and other considerations.

(c)    All Qualified Bidders will be entitled to be present for all Subsequent Bids with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction.

(d)    Delphi may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids), provided that such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, the Bankruptcy Rules, General Order M-331 issued by the United States Bankruptcy Court for the Southern District of New York, or any order of the Bankruptcy Court entered in connection herewith.

(e)    Bidding at the Auction will begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids and continue in minimum increments of at least

$500,000 higher than the previous bid or bids.  The Auction will continue in one or more rounds of bidding and will conclude after each Qualified Bidder has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids.  For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Buyers), Delphi may give effect to any Break-Up Fee that may be payable to the Buyer Parent under the Agreement as well as any assets and/or equity interests to be retained by any Seller.

### Selection Of Successful Bid

At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their financial advisors, will:  (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the sale, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets and the Business received at the Auction (the "Successful Bid(s)" and the bidder(s) making such bid, the "Successful Bidder(s)").

The Sellers will sell the Acquired Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing.  If, after an Auction in which the Buyer Parent:  (i) has bid an amount in excess of the consideration presently provided for in the Agreement with respect to the transactions contemplated under the Agreement and (ii) is the Successful Bidder, it will, at the Closing under the Agreement, pay, in full satisfaction of the Successful Bid, an amount equal to:  (a) the amount of the Successful Bid less (b) the Break-Up Fee.

The Selling Debtor Entities' presentation of a particular Qualified Bid to the Court for approval does not constitute the Sellers' acceptance of the bid.  Delphi will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.

### The Sale Hearing

The Sale Hearing will be held before the Honorable Judge Robert Drain on May 21, 2009, at 10:00 a.m. (prevailing Eastern time) in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, but may be adjourned or rescheduled in Delphi's sole discretion, subject to Bankruptcy Court approval and the terms of the Bidding Procedures Order, as necessary, without further notice other than an announcement of the adjourned date at the Sale Hearing.  If Delphi does not receive any Qualified Bids (other than the Qualified Bid of the Buyer Parent), the Selling Debtor Entities will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Acquired Assets to the Buyer Parent following entry of the Sale Order.  If Delphi does receive additional Qualified Bids, then, at the Sale Hearing, the Selling Debtor Entities will seek approval of the Successful Bid(s) as well as the second highest or best Qualified Bid(s) (the

"Alternate Bid(s)," and such bidder(s), the "Alternate Bidder(s)").  Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of:  (i) failure of a condition precedent beyond the control of either Delphi or the Successful Bidder(s) or (ii) a breach or failure to perform on the part of such Successful Bidder(s), then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and Delphi will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such alternate Bidder(s) without further order of the Bankruptcy Court.

### Return Of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders (except for the Successful Bidder) will be held in an interest-bearing escrow account and all Qualified Bids will remain open (notwithstanding Bankruptcy Court approval of a sale pursuant to the terms of one or more Successful Bids by one or more Qualified Bidders) until two Business Days following the closing of the Sale (the "Return Date").  Notwithstanding the foregoing, the Good Faith Deposit, if any, submitted by the Successful Bidder(s), together with interest thereon, will be applied against the payment of the Purchase Price upon closing of the Sale to the Successful Bidder(s).  If a Successful Bidder breaches its obligations under the Bidding Procedures Order or any agreement entered into with respect to its Successful Bid or fails to consummate a sale because of a breach or failure to perform on the part of such Successful Bidder, Delphi will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit will irrevocably become property of Delphi.  On the Return Date, Delphi will return the Good Faith Deposits of all other Qualified Bidders, together with the accrued interest thereon.

### Reservations Of Rights

The Sellers, after consultation with the agents for their secured lenders and the Committee:  (i) may determine which Qualified Bid, if any, is the highest or otherwise best offer and (ii) may at any time reject any bid (other than the Buyers Parent's initial bid) that is:  (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the Sale, or (c) contrary to the best interests of the Sellers, their estates, and their stakeholders as determined by the Delphi in its sole discretion.