UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
            In re                           :       Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :       Case No. 05-44481 (RDD)
                                            :
                        Debtors.            :       (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363, 365, 1123, AND 1146 AND FED. R.
BANKR. P. 2002, 6004, 6006, AND 9014 AUTHORIZING AND APPROVING
(I) SALE OF DEBTORS' ASSETS COMPRISING DEBTORS' BRAKES AND
RIDE DYNAMICS BUSINESSES FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND
(III) ASSUMPTION OF CERTAIN LIABILITIES

("BRAKES AND RIDE DYNAMICS SALE APPROVAL ORDER")

Upon the motion, dated March 31, 2009 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for orders pursuant to 11 U.S.C. §§ 363, 365,

1123, and 1146 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 (a)(i) approving the bidding

procedures, (ii) granting certain bid protections, (iii) approving the form and manner of sale

notices, and (iv) setting a date for the sale hearing (the "Sale Hearing") and (b) authorizing and

approving (i) the sale (the "Sale") of certain of the Selling Debtor Entities' (defined below) assets

(the "Acquired Assets") comprising substantially all of the assets primarily used in the Selling

Debtor Entities' brakes business (the "Brakes Business") and ride dynamics business (the "Ride

Dynamics Business," together with the "Brakes Business, the "Sale Businesses"), free and clear

of liens, claims, and encumbrances, to BeijingWest Industries Co., Ltd. and certain of its

affiliates (the "Buyers") pursuant to the Master Sale And Purchase Agreement, dated March 30,

2009[1] (such Master Sale and Purchase Agreement, as amended, including all schedules, exhibits,

and related agreements and documents, the "Agreement," a copy of which (without such

schedules, exhibits, and related agreements and documents, other than Schedule 3.6.1 of the

Agreement) is attached hereto as <u>Exhibit 1</u>), by and between the Buyers and Delphi and certain

of its affiliates, including certain affiliated chapter 11 Debtors as set forth in the Agreement (the

"Selling Debtor Entities"),[2] or to the Successful Bidder (as hereinafter defined) submitting a

higher or otherwise better bid, (ii) the assumption and assignment of certain prepetition

executory contracts and unexpired leases as defined in the Agreement (the "Assumed U.S.

Contracts") and the assignment of certain postpetition executory contracts and unexpired leases

as defined in the Agreement (the "Postpetition Contracts," and collectively with the Assumed

U.S. Contracts, the "Assigned Contracts,") to the Buyers or to the party submitting the highest or

otherwise best bid (the "Successful Bidder"), and (iii) the assumption of certain liabilities as

defined in the Agreement (the "Assumed Liabilities") by the Buyers or the Successful Bidder;

and the Court having entered an order on May 1, 2009 (the "Bidding Procedures Order") (Docket

No. 16588) (a) approving the Bidding Procedures, (b) approving the break-up fee, (c) approving

the form and manner of sale notices, and (d) setting the Sale Hearing; and the Sale Hearing

having been held on May 21, 2009, at which time all interested parties were offered an

opportunity to be heard with respect to the Motion; and the Court having reviewed and

---

[1]    On May 20, 2009, the Master Sale And Purchase Agreement was amended pursuant to the First Amendment To
Master Sale And Purchase Agreement Among Delphi Corporation And BeijingWest Industries Co., Ltd.

[2]    Under the Agreement, the Selling Debtor Entities are Delphi Corporation, Delphi Automotive Systems LLC,
and Delphi Technologies, Inc.  Certain assets will be sold under the Agreement by non-Debtor affiliates of the
Selling Debtor Entities listed on Schedule 1 to the Agreement.  The Selling Debtor Entities and the selling non-
Debtor affiliates are collectively referred to as the "Sellers."

considered the Motion and the arguments of counsel made and the evidence proffered or adduced

at and on the record of the Sale Hearing and there being no objections to the Motion that have

not been withdrawn; and it appearing that the relief requested in the Motion is in the best

interests of the Selling Debtor Entities, their estates, their stakeholders, and all other parties-in-

interest; and after due deliberation thereon, and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction over the Motion and the transactions

contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the Motion

in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections

363, 365, 1123, and 1146 of 11 U.S.C. §§ 101-1330, as amended and in effect on October 8,

2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014.

