| | |
|---|---|
| K&L GATES LLP<br>Edward M. Fox, Esq. (EF1619)<br>599 Lexington Avenue<br>New York, New York 10022<br>Telephone (212) 536-3900 | Hearing Date: June 10, 2009<br>9:30 a.m. |

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                           :     Chapter 11
                                                 :     Case No. 05-44481 (RDD)
DELPHI CORPORATON, *et al.*,                     :     (Jointly Administered)
                                                 :
        Debtors.                                 :
---------------------------------------------------------X

**OBJECTION OF WILMINGTON TRUST COMPANY, AS
INDENTURE TRUSTEE, TO (A) SUPPLEMENT TO MOTION
FOR ORDER (I) APPROVING MODIFICATIONS TO DEBTORS'
FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED) AND
RELATED DISCLOSURES AND VOTING PROCEDURES AND
(II) SETTING FINAL HEARING DATE TO CONSIDER MODIFICATIONS
TO CONFIRMED FIRST AMENDED PLAN OF REORGANIZATION
AND (B) REQUEST TO SET ADMINISTRATIVE EXPENSE CLAIMS
<u>BAR DATE AND ALTERNATE SALE HEARING DATE</u>**

Wilmington Trust Company ("WTC"), as indenture trustee for the senior notes and debentures (the "Senior Debt") in the aggregate principal amount of $2 billion issued by Delphi Corporation ("Delphi"), by and through its attorneys, K&L Gates LLP, hereby objects to the (a) Supplement to Motion for Order (i) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (ii) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (b) Request to Set Administrative Expense Claims Bar Date and Alternate

NY-685476 v1

Sale Hearing Date (the "Motion")[1] filed by Delphi and its debtor subsidiaries and affiliates (collectively, the "Debtors"), stating as follows:

**PRELIMINARY STATEMENT**

1. The Debtors' proposed Supplement to First Amended Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Disclosure Statement") must clearly and concisely inform the holders of the Senior Debt of the actual value and likelihood of their recovery under the Plan. Although the Debtors disclose a maximum available to all unsecured creditors, the Debtors provide no information on the amount of any recovery or likelihood any recovery will ever be received by holders of the Senior Debt. The lack of information is exacerbated by the Debtors' failure to address the payment of the fees and expenses of WTC, including the fees and disbursements of its counsel, K&L Gates LLP, (collectively, the "Indenture Trustees' Fees and Expenses"), which constitute a lien on the recovery of holders of Senior Debt.

2. The current holders of Senior Debt must be allowed to vote their claims. The Debtors propose to solicit acceptances for their proposed plan modifications from holders of Senior Debt of record as of November 26, 2007 (the "Original Record Date"), despite the fact that the Senior Debt is publicly traded and much of it may have changed hands in the eleven months since the Original Record Date. It would violate the Bankruptcy Rules, and be patently unfair to current holders of Senior Debt, to include the votes of former holders of Senior Debts when determining whether to approve or reject the Plan.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (as Modified) dated June 1, 2009 (the "Plan") annexed to the Motion as Exhibit 1C.

**FACTUAL BACKGROUND**

3.  On October 8, 2005 (the "Petition Date"), Delphi Corporation and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.) (the Bankruptcy Code'). Since the Petition Date, the Debtors have continued to operate their businesses and remained in possession of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.  On December 10, 2007, the Debtors filed, and the Bankruptcy Court approved, Debtors' First Amended Disclosure Statement With Respect to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "December 2007 Disclosure Statement").

5.  On January 25, 2008, the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified (the "Confirmation Order") confirming the Debtors First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "December 2007 Plan"). The December 2007 Plan has not, and, apparently, cannot, become effective.

6.  On or about October 3, 2008, the Debtors filed their Plan Modification Approval Motion, pursuant to which the Debtors sought approval of an amended disclosure statement with respect to a modified plan.

7.  On or about June 1, 2009, the Debtors filed the Motion.

**THE DISCLOSURE STATEMENT LACKS ADEQUATE INFORMATION**

8.  The Disclosure Statement may only be approved if it is found to contain "adequate information" regarding the Debtors' Plan. "Adequate information" means:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and of the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan….

11 U.S.C. § 1125(a)(1) (2004). Thus, the Disclosure Statement may not be approved unless and until it contains information sufficient to permit the Debtors' creditors to "make an intelligent and informed decision as to whether to accept or reject the plan." In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988); In re Ferretti, 128 B.R. 16, 19 (Bankr. D. N.H. 1991) ("[A] proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.").

