**Exhibit D**

**1.71** **"Disbursing Agent"** means Reorganized DPH Holdings, or any Person designated by it, in its sole discretion, to serve as a disbursing agent under this Plan.

**1.72** **"Disclosure Statement"** means the written disclosure statement or any supplements thereto (including the Supplement and all schedules thereto or referenced therein) that relates to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time, all as approved by the Bankruptcy Court pursuant to sections 1125 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3017.

**1.73** **"Disposition Transactions"** means those transactions described in the Master Disposition Agreement and contemplated by the DIP Transfer.

**1.74** **"Disputed Claim" or "Disputed Interest"** means a Claim or any portion thereof, or an Interest or an portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, nor an Allowed Interest nor a Disallowed Interest, as the case may be.

**1.75** **"Distribution Date"** means the date, selected by the Reorganized Debtors, upon which distributions to holders of Allowed Claims entitled to receive distributions under this Plan shall commence; provided, however, that the Distribution Date shall occur as soon as reasonably practicable after the Effective Date, but in any event no later than 30 days after the Effective Date.

**1.76** **"Distribution Reserve"** means, as applicable, one or more reserves of property for distribution to holders of Allowed Claims in the Chapter 11 Cases to be reserved pending allowance of Disputed Claims in accordance with Article 9.8 of this Plan.

**1.77** **"Effective Date"** means the Business Day determined by the Debtors on which all conditions to the consummation of this Plan set forth in Article 12.2 of this Plan have been either satisfied or waived as provided in Article 12.3 of this Plan and the day upon which this Plan is substantially consummated.

**1.78** **"Emergence Capital"** means that certain amount to be provided to the Reorganized Debtors by GM pursuant to Sections 3.1.1, 3.1.3, 3.2.1, and 3.2.3 of the Master Disposition Agreement related to the post-Effective Date operations of Reorganized DPH Holdings and the Reorganized Debtors.

**1.79** **"Employee-Related Obligation"** means a Claim of a salaried employee of one or more of the Debtors, in his or her capacity as an employee of such Debtor or Debtors, for (i) severance, provided, however, that such employee was in his or her capacity as an employee of a Debtor on or after June 1, 2009, and (ii) indemnification arising after the Petition Date and (i) for which the filing of a proof of claim was not required by the Bar Date Order or (ii) reflected in the Debtors' books and records, provided, however, that such employee was in his or her capacity as an employee of a Debtor as of the date of the commencement of the hearing on the Disclosure Statement, evidenced by a timely filed proof of claim, or listed in the Schedules (other than as "disputed").

**1.80** **"Equity Committee"** means the official committee of equity security holders that was appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases on April 28, 2006 and disbanded on April 24, 2009.

12

**1.145** **"Modification Approval Date"** means the date of entry of the Modification Approval Order.

**1.146** **"Modification Approval Order"** means the order entered by the Bankruptcy Court approving the modifications to this Plan under section 1127 of the Bankruptcy Code.

**1.147** **"Modification Procedures Order"** means the order entered by the Bankruptcy Court on June___, 2009 authorizing the procedures by which votes on the modifications to this Plan are to take place, among other matters.

**1.148** **"New Common Stock"** means the share(s) of new common stock of Reorganized DPH Holdings.

**1.149** **"Non-Represented Term Sheet"** means the Term Sheet – Delphi Cessation and GM Provision of OPEB For Certain Non-Represented Delphi Employees and Retirees entered into between Delphi and GM, dated August 3, 2007.

**1.150** **"Omitted Material Supply Agreement Objection Deadline"** means February 8, 2008, the date that was ten days after service of notice upon counterparties to Material Supply Agreements as required by paragraph 24 of the Confirmation Order.

**1.151** **"OPEB"** means other post-employment benefits obligations.

**1.152** **"Ordinary Course Professionals Order"** means the order entered by the Bankruptcy Court on November 4, 2005 authorizing the retention of professionals utilized by the Debtors in the ordinary course of business.

**1.153** **"Other Executory Contract"** means any executory contract, other than a Material Supply Agreement and Other Unexpired Lease, to which any of the Debtors is a party.

**1.154** **"Other Interests"** means all options, warrants, call rights, puts, awards, or other agreements to acquire Existing Common Stock.

**1.155** **"Other MDA Assumed Contracts"** means, collectively, Other Executory Contracts and Other Unexpired Leases to be assigned to Buyers pursuant to the MDA.

**1.156** **"Other Priority Claim"** means any Claim, other than an Administrative Claim or Priority Tax Claim, entitled to priority payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

**~~1.156~~1.157** **"Other Unexpired Lease"** means any unexpired lease, other than a Material Supply Agreement and Other Executory Contract, to which any of the Debtors is a party.

**~~1.157~~1.158** **"Parnassus"** means Parnassus Holdings II, LLC, an affiliate of Platinum, or such other entity designated by Platinum, as set forth in the Master Disposition Agreement.

