SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
      In re                                 :      Chapter 11
                                           :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                           :
                                           :      (Jointly Administered)
          Debtors.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF FILING OF CERTAIN EXHIBITS AND SCHEDULES TO
MASTER DISPOSITION AGREEMENT (DOCKET NO. 16646)

1. On June 1, 2009, the Debtors filed the (A) Supplement To Motion For Order (I) Approving Modifications To Debtors' First Amended Plan Of Reorganization (As Modified) And Related Disclosures And Voting Procedures And (II) Setting Final Hearing Date To Consider Modifications To Confirmed First (Docket No. 16646) (the "Motion"). The Master Disposition Agreement was included as an exhibit to the Motion.

2. Pursuant to section 14.4 of the Master Disposition Agreement, only Schedule 1.1.A "Assumed Administrative Liabilities," Schedule 2.1.5 "Excluded Assets," and Exhibit 3.1.1.F "Wind Up Costs" must be executed at this time. As is customary for such transactions, all other Schedules and Exhibits need not be finalized until the prior to the closing date of the Master Disposition Agreement. Nevertheless, the Debtors are filing certain Schedules and Exhibits to the Master Disposition Agreement as attachments to this notice, and will use their best efforts to file the nonconfidential Schedules and Exhibits by the deadline to file Exhibits to the Debtors First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified).

3. In addition, as provided by section 14.22 of the Master Disposition Agreement, the Debtors will use commercially reasonable efforts to obtain approval from the Bankruptcy Court for the Southern District of New York to file certain Exhibits and Schedules containing sensitive and confidential information under seal.

Dated: New York, New York
June 10, 2009

          SKADDEN, ARPS, SLATE, MEAGHER
           & FLOM LLP

By:   /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr.
      Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

             - and -

By:   /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Rev. 05/27/09

**SCHEDULE 1.1.F\***

**FILING AFFILIATES**

**Entity Name and State of Incorporation/Formation**

ASEC Manufacturing General Partnership (Delaware)
ASEC Sales General Partnership (Delaware)
Aspire, Inc. (Michigan)
Delco Electronics Overseas Corporation (Delaware)
Delphi Automotive Systems (Holding), Inc. (Delaware)
Delphi Automotive System Global (Holding), Inc. (Delaware)
Delphi Automotive Systems Human Resources LLC (Delaware)
Delphi Automotive Systems International, Inc. (Delaware)
Delphi Automotive Systems Korea, Inc. (Delaware)
Delphi Automotive Systems LLC
Delphi Automotive Systems Overseas Corporation ( Delaware)
Delphi Automotive Systems Risk Management Corp. (Delaware)
Delphi Automotive Systems Services LLC (Delaware)
Delphi Automotive Systems Tennessee, Inc. (Delaware)
Delphi Automotive Systems Thailand, Inc. (Delaware)
Delphi China LLC (Delaware)
Delphi Connection Systems (California)
Delphi Corporation
Delphi Diesel Systems Corp. (Delaware)
Delphi Electronics (Holding) LLC (Delaware)
Delphi Foreign Sales Corporation (Virgin Islands)
Delphi Furukawa Wiring Systems LLC (Delaware) (80%)
Delphi Integrated Service Solutions (Michigan)
Delphi International Holdings Corp. (Delaware)
Delphi International Services, Inc. (Delaware)
Delphi Liquidation Holding Company (Delaware)
Delphi LLC (Delaware)
Delphi Mechatronic Systems, Inc. (Delaware)
Delphi Medical Systems Colorado Corporation (Colorado)
Delphi Medical Systems Corporation (Delaware)
Delphi Medical Systems Texas Corporation (Delaware)
Delphi NY Holding Corporation (New York)
Delphi Receivables LLC
Delphi Services Holding LLC, fka Delphi Services Holding Corporation (Delaware)
Delphi Technologies, Inc. (Delaware)
DREAL, Inc. (Delaware)
Environmental Catalysts, LLC (Delaware)
Exhaust Systems Corporation (Delaware)
MobileAria, Inc. (71.2%)
Packard Hughes Interconnect Company (Delaware)

**DELPHI CONFIDENTIAL**
\*Not limited to Steering Business

**Rev. 05/27/09**

# SCHEDULE 1.1.F*

# FILING AFFILIATES

Specialty Electronics International Ltd. (Virgin Islands)
Specialty Electronics, Inc. (South Carolina)

