Judge Robert D. Drain

June 5, 2009

36

U.S. Bankruptcy Court

One Bowling Green

New York, N.Y.    VIA FAX 914-390-4073

RE: Case # 05-44481

Dear Judge Drain,

When DSRA's Paul Dobosz met with Mr. Bloom of the PBGC in Washington as part of the salaried automotive retiree group late in April, he indicated that preservation of pension plans was a high priority for him. He also emphasized that he was looking for reasonable solutions despite a very difficult set of circumstances. I am contacting you today because we have been advised by reliable sources that a decision on the disposition of the Delphi salaried pension plan is imminent and that now is the time to take action if a turnover to the PBGC is to be avoided. Delphi salaried retirees need task force assistance at this time to help avoid this additional blow to a group that is already hurting badly from the loss of health and life insurance benefits. We would propose, as a reasonable solution, best for all involved that GM roll the Delphi Pension fund and Salaried retirees into the GM Salaried retirees Pension fund and program.

**Here is a summary of facts concerning the current situation:**

1. The Delphi Salaried Pension Plan is underfunded by approximately $2 billion which Delphi is unlikely to be able to make up anytime soon.

2. Virtually all of the plan's participants worked over 2/3 (25+yrs) of their career as GM salaried employees some spending as little as a few months as Delphi employees prior to retirement.

3. The GM salaried pension plan is far better funded than the Delphi plan so folding the Delphi salaried pension plan into GM's plan is a reasonable move from both a financial and ethical standpoint.

**We believe that what we propose is in the best interest of all stakeholders in the GM/Delphi restructuring process for the following reasons:**

4. Delphi salaried retirees have already suffered disproportionate losses with respect to their auto industry peers and should at least have their pensions preserved.

5. Delphi cannot emerge from Chapter 11 without resolving the salaried pension issue therefore they must either turn pensions over to PBGC or return them to GM from where the original liability came.

6. PBGC currently holds liens on many assets that Delphi needs to sell to emerge from Chapter 11. This action would clear those liens enabling Delphi to proceed with its reorganization.

7. GM currently intends to purchase several of the Delphi assets with PBGC liens. This action would also allow those acquisitions to proceed unimpeded.

8. PBGC will avoid the assumption of another large underfunded pension plan.

9. The US Treasury will collect additional taxes on the increased pension amounts paid to retirees over the lifetime of the annuities.

In closing, I ask you to use your considerable influence in the restructuring process to achieve the transfer of the Delphi Salaried pension plan back to GM from where it originated. GM has played a significant role in Delphi's salaried retirees' current troubled situation starting with the Separation Agreement, imposing their handpicked management team, and saddling Delphi with non competitive supply contracts. I hope you will recognize that the deck was stacked against Delphi's salaried retirees at the spinoff and do what is both reasonable and right.

Sincerely,


Charles E. Bernd, member of

Delphi Salaried Retiree Association

p.s. I have never worked for Delphi, but I am caught in a precarious situation due to the "corporate chess game" being played by GM. I would be happy to provide details if you want.



Charles Bernd
5286 Thompson Rd.
Clarence, NY 14031-1122