

### Send a fax for free

**Recipient Information**

To: Judge Drain
Fax #: 9143904073

**Sender Information**

From: Mark Kearney
Email address: markearney@aol.com
Sent on: Thursday, June 11 2009 at 2:03 AM CDT

This fax was sent using the FaxZero.com free fax service. FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 800-980-6858. Specify fax #1998250. We will add your fax number to the block list.

Mark B. Kearney
3201 S. 150 E.
Kokomo IN 46902

Retired from Delphi E & S Kokomo 12/1/2008

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

In Re:                                              Chapter 11
                                                    Case No. 05-44481 (RDD)
DELPHI CORPORATION, et al.,                         (Jointly Administered)

        Debtors

-------------------------------------------------

### OBJECTION OF MARK B KEARNEY, AS A DELPHI SALARIED RETIREE, TO (A) SUPPLEMENT TO MOTION FOR ORDER (I) APPROVING MODIFICATIONS TO DEBTORS FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED) AND RELATED DISCLOSURES AND VOTING PROCEDURES AND (II) SETTING FINAL HEARING DATE TO CONSIDER MODIFICATIONS TO CONFIRMED FIRST AMENDED PLAN OF REORGANIZATION AND (B) REQUEST TO SET ADMINISTRATIVE EXPENSE CLAIMS BAR DATE AND ALTERNATE SALE HEARING DATE

Mark B. Kearney, as a Delphi Salaried Retiree, hereby objects to the (a) Supplement to Motion for Order (i) Approving Modifications to Debtors First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (ii) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (b) Request to Set Administrative Expense Claims Bar Date and Alternate Sale Hearing Date (the Motion )1 filed by Delphi and its debtor subsidiaries and affiliates (collectively, the Debtors ), stating as follows:

#### Statement

I retired from Delphi E & S, Kokomo IN on December 1, 2008 after 40 years of credited service; the first 31 years of service were with GM and the last 9 with Delphi following the GM/Delphi separation. In February, 2009 I learned my promised health and life insurance benefits were

being terminated. Delphi is now asking the Court to approve an emergence plan that allows it to walk away from its pension obligations to salaried retirees. While Delphi has made a case that the Court approved that the OPEB obligations were discretionary and could be terminated, the salaried pension obligations remain just that: obligations that Congress has sought to protect by law. Now Delphi seeks to walk away free and clear of these obligations through their modified emergence plan. I strongly object to any approval that the Court grants that allows Delphi to renege on this obligation for the following reasons:

**1) Delphi has not represented the Salaried Retirees in good faith.**

Delphi has vehemently objected to the Court allowing formation of a Salaried Retirees Committee to represent the retirees in bankruptcy proceedings on at least two occasions. Only by action of the Court does a "limited" committee exist at this time. While Delphi has claimed that provisions in past plans for emergence included sustaining the salaried defined pension plan, they neglect to include that it is provided by law that these plans be maintained. Delphi Senior management claims that every effort has been expended to preserve the benefit, yet it is clear that this same management stands to reap substantial personal financial benefit upon successful emergence from bankruptcy. This leads to the conclusion that their efforts for an expeditious exit from Chapter 11 would clearly trump any action on their part that would benefit the salaried retirees if that action were to jeopardize an exit plan.

**2) Delphi has intentionally defaulted on required Salaried Pension Fund payments**

By not completing payments to the salaried pension fund as required by law-- but excused by this Court -- Delphi has further placed itself in position to walk away from the obligations. In other words, not making payments as required by law has caused the under-funding to be compounded, making the debt heavier such that Delphi claims it is too much of a burden to address. This is analogous to an individual running up credit card debt, and then running up substantial additional debt knowing that that individual will be more likely to have more debt forgiven as the debt is increased. Laws were enacted to provide minimum pension fund levels to prevent this very thing from happening -- when not enforced this is the result. The retiree suffers; the former employer reaps the reward.

**3) GM stands to gain from this plan without full responsibility for its obligations**

Most, if not all, of the salaried retirees have substantial service with GM. Since the minimum service level for normal retirement is 30 years and it has been less than 10 years since the GM/Delphi spin-off, it can be assumed that most Delphi Salaried Retirees have greater than 20 years of service with GM. It is questionable that GM provided sufficient funding at the time of the spin-off for adequate pension funding. Yet now, as part of this plan, GM will use a

substantial sum of federally provided moneys to fund their acquisition of Delphi assets without assuming any responsibility for the shared obligation of the salaried retirees' pensions. If GM is to be approved as a party to this plan, it should be required that they assume obligation for at least their its share of the salaried retirees' pension funding.

### 4) The PBGC is being used as means by Delphi to absolve itself of its obligations.

The PBGC was instituted to protect retirees' pension benefits. Minimum funding requirements were instituted to further protect these benefits and limit the risk assumed by the PBGC. When employers such as Delphi ignore funding requirements and then turn over pension funds to the PBGC, the present situation only gets worse. More employers will allow their funds to be short changed knowing that the PBGC will be forced to assume the plan, and the liabilities of the PBGC will continue to multiply as they have. The PBGC has tried to limit their exposure in the Delphi case by placing liens on some of Delphi's assets, yet Delphi continues to fight the validity of these liens at every turn. At the rate things are going, the mere presence of the PBGC will likely cause more plans to fail if Delphi is permitted to walk away from this obligation as it intends.

### Summary

If Delphi's emergence plan goes as proposed, there will be clear winners and losers. Delphi stockholders have already assumed substantial losses as will creditors and bondholders. GM will use federal funds to assume substantial assets and yet will assume some obligations which they rightfully own (such as hourly employee benefits). Platinum Group gets substantial assets for very little investment. But the clear winners? Delphi walks away from this plan having lost virtually nothing other than stripping itself of nearly all of its obligations, its management team well rewarded and its counsel well paid to the tune of $500M or so. The big losers? Again, the salaried retiree group, fundamentally because of those countless years of service that were based on trust and promises, not legally binding contracts.

I respectfully urge the Court to reject this proposal.

Mark Kearney
Kokomo, IN 46902