Michael H. Froning
1079 Berryhill Rd
Bellbrook, OH 45305-9700

June 16, 2009

Honorable Robert D. Drain
United States Bankruptcy Judge - Southern District of NY
One Bowing Green
New York, NY 10004 -1408

Reference: Docket Number 05-44481 (RDD)

Dear Judge Drain,

I respectfully object to Article 9.5.11 of the June 1, 2009 Delphi Master Disposition Agreement which seeks to terminate severance payments upon the date of Delphi's emergence from bankruptcy. I object based upon the following basis.

1. I was terminated by Delphi effective January 1, 2009. Employees terminated prior to January 1, 2009 received their severance in a lump sum. The Release of Claims contract document that I signed was rewritten in the fourth quarter of 2008, to include twelve monthly severance installments. Now, Delphi is trying to change the terms of the contract to say the severance was pre-petition. The severance contract that I entered into with Delphi did not even exist in its current form before Delphi went into bankruptcy.

    Those of us who stayed with the company to ensure an orderly closing of Delphi's manufacturing facilities are now being disenfranchised by the very corporation that depended upon us to protect the corporation's assets during facility closure.

2. The Release of Claims was a binding legal contract between Delphi and me. It required that I release all future claims against the corporation in return for receipt of twelve monthly severance payments. I gave up future potentially valuable legal and financial considerations in return for the severance payments. I entered into that contract on November 5, 2009 while the corporation was in bankruptcy (debtors in possession). They have already paid me a portion of my severance. By paying the first portion of my severance, they are in effect admitting that the payments are legally binding and NOT pre-petition. I have honored my portion of the contract and I expect Delphi to honor their portion of the contract as well.

3. Severance payments are a contracted liability and not an employee benefit. The signed Release of Claims included the words, "This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation". There was no stipulation in the written agreement for later

Michael H. Froning
1079 Berryhill Rd
Bellbrook, OH 45305-9700

June 16, 2009

Honorable Robert D. Drain
United States Bankruptcy Judge - Southern District of NY
One Bowing Green
New York, NY 10004 -1408

Reference: Docket Number 05-44481 (RDD)

Dear Judge Drain,

I respectfully object to Article 9.5.11 of the June 1, 2009 Delphi Master Disposition Agreement which seeks to terminate severance payments upon the date of Delphi's emergence from bankruptcy. I object based upon the following basis.

1. I was terminated by Delphi effective January 1, 2009. Employees terminated prior to January 1, 2009 received their severance in a lump sum. The Release of Claims contract document that I signed was rewritten in the fourth quarter of 2008, to include twelve monthly severance installments. Now, Delphi is trying to change the terms of the contract to say the severance was pre-petition. The severance contract that I entered into with Delphi did not even exist in its current form before Delphi went into bankruptcy.

   Those of us who stayed with the company to ensure an orderly closing of Delphi's manufacturing facilities are now being disenfranchised by the very corporation that depended upon us to protect the corporation's assets during facility closure.

2. The Release of Claims was a binding legal contract between Delphi and me. It required that I release all future claims against the corporation in return for receipt of twelve monthly severance payments. I gave up future potentially valuable legal and financial considerations in return for the severance payments. I entered into that contract on November 5, 2009 while the corporation was in bankruptcy (debtors in possession). They have already paid me a portion of my severance. By paying the first portion of my severance, they are in effect admitting that the payments are legally binding and NOT pre-petition. I have honored my portion of the contract and I expect Delphi to honor their portion of the contract as well.

3. Severance payments are a contracted liability and not an employee benefit. The signed Release of Claims included the words, "This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation". There was no stipulation in the written agreement for later

eliminating a portion of the severance payments. Delphi should be required to pay me the remainder of my severance payments at the time of, and as a condition of, their emergence from bankruptcy.

4. The number of employees affected is limited to only those who left the corporation on between January 1, 2009 and June 1, 2009. The amount of financial liability related to remaining owed severance payments is limited and should not impact the ability of Delphi to emerge from bankruptcy. We are being penalized while the majority of employees, who left before us, are not affected. In addition, a handful of employees who were retained until June 1, 2009 have been placed on temporary lay-off until the corporation emerges from bankruptcy. The plan is to terminate them after emergence so they can receive their severance. The corporation is trying to play by two sets of rules.

5. During bankruptcy, Delphi Corporation was allowed to forego payments into the salaried pension fund, leaving it almost 50% under funded. Now the corporation plans to default and send the fund to the PBGC. Previously, Delphi eliminated salaried retiree health and life insurance. Meanwhile, liability for the hourly retiree insurance and pension funds has been assumed by General Motors. In addition, General Motors is reacquiring some of the old Delphi plants in order to protect their supply base. Everyone has been protected but the Delphi salaried employees. The elimination of severance payments is an attempt to once again, disenfranchise a limited number of former salaried employees, most of them in their late fifties and financially dependant upon receiving the money they are still owed by Delphi.

Please do not permit Delphi to terminate remaining severance payments. Delphi should be required to pay the remaining severance liability in a lump sum at the time of and as a condition of emergence from bankruptcy.

Respectfully,

Michael H. Froning
(937) 429-4621 (Home)
(937) 654-9930 (Cell)
(786) 549-2429 (Fax)