John C. Crawford
710 Wilkshire Court
Grand Blanc, MI  48439


June 19, 2009



Honorable Robert D. Drain
United States Bankruptcy Judge – Southern District of NY
One Bowling Green
New York, NY 10004-1408


Reference Case Number 05-44481 (RDD)


Dear Judge Drain:

My purpose in writing this letter is to file objection to Article 9.5.11 of the Delphi Master Disposition Agreement, dated June 1, 2009 (revised June 16, 2009) and to plead that you please intervene to ensure just and proper treatment under the law, as regards severance (or termination) contracts, for me and for many others who have been separated from Delphi Corporation under terms of Delphi's Separation Allowance Plan.

On January 15, 2009 I (and Delphi) signed a Delphi Corporation Separation Allowance Plan Release of Claims which stipulated that, effective March 1, 2009 and in exchange for me waiving a long list of rights*, I would receive, among other things, severance payments equaling one year's worth of my salary at the rate in effect on March 1, 2009.  If Delphi is allowed to break its severance payment contract with me upon its emergence from Chapter 11 bankruptcy, I will lose a substantial sum of money in spite of the fact that I have faithfully abided by the terms of my separation contract with Delphi.  I would argue that, if this is allowed to occur, it would not constitute justice in the eyes of any reasonable and ethical person(s).

It has been brought to my attention that some parties are claiming the severance agreements in question fall into a "pre-petition" status.  I would argue that this is not the case.  Delphi petitioned for Chapter 11 bankruptcy in October of 2005.  To my knowledge, virtually all, if not all, the severance contracts that Delphi is now seeking to break were jointly signed by Delphi and separated employees in 2008 and 2009.  These are clearly "post-petition" contracts for which Delphi accepted liability when it was already in bankruptcy.  In my case, I was informed by Delphi's Human Resources Representative, that both Delphi's lawyers and the Bankruptcy Court had to approve the terms of my separation agreement (contract) before Delphi could sign it.

As you consider the legal merits of pleas from me and many other Delphi separated employees to have the severance pay portions of our separation agreements fully honored, I ask you to please keep in mind that we have already lost our company paid health and life insurance

1 | P a g e

benefits, and we face pension reductions if our pensions are transferred to the Pension Benefit Guarantee Corporation. For many of our Delphi salaried retirees, this pension reduction will be financially devastating. In contrast to that, I ask you to consider that the relative financial liability to Delphi for honoring/continuing severance payments is low.

I have repeatedly used the word "contract" in this letter. I'll use it once more. The matter of separation agreements and accompanying severance pay does not represent a unilateral benefit graciously bestowed by Delphi upon separated employees. Rather, it represents bi-lateral, binding, valid legal contracts that we, former Delphi employees, expect to be honored.

Finally, I believe that severance payments are Administrative Claims. As such, I will be filing an Administrative Expense Claim Form with the court in the very near future.

Thank you for your attention to this matter.

Respectfully,

*John C. Crawford*

John C. Crawford

*From the Delphi Corporation Separation Allowance Plan Release of Claims signed by Delphi and me on January 15, 2009:

"In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, agents, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination and Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi."