Marc Abrams  
Michael J. Kelly  
Richard Mancino  
Christopher J. St. Jeanos  
WILLKIE FARR & GALLAGHER LLP  
787 Seventh Avenue  
New York, NY 10019-6099  
(212) 728-8000  

Hearing Date: July 23, 2009

*Counsel to the Collective of DIP Lenders*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------x  
                                                    :  
    In re                                  :        Chapter 11  
                                                    :  
DELPHI CORPORATION, et al.,    :        Case No. 05-44481 (RDD)  
                                                    :  
                    Debtors.      :        (Jointly Administered)  
                                                    :  
-------------------------------------------------------x  

**PRELIMINARY OBJECTION OF THE COLLECTIVE OF
DIP LENDERS TO (A) CONFIRMATION OF DEBTORS'
FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED)
AND (B) APPROVAL OF DEBTORS' PROPOSED SECTION 363 SALE**

A collective of Lenders under the DIP Credit Agreement (together, the "Collective"[1]), with significant holdings of Tranche A, B and C loans, by and through its undersigned counsel, hereby submits this Preliminary Objection To (A) Confirmation of Debtors' First Amended Plan of Reorganization (as Modified) (the "Modified Plan") and (B) Approval of Debtors' Proposed Section 363 Sale (the "363 Sale"), and in further support of this Preliminary Objection, and without prejudice to the Collective's ability to supplement and

---

[1] The Collective includes: (i) Double Black Diamond Offshore Ltd.; (ii) Black Diamond Offshore Ltd.; (iii) Monarch Master Funding Ltd.; (iv) Greywolf Capital Partners II LP; (v) Greywolf Capital Overseas Master Fund; (vi) GCOF SPV I; (vii) GCP II SPV I; (viii) Greywolf Structured Products Master Fund, Ltd.; (ix) Greywolf CLO I, Ltd.; and (x) SPCP Group, LLC.

expand upon this Preliminary Objection at the appropriate time, the Collective respectfully represents as follows:

## BACKGROUND

1. Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (collectively, the "Debtors") have been in chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for close to four years. A plan of reorganization was confirmed in 2008, but not consummated, and since then the Debtors have operated their businesses under the supervision of the Court.

2. The members of the Collective are parties to the DIP Credit Agreement.[2] The DIP Lenders as a group are owed in excess of $3.25 billion in principal, plus accrued interest. The DIP Lenders hold superpriority liens on substantially all assets of the Debtors (the "Collateral"). The Collective alone holds approximately $800 million in Tranche A, B and C loans.

3. Delphi's secured DIP Lenders, with significant input from the Collective, have worked with the Debtors to try and help them achieve a successful reorganization. Despite holding unquestioned rights as postpetition secured lenders – including, in the company's own words, "administrative and superpriority claims and superpriority liens and . . . the right to avoid having their claims subjected to compromise without their consent under a chapter 11 plan of reorganization"[3] – the DIP Lenders have made numerous concessions to assist Delphi in emerging from chapter 11 and to ensure the continuation of supply to the North American

---

[2] The Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement, dated as of May 9, 2008, with JPMorgan Chase Bank N.A., as Administrative Agent.

[3] Debtors' Omnibus Reply in Support of Accommodation Motion and Response to Tranche C Collective's Cross-Motion Pursuant to 11 U.S.C. §§ 105(a), 361, 363(e) and 1107(a) For Adequate Protection (the "Omnibus Reply"), Docket 14481 at ¶ 9.

automotive industry. Their goal has been, and continues to be, to maximize Delphi's value so that they can obtain a fair recovery consistent with their rights as postpetition secured lenders and their own duties to their investors. While the Collective has been and will continue to be supportive of a transaction by which General Motors Corporation ("GM") can obtain the North American assets it needs to produce cars and trucks without interruption, the DIP Lenders are entitled to approve the sale of their Collateral or take control of it through other means, including foreclosure proceedings.

4. On June 1, 2009, the Debtors filed a motion (the "Plan Modification Motion") seeking to schedule a hearing on the Modified Plan, and related disclosures and voting procedures, and seeking an alternative sale hearing date to consider the proposed transaction (the "Proposed Transaction") that is outlined as a private sale under section 363 of the Bankruptcy Code. The Proposed Transaction that Delphi disclosed for the first time in its Plan Modification Motion consists of the Master Disposition Agreement (the "MDA"), dated as of June 1, 2009, among Delphi, General Motors Corporation Components Holdings, LLC ("Parent," and together with certain other buyers, the "GM Buyers"), GM, and Parnassus Holdings II, LLC ("Parnassus"), a joint venture between GM and Platinum Capital Equity Partners, L.P. ("Platinum") (for which GM is providing 88% of the equity[4]). Pursuant to the MDA, Delphi proposes to sell substantially all of its productive assets to the GM Buyers and Parnassus at a discount in exchange for their assumption of specified liabilities and certain other consideration. Unfortunately, by agreeing to this secretly negotiated transaction, Delphi abdicated its fiduciary and contractual obligations to maximize the value of the DIP Lenders' Collateral.

