**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
**In re:** :
: **Chapter 11 Case No.**
: 
**DELPHI CORP., et al.,** : **05-44481 (RDD)**
: 
: **(Jointly Administered)**
**Debtors.** :
: 
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER AMENDING AND SUPPLEMENTING (i) ORDER (A)(I) APPROVING MODIFICATIONS TO DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION (AS MODIFIED) AND RELATED DISCLOSURES AND VOTING PROCEDURES AND (II) SETTING FINAL HEARING DATE TO CONSIDER MODIFICATIONS TO CONFIRMED FIRST AMENDED PLAN OF REORGANIZATION AND (B) SETTING ADMINISTRATIVE EXPENSE CLAIMS BAR DATE AND ALTERNATIVE TRANSACTION HEARING DATE (DOCKET # 17032) AND (ii) THE PROTECTIVE ORDER GOVERNING PRODUCTION AND USE OF CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION IN CONNECTION WITH (A) SUPPLEMENT TO PLAN MODIFICATION APPROVAL MOTION AND (B) SUPPLEMENT TO GM ARRANGEMENT FOURTH AND FIFTH AMENDMENT <u>APPROVAL MOTION (DOCKET NO. 16920)</u>**

("Supplemental Modification Procedures Order")

This Order is entered by the Court to amend and supplement (i) the Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (II) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (B) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date (Docket # 17032) (the "**Modification Procedures Order**") and (ii) the Protective Order Governing Production and Use of Confidential and Highly Confidential Information in Connection with (A) Supplement to Plan Modification Approval Motion (Docket No. 16646) and (B) Supplement to

GM Arrangement Fourth and Fifth Amendment Approval Motion (Docket No. 16647) – (Docket No. 16920) (the "**Protective Order**"), to clarify certain matters affecting the treatment of JPMorgan Chase Bank, N.A., in its capacity as Administrative Agent (the "**Administrative Agent**") for the Amended and Restated Revolving Credit, Term Loan and Guaranty Agreement dated as of May 9, 2008 (as amended, supplemented, waived or otherwise modified from time to time, the "**DIP Credit Agreement**") among Delphi Corporation and its affiliated debtors herein (the "**Debtors**"), the Administrative Agent, and the lenders under the DIP Credit Agreement (the "**Lenders**" or the "**DIP Lenders**") under such orders; due and appropriate notice having been provided, and no other or further notice being necessary; and the Court having determined that there is good and sufficient cause for the relief provided herein,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Protective Order and the Modification Procedures Order shall be deemed amended and supplemented by this Order, and shall continue in full force and effect as so amended and supplemented.

2.    Paragraph 7 of the Protective Order shall be amended in its entirety to read as follows:

"7.    Confidential Information and Highly Confidential Information, or any information derived therefrom, shall be used by the Agent, or by a receiving Lender, or their counsel, advisors, consultants, or expert witnesses, as the case may be, for the purposes of evaluating the consideration to be provided to the Agent and the Lenders pursuant to the transactions contemplated by the Motions, provided, notwithstanding the foregoing, such information shall not be provided or disclosed to third parties other than Permitted Persons (as hereinafter defined), and provided further that such information shall not be used in connection with or in

2

formulating any Competing Transaction or alternative transactions from the transactions contemplated by the Motions unless permitted under paragraph 8 below.  For purposes hereof, "**Permitted Persons**" shall mean the Agent, its counsel and advisors, and the Lenders and their counsel and advisors to the extent that they (i) have executed Exhibit A hereto and are otherwise entitled to receive such information under this Protective Order or (ii) have executed a confidentiality agreement as contemplated by clause (a) under "Participation Requirements" in the Supplemental Procedures), that entitles them to receive such information.  For the avoidance of doubt, the following activities shall not constitute formulating a Competing Transaction or alternative transaction and are permissible uses of information by a receiving Lender as provided hereunder: (a) negotiations between the Agent, or a receiving Lender, or their counsel or financial advisors with the parties to the Master Disposition Agreement to enhance the Agent's and/or receiving Lender's consideration in such transactions or in furtherance of the possible consensual participation of the Agent or such Lender in such transactions; (b) consideration (including internal consideration and discussions with other Permitted Persons) of an exercise of remedies under the Credit Agreement or to which the Lenders or Agent are otherwise entitled under applicable law, if any, including, without limitation, consideration of a Pure Credit Bid as defined in the Order Amending and Supplementing Protective Order and Modification Procedures Order entered on June 29, 2009, or financing for any entity that may acquire assets of the Debtors pursuant to a Pure Credit Bid ("**Pure Credit Bid Financing**"); (c) communicating with any potential third party financing source regarding financing any entity that may acquire assets of the Debtors in connection with any Pure Credit Bid, provided that (i) the identity of such other potential financing source shall have been disclosed to the Debtors and (ii) such potential financing sources shall be subject to a customary nondisclosure agreement appropriate

