DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-6501
Donald S. Bernstein
Benjamin S. Kaminetzky
Brian M. Resnick

*Counsel to JPMorgan Chase Bank, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11 Case No.** |
| | : | |
| **DELPHI CORP., et al.,** | : | **05-44481 (RDD)** |
| | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JOINDER OF JPMORGAN CHASE BANK, N.A. IN OBJECTIONS TO
THE DEBTORS' EXPEDITED MOTION FOR ORDER UNDER
11 U.S.C. § 363 AND FED. BANKR. R. 2002, 6004, AND 9014
AUTHORIZING DEBTORS TO PROVIDE EXPENSE
REIMBURSEMENT TO PLATINUM EQUITY ADVISORS, LLC IN
CONNECTION WITH SALE OF DEBTORS' ASSETS PURSUANT TO
<u>MASTER DISPOSITION AGREEMENT</u>**

JPMorgan Chase Bank, N.A., ("**JPMC**"), in its capacity as the

Administrative Agent (the "**Administrative Agent**") for the Amended and

Restated Revolving Credit, Term Loan and Guaranty Agreement (the "**DIP**

**Credit Agreement**"), hereby joins in the Response and Objection of the

Collective of DIP Lenders (the "**Collective**") and the Objection of Kensington

International Limited, Manchester Securities Corp. and Springfield Associates,

LLC (the "**Manchester Entities**") to the Debtors' Expedited Motion for Order

Under 11 U.S.C. § 363 and Fed. Bankr. Pr. 2002, 6004, and 9014 Authorizing Debtors to Provide Expense Reimbursement to Platinum Equity Advisors, LLC in Connection With Sale of Debtors' Assets Pursuant to Master Disposition Agreement (the "**Motion**"), and respectfully states as follows:

1. As discussed in the Response and Objection of the Collective and the Objection of the Manchester Entities (the "**Objections**"), motions to award break-up fees are subject to close scrutiny and courts will approve a break-up fee, either as a section 503(b)(1)(A) administrative expense or as a section 363(b) use of property other than in the ordinary course, only when the fee satisfies three criteria:

- The break-up fee must be necessary to induce a prospective purchaser to submit an initial bid or to maintain a potentially successful bid;

- Allowance of the fee must benefit the estate by encouraging, rather than stifling, bids by other prospective purchasers; and

- The fee's amount must be shown to be reasonably related to the prospective purchaser's risk, effort, and expenses.

*Calpine Corp. v. O'Brien Envtl. Energy, Inc.* (*In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 535–37 (3d Cir. 1999); *In re Integrated Res., Inc.*, 147 B.R. 650, 662 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

2. None of these three criteria is satisfied in this instance.

3. *First*, while the Debtors liken it to a "bidding incentive" (Motion ¶ 29), the $30 million fee (the "**Break-Up Fee**") that the Debtors propose to pay Platinum Equity Advisors, LLC ("**Platinum**") from the proceeds of any Alternative Transaction (as defined in the Modification Procedures Order) is not needed either to incent Platinum to submit an initial bid or to incent it to maintain an existing bid.

4.   In entering into the Master Disposition Agreement ("**MDA**"), Platinum failed to negotiate a break-up fee although it was fully aware that its bid might be subjected to competing offers. As Platinum's counsel has explained, Platinum "fully expected . . . that once this became a public deal, there could well be other parties who would be interested in stepping in our shoes or offering a similar transaction." (June 10, 2009 Hr'g Tr. 94:17–20.)

5.   Nor is the Break-Up Fee necessary to incent Platinum to maintain its bid. Having entered into the MDA, Platinum is now contractually obligated to maintain its bid regardless whether the proposed Break-Up Fee is paid. As the Debtors acknowledge, "Platinum effectively has no 'outs' in its transaction with Delphi." (Motion ¶ 19.)

6.   As a result, allowance of the Break-Up Fee will be a gift to Platinum of $30 million from the proceeds of any Alternative Transaction, but will provide the estate with no benefit in return.

7.   *Second*, the Debtors have failed to show that approval of the proposed Break-Up Fee will encourage, rather than stifle, competing bids. *See Integrated Res.*, 147 B.R. at 659 ( "The usual rule is that if break-up fees encourage bidding, they are enforceable; if they stifle bidding they are not enforceable."); *In re Am. W. Airlines, Inc.*, 166 B.R. 908, 913 (Bankr. D. Ariz. 1994) (refusing to approve a break-up fee that would "unnecessarily chill[] bidding and . . . deplete[] assets that could be better utilized").

8.  Instead, the available evidence indicates that the proposed fee will "advantage a favored purchaser [(Platinum)] over other bidders by increasing the cost of acquisition to other bidders." *O'Brien*, 181 F.3d at 535.

