IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

# AFFIDAVIT OF PUBLICATION OF KATHY ARMENGOL IN THE USA TODAY (INTERNATIONAL)

7950 Jones Branch Drive • McLean, Virginia 22108
(703) 854-3400

## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

---

Being duly sworn, Kathy Armengol says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: June 24th 2009 on the following legal advertisement- **DELPHI CORPORATION.** published in the international edition of **USA Today.**

Principal Clerk of USA TODAY
June 26 2009

This 26 day of June month
2009 year.

Notary Public

Marcus Dane Edmonds
Notary Public ID 7165468
Commonwealth of Virginia
My commission expires
09/30/2012

weeks ago, the principal told them that they "could live without their cellphones for two hours."

He might have been a bit presumptuous. The iPods are bad enough. Every day, students — between and often during class — are plugged into their iPods, seemingly off in another world.

But it's cellphone text messaging that both parents and schools need to declare war on. Texting has become an obsession with teenagers around the country. According to the Nielsen Co., in the last quarter of 2008, teens were averaging at least 80 texts a day, a figure double what it was the year before.

T.C. Williams' handbook for parents boldly declares, "The operation of electronic devices including cellphones and iPods is not permitted in the school building. These items will be confiscated for a minimum of 24 hours on the first offense."

Reality, though, is something else. The rules are so inconsistently enforced that kids consider them more an inconvenience than a real threat. Even parents send text messages to their kids during class time.

And the problem is getting worse, as students become more adept at disguising their texting. One student admitted to often sending 10 texts during my class. Others admitted to sending and receiving more than 200 texts over the course of a day. Most kids are such pros that they can text while the phone is in their pocket, a purse or under the desk, while maintaining eye contact with the teacher.

For the most part, all this subterfuge might seem like innocent adolescent behavior, but evidence suggests that texting is undermining students' ability to focus and to learn — and creating anxiety to boot.

Many students have come to feel that they cannot live without texting. Says senior Laura Killalea, with a hint of hyperbole:

By Sam Ward, USA TODAY

"Most of my friends would die if they had to go to school without their cellphones." Another student, Yasir Hussein, admits that when he doesn't have his phone he gets anxious. "I feel like I am in the dark, secluded, isolated." Cellphones have taken such control over teens that virtually all the students I talked to said they often feel as if their phones are vibrating when they don't even have them.

MIT professor Sherry Turkle told me that texting is "an always-on/always-on-you technology." She says cellphones cause not only "the anxiety of disconnection," but also "the anxiety of connection which comes from the expectation that you will respond immediately to a message you get."

Despite all the technological advances that were intended to increase communication and efficiency, adolescents as well as adults are living in what Maggie Jackson, author of *Distracted: The Erosion of Attention and the Coming Dark Age*, calls "an institutionalized culture of interruption, where our time and attention is being fragmented by a never-ending stream of phone calls, e-mails, instant

students, rethinking what [illegible] all but a handful. In fact, texting has a language all its own, with its own abbreviations and terse messages, all of which hardly translates into good writing.

Math and science teachers at my school see the same, with kids wanting the quick answers instead of going through the struggle that will help them understand what is behind the mathematical or scientific principles involved.

Even so, there is hope.

"We have fallen into bad habits with all the new technology," Jackson says, "but we can push back on the distractions, control those habits. We need to look at it all with fresh eyes, tally up the cost that distraction is costing us and our children and make changes."

The summer break is upon us, but administrators and parents need to consider two changes before students return in the fall:

▶ Parents should disable the text messaging function of their kids' cellphones.

▶ Those students who curse teachers out and refuse to hand over their phones — as has happened often at T.C. Williams — will have to be punished. A crackdown the first day of school in September will set the get-tough tone for the rest of the year.

At the very least, administrators and parents can agree that the school day should be the one time when kids can do without their cellphones. Or maybe I'm just being presumptuous.

*Patrick Welsh is an English teacher at T.C. Williams High School in Alexandria, Va., and a member of USA TODAY's board of contributors.*

Congress needs to define the full nature of its offenses in support of slavery and the century-long period of legal disenfranchisement of blacks that followed. Too many people in this country have little knowledge of the legal cover Congress gave slavery. Too few people understand how Congress perpetuated the suffering of blacks long after the 13th Amendment ended slavery.

**Tubman:** Served as Union army spy.

**Apologies not enough**

The apologies passed by the House and Senate, and the joint resolution that's expected to come soon, amount to a guilty plea. As in a criminal case where a defendant cops a plea, Congress should be forced to give a detailed confession of its crimes against blacks.

It should acknowledge how the 1820 Missouri Compromise and the 1854 Kansas-Nebraska Act reduced slavery to a political balancing act. The purpose of these federal laws was to keep the nation evenly divided between slave and free states — a heartless political calculation.

