**Exhibit A**

*Objections To Platinum Expense Reimbursement Motion – By Objection Type[1]*

| | OBJECTORS | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|
| 1. | 17395, 17396, 17399 | The Objectors assert that the $30 million expense reimbursement will undermine the auction process by preventing DIP Lenders from making a Pure Credit Bid because any bid would be required to include a cash contribution to pay the Expense Reimbursement. | **Incorrect.** A Pure Credit Bid as defined in the Supplemental Modification Procedures Order is not an Alternative Transaction and thus the Expense Reimbursement would not be paid in the event a Pure Credit Bid is chosen at the Auction. |
| 2. | 17395, 17396 | The Objectors assert that the Expense Reimbursement should only include expenses incurred since April 2009 because prior expenses are not related to the MDA transaction. | **Incorrect.** Soon after Platinum first became involved with Delphi during the spring of 2006 in connection with the sale of Delphi's Steering business, Platinum developed an interest in investing in a comprehensive Delphi transaction. Platinum first executed a non-disclosure agreement in connection with its interest in a broader transaction in February 2007. Platinum again executed a non-disclosure agreement in September 2008 and has maintained an active interest in proceeding with a comprehensive transaction since that time. The knowledge that Platinum acquired during its comprehensive investigation of Delphi over the past three years enabled it to reach agreement with the Debtors and GM on the terms of the Master Disposition Agreement. |
| 3. | 17395, 17396, 17397, 17399 | The Objectors contend that the proposed Expense Reimbursement exceeds the percentage range that Courts generally approve in connection with breakup fees in this district. | **Inapplicable And Incorrect.** The Debtors are not seeking a breakup fee and case law does not require an expense reimbursement to be limited to a particular percentage of transaction value. In any event, the value of the integrated transaction set forth in the MDA includes, among other things, the payment of billions of dollars of administrative claims and approximately $3.6 billion in emergence capital and capital commitments – many times more than the value the Objectors suggest that Platinum is providing. |

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in the Debtors' Omnibus Reply To Objections To Platinum Expense Reimbursement Motion. This chart reflects objections received as of 11:59 p.m. on June 30, 2009.

| | OBJECTORS | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|
| 4. | 17395, 17397, 17399 | The Objectors assert that the amount of the Expense Reimbursement is not reasonable in relation to the amount of the sale and the value that Platinum has contributed to the Debtors' estates through the MDA. In addition, the Objectors argue that the proposed $30 million Expense Reimbursement is unverifiable. | **Expense Reimbursement Is Reasonable.** Platinum and GM provided a fully-funded and fully-diligenced transaction when no other stakeholder was prepared to provide interim or emergence funding to the Debtors. Platinum has been engaged in pursuing a comprehensive transaction with Delphi over the past three years. Through Platinum's involvement, among other things, the Debtors have secured access to $250 million in interim funding from GM and entered into a transaction that maximizes stakeholder recoveries, including the satisfaction of the Debtors' administrative claims. If Delphi now consummates an Alternative Transaction that provides higher or otherwise better value to the estates, it will be because Platinum and GM participated in the MDA and helped to create that value. This Court has approved the Debtors' authority to reimburse expenses up to a predetermined cap in connection with numerous previous transactions in these chapter 11 cases. The proposed $30 million Expense Reimbursement is reasonable in relation to the total consideration provided through the unitary transaction that comprises the MDA. That fact that GM has chosen to forego an expense reimbursement further supports this conclusion. The Krasner Declaration and Sheehan Declaration demonstrate that the Expense Reimbursement up to $30 million is reasonable in light of the significant effort and expense undergone by Platinum. |
| 5. | 17395 | Platinum's involvement in the MDA was not necessary for GM to extend interim financing. | **Unsupported By The Facts.** Since January 2009 (and in the case of the Auto Task Force, since March 2009), GM has consistently stated that it was not prepared to provide further pre- or post-emergence liquidity to Delphi without a full and final global resolution to the Debtors' chapter 11 cases. In fact, in March 2009 the Auto Task Force directly intervened in the Debtors' chapter 11 cases and prevented GM from providing $150 million of interim financial support to the Debtors and consummating the Steering Option Exercise Agreement. Moreover, in May 2009 the Auto Task Force reiterated that it was not prepared to allow GM to fund Delphi in the absence of a comprehensive transaction. Until the execution of the MDA, no other party was willing and able to serve in a role comparable to that of Platinum. Thus, the access to additional liquidity from GM in light of the global resolution that Platinum's participation has facilitated represents value that Platinum has brought to the estate. |

