**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Erica E. Carrig (EC-2096)
1540 Broadway
New York, NY  10036-4039
Phone:  212-858-1000
Facsimile:  212-858-1500

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Mark D. Houle (Cal. Bar. No. 194861) *(Pro Hac Admission Granted by Order entered September 27, 2006)*
650 Town Center Drive, Suite 550
Costa Mesa, CA  92626-7122
Telephone: (714) 436-6800
Facsimile: (714) 436-2800

*Attorneys for Hyundai Motor Company*
*and Hyundai Motor America*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| **DELPHI CORPORATION,** *et al.* | : | Case No. 05-44481 (RDD) |
| | : | **(Jointly Administered)** |
| Debtors. | : | |

------------------------------------------------------------------------x

**MOTION OF HYUNDAI MOTOR COMPANY AND HYUNDAI MOTOR AMERICA PURSUANT TO RULE 3018(a) REQUESTING TEMPORARY ALLOWANCE OF CLAIMS FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN**

Hyundai Motor Company and Hyundai Motor America (collectively, "Hyundai"), by and through their undersigned counsel, hereby submit their Motion ("Motion") Pursuant to Bankruptcy Rule 3018(a) Requesting Temporary Allowance of Claims for Purposes Voting to Accept or reject the Plan, in the full amount of its claims as identified herein solely for the purpose of voting on the First Amended Plan (the "Plan") of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Debtors").  In support of this Motion, Hyundai respectfully states as follows:

600826668v2

**Background**

1. On October 8, 2005 and October 14, 2005 (the "Petition Dates") the above-captioned Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are continuing in possession of their property and are operating their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy code.

2. On July 31, 2006, Hyundai Motor America and Hyundai Motor Company each timely filed six proofs of claim (each a "Proof of Claim" and together, the "Claims"), each proof of claim asserting an unliquidated amount based on goods and services provided by various Debtors to Hyundai. Proofs of Claim Nos. 15584 and 15590 each were filed against Delphi Korea by Hyundai Motor America and Hyundai Motor Company, respectively. Proofs of Claim Nos. 15585 and 15589 were each filed against Delphi by Hyundai Motor America and Hyundai Motor Company, respectively. Proofs of Claim Nos. 15586 and 15591 were each filed against Delphi Electronics by Hyundai Motor America and Hyundai Motor Company, respectively. Proofs of Claim Nos. 15587 and 15592 were each filed against DAS LLC by Hyundai Motor America and Hyundai Motor Company, respectively. Proofs of Claim Nos. 15588 and 15593 were each filed against DEOC by Hyundai Motor America and Hyundai Motor Company, respectively. Proofs of Claim Nos. 15594 and 15595 were each filed against Delphi Diesel by Hyundai Motor America and Hyundai Motor Company, respectively.

3. On February 15, 2007, the Debtors objected to Proofs of Claim Nos. 15584, 15586, 15588, 15590, 15591, 15593, 15594, and 15595 as duplicate claims pursuant to the Debtors' Eighth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. Section 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims, (B) Claims Duplicative

2

600826668v2

Of Consolidated Trustee Claim, (C) Equity Claims, And (D) Protective Claims (Docket No. 6962) (the "Eighth Omnibus Claims Objection").

4. On March 14, 2007, Hyundai filed responses to the Eighth Omnibus Claims Objection (the "Eighth Omnibus Responses"), asserting that the Claims objected to were not duplicate claims (Docket No. 7214).

5. On March 16, 2007, the Debtors objected to Proofs of Claim Nos. 15587 and 15592 as duplicate claims pursuant to the Debtors' Tenth Omnibus Objection (Procedural) Pursuant To 11 U.S.C. Section 502(b) And Fed. R. Bankr. P. 3007 To Certain (A) Duplicate And Amended Claims And (B) Equity Claims (Docket No. 7300) (the "Tenth Omnibus Claims Objection," and together with the Eighth Omnibus Claims Objection, the "Claims Objections").

6. On April 12, 2007, Hyundai Motor Company filed its Response to the Tenth Omnibus Claims Objection (Docket No. 7651) and Hyundai Motor America filed its Response to the Tenth Omnibus Claims Objection (Docket No. 7652) (together with the Eighth Omnibus Responses, the "Responses") asserting that the Proofs of Claim objected to were not duplicate claims.

7. The Responses assert, in relevant part, that the Proofs of Claims are not duplicates because, among other things, the majority of the Proofs of Claims reference different supporting documentation.

8. Subsequently, the Debtor's adjourned the hearings on the Claims Objections, and as of the date of this Motion, more than <u>two years</u> after the Claims Objections were filed, there has been no hearing on the Debtors' Claims Objections or Hyundai's Responses.

