PREVIANT, GOLBERG, UELMEN, GRATZ
MILLER & BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500
Marianne Goldstein Robbins

Attorney for Int'l Brotherhood of Elec. Workers
    &
Attorney for Int'l Ass'n of Machinists & Aerospace
    Workers

GORLICK KRAVITZ & LISTHAUS P.C.
17 State Street
New York, N.Y. 10004
(212) 269-2500
Barbara S. Mehlsack

Attorney for Int'l Union of Operating Engineers
Locals 18S, 101S, 832S

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————— x

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

——————————————————————— x

## RULE 3018(a) MOTION FOR RELIEF

        The International Union of Operating Engineers Locals 832S, 18S, and 101S (the

"IUOE"), the International Brotherhood of Electrical Workers and its Local 663 (the "IBEW"),

and the International Association of Machinists and Aerospace Workers and its District 10 and

Tool and Die Makers Lodge 78 (the "IAM") jointly[1], by their attorneys, hereby file this Motion pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §1126(a), for temporary allowance of the Claimant IBEW's Claims No. 13875 and 14350; Claimant IAM's Claims No. 13863 and 14334; and Claimant IUOE's Claims No. 13663, 13699, 13730, 13734, 15071 and 15075 for the purpose of voting on the Debtors' Modified Plan of Reorganization. Attached hereto as Exhibit A is a Proposed Order providing such relief.

In support of their Motion, the Unions respectfully state as follows:

## JURISDICTION AND VENUE

1.      This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(B). Venue of the Debtors' Chapter 11 cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for relief are 11 U.S.C. §1126(a) and Fed. R. Bankr. P. 3018.

2.      This Motion includes citations to the applicable authorities as required by Rule 9013-1(b), L.R. Bankr. P. and movants request waiver of the requirement for a separate memorandum of law.

## SUMMARY OF RELIEF REQUESTED

3.      The Unions believe that those claims identified in the following paragraphs 3, 4, and 5 are administrative claims. The Debtors dispute these claims. In the event that the Unions' claims are not allowed as administrative claims, but are allowed as general unsecure claims, the

---

[1] Collectively, "the Unions."

Unions should be allowed to exercise their right to vote on the Modified Plan, and ask that the Court temporarily allow the Unions claims for purposes of voting on the Plan.

4. The three IUOE Locals collectively represents some 20 participants in the Delphi Hourly Pension Plan ("HRP"). In addition, IUOE Local 832 S represents four active employees at the Rochester plant. By this Motion, the IUOE requests the entry of an order temporarily allowing the following claims as general unsecured claims for voting purposes only, to accept or reject the Modified Plan. The claims, and their respective amounts the IUOE asks the Court to allow, are as follows:

>Claim Nos. 13663, 13699, 13730, 13734, 15071, 15075
>Aggregate claim amount: $8,849,200, which represents the estimated accrued liability for pension benefits for participants represented by all of the IUOE Locals, a portion of which is entitled to priority pursuant to 11 U.S.C. 507(a)(4).
>
>Claim No. 13699
>Additional amount: $1,647,360.00
>Estimated contingent claim for future wages and benefits arising out of collective bargaining agreement, in the event of breach.
>
>Total claim: $10,496,500.

5. The IBEW represents certain former employees and retirees at the Debtors' former Oak Creek, Wisconsin plant. By this Motion, the IBEW requests the entry of an order temporarily allowing the following claims as a general unsecured claims for voting purposes only, to accept or reject the Modified Plan. The claims, and their respective amounts the IBEW asks the Court to allow, are as follows:

>Claim No. 13875 and Claim No. 14350:
>
>$1,672,095.08 owed for contract violations under pending grievances, pursuant to 11 U.S.C. §507(a)(4)

3

In addition $31,259,600, the estimated accrued liability for pension benefits for participants represented by the IBEW, a portion of which is entitled to priority pursuant to 11 U.S.C. 507(a)(4) and which is referenced in the IBEW proofs of claim as unliquidated damages.

