Exhibit 7.9

Post-Confirmation Reorganized DPH Holdings
Share Trust Agreement

All Plan Exhibits are subject to all of the provisions of the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (Docket No. 17030) (as subsequently modified or amended, the "Modified Plan"), including, without limitation, Article 14.3, under which the Debtors have reserved the right to alter, amend, or modify the Modified Plan or any Exhibits thereto.

# DELPHI POST-CONFIRMATION TRUST AGREEMENT

DELPHI POST-CONFIRMATION TRUST AGREEMENT, dated as of July __, 2009 (this "Agreement"), by and among Reorganized DPH Holdings ("DPH") and each of its subsidiaries a party hereto, in their capacities as debtors and debtors in possession and on behalf of themselves and their respective chapter 11 estates (each a "Debtor" and, collectively, the "Debtors"), as settlors, and [          ], as trustee of the Trust referred to herein (in such capacity, the "Plan Administrator").  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession dated December 10, 2007, as modified on January 25, 2008 and June 16, 2009 and as may be amended thereafter (the "Plan").

## Background

WHEREAS, on October 8, 2005 or October 14, 2005, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, on June 29, 2009, the Bankruptcy Court entered its Order Amending and Supplementing (i) Order (A)(I) Approving Modifications to Debtors' First Amended Plan of Reorganization (as Modified) and Related Disclosures and Voting Procedures and (ii) Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of Reorganization and (b) Setting Administrative Expense Claims Bar Date and Alternative Transaction Hearing Date (Docket # 17032) and (ii) the Protective Order Governing Production and Use of Confidential and Highly Confidential Information in Connection with (a) Supplement to Plan Modification Approval Motion and (b) Supplement to GM Arrangement Fourth and Fifth Amendment Approval Motion (Docket No. 16920) (the "Supplemental Modification Procedures Order");

WHEREAS, on July __, 2007, the Bankruptcy Court entered an order (the "Modification Approval Order") confirming the Plan;

WHEREAS, pursuant to and in accordance with the Plan and the Modification Approval Order, Reorganized DPH Holdings is the parent holding company of the reorganized Debtors, the stock of which (the "Share") is to be issued to the Post-Confirmation Reorganized DPH Holdings Share Trust (the "Trust");

WHEREAS, the Debtors hereby grant, assign, transfer, convey and deliver all of their right, title, and interest in and to the Share to the Trust;

WHEREAS, Delphi Corporation, GM Components Holding LLC ("GM Components"), General Motors Corporation ("GM"), Parnassus Holdings II, LLC and the other Sellers and Buyers are parties to a certain Master Disposition Agreement, dated as of June 1, 2009 (the "MDA");

**WHEREAS**, pursuant to the MDA, GM Components will make available funding in amounts which will not exceed an aggregate of $50 million (the "Loan") during a specified period, to be used solely to accomplish the winding up of the Debtors' estates;

**WHEREAS,** the Trust is being created pursuant to this Agreement for the purpose of holding the Share, (the "Trust Asset"), and functioning as the sole shareholder of DPH in accordance with Article 7.9 of the Plan;

**WHEREAS,** pursuant to Article 1.19 of the Plan, "Beneficiaries means the Holders (as defined in the Plan) of Claims (as defined in the Plan) that are to be satisfied under the Plan by post-Effective Date distributions to be made by Reorganized DPH Holdings at the direction of the post-confirmation Trust Plan Administrator;"  and

**WHEREAS, t**he Plan Administrator shall have all powers necessary to implement the provisions of this Agreement and administer the Trust, including, without limitation, the power to:  (i) preserve, maintain and liquidate the Trust Asset; (ii) to supervise and facilitate distributions to be made by DPH pursuant to the Plan; (iii) cause the proceeds, if any, of the Trust Asset to be distributed to the Beneficiaries; (iii) otherwise perform the functions and take the actions provided for or permitted in the Plan, this Agreement or in any other agreement executed pursuant to the Plan.

### Agreement

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained herein, the Debtors and the Plan Administrator agree as follows:

### ARTICLE I
### DECLARATION OF TRUST

1.1     Creation of Trust.  The Debtors and the Plan Administrator, pursuant to the Plan and the Modification Approval Order and in accordance with the applicable provisions of chapter 11 of the Bankruptcy Code, hereby constitute and create the Trust, which shall bear the name "Post-Consummation Reorganized DPH Holdings Share Trust."  In connection with the exercise of the Plan Administrator's power hereunder, the Plan Administrator may use this name or such variation thereof as the Plan Administrator sees fit.

1.2     Purpose of Trust.  The purpose of this Agreement is to implement Article VII of the Plan on behalf, and for the benefit, of the Beneficiaries (as defined in Article 1.19 of the Plan), and to serve as a mechanism for distributing the Trust Proceeds to or utilizing the Trust Proceeds for the benefit of the Beneficiaries.

