# Exhibit B

# Exhibit B

**EXECUTION VERSION**

# GM COMPONENTS HOLDINGS, LLC

July 2, 2009

Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098

Attention:   Executive Director of Restructuring

Ladies and Gentlemen:

    Re:   Funding of up to $50,000,000 of Wind Up Costs

    Reference is hereby made to the Master Disposition Agreement, dated as of June 1, 2009 (as amended, supplemented or otherwise modified from time to time in accordance with its terms, the "MDA"), among Delphi Corporation, a Delaware corporation ("Delphi"), GM Components Holdings, LLC ("GMCH"), General Motors Corporation ("GM"), Parnassus Holdings II, LLC ("Parnassus") and the other sellers and buyers party thereto.

    This letter agreement sets forth the agreement between Delphi, Parnassus, GMCH and GM with respect to the funding of certain wind up costs relating to Delphi, on the terms and conditions more fully set forth herein. If, pursuant to the MDA, (i) a Plan of Reorganization is consummated, GMCH has agreed, pursuant to Section 3.1.1.F of the MDA, to fund wind up costs to Reorganized DPH Holdings (as defined below), and (ii) a 363 Sale is consummated, GMCH has agreed, pursuant to Section 9.45 of the First Amendment to the MDA, dated July 2, 2009, by and among the parties to the MDA, to fund wind up costs to Parnassus or the entity designated by Parnassus to conduct the Wind Up of Delphi (such entity, or Reorganized DPH Holdings, as the case may be, the "Company").   On the Closing Date, the Company shall execute and deliver a signature page to this agreement, acknowledging and agreeing to be bound by the terms hereof.

1.    Defined Terms.  Capitalized terms that are not otherwise defined herein shall have the meaning set forth in the MDA.

    "Advance" means the Closing Date Advance and each Post Closing Advance.

    "Available Funds" shall mean, on any date of determination, all unrestricted cash and cash equivalents of the Company and its Subsidiaries (as reflected on a consolidated balance sheet of the Company and its Subsidiaries) on such date.

    "Availability" shall mean, on any date of determination, (i) the amount projected on such date by the Company in the most recently delivered Wind Up Budget to be the net use of cash by the Company to pay costs and expenses associated with the Wind Up of the Company's operations for the one month period commencing on such date *minus* (ii) the Available Funds as of the close of business on the Business Day immediately preceding the date of such determination *plus* (iii) $1,000,000.

    "Closing Date Commitment" means the commitment of GMCH to fund, on the Closing Date, an aggregate amount equal to $10,000,000.

"Commitment" means, collectively, the Closing Date Commitment and the Post Closing Commitment of GMCH.

"Post Closing Commitment" means the commitment of GMCH to fund, after the Closing Date and on or before December 31, 2013, Post Closing Advances up to an aggregate sum of (i) $40,000,000 *plus* (ii) any additional amount to which GMCH and the Company agree pursuant to the last paragraph of Section 2.1.5 of the MDA, if applicable.

"Reorganized DPH Holdings" means the entity to succeed Delphi Corporation as set forth and pursuant to that certain First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession dated December 10, 2007, as modified on January 25, 2008 and June 16, 2009.

"Subsidiaries" means (i) with respect to Reorganized DPH Holdings, the subsidiaries of Reorganized DPH Holdings that were debtors and debtors-in-possession in Delphi's cases under chapter 11 of the Bankruptcy Code and (ii) with respect to Parnassus or the entity designated by Parnassus to conduct the Wind Up, the subsidiaries of Parnassus or such entity directly responsible for the Wind Up.

"Wind Up" means the liquidation and wind-down of the estates of the Company and its Subsidiaries, and any other property and businesses that are to be wound-down in accordance with the terms of the MDA.

"Wind Up Budget" means a budget, based on the budget attached to Exhibit 3.1.1.F of the MDA, in form reasonably satisfactory to GMCH, setting forth in reasonable detail the anticipated receipts and disbursements of the Company and its Subsidiaries on a monthly basis from the Closing Date through and including December 31, 2013 and indicating the net use of cash by the Company to pay costs and expenses associated with the Wind Up.

2.  Commitment.  GMCH agrees, upon the terms and subject to the conditions set forth herein:

    (a)     on the Closing Date, (i) GMCH shall advance to the Company funds in an aggregate amount equal to the Closing Date Commitment (the "Closing Date Advance") or (ii) at the Company's request, GMCH may, in its discretion, advance all or a portion of such Closing Date Advance to such person or persons to whom the Company directs;

    (b)     during the period commencing on the date after the Closing Date and ending on December 31, 2013, GMCH shall advance to the Company, upon request by the Company in accordance with the procedures set forth in Section 3 below, funds in an aggregate amount not to exceed the Post Closing Commitment (each such advance, a "Post Closing Advance"), which amounts may be repaid and re-advanced in accordance with the terms of this letter agreement; *provided* that (a) the amount of any Post Closing Advance shall not exceed the least of (i) the unused portion of the Post Closing Commitment, (ii) without giving effect to such Post Closing Advance, Availability as of the date of the applicable Advance Request in respect of such Post Closing Advance and (iii) the aggregate amount requested by the Company in the applicable Advance Request in accordance with Section 3 and (b) the aggregate amount of all Advances shall not exceed the Commitment; and

    (c)     no interest shall accrue or otherwise be payable in respect of any Advances.

