**Hearing Date And Time: July 23, 2009 at 10:00 a.m.**
**Objection Deadline: July 16, 2009 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER, SOLELY AS TO CREDITORS' COMMITTEE, EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE AND SOLICIT
ACCEPTANCES OF REORGANIZATION PLAN UNDER 11 U.S.C. § 1121(d)

("§ 1121(d) CREDITORS' COMMITTEE EXCLUSIVITY EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 1121(d) further extending, solely as between the Debtors and the Creditors' Committee (as defined below), the Debtors' exclusive periods within which to file and solicit acceptances of a plan of reorganization, and respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as then amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession under Bankruptcy Code sections 1107(a) and 1108.  This Court has ordered joint administration of these cases.

2.    No trustee or examiner has been appointed in these cases.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On April 28, 2006, the U.S. Trustee appointed an official committee of equity holders, which was disbanded on April 24, 2009.  On February 26, 2009, the U.S. Trustee appointed an official committee of retired employees to represent certain of the Debtors' current active salaried employees, retirees, and their spouses for certain limited purposes.

3.    On December 10, 2007, the Debtors filed the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And

2

Debtors-In-Possession (Docket No. 11386) (the "Plan") and the First Amended Disclosure

Statement with respect to the Plan (Docket No. 11388) (the "December 10 Disclosure

Statement").  The Court subsequently entered an order approving the adequacy of the

December 10 Disclosure Statement and granting the related solicitation procedures motion

(Docket No. 11389).  On January 25, 2008, the Court entered an order confirming the Plan

(as modified) (Docket No. 12359) (the "Confirmation Order"), and the order became final

on February 4, 2008.  Although the Debtors on April 4, 2008 had satisfied the conditions

required to substantially consummate the Plan, as confirmed by this Court (the "Confirmed

Plan"), including obtaining $6.1 billion of exit financing, Delphi's Plan Investors (as

defined in the Confirmed Plan) refused to participate in a closing that was commenced but

not completed and refused to fund their Investment Agreement (as defined in the

Confirmed Plan) with Delphi.[1]  On May 16, 2008, Delphi filed complaints for damages

and specific performance against the Plan Investors and related parties who refused to

honor their equity financing commitments or participate in the closing that would have led

to Delphi's successful emergence from chapter 11.  Since that time, however, the Debtors

nevertheless have continued to work with their stakeholders to achieve their goal of

emerging from chapter 11 as soon as practicable.

    4.    On October 3, 2008, Delphi filed a motion (Docket No. 14310) (the

"Plan Modification Motion") under 11 U.S.C. § 1127 for an order approving (i) certain

---

[1]    Although two parties-in-interest (the Creditors' Committee and Wilmington Trust Company, as indenture
trustee) commenced actions to revoke the Confirmation Order, those adversary proceedings have been
stayed indefinitely by stipulated orders between those parties and the Debtors.  In addition, at the
confirmation hearing the Court reserved for itself the remedy of vacating the Confirmation Order (see
Hr'g Tr., 45, 67-68, Jan. 17, 2008), which is a power available to the Court to address a result that is
either fundamentally unfair or is the product of an abuse of process.

3

modifications to the Confirmed Plan and December 10 Disclosure Statement and

(ii) related procedures for re-soliciting votes on the Confirmed Plan, as modified.  In light

of the unprecedented decline in global automotive production volumes and the deepening

of the crisis in global debt and equity markets, the Debtors adjourned the hearing on the

Plan Modification Motion several times.  On June 1, 2009 the Debtors filed a supplement

to the Plan Modification Motion, supplementing the relief sought in that motion (the

"Motion Supplement").  Among other things, the Motion Supplement sought approval of

(i) certain modifications to the Confirmed Plan (the "Modified Plan"), (ii) a supplement to

the Disclosure Statement (the "Disclosure Statement Supplement"), and (iii) procedures for

re-soliciting votes on the Modified Plan.  The Motion Supplement was approved with

modifications by order entered June 16, 2009 (the "Modification Procedures Order") and

was supplemented and amended, with respect to procedures through which proposals for

alternative transactions to the Master Disposition Agreement (defined below) would be

evaluated and administered, by order entered June 29, 2009[2] (the "Supplemental

Modification Procedures Order").  Pursuant to the Modification Procedures Order, the

Debtors are currently soliciting votes on the Modified Plan.

