To:        Judge Robert Drain
            Docket Number 05-44481 (RDD)

Subject:   Athens Wind Down / Severance Commitments

Date:      June 23, 2009

It was announced on June 22, 2007 that Delphi Athens would be wound down. At that time, there were approximately 175 salaried employees on the active roles. As wind down plans were developed, it became obvious that the amount of work and complexity would require dedicated Management resources for two full years in order to complete the transition. During these two years, approximately two thirds of the employees have left Delphi. Today, there are 58 regular active salaried employees who have remained dedicated to a successful wind down.

In November/December, 2008, at the direction of the Delphi Steering Leadership, release of claims contracts were signed for each employee, still at work. These contracts specified Severance Payments and tentative release dates. Since then, Delphi has made changes to its severance program; however, continuing to communicate that Delphi would honor previously signed contracts with Athens' employees under the Separation Allowance Plan.

Now June, 2009, with cease of production nearly complete, Delphi announces a tentative restructuring agreement, whereby they intend to back out of their previous contractual commitments to the Athens salaried employees, made via the signed release of claims contracts.

Attached you will find the following documents, in support our claim:

- One example of the release of claims contract, that has been signed by 58 Athens employees

- Separation Allowance Plan (revised November 2008)

- December 5, 2008 Memo from J. Sheehan & Kevin Butler detailing SAP changes "for employees who have not previously signed a release of claims agreement"

- Feb. 5, 2009 Memo from John Sheehan and Kevin Butler detailing "previously approved commitments to employees (e.g. specific wind down situations)"

There have been **many other offers/communications** to employees in wind down situations in attempt to retain critical human resources. The people have fulfilled their commitment to wind down the Athens Site, yet now, Delphi does not want to comply with its commitments to these dedicated people.

Collectively, each and every one of us made decisions that impact our livelihood, families, and futures BASED on severance contracts that Delphi had promised. Please remedy this situation, by fulfilling these severance commitments.

Your anticipated cooperation is appreciated. We anxiously await a response.

Sincerely,


58 Signatures Attached
Active Delphi Athens Salaried Employees
As of this Date

CC:  Frederick "Fritz" Henderson, CEO GM
     Gary Cowger, V.P. Global Manufacturing and Labor Relations
     John Buttermore, V.P. Global Manufacturing, GM
     Tom Gores, CEO Platinum Equity
     Phil Norment, Partner Platinum Equity
     Ron Bloom, Auto Task Team
     Judge Robert Drain, US Bankruptcy Judge
     Rodney O'Neal, CEO Delphi
     Kevin Butler, V.P. H.R. Delphi
     John Sheehan, CFO Delphi

     Via certified Mail

These 58 signatures have read/agree with the letter dated June 23, 2009, subject: "Athens Wind Down, Severance Commitments".

