Hearing Date & Time:  July 23, 2009 at 10:00 a.m.
Objection Deadline:  July 20, 2009 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Albert L. Hogan, III
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
     In re                            :    Chapter 11
                                      :
DELPHI CORPORATION, et al.,           :    Case No. 05-44481 (RDD)
                                      :
                    Debtors.          :    (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EXPEDITED MOTION FOR ORDER APPROVING MODIFICATIONS OF
MULTIDISTRICT LITIGATION SECURITIES AND ERISA SETTLEMENTS

("MDL SECURITIES AND ERISA SETTLEMENT
MODIFICATIONS APPROVAL MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this expedited motion for an order approving modifications of two of the stipulations of settlement in the multidistrict litigation (the "MDL") against Delphi and other defendants in the United States District Court for the Eastern District of Michigan (the "District Court"). Capitalized terms used and not otherwise defined in this motion shall have the meanings ascribed to them in the Court's Final Order Approving Multidistrict Litigation And Insurance Settlement, dated January 25, 2008 (Docket No. 12358) (the "Final MDL Settlement Approval Order").

## Introduction

1.  The MDL settlement will resolve, among other things, two substantial claims against the Debtors' estates related to class actions against Delphi, certain Delphi affiliates, and certain current and former directors and officers of Delphi under the federal securities laws and the Employee Retirement Income Security Act of 1974 ("ERISA"). This Court provided its preliminary approval of the MDL settlement in an order issued in October 2007,[1] and it provided its final approval of the settlement, as amended, in the Final MDL Settlement Approval Order in January 2008. The Debtors now seek this Court's approval of further modifications to the Modified Securities Stipulation and the Amended ERISA Stipulation that will result in three principal changes to the settlement, each of which will have a positive impact on the Debtors and their estates (the "Modifications").

2.  First, under the settlement as approved by this Court, the claims and interests granted to the Securities Class in the Delphi Securities Action and to the ERISA Class

---

[1] See Order Preliminarily Approving Multidistrict Litigation And Insurance Settlement, dated October 29, 2007 (Docket No. 10746).

2

in the Delphi ERISA Action were guaranteed the same treatment as general unsecured claims.[2] The Modifications alter that feature of the settlement and allow the Debtors to classify the claims and interests under the Debtors' plan of reorganization in a manner that is consistent with the priority scheme established under the Bankruptcy Code, including the subordination provisions of section 510(b). The Bankruptcy Code's priority scheme will dictate the classification of the classes' claims and interests unless the plan of reorganization provides general unsecured creditors with a par plus accrued recovery, in which case the classes' claims and interests will receive the same treatment as general unsecured claims.

    3.  Second, under the settlement of the Delphi Securities Action, Delphi agreed to cause to be paid to the Securities Class $15 million in cash pursuant to an agreement with a third party. Based on changed circumstances, it is no longer possible for Delphi to obtain $15 million in cash from the third party, and that portion of the settlement has been eliminated under the Modifications.

    4.  Third, the settlement is conditioned on, among other things, Delphi's distribution of consideration to the escrow agents for the Securities Class and the ERISA Class following the substantial consummation of the Debtors' plan of reorganization, which has not occurred. As a result, the settlement is not yet effective, and the Debtors and the other settling parties have not received the benefit of the releases provided in the settlement. To solve this problem, the Modifications break the link between the effective date of the settlement and the substantial consummation of the Debtors' plan. Under the Modifications, the effective date of the settlement will occur once this Court and the District Court provide all necessary approvals and those approvals are either not challenged or not disturbed on appeal.

---

[2]  The summaries and descriptions of the settlement stipulations and modifications set forth in this motion are qualified entirely by and are subject to the actual terms and conditions of the stipulations and modifications.

3

Background

5.        The background concerning the MDL settlement and related matters is set forth in detail in the Debtors' Motion For Order Approving Multidistrict Litigation And Insurance Settlements, dated September 5, 2007 (Docket No. 9296), and the Debtors' Supplemental Reply To Objection To Motion For Order Approving Multidistrict Litigation And Insurance Settlements, dated January 16, 2008 (Docket No. 12153).  Since the latter filing, there have been a number of developments in this area.

