# Transmission Log

Delphi Steering                    Tuesday, 2009-06-23  15:43                    256-552-5607

| Job # | Date | Time | Length | Speed | Station Name/Number | Type | Pgs | Status |
|-------|------|------|--------|-------|---------------------|------|-----|--------|
| 20069 | 2009-06-23 | 15:41 | 1:42 | 21600 | 9143904073 | SCAN | 8 | OK -- V.34 AM11 |

Revised Letter Previously Submitted June 17th, 2009 to Contest June 1st, 2009
Master Disposition Agreement Article 9.5.11 Severance Termination, Delphi
Docket Number 05-44481

Honorable Robert D. Drain
Docket Number 05-44481 (RDD)
United States Bankruptcy Judge - Southern District of NY
One Bowling Green
New York, NY 10004 -1408

June 23, 2009

FAX  914-390-4073 White Plains, NY

Frank Aparo
103 Southern Pointe Drive
Madison, Alabama 35758
Employee of Delphi Steering Athens, Alabama
frank.aparo@yahoo.com (256) 552 5667 Work of (256) 325 2529 Home

I respectfully object to the position Delphi Corporation is taking toward the legal
agreements for retention bonuses and severance agreements which states in
Article 9.5.11 that the severance payments will be terminated upon the closing
(emergence date), for those employees that terminated prior to the June 1st,
2009 date.  In the simplest terms, I have a legal, enforceable contract entered
into during bankruptcy. I expect it to be fulfilled by Delphi, as it has been fulfilled
by me as the Consolidation Manager of the Halfshaft Product Line. My severance
payments were provided in exchange for my waiver of certain rights via the
Release of Claims. Here are my points of objection:

1) Severance payment entitlement is by contract (Separation Agreement).

2) Employees waived certain rights (Release of Claims) to receive severance.
   (you provided an item of value to Delphi in exchange for severance payments)

3) The contracts were entered into during bankruptcy.

4) Severance payments are a contract liability (not a Delphi provided benefit).

5) I have a valid / binding / legal contract and I expect it to be honored.

I Frank Aparo signed the release of claims agreement on November 19, 2008 the
agreement was witnessed by Harry Fuller and Steve Sloan acting as agents of
Delphi. I am scheduled to end employment on June 30th, 2009.  I fulfilled the
requirements of my contract by executing my portion of our sites closure and I
expect to have the contract I signed in November 2008 to be honored.  The
contract I signed states that I would be paid the amount of 1 years wages. Delphi

Judgedrainseverence061709

Revised Letter Previously Submitted June 17th, 2009 to Contest June 1st, 2009
Master Disposition Agreement Article 9.5.11 Severance Termination, Delphi
Docket Number 05-44481

Honorable Robert D. Drain
Docket Number 05-44481 (RDD)
United States Bankruptcy Judge - Southern District of NY
One Bowling Green
New York, NY 10004 -1408

June 23, 2009

FAX   914-390-4073 White Plains, NY

Frank Aparo
103 Southern Pointe Drive
Madison, Alabama 35758
Employee of Delphi Steering Athens, Alabama
frank.aparo@yahoo.com (256) 552 5667 Work of (256) 325 2529 Home


I respectfully object to the position Delphi Corporation is taking toward the legal
agreements for retention bonuses and severance agreements which states in
Article 9.5.11 that the severance payments will be terminated upon the closing
(emergence date), for those employees that terminated prior to the June 1st,
2009 date. In the simplest terms, I have a legal, enforceable contract entered
into during bankruptcy. I expect it to be fulfilled by Delphi, as it has been fulfilled
by me as the Consolidation Manager of the Halfshaft Product Line. My severance
payments were provided in exchange for my waiver of certain rights via the
Release of Claims. Here are my points of objection:

1) Severance payment entitlement is by contract (Separation Agreement).

2) Employees waived certain rights (Release of Claims) to receive severance.
   (you provided an item of value to Delphi in exchange for severance payments)

3) The contracts were entered into during bankruptcy.

4) Severance payments are a contract liability (not a Delphi provided benefit).

5) I have a valid / binding / legal contract and I expect it to be honored.

