July 4, 2009

To: Honorable Judge Robert D. Drain

From: Doug Dunnigan, GM/Delphi Salaried Retiree

Subject: Delphi Salaried Retiree Treatment in proposed Bankrupcy Proceedings.

Dear Judge Drain,

The purpose of this letter is to relate to you my situation and feelings as well as to ask your consideration concerning denying the proposed transfer of subject retirement benefits to the PBGC.

I am a salaried retiree who worked over forty years for combined GM (38 yrs.) and Delphi (approx. 3 yrs.). I am listing below, in some "random" order, issues and situations which I feel are appropriate in making my request. I will attempt to be as basic and brief as possible!

- Working for both GM and Delphi was a very pleasant and rewarding experience. The working environment, as well as the opportunities offered, were always challenging and satisfying. The compensation package was very good and was governed by comparisons to other industry standards as provided by an outside firm—a sensible and fair system.
- From the day I turned 30yrs old, I began having payroll deductions taken as part of the contributory portion of my pension program. Today, approximately one third ($1/3^{rd}$) of my wife's and my monthly pension benefit payment is the result of my personal savings. I find it extremely difficult to understand how it is fair or possible that any portion of these savings could be in jeopardy!
- The financial status and the funding of the Delphi salaried pension accrual has been estimated in the to be in the 50-60% range. GM appears to be in the 85-90% range. It would seem fair that, since so many Delphi retirees have spent the better part of 90% of their work life with GM, a transfer of salaried retiree benefits from Delphi to GM would be an appropriate and just action to treat Delphi retirees in an equitable manner.
- Based on the impact of the PBGC's financial limits, the current funding of the Delphi accrual, and the age many retirees would be at time of proposed termination, many younger retirees could see huge reductions in their monthly pension payments. This could be so much so, coupled with recent loss of health and life insurances, that significant personal bankruptcies and home mortgage foreclosures would result. This is certainly not fair to impose on a small group of former employees while the majority of other GM/Delphi retirees are not being treated in this manner!
- Prior to the Modified Plan of Reorganization now presented for your approval, Delphi Plans presented included a provision for Delphi to assume continued responsibility

for and provided funding for salaried retiree commitments. I do not understand why this provision was eliminated, resulting in the proposed significant reductions in benefit payments. These proposed reductions, along with already enacted health and life insurance cancellations, would impose tremendous penalties on a group of hard working and loyal employees who never questioned the need for many non-compensated hours worked or for many business trips away from home and families.

- In the spirit of fairness and compassion, I would ask that you consider the above items in your decision and rulings when you are presented with this plan on July 23rd. I applaud your recent actions in requiring a competitive bid or auction to determine the true market value of Delphi's capital assets identified for transfer in the current Plan!

Well, I may have "rambled" on and not been as brief as committed in opening paragraph, however I obviously have urgent concerns and needs which require your attention and consideration! I am sure that with thought and negotiation a plan of action to mitigate the tremendous referred to unfair penalties can be reached and incorporated into the Reorganization Plan. Not easily for sure, however I would hope and pray that this relief can be accomplished.

Thanks for your listening time!
Sincerely,

*Doug D.*

Doug Dunnigan
4456 Ground Pine Trl.
Traverse City, Mi. 49686