BODMAN LLP
Ralph E. McDowell (P39235) (Admitted Pro Hac Vice)
*rmcdowell@bodmanllp.com*
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
(313) 393-7592

Attorneys for Comerica Leasing Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al, | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

### OBJECTION OF COMERICA LEASING CORPORATION TO FIRST AMENDED JOINT PLAN OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS IN POSSESSION (AS MODIFIED)

Comerica Leasing Corporation ("Comerica") files this objection to the First Amended Joint Plan of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (As Modified) ("Plan"). In support of its objection, Comerica states as follows:

**Introduction**

1. On either October 8 or October 14, 2005 ("Petition Date"), Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2. On December 10, 2007, Debtors filed their Amended Disclosure Statement for the Plan, which was approved by the Court. The original plan was confirmed on January 25, 2008, but never consummated.

3. On October 3, 2008, Debtors filed a Plan Modification Approval Motion seeking further changes to the confirmed plan. Again, on June 1, 2009, Debtors filed a Supplement to the Plan Modification Approval Motion seeking further modification to the confirmed plan. Debtors now seek approval of the Plan, as modified.

## History of Transaction with Comerica

4. Comerica and General Motors Corporation ("GM") entered into a lease for equipment located at three facilities, on September 27, 1991. In May 1999, GM and Comerica agreed to the assignment of the lease for the Buffalo, NY and Saginaw, MI equipment to Delphi Automotive Systems, LLC ("Delphi"), provided that GM guaranteed the transaction. The Toledo, OH equipment remained under lease with GM directly. The lease expiration date was in March 2004.

5. In March 2004, GM notified Comerica that it had previously scrapped four pieces of equipment in the Toledo facility with an original cost of $2,330,000. As a result, GM paid the stipulated loss value of $447,472 for that scrapped equipment. The total original cost was $10,940,000. As per the Settlement Agreement, GM paid an additional $850,000 which represented approximately 9.9% of adjusted original cost of ($10,940,000 - $2,330,000 = $8,610,000).

6. Since that time, Comerica has been attempting to negotiate with Delphi regarding the resolution of the purchase of the equipment in the Buffalo and Saginaw facilities. In March 2004, Delphi provided a notice of its intent to purchase all of the equipment under lease with Comerica at the Buffalo and Saginaw facilities. The notice was untimely under the documents and Comerica reserves all of its rights and remedies as to that issue. Notwithstanding that fact, and without waiving any rights, under the lease documents, Comerica and Delphi each ordered

an equipment appraisal. Delphi's appraisal indicated a FMV of $576,000 or 3.99% for the combined equipment. Delphi paid that amount to Comerica in 2004. Comerica indicated that it disagreed with the appraised FMV, but applied the $576,000 on account of Delphi's ultimate obligations to Comerica. Comerica's appraisal indicated a FMV of approximately 15% for the combined equipment. Per the appraisal procedure in the documents, the two parties should engage a third appraiser to complete the appraisal process. Unfortunately, after well over four years of negotiating, the parties have not reached agreement on the language in the joint engagement letter for the third appraiser.

7.  The following documents are relevant to Comerica's claims, and are available for review from the undersigned:

    A.  Lease Agreement (GM 91A-5) dated September 27, 1991

    B.  Definitions

    C.  Lease Supplement No. GM 91A-5A (Buffalo, NY)

    D.  Lease Supplement No. GM 9lA-5B (Toledo, OH)

    E.  Lease Supplement No. GM 91A-5C (Saginaw, Ml)

    F.  Lease Assignment (GM 91A-5) dated May 28, 1999

    G.  Legal Opinion — General Motors Legal Staff

    H.  Legal Opinion — Kirkland & Ellis

    I.  Guaranty of Lease Assignment (GM 91A-5)

    J.  Settlement Agreement (Toledo, OH) dated June 10, 2004

    K.  Letter from GM regarding payment of SLV dated March 16, 2004 (scrapped equipment)

    L.  Letter from GM regarding cash payment of SLV dated March 26, 2004 (scrapped equipment)

8.      Under the Plan, Debtors intend to reject the Lease Agreement (GM 91A-5), Lease Supplement No. GM 91A-5A and Lease Supplement No. GM 91A-5C.

