DUANE MORRIS LLP
A Delaware Limited Liability Partnership
Wendy M. Simkulak, Esquire
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
and
Margery N. Reed, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)

Counsel for the ACE Companies

**Obj. Deadline: July 15, 2009 at 4:00 p.m.**
**Hearing Date: July 23, 2009 at 10:00 a.m.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al. | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**LIMITED OBJECTION OF THE ACE COMPANIES TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION (AS MODIFIED)**

ACE American Insurance Company, Pacific Employers Insurance Company, and Illinois Union Insurance Company and each of their affiliates (collectively, the "ACE Companies"), by and through their undersigned counsel, hereby file this Limited Objection (the "Objection") to the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession (As Modified) (the "Modified Plan")[1], and respectfully state as follows:

**BACKGROUND**

1. On October 8, 2005 and October 14, 2005 (collectively, the "Petition Date"), the Debtors filed their respective voluntary petitions for bankruptcy relief under chapter 11 of title

[1] Terms not defined herein shall have the meaning attributed to them in the Modified Plan.

11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

2. Prior to the Petition Date, the ACE Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Prepetition Policies") to certain Debtors as named insureds.

3. Prior to the Petition Date, the Insurers and the Debtors also entered into certain written agreements in connection with the Prepetition Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements") including, but not limited to, claims servicing agreements.

4. The Court entered an Order dated January 6, 2006 Under 11 U.S.C. §§ 362, 363, 365, 1107, and 1108 Authorizing Renewal of Insurance Coverage and Certain Related Relief (the "Order") which provided that, *inter alia*: (i) the Debtors were authorized to assume certain insurance policies and agreements with the Insurers (as defined therein, collectively, the "Assumed Agreements") pursuant to § 365(a) of the Bankruptcy Code, and (ii) conditioned on the Debtors' assumption of the Assumed Agreements, (a) all payment and reimbursement obligations owing to the Insurers from the Debtors under the Assumed Agreements are accorded administrative priority status pursuant to § 503(b)(1)(A) of the Bankruptcy Code, and (b) the Debtors are authorized to pay the Insurers' claims with respect to the Assumed Agreements in the ordinary course of their businesses.

5. Subsequent to the entry of the Order, the Debtors assumed the Assumed Agreements pursuant to the Order.

6. On or about October 2, 2007, the Court entered that certain Joint Stipulation and Agreed Order (the "Agreed Order") pursuant to which, among other things, " . . . all payment

and reimbursement obligations owing to the ACE Companies from the Debtors under the Assumed Agreements shall be accorded administrative priority status pursuant to Section 503(b)(1)(A) of the Bankruptcy Code . . . ."

7. After the Petition Date, the Insurers also issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively and together with any agreements related thereto, the "Postpetition Policies and Agreements") to certain Debtors as named insureds.

8. Pursuant to the Assumed Agreements and the Postpetition Policies and Agreements (collectively, the "ACE Insurance Program"), the Insurers provide, *inter alia*, certain workers' compensation, general liability, automobile liability, directors and officers liability and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the Insurers assert that the insureds, including one or more of the Debtors, are required to pay to the Insurers certain amounts including, but not limited to, insurance premiums and deductibles reimbursements, as more particularly described in the ACE Insurance Program (the "Obligations").

9. Pursuant to the Assumption Order, the Agreed Order and §§ 503(b)(1)(A) and 507(a) of the Bankruptcy Code, the Insurers hold administrative expense priority claims for any and all Obligations owing under the ACE Insurance Program.

10. On or about September 6, 2007, the Debtors filed the Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-In-Possession and the Disclosure Statement related thereto (the "2007 Disclosure Statement").

11. On or about September 28, 2007, the ACE Companies filed a limited objection (the "Objection") to the 2007 Disclosure Statement.

12. On or about December 10, 2007, the Debtors filed the First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession (the "Amended Plan") which incorporated the following in Section 2.1(y) in order to resolve the ACE Companies' Objection (the "Settlement Language")[2]:

> Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases and Allowed Administrative Claims arising under contracts assumed during the Chapter 11 Cases prior to the Effective Date shall be paid by the Debtors or the Reorganized Debtors in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto; provided that (i) any cure payments associated with the assumed contracts shall be paid in accordance with Sections 2.1(a) or 2.1(b), except as otherwise provided in Article VIII, and (ii) the contracts shall not have been rejected pursuant to Section 8.1(a) of the Plan.

13. On or about January 25, 2008, this Court entered an order confirming the Amended Plan.

14. On or about October 3, 2008, the Debtors filed a Plan Modification Approval Motion (as identified by the Debtors) attaching a prior version of the Modified Plan which included a provision similar to the Settlement Language.