C.    The objection filed by Tokico (USA), Inc. found at docket number 16611

was withdrawn with prejudice at docket number 16626.

D.    As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of Debtors' counsel at the Sale Hearing, (i) proper, timely,

adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, the Bid Deadline, the

Auction, and the assumption and assignment of the Assumed U.S. Contracts, and the Cure

Amounts as approved herein has been provided in accordance with 11 U.S.C. §§ 102(l), 363, and

365 and Fed. R. Bankr. P. 2002, 6004, 6006, and 9014 and such notice was good, sufficient, and

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when and where appropriate.  See Fed. R. Bankr. P. 7052.

appropriate under the circumstances and (ii) no other or further notice of the Motion, the Sale

Hearing, the Sale, the Bid Deadline, the Auction, or the assumption and assignment of the

Assumed U.S. Contracts as provided herein is necessary or shall be required.

E.      As demonstrated by (i) the testimony and other evidence proffered or

adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale

Hearing, the Selling Debtor Entities have marketed the Acquired Assets and conducted the sale

process in compliance with the Bidding Procedures set forth in the Motion and in a manner that

afforded a full, fair, and reasonable opportunity for any party to make a higher or better offer to

purchase the Acquired Assets.

F.      The Selling Debtor Entities (i) have full power and authority to execute

the Agreement and all other applicable documents contemplated thereby, and the transfer and

conveyance of the Acquired Assets by the Selling Debtor Entities has been duly and validly

authorized by all necessary action of the Selling Debtor Entities, (ii) have all of the power and

authority necessary to consummate the transactions contemplated by the Agreement, and (iii)

have taken all action necessary to authorize and approve the Agreement and to consummate the

transactions contemplated thereby, and no consents or approvals, other than those expressly

provided for in the Agreement, are required for the Selling Debtor Entities to consummate such

transactions.

G.      The Selling Debtor Entities have demonstrated (i) good, sufficient, and

sound business purposes and justification for the Sale because, among other things, the Selling

Debtor Entities and their advisors diligently and in good faith analyzed other available options in

connection with the disposition of the Acquired Assets and determined that (a) the terms and

conditions set forth in the Agreement, (b) the transfer to Buyers of the Acquired Assets pursuant

4

to the terms of the Agreement, and (c) the Purchase Price agreed to as reflected in the Agreement are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Acquired Assets and (ii) that compelling circumstances for the Sale pursuant to 11 U.S.C. § 363(b) prior to the effective date of the Debtors' Confirmed Plan, as it may be modified, exist because, among other things, absent the Sale the value of the Acquired Assets will be substantially diminished.

H.    The terms of the Agreement are fair and reasonable in all respects.

I.    A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Buyers, (iii) counsel for the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee"), (iv) counsel for the official committee of equity security holders appointed in these chapter 11 cases, (v) all entities known to have expressed an interest in a transaction with respect to the Acquired Assets during the past six months, (vi) all entities known to have asserted any Interests and/or Claims (as defined below) in, upon, or against the Acquired Assets, (vii) all United States federal, state, and local regulatory or taxing authorities or recording offices, including but not limited to environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (viii) all counterparties to Assigned Contracts, (ix) the United States Attorney's office, (x) the United States Department of Justice, (xi) the Securities and Exchange Commission, (xii) the Internal Revenue Service, (xiii) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

5

Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")),

and (xiv) such other entities as are required to be served with notices under the Supplemental

Case Management Order.

J.    The Buyers are not "insiders" of any of the Debtors as that term is defined

in 11 U.S.C. § 101(31).

K.    The Agreement was negotiated, proposed, and entered into by the Selling

Debtor Entities and the Buyers without collusion, in good faith, and from arm's-length

bargaining positions.  Neither the Selling Debtor Entities nor the Buyers have engaged in any

conduct that would cause or permit the Sale or any part of the transactions contemplated by the

Agreement to be avoidable under 11 U.S.C. § 363(n).