9. The Disclosure Statement should also provide creditors with meaningful information regarding "the consequences of the proposed plan on their claims and the possible Code alternatives so that they can intelligently accept or reject the Plan." In re Copy Crafters Quickprint, Inc., 92 B.R. at 981.

10. As explained below, the Debtors' Disclosure Statement lacks adequate information regarding a number of issues that are critical to creditors' ability to make an intelligent and informed evaluation of the Plan. The Motion must therefore be denied.

### Recoveries

11. The Debtors state in the chart at page S-xxviii and in the text of the Disclosure Statement that holders of General Unsecured Claims will receive $3 for every $97 distributed by Parnassus in excess of $7.2 billion, up to $180 million. Nowhere in the chart or in the text of the Disclosure Statement, however, do the Debtors describe the likely amount of the

recovery to unsecured creditors or when, if ever, the recovery might actually be received by unsecured creditors.

12.   Moreover, it is not clear from the chart whether the unsecured claim to be awarded to the PBGC is included in the estimated amount of Allowed Unsecured Claims on page S-xxviii or whether PBGC is to receive on account of its unsecured claim a recovery separate and apart from the $180 million potentially available to unsecured creditors.

## Indenture Trustees Fees and Expenses

13.   Pursuant to the terms of the Indenture pursuant to which the Senior Debt was issued, WTC has a lien on any recovery to holders of Senior Debt to pay the Indenture Trustees' Fees and Expenses incurred in connection with these cases.

14.   Paragraph 39(b) of the Confirmation Order states:

(b)   Postpetition Fees.  On or within 10 business days after the Confirmation Date, the Indenture Trustees shall deliver to the Debtors, the Creditors' Committee, and the Fee Review committee written copies of invoices in respect of fees and expenses, including the fees and disbursements of counsel to the Indenture Trustees, incurred between the Petition Date and the Confirmation Date and a reasonable estimate of the fees and expenses, including the fees and disbursements of counsel to the Indenture Trustees, that will be incurred between the Confirmation Date and the Effective Date (collectively, the "Postpetition Fee Claims'), with narrative descriptions of the services rendered or to be rendered (including appropriate redactions to preserve privileged matters) and itemization of expenses incurred in such detail and with such supporting documentation as is customarily submitted by Professionals in the Chapter 11 Cases.  If none of the Debtors, the Creditors' Committee, or the Joint Fee Review committee object to the Postpetition Fee claims within 10 business days of the receipt of the invoices therefore, the Debtors shall pay such Postpetition Fee Claims in full in Cash on or before the Effective Date.  In the event any of the Debtors, the Creditors' Committee, or the Fee Review committee shall object to payment of all or a portion of such fees within such 10-business day period, the Debtors shall not be required to make any payments with respect to the disputed portion of a Postpetition Fee claim until the disputed portion of the Postpetition Fee Claim has been approved by the  Bankruptcy

- 5 -

>       Court pursuant to section 1129(a)(4) on motion of the Indenture
>       Trustee.

Confirmation Order, ¶ 39(b).

15. Based on the foregoing provision of the Confirmation Order, WTC believes that the Debtors are obligated to pay the Indenture Trustee's Fees and Expenses.[2] To date, however, the Debtors have refused to state whether they will pay the Indenture Trustees' Fees and Expenses as required by the Confirmation Order. In the event the Debtors refuse to do so, WTC would be forced to exercise its lien rights, which would have a material adverse effect on the recovery to holders of Senior Debt and must be disclosed in the Disclosure Statement.

## THE RECORD DATE MUST BE CHANGED

16. In the Motion, the Debtors request that the record date for voting on the plan modifications be November 26, 2007, the same as the record date for voting on the December 2007 Plan.

17. The Debtors argue that "whether a debtor needs to resolicit votes on modifications to a plan of reorganization depends on whether the modification is material or not and whether the creditors and interest holders are adversely affected." For this proposition, the Motion cites In re Am. Solar King Corp., 90 B.R. 808 (Bankr W.D. Tex 1988), In re Boroff, 189 B.R. 53 (D. Vt. 1995), and In re Frontier Airlines, Inc., 93 B.R. 1014 (Bankr. D. Colo. 1988). These cases stand for this proposition, with which WTC does not disagree, but do not address the issue of record dates.

18. The Debtors also argue that "when a debtor resolicits acceptances of a modified plan, section 1127 of the Bankruptcy Code provides that a holder's prior vote . . . may

---

[2] On September 25, 2008, the Debtors also agreed to support payment of the Indenture Trustee's Fees and Expenses on a substantial contribution basis as a backstop to paragraph 39(b) of the Confirmation Order.