**~~1.158~~1.159** **"Parnassus Acquired Assets"** has the meaning ascribed to "Company Acquired Assets" as set forth in the Master Disposition Agreement.

19

**~~1.159~~1.160** **"Parnassus Assumed Contracts"** means those prepetition executory contracts and/or unexpired leases acquired by Parnassus under the terms of the Master Disposition Agreement.

**~~1.160~~1.161** **"Parnassus Assumed Liabilities"** means those liabilities assumed by Parnassus under the terms of the Master Disposition Agreement.

**~~1.161~~1.162** **"Parnassus Class C Interest"** means Class C membership interests in Parnassus in the nominal amount of $145.5 million, having an annual cash dividend at the rate of 8% (payable quarterly in arrears), and subject to mandatory redemption at the conclusion of the tenth year after issuance; and (1) being subject to mandatory redemption in such amounts as set forth in the operating agreement of Parnassus (the "Operating Agreement") and at such times as distributions are made to the holders of the Class A and Class B interests of Parnassus, and (2) ranking pari passu in right of distribution with the holders of the Class A and Class B interests of Parnassus in such percentages as set forth in the Operating Agreement. The Parnassus Class C Interest may be issued by Parnassus or such other entity as may be the "Company Buyer" under the Master Disposition Agreement and shall be held by either the "Sellers" (as such term is defined in the Master Disposition Agreement), a trust or an agent as determined by the Sellers, provided, however, that regardless of the issuer or form, the Parnassus Class C Interest shall have substantially the same terms, conditions and economic entitlements as set forth herein. ~~The Parnassus Class C Interest shall be issued to Delphi.~~

**~~1.162~~1.163** **"PBGC"** means the Pension Benefit Guaranty Corporation.

**~~1.163~~1.164** **"PBGC Claims"** means the Contingent PBGC Secured Claim and PBGC General Unsecured Claim.

**~~1.164~~1.165** **"PBGC General Unsecured Claim"** means any Claim of the PBGC against the applicable Debtors or group of Debtors arising from or relating to the Pension Plans that are not secured by valid, perfected, and enforceable liens against the assets or property of the Debtors.

**~~1.165~~1.166** **"Pension Plans"** means Delphi Corporation: the Delphi Hourly Rate Employees Pension Plan and the Delphi Retirement Program for Salaried Employees; Delphi Mechatronic Systems, Inc.: the Delphi Mechatronic Systems Retirement Program; ASEC Manufacturing: the ASEC Manufacturing Retirement Program; and Packard-Hughes Interconnect Company: the Packard-Hughes Interconnect Bargaining Retirement Plan and the Packard-Hughes Interconnect Non-Bargaining Retirement Plan.

**~~1.166~~1.167** **"Periodic Distribution Date"** means, as applicable, (a) the Distribution Date, as to the first distribution made by the Reorganized Debtors, and (b) thereafter, (i) the first Business Day occurring ninety (90) days after the Distribution Date and (ii) subsequently, the first Business Day occurring ninety (90) days after the immediately preceding Periodic Distribution Date, or such other Business Day selected by Reorganized DPH Holdings in its sole and absolute discretion; provided, however, distribution dates shall be no more than quarterly.

**~~1.167~~1.168** **"Person"** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership,

20

**1.2381.239** **"USW-Home Avenue Memorandum of Understanding"** means that certain memorandum of understanding, dated August 16, 2007, as approved by the Bankruptcy Court on August 29, 2007, among the USW, Delphi, and GM, and all attachments and exhibits thereto.

**1.2391.240** **"USW-Vandalia Memorandum of Understanding"** means that certain memorandum of understanding, dated August 16, 2007, as approved by the Bankruptcy Court on August 29, 2007, among the USW, Delphi, and GM, and all attachments and exhibits thereto.

**1.2401.241** **"Voting Deadline"** means July ~~14~~15, 2009 at 7:00 p.m. prevailing Eastern time.

C.  **Rules Of Interpretation**

For purposes of this Plan, unless otherwise provided herein, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) each pronoun stated in the masculine, feminine, or neuter includes the masculine, feminine, and neuter; (c) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented; (d) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to this Plan; (f) the words "herein," "hereunder," and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, by-laws, instrument, release, or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

This Plan is the product of extensive discussions and negotiations between and among the Debtors, ~~the DIP Steering Committee, the Creditors' Committee,~~ GM, Parnassus, and certain other creditors and constituencies.  Each of the foregoing was represented by counsel, who either (a) participated in the formulation and documentation of, or (b) was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, and the documents ancillary thereto.  Accordingly, the general rule of contract construction known as "<u>contra preferentem</u>" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, or any contract, instrument, release, indenture, exhibit, or other agreement or document generated in connection herewith.