**DELPHI CONFIDENTIAL**
*Not limited to Steering Business

**Rev. 5/28/09**

## SCHEDULE 4.13.4
## ERISA COMPLIANCE

See Schedule 4.13.6

**DELPHI CONFIDENTIAL**

**Rev. 06/04/09**

**SCHEDULE 9.13.1**

**COMPETITION CLEARANCE/GOVERNMENT APPROVALS**

A.  GM Transaction

1. United States
2. China – done
3. South Korea
4. Europe – update to earlier filing
5. Brazil – new filing
6. Mexico
7. Australia - done

B.  Platinum Transaction

1. Brazil
2. Canada
3. China
4. Columbia
5. EU
6. Mexico
7. Russia
8. South Korea
9. Turkey
10. Ukraine
11. United States

**DELPHI CONFIDENTIAL**

Rev. 05/29/09

# SCHEDULE 9.17

# OTHER SERVICES

Products/Services included within Section 9.17
Equipment Leases
IT and telecommunication service providers
Electric, Gas, Water and Utility services
Medical services
Transportation and Logistics services
Warehousing services
Facilities Services
Cafeteria Services
Wastewater Services
Security Services
Cleaning Services
Mail Services
Maintenance Services
Uniform Services
Cell Phones
Credit cards
Contract House/Placement services
Office supplies

Products/Services excluded from Section 9.17
Treasury Services
Risk Management and insurance services
Life and Disability related services
Customs Services
Insurance services
Expatriate related services
Legal Services
Tax Services
Marketing and advertising
Political Action Committee services
Financial and Accounting services

**DELPHI CONFIDENTIAL**

**Rev. 05/9/09**

# SCHEDULE 10.1.2

# APPROVALS UNDER COMPETITION OR INVESTMENT LAW

See Schedule 9.13.1

**DELPHI CONFIDENTIAL**

### EXHIBIT 11.2.5

### ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**") is made as of _____, **2009,** by and among **GM COMPONENTS HOLDINGS, LLC,** a Delaware limited liability company (the "**GM Buyer**"), on the one hand, and **DELPHI CORPORATION,** a Delaware corporation, on behalf of Filing Affiliates that are parties to Acquired Contracts to be assigned to GM Asset Buyers (collectively, "**Delphi**") on the other hand, pursuant to that certain **Master Disposition Agreement**, dated **June 1, 2009** by and among Delphi, GM Buyer and Company Buyer (as the same may be amended from time to time, the "**Disposition Agreement**"). Capitalized terms used herein, unless otherwise defined herein, shall have the meanings ascribed to them in the Disposition Agreement.

### RECITALS:

**WHEREAS,** on October 8, 2005, Seller filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended, in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**");

**WHEREAS,** pursuant to that certain order entered by the Bankruptcy Court on _____, 2009 (the "**Modification Approval Order**"), approving, among other things, the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (the "**Modified Plan**") and the Disposition Agreement, which provides for: (i) the sale of certain of Delphi's assets comprising substantially all of the Business free and clear of liens, claims and encumbrances; (ii) the assumption and assignment of certain executory contracts and unexpired leases; and (iii) the assumption of certain liabilities;

**WHEREAS,** pursuant to the provisions of the Disposition Agreement: (i) Delphi is concurrently herewith selling, conveying, transferring, assigning and delivering to GM Buyer and GM Buyer is concurrently herewith purchasing and accepting from Delphi, all of Delphi's right, title and interest in and to the Acquired Contracts; and (ii) Delphi is concurrently herewith assigning, transferring and setting over and GM Buyer is assuming the obligations to be performed under the Acquired Contracts, in each case, to the extent provided in the Disposition Agreement (the "**Acquired Contracts Liabilities**"); and

**WHEREAS,** (i) Delphi desires to assign its interest in and to the Acquired Contracts and Acquired Contracts Liabilities to GM Buyer as set forth in the Disposition Agreement; and (ii) GM Buyer shall acquire and assume the interests and obligations in and to the Acquired Contracts and Acquired Contracts Liabilities as set forth in the Disposition Agreement.