---

[4] See GM Form 8-K, filed with the U.S. Securities and Exchange Commission on June 5, 2009.

5.  As the Collective and other stakeholders have demonstrated in their objections to the Debtors' Plan Modification Motion, the Modified Plan cannot be confirmed in its present form because it is premised upon a deeply flawed and fundamentally unfair series of transactions[5] that purport to strip away the unassailable superpriority liens of secured postpetition debtor-in-possession lenders and divert the collateral securing those liens without the consent – and over the objections – of those lenders.  That same transaction cannot be approved even if reconfigured, as Debtors promise to do, as a stand-alone sale under section 363 of the Bankruptcy Code.  Neither the Modified Plan nor the 363 Sale will command the support required under the DIP Credit Agreement and, therefore, they are incapable of being confirmed or implemented.

6.  At the June 10, 2009 hearing on the Plan Modification Motion, the Court made clear that there needs to be an open and competitive process by which the Debtors' businesses can be marketed and alternative proposals can be attracted.[6]  The Court also directed the Debtors to provide the DIP Lenders with the same access to due diligence that they afforded GM and Platinum.  That message – which was loud and clear to the DIP Lenders – unfortunately has not been heard by the Debtors, who have resisted every effort by the DIP Lenders to obtain access to data and information.  It is because of that resistance, which is further evidence of the Debtors' failure to comply with the Court's directives or to discharge their fiduciary duties in

---

[5]  The Proposed Transaction was secretly negotiated with GM, Platinum and the United States Treasury's Auto Task Force – while a court-ordered mediation was in progress – without anything remotely resembling a proper M&A process.  The Proposed Transaction represents a give-away of significant value by the Debtors to third parties in exchange for inadequate consideration to the DIP Lenders.

[6]  On June 16, 2009, the Court entered an order, which, among other things, (i) approved bidding and auction procedures; (ii) scheduled a hearing to consider confirmation of the Modified Plan; and (iii) scheduled a hearing to consider an alternative transaction if the Modified Plan is not approved.  Though the Court approved rigorous bidding and auction procedures, the Debtors are interpreting these procedures in an unduly wooden fashion in order to inhibit the lenders from actively participating in the asset disposition and restructuring process.

good faith, that the Collective is compelled now to register with the Court its Preliminary Objection to the Modified Plan and the 363 Sale that the Debtors seem intent on bringing forward at all costs for confirmation and approval on July 23, 2009.

7.   Accordingly, the Collective hereby preliminarily objects to both the Modified Plan and the 363 Sale, for the reasons (among others) stated in its Response and Partial Objection of the Collective of DIP Lenders to Debtors' (A) Supplement to Motion for Order (I) Approving Modification to Debtors' First Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to First Amended Plan of Reorganization and (B) Request to Set Administrative Expense Claims Bar Date and Alternative Sale Hearing Date, filed on June 9, 2009 (Docket No. 16903).  Additionally, as will be discussed in greater detail in a Supplemental Objection, the Collective opposes the Debtors' Modified Plan because, among other things, it violates section 1129 of the Bankruptcy Code, the DIP Credit Agreement and this Court's DIP Order.  Likewise, the Collective objects to the 363 Sale because it is an improper *sub rosa* plan that also violates the DIP Credit Agreement and the DIP Order.

8.   Because the Debtors have taken the position that no discovery may be conducted with respect to the proposed Modified Plan or 363 Sale until a contested matter exists, the Collective is filing this Preliminary Objection to create a contested matter, and it intends to conduct discovery of the Debtors and other parties with respect to the proposed Modified Plan and 363 Sale.

**RESERVATION OF RIGHTS**

9.   The DIP Lenders reserve all of their rights under the DIP Credit Agreement, the DIP Order and applicable law, including the right not to consent to, or to object to, the Proposed Transaction, the right to foreclose and the right to credit bid.

10. The objections to the Plan Modification Motion, the Modified Plan, the 363 Sale and the Proposed Transaction discussed above are merely illustrative of some of the objections that the Collective has regarding the Debtors' the Modified Plan and the Proposed Transaction. The Collective expressly reserves any and all rights to object to the Modified Plan, the Proposed Transaction or any other transaction the Debtors may enter into that does not provide the benefits necessary to ensure a successful and consensual emergence from chapter 11, as well as to any section 363 sale eventually put before the Court. Accordingly, the Collective reserves all rights to supplement or amend this Preliminary Objection prior to the hearing, currently scheduled for July 23, 2009.

11. The Collective also reserves its rights against any other parties. Nothing in this Preliminary Objection constitutes a consent under or a waiver of rights with respect to the DIP Credit Agreement or the DIP Order or otherwise.

**WHEREFORE,** the Collective respectfully requests that the Court grant the Collective such relief that it deems just and proper.

Dated: June 23, 2009
      New York, New York

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: /s/ Richard Mancino
     Richard Mancino
     (A Member of the Firm)

     Marc Abrams
     Michael J. Kelly
     Christopher J. St. Jeanos

787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

*Counsel to the Collective of DIP Lenders*