for communications of such type reasonably acceptable to the Debtors (for the avoidance of doubt, a potential financing source shall be considered subject to a nondisclosure agreement if (x) it executes such agreement or (y) it agrees in writing to be bound by all of the confidentiality provisions applicable to the receiving Lender under such agreement between the receiving Lender and the Debtors); and (d) any internal consideration by a receiving Lender (including communications with its counsel or advisors, but not with third parties or other Lenders (except as provided in other clauses of this paragraph 7)) of other strategic alternatives that may be available to the Lenders or such Lender (including whether to become a Qualified Bidder and to seek to submit a Qualified Bid under this Court's Modification Procedures Order (Docket No. 17032), as supplemented, and the formulation of any Competing Transaction or alternative transaction.  Any person receiving Confidential Information or Highly Confidential Information shall not reveal or discuss such information to or with any person who is not entitled to receive such information. The Agent may provide a list of persons who have executed the form of consent set forth in Exhibit A to other Lenders and their advisors upon request."

       3.       Paragraph 8 of the Protective Order shall be amended in its entirety to read as follows:

"8.       Without the Court reaching the merits of the desirability of, or requirement for, a Competing Transaction, a Lender shall not communicate with a third party (including any other Lender) regarding the possibility of such Lender and such third party participating in a Competing Transaction or alternative transaction (other than a Pure Credit Bid), unless such communication is permitted under the Modification Procedures Order and the Supplemental Procedures (including the participation requirements) established therein and any applicable non-disclosure agreement, and such Lender shall establish appropriate and customary ethical walls

4

within their institutions with regard to the receipt and use of confidential information, provided that an ethical wall shall not be required for a Lender so long as such Lender is screened from, and never receives, the Debtors', GM's, and Platinum Equity LLC's respective evaluations of the transactions contemplated by the Supplement to Plan Modification Approval Motion (Docket No. 16646) or any Alternative Transactions with respect thereto (such information, "Screened Information"). The Debtors shall clearly mark Screened Information as such and provide it to only individual representatives of the Administrative Agent and Lenders (and their advisors) who request in writing to receive Screened Information and are otherwise entitled to receive such information under the Protective Order. The Debtors' compliance with this paragraph shall not constitute a breach of the Master Disposition Agreement (including Section 9.40 thereof)."

4. The fourth sentence of paragraph 46 of the Modification Procedures Order shall be amended and restated in its entirety to read as follows: "To the extent that any DIP Lender directly or indirectly delivers (or causes to be delivered) Required Alternative Transaction Documents with respect to an Alternative Transaction (as each such term is defined in the Supplemental Procedures) that is not a Pure Credit Bid, such DIP Lender shall be deemed to have irrevocably consented to the transactions contemplated by the Supplemental Procedures and ultimately approved by this Court for all purposes under the DIP Credit Agreement and applicable law (with the exception of disputing whether the Supplemental Procedures were, in fact, followed)."

5. The term "Pure Credit Bid" as used in the Protective Order, the Modification Procedures Order and this Order shall mean an offer to purchase all or any portion of the assets of the Debtors in connection with which the only consideration that the Debtors and this Court are asked (pursuant to the terms of the Pure Credit Bid) to evaluate in connection with the bid

consists of the offset of claims under the DIP Credit Agreement against the purchase price of such assets. For the avoidance of doubt, a Pure Credit Bid may include the following components, which shall not disqualify an otherwise qualifying offer from being a Pure Credit Bid, so long as the bid disclaims any right to have value attributed to such amounts for purposes of determining the value of such offer: (i) cure payments or other consideration to be provided to counterparties to executory contracts purchased in connection with such Pure Credit Bid, (ii) any consideration provided to creditors of the Debtors or other non-debtor parties pursuant to such Pure Credit Bid and (iii) financing of or asset sales by any entity that would obtain the assets pursuant to such Pure Credit Bid.