9.  Indeed, the Debtors' Motion implicitly acknowledges that the proposed Break-Up Fee would materially deplete the estate's assets and deter prospective bidders: the Debtors' stated rationale for bringing the Motion on an expedited basis is that the burden that their proposed Break-Up Fee would impose is of sufficient magnitude that bidders contemplating Alternative Transactions will need to reengineer their bids—or reconsider their plans to bid at all—in advance of the July 10 deadline. (Motion ¶ 15.)

10. At a minimum, no Break-Up Fee should be allowed if a Pure Credit Bid (as defined by the Supplemental Modification Procedures Order) is selected as the highest and best bid. As discussed above, the Debtors have not demonstrated that the Platinum bid will encourage competing bids and generate value for the estate under any set of circumstances. This will unquestionably be the case if a Pure Credit Bid should emerge as the highest and best bid. Moreover, in this event, there can be no assurance that $30 million in sale proceeds will exist from which the Break-Up Fee could be paid. In light of the foregoing, at a minimum, no Break-Up Fee should be authorized in the event a Pure Credit Bid is ultimately consummated.

11. *Third*, the Debtors have not shown that the proposed Break-Up Fee "constitute[s] a fair and reasonable percentage of the proposed purchase price

4

[and is] reasonably related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res.*, 147 B.R. at 662.

12. The proposed $30 million Break-Up Fee represents more than 12% of the $250 million in consideration that Platinum proposes to contribute as part of the proposed GM-Platinum Transaction. As such, the Break-Up Fee falls well beyond the one to two percent range that courts in this District have deemed reasonable in circumstances where break-up fees are appropriate.

13. Indeed, courts have deemed break-up fees less than half this size to be excessive. *See, e.g.*, *In re Bidermann Indus. U.S.A*, 203 B.R. 547, 553–54 (Bankr. S.D.N.Y. 1997) (noting that a break-up fee in the range of 4.4% to 6% of the purchase price was unreasonable, and rejecting the notion that cash to be generated from the debtor's assets should be included in the purchase-price calculation). In the chapter 11 case of Refco, Inc., for instance, this Court rejected a proposed $21.5 million break-up fee—representing 2.8 percent of the transaction price—and a $5 million to $7 million fee reimbursement as excessive. The Court concluded that a $5 million break-up fee and $1 million expense reimbursement would be appropriate in connection with the purchaser's proposed $768 million acquisition of the debtors' futures brokerage business. *See In re Refco, Inc.*, No. 05-60006, Oct. 24, 2005 Hr'g Tr. 93:3–5 (Bankr. S.D.N.Y.).

14. Finally, and in addition to the defects noted above, the Debtors' Motion should be denied because the relief it seeks would violate section 13(a) of the DIP Refinancing Order.[1]

15. Even assuming, for sake of argument, that the Debtors' assets may be sold free and clear of the DIP Lenders' liens,[2] those liens would necessarily attach to the proceeds of any such sale.

16. Section 13(a) of the DIP Refinancing Order provides: "No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Agent and the DIP Lenders . . . , respectively, shall be granted or allowed while any portion of the Financing (or any refinancing thereof) for the Commitments thereunder or the DIP Obligations remain outstanding . . . ."

17. The Debtors' Motion, however, proposes to pay Platinum $30 million from the proceeds of any Alternative Transaction before the DIP Lenders' claims are paid in full.

18. Because the $30 million payment that the Debtors' Motion seeks would violate section 13(a) of the DIP Refinancing Order and no consent of the DIP Lenders to such payment has been obtained, the Debtors' Motion must be denied.

---

[1] Order under 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed. R. Bankr. P. 2002, 4001 and 6004(g) (I) Authorizing Debtors to Obtain Post-Petition Financing and (II) Authorizing Debtors to Refinance Secured Post-Petition Financing and Prepetition Secured Debt [Docket No. 6461].

[2] The DIP Refinancing Order and Bankruptcy Code prohibit any such sale absent Required Lender consent. DIP Refinancing Order § 13(b), (c).

19. To the extent that Platinum believes that it has made a substantial contribution to the Debtors' chapter 11 cases, Platinum may file an application for reimbursement for its expenses under section 503(b)(3)(D) of the Bankruptcy Code following the conclusion of the auction process, and the rights of all parties to be heard with respect to the merits of allowance of such expenses as administrative expenses of the estate should be reserved until such time.

New York, New York
Dated: June 30, 2009

By: /s/ Donald S. Bernstein
Donald S. Bernstein
Benjamin S. Kaminetzky
Brian M. Resnick

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-6501

*Counsel to JPMorgan Chase Bank, N.A.*