Congress should also acknowledge the harm it did to untold numbers of slaves when it passed the Fugitive Slave Act of 1850, which denied runaway slaves a jury trial and the right to testify

[...] pension for her military service. In 2003, Congress agreed to pay Tubman's estate $11,750 — the value of a widow's pension that she should have gotten for her husband's military service.

And here's something else Congress must own up to. In 1901 — a year in which 105 blacks were lynched — the House killed this country's first anti-lynching bill. The legislation would have made lynchings a federal offense and increased the possibility that such crimes would have resulted in a trial and conviction. Nearly 200 anti-lynching bills were introduced in Congress, but not one was ever enacted. Four years ago, the Senate apologized for its failure to pass an anti-lynching bill.

From 1902 through 1964, nearly 1,600 blacks were lynched in this country. And 99% of everyone involved in these lynchings escaped prosecution by state and local officials, the Senate said in its 2005 apology resolution.

In their sterile *mea culpas*, neither the House nor Senate have come close to admitting the role those bodies played in the sorry history they now decry. Until they do, their apology is a hollow act of political expediency.

And it should not be accepted.

*DeWayne Wickham writes weekly for USA TODAY.*

**Legal Notice**

**Hearing Date And Time: July 23, 2009 at 10:00 a.m.**
**Objection Deadline: July 15, 2009 at 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) Chapter 11 |
| DELPHI CORPORATION, et al., | ) Case No. 05-44481 (RDD) |
| Debtors. | ) (Jointly Administered) |

**NOTICE OF (1) APPROVAL OF SUPPLEMENT; (2) HEARING ON MODIFICATIONS TO PLAN; (3) DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO MODIFICATIONS OF PLAN; (4) DEADLINE AND PROCEDURES FOR TEMPORARY ALLOWANCE OF CERTAIN CLAIMS FOR VOTING PURPOSES; (5) TREATMENT OF CERTAIN UNLIQUIDATED, CONTINGENT, OR DISPUTED CLAIMS FOR NOTICE, VOTING, AND DISTRIBUTION PURPOSES; (6) RECORD DATE; (7) VOTING DEADLINE FOR RECEIPT OF BALLOTS; AND (8) PROPOSED RELEASES, EXCULPATION, AND INJUNCTION IN MODIFIED PLAN**

TO ALL CREDITORS AND INTEREST HOLDERS, INCLUDING EQUITY SECURITY HOLDERS OF DELPHI CORPORATION AND ITS AFFILIATED DEBTORS-IN-POSSESSION:

PLEASE TAKE NOTICE that Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), are soliciting acceptances of the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"),[1] modifying the plan confirmed on January 25, 2008, from holders of impaired claims and interests who are (or may be) entitled to receive distributions under the Modified Plan.

PLEASE TAKE FURTHER NOTICE that if the Modified Plan is approved by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") the terms of the Modified Plan will be binding on all holders of claims against, and all current and former holders of equity security and other interests in, the respective Debtors.

PLEASE TAKE FURTHER NOTICE that the Bankruptcy Court has entered an order on June 16, 2009 (the "Modification Procedures Order") (Docket No. 17032) approving a supplement to the disclosure statement approved by the Bankruptcy Court on December 10, 2007 (the "Supplement") with respect to the Modified Plan and providing, among other things, that:

1. Final Modification Hearing Date. The hearing to consider approval of the Modified Plan (the "Final Modification Hearing"), will commence on July 23, 2009 at 10:00 a.m. (prevailing Eastern time) or as soon thereafter as counsel can be heard, before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004. The Final Modification Hearing may be adjourned from time to time by announcing the adjournment in open court, and the Modified Plan may be further modified, if necessary, under 11 U.S.C. § 1127 before, during, or as a result of the Final Modification Hearing, without further notice to parties-in-interest.