2

| | OBJECTORS | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE, OR PROPOSAL |
|---|---|---|---|
| 6. | 17395, 17396, 17399 | The Objectors assert that payment of a breakup fee is unnecessary because the MDA was agreed to before the breakup fee was requested, did not entice Platinum to enter into the MDA, and could chill bidding. | **Incorrect.** The Debtors are not seeking a breakup fee for Platinum. As much as the Objectors would like to characterize the Expense Reimbursement as a breakup fee, to do so ignores the approximately $37 million in costs and expenses incurred by Platinum during its extensive investigation of Delphi's businesses. In addition, as a result of the Court's rulings regarding the formation of procedures the Court deemed appropriate under the circumstances, Platinum made concessions in certain agreements among the participants to the Master Disposition Agreement to facilitate GM's and Delphi's participation in discussions regarding Alternative Transactions. Moreover, there is no evidence that the proposed Expense Reimbursement will discourage other parties from proposing Alternative Transactions. |
| 7. | 17395, 17396, 17397, 17399 | The Objectors assert that the relief sought in the Motion is premature and should be considered after the Auction. In addition, the Objectors argue that Rule 6004(h) relief should not be granted. | **Timing Is Proper.** As the Debtors stated in the Motion, the Debtors continue to believe that now is the appropriate time to consider the relief requested because, if granted, other potential purchasers of the Debtors' businesses must incorporate the Expense Reimbursement in their proposed Alternative Transactions, which are due July 10, 2009. For this reason, it is axiomatic that the Expense Reimbursement provision must be established prior to the Auction. Moreover, if an order in respect of this Motion were not immediately effective, other potential bidders would not know whether the amount of the Expense Reimbursement must be included in their Alternative Transactions, which are due on July 10, 2009 – only nine days following the hearing on this Motion. In recognition of the time and effort expended by Platinum in connection with the MDA and to provide certainty for other parties weighing whether and how to structure Alternative Transactions, the Debtors believe that a waiver of the ten-day stay provided under Bankruptcy Rule 6004(h) is appropriate. |

3

| | **OBJECTORS** | **SUMMARY OF OBJECTION** | **RESOLUTION, RESPONSE, OR PROPOSAL** |
|---|---|---|---|
| 8. | 17396, 17399 | The Objectors assert that the proposed Expense Reimbursement violates section 13(a) of the DIP Order because it grants the DIP Lenders superpriority liens against any sale proceeds. | **The Court Contemplated This Relief.** This objection ignores paragraph 46 of the Modification Procedures Order, which provides that "The Debtors may seek Court approval, in recognition of the Company Buyer's expenditure of time, energy, and resources, of an expense reimbursement or other form of buyer protection to be paid from the proceeds of a successful alternative transaction if the Company Buyer is not the Successful Bidder (as such term is defined in the Supplemental Procedures). If the Court approves such reimbursement or other protection, such order shall become part of the Supplemental Procedures."<br><br>The Debtors reserve all arguments regarding application of the provisions of the DIP Order and the DIP Credit Agreement for the final hearing to approve the Plan Modification Motion. |
| 9. | 17395 | The Objectors assert that Platinum has not contributed any value to the Debtors' estates because the transactions proposed in the MDA cannot be consummated without the consent of the DIP Lenders. | **Untrue.** In any event, the Court need not make a determination regarding the need for DIP Lender consent until the final hearing to approve the Plan Modification Motion. The Expense Reimbursement will be paid only if the Debtors actually consummate a higher or better Alternative Transaction than the transaction set forth in the MDA and such transaction closes, in which case the MDA will have created additional value for the Debtors' estates. |

4

Objectors (By Docket Number)

| Docket No. | Objector |
| --- | --- |
| 17395 | Kensington International Limited, Manchester Securities Corp. And Springfield Associates, LLC |
| 17396 | Collective Of DIP Lenders |
| 17397 | Official Committee Of Unsecured Creditors |
| 17399 | JPMorgan Chase Bank, N.A. |