9. Under the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, filed December 10, 2007 (Docket

3

600826668v2

No. 11386) (the "First Plan"), Claims 15585 and 15589 were classified as Flow-Through Claims in Class 1B.  Such Claims were unimpaired and, as a result, Hyundai was deemed to accept the First Plan with respect to such Claims.  The First Plan was confirmed on January 25, 2008.

10.    Although Delphi and Hyundai subsequently negotiated a draft stipulation regarding the treatment of the Claims and resolution of the Claims Objections, the stipulation was never finalized or executed, and in April 2009, Debtors' counsel indicated to Hyundai's counsel that the claims objection process was suspended due to the deteriorated state of the Debtors' businesses.

11.    Upon motions dated October 3, 2008 (Docket No. 14310) and June 1, 2009 (Docket No. 16646), the Debtors moved for entry of an order approving certain modifications to the confirmed First Plan.  As set forth in the Modification Procedures Order entered on June 16, 2009 (Docket No. 17032), a hearing to consider the First Plan as modified (the "Modified First Plan") is scheduled for July 23, 2009.  Further, the Modification Procedures Order provides that any motion filed pursuant to Bankruptcy Rule 3018(a) must be filed by July 2, 2009.

12.    On or about the week of June 22, 2009, the Debtors sent Hyundai ballots indicating that Hyundai's Claims were now to be classified as general unsecured claims in Class C-1 under the Debtors' Modified First Plan.  The Ballots indicated that Hyundai would be entitled to vote only two of its Claims (presumably Claims 15585 and 15899) in the amount of $1 each.  As set forth herein, these Claims (as well as the remaining Claims currently subject to adjourned objections) are worth far more than $2.  Ballots voting in the total amount of $2 is hardly commensurate with Hyundai's economic interest in these cases.

13.    Moreover, Despite Debtors' statement that claims objections were suspended, on June 24, 2009, when Hyundai's counsel contacted Debtors' counsel to inquire as to the status of

4

the stipulation, Debtors' counsel indicated that Hyundai's claims were no longer treated as flow-through claims, but would be treated as general unsecured claims under the Plan. This was approximately one week before Rule 3018 motions were due to be filed.

14. For this reason, Hyundai respectfully requests that its Claims be allowed temporarily for voting purposes only in the amounts set forth below.

### Relief Requested

15. Hyundai seeks entry of an order estimating the Claims for voting purposes as set forth below.

### Hyundai's Claims

16. Hyundai and certain of the Debtors are parties to certain agreements including without limitation (i) Basic Agreement Regarding Business Transactions between Hyundai Motor Company and Delco Electronics, LLC, formerly Delco Electronics Corporation, dated as of June 29, 1993, (ii) that certain Basic Agreement Regarding Business Transactions between Hyundai Motor Company and Delphi Automotive Systems, LLC, dated as of December 7, 2004, (iii) Basic Agreement Regarding Business Transactions between Hyundai Motor Company, Kia Motor Company and Delphi Diesel Systems France SAS, dated as of October 20, 2003, and (iv) that certain Product Liability Agreement between Hyundai Motor Company and its affiliates and Delphi Automotive Systems LLC and its affiliates dated October 15, 2007 (as supplemented from time to time, the "Agreements"). Pursuant to the Agreements, purchase orders associated with the Agreements, as well as well-settled commercial and common law, certain of the Debtors are obligated to indemnify Hyundai, and assume its defense of litigation or other claims based on, or arising out of, liability associated with the parts supplied by Delphi and incorporated into

Hyundai vehicles, including warranty claim expenses, product liability claims, and claims of competing intellectual property rights.

17. To date, such claims remain primarily contingent, accruing only when a claim is first made against Hyundai that involves a Delphi component. As set forth in the attached Declaration of Jason R. Erb (the "Erb Dec."), one such instance occurred when Hyundai was sued for infringement of certain patents in relation to occupant classification sensing products supplied by certain of the Debtors that have been incorporated into certain Hyundai vehicles, in that certain action styled, *Automotive Technologies International, Inc. v. General Motors Corporation, et al.*, United States District Court for the Eastern District of Texas, Marshall Division, No. 2:08-CV-57 (the "Texas Action"). *See* Erb Dec. at ¶ 2. The Texas Action also involves a companion case, *Delphi Corporation v. Automotive Technologies International, Inc.*, United States District Court for the Eastern District of Michigan, Southern Division, No. 08-CV-11048 (the "Michigan Action," and together with the Texas Action, the "ATI Action"). *See id.* Pursuant to the terms of the Agreements, Hyundai demanded that Delphi assume the Hyundai's defense of the ATI Action. *See id.* Following Hyundai's demands in relation to the ATI Action, Delphi agreed to, and did, assume Hyundai's defense of the ATI Action. *See id.* Trial in the ATI Action is scheduled for November 2011. *See id.*