Total claim: $32,931,695

6. The IAM represents certain former employees and retirees at Debtors' former plant in Oak Creek, Wisconsin. By this Motion, the IAM requests the entry of an order temporarily allowing the following claims as general unsecured claims for voting purposes only, to accept or reject the Modified Plan. The claims, and their respective amounts the IAM asks the Court to allow, are as follows:

a. Claim No. 14334 and Claim No. 13863

Amount $114,072.00 owed for contract violations under pending grievances, pursuant to 11. U.S.C. §507(a)(4).

In addition $13,742,000, the estimated accrued liability for pension benefits for participants represented by the IAM, a portion of which is entitled to priority pursuant to 11 U.S.C. 507(a)(4) which is referenced in the IAM proofs of claim as unliquidated damages.

Total Claim $13,856,072.

b.    THE UNIONS' CLAIMS

7. The **IUOE, IBEW** and **IAM** (collectively, "the Unions") are each parties to several collective bargaining agreements, settlement agreements and memoranda of understanding with Delphi Corporation, and/or its subsidiaries, all of which are Debtors in the jointly administered Case No. 05-44481, relating to wages, hours and conditions of employment,

as well as pension and other post-employment benefits ("OPEB") for both current and retired employees. The Unions are the exclusive bargaining representatives pursuant to 29 U.S.C. §158, et. seq. and are authorized to settle bankruptcy claims on behalf of such individuals. See United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544 (1996).

8. On October 8, 2005, and October 14, 2005, the Debtors filed petitions for relief under Chapter 11, of Title 11 of the Bankruptcy Code. The Court set July 31, 2006, as the deadline for proofs of claim. Each union timely filed proofs of claims for debts arising under their respective bargaining units.

9. The Debtors entered into three settlement agreements with the IUOE, two with the IBEW and one with the IAM to settle Debtors' motions to reject collective bargaining agreement and modify retiree benefits of employees and retirees represented by the Unions. (Docket No. 8906, Exh. 2-7) The Settlement Agreements (also referred to as the Restructuring MOUs) address, in relevant part, the Debtors' pension obligations and liabilities. Pursuant to the Debtors' respective agreements with the Unions, the Unions and their members agreed only to waive and release, upon the effective date of the Plan (the "Effective Date"), all claims arising from the respective collective bargaining agreements between the Debtors and each of the IUOE, the IBEW, and the IAM, contingent and effective only upon the substantial consummation of a plan of reorganization proposed by Delphi which incorporates, approves, and is consistent with all of the terms of the respective settlement agreements. Specifically, each agreement requires that the Debtor ensure that employees and retirees, as defined in the respective agreements, are provided specified pension benefits and other post-employment benefits, the latter to be provided by GM. (Docket No. 8906, Ex. 2-7 §F.2). The Proposed Modified Plan does not contain

5

provisions which would ensure that the Debtors' employees and retirees are provided pension and other post-employment benefits.

10. The Debtors filed a Plan of Reorganization ("the Plan") with the Court in December 2007. (Docket No. 11386) That Plan, as modified, was approved and was confirmed on January 28, 2008. (Docket No. 12359) Debtor's are now soliciting acceptance of a modification of that Plan.

11. In September 2008, the Unions entered into an Implementation Agreement with the Debtors which established the manner by which the Debtors would implement the various Settlement agreements. The Implementation Agreement provides for, among other things, implementation of agreed-upon terms and conditions of employment as detailed in term sheets with each union and their respective local unions. The Implementation Agreement specifically provides for the staggered transfer of the Debtors' pension assets and liabilities to GM. The Implementation Agreement provides only for the cessation of Delphi obligations, "for or relating to the pension liabilities transferred." Therefore, Delphi remains responsible for the pension benefits as set forth in the Restructuring MOUs for those pension participants for whom liability has not transferred to GM.