1.3     Transfer of Reorganized DPH Holdings Share.

(a)     In partial satisfaction of the Debtors' obligations under the Plan, the DPH hereby transfers as of the Effective Date, for the sole benefit of the Beneficiaries, pursuant to section 1123(a)(5)(B) of the Bankruptcy Code and in accordance with the Plan and the Modification Approval Order, the Reorganized DPH Holdings Share to the Trust, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under section 1141(c) of the Bankruptcy Code.  Nothing in this Agreement is intended to, or shall be construed to, effect a release, extinguishment or compromise of any claim or cause of action transferred to the Trust pursuant to this Agreement.  The Share (also sometimes referred to herein as the "Trust Property"), and all rights and dividends appurtenant held by the Plan Administrator under this Agreement and any earnings, including without limitation interest, on any of the foregoing, are to be held and applied by the Plan Administrator in accordance with the terms hereof for the benefit of the Beneficiaries, and for no other party, subject to the further covenants, conditions and terms hereinafter set forth.

1.4     Distribution of Income Received by the Trust.  The Plan Administrator shall, in an expeditious but orderly manner and subject to the other provisions of the Plan and this Agreement, make timely distributions in accordance with the terms hereof and not unduly prolong the existence of the Trust.  The Plan Administrator shall exercise reasonable business judgment to maximize net recoveries.  Pursuant to an agreed upon budget in accordance Section 4.4 of this Agreement and consistent with Exhibit 3.1.1.F of the MDA, the Plan Administrator may incur any reasonable and necessary expenses in connection with the administration and distribution of Trust Assets.

1.5     Appointment and Acceptance of Plan Administrator.  The Plan Administrator shall be deemed to be appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The Plan Administrator accepts the Trust created by this Agreement and the grant, assignment, transfer, conveyance and delivery to the Plan Administrator, on behalf, and for the benefit, of the Beneficiaries, by DPH of all of their respective right, title and interest in the Share, upon and subject to the terms and conditions set forth herein, in the Plan, and in the Modification Approval Order.

1.6     No Reversion to Debtors.  The Trust Property shall not revert to or be distributed to any of the Debtors unless and until the Beneficiaries deliver a written consent to the Plan Administrator authorizing a transfer of Trust Property to the Debtors.

1.7     Incidents of Ownership.  The Beneficiaries shall be the sole Beneficiaries of the Trust and the Trust Property, and the Plan Administrator shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized herein, in the Plan and in the Modification Approval Order, including, but not limited to, those powers set forth in Section 6.1 hereof.

# ARTICLE II
# BENEFICIARIES

2.1     Conflicting Claims.  If any conflicting claims or demands are made or asserted with respect to a beneficial interest in the Trust (the "Beneficial Interests"), the Plan Administrator shall be entitled, at its sole election, to refuse to comply with any such conflicting claims or demands.  In so refusing, the Plan Administrator may elect to direct that DPH make no payment or distribution with respect to the Beneficial Interest represented by the claims or demands involved, or any part thereof, and the Plan Administrator shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Plan Administrator shall not be or become liable to any party for its refusal to comply with any of such conflicting claims or demands.  The Plan Administrator shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or (b) all differences have been resolved by a written agreement among all of such parties and the Plan Administrator, which agreement shall include a complete release of the Trust, the Plan Administrator and his retained professionals (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this Section 2.1).  Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Plan Administrator shall hold in a segregated interest-bearing account with a domestic bank that appears on the list of Authorized Bank Depositories that is published by the United States Trustee for the Southern District of New York (an "Authorized Depository") any payments or distributions from the Trust to be made with respect to the Beneficial Interest at issue.  Promptly after a Dispute Resolution is reached, the Plan Administrator shall cause, subject to Section 5.2, payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

2.2     Rights of Beneficiaries.  The Beneficiaries shall be entitled to participate in the rights and benefits due to the Beneficiaries hereunder according to the terms of its Beneficial Interest.  The Beneficiaries shall take and hold the same, subject to all the terms and conditions of this Agreement, the Plan and the Modification Approval Order.  The interest of the Beneficiaries is hereby declared and shall be in all respects personal property.  Except as expressly provided hereunder, the Beneficiaries shall have no title to, right to, possession of, management of or control of the Trust, the Trust Property or DPH.

2.3     Interest Beneficial Only.  Ownership of a Beneficial Interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Property, DPH or to any right to call for a partition or division of such assets or to require an accounting, except as specifically provided herein.