3.  Requests for Post Closing Advances.  Post Closing Advances shall only be available to the Company on the last day of each calendar month (or, if such day is not a Business Day, on the immediately succeeding Business Day) (such day the "Monthly Advance Date"); *provided* that

the Company may request one additional Post Closing Advance per calendar month as long as such additional request is accompanied by the Wind Up Budget updated through the date of such additional request. To request a Post Closing Advance, the Company shall deliver a request for an Advance (an "Advance Request") to GMCH no later than 11:00 a.m., New York City time on the date that is two (2) Business Days before the date of such Post Closing Advance. Any such Advance Request shall be delivered in accordance with the notice provisions set forth in Section 6 (*provided* that, notwithstanding anything in Section 6 to the contrary, Advance Requests may be delivered in .pdf or similar format by electronic mail) and shall be in a form reasonably acceptable to GMCH and signed by an authorized officer of the Company who has knowledge of the Company's financial condition, and shall contain the following information:

(a) the aggregate amount of the requested Post Closing Advance, which in each case shall be in an aggregate amount that is in an integral multiple of $1,000,000 and not less than $1,000,000;

(b) the date of such Post Closing Advance, which shall be the applicable Monthly Advance Date on or after the Closing Date and on or before December 31, 2013 (or such other date as set forth in this Section 3); and

(c) certifying the amount of the Available Funds as of the close of business on the Business Day immediately preceding the date of such certificate and the Availability as of such date and, in each case, reflecting the calculation thereof (based on monthly cash projections consistent with past practice).

4. Funding of Advances. Upon satisfaction or waiver of the conditions precedent set forth in this Section 4, GMCH shall make the proceeds of the Closing Date Advance and the Post Closing Advances available to the Company (or at the Company's request, GMCH may, in its discretion make the proceeds of any Advance available to such person or persons to whom the Company directs all or a portion of such funds) on the relevant date by wire transfer of immediately available funds by 6:00 p.m., New York City time, to the account of the Company most recently designated by it for such purpose by written notice to GMCH or, as applicable, to such other account or accounts as directed by the Company (but only if agreed by GMCH):

(a) Signature Page. The Company shall have executed and delivered a signature page to this agreement, acknowledging and agreeing to be bound by the terms hereof.

(b) Advance Request. GMCH shall have received an Advance Request with respect to such Post Closing Advance as required by Section 3, together with the most recent version of the Wind Up Budget.

(c) Compliance with Agreement. Unless otherwise cured or waived by GMCH, the Company shall be in compliance with the provisions of this letter agreement, including, without limitation, Sections 5, 6 and 7 below.

5. Information; Wind Up Budget. The Company agrees that it will keep GMCH and GM reasonably apprised of all material developments in the course of the Wind Up, and that it will promptly comply with any reasonable requests by GMCH or GM for information relating thereto. The Company agrees, and agrees to cause each of its Subsidiaries to, (i) keep proper books of record and accounts in which true and correct entries in conformity in all material respects with generally accepted accounting principals shall be made of all dealings and transactions in relation to its business and activities and (ii) permit any authorized representatives designated by GMCH

to visit and inspect any of the properties of the Company and any of its respective Subsidiaries, to inspect, copy and take extracts from its and their financial and accounting records, and to discuss its and their affairs, finances and accounts with its and their officers and independent public accountants, all upon reasonable notice and at such reasonable times during normal business hours and as often as may reasonably be requested and at the Company's expense.  The Company agrees that it will provide to GMCH, on each date that it would deliver the Advance Request for a Post Closing Advance to be made on each Monthly Advance Date, regardless of whether an Advance Request is then delivered, an updated Wind Up Budget.

6.      Use of Proceeds. The Company agrees that it shall only use the proceeds of the Advances hereunder for costs and expenses in connection with the Wind Up and consistent with the most recently delivered Wind Up Budget and such other costs related directly or indirectly to the Wind Up (*provided* that such costs shall be reflected in the next Wind Up Budget delivered to GMCH).