       5.      On April 30, 2008, the Debtors obtained an extension, subject to

certain exceptions described below, of their exclusive right under section 1121 of the

---

[2]    <u>See</u> Order Amending and Supplementing (i) Order (A)(I) Approving Modifications to Debtors' First
Amended Plan of Reorganization (As Modified) and Related Disclosures and Voting Procedures and (II)
Setting Final Hearing Date to Consider Modifications to Confirmed First Amended Plan of
Reorganization and (B) Setting Administrative Expenses Claims Bar Date and Alternative Transaction
Hearing Date (Docket No. 17032) and (ii) the Protective Order Governing Production and Use of
Confidential and Highly Confidential Information in Connection with (A) Supplement to Plan
Modification Approval Motion and (B) Supplement to GM Arrangement Fourth and Fifth Amendment
Approval Motion (Docket No. 16920), dated June 29, 2009 (Docket No. 17376).

Bankruptcy Code to file one or more reorganization plans until 30 days after substantial

consummation of the Confirmed Plan or any modified plan and the exclusive right to

solicit and obtain acceptances for those plans until 90 days after substantial consummation

of the Confirmed Plan or any modified plan.[3]  The Debtors' exclusive right to file a plan,

solely as between the Debtors and the Creditors' Committee (the "Plan Proposal Period"),

has been extended through and including July 31, 2009, and the right to solicit a plan,

solely as between the Debtors and the Creditors' Committee (the "Solicitation Period," and,

together with the Plan Proposal Period, the "Exclusive Periods"), has been extended

through and including September 30, 2009.[4]

       6.     This Court has jurisdiction over this motion pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is

a core proceeding under 28 U.S.C. § 157(b)(2).

       7.     The statutory predicate for the relief requested herein, solely as

between the Debtors and the Creditors' Committee, is section 1121(d) of the Bankruptcy

Code, as amended and in effect on October 8, 2005.

B.     Plan Confirmation And Postconfirmation Matters

       8.     The Confirmed Plan is based upon a series of global settlements and

compromises that involve nearly every major constituency in the Debtors' reorganization

cases, including Delphi's labor unions and GM.  The effectiveness of certain of these

---

[3]   See Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Reorganization Plan, dated April 30, 2008 (Docket No. 13483).

[4]   See Order, Solely As To Creditors' Committee, Extending Debtors' Exclusive Periods With Which To File And Solicit Acceptances Of Reorganization Plan Under 11 U.S.C. § 1121(d), dated May 21, 2009 (the " Postconfirmation Exclusivity Order").

agreements, including the Debtors' two comprehensive agreements with GM (the "Original GSA" and the "Original MRA"), was conditioned on consummation of the Confirmed Plan. After the Plan Investors refused to fund their obligations under the Investment Agreement, as the Debtors continued working with their stakeholders to evaluate their options to emerge from chapter 11, the Debtors sought approval of two comprehensive agreements with GM: the Amended and Restated Global Settlement Agreement (the "Amended GSA") and the Amended and Restated Master Restructuring Agreement (the "Amended MRA"). On September 26, 2008, this Court entered an order authorizing the Debtors' implementation of the Amended GSA and the Amended MRA, the provisions of which became effective on September 29, 2008.

9.    Through the Amended GSA and Amended MRA, the Debtors addressed, at least in part, two goals of their transformation plan: (i) obtaining financial support from GM for certain of Delphi's legacy and labor costs and GM's business commitments to Delphi going forward and (ii) working to solve Delphi's pension funding situation. Under the Amended GSA and Amended MRA, GM agreed to contribute substantial additional value to the Debtors and eliminate significant elements of conditionality to the performance of GM's obligations. Delphi estimated the value of the net consideration received under the Amended GSA and Amended MRA to be approximately $10.6 billion (increased from approximately $6.0 billion under the Original GSA and Original MRA).

10.    As a result of all the factors described above, during the fall of 2008 the Debtors were able to formulate certain modifications to the Confirmed Plan which

6

were set forth in the Plan Modification Motion.  Since the filing of the proposed

modifications, however, substantial uncertainty and a significant decline in capacity in the

credit markets, the global economic downturn generally, and the current economic climate

in the automotive industry adversely impacted Delphi's ability to develop a revised

recapitalization plan and successfully consummate a confirmed plan of reorganization.