2009 Pending Severence

| # | NAME | DIN | SERVICE DATE YEAR | MONTH | DATE | EMAIL ADDRESS | SIGNATURE |
|---|---|---|---|---|---|---|---|
| 1 | Adams, Charles | 1005316 | 1979 | 01 | 16 | charles.adams@delphi.com | *signed* |
| 2 | Addison, David | 1004352 | 1981 | 05 | 27 | dacactus1@charter.net | *signed* |
| 3 | Aparo, Frank | 1001701 | 1979 | 01 | 09 | frank.aparo@delphi.com | *signed* |
| 4 | Babb, James A | 1016071 | 1979 | 06 | 01 | allen.babb@delphi.com / alababb@bellsouth.net | *signed* |
| 5 | Blankenship, John | 1005489 | 1976 | 07 | 19 | john.blankenship@delphi.com | *signed* |
| 6 | Blankenship, Sam | 1004551 | 1976 | 08 | 23 | sam.c.blankenship@delphi.com | *signed* |
| 7 | Brinikman, William | 1016143 | 1971 | 04 | 05 | william.brinkman@delphi.com | *signed* |
| 8 | Byers, William | 1004933 | 1978 | 06 | 16 | butch.j.byers@delphi.com | *signed* |
| 9 | Case, Arthur R (albert) | 1004707 | 1976 | 05 | 24 | roy.case@delphi.com | *signed* |
| 10 | Dahlem, William H | 1005812 | 1979 | 06 | 01 | william.h.dahlem@delphi.com | *signed* |
| 11 | Davidson, John | 1004566 | 1979 | 06 | 29 | john.davidson@delphi.com | *signed* |
| 12 | Disher, James | 1020118 | 1967 | 06 | 12 | jim.disher@delphi.com | *signed* |
| 13 | Downs, Steve | 1004531 | 1976 | 01 | 19 | steven.l.downs@delphi.com | *signed* |
| 14 | Edney, Douglas | 1004893 | 1976 | 11 | 01 | doug.edney@delphi.com | *signed* |
| 15 | Emens, Jon | 1005474 | 1999 | 06 | 28 | dona.emens@msn.com | *signed* |
| 16 | Fincher, Wayne | 1005217 | 1995 | 05 | 01 | | *signed* |
| 17 | Fuller, Harry | 1004679 | 1976 | 09 | 07 | harry.fuller@delphi.com / hfuller3660@charter.net | *signed* |
| 18 | Gargis, David | 1004387 | 1985 | 02 | 25 | degargis@aol.com | *signed* |
| 19 | Goodwin, Charles | 1004512 | 1985 | 05 | 20 | charles.e.goodwin@delphi.com / charlie01@charter.net | ON LEAVE |
| 20 | Greenlee, Steve | 1004908 | 1979 | 04 | 09 | steve.greenlee@delphi.com | *signed* |
| 21 | Hamilton, Markus | 1005002 | 2000 | 01 | 03 | | *signed* |
| 22 | Heath, Michael | 1006092 | 1973 | 06 | 18 | mike.heath@delphi.com | *signed* |
| 23 | Hill, Patricia | 1004382 | 1984 | 05 | 16 | patricia.hill@delphi.com | ON LEAVE |
| 24 | Inscho, Gayle | 1012302 | 1976 | 08 | 09 | gayle.inscho@delphi.com | *signed* |
| 25 | Johnson, William H | 1004342 | 1978 | 12 | 20 | william.h.johnson@delphi.com | *signed* |
| 26 | Jones, Marcia | 1016462 | 1978 | 12 | 04 | marcia.jones@delphi.com | *signed* |
| 27 | Knable, Ken | 1006695 | 1982 | 06 | 01 | kenknable@aol.com | *signed* |
| 28 | Koontz, Dustin | 1015861 | 1995 | 10 | 16 | wolfpack.koontz@gmail.com | *signed* |
| 29 | Landers, Orvil | 1026756 | 2005 | 03 | 16 | orvil735i@live.com | *signed* |
| 30 | Mathis, Roger | 1005212 | 1981 | 03 | 23 | roger.k.mathis@delphi.com | ON LEAVE |
| 31 | Matsos, Tim | 1004702 | 1984 | 02 | 06 | TimMats@aol.com | *signed* |
| 32 | McKelvey, Greg | 1005479 | 1978 | 06 | 01 | | *signed* |
| 33 | McNalley, Ricky | 1005505 | 1979 | 01 | 08 | Ricky.McNalley@gmail.com | *signed* |
| 34 | McNeese, Julie | 1005270 | 1986 | 06 | 08 | jamcneese@aol.com / julie.mcneese@delphi.com | *signed* |
| 35 | Miller, Laura | 1004262 | 1983 | 05 | 01 | lemiller97@aol.com | *signed* |
| 36 | Mims, Robert L | 1003920 | 1976 | 08 | 23 | lynn.mims@delphi.com | *signed* |