6.        On January 23, 2008, the District Court entered final judgments under Rule 54(b) of the Federal Rules of Civil Procedure as to the claims asserted by the Securities Lead Plaintiffs against the settling defendants in the Delphi Securities Action and the claims asserted by the ERISA Named Plaintiffs against the settling defendants in the Delphi ERISA Action.  One putative member of the Securities Class, Sidney Bernstein, filed a notice of appeal and an amended notice of appeal related to, among other things, the District Court's final judgment in the Delphi Securities Action.  On May 6, 2008, the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") issued an order holding appellate briefing in abeyance pending the resolution of other matters in the District Court proceedings and developments in the Debtors' chapter 11 cases before this Court.  Mr. Bernstein's appeal therefore remains pending before the Sixth Circuit.  There was no appeal in the Delphi ERISA Action.

7.        Meanwhile, on January 25, 2008, this Court entered the Final MDL Settlement Approval Order.  No party appealed from the Final MDL Settlement Approval Order.

8.        When this Court entered the Final MDL Settlement Approval Order, the Debtors believed that they would emerge from chapter 11 in the near term pursuant to the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession confirmed by this Court in January 2008 (the "Confirmed Plan").

4

The Debtors' inability to substantially consummate the Confirmed Plan and make distributions to the Securities Class and the ERISA Class has prevented the settlement from taking effect, as those distributions are express conditions under the Modified Securities Stipulation and the Amended ERISA Stipulation (Docket No. 12358 Ex. A ¶ 29(h); Docket No. 12358 Ex. C ¶ 17(h)), and the effective date of the Insurance Stipulation is tied to the satisfaction of all conditions set forth in the Modified Securities Stipulation and the Amended ERISA Stipulation (Docket No. 12358 Ex. D ¶ 12(a)-(b)).  Because the settlement has not taken effect, Delphi and the other settling parties have not received the benefit of the releases provided in the settlement stipulations, and the members of the Securities Class and the ERISA Class have not obtained access to the cash already paid into escrow by the Insurers and the Underwriter Defendants under the settlement.

    9.  In addition, based on conditions in the capital markets, the automotive industry, and the broader economy, the Debtors concluded that it would be necessary to modify the Confirmed Plan in a manner that would make it difficult to continue to guarantee that the claims and interests granted to the Securities Class and the ERISA Class would receive the same treatment as general unsecured claims.  The negative and deteriorating conditions also called into question whether Delphi could cause to be paid to the Securities Lead Plaintiffs' escrow agent $15 million in cash pursuant to an agreement with a third party, as contemplated by the Modified Securities Stipulation.

    10.  In light of these concerns, Delphi opened negotiations concerning the need for modifications of the Modified Securities Stipulation and the Amended ERISA Stipulation. For much of the negotiation process, the principal participants were Delphi, the Securities Lead

5

Plaintiffs, and the ERISA Named Plaintiffs. Eventually the discussions were expanded to include all of the settling parties.

11. On May 28, 2009, the District Court conducted a chambers conference attended by counsel for Delphi, the Securities Lead Plaintiffs, the ERISA Named Plaintiffs, and a number of other settling parties. By that time, Delphi, the Securities Lead Plaintiffs, and the ERISA Named Plaintiffs, among others, had reached a common understanding as to several of the key concepts reflected in the Modifications. At the chambers conference, the District Court received an update regarding the Debtors' reorganization and the negotiations among the settling parties, and the District Court provided guidance as to the proper procedures with respect to notice and the District Court's consideration of any changes to the settlement.

12. The settling parties continued to engage in constructive negotiations after the chambers conference, and on July 10, 2009, they entered into the Second Stipulation Modifying Agreement Of Settlement With Certain Defendants in the Delphi Securities Action (the "Second Securities Stipulation Modification") and the Modification To Amended Stipulation And Agreement Of Settlement With Certain Defendants – ERISA Actions in the Delphi ERISA Action (the "Amended ERISA Stipulation Modification"), subject to approval by the District Court and this Court. Copies of the Second Securities Stipulation Modification and the Amended ERISA Stipulation Modification are attached to this motion as Exhibit A and Exhibit B, respectively.