I Frank Aparo signed the release of claims agreement on November 19, 2008 the
agreement was witnessed by Harry Fuller and Steve Sloan acting as agents of
Delphi. I am scheduled to end employment on June 30th, 2009. I fulfilled the
requirements of my contract by executing my portion of our sites closure and I
expect to have the contract I signed in November 2008 to be honored. The
contract I signed states that I would be paid the amount of 1 years wages. Delphi

Judgedrainseverence061709

solicited employees to stay and close the facility and I was selected as one of these employees and I had to agree to stay until my services were no longer needed. I have also attached a copy of my Separation Allowance Plan Release of Claims form for Frank Aparo Employee # 1001701.  This signed contract states that I would be paid an amount of money equivalent to one years wages. Delphi is attempting to breach this contract with new language stating that after June 1st, 2009 severance payments would be capped at maximum of 6 months. I have also attached 2 letters from John Sheehan and Kevin Butler stating that employees who signed a Separation Allowance Plan Release of Claims before January 5th, 2009 would still receive the previously agreed to amount of 1 years wages.

Thanks,

Frank Aparo
Delphi Steering
Athens, Alabama
(256) 552 5667

**Delphi Corporation**
**Separation Allowance Plan Release of Claims** FRANK APARO

I have been separated from my employment with Delphi Corporation ("Delphi") effective JUNE 30 (low), 2009 under terms which make me eligible for benefits under the Separation Allowance Plan (the "Plan"). These benefits include Severance Pay in the total amount of $ 136,820 , less applicable deductions, to be paid in 24 semi-monthly installments commencing on JULY 1 , 200 9 , and Other Transition Assistance, comprised of outplacement assistance and $2000 which I may, at my discretion, use to help pay for the continuation of health care coverage through Delphi; provided, however, that, if I am eligible to retire with corporate contributions for health care in retirement at the time of my separation, I am not eligible for this $2,000. I acknowledge that the consideration provided for in this Release of Claims is in excess of anything I would otherwise be entitled to receive absent my signing this Release of Claims.

In consideration for receiving these benefits, I, for myself, family, heirs, and representatives, release, remise, and forever discharge Delphi, General Motors Corporation, and their respective officers, shareholders, subsidiaries, affiliates, joint ventures, employee benefit plans, agents and employees, successors, and assigns from any and all manner of actions, causes of actions, suits, proceedings, damages, costs, and claims whatsoever in law or in equity (collectively "Claims"), which I have or may have based upon or in connection with my employment with or separation from Delphi. This release specifically includes all Claims under the Employee Retirement Income Security Act of 1974, as amended, which regulates employee benefit plans; Title VII of the Civil Rights Act of 1964, as amended, which prohibits discrimination in employment based on race, color, national origin, religion, or sex; the Americans with Disabilities Act, which prohibits discrimination in employment based on disability; the Age Discrimination and Employment Act, which prohibits discrimination in employment based on age; the Equal Pay Act, which prohibits wage discrimination; state fair employment practices or civil rights laws; and any other federal, state or local law, order, or regulation or the common law relating to employment or employment discrimination, including those which preclude any form of discrimination based on age. This includes, without limitation, Claims for breach of contract (either express or implied), slander, libel, defamation, and wrongful discharge. This release does not apply to Claims that are not subject to waiver under applicable law. This covers Claims I know about and Claims I do not know about; but does not cover Claims that arise after I separate from Delphi.

I understand that, by accepting benefits under the Plan, I will no longer be entitled to receive any disability benefits (short-term, long-term, or total and permanent) under the Delphi Life and Disability Benefits Program for Salaried Employees of the Delphi Retirement Program for Salaried Employees relating to any disability that arose or arises at any time, and if I am currently receiving or am eligible to receive disability benefits as of the effective date of this Release of Claims, I understand that such benefits or eligibility for such benefits will cease upon the effective date of this Release of Claims.

I have been given a minimum of forty-five (45) calendar days to review this Release of Claims and a written notice of the ages and job titles of all individuals in the same job classification or organizational unit who were (i) selected and (ii) who were not eligible or not selected for separation. I understand that I may use as much of this forty-five (45) day period as I wish. I have been advised to consult an attorney before signing this Release of Claims, but understand that whether or not I do so is exclusively my decision. I understand that I may revoke this Release of Claims within seven (7) days of my signing it. To be effective, the revocation must be in writing and must be received by November 26, 2008 before the close of business on the seventh (7th) day after I sign this Release of Claims.

I acknowledge that Delphi has made no prior representations, promises, or agreements relating to my employment and separation contrary to this Release of Claims. I understand that I am not eligible for benefits Delphi provides under any other separation program and that I will not be eligible for any enhancements Delphi may subsequently make to the benefits provided under the Plan. This Release of Claims constitutes the entire and only understanding between Delphi and me regarding my separation. If any provision or portion of this Release of Claims is held unenforceable or invalid, all remaining provisions of this Release of Claims remain in full force and effect.

BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ THIS RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS. I AFFIRM THAT I UNDERSTAND AND VOLUNTARILY AGREE TO ITS TERMS.

Signed: _____

Delphi Identification Number (DIN): 1001701

Dated: 11/19/08

Accepted: Harry L. Fuller 11/19/2008
Delphi Corporation

Revised November 2008

# DELPHI

December 5, 2008

To All Delphi U.S. Salaried Employees:

Delphi is operating in unprecedented and difficult times. While we have done an outstanding job thus far supporting our customers, managing our supply base, and growing our business for the future, we continue to face great challenges.

We have continued to examine every aspect of our business as part of our restructuring efforts. We realigned our product portfolio, renegotiated labor agreements, eliminated many jobs, and changed compensation, benefits, and policies to restructure globally and to emerge from Chapter 11 in the United States. However, given recent events, we must immediately adjust to rapidly declining volumes and conserve cash globally. We have been implementing reductions in capital spending and inventory in line with falling volumes. In addition to these efforts, we are reviewing salaried compensation, benefits and policies globally, making changes as necessary to ensure competitiveness and affordability.

As part of this review, the following changes are effective January 1, 2009 for U.S. salaried employees:

**Short Term Layoff Policy**: In order to address business conditions including short term volume swings, OEM program delays or other temporary business slow downs, Delphi has established a salaried temporary layoff policy. Delphi may identify salaried employees who will be placed on short term layoff in one week increments for a maximum of 13 weeks. While on layoff, employees will remain on active status but receive 50% of base pay for each week(s) on layoff. Employees will continue to accrue credited service for eligibility to retire under the Delphi Retirement Program for Salaried Employees, but employee and company contributions to the Delphi Salaried Retirement Savings Program (SRSP) will be based upon the reduced weekly earnings. Most other benefits will not be impacted (e.g. health care, life insurance, etc.).

**The Flexible Compensation Payment:** The $1,200 per employee Flex Comp Payment for employees hired prior to 2001 will be suspended for 2009 and not paid. Suspension of this payment will result in approximately $10M of cash avoidance in the first quarter of 2009. The additional four days provided as part of this payment for employees hired prior to 2001 are also suspended. All employees are eligible to purchase additional vacation days during the annual Vacation Purchase process which will be rolled out in early January.

**The Tuition Assistance Program:** Tuition Assistance will be suspended for all classes commencing in 2009.

**Adoption Assistance Program:** Adoption Assistance will be suspended for all of 2009.

**Relocation Policy:** Changes have been made to the loss on sale provisions of the U.S. relocation policy. Specific change details can be found on my.delphi.com.

**Delphi Separation Allowance Plan for U.S. Salaried Employees:** Based upon expected long-term volume reductions and projected revenues in the near term and the need to continue to size the company for those reduced volumes, additional salaried employment and contract service reductions will occur. As we benchmark our salaried severance program against companies of similar size and revenue, we are changing our U.S. salaried Separation Allowance Plan policy.

To All Delphi U.S. Salaried Employees
Page 2



Effective March 1, 2009, for employees who have not previously signed a release of claims agreement, the Severance Pay available to classified salaried employees separated as the result of an Eligible Termination under the Separation Allowance Plan will be realigned and capped at 6 months as listed below:

| | |
|---|---|
| 0 but less than 5 years of service: | 1 month |
| 5 but less than 10 years of service: | 2 months |
| 10 but less than 15 years of service: | 3 months |
| 15 but less than 20 years of service: | 4 months |
| 20 but less than 25 years of service: | 5 months |
| 25 or more years of service: | 6 months |

Also, as previously communicated to affected individuals, commencing with separations initiated in November, Severance Pay will be paid in semi-monthly installments (consistent with payroll processing) rather than in a lump sum.

Information regarding all of these changes can be found on my.delphi.com.

We will continue to monitor competitive trends and practices. There may be additional changes in the near future, particularly if competitive practices continue to shift and the global economy continues to decline. If additional changes are required, we will notify you as soon as practical.

We realize these measures personally impact you, but hope you understand that the decisions are necessary and were made only after thoughtful and thorough consideration.