9.      Since the Petition Date, Debtors have continued to possess and, upon information and belief, use the Equipment and have not paid Comerica for its use. Comerica is entitled to the Stipulated Loss Value (as defined in the lease documents) which is not less than $2,314,557, plus fees and costs as provided in the Lease Documents, plus the fair rental value for Debtors' use of the Equipment. Comerica calculates the fair rental value as follows:

> Buffalo - Average Base Term Monthly Rent = $50,078.19/mo.
> $50,078.19 x 46 mos. = $2,303,596.74 (Oct. 05 - July 09)
>
> Saginaw - Average Base Term Monthly Rent = $99,352.95/mo.
> $99,352.95 x 46 mos. = $4,570,235.70 (Oct. 05 - July 09)
>
> Total - Average Base Term Monthly Rent = $149,431.14/mo.
> $149,431.14 x 46 mos. = $6,873,832.44

Thus, the total amount due to Comerica is not less than $9,188,389.44.

## Objections to Plan

10.     In order for the Plan to be confirmed, the Plan must satisfy all of the requirements of Section 1129 of the Bankruptcy Code. It fails to do so.

11.     The Plan, as proposed, cannot be confirmed under Section 1129 of the Bankruptcy Code because, among other things, (a) the Plan does not provide for payment of administrative expenses on the Effective Date; (b) the classification of claims proposed under the Plan violates Section 1122 of the Bankruptcy Code, (c) the Plan violates Section 1123(a)(4) of the Bankruptcy Code because it provides different treatment to claims classified together within a single class and (d) the Plan improperly proposes to substantively consolidate various Debtors for plan voting and distribution purposes only. No support exists for this last provision, and it

should not be allowed absent a showing that it does not impact at all the requirements of Section 1129.

12.     The provisions of Article 2.1 of the Plan, which propose to pay administrative expense claims as much as ten (10) months or more after the Effective Date, violate Section 1129(a)(9)(A).

> "(9)    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that –
>
> "(A)    with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim."    11 U.S.C. § 1129(a)(9)(A)

Obtaining an agreement from the holder is the only exception for paying the full amount of the claim on the effective date of the Plan.  See COLLIER ON BANKRUPTCY ¶ 1129.03[9][a] (15th ed. Rev. 2003).  ("Accordingly, such payment must be in cash on the effective date.  The only exception will be if 'the holder of a particular claim has agreed to a different treatment of such claim.'" (citing 11 U.S.C. § 1129(a)(9)).  *See also, In re Vermont Stove Co., Inc.*, 69 B.R. 87, 89 (Bankr. D. Vt. 1987) "[o]nly a holder of a claim of the kind specified in § 1129(a)(9)(A) and (B) may agree to a different treatment of the claim."

13.     Section 1129(a)(1) of the Bankruptcy Code provides that the Plan must "comply with the applicable provisions of [the Bankruptcy Code]."

14.     The proposed estimation of Disputed Claims under Section 9.8(b)(iii) violates Section 502(c) of the Bankruptcy Code.  Further, the proposed limitation in Section 9.8(c) creates unfair treatment of creditors within a same class (by relegating creditors with disputed claims to a non-recourse position) and thus violates Section 1123(a)(4).

15. The injunction contained in Article 11.14 of the Plan prohibits all holders of claims from asserting any right of offset to recover a claim. This injunction eliminates the setoff rights of creditors without compensation (or the "indubitable equivalent" that is required under Section 1129(b)(2)(A)(iii)). Such injunction is contrary to the state law rights of holders of claims preserved by the Bankruptcy Code under Section 553(a) and the treatment of creditors under the various classes should not be read to eliminate or limit those rights. Further, it is in conflict with the proposed treatment of secured creditors with setoff rights under Article 5.1 of the Plan (all setoff rights are preserved). This provision of the injunction should be stricken or should not apply to Comerica.