15. On or about June 16, 2009, the Debtors filed a supplement to the Plan Modification Motion attaching the current version of the Modified Plan.

16. Notably, Section 2.1(y) of the Modified Plan (as filed on June 16, 2009) does not include any provision regarding treatment of ordinary course Administrative Claims[3].

---

2 Additionally, Section 10.5 of the Amended Plan provided, *inter alia*: "Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim which is paid or payable in the ordinary course of business."

3 Additionally, the language cited in footnote 3 herein from Section 10.5 of the Amended Plan has also been removed in the Modified Plan.

DM3\1073348.2

17. On or about June 16, 2009, the Debtors filed a Master Disposition Agreement (the "MDA") which provides for the disposition and transfer of substantially all of the Debtors' operations pursuant to the Modified Plan or Section 363 of the Bankruptcy Code in the event that the Court does not approve the Modified Plan.

18. On or about July 2, 2009, the Debtors filed a Notice of Section 363 Implementation Agreement which attaches the First Amendment to the MDA (the "Amended MDA").

19. The Amended MDA provides that Excluded Assets include:

> Insurance Policies. All Insurance Policies related solely to the other Excluded Assets or director and officer liability; provided, however, that Buyers and Sellers will be named as an additional named insured on any such Insurance Policies to the extent they cover any of the Acquired Assets of such Buyer or relate to any Assumed Liabilities assumed by such Buyer, or any Sale Company acquired by such Buyer and Buyers will receive the benefit of all claims and rights under third party property and casualty insurance policies and other insurance policies to the extent they relate to any Acquired Assets of such Buyer or Assumed Liabilities assumed by such Buyer, or any Sale Company acquired by such Buyer; and provided further that no changes shall be made by the named insured to any insurance policy that materially and adversely affects the rights of any additional named insured that is a party to this Agreement, without the prior written consent of the additional named insured.

## OBJECTION

### A. The ACE Companies Object To The Amended MDA To The Extent That It, *Inter Alia,* Assigns The ACE Insurance Program Without The ACE Companies' Consent Or Would Require The ACE Companies To Add Additional Named Insureds To The Policies.

#### 1. The ACE Insurance Program Cannot Be Assigned Without The Prior Written Consent Of The ACE Companies Which Has Not Been Given.

20. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or

DM3\1073348.2

rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. *See* 11 U.S.C. § 365(c)(1)(A) and (B).

21. The ACE Insurance Program may not be assigned without the express consent of ACE[4].

22. Moreover, applicable non-bankruptcy law prohibits the assignment of insurance policies without the insurer's consent. *See, e.g., Allied Corp. v. Frola*, Civ. No. 87-462, 1992 WL 281114 (D.N.J. Oct. 6, 1992) (Wolin, J.) (holding that insurance policies are not assignable without the consent of the insurers); *Touchet v. Guidry,* 550 So. 2d 308, 313 (La. App. 3d Cir. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured; and that, ". . . coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties." (citations omitted)); *Shadid v. American Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).

23. Therefore, the Debtors cannot assign the ACE Insurance Program to the Buyer (as defined in the Amended MDA) without the consent of the ACE Companies.

24. Further, pursuant to § 365(f)(2) of the Bankruptcy Code, the Buyer must provide adequate assurance of future performance.

---

4 The ACE Companies further object to the extent that pursuant to the Amended MDA, the Debtors seek to (i) treat any insurance policy or related insurance agreement as both an Excluded Asset and an Acquired Asset or (ii) assign portions of the ACE Insurance Program instead of the entire ACE Insurance Program. *See In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties"); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005); *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1075 (3d Cir. 1992), reh'g en banc denied, Nos. 91-1407 and 91-1438, 1992 U.S. App. LEXIS 27506 (Oct. 21, 1992); *In re TSW Stores of Nanuet, Inc.*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983).

25. Neither the Debtors nor the Buyer have provided the ACE Companies with information necessary for the ACE Companies to determine if the Buyer satisfies ACE's credit and underwriting criteria.

26. Additionally, as a condition for the ACE Companies' consent, if any, to the Debtors' assignment of the ACE Insurance Program to the Buyer, (i) the Buyer, the Debtors, and the ACE Companies must execute an assumption agreement, and (ii) the Buyer must remain liable for all of the Debtors' obligations and liabilities, whether now existing or hereafter arising, under the ACE Insurance Program, as they become due, and continue to provide collateral and security as required by the ACE Insurance Program[5]. However, the Buyer has not satisfied these conditions.

27. Based upon the foregoing, the ACE Companies object to any proposed assignment of the ACE Insurance Program.

2. **The ACE Companies Cannot Be Compelled To Add Other Parties As Additional Named Insureds Under Policies Which They Have Issued.**

28. Pursuant to the Amended MDA, the Debtors seek to require the ACE Companies to add the Buyer (and the Seller, to the extent not already a named insured) as an additional named insured under the ACE Insurance Program.