L.    The Buyers are good faith purchasers, as that term is used in the

Bankruptcy Code, including but not limited to  11 U.S.C. § 363(m) or in similar applicable state

law, and, as such, are entitled to all of the protections afforded thereby.  The Buyers will be

acting in good faith within the meaning of 11 U.S.C. § 363(m) in closing the transactions

contemplated by the Agreement at all times after the entry of this order.

M.    The consideration provided by the Buyers for the Acquired Assets

pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for

the Acquired Assets, (iii) will provide a greater recovery for the Selling Debtor Entities'

stakeholders than would be provided by any other practical available alternative, and

(iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code

and under the laws of the United States, any state, territory, or possession thereof, or the District

of Columbia.

N.      The Sale must be approved promptly to preserve the viability of the Sale

Businesses as going concerns. The Sale is consistent with and is contemplated under the terms of

the First Amended Plan Of Reorganization Of Delphi Corporation And Certain Affiliates,

Debtors And Debtors-In-Possession, As Modified (as amended, the "Plan") confirmed by order

of this Court on January 25, 2008 (Docket No. 12359), and, accordingly, constitutes a transfer to

which section 1146(c) of the Bankruptcy Code applies.

O.      The transfers of the Acquired Assets to the Buyers will be legal, valid, and

effective transfers of the Acquired Assets and shall vest the Buyers with all right, title, and

interest of the Selling Debtor Entities to the Acquired Assets free and clear of any and all liens,

claims, interests, and encumbrances (including, but not limited to, Encumbrances as defined in

the Agreement, but excluding Permitted Encumbrances and Assumed Liabilities, each as defined

in the Agreement) of any type whatsoever (whether known or unknown, secured or unsecured, in

the nature of setoff or recoupment, choate or inchoate, filed or unfiled, scheduled or unscheduled,

noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed,

contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-

material, disputed or undisputed, whether arising prior to or subsequent to the commencement of

the chapter 11 cases, and whether imposed by agreement, understanding, law, equity, or

otherwise, including claims otherwise arising under doctrines of de facto merger or successor

liability), including but not limited to those (i) that purport to give to any party a right or option

to effect any forfeiture, modification, right of first refusal, or termination of the Selling Debtor

Entities' or the Buyers' interest in the Acquired Assets, or any similar rights, and (ii) relating to

taxes arising under or out of, in connection with, or in any way relating to the operation of the

Sale Businesses prior to the Closing Date, including the transfer of the Acquired Assets to the

7

Buyers (all such liens, claims, interests, and encumbrances listed herein, the "Interests and/or Claims").

P.      If the Sale of the Acquired Assets with respect to the Selling Debtor Entities were not free and clear of all Interests and/or Claims as set forth in the Agreement and this order, or if the Buyers would, or in the future could, be liable for any of the Interests and/or Claims as set forth in the Agreement and this order, the Buyers would not have entered into the Agreement and would not consummate the Sale or the transactions contemplated by the Agreement, thus adversely affecting the Selling Debtor Entities, their estates, and their stakeholders.

Q.      The Selling Debtor Entities may sell their interests in the Acquired Assets free and clear of all Interests and/or Claims because, in each case, one or more of the standards set forth in 11 U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests and/or Claims who did not object to the Sale, or withdrew their objections to the Sale, are deemed to have consented to the Sale pursuant to 11 U.S.C. § 363(f)(2), and all holders of Interests and/or Claims are adequately protected by having their Interests and/or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the property against or in which they claim an Interest and/or assert a Claim with the same priority, validity, force, and effect as such Interests and/or Claims attached to such property immediately before the closing of the Sale.

R.      The Selling Debtor Entities have demonstrated that it is an exercise of their sound business judgment to assume and/or assign the Assigned Contracts, as applicable, to the Buyers in connection with the consummation of the Sale, and the assumption and/or assignment of the Assigned Contracts is in the best interests of the Selling Debtor Entities, their estates, and their creditors.  The Assigned Contracts being assigned to, and the liabilities being

8

assumed by, the Buyers are an integral part of the Acquired Assets being purchased by the

Buyers and, accordingly, such assumption and/or assignment of Assigned Contracts and

liabilities is reasonable and enhances the value of the Selling Debtor Entities' estates.