- 6 -

be counted as a vote on the Modified Plan." For this proposition, the Debtors cite In re McCommas LFG Processing Partners, LP, 2007 WL 6234139 (Bankr. N.D. Tex. 2007) and Enron Corp. v. New Power Co., 438 F. 3d 1113 (11th Cir. 2006). While these cases do stand for this proposition, neither dealt with modifications to a plan that materially and adversely affected the treatment under the Plan of the complaining claimant or interest holder and neither addressed the issue of applicable record dates.

19. Although the Debtors assert that 11 U.S.C. § 1127(d) mandates that the Debtors use the November 26, 2007 record date, this provision says no such thing. First, this provision does not address record dates at all. Moreover, by its plain language, Section 1127(d) refers to holders of claims as of the time of the plan modification. It makes no provision for voting by former holders of claims. In other words, the provisions of Section 1127 only apply to an entity that still holds a claim as of the time for voting on the modification.

20. Under Fed. R. Bankr. P. 3018(a),

> a "creditor whose claim is based on a security of record shall not be entitled to accept or reject a plan unless the . . . creditor is the holder of record of the security on the date the order approving the disclosure statement is entered or on another date fixed by the court, for cause, after notice and a hearing."

Fed. R. Bankr. P. 3018(a).

21. The "disclosure statement," as that term is used in Rule 3018(a) with respect to an amended plan, is not the disclosure statement relating to the original plan. Rather, it is the disclosure statement relating to the amended plan.

22. Pursuant to 11 U.S.C. § 1127(a), "the plan as modified becomes the plan," and 11 U.S.C. § 1127(C) requires that "the proponent of the modification shall comply with section 1225 of this title with respect to the plan as modified." Since acceptance or rejection of a

plan (i.e., the modified plan pursuant to Section 1127(a)) can only occur if a disclosure statement relating to that plan (i.e., the modified plan) is transmitted to creditors, 11 U.S.C. § 1127(c); 11 U.S.C. § 1125 (b), the date of the order approving the disclosure statement referred to in Rule 3018(a) is the date of entry of the order approving the disclosure statement with respect to the modified plan, not the original plan.

23. While the Court could, pursuant to Rule 3018(a), select another record date "for cause," the Debtor has shown no cause to potentially disenfranchise holders of Senior Debt who have acquired their bonds since November 26, 2007.[3] To the contrary, if the Debtors' position was correct, cause would nevertheless exist to change the record date from November 26, 2007 to a current date to enfranchise current holders of Senior Debt.

24. This interpretation is buttressed by the two cases the Debtors cite in the Motion on the issue of the applicable record date as "but see" citations. In both cases, the Debtors' counsel represented the debtor and specifically requested that the court set a new record date for voting purposes in connection with the proposed plan modification. In each case, the court did so. (In re American Banknote Corp., Case No. 99 B 11577 (Bankr. S.D.N.Y. 2002) and In re Oakwood Homes Corp., Case No. 02-13396 (Bankr. D. Del. 2004)).

25. Consequently, the voting record date for holders of Senior Debt should be as of the date of Court approval of the Disclosure Statement, as provided under Fed. R. Bankr. P. 3018(a).

---

[3] Since acceptance or rejection is based only on the votes of those creditors who actually vote, 11 U.S.C. § 1126(d), and former holders of claims are unlikely to vote, narrowing the pool of voters may actually make it easier for determined objectors to cause a rejection by the class.

## SALE MOTION

26.     Although it is not entirely clear what, if any, relief the Debtors may presently be seeking in the Motion with respect to a sale of their assets rather than confirmation of a plan, to the extent they seek approval to proceed with a private sale of assets rather than a public auction, they provide no basis in the Motion for proceeding by private sale. Consequently, a private sale of assets should not be permitted.

## CONCLUSION

WHEREFORE, WTC respectfully requests the Court to enter an order: (i) denying the Motion to approve the Debtors' Disclosure Statement unless and until it is supplemented with adequate information of the kind discussed herein; (ii) fixing the date of entry of the order approving the Disclosure Statement as the record date for voting purposes; (iii) denying Debtors' request, if any, to proceed to sell its assets by private sale and (iv) granting such other and further relief as this Court deems just.

Dated: New York, New York
       June 9, 2009

                                              K&L GATES LLP

                                              By:   */s/ Edward M. Fox*
                                                  Edward M. Fox (EF1619)
                                                  A Member of the Firm
                                            Attorneys for Wilmington Trust Company,
                                            as Indenture Trustee
                                            599 Lexington Avenue
                                            New York, NY 10022
                                            (212) 536-3900