D.  **Computation Of Time**

28

|  |  |
|---|---|
| Class F | Class F consists of all Intercompany Claims against the applicable Debtor or consolidated group of Debtors. |
| Class G-1 | Class G-1 consists of all Existing Common Stock of Delphi Corporation. |
| Class G-2 | Class G-2 consists of all Section 510(b) Equity Claims against Delphi Corporation. |
| Class H | Class H consists of all Section 510(b) ERISA Claims against the applicable Debtors. |
| Class I | Class I consists of all Other Interests in Delphi Corporation. |
| Class J | Class J consists of all Interests in the Affiliate Debtors. |
| Class K | Class K consists of all Other Priority Claims against the applicable Debtor or consolidated group of Debtors. |

## ARTICLE IV

## IDENTIFICATION OF CLASSES OF CLAIMS
## AND INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN

**4.1  Classes Of Claims That Are Unimpaired.**  The following Classes of Claims and Interests are Unimpaired by the Plan:

| | |
|---|---|
| **Class 1B through Class 12B** | (Flow-Through Claims) |
| **Class 1J through Class 12J** | (Interests in the Affiliate Debtors) |
| **Class 1K through Class 12K** | (Other Priority Claims) |

**4.2  Impaired Classes Of Claims And Interests.**  The following Classes of Claims and Interests are Impaired by the Plan:

| | |
|---|---|
| **Class 1A-1 and Class 6A-1** | (Secured Claims) |
| **Class 1C-1 through Class 12C-1** | (General Unsecured Claims) |
| **Class 1C-2 through Class 12C-2** | (PBGC Claims) |
| **Class 1D through Class 12D** | (GM Unsecured Claim) |
| **Class 1E** | (Section 510(b) Note Claims) |
| **Class 1F through Class 12F** | (Intercompany Claims) |
| **Class 1G-1** | (Existing Common Stock) |
| **Class 1G-2** | (Section 510(b) Equity Claims) |
| **Class 1H, 8H** | (Section 510(b) ERISA Claims) |
| **Class 1I** | (Other Interests) |

## ARTICLE V

## PROVISIONS FOR TREATMENT
## OF CLAIMS AND INTERESTS

**5.1  Class 1A-1 and Class 6A-1 (Secured Claims).**  Except as otherwise provided in and subject to Article 9.8 of this Plan, at the sole option of the Debtors or Reorganized Debtors, each Allowed Secured Claim shall receive (i) distributions of Cash payments in equal

32

**5.12    Class 1J through Class 12J (Interests In Affiliate Debtors).**  On the Effective Date, except as otherwise contemplated by the Restructuring Transactions or the Master Disposition Agreement, the holders of Interests in the Affiliate Debtors shall retain such Interests in the Affiliate Debtors under the Plan.

**5.13    Class 1K through Class 12K (Other Priority Claims).**  Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors agrees to a different treatment of such Claim, on the Effective Date, or as soon thereafter as is reasonably practicable, each such holder shall receive, in full satisfaction of such Claim, an amount in Cash equal to the Allowed amount of such Claim.

# ARTICLE VI

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR INTERESTS

**6.1    Impaired Classes Of Claims Entitled To Vote.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this Plan and Article 6.2, Article 6.4, and Article 6.5 of this Plan, holders of Claims and Interests in each Impaired Class are entitled to vote in their respective classes as a class to accept or reject this Plan.

**6.2    Classes Deemed To Accept The Plan.**  Classes 1B through 12B, 1J through 12J, and 1K through 12K are Unimpaired under this Plan.  Pursuant to section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted this Plan, and the votes of holders of Claims and Interests in such Classes therefore shall not be solicited.  Because all Debtors are proponents of this Plan, the votes of holders of such Claims in Class 1F through 12F (Intercompany Claims) shall not be solicited.

**6.3    Acceptance By Impaired Classes.**  Classes 1A-1 and 6A-1, Classes 1C-1 through 12C-1, and 1D through 12D are Impaired under this Plan.  In addition, Classes 1C-2 through 12C-2 shall be Impaired to the extent the Claims in such Classes are Allowed.  Pursuant to section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims has accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**6.4    Classes Deemed To Reject The Plan**.  Holders of Claims and Interests in Class 1E, 1G-1, 1G-2, 1H, 8H and 1I are not entitled to receive any distribution under the Plan on account of their Claims or Interests.  Since none of the holders of Claims or Interests in Class 1E, 1G-1, 1G-2, 1H, 8H, and 1I are entitled to receive a distribution under the Plan, pursuant to section 1126(g) of the Bankruptcy Code, each holder of a Claim or Interest in such Class is conclusively presumed to have rejected the Plan, and the votes of such holders of Claims or Interests therefore shall not be solicited.

**6.5    Prior Acceptances Or Rejections Of The Plan.**  Pursuant to section 1127(d) of the Bankruptcy Code, any holder of a Claim that has accepted or rejected the Plan shall