### AGREEMENT:

**NOW, THEREFORE,** in consideration of the premises set forth above and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereby agree as follows:

1

GM ASSIGNMENT & ASSUMPTION AGR

**6/8/09**

1.  Delphi has assumed the Acquired Contracts pursuant to the Disposition Agreement, as approved in the Modification Approval Order and Delphi hereby irrevocably sells, conveys, transfers, assigns and delivers to GM Buyer all of Delphi's right, title and interest in and to the Acquired Contracts to the extent provided in the Disposition Agreement, provided however, that as set forth more fully in Section 9.3 of the Disposition Agreement, GM Buyer shall pay the related Cure Amounts.

2.  GM Buyer hereby irrevocably: (i) accepts the sale, conveyance, transfer, assignment and delivery of the Acquired Contracts pursuant to the Disposition Agreement; and (ii) assumes the Acquired Contracts Liabilities.

3.  GM Buyer and Delphi agree that this Agreement is subject to the terms and conditions of the Disposition Agreement, including without limitation the representations, warranties, covenants, exclusions and indemnities set forth therein, and that this Agreement shall not be deemed to limit, enlarge or extinguish any obligation of GM Buyer or Delphi under the Disposition Agreement, all of which obligations shall survive the delivery of this Agreement in accordance with the terms of the Disposition Agreement. In the event of any inconsistency between the terms and conditions of this Agreement and those of the Disposition Agreement, the terms and conditions of the Disposition Agreement will govern and control. Delphi does not make any representation or warranty, whether express or implied, herein with respect to the Acquired Contracts or Acquired Contracts Liabilities.

4.  Delphi hereby appoints GM Buyer, its successors and permitted assigns, the true and lawful attorney, irrevocably, of Delphi with full power of substitution, in the name of Delphi or otherwise, and on behalf of and for the benefit of GM Buyer, its successors and permitted assigns: (a) to enforce the Acquired Contracts hereby assigned or intended so to be and to give receipts, releases and acquittances for and in respect to the same or any part thereof; and (b) from time to time to institute, prosecute, compromise and settle as such party's assignee, any and all proceedings at law, in equity or otherwise, which GM Buyer, its successors and permitted assigns may deem proper to collect, assert or enforce any claim, title or right hereby assigned or intended to so be, that GM Buyer, its successors and permitted assigns may deem desirable; *provided, however*, that except as may be set forth in the Disposition Agreement, any actions taken by GM Buyer, its successors and permitted assigns pursuant to the foregoing appointment shall be at GM Buyer's sole cost and expense without liability to Delphi. Delphi hereby acknowledges that the appointment hereby made and the powers hereby granted are coupled with an interest and are not and shall not be revocable by it in any manner or for any reason.

5.  This Agreement shall be binding upon the Parties hereto and their respective successors and permitted assigns and shall inure to the benefit of, and be enforceable by, the Parties hereto and their respective successors and permitted assigns.

6.  No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in a writing specifically referencing this Agreement and duly executed by the party against whom enforcement of the amendment, modification, discharge or waiver is sought. Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the party granting such waiver in any other respect or at any other time.

7.  This Agreement shall be construed by and governed in accordance with the Laws of the State of New York, without giving effect to any choice of law or conflict of law

2

GM ASSIGNMENT & ASSUMPTION AGR

**6/8/09**

provision or rule that would cause the application of the Laws of any jurisdiction other than the State of New York.

8.  The Parties irrevocably and unconditionally submit to the jurisdiction of the Bankruptcy Court for any litigation arising out of or relating to this Agreement and the transactions contemplated hereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court).

9.  Every term and provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such term of provision will be enforced to the maximum extent permitted by law and, in any event, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

10. The headings and subheadings of this Agreement are inserted for convenience of reference only and shall not affect the interpretation of this Agreement.

11. This Agreement may be executed in one or more counterparts for the convenience of the parties hereto, all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF,** this Agreement has been duly executed and delivered by the duly authorized officers of Delphi and GM Buyer as of the date and year first written above.