      6.      A Pure Credit Bid shall be governed by the following procedures, which will be in lieu of satisfying the requirements applicable to a Potential Bidder or a Qualified Bidder under the Supplemental Procedures (except for the provisions of the Supplemental Procedures governing the conduct of the Auction and the procedures applicable subsequent to the Auction to the extent not inconsistent with the provisions below) with respect to such bid:

      A.      Any party wishing to have a Pure Credit Bid considered at the Auction shall submit to the parties identified in the Supplemental Procedures as entitled to receive copies of Required Alternative Transaction Documents from Qualified Bidders, no later than noon (prevailing Eastern time) on July 16, 2009, one or more letters (each a "**Pure Credit Bid Support Letter**") setting forth (i) the legal and factual bases on which such party believes that the submission of a Pure Credit Bid by such party is authorized by the Loan Documents (as defined in the DIP Credit Agreement) and applicable law and (ii) the means by which any cure payments and adequate assurance of future performance in respect of any executory contracts or unexpired leases to be included in such party's Pure Credit Bid will be provided (including, without limitation, any financing on which such bid may be conditioned). The Debtors shall provide a copy of such Pure Credit Bid Support Letter to all Qualified Bidders participating in the Auction.

      B.      The Administrative Agent shall be informed in writing (for distribution to the members of the unofficial steering committee of DIP Lenders (the "**DIP Steering Committee**")) by the Debtors as to whether or not any proposed

6

        alternative transactions constitute Qualified Alternative Transactions no later than July 13, 2009.  The Debtors shall provide to the Administrative Agent (for distribution to the DIP Steering Committee) copies of all Qualified Alternative Transaction Documents no later than 5:00 p.m. Eastern Time on July 14, 2009.

C.     Notwithstanding anything to the contrary in the Supplemental Procedures, if the Debtors do not receive any Qualified Alternative Transactions in addition to the Master Disposition Agreement, but they receive one or more Pure Credit Bid Support Letters by noon (prevailing Eastern time) on July 16, 2009, the Debtors will conduct an Auction as contemplated by page 6 of the Supplemental Procedures and this paragraph 6 with respect to the transaction contemplated by the Master Disposition Agreement and any Pure Credit Bid (and any subsequent bids in respect thereof).

D.     The Administrative Agent and (i) any members of the unofficial steering committee of DIP Lenders (the "**DIP Steering Committee**"), (ii) in the sole discretion of the Administrative Agent, up to three additional DIP Lenders that are not members of the DIP Steering Committee, so long as each such DIP Lender shall have executed a confidentiality agreement as contemplated by clause (a) under "Participation Requirements" in the Supplemental Procedures), and, (iii) in the sole discretion of the Debtors, any additional DIP Lenders, in each case and their respective counsel and advisors, shall have the right to be present at the Auction (the Administrative Agent and the DIP Lenders present at the Auction, hereinafter referred to as the "**Participating Lenders**").  It is anticipated that the Participating Lenders will make themselves available at the Auction to consult with the Debtors, the Creditors' Committee, the bidders and other parties in interest regarding whether or not such Lenders would support a transaction contemplated by any such bid. During the Auction, the Administrative Agent (for distribution to the Participating Lenders) shall have access to the same information that is made available to all other Qualified Bidders pursuant to the Supplemental Procedures, including, without limitation, information with respect to all Qualified Bids and Subsequent Bids (as each such term is defined in the Supplemental Procedures) made at the Auction.

E.     The Debtors shall make an announcement on the record at the Auction when, in their reasonable judgment, all Qualified Bidders have submitted their best and final bids and a lead bid or bids have been identified (subject to submission of further Qualified Alternative Transactions in light of any Pure Credit Bid that may be subsequently submitted).  Such announcement shall include an identification of such lead bid or bids and, to the extent it is not apparent from the terms of such lead bid or bids, the Debtors shall announce their intention with respect to the treatment of the DIP Loans and other obligations secured by the Collateral securing the DIP Loans in connection with such lead bid or bids.