2. Objections To Approval Of Modified Plan. July 15, 2009 at 4:00 p.m. (prevailing Eastern time) (the "Objection Deadline") is fixed as the last date and time for filing and serving objections to approval of the Modified Plan. To be considered, objections, if any, to approval of the Modified Plan must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on March 20, 2006 (Docket No. 2883), the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 1, 2009 (Docket No. 16589), and the Modification Procedures Order, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, One Bowling Green, Room 632, New York, New York 10004, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr. and Ron E. Meisler) and Skadden, Arps, Slate, Meagher & Flom LLP, Four Times Square, New York, New York 10036 (Att'n: Kayalyn A. Marafioti and Gregory W. Fox), (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Brian Masumoto), (iv) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg, Mark A. Broude, and Mitchell A. Seider), (v) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Donald Bernstein and Brian Resnick), (vi) counsel for the Tranche C Collective, Willkie Farr & Gallagher LLP, 787 Seventh Avenue New York, New York 10019 (Att'n: Richard Mancino and Marc Abrams), (vii) counsel for the United States Department of the Treasury, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New York 10281 (Att'n: John J. Rapisardi and Oren B. Haker), (viii) counsel for the United States Department of Justice, 86 Chambers Street, 3rd Floor, New York, New York 10007 (Att'n: Matthew L. Schwartz and Joseph N. Cordaro), (ix) counsel for General Motors Corporation, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Att'n: Jeffrey L. Tanenbaum and Robert J. Lemons), and (x) counsel for Parnassus Holdings II, LLC, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Att'n: Adam C. Harris and David J. Karp), in each case so as to be received no later than the Objection Deadline. **Objections not timely filed and served in the manner set forth above may not be considered and may be deemed overruled.**

3. Temporary Allowance Of Claims. The following persons or entities, among others, are not entitled to vote on the Modified Plan and, therefore, will not receive a ballot: holders of (a) unimpaired claims, (b) claims and interests who will receive no distribution under the Modified Plan, (c) claims and interests that have been scheduled as contingent, unliquidated, or disputed and for which (i) no proof of claim was timely filed and (ii) no Rule 3018(a) Motion (as defined below) has been filed by the Rule 3018(a) Motion Deadline (as defined below), and (d) claims and interests that are the subject of an objection filed by the Debtors (except to the extent and in the manner as may be set forth in the objection). If you disagree with the Debtors' classification of, or objection to, your claim or interest and believe that you should be entitled to vote on the Modified Plan, then you must (x) have timely filed a proof of claim by the applicable bar date or your proof of claim must be deemed timely filed by an order of the Bankruptcy Court before the Voting Deadline (as defined below), (y) contact the Creditor Voting Agent (as set forth below) to obtain a ballot and file the ballot by the Voting Deadline (as defined below), and (z) timely file and serve a motion for order under Fed. R. Bankr. P. 3018(a) (a "Rule 3018(a) Motion") seeking temporary allowance of your claim for the purpose of accepting or rejecting the Modified Plan. The Rule 3018(a) Motion must be filed with the Clerk of the Court on or before July 2, 2009 at 4:00 p.m. (prevailing Eastern time) (the "Rule 3018(a) Motion Deadline") and served so as to be received by the Notice Parties (as defined in the Modification Procedures Order) by the Rule 3018(a) Motion Deadline in accordance with the procedures set forth in the Modification Procedures Order; provided, however, that if the Debtors object to a claim or interest after June 19, 2009, the Rule 3018(a) Motion Deadline would be extended for that claim or interest such that the deadline would be ten days following the filing of the Debtors' objection.

4. Provisional Votes. Any party who has (a) timely filed a proof of claim (as stated above) and (b) files and serves a Rule 3018(a) Motion in accordance with the paragraph above shall be permitted to cast a provisional vote to accept or reject the Modified Plan. If, and to the extent that, the Debtors and such party are unable to resolve the issues raised by the Rule 3018(a) Motion before the Voting Deadline, then at the Final Modification Hearing the Court will determine whether the provisional ballot is to be counted as a vote on the Modified Plan and, if so, in what amount. Rule 3018(a) Motions that are not timely filed and served in the manner set forth above will not be considered, and the claims or interests referred to therein will not be counted in determining whether the Modified Plan has been accepted or rejected.

5. Treatment Of Certain Claims. Any holder of a claim that (a) is scheduled in the Debtors' schedules of assets and liabilities, dated April 18, 2006, or any amendment thereof (the "Schedules"), at zero or in an unknown amount or as disputed, contingent, or unliquidated and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Bankruptcy Court under either chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1330, as amended and in effect on October 8, 2005 (the "Bankruptcy Code") or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (b) is not scheduled and is not the subject of a timely filed proof of claim or a proof of claim deemed timely filed with the Bankruptcy Court under either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, will not be treated as a creditor with respect to the claim for purposes of (i) receiving notices regarding, or distributions under, the Modified Plan or (ii) voting on the Modified Plan. Unless otherwise provided in the Modified Plan, any holder of a claim who is otherwise entitled to vote on the Modified Plan and who filed against the Debtors a proof of claim reflecting a claim or portion of a claim that is unliquidated, will have such claim allowed temporarily for voting purposes only, and not for purposes of allowance or distribution, for that portion of the claim that is not unliquidated and no amount shall be allocated for voting purposes on account of the unliquidated portion. Fully unliquidated claims shall be counted for purposes of determining whether a sufficient number of the allowed claims in the applicable class has voted to accept the Modified Plan, but the allowed amount of the fully unliquidated claim shall be $1.00 for voting purposes, subject to the right of the holder to file a Rule 3018(a) Motion. Unless otherwise provided in the Modified Plan, any holder of a claim that is contingent will have such claim temporarily disallowed for voting purposes, subject to the right of such holder to file a Rule 3018(a) Motion.