18. Hyundai estimates two categories of estimated claims with respect to the ATI Action: (1) its ultimate exposure in relation to the infringement claims made by plaintiff Automotive Technologies International ("ATI") and (2) its costs of defense if Delphi were to no longer provide a defense (as apparently contemplated under Delphi's new plan). *See* Erb Dec. at ¶ 3. With respect to estimated exposure claim, ATI's recognized damages model will dictate that Hyundai is liable to pay ATI approximately $64.80 for each allegedly infringing Hyundai

600826668v2

vehicle. *See id.*. Based on a total of approximately 495,133 allegedly infringing vehicles reported at the close of business on June 29, 2009, Hyundai faces exposure in the ATI Action in amount of approximately $32,084,618 (the "Estimated Exposure Claim").[1] *See id.* Accordingly, pursuant to the Agreements, Delphi would be required to indemnify Hyundai for the Estimated Exposure Claim.

19. Upon information and belief, Delphi will no longer assume the defense of the ATI Action and will seek to discharge any such liability in its Modified First Plan. Accordingly, Hyundai's present claim against the Debtors must also include an estimation for defense costs associated with the ATI Action. According to the most recent survey by the American Intellectual Property Law Association on litigation costs in the United States, the median cost of defense for a patent litigation matter through trial would be $5 million. *See* Erb Dec. at ¶4. A true and correct copy of an excerpt from that 2007 survey is attached to the Erb Dec. as Exhibit 1. Given that the ATI Action involves multiple patents and overlapping proceedings in two separate courts (and because the latest survey is a few years old by now), Hyundai believes that the costs of defense for the ATI Action might exceed the 2007 median. *See id.* However, Hyundai nonetheless adopts $5 million as a benchmark estimate for purposes of this Motion (the "Estimated Defense Claim"). *See id.*

20. In addition to the Estimated Exposure Claim and the Estimated Defense Claim, Hyundai Motor Company also has claims arising from premiums paid under the aforementioned October 15, 2007 Product Liability Agreement between Hyundai Motor Company and its affiliates and Delphi Automotive Systems, LLC and its affiliates (the "Product Liability

---

[1] The Estimated Exposure Claim shall not constitute an admission of liability by, nor is binding on, Hyundai. Hyundai reserves all rights to contest ATI's allegations in the ATI Action including, without limitation, that the patents in the ATI Action or valid or infringed.

600826668v2

Agreement"). A true and correct copy of the Product Liability Agreement is attached as Exhibit 2 to the Erb Dec. In connection with the Product Liability Agreement, Hyundai agreed to pay a 3.5% premium to Delphi in consideration of Delphi's promise to conditionally defend and indemnify Hyundai with respect to product liability claims in relation to the Delphi-supplied components. *See* Erb Dec. Ex. 2, ¶ 15. Since October 15, 2007, Hyundai has paid Delphi at least $41.6 million in relation to airbag components that Delphi has supplied to Hyundai for its North American-built vehicles alone. *See* Erb Dec. at ¶ 5. Under the agreement, 3.5% of that sum was paid for an indemnity promise that Delphi apparently now seeks to discharge. *See id.* Consequently, Hyundai also seeks an estimated $1,456,847 for these product liability risk premiums paid (the "Estimated Indemnity Premium Claim").[2] *See id.*

21. In connection with vehicles currently on the road and in use across the United States and elsewhere in the world that incorporate components supplied to Hyundai by Delphi, Hyundai contends that it presently may have contingent, unknown claims relating to such components' possible future costs and expenses deriving from, among other things, consumer warranties, product liability risks, and competing intellectual property rights. However, Hyundai cannot possibly, and thus does not seek pursuant to this Motion, to estimate such future claims for voting purposes. Hyundai does, however, reserve all rights to seek estimation of these such claims, as well as all of the other claims identified herein, for allowance purposes pursuant to section 502 of the Bankruptcy Code.

22. Hyundai has had only one week to prepare and serve the instant motion. This is particularly prejudicial given that Debtors' counsel specifically indicated the stipulation between the parties, reflecting flow-through treatment, would not be finalized because the claims

---

[2] Hyundai will supplement and revise this amount following review of additional amounts paid to Delphi by Hyundai's purchasing units in South Korea.