12. On September 29, 2008, the Company effectuated the First Net Liability Transfer under Section 414(l) of the Internal Revenue Code. As a result, certain Union-affiliated employees and retirees who participated in the Delphi Plans are currently provided pension and other post-employment benefits by GM. That transfer is the only transfer to have occurred to date and many of the Debtors' union-represented employees and retirees have not been transferred to the GM Plans. As of the date of this filing, 5 of 25 IUOE-represented participants, 10 of 81 IBEW-represented participants, and 19 of 48 IAM-represented participants have been

transferred to the GM Plans. All other participants, 20 IUOE represented participants, 71 IBEW represented participants and 29 IAM represented participants remain in the Delphi HRP.

13. On June 1, 2009, the Debtors filed a Plan Modification Approval Motion with their First Amended Plan of Reorganization. (Docket No. 16646) The Proposed Modified Plan states that "Upon consummation of the Modified Plan, the remaining assets and liabilities of Delphi's hourly pension plan will no longer be the responsibility of the Debtors and will be addressed by GM." The Modified Plan contains no provision for Delphi retirees and employees in the Delphi HRP not yet transferred that allows such employees to receive the pension benefits to which they are entitled under the Settlement Agreements.

14. The Settlement Agreements specifically require in Section F.2.(b) "the substantial consummation of a plan of reorganization proposed by Delphi which incorporates, approves, and is consistent with all of the terms of this Agreement." Specifically, each agreement requires that the Debtor ensure that employees and retirees, as defined in the respective agreements, are provided pension and other post-employment benefits by GM or Delphi. (Docket No. 8906 Exhs. 2-7 at §F.2) No such agreement exists under the Proposed Modified Plan, which disclaims any obligation to the remaining assets and liabilities of Delphi's Hourly Pension Plan following the confirmation of the Modified Plan, notwithstanding the remaining participants who have not been transferred and are in the Delphi HRP.

15. On June 23, 2009, the Debtors filed an objection to disallow the Unions' claims, because, "[a]lthough the Debtors believe that many of the Provisionally Disallowed Union Claims would be resolved after the Waiver Date without an objection, the Debtors are filing this objection prior to the Waiver Date to make clear that the holders of the Provisionally Disallowed

Union Claims are not entitled to vote on the Plan (as modified) on account of such Provisionally Disallowed Union Claims." (Docket No. 17182, 34th Omnibus Obj., ¶43).

16.     The Debtors' themselves state that "many" of the claims would be resolved, acknowledging that not all of the Unions' claims would be resolved. To the extent that employees' and retirees' pensions have not been transferred to GM and the Delphi Plan continues to exist, the Implementation Agreement is not effective and the Union's pension and breach of contract claims remain. The Unions each face a future loss of pension benefits and breach of contract damages for employees and retirees estimated at $13,856,072 for the aggregate IAM claims, $32,931,695 for the aggregate IBEW claims, and $10,496,500 for the aggregate IUOE claims.

17.     The Debtors and IUOE Local 832 S negotiated a collective bargaining agreement covering the IUOE employees at Rochester, which was assumed by the Debtor. The Debtor has proposed to sell the Rochester Plant to a GM purchaser. The IUOE is filing a contingent claim for breach of the agreement, as the status of the agreement and the employees upon the Debtor's sale of the facility still remains uncertain.

18.     Because the Implementation Agreement has not been fully carried out, the Unions have no obligation to waive their claims. The Unions' claims remain held by each respective Union. Because the Implementation Agreement has not yet become effective, the Unions retain valid claims against the estate. Those claims therefore remain held by the respective Union-claimants, and as holders of valid claims against the estate. If found to be general unsecured claimants, the Unions are entitled to vote upon the Proposed Modified Plan of Reorganization. <u>In re Altair Airlines</u>, 727 F.2d 88 (3rd Cir. 1984) (the union rather than the individual employee is

8

the "creditor" of the debtor and is the entity owning the claims arising under collective bargaining agreements).