2.4     Evidence of Beneficial Interest. Ownership of the Beneficial Interest in the Trust shall not be evidenced by any certificate, security or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Plan Administrator (or any agent appointed by the Plan Administrator for purposes of maintaining a record of the Beneficiaries and their respective Beneficial Interests in the Trust).  The Plan Administrator shall, upon written request of a holder of the

Beneficial Interest, provide reasonably adequate documentary evidence of such Beneficial Interest, as indicated in the books and records of the Trust.  The expense of providing such documentation shall be borne by the requesting Beneficiary.

       2.5    <u>Limited Liability</u>.  No provision of this Agreement, the Plan or the Modification Approval Order, and no mere enumeration herein of the rights or privileges of the Beneficiaries, shall give rise to any liability of the Beneficiaries solely in their capacity as such, whether such liability is asserted by the Debtors, by creditors or employees of the Debtors, or by any other Person.  The Beneficial Interest holders are deemed to receive the Trust Property in accordance with the provisions of this Agreement, the Plan and the Modification Approval Order without further obligation or liability of any kind, but subject to the provisions of this Agreement.

## ARTICLE III
## DURATION AND TERMINATION OF TRUST

       3.1    <u>Duration</u>.  The Trust shall become effective upon the Effective Date and shall remain and continue in full force and effect until terminated as provided herein.  The Trust shall terminate upon the occurrence of the earliest of (a) the full administration and distribution of the Trust Property in accordance with the Plan, the Modification Approval Order and this Agreement and the full performance of all other duties and functions of the Plan Administrator set forth in the Plan, the Modification Approval Order and this Agreement (b) receipt by the Plan Administrator of written notice(s) from the Internal Revenue Service and any other applicable taxing authority that the Trust has no further filing or payment obligations, and (c) the Perpetuities Date.  For purposes of this Agreement, the term "Perpetuities Date" shall mean the longest period of time that a trust can last under the laws of the State of New York, including any period in gross; provided that, if any element of the laws of the State of New York requires or permits that period to be measured, in whole, in part, or in the alternative, by lives in being, then those lives, to the extent employed, shall be such of the issue of the late King George VI of England, as were in being at the date of this Agreement.  Notwithstanding anything to the contrary in this Agreement, in no event shall the Plan Administrator unduly prolong the duration of the Trust, and the Plan Administrator shall, in the exercise of its reasonable business judgment and in the interests of the Beneficiaries, at all times endeavor to (i) administer the Trust Property to maximize net recoveries and (ii) otherwise terminate the Trust as soon as practicable in accordance with this Agreement.

       3.2    <u>Continuance of Trust for Winding Up</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Plan Administrator shall continue to act as such until his duties have been fully performed.  Upon distribution of all the Trust Property, the Plan Administrator shall retain the books, records and files that shall have been delivered to or created by the Plan Administrator.  At the Plan Administrator's discretion, all of such records and documents may be destroyed at any time following the date that is six years after the final distribution of Trust Property (unless such records and documents are necessary to fulfill the Plan Administrator's obligations pursuant to <u>Sections 4.7(a) and 6.1</u> hereof).  Except as otherwise specifically provided herein, upon the final distribution of Trust Property, the Plan Administrator shall be deemed discharged and have no further

duties or obligations hereunder, except to account to the Beneficiaries as provided in Section 4.4 hereof and as may be imposed on the Plan Administrator by virtue of Section 6.1 hereof, and the Trust will be deemed to have been dissolved.

## ARTICLE IV
## ADMINISTRATION OF TRUST

4.1  Payment of Claims, Expenses and Liabilities. Subject to the budget fixed in accordance with Section 4.4 of this Agreement, the Plan Administrator shall expend the Cash of the Trust: (a) to pay reasonable administrative expenses of the Trust that are incurred (including, but not limited to, any taxes imposed on the Trust or fees and expenses in connection with the administration and liquidation of the Trust and preservation of books and records as provided in Section 3.2 hereof); (b) to satisfy other obligations or other liabilities incurred or assumed by the Trust (or to which the Trust Property is otherwise subject) in accordance with the Plan, the Modification Approval Order, the MDA or this Agreement (it being understood that the Trust has not assumed any obligations or liabilities of the Debtors or DPH except as expressly set forth in the Plan or the Modification Approval Order), including fees and costs incurred in connection with the protection, preservation, liquidation and distribution of the Trust Property; and (c) to satisfy any other obligations of the Trust expressly set forth in the Plan.

4.2  Distributions.

(a)  Generally. Post-Effective Date distributions to be made by DPH will be made by the Disbursing Agent pursuant to Article 9.3 of the Plan. Distributions, if any, from the Trust, shall be made by the Plan Administrator.