7.      Repayment of Advances.

(a)     GMCH shall maintain in accordance with customary practice an account or accounts evidencing the amounts of the Advances to the Company.  The entries made in such accounts shall be *prima facie* evidence of the existence and amounts of the Advances recorded therein; *provided* that the failure of GMCH to maintain such accounts or any error therein shall not in any manner affect the obligation of the Company to repay the Advances in accordance herewith.

(b)     On and after January 1, 2013, the Company shall reimburse GMCH on each Monthly Advance Date, any proceeds of the Advances that have not been, and are not projected to be, used (as set forth in the most recent Wind Up Budget) prior to the next Monthly Advance Date. Any Advances reimbursed by the Company may be re-advanced to the Company in accordance with Section 2 hereof.

(c)     On the date that the Wind Up is completed and all expenses related thereto have been paid or otherwise satisfied, the Company shall, and shall ensure that its Subsidiaries shall, promptly remit to GMCH all remaining cash held by the Company and its Subsidiaries in reimbursement of the Advances; *provided* that in no event shall the amount of such cash reimbursement exceed the aggregate amount of all Advances provided by GMCH to the Company hereunder.

8.      Notices.

(a)     Subject to paragraph (b) below, all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by telecopy, as follows:

(b)     if to the Company, to it at the address provided to GMCH on or before the Closing Date; and

(c)     if to GMCH, to it at care of General Motors Corporation, 767 Fifth Avenue, 14th floor, New York, New York 10153, Attention: Treasurer, with a copy to General Motors Corporation, 767 Fifth Avenue, 14th floor, New York, New York 10153, Attention: Director, Business Development.

(d)     GMCH or the Company may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it; *provided* that approval of such procedures may be limited to particular notices or communications. Any party hereto may change its address or telecopy number for notices and other communications hereunder by notice to the other parties hereto. All notices and other communications given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been given on the date of receipt

Notwithstanding anything herein to the contrary, if the 363 Sale is consummated, GMCH and Parnassus agree to consider in good faith revisions to the terms of this letter agreement to reflect tax efficiencies and structural considerations of both Parnassus and GMCH.

This letter agreement shall automatically terminate without further action of, or notice to, any of the parties hereto upon the termination of the MDA.

This letter agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that (i) the Company may only assign its rights and obligations with GMCH's written consent; *provided* that the Company may assign its rights and obligations hereunder, upon notice to GMCH and without the consent of GMCH, to any affiliate of the Company or entity or trust responsible for the Wind Up or to any entity to which the Company and/or the Sellers sell or transfer all or substantially all of the assets or liabilities to be liquidated or wound-down, and (ii) GMCH may only assign its rights or obligations hereunder to (a) any affiliate of GMCH or GM and any successor to GMCH or GM without the Company's consent, and (b) to any other party with the Company's consent, which shall not be unreasonably withheld.

This letter agreement shall be governed by, and construed in accordance with, the law of the State of New York, without regard to any conflict of law provision that could require the application of the law of any other jurisdiction.  By its execution and delivery of this letter agreement, each party hereby irrevocably and unconditionally agrees that the bankruptcy court shall retain exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this letter agreement; *provided*, *however*, that after the second (2nd) anniversary of the date of the MDA, the Bankruptcy Court and the Supreme Court of New York, New York County and the United States District Court for the Southern District of New York (the "New York Courts") shall have non-exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of this letter agreement; and, *provided*, *further*, that the jurisdiction of the Bankruptcy Court over all matters related to this letter agreement shall terminate upon the fourth (4th) anniversary of the date of the MDA and the New York Courts shall have exclusive jurisdiction after the fourth (4th) anniversary of the date of the MDA.  To the extent that the Bankruptcy Court no longer has jurisdiction on or before the fourth (4th) anniversary of the date of the MDA, the New York Courts shall have exclusive jurisdiction over all matters related to this letter agreement.  Each party further agrees to waive any objection based on *forum non conveniens*.

This letter agreement may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement. Delivery of an executed signature page of this letter agreement by facsimile transmission or electronic ".pdf" file shall be effective as delivery of a manually executed counterpart hereof.

[Remainder of Page Intentionally Blank]

If the foregoing is in accordance with your understanding, please sign and return this letter agreement to us.

                            **GM COMPONENTS HOLDINGS, LLC**

By: _____

      Name:    Niharika Ramdev
      Title:     Vice-President

[Signature Page to Delphi Wind Down Funding Letter Agreement]

Accepted and agreed this 2nd day of June, 2009.

**DELPHI CORPORATION**

By: _____
Name: John D. Sheehan
Title: Vice President and Chief Financial
Officer

[Signature Page to Delphi Wind Down Funding Letter Agreement]

Accepted and agreed this 2nd day of July, 2009.

**PARNASSUS HOLDINGS II, LLC**

By: _____
Name: Johnny Lopez
Title: Vice President

[Signature Page to Delphi Wind Down Funding Letter Agreement]