Moreover, as a result of the market turbulence, the Debtors were unable to extend the

maturity date of their DIP credit facility on terms reasonably acceptable to the Debtors and

their other stakeholders.  Accordingly, with the support of the agent and the requisite

lenders to the DIP credit facility, the Debtors entered into an accommodation agreement

(as subsequently amended) which allows the Debtors, among other things, to continue

using certain of the proceeds of the postpetition financing facility through July 7, 2009.  In

addition, to further support the Debtors' liquidity, GM agreed to make certain advances and

to accelerate payment of certain payables to the Debtors, including entry into an amended

and restated agreement as of June 1, 2009, to provide the Debtors up to $250 million of

additional pre-emergence liquidity to support Delphi's transformation plan and its

reorganization plan.[5]

      11.    Also on June 1, 2009, while facing the most difficult economic

period in decades with the most precipitous drop in U.S. vehicle sale volumes in half a

century, Delphi reached an agreement to effect its emergence from chapter 11 through a

---

[5]    GM sought chapter 11 protection on June 1, 2009.  Concurrently with its filing for chapter 11 protection, GM filed a motion seeking Bankruptcy Court approval to continue to provide financing to certain of its suppliers, including by lending funds directly to suppliers such as Delphi in the manner as set forth in the GM Arrangement.  The Bankruptcy Court granted GM both interim and final approval of this motion and expressly provided that without further Court order, GM could continue payments and accommodations to financially or operationally distressed suppliers whether relating to the period prior to or following the commencement of GM's cases.

transaction with Parnassus Holdings II, LLC ("Parnassus"), an affiliate of Platinum Equity, and with the support of GM Components Holdings LLC ("GM Components"), an affiliate of GM.  In the exercise of the Debtors' fiduciary responsibilities to maximize the value of their estates for the benefit of all of their stakeholders, the Debtors executed an agreement (the "Master Disposition Agreement") to reflect the foregoing transactions through a plan of reorganization.  The agreement and the changes to the Confirmed Plan were filed as part of the Motion Supplement, on June 1, 2009.

12.     On June 16, 2009, the Bankruptcy Court entered the Modification Procedures Order which, among other things, authorized the Debtors to commence solicitation of votes on the Modified Plan.  Under the Modified Plan, instead of having a plan investor sponsoring their plan and emerging as the majority owner of the continuing business enterprise, however, Delphi has agreed to contemporaneously effectuate transactions through which Parnassus will operate Delphi's U.S. and non-U.S. businesses going forward with emergence capital and capital commitments of approximately $3.6 billion and without the labor-related legacy costs associated with the North American sites that, together with Delphi's global Steering business, are being acquired by GM Components Holding LLC.  A new company, DPH Holdings Co., will emerge as a reorganized entity that retains certain other residual non-core and non-strategic assets and liabilities that are expected to be divested over time.

13.     If the Debtors are unable to obtain confirmation of the Modified Plan, the Debtors have committed to seeking approval of the transactions set forth in the Master Disposition Agreement pursuant to a sale under section 363 of the Bankruptcy

Code independent of and not pursuant to, or contingent on, any plan of reorganization.  On

July 2, 2009, the Debtors filed an agreement (Docket No. 17558) to implement a sale

transaction under section 363 of the Bankruptcy Code as required by the Master

Disposition Agreement.  The Modification Procedures Order also established July 23, 2009

as an alternative sale hearing date, to be used, only if necessary, to consider the sale of

substantially all the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

14.    Consummation of these transactions through the Modified Plan,

which embodies concessions made by parties-in-interest to resolve these chapter 11 cases,

will provide for the satisfaction of all of the Debtors' administrative claims, secured claims,

and priority claims and a potential distribution to holders of general unsecured claims.

Moreover, Delphi's emerging businesses will continue to develop technology and products

and produce them for the benefit of their customers either under the guidance of Platinum

Equity, which has experience providing operational support to companies to help them

create long-term value, or in conjunction with an alternative transaction, if any.  In the

meantime, Delphi will marshal all of its resources to continue to deliver high-quality

products to its customers globally.  Additionally, the Company will seek to preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as one

of the world's premier auto suppliers.