| # | Name | ID | Year | MM | DD | Email | Signature |
|---|---|---|---|---|---|---|---|
| 37 | Montgomery, William | 1004913 | 1975 | 11 | 03 | don.montgomery@delphi.com | *signed* |
| 38 | Morgan, Tony | 1004898 | 1978 | 03 | 20 | tony.morgan@delphi.com | *signed* |
| 39 | Mueller, Jimmy | 1005111 | 1985 | 02 | 25 | jimmymueller@charter.net | *signed* |
| 40 | Nowell, Martha | 1013138 | 1979 | 08 | 13 | martha.nowell@delphi.com | *signed* |
| 41 | Owens, Edward | 1005101 | 1977 | 10 | 12 | ed.owens@delphi.com | *signed* |
| 42 | Parker, Thomas J. | 1004717 | 1995 | 11 | 13 | Thomas.J.Parker@delphi.com | *signed* |
| 43 | Rumrill, David | 1011684 | 1976 | 04 | 06 | david.d.rumrill@delphi.com | *signed* |
| 44 | Scruggs, Horace | 1005340 | 2000 | 03 | 06 | hscruggs@knology.net | *signed* |
| 45 | Segars, Dana | 1004288 | 1996 | 09 | 16 | dana.s.segars@delphi | *signed* |
| 46 | Sloan, Steve | 1016457 | 1973 | 06 | 11 | steve.sloan@delphi.com | *signed* |
| 47 | Smith, Bascom | 1009942 | 1969 | 01 | 13 | bascom.smith@delphi.com | *signed* |
| 48 | Standridge, Brannon | 1004992 | 2000 | 03 | 01 | brannon.standridge@gmail.com | *signed* |
| 49 | Stover, Jackie | 1005070 | 1978 | 07 | 10 | jackie.stover@delphi.com | *signed* |
| 50 | Thompson, James | 1013266 | 1978 | 01 | 12 | jim.thompson@delphi.com | *signed* |
| 51 | Treloar, Mark | 1017513 | 1984 | 11 | 05 | mark.treloar@charter.net | *signed* |
| 52 | Turner, Larry | 1006373 | 1999 | 02 | 23 | larry.turner@delphi.com | *signed* |
| 53 | Uptigrove, Michael | 1013367 | 1968 | 11 | 02 | michael.uptigrove@delphi.com | *signed* |
| 54 | Wagner, Bradford | 1005495 | 1977 | 05 | 09 | scott.wagner@delphi.com | *signed* |
| 55 | Wallace, Carol | 1004833 | 1999 | 11 | 16 | frazerc@bellsouth.net | *signed* |
| 56 | Watkins, Phillip | 1014512 | 1975 | 12 | 01 | phil.watkins@delphi.com | *signed* |
| 57 | Wilson-Noack, B M | 1016853 | 1999 | 01 | 01 | marie.noack@delphi.com | *signed* |
| 58 | Winton, Nathaniel | 1004684 | 1978 | 04 | 17 | nat.winton@delphi.com | *signed* |

**Delphi Corporation**
**Separation Allowance Plan Release of Claims**

I have been separated from my employment with Delphi Corporation ("Delphi") effective _____, 200_ under terms which make me eligible for benefits under the Separation Allowance Plan (the "Plan"). These benefits include Severance Pay in the total amount of $_____, less applicable deductions, to be paid in _____ semi monthly installments commencing on _____, 200__, and Other Transition Assistance, comprised of outplacement assistance and $2000 which I may, at my discretion, use to help pay for the continuation of health care coverage through Delphi; provided, however, that, if I am eligible to retire with corporate contributions for health care in retirement at the time of my separation, I am not eligible for this $2,000. I acknowledge that the consideration provided for in this Release of Claims is in excess of anything I would otherwise be entitled to receive absent my signing this Release of Claims.

In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, agents and employees, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination and Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi.

I understand that, by accepting benefits under the Plan, I will no longer be entitled to receive any disability benefits (short-term, long-term, or total and permanent) under the Delphi Life and Disability Benefits Program for Salaried Employees of the Delphi Retirement Program for Salaried Employees relating to any disability that arose or arises at any time, and if I am currently receiving or am eligible to receive disability benefits as of the effective date of this Release of Claims, I understand that such benefits or eligibility for such benefits will cease upon the effective date of this Release of Claims.