13. The third settlement agreement, the Insurance Stipulation, will be affected by the Modifications in that the effective date of the Insurance Stipulation is tied to the effective date of the other agreements. (Docket No. 12358 Ex. D ¶ 12(a)-(b).) When the Modified Securities Stipulation, as modified by the Second Securities Stipulation Modification, and the

6

Amended ERISA Stipulation, as modified by the Amended ERISA Stipulation Modification, become effective, then the Insurance Stipulation as previously approved by this Court will also automatically become effective as of the same date.[3] The Modifications do not, however, involve any changes to the terms of the Insurance Stipulation.

## Relief Requested

14.    By this motion, the Debtors request that this Court enter an order approving the Second Securities Stipulation Modification and the Amended ERISA Stipulation Modification pursuant to section 363(b)(1) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure on the grounds that the Second Securities Stipulation Modification and the Amended ERISA Stipulation Modification alter the settlements approved in the Final MDL Settlement Approval Order in a manner that is favorable to the Debtors and their estates.

## Basis For Relief

15.    Section 363(b)(1) of the Bankruptcy Code allows a debtor-in-possession to use, sell, or lease property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). Relief under section 363(b) is appropriate when "the judge determining the § 363(b) application expressly finds from the evidence present before him or her at the hearing that there is a good business reason to grant such an application." In re Iridium Operating LLC v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007) (internal quotations and alterations omitted); accord Licensing

---

[3]    The only other condition to the effective date of the Insurance Stipulation is "entry of an Order by the Bankruptcy Court approving this Insurance Settlement and barring and enjoining the institution and/or prosecution of any actions or claims by any Barred Person against any of the Insurers arising out of or related to any of the Insurance Policies or the obligations of any of the Insurers under any of the Insurance Policies." (Id. ¶ 12(c).) That condition has already been satisfied through this Court's entry of the Final MDL Settlement Approval Order.

7

By Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 388 (2d Cir. 1997) (explaining that relief should be granted under section 363(b) "if a good business reason exists to support it").

        16.     Rule 9019(a) of the Bankruptcy Rules authorizes this Court to approve a compromise or settlement after notice to certain parties and a hearing. Fed. R. Bankr. P. 9019(a). The standard under Rule 9019(a) is whether the settlement is "fair and equitable." Iridium, 478 F.3d at 462. The Second Circuit has identified the following interrelated factors in determining whether a settlement satisfies this standard: (i) the balance between the litigation's possibility of success and the settlement's future benefits, (ii) the likelihood of complex and protracted litigation, (iii) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement, (iv) whether other parties in interest support the settlement, (v) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement, (vi) the nature and breadth of the releases to be obtained by officers and directors, and (vii) the extent to which the settlement is the product of arm's length bargaining. Id.

        17.     The Second Securities Stipulation Modification and the Amended ERISA Stipulation Modification satisfy the requirements of section 363(b)(1) and Rule 9019(a) because they alter the stipulations in a manner that makes them more favorable to the Debtors and their estates than the stipulations as approved in the Final MDL Settlement Approval Order. Again, the Modifications make three principal changes to the settlement – they alter the classification and treatment of the allowed claims and interests granted to the Securities Class and the ERISA Class, they eliminate Delphi's obligation to cause to be paid to the Securities Class $15 million in cash pursuant to an agreement with a third party, and they streamline the conditions to the

8

effective date of the settlement, including the releases that are the principal settlement benefit obtained by the Debtors, by deleting requirements related to the Debtors' substantial consummation of a plan of reorganization. In each case, the changes have a positive impact on the Debtors and their estates.