The Delphi leadership team remains grateful for your dedication and hard work in support of our customers and to ensure a stronger, viable Delphi. Questions regarding this letter may be directed to your local HR Department.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

# DELPHI

February 5, 2009

To Delphi U.S. Salaried Employees:

As referenced in the letter distributed today to Delphi's global salaried workforce, Delphi, like others in the automotive sector, continues to face serious challenges created by a weakened global economy and its effect on the automotive industry. U.S. light vehicle sales for 2009 are down roughly 22% from an already slower 2008, and down nearly 40% from volumes experienced at the beginning of this decade. At current forecasts, 2009 U.S. light vehicle sales will reach their lowest level since 1982.

Delphi must respond to these market and economic realities by taking a series of difficult but necessary actions, applicable to U.S. salaried employees.

- The U.S. 2009 merit plan and annual incentive payments (AIP) for eligible executives and U.S. non-executive salaried employees will be suspended in 2009. Suspending these programs in the U.S. and other locations will assist in generating cash flow in 2009.

- Additionally, effective April 1, 2009, Delphi will cease to provide health care and life insurance in retirement to salaried employees and retirees.

  In these extraordinary economic times, it is necessary for Delphi to discontinue these benefits in order to work towards further modifications to its plan of reorganization that will enable the company to emerge from chapter 11 reorganization as soon as practicable. Delphi acknowledges these actions will impose a real hardship on former beneficiaries of these programs. However, the company's recognition of this hardship, which allowed Delphi to continue these benefits in a more robust economic environment, regretfully does not support continuing these programs in the current economic environment.

  On February 4, 2009, Delphi filed a motion with the U.S. Bankruptcy court regarding the aforementioned benefits in retirement. The benefits are generally referred to as Other Post Employment Benefits (OPEB). You will receive a copy of the motion in the mail at your home address. A copy of the motion can also be found on www.delphidocket.com. Any responses to the motion will need to be filed with the Bankruptcy Court no later than February 17, 2009.

  The change does not impact active employees hired prior to January 1, 1993 until they retire. Active employees who were hired after January 1, 1993 but prior to January 1, 2001 will no longer receive the 1% Corporate contribution made into their 401(k) account in lieu of health and life coverage in retirement. Employees hired on or after January 1, 2001 are not affected by this change because they did not have any health or life coverage in retirement based upon their date of hire. Effective April 1, 2009, current and future retirees will have access to Delphi coverages but will be required to pay the full cost of coverages continued. Impacted retirees will be notified of these changes in a separate communication and will be provided the information about continuing their coverages at their own expense. Questions about this change and/or the ability to purchase alternative coverage may be directed to the National Benefits Center at 1-866-335-7444.

Page 2



- In December 2008, Delphi advised U.S. salaried employees that the Separation Allowance Plan severance schedule would be changed to cap at 6 months based upon length of service. The March 1, 2009 implementation date accommodated previously approved commitments to employees (e.g. specific wind down situations). Additionally, the date was based upon our projected customer volumes and workforce reduction plans at that time. However, rapidly deteriorating business conditions make it necessary to apply the new schedule to all classified salaried employees who were provided release of claims agreements after January 5, 2009.

- Effective January 1, 2009, all vacations will vest on a month-to-month basis. Employees who retire or separate from service will be eligible only for prorated vacation days prior to their last day of work based upon their date of separation in the calendar year. This change will be reflected in all Separation Allowance Plan documents presented to employees beginning today.

- Service Awards will be suspended until further notice. At the point in time Delphi is able to reinstate this program, missed anniversary dates during the suspended period will be recognized.

- Cash payments ($50) to be made in May 2009 to employees who completed Health Risk Assessment Questionnaires will be suspended until further notice. This suspension includes employees who have already completed forms.

Delphi is among many companies throughout the world examining all policies, compensation and benefits in response to a weakened global economy. This week, Delphi employees in all regions of the world are being advised of similar changes affecting their site, country or region.

In this dynamic environment, it is possible that additional cost cutting measures will be necessary in response to changing business conditions; in that event, we will do our best to notify you as early as we can if and when further measures are needed. Except as otherwise directed, should you have questions about this letter or the information provided, please contact your local HR department.

We regret that these changes are necessary, but please understand the changes are only implemented after careful consideration of many factors, including the impact on Delphi people. We believe these changes are necessary to exit bankruptcy and maintain a viable global business.

Sincerely,

John D. Sheehan
Vice President and CFO
Delphi

Kevin M. Butler
Vice President Human Resources
Delphi

World Headquarters and Customer Center  5725 Delphi Drive  Troy, MI  48098-2815  USA