16. Because the Plan violates the setoff rights preserved in Section 553(a) of the Bankruptcy Code, the Plan does not satisfy the requirement of Section 1129(a)(1) of the Bankruptcy Code. Therefore, the Plan cannot be confirmed as proposed.

17. Additionally, Comerica objects to the third party release contained in Article 11.5 of the Plan. As a general matter, third party releases, except by express agreement of a party in interest, are not appropriate plan provisions. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005). Comerica has rights under its agreements against Delphi and other parties. None of these rights should be waived in connection with the third party release contained in Article 11.5 of the Plan.

18. Comerica also objects to the release and exculpation provisions contained in Article 11.11 of the Plan. As stated in the preceding paragraph, Comerica has rights under its agreements, including rights against Delphi and GM, and none of these rights should be affected by the exculpations contained in Article 11.11 of the Plan.

**Waiver of Memorandum**

19.     Comerica respectfully requests that this Court waive the requirement contained in Rule 9013(b) of the Local Bankruptcy Rules for the Southern District of New York, that a separate memorandum of law be submitted because the issues raised in this limited objection are not novel. To the extent this Court determines that a memorandum of law is required, Comerica requests that it be allowed to submit one at a date to be determined by the Court.

### Relief Requested

Comerica requests entry of an Order modifying the Plan as provided above and granting other relief as this Court determines.

BODMAN LLP

By:/s/ Ralph E. McDowell
    Ralph E. McDowell (P39235)
6th Floor at Ford Field
1901 St. Antoine Street
Detroit, Michigan 48226
Telephone: (313) 393-7592
Facsimile: (313) 393-7579
*rmcdowell@bodmanllp.com*

Attorneys for Comerica Leasing Corporation

Dated: July 14, 2009

**CERTIFICATE OF SERVICE**

       The undersigned certifies that a true and correct copy of the foregoing Objection of Comerica Leasing Corporation to First Amended Joint Plan of Delphi Corporation and Certain Affiliates, Debtors and Debtors in Possession (as Modified) was electronically filed using the Court's CM/ECF filing system, and that a true and correct copy of the same was served via Federal Express to the parties identified below:

Delphi Corp.
5725 Delphi Drive
Troy, Michigan 48098
**Attention:** General Counsel

Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
**Attention:** John Wm. Butler, Jr.; John K. Lyons, Joseph N. Wharton

Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
**Attention:** Donald Bernstein and Brian Resnick

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
**Attention:** Robert Rosenberg, Mark A. Broude, and Mitchell A. Seider

Wilkie Far & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
**Attention:** Richard Mancino and Marc Abrams

Cadwalader, Wickersham & Taft LLP
One world Financial Center
New York, New York 10281
**Attention:** John J. Rapisardi and Oren B. Haker

Counsel for the U.S. Department of Justice
86 Chambers Street, 3rd Floor
New York, New York 10007
**Attention:** Matthew L. Schwartz and Joseph N. Cordaro

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022

**Attention:**  Adam C. Harris and David J. Karp

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
**Attention:**  Jeffery L. Tanenbaum, Michael P. Kessler, and Robert J. Lemons

Office of the United States Trustee for the Southern District of New York
33 Whitehall Street, Suite 2100
New York, New York 10004
**Attention:**  Brian Masumoto

and

The Honorable Robert D. Drain
United States Bankruptcy Judge
U.S. Bankruptcy Court for the Southern District of New York
One Bowling Green, Room 610
New York, New York 10004

                                               */s/* Ralph E. McDowell
                                                   Ralph E. McDowell

Dated: July 14, 2009