29. The naming of additional insureds is a modification of the ACE Insurance Program.

30. "Modification must satisfy the elements of a contract: a meeting of the minds supported by consideration." *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122 (Tex. Ct. App. 2006). *See also Gibbs v. Connecticut Gen. Life Ins. Co.*, No. CV 970567009, 1998 Conn.

5 The MDA and the Amended MDA provide that Assumed Liabilities include certain Administrative Liabilities in relation to certain Acquired Assets. However, the Amended MDA does not clearly provide that the Buyer remains liable for all of the Debtors' obligations under the ACE Insurance Program.

DM3\1073348.2

Super. LEXIS 599 (Conn. Super. Ct. 1998) quoting *Torosyan v. Boehringer Ingelheim Pharmaceuticals,* 234 Conn. 1 (Conn. 1995) ("Merely saying something is part of the contract, however, does not make it part of the contract. 'Proposed modifications, like the original offers, must be accepted').

31. Therefore, the ACE Companies cannot be compelled to add additional named insureds to the ACE Insurance Program.

32. Accordingly, the ACE Companies object to the Amended MDA to the extent it would modify the ACE Insurance Program.

**B. The ACE Companies Object To The Modified Plan To The Extent That It Does Not Provide That The Reorganized Debtors Are Liable To Pay Administrative Expense Claims Arising Under Assumed and Post-Petition Agreements In The Ordinary Course.**

**1. The Plan Should Be Revised To Provide That The Reorganized Debtors Remain Liable For Administrative Expense Claims Arising Under Assumed and Post-Petition Agreements.**

33. Pursuant to Section 9.6 of the Modified Plan, the Reorganized Debtors "shall retain responsibility for . . . making distributions."

34. However, pursuant to Section 11.1 of the Modified Plan, "all property of the Estates shall revest in each of the Debtors . . . free and clear of all Claims . . . ."

35. Moreover, Sections 11.2 and 11.5 of the Modified Plan provide a broad discharge and release of the Debtors except as otherwise specifically provided in the Modified Plan. The Modified Plan does not specifically exclude, from the release and discharge provisions thereof, those obligations arising under contracts and leases which the Debtors assumed or entered into during the pendency of their bankruptcy cases.

36. The Modified Plan should, but does not, expressly provide that upon the Effective Date, the Reorganized Debtors (or the Buyer, if applicable) will remain liable for the Debtors'

continuing obligations under the Assumed Agreements and Postpetition Policies and Agreements.

37. The Plan should be modified to expressly provide that the Reorganized Debtors (or the Buyer, if applicable) will continue to be liable for all of the ACE Companies' Claims arising under the Assumed Agreements and Postpetition Policies and Agreements.

**2. The Term "Allowed Claim" Should Be Revised To Include Claims Arising From Assumed Agreements.**

38. Section 2.1 of the Plan provides for payment of Administrative Claims only, "after the later of (a) the date when an Administrative Claim becomes an Allowed Administrative Claim or (b) the date when an Administrative Claim becomes payable pursuant to any agreement between a Debtor . . . and the holder of such Administrative Claim. . . ." (emphasis added).

39. Based upon the language in Section 2.1 of the Plan, an Administrative Claim must be "Allowed" to be paid. However, the definition of "Allowed Claim," which is set forth in Section 1.7 of the Plan, does not expressly include Administrative Claims arising from contracts and leases assumed by or entered into the Debtors during the course of their bankruptcy cases.

40. As noted above, the Agreed Order provides that the Assumed Agreement Claims are allowed.

41. Accordingly, the ACE Companies request that the term "Allowed Claim" be revised to expressly include Administrative Expense Claims arising from contracts and leases the Debtors assumed or entered into during the pendency of their bankruptcy cases.

**C. Reservation of Rights**

42. The ACE Companies specifically reserve their right to assert additional objections to the Plan.

DM3\1073348.2

**D. <u>Conclusion</u>**

WHEREFORE, for the foregoing reasons, the ACE Companies respectfully request that this Court direct the Debtors to modify the Plan, as provided herein and grant such other relief as is just and proper.

Dated: July 14, 2009

DUANE MORRIS LLP

By: */s/ Wendy M. Simkulak*

Wendy M. Simkulak, Esquire (WS-8945)
1540 Broadway, 14th Floor
New York, NY 10036-4086
(212) 692-1000
(212) 692-1020 (facsimile)
wmsimkulak@duanemorris.com

and

Margery N. Reed, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)
mreed@duanemorris.com

Counsel for the ACE Companies