S.      The Selling Debtor Entities have (i) cured, or have provided adequate

assurance of cure, of any default existing prior to the Closing of the Sale under all of the

Assigned Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(A), and (ii) provided

compensation or adequate assurance of compensation to any party for any actual pecuniary loss

to such party resulting from a default prior to the date hereof under any of the Assigned

Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B).  The Buyers shall have no further

obligations to make any payment or provide any performance to cure any defaults or breaches

arising on or before the closing of the assignment of the Assigned Contracts.

T.      The Buyers have provided adequate assurance of their future performance

of and under the Assigned Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and

365(f)(2)(B).  Pursuant to 11 U.S.C. § 365(f), the Assigned Contracts to be assumed and

assigned under the Agreement shall be assigned and transferred to, and remain in full force and

effect for the benefit of, the Buyers notwithstanding any provision in the contracts or other

restrictions prohibiting their assignment or transfer.

U.      Approval of the Agreement and consummation of the Sale of the Acquired

Assets and assignment of the Assigned Contracts at this time are in the best interests of the

Selling Debtor Entities, their creditors and other stakeholders, their estates, and other parties-in-

interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED THAT:

General Provisions

1.        The Motion is GRANTED and APPROVED in all respects.

Approval Of The Agreement

2.        Pursuant to 11 U.S.C. § 363(b), the Agreement and all of the terms and conditions thereof are hereby approved.

3.        Pursuant to 11 U.S.C. § 363(b), the Selling Debtor Entities are authorized,[4] but not directed, to perform their obligations under the Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Agreement and the Bidding Procedures as set forth in the Bidding Procedures Order.

4.        Each of the Debtor signatories to the Agreement is authorized, but not directed, to take all actions necessary or appropriate to effectuate the terms of this order.

5.        The Selling Debtor Entities are authorized, but not directed, to execute and deliver, and empowered to perform under, consummate, and implement, the Agreement, together with all additional instruments and documents as may be reasonably necessary or desirable to implement the Agreement, and to take all further actions as may be requested by the Buyers for the purpose of assigning, transferring, granting, conveying, and conferring to the Buyers or reducing to possession the Acquired Assets, the Assigned Contracts, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Agreement.

---

[4]       As used in this order, "authorized" means to the extent authority under the Bankruptcy Code or from this Court is necessary.

10

6.        This order and the Agreement shall be binding in all respects upon (i) all Selling Debtor Entities, all creditors and other stakeholders (whether known or unknown) of the Debtors, all affiliates and subsidiaries of the Selling Debtor Entities (including the reorganized or reconstituted Debtors after the effective date of the Plan), and any successor to or assignee of any or all of the Debtors, including, but not limited to, any subsequent trustee appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection and (ii) the Buyers.  To the extent that any provision of this order or the Bidding Procedures Order is inconsistent with the terms of the Agreement, this order or the Bidding Procedures Order shall govern, as applicable; and this order governs over any inconsistencies with the Bidding Procedures Order.

7.        At any time after entry of this order, (1) the Buyer may not refuse to close or terminate the Agreement by reason of the existence of the PBGC Purported Liens (as defined in the Agreement) unless the PBGC Purported Liens (as defined in the Agreement) have been enforced in any local and applicable jurisdiction, and (2) if any of the PBGC Purported Liens (as defined in the Agreement) are enforced in any local and applicable jurisdiction, only then do such PBGC Purported Liens constitute an Encumbrance (as defined in the Agreement) entitling the Buyer, regardless of materiality of such Encumbrance, by written notice to Delphi within thirty (30) days after the date  the Buyer becomes aware of such enforcement, to refuse to Close under Section 7.2 of the Agreement and/or to terminate the Agreement (subject to section 9.1.4 of the Agreement) on account of such Encumbrance and entitling the Buyer to the Break-Up Fee, and neither the Buyer nor the Sellers makes any admission as to the extent, validity, priority, or enforceability of the PBGC Purported Liens.