**GM COMPONENTS HOLDINGS, LLC**

Executed on _____, **2009**     By:_____
                                        Name:
                                        Title:

**DELPHI CORPORATION**

Executed on _____, **2009**    By:_____
                                        Name:
                                        Title:

3

GM ASSIGNMENT & ASSUMPTION AGR

**EXHIBIT 11.4.2**

**QUIT CLAIM DEED**

**KNOW ALL MEN BY THESE PRESENTS:** That **Delphi Automotive Systems LLC,** a Delaware limited liability company ("**Grantor**"), whose address is 5725 Delphi Drive, Troy, Michigan 48098, for good and valuable consideration, quit claims to _____**,** a _____corporation ("**Grantee**"), whose address is _____, all of its right, title and interest in and to the following described premises situated in the Township of Buena Vista, County of Saginaw and State of Michigan, to-wit:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

together with all improvements thereon and claims to water, tenements, hereditaments, appurtenances and all rights and interests whatsoever therein or related thereto. Because the transaction contemplated by this Quit Claim Deed has been authorized pursuant to an Order of the United States Bankruptcy Court for the Southern District of New York under a chapter 11 plan of Grantor in the matter entitled [_____, Case No. _____], this conveyance is exempt from transfer taxes, stamp taxes, or any other similar taxes pursuant to 11 U.S.C. § 1146(c).

The Grantor further grants to the Grantee the right to make any and all divisions under Section 108 of the Land Division Act, Act No. 288 of the Public Acts of 1967, as amended.

This Property may be located within the vicinity of farmland or a farm operation.  Generally accepted agriculture and management practices which may generate noise, dust, odors, and other associated conditions may be used and are protected by the Michigan Right to Farm Act.

Dated this _____ day of _____, **2009**.

                                        **DELPHI AUTOMOTIVE SYSTEMS LLC,**
                                        a Delaware limited liability company

                                        By:_____
                                        Print Name:_____
                                        Its:    Authorized Signatory

STATE OF MICHIGAN          §
                                      §
COUNTY OF OAKLAND      §

      The foregoing instrument was acknowledged before me this \_\_\_\_\_ day of _____, 2009 by _____, the Authorized Signatory of Delphi Automotive Systems LLC.

      GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _____ day of _____, 2009.

_____
Notary Public, State of Michigan, County of _____
My commission expires:_____

**When Recorded Return To:**                  **Drafted by:**

                                                      Sean P. Corcoran, Esquire
                                                      Delphi Automotive Systems
                                                      5725 Delphi Drive
                                                      MC:  483-400-603
                                                      Troy, MI  48098

**Send Subsequent Tax Bills To:**  Grantee

Tax Parcel #_____     Recording Fee _____     Revenue Stamps _____

# EXHIBIT "A"
# LEGAL DESCRIPTION

Land situated in the Township of Buena Vista, Saginaw County, Michigan, described as follows:

A part of the East 3/4 of the South 1/2 of Section 28, Town 12 North, Range 5 East, Buena Vista Township, Saginaw County, Michigan, described as follows:  To fix the point of beginning: COMMENCE at the Southeast corner of Section 28; thence North 00°30'30" West, on the East line of said Section, 4.52 feet to the Northerly line of the Chesapeake and Ohio Railroad right-of-way; thence North 77°44'30" West, on said Northerly line, 64.59 feet to the point of beginning of this description; thence North 00°30'30" West, on a line which is parallel to and 63.00 feet, measured at right angles, West of said East Section line, 2,606.85 feet to the East and West 1/4 line of said Section; thence North 90°00'00" West, on said 1/4 line, 1,970.65 feet; thence South 00°42'43" West, 50.00 feet; thence North 90°00'00" West, parallel to said East and West 1/4 line, 388.81 feet; thence North 00°42'43" West, 50.00 feet; thence North 90°00'00" West, on said East and West 1/4 line, 144.01 feet to the centerpost of said Section; thence South 00°42'43" West, on the North and South 1/4 line, 100.01 feet; thence North 90°00'00" West, 99.01 feet; thence South 00°42'43" West, 16.68 feet; thence South 89°58'13" West, 68.13 feet to the point of curvature of a curve of a 365.74 foot radius curve to the left; thence Southwesterly along the arc of said curve, 405.92 feet to the point of tangency of said curve, said arc being subtended by a chord bearing South 58°10'31.5" West, 385.40 feet to said point of tangency; thence South 26°22'50" West, 989.25 feet to the point of curvature of a 879.93 foot radius curve to the left; thence Southwesterly along the arc of said curve, 324.46 feet to the point of tangency of said curve, said arc being subtended by a chord bearing South 15°49'01.5" West, 322.63 feet to said point of tangency; thence South 05°15'13" West, 222.23 feet; thence South 00°17'13" West, 92.02 feet to the Northerly line of the Chesapeake and Ohio Railroad right-of-way; thence South 77°44'30" East, on said Northerly right-of way line, 3,654.26 feet to the point of beginning.