7

F.  Within one hour (or such later time as the Debtors may agree to in their sole discretion) after the Debtors' announcement on the record referred to in clause 6E above, or at 10:00 a.m. (prevailing Eastern time) on July 17, 2009 if the Debtors have not received any Qualified Alternative Transactions other than the Master Disposition Agreement (as defined in the Modification Procedures Order) (as applicable, the "**Pure Credit Bid Deadline**"), the Administrative Agent shall state on the record whether a Pure Credit Bid will be made.  If no Pure Credit Bid is made by the Pure Credit Bid Deadline, the Debtors will thereafter select the successful bid pursuant to the Supplemental Procedures. If any Pure Credit Bid is to be made, it shall be made by the Pure Credit Bid Deadline, and any such Pure Credit Bid shall specify the material terms and conditions of such Pure Credit Bid, including identifying (i) the Collateral to be purchased in connection with such Pure Credit Bid, (ii) the purchase price to be offset against claims under the DIP Credit Agreement as consideration for such Collateral, (iii) the material executory contracts or unexpired leases to be assumed and assigned to the acquiring entity in connection with such Pure Credit Bid and (iv) the means by which any cure payments and adequate assurance of future performance in respect of any such executory contracts or unexpired leases will be provided.  All Qualified Bidders may continue to submit Subsequent Bids, and any party timely submitting an initial Pure Credit Bid may submit a subsequent Pure Credit Bids, until the conclusion of the Auction.  Any Pure Credit Bid may be withdrawn by the party submitting such Pure Credit Bid in favor of a competing Alternative Transaction. Following the placement of any Pure Credit Bid and any subsequent bids by Qualified Bidders, and any subsequent Pure Credit Bids, the Debtors will thereafter select the successful bid pursuant to the procedures set forth in the Supplemental Procedures (including without limitation, consultation with the retained professionals for the Creditors Committee and the review by the Bankruptcy Court).

G.  Notwithstanding the earlier deadline for objections set forth in the Modification Procedures Order, the making of any Pure Credit Bid shall not result in the waiver of or otherwise prejudice the right, if any, of the Administrative Agent or the DIP Lenders to withhold consent to the GM-Platinum Transaction or any Alternative Transaction, or any objection or other right or remedy of the Administrative Agent or the DIP Lenders.

H.  Except as provided in the Supplemental Modification Procedures Order, a Pure Credit Bid may contain any terms and conditions deemed appropriate by the Administrative Agent when submitting such Pure Credit Bid, in such party's sole discretion, and the terms and conditions of such Pure Credit Bid shall not be required to conform in any respect to the terms of the GM/Platinum Transaction or any Alternative Transaction.

7. In addition to complying with the Supplemental Procedures without regard to paragraph 6 of this Order, any Qualified Bidder proposing an Alternative Transaction that includes a credit bid that is not a Pure Credit Bid shall include as part of the Qualified Alternative Transaction Documents one or more letters setting forth the legal and factual bases on which such party believes that the submission of a mixed or enhanced credit bid by such party is authorized by the Loan Documents (as defined in the DIP Credit Agreement) and applicable law.

8. Except as expressly provided in paragraph 46 of the Modification Procedures Order (as amended by this Order), (a) the Debtors, the Administrative Agent, the DIP Lenders and all other parties in interest reserve all rights in respect of credit bids and other remedies, including without limitation, whether or not they are authorized under the Loan Documents and applicable law and (b) nothing in this Order shall affect the rights of the requisite DIP Lenders to give directions to the Administrative Agent, or the Administrative Agent's obligations and responsibilities in respect of any such directions, which in each case shall continue to be governed by the DIP Credit Agreement and related documents and court orders, and applicable law, in all respects.

9. The Modification Procedures Order shall be modified by adding the following sentences to the end of paragraph 45: "Any objections to the conduct of the Auction or the Successful Alternative Transaction, if any, must be filed by July 20, 2009 at noon (prevailing Eastern time) and shall be served in the same manner and on the same parties as objections to the Modified Plan as provided in this order."

10. In the event, with respect to the matters covered by this Order, there is any inconsistency between the provisions of this Order on the one hand, and the Protective Order, the

9

Modification Procedures Order or the Supplemental Procedures on the other, the provisions of this Order shall govern.

      11.    This Court shall retain jurisdiction to enforce and implement the terms or this Order.

Dated:  June 29, 2009
New York, New York

                         /s/Robert D. Drain
                         UNITED STATES BANKRUPTCY JUDGE