6. Record Date. June 8, 2009, is the record date for determining the holders of Debtors' publicly traded debt and equity securities (the "Securities") and the creditors entitled to receive (a) solicitation packages and (b) entitled to vote to accept or reject the Modified Plan.

7. Voting Deadline. If you hold a claim against one of the Debtors as of June 8, 2009, the Record Date as established in the Modification Procedures Order, and are entitled to vote to accept or reject the Modified Plan, you should receive this Notice with a ballot form and voting instructions appropriate for your claim or interest. For your vote to be counted, ballots to accept or reject the Modified Plan must be executed, completed, and RECEIVED by 7:00 p.m. (prevailing Eastern time) on July 15, 2009 (the "Voting Deadline") by the appropriate voting agent, Financial Balloting Group (the "Securities Voting Agent"), for holders of Securities, or Kurtzman Carson Consultants LLC (the "Creditor Voting Agent"), for all other creditors, at:

| Securities Voting Agent | Creditor Voting Agent |
|---|---|
| Delphi Corporation, et al. | Delphi Corporation, et al. |
| c/o Financial Balloting Group | c/o Kurtzman Carson Consultants LLC |
| 757 Third Avenue—3rd Floor | 2335 Alaska Avenue |
| New York, New York 10017 | El Segundo, California 90245 |
| (866) 486-1727 | (888) 249-2691 |

Ballots may NOT be cast by facsimile transmission or other electronic means. **Ballots that are not received by the Voting Deadline will not be counted.**

8. Injunction To Enforce Releases And Exculpation In The Modified Plan. **The Modified Plan proposes to release and exculpate various parties and to enjoin the pursuit of any claims subject to the releases and exculpation. The releases generally provide that the Debtors, the Debtors' present and certain former officers and directors, the official committee of unsecured creditors, the official committee of equity security holders, the DIP agent, the DIP lenders, the buyers, all professionals retained in these cases, the unions representing the Debtors' employees and former employees, General Motors Corporation, and certain related persons and entities, will receive releases from the Debtors' present and former creditors and equity security holders, certain hourly employees and former employees of the Debtors, and certain related persons and entities, with respect to any claims or causes of actions existing as of the effective date of the Modified Plan that relate to the Debtors or the Debtors' chapter 11 cases. These released parties will also be exculpated generally from Debtor-related liability by all parties.**

**You Are Advised To Carefully Review And Consider The Modified Plan, Including The Release, Exculpation, And Injunction Provisions, As Your Rights Might Be Affected.**

9. Information And Documents. Copies of the Supplement, the Modified Plan, and any exhibits thereto are publicly available along with the docket and other case information by accessing the Delphi Legal Information Website set forth below and may also be obtained, upon reasonable written request, from the Creditor Voting Agent at the address set forth above.

| Delphi Legal Information Hotline: | Delphi Legal Information Website: |
|---|---|
| Toll Free: (800) 718-5305 | http://www.delphidocket.com |
| International: (248) 813-2698 | |

Dated: New York, New York, June 16, 2009

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| | |
|---|---|
| John Wm. Butler, Jr., Ron E. Meisler, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 | Kayalyn A. Marafioti, Thomas J. Matz, Four Times Square, New York, New York 10036 |

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

[1] The Modified Plan seeks certain modifications to (i) the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-in-Possession, as modified (the "Confirmed Plan"), confirmed on January 25, 2008, and (ii) the Order Approving (I) Disclosure Statement, (II) Record Date, Voting Deadline, And Procedures For Temporary Allowance Of Certain Claims, (III) Hearing Date To Consider Confirmation Of Plan, (IV) Procedures For Filing Objections To Plan, (V) Solicitation Procedures For Voting On Plan, (VI) Cure Claim Procedures, (VII) Procedures For Resolving Disputes Relating To Postpetition Interest, And (VIII) Reclamation Claim Procedures (Docket No. 11389) (the "December 10 Solicitation Procedures Order").

**Legal Notice**

NEW! echoice
SAVE 30%
FEDERAL TAX CREDIT
Leak Proof DESIGN
Make your energy bill less taxing.
Affordable way to daylight your home
Installs in just 2 hours
Fits all roof types
Visit www.ilovedaylight.com or call (866) 565-8685.
SOLATUBE.
Innovation in Daylighting.
Make Green by Selling a Green Product
Become a Premier Solatube Dealer