8

600826668v2

objection process was suspended, and then Delphi only learned of the changed Plan classification one week prior to the deadline to file a 3018 Motion. Moreover, the distance between Hyundai's U.S. counsel and Korean business personnel has made preparation of the Motion even more difficult.

23.    Hyundai is also prejudiced in the preparation of this Motion in that the Plan separately consolidates certain of the Debtors against which Hyundai asserts its claims, which issue would have been resolved pursuant to the draft stipulation between the parties. Specifically, Delphi Automotive Systems Korea, Inc., is consolidated within the DASHI Debtors. Delphi Automotive Systems, LLC and Delphi Electronics (Holding) LLC are consolidated within the Delphi-DAS Debtors. Delphi Corporation, Delphi Electronics Overseas Corporation, and Delphi Diesel Systems Corp. are not substantively consolidated. As a result, Hyundai reserves all rights to further amend or supplement its calculations and/or Claims as necessary.

## Basis for Relief Requested

24.    Bankruptcy Rule 3018(a) provides in pertinent part that "a Plan may be accepted or rejected in accordance with section 1126 of the Code within the time fixed by the court pursuant to Rule 3017…Notwithstanding objection to a claim or interest, the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

25.    Courts are encouraged to exercise their discretion to temporarily allow claims in favor of creditor participation in the plan voting process. *In re Johns-Manville Corp.,* 68 B.R. 647, 653-54 (Bankr. S.D.N.Y. 1986); *see In re Adelphia Communications Corp.,* 359 B.R. 54, 61 (Bankr. S.D.N.Y. 2006) (voting for or against proposed plan is fundamental right in bankruptcy).

600826668v2

The standard for the temporary allowance of a claim is fairly liberal. *See In re First Republicbank Corp.,* 1990 LEXIS 2840 at *5 (Bankr. N.D. Tex. June 19, 1990 ("the evidentiary threshold is far less than would be required" at a claims objection hearing). Moreover, estimation should ensure that the creditor's voting power is commensurate with its economic interest in the case. *Pension Benefit Guar. Corp. v. Enron Corp. (In re Enron)*, No. 04 Civ. 5499 (HB), 2004 WL 2434928, at *5 (S.D.N.Y. Nov. 1, 2004).

26. Temporary allowance of claims should be permitted where the full hearing on the objection to the claim would delay administration of the case, or where the objection is frivolous or of questionable merit. *9 Collier on Bankruptcy* § 3018.01[05] (15th Ed. 2007); *see also* Fed. R. Bankr. P. 3007 (providing for 30 days' notice prior to a hearing on a claim objection). Since the hearing to consider the modifications to the First Plan has been set for July 23, 2009, it is unlikely that a full hearing on Hyundai's Responses to the Debtors' Objections to Claims could be heard before that time.

27. Hyundai asserts Claims 15585 and 15589 each in the aggregate amount of approximately $38,541,465. Ballots voting in the total amount of $2 are not commensurate with Hyundai's economic interest in these cases. As a result, for each of the reasons set forth herein, Hyundai respectfully requests that this Court grant the proposed order that will allow Hyundai to vote on the Modified First Plan in the amounts set forth therein.

28. No previous motion for the relief requested herein has been made to this Court or any other Court.

29. This Motion raises no novel issues of law. Accordingly, Hyundai respectfully requests the waiver of the requirement of Local Rule 9013-1 that a separate memorandum of law accompany the Motion.

**Notice**

30.     Notice of this Motion has been provided in accordance with the Modification Procedures Order and the Supplemental order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Management, and Administrative Procedures, entered by this court on March 20, 2006 (Docket No. 2883).  Hyundai submits that no other or further is necessary.

WHEREFORE, Hyundai respectfully requests that the Court (i) enter the order attached hereto as Exhibit A temporarily allowing Claims 15585 and 15589 each in the amounts set forth therein for voting purposes only; and (ii) grant Hyundai such other and further relief as this Court may deem just and proper.

Dated:  July 1, 2009
         New York, New York

By:    /s/ Erica E. Carrig
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Erica E. Carrig (EC-2096)
1540 Broadway
New York, NY  10036-4039
Phone:  212-858-1000
Facsimile:  212-858-1500

-and-

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
Mark D. Houle (Cal. Bar. No. 194861) *(Pro Hac Admission Granted by Order entered September 27, 2006)*
650 Town Center Drive, Suite 550
Costa Mesa, CA  92626-7122
Telephone: (714) 436-6800
Facsimile: (714) 436-2800

 *Attorneys for Hyundai Motor Company
and Hyundai Motor America*