### THE UNIONS' CLAIMS SHOULD BE TEMPORARILY ALLOWED

19.     Under Rule 3018(a), the Court, in the exercise of its discretion, may temporarily allow a claim in an amount the Court deems proper for the purpose of accepting or rejecting the plan, notwithstanding the objection to the claim. The Court may consider evidence the Court finds appropriate to determine if some amount of a claim should be temporarily allowed for voting purposes only, notwithstanding an objection to the claim. *In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990).

20.     After notice and a hearing the court may temporarily allow a claim to which an objection is interposed in an amount which the court deems proper for the purpose of accepting or rejecting a plan. *In re Motel Associates of Cincinnati*, 50 B.R. 196, 199 (Bankr. S.D.N.Y. 1985). Allowing a claimant to vote before the validity of its claim has been finally adjudicated "is more in keeping with the spirit of Chapter 11, which encourages creditor vote and participation in the reorganization process. *In re Amarex, Inc.,* 61 B.R. 301, 303 (Bankr. W.D. Okla. 1985).

21.     To the extent that the portions of the Unions' claims are "contingent" and/or "unliquidated," the Court can fairly enter an order based upon an estimated value of such claims. The statutory predicate to Rule 3018(a) is section 502(c) of the Code, which allows for the estimation of "any contingent or unliquidated claim, the fixing or liquidation of which would unduly delay the administration of the estate." Neither the Code nor the Rules prescribe any

9

method for estimating a claim, and it is therefore committed to the reasonable discretion of the court, which should employ whatever method is best suited to the circumstances of the case. *In re Ralph Lauren Womenswear*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (internal citations omitted).

22. When estimating claims, bankruptcy courts may use whatever method is best suited to the contingencies of the case, so long as the procedure is consistent with the fundamental policy of Chapter 11 that a reorganization must be accomplished quickly and efficiently. *In re Adelphia Communs. Corp.*, 368 B.R. 140, 278 (Bankr. S.D.N.Y. 2007). Therefore, the estimation of a claim for voting purposes does not entail consideration on the merits of all the issues in dispute respecting that claim; only those issues that affect the amount of the disputed, unsecured claim need be addressed. *Ralph Lauren Womenswear, supra.* "A trier of fact first determines which version [of the facts] is most probable and proceeds from there to determine an award in a fixed amount. An estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by [the] probability that it may be sustainable only in part or not at all." *Id*. (*citing In re Windsor Plumbing Supply Co., Inc.*, 170 Bankr. 503, 521 (Bankr. E.D.N.Y. 1994)).

23. Temporary allowance of the Unions' Claims in the amounts requested is appropriate. The Unions possess valid claims against the Debtors. If the Unions' claims are disallowed for voting purposes, the Unions will be unfairly excluded from the voting process.

**RELIEF REQUESTED**

WHEREFORE:

10

The IBEW respectfully requests temporary allowance of their respective claims in the aggregate amount of $32,931,695. This relief is sought solely for voting purposes.

The IAM respectfully requests temporary allowance of their respective claims in the aggregate amount of $13,856,072.   This relief is sought solely for voting purposes.

The IUOE respectfully requests temporary allowance of their respective claims in the aggregate amount of $10,496,500.  This relief is sought solely for voting purposes.

Dated this 2nd day of July, 2009.

s/Marianne Goldstein Robbins_____
Marianne Goldstein Robbins
PREVIANT, GOLBERG, UELMEN, GRATZ
MILLER & BRUEGGEMAN, s.c.
1555 N River Center Drive, Suite 202
Milwaukee, WI 53212
(414) 271-4500
Attorney for IBEW -and-  IAM

s/Barbara S. Mehlsack_____
Barbara S. Mehlsack
GORLICK KRAVITZ & LISTHAUS P.C.
17 State Street
New York, N.Y. 10004
(212) 269-2500
Attorney for IUOE

s:\docs\ele663\71259\m0335444.doc