(b)  Trust Property Available for Distribution. Notwithstanding anything in this Agreement to the contrary, the Plan Administrator shall cause the Trust at all times to retain sufficient funds (the "Expense Reserve") as the Plan Administrator shall determine and subject to the budget fixed in accordance with Section 4.4 of this Agreement, are reasonably necessary for the Trust: (i) to make the payments and satisfy the obligations and liabilities described in Section 4.1; and (ii) to fund any other amounts as required under the Plan and as identified in the Trust budget, and to fund the fees and expenses of the Plan Administrator, the professionals retained by the Plan Administrator (the "Plan Professionals") and the Trust. "Trust Property Available for Distribution" shall be determined by the Plan Administrator in advance of each Distribution Date by subtracting the Expense Reserve from the then available Trust Proceeds.

(c)  Distribution of Trust Proceeds Upon Termination. Promptly following the termination of the Trust, the Plan Administrator shall distribute any amounts not yet distributed from the Trust to DPH or in accordance with the terms of this Agreement, the Plan, the Modification Approval Order and the MDA.

(d)  Priority of Distribution of Trust Proceeds. Any Trust Property Available for Distribution shall be applied, (a) first, to the fees, costs, expenses and

liabilities of the Trust and the Plan Administrator;  (b) second, to distributions, if any, in accordance with the MDA;  and (c) third, any surplus to DPH.

    4.3    <u>Undeliverable Property</u>.

    (a)    If any distribution of Trust Proceeds or other Trust Property to or on behalf of any person is returned to the Plan Administrator or its agent as undeliverable, no further distribution to such persons to whom a distribution was returned shall be made unless and until the Plan Administrator or its agent is notified in writing of the person's then-current address.  For purposes of this Agreement, undeliverable distributions shall include checks sent to the person, respecting distributions to the person, which checks have not been cashed within six months following the date of issuance of such checks.  Undeliverable distributions shall remain in the possession of the Plan Administrator or its agent until the next distribution date that the relevant distribution becomes deliverable in which event it shall be distributed subject to <u>Section 4.3(b)</u> hereof.

    4.4    <u>Reports</u>.

    (a)    The Plan Administrator shall deliver annual reports to DPH, which reports shall specify in reasonable detail:  (i) the status of the Assets assigned to the Trust;  (ii) the fees and expenses of the Trust, the Plan Administrator and the Plan Professionals incurred and/or earned during the most recent calendar quarter;  (iii) the aggregate fees and expenses of the Trust, the Plan Administrator and the Plan Professionals incurred and/or earned since the date of this Agreement;  (iv) the amount of Trust Proceeds received by the Trust during the most recent calendar quarter;  (v) the aggregate amount of Trust Proceeds received by the Trust since the date of this Agreement;  (vi) the calculation of the Trust Property Available for Distribution for the next Annual distribution date, including the amounts of available Trust Proceeds and the Expense Reserve;  (vii) such other information as the DPH may reasonably request from time to time.  The Plan Administrator shall also timely prepare, file and distribute such additional statements, reports and submissions as may be necessary to cause the Trust and the Plan Administrator to be in compliance with applicable law.

    (b)    The Plan Administrator shall prepare and submit to DPH for approval an annual plan and budget at least 30 days prior to the commencement of each fiscal year of the Trust, <u>provided</u>, <u>however</u>, that the first such report shall be submitted no later than 30 days after the Effective Date.  Such annual plan and budget shall set forth in reasonable detail:  (i) the Plan Administrator's anticipated actions to administer and liquidate the Remaining Assets;  and (ii) the anticipated expenses, including professional fees, associated with conducting the affairs of the Trust.  Such annual plan and budget shall be updated and submitted to DPH for review and approval on a quarterly basis, and each such quarterly update shall reflect the differences between the anticipated actions described in the annual report and actual operations of the Trust to date.  All actions by the Plan Administrator must be reasonably consistent with the annual plan and budget, as updated on an annual basis.

4.5     Exchange Act.  If the Trust becomes subject to the registration requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Plan Administrator shall cause the Trust to register pursuant to, and comply with, the applicable reporting requirements of the Exchange Act, and the costs of doing so shall be satisfied by and from the Trust Assets.

4.6     Fiscal Year.  Except for the first and last years of the Trust, the fiscal year of the Trust shall be the calendar year.  For the first and last years of the Trust, the fiscal year of the Trust shall be such portion of the calendar year that the Trust is in existence.

4.7     Books and Records.  (a) The Plan Administrator shall retain and preserve all books, records and files that shall have been delivered to or created by the Plan Administrator until six years after the Trust is terminated.

(b)     The Plan Administrator shall maintain, in respect of the Trust and GM, books and records relating to the assets and the income of the Trust and the payment of expenses of the Trust and the Plan Administrator, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof in accordance with the provisions of this Agreement and applicable provisions of law.  The Plan Administrator shall provide DPH or, at its expense, any Beneficiary with access to such books and records during normal business hours as may be reasonably requested with advance notice.