Relief Requested

15.    The Debtors seek to extend the Exclusive Periods (solely as to the

Creditors' Committee) under section 1121(d) of the Bankruptcy Code to prevent any lapse

in exclusivity as between the Debtors and the Creditors' Committee.  The Debtors seek

entry of an order further extending (a) the Plan Proposal Period, solely as between the

9

Debtors and the Creditors' Committee, through and including September 30, 2009 and

(b) the Solicitation Period, solely as between the Debtors and the Creditors' Committee,

through and including November 30, 2009.  Although the Debtors are requesting a further

extension of the Exclusive Periods solely as between the Debtors and the Creditors'

Committee, the Debtors nonetheless anticipate emerging from chapter 11 as soon as

reasonably practicable.  As explained above, the Exclusive Periods as to all other parties-

in-interest are currently extended until after substantial consummation of the Confirmed

Plan or any modified plan.

<u>Basis For Relief</u>

16.     As noted, the Debtors filed a reorganization plan, solicited

acceptances of that plan, obtained confirmation of it, and, after the Confirmation Order

became final, commenced a formal closing process that was suspended on April 4, 2008

pending the Debtors' pursuit of their remedies against the Plan Investors in ongoing

litigation and exploration with their stakeholders of possible modifications to the

Confirmed Plan.  On June 1, 2009, the Debtors filed their Motion Supplement seeking,

among other things, approval of (i) the Modified Plan, (ii) the Disclosure Statement

Supplement, and (iii) procedures for re-soliciting votes on the Modified Plan.

Subsequently, pursuant to the Modification Procedures Order, the Debtors commenced

solicitation of votes on the Modified Plan.

17.     The Debtors also executed on June 1, 2009 the Master Disposition

Agreement, which was filed as part of the Motion Supplement and is integral to the

Modified Plan.  Although Delphi continues to believe that a reorganization plan is superior

to an asset sale because it provides a comprehensive resolution to these cases and provides

the opportunity for value to be distributed to general unsecured creditors, Delphi has also

committed to complete the transactions set forth in the Master Disposition Agreement

through a sale of the company to the acquirers pursuant to section 363 of the Bankruptcy

Code if sufficient stakeholder support cannot be obtained to achieve confirmation and

substantial consummation of the Modified Plan..  The Debtors hope to close the

transactions contemplated in the Master Disposition Agreement on or about July 31, 2009.

Because this is a complicated transaction subject to, among other things, foreign

governmental approval regarding investment, antitrust, monopolization, restraint of trade

and/or competition antitrust, closing may not occur by July 31, 2009.  Closing under the

agreement, however, must occur by September 30, 2009 or the parties can terminate the

agreement, subject to certain exceptions[6] set forth in the Master Disposition Agreement.

   18. In addition, if the procedures established by the Modification

Procedures Order and the Supplemental Modification Procedures Order result in the

Debtors' seeking to consummate an alternative transaction to the Master Disposition

Agreement, the Debtors may need additional time to consummate that transaction.

Accordingly, the Debtors believe that the Plan Proposal Period should be extended to

September 30, 2009.

   19. As a policy matter, the Exclusive Periods are intended to afford

chapter 11 debtors a full and fair opportunity to rehabilitate their businesses and to

---

[6] Article 12.1.2 of the Master Disposition Agreement provides that the agreement may be terminated "[b]y any Party if the Closing has not occurred by September 30, 2009, provided such date shall be extended until November 30, 2009 in the event that all conditions to Closing are satisfied or capable of being satisfied on the Closing Date, other than the condition set forth in Section 10.1.2 and provided further that the terminating party will not have the right to terminate this Agreement if it is in material default hereunder."

negotiate, propose, confirm, and consummate a reorganization plan without the

deterioration and disruption of their businesses that might be caused by the filing of

competing reorganization plans by non-debtor parties.  In re Dow Corning Corp., 208 B.R.

661, 670 (Bankr. E.D. Mich. 1997) (stating that primary consideration in determining

whether to terminate exclusive periods "should be whether or not doing so would facilitate

moving the case forward").  Given the complexity of these cases and the Debtors' efforts to

pursue simultaneously the Modified Plan and a potential section 363 sale, as well

as potential alternative transactions, the Debtors should not have their resources diverted

by a disruptive competing plan of reorganization.  Extending the Exclusive Periods will

permit the Debtors to remain focused on furthering one or more these transactions to

consummation and achieving a comprehensive resolution of these cases, which is

consistent with the policy described in Dow Corning.  Therefore a further extension of the

Exclusive Periods is justified.