I have been given a minimum of forty-five (45) calendar days to review this Release of Claims and a written notice of the ages and job titles of all individuals in the same job classification or organizational unit who were (i) selected and (ii) who were not eligible or not selected for separation. I understand that I may use as much of this forty-five (45) day period as I wish. I have been advised to consult an attorney before signing this Release of Claims, but understand that whether or not I do so is exclusively my decision. I understand that I may revoke this Release of Claims within seven (7) days of my signing it. To be effective, the revocation must be in writing and must be received by _____ before the close of business on the seventh (7th) day after I sign this Release of Claims.

I acknowledge that Delphi has made no prior representations, promises, or agreements relating to my employment and separation contrary to this Release of Claims. I understand that I am not eligible for benefits Delphi provides under any other separation program and that I will not be eligible for any enhancements Delphi may subsequently make to the benefits provided under the Plan. This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation. If any provision or portion of this Release of Claims is held unenforceable or invalid, all remaining provisions of this Release of Claims remain in full force and effect.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. I AFFIRM THAT I UNDERSTAND AND VOLUNTARILY AGREE TO ITS TERMS.

Signed: _____

Delphi Identification Number (DIN): _____

Dated: _____

Accepted: _____
        Delphi Corporation

## POLICY PROVISIONS

### Eligibility

Separation Allowance Plan benefits are payable to U.S. employees compensated as regular or flexible service salaried employees, who are separated from employment as the result of an Eligible Termination which includes without limitation:

- Mutually Satisfactory Release;
- Certain Special Separations which may include:
  - The closing of an office or business location;
  - A reduction in force;
  - Downsizing;
  - Restructuring, reorganization or re-engineering of a business group, unit or department;
  - Job elimination; or
  - Other circumstances Delphi determines which may or may not be characterized as a Limited Program of Terminations

Separation Allowance Plan benefits are not payable in the event of employment termination as a result of:

- Retirement;
- Quit (which includes an employee's failure to accept a suitable offer of employment);
- Discharge (for personal misconduct);
- Voluntary termination of employment unless the termination results from participation in a special incentive separation program which treats the separation as an Eligible Termination.
- Transfers between the Corporation and any of its wholly owned or substantially wholly owned domestic and foreign subsidiaries or other entity owned by Delphi;
- Separation arising out of outsourcing, the sale of a corporate unit, merger or other combination, spin-off, reorganization, liquidation, dissolution, or other winding up involving Delphi where the employee continues or is offered the opportunity to continue employment;
- A court decree;
- Death;
- Release due to unsatisfactory performance while in the Orientation and Development period;
- Final Release.

### Severance Pay

Eligible Employees who <u>do not</u> sign a Release of Claims will be eligible to receive one (1) month's base pay.

Eligible Employees who <u>sign and do not</u> revoke a Release of Claims will be eligible to receive Severance Pay according to the following schedule:

| Length of Service | Months of Severance Pay |
|---|---|
| 0 but less than 5 | 3 months |
| 5 but less than 10 | 4 months |
| 10 but less than 15 | 6 months |
| 15 but less than 20 | 8 months |
| 20 but less than 25 | 10 months |
| 25 or more | 12 months |

Severance Pay will be:
- Based on the employee's unbroken length of service, calculated on full, 12 month, years of service.
- Calculated on the last monthly base salary except for those employees returning to "regular active" from "flexible service" status. An Employee who, at the time he or she is notified of their Eligible Termination, was a "flexible service" employee for less than 60 days and who, immediately prior to being classified "flexible service", was a "regular active" employee will be returned to "regular active" status for purposes of determining Severance Pay.
- Paid in semi-monthly payments based on the above table
- Taxable