      A.     <u>The Treatment Of Allowed Claims And Interests</u>

      18.     With respect to the treatment of claims and interests, the Final MDL Settlement Approval Order granted to the Securities Lead Plaintiffs, as representatives of the Securities Class, an allowed claim in the aggregate face amount of $179.0 million, with no additional provision to be made for accrued interest (the "Securities Allowed Claim"). (Docket No. 12358 ¶ 6.) Under the Modified Securities Stipulation approved in the Final MDL Settlement Approval Order, the Securities Allowed Claim was entitled to the same treatment as general unsecured claims. (<u>See</u> Docket No. 12358 Ex. A ¶ 1(a), (r)-(s), (v).) By contrasts, the Second Securities Stipulation Modification provides "that Delphi shall have no obligation to propose any particular treatment of the [Securities Allowed Claim] under the Delphi Plan of Reorganization," and it sets forth the parties' agreement "that the [Securities Allowed Claim] will be classified in a manner consistent with the priority scheme provided in the Bankruptcy Code, including section 510(b) of the Bankruptcy Code." (Ex. A ¶ 12.) This agreement applies unless the Debtors' plan of reorganization provides general unsecured creditors with a par plus accrued recovery, in which case the Securities Allowed Claim will receive the same classification and treatment as general unsecured claims. (<u>Id.</u>)

      19.     Similarly, under the Final MDL Settlement Approval Order, this Court granted to the ERISA Named Plaintiffs, as representatives of the ERISA Class, an allowed interest in the face amount of $24.5 million, with no additional provision to be made for accrued

9

interest (the "ERISA Allowed Interest").  (Docket No. 12358 ¶ 11.)  Like the Securities Allowed Claim, the ERISA Allowed Interest was guaranteed the same treatment as general unsecured claims under the Amended ERISA Stipulation approved by this Court in January 2008.  (See id. Ex. C ¶ 1(n), (t), (q).)  Under the Amended ERISA Stipulation Modification, however, "Delphi shall have no obligation to propose any particular treatment of the [ERISA Allowed Interest] under the Delphi Plan of Reorganization," and the ERISA Allowed Interest "will not be given priority equal to or higher than the priority of general unsecured claims."  (Ex. B ¶ 5.)  The Amended ERISA Stipulation Modification also includes a provision that elevates the ERISA Allowed Interest to the same priority as general unsecured claims in the event that the Debtors' plan of reorganization provides for a par plus accrued recovery for general unsecured creditors.  (Id.)

20. The Modifications related to the treatment of the Securities Allowed Claim and the ERISA Allowed Interest are important because they will make it easier for the Debtors to obtain this Court's approval of changes to the Confirmed Plan.  Without the Modifications, it is possible that general unsecured creditors, among others, would object to the changes to the Confirmed Plan on the ground that giving the Securities Allowed Claim and the ERISA Allowed Interest the same priority as general unsecured claims violates the absolute priority rule.  While the Debtors were able to overcome such an objection in the context of the Confirmed Plan, that would be more difficult now given that the modifications to the Confirmed Plan proposed by the Debtors would provide general unsecured creditors and others with only a partial recovery.  As such, the Modifications remove an obstacle to the approval of changes to the Confirmed Plan and the Debtors' emergence from chapter 11 as soon as practicable.

  B. <u>The $15 Million Payment</u>

  21. As to the $15 million payment, under the Securities Stipulation Modification, Delphi had an obligation to cause to be paid to the Securities Lead Plaintiffs' escrow agent $15 million "pursuant to an agreement with a certain third party."  (Docket No. 12358 Ex. B ¶ 3.)  The payment was due within 10 business days after the substantial consummation of the Debtors' plan of reorganization.  (<u>Id.</u>; Docket No. 12358 Ex. A ¶ 1(e).)  The $15 million payment was a condition to the effective date of the settlement.  (Docket No. 12358 Ex. B ¶ 3.)  The Second Securities Stipulation Modification notes that, "since [the parties] entered into the [Securities Stipulation Modification in January 2008], circumstances have changed dramatically such that it is no longer possible for Delphi to cause to be paid to the Escrow Agent the $15 Million Payment pursuant to [the] agreement with [the] third party."  (Ex. A ¶ P.)  For that reason, the parties agreed to eliminate the $15 million payment and the corresponding condition to the effective date of the settlement.  (<u>Id.</u> ¶ 32.)

  22. These changes are beneficial to the Debtors and their estates in that they allow Delphi to avoid the possibility that it will have to choose from a range of unattractive options that includes paying the $15 million from its own limited and dwindling cash reserves or potentially breaching the provision of the Securities Stipulation Modification that required Delphi to cause the payment of the $15 million.