11

8.    The terms and provisions of the Agreement and this order shall be binding in all respects upon the Selling Debtor Entities, their estates, and their stakeholders, the Buyers and their affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all entities asserting an Interest and/or Claim against or in any of the Acquired Assets to be sold to any of the Buyers pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee or other fiduciary such terms and provisions likewise shall be binding.

9.    The Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; <u>provided</u> that any such modification, amendment, or supplement is disclosed to the Creditors' Committee and does not have a material adverse effect on the Selling Debtor Entities' estates in the good faith business judgment of the Selling Debtor Entities.

<u>Sale And Transfer Of The Acquired Assets</u>

10.    Except as expressly permitted or otherwise specifically provided for in the Agreement or this order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Agreement, the Selling Debtor Entities' right, title, and interest in the Acquired Assets shall be transferred to and vested in the Buyers free and clear of all Interests and/or Claims, with all such Interests and/or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force, and effect that they had as against the Acquired Assets immediately before such transfer, subject to any claims and defenses the Selling Debtor Entities may possess with respect thereto.

11.    The transfer of the Acquired Assets to the Buyers pursuant to the Agreement constitutes a legal, valid, and effective transfer of the Acquired Assets, and shall vest the Buyers with all right, title, and interest of the Selling Debtor Entities in and to the Acquired Assets free and clear of all Interests and/or Claims of any kind or nature whatsoever.

12.    If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests and/or Claims against or in the Acquired Assets shall not have delivered to the Selling Debtor Entities prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all Interests and/or Claims that the person or entity has with respect to the Acquired Assets, or otherwise, then (a) the Selling Debtor Entities are hereby authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Buyers are hereby authorized to file, register, or otherwise record a certified copy of this order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and/or Claims in the Acquired Assets of any kind or nature whatsoever.

13.    This order (a) shall be effective as a determination that, upon the Closing of the Sale, all Interests and/or Claims of any kind or nature whatsoever existing as to the Selling Debtor Entities or the Acquired Assets of the Selling Debtor Entities prior to the Closing of the Sale have been unconditionally released, discharged, and terminated (other than any surviving obligations under the Agreement), and that the conveyances described herein have been effected and (b) shall be binding upon and shall govern the acts of all entities including, but not limited to, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, United States governmental departments

13

(whether federal or state), secretaries of state, federal, state, and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register, or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any of the Acquired

Assets.

14.    Except as expressly provided in the Agreement, all persons and entities,

including, but not limited to, all debt security holders, equity security holders, United States

Federal, state, and local governmental, tax, and regulatory authorities, lenders, trade creditors,

and other stakeholders, holding Interests and/or Claims of any kind or nature whatsoever against

or in the Selling Debtor Entities or the Acquired Assets (whether legal or equitable, secured or

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising

under or out of, in connection with, or in any way relating to, the Sale Businesses, the Acquired

Assets, the operation of the Sale Businesses by the Selling Debtor Entities prior to the Closing of

the Sale, or the transfer of the Acquired Assets to the Buyers, hereby are forever barred, estopped,

and permanently enjoined from asserting against the Buyers, their successors or assigns, their

property, or the Acquired Assets, such persons' or entities' Interests and/or Claims.  Nothing in

this order or the Agreement releases or nullifies any Liability to any United States federal, state,

or local governmental agency under any environmental laws and regulations that any entity

would be subject to as owner or operator of any Acquired Assets after the date of entry of this

order.  Nothing in this order or the Agreement bars, estops, or enjoins any United States federal,

state, or local governmental agency from asserting or enforcing, outside the Court, any liability

described in the preceding sentence.  Notwithstanding the above, nothing herein shall be

construed to permit any United States federal, state, or local governmental agency to obtain

14

penalties from the Buyers for days of violation of environmental laws and regulations prior to Closing.

15.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Selling Debtor Entities to sell and transfer the Acquired Assets to the Buyers, in each case in accordance with the terms of the Agreement or this order.