Also, a part of the East 3/4 of the South 1/2 of Section 28 and a part of the East 3/4 of the North 1/2 of Section 33, Town 12 North, Range 5 East, Buena Vista Township, Saginaw County, Michigan, described as follows: To fix the point of beginning:  COMMENCE at the Northeast corner of said Section 33 which is also the Southeast corner of said Section 28; thence South 00°43'00" West, on the East line of Section 33, 97.54 feet to the Southerly line of the Chesapeake and Ohio Railroad right-of-way; thence North 77°44'30" West, on said Southerly right-of-way line, 64.30 feet to the point of beginning of this description; thence South 00°43'00" West, on a line which is parallel with and 63.00 feet, measured at right angles, West of said East Section line, 2,468.71 feet; thence North 89°56'00" West, on a line which is parallel to and 75.50 feet, measured at right angles, North of the East and West 1/4 line of Section 33, 907.00 feet; thence North 00°43'00" East, on a line which is parallel to and 970.00 feet, measured parallel to said East and West 1/4 line, West of said East line of Section 33, 10.50 feet; thence North 89°56'00" West, on a line which is parallel to and 86.00 feet, measured at right angles, North of said East and West 1/4 line, 1,479.72 feet to the point of curvature of a curve to the right having a radius of 630.20 feet; thence Northwesterly on the arc of said curve to the right being a line which is concentric to and 86.00 feet, measured radially, Northeasterly of the centerline of Hess Road relocated, 180.40 feet to a point on the North and South 1/4 line of said Section 33, said arc being subtended by a chord bearing North 81°43'58" West, 179.78 feet to said point; thence South 00°51'00" West, on said North and South 1/4 line, 88.85 feet to a point

3 of 4

on the centerline of Hess Road relocated which is North 00°51'00" East, 22.80 feet from the centerpost of said Section 33; thence Northwesterly 170.75 feet along said centerline of Hess Road relocated and the arc of a curve to the right to the point of tangency, said curve having a radius of 716.78 feet, said arc being subtended by a chord bearing North 68°37'20" West, 170.34 feet to said point of tangency; thence North 61°47'52" West, along said centerline, 317.26 feet to the point of curvature of a curve to the left having a radius of 716.78 feet; thence Northwesterly along the arc of said curve, 227.34 feet to a point on the West line of the East 1/2 of the East 1/2 of the Northwest 1/4 of said Section 33, said arc being subtended by a chord bearing North 70°53'02.5" West, 226.39 feet to said point; thence North 00°54'40" East, along said line, 50.59 feet to a point on the arc of a 766.78 foot radius curve to the left; thence Westerly, along the arc of said curve to the left, 99.42 feet to a point on said arc, said arc being subtended by chord bearing North 83°56'46.2" West, 99.35 feet to said point, thence North 00°54'40" East, 25.00 feet to a point on the arc of a 791.78 foot radius curve to the left; thence Westerly, along the arc of said 791.78 foot radius curve to the left, 26.27 feet to the point of tangency, said arc being subtended by chord bearing North 88°58'58" West, 26.27 feet to said point of tangency; thence North 89°56'00" West, along the North line of relocated Hess Road, 232.78 feet to the Easterly right-of-way of Highway I-75; thence Northerly along the arc of a 3,744.83 foot radius curve to the right, 148.53 feet to the point of tangency of said curve, said arc being subtended by a chord bearing North 00°51'10.6" West, 148.53 feet to said point of tangency; thence North 00°17'00" East, along the East line of Highway I-75, 2,098.62 feet to the North line of said Section 33; thence continuing North 00°17'00" East, on said East line and into Section 28 aforesaid, 357.32 feet; thence North 51°15'33" East, 39.90 feet; thence North 00°17'00" East, 290.64 feet to the Southerly line of the Chesapeake and Ohio Railroad right-of-way; thence South 77°44'30" East, on said right-of-way line, 1,157.91 feet; thence South 65°49'30" East, continuing along said right-of-way line, 290.58 feet; thence South 77°44'30" East, on said right-of-way line, 1,522.35 feet; thence South 85°05'30" East, on said right-of-way line, 468.78 feet; thence South 77°44'30" East, on said right-of-way line, 216.64 feet to the point of beginning.