4.8     Cash Payments.  All distributions required to be made by the Plan Administrator to or on behalf of the holders of beneficial interests shall be made in cash denominated in U.S. dollars by checks drawn on an Authorized Depository selected by the Plan Administrator or, at consistent with written instructions from GM and DPH, as the case may be, by wire transfer from an Authorized Depository selected by the Plan Administrator.  All cash of the Trust shall be maintained in an Authorized Depository.

4.9     Insurance.  The Trust shall maintain customary insurance coverage for the protection of the Plan Administrator and any such other Persons serving as administrators, agents and overseers of the Trust on and after the Effective Date as the Plan Administrator determines to be reasonably appropriate.

## ARTICLE V
## TAX MATTERS

5.1     Tax Reporting.  The "taxable year" of the Trust shall be the "calendar year" as those terms are defined in Section 441 of the IRC.  The Plan Administrator shall file all tax returns required to be filed by the Trust.  The Plan Administrator shall annually (within seventy-five (75) days after the end of each calendar year) send to each of the Beneficiaries a separate statement setting forth its share of the Trust's items of income, gain, loss, deduction, or credit.  Such reporting shall also occur within sixty (60) days of the dissolution of the Trust.  To the extent allocable, the Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Plan relating to Disputed Claims) to the Beneficiaries.

5.2     Tax Withholdings.  The Plan Administrator may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the IRC or any provision of any foreign, state or local tax law with respect to any payment or distribution to the Beneficiaries.  All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to or on behalf of the Beneficiaries for all purposes of this Agreement.  The Plan Administrator shall be authorized to collect such tax information from the Beneficiaries (including, without limitation, social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan, the Modification Approval Order, the Modification Approval Order and this Agreement.  The Plan Administrator may refuse to make a distribution to a Beneficiary if it fails to furnish such information in a timely fashion;  provided, however, that upon the delivery of such information, the Plan Administrator shall make such distribution to which such Beneficiary is entitled, together with any interest and income actually earned thereon.

## ARTICLE VI
## POWERS OF AND LIMITATIONS ON THE PLAN ADMINISTRATOR

6.1     Powers of the Plan Administrator.  The Plan Administrator shall have only such rights, powers and privileges expressly set forth in the Plan and this Agreement and as otherwise provided by applicable law.  Subject to the other provisions herein, the Plan Administrator shall be expressly authorized to undertake the following actions, in the Plan Administrator's good faith judgment, in the best interests of the Beneficiaries and to maximize net recoveries therefor:

(a)     accept and recover funds from DPH (the "Funds");

(b)     execute any documents and take any other actions related to, or in connection with, the recovery of Funds;

(c)     protect and enforce the rights to the Trust Property vested in the Plan Administrator by this Agreement by any method deemed reasonably appropriate, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(d)     make distributions of the Trust Proceeds and other Trust Property to or on behalf of the Beneficiaries in accordance with this Agreement, the Plan and the Modification Approval Order;

(e)     file, if necessary, any and all tax returns with respect to the Trust and pay taxes properly payable by the Trust, if any;

(f)     make all necessary filings in accordance with any applicable law, statute or regulation, including, but not limited to, the Exchange Act;

(g)     determine and satisfy from the Trust Property any and all taxes and ordinary course liabilities, including reasonable professional fees and expenses, created, incurred or assumed by the Trust;

(h)  retain and pay professionals, including his own firm, employees (including former employees of the Debtors), contractors or other agents, including any and all estate professionals, from the Trust Property to carry out its duties and obligations hereunder;

(i)  invest monies received by the Plan Administrator or otherwise held by the Plan Administrator in accordance with Section 6.8 hereof;

(j)  in the event that the Plan Administrator determines that the Beneficiaries or the Trust may, will or have become subject to adverse tax consequences, take such reasonable actions that will, or are intended to, alleviate or mitigate such adverse tax consequences;

(k)  purchase customary insurance coverage in accordance with Section 4.9 hereof;

(l)  perform such functions and take such actions as are provided for or permitted in the Plan, the Modification Approval Order, this Agreement or any other agreement executed pursuant to the Plan;  and

(m)  Direct DPH to make post-Effective Date distributions pursuant to the Plan.

6.2  Limitations on Plan Administrator.  No part of the Trust Property shall be used or disposed of by the Plan Administrator in furtherance of any trade or business. The Plan Administrator shall not become a market-maker for the Beneficial Interests or otherwise attempt to create a secondary market for the Beneficial Interests.  The Plan Administrator shall be restricted to the recovery of the Unused Funds on behalf, and for the benefit, of the Beneficiaries and the distribution and application of Trust Property for the purposes set forth in this Agreement, the Plan, and the Modification Approval Order, and the conservation and protection of the Trust Property and the administration thereof in accordance with the provisions of this Agreement, the Plan, and the Modification Approval Order.