### Applicable Authority

20.      Under the Bankruptcy Code, a bankruptcy court may confirm only

one plan of reorganization.  See 11 U.S.C. § 1129(c).  Because the Plan was confirmed on

January 25, 2008 pursuant to the Confirmation Order that became final on February 4,

2008, and because that order cannot be revoked unless "procured by fraud," see 11 U.S.C.

§ 1144, no other plan of reorganization may now be filed or solicited in these cases.

Instead, unless the Confirmed Plan is withdrawn by the Debtors in accordance with the

discretion granted to them by § 14.7(a) of the Confirmed Plan, only modifications to the

Confirmed Plan proposed and prosecuted by the Debtors in accordance with section 1127

of the Bankruptcy Code may be considered by the Court.  Thus, section 1129(c) of the

12

Bankruptcy Code operates to extend the exclusive periods until the Confirmed Plan (as

modified or otherwise) becomes effective.  The Creditors' Committee, however, has

expressly reserved in the Postconfirmation Exclusivity Order its rights to address, if any of

the Exclusive Periods expires, whether 11 U.S.C. § 1129(c) prevents the Creditors'

Committee from filing and soliciting a competing plan of reorganization.

            21.     Nevertheless, section 1121(d) of the Bankruptcy Code permits the

court to extend a debtor's exclusive periods upon a demonstration of cause:

> On request of a party in interest made within the respective
> periods specified in subsections (b) and (c) of this section
> and after notice and a hearing, the court may for cause
> reduce or increase the 120-day period or the 180-day period
> referred to in this section.

11 U.S.C. § 1121(d).  The court in In re McLean Industries, Inc., 87 B.R. 830 (Bankr.

S.D.N.Y. 1987), identified the following factors as relevant to the determination of "cause"

to extend a debtor's Exclusive Periods:

> (a)     the existence of good-faith progress toward reorganization;
>
> (b)     existence of an unresolved contingency;
>
> (c)     the size and complexity of the debtor's case;
>
> (d)     a finding that the debtor is not seeking to extend exclusivity
>         to pressure creditors "to accede to [the debtor's]
>         reorganization demands"; and
>
> (e)     the fact that the debtor is paying its bills as they come due.

Id. at 834; accord In re Hoffinger Indus., Inc., 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003)

(stating that not all factors "are relevant in every case" and court has discretion to "decide

which factors are relevant and give the appropriate weight to each").

22.    At least one court has noted that "cause may be measured by a more
lenient standard in the determination to grant an enlargement of time in which to gain
acceptances to a <u>filed</u> plan." <u>Gaines v. Perkins</u> (In re Perkins), 71 B.R. 294, 299 (W.D.
Tenn. 1987) (emphasis added); <u>see also</u> <u>In re Express One Int'l, Inc.</u>, 194 B.R. 98 (Bankr.
E.D. Tex. 1996) (denying motion to terminate and granting motion to extend exclusivity
based in part on debtors' filing of plan and disclosure statement and imminent hearing on
disclosure statement).  The same standard should apply when a debtor has confirmed a
plan and has moved for approval, and has begun solicitation, of modifications to the
confirmed plan in accordance with section 1127.

23.    In other cases of similar size and complexity to Delphi's, courts have
extended the debtors' exclusive rights to propose a plan of reorganization for periods
similar to those requested by the Debtors.  <u>See, e.g.</u>, <u>In re Solutia Inc.</u>, No. 03-17949
(Bankr. S.D.N.Y. May 1, 2007) (extending periods for more than 43 months); <u>In re W.R.
Grace & Co.</u>, No. 01-01139 (Bankr. D. Del. Oct. 3, 2006) (extending exclusive periods for
more than six years); <u>In re Kaiser Aluminum Corp.</u>, No. 02-10429 (Bankr. D. Del. Nov. 2,
2005) (extending periods for approximately 43 months).  In these cases, based upon the
preceding factors and in line with other cases of similar size and complexity, sufficient
cause exists for a prophylactic extension of the Exclusive Periods as between the Debtors
and the Creditors' Committee.

C.    <u>The Debtors Have Made Good-Faith Progress Toward Reorganization</u>

24.    An extension of a debtor's exclusive periods is justified by a debtor's
progress in resolving issues facing its creditors and estates.  <u>McLean Indus.</u>, 87 B.R. at
834; <u>In re AMKO Plastics, Inc.</u>, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  As set forth

below, the Debtors' progress in these cases thus far is significant and compels a further

extension of the Exclusive Periods, should it be necessary.