- Severance Payments will begin the first regularly scheduled payroll following the date of separation if Human Resources received the signed Release of Claims and the seven-day revocation period has expired prior to the payroll processing cutoff. Otherwise, the Severance Payments will begin on the first available payroll processing date following receipt of the signed Release of Claims and expiration of the seven-day revocation period
- Payments may be reduced by any amount owed by the Employee to the Corporation.
- Severance Payments are issued as payroll live check, direct deposit will discontinue

### Other Transition Assistance
Other Transition Assistance consists of (1) the opportunity to utilize Delphi-provided outplacement services to assist employees in obtaining employment outside the Corporation and (2) a $2,000 payment included in the last regularly scheduled payroll check which the Employee, at his or her discretion, may use toward COBRA health care continuation coverage through Delphi if the employee is not eligible to retire with Corporate contributions for health care in retirement at the time of the separation. Employees who are eligible to retire with corporate contributions for health care in retirement at the time of the separation are not eligible for this $2,000 payment. The local HR Representative will assist in scheduling outplacement service. Use of the outplacement service should commence within sixty days of separation and will generally be limited to six months in duration.

- Eligible Employees who <u>sign</u> a Release of Claims will receive Severance Pay and Other Transition Assistance.
- Eligible Employees who <u>do not</u> sign a Release of Claims will not be eligible for Other Transition Assistance.

### Vacation
- During Transformation employees impacted by <u>involuntary programs</u> will vest vacation on a monthly basis. Employees may use or receive payment for vacation based on last month worked.  <u>Example</u>: Separation effective 5/1/2008, vacation vested four (4) months or 33.3%. Vacation for an employee with 5 yrs service = 120 hours, (120 x .333=39.96) hours vested, round to nearest whole or 40 hours of entitlement. Employees eligible for the four (4) additional days, (hired before 12/31/2000) will vest under the same criteria above.
- Retirement-eligible employees will receive 100% of their annual vacation entitlement, including additional vacation days (if length of service date is on or before 12/31/2000), if effective date of retirement is on or after March 1. For retirements effective February 1, the maximum allowable vacation days is equal to number of working days for the month of January.
- Employees impacted by the <u>involuntary programs</u> will be allowed to revoke their deductions for purchased days with their final regularly scheduled paycheck. Employees may use or receive payment for days purchased through payroll deductions; however no payment may be received after the plan year. Employees who have used more days than deducted through payroll will have the remaining dollars deducted from their last regularly scheduled paycheck. Vested vacation must be utilized prior to purchase days.

### Company Car Allowance
- Company car allowances will be discontinued at the end of the pay period in which the last day of work occurred.

### Tuition Assistance
- Separated employees who have started a class prior to their employment being severed will be able to use Tuition Assistance for the class.
- Separated employees who are not in class prior to their employment being severed may not use Tuition Assistance.

## Incentive Compensation
- Employees must be on the active roll on date of the incentive compensation payout to be eligible to receive incentive compensation. Eligible employees who retire or accept a separation payment under Separation Allowance Plan guidelines prior to the payout maintain their eligibility to receive a prorated award.

## Flexible Compensation Payment
- The Flexible Compensation payment or installment into S-SPP will be discontinued at the end of the month of separation for eligible employees. If an employee separates on or before 3/14/08 and elected the lump sum they are not eligible to receive the 3/14/2008 FCP.
- Employees who are eligible to retire under the Separation Allowance Plan guidelines maintain their eligibility to receive the Flexible Compensation Payment (FCP), if effective date of separation is on or after 2/1/08.

# DELPHI

December 5, 2008

To All Delphi U.S. Salaried Employees:

Delphi is operating in unprecedented and difficult times. While we have done an outstanding job thus far supporting our customers, managing our supply base, and growing our business for the future, we continue to face great challenges.