  C. <u>The Effective Date Of The Settlement</u>

  23. Finally, with respect to the effective date of the settlement, one of the conditions set forth in the Modified Securities Stipulation approved in the Final MDL Settlement Approval Order requires "distribution of the Delphi Net Consideration, pursuant to [the] Securities] Stipulation," as soon practicable after the later of the satisfaction of certain conditions

11

or the "Bankruptcy Effective Date." (Docket No. 12358 Ex. A ¶¶ 7(c), 29(h).) The Amended ERISA Stipulation includes a similar condition. (Docket No. 12358 Ex. C ¶¶ 8(b), 17(h).) The term "Bankruptcy Effective Date" refers to:

> the business day determined by Delphi in its sole discretion on which all conditions to the consummation of the Delphi Plan of Reorganization have been either satisfied or waived and is the day upon which such plan is substantially consummated, such date being the same as the "Effective Date" as defined in the Delphi Plan of Reorganization.

(Docket No. 12358 Ex. A ¶ 1(e); Docket No. 12358 Ex. C ¶ 1(c).) Although the Insurance Stipulation does not expressly reference the Bankruptcy Effective Date, it does not become effective until all of the conditions set forth in the Modified Securities Stipulation and the Amended ERISA Stipulation – including the conditions in those agreements related to the Bankruptcy Effective Date – have been satisfied. (Docket No. 12358 Ex. D ¶¶ 12(a)-(b).)

24. Because Delphi has not substantially consummated the Confirmed Plan, the Bankruptcy Effective Date has not occurred, and the Modified Securities Stipulation, the Amended ERISA Stipulation, and the Insurance Stipulation, in turn, have not become effective. From the Debtors' perspective, the chief consequence is that the releases provided in the stipulations have not taken effect, leaving the Debtors without the paramount benefit of the settlement bargain. To help move the settlement from its present state of limbo toward effectiveness, the Modifications eliminate the conditions related to Delphi's distribution of the Delphi Net Consideration, if any, to the Securities Class and the Delphi Consideration, if any, to the ERISA Class following the Bankruptcy Effective Date. (Ex. A ¶ 27; Ex. B ¶ 16.) All of the conditions imposed under the Modifications relate to the approval of the Modifications by this Court and the District Court and the finality of any order or judgment entered by this Court and the District Court with respect to that approval. (See Ex. A ¶¶ 26-29; Ex. B ¶¶ 16-18.) Once

05-44481-rdd    Doc 18073    Filed 07/10/09    Entered 07/10/09 18:32:53    Main Document
Pg 13 of 14

those conditions are satisfied, the settlement, including the releases of the Debtors, will become effective, without regard to the substantial consummation of a plan of reorganization.

## Notice

25. Notice of this Motion has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered March 20, 2006 (Docket No. 2883), and the Fourteenth Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered May 1, 2009 (Docket No. 16589). Furthermore, the Debtors have complied with the Supplemental Case Management Order with respect to the filing of this Motion and the need for expedited relief.[4] In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Conclusion

WHEREFORE, the Debtors respectfully request that this Court grant the motion, enter an order in substantially the same form as the form of Order Approving Modifications Of Multidistrict Litigation Securities And ERISA Settlements attached to this motion as Exhibit C, and grant the Debtors such other and further relief as is just.

---

[4] The Debtors have noticed this motion for hearing on July 23, 2009. In compliance with the terms of the Supplemental Case Management Order, the Debtors have consulted with counsel to the official committee of unsecured creditors (the "Creditors' Committee") regarding the relief sought in this motion as well as the timing of its filing. The Creditors' Committee has consented to this motion being heard on July 23, 2009. Because this motion is being filed on fewer than 20 days' notice, parties-in-interest will have until July 20, 2009 to file an objection to this motion.

13

Dated: New York, New York
       July 10, 2009

                SKADDEN, ARPS, SLATE, MEAGHER
                 & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr.
    John K. Lyons
    Albert L. Hogan, III
    Ron E. Meisler
155 North Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

              - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

14