<u>Assumption And Assignment Of The Assigned Contracts To The Buyers</u>

16.    Pursuant to 11 U.S.C. § 365, and subject to and conditioned upon the Closing of the Sale, the Selling Debtor Entities' assumption and assignment to the Buyers, and the Buyers' assumption on the terms set forth in the Agreement, of the Assumed U.S. Contracts is hereby approved, and the requirements of 11 U.S.C. §§ 365(b)(1) and 365(f) with respect thereto are hereby deemed satisfied; <u>provided</u>, <u>however</u>, that in the event the effective date of the Plan occurs prior to the Closing of the Sale, then the Assumed U.S. Contracts shall be assumed pursuant to the Plan and assigned in accordance with 11 U.S.C. §§ 365 and 1123 and the provisions of this order pursuant to the terms set forth in the Agreement.

17.    The Selling Debtor Entities are hereby authorized in accordance with 11 U.S.C. §§ 105(a), 363, and 365 to (a) assume and/or assign to the Buyers, effective upon the Closing of the Sale, the Assigned Contracts free and clear (except as expressly provided in the Agreement) of all Interests and/or Claims of any kind or nature whatsoever and (b) execute and deliver to the Buyers such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assumed Liabilities to the Buyers.

15

18.    The Assigned Contracts shall be transferred to, and remain in full force
and effect for the benefit of, the Buyers in accordance with their respective terms,
notwithstanding any provision in any such Assigned Contract (including those of the type
described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or
conditions such assignment or transfer and, pursuant to 11 U.S.C. § 365(k), the Selling Debtor
Entities shall be relieved from any further liability with respect to the Assigned Contracts after
such assignment to and assumption of such contracts by the Buyers.

19.    All defaults or other obligations of the Selling Debtor Entities under the
Assigned Contracts arising or accruing prior to the Closing of the Sale (without giving effect to
any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of
the Bankruptcy Code) shall be cured by the Selling Debtor Entities either (i) at the Closing of the
Sale or as soon thereafter as practicable or (ii) in the event the effective date of the Plan occurs
prior to the Closing of the Sale, in accordance with the terms of the Plan, or absent an agreement
as to the Cure Amount between the Selling Debtor Entities and the non-Debtor counterparty to
an Assumed U.S. Contract, by order of this Court, in the amounts as set forth on Schedule 1
hereto, and the Buyers shall have no liability or obligation arising or accruing prior to the date of
the Closing of the Sale, except as otherwise expressly provided in the Agreement.  Cure shall be
payable only to the counterparty to any Assumed U.S. Contract.  Each non-Debtor counterparty
to any Assumed U.S. Contract shall be deemed to have consented to the assumption and
assignment of the Assumed U.S. Contract to the Buyers and shall be forever barred, estopped,
and permanently enjoined from asserting against the Selling Debtor Entities or the Buyers, or the
property of any of them, any default existing, arising, or accruing as of the date of the Closing or
any purported written or oral modification to such Assumed U.S. Contract.  Each non-Debtor

16

counterparty to any Assumed U.S. Contract shall be forever barred, estopped, and permanently

enjoined from asserting against the Buyers (or its property, including the Acquired Assets) any

claim, counterclaim, defense, breach, condition, or setoff asserted or assertable against the

Debtors.  The failure of the Selling Debtor Entities or the Buyers to enforce prior to the Closing

of the Sale one or more terms or conditions of any Assigned Contracts shall not be a waiver of

such terms or conditions or of the Selling Debtor Entities' or Buyers' rights to enforce every term

and condition of any such Assigned Contracts.  There shall be no rent accelerations, assignment

fees, increases (including of rates), or any other fees or penalties charged to the Buyers as a

result of the assumption and assignment of the Assumed U.S. Contracts.

<u>Additional Provisions</u>

20.    The transactions contemplated by the Agreement, and the execution,

delivery, transfer, and/or recordation of any and all documents or instruments necessary or

desirable to consummate the transactions contemplated by the Agreement shall be, and hereby

are, exempt from the imposition and payment of all stamp taxes or any other similar taxes

pursuant to section 1146(c) of the Bankruptcy Code.

21.    The consideration provided by the Buyers for the Acquired Assets under

the Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration

under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent

Transfer Act, and the laws of the United States and any state, territory, or possession thereof, or

the District of Columbia.