6.3  Agents and Professionals;  Employees.  The Trust may, but shall not be required to, from time to time enter into contracts with, consult with and retain independent contractors, including attorneys, including his own firm, accountants, appraisers, disbursing agents or other parties deemed by the Plan Administrator to have qualifications necessary or desirable to assist in the proper administration of the Trust, including any estate professionals retained during the Bankruptcy Cases as may be appropriate in the circumstances.  The Plan Administrator shall pay the reasonable fees and expenses of such persons out of the Trust Property in the ordinary course of business without the need for approval of the Bankruptcy Court.  The Trust may, but shall not be required to, from time to time, employ such persons in such capacities.  In addition, the Trust may enter into an agreement with the DPH that exist following the Effective Date to utilize the services of one or more employees of the DPH.

6.4  Investment of Trust Monies.  The Plan Administrator shall invest the Trust Proceeds received by the Plan Administrator or otherwise held by the Plan

Administrator in highly-rated short-term investments of which the length of term shall be consistent with the obligations to pay costs, expenses and other obligations and make distributions under Article IV of this Agreement, which investments shall consist of: (a) short-term investments issued or guaranteed by the United States or by a department, agency or instrumentality of the United States; (b) other short-term instruments of the highest credit rating available of two nationally recognized rating agencies; or (c) other short-term investments.

## ARTICLE VII
## CONCERNING THE PLAN ADMINISTRATOR

7.1     Generally.  The Plan Administrator shall exercise such of the rights and powers vested in it by this Agreement, the Plan and the Modification Approval Order, and use the same degree of care and skill in its exercise as a prudent person would exercise or use under the circumstances in the conduct of its own affairs.  No provision of this Agreement, the Plan or the Modification Approval Order shall be construed to relieve the Plan Administrator from liability for his own gross negligence, fraud or reckless, intentional or willful misconduct, except that the Plan Administrator shall not be liable for any action taken in good faith in reliance upon the advice of professionals retained by the Plan Administrator in accordance with this Agreement.

7.2     Reliance by Plan Administrator.  Except as otherwise provided in this Agreement, the Plan or the Modification Approval Order:

(a)     the Plan Administrator may rely and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Plan Administrator to be genuine and to have been signed or presented by the proper party or parties;  and

(b)     persons (including any professionals retained by the Plan Administrator in accordance with this Agreement) engaged in transactions with the Plan Administrator shall look only to the Trust Property to satisfy any liability incurred by the Plan Administrator to such person in carrying out the terms of this Agreement, the Plan or the Modification Approval Order, and the Plan Administrator shall have no personal or individual obligation to satisfy any such liability.

7.3     Liability to Third Persons.  The Beneficiaries shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Trust Property or the affairs of the Plan Administrator.  The Plan Administrator, agents of and professionals retained by the Plan Administrator shall not be subject to any personal liability whatsoever, in tort, contract or otherwise, to any person in connection with the Trust Property or the affairs of the Trust, except for its own gross negligence, fraud or reckless, intentional or willful misconduct, and all such persons shall look solely to the Trust Property for satisfaction of claims of any nature arising in connection with affairs of the Trust.

7.4     Nonliability of Plan Administrator for Acts of Others.  Nothing contained in this Agreement, the Plan or the Modification Approval Order shall be deemed to be an assumption by the Plan Administrator of any of the liabilities, obligations or duties

of the Debtors or DPH, and shall not be deemed to be or contain a covenant or agreement by the Plan Administrator to assume or accept any such liability, obligation or duty.  Any successor Plan Administrator may accept and rely upon any accounting made by or on behalf of any predecessor Plan Administrator hereunder, and any statement or representation made as to the assets comprising the Trust Property or as to any other fact bearing upon the prior administration of the Trust, so long as it has a good faith basis to do so.  The Plan Administrator shall not be liable for having accepted and relied in good faith upon any such accounting, statement or representation if it is later proved to be incomplete, inaccurate or untrue.  The Plan Administrator or successor Plan Administrator shall not be liable for any act or omission of any predecessor Plan Administrator, nor have a duty to enforce any claims against any predecessor Plan Administrator on account of any such act or omission.

> 7.5     Indemnity.  The Plan Administrator and each of his respective agents, employees, officers, directors, professionals, attorneys, accountants, advisors, representatives and principals (collectively, the "Indemnified Parties") shall be indemnified and held harmless by the Trust, to the fullest extent permitted by law, solely from the Trust Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses which the Indemnified Parties may incur or to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Indemnified Parties on account of the acts or omissions of an Indemnified Party in its capacity as such; provided, however, that the Trust shall not be liable to indemnify any Indemnified Party for any act or omission constituting gross negligence, fraud or reckless, intentional or willful misconduct.  Notwithstanding any provision herein to the contrary, the Indemnified Parties shall be entitled to obtain advances from the Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Indemnified Parties receiving such advances shall repay the amounts so advanced to the Trust upon the entry of a final order finding that such Indemnified Parties were not entitled to any indemnity under the provisions of this Section 7.5.  The foregoing indemnity in respect of any Indemnified Party shall survive the termination of such Indemnified Party from the capacity for which they are indemnified.