25.    The Debtors have continued to make progress in their reorganization

in the following ways:

- First, as already described above, the Debtors obtained Court approval, with certain modifications, of the Motion Supplement and have commenced solicitation with respect to the Modified Plan.

- Second, the Debtors have entered into the Master Disposition Agreement, pursuant to which (i) Parnassus would operate Delphi's U.S. and non-U.S. businesses going forward with emergence capital and capital commitments of approximately $3.6 billion and (ii) certain of the Debtors' North American sites that primarily produce parts for GM, together with Delphi's global Steering business, would be acquired by GM Components.

- Third, the Debtors have obtained Court approval of an amendment and restatement of its previously approved liquidity support agreement, referred to as the GM Arrangement, by which GM will provide an additional $250 million in interim financing to the Debtors.[7]

- Fourth, the Court granted the Debtors' motion asserting the prior lien defense and reclassifying reclamation claims as general unsecured claims, subject to settlement of the proposed order upon reclaiming creditors.

26.    Claims reconciliation.  The Debtors have reconciled most of the

nearly 17,000 proofs of claim filed in these cases, which assert in the aggregate

approximately $34.0 billion in liquidated amounts plus certain unliquidated amounts.  As

of June 30, 2009, the Debtors have objected to approximately 14,000 claims asserting

nearly $10.3 billion (plus additional unliquidated amounts) and this Court has granted

relief with respect to approximately $10.5 billion in asserted liquidated claims (plus

additional unliquidated claims).

---

[7]    This agreement supplants the proposed fourth and fifth amendments to the GM Arrangement, which amendments the Presidential Task Force on the Auto Industry was previously not prepared to support.

27.    <u>Other key accomplishments</u>.  In addition, since the Debtors last sought an extension of the Exclusivity Periods, they have also:

(a)    filed their 34th Omnibus Claims Objection;

(b)    participated in the judicial mediation before Judge Morris with other parties-in-interest, including the Creditors' Committee, the DIP Lenders, and representatives from GM and U.S. Treasury;

(c)    agreed to further amendments of the Accommodation Agreement which, among other things, extended the date on which the Accommodation Period would end if the requisite DIP Lenders have not delivered a notice indicating approval of the Term Sheet – currently, July 7, 2009;

(d)    obtained Court approval for the establishment of July 15, 2009 as the administrative claim bar date for filing proofs of administrative expense with respect to all alleged postpetition Claims against the Debtors through June 1, 2009;

(e)    advanced the litigation against the Plan Investors and related parties with respect to their refusal to honor their commitments under the Investment Agreement by conducting depositions of expert witnesses, by serving their opposition to the summary judgment motion of Goldman Sachs, and by completing oral arguments related to the summary judgment motion.

28.    In summary, the Debtors have continued to make significant, good-faith progress in their chapter 11 cases.  Given these accomplishments, the unresolved contingencies relating to emergence, and the size and complexity of the Debtors' cases, the Debtors' continued progress toward emergence justifies a further extension of the Exclusive Periods solely as between the Debtors and the Creditors' Committee.

D.    Unresolved Contingencies Still Exist

29.    Courts have also cited the need to resolve an important contingency as justification for extending a debtor's exclusive periods.  The tasks of closing the transactions contemplated in the Master Disposition Agreement (or a higher or otherwise better unsolicited alternative transaction) and obtaining Court approval of the Modified Plan remain significant for both their magnitude and complexity and amply satisfy the contingency component described in the McLean Industries test.

E.    These Cases Are Large And Complex

30.    The size and complexity of the Debtors' chapter 11 cases alone constitute sufficient cause to extend the Exclusive Periods as between the Debtors and the Creditors' Committee.  See, e.g., In re Texaco Inc., 76 B.R. 322, 324-25, 326-27 (Bankr. S.D.N.Y. 1987) (granting extension of exclusive periods based on debtor's size in $28.5 billion asset case with over 300,000 creditors and stockholders); In re United Press Int'l, Inc., 60 B.R. 265, 270 (Bankr. D.D.C. 1986) (granting $40 million company extension of exclusive periods based on size and complexity of case; "In many much smaller cases, involving far less complications, two or three years go by before the debtor is in a position to file a plan.").  These and other authorities show that in large, complex chapter 11 cases, courts consistently extend the debtor's exclusive periods to afford the debtor time to stabilize its business, analyze reliable information to diagnose problems, formulate a long-term business plan, and obtain confirmation of a reorganization plan.