We have continued to examine every aspect of our business as part of our restructuring efforts. We realigned our product portfolio, renegotiated labor agreements, eliminated many jobs, and changed compensation, benefits, and policies to restructure globally and to emerge from Chapter 11 in the United States. However, given recent events, we must immediately adjust to rapidly declining volumes and conserve cash globally. We have been implementing reductions in capital spending and inventory in line with falling volumes. In addition to these efforts, we are reviewing salaried compensation, benefits and policies globally, making changes as necessary to ensure competitiveness and affordability.

As part of this review, the following changes are effective January 1, 2009 for U.S. salaried employees:

**Short Term Layoff Policy:** In order to address business conditions including short term volume swings, OEM program delays or other temporary business slow downs, Delphi has established a salaried temporary layoff policy. Delphi may identify salaried employees who will be placed on short term layoff in one week increments for a maximum of 13 weeks. While on layoff, employees will remain on active status but receive 50% of base pay for each week(s) on layoff. Employees will continue to accrue credited service for eligibility to retire under the Delphi Retirement Program for Salaried Employees, but employee and company contributions to the Delphi Salaried Retirement Savings Program (SRSP) will be based upon the reduced weekly earnings. Most other benefits will not be impacted (e.g. health care, life insurance, etc.).

**The Flexible Compensation Payment:** The $1,200 per employee Flex Comp Payment for employees hired prior to 2001 will be suspended for 2009 and not paid. Suspension of this payment will result in approximately $10M of cash avoidance in the first quarter of 2009. The additional four days provided as part of this payment for employees hired prior to 2001 are also suspended. All employees are eligible to purchase additional vacation days during the annual Vacation Purchase process which will be rolled out in early January.

**The Tuition Assistance Program:** Tuition Assistance will be suspended for all classes commencing in 2009.

**Adoption Assistance Program:** Adoption Assistance will be suspended for all of 2009.

**Relocation Policy:** Changes have been made to the loss on sale provisions of the U.S. relocation policy. Specific change details can be found on my.delphi.com.

**Delphi Separation Allowance Plan for U.S. Salaried Employees:** Based upon expected long-term volume reductions and projected revenues in the near term and the need to continue to size the company for those reduced volumes, additional salaried employment and contract service reductions will occur. As we benchmark our salaried severance program against companies of similar size and revenue, we are changing our U.S. salaried Separation Allowance Plan policy.

To All Delphi U.S. Salaried Employees
Page 2

Effective March 1, 2009, for employees who have not previously signed a release of claims agreement, the Severance Pay available to classified salaried employees separated as the result of an Eligible Termination under the Separation Allowance Plan will be realigned and capped at 6 months as listed below:

| Years of Service | Severance |
|---|---|
| 0 but less than 5 years of service: | 1 month |
| 5 but less than 10 years of service: | 2 months |
| 10 but less than 15 years of service: | 3 months |
| 15 but less than 20 years of service: | 4 months |
| 20 but less than 25 years of service: | 5 months |
| 25 or more years of service: | 6 months |

Also, as previously communicated to affected individuals, commencing with separations initiated in November, Severance Pay will be paid in semi-monthly installments (consistent with payroll processing) rather than in a lump sum.

Information regarding all of these changes can be found on my.delphi.com.

We will continue to monitor competitive trends and practices. There may be additional changes in the near future, particularly if competitive practices continue to shift and the global economy continues to decline. If additional changes are required, we will notify you as soon as practical.

We realize these measures personally impact you, but hope you understand that the decisions are necessary and were made only after thoughtful and thorough consideration.

The Delphi leadership team remains grateful for your dedication and hard work in support of our customers and to ensure a stronger, viable Delphi. Questions regarding this letter may be directed to your local HR Department.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

# DELPHI

February 5, 2009

To Delphi U.S. Salaried Employees:

As referenced in the letter distributed today to Delphi's global salaried workforce, Delphi, like others in the automotive sector, continues to face serious challenges created by a weakened global economy and its effect on the automotive industry. U.S. light vehicle sales for 2009 are down roughly 22% from an already slower 2008, and down nearly 40% from volumes experienced at the beginning of this decade. At current forecasts, 2009 U.S. light vehicle sales will reach their lowest level since 1982.