22.    Upon the Closing of the Sale, this order shall be construed as and shall

constitute for any and all purposes a full and complete general assignment, conveyance, and

transfer of all of the Acquired Assets and Assigned Contracts or a bill of sale transferring good and marketable title in such Acquired Assets and Assigned Contracts to the Buyers pursuant to the terms of the Agreement.

23.     Upon the Closing of the Sale, each of the Selling Debtor Entities' creditors is authorized and directed to execute such documents and take all other such actions as may be necessary to release their respective Interests and/or Claims against the Acquired Assets, if any, as such Interests and/or Claims may have been recorded or may otherwise exist.

24.     Each and every United States federal, state, and local governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

25.     All entities which are currently, or as of the Closing of the Sale may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Agreement are hereby directed to surrender possession of the Acquired Assets to the Buyers upon the Closing of the Sale.

26.     Except as expressly provided in the Agreement all entities holding Interests and/or Claims against or in the Selling Debtor Entities or the Acquired Assets of any kind or nature whatsoever shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Interests and/or Claims of any kind or nature whatsoever against the Buyers, their property, their successors and assigns, or the Acquired Assets with respect to any Interest and/or Claim of any kind or nature whatsoever which such person or entity had, has, or may have against or in the Selling Debtor Entities, their

18

estates, their officers, their directors, their shareholders, or the Acquired Assets.  Following the

Closing of the Sale, no holder of an Interest and/or Claim in or against the Selling Debtor

Entities shall interfere with the Buyers' title to or use and enjoyment of the Acquired Assets

based on or related to such Interest and/or Claim or any actions that the Selling Debtor Entities

may take, or have taken, in their chapter 11 cases.

27.    The transactions contemplated by the Agreement have been undertaken by

the Buyers in good faith, as that term is used in the Bankruptcy Code, including but not limited

to section 363(m) of the Bankruptcy Code or in similar applicable state law, and accordingly, the

reversal or modification on appeal of the authorization provided herein to consummate the sale

of the Acquired Assets shall not affect the validity of the Sale to the Buyers, unless such

authorization is duly stayed pending such appeal.  The Buyers are purchasers in good faith of the

Acquired Assets pursuant to section 363(m) of the Bankruptcy Code, and are entitled to all of the

protections afforded by the Bankruptcy Code, including but not limited to section 363(m) of the

Bankruptcy Code or by similar applicable state law.

28.    The consideration provided by the Buyers for the Acquired Assets under

the Agreement is fair and reasonable and the Sale may not be avoided under section 363(n) of

the Bankruptcy Code.

29.    The purchase price shall be and hereby is allocated between the Selling

Debtor Entities and the non-Debtor Sellers as set forth on Schedule 3.6.1 of the Agreement.

30.    The Selling Debtor Entities, including, but not limited to, their officers,

employees, and agents, are hereby authorized to execute such documents and do such acts as are

necessary or desirable to carry out the transactions contemplated by the terms and conditions of

19

the Agreement and this order.  The Selling Debtor Entities shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this order.

31.    Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of the Selling Debtor Entities' estates or of the other Sellers, such as funds that are trust funds under any applicable state lien laws.

32.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to the Buyers on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

33.    The failure specifically to include or to reference any particular provision of the Agreement in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

34.    This Court retains exclusive jurisdiction to interpret, construe, enforce, and implement the terms and provisions of this order, the Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Acquired Assets to the Buyers, (b) compel delivery of the purchase price or performance of other obligations owed pursuant to the Agreement, (c) resolve any disputes arising under or related to the Agreement, except as otherwise provided therein, (d) interpret, implement, and enforce the provisions of this order, (e) protect the Buyers against any Interests and/or Claims against or in the Selling Debtor Entities or the Acquired Assets, of any kind or

20

nature whatsoever, attaching to the proceeds of the Sale, and (f) determine all disputes among the

Selling Debtor Entities, the Buyers, and any non-Debtor parties to any Assigned Contracts

concerning, <u>inter alia</u>, the Selling Debtor Entities' assumption and/or assignment of any Assumed

and Assigned Contract to the Buyers under the Agreement.

Dated:  New York, New York
       May 21, 2009

                    /s/Robert D. Drain
                    UNITED STATES BANKRUPTCY JUDGE