> 7.6     Insurance.  See Section 4.9 above.

> 7.7     Compensation and Expenses.  The Plan Administrator shall receive fair and reasonable compensation for its services in accordance with the compensation schedule attached hereto as Annex B.  The Plan Administrator shall be entitled to reimburse itself and the Plan Professionals from the Trust Property on a monthly basis for all reasonable out-of-pocket expenses actually incurred by it in the performance of its duties in accordance with this Agreement, and, when due, professional fees in accordance with the terms of such professionals' retention.

> 7.8     Principal.  [          ] agrees that [      ], a member of such firm, shall lead its engagement as Plan Administrator under this Agreement so long as he remains as an employee with the firm, and that he shall dedicate such time as is necessary to

properly carry out the duties of Plan Administrator hereunder.  [     ] shall promptly notify DPH of any change in [    ]'s role or any termination of his relationship with the firm.

## ARTICLE VIII
## SUCCESSOR PLAN ADMINISTRATORS

8.1     Generally.  If the Plan Administrator shall ever change its name or reorganize, reincorporate or merge with or into or consolidate with any other entity, such Plan Administrator shall be deemed to be a continuing entity and shall continue to act as a Plan Administrator hereunder with the same liabilities, duties, powers, rights, titles, discretions and privileges as are herein specified for a Plan Administrator.

8.2     Resignation.  The Plan Administrator may resign from the Trust by giving at least 30 days' prior written notice thereof to DPH.  Such resignation shall become effective on the later to occur of (a) the date specified in such written notice or (b) the effective date of the appointment of a successor Plan Administrator in accordance with Section 8.5 hereof and such successor Plan Administrator's acceptance of such appointment in accordance with Section 8.6 hereof.

8.3     Removal.  The Plan Administrator may be removed for cause by a final order of the Bankruptcy Court.

8.4     Effect of Resignation or Removal.  The resignation, removal, incompetency, bankruptcy or insolvency of the Plan Administrator shall not operate to terminate the Trust or to revoke any existing agency created pursuant to the terms of this Agreement, the Plan or the Modification Approval Order or invalidate any action theretofore taken by the Plan Administrator.  All fees and expenses incurred by the Plan Administrator prior to the resignation, incompetency or removal of the Plan Administrator shall be paid from the Trust Property, unless such fees and expenses are disputed by (a) the DPH or (b) the successor Plan Administrator, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Plan Administrator that are subsequently allowed by the Bankruptcy Court shall be paid from the Trust Property.  In the event of the resignation or removal of the Plan Administrator, such Plan Administrator shall:  (i) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Plan Administrator or directed by the Bankruptcy Court to effect the termination of such Plan Administrator's capacity under this Agreement; (ii) promptly deliver to the successor Plan Administrator all documents, instruments, records and other writings related to the Trust as may be in the possession of such Plan Administrator;  provided that such Plan Administrator may retain one copy of each of such documents for its purposes;  and (iii) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Plan Administrator.

8.5     Appointment of Successor.  In the event of the resignation, removal, incompetency, bankruptcy or insolvency of the Plan Administrator, a vacancy shall be deemed to exist and a successor shall be appointed by a majority vote of the Board of Directors of DPH.  In the event that a successor Plan Administrator is not appointed

within 30 days after the date of such vacancy, the Bankruptcy Court, upon its own motion or the motion of a Beneficiary shall appoint a successor Plan Administrator.

        8.6     Acceptance of Appointment by Successor Plan Administrator.  Any successor Plan Administrator appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and, in case of the Plan Administrator's resignation, to the resigning Plan Administrator.  Thereupon, such successor Plan Administrator shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor in the Trust with like effect as if originally named Plan Administrator and shall be deemed appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.  The resigning or removed Plan Administrator shall duly assign, transfer and deliver to such successor Plan Administrator all property and money held by such retiring Plan Administrator hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Plan Administrator, execute and deliver an instrument or instruments conveying and transferring to such successor Plan Administrator upon the Trust herein expressed, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Plan Administrator.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

        9.1     Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York (without reference to conflicts of law).

        9.2     Jurisdiction.  Subject to the proviso below, the parties agree that the Bankruptcy Court shall have exclusive jurisdiction over the Trust and the Plan Administrator, including, without limitation, the administration and activities of the Trust and the Plan Administrator; provided, however, that notwithstanding the foregoing, the Plan Administrator shall have power and authority to bring any action in any court of competent jurisdiction to prosecute any claims or Causes of Action assigned to the Trust.

        9.3     Severability.  In the event any provision of this Agreement or the application thereof to any person or circumstances shall be determined by Final Order to be invalid or unenforceable to any extent, the remainder of this Agreement or the application of such provision to persons or circumstances or in jurisdictions other than those as to or in which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

        9.4     Notices.  Any notice or other communication required or permitted to be made under this Agreement shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered personally or by telex, facsimile or other telegraphic means, sent by nationally recognized overnight delivery service or mailed by first-class mail:

                (i)     if to the Plan Administrator, to:

    (ii) if to the Debtors, to:

    Delphi Corporation
    5727 Delphi Drive
    Troy, Michigan 48098
    Attention:  David Sherbin, Esq., General Counsel
    Fax: 248-813-2491

    With a copy to:

    Skadden, Arps, Slate, Meagher & Flom LLP
    155 North Wacker Drive, Suite 3200
    Chicago, Illinois 60606
    Attention:  John Wm. Butler, Jr., Esq. and
       Ron E. Meisler, Esq.
    Fax: 312-407-8501
     -and-
    Skadden, Arps, Slate, Meagher & Flom LLP
    4 Times Square
    New York, New York 10036
    Attention: Eric Cochran, Esq. and
    Marie Gibson, Esq.
    Fax: 212-735-2000

  9.5 Headings.  The headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

  9.6 Plan.  The terms of this Agreement are intended to supplement the terms provided by the Plan and the Modification Approval Order.  To the extent that the terms of this Agreement are inconsistent with the terms set forth in the Plan, then the terms of the Plan shall govern.

  9.7 Cooperation.  The Debtors shall turn over or otherwise make available to the Plan Administrator at no cost to the Trust or the Plan Administrator, all books and records reasonably required by the Plan Administrator to carry out its duties hereunder, and agree to otherwise reasonably cooperate with the Plan Administrator in carrying out its duties hereunder.

  9.8 Entire Agreement.  This Agreement and the Annexes attached hereto contain the entire agreement between the parties and supersede all prior and contemporaneous agreements or understandings between the parties with respect to the subject matter hereof.

  9.9 Amendment.  This Agreement may be amended by order of the Bankruptcy Court.

9.10    Meanings of Other Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, words importing the singular number shall include the plural number and vice versa and words importing persons shall include firms, associations, corporations and other entities.  All references herein to Articles, Sections and other subdivisions, unless referring specifically to the Plan or provisions of the Bankruptcy Code, the Bankruptcy Rules, or other law, statute or regulation, refer to the corresponding Articles, Sections and other subdivisions of this Agreement, and the words herein and words of similar import refer to this Agreement as a whole and not to any particular Article, Section or subdivision of this Agreement.  The term "including" shall mean "including, without limitation."

9.11    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but such counterparts shall together constitute but one and the same instrument.  A facsimile signature of any party shall be considered to have the same binding legal effect as an original signature.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers, representatives or agents, effective as of the date first above written.

| **DELPHI CORPORATION AND THE AFFILIATE DEBTORS** | **REORGANIZED DPH HOLDINGS** |
|---|---|
| By: _____<br>John D. Sheehan<br>Vice President, Chief Financial Officer | By: _____<br>Name:<br>Title: |
| | **[_____], as Plan Administrator** |
| | By:_____<br>Name:<br>Title: |

## Annex A
### Plan Administrator's Compensation

Fees in connection with the Plan Administrator's engagement will be based upon the time incurred providing its services under this Agreement, multiplied by the Plan Administrator's standard hourly rates, summarized as follows:



|  | Per Hour |
|---|---|
| [_____] | [   ] |
| [_____] | [   ] |

The Plan Administrator's hourly rates are generally revised periodically. The Plan Administrator is not providing any assurance regarding the outcome of its work and its fees will not be contingent on the results of such work.

In addition to the fees outlined above, the Plan Administrator will charge for reasonable expenses that are incurred on the Trust's behalf during its services as Plan Administrator, including, but not limited to, counsel fees, airfare, meals, hotel accommodations, telephone, industry research, duplicating and printing, etc. Further, if the Plan Administrator and/or any of its employees are required to testify or provide evidence at or in connection with any judicial or administrative proceeding relating to its services as Plan Administrator, the Plan Administrator will be compensated by the Trust at its regular hourly rates and reimbursed for reasonable out of pocket expenses (including counsel fees) with respect thereto. Invoices for fees and expenses incurred in connection with services as Plan Administrator will be billed monthly.

The Plan Administrator shall not be required to seek or obtain approval of its compensation by the Bankruptcy Court, but will be due upon receipt, subject to review by DPH.