31.    The Debtors' cases are indisputably large and multi-dimensional. The scope of actions that have been taken, and must be taken, to address Delphi's restructuring requirements is exceedingly complex.  At the time of its chapter 11 filing,

Delphi ranked as the fifth largest public company business reorganization in terms of

revenues and the thirteenth largest public company business reorganization in terms of

assets.  Thus, by any measure, the Debtors' chapter 11 cases are sufficiently large and

complex to warrant an extension of the Exclusive Periods, as between the Debtors and

Creditors' Committee, under the authorities cited above.  Moreover, in addition to the

typical issues that can be anticipated to arise in a large chapter 11 case, the Debtors face

numerous challenges that are unique to the distressed automobile industry and some that

affect most large businesses that rely on the capital markets.  The extension of the

exclusive periods is necessary to continue progress in addressing these complexities.

F.    The Debtors Are Using Exclusivity For A Proper Purpose

32.    Courts have denied extensions of exclusive periods when plan

negotiations among parties-in-interest have broken down and the continuation of

exclusivity would merely give the debtor unfair bargaining leverage over the other parties-

in-interest.  See Teachers Ins. & Annuity Ass'n of Am. v. Lake in the Woods (In re Lake in

the Woods), 10 B.R. 338, 345 (E.D. Mich. 1981).  Here, however, the Debtors' request for

an extension of the Exclusive Periods as between the Debtors and the Creditors' Committee

is not a negotiation tactic.  The Debtors negotiated with certain of their stakeholders and

obtained their acceptance of the Confirmed Plan.  On June 1, 2009, the Debtors filed their

Modified Plan and have commenced solicitation of votes on the Modified Plan.  The

Debtors have continued to negotiate with certain of their stakeholders, including reaching

the Accommodation Agreement (and, most recently, the amendments thereto) with the

administrative agent, the majority of the tranche A lenders and tranche B lenders, and

certain tranche C lenders, whereby the Debtors can continue to use certain of the proceeds

18

of the DIP credit facility through July 7, 2009 (subject to certain conditions).  Accordingly,

the Debtors' next steps will include seeking confirmation of the Modified Plan and

consummating the transactions set forth in the Master Disposition Agreement, which are

necessary for the Debtors to emerge from chapter 11.

G.       The Debtors Are Paying Their Bills As They Come Due

            33.      Courts considering an extension of exclusivity may also assess a

debtor's liquidity and solvency.  See In re Ravenna Indus., Inc., 20 B.R. 886, 890 (Bankr.

N.D. Ohio 1982).  The Debtors have satisfied this test by paying their bills as they come

due, including the statutory fees paid quarterly to the United States Trustee, and by

obtaining Court approval of certain amendments to the Accommodation Agreement to

preserve the Debtors' liquidity.

H.       The Debtors Have Shown Cause To Further Extend The Exclusive Periods

            34.      As described above, the Debtors have made significant and

productive strides in these chapter 11 cases.  Based on this progress and all the other

applicable factors, sufficient cause exists to extend the Exclusive Periods as between the

Debtors and the Creditors' Committee.  Accordingly, the Debtors submit that the relief

requested herein is in the best interests of the Debtors, their estates, and other parties-in-

interest.

Notice

            35.      Notice of this Motion has been provided in accordance with the

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m),

9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case

Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883),

19

and the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R.

Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And

Certain Notice, Case Management, And Administrative Procedures, entered May 1, 2009

(Docket No. 16589).  In light of the nature of the relief requested, the Debtors submit that

no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the Debtors' exclusive periods, solely as between the Debtors and the Creditors' Committee, (i) to file a plan of reorganization through and including September 30, 2009 and (ii) to solicit acceptance of a plan of reorganization through and including November 30, 2009 and (b) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          July 3, 2009

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP

                                        By:    /s/ John Wm. Butler, Jr.
                                               John Wm. Butler, Jr.
                                               Ron E. Meisler
                                        155 North Wacker Drive
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                                - and –

                                        By:    /s/ Kayalyn A. Marafioti
                                               Kayalyn A. Marafioti
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession

21