Delphi must respond to these market and economic realities by taking a series of difficult but necessary actions, applicable to U.S. salaried employees.

- The U.S. 2009 merit plan and annual incentive payments (AIP) for eligible executives and U.S. non-executive salaried employees will be suspended in 2009. Suspending these programs in the U.S. and other locations will assist in generating cash flow in 2009.

- Additionally, effective April 1, 2009, Delphi will cease to provide health care and life insurance in retirement to salaried employees and retirees.

In these extraordinary economic times, it is necessary for Delphi to discontinue these benefits in order to work towards further modifications to its plan of reorganization that will enable the company to emerge from chapter 11 reorganization as soon as practicable. Delphi acknowledges these actions will impose a real hardship on former beneficiaries of these programs. However, the company's recognition of this hardship, which allowed Delphi to continue these benefits in a more robust economic environment, regretfully does not support continuing these programs in the current economic environment.

On February 4, 2009, Delphi filed a motion with the U.S. Bankruptcy court regarding the aforementioned benefits in retirement. The benefits are generally referred to as Other Post Employment Benefits (OPEB). You will receive a copy of the motion in the mail at your home address. A copy of the motion can also be found on www.delphidocket.com. Any responses to the motion will need to be filed with the Bankruptcy Court no later than February 17, 2009.

The change does not impact active employees hired prior to January 1, 1993 until they retire. Active employees who were hired after January 1, 1993 but prior to January 1, 2001 will no longer receive the 1% Corporate contribution made into their 401(k) account in lieu of health and life coverage in retirement. Employees hired on or after January 1, 2001 are not affected by this change because they did not have any health or life coverage in retirement based upon their date of hire. Effective April 1, 2009, current and future retirees will have access to Delphi coverages but will be required to pay the full cost of coverages continued. Impacted retirees will be notified of these changes in a separate communication and will be provided the information about continuing their coverages at their own expense. Questions about this change and/or the ability to purchase alternative coverage may be directed to the National Benefits Center at 1-866-335-7444.

World Headquarters and Customer Center   5725 Delphi Drive   Troy, MI 48098-2815   USA

Page 2

- In December 2008, Delphi advised U.S. salaried employees that the Separation Allowance Plan severance schedule would be changed to cap at 6 months based upon length of service. The March 1, 2009 implementation date accommodated previously approved commitments to employees (e.g. specific wind down situations). Additionally, the date was based upon our projected customer volumes and workforce reduction plans at that time. However, rapidly deteriorating business conditions make it necessary to apply the new schedule to all classified salaried employees who were provided release of claims agreements after January 5, 2009.

- Effective January 1, 2009, all vacations will vest on a month-to-month basis. Employees who retire or separate from service will be eligible only for prorated vacation days prior to their last day of work based upon their date of separation in the calendar year. This change will be reflected in all Separation Allowance Plan documents presented to employees beginning today.

- Service Awards will be suspended until further notice. At the point in time Delphi is able to reinstate this program, missed anniversary dates during the suspended period will be recognized.

- Cash payments ($50) to be made in May 2009 to employees who completed Health Risk Assessment Questionnaires will be suspended until further notice. This suspension includes employees who have already completed forms.

Delphi is among many companies throughout the world examining all policies, compensation and benefits in response to a weakened global economy. This week, Delphi employees in all regions of the world are being advised of similar changes affecting their site, country or region.

In this dynamic environment, it is possible that additional cost cutting measures will be necessary in response to changing business conditions; in that event, we will do our best to notify you as early as we can if and when further measures are needed. Except as otherwise directed, should you have questions about this letter or the information provided, please contact your local HR department.

We regret that these changes are necessary, but please understand the changes are only implemented after careful consideration of many factors, including the impact on Delphi people. We believe these changes are necessary to exit bankruptcy and maintain a viable global business.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi